KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  *rkendall@kbkfirm.com*
Laura W. Brill (195889)
  *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
  *ndaum@kbkfirm.com*
Nathalie E. Cohen (258222)
  *ncohen@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics,<br><br>        Plaintiff,<br><br>        v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. CV 10-3633 ODW(RZx)<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW (CAL. CODE CIV. PROC. § 425,16); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with DECLARATION OF NICHOLAS F. DAUM, MOTION TO DISMISS, REQUEST FOR JUDICIAL NOTICE, and NOTICE OF JOINDER*<br><br>Hon. Otis D Wright, II<br><br>Date:   October 18, 2010<br>Time:  1:30 p.m.<br><br>Complaint Filed:   May 14. 2010 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

2    **PLEASE TAKE NOTICE THAT** on October 2, 2010, at 1:30 p.m., or as

3    soon thereafter as counsel may be heard, in the courtroom of the Honorable Otis D

4    Wright, II, located in the United States Courthouse, 312 N. Spring Street, Los

5    Angeles, California, 90012, Defendants Marc Toberoff, Pacific Pictures

6    Corporation, IP Worldwide, LLC, IPW, LLC ("Toberoff Defendants") will and

7    hereby do move this Court to strike Plaintiff's Fourth, Fifth, and Sixth Causes of

8    Action pursuant to California's Anti-SLAPP statute, Code of Civil Procedure

9    § 425.16.

10    This Motion is made upon the following grounds: the Fourth, Fifth and Sixth

11    Causes of Action are protected by California Code of Civil Procedure § 425.16

12    because they concern (i) statements or writings made before a legislative, executive,

13    or judicial or other official proceeding (Cal. Code Civ. Proc. § 425.16(e)(1),

14    (ii) written or oral statements and writings made in connection with an issue under

15    consideration or review by a legislative, executive, or judicial body (Cal. Code Civ.

16    Proc. § 425.15(e)(2), and (iii) an exercise of free speech rights in connection with a

17    public issue (Cal. Code Civ. Proc. § 425.16(e)(4).

18    The Plaintiff cannot show a reasonable likelihood of success on the merits for

19    its Fourth Claim for Relief, for tortious interference with contract, because (i) no

20    interference has been alleged and no valid contract has been alleged; (ii) the Claim

21    for Relief is barred by a two-year statute of limitations, and (iii) the Claim for Relief

22    is barred by California's litigation privilege.

23    Plaintiff cannot show a reasonable likelihood of success for its Fifth Claim for

24    Relief, for tortious interference with prospective economic advantage, because

25    (i) there is no evidence or credible allegation that the purported prospective

26    economic advantage was interfered with by any defendant; (ii) the Claim for Relief

27    is barred by a two-year statute of limitations, and (iii) the Claim for Relief is barred

28    by California's litigation privilege (Cal. Civil Code § 47(b)).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

---

1
**NOTICE OF MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW**

1       Plaintiff cannot show a reasonable likelihood of success for its Sixth Claim

2   for Relief, for declaratory relief, because that Claim for Relief is moot, and, to the

3   extent that it is not moot, it fails to provide any basis upon which declaratory relief

4   may be granted.

5       Pursuant to Cal. Code Civ. Proc. § 425.16(c)(1), and *United States ex rel.*

6   *Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), an

7   order awarding to the Toberoff Defendants their attorneys fees incurred in

8   preparation of this special motion to strike, subject to proof of such fees to be

9   submitted after the proceedings on such motion are concluded.

10       This motion is made following the conference of counsel pursuant to L.R. 7-

11   3, which took place on July 13, 2010.

12       This Motion is based on this Notice of Motion, the attached Memorandum of

13   Points and Authorities, the concurrently filed Declaration of Nicholas F. Daum, all

14   of the pleadings, files, and records in this proceeding, all other matters of which the

15   Court may take judicial notice, and any argument or evidence that may be presented

16   to or considered by the Court prior to its ruling.

17   Dated:  August 13, 2010        KENDALL BRILL & KLIEGER LLP

18

19

20           By:  /s/ Richard B. Kendall

21               Richard B. Kendall

22               Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

23

24

25

26

27

28

2

**NOTICE OF MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND ................................................................. 4

    A.    General Background .................................................................. 4

    B.    The Siegels, Independently of Toberoff, Serve Termination Notices and Commence Settlement Discussions ........................ 5

    C.    Marc Toberoff Begins Representing the Shuster Family ......... 6

    D.    The Siegels Break Off Settlement Negotiations With DC ....... 7

        1.    Toberoff Does Not Contact the Siegel Family ............. 7

        2.    Joanne Siegel Informs DC That There Will Be No Deal ........... 8

    E.    The Siegels Fire Gang Tyre and Then Hire Toberoff ............. 8

    F.    The Commencement of the *Siegel* Litigation ........................ 10

    G.    The Shuster Termination and Cancellation of the PPC Agreements ............................................................................ 10

    I.    DC Exploits A Theft Of Privileged And Confidential Information From Toberoff's Law Firm In Filing the Instant Complaint ................................................................................ 12

III. ARGUMENT ...................................................................................... 12

    A.    The Anti-SLAPP Law ............................................................ 12

    B.    The Fourth, Fifth and Sixth Claims Concern Conduct Protected By the Anti-SLAPP Law Because They Concern Statements Made In Connection With Litigation and Filings In the U.S. Copyright Office ..................................................................... 13

        1.    The Fourth and Fifth Claims Fall Within § 425.16(e) .............. 14

            (a)    The Fourth Claim Arises From the Encouragement ........ 14

            of the Shuster Executor to Exercise His Constitutional Right ............................................................................... 14

            to Petition through Filing With a Government Agency ............. 14

            (b)    The Fourth and Fifth Claims Arise From the Encouragement ................................................................ 15

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

of the Shuster Executor to Exercise His Constitutional Right ................................................................... 15

to Petition through Taking Legal Action .................................... 15

    (c)    The Fourth and Fifth Claims Arise from Protected Communications in the Context of Anticipated Litigation and Settlement Discussions ........................... 16

    (d)    The Fourth and Fifth Claims Arise From Protected Solicitation of Attorney-Client Relationships ................. 18

    2.    The Sixth Claim Falls Within § 425.16(e) ................................ 19

C.    The Fourth, Fifth and Sixth Claims for Relief Concern Conduct Protected By the Anti-SLAPP Law Because They Concern Statements Made In Connection With A Public Issue ......................... 21

D.    The Fourth, Fifth and Sixth Claims for Relief Have No Likelihood of Success on the Merits ..................................................... 21

    1.    The Motion to Dismiss Arguments Are Incorporated By Reference .............................................................................. 21

    2.    The Fifth Claim Fails Because There Is No Evidence That Toberoff Interfered With the Purported Economic Relationship ........................................................................... 22

    3.    The Fifth Claim for Relief Is Barred by the Statute of Limitations ............................................................................ 23

    4.    The Sixth Claim Against the Toberoff Entities Will Fail .......... 24

IV.    CONCLUSION AND REQUEST FOR FEES ............................................... 25

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

## <u>CASES</u>

5

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ................................................................. 13, 21

6

*Briggs v. Eden Council for Hope and Opportunity,*
7
    19 Cal. 4th 1106 (1999) ..................................................................... 14, 15, 16

8

*Campbell v. PMI Food Equipment Group, Inc.,*
    509 F.3d 776 (6th Cir. 2007) ........................................................................ 25

9

*Classic Media, Inc. v. Mewborn,*
10
    532 F.3d 978 (9th Circuit 2008) ..................................................................... 4

11

*Dixon v. Superior Court,*
    30 Cal. App. 4th 733 (1994) ........................................................................ 13

12

*Dove Audio v. Rosenfeld, Meyer & Susma,n*
13
    47 Cal. App. 4th 777 (1996) ........................................................................ 15

14

*GeneThera, Inc. v. Troy & Gould Prof. Corp.,*
15
    171 Cal. App. 4th 901 (2009) ...................................................................... 17

16

*Hilton v. Hallmark Cards,*
    580 F.3d 874 (9th Cir. 2009) ................................................................. 13, 21

17

*Jolly v. Eli Lilly & Co.,*
18
    44 Cal. 3d 1103 (1988) ................................................................................ 24

19

*Kashian v. Harriman,*
    98 Cal. App. 4th 892 (2002) ........................................................................ 14

20

*Ketchum v. Moses,*
21
    24 Cal. 4th 1122 (2001) ................................................................................ 4

22

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .............................................................................. 23

23

*Ludwig v. Superior Court,*
24
    37 Cal. App. 4th 8 (1995) ................................................................. 12, 15, 16

25

*Mindys Cosmetics, Inc. v. Dakar,*
    --- F.3d ---, 2010 WL 2652480 (9th Cir. July 6, 2010) ................... 12, 13, 14

26

*Neville v. Chudacoff,*
    160 Cal. App. 4th 1255 (2008) ....................................................... 13, 14, 17, 20

27

*Rohde v. Wolf,*
    154 Cal. App. 4th 28 (2007) ........................................................................ 14

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

iii
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993)............................................................................19

*Seltzer v. Barnes*,
    182 Cal. App. 4th 953 (2010).................................................13, 17, 21

*Siegel v. Warner Bros. Ent. Inc.*,
    690 F. Supp. 2d 1048 (C.D. Cal. 2009).......................................2, 12

*Siegel v. Warner Bros. Ent. Inc.*,
    658 F. Supp. 2d 1036 (C.D. Cal. 2009).......................................2, 12

*Siegel v. Warner Bros. Ent. Inc.*,
    542 F. Supp. 2d 1098 (C.D. Cal. 2008).....................................passim

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974) ................................................................................25

*Taheri Law Group v. Evans*,
    160 Cal. App. 4th 482 (2008).............................................................19

*United States ex rel. Newsham v. Lockheed Missile & Space Co.*,
    190 F.3d 963 (9th Cir. 1999)......................................................2, 4, 13

*Youst v. Longo*,
    43 Cal.3d 64 (1987).................................................................................22


**STATUTES**

17 U.S.C. § 304.....................................................................................5, 6, 15

17 U.S.C. 203 ...............................................................................................15

73 Fed. Reg. 3899 37 ................................................................................15

Cal. Civil Code § 47 ............................................................................1, 19

Cal. Code Civ. Proc. § 425 .............................................................passim

Cal. Code Civ. Proc. § 426 ....................................................................14

Cal. Evid. Code § 1152 ............................................................................18

L.R. 7-3 ............................................................................................................2

Public Law 105-298 (1998) ......................................................................6

Public Law. 94-553 1976 S22 .................................................................6

U.S.C. § 304....................................................................................................4

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

iv
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1

**<u>OTHER AUTHORITIES</u>**

2

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 11.01[A] (2010) ....................5

3

H.R. Rep. No. 94-1476 at 140 (1976) ............................................................................5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3

*"If you have the facts on your side you try the facts. If you don't have the facts you try the law. And if you don't have the facts and don't have the law, you try the prosecutor." – Defense Lawyer's Adage*

4

5    This Court has determined in three published opinions and countless orders

6    that the plaintiff in this action, DC Comics ("DC") has neither the facts nor the law

7    on its side in the long-running dispute between DC and the heirs of *Superman's*

8    creators, Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster") over the exercise

9    of their termination rights under the Copyright Act. After this Court ruled that the

10    embattled Siegel heirs had, at long last, recaptured the copyright in their iconic

11    creation, DC responded with a vituperative countersuit against their lawyer, Marc

12    Toberoff, who had successfully prosecuted the action for the Siegels and who also

13    represents the Shuster heirs. The transparent purpose of DC's lawsuit against Mr.

14    Toberoff is to re-litigate the issues that DC has already lost, disrupt the relationship

15    between Mr. Toberoff and his clients, and delay the final reckoning between DC and

16    Mr. Toberoff's clients. As demonstrated below, DC's desperate and cynical strategy

17    must fail. DC's allegations of interference arising from Toberoff's communications

18    and understandings with his clients, and DC's claims of damage resulting from the

19    clients' statutory terminations, rejection of DC's settlement overtures, and

20    commencement of litigation, challenge activity that is protected under California's

21    Anti-SLAPP law, California Code of Civil Procedure § 425.16. DC's retaliatory

22    claims strike at the heart of the *Superman* heirs' right to zealous representation by

23    an attorney to pursue their statutory rights in filings with the U.S. Copyright Office,

24    in settlement negotiations and in the courts. DC's countersuit is therefore a

25    paradigmatic strategic lawsuit against public participation, and the Anti-SLAPP law

26    commands that its Fourth, Fifth, and Six Claims for Relief be stricken.

27    In the mid-1930s, Siegel and Shuster, two Depression-era high school

28    students, co-created *Superman* and with it, the superhero genre. In 1938, for a

1  pittance, they signed a publisher's release and were later held to have granted their
2  entire copyright in *Superman* to DC.  Despite the riches their creations earned for
3  DC, Siegel and Shuster died in penury.  However, in 1976 and again, in 1998,
4  Congress amended the Copyright Act to provide authors and designated heirs the
5  right to recapture their copyrights by terminating such one-sided unremunerative
6  grants.  The Siegel heirs and the executor of Shuster's estate availed themselves of
7  this statutory termination right and, ever since, DC has fought tooth and nail to
8  prevent them from receiving its intended benefits.

9  The attorney for the Siegel heirs in the two actions that have been pending in
10 this District since 2004, and also for the Shuster heirs in the probating of the Shuster
11 Estate and the drafting, filing and enforcement of the executor's notices of
12 termination, is Marc Toberoff ("Toberoff") and his law firm, Toberoff & Associates.
13 Toberoff began representing the Shuster heirs in 2001, and the Siegels in late 2002.

14 In 2008 and 2009, Toberoff won key victories for his clients.  This Court first
15 ruled, in an extraordinarily detailed 72-page published opinion, that the Siegels'
16 *Superman* termination was valid with respect to the first *Superman* story, as
17 published in "Action Comics No. 1," which contained the core *Superman* elements.
18 Next, in August 2009, this Court, in a second exhaustive published opinion, held
19 that the Siegels' termination was valid with respect to the first two weeks of the
20 *Superman* newspaper strips, containing *Superman's* key origin story on the planet
21 Krypton.  *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1117-39 (C.D.
22 Cal. 2008) ("*Siegel I*") (validity of termination), 658 F. Supp. 2d 1036, 1080-84
23 (C.D. Cal. 2009) ("*Siegel II*") (scope includes newspaper strips).  In October 2009,
24 this Court denied DC's motion for reconsideration in a third published opinion.  *See*
25 690 F. Supp. 2d 1048 (C.D. Cal. 2009) ("*Siegel III*").

26 After losing on summary judgment, DC brought this countersuit against Mr.
27 Toberoff.  As demonstrated below, however, the Anti-SLAPP law requires prompt
28 dismissal of this lawsuit, because all of DC's claims involve communicative

1  activities that arise from Toberoff's clients' efforts to vindicate their legal rights:  in

2  copyright termination notices filed in the U.S. Copyright Office; in years of grinding

3  settlement negotiations accompanied by DC's threats of litigation; and finally in

4  years of litigation that led to Toberoff's victories on behalf of his clients.

5      DC's Fourth, Fifth, and Six Claims boil down to two contentions – that

6  Toberoff interfered by (i) wrongfully soliciting the Siegel and Shuster heirs as

7  clients and (ii) encouraging and enforcing the exercise of their termination rights

8  under the Copyright Act – both of which are plainly protected under the Anti-

9  SLAPP law.  Every alleged injury of which DC complains resulted from the Siegels'

10  and Shusters' struggle "against all odds" to enforce their statutory termination

11  rights, both in the Copyright Office and in the courts, instead of settling on DC's

12  one-sided terms. *Siegel I,* 542 F. Supp. 2d at 1102 (quotation marks omitted).  Their

13  pre-litigation communications and agreements with an attorney, Toberoff, as they

14  and he marshaled their resources and prepared to enforce rights under the Copyright

15  Act, lie at the core of the Anti-SLAPP statute's promise that strategic lawsuits will

16  not be allowed to deter or delay citizens from enforcing their legal rights.

17      Because the Fourth through Sixth Claims for Relief fall within the Anti-

18  SLAPP law, the burden is on DC to establish a "reasonable probability" that it will

19  prevail on the merits of these claims – a burden it cannot meet.  DC has no

20  reasonable probability of demonstrating a likelihood of success on the merits on any

21  of its three state-law claims against Toberoff and affiliated entities:  tortious

22  interference with contract; tortious interference with prospective economic

23  advantage; and declaratory relief under California's unfair competition laws.  The

24  claims fail as a matter of law for the reasons extensively detailed in the Motions to

25  Dismiss filed concurrently herewith, and for the additional reasons set forth in

26  Section III, below.  DC's claims are time-barred and moot, the heirs breached no

27  agreements, and Toberoff's alleged "interference" consisted of litigation-related

28  communications immunized by the litigation privilege.  Accordingly, the Court

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

3

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  should strike all three claims, and award the Toberoff defendants their attorney's

2  fees as mandated by the statute.[1]

3  **II.  FACTUAL BACKGROUND**

4  **A.      General Background**

5       Author Jerome Siegel and illustrator Joseph Shuster co-created *Superman*.

6  *Siegel I*, 542 F. Supp. 2d at 1126-30.  They conceived of *Superman* in the mid-

7  1930s, while in high school, and co-authored *Superman* comic strips.  *Id*. at 1102-

8  05.  In 1938, Siegel and Shuster adapted their preexisting *Superman* strips to a

9  comic-book format and their original *Superman* story was published in "Action

10 Comics No. 1" by Detective Comics. Inc., DC's predecessor-in-interest.  *Id.* at

11 1105-07.  "Action Comics No. 1" contained the essential format for *Superman*

12 stories to come.  *Id.* at 1108-1110.  By agreement dated March 1, 1938, Siegel and

13 Shuster granted Detective worldwide rights in their *Superman* story and character,

14 and DC freely exploited those rights in multiple media for over 70 years.  *Id.* at

15 1107, 1110.  From 1938 to 1943, Siegel and Shuster wrote hundreds of additional

16 *Superman* stories, and hundreds of *Superman* syndicated newspaper strips.  *Siegel*

17 *II*, 658 F. Supp. 2d at 1047-56.

18      In 1976, Congress amended the Copyright Act to extend the copyright term,

19 and in response to the plight of authors who lacked bargaining power and, like

20 Siegel and Shuster, had sold their copyrights for a pittance, never realizing fair

21 value for their contributions, Congress, gave authors, their surviving spouses,

22 children, and grandchildren the right to recapture their copyrights, for the extended

23 term, by terminating prior grants of copyright.  Complaint ¶ 45; 17 U.S.C. § 304.[2]

24 _____

25      [1] *See* Cal. Code Civ. Proc. § 425.16(c)(1), *United States ex rel. Newsham v. Lockheed Missile & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001).

26      [2] *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983 (9th Circuit 2008)

27 (noting that Congress, in recognition of the "unequal bargaining position of authors," engrafted the termination right into the 1976 Act to provide the benefits of the extended copyright renewal term to authors, rather than to their assignees, along

28 with "the monetary rewards of a work that may have been initially undervalued, but

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

4

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1   Congress intended to give the benefit of the extended copyright term to authors and

2   their families rather than to grantees, such as DC, for whom the automatic grant of

3   the extended term would have been an unjustified windfall.  *See* H.R. Rep. No. 94-

4   1476 at 140 (1976).  The termination right lies in stark contrast to ordinary contract

5   principles, as it empowers authors and designated heirs to terminate grants of

6   copyright *without cause*, regardless of the contracting parties' promises, intent or

7   expectations at the time of the grant.  17 U.S.C. § 304(c)(5).

8   **B.    The Siegels, Independently of Toberoff, Serve Termination Notices and**

9        **Commence Settlement Discussions**

10      In 1996, Jerome Siegel died.  *Siegel I*, 542 F. Supp. 2d at 1113; Complaint

11  ¶ 60.  He was survived by his widow, defendant Joanne Siegel, and their daughter,

12  defendant Laura Siegel Larson (the "Siegels").  *Siegel I*, 542 F. Supp. 2d at 1114.  In

13  1997, the Siegels began the process of terminating Jerome Siegel's 1938 *Superman*

14  copyright grant to DC.  *Id.*  On April 3, 1997, represented by counsel, the Siegels

15  served seven separate notices of termination under 17 U.S.C. § 304(c), terminating

16  Jerome Siegel's grants or potential grant(s) of copyright, each covering a multitude

17  of works embodying *Superman*.  *Id.*  The parties thereafter engaged in what the

18  Court has termed "settlement" discussions to resolve their legal dispute.  *Id.* at 1115.

19      The day before the termination was to take effect, DC sent a letter to Arthur

20  Levine, then-counsel for Joanne Siegel and Laura Siegel Larson, contesting the

21  "validity and scope" of their termination notices.  *Id.*; Declaration of Nicholas F.

22  Daum ("Daum Decl.)[3] Ex. A (Toberoff Decl. Ex. Q at 171).  Thereafter, the Siegels

23  retained new counsel, the firm of Gang, Tyre, Ramer and Brown, for further

24  _____

25  which later becomes a commercial success."); *see also* 3 M. Nimmer & D. Nimmer,
    *Nimmer on Copyright* § 11.01[A] (2010).

26      [3] All documents and deposition excerpts referenced in the text of this motion
    have been attached as exhibits to the Declaration of Nicholas F. Daum.  References
27  herein to "Ex. ___" are references to exhibits attached to the Daum Declaration.
    References to "MT Depo," "LSL Depo," "JS Depo," "MWP," "JP," and "KM
28  Depo" are, respectively, references to the Deposition of Marc Toberoff, Laura
    Siegel Larson, Joanne Siegel, Mark Warren Peary, Jean Peavy and Kevin Marks.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  settlement negotiations, conducted primarily by Kevin Marks ("Marks") of Gang,

2  Tyre for the Siegels, throughout 2001. *Siegel I*, 542 F. Supp. 2d at 1115; Complaint

3  ¶ 61.

4  **C.    Marc Toberoff Begins Representing the Shuster Family**

5      Joseph Shuster died in 1992. Complaint ¶ 46. At his death, he had no

6  surviving widow, children or grandchildren. *Id.* Although he was survived by his

7  siblings, Frank Shuster (who died in 1996) and Jean Peavy ("Peavy"), and by

8  Peavy's two children, *id.*, these heirs held no termination rights under the 1976

9  Copyright Act, as such rights had been provided solely to an author, his/her widow

10  or widower, children, or grandchildren. *See* Public Law. 94-553 1976 S22, at

11  § 304(c)(2). In 1998, however, Congress amended the 1976 Act to provide, for the

12  first time, the termination right to an "author's executor, administrator, personal

13  representative, or trustee." 17 U.S.C. § 304; Pub. Law 105-298 (1998).

14      In mid-2001, Joseph Shuster's nephew, Mark Warren Peary ("Peary"), after

15  researching copyright issues on the internet, sought out attorney Marc Toberoff in

16  connection with the potential termination of Joseph Shuster's copyright grants. Exs.

17  B, G (MT Depo at 52:9-25; MWP Depo at 20:5-20:22). Peary's telephone call was

18  Toberoff's first contact with any member or representative of the Siegel or Shuster

19  families. *Id.* Soon thereafter, Toberoff began providing legal advice to Peavy and

20  Peary (hereinafter, the "Shusters"). Ex. G (MWP Depo at 23:18-20; 23:25-24:3). In

21  November 2001, Peavy and Peary entered into a joint venture agreement with

22  Pacific Pictures Corp. ("PPC"), Toberoff's "loan-out" company, "for the purpose of

23  retrieving, enforcing and exploiting all of Joe Shuster and his estate's rights, claims,

24  copyrights, property, title and interests in and to Joe Shuster's creations." Ex. C

25  (MT Depo Ex. 13, at p. 1) (the "2001 PPC Agreement"); Complaint ¶ 54. The 2001

26  PPC Agreement provided for the establishment of the Estate of Joseph Shuster

27  through probate proceedings, and that the venture would "retain Marc Toberoff,

28  Esq. to render legal services." Ex. C (MT Depo Ex. 13, at ¶ 7); Complaint ¶ 57.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Toberoff has provided legal advice to Peavy and Peary continuously since
2   November 2001.  Ex. B (MT Depo at 65:1-66:22).

3   **D.    The Siegels Break Off Settlement Negotiations With DC**

4          Meanwhile, the Siegels (still represented by Gang, Tyre) and DC continued
5   settlement negotiations.  On October 19, 2001, Gang Tyre sent to DC a "six page
6   letter outlining the substance of a settlement offer from defendants." *Siegel I*, 542 F.
7   Supp. 2d at 1136.  On October 26, 2001, DC responded with its own outline and
8   counter-offer.  *Id.*  DC's outline was materially different than the Siegels' letter
9   summary of the proposed settlement, including differences with regards to the scope
10  of the rights granted, the relevant indemnities and other warranties, and additional
11  issues.  *See id.*  Months later, on February 1, 2002, DC's outside counsel provided
12  the Siegels with a 56-page draft long-form settlement agreement.  *Id.* at 1115; Ex. P
13  (LSL Depo Ex. 25).  The draft agreement also contained numerous differences from
14  Marks' October 19 letter and even DC's October 26 letters.  *Id.* at 1137-40.

15         **1.    Toberoff Does Not Contact the Siegel Family**

16         As Toberoff began to advise the Shuster family in November 2001, he
17  attempted to learn the status of the Siegels' parallel negotiations with DC.  Ex. B
18  (MT Depo 86:1-87:4).  The Siegels' prior counsel, Arthur Levine, informed
19  Toberoff that Marks represented the Siegels in negotiations with DC.  Ex. B (MT
20  Depo 86:22-87:1).  Accordingly, Toberoff left a phone message for Marks on
21  November 29, 2001.  Marks did not return the call.  Ex. R (KM Depo 151:4-11);
22  Ex. B (MT Depo 86:20-21).  On February 6, 2002, Toberoff tried to call Marks
23  again.  Exs. R, S (KM Depo 151:18-152:2 & Ex. 3 at GTBR 604).   A few days
24  later, Marks called Toberoff back, and the two had a brief conversation, in which
25  Marks informed Toberoff that the Siegels were in negotiations with DC, and
26  declined to speak with Toberoff about the Siegels' *Superman* interests.  Exs. B, R
27  (MT Depo 90:16-92:9; KM Depo 151:18-153:20).  The conversation did not
28  proceed further.  Ex. B (MT Depo 90:21-91:1).  Apart from the unanswered

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

7

1  November 29, 2001 message and the brief February 6, 2002 call with Marks,

2  Toberoff had no contact with any member or representative of the Siegel family

3  until late-July or early August 2002.  Exs. B, K, M (MT Depo 94:10-97:24; JS Depo

4  33:24-34:1, 41:1-3; LSL Depo 17:6-8).

5       **2.    Joanne Siegel Informs DC That There Will Be No Deal**

6       On May 9, 2002, Joanne Siegel ("Joanne"), with no involvement by counsel,

7  sent a letter to Richard Parsons, the COO of DC's parent company, AOL Time

8  Warner, Inc.  In that letter, she expressed her anger at the draft contract provided by

9  DC, and declared unequivocally that an agreement was "impossible."  Ex. O (LSL

10 Depo Ex. 23) ("After four years we have no deal and this contract makes an

11 agreement impossible.")  No lawyer helped her write the letter, and she did not

12 discuss the letter with any lawyer before sending it.  Ex. K (JS Depo 33:17-34:1). [4]

13 In fact, at the time Joanne sent this letter, neither of the Siegels had ever had any

14 contact with Toberoff.  Exs. K, M (JS Depo 33:17-34:1, 41:1-3; LSL Depo 17:6-8).

15 **E.    The Siegels Fire Gang Tyre and Then Hire Toberoff**

16      In late July 2002, Toberoff called Marks to inquire as to the status of the

17 Siegels' termination.  Ex. B (MT Depo 94:10-97:19).  Earlier in 2002, Toberoff and

18 Ari Emanuel ("Emanuel") of the Endeavor Talent Agency, now William Morris

19 Endeavor, had formed a joint venture, IP Worldwide, LLC ("IP Worldwide"), for

20 the purpose of acquiring and talent packaging intellectual property rights.  Exs. B, R

21 (MT Depo 32:12-14, 116:6-23; KM Depo 168:13-20).  Toberoff asked Marks if the

22 Siegels would be interested in licensing their *Superman* rights.  *Id.* (MT Depo

23 97:14-19; KM Depo 166:23-167:3).  Marks was receptive and told Toberoff that he

24 should present any offers.  *Id.* (MT Depo 94:17-95:2, 97:14-19; KM Depo 166:23-

25 167:3).

26
27      [4] DC has conceded that Joanne acted without counsel's assistance or participation.  Ex. Z (Joint Stip. re: Motion to Compel Whistle Blower Documents at 5) (DC: "Indeed, on May 9, 2002, plaintiff Joanne Siegel – *without the assistance or participation of counsel* – wrote letters to Time Warner's chief executives…") (emphasis added).

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1    Several days later, in early August 2002, Marks held a conference call with
2    Toberoff and Emanuel, during which Emanuel made a proposal to purchase the
3    Siegels' rights for $15 million plus a portion of the "back end."  Exs. B, R. (MT
4    Depo 99:5-100:1, 103:1-9; KM Depo 168:2-169:5).  Marks conveyed this August
5    2002 offer to the Siegels, but they did not respond to Toberoff or Emanuel.
6    Toberoff had no further contact with the Siegels or their counsel until early October
7    2002.  Exs. B, R (MT Depo 105:24-106:23; KM Depo 169:23-170:12, 171:14-21,
8    172:14-17, 174:17-21).

9    On September 21, 2002, the Siegels sent a letter to their counsel at Gang
10   Tyre, with a copy to Time Warner (DC's parent), that terminated Gang Tyre and
11   provided "formal notification that we are totally stopping and ending all
12   negotiations with DC Comics, Inc., its parent company AOL Time Warner and all of
13   its representatives and associates."  Ex. Q (LSL Depo Ex. 41) (Sept. 21, 2002 letter
14   to Marks and Ramer).  The same day, the Siegels sent a letter to DC's President,
15   stating that "after many years of difficult negotiations with your representatives
16   culminating in an offer sent to us on February 4, 2002, irreconcilable differences
17   exist that cannot be overcome."  Ex. L (JS Depo Ex. 43) (Sept. 21, 2002 letter to
18   Levitz); *Siegel I*, 542 F. Supp. 2d at 1136.

19   The September 21 letters were sent before either of the Siegels had ever met
20   Toberoff, and Toberoff had not consulted with them in any way concerning these
21   letters.  Ex. M (LSL Depo 261:17-262:7).  In early October 2002, Joanne Siegel
22   contacted Toberoff.  Exs. B, M (MT Depo 106:1-107:7, 135:1-6; LSL Depo 17:6-
23   13).  Joanne informed Toberoff that she had gotten his name from Jean Peavy, and
24   that she was looking for a lawyer to represent her in connection with the Siegels'
25   termination rights.  Ex. B (MT Depo 107:8-24).   The Siegels thereafter formed an
26   attorney-client relationship with Toberoff.  Exs. B, K, M (MT Depo 109:14-110:9;

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2                                        9
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1  JS Depo 41:1-3; LSL Depo 17:6-13).[5]

2  **F.      The Commencement of the *Siegel* Litigation**

3      In November 2002, the Siegel family, now represented by Toberoff, filed an

4  additional notice of termination regarding *Superboy*.  Ex. N (LSL Depo Ex. 17).

5  Thereafter, Toberoff met with Warner Bros.' General Counsel, who acted on behalf

6  of DC, to engage in negotiations regarding *Superman* and *Superboy*, but to no avail.

7  Ex. V (John Schulman Depo 94:23-95:19).  In October 2004, the Siegels,

8  represented by Toberoff, filed two actions in this Court, No. 04-CV-08400 ODW

9  (RZx) (*Superman*) & 04-CV-08776 ODW (RZx) (*Superboy*), seeking, among other

10  remedies, declaratory relief that the *Superman* and *Superboy* terminations were valid

11  and enforceable.  Prior to filing these actions, Toberoff entered into a legal retainer

12  agreement with the Siegels and has litigated these two cases for nearly six years

13  pursuant to such retainer agreements.  Ex. B (MT Depo. 114:15-18).

14  **G.      The Shuster Termination and Cancellation of the PPC Agreements**

15      Meanwhile, as contemplated in the 2001 PPC Agreement, the estate of Joseph

16  Shuster (the "Shuster Estate") was probated.  Mark Warren Peary was appointed as

17  the Shuster Estate's personal representative ("Shuster Executor").  Ex. G (MWP

18  Depo 56:14-25).  In October 2003, the 2001 PPC Agreement was modified, creating

19  a new agreement (the "2003 PPC Agreement") to add as a party Mark Warren Peary

20  in his capacity as personal representative of the Shuster Estate.  Exs. B, D (MT

21  Depo 70:13-17 & Ex. 14).  Like the 2001 PPC Agreement, the 2003 PPC

22

23      [5] After this relationship formed, in October 2002, Joanne Siegel, and Laura
24  Siegel Larson entered into an agreement with IP Worldwide (the "IP Worldwide
   Agreement"), dated as of October 3, 2002.  Ex. F (MT Depo Ex. 18).  Under this
   agreement, which had an 18-month term, the Siegels agreed to "grant[] [IP
25  Worldwide] the exclusive right to represent [the Siegels' rights] throughout the
   world in negotiating and assisting [the Siegels] to arrange and negotiate the sale,
26  lease, license, and all other dispositions or exploitations of the Rights."  *Id.* ¶ 1.  IP
   Worldwide would "provide Marc Toberoff's legal services with respect to all legal
27  contracts in connection with all of the above."  *Id.* ¶ 2.  The IP Worldwide
   Agreement was briefly extended, and then expired of its own force as of on April
28  23, 2005, and has had no effect for more than five years. *Id.* ¶ 5.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Agreement provided that Toberoff would be retained as counsel. *Id.* at ¶ 2.

2       In November 2003, the Shuster Executor filed in the U.S. Copyright Office

3   and served on DC a formal notice of termination under 17 U.S.C. § 304(d) (the

4   "Shuster Termination"), terminating Joseph Shuster's *Superman* copyright grants.

5   *Siegel I*, 542 F. Supp. 2d at 1114, n.3; Complaint ¶ 79-81.  Toberoff prepared the

6   termination notice and proof of service.  Ex. H (MWP Depo Ex. 7) (Notice of

7   Termination at 10, 13); Complaint ¶ 80.  DC contests the validity of the termination.

8   Complaint ¶¶ 92-151.  On April 28, 2005, DC sent a letter to Peavy and Peary that

9   repeated DC's arguments against the terminations in the *Siegel* litigation, and

10  offered to settle with the Shusters.  Ex. J (MWP Depo Ex. 10).  The Shuster

11  Executor declined this offer.  Ex. G (MWP Depo 68:18-20).

12      In September 2004, Toberoff, Jean Peavy, and Mark Warren Peary cancelled

13  the 2001 and 2003 PPC Agreements.  Ex. E (MT Depo Ex. 15).  For nearly six

14  years, Toberoff has had only a legal retainer agreement with Peavy and the Shuster

15  Executor.  Ex B (MT Depo, 62:9-14; 78:19-23).  Thus, neither of the PPC

16  Agreements has had any force or effect for nearly six years.  The Shuster family is

17  still represented by Toberoff.  PPC was dissolved in 2009.  RJN in support of

18  Motion to Dismiss Fourth and Fifth Causes of Action ("MTD RJN") ¶ 7.

19  **H.    The Siegels Win Summary Judgment in the *Siegel* Litigation**

20      Discovery in the *Siegel* Litigation lasted over two years.  The parties

21  produced voluminous documents and DC took depositions of all of the witnesses to

22  the Siegel and Shuster dealings with Toberoff.  On April 30, 2007, the parties filed

23  cross-motions for partial summary judgment.  On March 26, 2008, the Court issued

24  its ruling on the parties' summary judgment motions.  *See Siegel I*, 542 F. Supp. 2d

25  1098.  The Court granted the Siegels' motion in dominant part.  Notably, the Court

26  held that "all the Superman material contained in <u>Action Comics</u>, Vol. 1 [the first

27  published *Superman* comic-book] is not a work-made-for-hire and is therefore

28  subject to termination." *Id.* at 1130.  The Court rejected many of DC's affirmative

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2
11
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  defenses, including DC's argument that the parties had a binding settlement

2  agreement as a result of the 2001-2002 negotiations.  *Id.* at 1139.  In 2009, the Court

3  further ordered that a number of additional *Superman* works had been successfully

4  "terminated," *Siegel II*, 658 F. Supp. 2d at 1063-83, and thereafter denied DC's

5  motion to reconsider that ruling.  *Siegel III*, 690 F. Supp. 2d at 1073-74.

6  **I.    DC Exploits A Theft Of Privileged And Confidential Information From**

7  **Toberoff's Law Firm In Filing the Instant Complaint**

8        On May 14, 2010, DC filed the instant action against Toberoff, the Siegels

9  and Shusters, and attached to its Complaint an anonymous cover letter (the "Cover

10 Letter"), calling it the "Toberoff Timeline."  DC acknowledges in its Complaint that

11 the Cover Letter was written by an attorney and former Toberoff & Associates

12 employee (Complaint ¶ 89), yet DC fails to mention in its Complaint that the Cover

13 Letter, which the attorney sent to Warner Bros.' General Counsel prior to June 28,

14 2006, in the midst of the *Siegel* litigation, enclosed reams of ***privileged*** attorney-

15 client documents ***stolen*** by the attorney from Toberoff's law firm.  Ex. BB

16 (Toberoff Sept. 20, 2007 Decl. ¶¶ 7-14).  The Cover Letter on which DC relies is set

17 up as an obvious "hit piece" against Toberoff, and purports to discuss the stolen

18 privileged documents the attorney handed over to Warner Bros. in blatant violation

19 of his duties of loyalty and confidentiality to the Siegels and Shusters.  Ex. AA, BB

20 (Toberoff Mar. 23, 2007 Decl. ¶¶ 25-26; Toberoff Sept. 20, 2007 Decl. ¶¶ 7-8).

21 **III.  ARGUMENT**

22 **A.    The Anti-SLAPP Law**

23       California's Anti-SLAPP law, Code of Civil Procedure ("CCP") § 425.16,

24 provides substantive immunity from suit for claims that interfere with the exercise

25 of speech rights, including the right to communicate with government offices, or

26 with private parties in contemplation or furtherance of litigation.  *See Mindys*

27 *Cosmetics, Inc. v. Dakar*, --- F.3d. ---, 2010 WL 2652480 at *1 (9th Cir. July 6,

28 2010); *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995); *Neville v.*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2
12
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  *Chudacoff*, 160 Cal. App. 4th 1255, 1268-69 (2008).  The Anti-SLAPP law applies

2  to California state-law claims brought in federal court.  *Batzel v. Smith*, 333 F.3d

3  1018, 1025 (9th Cir. 2003) .  "The hallmark of a SLAPP suit is that it lacks merit

4  and is brought with the goals of obtaining an economic advantage over a citizen

5  party by increasing the cost of litigation to the point that the citizen party's case will

6  be weakened or abandoned, and of deterring future litigation."  *United States v.*

7  *Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999).  It is a remedy

8  designed to quickly dispose of "lawsuits brought primarily to chill the valid exercise

9  of constitutional rights of freedom of speech and petition for redress of grievances."

10  Cal. Code Civ. Proc. § 425.16(a); *Dixon v. Superior Court*, 30 Cal. App. 4th 733,

11  741 (1994).

12  Anti-SLAPP motions to strike involve a two-step process.  First, a defendant

13  is required to make a prima facie showing that the plaintiff's suit arises from activity

14  that is protected under the Anti-SLAPP law.  *See Neville*, 160 Cal. App. 4th at 1261-

15  62.  Second, "[t]he burden then shifts to the plaintiff to establish a reasonable

16  probability that the plaintiff will prevail on his or her [] claim."  *Batzel*, 333 F.3d at

17  1024.  In applying § 425.16, courts must heed the Legislature's admonition that it be

18  "construed broadly."  *Hilton v. Hallmark Cards*, 580 F.3d 874, 882-83 (9th Cir.

19  2009).  Even if a cause of action concerns *some* activity that is not protected under

20  § 425.16 in addition to protected activity, the cause of action will be subject to the

21  Anti-SLAPP law provided that the protected activity is not "merely incidental" to

22  the unprotected conduct.  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962-963 (2010).

23  **B.**  **The Fourth, Fifth and Sixth Claims Concern Conduct Protected By the**

24  **Anti-SLAPP Law Because They Concern Statements Made In Connection**

25  **With Litigation and Filings In the U.S. Copyright Office**

26  California enacted the anti-SLAPP statute "in response to the legislature's

27  concern about civil actions aimed at private citizens to deter or punish them for

28  exercising their political or *legal* rights.'"  *Mindys Cosmetics*, 2010 WL 2652480 at

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

13

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1    *1 (quoting *Newsham*, 190 F.3d at 970) (emphasis added).  The Anti-SLAPP statute

2    applies to claims based upon "written or oral statement[s] or writing[s] made in

3    connection with an issue under consideration or review by a legislative, executive,

4    or judicial body, or any other official proceeding authorized by law."  Cal. Code

5    Civ. Proc. § 425.16(e)(2).  Courts have routinely applied this provision to

6    "litigation-related" activities, and have adopted an "expansive view of what

7    constitutes litigation-related activities within the scope of section 425.16."  *Kashian*

8    *v. Harriman*, 98 Cal. App. 4th 892, 908 (2002).  If a statement "concern[s] the

9    subject of the dispute" and is made "in anticipation of litigation 'contemplated in

10    good faith and under serious consideration'" it falls within § 426.16(e).  *Neville*, 160

11    Cal. App. 4th at 1268 (quoting *Rohde v. Wolf*, 154 Cal. App. 4th 28, 36-37 (2007)).

12    The Ninth Circuit recently clarified that "an attempt to establish a property right

13    under a comprehensive federal statutory scheme"(in that case, a trademark

14    application) is litigation-related activity that is protected by the Anti-SLAPP law.

15    *Mindys Cosmetics*, 2010 WL 2652480 at *3.

16         1.   **The Fourth and Fifth Claims Fall Within § 425.16(e)**

17           (a)   **The Fourth Claim Arises From the Encouragement**

18                **of the Shuster Executor to Exercise His Constitutional Right**

19                **to Petition through Filing With a Government Agency**

20         The right to petition protected by the Anti-SLAPP law is clearly implicated

21    where, as here, an individual acts under a comprehensive federal statutory scheme to

22    establish a property right.  *See* CCP § 425.16(e)(1) (right to petition under Anti-

23    SLAPP law includes "any written or oral statement or writing made before … any

24    other official proceeding authorized by law"); *Briggs v. Eden Council for Hope and*

25    *Opportunity,* 19 Cal. 4th 1106, 1109-10 (1999) (granting anti-SLAPP motion where

26    lawsuit based on filing with government agency and assisting in litigation); *Mindys*

27    *Cosmetics*, 2010 WL 2652480 at *3.

28         Toberoff prepared the Shuster Termination so the Shuster Executor could

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

14

1    exercise his statutory right of termination.  *See* 73 Fed. Reg. 3899 37 (Copyright

2    Office notice, Jan. 23, 2008) ("The termination provisions are not self-executing.").

3    The formal "Notices of Termination" were legally operative documents, complete

4    with citations to caselaw, proofs of service and other indicia of the careful

5    draftsmanship of a lawyer.  Exs. H, I (MWP Depo. Exs. 7, 8).  As required by

6    statute, the Shuster Termination was filed and recorded with the U.S. Copyright

7    Office.  37 *See* 17 U.S.C. 304(c)(4); 304(d)(1); 203(a)(4).  The notice of termination

8    was required to contain specific information, without which the Copyright Office

9    will refuse to record such termination.  *See* 37 C.F.R. 201.10(f).

10          Because DC's Fourth Claim is clearly based upon filing with the U.S.

11   Copyright Office and service on DC of statutory termination notices, under clear

12   Ninth Circuit precedent it is subject to the protections of the Anti-SLAPP law.  *See*

13   *Mindys Cosmetics*, 2010 WL 2652480 at *4 (filing with trademark office is an

14   exercise of the right to petition under § 425.16(e)).

15          **(b)**      **The Fourth and Fifth Claims Arise From the Encouragement**

16                       **of the Shuster Executor to Exercise His Constitutional Right**

17                       **to Petition through Taking Legal Action**

18          Courts have consistently applied the litigation-related protections of the Anti-

19   SLAPP law to strike claims for tortious interference with contract and/or economic

20   relations.  For example, in *Ludwig*, 37 Cal. App. 4th at 12-13, the Court used the

21   Anti-SLAPP law to dismiss claims for interference with contract and economic

22   advantage based on the defendant's providing resources to support litigation as to

23   development rights, holding that the anti-SLAPP law applies to those who "formally

24   fil[e] a lawsuit" as well as those "who support[] and encourage[] the filing of a

25   lawsuit."  *See also Briggs,* 19 Cal. 4th at 1110, 1115 (assistance "in prosecuting

26   a…court action" falls under §425.16(e)).  In *Dove Audio v. Rosenfeld, Meyer &*

27   *Susman,* 47 Cal. App. 4th 777, 784-85 (1996), the Court applied the Anti-SLAPP

28   law to strike a claim for tortious interference with economic relations based on a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

15

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1  defendant sending a letter to private parties regarding a planned complaint

2  concerning royalty payments.  That a "communication was made to other private

3  citizens rather than to [an] official agency does not exclude it from the shelter of the

4  Anti-SLAPP suit statute."  *Id.* at 784; *See also Briggs,* 19 Cal. 4th at 1117.

5          In its Fourth Claim, DC alleges that Toberoff and PPC tortiously interfered

6  with DC's 1992 Agreement with Frank Shuster and Jean Peavy, by inducing Mark

7  Warren Peary "to file a probate action in Los Angeles Superior Court to establish

8  the Shuster Estate" and to take legal action to terminate Joseph Shuster's copyright

9  grants, which, as is apparent from this suit, was a prelude to litigation.  Complaint

10  ¶¶ 58, 164.  The Fourth Claim further alleges that Toberoff thereby manipulated the

11  Shuster Executor's claims regarding *Superboy* so as to benefit the Siegels in their

12  litigation.  Complaint ¶ 165.  These allegations – that Toberoff induced the filing of

13  probate proceedings and a statutory notice of termination, fall clearly within

14  § 425.16(e)'s protection for such activities.

15          Similarly, the Fifth Claim is directly based on alleged inducements to litigate.

16  The gravamen of the claim is that Toberoff allegedly made improper offers to the

17  Siegels, causing them to reject a settlement proposal by DC, and to initiate litigation

18  to vindicate their recaptured *Superman* copyrights.  Complaint ¶ 173.  This

19  allegation – the center-piece of DC's Fifth Claim – is unquestionably based on

20  support and encouragement of litigation.  As such, the Fifth Claim unambiguously

21  falls within Section 425.16(e).  *See e.g., Ludwig*, 37 Cal. App. 4th at 17.

22          **(c)     The Fourth and Fifth Claims Arise from Protected**

23                    **Communications in the Context of Anticipated Litigation**

24                    **and Settlement Discussions**

25          The Fourth and Fifth Claims are also subject to the Anti-SLAPP law because

26  the purportedly tortious communications occurred in the context of settlement

27  negotiations and anticipated litigation over statutory termination rights.  The Anti-

28  SLAPP law, like the litigation privilege, applies to statements that are reasonably

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2
16
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  relevant to pending or *contemplated* litigation.  *See Neville*, 160 Cal. App. 4th at

2  1266.  Communications related to the *settlement* of anticipated litigation are also

3  clearly protected by the Anti-SLAPP law.  *See Seltzer v. Barnes*, 182 Cal. App. 4th

4  953, 963 (2010) ("settlement negotiations are an exercise of the right to petition and

5  statements made as part of such negotiations are in connection with the underlying

6  lawsuit for purposes of section 425.16, subdivision (e)(2)").[6]

7       With respect to the Fourth Claim, the Shusters' actions related to the Shuster

8  Termination were plainly related to contemplated litigation and settlement.  The

9  Shusters were informed, before they reached out to Toberoff, that the Siegels were

10  in the midst of settlement negotiations and threatened litigation with DC.  *See*

11  Section II.B., *supra*.  In March 2001, well before meeting Toberoff, Jean Peavy sent

12  Joanne Siegel a letter, noting that "[t]here was so much injustice done that I am

13  hoping that the wrongs will be righted and that *your attorney* will get a fair deal for

14  you."  Ex. Y (JP Depo Ex. 17) (emphasis added).  The 2001 and 2003 PPC

15  Agreements between Toberoff and the Shusters clearly contemplate litigation

16  related to the termination of Joseph Shuster's copyright grants.  Both agreements

17  state that the venture would pay "any and all attorneys' fees, costs and

18  disbursements in connection with any legal actions or disputes concerning the

19  enforcement and/or defense of the Rights" and would retain Toberoff's services "to

20  render legal services . . . including in connection with all legal disputes, litigation,

21  arbitration and/or mediation regarding the Rights."   Exs. C, D (MT Depo Exs. 13 &

22  14) (2001 & 2003 PPC Agreements).

23       In 2005, DC sent a letter to Peavy and Peary, referencing its lengthy litigation

24  with the Siegels, asserting defenses to the Shuster Termination and making an initial

25  settlement offer.  Ex. J (MWP Depo Ex. 10).  The entire process of the Shuster

26  ───────────────
27    [6] *See also GeneThera, Inc. v. Troy & Gould Prof. Corp.,* 171 Cal. App. 4th 901, 907-908 (2009) (claim for tortious interference based on a settlement offer in another action barred by Anti-SLAPP law).

28

1 Termination was conducted in the arena of threatened litigation and settlement,

2 which brings the Fourth Claim squarely within the Anti-SLAPP law.

3      As for the Fifth Claim, it equally clear that Toberoff's communications with

4 the Siegels occurred in connection with settlement negotiations and anticipated

5 litigation.  Litigation between DC and the Siegels was contemplated as early as

6 1997, when the Siegels served their initial notices of termination.  By April 15,

7 1999, DC had sent the Siegels a letter stating that it intended to engage in litigation

8 over the terminations if the parties failed to settle.  Ex. A (Toberoff Decl. Ex. Q).[7]

9 The Siegels entered into a tolling agreement with DC, in which both parties agreed

10 that neither would "assert any statute of limitations . . . defense" for the period in

11 which they were engaged in negotiations.  *Id.* (Toberoff Decl. Ex. Z).  The parties

12 also agreed to treat their communications as confidential settlement communications

13 under Cal. Evid. Code § 1152.  Ex. T, U (KM Depo Exs. 5 & 6).  The parties

14 consistently referred to their "settlement" negotiations, and the attorneys involved

15 have referred to the litigation "looming over" over such negotiations.  Ex. R (KM

16 Depo. 45:17-46:6).  The Court has already specifically characterized DC's

17 discussions with the Siegels as "settlement negotiations."  *Siegel I*, 548 F. Supp. 2d

18 at 1136.

19           **(d)**    **The Fourth and Fifth Claims Arise From Protected**

20                  **Solicitation of Attorney-Client Relationships**

21      The Fourth and Fifth Claims also fall within the Anti-SLAPP law because

22 they relate directly to the establishment of an attorney-client relationship.  The Anti-

23 SLAPP law applies to actions based upon the allegedly improper solicitations of

24 clients by attorneys.  *See Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 489

---

25      [7] The 4/15/99 letter stated: "[O]ur client has no alternative but to move to the

26 stage of putting your clients on clear notice … of DC Comics' rights and of its determination … to take all appropriate and necessary steps to protect [its] rights.

27 First, your clients are hereby put on notice that <u>DC Comics rejects both the validity and scope of the Notices and will vigorously oppose any attempt by your clients to

28 exploit or authorize the exploitation of any copyrights, or indeed any rights at all,</u> in Superman."  Ex. A (Toberoff Decl. Ex Q at 1).(emphasis added).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  (2008) (in action involving "improper solicitation of another attorney's client,"

2  finding that "it is difficult to conjure a clearer scenario than the case before us of a

3  lawsuit arising from [Anti-SLAPP] protected activity.").  Indeed, California Civil

4  Code § 47(b) has long provided immunity against lawsuits based on the solicitation

5  of opposing parties in ongoing litigation.  As the California Supreme Court has held,

6  a claim based upon "alleged misrepresentations" of a lawyer "in the course of

7  discussions [over] the possibility of being retained to prosecute [an] action" cannot

8  serve as the basis for a lawsuit brought by anyone other than the client to whom the

9  statements were addressed.  *Rubin v. Green*, 4 Cal. 4th 1187, 1196-98 (1993).

10  The Fourth Claim is based upon the formation of an attorney-client

11  relationship between Toberoff and the Shuster family.  Immediately after he was

12  contacted by Peary in mid-2001, Toberoff entered into an attorney-client

13  relationship with, and began providing legal advice to, Peavy and Peary.  Ex. G

14  (MWP Depo. 23:18-20, 23:25-24:3).  That relationship – including the advice given

15  by Toberoff to Peavy and Peary as to the exercise of termination rights – is clearly

16  the basis of DC's Fourth Claim.  *See* Complaint, ¶¶ 164-166.  Accordingly, the

17  Fourth Claim is subject to the Anti-SLAPP law.

18  The Fifth Claim is likewise premised on purportedly tortious actions taken by

19  Toberoff to induce the Siegels to become his clients and is thus, equally subject to

20  the Anti-SLAPP law.  Toberoff formed an attorney-client relationship with the

21  Siegels in October 2002, immediately after Joanne Siegel contacted him, and he has

22  represented the Siegels ever since.  Exs. B, K, M (MT Depo 106:1-107:7, 109:14-

23  110:9, 135:1-6; JS Depo 41:1-3; LSL Depo 17:6-13).

24  ## 2.   The Sixth Claim Falls Within § 425.16(e)

25  DC's Sixth Claim alleges that "[t]he various copyright assignment and

26  consent agreements between Toberoff and/or his companies, the Siegel Heirs, and

27  the Shusters Heirs, are void and unenforceable, including under California's unfair

28  competition laws," and incorporates by reference the preceding allegations,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2
19
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  including those related to the 2001 and 2003 PPC Agreements and the IP

2  Worldwide Agreement.  *See* Complaint, ¶¶ 174-175.

3          The California Supreme Court has specifically held that California's unfair

4  competition law may not be used as an end-run around the protections afforded by

5  the laws barring suits related to the solicitation of litigation.  *See Rubin*, 4 Cal. 4th at

6  1203 ("[P]lacing in the hands of a litigation adversary a weapon with the tactical

7  potential of a statutory unfair competition claim [] would promote all of the evils we

8  have described above as accompanying retaliatory suits based on litigation-related

9  communications."); *see also Thornton v. Rhoden*, 245 Cal. App. 2d. 80, 99 (1966)

10  ("The salutary purpose of the [litigation] privilege should not be frustrated by

11  putting a new label on the complaint.").[8]

12          DC's challenge to these alleged agreements under the unfair competition laws

13  invokes the litigation-protection provisions of the Anti-SLAPP law for the reasons

14  discussed above. Each of the agreements at issue was expressly entered into with

15  respect to Toberoff's legal services regarding the Siegel Termination and Shuster

16  Termination, respectively.  For instance, as noted above, both the 2001 and 2003

17  PPC Agreements specifically refer to employing Toberoff's legal services (Ex. C ¶

18  7, Ex.  D ¶ 2), and this was clearly understood by Toberoff's clients.  Ex. G (MWP

19  Depo 25:16-26:4).  DC's effort to attack contracts for the provision of legal services

20  in connection with the termination notices, settlement discussions, and anticipated

21  litigation strikes at the heart of protected activity under the Anti-SLAPP statute.

22          DC has also alleged that a consent agreement exists between the Siegels and

23  Shusters regarding settlement.  Complaint ¶ 157, 175.  As any such agreement

24  _____

25  [8] The protections of § 425.16(e)(2) are similar to California's "litigation privilege," contained within California Civil Code § 47(b). "[T]he two statutes serve

26  similar policy interests, and courts look to the litigation privilege [section 47] in construing the scope of [section 425.16,] subdivision [(e)(2)] with respect to the first

27  step of the two-step anti-SLAPP inquiry."  *See Neville*, 160 Cal. App. 4th at 1262-63.  Accordingly, the arguments and facts set forth above that demonstrate why the

28  Fourth, Fifth and Sixth Claims fall within 425.16(e)(2) also mean that such claims are barred by the litigation privilege. *See Neville,* 160 Cal. App. 4th at 1262.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

20

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  would be directly related to the settlement of ongoing litigation, DC's claim is

2  clearly subject to the Anti-SLAPP law.  *See Seltzer*, 182 Cal. App. 4th at 962.

3  **C.    The Fourth, Fifth and Sixth Claims for Relief Concern Conduct**

4  **Protected By the Anti-SLAPP Law Because They Concern Statements**

5  **Made In Connection With A Public Issue**

6  DC's Fourth, Fifth and Sixth claims also fall within the Anti-SLAPP statute

7  under a separate prong, CCP § 425.16(e)(4), which protects actions that "concern[]

8  an exercise of free speech rights in connection with a public issue."  *Id.*  The instant

9  litigation, which concerns control of the rights to the iconic character *Superman*, is

10  indisputably a public issue:  *Superman* is clearly "in the public eye," and the

11  litigation concerns "conduct that could directly affect a large number of people

12  beyond the direct participants," and is "a topic of widespread, public interest."

13  *Hilton v. Hallmark Cards*, 580 F.3d 874, 886 (9th Cir. 2009).[9]   It is beyond dispute

14  that *Superman* and *Superboy* are matters of public interest, as are the circumstances

15  of their creation, the ownership of rights therein, and litigation relating thereto.

16  Complaint ¶¶ 33, 34 ("Superman has remained constantly in the public's eye").[10]

17  **D.    The Fourth, Fifth and Sixth Claims for Relief Have No Likelihood of**

18  **Success on the Merits**

19  **1.    The Motion to Dismiss Arguments Are Incorporated By Reference**

20  Because the Fourth, Fifth, and Sixth Claims all fall within the Anti-SLAPP

21  statute, DC has the burden of establishing through admissible evidence a

22  "reasonable probability" it will prevail on each claim.  *Batzel*, 333 F.3d at 1024.  DC

23  _____

24  [9] *Hilton* articulated the three-factor test, quoted above, to determine if an issue
is "public." In *Hilton*, the Ninth Circuit applied this test to find that a suit brought by
the celebrity Paris Hilton in connection with an alleged misuse of her image on

25  greeting cards fell within the Anti-SLAPP law.  *Id.* at 887.
[10] There can also be no reasonable dispute that this action concerns an

26  exercise of free speech rights.  California law requires merely that a defendant's
action be "communicative" to be an exercise of free speech rights.  *See Hilton*, 580

27  F.3d at 884. ("The California Supreme Court has not drawn the outer limits of
activity that furthers the exercise of free speech rights. It seems to suffice, however,

28  that the defendant's activity is communicative.").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2                                    21
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  cannot meet its burden.  Simultaneously with this motion, the Toberoff defendants

2  have moved to dismiss the Fourth and Fifth Claims pursuant to F.R.C.P. 12(b)(6),

3  and the Siegel and Shuster defendants have moved to dismiss the Sixth Claim.  To

4  avoid repetition, the arguments from those motions and supporting papers, which

5  explain why the Fourth, Fifth and Sixth Claims have no merit whatsoever, are

6  incorporated by reference here.[11]  There are several additional reasons, arising from

7  matters not pleaded in DC's complaint, why DC's claims are meritless, which, while

8  inappropriate for a Rule 12(b)(6) motion, may be considered in connection with this

9  Anti-SLAPP motion and are set forth below.

10         2.      **The Fifth Claim Fails Because There Is No Evidence That Toberoff**

11                 **Interfered With the Purported Economic Relationship**

12         The Fifth Claim has no likelihood of success on the merits because the record

13  establishes that Toberoff did not cause the Siegels to end negotiations with DC.  To

14  prevail on a claim for tortious interference with economic advantage, the plaintiff

15  must show that it is "reasonably probable that [its] prospective economic advantage

16  would have been realized but for the defendant's interference."  *Youst v. Longo*, 43

17  Cal.3d 64, 71 (1987).  Here, there is no basis for asserting that Toberoff's actions

18  proximately caused a disruption to a prospective economic relationship of DC.

19         The Complaint itself specifies that Toberoff's allegedly "wrongful acts"

20  occurred "[i]n or around August, 2002," and the above record evidence makes clear

21  that the first substantive contact between Toberoff and the Siegel's attorney, Marks,

22  occurred in late July or early August 2002.  Complaint ¶ 67.[12]  However, August

_____

[11] In short, those motions explain that the Fourth Claim for tortious
interference with contract is barred:  (1) because DC has failed to allege any actual
interference or a valid contract, (2) by the statute of limitations, and (3) by
California's litigation privilege.  The Fifth Claim for tortious interference with
prospective economic advantage, is barred: (1) by California's litigation privilege
and (2) by the statute of limitations.  The Sixth Claim, for unfair competition, is
barred because: (1) DC has none of the claimed rights as a matter of law and
therefore lacks standing, (2) it is preempted by the Copyright Act, (3) it pleads no
unfair conduct, and by (4) California's litigation privilege.

[12] Plaintiff must show that the interference was "independently wrongful."

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2

22

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1   2002 was approximately three months <u>after</u> Joanne Siegel had sent a letter to DC's

2   parent company, stating that "[a]fter four years we have no deal and this contract

3   makes **<u>an agreement impossible</u>**."  Ex. O (LSL Depo Ex. 23) (emphasis added).

4        The Court in *Siegel* held that the May 9, 2002, letter confirmed that the

5   Siegels had "clearly and unequivocally" rejected DC's proposals.  *Siegel I*, 542

6   F. Supp. 2d at 1139.  Joanne Siegel had no contact with Toberoff whatsoever at or

7   before the time she sent the May letter, no lawyer (including Toberoff) helped her

8   write the May letter, and she did not discuss the May letter with any lawyer before

9   sending it.  *See* Section II.D., above.  Indeed, in the *Siegel* cases, DC has <u>admitted</u>

10  that Joanne Siegel wrote the May 9 letter without the assistance or participation of

11  counsel.[13]  DC cannot meet its evidentiary burden on this point when every witness

12  with any knowledge has testified that Toberoff had nothing to do with the May 9

13  letter that effectively ended DC's purported "prospective economic advantage."

14       Nor is there evidence that Toberoff had anything to do with the September 21,

15  2002, letters sent by the Siegels terminating their counsel and informing DC that

16  negotiations had completely concluded.  The September letters were sent before

17  either of the Siegels had met Toberoff, and all relevant parties have testified that

18  Toberoff had not consulted with them at all as to these letters, and that the first time

19  Toberoff had *any* contact with a member of the Siegel family was in early October

20  2002.  Ex. M (LSL Depo 261:17-262:7).  Accordingly, there is simply no evidence

21  that Toberoff interfered with DC's "prospective economic advantage" in settlement

22  negotiations with the Siegels that had expired.

23       **3.     <u>The Fifth Claim for Relief Is Barred by the Statute of Limitations</u>**

24       As explained in the concurrently filed motion to dismiss, the Fifth Claim is

26  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003).

27  [13] <u>Ex. Z</u> (Joint Stip. re: Motion to Compel Whistleblower Documents at 5) (DC: "Indeed, on May 9, 2002, plaintiff Joanne Siegel – ***without the assistance or participation of counsel*** – wrote letters to Time Warner's chief executives…")

28  (emphasis added).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2                                    23

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  barred by a two-year statute of limitations.  The Complaint omitted certain critical

2  facts, which therefore were not included in the concurrent motion to dismiss, but

3  which further support that the Fifth Claim is barred by the statute of limitations.

4  The "independently wrongful" conduct alleged by DC that constituted the

5  purported interference in the Fifth Claim is that Toberoff purportedly "falsely

6  misrepresent[ed] to the Siegel Heirs" that he had a "billionaire investor" who

7  "would give the Siegel Heirs $15 million cash up front, plus generous royalty and

8  'back-end' rights on any properties developed, including a new Superman motion

9  picture," and that Toberoff offered to assist the Siegels in producing a motion

10  picture.  Complaint ¶¶ 68, 172.  By at least 2006, however, through deposition

11  testimony, DC knew that Toberoff and Emanuel had offered the Siegels, in early

12  August 2002, $15 million plus a back-end in a rights deal, and that Toberoff was

13  actively involved in marketing the Siegels' intellectual property rights.  Kevin

14  Marks, the Siegels' counsel, testified to exactly that in a deposition conducted by

15  DC's counsel on October 7, 2006.[14]  DC was thus plainly on inquiry notice of the

16  Fifth Claim by 2006, more than two years before it filed this action.  *See Jolly v. Eli*

17  *Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).

18  **4.    The Sixth Claim Against the Toberoff Entities Will Fail**

19  The Sixth Claim also seeks declaratory relief against the Toberoff-affiliated

20  companies:  PPC, IP Worldwide and IPW.  However, these entities either no longer

21  have, or never had, any interest in *Superman*, and accordingly, a claim for

22  declaratory relief against these entities is moot.  The only interest that IP Worldwide

23  and PPC ever had in any *Superman* rights derived from agreements that have

24  expired or have been cancelled.  The 2001 and 2003 PPC Agreements between the

25

26  [14] Marks testified in 2006 that his call with Mr. Toberoff and Mr. Emanuel included a "proposal of $15 million and what was described as a meaningful back

27  end," which Mr. Marks understood to be "a contingent compensation position or a royalty position in the exploitation of the property." Ex. R (KM Depo 169:1-5).

28  Marks also understood that they intended to "take [the *Superman* property] to studios to exploit the package." *Id.*

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Estate of Joseph Shuster and PPC were wholly cancelled by an agreement dated

2  September 10, 2004.  Ex. E (MT Depo Ex. 15).  PPC itself is dissolved, and has no

3  conceivable interest in *Superman* that could be the subject of declaratory relief.

4  MTD RJN ¶ 7.  As for IP Worldwide, the IP Worldwide Agreement provided that

5  the term of the agreement was "eighteen (18) months from the date this Agreement

6  is executed by all parties," and was extended for twelve (12) months, meaning that

7  the agreement expired on April 23, 2005.  Ex. F at ¶ 5, Ex. CC at 6.  IPW's only

8  relation to the action is that the expired IP Worldwide Agreement was transferred to

9  it, and IPW has no claim whatsoever to the rights to *Superman*.  Ex. B (MT Depo

10  45:6-15), Ex. CC at 6.

11      Accordingly, Plaintiff has no claim against IPW, and any conceivable claim

12  against IP Worldwide and PPC is moot.  *Super Tire Eng'g Co. v. McCorkle*, 416

13  U.S. 115, 122, (1974) (mootness turns on "whether the facts alleged, under all the

14  circumstances, show that there is a substantial controversy . . . of sufficient

15  immediacy and reality to warrant the issuance of a declaratory judgment").[15]

16  **IV.**    **<u>CONCLUSION AND REQUEST FOR FEES</u>**

17      For the foregoing reasons, the Court should strike DC's Fourth, Fifth, and

18  Sixth Claims for relief pursuant to California Code of Civil Procedure § 425.16, and,

19  award to the Toberoff Defendants their attorneys' fees as provided by law.

20  Dated:  August 13, 2010        KENDALL BRILL & KLIEGER LLP

21

22                     By: /s/ Richard B. Kendall

23                        Attorneys for Defendants Marc Toberoff,
                      Pacific Pictures Corporation, IP
                      Worldwide, LLC, and IPW, LLC

24

---

25      [15] Moreover, since the agreements entered into by PPC and IP Worldwide are

26  no longer in effect and there is no attempt to enforce those agreements, there is no "live" controversy and a declaration as to their validity is needless.  *See Campbell v.*

27  *PMI Food Equipment Group, Inc*., 509 F.3d 776, 781-782 (6th Cir. 2007) (claim that tax-abatement agreement is unconstitutional was moot where the agreement had

28  expired, such that the constitutionality of the agreement is "no longer a 'live' controversy").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

55730.2
25
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**