# EXHIBIT G

1

1   UNITED STATES DISTRICT COURT

2   FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

**ORIGINAL**

4   JOANNE SIEGEL,          )
    LAURA SIEGEL LARSON     )
5                           )
6            Plaintiffs,    )
                            )
7       v.                  )   CASE NO. CV 04-8400
                            )           CV 04-8776
    WARNER BROS, et al.     )
8                           )
9            Defendants.    )

10

11

12

13   DEPOSITION OF MARK WARREN PEARY
         November 11, 2006
14           8:30 a.m.
        317 Paseo de Peralta
15       Santa Fe, New Mexico

16

17        PURSUANT TO THE FEDERAL RULES OF CIVIL
     PROCEDURE, this deposition was:

18   TAKEN BY:  MR. PATRICK PERKINS
                Attorney for the Defendants
19

20

21

22   REPORTED BY:  MABEL JIN CHIN, NM CCR #81
                   Bean & Associates, Inc.
23                 Professional Court Reporting Service
                   500 Marquette, Northwest, Suite 280
24                 Albuquerque, New Mexico 87102

25   (3519B) MC



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

1    Q.   Mr. Peary, what is Pacific Pictures
2  Corporation?
3    A.   It's -- it's one of Marc Toberoff's
4  businesses.
5    Q.   When did you first make the acquaintance of
6  Marc Toberoff?
7    A.   It would have been 2001, I believe.
8    Q.   Do you remember when in 2001?
9    A.   Not exactly.  I was doing research on
10 copyrights and I contacted him as a result.  So exact
11 month, I don't remember.
12   Q.   What exactly were you researching with
13 respect to copyright?
14   A.   Copyright law and rights.
15   Q.   And why did you contact Mr. Toberoff?
16   A.   I thought we might have some rights.
17   Q.   What was the basis for your belief that you
18 thought you might have some rights?
19   A.   What I read about copyright law.
20   Q.   And where did you -- where did you read
21 about copyright law?
22   A.   Various places -- the Internet, articles in
23 magazines.
24   Q.   And what rights did you believe that you
25 had?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

Page 64

23

1    A.    Me personally?  Not really on my own, just

2    whatever has been discussed with my attorney.

3    Q.    Were there discussions with your attorney

4    concerning the value of Superman?  That's a yes or no

5    question.

6        MR. TOBEROFF:  Objection, calls for

7    attorney-client privileged information.  The substance

8    of his conversations are privileged, and you just

9    outlined the substance.  Instruct him not to answer.

10    Q.    Are you going to follow Mr. Toberoff's

11    instruction not to answer the question?

12        MR. TOBEROFF:  Of course he is going to

13    follow my instruction.

14    A.    Yes.  That's a privileged question.

15    Q.    So you are going to follow his instruction

16    not to answer?

17    A.    Yes.

18    Q.    Thank you.  At what point did Mr. Toberoff

19    become your attorney?

20    A.    It was fairly soon after I contacted him.

21    Q.    Well, you have another relationship with

22    Mr. Toberoff also, or did, other than as an attorney,

23    didn't you?

24        MR. TOBEROFF:  Vague and ambiguous.

25    A.    Well, the -- the first relationship was as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

24

1    counsel, and then we had discussed possible uses of

2    rights, but we really -- I employed him as counsel

3    very soon after I contacted him.

4                MR. PERKINS:  Would you mark that, please?

5                (Exhibit 3 marked.)

6        Q.    (By Mr. Perkins)  I have asked the court

7    reporter to mark as Exhibit 3 a document that's

8    entitled Joint Venture Agreement.  Could you turn to

9    the last page of this document, please?

10               MR. TOBEROFF:  Before you ask him questions

11   about an isolated portion of the document, I think you

12   should look it over because the rest of the agreement

13   may provide context for whatever question Mr. Perkins

14   is asking.

15               MR. PERKINS:  Well, I didn't ask any

16   questions yet, but I was just --

17               MR. TOBEROFF:  I presume you were about to?

18   MR. PERKINS:  I was just going to ask him if

19   it was his signature on the last page, because if it's

20   not, then it's going to be a very different

21   examination.

22       Q.    (By Mr. Perkins)  Is this your signature on

23   the last page?

24       A.    Yes.

25       Q.    Okay.  Have you seen this agreement before



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

25

1    today?

2        A.    Yes.

3        Q.    Did you read it before you signed it?

4        A.    Yes.

5        Q.    Okay.   Why don't you go ahead and go through

6    the agreement, because I am going to ask you some

7    questions about it now.

8            Have you had occasion to read through the

9    document?

10       A.    Yes.

11       Q.    Now, this agreement is a Joint Venture

12   Agreement; correct?

13           MR. TOBEROFF:   Objection, calls for a legal

14   conclusion.   You can answer.

15       A.    Well, that's what it says here.

16       Q.    What did you understand you were doing when

17   you signed this agreement?

18       A.    We were employing Marc Toberoff, Esquire, as

19   our attorney to exploit any rights we may have in

20   connection with Superman.

21       Q.    And so what was Pacific Pictures

22   Corporation's role in this whole agreement, then, your

23   understanding?

24           MR. TOBEROFF:   Calls for speculation.

25       A.    Um -- I don't know how to characterize

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

Page 67

26

1  exactly what Pacific Pictures' role is my.

2  Understanding is that this is when we employed Marc

3  Toberoff as our attorney, and this was a business name

4  he was using.  That's my understanding.

5      Q.   Did you -- did you get legal counsel to

6  advise you on this agreement before entering into it?

7      A.   No.

8      Q.   Now, in the first paragraph -- in the

9  paragraph that's named -- that listed number 1, do you

10  see that?

11      A.   Yes.

12      Q.   It lists a number of characters.  Do you see

13  that?

14      A.   Yes.

15      Q.   Now, I promised the court reporter that I

16  wouldn't reference one particular character because of

17  the difficulty in spelling it, so we won't go through

18  all of them.  But I want to draw your attention to two

19  specific characters.  Before I do, who decided which

20  names and characters would be included in paragraph

21  1?

22          MR. TOBEROFF:  Objection, attorney-client

23  privileged information.  Instruct you not to answer.

24          Also attorney work-product.

25      Q.   Are you going to follow your counsel's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

Page 68

50

1    to switch over.  So, why don't we take five or ten

2    minutes?

3              (A recess was taken.)

4        Q.   (By Mr. Perkins)  Looking at Exhibit 6,

5    again, Mr. Peary.

6        A.   Is this it?

7        Q.   Yes, that's it.  Are you aware as to whether

8    or not the Court actually granted the petition to

9    authorize you to administer the estate?

10       A.   Yes, I'm aware.

11       Q.   And did it, in fact, grant your petition?

12       A.   Yes.

13             (Exhibit 7 marked.)

14       Q.   Okay.  I have asked the court reporter to

15   mark as Exhibit 7 a multipage document bearing the

16   Bates numbers 9 through 21.  Have you seen this

17   document before?

18       A.   Yes.

19       Q.   And if you would turn to page 17, please?

20             That's Bates number 17.  That's confusing,

21   but -- is that your signature?

22       A.   Yes.

23       Q.   Did you review this document before you

24   signed it?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

51

1    Q.    And what is this document?

2          MR. TOBEROFF:  Vague and ambiguous.

3    A.    I have to review it a minute.

4    Q.    Sure.  Take your time.

5    A.    My understanding of this is, this is in my

6    capacity for the Shuster estate to some kind of a

7    notice, terminates the grant of the transfer of

8    renewal copyrights to the extent of Joe Shuster

9    ownership share of the renewal copyright in the

10   copyrighted works entitled Superman.

11   Q.    Do you have any knowledge as to if this were

12   -- if this were a valid document, when it would take

13   effect?

14   A.    I am aware of -- of some statutes, copyright

15   statutes on this.

16   Q.    Do you know what -- what year, if this were

17   a valid document, what the effective date would be,

18   what year?

19   A.    Yes.

20   Q.    What year?

21   A.    The -- the copyright law would have to take

22   effect in 2013.

23   Q.    Now, if you would turn to page 13, which is

24   the paragraph 2, back one page -- I'm sorry, it's

25   confusing because there are two sets of page numbers.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G
Page 70

59

1    Q.    Have you seen it before today?

2          MR. TOBEROFF:    Asked and answered.

3    A.    Yes, I did answer that before.

4          MR. TOBEROFF:    Well, you can answer.

5    Q.    Indulge me.    I don't remember.

6    A.    Oh, okay.    I don't recall seeing this, this

7    one sheet here.    But every other page following I

8    have.

9          MR. TOBEROFF:    I mean, if it helps I can

10   represent to you that this --

11         MR. PERKINS:    You know, I would rather

12   not --

13         MR. TOBEROFF:    Okay.

14         MR. PERKINS:    -- have you testify to that.

15         MR. TOBEROFF:    All right.

16         MR. PERKINS:    Here you go.

17         (Exhibit 9 marked.)

18   Q.    (By Mr. Perkins)    I have asked the court

19   reporter to mark as Exhibit 9 a one-page document that

20   bears Bates number 133, and it's dated September 10,

21   2004.    Have you seen this document before today?

22   A.    Yes.

23   Q.    And is that your signature, twice?

24   A.    Yes.

25   Q.    This document states that, quote, "1, The



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**DEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

64

1    guess I can't say anything.

2    Q.    Did you receive any counsel, legal counsel

3    from any lawyer, other than Mr. Toberoff, with respect

4    to entering into Exhibit 9?

5    A.    No.

6    Q.    Is there any relationship at this point

7    between the estate and Pacific Pictures Corporation?

8    MR. TOBEROFF:  Objection, vague and

9    ambiguous, calls for a legal conclusion, you could

10   answer.

11   A.    My understanding is that the agreement with

12   Pacific Pictures has been supplanted with a new legal

13   retainer.

14   (Exhibit 10 marked.)

15   Q.    I have asked the court reporter to mark as

16   Exhibit 10 a document dated April 28, 2005.  It's

17   bearing Bates numbers 1 through 7, and it's a letter

18   addressed to Jean Adele Peavy and Mark Warren Peary

19   from Paul Levitz at DC Comics.  Have you seen this

20   letter before today?

21   A.    Yes.

22   Q.    Did you review this letter carefully when

23   you received it?

24   A.    Yes, I read it.

25   Q.    And did you form any impressions as to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

68

1    -- whether that's true?

2        MR. TOBEROFF:   Objection to the extent your

3    understanding is based on our conversations.

4        A.   Yes.  I --

5        Q.   Well, let me ask it this way, Mr. Peary.

6    Have you made an independent judgment as to whether or

7    not what's stated here, namely, that if DC makes a

8    deal with the Siegels first that there will be no

9    pressing need to make a deal with you before 2013,

10   whether that is true?  Have you made an independent

11   judgment of that?

12       MR. TOBEROFF:   Objection, calls for

13   speculation.  Does he know what DC's motivations are.

14   Also, you are getting into an area that involves

15   attorney-client strategies, attorney work-product,

16   mental impressions, attorney-client privilege.  I

17   would instruct you not to answer that question.

18       Q.   You ultimately decided to reject this offer,

19   didn't you?

20       A.   Yes.

21       Q.   And did you make a counterproposal?

22       A.   No.

23       Q.   Why not?

24       MR. TOBEROFF:   Instruct you not to answer on

25   the basis of attorney work-product, attorney-client

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


DEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

70

1    Mr. Toberoff, doing my very best not to engage in

2    colloquy with you at this deposition.

3            MR. TOBEROFF:  I understand.

4            MR. PERKINS:  And I haven't done it at all.

5    And I am going to say for the record that I think your

6    instructions here are not consistent with the law and

7    would ask you to reconsider.  And that's all I'll

8    say.  Obviously you are going to disagree, but I want

9    to make my record, that I've asked you to --

10           MR. TOBEROFF:  I understand, and I'm making

11   my instructions very carefully.

12       Q.   (By Mr. Perkins)  Okay.  Page 4 of the

13   document sets forth a royalty proposal.  Do you see

14   that?

15       A.   Yes.

16       Q.   And that those payments would begin for

17   works created after April 18, 2013.  Do you see that?

18       A.   Yes.

19       Q.   Do you know what kind of income these

20   percentages would generate for you?  Do you have any

21   idea?

22       A.   Not -- not any detail, no.

23       Q.   Do you have a general idea?

24           MR. TOBEROFF:  Objection, calls for

25   speculation.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

86

1                 UNITED STATES DISTRICT COURT

2           FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4    JOANNE SIEGEL,                  )
     LAURA SIEGEL LARSON             )
5                                    )
                    Plaintiffs,      )
6                                    )
         v.                          )  CASE NO. CV 04-8400
7                                    )           CV 04-8776
     WARNER BROS, et al.             )
8                                    )
                    Defendants.      )
9

10          CERTIFICATE OF COMPLETION OF DEPOSITION

11       I, MABEL JIN CHIN, New Mexico CCR #81, DO HEREBY
     CERTIFY that on November 11, 2006, the deposition of
12   MARK WARREN PEARY was taken before me at the request
     of, and sealed original thereof retained by:
13

            Attorney for the Defendants
14          PERKINS LAW OFFICE, P.C.
            1711 Route 9D
15          Cold Spring, New York 10516
            BY:  MR. PATRICK PERKINS
16

17       I FURTHER CERTIFY that copies of this certificate
     have been mailed or delivered on _____, with
18   changes, if any, by the witness appended, to the
     following counsel of record and parties not
19   represented by counsel:

            Attorney for the Plaintiffs
20          MR. MARC TOBEROFF
            2049 Century Park East, #2720
21          Los Angeles, California 90067

22       I FURTHER CERTIFY that examination of this
     transcript and signature of the witness were requested
23   by the witness and all parties present.

24       On November 21, 2006 , a letter was mailed or
     delivered to Mr. Toberoff regarding obtaining
25   signature of the witness.



**DEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

87

1    I FURTHER CERTIFY that the recoverable cost of the original and one copy of the deposition, including
2    exhibits to Mr. Perkins is $_____508.68_____.

3    I FURTHER CERTIFY that I did administer the oath
4    to the witness herein prior to the taking of this deposition; that I did thereafter report in
5    stenographic shorthand the questions and answers set forth herein, and the foregoing is a true and correct
6    transcript of the proceeding had upon the taking of this deposition to the best of my ability.

7    I FURTHER CERTIFY that I am neither employed by
8    nor related to nor contracted with (unless excepted by the rules) any of the parties or attorneys in this
9    case, and that I have no interest whatsoever in the final disposition of this case in any court.

10

11   _____

12   MABEL JIN CHIN
     Certified Court Reporter #81
     License expires: 12/31/2006

13

14

15

16

17

18

19

20   (3519B) MC
     Date taken: November 11, 2006
21   Proofread by: LR

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
500 Marquette NW, Suite 280
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

EXHIBIT G

# EXHIBIT H

# NOTICE OF TERMINATION OF TRANSFER
## COVERING EXTENDED COPYRIGHT RENEWAL TERM
## OF "SUPERMAN"

To:  Time Warner Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Richard D. Parsons
Chief Executive Officer

Time Warner
Entertainment Company, L.P.
75 Rockefeller Plaza
New York, NY 10019
Attn: Barry M. Meyer
Chairman & C.E.O.

Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn:  John A. Schulman
V.P & General Counsel

Warner Bros. Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Communications Inc.
c/o Time Warner, Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Paul T. Cappuccio
E.V.P. & General Counsel

Warner Bros. Television
4000 Warner Boulevard
Burbank, CA 91522
Attn: Peter Roth, President

Warner Music Group
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O.

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn:  Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen, President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn:  Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn:  Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn:  Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn:  Paul Levitz, E.V.P. & Publisher


EXHIBIT
Shuster 7
DEAN & ASSOCIATES

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co.

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr. Chairman

Marvel Entertainment Group, Inc.
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O.

Golden Books Publishing
1540 Broadway
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group, (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

PLEASE TAKE NOTICE that pursuant to Section 304(d) of the United States Copyright Act (17 U.S.C. §304(d)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. §201.10, the undersigned Mark Warren Peary, being the person entitled to terminate transfers pursuant to said statutory provisions, hereby terminates the grant of the transfer of renewal copyright(s) (to the extent of author Joseph Shuster's ownership share of the renewal copyright(s)) in and to the copyrighted work(s) entitled "SUPERMAN" made in those certain agreements all as identified below, and the undersigned sets forth in connection therewith the following:

1.      The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Time Warner Inc., 75 Rockefeller Plaza, New York, NY 10019, Attn: Richard D. Parsons, Chief Executive Officer; Time Warner Entertainment Company, L.P., 75 Rockefeller Plaza, New York, NY 10019, Attn: Barry M. Meyer, Chairman & C.E.O.; Warner Bros. Entertainment Inc., 4000 Warner Boulevard, Burbank, CA 91522, Attn: John A. Schulman, V.P. & General Counsel; Warner Bros. Inc., 4000 Warner Boulevard, Burbank, CA 91522, Attn: John A. Schulman, V.P. & General Counsel; Warner Communications Inc., c/o Time Warner, Inc., 75 Rockefeller Plaza, New York, NY 10019, Attn: Paul T. Cappucio, E.V.P. & General Counsel; Warner Bros. Television, 4000 Warner Boulevard, Burbank, CA 91522, Attn: Peter Roth, President; Warner Music Group, 75 Rockefeller Plaza, New York, NY 10019, Attn: Roger Ames, Chairman & C.E.O.; Warner Bros. Worldwide Consumer Products, 4000 Warner Boulevard, Burbank, CA 91522, Attn: Dan Romanelli, President; Warner Publisher Services, 135 W. 50th Street, 7th Floor, New York, N.Y. 10020, Attn: Rich Jacobsen, President; Time Warner Book Group, Inc., 1271 Avenue of

the Americas, New York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; Warner

Books, Inc., 1271 Avenue of the Americas, New York, NY 10020, Attn: Laurence J.

Kirshbaum, C.E.O.; Little, Brown, and Company, 1271 Avenue of the Americas, New

York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; DC Comics Inc., 1700

Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, Executive V.P. &

Publisher; DC Comics, A General Partnership, 1700 Broadway, 7th Floor, New York, NY

10019, Attn: Paul Levitz, Executive V.P. & Publisher; DC Direct, c/o DC Comics, 1700

Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levtiz, E.V.P. & Publisher; Milton

Bradley Co., Division of Hasbro, Inc., 433 Shaker Road, East Longmeadow, MA 01028,

Attn: David E. Wilson, President; Hasbro, Inc., 1027 Newport Ave., Pawtucket, RI

02861, Attn: Alan Hassenfeld, Chief Executive Officer; Wildstorm Productions, 888

Prospect Street, Suite 240, La Jolla, CA 92037, Attn: Jim Lee, Editor & Director;

Wildstorm Productions, c/o DC Comics, 1700 Broadway, 7th Floor, New York, NY

10019, Attn: Paul Levitz, President & Publisher; Dark Horse Publications, 10956 S.E.

Main St., Milwaukie, OR 97222, Attn: Michael Richardson, President; Cantharus

Productions, N.V., 8965 Bay Cove Ct., Orlando, FL 32819, Attn: Ilya Salkind; Ilya

Salkind and Pierre Spengler, 12 Chiswick Lane, London W4 2JE, England, Attn: Albion

Gee, Esq., Albion Gee & Co.; Hallmark Entertainment, Inc., 1325 Avenue of the

Americas, 21st Floor, New York, NY 10019, Attn: Robert Halmi, Jr., Chairman; Marvel

Entertainment Group, Inc., 10 East 40th Street, 9th Floor, New York, NY 10016, Attn: F.

Peter Cuneo, President & C.E.O.; Golden Books Publishing, 1540 Broadway, New

York, NY 10036, Attn: Amy Jarashow, Associate Publisher; Random House Golden

Books for Young Readers, 1540 Broadway, New York, NY 10036, Attn: Kate Kilmo,

Vice President & Publisher; Random House, Inc., 1745 Broadway, New York, NY

10019, Attn: Katherine J. Trager, Senior V.P. & General Counsel; Inkworks, 4320 Delta Lake Drive, Raleigh, NC 27612, Attn: Allan Caplan, President & C.E.O.; Penguin Group (USA) Inc., 375 Hudson Street, New York, NY 10014, Attn: David Shanks, C.E.O.; DK Publishing, Inc., 375 Hudson Street, New York, NY 10014, Attn: Christopher Davis, Publisher; Scholastic, Inc., 557 Broadway, New York, NY 10012, Attn: Richard Robinson, Chairman & C.E.O.  Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being made by first class mail, and additionally service of this notice is being made by certified mail, return receipt requested, to the above grantees or successors at the addresses shown.

2.    The works (individually, "Work;" collectively, the "Works") to which this Notice of Termination applies are as follows[1]: The title of the original copyrighted Work to which this Notice of Termination applies is SUPERMAN, an illustrated comic book story constituting a front cover and pages 1-13, inclusive, in the body of Action Comics, Vol. 1, No. 1, June, 1938 issue, which was published on April 18, 1938. This Work was registered for copyright under registration No. B379787 and copyright was originally

---

[1] This Notice of Termination applies as well to each and every element of each Work, including without limitation, the story or stories, character or characters, the interplay of such characters, theme or themes, settings or locales, and includes, but is not limited to, Superman, his origins and escape as an infant to Earth in a rocket ship, his super strength, his invulnerability (bullets bounce off his chest and he's impervious to fire), his super speed, his ability to leap great distances in a single bound, his telescopic vision, his super hearing and sense of smell, his sense of humor, his clean-cut good looks, his high morals, ethics and compassion, his mission as a crime fighter and as a champion of the underdog, his stylized costume and cape, the diamond shaped "S" insignia on his chest, his secret identity / alter ego as the mild mannered bespectacled newspaper reporter, Clark Kent, the feisty and attractive female reporter love interest, Lois Lane, the love triangle between Superman, Lois Lane and Clark Kent, Clark Kent's boss / newspaper Editor (a.k.a. Perry White), the Daily Planet newspaper (f.k.a. the Daily Star) where Clark Kent, Lois Lane and the Editor work, the great skyscraper metropolis where these characters live (a.k.a. Metropolis), Superman's scientist father (a.k.a. Jor L) and Superman's birthplace --a highly advanced but doomed distant planet (a.k.a. Krypton).

secured in this Work as of its April 18, 1938 publication date. This Work was written by Jerome Siegel and illustrated by Joseph Shuster. Renewal of the copyright in and to this Work was made on June 1, 1965, in the name of National Periodical Publications, Inc. claiming as proprietor of copyright, under renewal registration No. R362188. This Work was based upon, incorporated, and constituted a slightly revised version of, the following Works to which this Notice of Termination also applies: twenty-four days (i.e., four six day weeks) of previously unpublished SUPERMAN newspaper comic strips, created c. 1934, written by Jerome Siegel and illustrated by Joseph Shuster.[2] The remaining Works to which this Notice of Termination applies are:

| Title | Name of Author | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| SUPERMAN story in comic book form | Jerome Siegel Joseph Shuster | Work created c.1933 | N/A[3] |

---

[2] In <u>Siegel and Shuster v. National Comics Pub., Inc. et al.</u>, the court found that Jerome Siegel and Joseph Shuster were "the originators and authors of the cartoon character Superman and of the title Superman and first created cartoon material in which said character and title first appeared in 1934...," and further found that this material as incorporated in Action Comics No. 1 constituted: "the formula for the continuing SUPERMAN series to come. It depicted and narrated the origin of the character SUPERMAN, and contained a complete delineation of the pictorial representation of SUPERMAN, of his habits and character, of the superhuman powers and attributes with which SUPERMAN was endowed and of the sphere of public good which SUPERMAN exploits were to enhance." Findings of Fact and Conclusions of Law by Referee J. Addison Young, ¶¶ 8, 22 (November 1, 1947); <u>See also Siegel and Shuster v. National Comics Pub., Inc. et al.</u>, Opinion of Referee J. Addison Young, page 9 ("[the aforementioned material] certainly contained the full delineation of the character Superman and though the story or continuity might vary in the future from time to time, I believe constitute a formula for the continuing series to come..."). In <u>Siegel v. National Periodical Publications, Inc.</u>, the Second Circuit Court of Appeals reversed the District Court's determination that Action Comics No. 1 was a work-for-hire and held: "Superman and his miraculous powers were completely developed long before the employment relationship was instituted. The record indicates that the revisions directed by the defendants were simply to accomodate Superman to a magazine format." 508 F.2d 909, 914 (2nd Circuit 1974).

[3] The second and third Works listed in this table as well as the above-referenced 24 days of previously unpublished SUPERMAN newspaper comic strips were first published in a somewhat revised form on April 18, 1938 as Action Comics, Vol. 1, No. 1, June, 1938, which was registered for copyright under registration No. B379787 and renewed under registration No. R362188.

| Title | Name of Author | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| 15 SUPERMAN daily comic strips (12 strips and 3 scripts) | Jerome Siegel Joseph Shuster | Work created c.1934 | N/A |
| Action Comics #2 [4] | Jerome Siegel Joseph Shuster | May 25, 1938 | B379788 |
| Action Comics #3 | Jerome Siegel Joseph Shuster | June 25, 1938 | B385466 |
| Action Comics #4 | Jerome Siegel Joseph Shuster | July 25, 1938 | B387907 |
| Action Comics #5 | Jerome Siegel Joseph Shuster | August 25, 1938 | B394784 |
| Action Comics #6 | Jerome Siegel Joseph Shuster | September 26, 1938 | B394866 |
| Action Comics #7 | Jerome Siegel Joseph Shuster | October 25, 1938 | B399214 |

3.    This Notice of Termination applies to the following grants, assignments, transfers and/or agreements to the extent each grants, transfers or assigns the renewal copyright (or any interest in or to the renewal copyright) to any Work identified hereinabove:

(a)    A one page agreement between Detective Comics, Inc., on the one hand and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about March 1, 1938;

---

[4] Action Comics Nos. 2-6 were reprinted in Superman Nos. 1 and 3 (Copyright Reg. Nos. AA299871 and B443035, respectively) to which this Notice of Termination, therefore, also applies.

(b)     A two page agreement of purported employment between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 4, 1937;

(c)     A three page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(d)     A three page letter agreement between Detective Comics, Inc. and The McClure Newspaper Syndicate, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(e)     A two page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 19, 1939;

(f)     A seven page agreement or stipulation between National Comics Publications, Inc., Independent News Co., Inc., The McClure Newspaper Syndicate, Harry Donenfeld, Jacob S. Liebowitz, Paul H. Sampliner and Wayne Boring, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about May 19, 1948;

(g)     A twelve page letter agreement (with additional pages for exhibits) between Warner Communications Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 23, 1975.

4.     The effective date of termination shall be October 26, 2013.

EXHIBIT H
Page 84

5.    No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304 (c) of the United States Copyright Act (17 U.S.C. §304(c)).

6.    Joseph Shuster died on July 30, 1992.  There is no living widow, child or grandchild of Mr. Shuster. The undersigned, Mark Warren Peary is the Executor  of the Estate of Joseph Shuster; and, as such, is the person entitled to exercise Joseph Shuster's termination interest pursuant to 17 U.S.C. § 304 (d), incorporating without limitation 17 U.S.C. § 304 (c)(2)(D), as to the grants of the transfers described herein. To the best knowledge and belief of the undersigned, this notice has been signed by all persons whose signature is necessary to terminate said grants under Section 304(d) of Title 17, United States Code.

Dated: November 7, 2003

Mark Warren Peary
Executor of the Estate of Joseph Shuster
c/o Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

## CERTIFICATE OF INVESTIGATION

I hereby certify that before serving the foregoing document described as NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL TERM OF "SUPERMAN", and pursuant to 37 C.F.R. Section 201.10(d), I caused a reasonable investigation to be made as to the current ownership of the rights being terminated, including a search of the records in the U.S. Copyright Office.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _10_ day of November, 2003, at Los Angeles, California.

Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL

TERM OF "SUPERMAN" to be served this 10th day of November, 2003, by First Class

Mail, postage prepaid, upon the following:

To:  Time Warner Inc.
     75 Rockefeller Plaza
     New York, NY 10019
     Attn: Richard D. Parsons
     Chief Executive Officer

     Time Warner
     Entertainment Company, L.P.
     75 Rockefeller Plaza
     New York, NY 10019
     Attn: Barry M. Meyer
     Chairman & C.E.O.

     Warner Bros. Entertainment Inc.
     4000 Warner Boulevard
     Burbank, CA 91522
     Attn: John A. Schulman
     V.P. & General Counsel

     Warner Bros. Inc.
     4000 Warner Boulevard
     Burbank, CA 91522
     Attn: John A. Schulman
     V.P. & General Counsel

     Warner Communications Inc.
     c/o Time Warner, Inc.
     75 Rockefeller Plaza
     New York, NY 10019
     Attn: Paul T. Cappucio
     E.V.P. & General Counsel

     Warner Bros. Television
     4000 Warner Boulevard
     Burbank, CA 91522
     Attn: Peter Roth, President

Warner Music Group.
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn: Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen
President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

19

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
E.V.P. & Publisher

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson,
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler.
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr.
Chairman

Marvel Entertainment Group, Inc..
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O

Golden Books Publishing
1540 Broadway
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

12
EXHIBIT H
Page 88

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of November, 2003, at Los Angeles, California.

Marc Toberoff, Esq.
9595 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

# EXHIBIT I



**RECORDED DOCUMENTS**

**FL-10A**

**DATE:** March 12, 2004

IP Worldwide
9595 Wilshire Blvd. Suite 811
Beverly Hills, CA 90212

ATTN: MARC TOBEROFF

We have recorded the enclosed document(s) in the official records of the Copyright Office:

| VOLUME | |
|---|---|
| DOC. NO. | 3505 |
| | 773-774 |

The recording fee has been handled as follows:

| RECEIVED | |
|---|---|
| APPLIED | $ |
| REFUNDED (under separate cover) | $ |
| CHARGED TO YOUR DEPOSIT ACCOUNT | $ |
| | $ |

Sincerely yours,

Register of Copyrights

ENCL(S):
DOC(S):    2

Library of Congress
S. Copyright Office
Independence Ave, SE
Washington, DC 20559-6000
w.copyright.gov



EXHIBIT
Shuster 8

BEAN
ASSOCIATES.

EXHIBIT I
Page 90

63



# Certificate of Recordation

This is to certify that the attached document was recorded in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the United States Copyright Office.

DATE OF RECORDATION

8Dec03

| VOLUME | DOC. NO. |
|--------|----------|
| 3505 | 773 |
| VOLUME | DOC. NO. |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

EXHIBIT 1
Page 91

**64**

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

## DOCUMENT COVER SHEET
**For Recordation of Documents**
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)

DEC 0 8 2003

| Month | Day | Year |
|-------|-----|------|

Volume **3505** Page **773**

Volume _____ Page _____

FUNDS RECEIVED

Do not write above this line.

## To the Register of Copyrights:

*Please record the accompanying original document or copy thereof.*

FOR OFFICE USE ONLY

**1** Name of the party or parties to the document spelled as they appear in the document (List up to the first three)

Time Warner Inc.

Time Warner

Warner Bros. Entertainment Inc.

**2** Date of execution and/or effective date of the accompanying document  Dec. 1 2003
(month) (day) (year)

**3** Completeness of document
☒ Document is complete by its own terms.
☐ Document is not complete. Record "as is."

**4** Description of document
☐ Transfer of Copyright
☐ Security Interest
☐ Change of Name of Owner
☒ Termination of Transfer(s) [Section 304]
☐ Shareware
☐ Life, Identity, Death Statement [Section 302]
☐ Transfer of Mask Works
☐ Other _____

**5** Title of first work as given in the document
"Superman"

**6** Total number of titles in document  _____

**7** Amount of fee calculated  $ 100

**8** Fee enclosed
☒ Check
☐ Money Order

☐ Fee authorized to be charged to :
Copyright Office
Deposit Account number _____

Account name _____

**9** Affirmation*: I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document. (Affirmation *must* be signed even if you are also signing Space 10.)

Signature _____
Date 12/1/03
(310) 246-3100   (310) 246-3101
Phone Number          Fax Number

**10** Certification*: Complete this certification in addition to the Affirmation if a photocopy of the original signed document is substituted for a document bearing the actual signature.
NOTE: This space *may not* be used for an official certification.
I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

Signature _____
IP Worldwide/Estate of Joseph Shuste
Duly Authorized Agent of:
12/1/03
Date

Recordation will be mailed in window envelope to this address:

| Name▼ | IP Worldwide/Marc Toberoff, Esq. |
|-------|-----------------------------------|
| Number/Street/Apt▼ | 9595 Wilshire Blvd., Suite 811 |
| City/State/ZIP▼ | Beverly Hills, CA 90212 |

YOU MUST:
• Complete all necessary spaces
• Sign your Cover Sheet in Space 9
SEND ALL 3 ELEMENTS TOGETHER:
1. Two copies of the Document Cover Sheet
2. Check/money order payable to *Register of Copyrights*
3. Document
MAIL TO:
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue, S.E.
Washington, D.C. 20559-6

*Knowingly and willfully falsifying material facts on this form may result in criminal liability, 18 U.S.C.

EXHIBIT T

65

Rev: June 2002—20,000   Web Rev: June 2002   ℗ Printed on recycled paper

V3505 D773

# NOTICE OF TERMINATION OF TRANSFER
## COVERING EXTENDED COPYRIGHT RENEWAL TERM
### OF "SUPERMAN"

To:  Time Warner Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Richard D. Parsons
Chief Executive Officer

Time Warner
Entertainment Company, L.P.
75 Rockefeller Plaza
New York, NY 10019
Attn: Barry M. Meyer
Chairman & C.E.O.

Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P & General Counsel

Warner Bros. Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Communications Inc.
c/o Time Warner, Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Paul T. Cappuccio
E.V.P. & General Counsel

Warner Bros. Television
4000 Warner Boulevard
Burbank, CA 91522
Attn: Peter Roth, President

Warner Music Group
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O.

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn: Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen, President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz, E.V.P. & Publisher

V3505 D773    Page 1

66

EXHIBIT I
Page 93

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co.

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr. Chairman

Marvel Entertainment Group, Inc.
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O.

Golden Books Publishing
1540 Broadway
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group, (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

V3-J5 D773   Page 2

**67**

EXHIBIT I
Page 94

PLEASE TAKE NOTICE that pursuant to Section 304(d) of the United States Copyright

Act (17 U.S.C. §304(d)) and the regulations issued thereunder by the Register of

Copyrights, 37 C.F.R. §201.10, the undersigned Mark Warren Peary, being the person

entitled to terminate transfers pursuant to said statutory provisions, hereby terminates

the grant of the transfer of renewal copyright(s) (to the extent of author Joseph

Shuster's ownership share of the renewal copyright(s)) in and to the copyrighted work(s)

entitled "SUPERMAN" made in those certain agreements all as identified below, and the

undersigned sets forth in connection therewith the following:

1.      The names and addresses of the grantees and/or successors in title

whose rights are being terminated are as follows: Time Warner Inc., 75 Rockefeller

Plaza, New York, NY 10019, Attn: Richard D. Parsons, Chief Executive Officer; Time

Warner Entertainment Company, L.P., 75 Rockefeller Plaza, New York, NY 10019, Attn:

Barry M. Meyer, Chairman & C.E.O.; Warner Bros. Entertainment Inc., 4000 Warner

Boulevard, Burbank, CA 91522, Attn: John A. Schulman, V.P. & General Counsel;

Warner Bros. Inc., 4000 Warner Boulevard, Burbank, CA 91522, Attn: John A.

Schulman, V.P. & General Counsel;  Warner Communications Inc., c/o Time Warner,

Inc., 75 Rockefeller Plaza, New York, NY 10019, Attn: Paul T. Cappucio, E.V.P. &

General Counsel; Warner Bros. Television, 4000 Warner Boulevard, Burbank, CA

91522, Attn: Peter Roth, President; Warner Music Group, 75 Rockefeller Plaza, New

York, NY 10019, Attn: Roger Ames, Chairman & C.E.O.; Warner Bros. Worldwide

Consumer Products, 4000 Warner Boulevard, Burbank, CA 91522, Attn: Dan Romanelli,

President; Warner Publisher Services, 135 W. 50th Street, 7th Floor, New York, N.Y.

10020, Attn: Rich Jacobsen, President; Time Warner Book Group, Inc., 1271 Avenue of

EXHIBIT I
Page 95

68

the Americas, New York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; Warner Books, Inc., 1271 Avenue of the Americas, New York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; Little, Brown, and Company, 1271 Avenue of the Americas, New York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; DC Comics Inc., 1700 Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, Executive V.P. & Publisher; DC Comics, A General Partnership, 1700 Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, Executive V.P. & Publisher; DC Direct, c/o DC Comics, 1700 Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, E.V.P. & Publisher; Milton Bradley Co., Division of Hasbro, Inc., 433 Shaker Road, East Longmeadow, MA 01028, Attn: David E. Wilson, President; Hasbro, Inc., 1027 Newport Ave., Pawtucket, RI 02861, Attn: Alan Hassenfeld, Chief Executive Officer; Wildstorm Productions, 888 Prospect Street, Suite 240, La Jolla, CA 92037, Attn: Jim Lee, Editor & Director; Wildstorm Productions, c/o DC Comics, 1700 Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, President & Publisher; Dark Horse Publications, 10956 S.E. Main St., Milwaukie, OR 97222, Attn: Michael Richardson, President; Cantharus Productions, N.V., 8965 Bay Cove Ct., Orlando, FL 32819, Attn: Ilya Salkind; Ilya Salkind and Pierre Spengler, 12 Chiswick Lane, London W4 2JE, England, Attn: Albion Gee, Esq., Albion Gee & Co.; Hallmark Entertainment, Inc., 1325 Avenue of the Americas, 21st Floor, New York, NY 10019, Attn: Robert Halmi, Jr., Chairman; Marvel Entertainment Group, Inc., 10 East 40th Street, 9th Floor, New York, NY 10016, Attn: F. Peter Cuneo, President & C.E.O.; Golden Books Publishing, 1540 Broadway, New York, NY 10036, Attn: Amy Jarashow, Associate Publisher; Random House Golden Books for Young Readers, 1540 Broadway, New York, NY 10036, Attn: Kate Kilmo, Vice President & Publisher; Random House, Inc., 1745 Broadway, New York, NY

Y3505 D773 Page 4

EXHIBIT I
4
Page 96

69

10019, Attn: Katherine J. Trager, Senior V.P. & General Counsel; Inkworks, 4320 Delta Lake Drive, Raleigh, NC 27612, Attn: Allan Caplan, President & C.E.O.; Penguin Group (USA) Inc., 375 Hudson Street, New York, NY 10014, Attn: David Shanks, C.E.O.; DK Publishing, Inc., 375 Hudson Street, New York, NY 10014, Attn: Christopher Davis, Publisher; Scholastic, Inc., 557 Broadway, New York, NY 10012, Attn: Richard Robinson, Chairman & C.E.O.  Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being made by first class mail, and additionally service of this notice is being made by certified mail, return receipt requested, to the above grantees or successors at the addresses shown.

2.      The works (individually, "Work;" collectively, the "Works") to which this Notice of Termination applies are as follows[1]: The title of the original copyrighted Work to which this Notice of Termination applies is SUPERMAN, an illustrated comic book story constituting a front cover and pages 1-13, inclusive, in the body of Action Comics, Vol. 1, No. 1, June, 1938 issue, which was published on April 18, 1938. This Work was registered for copyright under registration No. B379787 and copyright was originally

---

[1] This Notice of Termination applies as well to each and every element of each Work,  including without limitation, the story or stories, character or characters, the interplay of such characters, theme or themes, settings or locales, and includes, but is not limited to, Superman, his origins and escape as an infant to Earth in a rocket ship, his super strength, his invulnerability (bullets bounce off his chest and he's impervious to fire), his super speed, his ability to leap great distances in a single bound, his telescopic vision, his super hearing and sense of smell,  his sense of humor, his clean-cut good looks, his high morals, ethics and compassion, his mission as a crime fighter and as a champion of the underdog, his stylized costume and cape, the diamond shaped "S" insignia on his chest, his secret identity / alter ego as the mild mannered bespectacled newspaper reporter, Clark Kent, the feisty and attractive female reporter love interest, Lois Lane, the love triangle between Superman, Lois Lane and Clark Kent, Clark Kent's boss / newspaper Editor (a.k.a. Perry White), the Daily Planet newspaper (f.k.a. the Daily Star) where Clark Kent, Lois Lane and the Editor work, the great skyscraper metropolis where these characters live (a.k.a. Metropolis), Superman's scientist father (a.k.a. Jor L) and Superman's birthplace – a highly advanced but doomed distant planet (a.k.a. Krypton).

V3505 D773  Page 5

EXHIBIT I
Page 97

secured in this Work as of its April 18, 1938 publication date. This Work was written by Jerome Siegel and illustrated by Joseph Shuster. Renewal of the copyright in and to this Work was made on June 1, 1965, in the name of National Periodical Publications, Inc. claiming as proprietor of copyright, under renewal registration No. R362188. This Work was based upon, incorporated, and constituted a slightly revised version of, the following Works to which this Notice of Termination also applies: twenty-four days (i.e., four six day weeks) of previously unpublished SUPERMAN newspaper comic strips, created c. 1934, written by Jerome Siegel and illustrated by Joseph Shuster.[2] The remaining Works to which this Notice of Termination applies are:

| Title | Name of Author | Date Copyright Secured | Copyright Reg. No. |
|-------|----------------|------------------------|--------------------|
| SUPERMAN story in comic book form | Jerome Siegel Joseph Shuster | Work created c.1933 | N/A[3] |

[2] In Siegel and Shuster v. National Comics Pub., Inc. et al., the court found that Jerome Siegel and Joseph Shuster were "the originators and authors of the cartoon character Superman and of the title Superman and first created cartoon material in which said character and title first appeared in 1934...," and further found that this material as incorporated in Action Comics No. 1 constituted: "the formula for the continuing SUPERMAN series to come. It depicted and narrated the origin of the character SUPERMAN, and contained a complete delineation of the pictorial representation of SUPERMAN, of his habits and character, of the superhuman powers and attributes with which SUPERMAN was endowed and of the sphere of public good which SUPERMAN exploits were to enhance." Findings of Fact and Conclusions of Law by Referee J. Addison Young, ¶¶ 8, 22 (November 1, 1947); See also Siegel and Shuster v. National Comics Pub., Inc. et al., Opinion of Referee J. Addison Young, page 9 ("[the aforementioned material] certainly contained the full delineation of the character Superman and though the story or continuity might vary in the future from time to time, it did, I believe constitute a formula for the continuing series to come..."). In Siegel v. National Periodical Publications, Inc, the Second Circuit Court of Appeals reversed the District Court's determination that Action Comics No. 1 was a work-for-hire and held: "Superman and his miraculous powers were completely developed long before the employment relationship was instituted. The record indicates that the revisions directed by the defendants were simply to accomodate Superman to a magazine format." 508 F.2d 909, 914 (2nd Circuit 1974).

[3] The second and third Works listed in this table as well as the above-referenced 24 days of previously unpublished SUPERMAN newspaper comic strips were first published in a somewhat revised form on April 18, 1938 as Action Comics, Vol. 1, No. 1, June, 1938, which was registered for copyright under registration No. B379787 and renewed under registration No. R362188.

EXHIBIT I
Page 98

71

Y3505 D773    Page 6

| Title | Name of Author | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| 15 SUPERMAN daily comic strips (12 strips and 3 scripts) | Jerome Siegel Joseph Shuster | Work created c.1934 | N/A |
| Action Comics #2 [4] | Jerome Siegel Joseph Shuster | May 25, 1938 | B379788 |
| Action Comics #3 | Jerome Siegel Joseph Shuster | June 25, 1938 | B385466 |
| Action Comics #4 | Jerome Siegel Joseph Shuster | July 25, 1938 | B387907 |
| Action Comics #5 | Jerome Siegel Joseph Shuster | August 25, 1938 | B394784 |
| Action Comics # 6 | Jerome Siegel Joseph Shuster | September 26, 1938 | B394866 |
| Action Comics # 7 | Jerome Siegel Joseph Shuster | October 25, 1938 | B399214 |

3.      This Notice of Termination applies to the following grants, assignments, transfers and/or agreements to the extent each grants, transfers or assigns the renewal copyright (or any interest in or to the renewal copyright) to any Work identified hereinabove:

(a)      A one page agreement between Detective Comics, Inc., on the one hand and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about March 1, 1938;

---

[4] Action Comics Nos. 2-6 were reprinted in Superman Nos. 1 and 3 (Copyright Reg. Nos. AA299871 and B443035, respectively) to which this Notice of Termination, therefore, also applies.

EXHIBIT I
Page 99

72

(b)    A two page agreement of purported employment between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 4, 1937;

(c)    A three page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(d)    A three page letter agreement between Detective Comics, Inc. and The McClure Newspaper Syndicate, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(e)    A two page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 19, 1939;

(f)    A seven page agreement or stipulation between National Comics Publications, Inc., Independent News Co., Inc., The McClure Newspaper Syndicate, Harry Donenfeld, Jacob S. Liebowitz, Paul H. Sampliner and Wayne Boring, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about May 19, 1948;

(g)    A twelve page letter agreement (with additional pages for exhibits) between Warner Communications Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 23, 1975.

4.    The effective date of termination shall be October 26, 2013.

EXHIBIT I
8
Page 100

73

V3...5 D773  Page 8

5.    No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304 (c) of the United States Copyright Act (17 U.S.C. §304(c)).

6.    Joseph Shuster died on July 30, 1992.  There is no living widow, child or grandchild of Mr. Shuster. The undersigned, Mark Warren Peary is the Executor of the Estate of Joseph Shuster; and, as such, is the person entitled to exercise Joseph Shuster's termination interest pursuant to 17 U.S.C. § 304 (d), incorporating without limitation 17 U.S.C. § 304 (c)(2)(D), as to the grants of the transfers described herein. To the best knowledge and belief of the undersigned, this notice has been signed by all persons whose signature is necessary to terminate said grants under Section 304(d) of Title 17, United States Code.

Dated: November 7, 2003

*Mark Warren Peary*

Mark Warren Peary
Executor of the Estate of Joseph Shuster
c/o Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

Y3505 D773   Page 9

EXHIBIT I
Page 101
9

74

## CERTIFICATE OF INVESTIGATION

I hereby certify that before serving the foregoing document described as NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL TERM OF "SUPERMAN", and pursuant to 37 C.F.R. Section 201.10(d), I caused a reasonable investigation to be made as to the current ownership of the rights being terminated, including a search of the records in the U.S. Copyright Office.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of November, 2003, at Los Angeles, California.

Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

V3su5 D773   Page 10

EXHIBIT I
10
Page 102

75

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL TERM OF "SUPERMAN" to be served this _10th_ day of November, 2003, by First Class Mail, postage prepaid, upon the following:

To:  Time Warner Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Richard D. Parsons
Chief Executive Officer

Time Warner
Entertainment Company, L.P.
75 Rockefeller Plaza
New York, NY 10019
Attn: Barry M. Meyer
Chairman & C.E.O.

Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Bros. Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Communications Inc.
c/o Time Warner, Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Paul T. Cappucio
E.V.P. & General Counsel

Warner Bros. Television
4000 Warner Boulevard
Burbank, CA 91522
Attn: Peter Roth, President

Warner Music Group.
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn: Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen
President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

V3bu5 D773 Page 11

EXHIBIT I
Page 103

76

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
E.V.P. & Publisher

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson,
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler.
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr.
Chairman

Marvel Entertainment Group, Inc..
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O

Golden Books Publishing
1540 Broadway
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

V3505 D773  Page 12

EXHIBIT I
12
Page 104

77

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of November, 2003, at Los Angeles, California.


Marc Toberoff, Esq.
9595 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

V3505 D773   Page 13

EXHIBIT I
Page 105

78

# EXHIBIT J

Jul-14-06   05:20pm   From-                                    T-873   P.003/010   F-355

DC COMICS
1700 Broadway
New York, NY 10019
(212) 636-5555
FAX (212) 636-5485
e-mail: paul.levitz@dccomics.com

Paul Levitz · President & Publisher



<u>By Federal Express</u>

April 28, 2005

Jean Adele Peavy
  (as sole heir to Joseph Shuster)
Mark Warren Peary
  (as personal representative of the Estate of Joseph Shuster)
51 Camino Cabo
Santa Fe, NM 87505-2277

Dear Jean and Warren:

I write to you today to offer to license from you the interest in Superman which is the subject of your recent notice of termination. Without in any way conceding that the notice of termination is valid, and though the interest you claim in Superman cannot, under any circumstances, become yours until April 2013 – over eight years from now – DC Comics is proposing to enter into an arrangement with you and begin paying you substantial payments starting *now*. For the period covered by your termination notice, DC will only pay a premium to *one* terminating party. Therefore, before proposing the terms of our offer I believe it would be helpful to lay out some of the background and history that brings us to where we are today.

As an initial matter, I want to reiterate to you the great respect that DC Comics and I personally have for Joe Shuster's work, and for Superman's value and contribution to American culture and to DC Comics. As you may know, I have been working in the comic book field for over thirty years, and like Joe, while still in high school started out as a freelancer for DC. It was my pleasure to know Joe for almost the last two decades of his life. As a result of my long association with DC, I can personally attest to DC's heavy investment in and nurturing of the Superman property, which I believe has played a substantial part in creating the lasting value and continued popular interest the character that Joe and Jerry created has enjoyed. DC's efforts have included the distribution of television programming and motion pictures featuring Superman, merchandising of the Superman character, and continually creating new and interesting story lines that have kept Superman alive in the public's imagination. I hope you agree that DC has done its job well in its management and development of Superman.



1

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 2

Given DC's long history of stewardship, commitment and dedication of resources to Superman, I believe that there is no company better positioned than DC to continue Superman's success.

As you are no doubt aware, aside from you and DC Comics, the heirs of Jerry Siegel also claim to have an interest in the Superman character, and as you probably know, in October 2004 those heirs commenced two lawsuits in federal court in Los Angeles against DC Comics and certain of its affiliated companies. In the first lawsuit they seek an accounting for profits derived from DC's exploitation of the Superman character following the Siegel heirs' purported termination of Jerry Siegel's original 1938 grant to DC. They claim the termination was effective April 16, 1999. In the second lawsuit the Siegel heirs assert that Jerry Siegel – without any contribution from Joe Shuster – was the sole creator and owner of the character Superboy, that the Siegel heirs purported to terminate DC's interest in the Superboy character effective November 18, 2004, and that neither DC, you nor anyone other than the Siegel heirs is entitled to exploit the Superboy property.

The Siegel lawsuits are pending and in their early stages. Although it is too early to tell how these lawsuits will turn out (and we believe that DC has substantial defenses to the Siegel heirs' claims) I am advised that the Siegel heirs' counsel has communicated to our lawyers that it is their ultimate goal to settle all claims with DC relating to Superman. This would presumably include all claims relating to any interest in the copyright extension period that begins in 2013 – the same period in which you claim rights. Most lawsuits do, in fact, settle, and it continues to be our hope as well to reach some sort of amicable resolution with the Siegel heirs. In fact, one of the principal defenses we have raised in the Siegel heirs litigations is that DC did, in fact, reach a comprehensive settlement with the Siegel heirs in 2001, which covered all copyright extension periods, and which was confirmed by the Siegel heirs' lawyers in writing. The Siegel heirs now deny that there was such an agreement. This is one of the issues that the court will ultimately decide.

I want to be frank in telling you that if we are able to resolve matters with the Siegel heirs (whether by settlement or judgment) *before* we reach an agreement with you, so that we acquire or are adjudged to own rights to the Superman character during the copyright extension term that begins in 2013, there will not be any pressing need to reach an agreement with you in advance of that date. The reason that we are contacting you at this time is that we are interested in removing now any possible issues as to whether DC Comics has sufficient rights to continue to fully exploit the Superman character in new works during the extension term beginning in 2013. Once we have certainty that we

2

Jul-14-06    05:20pm    From-                                T-873    P.005/010    F-355

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 3

have those rights from one of the joint holders, we are then assured of our right to continue to exploit those rights to create new works, and the other joint holder at best is entitled to a participation or has a claim for an accounting. Therefore, if you are interested in receiving something *now* in exchange for rights that cannot ripen until 2013, you should be aware that we are more motivated to make such a deal now. The deal that we envision makes a payment to you as soon as it is signed, but the opportunity to enter into such a deal exists only in the absence of a similar arrangement with the Siegel heirs, or a judgment by the court that the Siegel heirs have already settled the matter – as we contend they have.

        In considering our proposal – which you should discuss with any advisors to you – please keep in mind that even after 2013, if your termination notice is valid, your interest will be limited to U.S. rights since the termination notice you gave applies to rights under U.S. law only. In addition, you will still have to share the copyright with either or both the Siegel heirs or DC, so at best you will only have non-exclusive rights. Further, your interest will be limited to the 1930s version of the Superman character and the triangular (as opposed to the current 5-sided) "S" shield which have extremely limited marketability by themselves. These limitations are substantial and could make it virtually impossible for you to enter into any sort of significant license deal with another company. So a deal between you and DC really makes by far the most sense; it gives both parties significant benefits.

        So, with that background, I would like generally to outline for you our offer in exchange for your exclusive license to DC of all rights arising out of Joe's authorship or contributions to DC Comics, including any Shuster post-April 2013 rights in Superman and all related properties, including Superboy (the "Superman Property"). Although there may be fine points to this offer that our representatives will want to work out, the following is our basic proposal:

1.    **Non-Refundable Cash Advance**

        Upon signing, you shall be paid:

- A non-refundable advance against royalties (as described below) of two million dollars ($2,000,000.00) (This means that no matter what, you get to keep the money; it is applied against money DC may owe you commencing in 2013; it is not repayable by you)

3

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 4

2.    **Royalty Payments**

Beyond the initial advance, you shall share in the success of the Superman Property in connection with new works created after April 18, 2013. Commencing with revenues received on account of such works after April 18, 2013, DC shall pay you royalties, subject to recoupment of the advance described above, but in no event less than $100,000.00 per year, as follows:

- On merchandising and media licenses:

  o  6% of DC's receipts from all media and merchandising licenses for the domestic (U.S.) territory for use of the Superman Property where the property is not commingled with any other superhero or equivalent property

  o  3% of DC's receipts from all media and merchandising licenses for the domestic territory for use of the Superman Property where the property is commingled with one other superhero or equivalent property (*e.g.*, Batman, Flash)

  o  An allocable share of DC's receipts from all media and merchandising licenses for the domestic territory where the Superman Property is commingled with multiple other properties, provided that the 6% royalty shall not be reduced to less than 1%

  o  1% of DC's receipts from all media and merchandising licenses for the domestic territory for use of the Superman Property where the property is used in an extraordinarily mixed license with multiple other properties (*e.g.* Six Flags license with DC and Looney Tunes characters), except to the extent that receipts can be specifically attributed to the Superman property in which case the 6% royalty would apply to such receipts.

4

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 5

- On merchandise sold directly by DC

    o 6% of an allocable portion of domestically derived revenue from the Superman Property consistent with revenue reporting by third-party licensees, reducible by commingling or bundling as per the media and merchandising licenses above

- On publications sold directly by DC

    o 1% of the cover price of copies sold in the domestic territory of DC's own editions of publications ("Publications") based on the Superman Property where the Superman Property comprises the title of the publication (*e.g.* "Superman") or where the Superman Property comprises the entire subject matter of the publication (*e.g.* "Action Comics")

    o 1/2% of the cover price of Publications which are based on multiple properties which include the Superman Property

    o there shall be no royalties payable hereunder where the Superman Property appears in publications or stories based on other properties where neither the publication or story title contains the Superman Property

The royalties will be paid to you on a calendar year basis beginning in 2014 (for the April – December, 2013 period) and thereafter through 2033. During this period, you will receive a minimum royalty of $100,000.00 per year regardless of whether DC has recouped its advance.  To the extent that the minimum royalty exceeds the royalties earned under the above definitions, such excess shall be treated as an advance against royalties to be earned. Aside from the $100,000.00 minimum, all royalties earned shall first be applied to any unrecouped advances.  All sums advanced shall bear interest at the prime interest rate – whatever it may be – to the extent unrecouped.

5

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 6

3.      **Credit**

DC Comics shall accord credit along the lines of "Superman created by Jerry Siegel and Joe Shuster," "Created by Jerry Siegel and Joe Shuster" or "Based on the characters created by Jerry Siegel and Joe Shuster" on comic books, television programs (main titles), motion pictures (main titles on screen), all publications and other works where credit to creators is customary. Credit must be consistent with guild and other obligations.

4.      **Miscellaneous Terms**

You will make appropriate warranties and representations that you have not transferred or licensed any of the Superman rights and that DC may exploit the Superman Property without interference. You and DC will also mutually release each other and provide certain covenants and indemnities as to future claims. Finally, you will acknowledge DC's right to use and publish Joe's biographical facts, materials and photographs in connection with the Superman Property, including in connection with publicity and exploitation of Superman, which is something we want to do.

As mentioned above, there may be other details that would need to be ironed out before an agreement is signed, but we've tried to set forth herein the essential terms of the deal we are proposing.

We hope you feel there are compelling reasons for you to seriously consider our offer. First, it gives you money now, eight years before you could be entitled to it otherwise. Second, it provides you with an annual advance for each year from 2014 through 2033 -- as long as the term of copyright in Action Comics no. 1. Third, it allows you to capitalize on the synergies created by the combination of your rights -- which, by themselves are at best extremely narrow and likely unmarketable -- with those of DC. This is a situation where the whole is clearly greater than the sum of the parts and both you and DC can benefit from their combination.

Finally, to be fully open and candid, there is an additional point which I feel compelled to mention. I understand that you are represented by counsel in this matter -- Marc Toberoff -- and so I will ask DC's representatives to send him a copy of this letter. I assume that you know that Mr. Toberoff is also representing the Siegel heirs in their lawsuits against DC. I feel compelled to mention the dual role Mr. Toberoff is playing because the offer in this letter is

6

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 7

made only to you, on a confidential basis, in the hopes of making a deal that is mutually beneficial to your family and to DC. I hope that you will consider your own best interests and instruct your counsel accordingly; keeping in mind that what is best for you may well conflict with the interests of Mr. Toberoff's other client.

I am hopeful that you will find our proposal beneficial and fair. I very much look forward to your response and would welcome the opportunity to discuss any question you may have. Please call or write to me at your convenience, but I urge you to do so soon as given the current situation we can only keep this offer open for a short time. Thank you.

Sincerely,

Paul Levitz

7

# EXHIBIT K

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA
SIEGEL LARSON,

     Plaintiffs,

    vs.              No. 04-8400 (RSWL)(RZx)
                         -and-
WARNER BROS. ENTERTAINMENT  No. 04-8776 (RSWL)(RZx)
INC., et al.,

     Defendants.

AND RELATED COUNTERCLAIMS.

# ORIGINAL

DEPOSITION OF JOANNE SIEGEL

Beverly Hills, California

Wednesday, August 2, 2006

Reported by:
DAVID S. COLEMAN
CSR No. 4613

Job No. 1-50935



www.sarnoffcourtreporters.com

Irvine • Los Angeles • San Francisco

phone 877.955.3855 • fax 949.955.3854

SARNOFF
Court Reporters and
Legal Technologies

```
 1        A    I would like to see what you're talking about.
 2   You're talking about still another letter right now?
 3        Q    Well, yeah.  Why don't we look at the --
 4        A    I'm having -- you know, I must remind you I do
 5   have trouble concentrating, and dates are very difficult
 6   for me.
 7        Q    I appreciate that.  I'm trying to make this as
 8   easy as possible.
 9             Defendants' Exhibit 25, which is a cover letter
10   with the February 1, 2002 draft, might be helpful to put
11   before the witness.
12             MR. TOBEROFF:  I am sorry.  What is the exhibit
13   number?
14             MR. ZISSU:  25.
15        Q    If you could look at that exhibit, and after the
16   first page there is a draft of a contract.  If you could
17   please look at that.
18        A    Yes.  Page 1, yes.
19        Q    Do you recall receiving and seeing a copy of
20   that document on or shortly after the date of it, which
21   is February 1, 2002?
22        A    I recall that -- shortly after?
23        Q    On or about that time.
24        A    Shortly after the 1st?
25        Q    Yeah.  In the beginning of February did you see
```

27

1    that document?

2        A    Not at the beginning of February.

3        Q    When did you see it?

4        A    I'm trying to reconstruct.

5        Q    Well, approximately.

6        A    Maybe in or around the mid -- middle of

7    February, my guess.

8        Q    And wholly independent of any discussions you've

9    had with any lawyers, when you saw it, did you have a

10   reaction to it?

11       A    Yes.

12       Q    And what was your reaction?

13       A    I was very upset.

14            MR. TOBEROFF:  Okay.  I just want to instruct

15   the witness to -- I'll kind of keep this brief -- when he

16   says "wholly independent," I want to make sure --

17            MR. ZISSU:  This is inappropriate.  You are not

18   supposed to be doing this.

19            MR. TOBEROFF:  Excuse me --

20            MR. ZISSU:  The witness answered the question,

21   understood the question --

22            MR. TOBEROFF:  You can do the deposition your

23   way.  I am going to defend it my way.  Please stop

24   interrupting.

25            MR. ZISSU:  I object.

                                                          28

1      Q    When you first --

2      A    It's gotten -- this has gotten too confusing.

3      Q    Well, when you first saw this document in mid

4    February, had you already discussed it with your lawyer?

5           MR. TOBEROFF:   Objection.   You are not to

6    testify -- I instruct you not to answer that question, as

7    to what you discussed with your lawyer.

8           (Instruction not to answer.)

9    BY MR. ZISSU:

10     Q    Did you have any reaction before you had any

11   communication with your lawyer about this document?

12     A    I don't recall.

13     Q    So is it fair to say that independently of any

14   conversations you had with a lawyer, you can't recall

15   having had any reaction to this document?

16     A    I don't know all -- I'm confused right now, so I

17   can't answer that.

18     Q    Now let's look at Defendants' Exhibit 23.

19          MR. TOBEROFF:   I think it's better that you

20   handle these exhibits.   I think it's more appropriate.

21          MR. ZISSU:   Oh, okay.   That's fine.

22     Q    Did you write this letter?

23     A    I believe so.

24     Q    Did any lawyer help you write this letter?

25     A    No.

32

```
 1        Q    Did you discuss with any lawyer --

 2             MR. TOBEROFF:  Just a second.  Before we get to

 3   the next question, I did not -- I do not have -- I didn't

 4   realize we were going to work off the same exhibits, so I

 5   don't have a set to look at.

 6             MR. ZISSU:  Why don't you borrow these.  Oh, no.

 7   Why don't you borrow those.  Sorry.

 8             MR. TOBEROFF:  That would be great.  If I

 9   could...  Sorry.

10             MR. ZISSU:  That's all right.

11             MR. TOBEROFF:  Let me just organize these for a

12   second.

13             MR. ZISSU:  They're in order.

14             MR. ZISSU:  Could you read back the last

15   question and answer?

16             (Record read as follows:

17                 "Q    Did any lawyer help you write

18             this letter?

19                 "A    No.

20                 "Q    Did you discuss with any

21             lawyer -- ")

22             THE WITNESS:  Was it about this letter?

23   BY MR. ZISSU:

24        Q    Did you discuss with any lawyer the content of

25   this letter before you sent it?
```

33

1        A    No.

2        Q    Now, if you look at the next -- the second page,

3    in the fourth paragraph down --

4        A    Yes.

5        Q    -- there is -- the second sentence reads as

6    follows:  "The beast hungers for more," and then the next

7    sentence reads, "Just like the Gestapo, your company

8    wants to strip us naked of our legal rights," close

9    quote.

10            In what way did you believe that the defendants

11   were stripping you of your legal rights?

12       A    You mean in connection with what?

13       Q    In connection with the letter you wrote.  What

14   did you mean in your letter?

15       A    Well, the February contract was so shocking that

16   we felt -- that's the way I felt.

17       Q    And in what way did you feel it was shocking?

18            MR. TOBEROFF:  Now you're getting back into the

19   same interpretation of a 56-page document.  It involves

20   the attorneys, and that contract was obviously

21   interpreted for her by her attorneys, and she can't --

22   first of all, you're not asking her to articulate that,

23   but I'm instructing her not to answer information she got

24   through discussions with her attorneys.

25            MR. ZISSU:  Well, I just want to point out two

34

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
**877.955.3855**

1      Q    Isn't it a fact that Mr. Toberoff began

2  representing you in late 2002 or early 2003?

3      A    It was late 2002.

4      Q    And didn't he get the files, which included this

5  document, at about that time?

6      A    I don't know when he got it.

7      Q    I'm looking --

8           MR. TOBEROFF:  I can represent to you this

9  October 26 letter was not in the files that I received

10  from Kevin Marks.

11          MR. ZISSU:  I'm looking for the copy of it, the

12  October 26 letter, which was marked yesterday, I believe.

13  It's in a separate pile here somewhere.

14     Q    Were you also dealing with Bruce Ramer at the

15  Gang Tyre firm?

16     A    When?

17     Q    In the period when Kevin Marks was representing

18  you.

19     A    Oh, that's the firm.

20     Q    Yes.

21          And Bruce Ramer was also working for you then.

22          Correct?

23     A    I -- yes, I guess.

24          MR. ZISSU:  Marc, it would be really helpful if

25  you would help me so I can reduce my time looking for

41

```
 1              MR. ZISSU:  No.  What you had --
 2              MR. TOBEROFF:  Just to be clear, on the new
 3    exhibits, I'll add one copy to this pile and keep another
 4    copy separate?
 5              MR. ZISSU:  Right.
 6              MR. TOBEROFF:  Okay.
 7              MR. ZISSU:  And so you need another.  Right?
 8              MR. TOBEROFF:  Yeah.
 9              MR. ZISSU:  The letter to which you're
10    referring, Marc, is Defendants' Exhibit 41, which is a
11    letter of the same day to Kevin Marks and Bruce Ramer.
12              MR. TOBEROFF:  Okay.
13    BY MR. ZISSU:
14        Q    Miss Siegel, you have before you Defendants'
15    Exhibit 43.  Did you write that letter?
16        A    Would you repeat the date?
17        Q    Yes.  September 21, 2002.  Did you with your
18    daughter write that letter to Paul Levitz?
19        A    Yes.
20        Q    Yes?
21        A    Yes.
22        Q    And at that date is it your testimony that you
23    still did not have a copy of John Schulman's October 26,
24    2001 letter?
25        A    Yes.
```

44

1
2
3
4
5
6
7
8       I, JOANNE SIEGEL, do hereby declare under

9   penalty of perjury that I have read the foregoing

10  transcript; that I have made any corrections as appear

11  noted, in ink, initialed by me, or attached hereto; that

12  my testimony as contained herein, as corrected, is true

13  and correct.

14       EXECUTED this _17th_ day of _September_,

15  20_06_, at _MARINA DEL Rey_, _CA_.
                      (City)              (State)

16
17
18
19  _____
        JOANNE SIEGEL
20
21
22
23
24
25

140

1

2

3

4        I, the undersigned, a Certified Shorthand

5   Reporter of the State of California, do hereby certify:

6            That the foregoing proceedings were taken

7   before me at the time and place herein set forth; that

8   any witnesses in the foregoing proceedings, prior to

9   testifying, were placed under oath; that a verbatim

10  record of the proceedings was made by me using machine

11  shorthand which was thereafter transcribed under by

12  direction; further, that the foregoing is an accurate

13  transcription thereof.

14            I further certify that I am neither

15  financially interested in the action nor a relative or

16  employee of any attorney of any of the parties.

17            IN WITNESS WHEREOF, I have this date

18  subscribed my name.

19

20  Dated:  _____AUG 1 8 2006_____

21

22

            DAVID S. COLEMAN, CSR NO. 4613

23

24

25

# Errata Sheet

**Pg/Ln**                                    **Correction**

11 / 10    Change from: "*... and a October 1926 letter.*"
           Change to: "*... and an October 26th letter,*"

39 / 8-10    Change from: *And 10 days later he sent that letter to John Schulman. 10 days later.*
             Change to: "*And 7 days later he sent that letter to Kevin Marks, 7 days later.,*"

49 / 4    Change from: "*demands that were your unapprovable.*"
          Change to: "*demands that were unapprovable.*"

87 / 8-9    Change from: "*February 1, 2000 draft*"
            Change to: "*February 1, 2002 draft*"

120 / 5-6    Change from: "*You mean based on that contract that we didn't like,...*"
             Change to: "*You mean based on that letter that we didn't like,...*"

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

___ / ___    Change from:_____
             Change to:_____

Signature: _Joanne Siegel_        Date: _September 17th 2006_

EXHIBIT K
Page 123

# EXHIBIT M

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA
SIEGEL LARSON,

        Plaintiffs,

     vs.

WARNER BROS. ENTERTAINMENT
INC., et al.,

       Defendants.

AND RELATED COUNTERCLAIMS.

No. 04-8400 (RSWL)(RZx)
      -and-
No. 04-8776 (RSWL)(RZx)

# ORIGINAL

DEPOSITION OF LAURA SIEGEL LARSON

Beverly Hills, California

Tuesday, August 1, 2006

Reported by:
DAVID S. COLEMAN
CSR No. 4613

Job No. 1-50934



www.sarnoffcourtreporters.com

Irvine • Los Angeles • San Francisco

phone 877.955.3855 • fax 949.955.3854

**SARNOFF**
*Court Reporters and*
*Legal Technologies*

1   KCAL in Los Angeles, which was owned by the Disney

2   company at that time.

3       Q   And since you have been disabled, you have not

4   been employed?

5       A   Correct.

6       Q   When was the first time you had any

7   communication with Marc Toberoff?

8       A   I believe it was in late 2002.

9       Q   Okay.  And do you remember the occasion of

10  meeting him?

11      A   My mother had spoken to him on the phone.  She

12  had had a conversation with Jean Peavy, and Jean Peavy

13  recommended him, and subsequent to that we met.

14      Q   And who is Jean Peavy?

15      A   Jean Peavy is an old family friend, and she is

16  the sister of Joe Shuster.

17      Q   Do you know whether that telephone conversation

18  was initiated by Ms. Peavy or by your mother?

19      A   I don't know.

20          MR. ZISSU:  Let's mark as Defendants' Exhibit 3

21  a document entitled "Defendants'/Counterclaimant's First

22  Set of Requests for the Production of Documents and

23  Things."

24          (Defendants' Exhibit 3 marked.)

25  BY MR. ZISSU:

17

1          So my question is, did you read those two

2     referenced documents shortly before or in connection with

3     signing this document?

4          A    Yes.

5               MR. ZISSU:  And then this is the last one before

6     lunch, if I can find it.  This is a Notice of Termination

7     of Transfer Covering Extended Renewal Term.  Let me find

8     it.

9               (Defendants' Exhibit 18 marked.)

10    BY MR. ZISSU:

11         Q    It doesn't have all the pages.  It has pages 1,

12    2, 3, 24, 25 and 26 of the document.  On page 25 it has

13    the signatures of Joanne Siegel and Laura Siegel Larson,

14    and it has to do, I think, with a character called

15    Spectre or The Spectre, spelled T H E  S P E C T R E.

16              And do you recognize this?

17         A    Yes.

18         Q    And if you go to page 2 in paragraph 2 following

19    the Arabic number (1) in parentheses, there is reference

20    to the "Spectre character appearing in costume in an ad

21    in issue No. 51 of More Fun Comics, copyrighted November

22    28, 1939...," and then it goes on, and my question is, do

23    you remember reviewing or seeing a copy of the ad that's

24    referenced?

25         A    No.

                                                              107

1     Q    And he should have told DC Comics, according to

2     what you're testifying, that these deal points were

3     accepted on the conditions you've just testified to?

4     A    Yes.

5     Q    And did -- and was that information ever

6     conveyed either by you or by Mr. Marks to DC Comics, the

7     conditions you've just mentioned?

8     A    I don't recall.

9     Q    To this day has that ever been explained or

10    communicated to DC Comics?

11    A    I believe it was.

12    Q    When?

13    A    I believe that my mother made it perfectly

14    clear.

15    Q    To whom?

16    A    In a letter that she wrote.

17    Q    To?  To whom?

18    A    To Dick Parsons.

19    Q    These conditions were mentioned in a letter that

20    your mother wrote in May of the next year -- is that what

21    you're referring to? -- to Dick -- to Mr. Parsons?

22    A    Yes, I believe that was the letter.

23        MR. ZISSU:  Let's mark as Defendants' Exhibit 23

24    a letter dated May 9, 2002 from Joanne Siegel to Richard

25    D. Parsons.

133

1          (Defendants' Exhibit 23 marked.)

2   BY MR. ZISSU:

3       Q    Do you want to look through that for a second,

4   please?

5            Have you finished?

6       A    Yes.

7       Q    Where are those conditions mentioned in this

8   letter, which is Defendants' Exhibit 23?

9       A    In the first line of the fourth paragraph on

10  page 1 is one place.

11      Q    And you want to read that?

12      A    "Your company's unconscionable contract dated

13  February 4, 2002 contained new, outrageous demands that

14  were not in the proposal."

15      Q    Maybe I'm missing something.  I don't see that

16  that sentence refers to the conditions you mentioned, and

17  I don't think it says that the October 19, 2001 letter

18  included -- was to have included such conditions.

19           Could you explain that to me?

20           MR. TOBEROFF:  Objection.  Argumentative.

21  BY MR. ZISSU:

22      Q    Well, I'm asking you, how does this sentence

23  include a statement to Mr. Parsons that the October 19,

24  2001 letter was conditional?

25      A    Because our conditions were that no new demands

                                                        134

1    understanding of what was stated in this opinion than you

2    have previously testified today?

3        A    No.

4        Q    Did --

5            MR. TOBEROFF:   How we doing on time?

6            MR. ZISSU:   How much do we have left on the

7    clock?

8            (Discussion held off the record.)

9            MR. ZISSU:   Defendants' Exhibit 41.

10            (Defendants' Exhibit 41 marked.)

11    BY MR. ZISSU:

12        Q    This is a letter dated from Laura Siegel Larson

13    and Joanne Siegel to Kevin Marks dated September 21,

14    2002.

15            Are you familiar with this letter?

16        A    Yes.

17        Q    In the -- I think it's the third sentence, it

18    says, "Therefore due to irreconcilable differences, after

19    four years of painful and unsatisfying negotiations, this

20    letter serves as formal notification that we are totally

21    stopping and ending all negotiations with DC Comics,

22    Inc., it's parent company AOL Time Warner and all of its

23    representatives and associates, effective immediately,"

24    and my question is, was there some prior informal

25    notification given to anyone to the same effect?

261

1    A    I don't believe so.

2    Q    Did anyone help you write this letter?

3    A    My mom and I wrote it together.

4    Q    Had you met Mr. Toberoff at this point?

5    A    No.

6    Q    And you hadn't consulted him about this letter?

7    A    No.

8    Q    So what was the answer about -- there was no

9    prior informal notification?  Was that your testimony?

10    A    I don't believe so.

11    Q    Were you repudiating the October 19, 2001

12    letter?

13        MR. TOBEROFF:  Objection.  Calls for a legal

14    conclusion.

15        THE WITNESS:  I don't know what you mean by

16    that.

17    BY MR. ZISSU:

18    Q    Well, how would you terminate what you were

19    doing in relation to the October 19, 2001 letter?

20    A    Well, the --

21        MR. TOBEROFF:  Objection.  Vague and ambiguous.

22        THE WITNESS:  The October 19th letter was no

23    longer at issue.  What was at issue was this February

24    2002 document.

25    BY MR. ZISSU:

262

1

2

3

4

5

6

7

8        I, LAURA SIEGEL LARSON, do hereby declare under

9    penalty of perjury that I have read the foregoing

10   transcript; that I have made any corrections as appear

11   noted, in ink, initialed by me, or attached hereto; that

12   my testimony as contained herein, as corrected, is true

13   and correct.

14        EXECUTED this _17th_ day of _September_ ,

15   20 _06_ , at _Playa Del Rey,_ , _California_ .
                    (City)                        (State)

16

17

18

19        _Laura Siegel Larson_
          LAURA  SIEGEL  LARSON

20

21

22

23

24

25

278

1
2
3
4          I, the undersigned, a Certified Shorthand
5    Reporter of the State of California, do hereby certify:
6              That the foregoing proceedings were taken
7    before me at the time and place herein set forth; that
8    any witnesses in the foregoing proceedings, prior to
9    testifying, were placed under oath; that a verbatim
10   record of the proceedings was made by me using machine
11   shorthand which was thereafter transcribed under by
12   direction; further, that the foregoing is an accurate
13   transcription thereof.
14              I further certify that I am neither
15   financially interested in the action nor a relative or
16   employee of any attorney of any of the parties.
17              IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19
                AUG 1 8 2006
20   Dated:    _____
21
22
23              DAVID S. COLEMAN, CSR NO. 4613
24
25

# Errata Sheet

**Pg/Ln**                                          **Correction**

_5_/_20_ _LSL_ Change from: _Issue No. 31 of More Fun Comics dated May, 1938_
Change to: _Cover and one page from Issue No. 31 of More Fun Comics dated May, 1938, cover and one page from Issue No. 26 of Adventure Comics_
_16_/_7_ _LSL_ Change from: _dated May, 1938, and cover and one page from Issue No. 15 of Detective Comics_
Change from: _"1972."_
Change to: _"1973."_

_20_/_2_ _LSL_ Change from: _"I don't remember like that."_
Change to: _"I don't remember anything like that."_

_25_/_7_ _LSL_ Change from: _"I don't surf for any email address,"_
Change to: _"I don't surf for an email address,"_

_30_/_24-25_ _LSL_ Change from: _"He was very energetic and passionate about the Siegel and the_    _Siegels_
Change to: _"He was very energetic and passionate about the Siegel — the_ _Siegels_

_71_/_7-8_ _LSL_ Change from: _"It has nothing to do with copyright issue."_
Change to: _"It has nothing to do with the copyright issue."_

_135_/_1-2_ _LSL_ Change from: _"I mean that were not in the proposal would appear in a final_ _write-up."_ _m_
Change to: _"I mean that no conditions that were not in the original proposal would appear in a final write-up."_

_180_/_11-12_ _LSL_ Change from: _"... is this contract referring to the list of Works,..."_
Change to: _"... is this referring to the list of Works ..."_

_251_/_24_ _LSL_ Change from: _"1991"_
Change to: _"1999"_

___/___    Change from:_____
Change to:_____

___/___    Change from:_____
Change to:_____

___/___    Change from:_____
Change to:_____

___/___    Change from:_____
Change to:_____

Signature: _Laura Siegel Larson_    Date: _September 17, 2006_