KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (195889)
 *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
 *ndaum@kbkfirm.com*
Nathalie E. Cohen (258222)
 *ncohen@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics,<br><br>                Plaintiff,<br><br>        v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. CV 10-3633 ODW(RZx)<br><br>**NOTICE OF MOTION AND MOTION OF MARC TOBEROFF, PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with REQUEST FOR JUDICIAL NOTICE, DECLARATION OF DAUM, MOTION TO STRIKE PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW, and NOTICE OF JOINDER*<br><br>Hon. Otis D Wright, II<br><br>Date:    October 18, 2010<br>Time:    1:30 p.m.<br><br>Complaint Filed:    May 14. 2010 |

---

**NOTICE OF MOTION AND MOTION OF DEFENDANTS MARC TOBEROFF, ET AL.
TO DISMISS PLAINTIFF'S COMPLAINT**

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 18, 2010, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Otis D Wright, II, located in the United States Courthouse, 312 N. Spring Street, Los Angeles, California, 90012, Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC ("Moving Parties") will and hereby do move this Court to dismiss plaintiff's Fourth and Fifth Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6).

This Motion is made upon the following grounds: the Fourth Claim for Relief for tortious interference with contract fails to state a claim because no interference has been alleged, no valid contract has been alleged, and the cause of action is barred by a two-year statute of limitations and by California's litigation privilege. The Fifth Claim for Relief for tortious interference with prospective economic advantage fails to state a claim because it is barred by a two-year statute of limitations and by California's litigation privilege.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 13, 2010.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated:  August 13, 2010                    KENDALL BRILL & KLIEGER LLP


By:  /s/ Richard B. Kendall
      Richard B. Kendall
      Attorneys for Defendants Marc Toberoff,
      Pacific Pictures Corporation, IP
      Worldwide, LLC, and IPW, LLC

1
NOTICE OF MOTION AND MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     STATUTORY BACKGROUND ............................................................... 4

III.    DC'S COMPLAINT AND JUDICIALLY-NOTICEABLE DOCUMENTS ............................................................................................ 5

    A.     The 1992 Agreement Between DC, Frank Shuster, and Jean Peavy ................................................................................................... 5

    B.     The Siegel Heirs Terminate Jerome Siegel's Copyright Grants ............ 6

    C.     The PPC Agreements ................................................................................ 6

    D.     The Siegels Contact Toberoff, Enter Into the IP Worldwide Agreement, and Thereafter File Suit ......................................................... 7

    E.     The *Siegel* Litigation and the So-Called "Toberoff Timeline" ............... 8

IV.    ARGUMENT ............................................................................................... 8

    A.     Legal Standard ......................................................................................... 8

    B.     The Fourth Claim For Interference With the 1992 Shuster Agreement Fails to State a Claim ............................................................. 9

        1.     Elements of a Claim for Tortious Interference With Contract ......................................................................................... 9

        2.     There Has Been No Interference with the 1992 Agreement ........ 9

        3.     If the 1992 Agreement *Did* Somehow Affect the Termination Interest of the Shuster Executor, It Would Be Void ........................................................................................ 13

        4.     A Claim of Interference with the 1992 Agreement Is Barred by the Statute Of Limitations, Which Began to Run No Later Than 2006 ............................................................... 18

        5.     The Litigation Privilege Bars DC's Interference Claim ............. 20

    C.     The Fifth Claim For Interference With Prospective Economic Advantage Fails to State a Claim .......................................................... 21

        1.     The Litigation Privilege Bars DC's Interference Claim ............. 21

        2.     DC's Fifth Claim is Barred by the Two-Year Statute Of Limitations That Accrued No Later Than 2006 .......................... 23

V.     CONCLUSION ........................................................................................ 25

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aronson v. Kinsella*,
  58 Cal. App. 4th 254 (1997).................................................................................23

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ..........................................................................................8

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
  52 Cal. App. 4th 867(1997).........................................................................13, 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................8

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994)...................................................................................5

*Classic Media, Inc. v. Mewborn*,
  532 F.3d 978 (2008) .....................................................................................passim

*Crowley v. Katleman*,
  8 Cal. 4th 666 (1994)...........................................................................................22

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
  47 Cal. App. 4th 777 (2008).................................................................................22

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002).............................................................................................12

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005)...................................................................................19, 24

*Galbraith v. County of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002)...............................................................................5

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988)............................................................................19, 20, 24

*Kashian v. Harriman*,
  98 Cal. App. 4th 892 (2002).................................................................................23

*Larry Spier, Inc. v. Bourne Co.*,
  953 F.2d 774 (2d Cir. 1992).................................................................................14

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002).................................................................................14

*Milne v. Stephen Slesinger, Inc.*,
  430 F.3d 1036 (9th Cir. 2005)...................................................................15, 16, 17

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

*Moss v. U.S. Secret Service,*
    572 F.3d 962 (9th Cir. 2009)...................................................................8

*Music Sales Corp. v. Morris,*
    73 F. Supp. 2d 364 (S.D.N.Y. 1999)......................................................15

*Pacific Gas & Electric Co. v. Bear Stearns & Co.* ("*PG&E*"),
    50 Cal.3d 1118 (1990).................................................................9, 21, 23

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1997)...................................................................10

*Rosenthal v. Irell & Manella,*
    135 Cal. App. 3d 121 (1982)..............................................................20, 22

*Rubin v. Green,*
    4 Cal. 4th 1187 (1993)........................................................................20, 21

*Samuels v. Forest,*
    2007 WL 3149285 (Cal. App. Oct. 30, 2007)........................................20

*Seltzer v. Barnes,*
    182 Cal. App. 4th 953 (2010).................................................................23

*Siegel v. Warner Bros. Ent. Inc.,*
    542 F. Supp. 2d 1098 (C.D. Cal. 2008)....................................................8

*Siegel v. Warner Bros. Ent. Inc.,*
    658 F. Supp. 2d 1036 (C.D. Cal. 2009)....................................................8

*Silberg v. Anderson,*
    50 Cal.3d 205 (1990)..............................................................................21

*Steckman v. Hart Brewing, Inc.,*
    143 F.3d 1293 (9th Cir. 1998).................................................................18

*Streamcast Networks, Inc. v. Skype Techs., S.A.,*
    2006 WL 5441237 (C.D. Cal. Sept. 14, 2006).......................................19

*Taheri Law Group v. Evans,*
    160 Cal. App. 4th 482 (2008)..................................................................22

*Trembath v. Digardi,*
    43 Cal. App. 3d 834 (1974).....................................................................19


**STATUTES & RULES**

112 Stat. 2827 (1998) ....................................................................................5

17 U.S.C. § 101...............................................................................................15

Cal. Civ. Code § 47........................................................................................23

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

Cal. Code Civ. Proc. § 339(1) ............................................................... 19, 23

Cal. Code Civ. Proc. § 425 ..........................................................................3

Cal. Civil Code § 47(b)..........................................................................4, 15

Copyright Act, 17 U.S.C. § 304 .........................................................passim

Fed. R. Civ. P. 12......................................................................................1, 9

Fed. R. Civ. P. 8............................................................................................9

Public Law 94-553........................................................................4, 5, 11, 20

Public Law No. 105-298............................................................................20

## OTHER AUTHORITIES

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 11.01....................................14

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action represents an absolutely meritless attack by plaintiff DC Comics ("DC") against an opposing attorney in the midst of ongoing litigation.  DC, after losing on summary judgment to the heirs of Jerome Siegel ("Siegel") in the long-running *Superman* litigation, has opted to sue its opposing counsel in a transparent attempt to reopen the record, re-litigate the case, and delay final judgment.  This outlandish strategy fails as a matter of law, as we demonstrate below.

DC's latest tactic arises in the 11th hour of a long-running battle over the copyright to *Superman* between DC Comics (inclusive of its predecessors, "DC") and the heirs of *Superman*'s original co-authors, Siegel and Joseph Shuster ("Shuster").  In the 1930s, Siegel and Shuster, two high school students, co-created *Superman* and with it, the superhero genre.  In 1938, for a pittance, they signed a publisher's release which was later held to have granted their entire copyright in *Superman* to DC.  *Superman*, of course, became one of the most famous and lucrative superhero franchises in the world, but its co-authors, Siegel and Shuster, did not share in the substantial profits from their creation.

In 1976, Congress changed the law in recognition of the fact that authors, like Siegel and Shuster, faced a tragic problem:  publishers routinely demanded that authors sign contracts granting the entirety of their copyrights for small sums if they wished to see their works published, denying them the fruits of their labor, even if their works proved wildly successful.  To help level the field Congress engrafted a termination right into the Copyright Act, 17 U.S.C. § 304, which empowers authors and certain of their heirs to recapture their copyrights, after lengthy waiting periods, by terminating old copyright grants without cause, 17 U.S.C. § 304(c)(5).

Although both Siegel and Shuster are deceased, Siegel's heirs and the personal representative of Shuster's Estate (the "Shuster Executor") properly availed themselves of their termination rights.  The Siegels served notices of termination in

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1997.  The Shuster Executor served a notice of termination in 2003, shortly after he was appointed by the probate court.  Ever since, DC has fought desperately to prevent them from receiving the intended benefits of their statutory termination rights.  DC has spent nearly six years in litigation with the Siegels, so far.  The Siegel cases, Nos. 04-CV-08400 ODW (RZx) ("*Superman*") & 04-CV-08776 ODW (RZx) ("*Superboy*") (the "*Siegel* litigation") have been pending before this Court since October 2004.  Therein, the Siegels sought declaratory relief that their terminations are valid and an accounting of profits.  Defendant Marc Toberoff ("Toberoff") and his law firm, Toberoff & Associates, represents the Siegels in the *Siegel* litigation.  Mr. Toberoff also represents the Shuster Executor with respect to his mirror-image termination regarding the same *Superman* works and grants by Siegel and Shuster.

In March 2008, DC suffered an enormous setback in the *Siegel* litigation.  The Hon. Stephen G. Larson of this District granted partial summary judgment largely in favor of the Siegels, threatening DC's exclusive control over *Superman*, and setting a trial as to an accounting and related issues.  Judge Larson held in his extraordinarily detailed, 72-page partial summary judgment opinion that the Siegel heirs had properly invoked Section 304 to recapture Jerome Siegel's original *Superman* copyrights.  The same logic will compel a similar conclusion with respect to the Estate of Joseph Shuster.

After losing on summary judgment, DC replaced its counsel and concocted its current strategy, reflected in DC's Complaint:  to re-litigate the copyright issues thoroughly litigated on the merits in the *Siegel* litigation, while seeking to undermine the relationship between the Siegels, the Shusters, and their attorneys by attacking Mr. Toberoff personally.[1]  However, as shown below, there is no basis in

---

[1] Notably, the Siegel and Shuster families continue to employ Mr. Toberoff and adamantly oppose DC's attempt to interfere with their attorney's representation of them.

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

law or reason for DC's attempt to drag Mr. Toberoff and several affiliated entities into this copyright litigation.[2]

This motion[3] concerns DC's Fourth and Fifth Claims for Relief, the two claims that directly implicate Toberoff.  DC's Fourth Claim for tortious interference with contract alleges that by inducing the Shuster Estate to file a statutory notice of termination concerning *Superman*, Toberoff and an entity controlled by Toberoff, Pacific Pictures Corporation ("PPC"), interfered with a 1992 agreement (the "1992 Agreement") between DC and the siblings of Joseph Shuster.  This claim fails for at least four independent reasons.  *First*, the termination of the *Superman* copyright interests by the personal representative of the Shuster Estate (the "Shuster Executor") could not have interfered with the 1992 Agreement.  That agreement was between DC and Joseph Shuster's brother and sister.  Shuster's brother and sister have never had any rights under the Copyright Act to terminate Shuster's copyright grants.  Under the Copyright Act, the Shuster Executor is the only party with a right to terminate Shuster's copyright grants to DC, and he was <u>not</u> a party to the 1992 Agreement.  Because the 1992 Agreement concerns only the rights of Shuster's siblings, it has no bearing whatsoever on the independent termination right held solely by the Shuster Executor.  *Second*, even if the 1992 Agreement could somehow be construed to prevent the Shuster Executor from exercising his termination rights, such a contract would be void under the Copyright Act, 17 U.S.C. § 304(c)(5), and clear Ninth Circuit precedent.  *Third*, the claim is squarely barred by the two-year statute of limitations for tortious interference claims.  It is a matter of public record that by 2006 DC was aware of the facts that allegedly gave

---

[2] Defendants have concurrently filed a motion ("Anti-SLAPP Motion") to strike these three claims pursuant to Cal. Code of Civ. Proc. § 425.16 (the "Anti-SLAPP law").

[3] Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC join in the motion to dismiss concurrently filed by defendants Joanne Siegel and Laura Siegel Larson with respect to the Third and Sixth Claims for Relief.

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  rise to this claim.  *Fourth*, the claim is clearly barred by California's litigation

2  privilege, Civil Code § 47(b).

3      DC's Fifth Claim is equally meritless as a matter of law.  This claim alleges

4  interference by Toberoff with DC's purported "prospective economic advantage" –

5  namely, a proposed settlement agreement between DC and the Siegel heirs over

6  their *Superman* terminations.  This claim, like the Fourth Claim, is squarely barred

7  by California's litigation privilege, as the sole basis of the cause of action is

8  Toberoff's alleged solicitation of his clients in the *Siegel* litigation.  Moreover, this

9  claim is also barred by the two-year statute of limitations applicable to tortious

10  interference claims.

11  **II.    STATUTORY BACKGROUND**

12      This motion involves the termination provisions of the Copyright Act, 17

13  U.S.C. §§ 304(c) & (d).  With the enactment of the 1976 Copyright Act (effective

14  January 1, 1978), Congress provided a new right to authors, their surviving spouses,

15  children, and grandchildren, to recapture their copyrights by terminating prior grants

16  of copyright grants, under specified procedures.  Complaint ¶ 45; 17 U.S.C. § 304;

17  *see also Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 984 (9th Cir. 2008).

18      Significantly for this motion, the termination right belongs exclusively to the

19  author and certain statutorily-designated parties, but not to an author's siblings.  17

20  U.S.C. § 304(c)(2).  Moreover, when Congress first enacted the termination right in

21  1976, it did not provide an author's estate with the right to terminate prior copyright

22  grants.  Pub. L. 94-553, 90 Stat. 2768 (1976), at § 304(c)(2).  However, in 1998,

23  Congress amended the 1976 Act to also provide the termination right to the

24  executor, administrator or personal representative of an author's estate.  17 U.S.C.

25  § 304(c)(2)(D); Pub. L. 105-298, 112 Stat. 2827 (1998) ("In the event that the

26  author's widow or widower, children, and grandchildren are not living, the author's

27  executor, administrator, personal representative, or trustee shall own the author's

28  entire termination interest.").  Siblings still have no termination right.  *Id.*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

## III.   DC'S COMPLAINT AND JUDICIALLY-NOTICEABLE DOCUMENTS[4]

In the mid-1930s, Jerome Siegel, a writer, and Joseph Shuster, an illustrator, created the *Superman* character in comic strips which they submitted to publishers. Complaint ¶ 27.  In 1938, Siegel and Shuster adapted their preexisting *Superman* strips and story to a comic book format, published in "Action Comics No. 1" by a predecessor-in-interest of DC Comics.  *Id. ¶* 30.  In agreements from 1938 and 1939, Siegel and Shuster assigned their copyrights in *Superman* to DC.  *Id.* ¶ 29. For more than 70 years, Siegel and Shuster's *Superman* character has endured as "one of the most famous and beloved fictional characters in the world" and the subject of numerous comic books, films, and television series.  *Id.* ¶¶ 33, 34.

### A.   The 1992 Agreement Between DC, Frank Shuster, and Jean Peavy

In 1992, Joseph Shuster died.  Complaint ¶ 46.  He had no surviving widow at the time of his death, nor did he have any children or grandchildren.  *Id.*  He was survived by his brother and sister, Frank Shuster and Jean Peavy, and Jean Peavy's two children.  On September 10, 1992, DC, Frank Shuster, and Jean Peavy entered into a one-page written agreement (the "1992 Agreement") regarding *Superman*. Complaint ¶¶ 46-48; Defendant's Request for Judicial Notice ("RJN") at ¶ 1, Ex. A.

In exchange for annual payments to Jean Peavy of $25,000 per year, Frank Shuster and Jean Peavy agreed to settle all claims that they personally held against DC in connection with Joseph Shuster's copyright interests.  RJN ¶ 1, Ex. A.  Frank Shuster and Jean Peavy further agreed that if "either of [them] assert any such claim of right," they would refund the annual payments to DC, and DC would have no

---

[4] In a motion to dismiss under Rule 12(b)(6), the Court considers only the allegations of the Complaint, documents whose contents have been alleged in the Complaint, and matters subject to judicial notice.  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  For purposes of this motion, defendants assume the truth of the allegations of the Complaint, in light of the documents that the Court may consider, without prejudice to defendants' right to contest those allegations.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  ongoing obligation.  *Id.*  Neither Joseph Shuster, nor the Shuster Estate, nor the

2  executor, administrator, or personal representative of the Shuster Estate was a party

3  to the 1992 Agreement.  *Id.*; Complaint ¶ 50.  Frank Shuster died in 1996.

4  Complaint ¶ 51.

5  **B.    The Siegel Heirs Terminate Jerome Siegel's Copyright Grants**

6  In 1996, Jerome Siegel died.  Complaint ¶ 60.  He was survived by his

7  widow, Joanne Siegel, and their daughter, Laura Siegel Larson (the "Siegels").  *Id.*

8  ¶¶ 20-21.  In 1997, the Siegels served statutory notices under 17 U.S.C. § 304(c) to

9  terminate Jerome Siegel's prior grants of his *Superman* copyright interests to DC

10  (the "Siegel Termination").  *Id.* ¶ 60.  In April 1999, DC sent a letter to the Siegels'

11  counsel rejecting the "validity and scope" of the Siegel Termination.  RJN ¶ 2, Ex.

12  B at 20.  Thereafter, DC and the Siegels held settlement negotiations.  Complaint

13  ¶ 61.

14  **C.    The PPC Agreements**

15  In 2001, Marc Toberoff, an attorney who, among other things, advised clients

16  on business issues related to the recapture and marketing of rights under the

17  Copyright Act, came into contact with Joseph Shuster's sister, Jean Peavy, and

18  nephew, Mark Warren Peary.  Complaint ¶ 54.  Later in 2001, Pacific Pictures

19  Corporation ("PPC"), an entity controlled by Toberoff, entered into a joint venture

20  agreement with Jean Peavy and Mark Warren Peary (the "2001 PPC Agreement")

21  for the express "purpose of retrieving, enforcing and exploiting all of Joe Shuster

22  and his estate's rights, claims, copyrights … in and to Joe Shuster's creations"

23  through "termination pursuant to [17 U.S.C. § 304] of any and all grant or transfers

24  by Joe Shuster of any copyright interest in his creations."  *Id.*; RJN ¶ 4, Ex. D at ¶ 2.

25  The parties agreed in the 2001 PPC agreement to establish the estate of Joseph

26  Shuster, and that the venture would "retain Marc Toberoff, Esq. to render legal

27  services."  RJN ¶ 4, Ex. D at ¶ 7.

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6

In 2003, after the Shuster Estate was established, the 2001 PPC Agreement was modified in a new agreement (the "2003 PPC Agreement") to add Mark Warren Peary to the venture in his capacity as personal representative of the Shuster Estate. RJN ¶ 5, Ex. E.  The 2003 PPC Agreement also specifically included a provision that Toberoff would be retained as counsel to the venture.  RJN ¶ 5, Ex. E at ¶ 2.

Both the 2001 and 2003 PPC Agreements were cancelled in 2004, with the consent of all parties to those Agreements, and no longer have any force or effect. Complaint ¶ 86; RJN ¶ 6, Ex. F.  PPC itself was dissolved in 2009.  RJN ¶ 7. Toberoff continues to represent Mark Warren Peary (in his capacity as personal representative of the Shuster Estate) and Jean Peavy as their attorney.

In November, 2003, Mark Warren Peary, as personal representative of the Shuster Estate, served on DC a notice of termination under the Copyright Act (the "Shuster Termination"), terminating Joseph Shuster's copyright grants to DC relating to *Superman*.  Complaint ¶ 81.

### D.    The Siegels Contact Toberoff, Enter Into the IP Worldwide Agreement, and Thereafter File Suit

Through 2001, settlement negotiations between DC and the Siegels continued.  In May 2002, Joanne Siegel sent a letter to DC's affiliate, objecting to the long-form Agreement offered by DC.  Complaint ¶ 66.

In September 2002, the Siegels let go of their prior attorney.  Thereafter, in October 2002, the Siegels entered into a joint venture agreement with IP Worldwide, LLC, a company affiliated with Toberoff (the "IP Worldwide Agreement"), that would "furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel" to the venture.  Complaint ¶ 70; RJN ¶ 8, Ex. H at ¶ 2.

In November 2002, the Siegel heirs, represented by Toberoff, served a new notice of termination under the Copyright Act, related to the character *Superboy*. Complaint ¶ 73.  In October 2004, the Siegels filed the *Superman* and *Superboy*

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  actions in this Court, seeking declarations that their statutory terminations regarding

2  *Superman* and *Superboy*, respectively, were valid and enforceable.  *Id.* ¶ 78.

3      **E.    The *Siegel* Litigation and the So-Called "Toberoff Timeline"**

4      Litigation in both *Siegel* actions is ongoing, and, as this Court is aware, has

5  produced a voluminous record.  *See* RJN ¶ 9, Ex. I (Joint Status Report).  On March

6  26, 2008, the Hon. Stephen G. Larson issued a detailed 72 page summary judgment

7  ruling in the *Superman* action largely in favor of the Siegels, and reserved certain

8  accounting and other issues for trial.  *See Siegel v. Warner Bros. Ent. Inc.*, 542 F.

9  Supp. 2d 1098, 1117-39 (C.D. Cal. 2008).  In 2009, the Court further ordered that a

10  number of additional *Superman* works had been successfully "terminated," and

11  declined to reconsider the 2008 summary judgment ruling.  *See Siegel v. Warner*

12  *Bros. Ent. Inc.*, 658 F. Supp. 2d 1036, 1080-84 (C.D. Cal. 2009).  In the midst of the

13  *Siegel* litigation, a former attorney at Toberoff & Associates sent to John Schulman,

14  the General Counsel of DC's close affiliate Warner Bros. Entertainment, numerous

15  privileged and confidential documents concerning the case.  Complaint ¶ 89, Ex. A.

16  Included was an anonymous "cover letter" that is a defamatory hit piece against

17  Toberoff and which purports to discuss the privileged documents.  *Id.*  DC relies on

18  and attached this untrustworthy inadmissible document to its Complaint, and refers

19  to it as the "Toberoff Timeline."  *Id*.

20  **IV.    ARGUMENT**

21      **A.    Legal Standard**

22      To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint

23  must contain sufficient factual matter … to 'state a claim to relief that is plausible

24  on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

25  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]or a complaint to survive a

26  motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences

27  from that content, must be plausibly suggestive of a claim entitling the plaintiff to

28  relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Factual

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

8

1  allegations must be enough to raise a right to relief above the speculative level."
2  *Twombly*, 550 U.S. at 555.  "Where the well-pleaded facts do not permit the court to
3  infer more than the mere possibility of misconduct, the complaint has alleged – but
4  it has not 'shown' – 'that the pleader is entitled to relief.'"  *Iqbal,* 129 S.Ct. at 1950
5  (quoting  Fed. R. Civ. P. 8(a)(2)).

**B.**    **The Fourth Claim For Interference With the 1992 Shuster**
**Agreement Fails to State a Claim**

**1.**    **Elements of a Claim for Tortious Interference With Contract**

9  DC's Fourth Claim for Relief is based on an allegation that Toberoff and PPC
10  interfered with the 1992 Agreement by causing the Shuster Estate to serve the
11  Shuster Termination.  A cause of action for tortious interference with a contract
12  requires that a plaintiff allege "(1) a valid contract between plaintiff and a third
13  party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts
14  designed to induce a breach or disruption of the contractual relationship; (4) actual
15  breach or disruption of the contractual relationship; and (5) resulting damage."
16  *Pacific Gas & Electric Co. v. Bear Stearns & Co.* ("*PG&E*"), 50 Cal.3d 1118, 1126
17  (1990).  Tortious interference with contract thus requires, at a minimum, that the
18  underlying contract has been breached (or otherwise "disrupted") and that the
19  underlying contract is valid.  As a matter of law, neither element is present here.

**2.**    **There Has Been No Interference with the 1992 Agreement**

21  First, there is no cognizable allegation of an interference with the 1992
22  Agreement, because there is no allegation of a breach of any term of the Agreement,
23  or of any interference with any right held by any party to the Agreement.

24  The only parties to the 1992 Agreement are DC, Frank Shuster and Jean
25  Peavy, the brother and sister of Joseph Shuster.  Complaint ¶ 50.  The one page
26  Agreement contains three, and only three, obligations for Frank Shuster and Jean
27  Peavy.  Frank Shuster and Jean Peavy settled any claim to payment that they held
28  relating to any work by Joseph Shuster, granted to DC any rights that they held in

9

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Shuster's copyrights to DC, and covenanted not to assert any rights that <u>they</u> held

2  against DC.  RJN ¶ 1, Ex. A.  The 1992 Agreement with Frank Shuster and Jean

3  Peavy ("you") provides:

> [T]his agreement fully settles all claims to any payments or other rights
> or remedies which ***you*** may have under any other agreement or
> otherwise, whether now or hereafter existing regarding any copyrights,
> trademarks, or other property right in any and all work created in whole
> or in part by your brother, Joseph Shuster, or any works based thereon.
> In any event, ***you*** now grant to us any such rights and release us, our
> licensees and all others acting with our permission, and covenant not to
> assert any claim of right, by suit or otherwise, with respect to the
> above, now and forever . . . .

9  *Id.* (emphasis added).[5]  Frank Shuster and Jean Peavy further agreed that if "either

10  of [***them***] assert any such claim of right," they would refund the annual payments to

11  DC and DC would have no ongoing obligation to them.  *Id.*

12       These are the **<u>only</u>** relevant obligations in the 1992 Agreement.  The

13  Agreement concerns only "claims to any payments or other rights or remedies" that

14  <u>Frank Shuster or Jean Peavy</u> "have under any other agreement or otherwise."  RJN

15  ¶ 1, Ex. A.  It does not discuss any right, remedy, or claim of any party <u>other</u> than

16  Frank Shuster or Jean Peavy.  *Id.* It does not discuss termination.  It makes no

17  mention of the Estate of Joseph Shuster (which did not then exist).  *Id.*  Nor does it

18  purport to revoke, replace or supplant Joseph Shuster's prior copyright grants to DC.

19  *Id.*

20       It is also critical to understand that Jean Peavy and Frank Shuster have never

21  had any right or power to terminate their brother's copyright grants – they did not

22  have that right in 1992, and do not have that right today.  The Copyright Act of

23  1976, Pub. L. 94-553, 17 U.S.C. § 304(c)(2), provided that only an author's widow

24  or widower, children or grandchildren held termination rights.  Joseph Shuster had

---

26       [5] It is proper to take judicial notice of the 1992 Agreement, which is referenced
throughout the Complaint and thereby incorporated by reference.  *See, e.g.,* Complaint, ¶¶
161-166; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1997) (holding that such
documents may be judicially noticed by a district court on a motion to dismiss).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

1   neither a widow nor any children.  Complaint ¶ 46.  Thus, at the time of the 1992

2   Agreement, <u>no one</u> had termination rights with respect to Joseph Shuster's works.

3   *Id.* ¶ 98.  Six years later, in 1998, the Copyright Term Extension Act, Pub. L. 105-

4   298, expanded the category of potential holders of the termination right by adding

5   "the author's executor, administrator, personal representative, or trustee."  17 U.S.C.

6   § 304(c)(2)(D).  Accordingly, since 1998, the executor or personal representative of

7   an author's <u>estate</u> also holds a termination right.  However, an author's siblings have

8   <u>never</u> been granted termination rights by the Copyright Act.

9        DC alleges that the 1992 Agreement was interfered with by the Shuster

10  Estate's "'termination pursuant to [17 U.S.C. § 304] of any and all grant or transfer

11  *by Joe Shuster* of any copyright interest in his creations.'"  Complaint ¶ 164

12  (emphasis added).  However, as shown above, it is impossible as a legal and factual

13  matter for the alleged interference to have occurred, because the 1992 Agreement

14  was irrelevant to the termination pursuant to § 304 of any grants or transfers of

15  copyright by Joseph Shuster.

16       In its Complaint, DC obscures the critical distinction between Mark Warren

17  Peary, the personal representative of the Shuster Estate (the "Shuster Executor"), the

18  party with the power to exercise the termination right, and Jean Peavy, the surviving

19  party to the 1992 Agreement.  DC defines the term "Shuster Heirs" to include Mark

20  Warren Peary (the Shuster Executor), Frank Shuster and Jean Peavy (Complaint

21  ¶ 46), and then, throughout its Complaint, misleadingly refers to the 1992

22  Agreement as a contract with the "Shuster Heirs."  *See id.* ¶¶ 50-51, 82, 162-165.

23  However, DC's misleading definition cannot obscure the core fact that the parties to

24  the 1992 Agreement – Jean Peavy and Frank Shuster – never had any termination

25  rights under the Copyright Act, and that the 1992 Agreement could therefore not

26  have granted, resolved, or affected the Shuster Executor's right to terminate Joseph

27  Shuster's operative copyright grants.  17 U.S.C. §§ 304(c)(2)(D) & (d)(1).

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

1    There is thus no cognizable allegation in the Complaint of a breach or

2    disruption of the 1992 Agreement.  Frank Shuster died well before the Shuster

3    Executor exercised his termination right.  Jean Peavy's obligations under the 1992

4    Agreement were to release DC from claims by her and to quitclaim to DC rights that

5    she may have had.  Jean Peavy has met those obligations.  She did not have, and has

6    never had any termination right regarding Joseph Shuster's *Superman* copyright

7    interests.  Jean Peavy did not file (and could not have filed) the Shuster Termination

8    underlying DC's Fourth Claim.  The sole party with the power to exercise the

9    termination right – and the sole party that *has* exercised a termination right – is the

10   Shuster Executor.  But the Shuster Executor and the Shuster Estate were not parties

11   to the 1992 Agreement, and cannot conceivably be bound by its language.  *See*

12   *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("[A] contract cannot bind

13   a nonparty.").  The 1992 Agreement remains undisturbed, and DC's Fourth Claim

14   fails as a matter of law.

15   Faced with this decisive bar to its tortious interference claim, DC may try to

16   argue, although it does not allege in its Complaint, that there was a disruption of the

17   1992 Agreement if Jean Peavy encouraged or will participate in any benefits from

18   the Shuster Executor's termination of Joseph Shuster's copyright grants.  However,

19   there is nothing in the 1992 Agreement that would bar Jean Peavy from doing so,

20   because the 1992 Agreement simply settles and release rights held by Peavy and

21   Frank Shuster – not rights held by other parties.

22   The 1992 Agreement does not mention termination rights, nor does it even

23   arguably address any other party's right to terminate Joseph Shuster's original

24   grants of copyright (a right which only came into existence by an act of Congress

25   six years after execution of the 1992 Agreement).  There is simply no basis in the

26   language of the 1992 Agreement for any suggestion that subsequent knowledge or

27   actions, if any, by Peavy regarding the service of the Shuster Termination by the

28   Shuster Executor constitute a "claim[] to any payments or other rights or remedies

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1    which *you* [i.e., Jean Peavy] may have under any other agreement" or an "assert[ion

2    of] any claim of right" by "*you*" [i.e., Jean Peavy].  RJN at ¶ 1, Ex. A.  Thus, there

3    is no basis at all for DC's allegation that the 1992 Agreement has been interfered

4    with.[6]

5    ### 3.    If the 1992 Agreement *Did* Somehow Affect the Termination

6    ### Interest of the Shuster Executor, It Would Be Void

7         DC's Fourth Claim for Relief also fails because, even if the 1992 Agreement

8    *did* prohibit or encumber the Shuster Termination in any way – and it did not – it

9    would be void under the Copyright Act as a matter of law.

10        In order for a claim for intentional interference with a contract to stand, the

11   underlying contract must be enforceable.  *See Bed, Bath & Beyond of La Jolla, Inc.*

12   *v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 877-80 (1997) (a

13   plaintiff could not maintain a claim against a third party for intentional interference

14   with a contractual relationship when the underlying contract was unenforceable).

15   DC fails to establish this element of its tortious interference claim.

16        The 1976 Copyright Act established as a matter of law that an author or his or

17   her specified heirs may terminate a copyright grant "notwithstanding any agreement

18   to the contrary, including an agreement to make a will or to make any future grant."

19   *See* 17 U.S.C. §§ 304(c)(5), 203(a)(5).  Under 17 U.S.C. § 101, the term "including"

20   is "illustrative" not "limitative" and thus [a Court] must interpret the term

21   "agreement[s] to the contrary" under § 304(c)(5) as inclusive of agreements "other

22   than the two examples Congress explicitly mentioned."  *Mewborn*, 532 F.3d at 983

23   (9th Cir. 2008).  To further protect authors and their statutory heirs, Congress

24   specified that the termination right or interest is inalienable and may not be assigned

25

26         [6] Nor is there any allegation that an interference with the 1992 Agreement was the proximate cause of any damage to DC. The sole possible damage to DC alleged in the

27   Complaint is the exercise of the Shuster Executor's termination rights, which, as explained above, has no connection with the 1992 Agreement.

28

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

1    before it is exercised by the service of a notice of termination.  *See* 17 U.S.C.

2    § 304(c)(6)(D).  Thus, any agreement that purports to bar the statutory termination

3    right or to transfer the termination interest prior to proper service of a termination

4    notice is unenforceable.

5         The Copyright Act's deviation from the ordinary rule of freedom of contract,

6    and Congress' mandate that the termination right is inalienable, was recently

7    explained in detail by the Ninth Circuit in *Mewborn*:

8        Congress enacted the inalienability of termination rights provision in §
         304(c)(5) to resurrect the fundamental purpose underlying the two-

9        tiered structure of the duration of copyrights it originally adopted: to
         award to the author, and not to the assignee of the right to exploit the

10       copyright during its initial term, the monetary rewards of a work that
         may have been initially undervalued, but which later becomes a

11       commercial success.  As reported in the House Report for the 1909 Act:

12           It not infrequently happens that the author sells his
             copyright outright to a publisher for a comparatively small

13           sum. If the work proves to be a great success and lives
             beyond the term of twenty-eight years, your committee felt

14           that it should be the exclusive right of the author to take
             the renewal term, and the law should be framed as is the

15           existing law, so that he could not be deprived of that right.

16       H.R. Rep. No. 2222, 60th Cong., 2d Sess., at 14 (1909).  It is plain that
         the renewal process was intended to give an author and his heirs a

17       second chance to benefit from the fruits of his labors.

18   *Mewborn*, 532 F.3d at 983.  *See also Stewart v. Abend*, 495 U.S. 207, 230 (1990)

19   (the 1976 Act "provides an inalienable termination right"); 3 M. Nimmer & D.

20   Nimmer, *Nimmer on Copyright* § 11.01 (congressional intent of termination is to

21   provide authors and their families with relief from one-sided, unremunerative

22   copyright grants).  The Second Circuit has likewise consistently recognized the

23   inalienability of the Copyright Act's termination right.  *See Marvel Characters, Inc.

24   v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) ("the clear Congressional purpose

25   behind § 304(c) was to prevent authors from waiving their termination right by

26   contract.").[7]  Thus, even if the 1992 Agreement could somehow be construed as

27    

28          [7] *See also Larry Spier, Inc. v. Bourne Co.*, 953 F.2d 774, 779-80 (2d Cir. 1992)

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

14
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  transferring, granting, alienating or encumbering the Shuster Executor's right of

2  termination, it would plainly be an unenforceable under the plain language of 17

3  U.S.C. § 304(c) as an "agreement to the contrary."

4        Faced with this fatal flaw in its tortious interference with contract claim, DC

5  will likely argue that it can avoid the clear rule of inalienability under a very narrow

6  exception established in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir.

7  2005).  But the *Milne* case offers DC no support.

8        In *Milne*, Christopher Milne, the son of A.A. Milne, the author of the *Winnie*

9  *the Pooh* books, negotiated a new agreement with the Walt Disney Corporation

10  ("Disney"), a prior grantee of *Pooh* rights.  430 F.3d at 1040-41.  Therein,

11  Christopher Milne *expressly revoked* a pre-1978 copyright assignment and expressly

12  *re-granted* all of the Milne rights that had been previously assigned, and further

13  *expressly agreed not to exercise his termination rights*.  *Id.* at 1040-41.

14        Furthermore, when the Milne/Disney negotiations began, Milne's statutory

15  termination "window" had already opened, meaning that he then possessed a *present*

16  right of termination,[8] but had not yet served a formal notice of termination.  *Id.* at

---

18  (footnote continued)
("Section 304(c) was drafted so as to leave no doubt about the family's power to recapture
19  the copyright.  Indeed, Section 304(c)(5) expressly provides that the termination 'may be
affected notwithstanding any agreement to the contrary.'"); *Music Sales Corp. v. Morris,*
20  73 F. Supp. 2d 364, 372 (S.D.N.Y. 1999) ("[U]nlike the renewal rights, the termination
right is inalienable.  Neither the author nor the statutory heirs may contract away their
21  termination right, and any contract provision that purports to assign that right is void.").

22        [8] Pursuant to 17 U.S.C. §§ 304(c)(1)-(2), any grant of copyright by an author
"executed before January 1, 1978" is subject to termination by authors or their statutorily-
23  designated heirs.  Under 17 U.S.C. § 304(c)(3), the provision invoked in the *Milne* case,
the termination of the grant may be effected in a five-year window beginning at the end of
24  56 years from the date copyright was originally secured, with notice of termination to be
sent between two and ten years prior to that effective date.  *See* 17 U.S.C. §§ 304(c)(3)-(4).
25  That statutory window had opened at the time of the Milne/Disney negotiations.  However,
the Shuster Executor terminated Shuster's copyright grants under 17 U.S.C. § 304(d),
26  which permits a termination to be exercised within a five-year period beginning 75 years
from the original grant of copyright, with notice of termination to be sent between two and
27  ten years prior to that effective date. 17 U.S.C. § 304(d)(2).  Thus, here, unlike in *Milne,*
the Shuster Termination could not even have been served by the Shuster Executor until
28  2003 (1938 plus 75 years) at the earliest – eleven years after the negotiation of the 1992

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  1039-40.  Milne expressly used the leverage of the pending termination window to

2  negotiate a new agreement, in which he received compensation resulting in a net

3  gain of hundreds of millions of dollars.  *Id.* at 1040-41.  Despite Christopher Milne

4  having achieved the Congressional purpose in enacting section 304, Milne's heir

5  argued that she should be able to terminate the ***revoked*** pre-1978 agreement with

6  Disney.  *Id.*

7          Given these unique facts, the Ninth Circuit found that "there was no pre-1978

8  grant of rights . . . in existence" to terminate as the prior grant had already been

9  expressly revoked by Milne in 1983, and that his operative 1983 grant was not

10 subject to termination under the Copyright Act.  *Id.* at 1042-43.[9]  The *Milne* Court

11 further reasoned that Milne's 1983 grant was not an "agreement to the contrary"

12 under the Act because Milne had a present right of termination, and thus it was an

13 agreement consistent with, and that fully honored, Milne's right of termination,

14 which could vest immediately if he served notice.  *Id.* at 1045; *see Mewborn*, 532

15 F.3d at 988.  In *Mewborn*, the Ninth Circuit distinguished and limited *Milne* in ways

16 that leave no doubt that *Milne* has no relevance here.  In that case, a publisher

17 claimed that Winifred Mewborn, the daughter of Eric Knight, the author of the

18 beloved children's novel *Lassie Come Home*, had transferred or released her

19 termination rights to it.  532 F.3d at 986.  Mewborn had made two duplicative

20 assignments of the *Lassie* copyright, one in 1976 and the other in 1978.  *Id.* at 980.

21         The Ninth Circuit explained why the language of the agreements in *Mewborn*

22 radically distinguished it from *Milne*.  First, the agreement in *Milne* specifically and

23 explicitly revoked the author's pre-1978 grant of rights, and re-granted the same

24 _____

25 (footnote continued)
   Agreement, to which he was not even a party.

26         [9] Under the Copyright Act, 17 U.S.C. §§ 304(c)-(d), a pre-1978 copyright grant may

27 be terminated by an author's statutory heir , but there is no provision to terminate a post-
   January 1, 1978 grant by anyone other than the author.  *See Milne*, 430 F.3d at 1042-43.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

1  rights, meaning that as of the date of that agreement there was no longer a pre-1978

2  grant left to be terminated under the Copyright Act.  In *Mewborn*, by contrast, there

3  was no revocation of the original 1976 grant, and thus the plaintiff *still possessed* a

4  valid termination right that she could enforce.  Unlike in *Milne*, "[t]he 1976

5  Assignment . . . was not substituted or revoked by the 1978 Assignment but

6  remained intact," and was subject to statutory termination.  *Id.* at 986.  Second, the

7  agreement in *Milne* expressly dealt with termination rights.  *Id.* at 989.  The

8  agreement in *Mewborn*, by contrast, did not discuss termination rights.  *Id.*

9     The *Mewborn* Court further emphasized that at the time the author's daughter

10  executed the purported 1978 assignment, she did not yet have an existing right to

11  serve a notice of termination under the Copyright Act, whereas in *Milne*, the

12  author's son "had – and knew that he had – the right to vest copyright in himself at

13  the very time he revoked the prior grants and leveraged his termination rights to

14  secure the benefits of the copyrighted works."  *Id.* at 989.

15     This case is not merely similar to *Mewborn*, which is controlling Ninth

16  Circuit precedent.  It presents an even clearer instance for squarely applying the

17  non-alienability provisions of Section 304(c).  First, the 1992 Agreement, by its

18  plain language, does not reflect *any* intention – let alone a clear intention – of the

19  parties to revoke and re-grant any copyright interest.  The 1992 Agreement nowhere

20  even purports to "revoke" Joseph Shuster's prior copyright grants to DC.  The words

21  "termination" or "termination right" are also nowhere to be found in the 1992

22  Agreement.  Thus, the language in the Milne agreement that the Ninth Circuit in

23  both *Mewborn* and *Milne* found essential to the outcome in *Milne* is wholly absent

24  here.[10]  Moreover,  as in *Mewborn*, but unlike in *Milne*, no party to the 1992

25

26     [10] Although DC baldly asserts that the 1992 Agreement "revoked and regranted" the

27  Shuster copyright interests, the Court should not accept as true DC's mere conclusory allegations that contradict the 1992 Agreement, itself, and DC's repeated assertions in this

28  and the related *Siegel* action that it owns all rights in *Superman* pursuant to the operative pre-1978 grants from Siegel and Shuster.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT**

1  Agreement – and no one else, for that matter – had *any* termination right concerning

2  Shuster's copyright interests at the time the 1992 Agreement was signed. *See*

3  *Mewborn*, 532 F.3d at 989; *Milne*, 430 F.3d at 1040-41. As explained above, in

4  1992, only an author's widow or widower, children or grandchildren held

5  termination rights, and Shuster had left no widow, children or grandchildren. *See*

6  Pub. L. 94-553, 17 U.S.C. § 304(c)(2). The Shuster Executor, who was not a party

7  to the 1992 Agreement, was not able to assert any termination right until after the

8  law was changed in 1998. *See* Pub. L. No. 105-298.[11] *See Simon*, 310 F.3d at 287

9  (holding that a 1969 settlement agreement did not bar defendant's termination right

10  as "neither the extended copyright term nor the termination right existed at the

11  time").

12      In short, therefore, to the extent DC alleges that the 1992 Agreement bars the

13  exercise of the Shuster termination right, it would be an unenforceable "agreement

14  to the contrary" under 17 U.S.C. § 304(c)(5), rendering DC's claim for interference

15  with contract baseless as a matter of law. *See Bed Bath & Beyond,* 52 Cal. App. 4th

16  at 877-80 (affirming that a claim for interference with contract cannot lie where

17  predicated on an unenforceable contract provision).

18              **4.    A Claim of Interference with the 1992 Agreement Is Barred**

19                  **by the Statute Of Limitations, Which Began to Run No Later**

20                  **Than 2006**

21      DC's Fourth Claim for Relief also fails because it is barred by the two-year

22  statute of limitations for tortious interference with contract. *See* Cal. Code Civ.

23  _____

24  (footnote continued)
   1293, 1295-96 (9th Cir. 1998) ("A court . . . is not required to accept as true conclusory

25  allegations which are contradicted by documents referred to in the complaint.");
   Complaint, ¶¶ 29-31, 39-40, 42-44, 140-41, 145-46 (asserting pre-1978 grants).

26      [11] Moreover, until 2003, the Shuster Estate had not even been probated yet, and an

27  executor or personal representative had not been appointed. Thus, until 2003, no one was
   statutorily empowered to issue a notice of termination.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

18

1  Proc. § 339(1); *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974).  DC alleges

2  that the purported interference took place, at the latest, in November, 2003 when the

3  Shuster Termination was served.[12]  The Complaint was filed over six years later, in

4  May 2010.  On its face, DC's claim for tortious interference with contract is plainly

5  time-barred.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)

6  ("Generally speaking, a cause of action accrues at "the time when the cause of

7  action is complete with all of its elements.").  *See, e.g.*, *Streamcast Networks, Inc. v.*

8  *Skype Techs., S.A.*, 2006 WL 5441237, at *10 (C.D. Cal. Sept. 14, 2006)

9  (interference claim accrued once plaintiff was aware that their counterparty sought

10  to "terminate the [agreement]").

11      DC may argue that California's "discovery rule" delayed the accrual of the

12  cause of action.  In order to take advantage of the discovery rule, however, DC must

13  plead facts entitling it to invoke the rule.  *Ethicon*, 35 Cal. 4th at 808 (placing

14  burden on plaintiff to "specifically plead facts to show (1) the time and manner of

15  discovery and (2) the inability to have made earlier discovery despite reasonable

16  diligence.").  The California Supreme Court has held that the "discovery rule"

17  means that a limitations period will begin once a reasonable person has been put on

18  inquiry notice of the basic nature of the alleged wrongdoing:

19      [T]he limitations period begins once the plaintiff has notice or
        information of circumstances to put a reasonable person on inquiry . . . .
20      A plaintiff need not be aware of the specific 'facts' necessary to
        establish the claim . . . .  Once the plaintiff has a suspicion of
21      wrongdoing . . . she must decide whether to file suit or sit on her rights.

22  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).

23      Here, DC's claim for tortious interference is based upon an allegation that

24  Toberoff, Pacific Pictures, and the Shuster family formed a joint venture in the 2001

25  _____

26  [12] DC expressly alleges that "terminating DC Comics rights w[as] substantially
    certain to interfere with DC Comics' 1992 Agreement" and "DC Comics' ongoing
    business relationship with the Shusters" – that is, that the termination itself constituted
27  interference.  Complaint ¶ 164.  DC admits that it was served with the Shuster Termination
    on November 10, 2003, well over six years ago.  *Id*. ¶ 79.  DC further asserts that Toberoff
28  signed the Shuster Termination and the forms filed with the Copyright Office.  *Id*. ¶ 80.

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  and 2003 Pacific Pictures Agreements for the purpose of serving the Shuster

2  Termination, thus purportedly interfering with the 1992 Agreement.  *See, e.g.*,

3  Complaint ¶¶ 54-58, 77, 86, 164-65.  DC's core allegation is that "Toberoff's

4  ultimate purpose in approaching the Shuster Heirs was to induce them to . . . attempt

5  to terminate prior grants of Shuster's rights" under 17 U.S.C. § 304 and "Toberoff

6  and the Shusters formed a joint venture with Pacific Pictures for [that] express

7  purpose."  *Id.* ¶ 164.

8       It is, however, a matter of public record that DC knew about the joint venture

9  between Toberoff, the Shusters, and Pacific Pictures by no later than November 15,

10  2006.  *See, e.g.*, *Samuels v. Forest*, 2007 WL 3149285, at *8 (Cal. App. Oct. 30,

11  2007) (plaintiff was on notice of interference claim once he saw the agreement that

12  allegedly interfered with his contract).  Unredacted versions of both the 2001 and

13  2003 Pacific Pictures Agreements were produced to DC in the *Siegel* action on that

14  date, and DC introduced the agreements as exhibits in its deposition of Mr. Toberoff

15  two days later.  RJN ¶ 4-5, 10, Exs. D-E, J.  Therefore,  DC was on "notice" of the

16  entirety of the purported "interference" – the Shuster Termination and the related

17  agreements showing Pacific Pictures and Toberoff's involvement – by, at the very

18  latest, November 2006, over three years before it filed its Complaint.  Such was

19  more than sufficient to have put DC "on inquiry" notice.  *Jolly*, 44 Cal. 3d at 111-

20  11.

21       From every perspective, DC's Fourth Claim is clearly time-barred.

22            **5.    The Litigation Privilege Bars DC's Interference Claim**

23       DC's Fourth Claim also fails because it deals entirely with activities protected

24  by California's litigation privilege, for reasons discussed in more detail in Section C.

25  1 below.  The cause of action is entirely based upon Toberoff's solicitation of his

26  clients (*see Rubin v. Green*, 4 Cal. 4th 1187 (1993)), and communications given in a

27  context in which there was reasonably anticipated litigation (*see Rosenthal v. Irell &

28  Manella*, 135 Cal. App. 3d 121, 126 (1982)), and are thus completely protected by

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1   the privilege.  Moreover, California imposes an absolute bar on tortious interference

2   claims premised upon inducements to litigation, which bars the Fourth Claim in its

3   entirety.  *PG&E*, 50 Cal. 3d at 1126.

4       **C.**    **The Fifth Claim For Interference With Prospective Economic**

5               **Advantage Fails to State a Claim**

6           **1.**    **The Litigation Privilege Bars DC's Interference Claim**

7           DC's Fifth Claim for Relief fails to state a claim because, on its face, it is

8   barred by California's litigation privilege, codified in California Civil Code § 47(b).

9   The Fifth Claim alleges that Toberoff, by communicating with the Siegels.

10  "interfered" with DC's purported "prospective economic advantage," consisting of a

11  settlement "offer" and negotiations with the Siegels regarding the Siegel

12  Termination.  Complaint ¶¶ 168-72.

13          The litigation privilege bars this claim for at least three separate and

14  independent reasons.[13]  First, the communications that form the basis of this claim

15  all stem from alleged actions by Toberoff to induce the Siegels to become his

16  clients.  *Id*. ¶¶ 63-72, 78.  In *Rubin v. Green*, 4 Cal. 4th 1187 (1993), the California

17  Supreme Court ruled that a third party action against an attorney, on the grounds of

18  wrongful solicitation of a client was squarely barred by § 47(b):

19          ***Plaintiff's claims, however styled, are founded essentially upon alleged***
            ***misrepresentations*** made by the law firm . . . in the course of discussions
20          over park conditions and the possibility of being retained to prosecute the
            failure-to-maintain action, and the subsequent filing of pleadings in the
21          lawsuit itself.  ***Whether these acts amounted to wrongful attorney***
            ***solicitation or not, they were communicative in their essential nature***
22          ***and therefore within the privilege of section 47(b)***. . . .

23  *Id.* at 1196 (emphasis added).  The *Rubin* Court reasoned that "a rule permitting the

24  defendant in a civil action to institute parallel litigation seeking to impose liability

25          [13] California Civil Code § 47(b) provides immunity from suit for "any
26  communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other
    participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have
27  some connection or logical relation to the action."  *Silberg v. Anderson,* 50 Cal. 3d 205,
    211-12 (1990).

28

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

on the attorney for the adverse party based on the circumstances surrounding the formation of the attorney-client relationship" would result in dire consequences:

> The impairment of colorable claims by disrupting access to counsel, ***the intimidating effect on attorneys of facing an almost certain retaliatory proceeding,*** **the** ***distractions inherent in requiring counsel to deal with defending a personal countersuit as well as the predicate action*** and, in general, the dampening effect on the unobstructed presentation of claims which we have identified as the central value supporting limitations on other derivative tort actions, apply [to parallel suits against opposing counsel].

*Id.* at 1198 (emphasis added).  Here, DC's "retaliatory" lawsuit, as alleged, is unquestionably a "personal countersuit," filed during ongoing litigation, based upon Toberoff's alleged solicitation of his current clients.[14]  The gravamen of DC's claim is that Toberoff purportedly took inappropriate steps to gain the Siegels as clients, causing them to reject a purported settlement offer or agreement.  Complaint ¶ 172.

Second, the Fifth Claim rests entirely upon DC's allegations that Toberoff interfered with ongoing settlement negotiations designed to resolve anticipated litigation.  DC's core allegation is that Toberoff caused the Siegels to reject a "settlement offer."  Complaint ¶ 168.  Communications related to the rejection of a settlement offer are clearly contained within the litigation privilege.  The litigation privilege bars any action based on communications made to achieve the objects of any "reasonably anticipated" litigation, including communications made in the context of settlement negotiations, even if such preliminary communications allegedly constitute tortious interference.  *See Rosenthal*, 135 Cal. App. 3d at 126 (applying privilege to bar alleged tortious interference with settlement negotiations

---

[14] The litigation privilege is particularly forceful in barring such secondary attacks on attorneys in ongoing litigation. *See Crowley v. Katleman*, 8 Cal. 4th 666, 681 n.9 (1994) (applying *Rubin's* holding "that one who is the target of a threatened lawsuit cannot maintain a retaliatory action charging the attorneys for the opposing party with 'soliciting' the suit"); *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 490 (2008) (barring claim for intentional interference where the "causes of action arise directly from communications between [the client] and [defendant attorney] about the pending lawsuits against [the client]"); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 781-82 (2008) (suits based on communications "between a law firm and persons with potential claims" are barred by litigation privilege).

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1   by an attorney); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002) (holding

2   that communications before a lawsuit are privileged, even if "they are, or are alleged

3   to be, fraudulent, perjurious, unethical, or even illegal," so long as they are

4   "'logically related'" to the action); *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 972

5   (2010) (where "[interference] was the negotiation of the settlement . . . [the]

6   litigation privilege applies as a matter of law"). If the statement is made "in serious

7   contemplation of litigation, then the statement is sufficiently connected to litigation

8   and will be protected by the litigation privilege. The privilege then applied is

9   absolute."); *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 266 (1997).

10        Third, the California Supreme Court has clearly held that there can be <u>no</u>

11   liability <u>whatsoever</u> for tortious interference with contract based on a third-party's

12   inducement of any party to file suit:

13        This conclusion will bring us face to face with the question, not squarely
          framed by the parties, whether it is proper to impose liability for inducing

14        a potentially meritorious lawsuit. We will conclude that it is not.

15   *PG&E*, 50 Cal. 3d at 1127. In *PG&E*, the alleged contract was with a municipal

16   agency. The defendant contacted the agency, convinced them to seek declaratory

17   relief in order to terminate the contract, paid "for legal, engineering and marketing

18   studies," and retained and paid for outside counsel, in exchange for a percentage of

19   any increased revenues. *Id.* at 1123-24. *PG&E* held that such actions could not, as

20   a matter of law, give rise to a claim for tortious interference. *Id.* at 1136. Here, the

21   Fifth Claim is based upon an alleged inducement of the Siegels to reject a settlement

22   offer, and to thereafter file a declaratory judgment action concerning their

23   termination rights. As such, it is plainly barred as a matter of law.

### 2.   DC's Fifth Claim is Barred by the Two-Year Statute Of Limitations That Accrued No Later Than 2006

26        DC's Fifth Claim for Relief is also time-barred. As with tortious interference

27   with contract, the statute of limitations for interference with prospective economic

28   advantage is two years. *See* Cal. Code Civ. Proc. § 339(1). Here, the alleged

23

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1 interference by Toberoff occurred in 2002, when the Siegels renounced any

2 purported settlement agreement with DC.  Complaint, ¶¶ 66, 168-72.  The claim is

3 thus time-barred, unless DC can meet its burden of showing facts sufficient to

4 invoke the delayed discovery rule.  *Ethicon*, 35 Cal. 4th at 808.

5      DC has not and cannot possibly allege facts to support such delayed

6 discovery, as the Complaint and the judicially-noticeable record make clear that DC

7 had more than enough facts to have put it on inquiry notice by, at the latest, 2006.

8 The statute of limitations begins to run "once the plaintiff has notice or information

9 of circumstances to put a reasonable person on inquiry."  *Jolly*, 44 Cal. 3d at 1110-

10 11. "So long as a suspicion exists, it is clear that the plaintiff must go find the facts;

11 she cannot wait for the facts to find her." *Id.*  "Suspicion of one or more of the

12 elements of a cause of action, coupled with knowledge of any remaining elements,

13 will generally trigger the statute of limitations period."  *Ethicon*, 35 Cal. 4th at 807.

14      DC has pleaded that it received a letter on September 21, 2002, stating that

15 the Siegels had repudiated the settlement agreement with DC, which alerted it to the

16 disruption of its prospective economic relationship with the Siegels.  Complaint ¶

17 70.  By November 2006, DC received in discovery a copy of the IP Worldwide

18 Agreement, documenting as of October 3, 2002 a joint venture between Toberoff,

19 the Siegels, and the talent agent Ari Emanuel to "arrange and negotiate the sale,

20 lease, license, and all other dispositions or exploitations" of the Siegels' *Superman*

21 rights.  *See id.*; RJN ¶ 10.  Thus, by 2006, DC indisputably knew:  (a) that their

22 alleged economic relationship had been disrupted, (b) that Toberoff had represented

23 the Siegels close in time to such alleged disruption, and (c) that Toberoff and a well-

24 known agent had, during this period, contracted with the Siegels for the purpose of

25 the marketing and exploitation of their *Superman* rights.  That information was

26 clearly more than sufficient, as a matter of law, to have raised a reasonable suspicion

27 as to DC's allegation that Toberoff had induced the Siegels through a promised

28 business relationship to terminate the proposed settlement agreement – the entire

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

24

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT

1  basis for DC's Fifth Claim.[15]  Thus, the two-year limitations period for the Fifth

2  Claim was indisputably triggered almost four years before DC filed its Complaint.

3  **V.**    **CONCLUSION**

4       For the foregoing reasons, Plaintiff's Fourth and Fifth Claims for Relief

5  should be dismissed with prejudice.

6  Dated:  August 13, 2010              KENDALL BRILL & KLIEGER LLP

7

8

9                              By:  /s/ Richard B. Kendall

10                                   Richard B. Kendall
                                     Attorneys for Defendants Marc Toberoff,
11                                   Pacific Pictures Corporation, IP
                                     Worldwide, LLC, and IPW, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25       [15] *See* Complaint ¶¶ 171-72 (describing the alleged interference by Toberoff as:
     "approach[ing]the Siegel Heirs and their representatives in late 2001 and 2002 to express
26   interest in purchasing their Superman rights"; "misrepresenting . . . that he had a billionaire
     investor ready to purchase their Superman rights"; "representing . . . that he would help
27   them produce a competing Superman motion picture" and "inducing the Siegels to
     repudiate their agreement and business relationship with DC Comics.").

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
MARC TOBEROFF, ET AL. TO DISMISS PLAINTIFF'S COMPLAINT