EXHIBIT A

DC COMICS INC.
1325 Avenue of the Americas
New York, New York 10019
(212) 636-5555
FAX (212) 636-5401



Paul Levitz/Executive Vice President & Publisher

Dated as of August 1, 1992

Mr. Frank Shuster                Ms. Jean Shuster Peavy
98-120 Queens Blvd., Apt. 4K     316 Horton Lane, NW
Rego Park, NY  11374             Albuquerque, NM  87114

Dear Mr. Shuster and Ms. Peavy:

    This is to confirm our agreement to pay you, collectively, a total of $25,000 a year, payable to Jean Shuster Peavy, commencing as of August 1, 1992, for as long as either one of you is alive.  Such amounts shall be payable in accordance with Warner Communication Inc.'s customary payroll practices and shall be subject to all applicable withholding taxes.  If Jean Shuster Peavy shall predecease Frank Shuster, then the foregoing payments shall be made to Frank Shuster for as long as he shall live.

    We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon.  In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.

    If, despite the terms of this agreement, either of you assert any such claim of right, for any reason, you agree to refund to us, upon the making of any such assertion, all amounts previously paid to you hereunder, and we will have no obligation to make any further payments under this agreement.  We also reserve all of our other rights, remedies and defenses in such an event.

    If after full consideration of the foregoing, you accept and agree to all of the above, please so indicate by signing below where indicated.

                              Very truly yours,

                              DC Comics

                              By: _____
                                    Paul Levitz

ACCEPTED AND AGREED TO:

_____
Frank Shuster                      Dated: _10/2/92_____

_____
Jean Shuster Peavy                 Dated: _10/2/92_____

8

009

# EXHIBIT B

1 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
2 | James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
3 | New York, New York 10017
Telephone: 212-813-5900
4 | Fax:          212-813-5901

5 | WEISSMANN WOLFF BERGMAN
    COLEMAN GRODIN & EVALL LLP
6 | Michael Bergman (SBN 37797)
David L. Burg (SBN 130403)
7 | Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
8 | Beverly Hills, California 90212
Telephone: 310-858-7888
9 | Fax:          310-550-7191

10 | PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
11 | 1711 Route 9D
Cold Spring, New York 10516
12 | Telephone: 845-265-2820
Fax:          845-265-2819

13 |

14 | Attorneys for Defendants and Counterclaimants

15 | UNITED STATES DISTRICT COURT

16 | CENTRAL DISTRICT OF CALIFORNIA

17 |

18 | JOANNE SIEGEL, an individual; and   )   Case No. 04-8400 RSWL (RZx)
LAURA SIEGEL LARSON, an              )   Honorable Ronald S.W. Lew
19 | individual,                          )
                                      )   Related To 04-08776 RSWL (RZx)
20 |           Plaintiffs,              )
                                      )   **FIRST AMENDED**
21 |      vs.                          )   **COUNTERCLAIMS**
                                      )
22 | WARNER BROS. ENTERTAINMENT         )
INC., a corporation; TIME WARNER     )
23 | INC., a corporation; DC COMICS, a   )
general partnership; and DOES 1-10,  )
24 |                                      )
           Defendants.                )
25 | _____ )
                                      )
26 | AND RELATED COUNTERCLAIMS.         )
                                      )
27 |

28 |

---

1

1      Defendant/Counterclaimant DC Comics, for its First Amended

2 Counterclaims against Plaintiff/Counterclaim Defendants Joanne Siegel and Laura

3 Siegel Larson, alleges:

4

5                            **PARTIES**

6      1.      Defendant/Counterclaimant DC Comics ("DC" or "DC Comics") is a

7 New York General Partnership engaged in the business of, *inter alia*, creating,

8 exploiting, and licensing comic book stories and characters. DC is the successor in

9 interest to all rights under copyright and other rights, including trademark rights

10 and the good will in and to the first Superman story and all other works and

11 products relating to the Superman character.

12      2.      Upon information and belief, Plaintiff/Counterclaim Defendant

13 Joanne Siegel is an individual and citizen of the State of California, in the County

14 of Los Angeles. Upon further information and belief, Joanne Siegel is the widow

15 of Jerome Siegel, the individual credited as a co-creator of the first Superman

16 stories.

17      3.      Upon information and belief, Plaintiff/Counterclaim Defendant Laura

18 Siegel Larson is an individual and citizen of the State of California, in the County

19 of Los Angeles. Upon further information and belief, Laura Siegel Larson is a

20 daughter of Jerome Siegel. Plaintiff/Counterclaim Defendants Joanne Siegel and

21 Laura Siegel Larson are referred to herein as "the Siegels."

22                 **JURISDICTION AND VENUE**

23      4.      This Court has jurisdiction of the subject matter hereof under the

24 provisions of the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, relating to copyright

25 ownership, under sections 39 and 43 (a) and (c) of the U.S. Trademark Act, also

26 known as the Lanham Act, 15 U.S.C. §§ 1121 and 1125 (a) and (c), and sections

27 1331, 1332, 1338 (a) and 1338 (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1332,

28

**012**

314270v1 02231.0811       FIRST AMENDED COUNTERCLAIMS

1 | 1338 (a) and 1338 (b), as well as under principles of supplemental jurisdiction, 18

2 | U.S.C. § 1367.

3 |      5.      Venue is proper under 28 U.S.C. § 1391 (b) in that, upon information

4 | and belief, a substantial part of the events giving rise to DC's claims occurred or a

5 | substantial part of the properties that are the subject of these counterclaims are

6 | situated in this District and/or the Plaintiffs/Counterclaim Defendants may be

7 | found in this District.

8 | **FACTS COMMON TO ALL COUNTERCLAIMS**

9 | **Background And History**

10 |      6.      Upon information and belief, in or about 1933, Jerome Siegel

11 | ("Siegel") and his friend and co-creator, Joseph Shuster ("Shuster") collaborated

12 | on creating a number of stories, including a story entitled "The Reign of the

13 | Superman," which was published in a magazine put out by Siegel and Shuster

14 | themselves entitled "Science Fiction." Upon further information and belief, other

15 | than the same name, the "Superman" character in this story shared very little, if

16 | any, similarity with the character that would later become known as Superman.

17 |      7.      Upon information and belief, in early 1933, Siegel and Shuster began

18 | collaborating on "comic strips," initially for syndication and eventually for

19 | publication in "comic books," a new and growing medium. Among their work

20 | together were a number of comic strips featuring a character they named

21 | Superman. This Superman character bore virtually no resemblance to the character

22 | of the same name that had previously appeared in the "Science Fiction" magazine.

23 | Upon further information and belief, those works, which were never published,

24 | included: (a) twenty four (24) days of Superman comic strips intended for

25 | newspapers; (b) a seven page synopsis of the last eighteen days (weeks 2-4) of

26 | such strips; (c) a paragraph previewing Superman exploits; (d) a nine-page

27 | synopsis covering an additional two months of daily comic strips; and (e) fifteen

28 | daily comic strips (collectively the "Unpublished Superman Works").

FIRST AMENDED COUNTERCLAIMS

1    8.    Upon information and belief, between 1933 and 1937 Siegel and

2    Shuster submitted the Unpublished Superman Works to a number of prospective

3    publishers and newspaper syndicates, but the work was rejected by them all.

4    9.    Meanwhile, between 1935 and 1937, Siegel and Shuster created a

5    number of comics strips that were published, including such titles as "Dr. Occult,"

6    "Henri Duval," and "Spy."

7    10.    On December 4, 1937, Siegel and Shuster entered into an

8    "Agreement of Employment" (the "December 4, 1937 Agreement") with Detective

9    Comics, Inc. ("DCI"), a predecessor in interest to DC.  Under the Agreement,

10    Siegel and Shuster agreed to "give their exclusive services" in producing comic

11    features entitled "Slam Bradley" and "The Spy" for a period of two years.  Under

12    the Agreement, Siegel and Shuster were required to submit any new comics to DCI

13    first, which reserved the right to accept or reject the work for a period of sixty (60)

14    days.

15    11.    Early in 1938, DCI was looking for materials for a new comic book it

16    was intending to publish under the name "Action Comics."  In that connection,

17    upon information and belief, DCI was provided with the twenty four (24) days of

18    Superman comic strips from the Unpublished Superman Works for review.  At the

19    instance and expense of DCI and subject to its right to control, Siegel and Shuster

20    cut and pasted the comic strips, and added certain additional material, to create a

21    thirteen page comic book story which was accepted for publication by DCI.

22    12.    In an agreement with DCI dated March 1, 1938 (the "March 1, 1938

23    Agreement"), Siegel and Shuster, among other things, transferred to DCI "the strip

24    entitled 'Superman' . . . all good will attached thereto and exclusive right to the use

25    of the characters and story, continuity and title of strip . . ." and agreed not to

26    employ Superman and other characters in the strip "by their names contained

27    therein."

28

13.     DCI advertised the publication of the new comic story Superman and the new title "Action Comics No. 1" in others of its publications, including but not limited to, "More Fun Comics No. 31," "Detective Comics No. 15," and "New Adventure Comics No. 26," all of which are cover dated May 1938 and, upon information and belief, were distributed in copies to the public on or before April 1, 1938.  These advertisements (the "Superman Ads"), which depict the Superman character in his costume, exhibiting super-strength, show almost the entirety of what would become the cover of "Action Comics No. 1."

14.     Upon information and belief, sometime prior to April 16, 1938, but after the Superman Ads, DCI published the thirteen page Superman comic book comprising the first Superman story in "Action Comics No. 1," bearing the "cover" date June 1938 (hereinafter "Action Comics No. 1").  However, Action Comics No. 1 was not comprised entirely of the pre-existing Unpublished Superman Works.  Rather, upon information and belief, in response to DCI's instruction that the Unpublished Superman Works be presented as a thirteen page comic book and subject to DCI's right to control, Siegel and Shuster created additional materials to complete Action Comics No. 1 (the "Additional Action Comics No. 1 Materials").

15.     After the publication of Action Comics No. 1, upon information and belief, Siegel and Shuster supplied further original Superman stories at DCI's instance and expense and subject to its right to control.  On September 22, 1938, Siegel and Shuster entered into another employment agreement (the "DCI September 22, 1938 Agreement"), confirming that Siegel and Shuster had "been doing the art work and continuity for said comics [including Superman comics] for us.  We wish you to continue to do said work and hereby employ and retain you for said purposes . . . ."  The DCI September 22, 1938 Agreement also contained an acknowledgement that DCI was the "exclusive" owner of Superman.

16.     Also on September 22, 1938, Siegel and Shuster entered into an agreement with DCI and with the McClure Newspaper Syndicate (the "McClure

5

1   September 22, 1938 Agreement") concerning the use of Superman in newspaper

2   strips.

3       17.    All of Siegel and Shuster's contributions to Superman comic books

4   and comic strips published subsequent to Action Comics No. 1 as well as the

5   Additional Action Comics No. 1 Materials, were made either under the DCI March

6   1, 1938 Agreement, the DCI September 22, 1938 Agreement, the McClure

7   September 22, 1938 Agreement, or contemporaneous oral agreements confirmed

8   by one or more of these Agreements, or certain subsequent agreements affirming

9   those agreements, as employees of DCI or its successors or at DCI's instance and

10  expense and subject to DCI's right of control, with the result that the copyrights to

11  all Superman materials created by them after preparation of materials included in

12  Action Comics No. 1 and to the Additional Action Comics No. 1 Materials are

13  owned exclusively by DC Comics as works made for hire under the then applicable

14  1909 Copyright Act.

15      18.    On November 30, 1938, Siegel wrote to DCI (the "November 1938

16  Letter") suggesting that it do a comic book named Superboy, "which would relate

17  to the adventures of Superman as a youth." The November 30, 1938 Letter does

18  not contain any discussion of plot, dialogue, appearance, or any other

19  copyrightable material relating to Superboy. DCI decided not to publish a

20  "Superboy" comic at that time.

21      19.    In 1939, among the Superman comics prepared by Siegel and Shuster

22  at the instance and expense of DCI and subject to its right of control, was

23  Superman No. 1, with a cover date of Summer 1939. In Superman No. 1, Clark

24  Kent was depicted as a youth with super powers.

25      20.    On December 19, 1939, Siegel and Shuster entered into a new

26  agreement with DCI (the "December 19, 1939 Agreement"), which agreement

27  modified the DCI September 22, 1938 Agreement by, *inter alia*, doubling Siegel

28  and Shuster's compensation for Superman comic books and newspaper strips. In

6

addition, the December 19, 1939 Agreement provided for payment for Siegel and Shuster for uses of Superman beyond comic books and newspaper strips, such as radio, motion pictures, and toys. Under the December 19, 1939 Agreement, Siegel and Shuster again acknowledged DCI's sole ownership of Superman.

21.    Upon information and belief, in approximately December 1940, Siegel, on behalf of himself and Joe Shuster, submitted to DCI a thirteen-page script of continuity for Superboy (the "Unpublished 1940 Superboy Script"), renewing his suggestion to DCI that it publish a comic book about Superman as a youth. The December 1940 Superboy Script, which sets forth a credit line of "By Jerry Siegel and Joe Shuster," states, in part, "[s]o many faithful followers of today's leading adventure comic strip, SUPERMAN, wrote in demanding the adventures of Clark Kent as a youth . . .And so here he is at last…the answer to your requests…America's outstanding boy hero: SUPERBOY!" The Unpublished 1940 Superboy Script goes on to say about Superboy that "[i]n later years he was to become the might [sic] figure known as SUPERMAN!" Again, DCI decided not to publish a "Superboy" comic at that time.

22.    Upon information and belief, on a date prior to November 18, 1944, DCI published its first comic book containing the adventures of Superboy, who was Superman as a youth, in "More Fun Comics No. 101" with a "cover" date of January-February 1945 (hereinafter "More Fun Comics No. 101"). Upon information and belief, DCI employed Shuster or an artist from Shuster's art studio (with Shuster's knowledge and under his supervision) to create the artwork and writer Don Cameron to write the Superboy story contained in "More Fun Comics No. 101." The Superboy story in "More Fun Comics No. 101" bears little if any resemblance to anything contained in the Unpublished 1940 Superboy Script, and such similarities as may exist are common to earlier Superman related material owned by DCI.

314270v1 02231.0811                FIRST AMENDED COUNTERCLAIMS

23.     In 1947, Siegel and Shuster brought suit against, *inter alia,* DCI's successor in interest, National Comics Publications, Inc. ("National") in the New York Supreme Court in Westchester County (the "Westchester Action").  The Westchester Action was, in part, the culmination of a dispute between Siegel and Shuster and National over what Siegel and Shuster claimed was DCI's unauthorized publication of Superboy.  In the Westchester Action, in addition to seeking redress in connection with Superboy, Siegel and Shuster sought to invalidate the March 1, 1938 Agreement, argued that the DCI September 22, 1938 Agreement was obtained by duress, and sought to recapture all rights in Superman.

24.     On November 21, 1947, the Court in the Westchester Action issued an opinion (the "Westchester Opinion") after trial in which it found that the March 1, 1938 Agreement transferred to DCI all rights in Superman and that the DCI September 22, 1938 Agreement was valid and not obtained under duress.  The Court also held that in publishing Superboy, DCI had acted "illegally."

25.     At the Court's request, the parties to the Westchester Action submitted proposed fact findings and conclusions of law.  On April 12, 1948, the Court adopted fact findings and conclusions of law and issued an interlocutory judgment (collectively the "Westchester Action Interlocutory Judgment").  The defendants in the Westchester Action filed a notice of appeal, and the Westchester Action Interlocutory Judgment was stayed pending appeal.

26.     Shortly thereafter, the parties to the Westchester Action entered into two separate agreements: (a) a stipulation dated May 19, 1948 (the "May 19, 1948 Stipulation") and (b) a consent judgment dated May 21, 1948 (the "May 21, 1948 Consent Agreement").  Under both documents, *inter alia,* Siegel and Shuster: (a) agreed to vacate the Westchester Action Interlocutory Judgment; (b) acknowledged that, pursuant to the March 1, 1938 Agreement, they transferred to DCI all rights in and to Superman, including "the title, names, characters, concept and formula" as set forth in Action Comics No. 1; (c) acknowledged National was sole and

8

FIRST AMENDED COUNTERCLAIMS

1    exclusive owner of Superman, the conception, idea, continuity, pictorial

2    representation and formula thereof in all media; (d) agreed that they were enjoined

3    from creating, publishing or distributing any Superman work or any imitation

4    thereof, and from using the title Superman or title that contained the word "Super";

5    (e) acknowledged that National was the sole owner of and owned exclusive rights

6    in Superboy; (f) agreed that they were enjoined from creating, publishing or

7    distributing Superboy or any imitation thereof; (g) agreed they were prohibited

8    from representing their past connection with Superman and Superboy in such a

9    way to confuse the public that such connection still existed; and (h) agreed they

10    were prohibited from using any coloring, lettering or printing in referring to

11    Superman or Superboy that was imitative of that used by National.

12        27.    In the 1960s, Siegel and Shuster again brought suit against National,

13    this time in the United States District Court for the Southern District of New York

14    for a declaration that they (and not National) owned the copyright in the renewal

15    copyright term for Action Comics No. 1.  In a decision published in *Siegel v.*

16    *National Periodical Publications, Inc.*, 364 F. Supp. 1032 (S.D.N.Y. 1973), the

17    district court held, *inter alia*, that the agreements between Siegel and Shuster on

18    the one hand and DCI (and later National) on the other, intended to assign all rights

19    in Superman to DCI and National, including renewal copyright rights.

20        28.    In a decision published in *Siegel v. National Periodical Publications,*

21    *Inc.*, 508 F.2d 909 (2d Cir. 1974), the Court of Appeals affirmed that portion of the

22    lower court's ruling relating to National's ownership of all rights in Superman.

23    Siegel and Shuster did not further appeal the ruling.

24        29.    On December 23, 1975, Siegel and Shuster entered into an agreement

25    with Warner Communications, Inc., then National's parent company (the

26    "December 23, 1975 Agreement").  Under this agreement, Siegel and Shuster

27    again acknowledged that Warner Communications, Inc. was the sole and exclusive

28    owner of "all right, title and interest in and to the 'Superman' concept, idea,

9

FIRST AMENDED COUNTERCLAIMS

1  continuity, pictorial representation, formula, characters, cartoons and comic strips,

2  title, logo, copyrights and trademarks, including any and all renewals and

3  extensions of such rights, in the United States and throughout the world, in any and

4  all forms of publication, reproduction and presentation, whether now in existence

5  or hereafter devised . . . ."

6       30.    Under the December 23, 1975 Agreement, Siegel and Shuster each

7  were to and did receive throughout their lives annual payments as well as medical

8  insurance coverage. Upon Siegel's death, annual payments were to be made to

9  Plaintiff/Counterclaim Defendant Joanne Siegel for the remainder of her life. The

10  amount of the annual payment pursuant to the December 23, 1975 Agreement was

11  increased over the years. Since Siegel's passing in 1996, Joanne Siegel has

12  continuously received and accepted annual payments and health insurance under

13  that agreement.

### DC Comics' Development And Licensing
### Of Superman Works And Products

16       31.    The initial graphic representations of the Superman character in 1938,

17  now stylistically dated, presented his adventures with a limited number of

18  characters in settings that had the look and feel of that particular period. From the

19  portrayal of the Superman character in "Action Comics No. 1," we only know that

20  he is an upright hero who was sent as an infant to Earth aboard a space ship from

21  an unnamed distant planet destroyed by old age. Superman is also depicted as

22  secretly possessed of extraordinary physical abilities, including superhuman

23  strength and the ability to leap $1/8^{th}$ of a mile, hurdle a twenty-story building and

24  run faster than an express train. In his ordinary life, the character is depicted as a

25  mild-mannered newspaper reporter for <u>The Daily Star</u> known as Clark Kent, and in

26  his alter ego, Superman is a costumed heroic figure using his extraordinary

27  physical abilities to fight against crime.

28

10

32.    Since the publication of "Action Comics No. 1," DC Comics has authored, published and distributed several thousand other comic books containing the adventures of Superman throughout the United States and abroad in many millions of copies, adding more than 60 years worth of material to further define, update and improve upon the Superman character and presenting an ongoing new flow of Superman exploits and characters resulting in the creation of an entire fictional Superman "universe."

33.    In addition to the publication of new comic books containing the Superman comic strip character, DC Comics has over the last 66 years participated in the creation, development and licensing of numerous Superman live action and animated feature length motion pictures, motion picture serials, radio and television serials and live theatrical presentations.  These works have also significantly contributed to the modernizing and evolution of the Superman character from his 1938 appearance.

34.    Over the years since Action Comics No. 1, the presentations of Superman provided first by DCI and then DC Comics did not present a static depiction but an ever-evolving portrayal of Superman continuously, featuring new super powers, new villains, new components to the Superman universe, new elements in the Superman back story, and changes in the appearance of Superman. Most notably, many of Superman's powers that are among his most famous today did not appear in Action Comics No. 1 but only appeared in later publications. These include: his ability to fly; his super-vision which enables him to see through walls ("X-ray" vision) and across great distances ("telescopic" vision); his super-hearing which enables him to hear conversations at great distances; his invulnerability to injury which is most often shown as bullets bouncing off his chest and/or arms.

35.    One notable part of the evolution of the appearance of the Superman character undertaken by DC Comics and its predecessors, has been the

11

1   transformation of the emblem on the chest of Superman's costume.  In Action

2   Comics No. 1, the emblem was comprised of a small yellow inverted triangle

3   bearing the letter "S" shown in yellow and sometimes in red (the "Action Comics

4   No. 1 Crest").  Thereafter, in changing the appearance of Superman and his

5   costume, DC Comics and/or its predecessors significantly changed the Action

6   Comics No. 1 Crest.  Bearing little if any resemblance to the original, it is now a

7   large yellow five-sided shield, outlined in the color red, and bearing the letter "S"

8   in the middle, also in the color red (the "S in Shield Device").  The S in Shield

9   Device, as transformed by DC Comics and its predecessors, has become a strong

10  symbol, standing alone, of all goods and services relating to Superman and his sole

11  source, DC Comics and its predecessors.

12      36.    At all relevant times, DC Comics, its predecessors in interest and

13  licensees have duly complied with the provisions of the 1976 Copyright Act and its

14  1909 predecessor statute with respect to securing copyright protection for the

15  numerous works in which the Superman character has appeared and establishing

16  DC Comics' copyright ownership thereof, including the original and all works

17  based upon and derived therefrom, and have received from the Register of

18  Copyrights, valid and subsisting certificates of copyright registration and renewal

19  with respect thereto.

20      37.    DC Comics and its predecessors have, since 1938, continuously held

21  themselves out as the exclusive owners of all rights under copyright in Superman.

22      38.    DC Comics has over many decades adopted and made long,

23  continuous and exclusive use of (a) the name and mark Superman and (b) certain

24  key symbols and indicia of origin in connection with and to identify all authorized

25  uses of the Superman character in print and all other media (sometimes hereinafter

26  the "Superman symbols and indicia of origin").  The Superman name and mark

27  and Superman symbols and indicia of origin include, *inter alia*, Superman's

28  characteristic outfit, comprised of a full length blue leotard with red cape, a yellow

314270v1 02231.0811        FIRST AMENDED COUNTERCLAIMS

1  belt, the S in Shield Device, as well as certain key identifying phrases. Most

2  notable among the latter is "Look!…Up in the sky!…It's a bird!…It's a

3  plane!…It's Superman!" first used in the introduction to the 1940 radio program

4  The Adventures of Superman, and thereafter continuously repeated in Superman

5  television programming and various Superman publications. All of these

6  Superman symbols and indicia of origin have been used on and in connection with

7  a wide variety of publications and licensed goods and services, as they have been

8  added to the Superman character and mythology under DC Comics' and/or its

9  predecessors' supervision and direction, but, in any event, for the earliest symbols,

10  since as early as 1938.

11      39.    As a result of the above-described continuous and exclusive use by

12  DC Comics of the Superman name and mark, as well as the Superman symbols and

13  indicia of origin for over sixty years, the names, marks and symbols and the

14  appearance of the Superman character have become famous and the public has

15  come to recognize that all publications, entertainment and products featuring

16  Superman or bearing such marks all come from the same source, namely, DC

17  Comics, and that DC Comics is the exclusive source of the Superman character

18  and all uses of the character on and in connection with any goods and services.

19      40.    DC Comics owns dozens of federal trademark registrations for

20  Superman related indicia across a broad array of goods and services. Those

21  registrations include, but are not limited to the following for the following marks:

22  (a) SUPERMAN (in block letters) Reg. Nos. 2,419,510, 2,204,195, 1,278,177,

23  1,221,718, 1,209,668, 1,175,907, 1,183,841, 1,248,822, 1,216,976, 1,186,803,

24  1,189,393, 1,180,068, 1,184,822, 1,181,536, 1,182,947, 1,070,290; (b)

25  SUPERMAN (in the well-known "telescopic" lettering) Reg. Nos. 2,226,026,

26  1,278,175, 1,200,394, 1,185,526, 1,185,853, 1,209,863, 1,220,896, 1,183,809,

27  1,182,226, 1,181,537, 1,189,355, 1,218,552, 1,108,577, 391,821, 371,803; (c) the

28  "S in Shield" Device (either alone or as part of a rendering of Superman)

13

FIRST AMENDED COUNTERCLAIMS

1  2,211,378, 2,226,415, 1,262,572, 1,179,537, 1,197,814, 1,200,387, 1,200,233,

2  1,209,743, 1,201,167, 1,201,149, 1,229,321, 1,199,690, 1,199,552, 1,199,630,

3  1,184,881, 1,182,172, 1,189,376, 1,180,292, 1,178,048, 1,182,041, 1,173,150,

4  1,140,418, 1,235,769, 411,871; (d) SUPERMAN RIDE OF STEEL Reg. No.

5  2,485,624; (e) MAN OF STEEL Reg. Nos. 2,226,436, 1,433,864; (f) SUPERBOY

6  Reg. Nos. 394,923 (telescopic lettering), 1,221,719 (block letters); (g)

7  SUPERGIRL (stylized and in block letters) Reg. Nos. 987,395, 414,623,

8  1,238,334; (h) SUPERWOMAN (in telescopic lettering) Reg. No. 394,922; (i)

9  SMALLVILLE Reg. Nos. 2,626,700, 2,809,352, 2,768,213, 2,765,711, 2,882,881;

10  (j) KRYPTONITE Reg. Nos. 2,656,1,239,506; (k) KRYPTO Reg. No. 1,168,306;

11  (l) LOOK, UP IN THE SKY, IT'S A BIRD, IT'S A PLANE Reg. No. 1,527,304;

12  (m) LEX LUTHOR Reg. Nos. 2,802,600, 1,634,007; (n) LOIS LANE Reg. No.

13  1,184,702; (o) PERRY WHITE Reg. No. 1,184,703; (p) JIMMY OLSEN Reg. No.

14  1,190,637; (q) LOIS AND CLARK Reg. No. 1,990,231; and (r) ACTION

15  COMICS (stylized) 360,765 (collectively with the SUPERMAN symbols and

16  indicia of origin, the "Superman Marks").

17      41.    These registrations alone suffice to show the unusual breadth and

18  scope of the use of such marks related to Superman by DC Comics or its licensees

19  on or in connection with a broad range of goods and services, all of which have

20  come to be seen over six decades by countless consumers as indicating an

21  exclusive authorization or sponsorship thereof by plaintiff DC Comics, the

22  publisher and source of all Superman comic books and other Superman

23  productions and products.

24                **The Superman Notices Of Termination**

25      42.    On April 8, 1997, DC Comics received from Plaintiffs' Counterclaim

26  Defendants Joanne Siegel and Laura Siegel Larson, through their then-counsel,

27  Finnegan, Henderson, Farabow, Garrett & Dunner, seven documents entitled

28  Notice of Termination of Transfer Covering Extended Renewal. Those documents

1   purport, under 17 U.S.C. § 304 (c), to terminate, effective April 16, 1999, the

2   Siegels' share in the following grants of copyright: (a) the December 4, 1937

3   Agreement; (b) the March 1, 1938 Agreement; (c) the DCI September 22, 1938

4   Agreement; (d) the McClure September 22, 1938 Agreement; (e) the December 19,

5   1939 Agreement; (f) the May 19, 1948 Stipulation; (g) the December 23, 1975

6   Agreement (collectively the "Superman Notices").  However, the Siegels served no

7   notice terminating their share of the copyright grant in the May 21, 1948 Consent

8   Agreement.

9       43.    The Superman Notices purport to terminate the Siegels' share of the

10  above grants listed therein in the Unpublished Superman Works, Action Comics

11  No. 1, and in excess of 15,000 additional works (the "Post-Action Comics No. 1

12  Works").  However, in none of the seven Superman Notices, or anywhere else, do

13  the Siegels purport to terminate their share of any copyright grant in the Superman

14  Ads.

15      44.    In the Superman Notices, the Siegels expressly recognize and

16  acknowledge that the character Superboy is a derivative work based on Superman.

17  The Superman Notices expressly identify Superboy as part of the Superman

18  "family" of characters in which the Siegels are purporting to terminate their grants.

19  Indeed, the more than 15,000 works listed in the Superman Notices include

20  hundreds of publications and other works that feature *only* Superboy (as opposed

21  to Superman), and also Superman No. 1 with a cover date of Summer 1939, in

22  which Superman is depicted as a youth.

23      45.    In late November, 1998, DC Comics received from Plaintiffs/

24  Counterclaim Defendants Joanne Siegel and Laura Siegel Larson, through their

25  then-counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, four documents

26  entitled Notice of Termination of Transfer Covering Extended Renewal.  Those

27  documents purport to terminate, effective November 27, 2000, the Siegels' share in

28  the following grants of copyright relating to the character known as "The Spectre":

15

**025**

1  (a) the December 4, 1937 Agreement; (b) a September 22, 1938 Agreement; (c)

2  and October 10, 1939 Agreement and (d) a second October 10, 1939 Agreement

3  (collectively the "Spectre Notices").

4      46.    The Spectre Notices purport to terminate the Siegels' share of the

5  above grants in: (a) the Spectre character appearing in costume in an ad in issue

6  No. 51 of "More Fun Comics" with a cover date of January 1940; (b) the first

7  Spectre comic book story published in issue No. 52 of "More Fun Comics" with a

8  cover date of February 1940; (c) part 2 of the first Spectre comic book story

9  published in issue No. 53 of "More Fun Comics" with a cover date of March 1940,

10  and hundreds of additional works listed the Spectre Notices (collectively the

11  "Spectre Works").

12      **The Parties' Negotiations**

13      **And The Agreement Reached**

14      47.    On April 17, 1997, less than ten days after DC Comics received the

15  Superman Notices, its counsel wrote to the Siegels' counsel inviting negotiation.

16  The Siegels requested that DC Comics make an initial settlement proposal.  But

17  prior to making such proposal, DC Comics requested that the parties enter into a

18  confidentiality agreement.  Frustrated by the Siegels' delay in responding to its

19  proposed form confidentiality agreement, on November 5, 1997, DC Comics'

20  counsel wrote the Siegels' counsel and stated, *inter alia*, "[a]s we had advised you

21  in the past, our client has elected, for settlement purposes only, not to respond to

22  the [Superman Notices] served upon them by challenging their validity or scope *at*

23  *this time*."  (Emphasis added.)

24      48.    On December 17, 1997, DC Comics and the Siegels finally entered

25  into a confidentiality agreement.  On December 18, 1997, DC Comics forwarded

26  its first substantive proposal with respect to the copyrights at issue, and in

27  connection therewith also raised certain defects in the termination notice, stating

28  "that there is a substantial legal issue as to the effectiveness of your clients'

FIRST AMENDED COUNTERCLAIMS

1 termination of DC's interest in the Superman Comic." For more than six months,

2 despite repeated requests for feedback, DC Comics heard no response to its

3 December 18, 1997 proposal. Finally, on June 19, 1998, the Siegels' counsel sent

4 a letter to DC Comics' counsel that did not respond to the proposal but only

5 requested more information.

6     49.    On July 23, 1998, DC Comics provided the Siegels with the answers

7 to the questions posed in their counsel's letter of June 19, 1998. Despite requests

8 for feedback for another several months, DC Comics again received no response to

9 its proposal.

10     50.    Having heard no response from the Siegels, on April 15, 1999, one

11 day before the  purported "Effective Date" set forth in the Superman Notices, DC

12 Comics provided a more comprehensive written notice to Plaintiffs/Counterclaim

13 Defendants Joanne Siegel and Laura Siegel Larson detailing, among other things,

14 the reasons it considered the Superman Notices to be invalid.

15     51.    On April 30, 1999, DC Comics received a letter from the firm of

16 Gang, Tyre, Ramer & Brown, Inc. ("Gang, Tyre") indicating it now represented

17 the Siegels in negotiations with DC Comics. Thereafter, the parties engaged in

18 extensive negotiations with their respective lawyers attending meetings in

19 California and New York, and exchanging proposals. During that time period, at

20 the Siegels' request, DC Comics provided a payment of $250,000 (the "Advance

21 Payment") to the Siegels which payment was agreed to be an advance against any

22 future sums provided under an agreement to be entered into between the parties.

23     52.    On October 16, 2001, a legal representative for DC Comics made an

24 offer to the Siegels through Gang, Tyre by telephone. On October 19, 2001, Kevin

25 Marks of Gang, Tyre, on behalf of the Siegels, accepted the October 16, 2001

26 offer. That day, Mr. Marks wrote a letter confirming that the Siegels had

27 "accepted D.C. Comics offer of October 16, 2001" and outlined all of the material

28 terms in detail. Those terms included, *inter alia,* that the Siegels transferred or

1   would transfer all of their rights in the Superman property (which was defined in
2   the letter as Superman, Superboy and related properties including but not limited to
3   Supergirl, Steel, Lois & Clark, and Smallville) and in "The Spectre." In exchange,
4   the Siegels were to receive: (a) a sizeable non-returnable advance; (b) a sizeable
5   non-recoupable and non-returnable signing bonus; (c) "forgiveness" of the
6   Advance Payment; (d) significant guaranteed minimum payments as advances
7   against royalties; and (e) percentage royalties from DC Comics' exploitations of
8   Superman across all media, worldwide.

9       53.    By return letter of October 26, 2001, DC Comics' representative
10  wrote back providing a "more fulsome outline" of the agreed upon points. Neither
11  the Siegels nor any of their representatives in any way disputed the October 26,
12  2001 confirmatory outline from DC Comics. On February 1, 2002, DC Comics
13  forwarded a draft of a more formal written agreement memorializing the terms
14  agreed to in the October 19 and 26, 2001 correspondence.

15      54.    After the October 2001 agreement, DC Comics entered into a written
16  Option Purchase Agreement with Warner Bros., A Division of Time Warner
17  Entertainment Company, L.P. (now known as defendant Warner Bros.
18  Entertainment Inc.) dated as of November 6, 1999, pursuant to which DC Comics
19  granted to Warner Bros. the option to license certain exclusive rights in Superman,
20  and Warner Bros. has commenced photography of a feature-length motion picture
21  based on the property.

22      55.    On May 9, 2002, Plaintiff/Counterclaim Defendant Joanne Siegel
23  wrote a letter to the Co-Chief Operating Officer of DC Comics' parent company
24  acknowledging that the Siegels had accepted DC Comics' proposal of October 16,
25  2002, but purporting to object to unspecified provisions of the formal written draft
26  and repudiating the agreement reached by the parties in October 2001. To this day,
27  the Siegels have not identified a single provision of the February 1, 2002 formal
28

314290v1 02231.0811        FIRST AMENDED COUNTERCLAIMS

1  draft that was inconsistent with the provisions in the Siegels' October 19, 2001

2  acceptance of DC Comics' proposal.

3      56.    On September 30, 2002, however, DC Comics received a letter from

4  the Siegels stating they were breaking off all discussions with DC Comics and

5  again repudiating the agreement reached by the parties in October 2001.

6                    **The Superboy Termination Notices**

7      57.    Notwithstanding the fact that the Siegels had already purported to

8  terminate grants with respect to the Superboy character effective April 16, 1999,

9  on November 8, 2002, the Siegels mailed to DC Comics another Notice of

10  Termination of Transfer purporting to relate solely to Superboy (the "Superboy

11  Notice"). The Superboy Notice purports to terminate, effective November 17,

12  2004, only two grants of copyright: (a) the May 19, 1948 Stipulation and (b) the

13  December 23, 1975 Agreement, and identifies many of the same works identified

14  in the Superman Notices. As was the case with the Superman Notices, the Siegels

15  served no notice terminating the copyright grant in the May 21, 1948 Consent

16  Agreement.

17      58.    The Superboy Notice purports to terminate the above grants

18  regarding the following works: (a) the unpublished November 30, 1938 Letter; (b)

19  the unpublished 1940 Superboy Script; (c) More Fun Comics No. 101; and (d)

20  approximately 1,600 additional titles. However, the Superboy Notice lists and

21  purports to terminate grants of rights under copyright relating to hundreds of the

22  same works already purportedly terminated by the earlier Superman Notices. The

23  Superboy Notice does not purport to terminate the 1939 depiction of Superman as

24  a youth in Superman No. 1.

25      59.    In the Superboy Notice, the Siegels make the claim that Superboy is a

26  "separate and distinct copyrighted work and character from the copyrighted work

27  and character Superman." This contention is erroneous.

28

314290v1 02231.0811          FIRST AMENDED COUNTERCLAIMS

60.    In the Superboy Notices, the Siegels also claim that Jerome Siegel was the sole author of Superboy. This contention is also erroneous.

61.    Among the works listed in the Superboy Notice that the Siegels claim are terminated by such notice of termination (as well as by the Superman Notices), is the WB television series entitled "Smallville." "Smallville" is a modern, teen-oriented drama about the life and relationships of Clark Kent and his circle of friends during Clark's high school years; it features numerous characters not created or developed by Siegel and story lines wholly original to the series.

62.    On June 17, 2004, talent agent Ari Emanuel, representing the Siegels, sent a letter to DC Comics' licensee and affiliated company, Warner Bros., stating, *inter alia,* that as of the effective date of the Superboy Notice, November 17, 2004, DC Comics and its licensees would be cut off from making any further episodes of "Smallville"

63.    On August 4, 2004, the Siegels' new counsel and attorney of record in this case, Marc Toberoff, contacted Warner Bros. and reiterated the Siegels' position that, as of November 17, 2004, DC Comics and its licensees would be cut off from making any further episodes of "Smallville."

64.    On August 27, 2004, DC Comics' counsel herein, Fross Zelnick Lehrman & Zissu, P.C., sent a letter to the Siegels' counsel rejecting the interpretation of the effect of the Superboy Notice and unequivocally informing the Siegels that DC Comics and its licensees would proceed with their planned production, copying, distribution, and exploitation of new episodes of "Smallville."

### The Siegels' Filing Of Two Related Cases

65.    On October 8, 2004, 14 days prior to filing the instant action, the Siegels filed a related action, Civil Case No. 04-8400, which case was assigned to Judge Pregerson in this Court.

314290v1 02231.0811          FIRST AMENDED COUNTERCLAIMS          **030**

# FIRST COUNTERCLAIM FOR DECLARATION
# THAT THE SUPERMAN NOTICES AND THE
# SUPERBOY NOTICE ARE INEFFECTIVE

66.    DC Comics repeats and realleges paragraphs 1 - 65 above as if fully set forth herein.

67.    DC Comics contends that the Superman Notices and/or the Superboy Notice are ineffective, *inter alia*, for any or all of the following five independent reasons:

### #1  The May 21, 1948 Consent Agreement Has Not Been Terminated

68.    The May 21, 1948 Consent Agreement is a written agreement entered into by Jerome Siegel and Joseph Shuster with DC Comics' predecessor in interest and includes a grant of all rights in Superman and Superboy by Siegel and Shuster to DC Comics' predecessor in interest, including all rights under copyright therein.

69.    As a result of the Siegels' failure to send a Notice of Termination with respect to  the May 21, 1948 Consent Agreement, the grant contained therein to all copyrights related to Superman remains in full force and effect.  Thus, DC Comics is and continues to be the sole owner of all rights of any kind, including rights under copyright, in Superman (including its derivative work Superboy) pursuant to the May 21, 1948 Consent Agreement.

### #2 The December 23, 1975 Agreement

70.    Through both the Superman Notices and the Superboy Notice, the Siegels purport to terminate their share of the grant of copyright in Superman and Superboy contained in the December 23, 1975 Agreement.

71.    By letter dated April 15, 1999, the day before the Superman Notice purported to become effective, DC Comics rejected the scope and validity of the Superman Notices, including but not limited to, that Superman Notice purporting to terminate the grant in the December 23, 1975 Agreement.

FIRST AMENDED COUNTERCLAIMS

314270v1 02231.0811

031

72.    By letter dated August 29, 2004, DC Comics rejected the scope and validity of the Superboy Notice, including but not limited to the Siegels' claim that such notice terminated the December 23, 1975 Agreement.

73.    Notwithstanding the Siegels having, by virtue of the Superman Notices, purportedly terminated the grant of copyright contained in the December 23, 1975 Agreement, and with full knowledge of DC Comics' rejection of the Superman Notice, after April 16, 1999, the purported effective date of such notices of termination, DC Comics continued to perform under the December 23, 1975 Agreement and Plaintiff/Counterclaim Defendant Joanne Siegel continued to accept the benefits under that agreement.  DC Comics has relied upon Joanne Siegel's continued acceptance of benefits under the December 23, 1975 Agreement and has continued to perform under that Agreement without accounting to the Siegels and without making any other change in the manner in which it has exploited Superman.

74.    Notwithstanding the Siegels having, by virtue of the Superboy Notice, purportedly terminated the grant of copyright contained in the December 23, 1975 Agreement, and with full knowledge of DC Comics' August 29, 2004 rejection of the notice of termination, DC Comics has continued to perform under the December 23, 1975 Agreement.  DC Comics has relied upon Joanne Siegel's continued acceptance of benefits under the December 23, 1975 Agreement and has continued to perform under that Agreement without accounting to the Siegels and without making any other change in the manner in which it has exploited Superboy.

75.    Because of DC Comics' continued performance under the December 23, 1975 Agreement and Plaintiff/Counterclaim Defendant Joanne Siegel's continued acceptance of the benefits of such agreement after she purportedly terminated it in both the Superman Notices and the Superboy Notice, the

22

FIRST AMENDED COUNTERCLAIMS

032

December 23, 1975 Agreement, and the grant of copyright therein, remains in full force and effect.

76.    Thus, DC Comics is and continues to be the sole owner of all rights of any kind, including rights under copyright, in Superman (and its derivative work Superboy), rendering the Superman Notices and the Superboy Notice ineffective.

### #3 The Unpublished Superboy Works

77.    In the Superboy Notice, the Siegels purport to terminate copyright grants of rights in the November 1938 Letter and the Unpublished 1940 Superboy Script and approximately 1,600 additional published titles purportedly relating to Superboy (the "Published Superboy Works").

78.    Upon information and belief, as of January 1, 1978, both the November 1938 Letter and the Unpublished 1940 Superboy Script (the "Siegel Superboy Proposals") remained unpublished and thus were neither in their first nor their second term of copyright as of that date.

79.    Copyright in the Published Superboy Works is owned exclusively by DC Comics by virtue of their having been prepared as works made for hire for DC Comics' and/or its predecessors, or by virtue of other copyright grants that remain in full force and effect.

80.    Pursuant to the requirements set forth by section 304 (c) of the 1976 Copyright Act, 17 U.S.C. § 304 (c), only copyright grants in works that were in their first or second term of copyright as of January 1, 1978, could be terminated under that provision. As a result, the Superboy Notice is ineffective as to the Siegel Superboy Proposals or any portion of any derivative works containing any copyrightable material therefrom and DC Comics remains the sole owner thereof. Therefore, the Superboy Notice is ineffective.

## #4  Siegel Owned No Copyright In Superboy

81.     The Siegel Superboy Proposals are derivative works based upon the pre-existing copyrighted Superman character and stories owned by DC Comics' predecessors.

82.     Upon information and belief, Siegel, in collaboration with Shuster, prepared the Siegel Superboy Proposals without the prior knowledge or consent of DC Comics' predecessors.

83.     Upon further information and belief, Siegel developed the contents of the Siegel Superboy Proposals within the scope of his employment contracts with DC Comics' predecessors and/or at their instance and expense and subject to their right to control.

84.     As a result of the foregoing, the Siegel Superboy Proposals were derivative works based upon Superman, prepared without the authorization of the copyright owner, and/or were works made for hire, owned *ab initio* by the copyright owner in Superman.

85.     Whether the Siegel Superboy Proposals were derivative works prepared without the prior authorization of the copyright owner, or were works made for hire, Siegel could not and did not own any copyright interest therein that would be subject to copyright termination pursuant to 17 U.S.C. § 304 (c).  Thus, the Superboy Notice is ineffective.

## #5  The Superman Notices Were Not Timely Served

86.     Upon information and belief, DC Comics' predecessor in interest first secured copyright in Action Comics No. 1 by publication with copyright notice prior to April 16, 1938.

87.     All grants made by Siegel and Shuster or rights in Action Comics No. 1 are still in effect, and all rights under copyright granted therein are still owned exclusively by DC Comics, because the Superman Notices served by the Siegels are ineffective for failure to comply with the legal requirements therefore

24

**034**

1 | prescribed by section 304 (c) of the U.S. Copyright Act of 1976, 17 U.S.C. § 304
2 | (c), in that: the "Effective date" of the Superman Notices, namely April 16, 1999,
3 | was too late to fall within the required period specified in 17 U.S.C. § 304 (c) (3)
4 | and such notices of termination were served less than two years before the
5 | allowable effective date in violation of 17 U.S.C. § 304 (c) (4) (A).

6 |    88.    On information and belief, plaintiffs deny DC Comics' contentions
7 | and/or the legal effect ascribed thereto as set forth in paragraphs 66 – 87 above.
8 | Accordingly, an actual controversy has arisen and now exists between
9 | Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

10 |    89.    A justiciable controversy exists concerning the above issues and a
11 | judicial declaration is necessary and appropriate to determine the parties'
12 | respective rights with regard thereto.

13 |    **SECOND ALTERNATIVE COUNTERCLAIM FOR**
14 |    **DECLARATION THAT ANY CLAIM BY THE SIEGELS FOR**
15 |    **CO-OWNERSHIP OF SUPERMAN (INCLUDING ITS DERIVATIVE**
16 |    **SUPERBOY) IS BARRED BY THE STATUTE OF LIMITATIONS**

17 |    90.    DC Comics repeats and realleges paragraphs 1 - 89 above as if fully
18 | set forth herein.

19 |    91.    Since as early as 1998, Plaintiffs/Counterclaim Defendants were on
20 | notice of DC Comics' position that the Superman Notices contained legal defects.
21 | Moreover, effective at least as early as April 15, 1999, Plaintiffs/Counterclaim
22 | Defendants were on notice that DC Comics rejected the Superman Notices and
23 | asserted exclusive ownership of all copyright in Superman.

24 |    92.    Since April 16, 1999, the purported effective date of the Superman
25 | Notices, Plaintiffs/Counterclaim Defendants have been deprived of the benefits of
26 | their purported co-ownership of copyright in Action Comics No. 1.

27 |    93.    In response to DC Comics' above actions and assertion and such
28 | deprivation to the Siegels of the benefits of their alleged copyright co-ownership,

1    Plaintiffs/Counterclaim Defendants took no action until filing the instant action on

2    October 8, 2004, more than six years after DC Comics advised

3    Plaintiffs/Counterclaim Defendants in writing of defects in the Superman Notices

4    and more than five years after being placed on notice by DC Comics of its claim of

5    exclusive ownership of copyright in Superman and that it rejected and repudiated

6    the Superman Notices and during which time period the Siegels were deprived of

7    benefits to which they claim they are entitled.

8         94.     Because Plaintiffs/Counterclaim Defendants' claim of partial

9    ownership of copyright accrued more than three years prior to

10   Plaintiffs/Counterclaim Defendants bringing the instant action, even taking into

11   consideration any purported agreements to toll the statute of limitations, any claim

12   of ownership of copyright in Superman by Plaintiffs/Counterclaim Defendants is

13   barred by the three-year statute of limitations of the Copyright Act.

14        95.     On information and belief, plaintiffs deny DC Comics' contentions

15   and/or the legal effect ascribed thereto as set forth in paragraphs 90 – 94 above.

16   Accordingly, an actual controversy has arisen and now exists between

17   Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

18        96.     A justiciable controversy exists concerning the above issues and a

19   judicial declaration is necessary and appropriate to determine the parties'

20   respective rights with regard thereto.

21              **THIRD ALTERNATIVE COUNTERCLAIM**

22                  **FOR BREACH OF CONTRACT**

23        97.     DC Comics repeats and realleges paragraphs 1 - 96 above as if fully

24   set forth herein.

25        98.     In or about October 2001, Plaintiffs/Counterclaim Defendants entered

26   into a written agreement with DC Comics memorialized by the authorized agent of

27   Plaintiffs/Counterclaim Defendants, Kevin Marks, and by the authorized agent of

28   DC Comics, John Schulman, which subsequently was confirmed and ratified in

26

**036**

1  writing by Plaintiff/Counterclaim Defendant Joanne Siegel (the "Agreement"),

2  pursuant to which, among other things, Plaintiffs/Counterclaim Defendants (1)

3  transferred to DC Comics, worldwide and in perpetuity, or, alternatively, agreed to

4  transfer to DC Comics, worldwide and in perpetuity, any and all rights, title, and

5  interest, including all United States copyrights, which they may have in any and all

6  past, present, and future Superman and Superboy-related properties, works,

7  characters, names, and trademarks (collectively, the "Superman Works"), (2)

8  agreed to accept certain compensation from DC Comics in consideration of any

9  and all rights, title, and interest which they may have in the Superman Works (the

10  "Financial Terms"), and (3) covenanted never to sue DC Comics for any claim

11  related to the Superman Works other than for breach of the Agreement (the

12  "Covenant Not To Sue").

13      99.    DC Comics has performed all of its obligations under the Agreement,

14  except to the extent such performance has been prevented or excused by the acts or

15  omissions of Plaintiffs/Counterclaim Defendants.  Specifically, and without

16  limiting the foregoing, DC Comics established a reserve account of the moneys

17  due to Plaintiffs/Counterclaim Defendants based upon the Financial Terms, which

18  DC Comics would have paid to Plaintiffs/Counterclaim Defendants pursuant to the

19  Agreement but for their repudiation and breach of the Agreement as herein alleged.

20  DC Comics always has been and remains ready, willing, and able to perform all of

21  its obligations under the Agreement, and will resume doing so upon either a

22  withdrawal by Plaintiffs/Counterclaim Defendants of their repudiation of the

23  Agreement or a final adjudication that the Agreement is enforceable and binding

24  on the parties.

25      100.   Plaintiffs/Counterclaim Defendants have repudiated and otherwise

26  breached the Agreement by, among other things:

27          a.    Claiming, including in this action, that they have not transferred

28  and are not contractually obligated to transfer to DC Comics, worldwide and in

**037**

314270v1 02231.0811                    FIRST AMENDED COUNTERCLAIMS

1  perpetuity, all of their rights, title, and interest, including all United States

2  copyrights, which they may have in the Superman Works, and refusing to execute

3  a formal written transfer thereof to DC Comics;

4        b.    Repudiating the Financial Terms and claiming, including in this

5  action, that they are entitled to additional compensation for the Superman Works;

6  and

7        c.    Initiating this action in violation of the Covenant Not To Sue.

8      101.   As a direct and foreseeable result of the contractual breaches on the

9  part of Plaintiffs/Counterclaim Defendants herein alleged, DC Comics has been

10  damaged in an amount to be proven at trial.

11  **FOURTH ALTERNATIVE COUNTERCLAIM FOR**

12  **DECLARATORY RELIEF REGARDING THE AGREEMENT**

13      102.   DC Comics repeats and realleges paragraphs 1 - 101 above as if fully

14  set forth herein.

15      103.   An actual controversy now exists between DC Comics and

16  Plaintiffs/Counterclaim Defendants, in that DC Comics contends the Agreement is

17  binding and enforceable and, therefore, that:

18        a.    Plaintiffs/Counterclaim Defendants either have transferred or

19  are contractually obligated to transfer to DC Comics, worldwide and in perpetuity,

20  any and all rights, title, and interest, including all United States copyrights, which

21  they may have in the Superman Works;

22        b.    If for any reason Plaintiffs/Counterclaim Defendants are

23  adjudged not to have transferred or not to be contractually obligated to transfer to

24  DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

25  United States copyrights, which they may have in the Superman Works, then the

26  remaining terms of the Agreement are valid and enforceable and

27  Plaintiffs/Counterclaim Defendants are not entitled to any compensation for any

28

1  past, present, or future exploitation of the Superman Works by or upon license from
2  DC Comics other than pursuant to the Financial Terms; and

3          c.      If for any reason Plaintiffs/Counterclaim Defendants are
4  adjudged not to have transferred or not to be contractually obligated to transfer to
5  DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all
6  United States copyrights, which they may have in the Superman Works, then
7  Plaintiffs/Counterclaim Defendants nevertheless are not entitled to license or
8  otherwise exploit the Superman Works in any manner.

9      104.   DC Comics is informed and believes, and on that basis alleges, that
10  Plaintiffs/Counterclaim Defendants dispute these contentions.

11      105.   DC Comics seeks a judicial determination of the parties' respective
12  rights and obligations, which is necessary and appropriate to allow them to
13  properly govern their future conduct.

14          **FIFTH ALTERNATIVE COUNTERCLAIM FOR**
15      **DECLARATION OF LIMITATIONS ON THE SCOPE OF THE**
16        **SUPERMAN NOTICES AND THE SUPERBOY NOTICE**

17      106.   DC Comics repeats and realleges paragraphs 1 - 65 above as if fully
18  set forth herein.

19      107.   In the event the Superman Notices and/or the Superboy Notice are
20  deemed effective and the settlement agreement between the parties is not enforced,
21  DC Comics asserts the following alternative counterclaim for a declaration limiting
22  the scope and reach of the Superman Notices and the Superboy Notice in six
23  separate and independent ways.

24      108.   DC Comics contends that:

25                  **#1  The Superman Ads**

26      109.   The regulations governing the contents of notices of termination
27  promulgated by the U.S. Copyright Office under authority of the 1976 Copyright
28  Act require, in relevant part, that a notice of termination served pursuant to section

29

1  304 (c) of the 1976 Copyright Act name "each work to which the notice of

2  termination applies."

3       110.   Upon information and belief, all of the Superman Ads first secured

4  copyright protection by publication with copyright notice prior to April 16, 1938

5  and prior to publication of Action Comics No. 1.

6       111.   The Superman Ads contain and show the appearance of Superman,

7  his costume, and his super-strength.

8       112.   The grants made by Siegel and Shuster as to the appearance of

9  Superman, his costume, and his super-strength, are still in effect, and all rights

10  under copyright granted therein are still owned exclusively by DC Comics,

11  because the Superman Notices served by the Siegels do not list the works in which

12  the Superman Ads were first published.

13       113.   Thus, DC Comics is the exclusive owner of all copyright in and to the

14  Superman Ads and thereby retains exclusive ownership of copyright in the

15  appearance of Superman therein, including but not limited to, the appearance of the

16  Superman costume.

17            **#2  Use Of Superman And Superboy Derivative Works**

18            **Prepared Prior To The Purported Effective Dates Of The**

19            **Superman Notices And The Superboy Notice**

20       114.   The Superman Notices purport to terminate the Siegels' share in the

21  copyright grant of Jerome Siegel in all Superman-related works thereafter derived

22  from Action Comics No. 1, including but not limited to the more than 15,000

23  Superman related works (in addition to Action Comics No. 1) listed in the

24  Superman Notices (the "Superman Derivative Works"). Included among the

25  Superman Derivative Works is the image of the "S in Shield Device" that has

26  become a strong trademark of Superman and his single source, DC Comics.

27

28

FIRST AMENDED COUNTERCLAIMS

**040**

115.    The Superboy Notice purports to terminate the Siegels' share in the copyright grant of Jerome Siegel in the approximately 1,600 of the Published Superboy Works.

116.    The Superman Derivative Works and the Published Superboy Works are all based upon pre-existing works and were prepared under the authority of the grants of copyright entered into by Siegel and Shuster to DC Comics and/or its predecessors.

117.    Regardless of whether the Superman Notices and the Superboy Notice are legally effective, under the Copyright Act, 17 U.S.C. § 304 (c)(6)(A), DC Comics retains the right to make use of the Superman Derivative Works and the Superboy Published Works under the terms of the original grants under which they were prepared without any duty to account to the Siegels for any such use.

### #3 DC Comics Owns All Superman Derivative Works

118.    All copyright rights in any of the works listed in the Superman Notices, or any other derivative works based upon and that post-date Action Comics No. 1 (the "Post Action Comics No. 1 Works") are owned exclusively by DC Comics. DC Comics' ownership of such copyrights is not subject to termination pursuant to the Copyright Act.

119.    The Post Action Comics No. 1 Works contain many copyrightable elements not present in Action Comics No. 1 (the "Post Action Comics No. 1 Elements"). These include, but are not limited to, new super powers, new villains, new components to the Superman universe, new elements in the Superman back story, and changes in the appearance of Superman. Notably, many of Superman's powers that are among his most famous today did <u>not</u> appear in Action Comics No. 1 but only appeared later in the Post Action Comics No. 1 Works.

120.    Regardless of whether the Superman Notices and the Superboy Notice are valid and effective, DC Comics remains the sole owner of the Post

31

1  Action Comics No. 1 Works and in the Post Action Comics No. 1 Elements.

2  Moreover, the Siegels can make no use of the Post Action Comics No. 1 Elements.

3  **#4  Superboy Is A Derivative Work Based On Superman**

4      121.   In the November 1938, Letter suggesting the idea for a Superboy

5  comic strip, Siegel stated such comic "would relate to the adventures of Superman

6  as a youth." In the Unpublished 1940 Superboy Script, Siegel wrote "[s]o many

7  faithful followers of today's leading adventure comic strip, SUPERMAN, wrote in

8  demanding the adventures of Clark Kent as a youth . . .And so here he is at

9  last…the answer to your requests…America's outstanding boy hero:

10  SUPERBOY!"

11      122.   As demonstrated by the foregoing, the Siegel Superboy Proposals

12  were based upon the pre-existing Superman character and stories and are thus

13  derivative works based thereon, and were not made at the instigation of Siegel.

14      123.   Thus, even if the Superboy Notice were effective, any recapture of

15  copyright rights would be limited to any new copyrightable subject matter added

16  by Siegel and Shuster to the pre-existing Superman character and stories

17  exclusively owned by DC Comics and its predecessors.

18      124.   The new copyrightable subject matter contained in the Siegel

19  Superboy Proposals is *de minimis* and thus, even if the Siegels could recapture

20  U.S. Copyrights therein, such recapture could not affect DC Comics' continuing

21  right to create and exploit new derivative works that do not include such new

22  copyrightable subject matter, including but not limited to, the television series

23  "Smallville."

24      **#5  The Derivative Work Superboy Is A Joint Work Of Authorship**

25      125.   Upon information and belief, the Siegel Superboy Proposals were

26  joint works of authorship as they were prepared jointly with Shuster and because it

27  was intended that their contents would be merged with artwork to create a comic

28  book or comic strip.

32

**042**

FIRST AMENDED COUNTERCLAIMS

126.    As eventually published, the works containing the Superboy character included both artwork and storyline.

127.    The joint author's share in the Siegel Superboy Proposals is owned by DC Comics and cannot be terminated either by the Superman Notices or the Superboy Notice.

128.    As a result of the foregoing, DC Comics right to continue to exploit the Siegel Superboy Proposals and any derivative works based thereon cannot be affected by either the Superman Notices or the Superboy Notice.

### #6 "Smallville" Is Not Derived From Superboy

129.    Among the derivative works based upon Superman and authorized by DC Comics is the weekly television series, "Smallville."

130.    Regardless of whether the Superboy Notice is effective and further regardless of whether Superboy is a derivative work based upon Superman, "Smallville" was derived from and based upon Superman and is not a derivative work based upon the Siegel Superboy Proposals or any succeeding Superboy comic or Superboy work exploited by DC Comics and/or its predecessors prior to May 21, 1948. Beyond sharing the idea of depicting Superman as a youth, Smallville is not substantially similar to the Siegel Superboy Works.

131.    Thus, irrespective of any accounting issues relating to the Siegels' purported right to receive compensation with respect to new episodes of "Smallville," DC Comics' right to continue to authorize production, distribution, and airing of "Smallville" television episodes remains unaffected by the Superman Notices and the Superboy Notice.

### #7  The Additional Action Comics No. 1 Materials

132.    The Additional Action Comics No. 1 Materials created in 1938 were prepared at the instance and expense of DCI and subject to its right to control. Thus, under the 1909 Copyright Act, the Additional Action Comics No. 1

314270v1  02231.0811            FIRST AMENDED COUNTERCLAIMS

1    Materials were "works made for hire" and copyright therein was owned by DCI *ab*
2    *initio*.

3        133.    Because the Additional Action Comics No. 1 Materials were works
4    made for hire, the grant of U.S. Copyright therein cannot be terminated pursuant to
5    17 U.S.C. § 304 (c). As a result, DC Comics remains the sole owner of the
6    Additional Action Comics No. 1 Materials.

7        134.    On information and belief, plaintiffs deny DC Comics' contentions
8    and/or the legal effect ascribed thereto as set forth in paragraphs 106 - 133 above.
9    Accordingly, an actual controversy has arisen and now exists between
10   Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

11       135.    A justiciable controversy exists concerning the above issues and a
12   judicial declaration is necessary and appropriate to determine the parties'
13   respective rights with regard thereto.

14               **SIXTH ALTERNATIVE COUNTERCLAIM FOR**
15          **DECLARATION REGARDING THE PRINCIPLES**
16             **TO BE APPLIED IN AN ACCOUNTING**

17       136.    DC Comics repeats and realleges paragraphs 1 - 65 and 106 - 135
18   above as if fully set forth herein.

19       137.    DC Comics contends that in the event the Superman Notices and/or
20   the Superboy Notice were deemed valid and effective, any accounting to which the
21   Siegels would be entitled relating to Superman (including its derivative work
22   Superboy, collectively for this Counterclaim "Superman") would be subject to the
23   following limitations and reductions:

24           a.    The Siegels would not be entitled to any revenues derived from
25              exploitation of Superman outside of the United States because
26              termination pursuant to 17 U.S.C. § 304 (c) cannot affect any grant of
27              non-United States copyrights. 17 U.S.C. § 304 (c) (6) (E).

28

314270v1 02231.0811        FIRST AMENDED COUNTERCLAIMS    **044**

b. The Siegels would not be entitled to any revenues derived from exploitation of the Superman Derivative Works and the Superboy Derivative Works.  17 U.S.C. § 304 (c) (6) (A).

c. Any accounting of profits for exploitation of Superman would be reduced to account for the value of the appearance of Superman based upon the Siegels' failure to terminate the Superman Ads.

d. Any accounting of recoverable profits for exploitation of Superman would be reduced to that portion of such profits that are attributable to the copyrightable elements from Action Comics No. 1 less the Additional Action Comics No. 1 Materials (if any), actually present in the Superman works subject to accounting.

e. Any accounting of recoverable profits would be limited to profits of DC Comics, the sole owner of rights under any purportedly terminated grants and the sole owner of copyright in Action Comics No. 1, and the Siegels would not be entitled to any share of revenues earned by any third party licensees of DC Comics, including but not limited to, any of the other defendants.

f. The Siegels would not be entitled to any accounting for profits attributable to DC Comics' continuing exercise of its rights to use all other rights other than rights under copyright with respect to Superman and Superboy, including but not limited to, any trademark rights.  As a result, any accounting of profits would be further reduced by the value in Superman and the Superman Marks that have been built up by DC Comics and its predecessors over the last six decades by virtue of, *inter alia*, the Post Action Comics No. 1 Works and Elements, and the Superman Marks

g. Any accounting of profits would be further reduced by additional factors, including but not limited to, DC Comics' direct and indirect

35

1    expenses, taxes, and DC Comics' independent role as a publisher of

2    Superman.

3        h.  Subject to all reductions aforesaid and otherwise determined by the

4           Court to be applicable, the Siegels would be entitled to an accounting

5           of only one-half of the copyright co-owner's profits.

6        138.  On information and belief, plaintiffs deny DC Comics' contentions

7    and/or the legal effect ascribed thereto as set forth above.  Accordingly, an actual

8    controversy has arisen and now exists between Plaintiffs/Counterclaim Defendants

9    and DC Comics as to the above issues.

10        139.  A justiciable controversy exists concerning the above issues and a

11    judicial declaration is necessary and appropriate to determine the parties'

12    respective rights with regard thereto.

13        WHEREFORE, DC Comics demands judgment as follows:

14        1.  Declaring that the Superman Notices and the Superboy Notice are

15    ineffective for one or more of the reasons set forth in DC Comics' First

16    Counterclaim;

17        2.  In the event that the Superman Notices and/or the Superboy Notice

18    are deemed effective, for damages according to proof at trial on DC Comics' Third

19    Alternative Counterclaim;

20        3.  In the event that the Superman Notices and/or the Superboy Notice

21    are deemed effective, declaring on DC Comics' Fourth Alternative Counterclaim

22    that, pursuant to the Agreement:

23           a.  Plaintiffs/Counterclaim Defendants have transferred or are

24    contractually obligated to transfer to DC Comics, worldwide and in perpetuity, any

25    and all rights, title, and interest, including all United States copyrights, which they

26    may have in the Superman Works;

27           b.  In the event that Plaintiffs/Counterclaim Defendants are

28    adjudged not to have transferred or not to be contractually obligated to transfer to

1  DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

2  United States copyrights, which they may have in the Superman Works, then the

3  remaining terms of the Agreement are valid and enforceable and

4  Plaintiffs/Counterclaim Defendants are not entitled to any compensation for any

5  past, present, or future exploitation of the Superman Works by or upon license from

6  DC Comics other than pursuant to the Financial Terms; and

7          c.    In the event that Plaintiffs/Counterclaim Defendants are

8  adjudged not to have transferred or not to be contractually obligated to transfer to

9  DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

10  United States copyrights, which they may have in the Superman Works, then

11  Plaintiffs/Counterclaim Defendants nevertheless are not entitled to license or

12  otherwise exploit the Superman Works in any manner;

13       4.    In the event that the Superman Notices and/or the Superboy Notice

14  are deemed effective, and DC Comics is not granted the relief sought on its Fourth

15  Alternative Counterclaim, declaring that the scope and effect of the Superman

16  Notices and the Superboy Notice are limited as set forth in DC Comics' Fifth

17  Alternative Counterclaim;

18       5.    In the event that the Superman Notices and/or the Superboy Notice

19  are deemed effective, and DC Comics is not granted the relief sought on its Fourth

20  Alternative Counterclaim, declaring that any accounting to which

21  Plaintiffs/Counterclaim Defendants may be entitled will be limited by all

22  applicable principles, including but not limited to, those set forth in DC Comics'

23  Sixth Alternative Counterclaim;

24       6.    Awarding DC Comics its costs and reasonably attorneys' fees

25  incurred in connection with DC Comics' defenses and claims herein seeking

26  declarations with respect to copyright ownership; and

27

28

314270v1 02231.0811     FIRST AMENDED COUNTERCLAIMS

1   DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

2   United States copyrights, which they may have in the Superman Works, then the

3   remaining terms of the Agreement are valid and enforceable and

4   Plaintiffs/Counterclaim Defendants are not entitled to any compensation for any

5   past, present, or future exploitation of the Superman Works by or upon license from

6   DC Comics other than pursuant to the Financial Terms; and

7             c.      In the event that Plaintiffs/Counterclaim Defendants are

8   adjudged not to have transferred or not to be contractually obligated to transfer to

9   DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

10  United States copyrights, which they may have in the Superman Works, then

11  Plaintiffs/Counterclaim Defendants nevertheless are not entitled to license or

12  otherwise exploit the Superman Works in any manner;

13        4.      In the event that the Superman Notices and/or the Superboy Notice

14  are deemed effective, and DC Comics is not granted the relief sought on its Fourth

15  Alternative Counterclaim, declaring that the scope and effect of the Superman

16  Notices and the Superboy Notice are limited as set forth in DC Comics' Fifth

17  Alternative Counterclaim;

18        5.      In the event that the Superman Notices and/or the Superboy Notice

19  are deemed effective, and DC Comics is not granted the relief sought on its Fourth

20  Alternative Counterclaim, declaring that any accounting to which

21  Plaintiffs/Counterclaim Defendants may be entitled will be limited by all

22  applicable principles, including but not limited to, those set forth in DC Comics'

23  Sixth Alternative Counterclaim;

24        6.      Awarding DC Comics its costs and reasonably attorneys' fees

25  incurred in connection with DC Comics' defenses and claims herein seeking

26  declarations with respect to copyright ownership; and

27

28

314270v1 02231.0811              FIRST AMENDED COUNTERCLAIMS

1         7.    Awarding DC Comics such other and further relief as may be just.

2

3    DATED:    October 14, 2005

4                       FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                   Roger L. Zissu

5                       James D. Weinberger

6                                 -and-

7                       WEISSMANN WOLFF BERGMAN
                   COLEMAN GRODIN & EVALL LLC

8                       Michael Bergman
                   David L. Burg

9                       Adam Hagen

10                                -and-

11                      PERKINS LAW OFFICE, P.C.
                   Patrick T. Perkins

12

13                      By:_____

14                         David L. Burg

15                      Attorneys for Defendants Warner Bros.
                   Entertainment Inc. and Time Warner Inc., and

16                      Defendant and Counterclaimant DC Comics

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COUNTERCLAIMS    **049**

PROOF OF SERVICE
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF LOS ANGELES                  )

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9665 Wilshire Blvd, Suite 900, Beverly Hills, CA 90212. On the date shown below, I served the foregoing document described as **FIRST AMENDED COUNTERCLAIMS** on the interested parties in said action9, by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Marc Toberoff
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067

**XX**  **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___  **(FACSIMILE SERVICE)** I caused such document to be transmitted via facsimile to the offices of the addressees at the numbers listed above.

___  **(BY FEDERAL EXPRESS)** I caused a copy of such document(s) to be delivered to the offices of the addressee(s) via Federal Express, next business day delivery service.

Executed on **October 17, 2005**, at Beverly Hills, California.

___  **STATE**     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**XX**  **FEDERAL**     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Adrienne Crayton-Sarpy

# EXHIBIT C



# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION |
| --- |
| 8Dec03 |

| VOLUME | DOC. NO. |
| --- | --- |
| 3505 | 773 |

| VOLUME | DOC. NO. |
| --- | --- |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

**64**

C-762    JANUARY 2004 — 4,000



**RECORDED DOCUMENTS**                          **FL-10A**

**DATE:**  March 12, 2004

IP Worldwide
9595 Wilshire Blvd. Suite 811
Beverly Hills, CA  90212

ATTN:  MARC TOBEROFF

We have recorded the enclosed document(s) in the official records of the Copyright Office:

| VOLUME | 3505 |
|---|---|
| DOC. NO. | 773-774 |

The recording fee has been handled as follows:

| RECEIVED | $ |
|---|---|
| APPLIED | $ |
| REFUNDED (under separate cover) | $ |
| CHARGED TO YOUR DEPOSIT ACCOUNT | $ |

Sincerely yours,

Register of Copyrights

ENCL(S):
DOC(S):   2

Library of Congress
U.S. Copyright Office
101 Independence Ave, SE
Washington, DC 20559-6000
www.copyright.gov

**63**

FL-10A  01/2004: 12,000      **053**

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000.

**DOCUMENT COVER SHEET**
**For Recordation of Documents**
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)                    DEC 0 8 2003

| Month | Day | Year |
|-------|-----|------|

Volume _3505_ Page _773_

Volume _____ Page _____

FUNDS RECEIVED

Do not write above this line.

**To the Register of Copyrights:**

*Please record the accompanying original document or copy
thereof.*

FOR OFFICE USE ONLY

**1** Name of the party or parties to the document spelled as they
appear in the document (List up to the first three)

Time Warner Inc.

Time Warner

Warner Bros. Entertainment Inc.

**2** Date of execution and/or
effective date of the
accompanying document    Dec. 1, 2003
                         (month)  (day)  (year)

**3** Completeness of document
☒ Document is complete by its own terms.
☐ Document is not complete. Record "as is."

**4** Description of document
☐ Transfer of Copyright
☐ Security Interest
☐ Change of Name of Owner
☒ Termination of Transfer(s) (Section 304)
☐ Shareware
☐ Life, Identity, Death Statement [Section 302]
☐ Transfer of Mask Works
☐ Other _____
_____
_____

**5** Title of first work
as given in the
document          "Superman"

**6** Total number
of titles
in document    _8_

**7** Amount of fee
calculated
$ 100

**8** Fee
enclosed
☒ Check
☐ Money Order

Fee authorized to be charged to :
☐ Copyright Office
Deposit Account number _____

Account name _____

**9** Affirmation*: I hereby affirm to the Copyright Office that the
information given on this form is a true and correct representation
of the accompanying document. This affirmation will not suffice as
a certification of a photocopy signature on the document.
(Affirmation *must* be signed even if you are also signing Space
10.)

Signature _____
Date 12/1/03
(310) 246-3100    (310) 246-3101
Phone Number          Fax Number

**10** Certification*: Complete this certification in addition to the Affirma-
tion if a photocopy of the original signed document is substituted for
a document bearing the actual signature.
NOTE: This space *may not* be used for an official certification.
I certify under penalty of perjury under the laws of the United
States of America that the accompanying document is a true copy of
the original document.

Signature _____
IP Worldwide/Estate of Joseph Shuste
Duly Authorized Agent of:
12/1/03
Date

Recordation
will be mailed
in window
envelope to
this address:

Name▼
IP Worldwide/Marc Toberoff, Esq.

Number/Street/Apt▼
9595 Wilshire Blvd., Suite 811

City/State/ZIP▼
Beverly Hills, CA 90212

YOU MUST:
• Complete all necessary spaces
• Sign your Cover Sheet in Space 9
SEND ALL 3 ELEMENTS TOGETHER:
1. Two copies of the Document Cover Sheet
2. Check/money order payable to *Register
of Copyrights*
3. Document
MAIL TO:
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue
Washington, D.C. 20559-6

Fees are subject to
change. For current
fees, check the
Copyright Office
website at
www.copyright.gov,
write the Copyright
Office, or call
(202) 707-3000.

**65**    054

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U.S.C. §1001.

Rev: June 2002—20,000    Web Rev: June 2002    ♲ Printed on recycled paper    U.S. Government Printing Office: 2000-461-113/20,021

V3505 D773

# NOTICE OF TERMINATION OF TRANSFER
## COVERING EXTENDED COPYRIGHT RENEWAL TERM
## OF "SUPERMAN"

To:  Time Warner Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Richard D. Parsons
Chief Executive Officer

Time Warner
Entertainment Company, L.P.
75 Rockefeller Plaza
New York, NY 10019
Attn: Barry M. Meyer
Chairman & C.E.O.

Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn:  John A. Schulman
V.P & General Counsel

Warner Bros. Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Communications Inc.
c/o Time Warner, Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Paul T. Cappuccio
E.V.P. & General Counsel

Warner Bros. Television
4000 Warner Boulevard
Burbank, CA 91522
Attn: Peter Roth, President

Warner Music Group
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O.

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn:  Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen, President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn:  Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn:  Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn:  Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn:  Paul Levitz, E.V.P. & Publisher

V3505 D773  Page 1

66

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co.

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr. Chairman

Marvel Entertainment Group, Inc.
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O.

Golden Books Publishing
1540 Broadway ____
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group, (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

V3~J5 D773  Page 2

**67**

056

PLEASE TAKE NOTICE that pursuant to Section 304(d) of the United States Copyright Act (17 U.S.C. §304(d)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. §201.10, the undersigned Mark Warren Peary, being the person entitled to terminate transfers pursuant to said statutory provisions, hereby terminates the grant of the transfer of renewal copyright(s) (to the extent of author Joseph Shuster's ownership share of the renewal copyright(s)) in and to the copyrighted work(s) entitled "SUPERMAN" made in those certain agreements all as identified below, and the undersigned sets forth in connection therewith the following:

1.    The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows: Time Warner Inc., 75 Rockefeller Plaza, New York, NY 10019, Attn: Richard D. Parsons, Chief Executive Officer; Time Warner Entertainment Company, L.P., 75 Rockefeller Plaza, New York, NY 10019, Attn: Barry M. Meyer, Chairman & C.E.O.; Warner Bros. Entertainment Inc., 4000 Warner Boulevard, Burbank, CA 91522, Attn: John A. Schulman, V.P. & General Counsel; Warner Bros. Inc., 4000 Warner Boulevard, Burbank, CA 91522, Attn: John A. Schulman, V.P. & General Counsel; Warner Communications Inc., c/o Time Warner, Inc., 75 Rockefeller Plaza, New York, NY 10019, Attn: Paul T. Cappucio, E.V.P. & General Counsel; Warner Bros. Television, 4000 Warner Boulevard, Burbank, CA 91522, Attn: Peter Roth, President; Warner Music Group, 75 Rockefeller Plaza, New York, NY 10019, Attn: Roger Ames, Chairman & C.E.O.; Warner Bros. Worldwide Consumer Products, 4000 Warner Boulevard, Burbank, CA 91522, Attn: Dan Romanelli, President; Warner Publisher Services, 135 W. 50th Street, 7th Floor, New York, N.Y. 10020, Attn: Rich Jacobsen, President; Time Warner Book Group, Inc., 1271 Avenue of

3

V3-~-~3 D773  Page 3

**68**    **057**

the Americas, New York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; Warner

Books, Inc., 1271 Avenue of the Americas, New York, NY 10020, Attn: Laurence J.

Kirshbaum, C.E.O.; Little, Brown, and Company, 1271 Avenue of the Americas, New

York, NY 10020, Attn: Laurence J. Kirshbaum, C.E.O.; DC Comics Inc., 1700

Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levitz, Executive V.P. &

Publisher; DC Comics, A General Partnership, 1700 Broadway, 7th Floor, New York, NY

10019, Attn: Paul Levitz, Executive V.P. & Publisher; DC Direct, c/o DC Comics, 1700

Broadway, 7th Floor, New York, NY 10019, Attn: Paul Levtiz, E.V.P. & Publisher; Milton

Bradley Co., Division of Hasbro, Inc., 433 Shaker Road, East Longmeadow, MA 01028,

Attn: David E. Wilson, President; Hasbro, Inc., 1027 Newport Ave., Pawtucket, RI

02861, Attn: Alan Hassenfeld, Chief Executive Officer; Wildstorm Productions, 888

Prospect Street, Suite 240, La Jolla, CA 92037, Attn: Jim Lee, Editor & Director;

Wildstorm Productions, c/o DC Comics, 1700 Broadway, 7th Floor, New York, NY

10019, Attn: Paul Levitz, President & Publisher; Dark Horse Publications, 10956 S.E.

Main St., Milwaukie, OR 97222, Attn: Michael Richardson, President; Cantharus

Productions, N.V., 8965 Bay Cove Ct., Orlando, FL 32819, Attn: Ilya Salkind; Ilya

Salkind and Pierre Spengler, 12 Chiswick Lane, London W4 2JE, England, Attn: Albion

Gee, Esq., Albion Gee & Co.; Hallmark Entertainment, Inc., 1325 Avenue of the

Americas, 21st Floor, New York, NY 10019, Attn: Robert Halmi, Jr., Chairman; Marvel

Entertainment Group, Inc., 10 East 40th Street, 9th Floor, New York, NY 10016, Attn: F.

Peter Cuneo, President & C.E.O.; Golden Books Publishing, 1540 Broadway, New

York, NY 10036, Attn: Amy Jarashow, Associate Publisher; Random House Golden

Books for Young Readers, 1540 Broadway, New York, NY 10036, Attn: Kate Kilmo,

Vice President & Publisher; Random House, Inc., 1745 Broadway, New York, NY

V3505 D773 Page 4

10019, Attn: Katherine J. Trager, Senior V.P. & General Counsel; Inkworks, 4320 Delta

Lake Drive, Raleigh, NC 27612, Attn: Allan Caplan, President & C.E.O.; Penguin Group

(USA) Inc., 375 Hudson Street, New York, NY 10014, Attn: David Shanks, C.E.O.; DK

Publishing, Inc., 375 Hudson Street, New York, NY 10014, Attn: Christopher Davis,

Publisher; Scholastic, Inc., 557 Broadway, New York, NY 10012, Attn: Richard

Robinson, Chairman & C.E.O.  Pursuant to 37 C.F.R. Section 201.10(d), service of this

notice is being made by first class mail, and additionally service of this notice is being

made by certified mail, return receipt requested, to the above grantees or successors at

the addresses shown.


    2.    The works (individually, "Work;" collectively, the "Works") to which this

Notice of Termination applies are as follows[1]: The title of the original copyrighted Work

to which this Notice of Termination applies is SUPERMAN, an illustrated comic book

story constituting a front cover and pages 1-13, inclusive, in the body of Action Comics,

Vol. 1, No. 1, June, 1938 issue, which was published on April 18, 1938. This Work was

registered for copyright under registration No. B379787 and copyright was originally

---

[1] This Notice of Termination applies as well to each and every element of each Work, including without limitation, the story or stories, character or characters, the interplay of such characters, theme or themes, settings or locales, and includes, but is not limited to, Superman, his origins and escape as an infant to Earth in a rocket ship, his super strength, his invulnerability (bullets bounce off his chest and he's impervious to fire), his super speed, his ability to leap great distances in a single bound, his telescopic vision, his super hearing and sense of smell, his sense of humor, his clean-cut good looks, his high morals, ethics and compassion, his mission as a crime fighter and as a champion of the underdog, his stylized costume and cape, the diamond shaped "S" insignia on his chest, his secret identity / alter ego as the mild mannered bespectacled newspaper reporter, Clark Kent, the feisty and attractive female reporter love interest, Lois Lane, the love triangle between Superman, Lois Lane and Clark Kent, Clark Kent's boss / newspaper Editor (a.k.a. Perry White), the Daily Planet newspaper (f.k.a. the Daily Star) where Clark Kent, Lois Lane and the Editor work, the great skyscraper metropolis where these characters live (a.k.a. Metropolis), Superman's scientist father (a.k.a. Jor L) and Superman's birthplace --a highly advanced but doomed distant planet (a.k.a. Krypton).

secured in this Work as of its April 18, 1938 publication date. This Work was written by

Jerome Siegel and illustrated by Joseph Shuster.  Renewal of the copyright in and to

this Work was made on June 1, 1965, in the name of National Periodical Publications,

Inc. claiming as proprietor of copyright, under renewal registration No. R362188.  This

Work was based upon, incorporated, and constituted a slightly revised version of, the

following Works to which this Notice of Termination also applies: twenty-four days (i.e.,

four six day weeks) of previously unpublished SUPERMAN newspaper comic strips,

created c. 1934, written by Jerome Siegel and illustrated by Joseph Shuster.[2] The

remaining Works to which this Notice of Termination applies are:

| Title | Name of Author | Date Copyright Secured | Copyright  Reg. No. |
|---|---|---|---|
| SUPERMAN story in comic book form | Jerome Siegel Joseph Shuster | Work created c.1933 | N/A[3] |

_____

[2] In Siegel and Shuster v. National Comics Pub., Inc. et al., the court found that Jerome Siegel and Joseph Shuster were "the originators and authors of the cartoon character Superman and of the title Superman and first created cartoon material in which said character and title first appeared in 1934...," and further found that this material as incorporated in Action Comics No. 1 constituted:  "the formula for the continuing SUPERMAN series to come. It depicted and narrated the origin of the character SUPERMAN, and contained a complete delineation of the pictorial representation of SUPERMAN, of his habits and character, of the superhuman powers and attributes with which SUPERMAN was endowed and of the sphere of public good which SUPERMAN exploits were to enhance." Findings of Fact and Conclusions of Law by Referee J. Addison Young, ¶¶ 8, 22 (November 1, 1947); See also Siegel and Shuster v. National Comics Pub., Inc. et al., Opinion of Referee J. Addison Young, page 9 ("[the aforementioned material] certainly contained the full delineation of the character Superman and though the story or continuity might vary in the future from time to time, it did, I believe constitute a formula for the continuing series to come..."). In Siegel v. National Periodical Publications, Inc, the Second Circuit Court of Appeals reversed the District Court's determination that Action Comics No. 1 was a work-for-hire and held: "Superman and his miraculous powers were completely developed long before the employment relationship was instituted. The record indicates that the revisions directed by the defendants were simply to accomodate Superman to a magazine format." 508 F.2d 909, 914 (2nd Circuit 1974).

[3] The second and third Works listed in this table as well as the above-referenced 24 days of previously unpublished SUPERMAN newspaper comic strips were first published in a somewhat revised form on April 18, 1938 as Action Comics, Vol. 1, No. 1, June, 1938, which was registered for copyright under registration No. B379787 and renewed under registration No. R362188.

6

V3505 D773  Page 6

| Title | Name of Author | Date Copyright Secured | Copyright Reg. No. |
|---|---|---|---|
| 15 SUPERMAN daily comic strips (12 strips and 3 scripts) | Jerome Siegel Joseph Shuster | Work created c.1934 | N/A |
| Action Comics #2 [4] | Jerome Siegel Joseph Shuster | May 25, 1938 | B379788 |
| Action Comics #3 | Jerome Siegel Joseph Shuster | June 25, 1938 | B385466 |
| Action Comics #4 | Jerome Siegel Joseph Shuster | July 25, 1938 | B387907 |
| Action Comics #5 | Jerome Siegel Joseph Shuster | August 25, 1938 | B394784 |
| Action Comics # 6 | Jerome Siegel Joseph Shuster | September 26, 1938 | B394866 |
| Action Comics # 7 | Jerome Siegel Joseph Shuster | October 25, 1938 | B399214 |

3.    This Notice of Termination applies to the following grants, assignments, transfers and/or agreements to the extent each grants, transfers or assigns the renewal copyright (or any interest in or to the renewal copyright) to any Work identified hereinabove:

(a)    A one page agreement between Detective Comics, Inc., on the one hand and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about March 1, 1938;

---

[4] Action Comics Nos. 2-6 were reprinted in Superman Nos. 1 and 3 (Copyright Reg. Nos. AA299871 and B443035, respectively) to which this Notice of Termination, therefore, also applies.

V3505 D7773   Page 7

72   061

(b)     A two page agreement of purported employment between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joe Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 4, 1937;

(c)     A three page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(d)     A three page letter agreement between Detective Comics, Inc. and The McClure Newspaper Syndicate, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about September 22, 1938;

(e)     A two page letter agreement between Detective Comics, Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 19, 1939;

(f)     A seven page agreement or stipulation between National Comics Publications, Inc., Independent News Co., Inc., The McClure Newspaper Syndicate, Harry Donenfeld, Jacob S. Liebowitz, Paul H. Sampliner and Wayne Boring, on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about May 19, 1948;

(g)     A twelve page letter agreement (with additional pages for exhibits) between Warner Communications Inc., on the one hand, and Jerome Siegel and Joseph Shuster, co-authors of the comic book/strip SUPERMAN, on the other, executed on or about December 23, 1975.

4.     The effective date of termination shall be October 26, 2013.

73     062

5.    No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304 (c) of the United States Copyright Act (17 U.S.C. §304(c)).

6.    Joseph Shuster died on July 30, 1992. There is no living widow, child or grandchild of Mr. Shuster. The undersigned, Mark Warren Peary is the Executor of the Estate of Joseph Shuster; and, as such, is the person entitled to exercise Joseph Shuster's termination interest pursuant to 17 U.S.C. § 304 (d), incorporating without limitation 17 U.S.C. § 304 (c)(2)(D), as to the grants of the transfers described herein. To the best knowledge and belief of the undersigned, this notice has been signed by all persons whose signature is necessary to terminate said grants under Section 304(d) of Title 17, United States Code.

Dated: November ⅂ , 2003

*Mark Warren Peary*

Mark Warren Peary
Executor of the Estate of Joseph Shuster
c/o Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

V3505 D773 Page 9

74

063

## CERTIFICATE OF INVESTIGATION

I hereby certify that before serving the foregoing document described as NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL TERM OF "SUPERMAN", and pursuant to 37 C.F.R. Section 201.10(d), I caused a reasonable investigation to be made as to the current ownership of the rights being terminated, including a search of the records in the U.S. Copyright Office.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _10th_ day of November, 2003, at Los Angeles, California.


Marc Toberoff, Esq.
9595 Wilshire Boulevard, Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

V3ou5 D773 Page 10

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL

TERM OF "SUPERMAN" to be served this *10th* day of November, 2003, by First Class

Mail, postage prepaid, upon the following:

To: Time Warner Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Richard D. Parsons
Chief Executive Officer

Time Warner
Entertainment Company, L.P.
75 Rockefeller Plaza
New York, NY 10019
Attn: Barry M. Meyer
Chairman & C.E.O.

Warner Bros. Entertainment Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Bros. Inc.
4000 Warner Boulevard
Burbank, CA 91522
Attn: John A. Schulman
V.P. & General Counsel

Warner Communications Inc.
c/o Time Warner, Inc.
75 Rockefeller Plaza
New York, NY 10019
Attn: Paul T. Cappucio
E.V.P. & General Counsel

Warner Bros. Television
4000 Warner Boulevard
Burbank, CA 91522
Attn: Peter Roth, President

Warner Music Group.
75 Rockefeller Plaza
New York, NY 10019
Attn: Roger Ames
Chairman & C.E.O

Warner Bros. Worldwide
Consumer Products
4000 Warner Boulevard
Burbank, CA 91522
Attn: Dan Romanelli, President

Warner Publisher Services, Inc.
135 W. 50th Street, 7th Floor
New York, NY 10020
Attn: Rich Jacobsen
President

Time Warner Book Group, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Warner Books, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

Little, Brown and Company, Inc.
1271 Avenue of the Americas
New York, NY 10020
Attn: Laurence J. Kirshbaum, CEO

DC Comics, Inc.
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

V3ɔʋ5 D773  Page 11

11

76      065

DC Comics, a General Partnership
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
Executive V.P. & Publisher

DC Direct
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
E.V.P. & Publisher

Milton Bradley Co.
Division of Hasbro Inc.
433 Shaker Road
East Longmeadow, MA 01028
Attn: David E. Wilson, President

Hasbro, Inc.
1027 Newport Avenue
Pawtucket, RI 02861
Attn: Alan Hassenfeld
Chief Executive Officer

Wildstorm Productions
888 Prospect Street, Suite 240
La Jolla, CA 92037
Attn: Jim Lee
Editor & Director

Wildstorm Productions
c/o DC Comics
1700 Broadway, 7th Floor
New York, NY 10019
Attn: Paul Levitz
President & Publisher

Dark Horse Publications
10956 S.E. Main St.
Milwaukie, OR 97222
Attn: Michael Richardson,
President

Cantharus Productions, N.V.
8965 Bay Cove Ct.
Orlando, FL 32819
Attn: Ilya Salkind

Ilya Salkind and Pierre Spengler.
12 Chiswick Lane
London W4 2JE, England
Attn: Albion Gee, Esq.
Albion Gee & Co

Hallmark Entertainment, Inc.
1325 Avenue of the Americas
21st Floor
New York, NY 10019
Attn: Robert Halmi, Jr.
Chairman

Marvel Entertainment Group, Inc..
10 East 40th Street, 9th Floor
New York, NY 10016
Attn: F. Peter Cuneo
President & C.E.O

Golden Books Publishing
1540 Broadway
New York, NY 10036
Attn: Amy Jarashow
Associate Publisher

Random House Golden Books for
Young Readers
1540 Broadway
New York, NY 10036
Attn: Kate Klimo
Vice President & Publisher

Random House, Inc.
1745 Broadway
New York, NY 10019
Attn: Katherine J. Trager
Senior V.P. & General Counsel

Inkworks
4320 Delta Lake Dr.
Raleigh, NC 27612
Attn: Allan Caplan
President & CEO

Penguin Group (USA) Inc.
375 Hudson Street
New York, NY 10014
Attn: David Shanks, C.E.O.

V3505 D773   Page 12

**77**

066

DK Publishing, Inc.
375 Hudson Street
New York, NY 10014
Attn: Christopher Davis, Publisher

Scholastic, Inc.
557 Broadway
New York, NY 10012
Attn: Richard Robinson
Chairman & CEO

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of November, 2003, at Los Angeles, California.

Marc Toberoff, Esq.
9595 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212

Counsel for the Estate of Joseph Shuster

V3505 D773 Page 13

78   067

13