1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Nicholas F Daum (236155)
  ndaum@kbkfirm.com
Nathalie E. Cohen (258222)
  ncohen@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

O'MELVENY & MYERS LLP
Daniel M. Petrocelli (097802)
  dpetrocelli@omm.com
Matthew T. Kline (211640)
  mkline@omm.com
Cassandra L. Seto (246608)
  cseto@omm.com
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Plaintiff DC Comics

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics,<br><br>                Plaintiff,<br><br>          v.<br><br>PACIFIC PICTURES<br>CORPORATION, IP WORLDWIDE,<br>LLC, IPW, LLC, MARC TOBEROFF,<br>an individual, MARK WARREN<br>PEARY, as personal representative of<br>the ESTATE OF JOSEPH SHUSTER,<br>JOANNE SIEGEL, an individual,<br>LAURA SIEGEL LARSON, an<br>individual, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. CV 10-3633 ODW(RZx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION CONCERNING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**<br><br>Hon. Otis D Wright, II<br><br>Date:    September 20, 2010<br>Time:   10:00 a.m.<br><br>Complaint Filed:    May 14, 2010 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Contents

DEFENDANTS' PORTION .................................................................................. 1

Introduction ...................................................................................................... 1

PLAINTIFF'S PORTION ................................................................................. 4

DC Comics' Introductory Statement ............................................................... 4

DEFENDANTS' PORTION .............................................................................. 7

I.        FACTUAL AND PROCEDURAL BACKGROUND............................ 7

A.        The Theft Of Privileged Documents ........................................... 7

B.        The Disclosure Of The Stolen Documents To The DC Defendants........ 8

C.        The DC Defendants' Improper Handling Of The Stolen Documents………......................................................................... 9

D.        The August 14, 2006 Discovery Order ...................................... 14

E.        The Judicial Proceedings That Led To The Compelled But Disputed Disclosure If The Cover Letter ................................... 16

F.        Judge Larson Rejects DC Defendants' Efforts To Exploit The Cover Letter In The *Siegel* Action, But DC Comics Persists In Its Effort To Benefit From The Theft ............................... 25

II. ARGUMENT ............................................................................................ 28

A.        A Protective Order Should Be Issued to Avoid the Risk of Prejudice and High Potential for Unfairness ............................. 28

B.        Judge Larson's Law Of The Case Decision May Well Be Reversed On Appeal ................................................................... 29

C.        The Federal Rules of Civil Procedure And The Supreme Court Recognize The Propriety Of Protective Orders To Ensure That The Right Of Appellate Review Of Contested Privilege Rulings Is Not Rendered Meaningless ............................................................................... 31

D.        Given The Clearly Unethical Conduct That Led To Disclosure In The First Place, A Protective Order Is Appropriate To Guard The Fair Administration Of Justice And Professional Ethics ................. 35

III. CONCLUSION......................................................................................... 39

PLAINTIFF'S PORTION ............................................................................... 40

I.        DC COMICS' POSITION ........................................................... 40

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1                                          i

A.          Magistrate Zarefsky Found In April 2007 That Warner Bros.
Acted Appropriately, And Defendants Long Ago Waived Any Right Or
Ability To Challenge That Ruling. ............................................................40

B.          Defendants Chose In 2009 To Make The Toberoff Timeline A
Public Document, They Repeatedly And Decisively Waived Any Privilege
Before Then, And They Cannot Complain Now About the Publication Of The
Document. 43

C.          All The Defendants—Including The Shusters—Waived Any And
All Rights In Connection With The Timeline. ..........................................47

D.          Judge Larson Rightly Ordered the Timeline Produced and Did
Not Misunderstand Magistrate Zarefsky's Order.....................................49

E.          There Is No Legal Basis For The Relief Defendants Seek. ..................54

     1.     Ninth Circuit Law Forbids The Motion Defendants Filed.........54

     2.     Not Only Were Any Privileges In The Timeline Waived,
            The Large Majority Of Its Contents Were Never
            Privileged. ....................................................................................58

F.          Conclusion ..............................................................................................62

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Pursuant to Local Rule 37-2, the parties submit the following joint stipulation

2  concerning Defendants' Motion for a Protective Order.

3  ### DEFENDANTS' PORTION

4  ### Introduction

5  Defendants[1] seek a protective order barring or staying discovery concerning a

6  document that was based upon and contains privileged and other confidential

7  information stolen from the law offices of defendant Marc Toberoff, and then

8  furnished by the thief (a lawyer and member of the California Bar) to the opposing

9  party in the midst of litigation in violation of his professional duties of

10  confidentiality and loyalty.  The document, titled "SUPERMAN – MARC

11  TOBEROFF TIMELINE" ("Cover Letter"), was an anonymous cover letter to the

12  General Counsel of Warner Bros. Entertainment Inc. ("Warner Bros.") and other

13  key executives, enclosing reams of documents, many of which were clearly

14  privileged.  The Cover Letter discusses and purports to disclose the contents of the

15  many privileged documents listed on the privilege logs of Joanne Siegel and Laura

16  Siegel Larson, respectively the widow and daughter of Jerry Siegel (collectively, the

17  "Siegels"), the estate of Jerry Siegel's co-author, Joseph Shuster and third parties.

18  The document containing such stolen information surfaced during related

19  litigation, with which the Court is familiar, concerning the statutory right of the

20  widow and daughter of Superman author Jerry Siegel to terminate his prior grants of

21  copyright ("*Siegel* Action").[2]  The document was the subject of extensive motion

22  practice in the *Siegel* Action, but on December 4, 2008, was ordered by Judge

---

23  [1] This motion is filed on behalf of Pacific Pictures Corporation, IP Worldwide,

24  LLC, IPW LLC, and Marc Toberoff.  Mark Warren Peary as personal representative of the Estate of Joseph Shuster, Joanne Siegel, and Laura Siegel Larson, join in this motion for

25  this protective order.  *See* Notice of Joinder, filed concurrently herewith.

26  [2] The *Siegel* Action, comprised of Nos. 04-8400 (ODW) (RZx) (Superman) and 04-

27  08776 (ODW) (RZx) (Superboy), has been pending in this district since 2004 and was recently transferred from the Hon. Stephen G. Larson (Ret.) to the Hon. Otis D. Wright, II.

28

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1                                    1
JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  Larson ( "December 4, 2008 Order") to be disclosed to the Siegels' opponents,

2  including DC Comics ("DC") and its effective parent, Warner Bros. (collectively

3  "DC Defendants"), over the objection of the Siegels and Mr. Toberoff

4  ("Objectors").  However, Judge Larson rejected DC's request to use the Cover

5  Letter in taking discovery in the *Siegel* Action.  Now, however, DC seeks to actively

6  exploit the Cover Letter in this newly filed action (the "*Pacific Pictures* Action"),

7  and has gone so far as to attach the Cover Letter to its Complaint.

8          Due to the risk of serious prejudice that undermines the profession of law and

9  the administration of justice, as well as prejudice to the interests of non-parties to

10  the *Siegel* Action, the Court should issue a protective order prohibiting plaintiff DC

11  from taking discovery relating to the Cover Letter in the *Pacific Pictures* Action.

12          Judge Larson's December 4, 2008, Order in the *Siegel* Action that led to the

13  disclosure of the Cover Letter to the DC Defendants is not yet subject to appellate

14  review, but remains disputed because it was based on a misinterpretation of a prior

15  ruling of the Hon. Ralph Zarefsky, M.J., concerning the stolen documents enclosed

16  by the cover letter.  Under unanimous Supreme Court precedent, the December 4,

17  2008, Order was not a collateral order that could be immediately appealed, and any

18  appeal must await entry of a final judgment in the overall *Siegel* Action.  *Mohawk*

19  *Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009).  Given the potential prejudice

20  such delay could cause a party that has objected to disclosure of privileged

21  information, the *Mohawk* case makes clear that district courts have the power to

22  grant protective orders "to limit the spillover effects of disclosing sensitive

23  information" pending appellate review.  *Id.* at 608.

24          Judge Larson's misinterpretation of Magistrate Judge Zarefsky's ruling

25  resulted from confusion on two issues.  First, there was confusion between the terms

26  used to describe (a) the documents that had been stolen from Mr. Toberoff's law

27  office and delivered to Warner Bros. in the midst of the *Siegel* Action; and (b) the

28  Cover Letter, itself, enclosing those stolen documents, which purported to describe

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

2

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

them.  Both parties in the *Siegel* Action referred to the Cover Letter as a "cover letter" that was "contained with" the underlying documents.  As to the underlying documents themselves, the Siegels and Mr. Toberoff referred to them as "stolen documents," while the DC Defendants referred to them as "whistleblower documents."  In an effort to adopt a more "neutral" term, Magistrate Judge Zarefsky adopted the term, "escrow documents," making clear that his use of that term had the same meaning as the parties' terms, "stolen" or "whistleblower" documents.

However, Judge Larson misunderstood Magistrate Judge Zarefsky's use of the term "escrow documents," and mistakenly thought that it referred not just to the underlying stolen documents, but also to the Cover Letter that accompanied their improper transmission to Warner Bros.  Based upon this misunderstanding, Judge Larson ruled incorrectly that an April 30, 2007, order by Magistrate Judge Zarefsky (the "April 30, 2007, Order"), protecting from disclosure only those "escrow documents" listed on preexisting privilege logs, encompassed the Cover Letter, when that was simply not the case.  From that mistaken premise, Judge Larson further incorrectly deduced both that Magistrate Judge Zarefsky had ordered the Cover Letter produced and that such ruling had become "law of the case."

A second source of confusion related to the fact that the parties had agreed that neither side would include in privilege logs *post-litigation* documents.  Again, Judge Larson ruled that it was "law of the case" that stolen unlogged post-litigation documents must be produced, even though the April 30, 2007, Order, on which this "law of the case" ruling was based, had not addressed such documents because they were not at issue in the DC Defendants' motion giving rise to that order.

Judge Larson's "law of the case" decision will be the subject of an appeal once judgment enters in the *Siegel* Action.  To guard against prejudice, and consistent with the unanimous decision of the Supreme Court in *Mohawk Industries, Inc. v. Carpenter*, Defendants seek a protective order prohibiting plaintiff DC from taking discovery relating to the Cover Letter in this action, pending the Ninth

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

3

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  Circuit's determination of whether the December 4, 2008, Order requiring

2  disclosure of the Cover Letter in the *Siegel* Action was erroneous.

3  ### **PLAINTIFF'S PORTION**

4  ### **DC Comics' Introductory Statement**

5        Defendants' motion for a protective order precluding DC Comics' use of the

6  Toberoff Timeline in this case impermissibly seeks to relitigate matters already

7  decided in another case and is groundless in every other respect.  The motion is

8  particularly baseless given defendants' inexcusable and repeated failures to address

9  key rulings and segments of the relevant record in the related *Siegel* actions in which

10  this Magistrate and the District Court rejected the very same contentions defendants

11  advance again here.

12        To begin, defendants recklessly accuse in-house lawyers employed by Warner

13  Bros. of committing grave ethical violations in their handling of the Timeline.  Yet

14  in making these accusations, defendants fail to mention that on April 30, 2007—

15  *over three years ago*—Magistrate Zarefsky rejected this claim, stating that Warner

16  Bros.' lawyers "acted professionally [and] reasonably."  Declaration of Cassandra

17  Seto ("Seto Decl.") Ex. N at 177:3-4.  *Not once* in their 37-page motion do

18  defendants apprise the Court of this critical fact—much less address its impact.  Nor

19  do defendants discuss Judge Larson's ruling that defendants failed to lodge *any*

20  objection to the Magistrate's findings, thereby waiving any and all rights to later

21  dispute them in that case or otherwise.

22        Equally reckless is defendants' accusation that DC Comics wrongfully

23  published the Timeline in filing its complaint in this case.  In making this assertion,

24  defendants fail to disclose that 17 months ago, in March 2009, *defendants*

25  *themselves* agreed that the Timeline could be filed as Exhibit 1 to a public, joint-

26  discovery filing in the *Siegel* actions.  They also fail to mention that DC Comics

27  explicitly invited defendants in February 2009 to move for a protective order to seal

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1
4
JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  the document if they wished, but defendants declined to do so—again waiving any

2  claim of privilege and any basis for bringing this motion.

3      Defendants blame Judge Larson for "misunderstanding" the Magistrate's

4  rulings and improperly ordering production of the Timeline, claiming the Timeline

5  was not among the documents that Magistrate Zarefsky ordered to be listed on a

6  privilege log, and that DC Comics misled Judge Larson on this critical issue.  Judge

7  Larson rejected these very arguments.  Moreover, defendants' knowingly false

8  assertions are directly refuted by the declaration *defendants* filed in May 2007 in

9  response to the Magistrate's order.  The very first document that Marc Toberoff

10  listed in that critical declaration was the *Toberoff Timeline*.  Toberoff affirmatively

11  chose not to flag the Timeline as "privileged" or as a "post-litigation document"

12  allegedly entitled to protection as he did for many others in the list, and yet

13  defendants omit this material set of concessions from their brief.

14      Defendants also suggest that the Shusters and Siegels—as opposed to

15  Toberoff—are not bound by the Court's and Magistrate's rulings.  This, too, is

16  wrong.  The Siegels and Shusters had every opportunity to list the Timeline on

17  privilege logs that they were required to produce in 2006 and 2007, and they failed

18  to do so.  Defendants now seek to excuse those acts of waiver, claiming they were

19  under no obligation to list such documents because of an alleged agreement they had

20  with DC Comics.  Once again, defendants fail to disclose that Judge Larson

21  specifically rejected the very contention that such an agreement existed.  In addition,

22  the Siegels and Shusters (who shared the same counsel and asserted common-

23  interest privilege throughout the *Siegel* cases) further waived their rights in 2008 and

24  2009.  They knowingly waived any rights in the Timeline when they chose not to

25  seek a protective order following Judge Larson's order in December 2008 that the

26  Timeline be produced; and they did so again, in March 2009, when they filed no

27  motion to prevent the Timeline from being publicly filed and openly disclosed.

28  Defendants' motion never mentions these critical facts.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    Equally indefensible is defendants' suggestion that Judge Larson ruled the

2    Timeline could not be used or be subjected to discovery in other proceedings, such

3    as this one.  He held no such thing.  In a two-sentence pretrial scheduling order

4    concerning a 2009 alter-ego mini-trial, and in ruling on DC Comics' motion to

5    reopen discovery, Judge Larson stated in full:  "Discovery is complete.  Defendants'

6    motion to reopen discovery filed March 2, 2009 is DENIED."  Seto Decl. Ex. AA at

7    355:5-7.  Although defendants asked for an order barring DC Comics' use of the

8    Timeline in the *Siegel* litigation "or otherwise," Judge Larson declined to grant

9    either request.  And again, defendants omit these critical facts.

10    Defendants' motion is equally unwarranted on legal grounds.  Defendants

11    may not move for a protective order *in this case* concerning documents that Judge

12    Larson, in the *Siegel* actions, ordered them to produce.  As the Ninth Circuit has

13    clearly held, "a district court's power to control discovery does not extend to

14    material discovered in a separate action…."  *Kirshner v. Uniden Corp. of Am.*, 842

15    F.2d 1074, 1081 (9th Cir. 1988).  In a footnote, defendants seek to distinguish

16    *Kirshner*—but they cannot do so, and they cite to no case—none—in which a

17    protective order issued after such repeated and obvious acts of waiver, or after a

18    court held in the first case that the document at issue had to be produced.

19    Finally, defendants cite to no case (nor could they) justifying their entitlement

20    to a blanket and indiscriminate order barring all use of the Timeline.  Not only have

21    any privilege claims with respect to the document repeatedly been waived, but, as

22    shown below, virtually all of the Timeline's contents have *nothing* to do with

23    privilege or the provision of legal advice.  Instead, the Timeline recounts audacious

24    acts of business interference, illegal rights trafficking, breaches of confidentiality

25    agreements, and deceit by Toberoff to sever DC Comics' business relationship with

26    the Siegels and Shusters and cement his own.

27    In short, defendants' motion is improper and aimed at one purpose:  to

28    suppress highly probative evidence of wrongdoing by Toberoff that proves DC

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

6

1    Comics' claims in this case.  This is part of a broader suppression by defendants to

2    preclude all discovery by DC Comics, as addressed in DC Comics' concurrently

3    filed motion to initiate discovery.  Defendants' motion should be denied.

4    **DEFENDANTS' PORTION**

5    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

6    **A.    The Theft Of Privileged Documents**

7    Author Jerry Siegel and illustrator Joe Shuster co-created Superman in high

8    school.  Declaration of Nathalie E. Cohen ("Cohen Decl."), Ex. 1 (Summary

9    Judgment Order at 1).  Sadly, neither Jerry nor Joe was able during their lifetimes to

10   reap the fruits of their work.  Cohen Decl. Ex. 2 (New York Times Obituary).  On

11   January 1, 1978, the Copyright Act of 1976 came into effect, and with it, a new right

12   of authors and certain heirs to recapture their copyrights by statutorily terminating

13   improvident old copyright grants.  Congress' clear intent in enacting the termination

14   provisions was to benefit authors and their families, in recognition of the author's

15   then-unequal bargaining position.  *Classic Media, Inc. v. Mewborn*, 532 F.3d 978,

16   984 (9th Cir. 2008).  In 1997, the Siegels availed themselves of this federal right and

17   served notices of termination (the "Siegel Termination") on the DC Defendants

18   terminating Jerry Siegel's prior copyright grants to DC regarding Superman.  Cohen

19   Decl. Ex. 1 (Summary Judgment Order at 1-2, 20).  When DC contested the Siegel

20   Termination, the Siegels, represented by attorney Marc Toberoff, filed the Siegel

21   Action in 2004 for a declaration that their termination was valid, and an accounting

22   of their fair share of Superman profits as of April 16, 1999, the effective termination

23   date.  *Id.* at 23.

24   In 2005, an attorney, licensed to practice law in the State of California, took a

25   job in Mr. Toberoff's law office, where he had access to privileged and confidential

26   material relating to the Siegels, the heirs of Joe Shuster, and other clients of Mr.

27   Toberoff.  Cohen Decl. Ex. 3 (March 23, 2007, Declaration of Marc Toberoff

28   ("Toberoff Mar. 23, 2007, Decl."), ¶¶ 25-26), Ex. 4 (September 20, 2007,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  Declaration of Marc Toberoff ("Toberoff Sept. 20, 2007, Decl."), ¶¶ 7-8).  As an

2  attorney and a member of the California State Bar, the employee was bound by the

3  California Code of Professional Conduct, which imposes upon members of the State

4  Bar strict duties of loyalty and confidentiality.  California Rules of Professional

5  Conduct Rule 3-100 (duty of confidentiality); *id.* Rule 3-310 (avoiding

6  representation of adverse interests).

7        Using documents surreptitiously copied from Mr. Toberoff's client files, this

8  attorney approached the Siegels in November or December 2005, and attempted, by

9  falsely disparaging Mr. Toberoff, to get the Siegels to fire Mr. Toberoff and to hire

10  him instead.  Cohen Decl. Ex. 3 (Toberoff Mar. 23, 2007 Decl. ¶¶ 25-26), Ex. 4

11  (Toberoff Sept. 20, 2007, Decl. at ¶¶ 7-8).  Unpersuaded, the clients kept Mr.

12  Toberoff as counsel, and rejected the attorney's advances.  *Id.*

13  **B.**    **The Disclosure Of The Stolen Documents To The DC Defendants**

14        Sometime between December 2005 and June 2006, Warner Bros. received at

15  its headquarters in Burbank, California three sets of stolen documents, along with

16  the Cover Letter purporting to summarize the documents it enclosed.  *Compare*

17  Complaint Ex. A at Q0001 (Cover Letter referring to package as an "early holiday

18  gift") *with* Cohen Decl. Ex. 5 (March 26, 2007, Declaration of Wayne Smith

19  ("Smith Mar. 26, 2007, Decl."), ¶¶ 2-3) (stating that in June 2006 three near-

20  identical packages arrived at Warner Bros. in the mail, but that none of the

21  envelopes dating the disclosure were retained).

22        John Schulman, the General Counsel of Warner Bros., received one set of the

23  documents, and reviewed the Cover Letter.  Cohen Decl. Ex. 5 (Smith Mar. 26,

24  2007, Decl. ¶ 4).  Alan Horn, Warner Bros.' President and COO, and at least one

25  other high level executive also received the materials.  *Id.* at ¶ 2-3; Cohen Decl.

26  Ex. 3 (Toberoff Mar. 23, 2007, Decl. Ex. J at 1).  John Schulman acted not just for

27  Warner Bros., but also for DC with regard to the Siegels and Superman.  Cohen

28  Decl. Ex. 6 (November 10, 2006, Deposition of John Schulman at 95-97).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

8

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

**C.**    **The DC Defendants' Improper Handling Of The Stolen Documents**

According to the DC Defendants, Mr. Schulman called on Wayne Smith, Warner Bros.' Vice President, Senior Litigation and Chief Patent Counsel, to advise him on how to handle the receipt of the materials, and Mr. Smith conducted legal research.  Cohen Decl. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶¶ 2, 4, 5-6).  It was immediately apparent to Mr. Smith that amongst the materials were numerous attorney-client privileged communications between Mr. Toberoff and the Siegels and Shuster heirs, Jean Peavy (the sister of Joe Shuster) and Mark Warren Peary (Jean Peavy's son and the executor of Joe Shuster's estate) (together, the "Shusters"), respectively.  "[I]t was [also] apparent that the [] Documents came from Mr. Toberoff's files."  Cohen Decl. Ex. 7 (DC Defendants' portion of September 17, 2007, Joint Stipulation Re: Defendants' Motion to Compel Compliance with the Court's 4/30/07 Order and Motion for Sanctions at 6); *see also* Cohen Decl. Ex. 8 (redacted documents that were stamped, respectively, "Received Marc Toberoff May 28, 2003" (Q0090); and "Received Marc Toberoff May 30, 2003" (Q0096 and Q0105)).

The Cover Letter also purports to disclose clearly privileged communications involving the heirs and estate of Joe Shuster, none of whom were parties to the *Siegel* Action.  Complaint Ex. A at Q0003-Q0005.  Mr. Smith knew that the Cover Letter included matters unrelated to the *Siegel* Action.  Cohen Decl. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶ 12).

Mr. Smith's declaration on the topic does not suggest that Mr. Smith believed that the disclosure of the documents was inadvertent, as opposed to an intentionally malicious and unauthorized act.  *Cf.* Cohen Dec. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶ 3) (noting adversary "design" of cover letter).  Yet, in determining how to handle the materials, he researched the law on inadvertently disclosed privileged materials.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

9

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   *Id.* at ¶ 5.[3]  His declaration makes no mention of any effort on his part to research a

2   lawyer's obligations in handling privileged documents that were obviously stolen

3   from opposing counsel.[4]

4        Nor, apparently, did Mr. Smith research California law with respect to theft.

5   Under California Penal Code Section 485:

6        One who finds lost property under circumstances which give him
         knowledge of or means of inquiry as to the true owner, and who
7        appropriates such property to his own use, or to the use of another
         person not entitled thereto, without first making reasonable and just efforts
8        to find the owner and to restore the property to him, is guilty of theft.

9        Instead of researching these topics, Mr. Smith reviewed the topic of

10  inadvertent disclosure of privileged materials, including a binding ruling of the

11  California Court of Appeal that, in no uncertain terms, required him as a member of

12  the California State Bar to "immediately notify" the source of the privileged

13  material of the disclosure.  Cohen Decl. Ex. 5 (Smith Mar. 26, 2007 Decl. ¶ 6)

14  (noting Mr. Smith's review of *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th

15  644 (1999), which holds that an attorney who inadvertently receives privileged

16

17        [3] Obviously, neither Mr. Toberoff nor any of his clients had intentionally caused the
18  disclosure to Warner Bros.

19        [4] Not surprisingly, the law in this area guards privilege even more closely than in
    the case of inadvertent disclosure and restricts an attorney from even reviewing such
20  documents.  *See*, *e.g.*, *Burt Hill, Inc. v. Hassan*, 2010 U.S. Dist. LEXIS 7492, at *2–4,
    *30–33 (W.D. Pa. Jan. 29, 2010) (requiring the immediate return of privileged documents
21  intentionally sent to opposing counsel by an anonymous source, and prohibiting any use of
    those documents); *Knitting Fever, Inc. v. Coats Holding Ltd.*, 2005 U.S. Dist. LEXIS
22  28435, at *5–7, *10–11 (E.D.N.Y. 2005) (requiring plaintiff to immediately return
    defendants' confidential and privileged documents that were sent by unknown employee of
23  defendant); D.C. Bar Opinion 318 (attorney may not review document if (1) the privileged
    status is apparent on its face; (2) receiving counsel knows the document came from
24  someone who was not authorized to disclose it; and (3) receiving counsel does not have a
    reasonable basis to conclude that the opposing party waived the attorney-client privilege
25  with respect to such document) (available as of August 9, 2010 at
26  http://www.dcbar.org/for_lawyers/ ethics/legal_ethics /opinions/opinion318.cfm).  *See*
27  Cohen Decl. Ex. 9 (attaching same).

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

10

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1    documents "*shall immediately notify* the sender that he or she possesses material that

2    appears to be privileged." 70 Cal. App. 4th at 656-57 (emphasis added).[5]  Mr. Smith

3    knew that the safe course was to "contact opposing counsel and advise that the

4    documents had been received."  Cohen Decl. Ex. 5 (Smith Mar. 26, 2007 Decl. ¶ 6).

5    Despite this knowledge, he did not do so.  Cohen Decl. Ex. 3 (Toberoff Mar. 23,

6    2007, Decl. ¶¶ 8-10) (Mr. Toberoff was not informed of nature of documents for

7    nearly two weeks).

8        Instead, Mr. Smith called Mr. Schulman to advise him of the results of his

9    research.  Cohen Decl. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶ 7).  Mr. Smith then,

10   without notifying Mr. Toberoff, took the materials home, reviewed them, and

11   confirmed that they were comprised predominantly of privileged materials.  *Id.* at

12   ¶¶ 8-11.  Mr. Smith's review was so extensive that nearly three years after allegedly

13   first viewing the documents in June, 2006, he was able to submit a declaration

14   providing details regarding the substance of the stolen documents he had reviewed.

15   Cohen Decl. Ex. 10 (February 19, 2009, Declaration of Wayne Smith in Support of

16   Defendants' Motion to Reopen Discovery ¶ 5) (providing detailed recollection of

17   contents of underlying privileged communication from the Gang Tyre law firm).  It

18   also appears that one of the purposes of his review was not just to ascertain whether

19   the documents appeared privileged on their face, but also to analyze whether the

20   matters discussed in the stolen documents related to issues as to which Warner Bros.

21   might argue that the attorney-client privilege had been waived.  *Id.* (describing pile

22

23       [5] *See also Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 810 (2007) (explaining
     that such immediate notification has been required since 1999 under the authority of *State
24   Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-657 (1999)); *United States ex rel.
     Bagley v. TRW, NIc.*, 204 F.R.D. 170, 173, 182 n.17 (C.D. Cal. 2001) (Wistrich, M.J.)
25   (where recipient of inadvertently disclosed privileged material waited "a couple of weeks"
     before notifying opposing counsel of receipt of inadvertently produced privileged
26   materials, stating that "counsel should have contacted defendant even sooner than they
     did" and citing *State Comp. Ins. Fund*).
27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  as including documents as to which Warner Bros. believed privilege had likely been

2  waived); Cohen Decl. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶ 10) (admitting that he

3  reviewed documents in sufficient detail to believe that one or two of them

4  "potentially fall within the scope of a privilege waiver").

5      After this detailed, substantive review, Mr. Smith again consulted with Mr.

6  Schulman, and the two of them decided to retain attorney John Quinn at Arnold &

7  Porter LLP, and to turn the documents over to him.  Cohen Decl. Ex. 5 (Smith Mar.

8  26, 2007, Decl. ¶ 13).  Still, neither Mr. Smith nor Mr. Schulman notified Mr.

9  Toberoff about the documents, although they were both members of the California

10  State Bar and subject to a clear obligation to "immediately notify" Mr. Toberoff

11  regarding their receipt of privileged materials.  *State Comp. Ins. Fund,* 70 Cal. App.

12  4th at 656-657; Cohen Decl. Ex. 5 (Smith Mar. 26, 2007, Decl. ¶¶ 5-6, 13).

13      On July 5, 2006, Mr. Quinn wrote to Mr. Toberoff and informed him that he

14  represented Mr. Schulman as to "certain" documents received by Warner Bros.

15  Cohen Decl. Ex. 11 (March 26, 2007, Declaration of Michael Bergman ("Bergman

16  Mar. 26, 2007, Decl.") Ex. D) (Quinn July 5, 2008, letter).  Mr. Quinn's July 5,

17  2006, letter recited that Mr. Smith at Warner Bros. had reviewed the documents and

18  determined that some of them appeared privileged, but Mr. Quinn did not disclose

19  that the materials appeared to be stolen from Mr. Toberoff's offices, that the

20  materials contained his and his clients' privileged information, or otherwise provide

21  any basis for Mr. Toberoff to believe that he or his clients had an interest in the

22  documents and their confidentiality.  *Id.*[6]

23

24

---

25      [6] Later, Mr. Quinn left Arnold & Porter and David Eisen took over Mr. Quinn's
responsibilities relating to the documents at Arnold & Porter.  Warner Bros. paid Mr.

26  Eisen's legal fees.  Cohen Decl. Ex. 12 (Declaration of Michael Bergman in Response to
Plaintiffs' Reply Papers Concerning the "Escrow Documents" dated Sept. 28, 2007, ¶ 8)

27  (". . . Defendants are footing the bill for Mr. Eisen's time as the escrow holder. . .")

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

12

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   The next day, the DC Defendants' trial counsel sought to communicate with

2   the Court *ex parte* and, again without disclosing that the documents at issue were

3   from Mr. Toberoff's confidential legal files, asked the Court to determine whether

4   the documents were privileged.  Cohen Decl. Ex. 3 (Toberoff Mar. 23, 2007, Decl.

5   Ex. D) (attaching *ex parte* communication).  The Court properly rejected the

6   attempted *ex parte* communication.  Cohen Decl. Ex. 13 (July 6, 2006, Minute

7   Order).

8   On July 11, 2006, Mr. Quinn finally informed Mr. Toberoff that the

9   documents at issue were apparently from his legal files.  Cohen Decl. Ex. 3

10  (Toberoff Mar. 23, 2007, Decl. ¶ 8).  Mr. Toberoff demanded that the documents be

11  returned to him.  *Id.*  Mr. Quinn did not comply, but instead delivered to Mr.

12  Toberoff's office a Bates-stamped copy of the materials.  *Id.* at ¶¶ 8-10.  The day

13  after he received the Bates-stamped documents, Mr. Toberoff informed Mr. Quinn

14  that the documents had been stolen from his office and objected that "[s]uch

15  illegally obtained documents should *not* have been reviewed in any manner by

16  Wayne Smith, Warner Bros.' Senior Litigation Counsel."  Cohen Decl.

17  Ex. 3 (Toberoff Mar. 23, 2007, Decl. Ex. F).

18  A series of letters followed in which the parties disagreed about the

19  appropriate handling of the documents.  Cohen Decl. Ex. 11 (Bergman Mar. 26,

20  2007, Decl. ¶¶ 6-10, Exs. E-I) (attaching selective letters); Ex. 3 (Toberoff Mar. 23,

21  2007, Decl. ¶¶ 11-15, Exs. F-J) (attaching additional letters).  Mr. Toberoff

22  repeatedly insisted that the documents be returned to him, but the DC Defendants

23  objected, and Mr. Quinn did not return the documents.  *Id.*

24  On August 7, 2006, the DC Defendants served a set of requests for production

25  of documents on the Siegels, demanding production of the now Bates-stamped

26  stolen documents.  Cohen Decl. Ex. 11 (Bergman Mar. 26, 2007, Decl. ¶ 11, Ex. J).

27  On August 10, the DC Defendants issued a parallel subpoena to Mr. Toberoff for the

28  production of such documents.  *Id.* at ¶ 12, Ex. K.  Motion practice regarding the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

13

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1 | August 2006 subpoena and document requests, which never would have been served

2 | but for the unlawful theft from Mr. Toberoff's law office, but which nonetheless led

3 | to the eventual disclosure of the Cover Letter, is described in more detail in Section

4 | II.E., below.

5 | **D.**      **The August 14, 2006 Discovery Order**

6 | On August 14, 2006, Magistrate Judge Zarefsky conducted a hearing on a

7 | motion by the DC Defendants to compel the Siegels to produce documents

8 | responsive to document requests dated June 21, 2005, prior to the theft of

9 | documents and the creation of the Cover Letter. Cohen Decl. Ex. 14 (July 24, 2006,

10 | Declaration of James Weinberger in Support of Defendants' Motion to Compel

11 | ("Weinberger July 24, 2006, Decl.") Ex. E) (June 2005 document requests). The

12 | stolen documents and Cover Letter were not at issue. *Id.*; Cohen Decl. Ex. 15 (July

13 | 24, 2006, Joint Stipulation re: Motion to Compel), Ex. 16 (Tr. of Aug. 14, 2006, re:

14 | Motion to Compel).

15 | Prior to that motion, and throughout the *Siegel* Action, the parties had agreed

16 | that, to reduce the burden of litigation, they would not log post-litigation documents.

17 | Cohen Decl. Ex. 7 (Defendant's portion of September 17, 2007, Joint Stipulation

18 | Re: Defendants' Motion to Compel Compliance with the Court's 4/30/07 Order and

19 | Motion for Sanctions at 13) ("Defendants do not dispute that the parties to the

20 | litigation had an understanding that they would not list post-litigation documents on

21 | their privilege logs."); *id.* at 32-34 (identifying repeated references to such

22 | agreement). In keeping with that agreement, neither side in fact logged post-

23 | litigation documents. Cohen Decl. Ex. 17 (September 17, 2007, Declaration of

24 | Michael Bergman ("Bergman Sept. 17, 2007, Decl.") Ex. D) (May 21, 2007 letter

25 | from Marc Toberoff to David Eisen, confirming practice of not logging post-

26 | litigation documents); Cohen Decl. Exs. 18-19 (DC Defendants' privilege logs).

27 | Consistent with this practice, the Siegels objected to the June 2005 document

28 | requests as to the production of "any item which has been served, filed, or

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

14

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  transmitted in the course of this action."  Cohen Decl. Ex. 14 (Weinberger July 24,

2  2006, Decl. Ex. F) (Plaintiffs Joanne Siegel and Laura Siegel Larson's Response to

3  Defendants'/Counterclaimant's First Set of Requests for Production of Documents

4  and Things dated July 21, 2005, Objection 8).

5       At the hearing on that motion, the Siegels agreed to supplement their privilege

6  logs, but never agreed to log post-litigation materials excluded under the parties'

7  standing agreement.  Cohen Decl. Ex. 16 (Tr. of Aug. 14, 2006, hearing re: Motion

8  to Compel at 27:14-31:24).  Following the hearing, Magistrate Judge Zarefsky

9  issued a Minute Order memorializing that agreement and did not require that

10  privileged post-litigation documents be logged.  Cohen Decl. Ex. 20 (Aug. 14, 2006,

11  Minute Order of Mag. Judge Zarefsky) ("Plaintiff shall produce all privilege logs

12  including any revisions, by September 29, 2006.").

13       Given the parties' standing agreement that they need not log post-litigation

14  documents, that Minute Order could not reasonably be interpreted to require the

15  logging of post-litigation documents, such as the Cover Letter.  The Minute Order

16  also did not impose any obligation on Mr. Toberoff or any third party (such as the

17  Shusters) to produce a privilege log in response to the August 10, 2006, subpoena to

18  Mr. Toberoff, which was not at issue in the motion and which would not in any

19  event be encompassed in an order directed to "Plaintiffs."  Finally, the Minute Order

20  did not require the Siegels to log documents such as the Cover Letter, which

21  contained privileged information belonging to other clients of Mr. Toberoff (such as

22  the Shusters), that the Siegels were not entitled to, and that were therefore not in

23  their possession, custody, and control.  July 26, 2010, Declaration of Joanne Siegel

24  ¶¶ 3-4; July 26, 2010, Declaration of Laura Siegel Larson ¶¶ 3-4; *see also* Fed. R.

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1
                                    15
JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   Civ. Pro. 34(a)(1) (limiting document discovery to documents within the responding

2   party's possession, custody, or control).[7]

3   **E.    The Judicial Proceedings That Led To The Compelled But Disputed**

4          **Disclosure If The Cover Letter**

5          Mr. Toberoff responded to the subpoena to him concerning the stolen

6   documents on August 23, 2006.  The response consisted of timely objections,

7   including (1) privilege and work product; (2) that the materials requested had been

8   stolen from his office, and improperly disclosed without authority; (3) that the

9   subpoena would not have been issued but for the illegal receipt of the stolen

10  documents; and (4) that the DC Defendants had improperly issued the subpoena to

11  gain a litigation advantage based on a theft of privileged documents from Mr.

12  Toberoff's law office.  Cohen Decl. Ex. 11 (Bergman Mar. 26, 2007, Decl. ¶ 14,

13  Ex. M).  On September 6, 2006, the Siegels served similar timely objections to the

14  document requests served on them regarding the stolen documents.  *Id.* at ¶ 13,

15  Ex. L.

16         Because the Siegels and Mr. Toberoff had served objections to the entire set

17  of document requests and the subpoena, respectively, they had no obligation to

18  prepare a privilege log relating to those discovery demands absent an order

19  overruling their objections and compelling disclosure.  *See Pennwalt Corp. v.*

20  *Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (no obligation even to

21  search for documents when there is a blanket objection).  Moreover, and as set forth

22  above, under Federal Rule of Civil Procedure 34(a)(1), the Siegels would be under

23  no obligation to prepare a privilege log regarding the Cover Letter, which contained

24  privileged information of other clients and therefore had never been provided to

25  _____

26         [7] The Court issued a more detailed written order on August 18, 2006, relating to
   other issues raised in the August 2006 motion.  Cohen Decl. Ex. 21 (August 18, 2006,

27  Order denying Defendants' motion to compel).  That order denied DC Defendants' motion
   to compel.  *Id.*

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

16

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

them, such that the document was not within their possession, custody, or control. July 26, 2010, Declaration of Joanne Siegel, ¶¶ 3-4; July 26, 2010, Declaration of Laura Siegel Larson ¶¶ 3-4.

In March 2007, pursuant to the Local Rules governing discovery disputes, the parties submitted a Joint Stipulation in which the DC Defendants moved to compel production of what they described as the "Whistle-blower Documents." Cohen Decl. Ex. 23 (Mar. 26, 2007, Notice of Motion and Joint Stipulation re: Defendant's Motion to Compel Production ("Mar. 26, 2007, Joint Stip.")). The relief requested by the DC Defendants in their motion was the disclosure of the non-privileged "Whistle-blower Documents," *not* the "Cover Letter." *Id.* at 16 (Argument heading 1, contending that "Plaintiffs Should be Compelled to Produce the Non-Privileged Whistle-blower Documents"); *id.* at 2 (seeking production of "non-privileged Whistle-blower Documents"). The DC Defendants' portion of the Joint Stipulation repeatedly distinguished between the "Whistle-blower Documents" that had been taken from Mr. Toberoff's office and disclosed to Warner Bros., and the Cover Letter that was "contained with" such documents.[8] Thus, the DC Defendants advanced no argument directed to the Cover Letter. Nowhere in their briefing did the DC Defendants provide any explanation or authority as to why the Siegels

---

[8] *See*, *e.g.*, Cohen Decl. Ex. 23 (Mar. 26, 2007, Joint Stip. at 6) (explaining that term "Whistle-blower Documents," as used in the Joint Stipulation has the same meaning as the term "Superman Documents" in the accompanying declaration of Wayne Smith, while referring separately to "the cover letter contained with the documents."), Ex. 5 (Smith Mar. 26, 2007 Decl. ¶ 2) (distinguishing between "Superman Documents" and "cover letter contained with the documents."); *see also id.* at ¶ 3 (referring to "'cover letter' that came with the Superman Documents," and acknowledging that declarant "looked at" the "cover letter" and also "thumbed through the Superman Documents contained with the letter" without reading the latter in detail); *id.* at ¶ 4 (distinguishing between "cover letter" and underlying "documents"); Cohen Decl. Ex. 23 (Mar. 26, 2007, Joint Stip. at 6-7) (distinguishing between "Whistle-blower Documents" and "cover letter"); *id.* at 16 (noting Plaintiffs' counsel's objection that "the Whistle-blower Documents were stolen"); *id.* at 19 (noting same objection that "Whistle-blower Documents" were "stolen.").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

17

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   would have any obligation to produce or log the illicit Cover Letter, which (1) had

2   never been transmitted to them; (2) included privileged information of third parties;

3   and (3) was based on documents stolen from their attorney's office and prepared in

4   flagrant disregard of the duty of loyalty and confidentiality that the preparer owed to

5   them.

6          Nor did the DC Defendants explain how either the Siegels or anyone else

7   whose privileged information was disclosed in the Cover Letter could be held to

8   have waived the attorney-client privilege, in light of the fact that Mr. Toberoff (1)

9   had timely objected to the entire subpoena, relieving him of any further obligation

10  absent a successful motion to compel; (2) had never been ordered to produce

11  documents or prepare a privilege log in response to the subpoena; and (3) clearly

12  intended to maintain the privileged status of his attorney-client communications.

13         Since the DC Defendants sought to compel production of the stolen

14  documents, and not the Cover Letter, the Siegels' portion of the Joint Stipulation

15  focused on the underlying documents, not the Cover Letter.  Cohen Decl. Ex. 23

16  (Mar. 26, 2007, Joint Stip. at 28-40).  The Siegels used the term "stolen documents,"

17  rather than "Whistle-blower Documents" to refer to the actual documents that had

18  been stolen from Mr. Toberoff's law offices.  *Id.*  The Siegels, like the DC

19  Defendants, distinguished between the "cover letter" and the "stolen documents,"

20  and asserted privilege as to both.  *Id.* at 37, n.10.

21         Like the Joint Stipulation, the hearing on the motion focused on the

22  underlying documents, and Mr. Toberoff repeatedly distinguished between the

23  "stolen documents" at issue in the motion and the Cover Letter.  Cohen Decl. Ex. 24

24  (Tr. of Apr. 30, 2007, hearing re: Motions to Compel at 14, 16).  Mr. Toberoff

25  informed the Court that he had reviewed the underlying stolen documents and

26  determined that they had either been produced, or logged on a privilege log and that

27  he had made further production in the minor instances where this was not the case.

28  *Id.* at 11-12.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

18

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

In an effort to find a more "neutral" term than "Whistle-blower" or "stolen,"
Magistrate Judge Zarefsky introduced a new phrase, "escrow," to describe the
documents that the parties had been referring to.  The Court made clear that it was
using the term "escrow documents" in the same sense that Mr. Toberoff used "stolen
documents," and the DC Defendants used "Whistle-blower documents."

> For example, Bates number, let's call it 'escrow'. Let's try to take the
> pejoratives out of it either way, all right? So I won't call them
> whistleblower documents; I won't call them stolen documents. I'm not
> denying they're stolen, I'm not saying they're whistleblower
> documents; I'm just trying to find a neutral term, so I'm calling it
> 'escrow'. Escrow is usually a neutral term. All right.

*Id.* at 30. Given the way that the parties had used "Whistle-blower" and "stolen," it
was apparent that the Court used the term "escrow" documents to refer to the
underlying documents that had been taken from Mr. Toberoff's law office without
authorization, not the Cover Letter enclosing those materials.

To resolve the discovery dispute so as to ensure protection for the privileged
information stolen from Mr. Toberoff's law office, and in reliance on the DC
Defendants' representations that they had immediately turned the stolen documents
over to Mr. Quinn, Magistrate Judge Zarefsky ordered Mr. Toberoff to prepare a
simple declaration comparing the so-defined "escrow" documents with the
previously produced documents and documents logged on already-prepared
privilege logs in the April 30, 2007, Order.  Magistrate Judge Zarefsky maintained
the confidentiality of privileged communications, ruling that "escrow documents"
appearing on existing privilege logs were to be returned to Mr. Toberoff (*id.* at
19:23-20:1; 30:22-24), and further ruled that "'escrow' documents not associated
with an existing privilege log entry can be delivered to trial counsel for [the DC
Defendants] because they're either unprivileged, or, if they were privileged,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

19

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  privilege has been waived because they weren't listed on the privilege log."[9] *Id.* at

2  20:2-5.

3       Magistrate Judge Zarefsky's ruling did not require disclosure of the Cover

4  Letter for several reasons.  First and foremost, the April 30, 2007, Order did not

5  address the Cover Letter, because it related only to the "escrow documents," and the

6  Court had defined the term "escrow documents" in a manner that did not encompass

7  the Cover Letter.  Second, the April 30, 2007, Order did not address the status of

8  post-litigation documents that contained privileged information but were not listed

9  on a privilege log owing to the parties' standing agreement concerning post-

10  litigation documents.  As to such documents, there could be no reasonable inference

11  of waiver based on the fact that the document had not been logged, because the

12  parties had expressly agreed that such documents would not be logged at all.  As to

13  the Cover Letter in particular, there was no such obligation for it to be logged at the

14  time of the April 30, 2007, Order because (1) it was a post-litigation document

15  subject to the parties' agreement that such documents were not required to be

16  logged; (2) it was never in the Siegels' possession, custody, or control, because it

17  included third-party confidential information belonging to other clients; and (3) Mr.

18  Toberoff had no independent obligation to log the document because he had raised

19  blanket objections to the subpoena, and that objection had not been overruled prior

20  to April 30, 2007.  Given Magistrate Judge Zarefsky's evident concern with fairness

21  and the protection of privileged communications, he would not have found a waiver

22  of privilege based on the failure to log a document when there was absolutely no

23  _____

24       [9] The Court issued a minute order on April 30, 2007.  As to the issue of the
"escrow" documents, that order stated in full:  "Defendants' Motion to Compel Production

25  of Whistle-Blower Documents: Motion is granted in part.  Plaintiff shall submit a
declaration re already produced and privileged escrow documents as directed by the court

26  to Defendant no later than May 21, 2007, and documents may be released by the escrow,
or returned to Plaintiffs, as stated on the record.  No further order will issue."  Cohen Decl.

27  Ex. 22 (April 30, 2007, Minute Order).

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1                                    20
                    JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  requirement to log it.  Moreover, it defies logic that Magistrate Judge Zarefsky

2  intended to uphold the privilege of all documents listed in logs, while *sub silentio*

3  permitting the disclosure of the Cover Letter that purported to discuss the contents

4  of the same privileged documents.

5      Mr. Toberoff fully complied with the April 30, 2007, Order by serving and

6  filing a declaration dated May 21, 2007, that compared the "escrow" documents

7  (i.e., the materials underlying the Cover Letter) to documents produced or logged.

8  Cohen Decl. Ex. 25 (May 21, 2007, Declaration of Marc Toberoff filed Pursuant to

9  the Court's September 17, 2007 Order ("Toberoff May 21, 2007, Decl.")).  A cover

10  letter Mr. Toberoff provided to the "escrow" attorney made clear that the documents

11  at issue were "the documents stolen from my legal files . . . (the 'Documents')."

12  Cohen Decl. Ex. 17 (Bergman Sept. 17, 2007, Decl. Ex. D) (May 21, 2007 Letter

13  from Marc Toberoff at 1).  Mr. Toberoff made it clear that he believed the order

14  extended only to the stolen documents, and not to the cover letter.  Mr. Toberoff

15  also made clear to the "escrow" attorney that the Magistrate Judge's order had not

16  addressed other categories of documents, including documents revealing third party

17  privileged information and post-litigation communications, which also encompassed

18  the Cover Letter.  *Id.* at 1-2.

19      Additional letters followed, in which the DC Defendants sought to persuade

20  the "escrow" attorney to turn over the Cover Letter and other documents on which

21  Magistrate Judge Zarefsky had not ruled, and Mr. Toberoff objected.  Cohen Decl.

22  Ex. 17 (Bergman Sept. 17, 2007, Decl. Ex. E) (Bergman May 22, 2007, letter); *id.* at

23  Ex. F (Toberoff May 23, 2007, letter).  After reviewing the parties' letters and the

24  relevant pleadings and transcript, the "escrow" attorney agreed with Mr. Toberoff

25  that the April 30, 2007, Order had not addressed the Cover Letter.  In the words of

26  this attorney – who was retained by Warner Bros., not the Siegels – "Unfortunately,

27  there are some documents . . . which do not seem to be directly encompassed by the

28  transcript or Magistrate Judge Zarefsky's Order."  *Id.* at Ex. G (Eisen May 24, 2007,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1    letter at 1).  The escrow attorney pointed out in particular that the Magistrate Judge

2    had not addressed post-litigation documents in general or the "undated defamatory

3    cover letter," in particular.  *Id.* at 1-2.  The escrow attorney stated that he would

4    retain the materials pending further direction from the Court or an agreement by the

5    parties.  *Id.* at 2.  On July 31, 2007, before further motions were filed, and with

6    numerous motions outstanding, Judge Larson withdrew the reference to Magistrate

7    Zarefsky of discovery matters in the *Siegel* Action.

8            On September 17, 2007, the parties filed a new Joint Stipulation, in which DC

9    Defendants moved to compel the production of the Cover Letter and other post-

10   litigation materials.  DC Defendants took the position (contrary to the determination

11   of their own "escrow" attorney) that the Magistrate Judge had already ruled that any

12   claim of privilege in the Cover Letter and other post-litigation materials had been

13   waived.  Cohen Decl. Ex. 7 (September 17, 2007, Joint Stipulation Re: Defendants'

14   Motion to Compel Compliance with the Court's 4/30/07 Order and Motion for

15   Sanctions at 1-2).

16           In large part, this argument was based on DC Defendants' novel use of the

17   term "Escrow Documents."  DC Defendants' portion of the Joint Stipulation used

18   this term to include the Cover Letter, whereas Magistrate Judge Zarefsky had not.

19   By this sleight of hand, the DC Defendants sought to make it appear that Magistrate

20   Judge Zarefsky had already addressed the Cover Letter, when he had not.  *Id.* at 1-2,

21   6-14.  The DC Defendants used their new and misleading terminology to suggest

22   that Mr. Toberoff had represented to the Court that the Cover Letter was already

23   listed on a privilege log, when Mr. Toberoff had not.  *Id.* at 7-8.  Unfortunately,

24   Magistrate Judge Zarefsky, whose ruling was at issue, and who had made clear his

25   concern with protecting privileged information, never had the opportunity to rule on

26   the meaning of his own Order due to the withdrawal of the reference.

27           On September 17, 2007, the same day the parties filed the Joint Stipulation

28   regarding the scope of Magistrate Judge Zarefsky's April 30, 2007, Order, Judge

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1    Larson heard oral argument on the parties' cross-motions for summary judgment.

2    During that hearing, Judge Larson *sua sponte* raised questions concerning the DC

3    Defendants' motion, which had been filed earlier that day, even though the hearing

4    on the motion was set for the following month.  Judge Larson ordered that the

5    documents that remained in dispute be submitted to the Court for *in camera* review,

6    and ordered the parties to state their positions regarding these documents.  Cohen

7    Decl. Ex. 26 (Tr. of Sept. 17, 2007, hearing re: Cross-motions for Partial Summary

8    Judgment at 112-128), Ex. 27 (Sept. 17, 2007, Minute Order at 2).

9         In response, the parties again briefed the issues relating to the stolen

10   documents and the Cover Letter.  Plaintiffs' submission made clear their position

11   that the "escrow documents" referenced in the April 30, 2007, Order had not

12   included the Cover Letter or other post-litigation materials, and that the DC

13   Defendants should not be permitted to gain a litigation advantage from their receipt

14   of privileged documents and information stolen by a lawyer.  Cohen Decl. Ex. 4

15   (Toberoff Sept. 20, 2007, Decl.  ¶¶ 7-22).  The DC Defendants continued to

16   misrepresent the record, as they had in the September 17, 2007 Joint Stipulation.

17   Cohen Decl. Ex. 28 (September 25, 2007, Declaration of Michael Bergman in

18   Response to the Decl. of Marc Toberoff Filed Pursuant to the Court's September 17,

19   2007, Order ¶ 11-12, 23-30, 48-51).

20        Approximately one year later, on September 26, 2008, Judge Larson issued a

21   minute order concerning the nine documents that had been submitted for *in camera*

22   review, including the Cover Letter.  Cohen Decl. Ex. 29 (Sept. 26, 2008, Minute

23   Order).  That ruling reflected significant misunderstandings regarding the prior

24   proceedings before Magistrate Judge Zarefsky.  Most importantly, and presumably

25   due to the DC Defendants' misrepresentation of the record, Judge Larson

26   misinterpreted Magistrate Judge Zarefsky's use of the term "escrow documents," in

27   the mistaken belief that it referred to *all* of the bates-stamped documents sent from

28   Mr. Quinn to Mr. Toberoff (i.e., the stolen documents as well as the Cover Letter),

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

23

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   when, as shown above, the term "escrow documents," like "stolen documents,"

2   referred only to the documents that had been "stolen" from Mr. Toberoff's office.

3   *Id.* at 2-3.

4       This error was prompted by and led to other errors, including the following:

5   • Judge Larson misstated the chronology of discovery proceedings in the

6       case. In particular, he stated that Plaintiffs filed their response and

7       objections to DC Defendants' third set of document requests (relating to

8       the Bates-stamped documents that Mr. Quinn had sent to Mr. Toberoff) on

9       September 6, 2006, and that Magistrate Judge Zarefsky "[s]ubsequently

10      ordered that plaintiffs "produce all privilege logs including any revisions

11      by September 29, 2006." In fact, the date of Magistrate Judge Zarefsky's

12      ruling was August 14, 2006, three weeks before Plaintiffs responded to the

13      third set of document requests, and the August 14, 2006 Order did <u>not</u>

14      pertain to those requests. Cohen Decl. Ex. 29 (Sept. 26, 2008, Minute

15      Order at 2), Ex. 20 (Aug. 14, 2006, Minute Order).

16  • Based on this misunderstanding, it appears that Judge Larson believed that

17      Mr. Toberoff and the Siegels had been ordered to log the documents

18      sought in the third set of document requests and the associated subpoena,

19      when they had not been so ordered.

20  • Judge Larson mistakenly inserted the bracketed words when quoting from

21      the transcript of the April 30, 2007, hearing, apparently without realizing

22      that, in light of his incorrect use of the word "escrow," his additions

23      changed the meaning of what had occurred at the hearing. Cohen Decl.

24      Ex. 29 (Sept. 26, 2008, Minute Order at 2-3).

25  • Based upon this misunderstanding, Judge Larson apparently and

26      mistakenly believed that Mr. Toberoff had incorrectly represented to

27      Magistrate Judge Zarefsky that the Cover Letter had been listed on a

28      privilege log, when his statements regarding the scope of the existing

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1
24
JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  privilege logs related to the "stolen documents" on which the Cover Letter
2  was based, not the Cover Letter itself. *Id.*

3  • All of these errors led Judge Larson to the mistaken view that Magistrate
4  Judge Zarefsky ordered that any claim of privilege in the Cover Letter had
5  been waived, when, in fact, his opinion, as the escrow attorney understood,
6  did not address that document. *Id.* at 4.

7  Based upon all these errors, Judge Larson ruled, under the law of the case doctrine,
8  that all nine documents submitted for *in camera* review, including the Cover Letter,
9  were to be produced to defense counsel as "those documents were not previously
10  identified in a privilege log provided by plaintiffs." *Id.* at 5.

11      The parties submitted a flurry of additional filings on or around October 8-17,
12  2008, concerning issues other than the Cover Letter.[10]  The Court addressed these
13  matters in a minute order dated December 4, 2008.  Cohen Decl. Ex. 31 (Dec. 4,
14  2008, Minute Order).  The Cover Letter was thereafter released to counsel for the
15  DC Defendants.

16  **F.  Judge Larson Rejects DC Defendants' Efforts To Exploit The Cover**
17      **Letter In The *Siegel* Action, But DC Comics Persists In Its Effort To**
18      **Benefit From The Theft**

19      Following Judge Larson's December 2008 order, DC Defendants set out to
20  exploit the illicit Cover Letter, which never should have been produced.  On March
21  2, 2009, the DC Defendants moved to reopen discovery based on the Cover Letter.
22  Cohen Decl. Ex. 32 (Mar. 2, 2009, Joint Stipulation re: Defendants' Motion to

23  ───────────────────

24      [10] Therein, the "escrow" attorney disavowed his status as a neutral "escrow" holder,
    contrary to the DC Defendants' representations to Magistrate Judge Zarefsky:  "[N]either .
25  . . this firm, nor I has suggested that we are formal escrow agents, in the legal sense of that
    term . . . . we do not in my view, owe either party to this litigation any legal duty.  We
26  expect to be paid for our time by defendants."  *Id.* Ex. 30 (Defendants' Response to
    Plaintiffs' Objection Concerning the Escrow Documents, Ex. 1 at 69-71) (Eisen Oct. 9,
27  2008, letter at 1).

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

25

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  Reopen Discovery at 1-2).  Judge Larson, however, *denied that motion*, ruling that

2  discovery would not be reopened.  Cohen Decl. Ex. 33 (March 13, 2009, Final Pre-

3  Trial Conference Order at 9).  This ruling effectively eliminated any possibility of

4  negative effects from the Cover Letter in the *Siegel* Action.

5      The DC Defendants were running out of options.  On March 26, 2008, Judge

6  Larson had granted in substantial part a motion for summary judgment brought by

7  the Siegels to establish that their terminations of Jerry Siegel's copyright grants

8  were valid and that the rights to be restored to them pursuant to such terminations

9  were broad.  Given the Court's ruling that DC's key factual and legal defenses

10  lacked merit, DC shifted to a new tactic: character assassination, directed at the

11  Siegels' lawyer.

12      On May 14, 2010, DC Comics filed a new complaint, initiating the *Pacific*

13  *Pictures* Action.  The Complaint is based on allegations made in the anonymous

14  Cover Letter, and attaches it as "Exhibit A."  Complaint ¶ 89; Ex. A.  The

15  Complaint names Mr. Toberoff individually as a defendant, and also names

16  companies in which he has or had a financial interest.  The filing of the new

17  Complaint brought substantial media attention.  The entire Complaint, including the

18  Cover Letter, was posted on the Internet largely as a result of publicity generated by

19  DC, Warner Bros., or those acting on their behalf.[11]  Because of this publicity, it is

20  no longer possible to restore the complete confidentiality that this document should

21  _____

22      [11] An unstamped, unfiled copy of the Complaint was posted on the Internet within

23  minutes of the time the Complaint was filed in Court, accompanied by articles that discussed its allegations, which strongly suggests that DC and/or its counsel distributed the

24  Complaint to the media before it was filed.  Cohen Decl. ¶¶ 40-41, Exs. 37-38 (article titled "Read the Warner Bros. Lawsuit Against Superman Lawyer" posted on

25  thresq.hollywoodreporter.com on May 14, 2010, within thirty minutes of filing of the complaint, linking to an unfiled copy of the Complaint and Cover Letter), ¶ 35, Ex. 34

26  (article on Deadline.com titled "Warner Bros/DC Comics Sues 'Superman' Copyright

27  Lawyer; Marc Toberoff Response" posted on May 14, 2010, stating that earlier version of the article was posted at 10:26 a.m.).

28

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  have received.  What is possible, however, and what Defendants seek in this motion,

2  is a protective order to prevent the perversion of justice that would be associated

3  with DC's use in discovery of the Cover Letter, which purports to discuss privileged

4  documents and information stolen from Mr. Toberoff's law office.  The unanimous

5  United States Supreme Court has deemed such protective orders appropriate.

6  *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 608 (2009) ("[P]rotective

7  orders are available to limit the spillover effects of disclosing sensitive information"

8  pending appellate review).  Given the seriousness of the issues at stake, and given

9  the very substantial arguments as to why Judge Larson's September 26, 2008,

10  disclosure order was issued in error, such a protective order is clearly appropriate.

11       On July 13, 2010, counsel in the *Pacific Pictures* Action met and conferred

12  about a variety of issues, including potential motions.  Cohen Decl. ¶ 36.  During

13  that meet and confer, counsel for DC stated that DC wanted to begin discovery

14  immediately and intended to question at least three witnesses (Defendants Joanne

15  Siegel and the Shuster Executor, Mark Warren Peary, and Jean Peavy) regarding the

16  Cover Letter on a paragraph by paragraph basis.  *Id.*  Counsel for Mr. Toberoff

17  stated that Defendants would be moving for a protective order to limit the scope of

18  any such depositions to exclude the Cover Letter and explained the basis for the

19  motion, including referring counsel to the Supreme Court decision in *Mohawk v.*

20  *Carpenter*.  *Id.*

21       Counsel for Mr. Toberoff also sent a meet and confer letter to DC's counsel

22  on July 16, 2010.  Cohen Decl. Ex. 35.  On July 27, counsel for Mr. Toberoff and

23  for DC conferred further over the issues to be raised in this motion.  *Id.* at ¶ 38.  On

24  July 28, counsel for DC sent a letter, which enclosed two proposed notices of

25  deposition and requests for documents that they "intend to serve" on Joanne Siegel

26  and Jean Peavy.  *Id.* at ¶ 39, Ex. 36.  These notices and document requests show

27  DC's determination to use the Cover Letter in discovery.  For example, the notices

28  ask the witnesses for information concerning the introduction of the Siegel and

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

27

1   Shuster heirs to Mr. Toberoff and related companies (subjects already well-covered

2   in their prior depositions) and for all agreements among any of the Defendants and

3   Mr. Toberoff.  Cohen Decl. Ex. 36 (Shuster Request at Nos. 1, 10, 11; Siegel

4   Request at Nos. 1, 10, 11).  DC's counsel has also repeatedly stated in formal "meet

5   and confer" conferences with Defendants that he intends to question witnesses about

6   the Cover letter and its contents.  Cohen Decl. ¶¶ 36, 38-39, Ex. 36.

7                           II.  **ARGUMENT**

8   A.    **A Protective Order Should Be Issued to Avoid the Risk of Prejudice and**

9         **High Potential for Unfairness**

10         Absent court intervention, it is certain that DC will seek broad discovery to

11  cement in place and expand the negative and prejudicial effects of the Cover

12  Letter's disputed disclosure.  The risk of prejudice and potential for unfairness is

13  particularly high for two reasons.

14         First, confidential and privileged information relating to the Shusters is

15  revealed in the Cover Letter, but neither Jean Peavy nor Mark Warren Peary was a

16  party before the Court in the *Siegel* Action, in which the Cover Letter was ordered

17  produced.

18         Second, the Cover Letter and the privilege information therein was not

19  disclosed through routine inadvertence.  The Cover Letter embodies a blatant breach

20  of the duties of loyalty and confidentiality by a member of the California Bar, who

21  brazenly stole reams of privileged documents from Mr. Toberoff's legal files,

22  created a lengthy hit piece to malign Mr. Toberoff, and turned over the entire

23  package to the opposing party in the middle of a high profile litigation – all adverse

24  to Mr. Toberoff's clients, whom the thief had represented as an attorney.  The Cover

25  Letter is a frontal attack on the fundamental norms of the legal profession.  A failure

26  to protect against the DC Defendants' further abuse and exploitation of the Cover

27  Letter will harm not just the parties to this action, but the legal profession and

28  administration of justice as a whole.  That must not be permitted to happen.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

**B.      Judge Larson's Law Of The Case Decision May Well Be Reversed On Appeal**

Judge Larson's September 26, 2008 Order requiring the disclosure of the Cover Letter was based entirely on a misapplication of the "law of the case" doctrine.

"Law of the case" is a jurisprudential doctrine that guards against relitigation of matters already decided in the same case.  The doctrine applies not to every question of law or fact, but only to those that have been actually adjudicated in a prior decision. *See Snow-Erlin v. United States*, 470 F.3d 804, 807-08 (9th Cir. 2006) ("Of course, for the law of the case doctrine to apply, we must actually have decided the matter, explicitly or by necessary implication, in our previous disposition."); *United States v. Almazan-Becerra*, 537 F.3d 1094, 1097 (9th Cir. 2008) (noting that a prior panel decision "did not decide whether the police reports could support [a sentencing] enhancement.  Accordingly, the law of the case doctrine does not preclude us from deciding that issue here.").  As the Ninth Circuit has made clear, a prior ruling is afforded "respect" for what it decided, "not for what it did not decide." *Snow-Erlin*, 470 F.3d at 807 (citation and internal quotations omitted).

As explained in detail above, Magistrate Judge Zarefsky's April 30, 2007, Order did not require the production of the Cover Letter, which purports to disclose the contents of numerous documents duly listed on privilege logs upheld by Magistrate Judge Zarefsky.  That ruling was addressed to the "stolen" or "escrow documents," which in context referred only to the documents that had been stolen from Mr. Toberoff's law offices.  That term did not refer to the "cover letter" enclosing the stolen documents.  It makes no sense whatsoever that Magistrate Judge Zarefsky would have ordered on April 30, 2007, the immediate return to Mr. Toberoff of numerous privileged stolen documents duly listed on privilege logs, while consciously permitting the release of the Cover Letter which purports to

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  discuss in detail the contents of the very same privileged documents that Magistrate

2  Judge Zarefsky had just protected.

3      In addition, the Cover Letter was not addressed in the April 30, 2007, Order

4  because that order cannot reasonably be construed as finding a waiver as to

5  documents not listed on privilege logs when there was no obligation to engage in

6  such logging.  On April 30, 2007, there was no obligation for the Cover Letter to

7  appear on any privilege log.  It included third-party privileged information, and

8  therefore could not be, and was not, within the possession, custody, or control of the

9  Siegels.  Fed. R. Civ. P. 34(a)(1).  Mr. Toberoff was under no obligation to log it in

10 response to the subpoena directed to him, because he had asserted blanket objections

11 to the DC Defendants' subpoena, and those objections had not been overruled prior

12 to April 30, 2007.  *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th

13 Cir. 1983) (no obligation even to search for documents when there is a blanket

14 objection).  Finally, it was a post-litigation document, which the Siegels and Mr.

15 Toberoff were not required to log under the parties' agreement.

16     Even the "escrow" attorney at Arnold & Porter, whose fees were being paid

17 by Warner Bros., agreed that the defamatory cover letter was not addressed in

18 Magistrate Judge Zarefsky's April 30, 2007, Order.  Cohen Decl. Ex. 17 (Bergman

19 Sept. 17, 2007, Decl. Ex. G) (Eisen May 24, 2007, letter at 1-2).

20     In light of all these facts, Judge Larson's view that Judge Zarefsky's April 30,

21 2007, Order was "law of the case," requiring disclosure of the cover letter, was

22 wrong as a matter of law.  At a minimum, a very real question exists as to whether

23 that ruling was in error.  In light of this, Defendants should be granted a protective

24 order so that discovery does not move forward regarding this document –

25 exacerbating the damage to the attorney-client privilege and the legal profession that

26 has occurred.

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**C.**  **The Federal Rules of Civil Procedure And The Supreme Court**
**Recognize The Propriety Of Protective Orders To Ensure That The**
**Right Of Appellate Review Of Contested Privilege Rulings Is Not**
**Rendered Meaningless**

Regardless of the merits of the ruling that ordered the production of the Cover Letter in the *Siegel* Action, when the Cover Letter was produced discovery in that action was closed, and the Court properly denied the DC Defendants' ensuing motion to reopen discovery based on the Cover Letter.  As such, there was no need for a protective order regarding the Cover Letter in the *Siegel* Action.  Here, DC seeks to actively exploit the illicit Cover Letter in discovery, and defendants are entitled to a protective order against such use.  Under Federal Rule of Civil Procedure 26(c)(1), a party from whom discovery is sought "may move for a protective order in the court where the action is pending."  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Such orders may, in particular, "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(D).  A protective order may also specify the "time and place" for discovery, including postponing discovery until questions are resolved concerning whether the discovery is appropriate in the first place.  Fed. R. Civ. P. 26(c)(1)(B); *see FDIC v. Scott*, 945 F. Supp. 988, 990 (S.D. Miss. 1996) (granting a protective order regarding discovery related to enforcement of judgment where judgment is being appealed).

Privileged information is not discoverable.  Fed. R. Civ. P. 26(b)(1).  The attorney-client privilege "'is one of the oldest recognized privileges for confidential communications."  *Mohawk v. Carpenter*, 130 S. Ct. 599, 606 (2009) (internal citations omitted).  "By assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation.  This, in turn, serves 'broader

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

31

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  public interests in the observance of law and administration of justice.'" *Id.*

2  (internal citations omitted).

3      This case involves not just the routine inadvertent disclosure of privileged

4  information, but the malicious theft of privileged information on a grand scale from

5  an attorney's office by a member of the California State Bar, in violation of the

6  duties of loyalty and confidentiality owed to the client.  As explained in Section

7  III.D., below, the need for prophylactic protection is especially acute in such a case.

8      District courts have "very broad discretion in fashioning discovery orders

9  under Fed. R. Civ. P. 26(c)." *McDowell v. Calderon*, 197 F.3d 1253, 1256 (9th Cir.

10 1999) (en banc) (allowing protective order preventing Attorney General from using

11 documents obtained in one lawsuit in another matter); *Flatow v. Islamic Republic of*

12 *Iran*,  308 F.3d 1065, 1074 (9th Cir. 2002) (noting that district courts have

13 "extensive control" over the discovery process and affirming a protective order

14 preventing deposition).  A magistrate judge also "retains broad discretion"

15 concerning the issuance and scope of protective orders. *Osband v. Woodford*, 290

16 F.3d 1036, 1038 (9th Cir. 2002) (citing 28 U.S.C. § 636(b)(1)(A)); *see also Sasselli*

17 *v. Pena*, 2008 WL 2396838, at *1 (E.D. Cal., June 4, 2008) ("a United States

18 Magistrate Judge 'has broad discretion to stay discovery'" pending a ruling that will

19 moot the need for discovery).

20     In this case, a protective order prohibiting the use of the Cover Letter in

21 discovery, at least until the Ninth Circuit has ruled on whether the document should

22 have ever been produced in the first place, is appropriate and is the only way to

23 prevent unfair prejudice to defendants in this case.  In the absence of such a

24 protective order, DC has made clear that it intends to take immediate depositions of

25 witnesses and to question them on a paragraph-by-paragraph basis regarding the

26 Cover Letter.  Cohen Decl. ¶ 36.  Such questioning is certain to compound the

27 improper disclosure of privileged information that has already occurred.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

1    The United States Supreme Court recently addressed this very issue in

2  *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009).  In that case, the

3  Supreme Court considered, whether, in light of the important interest in protecting

4  privileged information, a district court ruling ordering the disclosure of information

5  in which one party claims a privilege is subject to immediate appeal under the

6  collateral order doctrine.  *Id*. at 603.  Given the importance of the final judgment

7  rule and the need to avoid multiple appeals, the Supreme Court unanimously held

8  that such orders are *not* immediately appealable.  *Id.* at 603, 605.  However, the

9  Supreme Court took care to note that despite the delay, there was little risk of

10  prejudice because the party from which discovery was sought could still seek a

11  protective order to prevent the damaging "spillover effects" of unchecked discovery

12  pending appeal.  *Id.* at 608.  Such a protective order is precisely what Defendants

13  seek here.

14    DC may contend that such an order is inappropriate because the document has

15  already been disclosed and widely disseminated by them, but that is beside the

16  point.  Obviously a sealing order under Federal Rule of Civil Procedure 26(c)(1)(F)

17  at this stage of the litigation would be ineffective.  The protective order Defendants

18  seek is not directed at sealing the document, but rather is directed at preventing DC,

19  which should never have obtained the Cover Letter in the first place, *from exploiting*

20  *it in discovery in this new case or otherwise*, and further compounding Judge

21  Larson's error in ordering the document disclosed.  Defendants want to stop the

22  harm resulting from the disclosure of privileged information and the theft of

23  documents from a law firm, at least until the Ninth Circuit has ruled.  Such an order

24  is clearly available under Federal Rule of Civil Procedure 26(c)(1)(A), (B), or (D)

25  and the en banc decision of the Ninth Circuit in *McDowell v. Calderon*.

26    Significantly, as noted above, Judge Larson ruled that the DC Defendants in

27  the *Siegel* Action could not take discovery on the Cover Letter.  Cohen Decl. Ex. 33

28  (March 13, 2009, Final Pre-Trial Conference Order at 9).  Accordingly, the relief

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1 | sought here was effectively granted in the *Siegel* case, and this new lawsuit is little

2 | more than an end run around that ruling.  Because that order rejected DC's effort to

3 | reopen discovery in the *Siegel* case, and because the Cover Letter is obvious hearsay

4 | that would be inadmissible at trial, it was unnecessary for the Siegels to seek an

5 | immediate writ in the *Siegel* Action to obtain review of Judge Larson's December 4,

6 | 2008 disclosure order.  There was no reasonable likelihood of "spillover" effects of

7 | the disclosure order in that litigation.

8 | DC, however, has taken matters to an entirely new level by initiating a new

9 | lawsuit *based on* the privileged Cover Letter and asserting a right to question

10 | witnesses on a paragraph-by-paragraph basis regarding the Cover Letter, which

11 | should never have been disclosed in the first place and on which the Ninth Circuit

12 | has not yet had an opportunity to rule.  Moreover, DC seeks to use the Cover Letter

13 | against the Shusters, who were not even parties to the *Siegel* Action.  *See, e.g., In re*

14 | *Grand Jury Subpoenas 89-3 & 89-4*, 902 F.2d 244, 248 (4th Cir. 1990) ("a joint …

15 | privilege cannot be waived without the consent of all parties who share the

16 | privilege."); *Am. Mut. Liab. Ins. Co. v. Superior Court*, 38 Cal. App. 3d 579 (1974)

17 | (where document was attorney-client privileged as to two clients, "neither client

18 | could waive the privilege for the other").  There was no motion to compel the

19 | production of the stolen documents or the Cover Letter from the Shusters, the

20 | Shusters were not before the Court in the *Siegel* Action, and there was never any

21 | ruling in the *Siegel* Action that the Shusters' privileges had been waived.  The

22 | power of this Court to grant a protective order in such case is unquestionable and

23 | clearly appropriate.  Fed. R. Civ. P. 26(c); *Mohawk*, 130 S. Ct. at 603; *McDowell v.*

24 | *Calderon*, 197 F.3d at 1256.[12]

25 | 

26 | [12] The decision of the Ninth Circuit in *Kirschner v. Uniden Corp. of America,* 842
27 | F.2d 1074 (9th Cir. 1988) is not to the contrary.  That case did not address a document
28 | created based on unlawfully obtained privileged communications. Nor did it address an
order concerning how a document could be used in pending litigation. Rather, it addressed

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

34

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

**D.      Given The Clearly Unethical Conduct That Led To Disclosure In The
         First Place, A Protective Order Is Appropriate To Guard The Fair
         Administration Of Justice And Professional Ethics**

A protective order is also clearly appropriate in this case because the brazen
misconduct that led to the creation of the Cover Letter not only violates the law, but
violates the core ethical principles of the profession of law.

It is beyond dispute that an attorney owes a client an inviolate duty of loyalty
and confidentiality.  Cal. Bus. & Prof. Code § 6068(e)(1); *Flatt v. Superior Court*, 9
Cal. 4th 275, 289, 885 P.2d 950 (1994) ("One of the principal obligations which
bind an attorney is that of fidelity, the maintaining inviolate the confidence reposed
in him by those who employ him, and at every peril to himself to preserve the
secrets of his client.") (quoting *Anderson v. Eaton,* 211 Cal. 113 (1930)).  As part of

---

(footnote continued)

whether a court in one case could order that documents obtained in another case be
returned to the other side.  *Id.* at 1081.  The case has since been distinguished on precisely
these grounds.  *See Smith v. Armour Pharmaceuticals Co.,* 838 F. Supp. 1573, 1577 ("A
court has much greater discretion to control the proceedings before it than it has to control
the conduct of parties outside the courtroom . . .  [A] court has 'inherent authority to
control and preserve the integrity of its judicial proceedings.'  . . . [*Kirschner*] would not
prohibit a court from exercising its equitable powers to control, and preserve the integrity
of, its judicial proceedings by limiting the use to which the documents could be put in the
proceedings pending before the court.") (citation omitted).  *See also Fayemi v. Hambrecht
& Quist, Inc.,* 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (distinguishing *Kirschner* on the
ground that *Kirschner* involved court efforts to prevent public disclosure, but "courts
necessarily have the inherent equitable power over their own process 'to prevent abuses,
oppression and injustices.'") (citations omitted).

*Kirschner* also preceded the unanimous decision of the United States Supreme
Court in *Mohawk*, and to the extent it could be construed to have any import beyond its
facts, any ruling that a court cannot grant a protective order to mitigate the negative
"spillover effects" of an initial privilege ruling by limiting the use of a contested
document, pending appeal, is inconsistent with *Mohawk* and therefore cannot support
denial of a protective order.  Here, where this case and the *Siegel* Action are before the
same District Court and Magistrate Judge and involve substantially overlapping parties,  a
remedy is clearly available.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

35

JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1   these duties, an attorney must not reveal attorney-client privileged information and

2   must zealously represent the interests of the client and not act adversely to such

3   interests. *See id.*; *In re Rindlisbacher*, 225 B.R. 180, 182-184 (B.A.P. 9th Cir. 1998).

4       Further, a member of the California State Bar who receives *inadvertently*

5   disclosed attorney-client privileged information has had, since at least 1999, a clear

6   ethical obligation to "immediately notify" the attorney for the other side.  *See supra*

7   note 5 (citing *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 810 (2007); *State*

8   *Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-657 (1999)); *United States*

9   *ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 173, 182 n.17 (C.D. Cal. 2001)).

10      It follows that an attorney, such as Warner Bros. General Counsel, John

11  Schulman, and in-house litigation counsel, Wayne Smith, who receives documents

12  that on their face reveal themselves to be not only privileged, but stolen from the

13  other side in a litigation, clearly should act with even greater caution and diligence

14  to protect the privilege and the fair administration of justice.  *See* D.C. Bar Opinion

15  318 (preventing any review of such documents); *Burt Hill, Inc.*, 2010 U.S. Dist.

16  LEXIS 7492, at *2–4, *30–33 (requiring the immediate return of privileged

17  documents intentionally sent to opposing counsel by an anonymous source, and

18  prohibiting *any* use of those documents).  "The justifications underlying the

19  protections afforded to inadvertent productions, however, apply with even greater,

20  and stricter, force in connection with advertent but unauthorized disclosures." *Burt*

21  *Hill*, 2010 U.S. Dist. LEXIS at *13.  *See Knitting Fever, Inc.,* 2005 U.S. Dist.

22  LEXIS 28435, at *5–7, *10–11 (where plaintiff's counsel received documents from

23  anonymous employee of defendant, "upon receipt of the documents, counsel for

24  [plaintiff] had a clear ethical responsibility to notify [defendant's] counsel and either

25  follow the latter's instructions with respect to the disposition of the documents or

26  refrain from using them pending ruling by the court.").  All of these fundamental

27  norms of professional conduct were plainly violated by the DC Defendants'

28  attorneys in connection with the stolen documents and Cover Letter.

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

36

1    DC's response appears to be along the lines of "too bad; the cat is out of the

2    bag." DC asserts that even though the Siegels and Mr. Toberoff litigated four times

3    over the stolen documents, the Siegels, Mr. Toberoff, and now the Shusters, still

4    needed to do more. According to DC, it matters not whether DC or its attorneys are

5    responsible for the publicity that its new Complaint (attaching the Cover Letter) has

6    generated. *See* Cohen Decl. ¶¶ 40-41, Exs. 37-38 (article titled "Read the Warner

7    Bros. Lawsuit Against Superman Lawyer" posted on thresq.hollywoodreporter.com

8    on May 14, 2010, within thirty minutes of filing of the complaint, linking to an

9    unfiled copy of the Complaint and Cover Letter that does not contain the electronic

10   header of the Court's Pacer system ). For obvious reasons, however, courts do not

11   take such a draconian blame-the-victim approach.

12       Rather, the unauthorized disclosure of privileged information does not cause a

13   waiver of the attorney-client privilege. *Sackman v. Liggett Group, Inc.*, 173 F.R.D.

14   358, 365 (E.D.N.Y. 1997) ("The assertion of privilege . . . is not waived through

15   public disclosure of a stolen privileged document"); *In re Grand Jury Proceedings*

16   *Involving Berkley & Co., Inc.*, 466 F. Supp. 863, 869 (D. Minn. 1979) (disclosure to

17   opposing party of stolen documents does not waive the assertion of privilege with

18   respect to those documents); *Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243,

19   1245-47, 1252 n.15 (D. Md. 1995); *Resolution Trust Corp. v. Dean*, 813 F. Supp.

20   1426, 1427-1430 (D. Ariz. 1993). Even if the disclosure of privileged documents

21   leads to widespread publicity, courts will still guard against the use of such

22   privileged documents in legal proceedings where the disclosure was unauthorized.

23   A District Court addressed precisely this issue in *Smith v. Armour Pharmaceutical*

24   *Co.*, 838 F. Supp. 1573, 1575-77 (S.D. Fla. 1993), stating "what if a confidential

25   memorandum is stolen from an attorney's office and subsequently published in

26   newspapers across the country? Clearly, the client should not be held to have waived

27   the attorney-client privilege." *See also Resolution Trust*, 813 F. Supp. at 1427, 1430

28   (unauthorized leak published in *Washington Post* should still afforded protection in

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1
37
JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1  litigation based on attorney-client privilege); *In re Dayco Corp. Derivative Sec.*

2  *Litig.*, 102 F.R.D. 468, 470 (S.D. Ohio 1984) (publication in *Dayton Daily News* of

3  excerpt of diary written by employee of Defendant should not be considered a

4  waiver of the privilege that attaches to the diary).[13]

5      So well established is this authority that in the proceedings leading up to

6  Judge Larson's December 4, 2008, disclosure order, DC did not contend, nor did

7  Judge Larson find, that the unethical theft of the documents resulted in a waiver of

8  the privilege. Instead, Judge Larson relied solely on the proposition that privilege

9  had been waived because he mistakenly believed, due to the DC Defendants'

10 misrepresentation of the record, that Magistrate Judge Zarefsky had held in the April

11 30, 2007, Order that the Cover Letter should have been listed on a privilege log. As

12 explained in detail above, no such requirement applied and Magistrate Judge

13 Zarefsky did not so hold. *See supra* Sections II.E., III.B.

14     Given that the Cover Letter's forced production was based on this sole

15 finding of waiver that misconstrued the record, DC now contends that the Siegels

16 somehow waived their privilege by not doing more to protect the document *after*

17 Judge Larson ordered its disclosure. However, there was no need for them to do

18 more. Judge Larson had ruled that discovery was closed and that there would be no

19 further discovery concerning the Cover Letter. Cohen Decl. Ex. 33 (March 13,

20 2009, Final Pre-Trial Conference Order at 9). Once the Siegels successfully

21 defended against the motion to reopen discovery, no further damage could be done

22 in the ongoing District Court proceedings, leaving the contested privilege ruling for

23 appeal. That was the end of the matter.

24

25     [13] *Fayemi*, 174 F.R.D. at 325-26 (precluding plaintiff from using in litigation

26 information stolen from plaintiff's former employer); *Furnish v. Merlo,* 1994 WL 574137

27 (D. Or. Aug. 29, 1994) (finding that plaintiff's counsel acted improperly in retaining and using in litigation documents stolen by plaintiff from her former employer).

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1                                38
                JOINT STIPULATION RE: MOTION FOR A PROTECTIVE ORDER

1    There is real harm to the profession of law and the administration of justice,

2  as well as to the parties, if a protective order does not issue.  The Siegels and their

3  counsel acted with diligence in *repeatedly* briefing and arguing that the stolen

4  documents and Cover Letter are privileged, that the DC Defendants must not be

5  permitted to exploit the theft and disclosure of privileged communications in

6  litigation, that Magistrate Judge Zarefsky had not ruled on the status of the Cover

7  Letter or post-litigation documents and that the law of the case doctrine was

8  therefore inapplicable.  Nothing more was required.  For their part, Joseph Shuster's

9  sister, Jean Peavy and the Shuster Executor, Mark Warren Peary, were not even

10  before the Court in connection with the discovery dispute that led to the December

11  4, 2008, disclosure order; however, their privileged information, too, would unfairly

12  be subject to extensive further discovery if a protective order is not issued.

13    The co-creators of *Superman* may have died poor men, but Congress gave

14  their estates the remedy of terminating inauspicious grants of copyright.  Congress

15  did not require superhuman power to vindicate such right.  It simply required the

16  transmission of a notice of termination within a prescribed time period.  That

17  occurred.  Summary judgment in favor of the Siegels was granted.  The Siegels have

18  validly terminated Jerry Siegel's original grant of his Superman copyright interests

19  over seventy years ago.  The District Court ruled that discovery in the *Siegel*

20  Litigation was closed, despite the disclosure of the Cover Letter.  That case should

21  be allowed to conclude, and the Ninth Circuit should be allowed to rule on the

22  privilege issues before the Cover Letter, which purports to describe privileged

23  documents stolen from Mr. Toberoff's legal files and duly listed on privilege logs, is

24  exploited in DC's collateral attack on the *Siegel* Action.

25  ### III.  <u>CONCLUSION</u>

26    A protective order should issue in this case prohibiting all discovery relating

27  to the Cover Letter, or at a minimum, any such discovery should be stayed pending

28  a Ninth Circuit ruling on appeal in the *Siegel* Litigation.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

56591.1

1
**PLAINTIFF'S PORTION**

2
**I.    DC COMICS' POSITION**

3        Defendants' motion misstates the factual record, fails to address the courts'

4 prior rulings directly refuting their positions, and not only lacks legal support, but is

5 directly contrary to Ninth Circuit law.  The 37-page brief proceeds from five false

6 premises—each of which is independent grounds to deny defendants' motion.  Each

7 is addressed below.

8        **A.    Magistrate Zarefsky Found In April 2007 That Warner Bros.**

9             **Acted Appropriately, And Defendants Long Ago Waived Any**

10            **Right Or Ability To Challenge That Ruling.**

11       Defendants devote 11 pages of their motion to attacking personally Warner

12 Bros.' in-house counsel, John Schulman and Wayne Smith:  "All of these

13 fundamental norms of professional conduct were plainly violated by the DC

14 Defendants' attorneys in connection with the stolen documents and the Cover

15 Letter." *Supra* at 36.  *Not once* in their over-long brief do defendants ever mention

16 that these accusations were previously litigated before Magistrate Zarefsky, and that

17 Judge Zarefsky concluded that Schulman and Smith "acted professionally [and]

18 reasonably," in the Magistrate's view.  Seto Decl. Ex. N at 177:3-4.  Defendants

19 *never* objected to or sought review of that finding, and as Judge Larson held in

20 2008, the time for objecting "has long since expired."  Seto Decl. Ex. R at 217.[14]

21       Even absent this obvious waiver, there is no basis to challenge Schulman's

22 and Smith's conduct.  Each took the proper precautions to ensure that their handling

23 of the Toberoff Timeline and enclosed documents was consistent with the law.

24
_____

25       [14] In failing to address critical parts of the record, including these two important
rulings, defendants cannot take refuge in the mass of record material appended to

26 their motion.  Defendants had an obligation to refer specifically to relevant segments
of the record on these crucial points.

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Immediately after receiving an anonymous package containing the Timeline and
2  enclosed materials, Schulman instructed its recipients "to send the documents to his
3  office without reviewing them."  Seto Decl. Ex. K at 145 ¶ 2.  Schulman "only
4  looked at the cover letter" and did "not review the documents at all."  *Id.* at 146 ¶ 4.
5  Schulman and Smith discussed the appropriate procedure for dealing with the
6  packages, and Smith briefly reviewed the Timeline and "thumbed through the
7  Superman Documents contained with the letter, but did not read any of them in
8  detail."  *Id.* at 145-46 ¶¶ 2-4.  Smith told Schulman "it appeared that certain of the
9  documents in the package were privileged," and that he would "review the case law
10  in the area to determine what level of review, if any, of the Superman Documents
11  was appropriate."  *Id.* at 146 ¶ 4.  "Schulman agreed with this approach."  *Id.*

12  Smith researched the law and followed the governing procedure.  Seto Decl.
13  Ex. K at 146-48 ¶¶ 5-8.  Smith "spent approximately a half hour reviewing" the
14  documents; any document that appeared privileged, he immediately "ceased
15  reading."  *Id.* at 147-48 ¶ 8.  One day after receiving the anonymous packages,
16  Schulman and Smith agreed they would give the Toberoff Timeline and its
17  enclosures to "a neutral third party [to] hold … pending either the parties'
18  agreements as to their disposition or order of the Court."  *Id.* at 149 ¶ 13.  They
19  asked John Quinn, a respected attorney and former president of the Los Angeles
20  County Bar Association, to act as escrow agent and, in "an abundance of caution,"
21  "handed over *all* of the documents to Mr. Quinn, not just those that were clearly or
22  potentially privileged."  *Id.*  The next business day, Quinn contacted Toberoff "to
23  inform [him] of Warner Bros.' receipt of the Whistle-blower Documents and what
24  Warner Bros. had done with them."  Seto Decl. Ex. J at 113.  Neither Schulman nor
25  Smith "shared the contents of the Superman Documents with any of the outside
26  counsel."  Seto Decl. Ex. K at 149 ¶ 13.

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

41

1    Throughout the parties' ensuing, lengthy dispute over whether the Toberoff

2    Timeline and attached documents should be produced, defendants took the same

3    positions repeated now.  In the parties' extensive correspondence, defendants'

4    opposition to Warner Bros.' motion to compel, and oral argument, defendants

5    accused Warner Bros.' counsel of all sorts of misdeeds.  Magistrate Zarefsky

6    allowed defendants extensive time and latitude to fully explore these issues,

7    including at the April 30, 2007, hearing on Warner Bros.' motion to compel:  "I

8    think we've exhausted it, Mr. Toberoff."  Seto Decl. Ex. N at 176:15.

9    Magistrate Zarefsky also expressly rejected Toberoff's claims that Smith and

10   Schulman acted improperly.  The "procedure" they followed, the Magistrate stated,

11   "does not seem unreasonable to me."  *Id.* at 171:21-22.  "*I think [Smith and*

12   *Schulman] have acted professionally, and I think they've acted reasonably*.  The

13   record does establish that trial counsel has not reviewed the documents.  They set

14   up a procedure to segregate them, deposit them with an escrow, and seek a

15   resolution of this dispute."  *Id.* at 177:3-7 (emphasis added).

16   In the more than three years since the Magistrate made these findings,

17   defendants never once objected to or sought reconsideration of his rulings.  This is

18   despite the fact that defendants challenged (unsuccessfully) other specific findings,

19   such as Judge Larson's statement that the Timeline "contained embarrassing and

20   potentially questionable conduct" by Toberoff.  Seto Decl. Ex. Y at 269:26-28.

21   Judge Larson made very clear that, as of September 2008—let alone now—

22   "the time to appeal Magistrate Judge Zarefsky's [April 2007] Order to this Court

23   has *long since expired*."  Seto Decl. Ex. R at 216-17 (emphasis added).  Judge

24   Larson also made clear that this dispositive finding of waiver, based on defendants'

25   choice not to object or to appeal, applied to whatever objections defendants had to

26   the Magistrate rulings, new or old.  As Judge Larson explained, if defendants

27   "wished to press such new claims of privilege *or any other basis for challenging*

28

42

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  *production of the same*, Magistrate Zarefsky's Order deemed them waived." *Id.*

2  (emphasis added).  Defendants, of course, fail to mention these specific, critical

3  rulings in their lengthy attack on Warner Bros. and and Judge Larson's orders.

4      **B.**    **Defendants Chose In 2009 To Make The Toberoff Timeline A**

5                 **Public Document, They Repeatedly And Decisively Waived Any**

6                 **Privilege Before Then, And They Cannot Complain Now About the**

7                 **Publication Of The Document.**

8        Defendants argue that DC Comics inappropriately publicized the Toberoff

9  Timeline in filing its complaint, effectively ruining the confidentiality protection the

10  document "should have received," and thereby excusing defendants' failure to

11  protect the confidentiality of the document in the months that followed the filing of

12  the complaint.  *Supra* at 26, 27, 33.  This claim is specious, and defendants' motion

13  deliberately fails to address the dispositive and relevant proof to the contrary.

14        1.  After enduring over two years of motion practice and delay in the *Siegel*

15  cases, DC Comics finally received production of the Toberoff Timeline on

16  December 10, 2008.  Seto Decl. Ex. T.  None of the defendants moved for a

17  protective order sealing the document, deeming it confidential under the parties'

18  stipulated protective order, or prohibiting its use in the *Siegel* actions or otherwise.

19  Just the opposite:  *defendants* agreed to publicly file the Toberoff Timeline on

20  March 2, 2009.  Seto Decl. Ex. Z at 337-44.

21        In February 2009, DC Comics notified defendants that they intended to move

22  to re-open discovery in the *Siegel* actions; the discovery deadline had passed, and a

23  mini-trial was soon to occur on the Siegels' alter-ego allegations.  The joint

24  stipulation to DC Comics' motion attached the Toberoff Timeline as Exhibit 1 to its

25  counsel's declaration.  Seto Decl. Exs. Y, Z.  Toberoff and his colleague argued in

26  correspondence with DC Comics that a protective order covering the Timeline was

27  appropriate.  Seto Decl. Exs. V, W.  DC Comics disputed that assertion and told

28

43

1   Toberoff to move for a protective order if he wanted the document sealed, because,

2   "[a]bsent an order from the Court," DC Comics intended to file its motion and the

3   Timeline, publicly, as planned.  Seto Decl. Ex. X.  Defendants did not move for a

4   protective order.  Nor did they file any properly noticed cross-motion to DC

5   Comics' discovery brief.  Instead, Toberoff chose merely to include a request at the

6   end of the Siegels' opposition papers that the Timeline be "returned" to him and DC

7   Comics "be barred from further attempting to use it in this litigation *or otherwise*."

8   Seto Decl. Ex. Y at 321:11-13 (emphasis added); *see id.* at 270:1-2, 330:17-18.  In

9   their portion of the Joint Stipulation filed publicly on March 2, 2009, defendants

10  also disclosed in detail many of the Timeline's contents.  *Id.* at 302-05.

11       Defendants make no mention of this relevant history.  For obvious reason—

12  since the record shows that for some 16 months—from March 2009 to July 2010—

13  defendants never tried to remove the document from the public record or seal it.

14       2.  Also untrue is defendants' claim that Judge Larson's ruling denying DC

15  Comics' March 2009 discovery motion "effectively eliminated any possibility of

16  negative effects" from the production of the Timeline.  *Supra* at 26.  Judge Larson's

17  order reads in its entirety:  "Discovery is complete.  [DC Comics'] motion to reopen

18  discovery filed March 2, 2009 is DENIED."  Seto Decl. Ex. AA at 355:6-7.  The

19  order, by its own terms, governed only one phase of the *Siegel* actions, and an alter-

20  ego trial that was about to occur:  "this Final Pretrial Conference Order shall

21  supersede the relevant pleadings relevant to the first phase of trial on April 21, 2009

22  and govern the course of such trial."  *Id.* at 363.  The ruling said nothing about the

23  use of the Timeline as evidence in any phase of the *Siegel* case, it only precluded

24  further discovery at that point in time.  Importantly, the ruling also did not *grant*

25  defendants' request, noted in their opposition papers, that DC Comics "be barred

26  from further attempting to use [the Timeline] in [the Siegel] litigation or otherwise."

27  Seto Decl. Ex. Y at 321:11-13; *see id.* at 270:1-2, 330:17-18.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1     Defendants' assertion that there was no reason to take further action to protect

2  the Timeline after Judge Larson's order issued defies the clear record and basic

3  common sense.  Defendants identified the very reason to take further action in the

4  request that Judge Larson refused to grant:  DC Comics, or anyone else injured by

5  the conduct it revealed, could make use of the Timeline in the *Siegel* actions or

6  "other" settings, including this litigation.  Knowing this and knowing Judge Larson

7  had rejected their request that DC Comics be barred from doing so, defendants did

8  *nothing*.  They filed no motion.  They filed no writ of mandamus.  They just let the

9  Timeline sit in the public record for 16 months.

10     3.  Defendants mention none of these critical facts in their motion.  Nor do

11  they address the fact that through 2006, 2007, 2008, 2009, and 2010, they repeatedly

12  waived any and all rights and interests in the Timeline document:

13  •  On July 18, 2006, the escrow agent sent copies of every escrow document—

14     including the Timeline—to Toberoff and the Siegels.  Seto Decl. Ex. D.  Two

15     days later, Toberoff produced a privilege log for the Siegels.  Seto Decl. Ex.

16     E.  That privilege log did not list the Timeline or any portion of it.

17  •  On August 11 and October 16, 2006, and on March 27, 2007, the Shusters

18     produced privilege logs in the Siegel Cases.  Despite their current claims that

19     the Timeline contains material over which the Shusters maintain privilege

20     objections, none of these Shuster privilege logs contained any reference to the

21     Timeline.  Seto Decl. Exs. F, I, M.

22  •  On August 14, 2006, Magistrate Zarefsky ordered:  "[The Siegels] shall

23     produce all privilege logs, including any revisions, by September 29, 2006."

24     Seto Decl. Ex. G.  Defendants produced two additional privilege logs after

25     this order issued; these logs did not include the Timeline.  Seto Decl. Ex. H.

26  •  On April 30, 2007, Magistrate Zarefsky heard oral argument on DC Comics'

27     Motion to Compel Production of the Whistle-blower Documents.  Seto Decl.

28

45

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Ex. N.  Magistrate Zarefsky ordered Toberoff to prepare a further declaration
making clear which documents, if any, over which defendants were asserting
privilege.  Seto Decl. Ex. N at 177:10-178:5.  Defendants did not assert any
privilege over the Timeline document.  Seto Decl. Ex. O at 195.

- On September 26, 2008, based on defendants' repeated failure to identify the
  Timeline as privileged, Judge Larson found that any and all privilege claims
  in the document had been waived.  Seto Decl. Ex. R.

- On March 2, 2009, defendants discussed the contents of the Timeline in a
  publicly filed discovery brief and agreed to include the Timeline as Exhibit 1.

- After DC Comics filed this lawsuit in May 2010, defendants never once, for
  over two months, contended that the Timeline could not be used or that a
  protective must issue barring its use.  To the contrary, Toberoff issued a press
  release specifically discussing the Timeline, its origins, its contents, and its
  author (whom he claims to know, but still refuses to disclose).  Seto Decl. Ex.
  BB.  Toberoff gave press interviews as well, in which he discussed the
  Timeline openly and said he would sue DC Comics and its lead counsel in
  this case, Daniel Petrocelli, among others.  Seto Decl. Ex. CC.

- Despite these public comments, Toberoff and his clients did nothing to strike
  the Timeline from the public record or prevent its use.  This is despite the fact
  that Toberoff and his counsel—over the course of six weeks—had numerous
  conversations with DC Comics about, *inter alia*, the contents of DC Comics'
  complaint, discovery DC Comics sought, motions defendants intended to file,
  and various scheduling matters.  Petrocelli Decl. ¶¶ 10-17, 19, 21-22 & Exs.
  H-N, O, Q (filed with DC Comics' pending discovery motion).  Only after
  DC Comics pressed repeatedly to take the depositions of Joanne Siegel and
  Jean Peavy—and at the end of a lengthy meet-and-confer meeting on July 13,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  2010 (two months after the complaint had been filed)—did defendants first

2  raise objections to the Timeline.  *Id.* ¶¶ 23-24 & Ex. R.

3  Finally, defendants' actions over the past four years speak far louder than

4  their words.  They may now claim that the author of the Timeline perpetrated a

5  "malicious theft of privileged information on a grand scale," and that the Timeline

6  "is a frontal attack on the fundamental norms of the legal profession."  *Supra* at 32,

7  28.  Yet in the four years since this alleged grave crime occurred, defendants have

8  done *nothing* consistent with that view.  They have presented no evidence that they

9  reported this individual to the authorities, to the police, or to the state bar.  There is

10  no record that they even sued the author, despite the fact that all statutes of

11  limitation to do so have likely run.  There is, of course, one obvious explanation

12  why defendants never took any of these actions and never protected the rights they

13  now assert but clearly waived:  all that is said in the Timeline is true.  This also

14  explains why defendants will not disclose the author's identity.  Seto Decl. Ex. BB.

15  Suppression of damaging evidence is the goal of defendants' motion, not

16  preservation of professed rights.

17  **C.  All The Defendants—Including The Shusters—Waived Any And**

18  **All Rights In Connection With The Timeline.**

19  Defendants argue the Shusters are not bound by the courts' rulings because

20  they were not named parties in the *Siegel* actions.  *Supra* at 28, 34, 39.  This is

21  incorrect.  The Shusters were involved in the *Siegel* actions as witnesses, and while

22  represented by the Siegels' lawyers, they were deposed, responded to document

23  requests, and produced three sets of privilege logs.  Seto Decl. Exs. F, I, M.

24  Indeed, Toberoff represented to Magistrate Zarefsky that one of the reasons it

25  was taking him so long to provide clear and complete responses was that he

26  represented the Shusters, they had documents for his review, and he needed to

27  protect their rights.  In response to DC Comics' motion to compel, Toberoff swore

28

47

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   in a declaration that he had "searched the files of Jean Peavy, Warren Peary, and the
2   Estate of Joe Schuster [sic]" to confirm that all documents involving the Shuster
3   heirs had "either been produced or listed in a privilege log." Seto Decl. Ex. L at 154
4   ¶¶ 23-24.  In response to Magistrate Zarefsky's order that he submit a declaration
5   matching each of the escrow documents with documents that had either been
6   produced or listed on a privilege log, Toberoff insisted that he needed several weeks
7   to compare the escrow documents with documents in the Siegel *and* Shusters' files.
8   Seto Decl. Ex. N at 189:6-190:1.  When pressed by Magistrate Zarefsky on the need
9   for this time, Toberoff explained:  "[T]his doesn't just involve plaintiffs' production
10  …, but what we do to the extent that there are documents in the stolen documents
11  that don't belong to plaintiffs; that they are documents of the Schusters [sic] …."
12  *Id.* at 190:1-6.  Magistrate Zarefsky finally agreed:  "All right.  You can have three
13  weeks ….  Match them up from whoever's files, Mr. Toberoff." *Id.* at 192:4-6.

14          Furthermore, as defendants also fail to mention, the Siegels asserted
15  privileges on behalf of the Shusters, relying on alleged common-interest privileges.
16  Seto Decl. Ex. U at 240.  Defendants argued that the Siegel and Shuster heirs "both
17  share a common interest in the litigation … over Plaintiffs' recaptured *Superman*
18  copyrights and the Shuster Estate's prospective interest in such copyrights." *Id.*
19  "That the Shuster Estate is not a party to this litigation," Toberoff contended, "does
20  not alter the privileged status of the communication, as *the joint interest privilege is*
21  *not limited to co-parties to a litigation*." *Id.* (emphasis added).  Defendants now
22  take the opposite position, falsely asserting that the Shusters did not waive their
23  rights in the *Siegel* actions because they "were not even parties to the *Siegel*
24  Action." *Supra* at 34.  These undisclosed changes in position are indefensible.

25
26
27
28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

48

1

### D.    Judge Larson Rightly Ordered the Timeline Produced and Did Not
### Misunderstand Magistrate Zarefsky's Order.

Some 14 pages of defendants' motion are devoted to the argument that DC Comics, "[t]hrough sleight of hand," "misrepresent[ed]" the record surrounding Magistrate Zarefsky's April 2007 rulings, and that this "misunderstanding" led Judge Larson erroneously to hold that all privilege claims related to the Timeline had been waived. *Supra* at 2-4, 16-25, 30-31, 38. Defendants' position is demonstrably wrong for several reasons, and is refuted by a declaration Toberoff filed and rulings Judge Larson made that are directly on point.

By March 2007, the escrow agent had held the documents at issue for many months, and defendants refused to produce copies to DC Comics. DC Comics filed a motion on March 26, 2007, pressing defendants to produce any documents that the escrow agent possessed that were "non-privileged," as well as any documents that defendants might claim were privileged, but that had not been identified as such on a privilege log. Seto Decl. Ex. J at 103-04. Toberoff filed a declaration in response to this motion and represented that he had gone through his own files, the Siegels' files, and the Shusters' files, and confirmed that the requisite documents had been produced or listed on privilege logs. Seto Decl. Ex. L at 154 ¶¶ 22-24. The Toberoff Timeline document *was never logged* as privileged.

On April 30, 2007, Magistrate Zarefsky heard oral argument on DC Comics' motion. He noted that Toberoff's declaration "left a little wiggle room" and "[w]hat your declaration doesn't say is that … you went through these whistleblower documents, and that you verified that each of the whistleblower documents either had been produced or had been listed on the privilege log. It doesn't say that." Seto Decl. Ex. N at 177:8-10, 169:14-20. Toberoff responded: "that was certainly my intention to say that, and I'm saying that now." *Id.* at 169:21-23; *id.* at 170:4-7. Out

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

49

1   of an abundance of caution, the Magistrate ordered Toberoff to submit a new

2   declaration and told him exactly how to structure it:

> I want you to submit a declaration that does identify *by the Bates numbers of the escrow documents* and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced.
>
> So, *you take the Bates numbers of the escrow documents* and say, 'Here are the corresponding Bates numbers of the documents that have already been produced.' Take the Bates numbers of the escrow documents and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged. All right? So, put that in your declaration.
>
> Then the escrow holder, Mr. Bergman, is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.
>
> The others can be delivered to trial counsel for defendants because they're either unprivileged, or, *if they were privileged, privilege has been waived because they weren't listed on the privilege log.*

14  *Id.* at 177:11-178:5 (emphases added). Toberoff asked for several weeks to prepare

15  this new declaration and said he wanted, yet again, to go through the Siegels' and

16  Shusters' files and the privilege logs they and others had prepared, as well as the

17  documents they had all produced. *Id.* at 189:6-191:15.

18      Pasted below is a copy of the first page of the declaration that Toberoff

19  submitted on May 21, 2007. Seto Decl. Ex. O at 195. This declaration refutes every

20  argument defendants make on these points in their motion:

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

50

I, Marc Toberoff, declare as follows:

1.    I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration pursuant to Magistrate Zarefsky's order at the April 30, 2007 hearing ("Order") on defendants' motion to compel the production of documents stolen from my law offices ("Documents"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    Pursuant to the Order, I have accounted for each of the Documents as bate stamped by John Quinn, Esq. (designated by "Q") and identified by bates numbers the Documents produced to defendants by Plaintiffs or third party witnesses, as applicable, or listed in a privilege log furnished to defendants by Plaintiffs and/or such third parties:

| | |
|---|---|
| Q 0001- 7 | Un-dated defamatory cover letter |
| Q 0008-9 | Plaintiffs' Kevin Marks ("Marks") Privilege Log # 325 |
| Q 0010 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated October 10, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. |
| Q 0011-13 | Produced by Plaintiffs- 000001888-90 |
| Q 0014-18 | Produced by IPW, LLC- 17-20 |

Magistrate Zarefsky's order was clear:  Toberoff had the obligation to identify "*by the Bates numbers of the escrow documents*" which documents had been produced, which had not, and which had been listed on privilege logs or not.  Seto Decl. Ex. N at 173:11-22.  Defendants argue the Magistrate did not have the Toberoff Timeline in mind when he issued his order concerning the "escrow documents," *supra* at 18-21, 29-30, but *the very first document* Toberoff listed in his sworn declaration in response to that order was the "Un-dated defamatory cover letter."  That letter is the Toberoff Timeline, which Toberoff listed, as seen above,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  by its document bates-stamp number that the escrow agent had affixed to it:

2  "Q 0001-7."  Seto Decl. Ex. O at 195.

3      Despite Toberoff's having listed the Timeline as the first document in his

4  court-ordered declaration, defendants' lead argument in their motion is that "the

5  Cover Letter"—*i.e.*, the Timeline—"was not addressed in the April 30, 2007,

6  Order."  *Supra* at 30.  This representation is plainly false.  In his sworn declaration,

7  Toberoff states that, "*Pursuant to the Order*," he had "accounted for each of the

8  Documents as bate [sic] stamped by John Quinn, Esq.," and the first document he

9  listed *is the Timeline*, Q 0001-7.  The Timeline, *unlike* the next two documents on

10  the list (Q 0008-9 and Q 0010), is not listed or marked as privileged in any way.

11  This was despite Magistrate Zarefsky's clear admonition:  "The others can be

12  delivered to trial counsel for defendants because they're either unprivileged, or, if

13  they were privileged, privilege has been waived because they weren't listed on the

14  privilege log."  Seto Decl. Ex. N at 178:2-5.

15      Defendants obscure these issues, arguing the Timeline "was a post-litigation

16  document, which the Siegels and Toberoff were not required to log under the

17  parties' agreement."  *Supra* at 30.  This, too, is wrong.  As the third entry on the log

18  (Q 0010, *supra*) and many others (*e.g.*, Q 0618) show, Toberoff knew full well how

19  to assert this alleged "post-litigation" privilege, and he did not do so with respect to

20  the Timeline.  *Compare* Q 0001-7 (*supra*), *with*:

21

22  Q 0618     Privileged communication between Law Offices of Marc
           Toberoff and Plaintiff Laura Siegel Larson dated October 10,
23           2005, after the start of this litigation. This document is *not*
           required to be listed in a privilege log pursuant to the parties'
24           standing agreement. (Duplicate of Q 0361).

25

26      Indeed, in the weeks afforded to Toberoff to prepare his declaration and

27  consult the Siegel and Shuster files, he made sure to list close to 10 documents

28                                      52

1   covered by the alleged post-litigation privilege, but *never* claimed that the Timeline

2   was among them.  Seto Decl. Ex. O at 195, 198-99, 201-04.  That is an argument he

3   invented after the Timeline was ordered produced, persists in making here, and that

4   makes no sense—not then, not now.  In his letter submitting his May 2007

5   declaration, Toberoff conceded that all documents he listed and were not marked as

6   privileged "are to be produced"; he listed the Timeline as the first document on the

7   list, with *no* privilege notations.  Seto Decl. Ex. P (Toberoff:  "Any documents not

8   identified in my Declaration as listed in a privilege log or as previously produced to

9   Defendants are to be produced, with the exception of the clearly Privileged

10  Litigation Communications identified in my declaration.") (emphasis in original).

11      In any event, Judge Larson decisively rejected Toberoff's claim that a post-

12  litigation exception existed.  He ruled that the Siegels' "argument that the parties

13  had reached an agreement beforehand that any post-litigation attorney-client

14  communications did not have to be listed in a privilege log to preserve its privilege

15  status is … simply mistaken."  Seto Decl. Ex. R at 217.  Defendants deliberately

16  make no mention of that adverse ruling, while spending pages of their brief arguing

17  to the contrary.  *Supra* at 3, 14-15, 20-25.

18      In short, Judge Larson knew that defendants were given multiple chances to

19  assert and amend their privilege claims, and that Magistrate Zarefsky had given

20  Toberoff and defendants ample opportunity to prepare a definitive list, including a

21  final chance in May 2007.  Defendants chose to make no privilege claim about the

22  Timeline in any of their privilege logs in 2006 or 2007, or in Toberoff's March and

23  May 2007 declarations.  Judge Larson rightly held them to that choice.  As he

24  explained, Toberoff's "asserted claims for privilege are not well-taken .… Although

25  [he] suggest[s] that [the Court's] reading of Magistrate Judge's order is not a fair

26  one and lacks common sense, the language of his order is clear and unambiguous."

27  Seto Decl. Ex. R at 216.  In his December 4, 2008 order, Judge Larson reiterated:

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   "What was a simple process … became complicated by 'additional

2   issues/arguments' submitted by Mr. Toberoff…."  Seto Decl. Ex. S at 219.

3        Judge Larson not only rejected defendants' arguments rehashed in the present

4   motion, he found that defendants had waived any right to challenge Magistrate

5   Zarefsky's findings or the process he provided.  Seto Decl. Ex. R at 216-17.  Judge

6   Larson correctly interpreted and enforced the Magistrate's rulings, and defendants'

7   attacks on both judges' rulings—and latest invitation to relitigate every issue in the

8   two years that led up to them—are unfounded.  Indeed, as shown in the next

9   Section, the Court, in this case, may not revisit those rulings or issue the protective

10  order that plaintiff seeks, as a matter of law.[15]

11       **E.**    **There Is No Legal Basis For The Relief Defendants Seek.**

12           **1.**    **Ninth Circuit Law Forbids The Motion Defendants Filed.**

13       It is well-established that Rule 26(c) does not authorize courts to issue

14  protective orders in one case limiting the use of documents obtained through

15  discovery in another case.  *See, e.g.*, *Kirshner v. Uniden Corp. of Am.*, 842 F.2d

16  1074, 1080-81 (9th Cir. 1988); *U.S. v. Comco Mgmt. Corp.*, 2009 WL 4609595, at

17  *2 (C.D. Cal. Dec. 1, 2009) ("Rule 26(c) provides no authority for the issuance of

18  protective orders purporting to regulate the use of information or documents

19  obtained through means other than discovery in the pending proceeding.");

20  *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984) (defendants

21       [15] As with the Magistrate and Judge Larson, defendants launch a series of attacks

22  on the escrow agents, including the false suggestion that one of the agents agreed
    with defendants' arguments concerning the privileged status of the Timeline.  *Supra*

23  at 12-13, 21-22.  These attacks are baseless and were long ago waived.  Moreover,
    the escrow agent only deferred final ruling on the production of the Timeline to

24  Judge Larson because Toberoff sent him one harassing letter after another
    instructing him not to act.  *See, e.g.*, Seto Decl. Ex. EE.  In fact, Judge Larson found

25  that Toberoff "went beyond the bounds of Magistrate Judge Zarefsky's order" when

26  he instructed the escrow agent not to turn over documents.  Seto Decl. Ex. R at 216.
    Again, defendants' brief never mentions these critical facts.

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  "should have sought a protective order in the [separate] case").  Defendants' efforts

2  to circumvent this clear rule are unavailing.  Defendants have cited to no case that

3  would justify the issuance of such a protective order—especially where, as here,

4  Toberoff, the Siegels, and the Shusters have repeatedly waived any right to

5  protection through their consistent words and conduct.

6      In *Kirshner*, 842 F.2d at 1076, defendant sought a protective order requiring

7  the return of documents it claimed were privileged and that plaintiff's attorney had

8  obtained through discovery in a separate action against defendant.  The court

9  rejected defendant's request, holding that "a district court's power to control

10  discovery *does not extend to material discovered in a separate action*,

11  *notwithstanding the fact that the parties were identical*."  *Id.* at 1081 (emphasis

12  added).  The proper remedy for defendants would have been "to seek a protective

13  order from the court that presided over the discovery process in that discrete

14  proceeding."  *Id.*; *see also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710

15  F.2d 940, 944-45 (2d Cir. 1983) (Rule 26 does not give court authority to prohibit

16  disclosure of data obtained through means other than court's discovery processes).

17      Defendants argue that despite *Kirshner*'s clear rule, the Court still has the

18  "inherent authority" to issue such a protective order.  *Supra* at 34-35 & n.12.  This is

19  incorrect.  In the limited instances where courts have issued protective orders

20  pursuant to their "inherent authority," the documents at issue were not *ordered*

21  disclosed by another court, as Judge Larson did here, but were obtained extra-

22  judicially and improperly.  *See Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573,

23  1577 (S.D. Fla. 1993) (attorney-client privilege memo obtained from unauthorized

24  disclosure to media); *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324-25

25  (S.D.N.Y. 1997) (confidential documents stolen by plaintiff from employer); *Adams*

26  *v. Shell Oil Co.*, 143 F.R.D. 105, 107 (E.D. La. 1992) (documents obtained through

27  inappropriate *ex parte* contact with unidentified employee of defendant).  In none of

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   the cases that defendants cite was there a full and complete process, as here, where

2   after motions and argument from the parties, the court ruled that the contested

3   documents must be produced.  Also, in none of defendants' cases was the

4   complaining party, as here, making a collateral attack on a ruling in another case.

5       Defendants' fallback argument is that a single line of dicta in *Mohawk Indus.*,

6   *Inc. v. Carpenter*, 130 S. Ct. 599 (2009), casts the well-recognized rule in *Kirshner*

7   in doubt.  *Supra* at 34-35 & n.12.  This is nonsense; the *Mohawk* Court never

8   addressed the rule in *Kirshner*, much less ever said that parties, like defendants here,

9   could file motions challenging discovery rulings in collateral proceedings, let alone

10  wait close to two years to do so.  *Mohawk* dealt with whether attorney-client

11  privilege rulings are immediately appealable under the collateral-order

12  doctrine.  The Court held that such orders are not appealable, reasoning that,

13  although the attorney-client relationship is important, erroneous evidentiary rulings

14  can be remedied on appeal by remanding for a new trial.  *See id.* at 606-07.  The

15  Court noted that such rulings are seldom reversed on appeal because, as here, "they

16  rest on factual determinations for which appellate deference is the norm."  *Id.*

17       In dicta, the Court advised litigants that if they objected to a particular

18  privilege ruling, they could move for a protective order or seek mandamus.  *Id.* at

19  608.  Defendants, of course, did neither.  And, in any event, this dicta is fully

20  consistent with *Kirshner*.  *Kirshner* mandates that if you have an objection to a

21  discovery issue, you must do something about it.  You cannot wait for a new case

22  and another court—even if the same parties are involved—to address that issue.  *See*

23  842 F.2d at 1080-81.  *Mohawk* said nothing about parties not having to follow these

24  very sensible, well-established rules.

25       The *Mohawk* Court also said nothing—nor would any reasonable jurist—

26  about waiting 20-some months to file such a motion.  The law is legion that sitting

27  on one's rights for so long effectuates a waiver.  *See, e.g.*, *U.S. v. De La Jara*, 973

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

F.2d 746 749-50 (9th Cir. 1992) (defendant waived attorney-client privilege by doing nothing to recover assertedly privileged evidence or protect its confidentiality for six months); *SS Farms, LLC v. Sharp*, 2010 WL 1558682, at *4 (E.D. Cal. Apr. 19, 2010) (appellant waived attorney-client privilege by failing to make reasonable efforts to protect privilege for over a year); *Moreno v. AutoZone, Inc.*, 2008 WL 906510, at *5 (N.D. Cal. Apr. 1, 2008) (work-product privilege waived where plaintiff failed to exercise diligence to prevent access to documents and did not seek to rectify disclosure); *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1081 (C.D. Cal. 2006) (defendant waived confidentiality under protective order when it made no effort to limit disclosure of evidence in open court).

Defendants' final argument is that their own inaction and Magistrate Zarefsky's and Judge Larson's orders are irrelevant because DC Comics allegedly made an "unauthorized disclosure of privileged information" by attaching the Timeline to its complaint. *Supra* at 37. Defendants, of course, fail to tell the Court that they *jointly* filed the Toberoff Timeline as Exhibit 1 to a public filing in March 2009—14 months before DC Comics filed its complaint. *See supra* Section II.D. DC Comics did not let "the cat out of the bag," *supra* at 37—defendants did, and defendants did nothing to seal or protect the document. The string of cases cited by defendants—all inapposite here—involve documents that a party illegally obtained and improperly publicized. Magistrate Zarefsky and Judge Larson held that Warner Bros. acted appropriately and ordered that the Toberoff Timeline be produced, meaning these cases are completely irrelevant.[16]

---

[16] *Cf. supra* at 37-38, 38 n.13 (citing *Sackmann v. Liggett Group, Inc.*, 173 F.R.D. 358, 365 (E.D.N.Y. 1997) (attorney disseminated privileged memo stolen by paralegal); *In re Grand Jury Proceedings Involving Berkley & Co., Inc.*, 466 F. Supp. 863, 869 (D. Minn. 1979) (party sought to introduce privileged documents stolen by former employee); *Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243,

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57

2.       **Not Only Were Any Privileges In The Timeline Waived, The**

**Large Majority Of Its Contents Were Never Privileged.**

Defendants' entire motion is premised on the insinuation that the Timeline

discloses "clearly privileged" attorney-client communications. *Supra* at 9. Yet

defendants fail to point to a single sentence in the Timeline that contains a

privileged discussion. It is well established that a party asserting attorney-client

privilege "must identify *specific communications* and the grounds supporting the

privilege as to each piece of evidence over which privilege is asserted," as

generalized assertions of privilege are "extremely disfavored." *U.S. v. Martin*, 278

F.3d 988, 1000 (9th Cir. 2002) (emphasis added). *See also U.S. v. El Paso Co.*, 682

F.2d 530, 541-42 (5th Cir. 1982) (rejecting assertion of privilege based on party's

failure to "particularize its assertion of the privilege"); *Clarke v. Am. Commerce*

*Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (party may be required to provide "a

line-by-line justification for assertion of the attorney-client privilege").

It is hardly surprising that defendants chose not to identify a single privileged

communication in the Timeline. The privilege is "strictly construed," and the party

asserting it bears the burden of proving every element of the following test:

> (1) [That] *legal advice* of any kind is [being] sought (2) from a
> professional *legal adviser in his or her capacity as such*, (3) the
> *communications relat[e] to that purpose*, (4) [are] made in confidence
> (5) by the client, (6) are, at the client's instance, permanently protected
> (7) from disclosure … (8) unless the protection be waived.

(footnote continued)

1245-47, 1252 n.15 (D. Md. 1995) (same); *Resolution Trust Corp. v. Dean*, 813 F.

Supp. 1426, 1427-30 (D. Ariz. 1993) (newspaper published portions of stolen

privileged memo); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 468, 470

(S.D. Ohio) (no evidence that voluntarily gave newspaper a copy of a diary

maintained by employee at the instruction of counsel, from which excerpts were

printed) *Furnish v. Merlo*, 1994 WL 574137, at *8 (D. Or. Aug. 29, 1994) (same)).

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

58

1 | *Martin*, 278 F.3d at 999 (emphasis added).

2 |     Fewer than five of the 47 paragraphs in the Timeline may even be read as

3 | arguably bearing on a privileged communication.  To take just a handful of

4 | examples of those that do not, the Timeline discusses:

5 | •    Toberoff's dogged pursuit of the Siegel heirs' putative Superman rights,

6 |     including his establishing a "film production company" with a talent agent

7 |     and repeatedly attempting to contact the Siegels through their then-counsel.

8 |     DC Comics' Complaint ("Compl.") Ex. A at 1-2.  These activities all

9 |     occurred well before any attorney-client relationship formed and are not

10 |     privileged.  *In re Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

11 | •    An early meeting between Toberoff and the Siegel heirs, in which he held

12 |     himself out "*not as an attorney, but as a film producer*," and falsely claimed

13 |     that he had a "billionaire investor" ready to buy their Superman rights for

14 |     millions of dollars and could produce a Superman movie to compete with

15 |     Warner Bros.' film.  Compl. Ex. A at 2 (emphasis in original).  Again, these

16 |     acts of deceit were undertaken in Toberoff's capacity as a businessman, and

17 |     have nothing to do with the conveyance of legal advice.  *Cf. Fischel*, 557 F.2d

18 |     at 211; *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (privilege only

19 |     applies where client seeks advice from lawyer "'*in his capacity as such*'"—

20 |     not where lawyer acts as "business agent").

21 | •    Toberoff's subsequent admission to the Siegels that he lied to them about the

22 |     "billionaire investor" and his ability to produce a competing movie.  Compl.

23 |     Ex. A at 6.  These admissions clearly are not protected; the privilege does not

24 |     extend to attorney's admissions to his then-client that he months ago

25 |     defrauded them in his capacity as a businessman.  *See In re Grand Jury*

26 |     *Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992); *U.S. v. Hodge & Zweig*,

27 |     548 F.2d 1347, 1354 (9th Cir. 1977).

28 |

59

- Toberoff's "unconscionable" fee arrangements with the Siegels and Shusters. Compl. Ex. A at 6-7. Fee arrangements are not shielded by the attorney-client privilege or the work-product doctrine. *In re Grand Jury Proceeding*, 33 F.3d 1060, 1063-64 (9th Cir. 1994) ("Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication."); *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements.").

- The various "business arrangements" between Toberoff's alter-ego entities and the Siegels and Shusters. Compl. Ex. A at 2-3, 5. Because Toberoff was acting as businessman and representative of PPC and IP Worldwide when he made his business deals with the heirs, "'there's a presumption that [his actions are] not privileged by attorney-client privilege or by work product.'" *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 526, 529 (D.D.C. 2005); *Chen*, 99 F.3d at 1501; *Martin,* 278 F.3d at 999 ("The fact that a person is a lawyer does not make all communications with that person privileged."). Both the Siegels and Shusters have recognized as much; they produced their business agreements with PPC and IP Worldwide in the *Siegel* cases and never listed them on any privilege log. Seto Decl. Exs. A-C.

- Efforts by Toberoff improperly to traffic in future copyright interests by pursuing Michael Siegel's putative Superman rights. *See* Compl. Ex. A at 3-4, 6. As the U.S. District Court in Ohio held, these communications are *not* privileged under the erroneous common-interest privilege Toberoff asserted. Seto Decl. Ex. Q at 211-12. Michael Siegel did not have *any* common interest with Joanne Siegel and Laura Siegel Larson; on the contrary, their relationship was adversarial. *See id.*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    •     Contentious exchanges between Michael Siegel and his fellow Siegel heirs, in

2           which Michael warned them about Toberoff's scheme to "control[] the whole

3           of the SUPERMAN copyright."  Compl. Ex. A at 3, 4.  Again, the federal

4           court in Ohio held that these communications were not protected.

5    •     Toberoff's scheme to style himself as a "'*relentless crusader for artists'*

6           *rights*'" while in fact he acquires as "*much ownership of the Superman*

7           *copyright <u>personally</u> as he can*" and "manipulat[es] pieces of the puzzle so

8           that he may receive the greatest percentage" for himself.  Compl. Ex. A at 1, 4

9           (emphasis in original).  This discussion is far outside the realm of attorney-

10         client privilege—it documents Toberoff's conduct in competing for and

11         securing rights for *himself*.  *Cf. U.S. v. King*, 536 F. Supp. 253, 261 (C.D. Cal.

12         1982) ("[I]f the attorney cannot invoke [privilege] to serve her client's

13         interest, it follows that she certainly cannot invoke it to serve her own.").

14    •     Toberoff's violation of a confidentiality agreement in another lawsuit he filed

15           by leaking information to the press.  Compl. Ex. A at 7.  Such breaches of

16           contract are not client communications.  *Cf. In re Grand Jury Investigation*,

17           974 F.2d at 1070; *Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981).

18        In short, the bulk of the Timeline does not convey the provision of legal

19 advice by a retained attorney to his client in confidence.  Even assuming certain

20 statements in it could be read as covered by the privilege, the Court unequivocally

21 and repeatedly held that any rights to claims of privilege in the document were years

22 ago waived.  In no event may a blanket protective order issue preventing DC

23 Comics from using or examining witnesses about the Timeline.  The overbroad gag

24 order defendants seek is aimed at barring DC Comics from questioning witnesses

25 about, or otherwise discovering facts and issues addressed in, the Timeline—

26 including non-privileged facts that Judge Larson rightly held must be disclosed to

27 DC Comics in December 2008.  No basis exists to suppress the facts of this case.

28

61

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**F.    Conclusion**

Defendants' motion for a protective order should be denied.

Dated: August **30**, 2010          KENDALL BRILL & KLIEGER LLP


By: _____
Laura W. Brill
Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC


Dated: August _30_, 2010

*Joined by*
TOBEROFF & ASSOCIATES, P.C.


By: _____
Marc Toberoff
Attorneys for Defendants Mark Warren
Peary as the personal representative of the
Estate of Joseph Shuster, Joanne Siegel,
and Laura Siegel Larson


Dated: August _30_, 2010          O'MELVENY & MYERS LLP


By: _____
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067