EXHIBIT 15

1   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
2   James D. Weinberger (Admitted *pro hac vice*)
    866 United Nations Plaza
3   New York, New York 10017
    Telephone: (212) 813-5900
4   Fax: (212) 813-5901

5   PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
6   1711 Route 9D
    Cold Spring, New York 10516
7   Telephone: (845) 265-2820
    Fax: (845) 265-2819

8
    WEISSMANN WOLFF BERGMAN
9     COLEMAN GRODIN & EVALL LLP
    Michael Bergman (SBN 37797)
10  Anjani Mandavia (SBN 94092)
    Adam Hagen (SBN 218021)
11  9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212
12  Telephone: (310) 858-7888
    Fax: (310) 550-7191

13
    Attorneys for Defendants and Counterclaimant
14
                 **UNITED STATES DISTRICT COURT**
15              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16  JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case Nos. [Consolidated for Discovery]: |
| 17             Plaintiffs, | 04-8400 RSWL (RZx) |
| | 04-8776 RSWL (RZx) |
| 18         vs. | Hon. Ronald S.W. Lew, U.S.D.J. |
| 19  WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | Hon. Ralph Zarefsky, U.S.M.J. |
| 20             Defendants. | **NOTICE OF MOTION RE: JOINT STIPULATION; JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| 21  JOANNE SIEGEL and LAURA SIEGEL LARSON, | |
| 22             Plaintiffs, | |
| 23         vs. | **DISCOVERY MATTER LOCAL RULE 37** |
| TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER | |
| 24  BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION | Time: 10:00 a.m. |
| 25  PRODUCTION INC.; DC COMICS; and DOES 1-10, | Date: August 14, 2006 Courtroom: 540 |
| 26             Defendants. | Mag. Judge Ralph Zarefsky Discovery Cutoff: Nov. 17, 2006 |
| 27  AND RELATED COUNTERCLAIMS | |

28

EXHIBIT 15

Page 309

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT on August 14, 2006 or as soon thereafter as

3  the matter may be heard in the above-entitled action before the Honorable Ralph

4  Zarefsky, United States Magistrate Judge, United States District Court for the

5  Central District of California, Western Division, Roybal Federal Building,225 East

6  Temple Street, Los Angeles, California, Courtroom 540, defendants Warner Bros.

7  Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros.

8  Television Production Inc. and defendant and counterclaimant DC Comics

9  (collectively, "Defendants"), having attempted to meet and confer with Plaintiffs

10 Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegels") in writing on

11 June 27 and 30, 2006, in accordance with Local Rule 37-1 of the Local Rules of the

12 United States District Court for the Central District of California ("L.R."), and the

13 parties having been unable to resolve their discovery dispute regarding Plaintiffs'

14 failure to produce certain responsive documents, hereby move the Court to rule on

15 this jointly filed stipulation pursuant to L.R. 37-3.

16     This motion is made pursuant to Rules 26 and 37 of the Federal Rules of Civil

17 Procedure and L.R. 37.  Defendants contend the discovery sought hereby is likely to

18 lead to the discovery of admissible evidence, and good cause therefore exists for it.

19 Defendants have made good faith and reasonable attempts to resolve this matter

20 without Court intervention, pursuant to L.R. 37, and the parties conducted a

21 conference of counsel matter pursuant to L.R. 37-1 on July 10, 2006, without

22 success. *See* Declaration of James D. Weinberger dated July 24, 2006, submitted

23 herewith, ¶ 13-14 & Ex. L.

24     This motion is based on this notice of motion; the Joint Stipulation Re:

25 Defendants' Motion to Compel Production of Documents; the declarations

26 submitted by the parties; any supplemental memoranda that may be filed in

27 connection with the Joint Stipulation; the pleadings and papers on file in this action;

28

1    and on such oral argument and other matters as the Court may properly consider at

2    the time of the hearing of this motion.

3    DATED:     July 24, 2006          FROSS ZELNICK LEHRMAN & ZISSU, P.C.

4                                      PERKINS LAW OFFICE, P.C.

5                                                -and-

6                                      WEISSMANN WOLFF BERGMAN
                                       COLEMAN GRODIN & EVALL LLP

7

8                                      By: _____

9                                          Roger L. Zissu

10                                     Attorneys for Defendants and Counterclaimant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

EXHIBIT 15

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... 5

I.    DEFENDANTS' INTRODUCTORY STATEMENT ....................... 9

II.   PLAINTIFFS' INTRODUCTORY STATEMENT ........................ 10

III.  DEFENDANTS' CONTENTIONS ............................................. 12

      A.    PROCEDURAL HISTORY AND BACKGROUND ........... 12

      B.    PLAINTIFFS HAVE WAIVED PRIVILEGE ON ISSUES
            RELATING TO THE SETTLEMENT OF THIS ACTION AND
            SHOULD THEREFORE BE REQURIED TO PRODUCE
            RESPONSIVE DOCUMENTS ...................................... 16

            1.    Plaintiffs' Implied Waiver of Privilege Concerning
                  Counsel's Authority to Accept Settlement Offer ............ 16

            2.    Plaintiffs' Express Waiver of Privilege Concerning
                  Their Retention and Termination of Counsel ................ 19

            3.    Plaintiffs' Failure to Produce a Privilege Log ............. 22

IV.   PLAINTIFFS' CONTENTIONS ............................................... 23

      A.    PROCEDURAL BACKGROUND ................................... 23

      B.    LEGAL STANDARDS ................................................. 24

            1.    State Law Applies to Privilege Issues Regarding State
                  Law Component of Federal Claim ............................. 24

            2.    The Attorney-Client Privilege ................................. 25

      C.    PLAINTIFFS DID NOT WAIVE THEIR PRIVILEGES
            ON ISSUES RELATING TO DEFENDANTS' ASSERTION
            OF A PURPORTED SETTLEMENT AGREEMENT ........... 26

            1.    Plaintiffs Have Not Impliedly Waived The Attorney-
                  Client Privilege ................................................... 26

            2.    Plaintiffs Did Not Expressly Waive The Attorney-
                  Client Privilege In The September 21, 2002 Letter ......... 30

            3.    The Attorney Work Product Doctrine Also Protects
                  Documents Sought By Defendants ............................. 33

            4.    Plaintiffs Have Produced A Detailed Privilege Log ......... 35

V.    DEFENDANTS' CONCLUSION ............................................. 36

VI.   PLAINTIFFS' CONCLUSION ............................................... 37

1

## **TABLE OF AUTHORITIES**

2    **I.     Defendants' Authorities**

3    **Cases**

4    *Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.,*
        408 F.3d 1142 (9th Cir. 2005) ................................................... 23

5    *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,*
6        136 F.R.D. 179 (E.D. Cal. 1991) ............................................... 23

7    *Diversified Dev. & Inv., Inc. v. Heil,*
        889 P.2d 1212 (N.Mex. 1995) ................................................... 18
8
     *Grand Lake Drive In, Inc. v. Superior Court,*
9        179 Cal. App. 2d 122 (Cal. Ct. App. 1960) ................................ 18

10   *Griffith v. Davis,*
        161 F.R.D. 687 (C.D.Cal. 1995) ................................................ 18
11
     *Hartman v. Hook-Superrx Inc.,*
12       42 F. Supp. 2d 854 (S.D. Ind. 1999) ......................................... 17

13   *Peters v. Wallach,*
        321 N.E.2d 806 (Mass. 1975) .................................................... 18
14
     *Price v. Superior Court,*
15       161 Cal. App. 2d 650 (Cal. Ct. App. 1958) ................................ 18

16   *Shapo v. Tires 'N Tracks, Inc.,*
        336 Ill.App.3d 387, 270 Ill.Dec. 254 (Ill. App. Ct. 2002) ............ 17
17
     *Steinfeld v. Dworkin,*
18       515 A.2d 1051, 1052 (Vt. 1986) ............................................... 17

19   *Transamerica Title Ins. Co. v. Superior Court,*
        188 Cal.App.3d 1047, 233 Cal.Rptr. 825 (Cal. Ct. App. 1987) ............ 17, 20
20
     *United States v. Zolin,*
21       809 F.2d 1411 (9th Cir. 1987), *aff'd in part, vacated in part on other grounds,*
         491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ............................ 21
22
     *Walsh v. Barcelona Assoc., Inc.,*
23       476 N.E.2d 1090 (Ohio App. 1984) .......................................... 18-19

24   *Weil v. Investment/Indicators, Research & Mgm't, Inc.,*
        647 F.2d 18 (9th Cir. 1981) ...................................................... 21-22
25
     *Willard C. Beach Air Brush Co. v. General Motors Corp.,*
26       118 F. Supp. 242 (D.N.J. 1953) ................................................ 18

27   *Wilson v. Superior Court,*
        63 Cal.App.3d 825, 134 Cal.Rptr. 130 (Cal. Ct. App. 1976) ............. 17
28

5

EXHIBIT 15

Page 313

**Rules**

Fed. R. Civ. P. 26................................................................................. 19, 22

**Treatise**

Paul R. Rice, Attorney-Client Privilege in the United States (2d ed. 2006)............ 21

**II.    Plaintiff's Authorities**

**Federal Cases**

*Amco Ins. Co. v. Madera Quality Nut LLC,*
        2006 U.S. Dist. LEXIS 21205 (E.D. Cal. 2006) ................................. 24

*Baird v. Koerner,*
        279 F.2d 623 (9th Cir. 1960) .......................................................... 25-26

*Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.,*
        408 F.3d 1142 (9th Cir. 2005) ........................................................ 36

*Durkin v. Shields (In re Imperial Corp. of Am.),*
        167 F.R.D. 447 (S.D. Cal. 1995).................................................... 35

*E.E.O.C. v. Lutheran Soc. Svcs.,*
        186 F.3d 959 (D.C. Cir. 1999) ........................................................ 34

*F.D.I.C. v. Fidelity & Deposit Co. of Maryland,*
        196 F.R.D. 375 (S.D. Cal. 2000)................................................... 25, 26

*Garcia v. City of El Centro,*
        214 F.R.D. 587 (S.D. Cal. 2003) ..................................................... 33

*Handgards, Inc. v. Johnson & Johnson,*
        413 F. Supp. 926 (N.D. Cal. 1976)................................................. 33-34

*Hardeman v. Amtrak/Caltrain R.R.,*
        2006 U.S. Dist. LEXIS 28861 (N.D. Cal. 2006) ............................... 36

*Hartman v. Hook-Superx Inc.,*
        42 F. Supp. 2d 854 (S.D. Ind. 1999) .............................................. 29

*Hercules, Inc. v. Exxon Corp.,*
        434 F. Supp. 136 (D. Del. 1977) .................................................... 32

*Hickman v. Taylor,*
        329 U.S. 495 (1947)...................................................................... 34

*In re Grand Casinos, Inc.,*
        181 F.R.D. 615 (D. Minn. 1998)..................................................... 34

*In re Horn,*
        976 F.2d 1314 (9th Cir. 1992) ........................................................ 30

*In re Osterhoudt,*
        722 F.2d 591 (9th Cir. 1983) ......................................................... 30

6

EXHIBIT 15

*Powell v. U.S., Dep't of Justice,*
    584 F. Supp. 1508 (N.D. Cal. 1984)..................................34

*Star Editorial v. United States Dist. Court,*
    7 F.3d 856 (9th Cir. 1993) ..........................................24

*Starsight Telecast v. Gemstar Development Corp.,*
    158 F.R.D. 650, 654 (N.D. Cal. 1994) ..........................31-32

*United States v. Zolin,*
    809 F.2d 1411 (9th Cir. 1985) ....................................33

*United States v. Nobles,*
    422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975)...............34

*Upjohn Co. v. United States,*
    449 US 383, 101 S Ct 677, 66 L Ed 2d 584 (1981) ...............32

**State Cases**

*2,022 Ranch, L.L.C. v. Superior Ct.,*
    7 Cal. Rptr. 3d 197 (2003)...........................................26

*City & County of S.F. v. Superior Court,*
    37 Cal.2d 227 (1951).................................................26

*Estate of Kime,*
    144 Cal.App.3d 246 (1983) ..........................................29

*Jones v. Superior Court,*
    119 Cal.App.3d 534 (1981) .......................................28, 31

*Lake Drive In., Inc. v. Superior Court,*
    179 Cal. App. 2d 122 (1960) .........................................30

*Mitchell v. Superior Court,*
    37 Cal. 3d 591 (1984)...........................25, 28-29, 31, 32

*People v. Hayes,*
    21 Cal. 4th 1211 (1999) .............................................31

*People v. Kor,*
    129 Cal.App.2d 436 (1954)...........................................25

*Price v. Superior Court,*
    161 Cal. App. 2d 650 (1958) .........................................30

*Ringler Associates Inc. v. Maryland Casualty Co.,*
    80 Cal.App.4th 1165 (2000)..........................................26

*Rodriguez v. Superior Court,*
    14 Cal. App. 4th 1260 (1993) .......................................33

*Schlumberger Limited v. Superior Court,*
    115 Cal.App.3d 386 (1981) .........................................28

7

EXHIBIT 15

Page 315

*Shapo v. Tires 'N Tracks, Inc.,*
    336 Ill. App. 3d 387 (2002) ...................................................29

*Southern Cal. Gas Co. v. Public Utilities Com.,*
    50 Cal. 3d 31 (1990) ..........................................................32

*Steinfeld v. Dworkin,*
    515 A.2d 1051 (Vt. 1986) ...................................................29

*Sullivan v. Superior Court,*
    29 Cal.App.3d 64 (1972)....................................................25

*Transamerica Title Ins. Co. v. Superior Court,*
    188 Cal.App.3d 1047 (1987) ..........................................28, 33

*Travelers Ins. Companies v. Superior Court,*
    143 Cal.App.3d 436 (1983) ...........................................28, 32

*W. Digital Corp. v. Superior Court,*
    60 Cal. App. 4th 1471 (1998) .............................................30

*Wilson v. Superior Court,*
    63 Cal.App.3d 825 (1976) ..................................................28

**Rules**

Fed. R. Civ. P. 26(b)(3) .........................................................34

Fed. R. Evid. 501.................................................................24

**State Statutes**

Cal. Evid. Code § 912............................................................31

Cal. Evid. Code § 954............................................................25

8

EXHIBIT 15

1    I.    **DEFENDANTS' INTRODUCTORY STATEMENT**

2    These actions, consolidated for purposes of discovery, relate to Plaintiffs'

3    attempt to recapture under the Copyright Act certain rights in literary works

4    featuring the characters Superman and Superboy from Defendant and

5    Counterclaimant DC Comics ("DC"), and its licensees and/or parent company, the

6    various Warner entities named in the complaints (collectively, "Defendants"). DC

7    has filed a counterclaim against Plaintiffs seeking to enforce a 2001 settlement

8    agreement between the parties which resolved as between them all claims relating to

9    their purported right to recapture such copyright interests, and which Plaintiffs now

10    refuse to honor.

11    Defendants have served requests for documents seeking to probe the basis for

12    Plaintiffs' defenses to their settlement counterclaim. Those defenses are essentially

13    twofold: Plaintiffs claim both that the parties did not reach any valid agreement,

14    and even if they did, Plaintiffs' counsel was not authorized to do so. Plaintiffs,

15    however, have improperly relied on the attorney-client privilege to withhold

16    documents which, as a result of two discrete waivers, are indisputably discoverable

17    in this action. Plaintiffs have made both implied (by asserting that their counsel was

18    not authorized to accept a settlement offer made by Defendants as set forth in an

19    October 19, 2001 letter to Defendants' counsel) and express (through copying DC's

20    president a letter terminating their former counsel and explaining in detail the

21    reasons for such termination) waivers of the privilege, and they cannot now be

22    "undone." Despite the fact that Defendants' document requests seek documents

23    related to these subjects, Plaintiffs have refused to produce any responsive and

24    privileged documents. Moreover, Plaintiffs to date have refused to provide

25    Defendants with a privilege log, despite the fact that Defendants' document requests

26    were served *over a year ago*, making it impossible for Defendants to determine

27    which documents Plaintiffs are withholding.[1]

28    _____

[1] Plaintiffs produced a privilege log at 7pm New York time on Thursday, July 20,

9

EXHIBIT 15

Page 317

1    Plaintiffs cannot use the privilege as both a shield and a sword, relying on the

2    purported unauthorized actions of their former counsel to defend against DC's

3    counterclaim while at the same time seeking to protect communications with

4    counsel related to that authority.  Moreover, Plaintiffs cannot withhold documents

5    relating to the settlement negotiations where Plaintiffs waived the attorney-client

6    privilege on such subject matter by expressly copying DC's president on a letter to

7    her then counsel.  Accordingly, Defendants respectfully request that their motion to

8    compel be granted in its entirety, and that Plaintiffs be ordered to produce

9    responsive documents and a privilege log immediately.

10   **II.    PLAINTIFFS' INTRODUCTORY STATEMENT**

11   Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the widow

12   and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world

13   renowned comic book hero, "Superman," and the author of "Superboy."   This case

14   arises out of Plaintiffs' proper exercise of their right under section 304(c) of the

15   1976 United States Copyright Act, 17 U.S.C. § 304(c), to recapture Siegel's original

16   copyrights in "Superman" and "Superboy" by serving statutory notices on the

17   defendants herein ("Defendants") on April 3, 1997 and March 8, 2002, respectively

18   terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants'

19   predecessor(s) (the "Termination(s)").

20   Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. §

21   304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the

22   Register of Copyrights.  Accordingly, on April 16, 1999, the noticed "Superman"

23   termination date, all rights Siegel conveyed in "Superman" to Defendants'

24   predecessors duly reverted to Plaintiffs.  On November 17, 2004, the noticed

25   "Superboy" Termination date, all rights that Siegel had conveyed in "Superboy" to

26

27   2006. Defendants do not believe that the production of such log is sufficient to
     resolve the instant dispute as it does not comply with the requirements of the
28   relevant caselaw.

10

EXHIBIT 15

Page 318

1  Defendants' predecessors duly reverted to Plaintiffs.

2      Shortly after Plaintiffs served their "Superman" Termination notices the

3  general counsel of Defendant Warner Bros. Entertainment Inc. ("WB") and the

4  President of DC Comics ("DC"), a wholly owned WB subsidiary, both

5  acknowledged the validity of the "Superman" Termination and the parties began

6  negotiations for Defendants' purchase and settlement of the Plaintiffs' recaptured

7  copyright interests.  By October 19, 2001, the parties appeared to agree on certain

8  deal points, subject, of course, to their articulation in an acceptable written

9  agreement; however, negotiations broke down and fell apart by early 2002 because

10  Defendants unilaterally modified such terms in a one-sided fashion and added

11  aggressive new terms, both of which were wholly unacceptable to Plaintiffs.[2]

12  Consequently, no agreement was made or executed by the parties.

13      Defendants neither claimed that a supposed settlement agreement had been

14  entered into, nor attempted to perform or tender performance under any such

15  purported agreement.  Instead, Defendants, in a reversal of their prior

16  acknowledgement of the Termination two years earlier, contested the "Superman"

17  Termination in April, 1999, days before its effective date, claiming it was somehow

18  invalid.

19      Defendants thereafter also claimed that the "Superboy" Termination was

20  invalid.  Plaintiffs consequently commenced the within declaratory relief actions

21  regarding the validity and effect of the "Superman" and "Superboy" Terminations

22  on October 8, 2004, and October 22, 2004, respectively.  Defendants in their

23  answers and counterclaims asserted for the very first time that they had purchased

24

_____

25  [2] DC's October 26, 2001 reply to Marks' October 19, 2001 letter already contained
    different terms and indicated that the parties were a long way from an agreement.

26  Declaration of Marc Toberoff ("Toberoff Decl."), Ex. A ("I enclose herewith for
    you and Bruce a more fulsome outline of what we believe the deal we've agreed to

27  is.").  Moreover, DC's first draft of a settlement agreement dated February 1, 2002
    contained numerous revisions and new material terms never agreed to by Plaintiffs

28  and rejected by Plaintiffs. (Toberoff Decl., Ex B, Declaration of James Weinberger
    ("Weinberger Decl."), Ex. B.

11

EXHIBIT 15

Page 319

1  Plaintiffs' recaptured copyright interests pursuant to a purported "settlement

2  agreement" even though it was clear from the record and the parties' actions that no

3  such agreement had ever been consummated.

4      Plaintiffs moved for partial summary adjudication on February 15, 2006 that

5  their statutory "Superboy" Termination is valid and that Plaintiffs thereby

6  recaptured Siegel's "Superboy" copyright.  Defendants cross-moved for summary

7  judgment claiming the "Superboy" Termination was invalid based in large part on

8  the same purported claims and defenses asserted with respect to "Superman."  On

9  March 23, 2006, the Court granted Plaintiffs' motion in its entirety and denied

10 Defendants' motion in its entirety.  Defendants' subsequently moved to have this

11 order certified for appeal, which motion was also denied by the Court.

12      Defendants now seek privileged attorney-client communications in an attempt

13 to prove their dubious "last ditch" claim that if Plaintiffs are found to have

14 recaptured Siegel's "Superman" and "Superboy" copyrights under the Copyright

15 Act, DC somehow purchased such rights pursuant to an alleged settlement

16 agreement which was clearly never consummated.  In so doing, Defendants strain to

17 get its "foot in the door" and enter with impunity the protected sanctum of Plaintiffs'

18 protected attorney-client relationships.

19      Defendants' overreaching strategy ignores substantial legal precedent that the

20 mere disclosure of the fact of a communication between a client and attorney does

21 not amount to a disclosure of the specific contents of that communication, nor

22 constitute a waiver of the attorney-client privilege.  Defendants similarly ignore

23 prevailing caselaw which holds that, to the limited extent a court may find a waiver

24 of the attorney-client privilege with respect to a disclosed communication, such

25 waiver is construed and applied very narrowly.

26 III.  **DEFENDANTS' CONTENTIONS**

27      A.    **PROCEDURAL HISTORY AND BACKGROUND**

28      On April 3, 1997, Plaintiffs Joanne Siegel and Laura Siegel Larson

12

EXHIBIT 15

Page 320

1 ("Plaintiffs" or "the Siegels"), the widow and daughter of Jerome Siegel ("Siegel")

2 mailed several notices of termination under section 304(c) of the 1976 Copyright

3 Act purporting to terminate Siegel's copyright grants to defendant and

4 counterclaimant DC's predecessor, Detective Comics, Inc., (the "Superman

5 Termination Notices"), affecting Siegel's share as a co-author in seven grants of

6 rights under copyright made by Siegel and Joseph Shuster in certain Superman

7 comic book stories dating back to 1937.  The Superman Termination Notices relate

8 only to Siegel's – but not Shuster's – participation in these grants.

9   Shortly after receipt of the Superman Termination Notices, the parties began

10 settlement negotiations.  Following extensive discussions between the parties over

11 several years, on October 16, 2001, a legal representative for DC, without

12 acknowledging the validity of the Superman Termination Notices or any claims

13 based upon those notices, made a settlement offer to the Siegels by telephone

14 through their prior law firm, Gang Tyre Ramer & Brown ("Gang Tyre").

15   On October 19, 2001, the Siegels, accepted the October 16, 2001 offer,

16 through an executed writing from Gang Tyre confirming that the Siegels had

17 "accepted D.C. Comics' offer of October 16, 2001" and outlining all of the material

18 terms in detail.  (*See* Exhibit A to the Declaration of James D. Weinberger in

19 Support of Defendants' Motion to Compel ("Weinberger Decl.").)  Those terms

20 included, *inter alia,* that the Siegels transferred any rights they might have in the

21 Superman property (which was defined in the letter as Superman, Superboy and

22 related properties including but not limited to Supergirl, Steel, Lois & Clark, and

23 Smallville).  In exchange, the Siegels were to receive: (a) a sizeable non-returnable

24 advance; (b) a sizeable non-recoupable and non-returnable signing bonus; (c)

25 forgiveness of a previously made advance payment; (d) significant guaranteed

26 minimum payments as advances against royalties; and (e) percentage royalties from

27 DC's exploitations of Superman across all media, worldwide.  (*Id.*)

28

1       Several months after endeavoring to memorialize the agreement into a long-

2  form contract in February 2002, DC received several letters from the Siegels.  First,

3  on September 21, 2002, DC was copied on a letter from the Siegels to the Gang Tyre

4  firm, in which they terminated that firm's representation and explained the basis for

5  such termination.  (Weinberger Decl. Ex. <u>B</u>.)  Plaintiffs informed Gang Tyre that

6  they rejected Gang Tyre's "redraft of the February 4, 2002 document [the long-form

7  contract noted above] which you sent us on July 15, 2002."  On the same day, DC

8  received a second letter from the Siegels stating they were breaking off all

9  discussions with DC and impliedly and purportedly repudiating the agreement

10  already reached by the parties.  (*Id.* Ex. <u>C</u>.)

11       On November 8, 2002, Plaintiffs served a "new" notice of termination (the

12  "Superboy Termination Notice"), relating only to literary works featuring Superboy

13  and purporting to terminate grants made only by Siegel in the Superboy works

14  already identified in the Superman Termination Notices.

15       On October 8, 2004, Plaintiffs filed this first action (the "Superman Action")

16  seeking a declaration as to the effectiveness of the Superman Termination Notices

17  and an accounting for Siegel's one-half share in profits from Superman exploitation

18  following the effective date of the termination.  On October 22, 2004, Plaintiffs filed

19  their second action (the "Superboy Action"), seeking a declaration that Plaintiffs

20  have recaptured all rights in the Superboy literary works.  Plaintiffs allege further

21  that "[d]efendants' ongoing exploitation of the 'Superboy' mythology, including but

22  not limited to the Superboy Comic Books, and other publications, 'Superboy'

23  merchandising, animated and live action television programming (*e.g.*, the

24  *Smallville* Series)" infringes Plaintiffs' copyright rights in the "Siegel Superboy

25  Material," namely, the Submissions.

26       DC filed identical counterclaims in both actions seeking enforcement of the

27  October 19, 2001 settlement agreement agreement; if the claim is successful, all of

28  Plaintiffs' claims in this case are moot.  (*See, e.g.*, Weinberger Decl. Ex. <u>D</u>.)  On

14

EXHIBIT 15

Page 322

1  June 21, 2005, Defendants served document requests in these actions seeking

2  documents concerning the repudiated settlement agreement, including the following

3  written requests:

4      **Request No. 52**

5          All Writings concerning the settlement discussions between
        Plaintiffs and Defendants that took place from approximately April
6      17, 1997 through September 30, 2002.

7      **Request No. 53**

8          All Writings concerning the October 19, 2001 letter from
        Plaintiffs' then counsel to John Schulman [Defendant Warner Bros.
9      Entertainment Inc.'s general counsel].

10     **Request No. 55**

11         All Writings concerning the draft agreement transmitted to
       Plaintiffs on or about February 1, 2002.

12
       **Request No. 58**
13
           All Writings concerning any communications between
14     Plaintiffs and any attorney, partner, employee, agent, or representative
       of the law firm Gang Tyre Ramer & Brown after September 21, 2002.
15
       **Request No. 59**
16
           All Writings concerning any disposition of any rights relating
17     to Superman, including but not limited to any solicitation, offer,
       option, agreement or license.
18
   (Weinberger Decl. Ex. _E_.)  Plaintiffs served identical responses to each of these
19
   requests as follows:
20
           Plaintiffs further object to this request on the grounds that it is vague,
21     ambiguous, overbroad, burdensome and oppressive. Plaintiffs further
       object to this Request for Production on the ground that it violates
22     Rule 408 of the Federal Rules of Evidence. Subject to and without
       waiving the foregoing objections, Plaintiffs will produce all non-
23     privileged documents they are able to determine are responsive to this
       request.
24
   (_Id_. Ex. _F_.)  Plaintiffs produced approximately 1900 pages of documents in
25
   September 2005, none of which contained purportedly privileged communications
26
   between them and Gang Tyre.  (_Id_. ¶ 8.)  Despite several requests, Plaintiffs until
27
   July 20, 2006 had not produced a privilege log, either.  (_Id_. ¶¶ 9, 14 & Exs. _G-I_, _M_)
28

1    On April 17, 2006, Defendants served additional discovery requests,

2  including requests for admission pursuant to Fed. R. Civ. P. 36. (*Id.* Ex. J.) In

3  response to Defendants' Request for Admission No. 69, which asked Plaintiffs to

4  admit that Gang Tyre was authorized to send the October 19, 2001 letter (*id.* Ex. A,

5  accepting DC Comics' offer of settlement), Plaintiffs responded with an unqualified

6  denial of the request. (*Id.* Ex. K.) By this denial, Plaintiffs have placed into issue

7  the defense that Gang Tyre was not authorized to send the October 19, 2001 letter.

8  No documents or privilege log have been produced by Plaintiffs since serving their

9  response to Request for Admission No. 69, until Plaintiffs produced a log on July

10  20, 2006. (*Id.* ¶¶ 9, 14 & Ex. M.)

11    In view of Plaintiffs' continuing failure to produce responsive documents or

12  to identify documents being withheld on the basis of a claimed attorney-client

13  privilege, Defendants' counsel wrote to Plaintiffs' counsel on June 27, 2006

14  requesting a conference to discuss the dispute. (*Id.* ¶ 13 & Ex. L.) On July 10,

15  2006, the parties conducted a meet-and-confer on the issues set forth in this motion

16  and were unable to come to a satisfactory resolution. (*Id.* ¶ 14.)

17   **B.  PLAINTIFFS HAVE WAIVED PRIVILEGE ON ISSUES**
      **RELATING TO THE SETTLEMENT OF THIS ACTION**
18    **AND SHOULD THEREFORE BE REQURIED TO**
      **PRODUCE RESPONSIVE DOCUMENTS**
19
         **1.   Plaintiffs' Implied Waiver of Privilege Concerning**
20            **Counsel's Authority to Accept Settlement Offer**

21    Defendants have served document requests seeking documents relating to the

22  settlement negotiations that culminated in Gang Tyre's October 19, 2001 letter in

23  which attorney Kevin Marks of that firm communicated to Defendants the fact that

24  "[t]the Siegel Family . . . has accepted DC Comics' offer of October 16, 2001"

25  (Weinberger Decl. Ex. E), an agreement Plaintiffs now refuse to honor. In response

26  to Defendants' Request for Admission No. 69, Plaintiffs stated that the Siegels *did*

27  *not* give Mr. Marks authority to send the October 19, 2001 letter. (Weinberger Decl.

28  Ex. K.)

1      Because Plaintiffs have put Gang Tyre's authority in issue in connection with

2   their defense to DC's counterclaim to enforce the settlement agreement, Plaintiffs

3   have impliedly waived the attorney-client privilege with respect to the subject

4   matter related to the settlement between the parties and, thus, Defendants are

5   entitled to discovery from Plaintiffs on the issue of that authority. *See Transamerica*

6   *Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047, 1052-53, 233 Cal.Rptr. 825,

7   828 (Cal. Ct. App. 1987) ("The privilege may also be impliedly waived where a

8   party to a lawsuit places into issue a matter that is normally privileged. It is said that

9   in that case the gravamen of the lawsuit is so inconsistent with the continued

10   assertion of the privilege as to compel the conclusion that the privilege has in fact

11   been waived.") (*citing Wilson v. Superior Court*, 63 Cal.App.3d 825, 134 Cal.Rptr.

12   130 (Cal. Ct. App. 1976)). *See also Shapo v. Tires 'N Tracks, Inc.*, 336 Ill.App.3d

13   387, 394, 270 Ill.Dec. 254, 260-61 (Ill. App. Ct. 2002) ("In this case, the core of the

14   instant litigation is premised upon defendant's complaint that its former attorneys

15   were not authorized to settle the case on its behalf. Therefore, defendant has placed

16   the conduct of its former counsel at issue, and waiver is applicable to those earlier

17   communications between it and its former counsel involving the settlement

18   agreement, and the trial court did not abuse its discretion by allowing those

19   communications to be disclosed."); *Hartman v. Hook-Superrx Inc.*, 42 F. Supp. 2d

20   854 (S.D. Ind. 1999) ("Because of the unique nature of the attorney-client

21   relationship, and consistent with the public policy favoring settlements, federal law

22   presumes that an attorney-of-record who enters into a settlement agreement,

23   purportedly on behalf of a client, has authority to do so. . . . By refusing to waive the

24   attorney-client privilege regarding those communications and thus not permitting

25   the development of evidence of such communications, we seriously doubt that

26   Plaintiff can rebut the presumption that [his attorney] had authority to bind

27   [Plaintiff] to the May 9 settlement agreement."); *Steinfeld v. Dworkin*, 515 A.2d

28   1051, 1052 (Vt. 1986) ("[A] party attacking his own attorney's authority to settle

17

EXHIBIT 15

1   impliedly waives the privilege as to the very matter he puts in issue . . . It would

2   work an extreme hardship on other litigants and on the court if a party could, at the

3   same moment, assert the lack of authority to settle and yet prevent facts bearing on

4   that authority from coming into evidence."). Accordingly, as Plaintiffs have put

5   Gang Tyre's authority to settle in issue in this action, they have waived the privilege

6   with respect to such authority.

7        Moreover, *regardless* of whether Plaintiffs are claiming that the October 19,

8   2001 letter was authorized, whether a client gives her counsel *affirmative* authority

9   to settle is *never* subject to the privilege because such communications are not

10  intended to be confidential in the first place; without confidentiality, the *sine qua*

11  *non* of any protected communication, no attorney-client privilege exists. *See Grand*

12  *Lake Drive In, Inc. v. Superior Court*, 179 Cal. App. 2d 122, 125 (Cal. Ct. App.

13  1960) ("When the client does not intend his communication to be confidential, it is

14  not privileged."); *Price v. Superior Court*, 161 Cal. App. 2d 650 (Cal. Ct. App.

15  1958) (same); *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D.Cal. 1995) ("[C]ourts

16  have consistently refused to apply the privilege to information that the client intends

17  or understands may be conveyed to others."). *See also Willard C. Beach Air Brush*

18  *Co. v. General Motors Corp.*, 118 F. Supp. 242, 244 (D.N.J. 1953) (privilege does

19  not extend to "the client's grant of authority to the attorney to settle, since this must

20  be communicated to the other party to the settlement and is thus not confidential");

21  *Peters v. Wallach*, 321 N.E.2d 806, 809 (Mass. 1975) ("The client's grant of

22  authority to settle must be communicated to the other party to the settlement and is

23  thus not confidential."); *Diversified Dev. & Inv., Inc. v. Heil*, 889 P.2d 1212, 1218

24  (N.Mex. 1995) (holding that "the attorney-client privilege does not prohibit

25  [defendant's attorney] from disclosing what [defendant] authorized him to agree

26  upon with or communicate to [plaintiff]"); *Walsh v. Barcelona Assoc., Inc.*, 476

27  N.E.2d 1090, 1093 (Ohio App. 1984) ("By its very nature, a communication from a

28  client to his attorney conveying authority to the attorney to act on his behalf as his

18

EXHIBIT 15

Page 326

1    agent in entering into an agreement with the opposing party, is a communication

2    which is intended to be communicated to the opposing party. Because such a

3    conversation is not intended to be confidential, it is not privileged.") This provides

4    an alternative basis for the discovery in question.

5       At the parties' meet and confer on this motion, Plaintiffs claimed that because

6    – in their view – DC's counterclaim to enforce the settlement agreement was

7    "frivolous," Defendants were not permitted to probe the defenses asserted by

8    Plaintiffs in response thereto. (Weinberger Decl. ¶ 14.) This argument turns the

9    discovery process on its head, and would allow for any party to refuse to meet its

10    discovery obligations based on a belief that the opposing party's claims were weak.

11    This is clearly not the case. Indeed, DC's counterclaim has been an integral part of

12    this litigation since it was asserted in December 2004. (*Id.* Ex. D.) Plaintiffs did not

13    move to dismiss the claim, nor have they moved for summary judgment. Under

14    these circumstances, Defendants are entitled to seek discovery from Plaintiffs on

15    their defenses to the claim, so long as the discovery sought is likely to lead to the

16    discovery of admissible evidence. *See* Fed. R. Civ. P. 26.

17       Defendants therefore request that the Court enter an order requiring the

18    immediate production of all documents relating to Gang Tyre's authority (or the

19    alleged lack thereof), including (i) all correspondence between Gang Tyre and

20    Plaintiffs relating to the October 19, 2001 settlement letter, and (ii) all documents

21    relating to the terms of the retention of Gang Tyre, as requested, *inter alia*, by

22    document requests 52, 53 and 59 as set forth above.

23       **2.**      **Plaintiffs' Express Waiver of Privilege Concerning**

                **Their Retention and Termination of Counsel**

24

25       In addition to their implied subject matter waiver of the attorney-client

   privilege, Plaintiffs have also expressly waived the attorney-client privilege with

26    respect to the reasons for and fact of termination of the Gang Tyre firm by copying

27    certain individuals, including DC's president Paul Levitz on a September 21, 2002

28

1 | letter to Gang Tyre terminating their services and explaining the basis for such

2 | termination. (Weinberger Decl. Ex. B.). *See, e.g., Transamerica*, 188 Cal.App. at

3 | 1052, 233 Cal.Rptr. at 828 ("The privilege is waived with respect to a protected

4 | communication if any holder of the privilege voluntarily discloses a significant part

5 | of the communication . . . ."). That letter states as follows:

6 | Kevin S. Marks, Esq.
Bruce M. Ramer, Esq.

7 | Gang, Tyre, Ramer & Brown, Inc.
132 South Rodeo Drive

8 | Beverly hills, CA 90212

9 | September 21, 2002

10 | Dear Kevin and Bruce,

11 | As we previously discussed with you and hereby affirm, we rejected DC Comics' offer for the Siegel Family interest in Superman

12 | and other characters sent to us by you on February 4, 2002. We similarly reject your redraft of the February 4, 2002 document which

13 | you sent to us on July 15, 2002. Therefore due to irreconcilable differences, after four years of painful and unsatisfying negotiations,

14 | this letter serves as formal notification that we are totally stopping and ending all negotiations with DC Comics, Inc., its parent company

15 | AOL Time Warner and all of its representatives and associates, effective immediately.

16 | 

17 | This letter is also notification that, effective immediately, we are terminating (Gang, Tyre, Ramer & Brown, Inc., and all of your

18 | firm's partners, associates and employees as representatives of the Siegel Family interest regarding Superman, Superboy, the Spectre

19 | and all related characters and entities. We instruct you to take no further actions on our behalf.

20 | Please return all materials regarding the above including but not limited to files, correspondence, notes and documents to us

21 | forthwith. These should be sent to Joanne Siegel at the above address.

22 | It is a shame that four years were wasted due to DC Comics and AOL Time Warner's greed. We have no intention of publicly

23 | disparaging DC or any individual in the parent company. However, should DC or its parent company, officers, attorneys, representatives

24 | or spokespersons disparage us or our rights, we will vigorously respond in kind.

25 | Sincerely,                          Sincerely,

26 | /s/                                 /s/

27 | Joanne Siegel                       Laura Siegel Larson

28 | cc:   Michael Siegel

1                 Don Bulson, Esq.
                 Paul Levitz

2

3 (Weinberger Decl. Ex. B.). Plaintiffs have neither produced a copy of the

September 21, 2002 letter, the July 15, 2002 "redraft," or any other documents

4 relating to these issues, despite the fact that they were expressly requested in

5 Defendants' document requests. *See, e.g.,* Doc. Reqs. 52, 55, 58.

6        In response, Plaintiffs claimed at the parties' meet and confer that the Siegels'

7 September 21, 2002 letter to Gang Tyre setting forth a detailed basis for their

8 termination (Weinberger Decl. Ex. B) does not, by virtue of being sent to DC's

9 president, constitute a waiver of the attorney-client privilege. (Weinberger Decl. ¶

10 14.) Plaintiffs' counsel argued that the letter was only sent to DC's president to

11 advise him that Gang Tyre was no longer representing the Siegels and thus did not

12 constitute a waiver. (*Id.* ¶ 14.) However, DC's president was sent a *separate* letter

13 on the same day advising him of Gang Tyre's termination (*id.* Ex. C), which

14 establishes that this explanation is pure makeweight.

15        Plaintiffs also assert that the Siegels were not represented by counsel when

16 they sent the September 21, 2002 letter to DC's president, and thus could not have

17 intended the communication as a waiver of the privilege. (*Id.* ¶ 14.) Intent,

18 however, is not required to find that a waiver has occurred:

19           The recognition of the attorney-client privilege depends on
          confidentiality. When the client destroys the confidentiality that
20           forms the basis for the privilege, the privilege vanishes, regardless of
          whether the availability of the privilege was "known" to the client or
21           the client "intentionally relinquished" it. . . . If an intention to waive
          were required, waiver would seldom result from clients' disclosures.
22

23 Paul R. Rice, Attorney-Client Privilege in the United States (2d ed. 2006), § 9:19 at

24 44-47 (citing, *inter alia, United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir. 1987),

25 *aff'd in part, vacated in part on other grounds,* 491 U.S. 554, 109 S.Ct. 2619, 105

26 L.Ed.2d 469 (1989) ("voluntary delivery of a privileged communication . . . to

27 someone not a party" constitutes a waiver); *Weil v. Investment/Indicators, Research*

28

1  *& Mgm't, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (waiver found despite fact that client

2  did not intend to waive privilege)).

3      The burden is on Plaintiffs to prove the existence of the privilege. *See Weil*,

4  647 F.2d at 25 ("As with all evidentiary privileges, the burden of proving that the

5  attorney-client privilege applies rests not with the party contesting the privilege, but

6  with the party asserting it.") (citations omitted).  Given the express waiver of the

7  privilege covering all the issues raised in the September 21, 2002 letter from

8  Plaintiffs to their counsel as disclosed to DC's president, Plaintiffs cannot meet such

9  a burden here.  Defendants therefore respectfully request that the Court enter an

10  order that documents relating to Plaintiffs' termination of Gang Tyre be produced

11  immediately.

12      **3.    Plaintiffs' Failure to Produce a Privilege Log**

13      Plaintiffs' failure to produce a privilege log compounds the problems with the

14  privilege waivers described above.  Because Defendants have neither the responsive

15  documents nor a log specifying exactly which documents Plaintiffs claim are subject

16  to the attorney-client privilege, they are in no position to determine whether

17  Plaintiffs are improperly withholding the relevant documents.

18      It is axiomatic that any claim of privilege extends only to the substance of the

19  allegedly privileged communications.  To prevent litigants from misusing or hiding

20  behind the privilege to avoid their discovery obligations, the Federal Rules of Civil

21  Procedure require litigants to produce a log of communications and correspondence

22  that but for the privilege would be responsive and relevant to discovery. *See Fed. R.*

23  Civ. P. 26(b)(5); Fed. R. Civ. P. 26(f), Advisory Committee's Note (1983

24  Amendment).  Such logs traditionally include the date of the document, the

25  identities of the persons from and to whom it was sent or who prepared it, the

26  general subject matter, and the nature of the privileged claimed. Fed. R. Civ. P.

27  26(b)(6).  This information is meant to allow the opposing party and the Court to

28  make a proper evaluation of the propriety of the claim of privilege. *See Fed. R. Civ.*

1  P. 26(f), Advisory Committee's Note (1983 Amendment) ("The purpose of

2  discovery is to provide a mechanism for making relevant information available to

3  the litigants . . . . Thus, the spirit of the rules is violated when advocates attempt to

4  use discovery tools as tactical weapons rather than expose the facts and illuminate

5  the issues . . . .").

6         As the Ninth Circuit has held, a privilege log is an absolute requirement for

7  the proper assertion of a privilege, including the attorney-client privilege and work

8  product doctrine; mere boilerplate objections or blanket refusals incorporated into

9  discovery responses – such as the objections Plaintiffs have interposed to nearly

10  every discovery request served by Defendants – are insufficient to assert a privilege.

11  *Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.*, 408 F.3d

12  1142, 1149 (9th Cir. 2005). *See also Eureka Fin. Corp. v. Hartford Accident &*

13  *Indem. Co.*, 136 F.R.D. 179, 184-85 (E.D. Cal. 1991) (failure "to comply with a well

14  settled requirement of specifically identifying the evidence to which a privilege

15  applies" constitutes a waiver of the attorney-client privilege). Defendants have

16  requested that Plaintiffs produce a log on several occasions. (Weinberger Decl. Exs.

17  G-I.) No response was ever received to any of those inquiries until July 10, 2006,

18  when Plaintiffs represented that such a log was forthcoming. (*Id.* ¶¶ 9, 14.) No log

19  was received by Defendants until July 20, 2006 (*id.* ¶ 14 & Ex. M), and Defendants

20  maintain that such production is not sufficient to meet their burden of establishing

21  any privilege. Therefore, Defendants request that the Court enter an order (a)

22  requiring Plaintiffs to produce a comprehensive privilege log within three (3)

23  business days from the date of entry of the Court's order, and (b) finding that

24  Plaintiffs' failure to comply with such order results in a complete waiver of the

25  attorney-client privilege.

26  **IV.   PLAINTIFFS' CONTENTIONS**

27         **A.   PROCEDURAL BACKGROUND**

28         Plaintiffs served Defendant DC their first set of requests for production of

1    documents on May 13, 2005. (Toberoff Decl. ¶ 5). Plaintiffs also served defendant

2    WB a separate set of requests on May 13, 2005. *Id.,* ¶ 6. Both Defendants filed

3    responses to their respective requests on June 13, 2005. *Id.,* ¶ 7. DC thereafter

4    produced a small portion of their non-privileged documents available for copying on

5    August 9, 2005. *Id.,* ¶ 14, Ex. H. However, DC did not serve a privilege log until

6    almost *eight months* later on April 7, 2006. *Id.,* ¶ 15, Ex. I. Incredibly, despite

7    Plaintiffs' repeated demands, WB failed to produce *any* documents for copying until

8    June 2, 2006, over *a year* after Plaintiffs' requests. *Id.,* ¶ 16, Ex. J. WB

9    subsequently served their privilege log on June 27, 2006, *thirteen months* after

10    Plaintiffs' Requests. *Id.,* ¶ 17, Ex. K.

11        Defendants served their first requests for production on June 21, 2005,

12    (including requests nos. 52, 53, and 55) seeking amongst other documents

13    communications concerning the settlement proposals discussed in October, 2001.

14    *Id.,* ¶ 8. Plaintiffs responded to these requests on July 21, 2005. *Id.* Plaintiffs

15    produced responsive documents shortly thereafter on September 29, 2005. *Id.,* ¶ 18.

16        On April 17, 2006, Defendants served a second set of discovery requests to

17    which Plaintiff responded on June 7, 2006. *Id.,* ¶ 19. Plaintiffs produced a detailed

18    privilege log to Defendants on July 20, 2006. *Id.,* ¶ 20, Ex. L.

19    **B.    LEGAL STANDARDS**

20        **1.    State Law Applies to Privilege Issues Regarding State
        Law Component of Federal Claim.**

21

22        Rule 501 of the Federal Rules of Evidence provides that when a federal court

23    hears a civil action in which state law provides the rule of decision, privileges shall

24    be determined in accordance with State law." Fed. R. Evid. 501. *See Star Editorial*

25    *v. United States Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993); *Amco Ins. Co. v.*

26    *Madera Quality Nut LLC*, 2006 U.S. Dist. LEXIS 21205, *12 (E.D. Cal. 2006) ("the

27    discovery in question relates to state law…claims; thus, the existence and extent of

28    any privilege is controlled by California law.").

24

EXHIBIT 15

Page 332

1    Work product protection is governed by federal law because it is not a

2  privilege, but rather is a procedural immunity, or a qualified protection from

3  discovery. *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 381

4  (S.D. Cal. 2000).

5    Therefore, whether Plaintiffs have purportedly waived their attorney-client

6  privilege with respect to DC's state claim of a purported settlement agreement is

7  governed by California law, while the applicability of the work product doctrine is

8  governed by federal standards.

9    **2.    The Attorney-Client Privilege**

10    The attorney-client privilege is codified in California Evidence Code § 950, et

11  seq. and in general allows the client "to refuse to disclose, and to prevent another

12  from disclosing, a confidential communication between client and lawyer...." Cal.

13  Evid. Code § 954.   It is a privilege owned by the client, not the attorney.   The

14  attorney-client privilege covers all forms of communication, including transmission

15  of specific documents. *Mitchell v. Superior Court*, 37 Cal. 3d 591, 600 (1984).

16    "The privilege of confidential communication between client and attorney

17  should be regarded as sacred.  It is not to be whittled away by means of specious

18  argument that it has been waived.  Least of all should the courts seize upon slight

19  and equivocal circumstances as a technical reason for destroying the privilege."

20  *People* v. *Kor*, 129 Cal.App.2d 436, 447 (1954); *Sullivan v. Superior Court*, 29

21  Cal.App.3d 64, 71 (1972).

22    "Clearly, the fundamental purpose behind the privilege is to safeguard the

23  confidential relationship between clients and their attorneys so as to promote full

24  and open discussion of the facts and tactics surrounding individual legal matters."

25  *Mitchell*, 37 Cal. 3d at 599.  The public policy fostered by the privilege seeks to

26  insure "the right of every person to freely and fully confer and confide in one having

27  knowledge of the law, and skilled in its practice, in order that the former may have

28  adequate advice and a proper defense." *Baird v. Koerner*, 279 F.2d 623, 629 (9th

1 | Cir. 1960); *see also 2,022 Ranch, L.L.C. v. Superior Ct.*, 7 Cal. Rptr. 3d 197, 204
2 | (2003).

3 |     "Although exercise of the privilege may occasionally result in the suppression
4 | of relevant evidence…these concerns are outweighed by the importance of
5 | preserving confidentiality in the attorney-client relationship." *Mitchell*, 37 Cal. 3d
6 | at 599-600, *citing City & County of S.F. v. Superior Court*, 37 Cal.2d 227, 235
7 | (1951).

8 |     The burden is on the party claiming waiver of a privilege to prove the
9 | existence of an intentional and knowing waiver. *Ringler Associates Inc. v.*
10 | *Maryland Casualty Co.*, 80 Cal.App.4th 1165, 1188 (2000); *see also Fidelity &*
11 | *Deposit Co. of Maryland*, 196 F.R.D. at 380.

**C.     PLAINTIFFS DID NOT WAIVE THEIR PRIVILEGES ON
ISSUES RELATING TO DEFENDANTS' ASSERTION OF A
PURPORTED SETTLEMENT AGREEMENT**

    **1.     Plaintiffs Have Not Impliedly Waived The Attorney-
Client Privilege**

16 |     Defendants improperly seek documents constituting confidential attorney-
17 | client communications relating to the negotiation of a proposed, but never
18 | consummated, settlement of Plaintiffs' Termination regarding "Superman."
19 | (Weinberger Decl., Ex. E). Defendants' argument that Plaintiffs have waived the
20 | attorney-client privilege with respect to such negotiations is meritless. Defendants'
21 | dubious claim is falsely premised on a straw man argument that Plaintiffs have put
22 | the authority of their prior attorney, Kevin Marks ("Marks"), of the firm Gang, Tyre,
23 | Ramer & Brown ("Gang Tyre"), in issue. To stretch to this unsupported conclusion,
24 | Defendants misleadingly argue that "Plaintiffs *stated* that the Plaintiffs *did not* give
25 | Mr. Marks authority to send [a] October 19, 2001 letter [containing certain proposed
26 | deal points]."
27 |     In fact, Plaintiffs have not, do not and would not ridiculously claim that
28 | Marks, their own attorney, lacked the authority to conduct such negotiations.

1  Defendants' waiver argument is based on a single answer to their Request for

2  Admission No. 69 which has since been substantially supplemented and clarified by

3  Plaintiffs. Defendants' Request No. 69 stated: "Admit that Kevin Marks was

4  authorized by Plaintiffs to send the October 19 Letter on Plaintiffs' behalf."

5       Plaintiffs objected to this Request, including insofar as it focused on

6  privileged communications between Plaintiffs and their attorney and ultimately

7  denied the Request, not because Plaintiffs claimed that Marks lacked authority to

8  negotiate on their behalf but because Plaintiffs had not been furnished with Marks'

9  October 19, 2001 letter before it had been sent to DC's counsel. (Toberoff Decl., ¶

10 2). In their motion, Defendants mischaracterize the parties' "meet and confer"

11 session and conveniently omits that Plaintiffs' counsel provided this very

12 explanation to DC's counsel and offered to clarify its response by amending it. *Id.*,

13 ¶ 22. Plaintiffs thereafter amended their response to Request No. 69 (*see* Toberoff

14 Decl., Ex. M) as follows:

15       "Plaintiffs additionally object to this Request No. 69 on the basis that it
16       inherently requests the disclosure of attorney-client communications between
         Plaintiffs and their attorney, Kevin Marks ("Marks"). Subject to and without
17       waiving the foregoing general and specific objections, Plaintiffs respond as
         follows: Plaintiffs admit only that Marks acted within the scope of his
18       authority in communicating Plaintiffs' conditional interim approval of the
         basic deal points set forth in the October 19 Letter, however such approval
19       (and authorization) was reasonably conditioned upon (1) such deal points
         being properly reflected in a final written settlement agreement containing no
20       additional new terms or revised terms that were unacceptable to Plaintiffs and
         (2) Plaintiffs' careful review, approval and execution of a final written
21       settlement agreement. Plaintiffs did not receive a copy of the October 19
         Letter prior to it being sent by Marks to defendant Warner Bros.
22       Entertainment Inc.'s general counsel, John Schulman, and, as such, did not
         approve the form or wording of the October 19 Letter."
23
24
25
26       Plaintiffs have not put into issue Marks' authority as their attorney to act on

27 their behalf in settlement negotiations, nor have Plaintiffs waived their attorney-

28 client privilege with respect to communications with their attorneys regarding these

1  negotiations.

2      The attorney-client privilege may be impliedly waived where a party to a

3  lawsuit places into issue a matter that is normally privileged.  It is said in such case

4  that *the gravamen of the lawsuit* is so inconsistent with the continued assertion of

5  the privilege as to compel the conclusion that the privilege has in fact been waived.

6  *Wilson v. Superior Court*, 63 Cal.App.3d 825, 830 (1976).  The scope of such an

7  implied waiver, however, is very narrowly defined and the information required to

8  be disclosed must fit strictly within the confines of the waiver.  *See, e.g., Travelers*

9  *Ins. Companies* v. *Superior Court* 143 Cal.App.3d 436 (1983); *Jones v. Superior*

10 *Court,* 119 Cal.App.3d 534, 547 (1981).

11     Here, Plaintiffs have not placed into issue Marks' authority, nor is Marks'

12 authority by any means the gravamen of this lawsuit.  Privileged communications do

13 not become discoverable simply because they are related to issues raised in the

14 litigation.  *Schlumberger Limited v. Superior Court,* 115 Cal.App.3d 386, 393

15 (1981).

16     The attorney-client privilege is not to be set aside when one party seeks

17 verification of the authenticity of its adversary's position.  *Mitchell*, 37 Cal. 3d at

18 606, illustrates this point.  There, the defendant argued that discovery of privileged

19 information might help it verify the genuineness and reasonableness of the

20 Plaintiffs' claim for emotional distress.  The court reasoned that what was at issue

21 was the Plaintiffs' state of mind as to her emotional distress and not the state of

22 mind of her attorneys.  *Id.*

23     In support of its "placing in issue" implied waiver argument, Defendants cite

24 *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal.App.3d 1047 (1987), where

25 the court *upheld* the attorney-client privilege although its exercise might suppress

26 relevant evidence.  *Id.* at 1052.  In discussing implied waiver, the court made clear

27 that "the privilege is not to be set aside when one party seeks verification of the

28 authenticity of its adversary's position." *Id.* at 543, *citing Mitchell*, 37 Cal.3d at

28

EXHIBIT 15

Page 336

1    600.

2         The "in issue" doctrine creates an implied waiver of the privilege *only* when

3    the client tenders an issue involving *the substance or content of* a protected

4    communication, not where the privileged communication simply represents one of

5    several forms of indirect evidence in a particular case. *Mitchell*, 37 Cal.3d at 606.

6    Generally, implied waivers are limited to situations, if any, where *the client* has

7    placed in issue the decisions, conclusions, and mental state of the attorney who will

8    be called as a witness to prove such matters. *Estate of Kime*, 144 Cal.App.3d 246,

9    259 (1983). Plaintiffs have neither placed in issue the substance or content of their

10   protected communications with their attorney nor their attorney's mental state

11   regarding settlement negotiations and proposals.

12        Defendants string cite inapplicable cases from random jurisdictions such as

13   *Hartman v. Hook-Superx Inc.*, 42 F. Supp. 2d 854 (S.D. Ind. 1999), *Shapo v. Tires*

14   *'N Tracks, Inc.*, 336 Ill. App. 3d 387 (2002) and *Steinfeld v. Dworkin*, 515 A.2d

15   1051 (Vt. 1986), where, in each case, a party attempted to extricate itself from a

16   clear unequivocal settlement agreement by frivolously claiming that their attorney

17   lacked the authority to act on their behalf. No such agreement exists in this case.

18        Defendants alternatively argue that whether a client has given her attorney

19   authority to conduct settlement negotiations is not intended to be confidential and is

20   therefore never privileged. From there, Defendants attempt to bootstrap their

21   argument that they are entitled to clearly privileged communications regarding such

22   negotiations. Defendants' argument is largely disingenuous because Defendants do

23   not seek by this motion documents relevant to whether Plaintiffs *authorized* their

24   attorney to conduct settlement negotiations (authorization which is presumed and

25   admitted by Plaintiffs). Rather, Defendants use this *Trojan Horse* excuse to obtain

26   clearly privileged communications relating to the strategies and mental processes of

27   Plaintiffs and their attorneys in such settlement negotiations.

28        None of Defendants' cited authority deals with analogous circumstances or

1  finds that the attorney-client privilege is waived with respect to settlement

2  negotiations as broadly claimed by Defendants. *See e.g., Lake Drive In., Inc. v.*

3  *Superior Court*, 179 Cal. App. 2d 122 (1960) (in slip and fall case at defendant's

4  restaurant, defendant's expert could not avoid answering questions regarding slip

5  location on account of attorney-client privilege); *Price v. Superior Court*, 161 Cal.

6  App. 2d 650 (1958) (witness statement not privileged where agent requesting

7  recorded statement told witness that statement would be available to all parties).

8       Defendants further demand to see Plaintiffs' retainer agreement with Gang

9  Tyre to which they are also not entitled. *See W. Digital Corp. v. Superior Court*, 60

10  Cal. App. 4th 1471, 1482-83 (1998) (retainer agreement not discoverable if it

11  embodies any confidential information or litigation strategy). An attorney may

12  invoke the attorney-client privilege to protect information regarding a client's

13  retainer agreement if disclosure would "convey[] information which ordinarily

14  would be conceded to be part of the usual privileged communication between

15  attorney and client." *In re Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992); *see also In re*

16  *Osterhoudt*, 722 F.2d 591, 593-94 (9th Cir. 1983).

17       In *Horn*, the court noted that letters of consultation and retainer agreements

18  describing the intended scope of the attorney-client relationship could reveal the

19  client's motivation for seeking legal representation and thus, such a demand

20  constituted an "unjustified intrusion into the attorney-client relationship." 976 F.2d

21  at 1318. Plaintiffs' retainer agreement with Gang Tyre indeed reveals confidential

22  information including both Plaintiffs' motivation and the scope of legal services and

23  is therefore privileged. (Toberoff Decl., ¶ 24).

24       **2.    Plaintiffs Did Not Expressly Waive The Attorney-**
              **Client Privilege In The September 21, 2002 Letter**
25

26       Plaintiffs' mistaken provision to Paul Levitz of DC of a copy of its September

27  21, 2002 letter[3] terminating the legal services of Gang Tyre did not function as an

28

---

[3]  At the time the September 21, 2002 letter was sent by Plaintiffs, they were

1   express waiver of the attorney-client privilege regarding *the reasons* Plaintiffs chose

2   to do so. Nor did the letter waive Plaintiffs' privilege with respect to attorney-client

3   communications and attorney work product referenced therein or privileged

4   communications regarding "all issues" raised by the letter, as Defendants

5   erroneously argue.

6       Plaintiffs' mere reference to attorney-client communications in the September

7   21, 2002 letter, devoid of a discussion of the contents of those communications,

8   does not result in the waiver of the attorney-client privilege. In order for a

9   communication's privileged status to be waived, the holder of the privilege must

10   disclose "a significant part of the communication" or specifically consent to its

11   disclosure. Cal. Evid. Code § 912. What constitutes a significant part of the

12   communication is a matter of judicial interpretation; however, the limited scope of

13   any such waiver should be determined primarily by reference to the protective

14   purposes of the privilege. *Jones*, 119 Cal.App.3d at 547.

15       "[A] disclosure that a communication did occur that does not disclose the

16   specific content of the communication may not waive the privilege." *People v.*

17   *Hayes*, 21 Cal. 4th 1211, 1266 (1999); *Mitchell*, 37 Cal. 3d at 601 (1984) (Client's

18   disclosures, "at most, affirmed that she had discussed certain warnings with her

19   attorneys, and in no way revealed a significant part of the substance of those

20   discussions.")

21       Whereas "cc'ing" the September 22, 2002 letter to Paul Levitz may be found

22   to have waived the privilege with respect to this letter, itself, Plaintiffs' reference in

23   the September 22, 2002 letter to DC's February, 2002 counter-offer (*i.e.*, DC's

24   February 1, 2002 agreement draft) and to Marks' re-drafting of a counter-proposed

25   agreement that ultimately was never sent to Defendants, surely does not disclose the

26   specific substance of Marks' proposed re-draft and/or other attorney-client

27

---

28   effectively without counsel and merely "cc'ed" Paul Levitz, a DC executive with
  whom Plaintiffs had developed a friendship over the years, to avoid any confusion.

31

EXHIBIT 15

Page 339

1  communications, and, as such, does not waive such communications.

2      Defendants mischaracterize the permissible scope of the waiver they

3  advocate. The waiver exception has been very narrowly construed, and applied only

4  "if facts relevant to a particular, narrow subject matter have been disclosed in

5  circumstances in which it would be unfair to deny the other party an opportunity to

6  discover other relevant facts with respect to that subject matter." *Hercules, Inc. v.*

7  *Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977); *Starsight Telecast v. Gemstar*

8  *Development Corp.*, 158 F.R.D. 650, 654 (N.D. Cal. 1994); *Southern Cal. Gas Co.*

9  *v. Public Utilities Com.*, 50 Cal. 3d 31, 40 (1990) (disclosure must be "essential for

10  a fair adjudication of the action"). As in this case, "[i]f a discernible line exists

11  between the information withheld and the information disclosed, the line should be

12  maintained." *Starsight,* 158 F.R.D. at 655.

13      In *Travelers Ins. Companies v. Superior Court*, 143 Cal. App. 3d 436, 444

14  (1983), for instance, the court held that the client's acknowledgment of attorney

15  communications with regard to certain matters in its interrogatory responses had not

16  reached the point of substantial disclosure wherein the privilege ceased to operate.

17  The client's responses were not "wide enough in scope and deep enough in

18  substance to constitute 'a significant part of the communication.'" *Id.* The same

19  can be said for Plaintiffs' brief reference to previous attorney-client communications

20  in the September 21, 2002 letter. *See Mitchell,* 37 Cal. 3d at 603 (client's

21  "admission did not disclose any of the actual substance or content").

22      Moreover, to the extent, if any, that Plaintiffs discussed in the September 21,

23  2002 letter the facts underlying privileged communications, this also does not waive

24  the privilege. *Upjohn Co. v. United States*, 449 US 383, 395, 101 S Ct 677, 66 L Ed

25  2d 584 (1981). "The attorney-client privilege seeks to protect the conversations and

26  communications between the attorney and client, not merely the conclusions

27  developed by those conversations or the fact that such conversations occurred."

28  *Southern Cal. Gas Co.*, 50 Cal. 3d at 49. A finding of waiver in the instant case,

1   where the existence of privileged communications was merely recited in the

2   September 21, 2002 letter, would completely undermine the purpose and protections

3   of the attorney-client privilege.

4          Nor can Defendants claim that Plaintiffs' disclosure of one privileged

5   communication terminating its attorneys necessarily triggers further disclosures.

6   "Waiver of privilege as to one aspect of a protected relationship does not necessarily

7   waive the privilege as to other aspects of the privileged relationship." *Rodriguez v.*

8   *Superior Court,* 14 Cal. App. 4th 1260, 1270 (1993). Nothing in Defendants'

9   authority supports the argument that voluntary disclosure of a privileged

10  communication waives the privilege as to documents merely referenced in the

11  disclosed communication. *See United States v. Zolin,* 809 F.2d 1411, 1416 (9th Cir.

12  1985), *aff'd in part, vacated in part on other grnds,* 491 U.S. 554, 109 S.Ct. 2619,

13  105 L.Ed.2d 469 (1989) (privilege only waived as to tapes actually given to third

14  party).

15         Interestingly, Defendants rely on *Transamerica Title Ins. Co.,* 188 Cal. App.

16  3d 1047, where the attorney client privilege was *upheld* despite voluntary disclosure

17  by the client of a privileged letter. *Id. at* 1053 (noting that "[e]xcept for the June 21

18  letter, no attorney-client communications were revealed to any other party."). The

19  appellee's far-reaching waiver arguments were rejected as such waiver would

20  "surely impinge on [the appellant's] ability to freely and openly communicate to its

21  attorneys." *Id.*

22         **3.    The Attorney Work Product Doctrine Also Protects**

23              **Documents Sought By Defendants**

24         Rule 26 of the Federal Rules of Civil Procedure mandates that "the court shall

25  protect against disclosure of the mental impressions, conclusions, opinions, or legal

26  theories of an attorney or other representative of a party." *See Garcia v. City of El*

27  *Centro,* 214 FRD 587, 591 (S.D. Cal. 2003) (work product guards against divulging

28  an attorney's strategies and legal impressions); *Handgards, Inc. v. Johnson &*

1    *Johnson*, 413 F Supp 926, 930 (N.D. Cal. 1976) (doctrine "aimed at protecting the

2    effectiveness of a lawyer's trial preparations by immunizing such materials from

3    discovery"); *Hickman v. Taylor*, 329 U.S. 495, 510-11, 91 L. Ed. 451, 67 S. Ct. 385

4    (1947).

5         According to the plain text of Rule 26 of the Federal Rules of Civil

6    Procedure, the work product doctrine applies not only to documents created by the

7    attorney, but also by the party and its representatives.  Further, the doctrine applies

8    not only where litigation is pending, but also where it is anticipated.  That is, the

9    party, as here, must hold a reasonably objective belief that litigation is a possibility.

10   See *E.E.O.C. v. Lutheran Soc. Svcs.*, 186 F.3d 959, 968 (D.C. Cir. 1999).

11        Courts even afford work product protection to documents in which an

12   attorney collates or categorizes the facts.  Thus, while the facts themselves are not

13   privileged, the compilation is protected as work product.  *In re Grand Casinos, Inc.*,

14   181 FRD 615, 622 (D. Minn. 1998).  In addition, although the work product

15   privilege is inapplicable to purely factual materials, courts must be particularly

16   sensitive to that possibility that an attorney's discussion of factual matters will

17   reveal tactical or strategic thoughts.  *Powell v. United States, Dep't of Justice*, 584 F

18   Supp 1508, 1520 (N.D. Cal. 1984).

19        The work product privilege is intended to prevent a litigant from taking a free

20   ride on the research and thinking of his opponent's lawyer and to avoid the resulting

21   deterrent to a lawyer's committing his thoughts to paper.  *See, e.g., United States v.*

22   *Nobles*, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975).

23        Here, Defendants' requests ignore the attorney work product doctrine.  The

24   documents sought by Defendants – documents relating to settlement negotiations,

25   attorney-client communications and particularly, Marks' July 15, 2002 draft

26   settlement agreement that was never sent to Defendants – necessarily embody the

27   mental impressions, opinions, strategies and/or legal theories of Plaintiffs' attorneys

28   and are squarely covered by the work product doctrine.  Defendants should not be

1   allowed to gain access to the fruits of Plaintiffs' counsel's legal analysis or

2   strategies. *Durkin v Shields (In re Imperial Corp. of Am.)*, 167 F.R.D. 447, 453

3   (S.D. Cal. 1995).

4       There has been no waiver of work product protection in the instant case; to

5   the contrary, the protection is intended to apply in precisely this type of situation.

6   "The doctrine assures an attorney that his private files shall remain free from

7   intrusions of opposing counsel in the absence of special circumstances."

8   *Handgards*, 413 F Supp at 930. As Defendants have not demonstrated such

9   circumstances or necessity, Defendants' motion to compel such documents should

10  be denied.

11          **4.    Plaintiffs Have Produced A Detailed Privilege Log**

12      Plaintiffs' timely responses to Defendants' requests for production properly

13  objected to the disclosure of documents protected by the attorney-client privilege

14  and the work product doctrine. On July 20, 2006, Plaintiffs furnished Defendants

15  with a 25 page privilege log, containing 342 entries, properly setting forth with

16  respect to each communication: the date, sender, recipient, the nature of the

17  privilege claimed, the document type and the present location of the document.

18  (Toberoff Decl., Ex. L). Defendants conveniently omit that Plaintiffs informed

19  Defendants in June, 2006 that they were in the process of assembling this detailed

20  privilege log. *Id.*, ¶ 19.

21      Defendants' waiver claim is sharply at odds with their own behavior

22  regarding the disclosure to Plaintiffs of their respective privilege logs: Defendant

23  DC did not serve Plaintiffs with a privilege log until almost *eight months* after

24  Defendants responses to Plaintiffs' discovery requests were due; and its parent,

25  Defendant WB waited *thirteen months* to comply. Yet now it is Defendants who

26  baldly claim that Plaintiffs have entirely waived their attorney client privilege with

27  respect to all privileged documents based on a comparable delay in presenting their

28  privilege logs.

1    Defendants' argument that failure to submit a privilege log in a timely manner

2  waives the underlying privilege is incorrect.  In *Burlington Northern & Santa Fe*

3  *Railway Co. v. United States Dist. Ct.,* 408 F.3d 1142 (9th Cir. 2005) the court

4  explicitly rejected the contention that the failure to produce a privilege log within

5  the 30 day period prescribed by Rule 34 of the Federal Rules of Civil Procedure

6  constitutes a waiver of privilege.  *Id.* at 1147.  *See also Hardeman v.*

7  *Amtrak/Caltrain R.R.,* 2006 U.S. Dist. LEXIS 28861, *3 (N.D. Cal. 2006).

8    The Court should instead make a case by case determination of factors such

9  as: the timeliness of the objection and accompanying information about the withheld

10  documents; the magnitude of the document production; and other particular

11  circumstances of the litigation that make responding to discovery unusually easy or

12  unusually hard, including the relative sophistication of the party compiling the log.

13  *Burlington,* 408 F.3d at 1149.  Here, considering that the dispute over "Superman"

14  and "Superboy" has been going on for decades, Plaintiffs had a very considerable

15  amount of documents to sift through and analyze.  It took Defendants, sophisticated

16  multinationals with no less than three law firms tending to their discovery

17  compliance, 8-13 months to provide Plaintiffs with their privilege logs; it is little

18  wonder Plaintiffs would need as much time to comply as well.  Therefore, Plaintiffs,

19  having now provided Defendants with a substantial privilege log, have not in any

20  way waived their attorney-client privilege as to these protected communications.

21  **V.    DEFENDANTS' CONCLUSION**

22    Plaintiffs' effort to avoid the consequences of their actions in which they

23  affirmatively waived the attorney-client privilege on two discrete issues relevant to

24  this litigation must be stopped.  Not only have Plaintiffs improperly asserted

25  privilege in the face of their waiver, but they have not event attempted to properly

26  substantiate their position by providing Defendants with a privilege log.

27  Accordingly, Defendants respectfully requests that their motion to compel be

28  granted.

36

EXHIBIT 15

Page 344

1  VI.    **PLAINTIFF'S CONCLUSION**

2         For the foregoing reasons, Plaintiffs respectfully request that this court deny

3  Defendants' motion to compel in its entirety.

4  Respectfully submitted,

5  DATED:  July 24, 2006              FROSS ZELNICK LEHRMAN & ZISSU, P.C.

6                                     PERKINS LAW OFFICE, P.C.

7                                          -and-

8                                     WEISSMANN WOLFF BERGMAN
                                       COLEMAN GRODIN & EVALL LLP

9

10                          By: _____

11                                    Roger L. Zissu

12                                    Attorneys for Defendants and Counterclaimant

13  DATED:  July 24, 2006             LAW OFFICES OF MARC TOBEROFF, PLC
                                       Marc Toberoff
14                                     Nicholas C. Williamson

15

16                          By: _____

17                                    Marc Toberoff

18                                    Attorneys for Plaintiffs/Counterclaim-Defendants

19  I:\jweinberger\dcc\Siegel Litigation\Pleadings\04cv8400\060724-0425344-Joint Stip on Defs Motion to Compel re Privilege (Final)-jdw.doc

20

21

22

23

24

25

26

27

28

                                    37

EXHIBIT 15

Page 345

EXHIBIT 16



1

2

3

4              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
5                   WESTERN DIVISION

6   JOANNE SIEGEL, ET AL.,          )
                                    )
7        PLAINTIFFS,                )
                                    )
8        VS.                        )    CASE CV 04-8400-RSWL(RZX)
                                    )
9                                   )    LOS ANGELES, CALIFORNIA
    WARNER BROS. ENTERTAINMENT,     )    AUGUST 14, 2006
10  INC., ET AL.,                   )
                                    )
11       DEFENDANTS.                )
    _____)
12  JOANNE SIEGEL, ET AL.,          )
                                    )
13       PLAINTIFFS,                )
                                    )
14       VS.                        )    CASE CV 04-8776-RSWL(RZX)
                                    )
15                                  )    LOS ANGELES, CALIFORNIA
    TIME WARNER, INC., ET AL.,      )
16                                  )
         DEFENDANTS.                )
17  _____)

18                      HEARING
            BEFORE THE HONORABLE RALPH ZAREFSKY
19            UNITED STATES MAGISTRATE JUDGE
    APPEARANCES:
20
    FOR THE PLAINTIFFS:        LAW OFFICES OF MARC TOBEROFF
21                             BY:  MARC TOBEROFF
                                    NICHOLAS WILLIAMSON
22                             ATTORNEYS AT LAW
                               SUITE 2720
23                             2049 CENTURY PARK EAST
                               CENTURY CITY, CALIFORNIA  90067
24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

EXHIBIT 16                                              12

Page 346



2

```
 1    APPEARANCES:  (CONTINUED)
      FOR DEFENDANTS:           WEISSMANN WOLFF BERGMAN
 2                                COLEMAN GRODIN & EVALL LLP
                                BY:  MICHAEL BERGMAN
 3                                   ANJANI MANDAVIA
                                     ATTORNEYS AT LAW
 4                              9665 WILSHIRE BOULEVARD
                                NINTH FLOOR
 5                              BEVERLY HILLS, CALIFORNIA  90212

 6    COURTROOM DEPUTY/         ILENE BERNAL
      RECORDER:
 7
      TRANSCRIBER:              DOROTHY BABYKIN
 8                              COURT HOUSE SERVICES
                                1218 VALEBROOK PLACE
 9                              GLENDORA, CALIFORNIA  91740
                                (626) 963-0566
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 16

13

3

I N D E X

CASE NO. CV 04-8400-RSWL(RZX)                    AUGUST 14, 2006
         CV 04-8776-RSWL(RZX)

HEARING:   DEFENDANTS' MOTION TO COMPEL PRODUCTION OF
           DOCUMENTS.

4

1            LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 14, 2006

2            THE CLERK:   CASE NUMBER CV 04-8400-RSWL(RZX),

3    JOANNE SIEGEL, ET AL. VERSUS WARNER BROS. ENTERTAINMENT INC.,

4    ET AL.; AND CASE NUMBER CV 04-8776-RSWL(RZX), JOANNE SIEGEL,

5    ET AL. VERSUS TIME WARNER, INC., ET AL.

6            COUNSEL, PLEASE MAKE YOUR APPEARANCES.

7            MR. TOBEROFF:   GOOD MORNING, YOUR HONOR.

8            MARC TOBEROFF FOR PLAINTIFFS JOANNE SIEGEL AND

9    LAURA SIEGEL-LARSON.

10           THE COURT:   GOOD MORNING.

11           MR. WILLIAMSON:   GOOD MORNING, YOUR HONOR.

12           NICHOLAS WILLIAMSON FOR PLAINTIFFS.

13           THE COURT:   GOOD MORNING.

14           MR. BERGMAN:   GOOD MORNING, YOUR HONOR.

15           MICHAEL BERGMAN APPEARING FOR THE DEFENDANTS AND

16   COUNTERCLAIMANT.

17           THE COURT:   GOOD MORNING.

18           MS. MANDAVIA:   GOOD MORNING, YOUR HONOR.

19           ANJANI MANDAVIA, ALSO FOR DEFENDANT AND

20   COUNTERCLAIMANTS.

21           THE COURT:   ALL RIGHT.   GOOD MORNING.

22           ALL RIGHT.   WE'RE HERE ON THE DEFENDANTS' MOTION TO

23   COMPEL.

24           DOES THE MOVING PARTY WISH TO BE HEARD?

25           MR. BERGMAN:   YES, YOUR HONOR.

EXHIBIT 16

15

5

1          THE COURT:  GO AHEAD.

2          MR. BERGMAN:  YOUR HONOR, ALTHOUGH WE'RE --

3          THE COURT:  LET'S SEE.  JUST A MOMENT.  LET'S FIND

4     OUT WHERE THE BEEPING NOISE IS COMING FROM.

5          THE CLERK:  I THINK IT'S MY COMPUTER.  I'M JUST

6     SHUTTING IT OFF.

7          THE COURT:  ALL RIGHT.  THE TAPE IS OKAY?

8          THE CLERK:  YES.  THE TAPE IS FINE.

9          THE COURT:  ALL RIGHT.  GO AHEAD, MR. BERGMAN.

10          MR. BERGMAN:  THANK YOU, YOUR HONOR.

11          THE COURT:  WE SOLVED THE BEEPING NOISE PROBLEM.

12          MR. BERGMAN:  WE ARE SEEKING SEVERAL FORMS OF

13     DISCOVERY RELIEF IN THIS MOTION, YOUR HONOR.  BUT THE MAIN

14     THRUST DEALS WITH THE AUTHORITY OF THE PLAINTIFFS' PRIOR

15     COUNSEL TO SEND A LETTER DATED OCTOBER 19, 2001, WHICH LETTER

16     IS EXHIBIT A TO THE DECLARATION OF JAMES WEINBERGER.

17          THE COURT:  RIGHT.  BUT YOU ARE ONLY SEEKING RELIEF

18     TO COMPEL PRODUCTION OF DOCUMENTS IN FOUR OR FIVE CATEGORIES,

19     RIGHT?

20          MR. BERGMAN:  THAT IS CORRECT, YOUR HONOR.

21          THE COURT:  OKAY.  AND IT'S ALL BASED ON THIS ONE

22     LETTER.

23          MR. BERGMAN:  PRIMARILY.

24          THE COURT:  OKAY.

25          MR. BERGMAN:  CERTAINLY WITH RESPECT TO THE

EXHIBIT 16

16

6

1   AUTHORITY OF MR. MARKS.

2        YOUR HONOR, THIS DISPUTE HAD BEEN RAGING SINCE THE

3   LATE 90'S.  THE PARTIES SPENT SEVERAL YEARS NEGOTIATING A

4   POSSIBLE AGREEMENT.  THEY WERE REPRESENTED -- THE PLAINTIFFS

5   WERE REPRESENTED BY A VERY PROMINENT FIRM, GANG TYRE RAMER &

6   BROWN, BRUCE RAMER AND KEVIN MARKS.  THE DEFENDANTS WERE

7   REPRESENTED BY WARNER BROS.' GENERAL COUNSEL.

8        THE NEGOTIATIONS BETWEEN THEM WENT ON FOR YEARS.

9   FINALLY, ON OCTOBER 16, 2001, MR. SCHULMAN MADE AN OVERALL

10  OFFER OF SETTLEMENT.

11       THREE DAYS LATER, ON OCTOBER 19, 2001, MR. MARKS

12  SENT A LETTER IN WHICH HE SAYS, QUOTE, THE SIEGEL FAMILY,

13  THAT IS, THE PLAINTIFFS IN THIS ACTION.

14       THE COURT:  I READ THE LETTER, SIR.

15       MR. BERGMAN:  OKAY.

16       WE BELIEVE THAT THAT ACCEPTANCE CREATED A CONTRACT,

17  A SETTLEMENT AGREEMENT, ONE THAT RENDERS THESE COPYRIGHT

18  ACTIONS MOOT BECAUSE THE PARTIES HAVE ALREADY SETTLED THEIR

19  DISPUTE.

20       THE PLAINTIFFS LATER REPUDIATED A LONG FORM

21  AGREEMENT, AS YOUR HONOR HAS SEEN FROM OUR PAPERS, ON THE

22  GROUND THAT IT HAD NEW AND INCONSISTENT TERMS AND THAT

23  SOMEHOW ENTITLED THEM TO REPUDIATE IT.  BUT THAT'S FOR

24  ANOTHER COURT FOR ANOTHER DAY.  TODAY WE ARE SIMPLY TRYING TO

25  ESTABLISH THAT MR. MARKS HAD THE AUTHORITY TO SEND EXHIBIT A.

EXHIBIT 16

17

7

1          THE COURT:  NOW, LET ME JUST INTERRUPT YOU, SIR.  I

2    WANT TO MAKE SURE I HAVE THE PROCEDURE -- THE PROCEDURAL

3    POSTURE CORRECT.

4          THE PLAINTIFFS SUED SEEKING TO RECOVER THEIR

5    COPYRIGHTS.  YOU ASSERTED A COUNTERCLAIM, CORRECT?

6          MR. BERGMAN:  THAT IS CORRECT, YOUR HONOR.

7          THE COURT:  THE COUNTERCLAIM SEEKS ENFORCEMENT OF

8    WHAT YOU SAY IS A SETTLEMENT AGREEMENT.

9          MR. BERGMAN:  CORRECT, YOUR HONOR.

10         THE COURT:  WHAT DID THE PLAINTIFFS PLEAD IN REPLY

11   TO THE COUNTERCLAIM?

12         MR. BERGMAN:  THEY DENIED THAT SUCH A CONTRACT WAS

13   ENTERED INTO.

14         THE COURT:  A SIMPLE DENIAL?

15         MR. BERGMAN:  YES, YOUR HONOR.

16         THE COURT:  ALL RIGHT.

17         MR. BERGMAN:  OKAY.

18         THE COURT:  GO AHEAD.

19         MR. BERGMAN:  THERE EXISTS IN MY MIND SUBSTANTIAL

20   QUESTION AS TO WHETHER THE DOCUMENT, THE OCTOBER 19 LETTER,

21   IS EVEN PRIVILEGED.  IT WAS -- THE FACT OF AN ATTORNEY'S

22   AUTHORITY IS UNDER THE FEDERAL RULES PRESUMED.

23         THE COURT:  IF IT'S NOT PRIVILEGED, THEN, WHAT

24   ARGUMENT WOULD YOU HAVE FOR COMPELLING MATERIAL THAT IS

25   PRIVILEGED?

18

EXHIBIT 16

Page 352

8

1          MR. BERGMAN:  WELL, YOUR HONOR, THE -- HAVING

2    RAISED THE WHOLE ISSUE OF HIS AUTHORITY, AS THE PLAINTIFFS

3    HAVE DONE, THEY HAVE DECLINED TO PRODUCE DOCUMENTS.  THEY

4    HAVE EXPRESSLY DENIED REQUEST FOR ADMISSION NUMBER 69 WHICH

5    SIMPLY ASKS THEM TO ADMIT THAT MR. MARKS WAS AUTHORIZED --

6          THE COURT:  ALL RIGHT.  BUT STICK WITH ME FOR A

7    MOMENT, MR. BERGMAN.

8          I THOUGHT WHAT YOU JUST SAID WAS THAT THIS OCTOBER

9    LETTER YOU BELIEVE MAY WELL NOT BE PRIVILEGED AT ALL.

10          IS THAT RIGHT?

11          MR. BERGMAN:  THAT'S CORRECT, YOUR HONOR.

12          THE COURT:  SO, IF THAT LETTER ITSELF IS NOT

13    PRIVILEGED, THEN, THE COPYING OF THE LETTER TO THE DC COMICS

14     -- IS IT VICE PRESIDENT?  IS THAT WHO --

15          MR. BERGMAN:  I BELIEVE THAT YOUR HONOR IS --

16          THE COURT:  IF THAT'S SO, HOW COULD THAT WAIVE A

17    PRIVILEGE IF IT WERE NOT PRIVILEGED IN THE FIRST PLACE?

18          MR. BERGMAN:  I BELIEVE YOUR HONOR IS CONFUSING

19    EXHIBIT A, THE OCTOBER 19 LETTER, WITH EXHIBIT B, WHICH IS A

20    SEPTEMBER 21, 2002 LETTER, AS TO WHICH WE ARE ALLEGING

21    CERTAIN PRIVILEGES WERE WAIVED.

22          THE COURT:  I SEE.  OKAY.

23          MR. BERGMAN:  BUT WITH RESPECT TO THE --

24          THE COURT:  ALL RIGHT.

25          MR. BERGMAN:  -- AUTHORITY OF MR. MARKS, WE THINK

EXHIBIT 16

19

9

1    IT VERY CLEAR THAT THE PLAINTIFFS HAVE PLACED THAT ISSUE IN

2    ISSUE; NAMELY, THEY HAVE DENIED THAT HE WAS AUTHORIZED.  AND

3    ON THE EVE OF FILING THE JOINT STATEMENT, THEY PROVIDED YET A

4    SUPPLEMENTAL ANSWER TO THAT DENIAL IN WHICH THEY DISCLOSED

5    PART OF HIS AUTHORITY, BUT NOT ALL OF IT.

6            THE COURT:  OKAY.  WELL, JUST A MOMENT.  I WANT TO

7    MAKE SURE I STICK WITH THE RIGHT TRAIN OF THOUGHT.

8            SO THE DENIAL OF THE AUTHORITY, YOU'RE SAYING, IS

9    THAT WHICH CAME IN RESPONSE TO THE REQUEST FOR ADMISSION.

10            MR. BERGMAN:  THAT IS CORRECT, YOUR HONOR.

11            THE COURT:  IS THERE ANY OTHER PLACE WHERE IT WAS

12    DENIED?

13            MR. BERGMAN:  IT WAS DENIED, WE BELIEVE, INDIRECTLY

14    IN A SUPPLEMENTAL RESPONSE TO INTERROGATORY -- TO REQUEST

15    NUMBER 69.

16            THE COURT:  ALL RIGHT.  BUT OTHER THAN IN RESPONSE

17    TO THE REQUEST, IS THERE ANY OTHER PLACE WHERE THE AUTHORITY

18    OF -- MR. MARKS, WAS IT?

19            MR. BERGMAN:  NO, SIR.  THERE --

20            THE COURT:  MR. RAMER, WHATEVER --

21            MR. BERGMAN:  THOSE WERE THE ONLY TWO INSTANCES.

22            THE COURT:  OKAY.  ALL RIGHT.

23            GO AHEAD.

24            MR. BERGMAN:  AND, OF COURSE, IN THEIR PAPERS FILED

25    IN THE JOINT STATEMENT, THE PLAINTIFFS NEVER EVEN APPROACHED

20

EXHIBIT 16

Page 354

10

1   THAT ISSUE.  THEY SAY, OF COURSE, WE AUTHORIZED HIM TO

2   NEGOTIATE.   OF COURSE WE AUTHORIZED HIM TO EXTEND AN INTERIM

3   CONDITIONAL APPROVAL, WHATEVER THAT MIGHT MEAN.  BUT WE

4   BELIEVE THAT THE QUESTION OF HIS AUTHORITY IS VITAL TO THIS

5   CASE.  IF HE WAS AUTHORIZED, WE BELIEVE -- OFFER, OCTOBER

6   16.  ACCEPTANCE, OCTOBER 19.  CONTRACT.  AND THAT CONTRACT

7   PUTS US ON OUR WAY TO ESTABLISHING THE COUNTERCLAIM.

8           THE PLAINTIFFS SIMPLY CAN'T RAISE THE ISSUE DENYING

9   THE AUTHORITY OF THEIR COUNSEL AND THEN SAY TO US YOU CAN'T

10  LOOK BEHIND THAT.  YOU CAN'T ASCERTAIN THE CIRCUMSTANCES

11  CONCERNING HIS LACK OF AUTHORITY.

12          WE BELIEVE THE CASES DICTATE QUITE CLEARLY THAT WE

13  CAN.

14          THE OTHER POINT THAT WE RAISED, YOUR HONOR -- AND,

15  BY THE WAY, THAT -- THERE'S BEEN AN --

16          THE COURT:  LET ME ASSUME YOU ARE CORRECT FOR THE

17  MOMENT.  IF YOU ARE CORRECT, THEN, WOULD YOU BE ENTITLED TO

18  ANYTHING BEYOND DOCUMENTS WHICH DISCUSS WHAT AUTHORITY HE

19  HAD?

20          MR. BERGMAN:  IN THAT RESPECT, I DON'T BELIEVE SO,

21  YOUR HONOR.  ALTHOUGH WE WOULD CERTAINLY BE ENTITLED TO

22  QUESTION MR. MARKS AT DEPOSITION CONCERNING ANY CONVERSATIONS

23  THAT HE MAY HAVE HAD DEALING WITH THE QUESTION OF HIS

24  AUTHORITY.

25          THE COURT:  BUT JUST LIMITED TO THE QUESTION OF HIS

EXHIBIT 16

21

11

1    AUTHORITY.

2              MR. BERGMAN:  YES, SIR, IN THAT RESPECT.

3              THE COURT:  ALL RIGHT.

4              MR. BERGMAN:  THERE HAS ALSO BEEN A SEPARATE WAIVER

5    REGARDING THE CIRCUMSTANCES UNDER WHICH THE PLAINTIFFS

6    TERMINATED THE GANG TYRE FIRM.  AND THAT ARISES, YOUR HONOR,

7    UNDER THE LETTER DATED EXHIBIT -- MARKED EXHIBIT B, WHICH IS

8    A SEPTEMBER 21, 2002 LETTER.

9              AND JUST BY WAY OF BACKGROUND, YOUR HONOR, WE --

10             THE COURT:  THAT'S THE ONE I WAS REFERRING TO

11   EARLIER.

12             MR. BERGMAN:  YES, IT IS, SIR.

13             WE HAD ENTERED INTO WHAT WE CONTEND WAS A

14   SETTLEMENT AGREEMENT IN OCTOBER OF '01.  IN FEBRUARY OF '02

15   WE TRANSMIT TO THE PLAINTIFFS' COUNSEL A LONG-FORM AGREEMENT

16   MEMORIALIZING THE SETTLEMENT AGREEMENT.  NOTHING IS HEARD FOR

17   SEVERAL MONTHS.  AND THEN WE RECEIVE A LETTER DATED SEPTEMBER

18   21, 2002, EXHIBIT B, WHICH WAS, AS YOUR HONOR HAS NOTED,

19   COPIED TO A GENTLEMAN BY THE NAME OF PAUL LEVITZ, WHO IS THE

20   PRESIDENT OF DEFENDANT DC COMICS.

21             IN THAT LETTER THE PLAINTIFFS DO A NUMBER OF

22   THINGS.  FIRST OF ALL, THEY REFER TO DISCUSSIONS THAT THEY

23   PREVIOUSLY HAD WITH GANG TYRE CONCERNING THEIR REJECTION OF

24   THE LONG-FORM AGREEMENT.

25             IT TALKS ABOUT IRRECONCILABLE DIFFERENCES AND FOUR

EXHIBIT 16                                                    22

12

1   YEARS OF PAINFUL AND UNSATISFYING NEGOTIATIONS.  IT ALSO

2   TERMINATES THE SERVICES OF GANG TYRE & BROWN.  AND IN DOING

3   SO, IT REFERS TO A DOCUMENT THAT WE WERE PREVIOUSLY UNAWARE

4   OF THAT IS A REDRAFT OF THE FEBRUARY 4, 2002 LONG FORM

5   PREPARED BY DEFENDANTS, WHICH REDRAFT WAS PREPARED BY MR.

6   MARKS AND MR. RAMER.

7           THE COURT:  LET ME ASK YOU, SIR, FOR THE

8   IRRECONCILABLE DIFFERENCES, DO YOU READ THAT AS

9   IRRECONCILABLE DIFFERENCES BETWEEN THE PLAINTIFFS AND THEIR

10  COUNSEL OR BETWEEN PLAINTIFFS AND THE DEFENDANTS?

11          MR. BERGMAN:  I CANNOT ANSWER THAT QUESTION, YOUR

12  HONOR.  I DON'T -- I THINK IT CAN BE READ EITHER WAY.

13          THE COURT:  ALL RIGHT.

14          MR. BERGMAN:  WE BELIEVE THAT THIS LETTER REFERRING

15  AS IT DOES TO A JULY 15, 2002 REDRAFT BY GANG TYRE, A REDRAFT

16  THAT WAS OBVIOUSLY INTENDED FOR TRANSMISSION TO THE

17  DEFENDANTS, WE BELIEVE THAT THE REFERENCE TO IT AND THE

18  EXPRESSION THAT IT HAS BEEN REJECTED WAIVES THE PRIVILEGE

19  INSOFAR AS IT RELATES TO THAT LONG-FORM AGREEMENT PREPARED BY

20  GANG TYRE AND THE CIRCUMSTANCES OF THEIR TERMINATION.

21          THE PLAINTIFFS CLEARLY INTENDED THIS LETTER TO GO

22  TO DC COMICS.  ONE CAN SEE THAT CLEARLY FROM THE LAST

23  PARAGRAPH, WHICH IS OBVIOUSLY DIRECTED AT THE DEFENDANTS, AS

24  WELL AS BY THE FACT THAT MR. LEVITZ WAS COPIED.

25          AND WE BELIEVE, YOUR HONOR, THAT THE PLAINTIFFS

23

EXHIBIT 16

Page 357

13

1    SHOULDN'T BE PERMITTED TO REVEAL SOME PORTION OF A PRIVILEGED

2    COMMUNICATION AND THEN PRECLUDE DISCOVERY AS TO THAT VERY

3    SAME SUBJECT MATTER OF THE TERMINATION.

4            WE ALSO --

5            THE COURT:  BUT THEY HAVE A SOLUTION FOR YOU ON

6    THAT ONE.  THEY SAY DON'T REVEAL THIS LETTER AT ALL.  THAT

7    WOULD BE THEIR SOLUTION.

8            MR. BERGMAN:  WELL, BUT, OF COURSE, THEY HAVE

9    REVEALED IT.  IT'S --

10           THE COURT:  GO AHEAD.

11           MR. BERGMAN:  IT'S BEEN DONE.

12           WE BELIEVE THAT THE ATTORNEY-CLIENT PRIVILEGE

13   REGARDING THOSE CIRCUMSTANCES HAVE BEEN WAIVED.  AND WE ALSO

14   ASSERT, YOUR HONOR, THAT THERE IS NO WORK PRODUCT PRIVILEGE

15   FOR THAT JUNE -- THAT JULY REDRAFT OF THE AGREEMENT.  A,

16   BECAUSE IT WAS INTENDED FOR TRANSMISSION TO US IN THE FIRST

17   PLACE AND MAY NOT HAVE A PRIVILEGE.  AND, B, FOR THE OBVIOUS

18   REASON THAT THE REDRAFT ITSELF WILL REFLECT THE MENTAL

19   IMPRESSIONS OF MR. MARKS AND MR. RAMER AS TO WHETHER OR NOT,

20   AS PLAINTIFFS CONTEND, THE DEFENDANTS' LONG-FORM AGREEMENT

21   WAS SO FAR OUT OF THE BALLPARK, SO CONTRARY TO THE SETTLEMENT

22   AGREEMENT THAT HAD BEEN REACHED, THAT THEY COULD UNDER SOME

23   LEGAL THEORY REPUDIATE THE UNDERLYING SETTLEMENT AGREEMENT.

24           WE BELIEVE THAT THE MENTAL IMPRESSIONS OF THEIR

25   COUNSEL WILL BE DEMONSTRATIVE CONCERNING THAT ISSUE.  AND

EXHIBIT 16

24

14

1    THAT FOR THAT REASON UNDER NINTH CIRCUIT LAW BECAUSE THEIR

2    MENTAL IMPRESSIONS ARE INVOLVED, AND BECAUSE WE HAVE A

3    COMPELLING NEED FOR THE PRODUCTION OF THAT DOCUMENT -- WE

4    CAN'T GET IT ANY OTHER WAY, WE BELIEVE THAT THE WORK PRODUCT

5    PRIVILEGE HAS ALSO BEEN WAIVED IN THAT REGARD.

6              AND, FINALLY, YOUR HONOR, WE'RE MOVING FOR A

7    COMPLETE PRIVILEGE LOG.  AS WE POINT OUT IN OUR PAPERS, THIS

8    DISPUTE HAS BEEN RAGING FOREVER.  THE EARLIEST DOCUMENTS THAT

9    WERE REQUESTED WERE IN 1938.  WE'VE RECEIVED AT THE LAST

10   POSSIBLE MOMENT RIGHT BEFORE THE FILING OF THE JOINT

11   STATEMENT A PRIVILEGE LOG THAT IS LIMITED TO THE PERIOD FROM

12   1999 TO 2003.  WE BELIEVE WE ARE ENTITLED TO DOCUMENTS PRIOR

13   TO '99 AND SUBSEQUENT TO '03 AND TO THE FILING OF THE CASE.

14             I WOULD ALSO REFER YOUR HONOR TO THAT PRIVILEGE

15   LOG, WHICH IS ATTACHED TO MR. TOBEROFF'S DECLARATION.  AS YOU

16   CAN SEE, IT IS NOT ONLY INCOMPLETE INSOFAR AS TIME IS

17   CONCERNED, BUT IT FAILS TO DESCRIBE THE SUBJECT MATTER OF THE

18   DOCUMENTS WHICH ARE ASSERTEDLY PRIVILEGED.  AND IT FAILS TO

19   INDICATE WHO OTHER THAN THE ADDRESSEE MAY HAVE RECEIVED

20   COPIES.

21             AND WITHOUT THAT INFORMATION, THERE IS SIMPLY NO

22   WAY FOR THE PLAINTIFFS TO -- FOR THE DEFENDANTS TO ASSESS

23   WHETHER THE ASSERTED PRIVILEGES ARE VALID OR NOT.

24             UNLESS YOUR HONOR HAS FURTHER QUESTIONS, THAT'S ALL

25   I HAD TO SAY.

25

EXHIBIT 16
Page 359

15

1           THE COURT:  NO.  THANK YOU VERY MUCH.

2           MR. BERGMAN:  THANK YOU, SIR.

3           THE COURT:  MR. TOBEROFF, ARE YOU GOING TO RESPOND?

4           MR. TOBEROFF:  YES, I DO, YOUR HONOR.

5           YOUR HONOR, ALTHOUGH WE'RE NOT HERE TODAY TO ARGUE

6   THE MERITS OF THEIR CLAIM THAT THERE WAS SOME SORT OF

7   SETTLEMENT AGREEMENT, SINCE THEY HAVE MENTIONED IT, I THINK

8   IT'S IMPORTANT TO PUT -- TO MENTION A LITTLE BIT ABOUT THAT

9   TO PUT -- TO PUT THIS DISCOVERY ISSUE IN PERSPECTIVE.

10          ACCORDING TO THE DOCUMENTS, CONVERSATIONS TOOK

11  PLACE BETWEEN THE GENERAL COUNSEL, JOHN SCHULMAN OF WARNER

12  BROS., GENERAL COUNSEL OF WARNER BROS., AND KEVIN MARKS, WHO

13  AT THAT TIME WAS THE ATTORNEY FOR THE PLAINTIFFS.  AND

14  FOLLOWING THAT, A LETTER WAS SENT OVER BY KEVIN MARKS --

15  THAT'S THE OCTOBER 19TH LETTER -- APPROVING CERTAIN KEY

16  MATERIAL DEAL POINTS.

17          OBVIOUSLY, AT THAT STAGE WHEN THEY WERE TRYING TO

18  REACH A SETTLEMENT AGREEMENT, ANY SUCH APPROVAL OF BASIC DEAL

19  POINTS -- YOU NEED TO START SOMEWHERE AND AGREE ON SOME

20  THINGS IN ORDER TO MOVE FORWARD TO A FINAL AGREEMENT.  ANY

21  SORT OF APPROVAL IS OBVIOUSLY CONDITIONAL ON, NUMBER ONE,

22  THAT THOSE DEAL POINTS BE ARTICULATED IN AN ACCEPTABLE

23  LONG-FORM AGREEMENT, WHICH THE PARTIES ARE GOING TO CAREFULLY

24  REVIEW AND EXECUTE.

25          AND, NUMBER TWO, THAT THOSE DEAL POINTS ARE NOT

16

1   CHANGED IN ANY MATERIAL FASHION, AND THAT NEW -- IF ANY NEW

2   DEAL POINTS ARE ADDED, YOUR HONOR, THAT THOSE NEW DEAL POINTS

3   ARE EITHER -- WOULD HAVE TO BE ACCEPTED.  THIS IS IMPLICIT.

4           SO --

5           THE COURT:  SO, ARE YOU SAYING THAT IT'S THE

6   PLAINTIFFS' POSITION THAT THERE WERE MATERIAL POINTS THAT

7   WERE CHANGED?

8           MR. TOBEROFF:  ABSOLUTELY.

9           AND IN ORDER TO ARRIVE AT THAT, YOU DON'T NEED TO

10  ENTER THE SANCTUM OF THE ATTORNEY -- OF ATTORNEY-CLIENT

11  PRIVILEGED COMMUNICATIONS.  ALL YOU HAVE TO DO IS COMPARE THE

12  OCTOBER 19TH LETTER FROM KEVIN MARKS TO A SUBSEQUENT LETTER

13  SENT OVER BY JOHN SCHULMAN DATED OCTOBER 26TH AND THEN

14  FINALLY TO THE FIRST DRAFT OF A PROPOSED SETTLEMENT AGREEMENT

15  THAT WAS SENT OVER FEBRUARY 2ND OF 2002.

16          THE ISSUE --

17          THE COURT:  ARE THOSE IN FRONT OF ME?

18          MR. TOBEROFF:  I BELIEVE SO.  THE OCTOBER 26TH

19  LETTER FROM JOHN SCHULMAN IS EXHIBIT A TO MY DECLARATION.

20  AND I WOULD HAVE TO LOOK FOR THE -- TO LOOK FOR THE FULL

21  AGREEMENT.

22          JUST LOOKING, YOUR HONOR, AT THE OCTOBER 26TH

23  LETTER OF JOHN SCHULMAN, ENCLOSING -- IT'S AN ENCLOSING

24  LETTER, YOU CAN TELL RIGHT AWAY THAT THERE ISN'T AN

25  AGREEMENT.

27

EXHIBIT 16

Page 361

17

1          HE SAYS -- HE SAYS, "I ENCLOSE HEREWITH FOR YOU

2          AND BRUCE A MORE FULSOME OUTLINE OF WHAT WE

3          BELIEVE THE DEAL WE'VE AGREED TO IS."

4          SO, THIS IS AFTER KEVIN MARKS HAS SENT OVER A

5    LETTER WITH BASIC DEAL POINTS.  HE'S NOW SENDING OVER ON

6    OCTOBER 26TH -- BY HIS LANGUAGE, IT WOULD APPEAR THAT WHAT HE

7    BELIEVES THE DEAL IS IS SOMETHING DIFFERENT THAN KEVIN MARKS

8    BELIEVES THE DEAL IS.  THEY'RE ESSENTIALLY EXCHANGING OFFERS

9    AND COUNTEROFFERS AT THIS POINT.

10          SO, THIS ISSUE IS GOING TO BE RESOLVED BY BASICALLY

11   NOT BASED ON THE MENTAL IMPRESSIONS OF ATTORNEYS OR

12   ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS, BUT BY COMPARING

13   THESE DOCUMENTS IN WHICH THE COURT WILL MOST PROBABLY FIND

14   OFFER, COUNTEROFFER, COUNTEROFFER, AND THEN A REJECTION.

15          THE COURT:  SO, YOUR ARGUMENT IN THE MAIN SUIT IS

16   GOING TO BE THAT THE OCTOBER 19TH LETTER WAS AN OFFER, AND

17   THE OCTOBER 26TH LETTER WAS A COUNTEROFFER?

18          MR. TOBEROFF:   SOMETHING LIKE THAT.  ESSENTIALLY,

19   IT'S CLEAR FROM THE OCTOBER 26TH LETTER THAT WHAT -- WHAT

20   KEVIN MARKS BELIEVED HE WAS APPROVING AT THAT INITIAL STAGE

21   OF AGREEING ON BASIC DEAL POINTS WAS SOMETHING DIFFERENT.  IN

22   OTHER WORDS, THE OFFER HE BELIEVED HE WAS ACCEPTING IS

23   SOMETHING DIFFERENT.  AND, THEREFORE, WHAT HE PROPOSED IS

24   REALLY A COUNTEROFFER.  AND THEN WITH THE OCTOBER 26TH LETTER

25   IS ANOTHER COUNTEROFFER FOLLOWED BY --

28

EXHIBIT 16

Page 362

18

1        THE COURT:  LEAD ME THROUGH THAT FOR A MOMENT.

2        SHOW ME WHERE IN THE OCTOBER --

3        (TAPE 1 ENDING.)

4        THE CLERK:  ALL RIGHT.  YOU CAN PROCEED.

5        THE COURT:  ALL RIGHT.  I INTERRUPTED COUNSEL

6   BECAUSE OUR TAPE MACHINE HAD ENDED.  SO, YOU CAN RESUME NOW.

7        MR. TOBEROFF:  I NEEDED A GLASS OF WATER ANYWAY.

8        THE OCTOBER 26TH PROPOSAL HAS A WARRANTY AND

9   INDEMNIFICATION PROVISIONS THAT ARE FAR BROADER IN THE

10   OCTOBER 19TH LETTER.  FOR INSTANCE, KEVIN MARKS HAD MADE A

11   POINT OF SAYING THE PLAINTIFFS WILL ONLY WARRANT AND

12   REPRESENT THAT THEY HAVE NOT SOLD THESE RIGHTS TO ANY THIRD

13   PARTY.

14        AND RIGHT AWAY, ON OCTOBER 26TH, SCHULMAN IS ASKING

15   FOR MUCH HEAVIER-DUTY WARRANTIES, WHICH IS A MATERIAL DEAL

16   POINT BECAUSE OF THE INDEMNIFICATION PROVISIONS THAT ARE

17   CONNECTED TO THOSE WARRANTIES AND REPRESENTATIONS.

18        BUT THAT'S FOR -- THAT IS FOR, I BELIEVE, ANOTHER

19   DAY TO ARGUE THAT POINT.

20        THE COURT:  IT'S NOT FOR ME TO DECIDE, BUT IT IS

21   INTERESTING BACKGROUND.

22        MR. TOBEROFF:  RIGHT.  AND THE REASON I AM GIVING

23   THAT BACKGROUND IS TO SAY THAT WE -- FIRST OF ALL, PLAINTIFFS

24   HAVE -- THERE IS NO SETTLEMENT AGREEMENT.  AND DEFENDANTS

25   HAVE NEVER ACTED AS IF THERE IS A SETTLEMENT AGREEMENT.

EXHIBIT 16

29

19

1    THESE DISCUSSIONS TOOK PLACE IN 19- -- 2001 AND 2002.

2           IN 2002, AFTER PLAINTIFFS REJECTED WARNER BROS.'

3    PROPOSAL, WARNER BROS. DIDN'T WRITE A LETTER SAYING, WE HAVE

4    A BINDING AGREEMENT OR A TENDER PAYMENT UNDER THE AGREEMENT.

5           THEY DID NOTHING UNTIL 2004 WHEN WE FILED FOR

6    DECLARATORY RELIEF TO ESTABLISH THE RIGHTS OF THE PLAINTIFFS.

7    ALL OF A SUDDEN THEY SAY, WELL, WE DON'T BELIEVE YOU HAVE ANY

8    RIGHTS.  BUT TO THE EXTENT YOU DO, WE BOUGHT THEM IN A

9    SETTLEMENT AGREEMENT.

10          IT'S -- IT'S -- IN MY OPINION THAT CLAIM IS NOT

11   GOING TO GO ANYWHERE IN COURT.

12          THE COURT:  WELL, WE'LL SEE.

13          MR. TOBEROFF:  WE'LL SEE.

14          THE COURT:  THE DEFENDANTS HAVE A DIFFERENT

15   OPINION.

16          MR. TOBEROFF:  I --

17          THE COURT:  AND AS I SAID, I'M NOT GOING TO MAKE

18   THE DECISION.  SO, WHY DON'T WE GO TO --

19          MR. TOBEROFF:  I UNDERSTAND.

20          THE COURT:  -- THE MEAT OF THIS MOTION.

21          MR. TOBEROFF:  OKAY.  SO, AGAINST THAT BACKDROP, WE

22   HAVE NOT PUT IT -- WE HAVE NOT -- PLAINTIFFS HAVE NOT SAID

23   THAT KEVIN MARKS WAS NOT AUTHORIZED TO SEND THAT LETTER.  IN

24   MY PAPERS I SAY WE'VE NEVER SAID -- WE DO NOT NOW SAY -- AND

25   IT'S RIDICULOUS TO SAY THAT YOUR OWN ATTORNEY DOES NOT HAVE

EXHIBIT 16

30

20

1    AUTHORITY TO NEGOTIATE ON YOUR BEHALF.

2            KEVIN MARKS HAD ABSOLUTE AUTHORITY.  AND WE'VE SAID

3    THAT ALL ALONG.  RECENTLY, THE SIEGELS HAD A DEPOSITION

4    TAKEN.  THEY SAID THE EXACT SAME THING.

5            I BELIEVE THIS CLAIM IS MERELY A STRAWMAN IN ORDER

6    TO INVADE THE PRIVILEGE.  KEVIN MARKS HAD AUTHORITY TO ENTER

7    INTO THOSE NEGOTIATIONS.

8            WHEN ASKED ORIGINALLY ABOUT THE LETTER, THEY GOT

9    THE LETTER AT THE SAME TIME WARNER BROS. GOT THE LETTER.  SO,

10   THEY NEVER APPROVED THE ACTUAL WORDING OF THAT LETTER.  AND,

11   SO, ORIGINALLY WHEN THEY DIDN'T GIVE AN UNQUALIFIED ADMISSION

12   TO THE REQUEST FOR ADMISSION THAT THEY APPROVE THE LETTER,

13   THAT'S WHAT THEY WERE REFERRING TO.  AND THEN WHEN -- IN

14   THEIR SUPPLEMENTAL RESPONSE THEY SUPPLEMENTED BY TRYING TO

15   DESCRIBE THAT.

16           THE SUPPLEMENTAL RESPONSE, AGAIN, DOES NOT PUT

17   KEVIN MARKS' AUTHORITY AT ISSUE, YOUR HONOR.  IT SAYS, "WE

18   CONDITIONALLY APPROVED THE TERMS IN THE KEVIN MARKS'

19   LETTER."

20           AND THEN IT RECITES PROBABLY IN TOO -- MAYBE TOO

21   VERBOSE A FASHION, IT RECITES THE CONDITIONS, WHICH ARE THE

22   OBVIOUS CONDITIONS.

23           ONE, THAT THOSE TERMS GET ARTICULATED IN AN

24   ACCEPTABLE LONG-FORM AGREEMENT.

25           TWO, THAT THE TERMS AREN'T CHANGED; AND

EXHIBIT 16

31

21

1    THREE, THAT THERE ARE NO NEW TERMS THAT AREN'T

2  ACCEPTABLE TO US.

3    THAT DOES NOT PUT YOUR ATTORNEY'S AUTHORITY AT

4  ISSUE BY SAYING THAT WE CONDITIONALLY APPROVE THE TERMS IN

5  HIS LETTER BASED ON THOSE OBVIOUS OTHER APPROVALS THAT TAKE

6  PLACE IN REACHING A FINAL SETTLEMENT AGREEMENT.

7    SO, THAT ASIDE, SINCE THE AUTHORITY OF KEVIN MARKS

8  IS AT ISSUE, THAT UNDERCUTS THEIR WHOLE THEORY THAT -- BY

9  PUTTING AT ISSUE, WE'VE OPENED UP THE ENTIRE ATTORNEY-CLIENT

10  PRIVILEGE.

11    THE COURT:  LET ME JUST ASK YOU, MR. TOBEROFF.  I

12  BELIEVE I HAD MR. BERGMAN'S UNDERSTANDING OF THIS.  I JUST

13  WANT TO MAKE SURE THAT YOU AGREE WITH HIM.

14    WHEN YOU FILED YOUR PLEADING, YOUR REPLY TO THEIR

15  COUNTERCLAIM -- SOMETIMES IT'S CALLED AN ANSWER; TECHNICALLY

16  IT'S A REPLY -- BUT WHEN YOU FILED THAT, DID YOU ASSERT AS A

17  DEFENSE TO THE COUNTERCLAIM THAT MR. MARKS DID NOT HAVE

18  AUTHORITY TO ACT ON YOUR BEHALF?

19    MR. TOBEROFF:  NO, WE DID NOT, YOUR HONOR.

20    THE COURT:  ALL RIGHT.  THERE'S NO PLEADING WHICH

21  SETS THAT FORTH?

22    MR. TOBEROFF:  THAT'S CORRECT, YOUR HONOR.

23    THE COURT:  ALL RIGHT.  GO AHEAD.

24    MR. TOBEROFF:  SO, THAT TAKES -- I BELIEVE THIS

25  WHOLE AUTHORITY ISSUE IS REALLY A STRAW-MAN ARGUMENT.

32

EXHIBIT 16

22

1    THERE'S NO INTENTION ON OUR PART TO SAY THAT KEVIN MARKS DID

2    NOT HAVE AUTHORITY.

3          THE SECOND PART OF THEIR MOTION DEALS WITH THE

4    SEPTEMBER 21ST, 2002 LETTER.  AND WHAT HAPPENED AT THIS STAGE

5    WAS THAT THE SIEGELS WERE TERMINATING THEIR CURRENT COUNSEL

6    AND THEY WERE IN BETWEEN COUNSEL.  AND THEY HAD A

7    LONG-STANDING RELATIONSHIP OR FRIENDSHIP WITH AN EXECUTIVE --

8    THE PRESIDENT OF DC, WHO WAS PAUL LEVITZ, WHO THEY HAD CC'D

9    THIS LETTER.

10          SO, WHEN THEY SENT OUT A LETTER TERMINATING THEIR

11    COUNSEL, SO THAT THERE WOULD BE NO MISUNDERSTANDING WITH THE

12    OTHER SIDE OR CONFUSION, THEY CC'D PAUL LEVITZ.  THEY

13    SHOULDN'T HAVE DONE SO.  IF THEY HAD BEEN REPRESENTED BY AN

14    ATTORNEY AT THE POINT, THEY WOULDN'T HAVE DONE SO.  BUT THEY

15    DID IT.

16          IN THAT LETTER THEY MENTION A COUPLE OF THINGS.

17    THEY MENTION THAT THEY'RE TERMINATING THEIR ATTORNEY.  BUT

18    THEY DON'T MENTION WHY, AND THEY DON'T MENTION THE SUBSTANCE

19    OF THAT TERMINATION.

20          SO, THE MERE MENTION THAT YOU'RE TERMINATING YOUR

21    ATTORNEYS DOES NOT OPEN UP THE REASONS WHY YOU'RE TERMINATING

22    YOUR ATTORNEYS.

23          WHAT THE CASE LAW SAYS -- AND, BY THE WAY, THEY'VE

24    CITED NO CASE LAW FOR THEIR ARGUMENTS -- THAT THE MERE

25    MENTION OF SOMETHING OPENS UP -- OPENS IT UP.  YOU HAVE TO GO

EXHIBIT 16

33

23

1    INTO GREAT DETAIL ABOUT THE SUBSTANCE OF IT IN ORDER TO OPEN

2    UP THE ATTORNEY-CLIENT PRIVILEGE.  THAT'S WHAT THE CASES SAY.

3    AND EVEN WHEN YOU DO THAT, THE CASES SAY THAT THE COURT

4    SHOULD DRAW A LINE WHEREVER IT CAN DRAW A LINE RATHER THAN

5    OPEN UP THE ENTIRE PRIVILEGE ON THE SUBJECT MATTER.

6              THE COURT:  DO YOU READ THE IRRECONCILABLE

7    DIFFERENCES AS APPLYING TO THE RELATIONSHIP BETWEEN THE

8    PLAINTIFFS AND THEIR ATTORNEYS OR BETWEEN THE PLAINTIFFS AND

9    THE DEFENDANTS?

10             MR. TOBEROFF:  I READ IT ABSOLUTELY AS APPLYING TO

11   IRRECONCILABLE DIFFERENCES WITH RESPECT TO THE NEGOTIATIONS,

12   EVEN THOUGH THAT'S SORT OF A BUZZ WORD.

13             THE COURT:  I DON'T THINK THAT ANSWERED MY

14   QUESTION.

15             MR. TOBEROFF:  YES, I -- OKAY.  I'M SORRY.

16             THE COURT:  IRRECONCILABLE DIFFERENCES WITH RESPECT

17   TO THE NEGOTIATIONS COULD BE WITH RESPECT TO THE WAY THE

18   ATTORNEYS HAD CONDUCTED THE NEGOTIATIONS ON BEHALF OF THE

19   PLAINTIFFS.

20             SO, I'M ASKING YOU WHETHER YOU READ IT AS

21   IRRECONCILABLE DIFFERENCES BETWEEN THE PLAINTIFFS AND THEIR

22   THEN COUNSEL IN HOW THOSE NEGOTIATIONS HAD BEEN CONDUCTED FOR

23   EXAMPLE, OR BETWEEN THE PLAINTIFFS AND THE DEFENDANTS IN

24   TERMS OF HOW THE NEGOTIATIONS WERE COMING INTO FRUITION?

25             MR. TOBEROFF:  I BELIEVE IT HAS TO DO PURELY WITH

EXHIBIT 16

34

24

1    THE NEGOTIATIONS NOT WITH IRRECONCILABLE DIFFERENCES WITH THE

2    COUNSEL.

3            THE COURT:  ALL RIGHT.

4            MR. TOBEROFF:  BECAUSE IT SAYS WE -- IF IT'S,

5    THEREFORE, DUE TO IRRECONCILABLE DIFFERENCES AFTER FOUR YEARS

6    OF PAINFUL AND UNSATISFYING NEGOTIATIONS, THOSE NEGOTIATIONS

7    WERE NOT WITH -- WITH THEIR ATTORNEYS, THEY WERE WITH WARNER

8    BROS.  SO, THE IRRECONCILABLE DIFFERENCES I THINK REFERS TO

9    THE NEGOTIATIONS WITH WARNER BROS.  AND THEN THEY ASKED TO

10   END THOSE NEGOTIATIONS.

11           ONE OF THE REASONS WHY THEY'RE ASKING TO END

12   NEGOTIATIONS IS BECAUSE THEY HAD VARIOUS AGREEMENTS IN WHICH

13   THEY NEED TO INFORM THE OTHER SIDE WHEN THEY'RE STOPPING

14   NEGOTIATIONS.  THEY HAD A CONFIDENTIALITY AGREEMENT, FOR

15   INSTANCE, AND THEY ALSO HAD A TOLLING AGREEMENT.

16           SO, THE FACT OF MENTIONING THEIR TERMINATION OF

17   ATTORNEYS DOESN'T OPEN UP THE PRIVILEGE AS TO WHY THEY

18   TERMINATED THEIR ATTORNEYS.

19           THE SECOND THING THEY MENTION HERE IS A REDRAFT,

20   WHICH WAS OBVIOUSLY REJECTED BECAUSE IT WAS NEVER SENT.  THAT

21   REDRAFT IS PROTECTED BY -- THE REASONS WHY THEY REJECTED

22   THEIR ATTORNEYS' REDRAFT COULD NOT BE -- YOU KNOW, IT'S A

23   PERFECT EXAMPLE OF A COMMUNICATION THAT SHOULD BE PROTECTED

24   BY THE ATTORNEY-CLIENT PRIVILEGE.  THEIR MENTAL IMPRESSIONS,

25   THEIR REASONS, THEIR COMMUNICATIONS WITH THEIR ATTORNEY AS TO

EXHIBIT 16

35

25

1    WHETHER OR NOT A REDRAFT WOULD BE ACCEPTABLE TO THEM OR NOT,

2    ALL OF THAT IS PROTECTED.   IT'S ALSO PROTECTED AS ATTORNEY

3    WORK PRODUCT.

4          AND SIMPLY BY MENTIONING THAT THERE WAS A REDRAFT,

5    YOU DON'T OPEN UP THE ATTORNEY-CLIENT PRIVILEGE.   BECAUSE THE

6    SUBSTANCE OF THAT REDRAFT, THE SUBSTANCE OF THEIR REJECTION,

7    THE REASONS WHY THEY REJECTED IT, ALL OF THE PRIVILEGED

8    THINGS ATTENDANT TO THAT REDRAFT NONE OF THOSE ARE MENTIONED

9    IN THIS LETTER.   AND THE CASE LAW SAYS THAT IF YOU JUST -- IF

10   YOU DON'T MENTION THE SUBSTANCE, YOU DON'T WAIVE THE

11   PRIVILEGE AS TO THAT SUBSTANCE.

12         AS FAR AS THE ATTORNEY -- AS FAR AS THE WORK

13   PRODUCT DOCTRINE IS CONCERNED, IT'S INCORRECT TO SAY THE

14   MENTAL IMPRESSIONS OF KEVIN MARKS IS AT ISSUE IN THIS CASE

15   AND THAT WE'VE PLACED THAT AT ISSUE.   IT'S NEITHER AT ISSUE

16   NOR HAVE WE PLACED IT AT ISSUE.   IT'S NOT THE -- IT'S UP TO

17   THE CLIENT TO DECIDE WHETHER TO ACCEPT NEW AND DIFFERENT

18   TERMS IN A SETTLEMENT AGREEMENT.   IT'S NOT UP TO THEIR

19   ATTORNEY.

20         SO, HOW ARE THE MENTAL IMPRESSIONS OF THEIR

21   ATTORNEY AT ISSUE.   LET'S SAY THE ATTORNEY THINKS, WELL, YOU

22   KNOW WHAT, THESE NEW CONDITIONS AREN'T SO BAD.   I THINK WE

23   SHOULD ACCEPT SOME OF THEM AND REJECT OTHERS.

24         DOES THAT MEAN THAT IT BINDS THE CLIENT.   I DON'T

25   THINK SO.

36

EXHIBIT 16

26

1          SO, I CAN'T SEE -- ALTHOUGH A LOT OF THESE PHRASES

2    ARE BEING LOOSELY THROWN AROUND BY THE DEFENDANTS, I REALLY

3    DON'T SEE HOW THE MENTAL IMPRESSIONS OF KEVIN MARKS ARE AT

4    ISSUE HERE.  AND IF THEY ARE, THIS SUBJECT MATTER IS STILL

5    PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

6          LASTLY, AS FAR AS THE PRIVILEGE LOG ISSUE IS

7    CONCERNED, IT'S INCORRECT THAT THE PRIVILEGE LOG DOES NOT

8    CONNOTE OTHER PARTIES, LIKE CC'D PARTIES.  THEY MADE A COUPLE

9    OF POINTS REGARDING THE PRIVILEGE LOGS, AND I WANT TO ADDRESS

10   SOME OF THEM.

11         THE PRIVILEGE LOG ACTUALLY DOES -- WHEN MORE THAN

12   ONE PARTY RECEIVES A COPY OF THE DOCUMENT, THE PRIVILEGE LOG

13   WILL NOTE THAT.  FOR EXAMPLE, THERE ARE SOME ENTRIES THERE

14   THAT SAY LAURA SIEGEL LARSON, JOANNE SIEGEL AND DON BULSON.

15   AND ALL THREE PARTIES ARE LISTED EVEN THOUGH DON BULSON, FOR

16   INSTANCE, IS ONLY CC'D OR LAURA SIEGEL IS CC'D ON THE COPY.

17   SO, WE DON'T LAY IT OUT --

18         THE COURT:  ARE YOU REPRESENTING TO THE COURT THAT

19   IN EVERY CASE WHERE THERE WERE MULTIPLE ADDRESSEES OR

20   MULTIPLE PERSONS WHO RECEIVED THE DOCUMENT, YOU HAVE

21   IDENTIFIED THOSE?

22         MR. TOBEROFF:  I DON'T WANT TO -- I REPRESENT

23   THAT'S THE INTENT.  I'LL GO BACK AND DOUBLE CHECK

24   EVERYTHING.  TO THE EXTENT THERE IS A DOCUMENT WHERE THE CC'S

25   WERE NOT -- ARE NOT IN THERE, I'LL GLADLY ADD IT TO THE

27

1   PRIVILEGE LOG.

2           THE COURT:  WELL, THAT'S NOT AN ISSUE BETWEEN THE

3   TWO OF YOU.

4           MR. TOBEROFF:  ABSOLUTELY NOT AN ISSUE.

5           THE COURT:  SO --

6           MR. TOBEROFF:  NOR IS IT AN ISSUE --

7           THE COURT:  SO, LET'S JUST FOCUS ON THIS FOR A

8   MOMENT.

9           SO, YOU'LL REVIEW THE PRIVILEGE LOG.  AND TO THE

10  EXTENT THERE ARE ANY DOCUMENTS WHERE YOU HAVE NOT IDENTIFIED

11  ALL THE PEOPLE WHO RECEIVED IT, YOU WILL SUPPLEMENT THAT AND

12  INDICATE IT, CORRECT?

13          MR. TOBEROFF:  ABSOLUTELY, YOUR HONOR.

14          THE COURT:  ALL RIGHT.  SO, THE OTHER ISSUE WHICH

15  THE DEFENDANTS IDENTIFIED WAS THE TIME PERIOD COVERED BY THE

16  PRIVILEGE LOG.  WHY DON'T YOU ADDRESS THAT.

17          MR. TOBEROFF:  OKAY.  I INFORMED DEFENDANTS'

18  COUNSEL THAT THIS PRIVILEGE LOG COVERS A CERTAIN PERIOD,

19  NAMELY, THE PERIOD OF KEVIN MARKS' REPRESENTATION AND ALL OF

20  THE LETTERS IN THAT FILE.  IT WAS A VERY LARGE FILE.  AND

21  THAT WE WOULD BE SERVING ADDITIONAL PRIVILEGE LOGS BECAUSE

22  THERE ARE A LOT OF DOCUMENTS AND A LOT OF FILES GOING -- IN

23  THIS CASE, INCLUDING, YOU KNOW, TWO LITIGATIONS -- ONE IN

24  1947 AND ONE IN 1974.

25          AND WE'RE IN THE PROCESS --

28

1          THE COURT:  YES, I READ ABOUT THOSE.

2          MR. TOBEROFF:  WE'RE IN PROCESS OF ASSEMBLING

3   THOSE PRIVILEGE LOGS.  AND, OF COURSE, WE'RE GOING TO --

4   WE'RE GOING TO PRODUCE THEM.  SO, THERE'S NO ISSUE --

5          THE COURT:  WHEN?

6          MR. TOBEROFF:  I'D LIKE TO DO IT AFTER -- IN

7   SEPTEMBER, IF I CAN, BECAUSE I'M GOING AWAY IN THE LAST TWO

8   WEEKS IN AUGUST.

9          THE COURT:  THE LAST TWO WEEKS IN AUGUST STARTS

10  ABOUT NOW.

11         MR. TOBEROFF:  NO, THE 18TH.  SO --

12         THE COURT:  THAT'S SATURDAY.

13         MR. TOBEROFF:  -- CAN WE SAY BY THE END OF

14  SEPTEMBER?

15         THE COURT:  DO YOU HAVE ANY OTHER DEADLINES COMING

16  UP THAT THAT WOULD AFFECT?

17         MR. TOBEROFF:  WELL, I'M SUPPOSED TO BE ON TRIAL IN

18  -- WHAT DATE?

19         (COUNSEL CONFERRING.)

20         MR. TOBEROFF:  SEPTEMBER 15TH.  I HAVE A TRIAL

21  SEPTEMBER 15TH.

22         THE COURT:  NO.  NO.  NO.  DEADLINES IN THIS CASE?

23         MR. TOBEROFF:  NO, I DON'T BELIEVE SO.

24         THE COURT:  ALL RIGHT.  SO, YOU'RE PROPOSING BY THE

25  END OF SEPTEMBER TO HAVE ALL PRIVILEGE LOGS TO THE PLAINTIFF

39

EXHIBIT 16

Page 373

29

1     --

2               MR. TOBEROFF:  YES.

3               THE COURT:  -- TO THE DEFENDANT?

4               MR. TOBEROFF:  YES.

5               THE COURT:  ALL RIGHT.  I'LL SEE WHAT THE

6     DEFENDANTS HAVE TO SAY ABOUT THAT IN A MOMENT.

7               ALL RIGHT.  GO AHEAD.

8               MR. TOBEROFF:  AS FAR AS THE SUBJECT MATTER IS

9     CONCERNED, I DON'T BELIEVE THAT ON A PRIVILEGE LOG BY

10    DISCLOSING THE SUBJECT MATTER YOU'RE DISCLOSING SOMETHING

11    THAT'S PRIVILEGED.  AND I DON'T -- AND WE'VE NEVER DONE IT

12    THAT WAY, WHERE WE PUT DOWN DOCUMENTS ARE ATTORNEY-CLIENT

13    PRIVILEGED AND THEN WE DISCLOSE THE PRIVILEGED SUBJECT MATTER

14    OF THE COMMUNICATION.

15              SO, I WOULD BEG TO DIFFER ON THAT POINT AND SEEK

16    YOUR HONOR'S GUIDANCE ON THAT.

17              THE COURT:  THE WHOLE PURPOSE OF A LOG IS TO --

18    WITHOUT DISCLOSING PRIVILEGED MATTERS GIVE THE OTHER SIDE

19    AND, IF NECESSARY, THE COURT, SUFFICIENT INFORMATION SO THAT

20    A DETERMINATION CAN BE MADE IF CHALLENGED AS TO WHETHER

21    SOMETHING TRULY IS PRIVILEGED.  SO, THERE HAS -- IT'S KIND

22    LIKE A GOLDILOCKS PRINCIPLE.  IT HAS TO BE JUST ENOUGH.

23              MR. TOBEROFF:  SO, FOR INSTANCE, HERE THE DOCUMENTS

24    -- FIRST OF ALL, THE DOCUMENTS THAT ARE CLAIMED ARE

25    PRIVILEGED ON A LOG ARE NOT SOME SORT OF STRANGE SPECIES.

40

EXHIBIT 16

Page 374

30

1    THEY'RE ESSENTIALLY, YOU KNOW, JOANNE AND LAURA SIEGEL TO

2    KEVIN MARKS, LETTER, ATTORNEY-CLIENT PRIVILEGE, PLAINTIFF'S

3    COUNSEL.  IT'S A LETTER FROM THE CLIENT TO HER ATTORNEY.

4          WOULD YOU SAY IN THAT INSTANCE TO UNDER- -- WE

5    WOULD NEED TO NOTE THE SUBJECT MATTER?  I --

6          THE COURT:  IT'S SORT OF HARD TO TELL IN ANY

7    PARTICULAR ITEM.  I MEAN, I CAN IMAGINE -- I CAN IMAGINE A

8    FEW COMMUNICATIONS BETWEEN ATTORNEY AND CLIENT THAT ARE NOT

9    PRIVILEGED.  BUT I WOULD SAY PRESUMPTIVELY MOST OF THEM ARE.

10         MR. TOBEROFF:  RIGHT.

11         THE COURT:  OKAY.  THE SPECIFICS OF THE LOG ARE NOT

12   BEFORE ME THIS MORNING.

13         MR. TOBEROFF:  OKAY.  SO, WE WOULD CERTAINLY BE

14   PREPARED -- WELL, WE'RE IN THE PROCESS OF PREPARING THOSE

15   OTHER LOGS.  AND I DON'T THINK THE LOGS ARE AN ISSUE.

16         THE COURT:  YOU FOLKS HAVE ENOUGH TO FIGHT OVER

17   WITHOUT FIGHTING OVER THINGS LIKE THAT.

18         MR. TOBEROFF:  I AGREE.

19         THE COURT:  ALL RIGHT.  ANYTHING ELSE, MR.

20   TOBEROFF?

21         MR. TOBEROFF:  NO.  THAT'S IT UNLESS YOU HAVE ANY

22   QUESTIONS FOR ME.

23         THE COURT:  NO, I DON'T HAVE ANYTHING FURTHER.

24         ALL RIGHT.  THANK YOU.

25         MR. TOBEROFF:  THANK YOU.

31

1          THE COURT:  MR. BERGMAN.

2          MR. BERGMAN:  JUST A FEW POINTS, YOUR HONOR.

3          THE COURT:  WELL, LET'S START WITH THE PRIVILEGE

4     LOG.  IF THEY GET TO YOU PRIVILEGE LOGS COVERING ALL PERIODS,

5     AND GET THOSE TO YOU BY THE END OF SEPTEMBER, IS THAT

6     SUFFICIENT FOR YOU?

7          MR. BERGMAN:  I WOULD, OF COURSE, PREFER THEM --

8          THE COURT:  YOU WANT THEM YESTERDAY, I KNOW.  BUT

9     --

10          MR. BERGMAN:  -- PREFER THEM EARLIER, BUT I DON'T

11     WANT TO INTERFERE IN ANY WAY WITH MR. TOBEROFF'S VACATION.

12     AND WE WILL ACCEPT THAT DATE.

13          THE COURT:  ALL RIGHT.  SO, MR. TOBEROFF, YOU'LL DO

14     THAT.  BY THE END OF SEPTEMBER, ALL PRIVILEGE LOGS DELIVERED

15     TO THE DEFENDANTS, INCLUDING ANY REVISIONS OF THE CURRENT

16     PRIVILEGE LOG WHICH AFTER YOUR REVIEW YOU CONCLUDE ARE

17     APPROPRIATE.  ALL RIGHT.

18          MR. BERGMAN:  AND --

19          THE COURT:  SO, THAT -- AND THE ONLY THING THAT

20     LEAVES ME TO DECIDE ON THE PRIVILEGE LOG ISSUE IS WHETHER THE

21     DESCRIPTION IS SUFFICIENT; IS THAT CORRECT?

22          MR. BERGMAN:  THAT'S CORRECT, YOUR HONOR.  AND IF

23     YOU'LL -- IF YOU'LL NOTICE, IT'S EXHIBIT M TO MR. TOBEROFF'S

24     DECLARATION.

25          THE COURT:  N?

32

1          MR. BERGMAN:  M, AS IN MICHAEL, YOUR HONOR.

2          THE COURT:  ALL RIGHT.

3          MR. BERGMAN:  AND IF YOU'LL NOTICE, UNDER THE

4    COLUMN "DOCUMENT DESCRIPTION," IT SIMPLY SAYS, "NOTES,

5    LETTER, DRAFT, NOTES, LETTER."  I MEAN, THERE IS NO WAY GIVEN

6    THOSE GENERIC DESCRIPTIONS THAT WE COULD ASSESS WHETHER THE

7    PARTICULAR DOCUMENT IS PRIVILEGED OR NOT.  THERE ARE LETTERS

8    THAT AREN'T PRIVILEGED.  THERE ARE NOTES THAT AREN'T

9    PRIVILEGED.

10          WHAT IF ONE OF THE ATTORNEYS TOOK NOTES OF

11    SOMETHING THAT MR. SCHULMAN SAID TO HIM AND WROTE DOWN

12    VERBATIM WHAT WAS SAID TO HIM.  THOSE NOTES WOULDN'T

13    BE PRIVILEGED.  WE, AT LEAST, HAVE THE --

14          THE COURT:  I'M NOT SO SURE ABOUT THAT.

15          MR. BERGMAN:  WELL, ALL HE WOULD BE DOING IN THAT

16    INSTANCE IS TRANSMITTING SOMETHING THAT HIS OPPONENT HAD TO

17    SAY WITHOUT INDICATING HIS OWN MENTAL IMPRESSIONS OR

18    OPINIONS.

19          BUT IN ANY EVENT, YOUR HONOR --

20          THE COURT:  OH, I THINK, MR. BERGMAN, THAT IF YOU

21    TOOK NOTES OF THE MEETING YOU HAD WITH MR. TOBEROFF, THAT YOU

22    WOULD NOT BE ACTING SIMPLY AS A STENOGRAPHER.

23          MR. BERGMAN:  THAT'S CORRECT, YOUR HONOR.  EXCEPT

24    IF MR. TOBEROFF HAD A PARTICULAR STATEMENT THAT HE WANTED TO

25    CONVEY TO ME, AND I WROTE DOWN THAT STATEMENT VERBATIM, I

33

1    DON'T THINK THAT WOULD BE PRIVILEGED.  BUT THAT'S -- IT'S A

2    NICE ACADEMIC QUESTION.

3             THE COURT:  THEN YOU BECOME A WITNESS AS TO WHAT

4    MR. TOBEROFF SAID?

5             MR. BERGMAN:  YES.

6             THE COURT:  I'M NOT SO SURE, MR. BERGMAN.

7             MR. BERGMAN:  BUT MY POINT IS, YOUR HONOR, THERE'S

8    JUST NO WAY TO TELL FROM LETTER, NOTES, DRAFT WHAT WE'RE

9    TALKING ABOUT.  SO, I BELIEVE THAT -- THAT IT IS INADEQUATE.

10   AND WITH ALL RESPECT, WE HAVE PLACED THAT ISSUE BEFORE YOUR

11   HONOR.

12            THE COURT:  SO, IF IT SAID NOTES OF CONVERSATIONS

13   WITH CLIENT, YOU THINK THAT WOULD BE SUFFICIENT TO IDENTIFY

14   IT AS WORK PRODUCT?

15            MR. BERGMAN:  I BELIEVE IT WOULD BE, YOUR HONOR.

16            THE COURT:  IF IT SAID NOTES FROM RESEARCH -- OR

17   RESEARCH NOTES?

18            MR. BERGMAN:  I BELIEVE THAT THAT WOULD BE

19   SUFFICIENT.

20            THE COURT:  AND IF IT SAID NOTES RECITING WHAT MR.

21   BERGMAN SAID TO ME?

22            MR. BERGMAN:  THAT WOULD BE SUFFICIENT, YOUR HONOR.

23            THE COURT:  ALL RIGHT.  GO AHEAD.

24            MR. BERGMAN:  AND IF I CAN ADDRESS THE OTHER POINT,

25   YOUR HONOR.

44

EXHIBIT 16

Page 378

34

```
1          WITH ALL DUE RESPECT TO MR. TOBEROFF, HE'S BEATING

2   AROUND THE BUSH.  THIS LETTER FROM MR. MARKS DATED SEPTEMBER

3   19 SAYS THAT THE FAMILY, QUOTE, HAS ACCEPTED, CLOSE QUOTE,

4   THE OCTOBER 16 OFFER.

5          THE COURT:  OKAY.  WAIT A SECOND.  YOU SAID,

6   "SEPTEMBER 19TH."  YOU MEAN OCTOBER 19TH.

7          MR. BERGMAN:  I'M SORRY, YOUR HONOR.  I DID MEAN

8   OCTOBER 19TH.

9          THE COURT:  OKAY.

10          MR. BERGMAN:  EXHIBIT A TO THE WEINBERG

11   DECLARATION.

12          THE COURT:  OKAY.

13          MR. BERGMAN:  AND IF YOU'LL NOTICE IT SAYS, "HAS

14   ACCEPTED."

15          THE COURT:  YES, I SEE THAT.

16          MR. BERGMAN:  MR. TOBEROFF'S PAPERS MERELY TALK

17   ABOUT, WELL, OF COURSE, OUR ATTORNEY WAS AUTHORIZED TO

18   NEGOTIATE.  AND, OF COURSE, HE HAD THE POWER TO NEGOTIATE ON

19   OUR BEHALF.  NO WHERE DOES HE SAY THAT HE HAD THE POWER TO

20   ACCEPT THE OFFER ON THEIR BEHALF.  THAT'S THE POINT THAT IS

21   BEING OBFUSCATED BY THIS DENIAL OF DISCOVERY.  WE ARE

22   ENTITLED TO KNOW WHETHER THAT LETTER WAS AUTHORIZED OR NOT.

23          AND, FRANKLY, IN THE SUPPLEMENTAL RESPONSE THAT MR.

24   TOBEROFF MADE TO NUMBER 69, HE JUST RAISES MORE AND MORE

25   QUESTIONS.  HE TALKS ABOUT MR. MARKS HAVING APPROVAL TO
```

45

EXHIBIT 16

35

1   COMMUNICATE PLAINTIFF'S CONDITIONAL INTERIM APPROVAL OF THE

2   BASIC DEAL POINTS.  WELL, THAT'S A LOT DIFFERENT FROM A

3   LETTER THAT'S SAYING THE FAMILY ACCEPTS.

4        AND THEN HE GOES FORWARD TO CITE CERTAIN

5   CONDITIONS, INCLUDING THE CONDITION THAT THERE BE NOTHING IN

6   THE FINAL SETTLEMENT AGREEMENT WHICH IS ADDITIONAL OR REVISED

7   FROM THE BASIC CONTRACT.  THAT'S QUITE A CONDITION.

8        THE COURT:  WELL, WOULDN'T THAT BE -- I MEAN, IF

9   YOU ADD IN THE WORD "MATERIAL," WOULDN'T THAT SIMPLY BE A

10  STATEMENT OF THE LAW, THAT IF THE -- IF THE ULTIMATE DOCUMENT

11  CONTAINS NEW MATERIALLY DIFFERENT TERMS THAT IT IS NOT THE

12  CONTRACT THE PARTIES HAD AGREED TO?

13        MR. BERGMAN:  BUT IT -- BUT I BELIEVE IT WOULD.

14  BUT THAT DOES NOT ENTITLE THE PARTY TO REPUDIATE THE CONTRACT

15  THAT HAD BEEN ENTERED INTO.  WHAT IT ENTITLES A PARTY TO DO

16  IS TO HAVE MR. MARKS AND MR. RAMER DO A REDRAFT, WHICH IS

17  PRECISELY WHAT THEY DID, AND SEND IT TO THE DEFENDANTS.

18        THE COURT:  WELL, NOW YOU'RE INTO AN ISSUE OF

19  CONTRACT LAW.  AND YOU MAY BE RIGHT ON THAT BUT YOU MAY NOT

20  BE.

21        MR. BERGMAN:  WELL, BUT WE -- WE HAVE TO START THE

22  LONGEST JOURNEY WITH A SINGLE STEP, YOUR HONOR.  AND THE

23  SINGLE STEP IN OUR INSTANCE AT THIS POINT IS TO FIND OUT

24  WHETHER IT WAS -- THAT LETTER WAS AUTHORIZED OR NOT.  AND WE

25  HAVE A DENIAL THAT IT WAS AUTHORIZED.

46

EXHIBIT 16

36

1           AND THERE ARE SEVERAL CASES -- NOT IN CALIFORNIA, I

2    MIGHT NOTE, YOUR HONOR.  BUT THERE ARE SEVERAL CASES THAT WE

3    CITED FROM OTHER JURISDICTIONS, INCLUDING THE NORTHERN

4    DISTRICT OF ILLINOIS, WHERE THE COURTS HAVE CLEARLY HELD THAT

5    THE QUESTION -- THAT WHEN YOU SAY THAT YOUR ATTORNEY WAS NOT

6    AUTHORIZED TO ENTER INTO A SETTLEMENT AGREEMENT, THAT PLACES

7    HIS AUTHORITY IN ISSUE AND YOU CANNOT DECLINE DISCOVERY WHICH

8    IS DESIGNED TO REACH THAT.

9           THE COURT:  OKAY.  NOW, JUST A MOMENT.  LET'S GO

10   BACK TO -- AS I UNDERSTOOD YOUR ORIGINAL ARGUMENT, YOU SAID

11   THAT THEY PLACED THE AUTHORITY IN ISSUE BY VIRTUE OF THEIR

12   RESPONSES TO THE REQUEST TO ADMIT.  THAT WAS ONE WAY.  AND

13   ALSO BY VIRTUE OF DISCLOSING THE SEPTEMBER 21, 2002 LETTER.

14   THAT'S THE OTHER WAY.

15          MR. BERGMAN:  NO, THE OTHER WAY, YOUR HONOR, IS BY

16   VIRTUE OF THEIR SUPPLEMENTAL RESPONSES TO --

17          THE COURT:  TO THE REQUEST TO ADMIT.

18          MR. BERGMAN:  -- TO THE REQUEST TO ADMIT.

19          THE COURT:  RIGHT.  RIGHT.  SO, THAT'S THE ONLY WAY

20   THEY PLACED IT IN ISSUE IS BY THEIR RESPONSES TO THE REQUEST

21   TO ADMIT?

22          MR. BERGMAN:  THEIR INITIAL DENIAL --

23          THE COURT:  RIGHT.

24          MR. BERGMAN:  -- AND THEN THEIR FURTHER RESPONSES

25   WHICH PRECEDED THE SPECIFIED CONDITIONS.

47

EXHIBIT 16

Page 381

37

1               THE COURT: OKAY. THAT'S THE ONLY WAY THESE

2 PLAINTIFFS, THEMSELVES, PLACED THE ISSUE -- PLACED THE MATTER

3 IN ISSUE.

4               MR. BERGMAN: THAT IS CORRECT, YOUR HONOR.

5               THE COURT: OKAY. ALL RIGHT.

6               NOW, THE OCTOBER 19TH, 2001 LETTER, EXHIBIT A, AND

7 THE SEPTEMBER 21, 2002 LETTER, EXHIBIT B TO MR. WEINBERGER'S

8 DECLARATION, EXHIBIT B, THE SEPTEMBER 21, 2002 LETTER REFERS

9 TO A DOCUMENT SENT ON FEBRUARY 4TH, 2002, RIGHT?

10               MR. BERGMAN: THAT'S THE DEFENDANTS' LONG-FORM

11 MEMORIAL OF THE SETTLEMENT AGREEMENT, YOUR HONOR.

12               THE COURT: ALL RIGHT. IT DOES NOT REFER TO THIS

13 OCTOBER 19TH, 2001 LETTER?

14               MR. BERGMAN: NO, IT DOES NOT.

15               THE COURT: ALL RIGHT. OKAY. GO AHEAD NOW.

16               SO -- WELL, WAIT. LET ME JUST PURSUE THAT FOR A

17 MOMENT.

18               IS IT YOUR VIEW THAT THE FEBRUARY 4TH, 2002

19 LONG-FORM LETTER IS IN ALL MATERIAL RESPECTS THE SAME AS THE

20 OCTOBER 19TH, 2001 LETTER?

21               MR. BERGMAN: YES, THAT IS OUR POSITION, YOUR

22 HONOR. AND OUR POSITION IS THAT THE OCTOBER 26TH LETTER IS

23 ALSO IN COMPLETE CONFORMITY WITH THE OCTOBER 19 LETTER.

24               THE COURT: ALL RIGHT. LET'S ASSUME -- LET'S TAKE

25 THAT AS A STARTING POINT.

38

1        IS THAT A -- IS THE LEGAL DETERMINATION ON WHETHER

2   THAT IS SO AN OBJECTIVE ONE OR ONE THAT PERTAINS TO THE

3   SUBJECTIVE VIEWS OF THE PARTIES INVOLVED?

4        MR. BERGMAN:  I BELIEVE IT'S OBJECTIVE, YOUR HONOR.

5   BUT THE POINT IS WE HAVE A DIFFERENT PERCEPTION OF WHAT THE

6   CONTRACTUAL THEORY IS.  MR. TOBEROFF IS TALKING ABOUT THE

7   OCTOBER 19 LETTER AS BEING AN OFFER.  THE OCTOBER 26TH LETTER

8   BEING A COUNTEROFFER.

9        I'M SAYING, THE DEFENDANTS ARE SAYING, THAT THE

10  OCTOBER 19 LETTER IS AN AGREEMENT.  IT IS AN ACCEPTANCE OF A

11  SPECIFIC OFFER.  IT RECITES ALL OF THE TERMS.  AND AT THE

12  CONCLUSION OF IT, MR. MARKS TELLS MR. SCHULMAN MANY THANKS

13  FOR HELP AND PATIENCE IN REACHING THIS MONUMENTAL ACCORD.  I

14  SAY THAT THAT'S A CONTRACT THEN AND THERE.

15       THE COURT:  AND YOU SAY THAT FURTHERMORE THEY WERE

16  SIMPLY DOCUMENTING IT -- DOTTING THE I'S AND CROSSING THE T'S

17  WHEN THEY SENT THE FEBRUARY 4TH REDRAFT, RIGHT?

18       MR. BERGMAN:  PRECISELY.

19       THE COURT:  SO, WHAT DOES THE SUBJECTIVE VIEW OF

20  ANYBODY HAVE TO DO WITH IT AT THAT POINT?  IF THAT'S TRUE,

21  IF, IN FACT, THE FEBRUARY 4TH LONG-FORM LETTER MERELY FILLED

22  OUT THE -- FILLED IT OUT, FLUSHED IT OUT, ISN'T THAT EITHER

23  TRUE OBJECTIVELY OR NOT TRUE OBJECTIVELY?

24       MR. BERGMAN:  WELL, I BELIEVE THAT THAT'S -- THAT'S

25  SO, YOUR HONOR.  BUT YOU HAVE TO BEAR IN MIND THAT WE'VE GOT

49

EXHIBIT 16

Page 383

39

1   TO START FROM A FOUNDATION.  WAS THERE A CONTRACT ON OCTOBER

2   19?

3           THEY'RE ARGUING THAT THIS FEBRUARY 2002 LONG FORM

4   PREPARED BY DEFENDANTS WAS SO BEYOND WHAT HAD BEEN AGREED TO

5   THAT IT ENTITLED THEM UNDER SOME UNKNOWN LEGAL THEORY TO

6   REPUDIATE THE UNDERLYING AGREEMENT.

7           THE COURT:  ALL RIGHT.  THAT'S --

8           MR. BERGMAN:  WHAT WE'RE --

9           THE COURT:  SO, THAT'S -- LET'S ASSUME THAT'S THEIR

10  ARGUMENT.

11          MR. BERGMAN:  OKAY.  WHAT WE'RE TRYING TO --

12          THE COURT:  THERE'S A MATERIAL CHANGE WHICH FREED

13  THEM FROM ANY OBLIGATION THEY HAD THERETOFORE UNDERTAKEN.

14          MR. BERGMAN:  OKAY.  ASSUMING THAT SUCH A THEORY

15  EXISTS, AND I KNOW OF NONE, WE STILL HAVE TO START OFF

16  WITH THE PREMISE, WAS THEIR A CONTRACT ON OCTOBER 19 OR

17  WASN'T THERE.  AND THAT DEPENDS UPON WHETHER MR. MARKS HAD

18  THE AUTHORITY TO WRITE IN HIS OCTOBER 19 LETTER THAT THE

19  FAMILY HAS, PAST TENSE, ACCEPTED DC COMICS' OFFER OF OCTOBER

20  16TH.

21          THE COURT:  ALL RIGHT.  BUT -- AND I UNDERSTAND

22  THAT POINT.

23          AND IF THAT'S THE CASE, THEN THE REFERENCE IN THE

24  SEPTEMBER 21, 2002 LETTER, NOT TO THE OCTOBER 19TH LETTER BUT

25  TO THE FEBRUARY 4TH LONG-FORM LETTER, HOW DOES THAT IN ANY

EXHIBIT 16                                          50

40

1    WAY WAIVE ANY PRIVILEGE THAT WOULD BE INVOLVED?

2            MR. BERGMAN:  THAT DOESN'T, YOUR HONOR.

3            THE COURT:  ALL RIGHT.

4            MR. BERGMAN:  BUT THE REFERENCE --

5            THE COURT:  -- GET BACK TO THE REQUEST FOR

6    ADMISSIONS.

7            MR. BERGMAN:  THE REFERENCE -- WE'RE TALKING REALLY

8    ABOUT TWO SEPARATE ISSUES.  ON THE ONE HAND, THERE'S THE

9    AUTHORITY OF MR. MARKS.  ON THE OTHER HAND, WE HAVE THE WHOLE

10   QUESTION OF WHETHER THERE'S BEEN A WAIVER AS A RESULT OF THE

11   SEPTEMBER 21 LETTER OF THE CIRCUMSTANCES CONCERNING THE GANG

12   TYRE TERMINATION AND --

13           THE COURT:  OKAY.  ANYTHING REFERRED TO IN THAT

14   LETTER.

15           MR. BERGMAN:  -- AND IN PARTICULAR --

16           THE COURT:  RIGHT.

17           MR. BERGMAN:  -- THAT JUNE -- THAT 2000- -- THAT

18   REDRAFT THAT GANG TYRE DID.

19           AND THE IMPORTANCE OF THAT IS THAT GANG TYRE, THEY

20   WERE THE NEGOTIATORS OF THE AGREEMENT.  THEY KNOW WHAT THEY

21   DISCUSSED, AND WHAT THEY ACCEPTED, AND WHAT THEY AGREED TO ON

22   OCTOBER 19TH.  IT'S THEIR MENTAL IMPRESSIONS, AS REFLECTED IN

23   THEIR REDRAFT OF THE 2002 LONG FORM PREPARED BY DEFENDANTS,

24   THAT HAS CONSIDERABLE BEARING UPON THE PURPORTED ARGUMENT OF

25   THE PLAINTIFFS THAT THAT LONG FORM PREPARED BY DEFENDANTS WAS

EXHIBIT 16

51

41

1    SO -- SO BEYOND THE AGREEMENT, THAT THEY HAD A RIGHT TO

2    REPUDIATE.

3            THE COURT:  NOW, YOU OBVIOUSLY HAVE THE LONG-FORM

4    AGREEMENT.  YOU PREPARED IT, RIGHT?

5            MR. BERGMAN:  INDEED, YOUR HONOR.

6            THE COURT:  NOT YOU, YOURSELF, BUT SOMEBODY --

7            MR. BERGMAN:  YES.

8            THE COURT:  -- MR. SCHULMAN, SOMEBODY ON YOUR

9    BEHALF.

10           SO, IF I UNDERSTAND YOUR ARGUMENT, YOU THINK

11   THE LONG-FORM AGREEMENT IS CONSISTENT WITH THE OCTOBER LETTER

12   --

13           MR. BERGMAN:  RIGHT.

14           THE COURT:  -- THE OCTOBER 19TH LETTER.  AND YOU

15   THINK THAT THE GANG TYRE ATTORNEYS MAY HAVE THOUGHT SO AS

16   WELL?

17           MR. BERGMAN:  CORRECT, YOUR HONOR.

18           THE COURT:  HOW WOULD WHAT THEY THOUGHT BE RELEVANT

19   IF THIS IS AN OBJECTIVE DETERMINATION AS TO WHETHER THE

20   FEBRUARY 4TH LETTER ADDED MATERIAL NEW TERMS OR NOT?

21           MR. BERGMAN:  WELL, USING THE TERM "OBJECTIVE

22   DETERMINATION" IS SOMEWHAT MISLEADING, YOUR HONOR.  THERE ARE

23   ALWAYS THE QUESTIONS OF WHAT DID THE PARTIES INTEND BY THE

24   WORDS THAT THEY USED.  AND THAT IF WE HAVE THE GANG TYRE

25   UNDERSTANDING AND WE HAVE THE DEFENDANTS' UNDERSTANDING, THAT

52

EXHIBIT 16

42

1    MAY SHED LIGHT ON THAT SUBJECT.  IT GOES --

2          THE COURT:  ALL RIGHT.

3          MR. BERGMAN:  -- BEYOND A SIMPLE COMPARISON OF THE

4    AGREEMENT AND THEN THE LONG -- THE FIRST LONG FORM AND THE

5    REDRAFT.  BUT CERTAINLY THE IMPRESSION OF THE GANG TYRE

6    ATTORNEYS AS TO HOW FAR AFIELD, IF AT ALL, THE DEFENDANTS'

7    LONG FORM WENT, I BELIEVE IT IS HIGHLY RELEVANT, CERTAINLY

8    DISCOVERABLE, YOUR HONOR.  WHETHER IT'S ADMISSIBLE AT TRIAL

9    OR NOT MAY BE ANOTHER QUESTION.

10          THE COURT:  IT SEEMS LIKE IT WOULD ALMOST MAKE

11    THE ATTORNEYS EXPERT WITNESSES AS TO WHAT A MATERIAL CHANGE

12    WAS.

13          MR. BERGMAN:  WELL, YOUR HONOR, IN MANY OF THESE

14    CASES THE ATTORNEYS ARE CALLED UPON TO TESTIFY AS TO WHAT WAS

15    DISCUSSED AND WHAT WAS THEIR UNDERSTANDING.

16          THE COURT:  ALL RIGHT.

17          MR. BERGMAN:  AND I'VE ALREADY TOUCHED UPON THE

18    PRIVILEGE LOG, YOUR HONOR.  I DO BELIEVE THAT IF WE'RE GOING

19    TO GET TO THE POINT OF BEING ABLE TO TEST ANY OF THESE

20    PRIVILEGES WE NEED MORE INFORMATION.

21          THANK YOU, YOUR HONOR.  YOU'VE BEEN VERY PATIENT.

22          MR. TOBEROFF:  THANK YOU, YOUR HONOR.

23          THE COURT:  OKAY.  THANK YOU VERY MUCH.

24          I'M GOING TO TAKE THIS ONE UNDER SUBMISSION.  I

25    HOPE TO GET A RESPONSE OUT OR A RULING OUT SHORTLY.

53

EXHIBIT 16

43

1          MR. BERGMAN:  THANK YOU, SIR.

2          THE COURT:  THANK YOU VERY MUCH.

3          (PROCEEDINGS COMPLETED.)

EXHIBIT 16

54

44

1                    C E R T I F I C A T E

2

3          I CERTIFY THAT THE FOREGOING IS A CORRECT

4    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

5    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8    _____          9/15/06
                                        _____
9    FEDERALLY CERTIFIED TRANSCRIBER    DATED
     DOROTHY BABYKIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

55

EXHIBIT 16
Page 389

EXHIBIT 17



1  WEISSMANN WOLFF BERGMAN
       COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone:  310-858-7888
   Fax:            310-550-7191
5  Email:         mbergman@wwllp.com

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone:  212-813-5900
9  Fax:            212-813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, NY 10516
12 Telephone: 845-265-2820
   Fax:            845-265-2819
13
   Attorneys for Defendants and Counterclaimant
14
15                UNITED STATES DISTRICT COURT
16     CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

17 JOANNE SIEGEL and LAURA           )  Case No. SA CV 04-8400 SGL (RZx)
   SIEGEL LARSON,                    )  Case No. SA CV 04-8776 SGL (RZx)
18                                   )
19          Plaintiffs,              )  Hon. Stephen G. Larson, U.S.D.J.
                                     )  Hon. Ralph Zarefsky, U.S.M.J.
20     vs.                           )
                                     )  **DECLARATION OF MICHAEL**
21 TIME WARNER INC., WARNER          )  **BERGMAN IN SUPPORT OF**
   COMMUNICATIONS INC. WARNER        )  **DEFENDANTS' MOTION TO**
22 BROS. ENTERTAINMENT INC.,         )  **COMPLIANCE WITH THE**
   WARNER BROS. TELEVISION           )  **COURT'S 4/30/07 ORDER AND**
23 PRODUCTION INC., DC COMICS,       )  **MOTION FOR SANCTIONS**
   and DOES 1-10,                    )
24                                   )
25          Defendants.             )  Time:        10:00 a.m.
                                     )  Date:        October 15, 2007
26                                   )  Place:       Courtroom 540
                                     )  Mag. Judge Ralph Zarefsky
27                                   )  Discovery Cutoff: Nov. 17, 2006
                                     )
28 AND RELATED COUNTERCLAIMS.        )
                                     )
                        EXHIBIT 17



I, Michael Bergman, declare under penalty of perjury:

1.     I am a member of Weissmann Wolff Bergman Coleman Grodin & Evall LLP, counsel for Defendants. This declaration, based upon my own personal knowledge and our office's records, is submitted in support of Defendants' motion to compel Plaintiffs and Mr. Toberoff to comply with the Court's April 30, 2007 Order and motion for sanctions.

2.     Attached as Exhibit A is a true and correct copy of the transcript from the April 30, 2007 Hearing in this matter.

3.     Attached as Exhibit B is a true and correct copy of my letter to John Quinn dated May 16, 2007.

4.     Attached as Exhibit C is a true and correct copy of a letter from David Eisen to Marc Toberoff and me dated May 18, 2007.

5.     Attached as Exhibit D is a true and correct copy of a letter from Marc Toberoff to David Eisen dated May 21, 2007, along with the Declaration of Marc Toberoff Pursuant to Magistrate Zarefsky's April 30, 2007 Order that was attached to the letter.

6.     Attached as Exhibit E is a true and correct copy of my letter to David Eisen dated May 22, 2007.

7.     Attached as Exhibit F is a true and correct copy of a letter from Marc Toberoff to David Eisen dated May 23, 2007.

8.     Attached as Exhibit G is a true and correct copy of a letter from David Eisen to Marc Toberoff and me dated May 24, 2007.

9.     Attached as Exhibit H is a true and correct copy of my letter to Marc Toberoff dated June 25, 2007.

10.     I spoke with Plaintiffs' counsel Marc Toberoff on July 5, 2007 to discuss the dispute addressed in this motion, but we were unable to reach a satisfactory resolution. Mr. Toberoff sent me a letter following up on that

EXHIBIT 17    1
Page 391

1   conversation later on that day.  Attached as Exhibit I is a true and correct copy of

2   that letter, dated July 5, 2007.

3       11.     My partner Anjani Mandavia spoke with Mr. Toberoff on July 31,

4   2007 in a further attempt to resolve the dispute addressed in this motion, but they

5   were unable to reach a satisfactory resolution.

6       12.     Attached as Exhibit J is a true and correct copy of the Declaration of

7   Marc Toberoff In Opposition To Defendants' Motion To Compel Production Of

8   Whistle Blower Documents.

9       13.     Attached as Exhibit K is a true and correct copy of the Declaration of

10   Nicholas C. Williamson, Esq. In Opposition To Defendants' Motion To Compel

11   Documents Pursuant To Subpoena Duces Tecum.

12       14.     Attached as Exhibit L is a true and correct copy of an agreement

13   between IP Worldwide, LLC and Joanne Siegel and Laura Siegel Larson, dated as

14   of October 3, 2002.

15       15.     Attached as Exhibit M is a true and correct copy of an agreement

16   between IP Worldwide, LLC and Joanne Siegel and Laura Siegel Larson, dated

17   January 21, 2003.

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

EXHIBIT 17

2

16.   Defendants have incurred at least $7440 in attorneys fees in connection with the preparation of this motion, as follows: at least 18 hours of time expended by my associate, Adam Hagen, in researching and drafting the motion; at least 5 hours expended by Ms. Mandavia in reviewing and revising the motion; and at least 1 hour spent by me in writing to Mr. Toberoff and in attempting to reach an informal resolution of the matter.  Our firms' rates for Defendants in this matter are $260 an hour for Mr. Hagen; $445 an hour for Ms. Mandavia; and $535 an hour for me.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 17th day of September, 2007 at Beverly Hills, California.

Michael Bergman

EXHIBIT 17

3

 

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF·
NICHOLAS C. WILLIAMSON
· ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

May 21, 2007

<u>Via Facsimile (213) 243-4182 and US Mail</u>

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street- 44th Floor
Los Angeles, CA 90017

<u>Re:  Superman/Superboy Litigations, Case Nos. 04-CV-8400, 04-CV-8776 SGL (RZx)</u>

Dear David:

Pursuant to your May 18, 2007 letter it is my understanding that you have taken over the responsibility and custody from Jack Quinn of the documents stolen from my legal files, including many privileged attorney-client communications, retained by your firm, at the request of Warner Bros. (the "Documents").

I am also in receipt of Michael Bergman's letter to Jack Quinn dated May 18, 2007 to which your May 18, 2007 letter responds.  I do not believe that Mr. Bergman correctly reflects Magistrate Zarefsky's order ("Order") in the context of defendants' motion to compel the production of the non-privileged Documents or the hearing on April 30, 2007.

I do not believe, as stated in Mr. Bergman's cleverly worded letter, that Magistrate Zarefsky ruled or intended that plaintiffs' "<u>waived</u> any privilege they might have had with respect to any otherwise privileged Escrow Documents that has not been previously been identified on **Plaintiffs' privilege logs**" or that "you turn over to Defendants every Escrow Document that either was not previously produced by Plaintiffs or not identified on **Plaintiffs' privilege logs**" as stated in Mr. Bergman's letter.

Firstly, it is clear from the motion papers and the hearing that Documents listed on the privilege logs of non-party witnesses (*e.g.*, Jean Peavy and Warren Peary (the "Shusters"), Don Bulson, Esq. (attorney for Michael Siegel), Kevin Marks, Esq., etc.) and identified by me as such in a declaration would remain privileged and not be released. There would be no justification to release such documents.

Secondly, as Mr. Bergman well knows, the parties have a standing agreement that communications between the parties and their counsel after the commencement of these

EXHIBIT 17

EXHIBIT D    47

**LAW OFFICES OF**  **RC TOBEROFF**

David S. Eisen, Esq.
May 21, 2007
Page 2

actions ("Privileged Litigation Communications") need not be listed on a privilege log, and accordingly no plaintiff or defendant has listed such Privileged Litigation Communications on a privilege log. As Plaintiffs were under no obligation to list such communications in a privilege log, it was surely not Magistrate Zarefsky's intention that such clearly privileged documents be released by your firm to defendants, merely as a consequence of the theft from my legal files.

Magistrate Zarefsky's comment regarding waiver of privilege for failure to list a Document on a privilege would clearly not meant to apply to the couple of Privileged Litigation Communications that Plaintiffs were never obligated to list on a privilege log in the first place pursuant to the parties' mutual agreement. Moreover, the defendants never made such an unreasonable request in their motion.

Mr. Bergman's overreaching construction of Magistrate Zarefsky's Order in an attempt to get his hands on plainly privileged attorney-client communications is not well taken.

Enclosed please find my declaration dated May 21, 2007 ("Declaration") accounting for each of the Bates stamped Documents, pursuant Magistrate Zarefsky's Order.

Mr. Bergman's letter stated that he would provide you with a copy of the transcript of the April 30, 2007 hearing. I hereby request that no Document be released by you until you have had an opportunity to review the transcript in the context of the motion papers and the relief which you requested from Mr. Bergman in your May 18, 2007 letter.

Any Documents not identified in my Declaration as listed in a privilege log or as previously produced to Defendants are to be produced to Defendants, with the exception of the clearly Privileged Litigation Communications identified in my declaration.

Under no circumstances should you release to defendants (i) the Privileged Litigation Communications which consist of just two e-mails, four non-substantive fax confirmation page and duplicates thereof (Bates nos. Q 0010, 0278, 0285-289, 0361 (duplicate), 0550 (duplicate), 0557-561 (duplicate), 0618 (duplicate), 0827 (duplicate), 0836-838 (duplicate)) and/or (ii) Documents identified in my declaration as listed in plaintiffs' and/or third party privilege logs.

To the extent you release any of the Documents to the defendants, we request that they be specified by Bates numbers in a cover letter and that plaintiffs be sent a copy of such documents and cover letter. Pursuant to Magistrate Zarefsky's Order please return all originals and copies of the Documents to me after your review of my declaration and completion of this process.

EXHIBIT 17

Page 395

48

LAW OFFICES OF MARC TOBEROFF

David S. Eisen, Esq.
May 21, 2007
Page 3


Thank-you for your professional attention to this matter.  If you have any questions, please do not hesitate to call.

Very truly yours,

Marc Toberoff

cc:  Micheal Bergman (via facsimile and U.S. Mail)
     Patrick Perkins, Esq. (via facsimile)
     James Weinberger, Esq. (via facsimile)

EXHIBIT 17

Page 396

49



**WWBCGE**

**VIA FAX (w/o enclosures)**
**VIA MESSENGER**

May 22, 2007

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017

**Michael Bergman**
a professional corporation
mbergman@wwllp.com

Our File No. 2231.811

Re:   *Joanne Siegel and Laura Siegel Larson v. Time*
      *Warner, Inc., et al.*
      USDC Central District of CA, Case No. 04-08776 SGL (RZx)
      *Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
      USDC Central District of CA, Case No. 04-08400 SGL (RZx)

Dear Mr. Eisen:

We have received a copy of Marc Toberoff's sworn declaration, which he served on you yesterday pursuant to Judge Zarefsky's April 30, 2007 Order, along with an accompanying cover letter setting forth Mr. Toberoff's interpretation of the Order.

While Mr. Toberoff is correct that Escrow Documents that were originally listed on the privilege logs of non-party witnesses should not be released, he is incorrect in his assertion that unlisted post-litigation documents should not be released. Mr. Toberoff represented to Judge Zarefsky that each of the Escrow Documents had been produced or had been listed on a privilege log. (*See* Transcript, enclosed herewith, at 10:17 - 11:25). Notably, he did not inform Judge Zarefsky – as he is now asserting – that there were post-litigation documents that he had neither identified on a privilege log nor produced. Based on what Mr. Toberoff expressly represented during the hearing, Judge Zarefsky entered his Order, which is unequivocal and does not make any exception for post-litigation documents: "the escrow holder, Mr. Bergman [sic], is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs. The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log." (*See* Transcript at 19:8-20:18). If Mr. Toberoff disagreed with the Order, he could have filed objections within 10 days, as provided by Local Rule 72-2. He chose not to do so, however, and because those documents were neither identified on a privilege log nor produced, they must be released to Defendants pursuant to Judge Zarefsky's Order.

To assist you in your review, we have compiled the documents Mr. Toberoff has identified in his declaration as having previously been produced, which we have

**WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP**
9665 WILSHIRE BLVD, NINTH FLOOR, BEVERLY HILLS, CA 90212  T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

331458_1.DOC                    EXHIBIT 17              EXHIBIT  E                    64



David S. Eisen, Esq.
May 22, 2007
Page 2

enclosed so that you can compare them to the Escrow Documents in your file. We have also enclosed the privilege logs he cites to so that you can compare the privilege entries to the Escrow Documents in your file. It is Defendants' position that any document that does not match up exactly to an identified entry on the privilege logs should not be returned to Mr. Toberoff, but should instead be produced to Defendants. We note in particular that one of the Escrow Documents that Wayne Smith placed in the "non-privileged" pile during his brief review of the documents – correspondence concerning the interest in Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother, Michael Siegel – has never been produced in this litigation, and does not appear to have been listed in any privilege log. (See Declaration of Wayne M. Smith in Support of Defendants' Motion to Compel Production of Whistle-blower Documents, ¶ 9).[1] Nor does it appear to have been identified in the declaration Mr. Toberoff sent to you. We are accordingly concerned that the items listed in Mr. Toberoff's declaration as privileged precisely match the identified Escrow Documents in your possession.

Moreover, Mr. Toberoff has identified certain documents as appearing on the privilege log of Don Bulson, who is counsel for Michael Siegel (Q 40, 57-58, 75-76, 352, 400-401, 489-90, 672-673, 761-762). From the privilege log, these documents appear to be correspondence between Mr. Toberoff and Mr. Bulson. As such, on Mr. Bulson's log, the basis for withholding the documents is the common interest exception to the privilege waiver. (The propriety of Mr. Bulson's assertion of the common interest exception is the subject of a pending motion to compel in the Northern District of Ohio.) However, it must be noted that Mr. Toberoff has not identified any corresponding copies of these documents on the Siegel privilege logs, which undermines any claim of common interest. With respect to these documents, we believe that they should have been identified on both a Siegel log *and* the Bulson log to qualify for the common interest exception. Accordingly, these documents should be turned over as well.

In sum, Judge Zarefsky's Order requires that you turn over every Escrow Document that was not previously produced by Plaintiffs or was not previously identified on Plaintiffs' privilege logs, which includes the "un-dated defamatory cover letter" and any post-litigation communications. If you are not prepared to turn these documents over to Defendants based upon your review of the Transcript, then we request that you retain those documents to allow Defendants the opportunity to file a motion for contempt. Again, we thank you for your assistance in this matter.

---

[1] Pursuant to your request in your May 18, 2007 letter, the parties' briefs and supporting papers are enclosed herewith.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

EXHIBIT 17
Page 398



David S. Eisen, Esq.
May 22, 2007
Page 3


Sincerely,

Michael Bergman

MB:jra
Enclosure
cc:    Marc Toberoff, Esq. (w/o enclosures)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
EXHIBIT 17

66

331458_1.DOC

WEISSMANN WOLFF ETA  Fax:3105507191

## ** Transmit Confirmation Report **

P.1                                        May 22 2007 05:12pm
Line Number:1

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 8680#00001#0001#121324341 | Normal | 22,05:12pm | 0'00" | 0 | D.0.7 | |
| ↑ No response. | | Check condition of remote fax. | | | | |

WWBCGE

### FACSIMILE TRANSMISSION

**Date:**      May 22, 2007
**From:**      Michael Bergman
**E-mail:**    mbergman@wwllp.com
**Pages:**     _4_ (including cover)
**Subject:**   *Siegel v. Time Warner*

**Recipient(s):**          **Fax Number(s):**        **Phone Number(s):**
David S. Eisen, Esq.       (213) 243-4192 — Voicemail
cc: Marc Toberoff, Esq.    (310) 246-3101

**Message:**

Please see the attached.

**WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP**
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T: 310.858.7688 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

FEDERAL TAX ADVICE DISCLAIMER
We are required by U.S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

ATTORNEY-CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT
This fax is intended solely for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, disclosure, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original fax to us at the above address. Thank you.

USER ID: 8680                                      CLIENT MATTER: 2231.811

EXHIBIT 17                                         67

WEISSMANN WOLFF ETFax:3105507191

## ✱✱ Transmit Confirmation Report ✱✱

P.1                                                         May 22 2007 04:58pm
Line Number:2

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 8680#00001#0001#131024631 | Normal | 22,04:57pm | 0'41" | 4 | # O K | |

### FACSIMILE TRANSMISSION

**Date:**       May 22, 2007
**From:**       Michael Bergman
**E-mail:**     mbergman@wwllp.com
**Pages:**      4 (Including cover)
**Subject:**    *Siegel v. Time Warner*

**Recipient(s):**          **Fax Number(s):**          **Phone Number(s):**
David S. Elsen, Esq.       (213) 243-4182
cc: Marc Toberoff, Esq.    (310) 246-3101

**Message:**

Please see the attached.

**WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP**
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

FEDERAL TAX ADVICE DISCLAIMER
We are required by U.S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

ATTORNEY-CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT
This fax is intended solely for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, disclosure, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original fax to us at the above address. Thank you.

USER ID: 8680                      EXHIBIT 17                      CLIENT MATTER: 2231.811

68

WEISSMANN WOLFF ETFax:3105507191

## ** Transmit Confirmation Report **

P.1                                           May 23 2007 08:27am
Line Number:1

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 6865#02231#0811#121324341 | Normal | 23,08:26am | 1'30" | 4 | * O K | |

WWBCGE

## FACSIMILE TRANSMISSION

Date:       May 23, 2007
From:       Michael Bergman
E-mail:     mbergman@wwllp.com
Pages:      4 (including cover)
Subject:    Siegel v. Time Warner

Recipient(s):           Fax Number(s):           Phone Number(s):
David S. Eisen, Esq.    (213) 243-4799
cc: Marc Toberoff, Esq. (310) 246-3101

Re-faxing
5/23/07

Message:

Please see the attached.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM
LAWYERS

FEDERAL TAX ADVICE DISCLAIMER
We are required by U.S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this
message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

ATTORNEY-CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT
This fax is intended solely for the use of the individual or entity to which it is addressed, and may contain information that is privileged,
confidential, or exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution,
disclosure, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us
immediately by telephone and return the original fax to us at the above address. Thank you.

USER ID: 8550                                                        CLIENT MATTER: 2231.811

EXHIBIT 17

69


# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON

* ALSO ADMITTED IN NEW YORK

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Michael Bergman, Esq., James D. Weinberger, Esq., Patrick T. Perkins, Esq. | FAX: 310-550-7191, 212-813-5901, 845-265-2819 |
|---|---|
| FROM: Marc Toberoff | PAGES ( Including cover ): 4 |
| DATE : 5/23/07 | RE: Superman/Superboy Litigations (Case Nos. 04-CV-8400, 04-CV-8776 SGL (RZx)) |

**COMMENTS:**

See attached.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

EXHIBIT 17
Page 403

EXHIBIT F    70

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
*ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

May 23, 2007

Via Facsimile (213) 243-4182 and US Mail

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street- 44th Floor
Los Angeles, CA 90017

Re: Superman/Superboy Litigations, Case Nos. 04-CV-8400, 04-CV-8776 SGL (RZx)

Dear David:

We write in response to Michael Bergman's May 22, 2007 letter to you regarding my May 21, 2007 declaration. Plaintiffs disagree with defendants' inaccurate and self serving interpretation and application of Magistrate Zarefsky's April 30, 2007 ruling ("Order"). In their motion regarding the stolen documents ("Motion"), which I understand has been provided to you, defendants referred to your predecessor, John Quinn as a "neutral" to buttress the propriety of their handling of the documents. As such, Magistrate Zarefsky referred to the documents as "escrow documents."

We therefore respectfully request that you not release to defendants any escrow documents which remain the subject of disagreement between the parties. Mr. Bergman states in his letter that he is prepared to bring a motion regarding same before Magistrate Zarefsky. Defendants must not receive through this "escrow" procedure what they could not otherwise obtain.

Defendants insist on clinging to the absurd position that there has been a waiver of the two plainly privileged communications between me and Plaintiffs that occurred after the commencement of this litigation because such were not listed on a privilege log even though defendants do not (and cannot) deny that the parties have a standing agreement that neither side must list such communications on a privilege log. Defendants erroneously state that this was never brought to the Court's attention. However, in paragraph 22 of my March 23, 2007 declaration in opposition to defendants' motion to compel, which has been provided to you, I specifically mentioned the two e-mails and explained to the court that these post-litigation communications were not listed on a privilege log because "the parties to this action have agree not to list post-complaint attorney-client communications on their respective privilege logs."

EXHIBIT 17

Page 404

71

 

## LAW OFFICES OF MARC TOBEROFF

David S. Eisen, Esq.
May 23, 2007
Page 2

No fair reading of the Order, as well as common sense, could give defendants access to privileged communications they would not otherwise be entitled to, simply because such documents were stolen from my legal files, and, as Mr. Bergman well knows, this was not Magistrate Zarefsky's intention.

While admitting that "'escrow documents' that were originally listed on the privilege logs of non-party witnesses should not be released," Mr. Bergman, one paragraph later, claims that two documents listed on non-party attorney Don Bulson's privilege log must be turned over. Mr. Bergman makes a specific legal argument to you regarding the joint interest privilege (as if you were the Court) that he could have made months ago in the form of a properly noticed motion, but never did. The claim was neither made in the subject motion (nor ruled on), nor in their pending motion in Ohio regarding Mr. Bulson's privilege log. This is a perfect example of Mr. Bergman's overreaching and abuse of Magistrate Zaresky's ruling and, in fact, your role as holder of the escrow documents.

Mr. Bergman also cites no authority for his dubious position that the joint interest privilege asserted by Mr. Bulson is waived because plaintiffs did not have a corresponding listing on their privilege logs. There was certainly no requirement in the Order that privileged documents be cross-referenced on multiple privilege logs in order to sustain the privilege. Accordingly, as these documents are plainly listed on a privilege log, they are not to be turned over to defendants.

Defendants also claim that the "undated defamatory letter" must be released because it has not been listed on a privilege log. This letter was not the subject of defendants' motion to compel and neither party attached it. The letter was not discussed during the April 30, 2007 hearing nor is it discussed in the Order. However, in paragraph 27 of my declaration, I state that the letter contains information protected by the attorney-client privilege and the work product doctrine. The letter discloses the substance of documents listed on the privilege logs of plaintiffs and third parties which remain protected under Magistrate Zarefsky's Order.

As this letter was not authorized by plaintiffs or their counsel, they can hardly be held to have consented to the release of this privileged information or to have waived the privilege. Nor would they have listed this illicit third party communication on their privilege log. Magistrate Zarefsky's ruling obviously did not consider this letter. As it was not a focus of defendants' motion, nor discussed at the hearing, it fell through the cracks. However, one would be hard pressed to conclude that Magistrate Zarefsky found that the privileged information contained in the letter has been waived when the privilege is maintained for the documents and information to which it refers.

EXHIBIT 17

Page 405

72

May-23-07   03:28pm   From-                                                 T-477   P.004/004   F-999

## LAW OFFICES OF MARC TOBEROFF

David S. Eisen, Esq.
May 23, 2007
Page 3

Mr. Bergman also improperly asked that you read through the privileged documents which plaintiffs have keyed by bates numbers to their privilege log, pursuant to the Order, to hunt for particular documents on defendants' behalf to assess their privileged status and the sufficiency of plaintiffs' privilege logs. The Order does not provide for this, nor is it appropriate to your function, as represented by defendants and stated by the Court, as the holder in escrow. The Order directed plaintiffs to account for all the escrow documents by bates numbers and to key privileged documents to the numbered entries on the privilege logs which plaintiffs have done. By prior motion to compel, defendants challenged the sufficiency of plaintiffs' privilege logs, and Magistrate Zarefsky held that plaintiffs' privilege logs are entirely proper and contain sufficient information.

Lastly, although Mr. Bergman copied us on his last two letters, we respectfully request that plaintiffs be sent all communications by defendants regarding the "escrow documents."

Please do not hesitate to contact me with any questions or comments concerning the above.

Very truly yours,

Marc Toberoff

cc: Micheal Bergman (via facsimile)
    Patrick Perkins, Esq. (via facsimile)
    James Weinberger, Esq. (via facsimile)

EXHIBIT 17

Page 406

73

# FACSIMILE TRANSMISSION SHEET

# ARNOLD & PORTER

Forty-Fourth Floor
777 South Figueroa Street
Los Angeles, California 90017-5844

Telephone Number ..............................(213) 243-4000
Facsimile Number ................................(213) 243-4199

# PLEASE DELIVER ASAP

| RECIPIENT | FAX NUMBER | TELEPHONE NUMBER |
|---|---|---|
| **MICHAEL BERGMAN**<br>Weissmann Wolff Bergman | 310.550.7191 | 310.858.7888 |
| **MARC TOBEROFF**<br>Law Offices of | 310.246.3101 | 310.246.3333 |

| SENDER | ROOM NUMBER | OFFICE TELEPHONE NUMBER |
|---|---|---|
| **DAVID S. EISEN** | | 213.243.4182 |

| TIMEKEEPER NUMBER | CLIENT\MATTER NUMBER | NUMBER OF PAGE(S) |
|---|---|---|
| 4507 | 55000.001 | We are transmitting **3** page(s)<br>(Including this cover sheet) |

| TRANSMISSION DEADLINE | ALTERNATE TELEPHONE NUMBER |
|---|---|
| This document must be transmitted no later than:<br>ASAP on **May 24, 2007** | For transmission problems please call: 213-243-4076 |

## MESSAGE

EXHIBIT 17

Page 407

EXHIBIT __G__    74

# ARNOLD & PORTER LLP

David S. Eisen
David_Eisen@aporter.com

213.243.4182
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

May 24, 2007

*Via Facsimile*

Michael Bergman, Esq.
Weissmann Wolff Bergman Coleman
    Grodin & Evall, LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212

Marc Toberoff, Esq.
Law Offices of Marc Toberoff
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

          Re:    <u>Siegel & Larson v. Time Warner, Inc.</u>

Gentlemen:

      I have reviewed the relevant pleadings, the transcript of the April 30, 2007 hearing and the resulting Order, and Mr. Toberoff's May 21, 2007 declaration. I have also reviewed correspondence from, and spoken with, both of you.

      In the transcript, Magistrate Judge Zarefsky does seem to announce a simple protocol for the so-called Escrow Documents: documents which appear on privilege logs are protected and should not be turned over to defendants, and documents not on privilege logs are not protected and should be produced to defendants. Unfortunately, there are some documents, and you have each made certain arguments, which do not seem to be directly encompassed by the transcript or Magistrate Judge Zarefsky's Order.

      (1) Mr. Toberoff refers to two post-litigation, attorney-client e-mails (Q10 and Q278)[1] and related fax transmittal documents (Q285-289), which he says were subject to a "standing agreement" that such communications need not be listed on privilege logs. This issue was not referred to at the hearing by Magistrate Judge Zarefsky or counsel, and Mr. Toberoff insists they not be produced.

---

[1] Each of the Bates references to Escrow Documents herein is to the first-numbered copy of such document. In each instance, there are multiple copies of the same document.

05/24/2007 14:57 FAX  213 243 4xxx          ARNOLD & PORTER, LLP                    ☒003/003

# ARNOLD & PORTER LLP

Michael Bergman, Esq.
Marc Toberoff, Esq.
May 24, 2007
Page 2

   (2) Mr. Toberoff also refers to an "undated defamatory cover letter" (Q1-7) which he says was not in his files and which he says contains privileged information. This document was also not discussed at the hearing, and Mr. Toberoff says it should not be produced.

   (3) Mr. Bergman refers to documents (Q40, Q57-58, Q75-76) which are on the privilege log of Don Bulson but which were not on plaintiffs' privilege logs. Mr. Bergman says these documents should be produced, and Mr. Toberoff says they should not. The transcript does not suggest what is to be done with such documents.

   (4) Mr. Bergman has provided me with the privilege logs and documents reflected in Mr. Toberoff's May 21 declaration, and asked that I compare them with the Escrow Documents. Mr. Bergman says he is concerned that correspondence Wayne Smith says he saw in the Escrow Documents has not been produced, and does not appear to be reflected in Mr. Toberoff's declaration. I am willing to undertake that review but, as with the issues listed above, it does not appear to have been specifically addressed at the hearing. Mr. Toberoff says there should be no such review.

   In light of the foregoing, I believe I must retain custody of all of the Escrow Documents until there is a further court order, or an agreement between the parties regarding the issues listed above.

Sincerely,

DAVID S. EISEN

EXHIBIT 17
Page 409

76