# EXHIBIT J

1  WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
4  Beverly Hills, California 90212
   Telephone: (310) 858-7888
5  Fax: (310) 550-7191

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone: (212) 813-5900
9  Fax: (212) 813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, New York 10516
12 Telephone: (845) 265-2820
   Fax: (845) 265-2819

13

14 Attorneys for Defendants and Counterclaimant

15              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
16

17 | JOANNE SIEGEL and LAURA       | Case Nos. [Consolidated for Discovery]:
   | SIEGEL LARSON,                |      CV 04-8400 SGL (RZx)
18 |          Plaintiffs,          |      CV 04-8776 SGL (RZx)
   |      vs.                      | Hon. Steven G. Larson, U.S.D.J.
19 | WARNER BROS. ENTERTAINMENT     | Hon. Ralph Zarefsky, U.S.M.J.
   | INC.; TIME WARNER INC.; DC    |
20 | COMICS; and DOES 1-10,         | NOTICE OF MOTION AND JOINT
   |          Defendants.          | STIPULATION RE: DEFENDANTS'
21 | JOANNE SIEGEL and LAURA       | MOTION TO COMPEL
   | SIEGEL LARSON,                | PRODUCTION OF WHISTLE-
22 |          Plaintiffs,          | BLOWER DOCUMENTS
   |      vs.                      |
23 | TIME WARNER INC.; WARNER       | DISCOVERY MATTER
24 | COMMUNICATIONS INC.; WARNER    | LOCAL RULE 37
   | BROS. ENTERTAINMENT INC.;     |
25 | WARNER BROS. TELEVISION        | Time: 10:00 a.m.
   | PRODUCTION INC.; DC COMICS;   | Date: April 16, 2007
26 | and DOES 1-10,                 | Courtroom: 540
   |          Defendants.          | Mag. Judge Ralph Zarefsky
27 | AND RELATED COUNTERCLAIMS      | Discovery Cutoff: Nov. 17, 2006
28

{F0029699.1 }

1 | TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE THAT on April 16, 2007 or as soon thereafter as

3 | the matter may be heard in the above-entitled action before the Honorable Ralph

4 | Zarefsky, United States Magistrate Judge, United States District Court for the

5 | Central District of California, Western Division, Roybal Federal Building, 225 East

6 | Temple Street, Los Angeles, California, Courtroom 540, defendants Warner Bros.

7 | Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros.

8 | Television Production Inc. and defendant and counterclaimant DC Comics

9 | ("Defendants"), will and hereby do move the Court to rule on this jointly filed

10 | stipulation pursuant to L.R. 37-3. Defendants have met and conferred with counsel

11 | for Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegels")

12 | in writing on October 13, 2006 and by telephone conference on October 26, 2006, in

13 | accordance with Local Rule 37-1 of the Local Rules of the United States District

14 | Court for the Central District of California ("L.R."), and the parties were unable to

15 | resolve their discovery dispute regarding the failure to produce certain documents,

16 | copies of which were sent to defendant Warner Bros., apparently by an unidentified

17 | former employee of Plaintiffs' counsel, purporting to perform a "whistle-blower"

18 | function relative to Plaintiffs' counsel's conduct in this litigation and other matters

19 | (the "Whistle-blower Documents"). Some or all of the Whistle-blower Documents,

20 | which were segregated by a member of defendant Warner Bros. Entertainment

21 | Inc.'s legal department consistent with applicable law and which have not been used

22 | or relied upon in the litigation by Defendants to date, are likely to lead to the

23 | discovery of admissible evidence and should be produced by Plaintiffs and their

24 | counsel.

25 |     By this motion, Defendants request that the Court: (1) order Plaintiffs and

26 | their counsel to produce all of the non-privileged Whistle-blower Documents; and

27 | (2) order Plaintiffs and their counsel to produce all of the Whistle-blower documents

28 |

{F0029699.1 }

1

1 | they now claim are privileged but that have not been identified on any privilege log,
2 | including but not limited to, the privilege logs Plaintiffs were ordered by this Court
3 | to turn over no later than September 29, 2006.

4 | This motion is made pursuant to Rules 26 and 37 of the Federal Rules of Civil
5 | Procedure and L.R. 37. Defendants contend that the discovery sought hereby is
6 | likely to lead to the discovery of admissible evidence, and good cause therefore
7 | exists for it. Defendants have made good faith and reasonable attempts to resolve
8 | this matter without Court intervention, pursuant to L.R. 37, through numerous phone
9 | conferences and correspondence, and the parties conducted a conference of counsel
10 | pursuant to L.R. 37-1 on October 26, 2006, without success. (*See* Declaration of
11 | Michael L. Bergman, filed herewith, ¶¶ 16-19 & Exs. O-Q).

12 | This motion is based on this notice of motion; the Joint Stipulation Re: DC's
13 | Motion to Compel Production of Whistle-blower Documents; the declarations
14 | submitted by the parties; any supplemental memoranda that may be filed in
15 | connection with the Joint Stipulation; the pleadings and papers on file in this action;
16 | and on such oral argument and other matters as the Court may properly consider at
17 | the time of the hearing of this motion.

18 | DATED: March 26, 2007     FROSS ZELNICK LEHRMAN & ZISSU, P.C.
19 | PERKINS LAW OFFICE, P.C.
20 | -and-
21 | WEISSMANN WOLFF BERGMAN
22 | COLEMAN GRODIN & EVALL LLP
23 | By
24 | Michael Bergman
25 | Attorneys for Defendants and Counterclaimant
26 |
27 |
28 |

[F0029699.1 ]     2

Ex J - 96

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iv

I.   DEFENDANTS' AUTHORITIES ...................................................................... iv

II.  PLAINTIFFS' AUTHORITIES ......................................................................... iv

JOINT STIPULATION ........................................................................................... 1

I.   DEFENDANTS' INTRODUCTORY STATEMENT .................................... 1

II.  PLAINTIFFS' INTRODUCTORY STATEMENT ......................................... 2

III. DEFENDANTS' CONTENTIONS ................................................................. 3

A.   STATEMENT OF FACTS ............................................................................. 3

     1.   The Relevant Pleadings and Defenses in the Actions ............................ 3

     2.   Warner Bros.'s Receipt of the Whistle-blower Documents ................. 6

     3.   Defendants' Attempt s to Obtain from Plaintiffs and their Counsel the
          Whistle-blower Documents to Which they Are Entitled ................... 11

B.   THE DOCUMENT PRODUCTION REQUESTS
     DEFENDANTS ASK THE COURT TO ENFORCE ............................... 13

     1.   The Request and Plaintiffs' Response ................................................. 13

     2.   The Subpoena and Plaintiffs' Response ............................................. 14

C.   PLAINTIFFS' OBLIGATION AND FAILURE TO SERVE
     REQUIRED AND COURT ORDERED PRIVILEGE LOGS ..................... 15

D.   THE PARTIES' MEET AND CONFER EFFORTS .................................. 16

E.   ARGUMENT ............................................................................................... 16

     1.   Plaintiffs Should be Compelled to Produce the Non-
          Privileged Whistle-blower Documents ............................................. 16

          a.   Plaintiffs' Objections are Without Merit .............................. 17

               1)   There Is No Ambiguity As To The Documents
                    Responsive To The Request And To the Subpoena ....... 18

{F0029699.1 }

i

| | | | |
|---|---|---|---|
| | | 2) | Plaintiffs And Their Counsel's Objections On The Basis Of Overbreadth, Burdensomeness, And Oppressiveness Are Without Merit ............................................................. 18 |
| | | 3) | The Circumstances Of The Whistle-blower Documents' Delivery Does Not Render The Documents Immune From Discovery ................................................................ 19 |
| | 2. | | Plaintiffs Should Be Compelled to Produce Any of the Whistle-blower Documents That Have Not Been Identified on Any Privilege Log .................................... 20 |
| IV. | | | PLAINTIFFS' CONTENTIONS ....................................................... 22 |
| A. | | | FACTUAL AND PROCEDURAL BACKGROUND .................................... 22 |
| | 1. | | Documents Stolen From The Office Of Plaintiffs' Counsel .............. 24 |
| | 2. | | Document Production and Privilege Logs ................................. 27 |
| B. | | | ARGUMENT ................................................................. 27 |
| | 1. | | Plaintiffs Have Properly Responded To Defendants' Requests For Production, Produced Non-Privileged Responsive Documents In Their Possession And Listed Privileged Documents In A Privilege Log .............................................................. 27 |
| | 2. | | Defendants Improperly Seek To Gain An Advantage Through Their Illicit Receipt Of Documents Stolen From The Offices Of Plaintiffs' Counsel .............................................................. 28 |
| | 3. | | The Stolen Documents Have Been Produced Or Listed In Extensive Privilege Logs ............................................... 30 |
| | 4. | | Defendants Have Brought This Motion For Unspecified Documents Based On Speculative Accusations But No Credible Evidence .............................................................. 31 |
| | 5. | | Defendants' Review, Retention And Handling Of The Stolen Documents Was Improper .............................................. 33 |

V.   DEFENDANTS' CONCLUSION.................................................................40

VI.   PLAINTIFFS' CONCLUSION................................................................40

{F0029699.1 }

iii

## TABLE OF AUTHORITIES

**I.    Defendants' Authorities**

*Aerojet-General Corp. v. Transport Indemnity Ins.,*
18 Cal.App.4th 996 (1993)..................................................................8, 19

*American Dental Ass'n v. Korrhami,*
No. CV 02-03853 DT (RZx), 2003 WL 24141018
(C.D. Cal. May 9, 2003) (Zarefsky, M.J.),
*aff'd in part, rev'd in part on other grounds,*
No. CV 02-3853 DT(CTx), 2003 WL 24141019
(C.D. Cal. July 14, 2003)..................................................................11

*Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.,*
408 F.3d 1142 (9th Cir. 2005)..................................................................20

*Clarke v. American Commerce Nat'l Bank,*
974 F.2d 127, 129 (9th Cir. 1992)..................................................................22

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,*
135 F.R.D. 179 (E.D. Cal. 1991)..................................................................20

*Long v. Landvest Corp.*
No. Civ. A. 04-2025-CM-DL
2006 WL 897612 (D. Kan. Mar. 31, 2006)..................................................................18

*Rico v. Mitsubishi Motors Corp.,*
116 Cal.App.4th 51 (2004) (*review granted* June 9, 2004) ......................8, 19

*State Compensation Ins. Fund v. WPS, Inc. (State Fund),*
70 Cal.App.4th 644 (1999)..................................................................8, 19

*Waddell & Reed fin., Inc. v. Torchmark Corp.,*
222 F.R.D. 450 (D. Kan. 2004)..................................................................18

*Weil v. Investment Indicators Mgm't, Inc.,*
647 F.2d 18 (9th Cir. 1981)..................................................................20

Fed. R. Civ. P. 26..................................................................16-17

Local Rule 37-1 ..................................................................16

**II.    Plaintiffs' Authorities**

**Federal Cases**

*Gomez v. Vernon,*
255 F3d 1118 (9th Cir. 2001)..................................................................33-34, 39

*In re Grand Jury Proceedings Involving Berkley & Co., Inc.,*
466 F. Supp. 863 (D. Minn. 1979)..................................................................36

*Kenyatta v. Kelly,*

Ex J - 100



375 F. Supp. 1175 (E.D. Pa. 1974)..............................................36

*Mayman v. Martin Marietta Corp.,*
    886 F. Supp. 1243 (D. Md. 1995)...................................35-36

*Nardone v. United States,*
    308 U.S. 338 (1939)......................................................35

*Sackman v. Ligget Group, Inc.,*
    173 F.R.D. 358 (E.D.N.Y. 1997)......................................35

*Shell Oil Refinery v. Shell Oil Co.,*
    143 F.R.D. 105 (E.D.La. 1992)........................................34

*Smith v. Armour Pharmaceutical Co.,*
    838 F. Supp. 1573 (S.D.Fla. 1993)................................35-36

*Spacone v. Burke (In re Truck-A-Way),*
    300 B.R. 31 (E.D. Cal. 2003).........................................34

*United States ex rel. Mayman v. Martin Marietta Corp.,*
    886 F. Supp. 1243 (D. Md. 1995)......................................35

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981).......................................................33

**State Cases**

*Aerojet-General Corp. v. Transport Indemnity Ins.,*
    18 Cal. App. 4th 996 (1993)........................................39-40

*Cooke v. Superior Court,*
    147 Cal. Rptr. 915 (1978)..............................................35

*Rico v. Mitsubishi Motors Corp.,*
    116 Cal. App. 4th 51 (2004)...........................................34

*State Compensation Ins. Fund. v. WPS, Inc.(State Fund),*
    70 Cal. App. 4th 644 (1999)........................................35, 39

**Federal Statutes**

17 U.S.C. § 304(c)...................................................22-23

**Rules**

37 C.F.R. § 201.10.....................................................22

{P0029699.1 }

v

Fed. R. Civ. Proc. 34...............................................................29

**Miscellaneous**

159 *American Law Reports Federal* 153.............................................35

3-24 *Bender Practice Guide: Fed. Pretrial Civ. Proc. in Cal.* § 24.40............34

{F0029699.1 }

vi

## JOINT STIPULATION

### I.   DEFENDANTS' INTRODUCTORY STATEMENT

After almost two years of litigation, and through a complete twist of fortune, Defendants discovered that Plaintiffs had secreted and improperly suppressed copies of a series of documents that were clearly requested and should have been produced or identified in discovery.  Defendants neither know about nor sought out these documents.  Rather they were sent to executives at defendant Warner Bros. Entertainment Inc. ("Warner Bros.") unsolicited and anonymously, by what appears to be a whistle-blower intent on exposing alleged misconduct engaged in by Plaintiffs' counsel.  The documents are relevant to the subject matter of this litigation, but had neither been produced in response to any discovery request, nor identified on Plaintiff's court-ordered privilege logs.

The anonymously sent documents are a mix of privileged and non-privileged material.  In accordance with procedures laid out under applicable case law they were initially reviewed for privilege by a legal representative of Warner Bros. Then, all copies of the documents were turned over to a neutral third party for preservation and identification, who thereafter provided a Bates numbered copy to Plaintiffs' counsel.  Defendants have not maintained copies of any of the documents, nor have they used them in any manner in the case.  Indeed, Defendants' counsel have never seen the documents.

Defendants thereafter served discovery on Plaintiffs and their counsel to compel production of the non-privileged material, and identification of the remainder, but Plaintiffs have refused to produce documents or provide a privilege log.  Even though there is also no dispute concerning the relevance of the documents, Plaintiffs object to their identification and production *solely* on the ground that their existence (and improper withholding) was revealed to Defendants by a former employee of Plaintiffs' counsel without his approval.  Plaintiffs have

{F0029699.1 }

1

1  steadfastly refused to produce even the admittedly *non-privileged* materials

2  contained in the documents sent to Warner Bros. And their refusal to provide a

3  privilege log contravenes this Court's Order of August 14, 2006, which required

4  Plaintiffs to "produce all privilege logs, including any revisions, by September 29,

5  2006."

6       Whatever the provenance of the documents at issue, there can be no dispute

7  that (i) Defendants had nothing to do with their anonymous whistle-blower who sent

8  them to Warner Bros., (ii) their identification and production were clearly required

9  under Defendants' document production requests, and (iii) under these

10 circumstances, there is no basis for their continuing to be withheld. Thus, by this

11 motion Defendants move to compel Plaintiffs: (1) to produce all of the non-

12 privileged Whistle-blower Documents; and (2) to produce all of the Whistle-blower

13 documents they now claim are privileged but that were not included on any

14 privilege log.[1]

15 **II.    PLAINTIFFS' INTRODUCTORY STATEMENT**

16      After attempting without success to obtain privileged information in

17 redundant motions to compel, Defendants seek by this motion to benefit from the

18 wholesale theft and disclosure of legal files stolen from the law offices of Plaintiffs'

19 counsel. Defendants' disingenuously refer to the documents as "Whistleblower

20 Documents" and purport to have engaged in a series of sanitizing protocols. Yet, as

21 Defendants well know, the documents in question, which they admit are mostly

22 privileged, were *stolen* by a former attorney at the firm of Plaintiffs' counsel and

23 turned over to Defendants during this litigation in shocking violation of the

24 confidential attorney-client relationship and all ethical standards.

25

26 [1] Concurrent with the filing of this motion, Defendants are filing a separate motion requesting additional discovery because, in part, Plaintiffs have waived the
27 attorney-client and work product privileges with respect to Defendants' affirmative defense that the parties entered into a binding settlement agreement that would
28 dispose of all of Plaintiffs' claims.

{F0029699.1 }

2

Ex J - 104

1    Incredibly, Defendants call this theft and unethical disclosure – a "twist of
2    fortune." Without a shred of credible evidence, and based solely on speculation and
3    innuendo, they proceed to accuse Plaintiffs and their counsel of secreting documents
4    to prop up their distasteful attempt to gain an advantage from this theft in this
5    litigation.

6    Plaintiffs have properly responded to Defendants' requests for production;
7    produced the non-privileged responsive documents in their possession and listed the
8    privileged documents in a privilege log. Plaintiffs' counsel even double checked not
9    only Plaintiffs' files, but the files of subpoenaed third parties he represents, against
10   the stolen documents, and produced or listed in a privilege log the four unaccounted
11   for documents so located, even though they are largely irrelevant to these actions.

12   Plaintiffs will demonstrate herein that Defendants failed to abide by even the
13   mild standards applicable to *inadvertently* disclosed documents when receiving
14   privileged legal files clearly stolen from Plaintiffs. Instead of immediately
15   informing Plaintiffs of this outrageous theft and returning the documents to
16   Plaintiffs' counsel forthwith, Defendants in-house counsel took several days to sift
17   through the documents while devising a strategy to benefit from the theft.

18   III.   **DEFENDANTS' CONTENTIONS**

19   A.     **STATEMENT OF FACTS**

20          1.    **The Relevant Pleadings and Defenses in the Actions**

21   Jerome Siegel ("Siegel"), together with Joseph Shuster ("Shuster"), co-
22   authored the first comic book story featuring the original Superman character, which
23   was published in 1938 by Detective Comics, Inc. ("Detective"), the predecessor of
24   defendant DC Comics ("DC"). The 1976 Copyright Act enacted a right of authors
25   and their families to terminate previous grants of rights under copyright within a
26   specific statutory framework. Plaintiffs – Siegel's widow and daughter ("Plaintiffs"
27   or "the Siegels") – have instituted two actions seeking to recapture Siegel's

28

{F0029699.1 }

Ex J - 105

1   copyright rights with respect to the Superman character under the termination

2   provisions contained in Section 304(c) of the Act, 17 U.S.C. § 304(c).

3          The first action, Case No. CV 04-8400 PA (RZx) (the "Superman Action"), is

4   based on notices purporting to terminate a number of Siegel's copyright grants to

5   Detective dating back to 1937 (the "Superman Termination Notices"). The

6   Superman Termination Notices relate only to Siegel's – but not his co-author

7   Shuster's – 50% participation in these grants. Because the Superman works at issue

8   in the first action are joint works, and the Shuster grants of rights have not been

9   terminated, the Superman Action is principally an action for an accounting. It does

10  not attempt to prevent Defendants' continued exercise of rights in Superman works,

11  but instead seeks only a declaration of the effectiveness of the termination notices

12  and an accounting for the Siegel allocable share of the profits from exploitation of

13  rights in Superman works created following the purported effective date of the

14  termination.

15         The second action, Case No. CV 04-8776 PA (RZx) (the "Superboy Action"),

16  is based on a separate notice of termination under section 304(c) relating only to

17  Superboy (the "Superboy Termination Notice"), and purporting to terminate grants

18  allegedly made only by Siegel in the Superboy works. The Superboy Action seeks a

19  declaration that Plaintiffs have recaptured all rights in Superboy, and further alleges

20  that after the purported effective date of the Superboy Termination Notice,

21  Defendants' "ongoing exploitation of the 'Superboy' mythology," including the

22  production and distribution of the *Smallville* television series, infringes Plaintiffs'

23  copyright rights in certain identified Superboy works.

24         Defendants have, *inter alia*, denied the effectiveness of Plaintiffs' termination

25  notices. They also have denied Plaintiffs' claim for an accounting in the Superman

26  Action, as well as their claims of copyright infringement in the Superboy Action.

27  Additionally, defendant DC has filed counterclaims in both actions seeking

28

1  enforcement of a prior settlement agreement between the parties. If DC's

2  counterclaims are successful, all of Plaintiffs' claims in both cases are moot.

3          DC's settlement claim is based in large part on a letter sent by Plaintiffs' prior

4  counsel on October 19, 2001, which unequivocally states that "the Siegel Family has

5  accepted D.C. Comics' offer of October 16, 2001," and which outlines all of the

6  material terms of the parties' agreement. (*See, e.g.,* Exhibit <u>A</u> to the Declaration of

7  Michael L. Bergman submitted herewith ("Bergman Decl."), ¶¶ 47-56.) In reply to

8  DC's counterclaims, Plaintiffs have denied that the parties reached any valid

9  settlement agreement. (*See, e.g., id.* Exh. <u>B</u>, ¶¶ 47-56.) Moreover, Plaintiffs have

10 asserted, as an affirmative defense, that their lawyers did not have authority, or

11 exceeded the scope of their authority, with respect to the settlement being asserted

12 by Defendants. In particular, Plaintiffs have taken the position that their counsel did

13 not have prior authority to send the October 19, 2001 letter as it was written. (*Id.* ¶

14 183.)

15         Additionally, Plaintiffs have argued that a draft of the long-form agreement

16 prepared by Defendants and submitted to Plaintiffs on February 1, 2002 added to

17 and materially changed the terms of the settlement they had accepted, and thus

18 justified their decision to not consummate their agreement with Defendants. (*Id.* ¶

19 53.) Indeed, on May 9, 2002, plaintiff Joanne Siegel – without the assistance or

20 participation of counsel – wrote letters to Time Warner's chief executives stating

21 that Defendants' draft long-form agreement had "stabbed us in the back" and "just

22 like the Gestapo" sought to "strip us naked of our legal rights." (*Id.* Exh. <u>A</u>, ¶ 55.)

23 Plaintiffs' prior counsel, Kevin Marks of the Gang Tyre firm, has testified that on or

24 about August 8, 2002, he received a telephone call from Plaintiffs' current counsel,

25 Marc Toberoff (who at the time was not yet Plaintiffs' lawyer) in which Mr.

26 Toberoff with another person made an offer to buy Plaintiffs' termination rights at

27 issue in the settlement and in this case for $15 million plus a "meaningful back end"

28 royalty percentage. (*Id.* Exh. <u>C</u> at 168-69.) Mr. Marks transmitted this offer to

Ex J - 107

1  Plaintiffs and it was not accepted. (*Id.* at 169-70.) But six weeks later, in

2  September of that year, Plaintiffs dismissed Mr. Marks as counsel, in a letter which

3  they copied to DC's president. (*Id.* Exh. A, ¶ 56.)

4      **2.**   **Warner Bros.'s Receipt of the Whistle-blower Documents**

5       During the afternoon of June 28, 2006, Wayne Smith, Vice President, Senior

6  Litigation and Chief Patent Counsel of defendant Warner Bros. ("Smith"), received

7  a telephone call from John A. Schulman, General Counsel of Warner Bros., who

8  asked that Smith come to his office. (Declaration of Wayne M. Smith submitted

9  herewith ("Smith Decl."), ¶ 2.) Upon arriving at his office, Mr. Schulman advised

10  Smith that a set of documents (the "Whistle-blower Documents," referred to by

11  Smith in his declaration as the "Superman Documents") addressed to him and

12  apparently relating to the instant litigation had arrived from an anonymous source at

13  his office that day. (*Id.* ¶ 2.) Mr. Schulman informed Smith that the cover letter

14  contained with the documents indicated that other executives at Warner Bros. may

15  have received the same set of documents, and that he had called the offices of those

16  executives to see if they had received anything. (*Id.* ¶ 2.) He further advised Smith

17  that he had asked those executives to send the documents to his office without

18  reviewing them, and that one set of documents had already been delivered to him.

19  (*Id.* ¶ 2.) Mr. Schulman handed Smith the stack (approximately an inch high) of

20  Whistle-blower Documents that he had received and asked Smith to wait outside his

21  office while he completed a meeting, after which they would discuss them. (*Id.* ¶ 2.)

22  The stack did not include any envelope or packaging in which the documents may

23  have arrived. (*Id.* ¶ 2.) This was not unusual as it has been Smith's experience that

24  the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging

25  upon opening mail. (*Id.* ¶ 2.)

26       While Smith was waiting, he looked at what might be characterized as the

27  "cover letter" that came with the Whistle-blower Documents. (*Id.* ¶ 3.) The cover

28  letter, which was not signed, alleged various types of ethical misconduct on the part

{F0029699.1 }

6

1  of the Plaintiffs' counsel in connection with this case. (*Id.* ¶ 3.)  The cover letter
2  also asserted ethical misconduct – violating the terms of a confidentiality agreement
3  by leaking settlement information to the press – in connection with another litigated
4  matter where Plaintiffs' counsel had also represented a party adverse to Warner
5  Bros. (*Id.* ¶ 3.)  The letter appeared designed to right wrongs caused by Plaintiffs'
6  counsel's misconduct. (*Id.* ¶ 3.)  The letter also referenced the documents enclosed,
7  providing an overview of their contents and their connection to Plaintiffs' counsel's
8  alleged wrongdoing. (*Id.* ¶ 3.)

9        Smith also thumbed through the Whistle-blower Documents contained with
10 the letter, but did not read any of them in detail. (*Id.* ¶ 3.)  Meanwhile, an assistant
11 for another Warner Bros. executive delivered what appeared to be another set of
12 Whistle-blower Documents to Mr. Schulman's office. (*Id.* ¶ 3.)  Smith did not
13 observe that any of the three sets of Whistle-blower Documents – (i) the set Mr.
14 Schulman handed to me; (ii) the other set in his office; or (iii) the set that was
15 delivered while Smith was waiting outside his office – was contained in an envelope
16 or other packaging. (*Id.* ¶ 3.)

17       Smith then met with Mr. Schulman. (*Id.* ¶ 4.)  Smith told Mr. Schulman that
18 based on the contents of the cover letter and my brief thumbing through the
19 documents, it appeared that certain of the documents in the package were privileged.
20 (*Id.* ¶ 4.)  Smith said that before he looked at the documents he wanted to review the
21 case law in the area to determine what level of review, if any, of the Whistle-blower
22 Documents was appropriate. (*Id.* ¶ 4.)  Mr. Schulman agreed with this approach,
23 gave Smith one set of the documents, retained the other two sets that he had
24 received, and advised me that he had only looked at the cover letter that came with
25 the documents and would not review the documents at all. (*Id.* ¶ 4.)

26       Smith the returned to his office with the set of documents. (*Id.* ¶ 5.)  He
27 initially went on the internet and performed a Google search relating to the issue of
28 what obligations, if any, governed the handling of the Whistle-blower Documents

1    Warner Bros. had received. (*Id.* ¶ 5.)   His initial search located an article from the

2    June 2006 Los Angeles Lawyer magazine entitled "On the Receiving End," by Kurt

3    L. Schmalz (*id.* Ex. <u>A</u>) which was posted on the Los Angeles County Bar

4    Association web site. (*Id.* ¶ 5.)   The article concerns the obligations of lawyers who

5    unwittingly receive privileged documents from opposing counsel's files and

6    discusses various California cases that have dealt with the issue, including the *Rico*

7    *v. Mitsubishi Motors Corporation* case pending before the California Supreme

8    Court. (*Id.* ¶ 5.)

9         Smith read the Schmalz article and then downloaded and studied the three

10   principal California cases it identifies: *Aerojet-General Corporation v. Transport*

11   *Indemnity Insurance*, 18 Cal.App.4th 996 (1993), *State Compensation Insurance*

12   *Fund v. WPS, Inc. (State Fund)*, 70 Cal.App.4th 644 (1999) and the Court of Appeal

13   decision in the case under review, *Rico v. Mitsubishi Motors Corporation*, 116

14   Cal.App.4th 51 (2004) (*review granted* June 9, 2004). (*Id.* ¶ 6.)   Based on his

15   review of the relevant California authorities, it appeared that a conservative

16   approach to handling the Whistle-blower Documents was to follow the procedure

17   laid out by the Court in *State Fund*, specifically:  (i) to review each document but to

18   cease the review once it became apparent that the document was privileged; (ii) to

19   contact opposing counsel and advise that the documents have been received; and

20   (iii) to refrain from using any information in the documents until there was either an

21   agreement with opposing counsel, or the court had determined the documents'

22   disposition. (*Id.* ¶ 6.)

23        Following his review of the law, Smith called Mr. Schulman and advised him

24   of the results of his research. (*Id.* ¶ 7.)   Smith said that he intended to review the

25   Whistle-blower Documents in accordance with *State Fund*. (*Id.* ¶ 7.)   At Mr.

26   Schulman's request, he also sent copies of the three key cases and the article to Mr.

27   Schulman's office. (*Id.* ¶ 7.)

28        That evening, Smith took the Whistle-blower Documents home and spent

{F0029699.1 }

8

1    approximately a half hour reviewing them. (*Id.* ¶ 8.)  Certain of the documents –

2    such as executed agreements relating to Superman and correspondence between the

3    Plaintiffs and non-lawyer third parties – did not appear subject to any applicable

4    privilege. (*Id.* ¶ 8.)  As he was going through the documents, Smith placed them

5    into three piles: (i) "non-privileged," (ii) "privileged," and (iii) "?" (where either he

6    could not tell whether it was privileged or he believed the document covered subject

7    matter where privilege may have been waived in the case, as explained below). (*Id.*

8    ¶ 8.)  In reviewing each document, where it first appeared to Smith that it was

9    entirely privileged, he ceased reading it, placed the document in the "privileged"

10   pile and did not look at it further. (*Id.* ¶ 8.)  After going through the documents,

11   Smith placed a post-it note on the top of each pile (indicating "privileged," "non-

12   privileged," or "?"), and fastened each pile together. (*Id.* ¶ 8.)  Smith did not look at

13   the documents further.  Because he did not conduct a detailed review of the Whistle-

14   blower Documents, and because of the passage of time, Smith does not recall their

15   specific contents. (*Id.* ¶ 8.)  He does, however, recall generally the subject matter of

16   certain of the documents. (*Id.* ¶ 8.)

17          The non-privileged pile was the second largest of the three. (*Id.* ¶ 9.)  It

18   contained what appeared to be agreements between, *inter alia*, the Siegels and/or

19   Shusters and various entities, as well as correspondence concerning the interest in

20   Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother,

21   Michael Siegel. (*Id.* ¶ 9.)  To Smith's knowledge, this last category of documents

22   has never been produced in the litigation. (*Id.* ¶ 9.)

23          The "?" pile was the smallest. (*Id.* ¶ 10.)  Smith believes that one or two of

24   the documents in this category potentially fall within the scope of a privilege waiver

25   based Plaintiffs' reliance on an affirmative defense that their predecessor counsel

26   did not have authority to accept a settlement proposal made by Defendants.

27   Defendants position on this privilege waiver is the subject of a separate Motion to

28   Compel filed concurrently herewith. (*Id.* ¶ 10.)

{F0029699.1 }

9

1    The pile of documents labeled "privileged" was the largest. (*Id.* ¶ 11.)

2    Even from the brief review made, it appeared to Smith that, with the

3    exception of the cover letter (which also addressed the other litigation involving

4    Plaintiffs' counsel), all of the Whistle-blower Documents related to the subject

5    matter of the instant litigation and were responsive to document requests the

6    Defendants had previously served on Plaintiffs. (*Id.* ¶ 12.) However, it did not

7    appear to Smith at the time that any of the "non-privileged" documents had been

8    produced in the litigation. (*Id.* ¶ 12.)  Moreover, at least some (and perhaps

9    virtually all) of the privileged documents, as well as those in the "?" pile, were, to

10    the best of Smith's knowledge, never identified in any privilege log served by the

11    Plaintiffs. (*Id.* ¶ 12.)

12    The next morning, June 29, 2006, Smith returned with the Whistle-blower

13    Documents to see Mr. Schulman in his office. (*Id.* ¶ 13.) Mr. Schulman and Smith

14    discussed having a neutral third party hold the documents pending either the parties'

15    agreement as to their disposition or order of the Court. (*Id.* ¶ 13.) They decided to

16    ask John Quinn, then with Arnold & Porter, and former president of the Los Angeles

17    County Bar Association, to act as the neutral based on his reputation and legal ethics

18    experience. (*Id.* ¶ 13.) He agreed and the following morning, June 30, 2006, the

19    three sets of the Whistle-blower Documents, including the set that Smith had

20    categorized, were handed over to Mr. Quinn. (*Id.* ¶ 13.) Out of an abundance of

21    caution Warner Bros. handed over *all* the documents to Mr. Quinn, not just those

22    that were clearly or potentially privileged. (*Id.* ¶ 13.) Further, Warner Bros. has not

23    shared the contents of the Whistle-blower Documents with any of the outside

24    counsel representing the Defendants in this action, nor has it used the contents of the

25    documents in the litigation. (*Id.* ¶ 13.)

26

27

28

{F0029699.1 }

3.    **Defendants' Attempts to Obtain from Plaintiffs and their Counsel the Whistle-blower Documents to Which they Are Entitled.**

On July 5, 2006, Quinn wrote to Plaintiffs' counsel and to Defendants' outside counsel to inform them of Warner Bros.'s receipt of the Whistle-blower Documents and what Warner Bros. had done with them. (Bergman Decl. Ex. D.) The letter further suggested the following procedure for proper review and handling of the Whistle-blower Documents; (1) the Documents would be Bates stamped by an independent court reporter, a court appointed individual, or independent copy service under supervision; (2) counsel for Plaintiffs and Defendants would contact the Court to advise it of the existence of the Documents and the circumstances of their receipt; (3) if the Court agreed, the Documents would be deposited with the Court, otherwise, they would remain in Quinn's possession; and (4) the Documents would be reviewed by the Court or other individual agreed upon to determine whether any of the documents are protected by any claim of privilege or work product. Non-privileged documents would then be released to Defendants' litigation counsel. (*Id.*)

On July 11, 2006 Quinn and Plaintiffs' counsel had a conversation to discuss the Whistle-blower Documents. (*Id.* Ex. E.) According to Quinn, during that conversation, Plaintiffs' counsel agreed to the protocol set forth in Quinn's letter of July 5, 2006 and further agreed to send written confirmation of such. (*Id.*) On July 13, 2006, having heard nothing from Plaintiffs' counsel, including in response to subsequent calls, Quinn wrote to Plaintiffs' counsel confirming agreement to the protocol outlined in the July 5, 2006 letter and informing Plaintiffs' counsel that Quinn would: (1) have all sets of the Whistle-blower Documents Bates stamped by a paralegal from Quinn's office and have copy sets made; (2) personally retain a copy of the Bates stamped Documents; and (3) send a set of the Bates stamped Whistle-blower Documents to Plaintiffs' counsel. (*Id.*)

{F0029699.1 }

11



1    Plaintiffs' counsel did not respond to the July 13, 2006 letter.  On July 18,

2  2006, Quinn wrote another letter to Plaintiffs' Counsel and enclosed a Bates

3  stamped set of the Whistle-blower Documents.  (*Id.* Ex. F)  In the letter Quinn also

4  stated that he assumed that the next step in the process would be for Plaintiffs'

5  Counsel to prepare and serve a privilege log on Defendants' counsel.  (*Id.*)

6    On July 19, 2006, Plaintiffs' counsel wrote in response to Quinn's July 13 and

7  July 18 letters.  (*Id.* Ex. G.)  In his letter, Plaintiffs' counsel took issue with Quinn's

8  view that Plaintiffs' counsel had agreed to the protocol set forth in Quinn's letter of

9  July 5, 2006.  (*Id.*)  Rather, Plaintiffs' counsel asserted that during the July 11

10  telephone conference he had suggested a different protocol, namely, that: "(1) an

11  independent shop copy and bate stamp the documents and provide [Quinn] with

12  only the total bate stamp number range; (2) all such documents including Warner

13  Bros.' 'originals' then be returned to [Plaintiffs' counsel's] office and (3) Plaintiffs'

14  counsel review the documents and provide Warner Bros. with a privilege log as

15  appropriate." (*Id.*)

16    Plaintiffs' counsel further alleged that the Whistle-blower Documents were

17  stolen legal files from his office that were "in large part, clear attorney-client

18  communications." (*Id.*)  Plaintiffs' counsel went on to allege that Smith, Warner

19  Bros.'s in-house counsel, should not have reviewed the Whistle-blower Documents

20  in any manner.  (*Id.*)  Finally, Plaintiffs' counsel requested that he be furnished with:

21  "(1) the date(s) each set of documents was received; (2) copies of all envelopes or

22  packages enclosing the documents; (3) the method by which the documents were

23  sent and, in the unlikely event the documents were delivered by hand, the name of

24  the messenger (and messenger service) logged at Warner Bros' security gate and (4)

25  any other pertinent information regarding Warner Bros' receipt of these

26  documents." (*Id.*)  Plaintiffs' counsel further requested to review the original

27  documents and that all copies of the Whistle-blower Documents be returned to him.

28  (*Id.*)

{F0029699.1 }

12

1    On July 24, 2006, Quinn wrote back to Plaintiffs' counsel, expressing regret

2  over the disagreement about the telephone conversation between them on July 11,

3  2006 but pointing out that the only area of disagreement that remained between

4  them was over the fact that Quinn had retained a copy of the Whistle-blower

5  Documents. (*Id*. Ex. H.) Quinn reiterated that no one had read the documents and

6  that the only reason he had suggested that a copy be retained by him or by the Court

7  was so that no claim could be made that the documents were incomplete. (*Id*.)

8  Quinn further urged Plaintiffs' counsel to get the Court involved in a resolution of

9  the matter. (*Id*.)

10    On July 24, 2006, Defendants' counsel in these actions wrote to Plaintiffs'

11  counsel and requested that Plaintiffs (1) provide Defendants with copies of each of

12  the Documents as to which Plaintiffs were not asserting any attorney/client or work

13  product privilege and (2) provide Defendants with a detailed privilege log. (*Id*. Ex.

14  I.) Plaintiffs' counsel did not comply with the requests. (*Id*. ¶ 10.) As a result, on

15  August 7, 2006, Defendants served Defendants'/Counterclaimant's Third Set Of

16  Requests For The Production Of Documents And Things (the "Request") (*Id*. Ex. J)

17  and on August 10, 2006 Defendants served a subpoena *duces tecum* on Plaintiffs'

18  counsel (the "Subpoena") (*Id*. Ex. K). .The Request consisted of one document

19  request and the subpoena was identical in scope. (*Id*. Exs. J, K.) Defendants'

20  instant motion requests the Court to order production in compliance with these two

21  discovery devices, both of which are set forth below along with the objections

22  asserted by Plaintiffs and counsel.

23  **B.    THE DOCUMENT PRODUCTION REQUESTS DEFENDANTS ASK THE COURT TO ENFORCE**

24

25    1.    **The Request and Plaintiffs' Response**

26    **Request No. 66**

27    All Writings referenced in the July 5, 2006 letter from John J. Quinn, Esq. to, among others, Marc Toberoff, Esq. (a copy of which is attached hereto as Exhibit A), and which

28  were attached to or enclosed with the July 18, 2006 letter from

{P0029699.1 }                                    13

John J. Quinn, Esq. to Marc Toberoff, Esq. (a copy of which is attached hereto as Exhibit B).

(*Id.* Ex. J at 3.)

On September 6, 2006, Plaintiffs served their written objection to the Request (the "Request Objection"), which asserted boilerplate general objections and, in response to the specific document request read:

**Response to Request No. 66**

Plaintiffs object to this Request on the grounds that it is vague and ambiguous as to the phrase "all Writings referenced." Plaintiffs further object to this Request on the grounds that it is overbroad, burdensome and oppressive. Plaintiffs further object to this Request because it seeks documents or communications clearly protected by the attorney/client privilege and the attorney work product doctrine. Plaintiffs further object to this Request on the ground that Defendants are seeking to impermissibly gain an advantage in this litigation from their illicit receipt of clearly confidential and privileged documents clearly *stolen* from the files of Plaintiffs' counsel's law offices. In an effort to capitalize on this theft, Defendants improperly reviewed these *stolen files* well before notifying Plaintiffs' counsel of the theft or returning the *stolen files* to Plaintiffs' counsel. Defendants also improperly retained a copy of the *stolen files*. But for Defendants' receipt of these *stolen files*, Defendants would not have issued this Request.

(*Id.* Ex. L at 5.)

2.    **The Subpoena and Plaintiffs' Response**

The Subpoena to Plaintiffs' counsel contained the identical request as that set forth in Document Request 66 served on Plaintiffs:

All Writings referenced in the July 5, 2006 letter from John J. Quinn, Esq. to, among others, Marc Toberoff, Esq. (a copy of which is attached hereto as Exhibit A), and which were attached to or enclosed with the July 18, 2006 letter from John J. Quinn, Esq. to Marc Toberoff, Esq. (a copy of which is attached hereto as Exhibit B).

(*Id.* Ex. K.)

On August 23, 2006, Plaintiffs' counsel served a written objection (the "Subpoena Objection" to the Subpoena. The Subpoena Objection was virtually

1   identical to the Request Objection, with the same boilerplate general objections and

2   then the following specific response to the Request:

3         Toberoff objects to this Subpoena on the grounds that it is
    vague and ambiguous as to the phrase "all writings referenced."
4   Toberoff further objects to this Subpoena on the grounds that it is
    overbroad, burdensome and oppressive. Toberoff further objects
5   to this Subpoena because it seeks documents or communications
    clearly protected by the attorney/client privilege and the attorney
6   work product doctrine. Toberoff further objects on the ground
    that Defendants are seeking to impermissibly capitalize on their
7   receipt of clearly confidential and privileged documents stolen
    from Toberoff's law offices, which Defendants improperly
8   reviewed before notifying Toberoff of the issue. But for the
    receipt of the stolen documents, Defendants would not have issued
9   this subpoena.

10  (*Id.* Ex. M.)

11  **C.    PLAINTIFFS' OBLIGATION AND FAILURE TO SERVE
        REQUIRED AND COURT ORDERED PRIVILEGE LOGS**

12
        While the parties attempted to work out their dispute with respect to the
13
    Whistle-blower documents, this Court issued an August 14, 2006 order on a motion
14
    by Defendants to compel Plaintiff to produce documents not identified on a
15
    privilege log. (*Id.* Ex. N.) In that Order, the Court held that "Plaintiff shall produce
16
    all privilege logs, including any revisions, by September 29, 2006." (*Id.*)
17
    Pursuant to the Court's Order of August 14, 2006, on September 29, 2006, Plaintiffs
18
    produced a 46-page privilege log. (*Id.* Ex. P) However, to the best of Defendants'
19
    knowledge, the vast bulk of the Whistle-blower Documents are not identified on the
20
    privilege log. (Smith Decl. ¶ 12).
21
        On September 28, 2006, the day before the Court-ordered deadline to produce
22
    "all privilege logs," Defendants' counsel wrote a letter to Plaintiffs' counsel
23
    pointing out that, notwithstanding Plaintiffs' counsel's invocation of the attorney-
24
    client and work product privileges in the Subpoena Objection, he had failed to
25
    produce a privilege log. (Bergman Decl. Ex. Q.) The September 28 letter requested
26
    that Plaintiffs' counsel produce a privilege log. (*Id.*) To date, Plaintiffs' counsel
27
    has failed to do so. (*Id.* ¶ 16.)
28

**D.    THE PARTIES' MEET AND CONFER EFFORTS**

Pursuant to Local Rule 37-1, on October 13, 2006, Defendants' counsel sent Plaintiffs' counsel a letter setting forth their position on the issues presented in this motion and outlining the relief sought in an attempt to avoid the need for Court intervention. (Bergman Decl. Exh. Q)  Counsel subsequently conducted a conference by telephone on October 26, 2006 in which Plaintiffs' counsel steadfastly refused to produce any of the non-privileged Whistle-blower Documents and further refused to produce a privilege log.  Plaintiffs' counsel's justification for this position was that the documents were stolen. (*Id.* ¶ 19).  Plaintiffs' counsel has not swayed from his mantra that since the Whistle-blower documents were "stolen" from his office, neither he nor Plaintiffs have any obligation to produce them or identify them on a privilege log, even to the extent that the documents are neither privileged nor previously produced, notwithstanding their responsiveness to outstanding requests. (*Id.* ¶ 19).  Thus, the parties have not been able to resolve the dispute. (*Id.* ¶ 19.)

**E.    ARGUMENT**

**1.    Plaintiffs Should be Compelled to Produce the Non-Privileged Whistle-blower Documents**

There is no serious dispute here that all of the Whistle-blower Documents sought by the Request and by the Subpoena are within the scope of discovery as set forth by Rule 26 of the Federal Rules of Civil Procedure, which sets a broad standard for what is discoverable:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

{F0029699.1 }

16

1   Fed. R. Civ. P. 26(b)(1).  Although Rule 26(b)(2) sets forth limitations on discovery

2   that may be ordered following motion practice, Plaintiffs have sought no protective

3   order or other relief with regard to the discoverability of the testimony at issue.

4   Moreover, although Plaintiffs and their counsel make passing reference to relevance

5   in boilerplate objections, neither the specific Request Objection nor the specific

6   Subpoena Objection asserts any relevance objection.  (Bergman Decl.; Exs. L, M.)

7   Any such objection would be frivolous as the documents at issue are unquestionably

8   related to these litigations are thus "likely to lead to the discovery of admissible

9   evidence." (Smith Decl. ¶¶ 2, 8-12.)

10       Nor is there any dispute that some of the Whistle-blower Documents

11  unquestionably are not protected by any privilege.  (*Id.* ¶¶ 8-9.)  Indeed, Plaintiffs'

12  counsel conceded this in his letter of July 19, 2006, stating only that the Whistle-

13  blower Documents were in "*large part*, clear attorney-client communications."

14  (Bergman Decl. Ex. G (emphasis added).)  Notably, he did not say that "all" of the

15  documents were privileged.  Moreover, during the meet and confer he did not take

16  the position that all of the Whistle-blower Documents were privileged.  (*Id.* ¶ 19.)

17              a.      **Plaintiffs' Objections are Without Merit**

18       Plaintiffs' and their counsel's asserted objections as to non-privileged

19  documents are without merit.  They are: (1) the Subpoena and the Request are

20  "vague and ambiguous" as they relate to the phrase "all writings referenced;" (2) the

21  Subpoena and the Request are "overbroad, burdensome and oppressive;" and (3)

22  Defendants are seeking to "gain an advantage in this litigation from [Defendants']

23  illicit receipt of clearly confidential and privileged documents clearly *stolen* from

24  the files of Plaintiffs' counsel's law offices."  Plaintiffs and their counsel go on to

25  argue that "but for" Defendants' receipt of the Whistle-blower Documents,

26  Defendants would never have issued either the Request or the Subpoena.  (Bergman

27  Decl. Exs. L, M.)

28       Each of these objections if entirely without merit.

1)    **There Is No Ambiguity As To The Documents Responsive To The Request And To the Subpoena.**

The Request and the Subpoena seek production of "all writings" that are: (1) referenced in the July 5, 2006 from Quinn to Plaintiffs' counsel and (2) copies of which were attached to or enclosed with the July 18, 2006 letter from Quinn to Plaintiffs' counsel. (Bergman Decl. Exs. J, K.) In other words, Defendants seek production of the Whistle-blower Documents. Plaintiffs cannot seriously contend that they do not understand what documents Defendants seek through the Request and the Subpoena.

2)    **Plaintiffs And Their Counsel's Objections On The Basis Of Overbreadth, Burdensomeness, And Oppressiveness Are Without Merit.**

"[P]arties asserting undue burden . . . have the burden to support their objection, by showing not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery. This typically requires providing an affidavit or other evidentiary proof of the expense or time involved in responding to the discovery request." *Long v. Landvest Corp.*, No. Civ. A. 04-2025-CM-DJ, 2006 WL 897612, *5 (D. Kan. Mar. 31, 2006).[2]

Here, production of the requested documents – the Whistle-blower Documents – would cause no burden to Plaintiffs or their counsel, let alone an unreasonable burden in light of the benefits to be secured from the discovery. The Whistle-blower documents are not voluminous and have all been already collected, copied, and numbered. (Smith Decl. ¶¶ 8-13; Bergman Decl. Exs. E, F, H, I.) Literally, all that would need to happen is for the Court to order Mr. Quinn to turn over the Whistle-blower Documents to Defendants. No burden or oppression exists to Plaintiffs or anyone else in producing the responsive documents.

_____

[2] *See also, Waddell & Reed fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004).

Ex J - 120




3) **The Circumstances Of The Whistle-blower Documents' Delivery Does Not Render The Documents Immune From Discovery.**

The only substance of Plaintiffs' and their counsel's final non-privilege objection to producing the Whistle-blower Documents is that, because the Documents were allegedly "stolen" from Plaintiffs' counsel's office, the documents should be immune to discovery. As Plaintiffs and their counsel see it, "but for" this allegedly illicit taking of Documents by an unidentified former employee of Plaintiffs' counsel, Defendants would never have known about the existence of the Whistle-blower Documents and thus never would have served the Request and the Subpoena. This perverse reasoning is unsupported by the law.

While it is unfortunate that an apparent former employee of Plaintiffs' counsel felt the need to "blow the whistle" on his or her former employer by disclosing documents that, up to that point, had been hidden and not disclosed by Plaintiffs' counsel, this has no effect on whether the Whistle-blower Documents are discoverable. Indeed, none of the leading cases in California that discuss documents produced due to the inadvertence of counsel, *ever* hold or even suggest that such documents are *per se* not discoverable due to the circumstances of their production. *Aerojet-General Corp. v. Transport Indem. Ins.*, 18 Cal.App.4th 996 (1993), *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal.App.4th 644 (1999), and *Rico v. Mitsubishi Motors Corp.*, 116 Cal.App.4th 51 (2004) (*review granted* June 9, 2004).

In fact, the case law holds quite the opposite. "If the underlying information which respondents sought to prevent plaintiffs from using is not privileged, and if such information was revealed to plaintiffs' counsel through no fault or misconduct of his own, plaintiffs and their counsel were entitled to use it." *Aerojet*, 18 Cal.App.4th at 1005. That is the case here with respect to the non-privileged Whistle-blower Documents – the documents are not privileged and, notwithstanding Plaintiffs' baseless assertion of "illicit receipt," they were revealed to Warner Bros. through no fault or misconduct of its own. The documents literally appeared at

{F0029699.1 }

19

Ex J -121

1   Warner Bros.'s doorstep, and were forwarded to in-house counsel immediately upon
2   receipt. (Smith Decl. ¶¶ 2-3). The materials were handled in accordance with
3   California law and no outside counsel for Defendants have ever seen the documents.
4   (*Id.* ¶¶ 4-13).

5          Moreover, as troubling as the apparent theft of documents from Plaintiffs'
6   counsel's office, is the fact that the Whistle-blower Documents were clearly
7   responsive to previously served document requests and that they were neither
8   produced nor identified on a privilege log. (*Id.* ¶ 8-12.) Now that these clearly
9   relevant and responsive documents have come to light, through no fault of
10  Defendants, to permit Plaintiffs to continue to withhold the documents would be a
11  perverse result. Plaintiffs would thereby be empowered to shield from discovery
12  clearly discoverable documents that have been heretofore improperly withheld,
13  whose existence has been secreted, and which were never identified in a requested
14  and court ordered privilege log. In sum, the circumstances of the Whistle-blower
15  Documents coming to Defendants' attention cannot be a bar to their production.

16         **2.    Plaintiffs Should Be Compelled to Produce**
                   **Any of the Whistle-blower Documents That**
17                 **Have Not Been Identified on Any Privilege Log**

18         "As with all evidentiary privileges, the burden of proving that the attorney-
19  client privilege applies rests not with the party contesting the privilege, but with the
20  party asserting it." *Weil v. Investment Indicators Mgm't, Inc.*, 647 F.2d 18, 25 (9th
21  Cir. 1981). As the Ninth Circuit has held, a privilege log is an absolute requirement
22  for the proper assertion of a privilege, including the attorney-client privilege and
23  work product doctrine; mere boilerplate objections or blanket refusals incorporated
24  into discovery responses are insufficient to assert a privilege. *Burlington Northern*
25  *& Santa Fe Railway Co. v. United States Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir.
26  2005). *See also Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 135 F.R.D.
27  179, 184-85 (E.D. Cal. 1991) (failure to "comply with a well settled requirement of
28

{F0029699.1 }

20

Ex J -122

1  specifically identifying the evidence to which a privilege applies" constitutes a

2  waiver of the attorney-client privilege).

3       Plaintiffs and their counsel have stubbornly refused to produce a privilege log

4  of the Whistle-blower documents, not withstanding several requests both in writing

5  and on the telephone. (Bergman Decl. ¶¶ 16-19 & Exs. O-Q.)  Making matters

6  worse in this instance is the fact that Plaintiffs are repeat offenders – they have

7  already been found on at least one occasion to have failed to fulfill their obligation

8  to produce a privilege log. As a result, this Court ordered Plaintiffs on August 14,

9  2007 to produce "all privilege logs, including any revisions, by September 29,

10 2006." (*Id.* Ex. N.)  Notwithstanding the obligation imposed by this standing order

11 of the Court, Plaintiffs have continued to refuse to produce a privilege log for the

12 Whistle-blower Documents.  What's more, to the best of Warner Bros.'s in-house

13 counsel's memory, the vast majority of potentially privileged documents in the stack

14 of Whistle-blower Documents are not identified on any of Plaintiffs' privilege log.

15 (Smith Decl. ¶ 12.)  Moreover, neither in response to correspondence or in

16 connection with the meet and confer process on this motion have Plaintiffs or their

17 counsel ever pointed to any entry in the existing privilege log that identifies any of

18 the Whistle-blower Documents.  (*Id.* ¶ 12; Bergman Decl. ¶ 16-19 & Exs. O-Q.)

19      At this point, because Plaintiffs and their counsel have purposely refused to

20 fulfill their obligation to provide a privilege log for the Whistle-blower Documents,

21 and because they have violated this Court's Order of August 14, 2006, they should

22 be deemed to have waived the privilege with respect to the Whistle-blower

23 Documents and should be ordered to produce such documents.[3]

24

25 _____
   [3] If the Court is unwilling to order a blanket waiver of privilege as a result of
   Plaintiffs' failure to list the documents at issue on a privilege log and resulting
26 violation of its August 14, 2006 order, Defendants respectfully request that the
   Court conduct an in camera review of the remaining documents to determine which,
27 if any, may be privileged.  This task cannot be performed by Defendants' counsel in
   view of the measures taken by Defendants to prevent disclosure without prior
28 approval of the Court.

{F0029699.1 }

21

# IV.   PLAINTIFFS' CONTENTIONS

## A.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Terminations regarding "Superman" and "Superboy" complied with all the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, the regulations promulgated by the Register of Copyrights. Shortly after receiving the "Superman" Termination notices, the general counsel of Defendant Warner Bros. Entertainment Inc. ("Warner") and the President of Defendant DC, a wholly owned Warner subsidiary, each acknowledged the validity of the "Superman" Termination, and the parties began negotiations for Defendants' to license or purchase Plaintiffs' recaptured copyrights. (*See* Plaintiffs' First Amended Supplemental Complaint ("FASC"), ¶¶ 46-48). When these negotiations broke down due to Defendants' excessive demands, Defendants reversed their prior admissions two years earlier, and contested Plaintiffs' "Superman" Termination on April 15, 1999, one day before it became effective.

---

As established in the Smith Declaration, the scope of review is quite narrow as it would encompass a review of an estimated 85-150 pages of possibly privileged documents. Moreover, because of Plaintiffs' purposeful failure to disclose the existence of these discoverable Whistle-blower Documents on a privilege log, the integrity of this case risks being compromised. This fact, combined with the fact that, at least with respect to the Documents in the "?" pile segregated by Smith, by separate motion brought concurrently, the enforcement of a settlement agreement is an issue as to whether Plaintiffs have waived the privilege as to a subject matter pertaining to one of Defendants' main defenses in the cases, makes in camera review of the Whistle-blower Documents crucial to the ends of justice. If, after in camera inspection of the Whistle-blower Documents Plaintiffs claim are privileged, the Court finds that there are documents therein that are either not privileged or where such privilege has been waived, Defendants respectfully submit that Plaintiffs and their counsel should be ordered to produce such documents.

Such a narrow review is supported by the law of this Circuit. "A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). While Defendants are mindful that in camera review of documents is generally disfavored, it is permitted where the party seeking such review has submitted "detailed affidavits and other evidence narrowing the scope of the review to the extent reasonably possible." *American Dental Ass'n v. Korrhami*, No. CV 02-03853 DT (RZx), 2003 WL 24141018, *21 (C.D. Cal. May 9, 2003) (Zarefsky, M.J.), *aff'd in part, rev'd in part on other grounds*, No. CV 02-3853 DT(CTx), 2003 WL 24141019, (C.D. Cal. July 14, 2003).

Ex J - 124

1        Defendants thereafter also claimed that the "Superboy" Termination was

2 somehow invalid. On October 8, 2004, Plaintiffs filed their action for declaratory

3 relief and an accounting regarding the "Superman" Termination; and on October 22,

4 2004 filed their action for declaratory relief and copyright infringement regarding

5 the "Superboy" Termination. The two actions were consolidated for purposes of

6 discovery only.

7        Plaintiffs moved for partial summary adjudication on February 15, 2006 to

8 establish that Plaintiffs had successfully recaptured and own Siegel's "Superboy"

9 copyrights pursuant to 17 U.S.C. §304(c). Defendants cross-moved for summary

10 judgment claiming the "Superboy" Termination was invalid based largely on the

11 same purported claims and defenses they asserted with respect to "Superman." On

12 March 23, 2006, the Court *granted* Plaintiffs' motion in its entirety and *denied*

13 Defendants' motion in its entirety. Defendants' subsequently moved to have this

14 order certified for appeal, which motion was also *denied* by the Court.

15        Following the Court's ruling against them, Defendants, under the aegis of

16 discovery, embarked on a very aggressive campaign marked by a series of

17 exaggerated assaults on Plaintiffs' *attorney-client privilege and work product*, and

18 by numerous unwarranted motions to compel. This motion is but one of a series of

19 Defendants' overreaching motions. Defendants filed a motion to compel regarding

20 the communications between Plaintiffs and their former counsel regarding the

21 termination of their services by Plaintiffs in September, 2002. This motion was

22 denied by the Court on August 18, 2006. *See* Declaration of Marc Toberoff in

23 Opposition to Defendants Motion to Compel Whistle-Blower Documents ("Toberoff

24 Decl.") Ex. A. Defendants moved to have this order reconsidered; this too was

25 denied by the Court on September 25, 2006. Toberoff Decl., Ex. B. Defendants then

26 sought to retake Laura Siegel Larson and Joanne Siegel's depositions on the ground

27 they had been hindered in the deposition by Plaintiffs' counsel's assertion of

28 privilege regarding communications concerning the purported October, 2001

{F0029699.1 }

23

Ex J -125

1    settlement agreement.  The Court denied this motion on November 7, 2006.

2    Toberoff Decl., Ex. C.

3        Undeterred, Defendants now seek to exploit to their advantage *legal files*

4    *stolen from Plaintiffs' counsel*.

5        **1.**     **<u>Documents Stolen From The Office Of Plaintiffs'</u>**

6                    **<u>Counsel</u>**

7        On July 5, 2006, Plaintiffs' counsel Marc Toberoff ("Toberoff") received a

8    cryptic letter from John J. Quinn ("Quinn"), an attorney with the firm, Arnold and

9    Porter LLP, notifying Toberoff on behalf of Defendants in the vaguest of terms that

10   Defendants had received three sets of documents (delivered to Warner's General

11   Counsel, John Schulman and two Warner executives, respectively) from an

12   unidentified source and that these documents had been reviewed by Wayne Smith,

13   Warner's Senior Litigation Counsel and segregated into three piles: "'Privileged,'

14   'Non-privileged' and '?.'"  *See* Declaration of Michael Bergman in Support of

15   Defendants' Motion to Compel Whistle-Blower Documents ("Bergman Decl."), Ex.

16   D.  The letter further stated that Quinn was in possession of the documents and

17   suggested a "protocol" for dealing with them.  *Id.*  Curiously the letter did not

18   identify what it was referring to and, in particular, omitted that the documents had

19   obviously been *stolen* from Toberoff's law firm. *Id.*  Nor did the letter offer to

20   return the documents to Toberoff, as is required, and stated instead "I will keep the

21   documents in my possession and allow access to them only upon your joint or the

22   Court's instructions." *Id.*

23       The next day, Defendants' counsel Michael Bergman ("Bergman") sent an *ex*

24   *parte* letter to this Court regarding the documents, without notifying Plaintiffs

25   beforehand.  Toberoff Decl., Ex. D.  Bergman's letter *also omitted* that the

26   documents in question, reviewed by Defendants' counsel, Wayne Smith, had

27   obviously been lifted from the office of Plaintiffs' counsel.  The Court rejected this

28   *ex parte* letter by minute order dated July 6, 2006.  *Id., Ex. E.*

1    On July 11, 2006, Quinn and Toberoff spoke telephonically regarding the

2  stolen documents. *Id.* ¶ 8.  Toberoff inquired as to the nature of the documents

3  referred to in Quinn's July 5, 2006 letter and was informed *for the first time* that the

4  documents apparently came from Toberoff's own legal files.  *Id.* Toberoff thereupon

5  demanded that the documents be returned immediately and rejected the "protocol"

6  outlined in the July 5 letter as geared to exploiting the documents in this litigation.

7  *Id.*  Toberoff suggested instead that an independent shop copy and bate stamp all the

8  documents; that Arnold and Porter be provided with this bates stamp number range,

9  but not retain the stolen documents and that *all* of the documents, including the

10  'originals,' withheld by Warner Bros., be returned to Plaintiffs' counsel

11  immediately.   *Id.*  On July 13, by letter, Quinn announced, contrary to the wishes of

12  Plaintiffs' counsel, that he would have the documents bates stamped by his office,

13  send a copy of the bates stamped documents to Plaintiffs' counsel, and *retain the*

14  *originals* and a bates stamped set.  Bergman Decl., Ex. E.  On July 18, 2006, Quinn

15  delivered three sets of the stolen documents that had been bates stamped, but kept

16  the originals. Toberoff Decl. ¶ 10.

17    By letter dated July 19, 2006, Toberoff reiterated Plaintiffs' demand and

18  further requested that Warner Bros. furnish:

19

20    "(1) the date(s) each set of documents was received; (2) copies of all
     envelopes or packages enclosing the documents; (3) the method by

21    which the documents were sent and, in the unlikely event the
     documents were delivered by hand, the name of the messenger (and

22    messenger service) logged at Warner Bros. security gate and (4) any
     other pertinent information regarding Warner Bros.' receipt of these

23    documents. We would also like to inspect the "original" documents
     and enclosing envelopes or packages as received by Warner Bros."

24  *Id.*, Ex. F.

25    In response to Plaintiffs' July 19 letter, Bergman insisted by letter dated July

26  20, 2006 that Quinn retain possession of the three sets of the stolen documents (even

27  though Quinn had already done so on Warner's behalf), but Bergman provided no

28  information regarding Warner's receipt of the documents.  *Id.*, Ex. G.   Quinn

1   responded to Plaintiffs' July 19 letter by letter dated July 24, 2006 wherein Quinn

2   again insisted he would keep the original stolen documents pending further

3   instructions from Defendants or a court order, but again the information Plaintiffs

4   had requested regarding Warner's receipt of the stolen documents was not provided.

5   *Id.*, Ex. H.

6        On July 24, 2006, Defendants demanded that Plaintiffs specifically account to

7   them for each of the stolen documents by production and/or a privilege log keyed to

8   the stolen documents retained by Quinn.  Again, despite Plaintiffs' request, no

9   information was provided regarding the circumstances under which Warner received

10  the stolen documents.  Bergman Decl., Ex. I.

11       By letter dated July 26, 2007, Toberoff reiterated Plaintiffs' July 19 demand

12  for information regarding Warner's receipt of the stolen documents which

13  Defendants continued to ignore.   Toberoff Decl., Ex. I.  Defendants finally

14  responded by letter dated July 27, 2006, repeating merely that three apparently

15  identical sets of documents addressed to three different high placed Warner

16  executives had mysteriously arrived in envelopes on June 28, 2006; but that Warner

17  did not retain any of the three envelopes (or a copy of any envelopes) and that

18  Warner had no mailroom, security or executive office records, notes or logs of the

19  three substantial packages ever being signed in or received.  *Id.*, Ex. J.  In short,

20  Warner claimed to have no information whatsoever, concerning the purportedly

21  anonymous receipt by three high ranking Warner executives of substantial packages

22  containing numerous confidential documents relating to this lawsuit.  All such

23  information commonly kept by Studio security, mailrooms and executive offices

24  had mysteriously vanished.

25       On August 7, 2006, Defendants served a Third Set of Requests for Production

26  seeking the stolen documents.  Bergman Decl., Ex. J.   Plaintiffs objected to this

27  document request on September 6, 2006.  Bergman Decl., Ex. L.  On August 10,

28  2006 Defendants served a subpoena duces tecum on Plaintiffs' counsel also seeking

Ex J - 128

1    the stolen documents. Bergman Decl., Ex. K.  On August 23, 2006, Plaintiffs'

2    counsel served written objections to the subpoena.  Bergman Decl., Ex. M.

3                **2.    Document Production And Privilege Logs**

4        Plaintiffs produced documents on September 29, 2005 and supplemented this

5    production on October 6, 2006, November 6, 2006 and November 17, 2006. *Id.*, Ex.

6    K.  Plaintiffs produced a privilege log on July 20, 2006 and provided supplemental

7    privilege logs on September 29, 2006. *Id.*, Ex. L, M.

8        Documents were produced by third parties Jean Peavy and Warren Peary (the

9    "Shusters") on July 18, August 11 and August 14, 2006 in response to Defendants'

10   subpoena. *Id.*, ¶ 19. The Shusters served a privilege log on August 11, 2006. *Id.*

11   Shusters served a supplemental privilege log on October 16, 2006. *Id.*, Ex. N.  Third

12   party IPW, LLC produced documents on November 15, 2006 in response to

13   Defendants' subpoena. *Id.*, ¶ 21.  Third party Pacific Pictures Corporation produced

14   documents on November 15, 2006 in response to Defendants' subpoena. *Id.*   Third

15   party Don Bulson produced a privilege log on October 23, 2006 in response to

16   Defendants' subpoena. *Id.*, Ex. O.

17   **B.    ARGUMENT**

18        1.    **Plaintiffs Have Properly Responded To Defendants' Requests For**

19              **Production, Produced Non-Privileged Responsive Documents In**

20              **Their Possession And Listed Privileged Documents In A Privilege**

21              **Log**

22        Plaintiffs have readily complied with Defendants' discovery requests. As

23   stated above, Plaintiffs have produced over 2000 pages of documents in this action

24   on September 29, 2005, October 6, 2006, November 6, 2006 and November 17,

25   2006, collectively. *Id.*, Ex. K.  Plaintiffs also produced a 25 page privilege log with

26   342 entries on July 20, 2006, properly setting forth with respect to each

27   communication, the date, sender, recipient, the nature of the privilege claimed, the

28   document type and present location of the document. *Id.*, Ex. L.



1    Defendants filed a motion to compel claiming, in part, that Plaintiffs' July 20,

2  2006 privilege log was insufficient.  This motion was denied in its entirety by the

3  Court on August 18, 2006. *Id.*, Ex. A. The Court found that the format used by

4  Plaintiffs was sufficient and thus Plaintiffs had adequately asserted the attorney-

5  client privilege and work product doctrine.[4]  *Id.* at 5.  Defendants moved to have

6  this order reconsidered, which was denied by the Court on September 25, 2006. *Id.*,

7  Ex. B.  Thereafter, Plaintiffs provided supplemental privilege logs on September 29,

8  2006, containing 585 entries. *Id.*, Ex. M.

9    Plaintiffs Laura Siegel Larson and Joanne Siegel had their depositions taken

10  in early August, 2006.  Defendants moved to retake both of these depositions on the

11  ground they had been hindered by Plaintiffs' counsel's assertion of privilege

12  regarding communications about the purported October, 2001 settlement agreement.

13  The Court denied this motion on November 7, 2006. *Id.*, Ex. C.

14    2.    **Defendants Improperly Seek To Gain An Advantage**

15          **Through Their Illicit Receipt Of Documents Stolen From**

16          **The Offices Of Plaintiffs' Counsel**

17    When one peels away the layers of their motion, Defendants impermissibly

18  seek to gain an advantage in this litigation from their receipt of documents *stolen*

19  *from the legal files of Plaintiffs' counsel*.  Defendants call this shocking theft a

20  "twist of fortune."  This is all quite improper, if not reprehensible.  To make matters

21  much worse, the majority of the stolen documents, as admitted by Defendants, are

22

23

24  [4] Rather than cite to and fairly describe the Court's August 18, 2006 order, Defendants misleadingly exaggerate, out of context, the Court's August 14 minute order regarding Plaintiffs' privilege log, which was modified by the Court's August

25  18 order. (*See* Sec. III. Plaintiffs' Contentions at 15:12-15).  Plaintiffs were not "ordered" to produce a supplemental log as Defendants proclaim; they informed the

26  Court at the hearing on Defendants' motion that given the long background history of this case Plaintiffs' were in the process of supplementing their log to cover

27  additional time periods.  The Court merely set a deadline for Plaintiffs to submit their supplemental log.  Toberoff Decl., Ex. A.

28

[F0029699.1 ]                            28

Ex J -130

1  classic attorney-client privileged communications.   Declaration of Wayne Smith

2  ("Smith Decl."), ¶ 11.

3          Both parties are bound by FRCP 34 with respect to the discovery and

4  production of documents responsive to each other's requests and the service of

5  privilege logs listing documents withheld by either on the basis of privilege.

6  However, Defendants, by their motion, claim special benefits and advantages due to

7  a theft of documents stolen from the law offices of Plaintiffs' counsel.  At

8  Defendants' direction the stolen documents were both retained and bates numbered

9  in order to force Plaintiffs to jump through hoops and satisfy tests non-applicable to

10  Defendants or any other parties to a lawsuit under the FRCP or Local Rules.

11  Perversely, Plaintiffs, who were victimized and prejudiced by this theft, covert

12  disclosure and Defendants' *review* of privileged communications, are the target of

13  Defendants' motion.

14          Defendants use terms like "Whistle-blower Documents," "neutral" attorneys

15  (retained and compensated by them) and purportedly sanitized protocols to mask the

16  uneasy appearance of their conduct and overreaching motion.  One need only think

17  about Defendants' admission that the majority of stolen documents are *clearly*

18  *attorney-client privileged* to realize that their theft and wholesale disclosure to the

19  other side in this litigation has none of the ethical attributes of "whistle-blowing."  It

20  is believed that these documents were stolen by a disgruntled former attorney of

21  Plaintiffs, in shocking violation of the confidential attorney-client relationship and

22  privilege.[5]  Toberoff Decl., ¶ 23.

23          Faced with this illegal and onerous theft of documents, Defendants stoop to

24  smearing Plaintiffs' counsel by speculation and innuendo, *without a shred of*

25

26

27  [5] The same would apply to any employee of the law firm of Plaintiffs' counsel, as
    their work is conducted within the ambit of counsel's confidential attorney-client
28  relationship.

{F0029699.1 }                              29                                    Ex J - 131

1    *evidence*, to somehow justify their conduct or cleanse the theft from which they

2    eagerly seek to benefit. *See* Smith Decl., ¶ 12.

3              3.    **The Stolen Documents Have Been Produced Or Listed In**

4                    **Extensive Privilege Logs**

5         Plaintiffs' counsel has reviewed the stolen documents and compared them to

6    Plaintiffs' legal files. Plaintiffs' counsel has found that all but 2 non-privileged

7    documents in Plaintiffs' legal files had long ago been produced or listed by

8    Plaintiffs in their privilege logs. Toberoff Decl., ¶ 22. The documents, consisting

9    of 2 letters from Plaintiff Joanne Siegel to DC Comics' executive Paul Levitz,

10   although clearly already in Defendants' possession, have recently been produced.

11   *Id.* There are also 2 privileged e-mail communications between Plaintiffs and their

12   present counsel dated after the commencement of this action which were not listed

13   in Plaintiffs' privilege logs because the parties have agreed not to list post-complaint

14   attorney-client communications on their respective privilege logs. *Id.*

15        Additionally, Plaintiffs' counsel searched the files of other persons or entities

16   it represents that have been subpoenaed in this case, in search of any stolen

17   documents that had not been produced or listed in a privilege log *even though this*

18   *motion to compel is only directed at Plaintiffs. Id.*, ¶ 23.

19        Plaintiffs' counsel found in the files of IPW, LLC, one IP Worldwide fax

20   cover page having little relevance to this action, which it has nonetheless recently

21   produced to Defendants. *Id.*

22        Plaintiffs' counsel re-searched the files of Jean Peavy, Warren Peary, and the

23   Estate of Joe Schuster (the "Shusters") and found 3 irrelevant, but non-privileged

24   documents regarding the probating of Joe Shuster's Estate, that Plaintiffs do not

25   believe were previously produced. Plaintiffs recently produced these documents.

26   *Id.* ¶ 24. Plaintiffs' counsel found 1 privileged document from the Shuster files,

27   again concerning probate, which he has listed on behalf of the Shusters on a

28   supplemental privilege log. *Id.*

[F0029699.1 ]

Ex J - 132

1    **4.    Defendants Have Brought This Motion For Unspecified**

2    **Documents Based On Speculative Accusations But No**

3    **Credible Evidence**

4    Defendants wrongfully accuse Plaintiffs and their counsel of secreting

5    unspecified documents based on vague statements and innuendo without any

6    credible evidence to back up their accusations.   Defendants rely solely on the

7    vague, purported recollections of attorney Wayne Smith ("Smith"), Warner's Senior

8    VP, Litigation, who oversees this litigation on Defendants' behalf.  While claiming

9    that he did not read, but only "brief[ly]" glanced at the documents to quickly

10   conclude that the bulk were attorney-client privileged, Smith asserts that "[t]o my

11   knowledge, [the non-privileged] documents have never been produced in this

12   litigation." Smith Decl., ¶¶ 8, 9, 12.

13   Mr. Smith's claim that he now recalls from a clipped 30 minute review

14   (purportedly, nine months ago in June, 2006) whether these documents were

15   produced in Plaintiffs' 2000 page production is highly dubious.   Smith states in his

16   declaration: "at least some (and perhaps virtually all) of the privileged documents,

17   as well as those in the "?" pile, were, to the best of my knowledge, never identified

18   in any privilege log served by Plaintiffs."  Smith Decl., ¶ 12.  This statement is odd

19   as Smith claims to have briefly reviewed the documents on June 28, 2006 and to

20   have turned *all* of them over to John Quinn on June 30, 2006. *Id.* ¶ 8, 13.  However,

21   Plaintiffs did not serve their first privilege log until July 20, 2006 and served their

22   supplemental privilege log on September 29, 2006.  Toberoff Decl., Exs. L, M.  The

23   privilege logs list the simple information (date, sender, recipient, etc.) in the form

24   approved by the Court's August 18, 2006 order.  *Id.* Ex. A.  It seems strange that

25   after a 30 minute review, Smith could now recall, or even recall in late July and late

26   September, the dates of documents missing from Plaintiffs' subsequent privilege

27   logs (containing hundreds of entries).  Tellingly, Smith does not even mention the

28   document production and privilege logs of subpoenaed third parties (*i.e.*, the

{F0029699.1 }

31

1   Shusters, Don Bulson, Pacific Pictures Corporation and IPW, LLC) provided

2   subsequent to his purported review, though many of the stolen documents were

3   obviously lifted from such files.  Toberoff Decl., ¶ 22.

4          According to Smith, "[i]n reviewing each document when it first appeared to

5   me that it was entirely privileged, I ceased reading it, placed the document in the

6   "privileged" pile and did not look at it further."  Smith Decl, ¶ 8.   Moreover,

7   "because of the passage of time, I do not recall the specific documents."  *Id.*   If

8   Smith is taken at his word, he could not possibly have concluded that the stolen

9   documents were not included among the nearly 2000 documents produced by

10  Plaintiffs or documents produced by subpoenaed third parties, nor could he

11  reasonably assess the hundreds of entries on Plaintiffs' subsequently produced

12  privilege logs and the privilege logs of such third parties.  For instance, the privilege

13  log of Don Bulson, Esq., the attorney of Michael Siegel, Laura Siegels' now

14  deceased step-brother, contains 422 entries.  Toberoff Decl., Ex. O.

15         Again, Smith claims "I did not conduct a detailed review of the Superman

16  Documents, and because the passage of time, I do not recall their specific contents.

17  I do, however, recall generally the subject mater of certain documents."  Toberoff

18  Decl., ¶ 8.   However, Smith's declaration only cites one subject – irrelevant to this

19  action [6]: "correspondence concerning the interest in Superman that might be owned

20  by plaintiff Laura Siegel's estranged step-brother, Michael Siegel [now deceased]."

21  *Id.*, ¶ 9.   Smith conveniently makes no reference to the lengthy privilege log of

22  Michael Siegel's attorney, Don Bulson, that naturally encompassed this subject.

23  Toberoff Decl., Ex. O.

24         Thus, Defendants' motion to compel is based entirely on Plaintiffs' alleged

25  failure to have produced or have listed in their privilege log documents purportedly

26  _____

[6] Under 17 U.S.C. § 304(c), Plaintiffs' control author Jerry Siegel's termination

27  interest and Michael Siegel had only a passive beneficial interest and right to share
    in any monies paid to Plaintiffs with respect to this interest.

28

Ex J -134

1  responsive to Defendants' document requests; but Defendants and Smith fail to
2  identify which requests and any non-privileged documents or even document
3  categories that were not produced, except documents relating to the single barely
4  relevant subject discussed above.[7]

5      Without any credible evidence, Defendants are content to brazenly accuse
6  Plaintiffs of "secreting documents."  Defendants inconsistently claim that Smith
7  merely "thumbed through" the stolen documents, "but did not review them in
8  detail," yet base their entire motion and accusations on Smith's vague unspecified
9  recollections of the documents in comparison to the thousands of documents
10  produced by Plaintiffs and multiple third parties or listed on their respective
11  privilege logs.

12      **5.   Defendants' Review, Retention And Handling Of The Stolen**
13          **Documents Was Improper**

14      The attorney-client privilege has been recognized as "the oldest of the
15  privileges for confidential communications known to the common law." *Upjohn Co.*
16  *v. United States*, 449 U.S. 383, 389 (1981).  Practicing attorneys recognize the
17  importance of the privilege and the safe harbor that it provides to encourage "full
18  and frank communication between attorneys and their clients and thereby promote
19  broader public interest in the observance of law and administration of justice." *Id.*
20      A lawyer who receives materials that on their face appear to be subject to the
21  attorney-client privilege or otherwise confidential, under circumstances in which it
22  is clear that the materials were not intended for the receiving lawyer, should refrain
23  from examining the materials, notify the sending lawyer, and abide by the
24  instructions of the lawyer who sent them. *Gomez v. Vernon*, 255 F3d 1118, 1131-
25  1132 (9th Cir. 2001); 3-24 *Mathew Bender Practice Guide: Federal Pretrial Civil*
26  *Procedure in California* § 24.40.

27  _____
[7] *See* November 7, 2006 Order, p. 2, Toberoff Decl., Ex. C (the parties, as required by
28  Local Rule 37 must "set forth seriatim particular disputed discovery responses"

{F0029699.1 }

33

1    In *Gomez*, over a period of nine months, the Idaho Department of Corrections

2 implicitly authorized and encouraged department employees to search for and

3 photocopy letters regarding litigation strategies from opposing counsel that were

4 kept in inmates' legal files.  The Court found this behavior highly improper as these

5 documents were plainly privileged: "the most sensitive kind – the kind that any trial

6 lawyer would recognize as privileged, highly valuable, very confidential, and

7 potentially devastating in the wrong hands."  The court, in imposing sanctions, held

8 that the Department ignored their ethical duties to gain an advantage in the

9 litigation. *Gomez*, 255 F3d at 1131-1132

10    Similarly, in *Rico v. Mitsubishi Motors Corp.*, 116 Cal. App. 4th 51

11 (2004)(review granted June 9, 2004), cited by Defendants,  a lawyer was

12 disqualified from further representation after perusing opposing counsel's work

13 product while at a deposition *which he should have known he was not entitled to see*

14 *or possess*. *Rico* reasoned, "a brief look [at the document] and simple phone call

15 could have resolved the matter.  Instead [counsel] 'studied the document carefully,

16 made his own notes on it…and based his litigation strategy'" on it.  *Id*. at 71.

17 Having failed to briefly review the document and contact opposing counsel when it

18 became obvious it was privileged, the court felt disqualification was necessary as

19 "plaintiffs' counsel…had information that inevitably would have been used in

20 preparing for trial." *Id*. at 73.   *See Spacone v. Burke(In re Truck-A-Way)*, 300 B.R.

21 31, 39 (E.D. Cal. 2003)(lawyer disqualified because, upon discovery of an

22 opponent's privileged documents, he *conditioned the documents release upon his*

23 *opponent providing a privilege log); see also Shell Oil Refinery v. Shell Oil Co.*, 143

24 F.R.D. 105, 108 (E. D. La. 1992)(plaintiff subject to sanctions for improperly

25 obtaining proprietary documents from one of defendant corporation's employees).[8]

26

27 ────────────
[8]  It should also be noted that the unauthorized receipt by an opposing party of
privileged documents does not waive the privilege.  *See United States ex rel.*

28 *Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243, 1246 (D. Md.

{F0029699.1 }

Ex J - 136

1    Defendants purport to rely on *State Compensation Ins. Fund. v. WPS, Inc.*
2  *(State Fund)*, 70 Cal. App. 4th 644, 656 (1999)(lawyer receiving privileged materials
3  "should refrain from examining the materials any more than is essential to ascertain
4  if the materials are privileged, and shall immediately notify the sender that he or she
5  possesses material that appears to be privileged") and on the ABA Formal Opinion
6  94-382.  However, State Fund and the ABA Formal Opinion deal with a common
7  occurrence – the *inadvertent disclosure* by counsel of a couple privileged documents
8  – *not the wholesale theft of legal files from an opposing counsel's law firm.*

9    Defendants must not be permitted to benefit *in any respect* from the "fruits"
10 of this outrageous theft.[9]  *See Sackman v. Ligget Group, Inc.*, 173 F.R.D. 358, 365
11 (E.D.N.Y. 1997) (prohibiting the deposition testimony of an expert who would base
12 his opinion on a privileged document that was stolen and disseminated to the
13 public); *Cooke v. Superior Court*, 147 Cal. Rptr. 915 (Cal. Ct. App. 1978) (evidence
14 excluded in divorce action when receipt of confidential information about husband,
15 including confidential communications between husband and his lawyer, was
16 purloined and passed to lawyer by husband's unfaithful agent without complicity of
17 receiving lawyer); 159 *American Law Reports Federal* 153 (Courts "will not
18 condone conduct which is condemned for public policy reasons, even if the result of
19 judicial action is to harm the innocent recipient of the unlawfully disclosed
20 information.  This is especially so when the information is released as a result of a
21 crime"); *Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243, 1246 (D. Md.
22 1995)(court refused to consider records stolen by a party's former employee); *Smith*
23

24 1995)(privilege deemed not waived as to document stolen by fired employee); *see
25 also Smith v. Armour Pharmaceutical Co.*, 838 F. Supp. 1573, 1576 (S.D.Fla. 1993).

26 [9] The exclusionary "fruit of the poisonous tree" doctrine, though applicable to
27 criminal cases is analogous.  The exclusionary rule extends not only to primary
28 evidence obtained illegally, but also evidence later discovered and found to be
derivative of an illegality or "fruit of the poisonous tree." *Nardone v. United States*,
308 U.S. 338, 341 (1939).

{F0029699.1 }

35

Ex J - 137



1  *v. Armour Pharmaceutical Co.*, 838 F. Supp. 1573, 1576 (S.D. Fla. 1993)(court

2  denied use of memorandum widely distributed after its *unauthorized* release); *In re*

3  *Grand Jury Proceedings Involving Berkley & Co., Inc.*, 466 F. Supp. 863, 869 (D.

4  Minn. 1979)(court precluded documents retained without authorization by a

5  terminated employee); *Kenyatta v. Kelly*, 375 F. Supp. 1175 (E.D. Pa. 1974) (court

6  precluded documents stolen by a third party from defendants, even though the

7  documents had already been produced by defendants to the plaintiffs).

8       Here, Defendants conduct regarding the stolen documents, aimed at

9  exploiting what they view as a "twist of fortune," is highly improper. (*See* Sec. III.

10  Defendants' Contentions at 1:3-6). They did not immediately notify Plaintiffs upon

11  receipt of the stolen documents, nor did they honor Plaintiffs' wishes with respect

12  thereto. While Defendants go to great lengths to cleanse their conduct and create

13  the appearance of propriety, their improper objectives and the crime at the root of

14  this matter color their actions and elicit many uneasy questions that are the subject

15  of an ongoing investigation.

16       Defendants and Smith highlight the special detailed attention and care

17  allegedly given to the stolen documents: first, legal research; second, a carefully

18  circumscribed review, and third, the hiring of an alleged "neutral" to hold *all* the

19  documents. Yet, despite this studious attention and Defendants' astonishing receipt

20  in the middle of a heated lawsuit (by three high ranking Warner executives, two of

21  which were legal counsel) of documents plainly from the files of opposing counsel,

22  Warner claims not to have kept *any* of the three or more envelopes in which the

23  delivery was made and claims to have *no corroborating record whatsoever of the*

24  *date of the delivery* (*e.g.*, Studio mailroom, security or executive office logs or

25  notes). This is all the more incredulous as Studios and attorneys commonly keep

26  records of such deliveries.

27       Plaintiffs' question the date Defendants claim to have "anonymously"

28  received the stolen documents. Defendants claim that the documents were first

{F0029699.1 }

36

Ex J - 138

1 | received on June 28, 2006. Smith Decl., ¶ 2. Yet, the anonymous cover letter [10]

2 | referred to by Smith, which enclosed the documents, ends by stating "consider this

3 | an early Christmas present." Toberoff Decl., ¶ 27. It is hard to imagine that the

4 | sender would refer to Christmas *in June.*

5 |      Notably absent is a declaration from Warner's General Counsel John

6 | Schulman ("Schulman"), who directly received the stolen documents, testifying as

7 | to the date of his receipt. Smith Decl., ¶ 2. Instead, Defendants present Smith's

8 | declaration offering pure hearsay that "Schulman advised me that... [the documents]

9 | had arrived from an anonymous source at his office that day [June 28, 2006]."

10 | Smith Decl., ¶ 2.

11 |      Plaintiffs' counsel believe that an attorney formerly employed by Plaintiff's

12 | counsel for a short term lifted the documents from the firm's legal files while

13 | employed and thereafter furnished the documents to Warner. Toberoff Decl., ¶ 25.

14 | This attorney was terminated in November, 2005. *Id.* at ¶26. After this attorney

15 | was terminated, he contacted Plaintiffs and other Toberoff clients in December,

16 | 2005 and tried to convince them to retain him and to terminate Toberoff by falsely

17 | disparaging Toberoff and by offering a reduced contingent fee. *Id.* By all accounts,

18 | the attorney's motives were financial. He was rejected by Plaintiffs and Toberoff's

19 | other clients in December, 2005. *Id.* It is believed that soon thereafter he

20 | communicated with Warner and disclosed the privileged documents he had stolen

21 | from Toberoff's legal files – hence, his reference to an "early Christmas present."

22 |      Questions remain and an investigation is still underway regarding this

23 | disgraceful event. For instance, we do not yet know the full extent of this

24 | attorney's communications with Warner.

25 |

26 | [10] This letter by a disgruntled and misguided attorney formerly employed by

27 | Plaintiff's counsel was not attached by Defendants and is not attached by Plaintiffs because it is defamatory, potentially violates the attorney-client privilege and work

28 | product doctrine and should not be further published through the public record of this action. Toberoff Decl., ¶ 27.



1      It is believed that Warner may have well received their "early Christmas
2   present" in December, 2005, and waited, deciding whether or when to disclose this
3   very troubling matter.  Moreover, even if Defendants received the stolen documents
4   in June, 2006, they did not bring this to Plaintiffs' immediate attention, as even
5   "inadvertent disclosure" case-law dictates.  *See State Fund*, 70 Cal. App. 4th 644 at
6   656.   They belatedly mention the "anonymous" receipt of documents in a letter
7   dated July 5, 2006 and then in only the vaguest of terms as "certain documents."
8   Bergman Decl., Ex. D.  Plaintiffs did not learn that the documents were *their*
9   documents, until July 11, 2006 (two weeks after Defendants purportedly received
10   them) and only when Plaintiffs' counsel was able to press Defendants as to the
11   nature of the "certain documents" referred to by them.  Toberoff Decl., ¶ 8.
12      Defendants refer to Quinn as a "neutral," and seek to purify their objectives
13   through his stature as former head of the Los Angeles Bar Association; but it is clear
14   that Quinn and his law firm have been *retained* by Warner to "advise" it with
15   respect to the stolen documents.  Bergman Decl., Ex. D.  Unsurprisingly, the
16   protocol suggested in Quinn's July 5, 2006 letter (and subsequent letters) regarding
17   the documents favor or protect Warner's interests.  *Id.*  Quinn, to his credit, never
18   presented himself as a "neutral."   Toberoff Decl., ¶ 8.
19      After Quinn's July 5, 2006 letter, on July 6, like clockwork, Defendants' lead
20   counsel, Bergman, wrote to this Court *ex parte* in an effort to place the stolen
21   documents before the judges adjudicating this case. Id., Ex. D.  Tellingly, neither,
22   Quinn, nor Bergman, state in their letters to Plaintiffs and the Court, respectively,
23   what at this point was blatantly obvious to Defendants – *the documents had been*
24   *stolen from the law offices of Plaintiffs' counsel.*
25      Only after Plaintiffs demanded the return of the stolen documents did
26   Defendants finally return *bates stamped copies* to them to Plaintiffs' counsel on July
27   18, 2006, *three weeks* after their purported receipt on June 28, 2006, and six months
28

{F0029699.1 }

38

Ex J - 140



1  after "Christmas." *Id.*, ¶ 10. However, Defendants insisted on retaining the

2  originals of the stolen documents. Bergman Decl., Ex. F.

3      Even by its own account, Warner's conduct was improper. Upon receipt of

4  the stolen documents, Warner should have *immediately* contacted Plaintiffs' counsel

5  and returned all copies of the stolen files to him upon his request. *Gomez v. Vernon,*

6  255 F3d 1118, 1131-1132 (9th Cir. 2001); *State Fund*, 70 Cal. App. 4th 644 at 656.

7  Instead, Defendants waited a full week to notify Plaintiffs' counsel and then, only in

8  the vaguest of terms, and after *three weeks* provided Plaintiffs with alleged copies of

9  the documents, while retaining the original of the stolen documents, though the

10 majority of the documents were clearly privileged.

11     Warner also improperly read and analyzed the stolen documents. Defendants

12 claim that they did not read or review the documents *in any detail*; and yet Warner's

13 Senior Litigation Counsel, Smith, admits reviewing the documents *twice* (once

14 outside Schulman's office and again, at his home) and to segregating the documents

15 into three categories – clearly "privileged," potentially privileged ("?") and "non-

16 privileged." Smith Decl. ¶¶ 3, 8. It is logically impossible to have performed this

17 detailed segregation without reviewing and analyzing *the substance* of the stolen

18 documents, which was improper. *Gomez v. Vernon*, 255 F3d 1118, 1132 (9th Cir.

19 2001)("The confidential status of the letters was facially evident – they were on

20 legal letterhead easily identifiable as that of opposing counsel").

21     Defendants' rely on *Aerojet-General Corp. v. Transport Indemnity Ins.,* 18

22 Cal. App. 4th 996 (1993) for the purported principle that a party has no duty to

23 inform opposing counsel of the *inadvertent* disclosure of privileged and

24 unprivileged documents, but instead can use any *unprivileged* information contained

25 in the document advantageous to their case. Firstly, *Aerojet* has been roundly

26 criticized and its holding severely curtailed by *State Fund*, 70 Cal. App. 4th at 656

27 (1999). *State Fund* imposes the exact opposite requirement: an ethical duty

28 *immediately* to disclose inadvertently received privileged information to the other

1  side. [11] *Id.* Secondly, *Aerojet* like *State Fund* concerns the *inadvertent* disclosure of

2  documents by opposing counsel not the deliberate theft of documents from opposing

3  counsel.

4      Even by their own account Defendants contravened *State Fund,* (applicable to

5  an innocent *inadvertent* disclosure) by failing to contact Plaintiffs' counsel for

6  several days despite the *obvious* appearance that a large number of privileged

7  documents had been stolen from Plaintiffs' legal files.  Instead, they carefully

8  reviewed the documents and segregated them into separate "privileged," "non

9  privileged" and even "?" piles.  The delay appears to have been deliberate – to allow

10 Defendants' in-house counsel to devise a strategy to maximize their chances of

11 benefiting from what they and their outside counsel view herein as a "twist of

12 [good] fortune."  Their efforts must not be rewarded.

13 **V.    DEFENDANTS' CONCLUSION**

14     For the reasons set forth herein, Defendants respectfully request that their

15 motion be granted.

16 **VI.    PLAINTIFFS' CONCLUSION**

17     For the reasons set forth herein, Plaintiffs respectfully request that

18 Defendants' motion to compel be denied in its entirety; that Defendants be ordered

19 to return all originals and copies of the stolen documents to Plaintiffs forthwith, and

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27 [11] More precisely, an attorney who inadvertently receives plainly privileged
   documents *must refrain from examining the materials any more than is necessary to*
28 *determine that they are privileged,* and must immediately notify the sender. *Id.*

Ex J - 142




1    that Defendants be barred from using the stolen documents in any fashion in this

2    litigation.

3    DATED: March 26 2007      WEISSMANN WOLFF BERGMAN
                                    COLEMAN GRODIN & EVALL LLP

4                                      FROSS ZELNICK LEHRMAN & ZISSU, P.C.

5                                  -and-

6                               PERKINS LAW OFFICE, P.C.

7

8                               By: _____
                                    Michael Bergman

9

10                           Attorneys for Defendants and Counterclaimant

    DATED: March 25, 2007      LAW OFFICES OF MARC TOBEROFF, P.C.

11

12                               By: _____

13                                     Marc Toberoff

14                           Attorneys for Plaintiffs/Counterclaim-Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{F0016236.1 }

# EXHIBIT K

CONFORMED COPY

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819

Attorneys for Defendants and Counterclaimant

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON, Plaintiffs, vs. WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, Defendants. | Case Nos. [Consolidated for Discovery]: CV 04-8400 SGL (RZx) CV 04-8776 SGL (RZx) |
| JOANNE SIEGEL and LAURA SIEGEL LARSON, Plaintiffs, vs. TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10, Defendants. | Hon. Steven G. Larson, U.S.D.J. Hon. Ralph Zarefsky, U.S.M.J. |
| AND RELATED COUNTERCLAIMS | |

**DECLARATION OF WAYNE M. SMITH IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WHISTLE-BLOWER DOCUMENTS**

**DISCOVERY MATTER LOCAL RULE 37**

Time: 10:00 a.m.
Date: April 16, 2007
Courtroom: 540
Mag. Judge Ralph Zarefsky
Discovery Cutoff: Nov. 17, 2006

{F0010672.1 }

1    I, Wayne M. Smith, declare and state as follows:

2        1.    I am an attorney, admitted to practice before the Supreme Court of the

3    State of California and before this Court, and am employed by defendant Warner

4    Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and

5    Chief Patent Counsel. I submit this declaration in support of Defendants' Motion to

6    Compel Production of Whistle-blower Documents. I have personal knowledge of

7    the facts contained within this declaration, and, if called upon as a witness, I could

8    and would testify competently thereto.

9        2.    During the afternoon of June 28, 2006, I received a telephone call from

10   John A. Schulman, General Counsel of Warner Bros., who asked that I come to his

11   office. Upon arriving at his office, Mr. Schulman advised me that a set of

12   documents (the "Superman Documents") addressed to him and apparently relating

13   to the Siegel litigation had arrived from an anonymous source at his office that day.

14   Mr. Schulman informed me that the cover letter contained with the documents

15   indicated that other executives at Warner Bros. may have received the same set of

16   documents, and that he had called the offices of those executives to see if they had

17   received anything. He further advised me that he had asked those executives to send

18   the documents to his office without reviewing them, and that one set of documents

19   had already been delivered to him. Mr. Schulman handed me the stack

20   (approximately an inch high) of Superman Documents that he had received and

21   asked me to wait outside his office while he completed a meeting, after which we

22   would discuss them. The stack did not include any envelope or packaging in which

23   the documents may have arrived. This was not unusual as it has been my experience

24   that the practice of Mr. Schulman's office staff is to dispose of envelopes and

25   packaging upon opening mail.

26       3.    While I was waiting, I looked at what might be characterized as the

27   "cover letter" that came with the Superman Documents. The cover letter, which

28

[F00106723]

1

1   was not signed, alleged various types of ethical misconduct on the part of the

2   Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also

3   asserted ethical misconduct – violating the terms of a confidentiality agreement by

4   leaking settlement information to the press – in connection with another litigated

5   matter where Plaintiffs' counsel had also represented a party adverse to Warner

6   Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's

7   misconduct. The letter also referenced the documents enclosed, providing an

8   overview of their contents and their connection to Plaintiffs' counsel's alleged

9   wrongdoing. I also thumbed through the Superman Documents contained with the

10  letter, but did not read any of them in detail. Meanwhile, an assistant for another

11  Warner Bros. executive delivered what appeared to be another set of Superman

12  Documents to Mr. Schulman's office. I did not observe that any of the three sets of

13  Superman Documents – (i) the set Mr. Schulman handed to me; (ii) the other set in

14  his office; or (iii) the set that was delivered while I was waiting outside his office –

15  was contained in an envelope or other packaging.

16      4.      I then met with Mr. Schulman. I told Mr. Schulman that based on the

17  contents of the cover letter and my brief thumbing through the documents, it

18  appeared that certain of the documents in the package were privileged. I said that

19  before I looked at the documents I wanted to review the case law in the area to

20  determine what level of review, if any, of the Superman Documents was

21  appropriate. Mr. Schulman agreed with this approach, gave me one set of the

22  documents, retained the other two sets that he had received, and advised me that he

23  had only looked at the cover letter that came with the documents and would not

24  review the documents at all.

25      5.      I returned to my office with the set of documents. I initially went on

26  the internet and performed a Google search relating to the issue of what obligations,

27  if any, governed the handling of the Superman Documents we had received. My

28  initial search located an article from the June 2006 Los Angeles Lawyer magazine

{F0010572.3}                              2





1  entitled "On the Receiving End," by Kurt L. Schmalz (a true and correct copy of

2  which is attached as Exhibit "A" hereto) which was posted on the Los Angeles

3  County Bar Association web site.  The article concerns the obligations of lawyers

4  who unwittingly receive privileged documents from opposing counsel's files and

5  discusses various California cases that have dealt with the issue, including the *Rico*

6  *v. Mitsubishi Motors Corporation* case pending before the California Supreme

7  Court.

8       6.    I read the Schmalz article and then downloaded and studied the three

9  principal California cases it identifies:  *Aerojet-General Corporation v. Transport*

10  *Indemnity Insurance*, 18 Cal.App.4th 996 (1993), *State Compensation Insurance*

11  *Fund v. WPS, Inc. (State Fund)*, 70 Cal.App.4th 644 (1999) and the Court of Appeal

12  decision in the case under review, *Rico v. Mitsubishi Motors Corporation*, 116

13  Cal.App.4th 51 (2004) (*review granted* June 9, 2004).  Based on my review of the

14  relevant California authorities, it appeared that a conservative approach to handling

15  the Superman Documents was to follow the procedure laid out by the Court in *State*

16  *Fund*, specifically:  (i) to review each document but to cease the review once it

17  became apparent that the document was privileged; (ii) to contact opposing counsel

18  and advise that the documents have been received; and (iii) to refrain from using any

19  information in the documents until there was either an agreement with opposing

20  counsel, or the court had determined the documents' disposition.

21       7.    Following my review of the law, I called Mr. Schulman and advised

22  him of the results of my research.  I said that I intended to review the Superman

23  Documents in accordance with *State Fund*.  At Mr. Schulman's request I also sent

24  copies of the three key cases and the article to Mr. Schulman's office.

25       8.    That evening, I took the Superman Documents home with me and spent

26  approximately a half hour reviewing them.  Certain of the documents – such as

27  executed agreements relating to Superman and correspondence between the

28  Plaintiffs and non-lawyer third parties – did not appear subject to any applicable

[F0010572.3]                              3

1   privilege. As I was going through the documents I placed them into three piles:  (i)
2   "non-privileged," (ii) "privileged," and (iii) "?" (where either I could not tell
3   whether it was privileged or I believed the document covered subject matter where
4   privilege may have been waived in the case, as explained below).  In reviewing each
5   document, where it first appeared to me that it was entirely privileged, I ceased
6   reading it, placed the document in the "privileged" pile and did not look at it further.
7   After going through the documents, I placed a post-it note on the top of each pile
8   (indicating "privileged," "non-privileged," or "?"), and fastened each pile together.
9   I did not look at the documents further.  Because I did not conduct a detailed review
10  of the Superman Documents, and because of the passage of time, I do not recall
11  their specific contents. I do, however, recall generally the subject matter of certain
12  of the documents.

13       9.     The non-privileged pile was the second largest of the three.  It
14  contained what appeared to be agreements between, *inter alia,* the Siegels and/or
15  Shusters and various entities, as well as correspondence concerning the interest in
16  Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother,
17  Michael Siegel.  To my knowledge, this last category of documents has never been
18  produced in the litigation.

19       10.    The "?" pile was the smallest.  I believe that one or two of the
20  documents in this category potentially fall within the scope of a privilege waiver
21  based Plaintiffs' reliance on an affirmative defense that their predecessor counsel
22  did not have authority to accept a settlement proposal made by Defendants.
23  Defendants position on this privilege waiver is the subject of a separate Motion to
24  Compel filed concurrently herewith.

25       11.    The pile of documents I labeled "privileged" was the largest.
26       12.    Even from the brief review made, it appeared to me that, with the
27  exception of the cover letter (which also addressed the other litigation involving
28  Plaintiffs' counsel), all of the Superman Documents related to the subject matter of

{F0010672.1}

4



1    the instant litigation and were responsive to document requests the Defendants had

2    previously served on Plaintiffs. However, it did not appear to me at the time that

3    any of the "non-privileged" documents had been produced in the litigation.

4    Moreover, at least some (and perhaps virtually all) of the privileged documents, as

5    well as those in the "?" pile, were, to the best of my knowledge, never identified in

6    any privilege log served by the Plaintiffs.

7        13.    The next morning, June 29, 2006, I returned with the Superman

8    Documents to see Mr. Schulman in his office. Mr. Schulman and I discussed having

9    a neutral third party hold the documents pending either the parties' agreement as to

10    their disposition or order of the Court. We decided to ask John Quinn, then with

11    Arnold & Porter, and former president of the Los Angeles County Bar Association,

12    to act as the neutral based on his reputation and legal ethics experience. He agreed

13    and the following morning, June 30, 2006, the three sets of the Superman

14    Documents, including the set that I had categorized, were handed over to Mr. Quinn.

15    Out of an abundance of caution we handed over *all* the documents to Mr. Quinn, not

16    just those that were clearly or potentially privileged. Further, we have not shared

17    the contents of the Superman Documents with any of the outside counsel

18    representing the Defendants in this action, nor have we used the contents of the

19    documents in the litigation.

20        I declare under penalty of perjury of the laws of the United States of America

21    that the foregoing is true and correct.

22        Dated this 26th day of March 2007 at Burbank, California.

23

24

25                      Wayne M. Smith

26

27

28

{F0010672.4 }

5

Ex K - 149

# EXHIBIT L

1 | Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
2 | LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
3 | Los Angeles, CA 90067
Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101

5 | Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

6 |

RECEIVED
BUT NOT FILED

MAR 26 2007

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT DIVISION    DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9 | JOANNE SIEGEL, an individual; and
10 | LAURA SIEGEL LARSON, an
individual,
11 |
        Plaintiffs,
12 |   vs.

13 | TIME WARNER INC., a corporation;
14 | WARNER COMMUNICATIONS
INC., a corporation; WARNER
15 | BROS. ENTERTAINMENT INC., a
corporation; WARNER BROS.
16 | TELEVISION PRODUCTION INC.,
17 | a corporation; DC COMICS, a general
18 | partnership; and DOES 1-10,

19 |        Defendants.

20 | DC COMICS,

21 |        Counterclaimant,
22 |   vs.

23 | JOANNE SIEGEL, an individual; and
24 | LAURA SIEGEL LARSON, an
25 | individual,

26 |        Counterclaim Defendants.
27 |
28 |

Case Nos.:
CV 04-08400 SGL (RZx)
CV 04-08776 SGL (RZx)

[Hon. Stephen G. Larson, U.S.D.J.]
[Hon. Ralph Zaresky, U.S.M.J.]

**DECLARATION OF MARC
TOBEROFF IN OPPOSITION TO
DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF
WHISTLE BLOWER
DOCUMENTS**

**DISCOVERY MATTER
LOCAL RULE 37**

Date:   April 16, 2007
Time:   10:00 a.m.
Place:  Courtroom 540
Mag. Judge Ralph Zarefsky
Discovery Cutoff: Nov. 17, 2006

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

I, Marc Toberoff, declare as follows:

1.    I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration in opposition to defendants' ("Defendants") motion to compel production of purported "whistle-blower" documents. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    On February 15, 2006, Plaintiffs moved for partial summary adjudication that their statutory "Superboy" termination is valid and that Plaintiffs thereby recaptured Siegel's "Superboy" copyright. Defendants cross-moved for summary judgment claiming the "Superboy" termination was invalid based in large part on the same purported claims and defenses asserted with respect to "Superman." On March 23, 2006, the Court granted Plaintiffs' motion in its entirety and denied Defendants' motion in its entirety. On March 24, 2006, Plaintiffs moved to have their order certified for appeal, which motion was denied by the Court.

3.    Attached hereto as Exhibit "A" is a true and correct copy of this Court's order dated August 18, 2006 denying Defendants' motion to compel which alleged that Plaintiffs purportedly had waived the attorney-client privilege.

4.    Attached hereto as Exhibit "B" is a true and correct copy of this Court's order dated September 25, 2006 denying Defendants' motion for reconsideration of the aforesaid August 18, 2006 order.

5.    Attached hereto as Exhibit "C" is a true and correct copy of this Court's order dated November 7, 2006 denying Defendants' motion for compel the re-deposition of each of the Plaintiffs.

6.    Attached hereto as Exhibit "D" is a true and correct copy of Michael Bergman's July 6, 2006 letter to the Court.

1

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

7.    Attached hereto as Exhibit "E" is a true and correct copy of this Court's July 6, 2006 minute order.

8.    On July 11, 2006 I spoke telephonically with John J. Quinn ("Quinn") of the law firm Arnold & Porter, LLP regarding his July 5, 2006 letter to me (*see* Declaration of Michael Bergman ("Bergman Decl."), Ex. D.). At no time did Quinn present himself as a "neutral" and at all times he appeared to me to be acting on behalf of Warner Bros. I inquired as to the nature of the documents vaguely referred to in Quinn's July 5, 2006 letter and was informed for the first time that the documents apparently came from my own legal files. I demanded that the documents be returned immediately. I further rejected the "protocol" outlined in Quinn's July 5 letter. I suggested instead that an independent print shop copy and bate stamp all the documents; that Arnold and Porter be provided with this bates stamp number range, but not retain the stolen documents and that *all* of the documents, including defendant Warner Bros' "originals,' be returned to me immediately.

9.    By letter dated July 13, 2006 (see Bergman Decl., Ex. E) Quinn announced, that he would have the documents bates stamped by his office, send a copy of the bates stamped documents to me, and retain a bates stamped set and the originals, contrary to my wishes.

10.    On July 18, 2006, Quinn delivered three sets of copies of the stolen documents to my offices. These sets had been bates stamped. The "originals" have never been returned to my offices or to Plaintiffs.

11.    Attached hereto as Exhibit "F" is a true and correct copy of my July 19, 2006 letter to Quinn.

12.    Attached hereto as Exhibit "G" is a true and correct copy of a letter dated July 20, 2006 from Defendants' other counsel, Michael Bergman ("Bergman"), to Quinn.

13.    Attached hereto as Exhibit "H" is a true and correct copy of a letter dated July 24, 2006 from Quinn to me.

2

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

1     14.     Attached hereto as Exhibit "I" is a true and correct copy of a letter dated

2     July 26, 2007 from me to Quinn.

3     15.     Attached hereto as Exhibit "J" is a true and correct copy of a letter dated

4     July 27, 2006 from Bergman to me.

5     16.     Plaintiffs produced documents in this case on September 29, 2005 and

6     supplemented this production on October 6, 2006, November 6, 2006 and November

7     17, 2006.  Attached hereto as composite Exhibit "K" are true and correct copies of

8     the September 29, October 6, November 6 and November 17, 2006 cover letters

9     accompanying Plaintiffs' document production.

10     17.     Attached hereto as Exhibit "L" is a true and correct copy of Plaintiffs'

11     July 20, 2006 privilege log.

12     18.     Attached hereto as composite Exhibit "M" are true and correct copies of

13     Plaintiffs' supplemental privilege logs served on September 29, 2006.

14     19.     Documents were produced by third parties Jean Peavy and Warren Peary

15     (the "Shusters") on July 18, August 11 and August 14, 2006 in response to

16     Defendants' subpoena.  The Shusters served a privilege log on August 11, 2006.

17     Shusters served a supplemented privilege log on October 16, 2006.  Attached hereto

18     as Exhibit "N" is a true and correct copy of the Shuster's October 16, 2006 privilege

19     log.

20     20.     On behalf of Don Bulson, the former attorney of Laura Siegel Larson's

21     stepbrother, Michael Siegel, I served a privilege log on October 23, 2006 in response

22     to Defendants' subpoena.  Attached hereto as Exhibit "O" is a true and correct copy

23     of October 23, 2006 privilege log.

24     21.     Third party IPW, LLC produced documents on November 15, 2006 in

25     response to Defendants' subpoena.  Third party Pacific Pictures Corporation

26     produced documents on November 15, 2006 in response to Defendants' subpoena.

27     Attached hereto as Exhibit "P" is a November 15, 2006 letter from my office to

28     Defendants' counsel concerning their respective document production.

3

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

22.    I have reviewed the stolen documents and compared them to my firm's legal files. I found that all but two non-privileged documents in Plaintiffs' legal files had long ago been produced or listed by Plaintiffs in a privilege log. The documents, consisting of two letters from Plaintiff Joanne Siegel to DC Comics' executive Paul Levitz although already in Defendants' possession, have recently been produced. I also cross-referenced two privileged e-mail communications between Plaintiffs and me dated after the commencement of this action which were not listed in Plaintiffs' privilege logs because the parties to this action have agreed not to list post-complaint attorney-client communications on their respective privilege logs.

23.    Additionally, I searched the files of other persons or entities which my firm represents that have been subpoenaed in this case, in search of any stolen documents that had not either been produced or listed in a privilege log, even though this motion to compel is only directed at Plaintiffs. As a result of this search I found in the files of IPW, LLC, one IP Worldwide fax cover sheet having little relevance to this action, which I nonetheless also recently produced to Defendants.

24.    I also re-searched the files of Jean Peavy, Warren Peary, and the Estate of Joe Schuster (the "Shusters"), cross-referencing the stolen documents, and found three irrelevant, but non-privileged documents, regarding the probating of Joe Shuster's Estate, that I believe had not been previously produced. I therefore also recently produced these documents. In this search I also found one privileged document from the Shuster files, again concerning probate, and on the Shusters' behalf I listed this document on a supplemental privilege log which I recently provided to Defendants.

25.    As a result of my law firm's ongoing investigation, I believe that the documents to which this motion applies were stolen from my law firm's files by a disgruntled former *attorney* employed by the firm who thereafter furnished the documents to Warner Bros. under circumstances of which I am not yet aware. The

4

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

1  attorney is not named by me herein so as not to jeopardize my firm's ongoing

2  investigation or that of the authorities.

3       26.    This attorney/employee was terminated by my firm in November, 2005.

4  Our investigation has revealed that in late November and early December, 2005, after

5  the attorney was terminated, he contacted Plaintiffs and another client of my firm and

6  tried to convince them to terminate the firm, and to retain him instead, by falsely

7  disparaging me and by offering to work for a reduced fee.  I am advised by Plaintiffs

8  and my other client that they both rejected this attorney's overtures in early

9  December, 2005.

10       27.    On July 18, 2006, when Arnold & Porter furnished me with bates

11  stamped copies of the stolen documents they also furnished me with a copy of an

12  allegedly undated and anonymous cover letter to Warner Bros. purporting to enclose

13  the stolen documents ("Cover Letter").  The Cover Letter was not attached by

14  Defendants and is not attached by Plaintiffs because it is defamatory, in other respects

15  potentially violates the attorney-client privilege and work product doctrine, and

16  should not be further published through the public record of this action.  The Cover

17  Letter ends by stating to Warner Bros.: "consider this an early Christmas present."

18       I declare under penalty of perjury of the laws of the United States of America

19  that the foregoing is true and correct.

20       Executed on March 23, 2007 in Los Angeles, California.

21

22

23                                         Marc Toberoff

24

25

26

27

28

5

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

# EXHIBIT M

## PRIVILEGE LOG

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s)r | Document Type | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 1 | 11/23/2001 | Mark Peary & Jean Peavy | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 2 | 6/13/2003 | Atty John Petiker | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 3 | 6/30/2003 | Atty Marc Toberoff & Jean Peavy | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 4 | 7/8/2003 | Atty Marc Toberoff | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 5 | 7/10/2003 | Jean Peavy & Mark Peary | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 6 | 7/15/2003 | Mark Peary | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 7 | 7/16/2003 | Atty John Petiker | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 8 | 7/21/2003 | Atty John Petiker | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 9 | 8/7/2003 | Atty Marc Toberoff | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 10 | 8/25/2003 | Mark Peary | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 11 | 8/15/2003 | Mark Peary | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |

| 12 | 10/10/2003 | Mark Peary & Jean Peary | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 13 | 10/27/2003 | Mark Peary | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 14 | 8/25/2005 | Mark Peary | Atty John Petiker | Letter | Atty/Client | Plaintiffs' Counsel |
| 15 | 4/11/2006 | Atty Marc Toberoff | Jean Peavy | Letter | Atty/Client | Plaintiffs' Counsel |
| 16 | 6/8/2006 | Atty Marc Toberoff | Mark Peary | E-mail | Atty/Client | Plaintiffs' Counsel |
| 17 | 6/9/2006 | Atty Marc Toberoff | Mark Peary | E-mail | Atty/Client | Plaintiffs' Counsel |
| 18 | 7/11/2006 | Atty Marc Toberoff | Mark Peary | Letter | Atty/Client | Plaintiffs' Counsel |
| 19 | 00/00/00 | Atty Marc Toberoff | Mark Peary | Letter | Atty/Client | Plaintiffs' Counsel |

Ex M - 157