# EXHIBIT N



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


JOANNE SIEGEL, ET AL,        ) CASE NO(s): CV 04-8400-SGL(RZx)
                              )           CV 04-8776-SGL(RZx)
           Plaintiffs,    )
                              )         CIVIL
    vs.                        )
                              )  Los Angeles, California
TIME WARNER, INC, ET AL,     )  Monday, April 30, 2007
                              )  (10:45 a.m. to 11:28 a.m.)
           Defendants.    )


   1)   DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
     AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
                  AT DEPOSITION;

   2)   DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
     AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
               RELATING TO AUTHORITY;

     3)   DEFENDANTS' MOTION TO COMPEL PRODUCTION
           OF WHISTLE-BLOWER DOCUMENTS;

     4)   PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
    ·TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES


        BEFORE THE HONORABLE RALPH ZAREFSKY,
          UNITED STATES MAGISTRATE JUDGE


EXCEPTIONAL REPORTING SERVICES, INC
14493 S PADRE ISLAND DRIVE
#A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


JOANNE SIEGEL, ET AL,     ) CASE NO(s): CV 04-8400-SGL(RZx)
                              )           CV 04-8776-SGL(RZx)
           Plaintiffs,    )
                              )        CIVIL
     vs.                   )
                              )   Los Angeles, California
TIME WARNER, INC, ET AL,   )   Monday, April 30, 2007
                              )  (10:45 a.m. to 11:28 a.m.)
            Defendants.   )


1)   DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
AT DEPOSITION;

2)   DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
RELATING TO AUTHORITY;

3)   DEFENDANTS' MOTION TO COMPEL PRODUCTION
OF WHISTLE-BLOWER DOCUMENTS;

4)  PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES


BEFORE THE HONORABLE RALPH ZAREFSKY,
UNITED STATES MAGISTRATE JUDGE


Appearances:  (See next page)


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

APPEARANCES FOR:


Plaintiffs:                    MARC TOBEROFF, ESQ
                               1999 Avenue of the Stars
                               Suite 1540
                               Los Angeles, CA 90067

Defendants:                    MICHAEL BERGMAN, ESQ
                               Weissmann Wolff Bergman, et al.
                               9665 Wilshire Blvd., Suite 900
                               Beverly Hills, CA 90212

Court Reporter:                Recorded; FTR

Courtroom Deputy:              Ilene Bernal

Transcribed by:                Exceptional Reporting Services, Inc.
                               14493 S. Padre Island Drive
                               Suite A-400
                               Corpus Christi, TX 78418-5940
                               361 949-2988

Ex N - 160

3

1    <u>Los Angeles, California; Monday, April 30, 2007; 10:45 a.m.</u>

2                    (Call to Order)

3          THE COURT:  Let's call the next case.

4          THE CLERK:  Item number five.  Case Number CV-04-

5    8400-SGL-RZX, and related case, CV04-8776-SGL-RZX; *Joanne*

6    *Siegel, et al. versus Time Warner, Inc., et al.*

7          Counsel, please make your appearances.

8          MR. TOBEROFF:  Good morning, your Honor.  Marc

9    Toberoff for the plaintiffs.

10         THE COURT:  Good morning.

11         MR. BERGMAN:  Good morning, your Honor.  Michael

12   Bergman for the defendants.

13         THE COURT:  Good morning.  All right, we've got four

14   motions on.  Let's start with Plaintiff's Motion to Compel the

15   Answers to Interrogatories.  I read the materials.  Don't need

16   to repeat anything.

17         Do you wish to be heard, Mr. Toberoff?

18         MR. TOBEROFF:  Yes, your Honor.  I just want to

19   highlight a couple points if I may.  Essentially, when I

20   drafted these four Interrogatories on behalf of plaintiffs, I

21   did so with the *Safeco* case in mind and with Federal Rule of

22   Civil Procedure 33(a).  Essentially, each party, each

23   plaintiff, asked one question to each of the defendants.

24         THE COURT:  I read them.

25         MR. TOBEROFF:  Okay.

EXCEPTIONAL REPORTING SERVICES, INC

Ex N - 161

4

1          THE COURT:  I really have -

2          MR. TOBEROFF:  All right.

3          THE COURT:  - read this material.

4          MR. TOBEROFF:  Okay, thank you.

5          So, what I do want to point out is that *Safeco*, which

6    is now being used by the defendants to claim that, essentially,

7    each single Interrogatory pertaining to a single RFA and asking

8    for the basis of the RFA is actually three Interrogatories,

9    does not stand for that proposition.

10         In *Safeco*, the Interrogatory in question was already

11   divided into three Interrogatories, so the Court never

12   addressed the question of whether the Interrogatory consists of

13   three subparts, which is the question here.  Instead, the Court

14   simply said that when an Interrogatory is tied to a Request for

15   Admission response, then that counts for one Interrogatory.

16         And the Court even went so far to say that sometimes

17   an Interrogatory focusing on multiple RFAs can stand for one

18   Interrogatory as opposed to multiple Interrogatories if the

19   RFAs are related to a common theme and logically connected to

20   one another.  So, actually, *Safeco* has language, as we set

21   forth in our motion, that very much supports our motion.

22         And finally, defendants' stonewalling response is

23   evidenced by the fact that after we served these

24   Interrogatories, they used this as an excuse not to answer the

25   Interrogatories, and we've had major problems with their

EXCEPTIONAL REPORTING SERVICES, INC

5

1    discovery, their failure to respond to our discovery, which is

2    the subject now of multiple motions which we would like to have

3    avoided.

4          THE COURT:  All right, thank you.

5          Mr. Bergman?

6          MR. BERGMAN:  Thank you, your Honor.

7          Your Honor, on that last point I would like to note

8    that when the defendants responded to these Interrogatories, we

9    offered to do what Mr. Toberoff had offered to do when the

10   tables were turned, and that is to have him select the

11   Interrogatories that he wanted to have answered within the 25

12   limitation of Rule 33.

13         I'd just like to emphasize, your Honor, that the

14   problem with these Interrogatories begins with the Request for

15   Admission on which they're based.  As we've quoted in our

16   moving papers, there are Requests for Admission that ask us to

17   admit, for example -

18         THE COURT:  I read this, Mr. Bergman.  You don't need

19   to reiterate it.

20         MR. BERGMAN:  Okay.  The other point I would like to

21   make, Judge, is that these are not logically subsumed within

22   each other; that there is no primary question; there is no

23   secondary question.  Reasons are one thing; facts are another;

24   evidence is another.

25         And finally, your Honor, the burdensome nature of

EXCEPTIONAL REPORTING SERVICES, INC

6

1    these Interrogatories is compounded by the fact that we're

2    talking about events that occurred 70 years ago.  Why didn't we

3    admit, why did we deny, that we paid other people to work with

4    Mr. Siegel 70 years ago?  Well, that's quite a burden.  Why do

5    we deny that the Adventures of Super Boy appeared in hundreds

6    of comic books?  Facts, evidence, reasons; that's quite a

7    burden.  We believe that they're burdensome.  We attempted to

8    have Mr. Toberoff select those Interrogatories that he felt

9    were essential, and he declined to do so.

10            **THE COURT:**  All right, thank you.

11            **MR. BERGMAN:**  Thank you, your Honor.

12            **THE COURT:**  All right.  On this motion, in the

13   Court's view, the motion does raise issues which at least are

14   discussed in *Safeco*.  It's 183 Federal Rules Decision 669, a

15   1998 case from this district.

16            Now, to begin with, the Court has great concern about

17   the propriety of even asking these kinds of Interrogatories,

18   which, as defense counsel's indicated, spin off of Requests for

19   Admissions.

20            Now, in the Court's view they spin off Requests for

21   Admissions with a 'gotcha' kind of mentality, and Professors

22   Wright and Miller have stated, and the Court agrees, Rule 36 is

23   not, strictly speaking, a discovery device.  It's a device for

24   shortening the proof required at trial.

25            And the rule has its own remedy if there is a problem

EXCEPTIONAL REPORTING SERVICES, INC

7

1    with a Request to Admit.  The propounding party can move to

2    determine the sufficiency of the answers or objections.  But

3    Interrogatories which take a party's failure to unqualifiedly

4    admit and then ask, argumentatively, for the party to justify

5    such a failure, those are questionable discovery devices.

6         And beyond that, these Interrogatories do in fact, as

7    in *Safeco*, ask more than single questions.  Even considering

8    that questions which are related, such as a witness's name and

9    address, for example, those are properly considered part of the

10   same question; but asking for reasons as well as evidence as

11   well as all facts in this Court's view does impermissibly ask

12   for several distinct answers, and any one of them might be

13   objectionable as overbroad, burdensome, calling for work

14   product, and a whole host of other objections.

15        But for the moment, all that the Court does conclude

16   is that the allowed number has been exceeded.

17        Plaintiffs' Motion to Compel is denied.

18        Both Requests for Sanctions are denied.

19        All right, let's move to what has so elegantly been

20   called the 'whistleblower' documents and the Motion to Compel

21   with respect to them.

22        It seems to me there's a lot of noise about this

23   motion, but I don't know how much substance there is.

24        **MR. BERGMAN:**  Frankly, your Honor, I don't think

25   there's any substance to it in the sense that it could be

8

1    avoided today.  It could have been avoided months ago.

2         Mr. Toberoff keeps taking the position that these

3    documents have been - non-privileged documents have been

4    produced; privileged documents have been listed in a privilege

5    log.  All we have been saying, and what I said to Mr. Toberoff

6    during a meet and confer, what one of my associates wrote to

7    him in a letter, is 'show it to us'.  Identify the documents,

8    the unprivileged documents that you have produced, by reference

9    to the Bate stamp numbers that Mr. Quinn's office put on the

10   document, and identify the documents which are listed on a

11   privilege log, once again, by reference to the Bate stamp

12   numbers that Mr. Quinn put on.  If that is done and we see

13   that, yes, indeed, all unprivileged documents have been

14   produced, all privileged documents have been listed, then

15   there's no further dispute.

16        If, on the other hand, we see that all unprivileged

17   documents have not been produced, well, we should be able to

18   see those documents.  And if all of the privileged documents

19   have not been produced or, rather, put on an exhibit list, a

20   privilege log, that would be a waiver of the privilege as to

21   those documents and we should be entitled to see those

22   documents, too.

23        The question is: How do we resolve this?  Well,

24   there's an easy way, and that is what we're suggesting, Judge,

25   and what we've been suggesting from the beginning.

EXCEPTIONAL REPORTING SERVICES, INC

9

1          THE COURT:  All right.  Mr. Toberoff?

2          MR. TOBEROFF:  Your Honor, I want to make sure the

3    Court understands what we're talking about here, which he

4    claims is just a simple discovery matter that should be easily

5    resolved under Rule 34, the way you deal with Requests for

6    Production in which you produce responsive documents and you

7    list in the privilege log any that are privileged.

8          First of all, plaintiffs have done so and so have I,

9    in full compliance with Rule 34.  We're talking about here an

10   arrival -

11         THE COURT:  No, I know what we're talking about.

12         MR. TOBEROFF:  Right.

13         THE COURT:  The documents showed up at Warner

14   Brothers -

15         MR. TOBEROFF:  Right.

16         THE COURT:  - and I read what Warner Brothers did

17   with them.  They segregated them into three piles; they sent

18   them over to Mr. Quinn; Mr. Quinn Bate stamped them; he made a

19   copy; he sent the copy to you, and now we're stuck with what to

20   do with the ones that are left in Mr. Quinn's office.  I

21   understand what we're talking about.

22         MR. TOBEROFF:  I understand that, your Honor.  These

23   documents are a pile about this high (indicates) -

24         THE COURT:  Okay.

25         MR. TOBEROFF:  - where a former attorney of mine, who

1    was terminated in November, went through not just the

2    plaintiffs' files in this case but the files of Joe Schuster's

3    family and other witnesses and other companies that I

4    represent, selected documents, and, after trying to essentially

5    steal not only the plaintiffs' clients in this case and other

6    clients of mine by disparaging me, and after he was rejected in

7    early December of 2005, he sent these documents to John

8    Schulman, the general counsel -

9            THE COURT:  I understand all that, Mr. Toberoff.

10           MR. TOBEROFF:  - and two other executives.  These are

11   documents -

12           THE COURT:  But that's not important to this

13   resolution.

14           MR. TOBEROFF:  Well, it's important -

15           THE COURT:  The question is -

16           MR. TOBEROFF:  It's important to me.

17           THE COURT:  They have documents.  The question is:

18   Have you otherwise produced them?  That's all that's at issue,

19   isn't it?

20           MR. TOBEROFF:  I have, your Honor.  I have put in a

21   declaration unequivocally that even though I'm not obligated to

22   do so, and jump through hoops of having to respond and own up

23   to documents stolen from my legal files, an obligation that

24   does not apply to the defendants in this case and does not

25   apply to parties under Rule 34, I nonetheless went through

11

1  every single one of those documents, which they, instead of

2  returning the originals, returned to me with Bate stamps,

3  checked it against our production, and found two documents that

4  were non-privileged that hadn't been produced that consisted of

5  letters from plaintiffs to DC Comics, which I produced.

6      THE COURT:  See, your declaration doesn't quite say

7  that, Mr. Toberoff.  I read your declaration.

8      MR. TOBEROFF:  The intention of the declaration is to

9  say exactly what I'm saying now; that I went through my files,

10 not just the plaintiffs' files, which is all the motion

11 pertains to, but all my files, all the third-party witness

12 files -

13     THE COURT:  Forgive me for interrupting.  Your

14 declaration does say that.  What your declaration doesn't say

15 is that you went through these, let's call them 'whistleblower'

16 documents, even though that may not be an accurate statement,

17 you went through these whistleblower documents, and that you

18 verified that each of the whistleblower documents either had

19 been produced or had been listed on the privilege log.  It

20 doesn't say that.

21     MR. TOBEROFF:  That is the case, your Honor, and that

22 was certainly my intention to say that, and I'm saying that

23 now.

24     THE COURT:  All right, then we can get that cleared

25 up immediately.

EXCEPTIONAL REPORTING SERVICES, INC

12

1          MR. TOBEROFF:  I'd be happy to take an oath and say

2   that, because that is precisely what I did.

3          THE COURT:  Okay.

4          MR. TOBEROFF:  And that was definitely my intention

5   in the declaration.  They claim my declaration doesn't say

6   that.  That was certainly my intention.  That's exactly what I

7   did.  And I also put in my declaration, with the utmost

8   specificity, what documents I found that had not been produced

9   and how I produced those documents.

10          THE COURT:  Yes, you did that.  I agree with that.

11          MR. TOBEROFF:  But the point here, your Honor, is

12   that there are certain procedures which plaintiffs and

13   defendants have to follow.  If the situation was reversed,

14   where I was suddenly sent a stack of documents from the general

15   counsel's files at Warner Brothers or from Mr. Bergman's files,

16   and I sat on those documents, and we believe they sat on these

17   documents from November or December of 2005, even from the date

18   that they say, they sat on these documents, and their letters

19   suggest this uneasy, queasy way in which they dealt with the

20   documents where they didn't say, 'We received documents that

21   are attorney-client privileged that are obviously from your

22   files.'  They referred vaguely to certain documents.

23          They retained another lawyer which they purported to

24   say was a 'neutral', even though that lawyer is obviously not a

25   neutral, because all his suggestions protect defendants, and

13

1   he's under a retainer and undoubtedly paid by the defendants.

2   They retained this neutral -

3           THE COURT:  I'm sure Mr. Quinn would enjoy receiving

4   money from you as well, Mr. Toberoff.

5           MR. TOBEROFF:  Well, I understand, but I did not

6   retain him.  And to his credit, he never said that he was a

7   neutral in this matter.

8           THE COURT:  No.  He's not neutral in the sense that

9   he is retained by the defendants, but what he did, as I

10  understand it, and there's no suggestion otherwise, is that he

11  acted as an escrow.  That is, Mr. Bergman didn't look at these

12  documents.  Trial counsel didn't look at these documents,

13  right?

14          MR. BERGMAN:  That's correct, your Honor.

15          THE COURT:  The in-house counsel took these

16  documents, probably consulted with Mr. Bergman, 'I don't know,

17  what do we do?', the decision was made, 'Let's give them to a

18  third party and let's try and get the Court involved'.  And

19  then there was that little problem of not following the local

20  rules where there was an *ex parte* communication with the Court,

21  which you pointed out in your papers here.  But the procedure

22  does not seem unreasonable to me.

23          MR. TOBEROFF:  Let me ask this.  There are rules why

24  a police officer can't march into your house without a warrant

25  and rifle through your house looking for things.  And the

EXCEPTIONAL REPORTING SERVICES, INC

Ex N - 171

14

 1  answer to the objection to him doing so is not, 'Well, what do

 2  you have to hide?'  There's a simple procedure here.  If you

 3  have nothing to hide, why can't I rifle through your house?

 4  The analogy may not be exact, but it's comparable.

 5       This has an unseemly feel to it, because when you add

 6  up all of the supposedly sanitizing procedures, and I have

 7  great doubts that they received these documents when they said

 8  they did, and when I asked for them to substantiate when they

 9  received the documents, they had absolutely no information.

10  And I know from my experience with big studios that they have

11  guards and mail rooms and executives and people at their beck

12  and call who keep track of these sorts of things meticulously.

13  They have no evidence whatsoever to support the claim as to

14  when they received documents.

15       I believe they got these documents, the cover letter

16  said, 'This is an early Christmas present.'  You don't write a

17  letter like that in June.  And so they sat on these documents

18  for three or four months figuring, 'How can we use this

19  theft'?, which is an outrageous act.  I'm not hiding behind

20  hyperbole.  It is outrageous.  If it happened to any lawyer, if

21  it happened to Mr. Bergman, you would be outraged.

22       They are saying, 'How do we use this outrageous act

23  as a tactical advantage?'

24       THE COURT:  If they were doing all that, why would

25  they go through this process?  Why wouldn't they just -

EXCEPTIONAL REPORTING SERVICES, INC

Ex N - 172

15

1       **MR. TOBEROFF:**  Because, they can't -

2       **THE COURT:**  - keep the documents and spring them on

3  you?

4       **MR. TOBEROFF:**  Because they can't use the documents.

5  They need to first sanitize it by saying, 'You need to jump

6  through these additional hoops that are not applicable to the

7  defendants; that would not be applicable to you or the

8  plaintiffs, but because we have what they call a 'twist of

9  fortune' of receiving documents stolen wholesale from your

10 files, we are now going to take advantage of that, and we have

11 a right to take advantage of that.'

12      **THE COURT:**  But Mr. Toberoff, you tell me that

13 everything that's not privileged has been produced except for

14 two small items, and everything that is -

15      **MR. TOBEROFF:**  We produced those items, your Honor.

16      **THE COURT:**  Right.  Okay.  So, what huge advantage is

17 there for the defendants to gain if what you say is true?

18      **MR. TOBEROFF:**  I'm objecting to this procedure, and

19 you are asking me what I said before.  Why not illegally search

20 your house if you have nothing to hide?  What do you have to

21 hide?  I have nothing to hide.

22      I find this whole process frankly outrageous, and I

23 am standing here, your Honor, and lawyers may speak this way

24 just as a cover or to muddy the waters.  I am not.  I am

25 standing here with a firm conviction that, as a matter of

**EXCEPTIONAL REPORTING SERVICES, INC**

16

1   principle, when they received these documents, they should have

2   immediately picked up the phone.  It was obvious these

3   documents had been stolen from my files.  It is obvious from

4   the cover letter what had happened.

5           There's nothing whistleblower about a lawyer who is

6   bound by the attorney-client privilege taking documents and

7   communications with a client and sending them over to the

8   opposing side in the middle of a heated litigation where each

9   side is supposed to be able to rely on the confidential

10  attorney-client privilege and work product doctrine.  Doing

11  that in the middle of a lawsuit, they should have picked up the

12  phone, immediately called me and immediately returned the

13  documents.  That's not what they did.

14          Wayne Smith wrote in his declaration that he looked

15  at these documents twice.  First. he looked at them outside the

16  office of John Schulman.  Then he took them home with him.  And

17  although he didn't look at the documents or really review them

18  in any substance, and there's been no supposed communications

19  with defense counsel, he marked them 'privileged', 'non-

20  privileged', and 'potentially privileged'.  You can't do that

21  without reviewing the substance of these documents.

22          And now they're pushing for me to have to account and

23  atone, by their Bates numbers, the documents illegally stolen

24  from my offices.  And they are claiming to me that, 'Well, why

25  not do this?  Isn't it your obligation under Rule 34 to produce

EXCEPTIONAL REPORTING SERVICES, INC

17

1  documents?'  And my answer to that is, 'It is my obligation.

2  I've satisfied that obligation.  I've put in a declaration, and

3  I'm saying here and I'm willing to swear the oath that we have

4  produced all those documents.'  More than that, we do not have

5  to do.

6          And so I'm standing here on principle, your Honor,

7  and I believe if you look closely into those principles, you'll

8  find that it's improper for the defendants and defendants'

9  counsel to seek to take advantage of this theft of legal files

10 in the middle of a lawsuit.  And if it was the other way

11 around, they would be screaming bloody murder.  And I don't

12 believe they would be compelled to have to atone, by my Bate

13 stamps, on documents lifted from their legal files.  And I

14 guarantee you if I had that opportunity, considering that they

15 have stonewalled us in discovery, I would find a great deal of

16 useful information.

17         If it was the reverse and I received a package like

18 that, I would have picked up that phone, I would have called

19 them, and I would have returned the documents.  And that's what

20 they should have done, and they didn't do that.  And it's

21 outrageous, your Honor.

22         **THE COURT:**  All right.  Thank you, Mr. Toberoff.

23         Anything further, Mr. Bergman?

24         **MR. BERGMAN:**  Just a couple of things, your Honor.

25         As your Honor has probably seen from the papers,

**EXCEPTIONAL REPORTING SERVICES, INC**

18

1   Warner Brothers did exactly what the cases and the ABA 1994

2   opinion tells it to do.

3          THE COURT:  I read the papers, Mr. Bergman.

4          MR. BERGMAN:  Okay.  The other point, your Honor, is,

5   one of two things happened here.  Either Mr. Toberoff is

6   absolutely correct and this person sent documents which have

7   been produced and which have been listed, or he is not correct,

8   in which event there may not have been documents that should

9   have been produced, produced.  All we want to do is put an end

10  to the issue by having him go through what is certainly not a

11  burdensome or oppressive task of coordinating the documents

12  produced and placed on the privilege list with the Bate stamps.

13         THE COURT:  All right.

14         MR. TOBEROFF:  If I may, your Honor?

15         THE COURT:  I think we've exhausted it, Mr. Toberoff.

16         And I will say that I don't agree with the

17  designation of these as 'whistleblower' documents either, Mr.

18  Toberoff.  And to the extent I have used that term, I use it

19  only as a shorthand version of referring to the documents that

20  are at issue.  If we want to call them the 'escrow' documents,

21  that's fine, too.  I mean, I don't think it qualifies as

22  classic whistleblower in the sense that that term is used in

23  the law.  The defendants used that in their application, and I

24  don't think even they used it in the classic term.

25         But in any event, you know, I'm not making any

EXCEPTIONAL REPORTING SERVICES, INC

Ex N - 176

1    finding that these are in fact in the nature of whistleblower

2    documents.

3          But in my view, I think the defendants have acted

4    professionally, and I think they've acted reasonably.  The

5    record does establish that trial counsel has not reviewed the

6    documents.  They set up a procedure to segregate them, deposit

7    them with an escrow, and seek a resolution of this dispute.

8          Now, I told you, Mr. Toberoff, that I saw a little

9    wiggle room in your declaration.  You tell me you didn't mean

10   for there to be any.  So, here's what I'm going to do.  Not

11   later than May 7th, that's a week from today, I want you to

12   submit a declaration that does identify by the Bates numbers of

13   the escrow documents and the corresponding Bates numbers of

14   documents already produced, those among the escrow documents

15   which are unprivileged and have already been produced.

16         So, you take the Bates numbers of the escrow

17   documents and say, 'Here are the corresponding Bates numbers of

18   the documents that have already been produced.'  Take the Bates

19   numbers of the escrow documents and correspond to the listings

20   on the privilege log of the documents which have not been

21   produced because they were privileged.  All right?  So, put

22   that in your declaration.

23         Then the escrow holder, Mr. Bergman, is to return to

24   the plaintiffs any documents which are identified in the

25   declaration as being privileged and having been identified on

Ex N - 177

1   the privilege logs.

2        The others can be delivered to trial counsel for

3   defendants because they're either unprivileged, or, if they

4   were privileged, privilege has been waived because they weren't

5   listed on the privilege log.

6        Now, is it clear what I want done?

7        MR. BERGMAN:  Yes.

8        MR. TOBEROFF:  Are you going to put this in a written

9   order, your Honor?

10       THE COURT:  No, this is it.

11       MR. TOBEROFF:  Okay.  So you would like me to set

12  forth, you would like me essentially to prove that I'm not

13  lying by setting forth in a declaration -

14       THE COURT:  Mr. Toberoff.

15       MR. TOBEROFF:  - this is -

16       THE COURT:  Do you understand what I've ordered you

17  to put in the declaration?

18       MR. TOBEROFF:  I do, your Honor.

19       THE COURT:  All right.  Then that's it.  We're not -

20  You and I are not having an argument.

21       MR. TOBEROFF:  I'm not arguing.  I'm - Okay.

22       THE COURT:  All right?

23       MR. TOBEROFF:  I'm sorry, your Honor, if I'm upset

24  about this.  I think most lawyers would be upset with a

25  situation like this.

21

1          THE COURT:  Okay.  It's fine to be upset.  It's not

2    fine to argue.  All right?

3          Mr. Bergman, do you understand what you're to do?

4          MR. BERGMAN:  Yes, I do, your Honor.

5          THE COURT:  All right.

6          All right, that leaves two motions which are related.

7          MR. TOBEROFF:  Your Honor, how much time do we have

8    to do this, because we're in the middle of -

9          THE COURT:  May 7th.

10         The remaining two motions, in my view, are related.

11   These are the Motions to Compel Answers to certain deposition

12   questions by Mr. Marks and Ms. Larson, and to require Mr. Marks

13   to produce documents relating to his authority.

14         Mr. Bergman, do you wish to be heard on these?

15         MR. BERGMAN:  Yes, your Honor.  I'll be very brief.

16   Your Honor is familiar with this problem.

17         THE COURT:  Yes.

18         MR. BERGMAN:  To this day, we have not received an

19   unequivocal answer as to whether Mr. Marks was authorized by

20   the plaintiffs to convey to Mr. Schulman the statement that is

21   contained in the October 19 letter; that is that the Siegel

22   family has accepted.

23         Mr. Toberoff is going around the bush.  He says that

24   there is no issue as to Marks' authority to have conducted

25   settlement negotiations on plaintiffs' behalf.  We're not

22

1  questioning that.  We just want to know, because it's an

2  essential element of what may be a dispositive counterclaim,

3  did the Siegels authorize Mr. Marks to say to Mr. Schulman

4  they've accepted the offer.  It's not privileged.  It's not

5  confidential.  It's intended, by definition, to be conveyed to

6  the other side, and we believe that we're entitled to it.  We

7  believe that for these same reasons we're entitled to any

8  documents that pertain to the authority.  After all, that

9  affirmative defense still lingers on in the pleadings.  It

10 hasn't been dismissed.  And I believe that we're entitled to

11 resolve it one way or another as we proceed to trial.

12          THE COURT:  All right, thank you.

13          MR. BERGMAN:  Thank you, Judge.

14          THE COURT:  Mr. Toberoff?  Let me just ask you at the

15 start, Mr. Toberoff.  I guess I must be confused, because I

16 thought you had told me you were going to dismiss those

17 affirmative defenses.

18          MR. TOBEROFF:  Yes, we were, your Honor, and we in

19 fact drafted amended pleadings, and I sent them over to Mr.

20 Bergman and they refused to stipulate to -

21          THE COURT:  No, I remember that.

22          MR. TOBEROFF:  Okay.  But after that -

23          THE COURT:  But after that you told me that you were

24 going to make a motion to dismiss those.

25          MR. TOBEROFF:  After that we didn't make the motion

EXCEPTIONAL REPORTING SERVICES, INC

23

1   to dismiss.  We decided that we could just simply drop it in

2   our joint pretrial order, and it was suggested by one of the

3   attorneys that works for me that, to make this motion based on

4   this simple amendment a full-blown motion to the Court, that

5   would be unnecessary since we could drop it in the pretrial

6   order.  That was initially pled among some multiple affirmative

7   defenses.

8          THE COURT:  No, no, no, I know.  We've been over this

9   before.

10         MR. TOBEROFF:  I understand, your Honor.  But the

11  fact is that plaintiffs signed verified Interrogatory answers

12  on the question of Mr. Marks' authority.  They said he had

13  authority.  He obviously had authority to send the letter as

14  their attorney in the negotiations.  We have not once in this

15  litigation stood by or asserted the claim or defense, and

16  again, you mentioned earlier that you don't know that it even

17  is an affirmative defense.

18         THE COURT:  No, I don't think that's the way it came

19  up.  I think Mr. Bergman said he wasn't sure if it was an

20  affirmative defense.  That's my recollection of it.

21         MR. TOBEROFF:  Okay.

22         THE COURT:  But I could be wrong.

23         MR. TOBEROFF:  I think there was some mention of it

24  in -

25         THE COURT:  We had a colloquy on it.

24

1        **MR. TOBEROFF:** Right.  I don't think I was going by a

2   transcript; I think I was going by something in the order.  But

3   be that as it may, we've never asserted this.  They've asked,

4   as I said, Interrogatories, verified answers, answered the

5   question as to authority.  They asked the question specifically

6   in Laura Siegel's deposition; she answered the question

7   specifically.  I can read you the answer.

8        The question was, again, put in two prior motions,

9   and for procedural reasons, because this is a retread and

10  essentially a motion of reconsideration without being a motion

11  of reconsideration with respect to re-deposing Laura Siegel,

12  that's also relevant.  But they've asked the question over and

13  over again.  They know the answer to the question.  He had

14  authority to send that letter.  That's not what this is about.

15       This is about using this as a red herring or an

16  excuse to enter and invade the sanctum of the attorney-client

17  privilege so that they could rephrase the question of authority

18  in legal buzz words to try and formulate, from an answer,

19  something that they can then claim will form an agreement.

20  That's all they're doing here.

21       There's no issue of whether Mr. Marks had authority

22  to send that letter.  He absolutely had the authority.  We've

23  said so over and over again.  I don't believe the fact that it

24  remains as an affirmative defense in our original complaint,

25  filed two years ago, when we've asked them to stipulate to

**EXCEPTIONAL REPORTING SERVICES, INC**

25

1   allow us to amend it and are simply going to do this in a joint

2   - and I will represent to the Court that we're going to do this

3   in our joint pretrial order, we'll drop that affirmative

4   defense, that that becomes the lynch pin to open the door to

5   start asking questions about their communications about this

6   authority.

7        The case law - Excuse me.  May I just get a glass of

8   water?

9        **(No audible response)**

10       **(Pause)**

11       **MR. TOBEROFF:**  Their theory that authority is

12  something that one intends to communicate to the other side,

13  and therefore they can ask questions about that authority with

14  respect to a settlement negotiation, doesn't work, because

15  during the settlement negotiation the authority to agree to any

16  one term or a number of terms in a complex negotiation, which

17  this was, is necessarily linked to your settlement strategy.

18  How much do you ask up front?  How much do you settle for?  All

19  those things are linked.  Just because the ultimate authority

20  of the attorney to represent you in the settlement negotiations

21  or to send a letter is necessarily communicated to the other

22  side, that doesn't implicate the substance of your settlement

23  discussions with that attorney.

24       **THE COURT:**  Let me just ask you a question, Mr.

25  Toberoff.  I just want to make sure I'm clearly understanding

1    you.  Are you saying that the October - was it October 19th

2    letter?

3              MR. TOBEROFF:  October 19th, 2001, yes.

4              THE COURT:  All right, which was signed by Mr. Marks,

5    right?

6              MR. TOBEROFF:  Yes.

7              THE COURT:  That that represents the statement of the

8    plaintiffs?

9              MR. TOBEROFF:  Yes.

10             THE COURT:  Okay.  All right.  Go ahead, if you have

11   anything further.

12             MR. TOBEROFF:  So, I'll just give you the question

13   that was already posed to Laura Siegel in her deposition.

14             THE COURT:  You don't need to read that again.

15             MR. TOBEROFF:  Okay.  I was going to give you her

16   answer to show that she's answered that question.

17             THE COURT:  You don't need to do that.  I've seen it.

18             MR. TOBEROFF:  Okay.

19             Now, the questions that they seek to - First of all,

20   as an initial matter, their motion with regard to Laura Siegel

21   is improper because it constitutes a motion for

22   reconsideration.

23             THE COURT:  Yeah, I read your argument on that.  I'm

24   familiar with that.

25             MR. TOBEROFF:  Do you have any questions for me about

1    that argument?

2          THE COURT:  I don't.

3          MR. TOBEROFF:  Okay.  They ask -

4          THE COURT:  I really don't need the two of you to

5    rehash what's in this (indicates).

6          MR. TOBEROFF:  Okay.

7          THE COURT:  And I'm holding up an eight-inch stack of

8    papers.  I really don't.

9          MR. TOBEROFF:  All right.  Well, I would just like to

10   point out one thing to you.

11         THE COURT:  Okay.

12         MR. TOBEROFF:  They have a question, they have only

13   two questions for Laura Siegel.

14             'Did you ever instruct Mr. Marks to communicate to

15             the lawyers for DC Comics that there should be a

16             correction made in this letter?'

17         And they put the cart before the horse, and they pre-

18   suppose that if a communication had taken place, then therefore

19   that was intended to be communicated to the other side, and

20   therefore, because it was intended to be communicated to the

21   other side, she has to answer this question.

22         There's no evidence that there was any such

23   communication to the other side objecting, and therefore, their

24   logic is flawed.  Without any evidence of this third-party

25   communication, they can't say there was any intention to

EXCEPTIONAL REPORTING SERVICES, INC

28

1  communicate this to the other side, and therefore you have to

2  answer questions as to whether such communication took place.

3        Do you see?  It's illogical.  And they're using this

4  one thought in a case which is curtailed, and we've

5  distinguished the case, to try and open the door to the whole

6  attorney-client privilege.  They've already done this with

7  Laura Siegel.  They already made this motion.  They made a

8  motion for reconsideration.  All these issues have been before

9  the Court before, and I don't -

10       THE COURT:  Yes, these issues do seem to have a

11  certain familiarity to them.

12       MR. TOBEROFF:  And I don't believe that because of

13  this vestigial 37th affirmative defense, which we've asked

14  could we please remove, and we didn't want to make a full-blown

15  motion, and we haven't asserted and we've constantly restated

16  that, no, this is not an issue, that that should be able to

17  open the door for them to invade the attorney-client privilege.

18       It's clear also from their papers they do not just

19  want to ask two questions, because they're constantly asserting

20  'and reasonable follow-up questions'.  And to the extent the

21  Court is inclined to grant any of this, and I don't think it

22  should be, these things can easily be posed in Interrogatories,

23  and in fact the cases say that these types of questions that

24  are mixed questions of law and fact are better posed in

25  contention Interrogatories which, if you find it necessary, we

29

```
 1   would answer.

 2           Thank you, your Honor.

 3           THE COURT:  All right.  Thank you, Mr. Toberoff.

 4           Mr. Bergman, anything further?

 5           MR. BERGMAN:  One very quick point, your Honor.

 6           Your Honor's question to Mr. Toberoff and his

 7   response to you brought him closer than he's ever been before

 8   to where we believe he has to go.  But he's just the attorney.

 9           Throughout his argument, he kept saying that the

10   plaintiffs gave Mr. Marks authority to send the letter.  All we

11   want to know is whether they gave him authority to say 'the

12   family has accepted the October 16 offer'.

13           Thank you, your Honor.

14           THE COURT:  All right.  These two motions I'm going

15   to take under submission.  I will get a ruling out very

16   shortly.

17           MR. TOBEROFF:  Thank you, your Honor.

18           MR. BERGMAN:  Thank you, sir.

19           THE COURT:  All right, thank you.

20           I assume Ms. Larson is no relation to Judge Larson.

21           MR. TOBEROFF:  No relation.

22           Your Honor, I'm sorry, could I just ask you to

23   clarify, even though it's simple, because I'm emotional on this

24   issue, obviously, and I want to make sure what we are to do in

25   a declaration.
```

1          It's my understanding that we are to take the Bates

2    numbers of the stolen documents and put in a declaration that

3    such and such a range of numbers we have produced?

4          THE COURT:  No.

5          MR. TOBEROFF:  Okay.  Could you please repeat it for

6    me, because I want to make sure I'm clear.

7          THE COURT:  For example, Bates number, let's call it

8    'escrow'.  Let's try and take pejoratives out of it either way,

9    all right?  So I won't call them whistleblower documents; I

10   won't call them stolen documents.  I'm not denying they're

11   stolen, I'm not saying they're whistleblower documents; I'm

12   just trying to find a neutral term, so I'm calling it 'escrow'.

13   Escrow is usually a neutral term.  All right.

14         Escrow document 00004 corresponds to previously

15   produced document 00006.  Escrow document 00007 corresponds to

16   previously produced document 00009, and so on.

17         MR. TOBEROFF:  Okay.

18         THE COURT:  Privilege escrow document 00015 is a

19   privilege document which was listed on the privilege log as

20   document such and such.

21         MR. TOBEROFF:  Okay.

22         THE COURT:  Privilege documents get returned.  The

23   privilege documents that were listed on the privilege log get

24   returned.  The others get sent to defense counsel.

25         MR. TOBEROFF:  The others get sent to defense

31

1  counsel?

2          THE COURT:  From the escrow.

3          MR. TOBEROFF:  Right.  Even though we've produced

4  them, but because we're saying they're not privileged, they

5  will get sent to defense counsel.  Okay.

6          If we have to match it up that way, could we have a

7  little more time to do that, your Honor, because it will take -

8          THE COURT:  How much time do you need?

9          MR. TOBEROFF:  We're in the middle of opposing a

10  massive summary judgment motion, so as much time as I can get

11  would be appreciated.

12          THE COURT:  Yes, I noticed you were in the middle of

13  all that, because there was some question as to when these

14  motions would be heard, and we were told that it was too

15  difficult to hear them on the 23rd because motions needed to be

16  filed on the 23rd.  And then they were set on the 30th, and then

17  you stipulated to have your motions filed on the 30th.

18          MR. TOBEROFF:  Right.

19          THE COURT:  How much time do you need?

20          MR. TOBEROFF:  Three weeks.

21          THE COURT:  Three weeks?  But you've been through

22  this already, right?  You had to to know -

23          MR. TOBEROFF:  They're a stack like this (indicates),

24  and if we're matching up all the numbers, it means we've

25  produced 2000 documents, so going through those and finding the

EXCEPTIONAL REPORTING SERVICES, INC

32

1    production, the 2000 documents.  Also, this doesn't just

2    involve plaintiffs' production, and that's another question,

3    frankly, because the motion is directed at plaintiffs, but what

4    do we do to the extent that there are documents in the stolen

5    documents that don't belong to plaintiffs; that they are

6    documents of the Schusters or documents of other third parties,

7    or documents that appear on the privilege log of Don Bolson,

8    the attorney for Michael Siegel?

9          THE COURT:  Well, now, Mr. Toberoff, didn't you tell

10   me there were only two documents that hadn't been produced that

11   were unprivileged?

12         MR. TOBEROFF:  That's correct, but the ones that have

13   been produced, we still need to match up, and the ones that

14   were listed on the privilege log we would still need to match

15   up.  And we've produced the two documents that haven't been

16   produced.

17         THE COURT:  So, the fact that they're not documents

18   of the plaintiffs, they might be of some other parties, that

19   doesn't have anything to do with - You're just saying it would

20   take longer to match them up?

21         MR. TOBEROFF:  No.  What I'm saying is, this motion

22   only applies to plaintiffs.  It was a motion to compel

23   plaintiffs to do something regarding documents that are their

24   documents in their possession or control.  But out of an

25   abundance of caution and to satisfy everyone, I went through

33

```
 1   the documents and privilege logs, pursuant to four or five

 2   subpoenas of third parties, where I have documents pertaining

 3   to those third parties.

 4          THE COURT:  And are you saying that in the escrow

 5   documents there are some documents that came from third

 6   parties?

 7          MR. TOBEROFF:  Absolutely.  Well, they're actually -

 8          THE COURT:  Excuse me.  But documents that

 9   nevertheless had already been produced?

10          MR. TOBEROFF:  Yes.

11          THE COURT:  So you are just talking about it taking a

12   little more time to get it done?

13          MR. TOBEROFF:  No.  I'm just talking about the fact

14   that in matching this up, I have to match it up to the

15   production not only -

16          THE COURT:  I understand that.  I understand that.

17          MR. TOBEROFF:  First of all, do you want me to -

18          THE COURT:  So it'll take three weeks you say?

19          MR. TOBEROFF:  Well, there's another question and

20   I'll get to it.  Their motion does not apply to these other

21   documents; it only applies to the plaintiffs.

22          MR. BERGMAN:  Right.

23          MR. TOBEROFF:  Because it's a motion to compel

24   plaintiffs' production, not a motion to compel a third party's

25   production.
```

34

1          **MR. BERGMAN:**  Your Honor, there is also a Rule 45

2    subpoena that was issued to Mr. Toberoff seeking the identical

3    documents which is included within the motion.

4          **THE COURT:**  All right.  You can have three weeks.

5    So, that'll be May 21st.  Match them up from whoever's files,

6    Mr. Toberoff.

7          All right, anything further?

8          **MR. BERGMAN:**  No, your Honor.

9          **MR. TOBEROFF:**  Thank you, your Honor.

10         **THE COURT:**  All right.  Thank you.

11         Any other matters?

12         **THE CLERK:**  No, that completes the calendar.

13         **THE COURT:**  All right.  We'll be in recess.

14         **(This proceeding was adjourned at 11:28 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

**EXCEPTIONAL REPORTING SERVICES, INC**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          May 15, 2007

*TONI HUDSON*

FEDERALLY-CERTIFIED TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC

# EXHIBIT O



1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON

6

## UNITED STATES DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA

8

9  JOANNE SIEGEL, an individual; and          Case Nos.:
10 LAURA SIEGEL LARSON, an                     CV 04-08400 SGL (RZx)
   individual,                                 CV 04-08776 SGL (RZx)
·11
               Plaintiffs,                     [Hon. Stephen G. Larson, U.S.D.J.]
12      vs.                                    [Hon. Ralph Zaresky, U.S.M.J.]

13 TIME WARNER INC., a corporation;
14 WARNER COMMUNICATIONS              **DECLARATION OF MARC**
   INC., a corporation; WARNER        **TOBEROFF PURSUANT TO**
15 BROS. ENTERTAINMENT INC., a        **MAGISTRATE ZAREFSKY'S**
                                       **APRIL 30, 2007 ORDER**
   corporation; WARNER BROS.
16 TELEVISION PRODUCTION INC.,
17 a corporation; DC COMICS, a general
   partnership; and DOES 1-10,
18

19             Defendants.
20
   DC COMICS,
21
               Counterclaimant,
22
        vs.
23
24 JOANNE SIEGEL, an individual; and
   LAURA SIEGEL LARSON, an
25 individual,
·26
               Counterclaim Defendants.
27

28

Declaration Of Marc Toberoff

1    I, Marc Toberoff, declare as follows:

2    1.    I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of

3    record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a

4    member in good standing of the State Bar of California and submit this declaration

5    pursuant to Magistrate Zarefsky's order at the April 30, 2007 hearing ("Order") on

6    defendants' motion to compel the production of documents stolen from my law

7    offices ("Documents"). I have personal knowledge of the facts set forth in this

8    declaration and, if called as a witness, could and would testify competently to such

9    facts under oath.

10    2.    Pursuant to the Order, I have accounted for each of the Documents as

11    bate stamped by John Quinn, Esq. (designated by "Q") and identified by bates

12    numbers the Documents produced to defendants by Plaintiffs or third party witnesses,

13    as applicable, or listed in a privilege log furnished to defendants by Plaintiffs and/or

14    such third parties:

15

16    Q 0001- 7          Un-dated defamatory cover letter

17    Q 0008-9           Plaintiffs' Kevin Marks ("Marks") Privilege Log # 325

18    Q 0010             Privileged communication between Law Offices of Marc
19                       Toberoff and Plaintiff Laura Siegel Larson dated October
20                       10, 2005, after the start of this litigation. This document is
                         *not* required to be listed in a privilege log pursuant to the parties'
21                       standing agreement.

22    Q 0011-13          Produced by Plaintiffs- 000001888-90
23
24    Q 0014-18          Produced by IPW, LLC- 17-20

25    Q 0019-20          Produced by Plaintiffs- 000001883-1884
26
27    Q 0021-24          Produced by Pacific Pictures Corporation.- 00001- 4

28

1

Declaration Of Marc Toberoff

| | |
|---|---|
| Q 0025 | Internet listing for Pacific Pictures Corp. from California Business Portal; not in Plaintiffs' files. |
| Q 0026 | Internet listing for Pacific Pictures Corp. from New York Department of State; not in Plaintiffs' files. |
| Q 0027-33 | Plaintiffs' supplemental privilege log # 82 |
| Q 0034-35 | Produced by Jean Peavy and Warren Peary ("Shusters")-142-43 |
| Q 0036-39 | Produced by Shusters- 125-28 |
| Q 0040 | Attorney Don Bulson ("Bulson") privilege log #319 |
| Q 0041 | Produced by Shusters- 119 |
| Q 0042-50 | Produced by Shusters-113- 118 |
| Q 0051 | Wall Street Journal article by John Lippman; not in Plaintiffs' file. |
| Q 0052 | Variety.com article by Claude Brodesser; not in Plaintiffs' file. |
| Q 0053-54 | Produced by Shusters-140-141 |
| Q 0055-56 | Produced by Shusters- 138-139 |
| Q 0057-58 | Bulson privilege log # 327 |
| Q 0059-74 | Produced by Shusters- 63-78 |
| Q 0075-76 | Bulson privilege log # 327 |
| Q 0077-81 | Produced  by Shusters- 79- 83 |
| Q 0082-85 | Produced by Shusters- 105- 108 |
| Q 0083-85 | Produced by Shusters- 106 |
| Q 0086 | Produced by Plaintiffs- 000002050 |

2

Q 0087-0089     Plaintiffs' supplemental privilege log # 69

Q 0090-95       Plaintiffs' supplemental privilege log # 76

Q 0096-104      Plaintiffs' supplemental privilege log # 77, 78

Q 0105-127      Plaintiffs' supplemental privilege log # 77, 78

Q 0128-31       Plaintiffs' supplemental privilege log # 98

Q 0132-37       Plaintiffs' supplemental privilege log # 82, 83

Q 0138-45       Plaintiffs' supplemental privilege log # 79

Q 0146-51       Plaintiffs' supplemental privilege log #80, 81

Q 0152-57       Plaintiffs' supplemental privilege log #80, 81

Q 0158-63       Plaintiffs' supplemental privilege log #82, 83

Q 0164- 171     Plaintiffs' supplemental privilege log # 182

Q 0172-175      Plaintiffs' supplemental privilege log # 181

Q 0176-94       Shusters' supplemental privilege log # 2

Q 0195-199      Shusters' supplemental privilege log # 3

Q 0200          Shusters' supplemental privilege log # 5

Q 0201-222      Shusters' supplemental privilege log # 4

Q 0223          Produced by Shusters- 103

Q 0224-42       Shusters' supplemental privilege log # 4

Q 0243-44       Shusters' supplemental privilege log # 9

Q 0245-49       Produced by Shusters- 79-83

3

Declaration Of Marc Toberoff

Ex O - 197

| | | |
|---|---|---|
| 1 | Q 0250-254 | Plaintiffs' supplemental privilege log # 98 |
| 2 | Q 0255-273 | Shusters' supplemental privilege log # 2 |
| 3 4 | Q 0274-5 | Shusters' supplemental privilege log # 8 |
| 5 | Q 0276 | Shusters' supplemental privilege log # 6 |
| 6 | Q 0277 | Shusters' supplemental privilege log # 7 |
| 7 8 9 10 | Q 0278 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated August 13, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. |
| 11 12 | Q 0279-80 | 8/11/05 litigation letter from David Burg to M. Toberoff |
| 13 | Q 0281-82 | 8/11/05 litigation letter from David Burg to M. Toberoff |
| 14 | Q 0283 | 8/12/05 litigation letter from M. Toberoff to David Burg |
| 15 16 | Q 0284 | 8/12/05 litigation letter from M. Toberoff to David Burg |
| 17 18 19 20 | Q 0285-289 | Privileged communication between Law Offices of Marc Toberoff and Plaintiffs Laura Siegel Larson and Joanne Siegel dated August 12, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. |
| 21 | Q 0290-0296 | Un-dated defamatory cover letter (duplicate) |
| 22 23 | Q 0297-299 | Produced by Plaintiffs- 000001888-90 |
| 24 | Q 0300 | Wall Street Journal article by John Lippman; not in Plaintiffs' file. |
| 25 26 | Q 0301-303 | Produced by Pacific Pictures Corp- 1-4 |
| 27 | Q 0304-305 | Produced by Shusters- 142-143 |
| 28 | | |

4

Declaration Of Marc Toberoff

| | | |
|---|---|---|
| 1 | Q 0306-309 | Produced by Shusters- 125- 128 |
| 2 | Q 0310-13 | Plaintiffs' supplemental privilege log #175 |
| 3 4 | Q 0314 | Internet listing for Pacific Pictures Corp. from California Business Portal; not in Plaintiffs' files. |
| 5 6 | Q 0315 | Internet listing for Pacific Pictures Corp. from New York Department of State; not in Plaintiffs' files. |
| 7 8 | Q 0316-23 | Plaintiffs' supplemental privilege log # 79 |
| 9 | Q 0324-32 | Plaintiffs' supplemental privilege log # 77, 78 |
| 10 | Q 0333-35 | Plaintiffs' supplemental privilege log # 69 |
| 11 12 | Q 0336-340 | Produced by IPW, LLC 17- 20, Plaintiffs- 000001882 |
| 13 | Q 0341-42 | Produced by Plaintiffs- 000001883-84 |
| 14 | Q 0343-44 | Produced by Plaintiffs- 000002048-49 |
| 15 16 | Q 0343-44 | Produced by Plaintiffs- 000002048-9 |
| 17 | Q 0345-50 | Plaintiffs' supplemental privilege log # 76 |
| 18 19 | Q 0351 | Variety.com article by Claude Brodesser; not in Plaintiffs' file. |
| 20 | Q 0352 | Bulson privilege log # 319 |
| 21 22 | Q 0353-360 | Plaintiffs' supplemental privilege log # 182 |
| 23 24 25 26 | Q 0361 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated October 10, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. |
| 27 | Q 0362-63 | Produced by Shusters- 140-41 |
| 28 | | |

| | |
|---|---|
| Q 0364-382 | Shusters' supplemental privilege log #2 |
| Q 0383-87 | Shusters' supplemental privilege log #3 |
| Q 0388-93 | Plaintiffs' supplemental privilege log #80, 81 |
| Q 0394-399 | Plaintiffs' supplemental privilege log #82, 83 |
| Q 0400-01 | Bulson privilege log # 327 |
| Q 0402-408 | Shusters' privilege log # 9 |
| Q 0409-424 | Produced by Shusters- 63-78 |
| Q 0425-29 | Plaintiffs' supplemental privilege log # 98 |
| Q 0430-52 | Plaintiffs' supplemental privilege log # 77, 78 |
| Q 0453-71 | Shusters' supplemental privilege log # 2 |
| Q 0472-76 | Shusters' supplemental privilege log # 3 |
| Q 0477-82 | Plaintiffs' supplemental privilege log # 80 |
| Q 0483-88 | Plaintiffs' supplemental privilege log # 82, 83 |
| Q 0489-90 | Bulson privilege log # 327, 328 |
| Q 0491-95 | Produced by Shusters- 79-83 |
| Q 0496-99 | Plaintiffs' supplemental privilege log # 98 |
| Q 0500-1 | Shusters' supplemental privilege log # 8 |
| Q 0502-05 | Produced by Shusters- 105-08 |
| Q 0506-30 | Shusters' supplemental privilege log # 5 |
| Q 0531-32 | Produced by Shusters- 138-139 |
| Q 0533-46 | Shusters' supplemental privilege log # 4 |

Declaration Of Marc Toberoff

Ex O - 200

| | |
|---|---|
| Q 0547 | Produced by Plaintiffs- 000002050 |
| Q 0548 | Shusters' supplemental privilege log # 6 |
| Q 0549 | Shusters' supplemental privilege log # 7 |
| Q 0550 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated August 13, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. (Duplicate of Q 0278). |
| Q 0551-52 | 8/11/05 litigation letter from David Burg to M. Toberoff |
| Q 0553-4 | 8/11/05 litigation letter from David Burg to M. Toberoff |
| Q 0555 | 8/12/05 litigation letter from M. Toberoff to David Burg |
| Q 0556 | 8/12/05 litigation letter from M. Toberoff to David Burg |
| Q 0557-61 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson and Joanne Siegel dated August 12, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. (Duplicate of Q 0285-289) |
| Q 0562-569 | Un-dated defamatory cover letter (duplicate) |
| Q 0570-72 | Produced by Plaintiffs- 000001888-90 |
| Q 0573-74 | Produced by Plaintiffs- 000001883-84 |
| Q 0575-76 | Produced by Plaintiffs- 000002048-49 |
| Q 0577-80 | Produced by Shusters- 125-128 |
| Q 0581-582 | Produced by Shusters- 142-143 |
| Q 0583-586 | Produced by Shusters- 125-128 |

7

Declaration Of Marc Toberoff

| | |
|---|---|
| Q 0587 | Internet listing for Pacific Pictures Corp. from California Business Portal; not in Plaintiffs' files. |
| Q 0588 | Internet listing for Pacific Pictures Corp. from New York Department of State; not in Plaintiffs' files. |
| Q 0589- 596 | Plaintiffs' supplemental privilege log # 79 |
| Q 0597- 0605 | Plaintiffs' supplemental privilege log # 77, 78 |
| Q 0606- 0609 | Plaintiffs' supplemental privilege log # 175 |
| Q 0610-0617 | Plaintiffs' supplemental privilege log # 182 |
| Q 0618 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated October 10, 2005, after the start of this litigation. This document is *not* required to be listed in a privilege log pursuant to the parties' standing agreement. (Duplicate of Q 0361). |
| Q 0619-20 | Produced by Shusters- 140-141 |
| Q 0621-23 | Plaintiffs' supplemental privilege log # 69 |
| Q 0624-28 | Produced by IPW, LLC- 17- 20; Produced by Plaintiffs-000001882 |
| Q 0629-0634 | Plaintiffs' supplemental privilege log # 76 |
| Q 0635 | Bulson privilege log # 318 |
| Q 0636- 654 | Shusters' supplemental privilege log # 2 |
| Q 0655-659 | Shusters' supplemental privilege log # 3 |
| Q 0660-65 | Plaintiffs' supplemental privilege log # 80, 81 |
| Q 0666-71 | Plaintiffs' supplemental privilege log # 82, 83 |
| Q 0672-73 | Bulson's privilege log # 327, 328 |

8

Declaration Of Marc Toberoff



| | |
|---|---|
| Q 0674-680 | Shusters' supplemental privilege log # 9 |
| Q 0681-696 | Produced by Shusters- 63- 78 |
| Q 0697-701 | Plaintiffs' supplemental privilege log # 98 |
| Q 0702-724 | Plaintiffs' supplemental privilege log # 77, 78 |
| Q 0725-743 | Shusters' supplemental privilege log # 2 |
| Q 0744-748 | Shusters' supplemental privilege log # 3 |
| Q 0749- 754 | Plaintiffs' supplemental privilege log # 80, 81 |
| Q 0755-760 | Plaintiffs' supplemental privilege log # 82, 83 |
| Q 0761-762 | Bulson privilege log # 327, 328 |
| Q 0763-767 | Produced by Shusters- 79-83 |
| Q 0768-771 | Plaintiffs' supplemental privilege log # 98 |
| Q 0772-773 | Shusters' supplemental privilege log # 8 |
| Q 0774-777 | Produced by Shusters- 105- 108 |
| Q 0778-802 | Shusters' supplemental privilege log # 5 |
| Q 0803-804 | Produced by Shusters 138-39 |
| Q 0805-823 | Shusters' supplemental privilege log # 4 |
| Q 0824 | Produced by Plaintiffs- 000002050 |
| Q 0825 | Shusters' supplemental privilege log #6 |
| Q 0826 | Shusters' supplemental privilege log #7 |
| Q 0827 | Privileged communication between Law Offices of Marc Toberoff and Plaintiff Laura Siegel Larson dated August |

9

Ex O - 203

1  13, 2005, after the start of this litigation. This document
   is *not* required to be listed in a privilege log pursuant to the
2  parties' standing agreement. (Duplicate of Q 0278).

3  Q 0828-29        8/11/05 litigation letter from David Burg to M. Toberoff

4

5  Q 0830-31        8/11/05 litigation letter from David Burg to M. Toberoff

6  Q 0832           8/12/05 litigation letter from M. Toberoff to David Burg

7
   Q 0833           8/12/05 litigation letter from M. Toberoff to David Burg
8

9  Q 0836-38        Privileged communication between Law Offices of Marc
                    Toberoff and Plaintiffs Laura Siegel Larson and Joanne
10                  Siegel dated August 12, 2005, after the start of this litigation.
                    This document is *not* required to be listed in a privilege log
11                  pursuant to the parties' standing agreement. (Duplicate of Q 0285-
12                  289)

13 Q 0839           Wall Street Journal article by John Lippman; not in Plaintiffs'
14                  file.

15

16     I declare under penalty of perjury of the laws of the United States of America

17 that the foregoing is true and correct.

18     Executed on May 21, 2007 in Los Angeles, California.

19

20                                          _____
                                                   Marc Toberoff
21

22

23

24

25

26

27

28

Declaration Of Marc Toberoff

Ex O - 204

1     **PROOF OF SERVICE**

2     STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3          I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen
4     years and not a party to the within action; my business address is:  2049 Century Park East, Suite 2720,
      Los Angeles, California 90067.

5          On May 21, 2007, I served the attached documents described as **DECLARATION OF
      MARC TOBEROFF PURSUANT TO MAGISTRATE ZAREFSKY'S APRIL 30, 2007 ORDER**
6     as follows:

7     [X]  :<u>BY FACSIMILE</u>:

8          As follows: I caused the transmission of the above named documents to the fax number set
9     forth below, or on the attached service list.

10         James D. Weinberger
           FROSS ZELNICK LEHRMAN & ZISSU, P.C.
11         866 United Nations Plaza
           New York, NY 10017
12         Facsimile No. 212-813-5901

13         Patrick T. Perkins
           PERKINS LAW OFFICE, P.C.
14         1711 Route 9D
           Cold Spring, NY 10516
15         Facsimile No. 845-265-2819

16         Michael Bergman
           WEISSMAN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
17         9665 Wilshire Boulevard, Ninth Floor
           Beverly Hills, CA 90212
18         Facsimile No. 310-550-7191

19    [X]  :<u>BY MAIL</u>:

20         As follows: I am "readily familiar" with the firm's practice of collection and processing
      correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on
21    that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of
      business. I am aware that on motion of the party served, service is presumed invalid if postal
22    cancellation date or postage meter date is more than one day after date of deposit for mailing in
      affidavit.  I placed _____ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed
23    as follows:

24         James D. Weinberger
           FROSS ZELNICK LEHRMAN & ZISSU, P.C.
25         866 United Nations Plaza
           New York, NY 10017

26         Michael Bergman
27         WEISSMAN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
           9665 Wilshire Boulevard, Ninth Floor
28         Beverly Hills, CA 90212

Ex O - 205

1

  :(STATE) - I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

2

  [X]  :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at
3  whose direction the service was made.

4      I declare under penalty of perjury that the foregoing is true and correct.

5      EXECUTED on May 21, 2007, in Los Angeles, California.

6

7                                           _____
                                                  Nicholas C. Williamson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT P

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

May 21, 2007

Via Facsimile (213) 243-4182 and US Mail

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street- 44th Floor
Los Angeles, CA 90017

Re: Superman/Superboy Litigations, Case Nos. 04-CV-8400, 04-CV-8776 SGL (RZx)

Dear David:

Pursuant to your May 18, 2007 letter it is my understanding that you have taken over the
responsibility and custody from Jack Quinn of the documents stolen from my legal files,
including many privileged attorney-client communications, retained by your firm, at the
request of Warner Bros. (the "Documents").

I am also in receipt of Michael Bergman's letter to Jack Quinn dated May 18, 2007 to
which your May 18, 2007 letter responds. I do not believe that Mr. Bergman correctly
reflects Magistrate Zarefsky's order ("Order") in the context of defendants' motion to
compel the production of the non-privileged Documents or the hearing on April 30, 2007.

I do not believe, as stated in Mr. Bergman's cleverly worded letter, that Magistrate
Zarefsky ruled or intended that plaintiffs' "waived any privilege they might have had
with respect to any otherwise privileged Escrow Documents that has not been previously
been identified on **Plaintiffs' privilege logs**" or that "you turn over to Defendants every
Escrow Document that either was not previously produced by Plaintiffs or not identified
on **Plaintiffs' privilege logs**" as stated in Mr. Bergman's letter.

Firstly, it is clear from the motion papers and the hearing that Documents listed on the
privilege logs of non-party witnesses (*e.g.*, Jean Peavy and Warren Peary (the
"Shusters"), Don Bulson, Esq. (attorney for Michael Siegel), Kevin Marks, Esq., etc.) and
identified by me as such in a declaration would remain privileged and not be released.
There would be no justification to release such documents.

Secondly, as Mr. Bergman well knows, the parties have a standing agreement that
communications between the parties and their counsel after the commencement of these

Ex P - 207

LAW OFFICES OF   .RC TOBEROFF

David S. Eisen, Esq.
May 21, 2007
Page 2

actions ("Privileged Litigation Communications") need not be listed on a privilege log,
and accordingly no plaintiff or defendant has listed such Privileged Litigation
Communications on a privilege log.  As Plaintiffs were under no obligation to list such
communications in a privilege log, it was surely not Magistrate Zarefsky's intention that
such clearly privileged documents be released by your firm to defendants, merely as a
consequence of the theft from my legal files.

Magistrate Zarefsky's comment regarding waiver of privilege for failure to list a
Document on a privilege would clearly not meant to apply to the couple of Privileged
Litigation Communications that Plaintiffs were never obligated to list on a privilege log
in the first place pursuant to the parties' mutual agreement.  Moreover, the defendants
never made such an unreasonable request in their motion.

Mr. Bergman's overreaching construction of Magistrate Zarefsky's Order in an attempt to
get his hands on plainly privileged attorney-client communications is not well taken.

Enclosed please find my declaration dated May 21, 2007 ("Declaration") accounting for
each of the Bates stamped Documents, pursuant Magistrate Zarefsky's Order.

Mr. Bergman's letter stated that he would provide you with a copy of the transcript of the
April 30, 2007 hearing.  I hereby request that no Document be released by you until you
have had an opportunity to review the transcript in the context of the motion papers and
the relief which you requested from Mr. Bergman in your May 18, 2007 letter.

Any Documents not identified in my Declaration as listed in a privilege log or as
previously produced to Defendants are to be produced to Defendants, with the exception
of the clearly Privileged Litigation Communications identified in my declaration.

Under no circumstances should you release to defendants (i) the Privileged Litigation
Communications which consist of just two e-mails, four non-substantive fax confirmation
page and duplicates thereof (Bates nos. Q 0010, 0278, 0285-289, 0361 (duplicate), 0550
(duplicate), 0557-561 (duplicate), 0618 (duplicate), 0827 (duplicate), 0836-838
(duplicate)) and/or (ii) Documents identified in my declaration as listed in plaintiffs'
and/or third party privilege logs.

To the extent you release any of the Documents to the defendants, we request that they be
specified by Bates numbers in a cover letter and that plaintiffs be sent a copy of such
documents and cover letter.  Pursuant to Magistrate Zarefsky's Order please return all
originals and copies of the Documents to me after your review of my declaration and
completion of this process.

David S. Eisen, Esq.
May 21, 2007
Page 3


Thank-you for your professional attention to this matter.  If you have any questions, please do not hesitate to call.

Very truly yours,

Marc Toberoff

cc:  Micheal Bergman (via facsimile and U.S. Mail)
     Patrick Perkins, Esq. (via facsimile)
     James Weinberger, Esq. (via facsimile)

# EXHIBIT Q

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF Ohio in: | ) ) ) ) | Case No.: 1:06 MC 99 |
| | ) | Case Nos.    SA CV 04-8400 SJO (RZx) |
| JOANNE SIEGEL, *et al.*, | ) ) | SA CV 04-8776 SJO (RZx) |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| WARNER BROS. ENTERTAINMENT INC., | ) ) ) | |
| Defendant | ) | ORDER |

The court takes judicial notice of the fact that the Judge has decided the merits of the claims

by the parties in the above-entitled law suits. The court also takes judicial notice that the court has

not yet decided the damage-related issues. Previously, Warner Bros. Entertainment Inc., Time

Warner Inc., Warner Communications, Inc., Warner Bros. Television Production Inc., and

Defendant-Counterclaimant DC Comics (collectively, "Movants"), filed a Motion to Compel Ohio

resident Don Bulson, Esq. ("Bulson"), who was counsel for Michael Siegel, the deceased son of

Jerry Siegel, to produce documents responsive to a subpoena issued by this District Court in the

above-captioned actions and for other pertinent relief. Jerry Siegel, along with Joseph Schuster,

created the first Superman comic story, published in 1938. Plaintiffs in the two actions in California,

Joanne Siegel and her daughter, Laura Siegel Larson, are respectively the widow and daughter of

Jerry Siegel. One California action arises out of a purported termination of the rights of the Warner Bros. Defendants relating to literary works featuring the Superman character. Jerry Siegel's share relative to the grants by Jerry Siegel and Schuster is proportionally owned as follows: 50% by Joanne Siegel; 25% by Laura Siegel Larson and 25% by Michael Siegel, Jerry Siegel's son from his first marriage. The second California action involves a notice of termination relating only to comics featuring Super Boy, in which only Jerry Siegel held the copyright. His wife, daughter and son hold proportionate interests in the same percentages that they hold in respect to his rights to Superman.

The court, in an Order dated February 5, 2008, denied the Motion to Compel, except in regard to 15 specified documents identified in Movant's Reply Memorandum. The court required the Plaintiffs/Deponents to produce a more detailed privilege log to the Movants and to the court so that the court could make the ultimate determination, if required, regarding whether the documents were subject to the attorney/client privilege. The 15 pieces of correspondence are letters, faxes, and e-mails between Joanne and Laura Siegel and Don Bulson and Attorney Mark Toberoff, counsel for Joanne and Laura Siegel. The Siegels maintain that these communications are subject to the attorney/client joint interest exception. Thus, they argue that communications between counsel for Jerry Siegel and counsel for Joanne and Laura, as well as communications between Joanne and Laura and counsel for Jerry Siegel are privileged. After reviewing all of the 15 documents, and the claimed joint interest privilege which has been asserted, the court finds that none of the 15 documents are subject to the attorney/client privilege based on the joint interest exception. First, the court finds that none of the 15 communications reflected in log numbers 299, 301, 319, 325, 327, 328, 377, 378, 379, 380, 381, 386, 388, 393, and 412 are for the purpose of giving legal advice. Second, the court finds the communications reflected in log numbers 319, 325, 327, 328, 377, 378,

-2-

379, 380, 381, 386, 388, 393, and 412 are not made in regard to a joint and common legal or defense strategy relative to ongoing or upcoming litigation. Finally, the court finds that the interest of Michael Siegel, as reflected in these 13 communications, is separate and apart from those of Joanne and Laura Siegel. These documents relate to the offers back and forth between Mike Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and Bulson on behalf of Michael Siegel. The primary subject does not relate to settlement offers regarding Warner Brothers or the risk of litigation.

Consequently, if Movants are still desirous of pursuing this discovery, the 15 documents discussed above should be immediately turned over to them preparatory to their conducting a deposition of Bulson.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

April 1, 2008

-3-

# EXHIBIT R

Case 2:10-cv-03633-ODW-RZ    Document 42-14    Filed 08/30/10    Page 61 of 70    Page
ID #:2576
Case 2:04-cv-08400-SGL-RZ    Document 374    Filed 09/26/2008    Page 1 of 5

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                          Date:  September 26, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10
=======================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                     None Present
Courtroom Deputy Clerk                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                   None present

PROCEEDINGS:    ORDER REGARDING ESCROW DOCUMENTS

    The Court has been called upon to resolve a dispute over the disposition of certain
documents (hereinafter "escrow documents") in the possession of attorney Mr. David Eisen at the
law firm Arnold & Porter.  Given the passage of time, some background is in order.

    In June, 2006, three employees at Warner Bros. Entertainment, Inc. (including the
company's then general counsel, Mr. John Schulman) received packages containing documents
relating to the present litigation (the aforementioned escrow documents) from an anonymous
source.  The documents in question contained embarrassing and potentially questionable conduct
by plaintiffs counsel in this case.  The Vice President for Warner Bros., Mr. Wayne Smith,
thereafter undertook the following steps: (1) He reviewed each document but ceased such review
when it became apparent that the document was privileged, (2) contacted plaintiffs' counsel and
advised him that the documents had been received, and (3) refrained from using any information in
the documents unless and until there was either an agreement with opposing counsel or the court
had determined how to proceed with the document's disposition.  Moreover, Mr. Smith and Mr.
Schulman further decided to turn the documents over to a neutral third party pending resolution of
the disposition of the escrow documents, either pursuant to the agreement of the parties or order
of the Court.

MINUTES FORM 90                                                Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

Ex R - 213

Magistrate Judge Zarefsky was the discovery judge in this matter at the time the escrow documents in question were received by company employees at Warner Bros.  On June 30, 2006, the escrow documents were turned over to the escrow agent.  The escrow agent thereafter Bates-stamped a set of the escrow documents and then sent a copy of the same to plaintiffs' counsel, Mr. Toberoff.  The originals remained in the agent's possession in escrow.

On August 7, 2006, defendants served a request on plaintiffs for the production of the escrow documents, requesting, in particular, "[a]ll Writings referenced in the July 5, 2006 letter from [the escrow agent] to, among others, Marc Toberoff, Esq. and which were attached to or enclosed with the July 18, 2006, letter from [the escrow agent] to Marc Toberoff, Esq."  Plaintiffs' thereafter filed a response on September 6, 2006.  Subsequently, in connection with another discovery matter, Magistrate Judge Zarefsky ordered that plaintiffs "produce all privilege logs, including any revisions, by September 29, 2006."  In the subsequently-produced privilege log, plaintiffs' counsel allegedly did not assert privilege in the escrow documents.  At this point, defendants filed a motion to compel plaintiffs and their counsel to produce all non-privileged escrow documents not identified on any privilege log.

Defendants' motion to compel was heard by Magistrate Judge Zarefsky on April 30, 2007.  During the hearing, plaintiffs' counsel asserted that, except for two documents, all of the escrow documents had been either previously produced to defendants or had been listed on a privilege log:

> COURT: The question is: Have you otherwise produced [the documents]?  That's all that's all at issue, isn't it?

> MR. TOBEROFF: I have, your Honor.  I have put in a declaration unequivocally that even though I'm not obliged to do so, and jump through hoops of having to respond and own up to documents stolen from my legal files, an obligation that does not apply to the defendants in this case and does not apply to parties under Rule 34, I nonetheless went through every single one of those documents, which they, instead of returning the originals, returned to me with Bate stamps, checked it against our production, and found two documents that were non-privileged that hadn't been produced that consisted of letters from plaintiffs to DC Comics, which I produced.

> COURT: See, your declaration doesn't quite say that, Mr. Toberoff.  I read your declaration.

> MR. TOBEROFF: The intention of the declaration is to say exactly what I'm saying now; that I went through my files, not just the plaintiffs' files, which is all the motion pertains to, but all my files, all the third-party witness files —

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

Case 2:10-cv-03633-ODW-RZ   Document 42-14   Filed 08/30/10   Page 63 of 70   Page
ID #:2578
Case 2:04-cv-08400-SGL-RZ   Document 374   Filed 09/26/2008   Page 3 of 5

COURT: Forgive me for interrupting.  Your declaration does say
that.  What your declaration doesn't say is that you went through these,
let's call them [escrow] documents, even though that may not be an
accurate statement, you went through these [escrow] documents, and
that you verified that each of the [escrow] documents either had been
produced or had been listed on the privilege log.  It doesn't say that.

MR. TOBEROFF: That is the case, your Honor, and that was
certainly my intention to say that, and I'm saying that now.

COURT: All right, then we can get that cleared up immediately.

MR. TOBEROFF: I'd be happy to take an oath and say that,
because that is precisely what I did.

That during the hearing, Magistrate Judge Zarefsky, noting that
the previously provided declaration was unclear, issued the following
Order:

COURT: Now I told you, Mr. Toberoff, that I saw a little wiggle
room in your declaration.  You tell me you didn't mean for there to be
any.  So, here's what I'm going to do.  Not later than May 7th, that's a
week from today, I want you to submit a declaration that does identify
by the Bates numbers of the escrow documents and the corresponding
Bates numbers of documents already produced, those among the
escrow documents which are unprivileged and have already been
produced.

So, you take the Bates numbers of the escrow documents and
say, "Here are the corresponding Bates numbers of the documents that have already been pro
and correspond to the listings on the privilege log of the documents which have not been produced
because they were privileged. All right?  So, put that in your declaration.

Then the escrow holder . . . is to return to the plaintiffs any
documents which are identified in the declaration as being privileged
and having been identified on the privilege logs.

The others can be delivered to trial counsel for defendants
because they're either unprivileged, or, if they were privileged, privilege
has been waived because they weren't listed on the privilege log

. . . .

Do you understand what I've ordered you to put in the

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                            3

Ex R - 215

Case 2:10-cv-03633-ODW-RZ    Document 42-14    Filed 08/30/10    Page 64 of 70    Page
ID #:2579
Case 2:04-cv-08400-SGL-RZ    Document 374    Filed 09/26/2008    Page 4 of 5

declaration?

MR. TOBEROFF: I do, your Honor.

(emphasis added).  Magistrate Judge Zarefsky then repeated the outline of his Order to plaintiffs' counsel towards the end of the hearing: "Privileged documents get returned.  <u>The privilege documents that were listed on the privilege log get returned.</u>  The others get sent to defense counsel." (emphasis added).

On May 21, 2007, plaintiffs' counsel produced the declaration required by Magistrate Judge Zarefsky.  The declaration asserted privilege for the first time for a number of documents in escrow that had neither  been listed previously on a privilege log nor had been previously produced.  That plaintiffs' counsel's declaration went beyond the bounds of Magistrate Judge Zarefsky's order was made plain by a cover letter attached to his May 21, 2007, declaration: "Any documents not identified in my declaration as listed in a privilege log or as previously produced to defendants are to be produced to defendants, <u>with the exception of the clearly privileged litigation communications identified in my declaration.</u>"  (emphasis added).

Not surprisingly a dispute quickly ensued between the parties over whether plaintiffs' counsel's declaration sought to exclude from production to defendants categories of escrow documents ordered to be produced by Magistrate Judge Zarefsky's Order.  The matter was presented to this Court when Magistrate Judge Zarefsky had to step aside from serving as the discovery judge in this matter due to attend to personal matters.

The Court ordered the escrow agent to submit the particular escrow documents in question (the ones plaintiffs' counsel was asserting privilege for the first time) for an <u>in camera</u> review and ordered plaintiffs' counsel to submit a declaration "setting forth the grounds for any claim of privilege relating to said documents."  Both steps were eventually done and the Court is now in the possession of both.

Upon reflection the Court finds that plaintiffs' counsel's newly asserted claims for privilege are not well-taken. Pursuant to Magistrate Judge Zarefsky's order, any claim of privilege not previously asserted before that Order was deemed "waived."  Although plaintiffs suggest that such a reading of Magistrate Judge's order as not a fair one and lacks common sense, the language of his order is clear and unambiguous: Any escrow document not matching up to the privilege log or the declaration's list of previously-produced documents was to be produced to defendants; any assertion of privilege to such documents to be produced was deemed "waived."  That plaintiffs' counsel may have a basis to assert such privilege or otherwise challenge the propriety of producing such material on relevance grounds, etc., is inapposite.  If plaintiffs wished to press such new claims of privilege or any other basis for challenging production of the same, Magistrate Judge Zarefsky's Order deemed them waived.  What plaintiffs' counsel should have done at that point to preserve such assertions was to appeal Magistrate Judge Zarefsky's Order to this Court, in particular that section of his Order deeming any previously un-asserted grounds of privilege to be "waived."  Plaintiffs did not do so, and the time to appeal Magistrate Judge Zarefsky's Order to this

Ex R - 216

Case 2:10-cv-03633-ODW-RZ    Document 42-14    Filed 08/30/10    Page 65 of 70    Page
ID #:2580
Case 2:04-cv-08400-SGL-RZ    Document 374    Filed 09/26/2008    Page 5 of 5

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS.
ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a
corporation; and DOES 1-10
MINUTE ORDER of September 26, 2008

Court has long since expired.  See Local Rule 72-2.1.

     Magistrate Judge Zarefsky's Order is now the law of the case in this matter.  Plaintiffs'
argument that the parties had reached an agreement beforehand that any post-litigation attorney-
client communications did not have to be listed in a privilege log to preserve its privilege status is,
as explained in defendants' supplemental declaration to the Court's Order, simply mistaken.

     Accordingly, pursuant to the terms of Magistrate Judge Zarefsky's Order, the escrow agent
is **ORDERED** to produce to defendants' counsel forthwith any escrow document not previously
listed in a privilege log or as having been previously been produced.  That is to say, the escrow
agent is to match up the escrow documents with the privilege log entries and production
documents listed in Mr. Toberoff's May 21, 2007, declaration.  Thus, the nine documents produced
by the escrow agent to the Court for in camera review are to be produced to defendants' counsel
as those documents were not previously identified in a privilege log provided by plaintiffs.

     **IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                            5                         Initials of Deputy Clerk: jh

# EXHIBIT S

Case 2:10-cv-03633-ODW-RZ    Document 42-14    Filed 08/30/10    Page 67 of 70    Page
ID #:2582
Case 2:04-cv-08400-SGL-RZ    Document 366    Filed 12/04/2008    Page 1 of 4

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                          Date:  December 4, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10
================================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                  None Present
Courtroom Deputy Clerk                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                None present

PROCEEDINGS:    **ORDER REGARDING ESCROW HOLDER'S OCTOBER 16, 2008, LETTER
SEEKING CLARIFICATION OF COURT'S SEPTEMBER 26, 2008, ORDER**

    The Court has received and reviewed the escrow holder's October 16, 2008, letter (revised)
requesting clarification of the Court's September 26, 2008, Order, as well as the parties' respective
briefs filed in response to the escrow holder's letter.  In the letter, the escrow holder asks the Court
to answer the following questions:

            In addition to the 'nine documents,' you [also] ordered me to produce to
            defendants 'any escrow document not previously listed in a privilege log
            or as having previously been produced.'  You further said that I am to
            'match up the escrow documents with the privilege log entries and
            production documents listed on Mr. Toberoff's May 21, 2007,
            declaration.'  This leads to the following issues, as to which I would
            appreciate the Court's guidance: (1) Defendants' counsel has informed
            me his position is that escrow documents listed on the privilege log of
            [third party] Mr. Bulson must be produced.  Plaintiffs' counsel has
            informed me his position is that documents listed on Mr. Bulson's

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                            1

Ex S - 218

privilege log must not be produced.  I would request the Court's advice
as to which position is correct. (2) With respect to the 'match up' of the
relevant privilege logs and Mr. Toberoff's declaration, the parties
disagree with one another as to whether I am to compare the
description of each document in the privilege log to the corresponding
escrow document.

The Court's September 26, 2008, Order was meant to dispose of the <u>one</u> remaining dispute
between the parties concerning the escrow documents — the plaintiffs' assertion of privilege over
nine of the documents held in escrow that were listed on Mr. Toberoff's May 21, 2007, declaration
as ones to which privilege had not previously been asserted during this litigation.  This declaration
was created at the direction of an order Magistrate Judge Zarefsky entered on April 30, 2007,
which additionally spelled out the ramifications flowing from the information disclosed in said
declaration.  Specifically, Magistrate Judge Zarefsky stated:

> I want you to submit a declaration that does identify by the Bates
> numbers of the escrow documents and the corresponding Bates
> numbers of documents already produced, those among the escrow
> documents which are unprivileged and have already been produced.
> So, you take the Bates numbers of the escrow documents and say,
> "Here are the corresponding Bates numbers of the documents that
> have already been produced and correspond to the listings on the
> privilege log of the documents which have not been produced because
> they were privileged.  All right?  So, put that in your declaration.  Then
> the escrow holder . . . is to return to the plaintiffs any documents which
> are identified in the declaration as being privileged and having been
> identified on the privilege logs.  The others can be delivered to trial
> counsel for defendants because they're either unprivileged, or, if they
> were privileged, <u>privilege has been waived because they weren't listed
> on the privilege log</u>. . . . <u>Privileged documents get returned.  The
> privilege documents that were listed on the privilege log get returned.
> The others get sent to defense counsel.</u>

(emphasis added).

As the escrow holder noted in his correspondence to the parties shortly after Magistrate
Judge Zarefsky's April 30, 2007, Order, was issued: "In the transcript, Magistrate Judge Zarefsky
does seem to announce a simple protocol for the so-called Escrow Documents: documents which
appear on [prior] privilege logs are protected and should not be turned over to defendants, and
documents not on [previous] privilege logs are not protected and should be produced to
defendants."  (Decl. Marc Toberoff, Ex. F).  What was a simple process, however, became
complicated by "additional issues/arguments" submitted by Mr. Toberoff after the hearing
concerning the scope of Magistrate Judge Zarefsky's April 30, 2007, Order.  Specifically, plaintiffs
contended that certain escrow documents were privileged pursuant to a "gentleman's agreement"

MINUTES FORM 90                                           Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          2

Ex S - 219

Case 2:10-cv-03633-ODW-RZ     Document 42-14     Filed 08/30/10     Page 69 of 70     Page
                                        ID #:2586
       Case 2:04-cv-08400-SGL-RZ     Document 386     Filed 12/04/2008     Page 3 of 4

the parties had reached at the onset of the litigation concerning post-litigation communications, and
that another escrow document (the cover letter attached when the escrow documents were
delivered to defendants) was not previously in plaintiffs possession and contained privileged
material therein.  Defendants for their part sought to litigate the propriety of the invocation of
privilege contained in prior privilege logs themselves (particularly, the invocation of the common
interest privilege on a log submitted by third party Don Bulson) and also sought for the escrow
holder to examine the descriptions in Mr. Toberoff's declaration to see if they accurately described
those escrow documents.  (Decl. Marc Toberoff, Ex. G (defense counsel at September 17, 2007,
hearing, informing Court that one of the things defendants sought was for the escrow holder "to
take Mr. Toberoff's declaration and to go document number by document number and ensure that
the documents that he identified on his declaration really were what he said they were")).

       This Court ordered the escrow holder to produce for <u>in camera</u> inspection the nine
documents referenced by plaintiffs' newly-asserted contention of being privileged.  This was done
and the parties submitted further pleadings with respect to the assertion of privilege concerning
those documents.  At the same time, defendants sought to raise the additional considerations with
the Court, arguments which the Court informed defense counsel it was not inclined to entertain.
(Decl. Marc Toberoff, Ex. G ("The Court:  Let's not talk about the ones that have been done.  Let's
talk about the nine that we have left.  I want to resolve this.  We're going to move on here, counsel.
What are we going to do about these nine documents")).

       On September 26, 2008, the Court issued an Order resolving what had initially been brought
to the Court's attention back in September, 2007, that is, whether the escrow holder was required
to turnover to defense counsel the nine documents.  The Court held that plaintiffs' new assertions
of privilege were trumped by the fact that Magistrate Judge Zarefsky's Order provided that "any
claim of privilege not previously asserted before that Order was deemed 'waived'"; that plaintiffs
never appealed that order; and that, as a consequence, "Magistrate Judge Zarefsky's Order is now
the law of the case in this matter."  Essentially, the Court's September 26, 2008, Order sought to
restore the <u>status quo ante</u> by simply enforcing Magistrate Judge Zarefsky's April, 2007, Order.
Similarly, the Court's Order did not address, nor did it seek to address, the extraneous issues
being pressed by defendants, issues going beyond those addressed by Magistrate Judge
Zarefsky's Order.

       The Court thereupon ordered the escrow holder to perform the limited task set forth in
Magistrate Judge Zarefsky's April, 2007, Order:  Compare the Toberoff declaration to the escrow
documents in his possession, and turnover to defendants those for which privilege had not
previously been asserted.

       To answer the escrow holder's two-part question, the Court's response is as follows:

              (1) No.  The escrow documents listed on the privilege log of Mr.
              Bulson are <u>not</u> to be produced, as such production exceeds the scope
              of Magistrate Judge Zarefsky's April 30, 2007, Order, which was
              predicated on the turnover of those escrow documents to which no prior

MINUTES FORM 90                                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                            3

Ex S - 220

Case 2:10-cv-03633-ODW-RZ    Document 42-14    Filed 08/30/10    Page 70 of 70    Page
Case 2:04-cv-08400-SGL-RZ    Document 386    Filed 12/04/2008    Page 4 of 4
ID #:2585

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS.
ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a
corporation; and DOES 1-10
MINUTE ORDER of December 4, 2008

      privilege log had listed them as privileged; Mr. Bulson listed the escrow
documents in question in his privilege log well before Magistrate Judge
Zarefsky's April 30, 2007, Order.

      (2)  No.  The escrow holder is not to compare the description of each
document in Toberoff's declaration to the corresponding escrow
document to ensure the description's accuracy.  Rather, the task of
matching up or review is done only insofar as the escrow holder is
charged with carrying out the task, as set forth in Magistrate Judge
Zarefsky's April 30, 2007, Order, of locating (using the Bates stamp
legend) those documents which appear on Toberoff's May, 2007,
declaration as having previously been listed on a privilege log and
turning them over to plaintiffs, and turning over the remainder (the
aforementioned "nine escrow documents") to defendants.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                             4             Initials of Deputy Clerk __jh_____

Ex S - 221