# EXHIBIT T

# ARNOLD & PORTER LLP

**David S. Eisen**
David.Eisen@aporter.com

213.243.4182
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

December 10, 2008

**_Via Facsimile and Hand-Delivery_**

Michael Bergman, Esq.
Weissmann Wolff Bergman Coleman
  Grodin & Evall, LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA  90212

Marc Toberoff, Esq.
Law Offices of Marc Toberoff
2049 Century Park East, Suite 2720
Los Angeles, CA  90067

        Re:    Siegel & Larson v. Time Warner, Inc.

Gentlemen:

    Pursuant to the Court's latest order, I am providing Mr. Bergman copies of the documents with Bates numbers listed below.  These documents are the ones in Mr. Toboroff's declaration which are <u>not</u> identified as having been listed on a privilege log or previously produced:

        1-7, 10, 25, 26, 51, 52, 278, 279-80. 281-82, 283, 284, 285-89,
        290-96, 300, 314, 315, 351, 361, 550, 551-52, 553-54, 555,
        556, 557--61, 562-569, 587, 588, 618, 827, 828-29, 830-31,
        832, 833, 836-38, 839.

    I am providing to Mr. Toboroff the originals of all of the Escrow Documents, except for the those sent to the Court, and as to those I am providing Mr. Toboroff with copies.  I do not intend to retain copies of any of the documents.  Mr. Toberoff, if you feel my list is inaccurate, please contact me immediately.

    Please feel free to send someone to pick up your respective package from my office after noon tomorrow, December 11.  I believe this terminates my activities in connection with the so-called Escrow Documents.

                        Sincerely,

                        DAVID S. EISEN

# EXHIBIT U

1 | WEISSMANN WOLFF BERGMAN
    COLEMAN GRODIN & EVALL LLP
2 | Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3 | Adam Hagen (SBN 218021)
    9665 Wilshire Boulevard, Ninth Floor
4 | Beverly Hills, California 90212
    Telephone: (310) 858-7888
5 | Fax: (310) 550-7191

6 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
7 | James D. Weinberger (Admitted *pro hac vice*)
    866 United Nations Plaza
8 | New York, New York 10017
    Telephone: (212) 813-5900
9 | Fax: (212) 813-5901

10 | PERKINS LAW OFFICE, P.C.
     Patrick T. Perkins (Admitted *pro hac vice*)
11 | 1711 Route 9D
     Cold Spring, New York 10516
12 | Telephone: (845) 265-2820
     Fax: (845) 265-2819

13 |

14 | Attorneys for Defendants and Counterclaimant

15 |               UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
16 |

| | |
|---|---|
| 17 | JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No. SA CV 04-8400 SGL (RZx)<br>Case No. SA CV 04-8776 SGL (RZx) |
| 18 | Plaintiffs,<br>vs. | Hon. Stephen G. Larson, U.S.D.J. |
| 19<br>20 | WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br>Defendants. | **NOTICE OF MOTION AND JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENT** |
| 21<br>22 | JOANNE SIEGEL and LAURA SIEGEL LARSON,<br>Plaintiffs, | **DISCOVERY MATTER LOCAL RULE 37** |
| 23 | vs. | Time: 10:00 a.m. |
| 24<br>25<br>26 | TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10,<br>Defendants. | Date: January 26 2009<br>Place: Courtroom 1<br><br>Discovery Cutoff: November 17, 2006 |
| 27 | AND RELATED COUNTERCLAIMS | |

28 |

{F0379305.1 }

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT on January 26. 2009 or as soon thereafter as

3  the matter may be heard in the above-entitled action before the Honorable Stephen

4  G. Larson, United States District Judge, United States District Court for the Central

5  District of California, Eastern Division, 3470 Twelfth Street, Riverside, California,

6  Courtroom 1, defendant and counterclaimant DC Comics, and defendants Warner

7  Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., and

8  Warner Bros. Television Production Inc. (collectively "Defendants"), will and

9  hereby do move the Court to rule on this jointly filed stipulation pursuant to L.R.

10 37-2.

11       This motion is made pursuant to Rules 26 and 37 of the Federal Rules of Civil

12 Procedure and L.R. 37.  Defendants contend that a certain withheld document that

13 should have been produced in response to discovery requests served in 2005 is

14 likely to lead to the discovery of admissible evidence, and good cause therefore

15 exists for it.  Defendants have met and conferred with Plaintiffs Joanne Siegel and

16 Laura Siegel Larson ("Plaintiffs" or the "Siegels") in writing on June 24, 2008 and

17 July 3, 2008 and by conference with counsel on November 21, 2008, in accordance

18 with Local Rule 37-1 of the Local Rules of the United States District Court for the

19 Central District of California ("L.R."), and the parties were unable to resolve their

20 discovery dispute regarding Plaintiffs' obligation to turn over the withheld

21 document in question which Defendants believe is directly responsive to their

22 outstanding discovery requests served three years ago in this case.

23       This motion is based on this notice of motion; the Joint Stipulation Re:

24 Defendants' Motion to Compel Production of Withheld Document; the declarations

25 submitted by the parties; any supplemental memoranda that may be filed in

26 connection with the Joint Stipulation; the pleadings and papers on file in this action;

27

28

{F0379305.1 }

1

1 | and on such oral argument and other matters as the Court may properly consider at

2 | the time of the hearing of this motion.

3 | DATED:  December 30, 2008        WEISSMANN WOLFF BERGMAN
                                      COLEMAN GRODIN & EVALL LLP

4

5                                            -and-

6                                  FROSS ZELNICK LEHRMAN & ZISSU, P.C.

7                                            -and-

8                                  PERKINS LAW OFFICE, P.C.

9                                  By: _____

10                                     Michael Bergman

11                                 Attorneys for Defendants and Counterclaimant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex U - 225

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 7 of 35   Page
ID #:592
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 4 of 23

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................

I.      DEFENDANTS' AUTHORITIES .......................................................................

II.     PLAINTIFFS' AUTHORITIES .......................................................................ii

JOINT STIPULATION ...............................................................................................

I.      DEFENDANTS' INTRODUCTORY STATEMENT .......................................

II.     PLAINTIFFS' INTRODUCTORY STATEMENT .......................................1

III.    DEFENDANTS' CONTENTIONS ....................................................................

        A.     Relevant Background ..............................................................................

        B.     Argument   ..............................................................................................

               1.     Since Plaintiffs Have Threatened To "Hold Defendants Liable"
                      If They Disclose Information About the Withheld Document,
                      Plaintiffs Should Be Compelled to Submit The Withheld
                      Document To The Court For In Camera Review In Deciding
                      This Motion..................................................................................

               2.     The Court Should Compel Plaintiffs to Produce the Withheld
                      Document.....................................................................................

               3.     Plaintiffs Cannot Shield Documents from Discovery by
                      Manipulating the Mediation Process...........................................

IV.     PLAINTIFFS' CONTENTIONS....................................................................6

        A.     Relevant Background ..............................................................................6

        B.     Argument.................................................................................................9

               1.     The Privileged Document Is Clearly Protected by the
                      Attorney-Client Privilege, the Attorney Work-Product
                      Doctrine and the Joint Interest Privilege ....................................9

                      a.     Attorney-Client Privilege and Attorney Work-Product
                             Doctrine ..........................................................................10

                      b.     Joint -Interest Privilege..................................................11

               2.     The Privileged Document Is Additionally Protected by the
                      Express Terms of the Parties' Detailed Confidentiality
                      Agreement ...................................................................................13

{P0379305.1 }

i

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 8 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 5 of 23
ID #:2903

3.      Defendants' Conduct in Bringing This Motion Warrants
Sanctions ................................................................................15

V.    DEFENDANTS' CONCLUSION.............................................................

VI.   PLAINTIFFS' CONCLUSION..................................................17

## TABLE OF AUTHORITIES

**I.    Defendants' Authorities**

<u>Rules</u>

Fed. R. Civ. P. 26(b)(1) ....................................................................

Fed. R. Civ. P. 26(e)(1)......................................................................

Fed. R. Evid. § 408 ..........................................................................

**Treatise**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence ..............

**II.    Plaintiff's Authorities**

**Cases**

*Clarke v. American Commerce Nat'l Bank,*
974 F.2d 127 (9th Cir. 1992) ....................................................10

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985) ....................................................12

*Hickman v. Taylor,*
329 U.S. 495 (1947)..............................................................11

*Hyundee v. United States,*
355 F.2d 183 (9th Cir. 1965) ....................................................11

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129,*
902 F.2d 244 (4th Cir. 1990) ....................................................13

Ex U - 227

*In re Regents of Univ. of Cal.*,
  101 F.3d 1386 (Fed. Cir. 1996) ..................................................................12
*Loustalet v. Refco, Inc.*,
  154 F.R.D. 243 (C.D. Cal. 1993) ................................................................12
*Reygo Pac. Corp. v. Johnston Pump Co.*,
  680 F.2d 647 (9th Cir. 1982) .....................................................................16
*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
  795 F.Supp. 329 (C.D. Cal. 1992) ..............................................................12
*State of Ohio v. Arthur Andersen & Co.*,
  570 F.2d 1370 (10th Cir. 1978) ..................................................................12
*United States ex. rel. Burroughs v. DeNardi Corp.*,
  167 F.R.D. 680 (S.D. Cal. 1996) ................................................................11
*U.S. v. Under Seal*,
  902 F.2d 244 (4th Cir. 1990) .....................................................................12
*U.S. v. American Tel. & Tel. Co.*,
  642 F.2d 1285 (D.C. Cir. 1980) .................................................................12
*U.S. v. Schwimmer*,
  892 F.2d 237 (2d. Cir. 1989) .....................................................................12
**Rules**
Fed.R.Civ.P. 26 ...........................................................................10-11
Fed.R.Civ.P. 37 ..................................................................................16
F.R.E. 501 ........................................................................................10
**Treatises**
Restatement (Third) of the Law Governing Lawyers, § 76(1) .........................11-12
Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE
TRIAL § 11:1960 (2006)........................................................................16
Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE
TRIAL § 11:825 (2008)..........................................................................11

Ex U - 228

**JOINT STIPULATION**

## I.   DEFENDANTS' INTRODUCTORY STATEMENT

Defendant and counterclaimant DC Comics, and defendants Warner Bros.
Entertainment Inc., Time Warner Inc., Warner Communications Inc., and Warner
Bros. Television Production Inc. (collectively "Defendants") move to compel
Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or "the Siegels") to
produce a document (the "Withheld Document") that is responsive to Document
Request Nos. 59 and 63 of Defendants' First Set of Document Requests served in
2005. Plaintiffs disclosed the existence of the Withheld Document for the first time
in the context of the Court-ordered mediation, and asserted that it was protected
from any disclosure under a mediation confidentiality agreement executed by the
parties the day prior to the Withheld Document's disclosure. In an attempt to shield
the document from production Plaintiffs have (a) refused to produce a copy of the
Withheld Document, asserting that they are excused from doing so because they
first disclosed the document's existence in the context of the parties' mediation; and
(b) threatened to "hold defendants liable" for the breach of the mediation
confidentiality agreement should they disclose to the Court the existence of the
Withheld Document in making this motion. Plaintiffs should not be permitted to
manipulate the mediation process to shield documents that they are otherwise
obliged to produce.

## II.   PLAINTIFFS' INTRODUCTORY STATEMENT

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") oppose the
motion by Defendants DC Comics, Warner Bros. Entertainment Inc., Time Warner
Inc., Warner Communications Inc. and Warner Bros. Television Production Inc.
("Defendants") to compel production of a written communication (the "Privileged
Document") between Plaintiffs, the executor of the Estate of Joseph Shuster, and
their mutual attorney, Marc Toberoff, created shortly before and in anticipation of

{F0379305.1 }

1

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 11 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 295   Filed 12/30/08   Page 8 of 23
ID #:2598

1  the parties' settlement mediation, which commenced on May 8, 2008.   The

2  existence of the Privileged Document was disclosed in a May 2, 2008 letter marked

3  "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY" from Mr. Toberoff

4  to Defendants' counsel, Michael Bergman, pursuant to the JAMS Confidentiality

5  Agreement entered into by the parties on or around April 30, 2008 in furtherance of

6  the court-ordered settlement mediation.  Plaintiffs oppose Defendants' attempt to

7  seize this document or to place it before this Court, the trier of fact, on the grounds

8  that:  (1) the Privileged Document is protected by the attorney-client privilege, the

9  attorney work-product doctrine and the joint interest privilege; (2) Plaintiffs were

10 under no obligation to list this privileged post-litigation communication in a

11 privilege log, pursuant to the parties' standing agreement, admitted to by

12 Defendants; (3) Plaintiffs would not have disclosed the Privileged Document except

13 in the context of the parties' settlement mediation and Defendants' execution of the

14 Confidentiality Agreement; (4) the Privileged Document is also squarely protected

15 by the Confidentiality Agreement from being used in any fashion by Defendants in

16 this litigation; and (5) the privileged communication regarding settlement has

17 absolutely no relevance to the remaining accounting claims in this action.

18        Defendants, by their motion and gamesmanship, have willfully breached the

19 Confidentiality Agreement, violated the spirit and objectives of the confidential

20 settlement mediation process, and chilled candid settlement discussions.

21 Defendants' distasteful abuse of the confidential settlement process should not be

22 tolerated by this Court.  Defendants' improper motion should be denied in its

23 entirety and they should be sanctioned for their conduct.

24 **III.   DEFENDANTS' CONTENTIONS**

25        **A.   Relevant Background**

26        On June 21, 2005 Defendants served their First Set of Document Requests on

27 Plaintiffs. *See* Declaration of Michael Bergman dated November 18, 2008,

28

Case 2:10-cv-03633-ODW-RZ    Document 42-15    Filed 08/30/10    Page 12 of 35    Page
ID #:2597
Case 2:04-cv-08400-ODW-RZ    Document 395    Filed 12/30/08    Page 9 of 23

1    submitted herewith ("Bergman Decl."), ¶ 2. Responses and objections were served

2    by Plaintiffs on July 21, 2005.

3            These requests included *inter alia*,

4            Request No. 59: All Writings concerning any disposition
             of rights relating to Superman, including but not limited to
5            any solicitation, offer, option, agreement or license.

6            *Plaintiffs objected to Request No. 59 as follows*:

7

8            Plaintiffs further object to this request on the grounds that
             it is vague, ambiguous, overbroad, burdensome and
9            oppressive. Plaintiffs further object to this request on the
             grounds that it is duplicative of the above requests.
10           Subject to and without waiving the foregoing objections,
             Plaintiffs will produce all non privileged documents they
11           are able to determine are responsive to this request.

12

13           Document Request No. 63:

14           All Writings concerning the Shuster Representatives,
             including but not limited to any communication or
15           agreements between Plaintiffs and any of the Shuster
             Representatives.
16

17           *Plaintiffs objected to Request No. 63 as follows*:

18           Plaintiffs further object to this request on the grounds that
             it is vague, ambiguous, overbroad, burdensome and
19           oppressive. Subject to and without waiving the foregoing
             objections, Plaintiffs will produce all non-privileged
20           documents concerning any communication or agreement
             between Plaintiffs and any of the Shuster Representatives
21           relating to "Superman" or "Superboy" that they determine
             are responsive to this request.
22

23

24   *Id.* ¶ 2, Ex. A.

25           On May 2, 2008, counsel for Plaintiffs disclosed the existence of the

26   Withheld Document in a letter to counsel for Defendants *one day* after the parties

27   had entered into a JAMS Confidentiality Agreement as part of the mediation

28   process. *Id.* ¶¶ 4-5, Ex. B. The letter disclosed the existence, and characterized the

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 13 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 10 of 23
ID #:3395

1  subject matter of the Withheld Document, and classified this disclosure as being

2  made "pursuant to the executed 'JAMS Confidentiality Agreement' and solely in

3  connection with the upcoming mediation sessions." *Id.*

4      By letter dated June 24, 2008, Defendants requested the immediate

5  production of the Withheld Document as being expressly encompassed by requests

6  Nos. 59 and 63. *Id.* ¶ 6, Ex. <u>C</u>.  In the letter, Defendants indicated their intent to

7  seek judicial relief if Plaintiffs failed to voluntarily produce the document, and

8  invited a meet and confer. *Id.* In response, Plaintiffs' counsel stated that Plaintiffs

9  refused to produce the Withheld Document and threatened to hold Defendants liable

10 for breach of the mediation confidentiality agreement and move to enjoin

11 Defendants in the event that they disclosed the existence of the document.[1]  *Id.* ¶ 7,

12 Ex. <u>D</u>.  On November 21, 2008, the parties personally met and conferred. *Id.* ¶ 8.

13 During this conversation, Plaintiffs' counsel reiterated that he was unwilling to

14 produce the Withheld Document.

15     The Court has currently scheduled two trials in this matter.  Bergman Decl. ¶

16 10.  Defendants believe that the Withheld Document falls squarely within the scope

17 of discovery requests served in this case to which Plaintiffs have expressly agreed to

18 produce "all documents." *Id.*, Ex. <u>B</u>.

19     **B.    Argument**

20          **1.    Since Plaintiffs Have Threatened To Hold Defendants Liable If
                  They Disclose Information About the Withheld Document,**
21                **Plaintiffs Should Be Compelled to Submit The Withheld
                  Document To The Court For In Camera Review In Deciding**
22                **This Motion**

23

24

25

26 [1] These sorts of threats and attempts at intimidation have become commonplace with
   counsel for Plaintiffs, who recently made similar threats against David Eisen and his firm
   (Arnold & Porter) if they complied with this Court's September 26, 2008 Order
27 compelling production of the so-called "escrow documents."  Bergman Decl. ¶ 9.  As a
   result of Plaintiff's counsel's threats, there has been no compliance with the Court's Order.
28 *Id.*

{F0379305.1}4

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 14 of 35   Page
ID #:2639
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 11 of 23

1    In light of Plaintiffs' threats to hold Defendants liable if they disclose any
2    information about the Withheld Document – including the fact of its existence –
3    Defendants are put in the untenable position of having some knowledge of the
4    contents of a document that they believe was improperly concealed, while being
5    threatened with a lawsuit should they disclose any information about the document
6    while seeking the Court's assistance in compelling its production.  Bergman Decl. ¶
7    7-8, Ex. D.  Despite Defendants' belief that the facts concerning the Withheld
8    Document are not protected by the mediation agreement, *see infra* III(B)(3), in an
9    abundance of caution, Defendants have refrained from disclosing herein any details
10   concerning the Withheld Document and instead, respectfully request that the Court
11   order Plaintiffs to submit the document to the Court for in camera review so that
12   Your Honor may verify that it falls squarely within the scope of discovery requests
13   to which Plaintiffs have committed to produce "all documents."

14          **2.    The Court Should Compel Plaintiffs to**
15                  **Produce the Withheld Document**

16   The Withheld Document is directly responsive to Document Request Nos. 59
17   and 63 to which Plaintiffs committed to make a full response, and therefore should
18   have been produced pursuant to Fed. R. Civ. P. 26(e)(1) (parties have a duty to
19   seasonably supplement discovery responses to the extent they learn of new
20   responsive facts or evidence).  Although Plaintiffs' prior agreement to produce "all
21   documents" responsive to these requests resolves any issues of relevance, it is worth
22   noting that documents responsive to requests nos. 59 and 63 remain relevant to the
23   issues before this Court in the upcoming accounting trial to determine the scope of
24   Plaintiffs' right to share in the profits from their co-owned share in any copyrights
25   they have recaptured.  *See* Fed. R. Civ. P. 26(b)(1) (authorizing parties to obtain
26   discovery regarding any matter, not privileged, which is relevant to the subject
27   matter involved in the pending action, and all information "reasonably calculated to
28   lead to discovery of admissible evidence.")  The very fact that Plaintiffs chose to

Case 2:10-cv-03633-ODW-RZ    Document 42-15    Filed 08/30/10    Page 15 of 35    Page
Case 2:04-cv-08400-ODW-RZ    Document 295    Filed 12/30/08    Page 12 of 23
ID #:2609

1  characterize the contents of the Withheld Document when it served their interests to

2  do so is further evidence that the Withheld Document contains evidence relevant to

3  this case.

4       In addition to objecting to production of the Withheld Document because it

5  was revealed in the context of the mediation, Plaintiffs' counsel has argued it need

6  not be produced for various other reasons.  Defendants believe that there is no basis

7  for Plaintiffs' refusal to produce the document in question.  However, because

8  Defendants have not been able to see the document -- and are, in any event

9  constrained by Plaintiffs' counsel's threats -- Defendants cannot address those

10  reasons in this motion.

11       **3.    Plaintiffs Cannot Shield Documents from Discovery by**
12              **Manipulating the Mediation Process**

13       Plaintiffs were obligated to produce the Withheld Document as it is directly

14  responsive to outstanding document requests.  They cannot avoid their obligation to

15  have done so by improperly hiding the document in question under the cloak of the

16  confidential mediation process. *See generally* Fed. R. Evid. § 408.  Mediation is not

17  a license to withhold evidence that the parties were and are otherwise obliged to

18  produce.  The obligation of the parties to comply with "the liberal rules of discovery

19  embodied in the Federal Rules of Civil Procedure" is paramount and should not be

20  compromised by gamesmanship. *See* 2 Jack B. Weinstein & Margaret A. Berger,

21  Weinstein's Federal Evidence §408.07 (Joseph M. McLaughlin, ed., Matthew

22  Bender 2 ed. 2008) ("a party is not allowed to use Rule 408 as a screen for curtailing

23  an adversary's rights of discovery.")  Accordingly, Plaintiffs should not be

24  permitted to use the mediation process to deprive Defendants of discovery to which

25  they are rightfully entitled.

26  **IV.    PLAINTIFFS' CONTENTIONS**

27       **A.    Relevant Background**

28       As has been admitted repeatedly by Defendants, the parties agreed at the

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 16 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 13 of 23
ID #:2609

1   outset of this case that neither side needs to disclose in a privilege log privileged

2   communications created *after* the commencement of this litigation.  *See* Declaration

3   of Marc Toberoff in Support of Joint Stipulation Re: Defendants' Motion to Compel

4   Production ("Toberoff Decl."), Ex. A (September 17, 2007 Joint Stipulation, at

5   13:16-18 , 32–34).

6          In anticipation of the parties' court-ordered mediation, the parties negotiated

7   and entered into a JAMS Confidentiality Agreement on or around April 30, 2008.

8   Toberoff Decl., Ex. B ("Confidentiality Agreement"); Ex. C (Court Order of March

9   31, 2008).  This agreement substantially strengthened the standard provisions of the

10  "JAMS Confidentiality Agreement" in numerous respects, and was specifically

11  negotiated by the parties' counsel to ensure that the parties could speak freely during

12  settlement discussions, without fear that their disclosures would be hyped or

13  directed against them in litigation if a settlement was not reached.  Paragraph 5 of

14  the Confidentiality Agreement provides the following:

15         "All parties, counsel and any other persons attending any Settlement
16     Conference shall treat all such discussions as strictly confidential in every
       respect, including without limitation, the contents or substance of any oral or
17     written statements made at the Settlement Conference, and all other
       substantive aspects of such Settlement Conference ("Confidential Settlement
18     Information").  Without limitation, any document that is marked 'Confidential
       – For Settlement Purposes Only' and is disclosed or produced at or in
19     connection with a Settlement Conference shall be treated as Confidential
       Settlement Information.  Confidential Settlement Information shall not be
20     disclosed to anyone other than the parties, their counsel or the mediator *or*
       *used in any way, shape or form for any purpose, including impeachment, in*
21     *any pending or future proceeding in any court, in whole or in part, directly*
       *or indirectly*, orally or in writing, except as set forth in paragraph 6 below."
22

23  Toberoff Decl., Ex. B at 2 (emphasis added).  Paragraph 6 provides that such

24  documentation will not be considered Confidential Settlement Information *only* if it

25  is:

26         "(a) publicly available, (b) already in possession of the adverse party or their
       counsel prior to its disclosure by a party or their counsel at a Settlement
27     Conference, or (c) is developed independently of any Settlement Conference
       and without reference thereto."
28

1    *Id.* Paragraph 4 of the Confidentiality Agreement further provides that "[t]he

2    privileged character of any information or documents is not altered by the disclosure

3    to the mediator or the disclosure in any Settlement Conference." *Id.*

4         Paragraph 7 expressly limits disclosures to the Court regarding the parties'

5    settlement communications, connotes the parties' sensitivity to abusing any aspect

6    of their settlement discussions in Court, and even specifies the limited language to

7    be used in the "joint report" to the Court outlining the parties' settlement efforts if

8    the parties did not succeed in settling this case. *Id.*

9         On May 2, 2008, Plaintiffs' counsel disclosed the existence of the Privileged

10   Document and briefly described its general nature in a letter to Defendants' counsel

11   marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY."[1]

12   Declaration of Michael Bergman ("Bergman Decl."), Ex. B. The first sentence of

13   the letter expressly states: "This letter is sent pursuant to the 'JAMS Confidentiality

14   Agreement' and solely in connection with the upcoming settlement mediation

15   sessions." *Id.*

16         Defendants never requested any further information regarding this

17   confidential disclosure until after the settlement mediation, when Defendants'

18   counsel suddenly demanded production of the Privileged Document in a June 24,

19   2008 letter to Plaintiffs' counsel. Bergman Decl., Ex. C. Defendants' counsel failed

20   to provide any explanation why the Privileged Document would not be protected by

21   privilege and the Confidentiality Agreement.

22

23   [1] Defendants breach the Confidentiality Agreement by pin-pointing discovery requests that
allegedly encompass the Privileged Document and forcing Plaintiffs, in explaining the

24   error of Defendants' motion, to disclose more information about the contents of the
Privileged Document. For purposes of opposing Defendants' motion to compel, Plaintiffs

25   have disclosed to this Court that the Privileged Document consists of a communication
between Plaintiffs, the Executor of the estate of Superman co-creator Joe Shuster, and

26   Plaintiffs' counsel (who represents both parties) regarding settlement of this action.
Toberoff Decl. ¶ 9. However, the document has no significance or relevance to the legal

27   issues remaining for trial – specifically whether the "vertically integrated" transactions
between DC Comics and Warner Bros. inequitably reduce Plaintiffs' profit share and

28   Defendants' accounting to Plaintiffs for Superman profits.

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 18 of 35   Page
ID #:2809
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 15 of 23

1    In a responsive letter dated July 3, 2008, Plaintiffs' counsel asserted that the

2  connnunication between Plaintiffs, the Shuster Estate and their mutual counsel is

3  clearly privileged and additionally shielded from disclosure or use in this lawsuit by

4  the Confidentiality Agreement.  *See* Bergman Decl., Ex. D.  Plaintiffs' counsel

5  additionally reminded Defendants' counsel of the parties' agreement that privileged

6  documents created after the commencement of litigation need not be disclosed.  *Id.*

7  Plaintiffs' counsel further noted that Defendants' claim that the Privileged

8  Document is "relevant, material and discoverable" is frivolous, as the

9  communication regarding settlement has no bearing whatsoever on the legal or

10  factual issues remaining in this case.  *Id.*

11    Defendants did not respond to Plaintiffs' letter for over four months, nor even

12  attempt to counter Plaintiffs' arguments.  *See* Toberoff Decl., ¶ 7.  Finally, on

13  November 18, 2008, Defendants' counsel called Plaintiffs' counsel to set up a

14  perfunctory "meet-and-confer," which was held on November 21, 2008, but failed to

15  resolve this matter as Defendants were intent on placing it before the Court via a

16  motion to compel.  *See* Toberoff Decl., ¶ 8.

17  **B.    Argument**

18         **1.    The Privileged Document Is Clearly Protected by the
           Attorney-Client Privilege, the Attorney Work-Product
19         Doctrine and the Joint Interest Privilege**

20    Tellingly, Defendants' motion fails to even mention Plaintiffs' repeated

21  assertion in their July 3, 2008 letter to Defendants, and in the "meet and confer"

22  session preceding Defendants' motion, that the Privileged Document – a

23  communication between Plaintiffs, the Shuster Estate and their mutual counsel, Mr.

24  Toberoff, concerning a pending settlement mediation – is protected by the attorney-

25  client privilege, the joint interest privilege and the attorney work-product doctrine.

26  Defendants studiously shy away from Plaintiffs' assertion of privilege to buttress

27  their disingenuous "straw man" that Plaintiffs seek to shield a discoverable

28  document via disclosure in a settlement mediation.

Case 2:10-cv-03633-ODW-RZ    Document 42-15    Filed 08/30/10    Page 19 of 35    Page
Case 2:04-cv-08400-ODW-RZ    Document 395    Filed 12/30/08    Page 16 of 23
ID #:2804

1    The Privileged Document was made shortly before and for purposes of the

2    settlement mediation.  Pursuant to the parties' longstanding discovery agreement,

3    acknowledged by Defendants, Plaintiffs had absolutely no obligation to disclose this

4    privileged post-litigation communication on a privilege log, or otherwise, as it was

5    created after the commencement of this litigation.  Toberoff Decl., Ex. A at 13:16-

6    18.  Thus, Plaintiffs did not waive the privilege by not previously disclosing the

7    document on a privilege log or in a supplemental production.  In any event,

8    disclosure of the Privileged Document in a privilege log (in the basic form approved

9    in Magistrate Zarefsky's Order dated August 18, 2006) would reveal less

10   information regarding the Privileged Document (i.e., parties, date, *general* subject,

11   privilege) than that already disclosed to Defendants.

12       Finally, under paragraph 4 of the parties' Confidentiality Agreement, the

13   privileged character of any information or documents is not waived by its disclosure

14   in any Settlement Conference.  *See* Toberoff Decl., Ex. B.

15           a.    <u>Attorney-Client Privilege and Attorney Work-Product
                  Doctrine</u>

16
17       The attorney-client privilege protects confidential attorney-client

18   communications from disclosure.  *See* F.R.E. 501 (applying common law of

19   privilege to federal court proceedings); *Clarke v. American Commerce Nat'l Bank*,

20   974 F.2d 127, 129 (9th Cir. 1992).  The privilege encompasses documents that

21   reveal, involves or implicates legal advice, the litigation strategy or motives of a

22   party.  *Id.* at 129.

23       The Privileged Document is clearly protected by the attorney-client privilege.

24   The document is a confidential communication between the Siegels, the Shusters

25   and their mutual counsel regarding settlement of the present litigation.

26       Likewise, the attorney work-product doctrine protects documents that are

27   prepared for or in anticipation of litigation.  *See* F.R.C.P. 26(b)(3).  The doctrine

28   shields materials that "reveal an attorney's strategy [or] evaluation of strengths and

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 20 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 17 of 23
ID #:2809

1   weaknesses." Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.

2   PROC. BEFORE TRIAL § 11:825 (2008), *citing Hickman v. Taylor*, 329 U.S. 495, 511

3   (1947). The doctrine extends both to materials prepared by the party itself and to

4   materials prepared by the party's attorney. F.R.C.P. 26(b)(3)(A).

5       As the Privileged Document reflects Mr. Toberoff's and his clients'

6   settlement strategy, it is also clearly shielded by the attorney work-product doctrine.

7   Mr. Toberoff drafted the communication for and in anticipation of the parties'

8   Court-ordered settlement mediation, just days before the mediation, after detailed

9   communication between Mr. Toberoff and his clients, the Plaintiffs and the Shuster

10   Estate. Toberoff Decl., ¶ 9. The Privileged Document naturally entails both legal

11   strategy and counsel's evaluation of the relative strengths and weaknesses of this

12   case. This is precisely the sort of privileged communication and work-product that

13   is to be protected by the attorney work-product doctrine.

14                 b.     Joint-Interest Privilege

15       Persons who share a common interest in litigation or anticipated litigation

16   may communicate confidentially with their attorney(s), and with each other,

17   regarding the litigation, and their communications will remain protected against

18   third parties. *See Hyundee v. United States*, 355 F.2d 183, 184–85 (9th Cir. 1965)

19   (applying the common interest doctrine to statements concerning a matter of

20   common concern, even though co-defendants generally had a significant conflict of

21   interest); *United States ex. rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685

22   (S.D. Cal. 1996) ("[W]hether the jointly interested persons are defendants or

23   plaintiffs, and whether the litigation or potential litigation is civil or criminal, the

24   rationale for the privilege is clear: Persons who share a common interest in litigation

25   should be able to communicate confidentially with their respective attorneys, and

26   with each other, to more effectively prosecute or defend their claims.").

27       The bedrock principle embodied in the joint interest privilege has been widely

28   accepted. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers, § 76(1)

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 21 of 35   Page
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 18 of 23
ID #:2869

1  (two persons with separate attorneys and a common interest in a litigated or non-

2  litigated matter can exchange information about the matter themselves or through

3  their attorneys, and the communications will remain privileged against third parties);

4  *U.S. v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990)(collecting cases) ("[T]he

5  rationale for the joint defense rule remains unchanged: persons who share a common

6  interest in litigation should be able to communicate with their respective attorneys

7  and with each other…"); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d Cir.

8  1985) (recognizing that "communications to an attorney to establish a common

9  defense strategy are privileged even though the attorney represents another client

10  with some adverse interests"); *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285,

11  1299 (D.C. Cir. 1980) (Common interest exception applies to attorney work product

12  doctrine); *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989);  *In re Regents of*

13  *Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).

14       Here, the joint interest privilege clearly shields the Privileged Document from

15  production.  It constitutes and reflects communications by the Plaintiffs and the

16  Shuster Estate with their mutual counsel, as both share a common interest in the

17  litigation with Defendants over Plaintiffs' recaptured *Superman* copyrights and the

18  Shuster Estate's prospective interest in such copyrights.  That the Shuster Estate is

19  not a party to this litigation does not alter the privileged status of the

20  communication, as the joint interest privilege is not limited to co-parties to a

21  litigation. *See Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993)

22  (recognizing that the common interest doctrine is not limited to co-operating co-

23  parties); *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F.Supp. 329, 331

24  (C.D. Cal. 1992) ("Whether an action is ongoing or completed, whether the jointly

25  interested persons are defendants or plaintiffs, and whether the litigation or potential

26  litigation is civil or criminal, the rationale for the joint defense rule remains

27  unchanged: persons who share a common interest in litigation should be able to

28  communicate with their respective attorneys and with each other to more effectively

(F0379305.1) 12

Ex U - 240

Case 2:10-cv-03633-ODW-RZ    Document 42-15    Filed 08/30/10    Page 22 of 35    Page
ID #:2905
Case 2:04-cv-08400-ODW-RZ    Document 395    Filed 12/30/08    Page 19 of 23

1    prosecute or defend their claims.") (quoting *In re Grand Jury Subpoenas, 89-3 and*

2    *89-4, John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990)).

3         So that Defendants could have a better understanding of Plaintiffs' settlement

4    objectives, Plaintiffs divulged the existence and basic nature of this privileged

5    communication to Defendants in connection with the parties' settlement mediation,

6    without waiver of the communication's privileged status and with the expectation

7    that its confidentiality would be strictly respected pursuant to the parties'

8    Confidentiality Agreement.

9           **2.**   **The Privileged Document Is Additionally Protected by the**
               **Express Terms of the Parties' Detailed Confidentiality**

10                   **Agreement**

11         As the Privileged Document was made after the commencement of this

12    litigation (for purposes of and shortly before the settlement mediation), the

13    Privileged Document need never have been disclosed by Plaintiffs pursuant to the

14    parties' standing discovery agreement. Toberoff Decl., Ex. A. However, Plaintiffs

15    disclosed the existence of the Privileged Document in furtherance of the settlement

16    mediation and in good faith reliance on the parties' Confidentiality Agreement,

17    wherein Defendants had agreed to the strict confidentiality of all disclosures made in

18    connection with the court-ordered settlement mediation. *See* Bergman Decl., Ex. B;

19    Toberoff Decl., Ex. B at 2. Thus, the nature and existence of the document became

20    "Confidential Settlement Information" pursuant to the terms of paragraph 5 of the

21    Confidentiality Agreement. *Id.* Accordingly, it "shall not be disclosed to anyone

22    other than the parties, their counsel or the mediator or used in any way, shape or

23    form for any purpose, including impeachment, in any pending or future proceeding

24    in any court, in whole or in part, directly or indirectly, orally or in writing." *Id.*

25         The Privileged Document is dated April 30, 2008, just 8 days before the

26    scheduled Court-ordered settlement mediation on May 8, 2008, and, as discussed

27    with Defendants, the communication was made in anticipation and in furtherance of

28    the settlement mediation. Toberoff Decl., ¶ 9. But for the parties' Confidentiality

1   Agreement, Plaintiffs would not have disclosed (nor would they have been obligated
2   to disclose) this privileged communication.

3          Plaintiffs could not have made it clearer to Defendants that they were
4   disclosing the existence and nature of this privileged communication solely for
5   purposes of the parties' settlement negotiations and in reliance on the parties'
6   Confidentiality Agreement.  Paragraph 5 of the Confidentiality Agreement states:
7   "Without limitation, any document that is marked 'Confidential – For Settlement
8   Purposes Only' and is disclosed or produced at or in connection with a Settlement
9   Conference shall be treated as Confidential Settlement Information."  Toberoff
10  Decl., Ex. B.  At the top of Plaintiffs' May 2, 2008 disclosure appears the phrase, in
11  bold and underlined: "**CONFIDENTIAL – FOR SETTLEMENT PURPOSES**
12  **ONLY**."  Bergman Decl., Ex. B.  Moreover, the letter starts by stating: "This letter
13  is sent pursuant to the 'JAMS Confidentiality Agreement' and solely in connection
14  with the upcoming settlement mediation sessions." *Id.*

15         For reasons Plaintiffs cannot quite fathom, Defendants now attempt to garner
16  some advantage, foment some sort of bias, or simply "muddy the waters" by
17  requesting *in camera* review and thereby place Plaintiffs' Privileged Document
18  before the Court.  This appears to be an objective of Defendants' motion and
19  gamesmanship in and of itself.  Defendants thinly argue that such a review is
20  necessary for the Court to decide whether the Privileged Document falls within the
21  scope of their discovery requests.  Firstly, Defendants have provided no reason why
22  the subject communication between Plaintiffs, the Shuster Estate and their counsel
23  concerning settlement is not privileged, and no justification whatsoever for such *in*
24  *camera* review.  Secondly, even if Defendants' motion were not so frivolous, it is
25  inappropriate for them to demand such an *in camera* review now that the Court has
26  ruled that it will serve as the ultimate trier of fact in this case.  Respectfully, in the
27  unlikely event the Court feels that an *in camera* review is justified and necessary,
28  such should properly be referred to a discovery magistrate.

1    Not only have Defendants failed to counter or even address the privileged

2  status of the attorney-client communication in question, they also have not and

3  cannot explain why the existence of the Privileged Document is not additionally

4  shielded by the parties' Confidentiality Agreement.  Defendants do not even attempt

5  to identify which of the three exceptions expressly set forth in ¶6 of the JAMS

6  agreement might apply to this situation, as clearly none do.  Toberoff Decl., Ex. B at

7  2.  The Privileged Document or even its existence is not "(a) publicly available

8  knowledge;" nor was it "(b) already in the possession of the [Defendants]... prior to

9  its disclosure at a Settlement Conference;" nor was it "(c) [] developed

10 independently of any Settlement Conference and without reference thereto." *Id.*

11    By express agreement of the parties, the Privileged Document, and even its

12 existence and subject matter, constitutes Confidential Settlement Information, which

13 is confidential to all except the parties and the mediator.  Indeed, the whole purpose

14 of the Confidentiality Agreement was to enable the parties to comfortably make

15 disclosures in the course of mediation that they would not otherwise make,

16 including privileged or confidential information that, when disclosed, might further

17 settlement.  Plaintiffs relied on the Confidentiality Agreement and the sanctity of the

18 settlement negotiations when they made their disclosure.

19    Production of the Privileged Document – even for an *in camera* review –

20 would obviously subvert the Confidentiality Agreement and reward Defendants'

21 shameless gamesmanship and manipulation of the settlement process.

22
       **3.    Defendants' Conduct in Bringing This Motion Warrants
23                 Sanctions**

24    As discussed above, Defendants, in bringing this unjustified motion, have

25 willfully breached the parties' JAMS Confidentiality Agreement and abused the

26 spirit and objectives of the Court-ordered settlement mediation process.

27 Defendants' motion improperly keeps from the Court and entirely fails to address

28 Plaintiffs' repeated assertion that the subject communication between Plaintiffs, the

Case 2:10-cv-03633-ODW-RZ   Document 42-15   Filed 08/30/10   Page 25 of 35   Page
ID #:2619
Case 2:04-cv-08400-ODW-RZ   Document 395   Filed 12/30/08   Page 22 of 23

1  Estate of Joseph Shuster and their mutual counsel regarding settlement is obviously

2  privileged.  Sanctioning Defendants for such a frivolous motion is appropriate. *See*

3  F.R.C.P. 37(b); *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th

4  Cir. 1982) (absent "substantial justification" for a party's positions, sanctions are

5  appropriate).

6       The Federal Rules of Civil Procedure provide that the party who prevails on a

7  motion to compel is entitled to its expenses, including reasonable attorneys' fees,

8  unless the losing party was substantially justified in making or opposing the motion

9  (or other circumstances make such an award unjust). *See* F.R.C.P. 37(a)(5);

10  Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE

11  TRIAL (2006) § 11:1960 ("If a motion to compel responses is filed, the court usually

12  awards expenses, including attorney fees, against the losing party…"); *State of Ohio*

13  *v. Arthur Andersen & Co.*, 570 F.2d 1370, 1375 (10th Cir. 1978) (imposing

14  sanctions of "reasonable expenses to secure an order compelling production").  This

15  Court has also given fair warning that any further discovery abuse will be subject to

16  sanctions. *See* Toberoff Decl., Ex. D, at p. 7.

17       Moreover, Defendants' bringing of this wasteful motion, after more than four

18  months of silence on the subject, in the midst of active preparations for the January

19  20, 2009 trial (and timed so as to require Defendants to submit an opposition on the

20  very same day as the parties' L.R. 16 meeting of counsel) is obviously intended to

21  disrupt Plaintiffs' preparations during the crucial pre-trial period and to force

22  Plaintiffs to expend considerable time, fees and costs in opposing Defendants'

23  frivolous motion.  Finally, Defendants' crude attempt to obtain privileged

24  information, the very existence of which was explicitly disclosed for settlement

25  purposes only, will have an obvious chilling effect on any future disclosures during

26  settlement discussions and thus, on any prospects of settlement themselves.

27       Defendants blithely continue to bring such frivolous motions in this case  and

28  to flout the rules without any hesitation or fear of sanctions.  Plaintiffs have not been

Case 2:10-cv-03633-ODW-RZ    Document 42-15    Filed 08/30/10    Page 26 of 35    Page
Case 2:04-cv-08400-ODW-RZ    Document 395    Filed 12/30/08    Page 23 of 23
ID #:2011

1  recompensed for one penny of what amounts to thousands of dollars in unnecessary

2  legal expense due to Defendants' gamesmanship.  Plaintiffs therefore respectfully

3  request the Court to enter an order granting sanctions in the amount of $5,350.

4  Toberoff Decl., ¶ 10.

5  **V.    DEFENDANTS' CONCLUSION**

6        For the reasons set forth herein, Defendants respectfully request that their

7  motion to compel Plaintiffs to produce the Withheld Document be granted.

8  **VI.   PLAINTIFFS' CONCLUSION**

9        For the foregoing reasons, Plaintiffs respectfully request that Defendants'

10  motion be denied in its entirety and that the Court grant Plaintiffs sanctions in the

11  amount of $5,350.

12

13  Respectfully submitted,

     DATED:  December 11, 2008        WEISSMANN WOLFF BERGMAN
14                                     COLEMAN GRODIN & EVALL LLP

15                                            -and-

16                                     FROSS ZELNICK LEHRMAN & ZISSU, P.C.

17                                            -and-

18                                     PERKINS LAW OFFICE, P.C.

19

20                                     By: _____
                                           Michael Bergman
21
                                       Attorneys for Defendants and Counterclaimant
22
     DATED:  December 11, 2008         TOBEROFF & ASSOCIATES, P.C.
23

24

25                                     By: _____
                                           Marc Toberoff
26
                                       Attorneys for Plaintiffs/Counterclaim-Defendants
27

28

Ex U - 245

# EXHIBIT V

**From:** Patrick Perkins [mailto:pperkins@ptplaw.com]
**Sent:** Tuesday, February 24, 2009 9:56 PM
**To:** 'Nick Williamson'
**Cc:** 'keith adams'
**Subject:** RE: Siegel v. Warner Bros. 04-cv-8400

Dear Nick-

I write in response to your e-mail received late Friday evening in which you request that the  "Toberoff Timeline" be treated as confidential under the parties' protective order and that it be filed under seal.

Under the Stipulated Protective Order negotiated by the parties in 2005 and 2006, parties had twenty-one (21) days from production of documents to designate them as "Confidential" under the Protective Order.  As you know, the "Toberoff Timeline" was produced to Defendants on December 12, 2008.  Plaintiffs did not designate the document as "Confidential" within twenty-one (21) days subsequent to production on December 12.  Thus, it is now too late to designate it as "Confidential."

In addition, you will recall that in 2005 and 2006 when the parties were negotiating the contours of the Protective Order, the Plaintiffs insisted on the most narrow definition of "Confidential " documents possible, which definition was adopted by the parties and the Court.  The Toberoff Timeline does not fit into any of the categories of "Confidential" documents set forth in the Stipulated Protective Order.  Similarly, none of the information in the document qualifies as "Confidential" under the Stipulated Protective Order.  For this separate reason, it would be inappropriate to file the Toberoff Timeline under seal.

Regards,

Patrick T. Perkins
Perkins Law Office, PC
1711 Route 9D
Cold Spring, New York 10516
Tel:  (845) 265-2820
Fax: (845) 265-2819

Ex V - 246

e-mail: pperkins@ptplaw.com

CONFIDENTIALITY NOTICE: The information in this electronic mail transmission is confidential, intended only for the named recipient(s), and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender at (845) 265-2820 and delete this email message from your computer.

---

**From:** Nick Williamson [mailto:nwilliamson@ipwla.com]
**Sent:** Friday, February 20, 2009 9:06 PM
**To:** pperkins@ptplaw.com
**Cc:** 'keith adams'; Nicholas Williamson
**Subject:** Siegel v. Warner Bros. 04-cv-8400
**Importance:** High

Patrick:

We write regarding Defendants intended use of the defamatory cover letter to support their Joint Stipulation re Defendants' Motion to Re-open Discovery. The letter is exhibit "1" to your declaration. Due to the fact that the letter refers to documents that have been identified on privilege logs, we ask that it be marked confidential pursuant to the parties' standing protective order.

Plaintiffs did not create this document nor did they have the opportunity to mark it confidential as it was written anonymously and produced to Defendants by the so-called "escrow agent."

Please confirm.

Nicholas C. Williamson
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: nwilliamson@ipwla.com

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

# EXHIBIT W

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

nwilliamson@ipwla.com

February 25, 2009

<u>Via E-Mail</u>

Patrick T. Perkins
Perkins Law Office, PC
1711 Route 9D
Cold Spring, New York 10516

Re:   *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-8400 SGL

Dear Patrick:

I write in response to your e-mail of February 24, 2009.

To begin with, Plaintiffs' filings and letters clearly stated Plaintiffs' position that the "nine documents" were privileged and confidential, and Defendants were continuously on notice of Plaintiffs' position in that respect.

Additionally, the "21-day" requirement only applies to a "Document Production." Under ¶2 of the Protective Order, a "Document Production" is the production of a "writing... by any party or non-party witness pursuant to any procedure set forth in the Federal Rules of Civil Procedure." As such, the 21-day requirement does not apply to the defamatory cover letter ("Defamatory Letter"), which was sent anonymously and then by the purported "escrow agent," not by a party or non-party witness, and pursuant to a Court order, not in response to a discovery "procedure" set forth in the Federal Rules of Civil Procedure.

Furthermore, the Defamatory Letter clearly falls within sub-paragraphs 4(iv) and (v) of the Protective Order, which cover, respectively, writings purporting to "disclos[e] the terms" of "non-public, private agreements," and non-public information a party is required "by law ... to maintain as confidential" (*i.e.*, attorney-client communications).

Plaintiffs have been extremely cooperative and diligent in dealing with the thousands of documents that Defendants have designated as "Confidential." As a result of Defendants' numerous "Confidential" designations, Plaintiffs have filed numerous documents manually and in redacted form and have further placed documents under seal when they were inadvertently placed in the public record. In light of the circumstances, Defendants' refusal to stipulate to this simple request is mystifying.

**TOBEROFF & ASSOCIATES, P.C.**

February 25, 2009
Re:    *Siegel v. Warner Bros. Entertainment Inc.*
Page:    2 of 2

Please be advised that, if Defendants remain unwilling to stipulate to this simple request, Plaintiffs will apply to the Court *ex parte* for a protective order placing the Defamatory Letter under seal.

Plaintiffs further write to advise you that DC's style guides (DCC 149737-149772), produced on January 21, 2009, the Levitz-DiDio memo of March 21, 2002 (Plaintiffs' Exhibit 188, DCC 50486-50487), and the various "Legendary" co-financing agreements (WB132791-132966) were not marked "Confidential," and are not subject to the protective order.

Very truly yours,

Nicholas C. Williamson

Enclosures

cc:    James Weinberger, Esq. (via e-mail)
        Michael Bergman, Esq. (via e-mail)

# EXHIBIT X



P E R K I N S
LAW OFFICE, PC

February 25, 2009

**VIA E-MAIL**

Nicholas C. Williamson, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

      Re:    <u>Superman Litigation – Case Nos. 04-CV-8400, 8776 SGL (RZx)</u>

Dear Nick:

    I write in response to your letter of February 25, 2009. For the reasons set forth below, Defendants disagree with the assertions in your letter and cannot agree to file the "Toberoff Timeline" under seal.

    First, your lead argument that the 21-day deadline for designating a document as confidential under the Protective Order does not apply here because the Toberoff Timeline was not produced pursuant to a "Document Production" as that term is defined in the Protective Order, further proves our point that the Protective Order does not apply to the document. Paragraph 13 of the Protective Order provides, in relevant part, that "this Order is not intended to be and shall not be construed as ... a limitation on the right of any party or non-party witness to use in this action or otherwise any Writing that she or it authored or *obtained in any manner other than through a Document Production*, even if an original or duplicate of that Writing is produced in a Document Production." Moreover, paragraph 4 of the Protective Order provides that only documents "produced in any Document Production" may be designated as "Confidential." Thus, by admitting that the Toberoff Timeline was not obtained by Defendants through a "Document Production," Plaintiffs themselves concede that the Toberoff Timeline cannot be filed under seal pursuant to the Protective Order.

    Your second argument is contradictory, misstates the Protective Order, and thus fares no better. Contrary to your assertion, the Protective Order does not apply to "writings *purporting* to 'disclos[e] the terms' of 'non-public, private agreements,'" but rather to writings that *actually do* disclose such terms. Throughout our litigation concerning the Toberoff Timeline, and again in your most recent letter, your office has maintained that the document is "defamatory" - i.e., false. If the contents of the document are false, then they reveal nothing private or confidential.

1711 ROUTE 9D   COLD SPRING, NEW YORK 10516 ·
T (845) 265-2820   F (845) 265-2819
PPERKINS@PTPLAW.COM

Ex X - 250

Your reliance upon the Protective Order's reference to documents that contain "non-public information a party is required 'by law ... to maintain as confidential'" is equally unavailing. Contrary to your assertion, the attorney-client privilege does not qualify under these circumstances. Rather, the maintenance of the attorney-client privilege is not mandatory but is voluntary on the part of the privilege holder and can be waived. Indeed, the District Court has held that it is "law of the case" that the privilege in the Toberoff Timeline has been waived by the Plaintiffs.

Your position is further undermined by paragraphs 4 (a)-(c) of the Protective Order, which provides that a document can be designated as "Confidential" only if a party believes that the document: (1) "contains confidential proprietary information;" or (2) is commercially sensitive and its disclosure "could reasonably harm competitive advantage, or foster a competitive disadvantage;" or (3) if disclosed "could impair or disrupt future or current business relationships." Neither of your communications requesting that the Toberoff Timeline be filed under seal has even attempted to meet this standard. To the contrary, as mentioned above, your office has insisted that the contents of the Toberoff Timeline are false, and thus, by definition, not commercially sensitive.

In sum, we thoroughly disagree with your position and thus cannot agree to your request. If it remains your intention to move *ex parte* for a protective order with regard to the Toberoff Timeline, we suggest you do so quickly. Absent an order from the Court, Defendants will file its motion with exhibits in the public court file on Monday as planned.

Very truly yours,

Patrick T. Perkins

cc:    Michael Bergman, Esq.
       Anjani Mandavia, Esq.
       Adam Hagen, Esq.
       Roger L. Zissu, Esq.
       James Weinberger, Esq.

Ex X - 251