DANIEL M. PETROCELLI (S.B. # 097802)
   dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. # 211640)
   mkline@omm.com
CASSANDRA L. SETO (S.B. # 246608)
   cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779
 *Attorneys for Plaintiff DC Comics*

(Additional counsel listed on the next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>     Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>     Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE IMMEDIATE, LIMITED DISCOVERY OF TWO ELDERLY WITNESSES**<br><br>FILED SEPARATELY:  [PROPOSED] ORDER; DECLARATION OF DANIEL M. PETROCELLI IN SUPPORT OF PLAINTIFF'S MOTION; DECLARATIONS OF MARC TOBEROFF AND JOANNE SIEGEL IN OPPOSITION TO PLAINTIFF'S MOTION<br><br>**Judge**:   Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**: September 20, 2010<br>**Time**:   10:00 a.m.<br>**Complaint Filed**: May 14, 2010 |

1    (List of counsel continued)

2    PATRICK T. PERKINS (admitted *pro hac vice*)
3        pperkins@ptplaw.com
     PERKINS LAW OFFICE, P.C.
4    1711 Route 9D
     Cold Spring, NY 10516
5    Telephone:  (845) 265-2820
6    Facsimile:    (845) 265-2819
        *Attorney for Plaintiff DC Comics*

7
     MARC TOBEROFF (S.B. # 188547)
8    NICHOLAS C. WILLIAMSON (S.B. # 231124)
     KEITH G. ADAMS (S.B. # 240497)
9    TOBEROFF & ASSOCIATES, P.C.
10   2049 Century Park East, Suite 2720
     Los Angeles, California 90067
11   Telephone: (310) 246-3333
     Facsimile: (310) 246-3101
12      *Attorneys for Defendants Mark Warren Peary*
13      *as personal representative of the Estate of Joseph*
        *Shuster, Joanne Siegel, and Laura Siegel Larson*

14
     RICHARD B. KENDALL (S.B. # 90072)
15       rkendall@kbkfirm.com
     LAURA W. BRILL (S.B. # 195889)
16       lbrill@kbkfirm.com
17   NICHOLAS F. DAUM (S.B. # 236155)
         ndaum@kbkfirm.com
18   NATHALIE E. COHEN (S.B. # 258222)
         ncohen@kbkfirm.com
19   KENDALL BRILL & KLIEGER LLP
20   10100 Santa Monica Blvd., Suite 1725
     Los Angeles, California 90067
21   Telephone: (310) 556-2700
     Facsimile: (310) 556-2705
22      *Attorneys for Defendants Marc Toberoff,*
        *Pacific Pictures Corporation, IP*
23      *Worldwide, LLC, and IPW, LLC*

24

25

26

27

28

                                    JOINT STIPULATION RE: PLAINTIFF'S
                                    MOTION TO INITIATE DISCOVERY AND
                                    TAKE DISCOVERY  OF TWO WITNESSES

1

**TABLE OF CONTENTS**

2

**Page**

3

I.     INTRODUCTORY STATEMENTS ..................................................2

4

    A.     DC Comics' Introductory Statement ....................................2

    B.     Defendants' Introductory Statement ......................................4

5

II.    DC COMICS' STATEMENT OF THE ISSUES IN DISPUTE....................7

6

III.   DEFENDANTS' STATEMENT OF THE ISSUES IN DISPUTE ...............7

7

IV.    DC COMICS' POSITION .............................................................8

8

    A.     Factual Background .............................................................8

        1.     DC Comics' Complaint ...............................................8

9

        2.     Ms. Peavy and Ms. Siegel ..........................................9

10

        3.     DC Comics' Efforts to Commence Discovery .........................10

    B.     Discovery Must Commence in this Case, and Ms. Peavy and Ms. Siegel Should Be Deposed No Later than September 30, 2010....................................................................11

11

12

        1.     Defendants' Contemplated Motion to Dismiss Is Not a Bar to Discovery and Its "SLAPP" Motion, in Fact, Necessitates Expedited Discovery.............................11

13

14

        2.     Discovery in this Case Is Not Precluded by Discovery in the Siegel Cases ..........................................13

15

        3.     The Toberoff Timeline Is a Proper Subject of Discovery ........16

16

    C.     Conclusion .....................................................................17

V.     DEFENDANTS' POSITION ........................................................17

17

    A.     Factual Background ...........................................................17

18

        1.     The Siegel Litigation (Case No. CV 04-8400)....................17

19

        2.     DC Files This Retaliatory Action ...............................21

            a.     DC's Lawsuit Prompts Dispositive Motions by Defendants......................................21

20

21

            b.     DC Exploits the Theft of Privileged and Confidential Information from Toberoff's Law Firm ....................................................21

22

    B.     The Relief Sought by DC in Its Motion Is No Longer At Issue ........23

23

    C.     This Court Lacks Jurisdiction Over Jean Peavy ..............................23

24

    D.     Depositions Should Not Be Compelled on the Dates Noticed by DC, Because Dispositive Motions Will Be Heard Less Than Two Weeks Later ............................................................24

25

26

    E.     Depositions Should Await Imminent Resolution of the Pending Rule 54(b) Motion in Siegel Which, If Granted, Will Substantially Narrow Discovery in this Case ......................................29

27

28

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY OF TWO WITNESSES

1

2

### TABLE OF CONTENTS
(continued)

**Page**

F.    The Pending Anti-SLAPP Motion Should Stay and/or Limit
Depositions.......................................................................................... 30

G.    The Depositions Should Be Stayed Because the Witnesses Have
Already Been Exhaustively Deposed in the Siegel Actions............... 35

H.    Conclusion ......................................................................................... 39

APPENDIX A ............................................................................................. 40

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE: PLAINTIFF'S MOTION
TO INITIATE DISCOVERY AND TAKE
DISCOVERY  OF TWO WITNESSES

1    Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure and

2    Rule 37-2 of the Local Rules of this Court, the parties respectfully submit the

3    following Joint Stipulation Regarding Plaintiff's Motion to Initiate Discovery and

4    Take Immediate, Limited Discovery of Two Elderly Witnesses.  Pursuant to Local

5    Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and

6    therefore respectfully seek the assistance of the Court.

7

8    Dated:      August 30, 2010              Respectfully Submitted,

9                                            O'MELVENY & MYERS LLP

10

11   By:  /s/ Daniel M. Petrocelli

11        Daniel M. Petrocelli
          Attorneys for Plaintiff DC Comics
12

13   Dated:      August 30, 2010              Respectfully Submitted,

14                                            TOBEROFF & ASSOCIATES, P.C.

15

16   By:  /s/ Marc Toberoff

17        Marc Toberoff
          Attorneys for Defendants Mark
18        Warren Peary as personal
          representative of the Estate of Joseph
19        Shuster, Joanne Siegel, and Laura
          Siegel Larson
20

21   Dated:      August 30, 2010              Respectfully Submitted,

22                                            KENDALL BRILL & KLIEGER LLP

23

24   By:  /s/ Richard B. Kendall

25        Richard B. Kendall
          Attorneys for Defendants Marc
26        Toberoff, Pacific Pictures
          Corporation, IP Worldwide, LLC,
27        and IPW, LLC

28

1

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

## I.     INTRODUCTORY STATEMENTS

### A.     DC Comics' Introductory Statement

Plaintiff DC Comics filed this case in May 2010—some three months ago—and since making this filing has sought to promptly commence discovery, especially the depositions of two crucial witnesses of advanced age: Jean Peavy, age 89, and Joanne Siegel, age 92. At every turn, defendants have offered one unfounded reason after another to prevent discovery altogether or delay it indefinitely. To date, DC Comics has been unable to obtain any discovery, secure a discovery plan, or conduct the Rule 26(f) conference. Therefore, DC Comics seeks an order compelling the commencement of discovery proceedings in this case, specifically the depositions of Ms. Peavy and Ms. Siegel and their discoverable documents.

As detailed in the complaint, this lawsuit was commenced to address various issues concerning the comic-book character Superman, including ownership and control of certain rights to the property; improper efforts by the heirs of Joseph Shuster, the original illustrator of Superman, to recapture purported copyright interests in the character; and unlawful acts of interference by self-styled movie producer and entrepreneur Marc Toberoff. Jean Peavy is the sister and alleged sole beneficiary of Shuster's estate; and Joanne Siegel is the widow of Jerome Siegel, Shuster's co-creator in Superman. Both witnesses are parties to several contracts central to this dispute, including contracts granting DC Comics rights that Ms. Peavy and Ms. Siegel now impermissibly seek for themselves, and agreements among the defendants that interfere with DC Comics' rights under federal and state law. They also are percipient witnesses to the back-room misconduct that interfered with DC Comics' rights, including the manipulation of alleged rights in the character Superboy.

There is no good reason to further delay the commencement of discovery, especially the depositions of these important witnesses.  Defendants various objections have no merit:

- Defendants contend discovery may not commence until after a Rule 26(f) conference is held, yet they have tactically delayed the Rule 26(f) conference for over two months to forestall DC Comics' right to commence discovery.  Although it has already caused DC Comics unwarranted delay, this objection is now moot, since the Rule 26(f) conference is, finally, scheduled for August 16—the earliest date defendants would accept.

- Defendants contend discovery must await the Court's resolution of their motions to dismiss and motion to strike under the California "SLAPP" statute, scheduled to be filed on August 13.  However, the Federal Rules authorize discovery to proceed during the pendency of Rule 12 motions; and the discovery-stay provisions in California's SLAPP statute have *no* application to DC Comics' federal claims and, in fact, *entitle* DC Comics to expedited discovery regarding its state claims since the defendants' SLAPP motion challenges their *factual* sufficiency.

- Defendants claim the depositions of Ms. Peavy and Ms. Siegel will be duplicative of testimony they gave in lawsuits filed by Ms. Siegel (Case Nos. CV-04-8400 ODW, CV-04-8776 ODW) ("the Siegel Cases")).  This is no bar to their depositions in this case, which involves different parties, different legal claims, and different legal and factual theories.  If defendants have objections to specific questions asked at these or other depositions, they can make those objections in the course of the examinations, DC Comics can respond, and the Court will have a record on which to rule.  No basis exists for an advisory opinion foreclosing lines of inquiry in advance of these depositions.

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

- Finally, while deliberately delaying the Rule 26(f) conference, defendants filed a preemptive protective-order motion that seeks to prevent DC Comics from conducting discovery about the "Toberoff Timeline" document attached as Exhibit A to DC Comics' complaint. They contend no discovery can proceed until their motion is decided. Defendants' position is indefensible. As will be explained in DC Comics' opposition to defendants' motion, the District Court in the Siegel Cases *ordered* this document produced *nearly two years ago*, finding that any privilege regarding the document was waived. The Toberoff Timeline has been a matter of public record since March 2009—*for almost 18 months*. *See Siegel v. Warner Bros. Ent't Inc.*, Case No. CV 04-8400 ODW (RZx) (Docket No. 476-4). Defendants' motion is without merit and provides no basis to preclude DC Comics' discovery.

### B.    Defendants' Introductory Statement

Plaintiff DC Comics' ("DC") motion to take expedited and unlimited depositions of two elderly witnesses, Joanne Siegel and Jean Peavy, both of whom have already been deposed in closely related litigation, is moot, lacks merit as a matter of law and equity, and is procedurally and jurisdictionally improper. This motion is part of a larger effort by DC to create a burdensome and chaotic discovery process, to re-litigate matters already decided against it in related litigation, and to obtain strategic leverage by re-deposing elderly witnesses as to the recapture under 17 U.S.C. § 304(c) of the original copyrights to Superman. As opposed to proceeding on a rational schedule and waiting until recently filed dispositive motions have been resolved, DC insists on immediately deposing these two elderly witnesses. DC's demands are wholly inappropriate under the unique circumstances of this case, including the following:

- The order sought by DC – to initiate discovery, and to produce Joanne Siegel and Jean Peavy for deposition by September 30, 2010 – is entirely moot,

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY OF TWO WITNESSES

1    since DC initiated discovery following the parties' F.R.C.P. 26(f) conference,

2    and has itself noticed depositions of Joanne Siegel on October 5, 2010, and

3    Jean Peavy on October 12, 2010, dates which fall after September 30, 2010.

4  •  Even construing DC's motion as a request for an order to compel depositions

5    of Jean Peavy and Joanne Siegel on October 5 and October 12, 2010 (relief

6    DC has not requested), DC's motion must be denied.  Defendants' well-

7    founded dispositive motions pursuant to F.R.C.P. 12(b)(6) are pending as to

8    every claim in DC's complaint.  These motions are set for hearing shortly

9    thereafter on October 18, 2010.  There is no need for discovery to resolve

10   these motions, as they raise pure issues of law.  If any of the motions is

11   granted, the scope of appropriate discovery will be dramatically narrowed.

12 •  DC has stated that it will amend its Complaint, meaning that the pleadings

13   are as yet unsettled.  This renders depositions in early October unnecessarily

14   burdensome, as the parties will be engaged in extensive motion practice

15   concerning the amended Complaint in advance of the October 18 hearing.

16 •  Defendants have informed DC that if its Complaint survives such dispositive

17   motions, they will likely assert counterclaims.  Such counterclaims will also

18   likely affect the appropriate scope of discovery.

19 •  An Anti-SLAPP motion by defendants is pending as to DC's state law

20   claims, as such are intended to chill public copyright filings and participation

21   in litigation, and to interfere with the relationship between the attorney Marc

22   Toberoff and his clients.  With such a motion pending, a discovery stay is

23   automatic in state court, and, under a recent United States Supreme Court

24   decision that DC fails to mention, such an automatic stay should be applied

25   in federal court as a substantive provision of state law.  DC makes no effort

26   whatsoever to show good cause for lifting such a stay.  Even if F.R.C.P.

27   56(f)'s  analogous standard for postponing a summary judgment motion is

28   applied, DC has no "right" to discovery while the Anti-SLAPP  motion is

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    pending, as it has made no showing whatsoever of the facts it needs to

2    contest such motions.

3    • DC has already obtained extensive discovery in the closely related Superman

4    action, *Joanne Siegel, et al. v. Warner Bros. Entertainment Inc. et al.*, 04-

5    CV-8400 ODW (RZx) ("*Siegel*"), from these same witnesses, on the same

6    topics on which it now seeks to re-depose them.

7    • A motion for entry of final judgment pursuant to F.R.C.P. 54(b) is also

8    pending before Judge Wright in *Siegel*, regarding three lengthy published

9    orders by the Court that upheld the Siegels' recaptured Superman copyright

10    interest and defined its scope. That motion is set for hearing on September

11    27, 2010. If it is granted, the findings in *Siegel* will have collateral estoppel

12    effect as to DC in this case, thereby also substantially narrowing the scope of

13    discovery.

14    • 92-year-old Joanne Siegel experienced pronounced stress and discomfort

15    during her last seven-hour deposition in *Siegel*. *See* Declaration of Joanne

16    Siegel, ¶¶ 2-9. At a minimum, if she is forced to sit through a repetitive

17    second deposition, the above motions should first be decided and the scope

18    of the pleadings set.

19    • DC has been on notice of the claims in its new Complaint for at least four

20    years, and has been in receipt of the documents that it alleges give rise to its

21    claims since November 2006 and December 2008, at the latest. Yet DC

22    waited a year and a half (until May 2010) to bring this lawsuit, knowing that

23    the witnesses it seeks to depose were elderly. Having waited so long, DC's

24    claim of urgency due to advanced age lacks credibility.

25    • There is no urgent reason why DC must take these depositions immediately,

26    rather than waiting just a few weeks for the Court to rule on the dispositive

27    motions to dismiss, the Anti-SLAPP motion and the Rule 54(b) motion, and

28    for DC to amend its Complaint. A needless rush to discovery would raise a

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

host of unnecessary problems and confusion over the appropriate scope of
examination that could be entirely avoided.

• 89-year-old Jean Peavy is not a party to this action, she resides in New
Mexico, and DC failed to serve a proper subpoena to depose her in that State.
DC's motion as to her is frivolous, as this Court lacks jurisdiction to compel
her deposition.

Given that this Court lacks jurisdiction over Ms. Peavy, and that the request
to "initiate" discovery is moot, the only live question here is whether this Court
should order the expedited deposition of the 92-year-old Joanne Siegel (who was
already deposed for seven hours on the same topics) before the Court rules on the
dispositive motions that could end or greatly narrow this case. No good reason
exists to grant such an order, and all the factors outlined above support an opposite
approach.

## II.    DC COMICS' STATEMENT OF THE ISSUES IN DISPUTE

(1)  Whether defendants may continue to delay the initiation of discovery in
this case?

(2)  Whether defendants must be compelled to produce Joanne Siegel and
Jean Peavy for their noticed depositions, along with their documents, no later than
September 30, 2010?

## III.    DEFENDANTS' STATEMENT OF THE ISSUES IN DISPUTE

(1)  Is this "Motion to Initiate Discovery" entirely moot, because DC has
already initiated discovery and has noticed depositions of the two witnesses at issue
for dates after the September 30 deadline it requests?

(2)  Should the 92-year-old widow and 89-year-old sister of Superman's two
co-creators be forced to sit for depositions while dispositive motions under F.R.C.P.
12(b)(6), and 54(b), and California's Anti-SLAPP law are pending and will be
heard in a matter of weeks, and the pleadings are not yet final?

(3)  Does this Court have jurisdiction to compel the deposition of Jean Peavy,

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    a non-party to this action and a resident of New Mexico?

2        (4) Can DC compel discovery during the pendency of an Anti-SLAPP

3    motion, where DC has failed to identify any facts it seeks to obtain through such

4    discovery or how they are relevant to the motion?

5        (5) Is the automatic discovery stay provided under California's Anti-SLAPP

6    law, to protect free speech and public participation against abusive lawsuits

7    designed to chill such conduct, so intertwined with a state right or remedy that it

8    functions to define the scope of the state-created right, and therefore must be

9    applied in federal court under the controlling opinion of the United States Supreme

10   Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct.

11   1431 (2010)?

## IV.    DC COMICS' POSITION

### A.    Factual Background

#### 1.    DC Comics' Complaint

15       DC Comics filed the complaint in this case on May 14, 2010 to protect rights

16   in the Superman property it has nurtured, developed, and promoted for over 70

17   years and to seek redress for violations of its rights by defendants.  DC Comics'

18   complaint includes six claims for relief:  the first three arise under federal copyright

19   law; the remainder arise under state law.  The first and second claims challenge

20   purported copyright termination notices filed on behalf of the putative heirs of

21   Joseph Shuster, the first illustrator of Superman.  *See* Compl. ¶¶ 92-151.  These

22   termination notices are invalid because, among other reasons, Shuster's heirs—

23   including his sister, Jean Peavy—entered into a contract in 1992 that has the legal

24   effect of preventing Ms. Peavy or Shuster's heirs from asserting the termination

25   rights they now invoke.  *See id.* ¶¶ 46-51, 99-104.  DC Comics' third claim

26   similarly arises under federal copyright law and, like the first claim, asserts that

27   defendants, Ms. Peavy, and others engaged in forbidden trafficking of rights that

28   violate DC Comics' rights under the Copyright Act.  *See id.* ¶¶ 151-60.  This

1  includes transferring the Shusters' putative rights in Superman to Toberoff, his
2  alter-ego companies, and the Siegels, *see id.* ¶¶ 52-58, 156-58—all in violation of
3  DC Comics' rights.  *See Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1047 (9th
4  Cir. 2005).  These illicit dealings also include misconduct connected to the parking
5  of alleged Superboy rights with the Siegels—rights that Shuster had long claimed
6  were his own.  *See id.* ¶¶ 73-78.

7      DC Comics' fourth, fifth, and sixth claims arise under state law and are
8  aimed at unlawful schemes orchestrated by Marc Toberoff and his alter-ego
9  companies in interfering with DC Comics' rights, contracts, and economic
10  relationships.  *See* Compl. ¶¶ 161-76.  Toberoff's rights-manipulation scheme is a
11  complicated one.  Although some of his activities have recently come to light as
12  summarized in DC Comics' complaint, much more remains to be exposed.  *See id.*
13  ¶¶ 1-11, 52-91.

14              2.    **Ms. Peavy and Ms. Siegel**

15      Both Jean Peavy and Joanne Siegel are material witnesses in this case and
16  have direct financial stakes in its outcome.  Their advanced age makes it essential to
17  preserve their testimony.  They are parties to multiple contracts with DC Comics, as
18  well as with each other and various defendants, that are at the heart of this dispute.
19  *See* Compl. ¶¶ 5-11, 46-57, 61-71, 76-77, 86-88.  DC Comics is entitled to examine
20  both witnesses concerning the origin, negotiation, formation, and performance of
21  these agreements, among other key issues.

22      The depositions of Ms. Peavy and Ms. Siegel in the Siegel Cases do not
23  remotely suffice to substitute for proper depositions in this case.  They contain
24  limited examination on some issues relevant to this case, but only in the context of
25  the separate claims and issues being litigated in the Siegel Cases.  *See infra* Section
26  IV.B.3.  There is no meaningful examination, for instance, about the conduct of
27  Toberoff and his companies in trafficking and interference with copyright and
28  contractual interests; the circumstances of the heirs' initial and ensuing interactions

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

1   with Toberoff; and the illicit agreements by which the Shusters were precluded

2   from freely entering into an agreement with DC Comics—all conduct that underlies

3   DC Comics' claims in this case.

4               3.   **DC Comics' Efforts to Commence Discovery**

5          Promptly after filing its complaint, DC Comics requested that defendants

6   engage in the initial discovery conference required by Rule 26(f). *See* Petrocelli

7   Decl. ¶¶ 10-11, Ex. H.  Over the course of the next two months, defendants

8   persistently refused to timely hold the conference or agree to commence discovery,

9   including the depositions of Ms. Peavy and Ms. Siegel, as detailed in Daniel

10  Petrocelli's accompanying declaration.  Initially, defendants said the parties could

11  not commence discovery or discuss a discovery plan until the Court issued an order

12  setting a scheduling conference.  Next, Mr. Toberoff, after stating he was

13  representing himself "for now," said he needed time to retain counsel for the

14  Toberoff parties.  After counsel was obtained, defendants said discovery should not

15  proceed because they intended to file dispositive motions to dismiss the complaint.

16  Defendants also claimed any depositions of Ms. Peavy and Ms. Siegel were

17  unnecessary in whole or in part because they already testified in the Siegel Cases.

18  Then, after weeks of unsuccessful efforts by DC Comics to secure a Rule 26(f)

19  conference or otherwise engage defendants in discovery, defendants asserted that

20  discovery could not proceed because they intended to seek a protective order

21  related to the Toberoff Timeline.  Defendants also said they needed to see the

22  specific discovery DC Comics sought from Ms. Siegel and Ms. Peavy—which DC

23  Comics immediately provided.  *See id.* ¶¶ 11-28; Exs. H-U.

24         DC Comics protested these tactical delays, particularly defendants' refusal to

25  participate in a Rule 26(f) conference to forestall commencement of DC Comics'

26  discovery and enable defendants to file a preemptive motion for a protective order

27  that they insisted be litigated and heard first.  *See* Petrocelli Decl. ¶¶ 11-28; Exs. H,

28  I, K, O, Q, S, T, V.  DC Comics advocated a joint motion after the parties' Rule

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1  26(f) conference.  *See id.* ¶¶ 27-29, Exs. T, V.  Defendants refused, and even now

2  contend that DC Comics has no right to bring this discovery motion because it did

3  not adequately meet and confer.

4      The record is clear, and so is defendants' objective:  to block all discovery

5  indefinitely in the hope of obtaining a complete dismissal.  DC Comics submits

6  there is no just reason for further obstruction of its discovery rights.

7      **B.**    **<u>Discovery Must Commence in this Case, and Ms. Peavy and</u>**

8      **<u>Ms. Siegel Should Be Deposed No Later than September 30, 2010.</u>**

9      While the ordinary procedure is to conduct an early meeting of counsel

10  before commencing discovery, Rule 26(d) provides that discovery may be taken at

11  any time when authorized by court order and on good cause being shown.  *See* FED.

12  R. CIV. PROC. 26(d); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273,

13  276 (N.D. Cal. 2002).  This Court instructs parties to "begin to conduct discovery

14  actively before the Schedule Conference required by Fed. R. Civ. P. 16(b),"

15  because "at the Scheduling Conference the Court will impose tight deadlines to

16  complete discovery."  Petrocelli Decl. Ex. at 2 n.1.

17      DC Comics has provided defendants with specific notice of two depositions

18  it seeks to take, together with the documents.  *See* Petrocelli Decl. ¶¶ 27, Ex. T.  On

19  August 16, the parties are scheduled to have the Rule 26(f) conference.  Ms. Peavy

20  and Ms. Siegel are elderly, and good cause exists to order that their depositions take

21  place no later than September 30, 2010, and that discovery commence and proceed

22  apace in this case.

23      1.    **Defendants' Contemplated Motion to Dismiss Is Not a Bar to**

24      **Discovery and Its "SLAPP" Motion, in Fact, Necessitates**

25      **Expedited Discovery.**

26      The mere filing of a dispositive motion under Rule 12 does not relieve

27  defendants of their discovery obligations.  *See Skellerup Indus. v. City of Los*

28  *Angeles*, 163 F.R.D. 598, 600-601 (C.D. Cal. 1995).  "Had the Federal Rules

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1   contemplated a motion to dismiss under [Rule] 12(b)(6) would stay discovery, the

2   Rules would contain a provision for that effect.  In fact, such a notion is directly at

3   odds with the need for expeditious resolution of litigation." *Id.*

4          Although California's anti-SLAPP statute, *see* CALIF. CODE CIV. P. § 425.16,

5   provides for staying discovery related to California *state-law claims* being

6   adjudicated in California *state court*, the U.S. Constitution's Supremacy Clause

7   dictates that the anti-SLAPP statute has no bearing on DC Comics' federal claims

8   for relief.  *See Hilton v. Hallmark Cards*, 580 F.3d 874, 881 (9th Cir. 2009) ("[T]he

9   anti-SLAPP statute does not apply to federal law causes of action."); *Sonoma*

10  *Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1016 (N.D.

11  Cal. 2007) ("Although Section 425.16 applies to state law claims brought in federal

12  court, it does not apply to federal question claims in federal court because such

13  application would frustrate substantive federal rights.").

14         *All of the discovery* DC Comics seeks of Ms. Peavy and Ms. Siegel is

15  relevant to DC Comics' three federal claims and, thus, defendants have no reason

16  based on the SLAPP statute to object to any of the discovery.  *In re Bah*, 321 B.R.

17  41, 45 (9th Cir. BAP 2005) (SLAPP statute does not apply to federal question

18  claims); *see also Globetrotter Software, Inc. v. Elan Computer Group. Inc.*, 63 F.

19  Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("the anti-SLAPP statute is not applicable to

20  the federal claims").  Moreover, in light of the defendants' SLAPP motion, DC

21  Comics is entitled to discovery necessary to respond to the motion.  The Ninth

22  Circuit has made clear that when a defendant files a SLAPP motion in federal court,

23  the motion cannot be granted unless the non-moving party is given a full and fair

24  opportunity to "discover information that is essential to its opposition."  *Metabolife*

25  *Intern., Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Because the discovery-

26  limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects

27  of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court.").

28

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

Furthermore, defendants' SLAPP motion, as described in meet-and-confer discussions, seeks to challenge the factual underpinnings of DC Comics' state-law claims.  DC Comics is entitled to take discovery to oppose such challenges and must be provided the opportunity to do so before summary judgment.  *See, e.g.*, *id.*; *Moser v. Triarc Cos.*, 2007 WL 3026425, at *3 (S.D. Cal. Oct. 16, 2007) ("[I]f a party brings an anti-SLAPP motion challenging the sufficiency of the nonmoving party's evidence, *the court must allow the nonmoving party to conduct discovery sufficiently to permit summary judgment under Rule 56.*") (emphasis added); *cf. Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005) (where SLAPP motion only challenges *legal sufficiency* of complaint, discovery may not be necessary).

> ### 2.    Discovery in this Case Is Not Precluded by Discovery in the Siegel Cases.

By rule, DC Comics is entitled to initiate discovery in this case, *see* FED. R. CIV. P. 26-37, and to the extent defendants seek to prevent discovery generally or to prevent the depositions of Ms. Peavy and Ms. Siegel, they must "carry a heavy burden of showing why discovery should be denied."  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also DR Sys., Inc. v. Eastman Kodak Co.*, 2009 WL 2973008, at *2 (S.D. Cal. Sept. 14, 2009) (right to deposition should not be barred absent "extraordinary circumstances").

Defendants have not identified specific objections to the depositions of Ms. Peavy or Ms. Siegel.  Nor could they reasonably do so:  these depositions have yet to occur, and a record has to yet to develop as to what questions DC Comics will ask, what answers the witnesses will give, and what objections defendants will interpose.  Instead, defendants have made the blanket objection that Ms. Peavy and Ms. Siegel may not be examined on subjects previously touched on in the Siegel Cases or even at all.  *See* Petrocelli Decl. ¶ 30, Ex. V.  Defendants' position is unfounded and requires the Court to issue an advisory opinion precluding entire

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY  OF TWO WITNESSES

1  lines of inquiry without an appropriate record of the scope, content, and conduct of

2  these examinations.

3      Courts refuse to grant such broad in-limine rulings in the trial context, and

4  such orders are even more inappropriate where, as here, the objection is that

5  discovery may be cumulative or burdensome.  "A court generally will not limit

6  discovery simply because it may be somewhat cumulative and duplicative.  Rather,

7  the discovery must be unreasonably so in light of the nature of the inquiry before

8  the court will limit the discovery sought."  6 DANIEL R. COQUILLETTE ET AL.,

9  MOORE'S FED. PRAC. § 26.60[2], at 26-431 (3d ed. 2007).  "Broad allegations of

10  harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

11  the Rule 26(c) test."  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th

12  Cir. 1992).  Indeed, the Federal Rules, by their own terms, acknowledge that

13  discovery will oftentimes be cumulative or duplicative, but only when discovery is

14  "*unreasonably* cumulative or duplicative" may it be precluded.  FED. R. CIV. P.

15  26(b)(2)(C)(1) (emphasis added).

16      Parties are routinely allowed to depose the same witnesses on similar topics

17  in different cases, and are even permitted to do so within the same case, especially

18  where, as here, a long time has passed since the first deposition, new evidence has

19  come to light, and new case theories have developed.  *See, e.g.*, *Graebner v. James

20  River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989); *Blackwell v. City & County of

21  San Francisco*, 2010 WL 2608330, at *1 (N.D. Cal. June 25, 2010).  As defendants

22  well know, this is a new case, and the parties and claims for relief at issue are

23  distinct from the Siegel Cases, as a comparison of the claims in the two cases bears

24  out.  *Compare id.* Ex. C, *with id.* Exs. A & B.  In the limited instances where there

25  is overlap in the issues, courts have long permitted second depositions on such

26  topics, *see, e.g.*, *Batelli v. Kagan & Gaines Co.*, 236 F.2d 167, 169-70 (9th Cir.

27  1956), especially where, as here, the witnesses were asked only a few questions on

28  overlapping areas of fact—or were asked no questions at all on important issues,

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

*see, e.g.*, *Cunningham v. Gates*, 2006 WL 2294877, at *3 (C.D. Cal. Aug. 2, 2006); *see also Baldwin-Montrose Chem. Co. v. Rothberg*, 37 F.R.D. 354, 356 (S.D.N.Y. 1964).  In no event is DC Comics bound by limited examinations conducted years before this case on issues that were not fully explored and on which the Court in the Siegel Cases made no findings and rendered no final judgment.  *Cf. Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356-57 (9th Cir. 1985) (issue preclusion only applicable where issues and facts are identical—not merely similar—and—unlike here—the court rendered final judgment in prior case); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 887-88 (9th Cir. 2000) (claim preclusion; same).

Ms. Peavy was deposed in the Siegel Cases for a total of 67 minutes, generating 37 pages of transcript.  *See* Petrocelli Decl. Ex. X.  In the Siegel Cases, she was a third-party witness.  Here, she is the self-described sole beneficiary of the Shuster Estate; it is the Shuster copyright termination notice that is centrally at issue in the dispute; Ms. Peavy signed key contracts at issue; and she bore witness to Toberoff's conduct that interfered with DC Comics' rights under federal and state law.  *See* Compl. ¶¶ 5-6, 9-11, 46-58, 73-88, 92-160, 174-76.  Even where extensive discovery has occurred in a prior case, further depositions and discovery are warranted where the specific issues in the subsequent case were not previously "fully developed factually."  *Waltz v. U.S. Dep't of Agric.*, 251 F.R.D. 491, 500 (E.D. Cal. 2008).

Moreover, Ms. Peavy must be deposed because she was never examined in the Siegel Cases on important contracts, documents, and other issues that have come to light since her deposition.  *Cf. Graebner*, 130 F.R.D. at 441; *Blackwell*, 2010 WL 2608330, at *1.  This includes the existence and terms of agreements between the Shusters and the Siegels (and others) concerning the Shusters' ability to reach agreements with DC Comics during the pendency of the Shusters' copyright termination notices.  Any such agreements would violate DC Comics' rights under the Copyright Act.  *See Milne*, 430 F.3d at 1047.  DC Comics has

15

every right to explore these contentions with Ms. Peavy, as well as question her on other offending agreements in which she participated.  DC Comics also needs to examine the illicit parking of Superboy rights, *see* Compl. ¶¶ 9-10, 73-78, in addition to the events described in the Toberoff Timeline, which was ordered produced well after Ms. Peavy was deposed, *see id.* ¶¶ 89-91, Ex. A.

Similarly, Ms. Siegel's deposition in the Siegel Cases did not fully explore key issues being litigated here or address certain issues at all.  For example, she was only briefly examined, over a few pages, concerning Superboy; whether and how the Siegels and Shusters share in rights related to Superboy are directly relevant to DC Comics' second, third, and sixth claims for relief.  Like Ms. Peavy, Ms. Siegel also was not examined concerning events described in the Toberoff Timeline.  *See Kraemer v. Unocal Termination Allowance Plan*, 2009 WL 936611, at *2 (C.D. Cal. Apr. 6, 2009) (further deposition of witnesses deposed in prior cases not duplicative where facts related to potential conflict of interest were not at issue in prior cases).

Among other issues to address with the witnesses is whether and to what extent they were misled by Toberoff about his being in business with a "billionaire willing to invest $15 million"—an illicit inducement Toberoff used to interfere with DC Comics' business relations with the Siegels.  *See* Compl. ¶¶ 68-69, Ex. A at 6; *Zamora v. D'Arrigo Brother Co.*, 2006 WL 3227870, at *2 (N.D. Cal. Nov. 7, 2006) (second Rule 30(b)(6) deposition not duplicative where important evidence was produced after first deposition); *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) (second 30(b)(6) deposition would not be unreasonably duplicative, even where "significant overlap" may occur).

3.    **The Toberoff Timeline Is a Proper Subject of Discovery.**

Completely without merit are defendants' efforts—years after the fact—to now cloak the Toberoff Timeline in privilege, remove it from the public record,

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

1  suppress its use in this case, and use the document itself as a basis to delay the

2  taking of Ms. Peavy's and Ms. Siegel's depositions.  The District Court in the

3  Siegel Cases ordered production of the Timeline in December 2008.  Immediately

4  thereafter, the Toberoff and Siegel defendants were advised that the document

5  would be filed publicly, and though specifically invited to move for a protective

6  order if they objected, they filed no such motion.  They similarly took no action

7  when, in May 2010, DC Comics filed this complaint, which attached the Timeline

8  as Exhibit A.  Far from objecting, Toberoff spoke openly to the press about the

9  document.  Only on July 13—and well after DC Comics had pressed for

10  commencement of discovery—did defendants assert for the first time that they

11  would file a motion to preclude any use of the Timeline in this case and insisted

12  that *their motion* be resolved before discovery proceeds.  *See* Petrocelli Decl. ¶ 23.

13  DC Comics will respond to defendants' motion for a protective order in its

14  opposition papers.

15     **C.   Conclusion**

16        The Court should issue an order: (1) requiring that discovery commence in

17  this case without any further delay; and (2) requiring that Ms. Siegel and Ms. Peavy

18  sit for their depositions and produce their documents no later than September 30,

19  2010.

20  **V.   DEFENDANTS' POSITION**

21     **A.   Factual Background**

22        1.   **The *Siegel* Litigation (Case No. CV 04-8400)**

23        This discovery dispute involves two closely related actions, both of which

24  deal with the statutory termination by the heirs of Superman's co-creators of prior

25  Superman grants to DC, pursuant to the Copyright Act.  Jerome Siegel ("Siegel")

26  and Joseph Shuster ("Shuster") co-authored the first Superman story, later

27  published in 1938 in *Action Comics, No. 1* by DC's predecessor, and hundreds of

28  subsequent Superman works.  Joanne Siegel, Siegel's widow, and Laura Siegel

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

Larson, their daughter, served notices of termination pursuant to 17 U.S.C. § 304(c)
(the "Siegel Terminations") on DC, and its effective parent, Warner Bros.
Entertainment Inc. ("Warner"), on April 3, 1997 and November 8, 2002, that
terminated Siegel's old copyright grants regarding Superman and Superboy, on
April 16, 1999 and November 17, 2004, respectively.

Warner disputed the Siegel Terminations, forcing the Siegels in October
2004 to file for declaratory relief as to their validity in two separate actions, Nos.
04-CV-8400 (Superman) and 04-CV-8776 (Superboy).  DC counterclaimed that the
Siegel Terminations were invalid.  These cases have been litigated fiercely ever
since, generating four published opinions that total more than two hundred pages,
as well as extensive discovery.  Multiple depositions were taken, including those of
the two witnesses at issue in the instant motion, Joanne Siegel and Jean Peavy.
Jean Peavy ("Peavy") is the 89-year-old sister of Joseph Shuster.  DC also took the
depositions of Jerome Siegel's daughter, Laura Siegel Larson, and Joseph Shuster's
nephew (and the executor of his estate), Mark Warren Peary ("Peary" or "Shuster
Executor").  The Siegels' counsel, Marc Toberoff ("Toberoff"), also represents the
Shuster Executor, who served a notice of termination regarding Superman ("Shuster
Termination") on November 10, 2003 pursuant to 17 U.S.C. § 304(d), which will
become effective on October 26, 2013.[1]  The above-named persons, including
Joanne Siegel and Jean Peavy, produced thousands of pages of documents in
response to DC's subpoenas and deposition notices.  *See* Declaration of Marc

---

[1] At the time of Joseph Shuster's death in 1992, under the Copyright Act of 1976,
Pub. L. 94-553, 17 U.S.C. § 304(c)(2), only an author's widow or widower,
children or grandchildren held termination rights.  Joseph Shuster died unmarried
and childless.  Toberoff Decl., Ex. A, ¶ 46.  As such, no one in Shuster's family
held termination rights.  The Copyright Term Extension Act of 1998, Pub. L. No.
105-298, expanded the category of those holding the termination right by adding
"the author's executor, administrator, personal representative, or trustee." 17 U.S.C.
§ 304(c)(2)(D).  The Shuster Estate was then probated to avail itself of the
termination right provided by the 1998 Act.  17 U.S.C. § 304(d).

1    Toberoff ("Toberoff Decl."), ¶ 14.

2         As part of this discovery, DC asked for and received extensive information

3    concerning the formation of the attorney-client relationship between the Siegel and

4    Shuster families and their attorney, Toberoff.  For example, in 2006 copies of  2001

5    and 2003 agreements between Peavy, Peary and Toberoff's loan-out company,

6    Pacific Pictures Corporation ("Pacific Pictures Agreements") were produced to DC

7    in *Siegel*.  Toberoff Decl., ¶ 16, Ex. J.  These agreements were cancelled in 2004

8    and have had no effect for nearly six years.  Toberoff Decl., Ex. A ("Complaint"), ¶

9    86.  A 2002 agreement between Toberoff, Joanne Siegel, Laura Siegel Larson, and

10   IP Worldwide (the "IP Worldwide Agreement") was also produced in 2006 to DC

11   in *Siegel*.  Toberoff Decl., Ex. L.  This agreement expired and has had no effect for

12   more than five years.  Toberoff Decl., Ex. C at 10, n.5.

13        DC repeatedly questioned both Joanne Siegel and Jean Peavy about their

14   retention of Mr. Toberoff.  Joanne Siegel was deposed for a full day, during which

15   DC asked her about many of the topics at issue in DC's new lawsuit, including:

16   when Toberoff's representation of her began (Toberoff Decl., Ex. I ("Siegel Depo.

17   Tr.") at 41:1-3; Ex. A (Complaint), ¶¶ 64, 70-72); whether Toberoff was involved

18   in the Siegels' negotiations with DC and Warner in 2001 and 2002 (Siegel Depo.

19   Tr. at 24:13-28:13, 39:1-40:25; Complaint, ¶¶ 62, 168-69); whether Joanne received

20   any assistance from Toberoff in writing her May 9, 2002 or September 21, 2002

21   letters breaking off settlement talks with DC regarding the Siegel Terminations

22   (Siegel Depo. Tr. at 32:18-34:17, 36:16-40:17, 42:17-43:9, 43:10-44:25, 45:1-

23   46:24, 119:4-121:9; Complaint, ¶¶ 65-67, 70, 168-69); and the Shuster Termination

24   and Toberoff's representation of Jean Peavy (Siegel Depo. Tr. at 102:8-104:25,

25   105:1-5; Complaint, ¶¶ 64, 70-72, 79-88).  *See* Toberoff Decl., Exs. A, I.

26        Jean Peavy was also asked about many topics at issue in this lawsuit

27   including:  Peavy's first meeting with Toberoff and her introduction of the Siegels

28   to Toberoff (Toberoff Decl., Ex. K ("Peavy Depo. Tr.") at 31:24-32:4; Ex. A

JOINT STIPULATION RE: PLAINTIFF'S
                                              MOTION TO INITIATE DISCOVERY AND
                                              TAKE DISCOVERY  OF TWO WITNESSES

(Complaint), ¶¶ 54, 164-66); the formation of the Shuster Estate and the Shuster Termination (Peavy Depo. Tr. at 28:10-14; Complaint, ¶ 58); the Pacific Pictures Agreements (Peavy Depo. Tr. 34:3-34:24; Complaint, ¶¶ 54-57, 105-11); and a 1992 agreement Peavy entered into with DC (Peavy Depo. Tr. 18:20-23:25, 34:3-34:24; Complaint, ¶¶ 47-51, 99-104, 162-63).  *See* Toberoff Decl., Exs. A, K.

Fact discovery in the *Siegel* litigation closed on November 16, 2006. Toberoff Decl., ¶ 21.  DC unsuccessfully sought to reopen discovery based on the so-called "Toberoff Timeline" (discussed below, and which is attached to and forms the basis of DC's new Complaint), but the Court denied this request.  *Id.*, Exs. N-O.

The parties filed substantial cross-motions for partial summary judgment in the Superman action.  The Siegels sought, *inter alia*, to have their terminations declared valid as a matter of law.  On March 26, 2008, Judge Larson upheld the Siegels' Superman Termination, and ruled that, as of April 16, 1999, the Siegels own 50% of the copyright to the first Superman story published in *Action Comics, No. 1*.  *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1117-39 (C.D. Cal. 2008) ("*Siegel* I").  Subsequently, on August 12, 2009, Judge Larson held that the Siegels had also recaptured Siegel's copyright interest in *Action Comics, No. 4*, parts of *Superman, No. 1* (pages 3-6) and Superman's origin story on the planet Krypton contained in the first two weeks of the *Superman* newspaper strips.  *See Siegel v. Warner Bros. Ent. Inc.*, 658 F. Supp. 2d 1036 (C.D. Cal 2009) ("*Siegel* II").  Recently, on August 12, 2010, the Siegels moved under F.R.C.P. 54(b) to have judgment entered as to these detailed orders as to the validity and scope of the Siegel Terminations, to permit immediate appeal.  Toberoff Decl., Ex. P.  The motion is set to be heard on September 27, 2010.  *Id.*

2.    **DC Files This Retaliatory Action**

a.    <u>DC's Lawsuit Prompts Dispositive Motions by
Defendants</u>

Judge Larson retired from the bench in October 2009, and the *Siegel* cases
were transferred to Judge Otis D. Wright.  Thereafter, Warner and DC fired their
counsel and retained Daniel Petrocelli, of O'Melveny and Myers, LLP.  Unhappy
with the results of the *Siegel* litigation, DC filed this new lawsuit on May 14, 2010.
The new complaint contains three state-law claims for relief, wherein DC
personally sued the Siegels and Shuster Estate's attorney, Toberoff, for purportedly
"tortiously interfering" with DC's "relationship" with the Siegels, and contested the
validity of the Shuster Termination on many of the same failed grounds that DC
had contested the Siegel Termination.  DC also sued the Siegels, the Shuster
Executor, and Toberoff for allegedly entering into so-called "consent agreements"
with the Shuster Executor that supposedly violated DC's purported rights under the
Copyright Act.

On August 13, 2010, Toberoff filed a substantial motion to dismiss DC's
Fourth, Fifth and Sixth claims against him and his entities pursuant to F.R.C.P.
12(b)(6), and filed a motion to strike under California's Anti-SLAPP statute, Code
of Civil Procedure § 425.16.  Toberoff Decl., Exs. C-D.  DC's Complaint also
contains three claims, purportedly under the Copyright Act, that challenge the
Shuster Termination and accused the Siegels, the Shuster Executor, and Toberoff of
conspiratorial "schemes" regarding their rightfully filed Superman termination
notices.  On August 13, 2010, the Siegels and the Shuster Executor filed substantial
motions to dismiss DC's First, Second, Third and Sixth Claims pursuant to F.R.C.P.
12(b)(6).  Toberoff Decl., Exs. E-F.  All of these dispositive motions are scheduled
to be heard shortly by Judge Wright, on October 18, 2010.  *Id.*, Exs. C-F.

During the parties' Rule 26(f) conference, held on August 16, 2010, DC
indicated that, in light of the pending motions, it was very likely to amend its

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    Complaint.  *Id.*, ¶ 4.  On Saturday, August 28, DC confirmed by email that it will

2    file an amended Complaint.  *Id.*, Ex. Q.  DC also indicated that it would not add any

3    additional causes of action to the amended Complaint, but merely "augment" the

4    current complaint in response to the various dispositive motions.  Defendants intend

5    to file similar motions to dismiss the amended Complaint, and to file another

6    motion pursuant to California's Anti-SLAPP laws, and plan on having these

7    motions heard on October 18, 2010.  To the extent any portion of DC's amended

8    Complaint survives the dispositive motions, defendants also intend to file

9    counterclaims against DC.  Toberoff Decl., ¶ 4.

10                   b.      DC Exploits the Theft of Privileged and Confidential

11                           Information From Toberoff's Law Firm

12         In 2006, an attorney, formerly employed by Toberoff, mailed packages of

13   documents stolen from Toberoff's office to executives at DC's effective parent,

14   Warner, including its General Counsel, in an apparent attempt to attack Toberoff

15   and to assist Warner and DC in the *Siegel* litigation.  *See* Toberoff Decl., Ex. L, ¶¶

16   25-26; Ex. M, ¶¶ 7-14.  The attorney/thief included with this package of documents

17   a rambling, defamatory cover letter which discusses privileged documents and

18   information, while straining to discredit Toberoff.  DC attached this patently

19   inadmissible and unreliable document, created and disseminated in clear violation

20   of the attorney's duties of loyalty and confidentiality, as "Exhibit A" and the

21   centerpiece of DC's new Complaint, referring to it as the "Toberoff Timeline."

22   Defendants have filed a motion for a protective order, pending before this Court

23   and also scheduled to be heard on September 20, 2010, that seeks to bar the use of

24   the Toberoff Timeline in discovery until the Ninth Circuit has had the opportunity

25   to rule on the propriety of DC's exploitation of this theft and patently improper

26   disclosure.

27

28

JOINT STIPULATION RE: PLAINTIFF'S
                                                         MOTION TO INITIATE DISCOVERY AND
                                                         TAKE DISCOVERY  OF TWO WITNESSES

### B.    The Relief Sought by DC in Its Motion Is No Longer At Issue

In this "Motion to Initiate Discovery," DC raises two issues that are purportedly in dispute. The first issue is whether the Court should issue an order "initiating discovery." However, this issue is entirely moot. Discovery has been initiated.[2] On August 5, 2010, the parties scheduled a Rule 26(f) conference for Monday, August 16, 2010. On the eve of that scheduled conference, at 6:53 p.m. on Friday August 13, 2010, DC served the instant motion. The next business day, August 16, 2010, the parties conducted the Rule 26(f) conference. Toberoff Decl., ¶ 4; Ex. B. The very next day, August 17, 2010, DC initiated discovery by serving discovery requests and notices of deposition. Toberoff Decl., Exs. G-H.

The second issue raised by DC's motion is a request that Joanne Siegel and Jean Peavy's depositions take place by September 30, 2010. That controversy is also moot. On August 17, DC served a notice of deposition on Joanne Siegel, which set a deposition date of October 5, 2010, and subpoena of Jean Peavy, which set a deposition date of October 12, 2010. Toberoff Decl., Exs. G-H. Those dates fall after September 30, 2010. Thus, DC currently has no procedural basis to seek the relief demanded in this motion, and the entirety of DC's motion is moot.

### C.    This Court Lacks Jurisdiction Over Jean Peavy

DC's motion is further flawed because this Court lacks jurisdiction to compel the deposition of Jean Peavy. Peavy is not a party to this action and is a resident of New Mexico. Accordingly, any motion to compel her deposition must be *preceded* by service of a subpoena issued from the United States District Court for the

_____

[2] DC's repeated accusations that defendants are engaging in improper delay are baseless. It is entirely proper for defendants to have postponed the Rule 26(f) conference until after the Toberoff defendants had retained their own counsel, and such counsel had an opportunity to familiarize themselves with the voluminous record in this complex case. The other postponements were the result of routine minor scheduling issues, including vacations and prior commitments, which defendants' counsel worked reasonably to resolve.

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

District of New Mexico, and that court has sole jurisdiction to decide any motion to compel arising from such a subpoena. *See* F.R.C.P. 45(a)(2)(B) ("A subpoena must issue as follows: … for attendance at a deposition, from the court for the district where the deposition is to be taken."); *Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002) ("Under Rule 45, the only procedure for enforcing a subpoena *duces tecum* is to institute contempt proceedings before the district court that issued the subpoena."); *Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 810 (S.D. Cal. 1995) ("[F.R.C.P.] 37(a)(1) provides that a motion to compel discovery should be brought before the court in the district where the discovery is being, or is to be, taken.").

No subpoena was served on Jean Peavy before DC served this premature motion, and no subpoena is attached to the motion. Four days ***after*** DC served this motion, DC served a subpoena on Peavy from the New Mexico District Court. Toberoff Decl., Ex. H. That subpoena is ineffective because it failed to include witness fees. *See Tourgeman v. Collins Fin. Servs.*, 2009 U.S. Dist. LEXIS 92230, at *3–4 (N.D. Cal. May 4, 2009) ("A failure to tender fees at the time of service invalidates the subpoena and the deposition testimony will not be compelled."); 9-45 *Moore's Federal Practice – Civil* § 45.21 ("The service of a subpoena that requires attendance but is not accompanied by the required fee is invalid, and the witness may refuse to appear solely on that ground."); Toberoff Decl., ¶ 13. Any motion to compel based on that inadequate subpoena must be heard by the issuing court. There is simply no issue for this Court to decide concerning Jean Peavy, and DC's motion as to her must be denied.

**D.**  **Depositions Should Not Be Compelled on the Dates Noticed by DC, Because Dispositive Motions Will Be Heard Less Than Two Weeks Later**

Even if this motion is construed as a request for an order permitting depositions of Ms. Siegel and Ms. Peavy on October 5 and October 12, 2010, the

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

motion should be denied.  On August 13, 2010, the same day that DC served the instant motion, defendants filed three Rule 12(b)(6) motions to dismiss and an Anti-SLAPP motion to strike.  Toberoff Decl., Exs. C-F.  Faced with these motions, DC announced on August 28, 2010, that it will file an amended Complaint in order to "augment the pleading to address issues raised in [the dispositive] motions."  Toberoff Decl., Ex. Q.  DC, however, does not plan to add additional causes of action, and, as all of DC's claims are fatally defective as a matter of law, defendants intend to file renewed motions to dismiss all of DC's claims.  These motions can and should dispose of all of DC's claims as a matter of law, and will, at a minimum, clarify the scope of the pleadings and associated discovery.  Accordingly, DC's request to expedite the depositions of Jean Peavy and Joanne Siegel, both of whom were already deposed in the closely-related *Siegel* cases, should be denied, and other depositions should be stayed pending the outcome of these dispositive motions.

DC repeats the straw man generalization that the "mere filing of a dispositive motion under F.R.C.P. 12 does not relieve defendants of their discovery obligations."  Joint Stipulation, Section IV.B.1.  Defendants have never asserted that they are relieved of all discovery obligations as a result of their F.R.C.P. 12(b)(6) motions.  The question is whether, given the pendency of substantial motions to dismiss and an Anti-SLAPP motion that will all be heard shortly, it makes sense to rush to depose elderly witnesses before the scope of the pleadings and associated discovery is known.

DC ignores the well-established case law that holds that, while a motion to dismiss does not automatically stay discovery, the courts have broad discretion to stay discovery pending the resolution of dispositive motions to dismiss.  *See Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987).[3]  The Ninth Circuit has approved

---

[3] *Skellerup Indus. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995), relied

discovery stays pending a motion to dismiss where discovery was "not required to address the issues raised" by the motion, as "[d]iscovery is only appropriate where there are factual issues raised by a Rule 12(b) motion." *Id.* at 155 (quotations omitted). *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (approving discovery stay because "there were no factual issues" raised by motions to dismiss); *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981) (a district court "may … stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief"); *Sasselli v. Pena*, 2008 U.S. Dist. LEXIS 44458, at *2 (E.D. Cal. June 3, 2008) (a magistrate judge "has broad discretion to stay discovery pending decision on a dispositive motion").  District Courts in the Ninth Circuit have adopted a simple test to determine whether it is appropriate for discovery to be postponed while a  dispositive motion is pending:

> "First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed …. Second, the court must determine whether the pending dispositive motion can be decided absent additional discovery."

*Lowery v. F.A.A.*, CIV. S-93-1352, 1994 WL 912632, at *3 (E.D. Cal. Apr. 11, 1994) (citations omitted).[4]  As part of this analysis, "the Court should '… take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted.'" *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000).

---

on heavily by DC for the proposition that a Rule 12(b) motion does not stay discovery, recognizes that a court will often stay discovery on a "case-by-case" basis pending the resolution of a dispositive motion, based on factors including "whether it is a challenge as a 'matter of law,'" and "whether some or all of the defendants join in the request for a stay," both of which are present here. *Id.* at 601.

[4] The cases applying this test and concluding that it is appropriate for discovery to wait until dispositive motions have been adjudicated are legion. *Hall v. Tilton*, 2010 U.S. Dist. LEXIS 11162, at *2-*3 (N.D. Cal. Feb. 8, 2010) (adopting test and granting stay); *Curtis v. Benda*, 2009 U.S. Dist. LEXIS 86504, at *3-*6 (W.D. Wash. Sept. 4, 2009) (same); *Hanni v. American Airlines, Inc.*, 2009 U.S. Dist. LEXIS 49338 (N.D. Cal. May 27, 2009) (same).

1    Defendants' motions meet these criteria.  *First*, the motions that have already

2    been filed, and will be re-filed in response to DC's amended Complaint, target each

3    of DC's claims and, if successful, would dispose of the entire case.  *See*

4    Defendants' Summary of Dispositive Motions, attached as Appendix A to

5    Defendants' Portion of this Joint Stipulation; Toberoff Decl. at Exs. C-F.  *Second*,

6    the motions are and will be to dismiss as a matter of law, based on clear statutory

7    and case authority.  *See id.*  DC has not identified in its motion any discovery that

8    could contradict the clear and well-established law on which defendants rely.

9    While defendants do not intend to re-argue the motions in this brief, they

10   respectfully refer this Court to the motions (*see* Toberoff Decl. at Exs. C-F) and

11   have included an appendix that describes the bases for such motions to dismiss in

12   detail, and demonstrates how the motions will resolve all of DC's claims as a

13   matter of law.  *See* Appendix A.  In any event, there can be no reasonable dispute

14   that each and every one of these motions can clearly be "decided absent additional

15   discovery" as a matter of law.  *Lowery*, 1994 WL 912632, at *3.  Thus, there is no

16   basis for an order compelling that depositions occur before these dispositive

17   motions are decided shortly.  *Wood*, 644 F.2d at 802.

18       Moreover, even considering DC's decision to delay resolution of these

19   motions by filing an amended complaint, defendants intend to maintain a hearing

20   date of October 18, 2010, or a date shortly thereafter, for the dispositive motions.

21   Accordingly, the period of the stay should not be lengthy.  There is no reason

22   whatsoever why DC needs to take depositions now, instead of after the resolution

23   of these motions, which along with DC's pending amendment of its Complaint and

24   defendants' counterclaims, will undoubtedly clarify and narrow the matters at issue

25   in this action.

26       DC's primary argument as to why these depositions are urgent is that the

27   witnesses are of "advanced age."  Joint Stipulation, Section I.A.  DC's sense of

28   urgency, however, is belied by its own conduct.

27

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    *First*, DC waited years to initiate its claims, and cannot now assert that it will

2    be substantially prejudiced by waiting a couple more weeks for defendants'

3    dispositive motions to be resolved.  The Pacific Pictures Agreements and IP

4    Worldwide Agreement on which DC bases its claims were produced to DC in 2006.

5    Toberoff Decl., ¶¶ 16-17, 19, Ex. J, Ex. L.  Moreover, even if the so-called

6    "Toberoff Timeline" was DC's sole source of knowledge as to the allegations in its

7    Complaint (it is not), by DC's own account it received the letter on December 10,

8    2008 (Complaint, ¶88), but waited a year and a half, until May 14, 2010, to file suit.

9    *Second*, had these witnesses' age been DC's true concern, DC could have

10    filed, but did not file, a petition under F.R.C.P. 27(a) to take their depositions to

11    "preserve testimony" at any time from 2008-2010, prior to the filing of this action.

12    *Third*, DC has offered no reason, even given the advanced age of the

13    witnesses, why waiting for a matter of weeks to depose them presents a material

14    problem.  *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 2007 U.S. Dist.

15    LEXIS 70686 at *7 (E.D.N.Y. Sept. 24, 2007) (rejecting the expedited deposition

16    of an elderly witness, because the deponent's age alone was an insufficient basis to

17    expedite).

18    *Fourth*, DC has offered no case law to support the expedited depositions of

19    elderly witnesses where, as discussed in more detail below, their testimony has

20    already been preserved by their depositions in a closely related action.

21    Accordingly, the witnesses' ages alone provide no basis for seeking unnecessarily

22    expedited depositions.  Indeed, the advanced age of the deponents favors a

23    reasonable stay of depositions, to avoid the possibility that these elderly persons

24    will be seriously burdened with successive and entirely unnecessary questioning by

25    DC.  *See* Declaration of Joanne Siegel, ¶¶ 2-9.

26    *Fifth*, DC has waited months to amend its Complaint, despite being advised

27    as early as July 13, 2010 of the fatal problems with its pleading.

28

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    Nor is there any other reason why DC would be materially prejudiced from a

2  temporary stay of depositions pending resolution of the dispositive motions. DC

3  fails to articulate any facts that it needs in order to address the pending motions, and

4  therefore DC cannot show that it will suffer prejudice by briefly waiting to

5  commence depositions until these motions are decided.  The discovery period in

6  this action will clearly be sufficient to permit DC to take any appropriate deposition

7  following the resolution of the motions.  Toberoff Decl., ¶ 5.  On the other hand, if

8  the depositions are taken before the dispositive motions and related discovery

9  motions are decided, it will force defendants' counsel to instruct these witnesses not

10  to answer questions at deposition on the grounds stated in the pending motions.

11  This will undoubtedly lead to further motion practice, and potentially result in Ms.

12  Siegel and Ms. Peavy having their depositions taken three times.  DC's discovery

13  "plan" is thus inefficient, duplicative and burdensome, all of which justifies

14  postponing the depositions, not expediting them.  F.R.C.P. 26(c).  Common sense

15  demands that the dispositive motions be resolved first, and then, with the scope of

16  the case properly narrowed, the depositions can proceed if and as necessary.

17    **E.    Depositions Should Await Imminent Resolution of the Pending**

18        **Rule 54(b) Motion in *Siegel* Which, If Granted, Will Substantially**

19        **Narrow Discovery in this Case**

20    The Siegels' pending F.R.C.P. 54(b) motion in the *Siegel* Superman action,

21  to be heard by Judge Wright on September 27, 2010, also has a direct and

22  substantial bearing on discovery in this case.  Toberoff Decl., Ex. P.  If the Court

23  enters judgment based on its three lengthy published opinions concerning the scope

24  and validity of the Siegels' Superman Terminations,[5] that will have preclusive

---

[5] *Siegel I,* 542 F. Supp. 2d 1098, 1117-39 (termination upheld as to first Superman story in *Action Comics* No. 1); *Siegel II,* 658 F. Supp. 2d 1036, 1080-84 (defining additional recaptured Superman works); *Siegel v. Warner Bros. Ent. Inc.*, 690 F. Supp. 2d 1048 (C.D. Cal. 2009) ("*Siegel* III") (denying motions for reconsideration).

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1    effect as to the same issues in this action regarding the mirror-image Shuster

2    Termination, preventing DC from re-litigating such issues, and significantly

3    narrowing the scope of discovery in this case.  At a status conference on August 13,

4    2010, Judge Wright indicated that entry of such a judgment pursuant to Rule 54(b)

5    may be appropriate.  Toberoff Decl., Ex. R at 3:19-4:13.  Common sense demands

6    that the Rule 54(b) motion, along with the dispositive motions be resolved first, and

7    then, with the scope of the case properly narrowed, that depositions proceed if and

8    as necessary.

9        **F.    The Pending Anti-SLAPP Motion Should Stay and/or Limit**

10            **Depositions**

11        DC argues that defendants' Anti-SLAPP motion "necessitates" expedited

12    discovery.  However, DC has failed to identify good cause or any particularized

13    need for such discovery.  Accordingly, applying either the substantive principles of

14    the Anti-SLAPP law or the Federal Rules of Civil Procedure, DC has not made the

15    necessary showing to support expedited discovery before the hearing on the Anti-

16    SLAPP motion.

17        Under California law, the filing of an Anti-SLAPP motion stays discovery

18    unless the plaintiff can show "good cause" for obtaining discovery.  Under

19    California Code of Civil Procedure Section 425.16(g), "[a]ll discovery proceedings

20    in the action shall be stayed upon the filing of a notice of motion made pursuant to

21    this section. The stay of discovery shall remain in effect until notice of entry of the

22    order ruling on the motion. The court, on noticed motion and for good cause shown,

23    may order that specified discovery be conducted notwithstanding this subdivision."

24    *Id.*  A showing of good cause requires the plaintiff to identify particular facts that it

25    seeks in discovery.  *See 1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568,

26    593 (2003) (plaintiff seeking to lift anti-SLAPP discovery stay must explain what

27    additional facts the plaintiff expects to uncover).  Similarly, under F.R.C.P. 56(f), a

28    plaintiff may be entitled to conduct discovery before a hearing on a motion for

30

1    summary judgment if it shows a "particularized need" for the discovery.[6]

2        DC has made no effort whatsoever to meet either the showing of good cause

3    required by § 426.16(g) or the showing of particularized need required by F.R.C.P.

4    56(f).  DC fails to make such a showing despite its admission that F.R.C.P. 56(f)

5    provides only for discovery that is "essential" to opposing summary judgment.

6    Joint Stipulation, Section IV.B.2.  Because DC has failed to identify any discovery

7    that is "essential" to oppose the Anti-SLAPP motion, it cannot rely on federal rules

8    regarding summary judgment motions as a basis to demand expedited discovery.

9    As Judge Feess explained in *New.Net, Inc. v. Lavasoft*:

> "Even if the Court concluded that Section 425.16(g) and Rule 56 were
> potentially in conflict, the potential for a direct collision has not
> materialized because Plaintiff has not demonstrated that discovery is
> essential to its opposition nor has Plaintiff shown good cause as to why
> discovery should be permitted.
> "Although Plaintiff has sought to defer this motion pending discovery,
> it has not stated with any degree of specificity what discovery it needs
> or how that discovery would bear on this motion….  To the extent that
> the proposed discovery would contain any relevant information, most
> of it is already known to Plaintiff….  In short, Plaintiff has failed to
> persuade the Court that discovery is essential to its opposition to
> Defendant's motion."

17    356 F. Supp. 2d at 1102 (internal citations omitted).  *See also Moser v. Triarc Cos.*,

18    2007 WL 3026425, at *2-*4 (S.D. Cal. Oct. 16, 2007) (court denied plaintiff's

19    motion for leave to conduct discovery because such discovery was not "essential in

20    ———————————————

21    [6] Judge Feess held in *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090 (C.D. Cal.
     2004) that the standards under Rule 56(f) and the Anti-SLAPP statute are similar.

22    Cal. Civ. Proc. Code § 425.16(g) provides that "on a noticed motion and for good
     cause shown, [a court] may order that specified discovery be conducted

23    notwithstanding [the automatic stay]."  *Id.* at 1101.  This protection is analogous to
     Rule 56's requirement that a party opposing a motion "must explain with

24    particularity why it is unable to oppose the motion, state with specificity what facts
     it intends to seek through discovery, and show how its discovery efforts are

25    reasonably expected to create a triable issue."  *Id.* at 1101-1102 (finding no
     "collision" between Rule 56 and the Anti-SLAPP law and noting that "to find such

26    collision would undermine the holding in [*United States v. Lockheed Missiles &

27    Space Co., Inc.*, 190 F.3d 963, (9th Cir. 1999)] permitting the use of the Anti-
     SLAPP procedure in federal court.").

28

JOINT STIPULATION RE: PLAINTIFF'S
                                                                  MOTION TO INITIATE DISCOVERY AND
                                                                  TAKE DISCOVERY  OF TWO WITNESSES

opposing" anti-SLAPP motion); *compare Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 838 (9th Cir. 2001) ("The district court … asked Metabolife to itemize the discovery needed to respond to the anti-SLAPP motion, which Metabolife did."). Here, DC articulates no specific need for discovery tied to the Anti-SLAPP motion, and under either the Federal Rules of Civil Procedure or California law, DC has not met its burden.

DC ignores its own failure to make the necessary showing to obtain discovery under either California Code of Civil Procedure 425.16(g) *or* F.R.C.P. 56(f), and instead simply recites (incorrectly) that no limitations on discovery whatsoever are imposed when an Anti-SLAPP motion is pending in federal court.

Recent Supreme Court precedent, which DC wholly ignores, shows why DC's position is incorrect. In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), decided this year, the United States Supreme Court set forth principles reinforcing the conclusion that the discovery stay of California's Anti-SLAPP law, as a matter of substantive law governing state-created rights, must apply in federal court. In *Shady Grove*, the Supreme Court addressed the interplay between a New York law relating to class action lawsuits and F.R.C.P. 23. In a controlling concurrence, Justice Stevens made clear that, under the Rules Enabling Act, a federal rule cannot govern when it "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." 130 S. Ct. at 1452 (Stevens, J., concurring).[7]

Here, the discovery stay and good cause requirements of the Anti-SLAPP

---

[7] When "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices," the "narrowest ground" on which the judgment rests then represents the controlling rule. *Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Stevens' opinion therefore provides the controlling rule in *Shady Grove*.

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY OF TWO WITNESSES

law are substantive protections that California adopted to suppress "non-meritorious cases aimed at chilling [free speech] through costly, time-consuming litigation." *New.net,* 365 F.Supp.2d at 1098 (citing Cal. Code of Civ. Proc. § 425.16(a)).  By definition, the SLAPP plaintiff "does not hope to win the lawsuit and instead 'tries to wear down the other side by forcing it to spend time, money, and resources battling the SLAPP instead of the protected activity.'" *Schering Corp. v. First Databank Inc.*, 2007 WL 1176627, at *6 (N.D. Cal. April 20, 2007) (*quoting Visher v. City of Malibu*, 126 Cal.App.4th 364 (2005)).  The automatic discovery stay prevents a plaintiff from coercing the defendant to respond to costly and time-consuming discovery before the court has had an opportunity to determine the merits of a defendant's Anti-SLAPP motion.  To allow wide-ranging discovery before an Anti-SLAPP motion has been decided would controvert the purposes of the Anti-SLAPP statute.  *New.net, Inc.*, 365 F.Supp.2d at 1098.  In light of *Shady Grove*'s mandate that "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result," 130 S.Ct. at 1452 (Stevens, J., concurring), it is clear that California's Anti-SLAPP discovery stay should apply here absent a showing of "good cause" for discovery, a showing that DC has not even attempted to provide.[8]

_____

[8]  Moreover, two years after its decision in *Metabolife*, the Ninth Circuit noted without disapproval that "[i]f the defendant files a [anti-SLAPP] motion to strike, all discovery proceedings are stayed.  See § 425.16(g).  A court may, however permit specified discovery 'on noticed motion and for good cause shown.'" *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).  DC ignores *Batzel*, which specifically stated that "[b]ecause California law recognizes the protection of the Anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."  *Id.* at 1025-26 (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (emphasis added).  As with other types of immunities from suit, the substantive policies of the Anti-SLAPP law to protect public participation would be seriously impaired if a plaintiff could bring a SLAPP suit and wear the opposing party down in discovery while the anti-SLAPP motion is pending.  *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an immunity from suit

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

Finally, DC's attempt to distinguish its federal and state law claims does not resolve the issue of whether the depositions should take place before the hearing on the Anti-SLAPP motion.  DC claims that "[a]ll of the discovery [DC] seeks … is relevant to [DC's] federal claims" and thus is not subject to a stay under the Anti-SLAPP laws.  Joint Stipulation, Section IV.B.2.  However, because DC has failed to identify the subject matter of the depositions, and has sought documents clearly related to its state-law claims alone, it is impossible to know how the depositions could be limited to the federal claims.  Toberoff Decl., Exs. G-H.  DC's state law claims raise additional issues not covered in the federal claims for which DC actively seeks discovery.  For example, DC's counsel insists on questioning Joanne Siegel and Ms. Peavy based on the "Toberoff Timeline" (giving rise to defendants' motion for a protective order pending before this Court), an issue <u>directly</u> related to DC's state law claims for tortious interference.  Complaint, ¶¶ 89-90, 171-72.  Even if the depositions could somehow be limited solely to its federal claims (which is highly unlikely, and impossible to achieve in practice), DC would eventually want to take discovery as to its state law claims, subjecting these elderly witnesses to two depositions in addition to the depositions already taken of these witnesses in the closely related *Siegel* cases.  *See Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2007 WL 3342573, at *2 (N.D. Cal. 2007) (motion to compel second deposition of elderly witness denied because of "potential inconvenience of a repeat deposition to an elderly witness").

rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.").

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

**G.     The Depositions Should Be Stayed Because the Witnesses Have Already Been Exhaustively Deposed in the *Siegel* Actions**

A further reason to stay these depositions pending resolution of the dispositive motions is that the witnesses have already been deposed on essentially identical topics in the closely-related *Siegel* actions.  This suggests that, at a minimum, depositions should be delayed until the issues in this case have been clarified, and that the scope of these depositions should be limited to prevent duplicative and harassing discovery.  The Ninth Circuit has held that "eliminating duplicative discovery" is an important consideration in discovery practice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).  There is no plausible reason to subject anyone to multiple, redundant depositions on the same topics, especially with pending dispositive motions, as "repeat depositions are disfavored."  *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989).[9]  This concern is only heightened where, as here, the deponents are elderly. *Baxter Healthcare Corp.*, 2007 WL 3342573, at *2.

Moreover, the cases cited by DC do not support its contention that it is free to re-depose witnesses as to subjects already covered at length.  If anything, the cases strongly support the proposition that, if DC is allowed to re-depose witnesses, DC should be limited to ***new*** topics not covered in the original depositions.  DC claims that Courts "routinely" allow repeat depositions when "a long time has passed since the first deposition, new evidence has come to light, and new case theories have developed," citing *Graebner*, 130 F.R.D. 440, and *Blackwell v. City & County of San Francisco*, 2010 U.S. Dist. LEXIS 75453 (N.D. Cal. June 25, 2010).  However,

_____

[9] *See also Melhorn v. New Jersey Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (E.D. Pa. 2001) ("Absent some showing of need or good reason for doing so, a deponent should not be required to appear for a second deposition."); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996) (citations omitted) ("Scheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense.").

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY  OF TWO WITNESSES

in both cases, the courts **refused** to permit a second deposition. *Graebner,* 130 F.R.D. at 441-42, refused to allow a second deposition where the deponent already had been deposed at length, despite claims that "new information" had surfaced and "new issues in the case [were] raised by her amended complaint." Similarly, the court in *Blackwell,* 2010 U.S. Dist. LEXIS 75453 at *4-*6, refused to allow a second deposition where the attorney "had an opportunity to obtain the information now sought through the first deposition," and when the reason offered for the second deposition was the development of a new legal theory.[10]

DC also claims that "where there is overlap in the issues, courts have long permitted second depositions … especially where … the witnesses were asked only a few questions" as to the overlapping areas, citing *Batelli v. Kagan & Gaines Co.*, 236 F.2d 167 (9th Cir. 1956), *Cunningham v. Gates*, 2006 U.S. Dist. LEXIS 58368 (C.D. Cal. Aug. 2, 2006), and *Baldwin-Montrose Chem. Co. v. Rothberg*, 37 F.R.D. 354 (S.D.N.Y. 1964). None help DC's argument. *Batelli,* 236 F.2d at 169-70, merely noted that a person had been deposed in two different cases, and did not address the propriety of a second deposition. *Cunningham*, 2006 U.S. Dist. LEXIS 58368 at *11-*12, did not concern repeat depositions, but merely whether witnesses should be required to testify *at trial* when they had testified on similar issues at a previous trial. *Baldwin-Montrose Chem. Co,* 37 F.R.D. at 356-57, actually **supports** defendants' position: *Baldwin* provided that the parties would utilize depositions and discovery from a companion lawsuit, rather than conduct new discovery on the same issues, and limited further discovery to "matters not covered in the [companion lawsuit's] depositions and interrogatories." *Id.* at 356–57. The

---

[10] DC also cites *Waltz v. U.S. Dep't of Agric.*, 251 F.R.D. 491 (E.D. Cal. 2008), for the proposition that "[e]ven where extensive discovery has occurred in a prior case, further depositions and discovery are warranted where the specific issues … were not previously 'fully developed factually.'" *Waltz* is inapplicable, as the witnesses therein had not been deposed or even disclosed in the prior action, and thus there was no "second deposition." *Id.* at 496.

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND TAKE DISCOVERY OF TWO WITNESSES

*Baldwin* Court did so "to avoid a needless waste of time, money and effort and to expedite the litigation." *Id.*[11]

DC has given no indication that it is willing to limit the repeated deposition of either Ms. Siegel or Ms. Peavy to *new* topics not covered in their initial depositions. On the contrary, it is evident from DC's Complaint, which seeks to re-litigate the issues decided against DC in *Siegel*, and DC's voluminous document requests that the depositions at issue herein will be largely duplicative.

Joanne Siegel was already deposed for a full day, covering numerous topics directly at issue in this litigation, including Superboy,[12] and her 1999-2002 "settlement" negotiations with DC. Declaration of Joanne Siegel, ¶¶ 2-9. Such topics include, but are not limited to, the following:

| Topic | Depo Pages | Complaint |
|---|---|---|
| Joanne Siegel's relationship with Jerome Siegel from 1935-1948 | 14:3-14:9 | ¶¶ 27-30, 36 |
| Jerry Siegel being re-hired by DC's predecessors in the late 1960s | 14:21-15:23 | ¶ 41 |

---

[11] DC does manage to cite a handful of readily distinguishable cases where a second deposition was allowed. In *Kraemer v. Unocal Termination Allowance Plan*, 2009 U.S. Dist. LEXIS 33695, at *7 (C.D. Cal. Apr. 6, 2009), the court allowed second depositions of two witnesses, only "on issues related to conflict of interest," an issue that arose *after* the initial depositions. Moreover, *Kramer* specifically ordered the parties "to use the [] discovery" from the prior action in formulating a discovery plan. *Id.* Similarly, in *Zamora v. D'Arrigo Brother Co. of Cal.*, 2006 U.S. Dist. LEXIS 83106, at *4–5 (N.D. Cal. Nov. 7, 2006), a second deposition was allowed, but was strictly limited to questions arising from data that arose years after the first deposition. In *UniRAM Tech., Inc. v. Monolithic Sys. Tech.*, Inc., 2007 U.S. Dist. LEXIS 24869, at *5-8 (N.D. Cal. March 23, 2007), the court allowed a second Rule 30(b)(6) *corporate* deposition where new topics were designated for the deposition, there was no indication that the same individual would be deposed twice on the same topics, and "there was some understanding … [that] the [prior] deposition could be reconvened in light of the shortened [] deposition." *Id.*

[12] As the Court may recall, discovery in the "Superman" action (Case No. 04-CV-08400 ODW (RZx) and the "Superboy" action (Case No. 04-CV-08776 ODW (RZx) was consolidated. The issue of Superboy was obviously at hand in Joanne Siegel's deposition, as she was one of the two plaintiffs in the "Superboy" case.

| Topic | Depo Pages | Complaint |
|---|---|---|
| Joanne Siegel's discussions of termination with Jerry Siegel | 16:18-17:14; 71:8-72:12 | ¶ 45 |
| Joanne Siegel's retention of counsel to exercise her termination rights | 22:8-24:6 | ¶¶ 60-61 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between October 2001 and February 2002 | 24:13-28:13; 39:1-40:25 | ¶¶ 62, 168-69 |
| DC's February 2002 long-form draft settlement agreement | 27:9-28:13; 87:4-88:13; 94:3-95:6 | ¶¶ 62, 168-69 |
| The drafting and meaning of the May 9, 2002 letter sent by Joanne Siegel | 32:18-34:17; 36:16-40:17; 42:17-43:9; 45:1-46:24; 119:4-121:9 | ¶¶ 65-67, 168-69 |
| Joanne Siegel's first contact with Marc Toberoff | 41:1-3 | ¶¶ 64, 70-72 |
| Joanne Siegel's September 21, 2002 Letter to DC's Publisher | 43:10-44:25 | ¶¶ 70, 168-69 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 56:12-71:7 | ¶¶ 43-45 |
| The Shuster Termination | 102:8-104:25 | ¶¶ 79-88 |
| Marc Toberoff's representation of Jean Peavy | 105:1-5 | ¶¶ 64, 70-72 |
| The Superboy "pitch" letter by Jerry Siegel | 105:6-109:13 | ¶¶ 74, 134, 137 |
| The Superboy script by Jerry Siegel | 109:14-115:10; 135:3-137:3 | ¶¶ 74, 136-37 |
| The 1947 Action between Jerry Siegel, Joseph Shuster, and DC's predecessors | 124:20-125:5 | ¶¶ 37-40 |

As discussed above, the District of New Mexico is the proper forum to address any discovery that DC seeks from Jean Peavy, who resides there. In addition, Ms. Peavy was already deposed in the Siegel cases on many topics that are at issue here. That DC is now unsatisfied with its questioning on these topics and wants a "do-over" of discovery already taken is no reason to subject 89- and

38

92-year-old witnesses to multiple depositions on the same topics.

**H.    <u>Conclusion</u>**

For the foregoing reasons, DC's "Motion to Initiate Discovery" should be denied in its entirety.  Depositions should not be compelled while a number of dispositive motions will shortly be heard and the pleadings will soon be amended. Instead, the parties should meet and confer promptly after the rulings on the pending dispositive motions and after the pleadings are amended to discuss an appropriate deposition plan.

Dated:      August 30, 2010              Respectfully Submitted,

                                        O'MELVENY & MYERS LLP


                                        By:  /s/ Daniel M. Petrocelli
                                              Daniel M. Petrocelli
                                              Attorneys for Plaintiff DC Comics

Dated:      August 30, 2010              Respectfully Submitted,

                                        TOBEROFF & ASSOCIATES, P.C.


                                        By:  /s/ Marc Toberoff
                                              Marc Toberoff
                                              Attorneys for Defendants Mark
                                              Warren Peary as personal
                                              representative of the Estate of Joseph
                                              Shuster, Joanne Siegel, and Laura
                                              Siegel Larson

Dated:      August 30, 2010              Respectfully Submitted,

                                        KENDALL BRILL & KLIEGER LLP


                                        By:  /s/ Richard B. Kendall
                                              Richard B. Kendall
                                              Attorneys for Defendants Marc
                                              Toberoff, Pacific Pictures
                                              Corporation, IP Worldwide, LLC,
                                              and IPW, LLC

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

# APPENDIX A

## DEFENDANTS' SUMMARY OF DISPOSITIVE MOTIONS

For the Court's convenience, the Arguments made in the separate motions to dismiss are summarized as follows.

- DC's First Claim seeks to invalidate the Shuster Terminations, and will fail as a matter of law:

  o *Section (1)* of DC's First Claim (Toberoff Decl., Ex. A ("Complaint"), ¶¶ 94-98) erroneously alleges that Shuster's termination rights do not vest in the executor or representative of his estate unless he had a widow, children and grandchildren who were "not living, but who did at some time live." This argument contradicts the plain language of the statute and the accepted interpretation of "not living" under the Copyright Act, as well as the legislative intent of § 304, and would lead to absurd results. *See Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1114 n.3 (C.D. Cal. 2008); 3 M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* ("*Nimmer*") § 11.03[A][2][a] at 11-40.1-11.40.2 (emphasis added); *Stewart v. Abend*, 495 U.S. 207, 212 (1990); 67 Fed. Reg. 69134; Toberoff Decl., Ex. E at 2-7.

  o *Section (2)* (Complaint, ¶¶ 99-104) argues that a 1992 agreement ("1992 Agreement") between DC and Shuster's siblings bars the Shuster Termination. This argument fails because the 1992 agreement could not lawfully grant any Superman copyrights. None of the parties to that agreement possessed any termination rights or Superman copyrights to grant; the Shuster Executor, the sole holder of the termination right, was not a party to the 1992 Agreement, as pled in the complaint; and, in any event, the agreement could not have conveyed or released the inalienable termination right as a matter of law under § 304(c)(5). *See* 17 U.S.C. §§ 304 (c)(5), (c)(6)(B); *Classic*

1    *Media, Inc. v. Mewborn* ("*Mewborn*"), 532 F.3d 978 (9th Cir. 2008);

2    Toberoff Decl., Ex. E at 7-12

3    o **Section (3)** (Complaint, ¶¶ 105-11) alleges that the Shuster Executor

4    did not own the "majority interest necessary to terminate" purportedly

5    because it had granted half such rights in the Pacific Pictures

6    Agreements, but the Shuster Executor clearly held the entirety of the

7    termination interest because, as asserted elsewhere in DC's Complaint,

8    termination rights cannot be transferred to a third party prior to the

9    effective date of termination per 17 U.S.C. § 304(c)(6)(D), and the

10    effective termination date is October 26, 2013.  *See id.*; Complaint, ¶¶

11    81, 154-55; Toberoff Decl., Ex. E at 13-14.

12    o **Section (4)** (Complaint, ¶¶ 112-15) claims that the Shuster

13    Termination failed to terminate a May 21, 1948 consent judgment;

14    however, Judge Larson in *Siegel* has already correctly decided that

15    such consent judgment was not a copyright grant, and has no effect on

16    the validity of Superman termination notices.  The same reasoning and

17    holding applies to the "mirror image" Shuster Termination and, as this

18    is a closely related action, is binding on DC under the "law of the

19    case" doctrine.  *See Siegel I,* 542 F. Supp. 2d at 1131; Toberoff Decl.,

20    Ex. E at 14-16; *See Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th

21    Cir. 1997) (applying "law of the case" doctrine to related cases).

22    o **Section (5)'s** "unclean hands" claim regarding Superboy (Complaint,

23    ¶¶ 116-20) fails because unclean hands is a defense that is available

24    only against a plaintiff that seeks affirmative relief, and is not a basis

25    for a cause of action.  *See Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir.

26    2003); Toberoff Decl., Ex. E at 16-17.  Defendants also cannot be

27    charged with "unclean hands" regarding Superboy as their actions

28    comport with the specific findings of fact and conclusions of law in a

41

1          1947 action between DC's predecessors, and Siegel and Shuster. *See*

2          *id.* at 17-19; *Siegel v. Nat'l Periodical Publ'ns, Inc.*, 508 F.2d 909 (2d

3          Cir. 1974); *Siegel v. National Comics Publications, Inc.*, Case No.

4          1099-1947 (N.Y. Sup. Ct. April 12, 1948).

5    •    DC's Second Claim transparently attempts to re-litigate issues already

6          decided against DC in the related Superman case, *Siegel v. Warner Bros. Ent.*

7          *Inc.*, C.D. Cal. Case No. 04-08400 ODW (RZx), and is barred by the doctrine

8          of "law of the case" in this closely related action. *Disimone*, 121 F.3d at

9          1266-67; Toberoff Decl., Ex. E at 19-25.

10   •    DC's Third Claim (as well as its Sixth Claim) is premised on the erroneous

11         legal position that DC has a statutory right to a so-called "period of

12         exclusivity" to negotiate the purchase of the Shuster Estate's recaptured

13         *Superman* copyrights under 17 U.S.C. § 304(c)(6)(D). *See* Complaint, ¶¶

14         154-55. However, it is clear from the plain language of § 304(c)(6)(D) that it

15         does not provide DC with any "rights," let alone a right to an exclusive

16         period of negotiation. *See* 17 U.S.C. § 304(c)(6)(D); *Bourne Co., v. MPL*

17         *Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987) ("Nor does the

18         statute provide for an exclusive period of negotiation. The statute neither

19         compels the terminating party to negotiate with the terminated grantee, nor

20         forbids him from negotiating with anyone else."); 3 *Nimmer* § 11.08[A], n.6

21         (2010) (*Bourne* properly "rejected the claim [made here] that a prior grantee

22         enjoys a private right of action for damages against one who induces the

23         grantor to make a (necessarily invalid) grant to a third party prior to the

24         termination date of the original grant."); Toberoff Decl., Ex. F at 4-7. As

25         such, DC lacks standing to prosecute this claim. *See* 3 W. Patry, *Patry on*

26         *Copyright* ("*Patry*") § 7:47 (2010); Toberoff Decl., Ex. F at 7.

27   •    DC's Fourth Claim for tortious interference with contract alleges that by

28         inducing the Shuster Estate to file a statutory notice of termination

42

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY OF TWO WITNESSES

concerning *Superman*, Toberoff, and an entity controlled by Toberoff, Pacific
Pictures Corporation ("PPC"), interfered with the 1992 Agreement between
DC and the siblings of Joseph Shuster.  This claim fails as a matter of law for
at least four independent reasons.

- o *First*, the termination of the *Superman* copyright interests by the
   Shuster Executor could not have interfered with the 1992 Agreement,
   which has no bearing whatsoever on the independent termination right
   held solely by the Shuster Executor.  Toberoff Decl., Ex. D at 9-13.

- o *Second*, even if the 1992 Agreement could somehow be construed as
   intending to prevent the Shuster Executor from exercising his
   termination rights, such a contract would be void under the Copyright
   Act, 17 U.S.C. § 304(c)(5), and clear Ninth Circuit precedent.
   Toberoff Decl., Ex. D at 13-18.

- o *Third*, the claim is squarely barred by the two-year statute of
   limitations for tortious interference claims, as it is a matter of public
   record that by 2006 DC was fully aware of the Shuster Termination
   and the Pacific Pictures Agreements, the facts that allegedly gave rise
   to this claim.  *Id.* at 18-20.

- o *Fourth*, the claim is barred on its face by California's litigation
   privilege, Civil Code § 47(b).  Toberoff Decl., Ex. D at 20-21.

- • DC's Fifth Claim is equally meritless as a matter of law.  This claim alleges
   interference by Toberoff with DC's purported "prospective economic
   advantage" – namely, a proposed settlement agreement between DC and the
   Siegels over the Siegel Terminations.  This claim, like the Fourth Claim, is
   squarely barred by California's litigation privilege, as the sole basis of the
   cause of action is Toberoff's alleged solicitation of his clients in the *Siegel*
   cases.  Moreover, this claim is also barred by the two-year statute of
   limitations applicable to tortious interference claims, based on matters of

JOINT STIPULATION RE: PLAINTIFF'S
MOTION TO INITIATE DISCOVERY AND
TAKE DISCOVERY  OF TWO WITNESSES

1      public record, subject to judicial notice. *Id.* at 21-25.

2  •    DC's Sixth Claim under California unfair competition laws is preempted by

3      the Copyright Act, as it is expressly based on and incorporates DC's

4      allegations of purported violations of the Copyright Act, and does not contain

5      an "extra element" that "makes the right asserted qualitatively different from

6      those protected under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*,

7      424 F.3d 1079, 1089-90 (9th Cir. 2005). *See* Toberoff Decl., Ex. F at 9-12.