# EXHIBIT B

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  TOBEROFF & ASSOCIATES, P.C.
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclai   Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON
6



7              UNITED STATES DISTRICT COURT

8      CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

9

10  JOANNE SIEGEL, an individual;        Civil Case No. CV 04-8400 SGL (RZx)
    and LAURA SIEGEL LARSON, an
11  individual,                          SECOND AMENDED COMPLAINT
                                         FOR:
12            Plaintiffs,                [1] DECLARATORY RELIEF RE:
                                             TERMINATION,
13                                           17 U.S.C. §304(c);
       vs.                              [2] DECLARATORY RELIEF RE:
14                                           PROFITS;
15  WARNER BROS.                         [3] DECLARATORY RELIEF RE:
    ENTERTAINMENT INC., a                    USE OF "S" CREST;
16  corporation; TIME WARNER INC.,       [4] ACCOUNTING FOR PROFITS;
    a corporation; DC COMICS, a          [5] VIOLATION OF CALIFORNIA
17  general partnership; and DOES 1-         BUSINESS AND
    10,                                      PROFESSIONS CODE
18                                           §§ 17200 *ET SEQ.*
19                                      **FAXED**
20            Defendants.
21                                      DEMAND FOR JURY TRIAL
22
23
24
25
26
27
28

                                1

ORIGINAL    "COPY"

DC COMICS,

          Counterclaimant,

    vs.

JOANNE SIEGEL, an individual;
and LAURA SIEGEL LARSON, an
individual,

        Counterclaim Defendants

Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by and through their attorneys of record, hereby allege as follows:

## JURISDICTION AND VENUE

1.     This is a civil action seeking declaratory relief, accounting for profits and remedies for violations of California unfair competition laws and related claims arising out of Plaintiffs' termination of prior grants of copyright in and to the original character and work known as "Superman" and subsequent "Superman" works pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 304(c), and defendants' willful misconduct with respect thereto.

2.     This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the "Copyright Act"), 17 U.S.C. § 101 *et al.* and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b).

3.     This Court has supplemental jurisdiction over the related state claims herein under 18 U.S.C. § 1367 in that these claims form part of the same case and controversy as the federal claims herein.

4.     This Court has personal jurisdiction over the defendants in that defendants are regularly doing business in the State of California and in this

2

Ex B - 48

1 District, and because a substantial part of the relevant acts complained of herein

2 occurred in the State of California and this District.

3      5.    Venue is proper in the United States District Court for the Central

4 District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a)

5 because a substantial part of the wrongful acts that give rise to the claims herein

6 below occurred in this district and because WARNER BROS.

7 ENTERTAINMENT INC. has its principal place of business in this district.

## PARTIES

9      6.    Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an

10 individual and citizen of and resides in the State of California, in the County of

11 Los Angeles, and is and at all times has been a citizen of the United States.

12 Joanne Siegel is the widow of famed comic book creator Jerome (a.k.a. "Jerry")

13 Siegel.

14      7.    Plaintiff LAURA SIEGEL LARSON (hereinafter "Laura Siegel") is

15 an individual and a citizen of and resides in the State of California, in the County

16 of Los Angeles, and is and at all times has been a citizen of the United States.

17 Laura Siegel is the daughter of Jerome Siegel.

18      8.    Plaintiffs are informed and believe and based thereon allege that

19 defendant WARNER BROS. ENTERTAINMENT INC. (hereinafter "Warner

20 Bros.") is a corporation organized and existing under the laws of the State of

21 Delaware, which has its principal place of business in Los Angeles County,

22 California. Warner Bros. is a wholly owned subsidiary of Defendant TIME

23 WARNER INC.

24      9.    Plaintiffs are informed and believe and based thereon allege that

25 Defendant DC COMICS (hereinafter "DC") is a general partnership organized

26 and existing under the laws of the State of New York, which has its principal

27 place of business in the State of New York; and that DC regularly conducts

28

3

---

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1  significant business in the State of California and in the County of Los Angeles.

2  DC is also a wholly owned subsidiary of defendant Warner Bros.

3      10.    Plaintiffs are informed and believe and based thereon allege that on

4  or about September 30, 1946, the New York corporations, Detective Comics,

5  Inc., Superman, Inc., All American Comics, Inc., Jolaine Publications, Inc.,

6  Wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc.; Gainlee

7  Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc. and

8  Trafalgar Printing Co., Inc. were consolidated into the New York corporation

9  National Comics Publications, Inc., the name of which was later changed to

10  National Periodical Publications, Inc., and eventually to DC Comics, Inc.; and

11  further that DC, Warner Bros. and Time Warner, and/or each of them, are the

12  alleged successor(s)-in-interest to National Periodical Publications, Inc.

13      11.    Plaintiffs are informed and believe and based thereon allege that

14  Defendant TIME WARNER INC. (hereinafter "Time Warner") is a corporation

15  organized and existing under the laws of the State of Delaware, which has its

16  corporate headquarters in the State of New York, and that Time Warner

17  regularly conducts significant ongoing business in the State of California and in

18  the County of Los Angeles. Time Warner is the parent company of both Warner

19  Bros. and DC. (Time Warner, Warner Bros. and DC are sometimes collectively

20  referred to hereinafter as the "Defendants;" and each reference to Defendants

21  shall also refer to each Defendant).

22      12.    Plaintiffs are informed and believe and based thereon allege that

23  Defendant DC never, or rarely, exploits "Superman," independently of its

24  controlling parent company, Warner Bros.; that even relatively linear functions

25  such as "Superman" licensing are not handled directly by DC, but are exploited

26  exclusively through Warner Bros.; that the agreements and other arrangements

27  between Defendants Warner Bros. and DC regarding "Superman" are not "arms

28  length" agreements, serve primarily Warner Bros.' interests, and thus, do not

4

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

Case 2:10-cv-03633-ODW-RZ    Document 46-2    Filed 08/30/10    Page 6 of 29    Page ID
#:2909
Case 2:04-cv-08400-ODW-RZ    Document 378    Filed 10/08/2008    Page 5 of 28

1  reflect the appropriate market values of the copyrights to "Superman," at issue

2  herein.

3      13.    Plaintiffs are informed and believe and based thereon allege that

4  Defendants Time Warner, Warner Bros. and DC are, and at all times material

5  hereto were, the alter-egos of each other and there exists and has existed at all

6  times material hereto a unity of interest and ownership among such Defendants

7  such that any separateness has ceased to exist in that Defendants, and/or each of

8  them, used assets of the other Defendants, and/or each of them, for its and/or

9  their separate, individual purposes, and caused valuable assets, property, rights

10  and/or interests to be transferred to each other without adequate consideration.

11      14.    Plaintiffs are informed and believe and based thereon allege that the

12  fictitiously named Defendants captioned hereinabove as Does 1 through 10,

13  inclusive, and each of them, were in some manner responsible or legally liable

14  for the actions, damages, events, transactions and circumstances alleged herein.

15  The true names and capacities of such fictitiously named defendants, whether

16  individual, corporate, associate, or otherwise are presently unknown to

17  Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and

18  capacities of such fictitiously named Defendants when the same have been

19  ascertained.  For convenience, each reference herein to a named Defendant shall

20  also refer to the Doe Defendants and each of them.

21      15.    Plaintiffs are informed and believe and based thereon allege that

22  each of the Defendants was the agent, partner, servant, employee, or employer of

23  each of the other Defendants herein, and that at all times herein mentioned, each

24  of the Defendants was acting within the course and scope of such employment,

25  partnership and/or agency and that each of the Defendants is jointly and

26  severally responsible for the damages hereinafter alleged.

27

28

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

Case 2:10-cv-03633-ODW-RZ    Document 46-2    Filed 08/30/10    Page 7 of 29    Page ID
#:2910
Case 2:04-cv-08400-ODW-RZ    Document 378    Filed 10/08/2008    Page 6 of 28

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

1

2      16.    In 1933 Jerome Siegel conceived the original idea of a cartoon strip

3   featuring a unique man of superhuman strength and powers who would perform

4   feats of great importance for the public good.  Siegel conceived, in essence, the

5   first "superhero" -- an original concept which embodied our nation's ideals at

6   the Worlds' darkest hour, became a cultural icon and spawned, what is today, a

7   booming industry.  Jerry Siegel entitled his character -- "Superman."

8      17.    In or about 1934, Jerome Siegel authored twenty-four days (four

9   weeks) of "Superman" comic strips intended for newspaper publication, a

10  synopsis of comic strips for weeks two, three and four, a paragraph previewing

11  future "Superman" exploits and a nine page synopsis covering approximately

12  two months of daily "Superman" newspaper comic strips (at six days per week).

13  Plaintiffs are informed and believe and based thereon allege that these works,

14  though originally unpublished were thereafter included or incorporated in the

15  early "Superman" comic strips thereafter published from on or about April 18,

16  1938 to April 13, 1943 (collectively, referred to hereinafter as the "Initially

17  Unpublished Works").

18     18.    In or about 1934, Jerome Siegel and the artist, Joe Shuster

19  (hereinafter collectively, "Siegel and Shuster") co-authored *fifteen* daily

20  "Superman" comic strips, consisting of one week (six days) of completely inked

21  daily "Superman" comic strips and three additional six day weeks of

22  "Superman" comic strips in penciled form (the "1934 Superman Comic Strip").

23  "Superman" was submitted by Siegel and Shuster to numerous publishers over

24  the next few years.

25     19.    Although "Superman" was not picked up for publication for some

26  time, Siegel and Shuster did get other features they created into print with the

27  Nicholson Publishing Company including "Henri Duval" and "Dr. Occult."  In a

28  letter dated October 4, 1935, the company's owner Malcolm Wheeler-

6

Case 2:10-cv-03633-ODW-RZ    Document 46-2    Filed 08/30/10    Page 8 of 29    Page ID
#:2911
Case 2:04-cv-08400-ODW-RZ    Document 378    Filed 10/08/2008    Page 7 of 28

1   Nicholson, wrote to Mr. Siegel expressing an interest in publishing "Superman"

2   in comic book form but Siegel and Shuster rejected his offer.  Nicholson became

3   involved with a new comic magazine company, Detective Comics, Inc.

4   (hereinafter, "Detective Comics") and two Siegel and Shuster features, "Slam

5   Bradley" and "Spy," which appeared in "Detective Comics No. 1."

6        20.    On or about December 4, 1937, Siegel and Shuster, as independent

7   contractors, entered into an agreement with Detective Comics (the "1937

8   Agreement") to continue to produce the comic magazine features, "Slam

9   Bradley" and "The Spy," which agreement provided, in part, that any new and

10  additional features which Siegel and Shuster produced for use in a comic

11  magazine were to be first submitted to Detective Comics which reserved the

12  right to accept or reject same within sixty days.

13       21.    One of the early entities to which Siegel had submitted "Superman"

14  was The McClure Newspaper Syndicate.  In or about early 1938, the head of the

15  syndicate sought Siegel's permission to forward Siegel and Shuster's 1934

16  Superman Comic Strip material to Detective Comics for potential publication in

17  its contemplated new magazine, "Action Comics."  By this time, "Superman"

18  and his miraculous powers had already been completely developed by Siegel and

19  Shuster.

20       22.    In or about January–February 1938, when Detective Comics

21  expressed interest to Siegel and Shuster in publishing their 1934 Superman

22  Comic Strip in a magazine, Siegel and Shuster cut and pasted their

23  aforementioned 1934 Superman Comic Strip into more than ninety separate

24  panels ("Revised 1934 Superman Comic Strip"), so as to render their newspaper

25  strip more suitable for a magazine layout.

26       23.    The "Superman" material described hereinabove, which was the

27  independent, original creation of Siegel and Shuster, contained virtually all of

28  the signature elements and characters of the "Superman" mythology and

7

Case 2:10-cv-03633-ODW-RZ    Document 46-2    Filed 08/30/10    Page 9 of 29    Page ID
#:2912
Case 2:04-cv-08400-ODW-RZ    Document 378    Filed 10/08/2008    Page 8 of 28

1  constituted the formula for the continuing "Superman" series to come. It

2  depicted and narrated the origin of the "Superman" character, and contained a

3  complete delineation of the literary and pictorial representation of "Superman,"

4  including without limitation, his habits, character, superhuman powers,

5  appearance, costume, secret identity and attributes, and the sphere of public

6  good "Superman" was to enhance.

7          24.    By an instrument dated March 1, 1938 (hereinafter, the "1938

8  Grant"), which had been prepared by Detective Comics, Siegel and Shuster

9  agreed to the publication of their Revised 1934 Superman Comic Strip by

10  Detective Comics in consideration for the sum of $10 per page for this thirteen

11  page installment equal to a total of $130.

12          25.    Thereafter, Detective Comics published Siegel and Shuster's

13  "Revised 1934 Superman Comic Strip" in the "June, 1938" issue of "Action

14  Comics No. 1," which was issued for sale on April 18, 1938.

15          26.    Action Comics No. 1 and the predecessor materials created solely

16  by Siegel and Shuster contained the essential elements of "Superman" which

17  continue to this day, including without limitation, Superman's origin from the

18  distant planet, his "back-story" (sent to Earth as an infant in a spaceship by his

19  scientist father), his core physical and mental traits, his mission as a champion of

20  the oppressed to use his great powers to benefit humankind, his secret identity as

21  newspaper reporter, "Clark Kent," his relationship with other key characters

22  such as the newspaper editor from whom he takes his assignments and his

23  romantic interest in Lois, who rebuffs Clark as a coward, while romantically

24  inclined towards "Superman."

25          27.    Action Comics No. 1 was followed by further issues published at

26  regular intervals, with each subsequent issue containing additional "Superman"

27  material created by Siegel and Shuster.

28

8

Ex B - 54

1    28.    Between on or about March, 1938 and on or about September, 1938, Siegel and Shuster continued to create "Superman" strips, stories and continuities.

4    29.    On or about September 22, 1938, Detective Comics, Siegel and Shuster entered into an agreement with The McClure Newspaper Syndicate (hereinafter, the "1938 McClure Agreement") regarding the newspaper syndication of a "Superman" comic strip.

8    30.    On or about September 22, 1938, Detective Comics and Siegel and Shuster therefore entered into an agreement (hereinafter, the "1938 Agreement") which for the first time provided that Detective Comics would thereby "employ and retain" Siegel and Shuster to do the "artwork and continuity" for five comic strips, including "Superman."

13    31.    Prior to September 22, 1938, Siegel and Shuster solely created six comic book issues of "Superman," published as Action Comics Nos. 1 through 6. Of these, Action Comics Nos. 1 through 5 had been published prior to September 22, 1938; and Action Comics No. 6 was published four days later on September 26, 1938.

18    32.    Action Comics No. 1 is not a "work made for hire." Action Comics Nos. 2-6, which were thereafter created by Siegel and Shuster prior to their entering into the 1938 Agreement, are also not "works made for hire."

21    33.    On or about December 19, 1939, Detective Comics and Siegel and Shuster entered into a supplemental agreement (hereinafter, the "1939 Agreement") which raised Siegel and Shuster's per page compensation rate for the increasingly popular "Superman" comic strip.

25    34.    Plaintiffs are informed and believe and thereon allege that the "Superman" works created by Siegel and Shuster after they entered into the 1938 Agreement with Detective Comics were also not "works made for hire." The 1938 Agreement for the first time used the term "employ and retain" with

9

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1  respect to Siegel and Shuster's subsequent work on "Superman," yet Siegel and

2  Shuster were never employees of Detective Comics.  Siegel and Shuster

3  operated their own independent comic book production business.  Without

4  limitation, Siegel and Shuster were not paid a salary, but were consistently paid

5  on a "per page" basis, and only for materials actually delivered by them to

6  Detective Comics and published by Detective Comics.  Plaintiffs are further

7  informed and believe and thereon allege that in compensating Siegel and

8  Shuster, Detective Comics did not withhold or deduct payroll, social security

9  and other taxes normally deducted from employee salaries; Detective Comics

10  did not provide employee benefits to Siegel and Shuster; Siegel and Shuster

11  worked from their own premises (not Detective Comic's premises); determined

12  their own hours and days of work; supplied, used and paid for their own

13  instrumentalities, tools and materials; and hired and paid for their own

14  employees who worked at Siegel and Shuster's instance and expense, under

15  Siegel and Shuster's direction and full control.

16      35.    In or about 1947, Siegel and Shuster filed an action in the Supreme

17  Court of the State of New York, County of Westchester against National Comics

18  Publications, Inc. (hereinafter, the "1947 Action") to determine the validity of

19  the contracts between National Comics Publications, Inc.'s predecessors–in–

20  interest and Siegel and Shuster with respect to "Superman."  Pursuant to a

21  stipulation of the parties the action was referred for decision to an Official

22  Referee of the New York Supreme Court.  After trial of the action the Official

23  Referee rendered an opinion dated November 1, 1947.  On April 12, 1948, the

24  Official Referee signed detailed findings of fact and conclusions of law and

25  entered an interlocutory judgment upholding the contracts in some respects, to

26  which notices of appeal were filed by all said parties.  Settlement negotiations

27  ensued, resulting in a stipulation of settlement between said parties executed on

28

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1    or about May 19, 1948 (hereinafter, the "1948 Stipulation"), and the entry in the

2    New York Supreme Court of a final consent judgment dated May 21, 1948.

3        36.    In or about the early 1970's, a dispute arose between Siegel and

4    Shuster and National Periodical Publications, Inc. regarding the renewal

5    copyright to "Superman," resulting in Siegel and Shuster's filing of an action

6    against National Periodical Publications, Inc. in the United States District Court

7    for the Southern District of New York for a declaration that Siegel and Shuster

8    were entitled to the renewal copyright to "Superman." The District Court held

9    in Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et

10   al., 364 F. Supp. 1032 (1973) that the initial "Superman" comic strip, published

11   in Action Comics No. 1, is a "work for hire" within the meaning of the

12   Copyright Act, 17 U.S.C. § 26, and that, in any event, the various agreements

13   between the parties, prior to the action, transferred the renewal copyright in this

14   material to Detective Comics.

15       37.    On appeal, the United States Court of Appeals for the Second

16   Circuit held in Jerome Siegel and Joseph Shuster v. National Periodical

17   Publications, Inc. et al., 509 F.2d 909 (2nd Cir. 1974), that the District Court

18   erred in finding that Superman was a "work for hire" under the Copyright Act,

19   17 U.S.C. § 26, and that "Superman" and his miraculous powers were created by

20   Siegel and Shuster long before any employment relationship with Detective

21   Comics. The Second Circuit nonetheless held that the Official Referee's

22   determination in the 1947 Action that Siegel and Shuster had transferred all

23   rights in "Superman" to Detective Comics implicitly included a determination

24   that Siegel and Shuster had transferred the renewal copyright in "Superman" to

25   Detective Comics; and that this determination was binding under the doctrine of

26   *res judicata.*

27       38.    On or about December 23, 1975, Siegel and Shuster entered into an

28   agreement with Warner Communications Inc. (hereinafter the "1975

11

1   Agreement") the alleged parent company of National Periodical Publications,

2   Inc., which provided for (i) annual payment of $20,000 to Siegel and Shuster

3   each for their respective lifetimes, plus medical benefits to Siegel and Shuster

4   each; and (ii) that Siegel and Shuster would be given credit on certain

5   "Superman" publications and derivative works as the "creators" of Superman, in

6   exchange for Siegel and Shuster's acknowledgement that Warner

7   Communications, Inc. was the exclusive owner of all right, title and interest in

8   and to "Superman." (The 1937 Agreement, the 1938 Grant, the 1938 McClure

9   Agreement, the 1938 Agreement, the 1939 Agreement, the 1948 Stipulation and

10  the 1975 Agreement described hereinabove are hereinafter sometimes referred to

11  collectively as the "Alleged Grants.")

12       39.    On April 3, 1997, Plaintiffs, Joanne Siegel and Laura Siegel, served

13  by first class mail, postage prepaid, notices of termination, as permitted by the

14  Copyright Act, 17 U.S.C. § 304(c) (hereinafter, the "Termination Notices") on

15  each of the Defendants and a number of their subsidiaries, licensees and

16  affiliates, terminating the Alleged Grants of the renewal copyright to (i) the

17  copyrightable "Superman" character, (ii) the 1934 Superman Comic Strip and

18  the Revised 1934 Superman Comic Strip, both published as/in Action Comics

19  No. 1, (iii) the material published as/in Action Comics Nos. 1-6 (statutory

20  copyright to Action Comics No. 6 was secured on September 26, 1938), (iv) the

21  material published as/in Action Comics Nos. 7- 61 (statutory copyright to Action

22  Comics No. 61 was secured on April 13, 1943), and/or (v) subsequent works

23  involving "Superman," all as set forth in the Notices of Termination (hereinafter

24  sometimes referred to collectively as the "Works").

25       40.    Plaintiffs are informed and believe and based thereon allege the

26  Initially Unpublished Works set forth in the Termination Notices were

27  incorporated or included in Works published thereafter, to which the

28  Termination applies.

12

Ex B - 58

1    41.    Plaintiffs are further informed and believe and based thereon allege
2  that the copyrights to all the Works were duly renewed.

3    42.    The Notices of Termination were drafted, served on Defendants and
4  filed with the United States Copyright Office, all in full compliance with the
5  Copyright Act, 17 U.S.C. 304(c), and the regulations promulgated thereunder by
6  the Register of Copyrights, 37 C.F.R. § 201.10 (2003). (Plaintiffs' aforesaid
7  exercise of their termination rights under 17 U.S.C. § 304(c) regarding
8  "Superman" is sometimes hereinafter referred to as the "Termination").

9    43.    As the original co-author of each Work Jerome Siegel owned an
10  undivided fifty percent (50%) of the copyright of each Work prior to any alleged
11  transfer or assignment of any such Work pursuant to any Alleged Grant.

12    44.    The Notices of Termination terminated on April 16, 1999
13  (hereinafter, the "Termination Date") all prior grants or purported grants of the
14  renewal copyrights in and to each and/or all the Works for their extended
15  renewal terms (hereinafter, sometimes referred to individually and collectively
16  as the "Recaptured Copyrights"), including, but not limited to, the Alleged
17  Grants.

18    45.    On April 16, 1999, the Termination Date, Plaintiffs re-gained
19  ownership to Jerome Siegel's undivided fifty percent (50%) copyright interest in
20  and to each and/or all the Works for their extended renewal terms.  In
21  accordance with 17 U.S.C. 304(c), and as set forth in the Notices of
22  Termination, Jerome Siegel's surviving son, Michael Siegel, is also entitled to
23  share in the proceeds from this recaptured interest.

24    46.    Defendants have acknowledged that the Notices of Termination are
25  effective.  Defendants have further admitted that Plaintiff's thereby co-own the
26  copyright(s) to at least the original "Superman" elements authored by Siegel and
27  Shuster; and that Defendants have a duty to account to Plaintiffs for Defendants'
28  exploitation of such copyright(s).

13

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1    47.    On April 16, 1997, in response to the service of the Notices of

2  Termination, John A. Schulman, Executive Vice President and General Counsel

3  of Defendant Warner Bros. wrote a letter to Joanne Siegel, stating in relevant

4  part:

5              "As to the Notices of Termination, I wasn't surprised

6              at their arrival…After the effective date of the

7              termination, there will still remain 14 years of

8              copyright protection left to the joint copyright holders

9              of the original Superman elements.  Those are what we

10             should share."

11   48.    Similarly, on October 10, 1997, Paul Levitz, President and

12  Publisher of Defendant DC Comics, wrote a letter to Plaintiffs, stating in

13  relevant part:

14             "The [Superman] rights involved are non-exclusive;

15             they are shared with DC.  Since both you and DC

16             would have these rights, we would each have the

17             obligation to pay the other for using those rights if you

18             did not re-grant them to DC."

19   49.    Yet, on April 15, 1999, one day before the Termination Date,

20  Defendant DC, by its attorneys (Fross Zelnick, *et al*) sent a letter to the

21  Plaintiffs' attorney, Arthur J. Levine, frivolously denying the validity of the

22  termination with respect to *any* "Superman" copyrights, stating in relevant part:

23             "[Y]ou are hereby put on notice that DC Comics

24             rejects both the validity and scope of the notices and

25             will vigorously oppose any attempt by your clients to

26             exploit or authorize the exploitation of any copyrights,

27             or indeed, any rights at all, in Superman."

28

14

Ex B - 60

50.    Defendant DC's April 15, 1999 letter constituted a thinly veiled threat that if Plaintiffs ever attempted to exploit *any* of their recaptured copyright interests in "Superman," Defendants would engage in a campaign of intimidation, including, but not limited to, instituting frivolous litigation against Plaintiffs and using Defendants' enormous market power to restrict Plaintiffs' ability to exploit their Recaptured Copyright interests.  Given that Time Warner is one of the largest media companies in the world with over $38 billion in annual revenues, Defendants' threats had a devastating and chilling effect on Plaintiffs' freedom to exploit the copyright interests they had properly regained under the Copyright Act, 17 U.S.C. § 304(c), thereby damaging Plaintiffs and causing them great emotional distress.

51.    In the nearly 9 ½ years since the Termination Date, none of the Defendants has ever accounted to the Plaintiffs for any proceeds or profits whatsoever from their ongoing exploitation of "Superman" and the jointly owned Recaptured Copyrights.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Re:  Termination, 17 U.S.C. § 304(c) - Against All Defendants)

52.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 inclusive, as though fully set forth herein.

53.    By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants under Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective rights and interests in and to the copyright to various "Superman" works, for which Plaintiffs desires a declaration of rights.

54.    Plaintiffs contend and Defendants deny that:

a.    The Notices of Termination terminated on April 16, 1999 all prior grants, assignments or transfers of copyrights for the extended renewal

15

1  term in and to each and/or all of the Works (as defined in paragraph 39

2  hereinabove) to any of the Defendants and other parties duly served with the

3  Notices of Termination, including their predecessors-in-interest;

4        b.    As of the effective Termination Date, April 16, 1999,

5  Plaintiffs owned and continue to own an undivided fifty percent (50%) of the

6  Recaptured Copyrights to each and/or all the Works for their renewal terms;

7        c.    By reason of the foregoing, Plaintiffs are entitled to fifty

8  percent (50%) of any and all proceeds, compensation, monies, profits, gains and

9  advantages from the exploitation of, or attributable to, in whole or in part, any

10  aspect of the Recaptured Copyrights (hereinafter, sometimes referred to as

11  "Profits"); and

12        d.    By reason of the foregoing, Defendants own or control only

13  fifty percent (50%) of the Recaptured Copyrights, and thus, as of the

14  Termination Date, had and have no authority to confer exclusive licenses or

15  grants with respect to any element of the "Superman" mythology protected by

16  the Recaptured Copyrights.

17      55.    A declaration of the Court is necessary pursuant to the Declaratory

18  Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their

19  respective rights and obligations with respect to the Termination and the

20  copyright interests thereby recaptured by Plaintiffs.

21                 **SECOND CLAIM FOR RELIEF**

22      (Declaratory Relief Re: Profits from Recaptured Copyrights - Against All

23                       Defendants)

24      56.    Plaintiffs re-allege and incorporate by reference paragraphs 1

25  through 55 inclusive, as though fully set forth herein.

26      57.    By reason of the foregoing facts, an actual and justiciable

27  controversy has arisen and now exists between Plaintiffs and Defendants

28  concerning how Profits from Recaptured Copyrights should be defined for

16

1 purposes of Defendants and Plaintiffs accounting to one another as joint owners

2 of the Recaptured Copyrights.

3     58.   Plaintiffs contend and Defendants deny that:

4     a.   Profits include Defendants' revenues from the post - April

5 16, 1999 exploitation of the Recaptured Copyrights in foreign territories, when

6 such exploitation results from the predicate exercise *in the United States* of any

7 right(s) under the Recaptured Copyrights by any Defendant, their licensees or

8 assigns;

9     b.   There should be no *apportionment* of Profits since Plaintiffs

10 are entitled to fifty percent (50%) of such Profits as *joint owners* of the

11 Recaptured Copyrights;

12     c.   Alternatively, *apportionment*, if any, should apply only to

13 profits from the exploitation of the Recaptured Copyrights in *derivative works*

14 *created by a Defendant*, but not to profits from mere *licensing* of the Recaptured

15 Copyrights. Any such apportionment should weigh heavily in Plaintiffs' favor,

16 since the value of the "Superman" franchise exploited by the Defendants

17 ("Superman Franchise") is largely attributable to the unique "Superman"

18 mythology protected by the Recaptured Copyrights. The Superman Franchise

19 capitalizes on the success of, and is hardly distinguishable from, the underlying

20 Recaptured Copyrights co-owned by Plaintiffs;

21     d.   Profits include profits from any merchandise or other

22 derivative works created, produced or manufactured on or after the Termination

23 Date, April 16, 1999, notwithstanding that the underlying licensing agreement

24 for such exploitations may have been executed prior thereto;

25     e.   Profits are not limited to the Profits of Defendant DC,

26 Warner Bros.' wholly owned subsidiary, but include the Profits of Defendants

27 Warner Bros. and Time Warner, as well; and

28

17

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1       f.     In determining Profits, deductible costs should include only

2 reasonable costs directly attributable to the exploitation of the Recaptured

3 Copyrights, of the type customarily deducted in arms' length agreements to

4 exploit copyrights of comparable value, all in compliance with Generally

5 Accepted Accounting Principles ("GAAP").

6      59.    A declaration of the Court is necessary pursuant to the Declaratory

7 Judgment Act, 28 U.S.C. §§ 2201 *et seq.* so that the parties may know their

8 respective rights and obligations with respect to Profits from the exploitation of

9 the Recaptured Copyrights after the Termination Date.

10           **THIRD CLAIM FOR RELIEF**

11 (Declaratory Relief Re:  Use of the "Superman" Crest - Against All Defendants)

12      60.    Plaintiffs re-allege and incorporate by reference paragraphs 1

13 through 59 inclusive, as though fully set forth herein.

14      61.    By reason of the foregoing facts, an actual and justiciable

15 controversy has arisen and now exists between Plaintiffs and Defendants

16 concerning whether Plaintiffs are entitled, after the Termination Date, to

17 commercially exploit the "Superman" crest comprised of a large red "S"

18 centered on a broad triangular yellow field, first appearing (as part of

19 "Superman's" costume, centered on and highlighting Superman's "V" shaped

20 muscular chest) in the 1934 Superman Comic Strip and the 1934 Revised

21 Superman Comic Strip created by Siegel and Shuster and published as Action

22 Comics No. 1, and in only slightly revised form in subsequent Works

23 (hereinafter the "Superman Crest"); and whether Defendants' duty to account, as

24 non-exclusive joint owners of such Recaptured Copyrights, includes Profits from

25 the licensing of this crest.

26      62.    Defendants allege a trademark interest in a "Superman" shield

27 (hereinafter the "Superman Shield" and/or "Superman Trademark") which is

28 also comprised of a large red "S" on a broad triangular yellow field, first

18

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

1  appearing in later Works, as part of "Superman's" costume, centered on and

2  highlighting Superman's "V" shaped muscular chest, with the upper corners of

3  the triangular crest slightly cropped.

4       63.    Plaintiffs contend and Defendants deny that:

5          a.   .  The Recaptured Copyrights include the copyright to the

6  "Superman" crest comprised of a large red "S" centered on a broad triangular

7  yellow field, first appearing as part of "Superman's" costume, centered on and

8  highlighting Superman's "V" shaped muscular chest, in the 1934 Superman

9  Comic Strip and the Revised 1934 Superman Comic Strip published as Action

10  Comics No. 1, and appeared in subsequently published Works in only slightly

11  revised form (hereinafter the "Superman Crest").

12          b.    Defendants' alleged Superman Trademark design arose

13  directly from, and is substantially identical to, Siegel and Shuster's copyrighted

14  Superman Crest;

15          c.    Defendants receive significant proceeds and value from the

16  utilization and copying of the Superman Crest and/or substantially identical

17  Superman Shield for which Defendants must account to Plaintiffs;

18          d. .  In turn, Plaintiffs should likewise be allowed to exercise their

19  rights under copyright with respect to the Superman Crest, including without

20  limitation the right to commercially exploit the Superman Shield in

21  merchandise;

22          e.    Defendants, in any event, cannot use the alleged Superman

23  Trademark or any other purported trademark interest regarding "Superman" to

24  prevent, hinder or restrain Plaintiffs' use, exercise or exploitation of their rights

25  under the Copyright Act in any of the jointly owned Recaptured Copyrights.

26       64.    A declaration of the Court is necessary pursuant to the Declaratory

27  Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that the parties may know their

28

19

Ex B - 65

1    respective rights and obligations with respect to the Superman Crest and the

2    Superman Shield.

## FOURTH CLAIM FOR RELIEF

### (Accounting for Profits - Against All Defendants)

5    65.    Plaintiffs re-allege and incorporate by reference paragraphs 1

6    through 64 inclusive, as though fully set forth herein.

7    66.    On or after the Termination Date, April 16, 1999, Defendants

8    and/or each of them have licensed and/or commercially exploited and will

9    continue to license or exploit the Recaptured Copyrights, including without

10    limitation, *via* merchandising, publishing, and derivative motion picture and

11    television programming.

12    67.    As result of such licensing and/or commercial exploitation of the

13    Recaptured Copyrights on or after April 16, 1999, Defendants and/or each of

14    them have received and will continue to receive substantial Profits, fifty percent

15    (50%) of which is payable to Plaintiffs as the joint owner of the Recaptured

16    Copyrights.

17    68.    Defendant Warner Bros. has acted and continues to act in most

18    instances as the effective joint-owner and licensor (as opposed to licensee) of the

19    Recaptured Copyrights; and, as such, Warner Bros., along with the other

20    Defendants, owes a duty to account to Plaintiffs.

21    69.    To date, the Profits received by Defendants and/or each of them

22    from such licensing and/or commercial exploitation on or after April 16, 1999 is

23    estimated to be in excess of $50 million, however the exact sums actually

24    received and to be received by Defendants and/or each of them, are unknown to

25    Plaintiffs at this time, for these amounts can be properly determined only by an

26    accounting.

27    70.    Plaintiffs have demanded an accounting by Defendants on a

28    continuing basis of all amounts received by them and/or payable to them from

20

---

Ex B - 66

1  such licensing and other commercial exploitation on or after April 16, 1999, and

2  that Defendants pay Plaintiffs their fifty percent (50%) share of all such Profits.

3      71.   In nearly 9 ½ years since the Termination Date, Defendants have,

4  nonetheless, never accounted to or paid any Profits whatsoever to Plaintiffs.

5      72.   Plaintiffs at no time waived their rights to receive their share of such

6  Profits, nor have Plaintiffs at any time consented to the use and exploitation of

7  the Recaptured Copyrights in the United States or any foreign territories.

8      73.   Plaintiffs are entitled to an ongoing accounting from Defendants

9  regarding all amounts received, realized by or payable to Defendants on or after

10  April 16, 1999 from the licensing and any other commercial exploitation of the

11  Recaptured Copyrights and "Superman Franchise," and to the payment by

12  Defendants to Plaintiffs of fifty percent (50%) of all such Profits.

13  **FIFTH CLAIM FOR RELIEF**

14  (Violation of California Business and Professions Code, §§ 17200 *et seq.*;

15  Unfair Competition - Against All Defendants)

16      74.   Plaintiffs re-allege and incorporate herein by reference the

17  allegations set forth in paragraphs 1 through 73, inclusive, as though fully set

18  forth herein.

19      75.   Plaintiffs are informed and believe and thereon allege that since the

20  Termination Date, in addition to the wrongful acts and omissions alleged

21  hereinabove and incorporated herein, Warner Bros.' and its parent, Time

22  Warner, have intentionally omitted from Time Warner's Annual Reports on

23  Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and

24  other publicly reported documents any and all mention of the Termination, even

25  though it drastically reduces their ownership interest in "Superman" -- one of

26  their most valuable intellectual properties. Such systematic public

27  misrepresentations by omission are likely to deceive, cause confusion and

28  mistake and are an affront to the public interest.

21

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

76.     Defendants' wrongful conduct, acts, and omissions alleged hereinabove constitute unlawful, unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and under the common law.

77.     As a direct and proximate result of Defendants' conduct, acts, and omissions as alleged hereinabove, Plaintiffs are entitled to recover their share of any income, gains, compensation, profits and advantages obtained, received or to be received by Defendants, or any of them, arising from the licensing and any other exploitation of the Recaptured Copyrights; and are entitled to an order requiring Defendants, jointly and severally, to render an accounting to ascertain the amount of such proceeds.

78.     As a direct and proximate result of Defendants' wrongful conduct, acts and omissions pleaded hereinabove, Plaintiffs have been damaged, and Defendants have been unjustly enriched, in an amount that shall be assessed at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are jointly and severally the constructive trustee for the benefit of Plaintiffs and an order that Defendants convey to Plaintiffs fifty percent (50%) of all proceeds and other compensation received or to be received by Defendants that are attributable the licensing or exploitation on or after the Termination Date of the Recaptured Copyrights.

79.     Defendants' wrongful conduct, acts, omissions have proximately caused and will continue to cause Plaintiffs substantial injury and damage including, without limitation, loss of customers, dilution of goodwill, injury to Plaintiffs' reputation, and diminution of the value of Plaintiffs' joint ownership interest in the Recaptured Copyrights.  The harm this wrongful conduct will cause to Plaintiffs is both imminent and irreparable, and the amount of damage

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

Ex B - 68

1  sustained by Plaintiffs will be difficult to ascertain if such wrongful conduct is
2  allowed to continue without restraint.

3      80.    Plaintiffs are entitled to an injunction, during the pendency of this
4  action, and permanently, restraining Defendants, their officers, agents and
5  employees, and all persons acting in concert with them, from *exclusively*
6  licensing or granting rights to any element of the Superman Franchise protected
7  by the Recaptured Copyrights

8      81.    Plaintiffs are entitled to an injunction, during the pendency of this
9  action, and permanently, restraining Defendants, their officers, agents and
10 employees, and all persons acting in concert with them, from engaging in any
11 such further unlawful conduct, and requiring Defendants to include Plaintiffs'
12 names on all copyright notices relating to the Recaptured Copyrights.

13     82.    Plaintiffs have no adequate remedy at law with respect to such
14 ongoing unlawful conduct.

15     WHEREFORE, Plaintiffs pray for relief as follows:

16                    **PRAYER FOR RELIEF**

17              <u>ON THE FIRST CLAIM FOR RELIEF</u>

18     83.    For a declaration as follows:

19          a.    That pursuant to the Copyright Act, 17 U.S.C.§ 304(c),
20 Plaintiffs validly terminated on April 16, 1999 all prior grants, assignments or
21 transfers to any of the Defendants and any of their predecessors-in-interest, of
22 the renewal copyrights in and to each and/or all of the Works;

23          b.    That, as of the Termination Date, Plaintiffs owned and
24 continue to own fifty percent (50%) of the aforesaid Recaptured Copyrights;

25          c.    That Defendants control only fifty percent (50%) of the
26 Recaptured Copyrights, and thus, as of the Termination Date, had/have no
27 authority to confer *exclusive* licenses or grants with respect to any element of the
28 "Superman" mythology protected by the Recaptured Copyrights; and

                           23

_____

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

Ex B - 69

1    d.  That Plaintiffs are entitled to fifty percent (50%) of any and

2 all Profits from the exploitation of, or attributable to, in whole or in part, any

3 aspect of the Recaptured Copyrights.

4       <u>ON THE SECOND CLAIM FOR RELIEF</u>

5   84. For a declaration as follows:

6    a.  That as joint owners of the Recaptured Copyrights, Plaintiffs

7 are entitled to an accounting for Profits received or payable to the Defendants;

8    b.  That Profits include Defendants' revenues from the post -

9 April 16, 1999 exploitation of the Recaptured Copyrights in territories outside of

10 the United States whenever such exploitation is based on the predicate exercise

11 *in the United States* of any right(s) in and to the Recaptured Copyrights by any

12 Defendant, their licensees or assigns;

13    c.  That there should be no *apportionment* of Profits since

14 Plaintiffs are entitled to fifty percent (50%) of such Profits as joint owners of the

15 Recaptured Copyrights;

16    d.  Alternatively, that apportionment should apply only to profits

17 from the exploitation of the Recaptured Copyrights in *derivative works created*

18 *by a Defendant*, but not to profits from *licensing* of the Recaptured Copyrights;

19    e.  That apportionment, if any, should weigh strongly in

20 Plaintiff's favor, since the value of the Superman Franchise is largely

21 attributable to the unique "Superman" character and other elements created by

22 Siegel and Shuster and protected by the Recaptured Copyrights, in a percentage

23 that the court may deem just and proper;

24    f.  That Profits include profits from any merchandise or other

25 derivative works created, produced or manufactured on or after the Termination

26 Date, April 16, 1999, notwithstanding that underlying licensing for such

27 exploitation may have occurred prior thereto;

28

24

Ex B - 70

1            g.     That Profits include the Profits of Defendants DC, Warner

2    Bros. and Time Warner, their subsidiaries and divisions; and

3            h.     That in determining Profits, only reasonable costs directly

4    attributable to the exploitation of the Recaptured Copyrights, of the type

5    customarily deducted in arms' length agreements to exploit copyrights of

6    comparable value to the Recaptured Copyrights, should be deducted from gross

7    revenues, all in compliance with GAAP.

8    <u>ON THE THIRD CLAIM FOR RELIEF</u>

9        85.    For a declaration as follows:

10            a.     That by the Termination, Plaintiffs recaptured a fifty percent

11    (50%) interest in the copyright to the Superman Crest created by Siegel and

12    Shuster;

13            b.     That Defendants' Superman Shield design arose directly

14    from, and is substantially identical to, the copyrighted Superman Crest created

15    by Siegel and Shuster;

16            c.     That Defendants must account to Plaintiffs for fifty percent

17    (50%) of the proceeds they receive from the licensing or other exploitation of

18    the Superman Crest and/or Superman Shield;

19            d.     That Plaintiffs, as co-owners of the copyright in and to the

20    Superman Crest, likewise are permitted to license or otherwise exploit the

21    Superman Crest, subject to a duty to account to Defendants for any such

22    exploitation; and

23            e.     That Defendants cannot use their alleged trademark in the

24    Superman Shield or any other alleged trademark interest with respect to

25    "Superman" to prevent, hinder or restrain Plaintiffs' use, exercise or exploitation

26    of Plaintiffs' rights under the Copyright Act in the jointly owned Recaptured

27    Copyrights.

28

25

Ex B - 71

<u>ON THE FOURTH CLAIM FOR RELIEF</u>

86.    For an accounting by the Defendants, jointly and severally, of any and all proceeds from the licensing and any other exploitation of the Recaptured Copyrights or Superman Franchise on or after the Termination Date, April 16, 1999;

87.    For 50% of any and all proceeds from the licensing and any other exploitation of the Recaptured Copyrights or "Superman Franchise" on or after April 16, 1999 pursuant to such accounting; and

88.    For the imposition of a constructive trust for the benefit of Plaintiffs on all sums received and to be received by the Defendants, jointly or severally, derived from the licensing and any other exploitation of the Recaptured Copyrights or "Superman Franchise" on or after April 16, 1999.

<u>ON THE FIFTH CLAIM FOR RELIEF</u>

89.    For an accounting of all Profits;

90.    For the imposition of a constructive trust on all Profits received and to be received;

91.    For restitution to Plaintiffs of Defendants' unlawful proceeds;

92.    For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from engaging in such further unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and/or under the common law, as alleged hereinabove; and (ii) requiring Defendants to properly designate Plaintiffs as the co-owner of the Recaptured Copyrights in "Superman" publications, products, advertising and promotional materials;

26

Ex B - 72

1        93.    For compensatory and consequential damages according to proof as
2   shall be determined at trial;

3        94.    For such other and further relief and remedies available under
4   California Business and Professions Code, §§ 17200 *et seq.* and/or the common
5   law, which the Court may deem just and proper.

6                    <u>ON ALL CLAIMS FOR RELIEF</u>

7        95.    For Plaintiffs' costs of suit;

8        96.    For interest at the highest lawful rate on all sums awarded Plaintiffs
9   other than punitive damages;

10       97.    For reasonable attorneys' fees; and

11       98.    For such other and further relief as the Court may deem just and
12  proper.

13

14  DATED: October 7, 2008        TOBEROFF & ASSOCIATES, P.C.

15

16                  By: _____
                        Marc Toberoff

17                  Attorneys for Plaintiffs and Counterclaim
18                  Defendants JOANNE SIEGEL and
                LAURA SIEGEL LARSON

19

20

21

22

23

24

25

26

27

28

27

1

**JURY TRIAL DEMANDED**

2      Plaintiffs hereby request a trial by jury on each claim for relief alleged in

3  the Complaint for which trial by jury is allowable.

4

5  DATED: October 7, 2008          TOBEROFF & ASSOCIATES, P.C.

6

7                                 By: _____
                                        Marc Toberoff
8
                                   Attorneys for Plaintiffs and Counterclaim
9                                  Defendants JOANNE SIEGEL and
                                   LAURA SIEGEL LARSON
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

---

Second Amended Complaint for Declaratory Relief, Accounting & Unfair Competition

Ex B - 74