# EXHIBIT M

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101
   Email: MToberoff@ipwla.com
5
   Attorneys for Plaintiffs and Counterclaim Defendants
6  JOANNE SIEGEL and LAURA SIEGEL LARSON

7                    UNITED STATES DISTRICT COURT

8           CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

9

10 JOANNE SIEGEL, an individual; and    Case Nos.: CV 04-08400 SGL (RZx)
   LAURA SIEGEL LARSON, an                          CV 04-08776 SGL (RZx)
11 individual,
                                        [Hon. Stephen G. Larson, U.S.D.J.]
12         Plaintiffs,                  [Hon. Ralph Zaresky, U.S.M.J.]
      vs.
13
14 TIME WARNER INC., a corporation;    **DECLARATION OF MARC
   WARNER COMMUNICATIONS             TOBEROFF FILED PURSUANT
15 INC., a corporation; WARNER        TO THE COURT'S SEPTEMBER
   BROS. ENTERTAINMENT INC., a       17, 2007 ORDER**
16 corporation; WARNER BROS.
   TELEVISION PRODUCTION INC.,       **DISCOVERY MATTER
17 a corporation; DC COMICS, a general LOCAL RULE 37**
18 partnership; and DOES 1-10,
19
           Defendants.
20
21 DC COMICS,
22
           Counterclaimant,
23    vs.
24
   JOANNE SIEGEL, an individual; and
25 LAURA SIEGEL LARSON, an
26 individual,
27         Counterclaim Defendants.
28

Declaration Of Marc Toberoff Filed Pursuant to the Court's September 17, 2007 Order

I, Marc Toberoff, declare as follows:

1. I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration pursuant to the Court's September 17, 2007 order. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. On April 30, 2007 I participated in a hearing before Magistrate Zarefsky concerning Defendants' motion to compel the production of a large number of documents, many clearly confidential attorney-client communications, stolen from my law offices and delivered to Defendants, which Defendants then placed with Arnold & Porter, as "escrow holder" (the "Escrow Holder") of the stolen documents (the "Escrow Documents").

3. At the April 30 hearing, Magistrate Zarefsky ordered me to furnish the Escrow Holder with a declaration specifically referencing, by the bates numbers, which "Escrow Documents" had already been produced and which had not been produced and listed on a privilege log, so that the Escrow Holder could appropriately disburse the Escrow Documents by the bates numbers referenced in my declaration – returning the privileged documents to my offices and releasing the non-privileged documents to Defendants' counsel. ("April 30, 2007 Order"). A true and correct copy of the transcript of the April 30, 2007 hearing is attached hereto as Exhibit "1".

4. I drafted and furnished to Mr. Eisen a declaration which fully complied with the April 30, 2007 Order, as admitted by Defendants. Attached hereto as Exhibit "2" is a true and correct copy of my May 21, 2007 declaration. *See* the parties' September 17, 2007 Joint Stipulation at 13, a true and correct copy of which is attached hereto as Exhibit "3." ("September 17, 2007 Joint Stipulation").

5. The vast majority of the "Escrow Documents" are privileged or have already been produced, and were designated as such in my declaration. However, 9

1

1  documents (4 of which are merely fax cover or confirmation sheets) of the 839 pages
2  of "Escrow Documents" (many duplicates) did not fit squarely within the Order in the
3  context of the April 30 hearing, and, pursuant to this Court's order of September 17,
4  2007, are to be reviewed by the Court *in camera.*

5      6.   This handful of documents fall into three categories that slipped between
6  the "cracks" of the Order but are clearly privileged:  (i) 6 *post-litigation attorney-*
7  *client communications*, which, pursuant to the parties' standing agreement (admitted
8  by Defendants herein) need not have been listed in a privilege log to preserve the
9  privilege (*see* Exhibit 3 (September 17, 2007 Joint Stipulation) at 32- 34); (ii) the
10 "defamatory cover letter" enclosing and describing the contents of the stolen Escrow
11 Documents, including many of the attorney-client communications that are identified
12 on the privilege logs of Plaintiffs and non-party witnesses (*see* Exhibit 3 at 34-37);
13 and (iii) 2 letters between me and Don Bulson, Esq., the attorney for Plaintiff Laura
14 Siegel Larson's half-brother, Michael Siegel, who is a statutory beneficiary of the
15 "Superman" termination notices, which were listed in Mr. Bulson's privilege log and
16 properly identified as such in my May 21, 2007 declaration (*see* Exhibit 3 at 37-42).

17     7.   To put the anonymous "defamatory cover letter" in context, my
18 investigation has revealed that in late 2005 the Escrow Documents were stolen from
19 my law firm's files by a disgruntled *attorney* formerly employed by my firm, who
20 thereafter furnished the documents to Defendant Warner Bros. Entertainment, Inc.
21 ("Warner") under circumstances that Warner has not disclosed.

22     8.   This attorney, after working at my firm for just three months,
23 disappeared without notice in November, 2005.  My investigation has revealed that in
24 late November and early December, 2005, he then contacted Plaintiffs and tried to
25 convince them to terminate my firm, and to retain him instead, by disparaging me
26 with false, and often nutty, statements, and by offering to work for a reduced fee,
27 suggesting that his actions were financially motivated.  I am informed that he did the
28 same with another female client of mine (and that he additionally harassed her by

repeated phone calls and messages asking her out). I am advised by these clients that that they rejected this attorney's overtures in early *December, 2005*.

9. The "defamatory cover letter" is rife with highly prejudicial ranting and conspiratorial speculation. More troubling, this attorney, without regard for his oath as an officer of the court, disclosed without authorization confidential attorney-client communications and work product (pre-meditatively assembled after hours) to the opposing party in the midst of a lawsuit.

10. The "defamatory cover letter," which Warner alleges enclosed the stolen documents, states: "consider it an early holiday gift." Notwithstanding this, I was not contacted by Warner (via Arnold & Porter) about these stolen documents until July 5, 2006. Warner claimed that on June 28, 2006, three very high level executives – Alan Horn, Warner President and COO; Jeff Rabinov, President of Production, and John Schulman, Warner's General Counsel – each anonymously received packages consisting of the of the documents.

11. I requested by letter dated July 19, 2006 to Arnold & Porter and copied to Defendants' counsel, Michael Bergman ("Bergman"), that Warner furnish the following:

> "(1) the date(s) each set of documents was received; (2) copies of all envelopes or packages enclosing the documents; (3) the method by which the documents were sent and, in the unlikely event the documents were delivered by hand, the name of the messenger (and messenger service) logged at Warner Bros. security gate and (4) any other pertinent information regarding Warner Bros.' receipt of these documents. We would also like to inspect the "original" documents and enclosing envelopes or packages as received by Warner Bros."

*See* Exhibit F of my Declaration in Opposition to Defendants' Motion to Compel Production of Whistleblower Documents, dated March 23, 2007, a true and correct copy of which is attached hereto as Exhibit "4."

12. I thereafter received letters dated July 20, 2006 and July 24, 2006 from Mr. Bergman, and on July 24, 2006 from Arnold & Porter, but neither provided the

3

requested information. *See* Exhibit 4; Exs. G, H. By letter dated July 26, 2007 to Mr. Bergman, I reiterated Plaintiffs' demand for information regarding Warner's receipt of the stolen documents. *See* Exhibit 4, Ex. I. Mr. Bergman finally responded by letter dated July 27, 2006, repeating that the packages mysteriously arrived in envelopes at the desks of three high placed Warner executives on June 28, 2006; but claiming that Warner did not retain any of the three envelopes (or a copy of any envelopes) and stating that Warner had no mailroom, security or executive office records, notes or logs of the three substantial packages ever being signed in or received, despite the extraordinary nature of their contents. *See* Exhibit 4, Ex. J. All such information, commonly kept by Studio security, mailrooms and executive offices, had vanished.

13. The undated, anonymous cover letter discusses and discloses the substance and contents of many, if not most, of the privileged documents enclosed by the cover letter and listed in the privilege logs of Plaintiffs and alleged non-party witnesses. Specifically, the letter contains, directly and indirectly, the substance of privileged attorney-client communications and attorney work product that were contained within the confidential files at my law firm.

14. The "defamatory cover letter" is irrelevant to the subject matter of this action, and is obviously highly prejudicial; nor is it likely to lead to the discovery of admissible evidence, particularly as discovery in this action is closed. It is not subject to authentication by the author, as it was anonymous. It is also riddled with inadmissible hearsay statements. Finally, the letter refers to documents and information protected by, *inter alia*, the attorney-client privilege and work product doctrine, and would therefore be inadmissible in any event.

15. The cover letter was clearly not the subject of Defendants' March 26, 2007 Joint Stipulation regarding the escrow documents, as throughout their initial motion Defendants drew a clear line between the "Whistle-blower documents" that were the subject of its motion and the "cover letter" contained with the documents,

4

1 | which was not. *Compare Defendants' March 26, 2007 Joint Stipulation* at 2:6-14 (requesting production of the "Whistle-blower documents") with 6:13-14 (referring to "the cover letter contained with the documents"); 6:26-27 (characterizing "the 'cover letter' that *came with* the Whistle-blower documents") (emphasis added); 7:9-10 (referring to "Whistle-blower Documents contained with the letter"); 7:17-19 (referring to attorneys perusal of "the contents of the cover letter and my brief thumbing through the documents"); and 16:17-21:28 (referring repeatedly to the "Whistle-blower Documents" and never mentioning the cover letter.) Attached hereto as Exhibit "5" is a true and correct copy of the parties' March 26, 2007 Joint Stipulation Re: Defendants' Motion to Compel Production of Whistleblower Documents.

16. Plaintiffs' opposition to Defendants' original motion to compel specifically states at page 37, footnote 10, that the cover letter, in discussing the stolen attorney-client communications accompanying it, discloses information protected by the attorney-client privilege and the work product doctrine. *See* Exhibit 5 at 37. However, the cover letter was not discussed by either party at the April 30, 2007 hearing before Magistrate Zarefsky, as it did not appear to be a part of Defendants' motion to compel. *See* Exhibit 1 at 7:25- 20:5.

17. Plaintiffs and I did not authorize this illicit letter. Plaintiffs cannot be held to have consented to the release of the privileged information and work product contained therein, or to have waived the privilege, as the unauthorized disclosure of protected attorney-client information or documents does not waive attorney-client privilege. *See* Exhibit 3 at 35-37.

18. The cover letter, in disclosing privileged information contained in the attorney-client communications *listed in Plaintiffs' and third party privilege logs*, falls within the rationale and spirit of Magistrate Zarefsky's April 30, 2007 order as a document that should not be released to Defendants.

5

Declaration Of Marc Toberoff Filed Pursuant to the Court's September 17, 2007 Order

347

19.     Defendants have also demanded that the Escrow Holder, David Eisen, Esq., turn over two obviously privileged communications between Plaintiffs and me from *after the commencement of litigation.* Defendants cling to the absurd and inequitable position that there has been a waiver of these plainly privileged communications because such were not listed on a privilege log, even though Defendants admit, as they must, that *the parties have a longstanding agreement pursuant to which neither side was supposed to list post-litigation attorney-client communications on a privilege log.* See Exhibit 3 at 13. Per this agreement, Defendants and Plaintiffs have not listed hundreds of post-litigation communications on any privilege log. These two communications are clearly subject to this standing agreement, and the fact they were stolen from my law offices in no way changes this.

20.     These privileged e-mails were specifically discussed on page 30 of Plaintiffs' portion of the parties' March 26, 2007 Joint Stipulation regarding the escrow documents as follows: "There are also 2 privileged e-mail communications between Plaintiffs and their present counsel dated after commencement of this action which were not listed in Plaintiffs' privilege logs because the parties have agreed not to list post-complaint attorney-client communications on their respective privilege logs." See Exhibit 5 at 30.

21.     Additionally, in paragraph 22 of my March 23, 2007 declaration in opposition to defendants' motion to compel, I specifically mentioned the two privileged e-mails, and explained to the Court that these post-litigation communications were not listed on a privilege log because "the parties to this action have agreed not to list post-complaint attorney-client communications on their respective privilege logs." See Exhibit 4.

22.     It is my belief that Magistrate Zarefsky did not intend by his April 30, 2007 Order that such clearly privileged communications be produced. No fair reading of the Order's rationale, as well as common sense, could give Defendants

6

1 | access to privileged communications, to which they would not otherwise be entitled,
2 | because such documents were pilfered from my legal files.

3 |     23.    On behalf of Don Bulson ("Bulson"), the former attorney of Laura
4 | Siegel Larson's stepbrother, Michael Siegel, I served a privilege log on October 23,
5 | 2006 in response to Defendants' subpoena. The items listed on this privilege log
6 | included two letters we wrote to each other. *See* Exhibit 4, Ex. O.

7 |     24.    Magistrate Zarefsky's April 30, 2007 Order encompassed and protects
8 | documents such as these two communications listed on third party privilege logs and
9 | referenced in my March 23, 2007 declaration. *See* Exhibit 1, at 19:16- 20:6. In fact,
10 | my declaration referenced several Escrow Documents by bates numbers on third
11 | party privilege logs that Defendants acknowledge are covered by the Order and have
12 | not challenged. *See* Exhibit 2 at 6:13-14, 22; *see also* Declaration of Michael
13 | Bergman in Support of Defendants' Motion to [sic] Compliance With the Court's
14 | 4/30/07 Order and Motion For Sanctions ("Bergman Decl."), Ex. E, a true and correct
15 | copy of which is attached hereto as Exhibit 6. Defendants, nonetheless, belatedly
16 | chose to impermissibly challenge the assertion of the joint interest privilege with
17 | respect to these two communications.

18 |     25.    Mr. Bulson's privilege log was served on Defendants long ago on
19 | October 23, 2006, and listed the two documents as communications between Mr.
20 | Bulson and myself. Exhibit 4, Ex. O. Plaintiffs' privilege logs were also served long
21 | ago on July 20 and September 29, 2006. Exhibit 4, Exs. L, M. Defendants could
22 | easily have moved in this Court to compel Plaintiffs' production of these two
23 | documents within the discovery and motion deadlines. They did not do so, and
24 | instead attempted to "bootstrap" this new motion to compel after the cut-off into their
25 | September 17, 2007 Joint Stipulation regarding the April 30, 2007 Order *after the*
26 | *deadline for discovery motions has long passed.* *See* Stipulation Regarding
27 | Scheduling Order entered March 19, 2007. For the Court's information, Defendants
28 |

7

Declaration Of Marc Toberoff Filed Pursuant to the Court's September 17, 2007 Order

349

did file a motion to compel against Mr. Bulson in the United States District Court for the Northern District of Ohio, which motion is pending.

26. The two letters exchanged between me and Mr. Bulson were designed to further a joint legal strategy between my clients, Joanne Siegel and Laura Siegel Larson, and Mr. Bulson's then-client, Michael Siegel, with respect to the "Superman" termination notices ("Terminations"), of which both Mr. Bulson's and my clients were beneficiaries under 17 U.S.C. § 304(c). These communications necessarily concerned prior settlement discussions with Defendants and anticipated litigation regarding the Termination. Considering the financial value of the "Superman" property, such litigation was a virtual inevitability in the absence of settlement.

27. Such communications amongst the attorneys of Jerome Siegel's statutory heirs under 17 U.S.C. § 304(c) (*i.e.*, Plaintiffs and Michael Siegel) in anticipation of litigation regarding the Termination, of which they are the beneficiaries, is precisely the sort of communications the joint interest privilege is designed to protect. See Exhibit 3 at 38-42. Therefore, the Bulson documents are protected by the applicable joint interest privilege and work product doctrine, which are not waived by disclosure to Mr. Bulson.

28. In compliance with Magistrate Zarefsky's April 30, 2007 Order, my declaration matched the escrow bates numbers of the two Bulson letters to the corresponding entries on Mr. Bulson's *privilege log*. See Exhibit 2; Exhibit 4, Ex. O. There was certainly no requirement in the Order that privileged documents/privilege log listings be cross-referenced on multiple privilege logs to sustain the privilege. See Exhibit 1 at 19:8- 20:5. As such, the Bulson documents were to be returned and not released to Defendants by the Escrow Holder, per the April 30, 2007 Order.

29. In response, Defendants' counsel, Michael Bergman, wrote to the Escrow Holder on May 22, 2007, improperly challenging the assertion of the joint interest privilege in Bulson's log, as if the Escrow Holder were the Court, and

8

1  demanding the release of the documents on this alleged newfound basis. *See* Exhibit 6, Ex. E.

2  30.  In his May 22, 2007 letter, Mr. Bergman *admits* that "'escrow documents' originally listed on the privilege logs of non-party witnesses should not be released." *Id*. However, one paragraph later, he claims that the two documents listed on the privilege log of Mr. Bulson, a non-party attorney, must be turned over, while citing no rationale or authority for this exception to the April 30, 2007 Order. *Id*. *See* Exhibit 3 at 39-42.

3  31.  On July 24, 2006, Defendants filed a motion to compel challenging the sufficiency and format of Plaintiffs' privilege logs. By order dated August 18, 2006, Magistrate Zarefsky denied Defendants' motion, ruling that "the Court notes that the log appears to follow the form suggested in a commonly used treatise, W. Schwarzer, W. Tashima and J. Wagstaffe, Federal Civil Procedure Before Trial, Form 11:A (Rutter 2006). Moreover, the log appears to have the same information which the Court found sufficient in *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989). Accordingly, this Court finds that by providing this log, the Plaintiffs have sufficiently asserted the attorney-client privilege and the work product doctrine." *See* Exhibit 4, Ex. A. Mr. Bulson's privilege log followed the same standard format approved by Magistrate Zarefsky. *See* Exhibit 4, Ex. O.

4  32.  Thus, the Bulson documents are protected by the applicable joint interest privilege and work product doctrine, as properly noted on his privilege log.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 20, 2007 in Los Angeles, California.

_____
Marc Toberoff