# EXHIBIT P

1  Marc Toberoff (State Bar No. 188547)
   Nicholas C. Williamson (State Bar No. 231124)
2  Keith G. Adams (State Bar No. 240497)
   TOBEROFF & ASSOCIATES, P.C.
3  2049 Century Park East, Suite 2720
   Los Angeles, California, 90067
4  Telephone:  (310) 246-3333
   Fax:          (310) 246-3101
5  MToberoff@ipwla.com

6  Attorneys for Plaintiffs Joanne Siegel and
   Laura Siegel Larson
7
                    **UNITED STATES DISTRICT COURT**
8
          **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**
9

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>              Plaintiffs,<br><br>   vs.<br><br>WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10,<br><br>           Defendants. | Case No: CV 04-8400 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ENTRY OF A PARTIAL JUDGMENT UNDER FED. R. CIV. P. 54(B) AND FOR STAY OF REMAINING CLAIMS PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint filed:  October 8, 2004<br>Trial Date:  None Set<br><br>Date:      September 27, 2010<br>Time:      1:30 p.m.<br>Place:     Courtroom 11 |
| DC COMICS,<br><br>           Counterclaimant,<br><br>   vs.<br><br>JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>         Counterclaim Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 27, 2010 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, plaintiffs Joanne Siegel and Laura Siegel Larson will and hereby do respectfully move the Court for certification pursuant to Fed. R. Civ. P. 54(b) of the Court's March 26, 2008 and August 12, 2009 orders, which granted partial summary judgment upholding the validity and scope of plaintiffs Joanne Siegel and Laura Siegel Larson's ("Plaintiffs") notices of copyright termination filed pursuant to 17 U.S.C. § 304(c) regarding the world famous character Superman.  These orders also determined which Superman works (i.e., certain Superman comic books and newspaper strips) have been recaptured pursuant to the Plaintiffs' notices of termination.  The Court's orders constitute a "final" disposition of Plaintiffs' claim that the notices of termination are valid, and there is no just reason to delay entering the orders as an immediately appealable judgment with respect to such claim.  Indeed, due to the distinct nature of the claims that are the subjects of the Court's orders, the ability to immediately appeal such orders will increase judicial efficiency and decrease prejudice and hardship for the parties, as these issues have a direct bearing on the remaining accounting claims in this case.  Any errors in these decisions, particularly with respect to those Superman works recaptured by Plaintiffs' terminations, will mean the accounting action will have been substantively incomplete, and thus need to be substantially re-tried.  Accordingly, the interests of efficiency and fairness support a stay of the remaining claims in this matter pending disposition of Plaintiffs' appeal.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place in person on July 13, 2010.  The parties further met and conferred telephonically on August 5, 2010.  Defendants informed Plaintiffs that they would oppose this motion.

Plaintiffs' motion is based on this Notice of Motion and Motion, the attached

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PARTIAL FINAL JUDGMENT

1   Memorandum of Points and Authorities, the pleadings and records on file in this

2   action, such additional authority and argument as may be presented in any reply and

3   at the hearing on this motion, and such other matters of which this Court may take

4   judicial notice.

5   DATED:  August 12, 2010          TOBEROFF & ASSOCIATES, P.C.

6

7                                        By_____

8                                               Marc Toberoff

9          Attorneys for Plaintiffs Joanne Siegel and
           Laura Siegel Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 2:10-cv-03633-ODW-RZ    Document 47-16    Filed 08/31/10    Page 5 of 30    Page
ID #:3540
Case 2:04-cv-08400-ODW-RZ    Document 678    Filed 08/12/10    Page 4 of 29    Page ID
#:13440

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

ARGUMENT ..........................................................................................................11

I.    F.R.C.P. 54(b) PERMITS A TRIAL COURT TO ENTER A
      FINAL JUDGMENT AS TO ORDERS THAT DECIDE A
      CLAIM IF THERE IS NO JUST REASON FOR DELAY ..........11

II.   THE COURT HAS DISPOSED OF THE FIRST CLAIM BY
      FINDING THE SIEGELS' SUPERMAN TERMINATION
      VALID.........................................................................................13

      A.    Entry of Judgment as to the First Claim Is Appropriate
            and Would Streamline the Ensuing Litigation ...................13

            1.    The First Claim Is Severable from the Other,
                  Complicated Accounting Claims................................13

            2.    The Interests of Judicial Economy and
                  Streamlining This Litigation Weigh Heavily in
                  Favor of Finalizing the First Claim Before
                  Proceeding With the Accounting Trial......................14

      B.    The Court's "Work for Hire" Determinations Are
            Integral to the First Claim and Have a Direct Effect on
            the Remaining Claims..........................................................16

            1.    The Court's Contested Work for Hire
                  Determinations...........................................................16

            2.    The Ninth Circuit's Resolution of the Validity and
                  Scope of the Superman Terminations Will Promote
                  Settlement ..................................................................19

      C.    Defendants' Transparent Attempt to Re-Litigate These
            Issues in the New Action Further Justifies an Immediate
            Appeal ..................................................................................19

III.  IN LIGHT OF THESE ISSUES, THIS ACTION SHOULD BE
      STAYED UNTIL RESOLUTION OF AN APPEAL....................21

CONCLUSION........................................................................................................22

Case 2:04-cv-08400-ODW-RZ   Document 67-16   Filed 08/31/10   Page 6 of 30   Page
ID #:3656

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                         **Pages**

*Adams v. United States*,
2010 U.S. Dist. LEXIS 47509 (D. Idaho May 12, 2010) ............................15, 18

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
166 Fed. Appx. 268 (9th Cir. 2006)....................................................................15

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ................................................................................12

*Angoss II Pshp. v. Trifox, Inc.*,
2000 U.S. Dist. LEXIS 3165 (N.D. Cal. Mar. 10, 2000) ...................................13

*City of St. Paul v. Evans*,
344 F.3d 1029, 1033, 1033 (9th Cir. 2003) .......................................................14

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ................................................................... *passim*

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980)...................................................................................... *passim*

*DC Comics v. Pacific Pictures Corp.*,
C.D. Cal. Case No. 10-CV-03633 ODW (RZx) ...............................................2, 4

*De Aguilar v. AMTRAK*,
2006 U.S. Dist. LEXIS 11187 (E.D. Cal. March 2, 2006) ................................21

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ...........................................................................21

*Doe v. Univ. of California*,
1993 U.S. Dist. LEXIS 12876 (N.D. Cal. Sept. 2, 1993) ............................13, 21

*Erwin v. U.S.*,
2008 U.S. Dist. LEXIS 21366 (M.D.N.C. 2008)................................................12

*Flores v. Emerich & Fike*,
2008 U.S. Dist. LEXIS 49385 (E.D. Cal. June 17, 2008) ..................................20

*James v. Price Stern Sloan*,
283 F.3d 1064 (9th Cir. 2002) ...........................................................................13

*Janos v. Wells Fargo Bank*,
2006 U.S. Dist. LEXIS 6758 (D. Ariz. Feb. 14, 2006) ......................................12

*Landis v. North American Co.*,
299 U.S. 248 (1936)............................................................................................21

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) .............................................................................21

Case 2:10-cv-03633-ODW-RZ    Document 47-16   Filed 08/31/10   Page 7 of 30   Page
ID #:3563
Case 2:04-cv-08400-ODW-RZ    Document 671-6   Filed 03/31/10   Page 806 of 29   Page
ID #:34453

*Loral Fairchild Corp. v. Victor Co. of Japan*,
931 F. Supp. 1044 (E.D.N.Y. 1996) ........................................................ 19

*Matek v. Murat*,
862 F.2d 720 (9th Cir. 1988) ............................................................... 21

*Mattel, Inc. v. MGA Entertainment, Inc.*,
__ F.3d __, 2009 U.S. App. LEXIS 29187 (9th Cir. 2010) ............................... 17

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......................................................... 12, 15

*Roe v. City of Spokane*,
2008 U.S. Dist. LEXIS 82528 (E.D. Wash. Oct. 16, 2008) .............................. 21

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
206 F.3d 1322 (9th Cir. 2000) ............................................................ 17

*Siegel v. Warner Bros. Ent. Inc.*,
C.D. Cal. Case No. 04-08400 ODW (RZx) ................................... *passim*

*Siegel v. Time Warner Inc.*,
C.D. Cal. Case No. 04-08776 ODW (RZx) .......................................... 4

*Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"),
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ....................................... *passim*

*Siegel v. Warner Bros. Ent. Inc.* ("*Siegel II*"),
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ....................................... *passim*

*Siegel v. Warner Bros. Ent. Inc.* ("*Siegel III*"),
690 F. Supp. 2d 1048 (C.D. Cal. 2009) ................................. 11, 16-18

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .................................................. 12-13, 15

*Torres v. City of Madera*,
655 F. Supp. 2d 1109 (E.D. Cal. 2009) ..................................... 12, 15, 18

*Twentieth Century Fox Film Corp. v. Entertainment Distrib.*,
429 F.3d 869 (9th Cir. 2005) ............................................................ 17

*Whitney v. Wurtz*,
2007 U.S. Dist. LEXIS 60077 (N.D. Cal. Aug. 16, 2007) ........................ 12, 19

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) ............................................................ 19

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) ............................................................ 14

**Federal Statutes and Rules**

Federal Rule of Civil Procedure 54(b) ...................................... *passim*

TABLES OF CONTENTS AND AUTHORITIES

17 U.S.C. § 304 ................................................................................................ *passim*

Pub. L. 94-553 ................................................................................................. 3

Pub. L. 105-298 ............................................................................................... 3

**Other Authorities**

3 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 12.10[A] .................................................................. 17

# **INTRODUCTION**

A final judgment has been reached and should be recognized in this action as to the validity and scope of the copyright termination notices under 17 U.S.C. § 304(c) (the "Siegel Terminations") served by Plaintiffs Joanne Siegel and Laura Siegel Larson (the "Siegels") regarding the iconic character Superman. In a series of lengthy published decisions, this Court completely resolved all of the issues in Plaintiffs' First Claim for Relief, and most of the related issues in Defendant/Counterclaim-Plaintiff DC Comics' First, Second, Third, Fourth and Fifth Counterclaims, which relate to the validity and scope of the Siegel Terminations. *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008) ("*Siegel I*"), 658 F. Supp. 2d 1036 (C.D. Cal. 2009) ("*Siegel II*").

Specifically, this Court has found that the Siegel Terminations are valid and that, as of April 16, 1999, the Plaintiffs are co-owners with Defendants of the original Superman copyright. *Siegel I*, 542 F. Supp. 2d at 1130, 1145. The Court has also delineated the Superman works subject to the Siegel Terminations: the first Superman story as published in *Action Comics, No. 1*, and the Superman stories published in *Action Comics, No. 4*, *Superman, No. 1* (pages 3-6), and the first two weeks of the Superman newspaper strips. *Siegel II*, 658 F. Supp. 2d at 1063-83.

The trier of fact must now decide Plaintiffs' remaining accounting claims as to the profits owed Plaintiffs since April 16, 1999 (the effective date of the Siegel Terminations) from Defendants' exploitation of the core Superman copyrights co-owned with Plaintiffs. *See* Docket No. 602 ("Joint Status Report"), at 16:8-23. The accounting claims and pending accounting trial are directly premised on the correctness of this Court's prior rulings as to the Superman works recaptured by Plaintiffs. If any recaptured Superman works are improperly excluded or included in the trier of fact's analysis, then the entire accounting trial will have to be re-tried. Therefore, in the interests of judicial economy, and to avoid duplicative and pointless re-litigation of the accounting phase of this case, this Court should enter a final

judgment as to Plaintiffs' severable First Claim for Relief, enabling the parties to immediately appeal such judgment to the Ninth Circuit. The certainty and guidance provided by Ninth Circuit review at this juncture will also promote long-awaited settlement of the Superman matter.

DC attempts in its recently filed complaint, *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx), to re-litigate the Court's rulings against it on the First Claim in *Siegel* after six years of hard-fought litigation. DC's new action challenges the validity and scope of the Superman termination notice filed by the executor ("Shuster Executor") of the estate of Joseph Shuster, the co-author with Jerome Siegel of the exact same Superman works litigated in the *Siegel* action. The Shuster termination is the mirror-image of the Siegels' notices of termination, upheld in *Siegel*. In fact, in its new action, DC raises "work for hire" and other defenses identical to those raised in *Siegel*. DC even argues that its purported settlement agreement defense, fully adjudicated and rejected by the Court in *Siegel*, should be re-litigated even though the Shusters had no involvement in the Siegels' settlement negotiations. *See DC Comics*, Docket No. 1, ¶¶ 112-15, 140-41, 145-46, 168 n.6. DC is effectively "appealing" *Siegel* in the same district court under the thinly veiled guise of a "new" action. However, the proper and most efficient forum for the appeal DC craves is the Ninth Circuit. Final resolution of the issues in *this* case by the Ninth Circuit will avoid unnecessary, duplicative and wasteful litigation of identical issues in the *DC Comics* action.

Lastly, because the Ninth Circuit's decision regarding Plaintiffs' First Claim will control the outcome in the pending "accounting" trial, this Court should exercise its discretion to stay this action until such appeal is complete.

## FACTUAL BACKGROUND

Plaintiffs Joanne Siegel and Laura Siegel Larson are the widow and daughter, respectively, of Jerome Siegel ("Siegel") who, with Joseph Shuster ("Shuster"), co-created Superman. Siegel and Shuster co-authored the first Superman comic book

story which was later published in 1938 in *Action Comics, No. 1*, by Detective Comics, Inc. ("Detective"), the predecessor of Defendant DC Comics ("DC"). *Siegel I*, 542 F. Supp. 2d at 1105-07, 1126-30. By agreement dated March 1, 1938, Siegel and Shuster granted to Detective all worldwide rights in their Superman story and character, and Detective exploited those rights in various media over the next seventy years. *Id.* at 1107, 1110. From 1938 to 1943, Siegel and Shuster wrote hundreds of additional Superman comic book stories published by Detective, and hundreds of Superman newspaper strips syndicated by the McClure Newspaper Syndicate. *Siegel II*, 658 F. Supp. 2d at 1047-56.

The 1976 Copyright Act, which became effective on January 1, 1978, provided authors and their families with valuable new rights to recapture the author's original copyright(s), for the extended renewal term, by noticing the termination of previous grants of copyright. *See* 17 U.S.C. §§ 304(c), 304(d). Pursuant to § 304(c) of the 1976 Act, the Siegels served notices of termination on DC with respect to Siegel's original copyright interests in Superman and Superboy on April 3, 1997, and November 8, 2002, respectively, with effective termination dates of April 16, 1999, and November 17, 2004, respectively. *Siegel I*, 542 F. Supp. 2d at 1114.

Superman is considered a joint work under the Copyright Act because it was co-authored by Siegel and Shuster. As such, each co-author originally owned an undivided 50% interest in the copyright therein. Joint owners of a copyright each have the non-exclusive right to exploit such copyright, subject to a duty to account to one another. The Siegel Terminations related to Siegel's (not Shuster's) 50% interest in the original Superman copyrights. Shuster was not married at the time of his death and had no children, and accordingly his estate lacked termination rights until 1998.[1]

---

[1] At the time of Joseph Shuster's death, under the Copyright Act of 1976, Pub. L. 94-553, 17 U.S.C. § 304(c)(2), only an author's widow or widower, children or grandchildren held termination rights, and as Shuster had none, no one held termination rights as to Shuster's 50% copyright interest in Superman. *Siegel I*, 542 F. Supp. 2d at 1114 n.3. The Copyright Term Extension Act of 1998, Pub. L. 105-298, expanded the category of potential holders of the termination right by adding "the author's executor, administrator, personal representative, or trustee" to the list of potential holders of termination rights. 17 U.S.C. § 304(c)(2)(D); *Siegel I*, 542 F. Supp. 2d at 1114 n.3. The estate of Joseph Shuster was

Case 2:10-cv-03633-ODW-RZ   Document 47-16   Filed 08/31/10   Page 12 of 30   Page
ID #:3456
Case 2:04-cv-08400-ODW-RZ   Document 678   Filed 03/26/10   Page 129 of 190   Page
ID #:3456

1      Warner Bros. Entertainment, Inc. ("Warner") and its subsidiary, DC,

2 challenged the validity and scope of the Siegel Terminations.  In response, the

3 Siegels in October 2004 filed the Superman and Superboy actions, which included a

4 claim for declaratory relief that the Siegel Terminations were valid, and additional

5 claims.  *See Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-08400 ODW

6 (RZx) ("*Siegel*" or the "Superman Action"), Docket Nos. 1, 378, Second Amended

7 Complaint ("SAC"), ¶¶ 52-55, 83 ("First Claim"); *Siegel v. Time Warner Inc.*, C.D.

8 Cal. Case No. 04-08776 ODW (RZx) (the "Superboy Action").  DC counterclaimed

9 that the Siegel Terminations were invalid or tried to limit their scope.  *See Siegel*,

10 Docket No. 42, First Amended Counterclaim ("Counterclaims"), ¶¶ 68-69, 70-76, 90-

11 96, 97-101, 102-113, 118-20, 132-35.

12      The SAC in the Superman action contained the following causes of action:

13 •    Plaintiffs' First Claim for Relief sought declaratory relief to affirm the validity

14      of Plaintiffs' Superman Termination Notices pursuant to 17 U.S.C. § 304(c);

15 •    Plaintiffs' Second Claim for Relief sought declaratory relief as to the scope of

16      Defendants' duty to account to Plaintiffs for post-April 16, 1999 profits from

17      exploitation of Plaintiffs' recaptured Superman copyrights;

18 •    Plaintiffs' Third Claim for Relief sought a declaration that Defendants have a

19      duty to account for exploitation of the Superman "crest" and/or Superman

20      "shield" on the ground that they are derivative of the copyrighted Superman

21      crest in *Action Comics, No. 1*;

22 •    Plaintiffs' Fourth Claim for Relief sought an accounting from all Defendants

23

24 probated to avail itself of the termination right provided by the Copyright Term Extension
Act of 1998.  17 U.S.C. § 304(d).  On November 10, 2003, Warren Peary, the duly

25 appointed personal representative of the estate (the "Shuster Executor") served a notice of
termination under § 304(d) with respect to Shuster's 50% share of the Superman copyright,

26 with an effective termination date of October 26, 2013, and thereafter filed the notice with
the U.S. Copyright Office. *Siegel I*, 542 F. Supp. 2d at 1114 n.3.  *See DC Comics,*

27 Complaint, ¶¶ 79-80.  On May 14, 2010, DC filed the related case of *DC Comics v. Pacific
Pictures Corp., et al.*, Case No. 10-CV-03633 ODW, which seeks, *inter alia*, declaratory

28 relief that the Shuster Termination is somehow invalid.  In the *DC Comics* action, DC also
seeks to re-litigate many issues already decided in the *Siegel* action.  *See DC Comics*,
Complaint filed May 14, 2010, at ¶¶ 94-98, 113-15, 122-49, 168, and 168 n.7.

Case 2:04-cv-08400-ODW-RZ   Document 678-16   Filed 08/31/10   Page 13 of 30   Page
ID #:3457
Case 2:04-cv-08400-ODW-RZ   Document 67-16   Filed 08/23/10   Page 2 of 39   Page ID
#:3452

1  for their respective exploitation of recaptured Superman copyrights after the
2  effective Termination date;

3  • Plaintiffs' Fifth Claim for Relief alleged that Defendants violated California
4  Business and Professions Code §§ 17200 *et seq.* by omitting the Terminations
5  from Time Warner's public financial disclosures.

6  The following counterclaims were asserted by DC:

7  • DC's First Counterclaim requested declaratory relief that the Siegel
8  Terminations Notices were ineffective;

9  • DC's Second Counterclaim requested a declaration that the Siegels' claims
10  were barred by the statute of limitations;

11  • DC's Third and Fourth Counterclaims alleged that the parties had entered into
12  a settlement agreement that the Siegels had repudiated;

13  • DC's Fifth Counterclaim requested declaratory relief on the basis of various
14  limitations provided in section 304(c) that the Court limit the scope and reach
15  of the Superman and Superboy notices;

16  • DC's Sixth Counterclaim sought a determination regarding the application of a
17  number of accounting principles in the event that the Siegel Terminations were
18  deemed valid and effective.

19  Plaintiffs' First Claim, and Defendants' Second, Third and Fourth
20  Counterclaims, as well as certain portions of DC's First and Fifth Counterclaims, all
21  concerned the validity of the Siegel Terminations with respect to numerous
22  Superman works co-authored by Siegel and Shuster.  *See* Counterclaims, ¶¶ 68-76,
23  90-113, 118-20, 132-35.

24  The parties conducted substantial discovery over the next two and half years,
25  with fact discovery closing on November 16, 2006.  On April 30, 2007, the parties
26  filed cross-motions for partial summary judgment in the Superman Action.  Plaintiffs
27  sought partial summary judgment in full as to Plaintiffs' First Claim and as to
28  relevant portions of DC's Counterclaims, as follows:

- That the Siegel Terminations are valid as a matter of law with respect to at least the original Superman story published in *Action Comics, No. 1*, and that Plaintiffs have thereby recaptured Siegel's co-authorship share of the copyrights therein (*see* SAC, ¶¶ 52-55);

- That the defenses to the Siegel Terminations alleged in Defendants' First and Second Counterclaims and parts of their Fifth Counterclaim lack merit because:  (a) Siegel and Shuster's Superman story published in *Action Comics, No. 1*, is not a "work made for hire" as it was independently created by them long before their relationship with Detective (Counterclaim, ¶¶ 132-33); (b) that a May 21, 1948 consent judgment need not have been listed in the Siegel Terminations because it was not a copyright grant and, in any event, is duplicative of a May 19, 1948 stipulation listed in the Siegel Terminations (*id.*, ¶¶ 68-69); (c) that a December 23, 1975 agreement was not a copyright grant and, in any event, Plaintiff Joanne Siegel's acceptance of certain pension benefits thereunder from Defendants did not reinstate any copyright grants (*id.*, ¶¶ 70-76); (d) that the Siegel Terminations were timely served (*id.*, ¶¶ 86-87); and (e) that the Siegel Terminations are not barred by the statute of limitations (*id.*, ¶¶ 90-96);

- That Defendants' Third and Fourth Counterclaims should be dismissed because the parties failed to consummate a binding settlement agreement regarding Plaintiffs' recaptured copyrights (*id.*, ¶¶ 97-105); and

- That Plaintiffs are entitled to an accounting of all profits earned from Plaintiffs' recaptured Superman copyrights in the United States and in foreign territories (to the extent such foreign profits are based on Defendants' predicate acts in the United States) (SAC, ¶¶ 58(a), 84(b)).

Defendants sought partial summary judgment as follows:

- That Plaintiffs have no right under the Copyright Act to share in Defendants' profits derived from the foreign exploitation of any Superman work

PLAINTIFFS' MOTION FOR PARTIAL FINAL JUDGMENT

(Counterclaims, ¶ 137(a));

- That as a result of Plaintiffs' alleged failure to terminate certain copyrighted works as prescribed by the Copyright Act, Defendants remain free to use such unterminated works and the elements contained therein without accounting to Plaintiffs and without liability for copyright infringement (*id.*, ¶ 137(c)); and

- That neither Warner Bros. nor Time Warner is the "alter ego" of DC, and Plaintiffs therefore are not entitled to reach any Superman-related profits of either of these two Defendants (*id.*, ¶ 137(e); SAC, ¶ 84(g)-(h)).

The Court issued its ruling on the parties' partial summary judgment motions on March 26, 2008, disposing of the issues listed above.  The Court granted Plaintiffs' motion with respect to Defendants' work for hire defense, concluding that "all the Superman material contained in *Action Comics*, Vol. 1, is not a work made for hire and therefore is subject to termination." *Siegel I*, 542 F. Supp. 2d at 1130. The court also granted Plaintiffs' motion in holding that Plaintiffs' omission of the 1948 consent judgment in the Siegel termination notices did not diminish or invalidate the terminations.  *Id.* at 1132.  The Court likewise granted Plaintiffs' motion that Joanne Siegel's continued acceptance of benefits under the parties' 1975 agreement did not constitute a "grant" of copyrights under section 304(c)(6)(D) and had no effect on the Siegel Terminations.  *Id.* at 1134.  The Court also granted Plaintiffs' motion in denying Defendants' statute of limitations defense, holding that Plaintiffs' action was timely filed.  *Id.* at 1136.  The Court likewise granted Plaintiffs' motion in denying Defendants' purported defense that the parties had allegedly entered into a binding settlement agreement in 2001, ruling that "the parties' settlement negotiations did not result in an enforceable agreement."  *Id.* at 1139.

The Court granted Defendants' motion in ruling that certain "promotional announcements" ("Ads") due to their earlier publication, fell outside the statutory time "window" of the Siegel Terminations.  *Id.* at 1126.  The Court also severely limited the scope of the Ads holding that they only depict "the image of a person with

extraordinary strength who wears a black and white leotard and cape" and contained "[o]bviously nothing concerning the Superman storyline (that is, the literary elements contained in Action Comics, Vol. 1)… thus, Superman's name, his alter ego, his compatriots, his origins, his mission to serve as a champion of the oppressed, or his heroic abilities in general, do not remain within defendants sole possession to exploit." *Id.*

In addition, the Court granted Defendants' motion on the foreign profits issue and denied Plaintiffs' motion, ruling that "the termination notice is *not* effective as to … defendants' exploitation of the work abroad," and that therefore Defendants "must account to plaintiffs only for the profits from such domestic exploitation of the Superman copyright." *Id.* at 1142.[2]

Both sides moved for clarification and/or reconsideration of certain portions of the Court's March 26, 2008 Partial Summary Judgment Order. Defendants' motion (Docket No. 307) requested that the Court reconsider its statement regarding the scope of copyrightable material contained in the "promotional announcements." Plaintiffs' motion (Docket Nos. 300, 312) requested that the Court "(a) clarify that Defendants did not secure any copyrightable *Superman* elements via the 'promotional announcements'"; and (b) clarify that the promotional announcements did not detract from Plaintiffs' recaptured Superman copyrights. Docket No. 312 at 1:13-16. Plaintiffs also sought clarification that the Court's statements in the background section of its order regarding the Superman elements it did not see in *Action Comics, No. 1* were *dicta*, on the ground that this literary issue had not been joined.

On July 3, 2008, the Court issued an order denying Defendants' motion with prejudice, and "affirm[ed] its conclusion on the scope of the copyrightable material contained in those [promotional] announcements." Docket No. 327 at 3-4. The

---

[2] The Court denied Defendants' motion to dismiss Plaintiffs' "alter ego" claims, holding that "whether the license fees paid [to DC for Superman] represents the fair market value therefor, or whether the license for the works between the entities was a 'sweetheart deal,' are questions of fact that are not answered on summary judgment…." *Id.* at 1145.

Court denied Plaintiffs' motion, but without prejudice, stating that "[s]hould plaintiffs wish for the Court to deal with the questions identified in their motion, they may append them to those issues identified in the March 31, 2008 Order requiring further briefing." *Id.* at 4.

On February 21, 2008, a month before the Court issued its March 26, 2008 Partial Summary Judgment Order, the parties filed a stipulation with the Court, requesting that it accept briefing on certain "Additional Issues" that would substantially impact the nature, conduct and length of the trial, as well as the parties' pre-trial preparations.  Among these, Defendants sought additional partial summary judgment that Jerome Siegel's contribution to all Superman works published after *Action Comics, No.* 1 and within the five-year Termination "window" (1938-1943) were "works made for hire," not subject to termination; Plaintiffs asserted that such fact-intensive "work for hire" issues were for the trier of fact.[3]

**The August 12, 2009 Decision on "Work For Hire" Issues**

On August 12, 2009, the Court issued an "Order Resolving Additional Issues." In its Order, the Court ruled on the work for hire arguments presented in the parties' Additional Issues briefing, denying Plaintiffs' request for a trial as to such issues. *See Siegel II,* 658 F. Supp. 2d 1036.  At issue was whether the following works within the Termination window were "works made for hire":  (i) a description of "future Superman exploits" written by Siegel; (ii) Superman comic strips created by Siegel and artist Russell Keaton (the "Keaton Material"); (iii) *Action Comics, Nos. 2-61*; (iv) *Superman, Nos. 1-6*; and (v) Superman newspaper strips syndicated by the McClure Newspaper Syndicate.  In pertinent part, the Court ruled as follows:

• The "future Superman exploits" paragraph written before the publication of *Action Comics, No. 1* could not be terminated because it was too generalized to secure copyright protection.  *Id.* at 1061-1062;

---

[3] Pursuant to the Court's July 3, 2008 Order regarding Plaintiffs' motion for clarification, Plaintiffs re-briefed the issues of (a) the scope of Defendants' rights based on the "promotional announcements," and (b) whether the Court's background statements concerning the absence of certain Superman elements in *Action Comics No. 1* were *dicta*.

1   • The "Keaton Material" was unpublished and therefore could not be terminated,
2   because it did not "acquire[] statutory copyright protection under the 1909 Act,
3   as it was either never published with the requisite notice or registered as an
4   unpublished work." *Id*. at 1062;
5   • The Superman material "appearing in *Action Comics* No. 4 is based almost
6   verbatim on Siegel's pre-1938 script, . . . the Superman material appearing
7   therein was not a work for hire and is subject to termination" and therefore was
8   recaptured by Plaintiffs. *Id*. at 1063;
9   • *Superman* No. 1, pages three through six, was not a "work made for hire" and
10  was thus subject to termination and recaptured by Plaintiffs. *Id*. at 1064-65;
11  • "[T]he Superman material in *Action Comics* Nos. 2-3 and 5-6 . . . were works
12  made for hire." *Id*. at 1067-68;
13  • "[T]he Superman materials created by Siegel and Shuster during the term of
14  their employment agreement (namely, *Action Comics* Nos. 7-61, and to
15  *Superman* Nos. 1-23) were works made for hire." *Id*. at 1070;
16  • "[T]he two weeks' worth of newspaper comic strip material created by Siegel
17  and Shuster during the spring of 1938, *before* the execution of the syndication
18  agreement were *not* works made for hire" and therefore were subject to
19  termination and recaptured by Plaintiffs. *Id*. at 1083 (emphasis in original);
20  • The failure to list the two weeks of newspaper strips in the Siegel Terminations
21  "was 'harmless error' that does not affect the validity of termination notice"
22  regarding these newspaper strips. *Id*. at 1095; and
23  • "[T]he newspaper strips created by Siegel and Shuster after September 22,
24  1938, were works made for hire, [and] the right to terminate does not reach the
25  grant to those works." *Id*. at 1080.
26  As a result of these various rulings, Plaintiffs have recaptured Jerome Siegel's
27  co-authorship interests in, and co-own with Defendant DC, the copyrights to the
28  following works:  the first Superman story as published in *Action Comics, No. 1*,

*Action Comics, No. 4*, *Superman, No. 1* (pages three through six), and the first two weeks of the Superman newspaper strips.[4]

Defendants filed a motion on October 2, 2009, seeking reconsideration of the Court's ruling that the omission of the first two weeks of the Superman newspaper strips from the Siegel Terminations was "harmless error."  Plaintiffs filed a motion on October 3, 2009, requesting reconsideration of the Court's ruling that the McClure Superman newspaper strips created by Siegel and Shuster after September 22, 1938 were "works made for hire."  In an opinion dated October 30, 2009, the Court denied both sides' motions.  *Siegel v. Warner Bros. Ent. Inc.*, 690 F. Supp. 2d 1048 (C.D. Cal. 2009) ("*Siegel III*").

## **ARGUMENT**

### I. **F.R.C.P. 54(b) PERMITS A TRIAL COURT TO ENTER A FINAL JUDGMENT AS TO ORDERS THAT DECIDE A CLAIM IF THERE IS NO JUST REASON FOR DELAY**

Federal Rule of Civil Procedure 54(b) allows a district court to certify as final and immediately appealable interlocutory orders that, like Judge Larson's Orders, completely resolve certain outstanding claims in a case:

> "When more than one claim for relief is presented in an action … or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Fed. R. Civ. P. 54(b).  To be eligible for entry of judgment under Rule 54(b), the order must constitute "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and there must be no just reason to delay appellate review of the order until the conclusion of the entire case. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980).

---

[4] The Court declined to address the remaining Additional Issues that have been pending before the Court since the parties briefed them in July of 2008, reserving decision on those issues to a later date in advance of the accounting trial.  *Siegel II*, 658 F. Supp. 2d at 1095, n. 27.  However, such Additional Issues relate to the procedural parameters of the "accounting" phase of trial and not Plaintiffs' First Claim for relief.

Case 2:04-cv-08400-ODW-RZ    Document 67-16    Filed 08/31/10    Page 20 of 30    Page
ID #:3664
Case 2:04-cv-08400-ODW-RZ    Document 678    Filed 08/24/10    Page 20 of 29    Page ID
#:3554

1    In looking to see if appellate review should be delayed, courts "must take into
2    account judicial administrative interests as well as the equities involved."  *Curtiss-*
3    *Wright*, 446 U.S. at 9.  Courts must weigh "such factors as whether the claims under
4    review were separable from the others remaining to be adjudicated and whether the
5    nature of the claims already determined was such that no appellate court would have
6    to decide the same issues more than once even if there were subsequent appeals." *Id.*
7    at 8.  The Ninth Circuit embraces a "pragmatic approach focusing on severability [of
8    claims] and efficient judicial administration."  *Continental Airlines, Inc. v. Goodyear*
9    *Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987).[5]

10    "[C]laims certified for appeal do not need to be separate and independent from
11    the remaining claims, so long as resolving the claims would 'streamline the ensuing
12    litigation.'" *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (citations omitted).
13    Courts have found no just reason for delay where a 54(b) judgment would avoid an
14    unnecessary and duplicative trial.  *Continental Airlines, Inc.*, 819 F.2d at  1525
15    ("[G]iven the size and complexity of this case, we cannot condemn the district court's
16    effort to carve out threshold claims and thus streamline further litigation."); *Torres v.*
17    *City of Madera*, 655 F. Supp. 2d 1109, 1135 (E.D. Cal. 2009) (granting 54(b)
18    judgment where "if [the parties] were to wait until after trial to appeal the court's
19    ruling, it would result in a second, duplicative and costly trial"); *Texaco, Inc. v.*
20    *Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) ("Rule 54(b) certification is proper if it
21    will aid 'expeditious decision' of the case.").[6]

---

22
23    [5] Although the Ninth Circuit has not established a precise test to determine whether there is
just reason for delay, the factors to be considered include "whether the nature of the claims
24    already determined is such that no appellate court would have to decide the same issues
more than once, even if subsequent appeals are heard" and "whether immediate appellate
25    resolution will foster settlement of the remaining claims."  *Whitney v. Wurtz*, 2007 U.S.
Dist. LEXIS 60077, at *5 (N.D. Cal. Aug. 16, 2007).

26    [6] *See also Janos v. Wells Fargo Bank*, 2006 U.S. Dist. LEXIS 6758, at *22 (D. Ariz. Feb.
14, 2006) (granting 54(b) judgment where "an immediate appeal of this order would not
27    threaten duplication of judicial work through repetitive appeals on related issues or
transactions"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d
28    Cir. 1997) (holding that a 54(b) judgment is appropriate "where an expensive and
duplicative trial could be avoided"); *Erwin v. U.S.*, 2008 U.S. Dist. LEXIS 21366 at *4, n.2
(M.D.N.C. 2008) (granting 54(b) judgment "in the interest of conserving judicial resources

12

PLAINTIFFS' MOTION FOR PARTIAL FINAL JUDGMENT

Case 2:04-cv-08776-SGL-RZ    Document 676    Filed 08/31/10    Page 21 of 30   Page
ID #:3665
Case 2:04-cv-08400-ODW-RZ    Document 67-16    Filed 08/31/10    Page 20 of 29   Page
ID #:3465

The Ninth Circuit "reviews the certification of an appeal under Rule 54(b) for abuse of discretion." *Texaco, Inc.*, 939 F.2d at 797. As such, "issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances." *James v. Price Stern Sloan*, 283 F.3d 1064, 1068 n.11 (9th Cir. 2002).[7]

## II. THE COURT HAS DISPOSED OF THE FIRST CLAIM BY FINDING THE SIEGELS' SUPERMAN TERMINATION VALID

The Court's March 26, 2008 order unambiguously upheld the validity of the Siegel Terminations as to *Action Comics, No. 1*, the first appearance of Superman, thus disposing of Plaintiffs' First Claim for Relief. In so doing, Judge Larson carefully considered, addressed and dismissed each of Defendants' alleged defenses and counterclaims as to the validity of the Siegel Terminations. *Siegel* at 1131-40. The Court's order clearly amounts to an "ultimate disposition" of the Siegels' First Claim for Relief, and there exists no just reason to delay its appellate review. *Curtiss-Wright*, 446 U.S. at 7-8.

### A. Entry of Judgment as to the First Claim Is Appropriate and Would Streamline the Ensuing Litigation

#### 1. The First Claim Is Severable from the Other, Complicated Accounting Claims

Plaintiffs' First Claim is clearly "severable" from the remaining accounting claims because it establishes the threshold issues of the validity and scope of the Siegel Terminations.[8] This claim is separate from Plaintiffs' remaining Second, Third, and Fourth claims, which seek an accounting of profits from the Superman copyrights recaptured by the Siegel Terminations. The issues of the validity and

---

and preventing duplicative trials"). *See also Cadillac Fairview/California, Inc. v. United States*, 41 F.3d 562, 564 (9th Cir. 1994) (entry of final judgment under Rule 54(b) is appropriate, "even if subsequent trial proceedings might obviate the need for an appeal").

[7] Courts routinely grant Rule 54(b) motions over the objections of an opposing party. *See, e.g., Doe v. Univ. of California*, 1993 U.S. Dist. LEXIS 12876, at *5 (N.D. Cal. Sept. 2, 1993) (granting 54(b) judgment despite defendants' opposition); *Angoss II Pshp. v. Trifox, Inc.*, 2000 U.S. Dist. LEXIS 3165 (N.D. Cal. Mar. 10, 2000) (same).

[8] Similarly, the relevant portions of DC's First, Second, Third, Fourth and Fifth Counterclaims seek as a threshold matter to invalidate the terminations. *See* Counterclaims, ¶¶ 68-76, 90-113, 118-20, 132-35. The adjudication through appeal of Plaintiffs' First Claim would naturally implicate and resolve all such claims.

scope of the Siegel Terminations under the Copyright Act are distinct and severable from the issue of how Defendants must account to Plaintiffs for profits from the Superman copyrights recaptured and co-owned as of 1999 pursuant to the Siegel Terminations.  Whereas the former is governed by the Copyright Act, the latter is governed by state-law accounting principles applicable to co-owners of property.  *See Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996).  The trier of fact will have to determine the amount of post-termination Superman profits at issue; however, this "accounting" analysis does not affect the validity and scope of the Siegel Terminations.  The Siegels could have well brought the First Claim alone, and sued later if Defendants failed to properly account to them as co-owners of the recaptured Superman copyrights.  For this reason, ***the Ninth Circuit would never have to decide the validity and scope of the Siegel Terminations "more than once" if such issues are now appealed.***  Even if this Court's determination of the "accounting" issues were appealed, the validity and scope of the Siegel Terminations would already have been finally resolved.  *See City of St. Paul v. Evans*, 344 F.3d 1029, 1033, 1033 n.6 (9th Cir. 2003) (entering Rule 54(b) judgment on declaratory relief claim as to breach of a valid agreement, while "not dispos[ing] of the remaining counterclaims").

### 2. The Interests of Judicial Economy and Streamlining This Litigation Weigh Heavily in Favor of Finalizing the First Claim Before Proceeding With the Accounting Trial

Defendants can hardly claim that certification and appeal of the Court's ruling as to the validity and scope of the Siegel Terminations is unfair or prejudicial, as Defendants will appeal this core ruling in any event as it is unfavorable to them.  The Siegel Terminations, as well as the mirror-image termination notice filed by the Shuster Executor, have considerable impact on Defendants' interests in Superman.  In fact, as of October 26, 2013, the effective date of the Shuster termination notice, Defendants will be unable to produce new Superman derivative works without a new license from the Siegels and the Shuster Executor of the recaptured Superman copyrights.  Accordingly, the core determination of the basic validity and scope of

PLAINTIFFS' MOTION FOR PARTIAL FINAL JUDGMENT

the Siegel Terminations is a much more central economic concern to Defendants than the particular outcome of the *Siegel* accounting trial. Defendants should therefore welcome a final determination of such issues by the Ninth Circuit as soon as possible.

In both sides' estimation, substantial resources of both the Courts and the parties will be required for the accounting trial. *See* Joint Status Report at 2. Entry of judgment and an immediate appeal of the Court's rulings on the First Claim would finally determine the scope of the Siegel Terminations, and the specific Superman works for which an accounting is owed, resolve DC's related counterclaims and defenses, and promote the speedy and efficient resolution of the accounting litigation that depends on such threshold decisions. *See Noel v. Hall*, 568 F.3d at 747; *Continental Airlines, Inc.*, 819 F.2d at 1525.

Courts routinely grant Rule 54(b) motions where it would streamline the issues, conserve judicial resources and promote settlement. *See Texaco,* 939 F.2d at 798 (approving entry of judgment where "the legal issues now appealed will streamline the ensuing litigation"). Entry of judgment on adjudicated claims under Rule 54(b) is especially appropriate where, as set forth in Section II.B. below, the claims determine the scope and contours of trial as to the remaining issues, that trial is likely to be protracted, and the Court will avoid wasting precious resources in a re-trial. *See Continental Airlines*, 819 F.2d at 1525 (approving Rule 54(b) entry of judgment where "the district court effectively narrowed the issues, shortened any subsequent trial by months, and efficiently separated the legal from the factual questions"); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 166 Fed. Appx. 268, 270–71 (9th Cir. 2006) (approving Rule 54(b) judgment where appellate reversal of partial summary judgment after final resolution of the lawsuit would require a second trial).[9]

---

[9] *See also Torres*, 655 F. Supp. 2d at 1135 (E.D. Cal. 2009) (entering judgment under Rule 54(b) because "[a]llowing an appeal now would avoid the need for possibly two duplicative trials" and "[t]his would conserve judicial resources and avoid the parties' expenditure of vast resources on trying a case twice"); *Adams v. United States*, 2010 U.S. Dist. LEXIS 47509, at *12–13 (D. Idaho May 12, 2010) (entering judgment under Rule 54(b), as an immediate appeal would "provide important appellate direction" for an upcoming trial, and because "if an appeal must await the end of that trial, the immense efforts of Court and counsel could be wasted if the appeal results in re-trial.").

**B.    The Court's "Work for Hire" Determinations Are Integral to the First Claim and Have a Direct Effect on the Remaining Claims**

A "work made for hire" is not subject to the Copyright Act's termination provisions.  17 U.S.C. § 304(c).  Judge Larson's determinations as to which Superman works were not "works for hire" is integral to Plaintiffs' First Claim for Relief and determined the copyrighted works successfully recaptured by the Siegel Terminations (the "Recaptured Copyrights").  SAC, ¶¶ 39, 54, 83.  Any errors in such "work for hire" rulings and consequent determination of the Recaptured Copyrights for which Defendants must account would directly impact and necessarily reverse the second phase "accounting" trial, wasting this Court's precious resources.

**1.    The Court's Contested Work for Hire Determinations**

In a series of exhaustively-analyzed published decisions, this Court decided the fact-intensive question of which works listed in the Siegel Terminations, and within the statutory termination "window" (1938-1943), were subject to successful recapture by Plaintiffs, and which works were exempted from the Siegel Terminations as "works made for hire."  *See Siegel I,* 542 F. Supp. 2d at 1126-30, *Siegel II,* 658 F. Supp. 2d 1036, *Siegel III,* 690 F. Supp. 2d 1048.

In its initial summary judgment ruling, this Court held that the Siegels successfully recaptured Jerome Siegel's copyright interest in *Action Comics, No. 1*, as it was not a "work for hire."  *Siegel I,* 542 F. Supp. 2d at 1126-30.  Thereafter, the Court, in its August 12, 2009 order, ruled which subsequent Superman works published between 1938-1943 were recaptured by the Siegel Terminations, or were exempt as "works made for hire."  *Siegel II*, 658 F. Supp. 2d 1036.  The Court ruled that the Siegels additionally recaptured *Action Comics, No. 4* (*id.* at 1062-63), pages three through six of Superman No. 1 (*id.* at 1063-64), and the first two weeks of the Superman newspaper strips (*id.* at 1080-84), but held that all the remaining works, namely *Action Comics, Nos. 2, 3, 5, 6-61*; *Superman, Nos. 1-23* (*id.* at 1064-70); and all the Superman newspaper strips created by Siegel and Shuster after September 22,

PLAINTIFFS' MOTION FOR PARTIAL FINAL JUDGMENT

1938 were "works-made-for-hire," and thus exempt from the Siegel Terminations.

As the Court has thoroughly analyzed and determined all of the Recaptured Copyrights for which an accounting is owed, its rulings are sufficiently "final" to be suitable for Rule 54(b) certification. *Curtiss-Wright*, 446 U.S. at 7-8.

Judge Larson's "work for hire" rulings are contested by both sides, which each filed motions for reconsideration that were denied. *See Siegel III,* 690 F. Supp. 2d 1048 (C.D. Cal. 2009). Plaintiffs contend that other than with respect to *Action Comics, No. 1* and the first two weeks of the Superman newspaper strips, which were clearly created "on spec," the question of which subsequent Superman works were "made for hire" presents multiple issues of material fact for the trier of fact, and should not have been decided on summary judgment. *See Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869, 874 (9th Cir. 2005) (reversing grant of summary judgment as to work for hire under the 1909 Copyright Act as inappropriate because "work for hire" disputes present genuine issues of material fact); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (holding summary judgment inappropriate for a "work for hire" determination); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.10[A] (the "questions of historical intent" and "as to the parties' intent" inherent in a "work for hire" determination are questions for the finder of fact). *See also Mattel, Inc. v. MGA Entertainment, Inc.*, __ F.3d __, 2009 U.S. App. LEXIS 29187, at *18, *33 (9th Cir. 2010) (reversing grant of summary judgment as "issue should have been submitted to the jury" and noting that "the entire case will probably need to be retried").

Plaintiffs further contend that the Court erred in its application of the "work for hire" doctrine to the post-September 22, 1938 Superman newspaper strips published by the McClure Syndicate (the "Strips"). *See* Docket Nos. 569, 583. In fact, the Court itself acknowledged in its order that such Strips were "on the outer boundaries of what would constitute a work made for hire." *Siegel II*, 658 F. Supp. at 1080.

This ruling alone affects approximately 1,100 daily Strips, and the first publication of many valuable Superman elements. *Siegel III,* 690 F. Supp. 2d at 1069 n.11. Error found in the Court's exclusion of the Strips from the Recaptured Copyrights will materially affect the accounting trial and require re-trial of the accounting claims.

Defendants, for their part, argued strenuously that the *first two weeks* of the Superman Strips, which included Superman's famous origin story on Krypton, should have been *excluded* from the Recaptured Copyrights because such works were not specifically listed in the Siegel Terminations, and Defendants argued that, contrary to the Court's opinion, this was not excusable "harmless error." *See* Docket Nos. 567, 585; *Siegel III,* 690 F. Supp. 2d at 1050-73.

Both sides filed extensive motions for reconsideration of the above "work for hire" decisions, and it is clear from such motions that both sides intend to appeal such decisions. *See* Docket Nos. 567, 569, 576-79, 583, 585-86, 588-89.

There is no good reason to delay this inevitable appeal. If the threshold determination of the Recaptured Copyrights is incorrect, it follows that the subsidiary determination of owed profits in the accounting trial will be erroneous, and the entire time-consuming "accounting" trial would have to be re-tried. As set forth above, this very real potential for duplicative trials weighs heavily in favor of certification. *See Torres,* 655 F. Supp. 2d at 1135; *Adams,* 2010 U.S. Dist. LEXIS 47509, at *12–13.

Defendants can hardly claim that an appeal now of the Court's threshold "work for hire" decisions will prejudice them, as it is much more efficient to have such appellate review *before* the parties expend significant resources mounting an accounting trial, concerning thousands of derivative Superman products, that may well be fatally flawed from the outset. Accordingly, the sooner the parties receive guidance from the Ninth Circuit the better, as it would enable the accounting trial to proceed on a much firmer footing.

///

///

## 2.   The Ninth Circuit's Resolution of the Validity and Scope of the Superman Terminations Will Promote Settlement

Finally, a decision by the Ninth Circuit upholding the validity and scope of the Siegel Terminations will provide certainty and thereby promote timely settlement of this action *and* the closely related *DC Comics* action. *Curtiss-Wright Corp.*, 446 U.S. at 8 n.2 (noting that a court, in deciding a 54(b) motion, should assess whether "appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims.").[10]  If the Ninth Circuit upholds the validity of the Siegel Terminations, as expected, and determines the Superman copyrights recaptured, this should also resolve the *DC Comics* action, as such deals with the Shuster Executor's twin notice of termination regarding the same Superman works by Siegel and Shuster.  Given the considerable value of the Superman copyrights in question, it is far less likely that these cases will be settled at the trial court level. The Superman case has dragged on for six long years. The Ninth Circuit's input at this important juncture will promote long-awaited settlement of the *entire* Superman dispute.

## C.   Defendants' Transparent Attempt to Re-Litigate These Issues in the New Action Further Justifies an Immediate Appeal

As noted above, the Siegel Terminations have been held valid as to the comic books *Action Comics, Nos. 1, 4*, and portions of *Superman, No. 1*, as well as the first two weeks of the *Superman* newspaper strips.  These works comprise the essential core of the Superman mythos, and include Superman's origin on Krypton, his iconic costume and super-powers, his "alter ego," Clark Kent, and "their" relationship with feisty reporter, Lois Lane.  *Siegel I*, 542 F. Supp. 2d at 1126.  Unhappy with having to account to the Siegels for the use of these valuable Superman elements after April

---

[10] *Whitney*, 2007 U.S. Dist. LEXIS 60077 at *5 ("A settlement before trial would obviate the need for either trial on the merits or a subsequent appeal. Accordingly, this factor weighs heavily in favor of certification."); *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 n.6 (9th Cir. 2005) ("[A]s the Supreme Court suggested in *Curtiss-Wright*, in a proper case settlement prospects might outweigh piecemeal appeal concerns."); *Loral Fairchild Corp. v. Victor Co. of Japan*, 931 F. Supp. 1044, 1047 (E.D.N.Y. 1996) (granting 54(b) motion in part because "resolution of the decided [patent infringement] issues on appeal may facilitate settlement with the remaining defendants").

PLAINTIFFS' MOTION FOR PARTIAL FINAL JUDGMENT                         **464**

16, 1999 (the effective date of the Siegel Terminations), DC attempts to have this Court ignore the previous six years of litigation in *Siegel*, by attacking the twin Shuster Termination in the *DC Comics* case, on many of the same grounds on which DC unsuccessfully attacked the Siegel Terminations in this case.

Aside from the point that DC is precluded from re-litigating these issues in the new *DC Comics* action under the "law of the case" doctrine, it would in any event be wholly inefficient for the parties and this Court to allow this litigation to "start over." *See* Defendant Marc Warren Peary, as Personal Representative of the Estate of Joseph Shuster's Motion to Dismiss and/or Stay Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6), to be filed by August 13, 2010, at 19-25. As Siegel and Shuster co-authored the Superman works in question, any decisions as to the validity and scope of the Siegel Terminations (which, in turn, implicate decisions as to which works are terminable because they are not "works for hire") logically apply with equal force to the Shuster Termination. *Id.*

Therefore, the entry of judgment pursuant to Rule 54(b) will also greatly streamline the *DC Comics* action, as this Court's prior rulings will thereby have collateral estoppel effect in that closely related action. *See Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) (approving district "court's orders [that] found preclusive the partial final judgment under Federal Rule of Civil Procedure 54(b)").[11]

With the *Siegel* case largely decided, DC's *DC Comics* action cannot be used as a vehicle to brush aside the past six years of hard-fought litigation at the expense of considerable judicial resources, or as a de facto "appeal" at the *trial court* level. The proper and most efficient forum for the immediate appeal DC seeks is not its belated new complaint, but clearly the Ninth Circuit.

///

---

[11] *See also Continental Airlines, Inc.*, 819 F.2d at 1525 ("[A] 54(b) ruling in fact has res judicata ramifications."); *Flores v. Emerich & Fike*, 2008 U.S. Dist. LEXIS 49385, at *28-29 (E.D. Cal. June 17, 2008) (where a court has "entered final judgment pursuant to Rule 54(b) … there has been a final judgment" for preclusion purposes).

### III. IN LIGHT OF THESE ISSUES, THIS ACTION SHOULD BE STAYED UNTIL RESOLUTION OF AN APPEAL

As a general principle, a district court possesses the inherent power to control its docket and promote efficient use of judicial resources. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

"If a district court certifies claims for appeal pursuant to Rule 54(b), it should stay all proceedings on the remaining claims if the interests of efficiency and fairness are served by doing so." *Doe*, 1993 U.S. Dist. LEXIS 12876, at *5 (citation omitted). *See also Matek v. Murat*, 862 F.2d 720, 732 n.18 (9th Cir. 1988) (affirming stay of proceedings after entry of judgment under Rule 54(b) pending the appeal); *Roe v. City of Spokane*, 2008 U.S. Dist. LEXIS 82528, at *17-18 (E.D. Wash. Oct. 16, 2008) (granting entry of judgment under Rule 54(b) and a stay, where holding a trial could "waste judicial resources as well as the resources of the parties and their counsel"); *De Aguilar v. AMTRAK*, 2006 U.S. Dist. LEXIS 11187, at *9–11 (E.D. Cal. March 2, 2006) (staying proceedings after entry of judgment under Rule 54(b) pending the appeal).

As both the validity and scope of the Siegel Terminations, and the specific copyrights thereby recaptured, control the results in the pending "accounting" trial, this Court should exercise its discretion to stay this action until the appeal of such underlying issues is complete.

///

Case 2:04-cv-08400-ODW-RZ   Document 678-16   Filed 08/31/10   Page 30 of 30   Page
ID #:13669
Case 2:04-cv-08400-ODW-RZ   Document 47-16   Filed 08/12/10   Page 29 of 29   Page
ID #:3564

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for entry of a partial final judgment under F.R.C.P. 54(b) should be granted in its entirety.

DATED:  August 12, 2010          TOBEROFF & ASSOCIATES, P.C.


By _____
             Marc Toberoff

Attorneys for Plaintiffs Joanne Siegel and
Laura Siegel Larson