# EXHIBIT R

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE OTIS D. WRIGHT

4        UNITED STATES DISTRICT JUDGE PRESIDING

5                    - - -

6

    Joanne Siegel, et al.,                )
7                      PLAINTIFF,          )
                                           )
8   VS.                                    )   NO. CV 04-8400 ODW
                                           )   NO. CV 04-8776 ODW
9   Warner Bros Entertainment, Inc., et)
    al.,                                   )
10                     DEFENDANT,          )
    _____)
11

12

13

14       REPORTER'S TRANSCRIPT OF PROCEEDINGS

15            LOS ANGELES, CALIFORNIA

16           FRIDAY, AUGUST 13, 2010

17

18

19      _____

20           KATIE E. THIBODEAUX, CSR 9858
             U.S. Official Court Reporter
21           312 North Spring Street, #436
             Los Angeles, California 90012
22

23

24                                    COPY

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4        TOBEROFF & ASSOCIATES PC
         BY:  MARC TOBEROFF
5        -and- NICHOLAS WILLIAMSON
         2049 Century Park East
6        Suite 2720
         Los Angeles, CA  90067

7

8

9    FOR DEFENDANT:

10       O'MELVENY AND MYERS LLP
         BY:  DANIEL M. PETROCELLI
11       -and- MATTHEW KLINE
         1999 Avenue of the Stars
12       Seventh Floor
         Los Angeles, CA  90067-6035

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

3

1          LOS ANGELES, CALIFORNIA; FRIDAY, AUGUST 13, 2010

2                          2:00 P.M.

3                          - - - - -

4

5

6

7          THE CLERK:  Counsel, please state your appearances

8     please.

9          MR. TOBEROFF:  Mark Toberoff, attorney for the

10    plaintiffs.

11         MR. WILLIAMSON:  Nicholas Williamson for the

12    plaintiffs.

13         THE COURT:  Yes.  Good afternoon.

14         MR. PETROCELLI:  Good afternoon, your Honor.

15    Daniel Petrocelli and Matthew Kline for the defendants.

16         THE COURT:  Good afternoon, Sir.  Afternoon.

17         THE CLERK:  Calling Items 4 and 5, CV 04-8400 and

18    CV 04-8776.

19         THE COURT:  Okay.  We are here for a status

20    conference on both of these matters.

21              Of course, the most intriguing thing is the

22    motion to certify this matter for an immediate appeal.

23    Ordinarily, I am not really crazy about that because it

24    seems that we relitigate a few issues then someone

25    appeals it, and then we come back, litigate a few more

1    issues and then that is subject to appeal.

2           However, what I am concerned about, and I will

3    wait until I receive the opposition papers to actually

4    make a decision on this, but I am concerned that we could

5    end up trying the accounting aspect of the case and find

6    that maybe we are proceeding on the wrong premise or the

7    scope should have been modified or altered in some way,

8    and that concerns me.

9           I certainly don't want to do anything twice.

10   It is bad enough that this case is six years old, and I

11   do want to bring it to some conclusion, but I guess I

12   will wait and hear what the rationale is for opposing the

13   Rule 54 motion.  Unless I can get a preview?

14          MR. PETROCELLI:  I think that is a cue, your

15   Honor.

16          THE COURT:  It was.

17          MR. PETROCELLI:  I have not reviewed the motion

18   yet but have discussed it generally, and, cutting to the

19   chase, then I will go back and try to give your Honor a

20   bit of a preview, it may make sense for us to oppose the

21   motion.  It has been set to be heard by the Court on

22   September 27th although it requires us to get our

23   opposition the day before the Labor Day weekend.  That

24   said, I think we can probably do that, but, if not, I am

25   sure we can work out an accommodation on the opposition.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          But it may make sense for us to brief that

2     issue so that your Honor can see the arguments and then

3     continue this status conference on the case to the 27th,

4     of course, dependent on how your Honor rules.

5          For example, if your Honor would deny that

6     motion, we would then proceed to have the status

7     conference, and I might suggest to the Court that in the

8     meantime rather than the parties simply await the ruling

9     and not get any work done, I would propose that the

10    parties meet and confer on the various issues that -- on

11    which we disagree in terms of how the case should

12    proceed, and try to come to some, either some agreement

13    or narrowing the issues and then presenting maybe another

14    set of documents to the Court proposing an approach.

15         We could do that on the 27th, and we would be

16    ordered to meet and confer before then.  We certainly

17    think that would be a reasonable away to proceed.

18    THE COURT:  And you still wish to proceed

19    regardless of what happens on the 54(b) motion?  You

20    still wish to proceed on the Superboy aspect or the

21    Superboy case this fall?

22    MR. PETROCELLI:  Certainly, that would be one of

23    the arguments as to why this request for a judgment --

24    and let me be real clear.  As I understand, your Honor,

25    the motion of the plaintiff, it is not a 1291 or 1292

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  certification.  It is a request for entry of final

2  judgment.

3          THE COURT:  Right.

4          MR. PETROCELLI:  And having taken a look at the

5  law, it confirmed what we already believed to be the case

6  which is that in these circumstances, we don't even have

7  disposition of a single one of the plaintiff's claims.

8          There is a claim, the principal claim is

9  one for declaratory relief that sets forth a bunch of

10  substantive rights as to which of the parties have

11  disputes and then asks for an accounting depending on the

12  resolution of those rights.

13          Judge Larson, before his retirement, decided

14  many but not all of the substantive issues related to the

15  declaratory relief claim, that is the count on which he

16  would like to have judgment entered and, of course,

17  nothing has been done whatsoever on the accounting issue.

18          Now, it, obviously when you think about it,

19  any time -- any and all claims have two basic components

20  to them, one is liability, and one is damages.

21          If every time someone asked to have a

22  liability determination reviewed on appeal on the theory

23  that, you know, if the defendant is right and the

24  plaintiff is wrong, we don't have to waste our time on a

25  damages trial, we, of course, would effect a sea change

1    in the jurisprudence of our country.  We would be having

2    piecemeal appeals on liability, and only if liability is

3    established, would we then come down and do a damages

4    case.

5              In large part, that is what is going on here.

6    It is our view that the accounting needs to occur to

7    complete just even one single claim for relief, and we

8    had found no cases in which someone is able to literally

9    go in and extract part of a claim for relief and try to

10   take that up on appeal not under the auspices of

11   certification because it presents a substantial ground

12   for difference of opinion or it is a novel question of

13   law but on the theory that a final judgment should be

14   issued.

15             And I suspect that even if everybody thought

16   that was a good idea including the Court, the Ninth

17   Circuit might actually have a different view of that, and

18   the courts of appeal are fully free to review a district

19   court's determination on whether to render a final

20   judgment on less than a claim for relief, and that is

21   what we would be dealing with right here.

22             There are a number of substantive issues that

23   Judge Larson left undecided.  I will give you

24   one example, and that demonstrates why we can't have a

25   54(b) judgment at this point.

1          One of the things that Judge Larson ruled in

2    favor of DC Comics was that there were some early

3    promotional materials in which the images of Superman

4    appeared.  The plaintiff lost any right or ability to

5    recapture any copyright interest in those early

6    promotional materials, and we now have to have a

7    determination that that was Judge Larson's ruling.  They

8    had not put it in their notice.  They had not included it

9    in the requisite documents to seek or effectuate the

10   termination.

11          THE COURT:  I take it there is some intrinsic

12   value in that simply because it is -- well, it is old, I

13   mean, no one is using it now; right?

14          MR. PETROCELLI:  Using what now?

15          THE COURT:  The earlier advertisements probably

16   dating back to 1938.

17          MR. PETROCELLI:  Here is the issue.

18          To the -- the early advertisements, and

19   frankly I wish I had photos of it to show, your Honor, to

20   the extent that that depicts the image, the cape, concept

21   of Superman, that does not belong to the plaintiff.  It

22   can't be recaptured, and, therefore, anything about

23   Superman that is just like what was on the promotional

24   materials is not subject to any right of recapture, and

25   is not part of what they are entitled to retrieve and get

1    an accounting for.

2            That issue is unresolved.  The Court still has

3    to make that judgment as to what impact Judge Larson's

4    ruling had that they don't have the right to recapture

5    the promotional material has on the balance of that

6    claim.

7            For example, you might conclude it renders the

8    rest of their claim invalid because the promotional

9    poster depicted the essential elements of the Superman

10   character, and therefore everything else is duplicative.

11   Everything else as to which the plaintiff has any right

12   to recapture is duplicative of what is on the promotional

13   poster.  The promotional poster came first.  They had no

14   right to terminate it.  In effect, they have no rights.

15   That issue remains to be decided.

16           And it is way too premature to be taking up

17   parts of the Court's ruling when we don't even have an

18   overall substantive ruling on the declaration of rights,

19   let alone the rest of the claim on the accounting issues.

20       THE COURT:  Before you go on, I was curious about

21   this, the early advertising material which I suppose was

22   advertising the eminent launch of the Superman concept or

23   comic book and comic strips, et cetera.

24           So when I read about an accounting with

25   respect to -- let's call it those works of art, I am

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

**479**

1    baffled.  If it is strictly what it says, advertisements,

2    that these things, these advertisements themselves

3    weren't sold, what are we looking at?  Are we going to

4    try to speculate as to what revenues were generated as a

5    result of the advertisements?

6        MR. PETROCELLI:  On that issue, your Honor, it is

7    slightly different.

8        THE COURT:  Okay.

9        MR. PETROCELLI:  And the issue that remains for

10    resolution by this Court with respect to promotional

11    material is whether the unprotected promotional material,

12    that is the promotional material as to which plaintiff

13    has no right --

14        THE COURT:  Okay.

15        MR. PETROCELLI:  -- because of Judge Larson's

16    ruling, envelopes everything else that they are claiming

17    they have a right to.  So, for example, if you concluded

18    looking at the promotional material, you know what, this

19    sure looks like Superman to me, I see the cape, I see the

20    guy flying, et cetera, they are claiming they have the

21    right to the cape and the guy flying.  Uh-huh.

22    Promotional material came out first.  They don't have the

23    right to the promotional material.  It swallows up

24    anything that they might have the right to recapture.  We

25    first have to close off that issue before we even get to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    talking about accounting issues.

2         THE COURT:  I don't want to go back in and try to

3    redo what Judge Larson has done, but I have to assume

4    that he said that -- and I haven't looked at it.  I just

5    assumed that the promotional material wasn't recaptured

6    because it wasn't claimed not because it depicts

7    something separate and distinct from the Superman image

8    and the concept.

9         I assume that it is the, you know, the man in

10   the blue tights and the red cape and the big red S, that

11   it is Superman, perhaps not as we know him today, but it

12   was Superman and it was promoting what Mr. Schuster

13   and --

14        MR. PETROCELLI:  Siegel.

15        THE COURT:  -- Siegel, their concept.  We are

16   talking something different; right?  Now, just because it

17   hasn't been recaptured doesn't mean that somehow

18   everything that followed, you know, must meet the same

19   fate.  That isn't your argument, is it?

20        MR. PETROCELLI:  Well, to be clear, Judge

21   Larson -- and I don't have the ruling in front of me, and

22   I do not want to misquote it -- Judge Larson ruled that

23   that is an issue that has to be determined still in the

24   case and that he was going to determine before he

25   retired.  This is not a question -- that is the question

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that we have now been discussing about the promotional

2    material, this is not a question as to which we are

3    asking for any kind of reconsideration or revisiting.

4    This is a question that Judge Larson explicitly left

5    unresolved at the time of his retirement as he did a

6    number of other issues to be continued in the case.

7         THE COURT:  Okay.

8         MR. PETROCELLI:  Okay.  And, indeed, the issue as

9    I understand it that was left unresolved was whether the

10   appearance of Superman in this promotional poster as to

11   which the plaintiff cannot and did not claim any rights

12   effectively negates any rights that they do claim.  You

13   asked me why they didn't claim.  I don't know the answer

14   to that either.  They may have believed they didn't have

15   any right to claim it, or they may have inadvertently

16   omitted to claim it.  I don't know the answer to that.

17        And Judge Larson simply concluded that

18   whatever the reason is -- maybe he did deal with their

19   reasons -- they didn't have the right to it.  And it

20   wasn't an incidental or unintentional ruling because as

21   Judge Larson framed the issue, it now has to be

22   determined by this Court or by him had he stayed on the

23   bench to what extent does the plaintiff's lack of right

24   over that promotional material effect any of the rights

25   they do seek to recapture.  So that is an issue that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    remains to be decided.

2         THE COURT:  I am assuming that they did not, they

3    weren't responsible for the graphic design of that

4    promotional material, that that was done, I don't know,

5    by DC comics or whoever.  It wasn't done by them.

6         MR. PETROCELLI:  I don't know if that is correct.

7    You are getting a little ahead of me on the learning

8    curve here.  You are catching up faster than I am.

9         THE COURT:  Oh, no.  I doubt that seriously.  I

10   doubt that seriously.  Let me just do this.  Both sides

11   have raised a number of concerns about matters that have

12   been briefed, fully briefed and submitted to the Court,

13   and have not yet been decided.  And, obviously, we

14   can't -- that can't continue.

15        Okay.  I am going to have to get my arms

16   around this and deal with those issues, and there are

17   other issues that apparently have been briefed.  And what

18   I want to do is I want to take a look at -- and I

19   understand that just the opinions and the minute orders

20   that have already been issued in this case are really

21   extensive which is daunting.

22        But at the very least, I would certainly

23   request that the attorneys get together and jointly

24   provide me with just the docket numbers of things that I

25   need to be looking at that have gone wanting that we need

1    to decide.  And I will get your papers, you know, in

2    terms of the 54(b), and we will make a decision on that.

3           Now, I would like to hear from the plaintiffs

4    whether or not you can reasonably foresee a scenario

5    where we could go ahead with the trial on the accounting

6    and then later find out that somehow our trial proceeded

7    under parameters that were incorrect because, I don't

8    know, maybe the scope of the recapture.  I don't know.

9           But if Mr. Petrocelli's rationale is indeed

10   sound, if there has been a determination that the

11   creator's rights have been recaptured, then why can't we

12   now proceed with an accounting to determine the scope of

13   the damages, and then at the end of the day, then I

14   suppose everyone can appeal.  They can appeal the

15   liability determination.  They can appeal the scope of

16   the damages as determined by the conclusions of the

17   accounting trial.

18          Do you foresee a situation where we could

19   proceed with the accounting aspect of the trial and just

20   find out later on that, oops, somehow the scope of that

21   trial was wrong and needs to be redone?

22          MR. TOBEROFF:  Your Honor, regarding the 54(b)

23   motion, actually, after research, we found that 54(b)

24   motions are routinely granted by district courts, and

25   they differ from a motion to certify under 28 USC -- I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  think it is 1292 -- in that, at that point, the Ninth

2  Circuit will hear it.  The normal challenge to this sort

3  of thing is, well, it is a piecemeal appeal, but by

4  definition a 54(b) says we understand it is an interim

5  appeal, but it is a good reason for the interim appeal.

6          And that reason in those cases which grant a

7  54 motion is always pretty much the same that these are

8  core decisions, and in this case, those core decisions

9  were made in three exhaustive published opinions, a

10  couple of which are 70 pages long.  So these were

11  thoroughly adjudicated and have all the indicia of a

12  final judgment except by -- they are not final for the

13  sole reason that they were motions for partial summary

14  judgment.

15          So essentially a 54(b) motion doesn't render a

16  final judgment in the entire case.  It reduces those

17  decisions to judgments which can then thereby be

18  appealed.  The reason, and I think you caught this right

19  away for doing that is if there are errors --

20  essentially, the accounting phase says what are the

21  profits they own from the copyrights that have been

22  recaptured?  And the copyrights that have been recaptured

23  is something that is decided on the basis of another

24  issue, and that is which works were works for hire and

25  which works were not works for hire.

1          The works that were not works for hire are

2    subject to recapture.  That decision as to whether or not

3    some thing is work for hire or or not work for hire is a

4    very fact-intensive complicated decision where you are

5    applying rules under the 1909 Copyright Act.  It is

6    pretty intense.

7          And both sides have indicated, made motions

8    for reconsideration and indicated their intent to appeal

9    that.  Given the -- so if there are errors in any aspects

10   of those decisions, and considering the fact-specific and

11   detail-intensive nature of those claims, there is a good

12   chance the Ninth Circuit will decide certain things

13   differently.  If that happens, the accounting trial which

14   defendants have said is quite complex will have to be

15   retried all over again.

16         But there is another reason why a Ninth

17   Circuit appeal at this juncture is important, and that is

18   the Superman copyrights are obviously extremely valuable,

19   and defendants are a major, major corporation with

20   considerable resources.  That leads one to believe

21   that -- and this case has -- the terminations were filed

22   in 1997, and they became effective in 1999.  So the

23   Siegels have been owed money since 1999 and haven't been

24   paid anything, and this trial has gone on for almost

25   six years.

 1          If you put all that together, you are left

 2    with the conclusion that defendants and plaintiffs are

 3    probably not going to reach a settlement at the trial

 4    court level until these issues are tested at the Ninth

 5    Circuit.  And so by allowing that to happen at this very

 6    juncture, it not only puts this case in a condition that

 7    it can be tried once by your Honor, but greatly increases

 8    the likelihood of a long-awaited settlement of this case.

 9          As far as the discussions regarding

10    promotional ads, I have to make some --

11          THE COURT:  Before you get there.

12          MR. TOBEROFF:  Sure.

13          THE COURT:  Let's go back to the first issue.  So

14    it is possible that if we go ahead with the accounting

15    aspect of this case, we are going to come up with a

16    number.  All right.  You are saying it is possible that

17    that number may be an error because the Ninth Circuit may

18    revisit and reverse determinations that were made upon

19    whether or not these particular drawings were works for

20    hire or not, and this may have a significant impact upon

21    the total damages that we are looking at in this case.

22    Okay.

23          MR. TOBEROFF:  Exactly.

24          THE COURT:  That is what I was looking for.  I was

25    looking to find out if precisely or even in general, what

1    is it that we are looking at that we need to get firm

2    clarification on from the Court of Appeal so that going

3    forward, what we are doing will mean something.

4         MR. TOBEROFF:  I think it is centrally two issues.

5    Which works were works for hire, and which were not.  And

6    there is the other major issue as to whether the very

7    fact-intensive issue of whether work is a work for hire

8    which depends on the intent of the parties at the time

9    they entered into the relationship should be decided by

10   the trier of fact or should have been decided on summary

11   judgment.

12        THE COURT:  Was this one of the issues that -- the

13   suggestion had been made that perhaps we may have an

14   advisory jury?

15        MR. TOBEROFF:  No.  The advisory jury issue is an

16   issue -- the advisory jury was suggested for issues of

17   determining what are the literary Superman elements

18   contained in the recaptured copyrights since that is a

19   matter of individual impression.  And since you are

20   dealing with profits generated by certain Superman

21   elements, i.e., what attracts people to Superman, that is

22   also something that your Honor might be able to benefit

23   from the reactions of a cross-section of the audience.

24   That is what the advisory jury was about.

25        THE COURT:  All right.  That is something to talk

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  about.

2      MR. TOBEROFF:  On the promotional ads, I need to

3  correct Mr. -- certain misstatements that were made by

4  Mr. Petrocelli.  It is not so that Judge Larson did not

5  rule regarding the contents of the promotional ads.  He

6  specifically did in one of his published rulings, and I

7  can read you a small portion of it.

8      What happened is that the promotional ads are

9  something that unless -- that the Siegels, when they did

10  their termination notices and they were represented by

11  counsel in Washington, looked up at the copyright office

12  every single Superman work, and if you look at the

13  termination notices, they are yay high, and they did

14  exhaustive research.  But advertisements appear in a page

15  in a magazine that has some different title.  It doesn't

16  say Superman.  It says Zorro or some other character.

17      So they had no way of finding searching under

18  Siegel and Schuster or searching under Superman these ads

19  at the copyright office so for that reason they didn't

20  elicit a termination notice.  Judge Larson found that for

21  technical reasons, the ads were not terminated but after

22  so holding, he went out of his way to point out that the

23  ads which merely contained a black and white picture of

24  the Action Comics Number 1 cover which was recaptured,

25  and so it is redundant of something that actually was

1   recaptured, has very little significance.  And he went

2   out of his way to say, yes, you have got the ads back,

3   but there is nothing in the ads.  They are a hard-to-read

4   black and white depiction divorced from the story of

5   Superman.  So a person in -- running around in black and

6   white tights with a cape, you don't know if he is a good

7   guy, a bad guy, you don't even know he is Superman.

8          What you see is what you get, and what you see

9   is something completely divorced from the Superman story.

10  So after saying on a technicality that the ads weren't

11  included, he made crystal clear in his published

12  decision, and I can point you to the page number.  The

13  cite is 542 F.Supp.2d 1098, on page 1126, where he says:

14         "This leads to the question of the scope of

15  the copyrighted material remaining in defendant's

16  possession by way of the promotional announcements, a

17  question that defendants themselves acknowledge," quote,

18  "is most obviously answered by looking at the ads which

19  speak for themselves."

20         "The Court begins by observing what is not

21  depicted in the announcements, obviously, nothing

22  concerning the Superman storyline, that is the literary

23  elements contained in Action Comics Number 1, paren,

24  which was recaptured is on display in the ads.

25         "Thus Superman's name, his alterego, his

1  compatriots, his origins, his mission to serve as the

2  champion of the oppressed or his heroic abilities in

3  general do not remain within defendant's sole possession

4  to exploit.

5          "Instead, the only copyrightable elements left

6  arise from the pictorial illustration of the

7  announcements which is fairly limited.  The person in

8  question has great strength.  He is, after all, holding

9  aloft a car.  The person is wearing some type of costume,

10  but, significantly, the colors if any for the same are

11  not represented as the advertisement appears only in

12  black and white.

13          "The argument that the S crest is recognizable

14  in the promotional advertisements is not persuasive.

15  What is depicted on the chest of the costume is so small

16  and blurred as to not be readily recognizable.  At best,

17  all that can be seen is some vague marking or symbol, its

18  precise contours hard to decipher.

19          "The Court, thus, concludes that defendants

20  may continue to exploit the image of a person with

21  extraordinary strength who wears a black and white

22  leotard and a cape.  What remains of the Siegel and

23  Schuster Superman copyright that is still subject to

24  termination, of course, what defendants truly seek is the

25  entire storyline from Action Comics Number 1, Superman's

1    distinctive blue leotard complete with its embroidered

2    triangular crest across the chest with a red S on a

3    yellow background, a red cape and boots and his

4    superhuman ability to leap tall buildings, repel bullets

5    and run faster than a locomotive, none of which is

6    apparent from the announcement."

7            So not so that Judge Larson did not rule as to

8    the effect of the ads after saying on a technicality that

9    it is not in the termination.  He said, but it is not

10   that relevant because the ads are a strong man in black

11   and white running around in leotards and a cape.  That is

12   not Superman.

13           I -- I think the best way, and I understand

14   that there is a massive record here.  I think the best

15   way for your Honor to be able to most quickly come up to

16   speed on this fairly complex case is actually to read

17   those three published opinions if you haven't already

18   done so because they really lay this stuff out

19   exhaustively, and it is because these opinions -- I will

20   just wait.

21           (Pause in proceedings.)

22       MR. TOBEROFF:  And one of the good reasons for

23   54(b) entry of judgment is because the analysis in these

24   opinions as you can see from the little section I have

25   just read, it is so exhaustive that that is another very

1  good reason for the granting the 54(b) motion.

2          THE COURT:  Okay.  All right.

3          MR. PETROCELLI:  Your Honor, may I make just

4  one brief response?

5          THE COURT:  Yes.  Mr. Petrocelli.

6          MR. PETROCELLI:  Thank you.

7          I just want the Court to understand that in

8  the discussion about the promotional poster illustrates

9  precisely the point I was trying to express to your Honor

10  prior to Mr. Toberoff, that Judge Larson made a decision

11  about the promotional poster, but he left unresolved for

12  the Court to determine the impact that decision has on

13  the scope of the rights.

14          This is not an accounting issue.  This is a

15  substantive issue, and it is one that is one of the open

16  issues that this Court can -- must decide.

17          And to illustrate the point, in December,

18  2009, prior to my coming into the case, I came in just a

19  couple of months ago, Mr. Toberoff and prior counsel

20  filed a joint stipulation with the Court, with your Honor

21  following Judge Larson's retirement.  They identified in

22  the joint stipulation a number of issues to be decided by

23  this Court that Judge Larson left unresolved.  On Page

24  16, and I promise I am only going to read one short

25  paragraph, Ms. Reporter, and I will do so slowly.

24

1           "Mr. Toberoff stipulated as follows:  Both

2      parties respectfully request, however, that the Court

3      determine the remaining undecided additional issues which

4      the parties briefed in 2008 because such additional

5      issues define the contours of the pending accounting

6      trial, the parties cannot properly prepare for trial

7      prior to a determination of the additional issues.

8           "The additional issues are not in limine

9      motions and have far too large an impact on the trial to

10     be decided like in limine motions only days before trial.

11     These remaining additional issues include" -- and the

12     first one listed, and it is the only one, I will read

13     right now, is as follows:

14           "The impact, if any, that defendant's

15     pre-Action Comics Number 1 promotional announcements have

16     on the scope of plaintiff's recaptured copyrights."

17           And that was precisely the point that I was

18     endeavoring to make prior to Mr. Toberoff taking the

19     podium which is that while Judge Larson issued rulings on

20     the subject of the promotional announcements, part of

21     which Mr. Toberoff read out loud.  As Mr. Toberoff

22     himself stipulated to, your Honor, just a couple of

23     months ago, a significant liability issue, not a damages

24     issue remains to be determined that bears on the scope of

25     plaintiff's recaptured copyrights.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

25

1          And that, by way of example, is the
2  promotional issue.  But there are other examples as well.
3          And I only point that out, your Honor, to
4  illustrate that and, again, I am at a disadvantage
5  because I haven't even read the 54(b) motion.  And I have
6  just had some very general discussions about it in the
7  meet-and-confer sessions, but I am quite confident that
8  the law quite clearly provides that you can't extract
9  issues, you know, within a single claim for relief.
10          We don't even have all the liability issues
11  determined including among others this one related to the
12  promotional issues, let alone carving out the liability
13  from the accounting issues, let alone other issues in the
14  case including affirmative defenses and cross-claims and
15  so forth.
16          So I guess where we are, your Honor, is we
17  will respond to the motion.  We are supposed to be here
18  on the 27th, but, again, I would like an opportunity to
19  sit down with opposing counsel and file some kind of
20  either 5-page document or 10-page, each side indicating
21  each side's position to the Court were the 54(b) motion
22  to be denied so that we don't have to come back yet
23  another two months later and see where we are.
24          There is a number of issues that we already
25  have joined on and that we ought to frame for the Court

26

1    and identity for the Court.  In addition, we would make

2    available to the Court before then the various docket

3    numbers and rulings that your Honor has identified.

4        THE COURT:  Please.

5            What I understood from Mr. Toberoff was that

6    the advertisement which appeared in black and white, I

7    guess, lacked a certain -- I haven't seen it.  I suppose

8    it lacked a certain amount of clarity for one to be able

9    to say that, yes, this captures the feel and the spirit

10   of Superman as we know it.  And that sort of undercuts, I

11   guess your argument that, well, if you weren't able to

12   recapture the advertisements, then everything that came

13   after that, we will just say derivative of that is also

14   lost to you.

15       MR. PETROCELLI:  You have essentially identified

16   both sides of that single issue, but the overriding point

17   I am making here is Judge Larson has not decided that

18   issue, and that is the issue he left for your Honor to

19   decide.

20       THE COURT:  Well, if I see pictures, I will decide

21   it because you all have been -- the parties have been

22   waiting too long.

23       MR. PETROCELLI:  And I guess the reason why we got

24   into a discussion about that issue is that is one case

25   among, I submit, many others why any attempt to issue a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    partial judgment at this point would not be warranted

2    because the issues have to be decided yet before you have

3    a sufficient ruling that is capable of constituting a

4    final judgment to be reviewed on appeal.

5           But, your Honor, again, we are going to file a

6    fullsome opposition on this and set forth the law and all

7    the reasons why we think that any kind of piecemeal

8    appeal at this point is not legally or factually

9    warranted.

10          THE COURT:  Okay.

11          MR. PETROCELLI:  Thank you.

12          THE COURT:  Anything further, Sir?

13          MR. TOBEROFF:  Yes.  Just briefly, your Honor.

14          First of all, in terms of the 54(b), the date

15   set in 54(b) motion, Mr. Petrocelli claimed that the

16   return day for their opposition falls right before the

17   Labor Day weekend.  In fact, the date for the hearing

18   could originally have been set for September 13th, and

19   because Mr. Petrocelli's partner, Mr. Kline, was going on

20   a vacation, without him even asking us, and this would

21   have required the opposition to be drafted while he was

22   on vacation, we set the date for September 27th.  That

23   gives them three weeks instead of two -- three weeks and

24   a day to do their opposition, so even discounting the

25   Friday before Labor Day, they have three solid weeks to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

28

1  do their opposition, and I see no real reason to change

2  that 27th date.

3      THE COURT:  Can you accomplish that, Sir?

4      MR. PETROCELLI:  Oh, yes, your Honor.  I wasn't

5  suggesting we continue it.

6      THE COURT:  Let me make something clear.  You all

7  don't know me.

8          This kind of thing, you know, little tit for

9  tat, this arguing about a day here, a day there and

10  cooperate with me in granting me, you know, one more day

11  to provide an opposition, all the rest of that which I

12  really think falls under the category of extending

13  professional courtesies to one another -- the case,

14  certainly a case of this magnitude, does not turn on that

15  foolishness, nor will I permit it to turn on that

16  foolishness.  We are done.

17      (The proceedings were concluded.)

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**498**

1

2                                CERTIFICATE

3

4

5    I hereby certify that pursuant to Section 753, Title 28,

6    United States Code, the foregoing is a true and correct

7    transcript of the stenographically reported proceedings held

8    in the above-entitled matter and that the transcript page

9    format is in conformance with the regulations of the

10   Judicial Conference of the United States.

11   Date:    8/24/10

12

13

14   _W. Thibodeaux_

15

16   Katie E. Thibodeaux, CSR No. 9858

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

**499**