KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 rkendall@kbkfirm.com
Laura W. Brill (195889)
 lbrill@kbkfirm.com
Nicholas F Daum (236155)
 ndaum@kbkfirm.com
Nathalie E. Cohen (258222)
 ncohen@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone:  310.556.2700
Facsimile:   310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics, <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV 10-3633 ODW(RZx) <br><br> **DISCOVERY MATTER** <br><br> **SUPPLEMENTAL MEMORANDUM OF LAW RE DEFENDANTS' MOTION FOR PROTECTIVE ORDER** <br><br> Hon. Honorable Otis D Wright, II <br> Hon. Ralph Zarefsky, U.S.M.J. <br><br> Date: September 20, 2010 <br> Time: 1:30 p.m. <br> Crtrm.: 540 <br><br> Complaint Filed: May 14, 2010 |

DC ignores the Court's clear statement defining the term "escrow documents" as equivalent to the terms "Whistle-blower Documents" and "stolen documents."

> I won't call them stolen documents. I'm not denying they're stolen, I'm not saying they're whistleblower documents; I'm just trying to find a neutral term, so I'm calling it 'escrow'. Escrow is usually a neutral term. All right.

Cohen Decl. Ex. 24 at 677:9-13. The terms "stolen documents" and "Whistle-blower Documents," both referred to the same thing, *i.e.*, the documents stolen from Mr. Toberoff's law firm, as distinct from the "cover letter." Joint Stip. ("JS") 17. The Court's April 30, 2007 Order imposed various requirements and consequences with respect to the "escrow" documents, but none with respect to the separate "cover letter." This made sense, because DC's motion to compel, on which the Court acted, sought to compel only "Whistle-blower Documents," not the separate "cover letter." DC itself admitted, through its "escrow" attorney, who it retained and paid, that the "undated defamatory cover letter" "do[es] not seem to be directly encompassed by the transcript or Magistrate Judge Zarefsky's Order." Cohen Decl. Ex. 17 at Ex. G (Eisen May 24, 2007 letter). Because there was no order as to the cover letter, there could be no waiver under FRCP 72(a) regarding the cover letter.

It is undisputed that when a court has not ruled on an issue, the law-of-the case doctrine does not apply. JS 29; 40-61. DC admits that the Supreme Court approves of protective orders to guard against the spillover effects of contested discovery rulings pending appeal. JS 56:12-18. That is what Defendants seek here.

## A.    This Court Can, and Should, Limit the Use of the Timeline

DC suggests that the mere fact that the Timeline has been *disclosed* means that it is entitled to *use* it in any manner it sees fit. DC cites no authority, however, that limits a court's inherent authority to control its own proceedings by preventing the use of a document in discovery. Indeed, courts have strongly rejected DC's argument that *Kirshner* prohibits a court from using its equitable powers to control its own proceedings, especially where the use of unlawfully obtained documents is at issue. *Smith v. Armour Pharmaceuticals Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla.

57083.1

1

SUPPLEMENTAL MEMORANDUM RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER

1993). Courts clearly have the power to prevent a party from reaping a litigation advantage based on documents that are either stolen or that otherwise owe their existence to ethical violations or criminal misconduct.[1]

**B.      Defendants Never Waived Their Objection to the Use of the Timeline**

DC contends that defendants "agreed that the Timeline could be [publicly] filed . . . in the *Siegel* actions." (emphasis in original). JS 4:24-25; *see also id.* 43:19-20. This is false. DC and Warner filed the Timeline, Seto Decl. Ex Z at 337-44, over the Siegels' objection, Seto Decl. Ex. Y at 270 & 330. It is not the case that when one party includes an illicit document as an exhibit to a joint stipulation under Local Rule 37-2, the other party somehow "agrees" to its use in a subsequent action.

In the *Siegel* action, far from waiving the need for an order preventing DC from taking unfair advantage of the Timeline, when DC and Warner sought to reopen discovery in the *Siegel* action based on the Timeline, the Siegels *successfully opposed* that motion, and Judge Larson did not allow the discovery. Seto Decl. Ex. AA at 355:6-7. There has been no use of the document in discovery in the *Siegel* action, including in depositions.[2] DC's contention that Defendants were required to obsessively burden the Court with motions seeking to bar use of the document in the

---

[1] The issue in *Kirshner v. Uniden Corp. of Am.* was limited to "whether Rule 26(c) empowers a district court to order a party *to return* privileged documents obtained by his attorney through discovery in a separate action" (emphasis added); the case did not address a court's power to control the use of documents in its own proceedings. 842 F.2d 1074, 1079 (9th Cir. 1988). *United States v. Comco Mgmt. Corp. of Am.*, on which DC relies, acknowledged *Kirshner* yet still used its inherent authority to grant defendants' motion to require plaintiff – the IRS – to return privileged documents that had been turned over by a third-party to the IRS and to prevent use of such privileged documents. 2009 WL 4609595, *2-4 (C.D. Cal. Dec. 1, 2009) (noting that the court's authority did not turn on the nature of the IRS attorney's involvement in obtaining the documents). *See also Lahr v. Fulbright & Jaworski*, 1995 WL 17816334, *2 (N.D. Tex Oct. 25, 1995) (citing *Kirshner* but nonetheless holding that "a court may use its equitable powers to limit the use of the documents" in a case before it). DC's other cases (JS 54-55) do not address protective orders limiting the use of documents in discovery.

[2] DC's claim that Judge Larson "rejected" a request that the Timeline not be used outside of the *Siegel* action, JS 45:6-7, is wrong; there was no such ruling.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57083.1

2

SUPPLEMENTAL MEMORANDUM RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER

*Siegel* action after discovery was closed in order to prevent use of the Timeline in discovery in an unknown future action has no merit in logic or in law.

In <u>this</u> action, Defendants promptly began the meet and confer process to obtain a parallel order restricting use of the Timeline in discovery in the very same meeting at which DC disclosed its plan to interrogate witnesses regarding the document. DC can give no reason why the Siegels should have fully litigated the question of the Timeline's use in discovery outside the *Siegel* action before any other lawsuit was even filed and before DC disclosed its new discovery plan.

Nor is there any legitimate value of the document to DC. DC has and can use any nonprivileged document it wishes. Any incremental value from the Timeline is either based on privileged information or DC's desire to exploit the Timeline's malicious spin against parties as to whom the attorney-author-thief breached his ethical obligations in creating the improper document. The legal and equitable issues regarding the Timeline are thus very different from those relating to the underlying documents.

C.     **The Timeline Did Not Need To Appear On Any Privilege Log**

Also false is DC's contention that the document should have appeared on a privilege log in the *Siegel* action. JS 45-46. The Siegels had no obligation to log it because they did not prepare the document, and it was not in their possession, custody, or control. The only document DC cites to support its argument that the escrow attorney sent the Siegels a copy of the Timeline shows that he did not do so. Seto Decl. Ex. D. Mr. Toberoff was also under no logging obligation of his own. JS 16. Nor would the Siegels or Mr. Toberoff naturally log the Timeline in any event, because unlike the underlying materials, it is not their document and was not transmitted for the purpose of giving legal advice. It is simply a "hit piece."

D.     **DC Distorts the Record in Contending that the Court Ruled on the Timeline at the April 30, 2007 Hearing**

DC's contention that the Court already ruled on the Timeline at the April 30,

2007 hearing, and that Mr. Toberoff so conceded in a subsequent filing, does not stand up to scrutiny. As noted on page 1, above, the parties repeatedly distinguished between "stolen"/"Whistle-blower" documents, on the one hand, and the "cover letter," on the other. The Court's April 30, 2007 ruling, as DC's own "escrow" attorney understood, did not address the cover letter. Cohen Decl. Ex. 17 at Ex. G.

DC's response is to sow confusion, contending that the motion heard on April 30, 2007, sought to compel production of "any document that the escrow agent possessed." JS 49:12-13. But, as DC's own citation to pages 103-104 of Exhibit J to the Seto declaration makes clear, that is not correct. The motion was directed at the stolen "Whistle-blower Documents," not "any document that the escrow agent possessed." JS 17. DC then further obscures the record, stating that Mr. Toberoff filed a declaration confirming that the "requisite documents" had been produced or listed on privilege logs, erroneously implying that DC's newly minted term, "requisite documents," refers to its other new phrase, "any [non-privileged] documents that the escrow agent possessed," and that Mr. Toberoff's declaration was untruthful. JS 49:17-18.

In fact, Mr. Toberoff expressly stated in his May 21, 2007 declaration his view that Judge Zarefsky's April 2007 Order and the motion that gave rise to it concerned "documents stolen from my law offices ('Documents')," JS 51:4-6, and that he was complying with that order by accounting for all such "Documents," JS 51:8. The fact that Mr. Toberoff's declaration went beyond the April 30, 2007 Order and also identified the bates range of the cover letter, which was not a document stolen from his law office and which was not the subject of the motion to compel, is neither here nor there and certainly cannot alter the nature of the motion that gave rise to Judge Zarefsky's Order or the Order itself.[3] The misimpression DC

---

[3] DC misquotes Mr. Toberoff's May 21, 2007 letter as stating that "[a]ny documents not identified in my Declaration as listed in a privilege log or previously produced to Defendants are to be produced . . . ." JS 53:7-9 (misquoting Seto Decl. Ex. P).

57083.1

4

SUPPLEMENTAL MEMORANDUM RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

creates here, in shifting from "Documents" to "documents," and from "Whistle-blower Documents" to "requisite documents" to "any [non-privileged] documents that the escrow agent possessed," is part of the same pattern of confusion that led to Judge Larson's incorrect law-of-the-case ruling in the first place, and will be subject to review on appeal to the Ninth Circuit.[4] Until that happens, the document should not be used in discovery in this action.

Dated:  September 13, 2010         KENDALL BRILL & KLIEGER LLP

                                    By:  /s/ Laura W. Brill
                                         Attorneys for Defendants Marc Toberoff,
                                         Pacific Pictures Corporation, IP Worldwide,
                                         LLC and IPW, LLC

---

In fact, Mr. Toberoff did not use the lowercase "documents," but rather the defined term, "Documents," meaning, documents "stolen from [his] legal files." Seto Decl. Ex. P.

[4] Similarly misleading is DC's suggestion that Judge Zarefsky "[f]ound" that Warner's in-house counsel committed no ethical violation. JS at 40. The Judge's fleeting oral comment contains no such finding. Nor could it since the law is to the contrary. *See* JS 9-11. The Magistrate Judge's oral impression, which lacked the formality of findings of fact or conclusions of law, is not a "defect in [an] order" that requires objection under FRCP 72(a). Otherwise every minor disagreement with views a Magistrate Judge expresses at a hearing would have to be the subject of formal objection, even if the Judge's order is otherwise acceptable. *Cf. Wolfson v. Brammer,* 2010 WL 3191159, *15 (9th Cir. Aug. 13, 2010) (no collateral estoppel based on isolated line in district court order). Moreover, Rule 72(a)'s limitations on the "assign[ment] of error" applies only to a "party," and there can be no waiver under Rule 72 based on lack of objections by a non-party.

In any event, the views on which DC relies were based on representations by DC that later proved to be false, including that Mr. Smith had not reviewed the documents in detail, when in fact he was able to recall them in substantial detail two years later. JS 11:12-17; Cohen Decl., Ex. 10 at ¶ 5. Nor could these views take into account the manner in which Warner would seek to take unfair advantage of this detailed recollection and of their retention of the purportedly "neutral escrow" attorney in further proceedings. JS at 25 n. 10; Cohen Decl. Exs. 30, 32 at 793:2-796:23; 797:22-798:12; 818:17-827:5.

Judge Larson's statements concerning post-litigation documents, JS 53, are subject to reversal on appeal and are contradicted by the record. JS 24-25, 29-30. These statements therefore provide no basis upon which to deny a protective order. DC's suggestion that the Timeline does not qualify as a post-litigation document, JS 52, is refuted by the Timeline itself, which refers to the litigation. *See* Complaint, Ex. A at 6. The fact that Mr. Toberoff did not describe the Timeline as a post-litigation document in his declaration, when it clearly was created after the litigation began, simply supports the point that Mr. Toberoff did not regard the April 30, 2007 Order as requiring claims of privilege to be asserted as to the Timeline.