KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  *rkendall@kbkfirm.com*
Laura W. Brill (195889)
  *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
  *ndaum@kbkfirm.com*
Nathalie E. Cohen (258222)
  *ncohen@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   310.556.2700
Facsimile:   310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics, | Case No. CV 10-3633 ODW(RZx) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING DATES ON RELATED DISCOVERY MOTIONS** |
| v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | **DECLARATION OF LAURA W. BRILL FILED CONCURRENTLY HEREWITH** |
| | Judge:  Honorable Otis D Wright, II |
| | Magistrate:  Honorable Ralph Zarefsky |
| Defendants. | Date:    September 20, 2010 |
| | Time:    10:00 a.m. |
| | Complaint Filed:    May 14. 2010 |

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................... 1

II.    PROCEDURAL BACKGROUND ......................................................... 3

       A.     DC Delays This Lawsuit, And Defendants Have Sought A
              Prompt Ruling On The Legal Deficiencies Of The Complaint .............. 4

       B.     DC Demands That Duplicative Depositions Proceed ............................ 5

III.   ARGUMENT ......................................................................................... 8

       A.     The Relief Sought by DC is Unworkable ............................................. 8

       B.     DC's *Ex Parte* Application Should Be Summarily Denied As
              Procedurally Improper. .......................................................................... 8

       C.     The Relief DC Seeks Will Create Unnecessary Burdens .................... 10

              1.     DC's November Deposition Dates And October 25
                     Hearing Date Make No Sense ...................................................... 10

              2.     The Motion to Compel Production Of Documents Is
                     Hypothetical And May Be Narrowed By An Early Ruling
                     On The Pending Motions ............................................................. 12

              3.     DC's Fall-Back Position Imposes Unnecessary Burdens .......... 12

IV.    CONCLUSION ..................................................................................... 13

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Jamdat Mobile Inc. v. Jamster Int'l Sarl Ltd.*,
    2005 WL 5960924, *1 (C.D. Cal. Oct. 4, 2005) ...................................................8

*Lai v. Quality Loan Serv. Corp.*,
    2010 WL 2228507, *2 (C.D. Cal. June 2, 2010) ...............................................9

*Mission Power Eng'g Co. v. Cont'l Cas. Co,.*
    883 F. Supp. 488 (C.D. Cal. 1995)..............................................................8, 9

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

# I.    <u>INTRODUCTION</u>

The *ex parte* application filed by DC Comics ("DC") represents the latest in a series of abusive discovery "emergencies" manufactured by DC.  The application is nothing more than a brazen attempt to conceal the utter lack of merit of DC's "Motion to Initiate Discovery," currently set for hearing on September 20, 2010.  There is no emergency justifying this application.  Nor is the relief DC seeks – postponing until October 25, 2010 hearings as to depositions that DC previously insisted must begin on October 5 – appropriate.  DC's proposed schedule would only compound motion practice and require rebriefing of disputes that are already before the Court and ripe for decision.  The Court should hear the motions set for hearing on September 20, 2010 as scheduled, or hear all of the currently filed motions on October 4, 2010.  The parties can then meet-and-confer as what motions, if any, remain necessary.

This *ex parte* application is particularly unwarranted in light of DC's prior position that it needed depositions to begin in early October, before the hearing date of the dispositive motions.  DC's refusal to postpone the depositions resulted in three extensively briefed joint stipulations.  These discovery motions raise a variety of issues, including:  (1) whether, in the interests of efficiency and preventing undue burden, depositions should be postponed until after the pleadings are set; (2) whether the scope of discovery should be narrowed, because (a) each of the witnesses was previously deposed in related litigation and (b) DC seeks to take discovery on a document (the "Toberoff Timeline") that was erroneously released to DC; and (3) whether a protective order is appropriate as to three elderly and/or infirm witnesses, where their physicians have testified that depositions impose an unacceptable health risk, including for one witness, a "life-threatening" risk of "heart attack of stroke."

In the course of a prolonged meet and confer process regarding these motions, Defendants repeatedly told DC that depositions should not move forward until the

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1  Court had an opportunity to hear Defendants' dispositive motions, which address

2  every claim for relief.  Defendants proposed that DC take its early October

3  depositions off-calendar, so that the parties could meet and confer after the hearing

4  on the dispositive motions, when they would be in a far better position to judge the

5  appropriate scope of any discovery.  DC refused to move the depositions, resulting

6  in the significant burden and expense associated with preparing Defendants' Motion

7  for a Protective Order Staying Depositions, filed on September 13, 2010, as to why

8  the unique posture of this case justified postponing the depositions.

9      The new schedule DC proposes via *ex parte* application only adds to the

10  chaotic discovery proceedings DC has created.

11      (1) DC's proposed schedule would require the Court to hear two fully-briefed

12  motions (Plaintiff's Motion to Initiate Discovery and Defendants' Motion for a

13  Protective Order Staying Depositions), after DC voluntarily mooted one of the main

14  reasons that the motions were brought – DC's insistence that it needed the

15  depositions before the hearing on dispositive motions.

16      (2) Moving the depositions to November (*ex parte* Appl. at 3:23) would

17  require Defendants to brief issues not previously briefed and to redo the currently

18  pending motions so that they address the problems with the new deposition dates

19  rather than the problems with the original dates.  This burden is entirely unnecessary

20  when the Court can easily address the issue of whether a brief continuance of

21  depositions is appropriate until after the pleadings are set, based on motions that

22  have been already fully briefed at significant expense.  Moreover, to comply with

23  the local rules, Defendants would have to brief the new issues and serve their

24  portion of a Joint Stipulation on October 4, 2010 to obtain a hearing date of October

25  25, 2010.  Meanwhile, Judge Wright would be hearing dispositive motions on or

26  shortly after October 18, 2010 that could completely obviate the motion or

27  substantially alter the nature of the disputes to be heard on October 25.  This is just

28  nonsensical.

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1    (3) The hearing on dispositive motions concerning DC's First Amended

2    Complaint will occur either on October 18, 2010, or shortly thereafter.  Because DC

3    has now abandoned its prior argument that it needs depositions before this hearing,

4    DC should simply take its currently pending depositions off calendar, and instead

5    meet and confer after the hearing on dispositive motions, with the benefit of Judge

6    Wright's views.  DC refused this straightforward proposal.

7    Given the inefficiencies of DC's proposal, the real reason for DC's *ex parte*

8    application is clear.  DC is embarrassed about its meritless Motion to Initiate

9    Discovery, and now wants to bury it, rather than withdraw its misguided motion and

10   face a request for sanctions.  That is not a valid basis for an *ex parte* application.  If

11   DC needs to withdraw its motion or reschedule depositions, it can do so without

12   burdening Defendants and the Court with an *ex parte*, and Defendants should be

13   made whole for having to defend against DC's baseless motion, as well as this

14   abusive *ex parte* application.

15   DC's *ex parte* application should also be denied for the independent reason

16   that DC failed to comply with Local Rule 7-19 in numerous respects.  This is part of

17   DC's continuing pattern of discovery misconduct in which DC behaves as if it is

18   exempt from this Court's rules.  DC's belligerent and wasteful tactics must stop.

19   **II.    PROCEDURAL BACKGROUND**

20   DC filed this lawsuit on May 14, 2010 in order to re-litigate a wide range of

21   issues that it lost in related litigation previously pending before Judge Larson.

22   Docket No. 30 (Defendants' Anti-SLAPP Motion) at 1-3, 11-12.

23   DC has known the facts giving rise to its claims for many years.  Docket No.

24   31 (Defendants' Motion to Dismiss the Fourth and Fifth Causes of Action) at 23-25.

25   DC freely acknowledges that it obtained documents that led it to file this lawsuit 17

26   months before doing so.  First Amended Complaint ¶ 102-104.  Despite DC's

27   substantial delay in bringing this action, DC has manufactured one baseless

28   discovery "emergency" after another, creating a chaotic and burdensome discovery

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2                                                    3

1   process, including this *ex parte* application.

2       As part of DC's effort to relitigate issues already decided, DC originally

3   demanded early depositions of four witnesses, all of whom were already deposed in

4   the related *Siegel* litigation.  Declaration of Dan Petrocelli dated Sept. 13, 2010

5   ("Petrocelli Decl.") Ex. A; Declaration of Laura W. Brill dated Sept. 15, 2010

6   ("Brill Decl.") ¶ 12.  Attached as Exhibit A to this memorandum are charts that

7   show the topics of the testimony the witnesses have already given.[1]  DC repeatedly

8   demanded that these depositions move forward.  Brill Decl. ¶ 15.  In response,

9   Defendants contended that in the unique circumstances of this case, the depositions

10  should be briefly postponed until the pleadings are set.  Such a postponement is

11  warranted because each of the witnesses has already been deposed, three have

12  medical reasons why they should not be deposed now, and Defendants have

13  substantial legal defenses to every cause of action in the compliant.  Rather than

14  agreeing, DC claimed, with no merit, that the depositions could not be postponed

15  because they were necessary to DC's response to Defendants' dispositive motions.

16  Brill Decl. ¶ 15.  DC's refusal required Defendants to file yet another discovery

17  motion, seeking a protective order at an October 4 hearing, although overlapping

18  issues were already set for hearing on September 20.  Now, after all this effort, DC

19  has concocted a new emergency to avoid the motions that it precipitated.

20  **A.   DC Delays This Lawsuit, And Defendants Have Sought A Prompt**

21       **Ruling On The Legal Deficiencies Of The Complaint**

22       DC named personally Marc Toberoff, the attorney who represented the heirs

23  to Superman author Jerome Siegel, as a defendant in this action.  On July 13, 2010,

24  promptly after Mr. Toberoff retained his own counsel and new counsel had an

25  _____

26       [1] Three charts refer to the paragraphs of the initial complaint, rather than the First
     Amended Complaint, which is substantially similar to the original complaint.  Jean

27  Peavy's chart refers to paragraphs in the First Amended Complaint, which named her as a
     defendant.  Brill Decl. Ex. D (redline comparison).

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1   opportunity to familiarize itself with this complex case, the parties met and

2   conferred regarding Defendants' motions to dismiss the complaint pursuant to FRCP

3   12(b)(6) and motion to strike the state law claims under California's Anti-SLAPP

4   law.  DC's counsel stated that the meet and confer discussion was among the most

5   detailed in which he had ever participated.  Brill Decl. ¶ 8.  Despite full knowledge

6   of Defendants' motions in mid-July, DC did not amend its complaint.  Instead, DC

7   forced Defendants to file multiple motions to dismiss and their Anti-SLAPP motion

8   as to the state law claims, to be heard on October 18, 2010.

9       Instead of responding to the dispositive motions, DC waited until September

10  3, 2010 to file an amended complaint – the last possible day under the rules.  Judge

11  Wright entered a minute order holding that the filing of the amended complaint

12  mooted the pending motions and vacated the hearing date.

13      The First Amended Complaint contains relatively few changes from the initial

14  complaint.  Brill Decl. Ex. D (redline comparison).  As a result, Defendants intend

15  to move to dismiss the claims on the same grounds that they asserted in their

16  original motions, and expect the revised motions to be heard on October 18, 2010 or

17  shortly thereafter.[2]  Each of the legal defenses Defendants will raise is quite

18  substantial, as summarized in the attached Appendix B.

19  **B.    DC Demands That Duplicative Depositions Proceed**

20      DC delayed years in bringing this action, much of which centers around the

21  period from 2001-2003.  Once it filed its complaint, DC demanded a Rule 26

22  conference, so that it could launch immediate discovery, even though Mr. Toberoff

23  had not retained counsel.  On August 5, 2010, after Mr. Toberoff had retained

24

25

26          [2]  A hearing date shortly after October 18 may be necessary to allow sufficient time
    to file reply briefs and to allow the Court an opportunity to study the motions before the
27  hearing.  The parties previously stipulated that the appropriate periods for these phases of
    the motions were two and three weeks respectively.  Brill Decl. Ex. A.
28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1  counsel, the parties scheduled a Rule 26 conference for Monday, August 16, 2010.[3]

2  Brill Decl. ¶ 10.  Despite this agreement, on Friday, August 13, DC served its

3  portion of a Local Rule 37 joint stipulation, a baseless and unnecessary "Motion to

4  Initiate Discovery."  Brill Decl. ¶ 11.  DC claimed that it could not start discovery,

5  although it would be able to commence discovery without such a motion the very

6  next business day, August 16, after the Rule 26 conference.  *Id.*

7          DC set its Motion to Initiate Discovery for hearing in mid-September.  Brill

8  Decl. ¶ 11.  DC insisted that its motion needed to be heard at the same time as

9  Defendants' motion for a protective order, which concerned an illicit document, the

10  "Toberoff Timeline" (the "Timeline Motion").  In that motion, Defendants contend

11  that DC should not be permitted to use the Toberoff Timeline in discovery until the

12  order that mistakenly released that wrongfully-created document, derived from

13  stolen and privileged materials, is reviewed on appeal.  The parties ultimately

14  stipulated that the Timeline Motion and the Motion to Initiate Discovery would both

15  be heard on September 20.  *Id.*

16          Defendants opposed the Motion to Initiate Discovery on a variety of grounds:

17  (1) the depositions at issue should not move forward until at least after the pleadings

18  were set (Brill Decl. Ex. B, *passim*); (2) the health of the party witness, Joanne

19  Siegel, and the fact that she had previously been deposed on the same or similar

20  issues (*id.* at 4-7, 28, 35-39); and (3) the motion was improperly directed at Jean

21  Peavy, (then) a non-party and non-California resident over whom the Court lacked

22  jurisdiction.  *Id.* at 23-24.

23

24          [3] The date was not the result of delay by Defendants, but of scheduling issues of

25  counsel that related to balancing responsibilities in other matters and scheduled vacations.
   Defendants voluntarily accommodated a variety of scheduling requests of DC's lead

26  counsel, Mr. Petrocelli.  Brill Decl. ¶ 9.  DC sent repeated belligerent email messages
   demanding scheduling accommodations for themselves, while lodging uncivil, baseless

27  personal attacks against counsel for Defendants.  *Id.*

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

6

On August 17, 2010, DC served deposition notices on three witnesses and an improper subpoena on Ms. Peavy. Brill Decl. ¶ 12. Although its motion to initiate discovery, filed *days* previously, had asked for an order that the two depositions in question be taken by September 30, DC now noticed depositions for the first week of October. *Id*. DC refused to take the depositions off calendar to await a ruling on its Motion to Initiate Discovery, scheduled for September 20. Brill Decl. ¶ 15. Instead, DC forced Defendants to file a second motion for a protective order to stay the depositions. *Id*.

After Defendants served their opposition to DC's Motion to Initiate Discovery, DC began an aggressive attempt to bury that motion and hide its deficiencies, and demanded that it be postponed and heard with motions not yet briefed. Brill Decl. ¶ 14. Defendants made clear that DC could voluntarily withdraw the motion and that DC's scheduling proposals did not make sense and would create unnecessary additional burdens on the Court. Brill Decl. Ex. G (Brill Sept. 2, 2010, letter). In particular, Defendants pointed out that, since the significant issues had already been briefed (*e.g.,* whether depositions should be postponed), there was value in obtaining a ruling on the filed motions, rather than having to re-brief such issues. *Id*.; *see also* Brill Decl. Ex. E (Sept. 10, 2010, letter). Defendants made clear that they were willing to meet and confer to find a common ground, and raised the possibility of expedited depositions after the pleadings were set. Brill Decl. Ex. E; *see also id.* Ex. F (Sept. 13, 2010, letter)

Defendants asked DC to agree to take the depositions off calendar and to meet and confer promptly after the hearing on dispositive motions. Brill Decl. Ex. E. DC refused. Petrocelli Decl. Ex. H (Petrocelli Sept. 13 letter); Brill Decl. Ex. F. DC filed this application without giving notice of the date and time of the application, or the substance of the alternative relief it would propose. Brill Decl. ¶ 16 (no such notice); Petrocelli Decl. Exs. F & H (same).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

III.  **ARGUMENT**

   A.  **The Relief Sought by DC is Unworkable**

   The relief DC seeks here – postponing depositions until November and continuing the hearing on one of the September 20 motions until October 25, while one of the motions is still heard on September 20 – is unworkable.

   *First,* the parties have now *twice* briefed the issue of postponing the depositions until after the scope of the pleadings is settled.  The issue has been joined and should be resolved now, rather than requiring yet another motion.

   *Second,* DC itself demanded that the hearing on its Motion to Initiate Discovery be combined with the hearing on the Timeline Motion.

   *Third,* DC made Jean Peavy a party in its new complaint, *after* Defendants' Motion to Stay Depositions was served.  There is no motion on file as to Ms. Peavy because she was not the subject of any proper discovery demand.  A new motion as to her could likely be avoided if the Court hears the pending motions as scheduled, on September 20.

   *Fourth,* it makes no sense to burden this Court with an October 25, 2010 hearing on motions filed in mid-September, when such motions were filed before and centered on the scheduled October 18, 2010 hearing on the dispositive motions. Brill Decl. Ex. E (Sept. 10 letter).

   B.  **DC's *Ex Parte* Application Should Be Summarily Denied As Procedurally Improper.**

   "An *ex parte* application is solely for extraordinary relief."  *Jamdat Mobile Inc. v. Jamster Int'l Sarl Ltd.*, 2005 WL 5960924, *1 (C.D. Cal. Oct. 4, 2005) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488 (C.D. Cal. 1995)); *see also* Hon. Otis D. Wright II Standing Order ¶ 10 ("Sanctions may be imposed for misuse of ex parte applications.").  In fact, the Central District has recognized that "[e]x parte motions are rarely justified," and that "[r]egrettably, … lawyers are the principal abusers of … a 'hybrid' form of ex parte communication: a request for

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  action by the court made outside the framework of the rules. … [T]hese hybrid ex

2  parte motions are inherently unfair, and they pose a threat to the administration of

3  justice." *Mission Power*, 883 F. Supp. at 490.  Failure to comply with the

4  procedural requirements for an *ex parte* application is grounds for denying the

5  application, *Lai v. Quality Loan Serv. Corp.*, 2010 WL 2228507, *2 (C.D. Cal. June

6  2, 2010).  That is particularly appropriate here.

7       Local Rule 17-19.1 requires the attorney applying for *ex parte* relief to "make

8  a good faith effort to advise counsel for all other parties … of the <u>date, time and</u>

9  <u>substance</u> of the proposed ex parte application."  (Emphasis added).  Yet, DC's

10  counsel never advised Defendants' counsel of the proposal in their *ex parte*

11  application – that Defendants' Motion to Initiate Discovery be continued to October

12  4, and heard at the same time as Plaintiff's Motion for a Protective Order Staying

13  Depositions.  Petrocelli Decl. Exs. F & H; Brill Decl. ¶ 16.  As such, DC failed to

14  advise Defendants' counsel of the "substance" of the application in violation of L.R.

15  7-19.1(a).  In fact, DC refused Defendants' repeated requests to meet and confer

16  regarding potential alternative schedules.  Brill Decl. ¶ 6 & Exs. E, F (letters of

17  Sept. 10 & 13, 2001).[4]

18       Local Rule 7-19.1(b) also requires that the attorney applying for *ex parte*

19  relief "advise the Court in writing of … whether any other counsel … opposes the

20  application."  DC failed to comply with this simple requirement, despite

21  Defendants' very specific reminder:  "[P]lease inform the Court that Defendants

22  object to the schedule proposed in your September 8, 2010 letter and intend to file

---

23

24       [4] DC's counsel also failed to inform counsel for Defendants of the date and time of
their *ex parte* prior to filing the application.  Brill Decl. ¶ 16.  Indeed, the only notice
25  Defendants received was a September 8, 2010, letter, in which counsel for DC stated that if
Defendants did not agree to moving DC's motion, DC would "file an *ex parte* application
26  with Magistrate Zarefsky next week," Petrocelli Decl. Ex E, and a September 13, 2010,
letter, in which counsel for DC stated, without further elaboration, "We will proceed with
27  the *ex parte* application."  Petrocelli Decl. Ex H.  DC never provided notice of the "date
[and] time" the application would be submitted.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2                                    9
DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1    an opposition."  Brill Decl. Ex. F (Sept. 13, 2010 letter).  A court is justified in

2    denying DC's *ex parte* application based solely on DC's willful failure to comply

3    with the simple rules governing *ex parte* applications, especially when this failure is

4    added to the other procedural and substantive deficiencies of the application.

5        C.    **The Relief DC Seeks Will Create Unnecessary Burdens**

6            1.    **DC's November Deposition Dates And October 25 Hearing**

7                **Date Make No Sense**

8        The relief DC seeks will add to the chaotic discovery burdens that DC's

9    unreasonable positions have already created.  There is no good reason to postpone a

10   decision on the pending motions and create a new discovery dispute, which will

11   require Defendants to again serve and file motions that brief issues regarding the

12   scope and timing of these depositions, before Judge Wright has heard the dispositive

13   motions that may moot the discovery motions or dramatically alter them and before

14   the parties have had an opportunity to meet and confer as to what, if anything,

15   remains of DC's troubled complaint.

16       Now that DC admits that it does not need these depositions to defend against

17   the dispositive motions, there is no good cause for further briefing on the subjects

18   already covered.  Defendants' proposal, to wait until Judge Wright has considered

19   the dispositive motions,[5] will not prejudice DC, which waited years to file its

20   complaint despite being on notice of all of its causes of action since at least 2006

21   (and at least 17 months after it obtained the documents it purportedly relied upon).

22   DC took a leisurely six weeks to amend its complaint, after being fully advised of

23   the original complaint's legal deficiencies. Moreover, the witnesses have already

24   _____

25           [5] DC objects that it may take some time for Judge Wright to rule on the motions.
     This hypothetical objection lacks merit.  There is no reason to believe that Judge Wright
26   will not promptly dispose of the motions.  Judge Wright has not even had a chance to
     consider the issues.  The parties should discuss this issue *if and when* it is ripe, and this
27   Court should not assume that Judge Wright will unduly delay ruling on the motions, which
     raise straightforward legal issues.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

10

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1    been deposed.  There is no real urgency.

2        Defendants incurred many thousands of dollars in attorneys' fees in seeking

3    to protect the elderly and/or ill witnesses from the further harassment of duplicative

4    depositions when the Court has not yet determined whether there is any legal basis

5    for DC's complaint.  Obviously, if DC was willing to postpone these depositions,

6    the time to have done so was ***before*** the matters were fully briefed.  The fact that DC

7    is embarrassed at its frivolous Motion to Initiate Discovery is not a basis to create a

8    new version of the same discovery dispute and force a new round of briefing.

9        Until DC saw Defendants' opposition to DC's Motion to Initiate Discovery,

10   DC was absolutely unmovable as to deposition dates, despite repeated requests from

11   Defendants to postpone depositions until after the hearing on dispositive motions.

12   DC argued that it needed the depositions to oppose dispositive motions.  Brill Decl.

13   Ex. B at 11-13 (DC's portion of Joint Stipulation re Motion to Initiate Discovery);

14   *id.* Ex. C at 34-46 (DC opposition to Motion for Protective Order Staying

15   Depositions). DC forced Defendants to brief the issue not just once, but twice.

16       DC's position was nonsense: it did not need the depositions to oppose

17   dispositive motions.  Tellingly, DC now offers to postpone depositions until

18   November 2010, after the hearing on dispositive motions.  *Ex Parte* Appl. at 3:23.

19   The prejudice to Defendants and the Court of unnecessary burden and expense

20   associated with yet a new round of briefing is substantial.  DC should not create yet

21   another discovery dispute, requiring Defendants to brief, yet again, a motion

22   concerning depositions that may be entirely mooted by Judge Wright's decision.

23       If DC cannot wait to address the scope of discovery until after a ruling on

24   dispositive motions, then the Court should decide the motions that have already

25   been briefed by the parties, so they do not have to be relitigated.  If the Court rules

26   on September 20 that depositions should not go forward until after the dispositive

27   motions have been decided, there will be no need to address the issue again on

28   October 4.

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

11

2.    **The Motion to Compel Production Of Documents Is**
**Hypothetical And May Be Narrowed By An Early Ruling On**
**The Pending Motions**

DC contends that combining the pending motions on depositions with its hypothetical motion to compel the production of documents will be efficient. DC served requests for production of documents on August 17, 2010.  Brill Decl. ¶ 12.  Responses and objections to those requests are not yet even due; there has been no meet and confer regarding those responses; it is unclear what, if any disputes will exist and whether they can be resolved through the meet and confer process.  Brill *Id*.  Because these disputes are not yet joined, it is unclear whether they will overlap with the disputes that have been already briefed.  *Id*.

DC's proposed schedule regarding document requests also completely ignores the local rules regarding discovery disputes.  Under the Local Rules and Federal Rules of Civil Procedure, the objections and responses to document requests are due on September 17, 2010.  After that, DC is required to serve a letter pursuant to Local Rule 37 and request to meet and confer if there are any disputes.  The parties will then attempt to resolve their disputes.  None of this has even yet occurred. Moreover, the parties' positions regarding any such disputes may be narrowed by the Court's handling of the motions set for hearing on September 20 so that the disputes DC imagines may not ultimately occur.

DC's proposed schedule eliminates the Local Rule 37 meet and confer process as to its document requests and Defendants' (unserved) responses to such requests.  DC *Ex Parte* Appl. at 4:5-7.  It guarantees that disputes concerning document requests will not be resolved without motion practice, again burdening Defendants and the Court for no good reason.

3.    **DC's Fall-Back Position Imposes Unnecessary Burdens**

As a fall back, DC argues that its Motion to Initiate Discovery should be heard on October 4, the same day as Defendants' motion for a protective order.  DC

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1  never met and conferred regarding this proposal before filing its *ex parte*

2  application.  Had it done so, the parties might have reached a reasonable

3  compromise.

4       If *all* pending discovery motions are heard together on October 4, 2010, rather

5  than just two out of three as DC requests, and the depositions of Joanne Siegel and

6  Laura Siegel Larson, noticed for October 5 and 6, respectively, are continued to

7  mutually convenient dates so that Defendants will not have to prepare for them

8  before the motions are heard, Defendants would not oppose a minor adjustment to

9  the schedule on the already-briefed motions.

10      In that case, however, all three pending discovery motions should be heard

11  together.  DC fails to offer any reason why only two of the discovery motions

12  should be heard on October 4.  It would be obviously less burdensome for counsel

13  and the Court to have the three motions all heard together, especially given DC's

14  prior insistence that the two motions, now set for hearing on September 20, be heard

15  together.  Brill Decl. ¶ 11, 14.   The parties stipulated to have the motions heard on

16  the same date, and the Court agreed.  Brill Decl. ¶ 11.  There is no reason to separate

17  them now.  If, as is apparent, DC's wishes that it had never filed its dubious Motion

18  to Initiate Discovery it should withdraw it.  The currently briefed discovery motions

19  should either (a) be heard on September 20, as originally planned, or (b) all pending

20  discovery motions should be heard together on October 4, and the depositions

21  should be continued.

22  **IV.   <u>CONCLUSION</u>**

23      DC's *ex parte* application should be denied.

24  Dated:  September 15, 2010         KENDALL BRILL & KLIEGER LLP

25                                      By   /s/ Laura W. Brill

26                                          Laura W. Brill
                                            Attorneys for Defendants Marc Toberoff,
27                                          Pacific Pictures Corporation, IP
                                            Worldwide, LLC, and IPW, LLC

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

13

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

1    Dated:  September 15, 2010          TOBEROFF & ASSOCIATES PC

2                                        By   /s/ Marc Toberoff
3                                             Marc Toberoff
                                             Attorneys for Defendants Mark Warren
4                                            Peary, Joanne Siegel, Laura Siegel Larson,
                                             and Jean Peavy
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57304.2

14

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

# APPENDIX A
## SUMMARY OF TESTIMONY PREVIOUSLY TAKEN

### JOANNE SIEGEL

| Topic | Depo Pages (Ex. A) | Complaint |
|---|---|---|
| Joanne Siegel's relationship with Jerome Siegel from 1935-1948 | 14:3-14:9 | ¶¶ 27-30, 36 |
| Jerry Siegel being re-hired by DC's predecessors in the late 1960s | 14:21-15:23 | ¶ 41 |
| Joanne Siegel's discussions of termination with Jerry Siegel | 16:18-17:14; 71:8-72:12 | ¶ 45 |
| Joanne Siegel's retention of counsel to exercise her termination rights | 22:8-24:6 | ¶¶ 60-61 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between October 2001 and February 2002 | 24:13-28:13; 39:1-40:25 | ¶¶ 62, 168-69 |
| DC's February 2002 long-form draft settlement agreement | 27:9-28:13; 87:4-88:13; 94:3-95:6 | ¶¶ 62, 168-69 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. A) | Complaint |
|---|---|---|
| The drafting and meaning of the May 9, 2002 letter sent by Joanne Siegel | 32:18-34:17; 36:16-40:17; 42:17-43:9; 45:1-46:24; 119:4-121:9 | ¶¶ 65-67, 168-69 |
| Joanne Siegel's first contact with Marc Toberoff | 41:1-3 | ¶¶ 64, 70-72 |
| Joanne Siegel's September 21, 2002 letter to DC's Publisher | 43:10-44:25 | ¶¶ 70, 168-69 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 56:12-71:7 | ¶¶ 43-45 |
| The Shuster Termination | 102:8-104:25 | ¶¶ 79-88 |
| Marc Toberoff's representation of Jean Peavy | 105:1-5 | ¶¶ 64, 70-72 |
| The Superboy "pitch" letter by Jerry Siegel | 105:6-109:13 | ¶¶ 74, 134, 137 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

15
DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. A) | Complaint |
|---|---|---|
| The Superboy script by Jerry Siegel | 109:14-115:10; 135:3-137:3 | ¶¶ 74, 136-37 |
| The 1947 Action between Jerry Siegel, Joseph Shuster, and DC's predecessors | 124:20-125:5 | ¶¶ 37-40 |

## LAURA SIEGEL LARSON

| Topic | Depo Pages (Ex. B) | Complaint |
|---|---|---|
| The separate "Superboy" action | 14:19-15:2 | ¶¶ 78, 118-20 |
| First contact with Marc Toberoff | 17:6-17:19; 24:10-17 | ¶¶ 59, 64, 70-72, 169 |
| Marc Toberoff's representation of Joanne and Laura Siegel Larson | 24:10-17; 61:12-21 | ¶ 71 |
| Marc Toberoff's representation of Jean Peavy and Mark Warren Peary | 24:15-17; 25:12-25 | ¶ 54 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. B) | Complaint |
|---|---|---|
| Discussions between Joanne and Laura Siegel Larson, and/or Kevin Marks, and Marc Toberoff about the acquisition of Superman rights | 25:22-26:5 | ¶ 68 |
| Knowledge of Intellectual Properties Worldwide, LLC | 26:21-27:14 | ¶ 70 |
| The IP Worldwide Agreement | 34:5-38:16; 52:16-21 | ¶ 70 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between October 2001 and February 2002 | 45:3-46:22; 125:1-133:22; 139:12-140:17; 143:12-145:9; 147:4-150:24; 153:7-154:16; 159:7-159:19; 162:8-168:18; 174:10-194:11; 204:10-205:21; 216:4-10; 261:12-265:10 | ¶¶ 62, 168-69 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

17

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. B) | Complaint |
|---|---|---|
| Joanne Siegel and Laura Siegel Larson's termination of Gang Tyre | 56:17-24 | ¶ 70 |
| Expiration of the IP Worldwide Agreement | 60:1-60:8 | ¶¶ 70, 72 |
| Laura Siegel Larson's discussions of termination with Jerry Siegel | 62:17-63:23 | ¶ 45 |
| Marc Toberoff's contingency agreement with Joanne Siegel and Laura Siegel Larson | 72:8-73:8 | ¶¶ 71-72 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 76:15-83:4 | ¶¶ 43-45 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between 1997 and October 2001 | 64:16-65:6; 85:17-88:1; 221:21-241:9; 245:3-248:13 | ¶¶ 60-61 |
| The Superboy "pitch" letter by Jerry Siegel | 92:16-24 | ¶¶ 74, 134, 137 |

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. B) | Complaint |
|---|---|---|
| The Superboy script by Jerry Siegel | 92:25-93:3 | ¶¶ 74, 136-37 |
| The Superboy materials created by Jerry Siegel | 93:20-97:20 | ¶ 75 |
| The exclusion of the 1948 consent judgment from the Siegel Termination | 100:10-101:24 | ¶ 113 |
| The separate "Superboy" notice of termination | 105:7-107:4 | ¶¶ 73-75, 118-20 |
| Joanne Siegel's and Laura Siegel Larson's retention of counsel to exercise their termination rights | 115:9-116:25 | ¶¶ 60-61 |
| The drafting and meaning of the May 9, 2002 letter sent by Joanne Siegel | 133:19-139:10; 140:14-141:6; 146:2-147:3; 210:18-216:3; 217:25-221:13 | ¶¶ 65-67, 168-69 |
| Joanne Siegel's September 21, 2002 letter to DC's Publisher | 261:15-262:7 | ¶¶ 70, 168-69 |

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## MARK WARREN PEARY

| Topic | Depo Pages (Ex. D) | Complaint |
|---|---|---|
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 18:10-19:1 | ¶¶ 43-45 |
| Mark Warren Peary's discussions with Joseph Shuster about Shuster's will | 19:2-19:25 | ¶¶ 46 |
| Mark Warren Peary's first contact with Marc Toberoff | 20:1-21:17; 22:6-22:21; 35:17-37:18 | ¶¶ 52-54 |
| Mark Warren Peary's retention of Marc Toberoff as counsel | 23:18-24:3, 29:13-29:23; 57:20-58:11; 60:7-61:7; 61:14-62:13 | ¶¶ 64, 70-72 |
| The 2001 Pacific Pictures Agreement | 24:6-35:16 | ¶¶ 54-57, 105-110, 117, 156, 158, 164 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20
DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. D) | Complaint |
|---|---|---|
| The inclusion of "Superboy" in the 2001 Pacific Pictures Agreement | 27:22-29:12 | ¶¶ 73-77 |
| The 50/50 split in revenues under the Pacific Pictures Agreement | 29:24-31:12 | ¶¶ 56, 87 |
| The "Expiration" clause of the 2001 Pacific Pictures Agreement | 32:6-33:22; 62:21-64:13 | ¶¶ 56, 156, 158 |
| The establishment of the Estate of Joseph Shuster | 38:13-40:24; 48:7-49:23; 50:4-12; 56:5-17 | ¶¶ 54, 58 |
| The 2003 Pacific Pictures Agreement | 40:7-41:14 | ¶¶ 77, 156, 158, 164 |
| Relationship with Joanne and Laura Siegel | 43:15-47:2 | ¶¶ 59 |
| Marc Toberoff's representation of Joanne and Laura Siegel Larson | 47:18-48:5 | ¶¶ 59 |
| The original copy of Joseph Shuster's will | 48:24-49:23 | ¶¶ 46 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

21

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

| Topic | Depo Pages (Ex. D) | Complaint |
|---|---|---|
| The Shuster Notice of Termination | 50:14-56:25 | ¶¶ 79-88 |
| The works listed in the Shuster Notice of Termination | 51:23-54:19 | ¶¶ 73-77, 84 |
| Works not listed in the Shuster Notice of Termination, including "Superboy," which was solely authored by Jerome Siegel | 55:13-56:4 | ¶¶ 73-77, 118-120 |
| Signature of the Shuster Notice of Termination | 50:14-22 | ¶¶ 105-110, 117 |
| The 2004 cancellation of the Pacific Pictures Agreements | 59:18-60:10 | ¶¶ 56, 86, 156, 158 |
| Joanne Siegel's first contact with Marc Toberoff | 83:23-84:21 | ¶¶ 59, 64, 70-72, 169 |

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

## JEAN PEAVY

2

3

| Topic | Depo Pages | Amended Complaint |
|---|---|---|
| | | |
| The 1947 Action between Jerry Siegel, Joseph Shuster, and DC's predecessors | 13:17-15:15 | 41-44 |
| The Superboy character | 15:16-20 | ¶¶ 86-90 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 15:21-18:4 | ¶¶ 47-48 |
| Ms. Peavy's relationship with Joanne Siegel | 18:5-18:18 | ¶¶ 71, 79-84 |
| Ms. Peavy's 1992 correspondence with DC | 18:20-23:25 | ¶¶ 52-54 |
| Ms. Peavy's 1992 Agreement with DC | 25:21-28:9 | ¶¶ 55-57, 112-17, 175-76 |
| The establishment of the Estate of Joseph Shuster and the Shuster Terminations Ms. Peavy's relationship with Toberoff | 28:10-13 31:24-32:4 | ¶¶ 64-65, 90,92-101, 129-34 ¶¶ 60, 177-78 |
| Ms. Peavy's introduction of Toberoff to the Siegels | 32:5-34:2 | ¶¶ 71, 79-84 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

23

## APPENDIX B
## SUMMARY OF DISPOSITIVE MOTIONS

For the Court's convenience, the Arguments made in the separate motions to dismiss are summarized as follows.

- DC's First Claim seeks to invalidate the Shuster Terminations, and will fail as a matter of law:

  o *Section (1)* of DC's First Claim (Toberoff Decl., Ex. A ("Complaint"), ¶¶ 94-98) erroneously alleges that Shuster's termination rights do not vest in the executor or representative of his estate unless he had a widow, children and grandchildren who were "not living, but who did at some time live." This argument contradicts the plain language of the statute and the accepted interpretation of "not living" under the Copyright Act, as well as the legislative intent of § 304, and would lead to absurd results. *See Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1114 n.3 (C.D. Cal. 2008); M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* ("*Nimmer*") § 11.03[A][2][a] at 11-40.1-11.40.2 (emphasis added); *Stewart v. Abend*, 495 U.S. 207, 212 (1990); 67 Fed. Reg. 69134; Toberoff Decl., Ex. E at 2-7.

  o *Section (2)* (Complaint, ¶¶ 99-104) argues that a 1992 agreement ("1992 Agreement") between DC and Shuster's siblings bars the Shuster Termination. This argument fails because the 1992 agreement could not lawfully grant any Superman copyrights. None of the parties to that agreement possessed any termination rights or Superman copyrights to grant; the Shuster Executor, the sole holder of the termination right, was not a party to the 1992 Agreement, as pled in the complaint; and, in any event, the agreement could not have conveyed or released the inalienable termination right as a matter of law under § 304(c)(5). *See* 17 U.S.C. §§ 304 (c)(5), (c)(6)(B); *Classic Media, Inc.*

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING DATES ON RELATED DISCOVERY MOTIONS

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    *v. Mewborn* ("*Mewborn*"), 532 F.3d 978 (9th Cir. 2008); Toberoff

2    Decl., Ex. E at 7-12

3    o  ***Section (3)*** (Complaint, ¶¶ 105-11) alleges that the Shuster Executor

4        did not own the "majority interest necessary to terminate" purportedly

5        because it had granted half such rights in the Pacific Pictures

6        Agreements, but the Shuster Executor clearly held the entirety of the

7        termination interest because, as asserted elsewhere in DC's Complaint,

8        termination rights cannot be transferred to a third party prior to the

9        effective date of termination per 17 U.S.C. § 304(c)(6)(D), and the

10       effective termination date is October 26, 2013.  *See id.*; Complaint, ¶¶

11       81, 154-55; Toberoff Decl., Ex. E at 13-14.

12   o  ***Section (4)*** (Complaint, ¶¶ 112-15) claims that the Shuster

13       Termination failed to terminate a May 21, 1948 consent judgment;

14       however, Judge Larson in *Siegel* has already correctly decided that such

15       consent judgment was not a copyright grant, and has no effect on the

16       validity of Superman termination notices.  The same reasoning and

17       holding applies to the "mirror image" Shuster Termination and, as this

18       is a closely related action, is binding on DC under the "law of the case"

19       doctrine.  *See Siegel I*, 542 F. Supp. 2d at 1131; Toberoff Decl., Ex. E

20       at 14-16; *See Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir.

21       1997) (applying "law of the case" doctrine to related cases).

22   o  ***Section (5)'s*** "unclean hands" claim regarding Superboy (Complaint,

23       ¶¶ 116-20) fails because unclean hands is a defense that is available

24       only against a plaintiff that seeks affirmative relief, and is not a basis

25       for a cause of action.  *See Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir.

26       2003); Toberoff Decl., Ex. E at 16-17.  Defendants also cannot be

27       charged with "unclean hands" regarding Superboy as their actions

28       comport with the specific findings of fact and conclusions of law in a

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

25

1947 action between DC's predecessors, Siegel and Shuster. *See id.* at
17-19; *Siegel v. Nat'l Periodical Publ'ns, Inc.*, 508 F.2d 909 (2d Cir.
1974); *Siegel v. National Comics Publications, Inc.*, Case No. 1099-
1947 (N.Y. Sup. Ct. April 12, 1948).

• DC's Second Claim transparently attempts to re-litigate issues already
decided against DC in the related Superman case, *Siegel v. Warner Bros.
Ent. Inc.*, C.D. Cal. Case No. 04-08400 ODW (RZx), and is barred by the
doctrine of "law of the case" in this closely related action. *Disimone*, 121
F.3d at 1266-67; Toberoff Decl., Ex. E at 19-25.

• DC's Third Claim (as well as its Sixth Claim) is premised on the erroneous
legal position that DC has a statutory right to a so-called "period of
exclusivity" to negotiate the purchase of the Shuster Estate's recaptured
*Superman* copyrights under 17 U.S.C. § 304(c)(6)(D). *See* Complaint, ¶¶
154-55. However, it is clear from the plain language of § 304(c)(6)(D)
that it does not provide DC with any "rights," let alone a right to an
exclusive period of negotiation. *See* 17 U.S.C. § 304(c)(6)(D); *Bourne
Co., v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987)
("Nor does the statute provide for an exclusive period of negotiation. The
statute neither compels the terminating party to negotiate with the
terminated grantee, nor forbids him from negotiating with anyone else.");
3 M. Nimmer & D. Nimmer, Nimmer § 11.08[A], n.6 (2010) (Bourne
properly "rejected the claim [made here] that a prior grantee enjoys a
private right of action for damages against one who induces the grantor to
make a (necessarily invalid) grant to a third party prior to the termination
date of the original grant."); Toberoff Decl., Ex. F at 4-7. As such, DC
lacks standing to prosecute this claim. *See* 3 W. Patry, *Patry on Copyright*
("*Patry*") § 7:47 (2010); Toberoff Decl., Ex. F at 7.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

26
DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING
DATES ON RELATED DISCOVERY MOTIONS

- DC's Fourth Claim for tortious interference with contract, alleges that by inducing the Shuster Estate to file a statutory notice of termination concerning *Superman*, Toberoff, and an entity controlled by Toberoff, Pacific Pictures Corporation ("PPC"), interfered with the 1992 Agreement between DC and the siblings of Joseph Shuster.  This claim fails as a matter of law for at least four independent reasons.

  o *First*, the termination of the *Superman* copyright interests by the Shuster Executor could not have interfered with the 1992 Agreement, which has no bearing whatsoever on the independent termination right held solely by the Shuster Executor.  Toberoff Decl., Ex. D at 9-13.

  o *Second*, even if the 1992 Agreement could somehow be construed as intending to prevent the Shuster Executor from exercising his termination rights, such a contract would be void under the Copyright Act, 17 U.S.C. § 304(c)(5), and clear Ninth Circuit precedent.  Toberoff Decl., Ex. D at 13-18.

  o *Third*, the claim is squarely barred by the two-year statute of limitations for tortious interference claims, as it is a matter of public record that by 2006 DC was fully aware of the Shuster Termination and the Pacific Pictures Agreements, the facts that allegedly gave rise to this claim.  *Id.* at 18-20.

  o *Fourth*, the claim is barred on its face by California's litigation privilege, Civil Code § 47(b).  Toberoff Decl., Ex. D at 20-21.

- DC's Fifth Claim is equally meritless as a matter of law.  This claim alleges interference by Toberoff with DC's purported "prospective economic advantage" – namely, a proposed settlement agreement between DC and the Siegels over the Siegel Terminations.  This claim, like the Fourth Claim, is squarely barred by California's litigation privilege, as the sole basis of the cause of action is Toberoff's alleged solicitation of his

DEFENDANTS' OPPOSITION TO DC COMICS' EX PARTE APPLICATION TO CONSOLIDATE HEARING DATES ON RELATED DISCOVERY MOTIONS

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

clients in the *Siegel* cases.  Moreover, this claim is also barred by the two-year statute of limitations applicable to tortious interference claims, based on matters of public record, subject to judicial notice.  *Id.* at 21-25

- DC's Sixth Claim under California unfair competition laws is preempted by the Copyright Act, as it is expressly based on and incorporates DC's allegations of purported violations of the Copyright Act, and does not contain an "extra element" that "makes the right asserted qualitatively different from those protected under the Copyright Act."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005).  *See* Toberoff Decl., Ex. F at 9-12.

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

28