1
KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
2
  rkendall@kbkfirm.com
Laura W. Brill (195889)
3
  lbrill@kbkfirm.com
Nicholas F Daum (236155)
4
  ndaum@kbkfirm.com
Nathalie E. Cohen (258222)
5
  ncohen@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
6
Los Angeles, California 90067
Telephone: 310.556.2700
7
Facsimile: 310.556.2705

8
Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
9
Worldwide, LLC, and IPW, LLC

10

11                    UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| 14 | DC Comics, | Case No. CV 10-3633 ODW(RZx) |
|---|---|---|
| 15 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW (CAL. CODE CIV. PROC. § 425,16); MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16 | v. | |
| 17 | PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | |
| 18 | | |
| 19 | | *Filed concurrently with DECLARATION OF NICHOLAS F. DAUM, MOTION TO DISMISS, REQUEST FOR JUDICIAL NOTICE, and NOTICE OF JOINDER* |
| 20 | | |
| 21 | | |
| 22 | Defendants. | Hon. Otis D Wright, II |
| 23 | | Date: October 18, 2010 |
| 24 | | Time: 1:30 p.m. |
| 25 | | Complaint Filed: May 14. 2010 |
| 26 | | |
| 27 | | |
| 28 | | |

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION
PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on October 18, 2010, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Otis D Wright, II, located in the United States Courthouse, 312 N. Spring Street, Los Angeles, California, 90012, Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC ("Toberoff Defendants") will and hereby do move this Court to strike Plaintiff's Fourth, Fifth, and Sixth Causes of Action pursuant to California's Anti-SLAPP statute, Code of Civil Procedure § 425.16.

This Motion is made upon the following grounds: the Fourth, Fifth and Sixth Causes of Action are protected by California Code of Civil Procedure § 425.16 because they concern (i) statements or writings made before a legislative, executive, or judicial or other official proceeding (Cal. Code Civ. Proc. § 425.16(e)(1), (ii) written or oral statements and writings made in connection with an issue under consideration or review by a legislative, executive, or judicial body (Cal. Code Civ. Proc. § 425.15(e)(2), and (iii) an exercise of free speech rights in connection with a public issue (Cal. Code Civ. Proc. § 425.16(e)(4).

The Plaintiff cannot show a reasonable likelihood of success on the merits for its Fourth Claim for Relief, for tortious interference with contract, because (i) no interference has been alleged and no valid contract has been alleged; (ii) the Claim for Relief is barred by a two-year statute of limitations, and (iii) the Claim for Relief is barred by California's litigation privilege.

Plaintiff cannot show a reasonable likelihood of success for its Fifth Claim for Relief, for tortious interference with prospective economic advantage, because (i) there is no evidence or credible allegation that the purported prospective economic advantage was interfered with by any defendant; (ii) the Claim for Relief is barred by a two-year statute of limitations, and (iii) the Claim for Relief is barred by California's litigation privilege (Cal. Civil Code § 47(b)).

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION
PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    Plaintiff cannot show a reasonable likelihood of success for its Sixth Claim
2  for Relief, for declaratory relief, because that Claim is moot, and, to the extent that it
3  is not moot, it fails to provide any basis upon which declaratory relief may be
4  granted.

5    Pursuant to Cal. Code Civ. Proc. § 425.16(c)(1), and *United States ex rel.*
6  *Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), an
7  order awarding to the Toberoff Defendants their attorneys fees incurred in
8  preparation of this special motion to strike, subject to proof of such fees to be
9  submitted after the proceedings on such motion are concluded.

10    This motion is made following the conference of counsel pursuant to L.R. 7-
11  3, which took place on September 15, 2010.

12    This Motion is based on this Notice of Motion, the attached Memorandum of
13  Points and Authorities, the concurrently filed Declaration of Nicholas F. Daum, all
14  of the pleadings, files, and records in this proceeding, all other matters of which the
15  Court may take judicial notice, and any argument or evidence that may be presented
16  to or considered by the Court prior to its ruling.

17  Dated:  September 20, 2010          KENDALL BRILL & KLIEGER LLP

18
19
20                          By:  /s/ Richard B. Kendall
21                               Richard B. Kendall
22                               Attorneys for Defendants Marc Toberoff,
                                 Pacific Pictures Corporation, IP
                                 Worldwide, LLC, and IPW, LLC
23
24
25
26
27
28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION
PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................. 1

II. FACTUAL BACKGROUND ............................................................ 4

    A.     General Background ................................................................ 4

    B.     The Siegels, Independently of Toberoff, Serve Termination
           Notices and Commence Settlement Discussions ..................... 5

    C.     Marc Toberoff Begins Representing the Shuster Family ......... 6

    D.     The Siegels Break Off Settlement Negotiations With DC ....... 7

           1.     Toberoff Does Not Contact the Siegel Family ............ 7

           2.     Joanne Siegel Informs DC That There Will Be No Deal ........... 8

    E.     The Siegels Fire Gang Tyre and Then Hire Toberoff ............. 8

    F.     The Commencement of the *Siegel* Litigation ......................... 9

    G.     The Shuster Termination and Cancellation of the PPC
           Agreements ........................................................................... 10

    I.     DC Exploits A Theft Of Privileged And Confidential
           Information From Toberoff's Law Firm In Filing the Instant First
           Amended Complaint ............................................................. 11

III. ARGUMENT.................................................................................. 12

    A.     The Anti-SLAPP Law ........................................................... 12

    B.     The Fourth, Fifth and Sixth Claims Concern Conduct Protected
           By the Anti-SLAPP Law Because They Concern Statements
           Made In Connection With Litigation and Filings In the U.S.
           Copyright Office .................................................................. 13

           1.     The Fourth and Fifth Claims Fall Within § 425.16(e) .............. 14

                 (a)     The Fourth Claim Arises From the Encouragement ........ 14

                 of the Shuster Executor to Exercise His Constitutional
                 Right ............................................................................. 14

                 to Petition through Filing With a Government Agency ............. 14

                 (b)     The Fourth and Fifth Claims Arise From the
                 Encouragement ............................................................. 15

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

of the Shuster Executor to Exercise His Constitutional Right ...................................................................................... 15

to Petition through Taking Legal Action .................................... 15

    (c)    The Fourth and Fifth Claims Arise from Protected Communications in the Context of Anticipated Litigation and Settlement Discussions ............................ 16

    (d)    The Fourth and Fifth Claims Arise From Protected Solicitation of Attorney-Client Relationships .................. 18

  2.    The Sixth Claim Falls Within § 425.16(e) ................................ 19

C.    The Fourth, Fifth and Sixth Claims Are Protected Because They Concern Statements Made In Connection With A Public Issue .......... 20

D.    The Fourth, Fifth and Sixth Claims Have No Likelihood of Success on the Merits .................................................................. 21

  1.    The Motion to Dismiss Arguments Are Incorporated By Reference ............................................................................. 21

  2.    The Fifth Claim Fails Because There Is No Evidence That Toberoff Interfered With the Purported Economic Relationship ......................................................................... 22

  3.    The Fifth Claim for Relief Is Barred by the Statute of Limitations ........................................................................... 24

  4.    The Sixth Claim Against the Toberoff Entities Will Fail .......... 24

IV.    CONCLUSION AND REQUEST FOR FEES ............................................. 25

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

ii

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

## CASES

5

*Arden v. State Bar*,
    52 Cal. 2d 310 (1959) ................................................................... 19

6

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .......................................... 12, 13, 21

7

8

*Brandlin v. Belcher*,
    67 Cal. App. 3d 997 (1977) ......................................................... 19

9

*Briggs v. Eden Council for Hope and Opportunity*,
    19 Cal. 4th 1106 (1999) ...................................................... 14, 15

10

*Campbell v. PMI Food Equipment Group, Inc.*,
    509 F.3d 776 (6th Cir. 2007) ....................................................... 25

11

12

*Classic Media, Inc. v. Mewborn*,
    532 F.3d 978 (9th Circuit 2008) ................................................... 4

13

*Dixon v. Superior Court*,
    30 Cal. App. 4th 733 (1994) ........................................................ 12

14

15

*Dove Audio v. Rosenfeld, Meyer & Susma,n*
    47 Cal. App. 4th 777 (1996) ........................................................ 15

16

*GeneThera, Inc. v. Troy & Gould Prof. Corp.*,
    171 Cal. App. 4th 901 (2009) ................................................... 16

17

18

*Hilton v. Hallmark Cards*,
    580 F.3d 874 (9th Cir. 2009) ................................................ 13, 21

19

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ............................................................... 24

20

21

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ....................................................... 13

22

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ................................................................ 4

23

24

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .............................................................. 22

25

*Ludwig v. Superior Court*,
    37 Cal. App. 4th 8 (1995) .............................................. 12, 15, 16

26

27

*Mindys Cosmetics, Inc. v. Dakar*,
    --- F.3d. ---, 2010 WL 2652480 (9th Cir. July 6, 2010) ........... 12, 13, 14, 15

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

*Neville v. Chudacoff,*
    160 Cal. App. 4th 1255 (2008)....................................................12, 13, 16, 20

*Rohde v. Wolf,*
    154 Cal. App. 4th 28 (2007)..........................................................................13

*Rubin v. Green,*
    4 Cal. 4th 1187 (1993)..................................................................................18

*Seltzer v. Barnes,*
    182 Cal. App. 4th 953 (2010)...........................................................13, 16, 20

*Siegel v. Warner Bros. Ent. Inc.,*
    690 F. Supp. 2d 1048 (C.D. Cal. 2009)....................................................2, 11

*Siegel v. Warner Bros. Ent. Inc.,*
    658 F. Supp. 2d 1036 (C.D. Cal. 2009)................................................2, 4, 11

*Siegel v. Warner Bros. Ent. Inc.,*
    542 F. Supp. 2d 1098 (C.D. Cal. 2008).................................................passim

*Sole Energy Co. v. Petrominerals Corp.,*
    128 Cal. App. 4th 212 (2005)........................................................................23

*Super Tire Eng'g Co. v. McCorkle,*
    416 U.S. 115 (1974)......................................................................................25

*Taheri Law Group v. Evans,*
    160 Cal. App. 4th 482 (2008)........................................................................18

*Thornton v. Rhoden,*
    245 Cal. App. 2d. 80 (1966)..........................................................................20

*United States ex rel. Newsham v. Lockheed Missile & Space Co.,*
    190 F.3d 963 (9th Cir. 1999)....................................................................2, 4, 12

*Youst v. Longo,*
    43 Cal.3d 64 (1987)................................................................................22, 23


**STATUTES**

17 U.S.C. § 304..............................................................................................5, 6, 14

17 U.S.C. 203.......................................................................................................14

73 Fed. Reg. 3899 37...........................................................................................14

Cal. Civil Code § 47.........................................................................................1, 18

Cal. Code Civ. Proc. § 425..........................................................................passim

Cal. Code Civ. Proc. § 426....................................................................................13

Cal. Evid. Code § 1152.........................................................................................18

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

iv

1   L.R. 7-3 ................................................................................................ 2

2   Public Law 105-298 (1998) .................................................................. 6

3   Public Law. 94-553 1976 S22 ............................................................... 6

4   U.S.C. § 304 ......................................................................................... 4

5

6   **OTHER AUTHORITIES**

7   3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 11.01[A] (2010) ................... 5

8   H.R. Rep. No. 94-1476 at 140 (1976) ........................................................ 5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

*"If you have the facts on your side you try the facts.  If you don't have the facts you try the law.  And if you don't have the facts and don't have the law, you try the prosecutor." – Defense Lawyer's Adage*

This Court has determined, in three published opinions and countless orders that the plaintiff in this case, DC Comics ("DC") has neither the facts nor the law on its side in the long-running dispute between DC and the heirs of *Superman's* creators, Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster") over the exercise of their  termination rights under the Copyright Act.  After this Court ruled that the embattled Siegel heirs had, at long last, recaptured the copyright in that iconic creation, DC responded with a vituperative countersuit against their lawyer, Marc Toberoff, who successfully prosecuted the action for the Siegels and who also represents the Shuster heirs.  The transparent purpose of DC's lawsuit against Mr. Toberoff is to re-litigate the issues that DC has already lost, disrupt the relationship between Mr. Toberoff and his clients, and delay the final reckoning between DC and Mr. Toberoff's clients.  As demonstrated below, DC's desperate and cynical strategy must fail.  DC's allegations of interference arising from Mr. Toberoff's communications and understandings with his clients, and DC's claims of damage resulting from his clients' statutory terminations, rejection of DC's settlement overtures, and commencement of litigation, challenge activity that is protected under California's Anti-SLAPP law, California Code of Civil Procedure § 425.16.  DC's retaliatory claims strike at the heart of the *Superman* heirs' right to zealous representation by an attorney to pursue their statutory rights in filings with the U.S. Copyright Office, in settlement negotiations and in the courts.  DC's countersuit is therefore a paradigmatic strategic lawsuit against public participation, and the Anti-SLAPP law commands that its Fourth, Fifth, and Six Claims for Relief be stricken.

In the mid-1930s, Siegel and Shuster, two Depression-era high school students, co-created *Superman* and with it, the superhero genre.  In 1938, for a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1   pittance, they signed a publisher's release and were later held to have granted their

2   entire copyright in *Superman* to DC.  Despite the riches their creations earned for

3   DC, Siegel and Shuster died in penury.  However, in 1976 and again, in 1998,

4   Congress amended the Copyright Act to provide authors and designated heirs the

5   right to recapture their copyrights by terminating such one-sided unremunerative

6   grants.  The Siegel heirs and the executor of Shuster's estate availed themselves of

7   this statutory termination right and, ever since, DC has fought tooth and nail to

8   prevent them from receiving its intended benefits.

9        The attorney for the Siegel heirs in the two actions that have been pending in

10  this District since 2004, and also for the Shuster heirs in arranging for the probating

11  of the Shuster Estate and in the drafting, filing and enforcement of the executor's

12  notice of termination, is Marc Toberoff ("Toberoff").  Toberoff began representing

13  the Shuster heirs in 2001, and the Siegels in late 2002.

14       In 2008 and 2009, Toberoff won key victories for his clients.  This Court first

15  ruled, in an extraordinarily detailed 72-page published opinion, that the Siegels'

16  *Superman* termination was valid with respect to the first *Superman* story, as

17  published in "Action Comics No. 1," which contained the core *Superman* elements.

18  Next, in August 2009, this Court, in a second exhaustive published opinion, held

19  that the Siegels' termination was valid with respect to other works, including the

20  first two weeks of the *Superman* newspaper strips, containing *Superman's* important

21  origin story on the planet Krypton.  *See Siegel v. Warner Bros. Ent. Inc.*, 542 F.

22  Supp. 2d 1098, 1117-39 (C.D. Cal. 2008) ("*Siegel I*") (validity of termination), 658

23  F. Supp. 2d 1036, 1080-84 (C.D. Cal. 2009) ("*Siegel II*") (scope includes newspaper

24  strips).  In October 2009, this Court denied DC's motion for reconsideration in a

25  third published opinion.  *See* 690 F. Supp. 2d 1048 (C.D. Cal. 2009) ("*Siegel III*").

26       After losing on summary judgment, DC brought this countersuit against Mr.

27  Toberoff.  As demonstrated below, however, the Anti-SLAPP law requires prompt

28  dismissal of this lawsuit, because all of DC's claims involve communicative acts

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

2

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

that arise from Toberoff's clients' efforts to vindicate their legal rights: in copyright termination notices filed in the U.S. Copyright Office; in years of grinding settlement negotiations accompanied by DC's threats of litigation; and finally in years of litigation that led to Toberoff's victories on behalf of his clients.

DC's Fourth, Fifth, and Six Claims boil down to two contentions – that Toberoff interfered by: (i) wrongfully soliciting the Siegel and Shuster heirs to enter into agreements providing that Toberoff would be their attorney and fund the expense incurred in pursuing their claims; and (ii) encouraging and enforcing the exercise of the heirs' termination rights under the Copyright Act – both of which are plainly protected under the Anti-SLAPP law. All of DC's alleged injuries resulted from the Siegels' and Shusters' struggle "against all odds" to enforce their statutory termination rights, in the Copyright Office and in the courts, instead of settling on DC's terms. *Siegel I,* 542 F. Supp. 2d at 1102 (quotations omitted). Their pre-litigation communications and agreements with an attorney, Toberoff, as they and he marshaled their resources and prepared to enforce rights under the Copyright Act, lie at the core of the Anti-SLAPP statute's promise that strategic lawsuits will not be allowed to deter or delay citizens from enforcing their legal rights.

Because the Fourth through Sixth Claims for Relief fall within the Anti-SLAPP law, the burden is on DC to establish a "reasonable probability" that it will prevail on the merits of these claims – a burden it cannot meet. DC has no reasonable probability of demonstrating a likelihood of success on the merits on any of its three state-law claims against Toberoff and affiliated entities: tortious interference with contract; tortious interference with prospective economic advantage; and declaratory relief under California's unfair competition laws. The claims fail as a matter of law for the reasons extensively detailed in the Motions to Dismiss filed concurrently herewith, and for the additional reasons set forth in Section III, below. DC's claims are time-barred and moot, the heirs breached no agreements, and Toberoff's alleged "interference" consisted of litigation-related

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

3

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  communications immunized by the litigation privilege.  Accordingly, the Court

2  should strike all three claims, and award the Toberoff defendants their attorney's

3  fees as mandated by the Anti-SLAPP statute.[1]

4  **II.  FACTUAL BACKGROUND**

5  **A.      General Background**

6  Author Siegel and illustrator Shuster co-created *Superman*.  *Siegel I*, 542 F.

7  Supp. 2d at 1126-30.  They conceived of *Superman* in the mid-1930s, while in high

8  school, and co-authored *Superman* comic strips.  *Id.* at 1102-05.  In 1938, Siegel and

9  Shuster adapted their preexisting *Superman* strips to a comic-book format and their

10  original *Superman* story was published in "Action Comics No. 1" by Detective

11  Comics Inc., DC's predecessor-in-interest.  *Id.* at 1105-07.  "Action Comics No. 1"

12  contained the essential format for *Superman* stories to come.  *Id*. at 1108-1110.  By

13  agreement dated March 1, 1938, Siegel and Shuster granted Detective worldwide

14  rights in their *Superman* story and character, and DC freely exploited those rights in

15  multiple media for over 70 years.  *Id*. at 1107, 1110.  From 1938 to 1943, Siegel and

16  Shuster wrote hundreds of additional *Superman* stories, and hundreds of *Superman*

17  syndicated newspaper strips.  *Siegel II*, 658 F. Supp. 2d at 1047-56.

18  In 1976, Congress amended the Copyright Act to extend the copyright term,

19  and in response to the plight of authors who lacked bargaining power and, like

20  Siegel and Shuster, had sold their copyrights for a pittance, never realizing fair

21  value for their contributions, Congress gave authors, and their surviving spouses,

22  children, and grandchildren, the right to recapture their copyrights, for the extended

23  term, by terminating prior grants of copyright.  First Amended Complaint ("FAC")

24  ¶ 49; 17 U.S.C. § 304.[2]  Congress intended to give the benefit of the extended

25  

26  [1] *See* Cal. Code Civ. Proc. § 425.16(c)(1); *U.S. ex rel. Newsham v. Lockheed Missile & Space Co., Inc*., 190 F.3d 963, 973 (9th Cir. 1999)

27  [2] *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983-84 (9th Circuit 2008) (noting Congress, in recognition of the "unequal bargaining position of authors," engrafted

28  the termination right into the 1976 Act to provide the benefits of the extended copyright renewal term to authors, rather than to their assignees, along with "the monetary rewards

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  copyright term to authors and their families rather than to grantees, such as DC, for

2  whom the automatic grant of the extended term would have been an unjustified

3  windfall.  *See* H.R. Rep. No. 94-1476 at 140 (1976).  This federal termination right

4  preempts ordinary state law contract principles, as it empowers authors and

5  designated heirs to terminate grants of copyright *without cause*, regardless of the

6  contracting parties' promises, intent or expectations at the time of the grant.  17

7  U.S.C. § 304(c)(5).

8  **B.**     **The Siegels, Independently of Toberoff, Serve Termination Notices and**

9          **Commence Settlement Discussions**

10         In 1996, Jerome Siegel died.  *Siegel I*, 542 F. Supp. 2d at 1113; FAC ¶ 67.

11  He was survived by his widow, defendant Joanne Siegel, and their daughter,

12  defendant Laura Siegel Larson (the "Siegels").  *Siegel I*, 542 F. Supp. 2d at 1114.  In

13  1997, the Siegels began the process of terminating Jerome Siegel's 1938 *Superman*

14  copyright grant to DC.  *Id.*  On April 3, 1997, represented by counsel, the Siegels

15  served seven separate notices of termination under 17 U.S.C. § 304(c), terminating

16  Jerome Siegel's grants or potential grant(s) of copyright, each covering a multitude

17  of works embodying *Superman*.  *Id.*  The parties thereafter engaged in what the

18  Court has termed "settlement" discussions to resolve their legal dispute.  *Id.* at 1115.

19         The day before the termination was to take effect, DC sent a letter to Arthur

20  Levine, then-counsel for Joanne Siegel and Laura Siegel Larson, contesting the

21  "validity and scope" of their termination notices.  *Id.*; Declaration of Nicholas F.

22  Daum ("Daum Decl.")[3] Ex. A (Toberoff Decl. Ex. Q at 171).  Thereafter, the Siegels

23  retained new counsel, the firm of Gang, Tyre, Ramer and Brown, for further

---

24  of a work that may have been initially undervalued, but which later becomes a commercial

25  success."); *see also* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 11.01[A] (2010).

26  [3] All documents and deposition excerpts referenced in the text of this motion have
been attached as exhibits to the Declaration of Nicholas F. Daum.  References herein to
"Ex. __" are references to exhibits attached to the Daum Declaration.  References to "MT

27  Depo," "LSL Depo," "JS Depo," "MWP," "JP," and "KM Depo" are, respectively,
references to the Deposition of Marc Toberoff, Laura Siegel Larson, Joanne Siegel, Mark

28  Warren Peary, Jean Peavy and Kevin Marks.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

settlement negotiations, conducted primarily by Kevin Marks ("Marks") of Gang, Tyre for the Siegels, throughout 2001. *Siegel I*, 542 F. Supp. 2d at 1115; FAC ¶ 68.

## C.  Marc Toberoff Begins Representing the Shuster Family

Joseph Shuster died in 1992. FAC ¶ 51. At his death, he had no surviving widow, children or grandchildren. *Id.* Although he was survived by his siblings, Frank Shuster (who died in 1996) and Jean Peavy ("Peavy"), and by Peavy's two children, these heirs held no termination rights under the 1976 Copyright Act, because Congress provided such rights solely to an author, his/her widow or widower, children, or grandchildren. *See id.*; Public Law. 94-553 1976 S22, at § 304(c)(2). In 1998, Congress amended the 1976 Act to extend the termination right, for the first time, to an "author's executor, administrator, personal representative, or trustee." 17 U.S.C. § 304(c)(2); Pub. Law 105-298 (1998).

In mid-2001, Shuster's nephew, Mark Warren Peary ("Peary"), after researching copyright issues on the internet, sought out attorney Marc Toberoff in connection with the potential termination of Shuster's copyright grants. Exs. B, G (MT Depo at 52:9-25; MWP Depo at 20:5-20:22). Peary's call was Toberoff's first contact with any member or representative of the Siegel or Shuster families. *Id.* Soon thereafter, Toberoff began to provide legal advice to Peavy and Peary (the "Shusters"). Ex. G (MWP Depo at 23:18-20; 23:25-24:3). In November 2001, Peavy and Peary entered into an agreement with Pacific Pictures Corp. ("PPC"), Toberoff's "loan-out" company, "for the purpose of retrieving, enforcing and exploiting all of Joe Shuster and his estate's rights, claims, copyrights, property, title and interests in and to [Shuster's] creations." Ex. C (MT Depo Ex. 13, at p. 1) (the "2001 PPC Agreement"); FAC ¶ 60. The 2001 PPC Agreement provided for the establishment of the Estate of Joseph Shuster through probate proceedings, and that the venture would "retain Marc Toberoff, Esq. to render legal services." Ex. C (MT Depo Ex. 13, at ¶ 7); FAC ¶ 64. Toberoff has provided legal advice to Peavy and Peary continuously since November 2001. Ex. B (MT Depo at 65:1-66:22).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

6

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

**D.      The Siegels Break Off Settlement Negotiations With DC**

Meanwhile, the Siegels (still represented by Gang, Tyre) and DC continued settlement negotiations.  On October 19, 2001, Gang Tyre sent to DC a "six page letter outlining the substance of a settlement offer from defendants." *Siegel I*, 542 F. Supp. 2d at 1136.  On October 26, 2001, DC responded with its own outline and counter-offer.  *Id.*  DC's outline was materially different than the Siegels' letter summary of the proposed settlement, including differences with regards to the scope of the rights granted, the relevant indemnities and other warranties, and additional issues.  *See id.*  Months later, on February 1, 2002, DC's outside counsel provided the Siegels with a 56-page draft long-form settlement agreement.  *Id.* at 1115; Ex. P (LSL Depo Ex. 25).  The draft agreement also contained numerous differences from Marks' October 19 letter and even DC's October 26 letters.  *Id.* at 1137-40.

### 1.      Toberoff Does Not Contact the Siegel Family

As Toberoff began to advise the Shuster family in November 2001, he attempted to learn the status of the Siegels' parallel negotiations with DC.  Ex. B (MT Depo 86:1-87:4).  The Siegels' prior counsel, Arthur Levine, informed Toberoff that Marks represented the Siegels in negotiations with DC.  *Id.* at 86:22-87:1).  Accordingly, Toberoff left a phone message for Marks on November 29, 2001.  Marks did not return the call.  Ex. R (KM Depo 151:4-11); Ex. B (MT Depo 86:20-21).  On February 6, 2002, Toberoff left word for Marks again.  Exs. R, S (KM Depo 151:18-152:2 & Ex. 3 at GTBR 604).  A few days later, Marks called Toberoff back, and the two had a brief conversation, in which Marks informed Toberoff that the Siegels were in negotiations with DC, and declined to speak with Toberoff about the Siegels' *Superman* interests.  Exs. B, R (MT Depo 90:16-92:9; KM Depo 151:18-153:20).  The conversation did not proceed further.  Ex. B (MT Depo 90:21-91:1).  Apart from the unanswered November 29, 2001 message and the brief February 6, 2002 call with Marks, Toberoff had no contact with any member or representative of the Siegel family until late-July or early August 2002.  Exs. B,

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

7

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  K, M (MT Depo 94:10-97:24; JS Depo 33:24-34:1, 41:1-3; LSL Depo 17:6-8).

2  **2.  Joanne Siegel Informs DC That There Will Be No Deal**

3  On May 9, 2002, Joanne Siegel ("Joanne"), with no involvement by counsel,

4  sent a letter to Richard Parsons, the COO of DC's parent company, AOL Time

5  Warner, Inc.  In that letter, she expressed her anger at the draft contract provided by

6  DC, and declared unequivocally that an agreement was "impossible."  Ex. O (LSL

7  Depo Ex. 23) ("After four years we have no deal and this contract makes an

8  agreement impossible.")  No lawyer helped her write the letter, and she did not

9  discuss the letter with any lawyer before sending it.  Ex. K (JS Depo 33:17-34:1);

10 Ex. Z at 5. At the time Joanne sent this letter, neither of the Siegels had ever had any

11 contact with Toberoff.  Exs. K, M (JS Depo 33:17-34:1, 41:1-3; LSL Depo 17:6-8).

12 **E.  The Siegels Fire Gang Tyre and Then Hire Toberoff**

13 In late July 2002, Toberoff called Marks to inquire as to the status of the

14 Siegels' termination. Ex. B (MT Depo 94:10-97:19).  Earlier in 2002, Toberoff and

15 Ari Emanuel ("Emanuel") of the Endeavor Talent Agency, now William Morris

16 Endeavor, had formed a joint venture, IP Worldwide, LLC ("IP Worldwide"), for

17 the purpose of acquiring and talent packaging intellectual property rights.  Exs. B, R

18 (MT Depo 32:12-14, 116:6-23; KM Depo 168:13-20).  Toberoff asked Marks if the

19 Siegels would be interested in licensing their rights. *Id.* (MT Depo 97:14-19; KM

20 Depo 166:23-167:3).  Marks was receptive and told Toberoff that he should present

21 any offers. *Id.* (MT Depo 94:17-95:2, 97:14-19; KM Depo 166:23-167:3).

22 Several days later, in early August 2002, Marks held a conference call with

23 Toberoff and Emanuel, during which Emanuel made a proposal to purchase the

24 Siegels' rights for $15 million plus a portion of the "back end."  Exs. B, R. (MT

25 Depo 99:5-100:1, 103:1-9; KM Depo 168:2-169:5).  Marks conveyed this August

26 2002 offer to the Siegels, but they did not respond to Toberoff or Emanuel.

27 Toberoff had no further contact with Marks or the Siegels until early October 2002.

28 Exs. B, R (MT Depo 105:24-106:23; KM Depo 169:23-170:12, 171:14-21, 172:14-

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

8

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   17, 174:17-21).

2          On September 21, 2002, the Siegels sent a letter to their counsel at Gang

3   Tyre, with a copy to Time Warner (DC's parent), that terminated Gang Tyre and

4   provided "formal notification that we are totally stopping and ending all

5   negotiations with DC Comics, Inc., its parent company AOL Time Warner and all of

6   its representatives and associates."  Ex. Q (LSL Depo Ex. 41) (Sept. 21, 2002 letter

7   to Marks and Ramer).  The same day, the Siegels sent a letter to DC's President,

8   stating that "after many years of difficult negotiations with your representatives

9   culminating in an offer sent to us on February 4, 2002, irreconcilable differences

10  exist that cannot be overcome."  Ex. L (JS Depo Ex. 43) (Sept. 21, 2002 letter to

11  Levitz); *Siegel I*, 542 F. Supp. 2d at 1136.

12         The September 21 letters were sent before either of the Siegels had met

13  Toberoff, and they did not consult Toberoff in any way concerning these letters.  Ex.

14  M (LSL Depo 261:17-262:7).  In early October 2002, Joanne Siegel contacted

15  Toberoff.  Exs. B, M (MT Depo 106:1-107:7, 135:1-6; LSL Depo 17:6-13).  Joanne

16  Siegel informed Toberoff that she had gotten his name from Jean Peavy, and that

17  she was looking for a lawyer to represent her in connection with the Siegels'

18  termination rights.  Ex. B (MT Depo 107:8-24).  The Siegels thereafter formed an

19  attorney-client relationship with Toberoff.  Exs. B, K, M (MT Depo 109:14-110:9;

20  JS Depo 41:1-3; LSL Depo 17:6-13).[4]

21  **F.     The Commencement of the *Siegel* Litigation**

22         In November 2002, the Siegel family, now represented by Toberoff, filed an

23  _____

24         [4] After this relationship formed, in October 2002, Joanne Siegel, and Laura Siegel
    Larson entered into an agreement with IP Worldwide (the "IP Worldwide Agreement"),

25  dated as of October 3, 2002.  Ex. F (MT Depo Ex. 18).  Under this agreement, which had
    an 18-month term, the Siegels agreed to "grant[] [IP Worldwide] the exclusive right to

26  represent [the Siegels' rights] throughout the world in negotiating and assisting [the
    Siegels] to arrange and negotiate the sale, lease, license, and all other dispositions or

27  exploitations of the Rights."  *Id.* ¶ 1.  IP Worldwide would "provide Marc Toberoff's legal
    services with respect to all legal contracts in connection with all of the above."  *Id.* ¶ 2.

28  The IP Worldwide Agreement was briefly extended, and then expired of its own force as
    of on April 23, 2005, and has had no effect for more than five years. *Id.* ¶ 5.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

9

1  additional notice of termination regarding *Superboy*.  Ex. N (LSL Depo Ex. 17).

2  Thereafter, Toberoff met with Warner Bros.' General Counsel, who acted on behalf

3  of DC, to engage in negotiations regarding *Superman* and *Superboy*, but to no avail.

4  Ex. V (John Schulman Depo 94:23-95:19).  In October 2004, the Siegels,

5  represented by Toberoff, filed two actions in this Court, No. 04-CV-08400 ODW

6  (RZx) (*Superman*) & 04-CV-08776 ODW (RZx) (*Superboy*), seeking, among other

7  remedies, declaratory relief that the *Superman* and *Superboy* terminations were valid

8  and enforceable.  Prior to filing these actions, Toberoff entered into a formal legal

9  retainer agreement with the Siegels and has litigated these two cases for nearly six

10  years pursuant to such retainer agreements.  Ex. B (MT Depo. 114:15-18).

11  **G.      The Shuster Termination and Cancellation of the PPC Agreements**

12         Meanwhile, as contemplated in the 2001 PPC Agreement, the estate of Joseph

13  Shuster (the "Shuster Estate") was probated.  Mark Warren Peary was appointed as

14  the Shuster Estate's personal representative (the "Shuster Executor").  Ex. G (MWP

15  Depo 56:14-25).  In October 2003, the 2001 PPC Agreement was modified, creating

16  a new agreement (the "2003 PPC Agreement") to add as a party Mark Warren Peary

17  in his capacity as personal representative of the Shuster Estate.  Exs. B, D (MT

18  Depo 70:13-17 & Ex. 14).  Like the 2001 PPC Agreement, the 2003 PPC

19  Agreement provided for Toberoff's continued engagement as counsel.  *Id*. at ¶ 2.

20         In November 2003, the Shuster Executor filed in the U.S. Copyright Office

21  and served on DC a formal notice of termination under 17 U.S.C. § 304(d) (the

22  "Shuster Termination"), terminating Joseph Shuster's *Superman* copyright grants.

23  *Siegel I*, 542 F. Supp. 2d at 1114, n.3.  Toberoff prepared the termination notice and

24  proof of service ***as "counsel for the Estate of Joseph Shuster."***  Ex. H (MWP Depo

25  Ex. 7) (Notice of Termination at 10, 13)(emph. added); FAC ¶ 93.  DC now contests

26  the validity of the termination.  FAC ¶¶ 106-164.  On April 28, 2005, DC sent a

27  letter to Peavy and Peary that repeated DC's arguments against the terminations in

28  the *Siegel* litigation, and made a settlement offer to the Shusters.  Ex. J (MWP Depo

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Ex. 10).  The Shuster Executor declined this offer.  Ex. G (MWP Depo 68:18-20).

2       In September 2004, Toberoff, Jean Peavy, and Mark Warren Peary cancelled

3   the 2001 and 2003 PPC Agreements.  Ex. E (MT Depo Ex. 15).  Thus, neither of the

4   PPC Agreements has had any force or effect for nearly six years.  PPC was

5   dissolved in 2009.  RJN in support of Motion to Dismiss Fourth and Fifth Causes of

6   Action ("MTD RJN") ¶ 7.  For nearly six years, Toberoff has had only a legal

7   retainer agreement with the Shuster Executor and Jean Peavy.  Ex B (MT Depo,

8   62:9-14; 78:19-23).  The Shuster family is still represented by Toberoff.

9   **H.     The Siegels Win Summary Judgment in the *Siegel* Litigation**

10      Discovery in the *Siegel* litigation lasted over two years.  The parties produced

11  voluminous documents and DC took depositions of all of the witnesses to the

12  Siegels' and Shusters' dealings with Toberoff.  On April 30, 2007, the parties filed

13  cross-motions for partial summary judgment.  On March 26, 2008, the Court issued

14  its ruling on the parties' summary judgment motions.  *See Siegel I*, 542 F. Supp. 2d

15  1098.  The Court granted the Siegels' motion in dominant part.  Notably, the Court

16  held that "all the Superman material contained in Action Comics, Vol. 1 [the first

17  published *Superman* comic-book] is not a work-made-for-hire and is therefore

18  subject to termination."  *Id.* at 1130.  The Court rejected many of DC's affirmative

19  defenses, including DC's argument that the parties had a binding settlement

20  agreement as a result of the 2001-2002 negotiations.  *Id.* at 1139.  In 2009, the Court

21  further ordered that a number of additional *Superman* works had been successfully

22  "terminated," *Siegel II*, 658 F. Supp. 2d at 1063-83, and thereafter denied DC's

23  motion to reconsider that ruling.  *Siegel III*, 690 F. Supp. 2d at 1073-74.

24  **I.     DC Exploits A Theft Of Privileged And Confidential Information From**

25  **Toberoff's Law Firm In Filing this Action**

26      On May 14, 2010, DC filed the instant action against Toberoff, the Siegels

27  and Shusters, and attached to its First Amended Complaint an anonymous cover

28  letter (the "Cover Letter"), calling it the "Toberoff Timeline."  DC acknowledges in

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

11

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   its FAC that the Cover Letter was written by an attorney and former Toberoff &
2   Associates employee (FAC ¶ 102).  Yet, DC fails to mention that the Cover Letter,
3   sent  to Warner Bros.' General Counsel (sometime prior to June 28, 2006) in the
4   midst of the *Siegel* litigation and in blatant violation of the attorney's duties of
5   loyalty and confidentiality to the Siegels and Shusters,  enclosed reams of privileged
6   attorney-client documents ***stolen*** by the attorney from Toberoff's law firm.  Ex. BB
7   (Toberoff Sept. 20, 2007 Decl. ¶¶ 7-14).  The inadmissible Cover Letter is set up as
8   an obvious "hit piece" against Toberoff, and purports to discuss the stolen privileged
9   documents the attorney handed over to Warner Bros.  Ex. AA, BB (Toberoff Mar.
10  23, 2007 Decl. ¶¶ 25-26; Toberoff Sept. 20, 2007 Decl. ¶¶ 7-8).

11  **III.  ARGUMENT**

12  **A.     The Anti-SLAPP Law**

13          California's Anti-SLAPP law, Code of Civil Procedure ("CCP") § 425.16,
14  provides substantive immunity from suit for claims that interfere with the exercise
15  of speech rights, including the right to communicate with government offices, or
16  with private parties in contemplation or furtherance of litigation.  *See Mindys*
17  *Cosmetics, Inc. v. Dakar*, --- F.3d. ---, 2010 WL 2652480 at *1 (9th Cir. July 6,
18  2010); *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995); *Neville v.*
19  *Chudacoff*, 160 Cal. App. 4th 1255, 1268-69 (2008).  The Anti-SLAPP law applies
20  to California state-law claims in federal court.  *Batzel v. Smith*, 333 F.3d 1018, 1025
21  (9th Cir. 2003).  "The hallmark of a SLAPP suit is that it lacks merit and is brought
22  with the goals of obtaining an economic advantage over a citizen party by increasing
23  the cost of litigation to the point that the citizen party's case will be weakened or
24  abandoned, and of deterring future litigation."  *United States v. Lockheed Missiles &*
25  *Space Co.*, 190 F.3d 963, 970-71 (9th Cir. 1999).   It is a remedy designed to
26  quickly dispose of "lawsuits brought primarily to chill the valid exercise of
27  constitutional rights of freedom of speech and petition for redress of grievances."
28  CCP § 425.16(a); *Dixon v. Superior Court*, 30 Cal. App. 4th 733, 741 (1994).

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1
12
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1    Anti-SLAPP motions to strike involve a two-step process.  First, a defendant

2  is required to make a prima facie showing that the plaintiff's suit arises from activity

3  that is protected under the Anti-SLAPP law.  *See Neville*, 160 Cal. App. 4th at 1261-

4  62.  Second, "[t]he burden then shifts to the plaintiff to establish a reasonable

5  probability that the plaintiff will prevail on his or her [] claim."  *Batzel*, 333 F.3d at

6  1024.  In applying § 425.16, courts must heed the Legislature's admonition that it be

7  "construed broadly."  *Hilton v. Hallmark Cards*, 580 F.3d 874, 882-83 (9th Cir.

8  2009).  Even if a cause of action concerns *some* activity that is not protected under

9  § 425.16 in addition to protected activity, the cause of action will be subject to the

10  Anti-SLAPP law provided that the protected activity is not "merely incidental" to

11  the unprotected conduct.  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962-963 (2010).

12  **B.    The Fourth, Fifth and Sixth Claims Concern Conduct Protected By the**

13          **Anti-SLAPP Law Because They Concern Statements Made In**

14          **Connection With Litigation and Filings In the U.S. Copyright Office**

15    California enacted the anti-SLAPP statute "in response to the legislature's

16  concern about civil actions aimed at private citizens to deter or punish them for

17  exercising their political or *legal* rights.'"  *Mindys Cosmetics*, 2010 WL 2652480 at

18  *1 (quoting *Newsham*, 190 F.3d at 970) (emphasis added). The Anti-SLAPP statute

19  applies to claims based upon "written or oral statement[s] or writing[s] made in

20  connection with an issue under consideration or review by a legislative, executive,

21  or judicial body, or any other official proceeding."  CCP § 425.16(e)(2).  Courts

22  routinely apply this provision to "litigation-related" activities, and have adopted an

23  "expansive view of what constitutes litigation-related activities within the scope of

24  section 425.16."  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2002).  If a

25  statement "concern[s] the subject of the dispute" and is made "in anticipation of

26  litigation 'contemplated in good faith and under serious consideration,'" it falls

27  within § 426.16(e).  *Neville*, 160 Cal. App. 4th at 1268 (quoting *Rohde v. Wolf*, 154

28  Cal. App. 4th 28, 36-37 (2007)).  The Ninth Circuit recently clarified that "an

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

13

1  attempt to establish a property right under a comprehensive federal statutory

2  scheme" (in that case, a trademark application) is litigation-related activity that is

3  protected by the Anti-SLAPP law.  *Mindys Cosmetics*, 2010 WL 2652480 at *3.

4          **1.**    <u>**The Fourth and Fifth Claims Fall Within § 425.16(e)**</u>

5          **(a)**    <u>**The Fourth Claim Arises From the Encouragement**</u>

6          <u>**of the Shuster Executor to Exercise His Constitutional Right**</u>

7          <u>**to Petition through Filing With a Government Agency**</u>

8        The right to petition protected by the Anti-SLAPP law is clearly implicated

9  where, as here, an individual acts under a comprehensive federal statutory scheme to

10  establish a property right.  *See* CCP § 425.16(e)(1) (right to petition under Anti-

11  SLAPP law includes "any written or oral statement or writing made before … any

12  other official proceeding authorized by law"); *Briggs v. Eden Council for Hope and*

13  *Opportunity,* 19 Cal. 4th 1106, 1109-10 (1999) (granting anti-SLAPP motion where

14  lawsuit based on filing with government agency and assisting in litigation); *Mindys*

15  *Cosmetics*, 2010 WL 2652480 at *3.

16        Toberoff prepared the Shuster Termination so the Shuster Executor could

17  exercise his statutory right of termination.  *See* 73 Fed. Reg. 3899 37 (Copyright

18  Office notice, Jan. 23, 2008) ("The termination provisions are not self-executing.").

19  The formal "Notices of Termination" were legally operative documents, complete

20  with citations to caselaw, proofs of service and other indicia of the careful

21  draftsmanship of a lawyer.  Exs. H, I (MWP Depo. Exs. 7, 8).  As required by

22  statute, the Shuster Termination was filed and recorded with the U.S. Copyright

23  Office.  37 *See* 17 U.S.C. 304(c)(4); 304(d)(1); 203(a)(4).  The notice of termination

24  was required to contain specific information, without which the Copyright Office

25  will refuse to record such a termination.  *See* 37 C.F.R. 201.10(f).  *See Siegel I*, 542

26  F. Supp. 2d at 1101 ("The termination provisions in the Copyright Act of 1976 have

27  aptly been characterized as formalistic and complex. . .'") (citation omitted).

28        Because DC's Fourth Claim is clearly based upon filing with the U.S.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

14

1   Copyright Office and service on DC of statutory termination notices, under clear

2   Ninth Circuit precedent it is subject to the protections of the Anti-SLAPP law. *See*

3   *Mindys Cosmetics*, 2010 WL 2652480 at \*4 (filing with trademark office is an

4   exercise of the right to petition under § 425.16(e)).

5          **(b)**    **The Fourth and Fifth Claims Arise From the Encouragement**

6                **of the Shuster Executor to Exercise His Constitutional Right**

7                **to Petition byTaking Legal Action**

8        Courts have consistently applied the litigation-related protections of the Anti-

9   SLAPP law to strike claims for tortious interference with contract and/or economic

10  relations.  For example, the *Ludwig* Court, 37 Cal. App. 4th at 12-13, used the Anti-

11  SLAPP law to dismiss claims for interference with contract and economic advantage

12  based on a non-attorney defendant's providing resources to support litigation,

13  holding that the anti-SLAPP law applies to those who "formally fil[e] a lawsuit" as

14  well as those "who support[] and encourage[] the filing of a lawsuit."  *See Briggs,*

15  19 Cal. 4th at 1110, 1115 (a non-attorney's assistance "in prosecuting a…court

16  action" falls under §425.16(e)).  In *Dove Audio v. Rosenfeld, Meyer & Susman,* 47

17  Cal. App. 4th 777, 784-85 (1996), the court used the Anti-SLAPP law to strike a

18  claim for interference with economic relations based on a defendant sending a letter

19  to private parties regarding a planned complaint concerning royalty payments.  That

20  a "communication was made to other private citizens rather than to [an] official

21  agency does not exclude it from the shelter of the Anti-SLAPP suit statute." *Id.* at

22  784; *See also Briggs,* 19 Cal. 4th at 1117.  Critically, these cases do *not* require that

23  the assisting party have acted as a lawyer, or that he even *be* a lawyer, only that

24  assistance was provided in the litigation process.

25        In its Fourth Claim, DC alleges that Toberoff and PPC tortiously interfered

26  with DC's 1992 Agreement with Frank Shuster and Jean Peavy, by inducing Mark

27  Warren Peary to "file[] a probate action in Los Angeles Superior Court to establish

28  the Shuster Estate" and to take legal action to terminate Joseph Shuster's copyright

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  grants, which, as is apparent from this suit, was a prelude to litigation.  FAC ¶¶ 65,

2  177.  The Fourth Claim further alleges that Toberoff manipulated claims regarding

3  *Superboy* so as to benefit the Siegels in their litigation.  FAC ¶ 178.  These

4  allegations that Toberoff induced the filing of probate proceedings and a statutory

5  notice of termination fall clearly within § 425.16(e)'s protection for such activities.

6      Similarly, the Fifth Claim is directly based on alleged inducements to litigate.

7  The gravamen of the claim is that Toberoff allegedly made improper offers to the

8  Siegels, causing them to reject a settlement proposal by DC, and to initiate litigation

9  to vindicate their recaptured *Superman* copyrights.  FAC ¶ 186.  This allegation –

10  the center-piece of DC's Fifth Claim – is unquestionably based on support and

11  encouragement of litigation.  As such, the Fifth Claim unambiguously falls within

12  Section 425.16(e).  *See e.g., Ludwig*, 37 Cal. App. 4th at 17.

13      **(c)   The Fourth and Fifth Claims Arise from Protected**

14      **Communications in the Context of Anticipated Litigation**

15      **and Settlement Discussions**

16      The Fourth and Fifth Claims are also subject to the Anti-SLAPP law because

17  the purportedly tortious communications occurred in the context of settlement

18  negotiations and anticipated litigation over statutory termination rights.  The Anti-

19  SLAPP law, like the litigation privilege, applies to statements that are reasonably

20  relevant to pending or *contemplated* litigation.  *See Neville*, 160 Cal. App. 4th at

21  1266.  Communications related to the *settlement* of anticipated litigation are also

22  clearly protected by the Anti-SLAPP law.  *See Seltzer v. Barnes*, 182 Cal. App. 4th

23  953, 963 (2010) ("[S]ettlement negotiations are an exercise of the right to petition

24  and statements made as part of such negotiations are in connection with the

25  underlying lawsuit for purposes of [§425.16(e)(2)]"); *GeneThera, Inc. v. Troy &*

26  *Gould Prof. Corp.,* 171 Cal. App. 4th 901, 907-908 (2009) (claim for interference

27  based on a settlement offer in another action barred by Anti-SLAPP law).

28  With respect to the Fourth Claim, the Shusters' actions related to the Shuster

1    Termination were plainly related to contemplated litigation and settlement.  The

2    Shusters knew, before they reached out to Toberoff, that the Siegels were in the

3    midst of settlement negotiations and threatened litigation with DC.  *See* Section

4    II.B., *supra*.  In March 2001, well before meeting Toberoff, Jean Peavy sent Joanne

5    Siegel a letter, noting that "[t]here was so much injustice done that I am hoping that

6    the wrongs will be righted and that *your attorney* will get a fair deal for you."  Ex. Y

7    (JP Depo Ex. 17) (emphasis added).  The 2001 and 2003 PPC Agreements between

8    Toberoff and the Shusters clearly contemplate litigation related to the termination of

9    Joseph Shuster's copyright grants.  Both agreements state that the venture would

10   pay "any and all attorneys' fees, costs and disbursements in connection with any

11   legal actions or disputes concerning the enforcement and/or defense of the Rights"

12   and would retain Toberoff's services "to render legal services . . . including in

13   connection with all legal disputes, litigation, arbitration and/or mediation regarding

14   the Rights."   Exs. C, D (MT Depo Exs. 13 & 14) (2001 & 2003 PPC Agreements).

15        In 2005, DC sent a letter directly to Peavy and Peary, that referenced its

16   lengthy litigation with the Siegels and its purported defenses therein, and made an

17   initial settlement offer.  Ex. J (MWP Depo Ex. 10).  The entire process surrounding

18   the Shuster Termination was conducted in the arena of threatened litigation and

19   settlement, which brings the Fourth Claim squarely within the Anti-SLAPP law.

20        As for the Fifth Claim, it is equally clear that Toberoff's communications

21   with the Siegels occurred in connection with settlement negotiations and anticipated

22   litigation.  Litigation between DC and the Siegels was contemplated as early as

23   1997, when the Siegels served their notices of termination.  By April 15, 1999, DC

24   had sent the Siegels a letter stating[5] that it would litigate the terminations if the

25   _____

26   [5] The letter stated: "[O]ur client has no alternative but to . . . [put] your clients on
     clear notice … of DC Comics' rights and of its determination … to take all appropriate and
     necessary steps to protect [its] rights. First, your clients are hereby put on notice that <u>DC</u>
27   <u>Comics rejects both the validity and scope of the Notices and will vigorously oppose any</u>
     <u>attempt by your clients to exploit or authorize the exploitation of any copyrights, or indeed</u>
28   <u>any rights at all</u>, in Superman." Ex. A (Toberoff Decl. Ex. Q at 1).(emphasis added).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1                                    17
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  parties failed to settle.  Ex. A (Toberoff Decl. Ex. Q).  The Siegels entered into a

2  tolling agreement with DC, in which both parties agreed that neither would "assert

3  any statute of limitations . . . defense" for the period in which they were engaged in

4  negotiations.  *Id.* (Toberoff Decl. Ex. Z).  The parties also agreed to treat their

5  communications as confidential settlement communications under Cal. Evid. Code §

6  1152.  Ex. T, U (KM Depo Exs. 5 & 6).  The parties consistently referred to their

7  "settlement" negotiations, and the attorneys involved have referred to the litigation

8  "looming over" over such negotiations.  Ex. R (KM Depo. 45:17-46:6).  The Court

9  has already specifically characterized DC's discussions with the Siegels as

10  "settlement negotiations."  *Siegel I*, 548 F. Supp. 2d at 1136.

11           **(d)       The Fourth and Fifth Claims Arise From Protected**

12                    **Solicitation of Attorney-Client Relationships**

13           The Fourth and Fifth Claims also fall within the Anti-SLAPP law because

14  they relate directly to the establishment of an attorney-client relationship.  The Anti-

15  SLAPP law applies to actions based upon the allegedly improper solicitations of

16  clients by attorneys.  *See Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 489

17  (2008) (in action involving "improper solicitation of another attorney's client,"

18  holding "it is difficult to conjure a clearer scenario than the case before us of a

19  lawsuit arising from [Anti-SLAPP] protected activity.").  Indeed, California Civil

20  Code § 47(b) has long provided immunity against lawsuits based on the solicitation

21  of opposing parties in ongoing litigation.  As the California Supreme Court has held,

22  a claim based upon "alleged misrepresentations" of a lawyer "in the course of

23  discussions [over] the possibility of being retained to prosecute [an] action" cannot

24  serve as the basis for a lawsuit brought by anyone other than the client to whom the

25  statements were addressed.  *Rubin v. Green*, 4 Cal. 4th 1187, 1196-98 (1993).

26           The Fourth Claim is based upon the formation of an attorney-client

27  relationship between Toberoff and the Shuster family.  Immediately after he was

28  contacted by Peary in mid-2001, Toberoff entered into an attorney-client

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1
18
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1  relationship with, and began providing legal advice to, Peary and Peavy.  Ex. G

2  (MWP Depo. 23:18-20, 23:25-24:3).  That relationship – including the advice given

3  by Toberoff to Peary and Peavy as to Peary's exercise of termination rights – is

4  clearly the basis of DC's Fourth Claim.  *See* FAC ¶¶ 177-179.  Accordingly, the

5  Fourth Claim is subject to the Anti-SLAPP law.

6        The Fifth Claim is likewise premised on purportedly tortious actions taken by

7  Toberoff to induce the Siegels to become his clients and is thus, equally subject to

8  the Anti-SLAPP law.  Toberoff formed an attorney-client relationship with the

9  Siegels in October 2002, immediately after Joanne Siegel contacted him, and he has

10  represented the Siegels ever since.  Exs. B, K, M (MT Depo 106:1-107:7, 109:14-

11  110:9, 135:1-6; JS Depo 41:1-3; LSL Depo 17:6-13).[6]

12        **2.**        **The Sixth Claim Falls Within § 425.16(e)**

13        DC's Sixth Claim alleges that "[t]he various copyright assignment and

14  consent agreements between Toberoff and/or his companies, the Siegel Heirs, and

15  the Shusters Heirs, are void and unenforceable, including under California's unfair

16  competition laws," and incorporates by reference the preceding allegations,

17  including those related to the 2001 and 2003 PPC Agreements and the IP

18  Worldwide Agreement.  *See* FAC ¶¶ 187-188.  The California Supreme Court has

19  specifically held that the unfair competition laws may not be used as an end-run

20  around the protections afforded by the laws barring suits related to the solicitation of

21  litigation.  *See Rubin*, 4 Cal. 4th at 1203 ("[P]lacing in the hands of a litigation

22  adversary a weapon with the tactical potential of a statutory unfair competition

23  claim [] would promote all of the evils we have described above as accompanying

24

25        [6] DC's allegation (*e.g.* FAC ¶¶ 64, 83) that Toberoff did not then have a "legal
retainer agreement" with these clients is of no moment; their clear testimony was that

26  Toberoff acted as their lawyer, and a formal retainer agreement is not needed to form an
attorney-client relationship.  *See Arden v. State Bar*, 52 Cal. 2d 310, 315 (1959) ("[A]n

27  attorney-client relationship existed. The fact that there were no formal arrangements is
immaterial."); *Brandlin v. Belcher*, 67 Cal. App. 3d 997, 1001 (1977) ("[N]either a retainer

28  nor formal agreement is required to establish the attorney-client relationship.")

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

19

**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1  retaliatory suits based on litigation-related communications."); *Thornton v. Rhoden*,

2  245 Cal. App. 2d. 80, 99 (1966) ("The salutary purpose of the [litigation] privilege

3  should not be frustrated by putting a new label on the complaint.").[7]

4        DC's challenge to these alleged agreements under the unfair competition laws

5  thus invokes the litigation-protection provisions of the Anti-SLAPP law.  Each of

6  the agreements at issue was expressly entered into with respect to Toberoff's legal

7  services regarding the Siegel Termination and Shuster Termination, respectively.

8  For instance, as noted above, both the 2001 and 2003 PPC Agreements specifically

9  refer to employing Toberoff's legal services (Ex. C ¶ 7, Ex.  D ¶ 2), and this was

10 clearly understood by Toberoff's clients.  Ex. G (MWP Depo 25:16-26:4).  DC's

11 effort to attack contracts for the provision of legal services in connection with the

12 termination notices, settlement discussions, and anticipated litigation strikes at the

13 heart of protected activity under the Anti-SLAPP statute.[8]

14 **C.    The Fourth, Fifth and Sixth Claims Are Protected Because They Concern**

15       **Statements Made In Connection With A Public Issue**

16       DC's Fourth, Fifth and Sixth claims also fall within the Anti-SLAPP statute

17 under a separate prong, CCP § 425.16(e)(4), which protects actions that "concern[]

18 an exercise of free speech rights in connection with a public issue."  *Id.*  The instant

19 litigation, which concerns control of the rights to the iconic character *Superman*, is

20 indisputably a public issue:  *Superman* is clearly "in the public eye;" the litigation

21

22       [7] The protections of § 425.16(e)(2) are similar to California's "litigation privilege,"
   contained within California Civil Code § 47(b). "[T]he two statutes serve similar policy

23 interests, and courts look to the litigation privilege [section 47] in construing the scope of
   [section 425.16,] subdivision [(e)(2)] with respect to the first step of the two-step anti-

24 SLAPP inquiry."  *See Neville*, 160 Cal. App. 4th at 1262-63.  Accordingly, the arguments
   and facts set forth above that demonstrate why the Fourth, Fifth and Sixth Claims fall

25 within 425.16(e)(2) also mean that such claims are barred by the litigation privilege. *See
   Neville*, 160 Cal. App. 4th at 1262.

26       [8] DC has also alleged that a consent agreement exists between the Siegels and

27 Shusters regarding settlement.  FAC ¶ 170, 188.  As any such agreement would be directly
   related to the settlement of ongoing litigation, DC's claim is clearly subject to the Anti-

28 SLAPP law.  *See Seltzer*, 182 Cal. App. 4th at 962.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

20

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   concerns "conduct that could directly affect a large number of people beyond the

2   direct participants;" and this is "a topic of widespread, public interest." *Hilton v.*

3   *Hallmark Cards*, 580 F.3d 874, 886 (9th Cir. 2009).[9]   It is beyond dispute that

4   *Superman* and *Superboy* are matters of public interest, as are the circumstances of

5   their creation, the ownership of rights therein, and contentious litigation relating

6   thereto.  FAC ¶¶ 34-37 ("Superman has remained constantly in the public's eye").[10]

7   **D.    The Fourth, Fifth and Sixth Claims Have No Likelihood of Success on the**

8   **Merits**

9        **1.    The Motion to Dismiss Arguments Are Incorporated By Reference**

10           Because the Fourth, Fifth, and Sixth Claims all fall within the Anti-SLAPP

11   statute, DC has the burden of establishing through admissible evidence a

12   "reasonable probability" it will prevail on each claim.  *Batzel*, 333 F.3d at 1024.  DC

13   cannot meet its burden.  Simultaneously with this motion, the Toberoff defendants

14   have moved to dismiss the Fourth and Fifth Claims pursuant to F.R.C.P. 12(b)(6),

15   and the Siegel and Shuster defendants have moved to dismiss the Sixth Claim.  To

16   avoid repetition, the arguments from those motions and supporting papers, which

17   explain why the Fourth, Fifth and Sixth Claims have no merit whatsoever as matters

18   of law, are incorporated by reference here.[11]  There are several additional reasons,

19   _____

20      [9] *Hilton* articulated the three-factor test, quoted above, to determine if an issue is
"public." In *Hilton*, the Ninth Circuit applied this test to find that a suit brought by the
21   celebrity Paris Hilton in connection with an alleged misuse of her image on greeting cards
fell within the Anti-SLAPP law.  *Id.* at 887.

22      [10] There can also be no reasonable dispute that this action concerns an exercise of
free speech rights.  California law requires merely that a defendant's action be
23   "communicative" to be an exercise of free speech rights.  *See Hilton*, 580 F.3d at 884.
("The California Supreme Court has not drawn the outer limits of activity that furthers the
24   exercise of free speech rights. It seems to suffice, however, that the defendant's activity is
communicative.").

25      [11] In short, those motions explain that the Fourth Claim for tortious interference
with contract is barred:  (1) because DC has failed to allege any actual interference or a
26   valid contract, (2) by the statute of limitations, and (3) by California's litigation privilege.
The Fifth Claim for tortious interference with prospective economic advantage, is barred:
27   (1) by California's litigation privilege and (2) by the statute of limitations.  The Sixth
Claim, for unfair competition, is barred because: (1) DC has none of the claimed rights as a
28   matter of law and therefore lacks standing, (2) it is preempted by the Copyright Act, (3) it

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  arising from matters not pleaded in DC's First Amended Complaint, why DC's

2  claims are meritless that, while inappropriate for a Rule 12(b)(6) motion, may be

3  considered in connection with this Anti-SLAPP motion and are set forth below.

4          **2.      The Fifth Claim Fails Because There Is No Evidence That Toberoff**

5                  **Interfered With the Purported Economic Relationship**

6          The Fifth Claim has no likelihood of success on the merits because the record

7  establishes that Toberoff did not cause the Siegels to end negotiations with DC.  To

8  prevail on a claim for tortious interference with economic advantage, the plaintiff

9  must show that it is "reasonably probable that [its] prospective economic advantage

10  would have been realized but for the defendant's interference."  *Youst v. Longo*, 43

11  Cal. 3d 64, 71 (1987).  Here, there is no basis for asserting that Toberoff's actions

12  proximately caused a disruption to a prospective economic relationship of DC.

13          The FAC itself specifies that Toberoff's allegedly "wrongful acts" occurred

14  "[i]n or around August, 2002," and the above record evidence makes clear that the

15  first substantive contact between Toberoff and the Siegel's attorney, Marks, was in

16  late July or early August 2002.  FAC ¶ 77.[12]  However, August 2002 was three

17  months <u>after</u> Joanne Siegel had sent a letter to DC's parent company, stating that

18  "[a]fter four years we have no deal and this contract makes **an agreement**

19  **impossible**."  Ex. O (LSL Depo Ex. 23) (emphasis added).  This Court held that the

20  May 9, 2002 letter confirmed the Siegels had "clearly and unequivocally" rejected

21  DC's proposals.  *Siegel I*, 542 F. Supp. 2d at 1139.  Joanne Siegel had no contact

22  with Toberoff whatsoever at or before the time she sent the May letter, no lawyer

23  (including Toberoff) helped her write the May letter, and she did not discuss the

24  May letter with any lawyer before sending it.  *See* Section II.D., above.

25          Remarkably, DC alleged in its initial Complaint that Toberoff induced Siegel

26  

27  pleads no unfair conduct, (4) it is barred by California's litigation privilege, and (5) it is
    barred by the statute of limitations.
          [12] Plaintiff must show that the interference was "independently wrongful."  *Korea*

28  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1
22
**MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1   to send this May letter (Complaint, ¶66), despite knowing that every percipient

2   witness had already testified in deposition that Toberoff had no involvement with

3   the May 9, 2002 letter.  DC's counsel also ignored the fact that DC had already

4   *admitted* in the *Siegel* cases that Joanne Siegel wrote the May 9 letter without the

5   assistance or participation of counsel.  Ex. Z (Joint Stip. re: Motion to Compel

6   Whistleblower Documents at 5) (DC: "Indeed, on May 9, 2002, plaintiff Joanne

7   Siegel – ***without the assistance or participation of counsel*** – wrote letters to Time

8   Warner's chief executives…") (emphasis added).  DC has now withdrawn this

9   entirely baseless allegation from its FAC.

10      Accordingly, DC cannot meet its evidentiary burden on its Fifth Claim

11  because DC does not and cannot allege that Toberoff had anything to do with the

12  May 9 letter that ended DC's purported "prospective economic advantage."  *See*

13  *Youst,* 43 Cal.3d at 71 (there must be a "reasonable probability" of prospective

14  economic advantage to state a claim); *Sole Energy Co. v. Petrominerals Corp.*, 128

15  Cal. App. 4th 212, 243 (2005) (finding that there could not have been a "probability

16  of future economic benefit" when the parties were merely engaged in negotiations

17  with the possibility of an agreement).  After four years of fruitless negotiations and

18  Joanne Siegel's pronouncement that "we have no deal and this contract makes <u>an</u>

19  <u>agreement impossible</u>," there was no reasonable basis to believe that the Siegels

20  would conclude an agreement with DC.  Ex. O (LSL Depo Ex. 23),

21      The September 21, 2002, letters sent by the Siegels terminating their counsel

22  and informing DC that negotiations had completely concluded were wholly

23  consistent with Mrs. Siegel's May 9, 2002 letter.  Moreover, the September letters

24  were sent before either of the Siegels had even met Toberoff.   All relevant parties

25  have already testified in deposition that the first time Toberoff had any contact with

26  a member of the Siegel family was in early October 2002, and that Toberoff had not

27  consulted with them at all as to these letters.  Ex. M (LSL Depo 261:17-262:7).

28  Accordingly, there is simply no evidence that DC had any "prospective economic

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

23

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   advantage" after the Siegels rejected DC's settlement proposals, nor any evidence

2   that Toberoff induced the Siegels to terminate negotiations with DC.

3        **3.    The Fifth Claim for Relief Is Barred by the Statute of Limitations**

4        As explained in the concurrently filed motion to dismiss, the Fifth Claim is

5   barred by a two-year statute of limitations.  The First Amended Complaint omitted

6   critical facts that further support that the Fifth Claim is barred by the statute of

7   limitations.  The "independently wrongful" conduct alleged by DC to support its

8   Fifth Claim for purported interference is that Toberoff purportedly "falsely

9   misrepresent[ed] to the Siegel Heirs" that he had a "billionaire investor" who

10  "would give the Siegel Heirs $15 million cash up front, plus generous royalty and

11  'back-end' rights on any properties developed, including a new Superman motion

12  picture," and that Toberoff offered to assist the Siegels in producing a motion

13  picture.  FAC ¶¶ 78, 185.   However, by **2006**, DC knew through deposition

14  testimony that Toberoff and Emanuel had offered the Siegels $15 million plus a

15  back-end in a rights deal, and that Toberoff had been actively involved in marketing

16  the Siegels' rights.  Marks, the Siegels' counsel, testified to exactly that in a

17  deposition conducted by DC's counsel on October 7, 2006.[13]  DC was thus plainly

18  on inquiry notice of the Fifth Claim by 2006, more than two years before it filed this

19  action.  *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).

20       **4.    The Sixth Claim Against the Toberoff Entities Will Fail**

21       The Sixth Claim also seeks declaratory relief against the Toberoff-affiliated

22  companies:  PPC, IP Worldwide and IPW.  However, these entities either no longer

23  have, or never had, any interest in *Superman*, and accordingly, a claim for

24  declaratory relief against these entities is moot.  The only interest that IP Worldwide

25

26       [13] Marks testified in 2006 that his call with Mr. Toberoff and Mr. Emanuel included
    a "proposal of  $15 million and what was described as a meaningful back end," which Mr.
27  Marks understood to be "a contingent compensation position or a royalty position in the
    exploitation of the property."  Ex. R (KM Depo 169:1-5).  Marks also understood that they
28  intended to "take [the *Superman* property] to studios to exploit the package."  *Id.*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1                                                    24
MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   and PPC ever had in any *Superman* rights derived from agreements that have

2   expired or have been cancelled.  The 2001 and 2003 PPC Agreements between the

3   Shusters and PPC were wholly cancelled by an agreement dated September 10,

4   2004.  Ex. E (MT Depo Ex. 15).  PPC itself is dissolved, and has no conceivable

5   interest in *Superman* that could be the subject of declaratory relief.  MTD RJN ¶ 7.

6   As for IP Worldwide, the IP Worldwide Agreement provided that the term of the

7   agreement was "eighteen (18) months from the date this Agreement is executed by

8   all parties," and was extended for twelve (12) months, meaning that the agreement

9   expired on April 23, 2005.  Ex. F at ¶ 5, Ex. CC at 6.  IPW's only relation to the

10  action is that the expired IP Worldwide Agreement was transferred to it, and IPW

11  has no claim whatsoever to the rights to *Superman*.  Ex. B (MT Depo 45:6-15), Ex.

12  CC at 6.  Accordingly, Plaintiff has no claim against IPW, and any conceivable

13  claim against IP Worldwide and PPC is moot.  *Super Tire Eng'g Co. v. McCorkle*,

14  416 U.S. 115, 122, (1974) (mootness turns on "whether the facts alleged, under all

15  the circumstances, show that there is a substantial controversy . . . of sufficient

16  immediacy and reality to warrant the issuance of a declaratory judgment").[14]

17  **IV.   CONCLUSION AND REQUEST FOR FEES**

18          For the foregoing reasons, the Court should strike DC's Fourth, Fifth, and

19  Sixth Claims for relief pursuant to California Code of Civil Procedure § 425.16, and,

20  award to the Toberoff Defendants their attorneys' fees as provided by law.

21  Dated:  September 20, 2010          KENDALL BRILL & KLIEGER LLP

22

23                                      By: /s/ Richard B. Kendall
                                            Attorneys for Defendants Marc Toberoff,
24                                          Pacific Pictures Corporation, IP
                                            Worldwide, LLC, and IPW, LLC
25
    _____
26          [14] Since the agreements entered into by PPC and IP Worldwide are no longer in
    effect and there is no attempt to enforce those agreements, there is no "live" controversy
27  and a declaration as to their validity is needless. *See Campbell v. PMI Food Equipment
    Group, Inc*., 509 F.3d 776, 781-782 (6th Cir. 2007) (claim that tax-abatement agreement is
28  unconstitutional was moot where the agreement had expired, such that the constitutionality
    of the agreement is "no longer a 'live' controversy").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

57751.1

25

MEMO OF Ps & As IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW