1 | Marc Toberoff (State Bar No. 188547)
    *mtoberoff@ipwla.com*
2 | Nicholas C. Williamson (State Bar No. 231124)
    *nwilliamson@ipwla.com*
3 | Keith G. Adams (State Bar No. 240497)
    *kgadams@ipwla.com*
4 | TOBEROFF & ASSOCIATES, P.C.
   2049 Century Park East, Suite 2720
5 | Los Angeles, California, 90067
   Telephone: (310) 246-3333
6 | Fax:         (310) 246-3101

7 | Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
8 | Estate of Joseph Shuster, Jean Adele Peavy,
   Joanne Siegel and Laura Siegel Larson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| DC COMICS,<br><br>                 Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>                 Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANTS JOANNE SIEGEL AND LAURA SIEGEL LARSON'S NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date:    October 18, 2010<br>Time:    1:30 p.m.<br>Place:   Courtroom 11 |

SIEGEL DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS AND/OR STRIKE THIRD AND SIXTH CLAIMS FOR RELIEF OF THE FIRST AMENDED COMPLAINT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 18, 2010 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Joanne Siegel and Laura Siegel Larson will and hereby do move to dismiss and strike the Third and Sixth claims for relief in plaintiff DC Comics' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and (f).

Plaintiff bases its Third and Sixth Claims for Relief on the erroneous position that it was entitled under 17 U.S.C. § 304(c)(6)(D) to a so-called "period of exclusivity" to negotiate with the executor of the estate of Joseph Shuster to purchase his Superman copyright termination interest under 17 U.S.C. § 304(d).  The statute provides no such "right," and DC's reading of the statute has been specifically rejected by the courts and leading authorities.  Moreover, the Third and Sixth Claims are barred by the "litigation privilege," codified in California Civil Code § 47(b), and by the statute of limitations.

The Sixth Claim for Relief under California's unfair competition law is also preempted by federal copyright law insofar as plaintiff has not (and could not) allege the requisite "extra" element that would avoid preemption.

Plaintiff's allegations in the Third and Sixth Claims regarding alleged "consent agreements" (First Amended Complaint, ¶ 188), the existence and purpose of which was solely disclosed to DC during a confidential settlement mediation between DC and the Siegels, must be stricken from the first amended complaint pursuant to Fed. R. Civ. P. 12(f), as plaintiff's use of this information violates (i) the May 1, 2008 JAMS Confidentiality Agreement between the Siegels and DC, and (ii) this Court's January 14, 2009 order in the related Superman action (Case No. 04-CV-8400).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 15, 2010.

Defendants seek dismissal of the Third and Sixth Claims for Relief based on

SIEGEL DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS THIRD AND SIXTH CLAIMS FOR RELIEF OF THE FIRST AMENDED COMPLAINT

this Notice of Motion and Motion, the attached memorandum of points and authorities, the pleadings and records on file in this action, such additional authority and argument as may be presented in any reply and at the hearing on this motion, and such other matters of which this Court may take judicial notice.

DATED:  September 20, 2010          TOBEROFF & ASSOCIATES, P.C.

By _____
                    Marc Toberoff

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of
Joseph Shuster, Jean Adele Peavy, Joanne
Siegel and Laura Siegel Larson

SIEGEL DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS THIRD AND SIXTH
CLAIMS FOR RELIEF OF THE FIRST AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................3

I.      LEGAL STANDARD ....................................................3

II.     PLAINTIFF'S THIRD AND SIXTH CLAIMS FOR RELIEF MUST BE DISMISSED ..................................................4

A.     Plaintiff's Third and Sixth Claims for Relief Regarding a Purported "Period of Exclusivity" Are Barred as a Matter of Law ...............................................4

1.     Section 304(c)(6)(D) Does Not Give DC Any "Rights" ....................................4

2.     Courts and Commentators Have Rejected DC's Arguments ................................5

3.     As the Statute Gives DC No Rights, DC Lacks Standing ..................................7

4.     There Is Also No Basis for Declaratory Relief as to the Moot Pacific Pictures Agreements and IP Worldwide Agreement ................................8

5.     DC Does Not Adequately Allege That the "Consent Agreements" Violate Section 304(c)(6)(D)..............................9

6.     The Statute of Limitations Bars the Third and Sixth Claims ............................10

B.     The Sixth Claim Is Also Preempted by the Copyright Act.............................................11

1.     DC's Unfair Competition Claim Contains No "Extra Element"..............................11

C.     DC's FAC Does Not Sustain a UCL Claim, Because DC Does Not and Cannot Plead Any "Unlawful, Unfair or Fraudulent" Conduct ........................13

D.     The Sixth Claim Is Also Barred by California's Litigation Immunity ...............................16

E.     The FAC's Allegations Must Be Stricken as Violative of the Parties' JAMS Confidentiality Agreement...............18

1.     Procedural Background ...........................18

i

2.  DC's Use of the Settlement Strategy Violates the
    Court's  January 14 Order and Is Barred By the
    "Law of the Case"......................................................................21

3.  DC's Allegations in the FAC Once Again Violate
    the JAMS Confidentiality Agreement and Must
    Be Struck ..................................................................................22

4.  The Third and Sixth Claims Necessarily Fail,
    Once Such Privileged Settlement Information Is
    Stricken .....................................................................................24

CONCLUSION..............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                         **Pages**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) .................................................................11

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009).................................................................... 3-4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................3

*Blue Nile, Inc. v. Ice.com, Inc.*,
478 F. Supp. 2d 1240 (W.D. Wash. 2007) .........................................13

*Bourne Co., v. MPL Commc'ns, Inc.*,
675 F. Supp. 859 (S.D.N.Y. 1987) ................................................ *passim*

*Braman v. Woodfield Gardens Associates*,
715 F. Supp. 226 (N.D. Ill. 1989) ......................................................18

*Campbell v. PMI Food Equipment Group, Inc.*,
509 F.3d 776 (6th Cir. 2007) ...............................................................8

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987) .............................................................13

*DEV Industries, Inc. v. Rockwell Graphic Systems, Inc.*,
1992 U.S. Dist. LEXIS 6340 (N.D. Ill. 1992) ...................................18

*Disimone v. Browner*,
121 F.3d 1262 (9th Cir. 1997) ...........................................................22

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) ...........................................................23

*Fraker v. Bayer Corp.*,
2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009)...................24

*Gardner v. Nike, Inc.*,
279 F.3d 774 (9th Cir. 2002) ...............................................................7

*Idema v. Dreamworks, Inc.*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001) ....................................... 12-13

*In re Connetics Corp. Secs. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008)................................................24

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
2007 U.S. Dist. LEXIS 12786 (N.D. Cal. Feb. 12, 2007) .................10

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...........................................................16

*Kodadek v. MTV Networks*,
152 F.3d 1209 (9th Cir. 1998) ............................................................... 11-12

*Laws v. Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006) ...................................................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................................................7

*Mason v. Texaco, Inc.*,
741 F. Supp. 1472 (D. Kan. 1990)...........................................................22

*MEECO Mfg. Co. v. True Value Co.*,
Copy. L. Rep. (CCH) P29,368,
2007 U.S. Dist. LEXIS 25986 (W.D. Wash. Apr. 3, 2007) .............................13

*Medimatch, Inc. v. Lucent Techs., Inc.*,
120 F. Supp. 2d 842 (N.D. Cal. 2000)......................................................10

*Mills Music, Inc. v. Snyder*,
469 U.S. 153 (1985).......................................................................................9

*Morcote v. Oracle Corp.*,
2005 WL 3157512 (N.D. Cal. Nov. 23, 2005) ........................................8

*Moss v. Crawford & Co.*,
201 F.R.D. 398 (W.D. Pa. 2000) ..............................................................22

*Motown Record Corp. v. George A. Hormel & Co.*,
657 F. Supp. 1236 (C.D. Cal. 1987) ........................................................13

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
469 U.S. 189 (1985).......................................................................................5

*Preminger v. Peake*,
536 F.3d 1000 (9th Cir. 2008) ....................................................................7

*Ridgeway v. Mont. High School Ass'n*,
858 F.2d 579 (9th Cir. 1988) ....................................................................22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ....................................................................4

*Shroyer v. New Cingular Wireless Servs.*,
606 F.3d 658 (9th Cir. 2010) ....................................................................16

*Simon v. Leaderscape LLC*,
2007 U.S. Dist. LEXIS 97810 (S.D. Fla. June 22, 2007)....................18

*Sleep Sci. Partners v. Lieberman*,
2010 U.S. Dist. LEXIS 45385 (N.D. Cal. May 10, 2010)...................16

*Stutz Motor Car of Am. v. Reebok Int'l*,
909 F. Supp. 1353 (C.D. Cal. 1995) ........................................................10

*Super Tire Eng'g Co. v. McCorkle*,
416 U.S. 115 (1974)...................................................................8

*Thomas v. Bible*,
983 F.2d 152 (9th Cir. 1993) .......................................22

*Trenton v. Infinity Broadcasting Corp.,*
865 F. Supp. 1416 (C.D. Cal. 1994) ....................................12

*United States v. American Trucking Addn's Inc.*,
310 U.S. 534 (1940)...................................................................6

*United States v. Granderson*,
511 U.S. 39 (1994)....................................................................6

*United States ex. rel. Burroughs v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) .......................................21

*Whitehead v. Gateway Chevrolet, Oldsmobile, Inc.*,
2004 U.S. Dist. LEXIS 1281 (N.D. Ill. Jan. 30, 2004)....................18

**Federal Statutes and Rules**

F.R.C.P. 8 ..................................................................... 3-4

F.R.C.P. 9 .........................................................................16

F.R.C.P. 12 ................................................................ *passim*

17 U.S.C. § 304 ....................................................... *passim*

17 U.S.C. § 507 .................................................................10

H.R. Rep. No. 94-1476 (1976).......................................9, 11

**State Cases**

*Asia Inv. Co. v. Borowski*,
133 Cal. App. 3d 832 (1982) ..........................................18

*Bernardo v. Planned Parenthood Federation of America*,
115 Cal. App. 4th 322 (2004) .........................................14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) ............................................. 14-15

*Copeland v. Baskin Robbins U.S.A.*,
96 Cal. App. 4th 1251 (2002) .........................................15

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) .......................................14

*GeneThera, Inc. v. Troy & Gould Professional Corp.*,
171 Cal. App. 4th 901 (2009) .........................................17

*Grisham v. Philip Morris U.S.A., Inc.,*
40 Cal.4th 623 (2007) ................................................................10

*Khoury v. Maly's of Cal., Inc.,*
14 Cal. App. 4th 612 (1993) ......................................................16

*McClain v. Octagon Plaza, LLC,*
159 Cal. App. 4th 784 (2008) ...................................................15

*Morgan v. AT&T Wireless Services, Inc.,*
177 Cal. App. 4th 1235 (2009) .................................................14

*Olszewski v. Scripps Health,*
30 Cal. 4th 798 (2003) .............................................................13

*People's Choice Wireless v. Verizon Wireless,*
131 Cal. App. 4th 656 (2005) ...................................................14

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,*
11 Cal. App. 4th 1026 (1992) ...............................................3, 15

*Rosenthal v. Irell & Manella,*
135 Cal. App. 3d 121 (1982) .....................................................17

*Rusheen v. Cohen,*
37 Cal. 4th 1048 (2006) ............................................................17

*Schnall v. Hertz Corp.,*
78 Cal. App. 4th 1144 (2000) ...................................................14

*Seltzer v. Barnes,*
182 Cal. App. 4th 953 (2010) ...................................................17

*Silberg v. Anderson,*
50 Cal. 3d 2052 (1990) .........................................................16, 18

*Snapp & Associates Ins. Services, Inc. v. Robertson,*
96 Cal. App. 4th 884 (2002) .....................................................10

## State Statutes and Rules

Cal. Bus. & Prof. Code § 17200 ............................................... *passim*

Cal. Bus. & Prof. Code § 17208 ...............................................10

## Other Authorities

61 CAL. JUR. 3d Unfair Competition § 3 (2008)...............................14

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.01 ...............12

3 *Nimmer* § 11.08................................................................7

3 W. Patry, *Patry on Copyright* ("*Patry*") § 7:47.................................7

3 *Patry* § 21:18 (2010) ...................................................................................7

18 Wright, Miller & Cooper,
Federal Practice and Procedure § 4478 (1981)...................................................22

TABLES OF CONTENTS AND AUTHORITIES

# **INTRODUCTION**

DC Comics' ("DC") Third and Sixth Claims for Relief distort the Copyright Act and fundamentally misconstrue Defendants' obligations thereunder. Defendants Joanne Siegel and Laura Siegel Larson (the "Siegels"), the heirs of Jerry Siegel, and defendant Mark Warren Peary, the duly-appointed personal representative (the "Shuster Executor") of the Estate of Joseph Shuster (the "Shuster Estate"), have properly exercised their rights under 17 U.S.C. §§ 304(c) and (d), respectively, to terminate the prior grants to DC's predecessors by Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster") of the copyright to their famed comic book creation Superman (the "Siegel Termination" and "Shuster Termination," respectively).

DC's Third and Sixth Claims are both premised on the erroneous legal position that DC has a statutory "right" to a so-called "period of exclusivity" to negotiate the purchase of the Shuster Estate's recaptured *Superman* copyrights under 17 U.S.C. § 304(c)(6)(D). *See* First Amended Complaint ("FAC"), ¶¶ 167-68. However, it is clear from the plain language of § 304(c)(6)(D) that it does not provide grantees or their successors (like DC) with any "rights," let alone a right to an exclusive period of negotiation. It simply provides that a "further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination," but that an "agreement for such a further grant may be made between the author or [his heirs] and the original grantee or such grantee's successor in title, after the notice of termination has been served."

The statute invalidates any conveyance of terminated rights to a party other than the original grantee before the effective date of the termination, but it does not require the grantor to negotiate with the grantee, contrary to DC's incorrect claims:

> "Nor does the statute provide for an exclusive period of negotiation. The statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else."

*Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987). As DC's Third and Sixth Claims are both falsely premised on a fictitious "right" of

1

exclusive negotiation, both fail as a matter of law, and must be dismissed.

Furthermore, DC's claims to an exclusive period of negotiation are moot. DC argues that two sets of agreements violate its supposed "right": (1) agreements between defendant Pacific Pictures Corporation and the Shuster Executor (FAC, ¶ 169), which, as DC is aware, were *cancelled six years ago* (*id.*, ¶ 99) and which were void *ab initio* under § 304(c)(6)(D) as elsewhere alleged in DC's FAC (*id.*, ¶ 167); (2) an agreement between IP Worldwide, LLC and the Siegels, relating to the Siegel Termination, not the Shuster Termination, and which was entered into in 2002, after DC's alleged "right" to exclusive negotiations with the Siegels would have *expired* (*id.*, ¶¶ 81-83, 188); and (3) "consent agreements" between certain defendants (*id.*, ¶¶ 170, 188). Such "consent agreements," as alleged, are clearly permitted under § 304(c)(6)(D), which invalidates only "[a] further grant, or agreement to make a further grant" of copyright, but does not limit the rights of terminating parties in any other way. DC has not alleged and cannot allege that the alleged "consent agreements" constitute such a "grant or an agreement to make a further grant."

Both the Third and Sixth Claims are also barred by the statute of limitations. The three-year statute of limitations for the Third Claim began to accrue by no later than November **2006**, and expired in November 2009. The four-year statute of limitations for the Sixth Claim began to accrue by no later than October **2003**, and expired in October 2007. This complaint was untimely filed in May 2010.

In addition, such alleged "consent agreements" are understandings between the Siegels and the Shuster Estate regarding settlement strategy, which were disclosed solely in connection with the parties' settlement mediation and pursuant to a JAMS Confidentiality Agreement with DC. DC and its counsel willfully breached this JAMS Confidentiality Agreement by their references to such "consent agreements" in the FAC. DC and its counsel have also willfully breached this Court's January 14, 2009 order in the related Superman action (Case No. 04-CV-8400) forbidding such disclosure. DC's improper references to "consent agreements" in its FAC must be

stricken pursuant to F.R.C.P. 12(f), and once such allegations are stricken, the Third and Sixth Claims must be dismissed for failure to state a claim.

DC's vaguely-pled Sixth Claim under California's "Unfair Competition Law" (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) ("UCL") is also clearly preempted by the Copyright Act, because it is premised on DC's allegations that Defendants' conduct is "unlawful" under the Copyright Act. FAC, ¶¶ 187-89. To the extent the Sixth Claim alleges that Defendants' conduct is somehow "unfair" because it "impedes" DC's settlement (*i.e.*, purchase) of the recaptured Superman copyrights, it also fails: the Siegels' or Shuster Executor's alleged agreements amongst themselves as to how they wish to negotiate with DC cannot constitute an "unfair" practice because they are free to negotiate in their own best interest. *See Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1034 (1992).

## ARGUMENT

## I. LEGAL STANDARD

Pursuant to F.R.C.P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, to survive a motion to dismiss under F.R.C.P. 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. However, "labels and conclusions" are meaningless, and a "formulaic recitation of the elements of a [claim] will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief'" and, on that basis, must be dismissed. *Ashcroft,* 129

S.Ct. at 1950 (quoting F.R.C.P. 8(a)(2)).  Mere legal conclusions "are not entitled to an assumption of truth."  *Id.*

Leave to amend a complaint must be denied when the "court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II.   PLAINTIFF'S THIRD AND SIXTH CLAIMS FOR RELIEF MUST BE DISMISSED

### A.   Plaintiff's Third and Sixth Claims for Relief Regarding a Purported "Period of Exclusivity" Are Barred as a Matter of Law

#### 1.   Section 304(c)(6)(D) Does Not Give DC Any "Rights"

DC's Third and Sixth Claims are both premised on the erroneous legal position that DC has an exclusive "right" under 17 U.S.C. § 304(c)(6)(D) to negotiate the purchase of the Siegels' and Shuster Estate's recaptured Superman copyrights.  DC contends that the Siegels, the Shuster Executor, as well as their attorney Marc Toberoff and entities allegedly controlled by him ("Toberoff") have "violate[d]" DC's purported statutory "right" through "agreements, which prohibit either family from entering into agreements [with DC] without the express approval of all stakeholders in the heirs' rights."  FAC, ¶ 170; *id.*, ¶¶ 169, 188 ("The consent agreements Toberoff has procured … violate DC Comics'…right freely to negotiate settlement of such claims.").[1]  According to DC, such alleged agreements between the Defendants "frustrated and impede[d]" DC's purported right of exclusive negotiation, even though such right is neither provided by the statute nor recognized by the courts.  *Id.*, ¶¶ 168-70, 188.

DC argues that its purported "right" somehow arises from § 304(c)(6)(D), which merely provides that a "'further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination,'" but that an "'agreement for such a further grant may be

---

[1] DC references to "settlement" in practice equate to DC's *purchase* of the Superman copyrights duly recaptured by the Siegels and to be recaptured by the Shuster Executor.

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

made between the author or [his heirs] and the original grantee or such grantee's successor in title, after the notice of termination has been served.'" FAC, ¶¶ 167-68.

DC labels its allegations as based on a "period of exclusivity" in an attempt to shoehorn its claims into the statute; however, it is clear that what it actually alleges is that § 304(c)(6)(D) gives DC an exclusive right to negotiate the purchase of the recaptured Superman copyrights, when *the statute says no such thing*. *See* FAC, ¶¶ 168-71. Section 304(c)(6)(D) plainly does not provide a terminated grantee with any "right" of negotiation or otherwise. The statute also does not mandate any action by the terminating party; it merely invalidates certain agreements that grant or promise to make a grant, under specified circumstances. *See* 17 U.S.C. § 304(c)(6)(D).

DC's Third and Sixth Claims must be rejected because they misapprehend the law and contravene the plain meaning of the statute's unambiguous language. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language … and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

### 2.     Courts and Commentators Have Rejected DC's Arguments

DC's claims were expressly addressed and rejected in *Bourne Co. v. MPL Commc'ns, Inc.* ("*Bourne*"), 675 F. Supp. 859, 865 (S.D.N.Y. 1987). *Bourne* involved a termination under the Copyright Act with respect to the musical standard "Cecilia." The widow of one of the song's co-authors was induced by a third party to serve a termination notice on Bourne, the successor to the original grantee. *Id*. Before the effective date of termination, the widow then entered into an agreement granting another third party all rights to the song for the extended renewal period. *Id*. Like DC here, Bourne sued both third parties on the purported ground that such agreement violated Bourne's purported "exclusive period of negotiation" and "right of first refusal" under § 304(c)(6)(D) with respect to the widow's termination interest, as the successor to the original grantee. *Id*. at 864-67.

The *Bourne* Court expressly rejected the same argument made by DC here, *i.e.,*

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

that § 304(c)(6)(D) creates an "exclusive period of negotiation":

> "***Nor does the statute provide for an exclusive period of negotiation. The statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else.*** All it requires is that prior to the effective date of termination, the terminated grantee is the only person with whom the author or his successor can make an enforceable and effective agreement to transfer those rights. The provision does give the terminated grantee a preferred competitive position but '[i]f the author can afford to wait for competitive offers until after the effective date of termination, he can overcome any advantage the grantee or successor may seek to gain from the preferential position.'"

*Id*. at 865 (citations omitted) (emphasis added).  *Bourne* also noted that "[i]ndeed, the statute merely provides that a grant to someone other than the original grantee is valid 'only if it is made after the effective date of termination,' not that such a grant is valid only if *negotiated* after the termination date."  *Id.* at n.11 (emphasis in original).

Bourne rejected as unpersuasive Bourne's legislative history argument, parroted here by DC (FAC, ¶ 168), that § 304(c)(6)(D) is "'in the nature of a right of first refusal.'"  *Bourne,* 675 F. Supp. at 866 (citation omitted).  "If Congress had intended to create a right of first refusal, it would have done so in clear language." *Id.  Bourne* explained:

> "[Section 304(c)(6)(D)] provides merely that an agreement between the terminating party and the terminated grantee prior to the effective date of termination is the only one that is valid and enforceable against the former.  *The statute does not provide that any agreement negotiated by the terminating party must first be offered on the same terms to the terminated grantee,* which is what a right of first refusal, as it is commonly understood, would require."

*Id*. at 865 (emphasis added).  Moreover, when the statutory language is clear, as it is in § 304(c)(6)(D), such language governs.  *United States v. Granderson*, 511 U.S. 39, 74 n.7 (1994) ("Where the language of a statute is clear, that language, rather than 'isolated excerpts from the legislative history,' should be followed.").[2]

The leading copyright treatise *Nimmer on Copyright* ("*Nimmer*") also states

---

[2] *See Bourne,* 675 F. Supp. at 866 ("'It is a well-known canon of construction that the language of the statute is the best indication of legislative intent.'") (citations omitted); *United States v. American Trucking Assn's Inc.*, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.").

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

that the legislative history's "first refusal" characterization is "not entirely accurate," and, citing *Bourne*, states that "*it is inaccurate to refer to this advantage as 'an exclusive period of negotiation*.'"  3 M. Nimmer & D. Nimmer, *Nimmer* § 11.08[A], n.6 (2010) (emphasis added).  *Nimmer* notes that *Bourne* properly "rejected the claim [made here] that a prior grantee enjoys a private right of action for damages against one who induces the grantor to make a (necessarily invalid) grant to a third party prior to the termination date of the original grant."  *Id*.  The Siegels and the Shuster Executor were not compelled to exclusively negotiate with DC, either before or after they served their respective termination notices.  *Bourne*, 675 F. Supp. at 865.

### 3.   As the Statute Gives DC No Rights, DC Lacks Standing

Because DC has no particular "rights" under § 304(c)(6)(D), it has no basis nor standing to sue for an alleged "violat[ion] of section 304(c)(6)(D)."  FAC, ¶ 170, 188.  *Patry on Copyright*, the other leading copyright treatise, is in accord:

> "[Section 304(c)(6)(D)], sometimes **erroneously described as a 'right of first refusal,'** does not give the original grantee a right to conclude such an agreement; it only means that if such an agreement is made, it will be enforceable.  Most importantly, *if the original grantee is not provided a first crack, there is no remedy*."

3 W. Patry, *Patry on Copyright* ("*Patry*") § 7:47 (2010) (emphasis added).  A terminated party has "no rights under [§ 304(c)(6)(D)], cannot sue for failure to comply, and the provision therefore does not provide a basis for standing."  3 *Patry* § 21:18.  *See Preminger v. Peake*, 536 F.3d 1000, 1005 (9th Cir. 2008) (stating that standing requires a demonstration of "an invasion of a legally protected interest" that is "actual or imminent," not "conjectural" or "hypothetical") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Gardner v. Nike, Inc.*, 279 F.3d 774, 777 (9th Cir. 2002) (holding that copyright licensees "lacked standing to bring the action because they had no legally cognizable interest in the suit").

It is clear that, as § 304(c)(6)(D) grants no "right" and thus no standing to DC, DC's Third and Sixth Claims, based thereon, fail to state a claim as a matter of law.

4. **There Is Also No Basis for Declaratory Relief as to the Moot Pacific Pictures Agreements and IP Worldwide Agreement**

In its Third and Sixth Claims, DC alleges that the 2001 and 2003 Pacific Pictures Agreements violated its purported right of exclusivity.  FAC, ¶ 169. However, if and to the extent the 2001 and 2003 Pacific Pictures Agreements had granted any Shuster Termination interest prior to October 26, 2013 (the effective date of the Shuster Termination), such transfers were void *ab initio* under § 304(c)(6)(D), and had no legal force or effect.  DC itself alleges this.  FAC, ¶¶ 167-71. The Pacific Pictures Agreements are further moot, as such were duly and voluntarily cancelled on September 10, 2004.  *Id.*, ¶ 99.[3]

The Sixth Claim also seeks declaratory relief based on the 2002 IP Worldwide Agreement.  FAC, ¶ 188.  The IP Worldwide Agreement, incorporated into the FAC by reference, is also moot, as the term of the agreement was for "eighteen (18) months from the date executed by all parties [10/23/02]," and was extended for twelve (12) months, meaning that the agreement expired on April 23, 2005.  *Id.*, ¶¶ 81-83; *see* Request for Judicial Notice ("RJN") Ex. H.[4]

Nor is there any basis to claim that the **2002** IP Worldwide Agreement is "unlawful" as violative of DC's purported "right" since ***according to DC*** its alleged rights under § 304(c)(6)(D), would have expired on April 16, **1999**, the effective date of the Siegel Termination.  FAC, ¶ 168.  Moreover, the IP Worldwide Agreement with the *Siegels* could not have affected DC's alleged "right" under § 304(c)(6)(D) to

---

[3] As the Shuster Termination was served on November 10, 2003, DC is complaining about an alleged loss of 10 months, out of 10 years, of its alleged, but non-existent, right of exclusive negotiations.  *Id.,* ¶¶ 92, 94.

[4] Since the agreements are no longer in effect and there is no attempt to enforce those agreements, there is no "live" controversy and declaratory relief is needless.  *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, (1974) (mootness turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy … of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (quotations omitted); *Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 781-82 (6th Cir. 2007) (claim that agreement is unconstitutional was moot where the agreement had expired, such that the constitutionality of the agreement is "no longer a 'live' controversy"); *Morcote v. Oracle Corp.*, 2005 WL 3157512, *4-5 (N.D. Cal. Nov. 23, 2005) (request for declaration that non-compete provision of agreement was invalid was moot where the challenged provision expired by its terms before the action was filed).

negotiate with the *Shusters*.

### 5.    DC Does Not Adequately Allege That the "Consent Agreements" Violate Section 304(c)(6)(D)

The sole remaining agreements complained of by DC with respect to its purported right of exclusivity are the alleged "consent agreements." *Id.,* ¶¶ 170, 188. However, DC has not alleged and cannot allege that such "consent agreements" constitute "a further grant, or agreement to make a further grant" of the recaptured Superman copyrights, barred by § 304(c)(6)(D).  DC alleges that the agreements "prohibit either family from entering into agreements conveying rights … without the express approval of all stakeholders in the heirs' rights."  FAC, ¶ 170.  Thus, DC's own allegations demonstrate that the "consent agreements" are not covered or prohibited by the plain wording of § 304(c)(6)(D), as a matter of law.

In essence, DC alleges that the Siegels and Shuster Executor, by such "consent agreements," agreed to enhance their bargaining position by acting together in negotiations with DC, but not that any of them thereby granted any right that was the subject of termination, or promised to convey such rights in the future.  *See* 17 U.S.C. § 304(c)(6)(D).  There is no statutory basis whatsoever to impede the Siegels and the Shuster Executor, the intended beneficiaries of the termination right, from acting together to better realize market value for their recaptured copyrights.  On the contrary, this is consistent with the Congressional purpose of the termination right "to provide added benefits to authors….  [and] to relieve authors of the consequences of ill-advised and unrenumerative grants…."  *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 n.39 (1985) (*citing* H.R. Rep. No. 94-1476 at 124 (1976)).

DC's claim that "consent agreements" between the Siegels, the Shuster Executor and their counsel somehow "impede [DC's] ability to settle any and all disputes with the Shusters and Siegels," is equally flawed as a matter of law.  FAC, ¶ 170.  While the goal of settlement is embraced by the Siegels and the Shuster Executor, DC has no statutory or other "right" to settle (*i.e.*, purchase) the

1    termination interests.  *See* 17 U.S.C. § 304(c)(6)(D); *Bourne,* 675 F. Supp. at 865.[5]

2    ### 6.    The Statute of Limitations Bars the Third and Sixth Claims

3    As DC insisted in *Siegel* I, and as this Court agreed, the Ninth Circuit has held

4    that a claim for declaratory relief under the Copyright Act must be brought under 17

5    U.S.C. § 507(b) "within three years after the claim accrued."  The Third Claim for

6    declaratory relief under the Copyright Act is expressly based in part on the Pacific

7    Pictures Agreements.  FAC, ¶ 169.  It is a matter of public record that DC knew

8    about such agreements by no later than **November 15, 2006** (if not earlier) when

9    unredacted versions of the agreements were produced to DC.  RJN, Exs. I-K.  Thus,

10   DC's Third Claim expired in **November 2009**, six months before this suit was filed.

11   DC's Sixth Claim is based on California's UCL.  "Any action to enforce any

12   cause of action [under the UCL] shall be commenced within four years after the

13   cause of action accrued."  Cal. Bus. & Prof. Code § 17208.  However, courts have

14   held that "the 'discovery rule' … is inapplicable [to UCL claims]; thus, the statute

15   begins to run when a cause of action ***accrues***, irrespective of whether plaintiff knew

16   of its accrual."  *Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1363

17   (C.D. Cal. 1995) (emphasis added) (UCL claim accrued when defendant "began

18   application and use" of misappropriated property).[6]  The alleged "wrongs" under the

19   Sixth Claim include the November 28, 2001 and October 30, 2003 Pacific Pictures

---

20   [5] DC's argument that it is somehow entitled to a "restor[ation]" of a purported "10-year

21   period of exclusivity" (FAC, ¶¶ 173, 192), is equally absurd.  Even if DC had a "right" to exclusive negotiations (it does not), DC would still not be entitled to a "10-year" exclusive

22   negotiating period.  Pursuant to 17 U.S.C. § 304(c)(4)(A), a termination notice *may* be served no "less than two or more than ten years before" its effective date.  The Shuster

23   Termination, with an effective date of October 26, 2013, happens to have been served ten years in advance on November 10, 2003 (FAC, ¶¶ 92-94), but could just as well have been

24   served two years in advance on October 25, 2011.  It would be inequitable to penalize the Shuster Executor simply because he happened to have diligently served the termination

25   notice well in advance of § 304(c)(4)(A)'s minimum two-year notice requirement.

26   [6] *See Snapp & Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (2002) ("The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to

27   [UCL] actions."); *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2007 U.S. Dist. LEXIS 12786, at *18 (N.D. Cal. Feb. 12, 2007) (following *Snapp*); *Medimatch, Inc. v.*

28   *Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 861 (N.D. Cal 2000) (following *Stutz*).  *Cf. Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 635 n.7 (2007) (the discovery rule's application to UCL claims is unsettled).

Agreements, and the October 23, 2002 IP Worldwide Agreement.  FAC, ¶¶ 60, 81, 169.  DC's Sixth Claim thus expired by no later than **October 30, 2007**.

### B.    The Sixth Claim Is Also Preempted by the Copyright Act

In addition to the above, DC's Sixth Claim, brought under California's "Unfair Competition Law" (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) ("UCL") is clearly preempted by the Copyright Act.  It asks for declaratory relief that Defendants' alleged acts regarding the Siegels' and the Shuster Estate's termination interests under the Copyright Act are void under "California's unfair competition laws."  FAC, ¶ 188, *citing* Cal. Bus. & Prof. Code §§ 17200 *et seq*.  However, the Copyright Act specifically preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a).[7]  If a "state law unfair competition claim is based solely on rights equivalent to those protected by the federal copyright laws," then such a claim is preempted.  *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. 1998).

### 1.    DC's Unfair Competition Claim Contains No "Extra Element"

To avoid preemption, the plaintiff must demonstrate that its "state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005).  *See also Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006).

DC's Sixth Claim is preempted because it concerns the Siegels' and the Shuster Executor's special termination interests under § 304(c) and (d) of the Copyright Act and DC's purported "exclusive" right to negotiate the purchase of those interests under § 304(c)(6)(D) of the Act.  DC has not alleged and cannot allege the requisite "extra element" to avoid preemption.  In analyzing whether a state claim

---

[7] "[S]ection 301 is intended …. to avoid the development of any vague borderline areas between State and Federal protection."  H.R. Rep. No. 94-1476, at 120 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746.

contains such "extra element," courts look to "whether the gravamen of the state law claim … is the same as the rights protected by the Copyright Act." *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001).  In so doing, the Court looks to "the state law claims *as they are asserted*." *Id.* (emphasis in original).

Here, DC's "state-law" unfair competition claim is a mere regurgitation of DC's Third Claim for declaratory relief under the Copyright Act, which asserts that the same alleged "consent agreements" are void because they purportedly "frustrate and impede DC Comics' period of exclusivity" under 17 U.S.C. § 304(c)(6)(D) to negotiate with the Siegels and Shuster Executor and "violate section 304(c)(6)(D)." FAC, ¶¶ 169-70.[8]  DC's anticipated argument that California unfair competition laws are purportedly broader than the Copyright Act will not salvage its Sixth Claim.  *See Trenton v. Infinity Broadcasting Corp.*, 865 F. Supp. 1416, 1428 (C.D. Cal. 1994) ("'The fact that the state-created right is either broader or narrower than its federal counterpart will not save it from preemption.'") (citing 1 *Nimmer* § 1.01[B][1]).

DC even admits that it seeks by its Sixth Claim to "establish the parties' respective rights and obligations with respect to the copyright interest in the Superman material."  FAC, ¶ 189.  The Sixth Claim for declaratory relief is facially equivalent to DC's Third Claim for declaratory relief under the Copyright Act: "A declaration by this Court is warranted … to establish the parties' respective rights and obligations with respect to the copyright interest in the Superman material."  *Id.*, ¶ 172.  However, the determination of a party's respective rights and obligations regarding the special "termination" interest provided by the Copyright Act is plainly the province of copyright law, not state unfair competition law.  *Id.*, ¶¶ 105-33.  *See Kodadek,* 152 F.3d at 1212-13 (dismissing California UCL claim where allegations

---

[8] *Compare* FAC, Sixth Claim, ¶ 188 ("The consent agreements Toberoff has procured are void as a matter of law and public policy because they strip the Siegels and Shusters of their right to freely settle their claims and violate DC Comics' concomitant right to freely negotiate settlement of such claims.") *with* FAC, Third Claim, ¶ 171 ("The Shuster Heirs' agreements with Toberoff, his companies, and the Siegels improperly interfere with DC Comics' period of exclusivity [to negotiate under § 304(c)(6)(D) of the Copyright Act] with the Shuster Heirs regarding their purported Superman rights.").

were "within the 'subject matter' of the Copyright Act").

In fact, DC in its short Sixth Claim incorporates by reference "each and every allegation contained in the paragraphs above" under the Copyright Act, while asserting in its Sixth Claim that "[t]he copyright assignments procured by Toberoff and/or his companies are unlawful and violate DC Comics' rights and interests *for the reasons set forth above.*"  FAC, ¶¶ 187-88 (emphasis added).  DC thus bases its Sixth Claim on the purported violations of the Copyright Act alleged in its FAC.  *See id.*, ¶¶ 165-72 ("the reasons").  By incorporating by reference such alleged violations of the Copyright Act's termination provisions, but alleging no other facts in support of its short UCL claim, DC has conceded that the "gravamen of the state law claim … is the same as the rights protected by the Copyright Act." *Idema,* 162 F. Supp. 2d at 1190.  *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987) (dismissing California UCL claim that incorporated by reference plaintiff's copyright claim).[9]  Accordingly, DC's Sixth Claim is preempted by the Copyright Act.  *See Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (finding preemption of unfair competition claim where "[t]he argument is constructed upon the premise" of a Copyright Act violation, and "does not add any 'extra element' which changes the nature of the action").

C.     <u>**DC's FAC Does Not Sustain a UCL Claim, Because DC Does Not and Cannot Plead Any "Unlawful, Unfair or Fraudulent" Conduct**</u>

"'The UCL defines unfair competition as any unlawful, unfair or fraudulent business practice….'  A business practice is unlawful 'if it is forbidden by any law….'" *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003) (citations omitted).  As set forth above, the only purportedly "unlawful" conduct is alleged under the Copyright Act and is thereby ***preempted*** – specifically, that alleged

---

[9] *See also Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) ("Plaintiff's [UCL] claim is dismissed as preempted because by incorporating the copyright claims by reference, the [UCL] claim is based on rights equivalent to those protected by copyright."); *MEECO Mfg. Co. v. True Value Co.*, Copy. L. Rep. (CCH) P29,368, 2007 U.S. Dist. LEXIS 25986 at *14 (W.D. Wash. Apr. 3, 2007) (UCL claim "preempted because it incorporates the copyright claim by reference and is therefore based on rights equivalent to those protected by copyright.").

assignments to Pacific Pictures Corporation (FAC, ¶¶ 169, 171-72, 187-89) and alleged "consent agreements" between the Defendants (*id.*, ¶¶ 170-72, 187-89) violate DC's purported exclusive "rights" under 17 U.S.C. § 304(c)(6)(D).

Furthermore, conduct that is "neither required nor proscribed by law does not constitute an 'unlawful' business activity under the [UCL]."  61 CAL. JUR. 3d Unfair Competition § 3 (2008).  As set forth above, the Copyright Act does not "require" or "proscribe" any conduct, but simply states the conditions under which a transfer of the termination interest will be valid.  17 U.S.C. § 304(c)(6)(D) ("A further grant, or agreement to make a further grant … is valid only if it is made after the effective date of the termination.").  As § 304(c)(6)(D) concerns the enforceability of a contract, it cannot form the basis for a claim of "unlawful" business activity under the UCL.

If a "practice" is not "unlawful," it is only considered to be "unfair" in violation of the UCL if it significantly threatens or harms competition:

> "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means ***conduct that threatens an incipient violation of an antitrust law***, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, ***or otherwise significantly threatens or harms competition***."

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999) (emphasis added).[10]  *See People's Choice Wireless v. Verizon Wireless*, 131 Cal. App. 4th 656, 662–63 (2005) ("Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.").[11]

Here, aside from DC's claims regarding purportedly unlawful conduct under the Copyright Act,  DC's FAC merely asserts that "consent agreements" are

---

[10] *See also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010) ("[A]ny finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."); *Bernardo v. Planned Parenthood Federation of America*, 115 Cal. App. 4th 322, 353 (2004) (same); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000) (same).

[11] A somewhat broader standard applies to UCL claims filed by a consumer.  *See Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1255 (2009).  However, DC has not pled its UCL claim as a consumer because DC is obviously a "competitor" of the defendants with respect to the copyrights at issue.

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

somehow "void and unenforceable … under California's unfair competition laws," because "they strip the Siegels and Shusters of their right freely to settle their claims and violate [DC's] concomitant right freely to negotiate settlement of such claims." FAC, ¶ 188.

*First*, as set forth above, this too is preempted for it refers to settlement of the Siegels and the Shuster Executor's termination interests under the Copyright Act. *Id.*, ¶¶ 163-72, 187-88.

*Second*, as shown in section II.A, *supra*, DC has no exclusive "right" under the Copyright Act to negotiate the settlement/purchase of the Siegels' and the Shuster Executor's termination interests.

*Third*, notwithstanding the preemption of DC's UCL claim, the Siegels and the Shuster Executor are not prohibited from making agreements amongst themselves as to the manner and terms under which they will negotiate with DC regarding their termination interests under the Copyright Act. *See Bourne*, 675 F. Supp. at 865 ("The statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else.").[12]

DC's allegations certainly do not amount to "conduct that threatens an incipient violation of an antitrust law…or otherwise significantly threatens or harms competition" so as to sustain an unfair competition claim. *Cel-Tech Communications, Inc.*, 20 Cal. 4th at 187. In fact, DC's concocted claims as to an exclusive "right" of negotiation or "right of first refusal" attempt to *squelch* competition. Thus, the Siegels' or the Shuster Executor's negotiation on certain terms, or alleged "consent agreements" as to how they will negotiate with DC, cannot constitute an unfair "practice" such as to sustain an unfair competition claim.

Finally, any claim of fraudulent practices under the UCL, like fraud in general,

---

[12] *See Racine & Laramie, Ltd.,* 11 Cal. App. 4th at 1034 ("The fact that parties commence negotiations looking to a contract . . . does not by itself impose any duty on either party" as to such negotiations); *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1260 (2002) ("When two parties, under no compulsion to do so, engage in negotiations to form or modify a contract neither party has any obligation [to the other].") ; *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008) (same).

1    is subject to a heightened pleading standard and must be pled with specificity.  *See*

2    F.R.C.P. 9(b) ("[A] party must state with particularity the circumstances constituting

3    fraud or mistake."); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993)

4    ("A plaintiff alleging unfair business practices under these statutes must state with

5    reasonable particularity the facts supporting the statutory elements of the

6    violation.").[13]

7        DC's general allegations as to "various copyright assignment and consent

8    agreements" (FAC, ¶ 188) and use of the conclusory word "fraudulent" (*id.*, ¶ 80) fail

9    to plead "fraudulent" conduct with the requisite specificity.  *See Sleep Sci. Partners*

10   *v. Lieberman*, 2010 U.S. Dist. LEXIS 45385, at *26-27 (N.D. Cal. May 10, 2010)

11   ("Plaintiff must identify the conduct … that is actionable under a theory of liability

12   that applies the UCL in a manner that avoids preemption….  If fraud is alleged, it

13   must be ple[d] with particularity under Federal Rule of Civil Procedure 9(b).").  The

14   FAC also specifies that the UCL claim targets purported "unlawful and unfair[]"

15   conduct, ***not*** fraudulent conduct.  FAC, ¶ 188.

16       **D.    The Sixth Claim Is Also Barred by California's Litigation Immunity**

17       DC's UCL allegations based on alleged "consent agreements" between the

18   Siegels and Shusters are also barred as a matter of law by the litigation immunity

19   codified in California Civil Code § 47(b).  FAC, ¶¶ 101, 170, 188.  Section 47(b)

20   provides ***absolute immunity*** against all torts for "any communication (1) made in

21   judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized

22   by law; (3) to achieve the objects of the litigation; and (4) that have some connection

23   or logical relation to the action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990).

24   ────────────────
[13] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b) demands

25   that the circumstances constituting the alleged fraud [under the UCL] 'be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the

26   charge and not just deny that they have done anything wrong."' … 'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct

27   charged.' …  A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'") (citations omitted); *Shroyer v. New Cingular Wireless Servs.*,

28   606 F.3d 658, 665-67 (9th Cir. 2010) (applying Rule 9(b) to dismiss UCL "fraud" claim as "to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice").

In addition, "where the [claim] is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1052 (2006).

As noted above, DC alleges that the Siegels and Shusters have entered into "consent agreements" that "prohibit either family from entering into agreements conveying rights to DC Comics without the express approval of all stakeholders in the heirs' rights." FAC, ¶¶ 170, 188. However, DC deliberately fails to mention that the alleged understandings between the Siegels and Shusters regarding their settlement strategies were disclosed on May 2, 2008 by the Siegels' counsel solely in connection with Court-ordered settlement mediation in the related *Siegel* case (C.D. Cal. Case No. 04-8400), as previously admitted by DC. RJN, Ex. A.[14]

Such communications and statements made in the course of settlement negotiations cannot support a claim, because they are communications to "achieve the objects of the litigation" and, as such, are absolutely privileged under California Civil Code § 47(b). *See GeneThera, Inc. v. Troy & Gould Professional Corp.*, 171 Cal. App. 4th 901, 909-10 (2009) ("A settlement letter directed to counsel falls within the category of communications to which the [§ 47(b)] privilege attaches regardless of appellants' perception [that] it is divisive and purportedly precipitates a conflict of interest. Our conclusion does not change even if the communications in question were, as appellants claim, substantively at variance with the Rules of Professional Conduct."); *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 972 (2010) (where the "alleged conduct was the negotiation of the settlement …. [the] Civil Code section 47 litigation privilege applies as a matter of law"); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 128 (1982) (letter sent by an attorney to induce plaintiff's professional liability insurers to settle a malpractice action against him was

---

[14] As discussed more fully in Section II.E below, DC's declaration was submitted in connection with Defendants' December 30, 2008 motion to compel the production of the alleged "consent agreement." That motion was denied by Judge Larson, in part because it involved information exchanged during settlement mediation and subject to the parties' May 1, 2008 JAMS Confidentiality Agreement. RJN, Ex. B at 12:15-19.

absolutely privileged under § 47(b)); *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 842 (1982) (settlement proposal that was an alleged "threat to coerce" through legal action was absolutely privileged under § 47(b)).

DC's claim is therefore barred by the litigation immunity as both the alleged "consent agreements" and discussions regarding the Siegels' and Shusters' settlement objectives and strategies were clearly communications made in the course of "judicial or quasi-judicial proceedings," "by litigants or other participants authorized by law," "to achieve the objects of the litigation," and "have some … logical relation to the action." *Silberg,* 50 Cal. 3d at 211-12. As DC's Sixth Claim alleges liability based on communications in the course of litigation the claim is strictly barred by § 47(b).

**E.** **The FAC's Allegations Must Be Stricken as Violative of the Parties' JAMS Confidentiality Agreement**

DC's references in its FAC (¶¶ 101, 170, 188) to the Siegels' and the Shuster Executor's alleged settlement strategy in the form of alleged "consent agreements" constitute a willful and deliberate breach of the parties' JAMS Confidentiality Agreement dated May 1, 2008 between DC, the Siegels and the Shuster Executor ("Confidentiality Agreement") regarding the parties' settlement negotiations, and should be stricken from the FAC under F.R.C.P. 12(f). RJN, Ex. C.[15]

**1.** **Procedural Background**

After Judge Larson issued the March 26, 2008 order upholding the validity of the Siegel Terminations as to *Action Comics, No. 1*, he ordered on March 31, 2008

---

[15] Courts routinely grant motions to strike allegations in a complaint that rely on privileged and/or confidential information obtained in settlement discussions, or which is otherwise privileged. *See Braman v. Woodfield Gardens Associates*, 715 F. Supp. 226, 230 (N.D. Ill. 1989) (granting motion to strike portions of complaint where "the allegations challenged by defendants involve settlement negotiations"); *Simon v. Leaderscape LLC*, 2007 U.S. Dist. LEXIS 97810, at *2 (S.D. Fla. June 22, 2007) (granting motion to strike "confidential settlement communications" attached to a complaint). Courts will likewise grant motions to strike allegations based on information that the alleging party had agreed to keep confidential. *See Whitehead v. Gateway Chevrolet, Oldsmobile, Inc.*, 2004 U.S. Dist. LEXIS 1281, at *9-*15 (N.D. Ill. Jan. 30, 2004) (striking allegations that "incorporate confidential information subject to … protective order"); *DEV Industries, Inc. v. Rockwell Graphic Systems, Inc.*, 1992 U.S. Dist. LEXIS 6340, at *5-*7 (N.D. Ill. 1992) (striking allegations based on confidential "information obtained in another case" and subject to a protective order).

that the parties participate in settlement discussions with a JAMS mediator.  RJN, Ex. E.  The parties thereafter retained the services of the Honorable Daniel Weinstein (Ret.).  In anticipation of the parties' court-ordered mediation, the parties negotiated and entered into a JAMS Confidentiality Agreement on or about May 1, 2008.  RJN, Ex. C.  This agreement substantially strengthened the provisions of the standard "JAMS Confidentiality Agreement," and was specifically negotiated by the parties' counsel to ensure that the parties could speak freely during settlement discussions, and that such discussions would not be used by either side in litigation "in any way, shape or form."  The Confidentiality Agreement provides, in relevant part:

> "The provisions of the Central District of California Local Rule 16-15…also apply to this mediation. Pursuant to Local Rule 16-5.8, the mediation and any settlement conference or discussion ("Settlement Conference") shall be confidential, and no part of any Settlement Conference shall be reported, or otherwise recorded, without the consent of the parties. With respect to California Evidence Code § 1122, any agreement to disclose under subsections (a)(1) or (a)(2) of that section must expressly be made in writing. THIS CONFIDENTIALITY AGREEMENT… EXTENDS TO ALL PRESENT AND FUTURE CIVIL, JUDICIAL, QUASI-JUDICIAL, ARBITAL, ADMINISTRATIVE OR OTHER PROCEEDINGS."

RJN, Ex. C at 1 (emphasis in original).  Paragraph 4 provides that "[t]he privileged character of any information or documents is not altered by the disclosure to the mediator or the disclosure in any Settlement Conference."  *Id.*  Paragraph 5 provides:

> "All parties, counsel and any other persons attending any Settlement Conference shall treat all such discussions as strictly confidential in every respect, including without limitation, the contents or substance of any oral or written statements made at the Settlement Conference, and all other substantive aspects of such Settlement Conference ('Confidential Settlement Information'). ***Without limitation, any document that is marked 'Confidential – For Settlement Purposes Only' and is disclosed or produced at or in connection with a Settlement Conference shall be treated as Confidential Settlement Information. Confidential Settlement Information shall not be*** disclosed to anyone other than the parties, their counsel or the mediator or ***used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly***, orally or in writing, except as set forth in paragraph 6 below."

*Id.* at 2 (emphasis added).  Paragraph 6 provides that information will not be considered Confidential Settlement Information *only* if it is:

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

"(a) [P]ublicly available, (b) already in possession of the adverse party
or their counsel prior to its disclosure by a party or their counsel at a
Settlement Conference, or (c) is developed independently of any
Settlement Conference and without reference thereto."

*Id.* Paragraph 7 expressly limits disclosures to the Court regarding the parties' settlement communications, demonstrating the parties' sensitivity to the abuse of any aspect of their settlement discussions in Court, and it even specifies the limited language to be used in the "joint report" to the Court outlining the parties' settlement efforts if the parties did not succeed in settling this case. *Id.*

On May 2, 2008, the Siegels' counsel disclosed a settlement strategy of the Siegels and Shusters and briefly described its general nature ("Settlement Strategy") in a letter to Defendants' counsel marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY," thus qualifying it as "Confidential Settlement Information" under the parties' Confidentiality Agreement.  RJN, Ex. A.  The first sentence of the letter expressly states:  "This letter is sent pursuant to the 'JAMS Confidentiality Agreement' and solely in connection with the upcoming settlement mediation sessions." *Id.*

The Settlement Strategy – contained in a communication between the Siegels, the Shuster Executor and their mutual counsel, Mr. Toberoff, concerning settlement – is also protected by the attorney-client privilege, the joint interest privilege and the attorney work-product doctrine.  RJN, Ex. F at 9-13.  The Settlement Strategy was made shortly before and solely for purposes of the parties' settlement mediation, which commenced on May 8, 2008. *Id.* at 13-15.  Pursuant to the parties' longstanding discovery agreement, acknowledged by DC, the Siegels had no obligation to disclose this post-litigation communication on a privilege log, or otherwise, as it was created after the commencement of this litigation and for purposes of a settlement mediation.  RJN, Ex. D at 13:16-18.

Nonetheless, on December 30, 2008, DC moved to compel the production of the Settlement Strategy in flagrant breach of the parties' JAMS Confidentiality

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC

Agreement.  The Siegels asserted that their Settlement Strategy was protected by the
Confidentiality Agreement, as well as the attorney-client privilege, joint-interest
privilege[16] and the work product doctrine.  RJN, Ex. F at 9-15.

At the January 14, 2009 hearing on DC's motion, its counsel went so far as to
try to describe the Settlement Strategy to the Court but was stopped in his tracks:

> MR. BERGMAN: Would your Honor permit me to use the one-word
> adjective with which Mr. Toberoff described the letter?
> ***
> THE COURT: No.

RJN, Ex. B at 11:7-16.  The Court thereafter denied DC's motion:

> THE COURT:  Part of this is motivated simply by the Court's
> commitment to maintaining the settlement privilege. It was the Court
> that encouraged you to engage in that settlement effort, and I want to
> maintain the confidences that were agreed to during that period. So that
> motion is denied.

*Id*. at 12:15-19.  *See also* RJN, Ex. G.

### 2.    DC's Use of the Settlement Strategy Violates the Court's January 14 Order and Is Barred By the "Law of the Case"

DC willfully violated the Court's January 14, 2009 Order by nonetheless
disclosing and attempting to use the Settlement Strategy against the Siegels, the
Shuster Executor and their attorney, Toberoff, in its FAC.  DC's violation in its FAC
of the Court's Order and the parties' JAMS Confidentiality Agreement is even more
egregious given that this was explicitly pointed out in Defendants' prior motion to
dismiss (Docket No. 34 at 18:3-23:20).

DC is also precluded from re-litigating the issue of the Settlement Strategy by
the "law of the case" doctrine, as such was already litigated and held to be privileged
by Judge Larson as described above.  *See Siegel,* Docket Nos. 395, 442.  The "law of
the case" doctrine stands for the common-sense principle that the same *issue*
presented a second time in the same court should lead to the same result, as to do

---

[16] *See U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996)
("[W]hether the jointly interested persons are defendants or plaintiffs, and whether the
litigation or potential litigation is civil or criminal, the rationale for the privilege is clear:
Persons who share a common interest in litigation should be able to communicate
confidentially with their respective attorneys, and with each other, to more effectively
prosecute or defend their claims."); RJN, Ex. F at 9-13.

1    otherwise "would create intolerable instability for the parties."  *Ridgeway v. Mont.*

2    *High School Ass'n*, 858 F.2d 579, 587-88 (9th Cir. 1988).  Thus, "a court is generally

3    precluded from reconsidering an issue that has already been decided by the same

4    court, or a higher court."  *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).  The

5    law of the case doctrine applies with equal force to *related* cases such as these.  *See*

6    *also Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997).[17]

7
8                    **3.    DC's Allegations in the FAC Once Again Violate the JAMS
                            Confidentiality Agreement and Must Be Struck**

9            Eighteen months after DC's motion to compel was denied, DC and its

10   attorneys have once again willfully breached the JAMS Confidentiality Agreement,

11   by purporting to disclose the Settlement Strategy in paragraph 170 of the FAC.  The

12   Settlement Strategy was indisputably Confidential Settlement Information under the

13   parties' agreement and was disclosed "at or in connection with a Settlement

14   Conference" after the Confidentiality Agreement was signed.  RJN, Ex. C at 2.  As

15   noted above, the first sentence of the May 2, 2008 letter disclosing the Settlement

16   Strategy expressly states:  "This letter is sent pursuant to the 'JAMS Confidentiality

17   Agreement' and 'solely in connection with the upcoming settlement mediation

18   sessions.'"  RJN, Ex. A.  Pursuant to paragraph 7 of the Confidentiality Agreement,

19   the letter was clearly marked "CONFIDENTIAL – FOR SETTLEMENT

20   PURPOSES ONLY."  *Id.*  The Settlement Strategy does not qualify for any of the

21   exceptions in paragraph 6 of the Confidentiality Agreement as it has never been

22   publicly available, was not already in DC's possession, nor "developed

23   independently" of the Settlement Conference.

24           By express agreement of the parties, the Settlement Strategy, and even its

25
     _____

26   [17] *See also* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4478 at 788
     (1981) (the "law of the case" doctrine reflects "the respect that one judge or court owes the
27   rulings of another judge or court in the same or closely related cases"); *Moss v. Crawford &
     Co.*, 201 F.R.D. 398, 401 n.1 (W.D. Pa. 2000) ("law of the case" doctrine applies to issues
28   determined in "closely related" cases); *Mason v. Texaco, Inc.*, 741 F. Supp. 1472, 1492 (D.
     Kan. 1990) ("law of the case doctrine 'encompasses … the rulings of another judge or court
     in … a closely related case.'").

existence and subject matter, therefore constitutes Confidential Settlement
Information, which is confidential to all except the parties and the mediator.  RJN,
Ex. C at 2.  Accordingly, per the parties' Confidentiality Agreement, the Settlement
Strategy cannot be "used in any way, shape or form for any purpose, including
impeachment, in any pending or future proceeding in any court, in whole or in part,
directly or indirectly, orally or in writing." *Id.*

The Siegels and their counsel obviously relied on the Confidentiality
Agreement and the sanctity of their settlement discussions when they made their
disclosure.  Indeed, the whole purpose of the Confidentiality Agreement was to
enable the parties to comfortably make disclosures in the course of a settlement
mediation that they would not otherwise make, including privileged or confidential
information that, when disclosed, might further settlement.

DC and its counsel have shamelessly chosen with their FAC to defy this
Court's January 14, 2009 Order, and to once again breach their Confidentiality
Agreement.  RJN, Ex. B at 11:7-16, 12:15-19.  They have done so willfully even
though the parties' Confidentiality Agreement expressly applies to "ALL PRESENT
AND FUTURE CIVIL, JUDICIAL … PROCEEDINGS."  RJN, Ex. C at 1
(emphasis in original).  This Court, as before, should not countenance DC's brazen
gamesmanship.  Defendants hereby move that such allegations be stricken from the
FAC (¶¶ 101, 170-73, 188-89, 192-93) pursuant to F.R.C.P. 12(f), and that DC be
enjoined from any further use of such settlement discussions in this litigation or
otherwise, pursuant to the express terms of the Confidentiality Agreement.  *See
Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (*rev'd on other
grounds*, 510 U.S. 517 (1994)) (F.R.C.P. 12(f)'s essential function is to "avoid the
expenditure of time and money that must arise from litigating spurious issues by
dispensing with those issues prior to trial.").[18]

---

[18] Moreover, DC's willful breach entitles Defendants to an injunction against DC's
disclosure of Confidential Settlement Information pursuant to the Confidentiality
Agreement. RJN, Ex. C at 3 (stating that "any breach of this Agreement would cause
irreparable injury" and that "any [party] to this Agreement may obtain an injunction to

1
2

### 4.    The Third and Sixth Claims Necessarily Fail, Once Such Privileged Settlement Information Is Stricken

3    DC's Third and Sixth Claims are inextricably based on allegations purporting

4    to disclose privileged Confidential Settlement Information in willful violation of the

5    parties' JAMS Confidentiality Agreement, and this Court's January 14, 2009 Order.

6    *See* FAC, ¶¶ 101, 170-73, 188-89, 192-93.  Once such allegations are properly

7    stricken by the Court pursuant to F.R.C.P. 12(f), the Third and Sixth Claims

8    necessarily fail.  *See In re Connetics Corp. Secs. Litig.*, 542 F. Supp. 2d 996, 1006

9    (N.D. Cal. 2008) (granting motion to dismiss where "the complaint cannot possibly

10   make sufficient allegations … in the absence of the stricken paragraph"); *Fraker v.*

11   *Bayer*, 2009 U.S. Dist. LEXIS 125633, at *24 (E.D. Cal. Oct. 2, 2009) (where

12   "portion of the [complaint] that alleges a factual basis for Plaintiff's claim … has

13   been order[ed] stricken … [the] claim must fail for failure to state a claim").

14                                   **CONCLUSION**

15   For the foregoing reasons, Plaintiff's Third and Sixth Claims for Relief should

16   be dismissed with prejudice.

17   DATED:  September 20, 2010    TOBEROFF & ASSOCIATES, P.C.

18

19   By_____
                     Marc Toberoff

20
21   Attorneys for Defendants Mark Warren Peary,
     as personal representative of the Estate of
     Joseph Shuster, Jean Adele Peavy, Joanne
22   Siegel and Laura Siegel Larson

23

24

25

26

27   prevent disclosure of any such confidential information").  Defendants therefore will
     respectfully request that DC as well as the closely affiliated defendants in the related
28   *Superman* and *Superboy* cases be enjoined from any further use of such privileged
     "Confidential Settlement Information."

SIEGEL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FAC