# EXHIBIT A

1 | WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
2 | Michael Bergman (SBN 37797)
  Anjani Mandavia (SBN 94092)
3 | Adam Hagen (SBN 218021)
  9665 Wilshire Boulevard, Ninth Floor
4 | Beverly Hills, California 90212
  Telephone: (310) 858-7888
5 | Fax: (310) 550-7191

6 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
  Roger L. Zissu (Admitted *pro hac vice*)
7 | James D. Weinberger (Admitted *pro hac vice*)
  866 United Nations Plaza
8 | New York, New York 10017
  Telephone: (212) 813-5900
9 | Fax: (212) 813-5901

10 | PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 | 1711 Route 9D
   Cold Spring, New York 10516
12 | Telephone: (845) 265-2820
   Fax: (845) 265-2819

13 |

14 | Attorneys for Defendants and Counterclaimant

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No. SA CV 04-8400 SGL (RZx) Case No. SA CV 04-8776 SGL (RZx) |
| Plaintiffs, | Hon. Stephen G. Larson, U.S.D.J. |
| vs. | |
| WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | **DECLARATION OF MICHAEL BERGMAN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENT** |
| Defendants. | |
| JOANNE SIEGEL and LAURA SIEGEL LARSON, | |
| Plaintiffs, | **DISCOVERY MATTER LOCAL RULE 37** |
| vs. | |
| TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10, | Time: 10:00 a.m. Date: January 26 2009 Place: Courtroom 1 |
| Defendants. | Discovery Cutoff: November 17, 2006 |
| AND RELATED COUNTERCLAIMS | |

{F0379950.1 }

1   I, MICHAEL BERGMAN, declare under penalty of perjury:

2       1.      I am a member of Weissmann Wolff Bergman Coleman Grodin &

3   Evall LLP, counsel for Defendants.  This Declaration is made in support of

4   Defendants' Motion to Compel Production of Withheld Document.  I have personal

5   knowledge of the facts contained within this declaration, and, if called upon as a

6   witness, I could and would testify competently thereto.

7       2.      On June 21, 2005 Defendants served their First Set of Document

8   Requests on Plaintiffs.  Responses and objections were served by Plaintiffs' on July

9   21, 2005.  Attached hereto as Exhibit A is a true and correct copy of a Plaintiffs'

10  responses to Defendants' First Set of Document Requests.

11      3.      Despite raising objections in the written responses, Plaintiffs produced

12  various documents responsive to these requests.

13      4.      On May 1, 2008 the Parties entered into a JAMS Confidentiality

14  Agreement as part of the mediation process.

15      5.      On May 2, 2008, counsel for Plaintiffs disclosed the existence of the

16  Withheld Document in a letter to counsel for Defendants.  The letter disclosed the

17  existence, subject matter and nature of the Withheld Document, and classified this

18  revelation as being made "pursuant to the executed 'JAMS Confidentiality

19  Agreement' and solely in connection with the upcoming mediation sessions."

20  Attached hereto as Exhibit B is a true and correct copy of the aforementioned letter

21  which has been redacted to remove information about the Withheld Document.

22      6.      By letter dated June 24, 2008, Defendants requested the immediate

23  production of the Withheld Document as being expressly encompassed by Requests

24  Nos. 59 and 63.  In the letter, Defendants indicated their intent to seek judicial relief

25  if Plaintiffs failed to voluntarily produce the document, and invited a meet and

26  confer.  Attached hereto as Exhibit C is a true and correct copy of the letter I sent to

27  counsel for Plaintiffs dated June 24, 2008, which has been redacted to remove

28  information about the Withheld Document.

7.     In response, Plaintiffs' counsel stated that Plaintiffs refused to produce the Withheld Document and threatened to hold Defendants liable for breach of the mediation confidentiality agreement and move to enjoin Defendants in the event that they disclosed the existence of the document.  Attached hereto as Exhibit D is a true and correct copy of the letter I received from counsel for Plaintiffs dated July 3, 2008, which has been redacted to remove information about the Withheld Document.

8.     On November 21, 2008, the parties met and conferred, and we were unable to resolve our discovery dispute.

9.     These sorts of threats and attempts at intimidation have become commonplace with counsel for Plaintiffs, who recently made similar threats against David Eisen and his firm (Arnold & Porter) if they complied with this Court's September 26, 2008 Order compelling production of the so-called "escrow documents."  As a result of Plaintiff's counsel's threats, there has been no compliance with the Court's Order.

10.     The Court has currently scheduled two trials in this matter.  Defendants believe that the Withheld Document falls squarely within the scope of discovery requests served in this case to which Plaintiff has expressly agreed to produce "all documents."

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 24th day of November, 2008 at Beverly Hills, California.

_Michael Bergman_

Michael Bergman

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

May 2, 2008

## CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY

Via Electronic Mail and U.S. Mail

Michael Bergman, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Blvd., Ninth Floor
Beverly Hills, CA 90212

Re:  Superman/Superboy Litigations, Case Nos. 04-CV-8400, 8776 SGL (RZx)

Dear Michael:

This letter is sent pursuant to the executed "JAMS Confidentiality Agreement" and solely in connection with the upcoming settlement mediation sessions.

We wish to inform you that

Very truly yours,

Marc Toberoff

cc:    Roger L. Zissu, Esq.
       Patrick Perkins, Esq.
       Laura Siegel Larson
       Joanne Siegel
       Warren Peary

# EXHIBIT B

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                    - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                    - - -

7   JOANNE SIEGEL, ET AL.,          )
                                    )
8                    Plaintiffs,    )
                                    )
9            vs.                    )   No. CV 04-08776-SGL
                                    )
10  TIME WARNER, INC., ET AL.,      )
                                    )
11                   Defendants.    )   Cross Motions
    _____)   to Compel

12

13

14          Reporter's Transcript of Proceedings

15                 Riverside, California

16             Wednesday, January 14, 2009

17                    1:32 P.M.

18

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              Federal Official Court Reporter
24              3470 12th Street, Rm. 134
              Riverside, California  92501
25                 (951) 274-0844
                WWW.THERESALANZA.COM

1    APPEARANCES:

2

3    On Behalf of Plaintiffs:

4
                         LAW OFFICES OF MARC TOBEROFF
5                        BY:  Marc Toberoff
                         BY:  Nicholas C. Williamson
6                        2049 Century Park East,
                         Suite 2720
7                        Los Angeles, California  90067
                         310-246-3100
8

9
     on behalf of Defendants:
10

11                       WEISSMANN WOLFF BERGMAN COLEMAN
                          GRODIN & EVALL LLP
12                       BY:  Michael Bergman
                         9665 Wilshire Boulevard,
13                       Ninth Floor
                         Beverly Hills, California  90212
14                       310-858-7888

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                                                    Page

3    MOTIONS........................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      Riverside, California; Wednesday, January 14, 2009; 1:32 P.M.

 2                              -oOo-

 3           THE CLERK:  Calling calendar item two in the case of

 4    Joanne Siegel, etc., versus Warner Brothers Entertainment Inc.,

 5    etc., case number CV 04-08400-SGL(RZx).                          00:11

 6           May we have counsel please come forward and state

 7    your appearances for the record.

 8           MR. BERGMAN:  Good afternoon, your Honor.

 9           Michael Bergman for the defendants.

10           MR. TOBEROFF:  Marc Toberoff for the plaintiff, along    00:12

11    with my associate Nicholas Williamson.

12           THE COURT:  Good afternoon to you both.

13           I'm sorry about the terrible traffic conditions that

14    you encountered coming out here.

15           MR. BERGMAN:  Thank you, your Honor.                     00:12

16           I apologize to the Court and to opposing counsel.

17           THE COURT:  No apology necessary.  Unfortunately,

18    that's part of living and driving in Southern California.

19           I have before me two discovery motions.  I've

20    reviewed the papers.  Let's begin with the defendant's motion   00:12

21    to produce this letter.

22           I guess my first question for Warner Brothers on this

23    is this:  The characterization of the letter by Mr. Toberoff in

24    his papers characterizes it as a communication essentially

25    between counsel and a client.  I don't find anywhere where you   00:12
```

1   dispute that characterization.

2         Am I mistaken?

3         **MR. BERGMAN:**  No, your Honor, you're not.  But I'm in

4   a position where, due to the confidentiality agreement, I

5   cannot disclose, absent Mr. Toberoff relieving me of that                    00:13

6   confidentiality, how Mr. Toberoff characterized the document in

7   the letter which disclosed it.

8         I can tell the Court that it was not described in

9   Mr. Toberoff's letter as a communication with clients.

10        **THE COURT:**  It was not described in Mr. Toberoff's           00:13

11  letter --

12        **MR. BERGMAN:**  The letter to me in which he disclosed

13  what the document was.

14        **THE COURT:**  Fair enough.  But the characterization I

15  have from Mr. Toberoff at this point is that, and I'll just           00:13

16  quote it:  "The privileged document consists of a communication

17  between plaintiffs, the executor of the estate of Superman

18  co-creator Joe Shuster, and plaintiff's counsel who represents

19  both parties, regarding settlement of this action."

20        **MR. BERGMAN:**  Based on --                                         00:14

21        **THE COURT:**  I don't have the letter.

22         You don't have the letter, I presume.

23        **MR. BERGMAN:**  That's correct.

24        Well, I have the letter, Your Honor.

25        **THE COURT:**  That's right.  You do have the letter.           00:14

1   Of course.

2          MR. BERGMAN:  Based on what Mr. Toberoff stated in

3   the letter, his characterization of a communication with

4   clients is not correct.  It is characterized as something else;

5   something else which I will represent to the Court falls                00:14

6   clearly, if it's producible, within the two categories of the

7   requests that we have outlined.

8          Beyond that, there's really nothing.

9          THE COURT:  That, to me, is the turning point, the

10  tipping point of this argument right here; so Mr. Toberoff, I            00:14

11  need your response.

12          I would ordinarily simply accept the representation

13  of any counsel before me that a letter is privileged

14  communication.  This is a unique situation where, because it

15  was in a settlement conference, defense counsel sees it.  He is         00:15

16  disputing your characterization.

17          I would rather not look at this letter myself,

18  particularly since we have a bench trial starting in a few

19  weeks, but there may not be any other way for me to address

20  this than to do so.                                                     00:15

21          I'll give you an opportunity to respond.

22          MR. TOBEROFF:  Your Honor, this is absolutely a

23  privileged communication, attorney-client privilege, joint

24  interest privilege, as a communication between parties with an

25  interest in litigation and attorney-work product.  The document        00:15

```
1   was signed by me summarizing discussions between my clients.

2   There's no way this document would not be protected by the

3   attorney-client privilege.

4         The document was written a week before the settlement

5   mediation solely for the purposes of advancing settlement.  It     00:15

6   reflects discussions between myself and my clients regarding

7   settlement and settlement strategy.

8         THE COURT:  Without getting into the substance of the

9   document, is it fair to say -- and perhaps this explains your

10  different positions -- is it fair to say, Mr. Toberoff, that it    00:16

11  is not self evident from the letter itself that it is

12  representing a communication between a lawyer and a client and

13  that is perhaps why defense counsel looks at it and does not

14  see it that way, but you, being in your position, know that it

15  is?                                                                00:16

16        Is that what it is?

17        MR. TOBEROFF:  Let me correct a misimpression I

18  believe the Court has.

19        Defendants have never seen the document; all they

20  received from me was -- they never saw --                         00:16

21        THE COURT:  They never saw the letter.

22        MR. TOBEROFF:  They never saw the document on which

23  to base a claim that it's not privileged.  I simply described

24  it in a different letter after we entered into a

25  confidentiality agreement which took the JAMMS confidentiality    00:16
```

```
 1   settlement agreement, actually beefed up those provisions;

 2   included in the confidentiality agreement was the provision

 3   that any communications in the course of mediation marked

 4   'settlement, for confidential purposes only' --

 5          THE COURT:  I read that.                                      00:17

 6          MR. TOBEROFF:  So I wrote a letter, 'settlement, for

 7   confidential purposes only,' and in there I talked about this

 8   communication because it bore on -- it was a discussion between

 9   my clients regarding settlement, and I gave some of the results

10   of that.  Based on that, they are demanding the underlying       00:17

11   communication.

12          THE COURT:  I have to stop you and go back to defense

13   counsel.

14          Did you see the letter or did you just see a letter

15   describing the letter?                                           00:17

16          MR. BERGMAN:  Your Honor, I did not see the letter

17   which we are calling the undisclosed document; it has not been

18   produced to us.

19          THE COURT:  I'm sorry, then.  I thought you just told

20   me that you did see the letter.                                  00:17

21          MR. BERGMAN:  No, your Honor.  What I meant -- and

22   perhaps I misspoke.

23          Mr. Toberoff, the day after we signed the

24   confidentiality agreement, sent me a letter; that letter in

25   redacted form is attached to my declaration.                     00:18
```

1          THE COURT:  Okay.

2          MR. BERGMAN:  That letter, which is what's called the

3   transmittal letter or the disclosure letter, the disclosure

4   letter from Mr. Toberoff to me purports to describe the

5   document which we are seeking production of.  As described in          00:18

6   Mr. Toberoff's letter to me, it does not appear to be a

7   communication between a lawyer and a client.  It is

8   characterized by Mr. Toberoff as being something much different

9   than that; something which would, unquestionably, if it were

10  not privileged, be producible in response to request number 63.     00:18

11         THE COURT:  Fair enough.  That would provide you

12  basis for having brought your motion.  I understand that.  But

13  now we're at a different juncture, and I'm having counsel

14  characterize the undisclosed document itself.

15         So my question is:  Is there any reason at this point     00:19

16  to question counsel's clarified clarification of the document

17  in question?

18         MR. BERGMAN:  Well, with all respect, your Honor, the

19  only reason would be is that it is contrary to the way

20  Mr. Toberoff described the document when he disclosed its          00:19

21  existence to us.

22         THE COURT:  Can you explain that, Mr. Toberoff?

23         MR. TOBEROFF:  That's an incorrect statement.

24         THE COURT:  How did you describe it in the letter?

25         Could I see that?  Is that the unredacted version?        00:19

```
 1              MR. BERGMAN:  That's correct.

 2              THE COURT:  Let me see the unredacted version.

 3              This is the letter that was disclosed describing the

 4  letter?

 5              MR. TOBEROFF:  But that discloses the contents of the    00:19

 6  letter.

 7              THE COURT:  It does?

 8              MR. TOBEROFF:  Yes; that's totally covered by our

 9  confidentiality agreement --

10              THE COURT:  Okay.  Then I don't want to see that.    00:19

11              MR. TOBEROFF: -- which they are not supposed to use

12  anything in settlement in this litigation, which they are now

13  attempting to do by putting this in front of you.

14              I'll say this:  The letter that I sent does not

15  describe every aspect of this communication, nor does it attach    00:20

16  the communication.  It describes some of the results of the

17  communication as it bears on settlement.

18              The communication is signed by me.  It is signed by

19  me, and it refers to discussions that I had with my clients

20  regarding settlement.  How that cannot be privileged, I do not    00:20

21  know.  Even if it had not been signed by me but merely

22  reflected a communication between two parties with an interest

23  in litigation regarding settlement or regarding settlement

24  strategy, that would be protected by the joint interest

25  privilege.    00:20
```

```
 1          THE COURT:  Thank you, Counsel.

 2          Anything further?

 3          MR. BERGMAN:  I'm at a real disadvantage here.

 4          THE COURT:  I know you are.  The only one who is at

 5   more of a disadvantage is the Court.                              00:20

 6          MR. BERGMAN:  I understand.

 7          Would your Honor permit me to use the one-word

 8   adjective with which Mr. Toberoff described the letter?

 9          MR. TOBEROFF:  No I will not.

10          You're breaching the confidentiality--                    00:21

11          THE COURT:  Counsel, stop.  Stop.  We have a lot of

12   litigation together.  I don't want to see that happen again.

13          You address the Court one at a time.

14          Understood?

15          MR. TOBEROFF:  Sure.                                      00:21

16          THE COURT:  No.

17          Is there anything further on this point?

18          MR. BERGMAN:  Only, your Honor, the obvious point

19   that if there is an agreement in existence which is not

20   privileged which has never before been disclosed and it's       00:21

21   disclosed for the first time as part of a mediation process,

22   that does not make the document itself privileged.

23          THE COURT:  I understand that.

24          Mr. Toberoff, I've heard enough.

25          MR. TOBEROFF:  If I may just --                           00:21
```

1      **THE COURT:**  I said I've heard enough.

2      The motion is denied.

3      I will accept Mr. Toberoff's clarification of the

4  letter or characterization of the letter.  I understand without

5  having seen it that defense received a partial rendering of          00:22

6  that letter that led them to believe that it was not

7  privileged.  I can understand why they brought this motion and

8  I certainly do not fault them for doing that.

9      However, I will accept Mr. Toberoff's

10  characterization of it as a privileged document, as an officer      00:22

11  of the court.  I have every reason to believe that he is the

12  only person who has access to the underlying privileged

13  document; is fairly and accurately representing that to the

14  Court; and I will rely on that representation.

15      Part of this is motivated simply by the Court's           00:22

16  commitment to maintaining the settlement privilege.  It was the

17  Court that encouraged you to engage in that settlement effort,

18  and I want to maintain the confidences that were agreed to

19  during that period.  So that motion is denied.

20      Let's take up the plaintiff's motion with respect to       00:23

21  compelling documents.

22      I guess I need clarification, perhaps from both sides

23  on this.  As I understand it, there were three or four

24  different document productions made by the defense.  And if I

25  am understanding the plaintiff's motion correctly, you're         00:23

1    simply asking that the defense supplement any and all requests

2    for which supplemental documentation exists.

3           Is that correct, Mr. Toberoff?

4           **MR. TOBEROFF:**  That's correct, your Honor.

5           **THE COURT:**  Okay.                                          00:23

6           That's required by the local rules regardless of any

7    requests or regardless of any letters or specific meet and

8    confers; that's something which is an ongoing obligation which

9    I know the defense understands and appreciates; so I don't see

10   what the problem is.                                                  00:23

11          **MR. BERGMAN:**  Indeed, we do understand that, your

12   Honor.  And as a matter of fact, the documents have been

13   produced, and our papers reflect that.

14          **THE COURT:**  I understand documents have been

15   produced.  My question to you is have supplemental documents      00:24

16   been produced in all categories for which previous documents

17   have been produced, so as to update them and fulfill your

18   obligations under the Federal Rules of Civil Procedure?

19          **MR. BERGMAN:**  Yes, Sir.

20          And the reason why -- just to explain the                     00:24

21   circumstances, if I may briefly, your Honor -- why we did not

22   produce these requested documents immediately is the narrow

23   focus of the February 3rd trial.  Mr. Toberoff and we had

24   agreed 60 days prior to each trial, we would supplement our

25   prior productions relating to the issue to be tried.                 00:24

1          The issues to be tried on February 3rd are either

2     alter ego or sweetheart deal; that is something that's going to

3     be addressed in the motion in limine.

4          **THE COURT:**  I've gone through the motions in limine,

5     the motions in limine/motions for reconsideration of the          00:25

6     Court's summary judgment order, and I will deal with those on

7     Monday, January 26th.

8          **MR. BERGMAN:**  Okay.

9          The documents which Mr. Toberoff specified in his

10    letter which began this process, which is Exhibit H to          00:25

11    Mr. Toberoff's declaration, his meet and confer letter, if you

12    will, lists the categories of documents that he wanted

13    supplemented.  With one exception, the 12 or 13 categories all

14    relate to the exploitation in one way or another of either the

15    "Superman Returns" film or "Smallville", documents pertaining          00:25

16    to its exhibition on ABC to its syndication to independent

17    television stations.

18          None of that material is relevant to the issue of

19    "are these contracts sweetheart deals?"  It has nothing do with

20    that subject.  It has nothing do with the alter ego subject.          00:26

21    That was our basis for not producing the documents in the first

22    instance.  We reached the point where we realized that the

23    fight was not worth the fight, and we produced all of the

24    documents we had.

25          If I'm not mistaken, as I read Mr. Toberoff's          00:26

1  supplemental brief, it appears that the only thing he's

2  complaining of now is that we did not provide drafts and

3  correspondence pertaining to the agreements which we did

4  produce in the supplemental production, one of them being an

5  agreement with Warner Brothers consumer products that had          00:26

6  literally been executed on December 15th or 16th, after the

7  date to produce, and we've produced it.

8           **THE COURT:**  I guess my concern is, and I want to make

9  sure I'm being clear, I don't want Mr. Toberoff's specific

10  requests and your satisfaction of those specific requests to be   00:27

11  viewed as satisfying your ongoing obligations to supplement for

12  the entire category of requests that have been made and to

13  which you have produced documents in the past.  And that's the

14  impression that I got from reading that correspondence and your

15  responses.                                                         00:27

16           I want it understood that if there's an agreement

17  between counsel that we're going to focus on discovery for the

18  trial that we have on February 3rd now, that makes sense to me.

19  But at some point in time, sooner as opposed to later, there

20  needs to be a full supplemental production on the part of         00:27

21  Warner Brothers for every category for which they have

22  previously produced documents to the extent that they have

23  supplemental documents.  That's understood.

24           **MR. BERGMAN:**  That is understood, and I assume the

25  same thing applies to plaintiffs.                                 00:28

```
1            THE COURT:  Of course.  Rules apply to both sides.

2            So let me hear from Mr. Toberoff.

3            If counsel understands that obligation, do you have

4   this agreement to cabin off the discovery in anticipation of

5   the February 3rd trial?                                          00:28

6            What exactly is it that you're seeking from the Court

7   to order in light of counsel's representation that he

8   understands his obligations to supplement to the extent there

9   are supplemental documents.

10           MR. TOBEROFF:  First of all, it's incorrect that they   00:28

11  have produced all documents.

12           Even though it's not plaintiff's burden to pinpoint

13  documents they have not seen yet but to give requests for

14  categories to which they need to respond, I can think of a few

15  areas where they have not produced documents where documents   00:28

16  would exist.

17           Since 2006, the last production, there have been

18  additional Superman agreements and amendments to existing

19  agreements.  They produced those finally on December 17th, but

20  they did not produce drafts showing the negotiating history of  00:29

21  those agreements, which are obviously relevant to an

22  examination of whether agreements are entered into at arms'

23  length.

24           Previously, in their prior production they produced

25  drafts and correspondence, but in their supplemental they did   00:29
```

1   not supplement by producing drafts and correspondence of new

2   agreements and amendments; so that's one area that I can think

3   of.

4            Another is for over two years there have been

5   internal memorandum of D.C. and Warner Brothers and                00:29

6   correspondence between D.C. and Warner Brothers regarding their

7   Superman agreements and regarding their relationship which are

8   all very relevant to the upcoming alter ego trial.  They have

9   not produced any internal memorandum or correspondence which

10  they must produce.                                                  00:29

11           I need to take this back, because this is really not

12  a casual thing; this is a bigger problem and should not be

13  treated in the casual manner advocated by defendants.

14           I spent about four to five months with them prior to

15  arriving at this agreement, meeting and conferring about           00:30

16  supplementation, because I was very concerned about it.  In

17  fact, we had to bring a prior motion to compel where we served

18  our portion of a joint stipulation, and it was only after that

19  that they finally agreed to supplement 60 days before trial.

20  That date was calculated to also be before the LR 16 when each     00:30

21  side had to basically earmark their evidence and plan out their

22  trial strategy.

23           We finally arrive at this discovery agreement -- and

24  the rules are meant to promote exactly this type of

25  compromise -- and they willfully breached the agreement.  When     00:30

```
 1   I address it, Mr. Bergman is evasive.  I bring it up again
 2   on -- we comply with the agreement on November 21st.  Not only
 3   do we supplement with our prior production, but we supplement
 4   by providing all documents we intend to rely upon at trial.
 5           I bring it up.  They are evasive.  Then on                    00:31
 6   December 2nd, they say flat out, 'we're not supplementing.'
 7   December 8th, at another meet and confer regarding motions in
 8   limine, they say 'we are not supplementing.'  Then on
 9   December 17th at 7:00 p.m., a messenger is sent over to the
10   office; the next day the motion in limine on this very subject   00:31
11   is due, they suddenly make a selective production.
12           This is just flat out wrong.
13           And they did it to disrupt their trial preparation,
14   to disrupt our motion to compel on the subject, and to disrupt
15   their motion in limine on the subject.                           00:31
16           In that supplementation, rather than supplement
17   within the responsive framework of requests and their prior
18   production, as your Honor has referred to, they simply take my
19   meet and confer letter which specifically mentioned the
20   relevant requests that are relevant to the alter ego trial, and  00:32
21   instead of focusing on documents responsive to those requests,
22   they say 'we disagree that we have any duty to supplement,' and
23   then they selectively go through some of the examples I've
24   given of what would be responsive documents and they narrow
25   that list and claim they have supplemented.                      00:32
```

```
 1              This is improper.  And because they have breached an
 2    expressed agreement, we believe they need to be ordered by the
 3    Court to supplement, if not sanctioned, for their behavior.
 4          THE COURT:  At this point, though, you do agree that
 5    there is this agreement in terms of narrowing the production to      00:32
 6    documents that are relevant to the February 3rd trial; is that
 7    correct?
 8          MR. TOBEROFF:  Absolutely.  And we gave them a list
 9    of those requests which are relevant to this first phase of the
10    trial.                                                                00:32
11          THE COURT:  Very well.
12          And Counsel, you agree with this?
13          MR. BERGMAN:  I'm not sure what the 'this' is, your
14    Honor.
15          THE COURT:  'This' being that you have a duty to              00:33
16    supplement all document requests that are related to this
17    phase, this trial.
18          MR. BERGMAN:  Unquestionably.
19          THE COURT:  And you have made that production.
20          MR. BERGMAN:  I believe that we have produced                00:33
21    everything that Mr. Toberoff has identified.
22          THE COURT:  That wasn't the question I asked.
23          You're doing it again what you did in the papers, and
24    that's really causing me to think that you have not done what I
25    asked.                                                               00:33
```

```
 1              Have you produced supplements for every document

 2   request that is relevant to the February 3rd trial?

 3              It's a yes or no.

 4         MR. BERGMAN:  Yes.

 5         THE COURT:  I want you to make sure of that.            00:33

 6         MR. BERGMAN:  Yes, sir.

 7         THE COURT:  Because of your equivocation, I'm going

 8   to give you one week to make sure of that.

 9              Today is the 14th, you have to the 21st; so you have

10   one week to reaffirm, to make sure, that you have supplemented   00:33

11   every category.  Not just what Mr. Toberoff has identified, but

12   every category that is relevant to the February 3rd trial.

13              And more than that, I'm going to accept your

14   representation today that you have done so.  Nothing that you

15   produce after today is going to be used in the February 3rd     00:34

16   trial by Warner Brothers.

17         MR. BERGMAN:  Yes, sir.

18         THE COURT:  Anything further, Mr. Toberoff?

19         MR. TOBEROFF:  Yes, your Honor.

20              It has to do with the aspect of your words 'relevant  00:34

21   to the trial.'

22              Defendants have taken a very sort of self-serving

23   view.  It's in their interests to try and narrow what this

24   trial is about.  They want to narrow the trial, not only to the

25   terms of a couple agreements, but just to the financial terms   00:34
```

```
 1    of those agreements.  So when they say, 'yes, relevant to the
 2    trial,' that really should not be the measure.  It should be
 3    relevant to either the scope that you say that is --
 4            THE COURT:  If I was dealing with a young,
 5    fresh-out-of-law-school attorney, I would have more concerns      00:35
 6    about this, but I'm sure that all counsel in this room
 7    understand the distinction between the standard of relevancy in
 8    the discovery phase versus the standard of relevancy at the
 9    trial itself.  And I'm sure at the end of this next week,
10    counsel will make sure that anything that is discoverable, as    00:35
11    that term is used in the Federal Rules of Civil Procedure,
12    related or potentially related or likely to lead to the
13    discovery of evidence, will be produced.
14            MR. TOBEROFF:  I understand, your Honor.
15            May I bring up one aspect which was touched upon?        00:35
16            THE COURT:  Sure.
17            MR. TOBEROFF:  He mentioned documents which regard
18    the distribution of Smallville or Superman Returns as being
19    entirely irrelevant.
20            We've asked for -- once this television show             00:35
21    "Smallville" is produced, they make an agreement to broadcast
22    it; and then, after they make an agreement, to put it on cable
23    and other media.  So we asked for their agreement between WBTV
24    and the WB Network which broadcasts and for the agreement with
25    the ABC Family Entertainment, and they have taken the position   00:36
```

```
 1   that it's completely irrelevant to this trial.

 2           It is not irrelevant, and I can just give you a few

 3   examples.

 4           THE COURT:  It may or may not be relevant in terms of

 5   being admitted at trial.  I'm not going to rule on that now.          00:36

 6   It's certainly subject to discovery, and let's have it turned

 7   over.

 8           MR. TOBEROFF:  Thank you, your Honor.

 9           THE COURT:  We have some very interesting issues to

10   take up on the 26th.  The Court believes that it will be in a          00:36

11   position to rule from the bench on all eight motions that it

12   has before it on the 26th.

13           Be prepared to argue.  I will certainly indicate at

14   the outset my tentative.  I'll look forward to seeing you on

15   January 26th.                                                          00:36

16           THE CLERK:  Court is in recess.

17

18                            CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the Judicial Conference of
     the United States.

23

24   _____          _____
     THERESA A. LANZA, CSR, RPR                      Date
25   Federal Official Court Reporter
```

EXHIBIT C

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No: CV 04-08400 SGL (RZx) <br><br> [Consolidated with Case No. 04-8776 SGL (RZx) for Discovery] <br><br> Hon. Stephen G. Larson, U.S.D.J. <br><br> **DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL** <br><br> **DISCOVERY MATTER** <br><br> **LOCAL RULE 37** <br><br> Date: ~~December 29, 2008~~ January 26, 2009 <br> Time: 10:00 a.m. <br> Place: Courtroom 1 |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | |

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

1

## DECLARATION OF MARC TOBEROFF

2     I, Marc Toberoff, declare as follows:

3     1.     I am an attorney at Toberoff & Associates, P.C., counsel of record for

4 plaintiffs Laura Siegel Larson and Joanne Siegel ("Plaintiffs"). I am a member in

5 good standing of the State Bar of California and submit this declaration in opposition

6 to Defendants' motion to compel. I have personal knowledge of the facts set forth in

7 this declaration and, if called as a witness, could and would testify competently to

8 such facts under oath.

9     2.     Attached hereto as "Exhibit A" are true and correct copies of relevant

10 excerpts from the Notice of Motion and Joint Stipulation Re: Defendants' Motion to

11 Compel Compliance with the Court's 4/30/07 Order and Motion for Sanctions, filed

12 by Defendants on September 17, 2007.

13     3.     Attached hereto as "Exhibit B" is a true and correct copy of the "JAMS

14 Confidentiality Agreement," entered into by the parties on or about April 30, 2008.

15     4.     Attached hereto as "Exhibit C" is a true and correct copy of the Court's

16 order of March 31, 2008 that the parties participate in settlement mediation.

17     5.     Attached hereto as "Exhibit D" is a true and correct copy of the Court's

18 order of December 12, 2007.

19     6.     On June 24, 2008, I received a letter from Defendants' counsel, Michael

20 Bergman, demanding or otherwise threatening to move to compel production of a

21 privileged and confidential communication ("Privileged Document") that I had

22 prepared for purposes of the parties' Court-ordered settlement mediation. Without

23 waiver of its privileged status I had disclosed the existence and general subject of the

24 Privileged Document in a letter to Mr. Bergman dated May 2, 2008 and clearly

25 marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY" shortly

26 before the scheduled May 8, 2008 settlement mediation. Redacted copies of my May

27 2, 2008 letter and Mr. Bergman's June 24, 2008 letter are attached as Exhibits B and

28 C, respectively, to the Declaration of Michael Bergman.

1

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

7.    On July 3, 2008, I responded by letter to Mr. Bergman's June 24, 2008 demand letter. Yet, between July 3, 2008 and November 18, 2008, Defendants did not reply to my letter or contact me in any fashion regarding their demand for the Privileged Document. A redacted copy of my July 3, 2008 letter is attached as Exhibit D to the Declaration of Michael Bergman.

8.    On November 18, 2008, Mr. Bergman contacted me to set up a "meet-and-confer" concerning the Privileged Document. An in-person meet-and-confer between myself and Mr. Bergman was held on November 21, 2008, but did not resolve this matter.

9.    The Privileged Document, dated April 30, 2008, was drafted by me in anticipation and in furtherance of the May 8, 2008 settlement mediation. It constitutes a communication regarding settlement between myself and my clients – Plaintiffs and the Executor of the Estate of Joseph Shuster – who share common interests in the *Superman* copyrights.

10.    Plaintiffs have incurred at least $5,350 in attorney's fees in connection with the preparation of their portion of this Joint Stipulation: at least 9 hours of time has been expended by my associates, Nicholas Williamson (3 hours) and Jeffrey Rhoads (6 hours), in researching and drafting Plaintiffs' portion of the Joint Stipulation, and at least 5 hours has been expended by me in meeting and conferring regarding this matter and reviewing and revising Plaintiffs' portion of the Joint Stipulation. Our firm's rates are $350 an hour for Mr. Williamson's legal services, $300 an hour for Mr. Rhoads' legal services and $500 an hour for my legal services.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on December 3, 2008 in Los Angeles, California.

Marc Toberoff

2

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

**039**

## JAMS

## CONFIDENTIALITY AGREEMENT (CALIFORNIA)

Re:    Mediation of Siegel, Joanne, et al. vs. DC Comics, et al.
JAMS Reference Number 1100052854

In order to promote communication among the parties and to facilitate resolution of the dispute, the participants agree as follows:

1.    This mediation process is to be considered settlement negotiations for the purpose of all state and federal rules protecting disclosures made during such process from later discovery and/or use in evidence.

2.    The provisions of California Evidence Code §§ 1115-1128 and 703.5, attached hereto, apply to this mediation. The provisions of the Central District of California Local Rule 16-15, attached hereto, also apply to this mediation. Pursuant to Local Rule 16-5.8, the mediation and any settlement conference or discussion ("Settlement Conference") shall be confidential, and no part of any Settlement Conference shall be reported, or otherwise recorded, without the consent of the parties. With respect to California Evidence Code §1122, any agreement to disclose under subsections (a)(1) or (a)(2) of that section must be expressly made in writing. THIS CONFIDENTIALITY AGREEMENT ("AGREEMENT") EXTENDS TO ALL PRESENT AND FUTURE CIVIL, JUDICIAL, QUASI-JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER PROCEEDINGS.

3.    The participants' sole purpose in conducting or participating in any Settlement Conference is to compromise, settle or resolve their dispute, in whole or in part. Pursuant to Evidence Code § 1121, neither the mediator nor anyone else will submit to a court or other adjudicative body any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, unless all parties to the mediation expressly agree otherwise in writing in accordance with Evidence Code § 1118.

4.    The privileged character of any information or documents is not altered by disclosure to the mediator or disclosure in any Settlement Conference The mediation process may continue after the date appearing below. Therefore, the mediator's subsequent oral and written communications with the mediation participants in a continuing effort to resolve the dispute are subject to this Agreement. Accordingly, the parties waive the automatic termination provisions of Evidence Code § 1125(a)(5).

5.    All parties, counsel and any other persons attending any Settlement Conference shall treat all such discussions as strictly confidential in every respect, including without limitation, the contents or substance of any oral or written statements

made at the Settlement Conference, and all other substantive aspects of such Settlement Conference ("Confidential Settlement Information"). Without limitation, any document that is marked "Confidential – For Settlement Purposes Only" and is disclosed or produced at or in connection with a Settlement Conference shall be treated as Confidential Settlement Information. Confidential Settlement Information shall not be disclosed to anyone other than the parties, their counsel or the mediator or used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly, orally or in writing, except as set forth in paragraph 6 below.

6.    The prohibition on the disclosure of Confidential Settlement Information does not extend to disclosures as may be mutually stipulated and agreed upon in writing by all parties or to disclosures as are otherwise ordered by a Court of competent jurisdiction. Documentation or information that is (a) publicly available, (b) already in the possession of the adverse party or their counsel prior to its disclosure by a party or their counsel at a Settlement Conference, or (c) is developed independently of any Settlement Conference and without reference thereto, shall not be considered as Confidential Settlement Information, and pursuant to Evidence Code § 1120, the use of such information and documentation at a Settlement Conference shall have no effect on the admissibility or protection from disclosure of the information and documentation in the underlying litigation; however the fact that such information or documentation was used or disclosed at a Settlement Conference, and the nature of such use or disclosure, at a Settlement Conference will constitute Confidential Settlement Information.

7.    The parties shall file with the Court a "joint report, outlining the efforts they have taken in furtherance of the settlement and the results of those efforts," pursuant to the Court's March 31, 2008 scheduling order, and on or before the Court's June 1, 2008 deadline. To the extent the parties fail to settle any outstanding action, claim or dispute by a written settlement agreement, the parties shall, unless otherwise agreed in writing, limit the information conveyed to the Court in their joint report or otherwise to the following: (i) that the parties were unable to settle the action, claim or dispute; (ii) the names of all parties and their counsel who attended each mediation session or other Settlement Conference; and (iii) the dates and duration of any such mediation session or other Settlement Conference. Any further or additional statement or disclosure regarding the status of the parties' settlement discussions as set in the "joint report" or otherwise shall only be made with the written consent of all parties. No further disclosure concerning any of the settlement proceedings, or of "Confidential Settlement Information," shall be made by either party or their respective attorneys, agents, or representatives, in whole or in part, directly or indirectly, orally or in writing, except as set forth in paragraph 6 above.

8.    ANY WRITTEN SETTLEMENT AGREEMENT PREPARED DURING OR AT THE CONCLUSION OF THE MEDIATION IS SUBJECT TO DISCLOSURE, BINDING, ENFORCEABLE, AND ADMISSIBLE to prove the existence of and/or to enforce the agreement under California Code of Civil Procedure 5664.6, if applicable, or otherwise.

041

9.     Because the participants are disclosing information in reliance upon this Agreement, any breach of this Agreement would cause irreparable injury for which monetary damages would be inadequate. Consequently, any pasty to this Agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this Agreement.

10.     In the event that any other individual or entity not set forth below participates in the mediation process, such an individual or entity must expressly and in writing agree to all provisions of this Agreement.

11.     The mediator is serving as a neutral intermediary and settlement facilitator and may not act as an advocate for any party. THE MEDIATOR'S STATEMENTS DO NOT CONSTITUTE LEGAL ADVICE TO ANY PARTY. ACCORDINGLY, THE PARTIES ARE STRONGLY ENCOURAGED TO SEEK LEGAL ADVICE FROM THEIR OWN COUNSEL. If the mediator assists in preparing a settlement agreement, each participant is advised to have the agreement independently reviewed by their own counsel before executing the agreement.


Executed on _____


_____
Marc Toberoff, Esq.
Law Offices of Marc Toberoff


_____
Nicholas C. Williamson, Esq.
Law Offices of Marc Toberoff


_____
Keith G. Adams, Esq.
Law Offices of Marc Toberoff


_____
Joanne Siegel


_____
Laura Siegel Larson

042

Received    Apr-30-08  07:16pm    From-1 310 827 7227    To-    Page 003

page 3/5

9.    Because the participants are disclosing information in reliance upon this Agreement, any breach of this Agreement would cause irreparable injury for which monetary damages would be inadequate. Consequently, any party to this Agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this Agreement.

10.    In the event that any other individual or entity not set forth below participates in the mediation process, such an individual or entity must expressly and in writing agree to all provisions of this Agreement.

11.    The mediator is serving as a neutral intermediary and settlement facilitator and may not act as an advocate for any party. THE MEDIATOR'S STATEMENTS DO NOT CONSTITUTE LEGAL ADVICE TO ANY PARTY. ACCORDINGLY, THE PARTIES ARE STRONGLY ENCOURAGED TO SEEK LEGAL ADVICE FROM THEIR OWN COUNSEL. If the mediator assists in preparing a settlement agreement, each participant is advised to have the agreement independently reviewed by their own counsel before executing the agreement.

Executed on _____

_____
Marc Toberoff, Esq.
Law Offices of Marc Toberoff

_____
Nicholas C. Williamson, Esq.
Law Offices of Marc Toberoff

_____
Keith G. Adams, Esq.
Law Offices of Marc Toberoff

_Joanne Siegel_
Joanne Siegel

_Laura Siegel Larson_
Laura Siegel Larson

_Mark Warren Peary_

Estate of Joseph Shuster,
Mark Warren Peary, Executor

Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

Warner Bros. Entertainment Inc.

Time Warner, Inc.

Warner Communications, Inc.

Warner Bros. Television Production, Inc.

DC Comics

page 4/5

Estate of Joseph Shuster,
Mark Warren Peary, Executor

Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

Warner Bros. Entertainment Inc.

Time Warner Inc.

Warner Communications Inc.

Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

page 4/5

_____
Estate of Joseph Shuster,
Mark Warren Peary, Executor

_____
Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

_____
Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

_____
Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

_____
Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

_____
Warner Bros. Entertainment Inc.

_____
Time Warner Inc.

_____
Warner Communications Inc.

_____
Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

page 4/5

_____
Estate of Joseph Shuster,
Mark Warren Peary, Executor

_____
Michael Bergman, Esq.
Weissman Wolff Bergman, et al.

_____
Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.

_____
Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.

_____
Patrick T. Perkins, Esq.
Perkins Law Office, P.C.

_____
Warner Bros. Entertainment Inc.

_____
Time Warner Inc.

_____
Warner Communications Inc.

_____
Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

page 4/5

_____
Estate of Joseph Shuster,
Mark Warren Peary, Executor


_____
Michael Bergman, Esq.
Weissman Wolff Bergman, et al.


_____
Anjani Mandavia, Esq.
Weissman Wolff Bergman, et al.


_____
Roger Zissu, Esq.
Fross Zelnick Lehrman & Zissu, P.C.


_____
Patrick T. Perkins, Esq.
Perkins Law Office, P.C.


_____
Warner Bros. Entertainment Inc.

_____
Time Warner Inc.

_____
Warner Communications Inc.


_____
Warner Bros. Television Production
A division of WB Studio Enterprises Inc.

page 5/5

DC Comics

for

for

for

for

for

for

for

for

for

for

# EXHIBIT D

1  WEISSMANN WOLFF BERGMAN
2    COLEMAN GRODIN & EVALL LLP
   Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone:  310-858-7888
   Fax:          310-550-7191
5  Email:        mbergman@wwllp.com

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone:  212-813-5900
9  Fax:          212-813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, NY 10516
12 Telephone: 845-265-2820
   Fax:          845-265-2819

13
   Attorneys for Defendants and Counterclaimant
14
                UNITED STATES DISTRICT COURT
15
      CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
16

17 JOANNE SIEGEL and LAURA          )  Case No. SA CV 04-8400 SGL (RZx)
   SIEGEL LARSON,                    )  Case No. SA CV 04-8776 SGL (RZx)
18                                   )
                                     )  Hon. Stephen G. Larson, U.S.D.J.
19          Plaintiffs,             )  Hon. Ralph Zarefsky, U.S.M.J.
                                     )
20     vs.                          )  **NOTICE OF MOTION AND**
                                     )  **JOINT STIPULATION RE:**
21 TIME WARNER INC., WARNER         )  **DEFENDANTS' MOTION TO**
   COMMUNICATIONS INC. WARNER       )  **COMPEL COMPLIANCE WITH**
22 BROS. ENTERTAINMENT INC.,        )  **THE COURT'S 4/30/07 ORDER**
   WARNER BROS. TELEVISION          )  **AND MOTION FOR SANCTIONS**
23 PRODUCTION INC., DC COMICS,      )
   and DOES 1-10,                   )  Time:      10:00 a.m.
24                                   )  Date:      October 15, 2007
                                     )  Place:     Courtroom 540
25          Defendants.             )  Mag. Judge Ralph Zarefsky
                                     )  Discovery Cutoff: Nov. 17, 2006
26                                   )
                                     )
27 AND RELATED COUNTERCLAIMS.       )
                                     )
28

# TABLE OF CONTENTS

I.    DEFENDANTS' INTRODUCTORY STATEMENT ........................................1

II.   PLAINTIFFS' INTRODUCTORY STATEMENT .........................................3

III.  DEFENDANTS' CONTENTIONS ....................................................6

      A.   RELEVANT BACKGROUND ..................................................6

      B.   ARGUMENT ...........................................................10

           1.   The "Defamatory" Cover Letter To The Escrow
                Documents...................................................12

           2.   Post-Litigation Attorney-Client Communications...............13

           3.   Plaintiffs and Mr. Toberoff Cannot Use An Entry On a
                Third Party's Privilege Log To Prevent the Escrow
                Officer From Releasing Documents That Were Unlisted
                On Their Own Privilege Logs.................................14

           4.   The Escrow Holder Cannot Fulfill The Court's Order
                Without Matching Up The Escrow Documents With the
                Documents and Privilege Log Entries Identified in
                Mr. Toberoff's Declaration. ...............................20

      C.   CONTEMPT SANCTIONS ARE WARRANTED HERE ...............23

IV.   PLAINTIFFS' CONTENTIONS ....................................................24

      FACTUAL AND PROCEDURAL BACKGROUND ...................................24

           1.   Documents Stolen from Plaintiffs' Attorneys' Files .........25

           2.   The Court's April 30, 2007 Order..........................28

      ARGUMENT....................................................................31

      A.   Plaintiffs' Counsel Fully Complied With the Court's
           April 20, 2007 Order ..........................................31

           1.   Plaintiffs Attorney-Client Communications After
                Commencement of Litigation Retain Their Privilege..........32

           2.   The "Defamatory Cover Letter" Discussing The Contents Of
                Privileged Communications Listed In The Privilege Logs Should Not
                Be Disclosed Per The Order's Rationale .....................34

i

3.    Per The Order, The Two Letters Listed On The Privilege Log Of Non-Party Attorney, Don Bulson, Should Not Be Disclosed ....................37

B.    Defendants' Improper Attempt To Influence And Interfere With The "Escrow" Process Should Not Be Countenanced .............................42

C.    Sanctions Against Plaintiff Are Improper...........................................44

D.    Defendants Should Be Sanctioned For Their Attempt to Influence the Escrow Process ....................................................................................45

V.    DEFENDANTS' CONCLUSION...................................................................45

VI.    PLAINTIFFS' CONCLUSION.....................................................................46

053

1   (9th Cir. 1981) (party asserting the attorney-client privilege has the burden of

2   establishing that it applies).  The first specific mention they made of the

3   document's potentially or purportedly privileged nature was during the briefing of

4   Defendants' original motion to compel, at which time Mr. Toberoff made an

5   equivocal reference to the document.  (Bergman Decl. Exh. J.)  However, Mr.

6   Toberoff did not demonstrate or even affirmatively state that that the document is

7   privileged; rather, he contended that the letter "is defamatory and in other respects

8   *potentially violates* the attorney-client privilege." (*Id.* at ¶ 27) (emphasis added.)

9   It was not until the correspondence leading up to the present motion that Mr.

10  Toberoff took a firm stance by asserting that the cover letter is protected by the

11  attorney-client privilege.  These circumstances demonstrate that Plaintiffs and Mr.

12  Toberoff cannot make the showing required to withhold a document from

13  production, and for this independent reason, that letter should be turned over to

14  Defendants.

15          **2.      Post-Litigation Attorney-Client Communications.**

16          While Defendants do not dispute that the parties to the litigation had an

17  understanding that they would not list post-litigation documents on their privilege

18  logs, that is not the issue here.  Because the Court's Order was clear and required

19  the Escrow Holder to release *any* documents not previously listed on a privilege

20  log, the sole issue is whether each Escrow Document -- post-litigation

21  communication or not -- was listed on a privilege log.  Under a straightforward

22  analysis of what that Order required, therefore, the Escrow holder should turn over

23  the documents purportedly containing post-litigation attorney-client

24  communications regardless of whether the plaintiffs and defendants to the

25  litigation had a prior understanding, since those documents had not been

26  previously produced or listed on any privilege log.

27          It is now too late to contemplate what might have happened if Mr. Toberoff

28  had declared this objection to the Court during the hearing and given Defendants

13

1  Toberoff's declaration to confirm that he is releasing the proper Escrow

2  Documents to Plaintiffs and Defendants; and (3) grant sanctions to Defendants in

3  the amount of $7,440.

4  **VI.  <u>PLAINTIFFS' CONCLUSION</u>**

5      For the reasons set forth herein, Plaintiffs respectfully request that

6  Defendants' unfounded motion be denied in its entirety and that the Court grant

7  Plaintiffs sanctions in the amount of $5,600.

8

9

10  DATED: September 17, 2007  Respectfully submitted,

11                             WEISSMANN WOLFF BERGMAN
                               COLEMAN GRODIN & EVALL, LLP

12                                    -and-
                               FROSS ZELNICK LERMAN ZISSU, LLP

13                                    -and-
                               PERKINS LAW FIRM, PLC

14

15                             By _____

16                                 Michael Bergman
                                   Attorneys for Defendants

17

18  DATED: September __, 2007   LAW OFFICES OF MARC TOBEROFF, PLC

19

20                             By _____

21                                 Marc Toberoff

22                             Attorneys for Plaintiffs JOANNE SIEGEL
                               and LAURA SIEGEL LARSON

23

24

25

26

27

28

# EXHIBIT E

Case 2:10-cv-03633-ODW-RZ Document 78-4 Filed 09/20/10 Page 50 of 125 Page
ID #:6216
Case 2:04-cv-08400-SGL-RZ Document 294 Filed 03/31/2008 Page 1 of 2

"O"

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-08400-SGL (RZx)                    Date: March 31, 2008

Title:   JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10
=============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                              None Present
Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:   ORDER DENYING AS MOOT PARTIES CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT IN CV-04-8776 CASE; ORDER REQUIRING
PARTIES TO ENGAGE IN MEANINGFUL SETTLEMENT NEGOTIATIONS;
ORDER SETTING PRE-TRIAL AND TRIAL DATES; ORDER STAYING
RULING ON OUTSTANDING ISSUES CONTAINED IN JULY 27, 2007,
ORDER PENDING SETTLEMENT DISCUSSIONS   (IN CHAMBERS)

As the Court stated during the September 17, 2007, hearing on the parties' cross-motions
for partial summary judgment in these cases, the issues raised by the parties in the Superboy
action, Case No. CV-04-8776-SGL, were, in light of the Court's earlier ruling on July 27, 2007, and
with a forthcoming ruling in the companion Superman action, Case No. CV-04-8400-SGL, would
be rendered moot.  With the Court's issuance of its Order on March 26, 2008, the Court finds that
the issues raised in the parties' cross-motions for partial summary judgment in the Superboy case
are, in fact, moot.

In light of the Court's rulings to date in these companion cases, which have narrowed the
areas of dispute between the parties, the Court believes that it would be prudent at this juncture for
the parties to engage in meaningful settlement talks before their jointly chosen mediator, JAMS
Mediator Hon. Daniel Weinstein (Ret.), something which they apparently have not done since the
inception of this litigation in 2004.

MINUTES FORM 90                              Initials of Deputy Clerk __jh_____
CIVIL -- GEN                    1

Case 2:10-cv-03633-ODW-RZ   Document 78   Filed 09/20/10   Page 51 of 125   Page
ID #:6217
Case 2:04-cv-06400-SGL-RZ   Document 294   Filed 03/31/2008   Page 2 of 2

Accordingly, the Court hereby **ORDERS** the parties to devote the next sixty (60) days to engaging in a good faith effort to settle their dispute in the Superman and Superboy litigation before the JAMS Mediator.  At the conclusion of this period, on June 1, 2008, the parties are to file a joint report, outlining the efforts that they have taken in furtherance of settlement and the results of those efforts.

Thereafter, the Court will, if the parties have not settled these cases, set out a briefing schedule and a hearing date on the five issues identified in the parties' February 21, 2008, Stipulation Requesting Status Conference and Briefing Schedule Regarding Certain Trial and Pre-Trial Matters, as well as the following issues left unresolved in this Court's March 26, 2008, Order in the Superman case:  Whether and to what extent do the following fall within the scope of what plaintiffs regained through their termination notices:   1)    Post-termination alterations to pre-termination derivative works; and 2)    Mixed use of trademarks and copyright.

The Court also finds that there is a need for the placement of firm pre-trial and trial dates to both assist the Court in case management and to give predictability to counsel as to when the litigation in this case will come to an end.  The Court therefore sets the following pre-trial and trial dates:

1.    The Court will conduct a pre-trial conference in the Superman case on October 6, 2008, at 11:00 a.m. in Courtroom One.

2.    Thereafter, the court will hold a hearing on any motions in limine in the Superman on October 20, 2008, at 11:00 a.m. in Courtroom One.

3.    Trial in the Superman case is set for November 4, 2008, at 9:30 a.m. in Courtroom One.

As a final matter, the Court reserves issuing an order on the remaining issues brought up in the Court's July 27, 2007, Order in the Superboy case (and to which the parties have provided both supplemental briefing and oral argument), and setting the pre-trial and trial dates in the Superboy matter, if needed, until after the conclusion of the trial in the Superman case.

**IT IS SO ORDERED.**

# EXHIBIT F

WEISSMANN WOLFF BERGMAN
    COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone: (310) 858-7888
Fax: (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James D. Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone: (212) 813-5900
Fax: (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, New York 10516
Telephone: (845) 265-2820
Fax: (845) 265-2819

Attorneys for Defendants and Counterclaimant

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>             Plaintiffs,<br><br>       vs.<br><br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br>             Defendants. | Case No. SA CV 04-8400 SGL (RZx)<br>Case No. SA CV 04-8776 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br><br><br>**NOTICE OF MOTION AND JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENT** |
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>             Plaintiffs,<br><br>       vs.<br><br>TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10,<br>             Defendants. | **DISCOVERY MATTER LOCAL RULE 37**<br><br>Time:  10:00 a.m.<br>Date:   January 26 2009<br>Place:  Courtroom 1<br><br>Discovery Cutoff: November 17, 2006 |
| AND RELATED COUNTERCLAIMS | |

{F0379305.1 }

**060**

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT on January 26. 2009 or as soon thereafter as

3  the matter may be heard in the above-entitled action before the Honorable Stephen

4  G. Larson, United States District Judge, United States District Court for the Central

5  District of California, Eastern Division, 3470 Twelfth Street, Riverside, California,

6  Courtroom 1, defendant and counterclaimant DC Comics, and defendants Warner

7  Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., and

8  Warner Bros. Television Production Inc. (collectively "Defendants"), will and

9  hereby do move the Court to rule on this jointly filed stipulation pursuant to L.R.

10  37-2.

11      This motion is made pursuant to Rules 26 and 37 of the Federal Rules of Civil

12  Procedure and L.R. 37. Defendants contend that a certain withheld document that

13  should have been produced in response to discovery requests served in 2005 is

14  likely to lead to the discovery of admissible evidence, and good cause therefore

15  exists for it. Defendants have met and conferred with Plaintiffs Joanne Siegel and

16  Laura Siegel Larson ("Plaintiffs" or the "Siegels") in writing on June 24, 2008 and

17  July 3, 2008 and by conference with counsel on November 21, 2008, in accordance

18  with Local Rule 37-1 of the Local Rules of the United States District Court for the

19  Central District of California ("L.R."), and the parties were unable to resolve their

20  discovery dispute regarding Plaintiffs' obligation to turn over the withheld

21  document in question which Defendants believe is directly responsive to their

22  outstanding discovery requests served three years ago in this case.

23      This motion is based on this notice of motion; the Joint Stipulation Re:

24  Defendants' Motion to Compel Production of Withheld Document; the declarations

25  submitted by the parties; any supplemental memoranda that may be filed in

26  connection with the Joint Stipulation; the pleadings and papers on file in this action;

27

28

{P0379305.1 }                              1                                    **061**

1   and on such oral argument and other matters as the Court may properly consider at

2   the time of the hearing of this motion.

3   DATED:  December 30, 2008          WEISSMANN WOLFF BERGMAN
                                        COLEMAN GRODIN & EVALL LLP

4                                                -and-

5                                      FROSS ZELNICK LEHRMAN & ZISSU, P.C.

6                                                -and-

7                                      PERKINS LAW OFFICE, P.C.

8

9                                      By: _____

10                                          Michael Bergman

11                                     Attorneys for Defendants and Counterclaimant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..........................................................................

I.   DEFENDANTS' AUTHORITIES ...............................................................

II.   PLAINTIFFS' AUTHORITIES ...........................................................ii

JOINT STIPULATION ...............................................................................

I.   DEFENDANTS' INTRODUCTORY STATEMENT .....................................

II.   PLAINTIFFS' INTRODUCTORY STATEMENT ...................................... 1

III.   DEFENDANTS' CONTENTIONS ..........................................................

    A.   Relevant Background .................................................................

    B.   Argument   ...............................................................................

        1.   Since Plaintiffs Have Threatened To "Hold Defendants Liable" If They Disclose Information About the Withheld Document, Plaintiffs Should Be Compelled to Submit The Withheld Document To The Court For In Camera Review In Deciding This Motion..............................................................

        2.   The Court Should Compel Plaintiffs to Produce the Withheld Document...................................................................

        3.   Plaintiffs Cannot Shield Documents from Discovery by Manipulating the Mediation Process..........................................

IV.   PLAINTIFFS' CONTENTIONS.......................................................... 6

    A.   Relevant Background ............................................................... 6

    B.   Argument............................................................................... 9

        1.   The Privileged Document Is Clearly Protected by the Attorney-Client Privilege, the Attorney Work-Product Doctrine and the Joint Interest Privilege ................................... 9

            a.   Attorney-Client Privilege and Attorney Work-Product Doctrine ................................................................ 10

            b.   Joint -Interest Privilege.......................................... 11

        2.   The Privileged Document Is Additionally Protected by the Express Terms of the Parties' Detailed Confidentiality Agreement ........................................................................ 13

3.    Defendants' Conduct in Bringing This Motion Warrants
Sanctions ................................................................................. 15

V.    DEFENDANTS' CONCLUSION .........................................................

VI.    PLAINTIFFS' CONCLUSION ..................................................... 17

## **TABLE OF AUTHORITIES**

### I.    Defendants' Authorities

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................

Fed. R. Civ. P. 26(e)(1)..............................................................................

Fed. R. Evid. § 408 ...................................................................................

**Treatise**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence .............

### II.    Plaintiff's Authorities

**Cases**

*Clarke v. American Commerce Nat'l Bank,*
974 F.2d 127 (9th Cir. 1992) .................................................................. 10

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985) .................................................................. 12

*Hickman v. Taylor,*
329 U.S. 495 (1947)............................................................................... 11

*Hyundee v. United States,*
355 F.2d 183 (9th Cir. 1965) ................................................................. 11

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129,*
902 F.2d 244 (4th Cir. 1990) ................................................................. 13

064

1  *In re Regents of Univ. of Cal.,*
2  101 F.3d 1386 (Fed. Cir. 1996) ................................................................12
3  *Loustalet v. Refco, Inc.,*
4  154 F.R.D. 243 (C.D. Cal. 1993) ...............................................................12
5  *Reygo Pac. Corp. v. Johnston Pump Co.,*
6  680 F.2d 647 (9th Cir. 1982) ......................................................................16
7  *Sedlacek v. Morgan Whitney Trading Group, Inc.,*
8  795 F.Supp. 329 (C.D. Cal. 1992) ..............................................................12
9  *State of Ohio v. Arthur Andersen & Co.,*
10 570 F.2d 1370 (10th Cir. 1978) ..................................................................12
11 *United States ex. rel. Burroughs v. DeNardi Corp.,*
12 167 F.R.D. 680 (S.D. Cal. 1996) ................................................................11
13 *U.S. v. Under Seal,*
14 902 F.2d 244 (4th Cir. 1990) ......................................................................12
15 *U.S. v. American Tel. & Tel. Co.,*
16 642 F.2d 1285 (D.C. Cir. 1980) ..................................................................12
17 *U.S. v. Schwimmer,*
18 892 F.2d 237 (2d. Cir. 1989) ......................................................................12
19 **Rules**
20 Fed.R.Civ.P. 26 .................................................................................10-11
21 Fed.R.Civ.P. 37 ........................................................................................16
22 F.R.E. 501 .................................................................................................10
23 **Treatises**
24 Restatement (Third) of the Law Governing Lawyers, § 76(1) .........................11-12
25 Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE
26 TRIAL § 11:1960 (2006)..............................................................................16
27 Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE
28 TRIAL § 11:825 (2008)................................................................................11

**JOINT STIPULATION**

I.     **DEFENDANTS' INTRODUCTORY STATEMENT**

Defendant and counterclaimant DC Comics, and defendants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., and Warner Bros. Television Production Inc. (collectively "Defendants") move to compel Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or "the Siegels") to produce a document (the "Withheld Document") that is responsive to Document Request Nos. 59 and 63 of Defendants' First Set of Document Requests served in 2005. Plaintiffs disclosed the existence of the Withheld Document for the first time in the context of the Court-ordered mediation, and asserted that it was protected from any disclosure under a mediation confidentiality agreement executed by the parties the day prior to the Withheld Document's disclosure. In an attempt to shield the document from production Plaintiffs have (a) refused to produce a copy of the Withheld Document, asserting that they are excused from doing so because they first disclosed the document's existence in the context of the parties' mediation; and (b) threatened to "hold defendants liable" for the breach of the mediation confidentiality agreement should they disclose to the Court the existence of the Withheld Document in making this motion. Plaintiffs should not be permitted to manipulate the mediation process to shield documents that they are otherwise obliged to produce.

II.     **PLAINTIFFS' INTRODUCTORY STATEMENT**

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") oppose the motion by Defendants DC Comics, Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc. and Warner Bros. Television Production Inc. ("Defendants") to compel production of a written communication (the "Privileged Document") between Plaintiffs, the executor of the Estate of Joseph Shuster, and their mutual attorney, Marc Toberoff, created shortly before and in anticipation of

1   the parties' settlement mediation, which commenced on May 8, 2008.  The

2   existence of the Privileged Document was disclosed in a May 2, 2008 letter marked

3   "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY" from Mr. Toberoff

4   to Defendants' counsel, Michael Bergman, pursuant to the JAMS Confidentiality

5   Agreement entered into by the parties on or around April 30, 2008 in furtherance of

6   the court-ordered settlement mediation.  Plaintiffs oppose Defendants' attempt to

7   seize this document or to place it before this Court, the trier of fact, on the grounds

8   that:  (1) the Privileged Document is protected by the attorney-client privilege, the

9   attorney work-product doctrine and the joint interest privilege; (2) Plaintiffs were

10  under no obligation to list this privileged post-litigation communication in a

11  privilege log, pursuant to the parties' standing agreement, admitted to by

12  Defendants; (3) Plaintiffs would not have disclosed the Privileged Document except

13  in the context of the parties' settlement mediation and Defendants' execution of the

14  Confidentiality Agreement; (4) the Privileged Document is also squarely protected

15  by the Confidentiality Agreement from being used in any fashion by Defendants in

16  this litigation; and (5) the privileged communication regarding settlement has

17  absolutely no relevance to the remaining accounting claims in this action.

18        Defendants, by their motion and gamesmanship, have willfully breached the

19  Confidentiality Agreement, violated the spirit and objectives of the confidential

20  settlement mediation process, and chilled candid settlement discussions.

21  Defendants' distasteful abuse of the confidential settlement process should not be

22  tolerated by this Court.  Defendants' improper motion should be denied in its

23  entirety and they should be sanctioned for their conduct.

24  **III.   DEFENDANTS' CONTENTIONS**

25        **A.    Relevant Background**

26        On June 21, 2005 Defendants served their First Set of Document Requests on

27  Plaintiffs.  *See* Declaration of Michael Bergman dated November 18, 2008,

28

1   submitted herewith ("Bergman Decl."), ¶ 2.  Responses and objections were served

2   by Plaintiffs on July 21, 2005.

3       These requests included *inter alia*,

4           Request No. 59: All Writings concerning any disposition
            of rights relating to Superman, including but not limited to
5           any solicitation, offer, option, agreement or license.

6
            *Plaintiffs objected to Request No. 59 as follows*:
7

8           Plaintiffs further object to this request on the grounds that
            it is vague, ambiguous, overbroad, burdensome and
9           oppressive.  Plaintiffs further object to this request on the
            grounds that it is duplicative of the above requests.
10          Subject to and without waiving the foregoing objections,
11          Plaintiffs will produce all non privileged documents they
            are able to determine are responsive to this request.
12

13          Document Request No. 63:

14          All Writings concerning the Shuster Representatives,
            including but not limited to any communication or
15          agreements between Plaintiffs and any of the Shuster
            Representatives.
16

17          *Plaintiffs objected to Request No. 63 as follows:*

18          Plaintiffs further object to this request on the grounds that
            it is vague, ambiguous, overbroad, burdensome and
19          oppressive.  Subject to and without waiving the foregoing
            objections, Plaintiffs will produce all non-privileged
20          documents concerning any communication or agreement
            between Plaintiffs and any of the Shuster Representatives
21          relating to "Superman" or "Superboy" that they determine
            are responsive to this request.
22

23

24  *Id.* ¶ 2, Ex. <u>A</u>.

25      On May 2, 2008, counsel for Plaintiffs disclosed the existence of the

26  Withheld Document in a letter to counsel for Defendants *one day* after the parties

27  had entered into a JAMS Confidentiality Agreement as part of the mediation

28  process.  *Id.*  ¶¶ 4-5, Ex. <u>B</u>.  The letter disclosed the existence, and characterized the

1   subject matter of the Withheld Document, and classified this disclosure as being

2   made "pursuant to the executed 'JAMS Confidentiality Agreement' and solely in

3   connection with the upcoming mediation sessions." *Id.*

4        By letter dated June 24, 2008, Defendants requested the immediate

5   production of the Withheld Document as being expressly encompassed by requests

6   Nos. 59 and 63. *Id.* ¶ 6, Ex. C. In the letter, Defendants indicated their intent to

7   seek judicial relief if Plaintiffs failed to voluntarily produce the document, and

8   invited a meet and confer. *Id.* In response, Plaintiffs' counsel stated that Plaintiffs

9   refused to produce the Withheld Document and threatened to hold Defendants liable

10  for breach of the mediation confidentiality agreement and move to enjoin

11  Defendants in the event that they disclosed the existence of the document.[1] *Id.* ¶ 7,

12  Ex. D. On November 21, 2008, the parties personally met and conferred. *Id.* ¶ 8.

13  During this conversation, Plaintiffs' counsel reiterated that he was unwilling to

14  produce the Withheld Document.

15       The Court has currently scheduled two trials in this matter. Bergman Decl. ¶

16  10. Defendants believe that the Withheld Document falls squarely within the scope

17  of discovery requests served in this case to which Plaintiffs have expressly agreed to

18  produce "all documents." *Id.*, Ex. B.

19  **B.    Argument**

20       **1.    Since Plaintiffs Have Threatened To Hold Defendants Liable If
             They Disclose Information About the Withheld Document,
21           Plaintiffs Should Be Compelled to Submit The Withheld
             Document To The Court For In Camera Review In Deciding
22           This Motion**

23

24

25

---

26  [1] These sorts of threats and attempts at intimidation have become commonplace with
    counsel for Plaintiffs, who recently made similar threats against David Eisen and his firm
27  (Arnold & Porter) if they complied with this Court's September 26, 2008 Order
    compelling production of the so-called "escrow documents." Bergman Decl. ¶ 9. As a
28  result of Plaintiff's counsel's threats, there has been no compliance with the Court's Order.
    *Id.*

1        In light of Plaintiffs' threats to hold Defendants liable if they disclose any
2    information about the Withheld Document – including the fact of its existence –
3    Defendants are put in the untenable position of having some knowledge of the
4    contents of a document that they believe was improperly concealed, while being
5    threatened with a lawsuit should they disclose any information about the document
6    while seeking the Court's assistance in compelling its production.  Bergman Decl. ¶
7    7-8, Ex. D.  Despite Defendants' belief that the facts concerning the Withheld
8    Document are not protected by the mediation agreement, *see infra* III(B)(3), in an
9    abundance of caution, Defendants have refrained from disclosing herein any details
10   concerning the Withheld Document and instead, respectfully request that the Court
11   order Plaintiffs to submit the document to the Court for in camera review so that
12   Your Honor may verify that it falls squarely within the scope of discovery requests
13   to which Plaintiffs have committed to produce "all documents."

### 2.    The Court Should Compel Plaintiffs to Produce the Withheld Document

16       The Withheld Document is directly responsive to Document Request Nos. 59
17   and 63 to which Plaintiffs committed to make a full response, and therefore should
18   have been produced pursuant to Fed. R. Civ. P. 26(e)(1) (parties have a duty to
19   seasonably supplement discovery responses to the extent they learn of new
20   responsive facts or evidence).  Although Plaintiffs' prior agreement to produce "all
21   documents" responsive to these requests resolves any issues of relevance, it is worth
22   noting that documents responsive to requests nos. 59 and 63 remain relevant to the
23   issues before this Court in the upcoming accounting trial to determine the scope of
24   Plaintiffs' right to share in the profits from their co-owned share in any copyrights
25   they have recaptured.  *See* Fed. R. Civ. P. 26(b)(1) (authorizing parties to obtain
26   discovery regarding any matter, not privileged, which is relevant to the subject
27   matter involved in the pending action, and all information "reasonably calculated to
28   lead to discovery of admissible evidence.")  The very fact that Plaintiffs chose to

1  characterize the contents of the Withheld Document when it served their interests to
2  do so is further evidence that the Withheld Document contains evidence relevant to
3  this case.

4      In addition to objecting to production of the Withheld Document because it
5  was revealed in the context of the mediation, Plaintiffs' counsel has argued it need
6  not be produced for various other reasons.  Defendants believe that there is no basis
7  for Plaintiffs' refusal to produce the document in question.  However, because
8  Defendants have not been able to see the document -- and are, in any event
9  constrained by Plaintiffs' counsel's threats -- Defendants cannot address those
10  reasons in this motion.

11      **3.    Plaintiffs Cannot Shield Documents from Discovery by
        Manipulating the Mediation Process**
12

13      Plaintiffs were obligated to produce the Withheld Document as it is directly
14  responsive to outstanding document requests.  They cannot avoid their obligation to
15  have done so by improperly hiding the document in question under the cloak of the
16  confidential mediation process. *See generally* Fed. R. Evid. § 408.  Mediation is not
17  a license to withhold evidence that the parties were and are otherwise obliged to
18  produce.  The obligation of the parties to comply with "the liberal rules of discovery
19  embodied in the Federal Rules of Civil Procedure" is paramount and should not be
20  compromised by gamesmanship. *See* 2 Jack B. Weinstein & Margaret A. Berger,
21  Weinstein's Federal Evidence §408.07 (Joseph M. McLaughlin, ed., Matthew
22  Bender 2 ed. 2008) ("a party is not allowed to use Rule 408 as a screen for curtailing
23  an adversary's rights of discovery.")  Accordingly, Plaintiffs should not be
24  permitted to use the mediation process to deprive Defendants of discovery to which
25  they are rightfully entitled.

26  **IV.    PLAINTIFFS' CONTENTIONS**

27      **A.    Relevant Background**

28      As has been admitted repeatedly by Defendants, the parties agreed at the

1    outset of this case that neither side needs to disclose in a privilege log privileged

2    communications created *after* the commencement of this litigation. *See* Declaration

3    of Marc Toberoff in Support of Joint Stipulation Re: Defendants' Motion to Compel

4    Production ("Toberoff Decl."), Ex. A (September 17, 2007 Joint Stipulation, at

5    13:16-18 , 32–34).

6         In anticipation of the parties' court-ordered mediation, the parties negotiated

7    and entered into a JAMS Confidentiality Agreement on or around April 30, 2008.

8    Toberoff Decl., Ex. B ("Confidentiality Agreement"); Ex. C (Court Order of March

9    31, 2008). This agreement substantially strengthened the standard provisions of the

10   "JAMS Confidentiality Agreement" in numerous respects, and was specifically

11   negotiated by the parties' counsel to ensure that the parties could speak freely during

12   settlement discussions, without fear that their disclosures would be hyped or

13   directed against them in litigation if a settlement was not reached. Paragraph 5 of

14   the Confidentiality Agreement provides the following:

15        "All parties, counsel and any other persons attending any Settlement
16        Conference shall treat all such discussions as strictly confidential in every
          respect, including without limitation, the contents or substance of any oral or
17        written statements made at the Settlement Conference, and all other
          substantive aspects of such Settlement Conference ("Confidential Settlement
18        Information"). Without limitation, any document that is marked 'Confidential
          – For Settlement Purposes Only' and is disclosed or produced at or in
19        connection with a Settlement Conference shall be treated as Confidential
          Settlement Information. Confidential Settlement Information shall not be
20        disclosed to anyone other than the parties, their counsel or the mediator *or
          used in any way, shape or form for any purpose, including impeachment, in*
21        *any pending or future proceeding in any court, in whole or in part, directly
          or indirectly*, orally or in writing, except as set forth in paragraph 6 below."
22

23   Toberoff Decl., Ex. B at 2 (emphasis added). Paragraph 6 provides that such

24   documentation will not be considered Confidential Settlement Information *only* if it

25   is:

26        "(a) publicly available, (b) already in possession of the adverse party or their
          counsel prior to its disclosure by a party or their counsel at a Settlement
27        Conference, or (c) is developed independently of any Settlement Conference
          and without reference thereto."

28

1    *Id.* Paragraph 4 of the Confidentiality Agreement further provides that "[t]he

2  privileged character of any information or documents is not altered by the disclosure

3  to the mediator or the disclosure in any Settlement Conference." *Id.*

4         Paragraph 7 expressly limits disclosures to the Court regarding the parties'

5  settlement communications, connotes the parties' sensitivity to abusing any aspect

6  of their settlement discussions in Court, and even specifies the limited language to

7  be used in the "joint report" to the Court outlining the parties' settlement efforts if

8  the parties did not succeed in settling this case. *Id.*

9         On May 2, 2008, Plaintiffs' counsel disclosed the existence of the Privileged

10  Document and briefly described its general nature in a letter to Defendants' counsel

11  marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY."[1]

12  Declaration of Michael Bergman ("Bergman Decl."), Ex. B. The first sentence of

13  the letter expressly states:  "This letter is sent pursuant to the 'JAMS Confidentiality

14  Agreement' and solely in connection with the upcoming settlement mediation

15  sessions." *Id.*

16         Defendants never requested any further information regarding this

17  confidential disclosure until after the settlement mediation, when Defendants'

18  counsel suddenly demanded production of the Privileged Document in a June 24,

19  2008 letter to Plaintiffs' counsel.  Bergman Decl., Ex. C.  Defendants' counsel failed

20  to provide any explanation why the Privileged Document would not be protected by

21  privilege and the Confidentiality Agreement.

22

23    [1] Defendants breach the Confidentiality Agreement by pin-pointing discovery requests that

    allegedly encompass the Privileged Document and forcing Plaintiffs, in explaining the

24    error of Defendants' motion, to disclose more information about the contents of the

    Privileged Document. For purposes of opposing Defendants' motion to compel, Plaintiffs

25    have disclosed to this Court that the Privileged Document consists of a communication

    between Plaintiffs, the Executor of the estate of Superman co-creator Joe Shuster, and

26    Plaintiffs' counsel (who represents both parties) regarding settlement of this action.

    Toberoff Decl. ¶ 9.  However, the document has no significance or relevance to the legal

27    issues remaining for trial – specifically whether the "vertically integrated" transactions

    between DC Comics and Warner Bros. inequitably reduce Plaintiffs' profit share and

28    Defendants' accounting to Plaintiffs for Superman profits.

1    In a responsive letter dated July 3, 2008, Plaintiffs' counsel asserted that the

2  communication between Plaintiffs, the Shuster Estate and their mutual counsel is

3  clearly privileged and additionally shielded from disclosure or use in this lawsuit by

4  the Confidentiality Agreement.  *See* Bergman Decl., Ex. D.  Plaintiffs' counsel

5  additionally reminded Defendants' counsel of the parties' agreement that privileged

6  documents created after the commencement of litigation need not be disclosed.  *Id.*

7  Plaintiffs' counsel further noted that Defendants' claim that the Privileged

8  Document is "relevant, material and discoverable" is frivolous, as the

9  communication regarding settlement has no bearing whatsoever on the legal or

10  factual issues remaining in this case.  *Id.*

11    Defendants did not respond to Plaintiffs' letter for over four months, nor even

12  attempt to counter Plaintiffs' arguments.  *See* Toberoff Decl., ¶ 7.  Finally, on

13  November 18, 2008, Defendants' counsel called Plaintiffs' counsel to set up a

14  perfunctory "meet-and-confer," which was held on November 21, 2008, but failed to

15  resolve this matter as Defendants were intent on placing it before the Court via a

16  motion to compel.  *See* Toberoff Decl., ¶ 8.

17    **B.    Argument**

18          **1.    The Privileged Document Is Clearly Protected by the
                  Attorney-Client Privilege, the Attorney Work-Product
19                  Doctrine and the Joint Interest Privilege**

20    Tellingly, Defendants' motion fails to even mention Plaintiffs' repeated

21  assertion in their July 3, 2008 letter to Defendants, and in the "meet and confer"

22  session preceding Defendants' motion, that the Privileged Document – a

23  communication between Plaintiffs, the Shuster Estate and their mutual counsel, Mr.

24  Toberoff, concerning a pending settlement mediation – is protected by the attorney-

25  client privilege, the joint interest privilege and the attorney work-product doctrine.

26  Defendants studiously shy away from Plaintiffs' assertion of privilege to buttress

27  their disingenuous "straw man" that Plaintiffs seek to shield a discoverable

28  document via disclosure in a settlement mediation.

1    The Privileged Document was made shortly before and for purposes of the

2  settlement mediation.  Pursuant to the parties' longstanding discovery agreement,

3  acknowledged by Defendants, Plaintiffs had absolutely no obligation to disclose this

4  privileged post-litigation communication on a privilege log, or otherwise, as it was

5  created after the commencement of this litigation.  Toberoff Decl., Ex. A at 13:16-

6  18.  Thus, Plaintiffs did not waive the privilege by not previously disclosing the

7  document on a privilege log or in a supplemental production.  In any event,

8  disclosure of the Privileged Document in a privilege log (in the basic form approved

9  in Magistrate Zarefsky's Order dated August 18, 2006) would reveal less

10  information regarding the Privileged Document (i.e., parties, date, *general* subject,

11  privilege) than that already disclosed to Defendants.

12    Finally, under paragraph 4 of the parties' Confidentiality Agreement, the

13  privileged character of any information or documents is not waived by its disclosure

14  in any Settlement Conference.  *See* Toberoff Decl., Ex. B.

15         a.    Attorney-Client Privilege and Attorney Work-Product
                 Doctrine

16

17    The attorney-client privilege protects confidential attorney-client

   communications from disclosure.  *See* F.R.E. 501 (applying common law of
18
   privilege to federal court proceedings); *Clarke v. American Commerce Nat'l Bank*,
19
   974 F.2d 127, 129 (9th Cir. 1992).  The privilege encompasses documents that
20
   reveal, involves or implicates legal advice, the litigation strategy or motives of a
21
   party. *Id.* at 129.
22
      The Privileged Document is clearly protected by the attorney-client privilege.
23
   The document is a confidential communication between the Siegels, the Shusters
24
   and their mutual counsel regarding settlement of the present litigation.
25
      Likewise, the attorney work-product doctrine protects documents that are
26
   prepared for or in anticipation of litigation.  *See* F.R.C.P. 26(b)(3).  The doctrine
27
   shields materials that "reveal an attorney's strategy [or] evaluation of strengths and
28

1  weaknesses." Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.

2  PROC. BEFORE TRIAL § 11:825 (2008), *citing Hickman v. Taylor*, 329 U.S. 495, 511

3  (1947). The doctrine extends both to materials prepared by the party itself and to

4  materials prepared by the party's attorney. F.R.C.P. 26(b)(3)(A).

5      As the Privileged Document reflects Mr. Toberoff's and his clients'

6  settlement strategy, it is also clearly shielded by the attorney work-product doctrine.

7  Mr. Toberoff drafted the communication for and in anticipation of the parties'

8  Court-ordered settlement mediation, just days before the mediation, after detailed

9  communication between Mr. Toberoff and his clients, the Plaintiffs and the Shuster

10  Estate. Toberoff Decl., ¶ 9. The Privileged Document naturally entails both legal

11  strategy and counsel's evaluation of the relative strengths and weaknesses of this

12  case. This is precisely the sort of privileged communication and work-product that

13  is to be protected by the attorney work-product doctrine.

14              b.    Joint-Interest Privilege

15      Persons who share a common interest in litigation or anticipated litigation

16  may communicate confidentially with their attorney(s), and with each other,

17  regarding the litigation, and their communications will remain protected against

18  third parties. *See Hyundee v. United States*, 355 F.2d 183, 184–85 (9th Cir. 1965)

19  (applying the common interest doctrine to statements concerning a matter of

20  common concern, even though co-defendants generally had a significant conflict of

21  interest); *United States ex. rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685

22  (S.D. Cal. 1996) ("[W]hether the jointly interested persons are defendants or

23  plaintiffs, and whether the litigation or potential litigation is civil or criminal, the

24  rationale for the privilege is clear: Persons who share a common interest in litigation

25  should be able to communicate confidentially with their respective attorneys, and

26  with each other, to more effectively prosecute or defend their claims.").

27      The bedrock principle embodied in the joint interest privilege has been widely

28  accepted. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers, § 76(1)

1  (two persons with separate attorneys and a common interest in a litigated or non-

2  litigated matter can exchange information about the matter themselves or through

3  their attorneys, and the communications will remain privileged against third parties);

4  *U.S. v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990)(collecting cases) ("[T]he

5  rationale for the joint defense rule remains unchanged: persons who share a common

6  interest in litigation should be able to communicate with their respective attorneys

7  and with each other…"); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d Cir.

8  1985) (recognizing that "communications to an attorney to establish a common

9  defense strategy are privileged even though the attorney represents another client

10  with some adverse interests"); *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285,

11  1299 (D.C. Cir. 1980) (Common interest exception applies to attorney work product

12  doctrine); *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989); *In re Regents of*

13  *Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).

14       Here, the joint interest privilege clearly shields the Privileged Document from

15  production.  It constitutes and reflects communications by the Plaintiffs and the

16  Shuster Estate with their mutual counsel, as both share a common interest in the

17  litigation with Defendants over Plaintiffs' recaptured *Superman* copyrights and the

18  Shuster Estate's prospective interest in such copyrights.  That the Shuster Estate is

19  not a party to this litigation does not alter the privileged status of the

20  communication, as the joint interest privilege is not limited to co-parties to a

21  litigation.  *See Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993)

22  (recognizing that the common interest doctrine is not limited to co-operating co-

23  parties); *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F.Supp. 329, 331

24  (C.D. Cal. 1992) ("Whether an action is ongoing or completed, whether the jointly

25  interested persons are defendants or plaintiffs, and whether the litigation or potential

26  litigation is civil or criminal, the rationale for the joint defense rule remains

27  unchanged: persons who share a common interest in litigation should be able to

28  communicate with their respective attorneys and with each other to more effectively

1 | prosecute or defend their claims.") (quoting *In re Grand Jury Subpoenas, 89-3 and*
2 | *89-4, John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990)).

3 |     So that Defendants could have a better understanding of Plaintiffs' settlement
4 | objectives, Plaintiffs divulged the existence and basic nature of this privileged
5 | communication to Defendants in connection with the parties' settlement mediation,
6 | without waiver of the communication's privileged status and with the expectation
7 | that its confidentiality would be strictly respected pursuant to the parties'
8 | Confidentiality Agreement.

9 |     **2.    The Privileged Document Is Additionally Protected by the**
10 | **Express Terms of the Parties' Detailed Confidentiality Agreement**

11 |     As the Privileged Document was made after the commencement of this
12 | litigation (for purposes of and shortly before the settlement mediation), the
13 | Privileged Document need never have been disclosed by Plaintiffs pursuant to the
14 | parties' standing discovery agreement. Toberoff Decl., Ex. A. However, Plaintiffs
15 | disclosed the existence of the Privileged Document in furtherance of the settlement
16 | mediation and in good faith reliance on the parties' Confidentiality Agreement,
17 | wherein Defendants had agreed to the strict confidentiality of all disclosures made in
18 | connection with the court-ordered settlement mediation. *See* Bergman Decl., Ex. B;
19 | Toberoff Decl., Ex. B at 2. Thus, the nature and existence of the document became
20 | "Confidential Settlement Information" pursuant to the terms of paragraph 5 of the
21 | Confidentiality Agreement. *Id.* Accordingly, it "shall not be disclosed to anyone
22 | other than the parties, their counsel or the mediator or used in any way, shape or
23 | form for any purpose, including impeachment, in any pending or future proceeding
24 | in any court, in whole or in part, directly or indirectly, orally or in writing." *Id.*

25 |     The Privileged Document is dated April 30, 2008, just 8 days before the
26 | scheduled Court-ordered settlement mediation on May 8, 2008, and, as discussed
27 | with Defendants, the communication was made in anticipation and in furtherance of
28 | the settlement mediation. Toberoff Decl., ¶ 9. But for the parties' Confidentiality

1  Agreement, Plaintiffs would not have disclosed (nor would they have been obligated

2  to disclose) this privileged communication.

3      Plaintiffs could not have made it clearer to Defendants that they were

4  disclosing the existence and nature of this privileged communication solely for

5  purposes of the parties' settlement negotiations and in reliance on the parties'

6  Confidentiality Agreement. Paragraph 5 of the Confidentiality Agreement states:

7  "Without limitation, any document that is marked 'Confidential – For Settlement

8  Purposes Only' and is disclosed or produced at or in connection with a Settlement

9  Conference shall be treated as Confidential Settlement Information." Toberoff

10  Decl., Ex. B. At the top of Plaintiffs' May 2, 2008 disclosure appears the phrase, in

11  bold and underlined: "**CONFIDENTIAL – FOR SETTLEMENT PURPOSES**

12  **ONLY**." Bergman Decl., Ex. B. Moreover, the letter starts by stating: "This letter

13  is sent pursuant to the 'JAMS Confidentiality Agreement' and solely in connection

14  with the upcoming settlement mediation sessions." *Id.*

15      For reasons Plaintiffs cannot quite fathom, Defendants now attempt to garner

16  some advantage, foment some sort of bias, or simply "muddy the waters" by

17  requesting *in camera* review and thereby place Plaintiffs' Privileged Document

18  before the Court. This appears to be an objective of Defendants' motion and

19  gamesmanship in and of itself. Defendants thinly argue that such a review is

20  necessary for the Court to decide whether the Privileged Document falls within the

21  scope of their discovery requests. Firstly, Defendants have provided no reason why

22  the subject communication between Plaintiffs, the Shuster Estate and their counsel

23  concerning settlement is not privileged, and no justification whatsoever for such *in*

24  *camera* review. Secondly, even if Defendants' motion were not so frivolous, it is

25  inappropriate for them to demand such an *in camera* review now that the Court has

26  ruled that it will serve as the ultimate trier of fact in this case. Respectfully, in the

27  unlikely event the Court feels that an *in camera* review is justified and necessary,

28  such should properly be referred to a discovery magistrate.

1    Not only have Defendants failed to counter or even address the privileged
2    status of the attorney-client communication in question, they also have not and
3    cannot explain why the existence of the Privileged Document is not additionally
4    shielded by the parties' Confidentiality Agreement.  Defendants do not even attempt
5    to identify which of the three exceptions expressly set forth in ¶6 of the JAMS
6    agreement might apply to this situation, as clearly none do.  Toberoff Decl., Ex. B at
7    2.  The Privileged Document or even its existence is not "(a) publicly available
8    knowledge;" nor was it "(b) already in the possession of the [Defendants]… prior to
9    its disclosure at a Settlement Conference;" nor was it "(c) [] developed
10   independently of any Settlement Conference and without reference thereto."  *Id.*

11       By express agreement of the parties, the Privileged Document, and even its
12   existence and subject matter, constitutes Confidential Settlement Information, which
13   is confidential to all except the parties and the mediator.  Indeed, the whole purpose
14   of the Confidentiality Agreement was to enable the parties to comfortably make
15   disclosures in the course of mediation that they would not otherwise make,
16   including privileged or confidential information that, when disclosed, might further
17   settlement.  Plaintiffs relied on the Confidentiality Agreement and the sanctity of the
18   settlement negotiations when they made their disclosure.

19       Production of the Privileged Document – even for an *in camera* review –
20   would obviously subvert the Confidentiality Agreement and reward Defendants'
21   shameless gamesmanship and manipulation of the settlement process.

22
23   **3.    Defendants' Conduct in Bringing This Motion Warrants Sanctions**

24       As discussed above, Defendants, in bringing this unjustified motion, have
25   willfully breached the parties' JAMS Confidentiality Agreement and abused the
26   spirit and objectives of the Court-ordered settlement mediation process.
27   Defendants' motion improperly keeps from the Court and entirely fails to address
28   Plaintiffs' repeated assertion that the subject communication between Plaintiffs, the

1    Estate of Joseph Shuster and their mutual counsel regarding settlement is obviously

2    privileged.  Sanctioning Defendants for such a frivolous motion is appropriate.  *See*

3    F.R.C.P. 37(b); *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th

4    Cir. 1982) (absent "substantial justification" for a party's positions, sanctions are

5    appropriate).

6        The Federal Rules of Civil Procedure provide that the party who prevails on a

7    motion to compel is entitled to its expenses, including reasonable attorneys' fees,

8    unless the losing party was substantially justified in making or opposing the motion

9    (or other circumstances make such an award unjust).  *See* F.R.C.P. 37(a)(5);

10   Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE

11   TRIAL (2006) § 11:1960 ("If a motion to compel responses is filed, the court usually

12   awards expenses, including attorney fees, against the losing party..."); *State of Ohio*

13   *v. Arthur Andersen & Co.,* 570 F.2d 1370, 1375 (10th Cir. 1978) (imposing

14   sanctions of "reasonable expenses to secure an order compelling production").  This

15   Court has also given fair warning that any further discovery abuse will be subject to

16   sanctions.  *See* Toberoff Decl., Ex. D, at p. 7.

17       Moreover, Defendants' bringing of this wasteful motion, after more than four

18   months of silence on the subject, in the midst of active preparations for the January

19   20, 2009 trial (and timed so as to require Defendants to submit an opposition on the

20   very same day as the parties' L.R. 16 meeting of counsel) is obviously intended to

21   disrupt Plaintiffs' preparations during the crucial pre-trial period and to force

22   Plaintiffs to expend considerable time, fees and costs in opposing Defendants'

23   frivolous motion.  Finally, Defendants' crude attempt to obtain privileged

24   information, the very existence of which was explicitly disclosed for settlement

25   purposes only, will have an obvious chilling effect on any future disclosures during

26   settlement discussions and thus, on any prospects of settlement themselves.

27       Defendants blithely continue to bring such frivolous motions in this case  and

28   to flout the rules without any hesitation or fear of sanctions.  Plaintiffs have not been

1 | recompensed for one penny of what amounts to thousands of dollars in unnecessary

2 | legal expense due to Defendants' gamesmanship. Plaintiffs therefore respectfully

3 | request the Court to enter an order granting sanctions in the amount of $5,350.

4 | Toberoff Decl., ¶ 10.

5 | **V.     DEFENDANTS' CONCLUSION**

6 | For the reasons set forth herein, Defendants respectfully request that their

7 | motion to compel Plaintiffs to produce the Withheld Document be granted.

8 | **VI.    PLAINTIFFS' CONCLUSION**

9 | For the foregoing reasons, Plaintiffs respectfully request that Defendants'

10 | motion be denied in its entirety and that the Court grant Plaintiffs sanctions in the

11 | amount of $5,350.

12 | Respectfully submitted,

13 | DATED:  December _11_, 2008          WEISSMANN WOLFF BERGMAN

14 |                                                              COLEMAN GRODIN & EVALL LLP

15 |                                                    -and-

16 |                                        FROSS ZELNICK LEHRMAN & ZISSU, P.C.

17 |                                                    -and-

18 |                                        PERKINS LAW OFFICE, P.C.

19 |

20 | By: _____
                  Michael Bergman

21 |

22 | DATED:  December _11_, 2008      Attorneys for Defendants and Counterclaimant

                                                             TOBEROFF & ASSOCIATES, P.C.

23 |

24 | By: _____

25 |                  Marc Toberoff

26 |                                        Attorneys for Plaintiffs/Counterclaim-Defendants

27 |

28 |

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                         Date:  January 14, 2009

Title:      JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
            WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
            corporation; DC COMICS INC., a corporation; and DOES 1-10
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                              Theresa Lanza
          Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

Marc Toberoff                            Michael Bergman

PROCEEDINGS:      **ORDER GRANTING PLAINTIFFS' JOINT STIPULATION RE MOTION TO
                  COMPEL (Docket No. 390);**

                  **ORDER DENYING DEFENDANTS' MOTION TO COMPEL (Docket No. 394)**

        For the reasons set forth on the record, defendants' motion to compel production of withheld
document is **DENIED**.

        Plaintiffs' motion to compel defendants' supplementation of discovery is **GRANTED** to the
extent it is not moot.  Towards that end, defendants are hereby **ORDERED** to file with the Court by
January 21, 2009, a declaration re-affirming that, as of January 14, 2009, they have supplemented
all the discoverable material (<u>see</u> Fed. R. Civ. P. 26(b)(1) (noting that "[r]elevant information [for
purposes of discovery] need not be admissible at the trial" but also includes material that "appears
reasonably calculated to lead to the discovery of admissible evidence") responsive to the
document production requests (not the exemplars provided by plaintiffs in their motion, or in their
correspondence with defense counsel, of types of documents that would be responsive) identified
by plaintiffs' in their motion to compel (<u>see</u> Joint Stipulation Re: Pls' Mot. Compel Defs'
Supplementation of Discovery at pg. 5, lines 22-27), and if they have not, that they have so
supplemented their responses to said document production requests on or by January 21, 2009.
All documents produced by defendants after January 14, 2009, shall not be admissible at the
February 3, 2009, trial if offered by defendants.

        **IT IS SO ORDERED.**

MINUTES FORM 90                          Page 1                    Initials of Deputy Clerk;  jh
CIVIL -- GEN                                                       Time:  /25

084

# EXHIBIT H

# Ip worldwide

As of October 3, 2002

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

RECEIVED

OCT 2 ?

Marc Toberoff

Re: "*Superman*"

Dear Joanne and Laura:

This letter shall confirm the agreement and understanding between you ("Owner") and us ("IPW") regarding Owner's retention of IPW to exclusively represent Owner with respect to any and all of Owner's rights, claims, title and interest in and to the comic book property commonly known as "*Superman*," including, without limitation, all characters and copyright interests therein (jointly and individually, "Rights"):

1.    In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.

2.    IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. IPW will also provide Marc Toberoff's legal services with respect to all legal contracts in connection with all of the above. IPW will be solely responsible for Marc Toberoff's legal fees in connection herewith, if any.

3.    The terms of any and all agreements regarding the Rights will require Owner's express written approval.

4.    IPW will pay its own costs and expenses in connection with this Agreement, including without limitation, office overhead, photocopying, messenger fees, postage and overnight mail, long distance telephone and fax charges, travel and accommodation costs and any legal fees to Marc Toberoff, and such costs will not be recoupable from Proceeds hereunder. Notwithstanding this, in the event IPW advances or loans Owner moneys to pay costs in furtherance of the Rights (e.g., US Copyright Office fees and audit fees, if any) the terms and repayment of any such advances or loans will be set forth in a separate written agreement between the parties.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3335
E-mail: MToberoff@IPWW.biz

IPW 00001

086



Page 2
Retainer Agreement/ *Superman*
As of October 3, 2002

5.  The term ("Term") of this Agreement is eighteen (18) months from the date this Agreement is executed by all parties. In the event the parties are actively negotiating an agreement regarding the Rights when the Term is due to expire, the Term will automatically be extended for three (3) additional months. In the event during the Term either Marc Toberoff or Ariel Emanuel are unable to render services in connection with this Agreement for a continuous period greater than three (3) months due to death, incapacity or otherwise, Owner may in its discretion terminate this Agreement prior to the expiration of the Term.

6.  In consideration of the services to be furnished by IPW hereunder you hereby agree to pay and authorize IPW to retain out of all gross compensation, moneys or other consideration that may be payable or recovered for or by reason of Owner's Rights whether by negotiation, dispute resolution, settlement or otherwise ("Proceeds"): a fee ("Fee") of ten percent (10%) of any and all gross compensation payable including , without limitation, option, quitclaim or licensing fees, purchase price, settlement amounts, advances, fixed and/or contingent compensation. In computing IPW's fee no deduction will be made from gross Proceeds, including, without limitation, no deduction for Owner's taxes, expenses and/or moneys payable to any and all third parties if any. IPW's Fee shall apply to any and all agreements regarding the Rights made during the Term or the material terms of which are substantially negotiated during the Term and/or to any agreements between Owner and an investor or buyer introduced by IPW to Owner during the Term. For the avoidance of doubt, in the event *"Superman"* and the Rights are sold, settled, licensed or otherwise exploited in conjunction with other characters or rights owned or controlled by Owner (e.g., *"Superboy"*); it is understood and agreed that IPW will not "double dip" and the above 10% IPW Fee will apply to gross Proceeds from any said joined transaction(s).

Notwithstanding the above, for purposes of computing IPW's Fee, Proceeds will not include Joanne Siegel's annual "pension" payments which commenced in 1996 (currently $ 126,148 annually, plus cost of living increases or bonuses, if any) and her full medical and dental coverage provided by AOL Time Warner which consideration and interests pre-date and are wholly separate from her copyright termination interests.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

IPW 00002
087



Oct-21-02   08:18pm   From-                                     927 7227     P.04
T-206   P.006/013   F-796

Page 3
Retainer Agreement/ *Superman*
As of October 3, 2002

7.     Owner hereby authorizes IPW to collect and receive all Proceeds due and payable; to endorse and deposit any checks or moneys payable into a client trust account on Owner's behalf; to deduct IPW's fee as set forth above; whereupon IPW will promptly pay the remainder directly to Owner as directed by Owner in writing. It is understood that the Rights may involve multiple rights and claims against multiple parties and accordingly IPW's above fee shall be applicable to each Rights payment or recovery from any party and same is not contingent on any other Rights payment.

8.     Owner hereby warrants and represents that Owner will not transfer, assign, license or in any manner encumber the Rights during the Term or extended Term other than through or as a result of IPW's exclusive representation hereunder, with the exception of by will, probate or pursuant to other Court order.

9.     All notices and/or payments hereunder shall be made to the parties at the addresses set forth on page 1 hereof unless and until either party gives the other prior written notice of a change of address.

10.     The parties understand and acknowledge that the scope of this Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services and advancing of such expenses, if requested and desired by Owner, will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and Owner.

11.     This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by both parties. The parties acknowledge that they fully understand the terms and conditions of this Agreement and have agreed to such terms and conditions after negotiation, mature thought and deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. The terms of this Agreement shall be construed pursuant to their fair meaning, not for or against either party. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals. This Agreement shall be governed by the

IPW 00003

088



Page 4
Retainer Agreement/ *Superman*
As of October 3, 2002


Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased and excited to work with you and will do our very best to handle this matter in a dedicated manner and to achieve results satisfactory to you.

Yours sincerely,


Marc Toberoff
Authorized signatory

Ariel Emanuel
Authorized signatory

Agreed, Understood and Accepted:


Joanne Siegel                    Date: *October 23rd 2002*


Laura Siegel Larson              Date: *October 23, 2002*

IPW 00004

089

# EXHIBIT I

## JOINT VENTURE AGREEMENT

AGREEMENT made as of November 23, 2001by and between Pacific Pictures Corporation ("PPC") with offices at 23852 Pacific Coast Highway, Suite 555, Malibu, CA 90265 ; tel. (310) 589-5151; fax: (310) 589-5152 and Jean A. Peavy and her son Mark Warren Peary (f/k/a Mark Warren Peavy) (individually and collectively, "Claimants") located at 51 Camino Cabo, Sante Fe, New Mexico 87508; tel. / fax: (505) 466-4551, regarding the formation of a joint venture for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights").

1.      The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, such as, without limitation, "Superman," "Clark Kent," "Lois Lane," "Jimmy Olsen," "Lex Luther," "Lana Lang," "Mr. Mxyztplk," "Superboy," "Supergirl," "The Daily Planet," "Krypton," "Kryptonite," and "Smallville."

2.      In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304 (c) of the U.S. Copyright Law (Title 17, U.S.C.) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. In consideration for PPC'S contributions to the Venture and the mutual covenants contained herein Claimants hereby transfer and assign to the Venture their rights, title and interests in the Rights. The name of the Venture shall be the "Joe Shuster Venture." The Venture's office address shall be the California address set forth above.

3.      PPC will pay any and all costs and expenses of the Venture, including the legal fees and costs of setting up Joe Shuster's estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the enforcement and/or defense of the Rights and the Venture. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying,

Initials: _____

PPC 00005    091

Page 2
Joint Venture Agreement / Joe Shuster
11/23/01

postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC'S share of Proceeds set forth in paragraph 5 below.

4.      The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Claimants and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.      Any and all moneys and proceeds received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Claimants and fifty percent (50%) to PPC. The parties will use all reasonable efforts to have Joe Shuster's estate/administrator and third party payors, if any, directly pay to the Claimants and PPC their respective fifty percent (50%) share of Proceeds. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Claimants of a reasonable accounting and receipts for said expenses.

6.      All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.      The Venture and/or the Estate of Joe Shuster (to be established hereunder) will retain Marc Toberoff, Esq. to render legal services in connection with the Rights and the Venture, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights.

Initials

Page 3
Joint Venture Agreement / Joe Shuster
11/23/01

8.    The term ("Term") of the Venture shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term and the winding-up of the Venture or in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by the Claimants and fifty percent (50%) by PPC as tenants in common, and Claimants and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination of the Venture.

9.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (c) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Claimants.

10.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement, including without limitation an irrevocable letter of authority instructing the administrator of Joe Shuster's Estate to divide and disburse all Proceeds from the Rights as set forth in paragraph 5 above. When required hereunder, consent shall not be unreasonably withheld by any party regarding the business of the Venture. The parties hereby approve Michael Catron for appointment as the administrator of Joe Shuster's Estate, once it is established.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. To the extent any provision of this Agreement is found invalid, said provision shall be stricken

Page 4
Joint Venture Agreement / Joe Shuster
11/23/01

and shall not affect the validity of the remaining provisions hereof. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

   11.   This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

Agreed, understood and accepted:

Pacific Pictures Corporation


_____          Date: _Nov. 28, 2001_
By: Marc Toberoff, President


_____          Date: _Nov. 28, 2001_
Jean A. Peavy


_____          Date: _Nov. 28, 2001_
Mark Warren Peary
(f/k/a Mark Warren Peavy)

PPC 00008

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

1.    Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

2.    In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

3.    PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _MT_, _MWP_

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4.    The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.    Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peary and Warren Peary, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6.    All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.    The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _____, _____

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

    8.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

    9.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

    10.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

    11.    This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

    If the terms and conditions of this agreement are acceptable to you, please

/ / /
/ / /
/ / /
/ / /

Initials: _____, _____

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

Date: 10-30-03

By: Mark Warren Peary, Executor
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my interests are concerned.

Date: 10-30-03

Jean A. Peavy

PPC 00004

**098**

# EXHIBIT J

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
ALEXANDER M. MERINO

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

November 15, 2006

Via Facsimile

Adam Hagen, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212

Re:     *Joanne Siegel & Laura Siegel Larson v. Time Warner, Inc. et al.*
        USDC Central District of CA, Case No. 04-08400 SGL (RZx)
        *Joanne Siegel & Laura Siegel Larson v. Time Warner, Inc. et al.*
        USDC Central District of CA, Case No. 04-08776 SGL (RZx)

Dear Adam:

Enclosed please find IPW, LLC's production of documents, numbered IPW 00001-00016.  In addition, enclosed please find Pacific Pictures Corporation's production of documents, numbered PPC 00001-00009.

Very truly yours,

Alexander M. Merino

cc:     Patrick T. Perkins, Esq.
        James D. Weinberger, Esq.

**100**

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
ALEXANDER M. NURINO

*ALSO ADMITTED IN NEW YORK

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Adam Hagen, Esq., James D. Weinberger, Esq., Patrick T. Perkins, Esq. | FAX: 310-550-7191, 212-813-5901, 845-265-2819 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 27 |
| DATE : 11/15/06 | RE: Superman (Case Nos. 04-CV-8400 SGL (RZx) and 04-CV-8776 SGL (RZx)) |

COMMENTS:

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

# Group Send Report

```
                                    Page       : 001
                                    Date & Time: Nov-15-06  10:47pm
                                    Line 1     :
                                    Machine ID :
```

Job number            :   045

Date                  :   Nov-15 10:32pm

Number of pages       :   027

Start time            :   Nov-15 10:32pm

End time              :   Nov-15 10:47pm

Successful nbrs.

    Fax numbers

      ☎13105507191
      ☎12128135901
      ☎18452652819

Unsuccessful nbrs.                                          Pages sent

# Ip worldwide

As of October 3, 2002

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

RECEIVED

OCT 2 4

Marc Toberoff

Re: "Superman"

Dear Joanne and Laura:

This letter shall confirm the agreement and understanding between you ("Owner") and us ("IPW") regarding Owner's retention of IPW to exclusively represent Owner with respect to any and all of Owner's rights, claims, title and interest in and to the comic book property commonly known as "Superman," including, without limitation, all characters and copyright interests therein (jointly and individually, "Rights"):

1.    In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.

2.    IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. IPW will also provide Marc Toberoff's legal services with respect to all legal contracts in connection with all of the above. IPW will be solely responsible for Marc Toberoff's legal fees in connection herewith, if any.

3.    The terms of any and all agreements regarding the Rights will require Owner's express written approval.

4.    IPW will pay its own costs and expenses in connection with this Agreement, including without limitation, office overhead, photocopying, messenger fees, postage and overnight mail, long distance telephone and fax charges, travel and accommodation costs and any legal fees to Marc Toberoff, and such costs will not be recoupable from Proceeds hereunder. Notwithstanding this, in the event IPW advances or loans Owner moneys to pay costs in furtherance of the Rights (e.g., US Copyright Office fees and audit fees, if any) the terms and repayment of any such advances or loans will be set forth in a separate written agreement between the parties.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3335
E-mail: MToberoff@IPWW.biz

IPW 00001



Oct-21-02   08:18pm   From-

**Ip**worldwide

Page 2
Retainer Agreement/ *Superman*
As of October 3, 2002

5.      The term ("Term") of this Agreement is eighteen (18) months from the
date this Agreement is executed by all parties. In the event the parties are actively
negotiating an agreement regarding the Rights when the Term is due to expire, the Term
will automatically be extended for three (3) additional months. In the event during the
Term either Marc Toberoff or Ariel Emanuel are unable to render services in
connection with this Agreement for a continuous period greater than three (3) months due
to death, incapacity or otherwise, Owner may in its discretion terminate this Agreement
prior to the expiration of the Term.

6.      In consideration of the services to be furnished by IPW hereunder you
hereby agree to pay and authorize IPW to retain out of all gross compensation, moneys or
other consideration that may be payable or recovered for or by reason of Owner's Rights
whether by negotiation, dispute resolution, settlement or otherwise ("Proceeds"): a fee
("Fee") of ten percent (10%) of any and all gross compensation payable including ,
without limitation, option, quitclaim or licensing fees, purchase price, settlement
amounts, advances, fixed and/or contingent compensation. In computing IPW's fee no
deduction will be made from gross Proceeds, including, without limitation, no deduction
for Owner's taxes, expenses and/or moneys payable to any and all third parties if any.
IPW's Fee shall apply to any and all agreements regarding the Rights made during the
Term or the material terms of which are substantially negotiated during the Term and/or
to any agreements between Owner and an investor or buyer introduced by IPW to Owner
during the Term. For the avoidance of doubt, in the event *"Superman"* and the Rights are
sold, settled, licensed or otherwise exploited in conjunction with other characters or rights
owned or controlled by Owner (e.g., *"Superboy"*); it is understood and agreed that IPW
will not "double dip" and the above 10% IPW Fee will apply to gross Proceeds from any
said joined transaction(s).

Notwithstanding the above, for purposes of computing IPW's Fee,
Proceeds will not include Joanne Siegel's annual "pension" payments which commenced
in 1996 (currently $ 126,148 annually, plus cost of living increases or bonuses, if any)
and her full medical and dental coverage provided by AOL Time Warner which
consideration and interests pre-date and are wholly separate from her copyright
termination interests.

///
///
///
///
///
///



Page 3
Retainer Agreement/ *Superman*
As of October 3, 2002

7.    Owner hereby authorizes IPW to collect and receive all Proceeds due and payable; to endorse and deposit any checks or moneys payable into a client trust account on Owner's behalf; to deduct IPW's fee as set forth above; whereupon IPW will promptly pay the remainder directly to Owner as directed by Owner in writing. It is understood that the Rights may involve multiple rights and claims against multiple parties and accordingly IPW's above fee shall be applicable to each Rights payment or recovery from any party and same is not contingent on any other Rights payment.

8.    Owner hereby warrants and represents that Owner will not transfer, assign, license or in any manner encumber the Rights during the Term or extended Term other than through or as a result of IPW's exclusive representation hereunder, with the exception of by will, probate or pursuant to other Court order.

9.    All notices and/or payments hereunder shall be made to the parties at the addresses set forth on page 1 hereof unless and until either party gives the other prior written notice of a change of address.

10.    The parties understand and acknowledge that the scope of this Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services and advancing of such expenses, if requested and desired by Owner, will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and Owner.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by both parties. The parties acknowledge that they fully understand the terms and conditions of this Agreement and have agreed to such terms and conditions after negotiation, mature thought and deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. The terms of this Agreement shall be construed pursuant to their fair meaning, not for or against either party. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals. This Agreement shall be governed by the



Page 4
Retainer Agreement/ *Superman*
As of October 3, 2002

Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased and excited to work with you and will do our very best to handle this matter in a dedicated manner and to achieve results satisfactory to you.

Yours sincerely,

Marc Toberoff
Authorized signatory

Ariel Emanuel
Authorized signatory

Agreed, Understood and Accepted:

Joanne Siegel

Date: October 23rd-2002

Laura Siegel Larson

Date: October 23, 2002

IPW 00004

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

1.    Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

2.    In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

3.    PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _AT_, _MWP_

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4.      The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.      Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peavy and Warren Peavy, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6.      All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.      The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _____, _____

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

8.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

9.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

10.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

11.    This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

If the terms and conditions of this agreement are acceptable to you, please

/ / /
/ / /
/ / /
/ / /

Initials: _____, _____

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

By: Mark Warren Peary, Executor                    Date: 10-30-03
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my
interests are concerned.

Jean A. Peavy                    Date: 10-30-03

PPC 00004

110

## JOINT VENTURE AGREEMENT

AGREEMENT made as of November 23, 2001 by and between Pacific Pictures Corporation ("PPC") with offices at 23852 Pacific Coast Highway, Suite 555, Malibu, CA 90265 ; tel. (310) 589-5151; fax: (310) 589-5152 and Jean A. Peavy and her son Mark Warren Peary (f/k/a Mark Warren Peavy) (individually and collectively, "Claimants") located at 51 Camino Cabo, Sante Fe, New Mexico 87508; tel. / fax: (505) 466-4551, regarding the formation of a joint venture for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights").

     1.    The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, such as, without limitation, "Superman," "Clark Kent," "Lois Lane," "Jimmy Olsen," "Lex Luther," "Lana Lang," "Mr. Mxyztplk," "Superboy," "Supergirl," "The Daily Planet," "Krypton," "Kryptonite," and "Smallville."

     2.    In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304 (c) of the U.S. Copyright Law (Title 17, U.S.C.) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. In consideration for PPC'S contributions to the Venture and the mutual covenants contained herein Claimants hereby transfer and assign to the Venture their rights, title and interests in the Rights. The name of the Venture shall be the "Joe Shuster Venture." The Venture's office address shall be the California address set forth above.

     3.    PPC will pay any and all costs and expenses of the Venture, including the legal fees and costs of setting up Joe Shuster's estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the enforcement and/or defense of the Rights and the Venture. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying,

Initials: _(signatures)_

Page 2
Joint Venture Agreement / Joe Shuster
11/23/01

postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC'S share of Proceeds set forth in paragraph 5 below.

4.     The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Claimants and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.     Any and all moneys and proceeds received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Claimants and fifty percent (50%) to PPC. The parties will use all reasonable efforts to have Joe Shuster's estate/administrator and third party payors, if any, directly pay to the Claimants and PPC their respective fifty percent (50%) share of Proceeds. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Claimants of a reasonable accounting and receipts for said expenses.

6.     All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.     The Venture and/or the Estate of Joe Shuster (to be established hereunder) will retain Marc Toberoff, Esq. to render legal services in connection with the Rights and the Venture, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights.

Initials

Page 3
Joint Venture Agreement / Joe Shuster
11/23/01

8.    The term ("Term") of the Venture shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term and the winding-up of the Venture or in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by the Claimants and fifty percent (50%) by PPC as tenants in common, and Claimants and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination of the Venture.

9.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (c) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Claimants.

10.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement, including without limitation an irrevocable letter of authority instructing the administrator of Joe Shuster's Estate to divide and disburse all Proceeds from the Rights as set forth in paragraph 5 above. When required hereunder, consent shall not be unreasonably withheld by any party regarding the business of the Venture. The parties hereby approve Michael Catron for appointment as the administrator of Joe Shuster's Estate, once it is established.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. To the extent any provision of this Agreement is found invalid, said provision shall be stricken

Page 4
Joint Venture Agreement / Joe Shuster
11/23/01

and shall not affect the validity of the remaining provisions hereof. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

     11.   This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

Agreed, understood and accepted:

Pacific Pictures Corporation


_____     Date: _Nov. 28, 2001_
By: Marc Toberoff, President


_____     Date: _Nov. 28, 2001_
Jean A. Peavy


_____     Date: _Nov. 28, 2001_
Mark Warren Peary
(f/k/a Mark Warren Peavy)

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

September 10, 2004

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor, Estate of Joseph Shuster
Jean Peavy
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren and Jean:

This is to confirm that (1) the joint venture agreement dated as of November 23, 2001 between you and Pacific Pictures Corp. and (2) the engagement agreement dated October 27, 2003 between the Estate of Joseph Shuster and Pacific Pictures Corp. have been cancelled.

Sincerely yours,

Marc Toberoff

AGREED:

The Estate of Joseph Shuster

By: Mark Warren Peary, Executor

Mark Warren Peary

Jean A. Peavy

# EXHIBIT K

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA       )
SIEGEL LARSON,                )
                              )
          Plaintiffs,         )
                              )
    vs.                       )        No. 04-8400 (RSWL)(RZx)
                              )
WARNER BROS. ENTERTAINMENT )             -and-
INC., et al.,                 )
                              )        No. 04-8776 (RSWL)(RZx)
          Defendants.         )
_____)
AND RELATED COUNTERCLAIMS.

**CERTIFIED
ORIGINAL**

DEPOSITION OF MARC TOBEROFF

Beverly Hills, California

Friday, November 17, 2006

Reported by:

DAVID S. COLEMAN

CSR No. 4613

**U.S. LEGAL**
*Support*

Certified Shorthand Reporters

15250 Ventura Boulevard, Suite 410
Sherman Oaks, CA 91403

800-993-4464 • Fax 800-984-4464
www.uslegalsupport.com

Los Angeles • Orange County • San Diego • Inland Empire • Ventura • San Jose • San Francisco • Sacramento . . . and across the nation

117

1          Deposition of MARC TOBEROFF, taken on

2      behalf of Defendants and Counterclaimants,

3      at 9665 Wilshire Boulevard, 9th Floor, Beverly

4      Hills, California, beginning at 1:46 PM on

5      Friday, November 17, 2006, before DAVID S.

6      COLEMAN, Certified Shorthand Reporter No. 4613.

7

8              .

9  APPEARANCES:

10

11  For Plaintiffs and the Witness:

12      LAW OFFICES OF MARC TOBEROFF
        BY:  MARC TOBEROFF
13           NICHOLAS C. WILLIAMSON
        Attorneys at Law
14      2049 Century Park East, Suite 2720
        Los Angeles, California 90067
15      310-246-3333

16

17  For Defendants and Counterclaimant:

18      WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL
        BY:  MICHAEL BERGMAN
19           ADAM HAGEN
        Attorneys at Law
20      9665 Wilshire Boulevard, 9th Floor
        Beverly Hills, California 90212
21      310-858-7888
        mbergman@wwllp.com
22

23

24

25

                                                    2

**U.S. LEGAL SUPPORT**

1                           I N D E X

2

3

4    WITNESS                     EXAMINATION              PAGE

5    MARC TOBEROFF

6                               BY MR. BERGMAN            6

7

8                               EXHIBITS

9    DEPOSITION                                           PAGE

10   1      Subpoena to Marc Toberoff dated          7
            October 19, 2006, and attachments
11
12   2      Marc Toberoff, Esq's Objections to       7
            Defendants' Subpoena, dated November
            6, 2006
13
14   3      Subpoena to Pacific Pictures Corpor-     10
            ation dated October 19, 2006, and
            attachments
15
16   4      Pacific Pictures Corporation's           10
            Objections to Defendants' Subpoena,
            dated November 6, 2006
17
18   5      Subpoena to IPW, LLC dated October       13
            19, 2006, and attachments
19
20   6      IPW LLC's Objections to Defendants'      14
            Subpoena, dated November 6, 2006
21   7      Subpoena to Marc Toberoff dated          14
            August 10, 2006, and attachments
22   8      Internet printout on Marc Toberoff       16
23   9      Internet printout on Marc Toberoff       21
24   10     Printout from Intellectual Properties    26
            Worldwide, LLC
25

3

**U.S. LEGAL SUPPORT**

INDEX (Continued:

EXHIBITS (Continued)

DEPOSITION                                                     PAGE

11    Internet printout on Intellectual          38
      Properties Worldwide

12    Printout from California Business           41
      Portal on IPW, LLC

13    Joint Venture Agreement made as of         49
      November 23, 2001, by and between
      Pacific Pictures Corporation and
      Jean Peavy and Mark Peary

14    Letter from Marc Toberoff to Mark          68
      Warren Peary dated October 27, 2003

15    Letter from Marc Toberoff to Mark          75
      Warren Peary dated September 10, 2004

16    Fax from Marc Toberoff to Ariel            79
      Emanuel dated 6-3-02

17    Letter from Marc Toberoff to Tom           85
      McGuire dated August 17, 2004, and
      attachments

18    Letter from Marc Toberoff and Ariel        112
      Emanuel to Joanne Siegel and Laura
      Siegel Larson dated October 3, 2002

19    Letter from Marc Toberoff to Joanne        121
      Siegel and Laura Siegel Larson dated
      November 26, 2002, Bates No. 000001882

20    Letter from Marc Toberoff to Joanne        123
      Siegel, Laura Siegel Larson and Ariel
      Emanuel dated December 16, 2002,
      Bates No. 000001883

21    Letter from Marc Toberoff to Joanne        124
      Siegel and Laura Siegel Larson dated
      January 21, 2002, Bates No. 000001888

4

**U.S. LEGAL SUPPORT**

Copy  For reference
310-589-5151

## JOINT VENTURE AGREEMENT

AGREEMENT made as of November 23, 2001 by and between Pacific Pictures Corporation ("PPC") with offices at 23852 Pacific Coast Highway, Suite 555, Malibu, CA 90265 ; tel. (310) 589-5151; fax: (310) 589-5152 and Jean A. Peavy and her son Mark Warren Peary (f/k/a Mark Warren Peavy) (individually and collectively, "Claimants") located at 51 Camino Cabo, Sante Fe, New Mexico 87508; tel. / fax: (505) 466-4551, regarding the formation of a joint venture for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights").

    1.    The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, such as, without limitation, "Superman," "Clark Kent," "Lois Lane," "Jimmy Olsen," "Lex Luther," "Lana Lang," "Mr. Mxyztplk," "Superboy," "Supergirl," "The Daily Planet," "Krypton," "Kryptonite," and "Smallville."

    2.    In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304 (c) of the U.S. Copyright Law (Title 17, U.S.C.) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. In consideration for PPC'S contributions to the Venture and the mutual covenants contained herein Claimants hereby transfer and assign to the Venture their rights, title and interests in the Rights. The name of the Venture shall be the "Joe Shuster Venture." The Venture's office address shall be the California address set forth above.

    3.    PPC will pay any and all costs and expenses of the Venture, including the legal fees and costs of setting up Joe Shuster's estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the enforcement and/or defense of the Rights and the Venture. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying,

Initials: _____  _____

13

11-17-06
TOBEROFF

11/27 01  20:09 FAX

Page 2
Joint Venture Agreement / Joe Shuster
11/23/01

postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC'S share of Proceeds set forth in paragraph 5 below.

4.      The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Claimants and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.      Any and all moneys and proceeds received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Claimants and fifty percent (50%) to PPC. The parties will use all reasonable efforts to have Joe Shuster's estate/administrator and third party payors, if any, directly pay to the Claimants and PPC their respective fifty percent (50%) share of Proceeds. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Claimants of a reasonable accounting and receipts for said expenses.

6.      All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.      The Venture and/or the Estate of Joe Shuster (to be established hereunder) will retain Marc Toberoff, Esq. to render legal services in connection with the Rights and the Venture, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights.

Initials: _____

Page 3
Joint Venture Agreement / Joe Shuster
11/23/01

8.      The term ("Term") of the Venture shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term and the winding-up of the Venture or in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by the Claimants and fifty percent (50%) by PPC as tenants in common, and Claimants and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination of the Venture.

9.      To cover the unlikely event that Marc Toberoff dies or is disabled, PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (c) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Claimants.

10.     All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement, including without limitation an irrevocable letter of authority instructing the administrator of Joe Shuster's Estate to divide and disburse all Proceeds from the Rights as set forth in paragraph 5 above. When required hereunder, consent shall not be unreasonably withheld by any party regarding the business of the Venture. The parties hereby approve Michael Catron for appointment as the administrator of Joe Shuster's Estate, once it is established.

11.     This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. To the extent any provision of this Agreement is found invalid, said provision shall be stricken

11/27/01  20:11 FAX                                                                    ☒ 009/009

Page 4
Joint Venture Agreement / Joe Shuster
11/23/01

and shall not affect the validity of the remaining provisions hereof. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

　　　11.　　This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

Agreed, understood and accepted:

Pacific Pictures Corporation


_____          Date: _____
By: Marc Toberoff, President


_____          Date: Nov. 28, 2001
Jean A. Peavy


_____          Date: Nov. 28, 2001
Mark Warren Peary
(f/k/a Mark Warren Peavy)

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

1.    Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

2.    In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

3.    PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _____, _____

14

___ IDENTIFICATION
DAVID S. COLEMAN, CSR #4513
DATE 1-17-06 or
WITNESS Toberoff

125

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27. 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees. jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

     4.    The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

     5.    Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peavy and Warren Peavy, respectively. pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

     6.    All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

     7.    The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _____, _____

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

    8.     To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

    9.     All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

    10.   This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

    11.   This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

    If the terms and conditions of this agreement are acceptable to you, please

/ / /
/ / /
/ / /
/ / /

Initials: _____

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

By: Mark Warren Peary, Executor                     Date: 10-30-03
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my
interests are concerned.

Jean A. Peavy                                        Date: 10-30-03

# **Ip**worldwide

As of October 3, 2002

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

**RECEIVED**

OCT 2 4

**Marc Toberoff**

Re: "*Superman*"

Dear Joanne and Laura:

This letter shall confirm the agreement and understanding between you ("Owner") and us ("IPW") regarding Owner's retention of IPW to exclusively represent Owner with respect to any and all of Owner's rights, claims, title and interest in and to the comic book property commonly known as "*Superman*," including, without limitation, all characters and copyright interests therein (jointly and individually, "Rights"):

    1.    In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.

    2.    IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. IPW will also provide Marc Toberoff's legal services with respect to all legal contracts in connection with all of the above. IPW will be solely responsible for Marc Toberoff's legal fees in connection herewith, if any.

    3.    The terms of any and all agreements regarding the Rights will require Owner's express written approval.

    4.    IPW will pay its own costs and expenses in connection with this Agreement, including without limitation, office overhead, photocopying, messenger fees, postage and overnight mail, long distance telephone and fax charges, travel and accommodation costs and any legal fees to Marc Toberoff, and such costs will not be recoupable from Proceeds hereunder. Notwithstanding this, in the event IPW advances or loans Owner moneys to pay costs in furtherance of the Rights (e.g., US Copyright Office fees and audit fees, if any) the terms and repayment of any such advances or loans will be set forth in a separate written agreement between the parties.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3335
E-mail: MToberoff@IPWW.biz

# Ip worldwide

Page 2
Retainer Agreement/ *Superman*
As of October 3, 2002

5.      The term ("Term") of this Agreement is eighteen (18) months from the date this Agreement is executed by all parties. In the event the parties are actively negotiating an agreement regarding the Rights when the Term is due to expire, the Term will automatically be extended for three (3) additional months. In the event during the Term either Marc Toberoff or Ariel Emanuel are unable to render services in connection with this Agreement for a continuous period greater than three (3) months due to death, incapacity or otherwise, Owner may in its discretion terminate this Agreement prior to the expiration of the Term.

6.      In consideration of the services to be furnished by IPW hereunder you hereby agree to pay and authorize IPW to retain out of all gross compensation, moneys or other consideration that may be payable or recovered for or by reason of Owner's Rights whether by negotiation, dispute resolution, settlement or otherwise ("Proceeds"): a fee ("Fee") of ten percent (10%) of any and all gross compensation payable including , without limitation, option, quitclaim or licensing fees, purchase price, settlement amounts, advances, fixed and/or contingent compensation. In computing IPW's fee no deduction will be made from gross Proceeds, including, without limitation, no deduction for Owner's taxes, expenses and/or moneys payable to any and all third parties if any. IPW's Fee shall apply to any and all agreements regarding the Rights made during the Term or the material terms of which are substantially negotiated during the Term and/or to any agreements between Owner and an investor or buyer introduced by IPW to Owner during the Term. For the avoidance of doubt, in the event *"Superman"* and the Rights are sold, settled, licensed or otherwise exploited in conjunction with other characters or rights owned or controlled by Owner (e.g., *"Superboy"*); it is understood and agreed that IPW will not "double dip" and the above 10% IPW Fee will apply to gross Proceeds from any said joined transaction(s).

Notwithstanding the above, for purposes of computing IPW's Fee, Proceeds will not include Joanne Siegel's annual "pension" payments which commenced in 1996 (currently $ 126,148 annually, plus cost of living increases or bonuses, if any) and her full medical and dental coverage provided by AOL Time Warner which consideration and interests pre-date and are wholly separate from her copyright termination interests.

///
///
///
///
///
///

IPW 00002    130

-15-06    10:33pm    From-

DCT-21-02    08:18pm    From-                                                      T-120    P.005    F-045

                                                                                  T-260    P.006/013    P-786

# Ip worldwide

Page 3
Retainer Agreement/ Superman
As of October 3, 2002

7.    Owner hereby authorizes IPW to collect and receive all Proceeds due and payable; to endorse and deposit any checks or moneys payable into a client trust account on Owner's behalf; to deduct IPW's fee as set forth above; whereupon IPW will promptly pay the remainder directly to Owner as directed by Owner in writing. It is understood that the Rights may involve multiple rights and claims against multiple parties and accordingly IPW's above fee shall be applicable to each Rights payment or recovery from any party and same is not contingent on any other Rights payment.

8.    Owner hereby warrants and represents that Owner will not transfer, assign, license or in any manner encumber the Rights during the Term or extended Term other than through or as a result of IPW's exclusive representation hereunder, with the exception of by will, probate or pursuant to other Court order.

9.    All notices and/or payments hereunder shall be made to the parties at the addresses set forth on page 1 hereof unless and until either party gives the other prior written notice of a change of address.

10.    The parties understand and acknowledge that the scope of this Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services and advancing of such expenses, if requested and desired by Owner, will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and Owner.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by both parties. The parties acknowledge that they fully understand the terms and conditions of this Agreement and have agreed to such terms and conditions after negotiation, mature thought and deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. The terms of this Agreement shall be construed pursuant to their fair meaning, nor for or against either party. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals. This Agreement shall be governed by the

IPW 00003

131

# **Ip**worldwide

Page 4
Retainer Agreement/ *Superman*
As of October 3, 2002

Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased and excited to work with you and will do our very best to handle this matter in a dedicated manner and to achieve results satisfactory to you.

Yours sincerely,

Marc Toberoff
Authorized signatory

Ariel Emanuel
Authorized signatory

Agreed, Understood and Accepted:

Joanne Siegel                    Date: October 23rd 2002

Laura Siegel Larson              Date: October 23, 2002

IPW 00004