# EXHIBIT C



**FILED**
at Santa Fe, NM

AUG 2 5 2006

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

IN RE: SUBPOENAS *DUCES TECUM*
ISSUED BY THE U.S. DISTRICT
COURT FOR THE DISTRICT OF
NEW MEXCIO IN:

Case No. MC-06-20 MV

JOANNE SIEGEL and LAURA
SIEGEL LARSON,

Case Nos. CV 04-8400; 04-8776
(Consolidated for Discovery
Purposes)

       Plaintiffs,

Action Pending in the U.S. District
Court for the Central District of
California

       v.

WARNER BROS. ENTERTAINMENT
INC., et al.,

       Defendants.

### MARK PEARY AND JEAN PEAVY'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM, FOR CONTEMPT, AND FOR ATTORNEYS FEES

## INTRODUCTION

New Mexican residents Mark Warren Peary and Jean Adele Peavy (the

"Shusters"). who are non-parties to this action in the Central District of California. made

themselves readily available to be deposed on several dates. remain available to be

deposed and have produced *all* documents in their possession. custody or control

responsive to Defendants Warner Bros. Entertainment Inc. ("WB"). Time Warner Inc.,

Warner Communications Inc., Warner Television Production Inc. and DC Comics'

("DC") (collectively, "Defendants" or "Movants") Subpoenas Duces Tecum served on



Exhibit C
22

them on April 12, 2006 ("Subpoenas"). Despite the overbroad and invasive nature of the Movants' Subpoenas, these non-parties made every effort to comply with the Subpoenas. However, notwithstanding their compliance and subsequent capitulation to the Movants' every demand, the Movants have nonetheless insisted on pressing ahead with an overzealous and unnecessary motion for contempt ("Motion"). As demonstrated below, the Shusters have been forthcoming in response to the Movants' Subpoenas and, as such, the Movants' wasteful motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegel Heirs") are the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, "Superman," and the sole author of "Superboy." Plaintiffs have initiated two civil actions in the United States District Court for the Central District of California regarding Plaintiffs' proper exercise of their right under section 304(c) of the 1976 United States Copyright Act, 17 U.S.C. § 304(c) ("Section 304(c)"), to recapture Siegel's original copyrights in "Superman" and "Superboy" by serving statutory notices on the defendants herein ("Defendants") on April 3, 1997 and March 8, 2002, respectively terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants' predecessor(s) (the "Siegel Terminations" or "Terminations"). Toberoff Decl. ¶ 3.

Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the Register of Copyrights. Accordingly, on April 16, 1999, the noticed "Superman" termination date, all rights Siegel conveyed in "Superman" to Defendants' predecessors duly reverted to

2

Exhibit C
23

Plaintiffs. On November 17, 2004, the noticed "Superboy" Termination date, all rights that Siegel had conveyed in "Superboy" to Defendants' predecessors duly reverted to Plaintiffs.

Shortly after Plaintiffs served their "Superman" Termination notices the general counsel of Defendant Warner Bros. Entertainment Inc. ("WB") and the President of DC Comics ("DC"), a wholly owned WB subsidiary, both acknowledged the validity of the "Superman" Termination and the parties began negotiations for Defendants' purchase and settlement of the Plaintiffs' recaptured copyright interests. However, when no agreement was made or executed by the parties, Defendants, in a reversal of their prior acknowledgement of the "Superman" Terminations four years earlier, contested the Terminations in 1999, one day before the effective Termination date, claiming the Terminations were somehow invalid.

Defendants thereafter also similarly claimed that the "Superboy" Termination was invalid. Plaintiffs consequently commenced declaratory relief actions in the Central District Court of the State of California regarding the validity and effect of the "Superman" and "Superboy" Terminations on October 8, 2004 (Case No. CV 04-8400 RSWL (RZx)) and October 22, 2004 (CV 04-8776 RSWL (RZx)), respectively. *See* Movants' Motion to Compel Production of Documents ("Mot. Compel") Exhibits 3, 4.

Plaintiffs moved for partial summary adjudication on February 15, 2006 that their statutory "Superboy" Termination is valid and that Plaintiffs thereby recaptured Siegel's "Superboy" copyright. Defendants cross-moved for summary judgment claiming the "Superboy" Termination was invalid based in large part on the same purported claims and defenses asserted with respect to "Superman." On March 23, 2006, the Court

3

Exhibit C
24

*granted* Plaintiffs' motion in its entirety and *denied* Defendants' motion in its entirety. *See* Declaration of Marc Toberoff, Esq. In Opposition to Defendants' Motion to Compel Production of Documents Ex. "A." Defendants subsequently moved to have this Order certified for appeal, which motion was also *denied* by the Court.

In purported connection with the Siegel Litigations, Defendants served New Mexican residents Mark Warren Peary ("Warren") and Jean Adele Peavy ("Jean") with the Subpoenas at issue herein. Jean and Warren are the sister and nephew, respectively, of Joseph Shuster ("Shuster"), now deceased, the illustrator of the original "Superman" comic books. Warren is Jean's son and the recently appointed executer of Shuster's estate. Toberoff Decl., ¶ 2. Neither is a party to the Siegel Litigations, nor are they witnesses to anything at issue in the Siegel Litigations.

Warren, as executor of Shuster's estate, filed and served a wholly separate termination notice regarding "Superman" pursuant to section 304(d) of the Copyright Act, 17 U.S.C. § 304(d) with respect to Shuster's copyright interests in "Superman" (the "Shuster Termination"). Whereas, the Siegel Terminations became effective on April 16, 1999, the Shuster Termination will not take effect until well into the future on October 26, 2013. The Shuster Termination, while obviously of concern *to Movants*, is wholly separate and apart from the Siegel Terminations at issue in the Siegel Litigations. The Shuster Termination has no legal bearing or effect upon the Siegel Terminations or upon Plaintiffs' claims in the Siegel Litigations or upon the Movants' counterclaims or defenses in the Siegel Litigations.

Plaintiffs served Defendant DC their first set of requests for production of documents on May 13, 2005. Toberoff Decl., ¶ 5. Plaintiffs also served Defendant WB a

Exhibit C
25

separate set of requests on May 13, 2005. *Id.,* ¶ 6. Both Defendants filed responses to

their respective requests on June 13, 2005. *Id.,* ¶ 7. DC thereafter produced a small

portion of their non-privileged documents available for copying on August 9, 2005. *Id.,* ¶

8, Ex. B. However, Defendant DC did not serve a privilege log until April 7, 2006 *eight*

*months* after its production. *Id.,* ¶ 9, Ex. C. Incredibly, despite Plaintiffs' repeated

demands, Defendant WB failed to produce *any* documents for copying until June 2, 2006,

over *a year* after Plaintiffs' requests were served. *Id.,* ¶ 10, Ex. D. WB subsequently

served their privilege log on June 27, 2006, *thirteen months* after Plaintiffs' Requests.

*Id.,* ¶ 11, Ex. E. Thus, Movants are quick to point the finger at *non-parties* such as the

Shusters when their own conduct in discovery has been lax and often unresponsive.

The Shusters are represented by the Law Offices of Marc Toberoff ("Toberoff")

which are also counsel to the Plaintiffs herein. In response to the service of the

Subpoenas, Toberoff immediately set about discussing with the Movants mutually

available dates for the depositions of the Shusters. Toberoff Decl., ¶ 12. These

discussions formed a part of larger discussions involving the scheduling of the

depositions of Plaintiffs and other discovery in the Siegel Litigations. Toberoff Decl., ¶

12. The parties' discovery plan resulted in the depositions of the Shuster being taken "off

calendar" by Defendants until at least the week of June 21, 2006 when the Shusters were

expected in Los Angeles to attend the premiere of Defendants' motion picture,

"Superman Returns," and had offered their depositions at this time for the convenience of

all concerned. *Id.* Because the depositions of the Shusters were readily taken off

calendar by Defendants and the parties' counsel were immersed in the Siegel Litigations,

the pressure was off the Subpoenas. Then the depositions of the Shusters expected for

5

Exhibit C
26

the week of June 21. 2006 were surprisingly further put off by Defendants' counsel

Patrick Perkins ("Perkins") on May 31. 2006 for reasons that were unclear despite the

initial enthusiasm of Defendants' lead trial counsel. Roger Zissu, and Defendants' Senior

Vice President. Litigation. Wayne Smith, due to the obvious convenience for both

California counsel and the parties.  Mot. Compel Ex. 9: Toberoff Decl. ¶ 13.

     Due to all of the above, the Shusters produced documents responsive to the

Subpoenas and relevant to the Siegel Litigations on July 14, 2006.  Toberoff Decl. ¶ 15.

At Perkins' request the Shusters then readily agreed to have their depositions taken in

Santa Fe on August 8 and 9, 2006. respectively.  *Id.*, ¶ 16.  However, just days before

these dates. Perkins cancelled these depositions. claiming insufficient document

production and hastily brought this Motion for contempt.  *Id.*, ¶ 17.  Though concerned

with the overbroad. invasive and burdensome nature of the Subpoenas, the Shusters, in an

effort to amicably resolve this matter, renewed their search for responsive documents and

furnished a supplemental production on August 11, 2006. constituting all responsive

documents in their possession or control.  *Id.*, ¶ 18.  Along with this production, the

Shusters furnished the Movants with written responses to the Movants' document

requests and a detailed privilege log.  *Id.*  Shortly thereafter on August 14, 2006. the

Shusters, on their own initiative, produced a fully executed copy of a partially executed

agreement produced on August 11, 2006 in further compliance with the Subpoenas.  *Id.*, ¶

19: Ex. I.  In response to Perkins' subsequent objection to the particular wording of the

Shusters' written responses, they amended their responses to unequivocally state that they

would "produce all non-privileged documents responsive to [each] Request."  *Id.*, ¶ 20:

Ex. J.  The Shusters have fully complied with the Subpoenas: have no further responsive

Exhibit C
27

documents in their possession, custody or control and remain ready and willing to be deposed by the Movants. Yet, despite their compliance and the clear efforts of the Shusters to amicably resolve this matter, the Movants rigidly insist on steamrolling ahead with their unnecessary Motion.

## ARGUMENT

### I. THE SHUSTERS REASONABLY RESPONDED TO THE MOVANTS' SUBPOENAS

#### A. Pursuant To The Subpoenas The Shusters Made Themselves Readily Available To Be Deposed

Defendants completely mischaracterize both the tone and substance of the Shusters' response to the Subpoenas as evidenced by the substantial efforts of the Shusters' counsel, Toberoff, to amicably resolve the present discovery dispute without subjecting the parties or the Court to wasteful motion practice. Firstly, an examination of Toberoff's responses to Defendants' inquiries reveals nothing but a sincere effort to accommodate and comply with the Subpoenas. In April, 2006, soon after the Subpoenas had been served, Toberoff discussed with Defendants' lead trial counsel Roger Zissu ("Zissu"), the taking on the Shusters' depositions in Los Angeles the week of June 21, 2006 when they were expected to attend the premiere of Defendants' movie, "Superman Returns" (the "Premiere"). Toberoff Decl., ¶ 12. This suggestion was met with Mr. Zissu's approval. *Id.* Thereafter, the first email of Defendants' counsel, Perkins, sent May 3, 2006, requesting available dates for the Shusters' depositions, was answered the same day by their counsel, not evasively, as Defendants allege, but with a reiterated suggestion that the depositions be held around June 21, 2006 in Los Angeles, during the week of the Premiere. *See* Mot. Compel, Ex. 8; Toberoff Decl. ¶ 13.

7

Exhibit C
28

The Shusters' counsel was also at this time in contact with Warner Bros.' Senior Litigation counsel, Wayne Smith, arranging the details of the Shusters' attendance at the Premiere. Mr. Smith, like Defendants' lead counsel, Zissu, was equally receptive to the taking of the Shusters' depositions while they were in Los Angeles. Toberoff Decl., ¶ 12. On May 31, 2006, despite the clear convenience of this plan to the parties, their California counsel, and the non-party Shusters, Perkins rejected these proposed dates on May 31, 2006 <u>without explanation</u>. Mot. Compel, Ex. 9. On May 31, 2006, Toberoff sent an e-mail to Perkins requesting that he reconsider taking the Shusters' depositions in Los Angeles the week of June 21, 2006. Mot. Compel, Ex. 10. On June 5, 2006, Perkins again rejected this proposal on the ground he did not "know what the status of their [the Shusters] attendance at the Premiere is." Mot. Compel, Ex. 11. Perkins will undoubtedly claim, after the fact, that he had insufficient documents to take the Shusters' depositions in Los Angeles in June, 2006, but at the time this was certainly not the issue. Mot. Compel, Ex. 13. Moreover, the parties had since May 3, 2006, six weeks prior to the proposed depositions, to work out any document production issues. Tellingly, in all this time, the Movants proposed no alternative dates for the Shusters' depositions. Toberoff Decl., ¶¶ 13, 14.

Finally, the Movants suggested deposing the Shusters in early August in Santa Fe, to which the Shusters and their counsel readily agreed. *See* Toberoff Decl., ¶ 16. The depositions were re-scheduled for August 8-9, 2006 without any problems. *Id.* Pursuant to the Movants' Subpoenas, the Shusters made a diligent search and produced responsive documents relevant to the Siegel Litigations on July 14, 2006, over three weeks prior to their depositions. Toberoff Decl. ¶ 15. However, on August 2, 2006, just days before the

8

Exhibit C
29

Shusters' scheduled August 8-9 depositions, Perkins unilaterally cancelled their depositions. Toberoff Decl. ¶ 17, Ex. G.

The Shusters' conduct in no way reflects an unwillingness to comply with the Subpoenas. They have been upfront, cooperative and made themselves readily available to be deposed on multiple occasions. Toberoff Decl., ¶¶ 12, 13, 14, 16. Despite the Movants' delays and re-shuffling of the Shusters' deposition dates, the Shusters remain ready to be deposed.

**B.     Pursuant To The Subpoenas The Shusters Made Diligent Search And Produced Responsive Documents In Their Custody And Control**

Defendants further mischaracterize the Shusters' compliance with the Subpoena requests for the production of documents. In response to the Subpoenas, the Shusters were immediately instructed by their counsel to search for and produce responsive documents in their possession. Toberoff Decl., ¶ 12. The Shusters produced to Defendants the first documents relevant to this action on July 14, 2006. *Id.*, ¶ 15. By letter dated July 19, 2006 from Perkins, the Movants complained bitterly that this production was insufficient, demanding a copy of Joseph Shusters' will and probate documents appointing Warren Peary executor of the Shuster estate. Such documents are hardly relevant to this case which concerns only the Siegel Terminations and, as matters of public record (via the California probating of Joseph Shuster's will) were undoubtedly already in Defendants' possession as of the date of their July 19, 2006 letter.

In response and compliance with the Movants' overbroad demands, the Shusters made a supplemental production on August 11, 2006. *Id.*, ¶ 18. A privilege log asserting the attorney client privilege with respect to only a few documents was also submitted by the Shusters. *Id.* One of the documents produced by the Shusters on Friday, August 11,

9

Exhibit C
30

2006, was a partially executed contract. The Shusters' counsel therefore searched for and
produced a fully executed copy of this contract from his files the following Monday,
August 14, 2006. Toberoff Decl., ¶ 19.

The Shusters thus produced all the documents they had to their counsel, Toberoff,
and he produced all such documents to Defendants minus only a few which are clearly
subject to privilege and duly listed on the privilege log furnished Movants. *Id.*, ¶ 18; Ex.
H. The Shusters' production included both the Shuster's Notice of Termination as well
as Joseph Shuster's will and the documents regarding the probating of his estate,
including the appointment of Warren Peary as executor. All these documents were
produced by the Shusters in a good faith effort to satisfy the Movants, notwithstanding
their dubious relevance to the Siegel Litigations which concern only the Siegel
Terminations, not the Shuster Termination. Having turned over *every* responsive
document they could find, the Shusters are at a loss as to what else they can do to comply
with Defendants' Subpoenas.

## II.    THE MOVANTS' SUBPOENAS ARE GROSSLY OVERBROAD AND,
##        FOR THE MOST PART, UNRELATED TO THE SIEGEL LITIGATION

As set forth above, the Shusters have made themselves readily available to be
deposed and have produced all responsive documents in their possession or control.
Notwithstanding this, the Shusters have objected to the Movants' Subpoenas as grossly
overbroad, burdensome and designed for the ulterior purpose of investigating the Shuster
Termination, a matter unrelated to this action.

The Movants' claim that all objections to their aggressively overbroad Subpoenas
have been waived because the Shusters lodged their objections after the 14 day period

10

Exhibit C
31

prescribed by FRCP 45. However, in certain circumstances and "for good cause . . . the

failure to act timely will not bar consideration of objections [to a Rule 45 subpoena]."

*American Electric Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Oh. 1999)

*(quoting Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996));

*see also W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist LEXIS 14812, at *5-6 (D.

Kan. 2002); *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344, 349

(W.D. Va. 1999). Courts have refused to find a waiver "where: (1) the subpoena is

overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed

witness is a non-party acting in good faith; or (3) counsel for the witness and counsel for

the subpoenaing party were in contact concerning the witness' compliance prior to the

time the witness challenged the legal basis for the subpoena." *W. Res., Inc.*, 2002 U.S.

Dist LEXIS 14812, at *5-6; *Concord Boat Corp.*, 169 F.R.D. at 48. *See Krewson v. City

of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) (refusing to compel compliance even though

no timely objection made where particular request far exceeded bounds of fair

discovery); *Celanex Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609-10 (D.

Del. 1973) (no waiver where volume of documents sought was great, time for production

brief, and counsel were negotiating scope of production).

A subpoena is clearly overbroad where "[t]he request is not limited to materials

that may be relevant or lead to the production of admissible evidence nor is it restricted to

the relevant time period." *Alexander v. FBI*, 186 F.R.D. 21, 35 (D.D.C. 1998). When a

subpoena is clearly overbroad and directed at a non-party, "it is clear an inflexible

reading of Rule 45(c)(2)(B) is not appropriate." *Id.* (late objections to subpoena

Exhibit C
32

considered timely).[1]

Here, the Movants' Subpoenas are on their face unnecessarily overbroad and burdensome on the non-party Shusters. The Subpoenas simply demand without any limitations or any delineation of the relevant time period, the author or recipient of requested documents: "All Documents Concerning [a very broadly defined term] Superman and/or Superboy" and "All Documents evidencing any correspondence with any third person concerning [sic] Superman and Superboy." *Superman* and *Superboy* were created decades ago in or about 1934 and 1938-40, respectively. Such unbridled Requests covering a time span of over 70 years places an unreasonably heavy burden on two New Mexican residents who are neither parties to the Siegel Litigations, nor witnesses to the subject matter of the Siegel Litigations.

While frivolously demanding sanctions and claiming waiver of any and all objections by the Shusters, the Movants' Motion gives short shrift as to how their Requests are even remotely related to the Siegel Litigations. While claiming that all documents demanded (i.e., every document concerning *Superman* and *Superboy*) are "crucial to Movants' defenses and counterclaims," the Movants' tellingly *never connect the dots*. The Movants do not because they cannot explain how or why the documents they request are even marginally related, let alone "crucial" to the Siegel Litigation. (How, for instance is "any correspondence with any third person concerning Superman and/or Superboy" over the past 72 years "crucial" to the Movants' case?).

---

[1] "[T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *United States v. International Bus. Mach. Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979). *See also In re Rational Software Sec. Litig.*, 28 F. Supp. 2d 562, 568 (N.D. Cal. 1998) (plaintiff's document requests held "grossly overbroad" where they contained broad time limits and sought "without limitation a wide range of documents").

12

Exhibit C
33

Instead of providing the Shusters and this Court with a solid explanation, the Movants' essentially fudge this important point, simplistically claiming that because DC is the successor to Shuster's copyright interest in *Superman* every document concerning *Superman* and/or *Superboy* is relevant to the Siegel Litigations. Mot. Compel at 9. However, the Siegel Litigations do not concern Shuster's copyright interests in *Superman* and/or *Superboy* (if any): the litigations concern *only* Jerry Siegel's copyright interests in *Superman* and/or *Superboy*.

The Siegel Litigations concern the Siegels' recapture of Jerry Siegel's co-authorship (50%) share of the *Superman* copyright and the Siegels' recapture of 100% of the *Superboy* copyright pursuant to section 304(c) of the Copyright Act ("Section 304(c)"), not Joseph Shuster's co-authorship (50%) share in *Superman* currently owned by the Movants. Mot. Compel Exs. 3, 4. The Movants' ownership of Joseph Shuster's joint copyright interest in *Superman* is not at issue in the Siegel Litigations. *Id.* It is a given and the basis for which the Siegels' demand therein an accounting by Defendants for their exploitation of the *Superman* copyright.

With respect to *Superboy*, Jerry Siegel was long ago adjudicated to be the sole creator and owner of this original character in a 1947 action in the Supreme Court of the State of New York, Westchester County. Accordingly, in the Siegel Litigation, the Siegels have prevailed on summary judgment and were held to have successfully recaptured and to currently own the *Superboy* copyright. Toberoff Decl., Ex. A. Thus, neither Joseph Shuster nor Defendants, as his alleged employer or successor, have any interest in the original *Superboy* copyright.

The fact that Jean Peavy and Warren Peary are the sister and nephew of Joseph

13

Exhibit C
34

Shuster, respectively, does not constitute grounds to subject them to the Movants'
overzealous Subpoenas. The Movants' claim that because the Shuster Estate, includes
Joseph Shuster's copyright interests, their sweeping demands are somehow justified.
This again fails to makes any critical connection to the Siegel Litigations which, as set
forth above, concerns Siegel's interests, not Shuster's interests.

The Movants' next vaguely assert that the Siegel Litigations "attempt to place a
value upon the Siegel's purported recaptured share in the Superman copyrights" and on
this basis claim that "any agreements the Shusters may have made regarding their
purported copyright interest are directly relevant." Mot. Compel at 9. This vague
assertion again makes no common or legal sense nor is it a proper description of the
Siegel Litigations. Pursuant to their Section 304(c) Terminations, the Siegels recaptured
on April 16, 1999, Jerry Siegel's 50% joint copyright interest in *Superman*. Under
copyright law, this entitles the Siegels to an accounting from the Movants, *Superman's*
other joint owner, for 50% of the Movants' profits from their exploitation of *Superman*
on and after April 16, 1999. *See generally*, *Nimmer on Copyright* § 6.12 (joint owner's
duty to account); *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984); *Nimmer on Copyright* §
11.03, 11.04 (statutory termination of copyright transfers). Under the Copyright Act this
requisite accounting is clearly not based on a market valuation of the *Superman* copyright
as Movants' feign to justify their demands.

To the extent that the Shusters made an agreement regarding their future interests
in *Superman* this has no bearing on the Siegels' right to an accounting from the Movants
or the Movants' obligation under the Copyright Act to provide such an accounting as
joint owners of *Superman*. *Id*. Moreover, the Shuster Termination is not effective until

14

Exhibit C
35

October 26, 2013. Thus, it is even harder to believe that "the value" of the Shuster estate's 2013 copyright interest is related to the Siegel's right commencing in 1999 to an accounting of the Movant's profits. The Movants' valuation argument is surely not the motivation for their invasive demands. That the Movants have so much trouble giving a clear and simple explanation of how their unusually overbroad document demands in their Subpoenas are relevant to this case speaks volumes. The Shusters' objections should therefore be upheld despite being served after the 14 day period because each Subpoena is overbroad on its face and far exceeds the bounds of fair discovery. *W. Res., Inc.*, 2002 U.S. Dist LEXIS 14812, at *5-6; *American Electric*, 191 F.R.D. at 136; *Concord*, 169 F.R.D. at 48.

Secondly, as illustrated above, the non-party Shusters, have certainly acted in good faith regarding the Subpoenas as they have produced to Defendants all documents in their possession or control, and have repeatedly made themselves available to be deposed. Toberoff Decl., ¶¶ 12-16, 18, 19. "[T]he absence of any showing of intentional failure or bad faith by [a third party] may be considered as factors in determining whether its untimely action under Rule 45(c)(2)(B) waived its objections." *Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 U.S. Dist. LEXIS 22444, at *5-6 (N.D.N.Y. 1996). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662-63 (D. Kan. 2003); *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed.Cir. 1993); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D.Cal.1995); *see* Fed. R. Civ. P. 45(c)(2)(B) ("an

15

Exhibit C
36

order to compel production shall protect any person who is not a party from significant expense. . . .").

Here, the Shusters have never acted in bad faith despite being dragged into a lawsuit in California with which they are not even remotely involved. In fact, their compliance with the Subpoenas would seem to indicate the exact opposite: they have produced to Defendants all of their responsive documents notwithstanding the Subpoenas clear overbreadth, they have furnished Defendants with a privilege log claiming privilege with respect to only a handful of discrete documents, they made themselves available to be deposed on a number of dates and remain ready and willing to have their depositions taken as soon as possible. Toberoff Decl. ¶¶ 12-16, 18, 19.

Thirdly, counsel for the Shusters and counsel for the Defendants were in close contact shortly after the service of the Subpoenas concerning compliance issues prior to the Shusters' written objections to the Subpoenas. Toberoff Decl. ¶¶ 12, 13. *See W. Res. Inc.*, 2002 U.S. Dist. LEXIS 14812, at *7. Immediately after receiving the Subpoenas, the Shusters' counsel, Toberoff, tried to schedule the Shusters' depositions, and instructed the Shusters to gather pertinent documents for production. Toberoff Decl. ¶¶ 12, 13; Mot Compel Exs. 7, 8, 9. Toberoff held numerous discussions with Defendants' counsel regarding the Subpoenas both telephonically and via e-mail. Toberoff Decl. ¶¶ 12, 13. Toberoff offered the Shsuters to be deposed during the "Superman Returns" premiere for the convenience of the parties and counsel but ultimately was rebuffed without explanation. Toberoff Decl. ¶¶ 12, 13, 14. Regardless, the Shusters then readily agreed to have their depositions taken on August 8 and 9, 2006 in Sante Fe. Toberoff Decl. ¶ 16. These depositions were also cancelled by Defendants despite the Shuster's

16

Exhibit C
37

production of pertinent documents and Defendants' possession of most. if not all non-privileged documents relevant to the Siegel Litigations from continual discovery therein. Toberoff Decl., ¶¶ 15, 17.

The parties' course of conduct and dialogue regarding the Subpoenas was one of cooperation. not contention or evasion.  Based on the parties' open dialogue. Toberoff reasonably expected any discovery issues regarding the Subpoenas could be settled easily without the need for wasteful motion practice or Court intervention.  Indeed. when the Shusters fully capitulated to Defendants' every demand. this matter should have reasonably been settled by Defendants.  Toberoff Decl., ¶¶ 18, 19, 20.  Yet, despite this compliance and good faith cooperation by a non-party to Defendants' extremely overbroad Subpoenas. Defendants have bulldozed ahead with a motion for contempt. raising serious doubts as to their motivations.

Under the above circumstances, the Shusters should not be held to have waived their objections to the Subpoenas.  As one district court has noted, "such a strict interpretation of the Rule would discourage informal dispute resolution among parties who cause issuance of subpoenas duces tecum and those to whom the subpoenas are issued." a result that "certainly would work against the efficient administration of justice." *In re Goodyear Tire & Rubber Co. Sec. Litigation.* 1991 U.S. Dist. LEXIS 14486. at *2-*4 (N.D. Ohio 1991).

## III.  THE SHUSTERS HAVE NOT WAIVED THE ATTORNEY-CLIENT PRIVILEGE

Where objections to a subpoena are based upon claims of privilege. Rule 45 does not impose a strict time period within which privilege objections must be made. *Ventre v. Datronic Rental Corp..* 1995 U.S. Dist. LEXIS 1199. *12-*13 (N.D. Ill.1995).  Rule

17

Exhibit C
38

45(c)(2)(B) provides the subpoenaed party may, within fourteen (14) days from the date

of service, serve written objections upon the party or attorney responsible for issuance of

the subpoena. *Id.* However, this timetable for objections is expressly made "subject to

paragraph (d)(2) of this rule" and, as such, is not applicable to objections based upon

privilege advanced under Rule 45(d)(2). *Id.* As a practical matter, "the investment of

time necessary to review all responsive documents for privileged material and prepare a

privilege log or report with sufficient detail to satisfy the requirements of Rule 45(d)(2)

does not lend itself to the limited fourteen (14) day time period set forth in Rule

45(c)(2)(B)." *Id. See De Vries v. Taylor*, 1994 U.S. Dist. LEXIS 21429, at *5-6 (D.

Colo. 1994) (in denying motion for contempt, court reasoned the requirement that a

person subpoenaed to produce documents file and serve objections within 14 days and

file a "timely" motion to quash is not applicable in the case of documents withheld on

attorney-client or work product grounds); *Winchester Capital Management Co., v.

Manufacturers Hanover Trust Co.,* 144 F.R.D. 170, 172 (D. Mass. 1992) (although a

nonparty waited until the day of the deposition to assert protections, it had not waived

either the attorney-client privilege or work-product protection); 9-45 *Moore's Federal

Practice - Civil* § 45.61.

Here, the Shusters clearly should not be held to have waived the attorney-client

privilege or work product protection because they served their privilege objections and

log in a reasonable time and manner after ascertaining privileged documents, all well

before their depositions. The courts have consistently shown a deep appreciation that the

attorney-client privilege should not be waived lightly. *Id.* Toberoff became engaged

with Defendants' counsel regarding the scheduling of the Shusters' depositions and the

18

Exhibit C
39

production of documents immediately after the Subpoenas were served. Toberoff Decl.,
¶¶ 12, 13.

The parties' negotiation of compliance with the overbroad Subpoenas and
subsequent gathering of documents, not unreasonably, took some time. When as a result
of such negotiations, the Shusters capitulated to Defendants' demands and produced
documents, notwithstanding their complete irrelevance to this action, this broadened
scope of production necessarily entailed some privileged documents. Thus, along with
the Shusters' broader production on August 11, 2006, they served their objections and a
detailed privilege log.[2]  Toberoff Decl., ¶ 18. While Defendants grossly exaggerate to
somehow justify their contempt motion, they come with unclean hands – their own
responses to discovery in this action has been marked by huge delays and unlike the
Shusters they are parties to this action (WB did not produce documents or provide a
privilege log until *a year* after responsive documents were due; DC did not produce a
privilege log until *eight months* after production requests were served). Toberoff Decl. ¶¶
9, 11. At a minimum, Defendants conduct provides some insight into the multi-faceted
pace of discovery in this action. In light of all of the foregoing, the Shusters' conduct in
no way justifies or reflects the harsh waiver of the attorney-client privilege or work
product protection advocated by Defendants.

## IV.    THE MOVANTS ARE MISUSING THEIR SUBPOENA POWER FOR
ULTERIOR PURPOSES BEYOND THE SCOPE OF THE SIEGEL
LITIGATIONS

The Siegel Litigations do not concern the Shuster Termination pursuant to section

---

[2] It should further be noted that the Shusters have turned over several documents which
are arguably subject to the attorney client privilege all in an effort to resolve the present
discovery dispute and to avoid wasteful and expensive motion practice.

19

Exhibit C
40

304(d) of the Copyright Act, which will be effective on October 26, 2013. Pursuant thereto, the Movant's current interest in the original Superman copyright reverts to the Shuster estate. Though separate and apart from the Siegel Terminatons, the Shuster Termination is clearly of grave legal and business concern to the Movants. The Movants have thus clearly attempted to use their subpoena power in the Siegel Litigation to go on an invasive "fishing expedition" regarding the Shuster Termination. This is as obvious to one involved in this matter as it is improper. Such ulterior purpose pervades the Movants' Subpoenas. While even the Movants cannot reasonably relate their Subpoenas' document demands to the Siegel Litigation, their demands are *directly related* to the Shuster Termination.

The Shusters have only a future reversionary interest in *Superman* pursuant to the Shuster Termination. Thus, the Movants' demands regarding "any current or potential ownership interest in *Superman*" in reality refer solely to the Shuster Termination.[3]

A perfect example of the Movant's not so well *hidden agenda* is their demand for "[a]ll documents Concerning the letter of agreement dated August 1, 1992, signed by Paul Levitz, Frank Shuster, and Jean Shuster Peavy." Such purported letter agreement has absolutely nothing to do with the Siegel Litigations. It concerns the provision by DC of pension benefits to Joseph Shuster and his sister Jean Peavy together with a punitive clause stating that if either ever asserts any rights in *Superman* they will lose such benefits and must repay past benefits. *See* Toberoff Decl., Ex. K.

## V.    THE SHUSTERS SHOULD NOT BE HELD IN CONTEMPT OF COURT

The Shusters have substantially complied with Defendants' Subpoena and thus

---

[3]  Thus, the Movants demand "[a]ll Documents Concerning any agreements...concerning any ownership interest in *Superman* [pursuant to the Shuster Termination interest];" "[a]ll Documents Concerning "negotiations by or with the Movants, the Siegels, Michael Siegel and/or the Shuster Representatives [regarding the Shuster Termination interest];" "[a]ll Documents Concerning any valuation of any current or potential ownership interest in *Superman* [pursuant to the Shuster Termination interest]."

Exhibit C
41

they should not be held in contempt of Court. The 10th Circuit has asserted that "in a civil contempt proceeding, the proof of contempt must be clear and convincing." *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 615 (10th Cir. 1983). *See Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir.1982); *N.L.R.B. v. Blevins Popcorn Co.*, 212 U.S. App. D.C. 289, 659 F.2d 1173, 1183 (D.C.C.1981); *In re Irving*, 600 F.2d 1027, 1037 (2d Cir.), cert. denied, 444 U.S. 866, 100 S. Ct. 137, 62 L. Ed. 2d 89 (1979); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir.1976). "To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (citations omitted). Furthermore, Plaintiffs should not be subject to contempt where Defendants, as here, complain about non-production of documents that Defendants already possess: "An important purpose underlying shifting the burden of production is to place on the person most likely to have access to the relevant evidence the obligation of bringing it forward." *Heinold Hog Market, Inc.*, 700 F.2d at 616. *See United States v. Fleischman*, 339 U.S. 349, 70 S. Ct. 739, 94 L. Ed. 906 (1950).

Finally, because a subpoena may be issued by counsel with no approval from the court, contempt sanctions should be used very "sparingly," because the command of an attorney-issued subpoena is effectively that of the attorney, and not that of "a judicial officer." *See* 9-45 *Moore's Federal Practice - Civil* § 45.62. Many courts have taken this sensible caution to heart, and have refused to award contempt sanctions unless the party serving the subpoena has obtained a court order enforcing the subpoena and the recipient

21

Exhibit C
42

has still not complied. *See Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn. 1994) (before sanctions may be imposed under Rule 45(e), there must be a court order compelling discovery, because a subpoena issued by an attorney without court involvement does not carry the same weight as an order issued by a judicial officer in resolution of specific dispute); *see also Food Lion v. United Food & Commerical Workers Int'l Union*, 103 F.3d 1007, 1016-1019 (3d. Cir. 1997); *Penwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983).

Here, as discussed above, the Shusters have complied with the Subpoenas by turning over to Defendants all documents in there possession or control, including Joseph Shuster's will, probate documents and the Shusters' Notice of Termination. Toberoff Decl., ¶ 18. They have promptly made themselves available to be deposed and remain ready to be deposed. Toberoff Decl., ¶¶ 12, 13, 16, 18. No "clear and convincing" evidence of non-compliance or bad faith exists on the part of the Shusters. There is nothing further they can do to comply with the Subpoenas. Lastly, the Shusters should not be held in contempt by the Court unless and until they are found to have disobeyed an enforcement order from the Court, not merely Defendants' overbroad and overreaching Subpoenas[4]

## VI.    ATTORNEYS FEES

Despite the Shuster's clear and complete compliance with the Subpoenas and multiple efforts by Toberoff to meet and confer to address Defendants' concerns,

---

[4] In *SEC v. Lewis (In re Motion for Protective Order)*, 2006 U.S. Dist. LEXIS 29161 ( D.N.M. 2006), despite a subpoenaed law firm maintaining its blanket attorney-client privilege objection even though it failed to "provide any description whatsoever of the basis of the attorney-client privilege claim," the court refused to hold the law firm in contempt. *Id. at* *50-51.

22

Exhibit C
43

Defendants aggressively pressed ahead with their unnecessary motion to compel and seek attorneys' fees for doing so. This request should be denied in light of the Shusters' cooperative behavior, and like Defendants' contempt motion, should only be granted if the Shusters fail to comply with a further discovery order, if any, issued by this Court.

## VII.    CONCLUSION

For the foregoing reasons, the Shusters respectfully request that this Court deny Defendants' Motion to Compel, Motion for Contempt and Motion for Attorneys' Fees in their entirety.

Respectfully submitted,

JAY GOODMAN, ATTORNEY AT LAW
A Professional Corporation

By _____
D. Scott Riedel, Esq.
2019 Galisteo, #C3
Santa Fe, New Mexico 87505
Tel: (505) 989-8117
Fax: (505) 989-3440


Marc Toberoff
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
(310) 246-3333
(310) 246-3101


*Counsel for Mark Peary and Jean Adele Peavy*

23

Exhibit C
44

## CERTIFICATE OF SERVICE

I certify that on the 25 day of August, 2006, true and correct copies of

1. MARK PEARY AND JEAN ADELE PEAVY'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM, FOR CONTEMPT, AND FOR ATTORNEYS FEES

2. DECLARATION OF MARC TOBEROFF, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTSPURSUANT TO SUBPOENA DUCES TECUM, FOR CONTEMPT, AND FOR ATTORNEYS FEES

were served by regular US Mail postage prepaid to the following individuals:

Benjamin Allison
SUTIN THAYER & BROWNE, P.C.
Post Office Box 2187
Santa Fe, NM 87504

Patrick T. Perkins
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516

*Counsel for Movants*

JAY GOODMAN, ATTORNEY AT LAW, P.C.

BY: _____
        D. Scott Riedel, Esq.

Exhibit C
45