# EXHIBIT 27

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

ALVIN FROSS
RONALD J. LEHRMAN
STEPHEN BIGGER
MICHAEL I. DAVIS
ROGER L. ZISSU
MARIE V. DRISCOLL
RICHARD Z. LEHV
CAROL F. SIMKIN
MARGARET F. GOLDSTEIN
DAVID W. EHRLICH
SUSAN UPTON DOUGLASS
JANET L. HOFFMAN
PETER J. SILVERMAN
LAWRENCE ELI APOLZON
BARBARA A. SOLOMON
LISA PEARSON
MARK D. ENGELMANN
NADINE H. PARKER JACOBSON
ANDREW N. FREDBECK
GEORGES NAHITCHEVANSKY
CRAIG S. MENDE
PATRICK T. PERKINS
J. ALLISON STRICKLAND

866 UNITED NATIONS PLAZA
AT FIRST AVENUE & 48TH STREET
NEW YORK, N.Y. 10017

TELEPHONE: (212) 813-5900
FACSIMILE: (212) 813-5901
E-MAIL: fzlz@frosszelnick.com

RECEIVED
FEB 0 4 2002

JAMES D. SILBERSTEIN
RUTH LAZAR
COUNSEL

MICHELLE P. FOXMAN
ROBERT A. BECKER
TAMAR NIV BESSINGER
ANGELA KIM
JOHN P. MARGIOTTA
LYDIA T. GOBENA
DIANE B. MELNICK
MICHAEL CHIAPPETTA
DANA WRUBEL
JESSICA MANN
JOSEPH R. MOLKO
EVAN GOURVITZ
CARLOS CUCURELLA
NANCY C. DICONZA
TANYA FICKENSCHER
ZOE HILDEN
LAUREN J. MANDELL

February 1, 2002

**VIA FEDEX**

Kevin Marks, Esq.
Gang, Tyre, Ramer & Brown, Inc.
132 South Rodeo Drive
Beverly Hills, CA 90212-2403

     Re:  Superman

Dear Kevin:

    I am pleased to enclose a draft agreement between your clients and DC Comics concerning the Superman property. As our clients have not seen this latest version of the agreement, I must reserve their right to comment. In addition, you will note that the draft agreement makes reference to certain "Stand Alone Assignments." We are finalizing those and, as soon as they are ready we will forward them to you.

                             Very truly yours,

                             Patrick T. Perkins

Encls.

cc:  John Schulman, Esq.
      Paul Levitz
      Lillian J. Laserson, Esq.
      Carol F. Simkin, Esq.

I:\PPERKINS\DCC\SUPER\020201 Ltr-K. Marks.doc

**000000754**

Exhibit 27
569

02/01/02
4:51 PM

## AGREEMENT

AGREEMENT made this __ day of ___ 2002, by and between DC COMICS, a New

York General Partnership comprised of Time Warner Entertainment, Co. L.P. and Warner

Communications, Inc. (hereinafter "DC COMICS"), having its principal office at 1700

Broadway, New York, New York 10019, and Joanne Siegel, residing at ~~13900 Panay Way, R-~~ 13929 Marquesas Way #201-A,

~~115,~~ Marina del Rey, CA 90292, Laura Siegel Larson, residing at 6400 Pacific Avenue, No. 106,

Playa del Rey, CA 90293, the Estate of Jerome Siegel, (collectively "SIEGEL") and Michael

Siegel, residing at _____ (except as otherwise indicated, hereinafter Joanne Siegel,

Laura Siegel Larson and Michael Siegel are referred to collectively and individually as "The

SIEGELS").

## DEFINITIONS

1.      The term "Works" is hereinafter defined collectively and individually as follows:

any and all works, creations, material, matter, contributions, adaptations, modifications,

derivative works and all other works of any kind whatsoever, including but not limited to all

stories, literary and/or graphic works, episodes, elements, characters, treatments, likenesses,

images, depictions, drawings, renderings, sketches, notes and/or indicia, and/or any component,

draft of, or part or portion of any of the foregoing, regardless of whether or not subject to

copyright protection, regardless of whether or not published, regardless of whether or not any

person knows of the existence of the foregoing, wherever in the world created, and whenever

created , and regardless of the medium or form of expression or exploitation (whether or not now

existing).

000000755

Exhibit 27
570

2.     The term "SUPERMAN" is hereinafter defined as the original comic book character now known as "SUPERMAN," jointly created by JEROME SIEGEL (the writer) and JOSEPH SHUSTER (the artist), whether or not called Superman at the time of creation.

3.     The phrase "SUPERMAN Works" is hereinafter defined collectively and individually as follows: all Works (including but not limited to SUPERMAN and the first story in which SUPERMAN appeared in Action Comics No. 1, dated June, 1938, "Action Comics No. 1" and in Action Comics No. 2, dated July, 1938, "Action Comics No. 2") that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or preceded, lead to and/or contributed in any manner to the development of, or derive from, are based upon and/or arise out of SUPERMAN, that were ever created (in whole, in part or jointly) by JEROME SIEGEL, regardless of whether they were created for or provided or furnished to, or paid for by DC COMICS or any of its predecessor(s), regardless of whether they were created on a work for hire basis for DC COMICS, or any of its predecessor(s), regardless of whether any or all rights therein were granted by JEROME SIEGEL to DC COMICS, its predecessors, or any other entity, and regardless of whether The SIEGELS have sought to terminate any such grant. The phrase "SUPERMAN Works" therefore includes, by way of example only, and without any limitation whatsoever, any and all Works referred to in the "Superman Notices" referenced infra in definition paragraph number __.

4.     The phrase "ACTION COMICS NO. 1 SUPERMAN Works" is hereinafter defined collectively and individually as those Works comprising the SUPERMAN Works created simultaneously with or before the creation of, whether or not included in, Action Comics No. 1 and/or Action Comics No. 2.

**000000756**

2

Exhibit 27
571

5.    The phrase "POST ACTION COMICS NO. 1 SUPERMAN Works" is hereinafter defined collectively and individually as those Works comprising the SUPERMAN Works created after the creation of Action Comics No. 1 and Action Comics No. 2.

6.    The phrase "SUPERMAN Notices" is hereinafter defined as the seven (7) notices SIEGEL served upon DC COMICS purporting to terminate pursuant to Section 304 (c) of the U.S. Copyright Act as of April 16, 1999, grants by Jerome Siegel to DC COMICS's predecessor(s) of copyright rights in some or all of the SUPERMAN Works (copies of the SUPERMAN Notices, excluding the voluminous listing of SUPERMAN Works referenced therein, are attached hereto as Exhibits A - G).

7.    The phrase "SUPERMAN Derivative Works" is hereinafter defined as collectively and individually as follows:  all Works that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or derive from, are based upon and/or arise out of the ACTION COMICS NO. 1 SUPERMAN Works and all Works that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or preceded, lead to and/or contributed in any manner to the development of, or derive from, are based upon and/or arise out of the POST ACTION COMICS NO. 1 SUPERMAN Works, that were not created (in any part) by JEROME SIEGEL, regardless of who created them, regardless of whether they were created for or provided or furnished to, or paid for by DC COMICS or any of its predecessor(s), regardless of whether they were created on a work for hire basis for DC COMICS or any of its predecessor(s), and regardless of whether any or all rights therein were granted to DC COMICS or any of its predecessor(s).

8.    The phrase "SUPERMAN Marks" is hereinafter defined as all trade and service marks, including but not limited to characters, character names, fictional elements, words,

000000757

2

Exhibit 27
572

phrases, logos, images, symbols, indicia and/or other designations of origin of any kind, and all

goodwill therein, throughout the world, in any way related or appurtenant to, associated with, or

arising out of or relating to the use and/or exploitation of the SUPERMAN Works and/or the

SUPERMAN Derivative Works.

      9.    The term "SUPERMAN Property" is hereinafter defined to mean the following:

(i) each of the pre-existing characters and elements which first appeared in the SUPERMAN

Works; and (ii) such other characters and/or elements, if any, that may be created hereafter and

meet the following criteria:

          A.    (1)  First appearance in a story or programming (including comics,

television, film and other media) with Superman and/or Superman logo as

predominant component of its title; provided, however, that planted spin-

offs (as such term is understood in the entertainment industry), including

without limitation Jack Kirby's Fourth World and its related characters,

shall be excluded; or

(2)  First appearance in a story or programming (including comics,

television, film and other media) without Superman and/or Superman logo

as predominant component of its title and which, if not authorized by DC

COMICS, would constitute an infringement of the copyright or trademark

of DC COMICS in or to either any of the characters or elements covered

under subparagraph 9(A)(1) above or any of the characters or elements

which appear in the SUPERMAN Works; and

          B.    Such character and/or element is sufficiently developed so as to be

distinguished from mere stock characters or scenes a faire.

000000758

Exhibit 27
573

10.    The term "SPECTRE" is hereinafter defined as the original character known as "SPECTRE," created by JEROME SIEGEL.

11.    The phrase "SPECTRE Works" is hereinafter defined collectively and individually as follows:  all Works (including but not limited to SPECTRE and the first Spectre stories launched: (1) in an ad in More Fun Comics issue No. 51, dated January 1940 (the appearance of the SPECTRE character); (2) in More Fun Comics issue No. 52, dated February 1940 (illustrated 10-page comic book story); (3) in More Fun Comics issue No. 53, dated March 1940 (illustrated 10 page comic book story); and (4) in More Fun Comics issue No. 54, dated April 1940 (illustrated 10 page comic book story)) that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or preceded, lead to and/or contributed in any manner to the development of, or derive from, are based upon and/or arise out of SPECTRE, that were ever created (in whole, in part or jointly) by JEROME SIEGEL, regardless of whether they were created for or provided or furnished to, or paid for by DC COMICS or any of its predecessor(s), regardless of whether they were created on a work for hire basis for DC COMICS, or any of its predecessor(s), regardless of whether any or all rights therein were granted by JEROME SIEGEL to DC COMICS, its predecessors, or any other entity, and regardless of whether The SIEGELS have sought to terminate any such grant.  The phrase "SPECTRE Works" therefore includes, by way of example only, and without any limitation whatsoever, any and all Works referred to in the "Spectre Notices" referenced _infra_ in definition paragraph number __.

12.    The phrase "MORE FUN COMICS SPECTRE Works" is hereinafter defined collectively and individually as those Works comprising the SPECTRE Works created

000000759

5

Exhibit 27
574

simultaneously with or before the creation of, whether or not included in More Fun Comics issue No. 51, dated January 1940 and More Fun Comics Issue No. 52, dated February 1940.

13.    The phrase "POST MORE FUN COMICS SPECTRE Works" is hereinafter defined collectively and individually as those Works comprising the SPECTRE Works created after the creation of More Fun Comics issue No. 52, February 1940.

14.    The phrase "SPECTRE Notices" is hereinafter defined as the four (4) notices SIEGEL served upon DC COMICS purporting to terminate as of November 27, 2000 pursuant to Section 304 (c) of the U.S. Copyright Act, grants by Jerome Siegel to DC COMICS' predecessor(s) of copyright rights in some or all of the SPECTRE Works (copies of the SPECTRE Notices are attached hereto as Exhibits _ - _.).

15.    The phrase "SPECTRE Derivative Works" is hereinafter defined as collectively and individually as follows: all Works that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or derive from, are based upon and/or arise out of the MORE FUN COMICS SPECTRE Works and all Works that in any manner depict, include, embody, refer to, describe, relate to, concern, are associated with, or preceded, lead to and/or contributed in any manner to the development of, or derive from, are based upon and/or arise out of the POST MORE FUN COMICS SPECTRE Works, that were not created (in any part) by JEROME SIEGEL, regardless of who created them, regardless of whether they were created for or provided or furnished to, or paid for by DC COMICS or any of its predecessor(s), regardless of whether they were created on a work for hire basis for DC COMICS or any of its predecessor(s), and regardless of whether any or all rights therein were granted to DC COMICS or any of its predecessor(s).

**000000760**

6

Exhibit 27
575

16.    The phrase "SPECTRE Marks" is hereinafter defined as all trade and service marks, including but not limited to characters, words, phrases, logos, images, symbols, indicia and/or other designations of origin of any kind, and all goodwill therein, throughout the world, in any way related or appurtenant to, or arising out of or relating to the use and/or exploitation of the SPECTRE Works and/or the SPECTRE Derivative Works.

17.    The term SPECTRE Property is hereinafter defined to mean the following: (i) each of the pre-existing characters which first appeared in the SPECTRE Works; and (ii) such other characters and/or elements, if any, that may be created hereafter and meet the following criteria:

A.  (1)  First appearance in a story or programming (including comics, television, film and other media) with Spectre as predominant component of its title; provided, however, that planted spin-offs (as such term is understood in the entertainment industry), including without limitation Jack Kirby's Fourth World and its related characters, shall be excluded; or

(2)  First appearance in a story or programming (including comics, television, film and other media) without Spectre as predominant component of its title and which, if not authorized by DC COMICS, would constitute an infringement of the copyright or trademark of DC COMICS in or to either any of the characters or elements covered under subparagraph 17(A)(1) above or any of the characters or elements which appear in the SPECTRE Works; and

B.  Such character and/or element is sufficiently developed so as to be distinguished from mere stock characters or scenes a faire.

7

000000761

Exhibit 27
576

18.    The phrase "OTHER SIEGEL Works" is hereinafter defined individually and collectively as those Works, other than the SUPERMAN Works or the SPECTRE Works, if any, that were created in whole or in part by Jerome Siegel, with respect to which he received any payment or compensation from DC COMICS and/or its predecessor(s), regardless of the terms surrounding, or amount of, such payment or compensation or whether such Works were created on a work-for-hire basis for DC COMICS and/or its predecessor(s) and regardless of whether or not any or all rights were granted by Jerome Siegel to DC COMICS and/or its predecessor(s) in such Works, and regardless of whether The SIEGELS have sought to terminate any such right.

19.    The phrase the "OTHER Marks" is hereinafter defined as all trade and service marks, including but not limited to characters, words, phrases, logos, images, symbols, indicia and/or other designations of origin of any kind, and all goodwill therein, throughout the world, in any way related or appurtenant to, or arising out of, or relating to the use and/or exploitation of the OTHER SIEGEL Works.

20.    The phrase "The WORKS" is hereinafter defined collectively and individually as the SUPERMAN Works, the SPECTRE Works, the SUPERMAN Derivative Works, the SPECTRE Derivative Works and the OTHER SIEGEL Works.  (It is intended that the definition of The WORKS includes all elements, parts and/or portions of the SUPERMAN Works, the SPECTRE Works, the SUPERMAN Derivative Works, the SPECTRE Derivative Works and the OTHER SIEGEL Works and all material and/or matter contained therein.)

21.    The phrase "The MARKS" is hereinafter defined collectively and individually as the SUPERMAN Marks, the SPECTRE Marks and the OTHER Marks.

22.    The "Tolling Agreement" refers to the Agreement dated April 6, 2000 between DC COMICS and the SIEGELS tolling the statute of limitations claims of the respective parties.

000000762

8

Exhibit 27
577

23.    The terms "Licensing" and "License(s)" refer to DC COMICS authorizing any third party to commercially exploit the SUPERMAN Property and the SPECTRE Property.

24.    The term "Revenues" is hereinafter defined as all amounts actually received by DC COMICS in United States Dollars from the Licensing of rights in the SUPERMAN Property and the SPECTRE Property, less any unrecouped foreign taxes, import duties and/or currency exchange losses.  Revenues shall not include any sums received by DC Comics for providing any services or materials in connection with the licensing of rights in the SUPERMAN Property and the SPECTRE Property.  Any advance against royalties paid to DC COMICS by a licensee shall be considered actually received by DC COMICS when the advance becomes nonreturnable. Notwithstanding the foregoing, in such cases where an advance is paid in respect of multiple properties which include the SUPERMAN Property or the SPECTRE Property, the advance shall be considered received when and as it is allocated among all such properties.

25.    The term "Net Sales" is hereinafter defined as the number of copies or units which are actually sold by DC COMICS through DC COMICS' wholesale and retail distribution channels, less the number of copies or units which are returned, damaged, lost, distributed by DC COMICS as premiums or promotions and/or distributed to uncollectible accounts or sold at discounts in excess of seventy percent (70%) off of cover price.

26.    The term "Dispute" shall mean any and all controversies, Claims or disputes arising out of or related to The WORKS, The MARKS, or to this Agreement or to the Stand Alone Assignments, or any one of them, or the interpretation, performance or breach thereof, including, but not limited to, alleged violations of the state or federal statutory or common law rights or duties.

**000000763**

9

Exhibit 27
578

27.    "Reversionary" rights shall mean:

    a.    any and all reversionary rights and interests similar in effect to and including those referred to in the proviso to section 5(2) of the U.K. Copyright Act 1911 and/or those referred to in paragraph 27 of Schedule 1 to the U.K. Copyrights, Designs and Patents Act 1988;

    b.    any and all reversionary rights and interests similar in effect to and including those referred to in Section 14 of the Canadian Copyright Act;

    c.    any and all termination rights and renewals and extensions of the term of copyright similar in effect to and including those provided for under the laws of the U.S.;

    d.    any all reversionary rights and interests similar in effect to and including those which arise in countries with compulsory heirs or inheritance provisions such as in Columbia, Spain, Cuba or Panama;

    e.    any and all rights of whatsoever kind or nature (whether now existing or hereafter created or conferred) similar in effect to reversionary rights which have vested absolutely or contingently or which might hereafter vest absolutely or contingently by operation of law or otherwise in any part of the world in The SIEGELS and/or any heir, successor, assign or personal representative of The SIEGELS;

    f.    any and all rights of whatsoever kind or nature (whether now existing or hereafter created or conferred) including any copyright rights or rights in the nature of copyright rights which at any time revert to or are acquired by The SIEGELS or any heir, successor, assign or personal representative of The SIEGELS for any reason at any time and/or which form part of or accrue to Jerome Siegel's residuary estate;

**000000764**

10

Exhibit 27
579

g.    in each case, for all countries or jurisdictions, present and future, throughout the world, affected by such rights or in which such rights exist, for the full term thereof including all renewals, extensions, revisions, and revivals thereof, whenever arising and including all vested and future reversionary rights whether now existing or hereafter created or conferred and together with all rights of action (including without limitation the right to use for past infringements), powers and benefits belonging or accrued to the foregoing or any of them or to The SIEGELS or any heir, successor, assign or personal representative of The SIEGELS in respect thereof.

<u>WHEREAS CLAUSES</u>

WHEREAS, it is the parties' intent and DC COMICS' desire to acknowledge and honor the contributions made by Jerome Siegel by granting to The SIEGELS the benefits and payments provided herein; and

WHEREAS, it is the parties' intent and The SIEGELS' desire to vest in DC COMICS, forever, exclusive enjoyment and control over and all right, title and interest in, and arising out of The WORKS and The MARKS, including all future use thereof by DC COMICS  and any and all future versions and adaptations thereof in any form or medium, including all rights The SIEGELS own, have ever owned or could ever claim to own on any basis in and to The WORKS and The MARKS (including any rights The SIEGELS could claim as members of the public, whether upon the expiration of any copyrights relating to The WORKS or otherwise, and/or whether upon the cancellation, loss or abandonment of any of The MARKS), including but not limited to all copyright and trademark rights and good will associated therewith throughout the world, whenever and wherever any of said rights arise; and

**000000765**

Exhibit 27
580

WHEREAS, for the purposes of this Agreement and to effectuate the parties' intent as set forth herein, the parties acknowledge that the SUPERMAN Derivative Works and the SPECTRE Derivative Works were created as works made for hire for DC COMICS and/or its predecessor(s) in interest but that if for any reason, any one of the SUPERMAN Derivative Works or the SPECTRE Derivative Works, or any portion thereof was not a work made for hire for any reason whatsoever: (i) the SIEGELS hereby simultaneously terminate any existing grant therein, if any, and make a new grant to DC COMICS of all rights without limitation whatsoever throughout the world therein, and (ii) such shall have no effect whatsoever on the fact that the remaining SUPERMAN Derivative Works and/or SPECTRE Derivative Works, or any portion thereof are works made for hire;

WHEREAS, for the purposes of this Agreement and to effectuate the parties' intent as set forth herein, the parties wish simultaneously to terminate contractually all grants by Jerome Siegel, and or any other person or entity claiming rights directly or indirectly through Jerome Siegel, to DC COMICS and/or its predecessor(s) relating to the SUPERMAN Works and SPECTRE Works to the extent, for whatever reason whatsoever such grants were not terminated by the SUPERMAN AND SPECTRE Notices, and to make a new grant to DC COMICS of all rights, without any limitation whatsoever throughout the world with respect to the SUPERMAN Works and SPECTRE Works; and

WHEREAS, for the purposes of this Agreement and to effectuate the parties' intent as set forth herein, the parties hereby wish simultaneously to terminate contractually all grants (if any) relating to the OTHER SIEGEL Works by Jerome Siegel and or any other person or entity claiming rights directly or indirectly through Jerome Siegel, to DC COMICS and/or its

**000000766**

12

Exhibit 27
581

predecessor(s) and make a new grant to DC COMICS of all rights, without any limitation whatsoever throughout the world with respect to such works, and

WHEREAS, it is the parties' intent that this Agreement supersede all prior agreements, negotiations, and/or understandings between DC COMICS and/or its predecessors on the one hand and Jerome Siegel and/or The SIEGELS on the other;

NOW, THEREFORE, in consideration of good and valuable consideration, receipt of which The SIEGELS hereby acknowledge, it is mutually agreed by and between The SIEGELS and DC COMICS as follows.

TERMS

1.   GRANT OF RIGHTS.  The parties expressly agree that in order to effectuate the parties' intent as set forth herein, the "Stand Alone Assignment" documents attached hereto as Exhibits -__- (hereinafter "Stand Alone Assignment(s)") shall be executed simultaneously with the execution of this Agreement.  The parties further agree that upon execution of this Agreement each of the Stand Alone Assignments shall be a separate transfer of rights and forever after shall be irrevocable and remain effective, independent of, and separate and apart from the other text and provisions set forth in this Agreement and shall have full force and effect, irrevocably and in perpetuity, regardless of the enforceability, validity, invalidity of or compliance by DC COMICS with any of such other text and provisions.

a)   Grant Of All Rights In The SUPERMAN Works.

i)   Grant Of All Rights In The ACTION COMICS NO. 1 SUPERMAN Works. If for any reason whatsoever any grant made at any time by Jerome Siegel, or any other person or entity claiming rights directly or indirectly through him in the SUPERMAN Works, to DC COMICS and/or its predecessor(s) in interest concerning the

13

**000000767**

Exhibit 27
582

ACTION COMICS NO. 1 SUPERMAN Works was not terminated by the SUPERMAN Notices, the parties hereby agree for the purpose of this Agreement that, contingent upon The SIEGELS' compliance with the other provisions in this sub-paragraph, and their execution of the Stand Alone Assignment attached hereto as Exhibit __, simultaneous with their execution of this Agreement, The SIEGELS have the right to, and are, hereby, contractually terminating any grant made by Jerome Siegel (and/or any such other person or entity) at any time to DC COMICS and/or its predecessor(s) in interest concerning the ACTION COMICS NO. 1 SUPERMAN Works. In any event, The SIEGELS hereby simultaneously and irrevocably and in perpetuity make a new grant, transfer and assignment and relinquish to DC COMICS, effective as of April 15, 1999, upon the signing hereof, and forever after, all rights, title and interest of every kind whatsoever, including but not limited to all copyright rights, throughout the world, in and to the ACTION COMICS NO. 1 SUPERMAN Works, for all terms of protection, including any renewals and extensions thereof, and all claims or causes of action of any kind relating or appurtenant thereto that The SIEGELS or Jerome Siegel, or those claiming through any of them, own, or have ever owned or claimed, or could possibly ever claim, including as members of the public when the copyright(s) or any of them expire in the SUPERMAN Works or SUPERMAN Derivative Works.

       ii)   <u>Grant Of All Rights In The POST ACTION COMICS NO. 1</u>

<u>SUPERMAN Works.</u> The SIEGELS acknowledge that all of the POST ACTION COMICS NO. 1 SUPERMAN Works were created as works made for hire for DC COMICS's predecessor(s)-in-interest. The SIEGELS, therefore, acknowledge that they do not have and will never come into any rights, title or interest in such works or any part thereof and thus, hereby, expressly waive and release any and all claim of any rights or interest therein. If for any reason, the POST

14

**000000768**

Exhibit 27
583

ACTION COMICS NO. 1 SUPERMAN Works are deemed not to be works made for hire, and

to the extent, for whatever reason whatsoever that any grant made at any time by Jerome Siegel,

or any other person or entity claiming rights directly or indirectly through him in the

SUPERMAN Works, to DC COMICS and/or its predecessor(s) in interest concerning the POST

ACTION COMICS NO. 1 SUPERMAN Works was not terminated by the SUPERMAN Notices,

the parties hereby agree for the purpose of this Agreement that, contingent upon The SIEGELS'

compliance with the other provisions in this subparagraph, and their execution of the Stand

Alone Assignment attached hereto as Exhibit __, simultaneous with their execution of this

Agreement, The SIEGELS have the right to, and are, hereby, contractually terminating any grant

made by Jerome Siegel (and/or any such other person or entity) at any time to DC COMICS

and/or its predecessor(s) in interest concerning the POST ACTION COMICS NO. 1

SUPERMAN Works. In any event, The SIEGELS hereby simultaneously and irrevocably and in

perpetuity make a new grant, transfer and assignment and relinquish to DC COMICS, effective

April 15, 1999 upon the signing hereof, and forever after, all rights, title and interest of every

kind whatsoever, including but not limited to all copyright rights, throughout the world, in and to

the POST ACTION COMICS NO. 1 SUPERMAN Works, for all terms of protection, including

all renewals and extensions thereof, and all claims or causes of action of any kind relating or

appurtenant thereto that The SIEGELS or Jerome Siegel or those claiming through any of them,

own, or have ever owned or claimed, or could possibly ever claim, including as members of the

public when the copyright(s) or any of them expire in the SUPERMAN Works or SUPERMAN

Derivative Works.

      b)  Acknowledgement/Grant Of All Rights In The SUPERMAN Derivative

Works.  The SIEGELS hereby represent, warrant and acknowledge that they own no rights of

15

**000000769**

Exhibit 27
584

any kind and can never claim any rights of any kind in the SUPERMAN Derivative Works as such works were prepared as works made for hire for DC COMICS and its predecessors in interest and that all such rights are owned solely and exclusively by DC COMICS. However, to the extent The SIEGELS own, have ever owned or could possibly ever claim any rights in the SUPERMAN Derivative Works or in any portion thereof, including as members of the public anywhere in the world when the copyright(s) (or any of them) in the SUPERMAN Works or SUPERMAN Derivative Works expire, as set forth in the Stand Alone Assignment attached as Exhibit _ hereto, they hereby irrevocably and in perpetuity grant, transfer, assign and relinquish to DC COMICS, effective April 15, 1999 upon the signing hereof, and forever after, all rights, title and interest throughout the world in and to the SUPERMAN Derivative Works, including but not limited to all copyright rights, for all terms of protection, including any renewals or extensions thereof, and all claims or causes of action of any kind relating or appurtenant thereto.

      c)  <u>Acknowledgement/Grant Of All Rights In The SUPERMAN Marks.</u> The SIEGELS hereby represent, warrant and acknowledge that they own no rights of any kind and can never claim any rights of any kind in the SUPERMAN Marks and that all such rights are owned solely and exclusively by DC COMICS. However, to the extent The SIEGELS own, have ever owned or could possibly ever claim any rights in the SUPERMAN Marks for whatever reason whatsoever (including as members of the public anywhere in the world should the SUPERMAN Marks or any one of them become cancelled, abandoned or otherwise lost to DC COMICS), they hereby irrevocably and in perpetuity grant, transfer, assign and relinquish to DC COMICS, effective April 15, 1999 upon the signing hereof, and forever after, all rights, title and interest in the SUPERMAN Marks, including any good will associated therewith and all claims or causes of action of any kind relating or appurtenant thereto.

**000000770**

16

Exhibit 27
585

### d) Grant Of All Rights In The SPECTRE Works.

#### i)    Grant Of All Rights In The MORE FUN COMICS SPECTRE

Works. If for any reason whatsoever any grant made at any time by Jerome Siegel, or any other

person or entity claiming rights directly or indirectly through him in the SPECTRE Works to DC

COMICS and/or its predecessor(s) in interest concerning the MORE FUN COMICS SPECTRE

Works was not terminated by the SUPERMAN Notices, the parties hereby agree for the purpose

of this Agreement that, contingent upon The SIEGELS' compliance with the other provisions in

this sub-paragraph, and their execution of the Stand Alone Assignment attached hereto as Exhibit

__, simultaneous with their execution of this Agreement, The SIEGELS have the right to, and

are, hereby, contractually terminating any grant made by Jerome Siegel (and/or any such other

person or entity) at any time to DC COMICS and/or its predecessor(s) in interest concerning the

MORE FUN COMICS SPECTRE Works. In any event, The SIEGELS hereby simultaneously

and irrevocably and in perpetuity make a new grant, transfer and assignment and relinquish to

DC COMICS, effective as of November 23, 2000, upon the signing hereof, and forever after, all

rights, title and interest of every kind whatsoever, including but not limited to all copyright

rights, throughout the world, in and to the MORE FUN COMICS SPECTRE Works, for all terms

of protection, including any renewals and extensions thereof, and all claims or causes of action

of any kind relating or appurtenant thereto that The SIEGELS or Jerome Siegel, or those

claiming through any of them, own, or have ever owned or claimed, or could possibly ever

claim, including as members of the public when the copyright(s) or any of them expire in the

SPECTRE Works or SPECTRE Derivative Works.

#### ii)    Grant Of All Rights In The POST MORE FUN COMICS

SPECTRE Works. The SIEGELS acknowledge that all of the POST MORE FUN COMICS

**000000771**

17

Exhibit 27
586

SPECTRE Works were as works made for hire for DC COMICS' predecessor(s)-in-interest. The SIEGELS, therefore, acknowledge that they have no and will never come into any such rights, title or interest in such works or any part thereof and thus, hereby, expressly waive and release any and all claim of any rights or interest therein. If for any reason, the POST MORE FUN COMICS SPECTRE Works are deemed not to be works made for hire, and to the extent, for whatever reason whatsoever that any grant made at any time by Jerome Siegel , or any other person or entity claiming rights directly or indirectly through him in the SPECTRE Works, to DC COMICS and/or its predecessor(s) in interest concerning the POST MORE FUN COMICS SPECTRE Works was not terminated by the SPECTRE Notices, the parties hereby agree for the purpose of this Agreement that, contingent upon The SIEGELS' compliance with the other provisions in this subparagraph, and their execution of the Stand Alone Assignment attached hereto as Exhibit __, simultaneous with their execution of this Agreement, The SIEGELS have the right to, and are, hereby, contractually terminating any grant made by Jerome Siegel (and/or any such other person or entity) at any time to DC COMICS and/or its predecessor(s) in interest concerning the POST MORE FUN COMICS SPECTRE Works. In any event, The SIEGELS hereby simultaneously and irrevocably and in perpetuity make a new grant, transfer and assignment and relinquish to DC COMICS, effective November 23, 2000,  upon the signing hereof, and forever after, all rights, title and interest of every kind whatsoever, including but not limited to all copyright rights, throughout the world, in and to the POST MORE FUN COMICS SPECTRE Works, for all terms of protection, including all renewals and extensions thereof, and all claims or causes of action of any kind relating or appurtenant thereto that The SIEGELS or Jerome Siegel or those claiming through any of them, own, or have ever owned or claimed, or

18

**000000772**

Exhibit 27
587

could possibly ever claim, including as members of the public when the copyright(s) or any of them expire in the SPECTRE Works or SPECTRE Derivative Works.

     e)   <u>Acknowledgement/Grant Of All Rights In The SPECTRE Derivative Works.</u> The SIEGELS hereby represent, warrant and acknowledge that they own no rights of any kind and can never claim any rights of any kind in the SPECTRE Derivative Works and that all such rights are owned solely and exclusively by DC COMICS. However, to the extent The SIEGELS own, have ever owned or could possibly ever claim any rights in the SPECTRE Derivative Works, including as members of the public anywhere in the world when the copyright(s) (or any of them) in the SPECTRE Works or SPECTRE Derivative Works expire, as set forth in the Stand Alone Assignment attached as Exhibit _ hereto, they hereby irrevocably and in perpetuity grant, transfer, assign and relinquish to DC COMICS, effective November 23, 2000, upon the signing hereof, and forever after, all rights, title and interest throughout the world in and to the SPECTRE Derivative Works, including but not limited to all copyright rights, for all terms of protection, including any renewals or extensions thereof, and all claims or causes of action of any kind relating or appurtenant thereto.

     f)   <u>Acknowledgement/Grant Of All Rights In The SPECTRE Marks.</u> The SIEGELS hereby represent, warrant and acknowledge that they own no rights of any kind and can never claim any rights of any kind in the SPECTRE Marks and that all such rights are owned solely and exclusively by DC COMICS. However, to the extent The SIEGELS own, have ever owned or could possibly ever claim any rights in the SPECTRE Marks for whatever reason whatsoever, (including as members of the public anywhere in the world should the SPECTRE Marks or any one of them become cancelled, abandoned or otherwise lost to DC COMICS) they hereby irrevocably and in perpetuity grant, transfer, assign and relinquish to DC COMICS,

000000773

19

Exhibit 27
588

effective November 23, 2000, upon the signing hereof, and forever after, all rights, title and interest in the SPECTRE Marks, including any good will associated therewith and all claims or causes of action of any kind relating or appurtenant thereto.

g) Grant Of All Rights In The OTHER SIEGEL Works. To the extent that any OTHER SIEGEL Works exist, the parties hereby agree for the purpose of this Agreement that, contingent upon The SIEGELS's compliance with the next sentence in this paragraph, The SIEGELS have the right to, and are, contractually terminating any grant made at any time to DC COMICS and/or its predecessor(s) in interest by Jerome Siegel, or any other person or entity claiming rights directly or indirectly through him in The OTHER SIEGEL Works, concerning such OTHER SIEGEL Works. In any event, The SIEGELS hereby simultaneously and irrevocably and in perpetuity make a new grant, transfer and assignment and relinquish to DC COMICS, effective upon the signing hereof, and forever after all rights, title and interest of every kind whatsoever, including but not limited to copyright rights, throughout the world for all terms of protection, including any renewals or extensions thereof, The SIEGELS or Jerome Siegel or those claiming through any of them, own, or have ever owned or claimed, or could possibly ever claim, including as members of the public with respect to the OTHER SIEGEL Works when the copyright(s) or any of them therein expire and all claims or causes of action of any kind relating or appurtenant thereto.

h) Acknowledgement/Grant Of All Rights In The OTHER Marks. The SIEGELS hereby represent, warrant and acknowledge that they own no rights of any kind and can never claim any rights of any kind in the OTHER Marks and that all such rights are owned solely and exclusively by DC COMICS. However, to the extent The SIEGELS own, have ever owned or could possibly ever claim any rights in the OTHER Marks for whatever reason

20

**000000774**

Exhibit 27
589

whatsoever, (including as members of the public anywhere in the world should the OTHER Marks or any one of them become cancelled, abandoned or otherwise lost to DC COMICS), they hereby irrevocably and in perpetuity grant, transfer, assign and relinquish to DC COMICS, effective April 15, 1999 upon the signing hereof, and forever after, all rights, title and interest in the OTHER Marks including any goodwill associated therewith and all claims or causes of action of any kind relating or appurtenant thereto.

    2.  <u>Payments To The Siegels And Other Financial And Related Terms.</u>  In complete consideration to The SIEGELS for any and all rights arising out of Jerome Siegel's contributions and authorship, and the other understandings and agreements herein made by The SIEGELS, DC COMICS shall pay (or shall provide, where applicable) to The SIEGELS the following:

    a)  <u>Initial Payments</u>

        i)  Upon full execution of this Agreement, a non-recoupable payment of $1,000,000;

        ii)  Upon full execution of this Agreement, an advance of $2,000,000 against The SIEGELS' royalty payments under ¶2(d) hereof;

        iii) Upon full execution of this Agreement , the payment of $250,000 heretofore made to the SIEGELS pursuant to the agreement of November 20, 2000 between SIEGEL and DC COMICS, receipt of which is hereby acknowledged by The SIEGELS, shall become non-recoupable.

    b)  <u>Annual Payments (Advances)</u>

        i)  For ten years commencing in 2002, payable on March 31st of each year, an annual, recoupable advance of $500,000 against any amount due to The SIEGELS hereunder.

21

**000000775**

Exhibit 27
590

ii)  Commencing in 2012, and annually thereafter, DC COMICS shall pay
The SIEGELS an advance payment calculated as follows:

(A) For each year in which DC COMICS has fully recouped all
previously paid advances, including those provided under subparagraphs 2(a)(ii) and 2(b)(i),  the
following year's advance shall be an amount equal to 75% of the average of the last three years
of The SIEGELS' royalty payments received under subparagraphs 2(d)(iii) hereof and 2(d)(iv)
hereof, payable on March 31st of each year and recoupable against any amount due to The
SIEGELS hereunder.

(B) For each year in which DC CCOMICS shall not have fully
recouped all previously paid advances, including those provided under subparagraphs 2(a)(ii)
and 2(b)(i), then until such time, if ever, as DC COMICS shall have fully recouped all the
foregoing advances, the following year's advance shall be an amount equal to the greater of
$100,000 or 25% of the average of the last three years of The SIEGELS' royalty payments
received under subparagraphs 2(d)(iii) hereof and 2(d)(iv) hereof, payable on March 31st of each
year and recoupable against any amount due to The SIEGELS hereunder.

iii)  All payments made under this paragraph shall be non-interest
bearing for the year in which each such payment is made. Thereafter, interest shall be calculated
at 100% of the prime interest rate charged from time to time by The Bank of America or, if such
institution is defunct, any other commercially recognized financial institution designated by DC
COMICS on amounts paid that remain unrecouped as of December 31st of the year of payment,
and shall be recoupable against any amount due to The SIEGELS hereunder.

**000000776**

22

Exhibit 27
591

iv)    The Siegels shall receive no further payments under this paragraph 2(b) after March 31 of the year immediately following the year in which the copyright in Action Comics No. 1 expires;

c)  Widow's Benefits

i)  For each year of Joanne Siegel's life, a non-assignable, non-transferable annual payment to Joanne Siegel of $135,000, payable periodically, but not less frequently than in equal monthly installments and The SIEGELS acknowledge such payments have been paid through 2001 and through _____, 2002;

ii)  Medical benefits will be provided to Joanne Siegel for the duration of her life with terms comparable to those provided to her in the past [include exhibit with details]. DC COMICS shall cooperate with Joanne Siegel in her efforts to obtain a medical identification card.

d)  Royalties

i)    Commencing for Revenues received on or after January 1, 2000;

ii)    6% of DC's Revenues from all media Licenses, including Licenses for motion pictures, television, radio, legitimate stage, sound recordings, and electronic media, for use of the SUPERMAN Property and/or the SPECTRE Property, except:

(A)    with respect to Licenses which commingle the SUPERMAN Property and/or the SPECTRE Property with another DC COMICS property similar in stature and used in a like manner (e.g., a Superman and Batman film video), the 6% shall be reduced to 3%;

(B) with respect to Licenses which commingle the SUPERMAN Property and/or the SPECTRE Property with multiple other DC COMICS properties and where

23

**000000777**

Exhibit 27
592

the SUPERMAN Property and/or the SPECTRE Property is neither the predominant creative element nor the sole predominant identity or title of the Media product in question (e.g., Justice League, Superfriends, Super Heroes), the 6% shall be reduced to 1.5%;

    iii) 6% of DC COMICS' Revenues from all publishing Licenses and merchandising Licenses for use of the SUPERMAN Property and/or the SPECTRE Property (including but not limited to product Licensing, promotional Licensing, and Licenses for the sale of entertainment goods and services such as theme parks or publications), except:

    (A) with respect to Licenses which commingle the SUPERMAN Property and/or the SPECTRE Property with another DC property and the properties are used and/or marketed in a like manner (e.g., a Superman and Batman action figure set), the 6% shall be reduced to 3%;

    (B) with respect to Licenses which commingle the SUPERMAN Property and/or the SPECTRE Property with multiple other DC properties and where the SUPERMAN Property and/or the SPECTRE Property is neither the predominant creative element nor the sole predominant identity or title of the product in question (e.g., Justice League, Superfriends, Super Heroes), the 6% shall be reduced to 1.5%;

    (C) with respect to Licenses wherein the licensee is granted rights to utilize a number of DC properties as well as the SUPERMAN Property and/or the SPECTRE Property, DC shall allocate Revenues derived from the License based on the actual sales of individual products based on information reasonably available from the licensee, but to the extent such information is not available, the 6% shall be reduced to not less than 1%;

    (D) with respect to merchandise relating to the SUPERMAN Property and/or the SPECTRE Property actually produced by DC Comics, 10% of Revenues

24

**000000778**

Exhibit 27
593

less costs, and subject to the pro rata allocations set forth above, shall be deemed DC Comics' Revenues for purposes of royalty computation.

iv)    1% of Revenues derived from extraordinary mixed Licenses, such as the License agreement dated April 1, 1998 by and between Warner Bros. Consumer Products, DC COMICS, Premier Parks Inc., and Six Flags Theme Parks Inc. (which involves numerous characters, including DC COMICS and Looney Toons characters), and other Licenses where Revenues from such licenses are not specifically attributed to royalties earned by the sale of character merchandise that can be directly allocated either to the SUPERMAN Property and/or the SPECTRE Property or to other properties in which The SIEGELS do not share, or are not specific fees calculated on a per ride or per show or other similar basis which can also be directly allocated either to the SUPERMAN Property and/or the SPECTRE Property or to other properties in which The SIEGELS do not share.

v)    1% of the cover price of Net Sales of DC COMICS' own editions of publications based on the SUPERMAN Property and/or the SPECTRE Property. A publication shall be considered based on the SUPERMAN Property when one of the characters that comprises the SUPERMAN Property shall be the title of the publication (e.g., Superman) or shall be the title of all the features within the publication (e.g., Action Comics containing only Superman stories). A publication shall be considered based on the SPECTRE Property when one of the characters that comprises the SPECTRE Property shall be the title of the publication (e.g., Spectre) or shall be the title of all the features within the publication (e.g., More Fun Comics containing only Spectre stories). However:

(A)    with respect to publications which commingle the SUPERMAN Property and/or the SPECTRE Property with multiple other DC properties and

25

000000779

Exhibit 27
594

where the SUPERMAN Property and/or the SPECTRE Property is neither the predominant creative element nor the sole predominant identity or title of the publication in question (e.g., Justice League, Superfriends, Superman and Batman team up stories), the 1% shall be reduced to ½ %;

        (B)    with respect to publications which are comprised of multiple stories and include one or more stories based on the SUPERMAN Property and/or the SPECTRE Property, the 1% shall be calculated on DC Comics' pro rata allocation of Net Sales among all stories which comprise the publication;

        (C)    with respect to publications which are sold to the public through DC COMICS' customary distribution channels and that do not have a cover price or a suggested retail price, the 1% (as may be reduced in accordance with subparagraphs (A) and (B) above) shall be calculated on an amount equal to twice the wholesale price received by DC COMICS on account of such publications.

        (D)    with respect to publications which are sold to the public through distribution channels other than DC COMICS' customary distribution channels, whether or not with a cover price or suggested retail price, the 1% (as may be reduced in accordance with subparagraphs (A) and (B) above) shall be calculated upon an amount equal to 10% of revenues received by DC COMICS on account of such publications;

        (E)    with respect to publications which are given away to the public without charge for a purpose other than for providing the equivalent of a public service announcement, or for advertising, promoting or publicizing DC COMICS and/or AOLTW Companies, their businesses, products or services, the 1% (as may be reduced in accordance

26

**000000780**

Exhibit 27
595

with subparagraphs (A) and (B) above) shall be calculated upon an amount equal to 10% of revenues received by DC COMICS on account of such publications.

(F)    there will be no reduction of the royalties payable hereunder for the appearance of characters from other properties in publications or stories based on the SUPERMAN Property and/or the SPECTRE Property when those other characters do not appear in the title of the publication or feature in question;

(G)    there will be no royalties payable hereunder when the SUPERMAN Property and/or the SPECTRE Property appears in publications or stories based on other properties and the characters do not appear in the title of the publication or feature in question.

vi)    All royalties hereunder shall cease to be earned by The SIEGELS for Revenues received after the expiration of the U.S. Copyright in Action Comics No. 1, except on motion pictures released in the last five years before the end of the copyright term of Action Comics No. 1, which shall earn royalties for five years from the date of the release, and except on television series, which shall earn royalties for three years from the last initial television broadcast of consecutive years of original episodes, even if such goes beyond the term of copyright of Action Comics No. 1. It is expressly understood and agreed that royalty payments made under this subparagraph shall be due only on Revenues received directly from the Licensing of exhibition and/or broadcast rights to the above motion pictures and television series and not from Revenues received indirectly, such as from the sale of any goods or provision of any services ancillary or collateral thereto.

vii) The SIEGELS acknowledge that DC COMICS, and/or other companies either wholly or partially controlled by DC COMICS' corporate parent AOL Time

27

**000000781**

Exhibit 27
596

Warner, Inc. (the "AOLTW Companies"), shall have the unlimited right to use the WORKS, and the MARKS in all forms of advertising, promotion and publicity to promote DC COMICS, AOLTW, their businesses, products and services without any payment obligation to The SIEGELS.

      e)    <u>Payment Designations</u>  All monies due The SIEGELS hereunder, except the widow's benefit, shall be paid in the following manner:

        47.5% to Joanne Siegel

        23.75 to Laura Siegel Larson

        23.75 to Michael Siegel

        5.00 to Gang Tyre Ramer & Brown

Notwithstanding the foregoing, each of the first three persons listed above may designate one or more persons to receive money due to him or her with a limit of up to three such persons during the life of DC COMICS' payment obligations hereunder.  Such designations shall not be an assignee/beneficiary of contract rights and shall carry no rights against DC Comics.

      f)    <u>Medical Insurance For Michael Siegel, Laura Siegel Larson, James Larson and Michael Larson</u>  DC Comics shall provide medical and dental insurance, or reimbursement for the cost of the same at DC COMICS's then current cost, for Laura Siegel Larson and Michael Siegel for their lives, and for James Larson and Michael Larson for the period of their minority (in the form of conventional insurance programs consistent with those offered to DC Comics employees, although it is understood that neither Laura Siegel Larson nor Michael Siegel is an employee of DC Comics) (Attached as Exhibit __ hereto is a copy of the medical coverage guidelines that currently apply).  DC Comics shall reimburse Laura Siegel Larson for premiums

000000782

28

Exhibit 27
597

she has paid for medical and dental insurance for her and James and Michael Larson from November 20, 2000 through the date of commencement of the insurance provided hereunder.

        g)     <u>Acknowledgement Of No Entitlement To Any Further Or Additional Payment</u>. The SIEGELS hereby acknowledge and agree that, but for the payments provided for in paragraph 2 herein, they are not entitled to, and never shall be entitled to, and shall not receive any other payments or consideration of any kind whatsoever from DC COMICS and/or its descendants, ancestors, dependents, heirs, predecessors, successors and assigns and/or past, present or future parents, subsidiaries, divisions, affiliates, related companies, executors, administrators, agents, trustees, affiliates, employees, officers, directors, partners, shareholders, consultants, representatives, servants, attorneys or licensees.

        3.  <u>DC COMICS Exclusive Ownership Of All Rights In The WORKS And The MARKS.</u> The SIEGELS acknowledge that, by the grant set forth in Paragraph 1 above, or otherwise, DC COMICS retains the sole and exclusive enjoyment and control and continuous, sole and exclusive ownership of, and sole and exclusive right to exploit The WORKS, to make such changes therein as DC COMICS in its sole discretion may determine, to exploit the same by means of any possible derivative works in any and all media or otherwise and to copyright such derivative works in its own name and the name of its nominee(s), for all terms of protection, including any renewals or extensions thereof, throughout the world, in all languages and forms, in all media now known or hereafter known, along with all claims or causes of action appurtenant thereto.  DC COMICS also retains the sole and exclusive enjoyment and control over, and sole ownership of, and sole and exclusive right to exploit The MARKS as DC COMICS in its sole discretion may determine, including all goodwill associated therewith, along with all claims or causes of action appurtenant to The MARKS.

**000000783**

29

Exhibit 27
598

4.  <u>The SIEGELS Reserve No Rights With Respect To The WORKS Or The MARKS.</u>

The SIEGELS acknowledge and agree that it is the intent of this Agreement to vest in DC

COMICS ____ exclusively, all rights of any kind in The WORKS and The MARKS, and all

future depictions and forms of exploitation based thereon, for DC COMICS's sole and exclusive

use, enjoyment, control, and benefit. The SIEGELS acknowledge and agree that effective with

the grant made herein, and regardless of anything that occurs or does not occur in the future,

including but not limited to, any change(s) in law(s) applicable in any manner whatsoever to this

Agreement or its terms, whether facts are, or evidence is, learned or claimed to have been

learned relating in any manner whatsoever to this Agreement or its terms, whether any person or

entity believes for whatever reason, justified or otherwise, that this Agreement and/or its terms

are in any manner just or unjust to The SIEGELS or any of them, and/or whether or not any of

the works that are the subject of this Agreement fall into the public domain for any reason

whatsoever, The SIEGELS have no right to use nor any right, title, or interest of any nature in

The WORKS or The MARKS. By way of example only and without limitation, as of the

effective date hereof and forever thereafter, The SIEGELS have no, and shall have no right to,

and covenant not to, exploit, or enter into any negotiations or transactions with respect to, or

related to, or to terminate any grant in or relating to The WORKS and/or The MARKS, and own

no and shall own no rights, title or interest, including but not limited to any Reversionary Rights,

of any kind whatsoever anywhere in the world in The WORKS and/or The MARKS or have any

right to use or authorize the use of any of the foregoing on any basis.

5.  <u>The SIEGELS Shall Not Challenge DC Comics's Rights Granted Hereunder Or</u>

<u>Under The Stand Alone Assignments.</u>  The SIEGELS covenant not to and shall not challenge,

make any claim against or concerning, or take any action, directly or indirectly, to interfere with

30

**000000784**

Exhibit 27
599

or reduce DC COMICS's ownership or exclusive benefit from, control over, and enjoyment of, or exclusive right to exploit The WORKS or The MARKS, including but not limited to the rights granted in The WORKS or The MARKS hereunder, or authorize, aid, abet or assist any other person or entity in doing so.

6. <u>No Right To Terminate New Grant.</u>  Further to paragraph 4, The SIEGELS hereby acknowledge that, by serving the SUPERMAN AND SPECTRE Notices, they have sought to terminate any and all earlier grants by Jerome Siegel to DC COMICS and/or its predecessors in interest in the SUPERMAN and SPECTRE Works pursuant to Section 304(c) of the Copyright Act and they know of no such grants which were not identified in said Notices. The SIEGELS further acknowledge and represent and warrant that, within the meaning of the Copyright Act, this Agreement is a new grant in the SUPERMAN and SPECTRE Works and OTHER SIEGEL Works (and the SUPERMAN and SPECTRE Derivative Works), and that pursuant to this Agreement, neither they nor anyone claiming rights under or through them or Jerome Siegel have any right(s) or will ever have any right(s) whatsoever to terminate the grants contained herein or to claim any Reversionary Rights in The WORKS or The MARKS under any provision of the Copyright Act, or under any other statute, regulation, common law principle, body of law or otherwise throughout the world. The SIEGELS hereby designate DC COMICS as the administrator, personal representative, and/or trustee of Jerome Siegel for the purposes of termination of copyright grants with respect to the SUPERMAN and SPECTRE Works.

7. <u>Third Party And Intercompany Licenses.</u>

a)    DC COMICS shall enter into any and all Licenses with unaffiliated third parties with respect to the SUPERMAN Property and the SPECTRE Property as DC COMICS, in its sole discretion, elects to and The SIEGELS shall have no right whatsoever to challenge any such

**000000785**

31

Exhibit 27
600

License or any of the terms thereof entered into by DC COMICS, its parents, affiliates,

subsidiaries, licensees or sub-licensees, for any reason whatsoever or to make any claim for

breach of this Agreement or liability hereunder on account of any such License or the terms

thereof.

      (b)     The SIEGELS hereby acknowledge their awareness and acceptance that DC

COMICS, in the normal course of its operations, does business on an arm's length basis with

AOLTW Companies and, in so doing, may License, *inter alia*, the SUPERMAN Property. The

SIEGELS shall have no right whatsoever to challenge any such License or any of the terms

thereof, on any basis, provided that: (i) the terms of such License are commercially reasonable

and fair as if entered into with an unaffiliated third party at the time entered into: or (ii) DC

COMICS' share of proceeds on account of such License are no less favorable to DC COMICS

than its share of proceeds in the applicable safe harbor agreement identified below which safe

harbor agreements are hereby acknowledged to be commercially reasonable and fair within the

meaning of subparagraph (i) above; or (iii) if DC COMICS' share of proceeds is less favorable to

DC COMICS than under the applicable safe harbor agreement identified below, if DC COMICS

pays The SIEGELS royalties based on imputed Revenues calculated pursuant to the financial

terms of the applicable safe harbor agreement identified below.  If DC COMICS enters into an

intercompany agreement that is not covered by an applicable safe harbor agreement or if DC

COMICS elects not to pay The SIEGELS royalties based on imputed Revenues calculated

pursuant to the financial terms of the applicable safe harbor agreement identified below, , then

The SIEGELS may challenge such agreement under the procedures set forth in the Dispute

Resolution section paragraph __, but only on the basis that the agreement is not commercially

reasonable and fair in light of all the circumstances.  In no event shall The SIEGELS have the

32

**000000786**

Exhibit 27
601

right to challenge any intercompany deal on the basis that it is a transaction with an AOLTW Company, or on the basis of whether or not there is an advance or guarantee, or because DC COMICS did not hold an auction in respect thereof.

       c)      The applicable safe harbor agreements are as follows:

          i)      For live action and animated feature length theatrical motion pictures: the larger of 5% of worldwide gross revenues or 7.5% of domestic gross revenues received by an affiliated motion picture distributor in the United States in U.S. Dollars from exploitation of the motion pictures, less taxes (including duties and other governmental fees), collection costs and trade association dues.  Notwithstanding the foregoing, in respect of Licenses of exhibition or distribution rights by means of video discs, cassettes or similar devices or delivered electronically to the consumer, gross revenues shall mean 20 % of (i) gross wholesale rental income received therefrom by an affiliated distributor and (ii) gross wholesale sales income received therefrom by an affiliated distributor, less a reasonable amount for returns.

          ii)      For animated direct to home video productions:  $80,000 for each hour of the direct to home video production (pro rata for longer or shorter) and 30% of Defined Proceeds received by an affiliated animation production company in the United States in U.S. Dollars from exploitation of the home video production.  As used herein, Defined Proceeds shall mean the then standard definition of Defined Proceeds used by Warner Bros. Animation (or any successor in interest thereto).

          iii)      For live action television programs: 3% of the first 1.5 million dollars of Gross Receipts received by an affiliated television production company in the United States in U.S. Dollars from exploitation of each program , and 4.5% of Gross Receipts on all

33

000000787

Exhibit 27
602

amounts in excess of 1.5 million dollars received by an affiliated television production company in the United States in U.S. Dollars from such exploitation. As used herein, Gross Receipts shall mean the then standard definition of Gross Receipts used by Warner Bros. Television (or any successor in interest thereto).

   iv) For animated television programs: a flat fee of $35,000 per episode for the first 65 episodes; $40,000 per episode thereafter; and 30% of Defined Proceeds received by an affiliated animation production company in the United States in U.S. Dollars from exploitation of the programs. As used herein, Defined Proceeds shall mean the then standard definition of Defined Proceeds used by Warner Bros. Animation (or any successor in interest thereto).

   v) For video games:

   (A) For products intended for PC/Mac platforms: 10% of net sales of up to 150,000 units of each product received by an affiliated video game company in the United States in U.S. Dollars, and 13% of such sales in excess of 150,000 units. As used in this paragraph (v), "net sales" shall mean the affiliated video game company's then standard definition of net sales.

   (B) For Products intended for all other platforms: 5% of net sales received by an affiliated video game company in the United States in U.S. Dollars for each such product.

   vi) For licensed merchandise excluding any of the other categories set forth in this safe harbor provision: Arrangement between DC COMICS and Warner Bros. Consumer Products, pursuant to which Warner Bros. Consumer Products deducts a 25% fee

000000788

34

Exhibit 27
603

from gross revenues received in the United States in U.S. Dollars on account of licensed

merchandise agreements, and remits 75% of such gross revenues to DC COMICS.

       vii)    For licensed publishing: 10% of net wholesale sales received by

an affiliated publishing company in the United States in U.S. Dollars for each licensed

publication. As used herein, "net wholesale sales" shall mean the affiliated publishing

company's then standard definition of net wholesale sales.

       viii)    For website uses of Flash Animations and collateral material

intended to supplement or support the Flash Animations: 5% of an affiliated online production

company's Gross Proceeds received in the United States in U.S. Dollars from its exploitation

of the animations and collateral material after it has recouped its Production Costs. As used

herein, Gross Proceeds and Production Costs shall mean the then standard definition of Gross

Proceeds and Production Costs used by Warner Bros. Online (or any successor in interest

thereto).

    8.   Accounting. Royalties due in accordance with paragraph 2(d) hereof (i.e., amounts in

excess of recoupable Annual and Initial Advances and interest, if applicable) shall be payable

annually on March 31 of the year following the close of the annual accounting period. All

payments shall be accompanied by a statement of account. The year 2000 statement and

payment, if any, shall be made on March 31, 2002

    9.   Audit. The SIEGELS may audit the books and records of DC COMICS solely in

order to verify statements issued to The SIEGELS hereunder. Any such audit shall be at The

SIEGELS' expense. Any audit shall be conducted only upon reasonable notice by a certified

public accountant during regular business hours at DC COMICS' offices and in such manner as

not to interfere with DC COMICS' normal business activities. In no event shall an audit with

**000000789**

35

Exhibit 27
604

respect to any statement start later than twelve (12) months after the date of that statement nor shall any audit continue for longer than five (5) consecutive business days, nor shall audits be made more frequently than once a year, nor shall the books and records supporting any statement be audited more than once. All statements shall be binding upon The SIEGELS and not subject to any claims or proceedings unless objection is made in writing by a majority of The SIEGELS stating the basis thereof and delivered to DC COMICS within twelve (12) months of the date of the statement to which objection is made, or if an audit is started within that period, then within thirty (30) days of the completion of that audit. The SIEGELS and their certified public accountant (and any employee thereof) shall keep confidential all information received from DC COMICS during the Audit.

10.    Appointment Of DC COMICS As Attorney-in-Fact; Provision And Filing Of Documents.

a)  The SIEGELS Shall Furnish DC COMICS With Documents And Shall File Assignments and Execute Documents. Within _____ of the effective date hereof, and thereafter, The SIEGELS shall at all times cooperate with and furnish DC COMICS with copies of all documents in their custody, possession or control or that of their attorneys pertaining to the rights in and history and creation of The WORKS and/or The MARKS. The SIEGELS further undertake that they shall within ____ of the effective date hereof file with the United States Copyright Office and serve true and correct copies on DC COMICS of the Stand Alone Assignments attached hereto as Exhibit _ and shall execute any and all other documents as requested by DC COMICS to confirm DC COMICS' ownership of The WORKS and The MARKS. The parties hereto each agree to execute and deliver any and all further documents as may be required to carry out the terms and intentions of this Agreement, including but not

000000790

36

Exhibit 27
605

limited to all assignments, powers of attorney and other appropriate documents relating to the copyrights, trademarks and all other rights at issue and/or which DC COMICS may reasonably request for filing and recording or other purposes.

        b) <u>The SIEGELS Appoint DC COMICS as Their Attorney-In-Fact.</u> The SIEGELS hereby further irrevocably appoint DC COMICS, and/or any persons designated by it, as their attorney-in-fact, coupled with an interest therein, with respect to The WORKS and The MARKS. DC COMICS is, thus, hereby made fully authorized to execute any and all such documents for and in the name of The SIEGELS, or any of them, and to bind The SIEGELS and their heirs, successors and assigns thereby with respect to The WORKS and The MARKS.

    11.     <u>Conduct Of The Business.</u>

    a) <u>No Disparagement By Parties.</u> The SIEGELS shall not disparage or criticize DC COMICS, its parent, related companies, affiliates, subsidiaries, employees, officers, directors, attorneys, agents, predecessors, successors, assigns, or licensees or their properties. DC COMICS shall not disparage or criticize and shall not authorize the disparagement or criticism of The SIEGELS or their employees, officers, directors, attorneys, agents, predecessors or successors.

    b) <u>Press Releases And Promotion.</u> The SIEGELS and DC COMICS shall issue a joint press release in the form attached as Exhibit _ announcing their entry into this Agreement. Thereafter, The SIEGELS:

            (i)    upon DC COMICS' request, shall continue to positively publicize The WORKS, including making themselves reasonably available for public appearances (with any travel or related expenses paid by DC COMICS and subject to their health and availability);

**000000791**

Exhibit 27
606

(ii)    shall not make any personal appearances, issue statements, grant interviews, and/or engage in other activities they may wish to conduct relating to The WORKS (and/or The MARKS) without the prior written consent of DC COMICS, not to be unreasonably withheld;

(iii)    shall not contact or cause any third party to contact any licensee or sublicensee of DC COMICS of any of The WORKS or The MARKS.

c)    <u>The SIEGELS Shall Refer Inquiries.</u>  The SIEGELS shall not, directly or indirectly, indicate to any other person or entity, that they own any rights in, or have any role with respect to the future exploitation of The WORKS and/or The MARKS in any manner, or have any role in DC COMICS' business in relationship to The WORKS and/or The MARKS. However, if The SIEGELS should receive inquiries concerning The WORKS and/or The MARKS, they shall promptly and fully refer any and all such inquiries to DC COMICS.

d)    <u>Advise.</u>  DC COMICS shall provide the opportunity for The SIEGELS who sign this Agreement to be informed about major developments (e.g. motion pictures, television programs, theme park attractions, major changes planned in publications), concerning The SUPERMAN Works and The SIEGELS will have an opportunity to give their input with respect thereto, but this does not rise to the level of a consultation right. The SIEGELS will be informed of such developments periodically. To facilitate this, The SIEGELS will appoint one of them to  receive occasional written updates from DC COMICS and with whom, upon request, a DC COMICS representative will meet once a year to provide a broader overview of current developments. The SIEGELS may not at any time or for any reason, assign or transfer to any other person or entity the right to receive the information or provide the input described

000000792

38

Exhibit 27
607

herein.  Further, The SIEGELS shall at all times keep the information provided to them by DC

COMICS confidential and not disclose it to any other person or entity.

      e)    <u>Credit.</u>

      (i) On new works based upon the SUPERMAN Works, and/or the

SUPERMAN Derivative Works first created after the effective date hereof (excluding later

episodes of ongoing television series) DC COMICS shall provide a credit along the lines of

"Superman created by Jerry Siegel and Joe Shuster", "Created by Jerry Siegel and Joe

Shuster", or "Based on the characters created by Jerry Siegel and Joe Shuster" (as applicable)

on motion pictures (main titles on screen only) television programs (main titles only), print

publications (such as comics and/or books), and on all other works where credit to creators is

customary. The size and placement of the foregoing credit shall be subject to DC COMICS'

sole discretion, and shall be consistent with guild and other obligations.  DC COMICS shall

be allowed a commercially reasonable period of time within which to commence the phase-in

of this credit.

      (ii)    On new works based upon the SUPERMAN Works, and/or the

SUPERMAN Derivative Works first created after the effective date hereof (excluding later

episodes of ongoing television series) and initially released during the term of the copyright of

Action Comics No. 1, DC COMICS shall provide the following credit: "By Special Arrangement

with the Jerry Siegel Family".  The size and placement of the foregoing credit shall be subject to

DC COMICS' sole discretion, and shall be consistent with guild and other obligations. DC

COMICS shall be allowed a commercially reasonable period of time within which to commence

the phase-in of this credit.

000000793

39

Exhibit 27
608

(iii) On new works based upon the SPECTRE Works first created after the effective date hereof (excluding later episodes of ongoing television series) DC COMICS shall provide a credit along the lines of "Spectre created by Jerry Siegel and Bernard Bailey", "Created by Jerry Siegel and Bernard Bailey", or "Based on the characters created by Jerry Siegel and Bernard Bailey"(as applicable) on motion pictures (main titles on screen only) television programs (main titles only), print publications (such as comics and/or books), and on all other works where credit to creators is customary. The size and placement of the foregoing credit shall be subject to DC COMICS' sole discretion, and shall be consistent with guild and other obligations. DC COMICS shall be allowed a commercially reasonable period of time within which to commence the phase-in of this credit.

(iv) No failure to comply with the provisions of this paragraph nor any failure of any other person to comply therewith shall constitute a breach by DC COMICS of this Agreement, such as to entitle The SIEGELS to injunctive relief; provided, upon notice by The SIEGELS, DC COMICS shall use reasonable efforts to prospectively cure any such failure to comply with the provisions of this paragraph.

f)    DC COMICS Right To Use Materials. DC COMICS shall have the right at its sole discretion to use photos and "bios" of or concerning Jerome Siegel in publicity or advertising materials concerning its properties, including The WORKS and/or The MARKS.

g)    DC COMICS Shall Have Exclusive Control Over The WORKS And The MARKS. DC COMICS shall have exclusive control over the manner, forum, medium, and all other exploitation of The WORKS and The MARKS, and such matters will be within its sole discretion and The SIEGELS shall have no right of approval whatsoever in regard thereto. Nothing in this Agreement shall be construed as requiring DC COMICS to exploit, or continue to

**000000794**

40

Exhibit 27
609

exploit, The WORKS and The MARKS nor shall anything in this Agreement be construed so as to create a fiduciary duty owed to The SIEGELS.

       h)     First Opportunity To Negotiate. The SIEGELS shall offer DC COMICS, or such parent, related company, affiliate, subsidiary and/or division as it may designate a first opportunity to negotiate for the rights in any biographical works in any media pertaining to Jerome Siegel.

12. Representations And Warranties, Covenant Not To Sue And Indemnification.

       a)   The SIEGELS Have The Right and Power To Enter Agreement. The SIEGELS hereby represent, warrant, agree and covenant that (i) they have the right and power to enter into this Agreement and to grant all rights which are granted by them herein and covered by this Agreement, (ii) neither they nor Jerome Siegel have granted any right, license, or permission, or entered into any transaction or agreement in relation to or with respect to, the subject matter hereof, to any other party or encumbered any of The SIEGELS' (or Jerome Siegel's) rights or interests in The WORKS or The MARKS in any way, (iii) they know of no other party with any rights of any kind to or that claim to have any rights of any kind to The WORKS or The MARKS, (iv) they shall not, at any time hereafter, solicit, initiate or enter into any negotiation, transaction or agreement or grant any right, license, or permission in relation or with respect to the subject matter covered by this Agreement to any other party or otherwise encumber, in any way, any rights granted to DC COMICS herein, including, but not limited to, any copyright termination interest or any Reversionary Rights in any rights relating to The WORKS; (iv) they shall not at anytime hereafter, regardless of whether The WORKS fall into the public domain, or any other occurrence or non-occurrence, exploit The WORKS or The MARKS, or license or authorize anyone else to do so, except to the extent provided herein; (v)

000000795

Exhibit 27
610

any and all rights that they own, owned, claim or claimed in The WORKS or The MARKS,
including but not limited to all trademark rights (if any) and copyright rights, and all
termination rights arising under the U.S. Copyright Act and Reversionary Rights, if any, derive
and flow directly and only from Jerome Siegel; (vi) no person or entity other than The
SIEGELS and/or DC COMICS own any rights or could possibly claim any rights of any nature
in, or arising out of, any Works created by Jerome Siegel; (vii) they know of no Works other
than the SUPERMAN Works and SPECTRE Works (notwithstanding and without diminishing
in any manner the provisions in this Agreement relating to The OTHER SIEGEL Works and
the OTHER Marks) created by Jerome Siegel in which they claim any rights; (viii) they know
of no Works included among the SUPERMAN Works that were not listed in the SUPERMAN
Notices (ix) Joanna Siegel is the sole executor, trustee, administrator and personal
representative of Mr. Siegel and his estate.

      b)  <u>Release And Covenant Not To Sue By The SIEGELS.</u>

    i)    As of the date of execution of this Agreement, The SIEGELS and their
descendants, ancestors, dependents, estates, heirs, predecessors, successors and assigns and
past, present and future, executors, administrators, agents, trustees, affiliates, employees,
officers, directors, partners, shareholders, consultants, representatives, servants, attorneys and
licensees (hereinafter individually and collectively referred to as "RELEASOR"), hereby
release and discharge now and forever DC COMICS and its descendants, ancestors,
dependents, heirs, predecessors, successors and assigns and past, present and future parents,
subsidiaries, divisions, affiliates, related companies, partners, executors, administrators, agents,
trustees, affiliates, employees, officers, directors, partners, shareholders, consultants,
representatives, servants, attorneys and licensees (hereinafter individually and collectively

**000000796**

42

Exhibit 27
611

referred to as "RELEASEE") from any and all past, present, future, actual and/or potential claims, demands, entitlements, obligations, actions, injuries, causes of action, suits, debts, dues, sums of money, accounts, reckonings, losses, (including but not limited to lost earnings, revenues, fees and/or royalties) bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, settlements, expenses, counsel fees, costs, extents and executions (hereinafter referred to collectively and individually as "Claim(s)") throughout the world that exist as of, or existed prior to, the last date of execution hereof, that RELEASOR could have asserted or could assert against RELEASEE relating in any manner to The WORKS and/or The MARKS, regardless of whether or not such Claim(s) are in law, admiralty, equity, or otherwise, regardless of whether or not such Claim(s) were known, foreseen or unforeseen, patent or latent, and whether or not such Claim(s) involve real, personal and/or intangible property, including but not limited to any Claim(s) to benefit in any manner, other than as provided for herein from any transactions, understandings and agreements made with respect to The WORKS and/or The MARKS as of the date of execution of this Agreement.

  ii) In addition to the foregoing and except as otherwise provided herein, RELEASOR hereby irrevocably warrants and covenants now and forever that it shall not, now or ever, sue or otherwise assert a Claim of any nature, in any manner, or in any forum, anywhere in the world, whatsoever, against the RELEASEE arising out of any of RELEASEE'S past, present or future acts relating to The WORKS and/or The MARKS or out of any other claim of rights or from facts acquired by RELEASOR, subsequent to the last date of execution hereof.

  RELEASOR expressly and forever waives any and all rights and benefits conferred on it (if any) by the provisions of any State, Federal or other domestic or foreign law

000000797

43

Exhibit 27
612

(including but not limited to any Reversionary Rights, and/or any rights and benefits under California Civil Code, Section 1542, and any and all other provisions of all comparable, equivalent, analogous, similar or related statutes and principles in common law of the United States and all foreign jurisdictions) and expressly agrees that the releases and covenants in this paragraph extend to claims that it did not know of, or suspect to exist, in its favor at the time of executing this Agreement that, if known, may have materially affected this Agreement..

   c) <u>Release And Covenant Not To Sue By DC COMICS.</u>

  i) As of the date of execution of this Agreement, RELEASEE hereby releases and discharges now and forever RELEASOR from any and all Claim(s) throughout the world that exist as of, or existed prior to, the last date of execution hereof, that RELEASEE could have asserted or could assert against RELEASOR relating in any manner to The WORKS and/or The MARKS, regardless of whether such Claim(s) are in law, admiralty, equity, or otherwise, regardless of whether or not such Claim(s) were known, foreseen or unforeseen, patent or latent, and whether or not such Claim(s) involve real, personal and/or intangible property.

  ii) In addition to and in accordance with the foregoing, and except as otherwise provided herein, RELEASEE hereby irrevocably warrants and covenants now and forever that it shall not, now or ever, sue or otherwise assert a Claim of any nature, in any manner whatsoever, or in any forum, anywhere in the world, against the RELEASOR arising out of any of RELEASOR'S acts as of, or prior to, the last date of execution hereof, relating to The WORKS and/or The MARKS.

  RELEASEE expressly and forever waives any and all rights and benefits conferred on it (if any) by the provisions of any State, Federal or other domestic or foreign law (including but not limited to California Civil Code, Section 1542, and any and all other provisions of all

000000798

Exhibit 27
613

comparable, equivalent, analogous, similar or related statutes and principles in common law of the United States and all foreign jurisdictions) and expressly agrees that the releases and covenants in this paragraph extend to claims that it did not know of, or suspect to exist, in its favor at the time of executing this Agreement that, if known, may have materially affected this Agreement.

d)    The SIEGELS Indemnify DC Comics.  RELEASOR shall jointly and severally indemnify, defend and hold harmless RELEASEE against any and all Claim(s) at the time such Claim(s) are incurred, resulting or arising from any claim(s), allegation(s), assertion(s), challenge(s), objection(s), demand(s), proceeding(s), action(s) or suit(s) by:

(i)    RELEASEE against RELEASOR arising out of a breach or claimed breach by RELEASOR (or any of the successors, assigns, heirs, estates, trustees, administrators or executors of Jerome Siegel) of any of the terms of this Agreement;

(ii)    RELEASOR, the estate and/or heirs of Jerome Siegel, Dennis Larsen, and/or any other person or entity, without any limitation whatsoever,

(a)    asserting any right in The WORKS and/or The MARKS;

(b)    seeking to terminate any grant(s) made, or right(s) granted herein or in the Stand Alone Assignments;

(c)    claiming any Reversionary Rights in The WORKS or The MARKS;

(d)    that in any manner interferes with DC COMICS' exclusive rights in and/or ownership of The WORKS and/or The MARKS, including but not limited to any claim or challenge to DC COMICS' right and power to enter into this Agreement with The SIEGELS and/or to DC COMICS' exercise, to the full extent authorized, of the right to exploit

**000000799**

45

Exhibit 27
614

the rights granted to it herein and to deliver as compensation to The SIEGELS the payment and options set forth herein;

        (e)     relating to The SIEGELS representations and warranties herein, including but not limited to: i) their representations and warranties of ownership; and ii) their right or power to enter into this agreement and to grant to DC COMICS the rights granted herein;

        (iii)    Dennis Larsen against RELEASEE in any manner relating to compensation or payments under this Agreement.

RELEASOR's obligation to indemnify RELEASEE hereunder is fully binding regardless of whether or not any of the aforementioned claim(s), allegation(s), assertion(s), challenge(s), objection(s), demand(s), proceeding(s), action(s) or suit(s) are founded, valid, established in law or fact, or based on evidence.

    e)    <u>DC COMICS Indemnifies The SIEGELS.</u>  DC COMICS agrees to and shall defend and indemnify those members of the Siegel family who sign this Agreement against any claims or damages incurred by them arising out of or relating to claims brought by third parties against The SIEGELS due to wrongful acts by DC COMICS and/or Warner Bros. concerning The WORKS and/or The MARKS. DC COMICS shall do this, at its option, by adding those members of the Siegel family who sign this Agreement as named insured(s) on any applicable Errors & Omissions Insurance policy, or through direct indemnification, subject to the limitations set forth in this Agreement.

13. <u>Confidentiality.</u>  Except for the agreed upon press release and the information contained therein referred to in paragraph __ above, The SIEGELS shall keep confidential all contents of this Agreement.

**000000800**

46

Exhibit 27
615

14.    Dispute Resolution.

a)    Choice of Law. This Agreement, and all claims of any nature or type whatsoever related to or concerning the subject matter of this Agreement, shall be governed by New York law

b)    DC COMICS' Equitable Remedies Unlimited. The SIEGELS agree that this Agreement and all rights granted herein by them to DC COMICS may be specifically enforced by DC COMICS, including by an action seeking temporary, preliminary and/or permanent injunctive relief. It is further agreed that any attempt by the SIEGELS to use, authorize others to use, or to attempt to prevent others from using the SUPERMAN Property and the SPECTRE Property will cause immediate and irreparable harm to DC COMICS and that the SIEGELS are estopped from making any argument that DC COMICS is not irreparably harmed by such action. Any Dispute asserted by DC COMICS may, at the sole option of DC COMICS, be adjudicated in any court of competent jurisdiction, including but not limited to, the courts of the State of New York, in the borough of Manhattan. The SIEGELS hereby consent to the jurisdiction of New York state and federal courts in the borough of Manhattan.

c)    Arbitration As Sole Remedy To Address Disputes By The SIEGELS. Any Dispute raised by The SIEGELS shall be resolved exclusively by arbitration according to the procedures set forth in the "Arbitration Procedures Rider" attached as Exhibit __ hereto and incorporated herein by reference. The remedies of The SIEGELS under or with respect to this Agreement shall be strictly and irrevocably limited to arbitration for an accounting of moneys due. The SIEGELS shall have no right to, and irrevocably waive and release any rights they may

**000000801**

47

Exhibit 27
616

otherwise have or obtain in the future to seek, any injunctive or other equitable relief of any kind,
for any reason whatsoever. Under no circumstances, including the failure of DC COMICS to
keep or perform any of its duties or obligations under this Agreement, shall The SIEGELS, or
any of them or anyone claiming rights through or under them or Jerome Siegel, have the right to
rescind, revoke, cancel or terminate this Agreement, the Stand Alone Assignments, or any of the
rights granted in any of those documents to DC COMICS and covenant not to do so. Further, in
no event shall any such rights revert to or be possessed by The SIEGELS or anyone claiming
rights through or under them.

     d)    Limit On Remedy Available To The SIEGELS. If for any reason whatsoever this
Agreement and/or The SIEGELS' grant of rights to DC COMICS provided herein is claimed to
be, or is, ineffective, void, voidable or revocable, in whole or in part, or if for any reason The
SIEGELS and/or any of their heirs, trustees, attorneys, executors, administrators, successors
and/or assigns and/or those of Jerome Siegel make any future claim against or challenge to DC
COMICS' sole and exclusive ownership of and right to exploit any and all rights in The WORKS
or any other works owned by DC COMICS throughout the world, or any part thereof, on any
basis or on any theory, or somehow obtain any Reversionary Rights in The WORKS or The
MARKS it is expressly understood and agreed that the sole remedy is to seek compensation due
under this Agreement pursuant to the Arbitration Procedures set forth in Exhibit __ hereto. The
SIEGELS further agree that in the event any such claim or challenge results in any liability or
damage to DC COMICS, except for the amount provided in paragraph _ below (i.e. annual
compensation to ____ of $100,000), any amounts that might otherwise be due to The SIEGELS
under this Agreement shall be reduced by an amount equivalent to any liability or damage
suffered by DC COMICS on such claim or challenge, which DC COMICS may offset against

48

000000802

Exhibit 27
617

any sums due to The SIEGELS herein.  The parties acknowledge that the financial benefit

flowing to The SIEGELS under this Agreement represents a greater amount than what The

SIEGELS would have received from a court of competent jurisdiction in an attempt to enforce

the Notices and any purported rights thereunder.  As consideration for this, The SIEGELS

expressly agree that in any event, including but not limited to any change in law or otherwise, the

compensation owing to The SIEGELS pursuant to paragraphs ___ of this Agreement shall

constitute a cap upon the amount DC COMICS shall ever be liable for or obligated to pay to The

SIEGELS or anyone else claiming under or through The SIEGELS and/or Jerome Siegel

regardless of the basis of any such claim.

  e)  <u>No Payment Due Unless Provided For Herein</u>  Except as provided in paragraph

2(e), The SIEGELS acknowledge that any right to payment for any use of the SUPERMAN or

SPECTRE Works to which Michael Siegel may be entitled shall be limited to a percentage of

sums paid pursuant to this Agreement and to be negotiated directly between SIEGEL and

Michael Siegel.  None of The SIEGELS or their heirs, executors, trustees, administrators,

successors or assigns are due, or ever will be due, anything whatsoever from DC COMICS to the

extent it is not expressly provided for herein.

  f)  <u>Suspension Of Payments To The SIEGELS.</u>  If for any reason The SIEGELS

and/or any of their heirs, trustees, attorneys, executors, administrators, successors and/or assigns

and/or those of Jerome Siegel make any future claim against, or challenge to, or in any manner

diminish, or interfere with, whether directly, indirectly or by operation of law, DC COMICS'

sole and exclusive ownership and enjoyment of and right to exploit in any manner it so chooses

in The WORKS and/or The MARKS or any other works or marks owned by DC COMICS

throughout the world and/or any and all rights therein, or any part thereof, on any basis or on any

**000000803**

49

Exhibit 27
618

theory (including but not limited to claiming any Reversionary Rights in The WORKS or The MARKS), it is expressly understood and agreed that all payments to The SIEGELS shall be suspended until the claim is finally resolved.

15.    Non Assignability Of Rights Granted To The Siegels.  The SIEGELS shall not assign, transfer, sell, license, or give away any of the rights provided to them under this Agreement, and any such assignment shall be null and void.  The SIEGELS expressly agree that their heirs and/or all person(s) or entity or entities claiming rights under or through The SIEGELS or Jerome Siegel with respect to any of the subject matter of this Agreement are expressly bound by this Agreement to the same extent to which The SIEGELS are bound by it.  The SIEGELS shall expressly notify in writing (in their wills and/or other documentation as appropriate) their heirs and/or all person(s) or entities claiming rights under or through The SIEGELS or Jerome Siegel with respect to any of the subject matter of this Agreement that such person(s) or entity or entities are bound by the terms hereof to the same extent to which The SIEGELS are bound by it.

16. MISCELLANEOUS

      a)  Severability.  In the event any provision hereof affecting The SIEGELS' grant of rights to DC COMICS under or pursuant to this Agreement is determined for any reason by any competent court to be unenforceable, such determination shall not affect the effectiveness of any other provision hereof providing for the grant of rights by The SIEGELS to DC COMICS, so that The SIEGELS's grant of rights shall be enforced to the fullest extent allowable by law in accordance with the parties' intent hereunder.

      b)  Successors.  This Agreement is enforceable against and binding upon the parties' heirs, executors, trustees, administrators, agents, attorneys, licensees, officers, employees, directors, consultants, successors and assigns.

**000000804**

50

Exhibit 27
619

c) <u>Amicable Resolution.</u> This Agreement represents the amicable resolution of the dispute between DC COMICS and The SIEGELS referenced in paragraph 7 of the Tolling Agreement.

d) <u>Modification in Writing.</u> This Agreement may be modified only by a writing signed by each party hereto.

e) <u>Entire Agreement.</u> This Agreement contains the complete understanding between the parties concerning the subject matter hereof and all prior representations, agreements and understandings are merged herein.

f) <u>Arms Length.</u> The parties hereto mutually acknowledge and agree that this Agreement and the terms and provisions memorialized herein have been fully negotiated with the assistance of qualified legal counsel at "arms length" and, consequently, no rule of interpretation or construction which would result in any interpretation or construction in favor, or to the detriment of, one party over another party shall apply.

g) <u>Counterparts.</u> The parties shall execute this Agreement in 4 counterparts so that each party may retain an original.

h) <u>Captions.</u> The captions of this Agreement are for convenience only and shall not be construed as part hereof or affect the construction or interpretation of any provisions of this Agreement.

<u>AGREED AND ACCEPTED:</u>

DC COMICS, a division of Warner Bros., a     By: _____

Time-Warner Entertainment Company     Joanne Siegel


By: _____     Date: _____


51

**000000805**

Exhibit 27
620

Title: _____

Date: _____

By: _____

       Laura Siegel Larson

Date: _____

The Estate of Jerome Siegel

By:_____
Joanne Siegel as sole executor, trustee,
administrator and personal representative of
Jerome Siegel and his estate

Date: _____

By: _____

       Michael Siegel

Date: _____

52

**000000806**

Exhibit 27
621

## ACKNOWLEDGMENT

STATE OF          )

                 SS.:

COUNTY OF       )


On _____ \_\_, 2001 before me _____ personally came _____ to me known, by me duly sworn, did depose and say that deponent resides at _____ that deponent is the _____of DC COMICS, a division of Warner Bros., a Time-Warner Entertainment Company, the entity described in, and which executed the foregoing Agreement that [deponent knows the seal of the corporation, that the seal affixed thereto is the corporate seal, that it was affixed by order of the board of the corporation; and that deponent signed deponent's name thereto by like order.]

53

**000000807**

Exhibit 27
622

## ACKNOWLEDGMENT

State of         )

               :ss:

County of      )

On       2001 before me personally came Joanne Siegel to me known, and known to me to be the individual described in, and who executed the foregoing Agreement, and duly acknowledged to me that she executed the same.

_____

Notary Public

000000808

54

Exhibit 27
623