# EXHIBIT 29



1   WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2   Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3   9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212
4   Telephone: 310-858-7888
    Fax:          310-550-7191
5   E-MAIL: WWW.WWLLP.COM
    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6   Roger L. Zissu (Admitted *pro hac vice*)
    866 United Nations Plaza
7   New York, New York 10017
    Telephone: 212-813-5900
8   Fax:          212-813-5901

9   PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
10  1711 Route 9D
    Cold Spring, NY 10516
11  Telephone: 845-265-2820
    Fax:          845-265-2819

12  Attorneys for Defendants and Counterclaimant

13                UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

15

16  JOANNE SIEGEL and LAURA        )  Case No. 04-8400-PA (RZx)
    SIEGEL LARSON,                 )
17                                 )  Hon. Stephen G. Larson, U.S.D.J.
                                   )
18              Plaintiffs,        )
                                   )  **DECLARATION OF JOHN**
19       vs.                       )  **SCHULMAN IN OPPOSITION**
                                   )  **TO PLAINTIFFS' MOTION FOR**
20                                 )  **PARTIAL SUMMARY**
    WARNER BROS. ENTERTAINMENT     )  **JUDGMENT**
21  INC.; TIME WARNER INC.; DC     )
    COMICS; and DOES 1-10,         )
22                                 )
                                   )  Date:       July 23, 2007
23              Defendants.        )  Time:       10:00 a.m.
                                   )  Place:      Courtroom 1
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27  ─────────────────────────────  )
    AND RELATED COUNTERCLAIMS.     )
28                                 )

─────────────────────────────────────────────────
                DECLARATION OF JOHN SCHULMAN

Exhibit 29
627

## DECLARATION OF JOHN A. SCHULMAN

I, John A. Schulman, declare and state as follows:

1.      I am an attorney at law, duly admitted to practice before the Supreme
Court of the State of California and before this Court, and am Executive Vice
President and General Counsel of defendant Warner Bros. Entertainment Inc.
("Warner Bros."). I submit this Declaration in support of Defendants' Opposition
to Plaintiffs' Motion for Partial Summary Judgment. I have personal knowledge of
the facts contained within this Declaration and, if called upon as a witness, I could
and would testify competently thereto.

2.      I have been employed by Warner Bros. as its General Counsel since
1984, and I am very familiar with the Superman character and property, which has
been exploited by Warner Bros. in film and television over many years through
licenses from the copyright proprietor, DC Comics ("DC"). Warner Bros. and DC
are currently affiliated companies within the Time Warner Inc. family of
companies.

3.      In or about April, 1997, plaintiffs Joanne Siegel and Laura Siegel
Larson ("Plaintiffs"), the widow and daughter, respectively, of Jerry Siegel
("Siegel"), one of the co-authors of the original 1938 Superman comic *Action
Comics No. 1*, mailed a number of documents denominated Notices of Termination
to Warner Bros., DC and certain of their affiliates under Section 304(c) of the
Copyright Act, purporting to terminate Siegel's original grants of copyright rights
with respect to Superman. The stated "effective date" for the Notices of
Termination was April 16, 1999.

4.      Since no resolution had been reached with Plaintiffs concerning the
Notices by then, on April 15, 1999, DC served a formal rejection of the Notices,
contesting both their validity and their scope. On April 30, 1999, DC was
contacted by Bruce Ramer, an attorney with the Beverly Hills law firm of Gang,
Tyre, Ramer & Brown, Inc. ("Gang Tyre"), and was advised that Gang Tyre had
been retained to represent Plaintiffs in connection with the Superman Termination

1
**DECLARATION OF JOHN SCHULMAN**

Exhibit 29
628

Notices. Because Gang Tyre is located in the Los Angeles area, because I had had previous business dealings with both Mr. Ramer and other attorneys at his firm, and because the termination notices had also been served on Warner Bros., after discussions with representatives from DC Comics from that point forward I became lead negotiator for both DC and Warner Bros. in connection with trying to reach a resolution of Plaintiffs' claims. Although I remained exclusively employed by Warner Bros., my services were provided to DC for this purpose. Shortly into the discussions, Mr. Ramer's partner, Kevin Marks, became the lead negotiator on behalf of Plaintiffs.

5.    My discussions with Mr. Marks were extensive and far-reaching, spanning some two and a half years, and consisting of several face to face meetings with Mr. Marks, as well as numerous communications, both written and oral, in which we addressed and tentatively resolved certain key issues before moving on to other issues. In fact, because the negotiations were so time-consuming, in April, 2000 Plaintiffs and DC entered into a tolling agreement so that the parties could continue their settlement discussions without immediate concern of instituting litigation.

6.    Those settlement negotiations culminated in a telephone conversation on October 16, 2001, when Kevin Marks and I reached agreement on the final outstanding deal point; namely, Plaintiffs' agreement to transfer the entirety of any of their claimed interests in Superman (and in the character "Spectre" which is not a part of this action) in perpetuity, so that they could not exploit any of those works even after they fell into the public domain. The general parameters of the deal we reached provided, among other things, that upon transfer to DC of all of Plaintiffs' Superman and Spectre interests, DC would make up-front payments to Plaintiffs in the amount of $3 million, provide a guaranteed advance against certain royalties based on DC's on-going exploitation of the properties, and continue the pension and health benefits to Joanne Siegel under a December 23, 1975 Agreement.

2

**DECLARATION OF JOHN SCHULMAN**

Exhibit 29
629

7.    I understood after our October 16 telephone conversation that Mr. Marks would call me back after conferring with his clients regarding the status of our deal. Mr. Marks in fact called me back on October 19 and told me in substance that the parties were now in agreement, and that we had reached a deal settling all of Plaintiffs' claims. A few days later I received Mr. Marks' letter dated October 19, 2001, stating that "The Siegel Family . . . has accepted D.C. Comics offer of October 16, 2001 in respect of the 'Superman' and 'Spectre' properties," and describing the terms of the parties' agreement. Mr. Marks' October 19, 2001 letter accurately set forth all material terms of our agreement.

8.    Because our deal had been a complex one, negotiated over a long period of time via both written and oral communication and in pieces, I sent a letter to Mr. Marks on October 26, 2001, reiterating the material points of the agreement as provided in Mr. Marks' October 19, 2001 letter, fleshing out some details on certain terms that Mr. Marks had generally addressed, and, in at least one instance, including an agreed-upon point that Mr. Marks appeared to have forgotten to include. I also indicated that a long-form agreement was being prepared.

9.    Mr. Marks did not advise me that my October 26, 2001 letter materially changed, misstated, or otherwise did not accurately reflect the agreement embodied in his October 19, 2001 letter. Accordingly, DC's outside counsel drafted a long-form agreement to incorporate the terms set forth in the parties' agreement and to provide for the formal assignment of any copyright interests Plaintiffs might have in the Superman property to DC, which draft was sent to Mr. Marks on or about February 1, 2002.

10.    Although Mr. Marks and I had discussed that DC would be preparing a formal long-form document which would contain the terms we had agreed to and would effectuate Plaintiffs' agreement to transfer their copyright interests, Mr. Marks never stated to me that he did not consider the October 19, 2001 agreement to be binding, or that it would not be binding unless and until that formal documentation was completed and executed, or that he considered any items in our

3

**DECLARATION OF JOHN SCHULMAN**

Exhibit 29
630

1    agreement to still be open.  And that was certainly not my understanding.  In fact,

2    DC and Warner Bros. included in their license agreement for the upcoming new

3    Superman motion picture that Plaintiffs would be accorded the screen credits Mr.

4    Marks and I had agreed to as part of the parties' overall deal; namely, "Superman

5    created by Jerry Siegel and Joe Shuster" and "By Special Arrangement with the

6    Jerry Siegel Family."  That agreement between DC and Warner Bros. was

7    negotiated in the latter part of 2001 and was executed in the Spring of 2002.

8         11.    Sometime in the week following May 9, 2002, I received a copy of a

9    letter dated May 9 that Joanne Siegel had sent to Richard Parsons, the Chief

10   Executive Officer of Time Warner Inc. (then known as AOL Time Warner Inc.)

11   complaining, among other things, that the draft long-from agreement was

12   "unconscionable."  Because I had not heard from Mr. Marks regarding the long-

13   form agreement, I called him on May 16, 2002 to ask what had prompted Mrs.

14   Siegel's letter and whether there were any problems I should be aware of.  Mr.

15   Marks advised me during that conversation that he had not seen and did not know

16   about the letter.  He additionally stated, in substance, that although the draft long-

17   form contract was "very aggressive," and contained certain things that had not

18   been agreed to, it was "not contrary to what [had been] agreed to" and that he

19   could "deal with it."  A true and correct copy of my notes of that conversation is

20   attached hereto as Exhibit A.

21        12.    Although I understand that Mr. Marks created a re-draft of the long-

22   form agreement that he transmitted to his clients on July 15, 2002, neither he nor

23   Plaintiffs ever provided that re-draft to DC.

24        13.    I understand that Plaintiffs have now taken the position that there are

25   material differences between the agreement embodied in Mr. Marks' letter of

26   October 19, 2001, and as reiterated in my letter of October 26, 2001.  I have

27   reviewed the chart that Plaintiffs have submitted in support of their motion for

28   partial summary judgment which purports to identify and describe those

     differences, and it is an incomplete and inaccurate representation of the terms of

                                        4
                      DECLARATION OF JOHN SCHULMAN

Exhibit 29
631

the two letters, often pointing to purported differences that do not exist. For example, Plaintiffs' chart implies that there was a difference in understanding between the parties on when certain royalty payments to Plaintiffs could be reduced to 1%, and whether there ever could be a situation where no royalties would be paid if the Superman properties appeared in a publication. But there was no disagreement on those issues; a review of the two letters shows the same intent, but different language: Mr. Marks' letter provides that the royalty can be reduced to 1% "in extraordinary cases such as D.C. Comics/Warner Bros. overall license to Six Flags." My letter simply contained language attempting to describe those "extraordinary cases." Similarly, Mr. Marks' letter provides for a publication royalty floor of 0.5% other than when there is a "cameo" appearance by the characters. My letter simply tries to define what constitutes a "cameo" appearance.

14.    Indeed, as to most of the items listed on Plaintiffs' chart, the language in my letter was the functional equivalent of the terms of the agreement embodied in Mr. Marks' October 19, 2001 letter (*see* "Audit Rights" and "Attorney in Fact"), or merely filled in some detail regarding an agreed upon point. For example, although Mr. Marks failed to include any release language in his letter, he and I had previously agreed that there would be a full release, since the agreement was in settlement of Plaintiffs' claims which were the subject of a subsisting tolling agreement. And, while Mr. Marks included in his letter the content of credits that were to be accorded to Plaintiffs, his summary statement was potentially ambiguous in that it did not identify that the credits would be on *new* motion pictures and television programs, not ones that had previously been produced and released.

15.    Moreover, to the extent that there are some small differences between the terms of the agreement as expressed in Mr. Marks' letter and in my letter on other items, Mr. Marks never once expressed to me that he or his clients

1  considered those differences to be material or an indication that no agreement had

2  been reached by the parties.

3      I declare under penalty of perjury under the laws of the United States that

4  the foregoing is true and correct and that I executed this Declaration this 24th day of

5  May, 2007 at Burbank, California.

6

7

8  _____

   JOHN A. SCHULMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**DECLARATION OF JOHN SCHULMAN**

Exhibit 29
633

EXHIBIT A

Exhibit 29
634

JT    K Marks    5/16

This:

"not expect K like That"
"very aggressive 1st draft"
"can deal w/ it"
"contains a lot of deep doos"
"could have been 20 not 60 pgs"
contains stuff not expect to
not contrary to what agreed to

Confidential

WB005972

7

Exhibit 29
635