Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Nicholas C. Williamson (State Bar No. 231124)
 nwilliamson@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone: (310) 246-3333
Fax:       (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel and Laura Siegel Larson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>     vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANTS MARK WARREN PEARY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSEPH SHUSTER, AND JEAN ADELE PEAVY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STAY PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date:  October 18, 2010<br>Time:  1:30 p.m.<br>Place: Courtroom 11 |

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

    I.    DC'S FIRST CLAIM MUST BE DISMISSED AS A MATTER OF LAW ..................................................................................................................2

        A.    The 1992 Agreement Is Irrelevant as a Matter of Law ..........2

            1.    The 1992 Agreement Is Not a Revocation and Regrant ..................................................................................................2

            2.    This Court Can and Should Dismiss DC's Claim as to the 1992 Agreement Under Applicable New York Law ......................................................................................................4

        B.    The Shuster Executor Held Termination Rights under § 304(d) ................................................................................................6

        C.    Pacific Pictures Had No Termination Rights and Was Not Required To Sign the Shuster Termination Notice as a Matter of Law .........................................................................8

        D.    DC Cannot State a Claim for Unclean Hands .......................8

            1.    Unclean Hands Is Not a Claim for Relief ....................8

            2.    There Are No "Unclean Hands" With Respect to Superboy ................................................................................................9

        E.    DC's Claims Are Barred by the Statute of Limitations Defense ................................................................................................10

    II.    DC'S FAC MUST BE DISMISSED OR STAYED TO THE EXTENT IT RAISES ISSUES RESOLVED OR TO BE RESOLVED IN *SIEGEL* ..............................................................................11

CONCLUSION ...............................................................................................................12

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                       **Pages**

*American Int'l Enters. v. FDIC*,
3 F.3d 1263 (9th Cir. 1993) ..................................................................................4

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ..........................................................................................6

*Bateman v. Donovan*,
131 F.2d 759 (9th Cir. 1942) ................................................................................7

*Brother Records v. Jardine*,
318 F.3d 900 (9th Cir. 2003) ................................................................................9

*Casey v. Planned Parenthood*,
14 F.3d 848 (3d Cir. 1994) .................................................................................12

*Classic Media, Inc. v. Mewborn,*
532 F.3d 978 (9th Cir. 2008) ........................................................................... 2-3

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
623 F. Supp. 2d 1144 (E.D. Cal. 2009) ................................................................1

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .............................................................................4

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) .................................................................................4

*Dyncorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ............................................................. 5-6

*Effects Associates, Inc. v. Cohen*,
208 F.2d 555 (9th Cir. 1990) ................................................................................6

*Farina v. Nokia*,
578 F. Supp. 2d 740 (E.D. Pa. 2008) .................................................................12

*Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*,
566 F. Supp. 2d 246 (S.D.N.Y. 2008) ..................................................................6

*Groucho Marx Prods. v. Day & Night Co.*,
689 F.2d 317 (2d Cir. 1982) .................................................................................7

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
889 F.2d 1274 (2d Cir. 1989) ...............................................................................4

*Int'l Klafter Co. v. Cont'l Casualty Co.*,
869 F.2d 96 (2d Cir. 1989) ...................................................................................4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) ................................................................................9

*Konigsberg Int'l Inc. v. Rice*,
16 F.3d 355 (9th Cir. 1994) ......................................................................................6

*Mattel, Inc. v. MGA Entm't, Inc.*,
2009 U.S. App. LEXIS 29187 (9th Cir. July 22, 2009) ........................................6

*Metro. Transp. Comm'n v. Motorola, Inc.*,
342 Fed. Appx. 269 (9th Cir. 2009)........................................................................1

*MGM Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................................ 9-10

*Miguel v. Country Funding Corp.*,
309 F.3d 1161 (9th Cir. 2002) ................................................................................7

*Milne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) ..................................................................... 2-3, 5

*Milton H. Greene Archives. v. CMG Worldwide*,
568 F. Supp. 2d 1152 (C.D. Cal. 2008) ..................................................................7

*Pelich v. INS*,
329 F.3d 1057 (9th Cir. 2003) ................................................................................8

*Penguin Group (USA) Inc. v. Steinbeck*,
537 F.3d 193 (2d Cir. 2008) ........................................................................2, 5, 7

*Progressive West Ins. Co. v. Dallo*,
2008 U.S. Dist. LEXIS 70151 (S.D. Cal. Sept. 10, 2008)......................................1

*Seiden Assoc., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) ...................................................................................5

*Siegel v. Nat'l Periodical Publ'ns., Inc.*,
508 F.2d 909 (2d Cir. 1974) .................................................................................10

*Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel* I"),
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................................ 10-11

*Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel* I"),
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ................................................................11

*Siegel v. Time Warner Inc.*,
496 F. Supp. 2d 1111 (C.D. Cal. 2007) ..................................................................9

*Stewart v. Abend*,
495 U.S. 207 (1990).................................................................................................8

*United States v. Musick*,
534 F. Supp. 954 (N.D. Cal. 1982) ......................................................................12

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) ................................................................................10

**Federal Statutes and Rules**

17 U.S.C. § 204 ................................................................................................. 6

17 U.S.C. § 304 ........................................................................................ *passim*

17 U.S.C. § 507 ............................................................................................... 10

**State Cases**

*Breed v. Ins. Co. of N. Am.*,
46 N.Y.2d 351 (1978) ....................................................................................... 4

*Jones v. Trice*,
202 A.D.2d 394 (1994) ..................................................................................... 5

*McCreary v. Mercury Lumber Distrib.*,
124 Cal. App. 2d 477 (1954) ............................................................................ 5

**Other Authorities**

M. Nimmer & D. Nimmer,
3 *Nimmer* § 11.05 ............................................................................................ 6

Restatement (2d) Conflict of Laws § 188 ........................................................ 4

Restatement (2d) of Contracts § 279 ................................................................ 5

18 Wright, Miller & Cooper,
*Federal Practice and Procedure* § 4478 (2002) ............................................ 12

# INTRODUCTION

DC Comics' ("DC") Opposition ("Opp.") to the Motion to Dismiss ("Mot.") DC's First Amended Complaint ("FAC"), filed by defendants Mark Warren Peary, personal representative ("Shuster Executor") of the Estate of Joseph Shuster ("Shuster" and the "Shuster Estate") and Jean Peavy ("Peavy"), presents a dizzying array of misleading statements and outright falsehoods in the hope of obscuring the core *legal* defects of DC's First and Second Claims as to the validity of the Shuster Termination. DC argues an interpretation of Peavy's 1992 agreement (the "1992 Agreement") that has no support in the text of the contract, misquotes its language, and wrongly insists that its unsupported interpretation presents factual issues that cannot be resolved on a motion to dismiss. In truth, the 1992 Agreement's express language is unambiguous, and, under applicable New York and federal law, its meaning can and must be decided now in favor of defendants.

To evade the Shuster Termination, DC engages in other word games, arguing that Shuster's termination rights did not "expire," but were "extinguished," when this nonsensical distinction contradicts both the Copyright Act and the decisions on which DC relies. DC similarly concocts its "unclean hands" claim based on allegations regarding Superboy that are contradicted by prior court rulings regarding Superboy, and, in any event, a difference in opinion about rights in Superboy does not amount to "unclean hands." The remainder of DC's First and Second Claims was fully litigated and resolved in *Siegel*, with the ***sole*** exception of one of the five sub-parts of DC's Second Claim that will soon be litigated in *Siegel*.[1]

///

---

[1] DC argues that its "claims for relief survive, if any *one* theory states a claim for relief." Opp. at 1:16-18. However, where one claim presents multiple theories, courts routinely dismiss those portions of a claim that are barred as a matter of law. *See, e.g., Metro. Transp. Comm'n v. Motorola, Inc.*, 342 Fed. Appx. 269, 272 (9th Cir. 2009) (affirming the dismissal of a claim except for only one portion); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1180 (E.D. Cal. 2009) (dismissing two theories of plaintiff's sixth claim); *Progressive West Ins. Co. v. Dallo*, 2008 U.S. Dist. LEXIS 70151 (S.D. Cal. Sept. 10, 2008) (dismissing "portions of breach of contract claim that rely upon this theory").

1
DEFENDANTS PEARY AND PEAVY'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

# ARGUMENT

## I. DC'S FIRST CLAIM MUST BE DISMISSED AS A MATTER OF LAW

### A. The 1992 Agreement Is Irrelevant as a Matter of Law

#### 1. The 1992 Agreement Is Not a Revocation and Regrant

DC's claim that the 1992 Agreement bars termination (FAC, ¶¶ 112-17) fails as a matter of law.[2] 17 U.S.C. § 304(c)(5) allows a party to terminate a pre-1978 grant of rights notwithstanding any "agreement to the contrary."[3] The Ninth Circuit recognized a very narrow exception to this bar solely ***where there is no longer an operative pre-1978 copyright grant to terminate***, as such had been expressly ***revoked*** and replaced by a post-1978 copyright ***re-grant*** by a party with a present termination right. *See Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005).

Both of the cases cited by DC in support of its argument require an ***express*** revocation and regrant. *Milne*, 430 F.3d at 1040, 1040 n.5 ("The agreement then provided for the revocation of the 1930 and 1961 agreements in favor of the new agreement, followed by the re-granting (on the same page) of the rights."); *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 196 (2d Cir. 2008) ("The 1994 Agreement further stated that 'when signed by Author and Publisher, [it] will cancel and supersede the previous agreements'…."). In contrast, the unambiguous language of the 1992 Agreement makes no mention whatsoever of a "revocation and regrant" of Shuster's copyright grants, which to this day continue to be relied upon by DC, including in the *Siegel* litigation and even in DC's FAC, because Shuster's grants clearly were never revoked. FAC, ¶ 46; Request for Judicial Notice ("RJN"), Ex. A.

The situation here is *very* similar to that in *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 986-89 (9th Cir. 2008), where the plaintiff publisher tried to evade

---

[2] DC has also failed to demonstrate that the 1992 Agreement *could have* transferred termination rights, because Peavy did not then and does not now have termination rights. This argument is addressed more fully in the reply brief of the Toberoff Defendants.

[3] DC's claim that the Shuster Terminations were invalid based on the failure to list the 1992 Agreement (FAC, ¶ 125) also makes no sense since the **1992** Agreement is obviously not a **pre-1978** agreement that would be subject to termination. 17 U.S.C. § 304(c).

statutory termination by mischaracterizing a redundant post-January 1, 1978 copyright grant as an *effective* "revocation and regrant" to artificially invoke *Milne's* narrow exception.  The Ninth Circuit held that the post-January 1, 1978 grant was a "nullity," as it purported to grant copyright interests previously assigned to the publisher, and that ***the redundant 1978 grant had no effect on the defendant's termination rights because it did not contain an express revocation of the operative pre-1978 grant***.  *Id.*  In this case, just as in *Mewborn*, the grantee (DC) already owned the copyrights at the time of the alleged regrant (the 1992 Agreement); the contract contained no language of revocation; the contract did not mention termination; and the grantor (Peavy) did not have an existing right to serve a notice of termination.  *Id.*; RJN, Ex. A.  In fact, DC's claim is even weaker than the publisher's rejected claim in *Mewborn*, because whereas Mewborn had a future termination right, Shuster's siblings, Jean Peavy and Frank Shuster, never had any termination rights.[4]

   *Mewborn* is thus directly on point.  Defendants' straw man that *Mewborn* contradicts *Milne* (Opp. at 11:7-22) and that the earlier decision controls is meritless.  *Mewborn* accepted *Milne*'s narrow exception, but refused to expand it to a situation where there was no express revocation and regrant, and the terminating party did not have termination rights at the time of the agreement.  Here, as in *Mewborn*, there was no express revocation or regrant in the 1992 Agreement, and neither Frank Shuster nor Jean Peavy held *any* termination rights.  DC's argument that Jean Peavy had the "authority" to revoke and regrant Shuster's copyright grants (Opp. at 12-13) is of no

---

[4] To imitate *Milne*, DC argues that Jean and Frank "were fully aware of the Copyright Act's termination provisions and expressly invoked them in their negotiations in 1992." Opp. at 11:23-12:6.  If so, they would have been "fully aware" that they had ***no termination rights*** with which to bargain.  Moreover, to fall within the *Milne* exception, the terminating party must have a present statutory right to terminate.  *See Mewborn*, 532 F.3d at 987 ("[T]he heir in *Milne* had the present right to serve an advance notice of termination …. [and] when [he] chose to use the leverage of imminent vesting to revoke the pre-1978 grant and enter into a highly remunerative new grant of the same rights … it was tantamount to following the statutory [termination] formalities.")  In fact, in 1992 no one held the Shuster termination rights.  It was not until the CTEA's passage in 1998 and the probating of the Shuster Estate in 2003 that the Shuster Executor, Mark W. Peary, was entitled to terminate Shuster's grants.

moment, because she failed to do so in the 1992 Agreement.[5]

### 2. This Court Can and Should Dismiss DC's Claim as to the 1992 Agreement Under Applicable New York Law

DC attempts to sidestep the complete lack of any language of "revocation and regrant" by dubiously arguing that the 1992 Agreement "raises fact issues that cannot be resolved now" as to supposed "intent." Opp. at 9. *See also id.* at 10-11; FAC, ¶¶ 52-57, 116. However, under New York law, which governs the 1992 Agreement,[6] the unambiguous terms of the 1992 Agreement can readily be resolved on a motion to dismiss as a matter of law: "Whether a contract is ambiguous is a threshold question of law to be determined by the court." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (granting Rule 12(b)(6) dismissal of contract claim).[7] "Contract language is not ambiguous if it has a 'definite and precise meaning … concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)). "[L]anguage of a contract is not made ambiguous simply because the parties urge

---

[5] DC overreaches further, arguing that "Peavy had full authority to assign beneficial rights in [Shuster's] putative copyright interests" (Opp. at 12:7-13:8), *i.e.*, that in 1992 Peavy somehow assigned the fruits of the Shuster Executor's unknown termination in 2003. This would be void under § 304(c)(6)(D) (invalidating transfers of termination interest until service of a termination notice) and § 304(c)(5) (voiding waiver of the termination right).

[6] This federal court applies California choice of law principles, and California follows the Restatement (2d) Conflict of Laws § 188(2), which holds that, absent a contractual choice of law provision, the laws of the state with a "materially greater interest" control. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1087 (9th Cir. 2009) (citing Restatement). The 1992 Agreement lacks a choice-of-law provision and: was drafted by DC, a New York partnership, in response to a letter from Frank Shuster, a New York resident; was sent from DC's New York headquarters and is written on DC's New York stationary; was between two New York parties (DC and Frank Shuster) and a New Mexico party (Peavy); and concerned the Superman property owned and managed by DC in New York. RJN, Ex. A. New York law clearly applies. *See American Int'l Enters. v. FDIC*, 3 F.3d 1263, 1269 (9th Cir. 1993) (approving the resolution of choice-of-law questions on a motion to dismiss).

[7] Nor does DC's argument that the 1992 Agreement is not "integrated" permit extrinsic evidence. Opp. at 10:4-5, FAC, ¶55. The Second Circuit (applying New York law) held "[i]t is a fundamental principle of contract interpretation that, in the absence of ambiguity, the intent of the parties must be determined from their final writing and no parol evidence or extrinsic evidence is admissible," even where contract was not integrated and referenced other contracts. *Int'l Klafter Co. v. Cont'l Casualty Co.*, 869 F.2d 96, 99 (2d Cir. 1989).

different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (quotation omitted).

Here, DC alleges, without even the slightest support, that the 1992 Agreement "operated to revoke, rescind, and replace Shuster's prior copyright grants and agreements," in an attempt to jam it into the narrow *Milne* exception. FAC, ¶ 55, 112-13, 116. However, as noted above, there is **no language whatsoever** of revocation, rescission or re-grant[8] in the 1992 Agreement; and as discussed in *Steinbeck,* heavily cited by DC, New York law requires express language for a revocation and replacement of pre-existing contracts. 537 F.3d at 200 ("Under New York law, 'parties to an agreement can mutually agree to terminate it by expressly assenting to its rescission while simultaneously entering into a new agreement dealing with the same subject matter.'") (quoting *Jones v. Trice*, 202 A.D.2d 394, 395 (1994)).[9] DC can cite no authority for its unavailing argument that the phrase "'fully settled'" is clear evidence of a revocation." Opp. at 9:18-20.[10] If DC intended to revoke Shuster's critical Superman copyright grants, DC's legal department certainly could have drafted the 1992 Agreement to reflect that. As the 1992 Agreement unambiguously is not a "revocation and regrant," this Court must dismiss this part of DC's First Claim as a matter of law. *See Dyncorp v. GTE Corp.*, 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002) ("[S]ince the interpretation of a contract

---

[8] In desperation, DC and its counsel resort to manipulatively misquoting the language of the 1992 Agreement, claiming that the 1992 Agreement says that Frank Shuster and Jean Peavy "'*now grant[s] to us* [*i.e.,* DC Comics] any … copyrights, trademarks or other property right in any and all work created in whole or in part by [Shuster]'" to evoke such language. Opp. at 8 (quoting FAC, ¶ 55) (ellipses in original). After the phrase "now grants," DC added "any … copyrights, trademarks or other property right[s]," when that language appears ***before*** "now grants" in the 1992 Agreement as part of a more qualified sentence.

[9] DC cites an inapplicable *California* case to argue that "the prior agreement may be deemed rescinded" even absent express language. However, even that case is of no help to DC. *See McCreary v. Mercury Lumber Distrib.*, 124 Cal. App. 2d 477, 484-86 (1954) (rescission found where the new agreement did not mention rescission, *but* one party later formally repudiated and rescinded the original agreement, and the other party acquiesced).

[10] DC cites the Restatement (2d) of Contracts § 279, Comment (a), but this merely says "[i]f the parties intend the new contract to replace all of the provisions of the earlier contract, the contract is a substituted contract."

5
DEFENDANTS PEARY AND PEAVY'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

generally is a question of law ... the court may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief.").[11]  Here, DC has alleged <u>nothing</u> – in or outside the contract – that would satisfy the requirement that a contract's rescission be "clearly expressed."  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("[A] complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'").

Moreover, 17 U.S.C. § 204(a) invalidates transfers of copyright ownership unless they are in a signed writing that identifies the terms of the transfer ***with particularity***.  *See Effects Associates, Inc. v. Cohen*, 208 F.2d 555, 557 (9th Cir. 1990) (requirement ensures that "parties need only look to the <u>writing</u> that sets out their respective rights"); *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994) (requirement allows parties "to determine precisely what rights are being transferred").  There is nothing to "regrant" without a specific "revocation" of Shuster's prior grants that brings both within § 204(a)'s express writing requirement.

### B.     The Shuster Executor Held Termination Rights under § 304(d)

DC's Opposition does nothing to salvage its specious argument that the Shuster Executor purportedly had no termination right under § 304(d) because Joe Shuster's termination rights did not "expire," but were "extinguished" with his death in 1992.  FAC, ¶¶ 107-11.[12]  DC's sophistry (Opp. at 14-16) rests on the false pretense that there is a meaningful distinction between rights "expiring" and rights

---

[11] *See also Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 248 (S.D.N.Y. 2008) (granting 12(b)(6) motion to dismiss on contract claim where the "four corners of the contract unambiguously" refuted plaintiff's interpretation).  *Mattel,* cited by DC, applies California law to California contracts that are facially ambiguous.  *See Mattel, Inc. v. MGA Entm't, Inc.*, 2009 U.S. App. LEXIS 29187, at *18-*19 (9th Cir. July 22, 2009) (holding that the phrase "'at any time during my employment'" was ambiguous, as it was unclear whether it pertained to "the entire calendar period" or only "work hours").

[12] DC makes much ado about nothing re: Defendants' citation of *Nimmer* (Opp. at 16), as the language DC quotes *supports* Defendants' position that § 304(d) was passed because CTEA would otherwise "exacerbat[e] the imbalance arising from the fact that the author (or his heirs) failed to terminate previously, whether through neglect or inability." 3 *Nimmer* § 11.05[B][2] at 11-40.12.  DC ***never*** rebuts what Defendants and *Nimmer* point out:  that "inability" to terminate under § 304(c) could arise "because no one was alive to effectuate termination," and that CTEA "solves that latter situation."  *Id*. at n.25; Mot. at 7.

that "cease to exist." Courts routinely use the term "expired" to describe rights that "cease to exist" upon death. *See Groucho Marx Prods. v. Day & Night Co.*, 689 F.2d 317, 320 (2d Cir. 1982) ("'[T]he right is not descendible and expires upon the death of the person so protected.'") (citations omitted); *Milton H. Greene Archives v. CMG Worldwide,* 568 F. Supp. 2d 1152, 1156 (C.D. Cal. 2008) ("[T]hat right expired on an individual's death.").[13]

DC falsely states that "[n]o case has been located that directly interprets the word 'expired' in this context" (Opp. at 15), but *Steinbeck* (repeatedly cited by DC) plainly holds that § 304(d) termination rights "expire" on death. 537 F.3d at 197 ("Her statutory termination rights [under § 304(d)] expired upon her death.").

DC also unreasonably argues that, even though Congress in the 1998 CTEA provided a new termination right under § 304(d) and expressly extended the termination right in *both* § 304(c) and § 304(d) to an author's estate in § 304(c)(2)(D) (referenced in § 304(d)), estates somehow do not have such a termination right under § 304(d), since they had no termination right under the former § 304(c).[14] DC insists that the remedial termination rights are "restrictive," but provides no evidence that Congress intended to restrict them in the counterintuitive way that DC advocates.

DC also maintains its bizarre argument that an executor only has termination rights if there was "a widow, child or grandchild" at the time of the author's death, relying on Webster's dictionary as its principal authority. Opp. at 16-17. As stated in Defendants' Motion, this leads to absurd results – *e.g.,* if an author was divorced at the time of his death, his executor would have no rights. Mot. at 5-6. DC provides no reason why the Court should ignore the Supreme Court's rejection in *Stewart v.*

---

[13] Contrary to DC's false distinction, courts also describe rights as "extinguished" when the time for exercising them has "expired." *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) ("[T]he right in question was extinguished when the three-year period expired."); *Bateman v. Donovan*, 131 F.2d 759, 762 (9th Cir. 1942) ("After the redemption period expired and [defendant's] right to redeem had been extinguished….").

[14] DC tortured interpretation of the Copyright Office's clear and unconditional statement that termination rights expire "59 years … after copyright was secured" (Opp. at 16) is equally meritless, because the Copyright Office could have but clearly did not add DC's self-serving requirement that an author remain alive for the full 59 years, but fail to act.

7
DEFENDANTS PEARY AND PEAVY'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

*Abend*, 495 U.S. 207, 212 (1990) of DC's interpretation of "not living," or why "not living" should be interpreted differently as to sub-sections 304(a) (renewal) and 304(c) (recapture of the renewal copyright), instead of being interpreted consistently throughout the same statute. *See* Mot. at 4-5. Nor can DC justify its rejection of *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364 (S.D.N.Y. 1999), contradicting DC's interpretation of "not living" <u>in the termination context</u>.

### C. **Pacific Pictures Had No Termination Rights and Was Not Required To Sign the Shuster Termination Notice as a Matter of Law**

DC attempts to create confusion as to its claim that Pacific Pictures needed to sign the Shuster Termination (FAC, ¶¶ 118-24) by arguing that the Shusters had "expressly assigned 50% of whatever interests they held to Pacific Pictures," and that this supposedly presents "an open fact question that cannot be resolved on this motion." Opp. at 20-21. As shown in Defendants' Motion, and as DC itself insists in its FAC (¶ 167), under § 304(c)(6)(D) "[a] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination." Thus, as a pure matter of law, the Pacific Picture Agreements could not and did not transfer the Shuster Executor's termination rights or prospective termination interests. As such transfers were void *ab initio*, they also cannot support DC's "unclean hands" claim. FAC, ¶ 130. DC's argument that "Defendants' concession that these agreements were 'void *ab initio*' … *confirms*" unclean hands is unfathomable: if the transfers were void and Pacific Pictures **was** listed, there would have been a material misstatement in the termination notice.

### D. **DC Cannot State a Claim for Unclean Hands**

#### 1. **Unclean Hands Is Not a Claim for Relief**

As set forth by the Ninth Circuit, "[t]he doctrine of unclean hands does not obviously apply where it is [the plaintiff], not the [defendant], who seeks relief." *Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir. 2003). The rationale is that "unclean hands" is a "defensive doctrine," against "plaintiffs seeking equitable relief and is

dependent on the actual relief sought. *Id.* Thus unclean hands must be "relat[ed] to the matter in which [plaintiff] seeks relief," and not "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (citations omitted). DC does not allege that the Shusters have sought equitable relief, nor have they; there is thus no basis for an affirmative cause of action for purported "unclean hands."

### 2. There Are No "Unclean Hands" With Respect to *Superboy*

DC's concocts its "unclean hands" claim based on alleged manipulation of Superboy rights by the Siegels and Shusters (FAC, ¶¶ 131-33) and claims the Shuster Termination is "fraudulent" because it did not try to recapture Superboy. However, in the 1947 "Westchester action" brought by Siegel and Shuster, the Court explicitly held that an original 1940 Superboy script was solely authored by Jerry Siegel and that Superboy was created by Siegel alone. RJN, Ex. E, FF ¶¶ 160-62, 164-65; COL, ¶¶ 25-26. DC argues that these factual findings are not preclusive and cites Judge Larson's decision in *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111 (C.D. Cal. 2007). In fact, DC made the same argument to Judge Larson, who expressly held that the factual findings in the 1947 action were binding: "[T]he referee's findings must be given preclusive effect, but as a matter of collateral estoppel." *Id.* at 1121. As the Shuster Termination is consistent with such Superboy findings, it is neither "fraudulent," nor a basis for unclean hands as a matter of law. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1240 (C.D. Cal. 2007) ("Plaintiffs' legal position with respect to an ambiguous statute cannot be the basis of an unclean hands defense."); *Brother Records v. Jardine*, 318 F.3d 900, 910 (9th Cir. 2003) (unclean hands in copyright case requires fraud).

DC attempts to obfuscate this straightforward legal issue through recitation of irrelevant allegations. *First*, to the extent that "Superman as a youth" was depicted in works terminated by the Shuster Executor (*e.g., Superman,* No. 1), such elements were terminated. Opp. at 19:19-20, 20:17-23. What was not terminated was the

separate Superboy character delineated in Siegel's 1940 script.  *Second*, the copyright renewal notices as to Superman and Superboy in 1972-73, relied on by DC (Opp. at 20:6-8), were held by the Second Circuit to be invalid, and cannot bind the Shusters. *Siegel v. Nat'l Periodical Publ'ns., Inc.*, 508 F.2d 909, 912-13 (2d Cir. 1974).  *Third*, that Shuster eventually provided the artwork to the first published appearance of Superboy in the 1944 *More Fun Comics*, No. 101 (Opp. at 20:4-6) is irrelevant, since that work was not within the termination window of § 304(d).  *See* Mot. at 18:21-19:14.  *Fourth*, that "the Shusters could have claimed they recaptured certain Superman copyright elements … and to the extent Superboy was based on those elements, that they own those parts of Superboy" (Opp. at 20:19-22) offers no support, as different legal positions as to an "ambiguous" situation do not give rise to "unclean hands."  *MGM Studios, Inc.,* 518 F. Supp. 2d at 1240.[15]

### E. DC's Claims Are Barred by the Statute of Limitations Defense

DC fails to refute that DC's First Claim is plainly time barred by the Copyright Act's 3-year limitations period, as DC filed its complaint 6½ years after it was served with the Shuster Termination expressly repudiating DC's co-ownership of the original Superman copyrights.  *See* 17 U.S.C. § 507(b); *Zuill v. Shanahan*, 80 F.3d 1366, 1369-70 (9th Cir. 1996); 17 U.S.C. § 304(c)(6)(B) (future rights vest "on the date the notice of termination has been served").  Contrary to DC's assertions (Opp. at 22), Judge Larson, after endorsing *Zuill*, found that the only DC letter which expressly repudiated the Siegel termination was sent on April 15, 1999, the very "day before the termination effective date,"[16] and that the statute of limitations therefore began to accrue the next day. *Siegel,* 542 F. Supp. 2d at 1135-36.[17]

---

[15] Superboy is a separate character in a separate line of Superboy comics, etc. that are distinct from DC's two isolated panels of Superman as a boy.

[16] DC advocated "that such a [triggering] repudiation was expressed by a letter submitted to plaintiffs' counsel dated December 18, 1997." *Siegel v .Warner Bros. Entertainment Inc.*, ("*Siegel* I") 542 F. Supp. 2d 1098, 1134 (C.D. Cal. 2008).

[17] DC's retort (Opp. at 22-23) that the Shuster Termination would be barred based on a Toberoff letter – stating "[DC's] prior letter… den[ied] our clients' termination interests" – is frivolous.  *First*, DC does not – because it cannot – attach a letter from *DC* that shows such a repudiation.  *Second,* the phrase "our clients," omitted by DC, refers to the *Siegels*,

10
DEFENDANTS PEARY AND PEAVY'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

## II. DC'S FAC MUST BE DISMISSED OR STAYED TO THE EXTENT IT RAISES ISSUES RESOLVED OR TO BE RESOLVED IN *SIEGEL*

DC's First Claim as to the 1948 Consent Judgment (FAC, ¶¶ 126-28) and Second Claim (*id.*, ¶¶ 135-64) are a blatant attempt to re-litigate issues thoroughly litigated and resolved in the *Siegel* actions, and which are equally applicable to both the Siegel and Shuster terminations, since Siegel and Shuster co-authored the same Superman works and executed the same Superman grants subject to termination. DC unwittingly admits this. *See, e.g.,* Opp. at 21:8-22:5 (advancing rejected arguments as to the 1948 Consent Judgment based on the sole excuse that "Judge Larson's ruling is not a final order"). To distinguish the Shuster Termination, DC misleadingly quotes from an opposition to a motion to compel third party discovery in the *Siegel* case.[18]

The two cases undeniably present many identical issues;[19] DC has been "fully heard" on such issues, and the doctrine of issue preclusion will bar DC from re-litigating those issues *after* final judgment is entered in *Siegel* either on the Siegels' pending Rule 54(b) motion or after the pending accounting trial. Defendants do not suggest that *Siegel* upheld the Shuster Termination (*i.e.*, claim preclusion), only that DC is bound by *Siegel's* rulings on the same *issues*. For instance, this Court's ruling after six years of litigation that certain works by Siegel *and Shuster* were not "works for hire" and are subject to termination, or that the 1948 Consent Judgment signed by Siegel *and Shuster* was not a grant and need not be listed in a termination notice, are equally applicable to Shuster and the Shuster Termination.

DC's attempt to re-litigate *all* these issues in its FAC wastes judicial resources and poses a real danger of inconsistent rulings, unless this Court applies the "law of

---

mentioned elsewhere in the letter, because DC did send them a repudiation letter on April 15, 1999. See Siegel I, 542 F. Supp. 2d at 1135.

[18] The statements therein that "the Siegel Litigations do not concern Shuster's copyright interests in *Superman*" (DC RJN, Ex. C at 4, 13) are correct, and do <u>not</u> relate to whether re-litigation in this case of the same issues are barred by "law of the case" or issue preclusion.

[19] *Compare* DC FAC, ¶¶ 153-54, 158-59 *with Siegel I*, 542 F. Supp. 2d at 1126-30; *Siegel II*, 658 F. Supp. 2d 1036, 1063-68, 1083 (C.D. Cal. 2009) (work for hire issues); DC FAC ¶¶ 155-57 *with Siegel I*, 542 F. Supp. 2d at 1118-26 (termination of the "Ads"); FAC, ¶¶ 153-54 *with Siegel II,* 658 F. Supp. 2d at 1061 (unpublished Superman works).

the case" doctrine to dismiss these duplicative claims[20] or stays the claims until a final judgment is entered in *Siegel*, resulting in issue preclusion.  DC's hyperbole that "[s]taying any part of this action … would create chaos and other litigation inefficiencies" is unavailing.  Opp. at 25.  DC offers no reason why its Second Claim should not be stayed when the identical issues are decided or pending in the much more advanced *Siegel* case.

DC also fabricates factual issues to cast doubt on the clear application of the *Siegel* rulings to this case:  "Shuster continued to work for DCI and/or its successors [after Siegel and Shuster's 1938 employment agreement] even when Siegel did not, and therefore may have had oral or written employment agreements independent of Siegel."  FAC, ¶ 146; Opp. at 23:18-21.  However, as DC itself asserted, "[t]he court ruled that all material created by Siegel after [that] 1938 employment agreement with DCI" was "work-for-hire."  Complaint, ¶ 146 n.5.  Thus, whether Shuster continued to work for DC thereafter under different agreements is not pertinent to whether the "work for hire" determinations in *Siegel* binds DC, since all post-1938 works by Siegel and Shuster were found to be "work-for-hire."

## CONCLUSION

Plaintiff's First and Second Claims for Relief should be dismissed or stayed.

DATED:  October 4, 2010        TOBEROFF & ASSOCIATES, P.C.

By _____
   Marc Toberoff

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel and Laura Siegel Larson

---

[20] Courts apply the "law of the case" doctrine to **closely related** cases.  *See Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994) ("[L]aw of the case rules apply to subsequent rulings by the same judge in the same case or a closely related one."); *U.S. v. Musick*, 534 F. Supp. 954 (N.D. Cal. 1982) ("[T]he general rule is that a decision in one case is … the law of the case in a related action if it involves the same subject matter and if the points of decision and facts are identical.").  Contrary to DC's argument, *Farina v. Nokia*, 578 F. Supp. 2d 740, 753 (E.D. Pa. 2008) recognized that, notwithstanding the revisions to the Wright treatise, 18 Federal Rules and Practice § 4478 (2002), "law of the case rules apply to subsequent rulings by the same judge in the same case or a closely related one."