1  DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone: (310) 553-6700
6  Facsimile: (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone: (845) 265-2820
10 Facsimile: (845) 265-2819

11 Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>Hon. Otis D. Wright II<br><br>**DC COMICS' EVIDENTIARY OBJECTIONS TO AND MOTION TO STRIKE NEW EVIDENCE SUBMITTED WITH TOBEROFF DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW (CAL. CODE CIV. PROC. § 425.16)**<br><br>**Hearing Date**: October 18, 2010<br>**Hearing Time**: 1:30 p.m.<br>**Complaint Filed**: May 14, 2010 |

1   Plaintiff DC Comics hereby objects to and moves to strike the new evidence
2   filed by defendants on October 4, 2010 with the Toberoff Defendants' Reply
3   Memorandum In Support Of Motion To Strike Plaintiff's State Law Causes of
4   Action Pursuant To California's Anti-SLAPP Law (Cal. Code Civ. Proc. § 425.16)
5   ("SLAPP Reply").  Portions of the declarations of Marc Toberoff and Kevin Marks,
6   as well as one exhibit in the declaration of Nicholas Daum, must be stricken since
7   such new evidence and related argument may not be raised for the first time on
8   reply.  This is especially true where, as here, the issues in question were known to
9   defendants when they filed their initial motions.  Defendants' new evidence,
10  moreover, only underscores DC Comics' need for discovery before the Court can
11  resolve defendants' pending SLAPP motion, which challenges the factual
12  allegations in DC Comics' complaint and presents numerous additional factual
13  issues of its own.

**I.   DEFENDANTS' IMPROPER REPLY EVIDENCE MUST BE STRICKEN.**

"It is well established that issues cannot be raised for the first time in a reply brief." *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).  The new evidence in question relates to the Toberoff Timeline, which was prominently discussed in DC Comics' complaint and attached as Exhibit A.  Defendants had every opportunity to fully address the Timeline in their moving papers and are not permitted to wait until their reply to spring their evidence and argument regarding it on DC Comics.  *See id.*; C.D. Cal. R. 7-10 (limiting reply papers to "rebuttal evidence"); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 975-76 (N.D. Cal. 2006) (sustaining objection to evidence first filed in reply brief).

"The remedy for dealing with new evidence first appearing in a reply is that [the court] will not consider issues or evidence….," *Am. Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, 2009 WL 775104, at *1 (D. Ariz. Mar. 20, 2009), or at the very least, must give DC Comics the opportunity to respond to it, *e.g.*, *Provenz*

*v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[w]here new evidence is presented in a reply …, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond"). Therefore, the entirety of Marks' declaration should be stricken, since its sole subject is the Timeline and it could have been presented with the motion. Paragraphs 14-15 of Toberoff's declaration, which address only the Timeline, also should be stricken. So must Exhibit A to Daum's declaration, a declaration by Warner Bros.' in-house attorney Wayne Smith concerning the Timeline that was filed in the *Siegel* case, offered for the first time in reply to support defendants' unmeritorious statute-of-limitation arguments.

## II. DEFENDANTS' NEW REPLY EVIDENCE IS OBJECTIONABLE ON OTHER GROUNDS.

Should the Court decline to strike the new evidence identified above, DC Comics submits the remainder of this brief to further object and respond to the new evidence and arguments submitted in defendants' reply.

### A. Defendants' New Evidence Further Compels the Need for Discovery Before Defendants' SLAPP Motion Is Heard or Resolved.

No discovery has *ever* been taken concerning the events summarized in the Toberoff Timeline. Denying defendants' motion to bar use of the Timeline, Magistrate Zarefsky held that DC Comics is entitled to discovery regarding the Timeline—despite defendants' unending complaints about the origins and contents of the document. Docket No. 74 (Sept. 20, 2010 Order); Docket No. 42 (Joint Stip. re: Defs.' Mot. for Protective Order ("Timeline Mot.")) at 4-7, 40-61; Docket No. 92 (Pl.'s Opp. to Defs.' SLAPP Mot. ("SLAPP Opp.")). Moreover, Ninth Circuit law entitles DC Comics to take that discovery before ruling on defendants' SLAPP motion. Docket No. 92 (SLAPP Opp.) at 8-11; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1099-1100 (N.D. Cal. 2003). Defendants cannot preclude DC Comics'

1  right to discovery by submitting further self-serving declarations on which the
2  declarants have never been deposed.
3     Defendants contend no discovery is necessary since "(1) the bulk of the
4  [SLAPP] motion is directed at the FAC's legal deficiencies; (2) DC has already
5  taken discovery during the six-year *Siegel I* litigation on the extremely narrow
6  factual issues; and (3) all of the relevant witnesses have already been deposed."
7  Docket No. 98 (SLAPP Reply) at 12.  This is baseless.  First, by its express terms—
8  and as this latest round of defense declarations makes clear—defendants' SLAPP
9  motion directly rests on disputed assertions of fact.  *See* Docket No. 92 (SLAPP
10 Opp.).  Second, Magistrate Zarefsky rejected defendants' arguments that discovery
11 in the *Siegel* cases served as a substitute for discovery in this new case.  Docket No.
12 42 (Timeline Mot.) at 4-7, 40-61; Docket No. 74 (Sept. 20, 2010 Order).  This
13 ruling was unassailably correct, because none of the witnesses in the *Siegel* cases
14 was deposed on critical factual questions posed by defendants' SLAPP motion,
15 including Toberoff's unsupportable claim that in making business deals with the
16 Siegels and Shusters to secure rights for himself and his entertainment companies,
17 he acted as a lawyer "in serious contemplation of litigation," rather than a rights-
18 hunting entrepreneur capturing rights for himself.  Docket No. 92 (SLAPP Opp.) at
19 8-11.  Third, no witness has been deposed regarding the Timeline or the underlying
20 documents.  These documents include an email from the Siegels to Toberoff
21 corroborating his wrongful inducement of the Siegels to cut ties to DC Comics—an
22 email never addressed or mentioned in the Marks declaration or in defendants'
23 reply briefing.

24     **B.   The Marks Declaration Does Not Address the Substance of DC
25          Comics' Fifth Claim for Relief.**

26     DC Comics' fifth claim alleges Toberoff intentionally interfered with the
27 ongoing business relationships between DC Comics and the Siegels by, among
28 other things, fraudulently inducing the Siegels to repudiate an October 2001

settlement agreement, as well as their longstanding relationship with DC Comics. FAC ¶¶ 184-85; Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) ¶¶ 44-46 & Exs. 24, 31.  Toberoff "approache[d] the Siegels, *not as an attorney but as a film producer*," and induced them to sign with IP Worldwide in October 2002 by "falsely misrepresenting to the Siegel Heirs that he had a billionaire investor ready to purchase their Superman rights if they repudiated their settlement agreement with DC Comics; [and] falsely representing to the Siegels that he would help them produce a competing superman motion picture."  FAC Ex. A at 2 (emphasis in original).  The IP Worldwide Agreement "grant[ed] IPW the exclusive right to represent [the Siegels] in negotiating and assisting … to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights."  Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) Ex. 34 ¶ 1.  Neither Toberoff nor IP Worldwide ever sold or disposed of these rights (except to give them to themselves), further showing that these were simply false promises to interfere with the relationship between DC Comics and the Siegels.

      Defendants say that the Marks declaration refutes the allegations underlying this fifth claim for relief.  Docket No. 98 (SLAPP Reply) at 4-6; Docket No. 98-3 (Marks Decl.) ¶¶ 4-5.  In addition to the fact that defendants are precluded from first revealing this new evidence on reply, their characterization of it is incorrect. First, Marks' declaration confirms that in August 2002, Ari Emanuel, Mr. Toberoff's business partner in IP Worldwide, discussed with him "actual or prospective investors" who "wanted to make a proposal" to acquire the Siegels' alleged Superman rights—rights that DC Comics owned as a result of the 2001 settlement agreement.  Docket No. 98-3 (Marks Decl.) ¶ 4.  Second, Marks' declaration does not address Toberoff's statement to *the Siegels themselves*, not Marks, "**that there never was a billionaire willing to invest $15 million when he first approached them**," as the Timeline discloses.  FAC Ex. A at 6 (emphasis in original).  Third, the Marks declaration says nothing about the email exchange

between Toberoff and Laura Siegel Larson in October 2005 regarding why Toberoff could not produce a Superman film based on the Siegels' alleged Superman rights, in contrast to his representations in inducing them to terminate their relationship with DC Comics. This email exchange was ordered produced to DC Comics, together with the Toberoff Timeline document, in December 2008—after the close of discovery in the *Siegel* cases. DC Comics is entitled to conduct discovery regarding this email and the Timeline, and the Marks declaration only highlights the need for this discovery.

      Defendants claim that the Marks declaration proves there was no interference because Marks stated that neither Toberoff nor Emanuel mentioned a "billionaire investor" or the production of a competing Superman movie in the one and only conversation that Marks' declaration addresses. Docket No. 98 (SLAPP Reply) at 7, 10-11; Docket No. 98-3 (Marks Decl.) ¶ 3. Marks' statement proves no such thing. Marks testified in the *Siegel* case to having had several conversations with Toberoff, including ones in which Toberoff made Marks uncomfortable by asking for confidential information Marks told Toberoff he could not disclose, Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) ¶¶ 43-45, yet his declaration carefully and selectively discusses only one conversation. Furthermore, while Marks denies hearing the words "billionaire investor" in the one conversation, he admits that Emanuel stated that there was an "investment fund" being set up to purchase the Siegels' purported rights in the Superman property. Docket No. 98-3 (Marks Decl.) ¶ 4. Marks also testified that Toberoff said "he had a separate company that was in the business of acquiring intellectual property rights [and] that he was interested in the Superman property and the Superboy property." Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) ¶ 43. Marks' deposition in the *Siegel* case occurred before production of the Timeline and other documents in December 2008, so Marks has never been examined about or in the light of this new evidence.

Also immaterial is Marks' statement that neither Toberoff nor Emanuel discussed producing a competing Superman movie, given that he limited his declaration to a single "conversation that occurred on or around August 7, 2002," despite having had other communications with Toberoff. Docket No. 98-3 (Marks Decl.) ¶ 5 ("At no time during *that conversation*….") (emphasis added). Moreover, Marks previously testified that during that conversation, Toberoff and Emanuel "made a proposal of $15 million and what was described as a meaningful back end … in the exploitation of the [Superman] property." Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) ¶ 45. DC Comics is entitled to depose Marks and probe to the full extent of his knowledge and cannot be confined to the carefully crafted statements included in his declaration, especially in light of the Timeline and other new documents.

Furthermore, Marks' declaration:

- does not address the identity of any of the purported investors in the fund;
- does not dispute that Toberoff approached the Siegels as a businessman, not as a lawyer;
- does not dispute that Marks said he would testify against the Siegels if they accepted Toberoff's offer and breached their agreement with DC Comics;
- does not address the February 2002 phone call between Marks and Toberoff or other contact by Toberoff with Marks or the Siegels; and
- does not address whether Toberoff lied to the Siegels or how Toberoff later admitted that he misled them.

Marks' declaration also may conflict with a 5-page July 11, 2003 letter from Laura Siegel Larson to her brother, Michael Siegel, which was attached to a fax cover page from Ms. Larson to Toberoff. Case No. CV 04-8400, Docket No. 295-2 (Supp. Smith Decl. re: Sept. 17, 2007 Order re: Escrow Documents) ¶¶ 6-7. This was one of the documents anonymously sent to Warner Bros. with the Timeline and, as Mr. Smith recalled, discussed the claim that Toberoff had an "investor"

ready to purchase the Siegels' respective rights, consistent with the statements in the Timeline. *Id.* ¶ 7. The letter is not privileged, and did not become privileged just because Ms. Larson subsequently faxed it to Toberoff. *E.g.*, *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact that a person is a lawyer does not make all communications with that person privileged."). But Toberoff represented, as an officer of the court, that it was privileged, and on that basis alone Judge Larson declined to order its production. Case No. CV 04-8400, Docket No. 244 (Toberoff Decl. re: Sept. 17, 2007 Order re: Escrow Documents) ¶ 32; Case No. CV 04-8400, Docket No. 374 (Sept. 26, 2008 Order re: Escrow Documents) at 4. DC Comics intends to seek production of the letter in this case.

### C. The Toberoff Declaration Does Not Address the Substance of DC Comics' Claims for Relief.

Through the Toberoff declaration, defendants again mischaracterize DC Comics' fourth through sixth claims, all of which are aimed at Toberoff's acts of fraud and interference in pursuit of his private, commercial business interests. Toberoff cannot shield his business conduct merely because he also has the capacity to act as an attorney. The Toberoff defendants' illicit backroom business dealings in securing the Siegel and Shuster heirs' putative rights for themselves, in derogation of DC Comics' contracts, relationships, and protectable interests under state and federal law, are not protected by the SLAPP statute or litigation privilege.

DC Comics' fourth and sixth claims allege that Toberoff, in his role as a movie producer and through his production company Pacific Pictures, tortiously interfered with DC Comics' agreement with the Shusters by inducing them to enter into a joint venture with Pacific Pictures and transfer their purported rights in the Superman property to the venture. FAC ¶¶ 175-79, 188-89. DC Comics' rights were further violated by provisions of the 2001 Pacific Pictures agreement that prohibited the Shusters from making any agreement with respect to the Superman rights without Pacific Pictures' express consent. *Id.* ¶¶ 63, 169. These unlawful

consent provisions were continued in 2003, when Toberoff and the Shusters amended the joint-venture agreement, and in further consent agreements disclosed to DC Comics in 2008 and 2010. Docket No. 89 (Pl.'s Opp. to Defs.' Mot. to Dismiss and/or Stay First and Second Claims) at 5-13; Docket No. 90 (Pl.'s Opp. to Defs.' Mot. to Dismiss and/or Strike Third and Sixth Claims) at 4-14, 16-24; Docket No. 91 (Pl.'s Opp. to Defs.' Mot. to Dismiss Fourth and Fifth Claims) at 1-2, 9-10, 17-18. DC Comics' fifth claim focuses on acts of fraud and similar improper agreements in which Toberoff, in his capacity as businessman and movie producer, induced the Siegels to terminate their contractual and business relationships with DC Comics. FAC ¶¶ 181-86.

Because none of this misconduct concerns the practice of law, DC Comics' claims are not subject to California's SLAPP statute or litigation privilege. Toberoff's reply declaration comes nowhere close to showing otherwise. Rather than addressing the thrust of DC Comics' complaint or opposition papers (*i.e.*, repeated admissions by Toberoff that he keeps his business and law practice separate and overwhelming proof that he did not act as a lawyer, but as a rights-hunter, Docket No. 92 (SLAPP Opp.) at 1-8), Toberoff's declaration is littered with irrelevant articles about Toberoff's activities as a lawyer unrelated to this litigation and unsubstantiated testimony concerning his representation of parties other than the Siegel and Shuster heirs.

Specifically, paragraphs 4-9 are objectionable because they contain statements about Toberoff that lack foundation or any substantiation (FRE 602); contain hearsay (FRE 802); are offered as impermissible character evidence (FRE 404); and are not relevant to any issue presently before the Court (FRE 401). DC Comics has alleged specific acts of misconduct by Toberoff in the conduct of his entertainment business, not his character or work as a lawyer. Paragraphs 10-13 concern Toberoff's representation of clients other than the Siegels and Shusters in litigation unrelated to this case. Again, this testimony is impermissible character

evidence (FRE 404); rife with hearsay and lacks any substantiation or foundation (FRE 602, 802); and constitutes an improper self-serving opinion testimony (FRE 602, 701, 702). In the absence of discovery and cross-examination, Toberoff's assertions cannot be accepted as true.

Toberoff's reply declaration is also significant for what it omits: any statements contradicting DC Comics' allegations that Toberoff engaged in the challenged misconduct as a businessman. For example, the declaration fails to explain any of the following:

- why Toberoff demanded that the Siegel and Shuster heirs assign their purported Superman rights to him or his companies if he only intended to form an attorney-client relationship;
- why Toberoff required the Shusters to enter into an agreement that he now admits violates the Copyright Act and is thus "void *ab initio*," Docket No. 78 (Defs.' Mot. to Dismiss and/or Strike Third and Sixth Claims) at 8;
- how the 2001 Pacific Pictures agreement can be viewed as a litigation retainer agreement when in the nine years since its execution, neither Jean Peavy nor Mark Peary has ever filed any litigation against DC Comics concerning the Superman rights;
- why the 2003 amendment to the Pacific Pictures agreement specifically affirms that "PPC … is not a law firm";
- why Toberoff signed the 2001 and 2003 Pacific Pictures agreements as "president" of Pacific Pictures;
- why Toberoff approached the Siegels as a businessman, and not as an attorney;
- why the IPW Agreement states that the Siegels had not engaged IP Worldwide or Toberoff to represent the Siegels *in any form of litigation*;

- how an attorney-client relationship could be formed through the IPW Agreement when IP Worldwide is a joint venture between Pacific Pictures, Toberoff's production company, and Emanuel, who is a talent agent;
- why Toberoff's relationship with the Siegel and Shuster heirs differed from his stated policy of maintaining a "defined firewall between producing and legal matters"; and
- why Toberoff required the Siegel and Shuster heirs to give him or his companies consent rights regarding settlement of their claims. Indeed, if Toberoff were acting as a lawyer in obtaining these consent provisions, this would violate the ethical rules applicable to attorneys, *see* CAL. RULES OF PROF'L CONDUCT R. 3-300, and render the agreements void as against public policy, *see Calvert v. Stoner*, 33 Cal. 2d 97, 103 (1948) (a "contract providing that the client may not compromise the suit without the consent of his attorney is against public policy and void."); *The Golden Star*, 82 F.2d 687, 688 (9th Cir. 1936) ("It is unquestioned that parties to a lawsuit may settle and compromise their litigation without consulting counsel."); *Lewis v. S. S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) (same); *In re Plaza*, 363 B.R. 517, 521 (S.D. Tex. 2007) (an "agreement prohibiting the client from settling without the attorney's consent is void as against public policy.").

*See generally* Docket No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.). Toberoff's silence on each of these critical issues shows just how misleading his declaration is, just how much discovery is required, and exactly why defendants have not satisfied their burden of showing that the SLAPP statute or litigation privilege shields Toberoff's misconduct.

      Paragraphs 14-15 only repeat defendants' complaints about the Toberoff Timeline—a refrain rejected by both Judge Larson and Magistrate Zarefsky. *Supra* at 2. This testimony is also objectionable because it lacks foundation (FRE 602) and contains hearsay (FRE 802). Defendants, moreover, have refused to disclose

1  the identity of the Timeline's author despite DC Comics' repeated requests, Docket
2  No. 94 (Petrocelli Decl. in Supp. of SLAPP Opp.) ¶ 7, and even after the Magistrate
3  confirmed DC Comics' entitlement to discovery concerning the Timeline, Docket
4  No. 74 (Sept. 20, 2010 Order).  The need for discovery is only further underscored
5  by Toberoff's new testimony, which still does not disclose the author's identity or
6  explain why Toberoff did not initiate legal action against the author.  In the absence
7  of discovery, Toberoff's self-serving, one-way account of the Timeline cannot be
8  accepted as true.
9       For example, in paragraph 14, Toberoff asserts for the first time—without
10 any detail or substantiation—that there is "an ongoing grand jury investigation
11 initiated by the United States Attorney for the Central District of California" into
12 the author of the Toberoff Timeline.  Toberoff does not say when this investigation
13 began, how he knows of its existence, whether he has testified before the grand
14 jury, or if he or his lawyers helped initiate the investigation.  These omitted details
15 are critical.  DC Comics is entitled to depose Toberoff and others to get these
16 details, and find out if Toberoff has attempted to initiate a criminal investigation in
17 response to this lawsuit in hopes of requiring the author to plead the Fifth and
18 thereby deprive DC Comics of the testimony of a material witness.
19      Finally, paragraph 16 purports to describe the legal management team for
20 Warner Bros. and DC Comics.  This testimony lacks foundation (FRE 602);
21 contains hearsay (FRE 802); and is irrelevant (FRE 401).
22      **D.**     **Exhibit A of the Daum Declaration Is Not Helpful to Defendants.**
23      Defendants submit a declaration by Warner Bros. in-house counsel Wayne
24 Smith in the *Siegel* case concerning the Timeline to support their statute-of-
25 limitation argument, arguing it proves that DC Comics had access to the Timeline
26 documents before December 2008.  Docket No. 98 (SLAPP Reply) at 1, 10.  Mr.
27 Smith's declaration shows just the opposite.  As defendants know, neither DC
28 Comics nor its counsel had the ability to access or use the Timeline until December

1  2008, when Judge Larson ordered it produced—after defendants had fought for
2  some two years to keep it suppressed. Case No. CV 04-8400, Docket No. 386
3  (Order re: Escrow Holder's Oct. 16, 2008 Letter); Case No. 10-3633, Docket No.
4  42 (Joint Stip. re: Defs.' Mot. for Protective Order) at 40-43.

5       Prior to that time, the Timeline and its underlying documents were held in
6  escrow by a respected outside attorney having no connection to the litigation. After
7  Mr. Smith received and briefly reviewed the anonymous submission in June 2006,
8  Warner Bros. immediately turned the documents over to an escrow officer. Mr.
9  Smith fully complied with the law in handling the documents, which authorized the
10 receiving attorney: "(i) to review each document but to cease the review once it
11 became apparent that the document was privileged; (ii) to contact opposing counsel
12 and advise that the documents have been received; and (iii) *to refrain from using*
13 *any information in the documents until there was either an agreement with*
14 *opposing counsel, or the court had determined the documents' disposition*." Case
15 No. 04-8400, Docket No. 108 (Smith Decl.) ¶¶ 5-6 (emphasis added); *see State*
16 *Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-57 (1999). As Mr. Smith
17 further explained in his declaration, he "refrained from using any information in the
18 documents"—until Judge Larson ordered the document produced in December
19 2008. As Magistrate Zarefsky rightly found, Mr. Smith promptly placed the
20 document in escrow and never shared it with counsel for DC Comics or Warner
21 Bros. Docket No. 42 (Timeline Mot.) at 40-43 (Magistrate Zarefsky: "[t]he record
22 does establish that trial counsel has not reviewed the documents"; "[Smith and
23 Schulman, Warner Bros.' then-general counsel] have acted professionally, and I
24 think they've acted reasonably.").

25      Contrary to defendants' assertion, DC Comics had no right or ability—let
26 alone the obligation—to use the Timeline document to file a lawsuit between 2006
27 and 2008. No statute of limitation could have commenced to run prior to
28

production of the Timeline in December 2008.  And, no statute of limitation ran prior to the filing of this lawsuit 18 months later.

Dated:    October 12, 2010            Respectfully Submitted,

O'MELVENY & MYERS LLP


By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics