1  Marc Toberoff (State Bar No. 188547)
    mtoberoff@ipwla.com
2  Nicholas C. Williamson (State Bar No. 231124)
    nwilliamson@ipwla.com
3  Keith G. Adams (State Bar No. 240497)
    kgadams@ipwla.com
4  TOBEROFF & ASSOCIATES, P.C.
   2049 Century Park East, Suite 2720
5  Los Angeles, California, 90067
   Telephone:  (310) 246-3333
6  Fax:         (310) 246-3101

7  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
8  Estate of Joseph Shuster, Jean Adele Peavy,
   Joanne Siegel and Laura Siegel Larson

9                  **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

11  DC COMICS,                          Case No: CV 10-03633 ODW (RZx)

12                  Plaintiff,          Hon. Otis D. Wright II, U.S.D.J.

13        vs.                           **DEFENDANTS' OPPOSITION
                                        TO DC COMICS' MOTION FOR
14  PACIFIC PICTURES CORPORATION;       RECONSIDERATION AND TO
                                        MODIFY THE COURT'S
15  IP WORLDWIDE, LLC; IPW, LLC;        OCTOBER 15, 2010 ORDER
    MARC TOBEROFF, an individual;       STAYING ACTION PENDING
16  MARK WARREN PEARY, as personal      OUTCOME OF APPEAL
    representative of the ESTATE OF
17  JOSEPH SHUSTER; JEAN ADELE          Complaint filed:  May 14, 2010
    PEAVY, an individual; JOANNE        Trial Date:  None Set
18  SIEGEL, an individual; LAURA
    SIEGEL LARSON, an individual,       Date:    November 29, 2010
19                                      Time:    1:30 p.m.
    and DOES 1-10, inclusive,           Place:   Courtroom 11
20
21
                    Defendants.
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................... 1

II.   FACTUAL BACKGROUND ............................................................. 2

III.  ARGUMENT ..................................................................................... 5

    A.    DC PRESENTS AN IMPROPER MOTION FOR RECONSIDERATION ................................................................ 5

        1.    DC's Motion Fails to Satisfy the Requirements of Local Rule 7-18 ................................................................. 5

    B.    THE COURT DID NOT ABUSE ITS DISCRETION IN ENTERING A STAY ................................................................ 7

        1.    This Court Had Discretion to Stay This Case ............................ 7

        2.    Judicial Efficiency Supports a Stay Pending Appeal ................ 8

        3.    DC's Claims of Prejudice Do Not Warrant Reconsideration ................................................................ 11

    C.    DC'S ARGUMENTS AS TO MERITS OF THE APPEAL DO NOT JUSTIFY RECONSIDERATION ............................................. 15

        1.    DC's Motion for Reconsideration Should Await the Ninth Circuit's Decision on Jurisdiction ...................... 15

        2.    The Appeal is Not Frivolous .................................................... 16

IV.   CONCLUSION ............................................................................... 17

APPENDIX I ........................................................................................... 18

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                                                          <u>Page</u>

*1-800 Contacts, Inc. v. Steinberg*,
107 Cal. App. 4th 568 (2003) ....................................................................... 9

*Agcaoili v. Gustafson*,
844 F.2d 620 (9th Cir. 1988) ....................................................................... 8

*Aventis Pharms SA v. Amphastar Pharms., Inc.*,
2005 U.S. Dist. LEXIS 45949, 2005 WL 5957795 (C.D. Cal. Mar. 25, 2005) .......... 6

*Barone v. Brown*,
126 F. Supp. 2d 805(D.N.J. 2001) ................................................................ 7

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ............................................................. *passim*

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ..................................................................... 13

*Bellus v. United States*,
125 F.3d 821 (9th Cir. 1997) ....................................................................... 5

*Circuit City, Inc. v. McLemore*,
70 Fed. Appx. 917 (9th Cir. 2003).............................................................. 8-9

*Delange v. Dutra Constr. Co., Inc.*,
183 F.3d 916 (9th Cir. 1999) ....................................................................... 5

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..................................................................... 8

*Disimone v. Browner*,
121 F.3d 1262 (9th Cir. 1997) ..................................................................... 5

*Easley v. Cromartie*,
532 U.S. 234 (2001)................................................................................... 7

*EchoStar Satellite, L.L.C. v. Viewtech, Inc.*,
2009 WL 1668712 (S.D. Cal. May 27, 2009) ................................................ 16

*Erie v. Thompkins*,
251 U.S. 407 (1920).................................................................................... 9

*Graebner v. James River Corp.*,
130 F.R.D. 440 (N.D. Cal. 1989).................................................................. 13

*Husain v. Olympic Airways*,
316 F.3d 829 (9th Cir. 2002) ....................................................................... 7

*Jarvis v. Regan*,
833 F.2d 149 (9th Cir. 1987) ..................................................................... 15

*Johnson v. New York Univ. School of Educ.*,
205 F.R.D. 433 (S.D.N.Y. 2002) ................................................................ 15

*Landis v. North American Co.*,
299 U.S. 248 (1936) ...................................................................................... 8

*Lerner v. Sartori*,
1999 U.S. Dist. LEXIS 16054 (D. Ariz. 1999) ........................................... 5

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) ................................................................... 8, 10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ....................................................................... 7

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ..................................................................... 8

*Melhorn v. New Jersey Transit Rail Operations, Inc.*,
203 F.R.D. 176 (E.D. Pa. 2001) ................................................................ 13

*Nakash v. Marciano*,
882 F.2d 1411(9th Cir. 1989) ...................................................................... 9

*Nejo v. Wilshire Credit Corp.*,
2010 WL 2888905 (S.D. Cal. July 21, 2010) ............................................ 16

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ....................................................... 9

*Pandora Jewelry v. Bello Paradiso, LLC*,
2009 WL 1953468 (E.D. Cal. July 1, 2009) .............................................. 16

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997) ........................................................ 8, 10

*Robinson v. ITT Corp. Sys. Div.*,
2009 U.S. Dist. LEXIS 58850 (M.D. Ga. July 10, 2009) ............................ 7

*Sanborn v. Asbestos Corp.*,
2009 U.S. Dist. LEXIS 12309 (N.D. Cal. Feb. 5, 2009) ...................... 12, 14

*Schering Corp. v. First DataBank, Inc.*,
2007 U.S. Dist. LEXIS 45813 (N.D. Cal. June 18, 2007) .......................... 17

*School Dist. No. 1J, Multnomah County, Or. v. AC and S, Inc.*,
5 F.3d 1255 (9th Cir. 1993) .......................................................................... 5

*SEC v. Richie*,
2006 U.S. Dist. LEXIS 57258 (C.D. Cal. Aug. 14, 2006) .......................... 5

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
130 S. Ct. 1431 (2010) ............................................................................... 2, 9

*Sylmar Air Conditioning, Inc. v. Pueblo Contracting Srvs., Inc.*,
122 Cal. App. 4th 1049 (1998) .................................................................. 16

iii
TABLES OF CONTENTS AND AUTHORITIES

*United States ex rel. Holder v. Special Devices, Inc.*,
296 F. Supp. 2d 1167(C.D. Cal. 2003) ........................................................ 6

*United States v. Int'l Longshoremen's Ass'n*,
2007 U.S. Dist. LEXIS 70686 (E.D.N.Y. Sept. 24, 2007) ........................ 12

*Verizon Delaware, Inc. v. Covad Commc'ns Co.*,
377 F.3d 1081 (9th Cir. 2004) ................................................................... 16

*Watanabe v. Home, Inc. Depot United States*,
2003 U.S. Dist. LEXIS 27016 (C.D. Cal. 2003) ......................................... 6

*Will v. Hallock*,
546 U.S. 345 (2005)................................................................................... 16

*Wood v. Midland Credit Mgmt., Inc*,
2005 U.S. Dist. LEXIS 31919 (C.D. Cal. 2005) ......................................... 6

## **STATUTES AND REGULATIONS**

Cal. Civ. Proc. Code § 425.16 .................................................................... 9

F.R.C.P. 27 ................................................................................................12

F.R.C.P. 30 ....................................................................................................

F.R.C.P. 72 ......................................................................................... *passim*

Local Rule 7-18.......................................................................................... 13

## **OTHER AUTHORITIES**

Matthew Bender Practice Guide: Fed. Pretrial Civ. Proc. In CA § 26.36.................... 5

Rutter Guide: Federal Civil Procedure Before Trial § 12.158.1 (2006)....................... 5

# I.    **INTRODUCTION**

The self-styled "Motion to Modify the Court's October 15, 2010 Administrative Order Staying Action Pending Outcome of Appeal" ("Motion" or "Mot.") from plaintiff DC Comics ("DC") lacks merit and should be denied for numerous independent reasons, including the following:

*First*, the Motion is an improper motion for reconsideration.  DC cannot avoid the strictures of Local Rule 7-18, which it completely ignores.  Despite Local Rule 7-18's strong admonition against repeating arguments in such a motion for reconsideration, DC's Motion is little more than a patchwork of its prior arguments before the Court when it issued the stay.  DC's failure to abide by Local Rule 7-18 alone justifies denying its Motion in its entirety.

*Second*, this Court has broad discretion to issue a stay, and DC never even bothers to show how the Court abused its discretion.  The stay is proper for numerous reasons, including:  (a) this Court has inherent authority to manage its own docket in the interests of judicial efficiency; (b) the Ninth Circuit's decision in the appeal is likely to affect further proceedings in this case; (c) the federal claims either re-litigate matters already decided in the related *Siegel* litigation or are baseless as a matter of law, justifying their inclusion in the stay; and (d) as DC itself has taken the position that its state and federal claims are intertwined, a stay of both avoids the scenario where depositions and other proceedings move forward as to its federal claims, only to be repeated months later as to the state claims.

Third, the real thrust of DC's motion is to achieve a partial lifting of the stay to enable DC to take sweeping, burdensome, and duplicative discovery while dispositive motions that would obviate the need for such discovery remain stayed. Magistrate Judge Zarefsky had already stayed depositions so that this Court may first rule on dispositive motions that will narrow this case before discovery commences. DC failed to timely object to Magistrate Zarefsky's ruling under F.R.C.P. 72, and may not now re-litigate that conclusion.  In any event, DC's demand that discovery

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

move forward notwithstanding the stay defies common practice, common sense, and basic principles of equity. DC's motion has the equities backwards. Burdensome discovery should not proceed as to elderly and infirm witnesses who have *already* been fully deposed in a related case on the same subjects, particularly when Defendants have filed well-founded motions, disposing of every claim in DC's complaint as a matter of law. It is a routine practice in this Circuit to stay discovery until *after* such dispositive motions have been decided so that the appropriate scope of a case can first be determined.

*Fourth*, there is no basis for DC's presumptive insistence that this Court prematurely judge how the Ninth Circuit will decide the appeal or the question of its own jurisdiction. That issue will be resolved by the Ninth Circuit after appropriate briefing. As we demonstrate below, Defendants' notice of appeal, which is primarily directed to their entitlement to attorneys fees under the Anti-SLAPP motion that this Court dismissed *sua sponte* as moot, raises important issues relating to the effect of the Supreme Court's recent decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) on the interplay between California's anti-SLAPP law and the Federal Rules of Civil Procedure. Defendants' appeal is proper and cannot be dismissed as frivolous, especially in light of the Ninth Circuit decision in *Batzel v. Smith*, 333 F.3d 1018, 1024-26 (9th Cir. 2003), approving interlocutory appeals of adverse decisions on Anti-SLAPP motions.

DC's wasteful motion for reconsideration should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Unhappy with the results of the related *Siegel v. Warner Bros. Entertainment Inc.* action, DC filed this retaliatory lawsuit on May 14, 2010, which focused primarily on attacking the Siegels' counsel. To that end, DC's new complaint contained six state and federal claims for relief, which DC contends are inextricably interrelated. Docket No. 1; Declaration of Matthew Kline ("Kline Decl."), Ex. B. at 44:20-45:7 (transcript of hearing held Sept. 20, 2010); Mot. at 8.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

On August 13, 2010, Defendants filed three motions to dismiss DC's claims, and an Anti-SLAPP motion to strike DC's state-law claims. Docket Nos. 30-31, 33-34. On August 30, 2010, DC filed a "Motion to Initiate Discovery and Take Immediate, Limited Discovery of Two Elderly Witnesses," which argued (a) that DC needed to take the immediate depositions of two elderly witnesses, Joanne Siegel and Jean Adele Peavy; and (b) that, regardless of the pending Anti-SLAPP motion, DC was entitled to discovery on its "federal claims." Docket No. 45 at 9-10, 11-13. *See also* Docket No. 63 at 2-4 (supplemental brief in which DC argues that it is entitled to discovery on its "federal claims"). Defendants opposed DC's motion because these elderly witnesses had already been deposed in the closely related *Siegel* litigations, and their physicians had warned against putting them through prolonged depositions again. Docket No. 58 at 14-23, 24-32.

On September 3, 2010, DC filed an amended complaint in response to Defendants' motions to dismiss and to strike. Docket No. 49. On September 7, 2010, this Court vacated the hearing date for Defendants' four dispositive motions, including Defendants' Anti-SLAPP motion, stating that the motions were moot. Docket No. 52. That order is now on appeal before the Ninth Circuit in keeping with the collateral order doctrine and the Ninth Circuit's decision in *Batzel*, 333 F.3d at 1024-25, which allows interlocutory appeals of adverse Anti-SLAPP rulings.

On September 13, 2010, Defendants filed a motion for a protective order to stay depositions noticed by DC – including the depositions of defendants Jean Peavy and Joanne Siegel – pending this Court's ruling on Defendants' renewed dispositive motions to be filed a week later on September 20, 2010, and scheduled to be heard by this Court on October 18, 2010. Docket Nos. 58-59. In its opposition to this protective order, DC again argued for taking discovery as to its "federal" claims (Docket No. 59 at 34-46), and that the age and health of Joanne Siegel and Jean Peavy purportedly required that their depositions be taken immediately. *Id.* at 46-47.

On September 20, 2010, Magistrate Zarefsky held a hearing that addressed,

*inter alia,* DC's motion to initiate discovery and Defendants' motion to stay depositions. *See* Docket No. 74; Kline Decl., Ex. B. Despite DC's repeated arguments as to discovery on its federal claims, and claims of urgency with respect to the depositions, Magistrate Zarefsky *denied* DC's motion, and granted Defendants' motion in part. Docket No. 74. Magistrate Zarefsky stayed all depositions until November 15, 2010, to give the Court time to rule on Defendants' dispositive motions, while making clear that this Court could extend the stay in its discretion. Kline Decl., Ex. B at 59:20-60:1.

On October 4, 2010, Defendants filed a motion for review by this Court pursuant to F.R.C.P. 72 of that portion of Magistrate Zarefsky's September 20, 2010 order that found that an Anti-SLAPP motion did not automatically stay discovery. Docket No. 101. DC filed no objections to or motion for review of any aspect of this order.

On September 20, 2010, Defendants filed three motions to dismiss and an Anti-SLAPP motion with respect to DC's amended complaint, all of which were set for hearing on October 18, 2010. Docket Nos. 75, 77-78, 80. On September 27, 2010, DC filed its opposition to the motions. Docket Nos. 89-93. In opposition to the Anti-SLAPP motion, DC made much ado over discovery, including all of the discovery-related arguments set forth in its current motion for reconsideration. *See* Docket No. 92 at 8-11. On October 4, 2010, Defendants filed their reply briefs in support of their motions. Docket Nos. 98, 100, 102-03. On October 7, 2010, Defendants filed a notice of appeal to the Ninth Circuit of the September 7, 2010 order that vacated their original Anti-SLAPP motion. Docket Nos. 104-05.

On October 15, 2010, shortly before the scheduled October 18, 2010 hearing on Defendants' renewed dispositive motions, this Court stayed this case pending the outcome of Defendants' appeal, and vacated the hearing date for Defendants' four dispositive motions and their F.R.C.P. 72 motion. *See* Docket No. 109. On October 21, 2010, a Deputy Clerk of the Ninth Circuit issued a routine administrative order

asking Defendants to set forth the jurisdictional basis for their appeal, with briefing
on the issues to be completed by November 21, 2010.  *See* Kline Decl., Ex. D.

## III.    ARGUMENT

### A.    DC PRESENTS AN IMPROPER MOTION FOR RECONSIDERATION

#### 1.    DC's Motion Fails to Satisfy the Requirements of Local Rule 7-18

Local Rule 7-18 prohibits motions for reconsideration unless there is "(a) a
material difference in fact or law from that presented to the Court … which in the
exercise of reasonable diligence could not have been known to the party moving for
reconsideration  … (b) new material facts or a change of law … [or] (c) a manifest
showing of a failure to consider material facts presented to the Court," and such
motions may not "*in any manner repeat* any oral or written argument made in
support of or in opposition to the original motion."  L.R. 7-18 (emphasis added).  *See*
*SEC v. Richie*, 2006 U.S. Dist. LEXIS 57258, *6 (C.D. Cal. Aug. 14, 2006)
(reconsideration motion denied for failure to comply with Local Rules, as "all Local
Rules must be complied with, in spirit and to the letter").  "District courts have broad
discretion in interpreting and applying their local rules."  *Delange v. Dutra Constr.*
*Co., Inc.*, 183 F.3d 916, 919 (9th Cir. 1999).  As such, "[t]he district court's denial of
a motion for reconsideration is reviewed for abuse of discretion."  *Bellus v. United*
*States*, 125 F.3d 821, 822 (9th Cir. 1997).

Motions for reconsideration are "rarely appropriate" and generally unwelcome.
 *See Lerner v. Sartori*, 1999 U.S. Dist. LEXIS 16054, *2 (D. Ariz. 1999); *School*
*Dist. No. 1J, Multnomah County, Or. v. AC & S, Inc.,* 5 F.3d 1255, 1263 (9th Cir.
1993); *Disimone v. Browner*, 121 F.3d 1262, 1266-1267 (9th Cir. 1997);  *Rutter*
*Guide: Federal Civil Procedure Before Trial* § 12.158.1 (2006); 4-26 *Matthew*
*Bender Practice Guide: Fed. Pretrial Civ. Proc. in CA* § 26.36.  Local Rule 7-18
amplifies such authorities.

While admitting that it was bringing a motion "to reconsider" in the meet-and-confer process (Kline Decl., Ex. C.), DC deliberately re-styled it as a "motion to modify" and ignored Local Rule 7-18.  Relabeling the motion to avoid the word "reconsideration" cannot negate DC's obligation to meet the requirements of Local Rule 7-18.

DC's motion violates Local Rule 7-18 by repeating the arguments this Court already had before it when it decided to enter the stay.  These include (a) that there is a supposed urgent need to depose two elderly witnesses (previously fully deposed on the same subjects in the closely related Superman action); and (b) that discovery should proceed as to both its state and federal claims.  *See, e.g.,* Docket No. 45 at 9-10, 11-13; No. 59 at 34-46, 46-47; No. 63 at 2-4; Motion at 4 ("DC Comics' Federal Claims Should Be Allowed to Proceed…"), 7 ("DC Comics' State-Law Clams Should Not Be Stayed…").

Such repetition is fatal to DC's motion for reconsideration.  *See Wood v. Midland Credit Mgmt., Inc*, 2005 U.S. Dist. LEXIS 31919, at *4 (C.D. Cal. 2005) (denied motion for reconsideration as "procedurally improper" under L.R. 7-18 because it repeated arguments); *Aventis Pharms SA v. Amphastar Pharms., Inc.*, 2005 U.S. Dist. LEXIS 45949, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) (motion to reconsider denied because it was "merely repeating an argument"); *Watanabe v. Home, Inc. Depot United States,* 2003 U.S. Dist. LEXIS 27016, at *5 (C.D. Cal. 2003) (same); *United States ex rel. Holder v. Special Devices, Inc.,* 296 F. Supp. 2d 1167, 1168 (C.D. Cal. 2003) (same).

Magistrate Zarefsky fully considered such arguments on September 20, 2010 but nonetheless stayed *all* depositions in this case to enable the Court to first rule on Defendants' dispositive motions.  *See* Docket No. 74; Kline Decl., Ex. B at 57-58. DC further argued its purported urgent "need" for discovery in opposition to Defendants' Anti-SLAPP motion, and Defendants specifically noted DC's arguments in their own October 4, 2010 motion for review of other aspects of Magistrate

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

Zarefsky's September 20 order, both of which the Court had before it and obviously considered when it entered the stay.  Docket No. 92 at 8-11, No. 94 at 17-21, No. 101 at 2 n.2, 5, No. 109.  DC merely repeats these arguments here without a showing of either a "material difference in fact or law" or "new material facts or a change of law," as required by L.R. 7-18.

All that is left is the third prong of L.R. 7-18 – "a manifest showing of a failure to consider material facts presented to the Court" – *i.e.,* clear error.  DC makes no showing of this either.  In general, "[r]eview for clear error is significantly deferential and requires a 'definite and firm conviction that a mistake has been committed.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).  Reversal of a previous decision on the basis of clear error is inappropriate so long as the court's "'findings are plausible in light of the record viewed in its entirety.'" *Id.* (quoting *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002)).[1]

Because DC has not met the standards required by Local Rule 7-18, its motion must be denied.

**B.    THE COURT DID NOT ABUSE ITS DISCRETION IN ENTERING A STAY**

**1.    <u>This Court Had Discretion to Stay This Case</u>**

A district court has the inherent power to stay proceedings, a power which is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself; for counsel, and for

---

[1] DC cites to two out-of-district cases where a Court happened to reconsider a *sua sponte* order to imply that the standards for reconsideration somehow do not apply.  However, the cases do not stand for that at all.  *See Barone v. Brown,* 126 F. Supp. 2d 805, 806 (D.N.J. 2001) (applying local rules to motion for reconsideration of *sua sponte* dismissal of habeas petition); *Robinson v. ITT Corp. Sys. Div.*, 2009 U.S. Dist. LEXIS 58850, at *10 (M.D. Ga. July 10, 2009) (exercising discretion to permit briefing with respect to jurisdictional ruling). DC's third case, *U.S. Philips Corp. v. Int'l Norcent Tech., Inc.*, Case No. 06-CV-01366 R PLA (C.D. Cal. Oct. 23, 2007), did not concern a *sua sponte* order.  Rather, it reconsidered a bankruptcy order under Local Rule 7-18, because the defendant had misrepresented the governing law and the order had issued before plaintiff could respond.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  *See also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("The trial court possesses the inherent power to control its own docket and calendar.").  The appellate courts review "a district court's stay order for abuse of discretion." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  *See also Mediterranean Enters., Inc.*, 708 F.2d at 1465 ("We should overturn a trial court's stay … only when we believe the court has abused its discretion.").  No such abuse occurred here.

## 2.   Judicial Efficiency Supports a Stay Pending Appeal

"A trial court may, with propriety, find it is more efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  *See also Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency.").  Indeed, federal courts have specifically ruled that a stay is appropriate pending appellate review of the denial of an Anti-SLAPP motion.  *See Moser v. Encore Capital Grp., Inc.*, No. 04-CV-2085, 2007 WL 1114113, at * 4 (S.D. Cal. Mar. 27, 2007) ("The Court, moreover, finds it uneconomical to proceed piecemeal with claims … To the extent the Court has discretion to move forward with proceedings against [defendants whose Anti-SLAPP motion was denied] while the appeal is pending, the Court declines to do so.").

"This rule … does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva,* 593 F.2d at 863-64. *See Agcaoili v. Gustafson*, 844 F.2d 620, 624 (9th Cir. 1988) ("Even if the other proceedings do not control the outcome in the action before the court, a stay may be appropriate.")*.*  Courts routinely stay federal claims pending the outcome of related state claims and proceedings.  *See, e.g., Circuit City, Inc. v. McLemore*, 70 Fed.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

Appx. 917, 918–19 (9th Cir. 2003) ("[A] federal suit [may be stayed] pending the outcome of state proceedings when considerations of wise judicial administration so demand.") (internal quot'ns omitted); *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) ("[A] federal court may stay its proceedings in deference to pending state proceedings. This doctrine rests on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."). Here, the interests of judicial efficiency strongly support a stay.

The Ninth Circuit is likely to address a variety of issues in the appeal that will provide guidance for this Court's resolution of this action. For instance, the Ninth Circuit will likely address the applicable legal standards for determining which aspects of California's Anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, apply when state law claims are brought in federal, rather than state, court. The answer to this question is relevant to both the issues of attorneys' fees with respect to Defendants' original Anti-SLAPP motion, as well as whether a discovery stay is in effect absent a specific showing by DC of "good cause." Cal. Civ. Proc. Code § 425.16(g) (automatic stay); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 593 (2003) (high standard for showing good cause to obtain discovery).[2] These issues will require articulation of the standards for determining, under *Erie v. Thompkins*, 251 U.S. 407 (1920), which aspects of the Anti-SLAPP law apply to state law claims asserted in federal court. *See, e.g., Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J., concurring) (substantive

---

[2] The discovery stay and good cause requirements of the Anti-SLAPP law are **substantive** protections that California adopted to suppress "non-meritorious cases aimed at chilling [free speech] through costly, time-consuming litigation." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1098 (C.D. Cal. 2004). The automatic discovery stay provision prevents a plaintiff from coercing the defendant to respond to costly and time-consuming discovery before the court has had an opportunity to determine the merits of an Anti-SLAPP motion.

Magistrate Zarefsky ruled that there is no automatic discovery stay because, in his view, CCP 425.16(g) does not apply to anti-SLAPP motions in federal court. Kline Decl., Ex. B at 57:3-5. Magistrate Zarefsky also did not impose at that time any limitations on the examination of witnesses. Docket No. 74. These rulings are the subject of Plaintiffs' motion for review (Docket No. 101), which was vacated by the Court but would need to be decided before discovery resumes.

state law applies in federal court even if it may appear procedural); *Batzel v. Smith*, 333 F.3d 1018, 1024-26 (9th Cir. 2003) (applying in federal court anti-SLAPP law provisions regarding appeals, and stating that "[i]f the defendant files a [anti-SLAPP] motion to strike, all discovery proceedings are stayed," 333 F.3d at 1024).

The interests of judicial economy support a stay in this case pending appeal. In order to rule on whether Defendants are entitled to attorneys' fees with respect to the unsupported retaliatory claims in DC's original complaint, the Ninth Circuit will likely assess whether the claims, as pled, fall within the scope of the Anti-SLAPP statute. DC itself states that its amended complaint includes only "minor" changes to the original pleading. Motion at 1:18. DC therefore cannot deny that the Ninth Circuit's views on the original Anti-SLAPP motion are relevant to its amended complaint. Since discovery should be stayed pending this Court's decision on Defendants' Anti-SLAPP motion, and this Court's decision on that motion should await guidance from the Ninth Circuit, it is most reasonable for this Court to have stayed this case pending the outcome of such appeal. *See Leyva*, 593 F.2d at 863.

In addition, DC does not and cannot dispute that the Court has authority not only to adopt the limited stay it entered, but to stay this action until the related and more advanced *Siegel* litigation is resolved. *See, e.g., Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (staying action pending related litigation to "serve the interests of judicial economy"). Given that this Court has the power to enter a much lengthier stay, it clearly has authority to control its own docket by entering a more modest stay that, depending on the status of the *Siegel* litigation, may either be lifted or extended once the pending appeal has concluded. The obvious efficiency of avoiding DC's attempt in this action to collaterally attack every adverse decision in the six-year-old *Siegel* action, puts to rest DC's arguments that such a stay is unwarranted or contrary to federal law. Mot. at 4-6.

The stay conserves judicial resources and prevents the duplication of judicial effort by allowing *Siegel* to advance towards judgment. Throughout its motion, DC

repeatedly states its need for discovery on its "federal claims."  However, DC's "federal claims" do little more than attempt to retry the issues that were heavily litigated in *Siegel* regarding termination of the identical copyright grants to the identical works co-authored by Siegel and Shuster.  For example:  DC's First and Second Claims seeks a determination of issues that have already been fully litigated in *Siegel*; DC's Fifth Claim relates to the Siegel termination; and DC's Third and Sixth Claims concern seek determinations regarding alleged "consent agreements" relating to the Siegel termination.  This Court's October 15, 2010 order in *Siegel* established a framework to resolve the remaining issues and ready that case for trial and/or appeal.  A judgment as to the validity and scope of the Siegel termination (First Claim in *Siegel*) will have issue preclusion effect and prevent DC from re-litigating everything here.  There can be no abuse of authority in entering a stay to prevent the massive duplication of effort inherent in DC's do-over lawsuit.

### 3.    DC's Claims of Prejudice Do Not Warrant Reconsideration

DC has articulated no conceivable "prejudice" justifying reconsideration of the stay.  Nor can it justify its remarkable position that the stay be lifted as to *discovery* so that DC can make burdensome and duplicative demands as to claims that have no basis as a matter of law, before this Court has addressed their legal sufficiency.  DC's position is both inequitable and procedurally barred.

First, Magistrate Zarefsky recognized, in reviewing the identical arguments that DC makes here, that it was appropriate to enter at least a temporary stay of discovery so that this Court would have an opportunity to first rule on dispositive motions, and extend the discovery stay as it saw fit.  Kline Decl. Ex. B at 59:20-21 ("I've attempted to give him time to rule if he is so inclined."); *id.* at 21-22 ("and, of course, [Judge Wright] can alter any schedule that I have set.").  Having failed to object to this ruling,  DC cannot now attempt to achieve a contradictory result, namely an order that dispositive motions be stayed while discovery proceeds or that this Court lacks discretion to extend the discovery stay.  F.R.C.P. 72(a); *United States*

*v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (absence of timely filed objections relieves obligation of *de novo* review); *Northwest Environmental Defense Center v. U.S. Army Corps of Engineers*, 806 F. Supp. 891, 893 (D. Or. 1992).

Moreover, even if DC's waiver under Rule 72 presented no barrier whatsoever, the only prejudice asserted by DC is that during the stay it will not be able to take "discovery of Peary, Siegel, Larson and Peavy … given the exigencies of their age and health." Mot. at 4. However, DC's purported "urgency" is belied by its own conduct. The Shuster termination notice was served on DC on November 10, 2003; yet DC waited 6 ½ years, until May 10, 2010, to file its claims regarding such termination. DC cannot now claim it will be prejudiced by waiting a few more months. Moreover, if the age or infirmity of these two witnesses had been DC's true concern, DC could easily have filed a petition under F.R.C.P. 27(a) to take their depositions *at any time* prior to the filing of this action.

Mark Warren Peary, the personal representative of Joseph Shuster's estate which served the Shuster termination notices, is 48, and of fine health. Laura Siegel Larson, the daughter of Jerome Siegel, is 59, and, although suffering from multiple sclerosis and related disorders, none are life threatening. Joanne Siegel and Jean Peavy are elderly. However, DC has offered no reason why, even given their advanced ages, that waiting to depose them presents a material problem. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 2007 U.S. Dist. LEXIS 70686 at *7 (E.D.N.Y. Sept. 24, 2007) (rejecting the expedited deposition of an elderly witness, because the deponent's age alone was an insufficient basis to expedite). *Sanborn v. Asbestos Corp.*, 2009 U.S. Dist. LEXIS 12309, at *5 (N.D. Cal. Feb. 5, 2009), cited by DC, lifted a stay solely because of the witnesses' ***immediate*** risk of death, as the witnesses' "doctor has asserted that he is dying from malignant mesothelioma, that his condition is deteriorating, and that he will likely die of his condition or its complications in the next two to four months." DC has made no showing that either Ms. Siegel or Ms. Peavy are at risk of immediate death, as in *Sanborn*. Magistrate

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

Zarefsky, when presented with the same arguments from DC, did not order immediate depositions, but instead delayed them.

In addition, all of these witnesses' testimony is *already* well preserved.  DC has fully deposed each of these witnesses on identical or closely related topics in both the Superman and Superboy *Siegel* litigations.  *See, e.g.,* Docket No. 58 at 26-30. The Ninth Circuit has held that "eliminating duplicative discovery" is an important consideration in discovery practice.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).  *See also Graebner v. James River Corp.*, 130 F.R.D. 440 (N.D. Cal. 1989) ("[R]epeat depositions are disfavored.").  The prejudice to witnesses here is heightened by DC's argument that it should be permitted to proceed with discovery on the federal claims, while discovery on the state law claims is stayed. This could subject witnesses, including the two elderly witnesses, to yet a third round of depositions if any part of DC's state claims survive, and provide DC with an improper tactical advantage.  *See* F.R.C.P. 30(d)(2) ("Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." ); *Melhorn v. New Jersey Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (E.D. Pa. 2001) ("Absent some showing of need or good reason for doing so, a deponent should not be required to appear for a second deposition.").

There can be no reasonable dispute that DC has already had a full and fair opportunity to depose these same four witnesses on topics relevant to this case, and has already obtained extensive discovery, as set forth below in Appendix I. Thus, DC has already "preserved the testimony" of these witnesses and, in reality, has no pressing need to re-examine them on topics already covered.

"Preserving testimony" is obviously not DC's real objective.  Discovery in the closely related *Siegel* litigations long ago closed.  Despite DC's delay in bringing this action, it now seeks discovery that it would otherwise be barred from taking in the *Siegel* litigations, to collaterally attack and re-open every adverse decision in *Siegel*. DC has thus indicated that it intends to bring multiple motions for reconsideration in

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

*Siegel*, in addition to DC's First and Second Claims in this action which ignore and re-litigate everything decided in Siegel as to the same Superman works and grants. *Compare* DC FAC, ¶¶ 140-41, 145-46 with *Siegel* I, 542 F. Supp. 2d 1098, 1126-30 (C.D. Cal. 2008); *Siegel* II, 658 F. Supp. 2d 1036, 1063-68, 1083 (C.D. Cal. 2009) (work for hire issues); DC FAC ¶¶ 142-44 with *Siegel* I, 542 F. Supp. 2d at 1118-26 (termination of the "Ads"); FAC, ¶¶ 140-41 with *Siegel* II, 658 F. Supp. 2d at 1061 (unpublished Superman works).  DC also repeatedly presses for immediate discovery in the hopes of obtaining some morsel of ambiguity to salvage its frivolous and defective complaint under attack in Defendants' four dispositive motions.  DC tactics simply do not justify lifting this Court's stay.

Moreover, as Defendants have explained (Docket No. 101), the stay should apply to the federal claims as well because such claims have no legal basis and cannot survive a motion to dismiss.  DC should not be permitted to gain discovery that the Anti-SLAPP law bars by asserting federal claims that have no legal foundation.  Any contrary ruling would invite the baseless abusive claims that the Anti-SLAPP law and Rule 11 were designed to guard against.

DC has the equities of the stay backward.  It would be unfair to Defendants and unduly burdensome on the witnesses to have their depositions move forward while Defendants' Anti-SLAPP motion to strike and three motions to dismiss as a matter of law, originally set for hearing on October 18, 2010, are stayed indefinitely. DC should not be permitted to proceed on its defective claims, while Defendants' motions, which dispose of all or most of DC's claims as a matter of law, remain vacated and stayed.[3]  For these reasons, it is a common custom and practice in this Circuit and elsewhere to stay discovery until dispositive motions have been decided

---

[3] DC's citations to two cases where courts permitted discovery during an appeal are inapposite.  As set forth above, *Sanborn v. Asbestos Corp.*, 2009 U.S. Dist. LEXIS 12309, at *5, lifted a stay only as to a single, terminally ill witness, whose death was imminent and did not permit the unfettered discovery sought by DC.  The Court in *Castaneda v. United States,* 2008 U.S. Dist. LEXIS 40567, at *12-13 (C.D. Cal. May 20, 2008) declined a stay because it had already ruled on defendants' dispositive motion in a "detailed opinion," and defendants had "provided no substantive reason to show that the opinion is flawed."

so that if and when discovery commences, its scope has been appropriately defined. *See, e.g.*, *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (the Ninth Circuit has approved discovery stays pending a motion to dismiss where discovery was "'not required to address the issues raised'" by the motion, as "[d]iscovery is only appropriate where there are factual issues raised by a Rule 12(b) motion."); *Johnson v. New York Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law.") (quotation marks omitted).

Thus, even if this Court were inclined to consider again the same arguments it already rejected in granting a stay, nothing DC has presented warrants lifting the stay as to discovery, either in whole or in part. At a minimum, the dispositive motions should be heard before discovery proceeds.

## C.    DC'S ARGUMENTS AS TO MERITS OF THE APPEAL DO NOT JUSTIFY RECONSIDERATION

### 1.    DC's Motion for Reconsideration Should Await the Ninth Circuit's Decision on Jurisdiction

DC filed its motion for reconsideration *after* the Ninth Circuit issued an administrative order for Defendants to show cause as to the jurisdictional basis for their appeal. Rather than tax this Court's resources, DC should have awaited the Ninth Circuit's decision as to this threshold issue. The jurisdictional issue will likely be decided promptly. Defendants must submit their response to the Order to Show Cause by November 11; DC will have until November 21 to file an opposition, and then the Circuit will rule. DC's motion for reconsideration is set for hearing on November 29. Thus, by the time of the hearing, the jurisdictional issue will be before the Ninth Circuit. If the Ninth Circuit correctly finds that it has jurisdiction, then the stay should continue for reasons of judicial efficiency.[4] If the Ninth Circuit rejects

---

[4] The order is appealable to the Ninth Circuit under the collateral order doctrine, which grants appellate courts jurisdiction over "rulings, not concluding the litigation, but

1    jurisdiction, this Court's stay order will be lifted by its own terms.  Either way, there

2    is no reason whatsoever for the Court to consider DC's motion for reconsideration

3    before the Ninth Circuit provides guidance as to the appeal.

## 2.    The Appeal is Not Frivolous

5         Contrary to DC's hyperbole, Defendants' appeal is far from frivolous.  The

6    appeal raises an important issue as to the relationship between the substantive

7    provisions of California's Anti-SLAPP law and federal procedure:  whether the mere

8    filing of an amended complaint moots Defendant's statutory attorneys' fees in

9    opposing the original complaint.  This is an unsettled question of law of great

10   concern to third parties who may be forced (contrary to the express purpose of the

11   Anti-SLAPP law) to incur substantial attorneys fees in defending against meritless

12   retaliatory lawsuits.[5]

13        DC's argument that the appeal is frivolous because "[D]efendants never

14   presented to the district court the arguments [they] now want[] the Ninth Circuit to

conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'"  *Will v. Hallock*, 546 U.S. 345, 349 (2005) (quotations omitted).  Awards or denials of attorneys' fees in connection with an appealable collateral order (such as a decision on an Anti-SLAPP motion) are thus subject to review.  *See, e.g., Batzel*, 333 F.3d at 1024 (decisions as to Anti-SLAPP motions are appealable collateral orders).

[5] The prompt recovery of attorney's fees in preparing an Anti-SLAPP motion is a critical protection.  In a state court action, a defendant would automatically be entitled to promptly recover attorney's fees, as there is no right to amend a complaint in California after an Anti-SLAPP motion is filed.  *See Sylmar Air Conditioning, Inc. v. Pueblo Contracting Srvs., Inc.*, 122 Cal. App. 4th 1049, 1054-55 (1998).  The Court's mooting of Defendants' original Anti-SLAPP motion effectively rendered such fees unrecoverable, and such would be unreviewable on a later appeal.  The four cases cited by DC on this issue are off-point. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) and *Nejo v. Wilshire Credit Corp.*, 2010 WL 2888905, at *2 (S.D. Cal. July 21, 2010) address a different subject entirely – whether a party has the right to amend a federal complaint following an Anti-SLAPP motion.  *EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 2009 WL 1668712, at *5-6 (S.D. Cal. May 27, 2009), suggests that attorneys' fees for the original Anti-SLAPP motion are unavailable after amendment of a complaint – precisely why this Court's order is an appealable collateral order.  As a matter of substantive state law, such fees must be allowed in federal court.  *Pandora Jewelry v. Bello Paradiso, LLC*, 2009 WL 1953468 (E.D. Cal. July 1, 2009) (attorneys' fees allowed in federal court after dismissal of claims before Anti-SLAPP motion is resolved).  *Will v. Hallock*, 546 U.S. 345, 349 (2006), simply sets out the general parameters of the collateral order doctrine, but does not address the clear Ninth Circuit authority that denial of an Anti-SLAPP motion is subject to the collateral order doctrine.  *See, e.g., Batzel*, 333 F.3d at 1024.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

consider" (Mot. at 7) is bizarre.  Defendants clearly requested attorneys' fees and costs in connection with their original Anti-SLAPP motion.  Docket No. 30 at 3-4, 25.  The Court mooted that motion in its entirety, including the request for fees.  Docket No. 52.  The matter was squarely before this Court.

The cases cited by DC do not aid its argument that the stay should be lifted, as they are merely cases where the Court declined a stay in the exercise of its discretion.  *Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 45813, at *11-13 (N.D. Cal. June 18, 2007) held that the district court retained ***jurisdiction*** to rule on pre-trial matters pending the outcome of an appeal of its denial of an Anti-SLAPP motion, because "any harm [the defendant] would suffer … would be negligible."  Moreover, in *Schering Corp.*, the trial court had denied the Anti-SLAPP motion, mooting the Anti-SLAPP law's discovery stay.  *Bulletin Displays, LLC v. Regency Outdoor Adver.*, Case No. SAVC 05-1083 CJC (C.D. Cal. Oct. 13, 2006), declined to stay discovery under the specific facts of that case, because it involved "criminally fraudulent behavior … including the bribery of public officials," there was a significant likelihood "that some or all of the defendants will become judgment proof," and "[d]efendants have very little likelihood of prevailing on the merits of their appeal."  Here, the appeal is not frivolous, but concerns important legal issues, and DC has not and cannot make any showing that it will be unable to secure relief due to the Court's stay.

## IV.    **CONCLUSION**

DC's improper motion for reconsideration should be denied in its entirety.

DATED:  November 8, 2010        TOBEROFF & ASSOCIATES, P.C.

By_____
        Marc Toberoff

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel and Laura Siegel Larson

# APPENDIX I

## Joanne Siegel

### (Deposition Pages at Docket No. 61-1, Ex. A)

| Topic | Depo Pages | Amended Complaint |
|---|---|---|
| Joanne Siegel's relationship with Jerome Siegel from 1935-1948 | 14:3-14:9 | ¶¶ 28-31, 40 |
| Jerry Siegel being re-hired by DC's predecessors in the late 1960s | 14:21-15:23 | ¶ 45 |
| Joanne Siegel's discussions of termination with Jerry Siegel | 16:18-17:14; 71:8-72:12 | ¶ 49 |
| Joanne Siegel's retention of counsel to exercise her termination rights | 22:8-24:6 | ¶¶ 67-68 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between October 2001 and February 2002 | 24:13-28:13; 39:1-40:25 | ¶¶ 69, 181-82 |
| DC's February 2002 long-form draft settlement agreement | 27:9-28:13; 87:4-88:13; 94:3-95:6 | ¶¶ 69, 181-82 |
| The drafting and meaning of the May 9, 2002 letter sent by Joanne Siegel | 32:18-34:17; 36:16-40:17; 42:17-43:9; 45:1-46:24; 119:4-121:9 | ¶¶ 72-76, 181-82 |
| Joanne Siegel's first contact with Marc Toberoff | 41:1-3 | ¶¶ 71, 77-80 |
| Joanne Siegel's September 21, 2002 letter to DC's Publisher | 43:10-44:25 | ¶¶ 79-80, 181-82 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 56:12-71:7 | ¶¶ 47-49 |
| The Shuster Termination | 102:8-104:25 | ¶¶ 92-101 |
| Marc Toberoff's representation of Jean Peavy | 105:1-5 | ¶¶ 60 |
| The Superboy "pitch" letter by Jerry Siegel | 105:6-109:13 | ¶¶ 87, 147, 150 |
| The Superboy script by Jerry Siegel | 109:14-115:10; 135:3-137:3 | ¶¶ 87, 149-150 |

APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

| Topic | Depo Pages | Amended Complaint |
|---|---|---|
| The 1947 Action between Jerry Siegel, Joseph Shuster, and DC's predecessors | 124:20-125:5 | ¶¶ 41-44 |

### Laura Siegel Larson

### (Deposition Pages at Docket No. 61-1, Exs. B-C)

| Topic | Depo Pages (Ex. B) | Amended Complaint |
|---|---|---|
| The separate "Superboy" action | 14:19-15:2 | ¶¶ 91, 131-33 |
| First contact with Marc Toberoff | 17:6-17:19; 24:10-17 | ¶¶ 59, 71, 77-80, 169 |
| Marc Toberoff's representation of Joanne and Laura Siegel Larson | 24:10-17; 61:12-21 | ¶ 83 |
| Marc Toberoff's representation of Jean Peavy and Mark Warren Peary | 24:15-17; 25:12-25 | ¶ 60 |
| Discussions between Joanne and Laura Siegel Larson, and/or Kevin Marks, and Marc Toberoff about the acquisition of Superman rights | 25:22-26:5 | ¶ 77-79 |
| Knowledge of Intellectual Properties Worldwide, LLC | 26:21-27:14 | ¶ 81 |
| The IP Worldwide Agreement | 34:5-38:16; 52:16-21 | ¶ 81-83 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between October 2001 and February 2002 | 45:3-46:22; 125:1-133:22; 139:12-140:17; 143:12-145:9; 147:4-150:24; 153:7-154:16; 159:7-159:19; 162:8-168:18; 174:10-194:11; 204:10-205:21; 216:4-10; 261:12-265:10 | ¶¶ 69, 181-82 |
| Joanne Siegel and Laura Siegel Larson's termination of Gang Tyre | 56:17-24 | ¶ 79 |
| Expiration of the IP Worldwide Agreement | 60:1-60:8 | ¶¶ 81, 83 |

19

APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

| Topic | Depo Pages (Ex. B) | Amended Complaint |
|---|---|---|
| Laura Siegel Larson's discussions of termination with Jerry Siegel | 62:17-63:23 | ¶ 49 |
| Marc Toberoff's contingency agreement with Joanne Siegel and Laura Siegel Larson | 72:8-73:8 | ¶¶ 83-84 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 76:15-83:4 | ¶¶ 47-49 |
| Joanne Siegel and Laura Siegel Larson's "settlement" discussions with DC between 1997 and October 2001 | 64:16-65:6; 85:17-88:1; 221:21-241:9; 245:3-248:13 | ¶¶ 67-68 |
| The Superboy "pitch" letter by Jerry Siegel | 92:16-24 | ¶¶ 87, 147, 150 |
| The Superboy script by Jerry Siegel | 92:25-93:3 | ¶¶ 87, 149-150 |
| The Superboy materials created by Jerry Siegel | 93:20-97:20 | ¶ 88 |
| The exclusion of the 1948 consent judgment from the Siegel Termination | 100:10-101:24 | ¶ 126 |
| The separate "Superboy" notice of termination | 105:7-107:4 | ¶¶ 86-88, 131-33 |
| Joanne Siegel's and Laura Siegel Larson's retention of counsel to exercise their termination rights | 115:9-116:25 | ¶¶ 67-68 |
| The drafting and meaning of the May 9, 2002 letter sent by Joanne Siegel | 133:19-139:10; 140:14-141:6; 146:2-147:3; 210:18-216:3; 217:25-221:13 | ¶¶ 72-76, 181-82 |
| Joanne Siegel's September 21, 2002 letter to DC's Publisher | 261:15-262:7 | ¶¶ 80, 181-82 |

20
APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER

## Mark Warren Peary

### (Deposition Pages at Docket No. 61-2, Ex. D)

| Topic | Depo Pages (Ex. D) | Amended Complaint |
|---|---|---|
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 18:10-19:1 | ¶¶ 47-49 |
| Mark Warren Peary's discussions with Joseph Shuster about Shuster's will | 19:2-19:25 | ¶¶ 51 |
| Mark Warren Peary's first contact with Marc Toberoff | 20:1-21:17; 22:6-22:21; 35:17-37:18 | ¶¶ 58-60 |
| Mark Warren Peary's retention of Marc Toberoff as counsel | 23:18-24:3, 29:13-29:23; 57:20-58:11; 60:7-61:7; 61:14-62:13 | ¶¶ 64 |
| The 2001 Pacific Pictures Agreement | 24:6-35:16 | ¶¶ 60-63, 118-23, 130, 169, 171, 177 |
| The inclusion of "Superboy" in the 2001 Pacific Pictures Agreement | 27:22-29:12 | ¶¶ 86-90 |
| The 50/50 split in revenues under the Pacific Pictures Agreement | 29:24-31:12 | ¶¶ 62, 100 |
| The "Expiration" clause of the 2001 Pacific Pictures Agreement | 32:6-33:22; 62:21-64:13 | ¶¶ 62, 169, 171 |
| The establishment of the Estate of Joseph Shuster | 38:13-40:24; 48:7-49:23; 50:4-12; 56:5-17 | ¶¶ 60, 64-65 |
| The 2003 Pacific Pictures Agreement | 40:7-41:14 | ¶¶ 90, 169, 171, 177-78 |
| Relationship with Joanne and Laura Siegel | 43:15-47:2 | ¶¶ 66 |
| Marc Toberoff's representation of Joanne and Laura Siegel Larson | 47:18-48:5 | ¶¶ 66 |
| The original copy of Joseph Shuster's will | 48:24-49:23 | ¶¶ 51 |

APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR
RECONSIDERATION OF STAY ORDER

| Topic | Depo Pages (Ex. D) | Amended Complaint |
|---|---|---|
| The Shuster Notice of Termination | 50:14-56:25 | ¶¶ 92-101 |
| The works listed in the Shuster Notice of Termination | 51:23-54:19 | ¶¶ 86-90, 97 |
| Works not listed in the Shuster Notice of Termination, including "Superboy," which was solely authored by Jerome Siegel | 55:13-56:4 | ¶¶ 86-90, 131-33 |
| Signature of the Shuster Notice of Termination | 50:14-22 | ¶¶ 118-23, 130 |
| The 2004 cancellation of the Pacific Pictures Agreements | 59:18-60:10 | ¶¶ 62, 99, 156, 158 |
| Joanne Siegel's first contact with Marc Toberoff | 83:23-84:21 | ¶¶ 66, 71, 79-80, 182 |

## Jean Peavy

### (Deposition Pages at Docket No. 64-2, Ex. E)

| Topic | Depo Pages | Amended Complaint |
|---|---|---|
| The 1947 Action between Jerry Siegel, Joseph Shuster, and DC's predecessors | 13:17-15:15 | ¶¶ 41-44 |
| The Superboy character | 15:16-20 | ¶¶ 86-90 |
| The 1974 Agreement between Jerry Siegel and Warner Bros., and further amendments to that agreement | 15:21-18:4 | ¶¶ 47-48 |
| Ms. Peavy's relationship with Joanne Siegel | 18:5-18:18 | ¶¶ 71, 79-84 |
| Ms. Peavy's 1992 correspondence with DC | 18:20-23:25 | ¶¶ 52-54 |
| Ms. Peavy's 1992 Agreement with DC | 25:21-28:9 | ¶¶ 55-57, 112-17, 175-76 |
| The establishment of the Estate of Joseph Shuster and the Shuster Terminations | 28:10-13 | ¶¶ 64-65, 90, 92-101, 129-34 |
| Ms. Peavy's  relationship with Toberoff | 31:24-32:4 | ¶¶ 60, 177-78 |

22
APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR
RECONSIDERATION OF STAY ORDER

| **Topic** | **Depo Pages** | **Amended Complaint** |
|---|---|---|
| Ms. Peavy's introduction of Toberoff to the Siegels | 32:5-34:2 | ¶¶ 71, 79-84 |
| The Pacific Pictures Agreements between Toberoff, Ms. Peavy and Defendant Mark Warren Peary | 34:3-34:24 | ¶¶ 60-64, 118-24 |

APPENDIX A TO DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION OF STAY ORDER