# EXHIBIT F

**Subject:**          FW: Letter to Matt Kline
**Attachments:**      Toberoff Joinder in Siegel MTD.PDF

**From:** Kline, Matthew
**Sent:** Thursday, August 26, 2010 3:25 PM
**To:** Laura Brill
**Cc:** Petrocelli, Daniel; Richard Kendall; Seto, Cassandra
**Subject:** RE: Letter to Matt Kline

Laura:

The tone and substance of your email are unfortunate. It is neither consistent with the conclusion of our call yesterday, nor Dick's subsequent call to me. Because we cannot permit our positions or the record to be misstated, we are compelled to address your points below. Those that are not disputed directly, assume are disputed and that all our clients' rights and remedies are reserved:

1. I stated very clearly and repeatedly during the call, and we have notes on this, that we likely could not reach an interim agreement without first seeing a draft of the stipulation. You said it might take a few days to get us the draft stipulation. We said we understood that, but also said that if this issue was important to you, you should draft the document quickly, and we would quickly get you a response. Notably, your e-mail fails to address this.

2. I told you at some length what concepts needed to be addressed in the draft on the call: start dates; sorts of privilege objections, etc. We will work reasonably and quickly on a response, but as this is a stipulation you say you want now and one that must urgently be addressed, we expect you to draft it--and as you know, Dan is in trial and I am jammed up on other matters.

3. Dick said he needed to do his homework on the "consent agreement" motion before any meaningful meet-and-confer could occur. We offered to have that discussion after he did so, and made clear that the call was not our Rule 37 meet and confer, and that such a conference would follow when Dan returned to town. Dan confirmed that in an e-mail to Dick yesterday, to which Dick responded with no objection, copying you. The following comments in your e-mail are contrary to and completely ignore what was discussed on the call, and I trust Dick did not review your e-mail before you sent it: "First, with respect to the issue of discovery relating to what you term the 'consent agreements,' you stated that DC objects to a protective order based on the facts and law. However, you declined repeated requests to state the legal and factual reasoning of your objection. Such refusal is not consistent with Rule 37."

Furthermore, Dick's August 23 letter makes the accusation that "allegations concerning such purported [consent] agreements in DC Comics' complaint *violate the mediation privilege....*" (Emphasis added.) Moreover, as the attached .PDF shows, your firm expressly joined the Siegels' Rule 12(f) motion. I hope your firm did its homework before making the grave allegation in the August 23 letter and authorizing Mr. Daum to file the August 13 joinder. It certainly did not do so when Dick asserted in his August 19 e-mail that Warner Bros' handling of the Toberoff Timeline document "raises very serious issues concerning ... Warner Bros.' misconduct." Nor did it, apparently, in connection with its letters, e-mails, and briefing on the Toberoff Timeline issue--all of which were sanctionable. As for any suggestion that we did not tell you the reasons why the Timeline protective-order motion was frivolous in advance of your filing it, here's an example of the sort of detail we provided you in advance of the filing and that the filing recklessly and deliberately ignored:

1

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Thursday, July 22, 2010 6:32 PM
**To:** Laura Brill
**Cc:** Petrocelli, Daniel; Richard Kendall
**Subject:** RE: DC Comics v. PPC Meet and Confer Letter

3

Laura,

The Toberoff Timeline has been a public document and a matter of public
record since March 2, 2009, when the parties filed their Joint Stipulation
Regarding Defendants' Motion To Reopen Discovery, To Compel Production of
Documents, and To Compel the Further Deposition of Kevin Marks in the
Siegel case. The document has been part of the public file ever since,
with your client's knowledge and complete inaction. When your client was
informed by DC Comics that it would file and use the document publicly in
the Siegel case roughly a year-and-a-half ago, DC Comics informed your
client that if he had any objections to its filing and using the document,
he should seek a protective order. He never did so, and he never argued
that any use of the document must be delayed pending judgment and appeal
in the Siegel case. His position that the document cannot be used now is
completely without merit.

4. Given the concessions in your e-mail on what you will not move on (*e.g.*, the "Second" paragraph of your email) and the lack of specificity on what other grounds you would still move on, we are happy to meet and confer further and set a time for a Rule 37 conference, but before we do so we need you to make clear what it is you intend to argue. We cannot tell what is left of your motion.

5. We think it's entirely inappropriate that you wait until Sept. 17 to provide us with any objections to the deposition notices we served. We gave you drafts of the Laura Siegel and Jean Peavy notices on July 28--almost a month ago--so you could do exactly that, as my e-mail to Dick yesterday laid out. If you were truly looking for a compromise here, you would offer the depositions now of those two elderly witnesses, reserving any rights you want to reserve to move to strike or exclude their testimony down the road. Failing that, it's obvious you're just trying to stonewall discovery altogether. Rule 12 doesn't allow that, and SLAPP doesn't allow that in a federal case involving federal claims or state claims where factual allegations are being challenged. If you're relying on Mr. Toberoff's Rule 54(b) motion to defer discovery, as you suggested on the call, you will get our response to that motion on September 3, and I hope you will agree it is not a basis for delaying discovery.

6. As for refusing us a reasonable number of extra pages to respond to a cross-motion--be it 5, 10, or 15 (whatever your motion deserves)--that sort of gamesmanship sets a precedent. Your firm can either act as good and reasonable lawyers do--and as Dick said you would on our call yesterday, including on this issue--or we can simply agree that no courtesies will be extended and the parties will have to move on every issue. Courts understandably do not like that, and we trust you will reconsider. As shown in our 24-page response to your 37-page protective-order motion, we know how to brief issues concisely. If not giving us the extra pages is really an excuse not to allow Magistrate Zarefsky to hear all these issues at once (as your e-mail suggests is the case),

2

please just say that clearly. But don't blame the extra burden on the court or the parties, to hear an extra motion on an additional day, on a reasonable request for a few extra pages.

I had hoped we'd elevated matters yesterday. Your letter and e-mail are major steps in the wrong direction.

Matt

---

**From:** Laura Brill [mailto:lbrill@kbkfirm.com]
**Sent:** Thursday, August 26, 2010 10:21 AM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Richard Kendall; Seto, Cassandra
**Subject:** RE: Letter to Matt Kline

Matt:

To be clear, we would like to work out an interim agreement on logging so that we will not be under the multiple burdens of negotiating an agreement, logging documents, and seeking a protective order as to such logging in the event we can't reach a final agreement respecting the logging of post-litigation documents. I did not say in the call that we would send you the proposed interim agreement at the same time as the draft final agreement. Nor did you say you would insist on seeing such a draft final agreement before entering an interim agreement to avoid the multiple burdens addressed above. I don't think that is appropriate. The point of an interim agreement is that it avoids unnecessary logging activities while we work towards the proposed final agreement.

Although you say that you would have expected us to be farther along in the drafting process, your assumption ignores the fact that we've been waiting for you to get back to us on this issue since the issue was first raised during the Rule 26(f) conference on August 16, and you still have not told us what kind of an agreement you would find acceptable. The fact that you say you do not necessarily agree about the *Siegel* litigation being the start date, but do not state what date you would prefer, illustrates the problem we will have in negotiating a final agreement and why an interim agreement is necessary. As we work out a final agreement for this matter, we would like to know what terms you would find appropriate so that we can draft and negotiate efficiently. The concept raised at the Rule 26(f) conference was that except as to the Toberoff Timeline and stolen documents and documents relating to these categories, there would be no obligation to log documents created after the commencement of the *Siegel* litigation. Please let me know if you agree with this concept and if not, what further refinements you would find acceptable.

As to the other matters raised in your below email, our views are as follows: First, with respect to the issue of discovery relating to what you term the "consent agreements," you stated that DC objects to a protective order based on the facts and law. However, you declined repeated requests to state the legal and factual reasoning of your objection. Such refusal is not consistent with Rule 37. If you have a legal or factual reason why a protective order on this basis would not be well founded, please share it the next time we speak so we can take it into account in making a determination whether to seek a court order.

Second, as to your request that we provide further specification of our objections to your document requests as overbroad, repetitive, and unduly burdensome, in order to minimize the need for potentially unnecessary disputes, we will not be moving for a protective order regarding the document requests you have served, but rather will serve our objections and responses when our responses to those requests are due. The parties can then meet and confer on the scope of appropriate document production with the perspective gained after the

Court has addressed the current discovery motions on September 20. This will be more efficient, as we will be able to fully meet and confer on all objections to the document requests, rather than doing it piecemeal.

Third, we have already given you the requested "ballpark" estimate of the length of our briefing on opposition to your motion. The addition of a request for a protective order will not materially affect the length of the opposition, and therefore does not appear to us to be a proper basis upon which you should request a significant expansion of the page limit for supplemental briefing. Based on the call today, it appeared that DC would object to Defendants asking for a protective order on September 20, unless we agree that DC will receive in return a substantial increase in the page limit for its response. Given that the substance of the briefing is essentially the same whether or not we seek a protective order, the request does not seem appropriate, and we'll plan to go ahead and set a protective order motion for hearing on October 4 if we cannot reach an agreement through the further meet and confer process.

As you are aware defendants were prepared to meet and confer under Rule 37 yesterday, and we did in fact discuss the substance of the matters raised in Richard Kendall's August 23 letter, but DC did not wish to consider the meeting the formal Rule 37 conference. We look forward to the prompt resumption and conclusion of our conference and appreciate your commitment to cause that to happen as soon as possible.

We continue to believe that the most appropriate thing to do is follow the steps set forth in Mr. Kendall's letter to you of August 23, for Defendants to serve responses and objections to the document requests at the date set forth in the notices and to meet and confer after September 20 regarding how to handle the discovery that has been served. Other than the fact that DC would like to have depositions before the pleading motions have been heard, we see no basis for DC not to agree to such a simple and obvious solution.

Regards,
Laura

## ◣ Kendall Brill Klieger

**Laura W. Brill**
Kendall Brill & Klieger LLP

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Wednesday, August 25, 2010 9:16 PM
**To:** Laura Brill
**Cc:** Petrocelli, Daniel; Richard Kendall; Seto, Cassandra
**Subject:** RE: Letter to Matt Kline

Laura,

I write in response to your letter of today. First, I hope this was accidental, but we made no commitment that the start date of any stipulation would be the commencement of the *Siegel* litigation. Your letter suggests that was the case, when in actuality what we said was give us a proposal, including a proposed start date (and several other items we discussed), and we'd evaluate it.

Second, your proposed stand-still agreement, pending negotiations of a final stipulation (in the third paragraph of your letter) is overbroad and likely will not work, but I will share it with my team and our client, and we will consider it. As I noted on the call, the truly important document here is the actual draft stipulation. Please provide us with that document as soon as possible, as we likely won't be able to make any interim agreement (if

at all) until we get that first draft.  Marc raised the issue of such a stipulation during our Rule 26(f) conference on August 16.  I hope that he and you had something specific in mind that can be reduced to writing soon.

Third, please follow up soon on the other details we requested of you on the call, including what specific "broad, repetitive, and burdensome" objections you have, if any; whether you intend to move on the "consent agreement" issue addressed in the 12(f) motion; how many pages you expect your briefing to be; and whether you'll agree that, if you cross-move on our motion, we'll get the needed pages (*i.e.*, far more than 5) to respond.

Thanks,

Matt

---

**From:** Laura Brill [mailto:lbrill@kbkfirm.com]
**Sent:** Wednesday, August 25, 2010 7:10 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Richard Kendall; MToberoff@ipwla.com; Nathalie Cohen; Nicholas Daum; Nick Williamson; Keith Adams
**Subject:** Letter to Matt Kline

Matt,

Please see the attached letter regarding logging documents.

Regards,
Laura