# EXHIBIT H

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| DC COMICS, | ) | |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO. CV 10-03633-ODW(RZX) |
| | ) | |
| | ) | |
| PACIFIC PICTURES CORPORATION, | ) | LOS ANGELES, CALIFORNIA |
| IP WORLDWIDE, LLC., ET AL., | ) | SEPTEMBER 20, 2010 |
| | ) | (10:14 A.M. TO 11:37 A.M.) |
| DEFENDANTS. | ) | |

HEARING
BEFORE THE HONORABLE RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:            SEE NEXT PAGE

COURT REPORTER:         RECORDED; COURT SMART

COURTROOM DEPUTY:       ILENE BERNAL

TRANSCRIBER:            DOROTHY BABYKIN
                        COURTHOUSE SERVICES
                        1218 VALEBROOK PLACE
                        GLENDORA, CALIFORNIA   91740
                        (626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
                                                              2

 1    APPEARANCES:   (CONTINUED)
      FOR THE PLAINTIFF:          O'MELVENY & MYERS LLP
 2                                BY:  DANIEL M. PETROCELLI
                                       MATTHEW T. KLINE
 3                                     JASON TOKORO
                                       ATTORNEYS AT LAW
 4                                1999 AVENUE OF THE STARS
                                  7TH FLOOR
 5                                LOS ANGELES, CALIFORNIA  90067

 6    FOR THE DEFENDANTS:         KENDALL BRILL & KLIEGER LLP
                                  BY:  RICHARD B. KENDALL
 7                                     LAURA W. BRILL
                                  10100 SANTA MONICA BOULEVARD
 8                                SUITE 1725
                                  LOS ANGELES, CALIFORNIA  90067
 9
                                  TOBEROFF & ASSOCIATES, P.C.
10                                BY:  MARC TOBEROFF
                                       ATTORNEY AT LAW
11                                2049 CENTURY PARK EAST
                                  SUITE 2720
12                                LOS ANGELES, CALIFORNIA  90067

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                        I N D E X
    CASE NO. CV 10-03633-ODW(RZX)              SEPTEMBER 20, 2010
2
    HEARING:  1.   PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND
3                  TAKE IMMEDIATE LIMITED DISCOVERY OF TWO ELDERLY
                   WITNESSES;
4             2.   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER (RE
                   TOBEROFF TIMELINE);
5             3.   DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
                   STAYING DEPOSITIONS PENDING RULINGS ON
6                  DISPOSITIVE MOTIONS AND LIMITING SCOPE AND TIME
                   OF DEPOSITIONS
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 20, 2010

2                    10:14 A.M.

3          THE CLERK:  ITEM NUMBER 2, CASE NUMBER

4     CV 10-03633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES

5     CORPORATION, ET CETERA, ET AL.

6          COUNSEL, PLEASE MAKE YOUR APPEARANCES.

7          MR. PETROCELLI:  GOOD MORNING, YOUR HONOR.

8          MY NAME IS DANIEL PETROCELLI.  I'M HERE WITH

9     MATTHEW KLINE AND JASON TOKORO.  AND WE REPRESENT THE

10    PLAINTIFF DC COMICS.

11         THE COURT:  GOOD MORNING.

12         MR. KENDALL:  GOOD MORNING, YOUR HONOR.

13         RICHARD KENDALL APPEARING ON BEHALF OF THE -- WHAT

14    WE'LL CALL THE TOBEROFF DEFENDANTS.  THAT'S MARK TOBEROFF,

15    PACIFIC PICTURES, IPW AND SO FORTH -- TOGETHER WITH MY

16    PARTNER LAURA BRILL.  AND MR. TOBEROFF IS HERE ON BEHALF OF

17    CERTAIN OTHER PARTIES.

18         THE COURT:  ALL RIGHT.

19         MR. PETROCELLI:  YOUR HONOR, IS THERE A TAPE

20    RECORDING OF THIS?  IS THAT HOW IT WORKS?

21         THE COURT:  IT'S NOT TAPE, BUT IT IS THE

22    TECHNOLOGICAL ADVANCEMENT OF THAT, YES.

23         MR. PETROCELLI:  OKAY.  THANK YOU.

24         THE COURT:  MR. TOBEROFF, ARE YOU MAKING AN

25    APPEARANCE AS WELL OR JUST OBSERVING?

5

1          MR. TOBEROFF:  I WON'T BE SPEAKING, BUT I'M HERE ON

2  BEHALF OF THE SIEGELS AND THE SHUSTER PARTIES.

3          THE COURT:  ALL RIGHT.

4          WELL, I NEEDED SUPERMAN TO HELP ME BRING IN THE

5  DOCUMENTS.

6          (LAUGHTER.)

7          THE COURT:  ALL RIGHT.  THE FIRST MATTER I WANT TO

8  ADDRESS IS -- I HAVE AN APPLICATION FROM MR. TOBEROFF TO FILE

9  A NUMBER OF DOCUMENTS UNDER SEAL, FIVE DECLARATIONS.

10          IS THERE ANY OPPOSITION TO THAT, MR. PETROCELLI?

11          MR. PETROCELLI:  YOUR HONOR, IF THESE RELATE TO

12  MEDICAL ISSUES, THE ANSWER IS THERE IS NO OPPOSITION.

13          THE COURT:  OKAY.  THEN, I WILL APPROVE THAT.

14          (PAUSE IN PROCEEDINGS.)

15          THE COURT:  I SUPPOSE IT IS POSSIBLE THAT THE

16  MEDICAL CONDITION OF THESE PEOPLE MAY COME UP IN THIS

17  HEARING.  I WOULD NOT THINK IT'S NECESSARY TO SEAL THE TAPE

18  OF -- OR THE RECORDING OF THE HEARING.  BUT IF ANYBODY FEELS

19  THAT'S SO AFTERWARDS, LET ME KNOW.

20          ALL RIGHT.  WE HAVE THREE MOTIONS.  THEY'RE ALL

21  SOMEWHAT INTERRELATED IN MY VIEW.  NONE OF THEM JUSTIFIES THE

22  AMOUNT OF FILING THAT'S BEEN DONE.  I COUNTED UP.  I THINK

23  THERE'S SIX REAMS OF PAPER THAT I'VE BEEN PRESENTED WITH.

24  PROBABLY A TOTAL OF 75 PAGES WOULD HAVE DONE FOR IT ALL.

25          WHO WANTS TO BE HEARD FIRST?

6

1          MR. KENDALL:  DOES YOUR HONOR HAVE AN ORDER OF

2    PREFERENCE?

3          THE COURT:  IT DOESN'T MATTER.  I'LL GIVE YOU EACH

4    AS MUCH TIME AS YOU NEED, UNDERSTANDING THAT I HAVE -- I HAVE

5    LOOKED AT IT ALL, AND I AM FAMILIAR WITH THE CASE.

6          MR. KENDALL:  OKAY.

7          THE COURT:  SO, IT DOESN'T MATTER TO ME.  WHOEVER

8    -- WHOEVER IS THE BETTER ARM WRESTLER.

9          MR. KENDALL:  YOUR HONOR --

10         MR. PETROCELLI:  I CERTAINLY WOULD LOSE THAT, YOUR

11   HONOR.

12         MR. KENDALL:  MY THOUGHT IF IT'S CONSISTENT WITH

13   THE COURT'S SENSE AT THIS POINT IS IT MIGHT MAKE SENSE TO

14   TALK ABOUT THE TWO GENERAL DISCOVERY MATTERS AND THEN TO GO

15   AFTER THAT TO THE TIMELINE.  MY THOUGHT BEING THAT THOSE --

16         THE COURT:  WELL, I WOULD SAY TALK ABOUT IT ALL AT

17   ONCE.

18         MR. KENDALL:  OKAY.  THEN, YOUR HONOR --

19         THE COURT:  BUT I DON'T CARE WHO GOES FIRST.  SO,

20   YOU'RE STANDING THERE.  YOU GO AHEAD.

21         MR. KENDALL:  THANK YOU, YOUR HONOR.

22         YOUR HONOR, I AM GOING TO ADDRESS THE MOTION

23   BROUGHT BY DC TO INITIATE DISCOVERY AS WELL AS THE MOTION

24   BROUGHT BY DEFENDANTS TO STAY DISCOVERY.  AND, THEN, MY

25   PARTNER LAURA BRILL WILL DISCUSS THE TIMELINE.

7

1          THE COURT:  ALL RIGHT.

2          MR. KENDALL:  YOUR HONOR, THE ISSUES BEARING ON THE

3   TERMINATION OF THE SUPERMAN COPYRIGHT HAVE LARGELY BEEN

4   SETTLED IN THE SIEGEL CASE THAT WAS BEFORE JUDGE LARSON AND

5   IS BEFORE JUDGE WRIGHT.  THERE ARE SOME ISSUES RELATING

6   PRIMARILY TO DAMAGES THAT REMAIN IN THAT CASE.

7          THE COURT:  NOTHING ABOUT AN ACCOUNTING HAS BEEN

8   TRIED; IS THAT CORRECT?

9          MR. KENDALL:  CORRECT.

10          THE COURT:  ALL RIGHT.

11          MR. KENDALL:  SO, THEN --

12          THE COURT:  AND THERE WAS SOME TALK OF A RULE 54

13   APPLICATION.

14          WHERE DOES THAT STAND?

15          MR. KENDALL:  IT'S BEEN MADE, AND IT IS SCHEDULED

16   FOR A HEARING ON NEXT MONDAY, ON THE 27TH OF SEPTEMBER.

17          THE COURT:  OKAY.

18          MR. KENDALL:  SO, THOSE ISSUES HAVING BEEN LARGELY

19   SETTLED.

20          AND IT WOULD BE OUR POSITION THAT THE LAW OF THE

21   CASE DOCTRINE AND IF THE RULE 54(B) MOTION IS DECIDED, THE

22   ISSUE PRECLUSION DOCTRINE SHOULD HAVE AN EFFECT ON THE

23   DISCOVERY THAT WOULD BE TAKEN ON THE FEDERAL CLAIMS IN THIS

24   ACTION.  THOSE BEING THE FIRST, SECOND, AND THIRD CLAIMS FOR

25   RELIEF.

8

1          THE LAW OF THE CASE DOCTRINE IS, I'LL BE FRANK TO

2    SAY, A DICIER AND MORE DIFFICULT TO APPLY DOCTRINE THAN WOULD

3    ISSUE PRECLUSION BE.

4          BUT IN ANY EVENT, WE SHOULD KNOW A LOT MORE ABOUT

5    WHERE THOSE ISSUES STAND ON THE FEDERAL CLAIMS, THOSE FIRST

6    THREE CLAIMS FOR RELIEF AFTER JUDGE WRIGHT ADDRESSES THE RULE

7    54(B) ISSUE IN A WEEK.

8          THE COURT:  UNLESS, OF COURSE, HE TAKES IT UNDER

9    SUBMISSION.

10         MR. KENDALL:  IN WHICH CASE WE'LL KNOW IN DUE TIME.

11         IT IS THE VIEW OF THE DEFENDANTS, YOUR HONOR, THAT

12   THE PRINCIPAL, IF NOT SOLE, PURPOSE OF THIS CASE IS TO REOPEN

13   ISSUES THAT WERE DECIDED ALREADY BY JUDGE LARSON AND TO

14   REOPEN DISCOVERY INTO ISSUES THAT HAVE ALREADY BEEN

15   COMPLETELY DISCOVERED.  AND, IN FACT, THAT OCCURRED IN A

16   PERIOD THAT LARGELY CONCLUDED IN 2006.

17         SO, IT IS OUR VIEW THAT THE PRINCIPAL PURPOSE OF

18   THIS CASE BEING TO TAKE DISCOVERY IN WHAT WE BELIEVE IS A WAY

19   PROHIBITED BY THE ANTI-SLAP LAW AND, ALSO, TO BE BROUGHT

20   QUICKLY TO AN END AS FAR AS A PENDING CASE BY A MOTION TO

21   DISMISS.  IT IS OUR VIEW THAT DISCOVERY IN THESE

22   CIRCUMSTANCES SHOULD NOT PROCEED UNTIL THE THRESHOLD AND

23   CRITICAL LEGAL ISSUES HAVE BEEN DECIDED.

24         AND IN THIS PARTICULAR CASE BECAUSE IT DOES SO

25   CLEARLY PRESENT ISSUES THAT ARE ADDRESSED BY THE ANTI-SLAP

9

1    LAW, THE NORMAL BURDEN OF A PARTY RESISTING DISCOVERY IS

2    REVERSED.

3              IN THIS CASE IT IS THE DUTY OF DC COMICS TO SHOW

4    THAT DISCOVERY IS ESSENTIAL IF WE USE THE FEDERAL STANDARD,

5    OR THAT GOOD CAUSE HAS BEEN SHOWN IF WE USE THE STATE

6    ANTI-SLAP STANDARD.  AND WE CONTEND THEY HAVE NOT DONE SO.

7              NOW, A MOMENT ON THE BURDEN.  THERE'S BEEN QUITE A

8    BIT OF LITIGATION IN THE FEDERAL COURTS OVER THE EFFECT OF

9    THE ABSOLUTE STAY SUBJECT TO THE GOOD CAUSE EXCEPTION OF

10   DISCOVERY UNDER THE CALIFORNIA STATUTE WHEN A PARTY IN

11   FEDERAL COURT WISHES TO TAKE DISCOVERY DESPITE THE PENDENCY

12   OF AN ANTI-SLAP MOTION.

13             THE MOST COMPLETE ANALYSIS OF THE STANDARD THAT I'M

14   AWARE OF WAS ACTUALLY WRITTEN BY JUDGE FEESS OF THIS COURT,

15   WHO LOOKED AT THE FEDERAL STANDARD --

16             THE COURT:  I'M FAMILIAR WITH HIS DECISION.

17             MR. KENDALL:  RIGHT.

18             -- AND THE STATE STANDARD.

19             THE COURT:  THERE'S ALSO ONE BY JUDGE PREGERSON OF

20   THIS COURT.

21             MR. KENDALL:  CORRECT.

22             I THINK THAT THE SUM TOTAL IS THAT IT'S CLEAR THAT

23   THE BURDEN IS ON THE PARTY SEEKING DISCOVERY.  AND IT'S CLEAR

24   THAT UNLESS THERE IS, DEPENDING ON WHETHER YOU USE THE

25   FEDERAL FORMULATION OR THE STATE, ESSENTIAL OR GOOD CAUSE, AT

10

1    LEAST A VERY STRONG SHOWING OF NEED FOR DISCOVERY.  DISCOVERY

2    SIMPLY MUST AWAIT THE RESOLUTION OF THE ANTI-SLAP MOTION.

3              EVEN IF THERE WEREN'T AN ANTI-SLAP MOTION IN THIS

4    CASE, WHERE THERE ARE PENDING MOTIONS TO DISMISS THAT WOULD

5    ACCOMPLISH THE DISMISSAL OF THE ENTIRE CASE, THE RULE IN THE

6    FEDERAL COURTS IS THAT UNLESS THERE IS A REASON WHY DISCOVERY

7    IS NECESSARY IN ORDER TO OPPOSE SUCH MOTIONS, DISCOVERY

8    SHOULD ORDINARILY AWAIT THE RESOLUTION OF THOSE MOTIONS.

9              NOW, THAT CERTAINLY IS NOT AN ABSOLUTE RULE.  IT IS

10   CLEARLY SUBJECT --

11             THE COURT:  LET'S TALK ABOUT WHETHER IT'S A RULE AT

12   ALL.  ISN'T IT THE RESULT OF THE FEW DISTRICT COURT

13   DECISIONS?  I MEAN, THERE'S NO APPELLATE DECISION THAT SAYS

14   THAT, IS THERE?

15             MR. KENDALL:  YOUR HONOR, I THINK THAT THERE ARE

16   APPELLATE DECISIONS THAT HAVE UPHELD DISTRICT COURTS, THAT IN

17   THE EXERCISE OF THEIR DISCRETION -- AND IT IS CLEARLY A WIDE

18   DISCRETION -- HAVE CONCLUDED IN A VARIETY OF CIRCUMSTANCES IN

19   WHICH A PARTY HAS MOVED TO DISMISS A CASE, FOR EXAMPLE, FOR

20   WANT OF JURISDICTION OR FOR OTHER REASONS THAT APPEAR WHEN

21   THE COURT, AS HAS BEEN SAID, TAKES A PEEK AT THE MOTION TO

22   DISMISS, TO BE SUBJECT TO RESOLUTION WITHOUT THE NEED FOR A

23   FURTHER -- FOR ANY FACTUAL INQUIRY.

24             AND, OF COURSE, THE ESSENCE OF MOST -- OF A GOOD

25   MOTION TO DISMISS IS THAT THERE ARE NO FACTS THAT NEED TO BE

11

1    DETERMINED BEFORE IT CAN BE DECIDED.

2            IN THIS CASE THE --

3            THE COURT:  BUT AS I RECALL, WHEN THE FEDERAL RULES

4    WERE AMENDED BACK IN 2000 AND THEY CAME UP WITH THIS NOTION

5    OF SCHEDULING CONFERENCE AND ALL THAT SORT OF STUFF, THEY

6    SPECIFICALLY ADDRESSED WHETHER A MOTION TO DISMISS SHOULD

7    HALT THE PROCESS.

8            AND, IN FACT, DIDN'T THE ADVISORY COMMITTEE SAY,

9    NO, IT SHOULDN'T HALT THE PROCESS, THAT NOTWITHSTANDING THE

10   PENDENCY OF A MOTION TO DISMISS YOU OUGHT TO KEEP ON GOING

11   WITH DISCOVERY, RECOGNIZING THAT, OF COURSE, THE JUDGE HAS

12   THE AUTHORITY IN APPROPRIATE CIRCUMSTANCES TO CONCLUDE THAT

13   THIS IS A SITUATION IN WHICH DISCOVERY SHOULD NOT GO FORWARD.

14   AND MAYBE THIS IS ONE OF THOSE SITUATIONS.

15           BUT IN TERMS OF THERE BEING A RULE, I'M JUST NOT SO

16   SURE THAT THERE IS MUCH IN THE WAY THERE.

17           MR. KENDALL:  I THINK THAT'S FAIR, YOUR HONOR.  I

18   THINK THAT TO THE EXTENT THAT THERE'S A RULE, IT'S A RULE

19   THAT UNLESS THERE IS AN EXPECTATION THAT DISCOVERY WOULD BE

20   APPROPRIATE UNDER THE CIRCUMSTANCES, A COURT SHOULD EXERCISE

21   ITS DISCRETION TO HOLD OFF.  HERE WE'RE TALKING ABOUT A VERY

22   SHORT PERIOD OF TIME.

23           BUT I THINK IN ALL EVENTS THE CRITICAL POINT, WHICH

24   IS THE POINT THAT WE MADE IN OUR BRIEF, IS THAT WE HAVE AN

25   ANTI-SLAP MOTION.

12

1        NOW, ONE WORD ON THE PROCEDURAL STATUS OF THE

2   ANTI-SLAP MOTION.  THE ANTI-SLAP MOTION WAS FILED ON THE 13TH

3   OF JULY TO THE ORIGINAL COMPLAINT.  DC WAITED UNTIL THE LAST

4   POSSIBLE DAY --

5        THE COURT:  THEY AMENDED THEIR COMPLAINT.  JUDGE

6   WRIGHT SAID THAT MOOTS THE MOTION.

7        MR. KENDALL:  RIGHT.

8        THE COURT:  AND HE'S CORRECT.

9        MR. KENDALL:  ACTUALLY, WE DON'T THINK HE IS

10  CORRECT ON THAT.  AND WE INTEND TO APPEAL THAT.  IT'S FOR A

11  TECHNICAL REASON, WHICH IS --

12        THE COURT:  INTEND TO APPEAL THAT?

13        MR. KENDALL:  YES.  I'LL EXPLAIN WHY.

14        THE COURT:  ALL RIGHT.

15        MR. KENDALL:  UNDER STATE LAW THE QUESTION REMAINS

16  OF ATTORNEY'S FEES.  SO, AFTER THERE'S BEEN AN AMENDMENT --

17  SO, HERE'S THE SITUATION.  ANTI-SLAP MOTION IS FILED.  THE

18  WHOLE PURPOSE OF ANTI-SLAP MOTIONS IS TO ADDRESS THE PROBLEM

19  OF THE PUTATIVE PLAINTIFF/DEFENDANT IN RESISTING THE CASE

20  THAT HE MOVES TO STRIKE IN THE ANTI-SLAP MOTION FROM BEING

21  CHILLED IN THE EXERCISE OF CONSTITUTIONAL RIGHTS.

22        SO, UNDER STATE LAW IT'S VERY CLEAR THAT IN THE

23  PROCEDURAL CIRCUMSTANCES WE FIND OURSELVES UNDER HERE THE

24  ANTI-SLAP MOTION ATTORNEY'S FEES ISSUE IS NOT MOOT.  BECAUSE

25  UNDER STATE LAW WE WOULD BE ENTITLED TO COLLECT OUR

13

1    ATTORNEY'S FEES WITH RESPECT TO THE ANTI-SLAP MOTION THAT WE

2    FILED.

3            IT IS NOT SO CLEAR IN FEDERAL LAW.  IN FEDERAL LAW

4    THERE'S A POLICY GENERALLY IN FAVOR OF AMENDMENT.  AND, SO,

5    UNDER FEDERAL LAW THERE IS A QUESTION AS TO WHETHER IT'S

6    MOOT.

7            AND I THINK JUDGE WRIGHT, WHO ACTED WITHOUT ANY

8    BRIEFING ON THE SUBJECT, JUST OPERATED UNDER THE USUAL

9    FEDERAL LAW STANDARDS.

10           HOWEVER, THERE'S A RECENT CASE DECIDED BY THE

11   UNITED STATES SUPREME COURT LAST TERM, THE SHADY GROVE CASE,

12   WHICH YOU SAW SOME MENTION OF IN THE BRIEFING HERE.

13           IT'S A 5 TO 4 DECISION WHERE FIVE JUSTICES

14   DETERMINED IN A CASE INVOLVING THE TENSION BETWEEN RULE 23

15   CLASS ACTION PRACTICE AND A STATE LAW IN NEW YORK THAT

16   GOVERNED CLASS ACTION PRACTICE, THE COURT DETERMINED THAT

17   UNDER THE ERIE DOCTRINE THE SUBSTANTIVE LAW OF ESTATE NEEDS

18   TO BE RESPECTED AND THAT THE FEDERAL RULES MUST GIVE WAY --

19   FEDERAL PROCEDURAL RULES MUST GIVE WAY TO THAT SUBSTANTIVE

20   LAW PREFERENCE.  HOWEVER -- THAT IS, WITH RESPECT TO STATE

21   LAW CLAIMS.  BUT, HOWEVER, IF IT'S A PROCEDURAL RULE OF THE

22   STATE, THEN, THE FEDERAL RULES OF CIVIL PROCEDURE TRUMP.

23           THERE'S A QUESTION HERE AS TO WHETHER THE -- WHAT

24   WE CONTEND -- SUBSTANTIVE PREFERENCE OF THE STATE OF

25   CALIFORNIA WITH RESPECT TO COLLECTION OF ATTORNEY'S FEES FOR

14

1    AN ANTI-SLAP MOTION WHEN THE DEFENDANT CHOOSES NOT TO CONTEST

2    IT BUT INSTEAD AMENDS THE COMPLAINT ARE AVAILABLE.

3         AND, SO, IT'S JUST A LONG WAY I'M AFRAID OF

4    ANSWERING A SIMPLE QUESTION WHICH IS WHY WE CONTEND THAT THE

5    MOTION -- THE ANTI-SLAP MOTION IS NOT MOOT.  WE --

6         THE COURT:  ALL RIGHT.  WELL, IT'S NOT IMPORTANT TO

7    THESE PROCEEDINGS IN ANY EVENT.  I'M SORRY I RAISED IT.  IT

8    WAS JUST AN OFFHAND THOUGHT.

9         SO, LET'S GET TO THE MOTIONS HERE.

10        MR. KENDALL:  OKAY.

11        SO, THE HISTORY HERE IS THAT --

12        THE COURT:  WELL, I KNOW THE HISTORY HERE.

13        MR. KENDALL:  THE PARTIES HAVE HAD A SERIOUS

14   DISAGREEMENT ABOUT WHETHER DISCOVERY SHOULD OCCUR IN ADVANCE

15   OF JUDGE WRIGHT'S DETERMINATIONS OF THE ANTI-SLAP ISSUE AND

16   THE MOTIONS TO DISMISS.

17        THERE IS ALSO AN ISSUE --

18        THE COURT:  I TAKE IT NOBODY APPROACHED JUDGE

19   WRIGHT ON THAT ISSUE.

20        MR. KENDALL:  THAT'S CORRECT.

21        THE COURT:  DID YOU HAVE -- YOU HAD A SCHEDULING

22   CONFERENCE IN FRONT OF HIM?

23        MR. KENDALL:  THERE HAS NOT BEEN A SCHEDULING

24   CONFERENCE IN THIS CASE.

25        THE COURT:  ALL RIGHT.

15

1          MR. KENDALL:  SO, THE ISSUE THAT DIVIDES US BEGAN

2    AS AN ISSUE AS TO WHETHER DC SHOULD TAKE THE DEPOSITIONS OF

3    TWO ELDERLY WITNESSES, AS THEY PUT IT --

4          THE COURT:  NO, I KNOW.

5          MR. KENDALL:  -- BY THE 30TH OF SEPTEMBER.

6          THAT MOTION TO INITIATE DISCOVERY THAT DC BROUGHT

7    WE BELIEVE IS NOW ENTIRELY MOOT.

8          THE COURT:  YES, YOU SAID THAT IN YOUR PAPERS.

9          MR. KENDALL:  RIGHT.

10         AND ONCE YOU GET PAST THE MOOTNESS ISSUE, I THINK

11   ALL OF THE OTHER ISSUES ARE BASICALLY THE SAME ISSUES IN THE

12   TWO MOTIONS RELATING TO WHAT HAPPENS WHEN DISCOVERY OCCURS,

13   IF IT DOES, AT SOME POINT AFTER SEPTEMBER 30TH.

14         NOW, AS TO THAT, THERE'S SEVERAL POINTS, YOUR

15   HONOR, THAT I'VE MADE ALREADY; NAMELY, THE FAILURE OF DC TO

16   MAKE A SHOWING AS TO WHY THIS DISCOVERY IS ESSENTIAL FOR THE

17   OPPOSITION TO THE ANTI-SLAP MOTION OR WHY IT'S APPROPRIATE TO

18   PROCEED WITH THIS DISCOVERY WITHOUT WAITING FOR JUST A FEW

19   WEEKS UNTIL AFTER JUDGE WRIGHT HAS RULED.

20         I DON'T THINK THAT THE PLAINTIFF HAS STATED WITH

21   THE REQUISITE DEGREE OF SPECIFICITY WHAT DISCOVERY IT NEEDS

22   OR HOW THAT DISCOVERY WOULD BEAR ON THIS MOTION.

23         NOW, THEY HAVE MADE THIS POINT.  THEY HAVE SAID WE

24   HAVE DISCOVERY TO TAKE ON THE FEDERAL CLAIMS.  THOSE ARE THE

25   CLAIMS RELATING TO THE -- FOR LACK OF A BETTER DESCRIPTION --

16

1    VALIDITY OF THE SHUSTER COPYRIGHT TERMINATION.

2              AND, SO, WE SHOULD BE ABLE TO GO FORWARD ON THOSE

3    CLAIMS AND TAKE DISCOVERY EVEN THOUGH WE MAY BE FACING AN

4    ANTI-SLAP MOTION ON THE PENDENT CLAIMS.

5              WE DON'T THINK IT'S APPROPRIATE TO GO FORWARD WITH

6    DISCOVERY JUST ON THE FEDERAL CLAIMS FOR BASICALLY TWO

7    PRINCIPAL REASONS.

8              ONE IS THE PENDENCY OF THE MOTION TO DISMISS.

9              AND SECOND IS THE DIFFICULTY OF ACTUALLY SUBJECTING

10   THE WITNESSES TO SEVERAL ROUNDS OF DEPOSITIONS, CONSIDERING

11   THEIR HEALTH AND ALSO CONSIDERING THE FACT THAT THEY HAVE

12   BEEN DEPOSED ON MANY OF THESE ISSUES ALREADY.

13             AND, THEN, LASTLY, BECAUSE IF THE LAW OF THE CASE

14   DOCTRINE OR THE RULE 54(B) MOTION RESULT IN CABINING THE

15   APPROPRIATE DISCOVERY FOR THIS CASE, THEN, THERE MAY BE NO

16   DISCOVERY TO TAKE OR MUCH MORE LIMITED DISCOVERY TO TAKE ON

17   THE FEDERAL CLAIMS.

18             AND THESE ISSUES ARE GOING TO BE HARD FOUGHT.  AND

19   WE BELIEVE JUDGE WRIGHT SHOULD DECIDE THEM.  AND THAT THERE'S

20   NOT A SIGNIFICANT PREJUDICE TO DC IN AWAITING THAT RESULT.

21   AND THERE IS SIGNIFICANT PREJUDICE TO THE WITNESSES THEY SEEK

22   TO DEPOSE.

23             NOW, WE'VE SUBMITTED THE DECLARATIONS, WHICH I'M

24   GOING TO TRY TO SPEAK ABOUT GENERALLY SO WE DON'T GET --

25             THE COURT:  I READ THE DECLARATIONS.  I READ THEM

17

1    ALL.

2            MR. KENDALL:    THERE ARE SIGNIFICANT HEALTH ISSUES

3    WITH RESPECT TO THREE OF THESE WITNESSES.    AND PARTICULARLY

4    GIVEN THAT --

5            THE COURT:    ALTHOUGH IT SEEMS TO ME THAT AT LEAST

6    ONE IS MORE SERIOUS THAT THE OTHERS.

7            MR. KENDALL:    I WOULD SAY TWO ARE CONSIDERABLY --

8    YOU KNOW, ARE SPECIALLY SERIOUS.    THAT THERE ARE TWO WHERE

9    THE EFFECT OF THE DEPOSITION COULD BE DANGEROUS TO AN ELDERLY

10   PERSON'S CONTINUED QUALITY OF LIFE.

11           THEN, THERE'S ONE WHERE IT'S CLEAR FROM THE

12   DEPOSITION THAT THERE IS A VERY SERIOUS LONG-TERM DISEASE AND

13   SEVERAL RELATED CONDITIONS THAT CAUSE VERY SIGNIFICANT

14   DISCOMFORT AND PAIN AND SUFFERING TO THE WITNESS.

15           IN ANY CASE, YOUR HONOR, IT SEEMS THAT THERE SHOULD

16   BE A VERY GOOD REASON TO TAX THESE WITNESSES WITH SEVERAL

17   DEPOSITIONS IF ONE WERE TO DO THAT.    AND WE DON'T BELIEVE

18   THAT THEY HAVE SHOWN A VERY GOOD REASON TO DO THAT.    IN FACT,

19   WE BELIEVE THAT FOR AT LEAST THE ISSUES THAT ARE POSED ON THE

20   FEDERAL CLAIMS, THE INFORMATION THAT THEY MIGHT SEEK IF THEY

21   MADE SUCH A SHOWING TO GET COULD BE OBTAINED BY WRITTEN

22   QUESTIONS, INTERROGATORIES, REQUESTS FOR ADMISSION, AT LEAST

23   IN THE FIRST INSTANCE.    NONE OF WHICH HAS BEEN TRIED.    NONE

24   OF WHICH HAS BEEN PROPOUNDED.

25           AND, THEN, IF IT'S NECESSARY, TAKE THE DEPOSITIONS

18

1    BUT TAKE AT THAT POINT PURSUANT TO THE FEDERAL RULES ONE

2    DEPOSITION IF IT IS ORDERED AS AN ORAL DEPOSITION.

3            AND WE WOULD EXPECT TO MEET AND CONFER AND HOPE

4    THAT ANY ORAL DEPOSITION THAT IS NECESSARY COULD BE VERY MUCH

5    LIMITED.

6            SO, IT SEEMS THAT THE PRACTICAL SOLUTION HERE IS

7    THE SOLUTION THAT CAUSES THE LEAST PREJUDICE AND IN SOME

8    CASES HEALTH DANGER TO THE WITNESSES WHILE AVERTING, AS I

9    THINK THIS WOULD, ANY SIGNIFICANT PREJUDICE TO DC COMICS FOR

10   JUST A MATTER OF A FEW WEEKS.

11           IF THE COURT WANTS TO HAVE A DISCUSSION OF HOW WE

12   GOT HERE AND THE MEET AND CONFER, WHICH I CANNOT IMAGINE THE

13   COURT DOES, I'M --

14           THE COURT:  YOUR IMAGINATION IS CORRECT.

15           MR. KENDALL: -- PREPARED TO ADDRESS IT.  BUT I

16   THINK IT'S BEST TO STAY AWAY FROM THOSE ISSUES.

17           WOULD YOU LIKE NOW TO HEAR FROM --

18           THE COURT:  IF YOU'RE DONE.

19           MR. KENDALL: -- MS. BRILL BEFORE MR. PETROCELLI

20   STANDS UP, YOUR HONOR?

21           THE COURT:  YES, IF YOU'RE DONE.

22           MR. PETROCELLI, BE ASSURED YOU WILL GET ALL THE

23   TIME YOU NEED -- UNLESS YOU START REPEATING YOURSELF.

24           MR. PETROCELLI:  I HAVE NO DOUBT THAT EITHER WILL

25   OCCUR, YOUR HONOR.

19

1          THE COURT:  AND YOU'RE GOING TO ADDRESS THE

2   SO-CALLED TOBEROFF TIMELINE.

3          MS. BRILL:  THE TIMELINE MOTION, YES, YOUR HONOR.

4          GOOD MORNING, YOUR HONOR.  LAURA BRILL ON BEHALF OF

5   MR. TOBEROFF AND THE TOBEROFF DEFENDANTS.

6          I WANTED TO ADDRESS FIRST THE LIMITED NATURE OF THE

7   PROTECTIVE ORDER THAT WE'RE SEEKING AND WHY WE THINK IT'S

8   NECESSARY ON THE VERY EXTRAORDINARY FACTS OF THE CASE.

9          ALL THAT THIS MOTION IS SEEKING TO DO IS TO STOP DC

10  COMICS FROM USING THE TIMELINE IN DISCOVERY IN THIS CASE

11  UNTIL THE QUESTION OF WHETHER IT WAS PROPERLY DISCLOSED IN

12  THE FIRST PLACE HAS BEEN DECIDED BY THE NINTH CIRCUIT.

13         AND THAT ISSUE IS EXACTLY WHAT THE UNANIMOUS MOHAWK

14  DECISION IN THE SUPREME COURT SPEAKS OF.  THE ISSUE IN THAT

15  CASE WAS WHETHER YOU COULD TAKE A COLLATERAL APPEAL FROM A

16  RULING ABOUT THE DISCLOSURE OF PRIVILEGED DOCUMENTS.  AND

17  EVERY MEMBER OF THE SUPREME COURT SAYS YOU CAN'T DO A

18  COLLATERAL APPEAL, BUT YOU CAN SEEK A PROTECTIVE ORDER TO

19  GUARD AGAINST THE SPILL-OVER EFFECTS OF CONTESTED PRIVILEGE

20  RULINGS.  AND, SO, YOU COULDN'T HAVE A MORE DIRECT RULING

21  FROM THE HIGHEST AUTHORITY.

22         NOW, WHAT'S THE SPILL-OVER EFFECT.  THE SPILL-OVER

23  EFFECT HERE IS DC COMICS HAS WHATEVER NON-PRIVILEGED MATERIAL

24  IS DISCUSSED IN THOSE -- IN THAT TIMELINE.  SO, THE ONLY

25  INCREMENTAL BENEFIT OF THE TIMELINE IS THROUGH ITS DISCLOSURE

20

1    OF PRIVILEGED INFORMATION.

2            AND IT'S CLEAR THAT IT SAYS REPEATEDLY, MR. MARKS,

3    AN ATTORNEY, TELLS THE SIEGELS THIS.  MR. TOBEROFF TELLS THE

4    SIEGELS THAT.  THE SIEGELS TELL THEIR LAWYERS THIS.

5            SO, IT'S RIDDLED WITH PRIVILEGED INFORMATION.  AND

6    TO THE EXTENT IT DEALS WITH ANYTHING ELSE, IT'S ALL IN THIS

7    TWISTED SPIN OF THIS ATTORNEY WHO BREACHED REALLY THE MOST

8    FUNDAMENTAL ETHICAL OBLIGATIONS THAT HE HAD WHEN HE WENT TO

9    WORK IN MR. TOBEROFF'S FIRM.  SO, HE HAS AN OBLIGATION UNDER

10   CALIFORNIA RULE OF PROFESSIONAL CONDUCT 3-100 NOT TO DISCLOSE

11   CONFIDENTIAL INFORMATION.

12           AND AN ATTORNEY IS NOT ALLOWED TO BE A

13   WHISTLEBLOWER, YOUR HONOR.  THE ONLY EXCEPTION TO DISCLOSING

14   CONFIDENTIAL INFORMATION IS IF THE LAWYER BELIEVES THAT

15   SOMEONE'S GOING TO BE KILLED IF HE DOESN'T DISCLOSE IT, OR IF

16   SUBSTANTIAL BODILY HARM IS GOING TO RESULT.  AND THAT'S NOT

17   THE CASE HERE.

18           AND HE ALSO HAD AN OBLIGATION UNDER CALIFORNIA RULE

19   3-310 TO BE A ZEALOUS ADVOCATE FOR HIS CLIENT AND NOT TO

20   REPRESENT ADVERSE INTERESTS, WHICH IS EXACTLY THE OPPOSITE OF

21   WHAT HE DID IN CREATING THIS TIMELINE AND DROPPING IT ON

22   WARNER'S DOORSTEPS.

23           AND THE ISSUE OF THE TIMELINE, YOUR HONOR, IT'S

24   VERY SEPARATE FROM ANYTHING THAT WAS BEFORE THIS COURT WHEN

25   IT MADE ITS APRIL 30TH, 2007 DETERMINATION.  AND IF DC HAD

21

1    SOUGHT THE TIMELINE IN THAT MOTION, THEN, ALL OF THESE ISSUES

2    WOULD HAVE BEEN BRIEFED AT THAT TIME.

3         AND IT'S THEIR MOTION, WARNER'S MOTION AT THE TIME

4    THAT KIND OF SET THE PARAMETERS FOR WHAT WOULD BE BRIEFED,

5    WHAT WOULD BE BEFORE YOUR HONOR, AND WHAT WOULD BE DECIDED.

6         SO, WHEN WE ASKED -- SO, THE ISSUES THAT WOULD HAVE

7    BEEN ADDRESSED WOULD HAVE BEEN DID THE SIEGELS HAVE AN

8    OBLIGATION TO LOG THE DOCUMENTS AT THE TIME.

9         WELL, NO, THEY DIDN'T BECAUSE IT WAS NEVER THEIR

10   DOCUMENT.  THEY NEVER EVEN SAW IT UNTIL THE COMPLAINT WAS

11   FILED.

12        DID MR. TOBEROFF HAVE AN OBLIGATION TO LOG IT PRIOR

13   TO APRIL 2007.  NO, HE DIDN'T BECAUSE HE HAD OBJECTED.  AND

14   THERE WAS NO OBLIGATION FOR HIM TO DO ANYTHING OTHER THAN

15   OBJECT TO THE SUBPOENA THAT WARNER HAD SERVED ON HIM IN AN

16   EFFORT TO EXPLOIT THIS THEFT.

17        AND THE COURT WOULD HAVE HAD TO DEAL WITH, YOU

18   KNOW, THE SUBSTANTIAL ISSUES OF THE PREJUDICE TO THE

19   INTEGRITY OF THE JUDICIAL PROCESS BY WHAT THIS LAWYER HAD

20   DONE IN DISCLOSING THE DOCUMENT.

21        SO, THAT WOULDN'T HAVE BEEN ENOUGH TO JUST SAY,

22   WELL, IS IT PRIVILEGED OR IS IT NOT PRIVILEGED BECAUSE IT'S A

23   SPECIAL DOCUMENT THAT DIDN'T EXIST BUT FOR THIS VERY SERIOUS

24   ETHICAL BREACH.

25        IT WASN'T LIKE THE CASE OF, WELL, THESE DOCUMENTS

22

1    ARE OUT THERE ANYWAY.  AND SHOULD THEY HAVE BEEN DISCLOSED OR

2    SHOULD THEY NOT HAVE BEEN DISCLOSED.  IT WAS SORT OF A SUI

3    GENERIS CATEGORY.

4              SO, WHEN DC SAYS, WELL, YES, IT WAS BEFORE THE

5    COURT IN APRIL OF 2007, WHAT IT POINTS TO IS MS. SETO'S

6    DECLARATION AT PAGES 103 AND 104.  BUT WHEN YOU LOOK AT THOSE

7    PAGES, THEY TALK ABOUT DISCLOSING THE WHISTLEBLOWER

8    DOCUMENTS.

9              AND WE GO THROUGH THIS IN SUBSTANTIAL DETAIL IN THE

10   BRIEF, BUT WHAT THE COURT DID AT THE HEARING WAS, YOU KNOW,

11   TRY TO TAKE THIS NEUTRAL TERM AND TURN WHISTLEBLOWER

12   DOCUMENTS, WHICH IS WHAT WARNER WAS USING, AND STOLEN

13   DOCUMENTS, WHICH IS WHAT MR. TOBEROFF WAS ACCURATELY USING,

14   AND SAY I'M GOING TO USE A NEUTRAL TERM AND USED THE TERM

15   "ESCROW DOCUMENTS."

16             SO, WHAT WARNER UNDERSTOOD AND WHAT THE SIEGELS AND

17   THEIR COUNSEL UNDERSTOOD WAS THAT THE MOTION CONCERNED THE

18   STOLEN DOCUMENTS.  AND, SO, THAT'S WHY THERE WAS NO BRIEFING

19   AT THE TIME ABOUT THIS VERY UNIQUE DOCUMENT.

20             ON PAGE A HUNDRED AND -- SO, 104 OF THAT SETO

21   DECLARATION IT SPECIFICALLY SAYS THEY'RE SEEKING AN ORDER AS

22   TO THE WHISTLEBLOWER DOCUMENTS.

23             AND, THEN, PAGE 108, LINES 10 TO 11, THEY SAY WE'RE

24   DEFINING THE TERM "WHISTLEBLOWER DOCUMENTS" TO BE THE SAME

25   THING AS WHAT OUR DECLARANT MR. SMITH USES FOR THE TERM

23

1    "SUPERMAN DOCUMENTS."

2          AND THAT DECLARATION, LIKE ALL OF THE BRIEFING AT

3    THE TIME, DISTINGUISHED BETWEEN THE COVER LETTER, WHICH WAS

4    THE TIMELINE, AND THE UNDERLYING DOCUMENTS.  AND, SO, THAT'S

5    HOW IT WAS BRIEFED.

6          THERE ARE MANY -- I WENT THROUGH AND LOOKED AT THE

7    RECORD, AND IT WAS MR. TOBEROFF WHO MADE CONSISTENT

8    STATEMENTS WITH THIS THROUGHOUT THE ENTIRE PROCEEDINGS.

9          SO, THERE WAS THE -- HE DID IT IN THE MARCH 3RD,

10   2007 DECLARATION AT PARAGRAPH 25 AS WELL AS PARAGRAPHS 22 AND

11   23.

12          HE DID IT IN THE MARCH 26TH JOINT STIPULATION.  FOR

13   EXAMPLE, ON PAGE 2 WHERE HE TALKS ABOUT THE MOTION BEING

14   ABOUT THE STOLEN DOCUMENTS.

15          AGAIN, ON MAY 21ST, BOTH IN HIS COVER LETTER AND IN

16   HIS DECLARATION THAT HE SUBMITTED ACCORDING TO THE COURT'S

17   ORDER, HE SAYS, I WENT THROUGH AND CATALOGUED THE STOLEN

18   DOCUMENTS.

19          AGAIN, IN SEPTEMBER, ON SEPTEMBER 17TH AND

20   SEPTEMBER 20TH OF 2007.

21          AND, THEN, AGAIN, IN MARCH OF 2009 WHEN DC MOVED

22   UNSUCCESSFULLY TO REOPEN DISCOVERY IN THE SETO ACTION.  HE

23   AGAIN BRIEFED THIS ISSUE CONSISTENTLY SAYING, YOU KNOW, WHAT

24   THE MOTION WAS CONCERNED WITH WAS THE STOLEN DOCUMENT.

25          AND THE SORT OF COUP DE --

24

1          THE COURT:  MS. BRILL --

2          MS. BRILL:  YES?

3          THE COURT:  -- FORGIVE ME, BUT I DID READ ALL THIS.

4          MS. BRILL:  OKAY.  THANK YOU.  THANK YOU, YOUR

5     HONOR.

6          THE ESCROW ATTORNEY -- AND I KNOW YOU SAW THIS IN

7     THE PAPERS.  THE ESCROW ATTORNEY WHO WAS HIRED BY WARNER

8     BROS. AGREED AND SAID THIS WAS NOT A MATTER THAT WAS

9     PREVIOUSLY LITIGATED.  SO, WE KNOW, AND DC DOESN'T EVEN

10    CONTEST, THAT WHEN AN ISSUE IS NOT BEFORE A COURT, THE LAW OF

11    THE CASE DOCTRINE DOESN'T APPLY.

12          AND, SO, THE ESSENCE OF JUDGE LARSON'S RULING LATER

13    ON IN SEPTEMBER 2008, A YEAR -- MORE THAN A YEAR AFTER THE

14    FACT WAS POINTING TO SOME OUT-OF-CONTEXT LANGUAGE, WAS LAW OF

15    THE CASE, THIS IS ALREADY DONE.  AND THAT ISSUE HAS TO GET

16    ULTIMATELY DECIDED BY THE NINTH CIRCUIT.

17          SO --

18          THE COURT:  BUT YOU DO AGREE JUDGE LARSON DECIDED

19    IT?

20          MS. BRILL:  JUDGE LARSON -- YES, JUDGE LARSON --

21    JUDGE LARSON APPLIED THE LAW OF THE CASE DOCTRINE AND SAID

22    THE TOBEROFF TIMELINE HAD TO BE DISCLOSED.

23          AND AT THAT POINT WARNER MOVED TO REOPEN DISCOVERY.

24    MR. TOBEROFF ON BEHALF OF THE SIEGELS SUBMITTED SUBSTANTIAL

25    BRIEFING AFTER THAT AND OPPOSED REOPENING DISCOVERY.  AND

25

1   JUDGE LARSON RULED DISCOVERY IS CLOSED.

2          SO, TO THE EXTENT THERE WAS ANY SPILL-OVER EFFECT

3   IN THAT ACTION IT HAD BEEN TAKEN CARE OF.  RIGHT.  THERE

4   WASN'T GOING TO BE ANY DISCOVERY ON THE TIMELINE.  AND IT

5   COULDN'T HAVE BEEN -- YOU KNOW, IT COULDN'T HAVE BEEN USED IN

6   THE ACTUAL TRIAL BECAUSE IT'S TOTALLY INADMISSIBLE.  SO,

7   THERE WAS NO NEED -- THERE WAS NO NEED TO DO ANYTHING ELSE.

8   YOU DON'T HAVE TO GO AND THEN LITIGATE SOME HYPOTHETICAL

9   QUESTION OF WHAT MIGHT BE DONE WITH IT AND SOME

10  UNCONTEMPLATED ACTION IN THE FUTURE.

11         SO, THEN, AS SOON AS WE GOT TO THIS CASE, IN THE

12  VERY FIRST MEET AND CONFER IN JULY DC SAID THEY WANT TO TAKE

13  THESE DEPOSITIONS AND GO PARAGRAPH BY PARAGRAPH THROUGH THE

14  DOCUMENT WITH THE WITNESSES.  AND WE SAID, WELL, WE'RE GOING

15  TO MOVE FOR A PROTECTIVE ORDER BECAUSE WE DON'T THINK THAT'S

16  APPROPRIATE.

17         MR. PETROCELLI SENT A LETTER -- IT'S EXHIBIT 36 TO

18  MS. COHEN DECLARATION -- SAID, OH, NO, THAT'S PREMATURE.  YOU

19  CAN'T MOVE FOR A PROTECTIVE ORDER YET.  THAT WOULD BE TOO

20  EARLY BECAUSE WE HAVEN'T HAD OUR RULE 26 CONFERENCE.

21         SO, WE WERE TRYING TO MOVE FORWARD AS SOON AS --

22  YOU KNOW, AS SOON AS THE ISSUE CAME UP IN THIS CASE TO GET IT

23  RESOLVED AND GET IT BEFORE THE COURT.

24         THE ONE FURTHER ISSUE, YOUR HONOR, IS THE KIRSHNER

25  CASE FROM THE NINTH CIRCUIT THAT DC RELIES ON.  THE KIRSHNER

26

1    CASE IS ONLY ABOUT RULE 26 OF THE FEDERAL RULES OF CIVIL

2    PROCEDURE.  AND DC ACKNOWLEDGES THAT ON PAGE 56 OF THE JOINT

3    STIPULATION THAT WE'VE MOVED FOR A PROTECTIVE ORDER BOTH

4    UNDER RULE 26 AND PURSUANT TO THE COURT'S INHERENT AUTHORITY.

5         ALL OF THE CASES DEALING WITH THE COURT'S INHERENT

6    AUTHORITY AFFIRM THAT KIRSHNER DOESN'T LIMIT A COURT'S

7    INHERENT AUTHORITY TO CONTROL THE PROCEEDINGS BEFORE IT.  AND

8    WE CITED THE SMITH CASE FROM THE SOUTHERN DISTRICT OF

9    FLORIDA, THE LAHR CASE FROM THE NORTHERN DISTRICT OF TEXAS,

10   THE COMCO CASE FROM THIS COURT, BURT HILL FROM THE WESTERN

11   DISTRICT OF PENNSYLVANIA.

12        SO, ALL OF THE COURTS THAT LOOKED AT, YOU KNOW,

13   WHAT THE EFFECT OF KIRSHNER IS, SAY THE COURT STILL HAS AN

14   INHERENT AUTHORITY, ESPECIALLY IN A CASE WHERE THE

15   ADMINISTRATION OF JUSTICE IS AT STAKE AND THERE'S BEEN SOME

16   SERIOUS IMPROPRIETY WITH RESPECT TO THE DOCUMENTS IT'S BEING

17   ASKED TO CONTROL.

18        AND, SO, IF YOU TAKE DC'S POSITION TO ITS LOGICAL

19   CONCLUSION, WHAT THEY WOULD SAY IS, WELL, IF WE OBTAINED A

20   DOCUMENT IN DISCOVERY, THAT MEANS THAT THEIR TRIAL COUNSEL

21   CAN STAND AT A DEPOSITION, YOU KNOW, WITH A 92-YEAR-OLD

22   WITNESS, AN 89-YEAR-OLD WITNESS AND JUST REPEATEDLY ASK THEM

23   QUESTION AFTER QUESTION.  AND THIS COURT HAS NO AUTHORITY TO

24   CONTROL THAT DEPOSITION?  THAT JUST CAN'T BE RIGHT.  AND ALL

25   THESE CASES REJECT THAT POINT.

27

1       THE COURT:  I RATHER DOUBT MR. PETROCELLI IS GOING

2  TO STAND UP AND SAY I HAVE NO AUTHORITY TO CONTROL THAT, BUT

3  WE'LL SEE.

4       MS. BRILL:  WELL, HE DID SAY WHAT HIS GOAL IS --

5  DURING THE MEET AND CONFER WHAT HIS GOAL IS, YOUR HONOR, IS

6  TO TAKE THE DEPOSITION OF ALL OF THESE WITNESSES AND GO

7  THROUGH THE TIMELINE PARAGRAPH BY PARAGRAPH.  THAT'S EXACTLY

8  THE DISCOVERY TACTIC THAT THEY TOLD US ABOUT IN MID-JULY AND

9  WHEN WE IMMEDIATELY SAID WE'D BE MOVING FOR A PROTECTIVE

10  ORDER TO STOP IT, YOUR HONOR.

11       THE COURT:  ALL RIGHT.

12       MS. BRILL:  THANK YOU, YOUR HONOR.

13       THE COURT:  ALL RIGHT, MR. PETROCELLI.  YOU'RE ON.

14  OR ONE OF YOUR COLLEAGUES, WHOEVER IS GOING TO ARGUE.

15       MR. PETROCELLI:  YOUR HONOR, I'M GOING TO ADDRESS

16  THE MOTIONS.  IT MAY MAKE SENSE UNLESS YOUR HONOR HAS A

17  PREFERENCE IF I JUST PICKED UP WHERE MS. --

18       THE COURT:  HOWEVER YOU WANT TO ARGUE.

19       MR. PETROCELLI:  OKAY.

20       THE COURT:  IT'S UP TO YOU.

21       MR. PETROCELLI:  THANK YOU.

22       THE COURT:  I WOULD ASK YOU NOT -- I REALLY HAVE

23  READ THIS STUFF, SO.

24       MR. PETROCELLI:  I'M INCLINED TO SIT DOWN, BUT.

25       TO SOME DEGREE EVERYTHING I HAVE TO SAY HAS BEEN

28

1  COVERED IN THE PAPERS, BUT LET ME JUST SEE IF I CAN FOCUS A

2  BIT.

3          FIRST OF ALL, YOUR HONOR, THE ORDER THAT'S SOUGHT

4  IN THE TIMELINE MOTION IS NOT A LIMITED ORDER.  IT'S A BROAD

5  SWEEPING ORDER THAT WOULD AMOUNT TO A BLANKET STAY ON THE

6  LION SHARE OF THE FACTS IN THIS CASE, INCLUDING FACTS

7  DIRECTLY RELEVANT TO THE FEDERAL CLAIMS AS WELL AS THE STATE

8  CLAIMS.

9          IF YOU LOOK AT PAGE 1 AND PAGE 39 OF THEIR PORTION

10 OF THE JOINT STIP THEY'RE SEEKING TO PROHIBIT ALL DISCOVERY

11 CONCERNING THE DOCUMENT, ALL DISCOVERY RELATING TO THE

12 DOCUMENT.

13         THE DOCUMENT CONSISTS OF NUMEROUS PAGES CHRONICLING

14 NUMEROUS EVENTS.  AND TO ASK FOR AN ORDER BARRING DISCOVERY

15 RELATING TO THE DOCUMENT IS INCOMPREHENSIBLE.

16         AND I DON'T THINK THE COURT COULD ISSUE SUCH AN

17 ORDER.  IT WOULD NOT BE CAPABLE OF ENFORCEMENT.  I WOULDN'T

18 KNOW WHAT IT MEANT.  AND I THINK WHAT IT'S TRANSLATED TO MEAN

19 --

20         THE COURT:  UNLESS WHAT IT MEANS IS A STAY OF ALL

21 DISCOVERY.

22         MR. PETROCELLI:  PRECISELY.  THAT CLEARLY IS WHAT

23 IT MIGHT ENTAIL.  BECAUSE IN OUR VIEW TO BAR ALL DISCOVERY

24 RELATED TO THAT DOCUMENT WOULD ESSENTIALLY ENTAIL A STAY OF

25 ALL DISCOVERY.

29

1          THAT'S NUMBER ONE.

2          NUMBER TWO, IT IS OUR VIEW THAT THE COURT LACKS THE

3     AUTHORITY TO ISSUE THIS PROTECTIVE ORDER UNDER RULE 26(C).

4     AND THE KIRSHNER CASE IS RIGHT ON POINT IN THAT REGARD, YOUR

5     HONOR.

6          I PICKED UP THE WRONG FILE.

7          THE FACTS ARE IDENTICAL THERE, WHERE THE PARTY

8     OBTAINED DISCOVERY IN THE OTHER CASE AND SOUGHT TO USE IT IN

9     THIS CASE, AND A MOTION FOR A PROTECTIVE ORDER WAS SOUGHT.

10          AND THE COURT MADE CLEAR THAT THE RULE 26 WAS NOT

11     DESIGNED TO REGULATE THE USE OF INFORMATION THAT A PARTY

12     LAWFULLY ACQUIRED IN ANOTHER CASE.  HERE, THE DOCUMENT WAS

13     ORDERED TO BE PRODUCED TO US.

14          THE SECOND ARGUMENT IS THE INHERENT AUTHORITY

15     ARGUMENT.  AND I'M NOT HERE TO SAY THAT THE COURT DOESN'T

16     HAVE INHERENT AUTHORITY TO REGULATE DISCOVERY IN THIS CASE.

17          HOWEVER, I WILL POINT OUT -- AND I THINK THIS IS

18     CLEAR IN PARTICULAR FROM JUDGE BLOCK'S DECISION IN THE COMCO

19     CASE.  THERE'S BEEN NO CASE WHERE THE COURT HAS EXERCISED ITS

20     INHERENT AUTHORITY TO BAR USE OF A DOCUMENT OR INFORMATION OR

21     EVIDENCE PERMISSIBLY OBTAINED OUTSIDE THE DISCOVERY PROCESS

22     -- WHETHER IT'S OUTSIDE THE DISCOVERY PROCESS IN THE CASE AT

23     HAND AS WAS THE SITUATION IN COMCO WHERE THE IRS CIRCUMVENTED

24     THE DISCOVERY PROCESS TO OBTAIN PRIVILEGED DOCUMENTS.  AND

25     JUDGE BLOCK SAID YOU HAVE TO GIVE THOSE DOCUMENTS BACK, AND

30

1    YOU CAN'T USE THEM;

2        OR IF IT'S DISCOVERY IMPERMISSIBLY OBTAINED IN

3    ANOTHER CASE.  IMPERMISSIBLY BECAUSE YOU STOLE THE DOCUMENT

4    OR, YOU, THE PROPONENT OF THE DOCUMENT, DID SOMETHING WRONG.

5    IN OTHER WORDS, THERE'S NEVER BEEN A CASE TO OUR KNOWLEDGE,

6    AND NONE CITED BY THE DEFENDANTS, WHERE THE COURT EXERCISED

7    ITS INHERENT AUTHORITY TO BAR USE OF INFORMATION THAT WAS

8    LAWFULLY OBTAINED.

9        AND INDEED THE EXERCISE OF SUCH AUTHORITY IN THAT

10   CIRCUMSTANCE WOULD BE -- WOULD EVISCERATE THE RULE OF

11   KIRSHNER, THAT THE COURT LACKS POWER UNDER RULE 26(C) TO DO

12   PRECISELY THAT.  ALL THE CASES DEALING WITH INHERENT

13   AUTHORITY INVOLVE INAPPROPRIATE WRONGFUL CONDUCT THAT THE

14   COURT IS EFFECTIVELY SANCTIONING BY ISSUING AN APPROPRIATE

15   PROTECTIVE ORDER.

16       THE SECOND MAJOR POINT THAT I WANT TO MAKE, YOUR

17   HONOR, IS THAT EVEN IF YOU'RE -- UNDER YOUR HONOR'S INHERENT

18   AUTHORITY WANTED TO CONSIDER THE ISSUE OF THE PROPRIETY OF

19   THIS DOCUMENT AND OUR BEING ABLE TO USE THIS DOCUMENT, THE

20   RESULT WOULD HAVE TO BE THE SAME AS JUDGE LARSON FOUND.

21       AND I AM NOT GOING TO GO THROUGH THE CHRONOLOGY,

22   BUT HE SPECIFICALLY REJECTED THE VERY ARGUMENTS MADE HERE AND

23   DID THEM ON A COUPLE OF OCCASIONS.  ONE IN THE LATE PART OF

24   2008 WHEN HE ISSUED HIS ORDER, WHEN MR. TOBEROFF MADE THE

25   IDENTICAL ARGUMENTS HERE ABOUT THE MISTAKEN CONFUSION

31

1    REGARDING WHAT ESCROW DOCUMENTS MEANT.  ALL THAT WAS LAID

2    OUT.

3            AND JUDGE LARSON RULED IN A COURT ORDER DATED

4    SEPTEMBER 26TH, 2008 THAT THE PLAINTIFF'S POSITIONS --

5    PLAINTIFF'S NEWLY MINTED ASSERTIONS OF PRIVILEGE ARE NOT WELL

6    TAKEN.

7            AND WHEN THE PARTIES SOUGHT RECONSIDERATION OF

8    CERTAIN PARTS OF THAT ORDER MR. TOBEROFF DID NOT EVEN SEEK

9    RECONSIDERATION OF THAT PART OF IT AND NEVER SOUGHT TO

10   RECONSIDER THAT PART OF IT UNTIL MUCH LATER WHEN THE DC

11   COMICS DEFENDANTS SOUGHT TO USE THE DOCUMENT TO FILE A MOTION

12   TO REOPEN DISCOVERY.  MR. TOBEROFF CAME BACK WITH A SLEW OF

13   YET ADDITIONAL ARGUMENTS SAYING HE HAD ENCOUNTERED YET NEW

14   EVIDENCE AND ASKED SPECIFICALLY IN HIS PORTION OF THE JOINT

15   STIP FOR THE JUDGE TO PRECLUDE THE USE OF THE TIMELINE IN THE

16   SIEGEL CASE AND TO RETURN IT.

17           AND THE JUDGE DENIED THE MOTION IN ITS ENTIRETY,

18   THAT IS, IT AWARDED NO RELIEF TO DC COMICS IN ALLOWING DC TO

19   REOPEN DISCOVERY, WHICH HAD CLOSED.  AND IT DECLINED TO GRANT

20   THE RELIEF REQUESTED BY MR. TOBEROFF.

21           SO, THERE'S ABSOLUTELY NOTHING NEW HERE.  EVERY

22   ARGUMENT HAS ALREADY BEEN MADE.  EVERY ARGUMENT HAS ALREADY

23   BEEN PASSED ON.

24           THE SUPREME COURT CASE IN MOHAWK HAS NOTHING TO DO

25   WITH THIS SITUATION.  MOHAWK SIMPLY SAYS THAT IF THE COURT

32

1    ISSUES AN ORDER COMPELLING THE DISCLOSURE OF PRIVILEGED

2    INFORMATION, THAT CANNOT BE APPEALED UNDER THE COLLATERAL

3    ORDER DOCTRINE UNDER SECTION 1291 OF THE JUDICIAL CODE

4    BECAUSE THE LITIGANT IN BALANCING EVERY AND ALL THE INTERESTS

5    HAS OTHER OPPORTUNITIES, LIKE SEEKING A 1292 CERTIFICATION,

6    WHICH WAS NOT DONE; SEEKING MOTION FOR RECONSIDERATION, WHICH

7    WAS ONLY DONE BELATEDLY BUT DENIED; SEEKING A WRIT OF

8    MANDAMUS.  THAT DID NOT OCCUR.

9         AND, THEN, THERE'S A REFERENCE ABOUT THE

10   AVAILABILITY OF PROTECTIVE ORDERS IN APPROPRIATE CASES TO

11   GUARD AGAINST SPILL-OVER EFFECTS.  BUT THE COURT THERE

12   CERTAINLY WASN'T MANDATING THAT SUCH A PROTECTIVE ORDER WAS

13   ISSUED -- SHOULD ISSUE, BUT SIMPLY COMMENTING THAT PROTECTIVE

14   ORDERS ARE GENERALLY AVAILABLE.

15        AND, INDEED, THE COURT THERE IN TALKING ABOUT

16   SPILL-OVER EFFECTS WASN'T TALKING ABOUT THE USE.  SIMPLY MORE

17   LIKELY GUARDING AGAINST UNDUE PRIVACY AND CONFIDENTIALITY

18   LEAKAGES.

19        SO, THERE'S NOTHING IN THE MOHAWK DECISION WHICH

20   WOULD COMPEL THIS COURT TO HAVE TO GRANT A MOTION FOR A

21   PROTECTIVE ORDER.  THAT WOULD BE A WHOLESALE REPUDIATION OF

22   THE NINTH CIRCUIT LAW IN KIRSHNER AND THE OTHER CASES THAT

23   WE'VE DISCUSSED.

24        FINALLY, YOUR HONOR, ON THIS POINT, THE PLAINTIFF

25   HAS MADE -- EXCUSE ME -- THE DEFENDANTS HAVE MADE NO SHOWING

33

1   THAT --

2        THE COURT:  IT'S HARD TO THINK OF YOURSELF AS A

3   PLAINTIFF; ISN'T IT, MR. PETROCELLI?

4        MR. PETROCELLI:  YOU KNOW, NOT OFTEN.  BUT I MUST

5   TELL YOU I KIND OF LIKE IT WHEN I DO GET TO STAND ON THE

6   OTHER SIDE.  YOU GET TO BE CLOSER TO THE JURY FOR ONE THING.

7        BUT, YOUR HONOR, THERE'S NOTHING IN THIS MOTION

8   THAT ESTABLISHES THE PRIVILEGED NATURE OF THE INFORMATION IN

9   THE TIMELINE.  THE PLAINTIFFS HAVE THE BURDEN OF GOING

10  THROUGH AND IDENTIFYING EXACTLY WHAT'S PRIVILEGED AND

11  ESTABLISHING THE BASIS FOR THE PRIVILEGE.  THEY JUST ASSUME

12  IT'S PRIVILEGED -- EVEN THOUGH THERE'S BEEN A FINDING THAT

13  THE DOCUMENT -- ANY PRIVILEGE WAS WAIVED.

14        AND THERE'S NEVER BEEN A FINDING THAT THE MATERIAL

15  WAS PRIVILEGED.  AND IN HERE THEY HAD EVERY OPPORTUNITY TO GO

16  THROUGH THE TIMELINE AND IDENTIFY EVERYTHING THAT'S

17  PRIVILEGED.

18        AND, YOU KNOW, YOUR HONOR, IT'S ONE THING TO JUST

19  ASSUME THAT EVERYTHING IN THERE IS PRIVILEGED BECAUSE IT CAME

20  FROM AN ATTORNEY IN THE OFFICE WHOSE IDENTITY WE DON'T EVEN

21  KNOW AND IT HAS NOT EVEN BEEN DISCLOSED IN THIS MOTION.

22        THE COURT:  HAS THERE BEEN ANY LITIGATION ON THAT

23  PART OF IT?

24        MR. PETROCELLI:  NO, YOUR HONOR.  NO --

25        THE COURT:  ANY STATE BAR PROCEEDINGS?

34

1          MR. PETROCELLI:  NO, WE POINTED THAT OUT.  NOW, OF

2    COURSE, WE DON'T KNOW DEFINITIVELY, BUT WE POINTED TO THE

3    ABSENCE OF ANY EVIDENCE PROFFERED BY THE DEFENDANTS OF ANY

4    CRIMINAL COMPLAINTS FILED, ANY STATE BAR PROCEEDINGS, ANY

5    LAWSUITS AGAINST THE ATTORNEY.

6          BUT IF YOU GO THROUGH THE DOCUMENT, AND YOUR HONOR

7    HAS SEEN IT, IT PARADES THROUGH NUMEROUS FACTS AND EVENTS --

8          THE COURT:  WE DON'T NEED TO GO THROUGH THE

9    DOCUMENT HERE.

10          MR. PETROCELLI:  -- INCLUDING THIRD-PARTY

11    COMMUNICATIONS AND SO FORTH.

12          SO, I DON'T THINK THERE'S ANY BASIS WHATSOEVER TO

13    GRANT THE MOTION.  AND IT WOULD EFFECTIVELY AMOUNT TO A

14    COMPLETE STAY OF ALL DISCOVERY, RENDERING US UNABLE TO PROVE

15    THE CLAIMS IN OUR COMPLAINT, AND WHICH I SUGGEST IS THE

16    PURPOSE OF THAT MOTION.

17          NOW, LET ME TURN TO THE OTHER -- I'M GLAD YOUR

18    HONOR STOPPED ME BECAUSE I WOULD BARELY BE MAKING A DENT IN

19    THAT MATERIAL.

20          THE COURT:  AS I SAID, I HAVE READ ALL THIS.  AND

21    IT IS QUITE EXTENSIVE, SO.

22          MR. PETROCELLI:  YOUR HONOR, WE APOLOGIZE FOR THAT.

23    AND WE'LL TRY TO BE MINDFUL OF THE COURT'S CALENDAR AND THE

24    BURDENS ON THE COURT GOING FORWARD.

25          THE COURT:  THANK YOU.

35

1          MR. PETROCELLI:  ON THE MOTIONS TO INITIATE

2    DISCOVERY AND THE PARALLEL MOTION TO STAY THE DEPOSITIONS, IT

3    IS TRUE THAT SUBSEQUENT EVENTS HAVE OVERTAKEN SOME OF THE

4    ISSUES ON BOTH SIDES OF THESE MOTIONS.  FOR EXAMPLE, ALTHOUGH

5    WE EXPERIENCED NOT INSUBSTANTIAL DELAY IN GETTING THE RULE 26

6    CONFERENCE, THAT'S NOW BEHIND US.  AND WE SERVED THE FOUR

7    DEPOSITION NOTICES.  JEAN PEAVY IS NOW A PARTY TO THE CASE.

8          THE COURT:  YES.

9          MR. PETROCELLI: -- NOT A THIRD PARTY.  SO, THAT'S

10   BEHIND US.

11         AND I AGREE WITH MR. KENDALL THAT THIS REALLY BOILS

12   DOWN TO THE ISSUE OF WHETHER THEY'RE ENTITLED TO AN

13   INDEFINITE STAY OF DISCOVERY PENDING FURTHER PROCEEDINGS,

14   INCLUDING THEIR DISPOSITIVE MOTIONS.

15         AND I SAY INDEFINITE STAY TO BE CLEAR.  HE DID NOT.

16   HE SAID THREE WEEKS' STAY.

17         I WANT TO CLARIFY PERHAPS SOME CONFUSION ABOUT OUR

18   POSITION THAT PERHAPS I MAY HAVE SOWN OR THAT MAY HAVE

19   OCCURRED IN THE BRIEFING ON THIS ABOUT WHAT OUR PLANS ARE

20   WITH RESPECT TO THESE DEPOSITIONS.

21         WHEN THE PRIOR MOTION WAS SCHEDULED TO BE HEARD --

22   THE PRIOR MOTIONS TO DISMISS IN THE SLAP MOTION THAT HAD BEEN

23   FILED BACK IN JULY OR AUGUST THEY WERE SET TO BE HEARD ON

24   OCTOBER 18TH.  AND AS YOUR HONOR KNOWS, WE AMENDED.  THE

25   COURT MOOTED THOSE MOTIONS.  WE HAVE NOT EVEN RECEIVED THE

36

1    NEW MOTIONS.  SO, I DON'T EVEN HAVE, AND THE COURT DOESN'T

2    HAVE IN THIS RECORD, ANY OF THESE MOTIONS TO DISMISS OR A NEW

3    SLAP MOTION.

4            I'M ASSUMING FOR THE PURPOSES OF ARGUMENT AND WHAT

5    HAS BEEN TOLD TO ME, THAT THE MOTIONS WILL BE VERY MUCH ALONG

6    THE SAME LINES AS THE PRIOR MOTIONS.  BUT THEY HAVEN'T BEEN

7    FILED YET.  I'M TOLD THEY'LL BE FILED TODAY.

8            THE COURT:  THEY PROBABLY JUST COULDN'T LIFT

9    EVERYTHING.

10           MR. PETROCELLI:  BUT TO BE CLEAR, IF THEY'RE FILED

11   TODAY, OF COURSE, THERE'S NO IDEA WHEN THOSE MOTIONS WILL

12   EVEN BE HEARD LET ALONE DECIDED.  IN FACT, IN THE OPPOSITION

13   THAT THE DEFENDANTS FILED TO OUR EX PARTE APPLICATION TO BALL

14   ALL THIS UP AND HAVE IT HEARD ON THE 25TH OF OCTOBER, THEY

15   INDICATED THAT THEY MAY SEEK AN EXTENSION OF THE SCHEDULE,

16   BOTH TO PERMIT THEM MORE TIME TO REPLY AND TO PERMIT THE

17   COURT MORE TIME TO CONSIDER THE MOTIONS.

18           IF THEY FILE THOSE MOTIONS TODAY, WHICH IS THE LAST

19   DAY, THAT LEAVES DEFENDANT -- EXCUSE ME.  MADE THE MISTAKE

20   AGAIN -- THAT LEAVES OUR SIDE, THE PLAINTIFF, WITH THE

21   ABSOLUTE MINIMUM TIME TO RESPOND TO THOSE MOTIONS, SEVEN

22   DAYS.  AND THEY COULD HAVE FILED THEM EARLIER, BUT THEY

23   WAITED TILL TODAY APPARENTLY.  AND WE'LL GET THEM LATER ON

24   TODAY.  WE HAVE SEVEN DAYS.

25           NOW, WE MAY HAVE TO SEEK AN EXTENSION BECAUSE IF

37

1    THEY'RE ANYTHING LIKE THE LAST SET OF MOTIONS, THEY WERE 100

2    PAGES AND 1,000 EXHIBITS.  AND I WAS TOLD THAT THEY'RE ADDING

3    AN ADDITIONAL ARGUMENT OR TWO.  SO, WE MAY HAVE TO GO IN AND

4    GET AN EXTENSION OF THE SCHEDULE.  INDEED, THEY HAVE ALREADY

5    INDICATED THAT THEY ARE LIKELY TO DO THAT.

6         AND, SO, THE IDEA THAT THESE MOTIONS ARE ALL GOING

7    TO BE HEARD BY A JUDGE WITH AN EXTREMELY BUSY CALENDAR,

8    WORKING THROUGH A THICKET OF ALL THESE ISSUES ON OCTOBER 18

9    IS A PIPEDREAM.  IT'S NOT GOING TO HAPPEN, YOUR HONOR.  IN

10   ANY EVENT, THERE'S NO ASSURANCE THAT IT CAN HAPPEN.

11        SO, THIS IS NOT A REQUEST TO STAY DEPOSITIONS FOR

12   THREE WEEKS.  AND IF IT WERE, I WOULD STIPULATE TO THAT AND

13   HAVE ALL BUT STIPULATED TO THAT.

14        I INDICATED I WAS PREPARED TO PUT THESE DEPOSITIONS

15   OFF UNTIL THE END OF OCTOBER, EARLY NOVEMBER BECAUSE I WANTED

16   TO WORK OUT DOCUMENT ISSUES RELATED TO THESE WITNESSES.

17        WE HAVE YET TO RECEIVE THEIR RESPONSES TO THE

18   DOCUMENT REQUEST, BUT WE'RE TOLD THEY'RE NOT LIKELY TO

19   INCLUDE ANY DOCUMENTS.  AND, SO, I WAS HOPEFUL THAT PERHAPS I

20   COULD, YOU KNOW, DEAL WITH THE DOCUMENT ISSUES TO AVOID

21   HAVING TO SEEK MULTIPLE DEPOSITIONS OF THE WITNESSES AND TAKE

22   CARE OF THAT.

23        I HAVE NO CONFIDENCE I'M GOING TO BE ABLE TO DO

24   THAT BECAUSE LIKE ANYTHING ELSE, YOUR HONOR, EVEN IF I COULD

25   GET A MOTION IN FRONT OF YOUR HONOR FORTHWITH FOLLOWING MEET

38

1    AND CONFER, AND YOUR HONOR ISSUES A RULING, THERE MAY BE

2    APPEALS OF THAT RULING.  SO, THERE'S NO IDEA HOW LONG IT MAY

3    TAKE TO EVEN SORT OUT THE DOCUMENT ISSUES, LET ALONE HOW LONG

4    IT'S GOING TO TAKE TO DEAL WITH THEIR DISPOSITIVE MOTIONS.

5         ALL OF WHICH MEANS, YOUR HONOR, THAT I BELIEVE THAT

6    THIS MOTION FOR A PROTECTIVE ORDER CANNOT BE GRANTED ON SOME

7    PROMISE THAT THIS IS JUST A MODEST CONTINUANCE.  IT IS NOT.

8         AND THEY HAVE DECLINED TO AGREE TO CONTINUE THOSE

9    DEPOSITIONS TO A DATE CERTAIN AT THE END OF OCTOBER OR EARLY

10   NOVEMBER.  I HAVE MADE THAT PROPOSAL, AND THEY HAVE DECLINED.

11   THEY WANT TO KEEP THE SCHEDULE OPEN AND IN FLUX UNTIL THEY'VE

12   HAD A CHANCE TO RUN THE TABLE ON ALL OF THESE MOTIONS.

13        THEY HAVE SUGGESTED THAT I HAVE SOMEHOW CONCEDED

14   THAT ALL OF THIS DISCOVERY OUGHT TO AWAIT THE RESOLUTION OF

15   THEIR MOTIONS.  I HAVE NEVER CONCEDED SUCH A THING.

16        THE COURT:  I THINK WHAT THEY SAY YOU'VE CONCEDED

17   IS THAT YOU DON'T NEED TO DO THEM BY SEPTEMBER 30TH.

18        MR. PETROCELLI:  I DON'T EVEN KNOW IF I WOULD AGREE

19   WITH THAT.  I WOULD SAY THIS MUCH.  I'VE SAID TO THEM I WOULD

20   BE WILLING TO CONTINUE THEM, BUT THAT WAS CONTINGENT UPON MY

21   TRYING TO MAKE PROGRESS ON THE DOCUMENTS, YOUR HONOR.

22        THE COURT:  I UNDERSTAND.

23        MR. PETROCELLI:  OKAY.

24        AND WHO KNOWS WHAT THAT'S GOING TO ENTAIL BECAUSE

25   WE HAVEN'T GOTTEN THE RESPONSES.  WE HAVEN'T HAD THE MEET AND

39

1   CONFER AND SO FORTH.

2         I THINK THIS IS IMPORTANT, YOUR HONOR, BECAUSE I AM

3   AN EXPERIENCED PRACTITIONER AS ARE DEFENDANTS' COUNSEL. AND

4   I'M EXTREMELY SENSITIVE TO THE ISSUE OF HEALTH CONCERNS OF

5   SOME OF THESE WITNESSES. THERE'S NO HEALTH CONCERN WITH

6   RESPECT TO MARK PEARY AT ALL. AND I REALLY DON'T BELIEVE

7   THERE'S A LEGITIMATE HEALTH CONCERN WITH RESPECT TO ONE OF

8   THE -- THE THREE OTHER WITNESSES, THE YOUNGER OF THE THREE.

9         AND EVEN WITH RESPECT TO THE OTHER --

10         THE COURT: WELL, THERE'S THE HEALTH CONCERN.

11   WHETHER IT'S INCAPACITATING IS ANOTHER QUESTION.

12         MR. PETROCELLI: BETTER SAID, YOUR HONOR. WHETHER

13   IT RENDERS THEM UNABLE TO PARTICIPATE IN A DEPOSITION.

14         TWO OF THE THREE WITNESSES THAT THEY CLAIM WERE

15   SUBJECT TO THAT ARE PLAINTIFFS RIGHT NOW IN THE OTHER CASES.

16   PLAINTIFFS WHO HAVE YET TO GO TO TRIAL ON ISSUES THAT REMAIN

17   IN BOTH CASES. WE HAVE THE SUPERBOY CASE AND THE SUPERMAN

18   CASE.

19         THE COURT: OF COURSE THEY WERE YOUNGER WHEN THEY

20   STARTED.

21         MR. PETROCELLI: YES, TRUE. BUT NONETHELESS

22   THEY'RE PLAINTIFFS SEEKING MANY, MANY, MANY, MANY MILLIONS OF

23   DOLLARS. AND THEY NEED TO PARTICIPATE IN THE LITIGATION AS

24   PART OF THAT PROCESS.

25         AND HERE, THIS CLAIM IS ALSO NECESSITATED -- THE

40

1    LAWSUIT AGAINST THE SHUSTER FAMILY IS NECESSITATED BY THEIR

2    CLAIM FOR MANY, MANY, MANY MILLIONS OF DOLLARS.  SO, THAT'S

3    JUST PART OF THE PROCESS THAT WHEN YOU WANT TO SEEK THAT KIND

4    OF MONEY FROM SOMEONE WHO DOESN'T THINK YOU'RE ENTITLED TO

5    IT.

6              IN ANY EVENT, WE'RE SENSITIVE TO THE HEALTH ISSUE,

7    WHICH IS WHY I SOUGHT TO DEAL WITH THE DOCUMENT ISSUES ON AN

8    EXPEDITED BASIS AND TRY TO GET ALL THAT WRAPPED UP AND HAVE

9    THE DEPOSITIONS 30 DAYS AGO.

10             BUT I DON'T BELIEVE IT'S THE DEFENDANTS' OBJECTIVE

11   AT ALL, AND I THINK THEY'RE QUITE CANDID ABOUT IT, TO NOT

12   ALLOW THOSE DEPOSITIONS TO GO FORWARD 30 DAYS FROM NOW.

13             THAT'S NOT WHAT THIS IS ABOUT.  WE WOULD NEVER BE

14   IN FRONT OF THE COURT.  I WOULD NEVER HAVE ALLOWED THIS TO

15   DRAG ON LIKE THIS.

16             I'M IN THIS POSITION, YOUR HONOR, BECAUSE IF THE

17   DEFENDANTS' MOTION WERE GRANTED, THERE WOULD BE NO DISCOVERY

18   IN THIS CASE.  PERIOD.  AND BOTH MOTIONS SEEK THAT VERY

19   OBJECT.  AND WHAT THEY'RE -- WHILE THEY'RE TRYING TO LAUNCH

20   DEFINITIVE, DISPOSITIVE MOTIONS THAT RAISE NUMEROUS FACT

21   ISSUES AND AT THE SAME TIME SUGGEST THAT WE CAN'T TAKE ANY

22   DISCOVERY.

23             SO, IF MULTIPLE DEPOSITIONS ARE REQUIRED DOWN THE

24   ROAD, AND WE'RE NOT THERE NOW, THAT'S ALSO NOT OUR DOING,

25   YOUR HONOR.  THE DEFENDANTS COULD MOOT ALL THESE ISSUES BY

41

1   SIMPLY PUTTING THE WITNESSES UP FOR DEPOSITION.  AND WE COULD

2   TAKE ALL THE DEPOSITIONS NOW.

3           AND WHAT'S THE PREJUDICE TO THEM FOR THAT.  BECAUSE

4   THERE MAY BE INQUIRY INTO SOME ISSUES THAT END UP PERHAPS

5   GETTING DISMISSED DOWN THE ROAD.  THERE'S NO -- IF YOU

6   BALANCE THE INTERESTS, WE COULD LOSE PERMANENTLY THE ABILITY

7   TO TAKE THESE DEPOSITIONS.  THEIR SERIOUS HEALTH WEIGHS IN

8   FAVOR OF ALLOWING THE DEPOSITIONS BECAUSE THEY COULD DIE, OR

9   THEIR HEALTH COULD WORSEN.  AND THEY COULD BECOME SO

10  INCAPACITATED THAT WE COULD NEVER TAKE THEIR DEPOSITIONS.

11  SO, THAT'S AN ARGUMENT THAT I SUGGEST FAVORS TAKING OF THE

12  DEPOSITIONS.

13          AND THERE'S BEEN NO ATTEMPT AND NO PROOF IN THIS

14  RECORD THAT THEY'RE WILLING TO MAKE THEM AVAILABLE.  THEY SAY

15  IF THEY ARE MADE AVAILABLE IF WE GO FORWARD, THEY'RE GOING TO

16  INSTRUCT THEM NOT TO ANSWER.

17          WELL, THAT'S THEIR TACTICAL CHOICE TO INSTRUCT THEM

18  NOT TO ANSWER.  IF THEY'RE SO CONCERNED ABOUT THEIR MEDICAL

19  CONDITION, THEY SHOULDN'T INSTRUCT THEM NOT TO ANSWER,

20  ESPECIALLY WHEN THE INSTRUCTIONS ARE BASED ON THE SAME

21  GROUNDS THAT ARE IN THIS MOTION, THAT THEY SOMEHOW HAVE AN

22  ENTITLEMENT TO NOT ALLOW US TO GET INTO DISCOVERY BECAUSE

23  THEY HAVE A RULE 12 MOTION OR A SLAP MOTION.

24          AND WITHOUT REPEATING WHAT'S IN OUR PAPERS ON THOSE

25  ISSUES, THEY HAVE THE HEAVY BURDEN IN THE RULE 12 CONTEXT.

42

1   THAT'S THE SKELLERUP CASE AND THE GREY CASE IN ORDER TO STAY

2   DISCOVERY JUST ON THE COUNT YOU MIGHT WIN A RULE 12 MOTION.

3          AND THE COURTS SAY THAT IF THE MOTIONS -- IF IT'S

4   NOT -- THE GRAY CASE HAS SOME GOOD LANGUAGE IN IT, YOUR

5   HONOR.  IT SAYS IF IT'S NOT IMMEDIATELY APPARENT, OR THERE'S

6   A CLEAR AND IMMEDIATE POSSIBILITY THAT THE MOTIONS ARE GOING

7   TO BE GRANTED IN THEIR ENTIRETY, THEN, NO STAY IS PERMITTED.

8          AND THE COURT OBVIOUSLY CAN'T -- YOUR HONOR CAN'T

9   GO IN AND MAKE PRELIMINARY FINDINGS, BUT IT'S COMMON SENSE

10  THAT YOU CAN TAKE A LOOK AT THE MOTIONS AND SEE IF IT'S

11  INSTANTLY SELF-EVIDENT THAT THEY'RE GOING TO WIN IN THEIR

12  ENTIRETY --

13         THE COURT:  THIS IS THE SO-CALLED "TAKE A PEEK."

14         MR. PETROCELLI:  TO TAKE A PEEK.

15         AND, YOU KNOW, THERE ARE SOME --

16         THE COURT:  WHICH ALWAYS AMUSES ME.  WHAT IF YOUR

17  PEEK IS WRONG.

18         MR. PETROCELLI:  AND THERE ARE SOME CASES, YOUR

19  HONOR, WHERE I SUPPOSE YOU CAN TAKE A NEAR PERFECT PEEK.  BUT

20  THIS CASE COMES NOWHERE REMOTELY CLOSE TO THAT SITUATION.

21         THE GRAY CASE HAS SOME LANGUAGE THERE THAT IT HAS

22  TO BE UTTERLY FRIVOLOUS.  THE GRAY CASE IS A NORTHERN

23  DISTRICT CALIFORNIA CASE.  SKELLERUP IS CENTRAL DISTRICT

24  CALIFORNIA CASE.

25         AND IF YOU LOOK AT THE CLAIMS THEY'VE MADE -- AND

43

1    WE'VE BRIEFED THIS AD NAUSEAM -- THEY RAISE A VARIETY OF

2    FACTUAL ISSUES.  AND IT IS WRONG TO SUGGEST THAT THIS HAS

3    ANYTHING TO DO WITH JUDGE LARSON'S RULINGS IN THE SIEGEL CASE

4    ON THE SIEGEL TERMINATION ISSUES.

5            AMONG OTHER THINGS, MR. TOBEROFF REPRESENTED TO THE

6    COURT IN NEW MEXICO THAT THE ISSUES WERE COMPLETELY

7    DIFFERENT, THAT IS, THE SIEGEL AND THE SHUSTER TERMINATIONS.

8            THE COURT:  YES.  I SAW THAT YOU PUT THAT

9    TRANSCRIPT IN.

10            MR. PETROCELLI:  AND, ALSO, JUDGE LARSON

11    SPECIFICALLY FOUND THAT IT'S ANYTHING BUT A FORE- -- BY NO

12    MEANS A FOREGONE CONCLUSION THAT THE SHUSTERS WILL BE

13    SUCCESSFUL IN TERMINATING.

14            AND THERE'S A GOOD REASON FOR THAT, YOUR HONOR,

15    BECAUSE THE ISSUES ARE DISTINCTLY DIFFERENT.  WE HAVE IN THE

16    CASE OF THE SHUSTERS, AS ALLEGED IN OUR COMPLAINT, A PIVOTAL

17    AGREEMENT ENTERED INTO IN 1992 THAT WE CONTEND FORECLOSES

18    THEIR ABILITY TO TERMINATE.

19            NO SUCH ISSUE EVER WAS IN THE SIEGEL CASE.  THAT'S

20    GOING TO BE A FRONT AND CENTER ISSUE, AMONG OTHERS, IN THIS

21    CASE.  AND THERE'S BEEN NO DISCOVERY ON THAT ISSUE

22    WHATSOEVER.

23            AND THE DEFENDANTS ARE SUGGESTING THAT BECAUSE THEY

24    MIGHT WIN A MOTION NEXT WEEK, A MOTION THAT WE CONTEND IS

25    WITHOUT MERIT, BUT JUDGE WRIGHT WILL DECIDE THAT THEY COULD

44

1    GET A RULE 54(B) JUDGMENT ON PART OF A CLAIM.  THEY WANT A

2    JUDGMENT ON PART OF A DEC RELIEF CLAIM.

3         THE COURT:  I UNDERSTAND.

4         MR. PETROCELLI:  AND OUR POSITION IS THAT -- EVEN

5    IF THEY GET THAT, THAT'S NOT GOING TO FORECLOSE ANYTHING IN

6    THIS CASE.  AND IT'S NOT GOING TO SUGGEST A STAY IN THIS

7    CASE.  WE'RE TOLD ABOUT AN APPEAL OF AN ATTORNEY'S FEES

8    ISSUE.

9         I THINK ALL OF THESE PROMISES OF APPEALS, AND WE'VE

10   HEARD NUMEROUS SUCH PROMISES, ONLY UNDERSCORE THAT THE STAY

11   THAT THEY'RE SEEKING IS GLOBAL, COMPREHENSIVE AND INDEFINITE.

12   AND THAT THIS CASE CANNOT BE PUT ON HOLD UNTIL THE SIEGEL

13   CASE IS COMPLETELY LITIGATED THROUGH MORE TRIALS AND UP AND

14   DOWN THROUGH THE COURT OF APPEALS, WHICH IS REALLY WHAT'S

15   GOING ON HERE.

16        ON THE SLAP MOTION, YOUR HONOR, THE LAW IS CRYSTAL

17   CLEAR.  THE PARIS HILTON CASE, THE SONOMA CHEESE CASE, SLAP

18   DOES NOT APPLY TO ANY OF THE FEDERAL CLAIMS WE HAVE, AND WE

19   HAVE THREE SPECIFIC FEDERAL CLAIMS.

20        AND CONTRARY TO THE ARGUMENT, THOSE FEDERAL CLAIMS

21   IMPLICATE ALL THE SAME EVIDENCE AS THE STATE-BASED CLAIMS.

22   TAKE A LOOK AT THE THIRD CLAIM, WHICH SAYS THAT THE TEN-YEAR

23   PERIOD OF EXCLUSIVITY TO WHICH DC COMICS WAS ENTITLED AS THE

24   ORIGINAL GRANTEE UNDER THE COPYRIGHT LAWS, WAS INFRINGED, WAS

25   VIOLATED BY A SERIES OF COLLUSIVE AGREEMENTS.

45

1          THAT IS EXACTLY THE KIND OF INFORMATION THAT'S, FOR

2     EXAMPLE, SET FORTH IN THE TOBEROFF TIMELINE.  AND THAT RAISES

3     A HOST OF FACTUAL ISSUES THAT ENCOMPASS THE SAME ISSUES THAT

4     ARE IN THE STATE CLAIM.  A STATE -- THE STATE CLAIM -- THE

5     ANTI-SLAP MOTION DIRECTED TO THE STATE CLAIM CANNOT FORECLOSE

6     DISCOVERY ON THE FEDERAL CLAIMS EVEN IF IT'S THE SAME OR

7     OVERLAPPING DISCOVERY.

8          AND, SECONDLY, CONTRARY TO THE ATTEMPT TO MAKE NEW

9     LAW, ON THE METABOLITE CASE, THE ROGERS CASE, AND THE MOSER

10    CASE -- ROGERS IS A CENTRAL DISTRICT CALIFORNIA 1999, MOSER

11    IS SOUTHERN DISTRICT CALIFORNIA 2007, AND METABOLITE, OF

12    COURSE, IS THE NINTH CIRCUIT CASE.  ALL THESE CASES SET FORTH

13    VERY CLEARLY WHAT THE GROUND RULES ARE.  AND THEY SAY EVEN

14    WHEN THE ANTI-SLAP MOTION IS FILED WITH RESPECT TO THE

15    STATE-BASED CLAIMS -- FORGET THE FEDERAL CLAIMS BECAUSE THOSE

16    CAN'T BE IMPAIRED AT ALL BY ANY DISCOVERY STAY.  EVEN WITH

17    RESPECT TO THE STATE CLAIMS, THE OPPOSING PARTY, IN THAT CASE

18    THE PLAINTIFF, DOES NOT HAVE A BURDEN OF SHOWING GOOD CAUSE

19    BECAUSE TO DO SO WOULD COLLIDE WITH FEDERAL JURISPRUDENCE

20    UNDER RULE 56 AND WOULD VIOLATE THE SUPREMACY CLAUSE.

21          RATHER, WHAT THESE CASES SAY IS THAT WE SIMPLY HAVE

22    TO IDENTIFY THE TYPE OF DISCOVERY THAT WE NEED TO OPPOSE THE

23    MOTION.  AND WE'VE DONE THAT IN SPADES.

24          BUT, MOREOVER, IN THE ROGERS CASE, YOUR HONOR, THE

25    COURT MAKES CLEAR THAT WHERE THE -- IF THE DEFENDANT MAKES A

46

1  SLAP MOTION BASED ON THE PLAINTIFF'S LACK OF EVIDENCE,

2  THERE'S NO BASIS FOR A STAY.

3         AND THE SLAP MOTION HERE -- WELL, WE DON'T HAVE IT

4  YET.  ALL I HAVE IS THE PRIOR SLAP MOTION.  BUT PAGE 22 SAYS

5  THE FIFTH CLAIM HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

6  BECAUSE THE RECORD ESTABLISHES THAT TOBEROFF DID NOT CAUSE

7  THE SIEGELS TO END NEGOTIATIONS WITH DC.  AND DC CANNOT MEET

8  ITS EVIDENTIARY BURDEN ON THIS POINT.

9         THE MOTION EXPLICITLY RAISES THE INSUFFICIENCY OF

10  OUR PROOF AND, AT THE SAME TIME, THEY WANT TO ARGUE THAT

11  WE'RE NOT ENTITLED TO GET THAT PROOF.  AND THAT IS CONTRARY

12  TO NINTH CIRCUIT LAW AND THE LAW IN THE CENTRAL DISTRICT.

13         AND, SO, YOUR HONOR, WHAT I THINK SHOULD HAPPEN IS

14  I THINK THIS MOTION MUST BE DENIED.  AND I THINK WHAT WILL

15  THEN HAPPEN IS I WILL HAVE FOUR DEPOSITIONS UPCOMING AND

16  HOPEFULLY GET SOME DOCUMENT RESPONSES.

17         I WILL THEN HAVE TO MAKE A DECISION WHETHER I GO

18  FORWARD WITH ALL OF THOSE DEPOSITIONS OR SOME OF THOSE

19  DEPOSITIONS.  ESPECIALLY IF I'M NOT GOING TO HAVE ANY

20  DOCUMENTS IN THE NEAR FUTURE, I'M ENTITLED TO MAKE THAT

21  JUDGMENT.

22         AND IF THAT JUDGMENT HAS OTHER CONSEQUENCES AS THIS

23  LITIGATION UNFOLDS, THEN, THE PARTIES WILL BRING THAT OUT.

24         BUT THERE'S NO BASIS TO STAY THE DEPOSITIONS.  IT

25  WOULD BE MY DESIRE TO TRY TO GET ALL THE RELEVANT INFORMATION

47

1    AND TAKE THE DEPOSITIONS.  I HAVE A STRONG SUSPICION THAT'S

2    NOT LIKELY TO OCCUR SO I MAY HAVE TO MAKE SOME JUDGMENTS

3    ABOUT WHETHER I'M GOING TO GO FORWARD WITH THEM.

4            I'M CERTAINLY NOT GOING TO PUT ALL THESE

5    DEPOSITIONS ON HOLD INDEFINITELY.  AND THE MOST I WAS

6    PREPARED TO DO IS TO WORK IT OUT UNTIL AFTER OCTOBER 25

7    BECAUSE I ENVISIONED I COULD GET IN FRONT OF YOUR HONOR ON

8    OCTOBER 25 TO HEAR THE DOCUMENT MOTIONS.  THAT WAS CALCULATED

9    ON MY BELIEVING I WOULD GET THE RESPONSES LAST FRIDAY.

10           THE COURT:  I HAVE TO SAY ONCE I STARTED IN ON THIS

11   IT MADE NO SENSE TO ME TO STOP.  SO, THAT'S WHY I ADVANCED

12   THE MOTION AND WE'RE DOING AS MUCH AS WE CAN TODAY.

13           MR. PETROCELLI:  OKAY.

14           AND, YOUR HONOR, BECAUSE I DIDN'T GET THE RESPONSES

15   ON FRIDAY BECAUSE THEY'RE APPARENTLY NOT DUE FOR A COUPLE

16   MORE DAYS, IT'S NOT LIKELY I'M GOING TO BE ABLE TO GET A

17   DOCUMENT MOTION IN FRONT OF YOU BY OCTOBER 25TH, ALTHOUGH I'M

18   GOING TO ENDEAVOR TO DO WHATEVER WE CAN.

19           THE COURT:  I'M SURE THE PARTIES CAN WORK THINGS

20   OUT SO THAT YOU WON'T HAVE TO COME BACK IN FRONT OF ME AGAIN.

21           MR. PETROCELLI:  WELL, I THINK --

22           THE COURT:  RIGHT?

23           MR. PETROCELLI:  I WOULD HOPE SO, YOUR HONOR, BUT I

24   THINK --

25           THE COURT:  I'M NOT FORECLOSING IT.

48

1          MR. PETROCELLI:  AND IF I MAY --

2          THE COURT:  I'M JUST EXPRESSING THE FOND HOPE.

3          MR. PETROCELLI:  IF I MAY EXPRESS MY OWN VIEW ON

4    THAT, WHICH IS NOT REALLY A LEGAL ARGUMENT.  BUT RESPONSIVE

5    TO YOUR HONOR'S COMMENT, I THINK IF THESE MOTIONS ARE DENIED,

6    AND THE DEFENDANTS REALIZE THAT THEY DON'T HAVE SOME

7    AUTOMATIC RIGHT TO PUT ALL THIS DISCOVERY ON HOLD, THE

8    PROCESS WILL THEN CONFORM TO WHAT IS CONTEMPLATED BY THE

9    RULES.  AND WE'LL BE GOVERNED BY THE RULES.  AND EVERYBODY

10   WILL UNDERSTAND THEIR EXPECTATIONS.

11         RIGHT NOW THIS SITUATION THE DEFENDANTS ARE PUTTING

12   BEFORE THE COURT IS TO MAKE THIS CASE SOMEHOW AN EXCEPTION TO

13   THE RULES.  AND THAT'S WHAT'S CREATING THE CHAOTIC CONFUSION

14   IN THIS CASE, TO BORROW A TERM USED BY DEFENDANTS.

15         THANK YOU, YOUR HONOR.

16         THE COURT:  ALL RIGHT.

17         OKAY.  I DON'T THINK I NEED ANY FURTHER ARGUMENT.

18   I'VE READ EVERYTHING.  I'VE LISTENED TO AN HOUR OF ARGUMENT.

19         MR. KENDALL:  YOUR HONOR.

20         THE COURT:  AND I DON'T THINK MR. PETROCELLI SAID

21   ANYTHING THAT REALLY REQUIRES SOMETHING FURTHER, BUT YOU SEEM

22   TO THINK OTHERWISE.

23         MR. KENDALL:  THERE ARE JUST A FEW POINTS, YOUR

24   HONOR, WHERE I THINK THERE WAS ARGUMENT MADE THAT WE'VE NEVER

25   ADDRESSED, SOME OF IT BECAUSE IT WAS FIRST STATED BY THEM IN

49

1   THEIR SUPPLEMENTAL FILING.

2           IT IS NOT CORRECT THAT MR. TOBEROFF SAID IN THE

3   SIEGEL LITIGATION THAT THE ISSUES IN THAT LITIGATION WERE

4   COMPLETELY DIFFERENT AS MR. PETROCELLI REPRESENTED --

5           THE COURT:  MR. PETROCELLI WAS REFERENCING THE

6   TRANSCRIPT --

7           MR. KENDALL:  RIGHT.

8           THE COURT:  -- FROM THE OTHER LITIGATION, WHICH WAS

9   PRESENTED BEFORE ME.  I READ THAT TRANSCRIPT.

10          SO, YOU CAN TAKE THAT ARGUMENT AS SAYING, JUDGE,

11  WE'VE PRESENTED YOU WITH A TRANSCRIPT.

12          MR. KENDALL:  OKAY.  AND I DON'T THINK THE

13  TRANSCRIPT SAYS THAT.

14          THERE WERE A NUMBER OF OBSERVATIONS,

15  REPRESENTATIONS MADE BY MR. PETROCELLI ABOUT WHAT HIS

16  INTENTIONS ARE, WHAT HIS DESIRES ARE.  I DON'T THINK THOSE

17  ARE IN THE RECORD.

18          WE HAVE LOTS OF RESPONSES WE COULD MAKE AS TO WHY

19  WE DON'T THINK THOSE SHOULD BE RELIED UPON BY THE COURT.  BUT

20  IN THE INTEREST OF TIME I WON'T ADDRESS THEM UNLESS THE COURT

21  WOULD LIKE TO HEAR IT.  BUT I DON'T THINK THAT IT'S AT ALL

22  REALISTIC TO BELIEVE THAT IF THE MOTION TO STAY DISCOVERY IS

23  DENIED, THAT MR. PETROCELLI WILL BE RESTRAINED IN THE WAY

24  THAT HE HAS SUGGESTED.  BECAUSE WE BELIEVE THE ENTIRE POINT

25  OF THIS CASE IS TO REOPEN THOSE DEPOSITIONS.  AND THAT THEY

50

1    WILL, HAVING THE CAMEL'S TOE UNDER THE TENT, BE WALKING AS

2    QUICKLY AS THEY CAN --

3              THE COURT:  I THINK IT'S THE NOSE.

4              MR. KENDALL:  PARDON?

5              THE COURT:  I THINK IT'S THE CAMEL'S NOSE, NOT THE

6    TOE.

7              MR. KENDALL:  THAT'S THE PROBLEM WITH METAPHORS,

8    YOUR HONOR.  I STAND CORRECTED.

9              IN ANY EVENT THE TENT WILL BE GONE, AND THE

10   INHABITANTS OF THE TENT WILL BE FULLY EXPOSED TO THE CAMEL'S

11   DEPREDATIONS.  AND THAT'S WHAT WE'RE AFRAID OF.

12             THE LAST THING I DO WANT TO SAY BECAUSE I REALIZED

13   I FORGOT TO SAY THIS IN MY OPENING COMMENTS.  WE ARE FILING

14   THE ANTI-SLAP MOTION TODAY.  WE HAVE -- AND THE MOTION TO

15   DISMISS TODAY.  AND JUDGE WRIGHT'S CLERK HAS SAID THAT HE'S

16   HOLDING OPEN THE ORIGINAL DATE WHICH WAS THE 18TH OF OCTOBER

17   FOR THOSE TO BE HEARD.

18             AND WE DO NOT INTEND TO SEEK ANY EXTENSION OF TIME

19   WITH RESPECT TO THOSE MOTIONS, ASSUMING THAT MR. PETROCELLI

20   DOESN'T SEEK AN EXTENSION OF TIME.  AND IF THEY SEEK AN

21   EXTENSION OF TIME, WELL, WE'LL ADDRESS THAT WHEN WE ARE FACED

22   WITH SUCH A MOTION.  BUT THAT WOULD BE THEIR CHOICE NOT OURS.

23             WE DO NOT WANT AN INDEFINITE DELAY.  WE HAVE NOT

24   SOUGHT AN INDEFINITE DELAY OF DISCOVERY.  AND THAT

25   CHARACTERIZATION IS REALLY NOT ACCURATE.

51

1         WHAT WE DO WANT IS NOT TO HAVE TO SUBMIT TO

2    DISCOVERY IF DISCOVERY ISN'T APPROPRIATE BECAUSE THE CASE IS

3    DISMISSED OR SHARPLY CABINED.

4         WE ALSO HAVE THE 54(B) MOTION, WHICH IS IN ONLY ONE

5    WEEK.

6         YOUR HONOR, WITH RESPECT TO YOUR QUESTION AS TO

7    WHETHER THERE HAS BEEN ANY CRIMINAL COMPLAINT, THERE IS

8    SOMETHING I CAN SAY ABOUT THAT, BUT I --

9         THE COURT:  NO, I DIDN'T ASK IF THERE HAD BEEN A

10   CRIMINAL COMPLAINT.  I ASKED IF THERE HAD BEEN ANY LITIGATION

11   OVER THE SUPPOSED PURLOINING OF THE DOCUMENTS.

12        MR. KENDALL:  THERE'S BEEN NO LITIGATION.  I

13   BELIEVE THEN THERE WAS A QUESTION ABOUT BAR PROCEEDINGS AND

14   CRIMINAL COMPLAINTS.  AND I MAY BE WRONG.

15        BUT IN ANY EVENT, THERE IS SOMETHING I CAN SAY

16   ABOUT THAT IN CAMERA, BUT THERE'S NOTHING I CAN SAY ABOUT IT

17   IN A PUBLIC COURTROOM AT THIS POINT.

18        THE COURT:  OKAY.

19        MR. KENDALL:  YOUR HONOR, THE LAST THING I WILL SAY

20   IS THAT WITH RESPECT TO THE TIMELINE, RESPECTFULLY I BELIEVE

21   THAT THE POINT OF THE SUPREME COURT DECISION IN MOHAWK

22   RELATING TO PROTECTIVE ORDERS IS A WELL-TAKEN POINT ON OUR

23   SIDE.  WE'RE SUPPOSED TO SEEK A PROTECTIVE ORDER TO AVOID THE

24   SPILL-OVER EFFECT.

25        NOW, ALL OF THE ARGUMENT YOU HEARD FROM MR.

52

1    PETROCELLI ASSUMES THAT THE DOCUMENTS WERE LAWFULLY OBTAINED

2    BY THEM BEFORE JUDGE LARSON.   NOW, I'M THE FIRST TO AGREE

3    THAT JUDGE LARSON TOLD THEM THAT THEY COULD HAVE IT.   BUT THE

4    POINT HERE IS WHETHER THE INTERESTS OF THE DEFENDANTS,

5    INCLUDING BY THE WAY PARTIES -- THE SHUSTERS WHO WERE NOT

6    PARTIES TO THAT PRIOR CASE, SHOULD BE PRESERVED BY A

7    PROTECTIVE ORDER WHILE THE PROPRIETY OF THAT TURN-OVER ORDER

8    IS LITIGATED.

9            BECAUSE IF IT TURNS OUT THAT THE NINTH CIRCUIT'S

10   VIEW IS THAT THOSE DOCUMENTS SHOULD NOT HAVE BEEN TURNED

11   OVER, THEN I BELIEVE THE CASES THAT SAY LAWFULLY OBTAINED

12   DOCUMENTS CAN BE USED BECOME INAPPOSITE.   BECAUSE THAT WOULD

13   MEAN THAT THE DOCUMENTS WERE NOT LAWFULLY OBTAINED BECAUSE

14   THEY SHOULDN'T HAVE BEEN TURNED OVER.

15           THERE'S NO ARGUMENT THAT WE'RE MAKING THAT AT THE

16   PRESENT TIME MR. PETROCELLI IS DOING ANYTHING WRONG IN TAKING

17   HIS NOSE AND MOVING UNDER THAT TENT AS QUICKLY AND

18   AGGRESSIVELY AS HE CAN.   HOWEVER, WE SEEK A PROTECTIVE ORDER

19   TO PREVENT THE PREJUDICE FROM HIS DOING SO UNTIL THE

20   LAWFULNESS OF OBTAINING THOSE DOCUMENTS IS DETERMINED.

21           AND, THEN, JUST ONE LAST THING.   EVEN A QUICK PEEK

22   AT THE STATE LAW CLAIMS REVEALS SOMETHING VERY CLEARLY ON THE

23   FACE OF THOSE CLAIMS AND THE DOCUMENTS THAT THE COURT CAN

24   TAKE JUDICIAL NOTICE OF THAT ARE IN DISCOVERY ALREADY IN THIS

25   CASE, WHICH IS THAT ALL OF THOSE STATE CLAIMS ARE BARRED BY

53

1    THE STATUTE OF LIMITATIONS.

2            NOW, THERE ARE A NUMBER OF OTHER DEFICIENCIES IN

3    THOSE CLAIMS, THE LITIGATION PRIVILEGE AND SO FORTH, BUT THEY

4    ARE ALL BARRED BY THE STATUTE OF LIMITATIONS.  IT'S AN

5    EXTREMELY STRONG MOTION.

6            AND THE OTHER POINT IS THAT ON THE FIRST THREE

7    CLAIMS FOR RELIEF, ALL OF THOSE CLAIMS ARE PURELY LEGAL

8    ISSUES ABOUT THE MEANING OF THE COPYRIGHT ACT TERMINATION

9    PROVISIONS THAT ARE AT ISSUE.  THOSE ARE LEGAL QUESTIONS THAT

10   EITHER HAVE ALREADY BEEN DECIDED -- IT IS OUR CONTENTION THAT

11   THE RELEVANT ONES HAVE ALREADY BEEN DECIDED -- OR JUST

12   PRESENT QUESTIONS OF LAW.

13           NOW, IT'S EASY TO --

14           THE COURT:  SO, LET ME UNDERSTAND THIS.  IF MR.

15   PETROCELLI HADN'T BEATEN YOU TO THE PUNCH, AND YOU HAD FILED

16   AN ACTION TO TERMINATE OR TO RETURN A COPYRIGHT TO THE

17   SHUSTERS, YOU WOULD HAVE MOVED FOR SUMMARY JUDGMENT, AND YOU

18   WOULD HAVE TO ADDUCE NO EVIDENCE.  AND THE OTHER SIDE WOULD

19   HAVE BEEN ENTITLED TO DISCOVER NO EVIDENCE.  AND THE CASE

20   WOULD HAVE BEEN LOCKED UP TIGHT.

21           MR. KENDALL:  WELL, I THINK THAT'S --

22           THE COURT:  OPTIMISTIC.

23           MR. KENDALL:  -- NOT A PROPOSITION THAT I WOULD

24   ACCEPT.

25           BUT I WOULD ARGUE IT A DIFFERENT WAY, WHICH IS, IF

54

1    MR. PETROCELLI HAD NOT BEATEN US TO THE PUNCH, AND IF THE SIX

2    YEARS OF SIEGEL LITIGATION HAD RESULTED IN A FINAL JUDGMENT,

3    THEN, ALL THAT WOULD BE NECESSARY WOULD BE TO RESUBMIT THE

4    TERMINATIONS THAT HAVE ALREADY BEEN SUBMITTED TO THE COURT --

5    ALTHOUGH THE SIEGEL CASE DOES NOT PUT THEM AT ISSUE -- HAVE

6    ALREADY BEEN SUBMITTED TO THE COURT IN DISCOVERY BY THE

7    SHUSTERS, HAVE ALREADY BEEN THE SUBJECT -- AND I DON'T THINK

8    THERE'S ANY DISPUTE ABOUT THIS -- OF SUBSTANTIAL QUESTIONING

9    OF THE SHUSTER HEIRS.  THERE BEING NO DISPUTE ABOUT THE

10   EXISTENCE OF THOSE TERMINATIONS, THE FACT THAT THEY WERE

11   FILED.  JUDGE LARSON HAVING DECIDED WHAT HAS BEEN RECAPTURED

12   BY THE SIEGEL HEIRS HAS DECIDED FOR ISSUE PRECLUSION PURPOSES

13   EVERYTHING THAT NEEDS TO BE DECIDED AS TO WHAT'S GOING TO BE

14   RECAPTURED BY THE SHUSTER HEIRS.

15            SO, I WOULD ARGUE THAT MERELY BY SUBMITTING AGAIN

16   THE DOCUMENTS THEY'VE HAD FOR MANY, MANY YEARS THAT AFFECT

17   THE TERMINATIONS, THAT THAT WOULD BE, TOGETHER WITH WHATEVER

18   RULINGS HAVE THEIR ISSUE PRECLUSION EFFECT, THAT WOULD BE

19   CONCLUSIVE.

20            NOW, THEY WOULD HAVE VARIOUS LEGAL ARGUMENTS THAT

21   THEY HAVE MADE, SUCH AS THIS EXCLUSIVITY POINT THAT THEY DID

22   NOT PREVIOUSLY ARGUE IN THE SAME WAY.  HOWEVER, THOSE DO NOT

23   REQUIRE FACTS.  BECAUSE --

24            THE COURT:  ALL RIGHT.  ANYTHING ELSE THAT YOU NEED

25   TO TELL ME?

55

1        MR. PETROCELLI, DO YOU FEEL THE NEED TO ARGUE

2   ANYTHING FURTHER?

3        MR. PETROCELLI:  OTHER THAN TO SAY THAT THAT WHOLE

4   ARGUMENT IS BASED ON A COMPLETE --

5        THE COURT:  FROM THE MICROPHONE SO THAT WE CAN PICK

6   IT UP.

7        MR. PETROCELLI:  I'M SORRY.

8        OTHER THAN TO SAY THAT THAT WHOLE ARGUMENT IS BASED

9   ON A COMPLETE DISREGARD FOR THE ACTUAL CLAIMS THAT WE HAVE

10  FILED, WHICH WERE NOT LITIGATED IN THE SIEGEL CASE AND, I

11  MENTIONED BEFORE, THE 1992 AGREEMENT BETWEEN DC COMICS AND

12  THE SHUSTERS.  AND THE SIEGELS WERE NOT A PARTY TO THAT.

13  THAT'S A DEFINING ISSUE WITH RESPECT TO THE WHOLE SIEGEL

14  TERMINATION ISSUE.  THEY HAVE ABSOLUTELY NO ANSWER TO THAT --

15  JUST IGNORED ANY ARGUMENT ON THAT SUBJECT.

16       THANK YOU.

17       THE COURT:  ALL RIGHT.

18       ALL RIGHT.  WE'VE HAD OVER AN HOUR OF ARGUMENT.  WE

19  HAVE, AS I'VE INDICATED, 3,000 PAGES -- AND, QUITE FRANKLY, I

20  DON'T THINK THESE MOTIONS ARE ALL THAT DIFFICULT.

21       SO, LET'S START WITH THE DEFENDANTS' MOTION FOR A

22  PROTECTIVE ORDER CONCERNING THE SO-CALLED TOBEROFF TIME LINE.

23  AND THAT MOTION IS DENIED.

24       JUDGE LARSON HAS INDICATED, RULED THAT THE LETTER

25  HAD TO BE TURNED OVER.  AND I'M NOT GOING TO REVISIT THAT

56

1    RULING.  AND I'M NOT GOING TO VOICE AN OPINION AS TO WHETHER

2    I WOULD HAVE ISSUED THE SAME RULING DESPITE I THINK WHAT THE

3    PARTIES ARE TRYING TO GET ME TO DO.

4         I'M NOT GOING TO ASSUME THAT THE COURT OF APPEALS

5    WILL ULTIMATELY OVERTURN THAT RULING.  I DON'T KNOW.  BUT I

6    DO KNOW THAT ANY APPELLATE RULING IS PROBABLY SOMETIME IN THE

7    DISTANCE.  I DON'T SPECULATE ON WHEN IT WILL OCCUR OR WHAT

8    ANY OUTCOME WILL BE.

9         SO, SINCE THE TIMELINE HAS BEEN DISCLOSED, THE

10   PLAINTIFFS MAY CONDUCT DISCOVERY ABOUT IT.  AND THAT'S ALL

11   I'M INDICATING IN DENYING THIS MOTION.  I'M NOT MAKING ANY

12   FURTHER RULING WITH CONNECTION TO THAT EXCEPT TO SAY THAT THE

13   MOTION FOR A PROTECTIVE ORDER IS DENIED.

14        NOW, AS TO THE PLAINTIFF'S MOTION TO INITIATE

15   DISCOVERY AND TAKE THE IMMEDIATE LIMITED DISCOVERY OF TWO

16   ELDERLY WITNESSES, THE ACTUAL RELIEF SOUGHT IN THAT MOTION

17   WAS TWOFOLD.  FIRST, THE PLAINTIFFS REQUESTED AN ORDER

18   REQUIRING THAT DISCOVERY COMMENCE IN THIS CASE WITHOUT ANY

19   FURTHER DELAY.

20        AND, SECOND, THEY REQUESTED AN ORDER REQUIRING THAT

21   MS. SIEGEL AND PEAVY SIT FOR DEPOSITIONS AND PRODUCE

22   DOCUMENTS NOT LATER THAN SEPTEMBER 30TH.

23        NOW, AS TO THE ACTUAL RELIEF SOUGHT, THERE'S

24   NOTHING THAT PREVENTS THE PLAINTIFF FROM COMMENCING

25   DISCOVERY.  THE ONLY AUTOMATIC STAY THAT FEDERAL LAW IMPOSES

57

1    IS A STAY BEFORE THE RULE 26(F) CONFERENCE, AND THAT

2    CONFERENCE HAS TAKEN PLACE.

3            IN THE COURT'S VIEW, THE CALIFORNIA ANTI-SLAP

4    STATUTE DOES NOT GOVERN THESE FEDERAL PROCEEDINGS AND IMPOSE

5    AN AUTOMATIC STAY.  THIS IS NOT TO SAY THAT THE COURT COULD

6    NOT IN AN APPROPRIATE CIRCUMSTANCE IMPOSE SUCH A STAY, AND

7    THAT THE STATE'S STATUTE COULD NOT BE A FACTOR BECAUSE IN THE

8    COURT'S VIEW IT CAN.  BUT NO STAY EXISTS AUTOMATICALLY RIGHT

9    NOW AS A RESULT OF THE STATUTE.

10           THE DEPOSITIONS HAVE BEEN NOTICED.  AND NO CASE HAS

11   BEEN MADE THAT THE DEPOSITIONS IN THE COURT'S VIEW MUST BE

12   TAKEN BEFORE SEPTEMBER 30TH OR ON SOME FORM OF SHORTENED

13   NOTICE.  SO, THE PLAINTIFF'S MOTION TO INITIATE DISCOVERY AND

14   TAKE IMMEDIATE LIMITED DISCOVERY OF THE TWO ELDERLY WITNESSES

15   IS DENIED.

16           NOW, THAT BRINGS US TO THE ONLY REAL MOTION, WHICH

17   IS THE MOTION FOR THE PROTECTIVE ORDER FILED BY THE

18   DEFENDANTS, WHICH THE COURT ADVANCED SO IT COULD BE HEARD IN

19   CONNECTION WITH THE OTHER MOTIONS.

20           THERE ARE FOUR DEPOSITION NOTICES AT ISSUE:  THAT

21   OF MS. SIEGEL, THAT OF MS. LARSON, THAT OF MR. PEAVY AND THAT

22   OF MS. PEAVY.

23           IN MY VIEW THERE ARE BALANCES TO BE STRUCK HERE.  A

24   PARTY IS ENTITLED TO TAKE ANOTHER PARTY'S DEPOSITION.  THE

25   SCOPE OF THE EXAMINATION IS DETERMINED BY RELEVANCE, AND

58

1    RELEVANCE IS DETERMINED BY THE PLEADINGS.  AND A PARTY SHOULD

2    NOT HAVE TO NEEDLESSLY GO OVER MATERIAL THAT WAS PREVIOUSLY

3    TESTIFIED TO.  AND ABSENT COMPELLING CIRCUMSTANCES, A PARTY

4    SHOULD NOT HAVE TO TESTIFY MORE THAN ONCE IN A CASE.

5              AND, FINALLY, CARE SHOULD BE TAKEN IN CONNECTION

6    WITH PERSONS WHO ARE INFIRM.

7              THOSE FACTORS ARE TO SOME EXTENT IN TENSION WITH

8    ONE ANOTHER IN THIS CASE.  I'VE TRIED TO TAKE THEM ALL INTO

9    CONSIDERATION IN MAKING MY RULING.  IN BALANCING ALL THOSE

10   FACTORS, ABSENT AGREEMENT AMONG THE PARTIES, OF COURSE, I'M

11   GOING TO STAY THE DEPOSITIONS UNTIL NOVEMBER 15TH.

12             AS TO THE DEPOSITIONS OF MS. SIEGEL AND MS. LARSON,

13   I'M GOING TO ORDER THAT THOSE WHEN THEY ARE TAKEN BE TAKEN NO

14   MORE THAN 90 MINUTES AT A TIME WITHOUT BREAKS, AND BREAKS AS

15   MUCH AS THE DEPONENTS REASONABLY NEED TO COLLECT THEMSELVES

16   AND TO TAKE CARE OF THEIR HEALTH ISSUES.

17             AS TO THE DEPOSITION OF JEAN PEAVY, I'M GOING TO

18   ORDER THAT THAT BE -- THAT PROCEED EITHER BY WRITTEN

19   QUESTIONS UNDER RULE 31, WITH THE DEPONENT GIVEN AS MUCH TIME

20   AS SHE NEEDS TO RESPOND TO THE COURT REPORTER.  THAT IS, SHE

21   CAN DO IT IN INCREMENTS, FOR EXAMPLE, OF 45 MINUTES IF NEED

22   BE.

23             OR AT THE PLAINTIFF'S OPTION IN LIEU OF A

24   DEPOSITION ON WRITTEN QUESTIONS, THE PLAINTIFF WILL BE

25   RELIEVED OF THE LIMIT ON INTERROGATORIES AND CAN SERVE UP TO

59

1  75 INTERROGATORIES ON THIS DEFENDANT ONLY.

2          I SEE NO NEED TO ISSUE ANY FURTHER ORDER AS TO MR.

3  MARK PEAVY.

4          I'M NOT GOING TO IMPOSE A LIMIT ON THE SUBJECTS TO

5  BE COVERED IN THE DEPOSITIONS.  BECAUSE I THINK THAT IS

6  ESSENTIALLY UNWORKABLE AND ONLY INVITES RANCOR AT THE

7  DEPOSITIONS AND ESSENTIALLY FOR THE COURT TO BABY-SIT THE

8  DEPOSITIONS.

9          I WILL DEPEND UPON COUNSEL TO NOT NEEDLESSLY GO

10  OVER MATERIAL THAT HAS BEEN COVERED, EVEN IF IT HAS BEEN

11  COVERED IN ANOTHER CASE, AND TO FOCUS ON WHAT IS TRULY

12  NEEDED.

13          AND IT WILL NOT BE MY PRESENT EXPECTATION TO EITHER

14  ENLARGE THE AMOUNT OF TIME AVAILABLE FOR A DEPOSITION OR TO

15  ALLOW SECOND DEPOSITIONS OF THESE WITNESSES.  I'M NOT RULING

16  IT OUT, BUT IT'S NOT MY PRESENT EXPECTATION.

17          I WILL EXPECT ALL COUNSEL TO BE COOPERATIVE AND

18  NONE TO BE OBSTRUCTIVE.

19          I DON'T KNOW WHEN JUDGE WRIGHT WILL ULTIMATELY

20  RULE.  I'VE ATTEMPTED TO GIVE HIM TIME TO RULE IF HE IS SO

21  INCLINED.  AND, OF COURSE, OBVIOUSLY, HE CAN ALTER ANY

22  SCHEDULE THAT I HAVE SET.  BUT ASSUMING THAT HE DOES PROCEED

23  AS PROMPTLY AS THE DEFENDANTS BELIEVE THAT HE WILL PROCEED,

24  THIS SHOULD ALLOW TIME FOR CERTAIN ISSUES TO SHAKE OUT AND

25  FOR THE DEPOSITIONS TO TAKE PLACE AND, AT THE SAME TIME, NOT

60

1   PUT OFF THE DEPOSITIONS FOR TOO LONG A TIME.  THESE WITNESSES

2   ARE NOT GETTING ANY YOUNGER.  IT'S THE COURT'S KEEN

3   OBSERVATION THAT PEOPLE WHO ARE ELDERLY AND HAVE HEALTH

4   PROBLEMS DON'T GET ANY YOUNGER, AND THEIR HEALTH PROBLEMS

5   TEND TO NOT IMPROVE.

6           SO, I THINK THERE IS SOME URGENCY HERE, AND I'VE

7   TRIED TO TAKE THAT INTO ACCOUNT AS WELL.

8           I HESITATE TO ASK IF THERE'S ANYTHING FURTHER.  BUT

9   IT IS MY REFRAIN.

10          FROM EITHER SIDE?

11          MR. PETROCELLI:  NOT FROM US, YOUR HONOR.  THANK

12  YOU VERY MUCH.  AND, AGAIN, WE APOLOGIZE FOR THE UNDUE BURDEN

13  ON THE COURT.

14          MR. COURT:  ALL RIGHT.

15          MR. --

16          MR. KENDALL:  WE JOIN IN THOSE SENTIMENTS, YOUR

17  HONOR, AND THANK YOU.  AND NOTHING FURTHER.

18          THE COURT:  ALL RIGHT.  GOOD LUCK TO YOU.

19          WE'LL BE IN RECESS.

20          (PROCEEDINGS ADJOURNED 11:37 A.M.)

21

22

23

24

25

61

1

2                       C E R T I F I C A T E

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10   DOROTHY BABYKIN                              9/27/10

11   _____             _____

12   FEDERALLY CERTIFIED TRANSCRIBER              DATED

13   DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25