# EXHIBIT C

11/27/01 20:07 FAX

Copy for reference
310-589-5151

## JOINT VENTURE AGREEMENT

AGREEMENT made as of November 23, 2001 by and between Pacific Pictures Corporation ("PPC") with offices at 23852 Pacific Coast Highway, Suite 555, Malibu, CA 90265 ; tel. (310) 589-5151; fax: (310) 589-5152 and Jean A. Peavy and her son Mark Warren Peary (f/k/a Mark Warren Peavy) (individually and collectively, "Claimants") located at 51 Camino Cabo, Sante Fe, New Mexico 87508; tel. / fax: (505) 466-4551, regarding the formation of a joint venture for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights").

1. The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, such as, without limitation, "Superman," "Clark Kent," "Lois Lane," "Jimmy Olsen," "Lex Luther," "Lana Lang," "Mr. Mxyztplk," "Superboy," "Supergirl," "The Daily Planet," "Krypton," "Kryptonite," and "Smallville."

2. In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304 (c) of the U.S. Copyright Law (Title 17, U.S.C ) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. In consideration for PPC'S contributions to the Venture and the mutual covenants contained herein Claimants hereby transfer and assign to the Venture their rights, title and interests in the Rights. The name of the Venture shall be the "Joe Shuster Venture." The Venture's office address shall be the California address set forth above.

3. PPC will pay any and all costs and expenses of the Venture, including the legal fees and costs of setting up Joe Shuster's estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the enforcement and/or defense of the Rights and the Venture. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying,

Initials: _JAP_ _MWP_

EXHIBIT 13
FOR IDENTIFICATION
DAVID S. COLEMAN, CSR #4613
DATE 11-17-06
WITNESS Toberoff

Received Aug-09-06 12:27pm From- To- Page 001

129

EXHIBIT C
Page 50

Page 2
Joint Venture Agreement / Joe Shuster
11/23/01

postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC'S share of Proceeds set forth in paragraph 5 below.

4. The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Claimants and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5. Any and all moneys and proceeds received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties ("Proceeds"), will be shared, divided and payable: fifty percent (50%) to Claimants and fifty percent (50%) to PPC. The parties will use all reasonable efforts to have Joe Shuster's estate/administrator and third party payors, if any, directly pay to the Claimants and PPC their respective fifty percent (50%) share of Proceeds. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Claimants of a reasonable accounting and receipts for said expenses.

6. All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7. The Venture and/or the Estate of Joe Shuster (to be established hereunder) will retain Marc Toberoff, Esq. to render legal services in connection with the Rights and the Venture, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights.

Initials: _____

Page 3
Joint Venture Agreement / Joe Shuster
11/23/01

8. The term ("Term") of the Venture shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term and the winding-up of the Venture or in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by the Claimants and fifty percent (50%) by PPC as tenants in common, and Claimants and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination of the Venture.

9. To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (c) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Claimants.

10. All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement, including without limitation an irrevocable letter of authority instructing the administrator of Joe Shuster's Estate to divide and disburse all Proceeds from the Rights as set forth in paragraph 5 above. When required hereunder, consent shall not be unreasonably withheld by any party regarding the business of the Venture. The parties hereby approve Michael Catron for appointment as the administrator of Joe Shuster's Estate, once it is established.

11. This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. To the extent any provision of this Agreement is found invalid, said provision shall be stricken

131

EXHIBIT C
Page 52

11/27/01  20:11 FAX                                                    ☒009/009

Page 4
Joint Venture Agreement / Joe Shuster
11/23/01

and shall not affect the validity of the remaining provisions hereof. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

    11. This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

Agreed, understood and accepted:

Pacific Pictures Corporation

_____  Date: _____
By: Marc Toberoff, President

_/s/ Jean A. Peavy_____  Date: Nov. 28, 2001
Jean A. Peavy

_/s/ Mark Warren Peary___  Date: Nov. 28, 2001
Mark Warren Peary
(f/k/a Mark Warren Peavy)

132

EXHIBIT C
Page 53

# EXHIBIT D

## PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

    We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

    1.    Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

    2.    In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

    3.    PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _MT_, _mwp_

14

FOR IDENTIFICATION
DAVID S. COLEMAN, CSR #4613
DATE 11-17-06
WITNESS Toberoff

125

## PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4. The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5. Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties ("Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peavy and Warren Peavy, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6. All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7. The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _____, _____

126

## PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

      8.      To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

      9.      All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

      10.     This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

      11.     This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

      If the terms and conditions of this agreement are acceptable to you, please

///
///
///
///

Initials: _MT_, _MWT_

127

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

*[signature]*

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

*[signature]*      Date: 10-30-03
By: Mark Warren Peary, Executor
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my interests are concerned.

*[signature]*      Date: 10-30-03
Jean A. Peavy

128

# EXHIBIT E

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

September 10, 2004

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor, Estate of Joseph Shuster
Jean Peavy
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren and Jean:

This is to confirm that (1) the joint venture agreement dated as of November 23, 2001 between you and Pacific Pictures Corp. and (2) the engagement agreement dated October 27, 2003 between the Estate of Joseph Shuster and Pacific Pictures Corp. have been cancelled.

Sincerely yours,

*/s/ Marc Toberoff/*

Marc Toberoff

AGREED:

The Estate of Joseph Shuster

*/s/ Mark Warren Peary/*
By: Mark Warren Peary, Executor

*/s/ Mark Warren Peary/*
Mark Warren Peary

*/s/ Jean A. Peavy/*
Jean A. Peavy

EXHIBIT 15
FOR IDENTIFICATION
DAVID S. COLEMAN, CSR #4613
DATE 11-17-06
WITNESS Toberoff

133

# EXHIBIT F

Nov-15-06  10:32pm  From-
T-128  P.003  F-045
827 7227  P.02

# Ip worldwide

As of October 3, 2002

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

RECEIVED
OCT 24
Marc Toberoff

Re: "Superman"

Dear Joanne and Laura:

This letter shall confirm the agreement and understanding between you ("Owner") and us ("IPW") regarding Owner's retention of IPW to exclusively represent Owner with respect to any and all of Owner's rights, claims, title and interest in and to the comic book property commonly known as "Superman," including, without limitation, all characters and copyright interests therein (jointly and individually, "Rights"):

1. In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.

2. IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. IPW will also provide Marc Toberoff's legal services with respect to all legal contracts in connection with all of the above. IPW will be solely responsible for Marc Toberoff's legal fees in connection herewith, if any.

3. The terms of any and all agreements regarding the Rights will require Owner's express written approval.

4. IPW will pay its own costs and expenses in connection with this Agreement, including without limitation, office overhead, photocopying, messenger fees, postage and overnight mail, long distance telephone and fax charges, travel and accommodation costs and any legal fees to Marc Toberoff, and such costs will not be recoupable from Proceeds hereunder. Notwithstanding this, in the event IPW advances or loans Owner moneys to pay costs in furtherance of the Rights (e.g., US Copyright Office fees and audit fees, if any) the terms and repayment of any such advances or loans will be set forth in a separate written agreement between the parties.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3336
E-mail: MToberoff@IPWW.biz

EXHIBIT F

Page 59

IPW 00001

# Ip worldwide

Page 2
Retainer Agreement/ *Superman*
As of October 3, 2002

5. The term ("Term") of this Agreement is eighteen (18) months from the date this Agreement is executed by all parties. In the event the parties are actively negotiating an agreement regarding the Rights when the Term is due to expire, the Term will automatically be extended for three (3) additional months. In the event during the Term either Marc Toberoff or Ariel Emanuel are unable to render services in connection with this Agreement for a continuous period greater than three (3) months due to death, incapacity or otherwise, Owner may in its discretion terminate this Agreement prior to the expiration of the Term.

6. In consideration of the services to be furnished by IPW hereunder you hereby agree to pay and authorize IPW to retain out of all gross compensation, moneys or other consideration that may be payable or recovered for or by reason of Owner's Rights whether by negotiation, dispute resolution, settlement or otherwise ("Proceeds"): a fee ("Fee") of ten percent (10%) of any and all gross compensation payable including, without limitation, option, quitclaim or licensing fees, purchase price, settlement amounts, advances, fixed and/or contingent compensation. In computing IPW's fee no deduction will be made from gross Proceeds, including, without limitation, no deduction for Owner's taxes, expenses and/or moneys payable to any and all third parties if any. IPW's Fee shall apply to any and all agreements regarding the Rights made during the Term or the material terms of which are substantially negotiated during the Term and/or to any agreements between Owner and an investor or buyer introduced by IPW to Owner during the Term. For the avoidance of doubt, in the event "*Superman*" and the Rights are sold, settled, licensed or otherwise exploited in conjunction with other characters or rights owned or controlled by Owner (e.g., "*Superboy*"); it is understood and agreed that IPW will not "double dip" and the above 10% IPW Fee will apply to gross Proceeds from any said joined transaction(s).

Notwithstanding the above, for purposes of computing IPW's Fee, Proceeds will not include Joanne Siegel's annual "pension" payments which commenced in 1996 (currently $ 126,148 annually, plus cost of living increases or bonuses, if any) and her full medical and dental coverage provided by AOL Time Warner which consideration and interests pre-date and are wholly separate from her copyright termination interests.

///
///
///
///
///
///

IPW 00002

# Ip worldwide

Page 3
Retainer Agreement/ Superman
As of October 3, 2002

7. Owner hereby authorizes IPW to collect and receive all Proceeds due and payable; to endorse and deposit any checks or moneys payable into a client trust account on Owner's behalf; to deduct IPW's fee as set forth above; whereupon IPW will promptly pay the remainder directly to Owner as directed by Owner in writing. It is understood that the Rights may involve multiple rights and claims against multiple parties and accordingly IPW's above fee shall be applicable to each Rights payment or recovery from any party and same is not contingent on any other Rights payment.

8. Owner hereby warrants and represents that Owner will not transfer, assign, license or in any manner encumber the Rights during the Term or extended Term other than through or as a result of IPW's exclusive representation hereunder, with the exception of by will, probate or pursuant to other Court order.

9. All notices and/or payments hereunder shall be made to the parties at the addresses set forth on page 1 hereof unless and until either party gives the other prior written notice of a change of address.

10. The parties understand and acknowledge that the scope of this Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services and advancing of such expenses, if requested and desired by Owner, will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and Owner.

11. This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by both parties. The parties acknowledge that they fully understand the terms and conditions of this Agreement and have agreed to such terms and conditions after negotiation, mature thought and deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. The terms of this Agreement shall be construed pursuant to their fair meaning, nor for or against either party. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals. This Agreement shall be governed by the

IPW 00003

Nov-15-06  10:33pm  From-                                              T-128  P.006  F-045

# Ip worldwide

Page 4
Retainer Agreement/ Superman
As of October 3, 2002

Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased and excited to work with you and will do our very best to handle this matter in a dedicated manner and to achieve results satisfactory to you.

Yours sincerely,

Marc Toberoff
Authorized signatory

Adel Emanuel
Authorized signatory

Agreed, Understood and Accepted:

Joanne Siegel                                  Date: October 23rd 2002

Laura Siegel Larson                            Date: October 23, 2002

IPW 00004