# EXHIBIT D



Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | Case No. CV 04-8400 SGL (RZx) |
| Plaintiffs, | [Honorable Stephen G. Larson] |
| vs. | **DECLARATION OF MARC TOBEROFF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, | **VOLUME I** |
| | [Complaint filed: October 8, 2004] |
| Defendants. | Date: ~~TBD~~ July 16, 2007 |
| | Time: 10:00 a.m. |
| | Place: Courtroom 1 |
| DC COMICS, | [Notice of Motion; Memorandum of Points and Authorities In Support of Motion For Partial Summary Judgment; Statement of Uncontroverted Facts and Conclusions Of Law; Request For Judicial Notice And [Proposed] Order Filed Concurrently Herewith] |
| Counterclaimant, | |
| vs. | |
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | |
| Counterclaim Defendants. | |

# DECLARATION OF MARC TOBEROFF

I, Marc Toberoff, declare as follows:

1.　　I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Laura Siegel Larson and Joanne Siegel ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this Declaration in support of Plaintiff's Motion for Partial Summary Judgment. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.　　Attached hereto as "Exhibit A" is a true and correct certified copy of the Opinion, dated November 21, 1947, of the Official Referee Judge Addison Young (hereinafter, "Judge Young") in the action entitled *Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.* in the Supreme Court of the State of New York, Westchester County (hereinafter, the "1947 Action").

3.　　Attached hereto as "Exhibit B" is a true and correct certified copy of Judge Young's Findings of Fact and Conclusions of Law dated April 12, 1948, in the 1947 Action.

4.　　Attached hereto as "Exhibit C" is a true and correct copy of the Stipulation of settlement dated May 19, 1948 ("1948 Stipulation") between the parties to the 1947 Action (Jerome Siegel, Joseph Shuster and National Periodical Publications, *et al.*) which I had copied from the Joint Appendix in *Siegel v. National Periodical Publications, Inc. et al.*, 508 F.2d 909 (2d Cir. 1974).

5.　　Attached hereto as "Exhibit D" is a true and correct certified copy of Judge Young's corresponding Final [Consent] Judgment dated May 21, 1948 in the 1947 Action.

Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment

6.      Attached hereto as "Exhibit E" is a true and correct copy of the agreement dated March 31, 1938 between Jerome Siegel and Joseph Shuster on the one hand and Detective Comics, Inc. on the other hand ("March 31, 1938 Grant").

7.      Attached hereto as composite "Exhibit F" are true and correct copies of the June 1, 1965 Certificates of Registration of a Claim to Renewal Copyright regarding Action Comics No. 1 and "Superman."

8.      Attached hereto as "Exhibit G" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding the March 31, 1938 Grant.

9.      Attached hereto as "Exhibit H" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding a purported December 4, 1937 agreement.

10.     Attached hereto as "Exhibit I" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding a purported September 22, 1938 agreement with DC Comics, Inc.

11.     Attached hereto as "Exhibit J" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding a purported September 22, 1938 agreement with the McClure Newspaper Syndicate.

12.     Attached hereto as "Exhibit K" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding the 1948 Stipulation.

2

071

13.    Attached hereto as "Exhibit L" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding a purported December 19, 1939 agreement.

14.    Attached hereto as "Exhibit M" is a true and correct copy of relevant excerpts from Plaintiffs' Notice of Termination of Transfer Covering Extended Renewal term for "Superman" dated April 3, 1997 regarding a purported December 23, 1975 agreement.

15.    Attached hereto as composite "Exhibit N" are a true and correct copies of the Certificates of Recordation dated September 17, 1998 from the United States Copyright Office for Plaintiffs' April 3, 1997 Notices of Termination regarding "Superman."

16.    Attached hereto as "Exhibit O" is a true and correct copy of an April 16, 1997 letter from John A. Schulman to Joanne Siegel.

17.    Attached hereto as "Exhibit P" is a true and correct copy of an October 10, 1997 letter from Paul Levitz to Joanne Siegel and Laura Siegel Larson.

18.    Attached hereto as "Exhibit Q" is a true and correct copy of an April 15, 1999 letter from DC Comic's counsel to Plaintiffs' former counsel Arthur Levine.

19.    Attached hereto as "Exhibit R" is a true and correct copy of Defendants' First Amended Counterclaim for case no. CV 04-8400 SGL (RZx).

20.    For the Court's convenience, a true and correct copy of the decision in *Siegel v. National Periodical Publications, Inc. et al.*, 364 F. Supp. 1032 (S.D.N.Y. 1973) is attached hereto as Exhibit "S."

21.    For the Court's convenience, a true and correct copy of the decision in *Siegel v. National Periodical Publications, Inc. et al.*, 508 F.2d 909 (2d Cir. 1974) is attached hereto as Exhibit "T."

3

22.     Attached hereto as "Exhibit U" is a true and correct copy of Judge Ronald S. W. Lew's March 24, 2006 order in civil case no. 04-08776 RSWL (RZx).

23.     Attached hereto as "Exhibit V" is a true and correct copy of Judge Ronald S. W. Lew's May 23, 2006 order in civil case no. 04-08776 RSWL (RZx).

24.     Attached hereto as "Exhibit W" is a true and correct copy of the appellate brief of Defendants' alleged predecessors, defendants-appellees National Periodical Publications, Inc. *et al.* in *Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.* 508 F.2d 909 (2d Cir. 1974), which was produced in this action by Defendants.

25.     Attached hereto as "Exhibit X" is a true and correct copy of Plaintiffs' October 8, 2004 complaint for case no. CV 04-8400 (SGL (RZx).

26.     Attached hereto as "Exhibit Y" is a true and correct of a December 23, 1975 agreement between Warner Communications, Inc. and Jerome Siegel and Joseph Shuster.

27.     Attached hereto as "Exhibit Z" is a true and correct copy of a tolling agreement dated April 6, 2000 between Plaintiffs and DC Comics.

28.     Attached hereto as "Exhibit AA" is a true and correct copy of a letter dated September 21, 2002 from Joanne Siegel to Kevin S. Marks and Bruce M. Ramer.

29.     Attached hereto as "Exhibit BB" is a true and correct copy of a letter dated October 19, 2001 from Plaintiffs' former counsel Kevin Marks ("Marks") to Defendants' general counsel John Schulman ("Schulman").

30.     Attached hereto as "Exhibit CC" is a true and correct copy of a letter dated October 26, 2001 from Schulman to Marks.

4

1    31.    Attached hereto as "Exhibit DD" is a true and correct copy of a
2  letter dated February 1, 2002 from Defendants' counsel Patrick Perkins to
3  Marks.

4    32.    Attached hereto as "Exhibit EE" is a true and correct copy of
5  excerpts from the October 7, 2006 deposition of Marks.

6    33.    Attached hereto as "Exhibit FF" is a true and correct copy of a
7  March 15, 1982 letter from Martin D. Payson, Senior Vice President and
8  General Counsel for Warner Communications, Inc. to Joanne Siegel.

9    34.    Attached hereto as "Exhibit GG" is a true and correct copy of
10  Plaintiffs' First Amended Complaint for case no. CV 04-8400 (SGL (RZx).

11

12    Executed on April 30, 2007 in Los Angeles, California.

13

14    _____
                              Marc Toberoff
15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment

*Case reported in 364 F. Supp. 1032 (S.D.N.Y. 1973) aff'd 508 F.2d 909 (2d cir. 1974).*

# 73-2844

# United States Court of Appeals

## For the Second Circuit

---

JEROME SIEGEL and JOSEPH SHUSTER,

*Plaintiffs-Appellants,*

*against*

NATIONAL PERIODICAL PUBLICATIONS, INC.,
JACOB S. LIEBOWITZ, IRWIN DONENFELD and
PAUL H. SAMPLINER,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## JOINT APPENDIX

---

COUDERT BROTHERS
*Attorneys for Plaintiffs-Appellants*
200 Park Avenue
New York, New York 10017
973-3300

WEIL, GOTSHAL & MANGES
*Attorneys for Defendants-Appellees*
767 Fifth Avenue
New York, New York 10022
758-7800

00000000975

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Docket Entries | 1a |
| Complaint | 2a |
| Answer and Counterclaim | 10a |
| Exhibit A—Agreement of March 1, 1938 | 28a |
| Exhibit B—Agreement of December 4, 1937 | 29a |
| Exhibit C—Opinion of Referee J. Addison Young | 31a |
| Exhibit D—Findings of Fact | 43a |
| Conclusions of Law | 70a |
| Exhibit E—Interlocutory Judgment | 76a |
| Exhibit F—Stipulation | 80a |
| Exhibit G—Final Judgment | 87a |
| Affidavit of Edward C. Wallace Read in Support of Motion | 95a |
| Exhibit 1—Letter | 112a |
| Exhibit 2—Letter | 114a |
| Exhibit 3—Letter | 115a |
| Exhibit 4—Letter | 116a |
| Exhibit 5—Letter | 117a |
| Exhibit 6—Letter | 118a |
| Exhibit 7—Letter | 119a |

000000002076

I I

PAGE

Affidavit of Jerome Siegel Read in Opposition to
Motion ................................................................ 121a

    Exhibit A—Superman (Synopsis) ........................ 132a

    Exhibit B—Letter ...................................................... 139a

    Exhibit C—Letter ...................................................... 141a

    Exhibit D—Letter ...................................................... 142a

Affidavit of Joseph Shuster Read in Opposition to
Motion ................................................................ 143a

Affidavit of Gordon T. King Read in Opposition
to Motion ............................................................ 145a

    Exhibit A—First Week of Inked Strips ............... 147a

    Exhibit B—Three Weeks of Synopsized Strips 150a

    Exhibit C—Excerpts from Liebowitz Deposition 163a

    Exhibit D—Excerpts from Liebowitz Testimony
in Westchester Action ...................................... 168a

Opinion of Judge Morris E. Lasker ............................... 171a

59

1 a

## DOCKET ENTRIES

COMPLAINT Filed April 8, 1969

ANSWER Filed April 30, 1969

MOTION FOR SUMMARY JUDGMENT Filed December 21, 1972

PAPERS IN OPPOSITION TO THE MOTION Filed March 8, 1973

OPINION OF JUDGE LASKER Filed October 18, 1973

000000004078

80 a

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - -x
                       :

JEROME SIEGEL and JOSEPH SHUSTER,   :

              Plaintiffs,    :

    -against-               :

NATIONAL COMICS PUBLICATIONS, INC.,   :      STIPULATION
INDEPENDENT NEWS CO., INC., THE MC
CLURE NEWSPAPER SYNDICATE, HARRY   :
DONENFELD, JACOB LIEBOWITZ, PAUL H.
SAMPLINER and WAYNE BORING,       :

             Defendants.   :
- - - - - - - - - - - - - - - - - - - - -x

IT IS HEREBY STIPULATED AND AGREED between the above named parties and their respective attorneys, as follows:

1.  The interlocutory judgment entered herein on the 13th day of April, 1948, shall be in all respects vacated.

2.  The complaint herein shall be dismissed as to each and every cause of action alleged therein as to all defendants.

3.  The plaintiffs shall be paid by the defendant NATIONAL COMICS PUBLICATIONS, INC., the sum of NINETY FOUR THOUSAND THIRTEEN DOLLARS AND SIXTEEN CENTS ($94,013.16) as and for all sums due and owing to them under and pursuant to the terms of the following agreements, as modified:

(a)  Agreement dated December 4, 1947 between DETECTIVE COMICS, INC. and JEROME SIEGEL and JOSEPH SHUSTER.

(b)  Agreement dated September 22, 1938 between DETECTIVE COMICS, INC. and JEROME SIEGEL and JOSEPH SHUSTER.

61

81 a

(c)  Agreement dated September 22, 1938 between DETECTIVE COMICS, INC., JEROME SIEGEL, JOSEPH SHUSTER and THE MC CLURE NEWSPAPER SYNDICATE.

(d)  Agreement dated December 19, 1939 between DETECTIVE COMICS, INC. and JEROME SIEGEL and JOSEPH SHUSTER.

4.  All of the said agreements as originally made and as modified, are valid.

5.  All of said agreements as originally made and as modified, are terminated insofar as plaintiffs may have any rights under and by virtue of said agreements, or any of them.

6.  By virtue of the instrument of March 1, 1938, plaintiffs validly transferred to DETECTIVE COMICS, INC., one of the constituent corporations of defendant NATIONAL COMICS PUBLICATIONS, INC., all of their rights in and to the comic strip SUPERMAN, including the title, names, characters, concept and formula, as same were set forth in the first release of said comic strip published in the June, 1938 issue of the magazine "Action Comics" and by virtue of said instrument, said DETECTIVE COMICS, INC. became the absolute owner of the comic strip SUPERMAN, including the title, names, characters, concept and formula as the same were set forth in the said first release.

7.  Defendant NATIONAL COMICS PUBLICATIONS, INC. is the sole and exclusive owner of and has the sole and exclusive right to the use of the title SUPERMAN and to the conception, idea, continuity, pictorial representation and formula

62

82 a

of the cartoon feature SUPERMAN as heretofore
portrayed and published, and to create, publish,
sell and distribute and to cause to be created,
published, sold and distributed cartoon or other
comic strip material containing the characters
SUPERMAN (also known as "Clark Kent"), LOIS LANE,
PERRY WHITE and all other characters which have
heretofore appeared in said cartoon or other comic
strip material, and such sole and exclusive owner-
ship includes, but is not limited to, the fields of
book and magazine publications, newspaper syndica-
tion, radio broadcasts, dramatic presentations,
television, motion picture reproduction and all
other forms of reproduction and presentation,
whether now in existence or that may hereafter be
created, together with the absolute right to
license, sell, transfer or otherwise dispose of
said rights.

       8.  Plaintiffs shall and do hereby
consent to a judgment enjoining and restraining them,
their agents, servants and employees, from creating,
publishing, selling or distributing, or permitting
or causing to be created, published, sold or distri-
buted any material of the nature heretofore created,
produced or published under the title SUPERMAN, or
any material created, produced or published in
imitation thereof, or from using, permitting or caus-
ing to be used in connection with any comic strip or
other material created by them the title SUPERMAN or
any title imitative of the title SUPERMAN, or which
shall contain as part thereof the word "SUPER".

63

000000085   081

83 a

9.    Defendant NATIONAL COMICS PUBLICATIONS,
INC. is the sole and exclusive owner of and has the
sole and exclusive right to the use of the title
SUPERBOY and to create, publish, sell and distribute and
to cause to be created, published, sold and distributed
cartoon or other comic strip material containing the
character SUPERBOY and all other characters which
have heretofore appeared in said cartoon or other
comic strip material and such sole and exclusive
ownership includes, but is not limited to, the
fields of book and magazine publications, newspaper
syndication, radio broadcasts, dramatic presentation,
television, motion picture reproduction and all other
forms of reproduction and presentation whether now
in existence or that may hereafter be created, to-
gether with the absolute right to license, sell,
transfer or otherwise dispose of said rights.

10.    Plaintiffs shall and do hereby consent to
a judgment enjoining and restraining them, their
agents, servants and employees, from creating, pub-
lishing, selling or distributing, or permitting or
causing to be created, published, sold or distributed
any material of the nature heretofore created, pro-
duced or published under the title SUPERBOY, or any
material created, produced or published in imitation
thereof, or from using, permitting or causing to be
used in  connection with any comic strip or other
material created by them the title SUPERBOY or any
title imitative of the title SUPERBOY.

64

000000082

84 a

9. Defendant NATIONAL COMICS PUBLICATIONS,
INC. is the sole and exclusive owner of and has the
sole and exclusive right to the use of the title
SUPERBOY and to create, publish, sell and distribute and
to cause to be created, published, sold and distributed
cartoon or other comic strip material containing the
character SUPERBOY and all other characters which
have heretofore appeared in said cartoon or other
comic strip material and such sole and exclusive
ownership includes, but is not limited to, the
fields of book and magazine publications, newspaper
syndication, radio broadcasts, dramatic presentation,
television, motion picture reproduction and all other
forms of reproduction and presentation whether now
in existence or that may hereafter be created, to-
gether with the absolute right to license, sell,
transfer or otherwise dispose of said rights.

10. Plaintiffs shall and do hereby consent to
a judgment enjoining and restraining them, their
agents, servants and employees, from creating, pub-
lishing, selling or distributing, or permitting or
causing to be created, published, sold or distributed
any material of the nature heretofore created, pro-
duced or published under the title SUPERBOY, or any
material created, produced or published in imitation
thereof, or from using, permitting or causing to be
used in  connection with any comic strip or other
material created by them the title SUPERBOY or any
title imitative of the title SUPERBOY.

65

85 a

11. Plaintiffs shall and do hereby consent to a judgment enjoining and restraining them, their agents, servants and employees, from

(a) Representing their past connection with the comic strips SUPERMAN and/or SUPERBOY in such manner as may be likely to induce the belief that such past connection still exists;

(b) Making any representation as to such past connection in conjunction with any material, comic or otherwise, hereafter issued by plaintiffs or either of them, or with their consent or on their behalf, more than half as conspicuous as to size, or more conspicuous as to color, type of lettering or style of print than the name or title of any such hereafter issued material, or in any other manner as may be likely to induce the belief that defendant NATIONAL COMICS PUBLICATIONS, INC. is or may be associated with such hereafter issued material; and

(c) Using any colors, lettering and/or printing in referring to the words SUPERMAN and/or SUPERBOY imitative of the colors, lettering and/or printing now or hereafter used by defendant NATIONAL COMICS PUBLICATIONS, INC. in portraying said words or either of them.

12. Defendant NATIONAL COMICS PUBLICA-TIONS, INC. is the sole and exclusive owner, with all rights of absolute ownership thereto appertaining,

66

000000088084

86 a

in and to the comic strips entitled Batman; Lois
Lane, Girl Reporter; Slam Bradley; Johnny Quick;
The Flash; Green Lantern, Aquaman; Air Wave; Hour-
Man; Wonder Woman; Star-Man; Dr. Fate; Hawkman;
Crimson Avenger; The Ultra-Man; TNT and Dan the
Dyna-Mite; Manhunter; The Gay Chost; Newsboy
Legion starring the Guardian; Tarantula; Mr.
Terrific; Sandman; The Atom; The Green Arrow;
Dr. Mid-Nite; Genius Jones; Scribbly and The Red
Tornado; Robin, the Boy Wonder; and Liberty Belle.

Dated:    New York, N.Y.
          May // , 1948.

Document signed
By the Parties and
Their attorneys
and their signatures
were acknowledged
By a notary public

_____
Jerome Siegel

_____
Joseph Shuster

NATIONAL COMICS PUBLICATIONS, INC.

By _____
        Vice-President

INDEPENDENT NEWS CO., INC.

By _____
         President

THE MC CLURE NEWSPAPER SYNDICATE

By _____
   Treasurer

_____
Harry Donenfeld

_____
Jacob Liebowitz

_____
Paul H. Sampliner

67

000000089
085

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
        COUNTY OF WESTCHESTER

*1099-1947*

- - - - - - - - - - - - - - - - - - - - -x

JEROME SIEGEL and JOSEPH SHUSTER,                    :

                                  Plaintiffs,        :   *203*

            -against-                                :   *305*

NATIONAL COMICS PUBLICATIONS, INC., INDEPENDENT      :
NEWS CO., INC., THE MC CLURE NEWSPAPER SYNDICATE,
HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H.
SAMPLINER and WAYNE BORING,                          :

                                  Defendants.        :

- - - - - - - - - - - - - - - - - - - - -x

        The above-entitled action having been duly referred
to the undersigned, pursuant to stipulation of the parties
herein, as Referee to hear, try and determine with findings
of fact and conclusions of law, and the said matter having
duly come on to be heard before the undersigned, and the
plaintiffs having appeared by SLONIM, WEKSTEIN & FRIEDMAN,ESQS.,
their attorneys (MORTON WEKSTEIN, ESQ.,of counsel, and the de-
fendants NATIONAL COMICS PUBLICATIONS,INC., INDEPENDENT NEWS
CO.,INC., HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H.SAMPLINER,
having appeared by WEIL, GOTSHAL & MANGES, ESQS.,their attor-
neys (HORACE S. MANGES,ESQ., EDWARD C.WALLACE,ESQ., and
ABRAHAM I. MENIN,ESQ., of counsel), and the defendant THE
MC CLURE NEWSPAPER SYNDICATE, having appeared by JOHN L.
MC CORMICK,ESQ., its attorney (JAMES L.BROWN,ESQ., of counsel),
and the defendant WAYNE BORING having appeared by his attorney
SIDNEY H. REICH,ESQ., and the Referee's oath having first been
taken, and the proofs and allegations of the parties having
been heard, and due deliberation having been had, I do find
and decide as follows, stating my findings of fact and con-
clusions of law:

## FINDINGS OF FACT

1.  Defendants NATIONAL COMICS PUBLICATIONS, INC., INDEPENDENT NEWS CO., INC. and THE MC CLURE NEWSPAPER SYNDICATE are corporations duly organized and existing under the laws of the State of New York; DETECTIVE COMICS, INC. was a corporation duly organized and existing under the laws of the State of New York, and was one of the constituent corporations consolidated on September 30, 1946 into defendant NATIONAL COMICS PUBLICATIONS, INC..

2.  Defendant NATIONAL COMICS PUBLICATIONS, INC., at all times hereinafter mentioned, was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

3.  Defendant INDEPENDENT NEWS CO., INC., at all times hereinafter mentioned, was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

4.  Defendant THE MC CLURE NEWSPAPER SYNDICATE, at all times hereinafter mentioned, was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

5.  Previous to September 30, 1946, DETECTIVE COMICS, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of New York.

6.  Previous to October 1, 1946, SUPERMAN, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of New York, and the said corporation was organized by DETECTIVE COMICS, INC. and the defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and at all times hereinafter mentioned the officers and directors of SUPERMAN, INC. were the same persons who were the officers and directors of DETECTIVE COMICS, INC.

and all facts known to DETECTIVE COMICS, INC. were known to
SUPERMAN, INC., and at all times hereinafter mentioned
SUPERMAN, INC. was completely controlled by DETECTIVE COMICS,
INC., and the defendants HARRY DONENFELD, JACOB LIEBOWITZ
and PAUL H. SAMPLINER.

7.  On or about the 30th day of September, 1946,
Detective Comics, Inc., All American Comics, Inc., Superman,
Inc., Jolaine Publications, Inc., Wonderwoman Publishing Co.,
Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc.,
and Trafalgar Printing Co., Inc. consolidated into a single
corporation pursuant to the provisions of Sections 85 to 90
of the Stock Corporation Law of the State of New York, the
same being the defendant NATIONAL COMICS PUBLICATIONS, INC.

8.  Plaintiffs are the originators and authors
of the cartoon character SUPERMAN and of the title SUPERMAN
and first created cartoon material in which the said character
and title first appeared in 1934 and continued to create such
cartoon material until the institution of the present action,
and the plaintiffs are the authors and originators of
other cartoon characters which have appeared in the cartoon
strip entitled SUPERMAN, chief among which are SUPERMAN,
also known as Clark Kent, Lois Lane and Perry White, and the
plaintiffs are known to the public as the authors and
creators of the cartoon material in which the character
SUPERMAN appears and of the character SUPERMAN and of other
cartoon characters which appear and have appeared in cartoons
entitled SUPERMAN.

9.  Some time in 1933 plaintiff SIEGEL conceived
the idea of a cartoon strip, the feature character of which

would be a man of superhuman strength and power, who would perform feats of great magnitude for the public good.

10. Plaintiff SIEGEL, together with plaintiff SHUSTER, an artist, prepared a comic strip containing separate panels embodying SIEGEL'S idea which was submitted to numerous publishers and newspaper syndicates, but was uniformly rejected.

11. After the joint creation of the SUPERMAN strip panels in 1933, plaintiffs collaborated in creating other cartoon strips, some of which were purchased by Nicholson Publishing Company for resale to DETECTIVE COMICS, INC.

12. In the latter part of 1937, Nicholson Publishing Company went out of business and DETECTIVE COMICS, INC. acquired some of its magazine properties.

13. On December 4, 1937, defendant LIEBOWITZ, representing DETECTIVE COMICS, INC., met plaintiff SIEGEL in New York City.

14. At the said conference defendant LIEBOWITZ proposed to plaintiff SIEGEL that the $9. page rate which Nicholson Publishing Company had been paying plaintiffs for certain comic strips, be increased to $10.

15. At the said conference DETECTIVE COMICS, INC. entered into a written contract of employment (Def. Ex. C), with plaintiffs with reference to two comic features known as "Slam Bradley" and "The Spy", the material for which

plaintiffs had been furnishing Nicholson Publishing Company; said contract provided in part as follows:

"2.  The Employees agree to give their exclusive services as artists in producing features known as "Slam Bradley" and "The Spy" during said period of employment, to the Employer, and agrees that all of these products and work done by said Employee for said Employer during said period of employment, shall be and become the sole and exclusive property of the Employer, and the Employer shall be deemed the sole creator thereof, the Employee acting entirely as the Employer's employee.

"3.  In the event that the Employee leaves the service of the Employer prior to the termination date set forth in this Agreement or subsequent thereto, and for any reason whatsoever, the Employees agree that they will not, directly or indirectly, and through any means whatsoever, use, duplicate, simulate or bring into being any of the products or work or creations of characters or plots used, made or created by him while in the employ of the Employer.

"4.  It is understood that any new and additional features which the Employees produce for use in a comic magazine are to be first submitted to the Employer, who reserves the right to accept or reject same within a period of Sixty days."

16.  At the said conference defendant LIEBOWITZ and plaintiff SIEGEL discussed the possibility of DETECTIVE COMICS, INC. publishing a new magazine and plaintiffs furnishing new comic strips for such magazine; defendant LIEBOWITZ told plaintiff SIEGEL that if DETECTIVE COMICS, INC. published such a magazine and accepted and published any comic features created by plaintiffs, they would be paid at the increased rate of $10. per page, but that DETECTIVE COMICS, INC. would have to own all rights to such comic features.

17.  Early in 1938, DETECTIVE COMICS, INC. decided to publish a new comic magazine to be called "Action Comics".

18.  Thereupon, DETECTIVE COMICS, INC. inquired of defendant THE MC CLURE NEWSPAPER SYNDICATE as to whether the

latter had any available material suitable for the proposed magazine "Action Comics".

19.  Defendant THE MC CLURE NEWSPAPER SYNDICATE, then submitted to DETECTIVE COMICS, INC. the SUPERMAN comic strip created by plaintiffs, which strip consisted of a few panels suitable for newspaper syndication (Pl. Ex. 2).

20.  The said SUPERMAN comic strip material had been rejected by defendant THE MC CLURE NEWSPAPER SYNDICATE, but had remained in its custody for a long time.

21.  DETECTIVE COMICS, INC. examined the said SUPERMAN material and returned it to plaintiffs for revision and expansion into a full length thirteen page comic strip release suitable for magazine publication.

22.  Plaintiffs revised and expanded the said SUPERMAN material in compliance with the said request of DETECTIVE COMICS, INC. and on or about February 22, 1938 resubmitted such revised and expanded material to DETECTIVE COMICS, INC.  Said material, consisting of ninety-nine separate panels, constituted the formula for the continuing SUPERMAN series to come.  It depicted and narrated the origin of the character SUPERMAN, and contained a complete delineation of the pictorial representation of SUPERMAN, of his habits and character, of the superhuman powers and attributes with which SUPERMAN was endowed and of the sphere of public good which SUPERMAN exploits were to enhance.

6

23.   Previous to March 1, 1938, there was due and owing by DETECTIVE COMICS, INC. to the plaintiffs the sum of $130.00, and the $130.00 recited as consideration in Plaintiffs' Exhibit 11 is the same $130.00 which was previously due and owing by DETECTIVE COMICS, INC. to the plaintiffs on or about February 22, 1938.

24.   On March 1, 1938, prior to the printing of the first issue of "Action Comics", DETECTIVE COMICS, INC. wrote to plaintiff SIEGEL at Cleveland, Ohio, where he and plaintiff SHUSTER both resided, enclosing a check in the sum of $412. which included $130. in payment of the first thirteen page SUPERMAN release at the agreed rate of $10. per page, and a written instrument for plaintiffs' signatures (Pl. Ex. 11).

25.   Said instrument, dated March 1, 1938, read as follows:

"Detective Comics, Inc.
480 Lexington Avenue
New York, N.Y.

"I, the undersigned, am an artist or author and have performed work for strip entitled "SUPERMAN".

"In consideration of $130.00 agreed to be paid me by you, I hereby sell and transfer such work and strip, all good will attached thereto and exclusive right to the use of the characters and story, continuity and title of strip contained therein, to you and your assigns to have and hold forever and to be your exclusive property and I agree not to employ said characters or said story in any other strips or sell any like strip or story containing the same characters by their names contained therein or under any other names at any time hereafter to any other person, firm or corporation, or permit the use thereof by said other parties without obtaining your written consent therefor. The intent hereof is to give you exclusive right to use and acknowledge

7

21

that you own said characters or story and the use thereof, exclusively.  I have received the above sum of money.

                     Sgd.  Joe Shuster

                     Sgd.  Jerome Siegel

Accepted:

DETECTIVE COMICS, INC.

By  Sgd.  J.S. Liebowitz"

26.  The instrument of March 1, 1938 (Pl. Ex. 11) was duly received by mail at Cleveland, Ohio, by plaintiffs, who thereupon executed it, and on March 3, 1938 returned it by mail to DETECTIVE COMICS, INC.

27.  On or about the 3rd day of March, 1938, the plaintiffs executed an instrument dated March 1, 1938, which granted to DETECTIVE COMICS, INC. certain rights with respect to the comic strip SUPERMAN, which instrument has been received in evidence and marked Plaintiffs' Exhibit 11.

28.  The instrument of March 1, 1938 (Pl. Ex. 11) was executed by plaintiffs by reason of their desire to see SUPERMAN in print and in order to induce its publication by DETECTIVE COMICS, INC.

29.  The instrument of March 1, 1938 (Pl. Ex. 11) represented the exercise by DETECTIVE COMICS, INC. of the option granted to it by the said agreement of December 4, 1937 (Def. Ex. C).

30.  Upon receipt by DETECTIVE COMICS, INC. of the instrument of March 1, 1938 (Pl. Ex. 11), it published the first SUPERMAN release in the June, 1938 issue of "Action Comics", which magazine was issued for sale on April 18, 1938.

22

31.   The first thirteen pages of SUPERMAN material
were published on April 18, 1938, in the June, 1938 issue of
"Action Comics" magazine.

32.   The first thirteen pages of SUPERMAN material
mentioned in paragraph 31 hereof were in existence and were
inthe possession of DETECTIVE COMICS, INC. before the execu-
tion of the instrument of March 1, 1938, Plaintiffs' Exhibit 11.

33.   The said first thirteen pages of SUPERMAN
material mentioned in paragraphs 31 and 32 hereof and the
panels submitted in Plaintiffs' Exhibit 2 were the only
SUPERMAN material which had been submitted by the plaintiffs to
DETECTIVE COMICS, INC. and which had come into the possession
of DETECTIVE COMICS, INC. previous to the execution and
delivery of the instrument of March 1, 1938, Plaintiffs'
Exhibit 11.

34.   Plaintiffs' desire to see SUPERMAN in print
and the realization of that desire by DETECTIVE COMICS, INC.'S
acceptance of the SUPERMAN strip for publication and actually
publishing it, were vital elements of consideration supporting
the instrument of March 1, 1938 (Pl. Ex. 11).

35.   Between March, 1938 and March, 1947
DETECTIVE COMICS, INC. expended large sums of money and
devoted much time and effort in the promotion and popular-
ization of the comic strip SUPERMAN and the names and
characters appearing therein.

36.   The said June, 1938 issue of "Action Comics"
was followed by further issues published at regular intervals,
each succeeding issue having a SUPERMAN comic strip prepared
by plaintiffs, who continue to be paid by DETECTIVE COMICS,
INC. at the agreed rate of $10. per page.

37.   During September of 1938, DETECTIVE COMICS, INC. and the defendants HARRY DONENFELD and JACOB LIEBOWITZ made oral representations to the plaintiffs that DETECTIVE COMICS, INC. owned SUPERMAN and had the power to discharge the plaintiffs at any time and to cease receiving at the hands of the plaintiffs any comic strip material depicting SUPERMAN, and to cease publishing any such material created by the plaintiffs and could thereafter legally continue to produce literary and artistic material depicting SUPERMAN, and the plaintiffs would be powerless to thereafter create and publish any material depicting SUPERMAN and powerless to receive any revenue from SUPERMAN.

38.   In September, 1938 DETECTIVE COMICS, INC. represented to plaintiffs that it owned all rights to SUPERMAN.  Said representation was believed by DETECTIVE COMICS, INC. to be true, and was, in fact, true.

39.   On September 22, 1938, two agreements were simultaneously executed, one of which was between DETECTIVE COMICS, INC. and plaintiffs, and the other was between DETECTIVE COMICS, INC., plaintiffs and THE MC CLURE NEWSPAPER SYNDICATE.

40.   Both of said agreements were forwarded by mail by DETECTIVE COMICS, INC. to plaintiff SIEGEL at Cleveland, Ohio, for signature by both plaintiffs; they were duly executed by both plaintiffs and returned by plaintiff SIEGEL by mail to DETECTIVE COMICS, INC. on September 30, 1938.  In all negotiations leading to the execution of said agreements of September 22, 1938, plaintiff SIEGEL acted for himself and for plaintiff SHUSTER and was duly authorized so to do by plaintiff SHUSTER.

10

24

096

41.  On or about September 28, 1938, DETECTIVE COMICS, INC. mailed to the plaintiffs for the purpose of execution by the plaintiffs the documents herein received in evidence and marked Plaintiffs' Exhibits 14 and 15, and enclosed in the same wrapper was the letter herein received in evidence and marked Plaintiffs' Exhibit 12.

42.  In the said letter, Plaintiffs' Exhibit 12, DETECTIVE COMICS, INC. made in writing to the plaintiffs the representation that DETECTIVE COMICS, INC. owned SUPERMAN and that the said DETECTIVE COMICS, INC. had the right to any time replace the plaintiffs in the creation of material depicting SUPERMAN and to continue to publish such material without receiving the same at the hands of the plaintiffs, and that the plaintiffs would be "the loser in the entire transaction".

43.  In the same letter, Plaintiffs' Exhibit 12, DETECTIVE COMICS, INC. and the defendant JACOB LIEBOWITZ represented that in a certain popularity poll held immediately before September 28, 1938, 30% of the returns from the readers designated SUPERMAN as the favorite comic strip feature.

44.  The agreement dated September 22, 1938 (Pl. Ex. 14), between plaintiffs and DETECTIVE COMICS, INC. provided for plaintiffs' employment for five years from September 22, 1938 with an option in favor of DETECTIVE COMICS, INC. for an additional five years.

45.  By said agreement, plaintiffs expressly confirmed that DETECTIVE COMICS, INC. was the exclusive owner

25

11

of the comic strip known as SUPERMAN and of the right to
publish said comic strip and the characters contained
therein and the continuity thereof, and further provided
that plaintiffs would not,

> "hereafter at any place in the United States
> or in any foreign country, furnish to any
> other person, firm, corporation, newspaper
> or magazine any art or copy for any comics
> to be used in any strip or comic or news-
> paper or magazine containing the above titles
> or the characters or continuity thereof or in
> any wise similar thereto, but you shall furnish
> such material exclusively to us for the dura-
> tion of this agreement as such matter may be
> required by us or as designated by us in writing."

46.  By the terms of said agreement, DETECTIVE
COMICS, INC. agreed to pay plaintiffs for SUPERMAN magazine
strips (referred to by the parties as "releases") at the
rate of $10. per page and to pay them from 65% to 80% of
any income received by DETECTIVE COMICS, INC. from defendant
THE MC CLURE NEWSPAPER SYNDICATE, under the newspaper syndica-
tion agreement of the same date.

47.  By the terms of said newspaper syndication
agreement (Pl. Ex. 15), defendant THE MC CLURE NEWSPAPER
SYNDICATE, was given an eight months option dating from
October 1, 1938 for newspaper syndication of SUPERMAN.

48.  Defendant THE MC CLURE NEWSPAPER SYNDICATE
availed itself of said option.

49.  By the terms of said newspaper syndication
agreement, defendant THE MC CLURE NEWSPAPER SYNDICATE agreed
to pay DETECTIVE COMICS, INC. 40% to 50% of the net proceeds
from such syndication; this agreement was for a period of
five years from June 1, 1939 with the right in defendant THE
MC CLURE NEWSPAPER SYNDICATE to renew for a further period
of five years.

26

50. Defendants HARRY DONENFELD, JACOB LEIBOWITZ and PAUL H. SAMPLINER were the officers and directors of DETECTIVE COMICS, INC. until October 1, 1946, and have been since October 1, 1946, and are as of the date of the trial herein, the officers and directors of NATIONAL COMICS PUBLICATIONS, INC. and at all times mentioned in these findings were and are the officers and directors of the defendant INDEPENDENT NEWS CO., INC.

51. Defendants HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H. SAMPLINER and INDEPENDENT NEWS CO., INC. at all times mentioned in these findings knew the terms of the plaintiffs' contracts with DETECTIVE COMICS, INC., Plaintiffs' Exhibit 14 and 15.

52. On December 19, 1939, a modification agreement (Pl. Ex. 22), was entered into between plaintiffs and DETECTIVE COMICS, INC. by which plaintiffs' compensation for SUPERMAN magazine releases was increased to $20. per page, and in addition DETECTIVE COMICS, INC. agreed to pay to plaintiffs 5% of the net proceeds to be derived from commercial exploitation of SUPERMAN other than from magazine and book publication and newspaper syndication.

53. On or about the 19th day of December, 1939, the plaintiffs and the defendant DETECTIVE COMICS, INC. entered into an agreement to modify the contract dated September 22, 1938, and the said agreement to modify the said contract was received in evidence and marked Plaintiffs' Exhibit 22.

27

13

099

54.   During December of 1939 and immediately pre-
vious to the execution of Plaintiffs' Exhibit 22, DETECTIVE
COMICS, INC. and the defendant JACOB LIEBOWITZ represented
to the plaintiffs that DETECTIVE COMICS, INC. owned the
character SUPERMAN and was therefore under no obligation to
pay the plaintiffs anything on account of commercial licensing.

55.   Commencing with the July, 1940 magazine
releases, DETECTIVE COMICS, INC. increased plaintiff's
compensation for SUPERMAN magazine releases to $35. per page,
which, for the usual thirteen page release, amounted to
$455. per release.

56.   In February, 1942, DETECTIVE COMICS, INC.
increased plaintiffs' compensation for SUPERMAN magazine
releases to $500. per release.

57.   In August, 1942, DETECTIVE COMICS, INC. in-
creased plaintiffs' compensation for SUPERMAN magazine
releases to $600. per release.

58.   In March, 1943, by reason of the fact that
plaintiffs were not always able to fulfill their commitments
for production of the art work and continuity for both
magazine use and newspaper syndication, DETECTIVE COMICS, INC.
agreed with plaintiff SIEGEL to pay him the sum of $200. per
release for each SUPERMAN magazine release for which he did
not furnish the continuity and agreed with plaintiff SHUSTER
to pay him the sum of $150. per release for each SUPERMAN
magazine release for which he did not furnish the art work.

28

14

100

59. In June, 1943, DETECTIVE COMICS, INC. increased plaintiffs' compensation for SUPERMAN magazine releases to $1,000. per release.

60. In or about June, 1943, plaintiff SHUSTER commenced to submit his art work for SUPERMAN magazine releases in pencil instead of in ink as he had theretofore done.

61. The cost of having said releases inked was $180.

62. Plaintiff SHUSTER was paid for a time $500. less the sum of $180., or the sum of $320., for each SUPERMAN magazine release submitted in pencil.

63. In July, 1943, plaintiff SIEGEL ceased to submit any continuity to DETECTIVE COMICS, INC. by reason of his induction into the Army of the United States.

64. In December, 1944, DETECTIVE COMICS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he did not furnish the art work to the sum of $200.

65. In March, 1946, DETECTIVE COMICS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he furnished the art work in pencil to $380.

66. On December 12, 1946, defendant NATIONAL COMICS PUBLICATIONS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he furnished the art work in pencil to $500.

29

101

67.  Commencing in 1946, DETECTIVE COMICS, INC. turned over to plaintiffs all of the income received by it from THE MC CLURE NEWSPAPER SYNDICATE from newspaper syndication of SUPERMAN.

68.  In connection with outside commercial exploitation of SUPERMAN during the year 1941, DETECTIVE COMICS, INC. paid plaintiffs a bonus of $500. in lieu of 5% of the net income from that source.

69.  In connection with outside commercial exploitation of SUPERMAN during the year 1942, DETECTIVE COMICS, INC. and SUPERMAN, INC., on its behalf, paid plaintiffs a bonus of $7,000.

70.  SUPERMAN, INC. paid to each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1942, the sum of $2,000.00

71.  In connection with outside commercial exploitation of SUPERMAN during the year 1943, DETECTIVE COMICS, INC. and SUPERMAN, INC., on its behalf, paid plaintiffs a bonus of $6,000.

72.  SUPERMAN, INC. paid each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1943 the sum of $1,500.

73.  In connection with outside commercial exploitation of SUPERMAN during the year 1944, DETECTIVE COMICS, INC. and SUPERMAN, INC. on its behalf, paid plaintiffs a bonus of $6,000.

30

74. SUPERMAN, INC. paid to each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1944 the sum of $1,500.

75. In connection with outside commercial exploitation of SUPERMAN during the year 1945, DETECTIVE COMICS, INC. paid plaintiffs a bonus of $10,000.

76. SUPERMAN, INC. paid the plaintiffs nothing on account of royalties for commercial exploitation of SUPERMAN, for the year 1945.

77. In connection with outside commercial exploitation of SUPERMAN during the year 1946, defendant NATIONAL COMICS PUBLICATIONS, INC. paid plaintiffs the sum of $3,069.56.

78. During the period commencing in December, 1937 and ending March, 1947, plaintiffs received in excess of $400,000. as compensation from DETECTIVE COMICS, INC., SUPERMAN, INC. and defendant NATIONAL COMICS PUBLICATIONS, INC.

79. During the period commencing December 1, 1937 and ending March 1947, the plaintiffs received from DETECTIVE COMICS, INC., SUPERMAN, INC. and the defendant NATIONAL COMICS PUBLICATIONS, INC., in compensation for magazine publication and all outside exploitation including money received as bonuses the sum of $195,196.64.

80. During the period commencing December 19,1939 and ending March 1947, the plaintiffs received from the defendants NATIONAL COMICS PUBLICATIONS, INC. and DETECTIVE COMICS, INC. the sum of $205,998.21 as compensation for the newspaper publication of SUPERMAN.

31

103

81.  On or about August 30, 1943, DETECTIVE COMICS, INC. duly notified each of the plaintiffs in writing of its election to extend the term of the employment contract of September 22, 1938 for an additional five year period from September 22, 1943.

82.  Defendant THE MC CLURE NEWSPAPER SYNDICATE duly notified DETECTIVE COMICS, INC. of its election to extend for five years from June 1, 1944, the term of the newspaper syndication agreement dated September 22, 1938.

83.  Plaintiff SIEGEL upon his return to civilian life in January of 1946 was willing and able to supply the full complement of continuity for all of the needs of newspaper and magazine publication exactly as he had done before the war.

84.  Plaintiff SHUSTER has not established that DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. has rejected any SUPERMAN art work prepared by him, pursuant to any scheme to prevent him from producing SUPERMAN material.

85.  Plaintiff SIEGEL has not established that DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. has rejected any SUPERMAN continuity prepared by him, pursuant to any scheme to prevent him from producing SUPERMAN material.

86.  Some of the continuity furnished by plaintiff SIEGEL after his return to civilian status was deemed by

32

DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-
TIONS, INC. to be unsuitable for publication in comic
magazines designed for juvenile readers and was rejected in
good faith.

87. During the period commencing in June, 1943
down to January, 1946, plaintiff SHUSTER failed to furnish
art work for the SUPERMAN comic strip in sufficient quanti-
ties to meet the requirements of DETECTIVE COMICS, INC.

88. Defendants HARRY DONENFELD, JACOB LIEBOWITZ,
PAUL H. SAMPLINER and INDEPENDENT NEWS CO., INC. did not
agree with each other or with DETECTIVE COMICS, INC.,
SUPERMAN, INC. or THE MC CLURE NEWSPAPER SYNDICATE, to
injure plaintiffs by depriving them of their rights under
their employment contract, or to interfere with, hinder
or impair the performance of such contract by the said
DETECTIVE COMICS, INC., or THE MC CLURE NEWSPAPER SYNDICATE.

89. Plaintiffs elected in their complaint to
rescind the contract dated September 22, 1938, and herein
marked in evidence as Plaintiffs' Exhibits 14 and 15, and
the various modifications thereof, and offered in their com-
plaint to release and discharge DETECTIVE COMICS, INC., THE
MC CLURE NEWSPAPER SYNDICATE and the defendant NATIONAL COMICS
PUBLICATIONS, INC. from any further obligation to perform
the same and did offer in their complaint to return to the
said DETECTIVE COMICS, INC., the defendant THE MC CLURE
NEWSPAPER SYNDICATE and the defendant NATIONAL COMICS PUBLICA-
TIONS,INC. all things which rightfully become theirs upon
such a rescission.

**33**

**105**

90. LOIS LANE is and at all times was a central character in the SUPERMAN comic strip and was and is depicted as a girl reporter.

91. The comic strip LOIS LANE, GIRL REPORTER, was supplied by DETECTIVE COMICS, INC. to defendant THE MC CLURE NEWSPAPER SYNDICATE, without charge for use as a filler by newspapers which carried the comic strip SUPERMAN in order to prevent said newspapers from terminating their syndication agreements with defendant THE MC CLURE NEWSPAPER SYNDICATE as to the comic strip SUPERMAN.

92. From June 1, 1943 to March, 1947, DETECTIVE COMICS, INC. published in magazines, 120 releases of the comic strip SUPERMAN, for which plaintiff SIEGEL did not create the continuity.

93. DETECTIVE COMICS, INC. paid to plaintiff SIEGEL the sum of $200. per release for each of said 120 releases, which sum was accepted by plaintiff SIEGEL in full payment.

94. From July 1, 1943 to March, 1947, DETECTIVE COMICS, INC. published in magazines 130 releases of the comic strip SUPERMAN for which plaintiff SHUSTER did not create the art work.

95. DETECTIVE COMICS, INC. paid to plaintiff SHUSTER the sum of $150. per release for 80 of said releases, and the sum of $200. per release for 50 of said releases, which sums were accepted by plaintiff SHUSTER in full payment.

34

96. On or about September 22, 1943, DETECTIVE COMICS, INC. entered into an agreement, Plaintiffs' Exhibit 56, with the defendant THE MC CLURE NEWSPAPER SYNDICATE, with reference to the comic strip entitled, LOIS LANE, GIRL REPORTER.

97. Thereafter DETECTIVE COMICS, INC. and the said defendant THE MC CLURE NEWSPAPER SYNDICATE did furnish to a newspaper "THE CLEVELAND PLAIN DEALER" various releases of the said comic strip LOIS LANE, GIRL REPORTER.

98. Affixed to the various individual releases of the said comic strip material LOIS LANE, GIRL REPORTER, which was furnished to a newspaper were the names of the plaintiffs as authors of the said individual releases of the said comic strip as published in the newspaper.

99. Plaintiffs were not the authors of the said individual releases of the comic strip LOIS LANE, GIRL REPORTER as published in the newspaper.

100. Plaintiffs did not give their permission for the use of their names as authors of the said releases of the said comic strip material LOIS LANE, GIRL REPORTER as published in the newspaper.

101. DETECTIVE COMICS, INC., the defendant THE MC CLURE NEWSPAPER SYNDICATE and the plaintiffs agreed in Plaintiffs' Exhibit 15 that "net proceeds" for the purposes of computing the plaintiffs' return from the newspaper publication of SUPERMAN should be the entire gross receipts, deducting therefrom only the cost of cuts, mats and proofs

35

107

and it was specifically provided that no other expenses what-
soever should be deductible from gross receipts in order to
arrive at "net proceeds".

102.  In the agreement, Plaintiffs' Exhibit 56,
DETECTIVE COMICS, INC. and the defendant THE MC CLURE NEWS-
PAPER SYNDICATE agreed to and with each other that the
compensation of the artists engaged by DETECTIVE COMICS, INC.
to draw the releases of LOIS LANE, GIRL REPORTER to be fur-
nished by DETECTIVE COMICS, INC. to the defendant THE MC CLURE
NEWSPAPER SYNDICATE for newspaper publication, was to be
deducted from the gross receipts of the SUPERMAN syndication
as "mechanical costs" in computing "net proceeds".

103.  Defendant THE MC CLURE NEWSPAPER SYNDICATE
and DETECTIVE COMICS, INC. did during the period of publica-
tion in said newspaper of LOIS LANE, GIRL REPORTER deduct
from the gross receipts from newspaper syndication of
SUPERMAN the compensation of the artists engaged by DETECTIVE
COMICS, INC. to draw LOIS LANE, GIRL REPORTER, in computing
"net proceeds".

104.  Plaintiffs were not parties to Plaintiffs'
Exhibit 56 and were given no notice by DETECTIVE COMICS, INC.
and the defendant THE MC CLURE NEWSPAPER SYNDICATE of the
existence thereof or the terms thereof.

105.  The existence of the provision in Plaintiffs'
Exhibit 56 for deducting the compensation of the artists en-
gaged by DETECTIVE COMICS, INC. to draw LOIS LANE, GIRL
REPORTER from gross receipts from publication of SUPERMAN

36

108

in newspapers in computing net proceeds was unknown to the plaintiffs until May, 1947, when the plaintiffs received the answer in this action of THE MC CLURE NEWSPAPER SYNDICATE, with a true copy of Plaintiffs' Exhibit 56 attached thereto.

106.   Plaintiffs did not know until May of 1947, at the time they received the answer of the defendant THE MC CLURE NEWSPAPER SYNDICATE, that DETECTIVE COMICS, INC. and the defendant THE MC CLURE NEWSPAPER SYNDICATE had deducted from gross receipts in computing "net proceeds" from the newspaper publication of SUPERMAN, the compensation of the artists who drew the newspaper comic strips LOIS LANE, GIRL REPORTER.

107.   DETECTIVE COMICS, INC. authorized Random House, Inc., an independent book publisher, to publish a book entitled "The Adventures of Superman", for which plaintiffs did not supply the material, except for four illustrations prepared by plaintiff SHUSTER.

108.   Random House, Inc. is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

109.   The book entitled "The Adventures of Superman" is not a collection of SUPERMAN comic strips, but a work of fiction in the form of a full length novel.

110.   The modification agreement dated December 19, 1939, expressly excludes book publication as an item of income in which plaintiffs were entitled to participate.

37

109

111. DETECTIVE COMICS, INC. received payments
from Random House, Inc. which it included (without obliga-
tion so to do) in the gross receipts applicable to commercial
exploitation of SUPERMAN.

112.  "Superman-Tim" was a booklet printed by
Diamond Sales Corporation pursuant to a license from
DETECTIVE COMICS, INC., which contained SUPERMAN material.

113.  "Superman-Tim" was sold to various depart-
ment stores whose names were printed on said booklet and was
distributed gratis to their customers.

114.  "Pyco-Pay" was a booklet distributed to
dentists by Pyco-Pay Company, which contained SUPERMAN
material pursuant to a license from DETECTIVE COMICS, INC.

115.  The booklet "Pyco-Pay" was designed to
teach children the proper care of their teeth and was
distributed by dentists gratis to their young patients.

116.  "The Christmas Book" was a booklet printed
by Diamond Sales Corporation, which contained SUPERMAN
material pursuant to a license from DETECTIVE COMICS, INC.

117.  "The Christmas Book" was sold to depart-
ment stores, which printed their names thereon and distributed
it gratis to their customers.

118.  The booklets "Superman-Tim", "Pyco-Pay"
and "The Christmas Book" were not sold to the public and
were not SUPERMAN comic magazine releases.

38

119. The Kellogg Company, sponsor of the SUPERMAN radio program, printed SUPERMAN material upon cartons of its breakfast food, with the consent of DETECTIVE COMICS, INC.

120. The Kellogg Company made no payment for said SUPERMAN material.

121. R.H. Macy & Co., Inc. caused an advertisement containing SUPERMAN material to be printed in the New York Journal-American on one occasion, in connection with a Thanksgiving Day parade held by R.H. Macy & Co., Inc., which material was printed with the consent of DETECTIVE COMICS, INC.

122. R. H. Macy & Co., Inc. made no payment for said SUPERMAN material.

123. The two agreements of September 22, 1938 between plaintiffs and DETECTIVE COMICS, INC. (Pl. Ex. 14), and plaintiffs, DETECTIVE COMICS, INC. and THE MC CLURE NEWSPAPER SYNDICATE (Pl. Ex. 15), respectively, referred specifically to magazine releases and newspaper syndication, and made no reference to the publication of promotional material.

124. The commercial exploitation of SUPERMAN was first referred to in the modification agreement of December 19, 1939, which agreement expressly provided that DETECTIVE COMICS, INC. had the unrestricted right to grant to others, upon such basis as DETECTIVE COMICS, INC., in its sole discretion, should determine, any rights to repro-

**39**

**111**

duction with respect to the comic strip SUPERMAN, and the titles and characters and continuity thereof.

125.   From November, 1945 to March, 1947, DETECTIVE COMICS, INC., SUPERMAN, INC. and defendant NATIONAL COMICS PUBLICATIONS, INC. published 20 releases of comic strips for which plaintiff SHUSTER created and executed the art work in pencil and for which he accepted the sum of $380. per release in full payment.

126.   In the year 1946 DETECTIVE COMICS, INC. published four releases of the comic strip SUPERMAN, for which plaintiff SIEGEL did not furnish the continuity and for which DETECTIVE COMICS, INC. sent to him its check in full payment, at the rate of $200. per release.

127.   Plaintiff SIEGEL has retained the said check.

128.   During 1946 DETECTIVE COMICS, INC. published four certain releases of the comic strip SUPERMAN entitled "Malten World", "Mad Weather in Metropolis", "Superself" and "Mxyz and the Wonderful Lamp", for which the plaintiff SIEGEL did not furnish the continuity.

129.   DETECTIVE COMICS, INC. delivered to the plaintiff SIEGEL a check in the amount of $1,000. Plaintiffs' Exhibit 59, which was given as payment for the four releases mentioned in paragraph 128 hereof and the additional release entitled "Old Gang of Superboy's".

**40**

26

**112**

130.  The said check, Plaintiff's Exhibit 59, was given on March 15, 1946.

131.  Plaintiff SIEGEL advised DETECTIVE COMICS,INC. that he did not desire to cash the check, Plaintiffs' Exhibit 59, since it included a payment for a release of SUPERMAN bearing in its title the word "SUPERBOY" and that hecould not do anything which would call into question in any way his rightful ownership of the comic strip SUPERBOY.

132.  DETECTIVE COMICS, INC. on July 9, 1946, by letter, Plaintiffs' Exhibit 63, agreed to furnish a new check to plaintiff in place of Plaintiffs' Exhibit 59, which would cover the four releases other than "Old Gang of Superboy's".

133.  Although the same has been duly demanded no other check has ever been given in payment for the four releases mentioned in paragraph 128 of these findings.

134.  Since December 19, 1939 SUPERMAN, INC., DETECTIVE COMICS, INC. and defendant NATIONAL COMICS PUBLICATIONS, INC. received various sums of money from the production of radio programs and motion pictures entitled SUPERMAN, and by the sale of licenses to various persons engaged in commercial enterprises and incurred expenses in connection therewith.

135.  SUPERMAN, INC.; DETECTIVE COMICS, INC. and NATIONAL COMICS PUBLICATIONS, INC. from December 19, 1939 to date have acquired and received large sums of money by

41

27

113

the production of radio features and moving pictures entitled
SUPERMAN, based upon the characters, conception, plot and
incidents created by the plaintiffs, and by the sale of
licenses to various persons engaged in commercial enterprises
permitting the said persons to affix to their products and
to use in the furtherance of the said commercial enterprises
the name and pictorial representation of SUPERMAN.

136.   From December 19, 1939 until the present
time, SUPERMAN, INC., DETECTIVE COMICS, INC. and the defend-
ant NATIONAL COMICS PUBLICATIONS, INC. have had complete
control of all books, records and papers relating to the
matters set forth in paragraph 135 of these findings and
have at all times refused to permit the plaintiffs to examine
said books, records and papers.

137.   During the years 1940, 1941, 1942, 1943,
1944 and 1945 SUPERMAN, INC. and DETECTIVE COMICS, INC.
failed to render any account of the income and expenditures
relating to matters set forth in paragraph 135 hereof and
did refuse to furnish such account during the years 1940,
1941, 1942, 1943, 1944 and 1945.

138.   Plaintiffs during the years 1940, 1941, 1942,
1943, 1944 and 1945 did duly demand the rendering of an
account of the matters set forth in paragraph 135 of these
findings.

139.   On July 8, 1946, SUPERMAN, INC. and DETECTIVE
COMICS, INC. furnished what purported to be an account of the
matters set forth in paragraph 135 hereof for the years 1942

42

114

1943, 1944 and 1945 and that the said account was as claimed
by plaintiffs without substantial information and was insuf-
ficient to constitute an account of the matters dealt with
in paragraph 135 of these findings.

140.  DETECTIVE COMICS, INC. and SUPERMAN, INC.
and the defendants NATIONAL COMICS PUBLICATIONS, INC. have
failed and refused to furnish any account whatsoever of the
matters dealt with in paragraph 135 of these findings for
the years 1940 and 1941.

141.  Defendant NATIONAL COMICS PUBLICATIONS,INC.
during January, 1947 furnished a purported account of the
matters dealt with in paragraph 135 hereof for the year 1946.

142.  The said purported account described in
paragraph 141 was as claimed by plaintiffs incomplete and
furnished insufficient information to constitute an account
of the matters dealt with in paragraph 135 hereof.

143.  Plaintiffs have duly demanded that DETECTIVE
COMICS, INC., SUPERMAN, INC. and the defendant NATIONAL
COMICS PUBLICATIONS, INC. furnish a true and sufficient
account of the matters mentioned in paragraph 135 of these
findings for the years 1940, 1941, 1942, 1943, 1944, 1945
and 1946.

144.  Plaintiffs have duly performed all the
terms and conditions of the contract, Plaintiffs' Exhibits
14 and 15, as modified by Plaintiffs' Exhibit 22, on their
part to be performed up to the commencement of this action.

43

115

145.  Plaintiffs have not established any fraud or duress on the part of any of the defendants.

146.  Defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and DETECTIVE COMICS, INC. and SUPERMAN, INC., did not induce or agree to induce defendant WAYNE BORING to breach an employment agreement with plaintiff SHUSTER.

147.  Defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and DETECTIVE COMICS, INC. and SUPERMAN, INC., did not interfere with or render impossible the performance of any agreement between defendant WAYNE BORING and plaintiff SHUSTER or agree so to do.

148.  Defendant WAYNE BORING did not breach his contract of employment with plaintiff SHUSTER.

149.  Defendant WAYNE BORING did not violate any rights of plaintiff SHUSTER.

150.  Defendant WAYNE BORING did not wrongfully furnish art work to any of defendants.

151.  Defendant WAYNE BORING has not, in any way, injured or damaged plaintiff SHUSTER.

152.  During the term of the agreement set forth in paragraph 153 of plaintiffs' proposed findings, the defendant BORING created cartoon material for DETECTIVE COMICS, INC. and SUPERMAN, INC. portraying the character SUPERMAN and entitled SUPERMAN, and the comic strip LOIS LANE, GIRL REPORTER, which comic strips were both based upon the

44

116

conception, idea, plot, incidents and characters of the
comic strip SUPERMAN, as therefore created by the plaintiffs.

153.  Since the expiration of the employment of
WAYNE BORING by the plaintiff SHUSTER, the defendant BORING,
in the employ of DETECTIVE COMICS, INC., SUPERMAN, INC. and
NATIONAL COMICS PUBLICATIONS, INC., created cartoon material
entitled SUPERMAN which presented the character SUPERMAN
and was based upon the conception, idea, plot, incidents
and character of fhe comic strip SUPERMAN as theretofore
created by the plaintiffs.

154.  Defendants DETECTIVE COMICS, INC. and
SUPERMAN, INC. knew of the plaintiff SHUSTER'S contract with
the defendant BORING, Plaintiffs' Exhibit 101, as subsequently
modified.

155.  On November 30, 1938, plaintiff SIEGEL wrote
to DETECTIVE COMICS, INC. and suggested that the latter
publish a comic strip under the title of SUPERBOY, which
would narrate the adventures of SUPERMAN as a youth.

156.  On or about November 30, 1938, the plain-
tiff SIEGEL, in writing and by mail, submitted to DETECTIVE
COMICS, INC. for its consideration and acceptance or rejec-
tion, for publication, under the terms of the contract dated
September 12, 1938, Plaintiffs' Exhibit 14, a synopsis or
summary of the idea and conception and plan of a new comic
strip to be known as SUPERBOY, the said letter having been
received in evidence and marked Plaintiffs' Exhibit 16.

157.  On December 2, 1938, DETECTIVE COMICS, INC.
deferred consideration of a SUPERBOY comic strip until some
future time. (See Plffs. Ex. 17).

45

158.   DETECTIVE COMICS, INC. did not within six weeks indicate its election to publish the said new comic strip SUPERBOY.

159.   DETECTIVE COMICS, INC. on or about December 2, 1938, by its letter in writing to the plaintiff SIEGEL did elect not to publish the said comic strip SUPERBOY under the terms of the contract dated September 22, 1938, Plaintiffs' Exhibit 14.

160.   During the month of December, 1940, the plaintiff SIEGEL submitted to DETECTIVE COMICS, INC. for its further consideration a complete script or scenario, Plaintiffs' Exhibit 36, containing the continuity, plan and dialogue for the first "release" or "releases" of the proposed new comic strip SUPERBOY, and that the said synopsis contained within itself the entire plan for the future publication of the said comic strip SUPERBOY and the conception of the character SUPERBOY, all set forth with detail and particularity.

161.   The officer and Director of DETECTIVE COMICS, INC. who received on behalf of DETECTIVE COMICS, INC. at the hands of the plaintiff SIEGEL the submission of the letter concerning SUPERBOY, Plaintiffs' Exhibit 16, and the scenario or script, Plaintiffs' Exhibit 36, was JACOB LIEBOWITZ.

162.   DETECTIVE COMICS, INC. did not within six weeks after the submission of the said script or scenario indicate its election to publish the said comic strip SUPERBOY.

46

118

163.    Thereafter and during December of 1944 DETECTIVE COMICS, INC. did publish a certain comic strip release entitled SUPERBOY in a magazine entitled "More Fun Comics".

164.    The said comic strip release entitled SUPERBOY embodied and was based upon the idea, plan and conception contained in the plaintiffs, SIEGEL'S letter to DETECTIVE COMICS, INC. dated November 30, 1938, Plaintiffs' Exhibit 16.

165.    The said release of the said comic strip SUPERBOY published in December of 1944 embodied and was based upon the idea, conception and plan contained in the script or scenario submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC. in December of 1940, the said script being Plaintiffs' Exhibit 36.

166.    Said first thirteen pages of SUPERMAN material mentioned in paragraphs 31, 32 and 33 hereof did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as it was later submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC. in Plaintiffs' Exhibit 16 and Plaintiffs' Exhibit 36.

167.    Said first thirteen pages of SUPERMAN material mentioned in paragraphs 31, 32 and 33 hereof did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as published by DETECTIVE COMICS, INC. and the defendant NATIONAL COMICS PUBLICATIONS, INC. from December, 1944, until the date of the trial herein.

**47**

**119**

168.  The said publication was without the permission of the plaintiff SIEGEL.

169.  Thereafter DETECTIVE COMICS, INC. did publish releases of the said comic strip entitled SUPERBOY in magazines bi-monthly until February of 1946, and monthly thereafter until on or about October 1, 1946.

170.  From the 1st day of October, 1946, until the date of the trial herein, the defendant NATIONAL COMICS PUBLICATIONS, INC. has published monthly in magazines a comic strip entitled SUPERBOY.

171.  All of the comic strip material published under the title SUPERBOY was based upon the idea, plan, conception and direction contained in the letter, Plaintiffs' Exhibit 16.

172.  All of the comic strip material published under the title SUPERBOY was based upon the idea, plan, conception and direction contained in the scenario or script, Plaintiff's Exhibit 36, submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC.

173.  The publication of all comic strip material entitled SUPERBOY was at all times without the permission of the plaintiff SIEGEL.

174.  Plaintiff SIEGEL has received no payment on account of the publication of any of the material entitled SUPERBOY.

175.  All publications of SUPERBOY by DETECTIVE COMICS, INC. from April, 1945 until the 1st day of October,

48

120

1946, and by the defendant NATIONAL COMICS PUBLICATIONS, INC.
from October 1, 1946, until the date of the trial herein,
contained affixed thereto the name of the plaintiffs SIEGEL
and SHUSTER.

176.   The use of the name of the plaintiff SIEGEL,
as alleged in paragraph 175 was without the consent of the
plaintiff SIEGEL.

177.   The officer and director of DETECTIVE COMICS,
INC., who on behalf of DETECTIVE COMICS, INC. caused the
material entitled SUPERBOY to be published as hereinbefore
set forth in these findings was JACOB LIEBOWITZ.

178.   The officer and director of NATIONAL COMICS
PUBLICATIONS, INC., who on behalf of NATIONAL COMICS
PUBLICATIONS, INC. caused the material entitled SUPERBOY
to be published as hereinbefore set forth in these findings,
was JACOB LIEBOWITZ.

179.   Defendant INDEPENDENT NEWS CO., INC. know-
ing of the rights of the plaintiff SIEGEL, under the con-
tracts, Plaintiffs' Exhibits 14 and 15, sold and distributed
to newsdealers for resale to the public throughout the
United States, magazines containing the material entitled
SUPERBOY as hereinabove described and set forth.

180.   All the art work for the SUPERBOY releases
was prepared by plaintiff SHUSTER under the direction of
DETECTIVE COMICS, INC.

**49**

**121**

181.  Plaintiff SHUSTER was paid in full by DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. for all the art work furnished by him in connection with said SUPERBOY comic strip releases.

182.  At the time that publication of the SUPERBOY comic strip was commenced, plaintiff SIEGEL was unavailable to furnish any of the continuity therefor being absent in military service.

183.  Upon the return of plaintiff SIEGEL to civilian status in January, 1946, DETECTIVE COMICS, INC. entered into negotiations with him regarding SUPERBOY, proposing certain payments to him and affording him the opportunity of supplying the continuity for SUPERBOY releases.

184.  No agreement was reached between DETECTIVE COMICS, INC. and plaintiff SIEGEL as a result of the aforesaid negotiations; however, defendant NATIONAL COMICS PUBLICATIONS, INC. has offered to pay plaintiff SIEGEL for SUPERBOY releases heretofore published, the same rate as he was paid for SUPERMAN magazine releases for which he did not furnish the continuity, i. e., at the rate of $200. per release of standard length of thirteen pages.

185.  That the defendants NATIONAL COMICS PUBLICATIONS, INC. and INDEPENDENT NEWS CO., INC., have continued to publish, sell or distribute the said comic strip SUPERBOY and threaten to continue to so publish the same.

50

## CONCLUSIONS OF LAW

     1.  By virtue of the instrument of March 1, 1938,
plaintiffs transferred to DETECTIVE COMICS, INC. all of
their rights in and to the comic strip SUPERMAN including
the title, names, characters and concept as same were set
forth in the first release of said comic strip published in
the June, 1938 issue of the magazine "Action Comics" and by
virtue of said instrument DETECTIVE COMICS, INC. became the
absolute owner of the comic strip SUPERMAN, including the
title, names, characters and concept as the same were set
forth in the said first release.

     2.  The instrument of March 1, 1938 was supported
by valid consideration.

     3.  Any representations by DETECTIVE COMICS, INC.
to plaintiffs that it owned SUPERMAN were neither false nor
fraudulent.

     4.  The two agreements of September 22, 1938,
namely that between DETECTIVE COMICS, INC. and plaintiffs,
and that between DETECTIVE COMICS, INC., plaintiffs and
defendant THE MC CLURE NEWSPAPER SYNDICATE, as originally
made and as thereafter modified, are valid.

     5.  The said agreements of September 22, 1938
were not entered into by plaintiffs under duress nor were
plaintiffs induced to execute the said agreements by any
false or fraudulent representations.

     6.  There have been no material breaches of the
said agreements of September 22, 1938, or of any modifications

thereof, by DETECTIVE COMICS, INC., defendant NATIONAL COMICS

PUBLICATIONS, INC. or defendant THE MC CLURE NEWSPAPER

SYNDICATE.

　　　　7.  The publication by DETECTIVE COMICS, INC. or

SUPERMAN, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC.

of comic strips entitled Batman, Lois Lane, Girl Reporter,

Johnny Quick, The Flash, Green Lantern, Aquaman, Air Wave,

Hour-Man, Wonder Woman, Star-Man, Dr. Fate, Hawkman, Crimson

Avenger, The Ultra-Man, TNT and Dan the Dyna-Mite, Manhunter,

The Gay Ghost, Newsboy Legion starring The Guardian,

Tarantula, Mr. Terrific, Sandman, The Atom, The Green Arrow,

Dr. Mid-Nite, Genius Jones, Scribbly and The Red Tornado,

Robin, The Boy Wonder and Liberty Belle did not violate

any rights of plaintiffs in Superman nor are plaintiffs

entitled to any moneys by reason of such publication.

　　　　8.  Plaintiffs have failed to establish that def-

endants HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H. SAMPLINER

and INDEPENDENT NEWS CO., INC. or any of them conspired

with DETECTIVE COMICS, INC., SUPERMAN, INC. or defendant THE

MC CLURE NEWSPAPER SYNDICATE to injure plaintiffs by depriv-

ing them of any rights under either of said agreements of

September 22, 1938, or any modification thereof.

　　　　9.  Publication by DETECTIVE COMICS, INC. and

defendant NATIONAL COMICS PUBLICATIONS, INC. of the comic

strip entitled LOIS LANE, GIRL REPORTER, did not violate

any rights of plaintiffs.

　　　　10.  No moneys are due and owing by DETECTIVE COMICS,

INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. to

**52**

-2-

**124**

plaintiff SIEGEL for the 120 magazine releases of SUPERMAN
for which he did not furnish the continuity and for which
he received the sum of $200. per release.

11.  No moneys are due and owing by DETECTIVE
COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC.
to plaintiff SHUSTER for the 80 magazine releases of SUPER-
MAN for which he did not furnish the art work and for which
he received the sum of $150. per release.

12.  No moneys are due and owing by DETECTIVE
COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC.
to plaintiff SHUSTER for the 50 SUPERMAN magazine releases
for which he did not furnish the art work and for which he
received the sum of $200. per release.

13.  Plaintiffs are not entitled to an accounting
of any profits received by SUPERMAN, INC. or DETECTIVE
COMICS, INC. from publication of the book entitled "The
Adventures of Superman".

14.  The SUPERMAN material which appeared in the
booklets "Pyco-Pay", "Superman-Tim" and "The Christmas Book",
on the cartons of breakfast food of The Kellogg Company,
and in the advertisement of R. H. Macy & Co., Inc. appearing
in the New York Journal-American constituted outside com-
mercial exploitation of SUPERMAN as defined in the agreement
of December 19, 1939.

15.  No moneys are due and owing by DETECTIVE
COMICS, INC., SUPERMAN, INC. or defendant NATIONAL COMICS
PUBLICATIONS, INC. to plaintiff SHUSTER for magazine releases
of the comic strip SUPERMAN for which plaintiff SHUSTER

53

-3-

125

furnished the art work in pencil and for which he received the sum of $380. per release, nor for any other art work furnished by plaintiff SHUSTER.

16.  The agreements of September 22, 1938, as originally made and as thereafter modified, are not illusory and do not lack mutuality.

17.  Plaintiffs have failed to establish that DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-TIONS, INC. schemed or conspired in any manner to prevent plaintiffs from furnishing the continuity or art work for the SUPERMAN comic strip.

18.  Plaintiff SHUSTER has failed to establish that defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER and DETECTIVE COMICS, INC. and SUPERMAN, INC. or any combination including any of them, conspired to injure plaintiff SHUSTER by inducing defendant WAYNE BORING to breach his agreement with plaintiff SHUSTER or to interfere with the performance of said agreement.

19.  Plaintiff SHUSTER has failed to establish that defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, or any of them, interfered in any manner with any contractual rights existing between plaintiffs and defendant WAYNE BORING.

20.  The evidence fails to sustain the allegations of the complaint against defendants THE MC CLURE NEWSPAPER SYNDICATE and WAYNE BORING.

21.  The complaint is dismissed on the merits as to each and every cause of action alleged therein, as to

54

126

defendants THE MC CLURE NEWSPAPER SYNDICATE and WAYNE BORING,
and judgment is directed to be entered accordingly.

22.  Plaintiffs are entitled to an accounting of
all income and expenses of DETECTIVE COMICS, INC., SUPERMAN,
INC. and defendant NATIONAL COMICS PUBLICATIONS, INC. in
connection with the outside commercial exploitation of
SUPERMAN as defined in the agreement of December 19, 1939.

23.  Defendant NATIONAL COMICS PUBLICATIONS, INC.,
shall account to the plaintiffs for all income and profits ac-
quired by the defendants NATIONAL COMICS PUBLICATIONS, INC.,
INDEPENDENT NEWS CO., INC. and by DETECTIVE COMICS, INC. and
SUPERMAN, INC. through the production of radio features and
moving pictures entitled SUPERMAN and by the sale of com-
mercial licenses of all kinds, and that the profits derived
therefrom be divided according to law, and that the plaintiffs
have their just share thereof.

24.  Defendants shall be perpetually enjoined and
restrained from affixing the names of the plaintiffs to any
published material of any nature whatsoever and from affixing
the names of the plaintiffs to any advertising or from using
the names of the plaintiffs for any commercial purposes what-
soever.

25.  Plaintiff Siegel  is the originator and the
sole owner of the comic strip feature SUPERBOY, and the de-
fendants NATIONAL COMICS PUBLICATIONS, INC. and INDEPENDENT
NEWS CO., INC., their agents, servants and employees are
perpetually enjoined and restrained from creating, publishing,
selling or distributing any comic strip material of the nature

55

now and heretofore sold under the title SUPERBOY, or any
other comic strip material made in imitation of the con-
ception, characters, nature, incidents, action or plot of
the plaintiffs' comic strip SUPERBOY or from using any title
so imitative of SUPERBOY as will be calculated to deceive
the public so that it would believe the so entitled material
to have been created by the plaintiffs.

26. Plaintiff Siegel, as the originator and
owner of the comic strip feature SUPERBOY has the sole and
exclusive right to create, sell and distribute comic strip
material under the title SUPERBOY of the type and nature
heretofore published under that title and of the nature
described in plaintiffs' exhibits 16 and 36.

27. Defendants NATIONAL COMICS PUBLICATIONS, INC.,
and INDEPENDENT NEWS CO., INC. shall account to plaintiff
Siegel for all profits derived from the publication, sale
and distribution of all comic strip material entitled SUPER-
BOY by either of them or by SUPERMAN, INC. or by DETECTIVE
COMICS, INC., and the said profits derived from the said sale,
publication and distribution be divided according to law and
that the plaintiff Siegel have his just share thereof.

Dated: April 12, 1948.

Addison Young
OFFICIAL REFEREE,
Supreme Court, Westchester County

STATE OF NEW YORK, COUNTY OF WESTCHESTER SS.,
I, TIMOTHY C. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS,
WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL
THEREOF FILED IN MY OFFICE ON   4/12/48   AND THAT THE SAME IS A CORRECT
TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL,

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY
FEE PAID                                    3-13-00

56

# EXHIBIT F

1  WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone: 310-858-7888
   Fax:        310-550-7191
5
   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6  Roger L. Zissu (Admitted *pro hac vice*)
   866 United Nations Plaza
7  New York, New York 10017
   Telephone: 212-813-5900
8  Fax:        212-813-5901

9  PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
10 1711 Route 9D
   Cold Spring, NY 10516
11 Telephone: 845-265-2820
   Fax:        845-265-2819
12
   Attorneys for Defendants and Counterclaimant
13
                UNITED STATES DISTRICT COURT
14
        CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
15

16 JOANNE SIEGEL and LAURA          )  Case No. 04-8400 SGL (RZx)
   SIEGEL LARSON,                   )
17                                  )  Hon. Stephen G. Larson, U.S.D.J.
                                    )
18           Plaintiffs,            )
                                    )
19      vs.                         )  **DEFENDANTS' OPPOSITION
                                    )  TO PLAINTIFFS' MOTION FOR
20 WARNER BROS. ENTERTAINMENT       )  PARTIAL SUMMARY
   INC.; TIME WARNER INC.; DC       )  JUDGMENT AND
21 COMICS; and DOES 1-10,           )  MEMORANDUM OF POINTS
                                    )  AND AUTHORITIES IN
22           Defendants.            )  SUPPORT THEREOF**
                                    )
23                                  )  [Defendants' Opposition to Local
                                    )  Rule 56.1 Statement; Declaration of
24                                  )  Michael Bergman and exhibits
                                    )  thereto]
25                                  )
                                    )  Date:    July 23, 2007
26                                  )  Time:    10:00 a.m.
                                    )  Place:   Courtroom 1
27 ─────────────────────────────── )
   AND RELATED COUNTERCLAIMS.       )
28                                  )

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

<u>**TABLE OF CONTENTS**</u>

2

<u>Page</u>

3

TABLE OF AUTHORITIES ................................................................................. iii

4

PRELIMINARY STATEMENT ........................................................................ 1

5

SUMMARY JUDGMENT STANDARD .......................................................... 4

6

DEFENDANTS' STATEMENT OF FACTS, INCLUDING
RELEVANT DISPUTED MATERIAL FACTS.............................................. 5

7

     A.    The Origins of Superman ................................................................. 5

8

         1.    Action Comics No. 1 and the March 1, 1938
Assignment ............................................................................ 5

9

         2.    Siegel and Shuster's Further Grants to DC ....................... 8

10

         3.    The Development of Superman by DC
in Derivative Works............................................................. 9

11

     B.    The Prior Litigation Between the Parties'
Predecessors ................................................................................... 11

12

         1.    The Westchester Action.................................................... 11

13

         2.    Corrections of Plaintiff's Statement of Facts
With Respect to Westchester Action ...................... 12

14

         3.    The Prior Federal Action .................................................. 13

15

     C.    Termination Rights Under § 304(c) of the 1976 Act ........................ 15

16

     D.    Plaintiffs' Superman Notices of Termination And
Filing And Filing of These Actions ................................................... 16

17

     E.    The Parties' 2001 Settlement ........................................................... 18

18

     F.    Corrections With Respect to Plaintiffs' Settlement
Concerning Judge Lew's Decision in The Superboy
Action.................................................................................................. 25

19

ARGUMENT........................................................................................................ 26

20

I.    MATERIAL FACTUAL ISSUES PRECLUDE SUMMARY
JUDGMENT WITH RESPECT TO PLAINTIFFS' RECAPTURE
OF AN UNDIVIDED ONE HALF SHARE OF THE COPYRIGHT
IN ACTION COMICS NO. 1.................................................................. 26

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.    Genuine Issues of Material Fact Preclude Summary Judgment on Defendants' Defense that Portions of Action Comics No. 1 Were Created As "Works Made for Hire"..................................27

    1.    Certain Material Portions Of Action Comics No. 1 Were Created As Works Made For Hire By Siegel And Shuster Or By Third Parties And Thus, Cannot Be Subject To Termination.....................................28

        a.    The Publication Of Action Comics No, 1.......................28

        b.    The Additional Action Comics No. 1 Materials Were Created As "Work For Hire" And Thus Cannot Be Subject To Termination ................................29

            1)    The Addition Of Color To Action Comics No. 1 Was Work Prepared By Regular Employees Of Detective Within The Scope Of Their Employment .............................................. 29

            2)    The Portion Of Action Comics No. 1 Created By Siegel And Shuster After Detective Told Them They "Could Proceed" Were Created At The Instance And Expense Of Detective And Are Thus Work For Hire ............................ 30

    2.    Plaintiffs' Attempts To Demonstrate That The Additional Action Comics No. 1 Materials Are Not Work For Hire Are Without Merit And, At Best, Are Rife With Genuine Issues Of Material Fact. .........................34

        a.    The Existence Of A Written agreement Does Not Affect The Work For Hire Status Of The Additional Action Comics No. 1 Materials .................34

        b.    Plaintiffs' Res Judicata And Collateral Estoppel Argument to Avoid the Work for Hire Status of the Additional Actions Comics No. 1 Materials Are Equally Untenable ...................................................................35

B.    Plaintiffs Failed to Terminate the 1948 Final Judgment, Leaving In Place an Operative Grant of Rights in Superman ...............................................................39

C.    Joanne Siegel's Continued Acceptance of Benefits Under the 1975 Agreement Leaves in Place That Operative Grant.....................................................................40

D.    Genuine Issues of Material Facts Prevent Dismissal of Defendants' Statute of Limitations Defenses ...............................................................................47

ii

1.    The Copyright Act's Statutes Of Limitations Bar Any Civil Action Not Commenced Within Three Years Of The Accrual Of A Claim ....................... 47

2.    Plaintiffs' Attempted Reliance Upon The "Tolling Agreement" Is Misplaced. ........................ 50

a.    Summary Judgment Is Inappropriate Because There Are Genuine Issues Of Material Fact As To When Plaintiffs' Claim Of Co-Ownership Accrued And When The Tolling Agreement Terminated. ................ 50

b.    Regardless Of When The Claim Accrued And When The Tolling Agreement Expired, Any Claims Of Co-Ownership Of Copyright Against Entities Other Than DC Comics Are Time-Barred. ................................ 52

II.    AS A MATTER OF LAW, AN EFFECTIVE TERMINATION PURSUANT TO THE SUPERMAN NOTICES OF TERMINATION CANNOT REQUIRE A PROFIT ACCOUNTING FROM EXPLOITATION OF FOREIGN COPYRIGHT ....................... 53

A.    BACKGROUND: THE ESTABLISHED COPYRIGHT FRAMEWORK IN WHICH TERMINATION MUST BE CONSIDERED ................. 53

1.    Rights of Co-Owners Of Copyright ..................... 53

2.    National Treatment and Territorial Nature of the United States Copyright Act ..................... 54

3.    The Presumption Against The Extraterritorial Effect of U.S. Legislation ................................ 54

B.    Plaintiffs Have Misstated a Joint Owner's Duty to Account Which Only Requires the Co-Owners to Share Its Own Profits ..................... 57

C.    Because Plaintiffs Cannot and Have Not Recaptured Any Ownership Interest in Foreign Copyrights, The Rules Governing Accountings Between Joint Owners Do Not Apply to Profits from Such Foreign Copyrights ..................... 58

D.    Only the Copyright Act, Not State or Any Other Law, Determines the Rights That Can be Recaptured By Means of a Copyright Termination Under Section 304 (c) ..................... 59

iii

1.    In The Copyright Act's Termination Provisions Congress Clearly and Broadly Expressed its Intent that the Terminating Party's Rights Could Not Affect a Grantee's Foreign Copyright Rights or Reach Actions Occurring Outside of the U.S. ........................................... 59

a.    The Copyright Act Does Not Include Any Indication Of Congressional and Intent to Cover Conduct Occurring Outside the U.S. .................. 60

b.    Congress Has Clearly Manifested Its Contrary Intent, To Wit, That Any Termination and Recapture of Copyright Rights Under Sections 304(c) and 203 Cannot Apply to Any Conduct Occurring Outside the Country. ........................................ 61

2.    Plaintiffs Do Not Own Any Interest in Foreign Copyright Rights Because These Are Not Subject to Termination ............................................................................. 61

3.    Plaintiffs' Theory That They Have Recaptured a Share of Foreign Copyrights On the Basis of State Common Law General Principles of Accounting Generally Governing The Rights of Property Co-Owners Disregards The Rules of National Treatment and Copyright Preemption .......................................... 65

III.    WHETHER THE PARTIES ENTERED INTO AN ENFORCEABLE AGREEMENT ON OCTOBER 19, 2001 IS A QUESTION OF FACT WHICH CANNOT BE RESOLVED ON SUMMARY JUDGMENT ...................................................................................... 67

A.    It Has been Established In This Action That Mr. Marks Had Full Authority to Act on Behalf of Plaintiffs in Connection with The October 19, 2001 Agreement ........................................................... 69

B.    The Fact That the Parties Contemplated the Later Negotiation and Execution of a Long-Form Contract Does Not Negate the October 19 Agreement as a Matter of Law ........................................ 71

C.    The October 19, 2001 Agreement Is An Acceptance Of DC Comics' Offer And Is Not A "Counteroffer" That Was Rejected By Defendants ......................... 74

D.    Plaintiffs' Parade Of Alleged "Material Differences" Between The October 19, 2001 Agreement, The Schulman Letter, And The February Long Form Is Irrelevant And Misleading .......................... 78

CONCLUSION ................................................................................. 85

1    Shuster that pre-existed their submission of it to Detective. *National II*, 508 F.2d at

2    914. (*National I* together with *National II*, are referred to herein as the "National

3    Litigations").

4        "Under the doctrine of res judicata . . . a <u>final judgment</u> on the merits of an

5    action precludes the parties or their privies from relitigating claims that were or

6    could have been raised in that action." *Marvel Character, Inc. v. Simon*, 310 F.3d

7    280, 286-287 (2d Cir. 2002) ("*Simon*") (emphasis added). The Second Circuit's

8    decision and statement in *National II* is a far cry from *res judicata* with regard to

9    the entirety of the first Superman story published in *Action Comics No. 1*, including

10   the Additional *Action Comics No. 1* Materials authored by Detective's employees.

11       First, nowhere in the record have Plaintiffs provided a final judgment from

12   the National Litigations.

13       Second, the issue that Defendants raise in this action, namely that DC is the

14   copyright proprietor of a *portion* of *Action Comics No. 1* which was created after

15   Siegel and Shuster's preexisting material and as a work for hire, was never raised

16   in the National Litigations, nor, more importantly, could it have been. In the

17   National Litigations, only a finding that *all* of *Action Comics No. 1*, not just the

18   pre-existing material forming most of the first Superman story, was created as work

19   for hire could have achieved National's objective of establishing that Siegel and

20   Shuster were not entitled to the renewal right for all of the material comprising this

21   feature. Section 24 of the 1909 Copyright Act, 17 U.S.C. § 24 (repealed) (the

22   operative act in the National Litigations) permitted the periodical owner, Detective,

23   to obtain the renewal copyright for the whole collective work it published, but also

24   permitted authors who contributed *portions* to a periodical to obtain the renewal

25   copyright in their contributions, provided the same were not works for hire. *See* 3

26   *Nimmer* § 9.03. This is in stark contrast to the issue asserted by Defendants in this

27   case, namely, that because portions of *Action Comics No. 1* were created as work

28   for hire, such portions are not subject to termination under section 304(c) and, as a

37

**135**

1  circumstances of the parties' negotiations,[63] particularly since the parties had
2  already previously reached agreement on all material points as documented in the
3  Marks Letter, and were merely going through the later process of refining the
4  provisions of that agreement into a long-form contract.  Here, the actions of
5  Plaintiffs' representative, Mr. Marks, objectively support only the conclusion that
6  the parties had reached a deal, that the Schulman Letter was not materially
7  inconsistent with that deal, and that what distinctions did exist would be addressed
8  in the long-form documentation.  Accordingly, whether the purportedly "different"
9  terms in the Schulman Letter and the February Draft were material to the parties
10  under the circumstances of this case, or impact in any way on the determination of
11  the earlier formation of their agreement, are questions of fact to be resolved after
12  the taking and weighing of evidence at trial.

13                          *        *        *

14      For the foregoing reasons, Defendants respectfully request that the Court
15  deny Plaintiffs motion for partial summary judgment as to DC Comics' Third and
16  Fourth Alternative Counterclaims in this action.

17                          **CONCLUSION**

18      For the reasons set forth herein, Plaintiffs' motion for partial summary
19  judgment should be denied.

20

21  DATED:      May 29, 2007        Respectfully submitted,

22

23

24                          By  _Michael Bergman_  / AM /
25                              Michael Bergman
                                Attorneys for Defendants and Counterclaimant

26

27  _____
    [63]  *See, e.g., Inamed, supra,* where the court held that items such as license
28  termination, indemnification, sublicenses, transfer of rights, confidentiality, and dispute
    resolution were *not material* terms in the context of the parties' negotiations, because
    they were not the subject of much debate and discussion.  275 F. Supp. 2d at 1122.

**136**