# EXHIBIT H

Joanne Siegel
13929 Marquesas Way #201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Ave. #106
Playa Del Rey, CA 90293

April 16, 2003

Don W. Bulson, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue, Ninteenth Floor
Cleveland, Ohio 44115

Dear Don,

Enclosed are the long awaited volumes of itemized documentation regarding expenses advanced
by us on behalf of the entire Siegel family interest involving the Jerry Siegel copyright
terminations and negotiations.  We are sorry it has taken so long to get these to you and Michael
Siegel but as you will see in the explanation below, our lives have been in turmoil which delayed
our ability to find and xerox some of the documentation you requested.  There are four volumes:

1. MONEY ADVANCED BY JOANNE SIEGEL ON BEHALF OF THE JERRY SIEGEL
   FAMILY THROUGH OCTOBER 17, 2000

2. MONEY ADVANCED BY LAURA SIEGEL LARSON ON BEHALF OF THE JERRY
   SIEGEL FAMILY THROUGH OCTOBER 17, 2000

3. MONEY ADVANCED BY JOANNE SIEGEL ON BEHALF OF THE JERRY SIEGEL
   FAMILY OCTOBER 18, 2000 THROUGH OCTOBER 2002

4. MONEY ADVANCED BY LAURA SIEGEL LARSON ON BEHALF OF THE JERRY
   SIEGEL FAMILY OCTOBER 18, 2000 THROUGH OCTOBER 2002

We would like to explain some of the things that have happened to us between the time our
itemized list of expenses was submitted to you at the end of 2000, your request for detailed
documentation, and after.  All of these made it either difficult to have access to the documents or
hampered our ability to find some of the documents we used to compile the original figures.
At my end, sickness and then a hasty, difficult search for a smaller apartment to cut my expenses
took over.  The disorganized packing of my possessions and papers into more than 200 boxes
done by the movers made regathering checks and receipts now scattered difficult and
tremendously time-consuming.  Then I had to make the actual move, get settled and help Laura
with some of her difficulties.  As you know, Laura's ongoing health disability due to Multiple
Sclerosis presents a daily challenge along with the needs of her two children.  In addition, she
had a number of additional health problems including infections, visits to the ER and finally

DB007

EXHIBIT H
44

Don Bulson
April 16, 2003
Page 2

hospital treatment for the removal of kidney stones which had incapacitated her. Her ex-husband
has constantly been dragging her into court for multiple proceedings involving the separation and
divorce (which are still ongoing) and she has had to spend a great deal of time answering his
Motions and preparing court documents regarding more than 20 years of finances regarding their
marriage. During this time, she also had to box up additional possessions and papers, put them
into storage and temporarily move out of her residence and in with me so that her living room-
dining room, hall and bathroom ceilings which had collapsed due to water damage could be torn
out and repaired. While all this was going on, Laura and I had to constantly deal with time
consuming and complicated developments regarding negotiations with D C on the Superman and
Spectre matters. She also had to make extensive financial aid applications for her sons. Once
Laura was able to move back home, it was difficult for her to relocate some of her receipts and in
the process she found some that had not been previously available to her due to matters involving
her divorce. Once everything was located, the difficult process of mounting and xeroxing
everything for you and explaining everything took additional time.   We have worked long and
hard on the enclosed and you will find it to be very comprehensive.

It is our understanding that you have agreed to pay the full cost of preparing this extensive
documentation. Receipts totaling $134.87 are attached. This amount has been added to the
amount due to Joanne listed below. Any additional costs that Marc Toberoff incurs for postage,
etc, should be reimbursed to him.

As you will see from the attached accounting, Michael Siegel owes Joanne the following:

| | |
|---|---|
| Expense of preparing documentation requested by Don Bulson: | $ 134.87 |
| Michael Siegel's 1/4 share of $300 expenses after Oct. 17, 2000: | 75.00 |
| Michael Siegel's 1/4 share of <-$176.80> adjustment before Oct. 17, 2000 | - 44.20 |
| Michael Siegel owes Joanne Siegel: | $ 165.67 |

He owes Laura the following:

| | |
|---|---|
| Michael Siegel's 1/4 share of $2,644.03 adjustment before Oct. 17, 2000 | $ 661.00 |
| Michael Siegel's 1/4 share of $1,496.50 expenses after Oct. 17, 2000: | $ 374.12 |
| Michael Siegel owes Laura: | $1,035.12 |

DB008

EXHIBIT H
45

Don Bulson
April 16, 2003
Page 3

These amounts will be subtracted by Marc Toberoff from the $13,332.50 that is being held in Trust for Michael Siegel and be distributed in the following manner:

$13,332.50  Amount in Trust
-     165.67  Owed to Joanne Siegel
-   1,035.12  Owed to Laura Siegel Larson
$12,131.71  Owed to Michael Siegel (Minus any costs owed to Marc Toberoff)

As Marc Toberoff and Kevin Marks before him discussed with you, this amount will be released to Michael Siegel once he signs the long-standing conditions discussed between Kevin Marks and you in 2000. These conditions are specified in correspondence and will be elaborated upon by Marc.

Laura and I hope the detailed clarification and documentation answer any questions you and Michael may have had. Again we apologize for the delay in getting this to you and to Michael. Marc Toberoff will handle the details and this will free up money for Michael.

Our warmest regards and best wishes to you and Michael from Laura and me.

Sincerely,                                    Sincerely,

*Joanne Siegel*                              *Laura Siegel Larson*

Joanne Siegel                                Laura Siegel Larson

DB009

EXHIBIT H
46

**Expense of Preparing Documentation Requested by Don Bulson**

*Xeroxing of Documentation Requested by Don Bulson*

**STAPLES**

## STAPLES 365 SAVINGS

Low prices. Every item. Every day.
We 110% Price Match Guarantee It.

8704 South Sepulveda Blvd
Westchester, CA 90045
(310) 342-5113

| SALE | 627203 4 005 63154 |
| | 0950 04/13/03 04:57 |

| QTY SKU | | OUR PRICE |
|---|---|---|
| 733 B&W SELF LTR 3HOLE | | |
| 382068 | 0.070ea | 51.31 |
| 208 1-1000 BW SGL 3HL | | |
| 387073 | 0.070ea | 14.56 |
| SUBTOTAL | | 65.87 |
| Standard Tax 8.25% | | 5.43 |
| TOTAL | | $71.30 |
| | | |
| Check | | 71.30 |
| Auth No. 169005 | | |

## TOTAL ITEMS   941

Compare and Save
with Staples-brand products.

THANK YOU FOR SHOPPING AT STAPLES!

*Xeroxing of Documentation Requested by Don Bulson*

OFFICE DEPOT
8900 S. SEPULVEDA BLVD
LOS ANGELES, CA 90045
310-568-0660

Employee 242478    04/13/03  7.30
Store #0606    Reg #072  Tran #6378
SALE    POS Version 4.11A

8.5X1120LB848RIXPW
788691    22.40
  320 @    0.070
3HOLEPAPERPUNCHING
244750    3.20
  320 @    0.010
LABEL.8163.250CT
7278208163    9.99
CVR.RPRT.BLUE.5PK
5050527103    8.19
CVR.RPRT.BLK.5PK
5050527101    8.19
SUBTOTAL    51.97
CA 8.25% SALES TAX    4.29
TOTAL    56.26

BAN    XXXXXX8692
CHK #    4398
CHECK    56.26
APPROVAL CODE    199472

CHANGE    .00
*****************************

**SAV-ON DRUG #9451**
13171 MINDANAO WAY, MARINA DEL REY

*Photos for Bulson!*
*Michael Siegel*
*Documentation*

Hello, I'm GUS

4/15/03 21:10 9451 07 0103 52    #7.31

ONE HOUR PHO1319    9.19
ONE HOUR PHO1319    7.31
**** TAX    1.36  BAL    17.86
VF    CHECK    17.86
CHANGE    .00
TOTAL NUMBER OF ITEMS SOLD = 2

**DB010**

EXHIBIT H
47

## MONEY ADVANCED BY JOANNE SIEGEL ON BEHALF OF THE JERRY SIEGEL FAMILY THROUGH OCTOBER 17, 2000

As explained in Joanne's attached letter, after the initial list of expenses was compiled and sent to you, Joanne had to move into a smaller apartment to cut her expenses. The movers who packed boxes for her mixed up her papers making it difficult to find some of her checks and receipts. In the process of looking for them, she found some additional receipts she had not originally included. Below is a comparison of the original figures and the ones submitted here.

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---------|-----------------------------------|-------------------------|------------|
| Gang, Tyre, Ramer and Brown 5% commission on advance | $12,500.00 | $12,500.00 | 0 |
| Arthur J. Levine legal fees and costs 1996-Oct. 17, 2000 | $24,202.76 | $23,848.07* It was discovered that Laura had paid $354.69 of one bill | <-$354.69> |
| George Zadorozny legal fees and costs 1994-Oct. 17, 2000 | $14,036.46 | $14,207.67 | + $171.21 |
| Gang, Tyre, Ramer and Brown legal costs 1999-Oct. 17, 2000 | $1,141.74 | $1,156.83 | + $15.09 |
| Kevin Marks DC Comics meeting in New York | $2,097.62 | $2,097.62 | 0 |
| Dennis Larson legal research and costs 1996-1999 | $16,995.00 | $16,995.00 | 0 |
| U.S. Copyright Office filing fees | $18,410.00 | $18,410.00 | 0 |

DB011

EXHIBIT H
48

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---|---|---|---|
| Travel to Washington DC for meetings with U.S. Copyright Office, Arthur Levine and George Zadorozny | $1,385.00 | $1,385.00 | 0 |
| Thomson and Thomson Copyright Report | $420.00 | $420.00 | 0 |
| Laura Lewis legal research | $95.50 | $95.50 | 0 |
| Termination packing supplies | $56.00 | $56.00 | 0 |
| Long distance phone calls, Fed Ex. postage, xeroxing | $192.00 | $192.00 | 0 |
| 5% Interest on money advanced (No interest on $12,500 commission to Gang, Tyre, Ramer and Brown) | $3,951.60 | $3,943.19 | <-$8.41> |
| TOTALS: | $95,483.68 | $95,306.88 | <-$176.80> |

## ACCOUNTING REGARDING EXPENSES ADVANCED BY JOANNE SIEGEL THROUGH OCTOBER 2002:

Michael Siegel's 1/4 share of $300 expenses after Oct. 17, 2000
(See separate document):                                          $75.00

Michael Siegel's 1/4 share of <-$176.80> adjustment above:       - 44.20

Michael Siegel owes Joanne Siegel:                                $30.80

DB012

EXHIBIT H
49

## MONEY ADVANCED BY LAURA SIEGEL LARSON ON BEHALF OF THE JERRY SIEGEL FAMILY THROUGH OCTOBER 17, 2000

As explained in Joanne's attached letter, at the time Laura compiled her original list of expenses, she did not have access to all the necessary financial records due to matters involving her divorce. After the initial list of expenses was sent to you, Laura found additional receipts she had not originally included. Some receipts that her ex-husband has are not available to her. Below is a comparison of the original figures and the ones submitted here.

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---|---|---|---|
| Travel to Washington DC for meetings with U.S. Copyright Office, Arthur Levine and George Zadorozny | $217.27 | $217.27 | 0 |
| Arthur J. Levine legal fees and costs 1996-Oct. 17, 2000 | $354.69 | $354.69 | 0 |
| Arthur J. Levine business meeting in Los Angeles | $95.83 | $95.83 | 0 |
| Gang, Tyre, Ramer and Brown legal costs 1999-Oct. 17, 2000 | $434.78 | $434.78 | 0 |
| Research materials-- books, periodicals, etc.- used to study the history of comics and creations of Jerry Siegel so that a comprehensive search of all U.S. Copyright Office records could be made and appearances of characters in all media could be listed in the Notices | $598.23 | $2,238.44 | + $1,640.21 |

DB013

EXHIBIT H
50

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---|---|---|---|
| Extensive xeroxing by hand of all appearances of Siegel created characters in all media listed in U.S. Copyright Records 1936-1978 on self service coin operated xerox machine at the Downtown Los Angeles Central Library | $530.00 | $2,700.00* Please see lengtby attached explanation. (9 file boxes of xeroxes containing 2,000 pages in each box=18,000 pages times $0.15 per page) | + $2,170.00 |
| Parking at Downtown Los Angeles Central Library during research and xeroxing sessions | $54.00 | $54.00 | 0 |
| Xeroxing of pertinent materials at Motion Picture Academy Library | $53.00 | $53.00 | 0 |
| Internet and online research site expense | $4,510.40 | $3,156.12* Laura's ex-husband has some of the receipts and she does not have access to them | <-$1,354.28> |
| Gayle Harris did on-site research only available at U.S. Copyright Office in Washington DC | $417.53 | $417.53 | 0 |
| Attorneys' Personal Services, Inc. legal research | $297.25 | $160.75 | <-$136.50> |

DB014

EXHIBIT H
51

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---|---|---|---|
| Supplies for printing internet research; writing, binding and labeling Superman List of Works for Notices of Termination; xeroxing Siegel documents for attorneys, etc. | $2,103.62 | $3,091.16 | + $987.54 |
| Computer printer burned out due to overuse while compiling copyright data (9/12/96)--Laura had to replace it but is not charging for it | $383.92 | -- | <-$383.92> |
| Typewriter repairs | $97.46 | $193.57 | + $96.11 |
| Computer became inoperable during the height of preparing the Superman Notices of Termination in 1997. Laura had to replace it at a cost of $1,448.97 but is not charging anything for it | $724.49 (Pro-rated at ½ cost) | -- | <-$724.49> |
| Computer repair when it crashed due to overuse while preparing the Spectre Notices of Termination | -- | $89.97 | + $89.97 |
| Stationery Land-- Oversized metal bindings for Notices of Termination | $43.26 | $43.26 | 0 |

DB015

EXHIBIT H

| EXPENSE | AMOUNT LISTED ON ORIGINAL DOCUMENT | AMOUNT IN THIS DOCUMENT | ADJUSTMENT |
|---|---|---|---|
| Packing supplies and boxes for shipment of the 98 huge Termination volumes to Arthur Levine in Washington DC | $100.97 | $101.20 | + $0.23 |
| Xeroxing and binding the Spectre Notices of Termination | $302.84 | $303.24 | + $0.40 |
| Long distance phone calls to Arthur Levine and George Zadorozny | $572.43 | $501.49 | <-$70.94> |
| Long distance fax charges to Arthur Levine and George Zadorozny | $320.72 | $211.48 | <-$109.24> |
| Postage and Fed Ex | $227.22 | $540.26 | + $313.04 |
| 5% Interest on money advanced | $622.00 | $747.90 | + $200.90 |
| TOTALS: | $13,061.91 | $15,705.94 | $2,644.03 |

## ACCOUNTING REGARDING EXPENSES ADVANCED BY LAURA SIEGEL LARSON THROUGH OCTOBER 2002:

Michael Siegel's 1/4 share of $2,644.03 adjustment above:          $  661.00

Michael Siegel's 1/4 share of $1,496.50 expenses after Oct. 17, 2000
(See separate document):                                           $  374.12

Michael Siegel owes Laura:                                         $1,035.12

DB016

EXHIBIT H

53

## MONEY ADVANCED BY JOANNE SIEGEL ON BEHALF OF THE JERRY SIEGEL FAMILY
## OCTOBER 18, 2000 THROUGH OCTOBER 2002

After the initial list of expenses was compiled and sent to you, Joanne advanced an additional $300 in legal fees to George Zadorozny.  Please see attached documentation.

ACCOUNTING REGARDING EXPENSES ADVANCED BY JOANNE SIEGEL THROUGH OCTOBER 2002:

Michael Siegel's 1/4 share of $300 expenses after Oct. 17, 2000: $75.00

Michael Siegel's 1/4 share of <-$176.80> adjustment
before Oct. 17, 2000 (See separate document)                    - 44.20

Michael Siegel owes Joanne Siegel:                       $30.80

DB017

## MONEY ADVANCED BY LAURA SIEGEL LARSON ON BEHALF OF THE JERRY SIEGEL FAMILY OCTOBER 18, 2000 THROUGH OCTOBER 2002

After the initial list of expenses was compiled and sent to you, Laura advanced additional expenses.  Please see attached documentation.

### ACCOUNTING REGARDING EXPENSES ADVANCED BY LAURA SIEGEL LARSON THROUGH OCTOBER 2002:

| | |
|---|---|
| Michael Siegel's 1/4 share of $1,496.50 expenses after Oct. 17, 2000: | $   374.12 |
| Michael Siegel's 1/4 share of $2,644.03 adjustment before Oct. 17, 2000 (See separate document) | $   661.00 |
| Michael Siegel owes Laura: | $1,035.12 |

DB018

LAW OFFICES OF
# MARC TOBEROFF

April 30, 2003

<u>Via Federal Express</u>

Don W. Bulson, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, Ohio 44115

Dear Don:

Enclosed please find itemized documentation of the expenses advanced by Joanne and Laura Siegel in connection with Jerome Siegel's copyright termination interest ("Termination Interest"), and a detailed letter from Joanne and Laura to you regarding their accounting.

As you can see from the enclosed, Joanne and Laura went to considerable efforts to provide Michael Siegel with a very comprehensive and detailed accounting of their expenses.

Nonetheless, Joanne and Laura have informed me that in the past unjustified claims were made by you on behalf of Michael Siegel challenging Joanne and Laura's entitlement to deduct their expenses prior to distribution of proceeds from the Termination Interest; challenging the amount of such expenses; and arguing that Joanne's widow benefits from DC / Warner Bros. should be deemed proceeds of the Termination Interest.

Accordingly, Joanne and Laura respectfully request that Michael Siegel execute a mutually acceptable settlement and release of his above claims, which is appropriate, prior to their release of funds to Michael per the enclosed accounting. If this is acceptable in principle, I will prepare the settlement and release document for your review.

I look forward to hearing from you. Please feel free to contact me with any questions regarding the enclosed.

Very truly yours,

Marc Toberoff



9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

DB019

EXHIBIT H
56

LAW OFFICES

## RENNER, OTTO, BOISSELLE & SKLAR, LLP

1621 EUCLID AVENUE, NINETEENTH FLOOR
CLEVELAND, OHIO 44115-2191
TEL: (216) 621-1113   FAX: (216) 621-6165
EMAIL: MailRoom@RennerOtto.com

June 18, 2003

Via facsimile (1 page)
310-246-3101
No confirmation

Marc Toberoff, Esq.
10th Floor
9701 Wilshire Boulevard
Beverly Hills, CA 90212

Re:    Michael Siegel

Dear Marc:

I have discussed with Michael the offer you passed on from a potential investor who is interested in purchasing Michael's interest in the Superman copyright. The amount offered is not acceptable to Michael.

Michael would be willing to entertain an offer that will pay him $200,000/year for the rest of his life, with a guaranteed minimum of 10 years. This could be structured as a guaranteed annuity or otherwise, with the hope of minimizing taxes while assuring that such payments will be made when due.

Contrary to what I had mentioned during one of our telephone conversations, Michael is 59.

Please let me know if this proposal is of interest to your potential investor.

Very truly yours,

Don W. Bulson

DWB/jam

**DB020**

EXHIBIT H
57

LAW OFFICES OF
# MARC TOBEROFF

July 16, 2003

Via facsimile: 216-621-6165 and US Mail

Don W. Bulson, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, Ohio 44115

Dear Don:

On April 16, 2003, Joanne and Laura Siegel submitted the following documents to Michael Siegel:

1. Money Advanced By Joanne Siegel On Behalf Of The Jerry Siegel Family Through October 17, 2000.

2. Money Advanced By Laura Siegel Larson On Behalf Of The Jerry Siegel Family Through October 17, 2000.

3. Money Advanced By Joanne Siegel On Behalf Of The Jerry Siegel Family October 18, 2000 Through October 2002.

4. Money Advanced By Joanne Siegel On Behalf Of The Jerry Siegel Family October 18, 2000 Through October 2002.

On November 8, 2002, Joanne advanced $4,000 on behalf of the Siegel interest to the Register of Copyrights. This was the filing fee for an additional Termination of prior transfers of copyright for Superboy. The Register of Copyright Office was slow in its processing and the cancelled check has only recently been returned to Joanne by her bank. A copy of the check is enclosed. Michael Siegel's 25% of this fee is $1,000. This should be added to the $165.67 Michael owed Joanne per the proof submitted in April, 2003 bringing the total Michael owes Joanne to $1,165.67. The amount Michael owes to Laura remains $1,035.12.

These amounts will be deducted from the funds being held in trust for Michael Siegel and the balance will be forwarded to you once you have reviewed the April accounting and the parties execute the settlement referenced by me in my prior correspondence on this matter. As of today, I have still not heard from you regarding the April accounting.

I look forward to hearing from you. Please feel free to contact me with any questions regarding the above.

Very truly yours,

Marc Toberoff

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

DB021

EXHIBIT H
58



DB022

EXHIBIT H
59

T-607   P·001/003   F-044

LAW OFFICES OF
## MARC TOBEROFF

9595 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212
Ph: (310) 246-3333 · Fx: (310) 246-3101

---

## FACSIMILE COVER PAGE

| TO: Don W. Bulson, Esq. | FAX: (216) 621-6165 |
|---|---|
| FROM: Marc Toberoff, Esq. | PAGES ( including cover ): 3 |
| DATE : 7/16/03 | RE: Siegels |

COMMENTS: Please find attached my letter and a copy of the check Joanne Siegel sent to the Copyright Office.

Cc: Laura Siegel Larson

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

DB023

Aug-07-03   05:13pm   From-                                                        T-623   P.002/003   F-080

## LAW OFFICES OF
# MARC TOBEROFF

August 6, 2003

Via facsimile: (216) 621-6165 and US Mail

Don Bulson, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, OH 44115-2191

Re: Michael Siegel

Dear Don:

I had a high-end accountant get quotes for an annuity paying out the sums as set forth in Michael Siegel's long awaited June 18, 2003 counter-offer regarding a buy-out.

The lowest price for such an annuity was **$3,476,727** (feel free to check this out).

The net present value of the last Warner Bros. ("WB") offer is between $1.5 - $1.6 million (depending on how conservative one is in one's choice of the interest rate in calculating net present value).

Michael's counter-offer was therefore well over twice (230%) the last Warner Bros. offer and nearly five times the investor's original offer which I believe was based in large part on the last WB offer, rejected by the Siegel's.

It was therefore not surprising that the investor rejected your counter-offer as unrealistic. The counter-offer was so high that it may have scared away a strong potential investor (exactly what I mentioned when I asked you whether you were sure that I should communicate such a high counter-offer).

As previously explained any investor would see the obvious risks of this transaction and want to come in somewhere lower than the WB offer as a hedge or buffer against the risks of this investment (even though there is no guarantee that the Siegel's will ever settle with Warner Bros.).

To the extent you and Michael are not already aware of this, any investor will view the risks as follows:

1. Risk of costly drawn-out litigation with WB as a condition to receiving any serious participation in "profits" (subject to notorious Studio accounting practices and definitions; net profits are commonly denoted in the entertainment industry as "monkey points");

2. Risks associated with no control over the Siegel Termination Interest Michael's interest unfortunately is a passive 25% interest in what Joanne and

9595 Wilshire Boulevard, Suite 811 Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
Email: Mtoberoff@ipww.biz

**DB024**

Aug-07-03   05:13pm   From-                                                    T-525   P.003/003   F-055

Page 2
Don Bulson, Esq.
August 6, 2003

LAW OFFICES OF
# MARC TOBEROFF

Laura Siegel negotiate and receive, and therefore there are major risks
associated with this lack of control (a good reason why Michael may be
interested in an investor in the first place);

3.   Risk that Joanne and Laura Siegel may never arrive at a mutually acceptable
     settlement with Warner Bros;

4.   Risk that the interest may not be monetized or bear fruit for a long time to
     come (a long term investment);

5.   Risk that Superman will lose as opposed to gain value (there hasn't been a
     Superman movie since 1978 (compare the Bond franchise) and the recent
     failure to launch and talent package a new Superman film (lost their director
     and can't cast the lead) is well publicized.

I personally believe, despite the above, that this could be a smart long term investment
for someone very wealthy who can afford to hold the investment for an unpredictable,
and potentially very lengthy period of time. However, that doesn't mean that an investor
will not weigh the reasonableness of the price against the above risks.

Please convey this letter to Michael and let me know what you and Michael suggest I do
to salvage this situation.

Best regards.

Yours sincerely,

Marc Toberoff

**DB025**

EXHIBIT H
62

LAW OFFICES OF
# MARC TOBEROFF

9395 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212
Ph: (310) 246-3333 · Fx: (310) 246-3101

---

## FACSIMILE COVER PAGE

| | |
|---|---|
| TO: Don Bulson, Esq. | FAX: (216) 621-6165 |
| FROM: Marc Toberoff, Esq. | PAGES ( including cover ): 3 |
| DATE : 8/6/03 | RE: Michael Siegel |

COMMENTS: Please find attached my letter dated August 6, 2003. The original will also be sent via US mail.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

DB026

LAW OFFICES OF
# MARC TOBEROFF

August 6, 2003

Via facsimile: (216) 621-6165 and US Mail

Don Bulson, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, OH 44115-21 91

AUG 1 1 2003

Re: Michael Siegel

Dear Don:

I had a high-end accountant get quotes for an annuity paying out the sums as set forth in Michael Siegel's long awaited June 18, 2003 counter-offer regarding a buy-out.

The lowest price for such an annuity was **$3,476,727** (feel free to check this out).

The net present value of the last Warner Bros. ("WB") offer is between $1.5 - $1.6 million (depending on how conservative one is in one's choice of the interest rate in calculating net present value).

Michael's counter-offer was therefore well over twice (230%) the last Warner Bros. offer and nearly five times the investor's original offer which I believe was based in large part on the last WB offer, rejected by the Siegel's.

It was therefore not surprising that the investor rejected your counter-offer as unrealistic. The counter-offer was so high that it may have scared away a strong potential investor (exactly what I mentioned when I asked you whether you were sure that I should communicate such a high counter-offer).

As previously explained any investor would see the obvious risks of this transaction and want to come in somewhere lower than the WB offer as a hedge or buffer against the risks of this investment (even though there is no guarantee that the Siegel's will ever settle with Warner Bros.).

To the extent you and Michael are not already aware of this, any investor will view the risks as follows:

1. Risk of costly drawn-out litigation with WB as a condition to receiving any serious participation in "profits" (subject to notorious Studio accounting practices and definitions; net profits are commonly denoted in the entertainment industry as "monkey points");

2. Risks associated with no control over the Siegel Termination Interest. Michael's interest unfortunately is a passive 25% interest in what Joanne and

9595 Wilshire Boulevard, Suite 811 Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
Email: Mtoberoff@ipwv.biz

**DB027**

EXHIBIT H
64

Page 2
Don Bulson, Esq.
August 6, 2003

LAW OFFICES OF
**MARC TOBEROFF**

Laura Siegel negotiate and receive, and therefore there are major risks
associated with this lack of control (a good reason why Michael may be
interested in an investor in the first place);

3. Risk that Joanne and Laura Siegel may never arrive at a mutually acceptable
settlement with Warner Bros;

4. Risk that the interest may not be monetized or bear fruit for a long time to
come (a long term investment);

5. Risk that Superman will lose as opposed to gain value (there hasn't been a
Superman movie since 1978 (compare the Bond franchise) and the recent
failure to launch and talent package a new Superman film (lost their director
and can't cast the lead) is well publicized.

I personally believe, despite the above, that this could be a smart long term investment
for someone very wealthy who can afford to hold the investment for an unpredictable,
and potentially very lengthy period of time. However, that doesn't mean that an investor
will not weigh the reasonableness of the price against the above risks.

Please convey this letter to Michael and let me know what you and Michael suggest I do
to salvage this situation.

Best regards.

Yours sincerely,

Marc Toberoff

DB028

EXHIBIT H
65

## Don Bulson

**From:**   Don Bulson
**Sent:**   Friday, November 12, 2004 1:40 PM
**To:**     'Marc Toberoff (mtoberoff@ipwla.com)'
**Subject:** Superman

Marc,

I have now had the opportunity to meet with Mike Siegel and discuss your "investor's" latest proposal.  Summarizing our past discussions, Mike originally proposed:

1.   Initial payment of $300,000
2.   Annual payments of about $123,000 for 20 years

As understood, the investor countered with:

1.   Initial payment of $200,000
2.   Annual payments of $100,000 for about 22 years
3.   Investor's recoupment of one-half of any monies paid if reversion occurs

In a follow up to the above, the investor indicated he would consider:

4.   Some participation

In return, Mike Siegel would be amenable to:

1.   Initial payment of $250,000
2.   Annual payments of $112,000 for 25 years
3.   Investor's recoupment of one-half of monies paid if reversion occurs, subject to an appropriate payback schedule from proceeds received by Mike Siegel
4.   Participation at 10% after full recoupment of monies paid by investor

Please let me know if this is acceptable to the investor.

Don




Email: dbulson@rennerotto.com
Tel:    216-621-1113
Fax:    216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

NOTICE:  This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly

DB029

11/12/2004

prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.

Thank you

DB030

11/12/2004

## Don Bulson

**From:**   Don Bulson
**Sent:**   Friday, November 12, 2004 1:40 PM
**To:**     'Marc Toberoff (mtoberoff@ipwla.com)'
**Subject:** Superman

Marc,

I have now had the opportunity to meet with Mike Siegel and discuss your "investor's" latest proposal.  Summarizing our past discussions, Mike originally proposed:

1.     Initial payment of $300,000
2.     Annual payments of about $123,000 for 20 years

As understood, the investor countered with:

1.     Initial payment of $200,000
2.     Annual payments of $100,000 for about 22 years
3.     Investor's recoupment of one-half of any monies paid if reversion occurs

In a follow up to the above, the investor indicated he would consider:

4.     Some participation

In return, Mike Siegel would be amenable to:

1.     Initial payment of $250,000
2.     Annual payments of $112,000 for 25 years
3.     Investor's recoupment of one-half of monies paid if reversion occurs, subject to an appropriate payback schedule from proceeds received by Mike Siegel
4.     Participation at 10% after full recoupment of monies paid by investor

Please let me know if this is acceptable to the investor.

Don



Email:  dbulson@rennerotto.com
Tel:    216-621-1113
Fax:    216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this  communication is strictly

**DB031**

11/12/2004

*prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.*

*Thank you.*

**DB032**

11/12/2004

Don.                                                                                                    Page 1 of 2

## Don Bulson

**From:**    mtoberoff@ipwla.com
**Sent:**    Wednesday, November 17, 2004 3:06 PM
**To:**      Don Bulson
**Subject:** RE: Superman

Don:

Thank-you for your counter.

The problem is that when you compare the net present value (NPV) of you first proposal with that of your second proposal it is nearly the same
(only 1.5% less) , the two offers (months apart) really re-shuffle of the numbers a bit, however your counter additionally asks for a significant percentage of the upside (without really lowering the NPV of the fixed compensation).

In addition, your two proposals still amount to 25% of Warner Bros. offer 2 years ago. The problem with this as stated is that an investor rightly views this as risky (for all the reasons set forth in my prior correspondence, e.g., inertia, litigation, that this is passive and subject to what the Joanne and Laura Siegel's decide regarding the termination interest, etc., etc.). In addition, there is a legal cost to make Warner Bros. pay up (for instance with a contingency lawyer at least 33.33% - 40% would be taken off the top plus costs and disbursements). For these reasons an investor would never buy this at a cost equal to 25% of WB's highly negotiated last offer <u>that was rejected</u>. The fact that the NPV of your counter is nearly identical to your original proposal is exacerbated by the fact that the counter was a long time in the waiting (another thing that frustrates any interested buyer that is real).

I'm really trying, but I need some help from your end if your client wants to do this.

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com
          -----Original Message-----
          **From:** Don Bulson [mailto:dbulson@rennerotto.com]
          **Sent:** Friday, November 12, 2004 10:40 AM
          **To:** mtoberoff@ipwla.com
          **Subject:** Superman

     Marc,

     I have now had the opportunity to meet with Mike Siegel and discuss your "investor's" latest proposal.  Summarizing our past discussions, Mike originally proposed:

     1.       Initial payment of $300,000
     2.       Annual payments of about $123,000 for 20 years

     As understood, the investor countered with:

     1.       Initial payment of $200,000
     2.       Annual payments of $100,000 for about 22 years
     3.       Investor's recoupment of one-half of any monies paid if reversion occurs

     In a follow up to the above, the investor indicated he would consider:

                                                                                       **DB033**

11/24/2004

Don.

**4.**    Some participation

In return, Mike Siegel would be amenable to:

1.    Initial payment of $250,000
2.    Annual payments of $112,000 for 25 years
3.    Investor's recoupment of one-half of monies paid if reversion occurs, subject to an appropriate payback schedule from proceeds received by Mike Siegel
4.    Participation at 10% after full recoupment of monies paid by investor

Please let me know if this is acceptable to the investor.

Don

Email:  dbulson@rennerotto.com
Tel:    216-621-1113
Fax:    216-621-6165

Don W. Bulson
Renner, Otto, Boisseile & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

*NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.*

*Thank you.*

**DB034**

11/24/2004

EXHIBIT H
71

Don:                                                                                Page 1 of 2

## Don Bulson

**From:**    mtoberoff@ipwla.com
**Sent:**    Wednesday, November 17, 2004 3:06 PM
**To:**      Don Bulson
**Subject:** RE: Superman

Don:

Thank-you for your counter.

The problem is that when you compare the net present value (NPV) of you first proposal with that of your second proposal it is nearly the same
(only 1.5% less), the two offers (months apart) really re-shuffle of the numbers a bit, however your counter additionally asks for a significant percentage of the upside (without really lowering the NPV of the fixed compensation).

In addition, your two proposals still amount to 25% of Warner Bros. offer 2 years ago. The problem with this as stated is that an investor rightly views this as risky (for all the reasons set forth in my prior correspondence, e.g., inertia, litigation, that this is passive and subject to what the Joanne and Laura Siegel's decide regarding the termination interest, etc., etc.). In addition, there is a legal cost to make Warner Bros. pay up (for instance with a contingency lawyer at least 33.33% - 40% would be taken off the top plus costs and disbursements). For these reasons an investor would never buy this at a cost equal to 25% of WB's highly negotiated last offer that was rejected. The fact that the NPV of your counter is nearly identical to your original proposal is exacerbated by the fact that the counter was a long time in the waiting (another thing that frustrates any interested buyer that is real).

I'm really trying, but I need some help from your end if your client wants to do this.

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com
　　　　-----Original Message-----
　　　　**From:** Don Bulson [mailto:dbulson@rennerotto.com]
　　　　**Sent:** Friday, November 12, 2004 10:40 AM
　　　　**To:** mtoberoff@ipwla.com
　　　　**Subject:** Superman

　　　　Marc,

　　　　I have now had the opportunity to meet with Mike Siegel and discuss your "investor's" latest
　　　　proposal.  Summarizing our past discussions, Mike originally proposed:

　　　　1.　　　Initial payment of $300,000
　　　　2.　　　Annual payments of about $123,000 for 20 years

　　　　As understood, the investor countered with:

　　　　1.　　　Initial payment of $200,000
　　　　2.　　　Annual payments of $100,000 for about 22 years
　　　　3.　　　Investor's recoupment of one-half of any monies paid if reversion occurs

　　　　In a follow up to the above, the investor indicated he would consider:

                                                                          **DB035**

11/24/2004

EXHIBIT H
72

Don:

4.      Some participation

In return, Mike Siegel would be amenable to:

1.      Initial payment of $250,000
2.      Annual payments of $112,000 for 25 years
3.      Investor's recoupment of one-half of monies paid if reversion occurs, subject to an appropriate payback schedule from proceeds received by Mike Siegel
4.      Participation at 10% after full recoupment of monies paid by investor

Please let me know if this is acceptable to the investor.

Don

Email:  dbulson@rennerotto.com
Tel:      216-621-1113
Fax:      216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

NOTICE:  This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this  communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.

Thank you.

**DB036**

11/24/2004

## Don Bulson

**From:**    mtoberoff@ipwla.com
**Sent:**    Thursday, November 18, 2004 2:53 PM
**To:**    Don Bulson
**Subject:** RE: Superman

Thank-you. I appreciate that.

Marc Toberoff
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com
    -----Original Message-----
    **From:** Don Bulson [mailto:dbulson@rennerotto.com]
    **Sent:** Thursday, November 18, 2004 5:19 AM
    **To:** mtoberoff@ipwla.com
    **Subject:** RE: Superman

    Marc,

    Thanks for your reply.  I should be able to discuss your email with Michael either today or
    tomorrow.

    Don


    Email:  dbulson@rennerotto.com
    Tel:    216-621-1113
    Fax:    216-621-6165

    Don W. Bulson
    Renner, Otto, Boisselle & Sklar, LLP
    1621 Euclid Avenue - 19th Floor
    Cleveland, Ohio  44115

    *NOTICE:  This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged,*
    *confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent*
    *responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of*
    *this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by e-mail or telephone,*
    *and delete the original message immediately.*

    *Thank you.*

        -----Original Message-----
        **From:** mtoberoff@Ipwla.com [mailto:mtoberoff@ipwla.com]
        **Sent:** Wednesday, November 17, 2004 3:06 PM
        **To:** Don Bulson
        **Subject:** RE: Superman

        Don:

        Thank-you for your counter.

        The problem is that when you compare the net present value (NPV) of you first proposal with that of your
        second proposal it is nearly the same
        (only 1.5% less) , the two offers (months apart) really re-shuffle of the numbers a bit, however your

11/24/2004

DB037

counter additionally asks for a significant percentage of the upside (without really lowering the NPV of the fixed compensation).

In addition, your two proposals still amount to 25% of Warner Bros. offer 2 years ago. The problem with this as stated is that an investor rightly views this as risky (for all the reasons set forth in my prior correspondence, e.g., inertia, litigation, that this is passive and subject to what the Joanne and Laura Siegel's decide regarding the termination interest, etc., etc.). In addition, there is a legal cost to make Warner Bros. pay up (for instance with a contingency lawyer at least 33.33% -40% would be taken off the top plus costs and disbursements). For these reasons an investor would never buy this at a cost equal to 25% of WB's highly negotiated last offer that was rejected. The fact that the NPV of your counter is nearly identical to your original proposal is exacerbated by the fact that the counter was a long time in the waiting (another thing that frustrates any interested buyer that is real).

I'm really trying, but I need some help from your end if your client wants to do this.

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com
    -----Original Message-----
    **From:** Don Bulson [mailto:dbulson@rennerotto.com]
    **Sent:** Friday, November 12, 2004 10:40 AM
    **To:** mtoberoff@ipwla.com
    **Subject:** Superman

Marc,

I have now had the opportunity to meet with Mike Siegel and discuss your "investor's" latest proposal.  Summarizing our past discussions, Mike originally proposed:

1.      Initial payment of $300,000
2.      Annual payments of about $123,000 for 20 years

As understood, the investor countered with:

1.      Initial payment of $200,000
2.      Annual payments of $100,000 for about 22 years
3.      Investor's recoupment of one-half of any monies paid if reversion occurs

In a follow up to the above, the investor indicated he would consider:

4.      Some participation

In return, Mike Siegel would be amenable to:

1.      Initial payment of $250,000
2.      Annual payments of $112,000 for 25 years
3.      Investor's recoupment of one-half of monies paid if reversion occurs, subject to an appropriate payback schedule from proceeds received by Mike Siegel
4.      Participation at 10% after full recoupment of monies paid by investor

Please let me know if this is acceptable to the investor.

**DB038**

EXHIBIT H
75

Don:

Don

Email: dbulson@rennerotto.com
Tel:     216-621-1113
Fax:     216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

*NOTICE:  This message is intended only for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not
the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby
notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited.  If you have
received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original
message immediately*

*Thank you.*

**DB039**

11/24/2004

## Don Bulson

**From:**    Don Bulson
**Sent:**    Wednesday, November 24, 2004 2:57 PM
**To:**    'mtoberoff@ipwla.com'
**Subject:** RE: Superman

Marc,

I appreciate your efforts to put together a deal acceptable to your "investor". Michael has considered your comments and he considers his last offer a fair offer, given the potential for substantial income to be generated by the Superman property. The Warner Bros. offer was basically a 6% deal as I recall. The base for the royalty included all worldwide revenue paid to or derived by DC Comics from the Superman property. My calculations of the value of Warner Bros. last offer were based on numbers provided by Warner Bros. for a five year period that did not include any revenue booster like a movie. Since then, the Lois and Clark television series has gone into syndication and the Smallville television series has now entered syndication. According to comments you have previously made, a television property starts generating significant profits when it goes into syndication.

In addition, the next Superman movie now appears to be a reality.

Regarding Michael's last offer, the upfront money has been reduced as have the yearly payments, albeit for a longer period. As you have observed, the NPV is less as well. In addition, Michael is agreeable to the 50% recoupment if rights revert, and Michael has agreed to reduce his originally desired participation from 25% to 10%.

Consequently, at the beginning the investor is putting in less money. Within the next few years, I would anticipate some movement by the parties toward reaching an agreement, so the investor should be able to see how things are going to shake out within the next few years.

DC/Warner Bros. still views Superman as one of their gems and at some point they will have to address the loss of rights that occurs in 2013. I seem to recall reading that Warner Bros. negotiated a commitment from the new Superman for three or four movies. I suspect those will be timed to come out every two years or thereabouts.

I suggest you run this all past the investor. Perhaps he will find the new terms acceptable. If not, then perhaps he can indicate what he would like to see Michael yield on and what he would be willing to give Michael in return.

Thanks for you cooperation.

Don

Email: dbulson@rennerotto.com
Tel:    216-621-1113
Fax:    216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio 44115

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering

DB040

11/24/2004

Don:                                                                          Page 2 of 2

the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.

Thank you.

**DB041**

11/24/2004

Don:                                                                                    Page 1 of 3

## Don Bulson

**From:**   mtoberoff@ipwla.com

**Sent:**   Monday, November 29, 2004 7:55 PM

**To:**     Don Bulson

**Subject:** RE: Superman

Don:

I hope you had a good Thanksgiving. I likewise appreciate your and Michael's efforts and consideration in trying to reach a mutually satisfactory deal.

I have fully informed the investor and he is well aware of all the developments you mention regarding Superman, Smallville, etc. However, the investor is also conservative, experienced and cynical with regard to the entertainment industry and Studio "accounting" and knows the following:

(1) The rights are totally passive and subject to the actions of Joanne Siegel and Laura Siegel in their discretion;

(2) In over 5 ½ years Warner Bros. / DC haven't accounted for or paid a dime for the 50% Superman copyright interest which reverted via termination in 1999 (of which Michael's interest amounts to 12.5% , i.e., 25% of 50%) even though WB/DC are required by law to do so;

(3) WB and DC's attorneys have vigorously refuted the termination;

(4) WB/DC's attorneys have also asserted many legal arguments (e.g. apportionment, DC's revenues vs. WB's, trademark) and defenses (statute of limitations, waiver, estoppel, etc.) to negate or significantly lessen the value of the termination interest;

(5) Standard Studio practice (as demonstrated in this case) is to wage a war of attrition and to only pay the real money after prolonged litigation and then, just prior to trial of the action, and with respect to any % of "profits" or revenues to engage in dubious Studio accounting practices;

(6) Enforcing the termination interest in *very very expensive* (attorneys fees, fiorensic accounting fees, costs and disbursements ) increasing the cost/risk of this investment and further diluting the value of Michaels 12.5% by anywhere from one-third to 50%.

(7) Litigation is always very very risky; the Siegels could get a bum legal decision wiping out their interest at any turn;

(8) Your proposals and counter-proposals over a lengthy period of time have an NPV that has stayed virtually the same and it is an NPV very close to WB's old offer over 2 1/2 years ago. However, the WB offer was ultimately *rejected* by the Siegels (the reason Michael is interested in selling and a further demonstration of risk) and may not still be on the table. Further, even if it was on the table it would make no sense to incur all this risk only to buy something at what you can ultimately sell it for (i.e. WB's last offer).

(8) The 6.5% revenue participation in WB's old rejected settlement proposal is not as significant as you might think because (a) the cash was an advance against it, (b) it was DC's revenues based on licensing fees paid internally by WB, its parent, in WB sole discretion and thus subject to manipulation; (c) but WB not DC is the one making all the money from film and TV exploitation and (d) the 6.5% was subject to deductions and "Studio accounting."

In hard business terms although this is Superman and there's only one Superman, this is not the rosy sexy picture one might think. Yes, they will likely produce a Superman movie or movies; yes they have syndicated Smallville, but DC doesn't participate in a big way in this; WB/DC have refuted the termination interest and stonewalled any accounting or payments for over 51/2 years!

For all of the above reasons, no matter how hard I try and how much I want to make this happen I will not be able

**DB042**

EXHIBIT H
79

Don:                                                                          Page 2 of 3

to do so at a price with an NPV the same or similar to that of WB's 2002 offer which is what you've been proposing. Given all of the above, I believe the investors last offer was pretty decent, particularly if I can get him to add a backend % (that offer has an NPV that is less but not *so far off* from the old WB offer or your counter-proposals). Otherwise, I'm afraid I may be stuck. I also don't believe the investor will stay with this past the end of the year. Please let me know if you or Michael have any additional thoughts or ideas.

Best regards,

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com

    -----Original Message-----
    **From:** Don Bulson [mailto:dbulson@rennerotto.com]
    **Sent:** Wednesday, November 24, 2004 11:57 AM
    **To:** mtoberoff@ipwla.com
    **Subject:** RE: Superman

    Marc,

    I appreciate your efforts to put together a deal acceptable to your "investor". Michael has considered your comments and he considers his last offer a fair offer, given the potential for substantial income to be generated by the Superman property. The Warner Bros. offer was basically a 6% deal as I recall. The base for the royalty included all worldwide revenue paid to or derived by DC Comics from the Superman property. My calculations of the value of Warner Bros. last offer were based on numbers provided by Warner Bros. for a five year period that did not include any revenue booster like a movie. Since then, the Lois and Clark television series has gone into syndication and the Smallville television series has now entered syndication. According to comments you have previously made, a television property starts generating significant profits when it goes into syndication.

    In addition, the next Superman movie now appears to be a reality.

    Regarding Michael's last offer, the upfront money has been reduced as have the yearly payments, albeit for a longer period. As you have observed, the NPV is less as well. In addition, Michael is agreeable to the 50% recoupment if rights revert, and Michael has agreed to reduce his originally desired participation from 25% to 10%.

    Consequently, at the beginning the investor is putting in less money. Within the next few years, I would anticipate some movement by the parties toward reaching an agreement, so the investor should be able to see how things are going to shake out within the next few years.

    DC/Warner Bros. still views Superman as one of their gems and at some point they will have to address the loss of rights that occurs in 2013. I seem to recall reading that Warner Bros. negotiated a commitment from the new Superman for three or four movies. I suspect those will be timed to come out every two years or thereabouts.

    I suggest you run this all past the investor. Perhaps he will find the new terms acceptable. If not, then perhaps he can indicate what he would like to see Michael yield

**DB043**

2/5/2005

EXHIBIT H
80

## Don Bulson

**From:**     mtoberoff@ipwla.com
**Sent:**     Monday, January 17, 2005 1:49 PM
**To:**       Don Bulson
**Subject:** Proposed Purchase of M Siegel interest

Don:

I haven't heard from you since my last e-mail in November, 2004, which I recopied below. As expected, I can't sell your proposals (I wish I could) since they are too close to the exact NPV of the old WB deal and don't take into account the passivity of the investment and the significant risks involved. To make anything happen I need a little more leeway (please see our last proposal which is not so far off from what your client wants). What does your client want to do, if anything?

Thanks

Marc Toberoff

---

Don:

Thank-you for your counter.

The problem is that when you compare the net present value (NPV) of you first proposal with that of your second proposal it is nearly the same
(only 1.5% less) , the two offers (months apart) really re-shuffle of the numbers a bit, however your counter additionally asks for a significant percentage of the upside (without really lowering the NPV of the fixed compensation).

In addition, your two proposals still amount to 25% of Warner Bros. offer 2 years ago. The problem with this as stated is that an investor rightly views this as risky (for all the reasons set forth in my prior correspondence, e.g., inertia, litigation, that this is passive and subject to what the Joanne and Laura Siegel's decide regarding the termination interest, etc., etc.). In addition, there is a legal cost to make Warner Bros. pay up (for instance with a contingency lawyer at least 33.33% -40% would be taken off the top plus costs and disbursements). For these reasons an investor would never buy this at a cost equal to 25% of WB's highly negotiated last offer that was rejected. The fact that the NPV of your counter is nearly identical to your original proposal is exacerbated by the fact that the counter was a long time in the waiting (another thing that frustrates any interested buyer that is real).

I'm really trying, but I need some help from your end if your client wants to do this.

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com
    -----Original Message-----
    **From:** Don Bulson [mailto:dbulson@rennerotto.com]

**DB044**

2/5/2005

EXHIBIT H
81