# EXHIBIT TT

1  WEISSMANN WOLFF BERGMAN
     COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
4  Beverly Hills, California 90212
   Telephone: (310) 858-7888
5  Fax: (310) 550-7191

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone: (212) 813-5900
9  Fax: (212) 813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, New York 10516
12 Telephone: (845) 265-2820
   Fax: (845) 265-2819
13

14 Attorneys for Defendants and Counterclaimant

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br>Plaintiffs,<br>vs.<br>WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10,<br>Defendants.<br><br>JOANNE SIEGEL and LAURA SIEGEL LARSON,<br>Plaintiffs,<br>vs.<br>TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10,<br>Defendants.<br>AND RELATED COUNTERCLAIMS | Case Nos. [Consolidated for Discovery]:<br>     CV 04-8400 SGL (RZx)<br>     CV 04-8776 SGL (RZx)<br>Hon. Steven G. Larson, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF WAYNE M. SMITH IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WHISTLE-BLOWER DOCUMENTS**<br><br>**DISCOVERY MATTER**<br>**LOCAL RULE 37**<br><br>Time: 10:00 a.m.<br>Date: April 16, 2007<br>Courtroom: 540<br>Mag. Judge Ralph Zarefsky<br>Discovery Cutoff: Nov. 17, 2006 |

{F0010672.3}

I, Wayne M. Smith, declare and state as follows:

1. I am an attorney, admitted to practice before the Supreme Court of the State of California and before this Court, and am employed by defendant Warner Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and Chief Patent Counsel. I submit this declaration in support of Defendants' Motion to Compel Production of Whistle-blower Documents. I have personal knowledge of the facts contained within this declaration, and, if called upon as a witness, I could and would testify competently thereto.

2. During the afternoon of June 28, 2006, I received a telephone call from John A. Schulman, General Counsel of Warner Bros., who asked that I come to his office. Upon arriving at his office, Mr. Schulman advised me that a set of documents (the "Superman Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day. Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. may have received the same set of documents, and that he had called the offices of those executives to see if they had received anything. He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him. Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them. The stack did not include any envelope or packaging in which the documents may have arrived. This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.

3. While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which

{F0010672 3}

1

1 was not signed, alleged various types of ethical misconduct on the part of the
2 Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also
3 asserted ethical misconduct – violating the terms of a confidentiality agreement by
4 leaking settlement information to the press – in connection with another litigated
5 matter where Plaintiffs' counsel had also represented a party adverse to Warner
6 Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's
7 misconduct. The letter also referenced the documents enclosed, providing an
8 overview of their contents and their connection to Plaintiffs' counsel's alleged
9 wrongdoing. I also thumbed through the Superman Documents contained with the
10 letter, but did not read any of them in detail. Meanwhile, an assistant for another
11 Warner Bros. executive delivered what appeared to be another set of Superman
12 Documents to Mr. Schulman's office. I did not observe that any of the three sets of
13 Superman Documents – (i) the set Mr. Schulman handed to me; (ii) the other set in
14 his office; or (iii) the set that was delivered while I was waiting outside his office –
15 was contained in an envelope or other packaging.

16   4.   I then met with Mr. Schulman. I told Mr. Schulman that based on the
17 contents of the cover letter and my brief thumbing through the documents, it
18 appeared that certain of the documents in the package were privileged. I said that
19 before I looked at the documents I wanted to review the case law in the area to
20 determine what level of review, if any, of the Superman Documents was
21 appropriate. Mr. Schulman agreed with this approach, gave me one set of the
22 documents, retained the other two sets that he had received, and advised me that he
23 had only looked at the cover letter that came with the documents and would not
24 review the documents at all.

25   5.   I returned to my office with the set of documents. I initially went on
26 the internet and performed a Google search relating to the issue of what obligations,
27 if any, governed the handling of the Superman Documents we had received. My
28 initial search located an article from the June 2006 Los Angeles Lawyer magazine

1  entitled "On the Receiving End," by Kurt L. Schmalz (a true and correct copy of
2  which is attached as Exhibit "A" hereto) which was posted on the Los Angeles
3  County Bar Association web site. The article concerns the obligations of lawyers
4  who unwittingly receive privileged documents from opposing counsel's files and
5  discusses various California cases that have dealt with the issue, including the *Rico*
6  *v. Mitsubishi Motors Corporation* case pending before the California Supreme
7  Court.

8      6.    I read the Schmalz article and then downloaded and studied the three
9  principal California cases it identifies: *Aerojet-General Corporation v. Transport*
10 *Indemnity Insurance*, 18 Cal.App.4th 996 (1993), *State Compensation Insurance*
11 *Fund v. WPS, Inc. (State Fund)*, 70 Cal.App.4th 644 (1999) and the Court of Appeal
12 decision in the case under review, *Rico v. Mitsubishi Motors Corporation*, 116
13 Cal.App.4th 51 (2004) (*review granted* June 9, 2004). Based on my review of the
14 relevant California authorities, it appeared that a conservative approach to handling
15 the Superman Documents was to follow the procedure laid out by the Court in *State*
16 *Fund*, specifically: (i) to review each document but to cease the review once it
17 became apparent that the document was privileged; (ii) to contact opposing counsel
18 and advise that the documents have been received; and (iii) to refrain from using any
19 information in the documents until there was either an agreement with opposing
20 counsel, or the court had determined the documents' disposition.

21     7.    Following my review of the law, I called Mr. Schulman and advised
22 him of the results of my research. I said that I intended to review the Superman
23 Documents in accordance with *State Fund*. At Mr. Schulman's request I also sent
24 copies of the three key cases and the article to Mr. Schulman's office.

25     8.    That evening, I took the Superman Documents home with me and spent
26 approximately a half hour reviewing them. Certain of the documents – such as
27 executed agreements relating to Superman and correspondence between the
28 Plaintiffs and non-lawyer third parties – did not appear subject to any applicable

privilege. As I was going through the documents I placed them into three piles: (i) "non-privileged," (ii) "privileged," and (iii) "?" (where either I could not tell whether it was privileged or I believed the document covered subject matter where privilege may have been waived in the case, as explained below). In reviewing each document, where it first appeared to me that it was entirely privileged, I ceased reading it, placed the document in the "privileged" pile and did not look at it further. After going through the documents, I placed a post-it note on the top of each pile (indicating "privileged," "non-privileged," or "?"), and fastened each pile together. I did not look at the documents further. Because I did not conduct a detailed review of the Superman Documents, and because of the passage of time, I do not recall their specific contents. I do, however, recall generally the subject matter of certain of the documents.

9. The non-privileged pile was the second largest of the three. It contained what appeared to be agreements between, *inter alia*, the Siegels and/or Shusters and various entities, as well as correspondence concerning the interest in Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother, Michael Siegel. To my knowledge, this last category of documents has never been produced in the litigation.

10. The "?" pile was the smallest. I believe that one or two of the documents in this category potentially fall within the scope of a privilege waiver based Plaintiffs' reliance on an affirmative defense that their predecessor counsel did not have authority to accept a settlement proposal made by Defendants. Defendants position on this privilege waiver is the subject of a separate Motion to Compel filed concurrently herewith.

11. The pile of documents I labeled "privileged" was the largest.

12. Even from the brief review made, it appeared to me that, with the exception of the cover letter (which also addressed the other litigation involving Plaintiffs' counsel), all of the Superman Documents related to the subject matter of

{F0010672.3}

4
EXHIBIT TT
739

1  the instant litigation and were responsive to document requests the Defendants had
2  previously served on Plaintiffs. However, it did not appear to me at the time that
3  any of the "non-privileged" documents had been produced in the litigation.
4  Moreover, at least some (and perhaps virtually all) of the privileged documents, as
5  well as those in the "?" pile, were, to the best of my knowledge, never identified in
6  any privilege log served by the Plaintiffs.

7        13.   The next morning, June 29, 2006, I returned with the Superman
8  Documents to see Mr. Schulman in his office. Mr. Schulman and I discussed having
9  a neutral third party hold the documents pending either the parties' agreement as to
10 their disposition or order of the Court. We decided to ask John Quinn, then with
11 Arnold & Porter, and former president of the Los Angeles County Bar Association,
12 to act as the neutral based on his reputation and legal ethics experience. He agreed
13 and the following morning, June 30, 2006, the three sets of the Superman
14 Documents, including the set that I had categorized, were handed over to Mr. Quinn.
15 Out of an abundance of caution we handed over *all* the documents to Mr. Quinn, not
16 just those that were clearly or potentially privileged. Further, we have not shared
17 the contents of the Superman Documents with any of the outside counsel
18 representing the Defendants in this action, nor have we used the contents of the
19 documents in the litigation.

20    I declare under penalty of perjury of the laws of the United States of America
21 that the foregoing is true and correct.
22    Dated this 26th day of March 2007 at Burbank, California.

_____
Wayne M. Smith

{F0010672.4}

EXHIBIT TJ
740

5