# EXHIBIT UU



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


JOANNE SIEGEL, ET AL,          ) CASE NO(s): CV 04-8400-SGL(RZx)
                               )             CV 04-8776-SGL(RZx)
              Plaintiffs,      )
                               )              CIVIL
     vs.                       )
                               )      Los Angeles, California
TIME WARNER, INC, ET AL,       )      Monday, April 30, 2007
                               )      (10:45 a.m. to 11:28 a.m.)
              Defendants.      )


   1)   DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
     AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
                      AT DEPOSITION;

  2)   DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
    AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
                    RELATING TO AUTHORITY;

      3)   DEFENDANTS' MOTION TO COMPEL PRODUCTION
             OF WHISTLE-BLOWER DOCUMENTS;

      4)   PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
    TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES



             BEFORE THE HONORABLE RALPH ZAREFSKY,
               UNITED STATES MAGISTRATE JUDGE



EXCEPTIONAL REPORTING SERVICES, INC
14493 S PADRE ISLAND DRIVE
#A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


JOANNE SIEGEL, ET AL,                ) CASE NO(s): CV 04-8400-SGL(RZx)
                                     )              CV 04-8776-SGL(RZx)
            Plaintiffs,              )
                                     )              CIVIL
     vs.                             )
                                     )       Los Angeles, California
TIME WARNER, INC, ET AL,             )       Monday, April 30, 2007
                                     )       (10:45 a.m. to 11:28 a.m.)
_____ Defendants. _____ )


   1)   DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
      AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
                       AT DEPOSITION;

  2)   DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
     AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
                    RELATING TO AUTHORITY;

       3)   DEFENDANTS' MOTION TO COMPEL PRODUCTION
              OF WHISTLE-BLOWER DOCUMENTS;

       4)   PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
    TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES


          BEFORE THE HONORABLE RALPH ZAREFSKY,
            UNITED STATES MAGISTRATE JUDGE


Appearances:   (See next page)


Proceedings recorded by electronic sound recording; transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

EXHIBIT UU

2

**APPEARANCES FOR:**

Plaintiffs:                    MARC TOBEROFF, ESQ
                               1999 Avenue of the Stars
                               Suite 1540
                               Los Angeles, CA 90067

Defendants:                    MICHAEL BERGMAN, ESQ
                               Weissmann Wolff Bergman, et al.
                               9665 Wilshire Blvd., Suite 900
                               Beverly Hills, CA 90212

Court Reporter:                Recorded; FTR

Courtroom Deputy:              Ilene Bernal

Transcribed by:                Exceptional Reporting Services, Inc.
                               14493 S. Padre Island Drive
                               Suite A-400
                               Corpus Christi, TX 78418-5940
                               361 949-2988

EXHIBIT UU
743

3

1     **Los Angeles, California; Monday, April 30, 2007; 10:45 a.m.**

2                          **(Call to Order)**

3          **THE COURT:** Let's call the next case.

4          **THE CLERK:** Item number five. Case Number CV-04-

5     8400-SGL-RZX, and related case, CV04-8776-SGL-RZX; *Joanne*

6     *Siegel, et al. versus Time Warner, Inc., et al.*

7          Counsel, please make your appearances.

8          **MR. TOBEROFF:** Good morning, your Honor. Marc

9     Toberoff for the plaintiffs.

10         **THE COURT:** Good morning.

11         **MR. BERGMAN:** Good morning, your Honor. Michael

12    Bergman for the defendants.

13         **THE COURT:** Good morning. All right, we've got four

14    motions on. Let's start with Plaintiff's Motion to Compel the

15    Answers to Interrogatories. I read the materials. Don't need

16    to repeat anything.

17         Do you wish to be heard, Mr. Toberoff?

18         **MR. TOBEROFF:** Yes, your Honor. I just want to

19    highlight a couple points if I may. Essentially, when I

20    drafted these four Interrogatories on behalf of plaintiffs, I

21    did so with the ***Safeco*** case in mind and with Federal Rule of

22    Civil Procedure 33(a). Essentially, each party, each

23    plaintiff, asked one question to each of the defendants.

24         **THE COURT:** I read them.

25         **MR. TOBEROFF:** Okay.

4

1          **THE COURT:**  I really have -

2          **MR. TOBEROFF:**  All right.

3          **THE COURT:**  - read this material.

4          **MR. TOBEROFF:**  Okay, thank you.

5               So, what I do want to point out is that *Safeco*, which

6     is now being used by the defendants to claim that, essentially,

7     each single Interrogatory pertaining to a single RFA and asking

8     for the basis of the RFA is actually three Interrogatories,

9     does not stand for that proposition.

10               In *Safeco*, the Interrogatory in question was already

11     divided into three Interrogatories, so the Court never

12     addressed the question of whether the Interrogatory consists of

13     three subparts, which is the question here.  Instead, the Court

14     simply said that when an Interrogatory is tied to a Request for

15     Admission response, then that counts for one Interrogatory.

16               And the Court even went so far to say that sometimes

17     an Interrogatory focusing on multiple RFAs can stand for one

18     Interrogatory as opposed to multiple Interrogatories if the

19     RFAs are related to a common theme and logically connected to

20     one another.  So, actually, *Safeco* has language, as we set

21     forth in our motion, that very much supports our motion.

22               And finally, defendants' stonewalling response is

23     evidenced by the fact that after we served these

24     Interrogatories, they used this as an excuse not to answer the

25     Interrogatories, and we've had major problems with their

5

1    discovery, their failure to respond to our discovery, which is

2    the subject now of multiple motions which we would like to have

3    avoided.

4         **THE COURT:**  All right, thank you.

5         Mr. Bergman?

6         **MR. BERGMAN:**  Thank you, your Honor.

7         Your Honor, on that last point I would like to note

8    that when the defendants responded to these Interrogatories, we

9    offered to do what Mr. Toberoff had offered to do when the

10   tables were turned, and that is to have him select the

11   Interrogatories that he wanted to have answered within the 25

12   limitation of Rule 33.

13        I'd just like to emphasize, your Honor, that the

14   problem with these Interrogatories begins with the Request for

15   Admission on which they're based.  As we've quoted in our

16   moving papers, there are Requests for Admission that ask us to

17   admit, for example -

18        **THE COURT:**  I read this, Mr. Bergman.  You don't need

19   to reiterate it.

20        **MR. BERGMAN:**  Okay.  The other point I would like to

21   make, Judge, is that these are not logically subsumed within

22   each other; that there is no primary question; there is no

23   secondary question.  Reasons are one thing; facts are another;

24   evidence is another.

25        And finally, your Honor, the burdensome nature of

1    these Interrogatories is compounded by the fact that we're

2    talking about events that occurred 70 years ago.  Why didn't we

3    admit, why did we deny, that we paid other people to work with

4    Mr. Siegel 70 years ago?  Well, that's quite a burden.  Why do

5    we deny that the Adventures of Super Boy appeared in hundreds

6    of comic books?  Facts, evidence, reasons; that's quite a

7    burden.  We believe that they're burdensome.  We attempted to

8    have Mr. Toberoff select those Interrogatories that he felt

9    were essential, and he declined to do so.

10              THE COURT:  All right, thank you.

11              MR. BERGMAN:  Thank you, your Honor.

12              THE COURT:  All right.  On this motion, in the

13   Court's view, the motion does raise issues which at least are

14   discussed in *Safeco*.  It's 183 Federal Rules Decision 669, a

15   1998 case from this district.

16         Now, to begin with, the Court has great concern about

17   the propriety of even asking these kinds of Interrogatories,

18   which, as defense counsel's indicated, spin off of Requests for

19   Admissions.

20         Now, in the Court's view they spin off Requests for

21   Admissions with a 'gotcha' kind of mentality, and Professors

22   Wright and Miller have stated, and the Court agrees, Rule 36 is

23   not, strictly speaking, a discovery device.  It's a device for

24   shortening the proof required at trial.

25         And the rule has its own remedy if there is a problem

1    with a Request to Admit.  The propounding party can move to

2    determine the sufficiency of the answers or objections.  But

3    Interrogatories which take a party's failure to unqualifiedly

4    admit and then ask, argumentatively, for the party to justify

5    such a failure, those are questionable discovery devices.

6         And beyond that, these Interrogatories do in fact, as

7    in *Safeco*, ask more than single questions.  Even considering

8    that questions which are related, such as a witness's name and

9    address, for example, those are properly considered part of the

10   same question; but asking for reasons as well as evidence as

11   well as all facts in this Court's view does impermissibly ask

12   for several distinct answers, and any one of them might be

13   objectionable as overbroad, burdensome, calling for work

14   product, and a whole host of other objections.

15        But for the moment, all that the Court does conclude

16   is that the allowed number has been exceeded.

17        Plaintiffs' Motion to Compel is denied.

18        Both Requests for Sanctions are denied.

19        All right, let's move to what has so elegantly been

20   called the 'whistleblower' documents and the Motion to Compel

21   with respect to them.

22        It seems to me there's a lot of noise about this

23   motion, but I don't know how much substance there is.

24        **MR. BERGMAN:**  Frankly, your Honor, I don't think

25   there's any substance to it in the sense that it could be

1    avoided today.  It could have been avoided months ago.

2         Mr. Toberoff keeps taking the position that these

3    documents have been - non-privileged documents have been

4    produced; privileged documents have been listed in a privilege

5    log.  All we have been saying, and what I said to Mr. Toberoff

6    during a meet and confer, what one of my associates wrote to

7    him in a letter, is 'show it to us'.  Identify the documents,

8    the unprivileged documents that you have produced, by reference

9    to the Bate stamp numbers that Mr. Quinn's office put on the

10   document, and identify the documents which are listed on a

11   privilege log, once again, by reference to the Bate stamp

12   numbers that Mr. Quinn put on.  If that is done and we see

13   that, yes, indeed, all unprivileged documents have been

14   produced, all privileged documents have been listed, then

15   there's no further dispute.

16        If, on the other hand, we see that all unprivileged

17   documents have not been produced, well, we should be able to

18   see those documents.  And if all of the privileged documents

19   have not been produced or, rather, put on an exhibit list, a

20   privilege log, that would be a waiver of the privilege as to

21   those documents and we should be entitled to see those

22   documents, too.

23        The question is: How do we resolve this?  Well,

24   there's an easy way, and that is what we're suggesting, Judge,

25   and what we've been suggesting from the beginning.

1      **THE COURT:** All right.  Mr. Toberoff?

2      **MR. TOBEROFF:** Your Honor, I want to make sure the

3  Court understands what we're talking about here, which he

4  claims is just a simple discovery matter that should be easily

5  resolved under Rule 34, the way you deal with Requests for

6  Production in which you produce responsive documents and you

7  list in the privilege log any that are privileged.

8      First of all, plaintiffs have done so and so have I,

9  in full compliance with Rule 34.  We're talking about here an

10  arrival -

11      **THE COURT:** No, I know what we're talking about.

12      **MR. TOBEROFF:** Right.

13      **THE COURT:** The documents showed up at Warner

14  Brothers -

15      **MR. TOBEROFF:** Right.

16      **THE COURT:** - and I read what Warner Brothers did

17  with them.  They segregated them into three piles; they sent

18  them over to Mr. Quinn; Mr. Quinn Bate stamped them; he made a

19  copy; he sent the copy to you, and now we're stuck with what to

20  do with the ones that are left in Mr. Quinn's office.  I

21  understand what we're talking about.

22      **MR. TOBEROFF:** I understand that, your Honor.  These

23  documents are a pile about this high (indicates) -

24      **THE COURT:** Okay.

25      **MR. TOBEROFF:** - where a former attorney of mine, who

**EXCEPTIONAL REPORTING SERVICES, INC**

EXHIBIT UU

750

1  was terminated in November, went through not just the

2  plaintiffs' files in this case but the files of Joe Schuster's

3  family and other witnesses and other companies that I

4  represent, selected documents, and, after trying to essentially

5  steal not only the plaintiffs' clients in this case and other

6  clients of mine by disparaging me, and after he was rejected in

7  early December of 2005, he sent these documents to John

8  Schulman, the general counsel -

9          THE COURT:  I understand all that, Mr. Toberoff.

10         MR. TOBEROFF:  - and two other executives.  These are

11 documents -

12         THE COURT:  But that's not important to this

13 resolution.

14         MR. TOBEROFF:  Well, it's important -

15         THE COURT:  The question is -

16         MR. TOBEROFF:  It's important to me.

17         THE COURT:  They have documents.  The question is:

18 Have you otherwise produced them?  That's all that's at issue,

19 isn't it?

20         MR. TOBEROFF:  I have, your Honor.  I have put in a

21 declaration unequivocally that even though I'm not obligated to

22 do so, and jump through hoops of having to respond and own up

23 to documents stolen from my legal files, an obligation that

24 does not apply to the defendants in this case and does not

25 apply to parties under Rule 34, I nonetheless went through

11

1　every single one of those documents, which they, instead of

2　returning the originals, returned to me with Bate stamps,

3　checked it against our production, and found two documents that

4　were non-privileged that hadn't been produced that consisted of

5　letters from plaintiffs to DC Comics, which I produced.

6　　　　**THE COURT:**  See, your declaration doesn't quite say

7　that, Mr. Toberoff.  I read your declaration.

8　　　　**MR. TOBEROFF:**  The intention of the declaration is to

9　say exactly what I'm saying now; that I went through my files,

10　not just the plaintiffs' files, which is all the motion

11　pertains to, but all my files, all the third-party witness

12　files -

13　　　　**THE COURT:**  Forgive me for interrupting.  Your

14　declaration does say that.  What your declaration doesn't say

15　is that you went through these, let's call them 'whistleblower'

16　documents, even though that may not be an accurate statement,

17　you went through these whistleblower documents, and that you

18　verified that each of the whistleblower documents either had

19　been produced or had been listed on the privilege log.  It

20　doesn't say that.

21　　　　**MR. TOBEROFF:**  That is the case, your Honor, and that

22　was certainly my intention to say that, and I'm saying that

23　now.

24　　　　**THE COURT:**  All right, then we can get that cleared

25　up immediately.

EXHIBIT UU

752

1      **MR. TOBEROFF:**  I'd be happy to take an oath and say

2  that, because that is precisely what I did.

3      **THE COURT:**  Okay.

4      **MR. TOBEROFF:**  And that was definitely my intention

5  in the declaration.  They claim my declaration doesn't say

6  that.  That was certainly my intention.  That's exactly what I

7  did.  And I also put in my declaration, with the utmost

8  specificity, what documents I found that had not been produced

9  and how I produced those documents.

10      **THE COURT:**  Yes, you did that.  I agree with that.

11      **MR. TOBEROFF:**  But the point here, your Honor, is

12  that there are certain procedures which plaintiffs and

13  defendants have to follow.  If the situation was reversed,

14  where I was suddenly sent a stack of documents from the general

15  counsel's files at Warner Brothers or from Mr. Bergman's files,

16  and I sat on those documents, and we believe they sat on these

17  documents from November or December of 2005, even from the date

18  that they say, they sat on these documents, and their letters

19  suggest this uneasy, queasy way in which they dealt with the

20  documents where they didn't say, 'We received documents that

21  are attorney-client privileged that are obviously from your

22  files.'  They referred vaguely to certain documents.

23      They retained another lawyer which they purported to

24  say was a 'neutral', even though that lawyer is obviously not a

25  neutral, because all his suggestions protect defendants, and

13

1    he's under a retainer and undoubtedly paid by the defendants.

2    They retained this neutral -

3        **THE COURT:**  I'm sure Mr. Quinn would enjoy receiving

4    money from you as well, Mr. Toberoff.

5        **MR. TOBEROFF:**  Well, I understand, but I did not

6    retain him.  And to his credit, he never said that he was a

7    neutral in this matter.

8        **THE COURT:**  No.  He's not neutral in the sense that

9    he is retained by the defendants, but what he did, as I

10   understand it, and there's no suggestion otherwise, is that he

11   acted as an escrow.  That is, Mr. Bergman didn't look at these

12   documents.  Trial counsel didn't look at these documents,

13   right?

14       **MR. BERGMAN:**  That's correct, your Honor.

15       **THE COURT:**  The in-house counsel took these

16   documents, probably consulted with Mr. Bergman, 'I don't know,

17   what do we do?', the decision was made, 'Let's give them to a

18   third party and let's try and get the Court involved'.  And

19   then there was that little problem of not following the local

20   rules where there was an *ex parte* communication with the Court,

21   which you pointed out in your papers here.  But the procedure

22   does not seem unreasonable to me.

23       **MR. TOBEROFF:**  Let me ask this.  There are rules why

24   a police officer can't march into your house without a warrant

25   and rifle through your house looking for things.  And the

EXHIBIT UU
754

14

1  answer to the objection to him doing so is not, 'Well, what do

2  you have to hide?'  There's a simple procedure here.  If you

3  have nothing to hide, why can't I rifle through your house?

4  The analogy may not be exact, but it's comparable.

5       This has an unseemly feel to it, because when you add

6  up all of the supposedly sanitizing procedures, and I have

7  great doubts that they received these documents when they said

8  they did, and when I asked for them to substantiate when they

9  received the documents, they had absolutely no information.

10  And I know from my experience with big studios that they have

11  guards and mail rooms and executives and people at their beck

12  and call who keep track of these sorts of things meticulously.

13  They have no evidence whatsoever to support the claim as to

14  when they received documents.

15       I believe they got these documents, the cover letter

16  said, 'This is an early Christmas present.'  You don't write a

17  letter like that in June.  And so they sat on these documents

18  for three or four months figuring, 'How can we use this

19  theft'?, which is an outrageous act.  I'm not hiding behind

20  hyperbole.  It is outrageous.  If it happened to any lawyer, if

21  it happened to Mr. Bergman, you would be outraged.

22       They are saying, 'How do we use this outrageous act

23  as a tactical advantage?'

24       **THE COURT:**  If they were doing all that, why would

25  they go through this process?  Why wouldn't they just –

15

1          **MR. TOBEROFF:**  Because, they can't -

2          **THE COURT:**  - keep the documents and spring them on

3   you?

4          **MR. TOBEROFF:**  Because they can't use the documents.

5   They need to first sanitize it by saying, 'You need to jump

6   through these additional hoops that are not applicable to the

7   defendants; that would not be applicable to you or the

8   plaintiffs, but because we have what they call a 'twist of

9   fortune' of receiving documents stolen wholesale from your

10  files, we are now going to take advantage of that, and we have

11  a right to take advantage of that.'

12         **THE COURT:**  But Mr. Toberoff, you tell me that

13  everything that's not privileged has been produced except for

14  two small items, and everything that is -

15         **MR. TOBEROFF:**  We produced those items, your Honor.

16         **THE COURT:**  Right.  Okay.  So, what huge advantage is

17  there for the defendants to gain if what you say is true?

18         **MR. TOBEROFF:**  I'm objecting to this procedure, and

19  you are asking me what I said before.  Why not illegally search

20  your house if you have nothing to hide?  What do you have to

21  hide?  I have nothing to hide.

22         I find this whole process frankly outrageous, and I

23  am standing here, your Honor, and lawyers may speak this way

24  just as a cover or to muddy the waters.  I am not.  I am

25  standing here with a firm conviction that, as a matter of

16

1    principle, when they received these documents, they should have

2    immediately picked up the phone.  It was obvious these

3    documents had been stolen from my files.  It is obvious from

4    the cover letter what had happened.

5            There's nothing whistleblower about a lawyer who is

6    bound by the attorney-client privilege taking documents and

7    communications with a client and sending them over to the

8    opposing side in the middle of a heated litigation where each

9    side is supposed to be able to rely on the confidential

10   attorney-client privilege and work product doctrine.  Doing

11   that in the middle of a lawsuit, they should have picked up the

12   phone, immediately called me and immediately returned the

13   documents.  That's not what they did.

14           Wayne Smith wrote in his declaration that he looked

15   at these documents twice.  First. he looked at them outside the

16   office of John Schulman.  Then he took them home with him.  And

17   although he didn't look at the documents or really review them

18   in any substance, and there's been no supposed communications

19   with defense counsel, he marked them 'privileged', 'non-

20   privileged', and 'potentially privileged'.  You can't do that

21   without reviewing the substance of these documents.

22           And now they're pushing for me to have to account and

23   atone, by their Bates numbers, the documents illegally stolen

24   from my offices.  And they are claiming to me that, 'Well, why

25   not do this?  Isn't it your obligation under Rule 34 to produce

1   documents?'  And my answer to that is, 'It is my obligation.

2   I've satisfied that obligation.  I've put in a declaration, and

3   I'm saying here and I'm willing to swear the oath that we have

4   produced all those documents.'  More than that, we do not have

5   to do.

6           And so I'm standing here on principle, your Honor,

7   and I believe if you look closely into those principles, you'll

8   find that it's improper for the defendants and defendants'

9   counsel to seek to take advantage of this theft of legal files

10   in the middle of a lawsuit.  And if it was the other way

11   around, they would be screaming bloody murder.  And I don't

12   believe they would be compelled to have to atone, by my Bate

13   stamps, on documents lifted from their legal files.  And I

14   guarantee you if I had that opportunity, considering that they

15   have stonewalled us in discovery, I would find a great deal of

16   useful information.

17           If it was the reverse and I received a package like

18   that, I would have picked up that phone, I would have called

19   them, and I would have returned the documents.  And that's what

20   they should have done, and they didn't do that.  And it's

21   outrageous, your Honor.

22          **THE COURT:**  All right.  Thank you, Mr. Toberoff.

23          Anything further, Mr. Bergman?

24          **MR. BERGMAN:**  Just a couple of things, your Honor.

25          As your Honor has probably seen from the papers,

18

1    Warner Brothers did exactly what the cases and the ABA 1994

2    opinion tells it to do.

3           **THE COURT:**  I read the papers, Mr. Bergman.

4           **MR. BERGMAN:**  Okay.  The other point, your Honor, is,

5    one of two things happened here.  Either Mr. Toberoff is

6    absolutely correct and this person sent documents which have

7    been produced and which have been listed, or he is not correct,

8    in which event there may not have been documents that should

9    have been produced, produced.  All we want to do is put an end

10   to the issue by having him go through what is certainly not a

11   burdensome or oppressive task of coordinating the documents

12   produced and placed on the privilege list with the Bate stamps.

13          **THE COURT:**  All right.

14          **MR. TOBEROFF:**  If I may, your Honor?

15          **THE COURT:**  I think we've exhausted it, Mr. Toberoff.

16          And I will say that I don't agree with the

17   designation of these as 'whistleblower' documents either, Mr.

18   Toberoff.  And to the extent I have used that term, I use it

19   only as a shorthand version of referring to the documents that

20   are at issue.  If we want to call them the 'escrow' documents,

21   that's fine, too.  I mean, I don't think it qualifies as

22   classic whistleblower in the sense that that term is used in

23   the law.  The defendants used that in their application, and I

24   don't think even they used it in the classic term.

25          But in any event, you know, I'm not making any

1   finding that these are in fact in the nature of whistleblower

2   documents.

3          But in my view, I think the defendants have acted

4   professionally, and I think they've acted reasonably.  The

5   record does establish that trial counsel has not reviewed the

6   documents.  They set up a procedure to segregate them, deposit

7   them with an escrow, and seek a resolution of this dispute.

8          Now, I told you, Mr. Toberoff, that I saw a little

9   wiggle room in your declaration.  You tell me you didn't mean

10  for there to be any.  So, here's what I'm going to do.  Not

11  later than May 7th, that's a week from today, I want you to

12  submit a declaration that does identify by the Bates numbers of

13  the escrow documents and the corresponding Bates numbers of

14  documents already produced, those among the escrow documents

15  which are unprivileged and have already been produced.

16         So, you take the Bates numbers of the escrow

17  documents and say, 'Here are the corresponding Bates numbers of

18  the documents that have already been produced.'  Take the Bates

19  numbers of the escrow documents and correspond to the listings

20  on the privilege log of the documents which have not been

21  produced because they were privileged.  All right?  So, put

22  that in your declaration.

23         Then the escrow holder, Mr. Bergman, is to return to

24  the plaintiffs any documents which are identified in the

25  declaration as being privileged and having been identified on

1    the privilege logs.

2         The others can be delivered to trial counsel for

3    defendants because they're either unprivileged, or, if they

4    were privileged, privilege has been waived because they weren't

5    listed on the privilege log.

6         Now, is it clear what I want done?

7         **MR. BERGMAN:**  Yes.

8         **MR. TOBEROFF:**  Are you going to put this in a written

9    order, your Honor?

10         **THE COURT:**  No, this is it.

11         **MR. TOBEROFF:**  Okay.  So you would like me to set

12    forth, you would like me essentially to prove that I'm not

13    lying by setting forth in a declaration -

14         **THE COURT:**  Mr. Toberoff.

15         **MR. TOBEROFF:**  - this is -

16         **THE COURT:**  Do you understand what I've ordered you

17    to put in the declaration?

18         **MR. TOBEROFF:**  I do, your Honor.

19         **THE COURT:**  All right.  Then that's it.  We're not -

20    You and I are not having an argument.

21         **MR. TOBEROFF:**  I'm not arguing.  I'm - Okay.

22         **THE COURT:**  All right?

23         **MR. TOBEROFF:**  I'm sorry, your Honor, if I'm upset

24    about this.  I think most lawyers would be upset with a

25    situation like this.

1      **THE COURT:** Okay. It's fine to be upset. It's not

2  fine to argue. All right?

3      Mr. Bergman, do you understand what you're to do?

4      **MR. BERGMAN:** Yes, I do, your Honor.

5      **THE COURT:** All right.

6      All right, that leaves two motions which are related.

7      **MR. TOBEROFF:** Your Honor, how much time do we have

8  to do this, because we're in the middle of -

9      **THE COURT:** May 7th.

10     The remaining two motions, in my view, are related.

11 These are the Motions to Compel Answers to certain deposition

12 questions by Mr. Marks and Ms. Larson, and to require Mr. Marks

13 to produce documents relating to his authority.

14     Mr. Bergman, do you wish to be heard on these?

15     **MR. BERGMAN:** Yes, your Honor. I'll be very brief.

16 Your Honor is familiar with this problem.

17     **THE COURT:** Yes.

18     **MR. BERGMAN:** To this day, we have not received an

19 unequivocal answer as to whether Mr. Marks was authorized by

20 the plaintiffs to convey to Mr. Schulman the statement that is

21 contained in the October 19 letter; that is that the Siegel

22 family has accepted.

23     Mr. Toberoff is going around the bush. He says that

24 there is no issue as to Marks' authority to have conducted

25 settlement negotiations on plaintiffs' behalf. We're not

1    questioning that.  We just want to know, because it's an

2    essential element of what may be a dispositive counterclaim,

3    did the Siegels authorize Mr. Marks to say to Mr. Schulman

4    they've accepted the offer.  It's not privileged.  It's not

5    confidential.  It's intended, by definition, to be conveyed to

6    the other side, and we believe that we're entitled to it.  We

7    believe that for these same reasons we're entitled to any

8    documents that pertain to the authority.  After all, that

9    affirmative defense still lingers on in the pleadings.  It

10   hasn't been dismissed.  And I believe that we're entitled to

11   resolve it one way or another as we proceed to trial.

12            THE COURT:  All right, thank you.

13            MR. BERGMAN:  Thank you, Judge.

14            THE COURT:  Mr. Toberoff?  Let me just ask you at the

15   start, Mr. Toberoff.  I guess I must be confused, because I

16   thought you had told me you were going to dismiss those

17   affirmative defenses.

18            MR. TOBEROFF:  Yes, we were, your Honor, and we in

19   fact drafted amended pleadings, and I sent them over to Mr.

20   Bergman and they refused to stipulate to -

21            THE COURT:  No, I remember that.

22            MR. TOBEROFF:  Okay.  But after that -

23            THE COURT:  But after that you told me that you were

24   going to make a motion to dismiss those.

25            MR. TOBEROFF:  After that we didn't make the motion

1    to dismiss.  We decided that we could just simply drop it in

2    our joint pretrial order, and it was suggested by one of the

3    attorneys that works for me that, to make this motion based on

4    this simple amendment a full-blown motion to the Court, that

5    would be unnecessary since we could drop it in the pretrial

6    order.  That was initially pled among some multiple affirmative

7    defenses.

8              THE COURT:  No, no, no, I know.  We've been over this

9    before.

10             MR. TOBEROFF:  I understand, your Honor.  But the

11   fact is that plaintiffs signed verified Interrogatory answers

12   on the question of Mr. Marks' authority.  They said he had

13   authority.  He obviously had authority to send the letter as

14   their attorney in the negotiations.  We have not once in this

15   litigation stood by or asserted the claim or defense, and

16   again, you mentioned earlier that you don't know that it even

17   is an affirmative defense.

18             THE COURT:  No, I don't think that's the way it came

19   up.  I think Mr. Bergman said he wasn't sure if it was an

20   affirmative defense.  That's my recollection of it.

21             MR. TOBEROFF:  Okay.

22             THE COURT:  But I could be wrong.

23             MR. TOBEROFF:  I think there was some mention of it

24   in -

25             THE COURT:  We had a colloquy on it.

24

1          **MR. TOBEROFF:**  Right.  I don't think I was going by a

2    transcript; I think I was going by something in the order.  But

3    be that as it may, we've never asserted this.  They've asked,

4    as I said, Interrogatories, verified answers, answered the

5    question as to authority.  They asked the question specifically

6    in Laura Siegel's deposition; she answered the question

7    specifically.  I can read you the answer.

8          The question was, again, put in two prior motions,

9    and for procedural reasons, because this is a retread and

10   essentially a motion of reconsideration without being a motion

11   of reconsideration with respect to re-deposing Laura Siegel,

12   that's also relevant.  But they've asked the question over and

13   over again.  They know the answer to the question.  He had

14   authority to send that letter.  That's not what this is about.

15         This is about using this as a red herring or an

16   excuse to enter and invade the sanctum of the attorney-client

17   privilege so that they could rephrase the question of authority

18   in legal buzz words to try and formulate, from an answer,

19   something that they can then claim will form an agreement.

20   That's all they're doing here.

21         There's no issue of whether Mr. Marks had authority

22   to send that letter.  He absolutely had the authority.  We've

23   said so over and over again.  I don't believe the fact that it

24   remains as an affirmative defense in our original complaint,

25   filed two years ago, when we've asked them to stipulate to

EXHIBIT UU

1   allow us to amend it and are simply going to do this in a joint

2   - and I will represent to the Court that we're going to do this

3   in our joint pretrial order, we'll drop that affirmative

4   defense, that that becomes the lynch pin to open the door to

5   start asking questions about their communications about this

6   authority.

7          The case law - Excuse me.  May I just get a glass of

8   water?

9       **(No audible response)**

10      **(Pause)**

11         **MR. TOBEROFF:**  Their theory that authority is

12   something that one intends to communicate to the other side,

13   and therefore they can ask questions about that authority with

14   respect to a settlement negotiation, doesn't work, because

15   during the settlement negotiation the authority to agree to any

16   one term or a number of terms in a complex negotiation, which

17   this was, is necessarily linked to your settlement strategy.

18   How much do you ask up front?  How much do you settle for?  All

19   those things are linked.  Just because the ultimate authority

20   of the attorney to represent you in the settlement negotiations

21   or to send a letter is necessarily communicated to the other

22   side, that doesn't implicate the substance of your settlement

23   discussions with that attorney.

24         **THE COURT:**  Let me just ask you a question, Mr.

25   Toberoff.  I just want to make sure I'm clearly understanding

26

1   you.  Are you saying that the October - was it October 19th

2   letter?

3            **MR. TOBEROFF:**  October 19th, 2001, yes.

4            **THE COURT:**  All right, which was signed by Mr. Marks,

5   right?

6            **MR. TOBEROFF:**  Yes.

7            **THE COURT:**  That that represents the statement of the

8   plaintiffs?

9            **MR. TOBEROFF:**  Yes.

10           **THE COURT:**  Okay.  All right.  Go ahead, if you have

11  anything further.

12           **MR. TOBEROFF:**  So, I'll just give you the question

13  that was already posed to Laura Siegel in her deposition.

14           **THE COURT:**  You don't need to read that again.

15           **MR. TOBEROFF:**  Okay.  I was going to give you her

16  answer to show that she's answered that question.

17           **THE COURT:**  You don't need to do that.  I've seen it.

18           **MR. TOBEROFF:**  Okay.

19           Now, the questions that they seek to - First of all,

20  as an initial matter, their motion with regard to Laura Siegel

21  is improper because it constitutes a motion for

22  reconsideration.

23           **THE COURT:**  Yeah, I read your argument on that.  I'm

24  familiar with that.

25           **MR. TOBEROFF:**  Do you have any questions for me about

1   that argument?

2           **THE COURT:**  I don't.

3           **MR. TOBEROFF:**  Okay.  They ask –

4           **THE COURT:**  I really don't need the two of you to

5   rehash what's in this (indicates).

6           **MR. TOBEROFF:**  Okay.

7           **THE COURT:**  And I'm holding up an eight-inch stack of

8   papers.  I really don't.

9           **MR. TOBEROFF:**  All right.  Well, I would just like to

10  point out one thing to you.

11          **THE COURT:**  Okay.

12          **MR. TOBEROFF:**  They have a question, they have only

13  two questions for Laura Siegel.

14              'Did you ever instruct Mr. Marks to communicate to

15              the lawyers for DC Comics that there should be a

16              correction made in this letter?'

17          And they put the cart before the horse, and they pre-

18  suppose that if a communication had taken place, then therefore

19  that was intended to be communicated to the other side, and

20  therefore, because it was intended to be communicated to the

21  other side, she has to answer this question.

22          There's no evidence that there was any such

23  communication to the other side objecting, and therefore, their

24  logic is flawed.  Without any evidence of this third-party

25  communication, they can't say there was any intention to

1    communicate this to the other side, and therefore you have to

2    answer questions as to whether such communication took place.

3         Do you see?  It's illogical.  And they're using this

4    one thought in a case which is curtailed, and we've

5    distinguished the case, to try and open the door to the whole

6    attorney-client privilege.  They've already done this with

7    Laura Siegel.  They already made this motion.  They made a

8    motion for reconsideration.  All these issues have been before

9    the Court before, and I don't -

10        **THE COURT:**  Yes, these issues do seem to have a

11   certain familiarity to them.

12        **MR. TOBEROFF:**  And I don't believe that because of

13   this vestigial 37th affirmative defense, which we've asked

14   could we please remove, and we didn't want to make a full-blown

15   motion, and we haven't asserted and we've constantly restated

16   that, no, this is not an issue, that that should be able to

17   open the door for them to invade the attorney-client privilege.

18        It's clear also from their papers they do not just

19   want to ask two questions, because they're constantly asserting

20   'and reasonable follow-up questions'.  And to the extent the

21   Court is inclined to grant any of this, and I don't think it

22   should be, these things can easily be posed in Interrogatories,

23   and in fact the cases say that these types of questions that

24   are mixed questions of law and fact are better posed in

25   contention Interrogatories which, if you find it necessary, we

1   would answer.

2          Thank you, your Honor.

3          **THE COURT:**  All right.  Thank you, Mr. Toberoff.

4          Mr. Bergman, anything further?

5          **MR. BERGMAN:**  One very quick point, your Honor.

6          Your Honor's question to Mr. Toberoff and his

7   response to you brought him closer than he's ever been before

8   to where we believe he has to go.  But he's just the attorney.

9          Throughout his argument, he kept saying that the

10  plaintiffs gave Mr. Marks authority to send the letter.  All we

11  want to know is whether they gave him authority to say 'the

12  family has accepted the October 16 offer'.

13         Thank you, your Honor.

14         **THE COURT:**  All right.  These two motions I'm going

15  to take under submission.  I will get a ruling out very

16  shortly.

17         **MR. TOBEROFF:**  Thank you, your Honor.

18         **MR. BERGMAN:**  Thank you, sir.

19         **THE COURT:**  All right, thank you.

20         I assume Ms. Larson is no relation to Judge Larson.

21         **MR. TOBEROFF:**  No relation.

22         Your Honor, I'm sorry, could I just ask you to

23  clarify, even though it's simple, because I'm emotional on this

24  issue, obviously, and I want to make sure what we are to do in

25  a declaration.

1          It's my understanding that we are to take the Bates

2    numbers of the stolen documents and put in a declaration that

3    such and such a range of numbers we have produced?

4          **THE COURT:**  No.

5          **MR. TOBEROFF:**  Okay.  Could you please repeat it for

6    me, because I want to make sure I'm clear.

7          **THE COURT:**  For example, Bates number, let's call it

8    'escrow'.  Let's try and take pejoratives out of it either way,

9    all right?  So I won't call them whistleblower documents; I

10   won't call them stolen documents.  I'm not denying they're

11   stolen, I'm not saying they're whistleblower documents; I'm

12   just trying to find a neutral term, so I'm calling it 'escrow'.

13   Escrow is usually a neutral term.  All right.

14          Escrow document 00004 corresponds to previously

15   produced document 00006.  Escrow document 00007 corresponds to

16   previously produced document 00009, and so on.

17          **MR. TOBEROFF:**  Okay.

18          **THE COURT:**  Privilege escrow document 00015 is a

19   privilege document which was listed on the privilege log as

20   document such and such.

21          **MR. TOBEROFF:**  Okay.

22          **THE COURT:**  Privilege documents get returned.  The

23   privilege documents that were listed on the privilege log get

24   returned.  The others get sent to defense counsel.

25          **MR. TOBEROFF:**  The others get sent to defense

1  counsel?

2          **THE COURT:**  From the escrow.

3          **MR. TOBEROFF:**  Right.  Even though we've produced

4  them, but because we're saying they're not privileged, they

5  will get sent to defense counsel.  Okay.

6          If we have to match it up that way, could we have a

7  little more time to do that, your Honor, because it will take -

8          **THE COURT:**  How much time do you need?

9          **MR. TOBEROFF:**  We're in the middle of opposing a

10 massive summary judgment motion, so as much time as I can get

11 would be appreciated.

12         **THE COURT:**  Yes, I noticed you were in the middle of

13 all that, because there was some question as to when these

14 motions would be heard, and we were told that it was too

15 difficult to hear them on the 23rd because motions needed to be

16 filed on the 23rd.  And then they were set on the 30th, and then

17 you stipulated to have your motions filed on the 30th.

18         **MR. TOBEROFF:**  Right.

19         **THE COURT:**  How much time do you need?

20         **MR. TOBEROFF:**  Three weeks.

21         **THE COURT:**  Three weeks?  But you've been through

22 this already, right?  You had to to know -

23         **MR. TOBEROFF:**  They're a stack like this (indicates),

24 and if we're matching up all the numbers, it means we've

25 produced 2000 documents, so going through those and finding the

32

1    production, the 2000 documents.  Also, this doesn't just

2    involve plaintiffs' production, and that's another question,

3    frankly, because the motion is directed at plaintiffs, but what

4    do we do to the extent that there are documents in the stolen

5    documents that don't belong to plaintiffs; that they are

6    documents of the Schusters or documents of other third parties,

7    or documents that appear on the privilege log of Don Bolson,

8    the attorney for Michael Siegel?

9         THE COURT:  Well, now, Mr. Toberoff, didn't you tell

10   me there were only two documents that hadn't been produced that

11   were unprivileged?

12        MR. TOBEROFF:  That's correct, but the ones that have

13   been produced, we still need to match up, and the ones that

14   were listed on the privilege log we would still need to match

15   up.  And we've produced the two documents that haven't been

16   produced.

17        THE COURT:  So, the fact that they're not documents

18   of the plaintiffs, they might be of some other parties, that

19   doesn't have anything to do with - You're just saying it would

20   take longer to match them up?

21        MR. TOBEROFF:  No.  What I'm saying is, this motion

22   only applies to plaintiffs.  It was a motion to compel

23   plaintiffs to do something regarding documents that are their

24   documents in their possession or control.  But out of an

25   abundance of caution and to satisfy everyone, I went through

33

1    the documents and privilege logs, pursuant to four or five

2    subpoenas of third parties, where I have documents pertaining

3    to those third parties.

4         THE COURT:  And are you saying that in the escrow

5    documents there are some documents that came from third

6    parties?

7         MR. TOBEROFF:  Absolutely.  Well, they're actually -

8         THE COURT:  Excuse me.  But documents that

9    nevertheless had already been produced?

10        MR. TOBEROFF:  Yes.

11        THE COURT:  So you are just talking about it taking a

12   little more time to get it done?

13        MR. TOBEROFF:  No.  I'm just talking about the fact

14   that in matching this up, I have to match it up to the

15   production not only -

16        THE COURT:  I understand that.  I understand that.

17        MR. TOBEROFF:  First of all, do you want me to -

18        THE COURT:  So it'll take three weeks you say?

19        MR. TOBEROFF:  Well, there's another question and

20   I'll get to it.  Their motion does not apply to these other

21   documents; it only applies to the plaintiffs.

22        MR. BERGMAN:  Right.

23        MR. TOBEROFF:  Because it's a motion to compel

24   plaintiffs' production, not a motion to compel a third party's

25   production.

1          **MR. BERGMAN:**  Your Honor, there is also a Rule 45

2    subpoena that was issued to Mr. Toberoff seeking the identical

3    documents which is included within the motion.

4          **THE COURT:**  All right.  You can have three weeks.

5    So, that'll be May 21st.  Match them up from whoever's files,

6    Mr. Toberoff.

7          All right, anything further?

8          **MR. BERGMAN:**  No, your Honor.

9          **MR. TOBEROFF:**  Thank you, your Honor.

10         **THE COURT:**  All right.  Thank you.

11         Any other matters?

12         **THE CLERK:**  No, that completes the calendar.

13         **THE COURT:**  All right.  We'll be in recess.

14    **(This proceeding was adjourned at 11:28 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    ___May 15, 2007___

*TONI HUDSON*

FEDERALLY-CERTIFIED TRANSCRIBER

EXHIBIT UU

776