# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:<br><br>JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>        Defendants. | Misc. Case No. 1:06MC0099<br><br>Case Nos.  SA CV 04-8400 SGL (RZx)<br>            SA CV 04-8776 SGL (RZx)<br><br>(Consolidated for Discovery Purposes)<br><br>Action Pending in the U.S. District Court for the Central District of California |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), by and through counsel, Jones Day, hereby submit this reply brief in further support of their motion pursuant to Fed. R. Civ. P. 45. Movants respectfully request that, despite Bulson's belated production of a privilege log, their motion should nonetheless be granted because of inherent deficiencies in the log and Bulson's failure to carry his burden to establish a claimed "common interest" with Joanne Siegel and Laura Siegel Larson, the plaintiffs in the Underlying Actions, so as to justify the failure to produce certain limited documents consisting of his written communications with them, withheld on the ground of attorney-client privilege. At the very least, Movants seek the production of those documents, an order requiring Mr. Bulson to appear for deposition, and for their costs and fees in connection with this motion.

CLI-1469591v1

## INTRODUCTION

Having done nothing in response to Movants' subpoena, and having repeatedly ignored

Movants' requests for responsive documents and a privilege log, Bulson and his counsel leapt

into action following Movants' service of this motion, by producing a privilege log on October

23, 2006 (one business day after the filing of this motion). The eleventh-hour production of this

privilege log is not sufficient to sustain the claims of privilege made here. While Bulson's

privilege log identifies correspondence between the deceased Michael Siegel and his attorney

Don Bulson (which Movants acknowledge is likely privileged), it also lists correspondence

between Mr. Bulson and the plaintiffs in the Underlying Actions and their attorneys. No basis,

however, has been provided for withholding this information on privilege grounds.

Knowing this full well, counsel for Mr. Bulson in his opposition brief engages in a litany

of attacks on purported problems with Movants' discovery in the Underlying Actions (Bulson Br.

at 4). Of course, counsel fails to substantiate any of his accusations (indeed, Plaintiffs have not

filed any discovery motion in the Underlying Actions) or, more importantly, explain why any of

that is relevant to the instant motion, which deals with Mr. Bulson's failure to comply with a

subpoena issued by this Court. The fact of the matter is that Mr. Bulson has made no effort at all

to comply with the subpoena, let alone carry his burden to justify his claim that certain

documents are subject to the "joint interest" exception to what would otherwise comprise a

waiver of the attorney-client privilege. For these reasons, Movants respectfully request that the

Court order Bulson to produce any and all such documents and appear for deposition.[1]

---

[1] In a last ditch attempt to avoid a court order, Mr. Bulson argues that he tried to compromise by
offering on November 1, 2006 – over two and a half months after the subpoena was served and almost
two weeks after this motion was filed "to represent that all responsive document had been listed in
Bulson's privilege log and even to produce certain privileged documents." (Toberoff Decl. ¶ 9). This
"offer" however, was only made in context of a request by Bulson's counsel to extend his time to respond
to this motion to compel, and based on a fallacious privilege claim to shield from discovery Bulson's
communication with third persons. (Weinberger Decl. Exs. 12-14). Moreover, the offer contained no

## I.    BULSON'S PRIVILEGE LOG IS LATE AND INSUFFICIENT

Bulson's privilege log was not produced until after this motion was filed, two full months after he served objections to the August 11, 2006 subpoena and after Movants' counsel had repeatedly requested a log to no avail. Bulson's counsel claims that Movants' counsel was informed as to the status of the document production and/or log (Williamson Decl. ¶ 5), but this is incorrect. The only time Bulson's counsel ever contacted Movants' counsel concerning the subpoena prior to the motion being filed on October 20, 2006 was: (i) to object to the subpoena on August 23 and (ii) confirm by telephone on September 7 that no deposition was going forward on September 12. (Weinberger Decl. ¶ 5). At no time did Bulson's counsel make any representation that he had received files from Mr. Bulson or that a log was being prepared. (*Id.*) He simply confirmed that the deposition was not going forward on the day noticed, and said that he had to provide an update on when Movants could expect a log. (*Id.*) Until this motion was filed, he never did. (*Id.*)

It is well settled that "the burden of proving the existence of the attorney-client privilege is on the party claiming the privilege." *In re Rospatch Sec. Litig.*, 1:90-CV-805, 1:90-CV-806, 1:90-CV-807, 1:91-CV-085, 1991 WL 574963, *5 (W.D. Mich. Mar. 14, 1991) (citing *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir.), *cert. denied*, 449 U.S. 494 (1980)). *See also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996); *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993); *Peyko v. Frederick*, 25 Ohio St.3d 164, 166 (1986) ("'[T]he burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] . . . .'" (citation omitted)). In meeting the burden of proving the existence of a privilege, the asserting party must

---

promise of when the documents might be produced or how extensive the production would be, nor did it address other components of this motion. That, coupled with the fact that discovery in the Underlying Actions closed on November 17, 2006 left Movants with no choice but to proceed with the motion.

CLI-1469591v1                                        3

identify each document withheld on a claim of privilege with "sufficient particularity," and
include an index of the documents with a "particularized description of the contents of each
document." *Rospatch*, 1991 WL 574963 at *5 (citing *Walsh*, 623 F.2d at 493; *In re
Richardson-Merrell, Inc.*, 97 F.R.D. 481, 484 (S.D. Ohio 1983)).

Here, Bulson's late privilege log is on its face insufficient to sustain a claim of privilege,
as it is woefully inadequate in terms of the level of information provided about the purportedly
privileged documents. Bulson's log (Williamson Decl. Exh. A) classifies withheld documents by
the following categories: "Log #," "Date of Document," "Identity of Recipient(s)," "Identity of
Author(s)," "Document Description," "Privilege Claim," and "Present Location." (*Id.*) The
"Document Description" category does not, however, describe the document at all, instead only
identifying the document by type: "Letter," "Email," "Notes," or otherwise. Absent is any sort of
indication to the Court or the opposing party as to what, exactly, the document relates to and why
it is a privileged subject matter, as required by Rule 26(b)(5).

The reason for the rule's requirements is to avoid abuse of the privilege simply because a
client and lawyer are corresponding with each other. Indeed, it is well accepted that simply
because a document is the subject of communication between an attorney and his client, that
document does not become subject to the privilege; the "mere relation of attorney and client does
not raise a presumption of confidentiality of all communications made between them."
*Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638 (1994). Consequently, a party does not
satisfy its burden of establishing the privilege when it makes blanket claims of privilege with
respect to entire files simply because attorneys had something to do with them; claims of
privilege must be supported on a document-by-document basis. *See, e.g., United States v. White*,
970 F.2d 328, 334 (7th Cir. 1992); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir.
1990). The party asserting the privilege has the burden of describing the nature of withheld

CLI-1469591v1                                    4

documents in a manner that, without revealing information itself privileged or protected, will

enable other parties to assess the applicability of the privilege. Fed R. Civ. P. 26(b)(5);

*Antonious v. Spalding*, 1998 U.S. Dist. LEXIS 10725, at *3 (D. Md. April 21, 1998). Without

that knowledge, Movants have no platform from which to challenge the assertion, which is the

very reason that Rule 26(b)(5) requires the level of disclosure that it does. Accordingly, Bulson's

log is insufficient.[2]

## II.    BULSON HAS NOT MET HIS BURDEN OF ESTABLISHING A COMMON INTEREST FOR CERTAIN COMMUNICATIONS WITH PLAINTIFFS AND THEIR COUNSEL

Even had Bulson's log been timely and provided greater detail so as to permit Movants to

analyze the log to determine whether a claim of privilege was proper, there are certain

communications listed on the privilege log which, based on undisputed facts in the Underlying

Actions, cannot be subject to Mr. Bulson's claim of "joint interest."

The so-called "joint defense," "common interest" or "community of interest" rule is "an

exception to the general principle that communications in the presence of, or shared with, third-

parties destroys the confidentiality of the communications and the privilege protection that is

dependent upon that confidentiality." 1 Paul R. Rice, *Attorney-Client Privilege*, § 4:35 at 192-95

(2d ed. 1999) (hereinafter "Rice"). *See also Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342,

347-49 (N.D. Ohio 1999) (adopting "restrictive approach" to common interest exception,

limiting opportunity to claim the common interest privilege to show concurrent *legal* interest, as

opposed to commercial interests); *Cigna Ins. Co. v. Cooper Tires & Rubber, Inc.*, 3:99CV7397,

---

[2] Bulson's citation to the approval of the California Magistrate Judge for his log format fails for the simple reason that this proceeding is not taking place in California, but in Ohio. *See* Fed. R. Civ. P. 45(a)(2) (requiring subpoena *duces tecum* and for deposition to be issued from the court for the district where the production or inspection is to be made or deposition is to be taken, not from the court in which the underlying action is pending). *See also New York v. American Power & Elec. Power Serv. Corp.*, No. 2:04-CV-1098, 2:05-CV-360, 2006 WL 1526110, *1 (S.D. Ohio May 26, 2006) (holding that a "conclusory and often vague privilege log precludes this Court from assessing the applicability of the privilege in favor of Defendants" and, consequently, granting motion to compel).

2001 WL 640703, *2 (N.D. Ohio May 21, 2001) ("the 'common interest' extension of the
privilege should be construed narrowly, rather than expansively."). If the parties to a
communication share some common legal goal, then they may share otherwise privileged
communications without concern that they will later have to disclose them as waived. *MPT, Inc.
v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, *6 (N.D. Ohio Feb. 9, 2006).

The common interest doctrine is a narrow exception to the rule that the privilege
governing communications between clients and their counsel is waived when those
communications are shared with third parties. The narrowness of the common interest exception
is underscored by that fact that "this protection is not applicable to disputes between the
participants in the joint defense who may subsequently find themselves in conflict over the very
matter about which they were previously joining forces against a common adversary." Rice, §
4:35 at 198. *See also MPT*, 2006 WL 314435 at *7 ("[A]dversarial aspects of the relationship
such as license negotiations are not protected."). Nor is it applicable where the parties only have
a common "commercial interest." *Id.* at *6. *Libbey Glass*, 197 F.R.D. at 349. "The common
interest doctrine does not encompass a joint business strategy which happens to include as one of
its elements a concern about litigation." *Id.* at 348. *MPT* is directly on point here.

The Court will note that there are numerous entries on the privilege log (Williamson
Decl. Ex. A) evidencing communications between Bulson, as Michael Siegel's attorney, on the
one hand, and Plaintiffs Joanne Siegel and Laura Siegel Larson or their representatives, their
former counsel Kevin Marks of Gang Tyre Ramer & Brown or present counsel Marc Toberoff,
on the other. As set forth in their moving brief, defendants have asserted counterclaims in the
Underlying Action to enforce a settlement agreement with Plaintiffs that the parties reached in
October 2001. (Moving Br. at 4 & Ex. 4, ¶¶ 47-56). Plaintiffs repudiated that agreement by
letter to DC and its counsel on September 21, 2002, in which they indicated that any deal with

CL1-1469591v1                                        6

defendants was off and that they were terminating all negotiations. (*Id.*). Indeed, no further
negotiations took place after September 21, 2002 until the Underlying Actions were filed in
October 2004. (*Id.*).

Mr. Bulson's client, Michael Siegel (now deceased), owned a vested 25% share of the
copyright termination interest that was the subject of the October 2001 settlement and that is now
the subject of the Underlying Actions. And while defendants did not negotiate the 2001
settlement with Mr. Siegel directly, he stood to benefit from it and Mr. Bulson was tangentially
involved in the negotiations, thus creating an arguably legitimate basis for a claim of joint or
common interest, protecting communications between Plaintiffs' counsel and Mr. Bulson on the
subject of the settlement, to the extent they occurred, before October 2002 (although such a
claim would only apply to communications in furtherance of a joint settlement). However, when
on September 21, 2002 Plaintiffs repudiated their agreement and announced that settlement
discussions had ceased, that potentially legitimate common interest ended.

Furthermore, Plaintiffs and Michael Siegel undisputedly assumed an adversarial position
vis-à-vis their ownership shares after Plaintiffs repudiated the settlement, thus eviscerating any
claim of joint privilege, around the time that the settlement was repudiated. Plaintiffs retained a
California company, IP Worldwide ("IPW") (in which their current counsel Mr. Toberoff is a
principal) to represent them in connection with efforts to exploit their Superman termination
interest. (Weinberger Decl. Ex. 15). Then, in January 2003, Plaintiffs and IPW entered into a
second agreement (*id.* Ex. 16) in which they acknowledged certain "risks and potential problems
regarding Michael Siegel" and agreed that IPW partner Ariel Emanuel "will attempt to purchase
all of Michael Siegel's rights, title and interest" in his termination rights in connection with
IPW's representation of Plaintiffs. (*Id.*) Such a transaction had nothing to do with Michael
Siegel's prior common interest with Plaintiffs in seeking a settlement with defendants.

Received    Nov-21-06  07:17am    From-2185790212                    To-                    Page  008

These earlier agreements between Plaintiffs and IPW also cast substantial doubt on

Bulson's claim that post-January 2003 correspondence between Toberoff and Bulson, or their

clients, Plaintiffs and Michael Siegel, fall under any purported common interest.[3] There are at

least 15 separate communications disclosed on Bulson's log that clearly fit in this timeframe:

| Log # | Date | Author | Recipient | Description | Privilege Claimed |
|-------|------|--------|-----------|-------------|-------------------|
| 299 | 4/16/03 | Laura & Joanne Siegel (Plaintiffs) | Don Bulson | Letter | Attorney/Client ("AC") – Joint Interest ("JI") |
| 301 | 4/30/03 | Marc Toberoff | Bulson | Letter | AC/JI |
| 319 | 6/18/03 | Bulson | Toberoff | Letter | AC/JI |
| 325 | 7/16/03 | Toberoff | Bulson | Letter | AC/JI |
| 327 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 328 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 377 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 378 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 379 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 380 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 381 | 11/18/04 | Toberoff | Bulson | Email | AC/JI |
| 386 | 11/24/04 | Bulson | Toberoff | Email | AC/JI |
| 388 | 11/29/04 | Toberoff | Bulson | Email | AC/JI |
| 393 | 1/17/05 | Toberoff | Bulson | Email | AC/JI |
| 412 | 11/18/05 | Bulson | Toberoff | Email | AC/JI |

Bulson, of course, makes no effort either through his belated privilege log or opposition

to this motion to support his claim of joint interest with Plaintiffs. That is because no such joint

interest exists, and any privilege was waived when Messrs. Toberoff and Bulson or their clients

---

[3] Any remaining doubt must be resolved against a finding of joint interest, since Michael Siegel's
"last act" before his passing was to affirmatively exclude Plaintiffs from any future ownership stake in his
share of the Superman termination interest. (Moving Br. Ex. 5).

exchanged correspondence thereby breaking the confidentiality required to maintain the privilege.[4]

      As noted in their moving brief, the 15 documents sought here – none of which have been produced by Plaintiffs in the Underlying Actions – are important to Movants' discovery efforts in the underlying litigation for two chief reasons. First, from a review of the January 21, 2003 agreement between Plaintiffs and IPW in which IPW was to attempt to purchase Michael Siegel's termination interest, Plaintiffs and IPW were concerned about "various risks and potential problems" regarding Michael Siegel (*i.e.*, that Michael Siegel might have had a different view as to the nature and scope of the termination rights). Second, any offer made by Toberoff or Emanuel on behalf of IPW to purchase Michael Siegel's interest has a bearing on the valuation issues at stake in the Underlying Actions. Given the limited nature of the documents (15 letters or emails) sought from Mr. Bulson, and the broad scope of discovery afforded by Rule 26, Bulson should be ordered to produce these documents.

---

[4] Incredibly, Bulson argues in his opposition to this motion that Movants' motion relating to Bulson's privilege claims "is flawed as they have not challenged the detailed privilege assertions embodied in Bulson's privilege log." (Bulson Br. at 9). However, since Bulson *withheld* his privilege log until *after* Movants filed their motion, there was no opportunity to challenge its contents.

## CONCLUSION

Accordingly, and for the reasons set forth in their moving brief, Movants respectfully

request that their motion to compel be granted.

Respectfully submitted,

By     s/Meggan A. Rawlin
David A. Kunik  (0006418)
Meggan A. Rawlin  (0074215)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dakunik@jonesday.com
mrawlin@jonesday.com

Counsel for Movants

Of counsel:

Roger L. Zissu
James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, PC
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901

CLI-1469591v1                                     10

## CERTIFICATE OF SERVICE

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications

Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics hereby

certify that a copy of the foregoing Reply Memorandum in Further Support of Motion to Compel

Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for

Attorneys' Fees was served on November 20, 2006 via U.S. Mail, facsimile, and the Court's

electronic case filing system on the following counsel:

> Marc Toberoff, Esq.
> Law Offices of Marc Toberoff, PLC
> 2049 Century Park East, Suite 2720
> Los Angeles, CA 90067
> Telephone: (310) 246-3333
> Facsimile: (310) 246-3101
>
> Joshua Ryland, Esq.
> Renner Otto Boisselle & Sklar, LLP
> 1621 Euclid Avenue, Ninth Floor
> Cleveland, Ohio 44115
> Telephone: (216) 621-1113
> Facsimile: (216) 621-6165
>
>            s/ Meggan A. Rawlin
>            Meggan A. Rawlin
>            Attorney for Movants

CLI-1469591v1                                  11

# EXHIBIT B

1  WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone: (310) 858-7888
   Fax: (310) 550-7191
5
   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6  Roger L. Zissu (Admitted *pro hac vice*)
   James D. Weinberger (Admitted *pro hac vice*)
7  866 United Nations Plaza
   New York, New York 10017
8  Telephone: (212) 813-5900
   Fax: (212) 813-5901
9
   PERKINS LAW OFFICE, P.C.
10 Patrick T. Perkins (Admitted *pro hac vice*)
   1711 Route 9D
11 Cold Spring, New York 10516
   Telephone: (845) 265-2820
12 Fax: (845) 265-2819

13 Attorneys for Defendants and Counterclaimant

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16  JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case Nos. [Consolidated for Discovery]: |
| 17            Plaintiffs, | CV 04-8400 SGL (RZx) |
| | CV 04-8776 SGL (RZx) |
| 18  vs. | Hon. Steven G. Larson, U.S.D.J. |
| | Hon. Ralph Zarefsky, U.S.M.J. |
| 19  WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | **SUPPLEMENTAL DECLARATION OF WAYNE M. SMITH IN FURTHER SUPPORT OF** |
| 20            Defendants. | **DEFENDANTS'** |
| 21  JOANNE SIEGEL and LAURA SIEGEL LARSON, | **MOTION TO COMPEL PRODUCTION OF WHISTLE-BLOWER DOCUMENTS** |
| 22            Plaintiffs, | |
| | **DISCOVERY MATTER** |
| 23  vs. | **LOCAL RULE 37** |
| TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER | |
| 24  BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION | Time: 10:00 a.m. |
| 25  PRODUCTION INC.; DC COMICS; and DOES 1-10, | Date: April 16, 2007 |
| | Courtroom: 540 |
| 26            Defendants. | Mag. Judge Ralph Zarefsky |
| 27  AND RELATED COUNTERCLAIMS | Discovery Cutoff: Nov. 17, 2006 |

28

{F0031625.1}

1        I, Wayne M. Smith, declare and state as follows:

2          1.     I am an attorney, admitted to practice before the Supreme Court of the

3 State of California and before this Court, and am employed by defendant Warner

4 Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and

5 Chief Patent Counsel.  I submit this supplemental declaration in further support of

6 Defendants' Motion to Compel Production of Whistle-blower Documents.  I have

7 personal knowledge of the facts contained within this declaration, and, if called

8 upon as a witness, I could and would testify competently thereto.

9          2.     After Mr. Toberoff raised the issue of the packaging the documents

10 may have arrived in, the delivery logs at the Warner Bros. studio lot were checked

11 for June 28, 2006, and it was determined that no packages or sets of documents

12 corresponding to the Superman Documents had been received via delivery.

13 Therefore, the documents almost certainly arrived by mail and whatever packaging

14 they were contained in had been disposed of per the usual practice of the office staff

15 of the recipients.  Because Warner Bros. does not "log" or "track" incoming mail,

16 assuming the Whistle-blower documents in fact arrived by mail, there would be no

17 record of  their receipt at the studio.

18         3.     In paragraph 9 of my March 26, 2007 declaration, I identified certain of

19 the Superman documents at issue that have not been produced by Plaintiffs in this

20 litigation.  One of the categories of documents was correspondence between plaintiff

21 Laura Siegel Larson and her estranged (and now deceased) step-brother, Michael

22 Siegel, relating to Mr. Siegel's share of the termination interest at stake in this

23 litigation.  Among these documents, I recall seeing at least one letter between

24 Michael and Laura Siegel Larson, if not more.  I am informed by Defendants'

25 counsel that no such letter has ever been produced in the case.  Further, I have

26 reviewed the privilege logs produced by Plaintiffs and no such letter is identified on

27 any of them.

28 ///

[P0031625.1]

1    I declare under penalty of perjury of the laws of the United States of America

2  that the foregoing is true and correct.

3         Dated this 2nd day of April, 2007 at Burbank, California.

4

5    _____
                    Wayne M. Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT C

WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone:  310-858-7888
Fax:          310-550-7191
Email:        mbergman@wwllp.com

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone:  212-813-5900
Fax:          212-813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, NY 10516
Telephone:  845-265-2820
Fax:          845-265-2819

Attorneys for Defendants and Counterclaimant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC. WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SA CV 04-8400 SGL (RZx)<br>Case No. SA CV 04-8776 SGL (RZx)<br><br>Hon. Stephen G. Larson, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**NOTICE OF MOTION AND JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THE COURT'S 4/30/07 ORDER AND MOTION FOR SANCTIONS**<br><br>Time:         10:00 a.m.<br>Date:         October 15, 2007<br>Place:        Courtroom 540<br>Mag. Judge Ralph Zarefsky<br>Discovery Cutoff: Nov. 17, 2006 |

021

# TABLE OF CONTENTS

I.      DEFENDANTS' INTRODUCTORY STATEMENT .......................................1

II.     PLAINTIFFS' INTRODUCTORY STATEMENT ....................................3

III.    DEFENDANTS' CONTENTIONS .............................................6

        A.      RELEVANT BACKGROUND ...........................................6

        B.      ARGUMENT ........................................................10

        1.      The "Defamatory" Cover Letter To The Escrow
                Documents...............................................................12

        2.      Post-Litigation Attorney-Client Communications............................13

        3.      Plaintiffs and Mr. Toberoff Cannot Use An Entry On a
                Third Party's Privilege Log To Prevent the Escrow
                Officer From Releasing Documents That Were Unlisted
                On Their Own Privilege Logs...............................................14

        4.      The Escrow Holder Cannot Fulfill The Court's Order
                Without Matching Up The Escrow Documents With the
                Documents and Privilege Log Entries Identified in
                Mr. Toberoff's Declaration. ..............................................20

        C.      CONTEMPT SANCTIONS ARE WARRANTED HERE ...............23

IV.     PLAINTIFFS' CONTENTIONS ..............................................24

        FACTUAL AND PROCEDURAL BACKGROUND...........................24

        1.      Documents Stolen from Plaintiffs' Attorneys' Files .........................25

        2.      The Court's April 30, 2007 Order..........................................28

        ARGUMENT.................................................................31

        A.      Plaintiffs' Counsel Fully Complied With the Court's
                April 20, 2007 Order .....................................................31

        1.      Plaintiffs Attorney-Client Communications After
                Commencement of Litigation Retain Their Privilege.........................32

        2.      The "Defamatory Cover Letter" Discussing The Contents Of
                Privileged Communications Listed In The Privilege Logs Should Not
                Be Disclosed Per The Order's Rationale ...............................34

i

3.     Per The Order, The Two Letters Listed On The Privilege Log Of Non-Party Attorney, Don Bulson, Should Not Be Disclosed ................... 37

B.     Defendants' Improper Attempt To Influence And Interfere With The "Escrow" Process Should Not Be Countenanced ............................. 42

C.     Sanctions Against Plaintiff Are Improper ........................................... 44

D.     Defendants Should Be Sanctioned For Their Attempt to Influence the Escrow Process ...................................................................................... 45

V.     DEFENDANTS' CONCLUSION ................................................................ 45

VI.     PLAINTIFFS' CONCLUSION ................................................................... 46

# TABLE OF AUTHORITIES

## I.     DEFENDANTS' AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Cunningham v. Connecticut Mut. Life Ins.*
    845 F. Supp. 1403 (S.D. Cal. 1994) ................................................................18

*Fox v. California Sierra Fin. Servs.*
    120 F.R.D. 520, 525 (N.D. Cal. 1988) .........................................................18

*In re HBOC, Inc., ERISA Litig.*
    2005 U.S. Dist. LEXIS 7098 at \*22 (N.D. Cal. Mar. 31, 2005) ...................17

*Housing Rights Center v. Sterling*
    2004 U.S. Dist. LEXIS 28879, \*10 (C.D. Cal. Dec. 29, 2004) ....................23

*NIDEC Corp. v. Victor Co. of Japan*
    2007 U.S. Dist. LEXIS 48841 at \*9 (N.D. Cal. July 3, 2007) ...............17, 19

*Thelen Reid & Priest L.L.P. v. Marland*
    2007 U.S. Dist. LEXIS 17482 at \*26-\*28 (N.D. Cal. Feb. 21, 2007) ..........18

*Weil v. Investment Indicators Mgm't, Inc.*
    647 F.2d 18, 25 (9th Cir. 1981) (*Id.* at ¶ 27) ...................................................12


**STATUTES**

Fed. R. Civ. Pro. 37(b) ................................................................................23

Fed. R. Civ. Pro. 37(b)(1) ...........................................................................23

Fed. R. Civ. Pro. 37(b)(2) ...........................................................................23

Fed. R. Civ. Pro. 72(a) ..................................................................................8

Local Rule 72-2.1 ..........................................................................................8


**TREATISES**

1 Paul R. Rice, *Attorney-Client Privilege*, § 4:35 at 192-95 (2d ed. 1999).............14

## II.    PLAINTIFFS' AUTHORITIES

**CASES**                                                        <u>PAGE(S)</u>

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*
    408 F.3d 1142 (9th Cir. 2005)...................................................................42

*Cunningham v. Connecticut Mut. Life Ins.*
    845 F. Supp. 1403 (S.D. Cal. 1994) ......................................................41

*Fox v. California Sierra Fin. Servs.*
    120 F.R.D. 520, 525 (N.D. Cal. 1988) ..................................................41

*Gomez v. Vernon*
    255 F.3d 1118 (9th Cir. 2001)...............................................................42

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*
    115 F.R.D. 308 (N.D. Cal. 1987) ..........................................................40

*Imperial Corporation of America v. Durkin*
    174 F.R.D. 475 (S.D.Cal.1997)..............................................................42

*In re Dayco Corp. Derivative Sec. Litig.*
    102 F.R.D. 468 (S.D.Ohio 1984) ...........................................................35

*In re Grand Jury Proceedings Involving Berkley and Co., Inc.*
    466 F.Supp. 863 (D. Minn. 1979) .........................................................35

*In re Regents of the Univ. of Cal.*
    101 F.3d 1386 (Fed.Cir.1996) ...............................................................39

*Massachusetts Mut. Life Ins. Co. v. Cerf*
    177 F.R.D. 472 (N.D.Cal. 1998) ...........................................................36

*NIDEC Corp. v. Victor Co. of Japan*
    ___ F.Supp.2d ____, 2007 WL 1994171, 2007 U.S. Dist. LEXIS 48841 at
    *9, *10 (N.D. Cal. July 3, 2007) .....................................................39, 40

*Resolution Trust Corp. v. Dean*
    813 F.Supp. 1426 (D.Ariz. 1993)...........................................................35

*Shamis v. Ambassador Factors Corp.*
    34 F.Supp.2d 879 (S.D.N.Y. 1999).........................................................42

*Tennenbaum v. Deloitte & Touche*
    77 F.3d 337 (9th Cir. 1996) ..................................................................35

*Thelen Reid & Priest L.L.P. v. Marland*
    2007 WL 578989, 2007 U.S. Dist. LEXIS 17482 at *26-*28 (N.D. Cal. Feb.
    21, 2007) ..............................................................................................41, 42

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*
    164 F.R.D. 245 (D.Kan.1995) ................................................................36

*United States v. Chen*
    99 F.3d 1495 (9th Cir. 1996) .................................................................36

*United States ex. rel. Mayman v. Martin Marietta Corp.*
    886 F. Supp. 1243 (D. Md. 1995) ..........................................................36

**STATUTES**

Fed. R. Civ. Pro. 37(b)(2) ...........................................................................45

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that on October 15, 2007, or as soon thereafter

3    as the matter may be heard, Defendants Time Warner Inc., Warner

4    Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television

5    Production Inc. and Defendant and Counterclaimant DC Comics ("Defendants")

6    will move to enforce Magistrate Zarefsky's April 30, 2007 Order and for contempt

7    before the Honorable Ralph Zarefsky, United States District Court, Central District

8    of California, Western Division, Roybal Federal Building, 255 East Temple Street,

9    Los Angeles, California 90012, Courtroom 540.  The grounds for this Motion are

10   that Plaintiffs and their counsel Mr. Toberoff have failed to comply with

11   Magistrate Zarefsky's April 30, 2007 Order regarding the Escrow Documents.

12        This Motion is made following the conferences of counsel pursuant to L.R.

13   37-1, which took place on July 5, 2007 and on July 31, 2007.  This Motion is based

14   on this Notice; the accompanying Joint Stipulation re: Defendants' Motion to

15   Compel Plaintiffs and Mr. Toberoff to Comply with the Court's 4/30/07 Order and

16   Motion for Sanctions; the declarations submitted by the parties; all prior pleadings

17   and proceedings in this matter; and all oral and written evidence to be presented at

18   the hearing, if any, on this motion.

19

20   DATED:        September __, 2007        Respectfully submitted,

21                                          WEISSMANN WOLFF BERGMAN
                                            COLEMAN GRODIN & EVALL, LLP
22                                          -and-
                                            FROSS ZELNICK LERMAN ZISSU, LLP
23                                          -and-
                                            PERKINS LAW FIRM, PLC
24

25                                          By_____
                                               Michael Bergman
26                                             Attorneys for Defendants

27

28

                                        1                                        **027**

## JOINT STIPULATION

### I.    DEFENDANTS' INTRODUCTORY STATEMENT

Defendants bring this motion for contempt and to enforce the Court's April 30, 2007 Order requiring that any "Escrow Documents" that were not previously produced or listed by Plaintiffs or their counsel on any privilege logs should be produced to Defendants.

As the Court will recall, this dispute began in June 2006, when Defendants received several anonymous packages containing copies of documents apparently from the files of Plaintiffs' counsel Marc Toberoff. Given the unusual receipt of these documents, which appeared to include both privileged and non-privileged communications, Defendants turned them over to a neutral third party pending an agreement with Mr. Toberoff or an order of the Court regarding their proper disposition. Defendants and Mr. Toberoff were not able to reach a resolution, however; indeed, even after Defendants served discovery requests on both Plaintiffs and on Mr. Toberoff seeking those exact documents, Plaintiffs and Mr. Toberoff refused not only to produce non-privileged documents but also to provide Defendants with any privilege logs addressing those documents. Defendants therefore were forced to seek the help of the Court, filing a motion to compel the production of the documents.

During the April 30, 2007 hearing on that motion, the Court chose a neutral designation for the documents, calling them "Escrow Documents," and ruled that Defendants are entitled to receive from the escrow holder any Escrow Documents that are not privileged or that were not listed on a privilege log. The Court's Order was based upon Mr. Toberoff's unequivocal representation during the hearing that each Escrow Document had been either previously produced in the litigation or listed on a privilege log; a representation that was intended to clarify the apparent "wiggle room" in the declaration Mr. Toberoff submitted to the Court in support of Plaintiffs' portion of the joint stipulation. Thus, the Court ordered Mr. Toberoff to

**028**

1 submit a sworn declaration listing each Escrow Document by Bates number and

2 matching up each Escrow Document with a corresponding production number or

3 privilege log entry.

4      Although there were no objections filed to the Court's April 30, 2007 Order,

5 Mr. Toberoff nevertheless thereafter took it upon himself to inject additional

6 wiggle room into the purportedly unequivocal statement he made to the Court

7 during the hearing, violating both the spirit and the letter of the Court's Order. On

8 the court-mandated date of May 21, 2007, Mr. Toberoff submitted a declaration

9 that is contrary to the representation he made to the Court, listing a number of

10 Escrow Documents that had neither been produced nor listed on a privilege log.

11 Most critically, Mr. Toberoff prefaced that declaration with a letter containing

12 instructions to the escrow holder that effectively prevents the escrow holder from

13 turning over the documents that Defendants are entitled to under the Court's Order

14 without further Court intervention.

15      As justification for his position, Mr. Toberoff has claimed a number of

16 "implied exceptions" to the Court's Order, and has insisted that the escrow holder

17 either honor these exceptions, or refrain from releasing any documents to the

18 Defendants. At this point, since this matter has been resolved by the Court's April

19 30, 2007 Order, Mr. Toberoff's arguments come too late. The Court's bright-line

20 Order did not leave room for dispute, and Plaintiffs and Mr. Toberoff should have

21 filed timely objections to that ruling if they disagreed with it in any way. Having

22 forgone their right to file objections, they cannot be heard to complain now.

23 Furthermore, none of Mr. Toberoff's purported "exceptions" to the Order are valid;

24 in fact, each purportedly excepted category of documents was subsumed within the

25 Court's ruling and specifically contemplated by the Order. Accordingly,

26 Defendants have brought this motion for contempt and to enforce this Court's

27 April 30, 2007 Order.

28

## II.    PLAINTIFFS' INTRODUCTORY STATEMENT

Plaintiffs' have fully complied with Magistrate Zarefsky's April 30, 2007 order ("Order"). The Court ordered Plaintiffs' counsel to produce a declaration specifically referencing, by the bates numbers, which "Escrow Documents" had already been produced and which had already been listed on a privilege log, so that the escrow agent, David Eisen, Esq., of Arnold and Porter LLP, could appropriately disburse the Escrow Documents. Defendants admit, as they must, that Plaintiffs' counsel, Marc Toberoff, drafted and furnished to Mr. Eisen a declaration which fully complied with the Court's Order.

The vast majority of the "Escrow Documents" were privileged or had already been produced, and were designated as such in Mr. Toberoff's declaration. However, 9 documents (4 of which are merely fax cover or confirmation sheets) of the 839 pages of "Escrow Documents" did not fit squarely in the Order. This small handful of documents fall into three categories that fell between the "cracks" of the Order and at the hearing, but are clearly privileged: (i) 6 *post-litigation attorney-client communications*, which, pursuant to the parties' standing agreement (admitted by Defendants herein) need not have been listed in a privilege log; (ii) the "defamatory cover letter" enclosing and describing the contents of many of the attorney-client communications, held in escrow, that were identified on the privilege logs of Plaintiffs and non-party witnesses; and (iii) 2 letters between Mr. Toberoff and the attorney for Plaintiff Laura Siegel Larson's half-brother, Michael Siegel, both statutory beneficiaries of the "Superman" termination notices, which were listed on Bulson's privilege log and identified as such in Mr. Toberoff's declaration.

Examining each of the categories in turn, Defendants' overreaching becomes apparent. With respect to the post-litigation attorney-client communications, both sides had agreed to not list such communications in their privilege logs, yet two examples of such communications were included in the "Escrow Documents."

1   This very point was raised in Plaintiffs' submissions on the original motion, but

2   was inadvertently not addressed by either party or the Court at the hearing.  Yet

3   now the defendants wish to use the phrase "not listed on a privilege log" as a

4   crowbar to pry into documents clearly subject to attorney-client privilege and

5   which, as Defendants admit, need not have been listed on a privilege log pursuant

6   to the parties standing agreement.  Defendants' overreaching and hyper-technical

7   application should be rejected as contrary to the obvious spirit of the Order and the

8   parties' express agreement.

9          The "defamatory cover letter," which contains and discloses the substance of

10  confidential attorney-client communications, was not the subject of Defendants'

11  motion to compel, nor was it addressed at the hearing or in the Order, as

12  acknowledged by Mr. Eisen in his May 24, 2007 letter.  Moreover, Defendants, in

13  their original moving papers, drew repeated and clear distinctions between the

14  "cover letter" and the subject of their motion -- the so-called "whistleblower

15  documents," and should not be permitted to now conflate the two.  If Defendants

16  desired access to the cover letter, they should have sought such access in their

17  original joint stipulation.  Moreover, the cover letter discloses the contents of

18  privileged communications and work product identified in the privilege logs of

19  Plaintiffs and non-party witnesses and, in turn, identified in Mr. Toberoff's Court

20  ordered declaration.

21         The third category of disputed documents were identified in Mr. Toberoff's

22  declaration as being listed in the privilege log of non-party witness, Mr. Bulson,

23  and fall squarely within the Order as not subject to disclosure by Mr. Eisen.

24  Moreover, the correspondence embodies settlement and litigation strategies

25  between Plaintiffs and Michael Siegel, both statutory beneficiaries of the

26  "Superman" termination notices at issue in this litigation, and, as such, are

27  protected by the joint interest privilege and work product doctrine.

28

1    Plaintiffs have not kept the "neutral" Mr. Eisen from discharging his duties.

2    In fact, Mr. Eisen's May 24, 2007 letter, specifically acknowledges the validity of

3    Plaintiffs' concerns that the documents are not the direct subjects of the Order.  On

4    the contrary, the record reflects that Defendants, led by their counsel, Michael

5    Bergman, once obtaining the Court's Order by touting the purportedly "neutral"

6    protocol they followed, immediately embarked on an overreaching campaign to

7    improperly influence Mr. Eisen, abusing his position and the Court's Order.

8    Defendants' entire motion is little more than a "hit piece," and is falsely

9    premised on the notion that Plaintiffs' counsel intentionally misrepresented to the

10    Court that all of the "Escrow Documents" had been produced or listed in a

11    privilege log.  As set forth above, Mr. Toberoff's statement was accurate with

12    respect to the *vast majority* of the 839 pages of "Escrow Documents" documents.

13    The omission of seven documents (four of which are fax cover sheets), comprised

14    of post-litigation attorney-client communications (which need not have been listed

15    on a privilege log) pursuant to the parties' standing agreement, and the

16    "defamatory cover letter," which was not the subject of Defendants' motion to

17    compel, was obviously inadvertent.  For Plaintiffs' counsel to inadvertently neglect

18    at the hearing to bring up the special circumstances surrounding this very limited

19    number of documents is entirely understandable.  However, Plaintiffs' opposition

20    to defendants' motion to compel *did* contain specific references to these privileged

21    documents.  The only documents *not* addressed in Plaintiffs' papers were the two

22    Bulson letters, which are clearly covered by the Order, as they are listed in Mr.

23    Bulson's privilege log and identified as such in Mr. Toberoff's declaration.

24    Defendants' naked attempt to manipulate and overreach to gain access to

25    privileged material should not be countenanced as it violates both the spirit,

26    rationale and the letter of the Court's Order.  Accordingly, Defendants' motion

27    should be denied in its entirety.

28

III.    **DEFENDANTS' CONTENTIONS**

    A.    **RELEVANT BACKGROUND**

As described in detail in Defendants' prior motion, in June 2006, Defendant Warner Bros. Entertainment Inc, ("Warner Bros.") received several anonymous packages containing what are now known as the Escrow Documents. Because it was apparent that the Escrow Documents came from Mr. Toberoff's files, Wayne Smith, Vice President, Senior Litigation and Chief Patent Counsel at Warner Bros. consulted the applicable ethics opinions and, after undertaking a cursory review of the Escrow Documents and consulting with Warner Bros. General Counsel John Schulman ultimately concluded that he should turn them over to a neutral third party, John Quinn, who was then with the firm of Arnold & Porter.

Mr. Quinn attempted to broker a resolution that would suit both parties, but the parties were unable to reach any understanding. During that process, Mr. Quinn Bates-stamped and copied the Escrow Documents, sending one copy set to Mr. Toberoff and retaining one for himself. After Mr. Quinn provided Mr. Toberoff with the set of Escrow Documents, Defendants served a document request on Plaintiffs and a separate subpoena on Mr. Toberoff personally, each requesting the production of the Escrow Documents. Plaintiffs and Mr. Toberoff refused to provide Defendants with copies of any of the non-privileged Escrow Documents or serve privilege logs supporting any assertions of privilege. As a result, Defendants brought a motion to compel production of the Escrow Documents.

Magistrate Judge Zarefsky heard Defendants' motion to compel on April 30, 2007. During that hearing, Mr. Toberoff represented that, with the exception of two documents he had recently provided to Defendants, each Escrow Document either had previously been produced to Defendants or been previously listed on a privilege log. (Bergman Decl. Exh. A at 10:17 - 11:23; 15:12 - 15:15.) The Court questioned Mr. Toberoff on the declaration that he filed in support of Plaintiffs'

1  portion of the Joint Stipulation on the motion, noting that the declaration didn't

2  appear to go that far, and pointing out that it saw some "wiggle room" in the

3  declaration.  (Bergman Decl. Exh. A at 19:8 - 19:15.)  The Court therefore sought

4  Mr. Toberoff's confirmation on the ultimate issue:  Had all of the Escrow

5  Documents been either listed on a privilege log or produced in this litigation?  Mr.

6  Toberoff responded with an emphatic and unequivocal *yes*.  (Bergman Decl. Exh.

7  A at 11:14 - 11:23.)[1]

8      After receiving that unequivocal response from Mr. Toberoff, the Court

9  issued its Order, outlining the procedure that the parties were to follow in dealing

10  with the Escrow Documents:

11      THE COURT:  Now, I told you, Mr. Toberoff, that I saw a little
    wiggle room in your declaration.  You tell me you didn't mean for

12      there to be any.  So, here's what I'm going to do.  Not later than
    May 7th, that's a week from today, I want you to submit a

13      declaration that does identify by the Bates numbers of the escrow
    documents and the corresponding Bates numbers of documents

14      already produced, those among the escrow documents which are
    unprivileged and have already been produced.

15
    So, you take the Bates numbers of the escrow documents and

16      say, 'Here are the corresponding Bates numbers of the documents
    that have already been produced.'  Take the Bates numbers of the

17      escrow documents and correspond to the listings on the privilege
    log of the documents which have not been produced because they

18      were privileged.  All right?  So, put that in your declaration.
    Then the escrow holder, Mr. Bergman [sic], is to return to the

19      plaintiffs any documents which are identified in the declaration as
    being privileged and having been identified on the privilege logs.

20      The others can be delivered to trial counsel for defendants because
    they're either unprivileged, or, if they were privileged, privilege has

21      been waived because they weren't listed on the privilege log.

22  (Bergman Decl. Exh. A at 19:8 - 20:5.)

23

24

25  [1]    THE COURT:  . . . What your declaration doesn't say is that you
    went through these, let's call them 'whistleblower' documents, . . .

26      and that you verified that each of the whistleblower documents either
    had been produced or had been listed on the privilege log.  It doesn't

27      say that.

28      MR. TOBEROFF:  That is the case, your Honor, and that was
    certainly my intention to say that, and I'm saying that now.

1   The Court later reiterated and explained its Order, and extended Mr.

2   Toberoff's time to respond to May 21, 2007.  (Bergman Decl. Exh. A at

3   30:7 - 34:6.)  Neither Plaintiffs nor Mr. Toberoff sought review of the

4   Order.[2]

5   Defendants' counsel Michael Bergman followed up with Jack Quinn, the

6   original caretaker of the Escrow Documents who had since left Arnold & Porter to

7   take a position as a neutral at JAMS/Endispute.  In Mr. Bergman's May 16, 2007

8   letter to Mr. Quinn, he observed that the Escrow Documents were likely still in the

9   possession of Arnold & Porter, but proposed that Defendants continue to retain Mr.

10  Quinn's escrow services to carry out the Court's Order.  (Bergman Decl. Exh. B.)

11  On May 18, 2007, David Eisen, Mr. Quinn's former partner at Arnold &

12  Porter, responded to Mr. Bergman's letter, informing him and Mr. Toberoff that he

13  had assumed custody of the escrow documents after Mr. Quinn's departure from

14  the firm, and that he was "prepared to fulfill the terms of Magistrate Zarefsky's

15  order." (Bergman Decl. Exh. C.)  In order to assist him in that process, Mr. Eisen

16  requested that one of the parties send him "the briefs on the relevant motion and

17  the transcript of the hearing."  (*Id.*)

18  On the Court-ordered deadline of May 21, 2007, Mr. Toberoff served a

19  declaration that was accompanied by a cover letter raising a number of exceptions

20  to the unequivocal representation he made to the Court that all of the Escrow

21  Documents had been either listed on a privilege log or had been produced.  Indeed,

22  in his letter Mr. Toberoff explained that -- contrary to his representation to the

23  Court -- there were several documents that had not been produced or listed on

24  privilege logs that he nonetheless claimed should be protected by the attorney-

25  client privilege. (Bergman Decl. Exh. D.)

26

27  _____

28  [2] Local Rule 72-2.1 states that a party objecting to a Magistrate Judge's non-dispositive ruling under F.R.Civ.P. 72(a) must file a motion for review with the District Judge within 10 days.

8

On May 22, 2007, Mr. Bergman responded to Mr. Toberoff's apparent retraction of the representation he made to the Court and asked that Mr. Eisen comply with the Court's Order. (Bergman Decl. Exh. E.) In that May 22 letter, he outlined certain misstatements in Mr. Toberoff's letter and attached the following documents to assist Mr. Eisen in his review of Mr. Toberoff's declaration:

- the April 30, 2007 hearing transcript;
- the documents Mr. Toberoff had identified in his declaration as having previously been produced, so that Mr. Eisen could compare them to the Escrow Documents Mr. Toberoff claimed were corresponding;
- the privilege logs Mr. Toberoff cited in his declaration so that Mr. Eisen could compare the pertinent entries to the Escrow Documents Mr. Toberoff claimed he had listed on those privilege logs; and
- the briefing on Defendant's motion to compel that Mr. Eisen requested in his May 18th letter.

Mr. Toberoff then sent another letter which, among other things, instructed Mr. Eisen that he was not to use Mr. Toberoff's declaration to confirm that the Escrow Documents he would be releasing actually matched up to the production documents and privilege log entries listed in Mr. Toberoff's declaration. (Bergman Decl. Exh. F.) That is, he contended that Mr. Eisen should not undertake the task of verifying the accuracy of his declaration regarding what Escrow Documents had already been produced or listed on Plaintiffs' or other Toberoff clients'[3] privilege logs.

After receiving the competing correspondence from Mr. Toberoff and Mr. Bergman, Mr. Eisen responded on May 24, 2007, observing that the protocol the Court articulated for handling the Escrow Documents appeared to be simple: "documents which appear on the privilege logs are protected and should not be

---

[3] Mr. Toberoff failed to serve a privilege log in response to the Rule 45 subpoena Defendants issued to him.

1    turned over to defendants, and documents not on the privilege logs are not

2    protected and should be produced to defendants." (Bergman Decl. Exh. G.)

3    Nonetheless, given the parties' competing interpretations of the Court's Order, Mr.

4    Eisen concluded that he should retain all of the Escrow Documents until the parties

5    reached some sort of agreement or until the Court issued a further order. (*Id.*)

6         Accordingly, on June 25, 2007, Mr. Bergman sent Mr. Toberoff a meet and

7    confer letter attempting to reach an agreement on the issues that were preventing

8    Mr. Eisen from carrying out the Court's Order. (Bergman Decl. Exh. H.) Mr.

9    Bergman and Mr. Toberoff spoke on July 5, 2007, and later that day Mr. Toberoff

10   sent a letter following up on that conversation. (Bergman Decl. ¶ 10; Exh. I.) Mr.

11   Bergman's partner Anjani Mandavia had a later conversation with Mr. Toberoff on

12   July 31, 2007, but the parties were not able to resolve the dispute. (Bergman Decl.

13   ¶ 11.)

14   **B. ARGUMENT**

15        Mr. Toberoff has now raised three distinct categories of Escrow Documents

16   which he contends should not be turned over by the escrow holder to Defendants

17   notwithstanding the fact that they fall within the scope of this Court's Order: (1)

18   the supposedly "defamatory" cover letter which accompanied the documents

19   delivered to Warner Bros. in June 2006, and which purportedly contains or

20   references privileged material; (2) allegedly privileged documents that were not

21   listed on any privilege log because they are claimed to consist of communications

22   with Mr. Toberoff's clients after the inception of litigation; and (3) documents

23   purportedly covered by a "joint interest" privilege which, although they were

24   independently in Plaintiffs' possession, had never been listed on any privilege log

25   created by Plaintiffs but had, after the fact, been listed on the third party's privilege

26   log.

27        In the sections that follow, we analyze each of Plaintiffs' and Mr. Toberoff's

28   newly raised exceptions to the procedures outlined in the Court's ruling and

explain why their position is incorrect.  At base, Mr. Toberoff cannot be permitted to continue to avoid his discovery obligations by submitting illusory declarations and representations that are rendered meaningless by their unreasonable exceptions.  Before addressing those issues, however, it is important to point out several factors that impact the analysis of each of Plaintiffs' and Mr. Toberoff's arguments.

Unlike Defendants' counsel and the Court, who were not able to review the Escrow Documents prior to the hearing, Plaintiffs and Mr. Toberoff have now been in possession of the Escrow Documents for close to a year.  Accordingly, there can be no doubt that Mr. Toberoff knew the contents of those documents when he served discovery responses on behalf of the Plaintiffs and himself, when he decided not to submit privilege logs listing the privileged Escrow Documents that were responsive to Defendants discovery requests, and -- most importantly -- when he represented to the Court that *all* of the Escrow Documents had been either produced or had been listed on Plaintiffs' (or those of another party represented by Mr. Toberoff) privilege log.  Mr. Toberoff has now backtracked on that representation, raising various purported exceptions to his all-inclusive representations to the Court.

The problem with this attempt to litigate the issue after-the-fact is twofold.  First, the Court was rightfully concerned with the wiggle room Mr. Toberoff left in his declaration, and Mr. Toberoff made an express representation to the Court to assuage that concern.  Had Mr. Toberoff acknowledged that his seemingly all inclusive declaration actually had some exceptions, the Court might have taken a firmer or more hands-on approach when it crafted its Order.  Moreover, by obscuring the true nature of the Escrow Documents until after the hearing, Mr. Toberoff prevented Defendants and the Court, both of whom had no prior knowledge of the contents of the Escrow Documents, from addressing the merits of his newfound exceptions.  For instance, because Mr. Toberoff stated that all of the

1    Escrow Documents had been either produced or listed on a privilege log, the Court

2    did not need to consider whether Mr. Toberoff's failure to serve a privilege log in

3    response to his personal subpoena acted as a waiver of the right to assert that any

4    non-listed documents were privileged.

5         As a matter of basic fairness, Plaintiffs and Mr. Toberoff cannot be allowed

6    to adopt a knowingly erroneous position during the hearing, let the time for

7    appealing the Court's Order lapse, and then raise their belated objections to the

8    Court's Order in a letter attached to Mr. Toberoff's declaration.  This underlying

9    principle should guide the analysis of each of Plaintiffs' and Mr. Toberoff's

10   purported exceptions to the Court's Order.

11            **1.    The "Defamatory" Cover Letter To The Escrow**

12                    **Documents.**

13        There is no valid reason for preventing the escrow holder from releasing to

14   Defendants the undated cover letter that accompanied the rest of the Escrow

15   Documents.  First and foremost, the letter falls directly within the purview of the

16   Court's Order requiring the escrow holder to turn over any documents not

17   previously produced or listed on any of Plaintiffs' or Mr. Toberoff's privilege logs.

18   This document, like the rest of the Escrow Documents, was in Plaintiffs' and Mr.

19   Toberoff's possession when Defendants served the applicable requests for

20   production and subpoena seeking the production of all of the Escrow Documents.

21   But neither Plaintiffs nor Mr. Toberoff -- who chose to forego serving a privilege

22   log -- listed the cover letter on any privilege log.  Under the Court's Order, the

23   cover letter must be turned over to Defendants.

24        Furthermore, even assuming the Court's Order had made an exception for

25   privileged Escrow Documents that had not been previously listed on a privilege

26   log, which it did not, Plaintiffs and Mr. Toberoff did not meet their burden of

27   demonstrating that the cover letter should be withheld on the basis of the attorney-

28   client privilege. *See Weil v. Investment Indicators Mgm't, Inc.*, 647 F.2d 18, 25

1  (9th Cir. 1981) (party asserting the attorney-client privilege has the burden of

2  establishing that it applies). The first specific mention they made of the

3  document's potentially or purportedly privileged nature was during the briefing of

4  Defendants' original motion to compel, at which time Mr. Toberoff made an

5  equivocal reference to the document. (Bergman Decl. Exh. J.) However, Mr.

6  Toberoff did not demonstrate or even affirmatively state that that the document is

7  privileged; rather, he contended that the letter "is defamatory and in other respects

8  *potentially violates* the attorney-client privilege." (*Id.* at ¶ 27) (emphasis added.)

9  It was not until the correspondence leading up to the present motion that Mr.

10  Toberoff took a firm stance by asserting that the cover letter is protected by the

11  attorney-client privilege. These circumstances demonstrate that Plaintiffs and Mr.

12  Toberoff cannot make the showing required to withhold a document from

13  production, and for this independent reason, that letter should be turned over to

14  Defendants.

15              2.       **Post-Litigation Attorney-Client Communications.**

16              While Defendants do not dispute that the parties to the litigation had an

17  understanding that they would not list post-litigation documents on their privilege

18  logs, that is not the issue here. Because the Court's Order was clear and required

19  the Escrow Holder to release *any* documents not previously listed on a privilege

20  log, the sole issue is whether each Escrow Document -- post-litigation

21  communication or not -- was listed on a privilege log. Under a straightforward

22  analysis of what that Order required, therefore, the Escrow holder should turn over

23  the documents purportedly containing post-litigation attorney-client

24  communications regardless of whether the plaintiffs and defendants to the

25  litigation had a prior understanding, since those documents had not been

26  previously produced or listed on any privilege log.

27              It is now too late to contemplate what might have happened if Mr. Toberoff

28  had declared this objection to the Court during the hearing and given Defendants

1   an opportunity to be heard on the issue.  It is important to note that Defendants'

2   motion to compel concerned not only one of their document requests to Plaintiffs,

3   but also their subpoena to Mr. Toberoff personally.  Thus, if Mr. Toberoff had

4   identified this issue during the hearing, Defendants and the Court could have

5   addressed whether Mr. Toberoff's failure to provide Defendants with any privilege

6   log waived any assertion that these post-litigation documents can be protected by

7   the attorney-client privilege, especially since Mr. Toberoff personally (as opposed

8   to Plaintiffs) had never made any arrangements with Defendants regarding the

9   content of his privilege log.  Given Mr. Toberoff's unequivocal representation,

10  however, neither the Court nor Defendants had any reason to undertake that

11  analysis during the hearing, and the escrow holder must comply with the plain

12  language of the Court's Order.

13          **3.      Plaintiffs and Mr. Toberoff Cannot Use An Entry On a**

14                  **Third Party's Privilege Log To Prevent the Escrow Officer**

15                  **From Releasing Documents That Were Unlisted On Their**

16                  **Own Privilege Logs.**

17          Plaintiffs and Mr. Toberoff have also taken the untenable position that

18  Escrow Documents -- which they had in their possession but had omitted from

19  their own privilege logs -- should be nonetheless protected because copies of those

20  documents were later listed as privileged under the joint (or common)-interest

21  exception[4] on the privilege log of third-party Don Bulson,[5] an attorney who had

22  represented Plaintiff Laura-Siegel Larson's estranged half-brother Michael Siegel.

---

[4] The "joint defense," "common interest" or "community of interest" rule is "an exception to the general principle that communications in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality."  1 Paul R. Rice, *Attorney-Client Privilege*, § 4:35 at 192-95 (2d ed. 1999).  If the parties to a communication share some common legal goal, then they may share otherwise privileged communications without concern that they will later have to disclose them as waived.  *Id.*

[5] Mr. Bulson had not been subpoenaed in these actions, was not represented by Mr. Toberoff and had not produced documents or a privilege log at the time Defendants received the Escrow Documents.

14

1    As explained below, this proposition is incorrect and is yet another attempt to use

2    sleight of hand to avoid the clear mandate of the Court's Order.

3         The primary fallacy of Plaintiffs' and Mr. Toberoff's position is that Mr.

4    Toberoff neither represented Mr. Bulson nor had any of Mr. Bulson's files when

5    the Escrow Documents were sent to Defendants.  Given these circumstances, the

6    Court's statement that Mr. Toberoff could comply with the Court's Order by

7    identifying entries on not just Plaintiffs' privilege log, but also on other parties'

8    privilege logs as well, simply doesn't apply here.  It's absurd to argue -- as Mr.

9    Toberoff does -- that a privilege log entry listing a document that was not in Mr.

10   Toberoff's possession when the Escrow Documents were sent to Defendants can

11   provide the basis for withholding any of the Escrow Documents.  Any such

12   argument is an improper attempt to distort the Court's ruling and to take advantage

13   of the Court's and Defendants' lack of knowledge about the content of the Escrow

14   Documents during the hearing.

15        To understand the problem with Mr. Toberoff's position, it is first necessary

16   to examine the timing of Defendants' receipt of the Escrow Documents and the

17   date of service of Defendants' requests for production to Plaintiffs and subpoena to

18   Mr. Toberoff, both of which requested the Escrow Documents, and to compare

19   those dates with the date Mr. Toberoff first obtained documents from Mr. Bulson

20   and the ultimate date Mr. Toberoff served a privilege log on behalf of Mr. Bulson.

21        As detailed in Defendants' initial Joint Stipulation, Warner Bros. received

22   the undated Escrow Documents from an unidentified sender in **June 2006**.  Then,

23   after turning those documents over to attorney Quinn to be held in escrow,

24   Defendants served plaintiffs with the pertinent request for production on **August 7,**

25   **2006** and served Mr. Toberoff with a personal subpoena on **August 10, 2006**.

26        The following day, on **August 11, 2006**, Defendants served an unrelated

27   subpoena duces tecum, issued out of the United States District Court for the

28   District of Ohio, on Don Bulson, the attorney of Michael Siegel, Jerry Siegel's

15

deceased son. *At the time, however, Mr. Bulson was not represented by Mr. Toberoff.* It was only sometime after Defendants served the subpoena on Mr. Bulson (and served a copy of the subpoena on Plaintiffs) that Mr. Toberoff's associate Nicholas Williamson contacted Mr. Bulson. (Bergman Decl., Ex. K at ¶ 3.) During that conversation, Mr. Bulson indicated to Mr. Williamson that the relevant files had been forwarded to attorney Melvin Bancheck. (*Id.*) Mr. Williamson subsequently contacted Mr. Bancheck, who provided him with the relevant documents some time after **September 7, 2006**. (*Id.* at ¶¶ 4-5.)

Because Mr. Toberoff refused to produce any documents or privilege log on Mr. Bulson's behalf, Defendants filed a motion to compel before the District Court of Ohio on October 20, 2006. Waiting until after Defendants had undertaken the effort to draft and file their motion, on **October 23, 2006**, Mr. Toberoff's office provided Defendants with Mr. Bulson's privilege log, which purportedly listed all of the documents *from Mr. Bulson's files*. Defendants nonetheless kept their motion on calendar because they disputed several of Mr. Bulson's privilege claims -- including his claim of a common interest privilege. The District Court in Ohio has yet to issue a ruling on that motion.

Based on these dates, Mr. Toberoff's position cannot stand. He is, in effect, claiming that a privilege log detailing documents that were not in his possession until sometime after ***September 7, 2006*** listed Escrow Documents that were sent to Warner Bros. more than two months earlier, on ***June 28, 2006***.

A closer examination of the Bulson privilege log entries explains why Mr. Toberoff attempted to sneak the pertinent Escrow Documents under them. Those entries, each of which asserts the common interest privilege,[6] list correspondence between Mr. Toberoff and Mr. Bulson. Thus, one copy of each document would have been *in Mr. Toberoff's files* when the Escrow Documents were sent to Warner Bros., and the corresponding copy of those documents would have been in Mr.

---

[6] Defendants' pending motion in Ohio has challenged this assertion of privilege.

1    Bulson's files that were provided to Mr. Toberoff several months later.  Critically,

2    however, the copies of the documents in Mr. Toberoff's files -- the only copies that

3    could have been included among the Escrow Documents -- *were never listed on*

4    *any privilege log*.  That is, if Defendants had not served their subpoena on Mr.

5    Bulson, they would never have known that these documents even exist --

6    notwithstanding the fact that they were clearly in the files of Plaintiffs' counsel,

7    and were responsive to outstanding document requests.

8         Under these facts, there are three reasons why Mr. Toberoff's citation to the

9    Bulson privilege log does not satisfy the Court's Order.  The first reason is that Mr.

10   Toberoff's position presents a matter of physical impossibility.  The Escrow

11   Documents could not have come from Mr. Bulson's files because Mr. Toberoff did

12   not have Mr. Bulson's files in June 2006, when the Escrow Documents were sent

13   to Warner Bros.  Therefore Mr. Toberoff cannot comply with the Court's Order by

14   citing to Mr. Bulson's privilege log.  Because Mr. Toberoff cannot identify an

15   entry on his or on Plaintiffs' privilege log referencing those documents, the Court's

16   Order requires that they be produced to Defendants.

17        There is a second reason that those documents must be released to

18   Defendants: because they were not listed on Plaintiffs' and Mr. Toberoff's

19   privilege logs, they do not meet the criteria for asserting the attorney-client

20   privilege.  That is because the "common interest privilege" is not a privilege in and

21   of itself.  Rather, as noted above, it is an "exception to the rule on waiver when

22   communications are disclosed to third parties." *NIDEC Corp. v. Victor Co. of*

23   *Japan*, 2007 U.S. Dist. LEXIS 48841 at *9 (N.D. Cal. July 3, 2007).  Since "it is

24   an anti-waiver exception, it comes into play only if the communication at issue is

25   privileged in the first instance." *Id.* at *10.  And as the proponent of the privilege,

26   Plaintiffs and Mr. Toberoff have the burden of establishing that it exists. *In re*

27   *HBOC, Inc., ERISA Litig.*, 2005 U.S. Dist. LEXIS 7098 at *22 (N.D. Cal. Mar. 31,

28   2005).  Plaintiffs' and Mr. Toberoff's failure to assert the common interest

17

1   exception, *or any privilege*, with respect to the documents in Mr. Toberoff's files

2   belies any assertion of the claim. *See Fox v. California Sierra Fin. Servs.*, 120

3   F.R.D. 520, 525 (N.D. Cal. 1988) (party asserting that a communication is

4   protected by the attorney-client privilege must show that it claimed the privilege);

5   *see also Thelen Reid & Priest L.L.P. v. Marland*, 2007 U.S. Dist. LEXIS 17482 at

6   *26-*28 (N.D. Cal. Feb. 21, 2007) (privilege waived with respect to documents not

7   listed on privilege log); *Cunningham v. Connecticut Mut. Life Ins.*, 845 F. Supp.

8   1403 (S.D. Cal. 1994) (same).

9         Finally, even assuming Mr. Toberoff could theoretically cite to entries on the

10   Bulson privilege log to protect Escrow Documents that were in Mr. Toberoff's and

11   Plaintiffs' files, Plaintiffs and Mr. Toberoff cannot meet their burden of

12   establishing that their communications with Mr. Bulson fall within the common

13   interest privilege. Because Plaintiffs never identified these documents (which were

14   clearly responsive to Defendants' discovery requests) on any of their privilege

15   logs, *Defendants never had the opportunity to contest Plaintiffs' current assertion*

16   *of the common-interest privilege in front of this Court.*

17         As discussed above, the "common interest privilege" is an exception to the

18   general rule that the attorney-client privilege is waived if communications are

19   revealed to a third party. In this instance, Plaintiffs and Mr. Toberoff are asserting

20   that they did not waive their attorney-client privilege when they initiated

21   communications with third party Mr. Bulson. Given the relationship between

22   Plaintiffs and Mr. Bulson's client Michael Siegel, however, they cannot meet their

23   burden.

24         Michael Siegel (now deceased), owned a vested 25% share of the copyright

25   termination interest that is the subject of the current litigation. His position vis-à-

26   vis Plaintiffs' ownership shares is certainly adversarial, as it has been at least since

27   Plaintiffs' September 21, 2002 letter purported to repudiate Plaintiffs' October

28

1  2001 settlement with Defendants.[7]  After Plaintiffs repudiated that settlement

2  agreement, Plaintiffs retained a California company, IP Worldwide, LLC ("IPW")

3  (in which Mr. Toberoff was a principal) to represent them in connection with

4  efforts to exploit their termination interest.  (Bergman Decl. Exh. L.)  Then in

5  January 2003, Plaintiffs and IPW entered into a second agreement in which they

6  acknowledged certain "risks and potential problems regarding Michael Siegel" and

7  agreed that IPW partner Ariel Emanuel "will attempt to purchase all of Michael

8  Siegel's rights, title and interest" in his termination rights in connection with

9  IPW's representation of Plaintiffs.  (Bergman Decl. Exh. M.)

10      These agreements strongly suggest that Mr. Toberoff's communications with

11  Mr. Bulson on Plaintiffs' behalf were not made in the pursuit of a common legal

12  interest.  Rather, Mr. Toberoff, as Plaintiffs' representative and on behalf of IPW,

13  was attempting to negotiate a purchase of Michael Siegel's rights in the copyright

14  termination interest.  This type of relationship does not fall within the sort that are

15  protected by the common interest privilege.  The common interest privilege applies

16  only when a party establishes: "(1) the communication is made by separate parties

17  in the course of a matter of common legal interest; (2) the communication is

18  designed to further that effort; and (3) the privilege has not been waived." *NIDEC*

19  *Corp.*, 2007 U.S. Dist. LEXIS 48841 at *10 (citation and internal quotations

20  omitted).  Notably, to qualify for that exception, the parties must share a common

21  *legal* interest, not a common *commercial* interest.  *See Id.* at *14.  In *NIDEC Corp.*,

22  as in this case, a party sought communications exchanged during a negotiation --

23  namely a litigation abstract that the Defendant had exchanged with a third party

24  during the negotiation of a stock sale.  The Court refused to accept the Defendants'

25  position that it fell within the common interest privilege: "While the JVC litigation

26  abstract might have been helpful to facilitate the potential commercial transaction,

27  it did not further a common legal strategy in connection with the instant litigation. .

28

[7] Michael Siegel stood to benefit from the Settlement Agreement and his interests were arguably aligned with the Plaintiffs' interests with respect to that settlement.

1  . . Defendants provided the litigation abstract in order to facilitate the TPG fund's

2  and other potential bidders' commercial decision whether to buy the majority share

3  in JVC.  Thus, it was designed to further not a joint defense in this litigation, but to

4  further a commercial transaction in which the parties, if anything, have opposing

5  interests.  The litigation abstract thus would not qualify for the common interest

6  exception." *Id.* at *15 - *16.

7      Mr. Toberoff's communications with Michael Siegel's attorney Mr. Bulson

8  suffer from the same problem and accordingly do not meet the criteria for falling

9  within the common interest privilege.  Given Plaintiffs' January 2003 agreement

10  with Mr. Toberoff and IPW, there is little doubt that Mr. Toberoff's

11  communications with Mr. Bulson were to further Plaintiffs' potential acquisition of

12  Michael Siegel's share of the termination interest.  Because Plaintiffs and Mr.

13  Toberoff cannot satisfy their burden of establishing that these documents fall

14  within that exception, they should be turned over to Defendants.

15      **4.    The Escrow Holder Cannot Fulfill The Court's Order**

16          **Without Matching Up The Escrow Documents With the**

17          **Documents and Privilege Log Entries Identified in Mr.**

18          **Toberoff's Declaration.**

19      On May 22, 2007, Defendants sent Mr. Eisen copies of each privilege log

20  served by Plaintiffs (and the third parties represented by Mr. Toberoff) as well as

21  copies of each document identified in the declaration Mr. Toberoff served on May

22  21, 2007.  (Bergman Decl. Exh. E.)  With the benefit of these privilege logs and

23  documents, Mr. Eisen could have then cross-referenced the entries on the

24  declaration to confirm that the Escrow Documents matched up with the listed

25  production documents or privilege log entries.  This would have facilitated Mr.

26  Eisen's compliance with the Court's mandate that he return any Escrow

27  Documents that had been listed on privilege logs to Plaintiffs and Mr. Toberoff and

28  release the remaining Escrow Documents to Defendants. *However, Mr. Toberoff*

*instructed Mr. Eisen that he was not to confirm whether the documents and privilege entries listed in the declaration correspond with the Escrow Documents identified by Mr. Toberoff.*

Mr. Toberoff's instruction was not only improper, but it is the clearest example yet that Mr. Toberoff's representations of compliance are far less than they appear to be. Under any rational reading of the Court's Order, Mr. Eisen is permitted, if not required, to compare the Escrow Documents to the privilege log entries and documents listed in Mr. Toberoff's declaration to confirm that he is returning to Plaintiffs *only* the Escrow Documents that were listed on privilege logs and then releasing the remainder of the Escrow Documents to Defendants. If the Court had intended that Mr. Eisen release the Escrow Documents without verification, it would have allowed Mr. Toberoff to stand by the representation he made during the hearing without ordering him to submit a further declaration. Or the Court could have issued a less stringent Order requiring Mr. Toberoff to submit a declaration identifying only whether or not an Escrow Document had been listed on a privilege log. Instead, the Court Ordered that Mr. Toberoff submit a declaration listing specific Bates numbers and privilege log entries matching up to each Escrow Document. (Bergman Decl. Exh. A at 19:8 - 19:22; 30:7 - 30:20.) Put another way, now that Mr. Eisen has Mr. Toberoff's Court-Ordered declaration and each specific documents and privilege log listed therein, there is no reason for him not to use that information ensure that the Escrow Documents he releases are the right ones.[8]

Even assuming the Court's Order did not explicitly or implicitly require Mr. Eisen to make sure that the Escrow Documents match up with the actual documents and privilege log entries listed in Mr. Toberoff's declaration,

---

[8] Moreover, if Mr. Eisen does not undertake a review to ensure that he is releasing the proper Escrow Documents to Mr. Toberoff, there will be no way to go back and subsequently determine whether the Order has been complied with once those Escrow Documents are out of Mr. Eisen's possession.

21

**048**

1    Defendants respectfully ask that the Court modify its Order to account for the

2    inaccurate oath Mr. Toberoff made to the Court.

3       The Court's Order was founded on the representation Mr. Toberoff made

4    during the hearing that each Escrow Document had either been produced or listed

5    on a privilege log.  Now that Mr. Toberoff has significantly retracted that oath,

6    introducing exceptions that he failed to raise at the hearing, there is even more

7    reason for Mr. Eisen to cross-reference the documents and privilege log entries

8    listed in the declaration with the Escrow Documents.

9       Finally, it is necessary for Mr. Eisen, in his capacity as a neutral third party,

10   to compare the Escrow Documents with the listed documents and privilege log

11   entries because there is at least one category of non-privileged Escrow Documents

12   that has not been produced to Defendants.  As Wayne Smith explained in the

13   declaration that Defendants submitted in support of their original motion to compel

14   production of the Escrow Documents, Mr. Smith undertook an initial review of the

15   Escrow Documents and divided them into three categories: "non-privileged,"

16   "privileged," and "?"  Among the "non-privileged" Escrow Documents was

17   correspondence concerning the interest in Superman that might be owned by

18   Michael Siegel.[9]  That correspondence has never been produced to Defendants.  By

19   using Mr. Toberoff's declaration to confirm that the listed documents and privilege

20   log entries match up with the Escrow Documents he is releasing, Mr. Eisen will

21   ensure that Defendants receive the non-privileged Escrow Documents to which

22   they are entitled.

23       In sum, Mr. Eisen has a responsibility to fulfill the Court's Order by

24   releasing any Escrow Documents that were not listed on privilege logs to

25   Defendants.  Mr. Eisen cannot fulfill that Court-Ordered responsibility without

26   utilizing Mr. Toberoff's declaration as an essential tool.

27

28

---

[9] It is possible that these documents are the ones that were listed on Mr. Bulson's privilege log and addressed in more detail in Section III (B) (3), *supra*.

## C.    CONTEMPT SANCTIONS ARE WARRANTED HERE

Whether the express representation made by Mr. Toberoff during the hearing was deliberately misleading or the misguided result of overly zealous advocacy, one thing is certain -- Mr. Toberoff's failure to appeal the Court's ruling and his subsequent declaration attempting to modify that representation have forced Defendants to bring this motion.  Accordingly, Defendants respectfully request that the Court sanction Mr. Toberoff pursuant to Rule 37(b)(2).

Under the Federal Rules of Civil Procedure, when a party disobeys a Court's Order requiring discovery, the court may sanction the party in a manner that the Court deems just.  Fed. R. Civ. Pro. 37(b).  While Mr. Toberoff certainly submitted the declaration required by the Court's Order, his cover letter to that declaration and subsequent correspondence prevented Mr. Eisen from carrying out the Court's mandate, thereby thwarting Defendants' discovery efforts.  Under these circumstances, sanctions are proper.

Mr. Toberoff, as the only person at the hearing who knew the contents of the Escrow Documents, must accept the blame for any misrepresentations he made and for failing to raise the issues outlined in this motion during the hearing.  His misleading oath has forced Defendants to take a piecemeal approach to litigating their right to the Escrow Documents.  Defendants are now arguing about topics they could have addressed during the hearing without the need for undertaking a letter-writing campaign, conducting several conferences of counsel, or drafting this motion.  Rule 37 permits the Court to grant Defendants sanctions to compensate them for the costs of these additional efforts.  *Housing Rights Center v. Sterling*, 2004 U.S. Dist. LEXIS 28879, *10 (C.D. Cal. Dec. 29, 2004) ("Rule 37(b)(1) of the Federal Rules of Civil Procedure provides: 'the court . . . may make such orders in regard to the failure [to obey an order to provide discovery] as may seem just.'  Certainly, an award of costs, including attorneys' fees is an appropriate

1    sanction."). Defendants therefore respectfully request that the Court enter an order

2    granting them sanctions in the amount of $7,440. (Bergman Decl. ¶ 16.)

3    **IV.    PLAINTIFFS' CONTENTIONS**

4    **FACTUAL AND PROCEDURAL BACKGROUND**

5          Plaintiffs' detailed termination notices ("Termination") regarding

6    "Superman" and "Superboy" complied with all the requirements of 17 U.S.C. §

7    304(c) and 37 C.F.R. § 201.10, the regulations promulgated by the Register of

8    Copyrights. Shortly after receiving the "Superman" Termination notices, the

9    general counsel of Defendant Warner Bros. Entertainment Inc. ("Warner") and the

10   President of Defendant DC, a wholly owned Warner subsidiary, each

11   acknowledged the validity of the "Superman" Termination, and the parties began

12   negotiations for Defendants' to license or purchase Plaintiffs' recaptured

13   copyrights. (*See* Plaintiffs' First Amended Supplemental Complaint ("FASC"), ¶¶

14   46-48). When these negotiations broke down due to Defendants' excessive

15   demands, Defendants reversed their prior admissions of two years earlier, and

16   contested Plaintiffs' "Superman" Termination on April 15, 1999, one day before it

17   became effective. Defendants thereafter also claimed that the "Superboy"

18   Termination was somehow invalid.

19          On October 8, 2004, Plaintiffs filed their action for declaratory relief and an

20   accounting regarding the "Superman" Termination, and on October 22, 2004 filed

21   their action for declaratory relief and copyright infringement regarding the

22   "Superboy" Termination. The two actions were consolidated for purposes of

23   discovery only.

24          Plaintiffs produced documents responsive to Defendants' requests for

25   production on September 29, 2005 and supplemented this production on October 6,

26   2006, November 6, 2006 and November 17, 2006. *See* Declaration of Marc

27   Toberoff In Opposition to Defendants' Motion To Compel Production of

28   Whistleblower Documents (filed March 26, 2007)("Toberoff Decl. I"), Ex. K.

1   Plaintiffs produced a privilege log on July 20, 2006 and provided supplemental

2   privilege logs on September 29, 2006. *Id.*, Ex. L, M.  Documents were further

3   produced by third parties Jean Peavy and Warren Peary (the "Shusters") on July

4   18, August 11 and August 14, 2006 in response to Defendants' subpoena. *Id.*, ¶

5   19.  The Shusters served a privilege log on August 11, 2006 (*Id.*) and a

6   supplemental privilege log on October 16, 2006. *Id.*, Ex. N.  Third party IPW,

7   LLC produced documents on November 15, 2006 in response to Defendants'

8   subpoena. *Id.*, ¶ 20.  Third party Pacific Pictures Corporation produced documents

9   on November 15, 2006 in response to Defendants' subpoena. *Id.*  Third party Don

10   Bulson, attorney for Michael Siegel, Plaintiff Laura Siegel Larson's half-brother,

11   and a 25% beneficiary of the recaptured copyrights pursuant to the Terminations,

12   produced a privilege log on October 23, 2006 in response to Defendants'

13   subpoena. *Id.*, Ex. O.

14           **1.**    **Documents Stolen From Plaintiffs' Attorneys' Files**

15       On July 5, 2006, Plaintiffs' counsel Marc Toberoff ("Toberoff")  received a

16   letter from John J. Quinn ("Quinn"), an attorney with the firm Arnold and Porter

17   LLP, notifying Toberoff on behalf of Defendants and in the vaguest of terms, that

18   Defendants had received three sets of documents (delivered to Warner's General

19   Counsel, John Schulman and two Warner executives, respectively) from an

20   unidentified source and that these documents had been reviewed by Wayne Smith,

21   Warner's Senior Litigation Counsel and segregated into three piles: "'Privileged,'

22   'Non-privileged' and '?.'"  *See* Declaration of Michael Bergman in Support of

23   Defendants' Motion to Compel Whistle-Blower Documents (filed March 26, 2003)

24   ("Bergman Decl. I"), Ex. D. *Arnold and Porter LLP was neither a "neutral," nor*

25   *an "escrow agent" but had been retained by its longstanding client, Warner, and*

26   *was being compensated for its services by Warner.*

27       Mr. Quinn's letter stated that Arnold and Porter, LLP was in possession of

28   the documents and suggested a "protocol" for dealing with them. *Id.*  Curiously

1    the letter did not identify what exactly it was referring to and, in particular, omitted

2    that the documents, including *numerous privileged attorney-client*

3    *communications*, had obviously been *stolen*, lifted from the ransacked files of

4    Toberoff's law firm. *Id.* Nor did the letter offer to return the documents to

5    Toberoff, as is required, or for Toberoff to review the stolen documents, and stated

6    instead "I will keep the documents in my possession and allow access to them only

7    upon your joint or the Court's instructions." *Id.*

8         The next day, Defendants' counsel Michael Bergman ("Bergman") sent an

9    *ex parte* letter to this Court regarding the documents, without notifying Plaintiffs

10   beforehand. Toberoff Decl. I, Ex. D. Bergman's letter *also omitted* that the

11   documents in question -- reviewed by Defendants' VP, Litigation, Wayne Smith,

12   who is in charge of these actions -- had obviously been stolen from the legal files

13   of Plaintiffs' counsel. Defendants only now belatedly omit that "it was apparent

14   that the Escrow Documents came from Mr. Toberoff's files." Motion at 6 (III.A).

15   The Court rejected this *ex parte* letter by minute order dated July 6, 2006. *Id.*, Ex.

16   E.

17        On July 11, 2006, Quinn and Toberoff spoke telephonically regarding the

18   stolen documents. *Id.* ¶ 8. Toberoff inquired as to the nature of the documents

19   referred to in Quinn's July 5, 2006 letter and was informed *for the first time* that

20   the documents came from Toberoff's own legal files. *Id.* Toberoff thereupon

21   demanded that the documents be returned immediately and rejected the "protocol"

22   outlined in the July 5 letter as geared to exploiting the documents in this litigation.

23   *Id.* Toberoff suggested instead that an independent service copy and bate stamp all

24   the documents, that Arnold and Porter be provided with the complete bates stamp

25   numerical range, but not retain the stolen documents and that *all* of the documents,

26   including the 'originals,' withheld by Warner Bros., be returned to Plaintiffs'

27   counsel immediately. *Id.* On July 13, by letter, Mr. Quinn announced, contrary to

28   the wishes of Plaintiffs' counsel, that he would have the documents bates stamped

1   by his office, send a copy of the bates stamped documents to Plaintiffs' counsel,

2   but would *retain the originals* and a bates stamped set.  Bergman Decl. I, Ex. E.

3   On July 18, 2006, Quinn delivered three sets of the stolen documents, now bates

4   stamped, keeping the originals. Toberoff Decl. I, ¶ 10.

5       By letter dated July 19, 2006, Toberoff reiterated Plaintiffs' demand and

6   further requested that Warner Bros. furnish:

7       "(1) the date(s) each set of documents was received; (2) copies of all
        envelopes or packages enclosing the documents; (3) the method by which
8       the documents were sent and, in the unlikely event the documents were
        delivered by hand, the name of the messenger (and messenger service)
9       logged at Warner Bros. security gate and (4) any other pertinent
        information regarding Warner Bros.' receipt of these documents. We would
10      also like to inspect the "original" documents and enclosing envelopes or
        packages as received by Warner Bros."

11

12  *Id.*, Ex. F.

13      In response to Plaintiffs' July 19 letter, Bergman demanded by letter dated

14  July 20, 2006 that Arnold and Porter retain possession of the stolen documents

15  (even though Quinn had already done so on Warner's behalf), but Bergman

16  provided no information regarding Warner's receipt of the documents in response

17  to Plaintiffs' specific inquiry. *Id.*, Ex. G.  Quinn also responded to Plaintiffs' July

18  19 letter by letter dated July 24, 2006 wherein he insisted he would keep the

19  original stolen documents pending further instructions from Defendants or a court

20  order, but again the information Plaintiffs had requested regarding Warner's

21  receipt of the stolen documents was not provided. *Id.*, Ex. H.

22      On July 24, 2006, Defendants demanded that Plaintiffs specifically account

23  to them for each of the stolen documents by production and/or a privilege log

24  keyed to the stolen documents retained by Quinn, and again, despite Plaintiffs'

25  request, no information whatsoever was provided regarding the circumstances

26  under which Warner received the stolen documents.  Bergman Decl. I, Ex. I.

27      By letter dated July 26, 2007, Toberoff reiterated Plaintiffs' July 19 demand

28  for information regarding Warner's receipt of the stolen documents, which

1   Defendants continued to ignore.  Toberoff Decl. I, Ex. I.  Defendants' counsel

2   Michael Bergman ("Bergman") finally responded by letter dated July 27, 2006,

3   repeating merely that three apparently identical sets of documents addressed to

4   three different high placed Warner executives had mysteriously arrived in

5   envelopes on June 28, 2006.   Mr. Bergman claimed that Warner did not retain any

6   of the three envelopes (or a copy of any envelopes) and that Warner purportedly

7   had no mailroom, security or executive office records, notes or logs, of the three

8   substantial packages ever being signed in or received, despite the shocking nature

9   of the theft and disclosure.  *Id.*, Ex. J.  In short, Warner claimed to have no

10  information whatsoever concerning the purportedly anonymous receipt by three

11  high ranking Warner executives of substantial packages containing numerous

12  privileged documents relating to this lawsuit.  All such information commonly kept

13  by Studio security, mailrooms and executive offices had mysteriously vanished.

14          On August 7, 2006, Defendants served a Third Set of Requests for

15  Production seeking the stolen documents.  Bergman Decl. I, Ex. J.   Plaintiffs

16  objected to this document request on September 6, 2006.  Bergman Decl. I, Ex. L.

17  On August 10, 2006 Defendants served a subpoena duces tecum on Plaintiffs'

18  counsel also seeking the stolen documents.  Bergman Decl., Ex. K.   On August 23,

19  2006, Plaintiffs' counsel served written objections to the subpoena.   Bergman

20  Decl. I, Ex. M.

21          **2.      The Court's April 30, 2007 Order**

22          The parties filed their joint stipulation regarding the stolen documents on

23  March 23, 2007.  Magistrate Zarefsky heard the parties' motion on April 30, 2007.

24  In the course of the hearing, the Court instructed plaintiffs' counsel to submit a

25  declaration that identifies, by the Bates numbers of the escrow documents, the

26  corresponding Bates numbers of the documents already produced and take the

27  "Bates numbers of the escrow documents and correspond to the listings on the

28  privilege log of the documents which have not been produced because they were

1   privileged." *See* Declaration of Michael Bergman In Support of Defendants'

2   Motion To [sic] Compliance With the Court's 4/30/07 Order and Motion For

3   Sanctions ("Bergman Decl. II") Ex. A at 19: 11-14, 19:18-21.  The Court further

4   clarified:

5       "So, you take the Bates numbers of the escrow documents and say, 'Here are
        the corresponding Bates numbers of the documents that have already been
6       produced.' Take the Bates numbers of the escrow documents and correspond
        to the listings on the privilege log of the documents which have not been
7       produced because they were privileged. All right? So, put that in your
        declaration. Then the escrow holder, Mr. Bergman, is to return to plaintiffs
8       any documents which are identified in the declaration as being privileged
        and having been identified on the privilege logs. The others can be delivered
9       to trial counsel for defendants…"

10      "For example, Bates number, let's call it 'escrow'…Escrow document
        00004 corresponds to previously produced document 00006.  Escrow
11      document 00007 corresponds to previously produced document 00009, and
        so on…Privilege escrow document 00015 is a privilege   document which
12      was listed on the privilege log as document such and such… Privilege
        documents get returned.  The privilege documents  that were listed on the
13      privilege log get returned.  The others get sent to defense counsel."

14  Bergman Decl. II, Ex. A at 19:16- 20:3; 30:7-24.

15      On May 18, 2007, David Eisen, Esq., ("Eisen") of Arnold and Porter LLP

16  sent a letter to the parties' counsel stating he had replaced his partner, Jack Quinn,

17  in serving as the custodian of the "Escrow Documents". Bergman Decl. II, Ex. C.

18  On May 21, 2007, Mr. Toberoff served Mr. Eisen and Defendants' counsel with

19  his declaration pursuant to, and in full compliance, with Magistrate Zarefsky's

20  April 30, 2007 order ("Order").  Bergman Decl. II, Ex. D.

21      On May 22, 2007, Defendants' counsel Michael Bergman ("Bergman") sent

22  Eisen a letter improperly disputing the contents of Mr. Toberoff's declaration.

23  Bergman Decl. II, Ex. E.  As noted in the letter, Defendants also improperly sent

24  Mr. Eisen the produced documents and privilege logs identified in Mr. Toberoff's

25  declaration.  *Id*.  Copies of the documents Defendants provided to Eisen were not

26  furnished to Plaintiffs, despite their written request for same.  Bergman Decl. II,

27  Ex. F at 3.  *See* Declaration of Marc Toberoff in Opposition to Defendants' Motion

28

1 to Compel Compliance With The Court's 4/30/07 Order And Motion For Sanctions

2 ("Toberoff Decl. II") ¶ 2.

3      Once Defendants and Mr. Bergman had convinced the Court to issue its

4 Order on the basis of the neutral protocol they had purportedly followed, Bergman,

5 in his May 22, 2007 letter, improperly instructed Eisen to search through the

6 "escrow documents" for correspondence that Warner's VP, Litigation, Wayne

7 Smith, allegedly remembered seeing during his purported cursory review of the

8 documents. Bergman Decl. II, Ex. E. Lastly, Mr. Bergman, while admitting that

9 escrow documents originally "listed on the privilege logs of non-party witnesses

10 should not be released," nevertheless argued to Mr. Eisen (as if to a Court) that

11 documents listed on the privilege log of non-party attorney, Don Bulson, were not

12 protected by the joint interest privilege and must be released to Defendants. *Id.*

13 No part of the Court's Order permitted Defendants to contact Eisen in this fashion

14 -- a blatant attempt to invade and influence what Defendants' previously had

15 touted as a purely passive, neutral function. Bergman Decl. II, Ex. A at 19:8- 20:5.

16      On May 23, 2007, Plaintiffs sent Mr. Eisen a letter responding to

17 Defendants' overreaching demands and intrusive tactics. Bergman Decl. II, Ex. F.

18 Plaintiffs further highlighted the ambiguity in the Order and hearing with respect to

19 two post-litigation communications that need not be listed on a privilege log per

20 the parties' agreement, and the "undated defamatory cover letter" which disclosed

21 the contents of enclosed documents identified in the privilege logs. *Id.*

22      On May 24, 2007, Mr. Eisen, after reviewing the parties original motion

23 papers, the transcript of the motion hearing and the Order, sent a letter to the

24 parties' counsel that acknowledged the ambiguities pointed out by Plaintiffs'

25 counsel and that these particular documents had  fallen through the cracks and

26 were not addressed at the hearing or by the Order. Bergman Decl. II, Exs. F, G.

27 On this basis, Mr. Eisen reasonably refused to release the documents without

28

1   further clarification from the Court or an agreement between the parties.  Bergman

2   Decl. II, Ex. G.

3         In response to Eisen's position, Defendants sent Plaintiffs an initial "meet

4   and confer" letter on June 25, 2007.  Bergman Decl. II, Ex. H.  Plaintiffs responded

5   by letter dated July 5, 2007.  Bergman Decl. II, Ex. I.  The parties further met and

6   conferred, without success, on July 31, 2007.

7                                    **ARGUMENT**

8   **A.    PLAINTIFFS COUNSEL FULLY COMPLIED WITH THE COURT'S**

9          **APRIL 30, 2007 ORDER**

10        As evidenced by Mr. Toberoff's May 21, 2007, declaration ("Declaration"),

11  Plaintiffs' counsel fully complied with Magistrate Zarefsky's April 30, 2007

12  Order.  Bergman Decl. II, Ex. D.  In the Declaration, Toberoff accounted to

13  Defendants and the Court for each of the documents stolen from his law firm files

14  by matching the Bates numbers, as designated by Mr. Quinn, with the

15  corresponding Bates numbers of the documents produced by Plaintiffs and third

16  party witnesses or by matching the bates numbers to the numbered listings in the

17  privilege logs furnished to Defendants.  Bergman Decl. II, Ex. D.

18        Far from keeping Mr. Eisen from discharging his duties, as Defendants

19  falsely claim, Plaintiffs responded to Defendants' overreaching attempt to distort

20  the obvious rationale of Magistrate Zaresky's ruling, and to abuse Mr. Eisen's role

21  as an alleged independent custodian of escrow documents.  Bergman Decl. II, Exs.

22  B, D, E, F.  Plaintiffs pointed out the problems and ambiguity presented by 9

23  documents (out of 839 pages of stolen documents)[10], inadvertently not addressed at

24  the hearing or in the Order -- mistakes which Defendants sought to exploit rather

25  than to reasonably resolve in light of the Order's rationale. Mr. Eisen essentially

26  agreed with Plaintiffs as evidenced by his May 24, 2007 reply letter:

27

28
---
[10] Four of these nine documents are non-substantive fax confirmation pages and duplicates thereof. *See* Bergman Decl. II, Ex. D (Bates numbers Q0010, 0278, 0285-89, 0361).

31

**058**

1
2
3
4
5

> "In the transcript, Magistrate Zarefsky does seem to announce a
> simple protocol for the so-called Escrow Documents: documents which
> appear on privilege logs are protected and should not be turned over to
> defendants, and documents not on privilege logs are not protected and
> should be produced to defendants. Unfortunately, there are some documents,
> and you have each made certain agreements, which do not seem to be
> directly encompassed by the transcript or Magistrate Judge Zarefsky's
> Order."

6    Bergman Decl. II, Ex. G.

7        Defendants self-servingly distort the position taken by Mr. Eisen in his May

8    24, 2007 letter to the parties. Bergman Decl. II, Ex. G.  Eisen's letter is quite clear

9    that he is continuing custody of the "escrow documents" because certain

10   documents fall between the cracks and "do not seem to be encompassed by the

11   transcript or Magistrate Judge Zarefsky's Order." *Id*. These documents are (1) two

12   privileged communications between Toberoff and Plaintiffs *after* the start of the

13   present litigations, which were not listed on a privilege log pursuant to a standing

14   agreement with Defendants; (2) two documents listed on the privilege log of

15   Michael Siegel's attorney, Don Bulson; and (3) the "defamatory cover letter" that

16   allegedly accompanied the packages delivered to Warner and described the

17   contents of stolen attorney-client communications listed on privilege logs.

18      **1.    Plaintiffs' Attorney-Client Communications After**

19              **Commencement Of Litigation Retain Their Privilege**

20       Defendants' unreasonable overreaching stance is no better exemplified than

21   their demand that Mr. Eisen turn over two attorney-client communications *after the*

22   *commencement of litigation* between Plaintiffs and their attorney, Mr. Toberoff.

23   Defendants cling to the absurd and inequitable position that there has been a

24   waiver of these plainly privileged communications because such were not listed on

25   a privilege log even though Defendants admit, as they must, that the parties have a

26   longstanding agreement pursuant to which neither side was supposed to list post-

27
28

32

**059**

1    litigation attorney-client communications on a privilege log.[11]  Per this agreement,

2    Defendants and Plaintiffs have not listed hundreds of post-litigation

3    communications on any privilege log.

4         Defendants ignore this reality and instead make the bald unreasonable claim

5    that Magistrate Zarefsky's "bright line" Order sweeps away this privilege, even

6    though this obviously was not intended or addressed, as pointed out in Mr. Eisen's

7    May 24, 2007 letter:

8        "Mr. Toberoff refers to two post-litigation, attorney client emails (Q10
         and Q278) and related fax transmittal documents (Q285-289), which he
9        says were subject to a 'standing agreement' that such communications
         need not be listed on privilege logs. This issue was not referred to at the
10       hearing by Magistrate Zarefsky or counsel…"

11   Bergman Decl. II, Exs. D at 51; G.

12        Defendants erroneously state that this issue was never brought to their or the

13   Court's attention and that they were prevented from addressing it. However, as

14   Defendants well know, these privileged e-mails were specifically discussed on

15   page 30 of Plaintiffs' portion of the parties' March 26, 2007 Joint Stipulation

16   regarding the escrow documents as follows:  "There are also 2 privileged e-mail

17   communications between Plaintiffs and their present counsel dated after

18   commencement of this action which were not listed in Plaintiffs' privilege logs

19   because the parties have agreed not to list post-complaint attorney-client

20   communications on their respective privilege logs."

21        Additionally, in paragraph 22 of Mr. Toberoff's March 23, 2007 declaration

22   in opposition to defendants' motion to compel, Mr. Toberoff specifically

23   mentioned the two privileged e-mails and explained to the Court that these post-

24   litigation communications were not listed on a privilege log because "the parties to

25   this action have agreed not to list post-complaint attorney-client communications

26   on their respective privilege logs."  Toberoff Decl. I, ¶ 22.

27

28
_____
[11] "Defendants do not dispute that the parties to the litigation had an understanding that they
would not list post-litigation documents on their privilege logs…" Motion at 13.

33                                                                         060

1   No reasonable person would conclude that the Court nonetheless intended

2   that such clearly privileged communications be produced given the rationale of its

3   Order.  No fair reading of the Order, as well as common sense, could give

4   Defendants access to privileged communications they would not otherwise be

5   entitled to, simply because such documents were pilfered from Toberoff's legal

6   files.  It is mere sophistry to insist it was Magistrate Zarefsky's intention that,

7   despite the parties' standing agreement, Plaintiffs must list such post-litigation

8   attorney-client communications on a privilege log, whereas Defendants need not.

9   **2.** **The "Defamatory Cover Letter" Discussing The Contents Of**

10  **Privileged Communications Listed In The Privilege Logs Should**

11  **Not Be Disclosed Per The Order's Rationale**

12  Defendants also claim that the anonymous "undated defamatory letter"

13  enclosing the stolen documents must be released because it has not been listed on a

14  privilege log.  Bergman Decl. II, Ex. D at 51.  Firstly, this letter was clearly not the

15  subject of Defendants' motion to compel which dealt with the stolen documents

16  enclosed by the letter, as throughout their initial motion defendants drew a clear

17  line between the "Whistle-blower documents" that were the subject of its motion

18  and the "cover letter" contained with the documents, which was not.  *Compare*

19  *Defendants' Motion at* 2:6-14 (requesting production of the "Whistle-blower

20  documents") with *Defendants' Motion at* 6:13-14 (referring to "the cover letter

21  contained with the documents"); 6:26-27 (characterizing "the 'cover letter' that

22  *came with* the Whistle-blower documents") (emphasis added); 7:9-10 (referring to

23  "Whistle-blower Documents contained with the letter"); 7:17-19 (referring to

24  attorneys perusal of "the contents of the cover letter and my brief thumbing

25  through the documents"); and 16:17-21:28 (referring repeatedly to the "Whistle-

26  blower Documents" and never mentioning the cover letter.)

27  As noted by Mr. Eisen, the cover letter "also was not discussed" at the

28  hearing before Magistrate Zarefsky.  Bergman Decl. II, Exs. A ,G.  However, the

letter discusses and discloses the substance of documents listed on the privilege logs of Plaintiffs and third parties that were addressed and are protected under Magistrate Zarefsky's Order. *See* Toberoff Decl. II, ¶ 3.

Plaintiffs can hardly be accused of failing to assert the existence of privileged information in the letter, as Defendants contend. Plaintiffs' opposition to Defendants' motion to compel specifically states that the cover letter, discussing the stolen attorney-client communications accompanying it, discloses information protected by the attorney-client privilege and the work product doctrine. *See* Joint Stipulation Re: Defendants' Motion to Compel Production of Whistle-blower Documents at 37, fn. 10. *See also* Toberoff Decl. I, ¶ 27.

Plaintiffs and their counsel obviously did not authorize this illicit letter. They cannot be held to have consented to the release of the privileged information contained therein or to have waived the privilege. Toberoff Decl., II ¶ 3. Unauthorized disclosure of protected attorney-client information or documents does not waive attorney-client privilege. *See Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("the focal point of privilege waiver analysis should be the *holder's* disclosure of privileged communications to someone outside the attorney-client relationship."). *See also Resolution Trust Corp. v. Dean*, 813 F.Supp. 1426, 1430 (D.Ariz. 1993) (finding that where disclosure was unauthorized and possibly criminal, the party "did not voluntarily waive any attorney-client privilege it would have possessed, but for the disclosure."); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 468, 469-70 (S.D.Ohio 1984) (where no indication that party voluntarily gave otherwise privileged diary to reporter, publication of excerpts of diary should not be considered waiver of attorney-client privilege.); *In re Grand Jury Proceedings Involving Berkley and Co., Inc.*, 466 F.Supp. 863, 870 (D. Minn. 1979) ("To the extent the documents can be viewed as stolen, following the modern trend mentioned above, they should not lose the protection of the privilege.")   The courts have also consistently held

1   that only those authorized to do so may waive attorney-client privilege, and that

2   unauthorized disclosures or leaks do not do so.  *See, e.g., U.S. v. Chen*, 99 F.3d

3   1495, 1502 (9th Cir. 1996) ("since a corporate employee cannot waive the

4   corporation's privilege, that same individual as an ex-employee cannot do so.");

5   *United States ex. rel. Mayman v. Martin Marietta Corp.*, 886 F. Supp. 1243, 1246

6   (D. Md. 1995) (privilege deemed not waived as to document stolen by fired

7   employee).

8          Defendants nonetheless insist that the cover letter must be turned over along

9   with the privileged information contained therein because Plaintiffs and their

10   counsel did not provide a new privilege log in response to Defendants' August 10,

11   2006 subpoena and Defendants' Third Set of Requests For Production of

12   Documents and Things.  Bergman Decl. I, Ex. K, L.  Firstly, it is inappropriate to

13   seek discovery from opposing counsel in litigation except in very limited

14   circumstances wherein the party has *shown* that there is no other way to obtain

15   non-privileged information crucial to the preparation of a case. *Massachusetts Mut.*

16   *Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 478-49 (N.D.Cal. 1998).  "The burden of

17   establishing the right to discovery from opposing counsel is upon the requesting

18   party" under this standard. *Id. See, e.g., United Phosphorus, Ltd. v. Midland*

19   *Fumigant, Inc.*, 164 F.R.D. 245, 248 (D.Kan.1995) ("The burden of establishing

20   the criteria set forth in Rule 26(b)(3) is upon the party seeking discovery.").  This

21   burden has not been met by Defendants.

22          *The privileged attorney-client communications discussed in detail in the*

23   *cover letter enclosing same are listed in Plaintiffs' privilege logs, and remain*

24   *protected by the Court's Order*.  It would have been redundant for Plaintiffs to re-

25   list these privileged documents.  Toberoff Decl. I, Exs. L. M.

26          The illicit cover letter also does not fit squarely into the parameters of a

27   privilege log:  the recipient was Warner and the author was a disgruntled former

28   employee of Plaintiffs' counsel.  As such, it is understandable that Plaintiffs did

1    not list such a peculiar document on an additional privilege log.  The listing of

2    such a document on a supplemental privilege log would surely have invited the

3    same response from Defendants, highlighting the "straw-man" nature of their

4    arguments.

5          As pointed out by Mr. Eisen, it is clear that Magistrate Zarefsky's ruling did

6    not consider this cover letter, particularly because it was not dealt with directly by

7    Defendants in *their* motion to compel.  Having dropped the ball, Defendants are

8    seeking to squeeze any advantage they can on hyper-technical grounds to grab

9    what they previously ignored.  In reality, because this letter was not addressed by

10   Defendants' motion, nor discussed at the hearing, it obviously fell through the

11   cracks.  Remarkably, Defendants nonetheless insist that Magistrate Zarefsky found

12   that the privileged information contained in the letter has been waived even though

13   the privilege is obviously maintained for the documents/information to which it

14   refers.  Eisen properly assessed the situation and declined to turn the letter over to

15   Defendants. Bergman Decl., II, Ex. G.

16        **3.    Per The Order, The Two Letters Listed On The Privilege Log Of**

17             **Non-Party Attorney, Don Bulson, Should Not Be Disclosed**

18        Defendants erroneously argue that two communications between Plaintiffs'

19   attorney and Michael Siegel's attorney, Bulson ("Bulson Documents"), that were

20   properly accounted for in Mr. Toberoff's May 21, 2007 declaration as listed on a

21   privilege log (keying the documents' escrow bates numbers to corresponding

22   listings in a privilege log) in full compliance with the Court's Order, must

23   nonetheless must be turned over to Defendants by Mr. Eisen, based on Defendants'

24   newfound attack on the joint interest privilege. *See* Bergman Decl. II, Ex. D.

25   Pursuant to the Order, however, the documents are not to be disclosed by Mr.

26   Eisen as they have been keyed to and identified on a privilege log.  Thus,

27   Defendants, while blindly making illogical hyper-technical arguments (see above)

28   under "a bright line Order," simply ignore the Order with respect to these two

1  documents and *for first time in this Court*, assail the privileged status of the

2  documents well after the deadline for such discovery motions.

3       As set forth above, the Court ordered Mr. Toberoff to submit a declaration

4  that identifies by the Bates numbers of the escrow documents, the corresponding

5  Bates numbers of the documents already produced and"[t]ake the Bates numbers of

6  the escrow documents and correspond to the listings on the privilege log of the

7  documents which have not been produced because they were privileged."

8  Bergman Decl. II, Ex. A at 19: 11-14, 19:18-21; *see also* Ex. A 19:16- 20:3; 30:7-

9  24. "Privilege documents get returned. The privilege documents that were listed

10  on the privilege log get returned." *Id*. at 30:7-24.

11       In compliance, Mr. Toberoff's declaration matched the escrow bates

12  numbers of the two Bulson Documents to the corresponding entries on Mr.

13  Bulson's *privilege log*. Bergman Decl., II., Ex. D, at 52. There was certainly no

14  requirement in the Order that privileged documents/privilege log listings be cross-

15  referenced on multiple privilege logs to sustain the privilege. Bergman Decl. II,

16  Exs. A at 19:8- 20:5, G. As such, the Bulson Documents were not to be released to

17  Defendants by their custodian, Mr. Eisen, per the Court's Order.

18       In response, Defendants' counsel, Mr. Bergman, oddly wrote to Mr. Eisen

19  on May 22, 2007, improperly challenging the assertion of privilege in Bulson's

20  log, as if Mr. Eisen were the Court, and demanding the release of the documents.

21  Bergman Decl. II, Ex. E. In so doing, Mr. Bergman ran afoul both of the Court's

22  Order and abused Mr. Eisen's position as an allegedly neutral custodian of

23  "escrowed" documents. In his May 22, 2007 letter, Mr. Bergman admits that

24  "'escrow documents' originally listed on the privilege logs of non-party witnesses

25  should not be released." *Id*. However, one paragraph later, he claims that two

26  documents listed on the privilege log of Mr. Bulson, a non-party attorney, must be

27  turned over, while citing no rationale or authority for this exception to the Order.

28  *Id*.

1    Bulson's privilege log was served on Defendants long ago on October 23,

2    2006, and listed the two Bulson Documents as communications between Mr.

3    Bulson and Mr. Toberoff. Toberoff Decl. I, Ex. O.  Defendants could well have

4    moved in this Court to compel Plaintiffs' production of these two documents as

5    easily within the discovery and motion deadlines as Defendants do now for the first

6    time, long after the passing of such deadlines.  Defendants failed to do so,

7    presumably because they had filed instead a motion to compel in the United States

8    District Court for the Northern District of Ohio, which is still pending. Defendants'

9    belated bootstrapping of their mini-motion attacking the "joint interest" privilege

10   into a purported motion to compel compliance, does not alter the fact that it is

11   impermissibly beyond the Court ordered deadline for such discovery motions.

12   Defendants present the Court with an elaborate time line in an effort to paint

13   Plaintiffs' counsel as "sneaking" documents into a third party's privilege log.

14   Defendants contend that because documents are listed on a third party attorney's

15   privilege log, but not listed on Plaintiffs' privilege log, that this waives any claim

16   of the joint interest privilege.

17    Notwithstanding the above, which is fatal to Defendants' newfound

18   arguments and motion, the joint interest privilege applies to the Bulson

19   Documents.  "The common interest privilege … applies where (1) the

20   communication is made by separate parties in the course of a matter of common

21   [legal] interest; (2) the communication is designed to further that effort; and (3) the

22   privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495-96

23   (N.D. Cal. 2003).  *See also In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389

24   (Fed.Cir.1996) (common interest privilege is "an exception to the general rule that

25   the attorney-client privilege is waived upon disclosure of privileged information to

26   a third party.")  It is applicable to works protected by attorney-client, work

27   product, or any other privilege. *See, e.g., Nidec Corp. v. Victor Co. of Japan*, __ F.

28   Supp.2d __, 2007 WL 1994171 at *2-3 (N.D. Cal. 2007) (discussing the "common

39

1    interest privilege" as an anti-waiver exception when other privileges waived.)

2    Moreover, as the "common interest privilege" also extends to works protected by

3    the work product doctrine, "the disclosure to a third party does not necessarily

4    constitute a waiver of work product privilege." *Id.* at *4 ("For work product,

5    'protection is waived where disclosure of the otherwise privileged documents is

6    made to a third party, and that disclosure enables an adversary to gain access to the

7    information.  The work product privilege provides protection against adversaries

8    and is not as easily waived as the attorney-client privilege").

9           Thus, when parties are negotiating matters that likely will lead to a joint

10   legal interest that will result in litigation, the first two factors listed in *Bergonzi* are

11   met, and the common interest privilege applies, as such communications constitute

12   protectible work product created in anticipation of litigation.  *See, e.g., Nidec*

13   *Corp.,* 2007 WL 1994171 at *4 (N.D. Cal. 2007) (requiring a "common legal

14   interest," including "anticipated joint litigation," for the common interest exception

15   to apply); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 310 (N.D.

16   Cal. 1987) (common interest applies where "at the time defendant and [the third-

17   party] were negotiating it seemed quite likely that defendant and [the third-party]

18   would be sued by plaintiff and that in that litigation … would be identically

19   aligned.")  So long as the communications are designed to further that common

20   legal interest, rather than "to facilitate [a] potential commercial transaction," the

21   common interest privilege will apply.  *Nidec Corp.*, 2007 WL 1994171 at *4.

22          Defendants have cited no authority for the proposition that, because a

23   document that is the subject of work-product and common interest privileges is

24   listed in one privilege log and not another, privilege is waived with respect to that

25   document.  All of Defendants' authorities cited for the proposition that Plaintiffs'

26   privilege claims have been waived relate to cases either where the documents in

27   question were not listed on *any* privilege log, or where waiver occurred through

28   other means; moreover, none of the cited cases even consider an assertion of

1  common-interest or joint-litigant privileges.  *See, e.g., Fox v. California Sierra*

2  *Fin. Servs.,* 120 F.R.D. 520, 525 (N.D. Cal. 1988) (failure to *establish* privilege,

3  not waiver); *Thelen Reid & Priest LLP v. Marland,* 2007 WL 578989 at *9 (N.D.

4  Cal. 2007) (finding that attorney-client privilege waived for documents not listed

5  on *any* privilege log); *Cunningham v. Connecticut Mut. Life Ins.,* 845 F.Supp. 1403

6  (S.D. Cal. 1994) (waiver occurred after application of a multi-factor test where

7  document was not listed on any privilege log).

8      The Bulson Documents contain documents protected by the common interest

9  privilege and work product doctrine.  Defendants' conspiratorial statements aside,

10  the correspondence between Toberoff and Bulson was designed to further a joint

11  legal strategy with respect to the issue of the "Superman" terminations.  Toberoff

12  Decl. II, ¶ 4.  Notwithstanding Defendants' unproven speculation regarding

13  whether the two Bulson Documents concerned negotiations to buy Michael

14  Siegel's Termination interest, even this would naturally entail discussions of

15  litigation strategy and the odds of Plaintiffs succeeding in this litigation.  Plaintiffs

16  and Michael Siegel were closely aligned in their legal interests vis à vis Warner,

17  otherwise Michael Siegel and his attorney Bulson would have nothing of value.

18      Considering the importance of the "Superman" property to Warner, such

19  litigation was a virtual inevitability in the absence of settlement.  Such

20  communications amongst the attorneys of Jerome Siegel's statutory heirs under 17

21  U.S.C. § 304(c) (i.e., Plaintiffs and Michael Siegel) in anticipation of pending

22  litigation regarding the Termination, of which they are the beneficiaries, is

23  precisely the sort of communications the joint interest privilege is designed to

24  protect.  Thus, the Bulson Documents were protected by the applicable joint

25  interest privilege and work product doctrine, which were not waived by disclosure

26  to Mr. Bulson or by virtue of the fact that they were stolen from the files of

27  Plaintiffs' counsel.

28

1    Nor is the fact that the documents were not listed on Plaintiffs' privilege log

2    -- as opposed to Mr. Bulson's privilege log -- dispositive. *See, e.g., Burlington*

3    *Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142.

4    1147 (9th Cir. 2005) ("we reject the *per se* waiver rule" that failure to list

5    documents on a privilege log automatically waives privilege); *Thelen Reid &*

6    *Priest LLP v. Marland*, 2007 WL 578989 at *10 (N.D. Cal. 2007) ("production of

7    an inadequate privilege log *may* be deemed waiver of the privilege" where

8    "fail[ure] to log the additional documents" on *any* privilege log on multiple

9    occasions); *Imperial Corporation of America v. Durkin*, 174 F.R.D. 475, 478

10   (S.D.Cal.1997) (recognizing that document-by-document privilege log is not a

11   rigid requirement where circumstances make less detailed assertion appropriate.)

12   Courts are to apply a "holistic reasonableness analysis" to claims of

13   privilege and waiver thereof, "subject to any … agreements or stipulations among

14   the litigants." *Burlington Northern & Santa Fe Ry. Co.,* 408 F.3d at 1148.

15   Moreover, it is not improper to rely on a third-parties' assertion of privilege. *See*

16   *Shamis v. Ambassador Factors Corp.*, 34 F.Supp.2d 879 (S.D.N.Y. 1999) (only

17   where subpoenaed third-party's privilege log "fails to identify the nature of the

18   privilege being claimed and is thus insufficient," could plaintiff not rely on it for an

19   invocation of common-interest privilege.). *See also Gomez v. Vernon*, 255 F.3d

20   1118, 1131-32 (9th Cir. 2001)(The attorney-client privilege remains protected even

21   in the event of *inadvertent* disclosure, provided that the holder "has made efforts

22   … reasonably designed to protect the privilege.")

23   **B.    DEFENDANTS' IMPROPER ATTEMPT TO INFLUENCE AND**

24   **INTERFERE WITH THE "ESCROW" PROCESS SHOULD NOT BE**

25   **COUNTENANCED**

26   After having convinced the Court to issue its Order based on Defendants'

27   purported adherence to a measured "neutral" protocol, Mr. Bergman improperly

28   attempted to influence the process, contravening the Order and abusing Mr. Eisen's

1    role as a purported custodian of "escrow documents." Defendants took it upon

2    themselves to send Mr. Eisen documents identified in Mr. Toberoff's Court

3    ordered declaration "as having been previously produced so that you can compare

4    them to the Escrow Documents in your file." Bergman Decl. II, Ex, E.

5    Defendants also sent Mr. Eisen privilege logs cited in Mr. Toberoff's declaration

6    requesting that Mr. Eisen "compare the privilege entries to the Escrow Documents

7    in your file" to test the validity of the assertion of privilege. *Id.*

8         Magistrate Zarefsky long ago approved the format of Plaintiffs' privilege

9    logs in response to a challenge by Defendants.[12]  Moreover, the time for

10   Defendants to have brought a properly noticed motion to contest the sufficiency of

11   particular entries on plaintiffs' privilege log has long ago passed with the motion

12   cut-off.  Defendants' motion regarding the stolen documents could easily have

13   been brought sufficiently in advance to allow for any follow-up motions

14   challenging Plaintiffs' and third-parties' privilege logs.  Defendants opted instead

15   to bring their motion with respect to the stolen documents *on March 26, 2007, the*

16   *very last day of the prior motion cut-off.*

17        Mr. Bergman went so far as to describe, and instruct Mr. Eisen to fish

18   through and search for, particular stolen documents which Warner's VP,

19   Litigation, Wayne Smith, recalled (though Mr. Smith had attested in support of

20   Defendants' motion to compel that he had merely glanced at the documents to

21   assess whether any were privileged) so that Defendants could collaterally attack

22   Plaintiffs' privilege logs, previously upheld by the Court. Bergman Decl., II, Ex. E.

23   As Eisen notes in his May 24, 2007 letter, the Order does not provide for this sort

24   of scouring and testing of plaintiffs' privilege log entries. Bergman Decl. II, Ex. G.

25

26

---

27   [12] Defendants previously brought a motion attacking the form and sufficiency of plaintiffs'
     privilege logs which was denied by Magistrate Zarefsky's order dated August 18, 2006, holding
28   that "by providing this log, the Plaintiffs have sufficiently asserted the attorney-client privilege
     and the work product doctrine." Toberoff Decl. I, Ex. A.

1    Defendants' falsely accuse Plaintiffs of improperly "preventing" Eisen from

2    discharging his duties, when it is Defendants, led by Mr. Bergman, who attempted

3    to improperly influence and abuse Mr. Eisen's passive role and the Court's Order

4    in a classic example of unbridled gamesmanship and overreaching.  The Court's

5    Order certainly does not countenance or permit Mr. Bergman's highly improper

6    conduct.   Bergman Decl. II, Ex. A.  In fact, the Order indicates that Defendants

7    are to await the escrow holder's dispersal of the documents.  Bergman Decl. II, Ex.

8    A. 19:16- 20:3.  To his credit, Mr. Eisen, though retained and compensated by

9    Warner, was thoroughly uncomfortable with the position Mr. Bergman had placed

10   him in, refused to participate, acknowledged the latent ambiguities in the Order in

11   light of the nature of the documents and the hearing on Defendants' motion, and

12   deferred the matter to the Court.  Bergman Decl. II, Ex. G.

13   Pursuant to the Order, Plaintiffs' counsel in his declaration properly keyed

14   by bates numbers those documents corresponding to numerical listings on

15   designated privilege logs and then turned all this information over to Mr. Eisen.

16   Bergman Decl. II, Ex. D.  Instead of waiting for Mr. Eisen to discharge his duties,

17   Defendants improperly attempted to persuade Mr. Eisen to read through the

18   privileged documents on Defendants' behalf to hunt for particular documents to

19   assess their privileged status and the sufficiency of Plaintiffs' privilege logs, and

20   then sent over hand picked documentation to guide him, which was never provided

21   to plaintiffs.  Bergman Decl. II, Ex. E.

22   C.   **SANCTIONS AGAINST PLAINTIFFS ARE IMPROPER**

23   Defendants' demand for $7,440 in sanctions is baseless in light of Plaintiffs'

24   admitted compliance with the Court's Order.  Plaintiffs' counsel drafted and served

25   a declaration in strict compliance with the Court's Order, as admitted by

26   Defendants.  As noted above, latent ambiguities in the Order reasonably came to

27   light in this process with respect to 9 documents, out of the 839 pages of stolen

28   documents at issue.  These ambiguities were duly noted and acknowledged by the

44

1   escrow holder, Mr. Eisen, in his May 24, 2007 letter.  Bergman Decl. II, Ex. G.

2          Defendants' hyperbolic accusations that Mr. Toberoff "prevented" Mr.

3   Eisen from discharging his duties and their other unfounded efforts to "tar and

4   feather" Mr. Toberoff transparently attempt to prejudice the Court and are

5   demonstrably false.  Mr. Eisen's refusal to follow Defendants' attempts to interfere

6   with the execution of his duties, his acknowledgement of latent ambiguities in the

7   Order and his desire for clarification from the Court belies Defendants' hollow call

8   for sanctions.  *Id.*

9          **D.    DEFENDANTS SHOULD BE SANCTIONED FOR THEIR**

10              **ATTEMPT TO INFLUENCE THE ESCROW PROCESS**

11         Defendants' transparent gamesmanship of touting the neutrality of the

12  protocol they followed regarding stolen legal files to obtain the Court's Order, and

13  then baldly trying to manipulate and influence the escrow process once the Order *is*

14  sanctionable.  Federal Rule of Civil Procedure 37(b)(2).  It is Defendants'

15  meddling in the escrow process, coupled with their thoroughly unreasonable

16  position regarding documents within the obvious rationale of the Court's Order

17  that has multiplied the parties' attorney's fees and saddled the Court with yet

18  another motion regarding these documents, which in the first place were illegally

19  pilfered from the files of Plaintiffs' counsel. Therefore, Plaintiffs respectfully

20  request that the Court enter an order granting them sanctions in the amount of

21  $5,600 to recompense attorneys' fees attributable to Plaintiffs' opposition to this

22  motion.  Toberoff Decl. II, ¶ 5.

23  **V.    DEFENDANTS' CONCLUSION**

24         For the foregoing reasons, Defendants respectfully request that the Court

25  grant their motion, and (1) order the Escrow holder Mr. Eisen to carry out the

26  Court's April 30, 2007 Order and turn over to Defendants any Escrow Document

27  that was not listed on a privilege log, including the Bulson documents; (2) inform

28  Mr. Eisen that he may use the documents and privilege log entries listed on Mr.

1  Toberoff's declaration to confirm that he is releasing the proper Escrow

2  Documents to Plaintiffs and Defendants; and (3) grant sanctions to Defendants in

3  the amount of $7,440.

4  **VI.**    **PLAINTIFFS' CONCLUSION**

5        For the reasons set forth herein, Plaintiffs respectfully request that

6  Defendants' unfounded motion be denied in its entirety and that the Court grant

7  Plaintiffs sanctions in the amount of $5,600.

8

9

10  DATED:  September **17**, 2007    Respectfully submitted,

11                    WEISSMANN WOLFF BERGMAN
                      COLEMAN GRODIN & EVALL, LLP
12                              -and-
                      FROSS ZELNICK LERMAN ZISSU, LLP
13                              -and-
                      PERKINS LAW FIRM, PLC
14

15                    By _____

16                      Michael Bergman
                      Attorneys for Defendants

17

18  DATED: September ___, 2007    LAW OFFICES OF MARC TOBEROFF, PLC

19

20                    By _____

21                      Marc Toberoff

22                    Attorneys for Plaintiffs JOANNE SIEGEL
                      and LAURA SIEGEL LARSON

23

24

25

26

27

28

46

073