# EXHIBIT D

WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
Anjani Mandavia (SBN 94092)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212
Telephone:  310-858-7888
Fax:          310-550-7191
Email:        mbergman@wwllp.com

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
James Weinberger (Admitted *pro hac vice*)
866 United Nations Plaza
New York, New York 10017
Telephone:  212-813-5900
Fax:          212-813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
Cold Spring, NY 10516
Telephone:  845-265-2820
Fax:          845-265-2819

Attorneys for Defendants and Counterclaimant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON, <br><br> Plaintiffs, <br><br> vs. <br><br> TIME WARNER INC., WARNER COMMUNICATIONS INC. WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10, <br><br> Defendants. <br><br><br><br> AND RELATED COUNTERCLAIMS. | Case No. SA CV 04-8400 SGL (RZx) <br> Case No. SA CV 04-8776 SGL (RZx) <br><br> Hon. Stephen G. Larson, U.S.D.J. <br> Hon. Ralph Zarefsky, U.S.M.J. <br><br> **DECLARATION OF MICHAEL BERGMAN IN RESPONSE TO THE DECLARATION OF MARC TOBEROFF FILED PURSUANT TO THE COURT'S SEPTEMBER 17, 2007 ORDER** <br><br> **DISCOVERY MATTER LOCAL RULE 37** |

I, Michael Bergman, declare under penalty of perjury:

1.    I am a member of Weissmann Wolff Bergman Coleman Grodin & Evall LLP, counsel for Defendants. This declaration, based upon my own personal knowledge and our office's records, is submitted in response to the Declaration of Marc Toberoff Filed Pursuant To The Court's September 17, 2007 Order.

2.    This declaration addresses two issues. The first issue is whether the nine Escrow Documents that "slipped through the cracks" should be withheld from production based upon Plaintiffs' and Mr. Toberoff's current assertions of the attorney-client privilege. As explained below, each of the three categories of documents addressed in Mr. Toberoff's declaration -- the "defamatory cover letter" to the Escrow Documents, the post-litigation attorney-client communications, and Mr. Toberoff's correspondence with third party Michael Siegel's attorney Don Bulson -- should be produced to Defendants.

3.    The second issue is how the escrow holder should handle the remaining Escrow Documents, which was not addressed in the Court's September 17, 2007 Minute Order. To fully comply with Magistrate Judge Zarefsky's April 30, 2007 Order, the escrow holder, as the only neutral party with access to the Escrow Documents, should use Mr. Toberoff's May 21, 2007 declaration to match up the Escrow Documents with the privilege log entries and production documents listed in that declaration to ensure that he is releasing the proper documents and confirm that no additional documents have "fallen through the cracks."

## Background

4.    Some background is necessary to place Plaintiffs' and Mr. Toberoff's current privilege claims in context. This dispute dates back to June of 2006. On July 5, 2006, I received a call from Wayne Smith, Vice President, Senior Litigation and Chief Patent Counsel of Warner Bros. Entertainment Inc., informing me that three Warner Bros. employees, including General Counsel John Schulman, had received packages on June 28, 2006 containing documents relating to the present

litigation that had been sent by an anonymous source. (The parties now refer to these documents as the "Escrow Documents," the designation used by Magistrate Judge Zarefsky during the April 30, 2007 Hearing). Mr. Smith told me that the packages, apparently identical, each contained an unsigned cover letter alleging, among other things, various types of ethical misconduct on the part of Plaintiffs' counsel in connection with the present litigation and another previously litigated case. The cover letter also explained how the enclosed documents related to the misconduct allegations. Mr. Smith advised me that he had discussed the situation with Mr. Schulman, and that they had determined -- after Mr. Smith read an article from Los Angeles Lawyer addressing the obligations of lawyers who unwittingly receive privileged documents from opposing counsel's files, along with the main California cases identified therein -- that Mr. Smith would follow the procedure outlined in the case *State Compensation Insurance Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999). That procedure required the document recipient: (i) to review each document but to cease the review once it became apparent that the document was privileged; (ii) to contact opposing counsel and advise that the documents have been received; and (iii) to refrain from using any information in the documents until there was either an agreement with opposing counsel, or the court had determined the documents' disposition.

5.    Mr. Smith advised me that during the evening of June 28, 2006, he had undertaken the procedure described in *State Compensation*. He told me that the Escrow Documents included a number of apparently privileged documents, but that they also included non-privileged documents that he believed had not been produced in the litigation. Mr. Smith also advised that he had discussed the results of his *State Compensation* review of the Escrow Documents with Mr. Schulman and that they had decided to turn the documents over to a neutral third party, pending resolution of the disposition of the Escrow Documents, either pursuant to the agreement of the parties or order of the Court.

6.      Mr. Smith further advised that on June 30, 2006 the Escrow
Documents had been turned over to John Quinn, then an attorney at Arnold &
Porter LLP and the former president of the Los Angeles County Bar Association.
Mr. Quinn sent a letter to counsel dated July 5, 2006.  Attached hereto as Exhibit A
is a true and correct copy of that letter.

7.      Mr. Quinn subsequently Bates labeled a set of the Escrow Documents
and sent them to Mr. Toberoff, retaining a set for himself to hold in escrow.
Although the parties spoke on the phone and exchanged correspondence regarding
the Escrow Documents, they were unable to agree upon the proper disposition of
those documents.  Defendants subsequently served a request for production on
Plaintiffs on August 7, 2007 and a personal subpoena on Mr. Toberoff on August
10, 2007, asking for the production of the Escrow Documents.  Attached hereto as
Exhibit B is a true and correct copy of Defendants'/Counterclaimant's Third Set Of
Requests For The Production Of Documents And Things, and attached hereto as
Exhibit C is a true and correct copy of the Subpoena in a Civil Case directed to Mr.
Toberoff.

8.      Attached hereto as Exhibit D is a true and correct copy of Plaintiffs'
Response to Defendants'/Counterclaimant's Third Set Of Requests For The
Production Of Documents And Things, served on September 6, 2006.

9.      Attached hereto as Exhibit E is a true and correct copy of Toberoff's
Objections to Defendants' Subpoena, served on August 23, 2006.

10.     Pursuant to an August 14, 2006 Order by Magistrate Judge Zarefsky
on another discovery motion requiring Plaintiffs to "produce all privilege logs,
including any revisions, by September 29, 2006," Plaintiffs served their privilege
log on September 29, 2006.  However, Mr. Toberoff never served a privilege log
supporting his privilege objections to Defendants' Subpoena.  Attached hereto as
Exhibit F is a true and correct copy of a letter from my associate Adam Hagen to
Mr. Toberoff dated September 28, 2006 requesting that Mr. Toberoff serve a

1    privilege log in support of his privilege objections.  Mr. Toberoff never responded

2    to that letter and never served a privilege log on Defendants.

3                    **Defendants' Motion To Compel**

4            11.    Defendants subsequently initiated the joint stipulation process to

5    compel Plaintiffs and Mr. Toberoff to produce all non-privileged Escrow

6    Documents and/or all Escrow Documents not identified on any privilege log.

7    Defendants filed their joint stipulation on March 26, 2007, and their supplemental

8    memorandum on April 2, 2007.

9            12.    Magistrate Judge Zarefsky heard Defendants' motion on April 30,

10   2007.  Attached hereto as Exhibit G̲ is a true and correct copy of the transcript

11   from that hearing.  In pertinent part, Mr. Toberoff unequivocally represented to

12   Magistrate Judge Zarefsky not once, but several times, that -- save for two

13   documents that Plaintiffs produced to Defendants after Defendants filed the Joint

14   Stipulation -- all of the Escrow Documents had been either previously produced to

15   Defendants or listed on a privilege log:

16               The Court:  The question is: Have you otherwise produced [the

17          documents]?  That's all that's at issue, isn't it?

18               Mr. Toberoff:  I have, your Honor.  I have put in a declaration

19          unequivocally that even though I'm not obligated to do so, and jump

20          through hoops of having to respond and own up to documents stolen

21          from my legal files, an obligation that does not apply to the

22          defendants in this case and does not apply to parties under Rule 34, I

23          nonetheless went through every single one of those documents, which

24          they, instead of returning the originals, returned to me with Bate

25          stamps, checked it against our production, and found two documents

26          that were non-privileged that hadn't been produced that consisted of

27          letters from plaintiffs to DC Comics, which I produced.

28

                                    4

The Court:  See, your declaration doesn't quite say that, Mr. Toberoff.  I read your declaration.

Mr. Toberoff:  The intention of the declaration is to say exactly what I'm saying now; that I went through my files, not just the plaintiffs' files, which is all the motion pertains to, but all my files, all the third-party witness files --

The Court:  Forgive me for interrupting.  Your declaration does say that.  What your declaration doesn't say is that you went through these, let's call them 'whistleblower' documents, even though that may not be an accurate statement, you went through these whistleblower documents, and that you verified that each of the whistleblower documents either had been produced or had been listed on the privilege log.  It doesn't say that.

Mr. Toberoff:  That is the case, your Honor, and that was certainly my intention to say that, and I'm saying that now.

The Court:  All right, then we can get that cleared up immediately.

Mr. Toberoff:  I'd be happy to take an oath and say that, because that is precisely what I did.

(Tr. at 10:17 - 12:2).

The Court:  But Mr. Toberoff, you tell me that everything that's not privileged has been produced except for two small items, and everything that is -

Mr. Toberoff: We produced those items, your Honor.

(Tr. at 15:12 - 15:14).

The Court:  Well, now, Mr. Toberoff, didn't you tell me there were only two documents that hadn't been produced that were unprivileged?

Mr. Toberoff:  That's correct, but the ones that have been

produced, we still need to match up, and the ones that were listed on

the privilege log we would still need to match up.  And we've

produced the two documents that haven't been produced.

(Tr. at 32:9 - 32:16).

The Court:  And you are saying that in the escrow documents

there are some documents that came from third parties?

Mr. Toberoff:  Absolutely.  Well, they're actually -

The Court:   Excuse me.  But documents that nevertheless had

already been produced?

Mr. Toberoff:  Yes.

(Tr. at 33:4 - 33:10).

Magistrate Judge Zarefsky, noting that there was some "wiggle room" in Mr.

Toberoff's declaration, issued the following Order:

The Court:  Now, I told you, Mr. Toberoff, that I saw a little

wiggle room in your declaration.  You tell me you didn't mean for

there to be any.  So, here's what I'm going to do.  Not later than May

7th, that's a week from today, I want you to submit a declaration that

does identify by the Bates numbers of the escrow documents and the

corresponding Bates numbers of documents already produced, those

among the escrow documents which are unprivileged and have

already been produced.

So, you take the Bates numbers of the escrow documents and

say, 'Here are the corresponding Bates numbers of the documents that

have already been produced.'  Take the Bates numbers of the escrow

documents and correspond to the listings on the privilege log of the

documents which have not have been produced because they were

privileged.  All right?  So, put that in your declaration.

1        Then the escrow holder, Mr. Bergman, [sic] is to return to the

2    plaintiffs any documents which are identified in the declaration as

3    being privileged and having been identified on the privilege logs.

4        The others can be delivered to trial counsel for defendants

5    because they're either unprivileged, or, if they were privileged,

6    privilege has been waived because they weren't listed on the privilege

7    log.

8                                            * * *

9        The Court:  Do you understand what I've ordered you to put in

10   the declaration?

11       Mr. Toberoff:  I do, your Honor.

12   Towards the end of the hearing, in the context of Mr. Toberoff's request for

13   additional time to complete the declaration ordered by Magistrate Judge Zarefsky,

14   he repeated his Order:

15       Mr. Toberoff:  Okay.  Could you please repeat it for me,

16   because I want to make sure I'm clear.

17       The Court:  For example, Bates number, . . . Escrow document

18   00004 corresponds to previously produced document 00006.  Escrow

19   document 00007 corresponds to previously produced document

20   00009, and so on.

21       Mr. Toberoff:  Okay.

22       The Court:  Privilege escrow document 00015 is a privilege

23   document which was listed on the privilege log as document such and

24   such.

25       Mr. Toberoff:  Okay.

26       The Court:  Privileged documents get returned.  The privilege

27   documents that were listed on the privilege log get returned.  The

28   others get sent to defense counsel.

1    Mr. Toberoff:  The others get sent to defense counsel?

2    The Court:  From the escrow.

3    Mr. Toberoff:  Right.  Even though we've produced them, but

4    because we're saying they're not privileged, they will get sent to

5    defense counsel.  Okay.

6    (Tr. at 30:5 - 31:5).

7    **Actions Taken Subsequent To Magistrate Judge Zarefsky's Order**

8        13.    After Magistrate Judge Zarefsky issued his Order, I followed up with

9    Mr. Quinn, who had since left Arnold & Porter to take a position as a neutral at

10   JAMS/Endispute, and I proposed that Mr. Quinn continue to oversee the escrow

11   process to carry out the Court's Order.  Attached hereto as Exhibit H is a true and

12   correct copy of my letter to Mr. Quinn dated May 16, 2007.

13       14.    On May 18, 2007, David Eisen, Mr. Quinn's former partner at Arnold

14   & Porter, responded to my letter, informing Mr. Toberoff and I that he had

15   assumed custody of the Escrow Documents after Mr. Quinn's departure from the

16   firm, and that he was "prepared to fulfill the terms of Magistrate Judge Zarefsky's

17   order."  He also requested that one of the parties send him "the briefs on the

18   relevant motion and the transcript of the hearing" in order to assist him in the

19   process.  Attached hereto as Exhibit I is Mr. Eisen's letter to Mr. Toberoff and I

20   dated May 18, 2007.

21       15.    Mr. Toberoff served the declaration ordered by Magistrate Judge

22   Zarefsky on May 21, 2007.  Attached hereto as Exhibit J is a true and correct copy

23   of the Declaration of Marc Toberoff Pursuant to Magistrate Judge Zarefsky's April

24   30, 2007 Order.  That declaration listed a number of documents that had neither

25   been listed on a privilege log nor previously produced.

26       16.    Mr. Toberoff attached a cover letter to the May 21, 2007 declaration,

27   with the instruction that "[a]ny Documents not identified in my Declaration as

28   listed in a privilege log or as previously produced to Defendants are to be produced

8

to Defendants, <u>with the exception of the clearly Privileged Litigation Communications</u> identified in my declaration." (emphasis in original).  Attached hereto as Exhibit <u>K</u> is a true and correct copy of that cover letter.

17.    I responded to Mr. Toberoff's letter on May 22, 2007 and attached the following documents to assist Mr. Eisen in his review of Mr. Toberoff's declaration: the April 30, 2007 hearing transcript; the documents Mr. Toberoff had identified in his declaration as having previously been produced, so that Mr. Eisen could compare them to the Escrow Documents Mr. Toberoff claimed were corresponding; the privilege logs Mr. Toberoff cited in his declaration so that Mr. Eisen could compare the pertinent entries to the Escrow Documents Mr. Toberoff claimed he had listed on those privilege logs; and the briefing on Defendants' motion to compel that Mr. Eisen requested in his May 18, 2007 letter.  Attached hereto as Exhibit <u>L</u> is a true and correct copy of my May 22, 2007 letter, with the attachments omitted.

18.    Mr. Toberoff then responded to my letter, instructing Mr. Eisen, among other things, that he was not to use Mr. Toberoff's declaration to confirm that the Escrow Documents he would be releasing actually corresponded to the production documents and privilege log entries listed in Mr. Toberoff's declaration.  Attached hereto as Exhibit <u>M</u> is a true and correct copy of Mr. Toberoff's letter to Mr. Eisen dated May 23, 2007.

19.    Because Defendants believed that Mr. Toberoff was preventing Mr. Eisen from complying with Magistrate Judge Zarefsky's April 30, 2007 Order, we initiated the meet-and-confer process, and on September 17, 2007 Defendants filed their Joint Stipulation Re: Defendants' Motion to Compel Compliance With The Court's 4/30/07 Order And Motion For Sanctions.

### This Court's September 17, 2007 Order

20.    During the Hearing in front of this Court on September 17, 2007, the Court held an impromptu argument regarding the Escrow Documents.  It issued a

1   ruling from the bench and then subsequently issued an Order that the escrow

2   attorney submit to the Court for *in camera* review the nine documents Mr.

3   Toberoff had identified as being under dispute because they had not previously

4   been produced to Defendants or identified on a privilege log.  The Court also

5   ordered Mr. Toberoff to submit a declaration "setting forth the ground for any

6   claim of privilege relating to said documents."  Defendants have submitted this

7   declaration in response to Mr. Toberoff's declaration.

8        21.    Mr. Toberoff's declaration, at paragraph 6, represents that the

9   "handful of documents [that had neither been listed on a privilege log nor

10  previously produced to Defendants] fall[s] into three categories that slipped

11  between the 'cracks' of [Magistrate Judge Zarefsky's] Order but are clearly

12  privileged: (i) 6 *post-litigation attorney-client communications*, which, pursuant to

13  the parties' standing agreement . . . need not have been listed in a privilege log to

14  preserve the privilege . . . ; (ii) the "defamatory cover letter" enclosing and

15  describing the contents of the stolen Escrow Documents, including many of the

16  attorney-client communications that are identified on the privilege logs of

17  Plaintiffs and non-party witnesses . . .; and (iii) 2 letters between [Mr. Toberoff]

18  and Don Bulson, Esq., the attorney for Plaintiff Laura Siegel Larson's half-brother,

19  Michael Siegel, who is a statutory beneficiary of the 'Superman' termination

20  notices, which were listed in Mr. Bulson's privilege log and properly identified as

21  such in [Mr. Toberoff's] May 21, 2007 declaration."  Below, I explain why

22  Plaintiffs and Mr. Toberoff should be required to produce the Escrow Documents

23  falling into each of these three categories (hereinafter the "Disputed Documents").

24       22.    Before delving into each individual category, it is important to point

25  out that "fell through the cracks" is a misnomer.  Plaintiffs and Mr. Toberoff have

26  been in possession of the Escrow Documents since Mr. Quinn Bates labeled and

27  sent the documents to Mr. Toberoff on July 18, 2006, and they have had several

28

1  opportunities to state their privilege contentions with respect to the Disputed

2  Documents.

3      23.    Plaintiffs' and Mr. Toberoff's first opportunity to assert that the

4  Disputed Documents are protected by the attorney-client privilege came after

5  Defendants served separate discovery requests to Plaintiffs and Mr. Toberoff, each

6  of which specifically called for the production of the Escrow Documents.

7  Plaintiffs served a privilege log on the September 29, 2006 deadline but did not

8  identify the Disputed Documents in that privilege log.  Mr. Toberoff himself made

9  the choice entirely to forgo serving a privilege log supporting the privilege

10  assertions he made in response to Defendants subpoena duces tecum to him

11  personally.

12      24.    Mr. Toberoff had a second opportunity to raise his and Plaintiffs'

13  contentions with respect to the privileged nature of the Disputed Documents during

14  the April 30, 2007 hearing in front of Magistrate Judge Zarefsky.  As described in

15  Paragraph 12 above, however, Mr. Toberoff expressly avowed several times that

16  all of the Escrow Documents had been either produced or listed on a privilege log.

17      25.    Mr. Toberoff and Plaintiffs had a third opportunity to raise their

18  contentions regarding the Disputed Documents by filing objections to Magistrate

19  Judge Zarefsky's April 30, 2007 ruling within 10 days, as provided by Local Rule

20  72-2.1.  They did not file any objections, however.

21      Given these facts, Defendants dispute Mr. Toberoff's characterization of the

22  Disputed Documents as having "fallen through the cracks."

23  **The "Defamatory" Cover Letter To The Escrow Documents**

24      26.    The first reason the "defamatory cover letter" should be released to

25  Defendants is that it falls directly within the purview of Magistrate Judge

26  Zarefsky's Order requiring the escrow holder to turn over any documents not

27  previously produced or listed on any of Plaintiffs' or Mr. Toberoff's privilege logs.

28

11

086

27.    Mr. Toberoff's assertion at Paragraph 15 that the cover letter was not the subject of Defendants' Joint Stipulation regarding the Escrow Documents is incorrect.  Defendants' Motion was based on Plaintiffs' and Mr. Toberoff's failure to produce documents or provide a privilege log in response to their request for production to Plaintiffs and their subpoena to Mr. Toberoff, both of which asked for "***All Writings*** referenced in the July 5, 2006 letter from John J. Quinn, Esq. to, among others, Marc Toberoff, Esq. . . ., and which were attached to or enclosed with the July 18, 2006 letter from John J. Quinn, Esq. to Marc Toberoff, Esq." (emphasis added).  Because the "defamatory cover letter" was among the documents referenced in Mr. Quinn's letter and enclosed with Mr. Quinn's July 18, 2006 letter, it was the subject of Defendants' discovery requests and properly put at issue in Defendants' Motion.

28.    Second, in light of Mr. Toberoff's prior statements about the privileged nature of the "defamatory cover letter," Mr. Toberoff's current declaration does not establish that the document should be protected by the attorney-client privilege.  In conjunction with the briefing on Defendants' original motion to compel, Mr. Toberoff submitted a March 23, 2007 declaration specifically addressing the privilege issue and stating, at paragraph 27, that the letter "is defamatory and in other respects *potentially violates* the attorney-client privilege," (emphasis added) even though it had never been listed on Plaintiffs' or any other privilege log. .  Attached as Exhibit N hereto is a true and correct copy of the March 23, 2007 Declaration of Marc Toberoff in Opposition to Defendants' Motion to Compel Production of Whistle Blower Documents.  This "potential" objection was neither raised at the April 30, 2007 hearing nor in the May 21, 2007 declaration following the hearing.  Indeed, the first time the "potential" privilege was ever asserted to the Court was in the declaration just submitted on September 20, 2007.

**Post-Litigation Attorney-Client Communications**

29.    The Disputed Documents containing post-litigation communications between Mr. Toberoff and his clients should be produced because they fall directly within the purview of Magistrate Judge Zarefsky's Order requiring the escrow holder to turn over any documents not previously produced or listed on any of Plaintiffs' or Mr. Toberoff's privilege logs.

30.    That Mr. Toberoff referenced these documents at Paragraph 22 to his March 23, 2007 declaration in Opposition to Defendants Motion to Compel Production of Whistle Blower Documents only further supports Defendants' position that the documents did not just "fall through the cracks."  During the hearing before Magistrate Judge Zarefsky on April 30, 2007, Mr. Toberoff unequivocally stated that all of the Escrow Documents had been either produced or listed on a privilege log.  His several unequivocal affirmations during the Hearing effectively prevented Magistrate Judge Zarefsky from considering whether Mr. Toberoff's failure to serve a privilege log in response to the subpoena issued to him personally (as opposed to the requests for production served on Plaintiffs) waived any assertion that the post-litigation communications could be protected by the attorney-client privilege.  After all, although Defendants do not deny that they entered into an agreement with Plaintiffs regarding post-litigation attorney-client communications, that agreement was only with respect to documents on both Plaintiffs' and Defendants' privilege logs which post-dated the litigation and the disclosure of which would invade work product.  Moreover, no arrangement was **ever** made with Mr. Toberoff regarding the contents of his privilege log.

**Mr. Toberoff's Correspondence With Michael Siegel's Attorney Don Bulson**

31.    The first reason the Disputed Documents concerning correspondence with third party Don Bulson should be produced to Defendants is that they fall directly within the purview of Magistrate Judge Zarefsky's Order requiring the escrow holder to turn over any documents not previously produced or listed on any of Plaintiffs' or Mr. Toberoff's privilege logs.  Mr. Bulson has acted as attorney at

relevant times for plaintiff Laura Siegel Larson's half-brother Michael Siegel, who though now deceased has a 25% share of the termination interests being litigated in this case.

32.    The following timeline explains why these particular Disputed Documents could not have been listed on Mr. Bulson's privilege log, as Mr. Toberoff contends they were:

33.    Warner Bros. received the Escrow Documents from an unidentified sender on June 28, 2006.

34.    Mr. Quinn sent Mr. Toberoff Bates labeled copies of the Escrow Documents on July 18, 2006.

35.    Defendants served Plaintiffs with their request for production of the Escrow Documents on August 7, 2006, and Defendants served Mr. Toberoff with a personal subpoena on August 10, 2006.

36.    On August 11, 2006, Defendants served an unrelated subpoena duces tecum, issued out of the United States District Court for the District of Ohio, on Don Bulson, the attorney of Michael Siegel, Jerry Siegel's deceased son.  At that time, Mr. Bulson was not represented by Mr. Toberoff.

37.    It was only sometime after Defendants served the subpoena on Mr. Bulson that Mr. Toberoff's associate Nicholas Williamson contacted Mr. Bulson. Attached hereto as Exhibit O is a true and correct copy of the Declaration of Nicholas C. Williamson, Esq. In Opposition to Defendants' Motion To Compel Documents Pursuant To Subpoena Duces Tecum.  At paragraph 3 of Exhibit O, Mr. Williamson states that "[u]pon receipt of Defendants' August 11, 2006 Subpoena Duces Tecum ("Subpoena"), I immediately contacted Bulson regarding documents he had relevant to the subpoena."

38.    During his conversation with Mr. Bulson, Mr. Williamson learned that the relevant files had been forwarded to attorney Melvin Bancheck.  (Exhibit O at ¶ 3.)

14

089

1    39.    Mr. Williamson subsequently contacted Mr. Bancheck, who provided

2  him with the relevant documents some time after <u>September 7, 2006</u>.  (Exhibit <u>O</u> at

3  ¶¶ 4-5).

4    40.    Because Mr. Toberoff refused to produce any documents or privilege

5  log on Mr. Bulson's behalf, Defendants filed a motion to compel before the

6  District Court of Ohio on October 20, 2006.  Waiting until after Defendants had

7  filed their motion, on <u>October 23, 2006</u>, Mr. Toberoff's office provided Defendants

8  with Mr. Bulson's privilege log, which purported to list all of the documents from

9  Mr. Bulson's files.  Defendants' motion to compel in Ohio, which among other

10  things challenges Mr. Bulson's assertion of the common-interest privilege, remains

11  pending, and has been since November 2006.

12    41.    Mr. Toberoff is now asserting that the Disputed Documents

13  concerning correspondence between Mr. Toberoff and Mr. Bulson should not be

14  produced because they were listed on *Mr. Bulson's* October 23, 2006 privilege log.

15  Given the facts as described above, that is a physical impossibility, since the

16  Escrow Documents were taken from Mr. Toberoff's files and sent to Warner Bros.

17  in <u>June 2006</u>, whereas Mr. Bulson's documents were not in Mr. Toberoff's files

18  until, at the earliest, <u>September 7, 2006</u>.

19    42.    In addition, the privilege log entries referenced by Mr. Toberoff

20  indicate that the letters were correspondence between Mr. Toberoff and Mr.

21  Bulson.  It is reasonable to conclude that the documents taken from Mr. Toberoff's

22  files and included among the Escrow Documents were Mr. Toberoff's copies of

23  that correspondence, which were never listed on a privilege log or produced.  It is

24  not accurate for Mr. Toberoff to cite to the entries on Mr. Bulson's privilege log

25  because those entries relate to Mr. Bulson's copies of those documents, which

26  could not have been included among the Escrow Documents.

27    43.    Even indulging the unwarranted assumption that these Bulson

28  documents "fell through the cracks," Plaintiffs' and Mr. Toberoff's privilege

assertion does not meet the test required to establish the common-interest exception to the attorney-client privilege.  Plaintiffs and Mr. Toberoff are asserting that they did not waive their attorney-client privilege when they initiated communications with third party Mr. Bulson.  Given their relationship between Plaintiffs and Mr. Bulson's client Michael Siegel, however, they cannot meet their burden.

44.    Michael Siegel (now deceased), owned a vested 25% share of the copyright termination interest that is the subject of the current litigation.  His position vis-à-vis Plaintiffs' ownership shares is certainly adversarial, as it has been at least since Plaintiffs' September 21, 2002 letter to Defendants purported to repudiate Plaintiffs' October 2001 settlement with Defendants (prior to the purported repudiation, Michael Siegel stood to benefit from the Settlement Agreement and his interests were arguably aligned with Plaintiffs' interests with respect to the settlement.)  Attached hereto as Exhibit P is a true and correct copy of that letter.    45.    After Plaintiffs repudiated that settlement agreement, Plaintiffs retained a California company, IP Worldwide, LLC ("IPW"), in which Mr. Toberoff was a principal, to represent them in connection with efforts to exploit their termination interest.  Attached hereto as Exhibit Q is a true and correct copy of an agreement between IP Worldwide, LLC and Joanne Siegel and Laura Siegel Larson, dated as of October 3, 2002.

46.    Then, in January 2003, Plaintiffs and IPW entered into a second agreement in which they acknowledged certain "risks and potential problems regarding Michael Siegel" and agreed that IPW partner Ariel Emanuel "will attempt to purchase all of Michael Siegel's rights, title and interest" in his termination rights in connection with IPW's representation of Plaintiffs.  Attached hereto as Exhibit R is a true and correct copy of an agreement between IP Worldwide, LLC and Joanne Siegel and Laura Siegel Larson, dated January 21, 2003.

47.     These agreements suggest that Mr. Toberoff's communications with
Mr. Bulson on Plaintiffs' behalf were not made in the pursuit of a common legal
interest.  Rather, Mr. Toberoff, as Plaintiffs' representative and on behalf of IPW,
was attempting to negotiate a purchase of Michael Siegel's rights in the copyright
termination interest.  This type of relationship does not fall within the common
interest exception to the attorney-client privilege, which requires that the parties
pursue a common legal interest, not a common business interest.

**The Remaining Escrow Documents**

48.     Finally, although the Court's September 17, 2007 Minute Order
instructs the escrow holder to turn over the nine Disputed Documents to the Court,
it does not address how he should handle the remaining Escrow Documents.

49.     Defendants request that, pursuant to Magistrate Zarefksy's April 30,
2007 Order, the escrow holder be required to use Mr. Toberoff's declaration to
match up the Escrow Documents with the privilege log entries and production
documents listed in that declaration to ensure that he is releasing the proper
documents.  If the Court is concerned about the burden on the escrow agent, it
could conduct the review *in camera*.

50.     By undertaking this review, Mr. Eisen or the Court can ensure that he
complies with Magistrate Judge Zarefsky's Order that the Escrow Documents be
returned to Mr. Toberoff *only* if they have been listed on Plaintiffs' privilege logs.
If any of the Escrow Documents do not correspond to the privilege log entries Mr.
Toberoff has provided, those documents should be turned over to Defendants.

51.     Given the facts described above, that Magistrate Judge Zarefsky's
Order was founded on the representation Mr. Toberoff solemnly made during the
hearing that each Escrow Document had either been produced or listed on a
privilege log, there is even more of a reason for Mr. Eisen to undertake this
analysis.  Mr. Toberoff has taken the position that only nine documents "slipped
through the cracks."  However, it is impossible for Defendants, who do not have

access to the Escrow Documents, to determine if any additional documents "fell through the cracks," or if Mr. Toberoff's has accurately represented that the remaining documents all correspond to privilege log entries. Mr. Eisen, as a neutral party with access to the Escrow Documents, is in a unique position to undertake this analysis. Moreover, Defendants have reason to believe that additional documents have indeed "slipped through the cracks." Indeed, Defendants' original concern regarding the Escrow Documents was that they included *nonprivileged*, responsive documents that had not been produced by Defendants. As mentioned above, Mr. Smith undertook an initial review of the Escrow Documents pursuant to the *State Compensation* case. During that review, he segregated the Escrow Documents into three categories: "non-privileged," "privileged," and "?" Among the "non-privileged" category of Escrow Documents was correspondence between plaintiff Laura Siegel Larson and her estranged (now deceased) step-brother, Michael Siegel, relating to Mr. Siegel's share of the termination interest at stake in the litigation. Plaintiffs have not produced any such correspondence in this litigation, and it has not been identified on any of the privilege logs. Thus, these documents would also appear to have "fallen through the cracks," yet are not among the nine documents provided by Mr. Toberoff to the Court. An actual comparison of the Escrow Documents to the allegedly corresponding privilege log entries is the only way to confirm that all non-privileged documents contained within the Escrow Documents have been produced, and we respectfully request that it be ordered to occur.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 25th day of September, 2007 at Beverly Hills, California.

Michael Bergman

**093**

# EXHIBIT E



1 | WEISSMANN WOLFF BERGMAN
    COLEMAN GRODIN & EVALL LLP
2 | Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3 | 9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California  90212
4 | Telephone:  310-858-7888
    Fax:            310-550-7191
5 | e-mail:  mbergman@wwllp.com

6 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
7 | 866 United Nations Plaza
    New York, New York  10017
8 | Telephone:  212-813-5900
    Fax:            212-813-5901

9 |
    PERKINS LAW OFFICE, P.C.
10 | Patrick T. Perkins (Admitted *pro hac vice*)
    1711 Route 9D
11 | Cold Spring, NY  10516
    Telephone:  845-265-2820
12 | Fax:            845-265-2819

13 | Attorneys for Defendants and Counterclaimant

14 |              UNITED STATES DISTRICT COURT
15 |   CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

16 | JOANNE SIEGEL and LAURA          ) Case Nos. [Consolidated for
     SIEGEL LARSON,                   ) Discovery]
17 |                                  ) CV 04-8400 SGL (RZx)
                 Plaintiffs,          ) CV 04-8776 SGL (RZx)
18 |                                  ) Hon. Stephen G. Larson, U.S.D.J.
        vs.                           ) Hon. Ralph Zarefsky, U.S.M.J.
19 | TIME WARNER INC., WARNER         )
     COMMUNICATIONS INC., WARNER      ) **STIPULATION RE:**
20 | BROS. ENTERTAINMENT INC.,        ) **SCHEDULING ORDER**
     WARNER BROS. TELEVISION          )
21 | PRODUCTION INC., DC COMICS,      )
     and DOES 1-10,                   )
22 |                                  )
                 Defendants.          )
23 |                                  )
                                      )
24 |                                  )
                                      )
25 |                                  )
                                      )
26 | ─────────────────────────────    )
                                      )
27 | AND RELATED COUNTERCLAIMS.       )
                                      )
28 |

─────────────────────────────────────────────
**STIPULATION REGARDING SCHEDULING ORDER**

1    Plaintiffs/counterclaim-defendants Joanne Siegel and Laura Siegel Larson
2    (collectively "Plaintiffs"), and defendants Warner Bros. Entertainment Inc., Time
3    Warner Inc., Warner Communications Inc. and Warner Bros. Television
4    Production Inc. and defendant/counterclaimant DC Comics (collectively
5    "Defendants"), by and through their respective counsel of record, and subject to
6    the order of this Court, hereby stipulate and agree as follows:
7        WHEREAS, pursuant to the prior orders of this Court, the following trial
8    and pre-trial dates have been set in the "Superman" action (Case no. CV 04-8400
9    SGL (RZx)):
10
11   | Mediation Deadline | March 28, 2008 |
12   | Jury Instructions Due | March 31, 2008 |
13   | Objections to Jury Instructions | April 7, 2008 |
14   | Hearing on Motions in Limine | April 14, 2008, at 1:30 p.m. |
15   | Final Pre-trial Conference | April 28, 2008 at 11:00 a.m. |
16   | Trial Briefs Due | May 5, 2008 |
17   | Trial of Case No. CV 04-8400 | May 13, 2008, at 9:30 a.m. |
18   | Trial of Case No. CV 04-8776 | Thereafter, as set by the Court |
19
20       WHEREAS, the parties have briefed and argued substantial cross-motions
21   for partial summary judgment on a number of separate issues and/or claims for
22   relief in the two actions, which motions are currently under submission for
23   decision by the Court;
24       WHEREAS, the Court's rulings on the parties' cross-motions for partial
25   summary judgment will materially impact the parties' preparations for trial,
26   including the matters the parties are required to address during their conference
27   pursuant to Local Rule 16-1 in an effort to properly prepare this matter for trial;
28

2

**STIPULATION REGARDING SCHEDULING ORDER**

1    WHEREAS, the Court's rulings on the parties' cross-motions for partial

2    summary judgment will also materially impact any mediation efforts that the

3    parties engage in, and the parties' mediation is currently scheduled to take place in

4    less than three weeks, on March 10, 2008 (with mediation briefs due February 29,

5    2008), which is the last date available for Judge Daniel Weinstein, the neutral

6    selected by the parties, in advance of the current mediation deadline;

7    WHEREAS, the parties have identified certain additional issues that they

8    believe should be addressed by the Court, and have submitted a stipulation

9    concurrently herewith requesting that the Court set a status conference to set a

10    briefing schedule with respect thereto;

11    WHEREAS, the current pre-trial schedule, including the deadlines imposed

12    by the Federal Rules of Civil Procedure, the Local Rules, and this Court's Standing

13    Order, will require the parties to prepare their mediation and pre-trial materials,

14    and likely engage in the mediation and the Local Rule 16-1 conference prior to the

15    determination of their cross-motions for partial summary judgment, resulting in

16    potentially unproductive, confusing, wasteful or duplicative effort;

17    WHEREAS, the parties believe that extending the pre-trial dates as set forth

18    below so as to coincide with and following in an orderly fashion the Court's ruling

19    on the parties' cross-motions will provide for the more orderly preparation and

20    organization of this matter for trial;

21    WHEREAS, counsel for each party certifies to the Court that the requested

22    extensions are necessary to the orderly preparation and trial of these matters, and

23    are not sought for any improper purpose;

24    NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED,

25    subject to the approval of the Court, that the following pre-trial dates shall be

26    applicable to these matters:

27

28

**STIPULATION REGARDING SCHEDULING ORDER**

| | |
|---|---|
| Mediation Deadline | 30 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Opening Briefs on Additional Pre-trial Matters as Permitted by the Court (*see* Stipulation filed concurrently herewith) | ___ days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Jury Instructions Due | 42 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Objections to Jury Instructions | 7 days after jury instructions are due |
| Hearing on Motions in Limine | 91 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Final Pre-trial Conference | 105 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Trial Briefs Due | 112 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Trial of Case No. CV 04-8400 | 119 days after the Court enters an Order on all of the parties' cross-motions for partial summary judgment |
| Trial of Case No. CV 04-8776 | Thereafter, as set by the Court |

/ / /

/ / /

/ / /

/ / /

4

**STIPULATION REGARDING SCHEDULING ORDER**

1        IN THE ALTERNATIVE, the parties respectfully request that the Court set

2    a status conference for the purpose of scheduling appropriate pre-trial and trial

3    dates, taking into account the timing of the Court's ruling on the parties' pending

4    cross-motions for partial summary judgment.

5

6    Respectfully submitted,

7    DATED:  February 21, 2008       WEISSMANN WOLFF BERGMAN
                                    COLEMAN GRODIN & EVALL LLP

8

9                                        FROSS ZELNICK LEHRMAN & ZISSU,
                                    P.C.

10                                       PERKINS LAW OFFICE, P.C.

11

12                                       By: _____

13                                           Michael Bergman
                                    Attorneys for Defendants

14

15   DATED:  February 21, 2008       LAW OFFICES OF MARC TOBEROFF,
                                      PLC

16

17                                       By: _____

18                                           Marc Toberoff
                                    Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

5

**STIPULATION REGARDING SCHEDULING ORDER**

# EXHIBIT F

Case 2:10-cv-03633-ODW-RZ Document 164-2 Filed 02/08/11 Page 28 of 48 Page
Case 2:04-cv-08400-SGL-RZ Document 294 Filed 03/31/2008 Page 1 of 2 Page
ID #:12272

"O"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-08400-SGL (RZx)                    Date:  March 31, 2008

Title:     JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
           WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
           corporation; DC COMICS INC., a corporation; and DOES 1-10
========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                            None Present
           Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:    ORDER DENYING AS MOOT PARTIES CROSS-MOTIONS FOR PARTIAL
                SUMMARY JUDGMENT IN CV-04-8776 CASE; ORDER REQUIRING
                PARTIES TO ENGAGE IN MEANINGFUL SETTLEMENT NEGOTIATIONS;
                ORDER SETTING PRE-TRIAL AND TRIAL DATES; ORDER STAYING
                RULING ON OUTSTANDING ISSUES CONTAINED IN JULY 27, 2007,
                ORDER PENDING SETTLEMENT DISCUSSIONS   (IN CHAMBERS)

        As the Court stated during the September 17, 2007, hearing on the parties' cross-motions
for partial summary judgment in these cases, the issues raised by the parties in the Superboy
action, Case No. CV-04-8776-SGL, were, in light of the Court's earlier ruling on July 27, 2007, and
with a forthcoming ruling in the companion Superman action, Case No. CV-04-8400-SGL, would
be rendered moot.  With the Court's issuance of its Order on March 26, 2008, the Court finds that
the issues raised in the parties' cross-motions for partial summary judgment in the Superboy case
are, in fact, moot.

        In light of the Court's rulings to date in these companion cases, which have narrowed the
areas of dispute between the parties, the Court believes that it would be prudent at this juncture for
the parties to engage in meaningful settlement talks before their jointly chosen mediator, JAMS
Mediator Hon. Daniel Weinstein (Ret.), something which they apparently have not done since the
inception of this litigation in 2004.

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1

Accordingly, the Court hereby **ORDERS** the parties to devote the next sixty (60) days to engaging in a good faith effort to settle their dispute in the Superman and Superboy litigation before the JAMS Mediator. At the conclusion of this period, on June 1, 2008, the parties are to file a joint report, outlining the efforts that they have taken in furtherance of settlement and the results of those efforts.

Thereafter, the Court will, if the parties have not settled these cases, set out a briefing schedule and a hearing date on the five issues identified in the parties' February 21, 2008, Stipulation Requesting Status Conference and Briefing Schedule Regarding Certain Trial and Pre-Trial Matters, as well as the following issues left unresolved in this Court's March 26, 2008, Order in the Superman case: Whether and to what extent do the following fall within the scope of what plaintiffs regained through their termination notices: 1) Post-termination alterations to pre-termination derivative works; and 2) Mixed use of trademarks and copyright.

The Court also finds that there is a need for the placement of firm pre-trial and trial dates to both assist the Court in case management and to give predictability to counsel as to when the litigation in this case will come to an end. The Court therefore sets the following pre-trial and trial dates:

1.  The Court will conduct a pre-trial conference in the Superman case on October 6, 2008, at 11:00 a.m. in Courtroom One.

2.  Thereafter, the court will hold a hearing on any motions in limine in the Superman on October 20, 2008, at 11:00 a.m. in Courtroom One.

3.  Trial in the Superman case is set for November 4, 2008, at 9:30 a.m. in Courtroom One.

As a final matter, the Court reserves issuing an order on the remaining issues brought up in the Court's July 27, 2007, Order in the Superboy case (and to which the parties have provided both supplemental briefing and oral argument), and setting the pre-trial and trial dates in the Superboy matter, if needed, until after the conclusion of the trial in the Superman case.

**IT IS SO ORDERED.**

# EXHIBIT G

1  WEISSMANN WOLFF BERGMAN
   COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone: (310) 858-7888
   Fax: (310) 550-7191
5
   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6  Roger L. Zissu (Admitted *pro hac vice*)
   James D. Weinberger (Admitted *pro hac vice*)
7  866 United Nations Plaza
   New York, New York 10017
8  Telephone: (212) 813-5900
   Fax: (212) 813-5901
9
   PERKINS LAW OFFICE, P.C.
10 Patrick T. Perkins (Admitted *pro hac vice*)
   1711 Route 9D
11 Cold Spring, New York 10516
   Telephone: (845) 265-2820
12 Fax: (845) 265-2819

13 Attorneys for Defendants and Counterclaimant

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16 JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case Nos. [Consolidated for Discovery]: |
| 17    Plaintiffs, | CV 04-8400 SGL (RZx) |
| | CV 04-8776 SGL (RZx) |
| 18    vs. | Hon. Stephen G. Larson, U.S.D.J. |
| WARNER BROS. ENTERTAINMENT | Hon. Ralph Zarefsky, U.S.M.J. |
| 19 INC.; TIME WARNER INC.; DC | **NOTICE OF NEW EVIDENCE RE:** |
| COMICS; and DOES 1-10, | **DEFENDANTS' DECLARATION** |
| 20    Defendants. | **FILED PURSUANT TO THE** |
| 21 JOANNE SIEGEL and LAURA SIEGEL LARSON, | **COURT'S SEPTEMBER 17, 2007** |
| | **ORDER RE "ESCROW** |
| 22    Plaintiffs, | **DOCUMENTS"** |
| vs. | **DISCOVERY MATTER** |
| 23 TIME WARNER INC.; WARNER | **LOCAL RULE 37** |
| COMMUNICATIONS INC.; WARNER | |
| 24 BROS. ENTERTAINMENT INC.; | Time: N/A |
| WARNER BROS. TELEVISION | Date: N/A |
| 25 PRODUCTION INC.; DC COMICS; | Courtroom: 2 |
| and DOES 1-10, | Hon. Stephen G. Larson |
| 26    Defendants. | Discovery Cutoff: Nov. 17, 2006 |
| 27 AND RELATED COUNTERCLAIMS | |

28

{F0252301.5 }

**104**

Defendants Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros Television Production Inc. and defendant and counterclaimant DC Comics hereby submit this notice of new evidence that has recently come to light in view of proceedings in this case before the United States District Court for the Northern District of Ohio (the "Ohio Proceedings"), which bears on the parties' declarations filed pursuant to the Court's September 17, 2007 Order re "Escrow Documents", currently *sub judice* (the "Escrow Declarations").[1]

## A. The Escrow Motion

As the Court will recall, by Defendants' Motion to Compel Production of Whistleblower Documents, originally filed on March 26, 2007 with Magistrate Zarefsky, Defendants sought production of certain materials that were delivered by an anonymous "whistleblower" to defendant Warner Bros. Entertainment in June 2006. Magistrate Zarefsky heard that Motion on April 30, 2007 and issued an oral ruling relating to those documents, which he called "Escrow Documents," (1) requiring Plaintiffs' counsel Mr. Toberoff to submit a declaration identifying the Escrow Documents that Mr. Toberoff claimed had been listed on a privilege log or produced; and (2) requiring Plaintiffs to produce any Escrow Documents that had not been previously produced or listed by Plaintiffs or their counsel on any privilege logs.

Because Mr. Toberoff submitted an equivocal declaration that did not comply with Magistrate Zarefsky's directive, Defendants filed a Motion to Compel Compliance with the Court's 4/30/07 Order on September 17, 2007. That same day, this Court heard argument on the issue and ordered the parties to submit declarations setting forth their respective positions regarding Plaintiffs' privilege claims with

---

[1] Plaintiffs have taken the position that Defendants are required to engage in the joint-stipulation and/or meet-and-confer process prior to notifying this Court of Judge Oliver's ruling in the Northern District of Ohio. Defendants respectfully submit, however, that because Judge Oliver's Order directly relates to the "Escrow Documents" issues that are already pending before the Court, it is procedurally proper for Defendants to notify the Court of that Order through this Notice.

1  respect to certain of the Escrow Documents.  Plaintiffs filed a declaration pursuant

2  to that Order on September 20, 2007; Defendants filed a responsive declaration on

3  September 25, 2007; Plaintiffs filed an "Objection" to defendants' declaration on

4  September 27, 2007; and Defendants filed Objections to plaintiffs' filing on

5  September 28, 2007.  Familiarity with these declarations is assumed.

6  **B.**    **The Ohio Proceedings**

7         The Ohio Proceedings involve documents that a third-party witness, Don

8  Bulson ("Bulson"), asserted were covered by an alleged joint attorney-client

9  privilege held between the plaintiffs Joanne Siegel and Laura Siegel Larson

10  ("Plaintiffs") and Michael Siegel (deceased), the half-brother of plaintiff Laura

11  Siegel Larson.  Certain of the Bulson Documents overlap with the Escrow

12  Documents, and in his Escrow Declarations arguments Plaintiffs' counsel relied on

13  Bulson's assertion of privilege in the Ohio Proceedings in asserting that those

14  documents were privileged.  Bulson and Plaintiffs were represented in the Ohio

15  Proceeding by Plaintiffs' counsel in this underlying action, Marc Toberoff.

16         The Ohio Proceedings grew out of a subpoena served by defendants on

17  Bulson, who was Michael Siegel's counsel, in August 2006.  In response to the

18  subpoena, Mr. Bulson's office forwarded the documents to Mr. Toberoff, who

19  prepared a privilege log (the "Bulson Privilege Log," a copy of which is attached as

20  Exhibit A to the concurrently submitted Declaration of James D. Weinberger

21  ("Weinberger Decl.")) asserting various privileges, including a purported

22  joint/common interest exception to the waiver of attorney-client privilege as to

23  numerous communications between plaintiffs and their counsel, on the one hand,

24  and Michael Siegel and his counsel, on the other.

25         In proceedings before this Court relating to the Escrow Documents, Plaintiffs

26  have relied on assertions of privilege made in the Bulson Privilege Log in arguing

27  that nine of the Escrow Documents are privileged and not subject to production.  *See*

28  Declaration of Marc Toberoff Pursuant to Magistrate Zarefsky's April 30, 2007

1 Order, dated May 21, 2007 (entries corresponding to Escrow Documents nos.

2 Q0040, Q0057-58, Q0075-76, Q0352, Q0400-01, Q0489-90, Q0635, Q0672-73 and

3 Q0761-62). Specifically, Mr. Toberoff claimed that assertions of privilege on the

4 Bulson Privilege Log as to document nos. 318, 327 and 328 covered nine of the

5 Escrow Documents. All three documents were claimed on the Bulson Privilege Log

6 to be covered by the joint/common interest exception to the privilege waiver.

7 (Weinberger Decl. Exh. <u>A</u>).

8      In the Ohio Proceedings, Defendants objected to the assertions of privilege

9 served in response to the Bulson subpoena and filed a motion to compel production

10 in October 2006. After a 15 month delay, the Court in Ohio scheduled a hearing on

11 the motion for February 1, 2008, held before Hon. Solomon Oliver, Jr., U.S.D.J. and

12 made an oral ruling confirmed by an Amended Order dated February 5, 2008

13 (Weinberger Decl. Exh. <u>B</u>). In that Order, the Court held that:

> 14     Mr. Bulson must submit a revised privilege log by February 11, 2008.
> That revised log shall relate only to the 15 communications set forth
> 15 on page 8 of the Movant's Reply Memorandum in Support of their
> Motion to Compel. The description portion of the log shall be
> 16 revised to give sufficient detail so that Movants can determine
> whether they have a basis for objecting to the assertion of the
> 17 attorney-client privilege . . .

18 *(Id.* at 3). The revised privilege log (the "Revised Bulson Privilege Log,"

19 Weinberger Decl. Exh. <u>C</u>), includes expanded descriptions of, *inter alia*, the three

20 Bulson Privilege Log documents (nos. 318, 327 and 328) that Mr. Toberoff relied on

21 in his May 21, 2007 Declaration regarding the Escrow Documents.

22      On April 1, 2008, the Ohio Court issued a second ruling following an *in*

23 *camera* review of the documents at issue, compelling production of all documents

24 that Bulson and Plaintiffs asserted in the Revised Bulson Privilege Log were

25 protected by the common interest exception to the waiver of attorney-client

26 privilege. (Weinberger Decl. Exh. <u>D</u> at 2-3.) The Court specifically found (1) "that

27 none of the 15 communications reflected in log numbers 299, 301, ***319***, 325, ***327***,

28 ***328***, 377, 378, 379, 380, 381, 386, 393 and 412 are for purposes of giving legal

1   advice, (2) that "the communications [in 13 of the 15 log numbers, including 319,

2   327 and 328] are not made in regard to a joint and common legal or defense

3   strategy," and (3) "that the interest of Michael Siegel, as reflected in these 13

4   communications, is separate and apart from those of Joanne Siegel and Laura

5   Siegel." (*Id* at 3 (emphasis added).) As the Ohio Court observed:

6      These documents relate to the offers back and forth between Mike [sic] Toberoff on behalf of an investor who wishes to purchase

7      Michael Siegel's interest and Bulson on behalf of Michael Siegel. The primary subject matter does not relate to settlement offers

8      regarding Warner Brothers or the risk of litigation.

9   *Id*. The court ordered that the documents be produced "immediately." *Id*. The

10   documents were produced to defendants the next day, and Revised Bulson Privilege

11   Log documents nos. 319, 327 and 328 (listed in Mr. Toberoff's May 21, 2007

12   Declaration as corresponding to nine Escrow Documents), were among those

13   produced. *See* Weinberger Decl. Exh. E.

14      The Revised Bulson Privilege Log identified documents 319, 327 and 328 as

15   subject to the common interest exception to the waiver of privilege on the following

16   grounds:

17      [Communication] discussing Warner Bros.' settlement offers as they relate to Michael Siegel re: Joanne & Laura Siegel's 17 U.S.C. §

18      304(c) termination regarding Jerome Siegel's "Superman Copyright."

19   Weinberger Decl. Exh. D. Even a cursory review of the subsequently produced

20   documents (Weinberger Decl. Exh. E) shows that this description does not fit the

21   claimed privilege. For example, Revised Bulson Privilege Log document 319 is a

22   letter from Mr. Bulson to Mr. Toberoff that simply rejects an offer to purchase

23   Michael Siegel's interest in the Superman copyright. The letter does not in any

24   sense "discuss[] Warner Bros.' settlement offers and the risks of litigation" as

25   represented in the Log.

26   **C.    Impact of Ohio Ruling on the Escrow Declarations**

27      First, since it has been established in the Ohio Proceedings that Mr.

28   Toberoff's claims of joint privilege in connection with Michael Siegel are not well

{F0252301.5 }

4

**108**

1  taken, all remaining communications with Michael Siegel for which privilege has
2  been claimed should be immediately produced. (*See* Weinberger Decl. Exhs. <u>D</u>, <u>E</u>.)
3  One of the Escrow Documents that has not been produced by Plaintiffs is believed
4  to be a communication from plaintiff Laura Siegel Larson to Michael Siegel directed
5  to this same subject matter. (Second Supplemental Declaration of Wayne M. Smith
6  ("Smith Decl."), ¶¶ 3-7.)[2]  It is clear from the related correspondence which has
7  now been produced as a result of the Ohio Proceedings that the substance of the
8  communications is not privileged because it involved an adverse financial
9  negotiation; accordingly Defendants respectfully request that the Court order
10  Escrow Document Q0027-33 to be produced.

11      <u>Second</u>, in finding that Plaintiffs' asserted claim of privilege was without
12  basis, the Ohio rulings (Weinberger Decl. Exhs. <u>B</u>, <u>D</u>) and the documents
13  themselves (*id*. Exh. <u>E</u>) cast doubt on the legitimacy of Plaintiffs' privilege claims
14  as to the remaining documents sought by Defendants and which are still held by the
15  escrow agent.  This further justifies Defendants' previous request for a review to
16  determine whether each such Escrow Document has in fact been properly identified
17  on Plaintiffs' privilege logs, whether such a review be conducted by the escrow
18  agent or by the Court *in camera*.  *See* Sept. 25, 2007 Bergman Decl., ¶¶ 48-51.
19  Thus, Defendants respectfully renew their request for such a review.  *Id*.

20      <u>Finally</u>, to the extent Defendants sought certain documents (Q0040, Q0057-
21  58, Q0075-76, Q0352, Q0400-01, Q0489-90, Q0635, Q0672-73 and Q0761-62) that
22  are also the subject of the Ohio ruling (*i.e.* Revised Bulson Privilege Log documents
23  nos. 319, 327 and 328), that portion of the Escrow Declarations is now moot.  *See*
24  Sept. 25, 2007 Bergman Decl., ¶¶ 31-48 (seeking production of, *inter alia*, certain

25  _____
   [2] This document is understood to be a letter dated on or about July 11, 2003, which
26  Defendants believe is in fact Escrow Document Q0027-33. *See also* April 2, 2007
   Declaration of Wayne M. Smith, Esq. in support of Defendants' Motion to Compel
27  Production of Whistleblower Documents, ¶ 3 (identifying and describing general substance
   of communication at issue and misdescription of such document on Plaintiffs' privilege
28  log).

1 correspondence between Messrs. Toberoff and Bulson). That is, since the
2 documents at issue have been produced by way of Judge Oliver's order finding that
3 they were not subject to any applicable privilege, there is no need for Defendants to
4 seek their production a second time through the Escrow Declarations.

5 DATED: April 9, 2008        Respectfully submitted,

6        WEISSMANN WOLFF BERGMAN
        COLEMAN GRODIN & EVALL, LLP
7        FROSS ZELNICK LEHRMAN ZISSU, PC
            -and-
8        PERKINS LAW OFFICE, PLC

9

10        By _____
11            Michael Bergman

12        Attorneys for Defendants and Counterclaimant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{F0252301.5 }
6

# EXHIBIT H

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                          Date:  September 26, 2008

Title:      JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -*v*-
            WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
            corporation; DC COMICS INC., a corporation; and DOES 1-10
========================================================================
PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              None Present
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                             None present

PROCEEDINGS:    ORDER REGARDING ESCROW DOCUMENTS

        The Court has been called upon to resolve a dispute over the disposition of certain
documents (hereinafter "escrow documents") in the possession of attorney Mr. David Eisen at the
law firm Arnold & Porter.  Given the passage of time, some background is in order.

        In June, 2006, three employees at Warner Bros. Entertainment, Inc. (including the
company's then general counsel, Mr. John Schulman) received packages containing documents
relating to the present litigation (the aforementioned escrow documents) from an anonymous
source.  The documents in question contained embarrassing and potentially questionable conduct
by plaintiffs counsel in this case.  The Vice President for Warner Bros., Mr. Wayne Smith,
thereafter undertook the following steps: (1) He reviewed each document but ceased such review
when it became apparent that the document was privileged, (2) contacted plaintiffs' counsel and
advised him that the documents had been received, and (3) refrained from using any information in
the documents unless and until there was either an agreement with opposing counsel or the court
had determined how to proceed with the document's disposition.  Moreover, Mr. Smith and Mr.
Schulman further decided to turn the documents over to a neutral third party pending resolution of
the disposition of the escrow documents, either pursuant to the agreement of the parties or order
of the Court.

Magistrate Judge Zarefsky was the discovery judge in this matter at the time the escrow documents in question were received by company employees at Warner Bros. On June 30, 2006, the escrow documents were turned over to the escrow agent. The escrow agent thereafter Bates-stamped a set of the escrow documents and then sent a copy of the same to plaintiffs' counsel, Mr. Toberoff. The originals remained in the agent's possession in escrow.

On August 7, 2006, defendants served a request on plaintiffs for the production of the escrow documents, requesting, in particular, "[a]ll Writings referenced in the July 5, 2006 letter from [the escrow agent] to, among others, Marc Toberoff, Esq. and which were attached to or enclosed with the July 18, 2006, letter from [the escrow agent] to Marc Toberoff, Esq." Plaintiffs' thereafter filed a response on September 6, 2006. Subsequently, in connection with another discovery matter, Magistrate Judge Zarefsky ordered that plaintiffs "produce all privilege logs, including any revisions, by September 29, 2006." In the subsequently-produced privilege log, plaintiffs' counsel allegedly did not assert privilege in the escrow documents. At this point, defendants filed a motion to compel plaintiffs and their counsel to produce all non-privileged escrow documents not identified on any privilege log.

Defendants' motion to compel was heard by Magistrate Judge Zarefsky on April 30, 2007. During the hearing, plaintiffs' counsel asserted that, except for two documents, all of the escrow documents had been either previously produced to defendants or had been listed on a privilege log:

> COURT: The question is: Have you otherwise produced [the documents]? That's all that's all at issue, isn't it?

> MR. TOBEROFF: I have, your Honor. I have put in a declaration unequivocally that even though I'm not obliged to do so, and jump through hoops of having to respond and own up to documents stolen from my legal files, an obligation that does not apply to the defendants in this case and does not apply to parties under Rule 34, I nonetheless went through every single one of those documents, which they, instead of returning the originals, returned to me with Bate stamps, checked it against our production, and found two documents that were non-privileged that hadn't been produced that consisted of letters from plaintiffs to DC Comics, which I produced.

> COURT: See, your declaration doesn't quite say that, Mr. Toberoff. I read your declaration.

> MR. TOBEROFF: The intention of the declaration is to say exactly what I'm saying now; that I went through my files, not just the plaintiffs' files, which is all the motion pertains to, but all my files, all the third-party witness files —

MINUTES FORM 90
CIVIL -- GEN                    2                    Initials of Deputy Clerk: jh

COURT: Forgive me for interrupting.  Your declaration does say that.  What your declaration doesn't say is that you went through these, let's call them [escrow] documents, even though that may not be an accurate statement, you went through these [escrow] documents, and that you verified that each of the [escrow] documents either had been produced or had been listed on the privilege log.  It doesn't say that.

MR. TOBEROFF: That is the case, your Honor, and that was certainly my intention to say that, and I'm saying that now.

COURT: All right, then we can get that cleared up immediately.

MR. TOBEROFF: I'd be happy to take an oath and say that, because that is precisely what I did.

That during the hearing, Magistrate Judge Zarefsky, noting that the previously provided declaration was unclear, issued the following Order:

COURT: Now I told you, Mr. Toberoff, that I saw a little wiggle room in your declaration.  You tell me you didn't mean for there to be any.  So, here's what I'm going to do.  Not later than May 7th, that's a week from today, I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced.

So, you take the Bates numbers of the escrow documents and say, "Here are the corresponding Bates numbers of the documents that have already been pr and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged. All right?  So, put that in your declaration.

Then the escrow holder . . . is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.

The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log

. . . .

Do you understand what I've ordered you to put in the

declaration?

        MR. TOBEROFF: I do, your Honor.

(emphasis added).  Magistrate Judge Zarefsky then repeated the outline of his Order to plaintiffs' counsel towards the end of the hearing: "Privileged documents get returned.  <u>The privilege documents that were listed on the privilege log get returned</u>.  The others get sent to defense counsel." (emphasis added).

      On May 21, 2007, plaintiffs' counsel produced the declaration required by Magistrate Judge Zarefsky.  The declaration asserted privilege for the first time for a number of documents in escrow that had neither  been listed previously on a privilege log nor had been previously produced.  That plaintiffs' counsel's declaration went beyond the bounds of Magistrate Judge Zarefsky's order was made plain by a cover letter attached to his May 21, 2007, declaration: "Any documents not identified in my declaration as listed in a privilege log or as previously produced to defendants are to be produced to defendants, <u>with the exception of the clearly privileged litigation communications identified in my declaration</u>."  (emphasis added).

      Not surprisingly a dispute quickly ensued between the parties over whether plaintiffs' counsel's declaration sought to exclude from production to defendants categories of escrow documents ordered to be produced by Magistrate Judge Zarefsky's Order.  The matter was presented to this Court when Magistrate Judge Zarefsky had to step aside from serving as the discovery judge in this matter due to attend to personal matters.

      The Court ordered the escrow agent to submit the particular escrow documents in question (the ones plaintiffs' counsel was asserting privilege for the first time) for an <u>in camera</u> review and ordered plaintiffs' counsel to submit a declaration "setting forth the grounds for any claim of privilege relating to said documents."  Both steps were eventually done and the Court is now in the possession of both.

      Upon reflection the Court finds that plaintiffs' counsel's newly asserted claims for privilege are not well-taken. Pursuant to Magistrate Judge Zarefsky's order, any claim of privilege not previously asserted before that Order was deemed "waived."  Although plaintiffs suggest that such a reading of Magistrate Judge's order as not a fair one and lacks common sense, the language of his order is clear and unambiguous: Any escrow document not matching up to the privilege log or the declaration's list of previously-produced documents was to be produced to defendants; any assertion of privilege to such documents to be produced was deemed "waived."  That plaintiffs' counsel may have a basis to assert such privilege or otherwise challenge the propriety of producing such material on relevance grounds, etc., is inapposite.  If plaintiffs wished to press such new claims of privilege or any other basis for challenging production of the same, Magistrate Judge Zarefsky's Order deemed them waived.  What plaintiffs' counsel should have done at that point to preserve such assertions was to appeal Magistrate Judge Zarefsky's Order to this Court, in particular that section of his Order deeming any previously un-asserted grounds of privilege to be "waived."  Plaintiffs did not do so, and the time to appeal Magistrate Judge Zarefsky's Order to this

MINUTES FORM 90                                               Initials of Deputy Clerk: jh
CIVIL -- GEN                  4

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10
MINUTE ORDER of September 26, 2008

Court has long since expired.  See Local Rule 72-2.1.

     Magistrate Judge Zarefsky's Order is now the law of the case in this matter.  Plaintiffs' argument that the parties had reached an agreement beforehand that any post-litigation attorney-client communications did not have to be listed in a privilege log to preserve its privilege status is, as explained in defendants' supplemental declaration to the Court's Order, simply mistaken.

     Accordingly, pursuant to the terms of Magistrate Judge Zarefsky's Order, the escrow agent is **ORDERED** to produce to defendants' counsel forthwith any escrow document not previously listed in a privilege log or as having been previously been produced.  That is to say, the escrow agent is to match up the escrow documents with the privilege log entries and production documents listed in Mr. Toberoff's May 21, 2007, declaration.  Thus, the nine documents produced by the escrow agent to the Court for in camera review are to be produced to defendants' counsel as those documents were not previously identified in a privilege log provided by plaintiffs.

     **IT IS SO ORDERED.**

# EXHIBIT I

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                        Date:  December 4, 2008

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10

========================================================================

PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                None Present
Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:         ATTORNEYS PRESENT FOR DEFENDANTS:

None present                              None present

PROCEEDINGS:    **ORDER REGARDING ESCROW HOLDER'S OCTOBER 16, 2008, LETTER
SEEKING CLARIFICATION OF COURT'S SEPTEMBER 26, 2008, ORDER**

The Court has received and reviewed the escrow holder's October 16, 2008, letter (revised)
requesting clarification of the Court's September 26, 2008, Order, as well as the parties' respective
briefs filed in response to the escrow holder's letter.  In the letter, the escrow holder asks the Court
to answer the following questions:

In addition to the 'nine documents,' you [also] ordered me to produce to
defendants 'any escrow document not previously listed in a privilege log
or as having previously been produced.'  You further said that I am to
'match up the escrow documents with the privilege log entries and
production documents listed on Mr. Toberoff's May 21, 2007,
declaration.' This leads to the following issues, as to which I would
appreciate the Court's guidance: (1) Defendants' counsel has informed
me his position is that escrow documents listed on the privilege log of
[third party] Mr. Bulson must be produced.  Plaintiffs' counsel has
informed me his position is that documents listed on Mr. Bulson's

MINUTES FORM 90                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                    1

privilege log must not be produced.  I would request the Court's advice as to which position is correct. (2) With respect to the 'match up' of the relevant privilege logs and Mr. Toberoff's declaration, the parties disagree with one another as to whether I am to compare the description of each document in the privilege log to the corresponding escrow document.

The Court's September 26, 2008, Order was meant to dispose of the <u>one</u> remaining dispute between the parties concerning the escrow documents — the plaintiffs' assertion of privilege over nine of the documents held in escrow that were listed on Mr. Toberoff's May 21, 2007, declaration as ones to which privilege had not previously been asserted during this litigation.  This declaration was created at the direction of an order Magistrate Judge Zarefsky entered on April 30, 2007, which additionally spelled out the ramifications flowing from the information disclosed in said declaration.  Specifically, Magistrate Judge Zarefsky stated:

> I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced. So, you take the Bates numbers of the escrow documents and say, "Here are the corresponding Bates numbers of the documents that have already been produced and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged.  All right?  So, put that in your declaration.  Then the escrow holder . . . is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.  The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, <u>privilege has been waived because they weren't listed on the privilege log</u>. . . .  <u>Privileged documents get returned.  The privilege documents that were listed on the privilege log get returned. The others get sent to defense counsel.</u>

(emphasis added).

As the escrow holder noted in his correspondence to the parties shortly after Magistrate Judge Zarefsky's April 30, 2007, Order, was issued: "In the transcript, Magistrate Judge Zarefsky does seem to announce a simple protocol for the so-called Escrow Documents: documents which appear on [prior] privilege logs are protected and should not be turned over to defendants, and documents not on [previous] privilege logs are not protected and should be produced to defendants."  (Decl. Marc Toberoff, Ex. F).  What was a simple process, however, became complicated by "additional issues/arguments" submitted by Mr. Toberoff after the hearing concerning the scope of Magistrate Judge Zarefsky's April 30, 2007, Order.  Specifically, plaintiffs contended that certain escrow documents were privileged pursuant to a "gentleman's agreement"

the parties had reached at the onset of the litigation concerning post-litigation communications, and that another escrow document (the cover letter attached when the escrow documents were delivered to defendants) was not previously in plaintiffs possession and contained privileged material therein.  Defendants for their part sought to litigate the propriety of the invocation of privilege contained in prior privilege logs themselves (particularly, the invocation of the common interest privilege on a log submitted by third party Don Bulson) and also sought for the escrow holder to examine the descriptions in Mr. Toberoff's declaration to see if they accurately described those escrow documents.  (Decl. Marc Toberoff, Ex. G (defense counsel at September 17, 2007, hearing, informing Court that one of the things defendants sought was for the escrow holder "to take Mr. Toberoff's declaration and to go document number by document number and ensure that the documents that he identified on his declaration really were what he said they were")).

   This Court ordered the escrow holder to produce for <u>in camera</u> inspection the nine documents referenced by plaintiffs' newly-asserted contention of being privileged.  This was done and the parties submitted further pleadings with respect to the assertion of privilege concerning those documents.  At the same time, defendants sought to raise the additional considerations with the Court, arguments which the Court informed defense counsel it was not inclined to entertain.  (Decl. Marc Toberoff, Ex. G ("The Court:  Let's not talk about the ones that have been done.  Let's talk about the nine that we have left.  I want to resolve this.  We're going to move on here, counsel.  What are we going to do about these nine documents")).

   On September 26, 2008, the Court issued an Order resolving what had initially been brought to the Court's attention back in September, 2007, that is, whether the escrow holder was required to turnover to defense counsel the nine documents.  The Court held that plaintiffs' new assertions of privilege were trumped by the fact that Magistrate Judge Zarefsky's Order provided that "any claim of privilege not previously asserted before that Order was deemed 'waived'"; that plaintiffs never appealed that order; and that, as a consequence, "Magistrate Judge Zarefsky's Order is now the law of the case in this matter."  Essentially, the Court's September 26, 2008, Order sought to restore the <u>status quo ante</u> by simply enforcing Magistrate Judge Zarefsky's April, 2007, Order.  Similarly, the Court's Order did not address, nor did it seek to address, the extraneous issues being pressed by defendants, issues going beyond those addressed by Magistrate Judge Zarefsky's Order.

   The Court thereupon ordered the escrow holder to perform the limited task set forth in Magistrate Judge Zarefsky's April, 2007, Order:  Compare the Toberoff declaration to the escrow documents in his possession, and turnover to defendants those for which privilege had not previously been asserted.

   To answer the escrow holder's two-part question, the Court's response is as follows:

      (1)   No.  The escrow documents listed on the privilege log of Mr.
      Bulson are <u>not</u> to be produced, as such production exceeds the scope
      of Magistrate Judge Zarefsky's April 30, 2007, Order, which was
      predicated on the turnover of those escrow documents to which no prior

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10
MINUTE ORDER of December 4, 2008

privilege log had listed them as privileged; Mr. Bulson listed the escrow documents in question in his privilege log well before Magistrate Judge Zarefsky's April 30, 2007, Order.

(2)   No.  The escrow holder is not to compare the description of each document in Toberoff's declaration to the corresponding escrow document to ensure the description's accuracy.  Rather, the task of matching up or review is done only insofar as the escrow holder is charged with carrying out the task, as set forth in Magistrate Judge Zarefsky's April 30, 2007, Order, of locating (using the Bates stamp legend) those documents which appear on Toberoff's May, 2007, declaration as having previously been listed on a privilege log and turning them over to plaintiffs, and turning over the remainder (the aforementioned "nine escrow documents") to defendants.

**IT IS SO ORDERED**.