# EXHIBIT J

1  WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
4  Beverly Hills, California 90212
   Telephone: (310) 858-7888
5  Fax: (310) 550-7191

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone: (212) 813-5900
9  Fax: (212) 813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, New York 10516
12 Telephone: (845) 265-2820
   Fax: (845) 265-2819

13

14 Attorneys for Defendants and Counterclaimant

15          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17 JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No. SA CV 04-8400 SGL (RZx) Case No. SA CV 04-8776 SGL (RZx) |
| 18   Plaintiffs, | Hon. Stephen G. Larson, U.S.D.J. |
|   vs. | |
| 19 WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC | |
| 20 COMICS; and DOES 1-10, Defendants. | **NOTICE OF MOTION AND JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL** |
| 21 JOANNE SIEGEL and LAURA SIEGEL LARSON, | **PRODUCTION OF WITHHELD DOCUMENT** |
| 22   Plaintiffs, | **DISCOVERY MATTER** |
| 23   vs. | **LOCAL RULE 37** |
| 24 TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER | Time: 10:00 a.m. |
| 25 BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION | Date: January 26 2009 Place: Courtroom 1 |
| 26 PRODUCTION INC.; DC COMICS; and DOES 1-10, | Discovery Cutoff: November 17, 2006 |
| 27 Defendants. AND RELATED COUNTERCLAIMS | |

28

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT on January 26. 2009 or as soon thereafter as

3   the matter may be heard in the above-entitled action before the Honorable Stephen

4   G. Larson, United States District Judge, United States District Court for the Central

5   District of California, Eastern Division, 3470 Twelfth Street, Riverside, California,

6   Courtroom 1, defendant and counterclaimant DC Comics, and defendants Warner

7   Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., and

8   Warner Bros. Television Production Inc. (collectively "Defendants"), will and

9   hereby do move the Court to rule on this jointly filed stipulation pursuant to L.R.

10  37-2.

11       This motion is made pursuant to Rules 26 and 37 of the Federal Rules of Civil

12  Procedure and L.R. 37. Defendants contend that a certain withheld document that

13  should have been produced in response to discovery requests served in 2005 is

14  likely to lead to the discovery of admissible evidence, and good cause therefore

15  exists for it. Defendants have met and conferred with Plaintiffs Joanne Siegel and

16  Laura Siegel Larson ("Plaintiffs" or the "Siegels") in writing on June 24, 2008 and

17  July 3, 2008 and by conference with counsel on November 21, 2008, in accordance

18  with Local Rule 37-1 of the Local Rules of the United States District Court for the

19  Central District of California ("L.R."), and the parties were unable to resolve their

20  discovery dispute regarding Plaintiffs' obligation to turn over the withheld

21  document in question which Defendants believe is directly responsive to their

22  outstanding discovery requests served three years ago in this case.

23       This motion is based on this notice of motion; the Joint Stipulation Re:

24  Defendants' Motion to Compel Production of Withheld Document; the declarations

25  submitted by the parties; any supplemental memoranda that may be filed in

26  connection with the Joint Stipulation; the pleadings and papers on file in this action;

27

28

{P0379305.1 }                                    1                                         **124**

1  and on such oral argument and other matters as the Court may properly consider at

2  the time of the hearing of this motion.

3  DATED:  December 30, 2008    WEISSMANN WOLFF BERGMAN
        COLEMAN GRODIN & EVALL LLP

4
        -and-

5
        FROSS ZELNICK LEHRMAN & ZISSU, P.C.

6
        -and-

7
        PERKINS LAW OFFICE, P.C.

8

9  By: _____

10         Michael Bergman

11         Attorneys for Defendants and Counterclaimant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................

I.     DEFENDANTS' AUTHORITIES .............................................................

II.    PLAINTIFFS' AUTHORITIES ...........................................................ii

JOINT STIPULATION ................................................................................

I.     DEFENDANTS' INTRODUCTORY STATEMENT .................................

II.    PLAINTIFFS' INTRODUCTORY STATEMENT .......................................1

III.   DEFENDANTS' CONTENTIONS ............................................................

    A.   Relevant Background .............................................................

    B.   Argument   .............................................................................

         1.   Since Plaintiffs Have Threatened To "Hold Defendants Liable" If They Disclose Information About the Withheld Document, Plaintiffs Should Be Compelled to Submit The Withheld Document To The Court For In Camera Review In Deciding This Motion.........................................................

         2.   The Court Should Compel Plaintiffs to Produce the Withheld Document.......................................................

         3.   Plaintiffs Cannot Shield Documents from Discovery by Manipulating the Mediation Process.............................................

IV.   PLAINTIFFS' CONTENTIONS...................................................6

    A.   Relevant Background ...........................................................6

    B.   Argument.............................................................................9

         1.   The Privileged Document Is Clearly Protected by the Attorney-Client Privilege, the Attorney Work-Product Doctrine and the Joint Interest Privilege ..................9

            a.   Attorney-Client Privilege and Attorney Work-Product Doctrine .......................................10

            b.   Joint -Interest Privilege......................................11

         2.   The Privileged Document Is Additionally Protected by the Express Terms of the Parties' Detailed Confidentiality Agreement  .........................................................13

3.  Defendants' Conduct in Bringing This Motion Warrants
    Sanctions .......................................................................................15
V.  DEFENDANTS' CONCLUSION .........................................................
VI. PLAINTIFFS' CONCLUSION ......................................................17

## TABLE OF AUTHORITIES

### I.  Defendants' Authorities

**Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................

Fed. R. Civ. P. 26(e)(1)....................................................................

Fed. R. Evid. § 408 ..........................................................................

**Treatise**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence ...........

### II.  Plaintiff's Authorities

**Cases**

*Clarke v. American Commerce Nat'l Bank,*
974 F.2d 127 (9th Cir. 1992) ...............................................................10

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985) ................................................................12

*Hickman v. Taylor,*
329 U.S. 495 (1947).............................................................................11

*Hyundee v. United States,*
355 F.2d 183 (9th Cir. 1965) ...............................................................11

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129,*
902 F.2d 244 (4th Cir. 1990) ...............................................................13

*In re Regents of Univ. of Cal.*,
101 F.3d 1386 (Fed. Cir. 1996) ........................................................ 12
*Loustalet v. Refco, Inc.*,
154 F.R.D. 243 (C.D. Cal. 1993) ........................................................ 12
*Reygo Pac. Corp. v. Johnston Pump Co.*,
680 F.2d 647 (9th Cir. 1982) ........................................................ 16
*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
795 F.Supp. 329 (C.D. Cal. 1992) ........................................................ 12
*State of Ohio v. Arthur Andersen & Co.*,
570 F.2d 1370 (10th Cir. 1978) ........................................................ 12
*United States ex. rel. Burroughs v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) ........................................................ 11
*U.S. v. Under Seal*,
902 F.2d 244 (4th Cir. 1990) ........................................................ 12
*U.S. v. American Tel. & Tel. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) ........................................................ 12
*U.S. v. Schwimmer*,
892 F.2d 237 (2d. Cir. 1989) ........................................................ 12

**Rules**

Fed.R.Civ.P. 26 ........................................................ 10-11

Fed.R.Civ.P. 37 ........................................................ 16

F.R.E. 501 ........................................................ 10

**Treatises**

Restatement (Third) of the Law Governing Lawyers, § 76(1) ........................................................ 11-12

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL § 11:1960 (2006) ........................................................ 16

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL § 11:825 (2008) ........................................................ 11

1 **JOINT STIPULATION**

2 **I.      DEFENDANTS' INTRODUCTORY STATEMENT**

3        Defendant and counterclaimant DC Comics, and defendants Warner Bros.

4 Entertainment Inc., Time Warner Inc., Warner Communications Inc., and Warner

5 Bros. Television Production Inc. (collectively "Defendants") move to compel

6 Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or "the Siegels") to

7 produce a document (the "Withheld Document") that is responsive to Document

8 Request Nos. 59 and 63 of Defendants' First Set of Document Requests served in

9 2005.  Plaintiffs disclosed the existence of the Withheld Document for the first time

10 in the context of the Court-ordered mediation, and asserted that it was protected

11 from any disclosure under a mediation confidentiality agreement executed by the

12 parties the day prior to the Withheld Document's disclosure.  In an attempt to shield

13 the document from production Plaintiffs have (a) refused to produce a copy of the

14 Withheld Document, asserting that they are excused from doing so because they

15 first disclosed the document's existence in the context of the parties' mediation; and

16 (b) threatened to "hold defendants liable" for the breach of the mediation

17 confidentiality agreement should they disclose to the Court the existence of the

18 Withheld Document in making this motion.  Plaintiffs should not be permitted to

19 manipulate the mediation process to shield documents that they are otherwise

20 obliged to produce.

21 **II.     PLAINTIFFS' INTRODUCTORY STATEMENT**

22        Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") oppose the

23 motion by Defendants DC Comics, Warner Bros. Entertainment Inc., Time Warner

24 Inc., Warner Communications Inc. and Warner Bros. Television Production Inc.

25 ("Defendants") to compel production of a written communication (the "Privileged

26 Document") between Plaintiffs, the executor of the Estate of Joseph Shuster, and

27 their mutual attorney, Marc Toberoff, created shortly before and in anticipation of

28

{F0379305.1 }                                     1                                      **129**

1    the parties' settlement mediation, which commenced on May 8, 2008. The

2    existence of the Privileged Document was disclosed in a May 2, 2008 letter marked

3    "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY" from Mr. Toberoff

4    to Defendants' counsel, Michael Bergman, pursuant to the JAMS Confidentiality

5    Agreement entered into by the parties on or around April 30, 2008 in furtherance of

6    the court-ordered settlement mediation. Plaintiffs oppose Defendants' attempt to

7    seize this document or to place it before this Court, the trier of fact, on the grounds

8    that: (1) the Privileged Document is protected by the attorney-client privilege, the

9    attorney work-product doctrine and the joint interest privilege; (2) Plaintiffs were

10    under no obligation to list this privileged post-litigation communication in a

11    privilege log, pursuant to the parties' standing agreement, admitted to by

12    Defendants; (3) Plaintiffs would not have disclosed the Privileged Document except

13    in the context of the parties' settlement mediation and Defendants' execution of the

14    Confidentiality Agreement; (4) the Privileged Document is also squarely protected

15    by the Confidentiality Agreement from being used in any fashion by Defendants in

16    this litigation; and (5) the privileged communication regarding settlement has

17    absolutely no relevance to the remaining accounting claims in this action.

18        Defendants, by their motion and gamesmanship, have willfully breached the

19    Confidentiality Agreement, violated the spirit and objectives of the confidential

20    settlement mediation process, and chilled candid settlement discussions.

21    Defendants' distasteful abuse of the confidential settlement process should not be

22    tolerated by this Court. Defendants' improper motion should be denied in its

23    entirety and they should be sanctioned for their conduct.

24    **III.    DEFENDANTS' CONTENTIONS**

25       **A.    Relevant Background**

26        On June 21, 2005 Defendants served their First Set of Document Requests on

27    Plaintiffs. *See* Declaration of Michael Bergman dated November 18, 2008,

28

1 submitted herewith ("Bergman Decl."), ¶ 2.  Responses and objections were served

2 by Plaintiffs on July 21, 2005.

3 These requests included *inter alia*,

4 Request No. 59: All Writings concerning any disposition

5 of rights relating to Superman, including but not limited to
any solicitation, offer, option, agreement or license.

6 *Plaintiffs objected to Request No. 59 as follows*:

7

8 Plaintiffs further object to this request on the grounds that
it is vague, ambiguous, overbroad, burdensome and

9 oppressive.  Plaintiffs further object to this request on the
grounds that it is duplicative of the above requests.

10 Subject to and without waiving the foregoing objections,
Plaintiffs will produce all non privileged documents they

11 are able to determine are responsive to this request.

12

13 Document Request No. 63:

14 All Writings concerning the Shuster Representatives,
including but not limited to any communication or

15 agreements between Plaintiffs and any of the Shuster
Representatives.

16

17 *Plaintiffs objected to Request No. 63 as follows:*

18 Plaintiffs further object to this request on the grounds that
it is vague, ambiguous, overbroad, burdensome and

19 oppressive.  Subject to and without waiving the foregoing
objections, Plaintiffs will produce all non-privileged

20 documents concerning any communication or agreement

21 between Plaintiffs and any of the Shuster Representatives

22 relating to "Superman" or "Superboy" that they determine
are responsive to this request.

23

24 *Id.* ¶ 2, Ex. A.

25 On May 2, 2008, counsel for Plaintiffs disclosed the existence of the

26 Withheld Document in a letter to counsel for Defendants *one day* after the parties

27 had entered into a JAMS Confidentiality Agreement as part of the mediation

28 process.  *Id.*  ¶¶ 4-5, Ex. B.  The letter disclosed the existence, and characterized the

1  subject matter of the Withheld Document, and classified this disclosure as being

2  made "pursuant to the executed 'JAMS Confidentiality Agreement' and solely in

3  connection with the upcoming mediation sessions." *Id.*

4         By letter dated June 24, 2008, Defendants requested the immediate

5  production of the Withheld Document as being expressly encompassed by requests

6  Nos. 59 and 63. *Id.* ¶ 6, Ex. <u>C</u>. In the letter, Defendants indicated their intent to

7  seek judicial relief if Plaintiffs failed to voluntarily produce the document, and

8  invited a meet and confer. *Id.* In response, Plaintiffs' counsel stated that Plaintiffs

9  refused to produce the Withheld Document and threatened to hold Defendants liable

10 for breach of the mediation confidentiality agreement and move to enjoin

11 Defendants in the event that they disclosed the existence of the document.[1] *Id.* ¶ 7,

12 Ex. <u>D</u>. On November 21, 2008, the parties personally met and conferred. *Id.* ¶ 8.

13 During this conversation, Plaintiffs' counsel reiterated that he was unwilling to

14 produce the Withheld Document.

15        The Court has currently scheduled two trials in this matter. Bergman Decl. ¶

16 10. Defendants believe that the Withheld Document falls squarely within the scope

17 of discovery requests served in this case to which Plaintiffs have expressly agreed to

18 produce "all documents." *Id.*, Ex. <u>B</u>.

19    **B.    Argument**

20        **1.    Since Plaintiffs Have Threatened To Hold Defendants Liable If
              They Disclose Information About the Withheld Document,**
21            **Plaintiffs Should Be Compelled to Submit The Withheld
              Document To The Court For In Camera Review In Deciding**
22            **This Motion**

23

24

25

---

[1] These sorts of threats and attempts at intimidation have become commonplace with
26 counsel for Plaintiffs, who recently made similar threats against David Eisen and his firm
   (Arnold & Porter) if they complied with this Court's September 26, 2008 Order
27 compelling production of the so-called "escrow documents." Bergman Decl. ¶ 9. As a
   result of Plaintiff's counsel's threats, there has been no compliance with the Court's Order.
28 *Id.*

1    In light of Plaintiffs' threats to hold Defendants liable if they disclose any

2    information about the Withheld Document – including the fact of its existence –

3    Defendants are put in the untenable position of having some knowledge of the

4    contents of a document that they believe was improperly concealed, while being

5    threatened with a lawsuit should they disclose any information about the document

6    while seeking the Court's assistance in compelling its production.  Bergman Decl. ¶

7    7-8, Ex. D.  Despite Defendants' belief that the facts concerning the Withheld

8    Document are not protected by the mediation agreement, *see infra* III(B)(3), in an

9    abundance of caution, Defendants have refrained from disclosing herein any details

10   concerning the Withheld Document and instead, respectfully request that the Court

11   order Plaintiffs to submit the document to the Court for in camera review so that

12   Your Honor may verify that it falls squarely within the scope of discovery requests

13   to which Plaintiffs have committed to produce "all documents."

14   **2.    The Court Should Compel Plaintiffs to
         Produce the Withheld Document**

15

16   The Withheld Document is directly responsive to Document Request Nos. 59

17   and 63 to which Plaintiffs committed to make a full response, and therefore should

18   have been produced pursuant to Fed. R. Civ. P. 26(e)(1) (parties have a duty to

19   seasonably supplement discovery responses to the extent they learn of new

20   responsive facts or evidence).  Although Plaintiffs' prior agreement to produce "all

21   documents" responsive to these requests resolves any issues of relevance, it is worth

22   noting that documents responsive to requests nos. 59 and 63 remain relevant to the

23   issues before this Court in the upcoming accounting trial to determine the scope of

24   Plaintiffs' right to share in the profits from their co-owned share in any copyrights

25   they have recaptured.  *See* Fed. R. Civ. P. 26(b)(1) (authorizing parties to obtain

26   discovery regarding any matter, not privileged, which is relevant to the subject

27   matter involved in the pending action, and all information "reasonably calculated to

28   lead to discovery of admissible evidence.")  The very fact that Plaintiffs chose to

**133**

1  characterize the contents of the Withheld Document when it served their interests to

2  do so is further evidence that the Withheld Document contains evidence relevant to

3  this case.

4      In addition to objecting to production of the Withheld Document because it

5  was revealed in the context of the mediation, Plaintiffs' counsel has argued it need

6  not be produced for various other reasons. Defendants believe that there is no basis

7  for Plaintiffs' refusal to produce the document in question. However, because

8  Defendants have not been able to see the document -- and are, in any event

9  constrained by Plaintiffs' counsel's threats -- Defendants cannot address those

10  reasons in this motion.

11  ### 3.   Plaintiffs Cannot Shield Documents from Discovery by Manipulating the Mediation Process

12

13      Plaintiffs were obligated to produce the Withheld Document as it is directly

14  responsive to outstanding document requests. They cannot avoid their obligation to

15  have done so by improperly hiding the document in question under the cloak of the

16  confidential mediation process. *See generally* Fed. R. Evid. § 408. Mediation is not

17  a license to withhold evidence that the parties were and are otherwise obliged to

18  produce. The obligation of the parties to comply with "the liberal rules of discovery

19  embodied in the Federal Rules of Civil Procedure" is paramount and should not be

20  compromised by gamesmanship. *See* 2 Jack B. Weinstein & Margaret A. Berger,

21  Weinstein's Federal Evidence §408.07 (Joseph M. McLaughlin, ed., Matthew

22  Bender 2 ed. 2008) ("a party is not allowed to use Rule 408 as a screen for curtailing

23  an adversary's rights of discovery.") Accordingly, Plaintiffs should not be

24  permitted to use the mediation process to deprive Defendants of discovery to which

25  they are rightfully entitled.

26  ## IV.   PLAINTIFFS' CONTENTIONS

27  ### A.   Relevant Background

28      As has been admitted repeatedly by Defendants, the parties agreed at the

**134**

1   outset of this case that neither side needs to disclose in a privilege log privileged

2   communications created *after* the commencement of this litigation.  *See* Declaration

3   of Marc Toberoff in Support of Joint Stipulation Re: Defendants' Motion to Compel

4   Production ("Toberoff Decl."), Ex. A (September 17, 2007 Joint Stipulation, at

5   13:16-18 , 32–34).

6       In anticipation of the parties' court-ordered mediation, the parties negotiated

7   and entered into a JAMS Confidentiality Agreement on or around April 30, 2008.

8   Toberoff Decl., Ex. B ("Confidentiality Agreement"); Ex. C (Court Order of March

9   31, 2008).  This agreement substantially strengthened the standard provisions of the

10  "JAMS Confidentiality Agreement" in numerous respects, and was specifically

11  negotiated by the parties' counsel to ensure that the parties could speak freely during

12  settlement discussions, without fear that their disclosures would be hyped or

13  directed against them in litigation if a settlement was not reached.  Paragraph 5 of

14  the Confidentiality Agreement provides the following:

> "All parties, counsel and any other persons attending any Settlement Conference shall treat all such discussions as strictly confidential in every respect, including without limitation, the contents or substance of any oral or written statements made at the Settlement Conference, and all other substantive aspects of such Settlement Conference ("Confidential Settlement Information").  Without limitation, any document that is marked 'Confidential – For Settlement Purposes Only' and is disclosed or produced at or in connection with a Settlement Conference shall be treated as Confidential Settlement Information.  Confidential Settlement Information shall not be disclosed to anyone other than the parties, their counsel or the mediator *or used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly*, orally or in writing, except as set forth in paragraph 6 below."

23  Toberoff Decl., Ex. B at 2 (emphasis added).  Paragraph 6 provides that such

24  documentation will not be considered Confidential Settlement Information *only* if it

25  is:

> "(a) publicly available, (b) already in possession of the adverse party or their counsel prior to its disclosure by a party or their counsel at a Settlement Conference, or (c) is developed independently of any Settlement Conference and without reference thereto."

1   *Id.* Paragraph 4 of the Confidentiality Agreement further provides that "[t]he
2   privileged character of any information or documents is not altered by the disclosure
3   to the mediator or the disclosure in any Settlement Conference." *Id.*

4        Paragraph 7 expressly limits disclosures to the Court regarding the parties'
5   settlement communications, connotes the parties' sensitivity to abusing any aspect
6   of their settlement discussions in Court, and even specifies the limited language to
7   be used in the "joint report" to the Court outlining the parties' settlement efforts if
8   the parties did not succeed in settling this case. *Id.*

9        On May 2, 2008, Plaintiffs' counsel disclosed the existence of the Privileged
10  Document and briefly described its general nature in a letter to Defendants' counsel
11  marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY."[1]
12  Declaration of Michael Bergman ("Bergman Decl."), Ex. B.  The first sentence of
13  the letter expressly states:  "This letter is sent pursuant to the 'JAMS Confidentiality
14  Agreement' and solely in connection with the upcoming settlement mediation
15  sessions." *Id.*

16       Defendants never requested any further information regarding this
17  confidential disclosure until after the settlement mediation, when Defendants'
18  counsel suddenly demanded production of the Privileged Document in a June 24,
19  2008 letter to Plaintiffs' counsel.  Bergman Decl., Ex. C.  Defendants' counsel failed
20  to provide any explanation why the Privileged Document would not be protected by
21  privilege and the Confidentiality Agreement.

22

23  [1] Defendants breach the Confidentiality Agreement by pin-pointing discovery requests that
    allegedly encompass the Privileged Document and forcing Plaintiffs, in explaining the
24  error of Defendants' motion, to disclose more information about the contents of the
    Privileged Document.  For purposes of opposing Defendants' motion to compel, Plaintiffs
25  have disclosed to this Court that the Privileged Document consists of a communication
    between Plaintiffs, the Executor of the estate of Superman co-creator Joe Shuster, and
26  Plaintiffs' counsel (who represents both parties) regarding settlement of this action.
    Toberoff Decl. ¶ 9.  However, the document has no significance or relevance to the legal
27  issues remaining for trial – specifically whether the "vertically integrated" transactions
    between DC Comics and Warner Bros. inequitably reduce Plaintiffs' profit share and
28  Defendants' accounting to Plaintiffs for Superman profits.

In a responsive letter dated July 3, 2008, Plaintiffs' counsel asserted that the communication between Plaintiffs, the Shuster Estate and their mutual counsel is clearly privileged and additionally shielded from disclosure or use in this lawsuit by the Confidentiality Agreement. *See* Bergman Decl., Ex. D. Plaintiffs' counsel additionally reminded Defendants' counsel of the parties' agreement that privileged documents created after the commencement of litigation need not be disclosed. *Id.* Plaintiffs' counsel further noted that Defendants' claim that the Privileged Document is "relevant, material and discoverable" is frivolous, as the communication regarding settlement has no bearing whatsoever on the legal or factual issues remaining in this case. *Id.*

Defendants did not respond to Plaintiffs' letter for over four months, nor even attempt to counter Plaintiffs' arguments. *See* Toberoff Decl., ¶ 7. Finally, on November 18, 2008, Defendants' counsel called Plaintiffs' counsel to set up a perfunctory "meet-and-confer," which was held on November 21, 2008, but failed to resolve this matter as Defendants were intent on placing it before the Court via a motion to compel. *See* Toberoff Decl., ¶ 8.

**B.  Argument**

**1.  The Privileged Document Is Clearly Protected by the Attorney-Client Privilege, the Attorney Work-Product Doctrine and the Joint Interest Privilege**

Tellingly, Defendants' motion fails to even mention Plaintiffs' repeated assertion in their July 3, 2008 letter to Defendants, and in the "meet and confer" session preceding Defendants' motion, that the Privileged Document – a communication between Plaintiffs, the Shuster Estate and their mutual counsel, Mr. Toberoff, concerning a pending settlement mediation – is protected by the attorney-client privilege, the joint interest privilege and the attorney work-product doctrine. Defendants studiously shy away from Plaintiffs' assertion of privilege to buttress their disingenuous "straw man" that Plaintiffs seek to shield a discoverable document via disclosure in a settlement mediation.

1  The Privileged Document was made shortly before and for purposes of the

2  settlement mediation.  Pursuant to the parties' longstanding discovery agreement,

3  acknowledged by Defendants, Plaintiffs had absolutely no obligation to disclose this

4  privileged post-litigation communication on a privilege log, or otherwise, as it was

5  created after the commencement of this litigation.  Toberoff Decl., Ex. A at 13:16-

6  18.  Thus, Plaintiffs did not waive the privilege by not previously disclosing the

7  document on a privilege log or in a supplemental production.  In any event,

8  disclosure of the Privileged Document in a privilege log (in the basic form approved

9  in Magistrate Zarefsky's Order dated August 18, 2006) would reveal less

10  information regarding the Privileged Document (i.e., parties, date, *general* subject,

11  privilege) than that already disclosed to Defendants.

12  Finally, under paragraph 4 of the parties' Confidentiality Agreement, the

13  privileged character of any information or documents is not waived by its disclosure

14  in any Settlement Conference.  *See* Toberoff Decl., Ex. B.

15  a.  Attorney-Client Privilege and Attorney Work-Product
        Doctrine

16
17  The attorney-client privilege protects confidential attorney-client

18  communications from disclosure.  *See* F.R.E. 501 (applying common law of

19  privilege to federal court proceedings); *Clarke v. American Commerce Nat'l Bank*,

20  974 F.2d 127, 129 (9th Cir. 1992).  The privilege encompasses documents that

21  reveal, involves or implicates legal advice, the litigation strategy or motives of a

22  party. *Id.* at 129.

23  The Privileged Document is clearly protected by the attorney-client privilege.

24  The document is a confidential communication between the Siegels, the Shusters

25  and their mutual counsel regarding settlement of the present litigation.

26  Likewise, the attorney work-product doctrine protects documents that are

27  prepared for or in anticipation of litigation.  *See* F.R.C.P. 26(b)(3).  The doctrine

28  shields materials that "reveal an attorney's strategy [or] evaluation of strengths and

1  weaknesses." Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.

2  PROC. BEFORE TRIAL § 11:825 (2008), *citing Hickman v. Taylor*, 329 U.S. 495, 511

3  (1947). The doctrine extends both to materials prepared by the party itself and to

4  materials prepared by the party's attorney. F.R.C.P. 26(b)(3)(A).

5      As the Privileged Document reflects Mr. Toberoff's and his clients'

6  settlement strategy, it is also clearly shielded by the attorney work-product doctrine.

7  Mr. Toberoff drafted the communication for and in anticipation of the parties'

8  Court-ordered settlement mediation, just days before the mediation, after detailed

9  communication between Mr. Toberoff and his clients, the Plaintiffs and the Shuster

10 Estate. Toberoff Decl., ¶ 9. The Privileged Document naturally entails both legal

11 strategy and counsel's evaluation of the relative strengths and weaknesses of this

12 case. This is precisely the sort of privileged communication and work-product that

13 is to be protected by the attorney work-product doctrine.

14                 b.    Joint-Interest Privilege

15     Persons who share a common interest in litigation or anticipated litigation

16 may communicate confidentially with their attorney(s), and with each other,

17 regarding the litigation, and their communications will remain protected against

18 third parties. *See Hyundee v. United States*, 355 F.2d 183, 184–85 (9th Cir. 1965)

19 (applying the common interest doctrine to statements concerning a matter of

20 common concern, even though co-defendants generally had a significant conflict of

21 interest); *United States ex. rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685

22 (S.D. Cal. 1996) ("[W]hether the jointly interested persons are defendants or

23 plaintiffs, and whether the litigation or potential litigation is civil or criminal, the

24 rationale for the privilege is clear: Persons who share a common interest in litigation

25 should be able to communicate confidentially with their respective attorneys, and

26 with each other, to more effectively prosecute or defend their claims.").

27     The bedrock principle embodied in the joint interest privilege has been widely

28 accepted. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers, § 76(1)

1  (two persons with separate attorneys and a common interest in a litigated or non-

2  litigated matter can exchange information about the matter themselves or through

3  their attorneys, and the communications will remain privileged against third parties);

4  *U.S. v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990)(collecting cases) ("[T]he

5  rationale for the joint defense rule remains unchanged: persons who share a common

6  interest in litigation should be able to communicate with their respective attorneys

7  and with each other..."); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d Cir.

8  1985) (recognizing that "communications to an attorney to establish a common

9  defense strategy are privileged even though the attorney represents another client

10  with some adverse interests"); *U.S. v. American Tel. & Tel. Co.,* 642 F.2d 1285,

11  1299 (D.C. Cir. 1980) (Common interest exception applies to attorney work product

12  doctrine); *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989);  *In re Regents of*

13  *Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).

14       Here, the joint interest privilege clearly shields the Privileged Document from

15  production.  It constitutes and reflects communications by the Plaintiffs and the

16  Shuster Estate with their mutual counsel, as both share a common interest in the

17  litigation with Defendants over Plaintiffs' recaptured *Superman* copyrights and the

18  Shuster Estate's prospective interest in such copyrights.  That the Shuster Estate is

19  not a party to this litigation does not alter the privileged status of the

20  communication, as the joint interest privilege is not limited to co-parties to a

21  litigation.  *See Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993)

22  (recognizing that the common interest doctrine is not limited to co-operating co-

23  parties); *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F.Supp. 329, 331

24  (C.D. Cal. 1992) ("Whether an action is ongoing or completed, whether the jointly

25  interested persons are defendants or plaintiffs, and whether the litigation or potential

26  litigation is civil or criminal, the rationale for the joint defense rule remains

27  unchanged: persons who share a common interest in litigation should be able to

28  communicate with their respective attorneys and with each other to more effectively

**140**

1   prosecute or defend their claims.") (quoting *In re Grand Jury Subpoenas, 89-3 and*

2   *89-4, John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990)).

3       So that Defendants could have a better understanding of Plaintiffs' settlement

4   objectives, Plaintiffs divulged the existence and basic nature of this privileged

5   communication to Defendants in connection with the parties' settlement mediation,

6   without waiver of the communication's privileged status and with the expectation

7   that its confidentiality would be strictly respected pursuant to the parties'

8   Confidentiality Agreement.

9         **2.**    **The Privileged Document Is Additionally Protected by the**

            **Express Terms of the Parties' Detailed Confidentiality**

10              **Agreement**

11      As the Privileged Document was made after the commencement of this

12  litigation (for purposes of and shortly before the settlement mediation), the

13  Privileged Document need never have been disclosed by Plaintiffs pursuant to the

14  parties' standing discovery agreement.  Toberoff Decl., Ex. A.  However, Plaintiffs

15  disclosed the existence of the Privileged Document in furtherance of the settlement

16  mediation and in good faith reliance on the parties' Confidentiality Agreement,

17  wherein Defendants had agreed to the strict confidentiality of all disclosures made in

18  connection with the court-ordered settlement mediation.  *See* Bergman Decl., Ex. B;

19  Toberoff Decl., Ex. B at 2.  Thus, the nature and existence of the document became

20  "Confidential Settlement Information" pursuant to the terms of paragraph 5 of the

21  Confidentiality Agreement.  *Id.*  Accordingly, it "shall not be disclosed to anyone

22  other than the parties, their counsel or the mediator or used in any way, shape or

23  form for any purpose, including impeachment, in any pending or future proceeding

24  in any court, in whole or in part, directly or indirectly, orally or in writing."  *Id.*

25      The Privileged Document is dated April 30, 2008, just 8 days before the

26  scheduled Court-ordered settlement mediation on May 8, 2008, and, as discussed

27  with Defendants, the communication was made in anticipation and in furtherance of

28  the settlement mediation.  Toberoff Decl., ¶ 9.  But for the parties' Confidentiality

{F0379305.1}13

141

1   Agreement, Plaintiffs would not have disclosed (nor would they have been obligated
2   to disclose) this privileged communication.

3        Plaintiffs could not have made it clearer to Defendants that they were
4   disclosing the existence and nature of this privileged communication solely for
5   purposes of the parties' settlement negotiations and in reliance on the parties'
6   Confidentiality Agreement. Paragraph 5 of the Confidentiality Agreement states:
7   "Without limitation, any document that is marked 'Confidential – For Settlement
8   Purposes Only' and is disclosed or produced at or in connection with a Settlement
9   Conference shall be treated as Confidential Settlement Information." Toberoff
10  Decl., Ex. B. At the top of Plaintiffs' May 2, 2008 disclosure appears the phrase, in
11  bold and underlined: "**CONFIDENTIAL – FOR SETTLEMENT PURPOSES**
12  **ONLY**." Bergman Decl., Ex. B. Moreover, the letter starts by stating: "This letter
13  is sent pursuant to the 'JAMS Confidentiality Agreement' and solely in connection
14  with the upcoming settlement mediation sessions." *Id*.

15       For reasons Plaintiffs cannot quite fathom, Defendants now attempt to garner
16  some advantage, foment some sort of bias, or simply "muddy the waters" by
17  requesting *in camera* review and thereby place Plaintiffs' Privileged Document
18  before the Court. This appears to be an objective of Defendants' motion and
19  gamesmanship in and of itself. Defendants thinly argue that such a review is
20  necessary for the Court to decide whether the Privileged Document falls within the
21  scope of their discovery requests. Firstly, Defendants have provided no reason why
22  the subject communication between Plaintiffs, the Shuster Estate and their counsel
23  concerning settlement is not privileged, and no justification whatsoever for such *in*
24  *camera* review. Secondly, even if Defendants' motion were not so frivolous, it is
25  inappropriate for them to demand such an *in camera* review now that the Court has
26  ruled that it will serve as the ultimate trier of fact in this case. Respectfully, in the
27  unlikely event the Court feels that an *in camera* review is justified and necessary,
28  such should properly be referred to a discovery magistrate.

Not only have Defendants failed to counter or even address the privileged status of the attorney-client communication in question, they also have not and cannot explain why the existence of the Privileged Document is not additionally shielded by the parties' Confidentiality Agreement. Defendants do not even attempt to identify which of the three exceptions expressly set forth in ¶6 of the JAMS agreement might apply to this situation, as clearly none do. Toberoff Decl., Ex. B at 2. The Privileged Document or even its existence is not "(a) publicly available knowledge;" nor was it "(b) already in the possession of the [Defendants]... prior to its disclosure at a Settlement Conference;" nor was it "(c) [] developed independently of any Settlement Conference and without reference thereto." *Id.*

By express agreement of the parties, the Privileged Document, and even its existence and subject matter, constitutes Confidential Settlement Information, which is confidential to all except the parties and the mediator. Indeed, the whole purpose of the Confidentiality Agreement was to enable the parties to comfortably make disclosures in the course of mediation that they would not otherwise make, including privileged or confidential information that, when disclosed, might further settlement. Plaintiffs relied on the Confidentiality Agreement and the sanctity of the settlement negotiations when they made their disclosure.

Production of the Privileged Document – even for an *in camera* review – would obviously subvert the Confidentiality Agreement and reward Defendants' shameless gamesmanship and manipulation of the settlement process.

### 3. Defendants' Conduct in Bringing This Motion Warrants Sanctions

As discussed above, Defendants, in bringing this unjustified motion, have willfully breached the parties' JAMS Confidentiality Agreement and abused the spirit and objectives of the Court-ordered settlement mediation process. Defendants' motion improperly keeps from the Court and entirely fails to address Plaintiffs' repeated assertion that the subject communication between Plaintiffs, the

1    Estate of Joseph Shuster and their mutual counsel regarding settlement is obviously

2    privileged.  Sanctioning Defendants for such a frivolous motion is appropriate.  *See*

3    F.R.C.P. 37(b); *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th

4    Cir. 1982) (absent "substantial justification" for a party's positions, sanctions are

5    appropriate).

6         The Federal Rules of Civil Procedure provide that the party who prevails on a

7    motion to compel is entitled to its expenses, including reasonable attorneys' fees,

8    unless the losing party was substantially justified in making or opposing the motion

9    (or other circumstances make such an award unjust).  *See* F.R.C.P. 37(a)(5);

10   Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE

11   TRIAL (2006) § 11:1960 ("If a motion to compel responses is filed, the court usually

12   awards expenses, including attorney fees, against the losing party…"); *State of Ohio*

13   *v. Arthur Andersen & Co.,* 570 F.2d 1370, 1375 (10th Cir. 1978) (imposing

14   sanctions of "reasonable expenses to secure an order compelling production").  This

15   Court has also given fair warning that any further discovery abuse will be subject to

16   sanctions.  *See* Toberoff Decl., Ex. D, at p. 7.

17        Moreover, Defendants' bringing of this wasteful motion, after more than four

18   months of silence on the subject, in the midst of active preparations for the January

19   20, 2009 trial (and timed so as to require Defendants to submit an opposition on the

20   very same day as the parties' L.R. 16 meeting of counsel) is obviously intended to

21   disrupt Plaintiffs' preparations during the crucial pre-trial period and to force

22   Plaintiffs to expend considerable time, fees and costs in opposing Defendants'

23   frivolous motion.  Finally, Defendants' crude attempt to obtain privileged

24   information, the very existence of which was explicitly disclosed for settlement

25   purposes only, will have an obvious chilling effect on any future disclosures during

26   settlement discussions and thus, on any prospects of settlement themselves.

27        Defendants blithely continue to bring such frivolous motions in this case  and

28   to flout the rules without any hesitation or fear of sanctions.  Plaintiffs have not been

1   recompensed for one penny of what amounts to thousands of dollars in unnecessary

2   legal expense due to Defendants' gamesmanship. Plaintiffs therefore respectfully

3   request the Court to enter an order granting sanctions in the amount of $5,350.

4   Toberoff Decl., ¶ 10.

5   **V.     DEFENDANTS' CONCLUSION**

6         For the reasons set forth herein, Defendants respectfully request that their

7   motion to compel Plaintiffs to produce the Withheld Document be granted.

8   **VI.    PLAINTIFFS' CONCLUSION**

9         For the foregoing reasons, Plaintiffs respectfully request that Defendants'

10  motion be denied in its entirety and that the Court grant Plaintiffs sanctions in the

11  amount of $5,350.

12
Respectfully submitted,
13  DATED: December 11, 2008      WEISSMANN WOLFF BERGMAN
14                                   COLEMAN GRODIN & EVALL LLP

15                                        -and-

16                               FROSS ZELNICK LEHRMAN & ZISSU, P.C.

17                                        -and-

18                               PERKINS LAW OFFICE, P.C.

19

20                               By: _____
                                     Michael Bergman
21

22  DATED: December 11, 2008      Attorneys for Defendants and Counterclaimant

                                 TOBEROFF & ASSOCIATES, P.C.
23

24                               By: _____
                                     Marc Toberoff
25

26                               Attorneys for Plaintiffs/Counterclaim-Defendants

27

28

# EXHIBIT K

1510

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                        ---

4      **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                        ---

6  JOANNE SIEGEL, etc.,          :  PAGES 1510 - 1600
                                 :
7           PLAINTIFF,           :
                                 :
8      VS.                       :  NO. CV 0408400-SGL(RZx)
                                 :
9  WARNER BROTHERS               :
   ENTERTAINMENT, INC., etc.,    :
10                               :
           DEFENDANT.            :
11 _____:

12

13

14         REPORTER'S TRANSCRIPT OF PROCEEDINGS

15            COURT TRIAL - DAY 11

16            RIVERSIDE, CALIFORNIA

17           TUESDAY, MAY 19, 2009

18             AFTERNOON SESSION

19

20

21

22              MARK SCHWEITZER, CSR, RPR, CRR
                OFFICIAL COURT REPORTER
23              UNITED STATES DISTRICT COURT
                181-H ROYBAL FEDERAL BUILDING
24              255 EAST TEMPLE STREET
                LOS ANGELES, CALIFORNIA 90012
25              (213) 663-3494

147

1511

```
 1   Appearances of Counsel:

 2

 3   For the Plaintiff:

 4        TOBEROFF AND ASSOCIATES
          By Marc Toberoff, Esq.
 5            Nicholas Williamson, Esq.
              Keith Adams, Esq.
 6        2049 Century Park East
          Suite 2720
 7        Los Angeles, CA 90067
          (310) 246-3333
 8

 9

10   For the Defendant:

11        BERGMAN COLEMAN GRODIN & EVALL, LLP
          By Michael Bergman, Esq.
12            Anjani Mandavia, Esq.
          9665 Wilshire Boulevard
13        Ninth Floor
          Beverly Hills, CA 90212
14        (310) 860-3346

15            -and-

16        LAW OFFICES OF PATRICK T. PERKINS
          By Patrick T. Perkins, Esq.
17        1711 Route 90
          Cold Spring, NY 10516
18        (845) 265-2820

19

20

21

22

23

24

25
```

1               **I N D E X**

2

3    CLOSING ARGUMENT BY COUNSEL FOR THE

4    PLAINTIFFS (CONTINUED)................................1513

5    CLOSING ARGUMENT BY COUNSEL FOR THE DEFENSE........... 1535

6    REBUTTAL ARGUMENT BY COUNSEL FOR THE PLAINTIFFS....... 1581

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Superman Returns was released, what Mr. Halloran refers to as

2    a typical three- to five-year window to make and release a

3    second film also hasn't expired yet.

4             So the earliest the Superman film rights would

5    revert to DC under what Mr. Halloran describes as a typical

6    time frame is this coming summer, the summer of 2009.

7             But DC can't do anything with those Superman rights

8    if it got them back this summer, and the reason why it can't

9    do anything is that that leaves a period of less than four

10   years until the rights evaporate.  There's no studio that is

11   going to buy the rights to Superman with four years left.

12   Because as Mr. Halloran testified, the whole idea in buying

13   these kinds of properties is that you have a franchise, one

14   picture after another.  That can't happen anymore.  There is

15   just no time left for that.

16            And that's the cold reality.  And there's one more

17   point about reversion, your Honor.  I tried to make this when

18   Mr. Halloran was on the stand.  I don't know if it came out

19   clearly.  It didn't appear to me that it came out

20   convincingly.  And that is that Mr. Halloran testified that

21   the reason reversion provisions are important is because a

22   rights holder wants to make sure that there's a continuing

23   exploitation of the rights and that they are not being tied up

24   with a studio just sitting on them doing nothing.

25            But that concern has no application here.  Even if

1    we're looking at the full 34-year term through 2033.  Nothing

2    in the Superman film agreement constitutes an impediment to

3    the exercise of the plaintiffs' recaptured rights in Action

4    Comics No. 1 whenever and wherever and however they deem fit.

5         Since your Honor has ruled that termination

6    effective, DC's license of any interest in Action Comics No. 1

7    is necessarily nonexclusive, and plaintiffs, as a matter of

8    law, can fully exploit Action Comics No. 1 today, or anytime

9    in the future, and gain whatever financial benefit they can

10   from it subject only to their obligation to account, like DC

11   to its co-owner.

12        DC may not be able to exploit its exclusive rights

13   until the end of that 34-year term.  DC may have locked up its

14   exclusive rights for 34 years.  But that doesn't do any damage

15   to the plaintiffs.  The plaintiffs have no right to share in

16   defendants' exclusive rights.  So whether defendant tied up

17   their rights for three years or 300 years is irrelevant to the

18   plaintiffs' bottom line, to the money they might be entitled

19   to in the accounting phase of this trial.

20        In short, your Honor, the plaintiffs' expressed

21   concerns about the lack of a reversion provision in the

22   Superman film agreement are entirely speculative and

23   unsupported by any evidence in the record, and in any event,

24   they haven't shown to be of any value.  And if they are of

25   value, and one can hypothetically think gee, that's some

1    value, your ability to take your picture back, how much is it?

2    Is your Honor going to determine based on this record what the

3    reversion value is?  I doubt that.  You certainly have no

4    basis on which to draw.

5           And, you know, ironically it was Mr. Halloran's

6    testimony that dealt the death knell to plaintiffs' claim that

7    the film agreement was below market value.  At the conclusion

8    of plaintiffs' direct examination, Mr. Toberoff asked

9    Mr. Halloran what terms he would have been able to obtain for

10   DC had he been its representative in bringing the film rights

11   into the open market.

12          Mr. Halloran responded in detail, listing the

13   elements that he believed he would be able to get or would at

14   least, quote, go for, close quote.  And that was all contained

15   at pages 576 through 579 of the transcript.

16          And he listed the elements of his dream contract ala

17   carte, picking the best purchase, the best option, the best

18   this, the best that.

19          During the direct examination of plaintiffs' expert,

20   Mr. Gumpert, I laid each of those elements out, quoting

21   directly from the official transcript of Mr. Halloran's

22   testimony, and asked Mr. Gumpert in essence to quantify

23   Mr. Halloran's fair market value deal and compare it to the

24   deal DC actually made.

25          And after I did so, your Honor addressed both

# EXHIBIT L

Case 2:10-cv-03633-ODW-RZ    Document 164-3    Filed 02/08/11    Page 33 of 51    Page
ID #:12325



---

**Re: DC v. PPC**                                                  Monday, November 29, 2010 11:33 PM

**From:** "Petrocelli, Daniel" <DPetrocelli@OMM.com>
    **To:** "'mtoberoff@ipwla.com'" <mtoberoff@ipwla.com>
    **Cc:** "Kline, Matthew" <MKline@OMM.com>, "Seto, Cassandra" <cseto@OMM.com>,
      "'nwilliamson@ipwla.com'" <nwilliamson@ipwla.com>, "'kgadams@ipwla.com'"
      <kgadams@ipwla.com>

---

Marc, given your latest request to preserve all your objections, there is no basis for a stipulation. As previously advised, we disagree with your position on the timing of our motion, especially since you have had over a month to prepare your portion of the joint statement. We are filing momentarily for hearing on December 20.

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Cc**: Kline, Matthew; Seto, Cassandra; Nicholas Williamson <nwilliamson@ipwla.com>; Keith Adams <kgadams@ipwla.com>
**Sent**: Mon Nov 29 23:23:34 2010
**Subject**: Re: DC v. PPC

Dan:

We remain willing to enter into the stipulation we sent to you at 9:16 p.m. tonight.

As set forth previously, if you unilaterally file your motion as set forth in your last e-mail, any such motion would need to be on a 28-day calendar under Local Rules 6-1 and 37-2.4, and would need to be set for hearing on December 27, 2010.

As expected, the parties' meet-and-confer of today and adjusted positions in attempting to arrive at a compromise took considerable time away from and now necessitates substantive changes to defendants' portion of the joint stipulation, which we had originally planned on serving today.  If you, as we, would prefer to file your motion to compel as a joint stipulation, we will have our portion of the joint stipulation to you by 5:30 p.m. PST tomorrow, November 30, 2010, and assuming that we have an electronic copy for signature by no later than 8:00 p.m. PST, we will approve and sign it for filing on November 30, 2010.

This does not prejudice DC because, as stated in our earlier e-mail, DC would not, in any event, have been able under Local Rule 37 to file its motion in time for a December 20, 2010 hearing due to the timing of its service.

Please let me know your choice.

Sincerely,

Marc

On Mon, Nov 29, 2010 at 10:33 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
Marc, we disagree. Were the Court to grant our motion to compel, defendants' objections would be overruled and defendants would be ordered to produce all responsive documents. Defendants' objections would not be preserved. The examples recited in your email below are to defendants' positions regarding the merits of the case; they do not constitute objections to production of documents and need not be addressed in any stipulation regarding production of documents. Since it appears we have reached an impasse, we will file tonight for hearing on Dec 20.

**154**

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Sent**: Mon Nov 29 22:12:47 2010

**Subject**: Re: DC v. PPC

Dan:

That is not my understanding.  We are reserving our objections so that a waiver is not claimed, but notwithstanding such objections are agreeing to produce responsive documents and logs. That is quite commonplace.

For instance, one of our objections is that DC is seeking documents regarding its Third, Fourth, Fifth and Sixth Claims which are barred as a matter of law and another is that the Fourth, Fifth and Sixth Claims are subject to a motion to strike under California's Anti-Slapp law. We clearly must reserve all such objections and defenses.

Marc

On Mon, Nov 29, 2010 at 9:57 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
> Marc, that undermines the stipulation and order and is not acceptable. You represented that you would produce
> all responsive documents notwithstanding your objections, save for those documents subject to your privilege
> objections. The parties will proceed to litigate and hence are reserving their positions with respect to the extant
> privilege issue. We cannot agree to your reserving rights with respect to other objections.
>
> Please advise if you will stipulate.
>
> Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Cc**: Seto, Cassandra; Kline, Matthew; kgadams@ipwla.com <kgadams@ipwla.com>; nichwilliamson@gmail.com <nichwilliamson@gmail.com>
**Sent**: Mon Nov 29 21:47:40 2010

**Subject**: Re: DC v. PPC

Dan:

Sorry, I deleted the last paragraph but that change was not "saved" before I attached it to my last e-mail.

As to paragraph 4, DC is obviously reserving all rights as to Defendants' reponses (and logs) to DC's Requests, Defendants must similarly reserve all rights as to DC's Requests, while timely providing DC with all non-Privileged responsive documents and Privilege logs.

I hope you can appreciate that, like you, I want to avoid exposing my clients to any potential "gotcha" arguments in entering into this compromise stipulation.

Marc

On Mon, Nov 29, 2010 at 9:31 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
> Marc, your change to paragraph 4 needs to be confined to the extant privilege issue, so the second sentence
> of paragraph 4 should read as follows:

**155**

"DC reserves all rights after this conference to bring a motion challenging defendants' privilege logs, and DC and defendants reserve all their respective rights and arguments with respect to any such motion."

Also, you inadvertently did not delete the final paragraph.

Let us know if this does it.

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Cc**: Seto, Cassandra; Kline, Matthew; kgadams@ipwla.com <kgadams@ipwla.com>; nichwilliamson@gmail.com <nichwilliamson@gmail.com>
**Sent**: Mon Nov 29 21:16:53 2010

**Subject**: Re: DC v. PPC

Dan:

I deleted the last paragraph as suggested.  However, I added to paragraph 4 to make the reservation of rights mutual instead of unilateral in DC's favor.

Also please be advised that pursuant to the parties understanding in their prior meet and confer Defendants will reference those responsive documents already produced to DC in *Siegel v. Warner Bros. Ent Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) by their Bates numbers, rather than re-copy and re-produce such documents to DC.

If this acceptable we can sign the stipulation and go home to our families.

Marc

On Mon, Nov 29, 2010 at 8:43 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
> Marc, without accepting your characterization of the events, your attached stipulation and order is
> acceptable, subject to one exception. The last paragraph should be deleted or limited to your privilege and
> mediation objections as follows:
>
> "In entering into this stipulation, neither party waives any right or argument regarding defendants'
> withholding and logging of documents based on their assertion of privilege or mediation confidentiality."
>
> Please let us know right away if you will stipulate with this modification.
>
> Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Cc**: Seto, Cassandra; Kline, Matthew; kgadams@ipwla.com <kgadams@ipwla.com>; nichwilliamson@gmail.com <nichwilliamson@gmail.com>
**Sent**: Mon Nov 29 20:14:10 2010

**Subject**: Re: DC v. PPC

Dan:

There unfortunately is no "agreement" yet.  We sent you a proposed stipulation that you rejected, just as you previously rejected our generous offer  a week ago to settle this dispute. On November 22,

**156**

Defendants offered December 3 as a date to produce documents and privilege logs in an effort to compromise *before* DC served its motion.  After rejecting that offer, DC served its motion with a proposed order calling for documents and privilege logs by December 22.

In doing so, DC forced us to work on our opposition to the motion (which is now nearly complete) detracting from our anticipated ability to log documents during this time, including six years of documents in the Siegel litigations. Since DC's rejection of our offer our schedule and commitments in our other matters have changed as well.

Defendants remain willing to enter a stipulation (attached) where Defendants still produce their documents on December 3 and serve their privilege logs on December 15, 2010.  Note that the latter date is still a week earlier than the December 22 date sought in your motion and proposed order.

Please get back to me as soon as possible regarding the proposed stipulation attached.

Thank-you.

On Mon, Nov 29, 2010 at 7:18 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
Marc, we disagree with your position that our motion cannot be timely filed for hearing on December 20. In addition, you advised us earlier today of your agreement to stipulate to a court order to produce all responsive documents save for those covered by your privilege and mediation objections; you also agreed to provide a log identifying the documents being withheld based on those two objections. The stipulation we just sent you sets forth that agreement. If you are not willing to sign it, then we will proceed with the motion.

Please let us know right away.

Thanks.

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel
**Cc**: Seto, Cassandra; Kline, Matthew; Keith Adams <kgadams@ipwla.com>; Nicholas Williamson <nichwilliamson@gmail.com>
**Sent**: Mon Nov 29 18:53:32 2010

**Subject**: Re: DC v. PPC

Dan:

I am not asking you to "defer" your motion.  Pursuant to Local Rule 37-2.2, the earliest plaintiff's joint stipulation can properly be filed is Wednesday, December 1.  Pursuant to Local Rule 37-3, the joint stipulation cannot be heard earlier than twenty days after it is filed, meaning the earliest the motion can be heard is Monday, December 27, 2010.

Coupled with the fact that we have had to prepare our opposition over the Thanksgiving week when I was traveling with my family, you really should give us a brief extension until Wednesday, December 1 to provide our opposition while we try to work out a reasonable stipulation and avoid burdening the court with the motion all together.

Please reconsider and let me know.

Marc

**157**

On Mon, Nov 29, 2010 at 5:58 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:

Marc, we cannot defer our motion. I suggest we submit a stipulation and order requiring the production of the responsive documents this week, save for your asserted privilege and mediation objections. And as those objections, let's work out a briefing schedule to get a prompt resolution.

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Sent**: Mon Nov 29 16:48:40 2010
**Subject**: DC v. PPC

Counsel:

We believe that the parties can avoid this motion and arrive at a stipulation.  However, we are now running short on time due to the requirement that our portion of the joint stipulation be served today, the intervening Thanksgiving holiday and my being unexpectedly delayed today at a Court hearing.

Under the Local Rule 37, as we've consistently pointed out, DC's motion could not, in any event, be filed in time for a December 20, 2010 hearing due to the timing of its service.

If the parties are discussing a stipulation to avoid the motion, it makes no sense for us to be working to finalize our opposition while the parties are working on a stipulation, particularly when that hearing date will not be met.

For all of these reasons, , in the event this matter is not settled by stipulation, we request a short extension, until 5:00 p.m. Wednesday, December 1, 2010, to serve our opposition.

Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

**158**

Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**159**

# EXHIBIT M

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

December 2, 2010

By E-Mail

Cassandra Seto, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Cassandra:

I write regarding DC's noticing of Joanne Siegel's deposition for December 13, 2010. Due to the intervening Thanksgiving holidays we were unable to get back to you earlier. Ms. Siegel is not available on December 13. Ms. Siegel and her counsel are available for a deposition on January 10, 11, 12, or 14, 2011.

Please let us know which of these dates work for your side.

Sincerely,

Marc Toberoff

**161**

# EXHIBIT N

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

December 8, 2010

By E-Mail

Daniel Petrocelli, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Dan:

This responds to your December 2, 2010 letter and recent e-mails regarding Joanne Siegel's deposition.  It is hardly constructive to dwell on DC's initial scheduling of Ms. Siegel's deposition for October 5, when Magistrate Judge Zarefsky stayed all such depositions until November 15, 2010 to enable Judge Wright to first rule on defendants' then pending Anti-SLAPP motion and motions to dismiss.

On November 22, your firm unilaterally noticed Joanne Siegel's deposition on December 13, 2010, without the customary courtesy of first inquiring with a simple e-mail or phone call as to her availability on such date.  The next day, November 23, I traveled out of state with my family for Thanksgiving, returning Sunday, November 28, like many people this time of year.  There was not "extensive correspondence between us" during this time, as you exaggerate in your letter.  Notwithstanding the intervening Thanksgiving holiday, on the morning of November 29, your firm sent us an aggressive letter informing us that "[n]ot having heard back … we will proceed with the deposition on December 13, as noticed."

Joanne Siegel turned 93 last week.  As you might imagine, coordinating Joanne's deposition is not as easy as it is for a much younger person.  For instance, Joanne's daughter, Laura, must also be available because Laura must act as her mother's caregiver during Joanne's deposition (*e.g.*, accompanying Joanne on frequent trips to the restroom; rubbing pain medication on Joanne's back and applying patches to relieve Joanne's severe back pain; if anything goes wrong, Laura knows which doctor to call, what medication Joanne needs, etc.).  Because Laura suffers from MS, fibromyalgia and related disorders, she, like her mother, also has frequent scheduled doctor appointments.  We are sorry, but these are real-world problems that we advised you of in detail when you insisted on re-taking Joanne and Laura's depositions in this case.  We ask that you bear with us in reasonably scheduling Joanne's deposition.  As you requested, I have provided

163

**TOBEROFF & ASSOCIATES, P.C.**

December 8, 2010
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 3

below the details of Joanne's conflicting schedule between December 13, 2010 and the proposed
second week in January 2011, when Joanne can be deposed.

As I have informed you, Joanne and Laura are not available on December 13 or for the
remainder of the week.  Joanne has scheduled doctors' appointments on December 13
(urologist), 15 (dentist), 16 (gynecologist) and 17 (dermatologist); Laura has doctors'
appointments on December 14 (internist for fibromyalgia) and December 17 (pain management).
Joanne also has an appointment with her cardiologist on January 3, 2011.

I am not available on December 20 due to a Court appearance in another matter, and, as I
previously informed you, I will be away for the holidays from December 24 to January 2, 2011.
I also doubt that you are available to take a deposition during the holidays.  Laura's son will be
home from college for the holidays the week of December 20, and that week Joanne, her
grandchildren, and Laura plan to visit relatives near Palm Springs.

Upon my return from vacation, I have depositions in North Carolina and then New York the
week of January 3, which require me to leave Los Angeles on January 3, and I will not return to
Los Angeles until late at night on Friday, January 7, 2010, at the earliest.

All of the above is why we reasonably suggested January 11, 12, 13 or 14 for Joanne's
deposition.  I do not believe your side will be prejudiced if you take Joanne's deposition that
week and, considering the intervening holidays, such dates are not unreasonable.

Your December 7, 2010 e-mail that you are "filing a motion to compel" Joanne's deposition,
without consideration of her availability or meeting and conferring to work out a reasonable date
for her deposition, is improper.

Shortly after noticing Joanne's deposition for December 13, you filed an unnecessary motion to
compel documents and privilege logs on December 22, 2010, even though we had already
informed you we would produce all responsive documents and logs before then.  In that now-
withdrawn motion you stated that "the scheduled depositions [including Joanne's deposition]
cannot be taken … unless the Court grants the relief sought" – *i.e.,* the production of documents
and privilege logs.  Thus, you had no intention of taking Joanne's deposition on December 13.
Similarly, on December 6, 2010, you stipulated with the relevant defendants, including Joanne
Siegel, that they would produce responsive documents and privilege logs by December 15, 2010,
which again shows that you had no intention of taking Joanne's deposition on or around
December 13.

Even more notably, DC has clearly indicated that it will also move to compel the production of
documents protected by the parties' May 1, 2008 JAMS Confidentiality Agreement and the
attorney-client privilege.  DC will not be permitted to ask Ms. Siegel questions regarding such
privileged communications at her deposition.  The parties' December 6, 2010 stipulation

**164**

**TOBEROFF & ASSOCIATES, P.C.**

December 8, 2010
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 3

contemplates and sets a schedule for DC's motion, which could not be set for hearing under the Local Rules until February 7, 2011 at the earliest, unless otherwise stipulated.

As we previously informed you in our December 2, 2009 letter, Joanne is available to be deposed on January 11, 12, 13 or 14.  However, given that we will strenuously oppose any attempt by DC to subject this 93-year-old woman to more than one deposition in this case (in addition to the lengthy deposition DC has already taken of Joanne in the closely related *Siegel* cases), it would make a lot more sense for DC to await the results of its contemplated motion regarding the privileged material in dispute before going forward with Joanne's deposition.

We hope you can appreciate the level of detail provided in this letter and that no one is taking the scheduling of this important matter lightly.

This letter is without prejudice to any of defendants' rights regarding discovery in this matter, including appellate review, all of which are hereby reserved.

Sincerely,

Marc Toberoff

# EXHIBIT O



Priority ☒
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

DOCKETED ON CM
AUG 18 2006
BY _____ 049

FILED
CLERK, U.S. DISTRICT COURT
AUG 18 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA SIEGEL LARSON,

                Plaintiff,

    vs.

WARNER BROS. ENTERTAINMENT INC., et al.,

                Defendants.

CASE NO. CV 04-8400-RSWL (RZx)

ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This matter came before the Court on August 14, 2006 on Defendants' Motion to Compel. Defendants appeared through their attorneys, Michael Bergman and Anjani Mandavia. Plaintiffs appeared through their attorneys Marc Toberoff and Nicholas C. Williamson. The Court heard argument of counsel and took the matter under submission.

        Defendants seek to compel Plaintiffs to produce documents falling within five categories, identified as Requests 52-59. In general, these categories concern writings involving certain settlement negotiations between the parties in 2001 and 2002. Plaintiffs apparently have produced documents responsive to these requests, but the documents currently sought all involve attorney-client communications, and the Defendants assert that those documents should be produced because Plaintiffs have waived the privilege.

58
167

Defendants assert that Plaintiffs have waived the privilege by putting in issue the authority of their prior counsel to negotiate a settlement. The privilege may be impliedly waived where a party to a lawsuit places into issue a matter that is normally privileged, if the gravamen of the lawsuit is so inconsistent with the continued assertion of the privilege as to compel the conclusion that the privilege has in fact been waived. *Wilson v. Superior Court,* 63 Cal. App.3d 825, 134 Cal. Rptr. 130 (1976). Defendants assert the alleged settlement in a counterclaim, responding to Plaintiffs' claim to recapture their copyright. At oral argument, both sides confirmed that Plaintiffs had not *pleaded* any lack of authority when they filed the reply to the counterclaim called for by FED. R. CIV. P. 7(a). Thus, as a matter of pleading, Plaintiffs have not themselves taken steps to bring into issue a matter that is so inconsistent with maintenance of the attorney-client privilege that it requires disclosure of attorney-client communications.

Instead, Defendants argue that Plaintiffs have done so by their response and supplemental response to a request to admit. Defendants requested that Plaintiffs admit that their prior counsel was authorized to send a letter of October 19, 2001, the letter which, at oral argument, Defendants stated constituted the contract of settlement. In response to the request to admit, Plaintiffs asserted various objections, including (by apparent incorporation of introductory objections) the objection of attorney-client privilege, and then denied the request subject to those objections. In a supplemental response, Plaintiffs qualified their denial further.

From these responses, Defendants assert that Plaintiffs have denied that their prior counsel had authority to negotiate a settlement, and therefore have placed the matter in issue and necessarily have waived the privilege with respect to that issue. This argument makes the request to admit do too much work. To begin with, the response was not an unqualified denial; it was a denial accompanied by objections. Whatever the meaning of "subject to" in this context, and whatever the validity of incorporating general objections into specific responses — neither matter of which Defendants address — it is hard to read the response as a denial without limitation. And assuming that the objections

2

*are* properly stated, Defendants never moved to determine the sufficiency of the objections. *See* FED. R. CIV. P. 36(a).

More importantly, however, Defendants misconstrue the office of a request to admit. A request to admit is not a discovery device in the customary sense of "discovery." 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE §2253 at 524 (1994) Rather, it is a method of short-circuiting proof for trial. Those matters which are admitted do not have to be proved otherwise. Those which are denied require proof. FED. R. CIV. P. 36(b). And if a party denies a matter he should have admitted, the remedy is to require him, upon appropriate motion, to reimburse the party who propounded the request for the expenses incurred in proving up the matter at trial. FED. R. CIV. P. 37(c); *see, e.g., Marchand v. Mercy Medical Center*, 22 F.3d 933 (9th Cir. 1994). In short, responding to a request to admit by denying the request is not the same as affirmatively placing the matter in issue, and certainly not the same as the situation where the gravamen of the action necessarily is inconsistent with maintaining the privilege.

Defendants also assert that Plaintiffs waived the privilege explicitly, by sending a copy of a letter, dated September 21, 2002, to a Vice President of DC Comics. That letter, signed by both Plaintiffs, and addressed to their then counsel, states:

> As we previously discussed with you and hereby affirm, we rejected DC Comics' offer for the Siegel Family interest in Superman and other characters sent to us by you on February 4, 2002. We similarly reject your redraft of the February 4, 2002 document which you sent to us on July 15, 2002. Therefore due to irreconcilable differences, after four years of painful and unsatisfying negotiations, this letter serves as formal notification that we are totally stopping and ending all negotiations with DC Comics, Inc., its parent company AOL

Time Warner and all of its representatives and associates, effective immediately.

This letter is also notification that, effective immediately, we are terminating Gang, Tyre, Ramer & Brown, Inc., and all of your firm's partners, associates and employees as representatives of the Siegel Family interest regarding Superman, Superboy, the Spectre and all related characters and entities. We instruct you to take no further actions on our behalf.

Please return all materials regarding the above including but not limited to files, correspondence, notes and documents to us forthwith. These should be sent to Joanne Siegel at the above address.

It is a shame that four years were wasted due to DC Comics and AOL Time Warner's greed. We have no intention of publically disparaging DC or any individual in the parent company. However, should DC or its parent company, officers, attorneys, representatives or spokespersons disparage us or our rights, we will vigorously respond in kind.

Weinberger Declaration, Ex. B. Disclosure of materials previously held in confidence can waive the attorney-client privilege. Here there is no doubt that the privilege, if any exists, has been waived as to this letter. The Court does not agree that it has been waived any more broadly than that.

The first paragraph of this letter appears to refer to irreconcilable differences between Plaintiffs and Defendants, not irreconcilable differences between Plaintiffs and their counsel. The entire subject of the paragraph is the settlement negotiations, and how DC Comics' proposal is not acceptable and the underlying negotiations have not been

4

1 | fruitful. While it is possible to read the reference to "irreconcilable differences" as a

2 | reference instead to differences with Plaintiffs' counsel, that reading is not the one

3 | supported by the context in which the statement is made.

4 | More importantly, the letter does not open the door to an exploration of the

5 | reasons that Plaintiffs discharged their counsel, or just what the irreconcilable differences

6 | may have been, or what conversations they had with their counsel about settlement. These

7 | topics are all mentioned in the briefest of terms, as slight incidents to the overall message

8 | of the letter, which is Plaintiffs' disagreement with Defendants and Plaintiffs' decision to

9 | end negotiations. Plaintiffs have not revealed a significant portion of the communications,

10 | and that is what is required to create a waiver based on sending the communication to

11 | someone other than counsel. *See Mitchell v. Superior Court,* 37 Cal.3d 591, 602, 208 Cal.

12 | Rptr. 886, 691 P.2d 642 (1984); *Travelers Ins. Companies v. Superior Court,* 143 Cal. App.

13 | 3d 436, 444, 191 Cal. Rptr. 871 (1983); *People v. Hayes,* 21 Cal.4th 1211, 1266 (2000).

14 | Accordingly, the Court finds that Plaintiffs have not waived the privilege, other than with

15 | respect to the letter itself.

16 | Finally, Defendants assert that the privilege log prepared by Plaintiffs is

17 | insufficient. At oral argument, Plaintiffs agreed to review the log, and verify that they had

18 | listed all recipients for any memoranda or letters referenced in the log. They also agreed

19 | to provide, not later than September 30, 2006, a supplement to the log, covering other

20 | periods of time. The only remaining issue is whether the descriptions in the log are

21 | sufficient. The Court notes that the log appears to follow the form suggested in a

22 | commonly-used treatise, W. SCHWARZER, W. TASHIMA AND J. WAGSTAFFE, FEDERAL

23 | CIVIL PROCEDURE BEFORE TRIAL, Form 11:A (Rutter 2006). Moreover, the log appears

24 | to have the same information which the Court found sufficient in *Dole v. Milonas,* 889

25 | F.2d 885 (9th Cir. 1989); *see in re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.

26 | 1992 ). Accordingly, this Court too finds that by providing this log, the Plaintiffs have

27 | sufficiently asserted the attorney-client privilege and the work product doctrine.

28 | ///

5

1    In accordance with the foregoing, with the exception of the September 21,

2  2002 letter, Defendants' Motion to Compel is denied.

3

4    IT IS SO ORDERED.

5

6    DATED: August 18, 2006

7

8

9    _____
     RALPH ZAREFSKY
10   UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28