1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:   (310) 553-6700
6   Facsimile:    (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:   (845) 265-2820
10  Facsimile:    (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                   UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

16              Plaintiff,              **DISCOVERY MATTER**

17       v.                            **REPLY IN SUPPORT OF DC
                                       COMICS' APPLICATION UNDER
18  PACIFIC PICTURES                    L.R. 79-5.1 TO HAVE CERTAIN
    CORPORATION, IP WORLDWIDE,          EXHIBITS AND RELATED
19  LLC, IPW, LLC, MARC TOBEROFF,       BRIEFING TEMPORARILY
    an individual, MARK WARREN          PLACED UNDER SEAL
20  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,       SUPPLEMENTAL DECLARATION
21  JEAN ADELE PEAVY, an individual,    OF JASON H. TOKORO FILED
    JOANNE SIEGEL, an individual,       HEREWITH
22  LAURA SIEGEL LARSON, an
    individual, and DOES 1-10, inclusive,
23                                      **Judge**:       Hon. Otis D. Wright II
              Defendants.               **Magistrate**:   Hon. Ralph Zarefsky
24

25

26

27

28
                                       REPLY ISO DC COMICS' APPLICATION
                                       TO TEMPORARILY SEAL

I. **ARGUMENT**

Defendants' response does not address the real issue: that *six months ago* defendants—*not* DC Comics—affirmatively put at issue and disclosed the contents of the May 2 and July 3, 2008, letters (the "Letters"), Exhibits PP and RR to DC's motion to compel, by making self-serving arguments concerning the existence, substance, and circumstances of the Letters in order to support their Rule 12 motion to strike DC's third and sixth claims. Having made that tactical election to advance their litigation positions by relying on and selectively disclosing the contents of these documents, defendants cannot now deprive DC of the opportunity to challenge their assertions.

A. **Defendants Put The Letters At Issue By Repeatedly And Openly Disclosing Their Existence, Contents, And Surrounding Circumstances.**

DC's complaint identifies violations of law stemming from defendants' consent agreements. In an attempt to foreclose any discovery regarding those agreements, defendants cited, described, and even quoted from the Letters in their motion to strike, publicly filed in August and again in September 2010—even though DC's complaint did not advert to the Letters. Docket Nos. 160 at 13-14; 161 ¶ 39. Defendants' motion volunteered the existence of the May 2 letter, disclosed certain of its contents, described the circumstances under which it was sent, and selectively quoted from the letter:

> On May 2, 2008, the Siegels' counsel disclosed a settlement strategy of the Siegels and Shusters and briefly described its general nature ("Settlement Strategy") in a letter to Defendants' counsel marked "CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY," thus qualifying it as "Confidential Settlement Information" under the parties' Confidentiality Agreement. *The First sentence of the letter expressly states:* "This letter is sent pursuant to the 'JAMS Confidentiality Agreement' and solely in connection with the upcoming settlement mediation sessions.

The Settlement Strategy – contained in a communication
between the Siegels, the Shuster Executor and their mutual counsel,
Mr. Toberoff, concerning settlement [*i.e.*, the "Consent Agreement"] –
is also protected by the attorney-client privilege, the joint interest
privilege and the attorney work-product doctrine.

Docket No. 78 at 20 (cites omitted); *see also id.* at 17; Docket No. 34 at 15-16, 19,

21.  Because defendants have affirmatively relied on this letter and placed its

contents at issue, DC is entitled to challenge the veracity of defendants'

assertions—especially considering how defendants have changed their description

of the consent agreements over time, including between the May and July letters—

as well as the baseless claims that the agreements are shielded by the attorney-client

privilege.

Defendants' public disclosure of the existence, contents, and circumstances

surrounding the May letter waived any confidentiality that may have applied.  *E.g.,*

*Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (plaintiff's disclosure

of his communications with his prior attorney in opposing summary judgment

motion waived attorney-client privilege).  The July letter is a continuation of the

May correspondence and evidences defendants' attempt to re-characterize the

consent agreements as attorney-client communications.  Indeed, this change of

position in July was reiterated by defendants in briefing jointly filed with DC in

December 2008—over two years ago.  Case No. CV 04-8400, Docket No. 395 at 1-

2, 6-13.  If defendants had a genuine interest in the confidentiality of the Letters and

truly believed that they could not be used for any purpose, defendants would not

have disclosed, described, quoted, and relied on them in their public filings.

Prior to filing its motion to compel, and in light of defendants' objections to

these Letters first raised on Monday night, DC identified and redacted portions of

its motion to accomodate defendants' belated objections.  Defendants, on the other

hand, did not redact any portion of their opposition, and they declined to stipulate to

or support a joint application temporarily to seal the Letters pending the Court's

REPLY ISO DC COMICS' APPLICATION
TO TEMPORARILY SEAL

1   ruling on DC's motion to compel.  This is despite defendants' having sent DC

2   several emails—after DC had made its redactions—in which defendants made

3   revisions to the joint stipulation.  *See* Decl. of Jason H. Tokoro (filed herewith).

4        Indeed, defendants' opposition to DC's motion to compel—which was

5   publicly filed on Monday—includes the *same* disclosures of the contents of the

6   Letters made in their August and September 2010 public filings, and goes even

7   further in discussing and disclosing the Letters:

8   •   Defendants' opposition quotes from the May 2 letter that "neither the Siegels

9       nor the Shuster Estate will license, assign or otherwise transfer their rights

10      and interests in 'Superman' without the written consent of the other."  Docket

11      No. 160 at 53.  This admission about the content of the consent agreements

12      means that the agreements violate section 304(c)(6)(D) of the Copyright Act.

13      *E.g., Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1047 (9th Cir. 2005).

14      Defendants admit that two similar consent agreements that the Toberoff

15      defendants engineered with the Shuster heirs are "void *ab initio*" under the

16      statute.  Docket No. 78 at 8; *see* Docket No. 90 at 1, 6.

17  •   A few lines later, defendants represented that the July letter "stated that the

18      Heirs' agreement to collectively bargain is a communication signed by their

19      counsel and protected by the attorney-client privilege, joint interest privilege,

20      and attorney work product doctrine," since—as defendants continue to quote

21      from the letter—it "'necessarily reflects a joint assessment of the risks of

22      litigation by the Siegels and Shuster Estate as well as other strategic thinking

23      regarding this litigation.'"  Docket No. 160 at 53-54.

24  Defendants had every opportunity to redact these statements from their portion of

25  the publicly-filed joint stipulation, and despite making several other revisions, *see*

26  Tokoro Decl. ¶¶ 2-8; Exs. 3-6, chose not to do so.

27

28

REPLY ISO DC COMICS' APPLICATION
                                            TO TEMPORARILY SEAL

**B.    Federal And California State Law Permit Use Of The Letters By DC In This Case.**

Federal law, which governs here, permits full use of the consent agreements and communications at issue, because defendants' communications evidence independently wrongful acts that are the subject of DC's claims in this case, including the formation of unlawful consent agreements.  *See* Docket No. 160 at 14-18; *see also Carney v. Am. Univ.*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998). Neither in their opposition to DC's motion to compel nor in their response to this application do defendants dispute this clear law, nor show how or why California law would immunize their misconduct.

Contrary to defendants' assertion, the parties' JAMS Agreement does not preclude DC from using the Letters for any purpose.  Docket No. 160 at 19-21.  The agreement explicitly invokes "state and federal rules"—and the agreement does not trump federal law in any event.  *Id.* at 14-18.  Moreover, the Letters do not contain any information concerning offers of compromise or other terms of settlement typical of settlement communications.

**C.    Judge Larson's Ruling Does Not Preclude DC's Use Of The Letters.**

The circumstances under which Judge Larson denied DC's motion to compel the production of the consent agreement in the *Siegel* action are vastly different and provide no authoritative basis to foreclose disclosure in this case.  Defendants' consent agreement and related documents are indisputably relevant to DC's federal and state law claims in this case, which were not part of the *Siegel* action.  This Court is not precluded from examining this open issue.  *See* Docket No. 160 at 13, 25-26.  Moreover, subsequent to Judge Larson's ruling, the facts and circumstances materially changed:  defendants waived any applicable privilege by generally disclosing the existence and selective contents of the Letters to DC and to this Court.  *Id.* at 25-26.  Consequently, that DC previously filed redacted copies of both

REPLY ISO DC COMICS' APPLICATION
TO TEMPORARILY SEAL

1    the Letters in the *Siegel* action—prior to defendants' acts of waiver—is immaterial

2    to the issue at hand.

3          **D.**     **Defendants' Gamesmanship Should Not Be Countenanced.**

4        Although they had DC's motion to compel and supporting evidence since

5    January 28, and requested and received extensions to respond, defendants raised no

6    objection to the declaration or supporting evidence—*until* they provided their

7    opposition on the evening of February 7, just hours before the filing deadline.

8    Docket No. 166 at 1-2.  This conduct is not consistent with or reflective of a

9    genuine concern for confidentiality.  Nor is defendants' refusal to support

10   temporary sealing of the exhibits pending the Court's ruling.

11       Defendants' further argument that DC was made aware of their position as a

12   result of their September 20 motion to strike is specious.  Defendants were equally

13   aware that DC fully disputed defendants' factual claims and assertions of

14   confidentiality concerning the consent agreements and related communications, as

15   fully explained in DC's opposition to defendants' motion to strike filed on

16   September 27.  Docket No. 90.  DC's pending motion to compel and supporting

17   declaration, both served on January 28, reiterated DC's position that the consent

18   agreements and related communications are not exempt from disclosure.  *See*

19   Docket No. 160 at 11-27; Docket No. 163 ¶ 39; Docket No. 166 at 1-2, 14-15.

20   **II.**    **CONCLUSION**

21       There is no basis to exclude the Letters from this case or public disclosure.

22   Solely to accommodate defendants' position, however, DC submits the prudent

23   course is to maintain the exhibits under seal until the Court has had the opportunity

24   to consider and rule on the motion to compel.  At that juncture, DC contends the

25   exhibits and portions of DC's briefing at issue should be unsealed.

26   Dated:      February 9, 2011      Respectfully Submitted,

27                        By: /s/ Daniel M. Petrocelli

28                        Attorneys for Plaintiff DC Comics

CC1:844079

    REPLY ISO DC COMICS' APPLICATION
TO TEMPORARILY SEAL