DANIEL M. PETROCELLI (S.B. # 097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. # 211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. # 246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DC COMICS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE LOGS**<br><br>SUPPLEMENTAL DECLARATION OF DANIEL M. PETROCELLI FILED CONCURRENTLY HEREWITH<br><br>**Judge**:　　　Hon. Otis D. Wright II<br>**Magistrate**:　Hon. Ralph Zarefsky<br><br>**Hearing Date**:　February 28, 2011<br>**Time**:　　　　10:00 a.m. |

1. <u>The Consent Agreements</u>.  Binding Ninth Circuit law—which defendants tellingly fail to address—establishes that the most recent consent agreements the Toberoff defendants engineered—and that defendants refuse to produce—violate section 304(c)(6)(D) of the Copyright Act.  *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1047 (9th Cir. 2005).  Defendants do not dispute that these agreements remain in effect today and continue to impair the Shuster heirs' freedom to contract—months and years after the parties' mediation sessions ended.  Defendants' suggestion that the mediation did not end, Joint St. at 57-58, misses the point and is incorrect.  DC made clear to defendants in May 2010 that the parties' mediation efforts had "terminated" and that DC "reject[ed] [defendants'] improper invocation of the settlement privilege to cloak" their misconduct.  Petrocelli Decl. Ex 3.  Regardless, the issue here is defendants' refusal to produce independent, relevant, non-privileged evidence.  Federal law, which governs here, Joint St. at 14-16, makes plain defendants may not "immunize admissible information, such as a pre-existing document, through the pretense of disclosing it during compromise negotiations."  FED. R. EVID. 408, Advisory Comm. Note.

Defendants offer *no* answer to this clear federal rule, Joint St. at 14-16, 57, even though the JAMS Agreement on which they rely expressly invokes federal law, *id*. at 19.  Defendants similarly have no answer to California law—which the JAMS Agreement also invokes and permits the discovery and use of the consent agreements in this case.  *Id*. at 16-19, 57.  Instead, defendants rely on paragraph 5 of the JAMS Agreement, claiming it bars DC from seeking discovery of the consent agreements.  But paragraph 5 only protects "*settlement discussions*" or "oral or written statements *made at the Settlement Conference*…."  *Id*. at 20 (emphasis added).  The consent agreements are neither.  By defendants' own admission, the consent agreements were made *prior to* and *outside* the mediation and were *never shown* to DC.  *Id*. at 53.  Even if the terms of paragraph 5 did apply—and they do not—defendants' violations of the Copyright Act are not excused simply because

they occurred on the eve of a mediation. *E.g.*, *Carney v. Am. Univ.*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998). Moreover, paragraph 5 must be read in *pari materia* with the balance of the JAMS Agreement—which invokes "state and federal" law—and *not* to trump other provisions of the Agreement. Joint St. at 19-21.

Defendants' assertion of attorney-client privilege and work product is equally unsupportable. Defendants waived any protection when they chose to disclose the agreements to DC in 2008 and openly described the documents in publicly filed motions in 2010. *E.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002). Moreover, such privilege does not attach to communications involving *business dealings*. *E.g.*, *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 526, 529 (D.D.C. 2005). Defendants concede the consent agreements provide that "neither the Siegels nor the Shuster Estate will license, assign or otherwise transfer their rights and interests in 'Superman' without the written consent of the other." Joint St. at 53. This is not legal advice; it is the disposition of rights.

Finally, Judge Larson's ruling in *Siegel* does not bar DC's discovery. The facts, claims, and circumstances of this new case are different; *defendants* have publicly disclosed the alleged "privileged" communications Judge Larson declined to review; and the "law of the case" doctrine applies only to matters decided in "the course of a single continuing lawsuit. [It] do[es] not apply between separate actions." 18B CHARLES A. WRIGHT, FED. PRAC. & PROC. § 4478, at 637-39 (2d ed. 2002); *accord Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

2. <u>Retainer Agreements</u>. Defendants concede DC is entitled to discover the terms of Toberoff's fee arrangements with the various defendants, but no more. Joint Stip. at 65. However, defendants put other terms of Toberoff's retention agreements directly at issue through the disputed facts and arguments in their SLAPP motion. *Id.* at 28. Their SLAPP motion directly implicates *when* Toberoff

began to represent the Siegels and Shusters in litigation; *the scope* of his purported representation; and whether and when he was working with them in a *capacity as a lawyer or a business agent*. Docket No. 92 at 2-8, 13-25. Defendants cannot advance arguments and positions to support dispositive motions and deny DC relevant, non-privileged discovery.

    3. Non-Privileged Documents Sent To An Attorney. Despite three pages of argument on the subject, defendants *never once* dispute that entries 715 and 716 of the Siegels' privilege log identify a July 11, 2003, letter between Laura Siegel Larson and Michael Siegel—two non-lawyers. Their opposition also does not dispute withholding these documents on the ground that they later were shared with an attorney—an untenable basis for privilege. *Compare* Joint St. at 30-33, *with* 66-68. Defendants claim that Judge Larson ruled on the discoverability of these documents in *Siegel*. He did not. Judge Larson neither reviewed these two privilege-log entries specifically or the contents of two documents; he ruled only that he would not have the "escrow agent" in *Siegel* assess the validity of Toberoff's privilege claims. *Siegel*, Docket Nos. 374, 386. Even assuming he ruled on these documents (and he did not), this Court is fully empowered to address this issue in the context of this separate case. *E.g.*, 18B WRIGHT, *supra* § 4478.

    4. Michael Siegel Documents. As to 11 specific Michael Siegel documents that DC asked the Court to review *in camera*, defendants now claim five documents were erroneously logged either because they were produced or do not exist. Given the conceded errors, in addition to the other serious deficiencies in the logs addressed in DC's motion, defendants should be ordered to review their privilege logs to eliminate all errors and reproduce them by March 4, 2011. As to the remaining six of the 11 specific documents, defendants claim privilege on the basis that Michael and Laura Siegel shared a common interest in responding to a DC subpoena. Defendants have done nothing to substantiate this claim and, at a minimum, more information is required to test their claim of privilege. Defendants,

moreover, should be ordered to list the subject matter of these and all the other communications in their logs so DC has a fair chance to test such claims of privilege. The Ohio District Court *never* found that Michael and Laura Siegel shared a common interest—much less with respect to the six documents defendants now say relate to a subpoena DC served. To the contrary, the Court rejected the Siegels' improper joint-interest claims. Once defendants' logs are updated, DC can focus its efforts on the approximately 250 Michael Siegel documents defendants are withholding. Alternatively, either the Magistrate or a special master could review the 250 documents and order production of all non-privileged documents. The Ohio court refused to order further production of such documents because "'the substantive phase of the [*Siegel* case] [was] over.'" Joint St. at 35. But this is a new and different case, and discovery has only begun.

5. Toberoff Timeline Documents. DC seeks two responsive, non-privileged communications between Michael Siegel and Ms. Larson—dated May 13 and July 5, 2003—described in the Toberoff Timeline, but that do not appear in defendants' productions or privilege logs. *Nowhere* in their brief do defendants deny these documents exist; nor did they do so during the meet-and-confer process, even though they denied the existence of other documents. Defendants' only response is to attack the author of the Toberoff Timeline and his report, but such attacks are irrelevant and provide no basis for withholding the documents.

6. David Michaels Documents. In interrogatory responses served on DC last month, defendants disclosed the substance of communications between David Michaels, the author of the Timeline, and the Siegel heirs. Joint St. at 37-38. This clear act of waiver requires that the underlying letters containing these communications be produced. In any event, defendants cannot meet their burden to show these letters are privileged. When it suited his purposes, Toberoff argued that Michaels' correspondence with his clients, including the Siegels, was unauthorized and inappropriate. Case No. 04-8400, Docket No. 244 ¶¶ 8-9. Now he contends

1  Michaels' letters convey legal advice, Joint St. at 72-73, but, even were that true,
2  the Toberoff and Siegel defendants openly describe the contents of these
3  communications to DC in interrogatory responses. They cannot do so selectively.

4        7. <u>Dennis Larson Documents</u>. As court records show, Dennis Larson and
5  Ms. Larson were involved in a highly contentious divorce that concerned her rights
6  in Superman. Petrocelli Decl. Exs. 1-2. Defendants do not dispute that the Larsons
7  and their counsel exchanged communications on this subject, but they refuse to
8  produce them on grounds that they are irrelevant or non-responsive. Neither
9  ground is defensible; plus, defendants waived all such objections by Court-ordered
10 stipulation in December 2010. Docket No. 161-15 at ¶¶ 8-10.

11       8. <u>Privilege Logs</u>. Defendants cite no authority for the proposition that they
12 cannot be required to identify "to," "cc," "bcc," subject-matter information or to list
13 communications separately in their privilege logs. No such case exists, and
14 defendants' citation—*Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989)—said nothing
15 about the upper limits of information that could be required. Given Toberoff's
16 mixed roles here, his business activities, and defendants' claims that non-privileged
17 documents conveyed to attorneys somehow become privileged, DC is entitled to
18 more specificity in defendants' logs. DC cannot even identify the many documents
19 on defendants' logs that, for example, relate to the consent agreements. Defendants
20 do not dispute that their logs obscure this critical information.

21       9. <u>Conclusion.</u> DC's motion should be granted. Defendants should be
22 ordered to produce the privilege logs and documents addressed herein; at the very
23 least, the Court should review the documents at issue *in camera* to identify and
24 redact any privileged information. Space limitations prevent DC from addressing
25 defendants' remaining arguments—all of which are disputed.

26 Dated:    February 14, 2011        Respectfully Submitted,

27                               By: /s/ Daniel M. Petrocelli
28                               Daniel M. Petrocelli

CC1:844210

SUPPL. MEMO ISO DC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE LOGS

5