# EXHIBIT 1

Westlaw.

Not Reported in Cal.Rptr.2d, 2003 WL 1889992 (Cal.App. 2 Dist.)
Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
(Cite as: 2003 WL 1889992 (Cal.App. 2 Dist.))

Page 1

▶
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 8.
In re MARRIAGE OF Laura and Dennis LARSON.
Laura Siegel LARSON, Respondent,
v.
Dennis LARSON, Appellant.

No. B158566.
(Los Angeles County Super. Ct. No. BD321289).
April 17, 2003.

**Background:** Following granting to wife several domestic violence restraining orders, the Superior Court, Los Angeles County, No. BD321289, Veronica S. McBeth, J., issued another restraining order against husband. Husband appealed.

**Holding:** The Court of Appeal, Rubin, J., held that trial court was required to provide notice to husband and give husband a chance to address issue before granting another restraining order.

Affirmed in part and reversed in part.

West Headnotes

**[1] Protection of Endangered Persons 315P 🗝 124**

315P Protection of Endangered Persons
    315PII Security or Order for Peace or Protection
        315PII(G) Appeal and Review
            315Pk124 k. Perfection; Briefs and Assignments. Most Cited Cases
    (Formerly 62k21 Breach of the Peace)

Protection of Endangered Persons 315P 🗝 133

315P Protection of Endangered Persons
    315PII Security or Order for Peace or Protection
        315PII(G) Appeal and Review
            315Pk133 k. Determination and Remand. Most Cited Cases
    (Formerly 62k21 Breach of the Peace)
    Wife's failure on appeal to file respondent's brief did not mandate automatic reversal of trial court's domestic abuse restraining order, which was appealed by husband; Court of Appeal would reverse only if examination of the record revealed prejudicial error.

**[2] Protection of Endangered Persons 315P 🗝 56**

315P Protection of Endangered Persons
    315PII Security or Order for Peace or Protection
        315PII(C) Proceedings
            315Pk51 Plenary Proceedings in General
                315Pk56 k. Pleading, Notice, and Process. Most Cited Cases
    (Formerly 62k20 Breach of the Peace)
    Trial court was required to provide notice to husband and give husband a chance to address issue before granting another domestic violence restraining order in favor of wife. West's Ann.Cal.Fam. Code § 6345(a).

**[3] Protection of Endangered Persons 315P 🗝 123**

315P Protection of Endangered Persons
    315PII Security or Order for Peace or Protection
        315PII(G) Appeal and Review
            315Pk123 k. Preservation of Grounds of Review. Most Cited Cases
    (Formerly 62k21 Breach of the Peace)
    For purposes of preserving for appellate review husband's claim that trial court improperly granted another domestic abuse restraining order in favor of wife, husband made sufficient objection when he told trial court that he was "perplexed" because there had been no conduct to warrant extension

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 1
2

Page 2

Not Reported in Cal.Rptr.2d, 2003 WL 1889992 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 1889992 (Cal.App. 2 Dist.))**

from date of hearing when order was issued and because he had never been given full hearing on issue of domestic abuse allegations. West's Ann.Cal.Fam. Code § 6345(a).

APPEAL from orders of the Superior Court of Los Angeles County. Veronica S. McBeth, Judge. Affirmed in part, reversed in part.Dennis Larson, in pro per., for Appellant.

No appearance for Respondent.

RUBIN, J.
*1 Dennis Larson (husband) appeals from the three-year domestic violence restraining order issued against him on November 7, 2001, in connection with his ongoing divorce proceedings with his wife, Laura Siegel Larson. For the reasons set forth below, we reverse that order but leave in place all previous restraining orders.

### FACTS AND PROCEDURAL HISTORY[FN1]

> FN1. Respondent Laura Larson appeared through counsel in an unsuccessful attempt to dismiss the appeal. After receiving the required notice under rule 17(a) of the California Rules of Court that her respondent's brief was due, she sought and was granted an extension of time to file her brief until November 4, 2002. No brief was ever filed. As a result, we accept as true husband's statement of facts. (Cal. Rules of Court, rule 17(a),(c),(d); Advisory Com. com., 23 pt. 1 West's Ann.Codes, Rules (2003 Supp.) foll. rule 17, p. 95.) Wife's failure to file a respondent's brief does not mandate an automatic reversal and we will reverse only if our examination of the record reveals prejudicial error. ( *Ruttenberg v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1277, 1282, 240 Cal.Rptr. 249.)

[1] On January 18, 2000, Laura Siegel Larson (wife) obtained a domestic violence temporary restraining order (TRO) against her husband. ( Fam.Code, § 62 00, et seq.) Wife was given legal and physical custody of the couple's two children. The order was made part of the California Law Enforcement Telecommunications System (CLETS) and was issued pending a hearing on February 2, 2000. The matter was continued to February 16, 2000, at which time the court kept the TRO in place until May 22, 2000. Husband was required to continue in anger management and alcohol treatment courses.

In April 2000, wife filed for divorce. On May 26, 2000, the court consolidated wife's domestic violence proceedings with the divorce action. Without making any findings of fact, the court kept the domestic violence TRO in place until June 2000, when an order to show cause on the restraining order would be heard. On June 27, 2000, the court issued a "Restraining Order After Hearing (CLETS)." The order was on a form that included a box where the order's expiration date could be indicated. Absent a specified expiration date, the form said the order would expire in three years. No specific date was inserted. Husband was permitted limited visitation with the couple's two sons, but was ordered to keep away from wife's residence.

Over the next several months, husband and wife continued to contest husband's visitation rights and various support issues. On February 5, 2001, the court issued further visitation orders. As part of those orders, it made another CLETS domestic violence restraining order, which, as before, gave no expiration date. This process was repeated on April 6, 2001, when a new visitation order was issued, along with another CLETS restraining order which did not specify an expiration date. During this period, legal and physical custody of the children remained with wife.

In May 2001, husband sought to increase his visitation rights with the children. The matter was put over while a psychological evaluation of husband was conducted. The results of that evaluation

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 1
3

Not Reported in Cal.Rptr.2d, 2003 WL 1889992 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 1889992 (Cal.App. 2 Dist.))**

were very positive, concluding that husband was not a threat to his wife and children and had never threatened or struck any family member. The evaluation found that equal custody of the children would be proper.

While husband's request for increased visitation with the children was pending, wife filed a petition to bifurcate the marital dissolution proceeding, seeking an early, separate trial on terminating the marriage, with the remaining issues to be tried later. Both matters were eventually heard on November 7, 2001. The court granted wife's motion to bifurcate, heard evidence, and dissolved the marriage. The court also increased husband's visitation period to 50 percent. During the proceedings, husband asked the court to make a nunc pro tunc order reflecting that the three-year period of the domestic violence restraining order began to run from issuance of the very first TRO back in January 2000. The court refused, deciding instead to issue another CLETS restraining order that would run for three years from that date. The court did so, it said, in order to ensure that things continued to progress smoothly.

*2 Later during the November 7 hearing, husband told the court he was "perplexed" over its decision to extend the restraining order for another three years when there had been no misconduct on his part to justify an extension from that date. The court responded that it wanted to keep the parties separated because that seemed to be working. The court said it might even consider a non-CLETS order. When husband argued that there had never been a full adjudication of the domestic violence allegations, the court replied that it would issue its order without prejudice to reconsideration at the time of trial. Husband contends that the trial court erred because under Family Code section 6345, subdivision (a) he was entitled to notice and a hearing before the court considered imposing a new, three-year expiration date.[FN2]

> FN2. Husband also contends that the court's use of a domestic violence form was improper because no such issues had been raised at the hearing. Because we reverse the November 7, 2001, order, we need not reach that issue.

**DISCUSSION**

[2][3] Husband's appeal is based solely on Family Code section 6345, subdivision (a) which provides that domestic violence restraining orders issued after notice and a hearing may not last more than three years. Those orders may be renewed upon request of a party, for either three years or permanently. (Fam.Code, § 6345.) According to husband, the court violated this statute by issuing another restraining order that ran for three years from the date of the November 2001 hearing without first giving him notice and a chance to address the issue. We agree.[FN3] Wife did not raise the issue as part of her pending bifurcation motion. Instead, the trial court raised it on its own in the middle of that hearing.

> FN3. We also believe husband made a sufficient objection when he told the court he was "perplexed" because there had been no conduct to warrant an extension from that date and because he had never been given a full hearing on the issue.

Because husband did not appeal from any of the earlier restraining orders or from the order denying his November 7, 2001, motion to correct those orders to run from the date of the very first order,[FN4] we leave in place the last such order in the record, which runs three years from April 6, 2001.[FN5]

> FN4. Because husband's appeal is premised on the trial court's failure to give him notice that it intended to extend the restraining order, it would have been inconsistent for him to also contend on appeal that the trial court should have granted his oral motion which was made without notice to advance the expiration date of the restraining orders.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 1
4

Not Reported in Cal.Rptr.2d, 2003 WL 1889992 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
(Cite as: 2003 WL 1889992 (Cal.App. 2 Dist.))

Page 4

FN5. Husband said during oral argument that the last restraining order before the November 7, 2001, order was made in June 2001. However, the record on appeal does not include any restraining orders made after April 6, 2001. It is our intent to leave in place the last restraining order made before the November 7 order. Accordingly, if a restraining order was made in June 2001, the three-year period will run from that date.

### DISPOSITION

For the reasons set forth above, the November 7, 2001, restraining order is reversed. All previous restraining orders remain in effect. The parties are to bear their own costs on appeal.

We concur: COOPER, P.J., and BOLAND, J.

Cal.App. 2 Dist.,2003.
In re Marriage of Larson
Not Reported in Cal.Rptr.2d, 2003 WL 1889992 (Cal.App. 2 Dist.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 1
5