1

2                    UNITED STATES DISTRICT COURT

3                    CENTRAL DISTRICT OF CALIFORNIA
                            WESTERN DIVISION
4


5
    DC COMICS,                      )
6                                   )
                                    )
7          PLAINTIFF,               )
                                    )
8          VS.                      ) CASE NO. CV 10-03633-ODW(RZX)
                                    )
9                                   )
    PACIFIC PICTURES CORP. ET AL.,)
10                                  ) LOS ANGELES, CALIFORNIA
                                    ) FEBRUARY 28, 2011
11                                  ) (10:04 A.M. TO 11:32 A.M.)
           DEFENDANTS.              )
12  _____)


13                               HEARING
14            BEFORE THE HONORABLE RALPH ZAREFSKY
                  UNITED STATES MAGISTRATE JUDGE
15


16


17

18  APPEARANCES:              SEE NEXT PAGE

19  COURT REPORTER:           RECORDED; COURT SMART

20  COURTROOM DEPUTY:         ILENE BERNAL

21

    TRANSCRIBER:              DOROTHY BABYKIN
22                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
23                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PLAINTIFF:       O'MELVENY & MYERS LLP
 2                             BY:  DANIEL M. PETROCELLI
                                    ATTORNEY AT LAW
 3                             400 SOUTH HOPE STREET
                               18TH FLOOR
 4                             LOS ANGELES, CALIFORNIA  90071

 5                             O'MELVENY & MYERS LLP
                               BY:  MATTHEW T. KLINE
 6                                  JASON TOKORO
                                    ATTORNEYS AT LAW
 7                             1999 AVENUE OF THE STARS
                               7TH FLOOR
 8                             LOS ANGELES, CALIFORNIA  90067

 9
      FOR SIEGEL AND SHUSTER   TOBEROFF & ASSOCIATES, P.C.
10    DEFENDANTS:              BY:  MARC TOBEROFF
                                    KEITH ADAMS
11                                  ATTORNEYS AT LAW
                               2049 CENTURY PARK EAST
12                             SUITE 2720
                               LOS ANGELES, CALIFORNIA  90067
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                            I N D E X
     CASE NO. CV 10-03633-ODW(RZX)              FEBRUARY 28, 2011
2
     PROCEEDINGS:   HEARING RE PLAINTIFF'S MOTION TO COMPEL
3                   PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE
                    LOGS
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 28, 2011

 2                         10:04 A.M.

 3          THE CLERK:  ITEM NUMBER 2, CASE NUMBER

 4   CV 10-03633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES

 5   CORPORATION, ET AL.

 6          COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE

 7   RECORD.

 8          MR. PETROCELLI:  GOOD MORNING, YOUR HONOR.

 9          DANIEL PETROCELLI FOR DC COMICS.  I'M HERE WITH

10   MATTHEW KLINE AND JASON TOKORO.

11          THE COURT:  ALL RIGHT.  GOOD MORNING.

12          MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.

13          MARC TOBEROFF FOR THE SIEGEL AND SHUSTER

14   DEFENDANTS.  I'M HERE WITH MY ASSOCIATE KEITH ADAMS.

15          THE COURT:  GOOD MORNING.

16          MR. TOBEROFF, THEY DON'T PAY YOU ENOUGH TO GET --

17   TO ALLOW YOU TO GET BUSINESS CARDS?

18          MR. TOBEROFF:  NO, I JUST MOVED.

19          THE COURT:  ALL RIGHT.

20          ALL RIGHT.  GENTLEMEN, WITHOUT REHASHING, DO YOU

21   WISH TO BE HEARD, MR. PETROCELLI?

22          MR. PETROCELLI:  THANK YOU, YOUR HONOR.  I'LL TRY

23   TO AVOID REHASHING.  THERE ARE SEVEN CATEGORIES OR ISSUES

24   THAT WE PRESENTED IN OUR MOTION.  AND, GENERALLY, I'LL

25   PROCEED IN THAT ORDER.
```

1          THE FIRST ISSUE AND THE ONE THAT TAKES UP THE MOST

2    SPACE IS THE CONSENT AGREEMENT ISSUE.

3          THE COURT:  YES.

4          MR. PETROCELLI:  AND THERE REALLY ISN'T ANY --

5          THE COURT:  ARE YOU IN AGREEMENT THERE'S ONLY ONE

6    AGREEMENT AT ISSUE AT THIS POINT?

7          MR. PETROCELLI:  WE DON'T KNOW.  BUT THAT'S WHAT

8    MR. TOBEROFF HAS SAID, THAT THERE'S ONE AGREEMENT --

9          THE COURT:  BUT THE OTHER TWO YOU IDENTIFY ARE

10   ACTUALLY IN THE RECORD.

11         MR. PETROCELLI:  THERE ARE PREVIOUS ONES THAT ARE

12   IN THE RECORD.  THAT IS CORRECT.

13         THE COURT:  OKAY.

14         MR. PETROCELLI:  WHETHER THERE'S MORE THAN ONE,

15   WE'RE NOT SURE.  BUT WE KNOW THERE IS AT LEAST THE ONE.

16         THE COURT:  OKAY.  AND YOU'RE NOT AWARE OF ANY

17   OTHERS THAN THE THREE, THE TWO THAT ARE IN THE RECORD AND THE

18   ONE THAT YOU HAVEN'T SEEN?

19         MR. PETROCELLI:  AND THE TWO IN THE RECORD, JUST SO

20   THE RECORD IS CLEAR, ONE WE CALL THE PACIFIC PICTURES

21   AGREEMENT, AND THEN THE OTHER ONE WE CALL THE IPW AGREEMENT.

22   THOSE WERE EARLIER IN TIME THAT WERE PRODUCED TO US.  WE'RE

23   AWARE OF THOSE.  THOSE I THINK ARE IN THE RECORD AND THOSE

24   ARE PROBABLY WHICH YOUR HONOR HAS IN MIND.

25         THIS -- WHAT WE'LL CALL THE THIRD ONE, IS THIS

1    CONSENT AGREEMENT THAT WE WERE TOLD ABOUT IN 2008, WHICH IS

2    THE SUBJECT OF THIS MOTION.

3            THE COURT:  OKAY.

4            MR. PETROCELLI:  OKAY.  SO, WITH THAT

5    CLARIFICATION, THERE ISN'T ANY MEANINGFUL DISAGREEMENT THAT

6    THIS IS DISCOVERABLE UNDER THE FEDERAL RULES OR THE

7    CALIFORNIA RULES FOR THAT MATTER.

8            THE ARGUMENT OF THE DEFENDANTS IS THAT THOSE RULES

9    WERE TRUMPED OR SUPERSEDED BY PARTICULAR LANGUAGE IN THE

10   CONFIDENTIALITY AGREEMENT THAT THE PARTIES ENTERED INTO WHEN

11   THIS MEDIATION HAPPENED IN 2008.

12           AND ON A NUMBER OF LEVELS, YOUR HONOR, WE THINK

13   THAT ARGUMENT IS JUST DEAD WRONG.

14           THE LAW -- NO CASE HAS BEEN CITED BY THE OTHER SIDE

15   TO BE CLEAR SUPPORTING THEIR POSITION THAT CONTRACTUAL

16   LANGUAGE CAN TRUMP IN THIS CASE THE FEDERAL STANDARDS FOR

17   DISCLOSURE, WHICH MAKE CLEAR UNDER RULE 408 AND THE ADVISORY

18   COMMITTEE NOTES THAT YOU CANNOT SUPPRESS FACTS OR DOCUMENTS

19   JUST BECAUSE YOU DISCLOSE THEM IN THE MEDIATION.

20           COMMUNICATIONS MADE IN THE COURSE OF THE MEDIATION

21   MAY NOT BE DISCOVERABLE OR USED.  BUT UNDERLYING AGREEMENTS,

22   DOCUMENTS AND FACTS CAN'T BE SUPPRESSED.  AND YOU COULD JUST

23   IMAGINE WHAT MIGHT HAPPEN, WHICH IS, IN OUR VIEW, WHAT'S

24   HAPPENING HERE -- WHICH IS, IF YOU DISCLOSE THEM ANTECEDENT

25   TO OR IN CONNECTION WITH THE MEDIATION, YOU CAN FOREVER

1    SUPPRESS THAT INFORMATION.  AND, INDEED, THAT'S NOT WHAT THE

2    LAW ALLOWS AND THAT'S NOT WHAT THIS AGREEMENT ALLOWS.

3            THE COURT:  LET ME ASK YOU SOMETHING, MR.

4    PETROCELLI.

5            WHAT IF PARTIES MAKE AN AGREEMENT FOR THE PURPOSE

6    OF THE MEDIATION?

7            MR. PETROCELLI:  IF IT TURNS OUT -- AND WE HAVE A

8    CASE ON THIS -- THAT IN DOING SO A PARTY -- AND REMEMBER, WE

9    DIDN'T MAKE AN AGREEMENT WITH THEM FOR THE PURPOSE OF THIS

10   MEDIATION.  THESE ARE AGREEMENTS MADE AMONG THE OTHER --

11           THE COURT:  YES.  NO, I UNDERSTAND THAT.

12           MR. PETROCELLI:  -- MEMBERS OF THE OTHER SIDE.

13           THE COURT:  I UNDERSTAND.

14           MR. PETROCELLI:  THAT YOU CAN COMMIT AN INDEPENDENT

15   WRONG IN ENTERING INTO THAT AGREEMENT.  AND THAT'S WHAT'S

16   HAPPENED HERE.

17           THE COURT:  WELL, WHAT IF THEY SAY, FOR THE

18   PURPOSES OF THIS MEDIATION, WE WILL TAKE THE FOLLOWING

19   POSITION -- A, B, C, D, E?

20           MR. PETROCELLI:  AND IF THAT AGREEMENT VIOLATES

21   RIGHTS, IT'S DISCOVERABLE.

22           THE COURT:  OKAY.

23           MR. PETROCELLI:  AND THAT -- SO, THAT'S OUR CASE IN

24   EFFECT.  THEY ENTERED INTO AN AGREEMENT THAT SAYS THOU SHALL

25   NOT INDIVIDUALLY ENTER INTO AGREEMENTS WITH DC COMICS.  THAT

1   AGREEMENT VIOLATES THE COPYRIGHT ACT, WHICH GIVES DC COMICS

2   THE EXCLUSIVE OPPORTUNITY TO ENTER INTO AGREEMENTS, AND THE

3   HEIRS HAVE TO BE LEFT COMPLETELY FREE WITHOUT ANY LEGAL

4   IMPEDIMENTS OR RESTRAINTS ON THEIR ABILITY TO ENTER INTO

5   AGREEMENTS WITH US.  THAT'S THE WHOLE POINT OF THE UNDERLYING

6   LAWSUIT HERE.

7         AND WE HAVE PRIOR AGREEMENTS THAT ARE IN THE

8   RECORD.  AND NOW WE HAVE THIS NEW AGREEMENT THAT TO THIS DAY

9   EXISTS WHICH PROHIBITS EITHER THE SHUSTER HEIRS OR THE SIEGEL

10  HEIRS FROM ENTERING INTO AN AGREEMENT WITH US WITHOUT BEING

11  IN VIOLATION OF SOME AGREEMENT AMONG THEMSELVES AND WITH MR.

12  TOBEROFF.

13        AND THERE IS NO ARGUMENT THAT THAT'S NOT RELEVANT

14  TO OUR CLAIMS.  THE ARGUMENT -- THE ARGUMENT IS MADE THAT

15  JUST BECAUSE IT WAS ENTERED INTO IN CONNECTION WITH THIS

16  MEDIATION, THEY CAN SUPPRESS IT.

17        AND THERE'S A CASE, YOUR HONOR, CALLED THE JACADA

18  CASE.  IT'S A SIXTH CIRCUIT CASE.  AND IT RELIES ON A U.S.

19  SUPREME COURT CASE CALLED THE MOSTRO BUENO CASE, AND THAT'S

20  IN THE CONTEXT OF THE FEDERAL ARBITRATION STATUTE BUT AT A

21  VERY SIMILAR SITUATION.

22        THOSE COURTS CONCLUDED THAT WHEN YOU HAVE

23  CONTRACTUAL LANGUAGE, YOU CANNOT OVERCOME THE APPLICATION OF

24  FEDERAL STANDARDS, ESPECIALLY WHEN YOU'RE RELYING ON GENERIC

25  LANGUAGE.  ALTHOUGH THE CASE DOESN'T SAY THIS, YOU COULD

```
 1   EXTRAPOLATE FROM THE CASE.  AND IN ORDER TO OVERCOME THE
 2   APPLICATION OF FEDERAL STANDARDS, THE CONTRACTUAL LANGUAGE
 3   HAS TO BE EXPLICIT.
 4           IF YOU GO TO THE JAMS AGREEMENT IN THIS CASE, THERE
 5   IS NO CREDIBLE ARGUMENT THAT THE PARTIES INTENDED TO THWART
 6   OR SUPERSEDE THE APPLICATION OF RULE 408 OR THE CALIFORNIA
 7   COUNTERPART.  IN FACT, TO THE CONTRARY, THE JAMS AGREEMENT
 8   INCORPORATES AND RELIES ON --
 9           THE COURT:  NO, I READ THIS.
10           MR. PETROCELLI:  -- ON THOSE -- ON THOSE
11   PROVISIONS.
12           AND WHAT WE'RE LEFT WITH FINALLY IS THE ARGUMENT
13   THAT THIS CONTRACTUAL LANGUAGE EFFECTIVELY SUPERSEDES AND
14   GOES BEYOND WHAT THE FEDERAL LAW PROTECTS.  AND, AS I SAID
15   UNDER THE CASE LAW, THAT DOESN'T HOLD UP UNDER THE JACADA AND
16   MOSTRO BUENO CASES.
17           BUT, MOREOVER, YOUR HONOR, IF YOU READ THE LANGUAGE
18   OF THE AGREEMENT, PARAGRAPH 5, EVEN ACCEPTING THE PLAINTIFF'S
19   ARGUMENT THAT WE'RE CONSTRAINED BY THIS LANGUAGE OF THIS
20   CONTRACT, THIS MEDIATION AGREEMENT, PARAGRAPH 5 SAYS THAT --
21   BARS MATTERS DISCUSSED AT THE MEDIATION.  OKAY.  WE'RE NOT
22   TRYING TO ELICIT EVIDENCE OF MATTERS DISCUSSED AT THE
23   MEDIATION.  WE'RE ELICITING EVIDENCE OF SOMETHING THAT WAS
24   DISCLOSED TO US IN A LETTER.
25           NOW, THE LETTER MAY BE COVERED BY THE MEDIATION
```

1    PRIVILEGE ABSENT A WAIVER.  AND THAT'S THE SUBJECT OF ANOTHER

2    ISSUE WE HAVE HERE.  BUT THE LETTER DISCLOSES THIS

3    INDEPENDENT AGREEMENT, BY THE WAY, THAT WAS ENTERED INTO ON

4    APRIL 8 BEFORE THERE WAS EVER ANY JAMS AGREEMENT BETWEEN THE

5    PARTIES.  SO THEY ENTER INTO THAT AGREEMENT AMONG THEMSELVES

6    ON APRIL 8.

7            IT'S NOT UNTIL MAY 1 THAT THERE'S EVEN AN AGREEMENT

8    AMONG THE LITIGANTS PROVIDING FOR CONFIDENTIALITY OF THEIR

9    MEDIATION DISCUSSIONS.  AND THERE'S NO EVIDENCE THAT THAT

10   AGREEMENT, THAT APRIL 8 AGREEMENT AMONG THE HEIRS AND MR.

11   TOBEROFF HAS EVER BEEN RESCINDED OR REVOKED AND IT STILL

12   EXISTS.

13           NOW -- SO, THE FIRST POINT IS THAT WE'RE NOT

14   SEEKING TO ELICIT THE COMMUNICATIONS.

15           THE COURT:  NO, I UNDERSTAND THAT POINT.

16           MR. PETROCELLI:  AND THE SECOND POINT, YOUR HONOR,

17   IS -- AND I'M SORRY IF I AM STARTING TO REHASH.  THE SECOND

18   POINT, YOUR HONOR, IS THAT IF YOU LOOK AT PARAGRAPH 5,

19   PARAGRAPH 5 SAYS THAT ANY DOCUMENT MARKED AS CONFIDENTIAL FOR

20   SETTLEMENT PURPOSES ONLY -- AND THE LETTER OF MAY 2, 2008,

21   WHICH IDENTIFIED THIS CONSENT AGREEMENT FOR THE FIRST TIME,

22   IS SO MARKED AS CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY.

23           BUT THE PARAGRAPH GOES ON TO SAY THAT THE DOCUMENT

24   CAN'T BE USED FOR ANY PURPOSE, AND I'M PARAPHRASING, EXCEPT

25   AS SET FORTH IN PARAGRAPH 6.  ONE OF THE EXCEPTIONS SET FORTH

1    IN PARAGRAPH 6 IS THE THIRD EXCEPTION WHICH SAYS, EXCEPT IF

2    YOU DEVELOP INDEPENDENTLY OF THE SETTLEMENT CONFERENCE AND

3    WITHOUT REFERENCE TO THE CONFIDENTIAL INFORMATION, THE

4    EVIDENCE.  THAT'S PRECISELY WHAT WE'RE DOING HERE AND THAT

5    WAS THE REASON FOR THAT.

6           IT CAN'T BE THAT MR. TOBEROFF COULD HAVE DISCLOSED

7    ALL SORTS OF DAMAGING FACTS IN THE MEDIATION.  HE COULD HAVE

8    -- UNDER THEIR THEORY, HE COULD HAVE SAID, WE'VE BEEN

9    SIGNING ILLEGAL AGREEMENTS SINCE DAY ONE.  AND YOU CAN'T DO

10   ANYTHING ABOUT IT BECAUSE I'M NOW TELLING YOU ABOUT THEM IN

11   THE MEDIATION.

12          THE COURT:  I DON'T THINK ANYBODY TAKES THAT

13   POSITION.

14          MR. PETROCELLI:  WELL, I SUBMIT THAT BECAUSE --

15   THAT THAT IS THEIR POSITION -- AND I EXAGGERATED IT FOR THE

16   PURPOSES OF EMPHASIS.

17          THE COURT:  YES, I WOULD SAY SO.

18          MR. PETROCELLI:  BUT THEIR POSITION IS BECAUSE WE

19   TOLD YOU ABOUT THE CONSENT AGREEMENT IN A LETTER THAT WE

20   MARKED AS CONFIDENTIAL, YOU CAN'T INDEPENDENTLY NOW ASK FOR

21   IT.  YOU HAVE TO PRETEND YOU NEVER HEARD ABOUT IT.  IT'S

22   FORBIDDEN KNOWLEDGE.

23          THE COURT:  I DON'T -- I DON'T THINK SO.  I DON'T

24   SEE IT THAT WAY, MR. PETROCELLI.  AND I DON'T THINK THAT WAS

25   THE WAY IT WAS PRESENTED TO JUDGE LARSON THE FIRST TIME

 1  AROUND EITHER.

 2          MR. PETROCELLI:  WELL, I WANT TO TALK ABOUT THAT

 3  BECAUSE THIS ISSUE WAS NEVER LITIGATED DIRECTLY AS IT HAS

 4  BEEN IN THIS CASE, YOUR HONOR.

 5          THE COURT:  I UNDERSTAND.  AT LEAST, NOT TO THIS

 6  EXTENT.

 7          MR. PETROCELLI:  RIGHT.  IN THE JUDGE LARSON

 8  SITUATION THERE WAS A REQUEST MADE FOR IT.  IT WAS -- THERE

 9  WAS NO REAL SHOWING OF RELEVANCE.  DISCOVERY HAD CLOSED.

10  DISCOVERY -- THE REQUEST WAS MADE IN '08.  DISCOVERY HAD

11  CLOSED IN 2006.

12          AND HERE IT'S A COMPLETELY DIFFERENT CASE.  AND THE

13  LAW OF THE CASE -- AND WE CITED THE NINTH CIRCUIT CASE ON

14  THIS POINT.  THE LAW OF THE CASE DOES NOT APPLY ACROSS

15  DIFFERENT CASES.  THEY CITED A CASE IN WHICH THERE'S SOME

16  LANGUAGE APPLYING IT TO A RELATED CASE.

17          AND IF YOU LOOK AT SOME THE CASES THAT THEY CITED,

18  YOUR HONOR, VERY NARROW EXCEPTIONS INVOLVING LIKE PRIVATE

19  ATTORNEY GENERALS BRINGING, YOU KNOW, CLAIMS UNDER A STATUTE

20  OR A CASE WHERE THERE WAS ONE CLAIM SEVERED FROM ANOTHER

21  CLAIM INVOLVING THE SAME PARTIES, AND IT'S ESSENTIALLY A

22  CONTINUATION OF THE SAME CASE.

23          WE HAVE DIFFERENT PARTIES.  WE HAVE DIFFERENT

24  CLAIMS FOR RELIEF, AND WE HAVE DIFFERENT STANDARDS OF

25  RELEVANCE BECAUSE WE HAVE DIFFERENT ISSUES IN THE CASE.  AND

1    SO I DON'T THINK IT'S FAIR TO SAY THAT JUDGE LARSON HAS

2    DECIDED ALL THESE ISSUES IN THIS CASE, IN THE SIEGEL CASE,

3    ALTHOUGH WE CONTINUE TO CONFRONT THAT ARGUMENT AS WE WALK

4    THROUGH THESE ISSUES.

5         THE FUNDAMENTAL POINT OF SUBMISSION, YOUR HONOR, IS

6    THAT EVEN THOUGH IT WAS IDENTIFIED TO US IN A MEDIATION

7    DOCUMENT, AND EVEN THOUGH THEY MAY HAVE ENTERED INTO THAT

8    AGREEMENT FOR THE PURPOSE OF MEDIATION, THE UNDERLYING

9    CONTRACT CANNOT BE BARRED FROM DISCLOSURE.

10        I MEAN, IF I TAKE THE DEPOSITION OF THE WITNESSES,

11   THEY ENTER INTO THIS AGREEMENT, THE AGREEMENT STILL EXISTS.

12   THAT INFORMATION IS WITHIN THEIR KNOWLEDGE.  THEY HAVE TO

13   TESTIFY ABOUT THAT.  AND THE DOCUMENT ITSELF IS NOT A -- IT'S

14   NOT MARKED CONFIDENTIAL FOR MEDIATION PURPOSES ONLY TO OUR

15   KNOWLEDGE.  THERE'S BEEN NO SUCH REPRESENTATION THAT THE

16   CONSENT AGREEMENT IS SO MARKED.  AND THE CONSENT AGREEMENT TO

17   THIS DAY OPERATES AS A RESTRAINT ON US IN OR OUT OF THE

18   MEDIATION PROCESS.

19        IF I TRY TO MAKE A DEAL WITH THE SHUSTER HEIRS, I'M

20   NOT ABLE TO BECAUSE THE SHUSTER HEIRS HAVE AN AGREEMENT THAT

21   SAYS I CAN'T MAKE A DEAL WITH YOU WITHOUT INCLUDING MY

22   COLLEAGUES.  AND WE SAY THAT AGREEMENT IS NOT ONLY VIOLATIVE

23   OF OUR RIGHTS UNDER THE COPYRIGHT ACT, WE ALSO SAY THAT

24   AGREEMENT IS VOID AS AGAINST PUBLIC POLICY UNDER SUBSTANTIVE

25   LAW BECAUSE IT ACTS AS A RESTRAINT ON A PARTY'S UNFETTERED

1    RIGHT TO SETTLE THEIR OWN CLAIM OR ENTER INTO THEIR OWN

2    AGREEMENT ABSENT ANY OTHER INFLUENCE OR ANY OTHER RESTRAINTS

3    ON THEM.  SO, THAT'S THE -- THAT'S THE CONSENT AGREEMENT

4    ISSUE, YOUR HONOR.

5           THERE'S A MINOR ISSUE THERE REGARDING THESE TWO

6    LETTERS.  ONE WAS THE MAY 2008 LETTER THAT IDENTIFIED THIS

7    DOCUMENT TO US FOR THE FIRST TIME, AND THE OTHER WAS A

8    FOLLOW-UP LETTER IN JULY.  AND THAT WAS THE SUBJECT OF OUR

9    SEALING APPLICATION --

10           THE COURT:  YES.

11           MR. PETROCELLI:  -- WHICH YOUR HONOR -- WHICH YOUR

12    HONOR SEALED.

13           AND IN FAIRNESS WHEN WE FILED OUR LAWSUIT, WE WERE

14    SCRUPULOUS ABOUT NOT EVEN ADVERTING TO THOSE DOCUMENTS,

15    CERTAINLY NOT QUOTING TO THEM.  WE MADE AN ALLEGATION ABOUT

16    THE ULTIMATE ISSUE OF THESE CONSENT AGREEMENTS.  OKAY.  AND

17    IT WAS MR. TOBEROFF IN THE DEFENDANTS' FILINGS, INCLUDING IN

18    THIS MATTER, WHO HAVE QUOTED FROM THE LETTER.  AND ONCE YOU

19    QUOTE THE LETTER, WE DON'T THINK IT'S APPROPRIATE TO THEN

20    SUGGEST TO THE OTHER SIDE THAT HAVING QUOTED THE LETTER THAT

21    WE CAN'T -- WE CAN'T REFERENCE IT.

22           AND THAT'S WHY WE REFERENCED IT, YOUR HONOR.  THEY

23    QUOTED IT IN THEIR FILINGS IN THIS CASE ON AUGUST 13, 2010

24    AND AGAIN ON SEPTEMBER 20, 2010 WHEN THEY SOUGHT TO DISMISS

25    WITHOUT THE BENEFIT OF ANY DISCOVERY OUR COMPLAINT.  AND THEY

1    ALLUDED TO THESE LETTERS.  THEY WERE THE FIRST ONES TO ALLUDE

2    TO THESE LETTERS.  THEY WERE THE FIRST ONES TO QUOTE THESE

3    LETTERS.  IT WAS THE MAY 2 LETTER TO BE SPECIFIC.  AND THEY

4    DID SO FOR PURPOSES OF TAKING TACTICAL POSITIONS TO GAIN AN

5    IMMEDIATE DISPOSITIVE DISMISSAL.

6              AND, YOU KNOW, I DON'T HAVE TO RECITE TO YOUR

7    HONOR, BUT THERE'S ALL KINDS OF LAW TO THE EFFECT THAT ONCE

8    YOU PUT SOMETHING IN ISSUE BY MAKING AFFIRMATIVE USE OF IT,

9    YOU RUN THE RISK OF WAIVER.

10             IN ANY EVENT, OUT OF AN ABUNDANCE OF CAUTION, WE

11   ASKED YOUR HONOR TO SEAL THOSE LETTERS.  AND THOSE LETTERS

12   ARE REALLY BESIDES THE POINT.  WE DON'T -- IT'S NOT THE

13   LETTERS THAT WE CARE ABOUT.  WE HAVE THE LETTERS.

14             THE COURT:  I UNDERSTAND.

15             MR. PETROCELLI:  IT'S THE UNDERLYING CONSENT

16   AGREEMENT.

17             THE COURT:  BY THE WAY, THE SLAP MOTION IS TAKEN

18   OFF CALENDAR.  IT'S UNDER SUBMISSION.

19             IS THAT CORRECT?

20             MR. PETROCELLI:  ALL THE DEFENDANTS' MOTIONS TO

21   DISMISS INCLUDING THE SLAP MOTION HAVE BEEN TAKEN UNDER

22   SUBMISSION.  THEY WERE TO BE SET FOR ARGUMENT A WEEK AGO, BUT

23   THE JUDGE ISSUED AN ORDER TAKING THEM OFF CALENDAR.  AND YOUR

24   HONOR KNOWS THE WHOLE HISTORY ABOUT WHAT'S HAPPENED SINCE WE

25   WERE LAST IN FRONT OF YOU.

1            OKAY.  SO, THAT'S THE CONSENT AGREEMENT, YOUR

2    HONOR.

3            THE COURT:  OKAY.

4            MR. PETROCELLI:  ISSUE NUMBER TWO IS THE RETAINER

5    AGREEMENT.  AND, AGAIN, THERE'S NO DISPUTE THAT RETAINER

6    AGREEMENTS ARE DISCOVERABLE EXCEPT TO THE EXTENT THAT THEY

7    MAY CONTAIN SOME ATTORNEY-CLIENT PRIVILEGED INFORMATION.

8            AND OUR POSITION HERE IS THAT THEY EITHER SHOULD

9    HAVE BEEN PRODUCED IN THEIR ENTIRETY, OR THEY SHOULD HAVE

10   BEEN PRODUCED IN REDACTED FORM TO EXCISE OUT THE PRIVILEGED

11   INFORMATION.  INSTEAD THEY WERE NOT PRODUCED AT ALL.

12           THE COURT:  AND EXPLAIN TO ME AGAIN YOUR THEORY OF

13   RELEVANCE OF THESE.

14           MR. PETROCELLI:  BECAUSE THE POSITION OF THE

15   DEFENDANTS, ESPECIALLY THE TOBEROFF DEFENDANTS IN THE SLAP

16   MOTION AND IN OTHER MOTIONS THEY HAVE FILED, IS THAT AT ALL

17   TIMES THEY WERE ACTING AS A LAWYER NOT AS A NON-LAWYER

18   BUSINESS PERSON ENGAGED IN THE COMMERCIAL ACTIVITY OF

19   ACQUIRING AND EXPLOITING RIGHTS.

20           AND THEY VIEW -- AND THEY'RE MAKING THAT ARGUMENT

21   IN ORDER TO ASSERT DEFENSES LIKE THE LITIGATION PRIVILEGE AND

22   OTHER DEFENSES THAT WOULD, IN THEIR VIEW, BAR OUR CLAIMS.

23           IT'S VERY CLEAR IN OUR COMPLAINT THAT THE CLAIMS

24   AGAINST THE TOBEROFF DEFENDANTS ARE NOT BASED ON MR.

25   TOBEROFF'S PRACTICE OF LAW BUT BASED ON HIS SEPARATE BUSINESS

1    OF SECURING RIGHTS, PARTNERING UP WITH PEOPLE FOR THE

2    EXPLOITATION OF THOSE RIGHTS AND ACTING JUST LIKE ANY OTHER

3    COMMERCIAL ACTOR IN THE MARKETPLACE.  HE HAS A COMPANY CALLED

4    PACIFIC PICTURES.  IF YOU CHANGE THE NAME TO PARAMOUNT

5    PICTURES IT WOULD BE A GARDEN VARIETY --

6            THE COURT:  AND HE'D BE DELIGHTED AND PARAMOUNT

7    WOULD BE UPSET.

8            MR. PETROCELLI:  YES.  FOR SURE.

9            SO -- HE'S ALSO PUT AT ISSUE NOT ONLY HIS ROLE AS A

10   LAWYER BUT WHEN HE STARTED TO RENDER SERVICES AS A LAWYER AND

11   THE BLURRING OF THOSE TWO CAPACITIES.

12           AND, THEN, RELATED TO THAT, YOUR HONOR, IS THE

13   QUESTION OF WHETHER HE IS ACTUALLY -- BY VIRTUE OF THESE

14   RETAINER AGREEMENTS AND OWNER IN THE RIGHTS THEMSELVES, IF HE

15   HAS ACQUIRED SOME KIND OF INTEREST IN THE RIGHTS THAT THESE

16   HEIRS ARE SEEKING TO RECAPTURE, WHICH WOULD BE A VIOLATION OF

17   THE COPYRIGHT STATUTE FOR THE REASONS THAT I'VE PREVIOUSLY

18   EXPLAINED BECAUSE WE HAVE A PERIOD OF EXCLUSIVITY.

19           THE COURT:  THAT'S UNDER SECTION 304(D) --

20           MR. PETROCELLI:  (C)(6)(D).  CORRECT.

21           THE COURT:  OKAY.

22           MR. PETROCELLI:  AS WELL AS THE PUBLIC POLICY

23   ARGUMENT.

24           AND, AGAIN, THE ONLY -- THE ONLY DEFENSE OR

25   OBJECTION TO PRODUCING THE DOCUMENT THAT HAS BEEN ASSERTED IN

1    THE PAPERS IS ATTORNEY-CLIENT PRIVILEGE --

2            THE COURT:  YES.

3            MR. PETROCELLI:  -- AND WE SUGGEST THAT THAT WOULD

4    BE REDACTED IF IT EXISTS.  AND WE'D ASK YOUR HONOR TO TAKE A

5    LOOK AT THAT IN CAMERA.

6            AND, BY THE WAY, I SKIPPED THAT POINT ON THE

7    CONSENT AGREEMENTS BECAUSE MR. TOBEROFF ALSO STATES IN HIS

8    PAPERS THAT THE CONSENT AGREEMENT CONTAINS ATTORNEY-CLIENT

9    AND/OR WORK PRODUCT INFORMATION.  AND TO THE EXTENT THAT'S

10   CORRECT, WE SUBMIT THAT IT SHOULD HAVE BEEN REDACTED TO

11   EXCISE OUT SUCH INFORMATION.  OR YOUR HONOR CAN REVIEW IT IN

12   CAMERA TO SEE IF IT CONTAINS PRIVILEGED INFORMATION.  IF IT

13   DOES, THAT COULD BE REDACTED.

14           THE THIRD CATEGORY, YOUR HONOR, CONCERNS A SINGLE

15   DOCUMENT, WHICH IS A JULY 11, 2003 LETTER BETWEEN LAURA AND

16   MICHAEL SIEGEL.  AND THIS LETTER HAS BEEN INCLUDED ON THE

17   DEFENDANTS' PRIVILEGE LOG.  AND IT APPEARS THAT THE ONLY

18   REASON THAT IT WAS INCLUDED ON THE PRIVILEGE LOG WAS BECAUSE

19   THIS LETTER BETWEEN TWO NON-LAWYERS, LAURA AND MICHAEL

20   SIEGEL, WAS THEN CONVEYED OR FAXED OR OTHERWISE SENT TO MR.

21   TOBEROFF.  AND YOUR HONOR'S WELL AWARE OF THE LAW THAT THAT

22   DOESN'T MAKE AN UNDERLYING DOCUMENT PRIVILEGED.  AND THE

23   DEFENDANTS DO NOT CONTEST THAT LEGAL PRINCIPLE.

24           MOREOVER, YOUR HONOR, THEY WILL NOT DISCLOSE EVEN

25   IN OPPOSITION TO THIS MOTION THE BASIS ON WHICH THEY HAVE

1    CLAIMED PRIVILEGE OVER THAT DOCUMENT.  IN OTHER WORDS, THEY

2    WON'T CONFIRM OR DENY THAT THE REASON THAT THAT DOCUMENT

3    APPEARS ON THE PRIVILEGE LOG IS BY VIRTUE OF IT HAVING BEEN

4    SUBSEQUENTLY SENT TO MR. TOBEROFF.

5         WERE THEY TO CONFIRM THAT, I THINK THAT WOULD MAKE

6    IT QUITE CLEAR THAT IT'S NOT PRIVILEGED.  BUT THEIR PAPERS

7    ARE DELIBERATELY SILENT ON THE BASIS FOR THE PRIVILEGE

8    ASSERTION.

9         THEY REST THEIR ENTIRE ARGUMENT, YOUR HONOR, ONCE

10   AGAIN, ON JUDGE LARSON'S RULINGS IN THE SIEGEL CASE.  AND

11   THIS IS NOT ONE OF THE DOCUMENTS THAT JUDGE LARSON ORDERED TO

12   BE TURNED OVER.  AND I DON'T WANT TO TAKE US THROUGH THE

13   WHOLE HISTORY OF WHAT HAPPENED THERE.

14        BUT BECAUSE THIS WAS ON THE PRIVILEGE LOG IN THE

15   SIEGEL CASE, THIS WAS NOT ONE OF THE DOCUMENTS THAT THE JUDGE

16   ORDERED TO BE TURNED OVER.  THE JUDGE ORDERED TO BE TURNED

17   OVER THOSE DOCUMENTS ESSENTIALLY THAT WERE NOT ON THE

18   SIEGEL'S PRIVILEGE LOG AND THIS ONE WAS.

19        SO, HERE, HOWEVER, WE'RE CONTESTING THE INCLUSION

20   OF THIS DOCUMENT ON THE PRIVILEGE LOG, AN ISSUE THAT NEVER

21   WAS BEFORE JUDGE LARSON.

22        AND, MOREOVER -- AND LET'S JUST KEEP THIS IN MIND.

23   JUDGE LARSON'S RULINGS ON A LOT OF THESE ISSUES HAPPENED

24   AFTER THE CLOSE OF DISCOVERY.  AND HE WAS DEALING WITH THIS

25   ISSUE OF THE TOBEROFF TIME LINE WHICH SURFACED AFTER THE

1    CLOSE OF DISCOVERY AND DOING HIS BEST TO CONFINE HIS RULINGS

2    TO THOSE PARTICULAR ISSUES.  HE WAS NOT OPENING UP DISCOVERY

3    FOR ALL PURPOSES.  AND SO THESE ISSUES HAVE NOT BEEN FULLY

4    VENTILATED.  AND THEY'RE NOT LAW OF THE CASE, IN ANY EVENT,

5    WHICH IS THE DEFENDANTS' ONLY ARGUMENT, BECAUSE THAT'S A

6    DIFFERENT CASE.

7              AND WE BELIEVE THAT THIS DOCUMENT SHOULD BE TURNED

8    OVER TO US BECAUSE THERE'S BEEN NO EXPLANATION FOR THE

9    PRIVILEGE ASSERTION OR, AT THE MINIMUM, THE COURT SHOULD

10   REVIEW IT IN CAMERA.

11             NOW, RELATED TO THAT, YOUR HONOR, AND I'M NOW GOING

12   TO SKIP FROM CATEGORY 3 IN OUR MOTION TO CATEGORY 5 BECAUSE

13   THESE ARE RELATED TOPICS.

14             IN CATEGORY 5 IN OUR MOTION THERE ARE TWO OTHER

15   LETTERS BETWEEN THE SAME TWO PEOPLE.  THEY ARE HALF-SIBLINGS,

16   A LAURA SIEGEL AND MICHAEL SIEGEL.

17             THE COURT:  AND HE IS DECEASED, AS I UNDERSTAND.

18             MR. PETROCELLI:  HE DIED IN 2006.  AND LAURA IS

19   STILL ALIVE.  AND THE COURT MAY NOT BE AWARE OF THIS BUT JUST

20   TWO WEEKS AGO JOANNE SIEGEL DIED.

21             THE COURT:  YES.  NO, I SAW THE OBITUARY IN THE

22   PAPER --

23             MR. PETROCELLI:  OKAY.

24             THE COURT:  -- AND MR. TOBEROFF ALSO FILED A

25   STATEMENT.

1          MR. PETROCELLI:  OKAY.  NOW, THESE TWO DOCUMENTS

2     ARE TWO DOCUMENTS THAT ARE SPECIFICALLY IDENTIFIED IN WHAT WE

3     HAVE BEEN CALLING THE TOBEROFF TIME LINE.  IT USED TO BE

4     CALLED THE WHISTLE-BLOWER DOCUMENT, BUT WE'RE TRYING TO USE A

5     NEUTRAL TERM.  OKAY.  SO WE CALL IT THE TOBEROFF TIME LINE.

6     AND THESE TWO DOCUMENTS ARE SPECIFICALLY IDENTIFIED THERE,

7     YOUR HONOR.

8          AND THEY ARE NOT -- THEY HAVE NOT BEEN PRODUCED TO

9     US, AND MOST IMPORTANTLY, YOUR HONOR, THEY HAVE NOT BEEN

10    INCLUDED ON ANY PRIVILEGE LOG.  SO, THERE CAN'T BE A CLAIM OF

11    PRIVILEGE AND THERE ISN'T A CLAIM OF PRIVILEGE.

12         THE ONLY ARGUMENT THAT'S BEING MADE TO US IS THAT

13    THE TOBEROFF TIME LINE IS AN INHERENTLY UNTRUSTWORTHY AND

14    UNRELIABLE DOCUMENT, AND IT'S INAPPROPRIATE FOR US TO ASK FOR

15    THE DISCLOSURE OF EVIDENCE IDENTIFIED IN THAT DOCUMENT.  AND

16    THAT'S JUST ANOTHER REHASH OF THE HEARING THAT WE HAD SOME

17    TIME AGO WHERE THE DEFENDANTS SOUGHT TO BAR DISCOVERY

18    REGARDING THE TOBEROFF TIME LINE.  AND THAT MOTION OR THAT

19    REQUEST WAS DENIED.

20         MOREOVER, YOUR HONOR, MR. TOBEROFF WILL NOT CONFIRM

21    OR DENY WHETHER THESE DOCUMENTS EVEN EXIST.  SO, IF THESE TWO

22    DOCUMENTS DO NOT EXIST, THE MAY 13 AND JULY 5, 2003 LETTERS,

23    HE HAS NOT TOLD US THAT AND DECLINES TO TELL US THAT.  AND

24    BASED ON THAT, I HAVE TO INFER THAT THEY DO EXIST.  AND IF

25    THEY DO EXIST, THEY SHOULD BE PRODUCED.

1          THERE ARE -- I'M NOW GOING TO TURN TO CATEGORY 6.

2    WE CALL THESE THE DENNIS LARSON COMMUNICATIONS.  DENNIS WAS

3    MARRIED TO LAURA.  AND IN 2000 --

4          THE COURT:  AND HE WAS AN ATTORNEY AND REPRESENTED

5    HER.

6          MR. PETROCELLI:  CORRECT.  AND IN 2000, THEY GOT

7    SEPARATED AND DIVORCED.  AND WHEN WE FILLED -- WHEN WE SERVED

8    THESE DOCUMENT REQUESTS THAT ARE THE SUBJECT OF THIS MOTION,

9    THEY WERE INITIALLY GIVEN TO THE DEFENDANTS AS A COURTESY IN

10   DRAFT FORM IN JULY AND THEN FORMALLY SERVED IN AUGUST.  AND

11   THROUGH A WHOLE SERIES OF SUBSEQUENT HISTORY, WE ARE NOW HERE

12   ENFORCING CERTAIN PARTS OF THESE REQUESTS.

13         WHEN WE INITIALLY PREPARED A MOTION TO COMPEL, THAT

14   RESULTED IN A STIPULATION AND ORDER THAT ALL THE DOCUMENTS

15   THAT ARE THE SUBJECT OF THE MOTION WOULD BE PRODUCED EXCEPT

16   FOR THOSE AS TO WHICH THE DEFENDANTS WERE CLAIMING

17   ATTORNEY-CLIENT PRIVILEGE OR PRIVILEGES STEMMING FROM THE

18   MEDIATION.  ALL OTHER OBJECTIONS WERE WAIVED.  AND THAT'S THE

19   DECEMBER 7, 2010 STIPULATION AND COURT ORDER.  IT APPEARS AT

20   DOCKET 133 AND IT'S AT PAGE 9 OF OUR PAPERS.

21         A NUMBER OF THE DOCUMENT REQUESTS THAT THE

22   DEFENDANTS ARE ORDERED BY THEIR OWN STIPULATION TO PRODUCE IN

23   RESPONSE TO ARE 8, 9, 10, 11 AND 12, ALL OF WHICH SEEK TO

24   VARYING DEGREE DOCUMENTS RELATING TO THE "SUPERBOY" RIGHTS,

25   THE "SUPERMAN" RIGHTS, DOCUMENTS RELATING TO THE DISPOSITION

1    OF THE RIGHTS, THE DIVISION OF REVENUE, THE DIVISION OF

2    PROCEEDS AND SO FORTH.

3         AND THESE DENNIS LARSON DOCUMENTS ARE RESPONSIVE

4    AND HAVE NOT BEEN PRODUCED.  AND EVEN IN THE OPPOSITION

5    PAPERS MR. TOBEROFF SIMPLY MAKES THE POINT THAT HE OFFERED TO

6    PRODUCE THEM, AND THAT WE DECLINED TO ACCEPT HIS OFFER.  SO

7    THERE REALLY ISN'T ANY ARGUMENT THAT THESE SHOULD NOT BE

8    PRODUCED.  THERE'S NO CLAIM OF PRIVILEGE HERE.  SO ALL THOSE

9    DOCUMENTS NEED TO BE PRODUCED FORTHWITH.

10        MR. TOBEROFF HAD REQUESTED IN HIS MEET AND CONFER

11   CORRESPONDENCE THAT HE WANTED TO PRESERVE THE RIGHT TO SEEK A

12   PROTECTIVE ORDER WITH RESPECT TO THESE DOCUMENTS CLAIMING

13   THAT THEY MAY INVADE PRIVACY INTERESTS.

14        AS WE POINTED OUT, THAT YOU'RE NOT ABLE TO DO THAT

15   BECAUSE OF THE AGREEMENT WE REACHED THAT WAS EMBODIED IN THE

16   STIPULATION AND COURT ORDER THAT YOU'RE TO PRODUCE ALL

17   RESPONSIVE DOCUMENTS, SAVE FOR THOSE EXEMPTED BY THE

18   PRIVILEGE OR THE MEDIATION ISSUE.  SO IT'S NOW TOO LATE FOR

19   YOU TO BE BACKTRACKING ON THAT AND INDICATING YOU WANT TO

20   FILE A PROTECTIVE ORDER AND ASSERT PRIVACY RIGHTS AND SO

21   FORTH.

22        AND, SO, FOR THAT MATTER ON THAT BASIS, YOUR HONOR,

23   WE THINK THAT THESE DOCUMENTS HAVE TO BE PRODUCED.  THEY HAVE

24   NO TENABLE BASIS TO WITHHOLD PRODUCTION OF THEM.  AND THEY

25   COULD BE HIGHLY RELEVANT BECAUSE YOU HAVE TWO PARTIES, THAT

1    IS, THE FORMER SPOUSES FIGHTING WITH EACH ABOUT "SUPERMAN"

2    RELATED ISSUES.

3            THE COURT:  UNUSUAL IN DIVORCE PROCEEDINGS.

4            MR. PETROCELLI:  YES.  WELL AND SUCCINCTLY PUT,

5    YOUR HONOR.

6            OKAY.  NOW, THAT TAKES US TO THE LAST CATEGORIES,

7    WHICH I WILL ESSENTIALLY COMBINE IN MY DISCUSSION.  AND

8    THAT'S WHAT WAS PREVIOUSLY BRIEFED AS CATEGORY 3, THE ISSUE

9    OF THESE 250 MICHAEL SIEGEL DOCUMENTS IN THE FILES OF HIS

10   LAWYERS WHICH ARE NOW IN MR. TOBEROFF'S FILES HERE IN L.A.

11   AND THE LAST TOPIC WHICH HAS TO DO WITH THE PRIVILEGE LOG AND

12   THE INADEQUACY OF THE PRIVILEGE LOG AND OUR INABILITY TO

13   REALLY DECIPHER WHAT MAY BE DISCOVERABLE FROM WHAT MAY BE

14   TRULY PRIVILEGED AND NOT DISCOVERABLE.

15           THE PROBLEM THAT WE'RE HAVING, YOUR HONOR, IS

16   SIMPLY THAT THE PRIVILEGE LOG IS ABOUT AS BARE BONES AS ONE

17   COULD BE.  AND WE BELIEVE THAT IN ORDER TO DETERMINE WHETHER

18   THESE DOCUMENTS ARE PRIVILEGED, INCLUDING ALL THESE

19   COMMUNICATIONS WITH MR. SIEGEL.  THERE ARE 250 SUCH

20   COMMUNICATIONS WITH HIM OR HIS LAWYER, ALL BUT 15 OCCURRED

21   PRIOR TO MR. SIEGEL'S DEATH IN 2006.

22           SO, THERE WAS AN ARGUMENT MADE IN THE PAPERS THAT,

23   WELL, WHEN HE DIED, JOANNE AND LAURA SUCCEEDED TO HIS RIGHTS

24   AND, THEREFORE, THERE'S A COMMON AND JOINT INTEREST.  THAT

25   ONLY HAPPENED IN 2006.  AND THAT ONLY ENCOMPASSES AT MOST 15

1    OF THE 250 DOCUMENTS, LEAVING 235 DOCUMENTS OUT THERE THAT WE

2    BELIEVE MAY WELL NOT BE PRIVILEGED.

3            AND THE REASON WHY WE BELIEVE THAT IS BECAUSE THE

4    OHIO COURT IN THE SIEGEL CASE HAD AN OPPORTUNITY TO TEST --

5    TO DEAL WITH 15 DOCUMENTS, AS TO WHICH MR. TOBEROFF IN THE

6    SIEGEL CASE HAD CLAIMED WERE PRIVILEGED, AND THAT WE HAD

7    SUBPOENAED FROM THE FILES OF THIS OHIO LAWYER AFTER MICHAEL

8    SIEGEL'S DEATH.  HIS LAWYER'S NAME IS DON BULSON.

9            AND THE JUDGE REVIEWED THOSE 15 AND CONCLUDED THAT

10   THE PRIVILEGE OBJECTIONS WERE NOT VALID AND ORDERED THEM ALL

11   PRODUCED.  AND IF YOU LOOKED AT THOSE 15 DOCUMENTS YOU'LL SEE

12   THERE'S LOTS OF STUFF GOING BACK AND FORTH ARGUING ABOUT THE

13   VALUE OF THE RIGHTS.  MR. TOBEROFF IS INSISTING THE RIGHTS

14   HAVE VERY LITTLE VALUE AND SO FORTH.  AND THEY'RE HIGHLY

15   RELEVANT TO THE ISSUES THAT WE HAVE IN THIS CASE.

16           FOLLOWING THAT PROCEEDING, THE LAWYERS IN THE

17   SIEGEL CASE, AGAIN, PRIOR TO OUR INVOLVEMENT, WENT IN AND

18   ASKED FOR MORE DOCUMENTS FROM THE OHIO JUDGE AFTER HAVING

19   SEEN THAT 15 --

20           THE COURT:  AND HE SAID, NO, THEY DON'T PERTAIN TO

21   THE VALUATION ISSUES AND --

22           MR. PETROCELLI:  PRECISELY.  AND DISCOVERY -- AND

23   DISCOVERY HAD CLOSED.

24           THE COURT:  UH-HUH.

25           MR. PETROCELLI:  OKAY.  AGAIN, THE ARGUMENT THAT

1    WE'RE BEING CONFRONTED WITH IS LAW OF THE CASE.  WE DON'T

2    THINK THAT APPLIES.  AND I THINK THE WAY TO DEAL WITH THESE

3    250 DOCUMENTS IS THAT -- AND YOU CAN SEE THAT EVEN IN THE

4    OPPOSITION TO THIS MOTION, WE HAD IDENTIFIED ABOUT 11 OF THEM

5    THAT WE THOUGHT MIGHT BE PARTICULARLY IMPORTANT.  AND IT

6    TURNS OUT THAT THERE WERE ERRORS IN THE LOGGING WITH RESPECT

7    TO FIVE OF THOSE WHERE NOW MR. TOBEROFF HAS INDICATED THEY

8    ACTUALLY HAD BEEN PRODUCED AND THERE WERE TYPOS.

9            THE COURT:  WHERE THERE WERE TYPOS.  YEAH, I SAW

10   THAT IN A FOOTNOTE.

11           MR. PETROCELLI:  SO, IT SEEMS TO ME THAT THE

12   REASONABLE THING TO DO HERE IS THAT THE DEFENDANTS SHOULD BE

13   REQUIRED TO PREPARE A MUCH MORE SPECIFIC PRIVILEGE LOG.  AND,

14   OBVIOUSLY, WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE GANDER.

15   SO, THEREFORE, WHATEVER -- WHATEVER SPECIFICITY REQUIREMENTS

16   ARE IMPOSED ON DEFENDANTS BY ANY ORDER THIS COURT WOULD ISSUE

17   OBVIOUSLY WOULD EQUALLY APPLY TO THE OTHER SIDE IN THIS CASE,

18   NAMELY, US.

19           AND I MENTION THAT BECAUSE THERE'S BEEN AN ATTEMPT

20   TO DEFEND A REFUSAL TO PROVIDE MORE SPECIFICITY UNTIL AND

21   UNLESS WE AGREED TO PROVIDE MORE SPECIFICITY.  AND WHILE

22   WE'RE HAPPY TO AGREE IN THE ABSTRACT, NO DISCOVERY HAS BEEN

23   SERVED ON US YET.  AND THE ISSUE AS TO EXACTLY WHAT KIND OF

24   SUBJECT MATTER DESCRIPTIONS WE MIGHT INCLUDE ON OUR PRIVILEGE

25   LOG IS NOT REMOTELY RIPE.  AND SOME OF THE THINGS THAT WERE

1    BEING SUGGESTED TO US WERE CLEARLY INAPPROPRIATE.  AND WE

2    DON'T THINK THAT A PARTY CAN CONDITION HIS DISCOVERY

3    OBLIGATIONS ON OUR FULFILLING OURS SOMEDAY IN THE FUTURE WHEN

4    A DISCOVERY RESPONSE IS SERVED ON US.

5             THE COURT:  IT'S SORT OF HARD FOR MR. TOBEROFF TO

6    SERVE DISCOVERY WHEN HE'S TAKEN THE POSITION BEFORE JUDGE

7    WRIGHT THAT DISCOVERY IS AUTOMATICALLY STAYED BY THE SLAP

8    STATUTE.

9             MR. PETROCELLI:  YEAH.  SO, THAT'S -- BUT THAT'S A

10   TACTICAL CHOICE THAT THEY HAVE MADE.  AND I THINK I READ IN

11   THESE PAPERS THAT THEY INTEND TO PROMPTLY SERVE DISCOVERY IN

12   ANY EVENT.

13            BUT MY POINT -- MY POINT BEING HERE THAT I THINK

14   THE PRIVILEGE LOG, YOUR HONOR, AND I RECOGNIZE THAT YOU --

15   YOU BLESSED THE FORM OF THIS PRIVILEGE LOG IN THE SIEGEL

16   CASE, RELYING ON THE RUTTER GROUP.  AGAIN, DIFFERENT CASE,

17   DIFFERENT CIRCUMSTANCES.  WE HAVE HERE A REALLY PIVOTAL ISSUE

18   ABOUT THE ROLE OF MR. TOBEROFF, WHEN HE'S A LAWYER, WHEN HE'S

19   NOT A LAWYER.  BY HIS OWN ADMISSION, HE OPERATES IN BOTH

20   DOMAINS.

21            AND WE HAVE A VERY SWEEPING ASSERTION OF COMMON

22   INTEREST PRIVILEGES INVOLVING MICHAEL SIEGEL IN CIRCUMSTANCES

23   WHERE ONE JUDGE HAS ALREADY CONCLUDED 15 OUT OF 15 ASSERTIONS

24   WERE NOT VALID.  AND THEY WERE ANTAGONISTIC TO ONE ANOTHER IN

25   THOSE LETTERS THAT WERE ORDERED TO BE PRODUCED.

1              AND, SO, THE ONLY WAY THAT I THINK WE CAN SENSIBLY

2    PROCEED IS IF WE GET A PRIVILEGE LOG THAT SPECIFIES, FOR

3    EXAMPLE, WHO THE PRIMARY RECIPIENT IS, WHO THE SECONDARY

4    RECIPIENTS OR CC'S ARE, AND THAT IDENTIFIES A CHAIN OF

5    DOCUMENTS, WHERE THERE'S ATTACHMENTS OR EMAIL CHAINS,

6    SEPARATELY.

7              BECAUSE, FOR EXAMPLE, IF WE HAVE A LETTER BETWEEN

8    MICHAEL SIEGEL AND LAURA SIEGEL, THAT'S DOCUMENT NUMBER ONE

9    AND IT SHOULD BE SO IDENTIFIED.  IF THAT DOCUMENT IS THEN

10   TRANSMITTED TO MR. TOBEROFF, THAT'S DOCUMENT NUMBER TWO, A

11   TRANSMITTAL OF THAT FIRST DOCUMENT TO MR. TOBEROFF WITH A FAX

12   COVER SHEET OR SOME KIND OF TRANSMITTAL.  THIS PRIVILEGE LOG

13   IS LUMPING EVERYTHING IN THERE.  AND IF IT'S NOT, WE CAN'T

14   TELL.  WE JUST CAN'T MAKE HEADS OR TAILS.  IT'S THE LEAST

15   INFORMATIVE PRIVILEGE LOG YOU COULD POSSIBLY PUT TOGETHER.

16             LET ME HIGHLIGHT THE ISSUE WITH RESPECT TO THIS

17   FELLOW WHO'S THE ALLEGED AUTHOR OF THE TIME LINE.  HIS NAME

18   IS DAVID MICHAELS WE NOW KNOW FROM INTERROGATORY ANSWERS.

19             AND DAVID MICHAELS QUIT MR. TOBEROFF'S EMPLOYMENT

20   IN OCTOBER AND SOMETIME THEREAFTER REACHED OUT AND WROTE TO

21   MS. SIEGEL.  NO SUCH COMMUNICATIONS APPEAR ON THE SIEGEL'S

22   PRIVILEGE LOG THAT ARE BEFORE THE COURT IN THIS MOTION.  WE

23   WERE PREPARING THIS MOTION WITHOUT KNOWLEDGE OF THOSE

24   COMMUNICATIONS.

25             THEN, YOUR HONOR, WHILE WE WERE PREPARING THIS

1    MOTION, WE HAD SERVED ANOTHER SET OF DISCOVERY REQUESTS THIS

2    TIME ON THE TOBEROFF DEFENDANTS.  AND WE GET THEIR

3    INTERROGATORY ANSWERS AND WE GET A PRIVILEGE LOG FROM THE

4    TOBEROFF DEFENDANTS.  AND ON THE PRIVILEGE LOG AND IN THE

5    INTERROGATORY ANSWERS, WE LEARN ABOUT THESE COMMUNICATIONS

6    FROM MR. MICHAELS TO THE SIEGELS AFTER MICHAELS LEFT MR.

7    TOBEROFF'S EMPLOYMENT ALLEGEDLY TRYING TO STEAL THE CLIENT

8    AWAY.

9         AND MR. TOBEROFF IS CLAIMING THOSE DOCUMENTS ARE

10   PRIVILEGED NOW ON HIS PRIVILEGE LOG, WHICH IS GOING TO BE THE

11   SUBJECT OF AN UPCOMING MOTION.  THAT ISSUE IS NOT YET BEFORE

12   THE COURT.  WE'RE NOT ASKING THE COURT TODAY TO ORDER THOSE

13   MICHAELS COMMUNICATIONS.

14        MY POINT IS THIS, THEY ARE NOT ON THE SIEGEL'S

15   PRIVILEGE LOG.  AND WE ARE CONFRONTED WITH JUST THIS

16   INDECIPHERABLE SET OF ENTRIES ON THESE LOGS.  AND WITHOUT

17   MORE INFORMATION, YOUR HONOR, I BELIEVE THAT RELEVANT,

18   DISCOVERABLE EVIDENCE IS NOT BEING DISCLOSED.  AND THE ONLY

19   WAY THAT WE CAN TEST THAT IS TO GET MORE INFORMATION.  AND

20   THERE'S NO NINTH CIRCUIT CASE OR OTHER CASE THAT SAYS THAT

21   THERE'S A LIMIT ON HOW MUCH INFORMATION IS NECESSARY IN A

22   PRIVILEGE LOG AS SUGGESTED BY THE DEFENDANTS.

23        AND WE HAVE NINTH CIRCUIT CASES THAT REQUIRE

24   DETAILED INFORMATION ON PRIVILEGE LOGS.  AND I SUGGEST COMMON

25   SENSE DICTATES THAT IT DEPENDS ON THE CIRCUMSTANCES OF THE

1    CASE.  IN A ROUTINE CASE PERHAPS A VERY SIMPLISTIC LOG MIGHT

2    SUFFICE.  AND WE SUGGEST THAT IN THIS CASE WE NEED A MORE

3    COMPREHENSIVE LOG UNDERSTANDING THE SAME RULES ARE GOING TO

4    BE APPLIED TO US AS WELL.  SO, NO ONE IS GOING TO BE GETTING

5    AN ADVANTAGE HERE.

6          BUT WE DO THINK THESE ATTACHMENTS AND THESE

7    SEPARATE EMAILS NEED TO BE SEPARATELY BROKEN OUT.  WE DO

8    THINK THE CC'S NEED TO BE BROKEN OUT FROM THE PRIMARY

9    AUTHORS, FROM THE BCC'S.  AND WE DO THINK THERE HAS TO BE

10   SOME REASONABLE SPECIFICATION OF SUBJECT MATTER SO THAT WE

11   CAN GET OUR ARMS AROUND WHAT TO CHALLENGE.

12         AND WITH THAT, YOUR HONOR, I THINK I'LL RESERVE

13   TIME TO RESPOND IF YOUR HONOR HAS ANY FURTHER QUESTIONS.

14         THE COURT:  I JUST HAD ONE QUICK QUESTION, MR.

15   PETROCELLI.

16         ON THE COPYRIGHT STATUTE, THE SECTION 304 AND

17   YOU'LL GIVE ME THE -- THE ONE THAT ENDS WITH SUBSECTION (D).

18         MR. PETROCELLI:  304(C)(6)(D).

19         THE COURT:  (C)(6)(D).  IS THE WINNIE THE POOH CASE

20   THE LATEST NINTH CIRCUIT AUTHORITY ON THAT?

21         MR. PETROCELLI:  CORRECT.  THE ONLY NINTH CIRCUIT

22   AUTHORITY IS THE MILNE CASE, YOUR HONOR.  AND YOUR HONOR SAW

23   THAT THE MILNE CASE HELD THAT THIS PROVISION IS --

24         THE COURT:  NO, I READ IT.

25         MR. PETROCELLI:  OKAY.

1          THE COURT:  I JUST WANTED TO MAKE SURE I HAD THE

2  LATEST.

3          MR. PETROCELLI:  OKAY.  AND THE COUNTER AUTHORITY

4  CITED BY THE OTHER SIDE IS THE DISTRICT COURT CASE IN BOURNE

5  WHICH HAD TO DO WITH WHETHER YOU COULD ASSERT A DIRECT

6  DAMAGES CLAIM UNDER THE STATUTE.

7          WE DON'T HAVE A DIRECT DAMAGES CLAIM IN THIS CASE.

8  WE ONLY HAVE A DECLARATORY RELIEF CLAIM IN OUR THIRD CLAIM

9  FOR RELIEF THAT THESE -- THIS CONSENT AGREEMENT AND THESE

10  OTHER ARRANGEMENTS VIOLATE OUR RIGHTS.  THERE'S NO DAMAGE

11  CLAIM.  THE DAMAGE CLAIM THAT WE HAVE ARE TORT CLAIMS UNDER

12  TORT LAW FOR INTERFERENCE.  THEY ARE NOT A DAMAGE CLAIM UNDER

13  THE COPYRIGHT STATUTE.

14          THE COURT:  THAT'S AN INTERESTING STATUTE AS YOU

15  TRY AND WRESTLE WITH IT INTELLECTUALLY.  BUT I DON'T THINK

16  THAT PART IS BEFORE ME.

17          MR. PETROCELLI:  THANK YOU, YOUR HONOR.

18          THE COURT:  ALL RIGHT.  THANK YOU.

19          MR. TOBEROFF, SOMETHING TELLS ME YOU HAVE A FEW

20  THINGS TO TELL ME.

21          MR. TOBEROFF:  I DO, YOUR HONOR.  THERE HAVE BEEN

22  NUMEROUS MISSTATEMENT OF THE RECORD, BOTH IN THE PAPERS AND

23  IN MR. PETROCELLI'S ORAL ARGUMENT.  I MAY MISS SOME OF THEM

24  IN MY ORAL ARGUMENT, BUT I'LL ATTEMPT TO GO THROUGH IT ALL.

25          FIRSTLY, ON THE -- LET'S JUST CLEAR SOMETHING UP,

1    ALTHOUGH I DON'T KNOW IF IT'S THE MOST IMPORTANT ISSUE HERE,

2    IS A SUBSTANTIVE ISSUE THAT AN AGREEMENT BETWEEN -- AND I'M

3    NOT DISCLOSING ANYTHING MORE THAN DEFENDANTS HAVE DISCLOSED

4    IN THEIR COMPLAINT IN VIOLATION OF THE JAMS CONFIDENTIALITY

5    AGREEMENT -- BUT AN AGREEMENT IN ANTICIPATION OF A SETTLEMENT

6    THAT TWO PARTIES WHICH ARE BASICALLY THE HEIRS TO THE

7    COAUTHORS OF THE SAME COPYRIGHT AGREE THAT THEY DON'T WANT TO

8    -- THAT THEY WANT TO NEGOTIATE COLLECTIVELY SETTLEMENT AND

9    ARE NOT TO BE PLAYED OFF ONE ANOTHER.

10        THAT KIND OF AGREEMENT SPECIFICALLY FOR THE

11    PURPOSES OF SETTLEMENT MEDIATION, UNDER THE PLAIN LANGUAGE OF

12    SECTION 304(C)(6)(D), IT'S NOT VIOLATIVE OF THAT.

13    304(C)(6)(D) SIMPLY SAYS THAT YOU CANNOT TRANSFER TO A THIRD

14    PARTY RIGHTS -- IN YOUR TERMINATED COPYRIGHT INTEREST TO A

15    THIRD PARTY PRIOR TO THE EFFECTIVE DATE OF A TERMINATION.

16    BUT PRIOR TO THE EFFECTIVE DATE YOU COULD TRANSFER TO THE

17    TERMINATED GRANTEE.

18        THERE'S BEEN NO TRANSFER HERE, AND --

19        THE COURT:  DOESN'T IT ALSO SAY YOU CAN'T MAKE AN

20    AGREEMENT TO TRANSFER IN THE FUTURE PRIOR TO THE TERMINATION.

21        MR. TOBEROFF:  RIGHT.  RIGHT.  AND THERE'S NO

22    AGREEMENT --

23        THE COURT:  I MEAN, YOU COULDN'T HAVE AN OPTION OR

24    SOMETHING LIKE THAT.

25        MR. TOBEROFF:  THAT'S CORRECT.

1          BUT THERE'S NO -- THERE'S NEVER BEEN ANY ALLEGATION

2     NOR IS THERE ANY AGREEMENT TRANSFERRING RIGHTS FROM THE

3     SIEGELS TO THE SHUSTERS, THE SHUSTERS TO THE SIEGELS NOR TO

4     ME.  NOR IS THERE ANY --

5          THE COURT:  I THINK THEY WOULD SAY HOW DO WE KNOW

6     THAT WITHOUT SEEING THE AGREEMENT.

7          MR. TOBEROFF:  THEY MIGHT SAY THAT, YOUR HONOR, BUT

8     THERE'S NEVER BEEN ANY ALLEGATION ON THEIR PART.  AND THAT

9     BRINGS ME TO THE NEXT STEP.  THERE'S NOTHING VIOLATIVE ABOUT

10    THIS AGREEMENT.

11         MORE IMPORTANTLY, THE STATUTE --

12         THE COURT:  YOU KNOW, THIS IS SORT OF WHAT I WAS

13    OBLIQUELY ADVERTING TO WHEN I ASKED MR. PETROCELLI AT THE END

14    OF HIS ARGUMENT.  I MEAN, I'M NOT AN EXPERT ON THESE ISSUES

15    THE WAY YOU FOLKS ARE, BUT IT WOULD SEEM TO ME THERE IS A

16    RANGE OF CONDUCT, SOME OF WHICH MIGHT BE PERMISSIBLE AND SOME

17    OF WHICH MIGHT NOT.

18         I MEAN, ONE PARTY MIGHT SAY TO THE PARTY SEEKING TO

19    RECAPTURE THE COPYRIGHT -- YOU KNOW, I CAN'T NEGOTIATE WITH

20    YOU NOW BECAUSE YOU CAN ONLY NEGOTIATE WITH THE PARTY WHO

21    PRESENTLY HOLDS THE COPYRIGHT.  BUT, YOU KNOW, WHEN THE TIME

22    COMES, I'M JUST LETTING YOU KNOW I'LL BE AROUND.  AND IT GOES

23    ALL THE WAY FROM THAT TO AN OPTION, WHICH, AS I SAY, IT SEEMS

24    TO ME WOULD BE IN VIOLATION OF THE CONTRACT.  BUT THAT'S NOT,

25    AT LEAST PRESENTLY, BEFORE ME.

1          MR. TOBEROFF:  RIGHT.

2          SO, THE WHOLE PREMISE FOR THEIR TRUMPED-UP CAUSES

3    OF ACTION THAT HAVE NO BASIS AS A MATTER OF LAW ARE

4    AGREEMENTS THAT DO NOT EXIST.  AND THAT WHICH THEY ALLEGE IN

5    THE COMPLAINT IS NOT VIOLATIVE OF THE COPYRIGHT ACT AND

6    CERTAINLY NOT UNLAWFUL.  NOR DOES IT REFLECT SO-CALLED BACK

7    ROOM DEALINGS OR ANYTHING ELSE INSIDIOUS.

8          THE COURT:  CAN I ASK YOU THIS, MR. TOBEROFF, AND

9    I'M NOT ASKING YOU TO RESPOND IF YOU FEEL YOU CANNOT.

10          HOW LONG IS THIS AGREEMENT?  HOW MANY PAGES?

11          MR. TOBEROFF:  I THINK IT'S A COUPLE OF PAGES.  I

12    DON'T REMEMBER THE EXACT NUMBER OF PAGES IN THE AGREEMENT.

13          THE COURT:  OKAY.

14          GO AHEAD.

15          MR. TOBEROFF:  THE NEXT ISSUE IS THAT THIS CONSENT

16    AGREEMENT WAS ENTERED INTO SPECIFICALLY FOR PURPOSES OF A

17    COURT-ORDERED SETTLEMENT MEDIATION.  IT CONTAINS THE PARTIES'

18    SETTLEMENT STRATEGIES COMMUNICATED THROUGH ME.  AND IT

19    CONTAINS THEIR THOUGHT PROCESSES, THEIR MOTIVES.  IT'S

20    PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE, THE WORK-PRODUCT

21    DOCTRINE AND THE JOINT INTEREST PRIVILEGE -- OR JOINT CLIENT

22    PRIVILEGE.

23          IT'S COVERED BY PARAGRAPH 5.  THERE'S NO WAY AROUND

24    THAT.  PARAGRAPH 5 IS EXTREMELY EXPLICIT.  AND THE OTHER

25    ERRONEOUS SORT OF UNDERLYING ASSUMPTION OF MR. PETROCELLI'S

1   ARGUMENT IS THAT PARAGRAPH 5 SEEKS TO TRUMP OR SUPERSEDE OR

2   THWART FEDERAL LAW.  IT DOES NO SUCH THING.

3        PARTIES ARE ABLE TO CONTRACTUALLY AGREE AMONG

4   THEMSELVES TO PROVISIONS THAT ARE -- OBLIGATE THEM IN WAYS

5   THAT THE DEFAULT PROVISIONS -- THE MEDIATION PRIVILEGE IS A

6   DEFAULT PROVISION.  YOU DON'T NEED AN AGREEMENT TO HAVE THAT

7   MEDIATION PRIVILEGE.  IN FACT, THERE WOULD BE NO REASON TO

8   ENTER INTO AND NEGOTIATE A SPECIFIC PROVISION LIKE PARAGRAPH

9   5 IF YOU'RE SIMPLY RELYING ON THE GENERAL MEDIATION

10  PRIVILEGE.

11       YOU ENTER INTO AN AGREEMENT LIKE THAT BECAUSE YOU

12  WANT TO SUPPLEMENT.  IT'S NOT SUPERSEDING OR THWARTING.  IT'S

13  SUPPLEMENTING THE DEFAULT PROVISIONS THAT ALREADY EXIST UNDER

14  THE LAW.  AND PARAGRAPH 5 EXPLICITLY SAYS -- AND I'LL READ

15  FROM IT.

16       THE COURT:  YOU DON'T NEED TO READ FROM IT.

17       MR. TOBEROFF:  OKAY.  WELL, IT EXPLICITLY SAYS THAT

18  CONFIDENTIAL SETTLEMENT INFORMATION CANNOT BE USED IN ANY WAY

19  IN ANY PROCEEDING BY EITHER PARTY.  THIS WAS A NEGOTIATED

20  PRIVILEGE.  IT WENT BACK AND FORTH BETWEEN DC'S COUNSEL AND

21  ME.  AND WE AGREED TO THIS PROVISION.  IT'S CLEAR AS A BELL

22  AS TO WHAT IT SAYS.

23       THE LETTERS, WHICH THEY HAVE NOW DISCLOSED TO THE

24  COURT AND ARE USING IN THIS LITIGATION IN BLATANT VIOLATION

25  OF PARAGRAPH 5, WERE LABELED CONFIDENTIAL SETTLE- -- WERE

1    LABELED SO THAT THEY WOULD BECOME CONFIDENTIAL SETTLEMENT

2    INFORMATION.  IT SAYS:

3            "CONFIDENTIAL" -- I FORGET WHAT THE HEADING WAS

4    ON IT -- "FOR SETTLEMENT PURPOSES ONLY."

5            BECAUSE PARAGRAPH 5 SAYS:

6            "ANY DOCUMENT THAT IS MARKED CONFIDENTIAL FOR

7            SETTLEMENT PURPOSES ONLY SHALL BE CONSIDERED

8            CONFIDENTIAL SETTLEMENT INFORMATION."

9            SO, THOSE DOCUMENTS ARE CLEARLY COVERED, AND THEY

10   JUST BLATANTLY ATTACHED THEM TO THEIR COMPLAINT AND VIOLATED

11   THE AGREEMENT.

12           THE COURT:  I THINK THE LETTERS ARE NOT THE CORE

13   ISSUE HERE.  I THINK THE CORE ISSUE IS THE AGREEMENT.

14           MR. TOBEROFF:  RIGHT.  BUT THE LETTERS ARE

15   CONSIDERED CONFIDENTIAL SETTLEMENT INFORMATION USING AND

16   MAKING ALLEGATIONS THAT THE PARTIES HAVE ENTERED INTO A

17   COLLECTIVE AGREEMENT IN WHICH THEY CAN'T MAKE DEALS REGARDING

18   THE RIGHTS WITHOUT THE APPROVAL OF ONE ANOTHER, WHICH IS THE

19   ALLEGATION IN THEIR COMPLAINT IS DISCLOSING WHAT IS STATED IN

20   THE LETTERS.

21           NOW, MR. PETROCELLI -- THE ARGUMENT IS SPECIOUS

22   THAT WE QUOTED FROM THE LETTER AND WE, THEREFORE, WAIVED OUR

23   RIGHTS.  THE PART THAT HE LEAVES OUT IS THAT THE PART WE

24   QUOTED FROM THE LETTER IS THE PART THAT SAYS THIS LETTER IS

25   COVERED BY THE JAMS CONFIDENTIALITY AGREEMENT, WHICH IS THE

1    FIRST SENTENCE IN THE LETTER.  THAT'S THE ONLY PORTION OF THE

2    LETTER THAT WAS QUOTED.

3            YOU, ALSO, CAN'T CLAIM THAT A PARTY WAIVES THEIR

4    RIGHTS WHEN YOU OPEN THE DOOR -- THE WAIVER OF RIGHTS ARE

5    OPENING THE DOOR REALLY COMES WHEN YOU SUE SOMEBODY ON THE

6    BASIS OF AN ISSUE LIKE THAT.  AND IN THE PROCESS OF SUING

7    SOMEBODY THEY NEED TO DEFEND THEMSELVES.

8            HERE WE NEEDED TO DEFEND OURSELVES BECAUSE OF THE

9    ERRONEOUS ACCUSATIONS THEY WERE MAKING.  AND IN DEFENDING

10   OURSELVES WE DISCUSSED IT AT THE SAME LEVEL OF GENERALITY AS

11   THEY DID IN THEIR COMPLAINT.  SO, THERE'S BEEN NO WAIVER

12   WHATSOEVER.  AND IT'S VERY MISLEADING FOR MR. PETROCELLI TO

13   STAND THERE AND TELL YOUR HONOR THAT WE QUOTED FROM THE

14   LETTER WHEN THE SOLE PORTION WE QUOTED WAS THE STATEMENT

15   SAYING:

16            "THIS LETTER IS COVERED FROM THE JAMS

17            CONFIDENTIALITY AGREEMENT."

18            I DON'T KNOW HOW PARTIES CAN SIGN AN AGREEMENT LIKE

19   THAT, THAT CONFIDENTIALITY AGREEMENT, SPECIFICALLY NEGOTIATE

20   PARAGRAPH 5 AND BE ALLOWED TO BLATANTLY VIOLATE THE

21   AGREEMENT.  IT'S SO -- I MEAN, IT'S SO BLATANT TO THE POINT

22   OF BEING OUTRAGEOUS.  AND I DON'T SEE HOW IT'S POSSIBLE FOR A

23   PARTY IN THE CASE TO BE ALLOWED TO DO THAT.

24            THIS ISSUE -- ANOTHER PLACE WHERE I BELIEVE COUNSEL

25   HAS BEEN MISLEADING IS TO SAY THAT THIS ISSUE WASN'T

1    LITIGATED PREVIOUSLY.  THEY MADE A SPECIFIC MOTION TO COMPEL

2    IN FRONT OF JUDGE LARSON TO COMPEL THE CONSENT AGREEMENT.

3    THEY ARGUED --

4            THE COURT:  MR. TOBEROFF, I READ THAT, AND I READ

5    THE COLLOQUY WITH JUDGE LARSON.

6            MR. TOBEROFF:  RIGHT.

7            THEY ARGUED IN THEIR MOTION AND NOW -- JUDGE LARSON

8    NEED NOT GO INTO EVERY DETAIL OF THEIR MOTION.  WHAT'S ON THE

9    RECORD IS THEIR MOTION.  AND THEIR MOTION ARGUES THE EXACT

10   SAME THING AS THIS MOTION.  THE EXACT SAME THING -- THAT YOU

11   CAN'T SHROUD A DOCUMENT IN SECRECY MERELY BY DISCLOSING IT.

12   YOU CAN'T SUPPRESS EVIDENCE.  THEY MADE ALL THE EXACT SAME

13   ARGUMENTS.

14           WE SAID TO JUDGE LARSON THAT THE DOCUMENT IS

15   PROTECTED BY THE CONFIDENTIALITY AGREEMENT.  THAT THE

16   DOCUMENT IS OTHERWISE PROTECTED BY THE ATTORNEY-CLIENT

17   PRIVILEGE, JOINT INTEREST PRIVILEGE, WORK-PRODUCT DOCTRINE.

18   JUDGE LARSON DENIED THE MOTION.  THIS HAS ALREADY BEEN HEARD.

19   AND THEY THEN PROCEEDED TO BRING THE EXACT SAME CLAIM HERE.

20           NOW, THEY SAID, "WHAT'S GOOD FOR THE GOOSE IS GOOD

21   FOR THE GANDER."

22           WE WERE IN THIS COURT PREVIOUSLY REGARDING THE TIME

23   LINE DOCUMENTS, AND JUDGE LARSON'S ORDERING THE RELEASE OF

24   THE ANONYMOUS -- WHAT THEY CALL "THE TIME LINE LETTER."  AND

25   I BELIEVE YOUR HONOR SAID THAT YOU ARE GOING -- NOT GOING TO

1    OPINE ON THIS ISSUE WHETHER YOU AGREE WITH IT OR NOT.  BUT

2    THE PARTIES ARE TRYING TO GET YOU TO OPINE ON THE ISSUE, BUT

3    YOU WOULD BE RESPECTING JUDGE LARSON'S DECISION.

4           I WOULD SAY THE SAME THING HAPPENS HERE.  IT'S NOT

5    TRUE THAT THE LAW OF THE CASE DOCTRINE ONLY APPLIES TO THE

6    EXACT SAME CASE.  THESE CASES ARE VERY CLOSELY RELATED, AND

7    WE'VE CITED A COUPLE OF NINTH CIRCUIT CASES AND OTHER CIRCUIT

8    CASES SAYING THAT THE LAW OF THE CASE DOCTRINE APPLIES TO

9    CLOSELY RELATED CASES.

10           ONE OF THE CASES WE'VE CITED WAS --

11           THE COURT:  THE DISIMONE CASE.

12           MR. TOBEROFF:  DISIMONE CASE.  THERE ARE OTHERS.

13           THE COURT:  NOW, THE LAW OF THE CASE IS A DOCTRINE

14    OF DISCRETION, RIGHT, NOT A DOCTRINE OF COMPULSION?

15           MR. TOBEROFF:  YES, YOUR HONOR.

16           THE COURT:  ALL RIGHT.  I MEAN, A COURT CAN CHANGE

17    ITS MIND UNTIL FINAL JUDGMENT?

18           MR. TOBEROFF:  THAT'S TRUE, YOUR HONOR.

19           THE COURT:  OKAY.

20           MR. TOBEROFF:  BUT ESSENTIALLY I DON'T BELIEVE THAT

21    THEY SHOULD BE ALLOWED TO RELITIGATE ALL RULINGS AGAINST THEM

22    IN THE SIEGEL CASE BY TRUMPING-UP A NEW CASE, WHICH THEY'VE

23    DONE HERE, AND THEN MAKING THE SAME ALLEGATIONS AND TRYING TO

24    RELITIGATE EVERYTHING THEY LOST IN THE PRIOR CASE.  SO I

25    THINK THE POLICIES FOR APPLYING LAW OF THE CASE WEIGH HEAVILY

1    IN FAVOR OF NOT REOPENING THESE ISSUES.

2            AND, ALSO, EVEN THOUGH IT'S DISCRETIONARY, I THINK

3    IT SHOULD BE APPLIED EQUALLY.  IN OTHER WORDS, THEY ARGUE LAW

4    OF THE CASE WHEN IT'S IN THEIR FAVOR AND IT'S APPLIED.  AND

5    WHEN IT'S NOT IN THEIR FAVOR, THEY ARGUE IT'S NOT LAW OF THE

6    CASE.  IT'S -- IT'S PUSHING IT.

7            IN THE SIEGEL CASE, THE PARTIES HAD AN AGREEMENT, A

8    STANDING AGREEMENT THAT POST-LITIGATION DOCUMENTS NEED NOT BE

9    LOGGED.  THESE WEREN'T LOGGED IN THE SIEGEL CASE.  THE

10   CONSENT AGREEMENT WAS LOGGED HOWEVER IN THIS CASE WHERE WE

11   HAVE NO SUCH AGREEMENT.

12           THE NEXT ISSUE, YOUR HONOR, THE SECOND ISSUE IS THE

13   ISSUE OF THE RETAINER AGREEMENTS.  IT'S NOT TRUE THAT THE

14   COURTS HAVE SAID RETAINER AGREEMENTS ARE UP FOR GRABS AND YOU

15   CAN OBTAIN RETAINER AGREEMENTS.  THE COURTS HAVE MERELY SAID

16   THAT THE FEE ARRANGEMENT IS NOT PROTECTED.  OTHERWISE, THERE

17   HAVE BEEN NUMEROUS CASES WHERE ANOTHER SIDE HAS SOUGHT

18   PRODUCTION OF A RETAINER AGREEMENT, AND THE COURTS HAVE FOUND

19   THAT IT'S AN IMPROPER INTRUSION INTO THE ATTORNEY-CLIENT

20   RELATIONSHIP.

21           THEIR CLAIM HERE, WELL, THIS CASE IS DIFFERENT

22   BECAUSE WE'RE FOCUSING ON MR. TOBEROFF.  THEY'VE SET UP --

23   THE PROBLEM HAS NOW BECOME THE EXCUSE.  THE PROBLEM IS THAT

24   THIS CASE IS AN ATTEMPT TO AFTER I'VE BEEN LITIGATING THE

25   SIEGEL CASE -- NOW WE'RE IN OUR SEVENTH YEAR.  I'VE BEEN

1    OPPOSING COUNSEL FOR THE SEVENTH YEAR.  THE BUSINESS

2    ARRANGEMENTS --

3            THE COURT:  IT SEEMS MUCH LONGER, MR. TOBEROFF.

4            MR. TOBEROFF:  THE BUSINESS --

5            THE COURT:  GO AHEAD.

6            MR. TOBEROFF:  THE BUSINESS ARRANGEMENTS THAT THEY

7    REFER TO, THERE WAS FULL DISCLOSURE OF THOSE BUSINESS

8    ARRANGEMENTS WHICH WERE -- WHICH WERE IN 2001 TO 2003.

9            IN THE SIEGEL CASE, THOSE AGREEMENTS, WHICH IS AN

10   IP WORLD-WIDE AGREEMENT AND A PACIFIC PICTURES AGREEMENT,

11   THOSE AGREEMENTS WERE VOLUNTARILY PRODUCED.  ALL --

12           THE COURT:  AND THOSE ARE IN THE RECORD HERE.

13           MR. TOBEROFF:  AND THEY WERE -- AND THE DOCUMENTS

14   RELATED TO THOSE AGREEMENTS WERE VOLUNTARILY PRODUCED BECAUSE

15   THEY ISSUED DISCOVERY REQUESTS PERTAINING TO THOSE

16   AGREEMENTS.  THEY ALSO TOOK DEPOSITIONS PERTAINING TO THOSE

17   AGREEMENTS OF ME, OF THE SIEGELS, OF THE SHUSTERS, OF A

18   GENTLEMAN BY THE NAME OF ARI EMANUEL WHO WAS INVOLVED IN IP

19   WORLDWIDE.  SO, THEY HAD FULL OPPORTUNITY TO DEAL WITH THIS

20   IN THE OTHER CASE.

21           WHAT THEY'VE DONE NOW, BECAUSE WE WERE SUCCESSFUL

22   IN THE OTHER CASE, THEY SEEK TO NOW INTER- -- AMONG OTHER

23   THINGS, THEY WANT TO INCREASE THEIR LEVERAGE IN SETTLEMENT

24   NEGOTIATIONS BY HAVING ME HEMORRHAGE MONEY -- BY NOW I'M

25   HAVING TO HIRE COUNSEL TO DEFEND MYSELF -- AND ALSO INTERFERE

1    WITH THE SIEGEL'S RIGHT TO COUNSEL BY INTERFERING WITH THAT

2    ATTORNEY-CLIENT RELATIONSHIP.

3         SO JUST BECAUSE THEY'VE DECLARED OPEN SEASON ON ME

4    IN THIS UNSEEMLY FASHION DOESN'T MEAN THAT THAT IS NOW THE

5    EXCUSE TO OBTAIN RETAINER AGREEMENTS AND TO INTRUDE UPON THE

6    ATTORNEY-CLIENT RELATIONSHIP.

7         GOING TO THE NEXT ISSUE, THE ISSUE OF THE --

8         THE COURT:  EXCUSE ME, MR. TOBEROFF.

9         MR. TOBEROFF:  SURE.

10        THE COURT:  LET ME JUST ASK YOU ONE THING ON THE

11    RETAINER AGREEMENTS.

12        IS THERE MORE THAN ONE RETAINER AGREEMENT?

13        MR. TOBEROFF:  THERE'S A RETAINER -- WELL, ONLY ONE

14    RETAINER AGREEMENT WITH THE SIEGELS AND ONE RETAINER

15    AGREEMENT WITH THE SHUSTERS.

16        AND, BY THE WAY, THOSE AGREEMENTS IN 2000- -- THE

17    2002 AGREEMENT, THE IP WORLDWIDE AGREEMENT, THOSE -- THAT

18    AGREEMENT EXPIRED UNDER ITS OLD TERMS AND THEY ARE AWARE OF

19    THAT.  MR. PETROCELLI SAID HE'S NOT.  THEY ARE AWARE OF THAT

20    BECAUSE THEY HAVE THE COPIES OF THOSE AGREEMENTS.

21        THE PACIFIC PICTURES AGREEMENTS WERE CANCELLED A

22    LONG TIME AGO.  THEY'RE ALSO AWARE OF THAT BECAUSE THEY HAVE

23    THOSE AGREEMENTS.  PACIFIC PICTURES NO LONGER EXISTS.  AND IP

24    WORLDWIDE IS A TOTALLY INACTIVE COMPANY.

25        AND I'VE BEEN FUNCTIONING UNDER THESE TWO RETAINER

1    AGREEMENTS FOR OVER SIX YEARS AS OPPOSING COUNSEL IN THIS

2    CASE.  AND I'VE DISCLOSED TO THEM THAT -- I DISCLOSED TO THEM

3    THAT I HAVE A CONTINGENT FEE AGREEMENT.  AND I HAVE NO -- NO

4    PART OF ANY RIGHTS.  WE'VE SAID THAT IN ANSWER TO, I BELIEVE,

5    OUR INTERROGATORY REQUESTS AND WE'VE REPEATED THAT IN OUR

6    BRIEFS.

7            THE COURT:  GO AHEAD.

8            (PAUSE IN PROCEEDINGS.)

9            MR. TOBEROFF:  GOING TO THE PRIVILEGE LOG ISSUE --

10   AND I'M JUMPING AHEAD.  I'M SORRY.

11           GOING TO THE ISSUE OF THE LAURA SIEGEL, MICHAEL

12   SIEGEL LETTERS.  SOME OF THESE ARE COMBINED.  THERE ARE THE

13   BULSON LETTERS, WHICH IS MICHAEL SIEGEL'S ATTORNEY IN OHIO.

14   AND THEN THERE ARE COMMUNICATIONS BETWEEN MICHAEL SIEGEL AND

15   LAURA SIEGEL.  SO, I'M GOING TO SPEAK ABOUT THESE SEPARATELY.

16           THE LETTER -- THE JULY LETTER BETWEEN LAURA AND

17   MICHAEL SIEGEL IS A LETTER THAT THEY HAVE CONSISTENTLY TRIED

18   TO COMPEL IN THE SIEGEL LITIGATION AND NOW IN THIS

19   LITIGATION.

20           THE FIRST TIME THEY -- AND UNDERSTAND THAT THEY'RE

21   SEEKING TO COMPEL THIS AND OTHER DOCUMENTS IS BASED ON THEM

22   RECEIVING STOLEN DOCUMENTS IN THE SIEGEL LITIGATION.  SO, THE

23   WHOLE UNDERLYING BASIS USING DOCUMENTS STOLEN FROM OPPOSING

24   COUNSEL'S LEGAL FILES TO GAIN AN ADVANTAGE IN A LITIGATION I

25   BELIEVE IS TOTALLY IMPROPER.  AND I BELIEVE IN WEIGHING AND

1    BALANCING THE EQUITIES, THAT THAT SHOULD BE KEPT IN MIND.  I

2    DON'T THINK IT'S BUSINESS AS USUAL.

3         THE COURT:  WELL, I DON'T SEE THAT, MR. TOBEROFF.

4    I MEAN, THEY DIDN'T STEAL THE DOCUMENTS.  THE DOCUMENTS WERE

5    DELIVERED TO THEM.  THEN, WE HAD THAT WHOLE BUSINESS WITH MR.

6    QUINN AND THE ESCROW AND SO ON.  SO, NOW YOU HAVE THEM HAVING

7    SOME INFORMATION.  AND I THINK ANY DILIGENT ATTORNEY WOULD

8    SAY SOMETHING DOESN'T QUITE MATCH UP.  YOU KNOW, WE NEED AN

9    EXPLANATION.

10        SO, I DON'T SEE THAT PART AS NEFARIOUS.

11        MR. TOBEROFF:  WELL, I THINK THERE -- RESPECTFULLY,

12   YOUR HONOR, I THINK THERE IS AN ISSUE ABOUT PROSPERING FROM A

13   THEFT OR PROSPERING FROM A VIOLATION OF AN ATTORNEY'S DUTIES

14   OF LOYALTY AND CONFIDENTIALITY.  I REALLY THINK THERE IS AN

15   ISSUE.  I MEAN, IN A CRIMINAL -- THIS ISN'T A CRIMINAL

16   MATTER, BUT IN THE CRIMINAL SIDE THERE'S, YOU KNOW, YOU HAVE

17   THE FRUIT OF THE POISONOUS TREE DOCTRINE.

18        I DON'T BELIEVE THAT IT'S KOSHER TO LEVERAGE.  AND

19   THE LINES GET BLURRED, AND THE LINES HAVE BEEN BLURRED IN

20   THIS CASE, YOUR HONOR.  BECAUSE ORIGINALLY WAYNE SMITH AS A

21   WAY OF GETTING YOU TO BLESS THEIR PROCEDURES, WAYNE SMITH,

22   THEIR SENIOR V.P. OF LITIGATION, REPRESENTED TO YOU, YOUR

23   HONOR, IN A DECLARATION THAT HE MERELY THUMBED THROUGH THE

24   DOCUMENTS.  AND THE MOMENT HE -- AND HE CREATED THREE PILES.

25   ONE NOT PRIVILEGED; TWO, QUESTION MARK; THREE, PRIVILEGED.

1    AND THE MOMENT HE CAME TO ANYTHING HE THOUGHT COULD BE

2    PRIVILEGED HE DIDN'T READ FURTHER.

3              THAT'S HOW THEY ESSENTIALLY GOT THIS COURT TO BLESS

4    THEIR PROCEDURES.  IT'S AN IMPOSSIBILITY THAT HE DIDN'T READ

5    THE PRIVILEGE DOCUMENTS BECAUSE IN ORDER TO MARK SOMETHING

6    QUESTIONABLE, WHICH IS QUESTIONABLE IN HIS OPINION, YOU HAVE

7    TO READ THROUGH THE DOCUMENT.  SO, YOU COULDN'T POSSIBLY MARK

8    SOMETHING -- PUT A STACK WITH A QUESTION MARK ON THEM WITHOUT

9    READING THE DOCUMENTS.

10              AND, SO, TO THE EXTENT ANY IN THE QUESTION MARK

11    PILE WERE, IN FACT, PRIVILEGED, HE WOULD HAVE JUST READ A

12    PRIVILEGED DOCUMENT.

13              WE ALSO KNOW BECAUSE OF HIS UNCANNY PHOTOGRAPHIC

14    MEMORY THAT THIS HAPPENED SUPPOSEDLY IN 2006.  WE BELIEVE

15    THEY RECEIVED THESE DOCUMENTS IN 2005.  YEARS LATER HE WAS

16    TESTIFYING SPECIFICALLY AS TO A DOCUMENT -- AFTER CLAIMING

17    THEY KEPT NO COPIES OF THE DOCUMENTS.  THEY WERE ORDERED NOT

18    TO KEEP COPIES OF THE DOCUMENTS.  AND THAT HE ONLY THUMBED

19    THROUGH THE DOCUMENTS.

20              SO, WE DON'T BELIEVE THIS PROCESS IS KOSHER AND

21    IT'S MERELY AN INNOCENT MATTER OF, LOOK, WE RECEIVED THIS

22    INFORMATION.  IT HAD NOTHING TO DO WITH US.  WE CAN'T CLOSE

23    OUR EYES TO IT.

24              BUT THAT BEING SAID, YOUR HONOR, THEY HAVE BROUGHT

25    UP THIS LETTER NO LESS THAN FIVE TIMES.  AND EACH TIME THE

1    COURT HAS DENIED THEIR MOTION.

2            THE FIRST TIME WAS IN THEIR MOTION IN THIS COURT TO

3    COMPEL THE STOLEN DOCUMENTS.  AND THEY MENTIONED THIS LETTER.

4            YOUR HONOR'S SOLUTION TO THAT WAS TO SAY, IT'S VERY

5    SIMPLE.  THOSE DOCUMENTS THAT WERE -- THAT ARE

6    NON-PRIVILEGED, MR. TOBEROFF, I WANT YOU TO DO A DECLARATION.

7    AND IN THAT DECLARATION I WANT YOU TO CITE BY THE BATES

8    NUMBERS THOSE DOCUMENTS FOR WHICH YOU'RE NOT CLAIMING

9    PRIVILEGE.  AND, THEN, FOR THOSE THAT ARE PRIVILEGED KEY THE

10   BATES NUMBERS TO THE PRIVILEGE LOG.

11           I SUBMITTED THAT DECLARATION TO YOU.  AND THEY

12   NEVER MOVED ON A RULE 72 TO CHALLENGE YOUR ORDER.  AND THAT

13   SHOULD HAVE BEEN THE END OF IT.

14           THEN, WHEN THE REFERENCE WAS REMOVED TO YOUR HONOR

15   BY JUDGE LARSON, AND HE STARTED HANDLING DISCOVERY MOTIONS,

16   THEY MADE A MOTION TO COMPEL TO JUDGE LARSON -- SPECIFICALLY

17   AGAIN -- THEY'VE TALKED ABOUT A LOT OF THINGS, BUT THEY ALSO

18   SPECIFICALLY TALKED ABOUT THE MICHAEL SIEGEL, LAURA SIEGEL

19   LETTER.

20           AND THE JUDGE REVIEWED THAT MOTION, AND HE DENIED

21   THAT MOTION.  THAT WAS THE SAME ORDER IN WHICH THE JUDGE

22   ORDERED THAT THEY COULD HAVE THE TIME LINE BASED ON AN

23   INTERPRETATION OF YOUR RULING IN WHICH HE HELD THAT YOUR

24   RULING WAS LAW OF THE CASE BECAUSE NEITHER SIDE HAD APPEALED

25   THAT RULING.

1          NOW THEY'RE TAKING THE SAME ORDER AND SEEKING TO

2     IGNORE IT.  AND THEY BROUGHT UP -- IN THE COURSE OF THAT

3     MOTION THEY BROUGHT UP THE SAME LETTER NOT ONCE BUT FOUR

4     TIMES IN DIFFERENT WAYS.

5          THEY BROUGHT IT UP FIRST TO YOU, AND YOU GAVE THE

6     SOLUTION, WHICH WE FOLLOWED.  THEN, JUDGE LARSON -- THEY

7     BROUGHT IT UP THREE OR FOUR TIMES TO LARSON, AND JUDGE LARSON

8     UPHELD MY DECLARATION, UPHELD YOUR ORDER.  IN SOME WAYS IT

9     WORKED AGAINST US WITH REGARD TO THE TIME LINE.  IN OTHER

10    WAYS IT WORKS FOR US.

11         AND SINCE THAT ORDER WAS PREVIOUSLY, YOU KNOW,

12    ABIDED BY IN DEALING WITH THE TIME LINE DOCUMENT, I WOULD

13    SUGGEST IT SHOULD BE ABIDED BY HERE AS WELL, YOUR HONOR.

14         AFTER THAT THEY THEN GOT -- AND THIS IS ANOTHER

15    THING.  WHAT HAPPENED WAS, YOUR HONOR, IS AS SOON AS YOU WERE

16    OFF THIS CASE, A NUMBER OF PROBLEMS STARTED TO CREEP IN TO

17    --

18         THE COURT:  DON'T SAY IT THAT WAY. (LAUGHTER.)

19         MR. TOBEROFF:  -- THEIR SUPPOSED SANITIZING

20    PROCEDURES.  ONE WAS THE PHOTOGRAPHIC MEMORY OF MR. SMITH.

21    THE OTHER WAS THEIR ASSERTIONS THAT THEY HAD A NEUTRAL ESCROW

22    HOLDER WHO WAS HOLDING ON TO THESE DOCUMENTS.

23         WE ALWAYS SAID, WELL, HOW NEUTRAL CAN HE BE IF HE'S

24    -- YOU KNOW, HAS A RETAINER AGREEMENT WITH WARNER BROS. AND

25    THEY'RE PAYING HIS FEES.

1          THE COURT:  YES.  AND I RECALL INVITING YOU TO

2    SUPPLEMENT THOSE FEES, AND YOU DECLINED.

3          MR. TOBEROFF:  YES.  SO, I -- WE JUST WANTED THE

4    DOCUMENTS BACK.

5          SO, I -- YOUR HONOR, IT TURNS OUT THAT AFTER THEIR

6    MOTION TO COMPEL WAS DENIED, THEY GOT THEIR NEUTRAL ESCROW

7    HOLDER TO WRITE A LETTER, AN EX PARTE COMMUNICATION TO JUDGE

8    LARSON SEEKING TO PEEK BENEATH THE PRIVILEGE LOG AND MATCH UP

9    THE DOCUMENTS IN MY DECLARATION KEY TO THE PRIVILEGE LOG TO

10   THE ACTUAL --

11         THE COURT:  AND JUDGE LARSON DENIED THAT.

12         MR. TOBEROFF:  AND THEY SAID --

13         THE COURT:  I DID READ THESE PAPERS, MR. TOBEROFF.

14         MR. TOBEROFF:  I APPRECIATE IT.

15         AND THEY SAID ALTERNATIVELY WE WANT TO SUBMIT --

16   LIKE THEY'RE ASKING YOU -- TO SUBMIT ALL THESE DOCUMENTS FOR

17   IN CAMERA REVIEW.  JUDGE LARSON SPECIFICALLY DENIED THAT.

18   THAT WAS THE FIFTH TIME THEY BROUGHT UP THIS LETTER.  NOW

19   THEY'RE DOING THE SAME THING HERE.  AND I BELIEVE THEY

20   SHOULDN'T BE PERMITTED TO RELITIGATE THESE ISSUES.

21         AS FAR AS THE MICHAEL SIEGEL DOCUMENTS, I'LL CALL

22   -- THE DOCUMENTS BETWEEN MICHAEL SIEGEL AND DON BULSON AND

23   DON BULSON AND ME, THOSE DOCUMENTS WERE -- JUST ONE MOMENT.

24         (BRIEF PAUSE.)

25         MR. TOBEROFF:  THEY ORIGINALLY MADE A MOTION

1    REGARDING 15 DOCUMENTS.  AND THAT MOTION WAS BASED ON THE

2    FACT THAT THOSE DOCUMENTS ARE NOT COVERED BY THE JOINT

3    INTEREST PRIVILEGE BECAUSE THEY ESSENTIALLY DEAL WITH THE

4    NEGOTIATION FOR THE PURCHASE OF MICHAEL SIEGEL'S TERMINATION

5    INTEREST.  AND BECAUSE THE PARTIES WEREN'T ALIGNED WITH

6    RESPECT TO THAT PURCHASE, THE OHIO COURT NARROWLY RULED THAT

7    THOSE DOCUMENTS ARE NOT PRIVILEGED.

8              THEY THEN IMMEDIATELY CAME BARRELING THROUGH THAT

9    -- YOU KNOW, ONCE THEY GOT THEIR NOSE UNDER THE TENT -- I

10   FORGET.  I DON'T KNOW THE FULL EXPRESSION OF THE CAMEL NOSE

11   IS UNDER --

12             THE COURT:  YOU'VE GOT TO WRITE THIS DOWN.  LAST

13   TIME YOU SAID TOE.  THIS TIME YOU SAID NOSE.  YOU GOT TO

14   WRITE --

15             MR. TOBEROFF:  SO, THEY CAME --

16             MR. PETROCELLI:  LAST TIME IT WAS TOES I THINK,

17   YOUR HONOR.

18             MR. TOBEROFF:  THEY CAME BARRELING FORTH WITH A

19   MOTION TO COMPEL ALL OF THOSE DOCUMENTS.  AND THE NORTHERN

20   DISTRICT -- THE JUDGE FOR THE NORTHERN DISTRICT OF OHIO HELD

21   THAT, NO, JUST BECAUSE I HELD THESE SPECIFIC DOCUMENTS ARE

22   NOT PROTECTED BY THE JOINT PRIVILEGE DOESN'T MEAN I'M NOT

23   UPHOLDING THE JOINT INTEREST PRIVILEGE WITH RESPECT TO THE

24   OTHER DOCUMENTS.

25             IT WAS SPECIFICALLY DEALT WITH.  AND, AGAIN, THEIR

```
 1   MOTION WAS DENIED.  NOW THEY'RE BRINGING THE EXACT SAME
 2   MOTION.
 3            AS FAR AS A CERTAIN NUMBER OF THESE DOCUMENTS -- AS
 4   FAR AS THE DOCUMENTS, WHAT WE FOUND THERE WAS A TYPO.
 5   BECAUSE OF THE BREADTH OF THEIR REQUESTS WE INCORPORATED --
 6   WE DIDN'T REDO BULSON'S PRIVILEGE LOG.  WE INCORPORATED A
 7   PRIVILEGE LOG IN OUR LOG --
 8            THE COURT:  I READ THAT.
 9            MR. TOBEROFF:  RIGHT.
10            WE NOTICED SOME TYPOS.  WE WILL SERVE THEM WITH A
11   REVISED PRIVILEGE LOG CORRECTING THOSE TYPOS.  AND I
12   APOLOGIZE FOR THOSE TYPOS.
13            WITH RESPECT TO -- THERE ARE A NUMBER OF DOCUMENTS
14   THERE WHERE AFTER MICHAEL SIEGEL -- THERE ARE CERTAIN
15   DOCUMENTS -- OTHER THAN THE ONES THAT WE'LL CALL THE TYPO
16   DOCUMENTS, THERE ARE A SET OF DOCUMENTS WHICH APPLY TO
17   COMMUNICATIONS BETWEEN DON BULSON AND ME REGARDING DC OR
18   WARNER BROS. SUBPOENA.
19            AND THOSE DOCUMENTS WERE AFTER MICHAEL SIEGEL HAD
20   DIED AND THE SOLE BENEFICIARY OF MICHAEL SIEGEL IN THE OHIO
21   INTESTACY LAWS WAS LAURA SIEGEL.
22            THERE THE JOINT INTEREST PRIVILEGE WOULD APPLY
23   BECAUSE THE INTERESTS OF MICHAEL SIEGEL ARE VERY CLOSELY
24   ALIGNED AND, IN FACT, HELD BY LAURA SIEGEL AT THE TIME OF
25   THOSE COMMUNICATIONS.
```

1          (PAUSE IN PROCEEDING.)

2               MR. TOBEROFF:  MR. PETROCELLI STATED WITH RESPECT

3     TO A JULY 5TH, 2003 LETTER THAT WE'VE NEITHER -- WE NEVER

4     ADMITTED OR DENIED THE EXISTENCE OF THAT LETTER.

5               THIS IS NOT TRUE.  SPECIFICALLY, ON PAGE 71 OF OUR

6     JOINT STIPULATION IN FOOTNOTE 26 WE SPECIFICALLY SAY THAT

7     THAT JULY 5TH LETTER DOES NOT EXIST.

8               THIS GOES TO THE ISSUE OF THEM MOVING TO COMPEL

9     DOCUMENTS ON THE BASIS OF THE ANONYMOUS COVER LETTER THAT WAS

10    SENT BY A JUNIOR ATTORNEY IN MY FIRM SENDING TO THE OTHER

11    SIDE IN LITIGATION ALL OF THESE STOLEN DOCUMENTS.  THEY MADE

12    A MOTION TO COMPEL BASED ON THIS AS IF THIS LETTER IS A

13    TRUSTWORTHY DOCUMENT AND EVIDENCE OF THE EXISTENCE OF THESE

14    DOCUMENTS.  AND WE SPECIFICALLY POINTED OUT THAT THIS LETTER

15    DOES NOT EXIST.

16              AS FAR AS THE DENNIS LARSON COMMUNICATIONS, IT'S A

17    TOTALLY MOOT ISSUE.  ALL WE ASKED -- WE SAID WE WOULD PRODUCE

18    THE DOCUMENTS.  WE ORIGINALLY DIDN'T REALIZE THAT IT WAS

19    RELEVANT IN ANY RESPECT TO THIS CASE.  WE THEN -- WHEN WE SAW

20    THAT MR. LARSON STATED THAT HE HAD INTERESTS IN THE

21    TERMINATION, WHICH WAS THEREAFTER DENIED BY THE COURT OF

22    APPEALS, WE SAID WE WOULD RESPOND BY PRODUCING THESE

23    DOCUMENTS TO YOU, BUT WE WOULD LIKE TO RESERVE OUR RIGHTS TO

24    A PROTECTIVE ORDER AS TO, YOU KNOW, PRIVATE INFORMATION

25    REGARDING LAURA SIEGEL -- JUST TO RESPECT HER PRIVACY

1   INTERESTS.

2           THAT DOES NOT APPLY TO THOSE ASPECTS OF THE DENNIS

3   LARSON DOCUMENTS THAT ARE RELEVANT TO THIS CASE.  IT ONLY

4   APPLIES TO THINGS THAT ARE TOTALLY IRRELEVANT.  AND I THINK

5   IT'S THE RIGHT THING TO DO.

6           AND I SAW NO BASIS IN OUR MEET AND CONFER SESSIONS

7   TO NOT AGREE THAT A PROTECTIVE ORDER COULD APPLY TO THOSE

8   DOCUMENTS.

9           THE COURT:  AGAIN, I'M A LITTLE CONFUSED HERE, MR.

10  TOBEROFF.  YOU'RE SAYING THERE ARE SOME OF THESE DOCUMENTS

11  THAT ARE NOT RESPONSIVE?

12          MR. TOBEROFF:  YES.  ALL -- EVERYTHING HAVING --

13          THE COURT:  OKAY.  BUT THAT YOU WOULD BE WILLING TO

14  PRODUCE IF THEY WERE COVERED BY A PROTECTIVE ORDER AS OPPOSED

15  TO DOCUMENTS YOU THINK ARE RESPONSIVE, WHICH YOU WOULD

16  PRODUCE PURSUANT TO THE DECEMBER STIPULATION?

17          MR. TOBEROFF:  CORRECT.

18          THE COURT:  ALL RIGHT.  AND HOW MANY SUCH DOCUMENTS

19  DO YOU BELIEVE ARE NOT RESPONSIVE, BUT YOU DON'T CARE ENOUGH

20  SO YOU'LL TURN THEM OVER.  BUT YOU JUST WANT TO PROTECT MS.

21  SIEGEL'S PRIVACY?  ROUGH ESTIMATE.

22          MR. TOBEROFF:  WELL, I'D HAVE TO -- I DON'T HAVE A

23  HANDLE ON --

24          THE COURT:  ARE WE TALKING FIVE?  ARE WE TALKING

25  200?

1          MR. TOBEROFF:  JUST A SECOND, YOUR HONOR.

2          (PAUSE IN PROCEEDINGS.)

3          MR. TOBEROFF:  I DON'T -- IT WAS A FAIRLY LENGTHY

4    DIVORCE PROCEEDING.  I DON'T HAVE AN ANSWER.  BUT I THINK

5    THERE ARE NUMEROUS DOCUMENTS.

6          THE COURT:  ALL RIGHT.

7          MR. TOBEROFF:  AS FAR AS THE --

8          THE COURT:  EXCUSE ME.  ONE OTHER THING.  IN TERMS

9    OF THE PROTECTION YOU WOULD SEEK, YOU'RE TALKING ABOUT SIMPLY

10   THOSE DOCUMENTS STAY WITHIN THIS LAWSUIT, OR ARE YOU TALKING

11   ABOUT SOMETHING MORE ELABORATE THAN THAT?

12         MR. TOBEROFF:  YES, YOUR HONOR.  WE'VE -- IN THE

13   OTHER CASE, WE -- AND WE'LL PROBABLY HAVE ONE IN THIS CASE.

14   WE HAD A PROTECTIVE ORDER BASICALLY SAYING THAT DOCUMENTS

15   STAMPED "CONFIDENTIAL" BE FILED UNDER SEAL.  AND THERE'S A

16   PROCESS BY WHICH YOU CAN CHALLENGE THE CONFIDENTIAL

17   DESIGNATION OF THE DOCUMENTS.  USUALLY, STUDIOS ARE THE ONES

18   THAT ARE VERY ADAMANT FOR WANTING THIS PROTECTIVE ORDER.

19         AND I BELIEVE WE'RE GOING TO END UP WITH A

20   PROTECTIVE ORDER LIKE THAT IN THIS CASE.  I THINK WE

21   DISCUSSED IN THE MEET AND CONFER PROCESS HAVING A GENERAL

22   PROTECTIVE ORDER.  AND I DON'T THINK THERE'S BEEN AN

23   OBJECTION TO THAT.

24         THE COURT:  ALL RIGHT.  OKAY.

25         MR. TOBEROFF:  THE NEXT ISSUE IS THE ISSUE OF THE

1    PRIVILEGE LOG FORMAT, WHICH, AGAIN, IS AN ISSUE THAT WAS

2    SPECIFICALLY ADDRESSED IN A MOTION.  THEY MADE THE IDENTICAL

3    MOTION IN FRONT OF YOUR HONOR IN THE SIEGEL CASE.

4         AND, YOUR HONOR, WE SAID, LOOK, WE FOLLOWED THE

5    FORMAT IN THE WAGSTAFFE -- TASHIMA & WAGSTAFFE RUTTER GUIDE

6    -- FEDERAL PRACTICE GUIDE.  AND THERE ARE ALSO CASES THAT

7    WE'VE CITED, NINTH CIRCUIT CASES SPECIFICALLY SAYING THAT

8    THAT FORMAT IS SATISFACTORY.  AND YOUR HONOR UPHELD THE

9    FORMAT OF THE PRIVILEGE LOGS.  AND WE FUNCTIONED UNDER THOSE

10   PRIVILEGE LOGS IN THAT CASE.

11        AND THEY NEVER MOVED FOR REVIEW UNDER FEDERAL RULE

12   OF CIVIL PROCEDURE 72 OF YOUR HONOR'S RULING UPHOLDING THE

13   PRIVILEGE LOG.  THEY NOW BRING -- IN THAT MOTION THEY

14   SPECIFICALLY SAID YOU NEED TO LIST THE SUBJECT MATTER.  YOU

15   NEED TO BREAK IT OUT TO CC, BCC.

16        AND I DON'T BELIEVE THEY'RE CORRECT TO SAY, WELL,

17   IT'S A QUESTION OF THE CASE.  IF YOU HAVE A CASE WHERE YOU'RE

18   SUING OPPOSING -- IMPROPERLY SUING OPPOSING COUNSEL, THEN,

19   YOU SHOULD BE ABLE TO CRAWL ALL OVER THE PRIVILEGE LOGS AND

20   THE ATTORNEY-CLIENT PRIVILEGE.  BUT IF YOU DON'T HAPPEN TO

21   SUE OPPOSING COUNSEL, WHICH IS A RARE CIRCUMSTANCE INDEED,

22   THEN, THE PRIVILEGE LOG WOULD BE SUFFICIENT.

23        THAT MAKES NO SENSE BECAUSE IN EVERY CASE --

24        THE COURT:  SOMETHING TELLS ME THEY WOULDN'T PHRASE

25   IT QUITE THAT WAY.

1          MR. TOBEROFF:  OKAY.  NO, THEY'D PHRASE IT MORE

2     ARTFULLY, BUT THE ESSENCE WOULD BE THE SAME.

3          IT WOULDN'T WORK THAT WAY BECAUSE IN EVERY CASE

4     PEOPLE ARE -- TWO SIDES ARE GOING AT EACH OTHER ATTACKING

5     THEIR PRIVILEGE LOGS.  AND DEFENDANTS IN THE SIEGEL CASE

6     ATTACKED THEIR PRIVILEGE LOGS AND WANTED TO GET THEIR HANDS

7     ON EVERY SINGLE ATTORNEY-CLIENT PRIVILEGE DOCUMENT JUST LIKE

8     EVERY SINGLE DOCUMENT THAT IS LISTED ON THE LOG JUST LIKE

9     THEY DO NOW.

10          SO, I DON'T BELIEVE THAT MERELY BY THE FACT THEY'VE

11     CHOSEN TO SUE ME ON CAUSES OF ACTION THAT ARE SOON TO BE

12     KNOCKED OUT AS SOON AS JUDGE WRIGHT RULES ON THEIR MOTION TO

13     DISMISS, THAT SUDDENLY A PRIVILEGE LOG, WHICH IS A SUITABLE

14     FORMAT, BECOMES AN UNSUITABLE FORMAT IN THIS CASE.

15          IT WAS VERY INTERESTING THOUGH IN THE MEET AND

16     CONFER PROCESS WE SPECIFICALLY SAID TO THEM -- AND, AGAIN,

17     OUR UNDERSTANDING IS YOU'RE SUPPOSED TO ENTER INTO

18     COMPROMISES.  SO, THEY'VE NOW CITED THE COMPROMISES WE'RE

19     WILLING TO ENTER INTO REGARDING THE RETAINER AGREEMENT OR

20     REGARDING THE PRIVILEGE LOGS AS AN ADMISSION THAT WE'RE

21     WRONG, WHICH IS TOTALLY INCORRECT.

22          BUT WE SAID TO THEM IF WE DID SUCH A THING WHERE WE

23     WOULD LIST LITIGATION -- DOCUMENTS RELATED TO LITIGATION,

24     WE'D LIST THEM AS L.U., LITIGATION UPDATE.

25          AND THEY WANTED US TO LIST DOCUMENTS RELATING TO

1    THE CONSENT AGREEMENT OR, I BELIEVE, THE RETAINER AGREEMENT.

2              AND WE SAID, WELL, WE WANT YOU TO LIST DOCUMENTS

3    RELATED -- NOT RELATED, DOCUMENTS DISCUSSING THE ANONYMOUS

4    TIME LINE LETTER.  BECAUSE WE DON'T BELIEVE YOU RECEIVED THAT

5    LETTER IN '06 WHEN YOU REPRESENTED TO THIS COURT THAT THEY

6    RECEIVED IT IN '06.  WE BELIEVE YOU RECEIVED THOSE DOCUMENTS

7    IN 2005 AND HELD ON -- SAT ON PRIVILEGED, STOLEN DOCUMENTS

8    WITHOUT TELLING ANYONE UNTIL JUNE OF THE FOLLOWING YEAR.

9              THE MOMENT WE SAID THAT THEY RENEGED ON THEIR OFFER

10   OF COMPROMISE AND WEREN'T WILLING TO DO THE SAME THING AS

11   THEY WERE ASKING OF US WITH RESPECT TO THESE PRIVILEGE LOGS.

12             BUT THE FORMAT OF THESE PRIVILEGE LOGS HAS BEEN

13   UPHELD BY THIS COURT AND HAS BEEN HELD BY THE NINTH CIRCUIT.

14   AND THERE'S NO REQUIREMENT TO BREAK OUT TO BCC, CC.  THAT'S

15   ACTUALLY BEEN SPECIFICALLY LITIGATED.  AND I BELIEVE WE CITE

16   IN OUR PAPERS A NINTH CIRCUIT CASE THAT SAYS, NO, YOU'RE NOT

17   OBLIGATED TO DO THAT.

18             AND IT'S NOT A MINOR MATTER BECAUSE WE WOULD HAVE

19   TO GO BACK -- YOU KNOW, IF WE HAD DONE THAT FROM THE

20   BEGINNING, PERHAPS IT'S NOT A BIG PROBLEM.  BUT NOW WE'D HAVE

21   TO GO BACK HUNDREDS OF DOCUMENTS AND RELIST THEM.  AND IN

22   THIS CASE WE HAVE NO POST-LITIGATION AGREEMENT WITH THE OTHER

23   SIDE.  SO, WE'VE ACTUALLY LISTED EVERY SINGLE DOCUMENT, EVERY

24   SINGLE ATTORNEY-CLIENT COMMUNICATION IN THE ENTIRE CASE -- IN

25   THE SIEGEL CASE, I SHOULD SAY, IN SIX YEARS OF LITIGATION.

1           I'M ALMOST DONE, YOUR HONOR.

2           THE COURT:  GOOD.  NOT THAT I HAVEN'T ENJOYED IT,

3    BUT IT IS GETTING LATE.

4           (PAUSE IN PROCEEDINGS.)

5           MR. TOBEROFF:  I AM DONE.

6           THE COURT:  ALL RIGHT.  THANK YOU.

7           MR. PETROCELLI.

8           MR. PETROCELLI:  YES.

9           YOUR HONOR, OVERARCHING COMMENT THAT I WOULD JUST

10   LIKE TO EMPHASIZE IS THAT DESPITE A LOT OF THE RHETORIC AND

11   PEJORATIVES ABOUT THIS CASE, THIS CASE IS A DIFFERENT CASE.

12   IT INVOLVES DIFFERENT PARTIES AND DIFFERENT ISSUES.  IT

13   BRINGS IN THE SHUSTER HEIRS FOR THE FIRST TIME.  IT LITIGATES

14   THE AGREEMENTS THEY ENTERED INTO.

15           NONE OF THAT WAS INVOLVED IN THE OTHER CASE.  THERE

16   WAS NO ISSUE IN THE OTHER CASE INVOLVING THE SHUSTER 1992

17   AGREEMENT WITH DC OR WARNER BROS.  THAT'S BRAND NEW HERE.

18   NOTHING IN THE OTHER CASE INVOLVED THE SHUSTER HEIRS'

19   TERMINATION.  BRAND NEW HERE.

20           NOTHING IN THE OTHER CASE INVOLVED CLAIMS AGAINST

21   THE TOBEROFF PARTIES FOR INTERFERENCE WITH BOTH THE SIEGEL

22   AGREEMENT AND THE SHUSTER AGREEMENT.

23           AND MOST OF WHAT I HEARD IS THAT BECAUSE COUNSEL

24   DOES NOT HAVE A CHARITABLE VIEW OF THIS CASE -- AND FORGIVE

25   ME, YOUR HONOR, BUT I'M HAVING A LITTLE BIT OF A CUT HERE,

1    AND I'M TRYING TO DEAL WITH IT -- THAT THIS CASE DOES NOT

2    DESERVE TO BE LITIGATED IN ACCORDANCE WITH RULES APPLICABLE

3    TO CASES.  THIS IS A SEPARATE CASE.  IT IS NOT AN ADJUNCT TO

4    THE OTHER CASE.  AND WE CAN'T BE DEPRIVED OF DISCOVERY ON THE

5    GROUND OF DECISIONS MADE IN THE OTHER CASE, EITHER FOR OR

6    AGAINST US.  AND THAT WOULD APPLY ACROSS THE BOARD TO BOTH

7    SIDES, YOUR HONOR.

8        AND THAT'S ESSENTIALLY WHAT WE'RE BEING TOLD.

9    WE'RE BEING TOLD BECAUSE YOU MADE A RULING ON THE PRIVILEGE

10   LOG AND THE CIRCUMSTANCES OF THAT CASE, THAT THAT BINDS

11   EVERYBODY IN THIS CASE.  AND THAT'S JUST NOT TRUE, YOUR

12   HONOR.

13       AND THERE IS NO NINTH CIRCUIT LAW THAT SAYS THAT

14   THERE'S A LIMIT TO THE INFORMATION THAT YOU CAN PROVIDE IN A

15   PRIVILEGE LOG.  AND THE CASE THAT THEY CITE, THE DOLE CASE

16   SAYS NO SUCH THING AND, IN FACT, INVOLVES MUCH MORE DETAILED

17   INFORMATION THAN THESE LOGS.

18       THERE'S THE CENTRAL DISTRICT CASE BY MAGISTRATE

19   JUDGE ROSE IN 1992, YOUR HONOR, IN WHICH EXACTLY THE TYPE OF

20   INFORMATION THAT WE ARE REQUESTING HERE --

21       THE COURT:  I'M WILLING TO ACCEPT THE PROPOSITION

22   THAT DIFFERENT CASES MAY REQUIRE DIFFERENT --

23       MR. PETROCELLI:  OKAY.

24       THE COURT: -- PRIVILEGE LOGS.

25       BUT LET ME ASK YOU THIS, MR. PETROCELLI.

1      ISN'T IT THE CASE THAT IF YOU SAY TRANSMITTAL

2    LETTER FROM PERSON A TO ATTORNEY B ENCLOSING ONE, TWO, THREE,

3    FOUR, FIVE, THAT THAT DISCLOSURE WOULD IMPLICATE

4    ATTORNEY-CLIENT COMMUNICATIONS.  THE FACT THAT YOU NOW KNOW

5    WHAT HAS BEEN TRANSMITTED TO THE ATTORNEY.

6      ISN'T THAT PART OF THE CLIENT COMMUNICATION, CLIENT

7    CONFIDENCES?

8      MR. PETROCELLI:  NO, I DISAGREE WITH THAT, YOUR

9    HONOR.  SENDING A DOCUMENT TO AN ATTORNEY AND PROVIDING THE

10   ATTORNEY THE DOCUMENT ISN'T A PRIVILEGED ACT.

11     THE COURT:  COULD MR. TOBEROFF ASK YOU WHAT IS THE

12   SUBSTANCE OF THE LETTERS YOUR CLIENT HAS SENT YOU?

13     MR. PETROCELLI:  IT CERTAINLY -- WHAT IS THE

14   SUBSTANCE OF THE LETTERS? -- NO, THE PRIVILEGE LOG --

15     THE COURT: -- THE GIST OF THE LETTER SAID, WHAT'S

16   THE SUBJECT MATTER OF THE LETTERS THAT YOUR CLIENT HAS SENT

17   YOU?

18     DO YOU THINK THAT THAT WOULD BE --

19     MR. PETROCELLI:  WE WOULD DESCRIBE -- ABSENT ANY

20   AGREEMENT AMONG THE PARTIES AS TO HOW TO DEAL WITH THAT, BOTH

21   SIDES ARE STUCK BY THE SAME RULES.  WE WOULD DESCRIBE THE

22   SUBJECT MATTER.

23     AND ON THAT ISSUE, IF WE WERE TALKING ABOUT THE

24   SUBJECT OF THE LITIGATION BECAUSE THESE WERE LAWYER-CLIENT

25   DOCUMENTS IN THE COURSE OF THE CASE BOTH SIDES HAD DISCUSSED,

1    WE'D JUST SAY LITIGATION UPDATE.

2            BUT THAT'S NOT WHAT THIS IS ABOUT, YOUR HONOR.

3    THIS IS ABOUT UNDERLYING DOCUMENTS THAT ARE BEING TRANSMITTED

4    TO A LAWYER.  YOU CANNOT HIDE THAT IN A CRYPTIC PRIVILEGE

5    LOG.  WE NEED TO SEE WHAT IS THE COMPOSITION OF THIS BUNDLE

6    OF PAPER THAT'S SOMEHOW BEING CRYPTICALLY IDENTIFIED BY A

7    SINGLE ENTRY.  AND WE'RE JUST NOT ABLE TO DEAL WITH THIS.

8            THE OTHER OPTION, YOUR HONOR, IS TO LOOK AT

9    EVERYTHING IN CAMERA.  HIRE A SPECIAL MASTER AND JUST HAVE

10   HIM LOOK AT EVERYTHING IN CAMERA.

11           AND THE NINTH CIRCUIT LAW MAKES CLEAR THAT THE TEST

12   FOR AN IN CAMERA REVIEW IS A MODEST ONE.  IT'S NOT A

13   HIGH-LEVEL BURDEN.  IT'S JUST THAT THERE'S A REASONABLE

14   BELIEF THAT THERE MAY BE NON-PRIVILEGED MATERIAL EMBEDDED

15   AMONG THE PRIVILEGED ITEMS ON THE PRIVILEGE LOG THAT AN IN

16   CAMERA INSPECTION IS APPROPRIATE.

17           WE DON'T WANT TO BURDEN YOUR HONOR, BUT WE COULD

18   HAVE A SPECIAL MASTER GO THROUGH IN LIEU OF PREPARING A MORE

19   DETAILED PRIVILEGE LOG.  WE THINK EITHER OF THE OPTIONS IS A

20   SENSIBLE ONE TO PURSUE.

21           BUT WE DON'T THINK IT'S APPROPRIATE FOR US TO BE

22   CONFRONTED WITH THIS PRIVILEGE LOG WHERE WE KNOW BASED ON

23   OTHER EXPERIENCE, INCLUDING WHAT THE OHIO JUDGE FOUND,

24   INCLUDING SOME OF THE EXAMPLES WE BROUGHT UP HERE, THAT

25   NON-PRIVILEGED INFORMATION IS BEING BURIED IN THE LOG.

1          YOUR HONOR, MR. TOBEROFF INDICATED THAT HE DID TELL

2    US ON THE JULY 5 LETTER THAT IT DID NOT EXIST.  AND HE CITED

3    THE FOOTNOTE, YOUR HONOR.

4          THAT'S NOT WHAT THE FOOTNOTE SAYS.  AND, YOU KNOW,

5    I WAS TROUBLED WHEN HE SAID THAT BECAUSE I DIDN'T WANT TO

6    HAVE MISREPRESENTED ANYTHING TO THE COURT.  BUT THE FOOTNOTE

7    SAYS THAT HE WAS UNABLE TO MATCH UP THE JULY 13, 2000- --

8    EXCUSE ME, THE JULY 5, 2003 LETTER.  IT DOES NOT SAY IT DOES

9    NOT EXIST.  NOW, IF IT DOESN'T EXIST, IT DOESN'T EXIST.

10          BUT THERE'S BEEN NO RESPONSE IN HIS ARGUMENT ABOUT

11    THE MAY 13TH, 2003 LETTER.  HE DID NOT SAY ONE WAY OR THE

12    OTHER, ONCE AGAIN, WHETHER THAT LETTER EXISTED, AND IT'S NOT

13    ON THE LOG.

14          SO, I SUGGEST THAT THE EASIEST WAY TO DEAL WITH

15    THIS GIVEN THE EQUIVOCAL WORDING OF THE FOOTNOTE IS TO ORDER

16    THAT BOTH JULY 5 AND MAY 13, 2003 LETTERS BE PRODUCED.

17          AND, FINALLY, YOUR HONOR, ON THE RETAINER ISSUE --

18    EXCUSE ME, NOT THE RETAINER ISSUE, THE CONSENT AGREEMENTS,

19    ONCE AGAIN, THIS IS A COMPLETELY SEPARATE LAWSUIT THAT

20    INTRODUCES FOR THE FIRST TIME, YOUR HONOR, AN ISSUE THAT WAS

21    NOT IN THE OTHER CASE, AND THAT IS THE LEGALITY OF THESE

22    CONTRACTUAL ARRANGEMENTS THAT IMPAIR A PARTY'S RIGHT OF

23    CONTRACT, FREEDOM OF CONTRACT TO ENTER INTO AN AGREEMENT WITH

24    DC, THE ORIGINAL GRANTEE.

25          AND YOUR HONOR IS CORRECT THAT THESE CASES

1    CONTEMPLATE A RANGE OF OPTIONS.  AND MORE CASE LAW WILL COME

2    DOWN DEVELOPING WHAT RANGES -- YOU KNOW, WHAT'S APPROPRIATE

3    WITHIN THAT RANGE.

4              THE MILNE CASE, WHICH IS BINDING ON US, TELLS US

5    THAT YOU CAN'T HAVE TRAFFIC IN THESE RIGHTS.  IT DOESN'T SAY

6    EXACTLY WHAT THAT MEANS.

7              BUT HERE WE HAVE AGREEMENTS, THESE CONSENT

8    AGREEMENTS --

9              THE COURT:  WELL, THE MILNE CASE, AS I RECALL IT,

10   IT DOES USE THAT LANGUAGE.

11             MR. PETROCELLI:  YES.

12             THE COURT:  BUT IT WAS ON KIND OF A DIFFERENT

13   ISSUE, WASN'T IT?

14             MR. PETROCELLI:  GRANTED, YOUR HONOR.  YES.

15             THE COURT:  ABOUT WHETHER YOU HAD TO -- WHAT DID

16   THEY CALL IT? -- A MOMENT OF FREEDOM --

17             MR. PETROCELLI:  WELL --

18             THE COURT: -- AFTER THE TERMINATION PERIOD ENDED?

19             MR. PETROCELLI:  CORRECT.  AND HAVING BEEN INVOLVED

20   IN THAT CASE, I KNOW --

21             THE COURT:  I KNOW YOU'RE FAMILIAR WITH IT.

22             MR. PETROCELLI:  I KNOW THAT THAT'S -- THAT WAS THE

23   ISSUE THAT WENT -- I WASN'T INVOLVED IN THE APPEAL, BY THE

24   WAY.

25             BUT IN THE -- WHAT THE COURT THERE IS TALKING

1    ABOUT, THOUGH, IF YOU READ THAT, IT'S TALKING ABOUT THE RIGHT

2    OF THE ORIGINAL GRANTEE -- IN THAT CASE IT WAS A COMPANY

3    CALLED S.S.I.  IN THIS CASE IT'S A COMPANY CALLED DC -- TO

4    HAVE THE ABILITY TO ENTER INTO CONTRACTS DURING THIS PERIOD

5    OF EXCLUSIVITY.

6              THE COURT:  NO, I UNDERSTAND.

7              MR. PETROCELLI:  IF THAT PERIOD OF EXCLUSIVITY --

8    IF THOSE HEIRS HAVE SIGNED AGREEMENTS AMONG EACH OTHER --

9    WHICH APPARENTLY THEY HAVE.  IN THIS TWO- OR THREE-PAGE

10   DOCUMENT WE'VE BEEN CALLING THE CONSENT AGREEMENT -- THAT

11   IMPAIRS THEIR ABILITY TO ENTER INTO AN AGREEMENT WITH US.

12             THEY COULD DO SO BUT THEY WOULD BE SUBJECT TO A

13   CLAIM FOR BREACH OF THAT AGREEMENT.  THAT'S UNLAWFUL.

14             AND THAT'S THE POINT OF THIS CASE.  AND THAT ISSUE

15   IS NOWHERE IN THE OTHER CASE.  IT'S IN THIS CASE.  AND, SO, I

16   THINK IT'S UNFAIR TO KEEP BRINGING US BACK TO WHAT HAPPENED

17   IN THE OTHER CASE.

18             AND I WANT TO SUGGEST TWO CASES.  AND I'M GOING TO

19   CONCLUDE BY GOING BACK TO THE VERY FIRST QUESTION YOU ASKED

20   ME, WHICH IS ON THIS CONSENT AGREEMENT DOES IT MATTER IF THE

21   CONSENT AGREEMENT WAS ENTERED INTO SPECIFICALLY FOR THE

22   PURPOSE OF GOING INTO THE MEDIATION.

23             THE ANSWER IS IT DOES NOT.  AND NOT ONLY DOES IT

24   MATTER -- THE ANSWER WOULD BE EVEN IF THERE WERE DIRECT

25   STATEMENTS MADE IN THE MEDIATION THAT EVIDENCED INDEPENDENT

64

1    WRONG-DOING OR CERTAIN FACTUAL INFORMATION, THOSE WOULD BE

2    DISCOVERABLE EVEN IF YOU ONLY LEARNED THEM IN THE MEDIATION,

3    WHICH IS A STEP OR TWO REMOVED FROM THIS SITUATION.

4            JUDGE WRIGHT AUTHORED A DECISION IN THE MUNOZ CASE,

5    WHERE IN THE MIDDLE OF A MEDIATION A PARTY DISCLOSED THAT THE

6    AMOUNT IN CONTROVERSY WAS IN EXCESS OF $75,000 AND THEN LATER

7    TRIED TO MOVE TO DISMISS CLAIMING THAT THE AMOUNT IN

8    CONTROVERSY WAS LESS.  AND RELYING ON RULE 408, SAID, NO, YOU

9    CAN'T HIDE RULE 408 FOR THAT PURPOSE -- DISCLOSE INFORMATION

10   IN THE MIDDLE OF A MEDIATION LET ALONE IN SOME LETTER LEADING

11   UP TO IT.

12           AND, THEN, THE SECOND CASE I WOULD ASK YOUR HONOR

13   TO TAKE A LOOK AT ON THIS ISSUE IS THE CARNEY CASE.  AND THE

14   CARNEY CASE IS A D.C. CIRCUIT CASE IN 1998 WHERE IN A

15   SETTLEMENT LETTER ITSELF FROM THE UNIVERSITY TO THE

16   ADMINISTRATOR PLAINTIFF WHO WAS FIRED BY THE UNIVERSITY, THE

17   UNIVERSITY SAID, HEY, IF YOU DON'T DROP YOUR CLAIM -- AND

18   THIS WAS IN A SETTLEMENT LETTER.  IF YOU DON'T DROP YOUR

19   CLAIM, WE'RE GOING TO FIRE YOU.

20           AND THERE WAS LITIGATION ABOUT THIS, AND THE

21   UNIVERSITY RELIED AGAIN ON THE SETTLEMENT PRIVILEGES UNDER

22   THE FEDERAL RULES.  AND THE COURT SAID NO CHANCE.  IT SAID,

23           "IN PARTICULAR, SUCH CORRESPONDENCE CAN

24           BE USED TO ESTABLISH AN INDEPENDENT

25           VIOLATION (HERE RETALIATION)."

```
1              AND HERE WE HAVE THE IDENTICAL THING THAT'S CITED

2    IN OUR BRIEF.  THERE'S NO RESPONSE TO THIS CASE, YOUR HONOR.

3    AND WHILE HE MAY HAVE ENTERED INTO THIS CONSENT AGREEMENT FOR

4    THE PURPOSE, AS HE SAID, SO THAT THE WARNER BROS. COULD NOT

5    PLAY THE HEIRS OFF OF EACH OTHER, THAT MAY HAVE BEEN HIS

6    PURPOSE, BUT THAT DOESN'T MEAN IT'S A VALID PURPOSE.  THAT

7    DIDN'T MEAN IT DIDN'T VIOLATE SOME LAW.  AND THAT DIDN'T MEAN

8    THAT THIS INDEPENDENT CONTRACT IS IMMUNE FROM ANY INQUIRY.

9    WE CAN'T SEE IT.  WE CAN'T ASK ANY WITNESSES ABOUT IT.  WE

10   HAVE TO PRETEND IT NEVER HAPPENED, EVEN THOUGH IT'S STILL IN

11   OPERATION.  AND EVEN THOUGH IT IS STILL IMPAIRING OUR RIGHTS

12   UNDER BOTH FEDERAL LAW, UNDER THE COPYRIGHT STATUTE AS WELL

13   AS PUBLIC POLICY.

14            THERE WAS NO REASON TO HAVE ENTERED INTO THAT

15   AGREEMENT, YOUR HONOR.  HE MADE A CHOICE IN ENTERING INTO

16   THAT AGREEMENT TO RUN RIGHT DIRECTLY AFOUL OF THE COPYRIGHT

17   STATUTE.

18            AND THE REASON HE DID SO IS BECAUSE HE WAS WILLING

19   TO TAKE THAT RISK IN THE HOPES THAT THAT ISSUE WOULD NEVER

20   SURFACE RATHER THAN ALLOW US AND ALLOW THE HEIRS TO FREELY

21   ENTER INTO AN AGREEMENT WITH DC.  AND THAT CONTRACT IS

22   ILLEGAL.

23            AND THAT'S OUR CASE.  AND WHAT WE HEARD IN LARGE

24   PART WAS, WELL, IT'S NOT ILLEGAL BECAUSE, YOU KNOW, IT SAYS

25   THIS AND IT SAYS THAT.  WELL, AS YOUR HONOR SAID, WE DON'T
```

1    KNOW WHAT IT SAYS.  AND IN ANY EVENT THAT'S THE MERITS OF THE

2    CLAIM.  AND THIS IS A DISCOVERY PROCEEDING.  AND WE'RE NOT

3    HERE TO DECIDE THE MERITS OF THE CLAIM.

4           SO, AT THE RISK OF REPEATING MYSELF AT THIS POINT,

5    YOUR HONOR, I WANTED TO DRAW SOME OF THOSE CASES TO YOUR

6    HONOR'S ATTENTION BECAUSE I DO THINK THEY ADDRESS WHAT I

7    THINK IS THE ISSUE YOUR HONOR IS STRUGGLING WITH.

8           THANK YOU.

9           THE COURT:  ALL RIGHT.

10          MR. TOBEROFF:  YOUR HONOR, JUST BRIEFLY.

11          THE COURT:  MR. TOBEROFF, IT'S NOT YOUR MOTION.

12   YOU DON'T GET THE LAST WORD.

13          MR. TOBEROFF:  WELL --

14          THE COURT:  AND IT IS BRIEFED.

15          MR. TOBEROFF:  IT WOULD ONLY TAKE A MOMENT, YOUR

16   HONOR.

17          THE COURT:  THAT'S ALL RIGHT.  I REALLY DON'T

18   BELIEVE I NEED THAT.  I HAVE READ PRETTY THOROUGHLY

19   EVERYTHING, BUT I DO WANT TO GO BACK OVER IT SOME MORE.

20          SO, I'M GOING TO TAKE THESE MATTERS UNDER

21   SUBMISSION.

22          I DO WANT TO THANK COUNSEL FOR THEIR ARGUMENT.  I

23   ALWAYS ENJOY HAVING YOU EVEN THOUGH I WISH YOU WOULD WRITE

24   SHORTER PAPERS.

25          MR. TOBEROFF:  THANK YOU, YOUR HONOR.  WE'LL TRY.

1          MR. PETROCELLI:  THANK YOU, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  WE'LL BE IN RECESS.

3          (PROCEEDINGS ADJOURNED 11:32 A.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT

5     TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6     PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10    DOROTHY BABYKIN                        3/6/11

11    _____    _____

12    FEDERALLY CERTIFIED TRANSCRIBER        DATED

13    DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25