# EXHIBIT 31

# SUPERMAN – MARC TOBEROFF TIMELINE

*Please read closely. We have enclosed several supporting documents in our package to you, and very much hope you will spend some time reviewing them before you come to any potential settlement with Marc Toberoff, who represents the Siegels and the Schuster heirs in the ongoing Superman legal dispute with Time Warner and DC Comics.*

*The below information should save Time Warner potentially millions and millions of dollars, and, if you so choose, - have Marc Toberoff suspended, disgraced, --- if not ultimately disbarred --- from practicing law.*

*Toberoff being labeled as the "relentless crusader for artists' rights" is hardly that: he has devised a strategy whereas he has ultimately claimed much ownership of the Superman copyright personally as he can. And of course, he has done so without the knowledge and full disclosure to the Siegels and Schuster heirs, creators of Superman.*

*As it stands right now, the single person who would stand to gain the MOST in a settlement with Time Warner regarding the ongoing SUPERMAN legal dispute would not be the heirs themselves, but Marc Toberoff.*

*What you do with the below information is up to you. You should most certainly conduct your own investigation. We believe there are details within this timeline that will be of strong interest to you.*

*Consider it an early holiday gift.*

*(Also, please be aware that this timeline is written with the assumptions that the reader(s) are aware of the characters involved within the ongoing Superman legal dispute between Time Warner/DC Comics. The heirs to the SUPERMAN copyright are: the Siegels (Joanne, Laura & Michael), Jerry Siegel's heirs, who collectively have claims to 50% of the copyright to Superman, while the Schuster estate has claims on the other 50%.) Marc Toberoff currently represents both parties in ongoing litigation.*

----

In 2000 MT established a separate corporation entitled "Pacific Pictures Corporation" (PPC), with an address of 23852 Pacific Coast Hwy, Suite 555, Malibu, CA 90265. Tel: (310)-589-5151. You will see below that he established this business to solicit his services as an attorney.

In 2001, Marc Toberoff (MT) began researching Superman, who had rights, etc.

MT initially contacts Kevin Marks at Gang, Tyre, who represented Joanne and Laura Siegel with an offer for the Siegel rights. Marks discourages Toberoff from any advances, and does not tell Siegels initially of the interaction because he believes it is not in their best interest.

1

Q 0001

Exhibit 31
638

On Nov. 23, 2001, MT entered into a joint venture agreement between his own outside corporation Pacific Pictures Corp. (NOT a law firm), and Mark Warren Peavy, and his mother Jean Peavy, heirs to the Joe Schuster estate. For the purposes of this document, we do not know the content of that agreement.

MT and Ari Emanuel, partner and agent at Endeavor, contacts Kevin Marks at Gang, Tyrer, Ramer, & Brown again, (who represented Joanne and Laura Siegel), on August 8, 2002. MT approaches the Siegels, *not as an attorney but as a film producer*, stating that he is "allied" with Emanuel, hoping such a claim will legitimize him.

On August 8th 2002, MT tells Marks that he and Emanuel have a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds for exploitation of the Siegels' rights to SUPERMAN and some continued royalties on an ongoing basis in all media. Kevin Marks says to the Siegels, "Don't do it." Gang, Tyrer tells the Siegels that they believe MT has brokered a confidential agreement with the Joe Schuster estate. Marks also tells the Siegels that the Schuster estate will have termination rights in approximately 2013. Schuster missed termination notices.

Within their offer, MT appeals to the Siegels' sense of ownership and encourages them to take this deal. MT says he can help them make a movie in direct competition to the one being made at Warner Brothers (MT makes this argument to Joanne and Laura, all the while knowing full well that no one would ever go near making such an attempt; no other studio would go for it because of the division of rights, and no one outside of the studio system would attempt such an endeavor for all the enormous costs attributable to the making, marketing and distribution of such a film.) In other words, MT displays "predatory intent" in his initial approach to the Siegels from the very beginning.

In their very first conversation, Kevin Marks tells MT "no go" --- that the Siegels have already reached an agreement with Time Warner and DC Comics.

Marks conveys MT's offer to the Siegels, and Marks does say to the Siegels, it is a better offer than the one you have. However, Marks also tells the Siegels that he would testify in court against the Siegels if they accepted this offer because he believes there has already been an agreement reached.

The Siegels are angry at Kevin Marks that he said he would testify against them if they took MT's offer, and relations break down between the Siegels and Gang, Tyrer. They fire Gang, Tyrer. And, because the Siegels believed that MT was sympathetic to their plight, and because MT appealed to their sense of ownership of SUPERMAN, they decide to enter into an agreement with Intellectual Properties Worldwide, otherwise known as "IPW", Marc Toberoff's film production company, for 10% for any kind of deal he got to make a movie or exploit the rights. (as you know, the Siegels submitted termination notices on the Superman copyright in 1997).

2

Q 0002

Exhibit 31
639

The Siegels' agreement with IPW is an agreement that mirrors the earlier Pacific Pictures agreement that MT makes with the heirs to Joe Schuster (*see more information on this below*). In other words, Marc Toberoff is named as their attorney within the agreement (which is masked as a retainer agreement) in the event that they go to litigation over anything (*please see enclosed document*). Upon the Siegels signing the agreement, MT then tells Joanne and Laura that his mysterious billionaire has decided to invest elsewhere. In other words, MT makes himself the Siegels' attorney of record while he solicited them as a film producer, violating the rule that no lawyer may directly solicit business, with the double violation of doing it under the auspices of doing separate business dealings. MT's sole intent was to become the Siegels' attorney, not to help the Siegels (as he had alleged) to make a movie in competition to *Superman Returns*, which was then in development at Warner Brothers. MT also never divulges his previous direct dealings with the Schuster heirs, and his Nov.23, 2001 joint agreement with the Peavys (the Schuster heirs) in which he is named their attorney of record.

In 2002, MT set his sights on acquiring the passive interest to Michael Siegel's rights, who, as you know, is Jerry Siegel's son from his first marriage, and is Laura's half-brother. Michael Siegel has an interest of 12.5% in SUPERMAN and SUPERBOY. The Siegels total have 50% interest (Joanne holds 50%, Laura 25%. Michael 25%). So, in essence, Joanne has 25%, Laura 12.5, Michael 12.5. MT used to his advantage the strained relationship between Joanne and Laura, and Michael; as well as strained communication with the Schusters.

Here comes Ari Emanuel, and he is going to finance the purchase of Michael Siegel's interest. But Michael Siegel turns him down flat. MT discloses the intent to purchase to Joanne and Laura, admitting it is a possible conflict of interest. MT is fully aware of what he is doing is wrong.

On December 16, 2002, there is another letter from MT and Ari Emanuel to Joanne and Laura Siegel, saying they are re-approaching Michael again about purchasing his interest. MT tells Michael Siegel that they have an investor ready to buy out his interest, though the amount is significantly less than what DC showed as his share.

March 3, 2003 – letter from Paul Levitz/DC Comics to the Siegels, and MT is messing up relationships for his own personal benefit. DC is trying to understand why they backed out of the deal. The reason is MT who is interfering in all the relationships up to this point.

May 2003 -- MT is continuing to make business arrangements with the Schuster heirs, unbeknownst to Joanne and Laura Siegel .

May 13, 2003: Michael Siegel sends a very concerned letter to Laura Siegel about Marc Toberoff's actions. *(please see enclosed letter; this letter lays out well MT's scheme)*. Among other things, Michael Siegel tells her of how Toberoff is now controlling the whole of the SUPERMAN copyright, how he may have bought a substantial portion of the Schuster interest for himself, and he brings to light MT's utter lack of opening a

3

dialogue with anyone regarding making another SUPERMAN movie, in partnership with Ari Emanuel. Also that MT has not even made contact with Time Warner. Lastly, Michael conveys that MT seems to have an agenda of "someone" buying him out, and that MT is pressing for an answer.

In May-June 2003. **STATUE OF LIMITATIONS is coming close on for filing of the SUPERMAN complaint. Both Joanne and Laura Siegel are now very ill.** MT starts saying to the Siegels that the statue of limitations is coming up, and they would have waived their right to sue based on the termination notices. *This is the very seed MT meant to mine all along.* He sends them the research on the statue of limitations, and concerned, the Siegels contact Art Levine in Washington, D.C. to have independent research done on the matter. The research confirms that they should file by September.

In June, Ari Emanuel through IPW is still trying to buy Michael Siegel's interest but can't come to terms on price.

End of June 2003, MT gets a law firm to represent the Schusters to assist with the SUPERMAN copyrights. They determine the value of the estate is $0, and California Probate Code will not be applicable, such that the estate attorney will not be entitled to any future settlement regarding the Superman interest. Estate attorney is only receiving an hourly rate. MT "graciously" pays all legal fees.

In other words, MT helped probate the estate, but hired an attorney to do the dirty work. Fittingly, the Joe Schuster will was "lost", so the will had no value. So, the court writes the will for him, and includes the rights to proceed with the termination. And since the firm receives an hourly rate, and the estate is valued at $0, it does not effect any future settlement. The estate attorney will thereby not be entitled to statutory compensation.
Another example of showing that MT is solely motivated *at all times* not by his clients' interests, but manipulating pieces of the puzzle so that he may receive the greatest percentage from a very possible large Time Warner settlement, through part ownership and unconscionable fees (*see below*).

**Absolutely nothing is moving ahead with Siegel/Schuster rights and agreements because MT was never intending to do anything with rights other than litigate.**

July 5, 2003. Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael --- MT has NOT told them he is about to enter into the PPC agreement, whereby MT *personally* will have a 50% of the Schuster interest in Superman. He will shortly own equal to what Joanne owns (25% of entire copyright), and double what Laura owns, *but MT has failed to disclose this*. The Schusters – through the Pacific Pictures Corp agreement – gave MT half of what they had. MT never had the intention to make a movie in competition to the one at Warners – it is tantamount to throwing $$$ away, but it does appeal to the heirs' sense of lost ownership. MT never did want to make a movie, and exploit the rights. MT knows no one is going to invest in an outside movie project outside of Warner Brothers, though he uses Ari Emanuel, the agent, to legitimize his claims. *(please see enclosed letter)*

4

Q 0004

Exhibit 31
641

Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft --- in response to Michael's accusations of Toberoff, Laura clearly states that MT does *not* have a production company. (This is false – Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes " MT has not plans to produce a SUPERMAN movie, nor is this feasible given the division of ownership of the rights." (please see enclosed letter). **This clearly delineates that Toberoff never had the intention of making a movie, and approached the Siegels and Schusters separately ---- not for the exploitation of rights as he initially asserted,** but to gain an unconscionable fee from a very large possible settlement with Time Warner.

August 7, 2003 --- Letter from Rodi-Pollock, who is the attorney in the Schuster estate – who says the Schuster Will would be written by the court August 25, 2003, since the Schuster Will had been "lost".

Sept-Oct 2003 ---- Letter with Ari Emanuel in which he would receive $2.5 million flat fee for "negotiating services"

On October 27, 2003, MT uses PPC to enter into another agreement with the Joe Schuster's heirs: Mark Warren Peavy and Jean Peavy, in which PPC is "engaged as the Executor of the recently probated estate of Joeseph Schuster." The agreement purports that PPC is the Peavys exclusive advisor "for the purpose of retrieving, enforcing, and exploiting all of Joe Schuster's rights ....in all of his creations...". In this agreement, MT also names himself their attorney for any and all litigation or questions that should arise in regards to these Rights. MT also clearly delineates that PPC is NOT a law firm. And, lastly but most significantly, MT defines that any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement, or exploitation of any of the Rights, ....any monies would be split 50/50. **IN ESSENCE, MARC TOBEROFF NOW HAS A 25% STAKE IN SUPERMAN PERSONALLY BECAUSE OF HIS DEAL WITH THE SCHUSTERS THAT WAS MADE IN 2003. He gets – under the guise of Pacific Pictures Corp – the rights to retrieve and enforce and exploit Joe Schuster's interest in SUPERMAN.** MT's alleged "firewall" between film producing and soliciting business as an attorney comes tumbling down. (*please see enclosed signed agreement, dated October 27, 2003*).

In 2013 MT will own Schuster's side of it; but it does not matter, they will settle before.

MT inquires into the legality of entering into the Pacific Pictures Corporation agreement with the Peavys, heirs to Schuster estate, using law firm Armstrong, Hirsch, Jackoway, Tyerman, & Wertheimer. The inquiry raises strong eyebrows, and questions of legality as to MT's actions in regards to the Schusters, and strongly discourages further involvement with MT and this matter.

5

Q 0005

Exhibit 31
642

August 2003 – Michael Siegel wants an annuity of $200,000, which equaled $3.5 million. MT tells him that "no investor is going to go for that." MT says Warners' estimation was $2 million less; such a bad risk for an investor, MT says. MT is tenaciously going after the 12.5%, and of course, the investor MT "has" is himself. He is trying to get Michael to lower the price.

**MT is also trying to convince Michael Siegel not to sell his interest to another outside party. MT is lying to Michael Siegel to make sure he can still draw a fee from Michael's 12.5% interest. If Michael went away, he would only draw from remaining 37.5%, instead of 50%. In the final letter, MT tells Michael Siegel that he cannot sell without our approval because Michael did not take part in the termination, but "we will give you (Michael Siegel) approval, if you sell it to a third party, *monitored by Marc Toberoff*." MT is lying to Michael Siegel about Siegel's ability to sell his interest in the SUPERMAN copyright.**

**Significantly, MT admits to Laura Siegel that there never was a billionaire willing to invest $15 million when he first approached them. But by then the Siegels were concerned about appearing flaky for changing lawyers a few times. They decide to stick it out.**

October 2, 2004 --- MT files the complaint with the court against Time-Warner. There is disgruntlement in the Siegel camp, regarding the contingency fee. MT pushes hard for 33.3% contingency fee to go up to 40% if it falls within 60 days of trial (which, of course, he would make sure that it would...). In the contingency agreement they signed for SUPERMAN, IPW (Marc Toberoff's *film production company*) would have received a 10% negotiating fee (thus most likely bolstering Ari Emanuel's take in the settlement from Time Warner as well). Thus, Toberoff used the "film production arm" of his company to use as a shell to elicit larger contingency fees from his clients despite the fact that Toberoff maintains that there is a "firewall" between his law firm and his production company. (see John Lippman, *Wall Street Journal* article enclosed.)

MT "graciously" agrees to decrease IPW's take by 5%, which will be deducted from the firm's % fee, applicable to the gross proceeds of any settlement or outcome of the litigations.

****In other words, MT decreases his contingency fee by 5% -- instead of getting 50%, he will get 45%. Combined with the Schuster interest, the aggregate of any outcome in SUPERMAN litigation for Marc Toberoff *personally* becomes 47.5% of the entire Superman interest.***** It becomes clear at this juncture that MT thwarted the earlier deal with Time Warner and DC Comics in 2002 for his own personal gain.

And lastly, on the DUKES OF HAZZARD case, MT pocketed $8.5 million personally, more than any single plaintiff involved in the case (each plaintiff pocketed around $1.7 million). According to the settlement amount, he received an unconscionable 50% contingency fee.

6

Q 0006

Exhibit 31
643

Very strong likelihood that Marc <u>created an entity for the purposes of the lawsuit</u> (Moonrunners Limited, or Moonrunners LLP), which allegedly held the rights at issue and ultimately led to the injunction. Christensen-Miller, Kevin Leichter, or the like need explore in greater detail the existence of the entity in which the rights were allegedly held. It is strongly believed this entity was created only to bolster the lawsuit – that the rights were never conveyed at all.

**MT had his President of Production of IPW, J. Todd Harris, leak the confidential settlement on the DUKES OF HAZZARD case to Variety ($17.5 million). He then called Larry Greenfield, another attorney in his office at the time who has since left, to cover his tracks, "demanding" to know who leaked the amount, and to act as if he was portraying shock and dismay at the leak. MT did it himself to attract more business in town. At least 7 attorneys have come and gone at the Law Offices of Marc Toberoff, and many have left due to ethical issues.**

And lastly, MT is charging 50% in another Allison Giannini case involving real estate. The reason this fact is included is to show a history of charging unconscionable fees.

It should be noted for those at Time Warner that Marc Toberoff has still managed to set up SKYPORT as a producer at Warners, and he has a tangential hold on GILLIGAN'S ISLAND. Fyi.

*****************

cc:  Alan F. Horn
     Jeff Robinov
     John Schulman
     Patti Connolly

7

Q 0007

Exhibit 31
644