Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Nicholas C. Williamson (State Bar No. 231124)
 nwilliamson@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANT LAURA SIEGEL LARSON'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>*Re: Motion to Dismiss and/or Strike Third and Sixth Claims* (Docket No. 147), *under submission per the Court's February 14, 2011 Order* (Docket No. 179)<br><br>*Supplemental Request for Judicial Notice and [Proposed] Order filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................1

    I.      DC's THIRD AND SIXTH CLAIMS FAIL TO STATE A
            CLAIM ..............................................................................................1

          A.     DC Has No Right to a Period of Exclusive Negotiations ......1

          B.     Defendants' Third and Sixth Claims Are Time-Barred.........3

               1.     The Court May Take Judicial Notice of the Facts
                      Establishing that the Claims are Barred by the
                      Statute of Limitations ..................................................3

               2.     DC's Allegations Do Not Toll the Statute of
                      Limitations .................................................................4

               3.     DC's Sixth Claim is Barred by Both the Statute
                      of Limitations and the Litigation Immunity ...............6

          C.     DC's Sixth Claim of "Unfair Competition" Fails to
              State a Claim ........................................................................7

          D.     DC's Sixth Claim is Clearly Pre-Empted .............................8

           E.     DC's References to the Settlement Strategy Must Be
              Stricken ..............................................................................10

               1.     DC's Repeated References to the Settlement
                      Strategy Violate the Parties' JAMS
                      Confidentiality Agreement ........................................10

                2.     The Settlement Strategy Is Privileged ......................11

CONCLUSION...........................................................................................12

1

# TABLE OF AUTHORITIES

2

<u>**Federal Cases**</u>                                                                           <u>**Pages**</u>

3

*Alexander v. Sandoval*,
532 U.S. 275 (2001).........................................................................2

4

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) .........................................................9

5

*Bourne Co. v. MPL Commc'ns, Inc.*,
675 F. Supp. 859 (S.D.N.Y. 1987) ............................................... 2-3

6

7

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...........................................4

8

*Clarke v. American Commerce Nat'l Bank*,
974 F.2d 127 (9th Cir. 1992) .........................................................12

9

10

*David Orgell, Inc. v. Geary's Stores, Inc.*,
640 F.2d 936 (9th Cir. 1981) ...........................................................5

11

*Estate of Blue v. County of Los Angeles*,
120 F.3d 982 (9th Cir. 1997) ....................................................... 3-4

12

13

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) .........................................................6

14

*Foley v. Luster*,
249 F.3d 1281 (11th Cir. 2001) .....................................................10

15

16

*G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*,
958 F.2d 896 (9th Cir. 1992) .........................................................10

17

*Hernandez v. Sutter West Capital*,
2010 U.S. Dist. LEXIS 88109 (N.D. Cal. Aug. 26, 2010) ...............4

18

19

*Hickman v. Taylor*,
329 U.S. 495 (1947).......................................................................12

20

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
2007 U.S. Dist. LEXIS 12786 (N.D. Cal. Feb. 12, 2007) ................6

21

22

*In re Grand Jury Subpoenas*,
906 F.2d 1485 (10th Cir. 1990) .....................................................12

23

*In Re Grand Jury Witness*,
695 F.2d 359 (9th Cir. 1982) .........................................................12

24

25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .........................................................8

26

*Landham v. Lewis Galoob Toys, Inc.*,
227 F.3d 619 (6th Cir. 2000) .........................................................10

27

28

*Low v. SDI Vendome*,
2003 U.S. Dist. LEXIS 27603 (C.D. Cal. Jan. 7, 2003) ....................................... 6

*Medimatch, Inc. v. Lucent Techs., Inc.*,
120 F. Supp. 2d 842 (N.D. Cal. 2000) ................................................................. 6

*Milne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) ........................................................................ 1-3

*Polar Bear Prods. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ........................................................................... 4

*Preminger v. Peake*,
536 F.3d 1000 (9th Cir. 2008) .......................................................................... 2

*Ritchie v. Williams*,
395 F.3d 283 (6th Cir. 2005) ........................................................................... 9

*Roley v. New World Pictures*,
19 F.3d 479 (9th Cir. 1994) ............................................................................. 4

*Stutz Motor Car of Am. v. Reebok Int'l*,
909 F. Supp. 1353 (C.D. Cal. 1995) .................................................................. 6

*United States v. Martin*,
278 F.3d 988 (9th Cir. 2002) ......................................................................... 12

**Federal Statutes and Rules**

F.R.C.P. 26 ................................................................................................. 12

F.R.E. 201 ................................................................................................... 4

17 U.S.C. § 304 ................................................................................ *passim*

H.R. Rep. No. 94-1476 (1976) ........................................................................ 9

**State Cases**

*Broberg v. Guardian*,
171 Cal. App. 4th 912 (2009) .......................................................................... 6

*Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tele. Co.*,
20 Cal. 4th 163 (1999) ................................................................................... 7

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ................................................................................ 4-5

*Jolly v. Eli Lilly & Co.*,
44 Cal.3d 1103 (1988) .................................................................................... 4

*State ex rel. Metz v. CCC Information Services, Inc.*,
149 Cal. App. 4th 402 (2007) ....................................................................... 5-6

**<u>State Statutes and Rules</u>**

Cal. Bus. & Prof. Code § 17200 ...................................................................1, 3, 7

**<u>Other Authorities</u>**

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.01 ................................9

Schwarzer, *et al.*, *Fed. Civ. Proc. Before Trial* § 11:285 (2010) ......................12

TABLES OF CONTENTS AND AUTHORITIES

## INTRODUCTION

DC's Opposition ("Opp.") to Defendants' Motion to Dismiss ("Mot.") the First Amended Complaint's ("FAC") Third and Sixth Claims, while larded with hyperbole and innuendo, fails to refute the Motion or demonstrate that DC has a legally cognizable right or standing to bring its claims.  DC fails to state a claim because its Third and Sixth Claim are both falsely premised on a nonexistent "right" to exclusively negotiate with the executor of the Shuster Estate ("Shuster Executor") to buy back the copyrights that are subject to termination.  As DC has no such "right" under 17 U.S.C. § 304(c)(6)(D), its Third and Sixth Claims fail *as a matter of law*. DC's Third and Sixth Claims are also barred by:  (i) the statute of limitations, as the claims accrued by 2006; and (ii) DC's reliance on information (a) that it agreed to keep confidential, (b) is protected by the attorney-client privilege, and (c) was held privileged by this Court.  DC's Sixth Claim is also barred by (i) the litigation immunity under Cal. Civil Code §47(b), and (ii) its failure to state a viable claim under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

## ARGUMENT

### I.   DC's THIRD AND SIXTH CLAIMS FAIL TO STATE A CLAIM

#### A.   DC Has No Right to a Period of Exclusive Negotiations

DC's Third and Sixth Claims are premised on the false construct that DC purportedly has a right of exclusive negotiation under § 304(c)(6)(D).  However, the plain language of § 304(c)(6)(D) does not provide a terminated grantee like DC with any such "right," and simply states:  "[A] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination."  Aware that this provides it with no rights or standing, DC falsely claims that *Milne v. Stephen Slesinger, Inc.,* 430 F.3d 1036 (9th Cir. 2005) holds that § 304(c)(6)(D) creates a substantive "right in DC's favor." Opp. at 7:28-8:1.  But *Milne* establishes no "right" either.  Rather, it simply states:

"Congress included the general rule in section 304(c)(6)(D) – prohibiting a new grant of rights terminated by statute until after the

SIEGEL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

> effective date of termination…The exception to this rule provides that once a notice of termination is served, the original grantee or his successor-in-title…is the only party to whom the author (or author's heir) may promise a future grant, and is therefore similarly ***intended to give the original grantee a competitive advantage*** over third parties…to obtain the rights covered by the terminated grant. ….."

*Id.* at 1047-48 (emphasis added).  *Milne* is fully consistent with *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 864 (S.D.N.Y. 1987) ("[§ 304(c)(6)(D)] does give the terminated grantee a preferred competitive position.").  However, § 304(c)(6)(D) does not mandate that the Shuster Executor sell its recaptured copyrights to DC, or even negotiate with DC, either before or after the effective termination date.  *Id.* at 865 n.11 ("[T]he statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else.").

If Congress intended to give a terminated grantee the right of exclusive negotiations advocated by DC, rather than a mere "competitive advantage," it would have done so in the statute.[1]  Despite DC's flailing attempts to split these authorities, there is no conflict between § 304(c)(6)(D), *Bourne*, and *Milne*:  all recognize that original grantees have a slight "competitive advantage," since before the effective date of termination the terminating party can only transfer its recaptured copyrights to the original grantee, and ***none*** recognize this "advantage" as a substantive right.

As § 304(c)(6)(D) does not create a "legally protected interest," it does not confer standing on DC to sue thereunder.  *Preminger v. Peake*, 536 F.3d 1000, 1005 (9th Cir. 2008).[2]  Further, there is no federal cause of action unless Congress showed "an intent to create not just a private right but also a private remedy," and without such intent, "a cause of action does not exist and courts may not create one." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  No matter how DC's counsel may

---

[1] *See Milne*, 430 F.3d at 1048 ("[I]f Congress intended to require a 'moment of freedom,' it would have clearly said so."); *Bourne*, 675 F. Supp. at 865 n.11 (noting that Congress did not mandate in "the statute or the legislative history" that "a grant is valid only if *negotiated* after the termination date").

[2] DC misleadingly argues that "Defendants counter that … section 304(c)(6)(D) provides 'a right without a remedy,'" purporting to quote Defendants, and then attacks this straw man. Opp. at 5:3-6.  **The quoted language appears nowhere in Defendants' Motion**.  Instead, Defendants have consistently argued that § 304(c)(6)(D) provides a competitive advantage, but "no particular 'rights,'" and that therefore DC has no standing.  Motion at 7-8.

1   try to divert the Court's attention with unsupported accusations of "fraud," "back-

2   room dealings," and "illicit consent agreements," DC's prejudicial diversions cannot

3   confer a protectible interest where none exists.

4        In fact, less than a year before filing DC's Third and Sixth Claim herein, DC's

5   counsel, Mr. Petrocelli, made precisely opposite arguments in the continuing *Milne*

6   litigation, long ***after*** the *Milne* decision he now cites as contrary authority:

7        "Section 304(c)(6)(D), however, cannot be invoked to trigger a Section 17200
         violation, because it concerns the *enforceability of contract* and not the
8        *lawfulness of conduct*…. Section 304(c)(6)(D) of the Copyright Act 'provides
         merely that an agreement between the terminating party and the terminated
9        grantee prior to the effective date of termination is the only one that is *valid*
         and *enforceable* against the former.' *Id.* [*Bourne*, 675 F. Supp.] at 865
10       (emphases added). This section does not create a 'right of first refusal,' does
         not 'give the terminated grantee a preferred competitive position,' and it
11       'neither *compels* the terminating party to negotiate with the terminated grantee,
         nor *forbids* him from negotiating with anyone else.'" *Id.* (emphases added)."
12  *Milne v. Stephen Slesinger, Inc.*, 2009 U.S. Dist. Ct. Motions LEXIS 49109, at *39,

13  *39 n.10 (C.D. Cal. July 6, 2009) (emphasis in original).[3]  *See* Supplemental Request

14  for Judicial Notice, ("SRJN") Ex. A.[4]

15       **B.    Defendants' Third and Sixth Claims Are Time-Barred**

16            **1.    The Court May Take Judicial Notice of the Facts Establishing
                      that the Claims Are Barred by the Statute of Limitations**
17

18       DC's rhetoric is also ineffective to avoid the fact that its Third and Sixth

19  Claims are time-barred.  DC's argument that the statute of limitations defense cannot

20  be decided on a motion to dismiss due to its "factual" nature is unavailing.  Opp. at

21  12.  It is well-established that courts can and should apply the statute of limitations

22  on a motion to dismiss if the relevant facts are alleged in the complaint or can be

23  judicially noticed.  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

24  ─────────────
    [3] Mr. Petrocelli went so far as to misrepresent *Bourne* as saying § 304(c)(6)(D) does "not
25  'give the terminated grantee a preferred competitive position,'" (*id.*) when *Bourne* expressly
    says the exact opposite.  675 F. Supp. at 865.

26  [4] See also *Milne*, 2002 U.S. Dist. Ct. Motions LEXIS 8508 (C.D. Cal. Feb. 10, 2003), at *1,
    Petrocelli's earlier motion to dismiss in the *Milne* case:  "[Defendants] contention that the
27  Copyright Act creates a statutory right is inconsistent with the plain language of the Act and
    has been expressly rejected by the only federal court reporting a decision on the issue. As
28  the District Court for the Southern District of New York held in [*Bourne*,] Section
    304(c)(6)(D) of the Copyright Act does not provide for a 'right of first refusal' or any
    'exclusive period of negotiation.'  *Id.* at 865-866."  SRJN, Ex. B.

SIEGEL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

1  Cir. 1997) ("[T]he pleadings themselves contain a detailed account of the procedural

2  history…. [W]e may properly take judicial notice of the papers filed…. It therefore

3  was not error to decide the statute of limitations question on a motion to dismiss").

4      DC's Third and Sixth Claims are expressly based on the 2001 and 2003 Pacific

5  Pictures Corporation agreements ("PPC Agreements") and the 2002 IP Worldwide

6  Agreement. FAC, ¶¶ 169, 188. It is indisputable that all these agreements were

7  voluntarily produced to DC on or before November 15, 2006, and that DC took

8  extensive deposition testimony regarding these agreements and Mr. Toberoff's

9  relationship with the Siegels and Shusters in 2006. RJN Exs. I-K. This Court can

10  readily take judicial notice of these facts.[5] DC's Third Claim for declaratory relief

11  under the Copyright Act thus had to have been filed within three years (2009) under

12  17 U.S.C. § 507(b), but it was not filed until May 2010, and is therefore barred.[6]

13              **2.    DC's Allegations Do Not Toll the Statute of Limitations**

14      Since DC cannot deny that it received these agreements in 2006, it attempts to

15  invoke the "discovery rule," claiming that it only became aware of an "overall

16  pattern" in December 2008 when the so-called Toberoff Timeline was produced.

17  However, accrual of a claim is only postponed by the "discovery rule" until "the

18  plaintiff has notice or information of circumstances to put a reasonable person on

19  inquiry [notice]…." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110-11 (1988). The

20  discovery rule "only delays accrual until the plaintiff has, or should have, inquiry

21  notice of the cause of action," and "plaintiffs are charged with presumptive

22  knowledge of an injury if they have 'information of circumstances to put [them] on

23  inquiry' or if they have 'the opportunity to obtain knowledge….'" *Fox v. Ethicon*

24  _____

[5] *See, e.g.,* F.R.E. 201(b) (court can take judicial notice of facts "not subject to reasonable
25  dispute"); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (granting
12(b)(6) motion on statute of limitations based on judicial notice of telephone transcripts);
26  *Hernandez v. Sutter West Capital*, 2010 U.S. Dist. LEXIS 88109 at *8 (N.D. Cal. Aug. 26,
2010) (granting 12(b)(6) motion on statute of limitations via judicial notice of loan docs).

27  [6] *See Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) (holding that the
statute of limitations accrues under the Copyright Act when "the plaintiff learned or by
28  reasonable diligence could have learned that he had a cause of action"); *Roley v. New World
Pictures*, 19 F.3d 479, 481 (9th Cir. 1994) (holding that a "copyright [claim] accrues when
one has knowledge of a violation or is chargeable with such knowledge").

1 *Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005) (citation omitted).  "Plaintiffs are

2 required to conduct a reasonable investigation after becoming aware of an injury, and

3 are charged with knowledge of the information that would have been revealed[.]" *Id.*

4   DC's argument that the PPC Agreements and IP Worldwide Agreement did not

5 put it on inquiry notice of a supposed "overall pattern" of "consent agreements" is

6 contradicted by DC's repeated reference to these contracts as consent agreements and

7 its citation throughout its FAC of allegedly violative "consent" provisions in these

8 agreements.[7]  Based on ***DC's own allegations,*** it did not need the anonymous

9 Toberoff Timeline to "discover" Defendants' alleged violation of DC's purported

10 "rights" through "consent agreements."  The disclosure of these agreements in 2006

11 and related testimony was more than sufficient to put DC on inquiry notice.

12   Nor can DC evade the statute of limitations by arguing that its Third Claim is

13 based on a "continuing course of conduct," and that the limitations period "only

14 commences when such a continuing harm ceases."  Opp. at 11.  First, any possible

15 harm to DC's alleged "right" due to the 2001-2003 Pacific Pictures Agreements or

16 2002 IP Worldwide Agreement ended when such agreements were cancelled in 2004

17 and expired in 2005, respectively.  *See* Mot. at 8; FAC, ¶¶ 81-83, 99.  Second, there

18 is no "continuing accrual" of the statute, as that doctrine does not apply "when an

19 obligation or liability arises on a recurring basis."  *David Orgell, Inc. v. Geary's*

20 *Stores, Inc.*, 640 F.2d 936, 937-38 (9th Cir. 1981) (holding that where claim was

21 based on defendant's repeated refusal to deal with plaintiff, the statute of limitations

22 accrued at the initial refusal, and subsequent refusals were merely "a reaffirmation of

23 the original decision not to deal with the plaintiff"); *State ex rel. Metz v. CCC Info.*

24 *Services, Inc.*, 149 Cal. App. 4th 402, 418-19 (2007) (ongoing, allegedly fraudulent

25 statements did not allow "continuing accrual," because the claim commenced with

26 ───────────────
[7] *See* FAC, ¶ 62 (quoting the 2001 PPC Agreement as "transferring and assigning" rights), ¶
27 63 (stating that the 2001 PPC Agreement required "express written consent" for the Shusters to enter into agreements regarding Superman), ¶ 82 (quoting the 2002 IP
28 Worldwide Agreement: "Siegel heirs could 'not transfer, assign, license, or in any manner encumber the rights … other than through or as a result of IPW's exclusive representation"), ¶ 169 (the 2003 PPC Agreement required "express written approval" for rights transfers).

5
SIEGEL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

1  prior activity).  The "continuing" doctrine only applies "where there is 'no single

2  incident' that can 'fairly or realistically be identified as the cause of significant

3  harm.'"  *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (cited by DC).

4  Here, DC alleged that it was harmed by each agreement; DC's receipt of such

5  agreements in 2006 triggered the statute.

6

7  ### 3.  DC's Sixth Claim is Barred by Both the Statute of Limitations and the Litigation Immunity

8  Nor does the "discovery rule" save DC's Sixth Claim from the UCL's four-

9  year statute of limitations.  Cases – especially federal cases – refuse to apply the

10  "discovery rule" to UCL claims, and hold that such claims accrue at the moment of

11  supposed injury.[8]  DC relies on a statement in *Broberg v. Guardian*, 171 Cal. App.

12  4th 912, 920-21 (2009) that there is some "disagreement [over] whether the so-called

13  delayed discovery rule applies to [UCL] claims."  *Id.*  However, whereas *Broberg*

14  elected to narrowly apply the discovery rule to a UCL claim for "fraud," DC's Sixth

15  Claim sues broadly under the UCL, and does not adequately plead fraud.  Section

16  I.D, *infra*.  As such, *Broberg* offers no basis to apply the "discovery rule" to DC's

17  Sixth Claim.  Thus, as to the 2001/2003 PPC Agreements and the 2002 IP Worldwide

18  Agreement, DC's claim accrued when the alleged conduct occurred – *i.e.,* by 2003 –

19  and is barred by the four-year statute of limitations.  *See* Mot. 10:11-11:2.

20  Both the PPC Agreements and the IP Worldwide Agreement clearly reference

21  potential litigation regarding recaptured Superman copyrights, and were entered into

22  during a clear climate of anticipated litigation apparent from the Siegels' settlement

23  negotiations.  FAC, ¶¶ 60-65, 90.  The anticipated *Siegel* litigation commenced in

24  2004.  DC's Sixth Claim also alleges post-litigation "consent agreements" between

25  the Siegels and Shusters (FAC, ¶ 170), but DC's reliance on these is clearly barred by

26  the litigation immunity of Civil Code § 47(b).  DC weakly argues that such "consent

---

27  [8] *See Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995)
(discovery rule inapplicable to UCL claims); *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F.
28  Supp. 2d 842, 861 (N.D. Cal. 2000) (same); *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2007 U.S. Dist. LEXIS 12786, at *18 (N.D. Cal. Feb. 12, 2007) (same);
*Low v. SDI Vendome*, 2003 U.S. Dist. LEXIS 27603 (C.D. Cal. Jan. 7, 2003) (same).

1   agreements" do not fall within the litigation immunity because they are purportedly

2   "rights-impairing contracts."  Opp. at 25:18-21.  However, DC admits that such

3   "consent agreements" involve *settlement* of litigation – FAC, ¶ 170 (such "[consent]

4   agreements … impede [DC's] ability to settle any and all disputes with the Shusters

5   and Siegels"), ¶ 188 ("[The consent agreements] strip the Siegels and Shusters of

6   their right freely to settle their claims ….") – and where the alleged conduct regards

7   "settlement … [the] Civil Code section 47 litigation privilege applies *as a matter of*

8   *law*."  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 972 (2010) (emphasis added).

9           **C.   DC's Sixth Claim of "Unfair Competition" Fails to State a Claim**

10          DC's Sixth Claim also does not plead any "unlawful, unfair, or fraudulent

11  conduct" as required under the UCL, and must be dismissed as a matter of law.  Cal.

12  Bus. & Prof. Code § 17200.  DC's Sixth Claim alleges that the various "consent

13  agreements" are "unlawful" as they supposedly violate § 304(c)(6)(D).  FAC, ¶¶ 170,

14  187-88.  However, DC argues that the alleged "consent agreements" "prohibit the

15  Shusters and Siegels from entering into agreements without approval of other

16  defendants," not that they are a "grant, or agreement to make a further grant" of

17  rights barred by § 304(c)(6)(D).  Opp. at 14:10-11; *see* FAC, ¶ 170.  Even if DC had

18  properly alleged such "grants," § 304(c)(6)(D) would, at best, render the grants

19  unenforceable, not "unlawful."  *See* Section I.A; Mot. at 14.

20          As to the "unfair" prong, conduct is only unfair if it "significantly threatens or

21  harms competition" – *i.e.,* presents an "antitrust" type of injury.  *Cel-Tech*

22  *Commc'ns, Inc. v. L. A. Cellular Tele. Co.*, 20 Cal. 4th 163, 187 (1999).  DC argues

23  that the consent agreements "forbid making an agreement with a lawful competitor in

24  the marketplace," and therefore "injure competition."  Opp. at 14:11-12.  *First,* DC

25  has made no FAC allegations of injury to *competition* in the market for Superman.  In

26  fact, it is clear that DC seeks to squelch all competition, by asserting a fictitious

27  "right" of exclusivity.  FAC, ¶ 168.  *Second,* as alleged, the "consent agreements" do

28  not "forbid" the Siegels or Shusters from negotiating with DC; but only requires their

1    mutual approval.  *Third*, there is no right to negotiate that could otherwise ground a

2    claim for "unfair" competition.  *See* Mot. at 15; *Racine & Laramie, Ltd. v. Dep't of*

3    *Parks & Recreation*, 11 Cal. App. 4th 1026, 1034 (1992).

4        As to the "fraudulent" prong, DC's unsupported argument that Toberoff

5    "fraudulently" induced the Siegels to repudiate the purported settlement agreement

6    fails.  *First*, the Sixth Claim does not even refer to fraud; it refers only to "unlawful"

7    and "unfair[]" conduct; the naked "fraud" language that DC threw in its FAC

8    elsewhere does not salvage its claim.  FAC, ¶ 188.  *Second*, DC does not plead fraud

9    with the requisite specificity under the UCL and F.R.C.P. 9(b).  DC's general (and

10   invented) allegations that Toberoff supposedly puffed to the Siegels' attorney that

11   "he had found a 'billionaire investor' … and that he would 'help the Siegel Heirs

12   produce' competing [*sic*] Superman movie" (Opp. at 14:25-26) lack the "what, when,

13   where, and how" that even DC admits is necessary.  Opp. at 14:23.  *See Kearns v.*

14   *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (rejecting UCL fraud claim due

15   to failure to plead "particular circumstances surrounding such representations").

16   *Third*, fraud claims under the UCL require "'intent to defraud, *i.e.*, to induce reliance;

17   [and] justifiable reliance.'"  *Id.* at 1126.  DC pleads neither (i) that Toberoff intended

18   that the Siegels rely on the purported representations, nor (ii) that the Siegels

19   *justifiably* relied on them.  *See* FAC, ¶¶ 78-80.  *Fourth*, DC pleads itself out of any

20   fraud claim by alleging that "Toberoff admitted to the Siegel Heirs that he misled

21   them," which makes reliance on such statements facially *unjustifiable*.  FAC, ¶ 85.

22   ### D.    DC's Sixth Claim is Clearly Pre-Empted

23       DC does not and cannot dispute that its Sixth Claim is facially equivalent to its

24   Third Claim, based on the Copyright Act (17 U.S.C. § 304(c)(6)(D)), which the Sixth

25   Claim incorporates by reference.  FAC, ¶¶ 171-72, 188-89.  In its opposition to

26   Defendants' Anti-SLAPP motion, DC unwittingly concedes preemption:  "[T]he

27   consent agreements violate California's [UCL], because, *e.g.*, they violate the

28   Copyright Act."  Docket No. 92 at 17:5-6.  Nor does DC ever explain what "extra

element" is present in the Sixth Claim that makes "the right asserted qualitatively different," as required to avoid preemption by the Copyright Act. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005). DC's unavailing opposition solely depends on its erroneous argument that a claim concerning the Copyright Act's termination provisions is not preempted by § 301 because, even though § 304's termination provisions concern copyright ownership, § 304 is not explicitly listed in § 106. Opp. at 16:4-5. This is double talk.

Section 301 of the Copyright Act "***broadly*** preempts state law claims." *Ritchie v. Williams*, 395 F.3d 283, 285 (6th Cir. 2005) (emphasis added). § 301(a) preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 in works of authorship … [and] come within the subject matter of copyright as specified by sections 102 and 103," which "are governed exclusively by this title." However, "the reference to Section 106 in the phrase found in Section 301 – 'equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106' – should be construed by way of identification and not limitation. Accordingly, if a state-created right is 'within the general scope of copyright,' it is subject to pre-emption, even if the precise contours of the right differ from any of those conferred by Section 106." 1 *Nimmer* § 1.01[B][1] (quoting H.R. Rep. No. 94-1476 (1976) at 130).

DC's California UCL claim, which merely duplicates DC's Third Claim under the Copyright Act, is clearly preempted. *First*, it indisputably falls within the "subject matter of copyright," because it addresses whether Defendants' alleged acts as to § 304 termination violated DC's alleged "right" under § 304(c)(6)(D) of the Act. *Second*, DC's UCL claim *expressly* seeks to "establish the parties' respective rights and obligations with respect to the copyright interest in the Superman material," which includes § 106's "exclusive rights." FAC, ¶ 189. The termination notices, served under the Copyright Act, recapture Superman copyrights, the scope of which is defined under § 106 and clearly impact DC's "exclusive rights" under § 106.

SIEGEL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC

By its Sixth Claim, as with its Third Claim, DC seeks to repurchase its exclusive rights under § 106 to the Superman copyrights.  DC's UCL claim thereby implicates and is inextricably intertwined with copyright ownership, and thus the rights in § 106. *See G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904 (9th Cir. 1992) ("Copyright preemption is both explicit and broad[.]").[9]

## E.    DC's References to the Settlement Strategy Must Be Stricken

### 1.    DC's Repeated References to the Settlement Strategy Violate the Parties' JAMS Confidentiality Agreement

DC's allegations as to so-called "consent agreements" entered into with respect to Court-ordered settlement mediation and disclosed in settlement discussions (the "Settlement Strategy") pursuant to the parties' May 1, 2008 JAMS Confidentiality Agreement ("Confidentiality Agreement") willfully violate such agreement.[10]  DC was on notice of such violation when it unsuccessfully attempted to compel production of such agreements, and was ordered by this Court on January 14, 2009 not to disclose such protected information ("January 14 Order").  RJN, Ex. B, Ex. G. DC was again placed on notice of its egregious violation of both the Confidentiality Agreement and the January 14 Order in Defendants' prior motion to dismiss DC's complaint.  *See* Docket No. 34.  Undeterred, DC and its counsel continued this outrageous course of conduct in the FAC.  DC's counsel, Mr. Petrocelli, cavalierly describes such protected settlement discussions in his declaration in direct violation of the Confidentiality Agreement and this Court's January 14 Order.

While willfully breaching the iron-clad terms of the Confidentiality

---

[9] *See Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623 (6th Cir. 2000) (State laws are "impliedly preempted by the Copyright Act if they … undermine the [] Act's fundamental purpose of providing a uniform system for protecting" copyrights.); *Foley v. Luster*, 249 F.3d 1281, 1286 (11th Cir. 2001) ("The Copyright Act…preempts most state actions so that its rights and remedies will be consistent for all copyright holders.").

[10]  DC speciously argues that Defendants waived any confidentiality by filing their motion. After DC blatantly violated the Confidentiality Agreement by revealing the substance of settlement discussions in its FAC (¶¶ 101, 170), Defendants were forced to respond, but phrased their response (*e.g.*, simple reference to "Settlement Strategy") to curtail disclosure. Mot. at 17.  Moreover, this limited information had already been made public in DC's failed motion to compel in *Siegel* and in its complaint herein.  *See* RJN, Ex. F.

Agreement,[11] DC focuses on mediation and settlement privileges that Defendants do *not* assert, and resorts to more *ad hominem* attacks on Mr. Toberoff to distract from the clear legal issues.[12]  The Settlement Strategy was drafted by Mr. Toberoff, as counsel, based on detailed communications with his clients, days before and in anticipation of a Court-ordered settlement mediation.  RJN, Ex. C, ¶ 9.  The disclosure was made in a May 2, 2008 letter marked "Confidential-For Settlement Purposes Only," which stated that it was sent "pursuant to the executed JAMS Confidentiality Agreement," prior to a May 8, 2008 Court-ordered settlement mediation.  RJN, Exs. A, C.  The Confidentiality Agreement unequivocally states:

> "All parties, counsel…attending any Settlement Conference shall treat all such discussions as strictly confidential in every respect…('Confidential Settlement Information')…[and] any document that is marked 'Confidential – For Settlement Purposes Only' and is disclosed or produced *at or in connection with a Settlement Conference* shall be treated as Confidential Settlement Information. ***Confidential Settlement Information shall not be disclosed to anyone other than the parties, their counsel or the mediator or used in any way shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly[.]***"

RJN, Ex. C (emphasis added).[13]  DC misleadingly quotes only the portion of the Confidentiality Agreement that additionally references free-standing protections under California's Evidence Code, but DC and its counsel deliberately omit the binding contractual provision they deliberately breached.  The Agreement was to ensure that the parties could speak without fear that their discussions would be used against them – a worthy objective violated by DC without hesitation or remorse.

## 2.    The Settlement Strategy Is Privileged

DC argues that the Settlement Strategy is not privileged. *First*, this Court has already rejected DC's anti-privilege arguments.  *See* Mot. at 20-21; RJN, Exs. B, F,

---

[11] *See* Declaration of Daniel Petrocelli ("Petrocelli Decl."), ¶ 52 (just "before a [] mediation session in the Siegel case, Mr. Toberoff informed DC Comics about…"); ¶ 53 ("[D]uring a mediation session on April 26, 2010, DC Comics was informed that…").

[12] DC falsely claims that Defendants raise the Confidentiality Agreement for the first time in this motion.  Opp. at 19:2-4.  This is patently false.  *See* Docket No. 34 at 22-24.

[13] DC does not even attempt to identify which of the three exceptions expressly set forth in ¶6 of the JAMS agreements might apply to this situation, as clearly none do.  RJN, Ex. C.

G (January 14 Order).  DC, in its Complaint, its FAC and its Opposition has violated the Court's January 14 Order with impunity.  *Second*, this is a *circular argument* purportedly based on disclosures *protected by the Confidentiality Agreement*.[14] *Third*, while DC's Opposition spends five pages attacking straw man settlement/mediation privileges (Opp. at 18-23) **not asserted by Defendants**, DC never addresses Defendants' assertion of the attorney-client privilege and attorney work product doctrine.  Mot. at 18, 20-21; RJN, Ex. F at 9-15.  The Settlement Strategy contains Mr. Toberoff's legal advice to his clients regarding settlement of their terminations, which is absolutely privileged.  RJN, Ex. F.  *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).  Such is also protected by the work product doctrine, as it "reveal[s] an attorney's strategy [or] evaluation of strengths and weaknesses."  Schwarzer, *et al.*, *Fed. Civ. Proc. Before Trial* § 11:285 (2010), *citing Hickman v. Taylor*, 329 U.S. 495, 511 (1947). *See* F.R.C.P. 26(b)(3).

DC vaguely states that the Settlement Strategy is not confidential or privileged (Opp. at 24:12-14), apparently solely because it is alleged as an "agreement." However, that is not a barrier to privilege.  For instance, the Ninth Circuit has held that retainer agreements that "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided" *are* protected by the attorney-client privilege, *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992), and distinguishes between routine fee and billing information therein and substantive attorney-client communications.  *In Re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982).  *See In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990) (agreements containing privileged information are privileged).  As the Settlement Strategy *is* privileged, DC's entire argument fails.

## CONCLUSION

Plaintiff's Third and Sixth Claims should be dismissed with prejudice.

---

[14] DC could not have otherwise known or challenged the Settlement Strategy, as the parties agreed that they need not log privileged communications after filing of the *Siegel* action. *See* SRJN, Ex. C at 13, ¶ 30.  DC's challenge itself violates the Confidentiality Agreement.

1   DATED:  March 29, 2010          TOBEROFF & ASSOCIATES, P.C.

2
                                    By_____
3                                            Marc Toberoff

4                                   Attorneys for Defendants Mark Warren Peary,
                                    as personal representative of the Estate of
5                                   Joseph Shuster, Jean Adele Peavy and Laura
                                    Siegel Larson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIEGEL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FAC