Marc Toberoff (State Bar No. 188547)
 *mtoberoff@ipwla.com*
Nicholas C. Williamson (State Bar No. 231124)
 *nwilliamson@ipwla.com*
Keith G. Adams (State Bar No. 240497)
 *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone: (310) 246-3333
Fax:       (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>             Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>             Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**SUPPLEMENTAL BRIEF RE: ISSUE PRECLUSION AS TO DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>*Re: Motion to Dismiss and/or Stay First and Second Claims* (Docket No. 148), *under submission per the Court's February 14, 2011 Order* (Docket No. 169)<br><br>*Reply and [Proposed] Order filed concurrently*<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set |

# INTRODUCTION

Defendants Mark Warren Peary and Jean Adele Peavy (the "Shuster Defendants") submit this supplemental brief to address the issue preclusion effect of the Court's recent entry of a Rule 54(b) final judgment (the "54(b) Judgment") in the related case of *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx) ("*Siegel*"), on the Shuster Defendants' Motion to Dismiss Plaintiffs' First and Second Claims ("Motion to Dismiss").  *See Siegel*, Docket Nos. 659, 660.  Rule 54(b) judgment has been entered in *Siegel* on the Siegels' First Claim, for a declaration that the Siegel Termination was valid and as to the Superman works thereby recaptured, as well as on the denial of DC Comics' ("DC") First through Fourth Counterclaims.  *Id.*  The Shuster Defendants briefly raised issue preclusion in their Motion to Dismiss (*see* Docket No. 148 at 25 n.19), but at that time, the Rule 54(b) judgment had yet not been entered.

The doctrine of issue preclusion or collateral estoppel bars re-litigation of issues that have been decided against a party on the merits.  DC's First and Second Claims in this related action raise the following redundant issues, which are barred under the issue preclusion doctrine pursuant to the recent 54(b) Judgment:

- DC's First Claim, Section (4) (Docket No. 49, First Amended Complaint ("FAC"), ¶¶ 126-28) (May 21, 1948 Consent Judgment)
- DC's Second Claim, sub-parts (a) (*id.*, ¶¶ 153-54) (Unpublished Superman Works) and (c) (*id.*, ¶¶ 158-59) (Work For Hire).

To be clear, the Shuster Defendants do not request claim preclusion, but only that DC is bound by the 54(b) Judgment in *Siegel* on the same ***issues in this case***.

### A. DC's First and Second Claims Should Be Barred under the Doctrine of Issue Preclusion

#### 1. Issue Preclusion Bars Relitigation of Issues Already Decided Against a Party to Prior Litigation

The issue preclusion or collateral estoppel doctrine "has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same

party … and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under [issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995). Issue preclusion applies where:

> (1) [T]he issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party ***against*** whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (emphasis added) (citation omitted). *See Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir. 1996) (issue preclusion "bars relitigation of issues 'actually litigated and necessarily determined by a court'" in "'subsequent suits based on a different cause of action involving a party to the prior litigation.'") (citations omitted). Therefore, DC Comics, as a party to both *Siegel* and this case, is bound here as to all "issues" finally decided against it in *Siegel*.

### 2. Rule 54(b) Judgments Are "Final" For Purposes of Issue Preclusion

For purposes of issue preclusion, a "final judgment" is "any prior adjudication … sufficiently firm to be accorded conclusive effect." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988). A Rule 54(b) judgment is considered "sufficiently firm" to support issue preclusion. *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) ("[A] 54(b) ruling in fact has res judicata ramifications."); *Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) (approving lower "court's orders [that] found preclusive the partial final judgment under Federal Rule of Civil Procedure 54(b)"); *Flores v. Emerich & Fike*, 2008 U.S. Dist. LEXIS 49385, *28-29 (E.D. Cal. June 17, 2008) (where a court has "entered final judgment pursuant to Rule 54(b) … there has been a final judgment" for preclusion purposes).

Judgments also have issue preclusion effect while an appeal is threatened or pending like in *Siegel*. *See Robi*, 838 F.2d at 327 (pending appeals "in no way affect the 'firmness' of the [trial court] decisions … for purposes of issue preclusion"). It is clear that the 54(b) Judgment in *Siegel* supports issue preclusion in this case.

### 3. Numerous Issues in DC's First and Second Claims Were Already Decided in Siegel

The issues already decided in *Siegel* included, most importantly, (1) the validity of the Siegel Termination and (2) the Superman works thereby recaptured, which, in turn, implicated numerous decisions as to which, if any, Superman works, co-authored by Jerry Siegel and Joe Shuster, were "works made for hire," as this is the sole exclusion to the Copyright Act's termination provisions, 17 U.S.C. § 304 (c). *See Siegel*, Docket No. 644 (*Siegel* TAC), ¶ 74.

Large sections of DC's First Claim and most of DC's Second Claim are a blatant attempt to re-litigate such issues (already litigated and resolved in *Siegel*) as to the Shuster Termination. *Compare, e.g.,* Docket No. 49 ("FAC"), ¶¶ 153-54, 158-59 (work for hire issues) *with Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1126-30 (C.D. Cal. 2008) ("*Siegel I*"); 658 F. Supp. 2d 1036, 1063-68, 1083 (C.D. Cal. 2009) ("*Siegel II*") (work for hire issues). However, because Siegel and Shuster co-authored the same Superman works and executed the same Superman grants subject to termination, any issues finally decided with respect to the Siegel Termination have been effectively decided with respect to the Shuster Termination.

**DC's First Claim:** Section (4) of DC's First Claim (FAC, ¶¶ 126-28), argues that the Shuster Termination is purportedly invalid because it did not list a May 21, 1948 consent judgment between DC and Siegel and Shuster, which the termination notice was not required to list. DC made the identical erroneous argument in its First Counterclaim in *Siegel*, which the Court roundly rejected:

> The [May 21, 1948] consent judgment at issue did not effectuate any transfer of rights from Siegel and Shuster to Detective Comics. If any rights were transferred as a result of the Westchester action, such a transfer was effectuated by the execution of the earlier stipulated agreement of the

parties, not a document created two days later which simply memorialized the transfer that the stipulation itself had accomplished. The binding nature of the transfer contained in the stipulation was completed the moment that agreement was executed. The consent judgment was a mere formality whose execution (or lack thereof) did not detract from the otherwise binding nature of the parties' earlier agreement. It merely parroted what was already agreed to by the parties in the stipulation itself.

*Siegel I,* 542 F. Supp. 2d at 1131. Because the denial of DC's First Counterclaim is covered by the 54(b) Judgment, DC is bound in this case by the prior decision in *Siegel* that the 1948 consent judgment need not be listed in a termination notice because "it did not effectuate any transfer of rights from Siegel and Shuster to Detective Comics [DC's predecessor]." Accordingly, Section (4) of DC's First Claim must be dismissed as a matter of law.

**DC's Second Claim:** The 54(b) Judgment as to the First Claim in *Siegel* also encompasses decisions as to many of the issues in DC's Second Claim in this case.

Sub-Part (a)/"Unpublished Superman Works": DC makes a convoluted argument that so-called "Unpublished Superman Works," created circa 1934-35, were later published as part of, and are supposedly somehow themselves, "works for hire," purportedly not subject to the Shuster Termination. FAC, ¶¶ 153-54. However in deciding the First Claim in *Siegel*, the Court already held that ***all*** unpublished Superman material, created by Siegel and/or Shuster ***before March 1938*** (the date of Siegel and Shuster's first copyright grant to Detective Comics), was not work for hire, rejecting DC's faulty arguments. *Siegel II*, 658 F. Supp. 2d at 1061.

Sub-Part (c)/"Work For Hire": DC erroneously re-argues in this case that the first Superman story published in *Action Comics*, No. 1, as well as ***all*** other Superman works, were "works made for hire," exempt from termination. FAC, ¶¶ 158-59. DC's claim was heavily litigated, fully considered and rejected by this Court in *Siegel*. Notably, this Court held that DC is bound by a prior 1974 decision of the Second Circuit that *Action Comics*, No. 1 was ***not*** a "work-for-hire." *Siegel I*, 542 F. Supp. 2d at 1127.

In addition to *Action Comics*, No. 1, this Court also expressly held that *Action Comics*, No. 4, *Superman*, No. 1, and the first two weeks of the Superman

4
SUPPLEMENTAL BRIEF RE: ISSUE PRECLUSION ON MOTION TO DISMISS 1ST & 2ND CLAIMS

"newspaper" strips were not "works-for-hire," and were therefore all subject to statutory termination. *Siegel II*, 658 F. Supp. 2d at 1063-68, 1083.

### 4. DC's Purported "Legal" or "Factual" Differences Are Irrelevant

DC itself has conceded that these actions, and their legal and factual issues, are *very* closely related.[1] DC will nonetheless attempt to circumvent issue preclusion by arguing that purported "legal" or "factual" differences prevent its application. Such arguments are unpersuasive.

<u>Shuster Termination</u>: DC will undoubtedly assert that the issues are not identical in this case as those adjudicated under the First Claim and the First through Fourth Counterclaims in *Siegel*, by arguing that these concerned the Siegel Termination, while this case concerns the Shuster Termination. Upon closer examination, this is incorrect because issue preclusion applies here to Superman works co-authored by Siegel *and* Shuster (determined in *Siegel* not to be "works for hire") and to the 1948 consent judgment entered into by Siegel *and* Shuster (determined in *Siegel* not to be a grant which need be listed in a termination notice).

Thus, even though the Shuster Termination is the mirror image of the Siegel Termination, claim preclusion as to the validity of the Shuster Termination is not being asserted herein, merely issue preclusion on these specific points.

<u>Factual Issues</u>: DC may also fabricate factual issues in an attempt to muddy the clear application of issue preclusion. For example, DC alleges that "Shuster continued to work for DCI and/or its successors [after Siegel and Shuster's 1938 employment agreement] even when Siegel did not, and therefore may have had oral or written employment agreements independent of Siegel." FAC, ¶ 146. DC may

---

[1] DC's Notice of Related Cases certifies that this case is related to *Siegel* because it "(1) arise[s] in part from the same or closely related events; (2) call[s] for the determination of similar issues of law and fact; (3) would entail substantial duplication of labor if heard by different judges; and (4) involve[s] many of the same copyrights." Docket No. 4, at 1:14-17. DC further admitted: "the scope and ownership of a variety of Superman-related copyrights is at issue in all three actions, as are historical facts concerning the creation of Superman and its exploitation in a variety of media," and that "at issue in all three actions are common legal theories and defenses, and overlapping issues of material fact." *Id*. at 2:3-7.

use such allegations to claim there are "factual" differences between Siegel and Shuster's positions, such that the "work for hire" analysis will be different.

However, DC itself asserted that "[t]he court ruled that all material created by Siegel after [that] 1938 employment agreement with DCI" was "work-for-hire." Docket No. 1, ¶ 146 n.5. Moreover, the Shuster Termination specifically lists the works to which it applies, ***all of which were co-authored by Siegel and Shuster and published on or before October 25, 1938***. *See* Request for Judicial Notice (Docket No. 80-2), Ex. C at 6-7. Thus, whether Shuster thereafter continued to work for DC after Siegel left in July 1943 to fight for his country in WWII is not pertinent to whether the "work for hire" determinations in *Siegel* bind DC. Lastly, such works could not have been covered by the Shusters' 17 U.S.C. § 304(d) termination *as a matter of law*, since § 304(d) only applies to "works for which copyright was secured between January 1, 1923, and October 26, 1939." 67 Fed. Reg. 69134, 69135 (Nov. 15, 2002).

Legal Issues: DC may also claim that any new legal arguments by DC in this case render the issues non-identical. Unfortunately, for DC, however, issue preclusion extends to arguments not specifically addressed, as "[n]ecessary inferences from the judgment, pleadings, and evidence will be given preclusive effect." *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994). *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (holding that the court is "allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided"). In other words, issue preclusion extends to issues not specifically addressed but which "by necessary implication... [are] contained in that which [was] explicitly decided." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d. Cir. 1986).

Thus, issue preclusion applies to arguments raised as well as to arguments that ***could*** have been raised at the time of the earlier action, as "it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case."

*Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (quoting *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). In fact, this Court recognized in *Siegel* that issue preclusion bars new arguments on decided issues:

> If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged.

*Siegel* I, 542 F. Supp. 2d at 1128 (quoting 18 James Moore, Moore's Federal Practice § 132.02[2][c] at 132-25 (3rd ed. 2007). *See also MSM Invs. Co., LLC v. Carolwood Corp.*, 70 F. Supp. 2d 1044, 1053 (N.D. Cal. 1999) (issue preclusion applies where a court "necessarily" ruled on an issue "though it did not expressly say so"); *OAIC Cml. Assets, LLC v. Stonegate Vill., L.P.*, 2009 U.S. Dist. LEXIS 65791, at *19 (D. Ariz. July 21, 2009) ("Whether these four new arguments are factual or legal, their only purpose is to obtain a different determination of the issue of standing. This is precisely what the principle of issue preclusion precludes.").

Accordingly, new arguments by DC do not circumvent issue preclusion and allow it to re-litigate the issues adjudicated under the 54(b) Judgment.

## **CONCLUSION**

For the foregoing reasons, (1) DC's First Claim, Section (4) (Docket No. 49, FAC, ¶¶ 126-28) (May 21, 1948 Consent Judgment) and (2) DC's Second Claim, sub-parts (a) (*id.*, ¶¶ 153-54) (Unpublished Superman Works) and (c) (*id.*, ¶¶ 158-59) (Work For Hire) are both barred by the doctrine of issue preclusion and should be dismissed as a matter of law, and the remainder of DC's First and Second Claims should be adjudicated as set forth therein.

Dated: March 29, 2011

RESPECTFULLY SUBMITTED,

_____
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson