KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
*rkendall@kbkfirm.com*
Laura W. Brill (195889)
*lbrill@kbkfirm.com*
Nicholas F Daum (236155)
*ndaum@kbkfirm.com*
Nathalie E. Cohen (258222)
*ncohen@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

DC Comics,

Plaintiff,

v.

PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,

Defendants.

Case No. CV 10-3633 ODW(RZx)

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE FOURTH AND FIFTH CLAIMS FOR RELIEF**

*Re: Motion to Dismiss Fourth and Fifth Claims (Docket No. 146), under submission per the Court's February 14, 2011 Order (Docket No. 169)*

*[Proposed] Order filed concurrently*

Complaint filed: May 14, 2010
Trial Date: None Set

# TABLE OF CONTENTS

Page

I. The 1992 Agreement Affects Only Rights Held By Jean Peavy, Who Is Legally Incapable of Possessing or Transferring Termination Rights .............. 2

II. The Fourth Claim Is Time-Barred on the Face of the FAC .............................. 4

III. The Fifth Claim Is Time-Barred on the Face of the FAC ................................ 8

IV. The Fourth and Fifth Claims Are Subject to the Litigation Privilege ............ 10

V. Conclusion ........................................................................................ 13

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# TABLE OF AUTHORITIES

Page

## CASES

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503 (1994) .......... 2

*Birchstein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994 (2001) .......... 6

*County of San Diego v. Myers*, 147 Cal. App.3d 417 (1983) .......... 5

DC. *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) .......... 6

*Decker v. GlenFed, Inc.*, 42 F.3d 1541 (9th Cir. 1994) .......... 9

*Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix,* No. 03CV352-BEN (WMc), Inc., 2006 WL 6544087 (S.D. Cal. 2006) .......... 6

*Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15 (1997) .......... 12

*Flores v. Emerich & Fike*, 416 F. Supp. 2d 885 (E.D. Cal. 2006) .......... 12

*Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520 (N.D. Cal. 2000) .......... 5, 6

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005) .......... 6

*Haneline Pacific Properties, LLC v. May*, 167 Cal. App. 4th 311 (2008) .......... 12

*ICU Medical, Inc. v. Cardinal Health 303, Inc.*, 2007 WL 1879823 (Cal. Ct. App. 2007) .......... 5

*In re Estate of Molino*, 165 Cal. App. 4th 913 (2008) .......... 3

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) .......... 12

*In re Kalt's Estate*, 16 Cal.2d 807 (1940) .......... 3

*Kajima Eng'g & Constr., Inc. v. City of LA*, 95 Cal. App. 4th 921 (2002) .......... 12

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) .......... 12

*Matter of Fischel*, 557 F.2d 209 (9th Cir. 1977) .......... 12

*Meridian Project Systems, Inc. v. Hardin Const. Co.*, LLC, 404 F. Supp. 2d 1214 (E.D. Cal. 2005) .......... 8, 9

*Mezey v. State of California*, 161 Cal. App. 3d 1060 (1984) .......... 5

*Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005) .......... 4

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010) .......... 11

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) .......... 9

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (9th Cir. 1969) .......... 6

*Newport Builders, Inc. v. N. Bay Constr., Inc.*, 2009 WL 2083359 (N.D. Cal July 14 2009) .......... 12

*Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) .......... 12

*Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008) .......... 4

*Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121 (1982) .......... 7

*State ex rel. Metz v. CCC Information Services, Inc.*, 149 Cal. App. 4th 402 (2007) .......... 5

*Suh v. Yang*, 987 F. Supp. 783 (N.D. Cal. 1997) .......... 6

*Trembath v. Digardi*, 43 Cal. App. 3d 834 (1974) .......... 4

*U.S. v. Chen*, 99 F.3d 1495 (9th Cir. 1996) .......... 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 8, 9

*Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773 (1979) .......... 6

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Yumul v. Smart Balance, Inc.*,
2010 WL 3359663 (C.D. Cal. May 24, 2010) ........ 8

**STATUTES**

17 U.S.C. § 304 ........ 1, 12

Cal. Civil Code § 47(b) ........ 7, 12

F.R.C.P. 9(b) ........ 1, 8

U.S.C. § 304(c)(2) ........ 2



Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Plaintiff DC Comics' ("DC") opposition to Defendants' motion to dismiss the Fourth and Fifth Claims ignores the core legal issues, the allegations of the First Amended Complaint ("FAC"), and the language of the relevant contracts. The law is clearly against DC, however, and swiftly disposes of these claims.

The Fourth Claim: (1) DC alleges that the Toberoff Defendants induced the Shuster Estate to file statutory notices of termination and that these filings breached the 1992 Agreement between DC and Joseph Shuster's siblings, Frank Shuster and Jean Peavy. As a matter of law, however, Shuster's siblings have never possessed, exercised, or transferred any termination right under the Copyright Act, and the Shuster Estate's termination notices did not interfere with that contract. That Peavy is a beneficiary of the Shuster Estate is legally irrelevant. DC ignores this argument, as it is unable to refute it.[1] (2) The claim is clearly time barred, since it is based on allegations of a breach of contract that DC says occurred in 2001, and DC indisputably was on notice to start the two-year statute of limitations by 2006. DC's "continuous harm" theory has no basis in law or the FAC. (3) As DC's own allegations make clear, the claim is based on the "'termination pursuant to [17 U.S.C. § 304]" of Joe Shuster's copyright grant (FAC ¶ 177), and is barred by California's litigation privilege.

The Fifth Claim: (1) The FAC indisputably alleges that the purported interference took place in 2002. DC has not alleged with the particularity required by F.R.C.P. 9(b) the "fraud" or "fraudulent concealment" it now relies upon to evade the two-year statute of limitations. (2) DC was on inquiry notice of sufficient facts to bring this claim by 2006 at the latest, rendering it time-barred. (3) The Fifth

[1] The reply brief filed by Mark Warren Peary and Jean Peavy in connection with the First Claim for Relief explains that even if the 1992 Agreement *had* somehow included a promise not to exercise termination rights, it would be void under § 304(c)(5) of the Copyright Act and cannot serve as the basis for a tortious interference claim. The Court is referred to that brief for further discussion of that issue.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Claim is also barred by the litigation privilege, as, despite DC's recharacterizations, the gravamen of the claim is Toberoff's supposed encouragement of the Siegels to reject a "settlement offer" (FAC ¶ 181) designed to "avoid the possibility of an expensive and protracted lawsuit regarding ownership of [the Siegel] rights" (FAC ¶ 183), and to enter into an agreement that expressly contemplated Toberoff's provision of legal services (FAC ¶ 83).

## I. **The 1992 Agreement Can Not Have Been Interfered With as a Matter of Law**

DC's opposition never directly addresses the proposition that as a matter of federal law the termination notices served by the Shuster executor could not interfere with the 1992 Agreement between DC, Jean Peavy, and Frank Shuster.

A claim for interference with contract requires conduct that either (i) causes a breach of contract or (ii) interferes with an obligation of a party to the contract, thus preventing performance. *See Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 514 n.5 (1994). Here, there was no breach of the 1992 Agreement, nor interference with any obligation of any party to the contract, because the 1992 Agreement indisputably affects and settles <u>only</u> rights held by Jean Peavy and her deceased brother, Frank Shuster. RJN Ex.A. The only relevant obligations involve Jean Peavy and Frank Shuster agreeing to transfer <u>their</u> rights, if any, and to refrain from asserting <u>their</u> rights, if any. *Id.* A deceased author's sibling, like Peavy, has never had any right to possess or exercise any termination right under Copyright law. *See* 17 U.S.C. § 304(c)(2) (granting termination right to identified persons, not including siblings). This was as true in 1992 as it is today. So, the promises with respect to Peavy's rights had nothing to do with termination.

In addition to affecting rights of only Jean Peavy and Frank Shuster, the 1992 Agreement is completely silent with respect to termination rights. There is no covenant or obligation with respect to termination rights, nor could there be. Nor is there any language describing a revocation and regrant of Joseph Shuster's long

operative copyright grants to DC.[2] Accordingly, the Shuster executor's notices of termination in 2003 (after Congress specifically provided termination rights to such persons in 1998), and the agreements entered into between the Shuster family and Toberoff for the purpose of pursuing termination rights (i.e., the 2001 and 2003 Pacific Pictures Agreements) could ***not***, as a matter of law, have breached the 1992 Agreement (FAC ¶ 179). Nor could these actions have interfered with any obligations to DC owed by Peavy or Frank Shuster, who fully performed under the 1992 Agreement.[3] DC's entire theory of breach or interference depends upon the Shuster estate's exercise of termination rights, *see* FAC ¶¶ 9, 11, 66, 70, 177, 179, but DC cannot point to any connection between the exercise of such statutory rights and any obligation of Peary or Frank Shuster in the 1992 Agreement.

DC's half-hearted response to this fatal legal problem is to note that Peavy was the sole beneficiary of the Shuster estate and to cite cases that state, under California law, "[a] beneficiary may assign or otherwise transfer his or her interest in an estate prior to distribution." *In re Estate of Molino*, 165 Cal. App. 4th 913, 921 (2008) (emphasis added); *In re Kalt's Estate*, 16 Cal.2d 807, 811 (1940). These cases are irrelevant. Regardless of Jean Peavy's status as a sole beneficiary of an estate under state law, Peavy was and is incapable as a matter of federal law of owning, exercising or transferring termination rights. Moreover, Jean Peavy could

---

[2] The reply brief filed by Defendants Peary and Peavy in connection with the First Claim for Relief responds to DC's quixotic attempt to recharacterize the 1992 Agreement as a "revocation and regrant" and explains why that attempt fails as a matter of law. In addition, DC's revocation/regrant argument is irrelevant to the Fourth Claim, which alleges tortious interference with the 1992 Agreement. Even if the 1992 Agreement did constitute a revocation and regrant on the part of Jean Peavy, which it did not, it still would not amount to a promise by the Shuster Estate not to exercise any separate termination right it had, and encouraging it to do so could not interfere with any obligations established under the 1992 Agreement.

[3] Neither Jean Peavy nor Frank Shuster has asserted any claim of right to the Superman copyrights; those rights have been asserted exclusively by the Shuster estate. *See* Mot. at 7, 9-13; FAC ¶¶ 92-93; Declaration of Nicholas F. Daum in Support of Motion to Strike Plaintiff's State Law Causes of Action ("Daum Decl.") at Ex. I (notice of termination).

not have transferred any beneficial interest in a termination right. *See* 17 U.S.C. § 304(c)(6)(D)(invalidating transfers of such interest until service of a termination notice) and § 304(c)(5)(invalidating direct or indirect waiver of the termination right).

DC cites *Milne* and *Steinbeck* as instances of heirs "disposing of termination rights on behalf of all other heirs." *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 204 (2d Cir. 2008); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1040 (9th Cir. 2005). In those cases, however, the heir held statutory termination rights; here, Peavy and Frank Shuster have never held such rights. *See Steinbeck*, 537 F.3d at 202 (heir entered into agreement "while wielding the threat of termination"); *Milne*, 430 F.3d at 1045 (heir "could have served a termination notice"). The 1992 Agreement involved parties legally incapable of exercising termination rights, and could not have addressed termination rights as a matter of law. It was not breached by the exercise of termination rights by the Shuster Estate. DC's Fourth Claim thus must fail as a matter of law.[4]

## II. The Fourth Claim Is Time-Barred on the Face of the FAC

The Fourth Claim is also time-barred. To evade the limitations period, DC proffers the novel argument that it is entitled to avoid the statute of limitations due to "continuing harm" it is purportedly suffering from the alleged interference. However, this argument is unsupported by California law and fatally contradicted by DC's own allegations. A claim for tortious interference with contract accrues on the date of the breach of the alleged contract. *See Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974) ("the accrual date could not be later than the actual breach of the

[4] The only damage DC alleges or could allege in connection with its Fourth Claim arises from the Shuster Executor's filing of statutory notice of termination and DC's pending loss of Superman copyrights. DC specifically alleges that the "purpose" of Toberoff's agreement with the Shusters was "termination pursuant to [17 U.S.C. § 304] of any and all grants or transfers by Joe Shuster" (FAC ¶ 177), and that the harm DC suffered purportedly resulted from a "breach[] of the 1992 Agreement." FAC ¶ 179.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

contract by the party who was wrongfully induced to breach") (emphasis added); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000). DC alleges that the 1992 Agreement was breached eight years before DC filed this action when "[i]n 2001, Toberoff and his motion-picture production company, Pacific Pictures, induced the Shuster Heirs to violate their 1992 Agreement." (FAC ¶ 58) (emphasis added). A breach alleged to have occurred nine years ago cannot serve as the basis for a tortious interference claim that has a two-year statute of limitations.

The "continuing harm" or "continuing accrual" doctrine has never been applied by a California court to a tortious interference claim, and to do so would make no sense. The "continuing accrual" doctrine applies "when an obligation or liability arises on a recurring basis," such as an obligation to make periodic payments under a statute, ongoing discriminatory conduct in the workplace, or continuing nuisances involving real property. *See State ex rel. Metz v. CCC Information Services, Inc.*, 149 Cal. App. 4th 402, 418 (2007).[5] It does not apply to continuing harm within the statute of limitations from a tortious act that took place outside the limitations period. For instance, *Metz* found that ongoing, allegedly fraudulent statements made within the statutory period did not allow for "continuing accrual," because the relevant tort was based on activity prior to the statutory period. *Id.* at 418-419; *see also ICU Medical, Inc. v. Cardinal Health 303, Inc.*, Nos. G037141, G037357, 2007 WL 1879823 (Cal. Ct. App. 2007) at *5. The Ninth Circuit has specifically rejected the application of the "continuing tort" doctrine when a business relationship is the interest at stake.

We . . . reject [plaintiff's] contention that the statute of limitations does

[5] Courts have emphasized that where a contractual right is at issue—as opposed to something like an installment payment or obligation under a divisible contract—the claim must be brought within the statutory period following the breach of the obligation. *See County of San Diego v. Myers*, 147 Cal. App.3d 417, 422 (1983) (continuing harm doctrine inapplicable where claim is to establish "right or entitlement"; "the statute runs from the date notice [of] entitlement is rejected"); *Mezey v. State of California*, 161 Cal. App. 3d 1060, 1064 (1984) (same).

> not bar recovery because the action is upon a continuing tort. . . The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated. The cause of action arises but once, and recovery for the wrong is barred within two years. . . .

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 292- 93 (9th Cir. 1969) (California law) (trade secret case).[6] The "continuing accrual" cases cited by DC arise in completely different factual settings and are based on completely different legal theories than tortious interference with contract.[7]

Furthermore, the only purported "interference" possibly alleged in DC's FAC within the two-year statutory period could not have interfered with the 1992 Agreement. DC alleges in its Third Claim that "Toberoff has induced the Siegel and Shuster Heirs to enter into additional agreements, which prohibit either family from entering into agreements conveying rights to DC Comics without the express approval of all stakeholders in the heirs' rights...." FAC ¶ 170. Such allegations (to the extent incorporated in the Fourth Claim, which nowhere discusses these agreements) relate only to alleged commitments of the Shusters and the Siegels to

---

[6] DC's unsupported application of the "continuing harm" doctrine would also render meaningless the statute of limitations for tortious interference. Under DC's theory, a plaintiff could restart the limitations period for tortious interference at any time during defendant's allegedly improper business relationship with the plaintiff's former contractual partner, no matter when the interference occurred. Courts have never taken this view. *See Forcier.*, 123 F. Supp. 2d at 530 (claim for tortious interference with contract based on hiring former employees accrued when employees were hired, even though employees continued to be employed by defendant); *Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc.*, 2006 WL 6544087, No. 03CV352-BEN (WMc), (S.D. Cal. 2006) (tortious interference claim accrued at date of breach, even though ongoing harm continued during the statutory period).

[7] *Birchstein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 1003-1004 (2001), deals with ongoing retaliation and sexual harassment by an employer, in a case brought under California's Fair Employment and Housing Act and applies employment discrimination law. *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 787-788 (1979), deals with the "last overt act" doctrine, unique to a claim for civil conspiracy, not alleged by DC. *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002), found that the continuing harm doctrine did not toll the statute of limitations in a defamation case. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 806 (2005), does not mention the continuing harm doctrine at all. *Suh v. Yang*, 987 F. Supp. 783, 796 (N.D. Cal. 1997), involved an unfair competition claim and ongoing trademark infringement, where "[e]ach allegedly infringing display" of the mark "on products, advertisements, etc., could create a separate cause of action for unfair competition and trademark infringement."

act collectively in "entering into agreements conveying rights to DC" in the future. DC fails to explain how any such promise regarding the negotiation of a future agreement could conceivably have interfered with the 1992 Agreement, which does not require the Shusters to enter into additional agreements or to convey additional rights to DC, and does not contain any obligation whatsoever regarding how negotiations with DC should be conducted. Notably, DC does not, and cannot, allege that Jean Peavy has done anything in furtherance of any agreement described in paragraph 170 that has breached any obligation she undertook in the 1992 Agreement. DC cannot base a claim for tortious interference on contractual obligations that do not exist. Accordingly, the conduct alleged in paragraph 170—which, as DC effectively concedes, is the only conduct that could possibly fall within the statute of limitations—cannot give rise to a claim.[8]

Finally, the allegations in paragraph 170 plainly describe activities protected by California's litigation privilege. Cal. Civil Code § 47(b). FAC ¶ 170 alleges that "[t]hese agreements…impede DC Comics' ability to settle any and all disputes with the Shusters and Siegels…". To have any conceivable bearing on DC's "continuous harm" argument on the two-year statute of limitations, such an agreement must have been entered into in or after 2008—over four years after the *Siegel* litigation began. Such an agreement concerning the settlement of an ongoing lawsuit is clearly protected by the litigation privilege. *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 126 (1982).[9] DC may disagree with the parties' litigation strategy, but under § 47(b) that disagreement is no ground for an interference claim, or any other claim.

---

[8] DC's argument that its Fourth Claim "seeks a declaration bringing this continuing harm to a halt" (Opp. At 9) has no bearing on the statute of limitations. The statute of limitations for declaratory relief is based upon the underlying claim, *Engstrom v. Kallins*, 49 Cal. App. 4th 773, 784 (1996), and the Fourth Claim is not for declaratory relief.

[9] DC states that its Fourth Claim "is also timely under the delayed discovery and fraudulent concealment rules." Opp. 8. Yet allegations of fraud and fraudulent concealment must be pled with particularity, *see infra* at III, which DC has not done. The FAC alleges no facts that could establish fraudulent concealment of the Fourth Claim.

**III. The Fifth Claim Is Time-Barred on the Face of the FAC**

DC concedes that the Fifth Claim for tortious interference with prospective economic advantage, like the Fourth Claim, is subject to a two-year statute of limitations, and that the alleged interference occurred in 2002. FAC ¶¶ 77-81. The Fifth Claim is thus time-barred. DC attempts to avoid the statute by arguing that: (a) it only became aware of the alleged wrongful conduct—which DC now claims was "fraudulent"—in 2008 through the disclosure of the so called "Toberoff Timeline;" and (b) the "fraudulent concealment" doctrine tolls the statute of limitations. Opp. Br. at 10-12. Both arguments fail.[10]

***First***, DC's allegations of fraud and/or fraudulent concealment—the sole basis for its assertion of the discovery rule—completely fail to satisfy FRCP 9(b). Such averments of fraud are subject to the particularized pleading standard of FRCP 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003) (Rule 9(b) applies where allegations of fraud are included in non-fraud claims); *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM (AJWx), 2010 WL 3359663, * 11 (C.D. Cal. May 24, 2010) (fraudulent concealment allegations subject to Rule 9(b)). If fraud-based allegations have not been adequately pled, the allegations are completely disregarded and read out of the complaint, as a matter of law. *Vess*, 317 F.3d at 1105; *Meridian Project Sys., Inc. v. Hardin Const. Co.*, LLC, 404 F. Supp. 2d 1214, 1220 (E.D. Cal. 2005).

DC alleges only two purported misrepresentations that it says it became aware of in 2008: That Toberoff (1) "falsely misrepresent[ed] to the Siegel Heirs that he had a billionaire investor ready to purchase their Superman rights," and (2) "falsely

[10] "In order to invoke [the delayed discovery doctrine,] the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*, No. C-05-04726 RMW, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008), *quoting Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292 (Cal Ct. App. 1978).

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

represent[ed] that he would help them produce a competing Superman motion picture." To satisfy Rule 9(b), "a plaintiff must set forth more than the neutral facts necessary to identify the transaction." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded on other grounds by statute*. The plaintiff must set forth the who, what, where, when, and how of the fraud, *see Vess*, *supra*, "including what is false or misleading about a statement, and why it is false," *Decker*, 42 F.3d at 1548, as well as the element of justifiable reliance, *see Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993). As DC's FAC lacks this particularity, DC has not adequately pleaded the fraud on which it bases its unsupported invocation of the discovery rule, and the Court must disregard such improperly pleaded allegations. *Meridian*, 404 F. Supp. 2d at 1220. As for DC's fraudulent concealment argument, DC cannot point to a single allegation in its FAC that describes fraudulent concealment.[11]

***Second***, as shown below, there is no reasonable dispute, based on DC's allegations and the judicially noticeable record, that DC was at least on "inquiry notice" by 2006 with respect to every one of the alleged facts that it now claims (Opp. Br. at 10) to have learned for the first time "on December 10, 2008."

| False Allegations That DC Says Were Newly Discovered In The Timeline (Opp. Br. at 10) | Facts of Earlier Notice |
|---|---|

[11] In its opposition (Opp. at 12-13), DC points (on information and belief) solely to an irrelevant statement from the anonymous, inadmissible Timeline, and makes the outrageous, unfounded accusation that defendants "concealed the Toberoff defendants' lies and misdeeds" when they were "examined" in the *Siegel* action.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| Toberoff "fraudulently represented to the Siegels there was a 'billionaire waiting to invest $15 million' if they cut their ties to DC Comics" | Marks testified in October 2006 that a call with Mr. Toberoff and Mr. Emanuel included a "proposal of $15 million and . . . a meaningful back end," which Mr. Marks understood would be provided by Mr. Emanuel or the Endeavor Talent Agency. Ex. R to Daum Decl. (KM Depo 152:2-153:5). As of Marks' 2006 deposition, DC was on notice of a proposal in which a wealthy investor or investors would invest $15 million.<br><br>DC's claimed statement is also not supported by the Timeline. |
| Toberoff "falsely promised the Siegels that they would produce a competing Superman movie if the Siegels cut their ties with DC" | DC knew of the offer to acquire the Siegels' rights by October 2006, as shown above. DC was also on notice in 2006 that Mr. Toberoff had experience as a movie producer. The Declaration of Daniel Petrocelli ("Petrocelli Decl.") describes a "2006 published website for one of Mr. Toberoff's companies' … 'IPW'" that stated that "[Toberoff] is an *intellectual property expert, entrepreneur and producer*" and that "he executive produced" a Disney feature film; and also describes the popular imdb website that lists Toberoff as the producer of numerous films. Petrocelli Decl. ¶¶ 10, 11. |
| Toberoff "mess[ed] up relationships for his own personal benefit," "interfer[ed] in all the relationships" between DC Comics and the Shuster and Siegel heirs" | This allegation lacks any particularity. The fact that Toberoff was involved in 2001-03 in assisting the Siegels and Shusters with their statutory terminations, which DC alleges disrupted its relationships with the Siegels and Shusters, was known to DC no later than 2006, when the PPC Agreements and the IP Worldwide Agreement were produced. RJN ¶ 4-5, 8, 10, Exs. D-E, H, J. |
| Toberoff "thwarted the earlier deal with Time Warner and DC Comics in 2002 for his own personal gain." | The conduct that DC alleges interfered with its settlement offer occurred ***after*** the Siegels' May, 2002 letter which told DC that any likelihood of consummating a settlement agreement had ended. FAC ¶¶ 80-85, 182-86. Toberoff's close involvement with the Siegels was known to DC when the Siegels filed termination notices and commenced the *Siegel* litigation in 2004 . FAC ¶ 86, 91. |

## IV. The Fourth and Fifth Claims Are Subject to the Litigation Privilege

DC states that the Court should look at the "gravamen" of its claims to

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

determine whether the litigation privilege applies. Opp. at 16. As discussed in more detail in Defendants' reply brief on their Anti-SLAPP motion, DC cannot pretend that the gravamen of its claims is anything other than what DC has alleged: namely, actions taken by Toberoff to assist the Siegels and Shusters in exercising their termination rights under the Copyright Act.

Despite DC's flailing protests, the Fifth Claim is indisputably based on the Siegel family's prosecution of statutory termination rights. *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) ("an attempt to establish a property right under a comprehensive federal statutory scheme" qualifies as protected litigation-related conduct under the analagous Anti-SLAPP statute). The Fifth Claim can be summarized as follows: After the Siegels served *Superman* notices of termination, they engaged in settlement discussions with DC. Toberoff allegedly induced them to end those discussions, to file *Superboy* termination notices and to prosecute both terminations in litigation with DC. FAC ¶¶ 180-186. DC cannot hide from its own allegations.[12]

Moreover, the IP Worldwide Agreement on which DC relies clearly states that Toberoff would provide legal services and contemplates litigation (FAC ¶ 83, RJN ¶ 8 & Ex. H ¶ 10 (addressing legal services to be "rendered and provided by Marc Toberoff, Esq."). There is no basis for DC's disingenuous assertion that the Fifth Claim is based on mere "business disputes" (Opp. Br. at 14). If the Siegels

---

[12] The allegations directly related to statutory termination include every key Fifth Claim element: "After the Siegel Heirs served the Superman Termination Notice in 1997, they engaged in negotiations with DC Comics for four years." FAC ¶ 181; "When a dispute arose in 1997 over the Siegel Heir's attempt to terminate prior grants of Siegel's share of Superman rights, DC Comics and Siegel commenced negotiations, which lasted over four years…At the time Toberoff approached the Siegel Heirs in 2001, DC Comics and the Siegel Heirs had finally reached an agreement resolving their claims to the Superman and Superboy rights." *Id.* ¶ 182; "After Toberoff induced the Siegel Heirs to repudiate the Siegel-DC Comics Agreement…the Siegel Heirs served a second copyright termination notice on DC Comics directed at the character Superboy." *Id.* ¶ 86; "As a direct result of Toberoff's misdeeds, the Siegel Heirs repudiated the Siegel-DC Comics Agreements with DC Comics and ended all further discussions, causing DC Comics … to incur millions of dollars in subsequent legal fees in disputes with the Siegel[s]." *Id.* 186.

had not prosecuted their termination rights, the Fifth Claim would not exist, as DC could not allege any conceivable harm. By contrast, the cases cited by DC involve situations in which litigation was peripheral to the claim.[13]

The Fourth Claim also directly relates to the exercise of statutory termination rights, and is equally barred by the litigation privilege. DC alleges the purpose of the "joint venture" agreements that allegedly interfered with DC's 1992 contract was "'termination pursuant to [17 U.S.C. § 304]" of Joe Shuster's copyright grant." FAC ¶ 177. DC alleges that the benefit that it would have received but for that 'interference' was "to continue freely developing and exploiting those rights without the risk of termination of the alleged Shuster rights or expensive and protracted legal disputes regarding the ownership of those rights." FAC ¶ 176. Accordingly, the Fourth Claim clearly falls within the litigation privilege of Cal. Civil Code § 47(b).

DC asserts that it is entitled to further discovery, on the litigation privilege issue, but this is a red herring: DC's own allegations demonstrate that the gravamen of its claim is directly related to litigation-related activities. FAC ¶ 181, 183, 186. Courts consistently apply the litigation privilege at the pleading stage. *See Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1101-1103 (C.D. Cal. 2006).

---

[13] In *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36, 38 (1997), the plaintiffs "never suggested litigating their claims, threatened lawsuits, or even made any settlement demands." *Haneline Pacific Properties, LLC v. May*, 167 Cal. App. 4th 311, 319 (2008) involved ongoing business negotiations in which the parties disclaimed any legal threats. *Newport Builders, Inc. v. N. Bay Constr., Inc.*, 2009 WL 2083359 (N.D. Cal July 14 2009) concerned a party who made an unrelated offer to third parties in settlement negotiations – not, as here, an alleged attempt to forego settlement to pursue legal rights. *See also Kajima Eng'g & Constr., Inc. v. City of LA*, 95 Cal. App. 4th 921, 929-32 (2002) (defendant submitted contractual claims in the ordinary course of business); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 345 (1997) (basis of privilege was filing a lien peripherally related to the action); *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (irrelevant attorney-client privilege case); *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (same); *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (same); *U.S. v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977) (same).

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## V. Conclusion

DC's Fourth and Fifth Claims should be dismissed without leave to amend.

Dated: March 29, 2011

KENDALL BRILL & KLIEGER LLP

By: /s/ Richard B. Kendall
Richard B. Kendall
Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC