KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (195889)
 *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
 *ndaum@kbkfirm.com*
Nathalie E. Cohen (258222)
 *ncohen@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP Worldwide,
LLC, and IPW, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC Comics,<br><br>             Plaintiff,<br><br>      v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10 inclusive,<br><br>             Defendants. | Case No. CV 10-3633 ODW(RZx)<br><br>**TOBEROFF DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW (CAL. CODE CIV. PROC. § 425.16)**<br><br>*Re: Renewed Motion to Strike Plaintiff's State Law Causes of Action Pursuant to California's Anti-SLAPP Law (Docket No. 145), under submission per the Court's February 14, 2011 Order (Docket No. 169)*<br><br>*Declaration of Nicholas F. Daum, Declaration of Kevin S. Marks, and [Proposed] Order filed concurrently*<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................ 4

    A.    DC Cannot Rely On Claims of Fraud to Evade the Anti-SLAPP Law .............................................................................................. 4

    B.    DC's State Law Claims Are Based On Protected Conduct ................... 6

        1.    DC's Fifth Claim Arises from Protected Activity ........................ 6

        2.    DC's Fourth Claim Arises from Protected Activity .................... 7

        3.    DC's Sixth Claim Arises from Protected Activity ...................... 9

    C.    DC's State Law Claims Have No Likelihood of Success on the Merits ................................................................................................ 9

    D.    DC Is Not Entitled to Discovery ......................................................... 11

III.    CONCLUSION .......................................................................................... 12

**Kendall Brill
& Klieger LLP**

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1

## TABLE OF AUTHORITIES

2

**Page**

3

4 ## CASES

5 *1-800 Contacts, Inc. v. Steinberg*,
    107 Cal. App. 4th 568 (2003)..........................................................................12
6
*Batzel v. Smith*,
7    333 F.3d 1018 (9th Cir. 2003)........................................................................12

8 *Haneline Pacific Props. LLC v. May*,
    167 Cal. App. 4th 311 (2008)............................................................................8
9
*Hecht v. Superior Court*,
10    192 Cal. App. 3d 560 (1987)..............................................................................6

11 *Knoell v. Petrovich*,
    76 Cal. App. 4th 164 (1999)..............................................................................7
12
*Metabolife Int'l., Inc. v. Wornick*,
13    264 F.3d 832 (9th Cir. 2001)..........................................................................12

14 *Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (2010) ..........................................................................................8
15
*Mirkin v. Wasserman*,
16    5 Cal. 4th 1082 (1993)........................................................................................6

17 *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*,
    407 F.2d 288 (9th Cir. 1969)..........................................................................10
18
*Moser v. Triarc Cos.*,
19    2007 WL 3026425 (S.D. Cal. Oct. 16, 2007) ................................................12

20 *Navellier v. Sletten*,
    29 Cal. 4th 82 (2002)..........................................................................................4
21
*Newport Builders, Inc. v. N. Bay Constr. Inc.*,
22    2009 WL 2083359 (N.D. Cal. July 14, 2009)..................................................8

23 *Price v. Stossel*,
    590 F. Supp. 2d 1262  (C.D. Cal. 2008)............................................................3
24
*Seltzer v. Barnes*,
25    182 Cal. App. 4th 953 (2010)..........................................................................11

26 *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010) ....................................................................................12
27
*Siegel v. Warner Bros. Entm't Inc*,
28    542 F. Supp. 2d 1098 (C.D. Cal. 2008)............................................................6

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

ii

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1

*State of Cal., on Behalf of Cal. Dept. of Toxic Subs. Ctrl. v. Campbell*,
    138 F.3d 772 (9th Cir. 1998)..........................................................................4

2

*Stutz Motor Car of Am. v. Reebok Int'l*,
    909 F. Supp. 1353 (C.D. Cal. 1995)............................................................11

3

4

*Tatum v. City & County of San Francisco*,
    441 F.3d 1090 (9th Cir. 2006).....................................................................12

5

*Trembath v. Digardi*,
    43 Cal. App. 3d 834 (2000)............................................................................9

6

7

*Waller v. Fin. Corp. of Am.*,
    828 F.2d 579 (9th Cir. 1987).......................................................................11

8

9

## STATUTES

10

17 U.S.C. § 304(c) ...........................................................................................4

11

17 U.S.C. § 501 ................................................................................................4

12

Cal. Code Civ. Proc. § 425.16 .........................................................................3

13

F.R.C.P 56(f).............................................................................................3, 12

14

F.R.C.P. 9(b) ....................................................................................................4

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

## I.    INTRODUCTION

DC's Anti-SLAPP opposition boils down to three factual contentions:  (i) to avoid the statute of limitations, DC contends it could not bring its state law claims until 2008; (ii) to save its Fifth Claim, DC contends that Mr. Toberoff defrauded the Siegels in 2002 by stating that he had a "billionaire" investor and would help the Siegels produce a competing Superman film; and (iii) to save its Fourth Claim, DC contends that Mr. Toberoff did not provide assistance to the Shusters or the Siegels in their legal proceedings to pursue and enforce their statutory termination rights.  Each of these allegations has been conclusively disproven by documents and sworn depositions provided in 2006, and none can be cured by further discovery.

**1.  *Statute of Limitations.*** DC's contention that it first discovered its Fifth Claim relating to the Siegels in 2008, when the so-called Toberoff Timeline was formally produced, is ridiculous.  As demonstrated below, the inadmissible, mudslinging Timeline does not support DC's claims at all, and that in any event, the in-house legal team managing the *Siegel* litigation for DC received and read the Timeline *in 2006*, four years before DC filed this lawsuit.   Daum Reply Decl. Ex. A (03/26/07 Decl. of Wayne Smith) ¶¶ 3, 4.  Moreover, wholly apart from the Timeline, DC knew *in 2002* that the Siegels had terminated their prior counsel and negotiations with DC.  It also knew in 2002 that the Siegels had engaged Toberoff to negotiate on their behalf, and in 2004 it knew that the Siegels had sued DC.  It knew by 2006, after every percipient witness had testified, of the contents of every conversation between Toberoff and Kevin Marks before the Siegels retained Toberoff, and it knew that Toberoff had neither met nor spoken with the Siegels before they decided settlement with DC was impossible.  Exs.[1] E, F, G, H (MT Depo 106:1-107:7, 135:1-

---

[1] References herein to "Ex. __," unless otherwise noted, are references to exhibits attached to the Reply Declaration of Nicholas F. Daum ("Reply Daum Decl.") filed concurrently herewith.  References to "MT Depo," "LSL Depo," "JS Depo," and "KM Depo" are, respectively, references to the Deposition of Marc Toberoff, Laura Siegel Larson, Joanne Siegel, and Kevin Marks, attached as exhibits to the Reply Daum Decl.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1   6; JS Depo 33:17-34:1, 41:1-3; LSL Depo 17:6-8, 261:17-262:7; KM Depo 166:6-

2   170:24).  As to the Fourth Claim, DC received in 2006 the so-called 2001 and 2003

3   consent and rights-transfer agreements between the Toberoff Defendants and the

4   Shuster relatives, and knew well before then of the Shuster estate's supposed breach

5   of the 1992 Agreement by filing Notices of Termination, and of the Superboy

6   amendments to the Shuster / Toberoff agreements and the Siegel Superboy Notices of

7   Termination.  RJN in support of MTD 4th & 5th Claims ¶ 10; Amended Complaint

8   ("FAC") ¶ 86, 92.  The statute of limitations for the interference claims alleged in the

9   Fourth and Fifth Claims is two years from the date that DC had inquiry notice of its

10  alleged injury.  MTD 4th & 5th Claims, at 21.  The Sixth Claim for unfair

11  competition, which is governed by a four-year limitations period calculated from the

12  date of injury, accrued upon the 2001 and 2003 Shuster agreements with Pacific

13  Pictures, and thus expired in October 2007.  MTD 3th & 6th Claims, at 10-11.  These

14  claims are clearly time-barred, and no amount of discovery could change that.

15       **2.  *"Billionaire Investor" and Fraud.*  DC relies on the Timeline, an obviously**

16  inadmissible screed penned by a thief who violated fundamental duties of

17  professional ethics and had absolutely no percipient knowledge of the events he

18  purports to describe.[2]  DC's allegation that Toberoff misled the Siegels by

19  representing that he had a "billionaire" investor or that he would help produce a

20  Superman film, the sole allegations of "wrongfulness" required for DC's Fifth Claim,

21  is based entirely on this untrustworthy, inadmissible Timeline, and is contradicted by

22  the sworn testimony of all percipient witnesses.  First, even the Timeline does not

23  assert that Toberoff ever told the Siegels that he had a "billionaire" investor.  Its

24  anonymous author claims, without percipient knowledge, that Toberoff told this to

25 _____

26       [2] Contrary to DC's misleading description (Opp. at 3) Magistrate Judge Zarefsky
    made no ruling as to the admissibility of the Timeline.  The question before him was solely
27  whether to grant a protective order preventing DC from asking questions about the
    Timeline in discovery.  DC's misleading statements to Judge Larson that led to the
28  production of the Timeline remain subject to review and reversal by the Ninth Circuit.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  Kevin Marks on August 8, 2002.  FAC, Ex. A 63.  Second, each participant in this

2  conversation has been examined in deposition.  Indeed, Marks, who has no interest in

3  this dispute, described this entire conversation at length in his 2006 deposition.  Ex.

4  H (KM Depo 166:6-170:24); *see also* Ex. E (MT Depo 98:25-104:14).  There was

5  absolutely no mention of a "billionaire" investor or that Toberoff would help produce

6  a Superman film.  *Id.*  DC knows all this, yet conceals it from the Court.

7      ***3.  Conduct Arising Within the Anti-SLAPP Statute Related to the***

8  ***Termination Rights.***  DC's contention that the harm it claims to have suffered is not

9  based upon activity protected by the Anti-SLAPP Law is frivolous.  *All* of the alleged

10  damage in the Fourth Claim stems from Mark Peary contacting Toberoff  and asking

11  for his legal assistance in 2001; Toberoff arranging for counsel to probate Joe

12  Shuster's will; and Toberoff's subsequent filing and prosecution of the Shuster

13  estate's termination notices, advice that the 1992 Agreement is not a bar to such

14  notices, representation and advice in settlement discussions and mediations, and

15  parallel prosecution of the *Siegel I* litigation, which has significantly advanced the

16  Schuster estate's cause.  *All* of the alleged damage in the Fifth Claim stems from the

17  Siegels' refusal to settle on DC's terms, and dogged pursuit of their termination rights

18  in the Copyright Office and the courts.  *All* of the harm alleged in the Sixth Claim

19  derives from the same allegations.

20      To survive the Anti-SLAPP Law, DC needs to present *admissible evidence* that

21  shows it has a *prima facie* case as to its alleged state claims.  *Price v. Stossel*, 590 F.

22  Supp. 2d 1262, 1266 (C.D. Cal. 2008).  DC has no such evidence.  Under California

23  law, an Anti-SLAPP motion stays discovery absent a specific showing of good cause.

24  CCP § 425.16(g).  Even applying the F.R.C.P 56(f) standards advocated by DC, DC

25  must show "(1) that they have set forth in affidavit form the specific facts that they

26  hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these

27  sought-after facts are "essential" to resist the [pending] motion."  *State of Cal., on*

28  *Behalf of Cal. Dept. of Toxic Subs. Ctrl. v. Campbell*, 138 F.3d 772, 779 (9th Cir.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1 | 1998).  DC has failed to make either showing.

2 | **II.    ARGUMENT**

3 |    **A.    DC Cannot Rely On Claims of Fraud to Evade the Anti-SLAPP Law**

4 |      DC argues that the state law claims are directed at "fraudulent acts," instead of

5 | protected litigation activity.  But a plaintiff cannot shield itself from the protections

6 | of the Anti-SLAPP Law simply by alleging fraud. *Navellier v. Sletten*, 29 Cal. 4th

7 | 82, 90 (2002) (Anti-SLAPP Law applies to allegations of fraudulent conduct where

8 | suit based on litigation-related activity).  Moreover, DC's broad accusations of fraud

9 | lack the particularity necessary to satisfy F.R.C.P. 9(b), and must be ignored under

10 | Ninth Circuit precedent. *See* Reply MTD 4th & 5th Claims at 8-9.  Furthermore, DC

11 | has adduced no admissible evidence to support these allegations, as shown below.  Its

12 | fraud contentions are purely retaliatory. Oct. 4, 2010, Toberoff Decl. ¶¶ 11-13.

13 |      DC's Fourth Claim alleges:  (1) Pacific Pictures "enter[ed] into a joint venture

14 | with the Shusters for the purpose of terminating DC's rights" (FAC ¶ 177); (2)

15 | Toberoff  paid for and arranged to probate the Shuster estate; (3) with the financial

16 | and legal assistance of Toberoff,  Peary filed and sought to enforce termination

17 | notices under the Copyright Act; (4) by inducing these actions, Toberoff interfered

18 | with the 1992 Agreement; and (5) Toberoff "manipulated" the Shuster estate to not

19 | claim rights in Superboy.  None of these allegations pleads any fraud with

20 | particularity, or, for that matter, any fraud at all. *See* FAC ¶¶ 175-79.[3]

21 |      In its Fifth Claim, DC's assertion of the requisite "wrongful act" reduce to its

22 | allegations, "on information and belief," that Toberoff misled the Siegels by stating

23 |

24 |      [3] As to Superboy (Opp at 5), a court had already ruled that Siegel created it

25 | independently. *See* MTD 1st & 2d Claims at § II.E.2.b.  DC's contentions that the Peavy and Peary grants of rights to Pacific Pictures in 2001 and 2003 "violate" the Copyright Act

26 | are wrong as a matter of law. These transactions (which were in any event cancelled and reversed in 2004) did not violate the law, any more than DC's 1992 Agreement, which is

27 | void for the same reason, violated the law. Such alleged copyright transfers may be void

28 | under 17 U.S.C. § 304(c), but they are not illegal under 17 U.S.C. § 501.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1    (1) that a "billionaire" investor was interested in acquiring their rights; and (2) that he

2    was interested in making a movie based on Superman.  FAC ¶ 78, 185.  First, the

3    Timeline does not even state that Toberoff spoke with the Siegels about a billionaire.

4    The Timeline says he discussed the billionaire with their then-attorney, Kevin Marks,

5    on August 8, 2002.  FAC Ex. A 63.  But Kevin Marks testified about this

6    conversation four years ago, and his testimony shows what a mockery DC's

7    accusations of fraud really are:

8        Q -- what was involved and what was said in that conversation?
9        A Yes. Mr. Toberoff and Mr. Emanuel [of the Endeavor Talent Agency] both
            spoke.  I can't completely tell you who said what, but I think Mr. Toberoff
10           may have very briefly referenced past conversations, and then I believe it
            was Mr. Emanuel who explained that either they or some other people or
11           perhaps some members of the Endeavor Talent Agency had set up a fund or
            were in the process of setting up a fund to acquire intellectual property rights
12           which they would then package with clients from the Endeavor Talent
            Agency, then take those to studios to exploit the package, and they
13           understood that the Siegel family had an interest in the termination rights
            and viewed that as perhaps the most valuable of properties and wanted to
14           make a proposal.
15       Q Okay. What did you say?
16       A I said in substance and effect, "I'm listening."  And I'm not sure who spoke,
            but they made a proposal of $15 million and what was described as a
17           meaningful back end, which I understood to be a contingent compensation
            position or a royalty position in the exploitation of the property.
18
19       Lest there be any doubt, Mr. Marks submits a declaration herewith expressly

20   confirming that the conversation did not mention either a "billionaire" or producing a

21   competing Superman movie.  Declaration of Kevin Marks ¶¶ 2-5.  Moreover, the

22   Siegels testified in 2006 that they *never even spoke with Mr. Toberoff* until late 2002,

23   well after they independently informed DC that "we have no deal…[and] an

24   agreement is impossible," Ex. B at 3, ending any reasonable probability of  DC's

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

5

1  prospective economic advantage.[4]  Exs. E, F, G (MT Depo 106:1-107:7; JS Depo

2  33:17-34:1, 41:1-3; LSL Depo 17:6-8, 261:17-262:7); *see also Siegel v. Warner Bros.*

3  *Entm't Inc*, 542 F. Supp. 2d 1098, 1115-16 (C.D. Cal. 2008).

4  **B.    DC's State Law Claims Are Based On Protected Conduct**

5  **1.    DC's Fifth Claim Arises from Protected Activity**

6  DC's own FAC clearly illustrates that the basis of its Fifth Claim is that

7  Toberoff interfered with DC's settlement negotiations over the Siegels' termination

8  rights, resulting in litigation:

9  •    "When a dispute arose in 1997 over the Siegel Heir's attempt to terminate
10  prior grants of Siegel's share of Superman rights, DC Comics and Siegel
   commenced negotiations, which lasted over four years.  At the time Toberoff
11  approached the Siegel Heirs in 2001, DC Comics and the Siegel Heirs had
   finally reached an agreement resolving their claims to the Superman and
   Superboy rights."  FAC ¶ 182.

12  •    "As a direct result of Toberoff's misdeeds, the Siegel Heirs repudiated the
13  Siegel-DC Comics Agreement with DC Comics and ended all further
   discussions, causing DC Comics … to incur millions of dollars in subsequent
14  legal fees in disputes with the Siegel heirs."  *Id.* ¶ 186.

15  As we demonstrated in our motion, each of these settlement and litigation

16  activities is protected.  Mot. at 15-19.  In an effort to escape this conclusion as to the

17  Fifth Claim, DC asserts "Toberoff 'approache[d] the Siegels, not as an attorney but as

18  a film producer."  Opp. at 15 (quoting FAC Ex. A 63).  This argument fails.  *First*,

19  the manner in which Mr. Toberoff approached the Siegels is irrelevant, because even

20  if Toberoff were a layperson, his financial and advisory support of the Siegel's effort

21  to vindicate their termination notices would be protected by the Anti-SLAPP Law.

22  Mot. at 15.  *Second*, the Siegels have repeatedly testified that they entered into an

23  attorney-client relationship with Toberoff from the outset.  Exs. F, G (JS Depo 41:1-

24  3; LSL Depo 17:6-13, 33:3-34:12); *see also* Ex. E (MT Depo 106:1-107:7, 109:14-

25  110:9, 135:1-6); *Hecht v. Superior Court*, 192 Cal. App. 3d 560, 565 (1987) (looking

26  _____

27  [4] DC also fails to establish that the Siegels relied in any way on the alleged
   billionaire or film-production statements.  Absent reliance there could be no fraud.  *See*
28  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993).

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  to party intent regarding formation of attorney-client relationship).  *Third*, even the

2  initial IP Worldwide Agreement (which was quickly replaced by a Toberoff legal

3  retainer agreement) makes it crystal clear that Toberoff would serve as legal counsel

4  to the Siegels.  Sept. 20, 2010, Daum Decl. Ex. F ¶ 2; MT Depo at 114:9-10.

5  ## 2.  DC's Fourth Claim Arises from Protected Activity

6  DC's effort to recharacterize the Fourth Claim as falling outside the Anti-

7  SLAPP Law is similarly unpersuasive.  DC argues that it "does not sue defendants

8  because the Shusters filed a copyright termination notice." Opp. at 17.  But the FAC

9  alleges as follows:

10  •  "Toberoff also ***induced the Shuster heirs to serve a notice of termination***
11  purporting to terminate and recapture the same alleged interests that they had
   granted to DC Comics under the parties' 1992 agreement." FAC ¶ 6.(emphasis
   added).

12  •  "***Toberoff then filed a termination notice on behalf of the Shusters*** that
13  purported to terminate only Superman Rights, leaving out all mention of
   Superboy." *Id.* ¶10. (emphasis added).

14  •  "Toberoff … established a joint venture … ***for the purpose of terminating and***
15  ***recapturing*** prior grants of the copyrights at issue." *Id.* ¶ 26a.

16  •  "Toberoff knew that his actions in having his company enter into a joint
17  venture with the Shusters ***for the purpose of terminating DC Comics' rights***
   were substantially certain to interfere with DC Comics' 1992 Agreement with
   the Shusters." Id. ¶ 177 (emphasis added).

18  Indeed, DC's Fourth Claim hinges entirely on the allegations that the Toberoff

19  Defendants' interference first caused the Shuster estate to be probated, and then

20  caused the estate to file termination notices.[5]  *All* of the damage that DC allegedly

21  suffered from the estate's "interference" stems from the exercise of its statutory

22  termination rights and correct legal analysis that the 1992 Agreement does not bar its

23

24  _____

25  [5] Notably, DC alleged in its original complaint, but rewrote in the FAC, that

26  "Toberoff's ultimate purpose in approaching the Shuster Heirs was to induce them to
   repudiate the 1992 Agreement and attempt to terminate prior grants of Shuster's rights,"
   Cmplt. ¶ 164.  To the extent that DC's new allegations contradict this judicial admission,

27  DC is estopped from relying on the new allegations.  *Knoell v. Petrovich*, 76 Cal. App. 4th

28  164, 168-69 (1999) (plaintiff cannot plead contradictory facts to toll statute of limitations).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

7
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1    termination notices, the estate's resistance to DC heavy-handed settlement strategy,

2    and DC's pending resultant loss of Superman copyrights.

3        DC's straw man that "Toberoff did not sign these [joint venture] agreements in

4    his role as a lawyer," (Opp. at 14) is just as irrelevant here as in the Fifth Claim.[6]

5    Non-lawyers who provide financial assistance or otherwise support the vindication of

6    legal rights before the courts and public agencies (such as the Copyright Office)

7    enjoy the protections of the Anti-SLAPP Law just as lawyers do.  Mot. at 15.

8        DC's argument that the Shuster estate did not immediately bring suit against

9    DC is also meritless.  First, as DC alleges, the very first step after the Shusters

10   contacted Mr. Toberoff was the commencement of *legal proceedings* to probate the

11   estate.  Second, once the Shuster executor was appointed by the Court, Mr. Toberoff

12   filed statutory termination notices *in the Copyright Office*.  These critical steps were

13   protected activity in themselves.  See *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590,

14   596-97 (2010) ; Mot. at 14-16.  They also set the stage for contemplated litigation

15   and settlement strategy.  Mot. at 16-17.  Furthermore, despite DC's claim to the

16   contrary (Opp. at 19), litigation was always "contemplated" and, given the experience

17   of the Siegels in dealing with DC, it was inevitable.  *See, e.g.,* Sept. 20, 2010, Daum

18   Decl. Ex. J (April 28, 2005, letter from DC contesting termination, referring to the

19   *Siegel I* litigation, and suggesting settlement as alternative to litigation); Reply Daum

20   Decl. Ex. C (May 12, 2005, letter from Toberoff to DC's counsel rejecting offer).[7]

21

22

23        [6] The PPC Agreements state that Toberoff would serve as the Shusters' attorney,
     and he clearly acted as an attorney in drafting, serving and filing the Shuster executor's
24   Notice of Termination signed by "Marc Toberoff, Esq., Counsel for the estate of Joseph
     Shuster.  Motion at 16-17; Sept. 20, 2010, Daum Decl. Ex. H at 86; FAC ¶ 93.

25        [7] This case is thus a far cry from the cases upon which DC relies.  *Haneline Pacific*
26   *Props. LLC v. May*, 167 Cal. App. 4th 311, 319-20 (2008) (litigation not seriously
     contemplated; "tone of … cooperat[ion]"; no demand letter); *Newport Builders, Inc. v. N.*
27   *Bay Constr. Inc.*, 2009 WL 2083359, *4 (N.D. Cal. July 14, 2009) (non-settlement
28   business deal communicated during settlement negotiations of *third parties*).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

### 3.    DC's Sixth Claim Arises from Protected Activity

DC's Sixth Claim falls within § 425.16(e) of the Anti-SLAPP Law, as the basis of that claim is the allegation that various agreements between the Defendants interfered with DC's settlement negotiations with the Siegels and Shusters.   DC's contention that the Sixth Claim is only "aimed at the *rights* … vest[ed] in Toberoff and his companies and has *nothing* to do with misconduct by Toberoff as a lawyer," Opp. at 17, ignores DC's own FAC and mischaracterizes the harm alleged.  DC incorporates by reference its entire complaint, and then alleges that Toberoff's actions and the "consent agreements" hamper DC's ability to "settle" the Shuster and Siegel terminations.  FAC ¶ 188.  The Sixth Claim attacks protected activity just as the Fourth and Fifth Claims do.  DC's vague allegation of more recent "consent agreements" DC learned about as part of a JAMS mediation obviously arises from protected settlement and mediation activity.[8]

### C.    DC's State Law Claims Have No Likelihood of Success on the Merits

As set forth more fully in the accompanying reply briefs in support of Defendants' motions to dismiss, DC Fourth through Sixth Claims are meritless.

Fourth Claim:  DC attempts to evade the two year statute of limitations barring its Fourth Claim by claiming for the first time in its Opposition that it has suffered "continu[ing] … harm."  Opp. at 23.  But the FAC makes clear that the Fourth Claim is based on an alleged <u>breach</u> of the 1992 Agreement.  In such circumstances, the claim must be brought within the statutory period following the <u>breach</u> (which DC alleges occurred in 2001), regardless of any ongoing harm.  *See Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (2000).  Moreover, DC knew of all the conduct relating to the Shuster claims – the 2001 and 2003 Pacific Pictures Agreements, the Shuster termination notices, and the Siegels' Superboy notices – no later than 2006.  The

---

[8] The consent agreements were executed on the eve of the 2008 S*iegel I* mediation and referenced in correspondence covered by the JAMS Confidentiality Agreement, which DC has repeatedly breached.  MTD 3d & 6th Claims at 18-23.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Ninth Circuit has rejected the application of the "continuing tort" doctrine when, as is

2  the case here, a business relationship is the interest at stake. *Monolith Portland*

3  *Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 293 (9th Cir.

4  1969). *See* Reply MTD 4th & 5th Claims at 4-6.

5        For the same reasons that the Fourth Claim falls within the Anti-SLAPP Law,

6  the Fourth Claim is also barred by the litigation privilege. *See* Mot. at 13-19.

7        <u>Fifth Claim</u>:  DC's argues that the Fifth Claim meets the second prong of the

8  Anti-SLAPP Law because:  (1) "Toberoff, through IP Worldwide, falsely

9  misrepresented to the Siegels that he had a 'billionaire investor' ready to purchase

10  their Superman rights," and (2) the statute of limitations was tolled as DC's

11  "suffering at the hands of Toberoff continues to this day" and "Toberoff's fraud and

12  deceit" was "fraudulent[ly] conceal[ed] … until December 2008."  Opp. at 24.

13        As demonstrated above, DC's argument that Toberoff defrauded the Siegels is

14  utterly false, contrary to all the evidence, and DC offers no admissible evidence to

15  support it. *See* Reply MTD 4th & 5th Claims at 8-10; Defendants' Evid. Objections.

16  DC's FAC also lacks the particularity necessary to satisfy F.R.C.P. 9(b)'s strict

17  pleading standard as to fraud. *See* Reply MTD 4th & 5th Claims at 8-9.  The

18  allegation of fraudulent concealment fares no better.   First, it is not pleaded with

19  particularity (or otherwise). *Id.*  Second, it again depends on random accusations in

20  the inadmissible Timeline, which have been refuted by the testimony of every

21  percipient witness.  Third, DC *admitted* four years ago (although conspicuously

22  omitting this fact from their FAC and Opposition brief) that the in-house legal team

23  managing the *Siegel* litigation received and read the Timeline in 2006, which means

24  that DC was on inquiry notice of the Timeline's (inadmissible) contents no later than

25  July 2006.   Ex. A (03/26/07 Decl. of Wayne Smith) ¶ 3 ("I [Smith] looked at what

26  might be characterized as the 'cover letter' that came with the Superman

27  Documents."), ¶ 4 ("Mr. Schulman … advised me that he had only looked at the

28  cover letter that came with the documents."); Oct. 4, 2010, Toberoff Decl. ¶ 16.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

10
REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

Sixth Claim: In the Sixth Claim, DC complains that "consent agreements" prevent the Siegels and Shusters from freely settling their claims and violate DC's supposed "right" to repurchase their termination interests. FAC ¶ 188. This claim fails. First, DC's allegations fail to state a claim under the UCL. MTD 3d & 6th Claims at 7-8. Second, DC cites no authority for its claim that agreements among allied parties fighting a common foe, stating that neither party will settle absent consent of the other, are "void as a matter of law and public policy." There is nothing improper about such "consent agreements," which are commonplace in commercial agreements that include provisions addressing litigation and settlement; indeed, Warner Bros. (DC's parent) uses such agreements without hesitation.[9] Moreover, as the Sixth Claim is based on the PPC and IP Worldwide Agreements, FAC ¶ 101, the claim is barred by the four-year statute of limitations applicable to UCL claims.[10] Finally, to the extent that the Sixth Claim is based on the vaguely alleged "additional agreements" disclosed in the mediation context that "impede DC's ability to settle any and all disputes with the Shusters and Siegels," FAC ¶ 170, the claim is barred by the litigation privilege. Petrocelli Decl. Opp. to Mot. to Strike ¶¶ 52-53; *see Seltzer v. Barnes*, 182 Cal. App. 4th 953, 970-71 (2010); Mot. at 19-20.

## D.   DC Is Not Entitled to Discovery

While DC says it has admissible evidence to support its claims, its pleading, reliance on the inadmissible Timeline, and reckless disregard of the sworn testimony

---

[9] *See, e.g.,* Ex. D at Exs. H (at 9225), J (at 6918), K (at 10018) (Warner Bros. agreements providing that licensee may not settle any claims against it without Warner's consent). *See also Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 581 (9th Cir. 1987) (approving settlement agreement providing for third-party consents).

[10] Courts have held that "the 'discovery rule' … is inapplicable [to UCL claims]. Thus, the statute begins to run when cause of action ***accrues***, irrespective of whether plaintiff knew of its accrual." *Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995) (emphasis added). The alleged "wrongs" under the Sixth Claim include the 2001 and 2003 Pacific Pictures Agreements, and the 2002 IP Worldwide Agreement. FAC, ¶¶ 60, 81, 169. DC's Sixth Claim thus expired by October 30, 2007.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

11

REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW

1  of all percipient witnesses show otherwise.  The point of the particularity requirement

2  of F.R.C.P. 9(b) is to protect reputation and to prevent discovery based on dubious

3  allegations.  Moreover, as a matter of substantive California law, the Anti-SLAPP

4  motion triggers an automatic discovery stay,[11] and DC cannot obtain discovery absent

5  a particularized showing of good cause, which DC does not even attempt.[12]

6        Here, there is no need for discovery before ruling on this Anti-SLAPP motion

7  because (1) the bulk of the motion is directed at the FAC's legal deficiencies; (2) DC

8  has already taken discovery during the six-year *Siegel I* litigation on the extremely

9  narrow factual issues; and (3) all of the relevant witnesses have already been

10 deposed.  DC has never articulated the discovery it purportedly needs to oppose this

11 motion, and certainly has not articulated how any supposed "contested factual

12 issues," Opp. 10, would refute Defendants' dispositive legal positions.  *See Moser v.*

13 *Triarc Cos.*, 2007 WL 3026425, at *2-4 (S.D. Cal. Oct. 16, 2007) (denying leave to

14 conduct discovery because it was not "essential in opposing" Anti-SLAPP motion);

15 *1-800 Contacts, Inc*, 107 Cal. App. 4th at 594 (no discovery where "information that

16 had already been adduced" covered subjects of discovery).

17 **III.   <u>CONCLUSION</u>**

18        DC's state law claims should be stricken pursuant to the Anti-SLAPP Law.

19 _____

20 [11] CCP Section 425.16(g) (automatic stay); *1-800 Contacts, Inc. v. Steinberg*, 107
Cal. App. 4th 568, 593 (2003) (high standard to show good cause to obtain discovery).  DC
21 relies on *Metabolife Int'l., Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), to suggest that
there is no automatic discovery stay, but *Metabolife* is inconsistent with *Shady Grove*
22 *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J.,
concurring), decided this year but ignored by DC, and with the Ninth Circuit's decision in
23 *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003), also ignored by DC.  These cases
recognize that substantive provisions of state law apply in federal court.  The discovery
24 stay is such a substantive provision.  *Metabolife* includes no contrary discussion.

25 [12] Nor has DC attempted to satisfy the requirements of FRCP 56(f), which DC
26 contends applies in lieu of the Anti-SLAPP Law's automatic stay, by describing the
specific facts it needs to discover.  *Tatum v. City & County of San Francisco*, 441 F.3d
27 1090, 1100 (9th Cir. 2006) (party must identify by affidavit "the specific facts that further
28 discovery would reveal, and explain why those facts would preclude summary judgment").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**

1   Dated: March 29, 2011              KENDALL BRILL & KLIEGER LLP

2                                      By   /s/ Richard B. Kendall

3                                           Attorneys for Defendants Marc Toberoff,
                                            Pacific Pictures Corporation, IP
4                                           Worldwide, LLC, and IPW, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PURSUANT TO ANTI-SLAPP LAW**