Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Nicholas C. Williamson (State Bar No. 231124)
  nwilliamson@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:          (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>              Plaintiff,<br>     vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' COURT-ORDERED SUPPLEMENTAL BRIEF RE: MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE LOGS**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set |

SUPPLEMENTAL BRIEF RE: ISSUE PRECLUSION

# **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

RELEVANT FACTUAL BACKGROUND......................................................................1

    A.    The Rule 54(b) Judgment in Siegel......................................................................1

    B.    The Consent Agreement........................................................................................2

ARGUMENT ......................................................................................................................3

    A.    The Court's Order Finding the Consent Agreement Privileged Is Entitled to Issue Preclusion Effect..............................3

        1.    Issue Preclusion Bars Relitigation of Issues Already Decided Against a Party to Prior Litigation .........................3

        2.    Rule 54(b) Judgments Are "Final" For Purposes of Issue Preclusion .................................................................4

        3.    DC Is Barred By Issue Preclusion From Re-Litigating the Issue of the Consent Agreement Decided Against DC in *Siegel* ............................................5

            a.    Courts Have Clearly Held That Discovery Rulings Are Entitled to Issue Preclusion Effect..........5

            b.    The Consent Agreement Issue Was Encompassed by the Rule 54(b) Judgment in *Siegel*..................................................................6d

            c.    Issue Preclusion Similarly Bars DC From Re-Litigating Additional Issues Decided in Siegel...........8

                i.    The Alleged Letter ............................................8

                ii.    Michael Siegel/Laura Siegel Communications.................................................9

                iii.    Privilege Log Format .........................................9

        4.    DC's Purported "Legal" or "Factual" Differences Are Irrelevant ..................................................................9

CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                **Pages**

*Brown v. Dunbar*,
2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) ......................................... 4

*Chew v. Gates*,
27 F.3d 1432 (9th Cir. 1994) ............................................................................. 10

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ............................................................................. 4

*Daughtery v. Wilson*,
2009 U.S. Dist. LEXIS 73497 (S.D. Cal. June 15, 2009) .................................... 8

*Dodd v. Hood River County*,
59 F.3d 852 (9th Cir. 1995) ................................................................................. 4

*Durkin v. Shea & Gould*,
92 F.3d 1510 (9th Cir. 1996) ............................................................................... 4

*Flores v. Emerich & Fike*,
2008 U.S. Dist. LEXIS 49385 (E.D. Cal. June 17, 2008) .................................... 4

*Hydranautics v. FilmTec Corp.*,
204 F.3d 880 (9th Cir. 2000) ........................................................................... 4, 8

*In re Subpoena Duces Tecum*,
439 F.3d 740 (D.C. Cir. 2006) ............................................................................. 6

*In re Sweeney*,
1994 U.S. App. LEXIS 28703 (6th Cir. Oct. 11, 1994) ....................................... 6

*Kamilche Co. v. United States*,
53 F.3d 1059 (9th Cir. 1995) ............................................................................. 10

*MPL, Inc. v. Cook*,
90 F.R.D. 570 (N.D. Ill. 1981) ............................................................................. 6

*MSM Invs. Co., LLC v. Carolwood Corp.*,
70 F. Supp. 2d 1044 (N.D. Cal. 1999) .......................................................... 10-11

*Navajo Nation v. Peabody Holding Co.*,
255 F.R.D. 37 (D.D.C. 2008) ........................................................................... 5-6

*Norris v. Grosvenor Mktg. Ltd.*,
803 F.2d 1281 (2d Cir. 1986) ............................................................................ 10

*OAIC Cml. Assets, LLC v. Stonegate Vill., L.P.*,
2009 U.S. Dist. LEXIS 65791 (D. Ariz. July 21, 2009) .................................... 11

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ......................................................................................... 3-4

*Robi v. Five Platters, Inc.*,
838 F.2d 318 (9th Cir. 1988) .................................................................................. 4-5

*Siegel v. Warner Bros. Ent. Inc.*,
Case No. 04-CV-8400 ODW (RZx) ............................................................. *passim*

*Siegel v. Warner Bros. Ent. Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................................... 10

*Sprecher v. Graber*,
716 F.2d 968 (2d Cir. 1983) ...................................................................................5

*Stonehill v. IRS*,
534 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................5

*United States v. Castillo-Basa*,
483 F.3d 890 (9th Cir. 2007) .............................................................................. 7-8

*United States v. Weems*,
49 F.3d 528 (9th Cir. 1995) ....................................................................................8

*Valero Energy Corp. v. United States*,
2010 U.S. Dist. LEXIS 34268 (W.D. Tex. Apr. 7, 2010) .....................................5

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*,
106 F.3d 894 (9th Cir. 1997) ...............................................................................10

*Yamaha Corp. of America v. United States*,
961 F.2d 245 (D.C. Cir. 1992) .............................................................................10

**<u>Other Authorities</u>**

17 U.S.C. § 304(c) ...................................................................................................1

F.R.C.P. 54(b) .............................................................................................. *passim*

18 James Moore,
Moore's Federal Practice § 132.02[2][c] (3rd ed. 2007) .....................................10

# INTRODUCTION

Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy (the "Shusters"), and Laura Siegel Larson (the "Siegels") hereby submit this supplemental brief in opposition to DC's Motion to Compel the Production of Documents and Amended Privilege Logs, pursuant to this Court's March 16, 2011 order (Docket No. 180) directing the parties to brief the subject of collateral estoppel or issue preclusion with respect to the "Consent Agreement." DC Comics ("DC") had a full and fair opportunity to litigate the privileged status of the Consent Agreement when it moved to compel the production of that document in the very closely related case of *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-8400 ODW (RZx) ("*Siegel*"); the *Siegel* Court rejected DC's motion; and a Rule 54(b) judgment has been entered in *Siegel* on the relevant First Claim as to the validity and scope of the Siegels' Termination and on DC's First through Fourth Counterclaims. Accordingly, issue preclusion bars DC's unsupportable attempt to once again compel the production of the Consent Agreement.

# RELEVANT FACTUAL BACKGROUND

**A.   The Rule 54(b) Judgment in *Siegel***

The Siegels allege in *Siegel* the following claims for relief:

- The First Claim for Relief sought declaratory relief to affirm the validity and scope of the Siegels' Superman termination notices (the "Siegel Termination") pursuant to 17 U.S.C. § 304(c);
- The Second Claim for Relief seeks declaratory relief as to Defendants' duty to account to Plaintiffs for post-April 16, 1999 profits from exploitation of the Siegels' recaptured Superman copyrights;
- The Third Claim for Relief seeks a declaration that DC has a duty to account for the post-April 16, 1999 exploitation of the Superman "crest" and/or Superman "shield"; and

- The Fourth Claim for Relief seeks an accounting from DC for its exploitation of the recaptured Superman copyrights after the effective termination date.

*Siegel*, Docket No. 644, ¶¶ 74-76. Defendant DC Comics asserted the following counterclaims:

- DC's First Counterclaim sought declaratory relief that the Siegel Termination was ineffective on various grounds;
- DC's Second Counterclaim sought declaratory relief that the Siegels' claims were barred by the statute of limitations;
- DC's Third and Fourth Counterclaims alleged that the parties had entered into a settlement agreement that the Siegels had repudiated;
- DC's Fifth Counterclaim seeks declaratory relief limiting the scope and reach of the Siegel Termination; and
- DC's Sixth Counterclaim seeks declaratory relief regarding the principles to be applied in an accounting.

*Siegel,* Docket No. 646, ¶¶ 66-139. On March 15, 2011, the Court in *Siegel* entered a final Rule 54(b) judgment on the Siegels' First Claim, and DC's First through Fourth Counterclaims. *See Siegel,* Docket Nos. 659, 660.

### B. The Consent Agreement

After the parties submitted their motions for summary judgment in *Siegel*, they discussed the possibility of settlement mediation before a JAMS mediator. *See* Declaration of Marc Toberoff ("Toberoff Decl.") (Docket No. 164), Ex. E. After the *Siegel* Court issued a March 26, 2008 order upholding the Siegel Termination, it ordered the parties to participate in settlement discussions. Toberoff Decl., Ex. F. The so-called "Consent Agreement," an agreement between the Siegels and the Shusters to collectively bargain with DC with respect to their closely related Superman termination interests, was entered into shortly before and in anticipation of that settlement mediation. In advance of the court-ordered mediation, the parties carefully negotiated and executed a JAMS Confidentiality Agreement on or about

May 1, 2008. *See* Declaration of Matthew Kline ("Kline Decl.") (Docket No. 161), Ex. K. On May 2, 2008, in connection with that mediation, and pursuant to the Confidentiality Agreement, the Siegels disclosed the existence and general nature of the Consent Agreement. Kline Decl., Ex. PP. After DC demanded the production of the Consent Agreement, the Siegels' counsel set forth the basis for privilege with respect to the Consent Agreement, namely that the Consent Agreement is a communication among the Siegel/Shuster Heirs and their counsel Mr. Toberoff, and reflects Mr. Toberoff's legal advice to his clients and legal strategies regarding settlement of their termination interests. Kline Decl., Ex. RR.

On December 30, 2008, DC moved in *Siegel* to compel the production of the Consent Agreement based on the very same arguments DC makes in this motion. Toberoff Decl., Ex. J at 5-6. In opposition, the Siegels asserted that the Consent Agreement was protected by the Confidentiality Agreement, the attorney-client privilege, the joint-interest privilege and the work product doctrine. *Id.*, Ex. J at 9-15. On January 14, 2009, the *Siegel* Court *denied* DC's motion and found the document privileged:

> THE COURT: Part of this is motivated simply by the Court's commitment to maintaining the settlement privilege. It was the Court that encouraged you to engage in that settlement effort, and I want to maintain the confidences that were agreed to during that period. So that motion is denied.

Kline Decl., Ex. SS at 12:15-19.

## ARGUMENT

### A. The Court's Order Finding the Consent Agreement Privileged is Entitled to Issue Preclusion Effect

#### 1. Issue Preclusion Bars Relitigation of Issues Already Decided Against a Party to Prior Litigation

The issue preclusion or collateral estoppel doctrine "has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party … and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under [issue preclusion],

once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995). Issue preclusion applies where:

> (1) [T]he issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party ***against*** whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (emphasis added) (citation omitted). *See Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir. 1996) (issue preclusion "bars relitigation of issues 'actually litigated and necessarily determined by a court'" in "'subsequent suits based on a different cause of action involving a party to the prior litigation.'") (citations omitted). Therefore, DC Comics, as a party to both *Siegel* and this case, is bound here as to all "issues" finally decided against it in *Siegel*.

### 2. Rule 54(b) Judgments Are "Final" For Purposes of Issue Preclusion

For purposes of issue preclusion, a "final judgment" is "any prior adjudication … sufficiently firm to be accorded conclusive effect." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988). A Rule 54(b) judgment is considered "sufficiently firm" to support issue preclusion. *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) ("[A] 54(b) ruling in fact has res judicata ramifications."); *Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) (approving lower "court's orders [that] found preclusive the partial final judgment under Federal Rule of Civil Procedure 54(b)"); *Flores v. Emerich & Fike*, 2008 U.S. Dist. LEXIS 49385, *28-29 (E.D. Cal. June 17, 2008) (where a court has "entered final judgment pursuant to Rule 54(b) … there has been a final judgment" for preclusion purposes).

Judgments also have issue preclusion effect while an appeal is threatened or pending like in *Siegel*. *See Robi*, 838 F.2d at 327 (pending appeals "in no way affect

the 'firmness' of the [trial court] decisions … for purposes of issue preclusion"). It is clear that the 54(b) Judgment in *Siegel* supports issue preclusion in this case.

### 3. DC Is Barred By Issue Preclusion From Re-Litigating the Issue of the Consent Agreement Decided Against DC in *Siegel*

#### a. Courts Have Clearly Held That Discovery Rulings Are Entitled to Issue Preclusion Effect

Courts have clearly held that discovery rulings are entitled to issue preclusion effect where a specific discovery dispute is litigated and decided. For example, in *Stonehill v. IRS*, 534 F. Supp. 2d 1, 6-7 (D.D.C. 2008), a party had withheld documents in a prior case "on the basis of the attorney work product and attorney-client privileges," the parties had submitted "'extensive briefing,'" and the prior court had ordered the production of the documents. The later *Stonehill* court applied issue preclusion, because the documents from the prior case were the "'same documents that are at issue in this proceeding,'" and "a direct holding on the application of those privileges in a prior proceeding addressing the same documents amounts to the 'same issue' for purposes of collateral estoppel." *Id.* at 7.

*Valero Energy Corp. v. United States*, 2010 U.S. Dist. LEXIS 34268 (W.D. Tex. Apr. 7, 2010) is also instructive. The plaintiff had previously challenged the scope of a subpoena in another proceeding, and "[t]he subpoenas in this case seek the same categories of documents regarding the same issues and cover the same time frames." *Id.* at *19. The Court applied issue preclusion to bar relitigation because the party had "the opportunity to fully and fairly litigate its objections," and the prior court had made a "final determination" on the same issue in the prior proceeding. *Id.* at *21-22.

Numerous other cases have similarly applied issue preclusion to discovery rulings, especially where the same documents are sought in both cases. *See, e.g., Sprecher v. Graber*, 716 F.2d 968, 972–73 (2d Cir. 1983) (ruling that issue preclusion applied to bar claim of attorney-client privilege when the party asserting privilege had the opportunity to litigate the same issue in a prior lawsuit); *Navajo*

*Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 45 (D.D.C. 2008) (order in prior case "granting [a] Motion to Compel is a judicial finding that the [party] waived the attorney-client and work product privileges" as to the documents at issue in both cases, and "[u]nder the doctrine of issue preclusion, such an order is binding on the trial court in this case and forecloses re-litigation"); *In re Sweeney*, 1994 U.S. App. LEXIS 28703, at *2 (6th Cir. Oct. 11, 1994) ("As the South Carolina district court had ruled that the requested documents were irrelevant, the Tennessee district court did not err in dismissing Sweeney's motion to vacate based on the prior decision."); *In re Subpoena Duces Tecum*, 439 F.3d 740, 742 (D.C. Cir. 2006) (upholding issue preclusion with respect to discovery rulings and stating that the party claiming issue preclusion has "burden to show that the same documents were at issue in both fora"); *MPL, Inc. v. Cook*, 90 F.R.D. 570, 573 (N.D. Ill. 1981) (denying motion to compel interrogatories when the interrogatories were an attempt to relitigate issues already decided in a prior lawsuit).

Here, DC seeks the ***exact same document*** – the Consent Agreement – that it sought to compel in *Siegel*, and which the *Siegel* Court held to be privileged after extensive briefing and a hearing.  The doctrine of issue preclusion mandates that the same result be reached here.

### b. The Consent Agreement Issue Was Encompassed by the Rule 54(b) Judgment in *Siegel*

The privileged status of the Consent Agreement was "necessarily decided" as part of the Rule 54(b) judgment in *Siegel*.  The claims and counterclaims in *Siegel* fall into two broad categories:  "validity" claims that relate to the validity of the Siegel Termination, and the works thereby recaptured (the Siegels' First Claim for Relief and DC's First through Fourth Counterclaims); and "accounting" claims that relate to DC's accounting obligations to the *Siegel* plaintiff (the Siegels' Second through Fourth Claims for Relief; DC's Fifth and Sixth Counterclaims).  The Rule 54(b) judgment was recently entered on all the "validity" claims.

6
SUPPLEMENTAL BRIEF RE: ISSUE PRECLUSION

The Consent Agreement which concerns the Siegel and Shuster's negotiating strategy with respect to their Superman termination interests plainly relate to numerous aspects of the "validity" claims. For example, the Siegels' First Claim was that they "owned and continue to own an undivided fifty percent (50%) of the Recaptured Copyrights to each and/or all the [Superman] Works" (*Siegel,* Docket No. 644, ¶ 54); the Consent Agreement is directly relevant to the disposition of such Recaptured Copyrights. The Shuster estate's statutory termination is the mirror image of the Siegel Termination relating to Superman works co-authored by Siegel and Shuster and copyright grants by Siegel and Shuster covered by the Siegel Termination. Thus, the *Siegel* Court's decision upholding the validity of the Siegel Termination boded well as to the validity of the Shuster Termination, which, in turn, buttressed the Consent Agreement.

Furthermore, DC's Third and Fourth Counterclaims *denied* in the Rule 54(b) Judgment, argued that the Siegels could not enter into any agreements relating to their termination interests, because DC claimed thereunder that the Siegels had already entered into a purported settlement agreement with it, which allegedly "transferred to DC Comics, worldwide and in perpetuity … any and all rights, title and interest…which they may have in any and all past, present, and future Superman … properties, works, characters, named, and trademarks" (*Siegel,* Docket No. 646, ¶ 98). In short, just as the *Siegel* Court's granting of the First Claim underlied the Consent Agreement, DC's Third and Fourth Counterclaims, if not rejected by the Court, would have, in large part, undercut the Consent Agreement.

As the "Consent Agreement" is related to and intertwined with the "validity" claims, the *Siegel* Court's decision denying DC's motion to compel its production can be viewed as "necessarily decided" as part of the "validity" claims on which the Rule 54(b) judgment has been entered. Courts treat the "necessarily decided" component of issue preclusion with liberality. *See, e.g., United States v. Castillo-Basa*, 483 F.3d 890, 901 n.7 (9th Cir. 2007) ("We have often held that an issue was

'necessarily decided' at a trial even when the issue was not an element of the offense in question."); *United States v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995) (an issue is "necessarily decided" for collateral estoppel purposes when the court addressed it and went on to a second, dispositive issue, even though the first issue could have been avoided and thus was not necessary); *Daughtery v. Wilson*, 2009 U.S. Dist. LEXIS 73497, at *22 (S.D. Cal. June 15, 2009) ("An issue is 'necessarily decided' when resolution of that issue is 'not entirely unnecessary' to the judgment in the prior proceeding.") (citations omitted).

The requirements of issue preclusion have been met: the privileged status of the Consent Agreement was "necessarily decided" as part of the *Siegel* Court's adjudication of the First Claim and First through Fourth Counterclaims; *Siegel* ended with a (partial) "final judgment on the merits" (i.e., the Rule 54(b) judgment) and the party, DC, is the same. *Hydranautics*, 204 F.3d at 885.

### c. Issue Preclusion Similarly Bars DC From Re-Litigating Additional Issues Decided in *Siegel*

As set forth in greater detail in defendants' portion of the joint stipulation, Issue #3 (the alleged Michael Siegel/Laura letter), Issue #4 (joint-interest privilege between Michael Siegel and Laura Siegel, and Issue #7 (privilege log format) were all fully litigated and resolved in *Siegel*. *See Siegel,* Docket No. 159 at 66-68 (Issue #3), 68-71 (Issue #4) and 74-75 (Issue #7). Accordingly issue preclusion should also prevent relitigation of such issues.

#### i. *The Alleged Letter*

Issue #3 concerns an Alleged Letter from Michael Siegel to Laura Siegel relating to the First Claim. Toberoff Decl., Ex. C at 20:16-18. DC in *Siegel* challenged the Siegels' privilege logs with respect to the Alleged Letter on no fewer than *five* occasions. The *Siegel* Court rejected DC's attempts to challenge the privilege logs, and ended the matter on December 4, 2008, ordering the escrow holder to finally disburse the stolen documents. *See* Toberoff Decl., Ex. I at 4. Issue

preclusion bars DC's attempt to re-litigate this issue.

### ii. *Michael Siegel/Laura Siegel Communications*

Issue #4 relates to communications between Michael Siegel and Laura Siegel after settlement negotiations broke down between DC and the Siegels, and such communications would be relevant to and be encompassed by the Rule 54(b) Judgment as to the Siegels' First Claim, or DC's Third and Fourth Counterclaims, relating to a purported settlement agreement. DC specifically moved in 2008 in the United States District Court for the Northern District of Ohio, for *in camera* review and to compel production of such communications as it does now, but was expressly rejected. Kline Decl., Ex. G at 6. The district court rejected DC's motion to compel, finding that Laura Siegel and Michael Siegel shared a joint interest in the *Siegel* litigation and stated that its prior rejection of joint interest as to a specific investor's buy-out offers to Michael Siegel did not "cast the entire process into question." Kline Decl., Ex. G at 6. There can be no dispute that the litigation in the Northern District of Ohio has concluded, as DC did not seek appellate review of the District Court's order. Issue preclusion thus bars DC's attempt to re-litigate this issue as well.

### iii. *Privilege Log Format*

Issue #7 concerns the format of Defendants' privilege logs. Such logs use a format *identical* to the format already approved by this Court in *Siegel* (Toberoff Decl., Ex. O at 5) where the Siegels' privilege logs obviously related to and were encompassed by the Rule 54(b) Judgment as to the First Claim and DC's First through Fourth Counterclaims. Issue preclusion bars DC from re-litigating this issue as well, and DC's inclusion in this action of wholly unsupported and retaliatory claims against the Siegels' attorney does not change this result.

### 4. DC's Purported "Legal" or "Factual" Differences Are Irrelevant

DC will doubtless claim that the same Consent Agreement issues are not

presented here as they were in *Siegel* based on DC's frivolous arguments that privilege was somehow waived as to the consent agreement. As set forth in Defendants' opposition to DC's motion, such arguments are misplaced and no such waiver occurred.

DC may also claim that any new legal arguments by DC in this case render the issues non-identical. However, issue preclusion extends with equal force to arguments not specifically addressed, as "[n]ecessary inferences from the judgment, pleadings, and evidence will be given preclusive effect." *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994). *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (holding that the court is "allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided"). In other words, issue preclusion extends to issues not specifically addressed but which "by necessary implication... [are] contained in that which [was] explicitly decided." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986).

Thus, issue preclusion applies to arguments raised as well as to arguments that ***could*** have been raised at the time of the earlier action, as "it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (quoting *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). In fact, the *Siegel* Court recognized that issue preclusion bars new arguments on decided issues:

> If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged.

*Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1128 (C.D. Cal. 2008) (quoting 18 James Moore, Moore's Federal Practice § 132.02[2][c] at 132-25 (3rd ed. 2007). *See also MSM Invs. Co., LLC v. Carolwood Corp.*, 70 F. Supp. 2d 1044, 1053 (N.D. Cal. 1999) (issue preclusion applies where a court "necessarily" ruled on an

1  issue "though it did not expressly say so"); *OAIC Cml. Assets, LLC v. Stonegate Vill.,*
2  *L.P.*, 2009 U.S. Dist. LEXIS 65791, at *19 (D. Ariz. July 21, 2009) ("Whether these
3  four new arguments are factual or legal, their only purpose is to obtain a different
4  determination of the issue of standing. This is precisely what the principle of issue
5  preclusion precludes.").

6       Accordingly, new arguments by DC do not circumvent issue preclusion and
7  allow it to re-litigate the issues adjudicated under the Rule 54(b) Judgment.

## CONCLUSION

9       For all the foregoing reasons and all those stated in Defendants' previously
10 filed opposition, DC's motion to compel should be denied.

12 Dated: March 29, 2011          RESPECTFULLY SUBMITTED,

                                                     Marc Toberoff
                                                     TOBEROFF & ASSOCIATES, P.C.

                                                     Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson