KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Nicholas F Daum (236155)
  ndaum@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>        Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANTS' OBJECTION TO PLAINTIFF DC COMICS' IMPROPER SUR-REPLY AND DC's MOTION TO STRIKE EVIDENCE IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW**<br><br>*Re: Anti-SLAPP Motion to Strike* (Docket No. 145), *under submission per the Court's February 14, 2011 Order* (Docket No. 169)<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set |

79941.1

DEFENDANTS' OBJECTION TO DC COMICS' IMPROPER SUR-REPLY

# INTRODUCTION

Defendants respectfully object to plaintiff DC Comics' ("DC") unauthorized sur-reply, styled as "Evidentiary Objections and Motion to Strike" ("Sur-Reply"), filed on March 30, 2011 (Docket No. 201) in response to Defendants' Anti-SLAPP motion. DC's improper submission rehashes its muddled arguments in a desperate effort to manufacture supposed "issues of fact." Such deliberate disregard for the procedural rules of Court should not be countenanced. DC's 13-page Sur-Reply should be stricken in its entirety.

# OBJECTIONS

### A. DC Comics' "Objection" Constitutes an Improper "Sur-Reply"

DC's "objection" is nothing more than an improper sur-reply: it contains legal argument and citations to evidence in direct response to cited arguments in Defendants' Reply in support of their Anti-SLAPP motion. Such briefing is in direct contravention of Local Rule 7-10: "[a]bsent prior written order of the Court, the opposing party shall not file a response to the reply." *Id. See* Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* at 12:110 (2010) ("Unless requested by the court, no response to a reply brief is allowed."). DC neither sought nor received permission from the Court to file its Sur-Reply and, accordingly, DC's Sur-Reply must be stricken in its entirety.[1]

### B. Defendants Have Submitted Proper Rebuttal Evidence

To buttress its impermissible Sur-Reply, DC mischaracterizes Defendants' proper rebuttal evidence in response to DC's opposition as improper "new" evidence. The introduction of Defendants' evidence on reply is clearly permitted. *See* L.R. 7-10 ("A moving party may . . . serve and file a reply memorandum, and declarations or other rebuttal evidence."; *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1216

---

[1] DC fashions its brief as a "motion to strike." Yet the Local Rules provide that motions must be filed 28 days before the hearing, and DC's motion was filed just days before the October 18, 2010 hearing. DC also did not follow any of the procedural requirements for an *ex parte* application to shorten time for briefing and hearing of its motion.

(C.D. Cal. 2007) ("Evidence is not 'new,' . . . if it is submitted in direct response to proof adduced in opposition to a motion.").

<u>The Wayne Smith Declaration</u>:  DC contended in its Opposition to Defendants' motions that it first discovered the purported "facts" underlying its Fifth Claim for tortious interference only when the so-called anonymous "Toberoff Timeline" was formally released by this Court in December 2008.  Docket No. 184 at 13:1-13.  However, this directly contradicted the *admissions* in the *Siegel* action by Wayne Smith, in-house counsel for Warner Bros., who manages both the *Siegel* litigation and the present litigation for DC.  Mr. Smith admitted that he, as well as Warner Bros. General Counsel John Schulman (who also acted for DC in the *Siegel* litigation), did in fact **read** the Toberoff Timeline in **2006**, *four years* before DC filed this lawsuit.  Docket No. 196-1 ("Daum Reply Decl."), Ex. A, ¶¶ 3-4.  Defendants' Reply fairly pointed out these admissions to rebut DC's blatant distortion of the record.  That Mr. Smith admitted that he and Mr. Schulman reviewed the Toberoff Timeline in 2006, is indisputable and cannot serve as the basis for a "contested issue of fact."  Nor is it disputable that this and many other things alleged in DC's Fifth Claim occurred by 2006 (*e.g.*, the Siegels' rejection of DC's settlement proposal in 2002, the production to DC in 2006 of the 2002 IP Worldwide Agreement between the Siegels, Mr. Toberoff and Mr. Emanuel) and at a minimum placed DC on inquiry notice by 2006, triggering the statute of limitations.  *See* Docket No. 146-1 at 21:20-22:15.

<u>The Kevin Marks Declaration</u>:  Kevin Marks' very brief declaration was also permissible rebuttal evidence.  DC based the "bad act" required for its Fifth Claim solely on the demonstrably false fraud allegation that Mr. Toberoff misled the Siegels by supposedly representing that he had a "billionaire investor" and would produce a competing Superman movie.  *See also* Section D, *infra.*  DC erroneously argues that Defendants counter this for the first time by presenting Marks' declaration.  However, Defendants provided this Court in their opening motions with Kevin

Marks' sworn deposition testimony in which the conversation in question was fully explored and there is no mention of either a "billionaire investor" or producing a Superman movie. Daum Reply Decl., Ex. H at 166:6-170:24; Ex. E at 98:25-104:14. Mr. Marks' declaration directly incorporates his deposition, attaches his deposition transcript, and does little more than reaffirm that no mention was made of a "billionaire investor" or the production of a Superman movie (the sole basis of DC's vague "fraud" allegations and the pillar of its Fifth Claim). *See* Docket No. 196-3 ("Marks Decl."), ¶¶ 4-5. This can hardly be described as "new" evidence. Although DC knew that Kevin Marks' testimony was before the Court in the anti-SLAPP motion, DC made no effort whatsoever to obtain evidence from Mr. Marks, either informally or formally, and cannot use his consistent sworn statements to delay this motion. C.C.P. § 425.16(g); F.R.C.P. 56(f).

<u>Mr. Toberoff's Declaration:</u>  The Declaration of Marc Toberoff was properly submitted to rebut Defendants' prejudicial hearsay and character assassination. Through tabloid-style innuendo, DC now asks the Court to draw adverse inferences against Defendants because Mr. Toberoff's declaration properly focused on rebutting the prejudicial remarks in Mr. Petrocelli's declaration, not the entire FAC. Reply at 9-10. DC simultaneously contends Defendants had no right to serve rebuttal testimony at all, despite Mr. Petrocelli's declaration that brazenly attacks Mr. Toberoff personally based on inadmissible irrelevancies. Sur-Reply at 1-2.

Nor do the numerous "questions" posed by DC have any bearing whatsoever on the merits of the anti-SLAPP motion. The anti-SLAPP motion may be granted based entirely on the purely legal arguments addressed in Defendants' Motions to Dismiss. DC's contention that Mr. Toberoff had commercial as well as litigation interests at stake, even if true, would not be a basis to deny the anti-SLAPP motion. Docket No. 145-1 at 15:8-24.[2]  Moreover, *each* of the agreements on which DC bases

---

[2] *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1110, 1115 (1999) (a non-attorney's assistance in "prosecuting a … court action" falls under § 425.16(e)); *Ludwig v. Superior Court,* 37 Cal. App. 4th 8, 12-13 (1995).

its "commercial interest" argument show a commercial interest reveals on its face that litigation was seriously contemplated and that Mr. Toberoff's legal services would be provided. *See* Docket No. 146-2 (Request for Judicial Notice) ("RJN"), Exs. D-E, H.

### C. No New Evidence Supports Discovery for the Anti-SLAPP Motion

DC continues to provide ***no admissible evidence whatsoever*** to support its claims, and admits that it has no such evidence and is relying instead on the inadmissible "Toberoff Timeline," the hearsay statement of a belligerent thief, currently under grand jury investigation, which contradicts the sworn deposition testimony of everyone with knowledge of the subject. DC also continues to provide no particularized allegations or evidence of fraud, as required by F.R.C.P. 9(b), a rule of pleading designed to protect the "accused's" reputation and prevent intrusive discovery based on dubious allegations. *See* Docket No. 195 at 8-10. The remedy for DC's lack of evidence is not further discovery, as it advocates, but rather that its bald fraud allegations are "disregarded" and "strip[ped]. . . from the claim," under binding Ninth Circuit authority. *Vess v. Cib-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003). Disregarded allegations cannot justify discovery.

DC attempts to mislead the Court by falsely stating that "[n]o discovery has *ever* been taken concerning the events summarized in the Toberoff Timeline." Sur-Reply at 2. Indeed, the Marks declaration – in which Marks reaffirms the full account of his conversation with Toberoff and Ari Emanuel that he provided in his 2006 deposition (Marks Decl., Ex. A at 168:10-23) demonstrates that Marks was questioned <u>precisely</u> about the offer alleged in the Timeline in 2006. Moreover, DC itself has put in evidence the deposition of Marc Toberoff, which demonstrates that he was thoroughly interrogated about the events alleged in the Timeline. Docket No. 182 ("Petrocelli Decl."), Ex. 14 at 92:1-105:11 (describing Toberoff conversations with Marks regarding the offer to purchase the Siegel Superman rights for $15 million). In addition both Laura and Joanne Siegel were also thoroughly deposed as

to the events alleged in the Timeline including their first communications with Toberoff and their 2002 agreement with IP Worldwide. Docket No. 145-1 at 9:12-20. This comes as no surprise as Marks, Toberoff and the Siegels were all deposed after June 2006, when DC concedes it received *and read* the Timeline. *See* Daum Reply Decl., Ex. A, ¶ 3; Exs. E-H.

The events that DC claims are "summarized" in the Toberoff Timeline are Toberoff's first interaction and subsequent relationships with the Siegels and their attorneys, as well as the Pacific Pictures and IP Worldwide Agreements, all of which have already been the subject of ***extensive*** deposition testimony and document discovery (*e.g.*, all such agreements were produced to DC in 2006) in the *Siegel* litigation. Despite DC's claim that Magistrate Zarefsky ruled that it was "entitled" to discovery based on the Timeline in connection with Defendants' Anti-SLAPP motion, Magistrate Zarefsky did nothing of the kind and simply treated the Timeline like any other document:

> "Judge Larson has indicated, ruled that the letter had to be turned over. And I'm not going to revisit that ruling. And I'm not going to voice an opinion as to whether I would have issued the same ruling. . ..
> 
> . . ..
> "So, since the Timeline has been disclosed, the plaintiffs may conduct discovery about it. And that's all I'm indicating in denying this motion. I'm not making any further ruling with connection to that except to say that the motion for a protective order is denied."

*See* Docket No. 193-1 ("Toberoff Reply Decl."), Ex. A at 55:24-56:13.[3]

Finally, DC raises for the first time in its Sur-Reply the purported contents of a stolen privileged October 10, 2005 e-mail between Mr. Toberoff and the Siegels, long after the *Siegel* litigation had commenced. *See* Sur-Reply at 3:20-23. DC tellingly does not provide the Court with this document, neither with its Opposition nor Sur-Reply. Nor does DC quote the document. Instead DC mischaracterizes its

---

[3] DC distorts Magistrate Judge Zarefsky's ruling on discovery in the *Siegel* case. He specifically did not rule that DC was entitled to redo all the discovery it already had in the *Siegel* case, instead holding that "a party should not have to needlessly go over material that was previously testified to[, a]nd absent compelling circumstances, a party should not have to testify more than once in a case." Toberoff Reply Decl., Ex. A. at 58:1-4.

contents, which pertain to 2005 licensing proposals.[4]  DC's hearsay statements must be stricken and do not create "issues of fact."  F.R.E. 802.  If anything this document, which Mr. Smith admits reviewing in **2006** and DC purports to rely on for its Fifth Claim, *further* supports that DC is barred by the statute of limitations.  Daum Reply Decl., Ex. A, ¶¶ 3, 8.

### D. DC's "Fraud" Allegations Are Rebutted by the Marks Declaration

Defendants submitted the Marks Declaration in response to DC's false allegations of "fraud" in connection with its Fifth Claim for interference with prospective economic advantage, and DC's use of such allegations in its Opposition Brief to claim that its Fifth Claim has merit.[5]  *See* Docket No. 196 at 1:4-6, 2:15-3:6, 4:21-3, 10:7-28.  To whatever extent DC may have tried to plead fraud to support its Fifth Claim, the Marks Declaration (as well as the Marks deposition testimony that Defendants submitted with their anti-SLAPP motion (Docket No. 145-2, Ex. R) rebuts such allegations.  Claims for interference with economic advantage require a plaintiff to show that it is "reasonably probable that [its] prospective economic advantage would have been realized but for the defendant's interference" (*Youst v. Longo,* 43 Cal. 3d 64, 71 (1987)) and that such interference was "independently wrongful."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003).

The fraudulent "wrongful acts" required for DC's Fifth Claim are pleaded (without particularity) as follows:  in August 2002, Toberoff purportedly falsely represented *to Marks* that he had a "billionaire investor" and was able to produce a Superman movie, in connection with a proposal to purchase the Siegels' rights; Marks communicated that offer to the Siegels; and in September 2002, the Siegels

---

[4] The Siegels would be happy to lodge the October 10, 2005 e-mail with the Court, provided that DC agrees that such will not be deemed a waiver of privilege.

[5] DC also makes the astonishing statement that "the Siegels' alleged Superman rights" were "rights that DC Comics owned as a result of the 2001 settlement agreement" – *i.e.,* that the 2001 settlement agreement was a fully-formed, valid contract, a position decisively rejected by this Court in *Siegel* I, 542 F. Supp. 2d 1098, 1139 (C.D. Cal. 2008).

supposedly repudiated their agreement with DC based upon that offer. FAC, ¶¶ 77-80, 183. *See also* DC's Opposition (Docket No. 184) at 6 ("The Timeline reveals that in August 2002, Toberoff and his business partner contacted Kevin Marks (the Siegels' attorney) and claimed falsely that they had a billionaire investor ready and willing to purchase the Siegels' Superman rights."). The reason DC pleaded in this manner is clear: DC needs to allege purportedly "wrongful" acts that supposedly disrupted their 2001-2002 settlement negotiations. FAC, ¶ 80.

Marks' declaration merely confirms what he already testified to in 2006, and what every witness who has been deposed on the subject has testified to: the alleged "wrongful" acts in August 2002 that form the basis of DC's Fifth Claim *did not take place*. *See* Marks Decl., ¶ 4 ("At no time during that conversation did either Mr. Toberoff or Mr. Emanuel say anything about a 'billionaire investor.'"), ¶ 5 ("At no time during that conversation did either Mr. Toberoff or Mr. Emanuel say anything about helping the Siegels to produce their own 'Superman' motion picture . . . [or] about producing a 'Superman' motion picture that would compete with a 'Superman' motion picture being developed by Warner Bros. or DC Comics."). Thus, DC's Fifth Claim, which requires a "wrongful act," has no likelihood of success on the merits and must be dismissed pursuant to the Anti-SLAPP statute. Moreover, it is a matter of record that prior to Mr. Toberoff's first substantive conversation with Kevin Marks in August 2002, Joanne Siegel had clearly stated in her May 9, 2002 letter that "after four years, we have no deal and this contract makes an agreement impossible," obliterating the causal prong of DC's Fifth Claim. *See* Docket No. 145-2 (Declaration of Nicholas Daum), Ex. O.

Faced with clear evidence that its Fifth Claim cannot survive as pleaded, DC ***abandons*** the allegations of its FAC in its Sur-Reply and begins citing hearsay allegations in the Toberoff Timeline not contained in the FAC. *See* Sur-Reply at 4:3-8, 4:20-27 (comparing Marks declaration to the Toberoff Timeline). Notably, while DC's FAC clearly pleads that Toberoff's allegedly "fraudulent" offers were

conveyed *through* Marks, DC now claims that "Marks declarations does not address Toberoff's statement to *the Siegels themselves*," citing the Timeline, an allegation nowhere to be found in the FAC and contrary to the sworn testimony of all involved.[6] *Id.* at 4:24-25.  Again, DC provides no particularity to support its speculations, and instead, continues to make unbridled allegations damaging to Mr. Toberoff's reputation without any proper foundation.

The new theories raised for the first time in DC's Sur-Reply are red herrings that do not relate to alleged wrongful acts in August 2002:

- DC complains that Marks "carefully and selectively discloses one conversation" (Sur-Reply at 5:17-18) – when that conversation is the *only* conversation alleged in the FAC that purportedly included any supposed references to a "billionaire investor" or the production of a competing movie.
- With distorted innuendo, DC cites to facts that do not remotely speak to any "wrongful act" such as:  "Toberoff made Marks uncomfortable" (Sur-Reply at 5:15-16); "that there was an 'investment fund' being set up" (*id.* at 5:20); that Toberoff "'had a separate company that was in the business of acquiring intellectual property rights'" (*id.* at 5:22-24); and that "Toberoff and Emanuel 'made a proposal of $15 million and what was described as a meaningful back end.'" *Id.* at 6:6-8.
- DC complains "Marks' deposition . . . occurred before production of the Timeline and other documents in December 2008, so Marks has never been examined about or in light of this new evidence" (*id.* at 5:25-27), but deliberately omits that it read the Timeline in 2006 prior to Marks' deposition and that this Court rejected DC's attempt to re-open discovery based on this purported "new evidence."  *Siegel*, Docket Nos. 476-78.

---

[6] DC continues to ignore the indisputable fact that even the inadmissible Toberoff Timeline on which it relies never asserts that Mr. Toberoff represented to the Siegels that he had a "billionaire investor."  Reply at 2:15-3:1.

79941.1

8

DEFENDANTS' OBJECTION TO DC COMICS' IMPROPER SUR-REPLY

### E. DC Cannot Ignore the Impact of Wayne Smith's Reading and Use of the Timeline and Underlying Documents

DC speciously claims that its hands were tied by the very "escrow" process it instituted to artificially whitewash the stolen documents. However, DC admits that not only did Wayne Smith and John Schulman *read* the Timeline back in 2006, but that Wayne Smith *reviewed* all of the underlying stolen documents, submitted a sworn declaration attesting to a ***detailed recollection*** about their contents and in fact ***used them*** in the *Siegel* litigation. Sur-Reply at 6-7 (describing DC's use of Timeline and underlying documents in the *Siegel* case: "This was one of the documents anonymously sent. . ..and, as Mr. Smith recalled, [it] discussed the claim that Toberoff had an 'investor' ready to purchase the Siegels' respective rights, consistent with the statements in the Timeline"). DC's admissions show beyond any doubt that DC was on inquiry notice in 2006 of its claims. Daum Reply Decl., Ex. A, ¶¶ 3-8.

There is no denying any of the following: DC's state law claims are expressly based on the 2001 and 2003 Pacific Pictures Corporation agreements ("PPC Agreements") and the 2002 IP Worldwide Agreement, all of which were voluntarily produced to DC in 2006. RJN, ¶ 10, Exs. D-E, H, J-K. DC bases its claims on such agreements. *See* FAC, ¶¶ 60-65, 90, 177-78 (PPC Agreements/Fourth Claim), ¶¶ 81-84, 185 (IP Worldwide Agreement/Fifth Claim). In June 2006, lawyers acting for DC read and reviewed the Timeline, which repeatedly referenced such agreements as integral parts of Toberoff's supposed misconduct. Mr. Smith read all of the underlying documents, had a detailed recollection of their contents, and used that knowledge in the *Siegel* litigation. DC also took extensive deposition testimony in 2006 regarding these agreements and Mr. Toberoff's initial contact and relationship with the Siegels and Shusters. Docket No. 145-1 at 6:4-28, 9:12-21, 10:12-19, 11:2-8.

Despite all of this, DC vaguely argues that it was somehow not on "notice" of

its claims as soon as it received the documents. Of course, this defies all reason and the law: "[T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry. . .. Once the plaintiff has a ***suspicion of wrongdoing*** . . . [it] must decide whether to file suit or sit on [its] rights." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (emphasis added). "Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1150 (1991) (internal citations omitted). DC did not need a court ruling about the Timeline to place it on "suspicion of wrongdoing" in 2006 when it was read, nor was it prohibited from filing suit based on the PPC Agreements and IPW Agreement so integral to its claims and which it was free to use for any purpose whatsoever. No amount of additional discovery will change the fact that DC had all these documents four years ago, but failed to act.

Dated: March 31, 2011                KENDALL BRILL & KLIEGER LLP


By: /s/ Richard Kendall
Richard B. Kendall
Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC