1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:  (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8   (continued on next page)

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  DC COMICS, | Case No.  CV 10-3633 ODW (RZx) |
| 12            Plaintiff, | **DISCOVERY MATTER** |
| 13        v. | **DC COMICS' NOTICE OF MOTION AND MOTION TO COMPEL SIX INTERROGATORY RESPONSES FROM DEFENDANT TOBEROFF** |
| 14  PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | **FILED PURSUANT TO L.R. 37-2.4** |
| | DECLARATION OF DANIEL M. PETROCELLI, DECLARATION OF MATTHEW T. KLINE PURSUANT TO L.R. 37-2.4, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH |
|             Defendants. | **Judge**:        Hon. Otis D. Wright II <br> **Magistrate**:  Hon. Ralph Zarefsky |
| | **Hearing Date**:      Apr. 25, 2011 <br> **Hearing Time**:      10:00 a.m. <br> **Discovery Cutoff**:  None Set <br> **Pretrial Conference**:  None Set <br> **Trial Date**:          None Set |

1   (continued from previous page)

2   PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
3   PERKINS LAW OFFICE, P.C.
   1711 Route 9D
4   Cold Spring, NY 10516
   Telephone:  (845) 265-2820
5   Facsimile:   (845) 265-2819
6

7   Attorneys for Plaintiff DC Comics

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on April 25, 2011, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard by the above-entitled court, located at 255

4  East Temple Street, Los Angeles, California in Courtroom 540, plaintiff DC

5  Comics will and hereby does move the Court for an order compelling defendants

6  to:  (1) provide DC full and complete responses to Interrogatory Nos. 9, 13, 14, 17,

7  18, and 25, and (2) provide a log identifying all documents defendants or their

8  counsel provided to the U.S. Attorney's Office, including but not limited to the

9  "copies of the Toberoff Timeline and the Stolen Documents" provided on

10  September 27, 2010.

11          This motion is made pursuant to Rules 26, 33, and 37 of the Federal Rules of

12  Civil Procedure and Rule 37-2 of the Local Rules of this Court on the grounds that

13  defendants' responses fail to provide sufficient detail to respond fully to DC's

14  requests.  In addition, defendants' objections are without merit as the Court ruled in

15  September that DC may conduct discovery about the Toberoff Timeline, and

16  defendants chose to place their interactions with the government concerning the

17  Timeline squarely at issue in their pending SLAPP briefing.  Pursuant to Local Rule

18  37-1, the parties have attempted unsuccessfully to resolve their disputes and

19  therefore respectfully seek the assistance of the Court.

20          This motion is based on this Notice of Motion and Motion; the

21  accompanying Memorandum of Points and Authorities; the accompanying

22  Declaration of Daniel M. Petrocelli and exhibits in support thereof; the

23  accompanying Declaration of Matthew T. Kline and exhibits in support thereof; any

24  supplemental memoranda that may be filed pursuant to Local Rule 37; all exhibits,

25  files, and records on file in this action; matters of which judicial notice may be

26

27

28

1  taken; and such additional submissions and argument as may be presented at or

2  before the hearing on this motion.

3

4  Dated:        April 4, 2011              Respectfully Submitted,

5                                          O'MELVENY & MYERS LLP

6

7                                          By:  /s/ Daniel M. Petrocelli

8                                               Daniel M. Petrocelli
                                                Attorneys for Plaintiff DC Comics

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

III.    DC'S INTERROGATORIES, DEFENDANTS' RESPONSES, AND
        DC'S POSITIONS REGARDING THE SAME.......................................... 3

        A.      The First Group:  Interrogatories No. 9 and 25 ................................... 3

        B.      The Second Group:  Interrogatories No. 13 and 14............................ 10

        C.      The Third Group:  Interrogatories No. 17 and 18................................ 12

III.    CONCLUSION ......................................................................................... 15

        APPENDIX ................................................................................................ 16

1  **I.    INTRODUCTION**

2  　　DC hereby moves to compel complete responses to Interrogatories Number

3  9, 13-15, and 17-18 that it served on defendant Marc Toberoff.  These six

4  interrogatories seek information related to the Toberoff Timeline, its author (David

5  Michaels), and investigations the Toberoff defendants have initiated regarding the

6  Timeline and its author.  The fundamental problem with defendants' responses is

7  that they neither "include sufficient detail to respond fully," nor represent "a

8  conscientious and good faith effort to comprehend the question and to answer it

9  explicitly."  7 CLAUDIA WILKEN, MOORE'S FED. PRAC. § 33.101 (2011).

10  　　Defendants' objections to DC's interrogatories also must be overruled.  The

11  Court rightly ruled in September that DC may conduct discovery about the

12  Timeline, and defendants chose to place their interactions with the government

13  concerning the Timeline squarely at issue in their pending SLAPP briefing.  While

14  defendants assert their dealings with the government should now be shrouded in

15  privilege, the overwhelming weight of case law rejects their position.

16  　　None of defendants' objections has merit:

17  　　• Defendants have not identified any authority to assert a "joint interest"

18  　　　with the government that would shield the communications at issue here.

19  　　　Nor have defendants produced any document reflecting their alleged

20  　　　"agreement" creating this asserted privileged relationship, even though it

21  　　　is their burden to do so.  Defendants' sweeping claims of attorney-client

22  　　　privilege and work-product are also off the mark.  Defendants have

23  　　　provided no explanation or foundation to test the basis for these

24  　　　objections.  *E.g. U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).

25  　　• Defendants also object to DC's interrogatories to the extent they seek

26  　　　"any trade secret or other confidential or proprietary information" or

27  　　　information "protected from disclosure by court order, or any privacy or

28  　　　similar rights."  Defendants make no effort to identify the information—*if*

*any*—that they assert is protected, let alone any basis to test such claims. Such opaque and conclusory claims of confidentiality are inadequate. *E.g., Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 683 (C.D. Cal. 2009).

- Defendants have made no specific showing why DC's interrogatories are "overbroad and unduly burdensome."  Such "general or boilerplate objections … are improper" and should be overruled.  *A. Farber & Partners, inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).  So, too, should defendants' blanket "vagueness" and "ambiguity" objections, which provide no explanation why DC's requests are infirm.  *E.g., Marchland v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994).

- Despite objecting to every interrogatory on relevance grounds, defendants do not explain why any specific request is irrelevant.  Such boilerplate objections amount to no objection at all.  *E.g., Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999).

- There can be no dispute that evidence about the Timeline and defendants' efforts to silence its author is relevant.  DC's First and Third through Sixth Claims all implicate facts, documents, and circumstances described in the Timeline—as well as the many events and documents the Timeline describes and encloses.  Defendants' efforts to silence the Timeline's author are probative of DC's claims and defendants' intent and credibility, and DC is entitled to know what defendants said to the government about the Timeline, its author, and this case—as well as what documents defendants shared with the government.  This evidence is relevant to DC's claim that defendants' waived any applicable privileges by selectively disclosing this information to a third party.

## II.    DC'S INTERROGATORIES, DEFENDANTS' RESPONSES, AND DC'S POSITIONS REGARDING THE SAME

To avoid repletion, DC divides into three groups the six interrogatories for which DC seeks to compel further answers.  Consistent with the Court's Local Rules, DC includes defendants' response before turning to the next group. Defendants repeat the same general objections to DC's interrogatories as they do to DC's requests for production of documents.  Those boilerplate objections fail for the reasons stated above and in DC's contemporaneously filed motion to compel concerning defendants' document production and privilege logs.  To avoid duplication, DC will not repeat those arguments below.

### A.    The First Group:  Interrogatories No. 9 and 25

**Interrogatory No. 9**

DESCRIBE[1] in detail any and all COMMUNICATIONS between YOU and any law enforcement official, including anyone employed by the United States Attorney's Office for the Central District of California and/or the Federal Bureau of Investigation, regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

**Response to Interrogatory No. 9**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action.  Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

---

[1] The definitions for all of the capitalized terms appearing in this motion can be found in Appendix A, *infra*.

- In or about November 2007: Toberoff met with Stanley Ornellas, of the Los Angeles FBI Field Office, regarding the Stolen Documents.
- Summer-Fall 2010: Toberoff held a telephone conference with Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorney's Office, and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office regarding the Stolen Documents, followed by an in-person meeting with Mr. Kim and others of the U.S. Attorneys' Office. David Michaels was disclosed as suspected of having stolen the Stolen Documents and thereafter furnishing attorney-client privileged information to Warner Bros.
- September 9, 2010: Grand Jury Subpoena served on Toberoff requesting copies of the Timeline and Stolen Documents.
- September 27, 2010: Timeline and Stolen Documents provided to U.S. Attorneys Office by Kendall, Brill & Klieger pursuant to Grand Jury Subpoena, subject to an express agreement by the U.S. Attorney's Office that the U.S. Attorney's Office would hold such material as confidential and privileged, that such provision was made in furtherance of a common interest privilege, and that such provision was without waiver of the attorney-client privilege or attorney work product doctrine.

**Interrogatory No. 25**

DESCRIBE in detail any and all COMMUNICATIONS YOU have had with any PERSON other than a party to the above-entitled action RELATED to the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

**Response to Interrogatory No. 25**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and

DC COMICS' MOTION TO COMPEL

without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

Toberoff has had communications with his attorneys in this action at Kendall, Brill & Klieger and with the attorneys at Toberoff & Associates P.C. as well as communications with Stanley Ornellas at the FBI, Beong-soo Kim, Deputy Chief of the Major Frauds section at the U.S. Attorney's Office, and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office as set forth in Responses Nos. 5, 9 and 13.

### 1. *DC's Position On Interrogatories No. 9 and 25*

Both the Toberoff Timeline, and the many facts and documents it discloses are relevant to DC's claims for relief in this case (save for the second claim, which focuses on the scope of the Shuster heirs' copyright termination notice).  Compl. at ¶¶ 1-11, 58-91, 102-04, 129-133, 165-189; Docket Nos. 61 at 5-6, 36-37, 40-45; 181 at 1, 3-8, 12-18, 22-25; 182 at ¶¶ 41-47; 184 at 1-2, 4-13; 185 at 1-5, 11-14; 186 at 3-4, 17-20.  Defendants sought to prevent DC from using the Timeline in this case, but the Magistrate denied that motion, and the District Court has not ruled on defendants' objections to that ruling—meaning the Magistrate's ruling controls. Docket Nos. 74 at 1; 95 at 56:9-10 ("[DC] may conduct discovery about [the Timeline]."); 118 at 1-4.

In addition to moving to bar DC's use of the Timeline, defendants have tried to cast doubt on the document or silence its author, David Michaels, by encouraging the local U.S. Attorney's office to investigate him.  *See* Joint Stip. Re DC Comics' Mot. To Compel The Production Of Documents & Amended Privilege Logs From The Toberoff Defs. at 1-2, 4-6 (filed herewith) ("DC's Doc. Mot.").

DC is entitled to discover information regarding defendants' interactions with the government as they relate to the Timeline, Michaels, and this case.  *See, e.g., U.S. v. Thomas*, 86 F.3d 647, 654 (7th Cir.1996) ("[T]hreat evidence can be relevant to explain a witness' inconsistent statements, delays in testifying, or even courtroom demeanor indicating intimidation.").  Indeed, defendants put the

investigation activities of the U.S. Attorney's office directly at issue by way of Toberoff's October 2010 declaration in support of defendants' pending SLAPP motion:

> The theft of privileged documents from my law offices and their transmittal with an anonymous cover letter, entitled the "Toberoff Timeline," to DC's in-house legal team, as well as to other executives of DC's parent company, Warner Bros., by a former junior attorney at my firm, is the subject of an ongoing grand jury investigation initiated by the United States Attorney for the Central District of California.

Docket No. 99-1 ¶ 14. As both federal and state law make clear, DC is entitled to discovery to oppose defendants' SLAPP motion—and this includes discovery relating to the Timeline and defendants' efforts to silence Michaels. *E.g., Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); Docket No. 92 at 8-11; *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1100 (N.D. Cal. 2003); *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 868 (1995); CAL. CIV. PROC. CODE § 425.16(g); Docket Nos. 181 at 1-2, 9-11; 182 at 1-2.

Interrogatories Number 9 and 25 ask defendants to "DESCRIBE in detail" their communications with the government and others regarding the Timeline and its author. Defendants' barebones answers do not "set forth fully and in detail all factual information and data that are in any way RELATED to the subject matter," as required. *Infra* Appendix A at 17.

Defendants' response to Interrogatory No. 9 generally describes Toberoff's and his counsel's communications with the FBI and U.S. Attorney's office over the course of years, but the cursory description omits exact dates of their contacts, fails to differentiate between separate communications within any given period of time, and only gives the barest indication of the substance of those communications—if any. *Cf. Nickerman v. Remco Hydraulics, Inc.*, 2007 WL 3407437, at *3 (N.D. Cal. Nov. 13, 2007) (interrogatory responses deficient because they lacked "basic, specific details such as dates and the names of [defendant's] employees").

1    Defendants' privilege logs reveal that, between July 27 and October 21, 2010,

2    Toberoff and his lawyers exchanged at least 13 communications with U.S.

3    Attorney's office—and these are just the *written* communications the parties had.

4    *Id.* I at 408-417 (Entries 3130, 3147-51, 3158-3161, 3217, 3228 and 3284).

5    Nowhere in Toberoff's interrogatory responses are these communications identified

6    or described.  Nor do defendants describe the contents of the telephone and in-

7    person meetings they had with the government, or the contents of the meeting that

8    Toberoff said he had with the FBI.  *See supra* at 5-6.

9         Defendants' failure to provide forthright responses is a clear violation of

10   DC's rights.  *E.g.*, FED. R. CIV. P. 33(b)(3) (responding party required to "fully"

11   respond to interrogatories); 7 CLAUDIA WILKEN, MOORE'S FED. PRAC. § 33.101

12   (2011) (same).  *Kob v. Cnty. of Marin*, 2009 WL 3706820, at *5 (N.D. Cal. Nov. 3,

13   2009) ("The Court should treat an evasive or incomplete answer as a failure to

14   comply with a discovery request."); FED. R. CIV. P. 37(a)(4).  To take just a few

15   examples:

16   •    DC is entitled to know what documents defendants shared with the

17        government, as defendants' selective disclosure of certain documents may

18        have waived otherwise applicable privileges.  This waiver issue is a key

19        part of DC's concurrent motion to compel, *see* DC's Doc. Mot. at 6-10,

20        and DC is entitled to discovery in aid of that motion, FED. R. CIV. P.

21        26(b)(1) ("Relevant information need not be admissible at the trial if the

22        discovery appears reasonably calculated to lead to the discovery of

23        admissible evidence.").  Moreover, no one disputes that many of the

24        documents that defendants shared with the U.S. Attorney's office are

25        relevant to the claims and issues in this case.  Many of these underlying

26        documents are cited as proof in the Timeline of Toberoff's acts of fraud

27        and interference.  Docket Nos. 61 at 5-6, 36-37, 40-45; 181 at 1, 3-8, 12-

28

18, 22-25; 182 at ¶¶ 41-47; 184 at 1-2, 4-13; 185 at 1-5, 11-14; 186 at 3-4, 17-20; *see also* DC's Doc. Mot. at 1-2.

- Defendants have also argued to the District Court that the Timeline document should not be trusted.  *E.g.*, Docket Nos. 75 at 11-12; 77 at 8.  And they now assert its author is under federal investigation.  Docket No. 99-1 at ¶¶ 14-15.  Given defendants' assertions, DC is entitled to full information about that investigation, including everything defendants said to the government to initiate it and their ensuing communications regarding its status.  Such information is discoverable and relevant.  *See* DC's Doc. Mot. at 4-12.

- Defendants also assert that they reached an "express agreement" with the U.S. Attorney's office concerning the confidentiality of their communications.  *See* DC's Doc. Mot. at 4.  DC disputes this claim, *see id.* at 5-12, and it is entitled to know the precise contents of any such agreement, as well as any communications to the contrary, so that this claim of privilege can be tested.  *Martin*, 278 F.3d at 999 (party asserting privilege bears the burden of proving every element of the test); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302 (6th Cir. 2002).

Defendants' response to Interrogatory No. 25 is likewise deficient.  The request asks Toberoff to describe "in detail" all communications he or his representatives or lawyers had with any non-party to this case regarding the Timeline or Michaels.[2]  Toberoff's response is restricted to communications with his counsel, the FBI, and the U.S. Attorney's office—no description is provided as to what Toberoff or his lawyers communicated to the government.  Defendants also

---

[2] *Supra* at 4-5; *infra* Appendix A at 17 (defining "YOU" and YOUR to "mean[] Marc Toberoff and, as applicable, any PERSON in which he has a controlling ownership interest or that is acting on his behalf, including but not limited to his/their agents, employees, attorneys, and representatives.").

DC COMICS' MOTION TO COMPEL

have excluded from their answer, communications with *other parties*.  Based on
Toberoff's privilege logs, it appears he hired the McNally Security Group this past
summer to investigate Michaels.  *E.g.*, Petrocelli Decl. Ex. I at 406-410 (Entries
3089-3092, 3096-3101, 3108-3110, 3162-3164.)  Moreover, Toberoff and his
counsel have spoken to the media and others, including in the entertainment
industry, regarding the Timeline.  *E.g.*, *id*. Exs. B, C.  Defendants should disclose
the contents of those communications.

There is no basis for Toberoff to shield this information from discovery on
grounds of "the attorney-client privilege, the attorney work product doctrine and
any other privilege or immunity available under law or arising from contractual
obligation." *Supra* at 7-8.  Defendants provide no explanation, proof, or other
means to ascertain the bases for such sweeping claims.  *Cf. Martin*, 278 F.3d at 999
(party asserting the privilege bears the burden of proving every element).  Toberoff
has submitted no evidence that his communications with the government, the press,
or even a private security team relate to the provision of legal advice, or that the
communications were reasonably or appropriately intended to remain confidential.
*See id.*  Toberoff can make no such claims as to the press, and as DC has addressed
in its concurrently filed motion, defendants cannot shield their communications
with the government on these grounds.  *See* DC's Doc. Mot. at 6-11; *U.S. v. Jacobs*,
117 F.3d 82, 91 (2d Cir. 1991); *U.S. v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006);
*McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229 (2004);  *Weil v.
Inv./Indicators Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has
been widely held that voluntary disclosure of the content of a privileged attorney
client communication constitutes waiver of the privilege as to all other such
communications on the same subject.").

DC COMICS' MOTION TO COMPEL

**B.    The Second Group:  Interrogatories No. 13 and 14**

**Interrogatory No. 13**

DESCRIBE in detail who, to the best of YOUR knowledge, has participated in the ALLEGED GRAND JURY INVESTIGATION, including any PERSON who has testified or been interviewed in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 13**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action.  Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

Other than statements made by Toberoff to Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorneys' Office and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office, Toberoff is not aware of any other testimony or formal statements by any individuals or entities made as part of the ongoing grand jury investigation.

**Interrogatory No. 14**

DESCRIBE in detail, to the best of YOUR knowledge, the substance of any testimony or statements made in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 14**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action.  Toberoff additionally objects to this interrogatory to the extent that it seeks

DC COMICS' MOTION TO COMPEL

communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows: see Response to Interrogatory No. 13.

### 1. DC's Position On Interrogatories No. 13 and 14

Toberoff's response to Interrogatory Number 13 is deficient. He rewrites the question to say that other than the statements he made to two lawyers at the U.S. Attorney's office, he "is not aware of any other testimony or *formal statements* by any individuals or entities made as part of the ongoing grand jury investigation." *Supra* at 10 (emphasis added). DC's request was not limited to those who made "formal statements," but seeks the identity of anyone who has been "*interviewed in connection with* the ALLEGED GRAND JURY INVESTIGATION"—to the best of Toberoff's or his representatives' knowledge. *Id.* (emphasis added).

The response to Interrogatory Number 14 not only runs afoul of FED. R. CIV. P. 33(b)(3)—by merely pointing DC to Interrogatory 13—it completely avoids providing the requested information. Interrogatory Number 14 seeks a detailed description of the *substance* of any testimony or statements made in connection with the grand jury investigation. *Supra* at 10. Toberoff stated under oath that he provided testimony or formal statements as part of the ongoing grand jury investigation. *Supra* at 10 (Response to Interrogatory No. 13: "Other than statements made by Toberoff to [the U.S. Attorney's Office], Toberoff is not aware of any other testimony or formal statements by any individuals or entities made as part of the ongoing grand jury investigation."). DC is entitled to discover the substance of that *testimony* from Toberoff to the extent it was provided to the grand jury. Fed. R. Crim. P. 6(e)(2)(B); *In re Vescovo Special Grand Jury*, 473 F. Supp. 1335 (C.D. Cal. 1979) ("[N]o obligation of secrecy may be imposed on grand jury witnesses. Witnesses may be interviewed after their appearance and repeat what

they said before the grand jury or relate any knowledge they have on the subject of the inquiry." (citations omitted)).  In addition, as explained at the outset of this motion, *see supra* at 5-6, and in DC's concurrently filed motion, DC's Doc. Mot. at 4-12, defendants are entitled to know the contents of the *statements* Toberoff and his representatives made to the government.  Again, there is no "*formal*" statements limitation on this request—as much as defendants would like to read in one.  A response is "evasive"—and therefore equivalent to a failure to respond—FED. R. CIV. P. 37(a)(4), if it "simply fail[s] to address the central aspects of a question," 7 WAYNE D. BRAZIL, MOORE'S FED. PRAC. § 37.03 (2011).  Toberoff's response to Interrogatories Number 13 and 14 fail this test.  Finally, as with defendants' objections to DC's other Interrogatories, their relevance and privilege objections to these questions should be overruled, for the reasons stated *supra* at 5-9.

### C.    The Third Group:  Interrogatories No. 17 and 18
**Interrogatory No. 17**

IDENTIFY any DOCUMENTS provided by YOU in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 17**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action.  Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:  None.

**Interrogatory No. 18**

IDENTIFY any DOCUMENTS, to the best of YOUR knowledge, provided by any other PERSON in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 18**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

The Kendall, Brill & Klieger firm provided copies of the Toberoff Timeline and the Stolen Documents to the U.S. Attorney's Office on September 27, 2010 pursuant to a Grand Jury Subpoena dated September 13, 2010, subject to an express agreement by the U.S. Attorney's Office that the U.S. Attorney's Office would hold such material as confidential and privileged, that such provision was made in furtherance of a common interest privilege, and that such provision was without waiver of the attorney-client privilege or attorney work product doctrine.

### *1. DC's Position On Interrogatories No. 17 and 18*

DC's concurrently filed motion addresses its right to obtain all the documents defendants have provided to, exchanged with, and received from the government related to the Timeline, its author, and/or the alleged pending grand jury investigation. *See* DC's Doc. Mot. at 4-12. DC's arguments for receiving full and complete responses to Interrogatories Number 17 and 18—and overcoming defendants' various objections—are set forth in that motion. *See id.*

Two additional points are worth raising here. *First*, defendants should be compelled to clarify their answer to Interrogatory Number 17. Is it really their position that Toberoff and his representatives (*i.e.*, the "YOU" in the question) have not received *any* documents from the government or otherwise in connection with the alleged grand jury investigation? With all the objections defendants assert to

DC COMICS' MOTION TO COMPEL

this interrogatory, it is hard to tell the answer to this question—and one can only guess at what the "without limitation" qualifier means.

*Second*, Toberoff responds to Interrogatory Number 18 by stating that "[t]he Kendall, Brill & Klieger firm provided copies of the Toberoff Timeline and the Stolen Documents to the U.S. Attorney's Office on September 27, 2010…." *Supra* at 13. DC wants and is entitled to all of those documents, *see* DC's Doc. Mot. at 4-12, but Interrogatory Number 18 is not limited to documents defendants shared with the government in response to that subpoena. Is it really defendants' position that they provided the government with *no other* documents—including as a part of their meetings or in connection with the, at least, 12 emails they exchanged? *Supra* at 12. Again, the "without limitation" qualifier begs the question. If defendants provided additional documents to the government—either by hand, via mail, as email attachments, or by any other means—DC is entitled to know what those documents are, or, at least, must be provided with a privilege log—which defendants have failed to produce. Such a privilege log is necessary to test claims of privilege, and to make a request for an *in camera* review. *Martin*, 278 F.3d at 1000 (A party asserting privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (party may be required to provide "a line-by-line justification for assertion of the attorney-client privilege"); *Ramirez v. Cnty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("The party who withholds discovery materials must provide sufficient information (i.e., a privilege log) to enable the other party to evaluate the applicability of the privilege or protection. Failure to provide sufficient information may constitute a waiver of the privilege.").

If, on the other hand, defendants provided the government with *no* documents other than "the Toberoff Timeline and the Stolen Documents," then

DC COMICS' MOTION TO COMPEL

1  defendants must be compelled to make that fact plain.  Either way, DC is entitled to

2  a clear, complete answer.

3  **III.    CONCLUSION**

4       DC's motion should be granted, and the Court should overrule Toberoff's

5  objections and compel Toberoff to provide to DC, by no later than May 2, 2011,

6  full and complete responses to the six interrogatories addressed above.

7

8  Dated:       April 4, 2011            Respectfully Submitted,

9                         O'MELVENY & MYERS LLP

10

11                         By:  /s/ Daniel M. Petrocelli

12                           Daniel M. Petrocelli
                         Attorneys for Plaintiff DC Comics

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX 1

**A.  Definitions in Plaintiff DC Comics' First Set Of Interrogatories To Defendant Marc Toberoff:**

"DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to:  e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

"COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

"REFER" or "RELATE" (or any conjugation thereof) means, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or comment upon.

"OBTAIN" (or any conjugation thereof) means, without limitation, acquire, attain, capture, come by, gain, garner, get, procure, or secure.

"PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

"IDENTIFY" means the following:

        a.     When used in reference to a PERSON, it means to state the person's full name, present or last known address, and present or last known business affiliation and business address;

        b.     When used in reference to an organization, it means to state the organization's full name and, if it is a

DC COMICS' MOTION TO COMPEL

corporation, partnership, or other business entity, the address of its principal place of business;

    c.    When used in reference to a DOCUMENT, it means to state, to the extent known, the DOCUMENT'S (i) type (*i.e.* letter, memo, note, e-mail); (ii) subject matter; (iii) current location; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

    d.    When used in reference to a COMMUNICATION, it means to state, to the extent known, the COMMUNICATION'S (i) date; (ii) type (*i.e.* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

"DESCRIBE" means to set forth fully and in detail all factual information and data that are in any way RELATED to the subject matter of the particular request seeking such statement or description.

"YOU" or "YOUR" means Marc Toberoff and, as applicable, any PERSON acting on his behalf, including but not limited to his agents, employees, attorneys, and representatives.

"TOBEROFF TIMELINE" means the undated DOCUMENT titled "Superman – Marc Toberoff Timeline," attached as Exhibit A to the First Amended Complaint filed by plaintiff DC Comics on September 3, 2010 in the above-entitled action.

"TOBEROFF TIMELINE AUTHOR" means any PERSON or PERSONS who YOU believe was involved in creating, writing, or transmitting the TOBEROFF TIMELINE, and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

"MARCH 2009 DECLARATION" means the "Declaration of Marc Toberoff in Opposition to Defendants' Motion to Reopen Discovery, to

    

Compel Production of Documents, and to Compel the Further Deposition of

Kevin Marks," which YOU filed in *Siegel v. Warner Bros. Entm't Inc.*, Case

No. CV-04-8400 (Docket No. 477), on March 2, 2009.

"ALLEGED INTERNAL INVESTIGATION" means the

"investigation" REFERRED to in paragraphs 33 and 34 of the MARCH 2009

DECLARATION, which state:

> My law firm's investigation has revealed that the Stolen
> Documents were secretly copied and stolen from my law firm's
> files by a disgruntled attorney employed by the firm who
> thereafter furnished the documents to Warner Bros.   The
> attorney worked at my firm for less than three months, without
> any problem or incident, and then one day disappeared on his
> lunch break in November without notice.  The attorney did not
> return any of the firm's subsequent telephone messages or e-
> mails.

> Our investigation has revealed that in late November and
> early December, 2005, he contacted Plaintiffs and another client
> of my firm and tried to convince them to terminate the firm, and
> to retain him instead, by disparaging me and by offering to
> work for a reduced fee.  I am advised by Plaintiffs and my other
> client that they both rejected this attorney's overtures in early
> December, 2005.

"OCTOBER 2010 DECLARATION" means the "Declaration of Marc

Toberoff in Further Support of Defendants' Motion to Strike Under

California's Anti-SLAPP Statute," which YOU filed in the above-entitled

case (Docket No. 99-1) on October 4, 2010.

"ALLEGED GRAND JURY INVESTIGATION" means the "ongoing

grand jury investigation" REFERRED to in paragraph 14 of the OCTOBER

2010 DECLARATION, which states:

> The theft of privileged documents from my law offices
> and their transmittal with an anonymous cover letter, entitled the
> "Toberoff Timeline," to DC's in-house legal team, as well as to
> other executives of DC's parent company, Warner Bros., by a
> former junior attorney at my firm, is the subject of an ongoing
> grand jury investigation initiated by the United States Attorney
> for the Central District of California.

CC1:846840

- 18 -                    DC COMICS' MOTION TO COMPEL