# EXHIBIT J

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California 90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

February 4, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL & U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Nicholas Williamson
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, **CV-10-3633 (ODW) (RZx)**

Dear Counsel:

We are in receipt of your January 24, 2011, e-mail attaching the Toberoff Defendants' (Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, and Marc Toberoff's) responses and objections to DC Comics' requests for production served on December 10, 2010, as well as defendants Laura Siegel Larson, Mark Warren Peary, and Marc Toberoff's responses to DC's first set of interrogatories served the same date. Pursuant to Local Rule 37-1, we request a conference to discuss these discovery responses. Please let us know when you are available next week, and we could meet after our meeting in the Siegel case on Tuesday, if that works for you.

As to the substance of defendants' discovery responses, we remain deeply concerned about defendants' ongoing refusal to provide meaningful discovery. When we agreed to extend defendants' time to respond to these discovery requests—from January 10 to January 24—we did so on the *express condition* that DC "expect[ed] to receive substantive responses and not just blanket objections" from defendants. The document discovery defendants served—which only includes a *single* new document—are grossly deficient, as are defendants' privilege logs and interrogatory responses. Indeed, many of the objections defendants assert openly defy rulings of the Magistrate, District Court, and the Ninth Circuit. Many of the objections are ones defendants chose not to defend the last time DC was forced to file a motion to compel. This approach to discovery will not be countenanced, and DC will seek its fees and costs to enforce its discovery requests if this practice continues.

**I.   PRIVILEGE LOGS**

Turning to the specifics of defendants' responses, this letter is not meant to be a comprehensive recitation of all the deficiencies at issue in defendants' responses, and DC reserves all rights. Moreover, many of the problems we have with the Toberoff Defendants'

O'MELVENY & MYERS LLP

February 4, 2011 - Page 2

privilege logs are set forth in DC's December 20, December 29, and January 5 letters concerning similar deficiencies in the Siegel and Shuster logs. Those letters are incorporated herein by reference, as is DC's motion to compel served Friday, January 28, addressing the Shuster and Siegel logs. Among other shortcomings:

- The Toberoff Defendants have omitted essential identifying information from their logs—including the subject matter of the documents and who authored, sent, or is cc'd on the communications at issue, preventing DC and the Court from making a proper evaluation of the propriety of claims of privilege. *See, e.g., In re CV Therapeutics, Inc.*, 2006 WL 1699536, at *2 (N.D. Cal. June 16, 2006) (privilege log must include subject matter of each document); *Helm v. Alderwoods Grp., Inc.*, 2010 WL 2951871, at *1-2 (N.D. Cal. July 27, 2010) ("[W]ithout the names of the author(s) and recipient(s) of each document, [party] cannot determine whether the attorney-client privilege applies.").

- Defendants' logs fail to make plain whether the document identified is one communication or part of a chain, or when each received a document in a chain of correspondence and how. A log should identify the "[p]rimary addressee; [s]econdary addressee(s); persons copied and recipient (and relationship of that person(s) to the client and/or author of the document)." *Miller v. Pancuccci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992). Such specificity is particularly important due to the relationships and agreements between and among the Siegels, the Shusters, Toberoff the businessman, and Toberoff the attorney.

- Defendants cannot shield from discovery documents reflecting Mr. Toberoff's private commercial, business activities as an "entrepreneur," movie "producer," "rights hunter," and/or businessman. *See U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Defendants' privilege log blurs the distinctions between Mr. Toberoff's various roles and prevent DC from challenging defendants' privilege calls.

Additionally, there are inconsistencies between the Siegel log and Toberoff log regarding Siegel communications withheld on privilege grounds. The following chart lists the discrepancies DC has identified to date, and DC reserves the right to supplement it going forward:

| Date | Toberoff Log Entries | Siegel Log Entries |
| --- | --- | --- |
| 7/20/06 | 1187-91 (5 entries) | 1159-60 (2 entries) |
| 7/25/06 | 1195-1206 (12 entries) | 1164-67 (4 entries) |
| 3/20/07 | 1779-81 (3 entries) | 1738 (1 entry) |
| 3/21/07 | 1782-85 (4 entries) | 1739-41 (3 entries) |

O'MELVENY & MYERS LLP
February 4, 2011 - Page 3

| | | |
|---|---|---|
| 3/22/07 | 1786-92 (7 entries) | 1742-44 (3 entries) |
| 4/17/08 | 2185-93 (9 entries) | 2120-26 (7 entries) |
| 5/15/10 | 3021 (1 entry) | No entry |
| 5/25/10 | 3035-42 (8 entries) | 2958 (1 entry) |
| 5/26/10 | 3043-56 (14 entries) | 2959-60 (2 entries) |
| 5/27/10 | 3057-61 (5 entries) | 2961 (1 entry) |
| 6/1/10 | 3064-65 (2 entries) | 2963 (1 entry) |
| 6/2/10 | 3066-73 (8 entries) | No entry |
| 7/12/10 | 3105-07 (3 entries) | No entry |
| 7/19/10 | 3114 (1 entry) | No entry |
| 9/14/10 | 3219-20 (2 entries) | 3076 (1 entry) |
| 9/15/10 | 3221-27 (7 entries) | No entry |
| 11/11/10 | 3308-19 (12 entries) | 3155-62 (8 entries) |
| 12/2/10 | 3362-64 (3 entries) | 3205 (1 entry) |

DC requests an immediate explanation for these discrepancies.

## II.     REQUESTS FOR PRODUCTION

Defendants' responses and objections to the requests for production are similarly deficient. To take several examples:

### A.     General, Non-Specific Objections

Boilerplate General Objections. The boilerplate objections in the general objections section of the Toberoff Defendants' responses are "inadequate and tantamount to not making any objection at all." *E.g.*, *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). For example, the Toberoff Defendants generally object to producing documents:

- "comprising or reflecting any trade secret or other confidential or proprietary information," or

EXHIBIT J
474

O'MELVENY & MYERS LLP
February 4, 2011 - Page 4

- "to the extent that it is unduly burdensome, overly broad, impose extreme hardships, is oppressive and harassing, or would result in expenditure of unnecessary time and resources."

M. Toberoff Response ¶¶ 3-4, 6, 8. These non-specific objections are meaningless. *See* Docket No. 125 at 22-27. Defendants are obligated to identify the specific privilege and basis for its assertion. Defendants have made no effort to identify the particular information, if any, claimed to be protected—let alone to establish why such information is entitled to be protected. *E.g., Martin*, 278 F.3d at 1000; *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 683 (C.D. Cal. 2009). Nor have defendants made any showing as to why the discovery requests are burdensome, overly broad, or otherwise objectionable. *E.g., Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 279 (C.D. Cal. 2009) (rejecting "unexplained and unsupported boilerplate objections" that requests were "overbroad," "burdensome," and "harassing").

Offer to Meet & Confer. The Toberoff Defendants cannot unilaterally restrict the scope of DC's discovery by raising unfounded objections and offering to "meet and confer with [DC] regarding the tailoring of this request."[1] Defendants are obligated to produce all responsive, unprivileged documents relevant to DC's claims. DC demands that defendants identify what documents, if any, are being withheld on this basis, and to immediately produce them.

"Other" Protections. Defendants object to almost every document request on the ground of "any other privilege or immunity available under law or arising from contractual obligation."[2] This is a specious objection. What "other privilege" or "immunity" are defendants invoking? What "law" or "contractual obligation" are defendants asserting? DC demands that defendants identify what documents, if any, are being withheld on this basis. Furthermore, DC demands that defendants identify what "other privilege" or "immunity" they are claiming, or agree that these objections are waived.

Defendants' "Understanding" of DC's Requests. When the Toberoff Defendants have agreed to produce responsive documents, they have qualified their agreement on producing documents "consistent with [their] understanding of this request."[3] There is no basis for such a qualified response. Defendants are obligated to produce all responsive, unprivileged documents, and cannot "interpret" DC's requests in a manner that shields otherwise discoverable documents. DC demands that defendants identify what documents, if any, are being withheld on this basis, and to immediately produce them.

B. SLAPP

The Toberoff Defendants' assertion that discovery is stayed as to DC's Third through Sixth claims during the pendency of their anti-SLAPP motion was considered and decisively

---

[1] *E.g.,* M. Toberoff Responses to RFP Nos. 5, 9, 12-15, 18, 27-29, 32, 35-38, 40-44, 46, 48, 52-54, 56-58.
[2] *E.g.,* M. Toberoff Responses to RFP Nos. 1-23, 26-54, 56-60.
[3] *E.g.,* M. Toberoff Responses to RFP Nos. 1-4, 10-11, 16-17, 19, 22, 26, 34, 39, 59-60.

O'MELVENY & MYERS LLP
February 4, 2011 - Page 5

rejected by the Magistrate when he ruled that "[i]n the Court's view, the California anti-SLAP [*sic*] statute does not govern these federal proceedings and impose an automatic stay." Docket No. 95 at 57:3-5. As the Magistrate also made clear, "there's nothing that prevents [DC] from commencing discovery." *Id.* at 56:23-25. Despite defendants' objections, the Court has never modified or overruled the Magistrate's rulings. Defendants made these same SLAPP arguments in opposing DC's motion to modify the Court's October 15, 2010, stay order and in applying *ex parte* for the reinstatement of their Rule 12 and SLAPP motions. Docket Nos. 112 at 8-11; 119 at 3-7. The Court considered and rejected these arguments and authorized DC to take full discovery as to its federal *and* state law claims. Docket Nos. 117, 124. The Ninth Circuit rejected these arguments as well. *E.g.,* Appeal No. 10-73851, Docket No. 13.

Defendants' refusal to participate in discovery during the pendency of their SLAPP motion is open defiance of the Court's orders, and DC will seek all available relief, including fees and costs. Please confirm whether defendants will withdraw this objection forthwith.

### C. DC's Repeated Requests

<u>Consent Agreements and Related Documents</u>. Defendants have once again refused to produce their consent agreements—which defendants now choose to label "Collective Bargaining Agreements"— and related documents. Such a position is without basis. As DC made clear in its prior briefing and correspondence, neither federal nor California state law allows defendants to shield these materials from discovery by springing them on DC during mediation. Nor is such protection afforded by the parties' JAMS Confidentiality Agreement. *See* Docket Nos. 90 at 1, 16-24; 125 at 12-18. In addition, the Toberoff Defendants' log continues to obscure what other withheld documents are related to the consent agreements. DC raised this issue in December, when addressing the Siegel and Shuster logs. Defendants conceded that their logs include communications related to the consent agreements that DC cannot identify based on the skeletal information contained in the logs. Nonetheless, defendants have declined to modify their logs to address this simple issue. These tactics waste time and resources and needlessly require intervention of the Court.

<u>Retainer Agreements and Related Documents</u>. The same is true of defendants' retainer agreements: (1) defendants refuse to produce these clearly discoverable materials or redacted versions of the same; (2) defendants' logs obscure which withheld documents relate to the retainer agreements; and (3) after DC raised these issues to defendants in December, defendants chose not to remedy their deficient discovery responses. DC requested and is entitled to discover Mr. Toberoff's retainer agreements with the Siegel and Shuster heirs, as well as any agreements he may have had or may currently have with any of his entertainment companies (Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC). Defendants are obligated to produce these agreements and related documents, or confirm in verified responses that none exists and never existed. *See In re Grand Jury Proceedings*, 33 F.3d 1060, 1063-64 (9th Cir. 1994) (retainer agreements not privileged); *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements.").

O'MELVENY & MYERS LLP
February 4, 2011 - Page 6

<u>Michael Siegel Communications</u>.  As DC has explained, there is no basis for asserting attorney-client privilege or work-product protection for documents involving Michael Siegel and/or Don Bulson.  Defendants' claims that documents are privileged under the joint defense or common-interest privilege are erroneous and were rejected by the U.S. District Court in Ohio.  *In re: Subpoena Duces Tecum*, Docket No. 15, U.S. District Court Northern District of Ohio, Case No. 1:06 MC 99.

<u>Dennis Larson Communications</u>.  Defendants still refuse to produce or log communications involving Dennis Larson after his separation and subsequent divorce from Laura Siegel Larson in 2000.

### D. Communications with U.S. Attorney's Office

There is no basis for the Toberoff Defendants to shield communications or documents concerning the purported investigation by the U.S. Attorney's Office regarding the Toberoff Timeline and its author on grounds of attorney-client privilege, work-product protection, and/or joint interest.[4]  To the contrary, disclosure to the government waives any attorney-client privilege or work-product protections.  *See, e.g., U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997); *In re Steinhardt Partners L.P.*, 9 F.3d 230 (2d Cir. 1993); *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1370-72 (D.C. Cir. 1984).  Defendants cannot selectively waive privilege when it suits their needs by disclosing documents to the government while maintaining that the documents remain privileged as to DC.  *See U.S. v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006); *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229 (2004).  This applies to all communications by defendants and their counsel with the U.S. Attorney's Office, including the Toberoff Timeline and related documents, which defendants improperly refuse to produce.

Defendants do not—and cannot—identify any authority to assert a "joint interest" with the government.[5]  Nor have defendants produced any document reflecting an "express agreement" with the government that their disclosures would not effect a waiver of privilege, assuming any otherwise applied to the documents at issue.  Defendants must produce any such agreement, if it exists, so that DC may assess its validity.

### E. Toberoff-Related Business Entities

Defendants did not produce any documents involving the various Toberoff-related business entities, including Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC.  This defies common sense.  Is it really defendants' position that none of these entities generated a single non-privileged document responsive to DC's requests since discovery ended in the *Siegel* cases?

---

[4] *E.g.,* M. Toberoff Responses to RFP Nos. 19, 21, 23, 26.
[5] Toberoff Defendants' Privilege Log at Entries 3130, 3147-51, 3158-64, 32283284.

O'MELVENY & MYERS LLP
February 4, 2011 - Page 7

### F. Communications with Ari Emanuel

Defendants also did not produce or log any documents involving Ari Emanuel, aside from the handful of emails from Mr. Toberoff to Paramount executives on which Mr. Emanuel was copied. Is it defendants' position they have had no written communications with him during the relevant time period?

### G. Communications With Kevin Marks

Defendants have neither produced nor logged any communications with Kevin Marks regarding his October 4, 2010 declaration. Is it defendants' position that no communications or drafts were exchanged with Mr. Marks?

### H. Communications With Third Parties Regarding Marketing the Siegels and/or Shusters' Purported Rights

Defendants have neither produced nor logged any communications with third parties regarding acquiring or exploiting the Siegel and/or Shusters' purported rights in Superman and/or Superboy. Defendants have often intimated they were marketing these purported rights to investment banks and other firms, yet no such communications were produced nor identified among defendants' logs. Do none exist?

## III. INTERROGATORIES

The Toberoff Defendants' responses to DC's first set of interrogatories are incomplete, misleading, and avoid directly responding to the question posed. For example, DC requested that defendants describe "*in detail*" the substance of communications between defendants and the U.S. Attorney's Office "regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE." M. Toberoff Interrogatory No. 11. Defendants responded, without providing any detail, that "the substance of the information provided was that described in response to Interrogatory No. 4." M. Toberoff Response to Interrogatory No. 11. As discussed *infra*, Mr. Toberoff's response to Interrogatory No. 4 only provided information known prior to the investigation defendants helped initiate. This unilateral temporal limitation that defendants have imposed is unjustified and defendants' answers are plainly non-responsive.

Similarly, DC requested that defendants describe "*in detail* any internal or external investigation … YOU participated in regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE." M. Toberoff Interrogatory No. 5 (emphasis added). Defendants responded:

- In or about November 2007: Toberoff met with Stanley Ornellas, of the Los Angeles FBI Field Office, regarding the Stolen Documents, and reported the theft.

- Summer-Fall 2010: Toberoff conferred telephonically with Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorney's Office, and Brian Klein,

O'MELVENY & MYERS LLP
February 4, 2011 - Page 8

> Assistant U.S. Attorney, U.S. Attorney's Office, followed by an in-person meeting regarding the Stolen Documents.
>
> - Fall 2010:  The U.S. Attorney's Office initiates a Grand Jury Investigation.

M. Toberoff Response to Interrogatory No. 5.  This response does not describe the communications that took place or the information that was shared, nor does it provide any detail.  Instead, defendants choose to lump together months at a time.  Similarly, DC requested that defendants identify "any and all bases for YOUR knowledge" regarding other clients contacted by Mr. Michaels.  M. Toberoff Interrogatory. No. 8.  Mr. Toberoff did not provide any basis.  M. Toberoff Response to Interrogatory No. 8.  These types of responses are tantamount to no responses, in defiance of defendants' discovery obligations.

Defendants also attempt to evade the discovery sought by DC by providing responses that do not directly respond to DC's interrogatories.  For example, DC's Interrogatory No. 4 requested that Mr. Toberoff "DESCRIBE in detail any and all information revealed by the ALLEGED INTERNAL INVESTIGATION."  Mr. Toberoff restricted his response to "information that was known prior to the investigation," and provided nothing further.  M. Toberoff Response to Interrogatory No. 4.  Mr. Toberoff described the hiring of Mr. Michaels, his brief employment with Toberoff & Associates, his subsequent contact with the Siegels, and his delivery of the Toberoff Timeline to Warner Bros.  Nothing beyond July 5, 2006 was provided—a date well before the purported investigation.  *Id.*  Mr. Toberoff provided a similarly evasive answer in response to Interrogatory No. 6, which requested information revealed by any external investigation, by simply stating "[t]he investigation is ongoing."  These artificial limitations on defendants' responses are inappropriate.

In other instances, defendants' responses are plainly insupportable.  For example, Laura Siegel Larson asserts that the only communications she had with "any PERSON RELATED to the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE" were privileged communications with her attorneys.  Larson Response to Interrogatory No. 1.  Mr. Toberoff, however, maintains that David Michaels—the purported author of the Toberoff Timeline— directly communicated with the Siegels:

> **November-December 2005:**  Michaels contacts the Siegels and attempts to "steal" these clients from Mr. Toberoff's firm by baselessly accusing Mr. Toberoff of purported unethical conduct, like allegedly charging the Siegels "unconscionable fees."  Under the guise of protecting the Siegels, Michaels visits them, falsely disparages Mr. Toberoff, and attempts to shepherd the Siegels to "a larger firm" (name unknown).  In follow-up emails, Michaels advises the Siegels to cease all communication with Mr. Toberoff, and he provides them with a termination letter to give to Toberoff & Associates, as well as a new retainer agreement for the Siegels to hire Michaels at a reduced contingency fee.  In December, 2005, the Siegels reject Michaels; attempt to take their case away from Toberoff & Associates.

O'MELVENY & MYERS LLP
February 4, 2011 - Page 9

Toberoff Response to Interrogatory No. 4. Ms. Larson clearly had more communications with Mr. Michaels than her interrogatory response conveys. Equally troubling is that the Siegels did not log these communications in their privilege log produced to DC on December 15, 2010, despite knowing of their existence at the time and that the documents were being withheld as privileged. These documents are clearly responsive to DC's requests for production of documents served on the Siegels in August 2010.[6]

Similarly, DC requested that defendants "DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official … regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE." M. Toberoff Interrogatory No. 9. Mr. Toberoff responded by identifying several communications he had with the FBI or the U.S. Attorney's Office, but he did not identify the communications withheld by the Toberoff Defendants as privileged. *See* Toberoff Privilege Log at Entries 3130, 3147-51, 3158-61. DC is entitled to know whether additional communications occurred which defendants have not disclosed.

\*   \*   \*

Absent a significant change in defendants' position, DC intends promptly to file a motion to compel.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc: Daniel M. Petrocelli, Esq.
    Marc Toberoff, Esq.
    Nicholas Daum, Esq.

CC1:843282

---

[6] Laura Siegel RFP Nos. 6-10, 12-15, 17, 23, 26.