# EXHIBIT K



writer's direct:
310.272.7922
lbrill@kbkfirm.com

February 14, 2011

**VIA E-MAIL**

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Matt:

This letter responds to your February 4, 2011 letter with respect to defendants' January 24, 2011 interrogatory responses, document production and privilege logs. We disagree with numerous factual and legal assertions in your letter, and all of defendants' rights on all of these subjects are expressly reserved.

DC's statement that it "intends promptly to file a motion to compel" is bizarre, given that DC's letter covers many identical issues as are found in DC's pending Motion to Compel the Production of Documents and Amended Privilege Logs, dated February 7, 2011 and set for hearing on February 28, 2011, and that the Magistrate specifically warned the parties not to file redundant motions. *See* Docket No. 95 at 5:20-24.

DC complains that it did not receive "substantive responses" to its interrogatories focused on the so-called Timeline when the responses provided the identity of the Timeline author, and the details of the investigation thereof. Defendants' supposedly "deficient" document production involved few documents because the complaint filed by DC in this case is largely redundant of the *Siegel* case and accordingly, most of the relevant documents were already furnished in *Siegel* in response to DC's broad requests therein. In addition, many of DC's requests were so grossly overbroad that they could not be responded to until more reasonably focused in the meet and confer process. Once DC has indicated which documents it is realistically seeking from its overbroad requests, Defendants will be able to produce responsive documents.

I.     **PRIVILEGE LOGS**

With respect to DC's complaints of so-called "inconsistencies," or differential between the Toberoff defendants' January 24, 2011 privilege log ("Toberoff Log") and the Siegel and Shuster defendants logs, the purported "inconsistencies" are simply documents that refer to the stolen documents or the Timeline author, as explained in detail in the Siegel/Shuster defendants' opposition to DC's motion to compel filed on February 7. These documents were not logged in response to DC's first set of production requests because, while overbroad, DC's first set of

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.   Suite 1725   Los Angeles, CA 90067   telephone 310.556.2700   facsimile 310.556.2705   www.kbkfirm.com

EXHIBIT K
481

Kendall Brill & Klieger LLP

February 14, 2011
Page 2

production requests directed at the Siegel and Shuster defendants did not seek these documents. Later, on December 10, 2010 , DC served a second set of requests that specifically requested documents relating to the Timeline and its author and made clear that the absence of requests as to the Timeline in DC's first set of requests was deliberate.  Defendants logged additional, Timeline-related documents both in response to DC's requests to the Toberoff Defendants and in response to DC's second set of requests which requested such documents.

As to the supposed "shortcomings" in the Toberoff Log, defendants' responses to DC's repeated arguments are as set forth in defendants' January 4 and 8, 2011 letters, and in the opposition to your February 7, 2011 motion to compel with respect to the Siegel/Shuster defendants.  There is no requirement in law that defendants' privilege logs include categories of information arbitrarily selected by DC.  However, to reiterate the prior offer, defendants are willing to agree to *your* proposal that both parties *mutually* list the subject matter of communications, with "litigation update" or "LU" used for the majority of such communications, while specifically listing logged documents relating to relevant, specified subjects, such as the "Consent Agreement" and the "Stolen Documents."  However, defendants will not accept a one-sided "subject matter" requirement in favor of DC alone, and DC refused to commit to listing in their logs the subject matter topics, such as the "Stolen Documents," that defendants were concerned with.

On this issue, and as to many other issues raised in your letter, rather than burden the Court with a duplicative motion, we suggest that the parties simply agree to accept the Court's ruling on this subject in deciding DC's February 7, 2011 motion and the rulings on any appeals therefrom.

## II.    **REQUESTS FOR PRODUCTION**

### A.    **General Objections**

General Objections:  Defendants reserve their rights as to their general objections, and are willing to meet and confer regarding their application to defendants' discovery responses.

Offers to Meet and Confer:  Our offer to meet and confer is not an attempt to "unilaterally restrict the scope of DC's discovery," as you have mischaracterized it.  It is an offer to meet and confer so as to produce documents that reasonably respond to DC's requests.  Many of DC's requests were grossly overbroad.  For example, Request No. 5 to Marc Toberoff asks for "All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY."  Such a request entails, for example, any document "relating" to this litigation, the *Siegel v. Warner Bros. Ent. Inc.* and *Siegel v. Time Warner Inc.* litigations, documents created and/or produced by DC,and all documents relating to the exploitation of Superman and/or Superboy over the past 80 years.  If the request were narrowed – *e.g.,* to showing the disposition by Pacific Pictures of any property or interests at issue in this litigation – defendants could reasonably respond to it.

"Other" Protections:  DC's response to this objection does not make sense.  Defendants have provided privilege logs setting forth their privilege objections, and the phrase "contractual

62695.1

EXHIBIT K
482

Kendall Brill & Klieger LLP

February 14, 2011
Page 3

obligation" clearly refers to the JAMS Confidentiality Agreement specifically negotiated and entered into by DC in connection with settlement mediation.

<u>Defendants' Understanding of DC's Requests</u>:  Your response to this objection is nonsensical. Defendants can only respond to DC's requests as they are stated, and Defendants can and do interpret DC's requests in a straightforward manner.

**B.     SLAPP**

Defendants include this objection to preserve their rights, and will not withdraw it.  Nonetheless, no documents are being withheld on the basis of this objection alone.  Your hyperbolic statement that "Defendants' refusal to participate in discovery during the pendency of their SLAPP motion is in open defiance of the Court's order" is false.  Defendants responded to DC's voluminous discovery, including the responses at issue, during the pendency of their anti-SLAPP motion, and have been actively participating in discovery since August 2010.

Your statement that Judge Wright and the Ninth Circuit "considered and rejected these arguments" is incorrect.  *Neither* Judge Wright nor the Ninth Circuit have reached the merits of this issue.  In addition pertinent and persuasive authorities decided since the Magistrate Judge's ruling, and which he has never had the opportunity to consider, support the applicability of the anti-SLAPP stay in federal court.

**C.     DC's Repeated Requests**

Rather than burden the Court with a duplicative motion, we strongly suggest that the parties simply agree to accept the Court's ruling with respect to your February 7, 2011 motion and any subsequent appeals on these duplicative subjects.  Please note that, for most of the documents at issue in these "repeated requests," neither Pacific Pictures Corporation, IP Worldwide, LLC nor IPW, LLC have responsive documents.

**D.     Communications with the U.S. Attorney's Office**

Defendants provided certain information to the U.S. Attorney's Office subject to a subpoena for records *and* based on the Government's express undertaking that such disclosure would *not* constitute a general waiver of the attorney-client privilege or attorney work product protection. As you doubtless know, the Ninth Circuit has never held that the involuntary disclosure of material to the Government in such circumstances waives any privilege, and no case that you cite – which address voluntary disclosures in situations completely different than those present here – is to the contrary.  *See, e.g., United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003).  Notably, *In re Subpoena Duces Tecum*, 9 F.3d 230, 236 (2d. Cir. 1993), cited in your letter, reaches precisely the opposite conclusion than that elaborated in your letter; in that case, the Second Circuit "decline[d] to adopt a *per se* rule that all voluntary disclosures to the government waive work product

EXHIBIT K
483

Kendall Brill & Klieger LLP

February 14, 2011
Page 4

protection," and noted that "Establishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the [Government] and the disclosing party have entered into an explicit agreement that the [Government] will maintain the confidentiality of the disclosed materials." Both of those situations are present here, and Defendants maintain that disclosure to the government pursuant to a grand jury subpoena does not waive privilege as to DC. Additionally, even under DC's arguments, the attorney/client privilege, work-product protection and joint-interest privilege applies to any communications or documents relating to the internal investigation of the Timeline's author that were *not* disclosed to the government. On that basis alone, defendants' objections are proper.

DC also studiously avoids addressing defendants' relevance objection to these requests. Toberoff & Associates' *investigation* of the thief who stole reams of privileged attorney-client communications from its legal files is not plausibly related to any of DC's claims for relief.

## E. Toberoff-Related Business Entities

As to documents of Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC, both Pacific Pictures and IP Worldwide have been inactive for years. In answer to your question, those entities, unsurprisingly, have generated no new documents that relate to this case or the *Siegel* case, since discovery ended in *Siegel*. As you know, numerous documents from or relating to these entities were produced in the *Siegel* litigation.

Moreover, many of DC's requests as to these companies were objected to as grossly overbroad on their face. For instance, certain requests asked for "[a]ll DOCUMENTS RELATING to any past, current, or planned business activity" or "[a]ll DOCUMENTS RELATING to any past, current, or planned partnership or strategic alliance" of each such company. Such requests are completely untethered to any issues in this litigation. Defendants are willing to produce responsive documents once DC takes the time to appropriately tailor its overbroad requests. We are happy to discuss with you ways of narrowing these requests so that additional documents that are actually relevant to the case can be produced.

## F. Communications with Ari Emanuel

DC served the following request (Toberoff Request No. 36, Pacific Pictures Request No. 22, IPW, LLC Request No. 23, IP Worldwide, LLC Request No. 23) as to communications with Ari Emanuel: "All DOCUMENTS RELATING to any COMMUNICATIONS with Ari Emanuel." Such requests for all documents "relating" to such communications are facially overbroad, given that Mr. Toberoff has a long-standing relationship with Mr. Emanuel that encompasses matters having nothing to do with this litigation. Again, defendants are willing to produce responsive documents once DC appropriately tailors its overbroad requests to this litigation, and offers to meet and confer to facilitate such a process.

EXHIBIT K
484

Kendall Brill & Klieger LLP

February 14, 2011
Page 5

G.    **Communications with Kevin Marks**

DC requested the following:

> "All DOCUMENTS RELATING to any COMMUNICATION RELATING to the
> "Declaration of Kevin S. Marks in Support of Toberoff Defendants' Reply Memorandum
> in Support of Motion to Strike Plaintiff's State Law Causes of Action Pursuant to
> California's Anti-SLAPP Law (Cal. Code Civ. Proc. § 425.16)" filed in the above-
> entitled action on October 4, 2010 (Docket No. 98-3), including any and all drafts of that
> declaration and any and all DOCUMENTS reflecting the contents of that declaration."

Defendants will meet and confer, again in an attempt to reach an agreement as to better focus this
confusing double -"relating" request.  Please also be advised that Defendants will produce an
amended privilege log addressing these communications.

H.    **Communications with Third Parties Regarding Marketing the Siegels and/or
      Shusters' Purported Rights**

This category is untethered to any specific requests.  Defendants are willing to produce such
communications, provided that the requests in question are identified and appropriately tailored.

III.    **INTERROGATORIES**

Toberoff Interrogatory Nos. 5/11:  Interrogatory No. 11 asked for a description of
communications with the U.S. Attorneys' Office regarding the stolen documents and the author
of the Toberoff Timeline.  Similarly, Interrogatory No. 5 requested details of "any external or
internal investigation" of the stolen documents and the author of the Toberoff Timeline.  The
communications by Mr. Toberoff with the U.S. Attorney's Office and the Los Angeles FBI Field
office that are described in Responses Nos. 5 and 11 entailed the disclosure of the information
contained in Response No. 4.

Toberoff Interrogatory No. 8:  DC asked for the basis of Mr. Toberoff's knowledge that another
client was contacted by Mr. Michaels.  Mr. Toberoff provided the name and contact information
of the client in question, Ms. Allison Giannini, who informed Mr. Toberoff that Mr. Michaels
had contacted her.

Toberoff Interrogatory No. 4:  DC complains that "Toberoff restricted his response to
'information that was known prior to the investigation.'"  The response actually read:

> "Toberoff responds, without limitation, as follows, *including, for the sake of context,
> information that was known prior to the investigation*:"

Which is to say, *more* information than DC asked for was given in the response to provide

62695.1

EXHIBIT K
485

Kendall Brill & Klieger LLP

February 14, 2011
Page 6

context for the response.  DC's claim that "[n]othing beyond July 5, 2006 was provided – a date well before the purported investigation" is also misplaced.  The interrogatory asked for "information *revealed by* the ALLEGED INTERNAL INVESTIGATION," which necessarily refers to events prior to the investigation.

Toberoff Interrogatory No. 6:   The response to this interrogatory gives adequate detail regarding contacts with the U.S. Attorney's Office.  You have not explained what further detail DC believes is relevant or why the grand jury investigation should be the subject of discovery in this civil proceeding.

Larson Interrogatory No. 1/Toberoff Interrogatory No. 4:   DC appears to be claiming that Ms. Siegels' communications with attorney David Michaels are not privileged.  Such communications are privileged.  *See* Docket No. 160 at 72-73.  In any event, this duplicative issue will be resolved in connection with DC's pending motion to compel.  As for why these documents were not logged in response to DC's first set of discovery requests, please see Section I, *supra*.

Toberoff Interrogatory No. 9:   DC complains that Mr. Toberoff "did not identify the communications withheld by the Toberoff Defendants [in this response] as privileged."  The November 2007 conversation with Stanley Ornellas, and the Summer 2010 conversation with Beong-Soo Kim were oral communications.  The September 27, 2010 production to the grand jury was identified as privileged in the interrogatory response.

We are available to attend a meet and confer on February 14, and are also available to meet on February 15-18, 2011.  Please advise us of your availability.

As you know, the Toberoff Defendants are represented in this action by Kendall Brill & Klieger LLP, and your letter should have been addressed to our firm.

Sincerely,

Laura W. Brill

62695.1

EXHIBIT K
486