O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS, | CASE NO. CV 10-03633 ODW (RZx) |
| Plaintiff, | |
| vs. | ORDER ON PLAINTIFF'S MOTION TO COMPEL (DOCKET NO. 159) |
| PACIFIC PICTURES CORPORATION, ET AL. | |
| Defendants. | |

This matter came before the Court on February 28, 2011, on the motion of Plaintiff to compel production of documents. Plaintiff appeared through its counsel Daniel M. Petrocelli, Matthew T. Kline and Jason H. Tokoro. Defendants appeared through their counsel Marc Toberoff and Keith G. Adams. The Court heard argument of counsel and took the matter under submission. Subsequently, the Court asked for and received supplemental briefing. The Court apologizes to the parties for not being able to adjudicate the matter earlier.

Plaintiff presents a number of issues for decision.

The "consent agreement". The first issue, and the most significant, concerns what Plaintiff labels "consent agreements." By this term Plaintiff means agreements whereby the heirs of Jerome Siegel and Joseph Shuster have promised not to make

copyright agreements with Plaintiff, following the sending of notice to terminate the copyrights, without the consent of both groups. Plaintiff demands production of these agreements. The Court accepts Defendants' representation that there is only one document in dispute, other matters having been produced.

This is not the first time that this matter has been brought to court for decision. In the forerunner to this lawsuit, *Siegel v. Warner Bros. Entertainment, Inc.*, CV 04-8400-ODW (RZx), Plaintiff DC Comics also moved to compel production of this document, and the same arguments were made there as are made here. The Siegel defendants, who were the Plaintiffs in *Siegel*, did not produce the consent agreement, arguing that the consent agreement was entitled to protection under a negotiated confidentiality agreement and the settlement process in general, and that the consent agreement was protected by the attorney-client privilege. After Mr. Toberoff described the ways in which he thought the attorney-client privilege protected the document, Judge Larson accepted Mr. Toberoff's representation, made as an officer of the Court, that the consent agreement was protected by the attorney-client privilege. Judge Larson also ruled, moreover, that the consent agreement was protected as part of the settlement process. In these rulings he could not have been clearer:

> [DC Comics'] motion is denied.
> I will accept Mr. Toberoff's clarification of the [consent agreement] or characterization of the [consent agreement]. I understand without having seen it that defense [sic] received a partial rendering of that [consent agreement] that led them to believe that it was not privileged. I can understand why they brought this motion and I certainly do not fault them for doing that.
> However, I will accept Mr. Toberoff's characterization of it as a privileged document, as an officer of the court. I have

> every reason to believe that he is the only person who has access to the underlying privileged document; is fairly and accurately representing that to the Court; and I will rely on that representation.
>
> Part of this is motivated simply by the Court's commitment to maintaining the settlement privilege. It was the Court that encouraged you to engage in that settlement effort, and I want to maintain the confidences that were agreed to during that period. So that motion is denied.

Kline Decl., 724 [Ex. SS, p. 12]:2-19.

This Court starts with this point therefore — that the matter has been considered once, and ruled upon. The question is why to rule differently now.

Defendants argue that the law of the case protects against disclosure of the consent agreement now. Like most doctrines of preclusion, the law of the case doctrine rests on the desire for finality: one bite at the proverbial apple usually is good enough. *Gonzalez v. Arizona*, 624 F.3d 1162, 1186-87 (9th Cir. 2010). The law of the case doctrine applies when an appellate court makes a ruling that then establishes the law to be followed in the trial court, or on subsequent appeals in the appellate court *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); but the doctrine also has been used as a short-hand description of a trial court's desire to adhere to a ruling previously made, recognizing, of course, a trial court's ability to reconsider a ruling under appropriate circumstances. 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 at 693-94 (2002).

Plaintiff asserts, however, that this dispute cannot be shoehorned into the law-of-the-case paradigm, because this is not the same case as *Siegel*. In the usual situation, the law of the case doctrine does apply only within the same case; this is not absolute, however, and the doctrine in fact has been applied in closely-related cases. *Disimone v.*

*Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997).  From a realistic standpoint, the present case is so closely related as to be considered properly part of the same case as *Siegel* for purposes of application of the law of the case principles.  This case has a different docket number attached to it, and it is true that DC Comics has added the Shuster defendants and Mr. Toberoff himself as a defendant, and created some new theories.  But the issue has never been one of *relevance*, for DC Comics asserted in *Siegel* that the document was relevant to the claims there, and the *additional* parties here are not seeking to uncover something they did not have the opportunity to see in *Siegel*.  Thus, the new claims and new parties are not a basis for saying that automatically DC Comics is entitled to the document now when it was not entitled to it then.  The central issue surrounding the controversy is who controls the copyrights connected with the Superman creations and their iterations, and the various claims and counterclaims all derive from and relate to that issue.  The cases are all before the same judge.  The claims in the present case probably could have been filed as counterclaims and cross-claims, perhaps in supplemental pleadings, in the original case.  The jockeying that led to the filing of this present separate lawsuit should not obscure the reality of these facts.  It is appropriate, under the peculiar facts of these two cases, that applicable rulings made in the original case should govern the outcome here, unless there is some very good reason to change those rulings.

       Under such circumstances, the law governing motions for reconsideration is what guides this court.  Under both FED. R. CIV. P. 60 and L.R. 7-18, the Court has the authority to reconsider matters, but generally declines to do so unless there has been a significant error in its prior ruling or the law has changed in the meantime.  The Court perceives neither in this case.

       The consent agreement came to light, indeed appears to have been made, in connection with the settlement discussions following the first phase of the trial in *Siegel*, discussions that, as Judge Larson indicated, the Court strongly promoted.  The parties negotiated a confidentiality agreement concerning disclosures made in connection with the settlement discussions.  Via a letter that was headlined "Confidential--For Settlement

Purposes Only," Defendant Toberoff, who was and is counsel for the Siegels and Shusters, told Plaintiff that an agreement existed among the Siegels and Shusters not to alienate their rights in "Superman" without the consent of the other, and that those parties had agreed in advance to a formula for sharing the proceeds from any transaction that they did enter into. This letter was sent in the context of the settlement discussions that Judge Larson had encouraged, and that were about to take place.

The confidentiality agreement specifically stated that

> Without limitation, any document that is marked 'Confidential–For Settlement Purposes Only' and is disclosed or produced at or in connection with a Settlement Conference shall be treated as Confidential Settlement Information. Confidential Settlement Information shall not be disclosed to anyone other than the parties, their counsel or the mediator or used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly, orally or in writing, except as set forth in paragraph 6 below.

Kline Decl. 113-14 [Exhibit K 1-2]. The letter mentioning the consent agreement was marked "Confidential–For Settlement Purposes Only," and the parties agreed that it would not be used for any purpose in any future litigation. (Nevertheless, it appears to be the information upon which Plaintiff alleges its belief in the Complaint that Defendants have entered into a consent agreement.) The present motion addresses the underlying document referred to in the letter; that document was not produced in the prior settlement negotiations. Still, however, it is clear that Judge Larson accepted it as an integral part of the settlement discussions, and Mr. Toberoff states that it was entered into for the very

purpose of negotiating during settlement efforts, a sort of Drysdale-Koufax collective approach to negotiation.

Plaintiff argues that the agreement constitutes an independent wrong because it violates the Copyright Act and, as an independent wrong, cannot be insulated from discovery under the rubric of settlement negotiations. At oral argument, Plaintiff emphasized a case mentioned in the Joint Stipulation, *Carney v. American University*, 151 F.3d 1090 (D.C. Cir. 1998), cited for this proposition.[1] In *Carney*, a settlement letter containing evidence of retaliation was held admissible, notwithstanding FED. R. EVID. 408, because retaliation was a wrong independent of the underlying charge of racial discrimination. A similar if not exactly the same argument about the inability of the settlement process to insulate a non-privileged relevant communication also was made to Judge Larson, *see* Kline Decl. 723 [Exhibit SS 11]:18-22, who nevertheless ruled against production of the agreement. Moreover, while FED. R. EVID. 408 does not protect the underlying facts of an independent wrong, the argument ultimately is a circular one. Plaintiff *assumes* the consent agreement constitutes an independent wrong and, acting on that assumption, takes the position contrary to the impact of Judge Larson's ruling, that the consent agreement is not protected within the settlement rubric that Judge Larson mentioned.

The Court, however, does not assume that this consent agreement constitutes an independent wrong, or is unlawful. The statute Plaintiff references, 17 U.S.C. § 304(c)(6)(D), says:

> A further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made

---

[1] Plaintiff has misdescribed the facts of *Carney*. Joint Stipulation 15:12-14; R.T. (February 28, 2011) 47:12-19. *Carney* did not involve an alleged retaliatory threat to fire the employee, but an alleged retaliatory withholding of additional severance pay to which the employee might have been entitled. 151 F.3d at 1095.

> after the effective date of the termination.  As an exception,
> however, an agreement for such a further grant may be made
> between the author . . . and the original grantee or such grantee's
> successor in title, after the notice of termination has been served
> . . . .

There is only one Ninth Circuit case construing this provision, *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005), and the Court does not know that it has the elastic interpretation Plaintiff ascribes to it, or is applicable to the factual situation here.  Insofar as pertinent here, *Milne* held that the original copyright holder, who served the termination notice, did not need to wait for the effective date of the termination before entering into a new agreement with the existing grantee of copyright rights.  The *Milne* Court explained that this portion of the statute thus gave the original grantee a favored position, because third parties could not traffic in future interests, but the original grantee could.  430 F.3d at 1047.  *Milne* does not address the situation where the original creators (or their heirs) agree to negotiate together, and do not grant future interests to anyone.  Indeed, *Milne* may well foreshadow the opposite:

> Even assuming that Congress intended such a "moment of
> freedom" between a contractual revocation and re-grant of
> rights, we note that Christopher's ability to exercise his
> perceived termination right gave him all the freedom he needed
> to refrain from entering into a new grant of copyright rights to
> SSI.

430 F.3d at 1048.  It may be that, if one party can refrain from negotiating with the current grantee, two creators can also agree to refrain from negotiating with the current grantee, except on terms acceptable to both.

One cannot know with certainty what the consent agreement means without seeing the agreement, and even then it may well be open to differing interpretations. The Court does not accept the argument, however, that simply because Plaintiff *avers* that Defendants have entered into an illegal agreement, that the agreement is, in fact, illegal. Simply calling it illegal does not make it so. Discoverability, on the theory that the existence of the agreement makes Rule 408 inapplicable, cannot turn on whether Plaintiff ultimately proves to be right in its characterization.

In short, Plaintiff called the agreement unlawful in *Siegel*, but did not persuade Judge Larson of that fact. The Court will not re-visit that issue just for the purpose of having that issue re-visited.

Nor will the Court re-visit Judge Larson's ruling that the attorney-client and related privileges protect the consent agreement. It is true that Judge Larson accepted Mr. Toberoff's representation on this point, but Judge Larson did not rule on the basis of simply having heard the incantation "attorney-client privilege." Rather, Judge Larson ruled after Mr. Toberoff described in some detail some facts about the consent agreement, indicating why he claimed the consent agreement was privileged:

> Your Honor, this is absolutely a privileged communication, attorney-client privilege, joint interest privilege, as a communication between parties with an interest in litigation and attorney-work product. The document was signed by me summarizing discussions between my clients. There's no way this document would not be protected by the attorney-client privilege.
>
> The document was written a week before the settlement mediation solely for the purposes of advancing settlement. It reflects discussions between myself and my clients regarding settlement and settlement strategy.

> \* \* \*
>
> . . . I wrote a letter, 'settlement, for confidential purposes only,' and in there I talked about this communication because it bore on — it was a discussion between my clients regarding settlement, and I gave some of the results of that. Based on that, they are demanding the underlying communication.
>
> \* \* \*
>
> I'll say this: The letter that I sent [that is, the letter that mentions the consent agreement] does not describe every aspect of this communication [the consent agreement], nor does it attach the communication. It describes some of the results of the communication as it bears on settlement.
>
> The communication is signed by me. It is signed by me, and it refers to discussions that I had with my clients regarding settlement. How that cannot be privileged, I do not know. Even if it had not been signed by me but merely reflected a communication between two parties with an interest in litigation regarding settlement or regarding settlement strategy, that would be protected by the joint interest privilege.

Kline Decl. 718 [Exhibit SS 6]:22-719 [Exhibit SS 7]:7; 720 [Exhibit SS 8]:6-11; 722 [Exhibit SS 10]:14-25. Again, there is no basis to revisit that ruling, unless something has transpired since to cause a change.

Plaintiff asserts that Defendants have waived the privilege, but the Court does not agree. Plaintiff first says that, by describing the agreement, Defendants have waived any attorney-client privilege, but that argument necessarily was implicitly rejected by Judge Larson. This Court agrees with that rejection. After all, a party is required to disclose something of the substance of an agreement even just to list it in a privilege log.

(Indeed, as to other matters at issue on this motion, Plaintiff asserts that materials withheld under a claim of privilege should be described more fulsomely.) It is not the mere existence of the agreement, or the portions of it that have been referred to, that constitutes a waiver; waiver is a matter of intent, and the Court will not infer intent simply by the description of the agreement here.

Plaintiff also argues that by referring to the consent agreement in this litigation, Defendants have waived the attorney-client privilege. Again, the Court does not agree. Plaintiff first raised the agreement in its pleading by innuendo and, as indicated, its knowledge appears to derive from a letter that was protected during the settlement negotiations. Defendants have thereafter referred to the agreement in this lawsuit. In the Court's view, Defendants do not waive the privilege by defending themselves.

Plaintiff argues that discovery had closed in the prior lawsuit when it learned of the consent agreement, and that this too is a difference between the two cases, so that this Court should rule differently. In the *Siegel* litigation, however, Plaintiff asserted that the Siegel defendants were obligated to produce the consent agreement pursuant to two Requests to Produce, Nos. 59 and 63, Kline Declaration 708 [Exhibit QQ]; 721 [Exhibit SS]:7-10. The continuing obligation to supplement responses existed, notwithstanding the close of discovery. Again, moreover, this is a difference only because Plaintiff makes it one. Judge Larson knew the state of discovery and that Plaintiff had just learned of the existence of the agreement. With that knowledge, he did not extend discovery and, in fact, he ruled that the matter was protected under the rubric of the settlement discussions and the attorney-client and related privileges.

Therefore, Judge Larson having previously decided that the "consent agreement" in issue was protected and need not be disclosed, and the Court finding no error of law or misunderstanding on the Court's part and therefore no reason to reconsider the prior ruling, the Court rules that the consent agreement need not be disclosed here. The motion to compel is denied as to this document.

<u>The Retainer Agreements and Related Documents</u>. The retainer agreements are not privileged unless, in fact, they contain privileged information. Plaintiff says that it needs to see the agreements to ascertain the date on which Mr. Toberoff began to represent the clients. The date of the retainer agreement itself is not privileged, nor is the date on which Mr. Toberoff performed services. But, insofar as the description of the services to be provided reflect advice given, the descriptions are privileged. Accordingly, the motion to compel is granted as to this request, but Mr. Toberoff may submit redacted copies of his retainer agreements, redacting privileged information.

<u>Michael Siegel documents.</u>

a. July 11, 2003 letter. Although Defendants are somewhat cryptic about this letter, nevertheless the record establishes that they asserted privilege as to the letter during the prior litigation, a designation that was upheld by this Court. Plaintiff points to nothing to demonstrate that the prior ruling was incorrect; Plaintiff simply wants to see the document still. The Court sees no basis for re-visiting the prior decision.

b. Other Michael Siegel documents. Plaintiff seeks production of 11 documents between counsel for Michael Siegel and Mr. Toberoff, who was counsel for Joanne Siegel and Laura Siegel Larson. Mr. Toberoff states in his portion of the Joint Stipulation that five of those documents do not exist, and the Court accepts that representation. Mr. Toberoff's claim that the joint defense privilege applies to the balance of the documents, because they were created at a time after Michael Siegel had died and when, by operation of law, Laura Siegel Larson was his sole heir, cannot be evaluated in a vacuum. Regrettably, the Court orders Mr. Toberoff to deliver the remaining six documents for *in camera* inspection, within seven days. Within that same seven day period, either side may submit a further memorandum, not to exceed 10 pages in length, assessing the argument that the joint defense privilege applies as a result of Michael Siegel's death.

   c. The remaining Michael Siegel documents. Plaintiff requests that the Court order Defendants to expand on their privilege log as to the other Michael Siegel documents. The form of the privilege log, however, has been found satisfactory by the Court of Appeals, *see In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992); *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989), and the Court does not see any basis here for any further elaboration.

   <u>Documents Referred to in the so-called Toberoff Timeline</u>. Plaintiff refers to two documents that were identified in the so-called Toberoff Timeline, and that have not been produced or logged, a May 13, 2003 letter from Michael Siegel to Ms. Larson, and a July 5, 2003 letter from Ms. Larson to Michael Siegel. Joint Stipulation at 37. As to the latter, Defendants respond that the document does not exist. Joint Stipulation at 71 n.26.[2] The Court finds no response as to the May 13, 2003 letter. Accordingly, as to this letter, within seven days Defendants shall either (a) produce it to Plaintiff; or (b) submit a verified further response to Plaintiff indicating that it does not exist or, if it already has been produced, identifying it by Bates number or other identifying mark.

   <u>The Dennis Larson documents</u>. There is no real dispute as to these documents; Defendants do not object to turning them over but, since they involve matters

---

[2] At oral argument, Plaintiff stated as to this footnote: "That's not what the footnote says. And, you know, I was troubled when he said that because I didn't want to have misrepresented anything to the court. But the footnote says that he was unable to match up the July 13, 2000--excuse me, the July 5, 2003 letter. It does not say it does not exist. Now, if it doesn't exist, it doesn't exist." R.T. (February 28, 2011) 45:4-9. In the Joint Stipulation, Defendant says: "The Timeline refers to numerous documents that do not exist, and were thus not included in the stolen documents enclosed with the Timeline." Joint Stipulation at 71:25-26. The accompanying footnote lists as the third document the July 5, 2003 letter. The footnote goes on to say that Defendants were unable to identify a document that matched the description of a July 5, 2003 letter from Laura Siegel to Michael Siegel. When Defendants say that a document that Plaintiff thinks exists does not exist because Defendants were unable to match up any document with the description that Plaintiff gave them, the Court accepts that representation as a representation that the document does not in fact exist so far as Defendants know.

concerning one of the defendants' divorce, they want them protected. The Court does not understand why this portion of the dispute could not have been resolved out of court. The documents shall be produced but shall not be used outside of this litigation and, if filed in connection with any pretrial matter save a dispositive motion, shall be filed under seal, absent agreement of the parties. Any protection that is sought for these documents in connection with a dispositive motion or at trial must be sought separately from the judicial officer who will preside at those proceedings.

<u>Format of Privilege Logs</u>. The privilege log format approved in *Dole v. Milonas, supra,* and *In re Grand Jury Investigation, supra*, often can be acceptable; indeed, it was acceptable in *Siegel* and the Court believes it is acceptable with respect to the Michael Siegel documents, as indicated above. It is not the only acceptable format, however, and the parties, in their pre-hearing negotiations, appeared to reach agreement on this part of the issue, although circumstance prevented their reaching full agreement. While the descriptions in the log could be more fulsome, the Court is not persuaded that they must be so, and the Court sees no strong reason for requiring Defendants to recharacterize over 2,000 documents. The main argument circles back to whether the consent agreement, and related documents, which comprise some of the documents listed on the log, are discoverable. The Court has held that they are not required to be disclosed, which moots the argument to a certain extent. The Court also is wary of requiring characterizations of the documents; either the characterizations must be so generic as to not be much different from what is listed — "litigation update" or "litigation strategy" or "discussing case" do not tell much — or, by being more specific, they may well in fact disclose protected material. The Court will not foreclose the parties from reaching agreement among themselves, as they appeared near to doing, on a protocol that both sides will follow. Absent such agreement, however, the Court is satisfied that the log complies with Ninth Circuit law and need not be expanded.

Plaintiff's motion is granted in part and denied in part, as set forth in the foregoing discussion.  Defendants' request for sanctions is denied.

The matters placed under seal will remain under seal.

The Court sustains Plaintiff's objection to matters in the ordered Supplemental Brief that exceeded the scope of the Court's order.  The Court did not consider such matters.

IT IS SO ORDERED.

DATED:  April 11, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE