KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Nicholas F. Daum (236155)
  ndaum@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>             Plaintiff,<br><br>      vs.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN PEARY, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; JOANNE<br>SIEGEL, an individual; LAURA<br>SIEGEL LARSON, an individual,<br>and DOES 1-10, inclusive,<br><br>             Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE LOGS FROM THE TOBEROFF DEFENDANTS**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date:    April 25, 2011<br>Time:   10:00 a.m. |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT ...........................................................................................3

    A.   The Issues in Dispute ....................................................................3

    B.   Issue 8:  Communications With The U.S. Attorney's Office .................3

        1.   Factual Background .......................................................3

        2.   Privilege Is Not Waived When The Victim Of Criminal Activity Provides Privileged Information To Law Enforcement ....................................................................6

    C.   Issue 9:  Communications Between David Michaels And The Siegels ....................................................................................11

        1.   This Issue Has Already Been Decided ...........................11

        2.   The Siegel-Michaels Communications Are Privileged ...............11

        3.   Privilege Has Not Been Waived As To Communications Between David Michaels And The Siegels ..................................12

    D.   Issue 10:  Communications Relating to Kevin Marks' October 2010 Declaration ........................................................................13

        1.   The Siegels' Communications With Kevin Marks Are Privileged ..................................................................13

        2.   There Has Been No Waiver Of Privilege ...........................15

    E.   Issue 11:  Defendants' Other Objections ...............................17

        1.   Defendants Properly Produced Documents And Attempted To Meet and Confer ....................................................17

        2.   DC Has The Burden To Narrow Its Own Overbroad Requests ....................................................................21

        3.   DC's Contention That Defendants Raised "Boilerplate" Objections That May Be Overruled Lacks Merit ........................23

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

1

III.    CONCLUSION ................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

## <u>CASES</u>

4

*Aikens v. Deluxe Fin. Servs., Inc.*,

5
    217 F.R.D. 533 (D. Kan. 2003) ...................................................................... 22

6
*Barton v. United States Dist. Court*,
    410 F.3d 1104 (9th Cir. 2005) ...................................................................... 11

7

*Brown v. Dunbar*,

8
    2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) ................................... 17

9
*Bud Antle, Inc. v. Grow-Tech, Inc.*,
    131 F.R.D. 179 (N.D. Cal. 1990) ................................................................. 15

10
*Burroughs v. DeNardi Corp.*,

11
    167 F.R.D. 680 (S.D. Cal. 1996) ............................................................... 8, 9

12
*California Dep't of Water Resources v. Powerex Corp.*,
    533 F.3d 1087 (9th Cir. 2008) ...................................................................... 25

13
*Chevron Corp. v. Pennzoil Co.*,

14
    974 F.2d 1156 (9th Cir.) 1992) ..................................................................... 12

15
*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
    819 F.2d 1519 (9th Cir. 1987) ...................................................................... 17

16
*Damron v. Herzog*,

17
    67 F.3d 211 (9th Cir. 1995) .......................................................................... 14

18
*Dellwood Farms, Inc. v. Cargill, Inc.*,
    128 F.3d 1122 (7th Cir. 1997) ........................................................................ 9

19
*Diversified Industries, Inc. v. Meredith*,

20
    572 F.2d 596 (8th Cir. 1978) ........................................................................ 10

21
***Eisenberg v. Gagnon***,
    766 F.2d 770 (3d Cir. 1985) ......................................................................... 14

22
*Flores v. Emerich & Fike*,

23
    2008 U.S. Dist. LEXIS 49385 (E.D. Cal. June 17, 2008) .............................. 17

24
*Godin v. Schenks*,
    629 F.3d 79 (1st Cir. 2010) ..................................................................... 24, 25

25
*Griffith v. Davis*,

26
    161 F.R.D. 687 (C.D. Cal. 1995) ................................................................. 14

27
*Home Indem. Co. v. Lane Powell Moss & Miller*,
    43 F.3d 1322 (9th Cir. 1995) ........................................................................ 12

28

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
    293 F.3d 289 (6th Cir. 2002) .......................................................... 7

*In re Leslie Fay Cos. Sec. Litig.*,
    161 F.R.D. 274 (S.D.N.Y. 1995) .................................................... 9

*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir. 1988) ......................................................... 7

*In re NCAA Student-Athlete Name & Likeness Litig.*,
    2010 U.S. Dist. LEXIS 139724 (N.D. Cal. Dec. 17, 2010) ........... 25

*In re Qwest Comms. Int'l*,
    450 F.3d 1179 (10th Cir. 2006) ...................................................... 7

*Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*,
    161 B.R. 689 (D. Colo. 1993) ........................................................ 9

*Jumping Turtle Bar & Grill v. City of San Marcos*,
    2010 U.S. Dist. LEXIS 119390 (S.D. Cal. Nov. 10, 2010) ........... 15

*Kalima v. Regents of the Univ. of Cal.*,
    2007 U.S. Dist. LEXIS 40887 (N.D. Cal. May 21, 2007) ............. 23

*McKesson HBOC, Inc. v. Superior Court*,
    115 Cal. App. 4th 1229 (2004) ................................................... 7, 8

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ........................................................ 25

*Permian Corp. v. United States*,
    665 F.2d 1214 (D.C. Cir. 1981) ...................................................... 7

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir.) 2010 ...................................................... 10

Poweragent Inc. v. Electronic Data Systems Corp.,
    358 F.3d 1187 (9th Cir. 2004) ...................................................... 25

*Pritchard-Keang Nam Corp. v. Jaworski*,
    751 F.2d 277 (8th Cir. 1984) ........................................................ 10

*SEC v. Amster & Co.*,
    126 F.R.D. 28 (S.D.N.Y. 1989) .................................................... 9

*Sedlacek v. Morgan Whitney Trading Group*,
    795 F. Supp. 329 (C.D. Cal. 1992) ................................................. 5

*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
    795 F. Supp. 329 (C.D. Cal. 1992) ................................................. 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010) ................................................................. 24

*Siegel v. Warner Bros. Ent. Inc.*,
    542 F. Supp. 2d 1098 (C.D. Cal. 2008) ................................... 1, 17

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

*Sullivan v. Kelly Servs.*,
2008 U.S. Dist. LEXIS 29318 (N.D. Cal. Mar. 4, 2008) ............................... 23

*Teachers Insurance and Annuity Association of America v. Shamrock
Broadcasting Co.*,
521 F. Supp. 638 (S.D.N.Y. 1981) ....................................................... 9

*Tibble v. Edison Int'l*,
2008 U.S. Dist. LEXIS 106999 (C.D. Cal. Decl. 30, 2008) ........................ 16

*Transamerica Computer Co. v. Int'l Bus. Machines Corp.*,
573 F.2d 646 (9th Cir. 1978) ............................................................. 10

*United States ex rel. Burroughs v. DeNardi Corp.*,
167 F.R.D. 68 (S.D. Cal. 1996) ............................................................. 5

*United States v. Bay State Ambulance & Hosp. Rental Serv.*,
874 F.2d 20(1st Cir.1989) ................................................................... 9

*United States v. Bergonzi*,
403 F.3d 1048 (9th Cir. 2005) ............................................................ 10

*United States v. Billmyer*,
57 F.3d 31 (1st Cir. 1995) ................................................................... 9

*United States v. Massachusetts Institute of Technology*,
129 F.3d 681 (1st Cir. 1997) ................................................................ 6

*United States v. Reyes*,
239 F.R.D. 591 (N.D. Cal. 2006) .......................................................... 7

*Veliz v. Cintas Corp.*,
2009 U.S. Dist. LEXIS 36323 (N.D. Cal. Apr. 23, 2009).......................... 23

*Weil v. Investment/Indicators, Research & Management*,
647 F.2d 18 (9th Cir. 1981) ............................................................... 12

*Westinghouse Electric Corporation v. The Republic of the Philippines*,
951 F.2d 1414 (3d Cir. 1991) ............................................................... 6

**STATUTES**

17 U.S.C. §§ 304 ................................................................................. 1

## I.    INTRODUCTION

This lawsuit stems from the successful recapture by the heirs/estate (collectively, "Heirs") of Superman's co-creators (Jerry Siegel and Joe Shuster) of their original Superman copyrights by exercising their termination rights under the Copyright Act, 17 U.S.C. §§ 304(c) and (d).  On May 14, 2010, DC retaliated by suing its long-time opposing counsel, Marc Toberoff of the law firm Toberoff & Associates, P.C., who had successfully represented the Heirs in filing and/or enforcing their Superman terminations, and who had vindicated the Siegels' copyrights through years of hard-fought litigation in *Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1145 (C.D. Cal. 2008).  This motion is part of a recurring pattern of overreaching discovery motions filed by DC without meeting and conferring to resolve any potential problems in good faith.

Issue 8:[1]  Defendants were the victim of a theft of privileged materials (the "Stolen Documents"), which were stolen from Mr. Toberoff's law office and delivered to DC's parent company, Warner Bros.  When the Government began investigating this theft, defendants turned over copies of the Stolen Documents to the U.S. Attorney's Office in response to a subpoena, subject to an express agreement with the government that the Stolen Documents were being produced subject to the joint prosecution privilege and would be maintained as strictly confidential.  DC now seeks to compel the production of all of the Stolen Documents on the purported grounds that privilege has been waived by defendants' response to the U.S. Attorney's Office.  DC demands an unprecedented ruling that, where privileged documents are stolen, copies of the stolen documents may not be turned over to law enforcement, even if such disclosure is necessary to demonstrate to authorities the nature and facts of the crime.  DC asserts this unprecedented theory would apply even when the government and the disclosing party expressly agree to maintain the documents as privileged and confidential.  No court has found a privilege waiver in

---

[1] "Issues" 1-7 have been addressed in the parties' February 7, 2011 joint stipulation (Docket No. 159).  The Court ruled on these issues in its order dated April 11, 2011.

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

any analogous situation, and DC relies only on out-of-circuit cases that found waiver where *the target* of a government investigation voluntarily discloses privileged information in an attempt to avoid prosecution.

Issue 9:  As set forth in the joint stipulation related to DC's prior motion to compel (Docket No. 159), the communications between David Michaels and the Siegels that DC seeks are protected by the attorney-client privilege, have been duly logged, and there has been no waiver of privilege.

Issue 10:  DC seeks communications between Kevin Marks, former counsel for defendant Laura Siegel Larson (and her late mother Joanne Siegel) (the "Siegels"), and defendants' counsel related to a declaration he submitted in October 2010 in support of defendants' anti-SLAPP motion, wherein Marks offered testimony as to his representation of the Siegels.  Kevin Marks, who was the Siegel family's former attorney in this same litigation, shares a clear common interest with defendants, and drafts of the declaration are protected by the attorney-client privilege, common interest privilege, and work product protection.

Issue 11:  DC complains that certain defendants (Marc Toberoff, IP Worldwide, LLC, Pacific Pictures Corporation, and IPW, LLC) (the "Toberoff Defendants") produced only one document in response to DC's duplicative discovery requests.  In truth, the Toberoff Defendants designated thousands of pages of responsive documents (pursuant to stipulation of the parties), and offered to meet and confer as to DC's grossly overbroad discovery requests, which asked for virtually every document in the Toberoff Defendants' possession, whether related to the case or not.  When the Toberoff Defendants timely objected to such overbroad requests, DC simply refused to address their very real concerns over the extraordinary burdens, breadth, and irrelevancy of DC's requests.  DC should be ordered to reasonably tailor its overbroad discovery demands, which it has refused to do.

## II. ARGUMENT

### A. The Issues in Dispute

(1)     Whether defendants, who were victims of a crime, the theft of privileged documents, waived privilege by providing such documents to the United States Attorney's Office that was investigating the crime, where the documents were provided pursuant to a subpoena and subject to the joint prosecution privilege and an express agreement to maintain the documents as confidential?

(2)     Whether communications between David Michaels and the Siegels related to his possible retention by them are privileged?

(3)     Whether communications between the Siegels' prior attorney, Kevin Marks, and the defendants' current counsel regarding matters relating to Marks' representation of the Siegels are shielded from discovery by the common interest privilege that protects attorney-client communication and attorney work product?

(4)     Whether DC should be ordered to narrow its grossly overbroad discovery requests?

### B. Issue 8:  Communications With The U.S. Attorney's Office

#### 1. Factual Background

The procedural background of this case was set forth in detail in several motions before this Court, including, notably, the facts concerning the so-called "Timeline."  *See, e.g.,* Docket No. 42 at 7-26.  In short, on July 18, 2005, Toberoff's law firm hired an attorney named David Michaels ("Michaels") as its lowest paid junior attorney.   *See* Declaration of Daniel Petrocelli (Docket No. 207) ("Pet. Decl."), Ex. I, Toberoff Interrogatory Responses at 5.  In mid-October 2005, after just three months, and without warning or explanation, Michaels abruptly left work during the middle of the day and never returned, and numerous concerned calls to Michaels went unanswered.  *Id.*  In November-December 2005, Mr. Michaels contacted the Siegels and attempted to direct them to another firm, with him to act as their attorney, by falsely accusing Mr. Toberoff of purported unethical conduct, like

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

allegedly charging the Siegels "unconscionable fees." *Id.* at 6. In December 2005, the Siegels rejected Michaels' overtures. *Id.* In July 2006, Mr. Toberoff learned that three copies of an anonymous defamatory "Timeline," each enclosing a large "package" of privileged documents stolen from his law firm's files ("Stolen Documents"), had earlier been received by three high-level Warner Bros. executives, including its General Counsel. *Id.* at 6-7.

In or about November 2007, well before this action was filed, Mr. Toberoff met with Stanley Ornellas of the Los Angeles FBI Field Office, who had been investigating the Pellicano scandal, regarding the Stolen Documents, and reported the theft. Pet. Decl., Ex. I (Toberoff Interrogatories) at 8.[2] Shortly after this action was filed, in mid-2010, Mr. Toberoff conferred telephonically and in-person with the United States Attorney's Office for the Central District of California regarding the Stolen Documents. *Id.* The U.S. Attorney's Office initiated a Grand Jury Investigation into the Stolen Documents, and in September 2010, a grand jury subpoena was served on Mr. Toberoff requesting copies of the Timeline and the Stolen Documents. *See* Declaration of Nicholas Daum ("Daum Decl."), Ex. A. The same day, the U.S. Attorney's Office emailed a letter dated September 10, 2010, that agreed to maintain the confidentiality of any documents provided pursuant to the subpoena and that the provision of the documents was not intended to "waive any applicable privilege or protection under law." Daum Decl., Ex. B. On September 17, 2010, Mr. Toberoff's counsel provided the Timeline and Stolen Documents to the U.S. Attorney's Office, together with a letter stating as follows:

---

[2] DC asserts, without any basis, that Mr. Toberoff reported the theft to enforcement officials in order to silence Mr. Michaels. Motion at 8. Such offensive accusations are difficult to understand except as part of a campaign to damage Mr. Toberoff's reputation through false allegations and to deflect attention from the elephant in the room: that this lawsuit is premised on DC's efforts to benefit from criminal activity perpetrated against Mr. Toberoff and to chill Mr. Toberoff's representation of his clients adverse to DC. *See* Docket No. 145. In addition, contrary to DC's suggestion that Mr. Toberoff injected the criminal investigation into these proceedings, Motion at 4, Mr. Toberoff further addressed the issue in response to DC's erroneous suggestion, made in DC's opposition to the anti-SLAPP motion, that Mr. Toberoff had not reported the crime and "[has] never taken any public legal action." Docket No. 92 at 3.

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

We are in receipt of the Grand Jury subpoena issued by your office on September 13, 2010. *As demanded by the subpoena, and in an effort to assist the Government in its ongoing criminal investigation,* Mr. Toberoff provides hereunder the "SUPERMAN - MARC TOBEROFF TIMELINE" (the "Timeline") and its enclosures . . . .

This response to the Grand Jury's subpoena *is made subject to and without waiver of the attorney-client privilege, work product immunity, or any other privilege applicable to these documents. The Timeline itself and many of the enclosed documents are clearly subject to the attorney-client privilege and/or work-product immunity, and we are providing them subject to our mutual understanding that providing such documents in response to your subpoena shall not constitute a waiver of any applicable privilege or immunity.*

Moreover, the provision of these documents is expressly made in reliance upon the Government's representations, in its letter of September 10, 2010, that (i) "the Government will maintain the confidentiality of the MT documents and related information and will not provide the MT documents and related information to non-governmental third parties except as may be required by law or court order"; (ii) "the Government will return the MT documents to you and your client as soon as we determine that we no longer need them"; (iii) "to the extent attorney work product or communications protected by the attorney client privilege are shared with the Government ... Mr. Toberoff is sharing them as a selective and limited disclosure in reliance on the Government's agreement that, in recognition of his objective to preserve any and all applicable privileges, the Government will keep them confidential and not disclose them to any non-governmental third parties (except as may be required by law or court order)"; and (iv) "nothing in Mr. Toberoff's disclosure of the MT documents and related information is intended to waive any applicable privilege or protection available under law."

*Any privileged documents being produced to the Government pursuant to the subpoena are also subject to a common interest/joint prosecutorial privilege. See Sedlacek v. Morgan Whitney Trading Group*, 795 F. Supp. 329, 330 (C.D. Cal. 1992) (communications between civil litigants and government investigating similar wrongdoing subject to joint prosecution/common interest privilege); *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996) (same). *The privilege is particularly applicable here given Mr. Toberoff and the Government's common interest in investigating the wrong committed against Mr. Toberoff and his law firm through the theft of these documents and creation of the Timeline.*

Daum Decl. Ex. C (emphasis added). Accordingly, the Timeline and Stolen

Documents were disclosed subject to an express assertion of the joint prosecution

privilege, and without waiver of the attorney client privilege or work product

protection, and with an express agreement to maintain the documents as privileged

and confidential, in an effort to aid the Government in its ongoing criminal

investigation of the Stolen Documents. *Id.*

80553.1                                         5

2.   **Privilege Is Not Waived When The Victim Of Criminal Activity Provides Privileged Information To Law Enforcement**

a.   <u>The Cases Cited by DC All Involve Waiver By The *Targets* Of Government Investigations</u>

DC now claims that even though Mr. Toberoff was the victim of a crime being investigated by the Government—namely, the theft of privileged and confidential documents—he nevertheless could not provide copies of those same Stolen Documents pursuant to a grand jury subpoena to the U.S. Attorney's Office, investigating the theft, without waiving all privileges and protections. DC's position relies entirely on out-of-circuit, nonbinding cases that find a waiver of the attorney-client privilege in a completely different circumstance: the disclosure of privileged information to the government ***by a target of a government investigation***. DC's cases all rely on a fundamentally adversarial relationship with the Government; and have little bearing on the situation here, where the provision of the Stolen Documents to the Government was in necessary furtherance of a prosecution of the theft of such documents, wherein both the crime victims and the Government had a joint interest.

In *United States v. Massachusetts Institute of Technology*, 129 F.3d 681, 683-86 (1st Cir. 1997), relied on by DC, a defense contractor provided privileged information, without any agreement related to confidentiality and maintaining privilege, to an auditing agency while it was being audited. Because the contractor was under investigation, the Court recognized that the relationship was "easily characterized as adversarial," and thus found a waiver of privilege. *Id.* at 686.

Similarly, in *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991), relied on by DC, Westinghouse waived the attorney-client privilege by providing privileged materials to the SEC and the Department of Justice while those agencies were investigating allegations of bribery by Westinghouse. *Westinghouse* was expressly limited to "whether a party

that discloses information protected by the attorney-client privilege and the work-product doctrine in order to cooperate with a government agency *that is investigating it* waives the privilege …." *Id.* at 1417 (emphasis added).[3]

DC's entire motion is based on such manifestly inapposite cases. In *all* such cases the courts found that disclosure of information to the government waived attorney-client privilege because the disclosures were made by the targets of investigation to *avoid investigation and prosecution*. DC attempts to evade this crucial distinction based on no more than this: "the choice defendants had was the same as in those cases." Motion at 8. The choice was not the "same."

Where privileged documents are stolen, the crime itself necessarily results in the involuntary dissemination of privileged documents. A waiver of privilege based on turning over evidence of that crime to law enforcement officials so that they can properly assess and prosecute the crime turns basic notions of fairness, privilege, and the role of law enforcement in protecting crime victims on their head. A victim of a theft of privileged documents must be able to provide copies of the stolen materials to law enforcement without risk of waiver, so that officials can attempt to solve the crime and so that the very important social interests in deterring and punishing such

---

[3] *See also In re Martin Marietta Corp.*, 856 F.2d 619, 622-23 (4th Cir. 1988) (defense contractor subject to fraud investigation by the government waived attorney-client privilege in disclosing documents to government to avoid indictment and to negotiate settlement); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 291, 302 (6th Cir. 2002) (health care company subject to fraud investigation waived privilege when it disclosed privileged materials to the Justice Department to negotiate settlement of investigation into Medicare and Medicaid fraud); *Permian Corp. v. United States*, 665 F.2d 1214, 1226 (D.C. Cir. 1981) (companies subject to securities fraud investigation waived privilege when they disclosed documents to the SEC during SEC investigation); *In re Qwest Comms. Int'l*, 450 F.3d 1179, 1181 (10th Cir. 2006) (target waived privilege by disclosing protected materials during investigations by the SEC and the U.S. Attorneys Office).

The cases cited by DC from the "federal district courts in California" and the "California state courts" are similar. *See United States v. Reyes*, 239 F.R.D. 591, 596 (N.D. Cal. 2006) (waiver of privilege where company disclosed information to the SEC and Department of Justice while the company was under scrutiny after earnings restatement); *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229, 1223, 1234 (2004) (company waived privilege by providing documents to the SEC and the U.S. Attorney's Office in the middle of government investigation of improperly recorded revenues).

thefts can be vindicated.  Without such protection, such crimes could not reasonably be reported, investigated, or prosecuted.  The broad waiver DC seeks would substantially impede the reporting, investigation, and prosecution of such thefts, because victims could not effectively report the crime or provide the bases to prosecute the crimes – even under subpoena – without a wholesale waiver of privilege.  Notably, DC does not and cannot cite a single case that endorses its radical pro-criminal, anti-enforcement position.

b.    <u>Numerous Authorities Permit Disclosure Of Documents To The Government Without Waiver Of Privilege</u>

The law is clear that when the Government and a private party have a joint interest in the prosecution of an underlying crime, the disclosure of privileged material to the Government is subject to a joint prosecution privilege and there is no waiver of the attorney-client privilege.  For example, in  *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992), another court in this District held that sharing privileged materials between the plaintiffs and the Federal Trade Commission, who were both investigating the same alleged fraud, was subject to the "joint prosecution privilege" and did not waive privilege.  *See also Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) (sharing of work product between government and counsel for *qui tam* relator in "whistleblower" case protected by joint prosecution privilege).

The Second Circuit has made clear that waiver is inappropriate where the third party and the government "may share a common interest in developing legal theories and analyzing information" and have entered into an express agreement to maintain the common-interest privilege.  *In re Steinhardt Partners L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) ("Establishing a rigid [waiver] rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

1  maintain the confidentiality of the disclosed materials.").

2          The joint-prosecution privilege exists where "(1) the communications were

3  made in the course of a joint [prosecution] effort, (2) the statements were designed to

4  further the joint [prosecution] effort, and (3) the privilege has not been waived."

5  *Burroughs*, 167 F.R.D. at 686 (citing *United States v. Bay State Ambulance & Hosp.*

6  *Rental Serv.*, 874 F.2d 20, 28 (1st Cir.1989)).  Here, all three elements are easily met.

7  The provision of the Stolen Documents were made in the course of the Government's

8  ongoing criminal investigation of a theft of Toberoff & Associates' privileged legal

9  files, were designed to further that investigation, and were provided to the

10  Government subject to an express agreement to preserve confidentiality and the

11  privileged status of the material.

12          Numerous courts have refused to find a waiver of privilege where confidential

13  materials were produced pursuant to an express agreement designed to protect the

14  privileged and confidential status of the materials, as was the case here.  Daum Decl.

15  Exs. B-C.  *See In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 284 (S.D.N.Y.

16  1995) (finding, based on *Steinhardt,* no waiver of privilege where United States

17  Attorney "agreed to hold all materials produced … in confidence"); *Jobin v. Bank of*

18  *Boulder (In re M & L Bus. Mach. Co.)*, 161 B.R. 689, 696 (D. Colo. 1993) (no

19  waiver of privilege where disclosing party took "substantial steps to ensure that its

20  disclosures to the U.S. Attorney would be kept confidential").[4]

21          As the cases cited above make clear, DC's misleading assertion (Mot. at 9) that

---

[4] *See also United States v. Billmyer*, 57 F.3d 31, 37 (1st Cir. 1995) (keying waiver analysis on "what had been disclosed to the government and on what understandings"); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997) (the government did not waive its governmental investigative privilege as to a third party by providing privileged materials to a party under investigation, even without a confidentiality agreement); *Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 644-45 (S.D.N.Y. 1981) (no waiver if "the right to assert the privilege in subsequent litigation is specifically reserved at the time the disclosure is made"); *SEC v. Amster & Co.*, 126 F.R.D. 28, 29-30 (S.D.N.Y. 1989) (if party entered into an agreement with SEC to maintain confidentiality of disclosed documents, privilege would not be waived against subsequent litigants).

80553.1                                                    9

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

somehow only the Eighth Circuit in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (*en banc*) (holding that documents retained privilege in civil litigation even where the target of an investigation "disclosed [] documents in a separate and nonpublic SEC investigation"), has ever permitted privilege to be maintained on documents disclosed to the government in a situation compatible to the one here is dead wrong.  The truth is the opposite.  At a minimum, where there is a joint prosecution interest with the government, and an express agreement to maintain the privilege, the privilege is preserved.[5]

Moreover, the Ninth Circuit has never disagreed with the Eighth Circuit's position in *Diversified Industries*.  Rather, the Ninth Circuit has left open the question whether disclosure to law enforcement authorities constitutes a waiver, even where the disclosing party is the target of the investigation of a crime, rather than the victim. *See, e.g., United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003).  Moreover, under long-established Ninth Circuit precedent, disclosures pursuant to a court-enforceable subpoena do ***not*** waive the attorney-client privilege.  *Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (party does not waive privilege "for documents which he is compelled to produce").  Accordingly, at a minimum, any order from this Court requiring the production of privileged material should be stayed pending writ review in order to give the district court and if necessary the Ninth Circuit the opportunity to address the important privilege issues at stake here before any production is mandated.  *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (noting stay of discovery order to protect discovery immunity).

Finally, DC misleadingly claims that the government has not "interposed" an objection to producing this material.  DC fails to disclose to the Court that when DC asked the government whether it could state that the government did not object to

---

[5] *See also Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 284 (8th Cir. 1984) (waiving privilege of report of internal investigation produced to the SEC "could deter such inquiries, which should not be chilled as a matter of policy").

producing the materials, the government said DC could not do so. Kendall Decl. ¶ 4.

The government told DC that if DC suggested that the government had no objection

to disclosure, it would be misrepresenting the government's position. *Id.*

### C.    Issue 9:  Communications Between David Michaels And The Siegels

#### 1.    This Issue Has Already Been Decided

DC explicitly brought up this issue in connection with its prior motion to

compel, and requested that defendants "be ordered to produce the communications

between Mr. [David] Michaels and the Siegels starting in November 2005, when Mr.

Michaels became adverse to Toberoff." Docket No. 160 at 37-38. DC made the

exact same "failure to log" and "waiver" arguments that it makes now. *Id.*

Defendants, in response, clearly explained how such documents were logged, and

that no waiver had occurred. *Id.* at 72-73. The Court, in ruling on the topic, *denied*

DC's motion in this respect, except for one document which is not a David

Michaels/Laura Siegel communication (Docket No. 209 at 12). There is no basis to

revisit that ruling.

#### 2.    The Siegel-Michaels Communications Are Privileged

Notwithstanding the Court's prior ruling, DC's argument in favor of producing

communications between David Michaels and the Siegels fails as a matter of law.

DC argues that such communications are not privileged because Mr. Michaels sought

to secure the Siegels as clients and/or because such communications were

"unauthorized" by Mr. Toberoff. Mot. at 15. This argument does not make sense:

Michaels communicated with the Siegels in connection with his potential

representation of them, and discussed their case, based on privileged and confidential

information he obtained while working for Toberoff & Associates as their attorney.

It is well-established that "consulting" an attorney as to retention, if any, is

considered to entail the provision of "legal advice" and is protected by the attorney-

client privilege. *See Barton v. United States Dist. Court*, 410 F.3d 1104, 1108 (9th

Cir. 2005) ("privilege applied to pre-employment communications with an attorney

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

1  by a prospective client").[6]  Thus, there is no basis to assert that Michaels'

2  communications with the Siegels are not privileged, regardless of whether he was

3  attempting to "steal" a client from Toberoff & Associates.

### 3.  Privilege Has Not Been Waived As To Communications Between David Michaels And The Siegels

5       Nor was the privilege waived as to communications between David Michaels

6  and Laura Siegel.  DC argues that, because the general subject matter of Michaels' e-

7  mails to the Siegels was given in interrogatory responses, the detailed "contents" of

8  the communications were somehow disclosed and the attorney-client privilege

9  waived.  Mot. at 13.   However, the disclosure that documents or communications

10  exist or their basic subject matter does not waive privilege; only the disclosure of the

11  specific *contents* of the communications, which did not occur here, would waive

12  privilege.  *See Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18,

13  24 (9th Cir. 1981) ("[V]oluntary disclosure of the *content* of a privileged attorney

14  communication constitutes waiver of the privilege ....") (emphasis added); *Chevron*

15  *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (noting waiver extends

16  "only [] to communications … actually disclosed").  The disclosure of the basic

17  subject matter of the Siegel/ Michaels communications – the Siegels' potential

18  retention of Michaels – could hardly waive privilege as to the actual substance of the

19  underlying communications.[7]  DC does not point to any instance where the Siegels

20  disclosed the specific "contents" of the communications, as opposed to the subject, or

21

22
_____

23  [6] *See also United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988) ("[I]nitial statements made while Pilgrim intended to employ Gerace were privileged even though the employment was not accepted."); *Liu v. Real Estate Inv. Group, Inc.*, 771 F. Supp. 83, 86

24  (S.D.N.Y. 1991) ("[T]he duty to preserve confidentiality extends to preliminary consultation by a prospective client even though actual employment does not result.");

25  *McCormick on Evidence* § 88 (6th Ed. 2006) (same).

26  [7] *See Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (holding that a waiver occurs only when "through [an] affirmative act [such as filing a complaint], the asserting party puts the privileged information at issue....").

27
28     DC argues elsewhere that the "subject matter" of attorney-client communications was not described in sufficient detail on defendants' privilege logs.  Motion at 3.  *See also* Doc. 209 at 10 (April 11, 2011 Order noting DC's inconsistent positions).

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

put such communications "at issue."

Moreover, DC asks for far more communications than those between David Michaels and the Siegels: specifically, all communications in any way "related" to the Siegel-Michaels communications, and more specifically, all communications between the Siegels and Mr. Toberoff regarding the Siegels' communications with Michaels.  There is no logical or legal reason why communications between a rogue attorney and the Siegels would waive privilege between *Mr. Toberoff* and the Siegels. Nor does DC provide any example of communications between the Siegels or Mr. Toberoff regarding David Michaels, or any basis for a waiver of privilege as to such communications.

Finally, DC's argument that defendants' privilege logs supposedly did not identify the Siegel/Michaels communications (Mot. at 13), is without merit.  These documents were not logged in response to DC's ***first*** set of production requests because none of those requests were directed at the Timeline or the Siegels' contacts with the Timeline's author.  On December 10, 2010, *before* defendants served their privilege logs in response to DC's first set of requests, DC served its second set of requests that specifically requested documents relating to the Timeline and its author, giving the clear impression that the absence of requests as to the Timeline in the first requests was deliberate.  Thus, to ensure that the logs were properly responsive to DC's requests, Defendants specifically logged Timeline-related documents in response to DC's second set of requests which were directed at the Timeline.  Moreover, as discussed in Section D.2 below, a delay of weeks between providing responses to a document request and producing a privilege log cannot constitute a waiver of the privilege.  Accordingly, these documents were properly logged and all privilege has been preserved.

### D.    Issue 10:  Communications Relating to Kevin Marks' October 2010 Declaration

#### 1.    Communications With Kevin Marks Are Privileged

There is clearly a common interest between Marks, the Siegels, and the

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

Toberoff Defendants concerning Marks' representation of the Siegels.  It is beyond
dispute that both Marks and Toberoff have represented the Siegels in an ongoing
dispute over a single issue – the statutory termination of the Siegel family's copyright
grants to Superman.  As such, both Marks and Toberoff clearly share a duty to
maintain the attorney-client privilege as to communications between Marks and the
Siegels, as DC concedes.  Mot. at 20 ("[Marks'] sole possible interest is in
maintaining and preserving whatever privileges the Siegels held concerning their
communications with him.").  Moreover, DC's claim that to assert a common interest
privilege, interests must be "identical" (*id.*) is manifestly incorrect.  *See Eisenberg v.
Gagnon*, 766 F.2d 770, 787-788 (3d Cir. 1985) (recognizing that "communications to
an attorney to establish a common defense strategy are privileged even though the
attorney represents another client with some adverse interests"); *Griffith v. Davis*,
161 F.R.D. 687, 692 n.6 (C.D. Cal. 1995) (holding that the interest applies even if the
parties' interests may "be adverse in some respects").  Notwithstanding this, DC can
point to no basis for concluding that Marks is "adverse" to any of the defendants.

The logged communications between Marks and Toberoff were directly in
support of their respective attorney-client relationships with the Siegels and directly
related to Marks' prior representation of the Siegels.  *See Damron v. Herzog*, 67 F.3d
211, 213-14 (9th Cir. 1995) (ruling that when the attorney-client relationship is
terminated and the attorney becomes involved in a matter "substantially related to
that for which he was previously retained," the attorney-client relationship applies
*even though the attorney is no longer retained by the client*).  It is clear that in the
interests of the client, Toberoff must be allowed to confer with Marks concerning his
prior representation of the Siegels without fear of a privilege waiver.

DC attempts to bolster its quixotic position that somehow two attorneys who
represented the same clients in the same ongoing matter do not share a common
interest by suggesting that Marks "made clear in August 2002 that he did not share a
common interest with Toberoff." DC's sole source for this assertion is double

hearsay in the unreliable, anonymous Timeline that Marks advised the Siegels that "'he would testify in court against the Siegels if they accepted [Toberoff's] offer because he believe[d] there ha[d] already been an agreement reached'" between the Siegels and DC.  Mot. at 19.  First, regardless of the Timeline, there can be no dispute that the documents at issue—communications between defendants and Marks made in *2010* concerning Marks' representation of his former clients—must be privileged.  Second, DC fails to disclose to this Court that, in the related *Siegel* litigation, it attempted to reopen discovery based on that exact same statement in the Timeline, and Judge Larson rejected that effort.  *See* Daum Decl., Exs. D-E (*Siegel*, Docket Nos. 476, 478).  Notably, throughout that motion, DC relied on the Timeline's characterizations to claim that Marks and the Siegels were somehow "hiding evidence" that would have supplied DC with grounds to "impeach" Marks' testimony.  *See* Daum Decl., Ex. D at 38-41.  The Court rejected DC's claim that Marks' interests were not aligned with the Siegels.  *Id.*, Ex. E.

## 2.    There Has Been No Waiver Of Privilege

DC's argument that privilege was waived because defendants first logged the correspondence between Kevin Marks and the Toberoff Defendants' counsel on February 18, 2011 is misguided.  DC's argument is that a three-week interval (from January 24, 2011 to February 18, 2011) between serving a document response and a privilege log waives privilege.  As this Court is well aware, such a ruling is completely contrary to ordinary practice in this and other districts, and, given the rigors of preparing detailed privilege logs in a large case, it is far more the norm than the exception for complete logging to take many more weeks than occurred here.  Courts have repeatedly rejected the argument that much longer delays constitute a waiver of privilege.  *See Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 182-83 (N.D. Cal. 1990) (six-week privilege log delay did not justify waiver).[8]

---

[8] *See also Jumping Turtle Bar & Grill v. City of San Marcos*, 2010 U.S. Dist. LEXIS 119390 (S.D. Cal. Nov. 10, 2010) (ten-week delay in the production of privilege log did not result in a waiver, even though privilege was not asserted with the initial discovery

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

Finally, DC's argument that it "is entitled to take discovery concerning this declaration in aid of its federal and state-law claims" (Mot. at 17), in order to discover purportedly "inconsistent" statements by Marks, has absolutely no bearing on the privileged status of correspondence concerning Marks' declaration.  The communications between the Siegels' current counsel and former counsel relating to the former counsel's representation, the Siegels' termination interest and this litigation are privileged, regardless of the goal of DC's discovery.  Moreover, the cases on which DC relies are not remotely on point.[9]

DC's "waiver" argument is also belied by its own conduct in the Siegel litigations. There, DC did not serve a privilege log until **ten months** after DC's responses were due, while DC's effective parent, Warner Bros., did not produce a privilege log until **thirteen months** after the Siegels' requests had been served. Under DC's current arguments, DC and Warner would certainly have waived all privilege in the closely related Siegel litigations.

DC fails to disclose that Marks has specifically testified and been subject to DC's cross-examination regarding DC's erroneous contention that DC and the Siegels had reached any enforceable agreement in August 2002:

[Marks]:  Well, if the question is did I think at this point there was a final, binding, enforceable agreement, the answer would be no . . . .

*See* Daum Decl., Ex. F at 154:12-155:2 (emphasis added).

There is simply no inconsistency in Marks' statements justifying DC's latest

---

responses); *Tibble v. Edison Int'l*, 2008 U.S. Dist. LEXIS 106999, at *4–7 (C.D. Cal. Dec. 30, 2008) (holding that, where defendants served timely written responses that asserted the attorney-client privilege, a two-month delay in providing a privilege log did not waive privilege); *Kob v. County of Marin*, 2009 U.S. Dist. LEXIS 107376, at *14–16 (N.D. Cal. Nov. 3, 2009) (ruling that a delay of six weeks in producing a privilege log is not enough to waive privilege).

[9] *See, e.g., United States v. Hale*, 422 U.S. 171, 176 (1975) (refusal to testify at first trial cannot be used as an "inconsistent statement" at a second trial); *Greenwald v. United States*, 353 U.S. 391, 418-19 (1957) (pleading the Fifth Amendment before prior grand jury could not be used as the basis of an "inconsistent statement" at trial); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (affirming rejection of testimony where witness was biased).

redundant fishing expedition for privileged documents.  This is especially true in light of the fact that a Rule 54(b) judgment has been entered in *Siegel* on DC's Third and Fourth Counterclaims rejecting DC's contention that a "settlement agreement" was reached with the Siegels.  *Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1136-39 (C.D. Cal. 2008); Daum Decl., Exs. G-H (*Siegel,* Docket Nos. 659-660).  DC is bound by such judgment in this action.  Daum Decl., Exs. G-H; *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) ("[A] 54(b) ruling in fact has res judicata ramifications.").[10]  Because DC is precluded from re-litigating in this case its erroneous "settlement agreement" contentions, discovery regarding such contentions must not be permitted.

E.    **Issue 11:  Defendants' Other Objections**
1.    **Defendants Properly Produced Documents And Attempted To Meet and Confer**

As a preliminary matter, while DC complains that "only one new document" was produced in response to its second set of discovery requests (Mot. at 22), DC omits that due to the largely duplicative nature of this action, the overwhelming majority of relevant documents were already produced in *Siegel*, and were duly produced in this action by reference to responsive documents produced in *Siegel*, pursuant to the order expressly stipulated to by the parties.  *See* Docket No. 133; Pet. Decl., Ex. L at 4; M at 3-4.  For example, with respect to the Toberoff entities, defendants specifically noted in response to DC's baseless complaints that they "have already produced by designation such entities' documents relating to Superman, Superboy, the Siegels, and/or the Shusters."  Pet. Decl., Ex. M at 3.

After feigning that defendants are hiding documents or failing to cooperate in discovery, DC then distorts the discovery requests, objections and responses.  For

---

[10] *See also Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010) (approving lower "court's orders [that] found preclusive the partial final judgment under Federal Rule of Civil Procedure 54(b)"); *Flores v. Emerich & Fike*, 2008 U.S. Dist. LEXIS 49385, *28-29 (E.D. Cal. June 17, 2008) (where a court has "entered final judgment pursuant to Rule 54(b) … there has been a final judgment" for preclusion purposes).

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

example, DC claims that it is entitled to "[a]greements between the Toberoff defendants, the Siegel heirs, the Shuster heirs, and/or third parties relating to Superman and[/]or Superboy," and implies such documents were not produced.  Mot. at 21.  With respect to each such request, Toberoff agreed to produce all non-privileged documents and did so.  *See* Motion, App. 1, at 35-38 (Requests, Nos. 1-4).

DC similarly claims that it is entitled to various documents relating to a potential "ownership interest" in Superman, Toberoff's "investigation" of the Stolen Documents, Toberoff's relationship with Ari Emanuel, and the corporate structure of the various Toberoff entities (Mot. at 21), citing a variety of requests.  However, DC omits that Toberoff produced documents responsive to Requests No. 10-12, 19, 39; clarified that he had no responsive documents in response to Request Nos. 20, 22 (which DC refers to in its motion, but does not include in its Appendix); offered to meet and confer as to the grossly overbroad Request Nos. 13, 35-38, and 56-58, and stated that Request Nos. 2 and 23 related to the grand jury investigation and that withheld privileged documents were not discoverable for the reasons set forth regarding Issue 8, *supra*.

Thus, of the twenty requests cited by DC, only seven are really at issue, and all could have been resolved had DC simply and substantively met-and-conferred on them as required by Local Rule 37-1.  For example:

**Document Request No. 13**

All DOCUMENTS RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

Mot., Appendix 1 at 41-42.  As set forth in Defendants' response, this request "could be reasonably construed to request … documents created and/or produced by Plaintiff and all documents relating to the exploitation of Superman and/or Superboy over the past 80 years."  *Id*.  DC now claims that "these exact concerns were addressed by the parties' December 7 stipulation and court order" (Mot. at 28); had DC met and conferred, and confirmed that it did not seek such documents, defendants could have confirmed that all responsive documents had been produced.

Similarly, DC sought numerous documents relating to Ari Emanuel:

**Document Request No. 35**

All DOCUMENTS RELATING to Ari Emanuel.

**Document Request No. 36**

All DOCUMENTS RELATING to any COMMUNICATIONS with Ari Emanuel.

**Document Request No. 37**

All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU signed with Ari Emanuel.

**Document Request No. 38**

All DOCUMENTS RELATING to any contributions by YOU to the IP Worldwide joint venture dated February 2, 2002 between DEFENDANT Pacific Pictures Corporation and Ari Emanuel.

Mot., Appendix 1 at 57-60.

In response, defendants offered to meet-and-confer, and properly noted that "Mr. Toberoff has a long-standing relationship with Mr. Emanuel [the head of the William Morris Endeavor Agency (WME)] that encompasses matters having nothing to do with this litigation." Pet. Decl., Ex. K at 4. Defendants further noted that 142 pages of "Ari Emanuel" documents relevant to this case were produced by designation. *Id.*, Ex. M at 2. While DC offered a somewhat revised request on this issue, it still sought "every document 'related' to any business dealing between Mr. Toberoff and Mr. Emanuel," including documents having nothing to do with this litigation. *Id.* Because the demand was overly broad, unduly burdensome and sought irrelevant documents, defendants offered instead to produce "[a]ll non-privileged communications between Mr. Emanuel and any defendant relating to Superman, Superboy[,] the Siegel Heirs and/or the Shuster Heirs." *Id.* This proposal – an offer to produce any document conceivably related to this case – addressed both sides' concerns and was more than reasonable. DC, however, rejected it. Instead, DC demands to know every aspect of Mr. Toberoff's and Mr. Emanuel's ten year business relationship. DC offers no plausible explanation as to why such discovery is

1  even remotely relevant.

2       DC further distorts defendants' other responses and objections.  One of DC's

3  requests, for example, seeks "All DOCUMENTS RELATING to any efforts YOU

4  have made to sell, lease, license or otherwise exploit any rights in SUPERMAN

5  and/or SUPERBOY" (Mot. at 23, citing Request No. 16).  DC claims that it "wants

6  and is entitled to know about all of defendants' efforts to market and exploit the

7  Siegels' and the Shusters' putative rights."  Mot. at 23.  Toberoff, however, has

8  already produced documents in response to that request.  *See* Response No. 16; Pet.

9  Decl., Ex. M at 5 ("[D]efendants produced by designation and logged the responsive

10  documents that are related specifically to Superman and the Siegel and Shuster

11  families.").  DC fails to disclose this fact.

12       Defendants objected to a ***separate*** request, Request No. 17, for all documents

13  "RELATING to any *potential* investors or other PERSONS who have expressed

14  interest in purchasing or otherwise investing in any rights in SUPERMAN and/or

15  SUPERBOY."  Defendants objected that as written that request encompassed literally

16  *any* document in Toberoff & Associates', an entertainment law firm's, possession

17  "'relating' to every motion picture studio."  Pet. Decl., Ex. M at 5.  In response, DC

18  confirmed that it sought literally every document in Mr. Toberoff's possession

19  "relating" to any motion picture studio ("Yes – that is the point," Mot. at 23), but

20  now pretends its request was limited to documents involving the "Siegels' and the

21  Shusters' putative rights," when it clearly was not, nor written as such.  *Id.*

22       DC also sought a broad array of irrelevant documents relating to Toberoff's

23  role with the Toberoff entities:

24  **Document Request No. 56**

25  All DOCUMENTS RELATING to your role and ownership interest in Pacific
   Pictures Corporation, including, articles of organization, operating agreements,
26  minutes, capital tables or other DOCUMENTS evidencing capital accounts or
   capital structure, filings, income statements, business plans, etc.

27  **Document Request No. 57**

28  All DOCUMENTS RELATING to your role and ownership interest in IP

Worldwide LLC, including, articles of organization, operating agreements,
minutes, capital tables or other DOCUMENTS evidencing capital accounts or
capital structure, filings, income statements, business plans, etc.

**Document Request No. 58**

All DOCUMENTS RELATING to your role and ownership interest in IPW,
LLC, including, articles of organization, operating agreements, minutes, capital
tables or other DOCUMENTS evidencing capital accounts or capital structure,
filings, income statements, business plans, etc.

Such requests could easily be construed to request virtually any document
relating to any such entity, as Mr. Toberoff was heavily involved in each. Defendants
properly objected to these requests.  In its motion, DC refers to its requests as merely
pertaining to "Toberoff's role and ownership interest" in such entities (Mot. at 21).
DC still cannot salvage these requests.  First, Mr. Toberoff's "role," as opposed to his
"title" or "position," still encompasses the entirety of his participation in such
entities, particularly as modified by DC's broadly defined term "RELATED."  If DC
were truly concerned with documents sufficient to evidence Mr. Toberoff's position
in such companies it could and would have said so.  Moreover, defendants expressly
offered "to produce documents that establish these entities' basic corporate structure
and ownership," which DC has rejected. Pet. Decl., Ex. M at 3.  DC also went much
further, and well outside the bounds of relevancy, with its demand for all documents
"evidencing capital accounts" (*e.g.,* all bank statements of any kind) or all "business
plans" from the entities, for decades, without any limitation whatsoever and with no
showing that any such documents are relevant at all to its case.

      **2.     DC Has The Burden To Narrow Its Own Overbroad Requests**

DC attempts to dodge the core issue of its overbroad requests.  DC claims that
it is not its burden "to go request-by-request to … propose narrowing of its requests
to defendants."  Mot. at 25.  Its apparent goal is to distract from its own overbroad
requests and to have the Court instead overrule defendants' objections without review
of the requests that prompted them.  For example, DC requested of defendant IPW:

**[IPW] Document Request No. 27**

All DOCUMENTS RELATING to any past, current, or planned business
activity of IPW.

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

**Document Request No. 28**

All DOCUMENTS RELATING to any past, current, or planned property in which IPW held, holds, or will hold an interest.

**Document Request No. 29**

All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IPW.

**Document Request No. 30**

All DOCUMENTS RELATING to any past, current, or planned client of IPW.

**Document Request No. 31**

All DOCUMENTS RELATING to any past or current member, employee, or shareholder of IPW.

Motion, Appendix I, at 142-145. In essence, such requests ask for every single document in the possession of the entity, IPW. DC repeated these requests with respect to each and every Toberoff entity. *See* IPWW Requests Nos. 32-36 (Appendix 1, at 123-126); PPC Requests Nos. 31-35 (*id.* at 97-100). DC attempts to salvage these impermissibly overbroad requests by only discussing them in the abstract. But a blanket order overruling defendants' objections would make no sense absent clarification of the documents DC actually seeks and requests that are drafted or narrowed accordingly.

Moreover, in response to these and other overbroad requests, defendants did not "just refuse" to produce documents, as DC claims. Mot. at 22. Rather, defendants designated responsive documents that had already been produced, and offered to meet-and-confer as to those of DC's requests that seemed amenable to reasonable tailoring. In response, DC claims that it is somehow defendants' burden to tailor DC's discovery requests and then produce documents. It assuredly is not.

For example, *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) held that "[b]efore the Court will require an objecting party to answer or provide a privilege log … the Court must have some guidance – from either the parties or some other source – as to what portion of the request is reasonably answerable." DC failed to delineate what it actually sought with respect to these

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION

requests, which were "so broad and open-ended that Defendant could not possibly fully determine – without undue burden – which documents would be responsive." *Id.* Under such circumstances, courts routinely order the parties to meet-and-confer to tailor overbroad requests to what is reasonably answerable. *See, e.g., Kalima v. Regents of the Univ. of Cal.*, 2007 U.S. Dist. LEXIS 40887, at *5 (N.D. Cal. May 21, 2007) ("[T]he Court agrees with defendant that plaintiff's discovery requests, as currently framed, are vastly overbroad. The Court orders the parties to meet and confer regarding production of documents.").[11] DC cites no authority for the proposition that a party is obliged to respond to an overbroad request by serving all documents that might be responsive. It is neither defendants' nor the Court's burden to narrow DC's overbroad requests or divine the categories of documents DC really wants that have not already been produced and designated by defendants.

Finally, it is clear from the scope of DC's requests and its refusal to meet-and-confer that DC seeks information about entirely unrelated business ventures involving Mr. Toberoff that have nothing to do with Superman or this litigation. There is no basis for such broad discovery. Moreover, given that Toberoff is an attorney who specializes on behalf of authors in intellectual property, copyright infringement and rights recapture through statutory termination and reversions, some of which involve DC's parent Warner Bros., there is an obvious potential for abuse, where discovery is used to provide unrelated business benefits to DC/Warner Bros.

### 3. DC's Contention That Defendants Raised "Boilerplate" Objections That May Be Overruled Lacks Merit

There is also no basis for DC's assertion that defendants waived their objections or that such objections were "boilerplate." Defendants' response to DC's

---

[11] *See Veliz v. Cintas Corp.*, 2009 U.S. Dist. LEXIS 36323, at *12 (N.D. Cal. Apr. 23, 2009) (where "requests were 'relevant yet overbroad,'" the court "instructed the parties to meet and confer to limit the scope of plaintiffs' requests"); *Sullivan v. Kelly Servs.*, 2008 U.S. Dist. LEXIS 29318, at *3 (N.D. Cal. Mar. 4, 2008) ("Defendant's objection that the requests would be overly burdensome can be addressed by plaintiff's agreement to limit the scope of her requests.").

1   requests provided numerous specific reasons why the requests were grossly

2   overbroad on their face.  *See, e.g.*, Motion, Appendix I at 124 (IPWW Request No.

3   33) (stating "this request … is compound, duplicative, overbroad, burdensome and

4   oppressive, since it requests documents "RELATING" to any property IPWW has

5   ever owned or may own in the future").

6          DC raises numerous arguments as to defendants' trade secret and "other

7   protections" objections.  The issue is that defendants cannot meaningfully tailor their

8   objections if DC's requests for production seek everything under the sun.  These

9   objections, moreover, are entirely proper in the context of DC's requests, which seek

10  wholly irrelevant documents concerning Mr. Toberoff's business dealings on matters

11  having nothing to do with Superman or this litigation.  For example, IPW cannot

12  possibly identify every possible claim of privilege or protection for every document

13  that would be at issue in response to a request for "DOCUMENTS RELATING to

14  any past, current, or planned business activity," since that request calls for production

15  of every document relating to IPW regardless of its relevance to this case.

16         DC further demands that Defendants' anti-SLAPP objections be withdrawn or

17  overruled.  This request also lacks merit and should be denied.  This Court previously

18  ruled that California's anti-SLAPP discovery stay does not apply in federal court.

19  Defendants, while objecting to that ruling with the District Court, have fully

20  complied with that order and participated in discovery, and Defendants have not

21  withheld from production any documents in contravention of that order.

22         Notably, however, since the prior order was entered, the United States Court of

23  Appeals for the First Circuit has issued a lengthy and persuasive published opinion

24  that the anti-SLAPP discovery stay must apply in federal court.  *Godin v. Schenks*,

25  629 F.3d 79, 87 (1st Cir. 2010).  Just as defendants did in their motion for a stay, that

26  opinion relies on Justice Stevens' decision in *Shady Grove Orthopedic Assocs., P.A.*

27  *v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1450 (2010), as the controlling opinion of the

28  Supreme Court in that case and makes clear that under *Shady Grove* anti-SLAPP

discovery stays apply in federal court. *Godin*, 629 F.3d at 86-88. As *Godin* makes clear, the Ninth Circuit's contrary ruling in *Metabolife* is inconsistent with *Shady Grove,* which is controlling.[12] Defendants respectfully request that the Court consider the new authorities cited herein before making any further disclosure order.[13]

Aside from the issues relating to the "overbreadth" of DC's Requests, the "other protections" or privileges (*e.g.,* trade secrets) issue, and the anti-SLAPP issue, DC has not raised, and the parties never conferred over, any other specific concern DC has regarding Defendants' General Objections. The most constructive way to address these issues is to deny DC's motion, and order DC to meet and confer to clarify the relevant documents that it seeks.

## III.  CONCLUSION

As set forth above, DC's motion should be denied.

Dated:  April 11, 2011                     KENDALL BRILL & KLIEGER LLP

                                           By   /s/ Laura W. Brill
                                           Attorneys for Defendants Marc Toberoff,
                                           Pacific Pictures Corporation, IP Worldwide,
                                           LLC, and IPW, LLC

---

[12] *See Miller v. Gammie,* 335 F.3d 889, 893 (9th Cir. 2003); *California Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087, 1093-95 (9th Cir. 2008). In addition, Judge Wilken has recently exercised discretion to stay discovery of even non-California claims upon the appeal of an anti-SLAPP motion concerning related claims. *See In re NCAA Student-Athlete Name & Likeness Litig.*, 2010 U.S. Dist. LEXIS 139724, at *12-20 (N.D. Cal. Dec. 17, 2010).

[13] Defendants cited *Godin* to the Ninth Circuit, which declined to issue a writ of mandamus and dismissed related appeals for lack of jurisdiction, without addressing the merits. Docket Nos. 139, 144, 155. Such orders present no barrier to this Court's consideration of the issue. *See Poweragent Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1190–1191 (9th Cir. 2004) (denial of petition for writ of mandamus does not establish "law of the case" and has little or no effect on subsequent proceedings).

TOBEROFF DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL PRODUCTION