KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (195889)
 *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
 *ndaum@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>             Plaintiff,<br><br>     vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>             Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANT MARC TOBEROFF'S OPPOSITION TO DC COMICS' MOTION TO COMPEL SIX INTERROGATORY RESPONSES**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date: April 25, 2011<br>Time: 10:00 a.m. |

DEFENDANT MARC TOBEROFF'S OPPOSITION TO DC COMICS' MOTION TO COMPEL SIX INTERROGATORY RESPONSES

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT .............................................................................................. 2

    A. DC's Motion Should Be Denied Because DC Failed To Meet And Confer As To Five Of The Six Interrogatories At Issue ................................................................................................ 2

    B. There Is No Basis To Compel Further Interrogatory Responses ........................................................................................ 3

        1. Interrogatory No. 9 ......................................................................... 3

            a. Defendants Fully Responded To The Question Posed By Interrogatory No. 9 ................................. 4

            b. Interrogatory No. 9 Impinges On The Joint Prosecution Privilege ............................................... 6

            c. DC's Retaliatory Claims And Motions Are Precisely The Type Of Claims The Anti-SLAPP Statute Seeks To Prevent .......................... 7

        2. Interrogatory No. 25 ....................................................................... 8

        3. Interrogatories Nos. 13 and 14 ..................................................... 10

        4. Interrogatories Nos. 17 and 18 ..................................................... 12

III. CONCLUSION ....................................................................................... 14

## TABLE OF AUTHORITIES

**Federal Cases**

*Burroughs v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) ................................................................ 6

*Byrne v. Oester Trucking*,
386 F. Supp. 2d 386 (S.D.N.Y. 2005) ........................................................ 5

*Godin v. Schenks*,
629 F.3d 79 (1st Cir. 2010) ........................................................................ 8

*In re Grand Jury Subpoena*,
357 F.3d 900 (9th Cir. 2004) ..................................................................... 9

*In re Steinhardt Partners L.P.*,
9 F.3d 230 (2d Cir. 1993) .......................................................................... 2

*Nickerman v. Remco Hydraulics, Inc.*,
2007 WL 3407437 (N.D. Cal. Nov. 13, 2007) .......................................... 5

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ................................................................... 7

*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
795 F. Supp. 329 (C.D. Cal. 1992) ...................................................... 2, 6

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
130 S. Ct. 1431 (2010) .............................................................................. 8

*United States v. Noble*,
422 U.S. 225 (1975) .................................................................................. 9

**Federal Statutes**

F.R.C.P. 33 ....................................................................................................... 1

**Other Authorities**

Charles Alan Wright *et al.*,
Fed. Prac. & Proc. § 2177 (2011) ..................................................... 1-2, 5

## I. INTRODUCTION

DC moves to compel further responses to six interrogatories served on defendant Marc Toberoff. Each seeks information regarding an investigation by the U.S. Attorney's Office of a theft, in which a rogue entry-level attorney at Toberoff & Associates stole reams of privileged documents from the firm's confidential legal files and delivered the stolen documents to DC's parent company, Warner Bros., in the midst of the closely-related Superman litigation.

DC's motion to compel additional responses to these six interrogatories, each of which has been answered, is remarkably unnecessary and misguided. Notably, DC did not meet and confer at all as to five of the six interrogatories issue at DC's motion, in violation of Local Rule 37-1. If DC had simply raised its concerns with defendants prior to filing its motion, it would have learned that almost all of its purported concerns are moot, and avoided this unnecessary motion. This motion is part of a pattern through which DC repeatedly brings overreaching and unnecessary motions to compel, while failing to meet and confer in good faith to resolve potential problems. DC's unsupported motions in themselves attempt to harass and burden Mr. Toberoff with unnecessary legal costs, and are part of DC's strategy to leverage its position against Mr. Toberoff's clients by attacking their counsel.

To the extent DC's motion raises any actual issues, it asks that Mr. Toberoff provide more "detailed" responses to overbroad interrogatories that he has already answered in full, and demands information as to matters that DC's interrogatories do not address. Mr. Toberoff has already responded in a straightforward and detailed manner to interrogatories that asked him to "describe" communications with the U.S. Attorney's Office. But DC demands a virtual blow-by-blow transcript of Mr. Toberoff's communications with the U.S. Attorney's Office and for Toberoff to narrate "everything" (Mot. at 7). This request is completely unwarranted, particularly as to the tangential issues that the interrogatories address, and is inconsistent with longstanding caselaw and practice under F.R.C.P. 33. *See* Charles Alan Wright *et al.*,

FED. PRAC. & PROC. § 2177 (2011) (when interrogatory "answers as a whole disclose a conscientious endeavor to understand the questions and to answer fully those questions as are proper, the rule has been satisfied."). DC's overzealous demands for further explication beyond the general subject matter of communications with the Government also invade the joint prosecution privilege that Toberoff and the U.S. Attorney share by virtue of their common interest in investigating the same crime. *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992); *In re Steinhardt Partners L.P.*, 9 F.3d 230, 236 (2d Cir. 1993). In short, there is no basis whatsoever for DC's motion to compel.

## II. ARGUMENT

### A. DC's Motion Should Be Denied Because DC Failed To Meet And Confer As To Five Of The Six Interrogatories At Issue

DC failed to meet and confer on five of the six interrogatories as to which it now seeks to compel further responses. DC's blatant failure to comply with Local Rule 37-1 alone justifies denial of the motion as to those interrogatories (Nos. 13, 14, 17, 18, and 25). DC's failure is particularly egregious here because if DC had properly conferred it would have learned that nearly all of its speculative concerns are misplaced, and could have easily avoided burdening this Court and defendants with yet another unnecessary motion. *See, e.g.,* Docket No. 95 at 57:10-14 (Court denied DC's unnecessary motion to "initiate discovery" as moot); Docket No. 209 at 13 ("The Court does not understand why this portion of the dispute could not have been resolved out of court.").

On February 4, 2011, DC sent a meet-and-confer letter as to Interrogatories 4, 5, 6, 8, 9 and 11 directed at Mr. Toberoff. *See* Declaration of Daniel Petrocelli ("Pet. Decl.") (Docket No. 207), Ex. J at 7-9. Defendants provided a detailed written response addressing DC's concerns. *See id.*, Ex. K at 5-6. However, DC brought this motion on an almost entirely different set of Interrogatories – Nos. 9, 13, 14, 17, 18 and 25 – of which DC conferred solely as to No. 9. DC's February 4, 2011 meet-

and-confer letter purports to acknowledge L.R. 37-1, but makes no reference *at all* as to the vast majority of the discovery DC complains of in its motion. Thus, *this motion* is the first time DC has raised any issues with respect to Interrogatories nos. 13, 14, 17, 18 and 25.

DC's cavalier conduct plainly contravenes Local Rule 37-1, which requires that *prior to* bringing a motion to compel the moving party "identify each issue and/or discovery request in dispute . . . and provide any legal authority which the moving party believes is dispositive of the dispute," so that the parties can meet-and-confer in a good faith attempt to resolve the matter. Due to DC's total disregard of the meet and confer obligation – designed to avoid burdening both the court and opposing parties with such unnecessary motions – the court should disregard DC's motion, direct DC to meet and confer, and should admonish DC that it acted improperly in bringing this motion without engaging in a meaningful meet and confer process and DC will risk sanctions if it ever does so again.[1]

**B.      There Is No Basis To Compel Further Interrogatory Responses**

1.      Interrogatory No. 9:

DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official, including anyone employed by the United States Attorney's Office for the Central District of California and/or the Federal Bureau of Investigation, regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

**Response to Interrogatory No. 9:**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff

---

[1] The Court has the power to protect Mr. Toberoff from these tactics, and it is in the interests of justice that the Court do so. Mr. Toberoff is an attorney targeted with a retaliatory lawsuit and a barrage of unwarranted discovery motions by Warner Bros. and DC. The retaliatory claims arise out of Mr. Toberoff's successful representation of the heirs and estate of the original authors of Superman. An anti-SLAPP motion and three motions to dismiss DC's baseless claims are pending and will soon be decided. DC's improper discovery tactics include its failure to reasonably coordinate scheduling, its demands that Toberoff respond to motions on which DC has not even met and conferred, and its refusal to grant reasonable requests for extensions of time to accommodate long-planned family vacations of Mr. Toberoff and his counsel. DC's abusive tactics have not stopped despite repeated requests from Mr. Toberoff and his counsel and will not stop absent reprimand and direction from this Court.

or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

• In or about November 2007: Toberoff met with Stanley Ornellas, of the Los Angeles FBI Field Office, regarding the Stolen Documents.

• Summer-Fall 2010: Toberoff held a telephone conference with Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorney's Office, and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office regarding the Stolen Documents, followed by an in person meeting with Mr. Kim and others of the U.S. Attorneys' Office. David Michaels was disclosed as suspected of having stolen the Stolen Documents and thereafter furnishing attorney-client privileged information to Warner Bros.

• September 9, 2010: Grand Jury Subpoena served on Toberoff requesting copies of the Timeline and Stolen Documents.

• September 27, 2010: Timeline and Stolen Documents provided to U.S. Attorneys Office by Kendall, Brill & Klieger pursuant to Grand Jury Subpoena, subject to an express agreement by the U.S. Attorney's Office that the U.S. Attorney's Office would hold such material as confidential and privileged, that such provision was made in furtherance of a common interest privilege, and that such provision was without waiver of the attorney-client privilege or attorney work product doctrine.

a. <u>Defendants Fully Responded To The Question Posed By Interrogatory No. 9</u>

As a preliminary matter, aside from DC's desire to gain access to privileged communications and to impose unnecessary and harassing discovery burdens on Mr. Toberoff, so as to chill his communications with law enforcement officials, there is little if any relevance to what Mr. Toberoff told the government about the theft.

Moreover, the answer provided by Mr. Toberoff more than adequately responds to DC's interrogatory. It describes in detail Mr. Toberoff's conversations with law enforcement officials concerning the "Timeline" and its author, and describes the subsequent grand jury subpoena and Mr. Toberoff's response to the subpoena. Mr. Toberoff's answer does not remotely compare with the vague, improper unresponsive answers given in any of the cases cited by DC. *See*

*Nickerman v. Remco Hydraulics, Inc.*, C 06-2555SI, 2007 WL 3407437 (N.D. Cal. Nov. 13, 2007) (interrogatory responses simply referred to "literally thousands of pages of documents" without specificity "that might support plaintiffs' . . . claims.").

DC nonetheless complains that Mr. Toberoff did not provide *additional* information in this interrogatory that DC did not ask for. DC seeks to "know what documents defendants shared with the government" (Mot. at 7), although it admits that such documents are already identified in Defendants' privilege log (*id.*); as well as "everything defendants said to initiate [the investigation] and their ensuing communications regarding its status" (Mot. at 7) and evidence of an "express agreement" concerning the privilege. None of this information was asked for or is reasonably required to respond to Interrogatory No. 9. *See Byrne v. Oester Trucking*, 386 F. Supp. 2d 386, 391-92 (S.D.N.Y. 2005) ("Had defendants desired [a certain, specific response] they could have fashioned their interrogatory to this effect. They did not, and therefore plaintiff's answer is sufficiently responsive.").

The interrogatory itself does not require Mr. Toberoff to relate "everything" said by him and the U.S. Attorney's Office, as DC now demands. Mot. at 7. The interrogatory asks Toberoff to "describe" communications, not to provide a virtual transcript. Construing DC's interrogatory in the manner DC demands would render it overbroad, unduly burdensome and unfair. Charles Alan Wright *et al.*, FED. PRAC. & PROC. § 2177 & n. 13 (2011) (noting that the use of such interrogatories to determine the precise substance of conversations is "unfair" and that "in general such details are better inquired into in a deposition of the person with a recollection of the events."). Toberoff objected to the interrogatory on this basis. *See, e.g.,* Declaration of Nicholas Daum ("Daum Decl."), Ex. I at 2 ("Toberoff objects to the Interrogatories generally and to each interrogatory therein to the extent that they are vague or indefinite with respect to the information sought, or are overbroad and unduly burdensome."). As demonstrated by DC's overreaching motion, such an objection was entirely proper.

Furthermore, DC's stated concerns were answered in response to other interrogatories or have otherwise been addressed. *See, e.g.,* Daum Decl., Ex. I at 5-7. DC claims it "is entitled to know what documents defendants shared with the government," Mot. at 7, but DC asked that specific question in Interrogatory No. 18, which Mr. Toberoff answered as described below.[2] Moreover, the "agreement" between defendants and the U.S. Attorney's Office concerning the Stolen Documents (Mot. at 7) that DC seeks has been produced to DC. Daum Decl., Exs. B-C.

          b.    <u>Interrogatory No. 9 Impinges On The Joint Prosecution Privilege</u>

DC's "everything" demand also improperly disregards and encroaches upon the joint prosecution privilege which protects Toberoff's confidential communications with the U.S. Attorney's Office. That privilege, as described in more detail in defendants' simultaneously-filed Opposition to DC's Motion to Compel Production of Documents, applies because Toberoff and the government share a common interest in prosecuting the theft of privileged materials from Toberoff & Associates, which theft was the subject of the government's investigation. *See, e.g., Sedlacek,* 795 F. Supp. at 331 (joint prosecution privilege applied to sharing of privileged materials between plaintiffs investigating a potential fraud and the Federal Trade Commission); *Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996) (sharing of work product between government and counsel for qui tam relator protected by joint prosecution privilege). Construing Interrogatory No. 9 in the overbroad manner advocated by DC, to require of Mr. Toberoff "everything" that was ever said to the U.S. Attorney's Office on the subject of the theft of privileged documents from his law firm, beyond the general subject matter of the communications, would invade the attorney-client and joint prosecution privilege.

---

[2] As to DC's claim that it is entitled to such documents, most of those documents are privileged and there has been no waiver of privilege, as set forth in Defendants' concurrently-filed opposition to DC's motion to compel the production of documents.

DC's contention that Mr. Toberoff placed the government's investigation at issue in the pending anti-SLAPP motion, and therefore waived privilege, is equally fallacious. Mot. at 6. In fact, *DC* placed the matter at issue when it baselessly stated, again in an effort to impugn Mr. Toberoff's credibility by innuendo, that Mr. Toberoff had *not* reported the theft. *See* Docket No. 92 at 3 (erroneously stating Mr. Toberoff did not report the crime and "[has] never taken any public legal action.").

### c. DC's Retaliatory Claims And Motions Are Precisely The Type Of Claims The Anti-SLAPP Statute Seeks To Prevent

DC now turns to a different set of accusations, repeatedly claiming, without any basis, that Mr. Toberoff reported the theft from his office to the government in order to "silence" or "threaten" David Michaels, the junior attorney who Mr. Toberoff believes is responsible for the theft. Mot. at 3. The Court should give no weight to DC's unfounded allegations in ruling on its motions. The reality – which DC does not contest – is that Mr. Toberoff was the victim of a theft. DC's entire lawsuit seeks to exploit that theft. DC's repeated irrational speculation and accusations concerning Mr. Toberoff's reasons for reporting the crime have no foundation whatsoever and are yet another scurrilous effort to assassinate Mr. Toberoff's character and deflect attention from DC's unbridled conduct. It cannot support a motion to compel. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'").

While this Court ruled that the anti-SLAPP discovery stay does not apply in federal court, and defendants have fully adhered to the Court's ruling and have not refused to answer any interrogatory or other discovery request based on the pendency of the anti-SLAPP motion, DC's unnecessary, burdensome and harassing motions are precisely the sort of abuse of process that the anti-SLAPP statute seeks to prevent. DC has demonstrated a recurring pattern of bringing unwarranted, overreaching motions to compel, while failing to meet and confer in good faith to resolve

problems. The docket in this case has ballooned to over 200 entries – many of them related to unnecessary and premature demands by DC – although the pleading motions remain pending and answers have therefore not even been filed. DC's discovery tactics, coupled with the meritless nature of DC's underlying claims against its opposing counsel, suggests that DC's costly, unsupported motions are themselves intended to serve its abusive strategy. To avoid repetition, the Court is respectfully referred to defendants' concurrently-filed Opposition to DC's Motion to Compel the Production of Documents (at pp. 24-25), for a discussion of the recent, well reasoned published opinion of the First Circuit in *Godin v. Schenks*, 629 F.3d 79, 87 (1st Cir. 2010), which held that an anti-SLAPP discovery stay, virtually identical to California's, applies in federal court under *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010) (Stevens, J., concurring).

### 2. Interrogatory No. 25

DESCRIBE in detail any and all COMMUNICATIONS YOU have had with any PERSON other than a party to the above-entitled action RELATED to the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

**Response to Interrogatory No. 25**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows: Toberoff has had communications with his attorneys in this action at Kendall, Brill & Klieger and with the attorneys at Toberoff & Associates P.C. as well as communications with Stanley Ornellas at the FBI, Beong-soo Kim, Deputy Chief of the Major Frauds section at the U.S. Attorney's Office, and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office as set forth in Responses Nos. 5, 9 and 13.

DC's primary complaint regarding this response appears to be that "Toberoff's response is restricted to communications with his counsel, the FBI and the U.S.

Attorney's office – no description is provided as to what Toberoff or his lawyers communicated to the government" (Mot. at 8).  DC's position makes little sense since the relevant "government" offices *were* the U.S. Attorney's Office and the FBI.

Moreover, DC's motion to compel is a waste of the Court's resources because DC already has the relevant non-privileged information.  Mr. Toberoff's conversations with the government and documents provided pursuant to its grand jury subpoena were described in response to Interrogatory No. 9.  The non-privileged details of the crime were provided in response to Interrogatory No. 4.  Accordingly, Interrogatory No. 25 is entirely unnecessary.  Had DC met and conferred, it would have learned this.

To the extent DC is asking for a blow-by-blow account of all communications with the U.S. Attorney's Office and/or the FBI related to their investigation of the theft of privileged material from Toberoff & Associates, DC's request fails for the reasons set forth above in discussing the response to Interrogatory No. 9.

DC also demands that Mr. Toberoff provide detailed information about his communications with the McNally Security Group ("McNally"), a private investigative service hired by Mr. Toberoff to investigate the theft of the stolen documents.  Communications between Toberoff and McNally are clearly protected by the work product doctrine, since McNally was hired to investigate the theft in the context of ongoing litigation regarding the theft and defamatory Timeline written by the thief, and Toberoff objected to the interrogatory on that ground.  It is well-established that the work-product doctrine applies when an attorney asks a third party to undertake an investigation in anticipation or consideration of litigation.  *See, e.g., United States v. Noble*, 422 U.S. 225, 238-40 (1975); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).  Contrary to the DC's unsupported statement that "communications with . . . a private security team" (Mot. at 9) are unprotected, such communications are attorney work product and need not be disclosed to DC.

Finally, in response to Interrogatory No. 25, DC seeks Mr. Toberoff's

communications with the "media" concerning the Timeline, citing two articles that mentioned Mr. Toberoff in the course of reporting on this lawsuit. Apparently, DC's theory is that since this interrogatory asks for communications "related" to the Timeline, and the Timeline "relates" to this case and the *Siegel* litigations, DC is purportedly entitled to a lengthy description of essentially every communication made by Toberoff to any third party regarding these litigations. DC's overreaching interpretation would render its own interrogatory impermissibly overbroad. Mr. Toberoff responded reasonably by listing the *substantive* conversations he had with third parties about the Timeline and its author, not every communication he has ever had that in any way touches on this case or the Timeline.

If DC wanted to propound an interrogatory concerning Mr. Toberoff's communications with the media, it could have done so, but it did not in Interrogatory No. 25. In any event, if DC had bothered to meet and confer on Interrogatory No. 25 before filing its ill-advised motion, it would have learned that one of the articles it cites simply recounts statements made in *publicly-filed documents* in the *Siegel v. Warner Bros. Ent. Inc.* case wherein DC is a party, and expressly states that Mr. Toberoff was *not* interviewed for the article. Petrocelli Decl., Ex. C. The other article merely recites a general press release issued in response to DC's filing of this retaliatory action. Petrocelli Decl., Ex. B. Neither of these communications is responsive to Interrogatory No. 25.

### 3. Interrogatories Nos. 13 and 14

**Interrogatory No. 13**

DESCRIBE in detail who, to the best of YOUR knowledge, has participated in the ALLEGED GRAND JURY INVESTIGATION, including any PERSON who has testified or been interviewed in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 13**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims

for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:
Other than statements made by Toberoff to Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorneys' Office and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office, Toberoff is not aware of any other testimony or formal statements by any individuals or entities made as part of the ongoing grand jury investigation.

**<u>Interrogatory No. 14</u>**

DESCRIBE in detail, to the best of YOUR knowledge, the substance of any testimony or statements made in connection with the ALLEGED GRAND JURY INVESTIGATION.

**<u>Response to Interrogatory No. 14</u>**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows: see Response to Interrogatory No. 13.

DC's motion to compel regarding these interrogatories, based solely on speculation and conjecture, is yet another waste of the Court's and defendants' resources. For Interrogatory No. 13, DC claims that there was something evasive in Toberoff's straightforward response that "[o]ther than statements made by Toberoff to Beong-Soo Kim, Deputy Chief of the Major Frauds section of the U.S. Attorneys' Office and Brian Klein, Assistant U.S. Attorney, U.S. Attorney's Office, Toberoff is not aware of any other testimony or formal statements by any individuals or entities made as part of the ongoing grand jury investigation." Had DC simply mentioned this interrogatory in its meet and confer letters in February 2011, it could have readily confirmed that Mr. Toberoff was unaware of any testimony or statements other than those he made personally.

The same applies to Interrogatory No. 14, which incorporates the response to Interrogatory No. 13 by reference. DC appears to demand Mr. Toberoff's purported

"testimony" to a grand jury when Mr. Toberoff has never testified before the grand jury, and Mr. Toberoff is not aware of any statement of his that was provided to the grand jury. *See* Mot. at 11 ("DC is entitled to discover the substance of that *testimony* from Toberoff to the extent it was provided to the grand jury."). Again, had DC simply met and conferred, as required by Rule 37-1, it would have learned this as well, mooting its motion.

DC also demands that Mr. Toberoff "describe" any "statements" he made in the course of the grand jury proceeding in detail. But to the extent that there were any such "statements," they are the same as the "communications" with the U.S. Attorney's Office described in the response to Interrogatory No. 9. As discussed above, while Mr. Toberoff has described the subject matter of these communications, the Interrogatory does not require him to do more. A complete blow-by-blow account of all communications with the U.S. Attorney's Office has minimal, if any, relevance to this action, unduly burdens Mr. Toberoff in connection with his ability to communicate with the government concerning a crime of which he was a victim, and would violate the joint prosecution privilege.

### 4. Interrogatories Nos. 17 and 18

**Interrogatory No. 17**

IDENTIFY any DOCUMENTS provided by YOU in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 17**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows: None.

**Interrogatory No. 18**

IDENTIFY any DOCUMENTS, to the best of YOUR knowledge,

provided by any other PERSON in connection with the ALLEGED GRAND JURY INVESTIGATION.

**Response to Interrogatory No. 18**

Toberoff objects to this interrogatory to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence, as any "investigation" by Toberoff or anyone else as to the author of the TOBEROFF TIMELINE is not relevant to any of the claims for relief in this action. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. Subject to and without waiving the foregoing general and specific objections, Toberoff responds, without limitation, as follows:

The Kendall, Brill & Klieger firm provided copies of the Toberoff Timeline and the Stolen Documents to the U.S. Attorney's Office on September 27, 2010 pursuant to a Grand Jury Subpoena dated September 13, 2010, subject to an express agreement by the U.S. Attorney's Office that the U.S. Attorney's Office would hold such material as confidential and privileged, that such provision was made in furtherance of a common interest privilege, and that such provision was without waiver of the attorney-client privilege or attorney work product doctrine.

DC's speculative arguments regarding these interrogatories are confused and, at times, incomprehensible. Once again, its motion to compel without having met and conferred unduly burdens the Court and Mr. Toberoff to no real end or purpose, but to so burden Mr. Toberoff.

*First*, DC asks whether it is "really [defendants'] position that Toberoff and his representatives ... have not *received* any documents from the government." Mot. at 13. The interrogatories, however, do not ask for the documents Mr. Toberoff "received"; they ask for any documents that were "provided" by Mr. Toberoff. DC cannot demand by motion answers to questions it did not ask.

*Second,* DC's interrogatories asked for a description of documents provided as part of the "ALLEGED GRAND JURY INVESTIGATION," defined by DC as an "ongoing grand jury investigation initiated by the United States Attorney for the Central District of California." Appendix 1 at 18. Mr. Toberoff clearly informed DC that the Timeline and the Stolen Documents were provided by Mr. Toberoff's counsel pursuant to subpoena as part of that grand jury investigation. Mr. Toberoff also explained that Mr. Toberoff, himself, provided no documents. The transmittal

letters and other communications with the U.S. Attorney's Office have either been produced (in the case of the agreement to maintain the Stolen Documents as privileged) or logged on defendants' privilege logs. It is hard to conceive how Mr. Toberoff's response could have been more clear, and DC has a record in the logs of Defendants' communications with the U.S. Attorney's Office.

*Third*, DC complains that it "is entitled to know what those documents [provided to the government] are, or, at least, must be provided with a privilege log – which defendants have failed to produce." Mot. at 14. Yet Defendants did describe the documents it provided to DC, and did provide a privilege log. In fact, DC refers to the privilege log elsewhere in its motion. *See* Mot. at 7 ("Defendants' privilege logs reveal that, between July 27 and October 21, 2010, Toberoff and his lawyers exchanged at least 13 communications with [the] U.S. Attorney's office.").

In short, Interrogatories Nos. 17 and 18 have been fully answered, and it is difficult to comprehend DC's concern. Again, all of this could have been easily addressed in a meet-and-confer before DC's irresponsible motion was filed.

## III. CONCLUSION

For the reasons stated above, DC's motion should be denied, and DC should be admonished that future unnecessary motions it brings without a proper meet-and-confer will subject DC to sanctions.

Dated: April 11, 2011         KENDALL BRILL & KLIEGER LLP

                              By: /s/ Laura W. Brill
                                  Laura W. Brill
                                  Attorneys for Defendants Marc Toberoff,
                                  Pacific Pictures Corporation, IP Worldwide,
                                  LLC, and IPW, LLC