DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:    (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>  Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND AMENDED PRIVILEGE LOGS FROM THE TOBEROFF DEFENDANTS**<br><br>SUPPLEMENTAL DECLARATION OF DANIEL M. PETROCELLI, DECLARATION OF JASON H. TOKORO FILED CONCURRENTLY HEREWITH<br><br>**Judge**:      Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**:      Apr. 25, 2011<br>**Hearing Time**:      10:00 a.m. |

**TABLE OF CONTENTS**

**Page**

I. Introduction ..................................................................................................1

II. Issues In Dispute .........................................................................................1

      **Issue 8**: Communications With The U.S. Attorney's Office ..............1

      **Issue 9**: Communications Between David Michaels And The Siegels ..................................................................................................7

      **Issue 10**: Communications Relating To Kevin Marks' October 2010 Declaration ..................................................................................8

      **Issue 11**: Defendants' Remaining Objections Lack Merit ................10

III. Conclusion................................................................................................ 12

# TABLE OF AUTHORITIES
(continued)

**Page**

## CASES

*Aikens v. Deluxe Fin. Servs., Inc.*,
   217 F.R.D. 533 (D. Kan. 2003) ........................................................................... 10

*Bowne v. AmBase Corp.*,
   150 F.R.D. 465 (S.D.N.Y. 1993) ......................................................................... 7

*Bud Antle, Inc. v. Grow-Tech, Inc.*,
   131 F.R.D. 179 (N.D. Cal. 1990) ....................................................................... 10

*Burroughs v. DeNardi Corp.*,
   167 F.R.D. 680 (S.D. Cal. 1996) ......................................................................... 4

*Carl Zeiss Vision Int'l Gmbh v. Signet Armorlite Inc.*,
   2009 WL 4642388 (S.D. Cal. Dec. 1, 2009) ....................................................... 9

*Clarke v. Am. Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ........................................................................... 7, 9

*Dellwood Farms, Inc. v. Cargill, Inc.*,
   128 F.3d 1122 (7th Cir. 1997) ............................................................................. 7

*Am. Dental Ass'n v. Khorrami*,
   2003 WL 24141019 (C.D. Cal. July 14, 2003) .................................................... 9

*GMAC Real Estate, LLC v. Joseph Carl Sec., Inc.*,
   2010 WL 432318 (D. Ariz. Feb. 3, 2010) .......................................................... 10

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) ............................................................................. 8

*Hunydee v. U.S.*,
   355 F.2d 183 (9th Cir. 1965) ............................................................................... 9

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
   293 F.3d 289 (6th Cir. 2002) ........................................................................... 5, 7

**TABLE OF AUTHORITIES**
**(continued)**

| | Page |
|---|---|
| *In re Grand Jury Investigation*, | |
| 974 F.2d 1068 (9th Cir. 1992) | 8 |
| *In re Leslie Fay Cos. Sec. Litig.*, | |
| 161 F.R.D. 274 (S.D.N.Y. 1995) | 7 |
| *In re Qwest Commc'ns. Int'l Inc.*, | |
| 450 F.3d 1179 (10th Cir. 2006) | 6 |
| *In re Steinhardt Partners L.P.*, | |
| 9 F.3d 230 (2d Cir. 1993) | 4-5 |
| *Jobin v. Bank of Boulder*, | |
| 161 B.R. 689 (D. Colo. 1993) | 7 |
| *Jumping Turtle Bar & Grill v. City of San Marcos*, | |
| 2010 U.S. Dist. LEXIS 119390 (S.D. Cal. Nov. 10, 2010) | 10 |
| *Permian Corp. v. U.S.*, | |
| 665 F.2d 1214 (D.C. Cir. 1981) | 6, 7 |
| *S.E.C. v. Amster & Co.*, | |
| 126 F.R.D. 28 (S.D.N.Y. 1989) | 7 |
| *Sedlacek v. Morgan Whitney Trading Grp., Inc.*, | |
| 795 F. Supp. 329 (C.D. Cal. 1992) | 5 |
| *Teachers Ins. & Annuity Assoc. of Am. v. Shamrock Broad. Co.*, | |
| 521 F. Supp. 638 (S.D.N.Y. 1981) | 7 |
| *Tibble v. Edison Int'l*, | |
| 2008 U.S. Dist. LEXIS 106999 (C.D. Cal. Dec. 30, 2008) | 10 |
| *U.S. v. Billmyer*, | |
| 57 F.3d 31 (1st Cir. 1995) | 7 |
| *U.S. v. Mass. Inst. of Tech.*, | |
| 129 F.3d 681 (1st Cir. 1997) | 6, 7 |

# TABLE OF AUTHORITIES
## (continued)

**Page**

*U.S. v. McPartlin*,
   595 F.2d 1321 (7th Cir.) ................................................................................... 9

*Westinghouse Elec. Corp. v. Republic of the Phil.*,
   951 F.2d 1414 (3d Cir. 1991) ........................................................................ 6, 7

## OTHER AUTHORITIES

6 PATRICK E. HIGGINBOTHAM,
   MOORE'S FED. PRAC. § 26.49[5][b] (2011) ............................................................ 9

## RULES

FED. R. CIV. P. 34(b)(2)(C) ........................................................................................ 8

FED. R. EVID. 502 ................................................................................................. 5, 6

## I.   INTRODUCTION

DC's motion to compel should be granted because defendants' opposition, while fueled with invective, significantly misstates the facts and controlling law.

## II.   ISSUES IN DISPUTE

### Issue 8: Communications With The U.S. Attorney's Office

The strong trend of the past two decades, as confirmed in the case law and amendments to the Federal Rules, is that "selective waiver" of privileged materials is *not* permitted—even if to the government, and even if covered by "confidentiality agreements." The government here made these risks plainly known to defendants, putting them on notice that their choice to make a selective waiver could well mean that a court would order the documents produced. Defendants gloss over all of this.

A. The Facts. Defendants' legal arguments rest on three factual premises, each of which is demonstrably incorrect. *First*, defendants were *never under any compulsion*—as a result of a "Government … investigat[ion]" or "subpoena," Opp. at 1:14-21—to provide the government with what defendants assert are their privileged documents. When DC filed this case in May 2010, the government was *not* investigating the Toberoff Timeline author or any alleged act of theft. To the contrary, in November 2007, Toberoff met with an FBI agent to discuss the Timeline author, but *nothing* came of that meeting, and even though Judge Larson ordered the Timeline and related documents produced to DC in December 2008, Case No. CV 04-8400, Docket No. 386 at 3-4, defendants did *nothing* then or in the 18 months that followed to pursue the Timeline author, either criminally or civilly.

When DC filed this lawsuit, defendants publicly stated that the author's acts were criminal, his reporting of the Toberoff defendants' misconduct should not be trusted, and defendants intended to pursue him with the authorities. Docket No. 207-3 at 5-6. DC asked defendants to disclose the author's identity. *See* Suppl. Petrocelli Decl. Ex. C; ¶ 4. Defendants refused to provide this information, *id.*, so DC sought this and other information in its document requests and interrogatories.

1  Contrary to defendants' representations, including in a declaration by Mr. Toberoff
2  in support of defendants' SLAPP motion that the Timeline author "is the subject of
3  an ongoing grand jury investigation," Docket 99-1 ¶ 14, defendants' discovery
4  responses establish there was *no* ongoing investigation when Toberoff contacted the
5  U.S. Attorney's office, *no* grand jury testimony has been taken, and Toberoff is the
6  *only* witness to meet with the government, Docket No. 207-9 at 437-38, 444-47.

Moreover, there is no proof the government ever told defendants it needed to see defendants' privileged documents to meet with them or consider investigating the case.  Just the opposite:  the September 10, 2010, letter the government sent defendants makes clear it was the "understanding of [the Government] that *your client Marc Toberoff wishes to provide the Government with copies of the documents ('MT documents') enclosed with the ... TIMELINE*."  Docket No. 212 at 10 (emphasis added).  The government did not demand that these documents be produced, and its September 13 subpoena made clear that defendants were free to "withhold" and "log" any alleged privileged materials.  Mot. at 5.  In reality, there was no need for the government to review any alleged privileged documents—Judge Larson had ruled, on the facts before him in 2008, that many of the "MT documents" were privileged.  Case No. CV 04-8400, Docket No. 374.  The question for the government was whether such an alleged "theft" in 2006 could be charged as a federal crime in 2010.

Defendants conspicuously do not quote from these critical portions of the government's September 10 letter.  In fact, defendants *refused* to disclose the letter to DC in response to DC's informal discovery requests, in response to DC's document demands and interrogatories, or as a part of the parties' meet-and-confer on this motion.  The letter appears nowhere on defendants' privilege logs,[1] and the first time it surfaced was in defendants' opposition brief.  Tokoro Decl. ¶ 34.

---

[1] If defendants contend that the September letter was an attachment to another privilege log entry, and that is why it is not specifically logged, that would only

1  The reason defendants steadfastly withheld the letter—and now assiduously avoid quoting it—is that it reveals that (1) defendants voluntarily disclosed these allegedly privileged documents to the government (the government did not request them); (2) the government put defendants on clear notice that they were making a "selective" waiver; and (3) the government twice reminded defendants that it "may be required by law or court order" to disclose these documents to "non-governmental third parties," Docket No. 212 at 10-11—*i.e.*, a party like DC.

*Second*, defendants erroneously contend they selectively disclosed these materials "subject to an *express agreement with the government* that the Stolen Documents were being produced *subject to the joint prosecution privilege*." Opp. at 1 (emphasis added). In their opposition, defendants quote only *their* September 17 letter to the U.S. Attorney's office—at the end of which defendants unilaterally assert joint-privilege. Opp. at 4-5.[2] But there is *no evidence*—none—that the government agreed to any such joint-prosecution relationship. As shown below, such legal relationships are rare to non-existent, *infra* at 4-7, and one certainly did not exist on these facts, in which defendants merely urged the government to initiate a prosecution, and where there is no evidence the government will prosecute. Moreover, the government's September 10 letter notably makes *no reference* to any joint-privilege or common-interest relationship. Nor do the several carefully worded declarations of defense counsel or Toberoff.

*Third*, defendants accuse DC of misstating the government's intention not to intervene in this discovery dispute. This, too, is incorrect. DC provided the government with a final service copy of its motion on March 29. *See* Supp. Petrocelli Decl. Ex. B. The government has filed no objections to DC's motion or a

---

further underscore the deficiencies in defendants' privilege logs, which obscure which documents are being withheld. *Cf.* Docket No. 160 at 31-33; *infra* n.6.

[2] Again, defendants refused to produce this September 17 letter in response to discovery or as part of the parties' meet-and-confer efforts. Instead, they listed it as Toberoff Privilege Log Entry 3228, and only disclosed it in their opposition brief.

- 3 -  DC COMICS' REPLY ISO MOTION TO COMPEL

declaration or other pleading in support of defendants' position. All that defendants offer is a hearsay declaration from their counsel reporting on one conversation with the government on March 22. In the ensuing two weeks after March 22, in which defendants prepared and filed their opposition to this motion, their counsel undoubtedly had the chance to contact the U.S. Attorney's office and urge it to intervene. Notably absent from counsel's declaration is any mention of such a conversation or why none occurred.

B. The Law. Defendants do not and cannot dispute that the strong trend in the law over the past 20 years is to reject claims of "selective" waiver. Mot. at 6-10. Defendants also do not dispute—despite their contrary assertions during meet-and-confer efforts—that the Ninth Circuit has addressed this question. Opp. at 10. Instead, defendants contend that because they reported an alleged crime, the courts' consistent rejection of "selective waiver" claims does not apply to them. Opp. at 7.

Defendants are mistaken. To begin, the *only two cases* defendants cite to support their joint-prosecution-privilege claim provide them no help. Opp. at 8.

- In *Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996), plaintiff filed suit pursuant to the False Claims Act, which entitles a private citizen to bring a civil action "for the United States Government [and] in the name of the Government ... ." The court found that "plaintiff and the government stand in the same shoes as against the defendants." *Id.* There is no comparable statutory scheme at issue here.
- In *Sedlacek v. Morgan Whitney Trading Grp., Inc.*, 795 F. Supp. 329, 330 (C.D. Cal. 1992), class-action counsel and certain unnamed government agencies were "investigating *common litigation opponents*," and the legal issue was whether cooperating *plaintiffs* could assert common-interest privileges in the same way joint-defense privileges are asserted. The answer was yes, but that case has nothing to do with the issues here— where the Timeline author is *not a party* to this litigation, he *has never been sued* by defendants, and neither he nor DC is a "common litigation opponent." Even if one were to read this 1992 opinion (and its cursory, off-point analysis) to support defendants' view, that reading would run afoul of the last 18 years of law. Mot. at 6-10; *infra* at 5-7.

Defendants also assert that *In re Steinhardt Partners L.P.*, 9 F.3d 230 (2d Cir. 1993), "made clear that waiver is inappropriate" here, because they "entered into an

- 4 -

DC COMICS' REPLY ISO MOTION TO COMPEL

1   express agreement to maintain the common-interest privilege," Opp. at 8.  Not so.
2   No confidentiality agreement (common-interest, or otherwise) was at issue in
3   *Steinhardt*, and the court held that petitioner's voluntary submission of legal
4   memoranda to the SEC *waived* work-product protections.  9 F.3d at 236.  No
5   "express" common-interest agreement exists here; defendants only unilaterally
6   assert one.  In addition, while *Steinhardt* noted that confidentiality agreements
7   *might* excuse a selective waiver, Mot. at 10, this 1993 dicta is not controlling and
8   several circuit courts have rejected it, *id.* at 6-10 (collecting cases, including *In re*
9   *Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302 (6th
10  Cir. 2002) (rejecting "any form of selective waiver, even that which stems from a
11  confidentiality agreement")).  In fact, recent amendments to the Federal Rules
12  confirm that analogous agreements are *not* binding on third parties absent a court
13  order—which defendants here never sought or obtained.  FED. R. EVID. 502(e).
14       Unable to dispute this clear trend rejecting their "selective" waiver claim,
15  defendants assert that "DC's position relies entirely on out-of-circuit" cases that
16  involved targets of government investigations, not putative victims.  Opp. at 6.  But
17  the reasoning and policies addressed in these cases fully support DC's position.
18       Defendants present *no* evidence that their disclosure of privileged materials
19  to the government was either requested or required to advance a public purpose.
20  Either the Timeline author committed a chargeable offense by removing papers
21  from Toberoff's office in 2006, or he did not.  Judge Larson issued opinions in
22  2008 holding that certain of these documents were privileged.  There was no need
23  for defendants, in 2010, openly to disclose those allegedly privileged materials for
24  the government to take a second look.  Even if relevant to the alleged crime, the
25  alleged privileged nature of the documents readily could be established by
26  testimony from Toberoff or others.  Indeed, the government made clear in its
27  September 2010 letter that it was "*Toberoff* [who] wishe[d]" to disclose the
28  documents, and it told him, if he did selectively disclose them, a court might order

- 5 -

DC COMICS' REPLY ISO MOTION TO COMPEL

1  those documents produced.  Docket No. 212 at 10-11 (emphasis added).  With eyes
2  wide open, defendants made a tactical choice to disclose the "MT documents," even
3  though they were not required to do so and the government made it clear they need
4  not do so in the September 13 subpoena—which said defendants could withhold
5  and log such documents.  *Id.* at 5.

6  It is not necessary to create broad "new privilege[s]" to encourage reporting
7  criminal activity, *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414,
8  1424 (3d Cir. 1991), especially where, as here, the government did not ask for or
9  require the production of the materials at issue.  No other compelling policy is
10 served by the exception defendants propose.  Permitting "selective waivers" only
11 extends attorney-client and work-product privileges beyond their "intended
12 purpose," *id.* at 1425, contrary to "the general principle that disclosure normally
13 negates the privilege"—a clear rule that "makes the law more predictable and
14 certainly eases its administration," *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 685
15 (1st Cir. 1997); *Permian Corp. v. U.S.*, 665 F.2d 1214, 1222 (D.C. Cir. 1981) ("the
16 attorney-client privilege should be available only at the traditional price:  a litigant
17 who wishes to assert confidentiality must maintain genuine confidentiality").

18 In fact, in amending Rule 502 in 2007, the Advisory Committee considered a
19 "selective waiver" rule, but rejected it as "very controversial."  The Committee
20 "determined that it would not propose [its] adoption," but instead let Congress act.
21 FED. R. EVID. 502 drafting choices note (4) (Petrocelli Decl. Ex. A).  Congress has
22 not so acted; *and nor should this Court.  Cf. In re Qwest Commc'ns. Int'l Inc.*, 450
23 F.3d 1179, 1197-99 (10th Cir. 2006) ("[m]ore often than not, the Supreme Court
24 has *declined* to recognize new privileges"; it is "especially reluctant to" to do so "in
25 an area where it appears that Congress has considered the relevant competing
26 concerns but has not provided the privilege itself"; "Congress rejected a SEC-
27 proposed amendment to the [securities laws] that would have established a selective
28 waiver rule"; no State has adopted a "general government-investigation privilege").

Finally, although defendants claim that "[n]umerous courts have refused to find waiver of privilege where confidential materials were produced pursuant" to a confidentiality agreement, Opp. at 9 & n.4:

- *all* of their cases pre-date the 2007 amendments to the Federal Rules;
- the clear majority of *circuit courts* that have addressed the issue have rejected such claims of "selective" waiver," *e.g.*, *In re Columbia*, 293 F.3d at 302; *Mass. Inst. of Tech.*, 129 F.3d at 685; *Westinghouse*, 951 F.2d at 1427; *Permian Corp.*, 665 F.2d at 1222; and
- each of defendants' cases has been *rejected* by other circuits, *criticized* within their own circuit, and/or did not involve confidentiality agreements at all, *see In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 284 (S.D.N.Y. 1995) (rejected by 6th Cir. in *In re Columbia*, 293 F.3d at 301); *Teachers Ins. & Annuity Assoc. of Am. v. Shamrock Broad. Co.*, 521 F. Supp. 638, 646 (S.D.N.Y. 1981) (abrogation recognized by *Bowne v. AmBase Corp.*, 150 F.R.D. 465, 480-81 (S.D.N.Y. 1993), and rejected by *In re Columbia*, 293 F.3d at 301)); *Jobin v. Bank of Boulder*, 161 B.R. 689, 696 (D. Colo. 1993) (decision based on *Teachers*); *U.S. v. Billmyer*, 57 F.3d 31, 37 (1st Cir. 1995) (no confidentiality agreement); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997) (same); *S.E.C. v. Amster & Co.*, 126 F.R.D. 28, 29-30 (S.D.N.Y. 1989) (same).

***Issue 9: Communications Between David Michaels And The Siegels***

Defendants wrongly assert the Court decided Issue No. 9 on April 11. Opp. at 11. But the Court's order says nothing about the Michaels-Siegel correspondence, Docket No. 209, and the evidence was *never* before Judge Larson because defendants first disclosed it to DC in *January 2011*. As DC advised the Court at the February 28 hearing, these communications were "the subject of an upcoming motion" and "not yet before the Court." Docket No. 177 at 29:9-13.

Defendants assert that no aspect of the Michaels-Siegels communications must be produced because they were made "in connection with [Michaels'] potential representation of the [Siegels]." Opp. at 11. Beyond this blanket and conclusory statement, defendants have done nothing to establish that each aspect of these communications falls under this protection.³ It is clear from defendants' own

---

³ *Cf. Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (requiring "line-by-line justification for assertion of the attorney-client privilege").

1  admissions, however, that not all aspects of the Michaels-Siegels communications
2  are privileged.  Defendants accuse Michaels of "disparag[ing]" Toberoff and say
3  Michaels' letters documented Toberoff's "purported unethical conduct….'"  Docket
4  No. 207-9 at 436.  Such accusations of wrongdoing are not "legal advice," *In re*
5  *Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992), and, at the very
6  least, defendants had a duty to produce redacted copies of the Michaels-Siegel
7  communications and disclose Michaels' accusations, FED. R. CIV. P. 34(b)(2)(C).

8  Toberoff's position that no waiver resulted from his describing the contents
9  of these communications in interrogatory responses is also without merit.  Toberoff
10 went further than simply describing the "basic subject matter of the Siegel/Michaels
11 communications"; he affirmatively described them to include Michaels accusing
12 Toberoff of "unethical conduct, like allegedly charging the Siegels 'unconscionable
13 fees'"; attempting to "shepherd the Siegels to a 'larger firm'"; "advis[ing] the
14 Siegels to cease all communications with Mr. Toberoff"; and providing the Siegels
15 with "a termination letter to give to Toberoff & Associates."  Docket No. 207-9 at
16 436.  His tactical decision to divulge these communications waived any privilege
17 claim.  *E.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010).

18 **Issue 10:  Communications Relating To Kevin Marks' October 2010 Declaration**

19 Defendants create a straw man here, asserting that Marks, the Siegels, and
20 Toberoff have a common interest to preserve confidences the Siegels shared with
21 Marks and Toberoff when each acted as their lawyer.  Opp. at 14.  But that is not
22 the discovery DC seeks.  DC seeks discovery concerning a declaration that Marks
23 and the Toberoff defendants prepared in 2010, long after Marks served as counsel.
24 DC is entitled to discover drafts of Marks' declaration and discussions concerning
25 it, since Marks' publicly filed declaration is being proffered as testimony in this
26 case to support defendants' litigation positions, not to preserve client confidences.

27 The case law is clear that Marks and defendants must share "identical"
28 interests with respect to the *precise information* over which privilege is asserted.

1   MOORE'S FED. PRAC. § 26.49[5][b] (2011); *Hunydee v. U.S.*, 355 F.2d 183, 185 (9th
2   Cir. 1965); *U.S. v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir.), *cert. denied*, 444
3   U.S. 833 (1979); *Carl Zeiss Vision Int'l Gmbh v. Signet Armorlite Inc.*, 2009 WL
4   4642388, at * 7 (S.D. Cal. Dec. 1, 2009). Defendants have made no showing that
5   each of the six documents withheld relate directly and exclusively to Siegel-Marks
6   confidences. Yet that is the showing they must make to carry their burden to
7   establish that the common-interest privilege applies. *E.g., id.*; *Clarke*, 974 at 129.

8   There also is no basis for defendants' assertion that the "Court rejected DC's
9   claim that Marks' interests were not aligned with the Siegels," when DC moved to
10  reopen discovery in the *Siegel* cases. Opp. at 15. Whether Marks and the Siegels
11  shared common interests was neither raised nor addressed by either party, Case No.
12  CV 04-8400, Docket No. 476, and the Court denied DC's motion on one ground
13  only—*i.e.*, that the discovery period in the case had closed, Docket No. 478 at 9.

14  As to waiver, defendants argue they were not obligated, by January 24, to log
15  their communications with Marks and his counsel. They cite the parties' practice in
16  *Siegel* and case law generally that holds that privilege logs can be produced weeks
17  or months after document responses are due without waiving privilege. Opp. at 15.
18  These precedents are irrelevant, however, because *since September* the issue of
19  waiver and defendants' repeated failure to produce complete and accurate logs in a
20  timely manner has been vigorously contested. Docket No. 125 at 1-3, 17-18.
21  When DC, yet again, afforded defendants more time to respond to the document
22  requests at issue here, it was on the express condition that defendants produce
23  complete and full logs by January 24. Docket No. 207-10 at 472. DC's requests
24  specifically requested these Marks documents, *and defendants neither produced*
25  *nor logged them.* Docket No. 207-9 at 115-16. Only when they were caught not
26  doing so, did they assert privilege. These documents should be ordered produced.[4]

27
28  _____
    [4] *E.g., Am. Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *9 (C.D. Cal. July 14, 2003). Defendants' claim that it would have been too burdensome, in 45 days,

- 9 -   DC COMICS' REPLY ISO MOTION TO COMPEL

1  Finally, the Court's Rule 54(b) judgment in *Siegel* does not in any way
2  preclude the discovery DC seeks.  First, the discovery at issue is concerns the
3  Marks' declaration, not whether a "settlement agreement" was reached between the
4  Siegels and DC in October 2001.  Second, DC's complaint in this case assumes that
5  no settlement agreement was reached, and alleges that Toberoff interfered with
6  DC's prospective economic advantage.  First Am. Compl. ("Compl.") ¶¶ 180-86.

### Issue 11:  Defendants' Remaining Objections Lack Merit

Defendants concede they owe DC more documents, Opp. at 22, mount virtually no defense of their rote, boilerplate objections, *compare* Mot. at 25-29, *with* Opp. at 23-25, and, ultimately, ask to meet and confer further with DC to tailor DC's document requests, Opp. 25.  This is just a delay tactic.  As documented in the Tokoro declaration filed herewith, DC repeatedly tried to engage defendants in *January and February* regarding any objections defendants had to DC's requests, and but for a handful of requests on which they were willing to engage, defendants flatly refused to identify which requests they sought to narrow or limit or to suggest compromises for doing so.  DC asked defendants repeatedly to engage at this level of detail, only to be confronted each time with the demand that DC rewrite its requests.  Tokoro Decl. ¶¶ 5-26.  The law did not require this of DC—and defendants' cite no contrary authority.  Mot. at 22-23; *GMAC Real Estate, LLC v. Joseph Carl Sec., Inc.*, 2010 WL 432318, at *1-2 (D. Ariz. Feb. 3, 2010) (ordering production and admonishing failure to produce uncontested documents).[5]

---

to log the six Marks documents rings hollow; *their cases* confirm this: *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 181 (N.D. Cal. 1990) (case involved 6,000 pages of documents); *Jumping Turtle Bar & Grill v. City of San Marcos*, 2010 U.S. Dist. LEXIS 119390, at *11 (S.D. Cal. 2010) (10,000 pages); *Tibble v. Edison Int'l*, 2008 U.S. Dist. LEXIS 106999, at *5 (C.D. Cal. 2008) (over "320,000 pages").

[5] Despite defendants' contrary suggestion, *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 539 (D. Kan. 2003), held that despite *even* a "*valid* objection that a request is facially unduly burdensome, the responding party still has a duty to respond *to the extent the request is not objectionable.*" (Emphases added.)

1    All defendants seek is more delay. DC's served its document requests on
2    December 10. Defendants asked for more time, until January 24, to respond,
3    promising "substantive" responses. Defendants produced only one new document
4    on January 24, and when DC requested a meet and confer, defendants deferred one
5    until February 14. DC asked repeatedly in the parties' conferences for defendants
6    to tell DC which *specific requests* it found objectionable and how it wanted them
7    narrowed. Each time, defendants declined. Tokoro Decl. ¶¶ 5-26.

8    Now it is mid-April—five months after the requests were served—and
9    defendants' response is that they want to meet and confer. Opp. at 25. Defendants
10   had every chance to do so months ago, they refused to provide any information, and
11   they should be ordered fully to respond to DC's requests without any further delay.

12   Finally, defendants' specific objections to DC's requests are not well-taken:

- **Request Nos. 16-17:** In inducing the Siegels and Shusters to repudiate their agreements with DC, the Toberoff defendants misrepresented to whom they would market the heirs' putative rights and when. Compl. ¶¶ 77-85. DC challenges those misrepresentations and is entitled to inquire about defendants' efforts to market and exploit the putative rights.

- **Request Nos. 35-38:** DC is not seeking to discover "every aspect of Mr. Toberoff's and Mr. Emanuel's ten year business relationship," and its proposal to narrow its request—which defendants rejected—establishes that. The nature of Emanuel's relationship with defendants is directly relevant to DC's Fifth Claim, which challenges Toberoff's interference with DC's relationship with the Siegels. Compl. ¶¶ 180-86.

- **Request Nos. 56-58:** DC's discovery relating to Toberoff's role in his related companies is necessary to oppose defendants' SLAPP motion, which argues Toberoff was acting at all times in his dealings with the Siegels and Shusters as an attorney, Docket No. 145-1, and relevant to DC's interference claims. Compl. ¶¶ 165-73; s*ee* Tokoro Decl. ¶¶ 5-26.

## III. CONCLUSION

DC's motion should be granted.[6]

Dated: April 18, 2011

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

CC1:847983

---

[6] This motion also raises "Issues 1 through 7"—this time as to the Toberoff defendants—that DC raised in its Shuster/Siegel motion that the Court decided on April 11. Mot. at 1; Docket Nos. 159-1, 209. DC will move shortly for the District Court to review aspects of that ruling, and DC would respectfully urge this Court to consider the parties' briefing on that objection in resolving *this* motion—even if that means continuing the hearing date on this motion by a week or two.

Moreover, at least two critical points of distinction exist as it relates to the Toberoff defendants when it comes to Issues 1-7. Judge Larson *never* had before him the Toberoff defendants' admission that several consent agreements they secured with the Shusters and Siegels ran afoul of the Copyright Act. Docket Nos. 147-1 at 2, 8; 191 at 8. The Court should consider these new facts—*key admissions made in 2010*—in ruling on the "consent agreement" issue as it pertains to the Toberoff defendants. *Cf.* Docket No. 209 at 1-10.

The Court's April 11 ruling also contains a key record error. It states that Judge Larson rejected DC's arguments that the consent agreement was "unlawful," *id.* at 8, but Judge Larson *never* addressed the issue, because no claim of illegality was presented to Judge Larson. *Cf.* Docket No. 163-11; Case No. CV-04-8400, Docket No. 395 at 2-3. Rather, DC argued the consent agreement was responsive to documents requests 59 and 63 in the *Siegel* case, Case No. CV-04-8400, Docket No. 395 at 5, and relevant to "determine the scope of Plaintiffs' right to share in the profits from their co-owned share in any copyrights they have recaptured." *Id.* DC only advanced the Copyright Act and public policy claims in this *new* lawsuit, and it was only in response to these *new* claims of illegality, that the Toberoff defendants, in September and October *2010*, admitted the Pacific Pictures and IPW consent agreements "were void *ab initio*." Docket No. 147-1 at 2.