1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:   (310) 553-6700
6   Facsimile:    (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:   (845) 265-2820
10  Facsimile:    (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14  DC COMICS,                          | Case No. CV 10-3633 ODW (RZx)

15          Plaintiff,                  | **DISCOVERY MATTER**

16          v.                          | **DECLARATION OF JASON H.
                                          TOKORO IN SUPPORT OF (1) DC
17  PACIFIC PICTURES                      COMICS' MOTION TO COMPEL
    CORPORATION, IP WORLDWIDE,            THE PRODUCTION OF
18  LLC, IPW, LLC, MARC                   DOCUMENTS AND AMENDED
    TOBEROFF, an individual, MARK         PRIVILEGE LOGS FROM THE
19  WARREN PEARY, as personal             TOBEROFF DEFENDANTS; AND
    representative of the ESTATE OF       (2) DC COMICS' MOTION TO
20  JOSEPH SHUSTER, JEAN ADELE            COMPEL SIX INTERROGATORY
    PEAVY, an individual, JOANNE          RESPONSES FROM DEFENDANT
21  SIEGEL, an individual, LAURA          TOBEROFF
    SIEGEL LARSON, an individual, and
22  DOES 1-10, inclusive,

23          Defendants.                  | **Judge**:       Hon. Otis D. Wright II
                                          **Magistrate**:  Hon. Ralph Zarefsky
24
                                          **Hearing Date**:      Apr. 25, 2011
25                                        **Hearing Time**:      10:00 a.m.
                                          **Discovery Cutoff**:  None Set
26                                        **Pretrial Conference**: None Set
                                          **Trial Date**:        None Set
27

28

                                    TOKORO DECL. IN SUPPORT
                                    OF DC'S MOTIONS TO COMPEL

1

### DECLARATION OF JASON H. TOKORO

2

I, Jason H. Tokoro, declare and state as follows:

3

1.    I am an attorney licensed to practice in the State of California and

4

admitted to the Central District of California.  I am an associate at O'Melveny &

5

Myers LLP, counsel of record for plaintiff DC Comics in the above-entitled action.

6

I make this declaration in support of DC's Motion to Compel Production of

7

Documents and Amended Privilege Logs From the Toberoff Defendants and DC's

8

Motion to Compel Six Interrogatory Responses from Defendant Toberoff.  I have

9

personal knowledge of the matters set forth in this declaration, and if called to

10

testify to the facts stated herein, I could and would do so competently.

11

### I.    DC'S MEET-AND-CONFER EFFORTS

12

2.    On December 10, DC served requests for production on the Toberoff

13

Defendants and interrogatories on defendants Laura Siegel Larson, Mark Warren

14

Peary, and Marc Toberoff.  *See* Docket No. 207-10 at 472.

15

3.    On January 4, less than a week before their responses were due and after

16

filing two unsuccessful appellate actions seeking to bar this discovery, defendants

17

sent a letter asking DC to extend their deadline to respond two weeks, from January

18

10 to January 24.  Docket No. 207-7 at 77.  DC granted that extension on the

19

express condition that defendants serve "substantive responses and not just blanket

20

objections."  Docket No. 207-8 at 78.

21

4.    On January 24, defendants produced one new document and served

22

lengthy objections to the propounded documents requests and interrogatories.  The

23

Toberoff defendants re-asserted boilerplate objections that the Siegels and Shusters

24

had stipulated to waive in motion practice last Fall.  *See* Docket Nos. 125 at 22-27

25

(DC challenging these boilerplate objections); 132 at 1-3; 133 at 1-3 (the Siegel and

26

Shuster defendants stipulating, by court order, to waive these objections).

27

5.    On February 4, my colleague, Matthew T. Kline, and I sent a letter to

28

counsel for defendants requesting a meet-and-confer to discuss the deficiencies

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1    related to defendants' responses.  Docket No. 207-10 at 472.  Within the nine-page

2    letter, Mr. Kline identified documents responses of defendants that DC sought to

3    challenge, referred to specific documents from defendants' privilege logs to which

4    DC believed it was entitled, and provided law supporting DC's position.  *Id.* at 472-

5    78.  Likewise, he addressed deficiencies in defendants' interrogatory responses and

6    provided examples of each category of asserted deficiency.  *Id.* at 478-80.  Among

7    other things, Mr. Kline wrote:

8
9        The Toberoff Defendants' responses to DC's first set of interrogatories
         are incomplete, misleading, and avoid directly responding to the
         question posed.  *For example*, DC requested that defendants describe
10       "*in detail*" the substance of communications between defendants and
         the U.S. Attorney's Office "regarding the TOBEROFF TIMELINE
11       AUTHOR and/or the TOBEROFF TIMELINE."  Defendants
         responded, without providing any detail, that "the substance of the
12       information provided was that described in response to interrogatory
13       No. 4." …

14       Similarly, DC requested that defendants describe "*in detail* any
         internal or external investigation … YOU participated in regarding the
15       TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF
         TIMELINE."  …  [Defendants'] response does not describe the
16       communications that took place or the information that was shared, nor
         does it provide any detail.  Instead, defendants choose to lump together
17       months at a time.  Similarly, DC requested that defendants identify
         "any and all bases for YOUR knowledge" regarding other clients
18       contacted by Mr. Michaels.  Mr. Toberoff did not provide any basis.
19       …

20       Defendants also attempt to evade the discovery sought by DC by
         providing responses that do not directly respond to DC's
21       interrogatories.  *For example*, DC's Interrogatory No. 4 requested that
         Mr. Toberoff "DESCRIBE in detail any and all information revealed
22       by the ALLEGED INTERNAL INVESTIGATION."  Mr. Toberoff
         restricted his response to "information that was known prior to the
23       investigation," and provided nothing further.  Mr. Toberoff described
         the hiring of Mr. Michaels, his brief employment with Toberoff &
24       Associates, his subsequent contact with the Siegels, and his delivery of
         the Toberoff Timeline to Warner Bros.  Nothing beyond July 5, 2006
25       was provided—a date well before the purported investigation.
         Mr. Toberoff provided a similarly evasive answer in response to
26       Interrogatory No. 6, which requested information revealed by any
27       external investigation, by simply stating "[t]he investigation is
28

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1
2
> ongoing." These artificial limitations on defendants' responses are inappropriate.

3
4
5
6
7
> In other instances, defendants' responses are plainly insupportable. *For example*, Laura Siegel Larson asserts that the only communications she had with "any PERSON RELATED to the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE" were privileged communications with her attorneys. Mr. Toberoff, however, maintains that David Michaels—the purported author of the Toberoff Timeline—directly communicated with the Siegels. … Ms. Larson clearly had more communications with Mr. Michaels than her interrogatory response conveys.

8
9
10
11
12
13
14
> Similarly, DC requested that defendants "DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official … regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE." Mr. Toberoff responded by identifying several communications he had with the FBI or the U.S. Attorney's Office, but he did not identify the communications withheld by the Toberoff Defendants as privileged. *See* Toberoff Privilege Log at Entries 3130, 3147-51, 3158-61. DC is entitled to know whether additional communications occurred which defendants have not disclosed.

14
15
16
17
18
19
20
21
22
23
24
Docket No. 207-10 at 478-80 (citations omitted) (emphasis added). Mr. Kline further expressed DC's concern about defendants' ongoing refusal to provide meaningful discovery, as evidenced by the fact the Toberoff defendants' responses suffered from the same failings that forced DC to file its motion to compel production by the Siegels and Shusters. Concerning their communications with the U.S. Attorney's Office, Mr. Kline advised defendants that they had not identified any authority for asserting a "joint interest" with the government, nor had they produced any document(s) reflecting an "express agreement" that their disclosures would not effect a waiver of privilege. Mr. Kline requested that defendants produced any such agreement:

25
26
27
28
> Defendants do not—and cannot—identify any authority to assert a "joint interest" with the government. Nor have defendants produced any document reflecting an "express agreement" with the government that their disclosures would not effect a waiver of privilege, assuming any otherwise applied to the documents at issue. Defendants must

- 3 -

produce any such agreement, if it exists, so that DC may assess its validity. *Id.* at 475.

6.     DC requested a conference at defendants earliest availability the following week, February 7 through 11, but defendants waited until February 14 to respond, when, Laura Brill, counsel for the Toberoff defendants, responded to Mr. Kline's letter, disagreed with the positions asserted therein, and suggested dates for the requested meet-and-confer. Docket No. 207-11 at 486. She also stated her belief that DC should wait to file its motions until DC's then-pending first motion to compel was resolved. *Id.* at 481. Ms. Brill neither identified nor produced any document evidencing any alleged agreement with the U.S. Attorney's office regarding defendants' selective waiver—even though defendants attached such an alleged letter to recent opposition papers.

7.     On the afternoon of February 14, Mr. Kline and I had a lengthy teleconference with counsel for defendants, who were represented on the call by Mr. Toberoff, Ms. Brill, and Nicholas Daum. (Certain of Mr. Toberoff's associates may have been on the call, but I do not remember them playing a speaking role.) The teleconference lasted approximately one hour.

8.     The primary thrust of the teleconference was DC's discovery requests regarding the alleged grand jury investigation of the Toberoff Timeline and its author. On the call, as in its discovery, DC requested full access to the communications defendants had with the U.S. Attorney's office along with any documents they provided, including but not limited to the Timeline and allegedly privileged documents that were attached to it. DC also requested on the call that defendants amend their interrogatory responses to provide complete descriptions of those communications.

9.     Mr. Kline advised counsel for defendants that DC needed more information concerning their communications with the U.S. Attorney's office. He further stated not only was the grand jury investigation relevant to DC's claims,

TOKORO DECL. IN SUPPORT OF DC'S MOTIONS TO COMPEL

1    defendants had put it at issue through Mr. Toberoff's declaration in support of their

2    SLAPP motion.  Docket No. 193-1 at ¶ 14.  Mr. Kline reminded defendants that

3    they had produced no document(s) reflecting their alleged "express agreement"

4    with the government that their disclosures to the government would not effect a

5    waiver of privilege.  (Again, defendants only disclosed this alleged letter in their

6    recent opposition filing.)

7        10.    With respect to DC's document requests, Doc. Mot., Appendix 1 at 48-

8    50, counsel for defendants stated that they did not want to repeat the arguments

9    made in the meet-and-confer correspondence and had nothing further to say on the

10    topic.

11        11.    With respect to DC's interrogatories, Rog. Mot. at 3-5, 10-13, Mr. Kline

12    advised counsel that defendants failed to fully and comprehensively respond to

13    DC's requests.  As set forth in our letter, Mr. Kline reiterated that DC's

14    interrogatories requested that defendants describe "in detail" defendants'

15    communications with the U.S. Attorney's office related to the grand jury

16    investigation.  Mr. Kline stated that defendants' responses did not provide the

17    required information.  For example, defendants admitted that they had oral

18    communications with the U.S. Attorney's office, but they did not identify the

19    specific dates on which those conversations occurred or describe them in detail in

20    their responses.

21        12.    Counsel for defendants responded by asserting the grand jury

22    investigation has no relevance to DC's claims and said that defendants would

23    challenge its relevance in opposition to DC's motion.  Mr. Kline stated that he

24    disagreed with defendants' position.  He repeated that the investigation was put at

25    issue by defendants' acts of waiver and through Mr. Toberoff's SLAPP declaration.

26    Additionally, he said that Mr. Michaels is potentially a witness in the case, and DC

27    is entitled to the discovery related to defendants' efforts to impugn his credibility.

28

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

13.    Besides relevance and asserted joint-interest privileges, counsel for defendants did not raise any other objections to DC's interrogatories during the telephonic meet-and-confer.

14.    Mr. Kline also noted that the Toberoff defendants asserted boilerplate objections to every document requests; objections that the Siegel and Shuster defendants stipulated to waive by court order, in response to motion practice last Fall.  Counsel for defendants did not respond with any explanation for the re-assertion of these objections.  Instead, they asked Mr. Kline if he agreed that DC's requests were overbroad and burdensome.  Mr. Kline stated that he believed DC's requests were proper and asked counsel to specifically identify what objections they had to the individual requests.  Defense counsel expressly refused to identify any specific objection, instead responding they did not want to repeat the arguments made in their meet-and-confer correspondence and there was no point in debating the issue further.  Mr. Toberoff also said repeatedly on the call that DC was wasting money by seeking to discuss these issues and argue these points over a lengthy call.  Despite DC's requests, defendants never came forward with any proof that DC's document requests were burdensome.  Nor, but for a handful of exceptions, did defendants ever engage with DC on why its specific document requests were overbroad and should be narrowed.

15.    Mr. Kline also asked on the call what "other" protections defendants were relying on to withhold documents, aside from privilege and defendants' arguments about the parties' JAMS agreement in the *Siegel* cases.  Doc. Mot., Appendix 1 at 33.  Counsel for defendants directed DC to their privilege logs and stated that the grounds for privilege and confidentiality claims were set forth therein.  Mr. Kline advised counsel that the only protections listed on the privilege logs were attorney-client privilege, common interest privilege, work-product doctrine, and JAMS Agreement, and requested confirmation that defendants were not asserting any claims of trade secrets or some other protection.  Counsel for

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1    defendants refused to answer this question, claiming they could not answer it until

2    DC narrowed its requests and they were able to go back and review the withheld

3    documents to determine if trade secrets were implicated.  Mr. Kline pressed counsel

4    to explain their response but they refused to discuss the issue further on

5    Mr. Toberoff's instruction made during the call.

6          16.   Mr. Kline asked defendants whether they were withholding any

7    documents on grounds of their pending SLAPP motion.  Doc Mot., Appendix 1 at

8    31.  Counsel for defendants responded that, as noted in their letter, they were not

9    withholding any documents on the basis of SLAPP "alone."  Mr. Kline asked what

10   the "alone" qualifier meant and reminded counsel that defendants' SLAPP

11   arguments were rejected by this Court, Judge Wright, and the Ninth Circuit.

12   Defendants would only reiterate that no documents were being withheld on the

13   basis of the SLAPP statute "alone."  Mr. Kline asked defendants why they

14   continued using the qualifier "alone" in their responses, as it created an ambiguity.

15   Counsel for defendants responded that they would stand on their statements and not

16   discuss the issue further.

17         17.   Still unclear exactly what counsel for defendants meant, Mr. Kline

18   asked them whether DC would have to address defendants' arguments about the

19   *Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010), case, if DC were forced to file a

20   motion to compel.  Counsel responded that DC was aware of their *Godin* argument

21   and could deal with it however it wanted, but refused to say whether it had to be

22   addressed at all.  Mr. Kline reminded counsel of their Rule 37 obligations.  Defense

23   counsel responded by accusing DC of having already made the decision to file a

24   motion to compel and said defendants would address the SLAPP issue as they saw

25   fit when they received DC's brief.

26         18.   Mr. Kline stated the way he understood defendants' responses to DC's

27   requests for production of documents relating to Ari Emanuel (*E.g.*, Doc. Mot.,

28   Appendix 1 at 57-60 (Document Request Nos. 35-38)) was that defendants were in

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1   possession of responsive document but refused to produce them because they

2   asserted the requests were overbroad, and that defendants would continue to

3   withhold the documents until DC agreed to narrow the scope of the requests.

4   Counsel for defendants did not dispute this assertion.  Mr. Kline advised defendants

5   that, in DC's view, this refusal was not in compliance with their obligation to

6   produce documents to the extent the requests were not objectionable, and that it was

7   not DC's obligation go request-by-request and narrow its requests—when it

8   believed they were proper when served.  Counsel for defendants disagreed, stating

9   it was DC's obligation to suggest ways to narrow the scope of all of its requests—to

10  which defendants had objected—before defendants were obligated to make any

11  production.

12      19.   To further the meet-and-confer process and avoid this motion, Mr. Kline

13  asked defendants to walk DC through its requests and for defendants to identify

14  ways to narrow them.  Defense counsel refused, with Mr. Toberoff again arguing

15  that DC was seeking to waste defendants' time and money.  Mr. Kline, thus,

16  addressed the very few specific requests that defendants had discussed in their

17  meet-and-confer letter, and he proposed narrowing the scope of the Ari Emanuel

18  request to documents relating to Superman, the Siegel and Shuster heirs, and IP

19  Worldwide, in order to establish the general business relationship between Messrs.

20  Emanuel and Toberoff.  Counsel stated they might agree to DC's proposal, if DC

21  committed to not moving to compel, but the offer had to be put in writing.

22  Mr. Kline said he could not waive DC's rights to file a motion, but he agreed to

23  send a letter documenting a proposal for narrowing this request.

24      20.   Mr. Kline also stated that he understood defendants to be withholding

25  documents involving the various Toberoff-related business entities, including

26  Pacific Pictures Corporation, IP Worldwide, LLP, and IPW, LLC, on the same

27  grounds they were withholding documents relating to Ari Emanuel.  Counsel for

28  defendants did not dispute this assertion.  Mr. Kline again asked counsel to identify

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1    specific objections to these requests and proposed ways to narrow them, but they

2    again refused.  Mr. Kline stated that these refusals were posing a serious problem in

3    the case, especially given upcoming depositions, and that DC might have to re-

4    depose witnesses if defendants failed timely and appropriately to respond to DC's

5    discovery requests.

6        21.  Mr. Kline also asked defendants to produce all drafts and

7    communications relating to the declaration of Kevin S. Marks—the Siegels' former

8    attorney—filed on October 4, 2010, in connection with defendants' SLAPP motion.

9    Counsel for defendants requested that the parties postpone discussion of this issue

10   until they produced their amended privilege identifying the documents being

11   withheld—the Toberoff defendants' privilege log, produced on January 24, did not

12   list these documents.  Mr. Kline requested that defendants provide the amended log

13   by Wednesday, February 16, and asked that counsel advise him then of how many

14   documents were being withheld and on what grounds.  Counsel refused to commit

15   to providing the log earlier than Monday, February 21, and refused to comment on

16   the volume of documents or basis for withholding them.

17       22.  Mr. Kline advised counsel for defendants that the Toberoff defendants'

18   production of documents and privilege log suffered from the same deficiencies

19   addressed in DC's motion to compel challenging the Shuster and Siegel defendants'

20   responses.  Docket No. 160.  Counsel for both parties agreed that neither side

21   would re-brief the issues addressed in DC's motion to compel beyond addressing

22   any new issues related to the Toberoff defendants' responses.

23       23.  Mr. Kline concluded the conference by stating that DC would consider

24   any proposals by defendants that identified specific objections to each individual

25   interrogatory or document request, and not simply boilerplate objections.

26   Defendants made no promise to do so, and, in fact, never provided this detail.

27       24.  In the past, DC had sought to have its meet-and-confer sessions with

28   defendants transcribed to avoid these very sorts of disputes about what was said on

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

such calls.  Defendants initially agreed last fall, but then refused to follow this practice starting in December, as set forth in the correspondence attached hereto as Exhibit 1.

25.  Three days after the parties' meet-and-confer, Mr. Kline and I sent a letter to Mr. Toberoff and Ms. Brill.  Docket No. 207-12.  In it, he wrote that DC was still concerned about all of defendants' interrogatory responses:

> DC again advised defendants that it believes their responses to DC's first set of interrogatories were incomplete, misleading, and avoid directly responding to the question posed.  *For example*, defendants identify that Richard Kendall spoke with representatives from the U.S. Attorney's Office, and Mr. Toberoff met with the FBI, but they fail to describe those communications in detail as requested by DC's interrogatories.  Defendants additionally challenge the relevance of certain of DC's requests, including the investigation into the author of the Toberoff Timeline, David Michaels.  DC discussed several theories of relevance during the parties' conference and DC will address these and others, if it is forced to move to compel these documents.

Docket No. 207-12 at 492 (emphasis added).  Mr. Kline also pressed defendants to identify specific objections to DC's requests and how they proposed to narrow them on a request-by-request basis:

> Boilerplate Objections.  Defendants have raised boilerplate objections to every document request served by DC.  As it advised defendants and the law makes clear, it is not DC's obligation to go request-by-request to address these meaningless objections and propose narrowing of these requests to defendants.  *E.g., Walker*, 186 F.R.D. at 587; *Marchland v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994); *see also* Docket No. 125 at 22-27.  It is defendants' obligation to identify specifically what they believe is objectionable about DC's request so that DC can meaningfully respond during the parties' meet-and-confer efforts, and defendants have failed to meet that obligation—failing to produce the necessary documents, failing to produce the privilege logs that the law requires, and thereby waiving any claims of privilege as to all of these categories of documents (including the Ari Emanuel documents) as to which defendants are asserting these boilerplate objections.  *E.g., U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005); *Am. Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *9 (C.D. Cal. July 14, 2003); Docket No. 125 at 14-22. …

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1
2
3
4
5
6

      <u>Toberoff-Related Business Entities</u>.  DC understands that defendants are withholding documents responsive to DC's discovery requests involving the various Toberoff-related business entities, including Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC, and they will not produce them until DC has "appropriately tailor[ed] its broad request."  First, DC does not agree that its requests are overbroad.  Second, as discussed *supra*, defendants' blanket refusal to produce any documents based on their objection to scope of DC's request is improper.  Defendants were required to make a good-faith effort to produce obviously responsive documents. …

7

Docket No. 201-12 at 489-90.  He also pressed defendants to answer one way or the

8

other whether they were withholding documents on the basis of "other protections"

9

and/or their pending SLAPP motion:

10
11
12
13
14
15
16
17
18
19

      <u>"Other" Protections</u>.  Defendants refuse to confirm whether any documents are being withheld on the ground of "any other privilege or immunity available under law or arising from contractual obligation," or to identify what "other privilege" or "immunity" they are invoking beyond the attorney-client privilege, common-interest privilege, work-product doctrine, or protections allegedly afforded by the parties' JAMS agreement.  Defendants referred DC to their privilege logs and stated that whatever protections apply are listed therein.  However, defendants' logs do not identify *any* "other privilege" or "immunity" on which documents are being withheld.  At the same time, defendants argue that because DC's requests haven't been narrowed, they *could* implicate trade secrets that deal with private information not subject to disclosure.  Defendants' refusal to answer DC's simple question defies the purpose of Rule 37's meet-and-confer requirement.  DC demands that defendants identify what "other privilege" or "immunity" they are claiming, *if any*, or agree that these objections are waived.

20
21
22
23
24
25
26
27

      [SLAPP.]  Defendants have created an ambiguity by stating that "no documents are being withheld on the basis of this objection *alone*."  (emphasis added)  Defendants refused to remove the qualifier "alone" from their stated position, even though the Magistrate has already ruled in this case that SLAPP serves as no bar to discovery.  The District Court and Ninth Circuit have rejected defendants' repeated reliance on the SLAPP statute to block discovery, and yet defendants persist in so asserting.  Indeed, when DC asked whether it would have to address this objection in DC's forthcoming motion to compel, defendants refused repeatedly to state what their position is on this subject and asserted they would force DC to address such arguments in the 5-page supplemental filing on reply….

28

TOKORO DECL. IN SUPPORT OF DC'S MOTIONS TO COMPEL

Docket No. 207-12 at 490-91.  Mr. Kline reiterated that defendants' failure to provide a privilege log identifying withheld documents responsive to DC's requests concerning the declaration of Kevin Marks waived any claims of privilege.  He reminded defendants that DC raised this exact issue in November, and defendants were aware of the consequences of their decision:

> Defendants and their counsel admit that they do not represent Mr. Marks as his lawyer or in connection with the declaration he recently submitted in this case.  They also admit that they are withholding documents and communications related to his declaration and that those documents appear on none of the privilege logs defendants were required to produce weeks ago.  Defendants' failure to log these communications waives any claims of privilege.  *E.g.*, *Martin*, 278 F.3d at 1000; *Clarke*, 974 F.2d at 129; *Ramirez*, 231 F.R.D. at 410; *Am. Dental Ass'n*, 2003 WL 24141019, at *9.  Defendants are aware that the failure to produce privilege logs results in a waiver because, among other reasons, DC raised this exact issue in November when defendants similarly refused to log withheld documents.  *See* Docket No. 125 at 17-19.

> DC served its discovery requests on December 10 and requested that defendants respond no later than January 10.  DC agreed to extend defendants' time to respond by two weeks to January 24.  Still, defendants did not produce any documents responsive to Request No. 43 or a privilege log on January 25.  On February 4, DC sent defendants its Rule 37 letter describing the deficiencies of their discovery responses, but no log has been produced to date.  During our meet-and-confer, DC requested that an amended log be produced no later than Friday, February 18, and defendants refused to commit even to that.  It is too late, and defendants have waived any applicable protections.   Every day that defendants delay is a further waiver.

Docket No. 207-12 at 491-92.  Mr. Kline addressed defendants' responses to DC's requests for documents relating to Mr. Emanuel, the only category of documents defendants discussed specific objection to during the meet and confer:

> Defendants admit that they are withholding responsive documents relating to communications with Ari Emanuel on the asserted ground that DC's requests for production are "overbroad."  Defendants assert they will *not* produce *any* of those documents or logs until DC has narrowed the scope of its document requests.  Defendants' legal position is untenable, and they were required to make a good-faith effort to produce obviously responsive documents.

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

*E.g.*, FED. R. CIV. P. 34(b)(2)(C); W. SCHWARZER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1914 (2010) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 539 (D. Kan. 2003) ("the responding party still has a duty to respond *to the extent the request is not objectionable*") (emphasis added)). Defendants made a tactical choice not to do so, in violation of their discovery obligations.

In addition, defendants' boilerplate "overbreadth" objections as to all of the Ari Emanuel requests, are "inadequate and tantamount to not making any objection at all." *E.g., Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). DC raised this issue with respect to defendants' objections last Fall, and defendants rightly abandoned such spurious objections in the Court-approved stipulation and order dated December 7, 2010. Defendants are wasting everyone's time asserting and standing on such boilerplate objections once again. Indeed, defendants made no effort—*none*—in the two months since they received these document requests to produce Ari Emanuel documents, nor did they ever once propose a narrowing of DC's document requests to address this alleged overbreadth concern. Rather, defendants sought to forestall any discovery filing one frivolous pleading after another with the District Court and Ninth Circuit; they sought and obtained an extension to respond to these document requests—all the while promising to provide meaningful responses, when they had no intention to do so; and then they waited the full 10 days even to agree to a meet-and-confer on these issues—and then still proposed no narrowing of the requests, much less produced a single Ari Emanuel document.

Docket No. 207-12 at 488-89. As he had promised during the parties' meet-and-confer, Mr. Kline proposed to narrow DC's requests:

Solely in an effort to avoid burdening the Court with a motion to compel, and to assess whether defendants are really willing to engage in discovery in this case in good faith, DC proposes that defendants produce to DC, at its counsel's office, by Tuesday, February 23 at 5 p.m. PST, all documents (and necessary privilege logs) RELATING to: (a) Superman and/or Superboy; (b) the Siegel and Shuster Heirs; (c) any of the other named defendants in this case; or (d) the business and/or economic relationship(s) between any of the named defendants in this case and Mr. Emanuel. Please advise us by no later than February 18, at 10 a.m. PST, if defendants will agree to this proposal.

Docket No. 207-12 at 489. DC believed this proposal was reasonable because it responded to defendants' concern that the request asked for production of all documents relating to the "long-standing relationship" between Mr. Toberoff and

1    Mr. Emanuel that purportedly encompasses matters not relevant to this case.  In

2    addition, the requested documents are relevant to DC's Fifth Claim, which

3    challenges Toberoff's interference with DC's relationship with the Siegels.

4        26.   The next day, Ms. Brill responded to Mr. Kline's letter.  Docket No.

5    207-13:

6    •   Defendants refused to identify specific objections to DC's requests,

7        stating "it is not defendants' burden to narrow DC's overbroad

8        requests…."  Docket No. 207-13 at 496.

9    •   Defendants did not produce any documents concerning the Toberoff-

10       related business entities, asserting, "DC's requests must obviously be

11       narrowed before they can be fully responded to."  *Id.*

12   •   Defendants did not produce documents response to DC's requests relating

13       to communications with third parties regarding marketing the Siegels

14       and/or Shusters purported Superman rights.  Defendants argued that these

15       requests were overbroad because they would 'encompass any documents

16       'relating' to every major motion picture studio.'"  *Id.* at 498.

17   •   Defendants produced a privilege log identifying six withheld documents

18       relating to the Marks declaration, arguing their delay in providing the log

19       did not result in a waiver.  *Id.*

20   •   Defendants refused to confirm whether any documents were being

21       withheld on the basis of "other protections."  *Id.* at 497.

22   •   Defendants refused to confirm whether they would argue the applicability

23       of the SLAPP statute in response to DC's motions to compel.  *Id.*

24   •   Defendants again did not produce any document reflecting their alleged

25       "express agreement" with the government.

26   •   Defendants rejected DC's compromise regarding the document requests

27       related to Mr. Emanuel, asserting, "Even [DC's] supposedly 'tailored'

28       request would appear to be asking for every document 'related' to any

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

business dealing beweetn Mr. Toberoff and Mr. Emanuel." Defendants instead offered to produce: "All non-privileged communications between Mr. Emanuel and any defendant relating to Superman, Superboy; the Siegel Heirs and/or Shuster Heirs." Docket No. 207-9 at 495. DC could not accept this proposal because it seeks to shield from discovery, *inter alia*, documents relevant to establish the nature and extent of the relationships between Mr. Emanuel and defendants, as well documents that would show how Toberoff acts in his capacity as a *non-lawyer*—which is a key issue in the case. Docket No. 207-13 at 494-95.

## II.     DC'S MOTION AND DEFENDANTS' UNTIMELY OPPOSITION

27.   During the parties' meet-and-confer efforts, counsel for defendants requested that DC await resolution of DC's then-pending motion to compel, Docket No. 160, before filing the current motions. *See* Docket No. 207-11 at 481. DC waited until March 25 (almost a months after the hearing on its then-pending motions) to serve the two current motions at issue now. On March 25, I served defendants with DC's portions of joint stipulations regarding DC's Motion to Compel Production of Documents and Amended Privilege Logs from Toberoff Defendants and DC's Motion to Compel Six Interrogatory Responses from Defendant Toberoff. Docket No. 208-1. Both motions were set for hearing on April 25, 2011, and pursuant to Local Rule 37-2.2, defendants' opposition portions of the joint stipulations were due by April 1.

28.   On March 30—five days later and two days before their oppositions were due—defendants first informed DC that Mr. Toberoff and his counsel Richard Kendall and Ms. Brill were all "on holidays for spring break" and requested a one-week extension to April 11. Docket No. 208-2. Mr. Toberoff now admits he and Ms. Brill were *not* on vacation when DC served the joint stipulations. Docket No. 214 at ¶¶ 4-5. Mr. Toberoff also states that Mr. Kendall was on vacation when the

1    joint stipulations were served, but does not claim that he was unavailable any day

2    other than March 25.  *Id.*

3        29.   Defendants provided no explanation for why they waited five days to

4    request an extension to respond to DC's motions.  Nor did they explain why they

5    did not advise DC regarding their counsel's vacation schedule after receipt of the

6    motions.  Nor did they explain why attorneys other than Mr. Toberoff, Ms. Brill,

7    and Mr. Kendall could not initially prepare the opposition papers.  In fact, from his

8    declaration, it appears that Mr. Daum did significant work on defendants'

9    opposition papers, and during the week defendants claim they were too busy to

10   respond to this motion they made six separate filings in these cases, including an

11   uncalled for supplemental brief in support of defendants' dispositive motions.

12   Docket Nos. 191-96.

13       30.   On April 1, DC offered defendants a three-day extension to April 4 to

14   submit their opposition papers.  Docket No. 208-3 at 8.  DC expressed concern that

15   defendants waited five days after receiving DC's motions to request the extension,

16   and that counsel for defendants had made multiple filings in this action during the

17   week.  *Id.*; *see also* Docket Nos. 191-96.  Mr. Toberoff responded that DC's offer

18   was insufficient, but did not confirm whether or when defendants intended to serve

19   their oppositions.  Docket No. 208-3 at 7.

20       31.   On April 4, my colleague Cassandra Seto sent an email to counsel for

21   defendants reiterating DC's offer to give them until 12:00 p.m. that day to serve

22   their oppositions and informing defendants if they failed to provide their

23   oppositions, DC would file its motions to Compel pursuant to Local Rule 37-2.4.

24   Docket No. 208-4 at 10.

25       32.   Defendants did not serve their oppositions on April 4 and offered no

26   response to Ms. Seto's email until the next day.  On April 5, Ms. Brill responded by

27   letter to my colleague Daniel M. Petrocelli.  She did not provide any explanation

28   for defendants' delay in seeking an extension or why they never advised DC about

- 16 -                    TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1    counsels' vacation schedules upon receipt of the motion. Nor did she explain why

2    defendants did not respond to Ms. Seto's April 4 email in advance of DC's filings

3    of these motions. Attached hereto as Exhibit 2 is a true and correct copy of a letter

4    from Ms. Brill to Mr. Petrocelli dated April 5, 2011.

5         33.   Defendants filed their oppositions to DC's motions on April 11—ten

6    days beyond when they were due pursuant to Local Rule 37-2.2.

7         34.   Along with their oppositions, defendants produced a September 10,

8    2010, letter from the U.S. Attorney's office that they argued evinced the "express

9    agreement" that their disclosures did not result in a waiver of privilege. This letter

10   appears nowhere in defendants' logs, nor was it previously produced in response to

11   DC's informal discovery requests, document demands, or interrogatories. As

12   noted, during the parties' meet and confer, DC specifically asked for this

13   document—both in a letter and on our call—and defendants refused to produce it.

14   **III.    FURTHER EXHIBITS**

15        35.   Attached hereto as Exhibit 3 is a true and correct copy of a letter from

16   Ms. Brill to Mr. Petrocelli dated July 16, 2010.

17        36.   Attached hereto as Exhibit 4 is a true and correct copy of an email chain

18   between Ms. Brill and Mr. Kline, dated July 16 through July 25, 2010.

19        37.   Attached hereto as Exhibit 5 is a true and correct copy of Appellee DC

20   Comics' Opposition to Appellants' Response to Order to Show Cause Why Appeal

21   Should Not Be Dismissed for Lack of Jurisdiction filed in the United States Court

22   of Appeals for the Ninth Circuit in *Pacific Pictures Corp. v. DC Comics*, Appeal

23   No. 10-56594, dated November 24, 2010.

24        38.   Attached hereto as Exhibit 6 is a true and correct copy of Appellee DC

25   Comics' Opposition to Appellants' "Urgent" Motion for Stay Pending Decision on

26   Petition for Writ of Mandamus filed in the United States Court of Appeals for the

27   Ninth Circuit in *Pacific Pictures Corp. v. DC Comics*, Appeal No. 10-73851, dated

28   December 23, 2010.

TOKORO DECL. IN SUPPORT
OF DC'S MOTIONS TO COMPEL

1    39.    Attached hereto as Exhibit 7 is a true and correct copy of Appellee DC

2    Comics' Motion to Dismiss Appeal for Lack of Jurisdiction filed in the United

3    States Court of Appeals for the Ninth Circuit in *Pacific Pictures Corp. v. DC*

4    *Comics*, Appeal No. 10-56980, dated, December 30, 2010.

5    40.    Attached hereto as Exhibit 8 is a true and correct copy of Appellee DC

6    Comics' Reply in Support of it's Motion to Dismiss Appeal for Lack of

7    Jurisdiction, and DC Comics' Opposition to Appellants' Motion for Voluntary

8    Dismissal and Statement in Response to DC Comics' Motion to Dismiss filed in the

9    United States Court of Appeals for the Ninth Circuit in *Pacific Pictures Corp. v.*

10    *DC Comics*, Appeal No. 10-56980, dated January 12, 2011.

11    I declare under penalty of perjury under the laws of the United States that the

12    foregoing is true and correct and that this declaration is executed this 18th day of

13    April 2011 at Los Angeles, California.

14

15    _____

CC1:848270                    Jason H. Tokoro

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -                                    TOKORO DECL. IN SUPPORT
                                          OF DC'S MOTIONS TO COMPEL