# EXHIBIT 6

Appeal No. 10-73851

# United States Court of Appeals

### FOR THE

# Ninth Circuit

———————

Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff,
Mark Warren Peary, as personal representative of the Estate of Joseph Shuster,
Joanne Siegel, Laura Siegel Larson, and Jean Adele Peavy, *Defendants-Appellants,*

*v.*

DC Comics, *Plaintiff-Appellee.*

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NO. CV-10-3633 ODW (RZx)

———————

## APPELLEE DC COMICS' OPPOSITION TO
## APPELLANTS' "URGENT" MOTION FOR STAY
## PENDING DECISION ON PETITION FOR WRIT OF MANDAMUS

———————

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI (CA S.B. # 97802)
MATTHEW T. KLINE (CA S.B. # 211640)
CASSANDRA L. SETO (CA S.B. # 246608)
1999 AVENUE OF THE STARS, 7TH FLOOR
LOS ANGELES, CA 90067-6035
TELEPHONE: (310) 553-6700
FACSIMILE: (310) 246-6779

PERKINS LAW OFFICE, P.C.
PATRICK T. PERKINS (NY S.B. # 2603371)
1711 ROUTE 9D
COLD SPRING, NY 10516
TELEPHONE: (845) 265-2820
FACSIMILE: (845) 265-2819

*Attorneys for Plaintiff-Appellee DC Comics*

EXHIBIT 6
65

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

BACKGROUND FACTS ...........................................................................4

ARGUMENT ...........................................................................................11

    A.    The First Stay Factor:  Appellants Make No Showing Of Success—Much Less A "Strong" One—On The Merits Of Their Writ Petition..............................................................................12

        1.    DC Is Fully Entitled To Take Discovery On Its Federal Claims—None Of It Is Implicated By The SLAPP Statute..........................................................................12

        2.    The SLAPP Statute Itself And This Court's *Metabolife* Ruling Both Support DC's Taking Discovery On Its State-Law Claims....................................................14

        3.    The District Court's Orders Are Not "One-Sided" And Do Not Violate Due Process ....................................17

    B.    The Other Three Stay Factors:  Appellants Are Not Being Irreparably Harmed, And Nor Are Third Parties Or The Public Interest ....................................................................................18

CONCLUSION .........................................................................................20

- i -

EXHIBIT 6
66

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Barton v. U.S. Dist. Ct.*,
   410 F.3d 1104 (9th Cir. 2005) ...................................................................19

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct.*,
   408 F.3d 1142 (9th Cir. 2005) ............................................................12, 13

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004) .................................................................................14

*Chevron Corp. v. Bonifaz*,
   2010 WL 1948681 (N.D. Cal. May 12, 2010) ......................................16

*Childress v. Darby Lumber, Inc.*,
   357 F.3d 1000 (9th Cir. 2004) ...............................................................14

*Goldberg v. Pac. Indem. Co.*,
   2010 U.S. App. LEXIS 24841 (9th Cir. Dec. 6, 2010) .......................16

*Gray v. First Winthrop Corp.*,
   133 F.R.D. 39 (N.D. Cal. 1990) .............................................................14

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .............................................................6, 13

*In re Anonymous Online Speakers*,
   611 F.3d 653 (9th Cir. 2010) ..........................................................*passim*

*John Doe Agency v. John Doe Corp.*,
   488 U.S. 1306 (1989) ...............................................................................20

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
   37 Cal. App. 4th 855 (1995) ..................................................................17

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ...........................................................15, 17

*Moser v. Triarc Cos.*,
   2007 WL 3026425 (S.D. Cal. Oct. 16, 2007) ......................................15

*Nejo v. Wilshire Credit Corp.*,
   2010 WL 2888905 (S.D. Cal. July 21, 2010) .........................................6

*Nguyen v. County of Clark*,
   2010 WL 3211873 (W.D. Wash. Aug. 12, 2010) .................................16

*Nken v. Holder*,
   129 S. Ct. 1749 (2009) .............................................................................11

*Pacquiao v. Mayweather*,
   2010 WL 1439100 (D. Nev. Apr. 9, 2010) ...........................................16

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ...............................................................19

*Raining Data Corp. v. Barrenechea*,
   175 Cal. App. 4th 1363 (2009) .............................................................17

- ii -

EXHIBIT 6
67

*Ruckelshaus v. Monsanto Co.*,
  463 U.S. 1315 (1983)......................................................................11

*S.B. Beach Props. v. Berti*,
  39 Cal. 4th 374 (2006)....................................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010)...................................................................16

*Shropshire v. Fred Rappaport Co.*,
  294 F. Supp. 2d 1085 (N.D. Cal. 2003).................................15, 17

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
  634 F. Supp. 2d 1009 (N.D. Cal. 2007).......................................13

*U.S. v. U.S. Dist. Ct.*,
  384 F.3d 1022 (9th Cir. 2004)..................................................18, 19

*U.S. v. Peninsula Commc'ns, Inc.*,
  287 F.3d 832 (9th Cir. 2002)........................................................14

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
  377 F.3d 1081 (9th Cir. 2004)........................................................6

*Winter v. Natural Res. Def. Council, Inc.*,
  129 S. Ct. 365 (2008)....................................................................11

**STATUTES**

Cal. Civ. Proc. Code § 425.16(g).............................................15, 17
Cal. Civ. Proc. Code § 425.17.........................................................20
Fed. R. Civ. Pro. 12.........................................................................12
Fed. R. Civ. Pro. 56....................................................................1, 13
Fed. R. Civ. Pro. 72...........................................................................7

EXHIBIT 6
68

# INTRODUCTION

Appellants' stay motion should be denied because it challenges discretionary and clearly correct decisions of the district court and magistrate to manage their dockets and discovery, and because appellants have no entitlement to urgent relief.

1. Appellants style their writ as "Prohibiting District Court From Allowing One-Sided Discovery" and contend that, until December 17, DC never "informed Defendants that DC does not object to Defendants commencing discovery." Mot. at 11 n.4. These representations are false. In a November 23 filing with the district court, DC was explicit that it did not object to appellants' initiating discovery: "DC has never suggested to defendants that it would resist defendants' initiating discovery." Kline Decl. Ex. FF at 6:14. There is no "one-sided" discovery order in this case. It is a fiction appellants created to manufacture a basis for a stay order, to achieve their true tactical objective of precluding any discovery by DC. It is for that reason that appellants' proposed order seeks a *stay of all discovery*, Mot. at 20; Pet. at 30—*not* the ability to serve discovery also.

2. The filing of appellants' Rule 12 and SLAPP motions challenging DC's complaint does not operate to bar discovery. DC asserts three federal claims for relief. *None* is subject to a state-law SLAPP motion, and *all* the discovery DC seeks is directly relevant to its federal claims. Consistent with the orders of the magistrate and district court, it is not the law that Rule 12 motions foreclose

- 1 -

EXHIBIT 6
69

discovery by DC, especially because appellants' motions all turn on contested fact issues on which discovery is required. The magistrate and district court acted well within their discretion and the rules in allowing discovery on DC's federal claims, and such routine, discretionary rulings are not subject to an emergency writ or stay.

3. Appellants' arguments about California's anti-SLAPP statute are equally mistaken. The statute expressly authorizes the district court to allow discovery in order to oppose a SLAPP motion. DC filed extensive declarations and briefs demonstrating the need for such discovery, and the magistrate and district court rightly exercised their discretion to permit it. Appellants contend that "DC never made any in [sic] effort to show that it needed specific discovery to defend against Defendants' anti-SLAPP motion." Docket No. 3 at 4, 6-9. That is false. Among many other filings, DC submitted a *21-page declaration* on this precise issue. Consistent with the state SLAPP statute, this Court's decision in *Metabolife* makes clear that DC may take discovery to oppose appellants' SLAPP motion, pursuant to Rule 56(f). Appellants' claim that *Shady Grove* overrules *Metabolife* is specious, inconsistent with the SLAPP statute itself, and unsupported by any case law.

4. Appellants' assertion that the district court was required to decide their SLAPP motion within 30 days—and had no authority or discretion to manage its docket—is wrong. The text of the SLAPP statute plainly states that courts may defer such motions to manage their busy calendars. Appellants fail to quote this

- 2 -

EXHIBIT 6
70

provision or any of the numerous cases in which courts deferred ruling on SLAPP motions until discovery was complete. Appellants further neglect to mention that their Rule 12 and SLAPP papers resulted in the parties' submitting several thousand pages of filings to the district court—reason alone to defer rulings. Appellants also obscure that it was *their* decision to file an interlocutory appeal in October that led the district court to take their motions off calendar, pending that appeal. Finally, appellants fail to disclose that when DC asked them to stipulate that the district court's stay be vacated in its entirety so that the case could proceed apace, appellants refused. Appellants' asserted problems are of their own making.

5. There is no urgent basis for appellants' writ or stay motion. The magistrate held that the discovery DC seeks is *not* "duplicative" of discovery taken in other cases and established protocols for certain depositions to account for the advanced age and health of witnesses. Not only do appellants fail to disclose these rulings, they fail to mention that they chose not to object to them, thereby waiving these very arguments. Moreover, the orders now challenged by appellants were issued in late November, yet appellants waited weeks to seek a writ and stay — timing their filings so DC would need to respond over the Christmas holiday. When DC objected, appellants demanded DC agree to "adjust" the timing of its discovery, thereby affording appellants the very stay the courts below rejected. Such gamesmanship may not be used to secure emergency appellate relief.

- 3 -

EXHIBIT 6
71

## BACKGROUND FACTS

1.  Over the past 70 years, DC and its teams of artists and editors developed a vast Superman universe across all media.  Kline Decl. Ex. F ¶¶ 28-39.  In the 1930s, Joe Shuster and Jerry Siegel created certain initial elements of the character, and DC paid Shuster and Siegel millions of dollars for their work and established generous benefits for their families.  *Id*. ¶¶ 40, 47-48.  Neither Shuster nor Siegel ever exercised any purported right to terminate the copyright grants they made to DC.  *Id*. ¶ 50.  After they died, their heirs asserted such claims.  DC resolved its claims with the Shuster heirs in 1992 and the Siegel heirs in 2001, and DC has paid the heirs millions of dollars over the past 35 years.  *Id*. ¶¶ 51-57, 67-69.

In 2001 and 2002, appellant Marc Toberoff, a self-described film producer and entrepreneur, intervened.  Toberoff is also a lawyer, but as he told the *Wall Street Journal*, he "keeps a defined firewall between producing and legal matters." *Id*. Ex. P at 1.  Toberoff and his entertainment production companies unlawfully induced the Shuster and Siegel heirs to sever their contracts and relations with DC. He did so by defrauding the heirs and having them sign contracts with his companies granting *him* controlling interests in the heirs' asserted copyrights. Toberoff concedes certain of these contracts violate the Copyright Act.  *Id*. at 3-8.

2.  These facts gave rise to three cases pending in the district court.  In the first two cases, the Siegel heirs sued DC regarding rights to Superman and

- 4 -

EXHIBIT 6
72

Superboy.  After years of litigation—resolved largely in favor of DC, *id.* Ex. O at
5-6—what chiefly remains is an accounting trial on the limited amount the Siegels
are owed under the district court's rulings.  *Id.* Ex. Z at 7-12.

In this third case, filed May 14, 2010, DC asserts six claims.  The first three
claims arise under federal copyright law, challenge the copyright termination
notice the Shuster heirs served, and seek redress for violations by appellants of the
Copyright Act.  *Id.* Ex. F ¶¶ 105-73.  The latter three claims arise under California
law and mainly challenge the Toberoff parties' misconduct.  *Id.* ¶¶ 174-89.

3.  Promptly after filing its complaint, DC sought to commence discovery.
Appellants resisted and, for over two months, refused to participate in the required
Rule 26(f) discovery conference.  Only after DC moved to compel the conference,
did it occur.  *Id.* Ex. D at 2-4, 8-17; Ex. E at 1-9.  DC also sought to depose the
Shuster and Siegel heirs and to discover their documents.  Appellants refused,
forcing DC to move to compel on August 30.  *Id.* Ex. D at 8-11; Ex. E at 1-9.
Appellants cross-moved, asking the magistrate to issue a blanket, indefinite
discovery stay on the ground that they had filed Rule 12 and SLAPP motions.
They also asserted the discovery DC sought was "duplicative" of the prior *Siegel*
cases and that the heirs' age and health demanded a stay.  *Id.* Ex. D at 4-7, 17-39.

DC provided extensive evidence and argument refuting each of these points:

- DC showed how its first and third claims required new discovery; that
  neither of these federal claims was subject to a SLAPP motion, *Hilton v.*

- 5 -

EXHIBIT 6
73

*Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010); that appellants' Rule 12 arguments turned on fact issues on which discovery was needed; and that appellants' legal challenges to these claims contradicted clear law. *Id.* Ex. D at 2-4, 11-13; Ex. H at 5-7, 34-46, 49-55; Ex. I at 1-5.

- DC demonstrated how appellants' SLAPP motion expressly challenged the *factual* basis for DC's state-law claims and raised other fact issues, thus necessitating discovery—which both federal and state law allow. *Id.*

- And DC established, in pages of detail, how the discovery it sought in the new *Shuster* case was not duplicative of the *Siegel* cases, *id.* Ex. D at 2-4, 13-16; Ex. H at 5-7, 34-46; Ex. I at 1-5, and pointed to appellants' direct admissions that "'the *Siegel Litigations* do <u>not</u> concern Shuster's copyright interests in *Superman*,'" *id.* Ex. H at 49 (emphasis in original).

While these discovery issues were being briefed, DC exercised its right to make minor amendments to its complaint, and the district court, on September 7, rightly issued an order vacating appellants' original SLAPP motion as moot. Kline Decl. Exs. C, F; *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (amendment allowed); *Nejo v. Wilshire Credit Corp.*, 2010 WL 2888905, at *1-2 (S.D. Cal. July 21, 2010) (mooting motion). Appellants did *not* ask the court to modify or reconsider that ruling. Rather they revised and refiled their Rule 12 and SLAPP motions. Appeal No. 10-56594, Docket No. 7-1 at 2, 5.

On September 20, the magistrate ruled on the parties' discovery motions. He held "there's nothing that prevents the plaintiff from commencing discovery" and rejected appellants' argument that their Rule 12 and SLAPP filings barred discovery. *Id.* Ex. J at 56:14-60:7. The magistrate declined appellants' request to limit the scope of discovery—disagreeing with their "duplication" arguments—and citing the age and health of three of the heirs, imposed specific conditions for their

- 6 -

EXHIBIT 6
74

depositions and deferred them until November 15. *Id.*; *id.* Ex. K.

Appellants filed objections to the magistrate's refusal to order an indefinite

stay of all discovery in light of their SLAPP motion.  However, they specifically

*did not object* to his rulings on the "duplication" and "health and age" issues, *id.*

Ex. R at 2 n.2, thereby waiving appellants' repeated arguments—reasserted six

times each, in their current stay motion, Mot. at 2, 6, 8, 18-20—that "duplication"

and "health and age" concerns urgently demand a stay.  *See* FED. R. CIV. P. 72(a).

DC opposed appellants' renewed SLAPP and Rule 12 motions, making plain

in its briefs and a lengthy declaration that the motions were predicated on disputed

issues of fact requiring discovery.  Kline Decl. Exs. M-Q.  DC also refuted

appellants' erroneous charge that Toberoff was sued for his conduct as *a lawyer*,

demonstrating that Toberoff's actions were undertaken in pursuit of private

commercial interests on behalf of himself and his companies—and not in his

practice of law. *Id.* Ex. P at 1-8, 11-25.  SLAPP law is clear that such *business*

conduct—even if undertaken by a lawyer—is proper grounds for suit.  *Id.* at 12-13.

3.  Having lost their discovery motions, eleven days before their Rule 12 and

SLAPP motions were set to be heard on October 18, appellants filed a notice of

appeal challenging the district court's September 7 mootness order.  *Id.* Ex. S.  On

receipt of the notice, an order from the district court issued administratively staying

the case pending the appeal and vacating the October 18 hearing.  *Id.* Ex. U.

- 7 -

EXHIBIT 6
75

DC contacted appellants and sought their stipulation to vacate the stay, or to modify it to permit DC's *federal* claims to proceed or permit DC to take discovery. Appellants objected, forcing DC to file a motion on November 1. The primary relief DC sought was an order "to lift the general stay in the case." *Id*. Ex. V at 1:6. Appellants opposed, arguing the district court should maintain a stay of the entire case, and reminded the court of its broad discretion to fashion or modify the stay, which could be overturned only for "abuse of discretion." *Id*. Ex. V at 4, 10; Ex. W at ¶ 6; Ex. Y at 1:13-15, 8:10-10:26, 7:20-8:8. Appellants did *not* argue that the court should hear their Rule 12 or SLAPP motions without delay. Nor did they ague that, if the stay were modified, they would want to initiate discovery of DC or pursue counterclaims. Nor did DC oppose appellants' taking discovery.

On November 16, the district court modified its stay order, rewrote DC's proposed order in its own terms, and permitted DC to go forward with discovery pending the appeal. *Compare id*. Ex. X, *with* Ex. BB. On November 18, DC notified appellants it would proceed with its previously stayed motion to compel the production of documents and privilege logs appellants had refused to produce since September. On November 22, DC formally re-noticed Ms. Siegel's deposition for December 13. *Id*. Ex. T at 715; Ex. EE at 872-76.

Appellants refused to confirm this deposition date or to cooperate with DC's motion filing. *Id*. Instead, on November 22, they filed an *ex parte* application,

- 8 -

EXHIBIT 6
76

seeking once again to stay discovery—for the *very same reasons* the magistrate

and district court had now several times rejected. *Id.* Ex. FF at 1-7. Appellants

also argued, for the first time, that the court's modified stay order was unfair

because it "arguably" did not permit them to take discovery. *Id.* Ex. DD at 7:18-

8:10. DC's opposition brief, filed November 23, refuted any such suggestion and

made clear that DC agreed that appellants could take discovery:

> Defendants' only new argument—their last or "***Sixth***" argument—is
> that the Court's order "arguably" does not permit them to take
> discovery. *Ex Parte* App. at 7:18-8:10. This issue is neither ripe nor
> a ground for *ex parte* relief. To date, defendants have *never* served
> discovery on DC. Nor did defendants ask DC before they filed this
> "emergency" application whether DC would resist discovery on these
> grounds. In reality, DC has never suggested to defendants that it
> would resist defendants' initiating discovery.

*Id.* Ex. FF at 6. *Appellants <u>never</u> mention this in their writ or urgent stay motion.*

On November 24, the district court rejected defendants' application. *Id.* Ex. GG.

Despite this ruling, appellants continued to refuse to produce documents and

privilege logs owed to DC. On November 29, DC was forced yet again to move to

compel their production. *Id.* Ex. HH. DC also had to press for confirmation that

Ms. Siegel's deposition would occur December 13. *Id.* Ex. EE. In response,

appellants did not argue that emergency writ relief was necessary to shield them

from such discovery. Rather, on December 6, appellants agreed to stipulate to a

court order compelling the production of documents and logs in mid-December. In

the same stipulation and order, appellants and DC came to various agreements

- 9 -

EXHIBIT 6
77

regarding *reciprocal* discovery obligations. *Id.* Ex. II. In agreeing to this

stipulation, which the magistrate approved December 7, *id.* Ex. JJ, appellants *never*

*argued* there was a "one-sided discovery" order in this case. Nor can they now—

since the stipulation and order contain provisions regarding their discovery rights.

As for Ms. Siegel's deposition, DC had to move to compel her attendance on

December 10 when appellants said she would not appear on December 13, despite

their failure to move for a protective order. *Id.* Ex. EE. Appellants asked that the

deposition be moved to mid-January to accommodate Ms. Siegel and her family's

schedule and a ski vacation of her counsel. *Id.* at 881-83. In seeking the extension,

and in the discussions regarding logistics that ensued, appellants *never* disclosed

they intended to file a writ petition. Only after DC agreed to move her deposition

to January did appellants surface their "urgent" writ. *Id.* Ex. LL at 1155-57.

DC also served new document demands and interrogatories on certain of the

appellants on December 10. *Id.* Ex. KK. Appellants did not request an extension

to respond to that discovery. Instead, they used the service of that discovery as a

pretext to seek a writ and stay. *Id.* Ex. LL at 1175-78.

DC challenged appellants to explain the grounds for their writ petition, its

prejudicial timing, and the false facts on which their writ was premised—including

their claim there was a "one-sided discovery" stay. Email correspondence between

counsel ensued, in which DC urged appellants to apprise the Court of its positions

- 10 -

EXHIBIT 6
78

and to clarify appellants' factual misstatements.  Appellants refused and persisted

in their misleading statements.  *Id.* Ex. LL at 1158-64.  For example, DC sent

appellants an email at 7:56 a.m. on the morning appellants filed their writ petition,

reminding appellants: *"As for the current stay*, you have mischaracterized it.  *We*

*have made clear that DC does not object to defendants pursuing discovery…." Id.*

at 1172 (emphasis added).  Appellants nonetheless filed their writ that evening,

falsely asserting that DC had "failed to state that they would accept discovery from

Defendants notwithstanding the stay order." Pet. at 30 n.12.

**ARGUMENT**

Appellants come nowhere close to meeting their burden of showing the

"extraordinary circumstances" necessary to stay the courts' carefully considered

discovery and scheduling orders.  *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315,

1316 (1983).  In deciding whether such relief is warranted, the Court considers:

> (1) whether the stay applicant has made a *strong showing* that he is
> *likely to succeed on the merits*; (2) whether the applicant *will be*
> *irreparably injured* absent a stay; (3) whether issuance of the stay will
> substantially injure the other parties interested in the proceeding; and
> (4) where the public interest lies.

*Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) (emphases added).  Appellants say

the applicable standard is a "possibility of irreparable harm," Mot. at 9-10, but the

Supreme Court rejected that test as "too lenient" in *Winter v. Natural Res. Def.*

*Council, Inc.*, 129 S. Ct. 365, 375 (2008), held that such relief requires showing

that "irreparable injury is <u>likely</u>," *id.*, and overruled the cases appellants cite.

- 11 -

EXHIBIT 6
79

Appellants correctly acknowledge the first stay factor—"a *strong showing*" of likely success—is the "most important." Mot. at 9.  In evaluating this factor, the Court is guided by the "general principle that district courts have wide latitude in controlling discovery," and that—even on direct appeal—the Court reviews such rulings for "clear error as a matter of law" or "abuse of discretion." *Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1146-47 (9th Cir. 2005).  In this emergency context, the Court has "emphasized that the writ of mandamus is an 'extraordinary' remedy limited to 'extraordinary' causes," holding this limit on the writ "is particularly salient in the discovery context because the courts of appeals cannot afford to become involved with the daily details of discovery...." *In re Anonymous Online Speakers*, 611 F.3d 653, 658 (9th Cir. 2010).

**A.    The First Stay Factor:  Appellants Make No Showing Of Success—Much Less A "Strong" One—On The Merits Of Their Writ Petition.**

   *1.    DC Is Fully Entitled To Take Discovery On Its Federal Claims—None Of It Is Implicated By The SLAPP Statute.*

*All* the discovery DC seeks is directly relevant to its first and third claims for relief.  DC showed in lengthy briefing before the magistrate and district court why these federal claims are valid, implicate contested issues of fact, raise discovery issues not presented in *Siegel*, and require new discovery.  Kline Decl. Ex. D at 2-4, 11-13; Ex. H at 5-7, 34-36, 49-55; Ex. I at 1-5; Exs. P, Q, V, AA.  As this Court has held, "the anti-SLAPP statute does not apply to federal law causes of action."

- 12 -

EXHIBIT 6
80

*Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). Staying discovery

related to federal claims on the basis of the SLAPP statute would wrongly

"frustrate substantive federal rights." *Sonoma Foods, Inc. v. Sonoma Cheese*

*Factory, LLC*, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007).

These two essential points should be the beginning and end of the analysis.

There is no conceivable basis to stay the discovery DC seeks on its federal

claims—let alone on an emergency writ. Appellants argued to the magistrate and

district court that DC was not entitled to discovery on its federal claims; their

arguments had no merit and were repeatedly rejected. "[I]nterlocutory appellate

review is unavailable, through mandamus or otherwise," for such "ordinary

discovery orders." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 381 (2004).

Even if such review were permitted—and it is not—appellants offer no

reason why these rulings are "clear error as a matter of law." *Burlington*, 408 F.3d

at 1146-47. As vehemently as appellants may assert that DC's federal claims are

"meritless" and thus discovery should be barred, Mot. at 16—the district court and

magistrate disagreed. One obvious reason for this: appellants' arguments for

dismissing DC's federal claims conflicted with binding rulings that appellants

failed to cite in their Rule 12 papers. *E.g.*, Kline Decl. Ex. O at 4-11.

Appellants' only other complaint is that the district court has taken too long

to rule on their Rule 12 motions. But the October 18 hearing was derailed only

- 13 -

EXHIBIT 6
81

because appellants made the tactical choice to file their first—of now two—
interlocutory appeals, resulting in the stay that appellants opposed lifting. The
district court has ample discretion to permit discovery while Rule 12 motions
remain unresolved, as well as to decide when to reset them for hearing.[1] The rule
is that discovery may proceed even if a Rule 12 motion is pending,[2] and while
district courts have discretion to stay discovery pending such motions—Mot. at 16-
17 & n.9—the courts below *chose not* to stay discovery. That routine ruling is not
subject to writ relief. *In re Anonymous*, 611 F.3d at 658; *Cheney*, 542 U.S. at 381.

Indeed, when it suited their purposes, appellants argued the district court had
"inherent authority to manage its own docket in the interests of judicial efficiency."
Kline Decl. Ex. Y at 1. Now that they object, appellants ask this Court to issue a
writ instructing the district court when it must hear their Rule 12 motions. Absent
some sort of gross, inexplicable delay—years, not weeks or months—this Court
"cannot afford" to micromanage on what dates, and in what order, district courts
hear the hundreds of motions on their dockets. *In re Anonymous*, 611 F.3d at 658.

    2.   *The SLAPP Statute Itself And This Court's* Metabolife *Ruling Both*
             *Support DC's Taking Discovery On Its State-Law Claims.*

The district court and magistrate were correct in allowing discovery on DC's
state-law claims. Section 425.16(g) of the SLAPP statute affords trial courts

---

[1] *E.g., U.S. v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 838 (9th Cir. 2002);
*Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1009 (9th Cir. 2004).
[2] *E.g., Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

EXHIBIT 6
82

discretion to allow discovery to oppose a SLAPP motion on a showing of "good cause." CAL. CIV. PROC. CODE § 425.16(g). DC demonstrated to the magistrate and district court the need to take discovery to oppose appellants' SLAPP motion. DC made these showings in declarations and briefs before the magistrate, Kline Decl. Exs. D, H, V, AA, and in briefs and a lengthy declaration before the district court, *id.* Exs. P, Q. Appellants' claim that "DC has not identified any discovery needed to oppose the anti-SLAPP motion," Mot. at 19, is demonstrably false, and there is no basis under California law to upset the courts' rulings below.

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), confirms this. There, the Court held that Rule 56(f) entitles plaintiffs "to discover information" essential to its SLAPP opposition, *id.—e.g.*, where "a party brings an anti-SLAPP motion challenging the sufficiency of the nonmoving party's evidence." *Moser v. Triarc Cos.*, 2007 WL 3026425, at *3 (S.D. Cal. Oct. 16, 2007). Appellants suggest their SLAPP motion presents only *legal* arguments, Mot. at 5-6, Pet. at 20-25, but that is incorrect,[3] and discovery into such contested factual issues is regularly allowed. Kline Decl. Ex. P at 9-10 (citing cases); *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1100 (N.D. Cal. 2003).

Appellants assert *Metabolife* and California law are in conflict, and that Justice Stevens' concurrence in *Shady Grove Orthopedic Assocs., P.A. v. Allstate*

---

[3] *E.g.*, Kline Decl. Ex. L at 22 (SLAPP motion section heading: "Fifth Claim Fails Because There *Is No Evidence* That Toberoff Interfered") (emphasis added).

- 15 -

EXHIBIT 6
83

*Ins. Co.*, 130 S. Ct. 1431 (2010), compels *Metabolife* be reversed. This argument
is frivolous. In the context of Rule 23, Justice Stevens suggested that a federal rule
must yield to state law, if the federal rule "displace[s] a state law that is procedural
in the ordinary use of the term but is so intertwined with a state right or remedy
that it functions to define the scope of the state-created right." *Id.* at 1452. No
such conflict exists here. The Rule 56(f) discovery permitted in *Metabolife*
parallels—and does not "displace"—the "good cause" discovery allowed under
section 425.16(g) of the SLAPP statute. Appellants concede discovery "standards
under § 425.16(g) and FRCP 56(f)" are "similar." Kline Decl. Ex. R at 4 n.3.

No case has endorsed appellants' misreading of *Shady Grove*, and a recent
decision of this Court (not mentioned by appellants) cited *Metabolife* approvingly,
as well as the plurality opinion in *Shady Grove* that was critical of Justice Stevens'
deference to state law. *Goldberg v. Pac. Indem. Co.*, 2010 U.S. App. LEXIS
24841, at *6 (9th Cir. Dec. 6, 2010). Moreover, since *Shady Grove*, courts have
continued to recognize *Metabolife* as good law and granted plaintiffs discovery to
oppose SLAPP motions.[4] Appellants cite none of these cases, and instead argue—
without support—that cases like *Batzel*, which itself cited *Metabolife* approvingly,
333 F.3d at 1024, somehow overruled it *sub silentio*. Mot. at 14-15.

_____

[4] *E.g.*, *Nguyen v. County of Clark*, 2010 WL 3211873, at *3 (W.D. Wash. Aug.
12, 2010); *Chevron Corp. v. Bonifaz*, 2010 WL 1948681, at *3 (N.D. Cal. May 12,
2010); *Pacquiao v. Mayweather*, 2010 WL 1439100, at *1 (D. Nev. Apr. 9, 2010).

- 16 -

EXHIBIT 6
84

Finally, appellants argue the SLAPP statute "mandates" that their SLAPP motion "be heard and decided in a timely manner" and be "set for hearing within 30 days after service of the motion." Mot. at 12. Appellants cite section 425.16(f) for these propositions, *id.*, but fail to quote the part of that section that says a SLAPP motion may be heard later if "the docket conditions of the court require a later hearing." CAL. CIV. PROC. CODE § 425.16(f) (emphasis added).

Moreover, as noted above, section 425.16(g) permits discovery in advance of a SLAPP motion. Nothing in the statute "prevents the court from continuing the hearing to a later date so that the discovery it authorized can be completed where a reasonable exercise of judicial discretion dictates the necessity therefor." *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 868 (1995); *see Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1367 (2009) (SLAPP hearing held 15 months after filing after "series of continuances"). In cases in federal court, courts have the same discretion to defer SLAPP motions pending discovery. *Metabolife*, 264 F.3d at 846; *Shropshire*, 294 F. Supp. 2d at 1100.

    3.   *The District Court's Orders Are Not "One-Sided" And Do Not Violate Due Process.*

Appellants' due-process argument is based on the false premise that the district court imposed an "unfair one-sided stay in this case, which subjects [them] to unbridled discovery while" preventing them from pursuing discovery or counterclaims. Pet. at 18; Mot. at 15-16. In manufacturing this pretextual claim to

- 17 -

EXHIBIT 6
85

support appellate jurisdiction and relief, appellants conspicuously fail to mention that they *never* served discovery or asserted counterclaims; DC *never* opposed any effort to do either; and the trial court *never* ruled on any such request.  This Court "decline[s] to employ the extraordinary remedy of mandamus to require a district judge to do that which he was never asked to do in a proper way in the first place." *U.S. v. U.S. Dist. Ct.*, 384 F.3d 1202, 1205 (9th Cir. 2004).  It is also telling that the proposed order appellants now seek is a *blanket stay of all discovery*, Mot. at 20; Pet. at 30—*not* the right to serve discovery.

**B.    The Other Three Stay Factors:  Appellants Are Not Being Irreparably Harmed, And Nor Are Third Parties Or The Public Interest.**

*1.  Irreparable Injury.*  Appellants assert they will be harmed if required to respond to written discovery due January 10, and if Ms. Siegel is deposed January 12.  Mot. at 2.  That is unsupportable.  There is no harm in having to obey discovery obligations.  What appellants actually mean to say is that their tactics and strategy may be harmed—but not any cognizable right.

Appellants knew of Ms. Siegel's deposition since November 22, and they *waited almost a month* to file their supposed "urgent" writ.  In the interim, appellants negotiated a month-long extension of Ms. Siegel's deposition to allow her to attend appointments and accommodate defense counsel's ski vacation.  As for claims that Ms. Siegel's deposition would be "duplicative," or that her health

- 18 -

EXHIBIT 6
86

mandates a stay, the magistrate rejected those arguments and appellants failed to object—thereby waiving these arguments. *Supra* at 7.

Nor are appellants harmed by having to produce documents or answer interrogatories served December 10. But for their obstruction, appellants would have had to respond to this discovery months ago. There is no new urgency either. In early December, appellants begun to produce documents and privilege logs and negotiate *reciprocal* document-production protocols. The notion that appellants' receipt of written discovery on December 10 was a surprise or necessitated writ filing is wrong. Appellants knew in November the discovery stay in this case was being lifted, and after they were served with the written discovery on December 10, they *never* asked DC for an extension to respond to it or to narrow or limit it. Nor did they seek a protective order. Rather, they simply announced they would be filing a writ—which the law forbids. *U.S. Dist. Ct.*, 384 F.3d at 1205.

2. *Harm To Third Parties And The Public Interest.* The Court "exercise[s] mandamus jurisdiction to review discovery orders raising particularly important questions of first impression...." *In re Anonymous*, 611 F.3d at 658. There are no issues of first impression here—under SLAPP law or otherwise. *Supra* at 12-18. Nor is a discovery stay necessary to prevent disclosure, for example, of sensitive medical records of "thousands" of people, *Barton v. U.S. Dist. Ct.*, 410 F.3d 1104, 1109 (9th Cir. 2005), political campaign strategy, *Perry v. Schwarzenegger*, 591

- 19 -

EXHIBIT 6
87

F.3d 1147, 1152 (9th Cir. 2010), or documents federal prosecutors refuse to disclose, *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989).  DC does not seek to examine appellants' health records or their politics, but rather to explore their business dealings.  And while a handful of DC's interrogatories ask questions about a supposed investigation regarding a key witness in the case, the interrogatories are not directed at a federal agency, but appellants and their files. *Id.* Ex. KK.  Finally, no public interest is served by appellants' arguments.  While appellants wrap themselves in the flag of the SLAPP statute, the statute has no bearing on DC's federal claims, SLAPP does not bar discovery here, and the SLAPP statute strikes a balance between a plaintiff's right to pursue meritorious claims and a defendant's right to challenge them.  *S.B. Beach Props. v. Berti*, 39 Cal. 4th 374, 380 (2006).  Appellants' stonewalling approach to discovery "undermines [DC's] exercise of the constitutional right[] of … petition for the redress of grievances, contrary to the purpose" of the SLAPP statute, CAL. CIV. PROC. CODE § 425.17, and federal policy.

## CONCLUSION

Appellants' motion should be denied.

Dated:  December 23, 2010

DANIEL M. PETROCELLI
O'MELVENY & MYERS LLP

By:    /s/ Daniel M. Petrocelli
        Daniel M. Petrocelli
Attorneys for Appellee DC Comics

- 20 -

EXHIBIT 6
88

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rules 21-3 and 28-2.6, plaintiff-appellee DC Comics hereby identifies two related cases pending in this Court, both of which arise out of the same case in the district court:

    (1) *Pacific Pictures Corporation et al. v. DC Comics*, Case No. 10-56594.

    (2) *Pacific Pictures Corporation et al. v. DC Comics*, Case No. 10-56980.

Dated:  December 23, 2010

                         DANIEL M. PETROCELLI
                         O'MELVENY & MYERS LLP

                         By:  /s/ Daniel M. Petrocelli
                              Daniel M. Petrocelli
                         Attorneys for Appellee DC Comics

- 1 -

EXHIBIT 6
89

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d) and 32(a), I certify that plaintiff-appellee DC Comics' brief is proportionately spaced, has a typeface of 14 points or more, and does not exceed 20 pages.

Dated:  December 23, 2010

DANIEL M. PETROCELLI
MATTHEW T. KLINE
O'MELVENY & MYERS LLP

By:    /s/ Matthew T. Kline
       Matthew T. Kline
       Attorneys for Appellee DC Comics

- 1 -

EXHIBIT 6
90

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2010, I electronically filed the foregoing Appellee DC Comics' Opposition to Appellants' "Urgent" Motion for Stay Pending Decision on Petition for Mandamus with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  I certify that all interested parties in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on December 23, 2010, at Los Angeles, California.

_____
Matthew T. Kline

CCI:841674

- 1 -

EXHIBIT 6
91