DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>  Defendants. | Case No.  CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION TO COMPEL SIX INTERROGATORY RESPONSES FROM DEFENDANT TOBEROFF**<br><br>SUPPLEMENTAL DECLARATION OF DANIEL M. PETROCELLI, AND DECLARATION OF JASON H. TOKORO FILED CONCURRENTLY HEREWITH<br><br>**Judge**:      Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**:       Apr. 25, 2011<br>**Hearing Time**:       10:00 a.m. |

# TABLE OF AUTHORITIES

**Page**

I.   Introduction ................................................................................................... 1

II.  DC Properly Met And Conferred .................................................................. 1

III. Defendants Owe DC More Detailed Answers ............................................... 2

    A. Interrogatory Nos. 9 and 25 ..................................................................... 2

    B. Interrogatory Nos. 13 and 14 ................................................................... 8

    C. Interrogatory Nos. 17 and 18 ................................................................... 9

IV. Conclusion ................................................................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**CASES**

*Clarke v. Am. Commerce Nat'l Bank*,
  974 F.2d 127 (9th Cir. 1992) ......................................................................... 6

*Godin v. Schenks*,
  629 F.3d 79 (1st Cir. 2010) ........................................................................ 7-8

*Greensprings Baptist Christian Fellowship Trust v. Cilley*,
  2010 WL 5294273 (9th Cir. Dec. 27, 2010) ................................................. 7

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ...................................................................... 6-7

*Kob v. Cnty. of Marin*,
  2009 WL 3706820 (N.D. Cal. Nov. 3, 2009) ................................................ 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010) .................................................................................. 7

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ........................................................................ 7

*Nickerman v. Remco Hydraulics, Inc.*,
  2007 WL 3407437 (N.D. Cal. Nov. 13, 2007) .............................................. 5

*Shropshire v. Fred Rappaport Co.*,
  294 F. Supp. 2d 1085 (N.D. Cal. 2003) ........................................................ 7

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
  634 F. Supp. 2d 1009 (N.D. Cal. 2007) ........................................................ 7

*U.S. v. El Paso Co.*,
  682 F.2d 530 (5th Cir. 1982) ........................................................................ 6

*U.S. v. Martin*,
  278 F.3d 988 (9th Cir. 2002) ........................................................................ 6

# TABLE OF AUTHORITIES
## (continued)

Page

## STATUTES

Cal. Civ. Proc. Code § 425.16(g) ...................................................................................7

## OTHER AUTHORITIES

7 Claudia Wilken, Moore's Fed. Prac. § 33.101 (2011) ...................................5

## RULES

Fed. R. Civ. P. 26(b)(5) ..............................................................................................6

Fed. R. Civ. P. 33(b)(3) ..............................................................................................5

## I. INTRODUCTION

DC's motion to compel should be granted: Defendants' protestations about DC's meet-and-confer efforts are unfounded, and defendants do not and cannot dispute that Toberoff has failed fully to answer DC's interrogatories.

## II. DC PROPERLY MET AND CONFERRED.

Toberoff's assertion that DC failed to "meet and confer at all as to five of the six interrogatories [at] issue" is without basis. Opp. at 1. On December 10, DC served requests for production and interrogatories on defendants. Docket No. 207-5 at 11-48. Four days before their responses were due, defendants requested a two-week extension to respond—from January 10 to 24. Docket No. 207-8 at 79. DC agreed to the extension on the condition that defendants provide "substantive responses and not just blanket objections." *Id.* at 78. On January 24, defendants produced only a single new document; asserted objections that contravened rulings of the Magistrate, this Court, and the Ninth Circuit; re-asserted objections that defendants waived by stipulation and court order; and failed fully to answer to DC's interrogatories. Docket No. 207-9 at 80-471; Decl. of Jason H. Tokoro ¶¶ 5-26.

DC promptly requested a meet and confer in a detailed February 4 letter, which contrary to defendants' current assertions, expressly stated that *all* of defendants' interrogatory responses were suspect: "The Toberoff Defendants' responses to DC's first set of interrogatories are incomplete, misleading, and avoid directly responding to the question posed." Docket 207-10 at 478. DC discussed Interrogatory Numbers 4, 5, 6, 8, 9, and 11 as "examples" of the deficiencies that permeated the responses, *id.* at 478-80, but never limited its objection to those responses, either in this letter or in subsequent discussions, Tokoro Decl. ¶¶ 5-26.

Defendants waited the full 10 days before responding to DC's letter. Docket No. 207-11. On February 14, the parties met and conferred by telephone. During the conference, which lasted approximately an hour, DC pressed defendants for more details regarding their interactions with the government—the main subject of

- 1 -

DC COMICS' REPLY ISO MOTION TO COMPEL

the interrogatories now at issue. Tokoro Decl. ¶¶ 7-23. DC repeatedly asked defendants for more information in response to these interrogatories and to identify their specific objections. Defendants refused, asserting the information DC sought was privileged and irrelevant. *Id.* ¶¶ 11-13. The parties then exchanged letters on February 17 and 18, Docket Nos. 207-12, 207-13, and DC reiterated its concern that all of defendants' "responses to DC's first set of interrogatories were incomplete, misleading, and avoid directly responding to the question posed," Docket No. 207-12 at 492; *see also* Tokoro Decl. ¶¶ 25-26. There is simply no basis for defendants' assertion that DC did not confer on the issues addressed in its motion, as detailed further in the accompanying Tokoro declaration.

## II. DEFENDANTS OWE DC MORE DETAILED ANSWERS.

### A. Interrogatory Nos. 9 and 25

1. Relevance. Toberoff's claim that his communications with the government are of "little if any relevance," Opp. at 4:22, is unfounded. Defendants *concede* they purported to make a "selective" waiver of a trove of privileged documents to the government, and they notably do not dispute that those documents are responsive to DC's document requests or directly relevant and probative of the claims at issue. *Cf.* Opp. at 12-14; Docket No. 210 at 3-5. DC is entitled to know precisely what information and documents defendants shared with the government, because if DC prevails on its waiver of privilege arguments made in its companion motion, it is entitled to receive *all* of this information. *See* DC Comics' Reply ISO Mot. To Compel The Production Of Documents & Amended Privilege Logs From The Toberoff Defs. ("DC's MTC Reply").

In addition, defendants relied on the alleged governmental investigation in advancing litigation positions and in their SLAPP arguments to Judge Wright. Yet despite their claims that the Timeline author engaged in a chargeable criminal offense, defendants now concede that, but for one conversation they had with the FBI in 2007, they did *nothing* until late July 2010 to pursue the Timeline author

- 2 -

DC COMICS' REPLY ISO MOTION TO COMPEL

1  criminally, and they have never pursued him civilly. Docket No. 210 at 4. In fact,
2  it was when DC resisted defendants' efforts to bar any use of the Timeline in
3  discovery in this case—and DC refuted defendants' claims in meet-and-confer
4  discussions that DC acted inappropriately in relying on the Timeline document—
5  that defendants instigated this investigation. *Compare* Tokoro Decl. Exs. 3-4, *with*
6  Docket No. 207-9 at 440-441, *and id.* 408 (Entry 3130).

7  As is now apparent from defendants' discovery answers and opposition to
8  this motion, defendants' representations to Judge Wright and the U.S. Attorney's
9  Office were not complete or accurate. Their privilege logs and opposition brief
10 reveal that defendants *never* provided the U.S. Attorney's office with copies of
11 Judge Larson's or this Court's rulings holding that DC was entitled to a copy of the
12 Timeline and properly could use it to pursue discovery in this case. *Compare* Opp.
13 at 12-14, Docket No. 207-9 at 408-417 (Entries 3130, 3147-51, 3158-3161, 3217,
14 3228 and 3284), *with* Docket No. 74; Case No. CV 04-8400, Docket Nos. 374, 386.
15 Moreover, despite Toberoff's claim to Judge Wright that "[t]he theft of privileged
16 documents … and their transmittal with ... the 'Toberoff Timeline' … is the subject
17 of an ongoing grand jury investigation," defendants did not disclose to Judge
18 Wright (or anyone reading the briefing in this case) that *no witness*, including
19 Toberoff, had ever testified in front of the grand jury, and the only act of the grand
20 jury was to issue a subpoena for documents that Toberoff himself said *he wished* to
21 produce. Opp. at 10-12; Docket Nos. 207-9 at 443-44; 212 at 3-11.

22 The reality is that the Timeline author, as set forth in the Timeline, claims
23 that he witnessed Toberoff engage improper conduct that harmed DC, as well as the
24 Shusters and Siegels. Defendants waived any privilege in the Toberoff Timeline
25 document, as Judge Larson expressly held in 2008. Case No. CV 04-8400, Docket
26 Nos. 374, 386. As this Court previously ruled, DC now has the right to take
27 discovery of the Timeline author and others to explore these charges. Defendants
28 now seek to create the threat and specter of criminal jeopardy to forestall or limit

1  such discovery, but to counteract this, DC is entitled to full discovery from
2  defendants about what they have told—*and not told*—the government and what
3  defendants know about the government's response.  A full examination of these
4  issues is warranted and necessary to ensure that no witness's testimony is stifled.
5     2.  Completeness.  Interrogatory No. 9 asks Toberoff to "DESCRIBE in
6  detail any and all COMMUNICATIONS" between him "and any law enforcement
7  official, including anyone employed by the United States Attorney's Office …
8  and/or the Federal Bureau of Investigation" regarding the Timeline or its author.
9  Mot. at 3-4.  Despite this plain language, Toberoff claims this interrogatory "did not
10 ask for" information concerning (1) "everything defendants said to initiate [the
11 investigation]," (2) "communications regarding [the investigation's] status,"
12 (3) "evidence of an 'express agreement' concerning the privilege," or
13 (4) "documents defendants shared with the government."  Opp. at 5.
14    Based on this narrow misreading of DC's request, Toberoff's response omits
15 full answers on all of these critical subjects and, notably, defendants only disclosed
16 their alleged "agreements" with the U.S. Attorney's Office *after* DC filed this
17 motion.  DC's MTC Reply at 2-3 & nn. 1-2.  For this reason alone, DC's motions
18 were well-taken; they yielded communications that prove that defendants did *not*
19 have the type of agreement with the government that they represented, and that
20 *Toberoff himself volunteered* to produce defendants' allegedly privileged
21 documents—the government did not demand them.  *See id.*.  DC was entitled to
22 these details *before* it filed its motion, and *before* it was forced to spend days of
23 effort meeting and conferring with defendants.  At all events, DC is now entitled to
24 full answers on all the subjects above and in full response to Interrogatory No. 9.
25    This includes what happened when "Toberoff met with Stanley Ornellas, of
26 the Los Angeles FBI Field Office, regarding the Stolen Documents."  Toberoff says
27 they met, but he says nothing regarding the contents of those discussions, what
28 facts or documents he disclosed, or what the FBI communicated to him.  *Compare*

- 4 -

DC COMICS' REPLY ISO MOTION TO COMPEL

1  Mot. at 3-9, *with* Opp. at 4-7.  Moreover, while Toberoff and his counsel had at
2  least 13 written communications and several discussions with the U.S. Attorney's
3  Office, they still refuse to produce a log listing and dating all such communications,
4  including whether written communications included attachments, which as shown
5  in DC's accompanying reply brief is a significant omission.  *See* Mot. at 6-7; DC's
6  MTC Reply at 2-3 nn.1-2.  DC does not seek a "virtual transcript" of these
7  exchanges, Opp. at 5—just the "basic, specific details" to which it is entitled by
8  law—and not the selective snippets defendants tactically and incrementally have
9  decided to disclose.  *E.g.*, DC's MTC Reply at 1-4; *Nickerman v. Remco
10 Hydraulics, Inc.*, 2007 WL 3407437, at *3 (N.D. Cal. Nov. 13, 2007); FED. R. CIV.
11 P. 33(b)(3); 7 CLAUDIA WILKEN, MOORE'S FED. PRAC. § 33.101 (2011).
12      Likewise, Interrogatory No. 25 asks Toberoff to "DESCRIBE in detail any
13 and all COMMUNICATIONS … with *any PERSON* … RELATED to" the
14 Timeline or its author.  Mot. at 4-5.  Toberoff self-servingly recasts this request as
15 demanding his communications with the U.S. Attorney's Office and "*substantive*
16 communications he had with third parties about the Timeline and its author."  Opp.
17 at 10 (emphasis in original).  But this incomplete response—crafted pursuant to
18 defendants' undisclosed, subjective interpretation of the word "substantive"—
19 "fail[s] to comply with [this] discovery request."  *Kob v. Cnty. of Marin*, 2009 WL
20 3706820, at *5 (N.D. Cal. Nov. 3, 2009).
21      As for communications with the media, one DC identified and is entitled to
22 more information concerning is a press release—*which Toberoff does not dispute
23 he prepared and disseminated*—that "substantive[ly]" discusses the Toberoff
24 Timeline and goes so far as to accuse DC or its counsel of playing some role in its
25 preparation.  *See* Docket No. 207-2.  DC is entitled to know to whom defendants
26 sent this press release and with whom defendants discussed these false accusations.[1]

---

[1] Toberoff's contention that another article "expressly states that [he] was ***not***
interviewed for the article," Opp. at 10, is misleading at best.  The article states that

- 5 -

Toberoff also does not deny that he and his representatives engaged in other communications with motion-picture studios and other third-parties regarding the Timeline. *Cf.* Opp. at 10. Toberoff and his counsel chose to engage in these communications; DC may wish to take discovery regarding them; and defendants are obligated to respond to DC's request that ask defendants to identify these conversations. Toberoff's assertion that his communications with the private security company that investigated the Timeline are "clearly protected by the work product doctrine," Opp. at 9, is also unsupported. A party asserting privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002); *U.S. v. El Paso Co.*, 682 F.2d 530, 541-42 (5th Cir. 1982); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Toberoff submits no declaration documenting why the McNally Group's work merits protection; defendants just assert this is so. *Cf.* FED. R. CIV. P. 26(b)(5); FED. R. CIV. P. 26(b)(5), advisory committee note (requiring "sufficient information to enable [parties and Court] to evaluate the applicability of the claimed privilege").

    3. <u>Defendants' Oft-Rejected SLAPP Arguments</u>. Toberoff continues to press the argument—rightly rejected by this Court, Judge Wright, and the Ninth Circuit, Docket Nos. 95 at 57:3-5, 56:23-25; 117; 124; Appeal No. 10-73851, Docket No. 13—that California's anti-SLAPP statute bars the discovery DC seeks. Opp. at 8. All of the discovery DC seeks—and that this Court and Judge Wright ruled that DC may take—is directly relevant to DC's federal claims. "[T]he anti-SLAPP statute does not apply to federal law causes of action," *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010), and staying discovery related to federal

---

Toberoff was "contacted by the Am Law Daily" and repeats Toberoff's statement that he was contemplating legal action against the Timeline's author. Docket No. 207-3 at 5-6 ("Toberoff says he is considering reporting the associate's actions to the California bar."). Whether Toberoff or his counsel made these statements, DC is entitled to know what was said and by whom. The definition of "Toberoff" in DC's interrogatories includes both him and his counsel. Docket No. 207-5 at 13.

- 6 -     DC COMICS' REPLY ISO MOTION TO COMPEL

claims on the basis of the SLAPP statute would improperly "frustrate substantive federal rights." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007). DC has demonstrated this to this Court, Judge Wright, and the Ninth Circuit. *See* Docket Nos. 44-1 at 11-13; 181 at 9-11; Appeal No. 10-73851, Docket No. 6-1 at 12-17; Tokoro Decl. Exs. 5-8.

As for DC's state-law claims, Rule 56(f) permits the discovery DC is taking, *e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1099-100 (N.D. Cal. 2003), and the SLAPP statute itself entitles DC to discovery upon a showing of "good cause." CAL. CIV. PROC. CODE § 425.16(g). Over defendants' SLAPP arguments, Docket No. 112 at 7-11, Judge Wright issued an order on November 16, allowing DC to take discovery on its state-law claims. Docket Nos. 110; 115; 117 at 1 ("The stay imposed in the Court's October 15, 2010 order is hereby modified to allow DC Comics to take full discovery related to its state-law claims."). Defendants appealed and sought writ review of this ruling, but the Ninth Circuit rejected defendants' writ and dismissed their appeal with prejudice. Appeal No. 10-56980, Docket Nos. 4-1; 11; 12; Appeal No. 10-73851, Docket Nos. 6-1; 13.

Defendants now recycle for this Court the very arguments about *Metabolife* and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), that this Court, Judge Wright, and the Ninth Circuit rejected. Defendants, of course, also fail to mention intervening Ninth Circuit case law that undermines their arguments, Appeal No. 10-56594, Docket No. 11-1; Appeal No. 10-56980, Docket No. 4-1; Appeal No. 10-73851, Docket No. 11-1 (discussing *Greensprings Baptist Christian Fellowship Trust v. Cilley*, 2010 WL 5294273 (9th Cir. Dec. 27, 2010)), and instead rely on a recent First Circuit opinion, *Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010), that they presented to the Ninth Circuit to no avail. Appeal No. 10-56980, Docket Nos. 7, 8-1. *Godin* stands for the unremarkable proposition that defendants can use state SLAPP statutes to challenge *state*-law claims brought

in federal court, 629 F.3d at 87, but this has long been Ninth Circuit law, *Metabolife*, 264 F.3d at 845. *Godin*, moreover, says nothing about the *federal* claims on which DC is rightfully taking discovery, nor does it hold that the filing of a SLAPP motion bars discovery on DC's state-law claims. To the contrary, *Godin* recognizes that SLAPP statutes *authorize* certain discovery, and held that these discovery-permitting rules are in harmony with Rule 56, *see* 629 F.3d at 91-92— further proving that defendants' *Shady Grove* argument is without basis.[2]

4. Defendants' Privilege Claims. As explained in DC's concurrently filed reply on its document motion, defendants' claims that they shared a common-interest privilege with the government are factually and legally without basis.

**B.  Interrogatory Nos. 13 and 14**

These interrogatories require Toberoff to "DESCRIBE in detail" all persons who have "participated in the ALLEGED GRAND JURY INVESTIGATION" and "the substance of any testimony or statements made in connection with" that investigation. Mot. at 10. Toberoff's response that, aside from his own communications with the U.S. Attorney's Office, he "is not aware of any other testimony or formal statements" made "as part of the ongoing grand jury investigation" does not fully answer DC's actual questions. Mot. at 11.

These interrogatories are not limited to "testimony or *formal statements*" made in connection with the investigation, *cf.* Opp. at 11—they expressly encompass "*any testimony or statements*," without qualification. Mot. at 10 (emphasis added). Toberoff's response fails to identify, for example, many communications between his attorneys (or others) and the U.S. Attorney's Office. *See* Docket No. 207-9 at 413-414 (Entries 3217, 3228), 417 (Entry 3284); DC's MTC Reply at 1-3. Toberoff must be compelled to confirm whether there were additional communications with the government aside from "formal statements."

---

[2] These arguments concerning the SLAPP statute apply equally to DC's pending motion to compel the production of documents and defendants' opposition thereto.

1  DC's interrogatories are also not limited to statements made "before the
2  grand jury" or "to the grand jury," *cf.* Opp. at 12—they clearly seek *all* statements
3  made "*in connection with* the ALLEGED GRAND JURY INVESTIGATION,"
4  Mot. at 10 (emphasis added), which is broader. While Toberoff's responses and
5  opposition carefully parses these words, he never confirms whether he is aware of
6  additional statements made in connection with the investigation. *Cf.* Opp. at 12.

### C.   Interrogatory Nos. 17 and 18

These interrogatories ask Toberoff to "IDENTIFY all DOCUMENTS" that were "provided" to the government "in connection with the ALLEGED GRAND JURY INVESTIGATION." Mot. at 12. Toberoff seizes on the word "provided" here to suggest DC seeks information now that it never requested in its interrogatories. Opp. at 12-13. That is untrue, as Interrogatory No. 9 shows.[3] In any event, Toberoff's attack avoids responding to the thrust of DC's concern about Interrogatories 17 and 18, which is that his vague responses failed to fully answer whether Toberoff or his representatives provided any documents to the government, in addition to the Timeline and so-called "Stolen Documents"—despite having several meetings and exchanging over a dozen e-mails. *See* Mot. at 13-14.

Moreover, despite all the *ad hominem* and heated rhetoric about how his responses were transparent, Toberoff never explains what the "without limitation" qualifier in his responses means, and whether it is a basis for refusing to identify or produce still more responsive, non-privileged documents. *Cf.* Mot. at 13-14. Toberoff's assertion that "[i]t is hard to conceive how [his] response could have been more clear," Opp. at 14, omits any discussion of this inscrutable qualification to his responses. At the very minimum, Toberoff should be compelled to submit

---

[3] "DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official, including anyone employed by the United States Attorney's Office for the Central District of California and/or the Federal Bureau of Investigation, regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE."

- 9 -  DC COMICS' REPLY ISO MOTION TO COMPEL

supplemental responses that omit this qualification and that list *any and all* communications with the government. Alternatively, he should be required to log all documents and communications he claims are privileged. Defendants may insinuate that such a complete log was provided, but it was not, as DC's contemporaneously filed reply illustrates. DC's MTC Reply at 1-3 & nn. 1-2.

## III. CONCLUSION

DC's motion should be granted.

Dated: April 18, 2011

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

CC1:847984