# EXHIBIT C

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

* Also admitted in New York

mtoberoff@ipwla.com

January 4, 2011

Via E-Mail

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:   *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Matt:

This letter is in response to your December 29, 2010 letter regarding the December 21, 2010 meet-and-confer with respect to defendants' document production and privilege logs. As with your letter, this is not intended to be a complete statement of defendants' position and all of defendants' rights on these subjects are expressly reserved.

Notwithstanding that the parties agreed at the meet and confer not to quote back or characterize the other sides' statements, your letter misconstrues and/or mischaracterizes defendants' positions at various points.   We address some, but have not attempted to address all such instances, below.

As to the specific issues raised in your letter:

1. *Dennis Larson/Laura Siegel Documents*:  All of the documents listed on the Siegels' privilege logs wherein Dennis Larson is listed as an author or a recipient entail Dennis Larson acting as an attorney.

It appears from your request for "communications she or her counsel had with her ex-husband or his counsel" that you are asking for documents from Ms. Siegel and Mr. Larson's divorce proceedings.  Such documents appear irrelevant to this case; however, we remain willing to discuss this relevance issue with you.

2. *To/cc/bcc*:  As I stated in our meet and confer, defendants endeavored to list all recipients in their privilege logs, including those "cc'ed" or "bcc'ed."  You cite no authority that a party is further required to break down on a privilege log the recipients of a communication by "to," "cc" or "bcc."  Nor have you provided any rationale for your demand. Given that your request would

EXHIBIT C
13

**TOBEROFF & ASSOCIATES, P.C.**

January 4, 2011
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 4

involve defendants re-reviewing every communication listed, including voluminous litigation communications since 2004, and would thus be extremely time-consuming to no particular end, defendants are not willing to undertake this burdensome exercise.

3. *Chains of Communications*:  Defendants endeavored to log each communication separately on the numerous newly logged documents in this case, and with respect to prior privilege logs previously approved by the court in the *Siegel* litigations, incorporated the logs as they were.

4. *List of Counsel:*  In exchange for your express agreement to identify all Plaintiffs' counsel for which internal communications are not logged, we are willing to identify all such "Defendants' counsel."  Please confirm this agreement specifically and unequivocally.

5. *Subject Matter of Communications*:  While we disagree with your assertions, defendants are willing to enter into a reciprocal agreement with plaintiffs to mutually list the subject matter of logged documents. Pursuant to such an agreement, defendants would specifically designate all logged documents that reflect or refer to the so-called "Consent Agreement" or the "Toberoff Timeline," while litigation update communications will be listed as "LU."  In exchange, DC would specifically designate all logged documents that reflect or refer to the following topics: the "Toberoff Timeline"; the "Stolen Documents"; the "JAMS Confidentiality Agreement"; Warner Bros. and/or DC's decision to sue Marc Toberoff and related entities; publicity regarding the initial filing of the *DC Comics* action; the corporate restructuring of DC in 2009 and any "DC summit" (or meetings) with respect thereto; and the purported "escrow" account created by DC in connection with the alleged 2002 settlement agreement.

6. *Michael Siegel Communications*:  DC's position with respect to these documents is grossly overreaching and unwarranted.  The Ohio Court already clearly denied DC's request to produce "joint interest" documents beyond the 15 already produced, in part because DC's motion "was geared to obtain recent, non-privileged correspondence," and because "[the] date chosen as a starting point, the date after settlement negotiations broke down between Movants and Plaintiffs, was also reasonable."  August 13, 2008 Order at 6.  Furthermore, the Ohio Court distinguished and ordered the production of only 15 Michael Siegel communications because it found that those specific "documents relate to the offers …to purchase Michael Siegel's interest.  The primary subject *does not relate to settlement offers regarding Warner Bros.* or the risk of litigation."  April 1, 2008 Order at 3.

DC had a full and fair opportunity to secure such documents, and successfully compelled the production of the 15 documents, but its motion to compel additional Michael Siegel communications was specifically denied. DC did not appeal that ruling and is bound by it.

Lastly, the documents sought in your letter go far beyond "joint interest" communications, and include pure attorney-client communications between Michael Bulson and his attorney (*e.g.,* Entry No. 127) without any legitimate basis.

EXHIBIT C
14

**TOBEROFF & ASSOCIATES, P.C.**

January 4, 2011
Re:   *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 4


7. *Privilege Log Entries 715/716*:  As we stated in both our meet-and-confer and many times previously, Warner Bros., DC and their counsel's repeated attempts to exploit documents stolen from my law offices are more than improper.  After Warner Bros. represented and convinced Magistrate Zarefsky in the *Siegel* litigation that it had carefully followed the sanitizing protocols of *State Fund*, it became blatantly obvious that this was not true.  This is clear from Mr. Smith's subsequent declarations (once the reference to Magistrate Zarefsky had been withdrawn by Judge Larson), recalling with alleged photographic precision documents he had purportedly only "thumbed through" years earlier, and is just as obvious from Warner Bros. and DC's repeated efforts to peak beneath the Siegels' privilege logs in search of alleged specific stolen documents.

You have misstated our position with respect to this issue.  Warner Bros. and DC's repeated and improper attempts to convince several different courts, as well as their purported "escrow attorney," to "peek behind" the Siegels' privilege logs, have each been rejected.  DC's endless attempts to re-litigate in this action every ruling against them in the *Siegel* action will not be permitted.

8. *Consent Agreement*:  Defendants will not be producing copies of the so-called "consent agreement" or "collective bargaining agreement" which was entered into and disclosed solely in connection with a court-ordered settlement mediation and pursuant to the parties' JAMS Confidentiality Agreement. Warner Bros., DC and their counsel have willfully breached such Agreement by their public references to the "consent agreement." Your letter omits that in addition to the strict protection afforded by the JAMS Confidentiality Agreement, the "consent agreement" is equally protected by the attorney-client privilege and the attorney work product doctrine, as consistently asserted by the Siegels and Shusters.

9. *Retainer Agreements:*  DC refuses to produce copies of its retainer agreements, while demanding that defendants produce theirs.  DC's retainer agreements and the information therein – such as the date of your firm's retention, and the existence therein of indemnification provisions regarding your SLAPP suit and malicious prosecution of opposing counsel and our potential counterclaims – will be very relevant to defendants' counterclaims.  Defendants remain willing to produce redacted copies of their retainer agreements, if DC will agree to produce its.

10. *Timeline Documents*:  You innocently twisted our statement.  We did not say that "DC should not rely on the accuracy of the Timeline"; we clearly stated that the ranting anonymous "Timeline" was inaccurate and untrustworthy.

One clear example is the "December 16, 2002 letter from Marc Toberoff and Ari Emanuel" that you describe in your letter.  There is no such letter.  However, a December 16, 2002 letter from Marc Toberoff to Ari Emanuel, Joanne Siegel, and Laura Siegel Larson was long ago produced to DC by the Siegels in the related *Siegel* actions at 01883-01884, as described in my May 21, 2007 declaration.  This letter was also "produced" in this action by the listing of these Bates nos. pursuant to the parties' stipulation.

EXHIBIT C
15

**TOBEROFF & ASSOCIATES, P.C.**

January 4, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  4 of 4


As to the "September-October 2003 '[l]etter with Ari Emanuel in which he would receive $2.5 million flat fee for "negotiating services,"'" we cannot find any document matching that description.

11.  *Entry No. 623/Entry No. 325*:  We can confirm that the Siegel Defendants' Entry No. 623 is the same as Entry No. 325 in the revised privilege log that was served on DC on September 29, 2006 pertaining to the files that were in the offices of Gang, Tyre, Ramer & Brown.

Please contact me to discuss the remaining points.  It appears that your contemplated motion will involve subjects (2), (6), (7), and (8), as well as (5), if the parties are unable to firm up a compromise on that issue, and (9), if DC remains unwilling to enter into a reciprocal production agreement.

Lastly, I will be out of the state from January 5 and will not return until January 11, 2011, Joanne Siegel's deposition is scheduled for Wednesday, January 12 and Friday, January 14, 2011, and our opposition to DC's recent motion to dismiss in the second *DC Comics* appeal is due January 10, 2011. Accordingly, with respect to the discovery served by DC on December 10, 2010, which is currently due January 10, 2011, we would appreciate the courtesy of a brief extension until January 24, 2011 to respond.

Very truly yours,

Marc Toberoff

EXHIBIT C
16