# EXHIBIT D

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California 90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

January 5, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL & U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:  *DC Comics v. Pacific Pictures Corp. et al.*, **CV-10-3633 (ODW) (RZx)**

Dear Marc:

      Thank you for your letter of last night concerning our ongoing meet-and-confer efforts related to your clients' recent document production and privilege logs. Contrary to your suggestion, my December 29 letter did not misstate defendants' positions. As we move forward with our motion to compel, defendants' failure meaningfully to address many of the points in my letter does not help frame or narrow the issues for the Magistrate.

      As for the numbered points in your letter:

      1. The parties' court-approved stipulation and order requires defendants to produce or identify by Bates number all responsive, non-privileged documents. Defendants' new arguments about the relevance of responsive communications at issue—which I, in fact, addressed on our December 21 call—are not a basis to withhold any such materials. We will move to compel the production of these materials and seek other relief for defendants' violation of the Court's order.

      2. We explained our rationale for this request on our December 21 call and will move to compel this information.

      3. Based on your change of position, we will move to compel the production of privilege logs that list all recipients in chains of communications separately. As you know, we have concerns about defendants' seeking to cloak non-privileged documents on the basis that they were at some point sent to counsel. Defendants' logs, which jumble when and how such communications were shared, prevent us from probing this issue.

      4. We agree. Please send us your list immediately or we will include this issue in our motion.

O'MELVENY & MYERS LLP
January 5, 2011 - Page 2

     5. We do not understand certain of the "subject matter" categories you propose; others are plainly inappropriate. Nor does your proposal, which is by definition under-inclusive, make sense. We will move the Court to compel the parties to list subject matters for documents on their respective logs.

     6. We disagree and will move to compel the production of these documents and/or their inspection *in camera*.

     7. We disagree and will move to compel the production of these documents and/or their inspection *in camera*.

     8. We disagree and will move to compel the production of these documents and/or their inspection *in camera*.

     9. We disagree and will move to compel the production of these documents and/or their inspection *in camera*. As to your other points, defendants have filed no counterclaims or even disclosed to us the existence or nature of any such claims. Suffice it to say, no counterclaims are currently at issue and there is no basis to be addressing them at this juncture.

     10. There were two other communications mentioned in the Toberoff Timeline that you did not address in your letter. They are (1) a May 13, 2003, letter from Michael Siegel to Laura Siegel Larson, and (2) a June 5, 2003, letter from Laura Siegel Larson to Michael Siegel. Please produce these letters, tell us where they are on defendants' privilege logs, or confirm that these two documents do not exist by the close of business tomorrow.

     11. Thank you for that confirmation.

     Continuing to reserve all rights to address other issues with defendants' document productions and logs, there is one additional issue we need to raise. The Notices of Deposition and Requests for Production of Documents served on Jean Peavy, Joanne Siegel, Laura Siegel Larson, and Mark Warren Peary on August 17, 2010, instructed the witnesses "to produce all DOCUMENTS that are responsive to these Requests and that are in YOUR possession, custody, or control."[1] The requests defined "YOU" to include each of these witnesses personally "and, as applicable, any PERSON acting on [his or] her behalf, including but not limited to [his or] her agents, employees, attorneys, and representatives." *Id*. at 2. The requests instructed each witness to produce, *inter alia*, "All DOCUMENTS relating to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY" and "All DOCUMENTS relating to the potential sale, assignment, license, or other disposition of any

---

[1] Notice of Dep. of Def. Joanne Siegel and Req. for Produc. of Docs at 4 (served Aug. 17, 2010). Requests sent the same day to Jean Peavy, Laura Siegel Larson, and Mark Warren Peary included the same insutruction with only minor differences to reflect the identity of the respective witness.

O'MELVENY & MYERS LLP
January 5, 2011 - Page 3

rights relating to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement." *Id.* Requests Nos. 8 and 11. Pursuant to the parties' stipulation, approved by court order of the Magistrate, defendants agreed that:

> By 6:00 p.m. PST on December 7, 2010, Defendants will produce, by personal service on DC's counsel at its Century City offices, all documents and other materials responsive to each and every one of DC's Requests, except for documents that are subject to a claim of attorney-client privilege, the attorney work product doctrine or any other privilege available under law, or to a claim that such responsive documents and other materials are protected under the parties' May 1, 2008 JAMS Confidentiality Agreement (collectively, "Privilege" or "Privileged"). *Aside from documents and materials subject to such a claim of Privilege or falling under the exception set forth in sections (4) and (5) below, Defendants will not refuse to produce or refuse to log any documents or materials based on the objections Defendants previously asserted in their responses to DC's Requests.*

Docket No. 132 at 1 (emphasis added).

None of the productions of Ms. Peavy, Ms. Siegel, Ms. Siegel Larson, or Mr. Peary made on December 7 included the Toberoff Timeline or other documents Judge Larson ordered produced related to it, nor were such documents referred to by Bates number in defendants' letter accompanying their document production. The Toberoff Timeline and other documents Judge Larson ordered produced clearly "relat[e] to" the "disposition, division, or ownership" of the Heirs' purported Superman rights, and were responsive to the requests for production quoted above. The Timeline itself notes, for example, that the 2003 PPC Agreement provides that "all moneys and proceeds, in cash or in kind, received from the enforcement, settlement, or exploitation of any of the Rights … would be split 50/50" between the Shuster Heirs and Pacific Pictures Corporation. Bates No. Q 0003. It also states that, "**Combined with the Schuster [sic] interest, the aggregate of any outcome in SUPERMAN litigation for Marc Toberoff** *personally* **becomes 47.5% of the entire Superman interest.**" *Id.* at 0006 (emphasis in original). Likewise, the Timeline describes purported offers to purchase various parties' Superman interests, including "a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds from exploitation of the Siegels' rights," as well as efforts to purchase Michael Siegel's interest. *Id.* at 0002, 0006. Numerous additional Requests implicate events described in the Timeline, including Requests 6, 7, 9, 10, 12, 13, 14, 15, 17, 23, and 26 directed to Ms. Siegel and Ms. Larson, as well as Requests 4, 5, 7, 8, 10, 11, 12, 19, and 20 directed to Ms. Peavy and Mr. Peary.

We intend to raise these issues in our motion with the Magistrate as well, but before we do so want defendants' explanation for their failure to produce or identify these obviously responsive documents. The failure to produce or identify these responsive documents raises concerns generally about the thoroughness of defendants' productions. If you intend to provide

O'MELVENY & MYERS LLP

January 5, 2011 - Page 4

an explanation or additional information regarding these issues, please do so by the close of business tomorrow.

  Finally, we will get back to you separately regarding your request for an extension on the additional discovery we served in December.

  Thank you for your time and attention to these matters.

            Very truly yours,

            Matthew T. Kline
            of O'MELVENY & MYERS LLP

cc: Daniel M. Petrocelli

CC1:842268.1