1

2                    UNITED STATES DISTRICT COURT

3                  CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
4


5
    DC COMICS,                        )
6                                     )
                                      )
7          PLAINTIFF,                 )
                                      )
8          VS.                        ) CASE NO. CV 10-03633-ODW(RZX)
                                      )
9                                     )
    PACIFIC PICTURES CORP. ET AL.,)
10                                    ) LOS ANGELES, CALIFORNIA
                                      ) APRIL 25, 2011
11                                    ) (2:20 P.M. TO 3:22 P.M.)
           DEFENDANTS.                )
12   _____)


13                              HEARING
14              BEFORE THE HONORABLE RALPH ZAREFSKY
                   UNITED STATES MAGISTRATE JUDGE
15


16


17


18   APPEARANCES:            SEE NEXT PAGE

19   COURT REPORTER:         RECORDED; COURT SMART

20   COURTROOM DEPUTY:       ILENE BERNAL

21
     TRANSCRIBER:            DOROTHY BABYKIN
22                           COURTHOUSE SERVICES
                             1218 VALEBROOK PLACE
23                           GLENDORA, CALIFORNIA  91740
                             (626) 963-0566
24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        O'MELVENY & MYERS LLP
 2                             BY:  DANIEL M. PETROCELLI
                                    ATTORNEY AT LAW
 3                             400 SOUTH HOPE STREET
                               18TH FLOOR
 4                             LOS ANGELES, CALIFORNIA  90071

 5                             O'MELVENY & MYERS LLP
                               BY:  MATTHEW T. KLINE
 6                                  JASON TOKORO
                                    ATTORNEYS AT LAW
 7                             1999 AVENUE OF THE STARS
                               7TH FLOOR
 8                             LOS ANGELES, CALIFORNIA  90067

 9
     FOR SIEGEL AND SHUSTER    TOBEROFF & ASSOCIATES, P.C.
10   DEFENDANTS:               BY:  KEITH ADAMS
                                    ATTORNEY AT LAW
11                             2049 CENTURY PARK EAST
                               SUITE 2720
12                             LOS ANGELES, CALIFORNIA  90067

13   FOR PACIFIC PICTURES:     KENDALL BRILL & KLIEGER LLP
                               BY:  LAURA W. BRILL
14                                  ATTORNEY AT LAW
                               10100 SANTA MONICA BOULEVARD
15                             SUITE 1725
                               LOS ANGELES, CALIFORNIA  90067
16

17

18

19

20

21

22

23

24

25
```

```
 1                         I N D E X
      CASE NO. CV 10-03633-ODW(RZX)            APRIL 25, 2011
 2
      PROCEEDINGS:  1.   PLAINTIFF'S MOTION TO COMPEL
 3                       PRODUCTION OF DOCUMENTS AND AMENDED
                         PRIVILEGE LOGS FROM THE TOBEROFF DEFENDANTS
 4                  2.   PLAINTIFF'S MOTION TO COMPEL SIX
                         INTERROGATORY RESPONSES FROM DEFENDANT
 5                       TOBEROFF

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          LOS ANGELES, CALIFORNIA; MONDAY, APRIL 25, 2011; 2:21 P.M.

2              THE CLERK:  ITEM NUMBER 5, CASE NUMBER

3    CV 10-3633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES CORP.,

4    ET AL.

5              COUNSEL, PLEASE MAKE YOUR APPEARANCES.

6              MR. PETROCELLI:  GOOD AFTERNOON, YOUR HONOR.

7              DANIEL PETROCELLI FOR PLAINTIFF.  I APOLOGIZE.  I

8    DID NOT CHECK IN BECAUSE I WAS --

9              THE COURT:  I KNOW WHO YOU ARE.  YOU WERE WITH

10   JUDGE ANDERSON, RIGHT?

11             MR. PETROCELLI:  EXCEPT IT TURNED OUT THE COURTROOM

12   WAS LOCKED, AND WE NEVER GOT IN TO SEE HIM.

13             IN ANY EVENT --

14             THE COURT:  WAS HE TRYING TO SEND YOU A MESSAGE.

15             MR. PETROCELLI:  WE GOT NO MESSAGE.  BUT BECAUSE I

16   COULD NOT BE ASSURED I WOULD BE HERE ON TIME, I HAVE ASKED

17   MR. KLINE TO PRESENT OUR ARGUMENT TODAY.

18             THE COURT:  DO YOU NEED TO RETURN TO JUDGE

19   ANDERSON'S COURT?

20             MR. PETROCELLI:  NO.  IT'S LOCKED, AND IT'S A

21   MYSTERY.  THANK YOU.

22             THE COURT:  OKAY.

23             MS. BRILL:  GOOD AFTERNOON, YOUR HONOR.

24             LAURA BRILL FOR THE TOBEROFF DEFENDANTS.  AND MR.

25   KENDALL WOULD HAVE BEEN HERE TODAY, BUT HE HAD A MEDIATION
```

1    PREVIOUSLY SCHEDULED.

2            THE COURT:  EVERYBODY HAS BUSY SCHEDULES.  I TRIED

3    TO ACCOMMODATE THEM ALL, BUT IT WASN'T POSSIBLE.

4            MS. BRILL:  THANK YOU, YOUR HONOR.

5            MR. ADAMS:  KEITH ADAMS APPEARING FOR THE LAURA

6    SIEGEL LARSON, MARK WARREN PEARY, AND JEAN ADELE PEAVY

7    DEFENDANTS.

8            THE COURT:  ALL RIGHT.

9            MR. KLINE:  GOOD AFTERNOON, YOUR HONOR.

10           MY NAME IS MATT KLINE.  I'M WITH O'MELVENY & MYERS.

11   AND OUR COLLEAGUE JASON TOKORO IS HERE AS WELL.

12           IF YOUR HONOR DOESN'T MIND, I'M GOING TO START WITH

13   ISSUE NUMBER 8 IN OUR MOTION TO COMPEL THE PRODUCTION OF

14   DOCUMENTS.

15           THE COURT:  ALL RIGHT.

16           MR. KLINE:  AND AS PART OF ISSUE NUMBER 8, DC SEEKS

17   TWO CATEGORIES OF DOCUMENTS.  THE FIRST CATEGORY IS THE

18   SO-CALLED STOLEN DOCUMENTS.  THESE ARE THE DOCUMENTS ATTACHED

19   TO THE TOBEROFF TIMELINE.

20           AND THE SECOND CATEGORY IS A SERIES OF 13

21   COMMUNICATIONS BETWEEN DEFENDANTS AND THEIR COUNSEL AND THE

22   U.S. GOVERNMENT.

23           NOW, THE GENERAL RULE IS THAT ANY DOCUMENT OR

24   COMMUNICATIONS THAT ARE SHARED WITH THE GOVERNMENT ARE NOT

25   PRIVILEGED.  BY DISCLOSING ALLEGEDLY PRIVILEGED DOCUMENTS,

1    DEFENDANTS WAIVE THE PRIVILEGE AS TO THE REST OF THE WORLD.

2          AND AS JUDGE MIKVA HELD FOR THE D.C. CIRCUIT, JUDGE

3    BECKER HELD FOR THE THIRD CIRCUIT, THE SIXTH CIRCUIT HELD,

4    JUDGE BREYER HELD IN THE REYES CASE, YOU CAN'T PICK AND

5    CHOOSE WHO YOU'RE GOING TO WAIVE THE PRIVILEGE TO.  AND THAT

6    INCLUDES THE GOVERNMENT.  AND THAT INCLUDES WHEN THERE'S AN

7    EXPRESS AGREEMENT OF CONFIDENTIALITY.

8          I BROUGHT FOUR DOCUMENTS HERE THAT I SHARED WITH

9    OPPOSING COUNSEL ABOUT AN HOUR AGO, AND I'D LIKE TO HAND THEM

10   TO YOUR CLERK IF YOU DON'T MIND.  I MIGHT ADVERT TO THEM --

11          THE COURT:  I THINK I HAVE A LOT OF DOCUMENTS

12   ALREADY, DON'T I?

13          MR. KLINE:  JUST FOUR MORE, YOUR HONOR, IF THAT'S

14   OKAY.

15          THE COURT:  WHAT ARE THEY?

16          MR. KLINE:  ONE IS A NATIONAL LAW JOURNAL ARTICLE

17   THAT CAME OUT --

18          THE COURT:  I DON'T NEED A NATIONAL LAW JOURNAL

19   ARTICLE.

20          MR. KLINE:  -- CAME OUT IN SEPTEMBER 2010 AND TALKED

21   ABOUT WHAT THE STATE OF THE LAW WAS IN THIS AREA.

22          THE SECOND ONE IS THE ACTUAL PROPOSED AMENDMENT TO

23   RULE 502, WHEN THE ADVISORY COMMITTEE SAID SHOULD WE ADOPT A

24   SELECTIVE WAIVER RULE.

25          AND IF YOU READ IT, I THINK IT'S ACTUALLY QUITE

1    INSTRUCTIVE BECAUSE IT WOULD HAVE APPLIED IN THIS CASE.  BUT

2    IT WAS REJECTED BY THE ADVISORY COMMITTEE.

3            AND THIS IS AN ARTICLE FROM SEPTEMBER 2008 FOR ALL

4    THE WORLD TO SEE.

5            THE THIRD ARTICLE RELATES TO ISSUE NUMBER 11, WHICH

6    I'LL GET IN A WHILE.  IT'S ACTUALLY THE RUTTER TREATISE CITE

7    THAT THEY HAVE RELIED ON IN OTHER MOTIONS IN THIS CASE.

8            AND, THEN, THE FOURTH IS A VERY CRITICAL DOCUMENT

9    THAT THEY HAVE PRODUCED TO US ON MONDAY NIGHT LATE IN THE

10   EVENING AFTER WE FILED OUR REPLY BRIEFS IN THIS CASE.

11           THIS IS A MAY 13TH, 2003 LETTER THAT YOUR HONOR

12   ORDERED PRODUCED AS PART OF YOUR APRIL 11TH --

13           THE COURT:  YES.

14           MR. KLINE: -- ORDER.

15           SO, WITH NO OBJECTION, I'D LIKE TO PROVIDE THESE

16   MATERIALS TO THE COURT.

17           THE COURT:  I'LL TAKE THE LAST LETTER.  THAT'S THE

18   ONLY ONE THAT I'M INTERESTED IN.

19           MS. BRILL:  SIR -- YOUR HONOR, WE DO OBJECT

20   ACTUALLY BECAUSE THE LAST LETTER IS A COMMUNICATION BETWEEN

21   -- NO?

22           MR. ADAMS:  I'M SORRY, YOUR HONOR.  THE MAY 13TH

23   LETTER DC SERVED ON FRIDAY, A MEET AND CONFER SEEKING TO

24   COMPEL ADDITIONAL DOCUMENTS BASED ON THAT LETTER SEPARATELY.

25           WE FEEL IT'S BEST FOR THIS COURT IF WE DEAL WITH

1    THAT LETTER AND THE ISSUES RAISED AT THAT TIME.

2              THE COURT:  WELL --

3              MR. KLINE:  YOUR HONOR --

4              THE COURT:  YOU KNOW WHAT, I'M GOING TO GO BACK TO

5    MY INITIAL INSTINCT.  IF IT'S NOT ALREADY IN THE RECORD

6    BEFORE ME I DON'T WANT IT.

7              MS. BRILL:  THANK YOU, YOUR HONOR.

8              MR. KLINE:  THAT'S FINE, YOUR HONOR.  AND THERE

9    WILL BE ADDITIONAL MOTIONS CONCERNING THAT.  THIS JUST --

10             THE COURT:  YES, I'M AFRAID THERE WILL BE.

11             MR. KLINE:  UNFORTUNATELY, THERE WILL BE.

12             TURNING BACK TO ISSUE NUMBER 8, THE CASE LAW HAS

13   BEEN VERY CLEAR, AND IT WAS MADE VERY CLEAR WHEN THE ADVISORY

14   COMMITTEE AMENDED THE RULES IN 2007, THAT SELECTIVE WAIVERS

15   OF THIS SORT ARE NOT PERMITTED.

16             AND THAT DOESN'T MATTER WHETHER IT'S PURSUANT TO AN

17   EXPRESS AGREEMENT WITH THE GOVERNMENT TO COVER

18   CONFIDENTIALITY.

19             AND IT DOESN'T MATTER WHETHER YOU'RE THE TARGET OF

20   AN INVESTIGATION AS IN SOME OF THE CASES WE CITED.  WHETHER

21   AS IN THE M.I.T. CASE THAT WE CITED -- THIS IS A FIRST

22   CIRCUIT CASE, UNIVERSITY -- M.I.T. UNIVERSITY HAS A

23   LONG-STANDING DEFENSE CONTRACT.  PART OF THAT DEFENSE

24   CONTRACT IS THEY HAVE TO PROVIDE CERTAIN MATERIALS THAT THE

25   DEPARTMENT OF DEFENSE CAN AUDIT.

1          AND IN THAT CASE THE IRS COMES IN AND SAYS, WE'RE

2    NOT SURE ABOUT YOUR TAX STATUS, M.I.T., AND WE WANT ACCESS TO

3    THOSE DOCUMENTS YOU'VE BEEN GIVING TO THE DEPARTMENT OF

4    DEFENSE.

5          M.I.T. WAS NOT A TARGET OF A CRIMINAL

6    INVESTIGATION.  BUT THE FIRST CIRCUIT IN THAT CASE HELD WE'RE

7    NOT GOING TO ALLOW SELECTIVE WAIVERS HERE OF THAT SORT.  SO

8    --

9          THE COURT:  DO YOU HAVE A CASE -- I MEAN, MR.

10   TOBEROFF'S -- AND I'M USING HIM GENERALLY -- POSITION SEEMS

11   TO BE THAT THERE'S A DIFFERENCE IF YOU'RE A VICTIM.

12   THEORETICALLY, THERE'S A DIFFERENCE IF YOU'RE A VICTIM.

13          DO YOU HAVE A CASE ABOUT VICTIMS?

14          MR. KLINE:  NOT DIRECTLY ON POINT, YOUR HONOR,

15   GOING ONE WAY OR THE OTHER.  AND I THINK WHAT YOU HAVE TO DO

16   HERE IS THERE'S A COUPLE OF BEDROCK PRINCIPLES YOU HAVE TO

17   LOOK AT.

18          THE COURT:  WELL, WHY SHOULD IT BE THE SAME OR

19   DIFFERENT BECAUSE YOU'RE A VICTIM?  THAT'S WHAT I WANT TO

20   KNOW.

21          MR. KLINE:  ABSOLUTELY, YOUR HONOR.  AND THAT'S

22   WHAT I ENDEAVOR TO COVER IN THE NEXT COUPLE OF MINUTES.

23          THE IN RE COLUMBIA CASE -- WHICH I THINK IS ONE OF

24   THE MOST AUTHORITATIVE CASES HERE.  THIS IS A SIXTH CIRCUIT

25   CASE -- STARTS OUT WITH A GENERAL PROPOSITION.  IF YOU WAIVE

1    THE PRIVILEGE AS TO ONE PERSON, YOU WAIVE IT IN TOTO.  YOU

2    CAN'T -- IT DOESN'T MATTER WHO YOU ARE.  IT DOESN'T MATTER

3    WHAT THE CIRCUMSTANCES ARE.  IF YOU GIVE THE PRIVILEGED

4    MATERIALS TO SOMEONE OTHER THAN YOUR COUNSEL, YOU HAVE

5    WAIVED.  AND THAT'S A BRIGHT LINE RULE THAT COURTS OBSERVE.

6    IT EASES THE ADMINISTRATION OF JUSTICE.  IT DOES NOT INDUCE

7    THESE TYPES OF DISPUTES.  THAT'S POINT NUMBER ONE.

8          POINT NUMBER TWO IS --

9          THE COURT:  WELL, LET ME JUST ASK YOU.  I MEAN,

10   SUPPOSE SOMEBODY PILFERS YOUR OFFICE AND STEALS AN

11   ATTORNEY-CLIENT PRIVILEGED DOCUMENT.  AND, THEN, THE NEXT DAY

12   THE POLICE ARREST SOMEBODY, AND HE'S GOT A DOCUMENT.

13         ARE YOU SAYING YOU CAN'T SAY TO THE POLICE THAT'S

14   MY DOCUMENT?

15         MR. KLINE:  OF COURSE YOU CAN, YOUR HONOR.  BUT

16   LET'S --

17         THE COURT:  AND THAT IT'S PRIVILEGED?  HAVE YOU

18   WAIVED THE PRIVILEGE BY SAYING THAT'S MY DOCUMENT?

19         MR. KLINE:  OF COURSE YOU HAVEN'T.

20         BUT THAT'S NOT THE FACTS OF THIS CASE.  THE FACTS

21   OF THIS CASE ARE DIFFERENT.

22         AND, SO, THERE'S BASICALLY THREE RULES THAT COURTS

23   HAVE ADOPTED HERE.  THE FIRST IS A SIXTH CIRCUIT RULE, WHICH

24   WE URGE ON THIS COURT AND WE THINK IS THE MOST EASY TO

25   ADMINISTRATE.  IT'S IF YOU PROVIDE DOCUMENTS TO A THIRD PARTY

1    LIKE THE GOVERNMENT -- AND THAT'S WHAT THEY DID HERE.  LET'S

2    BE VERY CLEAR.  THE GOVERNMENT DIDN'T COME TO THEM SAYING WE

3    ABSOLUTELY NEED TO SEE THESE PRIVILEGED DOCUMENTS.  THE

4    GOVERNMENT NEVER EVEN ASKED FOR THE DOCUMENTS.

5         THEY HAD JUDGE LARSON'S RULING THAT THE DOCUMENTS

6    WERE PRIVILEGED.  IT WAS NOT AT ALL NECESSARY TO DISCLOSE

7    THESE PRIVILEGED DOCUMENTS TO THE GOVERNMENT TO HELP PURSUE

8    THIS INVESTIGATION.  THERE'S A RULING FROM JUDGE LARSON

9    SAYING THESE DOCUMENTS APPARENTLY WERE TAKEN BY MR. -- BY THE

10   TOBEROFF TIMELINE AUTHOR.  SOME OF THESE DOCUMENTS WERE

11   PRIVILEGED.  THOSE TWO PREDICATE FACTS ARE ESTABLISHED.

12        IN YOUR HYPOTHETICAL, YOUR HONOR, THIS IS WHAT I

13   WOULD SAY TO THE POLICE.  PLEASE GIVE ME MY PRIVILEGED

14   DOCUMENT BACK.  I AM MORE THAN HAPPY TO PROVIDE TESTIMONY TO

15   YOU OR TO THE GRAND JURY OR WHOMEVER THAT THIS IS MY

16   DOCUMENT.  IT WAS STOLEN.  I DON'T WANT ANYBODY TO SEE IT

17   BECAUSE IT IS A PRIVILEGED DOCUMENT.  BUT I HEREBY ATTEST TO

18   YOU THAT IT WAS PRIVILEGED.

19        THE COURT:  HOW WOULD THE PROSECUTOR PUT ON THE

20   CASE?

21        MR. KLINE:  THE PROSECUTOR WOULD PUT ON THE CASE BY

22   PUTTING MR. TOBEROFF ON THE STAND AND ASK MR. TOBEROFF, WHAT

23   HAPPENED THAT NIGHT?

24        WELL, I HAD A STACK OF DOCUMENTS.  THIS INDIVIDUAL

25   APPARENTLY WENT IN AFTER HOURS AND TOOK THEM AND SENT THEM

1    OFF TO WARNER BROS.

2              HOW DO YOU KNOW THAT?

3              WELL, I GOT A COPY OF IT THROUGH THE ESCROW AGENT.

4              MR. TOBEROFF, CAN YOU DESCRIBE SOME OF THOSE

5    DOCUMENTS TO ME.

6              YES.  MANY OF THOSE DOCUMENTS WERE COMMUNICATIONS

7    BETWEEN ME AND MY CLIENTS.

8              WHAT ELSE WAS IN THERE?

9              AND YOU GO DOWN THE LITANY, AND I DON'T THINK

10   ANYBODY COULD FAIRLY CHALLENGE THE PRIVILEGE CLAIMS.  I MEAN,

11   THERE'S THE JUDICIAL RULING BY JUDGE LARSON THAT THERE'S A

12   PRIVILEGE ASSERTION HERE.

13             NOW, THE SIXTH CIRCUIT HAS THIS VERY CLEAR RULE,

14   AND WE THINK THAT'S THE RULE THAT SHOULD BE FOLLOWED IN THIS

15   CASE.  IT'S THE ONE JUDGE BREYER FOLLOWED IN THE REYES CASE.

16   IT'S THE ONE JUDGE BECKER ANNOUNCED AND FOLLOWED IN THE

17   WESTINGHOUSE CASE.  IT'S THE ONE JUDGE MIKVA FOLLOWED IN THE

18   PERMIAN CASE IN THE D.C. CIRCUIT.

19             THE SECOND RULE, WHICH WAS ALLUDED TO IN IN RE

20   STEINHARDT BY THE SECOND CIRCUIT, THE QWEST COURT IN THE

21   TENTH CIRCUIT ENTERTAINED.  AND ONE OF THEIR MOST IMPORTANT

22   CASES, A DISTRICT OF COLORADO CASE INVOLVING A BANKRUPTCY

23   COURT SAID WE ARE GOING TO ENTERTAIN THE POSSIBILITY, BUT IN

24   CERTAIN LIMITED CIRCUMSTANCES ON A CERTAIN SET OF FACTS THAT

25   WE ARE GOING TO SAY THE PRIVILEGE WAS MAINTAINED.

1         WHAT DOES THE QWEST COURT DO.  THE QWEST COURT

2    LOOKS AT THE ACTUAL AGREEMENT BETWEEN THE GOVERNMENT AND

3    QUEST, WHO IS PROVIDING THE DOCUMENTS TO THE GOVERNMENT.  AND

4    IT SAYS, THIS HAS ALL THESE OUTS.  THE GOVERNMENT CAN

5    ACTUALLY GO OUT AND USE THESE DOCUMENTS IF IT WANTS TO.

6         THE AGREEMENT IN THIS CASE THAT'S SET ON SEPTEMBER

7    10TH HAS SIMILAR OUTS.  IT SAYS IF WE'RE REQUIRED BY LAW OR

8    REQUIRED BY COURT ORDER, WE'RE GOING TO PRODUCE -- WE'RE

9    GOING TO GIVE THESE MATERIALS TO SOMEBODY ELSE.

10        IT USES THE TERMS OF ART IN THIS AREA OF CASE LAW

11   SELECTIVE WAIVER AND LIMITED WAIVER AS DOES MR. KENDALL'S

12   LETTER, WE'RE MAKING A SELECTIVE WAIVER, WE'RE MAKING A

13   LIMITED WAIVER.

14        AND IF YOU READ THE NATIONAL LAW JOURNAL IN

15   SEPTEMBER OF 2010 WHEN THEY'RE MAKING THESE DECISIONS DAN

16   WEBB IS TELLING EVERYBODY IN AMERICA, DON'T DO THAT.  YOU'RE

17   WAIVING THE PRIVILEGE.  DON'T DO IT.  HE'S SAYING YOU CAN'T

18   DO THIS BECAUSE -- ESPECIALLY WHAT HAPPENED WITH THE

19   AMENDMENTS TO RULE 502.

20        UNDER THAT RULE, UNDER THE QWEST RULE, WHICH IS

21   THIS KIND OF MIDDLE GROUND RULE THAT SAYS UNDER CERTAIN

22   CIRCUMSTANCES WE'RE GOING TO ALLOW PEOPLE TO PRESERVE THE

23   WAIVER DEPENDING ON THEIR CONFIDENTIALITY ARRANGEMENTS.  THEY

24   CAN'T MEET THAT TEST.

25        WHY CAN'T THEY MEET THAT TEST.  THEY AFFIRMATIVELY

1    WENT TO THE GOVERNMENT.  THEY AFFIRMATIVELY TOLD THE

2    GOVERNMENT WE WANT TO GIVE YOU THESE PRIVILEGE DOCUMENTS.

3    THE GOVERNMENT IN THEIR LETTER TO THEM SAYS, HEY, YOU WANT TO

4    GIVE US THOSE PRIVILEGED DOCUMENTS, THAT'S YOUR CHOICE, BUT

5    YOU MAY BE HELD -- THERE MAY BE A COURT ORDER THAT SAYS WE

6    HAVE TO GIVE THEM TO SOMEBODY ELSE.

7         NOW, IS THE GOVERNMENT BOUND BY THAT AGREEMENT NOT

8    TO GIVE US THE DOCUMENTS.  YES.

9         BUT THAT AGREEMENT BETWEEN THOSE TWO PARTIES DOES

10   NOT SOMEHOW UNDO THE ACT OF WAIVER THAT OCCURRED THERE.

11        THE GOVERNMENT THEN SENDS THEM A SUBPOENA THREE

12   DAYS LATER ON SEPTEMBER 13TH.  IT SAYS, GO AHEAD AND LOG ANY

13   DOCUMENTS YOU WANT TO LOG.  WITHHOLD ANY DOCUMENTS YOU WANT

14   TO WITHHOLD.

15        THEY DON'T MEET THAT TEST.  THE ONLY TEST THEY

16   POSSIBLY MEET IS THE TEST ANNOUNCED BY THE EIGHTH CIRCUIT

17   ABOUT 30 YEARS AGO THAT SAYS, YOU KNOW WHAT, YOU CAN

18   SELECTIVELY WAIVE.

19        BUT THAT POSITION ARTICULATED ONLY IN ONE PARAGRAPH

20   OF AN EIGHTH CIRCUIT OPINION 30 YEARS AGO HAS BEEN REPUDIATED

21   BY PRETTY MUCH EVERY CIRCUIT IN THE COUNTRY.  AND THE EIGHTH

22   CIRCUIT ITSELF HAS TAKEN DRASTIC STEPS AWAY FROM THAT.

23        THE COURT:  AND THE NINTH CIRCUIT HAS IDENTIFIED

24   THE ISSUE BUT HASN'T RULED.

25        MR. KLINE:  EXACTLY.

1              YOU KNOW WHAT THE TENTH CIRCUIT SAID IN THOSE

2     CIRCUMSTANCES, YOUR HONOR.  I THINK THIS IS THE MOST

3     IMPORTANT PART OF THE QWEST DECISION TO YOUR HONOR'S THINKING

4     TODAY.  IT SAYS, WHEN YOU HAVE VERY GOOD LAWYERS REPRESENTING

5     -- QWEST IN THAT CASE.  AND THE TENTH CIRCUIT HAS NOT ISSUED

6     A DEFINITIVE RULING ON THIS SUBJECT.  AND THERE'S ALL SORTS

7     OF CASES OUT THERE, LIKE, IN RE COLUMBIA FROM THE SIXTH

8     CIRCUIT AND JUDGE BECKER'S DECISION FROM 1991.

9              -- YOU, DEFENDANTS, CAN'T REASONABLY EXPECT YOUR

10    PRIVILEGE TO BE MAINTAINED.  THAT'S WHAT THE QWEST CASE SAYS.

11    IT SAYS WHEN YOU HAVE AN ABSENCE OF CIRCUIT AUTHORITY, AS WE

12    DO HERE WITH THE NINTH CIRCUIT, AND YOU'VE GOT CASES LIKE

13    REYES -- YOU KNOW, ONE OF THE MOST RESPECTED DISTRICT COURT

14    JUDGES IN AMERICA, JUDGE BREYER, SAYING YOU CAN'T SELECTIVELY

15    PRESERVE THE PRIVILEGE.  IT DOESN'T MATTER IF YOU HAVE THESE

16    SO-CALLED AGREEMENTS.

17             I THINK JUDGE BECKER'S POINT IN THE WESTINGHOUSE

18    CASE WAS, LOOK, ANYTHING THAT'S BEING PROVIDED TO THE

19    GOVERNMENT, AT THE END OF THE DAY, FRANKLY, FALLS UNDER FOIA

20    OBLIGATIONS.

21             AND, SO, WE DON'T WANT -- PEOPLE CAN'T CREATE THESE

22    LITTLE PRIVATE --

23             THE COURT:  I DON'T THINK THAT'S TRUE FOR GRAND

24    JURY MATERIALS.

25             MR. KLINE: -- COMMUNICATIONS WITH THE GOVERNMENT.

1          THE COURT:  I DON'T THINK THAT'S TRUE FOR GRAND

2   JURY MATERIALS.  YOU CAN'T GET GRAND JURY MATERIALS UNDER

3   FREEDOM OF INFORMATION ACT.

4          MR. KLINE:  BUT THE FEDERAL RULES OF CRIMINAL

5   PROCEDURE EXPRESSLY PROVIDE, EXPRESSLY PROVIDE THAT A WITNESS

6   CAN BE COMPELLED TO GIVE TESTIMONY ABOUT THE TESTIMONY THEY

7   GAVE IN FRONT OF THE GRAND JURY.  AND IF IN FRONT OF THE

8   GRAND JURY OR IN FRONT OF THE GOVERNMENT MR. TOBEROFF IS

9   WAIVING PRIVILEGE RIGHT AND LEFT, DISCLOSING TO THIRD PARTIES

10  PRIVILEGE RIGHT AND LEFT, THEN, THAT'S A WAIVER.

11          NOW, WHAT COULD ONE DO TO MILITATE AGAINST THIS.

12  THE AMENDMENTS TO THE FEDERAL RULES OFFER ONE POSSIBILITY.

13  YOU CAN GO OUT AND GET A COURT ORDER.

14          IF THE GOVERNMENT, IN FACT, ACTUALLY WANTED THESE

15  PRIVILEGED MATERIALS, AND THERE'S BEEN NO SHOWING THAT THEY

16  ACTUALLY WANTED, NEEDED, REQUIRED, REQUESTED THESE PRIVILEGED

17  MATERIALS.  NO SHOWING OF THAT.  IF THEY WANTED THAT, THEY

18  COULD HAVE SERVED THE SUBPOENA ON DEFENDANTS.  DEFENDANTS

19  COULD HAVE OBJECTED AND LOGGED THOSE DOCUMENTS.  THE

20  GOVERNMENT COULD HAVE COME INTO THIS COURT AND SAID, YOU KNOW

21  WHAT, IT'S REALLY IMPORTANT TO OUR PROSECUTION.  MAGISTRATE

22  ZAREFSKY'S HYPOTHETICAL BUT HOW ARE WE GOING TO PUT ON OUR

23  CASE HAS ACTUALLY COME TRUE.

24          AND, YOUR HONOR, PLEASE, UNDER FEDERAL RULE OF

25  EVIDENCE 502(D) OR 502(E) ISSUE AN ORDER THAT SAYS THEY CAN

1    PROVIDE US THOSE DOCUMENTS WITHOUT WAIVING THE PRIVILEGE.

2            BUT DEFENDANTS DIDN'T DO THAT.  AND THE GOVERNMENT

3    NEVER CAME IN HERE AND SAID WE DESPERATELY NEED THESE

4    DOCUMENTS TO PURSUE THIS HIGH CRIME.  THAT JUST DIDN'T

5    HAPPEN.

6            WHAT THEY DID IS THEY WENT TO THE GOVERNMENT AND

7    SAID, PLEASE TAKE THESE DOCUMENTS.  PLEASE INITIATE A

8    PROSECUTION.

9            AND, THEN, THEY DESCRIBE IN THEIR PAPERS, OH, WE

10   HAVE THIS EXPRESS COMMON INTEREST PRIVILEGE WITH THE

11   GOVERNMENT.  THAT'S JUST NOT TRUE.

12           THE LAST COMMUNICATION LISTED ON THEIR LOG, THE

13   LAST TWO ARE A LETTER FROM MR. KENDALL DATED SEPTEMBER 17TH.

14   IN THE LAST PARAGRAPH HE DOESN'T -- IN THE PREVIOUS

15   PARAGRAPHS, AND I'D URGE YOU TO READ THAT LETTER CLOSELY.

16           THE PREVIOUS PARAGRAPHS HE SAYS, ON EXPRESS

17   RELIANCE ON YOUR LETTER WHERE YOU SAID YOU'RE GOING TO

18   PRESERVE PRIVILEGES AS TO US WE'RE GIVING YOU THESE

19   DOCUMENTS.  ON EXPRESS RELIANCE ON YOUR PROMISES TO US ABOUT

20   SELECTIVE WAIVER AND LIMITED WAIVER WE'RE PROVIDING YOU THESE

21   DOCUMENTS.

22           HE STARTS A NEW PARAGRAPH AT THE VERY END.  IT

23   DOESN'T RECOUNT A CONVERSATION THAT WOULD EVER HAVE OCCURRED.

24   DOESN'T SAY PURSUANT TO OUR AGREEMENT.  IT JUST SAYS, OH, AND

25   BY THE WAY, WE HAVE A COMMON INTEREST AGREEMENT HERE.

1        THERE'S NO DOCUMENT ON THEIR PRIVILEGE LOG THAT IS

2   THE GOVERNMENT RESPONDING TO THAT SAYING YES.  TO HAVE A

3   COMMON INTEREST AGREEMENT, YOU HAVE TO HAVE A CLEAR

4   UNDERSTANDING BEFORE DISCLOSURE IS MADE, A MUTUAL

5   UNDERSTANDING -- NOT A UNILATERAL UNDERSTANDING.  THIS IS OUR

6   SPECIFIC COMMON OBJECTIVE.

7        YOU KNOW, WE'VE DEFENDED CRIMINAL CASES TOGETHER,

8   MR. PETROCELLI AND I, WITH OTHER DEFENDANTS.  IF THE

9   GOVERNMENT'S COMING AFTER BOTH OF US, WE'RE GOING TO SHARE

10  COMMUNICATIONS IN RESPONSE TO THAT CASE.

11       THERE'S NO EXPRESS AGREEMENT HERE THAT THE

12  GOVERNMENT HAS DECIDED TO TEAM UP WITH THE DEFENDANTS IN THIS

13  CASE TO DO ANYTHING.  BECAUSE THE DEFENDANTS IN THIS CASE

14  HAVEN'T EVEN SUED THE TOBEROFF TIMELINE AUTHOR IN A CIVIL

15  ACTION.  ALL THEY'VE DONE IN THIS CASE IS TRY TO INJECT THE

16  NOTION THAT, YOU KNOW, THIS PERSON ISN'T CREDIBLE.  AND HIS

17  TESTIMONY SHOULD NOT BE BELIEVED.

18       AND THEY HAD EVERY OPPORTUNITY TO PROVIDE, YOU

19  KNOW, EVIDENCE OF THIS EXPRESS AGREEMENT.  THEY DIDN'T DO SO.

20  IT'S NOT IN THEIR DECLARATIONS.  IT'S NOT IN THE DOCUMENTS

21  THEY PRODUCED.

22       AND IF YOU LOOK AT THEIR CASES, THE CASES THEY CITE

23  -- AND I THINK THE MOST IMPORTANT ONES HERE -- THE MOST

24  IMPORTANT ONE TO READ HERE IS THE M&L BUSINESS MACHINE CASE.

25  THIS IS THE DISTRICT COURT CASE FROM COLORADO.  IT'S A

1    BANKRUPTCY COURT JUDGE THERE.  AND THE BANKRUPTCY COURT JUDGE

2    THERE TAKES THE MIDDLE GROUND APPROACH TO SELECTIVE WAIVER.

3    THE ONE THING HE SAYS IS HE SAYS THERE'S NO COMMON INTEREST

4    HERE BETWEEN THIS BANK THAT PROVIDED EVIDENCE IN AID OF THIS

5    FEDERAL CRIMINAL INVESTIGATION AND THIS BANK THAT IS ALSO THE

6    DEFENDANT IN THIS LAWSUIT VIS-A-VIS THIS BANKRUPTCY TRUSTEE.

7    ANYBODY CAN KIND OF ASSERT A GENERAL ABSTRACT COMMON

8    INTEREST.  BUT THE LAW REQUIRES SOMETHING FAR MORE SPECIFIC.

9    AND HE REJECTED THAT CLAIM.

10          WHAT HE ALSO SAID IS THE ONLY -- UNDER THE ONLY

11   CIRCUMSTANCES THAT I'M GOING TO ALLOW THIS SELECTIVE WAIVER

12   TO OCCUR HERE IS THE BANK HAD LITERALLY NOTHING TO GAIN

13   TACTICALLY IN MAKING THIS WAIVER.

14          AND AS WE KNOW HERE, THE TOBEROFF DEFENDANTS DID

15   THINK THEY HAD A TACTICAL ADVANTAGE TO GAIN BY TRYING TO GET

16   THIS GUY INVESTIGATED AND PROSECUTED.

17          IF YOU LOOK AT THEIR -- THEY CITE ONLY TWO CASES,

18   ONLY TWO CASES IN THIS COMMON INTEREST THEORY OF DEFENSE.

19   ONE OF THEM SET UP A STATUTORY REGIME -- THIS IS THE

20   BURROUGHS CASE WHERE THE PLAINTIFF'S LAWYER IS SUING ON

21   BEHALF OF THE GOVERNMENT.  AND THE GOVERNMENT IN THAT CASE

22   HAD SO MUCH POWER.  IT HAD THE POWER TO SETTLE THAT CASE.  IT

23   HAD THE POWER TO DISMISS THE CASE VOLUNTARILY.  AND THIS

24   GENTLEMAN SENDS A FEW LETTERS BACK AND FORTH WITH THE

25   GOVERNMENT.  AND THE OTHER SIDE TRIES TO GET A COPY OF THOSE

1   LETTERS.  AND THE COURT SAYS, NO, YOU LITERALLY ARE STANDING

2   IN THE SHOES OF THE GOVERNMENT BY OPERATION OF STATUTE.  THE

3   GOVERNMENT CAN TERMINATE THIS CASE TOMORROW.

4          THERE IS NO SIMILARITY HERE.

5          THE OTHER INTERESTING THING ABOUT BURROUGHS IS EVEN

6   TO THE EXTENT YOU AGREE WITH IT, IT WOULD ONLY COVER THE 13

7   COMMUNICATIONS BACK AND FORTH WITH THE GOVERNMENT.  IT

8   WOULDN'T COVER THESE HISTORIC STOLEN DOCUMENTS THAT THEY

9   AFFIRMATIVELY WENT OUT AND CHOSE TO GIVE TO THE GOVERNMENT.

10         THEIR ONLY OTHER COMMON INTEREST CASE IS THE

11  SEDLACEK CASE.  AND IN THAT CASE JUDGE LEW WAS ASKED TO

12  REVIEW THE MAGISTRATE'S OPINION.  AND IN THE COURSE OF THAT

13  OPINION HE ANNOUNCED THE FOLLOWING RULE OF LAW.  THERE IS

14  SUCH A THING AS A COMMON INTEREST PROSECUTION PRIVILEGE IN

15  THE SAME WAY THAT THERE IS SUCH A THING AS A COMMON INTEREST

16  DEFENSE PRIVILEGE.

17         AND HE NOTED THAT IN THAT CASE SEVERAL GOVERNMENT

18  AGENCIES AND CLASS COUNSEL WERE BOTH PURSUING A COMMON TARGET

19  IN PARALLEL CASES.  THERE IS NO ANALYSIS OF ANY OF THE

20  SELECTIVE WAIVER RULES.  THERE IS NO ANALYSIS OF THE LAST 30

21  YEARS OF CASE LAW.  THAT'S THEIR CASE.  THOSE ARE THEIR TWO

22  CASES.

23         SO, THERE WAS NO REASONABLE EXPECTATION HERE WHEN

24  THEY MADE THIS DISCLOSURE IN SEPTEMBER.  AND, AGAIN, THEY

25  CHOSE TO MAKE THIS DISCLOSURE.  THE GOVERNMENT NEVER ASKED

1    THEM FOR THESE DOCUMENTS.  THE COVER LETTER SAYS VERY

2    CLEARLY, YOU -- YOU WISH TO GIVE US THESE DOCUMENTS.  IT

3    DOESN'T SAY WE REQUIRED THESE DOCUMENTS.  AND BASED ON THAT

4    REQUIREMENT WE'VE REACHED THE FOLLOWING UNDERSTANDING.  IT'S

5    VERY CLEAR.  YOU WISHED TO GIVE US THESE DOCUMENTS.

6            BASED ON THAT, THESE DOCUMENTS NEED TO BE PRODUCED.

7            THE LAST POINT REALLY GOES TO YOUR POINT ABOUT THE

8    VICTIMS' RIGHTS ISSUE.  AND IN SEVERAL OF THESE CASES --

9            THE COURT:  IT WAS A QUESTION -- NOT A POINT.

10   JUST A QUESTION.

11           MR. KLINE:  A QUESTION.

12           IN SEVERAL OF THESE CASES A GENERAL ARGUMENT IS

13   MADE.  AND I THINK -- AND I AT LEAST READ IT FROM THEIR

14   PAPERS.  IF THEY'RE NOT MAKING THIS ARGUMENT I DON'T WANT TO

15   UNFAIRLY ATTRIBUTE IT TO THEM.  BUT A GENERAL ARGUMENT IS

16   MADE THAT, LOOK, THERE NEEDS TO BE THIS KIND OF INVESTIGATIVE

17   PRIVILEGE.  WHEN THE FEDERAL GOVERNMENT IS INVOLVED, THERE'S

18   CRIMES TO BE FERRETED OUT.  WE NEED TO CREATE THIS UMBRELLA

19   OF PROTECTION.

20           AND CASE AFTER CASE AFTER CASE, INCLUDING THEIR

21   CASE BURROUGHS, INCLUDING THEIR CASE M&L BUSINESS MACHINE,

22   MOST POINTEDLY, THE QWEST CASE SAID, NO, ONLY THE GOVERNMENT

23   HAS THAT PRIVILEGE TO INVOKE.  AND PRIVATE INDIVIDUALS LIKE

24   THE DEFENDANTS HERE CANNOT INVOKE IT.

25           I THINK THE MOST -- THE LAST THING TO THINK ABOUT,

1    YOUR HONOR, IS IN A WAY YOU ARE WORKING ON A BLIND SLATE HERE

2    BECAUSE THERE'S NOT A CASE DIRECTLY ON POINT IN THE NINTH

3    CIRCUIT THAT DEALS WITH THIS PRECISE SET OF FACTS.

4            BUT WHAT HAS THE SUPREME COURT INSTRUCTED IN THESE

5    TYPES OF CIRCUMSTANCES.  WHAT DID THE ADVISORY COMMITTEE

6    INSTRUCT.  WHAT DOES QWEST INSTRUCT IN LOOKING AT THESE TYPES

7    OF ISSUES.  IT SAYS DO NOT ERECT NEW PRIVILEGES HERE.  DO NOT

8    ERECT THESE NEW TYPES OF PROTECTIONS.  LEAVE THAT UP TO

9    CONGRESS.

10           AND, SO, WITH THAT, I'D SUBMIT ON THE EIGHTH ISSUE

11   UNLESS YOU HAVE ANY FURTHER QUESTIONS, YOUR HONOR.

12           THE COURT:  NO, THAT'S FINE.

13           MR. KLINE:  AND, THEN, I WAS GOING TO TURN TO THE

14   OTHER ISSUES IN THE MOTIONS UNLESS YOU WANT TO --

15           THE COURT:  NO.  YOU'RE STANDING THERE.  YOU GO

16   AHEAD.

17           MR. KLINE:  ISSUE NUMBER 9, YOUR HONOR, HAS TO DO

18   WITH THE COMMUNICATIONS BETWEEN THE SIEGELS AND MR. MICHAELS,

19   THE TOBEROFF TIME LINE AUTHOR.

20           TO BE VERY CLEAR, WE WEREN'T AWARE OF THESE

21   COMMUNICATIONS UNTIL -- AND MR. TOKORO WILL CORRECT ME IF I'M

22   WRONG -- JANUARY WHEN THEY FIRST -- JANUARY OF THIS YEAR WHEN

23   THEY FIRST END UP GETTING LOGGED.  THEY WEREN'T LOGGED IN THE

24   SIEGEL CASE YEARS AGO EVEN THOUGH THEY WERE RESPONSIVE.  THEY

25   WEREN'T LOGGED IN RESPONSE TO DISCOVERY DIRECTED AT THE

1    SIEGEL AND SHUSTER DEFENDANTS.  THEY SHOW UP IN LOG RESPONSES

2    TO THE TOBEROFF DEFENDANTS.

3            AND THERE'S SOME ARGUMENTS MADE ABOUT, HEY, THAT'S

4    NOT A WAIVER.  WE LOGGED THEM WHEN WE LOGGED THEM.  SO BE IT.

5            THESE ARE DOCUMENTS THAT SHOULD HAVE BEEN PRODUCED

6    OR LOGGED YEARS AGO, BUT THEY ONLY FIRST APPEAR ON LOGS IN

7    JANUARY.

8            AS TO OUR SECOND ARGUMENT, YOUR HONOR, IS THAT AT A

9    VERY, VERY MINIMUM REDACTED COPIES OF THESE DOCUMENTS SHOULD

10   BE PRODUCED.  BY THEIR OWN ADMISSION, THROUGHOUT THESE

11   DOCUMENTS MR. MICHAELS ACCUSES MR. TOBEROFF OF ALL SORTS OF

12   MISCONDUCT.  THAT IS NOT THE PROVISION OR SOLICITATION OF

13   LEGAL ADVICE.  IT'S JUST AN ASSERTION OF FACT ABOUT

14   MISCONDUCT BY MR. TOBEROFF.

15           SO, AT THE VERY MINIMUM WE WOULD ASK YOUR HONOR TO

16   REVIEW THOSE COMMUNICATIONS IN CAMERA AND DECIDE WHETHER THEY

17   NEED TO BE REDACTED OR NOT.

18           BUT, ULTIMATELY, WE THINK WE SHOULD GET OUR HANDS

19   ON THESE DOCUMENTS IN TOTO.  AND THIS IS THE CHEVRON V.

20   PENNZOIL CASE THAT WE CITED IN OUR PAPERS.

21           AND ESSENTIALLY WHAT HAPPENS IN THAT CASE IS

22   PENNZOIL MAKES A BUSINESS DECISION ABOUT NOT GOING FORWARD

23   WITH A TRANSACTION, AND THEY SAY, OH, WELL, OUR LAWYER TOLD

24   US NOT TO DO IT.  AND THE COURT HELD YOU CAN'T SAY THAT A

25   LAWYER TOLD US NOT TO DO IT AND NOT OPEN UP THOSE

24

1    COMMUNICATIONS FOR DISCOVERY.

2              HERE, THE DEFENDANTS HAVE VERY MUCH AN INTEREST IN

3    THEIR DEFENSE OF THIS CASE TO PAINT MR. MICHAELS AS A BAD

4    GUY, AS SOMEBODY WHO'S DOING ALL SORTS OF INAPPROPRIATE STUFF

5    -- GOING AFTER CLIENTS, ALL SORTS OF AWFUL -- ALLEGEDLY

6    AWFUL THINGS.  AND THEY RAN A ROUGHSHOD, TALKING ABOUT HIS

7    BAD CHARACTER AND HIS BAD CONDUCT IN THEIR LITIGATION

8    POSITIONS IN THIS CASE.

9              AND WHEN WE SAID, WELL, GIVE US THE ACTUAL

10   DOCUMENTS WHERE HE'S COMMUNICATING THESE THREATS AND DOING

11   ALL THESE AWFUL THINGS, THEY SAID, NO, IT'S PRIVILEGED.

12             AND UNDER THE CHEVRON CASE WE SUBMIT THEY CAN'T DO

13   THAT.  SO, WE THINK WE SHOULD GET THE DOCUMENTS IN TOTO.  WE

14   THINK THAT ANY PRIVILEGE CLAIM AS TO THESE DOCUMENTS WAS

15   YEARS AGO WAIVED.  BUT AT THE VERY, VERY MINIMUM WE THINK WE

16   SHOULD GET REDACTED COPIES.

17             I WILL TELL YOUR HONOR THAT ON MONDAY -- AND WE HAD

18   HOPED TO FILE IT LAST WEEK, BUT THE OTHER SIDE HAS PRESSED US

19   TO WAIT THE FULL TEN DAYS BEFORE FILING IT, YOU WILL GET A

20   COPY OF THE MAY 13TH, 2003 LETTER.  AND I WOULD RESPECTFULLY

21   ASK YOUR HONOR TO READ THAT LETTER AND READ DEFENDANTS' SLAP

22   MOTIONS WHERE THEY TALK ABOUT HOW CERTAIN OF OUR FACTUAL

23   CLAIMS IN THIS CASE ARE A MOCKERY.  AND COMPARE THAT LETTER

24   TO THAT SLAP BRIEF BEFORE YOU RULE ON THIS ISSUE.

25             THE COURT:  WHAT IS THE STATUS OF THE SLAP MOTION?

1          MR. KLINE:  IT IS UNDER SUBMISSION.

2          THE COURT:  WHEN WAS IT SUBMITTED?

3          MR. KLINE:  IT WAS -- WELL, TWICE.  IT WAS

4     SUBMITTED BACK IN -- WELL, THREE TIMES ACTUALLY.

5          THE COURT:  THE LATEST SUBMISSION.

6          MR. KLINE:  THE LATEST SUBMISSION WAS A COUPLE OF

7     MONTHS AGO.  AND THEN JUDGE WRIGHT ASKED THE PARTIES TO

8     RESUBMIT ALL OF THE BRIEFING IN THE MATTER.

9          THE COURT:  ALL RIGHT.

10         MR. KLINE:  SO, THAT ISSUE IS STILL PENDING.

11         BUT WE WOULD ASK YOUR HONOR TO TAKE A LOOK AT THAT

12    MAY 13TH, 2003 LETTER WHICH YOU ORDERED PRODUCED ON APRIL

13    11TH IN CONSIDERING SOME OF THESE ISSUES.

14         AND LIKE I SAID, YOU'LL GET A BRIEF FIRST THING

15    MONDAY MORNING ON THAT.

16         THE COURT:  I COULD HARDLY WAIT.

17         MR. KLINE:  I KNOW.  I CAN TELL.

18         ISSUE NUMBER 10 IS THIS KEVIN MARKS' DECLARATION.

19    HERE'S WHAT'S GOING ON HERE.  KEVIN MARKS REPRESENTS THE

20    SIEGELS WAY BACK WHEN.  THE TOBEROFF DEFENDANTS REPRESENT THE

21    SIEGELS NOW.  WE'RE NOT INTERESTED IN COMMUNICATIONS

22    INVOLVING MARKS AND TOBEROFF OF LATE WHERE THEY'RE TRYING TO

23    PRESERVE SIEGEL CONFIDENCES.  WE DON'T WANT THOSE.

24         WHAT WE WANT IS, KEVIN MARKS IN CONNECTION WITH

25    THIS SLAP BRIEF SUBMITS A DECLARATION.  AND THE DECLARATION

1   FOCUSES ON THIS ONE NARROW CONVERSATION THAT OCCURRED BETWEEN

2   HIM AND TOBEROFF.  AND HE SAID CERTAIN THINGS DIDN'T HAPPEN

3   ON THAT ONE SPECIFIC NARROW CONVERSATION.

4          NOW, THE MAY 13TH LETTER, THE 2003 LETTER THAT

5   YOU'RE GOING TO SEE ON MONDAY, BLOWS A HOLE IN KEVIN MARKS'

6   DECLARATION AND THEIR FACTUAL ASSERTIONS IN THEIR SLAP

7   BRIEFING.

8          BUT TO JUMP RIGHT TO THE POINT ABOUT THE MARKS'

9   DECLARATION, ONE, THERE'S NO EVIDENCE THAT THE PARTIES -- AND

10  YOU HAVE TO DO THIS TO CREATE A COMMON INTEREST PRIVILEGE --

11  SAT DOWN AND CREATED THIS COMMON INTEREST PRIVILEGE

12  CONCERNING, A, THE DRAFTS OF THAT DECLARATION OR, B, THEIR

13  COMMUNICATIONS CONCERNING IT.

14         WHAT IS THE BEST EVIDENCE OF THAT.  WE ASKED FOR

15  THAT DOCUMENT IN DECEMBER.  THEY ASKED FOR EXTRA TIME TO

16  PREPARE PRIVILEGE LOGS.  THEY'VE HAD THESE DOCUMENTS, THESE

17  KEVIN MARKS DOCUMENTS SINCE SEPTEMBER, OCTOBER.  THEY DON'T

18  PRODUCE THEM, AND THEY DON'T LOG THEM.

19         AND IN OUR FIRST MEET AND CONFER CALL WITH THEM WE

20  SAY, WHERE ARE THESE KEVIN MARKS DOCUMENTS.  WE ASKED FOR

21  THEM SPECIFICALLY.  WE ASKED FOR THE DRAFTS.  WE ASKED FOR

22  THE COMMUNICATIONS.

23         AND THEY DON'T SAY, OH, MY GOSH, IT WAS COMPLETE

24  INADVERTENCE.  THESE ARE COVERED BY THIS JOINT COMMON

25  INTEREST PRIVILEGE THAT WE HAVE.  WE'LL GET YOU THE LOG RIGHT

1    AWAY.

2            THEY GO RADIO SILENT FOR A COUPLE OF WEEKS.  AND,

3    THEN, ALL OF A SUDDEN THEY SEND OVER THESE PRIVILEGE LOGS

4    THAT MAKE THESE ASSERTIONS.

5            YOU CAN'T AFTER THE FACT CREATE A JOINT COMMON

6    INTEREST PRIVILEGE TO PROTECT DOCUMENTS LIKE THAT.  THE LAW

7    IS CLEAR ON THAT.  IT HAS TO PRE-EXIST.  IT HAS TO BE VERY

8    CLEAR.  AND IT HAS TO BE LIMITED TO A SPECIFIC LEGAL PURPOSE.

9            NOW, THAT LEGAL PURPOSE -- WE AGREE WITH THEM.  IF

10   THAT LEGAL PURPOSE IS PROTECTING SIEGEL CONFIDENCES, WE DON'T

11   WANT THOSE DOCUMENTS.  BECAUSE THAT'S A LEGITIMATE LEGAL

12   OBJECTIVE.

13           THAT'S VERY DIFFERENT, HOWEVER, FROM CREATING NEW

14   EVIDENCE IN THIS CASE ABOUT AN ALLEGED CONVERSATION -- I'M

15   SORRY, NOT ABOUT AN ALLEGED CONVERSATION, ABOUT A

16   CONVERSATION THAT TOBEROFF AND MARKS HAVE AND WHAT THE

17   CONTENTS OF THAT CONVERSATION WERE.  THERE'S NO BASIS TO

18   PROTECT THE DRAFTS OF THAT DOCUMENT OR COMMUNICATIONS RELATED

19   TO IT.

20           THE LAST ISSUE IS ISSUE 11, YOUR HONOR.  AND,

21   FRANKLY, THE REASON WHY I BROUGHT THE EXCERPT TO THE RUTTER

22   GUIDE, AND I'VE PROVIDED IT TO OPPOSING COUNSEL, IS IT

23   COULDN'T BE MORE CLEAR ON WHAT YOUR OBLIGATIONS ARE IN

24   RESPONSE TO RULE 34.

25           RULE 34(B)(2)(C) SAYS:

1          "AN OBJECTION TO PART OF THEIR REQUEST MUST

2          SPECIFY THE PART AND PERMIT INSPECTION OF THE

3          REST."

4     THE RUTTER GUIDE -- AND THIS IS THE RUTTER GUIDE

5 THEY'VE BEATEN US UP WITH TO SAY THAT THEIR PRIVILEGE LOGS

6 ARE COMPLETELY 100 PERCENT VALID.  IT'S LITERALLY THE SAME

7 SECTION OF THE RUTTER GUIDE, AND IT'S CITED IN OUR PAPERS.

8          IT SAYS: "WHERE AN OBJECTION APPLIES TO ONLY

9          A PORTION OF THE DOCUMENTS REQUESTED, THE

10          RESPONDING PARTY MUST PRODUCE THE REMAINDER."

11          "PRACTICE POINTER.  AVOID RELYING EXCLUSIVELY

12          ON THE OPPRESSIVE AND BURDENSOME OBJECTION.

13          INSTEAD SUGGEST ALTERNATIVES SATISFACTORY TO

14          YOUR CLIENT, E.G., LIMIT PRODUCTION TO RECORDS

15          COVERING A CERTAIN TIME PERIOD OR THAT CAN BE

16          LOCATED WITHIN A SPECIFIC NUMBER OF HOURS,

17          PROVIDE SUMMARIES OR REPRESENTATIVE SAMPLES,

18          OR SEEK THE REQUESTING PARTY'S AGREEMENT TO

19          REIMBURSE FOR COSTS INCURRED IN THE SEARCH."

20     THE MOORE'S TREATISE SAYS THE SAME THING.  THE

21 CASES WE CITED, AIKENS, THE OTHER CASES SAY, IF YOU KNOW

22 YOU'VE GOT RESPONSIVE DOCUMENTS THAT AREN'T SUBJECT TO THESE

23 OBJECTIONS ABOUT, YOU KNOW, I'M GOING TO HAVE TO SEARCH TEN

24 YEARS OF MATERIALS OF UNRELATED GARBAGE, YOU'VE GOT TO

25 PRODUCE THE RESPONSIVE STUFF.

1          IN BOTH OF OUR MEET AND CONFER -- NO, IN OUR

2     IN-PERSON MEET AND CONFER CONVERSATION, WHICH LASTED ABOUT AN

3     HOUR, AND UNFORTUNATELY YOU HAD TO READ ABOUT IN MR. TOKORO'S

4     DECLARATION, THEY TOLD US, YES, THERE ARE ARI EMANUEL

5     DOCUMENTS THAT ARE RESPONSIVE.  YES, THERE ARE PACIFIC

6     PICTURES DOCUMENTS THAT ARE RESPONSIVE.  BUT GUESS WHAT,

7     WE'RE NOT GIVING THEM TO YOU UNTIL YOU GO OUT AND YOU REWRITE

8     YOUR REQUESTS AND NARROW THEM.

9          AND WE ADVERTED TO RULE 34 AND THESE CASES THAT

10    SAID YOU CAN'T DO THAT.  YOU HAVE TO PRODUCE THE DOCUMENTS TO

11    US AND THEN WHAT CAN YOU DO.  YOU CAN SAY, WE'RE PRODUCING

12    THESE DOCUMENTS AS TO ARI EMANUEL.

13         BUT HERE IS SPECIFICALLY, AS RUTTER POINTS OUT, HOW

14    WE'RE LIMITING OUR RESPONSES.  WE'RE NOT GIVING YOU ANYTHING

15    PRIOR TO 2007.  WE'RE NOT GIVING YOU ANYTHING RELATED TO THE

16    FOLLOWING THREE BUSINESS ENTITIES THAT THESE INDIVIDUALS HAVE

17    CREATED THAT HAVE NOTHING TO DO WITH THIS CASE.

18         THEN WHAT HAPPENS.  THEN, WE CAN HAVE A MEET AND

19    CONFER ON REAL OBJECTIONS, NOT THESE CIRCULAR OBJECTIONS, AND

20    WE CAN SAY 2007, THAT'S NOT A GOOD CUT-OFF.  IT SHOULD BE

21    2006.  AND YOU EITHER NEGOTIATE THAT OUT OR WE COME TO YOU

22    AND PRESENT ARGUMENTS WHY 2006 IS RELEVANT.

23         INSTEAD, THEY'VE BOUGHT THEMSELVES FROM DECEMBER

24    2010 WHEN WE SERVED THESE DISCOVERY REQUESTS UNTIL NOW,

25    ALMOST MAY, AND THEY HAVEN'T PRODUCED A SINGLE DOCUMENT.  AND

1    THEIR ANSWER IS LET'S MEET AND CONFER SOME MORE.

2           THAT'S NOT GOING TO GET US ANYWHERE.  I WILL TELL

3    YOU, WE WERE ON A MEET AND CONFER CALL FOR AN HOUR.  WE ASKED

4    AGAIN AND AGAIN, GIVE US THE SPECIFIC PROBLEM YOU HAVE WITH A

5    SPECIFIC RFP.  AND MR. TOBEROFF REPEATEDLY SAID, MR. KLINE,

6    YOU'RE TRYING TO WASTE MY MONEY.  I'M NOT GOING THROUGH THIS

7    EXERCISE WITH YOU.  YOU HAVE OUR POSITIONS.

8           AND, SO, WE GOT NOWHERE.  AND IF YOU ORDER US TO GO

9    BACK OUT AND MEET AND CONFER YET AGAIN ON THIS ISSUE, WE'RE

10   JUST GOING TO BE BACK IN HERE BEFORE YOU.

11          SO, WE THINK AN ORDER SHOULD ISSUE ON NUMBER 11

12   THAT SAYS, NO, YOU NEED TO PRODUCE THE DOCUMENTS THAT ARE

13   RESPONSIVE.  PERIOD.  AND WE'RE DONE.  AND LET'S MOVE ON.

14          IN TERM OF THE INTERROGATORIES, I KNOW I'VE TAKEN A

15   LOT OF YOUR TIME.  THERE'S A COUPLE OF KEY POINTS IN THE

16   INTERROGATORIES.  IN JUDGE BREYER'S DECISION IN THE REYES

17   CASE, HE MADE A VERY IMPORTANT OBSERVATION THAT OBTAINS HERE

18   AS WELL.

19          NOT ONLY CAN DEFENDANTS WAIVE PRIVILEGES BY HANDING

20   DOCUMENTS OVER TO THE GOVERNMENT -- AND WHAT WE'VE ASKED FOR

21   IN SOME OF THESE INTERROGATORIES IS TELL US EXACTLY WHAT

22   YOU'VE GIVEN TO THE GOVERNMENT.  AND THEY STILL HAVEN'T DONE

23   SO.  THEY'VE NEVER LOGGED THOSE COMMUNICATIONS.  THEY'VE

24   NEVER LOGGED THOSE DOCUMENTS.

25          THE MOST POWERFUL EXAMPLE OF THAT IS THEIR

1    SO-CALLED CONFIDENTIALITY AGREEMENT, WHICH THEY PRODUCED TO

2    US FOR THE FIRST TIME IN THEIR OPPOSITION BRIEF, EVEN THOUGH

3    IT WAS CALLED FOR BY OUR DOCUMENT REQUEST.

4         BUT WHAT JUDGE BREYER SAID IS THERE'S TWO WAYS.

5    ONE, IT'S THESE WRITTEN COMMUNICATIONS.  AND WE NEED TO KNOW

6    THE FULL COMPASS OF THOSE WRITTEN COMMUNICATIONS SO THAT WE

7    CAN PROTECT OUR CLIENT'S INTERESTS HERE.

8         BUT, TWO, JUDGE BREYER ALSO SAID IN THESE VERBAL

9    CONVERSATIONS THAT TALENTED DEFENSE LAWYERS HAVE THEY ALSO

10   MIGHT REVEAL ALL OTHER SORTS OF CLIENT CONFIDENCES.  AND I,

11   JUDGE BREYER, AM NOT GOING TO LET YOU GET AWAY WITH THAT.

12   YOU NEED TO TELL ME WHAT YOU TOLD THE GOVERNMENT.  AND TO THE

13   EXTENT YOU'RE TELLING THEM PRIVILEGED STUFF, THAT'S A WAIVER.

14   PERIOD.

15        SO, WE HAVE A RIGHT TO GAIN ACCESS TO THIS

16   INFORMATION.

17        IN TERMS OF -- SO, THAT'S THE MAIN THRUST OF THOSE

18   INTERROGATORIES.  WE NEED TO KNOW WHAT THEY TOLD THESE PEOPLE

19   AND WHEN.

20        THERE'S ALSO A VERY VAGUE ALLUSION TO A MEETING

21   WITH AN FBI AGENT SEVERAL YEARS AGO, THIS FELLOW MR. ORNALES.

22   THAT FELLOW IS APPARENTLY NOW PART OF THE MCNALLY SECURITY

23   GROUP, THE SAME PERSON WHO LAUNCHED THIS INTERNAL

24   INVESTIGATION.

25        WE DON'T -- WE CAN'T ASSESS THOSE PRIVILEGE CLAIMS

1    WITHOUT MORE INFORMATION ABOUT WHAT HAPPENED IN THAT INITIAL

2    CONVERSATION WITH MR. ORNALES, WHAT'S THE RELATIONSHIP WITH

3    HIM NOW, WHAT JOB WAS HE SUPPOSED TO BE DOING.

4             WE JUST WANT THAT BASIC INFORMATION.  AND, AGAIN,

5    WE DON'T WANT A BLOW-BY-BLOW RECITATION OF HE SAID, SHE SAID,

6    YOU KNOW, VIRTUAL TRANSCRIPT.  WE JUST CAN'T HAVE THEM

7    SKIPPING OVER KEY COMMUNICATIONS THAT WERE EXCHANGED BETWEEN

8    THE TWO PARTIES.

9             THE LAST ISSUE, YOUR HONOR, IS, AS YOU KNOW, ISSUES

10   NUMBERS 1 THROUGH 7 FROM YOUR PREVIOUS RULING WERE

11   INCORPORATED BY REFERENCE IN THIS MOTION.

12            AND WE, YOU KNOW, RESPECTFULLY DISAGREE WITH SOME

13   OF THOSE RULINGS.  AND WE'LL BE ASKING YOU TO RECONSIDER SOME

14   OF THOSE RULINGS IN LIGHT OF THE MAY 13TH DOCUMENT.  THIS IS

15   THE FILING THAT WILL COME OUT ON MONDAY.

16            AND VERY SPECIFICALLY IT HAS TO DO WITH MICHAEL

17   SIEGEL COMMUNICATIONS.  IT DOESN'T GO TO THE CONSENT

18   AGREEMENT ISSUE.

19            BUT WE WOULD ASK YOU IN EVALUATING ISSUES NUMBERS 1

20   THROUGH 7 TO TAKE A REALLY HARD LOOK AT THEIR SLAP BRIEF

21   WHERE THEY CALLED OUR FACTUAL CLAIMS A MOCKERY AND THE MAY

22   13TH, 2003 LETTER THAT THEY NEVER DISCLOSED EVEN THOUGH WE

23   ASKED FOR IT IN MEET AND CONFER CORRESPONDENCE, EVEN THOUGH

24   WE'VE REQUESTED IT IN OUR MOTION.  AND THEY WOULD NEVER SAY

25   ONE WAY OR THE OTHER WHETHER IT EXISTED.

1           SO, OUR HOPE HERE IS REALLY JUST TO GET ALL THE

2    DOCUMENTS OUT, ALL THE DOCUMENTS OUT ON THE TABLE AND START

3    TAKING SOME DEPOSITIONS.  THIS CASE IS ABOUT A YEAR AGO, AND

4    WE'D REALLY LIKE TO GET MOVING ON IT.

5           I APPRECIATE YOUR TIME AND PATIENCE, YOUR HONOR,

6    AND I PROBABLY WENT WELL OVER MY TIME LIMIT.

7           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

8           MS. BRILL.

9           MS. BRILL:  GOOD MORNING -- GOOD AFTERNOON, YOUR

10   HONOR.

11          GOOD AFTERNOON, YOUR HONOR.  I'LL TRY TO BE BRIEF

12   TO ADDRESS MR. KLINE'S POINTS.

13          I'LL START WITH THE ISSUE THAT YOUR HONOR RAISED

14   ABOUT WHY IS IT DIFFERENT WHEN A CRIME VICTIM IS REPORTING A

15   CRIME TO THE GOVERNMENT.

16          THE COURT:  I THINK I SAID IS IT DIFFERENT.

17          MS. BRILL:  IS IT DIFFERENT.

18          THE COURT:  NOT WHY IS IT DIFFERENT.

19          MS. BRILL:  IS IT DIFFERENT.  YES, IT'S DIFFERENT,

20   YOUR HONOR.  IT'S DIFFERENT BECAUSE THE VICTIM OF A CRIME IS

21   NOT MAKING A VOLUNTARY DISCLOSURE.  THE VICTIM OF A CRIME HAS

22   INVOLUNTARILY DISCLOSED THE MATERIAL THAT THE THEFT -- THAT

23   THE THIEF STOLE.

24          AND, SO, WHEN THE GOVERNMENT ASKS FOR THOSE

25   DOCUMENTS PURSUANT TO A SUBPOENA IN ORDER TO FURTHER ITS

```
 1   INVESTIGATION, IT'S NOT THE SAME TYPE OF ACT TO TURN THOSE
 2   GOVERNMENT -- TO TURN THOSE DOCUMENTS OVER SO THAT THE
 3   GOVERNMENT CAN INVESTIGATE FULLY AND MEANINGFULLY, QUESTION
 4   WITNESSES ABOUT THE DOCUMENTS AND THE CIRCUMSTANCES AS IT IS
 5   WHEN YOU ARE IN AN ADVERSARIAL SITUATION TO THE GOVERNMENT,
 6   WHICH IS -- THAT'S EVERY CASE THAT MR. KLINE TALKED ABOUT,
 7   AND THE LAW JOURNAL ARTICLE THAT YOUR HONOR SAID YOU WOULDN'T
 8   ACCEPT BUT THAT HE TRIED TO PLACE INTO THE RECORD ANYWAY.
 9           ALL OF THOSE DISCUSS ONLY THE SITUATION OF WHERE
10   THE PERSON TURNING OVER THE DOCUMENTS IS THE ADVERSARY OF THE
11   GOVERNMENT.  AND, SO, IT HAS NOTHING TO DO WITH THE SITUATION
12   WHERE YOU'RE A CRIME VICTIM AND YOU'RE TRYING TO GET AID OF
13   THE GOVERNMENT'S ASSISTANCE IN FIGURING OUT WHAT HAPPENED AND
14   OBTAINING JUSTICE FOR WHAT HAPPENED.
15           NOW, THERE'S NO DOUBT AT ALL THAT THIS WAS A THEFT.
16   I MEAN, THAT'S NEVER BEEN DISPUTED.  AND, SO -- AND THE
17   SUBPOENA, IT'S FROM THE U.S. ATTORNEY'S OFFICE.
18           IT SAYS, "GRAND JURY SUBPOENA.  YOU ARE COMMANDED"
19   -- MR. KLINE READ VERY SELECTIVELY FROM THE SUBPOENA, BUT IT
20   SAYS, "YOU ARE COMMANDED TO PROVIDE TO THE GOVERNMENT THE
21   TOBEROFF TIMELINE AND ITS ATTACHMENTS."
22           AND, THEN, IT HAS -- YOU KNOW, IT DOES HAVE A
23   BOILERPLATE DISCUSSION ABOUT PRIVILEGE, BUT THE WHOLE POINT
24   OF TURNING OVER THE DOCUMENTS WAS SO THAT THE GOVERNMENT
25   COULD INVESTIGATE THE CRIME.
```

```
1              AND IN REPLY -- IT'S ONLY IN REPLY THAT DC HAS COME

2    UP WITH THIS STRANGE ALLEGATION THAT THE GOVERNMENT DIDN'T

3    REALLY REQUEST THE STOLEN DOCUMENTS OR ASK FOR THEM.  AND

4    IT'S JUST NOT TRUE.

5              IT'S UNFORTUNATE THAT MR. KENDALL COULDN'T BE HERE

6    TODAY OR HE COULD EXPLAIN TO YOUR HONOR HIMSELF.  BUT WHEN I

7    TOLD HIM THAT THIS WAS DC'S CONTENTION, HE SAID THAT'S TOTAL

8    NONSENSE.  THE U.S. ATTORNEY'S OFFICE ASKED FOR THE DOCUMENTS

9    SO THAT THEY COULD INVESTIGATE AND --

10             THE COURT:  WHAT ABOUT THE ARGUMENT THAT YOU HAD

11   THE OBLIGATION TO ASSERT PRIVILEGE, MAKE THE GOVERNMENT COME

12   IN AND GET THE PRIVILEGE OVERRULED.

13             MS. BRILL:  NO, YOUR HONOR.  THERE'S NO OBLIGATION

14   ALONG THOSE LINES.  THERE WAS AN AGREEMENT WITH THE

15   GOVERNMENT TO MAINTAIN THE DOCUMENTS AS PRIVILEGED.

16             SO, THE AGREEMENT -- THE CASES -- EVEN THE CASES

17   DEALING WITH A PARTY WHO'S IN AN ADVERSARIAL RELATIONSHIP TO

18   THE GOVERNMENT GENERALLY RECOGNIZE THAT THE GOVERNMENT BY AN

19   AGREEMENT CAN AGREE TO MAINTAIN DOCUMENTS AS PRIVILEGED.  AND

20   THE STEINHARDT CASE WHICH MR. KLINE CITED TO YOU SPECIFICALLY

21   TALKS ABOUT THAT.

22             AND, CLEARLY, IF YOU'RE THE VICTIM OF A CRIME, THE

23   GOVERNMENT SHOULD BE ABLE TO SAY I'M GOING TO MAINTAIN THE

24   DOCUMENTS AS CONFIDENTIAL.  AND EXHIBIT B TO MR. DAUMS'

25   DECLARATION, THAT'S THE GOVERNMENT'S LETTER -- EXCUSE ME.
```

1          THE COURT:  WELL, LET ME ASK YOU --

2          MS. BRILL:  YES.

3          THE COURT: -- IN TERMS OF PROOF.

4          MS. BRILL:  YES.

5          THE COURT:  SO, YOU GET DOWN TO TRIAL AND PUT ON

6   THE -- THE GOVERNMENT PUTS ON ITS WITNESS AND SAYS, ARE THESE

7   THE DOCUMENTS THAT WERE STOLEN.

8          AREN'T THEY PUBLIC AT THAT POINT?

9          MS. BRILL:  YOUR HONOR, TRIAL IS -- I MEAN, THAT

10  CERTAINLY HAS NOT HAPPENED, THAT THERE'S BEEN NO -- THERE'S

11  NO INFORMATION THAT IT'S BEEN DISCLOSED AT ANY POINT TO ANY

12  THIRD PARTIES BEYOND GOVERNMENT OFFICIALS.  AND, CERTAINLY,

13  THE TRIAL HAS NOT OCCURRED.

14         SO, WHAT HAPPENED WAS THE GOVERNMENT'S LETTER

15  SPECIFICALLY SAYS -- IT ADDRESSES THIS ISSUE.  BECAUSE THE

16  GOVERNMENT MAY NEED TO INVESTIGATE AND TALK WITH WITNESSES

17  AND MAY OR MAY NOT USE DOCUMENTS IN A TRIAL OR MAKE A FURTHER

18  DISCLOSURE.  OR THEY MAY JUST USE THE INFORMATION FOR

19  THEMSELVES WITHOUT GOING TO ANY FURTHER DISCLOSURE.

20         BUT THE GOVERNMENT'S LETTER TO MR. KENDALL -- IT'S

21  EXHIBIT B TO THE DAUM DECLARATION.  IT SPECIFICALLY REFERS TO

22  AN ONGOING CRIMINAL INVESTIGATION.

23         IT SAYS, "THE GOVERNMENT RECOGNIZES THE INTENTION

24  NOT TO WAIVE ANY PRIVILEGE."  AND IT SAYS, "BECAUSE OF THAT

25  THE GOVERNMENT WILL MAINTAIN THE CONFIDENTIALITY OF THE

1    DOCUMENTS."

2          SO, IT'S HARD TO SEE HOW YOU COULD HAVE HAD A

3    CLEARER INTENTION THAT THE GOVERNMENT UNDERSTOOD THERE WAS NO

4    INTENTIONAL WAIVER.  SO, WE'RE NOT TALKING ABOUT CREATING A

5    NEW PRIVILEGE.  THIS IS AN EXISTING PRIVILEGE FOR

6    ATTORNEY-CLIENT COMMUNICATIONS.  IT'S JUST A QUESTION OF WHAT

7    IS -- IS IT AN INTENTIONAL WAIVER WHEN SOMEONE PROVIDES

8    DOCUMENTS TO THE GOVERNMENT, AND THE GOVERNMENT SAYS WE'RE

9    GOING TO KEEP THESE DOCUMENTS CONFIDENTIAL AND THERE IS NO

10   INTENTIONAL WAIVER.  WE UNDERSTAND THAT YOU'RE NOT INTENDING

11   TO MAKE A WAIVER BY TURNING THESE DOCUMENTS OVER.

12          AND AS I SAID --

13          THE COURT:  I THINK THE ARGUMENT IS THAT THE

14   GOVERNMENT ISN'T THE CLIENT.  AND, SO, BY DISCLOSING IT TO

15   SOMEBODY WHO'S NOT THE CLIENT YOU ARE WAIVING --

16          MS. BRILL:  NO, BUT --

17          THE COURT:  YOU'RE INTENTIONALLY DISCLOSING TO THE

18   GOVERNMENT, AND THE GOVERNMENT IS NOT YOUR CLIENT.

19          MS. BRILL:  THE GOVERNMENT IS NOT THE CLIENT, BUT

20   THE GOVERNMENT IS NOT ASSERTING A WAIVER.  IT'S DC COMICS

21   THAT'S TRYING TO BENEFIT BY THE CRIME AND INHIBIT THE ABILITY

22   TO REPORT THE CRIME.

23          NOW, IF YOU THINK ABOUT THIS IN TERMS -- THINK OF

24   THE VAST IMPLICATIONS OF WHAT THIS KIND OF A PROVIDING

25   CONFIDENTIAL AND PRIVATE INFORMATION TO THE GOVERNMENT WOULD

1    MEAN IF GIVING IT TO THE GOVERNMENT WAIVED ANY PROTECTIONS.

2           IF THERE'S A HACKING AT A BANK AND YOU'VE GOT

3    FINANCIAL RECORDS THAT ARE DISCLOSED TO SOME HACKER AS A

4    RESULT OF THE HACKING, AND THE BANK TURNS THOSE FINANCIAL

5    RECORDS OVER TO THE GOVERNMENT, SUDDENLY THERE'S NO -- NO ONE

6    HAS FINANCIAL PROTECTION, PRIVACY PROTECTION OF THE BANK

7    RECORDS OR MEDICAL RECORDS THAT ARE STOLEN AND DISCLOSED AND

8    SOMEONE GIVES THEM TO THE GOVERNMENT, THE VICTIM OF THE THEFT

9    GIVES THEM TO THE GOVERNMENT AND SUDDENLY THE PEOPLE WHOSE

10   INFORMATION, MEDICAL RECORDS -- OH, I'M SORRY.  THEY HAVE NO

11   PROTECTION AT ALL.  OR TRADE SECRET THEFT.

12          THERE ARE VAST NUMBERS OF PRIVACY CRIMES WHERE THE

13   CRIME VICTIM HAS TO BE ABLE TO REPORT THEM TO THE GOVERNMENT.

14   AND THE GOVERNMENT HAS TO BE ABLE TO -- THE GOVERNMENT HERE

15   IS SAYING IT'S IN THE INTERESTS OF OUR INVESTIGATION TO

16   MAINTAIN THEM AS CONFIDENTIAL.  OTHERWISE THEY WOULDN'T HAVE

17   WRITTEN YOU'RE MAINTAINING YOUR PRIVILEGE, AND WE'RE GOING TO

18   KEEP THEM CONFIDENTIAL.

19          SO, THERE'S NO CASE -- THERE'S NOT A SINGLE CASE

20   THAT THEY CAN CITE THAT EVER SAYS, NO, IT'S IMPOSSIBLE EVEN

21   WITH THE GOVERNMENT'S AGREEMENT TO KEEP DOCUMENTS

22   CONFIDENTIAL.  THAT THOSE DOCUMENTS SUDDENLY ARE DISCLOSED TO

23   THE WORLD, AND THE VICTIM HAS TO OPEN THEM UP TO LITIGATION

24   ADVERSARIES.  THERE'S NOT A SINGLE CASE.  AND IT WOULD BE

25   EXTREMELY FAR-REACHING AND JUST A VERY RADICAL POSITION THAT

1    NO COURT HAS EVER ADOPTED.

2         SO, SEPARATELY -- SEPARATELY FROM THE

3    CONFIDENTIALITY AGREEMENT, THERE IS ALSO A COMMON INTEREST

4    AGREEMENT.

5         (BRIEF PAUSE IN PROCEEDINGS.)

6         MS. BRILL:  NOW, MR. KLINE SORT OF MESHED THESE TWO

7    TOGETHER, BUT YOU DON'T NEED A -- YOU DON'T NEED A WRITTEN

8    DOCUMENT TO CREATE A COMMON INTEREST PRIVILEGE.  THE COMMON

9    INTEREST PRIVILEGE IS CREATED BY THE FACTS AND CIRCUMSTANCES

10   THAT CREATE THE COMMON INTEREST.  SO, YOU NEED TO HAVE A

11   JOINT PROSECUTION EFFORT, AND THERE NEEDS TO BE CONDUCT IN

12   FURTHERANCE OF THEIR EFFORT.

13        THE CASES SAY THAT YOU DON'T NEED ANY WRITTEN

14   AGREEMENT CONFIRMING THAT.  THERE'S ONE, KATZ VERSUS AT&T,

15   191 FRD 433 --

16        THE COURT:  HOW IS A VICTIM A PROSECUTOR?

17        MS. BRILL:  I'M SORRY?

18        THE COURT:  HOW IS A VICTIM A PROSECUTOR?

19        MS. BRILL:  WELL, THE QUESTION ISN'T WHETHER IT'S A

20   PROSECUTOR.  IT'S A QUESTION OF WHETHER THEY HAVE A COMMON

21   INTEREST.  DO THEY HAVE A COMMON INTEREST IN INVESTIGATING

22   THE THEFT FROM THE OFFICE, DETERMINING -- AND DETERMINING THE

23   PERPETRATOR.

24        THEY DON'T HAVE TO HAVE AN ABSOLUTE IDENTITY OF

25   INTEREST.  THEY HAVE TO HAVE A COMMON INTEREST.  AND THEY

1    CLEARLY DO HAVE -- THEY HAVE NO ADVERSITY CLEARLY.  AND THEY

2    CLEARLY HAVE A COMMON INTEREST IN INVESTIGATING THE THEFT AND

3    DETERMINING WHAT HAPPENED.  THAT'S WHY -- THAT'S WHY THE

4    GOVERNMENT PURSUED THE EFFORT TO INVESTIGATE AND TO TRY TO

5    DETERMINE WHAT HAPPENED.

6            SO, THERE IS A -- THE KATZ CASE I REFERRED TO,

7    THAT'S THE EASTERN DISTRICT OF PENNSYLVANIA IN 2000.  AND

8    THAT CITES TWO OTHER CASES, HEWLETT-PACKARD, WHICH IS 115 FRD

9    AT 311, AND A CASE CALLED RAYMOND VERSUS AMERICAN CHARTER,

10   148 FRD 647, WHICH ALL SUPPORT THE PROPOSITION THAT YOU DON'T

11   NEED A FORMAL WRITTEN AGREEMENT TO CREATE A COMMON INTEREST

12   PRIVILEGE.

13           AND THE COMMON INTEREST HERE, AS I SAID, IS THE

14   COMMON INTEREST IN INVESTIGATING AND RESPONDING TO THE

15   THEFT.

16           SO, IT'S JUST -- THE MAIN POINT I THINK THAT MR.

17   KLINE WAS SAYING WAS THAT THE GOVERNMENT DIDN'T NEED THE

18   DOCUMENTS AND COULD HAVE PROCEEDED WITHOUT THEM.  BUT THE

19   GOVERNMENT DEMANDED THE DOCUMENTS, AND THEY WERE PRODUCED.

20           THE AMENDMENTS TO RULE 502 DON'T CHANGE THE LAW IN

21   ANY RESPECT.  IT WAS REALLY JUST INTENDED AS A CODIFICATION

22   OF EXISTING LAW.  AND, SO, ALTHOUGH THEY'VE PUT IN A BUNCH OF

23   BRIEFING ABOUT THAT, IT REALLY DIDN'T CHANGE -- REALLY JUST

24   MEANT TO CODIFY EXISTING CASE LAW.  AND AS WE'VE SAID, AND AS

25   MR. KLINE AGREES, NONE OF -- THERE'S NO EXISTING CASE DEALING

1    WITH THAT ISSUE.

2              ON THE DAVID MICHAELS' DOCUMENTS, UNLESS YOUR HONOR

3    HAS QUESTIONS ABOUT THE --

4              THE COURT:  NO, GO AHEAD.

5              MS. BRILL: -- THE U.S. ATTORNEY'S OFFICE'S

6    DOCUMENTS.

7              THE COURT:  BY THE WAY, I ASSUME IF THERE HAD BEEN

8    AN INDICTMENT, I WOULD HAVE BEEN TOLD ABOUT IT.

9              MS. BRILL:  YES, YOUR HONOR.  IF SOMETHING OCCURS

10   LIKE THAT, WE'LL CERTAINLY INFORM THE COURT.

11             SO, THE DAVID MICHAELS DOCUMENTS, THESE ARE --

12   THESE ARE DOCUMENTS THAT WERE REQUESTED OF MR. TOBEROFF.  AND

13   THEY WERE CLEARLY -- THEY CLEARLY HAVE ATTORNEY-CLIENT

14   PRIVILEGED INFORMATION.  AND THEY'RE DOCUMENTS THAT WERE ALL

15   IN THE CONTEXT OF MR. MICHAELS SEEKING TO OBTAIN THE SIEGELS

16   AS HIS CLIENTS.

17             AND THE BARTON CASE FROM THE NINTH CIRCUIT

18   SPECIFICALLY SAYS THAT EVEN IF NO ATTORNEY-CLIENT

19   RELATIONSHIP ULTIMATELY COMES ABOUT, DOCUMENTS WHERE AN

20   ATTORNEY IS SEEKING TO REPRESENT A CLIENT, THOSE ARE

21   PRIVILEGED AND CONFIDENTIAL.

22             SO, THERE'S NOT REALLY MUCH MORE TO SAY ABOUT THOSE

23   DOCUMENTS.  THEY'RE PRIVILEGED.  THEY CONTAIN ATTORNEY-CLIENT

24   PRIVILEGED INFORMATION.  THEY'RE ALL IN THE CONTEXT OF MR.

25   MICHAELS TRYING TO -- TRYING TO OBTAIN THE DOCUMENTS.

1       I WILL NOTE THAT ONE ISSUE THAT DC HAS MENTIONED ON

2    THESE IS THAT THERE'S SOME KIND OF A WAIVER BECAUSE OF

3    INFORMATION THAT'S BEEN PROVIDED ABOUT MR. MICHAELS.  BUT

4    IT'S BEEN A VERY -- YOUR HONOR HAS NOTED THAT DC HAS BEEN

5    CONSTANTLY SAYING YOU NEED TO PROVIDE MORE INFORMATION, YOU

6    NEED TO PROVIDE MORE INFORMATION, YOU NEED TO DESCRIBE THESE

7    THINGS MORE FULLY.

8       AND, SO, IT'S VERY DIFFICULT TO SAY, OH, SUDDENLY

9    SORRY, YOU PUT IN MORE INFORMATION NOW ABOUT THE DOCUMENTS SO

10   THERE'S A WAIVER.

11      THERE'S ALWAYS BEEN AN INTENTION TO MAINTAIN THE

12   PRIVILEGED COMMUNICATIONS OF THESE DOCUMENTS.

13      IN TERMS OF THE PRIOR LOGGING, IN THE PRIOR CASE

14   POST-LITIGATION DOCUMENTS WEREN'T LOGGED I BELIEVE.  IN THE

15   CURRENT CASE, THERE WAS A FIRST SET OF DOCUMENT REQUESTS THAT

16   DIDN'T CALL FOR THESE DOCUMENTS.  AND, THEN, THERE WAS A

17   SECOND SET OF DOCUMENT REQUESTS THAT DID CALL FOR THE

18   DOCUMENTS, AND THEY WERE LOGGED IN RESPONSE TO THAT REQUEST.

19   SO, THERE HASN'T BEEN ANY WAIVER AS A RESULT OF THAT.

20      ON THE KEVIN MARKS DOCUMENTS, AGAIN, THERE'S A

21   COMMON INTEREST.  THERE'S NO DOUBT THAT MR. MARKS REPRESENTED

22   THE SIEGELS.  HE HAS AN ONGOING OBLIGATION TO MAINTAIN THEIR

23   COMMUNICATIONS AS PRIVILEGED.  AND, SO, THERE'S A COMMON

24   INTEREST IN TERMS OF THE REPRESENTATION OF THE SIEGELS.  AND

25   ANY DOCUMENTS, COMMUNICATIONS REGARDING THE CASE GO TO THAT

1    PRIVILEGE AND MAINTAINING THAT PRIVILEGE.  AND THAT'S WHERE

2    THE COMMON INTEREST COMES FROM.

3         THE INTERESTS, AS I MENTIONED BEFORE, THEY DON'T

4    HAVE TO BE IDENTICAL.  THEY DON'T HAVE TO BE COMPLETELY

5    IDENTICAL.  THEY JUST HAVE TO BE COMMON INTEREST.  AND

6    THERE'S CASES WE'VE CITED.  THE EISENBERG CASE AND THE

7    GRIFFITH CASE ALL SAY THAT THE INTERESTS DON'T HAVE TO BE

8    IDENTICAL.

9         AND DC CITED A NINTH CIRCUIT CASE CALLED HUNYDEE,

10   H-U-N-Y-D-E-E, WHICH THEY SAID STOOD FOR THE PROPOSITION THAT

11   THE INTERESTS DO HAVE TO BE IDENTICAL.  BUT THAT PROPOSITION

12   IS NOT IN THAT CASE, YOUR HONOR.

13        FINALLY, ON THEIR SORT OF GENERAL OBJECTIONS TO THE

14   RESPONSES, THIS HAS BEEN A SOURCE OF REAL FRUSTRATION.  I

15   WANT TO READ A COUPLE OF THE DOCUMENT REQUESTS BECAUSE THEY

16   DEFY ANY RATIONAL RESPONSE OTHER THAN AN OBJECTION AND

17   ATTEMPT TO MEET AND CONFER, WHICH WE DID.

18        "ALL DOCUMENTS RELATING TO ARI EMANUEL."  MR.

19   TOBEROFF AND MR. EMANUEL HAVE A VARIETY OF BUSINESS DEALINGS

20   TOGETHER, MANY OF WHICH HAVE NOTHING TO DO WITH SUPERMAN.

21        "ALL DOCUMENTS RELATING TO REVENUE FROM SUPERMAN OR

22   SUPERBOY."  I MEAN, THAT COULD BE ANY DOCUMENT UNDER THE SUN.

23        SO, WE MET AND OFFERED A PROPOSAL.  THE PROPOSAL

24   WAS EMINENTLY REASONABLE AND COVERED EVERYTHING THAT WOULD

25   HAVE BEEN RELEVANT TO THE CASE.  AND DC SAID NO.

1          SO, IT'S NOT -- THE BEST THING TO DO I AGREE IN

2     THESE SITUATIONS IS TO MEET AND CONFER.  WE OFFERED A

3     REASONABLE PROPOSAL.  AND THERE'S REALLY NO REASON FOR A

4     BLANKET WAIVER WHEN WE OFFER A REASONABLE PROPOSAL AND THEY

5     UNREASONABLY REFUSE.

6          SO, THOSE OBJECTIONS WERE -- OUR GENERAL OBJECTIONS

7     WERE PROPER AS TO THESE VERY OVERBROAD RESPONSES AND

8     SHOULDN'T JUST BE BLANKET OVERRULED.

9          THE REST OF -- I MEAN, THE INTERROGATORIES I ALSO

10    WON'T SPEND LONG ON.  WE GAVE -- I THINK THAT THE PAPERS SHOW

11    WE GAVE VERY DETAILED RESPONSES TO THE INTERROGATORIES.  THE

12    TYPES OF INFORMATION THAT DC HAS SAID IT WANTS IS REALLY KIND

13    OF A BLOW BY BLOW THAT'S NOT APPROPRIATE FOR AN

14    INTERROGATORY.  OR THEY BROADENED THE INTERROGATORIES TO SUCH

15    A SCOPE THAT THEY'RE REALLY UNANSWERABLE.

16         AND, SO, THE PURPOSE OF THE INTERROGATORIES IS

17    REALLY TO GET BASIC INFORMATION.  THE INFORMATION IS THERE.

18    IT'S IN THE BRIEFS AND IT'S FULLY BEFORE YOUR HONOR.  WE GAVE

19    VERY DETAILED RESPONSES.  AND IF THERE'S MORE INFORMATION

20    THAT THEY WANT, THAT'S THE TYPE OF INFORMATION THAT'S

21    APPROPRIATE FOR A DEPOSITION BUT NOT KIND OF A RELENTLESS

22    BLOW BY BLOW OF, YOU KNOW, REMEMBER EVERY TEENY LITTLE

23    DETAIL, THIS AND THAT.

24         AND WHEN YOU GO THROUGH THE THINGS THAT THEY SAY IN

25    THE REPLY BRIEF THAT THEY WANT, IT'S REALLY -- IT MULTIPLIES

1    THE INTERROGATORIES TO SOMETHING LIKE INSTEAD OF 25

2    INTERROGATORIES, IT'S REALLY AS IF THEY'D BE ASKING FOR

3    MULTITUDES AND MULTITUDES OF INTERROGATORIES.  AND, SO, THE

4    RESPONSES THAT WERE GIVEN WERE REALLY FULL AND COMPLETE.  AND

5    MORE IS NOT REQUIRED.

6            AND, AGAIN, THIS IS -- THAT'S ONE -- THE

7    INFORMATION THEY'VE TALKED ABOUT WAS THE DISCLOSURES TO THE

8    U.S. ATTORNEY'S OFFICE AND INTERROGATORIES.  BUT THEY PUT

9    FIVE OTHER INTERROGATORIES IN THE MOTION WITH NO MEET AND

10   CONFER.  AND IT'S REALLY -- YOU KNOW, IT'S BEYOND ABUSIVE TO

11   WRITE A LETTER SAYING ALL OF YOUR INTERROGATORIES ARE

12   DEFICIENT.  NOT SAY WHY.  WRITE A MOTION.  FORCE OPPOSING

13   COUNSEL TO REPLY.  AND IT'S NOT THE TYPE OF THING THAT

14   COUNSEL -- REASONABLE COUNSEL SHOULD BE DOING IN A CASE LIKE

15   THIS.

16           THANK YOU.

17           THE COURT:  ALL RIGHT.  THANK YOU.

18           MR. KLINE, ANYTHING FURTHER?

19           MR. KLINE:  VERY BRIEFLY, YOUR HONOR.

20           ON THE INTERROGATORIES -- AND THERE'S A SWORN

21   DECLARATION ON THIS FROM MR. TOKORO -- WE ASKED THEM

22   SPECIFICALLY LET'S GO THROUGH THEM.  THIS WAS WHEN MR.

23   TOBEROFF ANNOUNCES STOP WASTING MY MONEY.  I DON'T WANT TO

24   TALK ABOUT THIS.

25           AND THAT'S KIND OF PART AND PARCEL FOR WHAT'S GOING

1    ON HERE.  WE HEAR THIRDHAND FROM MR. KENDALL WHO'S NOT HERE

2    TODAY, WHO DIDN'T SUBMIT A DECLARATION GOING INTO THIS THAT

3    OUR POSITIONS ARE TOTALLY RIDICULOUS AND TOTAL NONSENSE, THAT

4    THERE WAS THIS EXPRESS AGREEMENT TO ENGAGE IN A JOINT COMMON

5    INTEREST.

6          MS. BRILL IS CORRECT, IT DOESN'T NEED TO BE IN

7    WRITING, BUT IT HAS TO BE EXPRESS.  THE GOVERNMENT AND THEY

8    HAD TO REACH AN AGREEMENT AND COME UP WITH A COMMON

9    LITIGATION STRATEGY, WHICH IS IMPOSSIBLE IN THIS CASE BECAUSE

10   MR. TOBEROFF ISN'T PURSUING A CIVIL CASE AGAINST MR.

11   MICHAELS.  MR. TOBEROFF IS NOT A PROSECUTOR.  THERE'S JUST NO

12   COMMON INTEREST HERE.

13         AND IF MR. KENDALL FELT THE WAY HE FELT, HE SHOULD

14   HAVE SUBMITTED A DETAILED, THOROUGH DECLARATION THAT TALKED

15   ABOUT HOW THE GOVERNMENT RESPONDED TO HIS UNILATERAL

16   ASSERTION THAT THERE WAS A COMMON INTEREST PRIVILEGE HERE.

17         IN TERMS OF THIS VICTIM'S POSITION, I REALLY WOULD

18   URGE YOUR HONOR TO ACCEPT AT LEAST ONE DOCUMENT.  AND THIS IS

19   THE PROPOSED REVISION TO RULE 502.

20         THIS WOULD HAVE COVERED BY ITS EXPRESS TERMS THE

21   SO-CALLED VICTIMS CASE HERE.  BECAUSE IT WASN'T LIMITED TO

22   COOPERATING WITNESSES.  IT WAS LIMITED -- IT EMBRACED ANYBODY

23   WHO PROVIDED PRIVILEGE INFORMATION TO THE GOVERNMENT.  AND IT

24   WAS DECISIVELY REJECTED.

25         THEY'VE GOT A COPY.  IF YOU DON'T WANT A COPY, I

1    DON'T WANT TO FORCE YOU TO TAKE IT.  BUT IT EXPRESSLY

2    EMBRACES THE, QUOTE, UNQUOTE, VICTIMS CASE.

3         WHY DID THEY HAVE TO EMBRACE THE VICTIMS CASE.

4    BECAUSE THE RULE, THE BEDROCK RULE IS THAT IF YOU GIVE IT TO

5    A THIRD PARTY, YOU'VE WAIVED.  THE NOTION THAT YOU HAVE TO

6    MAKE NEW LAW TO FIND A WAIVER HERE LITERALLY TURNS THE

7    ANALYSIS ON ITS HEAD.  IT'S THEIR OBLIGATION AS THE PARTY

8    ASSERTING THE PRIVILEGE TO PROVE THAT THE PRIVILEGE EXISTS.

9    IT IS THEIR BURDEN OF PROOF.  IT IS NOT OUR BURDEN, NUMBER

10   ONE.

11        NUMBER TWO, WHAT DO THE FEDERAL RULES SAY ABOUT

12   PRIVILEGES.  THEY'RE EITHER CREATED BY CONGRESS, CREATED BY

13   THE ADVISORY COMMITTEE AS IT ARTICULATES ITS NEW RULES, OR

14   THEY'RE CREATED THROUGH THE COMMON LAW LEGAL SYSTEM.

15        THE LAST 20 YEARS OF COMMON LAW DEVELOPMENT HAS

16   BEEN TO REJECT AND POUND DOWN EXACTLY THE ARGUMENTS YOU ARE

17   HEARING ABOUT THE NEED TO CREATE THESE UMBRELLAS AROUND

18   COMMUNICATIONS WITH LITIGANTS AND THE GOVERNMENT.  THAT HAS

19   BEEN REJECTED TIME AND AGAIN.

20        AND WHAT DOES QWEST SAY.  QWEST SAYS, YOUR HONOR,

21   IN THE FACE OF THE ADVISORY COMMITTEE TURNING DOWN RULE 502

22   AND THE SELECTIVE WAIVER PROPOSITION, WHICH WOULD HAVE

23   EMBRACED THIS VERY CASE, YOU SHOULDN'T DO SO EITHER.  LEAVE

24   IT TO CONGRESS.

25        IN TERMS OF NO CASE COMING CLOSE TO OUR FACTS, THE

1    M.I.T. CASE COMES CLOSE TO OUR FACTS.  THERE, M.I.T., AGAIN,

2    IS NOT THE TARGET OF AN INVESTIGATION.  IT HAS A DEFENSE

3    CONTRACT WITH THE DEPARTMENT OF DEFENSE.  THE DEPARTMENT OF

4    DEFENSE CONDUCTS AUDITS.  AND, THEN, THE IRS COMES IN AND

5    SAYS, WE WANT ACCESS TO THOSE DOCUMENTS TOO.  AND THE CHIEF

6    JUDGE I BELIEVE OF THE FIRST CIRCUIT SAYS, WELL, M.I.T.,

7    YOU'RE KIND OF CAUGHT IN A TOUGH SITUATION HERE, BUT IF YOU

8    REALLY WANTED TO PROTECT THE PRIVILEGE, YOU SHOULDN'T HAVE

9    ENTERED INTO THIS CONTRACT WITH THE GOVERNMENT WHICH REQUIRED

10   YOU TO TURN OVER THESE RECORDS.  BUT TOUGH -- WE AS COURTS

11   ARE NOT GOING TO EXPAND PRIVILEGE PROTECTIONS TO COVER YOU IN

12   THIS SITUATION.  YOU HAVE WAIVED.  AND THE SAME RESULT

13   ATTAINS HERE.

14            I REALLY DO HOPE YOU READ EXHIBIT B CLOSELY.  FIRST

15   SENTENCE, "YOUR CLIENT TOBEROFF, MARC TOBEROFF, WISHES TO

16   PROVIDE THE GOVERNMENT WITH COPIES OF THE DOCUMENTS, MT

17   DOCUMENTS."  HE WISHES -- NOT WE NEED, NOT WE REQUEST, NOT WE

18   NEED IT FOR OUR CASE IN CHIEF, NOT, YOU KNOW, WE'RE HITTING

19   THIS MIND-BENDING RESULT, WELL, WE CAN'T POSSIBLY PROSECUTE

20   THIS CASE UNLESS WE HAVE THE DOCUMENTS.

21            THE GOVERNMENT WAS NEVER INTERESTED IN THE CONTENTS

22   OF THESE DOCUMENTS.  IT WAS ASKED TO INITIATE THIS

23   INVESTIGATION.  AND IT SAID, YOU'RE TELLING US YOU WANT TO

24   GIVE US THESE DOCUMENTS.  OKAY.  HERE'S THE SUBPOENA.  BY THE

25   WAY, THE SUBPOENA -- IT'S NOT BOILERPLATE.  THE SUBPOENA SAYS

1    IF ANYTHING IS PRIVILEGED IN THERE, WITHHOLD IT AND LOG IT.

2          AND THEY'VE DONE NOTHING SINCE.  AND THEY'RE NOT

3    HERE TODAY.

4          WHAT DO THEY SAY -- SHE SAYS READ -- READ THE

5    LETTER.  YOU ARE SHARING THEM WITH US AS A SELECTIVE AND

6    LIMITED DISCLOSURE.  THIS WHOLE NOTION OF INTENTIONALITY --

7    SELECTIVE AND LIMITED DISCLOSURE, THAT'S LITERALLY ALL THESE

8    CASES.  THAT'S THE DAN WEBB ARTICLE THAT COMES OUT AS THEY'RE

9    DOING THIS.  IT SAYS, DON'T MAKE SELECTIVE DISCLOSURES.

10   DON'T MAKE LIMITED DISCLOSURES.  IT OPERATES TO EFFECT A

11   COMPLETE WAIVER.  DON'T DO THIS.

12          AND, THEN, AS SHE'S READING THE LETTER SHE EVERY

13   TIME STOPPED WHEN IT SAYS, "EXCEPT AS MAY BE REQUIRED BY THE

14   LAW OR COURT ORDERED."

15          WE, THE GOVERNMENT, WE WON'T GIVE IT TO DC, BUT WE

16   ALL RECOGNIZE THAT A JUDGE MIGHT RECOGNIZE WHAT YOU'RE DOING

17   HERE AS A WAIVER.

18          THIS IS ONE OF THE HOTTEST ISSUES IN WHITE COLLAR

19   CRIMINAL LAW IN THE LAST 10, 15 YEARS.  EVERYBODY KNOWS IF

20   YOU TURN DOCUMENTS OVER TO THE GOVERNMENT -- I MEAN, THAT'S

21   WHAT DAN WEBB ARTICLE IS ALL ABOUT.  IT'S A WAIVER.

22          IN TERMS OF A JOINT DEFENSE AGREEMENT WITH MR.

23   MARKS, AGAIN, THE LAW IS -- OR A COMMON INTEREST AGREEMENT.

24   THE LAW IS CLEAR.  YOU NEED TO ENTER INTO THAT TYPE OF

25   AGREEMENT PRIOR TO SHARING THESE COMMUNICATIONS.  AND THEY'VE

1    COME FORWARD WITH ZERO PROOF.  NONE.  NO DECLARATION.

2    NOTHING.  SAYING BEFORE WE SAT DOWN WITH MR. MARKS AND HIS

3    COUNSEL, WE CAME UP WITH A COMMON INTEREST OBJECTIVE.  AND

4    THAT COMMON INTEREST WAS TO DO X, Y OR Z.

5         IT'S JUST THIS AFTER-THE-FACT, JUSTIFICATION FOR

6    FAILING TO PRODUCE OR LOG THESE DOCUMENTS TO US.

7         ONE OF THE KEY CASES ON THIS IS THE BRILL V. WALT

8    DISNEY PICTURES AND TELEVISION CORPORATION CASE, 243 F.3D 546

9    NINTH CIRCUIT CASE.

10        IT SAYS, "THE AGREEMENT MUST BE MADE BEFORE SHARING

11   THE COMMUNICATIONS OVER WHICH THE COMMON INTEREST IS BEING

12   ASSERTED."

13        WHAT DO THE OTHER CASES REQUIRE -- BANK BRUSSELS

14   LAMBERT, 160 FRD 437 AT 447.  THIS IS A SOUTHERN DISTRICT OF

15   NEW YORK CASE.

16        IT SAYS, YOU AND THE OTHER PARTY YOU MUST COME UP

17   WITH YOUR COMMON STRATEGY, YOUR JOINT EFFORT.  YOU MUST COME

18   UP WITH YOUR AGREEMENT SO THAT YOU CAN DEFINE WHAT TYPE OF

19   INFORMATION YOU'RE GOING TO PASS BACK AND FORTH WITH EACH

20   OTHER.

21        THEY AND THE GOVERNMENT NEVER REACHED AN AGREEMENT.

22   THEY SAID TO THE GOVERNMENT, PLEASE, HERE, HAVE SOME

23   PRIVILEGED DOCUMENTS.  GO INVESTIGATE THIS GUY.

24        THERE'S NO INDICIA, EVIDENCE, NOTHING THAT THE

25   GOVERNMENT SAID, YES, WE AGREE WITH YOU AND HERE'S OUR

1    STRATEGY.  HERE'S EXACTLY WHAT WE'RE GOING TO DO.

2              IN FACT, WHAT HAPPENS.  LOOK AT THEIR PRIVILEGE

3    LOG.  RADIO SILENCE AFTER THEY MAKE THAT PRODUCTION.

4    NOTHING.  IT PETERS OUT.  THEY MAKE THE PRODUCTION AND IT'S

5    GONE.

6              IN TERMS OF THE MICHAEL SIEGEL DOCUMENTS, THESE

7    DOCUMENTS WERE REQUIRED TO BE PRODUCED SEVERAL YEARS AGO.

8    THESE ARE THE COMMUNICATIONS BETWEEN -- NOT MICHAEL SIEGEL --

9    BETWEEN DAVID MICHAELS AND THE SIEGELS.  THEY NEVER LOGGED

10   THEM.  THEY NEVER PRODUCED THEM.  THAT IS A WAIVER.  THIS IS

11   YEARS AND YEARS AND YEARS AFTER THE FACT.

12             THE NOTION THAT POST-LITIGATION COMMUNICATIONS NEED

13   NOT BE SHARED THAT WAS AN ARGUMENT THAT MR. TOBEROFF

14   PERSISTED IN MAKING TO JUDGE LARSON ABOUT THE TOBEROFF

15   TIMELINE DOCUMENT.  IT WAS REJECTED.

16             IT'S AN ARGUMENT MS. BRILL MADE TO YOU WHEN THEY

17   CAME IN HERE AND THEY SAID DON'T LET THEM GET INTO THE

18   TOBEROFF TIMELINE DOCUMENT IN THIS CASE.  IT WAS REJECTED.

19             IN TERMS OF OUR DOCUMENT REQUESTS, YOUR HONOR, WE

20   ASKED THEM.  MR. TOKORO AND I SAT ON THE PHONE WITH THEM,

21   LET'S -- OKAY.  WE UNDERSTAND THAT YOU'VE PROPOSED A WAY TO

22   NARROW THIS ONE DOCUMENT REQUEST.  ONE, THE ARI EMANUEL ONE.

23   HEY, WE'LL TAKE A LINE EDIT.  WE SENT IT OVER TO THEM.  THEY

24   SAY NO.  THEY RADICALLY NARROW IT IN A WAY.  AS YOU KNOW,

25   THEY'VE NARROWED IT IN A WAY THAT IT ONLY PERTAINS TO THE

1    HEIRS NOT MR. TOBEROFF HIMSELF, NOT HIS COMPANIES.

2           THEY ARE DEFENDANTS IN THIS CASE.  WE ARE ENTITLED

3    TO KNOW WHAT TYPE OF RELATIONSHIP THEY HAD WITH HIM.

4           OTHER THAN THAT, WE SAID, PLEASE, SIT DOWN WITH US.

5    GO ONE BY ONE THROUGH THIS, AND THEY SAID ABSOLUTELY NOT.

6    WE'RE NOT DOING IT.

7           SO, I'M SORRY THAT WE'VE TAKEN SO MUCH OF YOUR

8    AFTERNOON WITH US, YOUR HONOR.  BUT WE RESPECTFULLY SUBMIT

9    THAT OUR MOTION SHOULD BE GRANTED.  BUT, AGAIN, URGE YOU, IF

10   YOU WISH, TO PLEASE CONSIDER THE MAY 13TH, 2003 LETTER, WHICH

11   YOU WILL SEE ON MONDAY AS A PART OF THAT MOTION.

12          THE COURT:  ALL RIGHT.

13          OKAY.  I'M GOING TO TAKE THIS MATTER UNDER

14   SUBMISSION.

15          THANK YOU VERY MUCH.

16          MR. KLINE:  THANK YOU.

17          MS. BRILL:  THANK YOU, YOUR HONOR.

18          MR. PETROCELLI:  THANK YOU, YOUR HONOR.

19          (PROCEEDINGS CONCLUDED 3:22 P.M.)

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10   DOROTHY BABYKIN                           4/30/11

11   _____          _____

12   FEDERALLY CERTIFIED TRANSCRIBER           DATED

13   DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25