# EXHIBIT D

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

April 20, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

**Re:** *DC Comics v. Pacific Pictures Corp. et al.*, **CV-10-3633 (ODW) (RZx)**

Dear Marc:

We disagree with the assertions in your letter of today.  <u>First</u>, our April 19, 2011, e-mail made clear our intention to meet and confer on DC's motion for reconsideration of Magistrate Zarefsky's April 11, 2011, order during today's call:

> We're writing to confirm a meet-and-confer discussion today (any time between 10am and 11:30am, or 1pm and 4pm), or tomorrow at 11:00am concerning Magistrate Zarefsky's April 11, 2011, ruling and DC's objections thereto. Please use the dial-in number below. In addition to the motion we intend to make before Judge Wright, *DC also intends to ask Magistrate Zarefsky to reconsider certain of his rulings in light of the documents that defendants produced last night. We plan to file the motion for reconsideration this week.*

(Emphasis added.)  You did not object to meeting and conferring on DC's motion for reconsideration at the same time as DC's motion to Judge Wright for review of the April 11 order.  Nor did you object to DC filing its motion for reconsideration "this week."

<u>Second</u>, as stated in our April 19 e-mail and reiterated during our conversation today, the ground for DC's motion for reconsideration is the newly-discovered evidence defendants produced to DC late Monday night, including the May 13, 2003, letter from Michael Siegel to Laura Siegel Larson.  So there is no room for ambiguity, DC has enclosed a copy of the motion for reconsideration it intends to file tomorrow evening.  Please let us know your position by 5:00 p.m. PDT tomorrow, April 21.

<u>Third</u>, Central District Local Rule 7-18 allows a court to reconsider its prior rulings based on newly-discovered evidence such as the May 13, 2003, letter.  L.R. 7-18; *see also Intamin, Ltd.*

O'MELVENY & MYERS LLP
April 20, 2011 - Page 2

*v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162-63 (C.D. Cal. 2008) (granting motion for reconsideration based on newly discovered evidence); *White v. Shen*, 2011 WL 249459, at *1 (N.D. Cal. Jan. 25, 2011) (magistrate reconsidering order); *Grabkowski v. Skechers U.S.A., Inc.*, 2011 WL 671808, at *1 (S.D. Cal. Feb. 17, 2011) (magistrate granting *ex parte* motion for reconsideration of its own order). That DC is forced to file a motion for reconsideration at the same time as its motion for review—which, under Judge Wright's Standing Order and the Federal Rules, is due on April 25—is a problem of defendants' own creation. Defendants did not produce the May 13, 2003, letter to DC until late Monday night. DC has a right to ask Magistrate Zarefsky to reconsider his rulings in light of this key evidence, and the need for relief is urgent given that defendants have threatened to delay the depositions of Mark Peary and Laura Siegel Larson scheduled for next month.

Fourth, your suggestion that I "accused [you] of being unprofessional without justification" is not well taken. You were hostile throughout our conversation, interrupted me repeatedly, refused to answer our basic questions or review your calendar to commit to an alternative meet and confer date, and yet again made personal attacks on members of our firm. As I said during our conversation, we urge you to accept DC's repeated request to have a court reporter transcribe the parties' meet-and-confer discussions so there is no room for misinterpretation.

Finally, as for DC's motion for review of the April 11 order to Judge Wright, DC will seek review of all rulings adverse to DC—*i.e.*, the rulings regarding the consent agreements, Michael Siegel documents (including the July 5, 2003 letter from Laura Siegel Larson to Michael Siegel), and format of defendants' privilege logs. DC intends to file that motion on Monday, April 25.

            Very truly yours,

            Matthew Kline

Enclosure

CC1:848487

DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>              Plaintiff,<br><br>     v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF APRIL 11, 2011 ORDER**<br><br>DECLARATION OF CASSANDRA SETO, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**:      Hon. Otis D. Wright II<br>**Magistrate**: Hon. Ralph Zarefsky<br><br>**Hearing Date**: May 23, 2011<br>**Hearing Time**: 10:00 a.m. |

DC'S MOT. FOR RECONSIDERATION OF
APRIL 11, 2011 ORDER

EXHIBIT D
24

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on May 23, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, California, in Courtroom 540, plaintiff DC Comics will and hereby does move the Court for an order reconsidering, in part, its April 11, 2011, order concerning DC's Motion to Compel Production of Documents and Amended Privilege Logs. Specifically, DC seeks reconsideration of three portions of that ruling that relate to communications with Michael Siegel.

This motion is made pursuant to Local Rule 7-18 and the Court's inherent power to reconsider and modify its interlocutory orders. Pursuant to the Local Rules, and as discussed in the concurrently filed declaration from DC's counsel, DC attempted to meet and confer with defendants concerning this motion on April 20, 2011, but defendants' counsel refused to do so, and declined to provide dates certain to hold such a discussion. Given the three narrow issues presented in this motion and the pressing need to take depositions in this case (which defendants threaten to forestall pending the resolution of open document-discovery issues), DC respectfully seeks the assistance of the Court.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently-filed Declaration of Cassandra Seto and exhibits in support thereof; any additional briefing that may be filed; all exhibits, files, and records on file in this action; matters of which judicial notice may be taken; and such additional submissions and argument as may be presented at or before the hearing on this motion.

Dated: April 21, 2011

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

- 1 -

DC'S MOT. FOR RECONSIDERATION OF APRIL 11, 2011 ORDER

## I. INTRODUCTION

This Court should reconsider three aspects of its April 11, 2011, discovery order based on evidence first disclosed to DC by defendants on Monday, April 18, 2011, in response to the Court's April 11 order. Late on April 18, defendants produced to DC a document Bates stamped LSL 00211-12. That document is a May 13, 2003, letter from Michael Siegel to his half-sister, Laura Siegel Larson. *See* Decl. of Cassandra Seto Ex. A. This May 13 letter provides good cause for reconsideration of the Court's rulings regarding documents related to Mr. Siegel.

## II. FACTUAL BACKGROUND

The May 13 letter—which defendants *never* logged as privileged, *never* produced to DC, and *never* disclosed as a part of the parties' meet-and-confer efforts or in response to DC's February 8, 2011 motion, Docket No. 160 at 37-38— corroborates certain of DC's key allegations in this case. This includes DC's claim that Toberoff used false promises of a "mysterious billionaire" "investor" to induce the Siegels to end their business relationship with DC and to transfer to Toberoff and his companies their putative Superman copyrights. *Compare* Ex A ¶ 2, *with* Docket No. 49 ¶¶ 7-8, 66-85 (DC's Am. Compl.). In defendants' SLAPP motion filed last fall, defendants called DC's "billionaire investor" claim a "mockery" and asserted that DC had no "admissible evidence" to support it—and was irresponsibly relying on only the Toberoff Timeline document as proof. Docket No. 196 at 5, 10.

The Timeline disclosed the existence of the May 13, 2003, Michael Siegel letter, and based on this disclosure, DC asked defendants to produce it. When they refused, DC moved to compel its production. Docket No. 160 at 37-38. Defendants opposed, asserting the Timeline was untrustworthy. *Id*. at 71-72. As the Court noted in its April 11 ruling, however, defendants offered "no response" as to whether the May 13 document existed. Docket No. 209 at 12:8-16. The Court ordered defendants either to verify the document did not exist (or had been produced), or to produce it to DC within seven days. *Id.*

1  The May 13 letter (at least the parts defendants did not improperly redact, *cf.*
2  Seto Decl. Ex. J) states:

Michael Siegel
3605 Bendemeer Rd.
Cleveland Heights, Ohio 44118

May 13, 2003

Dear Laura,

 Thank you for your letter of November 2 of last year. I would have written sooner but I have endured much sadness. My mother passed away last year and I am particularly saddened by her not having been able to enjoy some of the money due us from DC Comics and Time Warner.

 *I really wish to discuss Marc Toberoff.* I learned from Marks and Rammer that Marc was the attorney on record for the Shuster half of the Superman copyright, has Marc ever informed you of this? Now that you have signed with him, he is in control of the whole Superman copyright. *I told you when he first contacted me, he wanted to buy my share of the copyright. Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the billionaire invested elsewhere. Marc has his own production company, he was going to team with Emmanuel and make a movie. This has not happened. You mentioned Marc had a number of innovative, proactive ideas that could bring all members of the Siegel interest both justice and many times more than the amount DC's representatives wanted to throw our way to get rid of us. Marc has chosen not to open any dialog with Time Warner or anyone else. How can he negotiate a contact if he is not talking to anyone?*

 Marc is now the attorney for the entire Superman copyright. In 2013 under the Sunny Bono law Marc will be able to take the Superman copyright from Time Warner. Has he told you this? Do you know who owns the Shuster interest in the Superman copyright? Has Marc bought the Shuster interest himself? For a long time now, Marks and Rammer said there should be a united Siegel front. Marc is not negotiating with anyone, but he has found someone willing to buy me out. How can he find someone to buy me out and not negotiate for the entire Siegel interest? Has Marc offered to find someone to buy your interest? If I would sell my interest it would leave you with less than half of the Superman copyright and not all of the Siegel interest in the Superman copyright. This would weaken your position? *The amount Marc's investor is offering is less than half of what DC showed as my share. There is a very real possibility I will*

> *contact Time Warner and see if they will buy me out. Marc seems to have an agenda of someone buying me out so I will have to look for the best deal I can get. Marc is really pressing for an answer to the offer his investor made.*
>
> *Am I missing something? Is it Joanne's and your intention to do nothing? You have filed letters of Termination on Superman and The Spectre, have any other letters of Termination been filed or will there by more? Regarding an old item, I would very much appreciate the release of the funds I understand are being held in escrow for me by Marc. If it turns out that we have no disagreement regarding your expenses and too much money was released, that certainly can be dealt with quickly. Last week a package of documents arrived from Marc. Don and I have not had time to review them yet.*
>
> *This procedure has taken way too long. I have been on contract negotiation teams and have never seen anything like this. Your attorneys have chosen not to have any dialog with the other side for years at a time. I want a united Siegel interest, but I might be forced to act on my own. I do have something to sell independently, Marc's actions prove this.*
>
> *I hope your health is getting better and that your divorce is now over.*
>
> *Sincerely,*
>
> *Michael*

Seto Decl. Ex. A (emphasis added).

The letter is relevant to contest defendants' factual assertions made in their SLAPP briefing:

> [T]o save its Fifth Claim, DC contends that Mr. Toberoff defrauded the Siegels in 2002 by stating that he had a "billionaire" investor and would help the Siegels produce a competing Superman film….
>
> DC relies on the Timeline, an obviously inadmissible screed penned by a thief who violated fundamental duties of professional ethics and had absolutely no percipient knowledge of the events he purports to describe. *DC's allegation that Toberoff misled the Siegels by representing that he had a "billionaire" investor or that he would help produce a Superman film, the sole allegations of "wrongfulness" required for DC's Fifth Claim, is based entirely on this untrustworthy, inadmissible Timeline, and is contradicted by the sworn testimony of all percipient witnesses. First, even the Timeline does not assert that Toberoff ever told the Siegels that he had a "billionaire" investor. Its anonymous author claims, without percipient knowledge, that Toberoff told this to Kevin Marks on August 8, 2002. FAC, Ex. A 63. Second,*

> *each participant in this conversation has been examined in deposition. Indeed, Marks, who has no interest in this dispute, described this entire conversation at length in his 2006 deposition. Ex. H (KM Depo 166:6-170:24); see also Ex. E (MT Depo 98:25-104:14). There was absolutely no mention of a "billionaire" investor or that Toberoff would help produce a Superman film. Id. DC knows all this, yet conceals it from the Court.*
>
> …
>
> In its Fifth Claim, DC's assertion of the requisite "wrongful act" reduce to its allegations, "on information and belief," that Toberoff misled the Siegels by stating (1) that a "billionaire" investor was interested in acquiring their rights; and (2) that he was interested in making a movie based on Superman. FAC ¶ 78, 185. First, the Timeline does not even state that Toberoff spoke with the Siegels about a billionaire. The Timeline says he discussed the billionaire with their then-attorney, Kevin Marks, on August 8, 2002. FAC Ex. A 63. *But Kevin Marks testified about this conversation four years ago, and his testimony shows what a mockery DC's accusations of fraud really are*….
>
> Lest there be any doubt, Mr. Marks submits a declaration herewith expressly confirming that the conversation did not mention either a "billionaire" or producing a competing Superman movie. Declaration of Kevin Marks ¶¶ 2-5.
>
> …
>
> DC's argues that the Fifth Claim meets the second prong of the Anti-SLAPP Law because: (1) "Toberoff, through IP Worldwide, falsely misrepresented to the Siegels that he had a 'billionaire investor' ready to purchase their Superman rights," and (2) the statute of limitations was tolled as DC's "suffering at the hands of Toberoff continues to this day" and "Toberoff's fraud and deceit" was "fraudulent[ly] conceal[ed] … until December 2008." Opp. at 24.
>
> *As demonstrated above, DC's argument that Toberoff defrauded the Siegels is utterly false, contrary to all the evidence, and DC offers no admissible evidence to support it.*

Docket No. 196 at 1-5, 10.

DC disputes defendants' assertions above, as explained in DC's SLAPP opposition papers, *e.g.*, Docket No. 181 at 23-24, its motion to strike Mr. Marks' carefully worded declaration, *e.g.*, Docket No. 201 at 3-7, and as discussed in its pending motion to compel drafts of the Marks' declaration, *e.g.*, Docket Nos. 205 at 17-20; 215 at 8-10. The May 13 letter bears directly on these issues in dispute. Defendants had no excuse for failing to produce it months—if not years—ago:

> I told you when [Toberoff] first contacted me, he wanted to buy my share of the copyright. *Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the billionaire invested elsewhere. Marc has his own production company, he was going to team with Emmanuel and make a movie. This has not happened.*

Ex. A ¶ 2 (emphasis added).

**III.   THE COURT SHOULD RECONSIDER ITS APRIL 11, 2011, ORDER.**

A Court may reconsider prior rulings based on newly discovered evidence, such as the May 13 letter.[1]  The Court should reconsider three aspects of its April 11 rulings based on the revelation of the May 13 document.  There is an urgency to resolve these issues now, as defendants threaten to defer depositions pending the Court's rulings on document-discovery issues.  *See* Seto Decl. ¶¶ 7-9; Exs. F-K.

A.  <u>The "July 11, 2003," Letter.</u>  In its motion that was the subject of the Court's April 11 order, DC sought the production of the "July 11, 2003," letter from Laura Siegel Larson to Michael Siegel, concerning "the sale of Michael Siegel's Superman interest to Toberoff's 'investors.'"  Docket No. 160 at 30; *see also* Docket No. 171 at 3 ("Despite three pages of argument on the subject, defendants *never once* dispute that entries 715 and 716 of the Siegels' privilege log identify a July 11, 2003, letter between Laura Siegel Larson and Michael Siegel— two non-lawyers.").  The narrative included with entries 715 and 716 of defendants' log identifies a "facsimile" from Ms. Larson to Mr. Toberoff.  But this facsimile appears to be just one page of a six-page document.  Beneath the fax cover page appears to be a five-page letter from Ms. Larson to Mr. Siegel.[2]

---

[1] *E.g.*, C.D. LOCAL RULE 7-18; *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162-63 (C.D. Cal. 2008) (granting motion for reconsideration based on newly discovered evidence); *White v. Shen*, 2011 WL 249459, at *1 (N.D. Cal. Jan. 25, 2011) (magistrate reconsidering order); *Grabkowski v. Skechers U.S.A., Inc.*, 2011 WL 671808, at *1 (S.D. Cal. Feb. 17, 2011) (magistrate granting *ex parte* motion for reconsideration of its own order).

[2] DC does not know for certain whether the underlying letter from Ms. Larson to Mr. Siegel is dated July 11, 2003.  This is the date listed on defendants' log.  *See*

1  The Court denied DC's request that it order production of the "July 11,
2  2003," document to DC, or to order its submission to the Court for *in camera*
3  review to evaluate defendants' privilege claim. The Court stated:

> Michael Siegel documents.
>
> a. July 11, 2003 letter. Although Defendants are somewhat cryptic about this letter, nevertheless the record establishes that they asserted privilege as to the letter during the prior litigation, a designation that was upheld by this Court. [DC ] points to nothing to demonstrate that the prior ruling was incorrect; [DC] simply wants to see the document still. The Court sees no basis for re-visiting the prior decision.

Docket No. 209 at 11:10-15.

Ms. Larson's "July 11, 2003," letter appears to be responsive to Mr. Siegel's May 13, 2003, letter. The latter document (the May 13 letter) is *new* proof that calls into question assertions of privilege related to the "July 11" letter, and is evidence that was not before and never considered by Judge Larson.[3] The existence of the May 13, 2003, letter, its contents, and defendants' failure to produce or log it—despite the arguments made in their SLAPP motion—provide ample reason for this Court to re-visit the "July 11, 2003," letter issue, and to order its disclosure or review it *in camera*. Again, there has never been any showing—or even argument from defendants—that the "July 11, 2003" letter is anything other than a letter between two family members, neither of whom is a lawyer, discussing matters directly relevant to this case.

---

Docket No. 162-6 at 427 (Entries 715 & 716). As DC is not in possession of the underlying letter, and it is not separately logged, it cannot be certain of its precise date.

[3] As DC argued in its motion to compel, and as it respectfully reserves the right to argue on review, Judge Larson never *specifically* ruled on the alleged privilege status of log entries 715, 716, or the July 11, 2003 letter. *See* Docket No. 171 at 3. He ruled only that he would not have the "escrow agent" in *Siegel* assess the validity of Toberoff's privilege claims. *See id.*; *Siegel*, Docket Nos. 374, 386. Moreover, defendants did not clearly "assert[] privilege as to the letter" in *Siegel*. They claimed privilege over the facsimile transmitting the letter, but never asserted clearly that the underlying letter itself was privileged, nor logged it separately.

- 6 -

DC'S MOT. FOR RECONSIDERATION OF APRIL 11, 2011 ORDER

1    B. The Remaining Michael Siegel Documents. As noted in the Court's April 11 order, DC "request[ed] that the Court order Defendants to expand on their privilege log as to the *other* Michael Siegel documents"—*i.e.*, documents *other* than the "July 11, 2003," letter, and the six documents that post-date Mr. Siegel's death, which the Court ordered defendants to produce *in camera*. Docket No. 209 at 11:17-12:6 (emphasis added). DC intends to move to compel production of many "other" Michael Siegel documents, Docket Nos. 160 at 35-36 & n.9; 171 at 3-4; 217 at 3 n.2, but in advance of doing so, requested that defendants fully update their privilege log entries related to Michael Siegel, separate out any attachments, and more clearly identify who authored, received, or was copied on transmittals of documents, Docket Nos. 160 at 36, 40-44; 171 at 3-5; 177 at 24:11-30:11.

The Court declined this request, reasoning: "The form of the privilege log … has been found satisfactory by the Court of Appeals, … and the Court *does not see any basis here for any further elaboration*." Docket No. 209 at 12:1-6 (emphasis added; citations omitted). DC submits that in light of the contents of the May 13, 2003, letter and its importance to refuting defendants' erroneous denials of factual assertions, "further elaboration" of defendants' logs and production—at least related to Michael Siegel—is warranted. Defendants have not offered *any* explanation why the May 13, 2003, letter was never produced or logged, including in December when DC brought the issue to their attention, *see* Seto Decl. Exs. B at 9 ¶ 10; D at 16 ¶ 10, or in February when DC filed its motion. This significant omission in defendants' productions presents a strong "basis" for concern, particularly given the arguments defendants made in their pending SLAPP briefing.

C. The "July 5, 2003," Letter Identified in the Timeline. In its April 11 order, the Court credited defendants' statement in a footnote of their opposition brief that the July 5, 2003, letter from Ms. Larson to Mr. Siegel could not be "identif[ied]" among defendants' files. Docket No. 209 at 12 n.2. (As defendants concede in their privilege logs, they are in possession, custody, and control of all of

1  Michael Siegel's files that had previously been held by Don Bulson—Mr. Siegel's
2  former counsel in Ohio. *E.g.*, Docket No. 207-9 at 233-35 (Entries 145-84); *see*
3  *also* Docket No. 217-6 at 55.)  Given that defendants did *not* deny this "July 5,
4  2003" document existed during the parties' meet-and-confer discussions, *see* Seto
5  Decl. Exs. B at 9 ¶ 10; C at 13-14 ¶ 10; D at 16 ¶ 10; E at 20-21 ¶ 10, given the
6  indirect way they addressed the issue in the footnote of their brief, given their
7  withholding of the May 13 letter, and given the possibility that defendants used an
8  undisclosed subjective method to "match up" or "identify" the "July 5, 2003,"
9  letter, defendants respectfully request that the Court reconsider this aspect of its
10 ruling.

11  DC requests that the Court order defendants to re-search the files in their
12 possession, custody, or control for any un-produced communications from June or
13 July 2003 involving Michael Siegel, Don Bulson, Laura Siegel Larson, and/or
14 Joanne Siegel.  It may be that defendants could not find an exact match for the July
15 5 letter described in the Timeline because the document they possess is an e-mail,
16 was a draft letter, was sent shortly before or after July 5, came from Ms. Larson's
17 mother (Joanne Siegel), came from Michael Siegel, is attached to a transmittal
18 correspondence of a different date, or was different in some other non-material
19 way.  As set forth in DC's proposed order (filed herewith), the Court should order
20 defendants either clearly to verify that no such unproduced documents exist, or if
21 such documents do exist, to produce them without delay.  *See also* Docket No. 209
22 at 12:13-16.

23 **IV.  CONCLUSION**

24  DC's motion for reconsideration should be granted.

| | | |
|---|---|---|
| Dated: | April 21, 2011 | Respectfully Submitted,<br>O'MELVENY & MYERS LLP |
| | | By: _____<br>Daniel M. Petrocelli<br>Attorneys for Plaintiff DC Comics |

CC1:848479