DANIEL M. PETROCELLI (S.B. #097802)
dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF APRIL 11, 2011 ORDER**<br><br>**DECLARATION OF CASSANDRA SETO AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH**<br><br>**Judge**:         Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**:          June 20, 2011<br>**Hearing Time**:          10:00 a.m.<br>**Courtroom**:               540<br>**Discovery Cutoff**:    None Set<br>**Pretrial Conference**: None Set<br>**Trial**:                         None Set |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE that on June 20, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at 255 East Temple Street, Los Angeles, California, in Courtroom 540, plaintiff DC Comics will and hereby does move the Court for an order reconsidering, in part, its April 11, 2011, order (Docket No. 209) concerning DC Comics' Motion To Compel The Production Of Documents And Amended Privilege Logs (Docket No. 160). Specifically, DC seeks reconsideration of three portions of the April 11 ruling that relate to communications involving Michael Siegel.

    This motion is made pursuant to Local Rule 7-18 and the Court's inherent power to reconsider its interlocutory orders on the ground that newly discovered evidence warrants modification of certain of the Court's April 11, 2011, rulings. Pursuant to Local Rule 7-3, and as discussed in the concurrently filed declaration from DC's counsel, DC informed defendants that it would be filing this motion on April 19 and requested a meet and confer session on April 20. Decl. of Cassandra Seto Exs. F-J. During the parties' teleconference, defendants' counsel refused to address this motion or provide dates certain to do so. *Id.* Exs. G-J. DC sent defendants a draft of this motion on April 20, and again asked defendants to let DC know their position. Defendants filed an *ex parte* application later that night arguing that this motion was "improper." Docket No. 220 at 4 n.2. That application was denied. Docket No. 237.

    This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Cassandra Seto and exhibits in support thereof; any additional briefing that may be filed; all exhibits, files, and records on file in this action;

- 1 -

PL.'S MOT. FOR RECONSIDERATION
OF APR. 11, 2011 RULINGS

matters of which judicial notice may be taken; and such additional submissions and argument as may be presented at or before the hearing on this motion.

Dated:   May 23, 2011            Respectfully Submitted,

O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

# **TABLE OF CONTENTS**

I.   RELEVANT FACTUAL BACKGROUND ....................................................... 1

II.  THE COURT SHOULD RECONSIDER ITS APRIL 11, 2011,
     ORDER IN LIGHT OF THE MAY 13 LETTER ............................................ 6

III. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Carmona v. Carmona*,
  603 F.3d 1041 (9th Cir. 2010) .................................................................. 8

*Grabkowski v. Skechers U.S.A., Inc.*,
  2011 WL 671808 (S.D. Cal. Feb. 17, 2011) .............................................. 6

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
  623 F. Supp. 2d 1055 (C.D. Cal. 2009) ..................................................... 6

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
  568 F. Supp. 2d 1152 (C.D. Cal. 2008) ..................................................... 6

*Qualcomm Inc. v. Broadcom Corp.*,
  2008 US Dist LEXIS 911 (S.D. Cal. 2008) ............................................... 9

*Rekhi v. Wildwood Indus., Inc.*,
  61 F.3d 1313 (7th Cir. 1995) ..................................................................... 8

*Suezaki v. Super. Ct.*,
  58 Cal. 2d 166 (1962) ................................................................................ 7

*Thomas v. Bible*,
  983 F.2d 152 (9th Cir. 1993) ..................................................................... 7

*U.S. v. Osborn*,
  561 F.2d 1334 (9th Cir. 1977) ................................................................... 7

*Waterbury v. Scribner*,
  2008 WL 2018432 (E.D. Cal. May 8, 2008) ............................................. 9

*White v. Shen*,
  2011 WL 249459 (N.D. Cal. Jan. 25, 2011) .............................................. 6

## OTHER AUTHORITIES

18B C. WRIGHT ET AL., FED. PRAC. & PROC. (2d ed. 2002) ..................................... 7

3 RICHARD B. KENDALL ET AL., MATTHEW BENDER PRACTICE GUIDE:
  FEDERAL PRETRIAL CIVIL PROCEDURE IN CALIF. (2011) ..................................... 9

WILLIAM W. SCHWARZER ET AL.,
  RUTTER PRACTICE GROUP: FEDERAL CIVIL PROCEDURE BEFORE
  TRIAL (2011) ......................................................................................................... 9

## RULES

Central District Local Rule 7-18 ....................................................................... 5, 6

On April 18, 2011, defendants produced a May 13, 2003, letter from Michael Siegel to his half-sister Laura Siegel Larson that documents misrepresentations by Marc Toberoff and his companies to the Siegel heirs to interfere with DC Comics' rights and contracts. Decl. of Cassandra Seto ("Seto Decl.") Ex. A. This letter—which defendants refused to disclose or produce until compelled to do so by two court orders—provides good cause for reconsidering certain aspects of the Court's April 11, 2011, order and compelling defendants to produce additional documents and information related to the Siegel family.

## I. RELEVANT FACTUAL BACKGROUND

1. <u>Defendants Improperly Withheld The May 13 Letter For Six Years.</u> The Toberoff Timeline describes a May 13, 2003, letter from Mr. Siegel to Ms. Larson that "*lays out well [Toberoff's] scheme*" to use false promises of a "billionaire investor" and movie production deal to induce the Siegels to cut ties with DC and grant Mr. Toberoff and his companies a controlling ownership interest in the heirs' putative Superman rights. Docket No. 49 at 64 (emphasis in original). As early as 2005, DC served document requests in the *Siegel* cases encompassing the May 13 letter. Case No. CV-04-8400, Docket No. 54 at 53-68. In this case, DC served document requests on August 17, 2010, seeking all documents concerning the Siegels' Superman rights, which also encompassed the May 13 letter.[1] On December 7, 2010, this Court entered a stipulated order compelling defendants to produce or list on a privilege log all responsive documents, including, once again, the May 13 letter. Docket No. 133 at 1. In violation of these requests and the Court's order, defendants did not produce or log the May 13 letter.

---

[1] *E.g.*, Docket No. 161-15 at 163-65 (requesting "All DOCUMENTS relating to": "the disposition, division, or ownership of any rights in SUPERMAN," (No. 8); "the potential sale, assignment, license, or other disposition of any rights relating to SUPERMAN …, including but not limited to any solicitation, offer…." (No. 11); and "any solicitation, offer, or option from any DEFENDANT regarding the purported rights of YOU or the SIEGEL HEIRS in SUPERMAN," (No. 23)). The definition of "SIEGEL HEIRS" included "Michael Siegel." *Id.* at 160 ¶ 7.

- 1 -

PL.'S MOT. FOR RECONSIDERATION OF APR. 11, 2011 RULINGS

1    On February 7, 2011, DC filed a motion to compel, after meeting and
2 conferring at length with defendants.  Docket Nos. 160 at 9-10; 161 ¶ 26; Seto
3 Decl. Exs. B-E.  During that process, DC asked defendants to produce the May 13
4 letter, identify if and where it had been listed on their privilege logs, or confirm that
5 it did not exist.  Docket No. 160 at 37; Seto Decl. Exs. B at 9 ¶ 10; D at 16 ¶ 10.
6 Defendants responded, cryptically, "To the extent that relevant documents exist,
7 *they have either been produced or designated as privileged.*"  Seto Decl. Ex. E at
8 21 ¶ 10 (emphasis added).  But when pressed, and in spite of the reference in the
9 Timeline to the May 13 letter, defendants adamantly represented:  "There are *no*
10 *documents related to an offer by a 'billionaire investor'* to purchase the Siegels'
11 Superman rights, because no such offer was ever conveyed, and the sworn
12 testimony of the relevant witnesses is consistent on this point."  *Id.* (emphasis
13 added).  In opposition to DC's motion to compel, defendants chastised DC for
14 relying on the Timeline's identification of the May 13 letter, insisting it is
15 "unreliable" and "grossly inaccurate."  Docket No. 160 at 71.
16    On April 11, this Court issued a second order specifically directing
17 defendants to produce the May 13 letter or identify it as previously produced or
18 non-existent.  Docket No. 209 at 12:13-16.  On April 18, defendants produced the
19 May 13 letter for the first time.  Seto Decl. Ex. A.  As addressed in the motion to
20 compel DC is filing this week, we now know that other documents were withheld,
21 including a November 2, 2002, letter from Ms. Larson to Mr. Siegel (to which the
22 May 13 letter responded) and a November 1, 2002, letter from Ms. Siegel and Ms.
23 Larson to Mr. Siegel's counsel, Don Bulson.  *Id.* Exs. K, N.  These revelations
24 leave no doubt that defendants have not complied with their obligations under the
25 federal rules and this Court's orders to make a complete production of responsive
26 documents.
27    While defendants now assert they could not locate the May 13 letter until
28 after DC's motion to compel had been filed, this makes no sense.  A copy of the

May 13 letter was attached to the Toberoff Timeline, *see* Docket No. 49 at 64 ("*please see enclosed letter*")—meaning that it came from Mr. Toberoff's files, was returned to Mr. Toberoff by the escrow officer along with the other Timeline documents on December 12, 2008, and was presumably included in the documents Mr. Toberoff gave to the U.S. Attorney's office on September 27, 2010.  Case No. CV-04-8400, Docket No. 477 ¶ 31; Docket No. 206 at 4.  Even assuming the letter was just located, no explanation has been provided when or how it was located or why it was not found earlier.

    2.  <u>The May 13 Letter Is Highly Relevant.</u>  The May 13 letter corroborates DC's claims in this case and refutes key factual assertions in defendants' motion to strike under California's anti-SLAPP statute, which remains pending before the District Court.  In urging the Court to dismiss DC's claims without affording discovery, defendants' motion exclaims that DC's "billionaire investor" claim is a "mockery," "contrary to all the evidence," and "based entirely on the untrustworthy, inadmissible [Toberoff] Timeline":

- "DC contends that Mr. Toberoff defrauded the Siegels in 2002 by stating that he had a 'billionaire' investor and would help the Siegels produce a competing Superman film …. *Each of these allegations has been conclusively disproven by documents and sworn depositions provided in 2006, and none can be cured by further discovery*."

- "DC's allegation that Toberoff misled the Siegels by representing that he had a 'billionaire' investor or that he would help produce a Superman film, the sole allegations of 'wrongfulness' required for DC's Fifth Claim, is based entirely on this untrustworthy, inadmissible Timeline, and is contradicted by the sworn testimony of all percipient witnesses …. *DC knows all this, yet conceals it from the Court*."

- "DC's assertion of the requisite 'wrongful act' reduce to its allegations … that Toberoff misled the Siegels by stating (1) that a 'billionaire' investor was interested in acquiring their rights; and (2) that he was interested in making a movie based on Superman.  FAC ¶ 78, 185.  First, the Timeline does not even state that Toberoff spoke with the Siegels about a billionaire. The Timeline says he discussed the billionaire with their then-attorney, Kevin Marks, on August 8, 2002.  FAC Ex. A 63.  But Kevin Marks testified

about this conversation four years ago, *and his testimony shows what a mockery DC's accusations of fraud really are….*"

- "*DC's argument that Toberoff defrauded the Siegels is utterly false, contrary to all the evidence, and DC offers no admissible evidence to support it.*"

Docket No. 196 at 1-5, 10 (emphases added).

The May 13 letter not only shows that defendants' assertions to the Court were false, but also dramatically corroborates the Timeline, as illustrated below:

| **May 13 Letter** (Seto Decl. Ex. A) | **Toberoff Timeline** (Docket No. 49 Ex. A) |
|---|---|
| "Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the billionaire invested elsewhere. Marc has his own production company, he was going to team with Emmanuel and make a movie. This has not happened." *Id.* at 1. | "On August 8th 2002, [Toberoff] tells Marks that he and Emanuel have a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds for exploitation of the Siegels' rights to SUPERMAN…." *Id.* at 63. |
| "Now that you have signed with [Mr. Toberoff], he is in control of the whole Superman copyright." *Id.* | "Michael Siegel tells [Ms. Larson] how Toberoff is now controlling the whole of the SUPERMAN copyright." *Id.* at 64. |
| "Do you know who owns the Shuster interest in the Superman copyright? Has Marc bought the Shuster interest himself?" *Id.* | "[H]ow [Toberoff] may have bought a substantial portion of the S[h]uster interest for himself…" *Id.* |
| "Marc has chosen not to open any dialog with Time Warner or anyone else." *Id.* | "M[arc] T[oberoff] has not even made contact with Time Warner." *Id.* at 65. |
| "Marc seems to have an agenda of someone buying me out so I will have to look for the best deal I can get. Marc is really pressing for an answer to the offer his investor made." *Id.* | "Michael conveys that M[arc] T[oberoff] seems to have an agenda of 'someone' buying him out, and that MT is pressing for an answer." *Id.* |

Defendants have no excuse for failing to produce the May 13 letter months—if not years—ago. Seto Decl. Ex. L at 70:17-24; 71:24-72:7 (transcript of Apr. 25, 2011, hearing at which May 13 letter was discussed). Their withholding of the letter and related correspondence is gravely prejudicial to DC, given its importance

to refuting key assertions in defendants' SLAPP motion, which could be decided any day. To mitigate this prejudice, DC intends to file with the District Court a status report to inform the Court of this newly discovered evidence and request leave to supplement its opposition to defendants' SLAPP motion.

3. <u>DC's Motion For Review.</u> In order to preserve its rights, DC was required by Judge Wright's Standing Order and Local Rule 72-2.1 to file any objection to this Court's April 11, 2011, rulings by April 25, 2011. Docket No. 225. On the first page of its motion for review, DC explained that it also intended to file this motion for reconsideration "[b]ecause the Magistrate was deprived of the May 13, 2003, letter in making his April 11 ruling." *Id.* at 1 n.1. Defendants argued that DC's motion for review was improper in part because of its "simultaneous motion for reconsideration of the Order before Magistrate Zarefsky." Docket No. 231 at 1; *see also* Seto Decl. Exs. G-J, M. On May 11, 2011, Judge Wright issued an order denying without opinion DC's motion for review. Docket Nos. 248, 252.

Defendants contend that Judge Wright's denial precludes this motion for reconsideration. Seto Decl. Ex. O. We disagree. The two motions are governed by different standards of review. A motion for review considers whether a discovery ruling was "clearly erroneous or contrary to law." Docket No. 18 at 3. Motions for reconsideration, on the other hand, expressly contemplate "the emergence of new material facts or a change of law occurring after the time of such decision" that justifies reconsideration of all or part of that decision. L.R. 7-18. Unlike DC's motion for review, this motion is based solely on the impact of the newly disclosed May 13 letter on the Court's April 11 rulings. Although we raised the May 13 letter in our motion for review, Judge Wright never had occasion to consider the propriety of this Court's determination if the new evidence—belatedly produced by defendants through no fault of DC—warrants the additional disclosures requested herein, because this Court has yet to rule on this issue. Nor can we know, for example, if Judge Wright may have based his summary denial on the belief that this

Court is better situated to first consider the effect of the May 13 letter on its own rulings.

## II. THE COURT SHOULD RECONSIDER ITS APRIL 11, 2011, ORDER IN LIGHT OF THE MAY 13 LETTER.

Newly discovered evidence may constitute good cause for reconsideration. *See* L.R. 7-18; *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162-63 (C.D. Cal. 2008) (granting motion based on new evidence); *White v. Shen*, 2011 WL 249459, at *1 (N.D. Cal. Jan. 25, 2011) (magistrate reconsidering order); *Grabkowski v. Skechers U.S.A., Inc.*, 2011 WL 671808, at *1 (S.D. Cal. Feb. 17, 2011) (same). This Court should reconsider three aspects of its April 11 rulings based on the recent revelation of the May 13 letter.

<u>1. The "July 11, 2003," Letter.</u> This Court denied DC's request to review *in camera* or order production of a "July 11, 2003,"[2] letter from Ms. Larson to Mr. Siegel. Docket No. 209 at 11:10-15. We submit that the May 13 letter is reason to revisit that ruling.

<u>First</u>, the May 13 letter is new proof that the July 11 letter exists. Defendants have refused to confirm or deny the existence and substance of the July 11 letter, contending only that Judge Larson upheld their designation of two July 11 privilege-log entries in the *Siegel* cases and that this Court is barred from reopening that issue. *See* Seto Decl. Exs. B at 8 ¶ 7, C at 13 ¶ 7; Docket No. 160 at 66-68. Mr. Siegel's May 13 letter poses almost a dozen direct questions to Ms. Larson. *E.g.*, Seto Decl. Ex. A at 4 ("I told you when [Toberoff] first contacted me, he wanted to buy my share of the copyright …. How can he negotiate a contract if he is not talking to anyone? … How can he find someone to buy me out and not negotiate for the entire Siegel interest? Has Marc offered to find someone to buy

---

[2] DC cannot know for certain whether the letter is dated July 11, 2003; this is the date listed on defendants' privilege log. Docket No. 162-6 at 427.

your interest?"). It appears that the July 11 letter, which concerns "the sale of Michael Siegel's Superman interest to Toberoff's 'investors,'" Docket No. 160 at 30, contains Ms. Larson's response.

Second, the May 13 letter calls into question defendants' assertion of privilege over the July 11 letter and is evidence never considered by the *Siegel* court. Like the May 13 letter, the July 11 letter appears to be a communication between two siblings—both non-lawyers—about the potential disposition of Superman interests. *See* Docket Nos. 160 at 30; 171 at 3. While defendants are again "cryptic" about the basis for their privilege assertion, Docket No. 209 at 11:11, it appears to be based solely on Ms. Larson's faxing the letter to Mr. Toberoff after receiving it. Seto Decl. Ex. B at 8 ¶ 7; Docket Nos. 162-6 at 427, 171 at 3. This is not a ground for withholding the letter; a non-privileged document does not become privileged merely because it is sent to an attorney. *E.g.*, *U.S. v. Osborn*, 561 F.2d 1334, 1338 (9th Cir. 1977); *Suezaki v. Super. Ct.*, 58 Cal. 2d 166, 176 (1962).

The May 13 letter was not before Judge Larson in *Siegel* when he declined to order the escrow agent to assess the validity of the Siegels' July 11 privilege-log entries. Docket No. 225 at 16. To be clear, Judge Larson never *specifically* ruled on the privileged status of the July 11 letter or the two privilege log entries that DC believes correspond to the letter. *Id.*; Case No. CV-04-8400, Docket Nos. 374, 386. Nor did defendants clearly "assert[] privilege as to the letter," as opposed to the fax from Ms. Larson to Mr. Toberoff transmitting the letter. Docket No. 225 at 16. In any event, DC maintains that the *Siegel* court's discovery rulings cannot bind this Court under the discretionary law-of-the-case doctrine where, as here, new evidence has emerged that casts serious doubts about the correctness of the ruling. *See id.* at 1, 5-6, 10, 16.[3]

---

[3] *Accord Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) ("law of the case" doctrine applies only to rulings made "*in the identical case*") (emphasis added); 18B C. WRIGHT ET AL., FED. PRAC. & PROC. § 4478, at 637-39 (2d ed. 2002) ("Law-

- 7 -

PL.'S MOT. FOR RECONSIDERATION OF APR. 11, 2011 RULINGS

1    The existence of the May 13 letter, its contents, and defendants' unjustified
2 failure to disclose, produce, or log it provide ample reason for this Court to
3 reconsider its ruling regarding the July 11 letter and order production of the letter to
4 DC or submission to this Court for *in camera* review.
5    2. The "July 5, 2003," Letter.  The Court's April 11 order credited
6 defendants' statement in a footnote of their briefing that the "July 5, 2003" letter
7 from Ms. Larson to Mr. Siegel identified in the Toberoff Timeline could not be
8 "identif[ied]" among defendants' files.  Docket No. 209 at 12 n.2.  (As they
9 concede in their privilege logs, defendants are in possession, custody, and control of
10 all of Michael Siegel's files that had previously been held by Don Bulson—Mr.
11 Siegel's former counsel in Ohio.  *E.g.*, Docket No. 207-9 at 233-35 (Entries 145-
12 84); *see also* Docket No. 217-6 at 55.  Defendants provided no detail about their
13 method or criteria for "matching up" DC's description of the July 5 letter with the
14 documents in their files, *cf.* Docket No. 209 at 12 n.2, and gave no explanation why
15 they did not deny the letter's existence during the parties' meet-and-confer
16 discussions.  *See* Seto Decl. Exs. B at 9 ¶ 10; C at 13-14 ¶ 10; D at 16 ¶ 10; E at
17 20-21 ¶ 10.

18    The circumstances surrounding defendants' withholding of the May 13 letter,
19 as well as the related November correspondence addressed in DC's accompanying
20 motion to compel, confirm defendants have not made a complete production.  At
21 the minimum, defendants should be ordered to conduct a "diligent search" of all
22 documents in their possession, custody, or control for any communications from
23 June or July 2003 involving Mr. Siegel, Mr. Bulson, Ms. Larson, and/or Ms. Siegel
24 that have not yet been produced or logged—consistent with their discovery

---

of-the-case rules [apply to] matters once decided during the course of *a single continuing lawsuit. They do not apply between separate actions*.") (emphasis added); *Carmona v. Carmona*, 603 F.3d 1041, 1052 (9th Cir. 2010) ("Where the suit involves a new party and new claims, … it is only res judicata, and not the law of the case doctrine, that may apply."); *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317-18 (7th Cir. 1995).

PL.'S MOT. FOR RECONSIDERATION
OF APR. 11, 2011 RULINGS

obligations.  *See* 3 RICHARD B. KENDALL ET AL., MATTHEW BENDER PRACTICE GUIDE:  FEDERAL PRETRIAL CIVIL PROCEDURE IN CALIF. § 23.166 (2011) (citing *Qualcomm Inc. v. Broadcom Corp.*, 2008 US Dist LEXIS 911, at *45 (S.D. Cal. 2008)); *Waterbury v. Scribner*, 2008 WL 2018432, at *6 (E.D. Cal. May 8, 2008). It may be that defendants could not find an exact match for the July 5 letter because the document they possess is an e-mail, a draft letter, is dated shortly before or after July 5, came from Ms. Siegel or Mr. Siegel rather than Ms. Larson, is attached to a transmittal correspondence of a different date, or is different in some other non-material way.  If still unable to locate the July 5 letter after conducting this search, defendants should be ordered to submit a verified discovery response stating that it never existed or explaining how it was lost or destroyed.  *See* WILLIAM W. SCHWARZER ET AL., RUTTER PRACTICE GROUP: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1913 (2011) (party must produce responsive documents or explain "the *reason* the party is unable to comply"); *Waterbury*, 2008 WL 2018432, at *6.

      3. <u>Privilege Logs.</u>  As DC previously briefed to this Court, defendants' generic privilege logs make it impossible to identify attachments to documents or determine who authored, received, or was copied on transmittals of documents.  *See* Docket Nos. 160 at 36, 40-44; 171 at 3-5; 177 at 24:11-30:11; SCHWARZER, *supra*, § 11:1919 ("Listing each e-mail separately is crucial where different e-mails in the strand potentially raise different privilege grounds.").  The Court denied DC's request that defendants expand on their entries relating to Michael Siegel in part because "the Court does not see any basis here for any further elaboration."  Docket No. 209 at 12:1-6.  DC submits that in light of the withholding and contents of the May 13 letter, together with the November 2002 correspondence, and their importance to refuting defendants' factual assertions, further elaboration of defendants' logs—at least related to Mr. Siegel—is warranted.

      Further justifying this relief, defendants have never offered an explanation why the May 13 letter was never produced or logged, including in December when

DC brought the issue to their attention, *see* Seto Decl. Exs. B at 9 ¶ 10; D at 16 ¶ 10, or in February when DC filed its motion. Nor have defendants explained why the November 2, 2002, letter from Ms. Larson to Mr. Siegel identified in the May 13 letter has never been disclosed, produced, or listed on any privilege log. *Id.* Ex. A at 4.

### III. CONCLUSION

DC's motion for reconsideration should be granted.

Dated: May 23, 2011

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

CC1:850101