# EXHIBIT B

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

December 29, 2010

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, **CV-10-3633 (ODW) (RZx)**

Dear Marc:

This letter follows up on the Rule 37 conference we held last week regarding the issues DC raised with defendants' document production and privilege logs in the *Shuster* matter. This letter is not intended to recount our full discussion, which lasted some 90 minutes, but to crystallize our open issues, so that when DC files its motion to compel, we have clear agreement at least on what issues the parties disagree. I have not recounted all of the arguments that either DC or defendants would assert in connection with DC's motion, as both sides can set forth their positions in the required joint statement. (We are also not yet in a position to address the Siegels' proposal to amend their complaint in their case against DC, which we also discussed on Tuesday's call. We received your proposed amendment and stipulation, but the press of the holidays, our in-person meeting on December 23 on other matters, and appellate briefing in the *Shuster* case have intervened. We hope to discuss these amendment-related issues when you return from your trip.)

As for the discovery issues in the *Shuster* case:

1. Defendants represented that they either produced or listed on their privilege logs all documents responsive to DC's document requests. You were going to confirm with Laura Siegel Larson that she has produced from her files, or her attorneys' files, all responsive communications she or her counsel had with her ex-husband or his counsel, assuming any such documents exist. Defendants further represented that they endeavored, where appropriate, to redact assertedly protected information from documents, rather than withhold the whole document completely. You were going to ask your associates to confirm that was the case for communications between Ms. Larson and her husband listed on the Siegels' log. Please confirm these items by January 4.

O'MELVENY & MYERS LLP
December 29, 2010 - Page 2

     2. Defendants represented that all authors and recipients of the documents identified on their privilege logs have been listed on the logs. Defendants' logs do not identify who is a "to," "cc," or "bcc" to the communication, or if the recipient received the communication by other means. DC would like that information provided for these logs and others going forward and would be willing to provide the same detail in return. On specific sets of documents where the parties disputes are even more focused—*e.g.*, on any documents or communications involving Michael Siegel—we think it is especially important to have this level of specificity and will move to require it unless defendants agree to provide it now.

     3. Defendants represented that if a sequence of communications involved multiple communications (for example, a letter from "Steve" to "Bob," which "Bob" then faxed to "Mary," and "Mary" hand delivered to "Ellen"), then defendants would have logged each of these communications (three in this instance) separately on their current privilege log. Please confirm this is the case by January 4.

     4. Pursuant to the parties' December 6 stipulation, "Defendants and their counsel need not log internal communications solely between or among Defendants' counsel or between or among Defendants' counsel and anyone at the [Kendall] law firm." Docket No. 132 at 2 (emphasis added). We asked that defendants provide us a list of whom they considered "Defendants' counsel" for purposes of not logging documents. We offered to provide defendants a similar list. You said you would get back to us on that request. Please do so by January 4.

     5. We believe defendants' privilege logs should include a description of the subject matter of the communications at issue. We understand defendants' position to be that the logs track the format of W. SCHWARZER, W. TASHIMA AND J. WAGSTAFFE, FED. CIV. PROC. BEFORE TRIAL, Form 11:A, meet the standards set forth in *Dole v. Melonas*, 889 F.2d 885 (9th Cir. 1989), and were held to be sufficient by Magistrate Judge Zarefsky in the *Siegel* cases. Defendants also represented that a large percentage of the entries in defendants' log are routine "litigation updates" over which no dispute regarding privilege claims could reasonably arise. Reserving all rights, we suggested that privilege logs in this case should include subject matter information, that defendants could use a short code—*e.g.*, "LU" for litigation updates—and more complete descriptions should be used for other sorts of documents, such as communications related to what DC calls the "consent agreements" in its complaint. Reserving all rights over the discoverability and admissibility of such documents, defendants acknowledged that such consent-agreement-related communications are listed on defendants' logs, but currently cannot be identified without a subject matter description. Reserving all rights, defendants suggested in the alternative that parties not list subject matter headings for each document on the log, but that each side identify categories of documents (*e.g.*, "consent-agreement-related" or "Toberoff-Timeline-related" documents) that would specifically need to be flagged. We find our proposal preferable, but are willing to submit the issue to the Magistrate to decide which alternative makes most sense. In no event, do we think it will be right for there to be no subject matter descriptions for any document on any of the logs. Please let us know defendants' final position on these matters by January 4.

O'MELVENY & MYERS LLP
December 29, 2010 - Page 3

      6. Defendants represented that they are continuing to withhold communications involving Michael Siegel on joint interest and attorney-client privilege grounds. Defendants' preliminary position—which they wished to confirm—was that the district court in Ohio ordered produced all the Michael Siegel documents that must be produced. We disagreed, but agreed to review the Ohio court's rulings once again as well as their limitation—if any—on DC's current discovery in this case. We have done that research and believe DC is entitled to the Michael Siegel documents, or at least an *in camera* review of certain of these materials by the Magistrate. The documents at issue are listed at entries 28, 43-49, 51-59, 61-64, 66-73, 77-80, 87-88, 98, 101-104, 114-15, 118-19, 121-23, 127-31, 133-34, 136-39, 141-43, 145-58, 160-72, 174-84, 188-90, 192, 194, 197-219, 221, 226-29, 231-44, 247-52, 255-61, 267-70, 273-79, 281-82, 284, 290-92, 294-96, 300, 302, 304, 307, 309-11, 313-17, 319-42, 347-52, 354, 356-60, 362-64, 366, 368-69, 372-75, 377, 380, 399, 401-402, 406-408, 410-11, 413-14, 416-18, 420, 429-30, 433-34, 436-37, 443, 446-48, 460-61, 463-65, 472, 482, 489, 494-96, 507-13, 516-19, 521-24, 530-32, 545-46, 548-51, 553-58, 560-64, 566-69, 571-75, 577, 581-82, 585-90, 595, 598, 602, 604, 611-13, 623, 625-27, 629-31, 633, 635-37, 640-42, 644-50, 652-55, 664-66, 668, 672, 674-88, 690-99, 701, 704-11, 715-18, 720-34, 745-46, 755, 761-63, 765-67, 770-71, 776-77, 781-82, 786-88, 805, 815-16, 818-19, 909-10, 921-22, 946, 950, 952, 957, 974-82, 989-94, 1036-37, 1039-40, 1043-46, 1048, 1054, 1057, 1127, 1203-1205, 1345, 1360-62, 1370-71, 1375, 1409-1412, 1661-63, 2135, 2367, 2433-34, 2440, 2801, 2803, 2805-2806, 2833, 2836-40, 2846-47, 2849-50, 2864-66, 2872-74, 2940, 2945, 2962, 3007, 3011, 3077-78, 3082, 3097-99, 3103-3104, 3131, 3133-36, 3146, 3148, 3151-54, 3163-65, and 3215, of the Siegels' privilege log. We understand that defendants disagree that such documents should be produced or that an *in camera* review of some or all of these documents is appropriate, but we urge you to reconsider that proposal, in light of the Ohio court's rulings on defendants' previous joint-privilege claims. Please let us know defendants' final position on these issues by January 4.

      7. We also discussed Siegel Privilege Log Entries 715 & 716, which we believe are a letter Laura Siegel Larson sent to Michael Siegel on July 11, 2003, and a fax by which the letter was then communicated to your law firm. We asked you to confirm whether our understanding of what these two documents were was correct, and we asked if you would agree to a court order that parties may not withhold non-privileged communications in this case on the grounds they were later sent to a lawyer. *See Suezaki v. Superior Court*, 58 Cal. 2d 166, 176 (1962) (mere transmission, even if the parties intend confidentiality, "cannot create the privilege if none, in fact, exists"). You declined to confirm whether our description of the two documents was correct, said you would want to review *Suezaki*, and declined to agree to such a court order. You said that defendants believed that DC had no right to obtain Siegel Privilege Log Entries 715 & 716 because of rulings Magistrate Zarefsky and Judge Larson made and because DC's suspicions regarding these documents can be traced to the Toberoff Timeline and related documents that the Timeline's author delivered to DC. You also contended that DC must have improperly reviewed the underlying documents in question—contrary to *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999). We disagree with defendants' positions completely and believe that the Magistrate should review these two documents in camera. If one or neither of them is privileged, we submit the communications should be produced.

EXHIBIT B
8

O'MELVENY & MYERS LLP
December 29, 2010 - Page 4

8. We urged defendants, at a minimum, to produce redacted versions of what DC has described as the "consent agreements" and any and all related documents. As described by defendants, these documents reflect the splitting of rights and interests—which is not a privileged communication, but a legal act that impacts, *inter alia*, DC's rights in the Superman copyrights. To the extent the consent agreements and related documents reflect the conveyance of legal advice (and DC does not concede they do), defendants should redact that information and not withhold the agreements altogether. We understand defendants' position to be that they are under no obligation to produce these documents in any form because, *inter alia*, defendants apprised DC of their existence before and at a JAMS mediation session. It was our understanding based on our call that it is defendants' position that state and federal law related to mediations did not prevent DC from discovering and using these documents, but that it is defendants' position that a JAMS agreement that DC and defendants signed precluded their use, as did a ruling from Judge Larson. We disagree with your arguments about the JAMS agreement and Judge Larson's rulings.

9. We urged defendants to produce all drafts, iterations, and copies of retainer agreements with you and your law firm, relying on the case law cited in my letter of Monday, December 20, 2010. *See In re Grand Jury Proceedings*, 33 F.3d 1060, 1063-64 (9th Cir. 1994) (retainer agreements not privileged); *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements."). Defendants contended that to the extent a retainer agreement reflects strategy, such strategic statements could be redacted from the document. Reserving all rights, you suggested that defendants might be willing to enter a stipulation with DC, in which both sides would agree to produce redacted versions of their retainer agreements with counsel—as well as all drafts, etc. There is no relevance or other basis for demanding any written retainer agreement between us and our client. We do think your retainer agreements should be produced in full and any redactions inspected by the Magistrate in camera.

10. We raised that there are certain communications listed on the Toberoff Timeline documents that neither appear on defendants' logs nor have been produced. We provided the following document as an example, a May 13, 2003 letter from Michael Siegel to Laura Siegel Larson discussed in the last paragraph of page 3 on the Timeline, and other examples are listed in the footnote below.[1] You said that DC should not rely on the accuracy of the Timeline, but took under advisement our request that you verify whether such documents exist—and, if so, to either produce them, or list them on defendants' privilege logs.

11. Lastly, you agreed to confirm whether Entry 623 in the Siegels' privilege log in this case is the same document identified at Entry 325 of the Siegels' privilege log in the *Siegel* cases. I have copied and pasted both of these entries into the text of this document below:

---

[1] December 16, 2002 letter from Marc Toberoff and Ari Emanuel to Joanne Siegel and Laura Siegel Larson discussed on page 3; June 5, 2003 letter from Laura Siegel Larson to Michael Siegel discussed on page 4; and September-October 2003 "[l]etter with Ari Emanuel in which he would receive $2.5 million flat fee for 'negotiating services'" discussed on page 5.

O'MELVENY & MYERS LLP
December 29, 2010 - Page 5

Entry #623 in the Siegels' privilege log in this case:

| 623 | 8/9/2002 | Atty Kevin Marks | Joanne, Laura Siegel, Atty Don Bulson, Atty Bruce Ramer | Letter | Atty/Client | Defendants' Counsel |

Entry #325 in the Siegels' privilege log in the *Siegel* cases:

| 325 | 8/9/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

Please confirm by January 4.

    We intend to serve you with our portion of a joint stipulation regarding defendants' document production and privilege logs next week, unless these outstanding issues can be resolved before then. If you intend to get back to us with additional information or agree to produce the requested documents, you will need to do so before Tuesday, January 4, 2011, otherwise we will proceed with our motion.

                                Very truly yours,

                                Matthew T. Kline

cc:    Daniel M. Petrocelli, Esq.

CC1:841829

EXHIBIT B
10