# EXHIBIT G

## Don Bulson

**From:** Don Bulson
**Sent:** Monday, August 09, 2004 2:09 PM
**To:** 'Marc Toberoff (mtoberoff@ipwla.com)'
**Subject:** Siegel

Marc,

I have not had a chance to run the present value computations you requested, and I won't be able to until later this week.

Don


Email: dbulson@rennerotto.com
Tel:    216-621-1113
Fax:    216-621-6165

Don W. Bulson
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Avenue - 19th Floor
Cleveland, Ohio  44115

NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately.

Thank you.

11/24/2004

LSL 00211

EXHIBIT G
188

Michael Siegel
3605 Bendemeer Rd.
Cleveland Heights, Ohio 44118

May 13, 2003

Dear Laura,

Thank you for your letter of November 2 of last year. I would have written sooner but I have endured much sadness. My mother passed away last year and I am particularly saddened by her not having been able to enjoy some of the money due us from DC Comics and Time Warner.

I really wish to discuss Marc Toberoff. I learned from Marks and Rammer that Marc was the attorney on record for the Shuster half of the Superman copyright, has Marc ever informed you of this? Now that you have signed with him, he is in control of the whole Superman copyright. I told you when he first contacted me, he wanted to buy my share of the copyright. Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the billionaire invested elsewhere. Marc has his own production company, he was going to team with Emmanuel and make a movie. This has not happened. You mentioned Marc had a number of innovative, proactive ideas that could bring all members of the Siegel interest both justice and many times more than the amount DC's representatives wanted to throw our way to get rid of us. Marc has chosen not to open any dialog with Time Warner or anyone else. How can he negotiate a contact if he is not talking to anyone?

Marc is now the attorney for the entire Superman copyright. In 2013 under the Sunny Bono law Marc will be able to take the Superman copyright from Time Warner. Has he told you this? Do you know who owns the Shuster interest in the Superman copyright? Has Marc bought the Shuster interest himself? For a long time now, Marks and Rammer said there should be a united Siegel front. Marc is not negotiating with anyone, but he has found someone willing to buy me out. How can he find someone to buy me out and not negotiate for the entire Siegel interest? Has Marc offered to find someone to buy your interest? If I would sell my interest it would leave you with less than half of the Superman copyright and not all of the Siegel interest in the Superman copyright. This would weaken your position? The amount Marc's investor is offering is less than half of what DC showed as my share. There is a very real possibility I will contact Time Warner and see if they will buy me out. Marc seems to have an agenda of someone buying me out so I will have to look for the best deal I can get. Marc is really pressing for an answer to the offer his investor made.

Am I missing something? Is it Joanne's and your intention to do nothing? You have filed letters of Termination on Superman and The Spectre, have any other letters of Termination been filed or will there be more? Regarding an old item, I would very much appreciate the release of the funds I understand are being held in escrow for me by Marc. If it turns out that we have no disagreement regarding your expenses and too much money was released, that certainly can be dealt with quickly. Last week a package of documents arrived from Marc. Don and I have not had time to review them yet.

REDACTED

EXHIBIT G
189

CONFIDENTIAL
LSL 00211

This procedure has taken way to long. I have been on contract negotiation teams and have never seen anything like this. Your attorneys have chosen not to have any dialog with the other side for years at a time. I want a united Siegel interest, but I might be forced to act on my own. I do have something to sell independently, Marc's actions prove this.

I hope your health is getting better and that your divorce is now over.

Sincerely,

Michael

REDACTED

EXHIBIT G
190

CONFIDENTIAL
LSL 00212

LAW OFFICES OF
# MARC TOBEROFF

October 3, 2004

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Re: Engagement for Professional Services

Dear Joanne and Laura:

I am pleased that you (the "Client") have decided to retain my law firm (the "Firm") as your counsel. The Firm is committed to providing efficient and responsive services to its clients. This letter will confirm our understanding and agreement regarding the terms and conditions of our engagement.

    1.    <u>Scope of Engagement</u>: The Firm will represent the Client with respect to the prosecution and defense of all rights, causes of actions and claims arising from

The scope of services provided for under this Agreement includes the prosecution and defense of the Claims up through trial and legal services on appeal and through final disposition of the Claims as reasonably required. In connection with its prosecution and defense of the Claims hereunder, the Firm will also render such services as are reasonably required to further secure or strengthen the Client's Claims and related intellectual property interests arising from the Claims.

    2.    <u>Conditions Precedent</u>: This Agreement will not take effect and the Firm will have no obligation to provide legal services, until the Firm receives this Agreement signed by the Client.

    3.    <u>General Responsibilities of Attorney and Client</u>: It will be the Firm's responsibility to perform the legal services reasonably required in connection with the full prosecution and defense of the Claims, to take reasonable steps to keep you informed of progress and developments and to respond promptly to your enquiries and communications.

It will be the Client's responsibility to cooperate fully with the Firm in its work by, among other things, providing us with relevant information and copies of documents within Client's control, keeping the Firm up to date with respect to any
Initials: _____, _____, _____.

1999 Avenue of the Stars, Suite 1540, Los Angeles, CA 90067 Tel: (310) 246-3333; Fax: (310) 246-3101
E-mail: MToberoff@ipwla.com

REDACTED

CONFIDENTIAL
LSL 00213

Page 2
Joanne Siegel and Laura Siegel Larson
October 3, 2004

relevant developments and by making yourselves reasonably available for consultation. The Client's responsibilities also include: (a) approving decisions involving risk (given that Client acknowledges that litigation is inherently risky); (b) approving legal and negotiation strategy; (c) determining acceptable settlement terms and figures, and (d) advising us whether any document we have prepared or received and sent to you for your approval or review is consistent with your expectations, as the case may be.

5. <u>Legal Fees:</u> It is understood that the attorney's fees hereunder are not set by law but are negotiable between attorney and client and have been negotiated by Client with the Firm.

(a) In consideration of the services rendered by the Firm hereunder the Firm shall be entitled to and you hereby agree to pay to the Firm: one-third (33.33%) ("Percentage Fee") of one hundred percent (100%) of any and all gross sums of money or other consideration recovered, confirmed or awarded by reason of or in connection with the above Claims ("Gross Proceeds") prior to the deduction of any costs, fees, liens or disbursements, whether recovered by suit, arbitration, mediation or other form of dispute resolution, verdict, judgment, settlement or otherwise. Sixty (60) days before trial the Firm's one-third Percentage Fee shall increase to forty percent (40%), and thereafter this will be the applicable Percentage Fee from that point forward through appeals, if any, and final disposition of the Claims. Gross Proceeds include, without limitation, all fixed or contingent proceeds, whether payable or received during or after the Firm's engagement, in perpetuity, and any form of consideration, whether upfront or future fees, advances, guarantees, bonuses, deferments, royalties or profit participations of any kind. In computing the Firm's fee, the total sums payable, including without limitation, interest upon a judgment, shall be deemed part of the amount recovered.

Initials: _MT_, _JS_, _LSL_.

Page 3
Joanne Siegel and Laura Siegel Larson
October 3, 2004

It is understood that the Claims involve multiple rights/claims against multiple defendants and accordingly the above Percentage Fee calculation shall be applicable to each Claim to the extent that there is any recovery (whether through trial, arbitration or settlement) on any such Claim, at the time of such recovery, and are not in any way contingent on the prosecution or maintenance of any other Claims or actions.

Any attorney's fees awarded by the Court, pursuant to statute or contract, in connection with the subject matter of this representation, shall be paid to the Firm and shall be applied against the fee obligation under this Agreement but shall not discharge nor limit Client's fee obligation under this Agreement. Any Costs awarded by the Court, in connection with the subject matter of this representation, shall be paid to the Firm and shall be applied against the Client's obligation to reimburse the Firm's Costs under this Agreement but shall not discharge nor limit Client's Cost reimbursement obligation under this Agreement.

Notwithstanding anything to the contrary contained herein, the Firm's Percentage Fee will not apply to the following consideration: (i) the non-refundable $250,000 advanced by Time Warner to the Siegels in November, 2000 against the resolution of the Superman Claim; (ii) Joanne Siegel's annual non-advance "pension" payment by Time Warner of $126,148 per year, plus the cost of living increases to such payment and (iii) medical, dental or life insurance provided to Joanne Siegel, Laura Siegel Larson, Michael Siegel, and Laura's children, Michael Larson and James Larson.. Although the Percentage Fee applies to other non-cash in kind consideration (excluding (iii) above), if any, paid as part of a recovery on a Claim, it does not apply to minor non-cash perks such as tickets to movie premieres, conventions, dinners, free or discounted merchandise.

The Firm will be compensated for its legal services and reimbursed for the costs and disbursements advanced by it (as set forth below) only if Gross Proceeds are recovered, subject to paragraph 9 below.

Initials: _____, _____, _____.

**REDACTED**

EXHIBIT G
193

**CONFIDENTIAL
LSL 00215**

Page 4
Joanne Siegel and Laura Siegel Larson
October 3, 2004

The Firm will be solely responsible for the legal fees of any outside attorneys retained by the Firm, if any, in connection with its prosecution of the Claims hereunder. In the event the Firm wishes to retain such outside attorney(s), the Firm will furnish Client with the identity and credentials of such attorney(s). Such retention of outside attorneys, if any, shall in each instance be subject to Client's prior written approval.

(b)   The 33.33% Percentage Fee set forth in paragraph 5 (a) above will apply upon the filing of a complaint, if any, in the U.S. District Court for the Central District of California (or other Court of competent jurisdiction) with respect to any Claim(s). Prior to such filing, the Firm will research and prepare the complaint regarding the Claims, plus any required accompanying documents, for filing an action on the Claims, in consideration for a reduced Percentage Fee equal to two and one-half percent (2.5 %) of Gross Proceeds.
However, upon the filing of the complaint, if any, the Firm's reduced fee will be deemed part of and absorbed in the Percentage Fee applicable pursuant to Paragraph 5(a) above.

6.   Costs and Disbursements: The Firm will advance all costs and disbursements ("Costs") expended or incurred in connection with its prosecution or defense of the Claims. Such Costs shall include, without limitation, filing fees, investigation expenses, expert witness fees, consultant fees, accountant fees, investigator fees, subpoena and service of process fees, jury fees, transcript costs, third-party photocopying, photocopying at the Firm (at the agreed rate of five cents per page), postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, parking, travel costs, and messenger fees. No attorney's fees shall be construed as Costs under this Agreement. Client authorizes the Firm to incur all Costs reasonably necessary in the Firm's judgment, subject to the Client's prior approval of any individual cost item exceeding $3,000. All Costs advanced by the Firm shall be reimbursed to the Firm from Gross Proceeds in addition to and after payment of the Percentage Fee pursuant to paragraph 5 above and shall not be included in or deducted from such fee. The Firm will furnish Client with a reasonably detailed statement of the Costs on a quarterly basis.

Initials: _____

Page 5
Joanne Siegel and Laura Siegel Larson
October 3, 2004

     7.    <u>Lien for Attorney's Fees and Costs</u>: The Firm will have a lien for attorney's fees and Costs advanced applicable to all Claims and/or Gross Proceeds that are the subject of the Firm's representation under this Agreement.

     8.    <u>Payment and Notices</u>: Client hereby authorizes and appoints the Firm as their attorney-in-fact to collect and receive all Gross Proceeds due relating to the Claims, to endorse and deposit into a client trust account all checks and other moneys payable, to deduct the Firm's compensation as set forth above, and to pay the remainder to Client within seven (7) days of the Firm's receipt of such proceeds. A statement of all deductions including the applicable Percentage Fee and itemized Costs, if any, shall be sent by the Firm to Client with each such payment. All notices and payments hereunder shall be made to the parties at their respective address set forth on page 1 hereof unless and until either party gives the other party prior written notice of an address change.

     11.    <u>Miscellaneous</u>: This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. This Agreement shall be deemed to have been mutually drafted by the

Initials: _MT_. _JS_. _LSL_.

**REDACTED**     EXHIBIT G     **CONFIDENTIAL**
**LSL 00217**
195

Page 6
Joanne Siegel and Laura Siegel Larson
October 3, 2004

parties and no drafting presumption shall apply for or against either party. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall be binding upon and inure to the benefit of the parties' heirs, executors, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

This Agreement shall be governed by the Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased to represent you in connection with this matter. If the foregoing terms meet with your approval, kindly so indicate by signing four originals of this engagement letter and returning them to us for counter-signature, and we will return two fully executed originals to you.

Very truly yours,

*/s/ Marc Toberoff*

Marc Toberoff


Agreed, understood and accepted:

___*/s/ Joanne Siegel*___   Date: *October 3, 2004*
Joanne Siegel

___*/s/ Laura Siegel Larson*___   Date: *October 3, 2004*
Laura Siegel Larson


Initials: *MT, JS, LSL*

**REDACTED**           EXHIBIT G           **CONFIDENTIAL**
                          196                      **LSL 00218**

Law Offices Of
# Marc Toberoff

October 17, 2004

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Re: First Amendment To Engagement Agreement

Dear Joanne and Laura:

This is to confirm that our engagement agreement dated October 3, 2004 (the "Agreement") is hereby amended only (the "Amendment") as follows:

Initials: _____, _____, _____

1999 Avenue of the Stars, Suite 1540, Los Angeles, CA 90067 Tel: (310) 246-3333; Fax: (310) 246-3101
E-mail: MToberoff@ipwla.com

REDACTED     EXHIBIT G     CONFIDENTIAL LSL 00219
197

Page 2
Joanne Siegel and Laura Siegel Larson
October 17, 2004

4.  **Miscellaneous:** This Amendment shall be binding upon and inure to the benefit of the parties' heirs, executors, successors and assigns. Executed facsimile copies of this Amendment shall be valid acceptable substitutes for executed originals. This Amendment shall be governed by and construed in accordance with the Laws of the State of California.

If the foregoing Amendment meets with your approval, kindly so indicate by signing four originals of this engagement letter and returning them to us for counter-signature, and we will return two fully executed originals to you.

Very truly yours,

*/s/*

Marc Toberoff

Agreed, understood and accepted:

_____      Date: 10/17/04
Joanne Siegel

_____      Date: 10/17/04
Laura Siegel Larson

REDACTED

EXHIBIT G
198

CONFIDENTIAL
LSL 00220