# EXHIBIT A

**K** Kendall Brill Klieger

writer's direct:
310.272.7900 telephone
310.272.7936 facsimile
rkendall@kbkfirm.com

August 3, 2010

**VIA EMAIL AND U.S. MAIL**

Daniel Petrocelli, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
*dpetrocelli@omm.com*

Re:    DC Comics v. Pacific Pictures Corp., et al.,
       Central District of California, Case No. 10-CV-03633 ODW

Dear Dan:

I write in response to your e-mail dated July 14, 2010 and your letter of August 2, 2010, in which you argue that Rule 11 of the Federal Rules of Civil Procedure does not prohibit your allegation that "On May 9, 2002, *as a result of Toberoff's improper interference and inducements*, Joanne Siegel sent a letter to DC Comics' affiliate acknowledging the Siegel Heirs had accepted DC Comics' October 16, 2001 offer, but purporting to object to certain unspecified portions of the long-form document." (Compl. ¶ 66 (emphasis added).) You offer four arguments in response to our concern that the above-quoted language does not meet the pleading standards set forth in Rule 11: (i) that our focus on the quoted language isolates a single sentence out of context from the whole of the complaint, (ii) that it proceeds from a false construct regarding the import of the May, 2002 letter, which, you argue, is just a "minor aspect" of your complaint, (iii) that our position that you lack a factual basis for the quoted language is based on an incomplete account of the record from another case, and (iv) that it rests on an erroneous view that the "self-serving" testimony of our client and witnesses "under his control" taken in another case is conclusive and binding in this case. We address each of your arguments in turn.

First, you insist that our position isolates a single sentence out of context from the whole of the complaint. However, it is of no consequence that the complaint may contain other fact-based allegations. A baseless allegation, even when situated amidst other supported allegations, violates Rule 11. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 n.4 (9th Cir. 1990) (en banc) (holding that the language of the rule "does *not* imply that a pleading is well-grounded simply because one part of it is well-grounded"); Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 524 ("Several comments urged that the revision of Rule 11 incorporate the approach adopted in some decisions, permitting sanctions only if, taken 'as a whole,' the paper violated the standards of the rule. The Advisory Committee continues to believe that the 'stop-and-think' obligations apply to all of the allegations and assertions, not just to a majority of them."). Moreover, the context of your allegation provides no help to your position. For example, in the immediately preceding paragraph of the complaint,

**Kendall Brill & Klieger LLP**

10100 Santa Monica Blvd.    Suite 1725   Los Angeles, CA 90067   telephone 310.556.2700   facsimile 310.556.2705   www.kbkfirm.com

**04**

August 3, 2010
Page 2

you allege that after his initial conversation with Kevin Marks, "Toberoff *continued to contact the Siegel Heirs and their representatives in an effort to induce them to repudiate the Siegel-DC Comics Agreement and enter into a production agreement with Toberoff or one of his companies*." (Compl. ¶ 65 (emphasis added).) This allegation sets the context for the allegation in paragraph 66, and makes it perfectly clear that the purpose of the allegation in paragraph 66 is to establish that the May 9, 2002 letter resulted from Mr. Toberoff's alleged inducements and interference. These allegations are contradicted by the sworn testimony of every witness with personal knowledge of Mr. Toberoff's communications with the Siegel Heirs or their representatives during the time period in issue. Kevin Marks and Mr. Toberoff both testified under oath that Mr. Toberoff first contacted Mr. Marks by leaving him a phone message on November 29, 2001, which Mr. Marks did not return. (Marks Dep. 151:4-11, Oct. 7, 2006; Toberoff Dep. 86:20-21, Nov. 17, 2006.) Both also testified that Mr. Toberoff left a message for Mr. Marks on February 6, 2002 referencing the unreturned late November call, after which Mr. Marks promptly returned the call but declined to speak with Mr. Toberoff about the status of the Siegel family interest in "Superman." (Marks Dep. 151:18-153:20, Oct. 7, 2006; Toberoff Dep. 89:13-92:13, Nov. 17, 2006.) Laura Siegel Larson and Joanne Siegel have both corroborated Mr. Marks and Mr. Toberoff's testimony (Marks Dep. 171:23-172:17, Oct. 7, 2006; Toberoff Dep. 105:24-107:11, Nov. 17, 2006) that Mr. Toberoff did not directly contact the Siegel Heirs until well after May 9, 2002 (Laura Siegel Larson Dep. 17:6-8, Aug. 1, 2006; Joanne Siegel Dep. 33:24-34:1, 41:1-3, Aug. 2, 2006). It remains unclear how you could have a reasonable belief that Mr. Toberoff's "improper interference and inducements" caused Joanne Siegel to send her May 9, 2002 letter when every single witness with knowledge has testified that Mr. Toberoff had no contact whatsoever with Joanne or Laura Siegel before May 9, 2002.

Your second contention, that your allegation that Joanne Siegel sent the May 9 letter "as a result of Toberoff's improper interference and inducements" is an unimportant or "minor" part of your pleading, is frivolous. As you well know, Joanne Siegel's May 9 letter concludes with the statement: "After four years we have no deal and this contract [referring to the contract your client sent her in February, 2002] makes an agreement impossible." The reason your complaint falsely alleges that the May 9 letter was sent "as a result of Toberoff's improper interference and inducements" is that the May 9 letter was a watershed event in the relationship between your client and Ms. Siegel. Your own complaint alleges that Joanne Siegel's May 9, 2002 letter damaged the commercial relationship between the Siegel Heirs and DC Comics. (Compl. ¶ 66.)

Third, our position is not based, as you contend, "on a selective, incomplete, and misleading account of the record from another case [referring to the long-running litigation between DC Comics and the Siegel Heirs]." It is just based on the simple truth that all of the witnesses with knowledge of the facts relating to the contacts between Marc Toberoff and the Siegels or their representatives prior to May 9 have spoken, and have spoken under oath, that all known non-privileged documents on the point have been exchanged during the extensive discovery and were produced during the first four years of the *Siegel* litigation, and that there is no factual basis for your statement.

August 3, 2010
Page 3

Finally, you argue that our position lacks merit because it "rests on the erroneous view that the self-serving testimony of [our] client and witnesses under his control taken in another case is conclusive and binding in this case." Your suggestion that all of the witnesses with knowledge of the pre-May 9 contacts between Marc Toberoff and the Siegels have perjured themselves does not advance your cause. Your argument is essentially: "I don't believe any of the witnesses on the point, and even though I am aware of no evidence at this time that Marc Toberoff ever had any improper or interfering contact with Joanne Siegel, Laura Siegel, or any of their representatives before the May 9 letter was sent, I am entitled to allege that fact anyway and try to prove in the litigation that everyone is lying under oath." If Rule 11 could be so easily overcome, it would have no force whatsoever.

Moreover, your own client has previously contended the opposite of what you assert in paragraph 66 of your complaint. *See* Notice of Motion and Joint Stipulation re: Defendants' Motion to Compel Production of Whistle-Blower Documents dated March 25 and 26, 2007, at 5 ("Indeed, on May 9, 2002, plaintiff Joanne Siegel – without the assistance or participation of counsel – wrote letters to Time Warner's chief executives stating that Defendants' draft long-form agreement had 'stabbed us in the back' and 'just like the Gestapo' sought to 'strip us naked of our legal rights.'"). Your position is thus contradicted not only by the relevant witnesses, but also by your own client's prior judicial admissions.

Therefore, we again request that you advise us of any factual basis for the allegation, if you have one. Otherwise, if there is no such basis, we insist that you withdraw the allegation forthwith. *See Byrnes v. Lockheed-Martin, Inc.*, No. C-04-03941 RMW, 2005 WL 3555701, at *9 (N.D. Cal. Dec. 28, 2005) ("Rule 11 not only obligates an attorney to conduct a reasonable pre-filing investigation, but also to review, examine, and re-evaluate his position as the facts of the case come to light.").

Your August 2 letter also purports to discuss certain procedural features of Rule 11 practice. I wish to assure you that I am familiar with the procedural rules governing the application of Rule 11. Had my firm intended to provide notice of a Rule 11 sanctions motion, we would have done so. I was very clear with you during our telephone conversation and in my letter of July 14 that I wished to hear your substantive response to our concerns *before* determining whether to seek sanctions or instead to simply preserve the various remedies available to Defendants when a plaintiff chooses to stand on an allegation that lacks any factual basis. I continue to await a substantive explanation from you that would supply *any* factual basis for the allegation quoted at the outset of this letter. In the meantime, I am constrained to point out that unless you and your client have an existing factual basis to support the quoted allegation, it is your responsibility to withdraw it immediately, rather than to require Defendants to address your baseless allegation through motion practice. As to your argument that Defendants were required to give notice of a motion for Rule 11 sanctions before June 30, 2010, you cite no authority for that proposition and I am aware of none.

August 3, 2010
Page 4

Finally, I was surprised to read your insinuation that our firm would file a motion for purposes of media distribution and attention. Our firm does not engage in such practices. But since you have brought up the issue of press distribution, please respond to the following concern that has arisen about the disclosure to the media of the allegations in your complaint before the complaint was filed. One or more Internet websites distributed an unfiled version of your complaint within just a few minutes of its filing, accompanied by articles discussing the allegations of the complaint that were obviously not written in the very few minutes between your filing of the complaint and its publication by the media. This raises the concern that one or more media outlets were given advance notice of the allegations of the complaint. Did you or any representative of your client discuss or disclose any of the allegations of the complaint with any media representative before the complaint was filed?

This letter is not intended as a complete statement of Defendants' position or of their rights and remedies, all of which are reserved.

Very truly yours,

Richard B. Kendall

# EXHIBIT B

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                        - - -

7    JOANNE SIEGEL, ET AL.,          )
                                     )
8                    Plaintiffs,  )
                                     )
9           vs.                      )  No. CV 04-08776-SGL
                                     )
10   TIME WARNER, INC., ET AL.,      )
                                     )
11                   Defendants.  )  Cross Motions
     _____)  to Compel
12

13

14           Reporter's Transcript of Proceedings

15               Riverside, California

16            Wednesday, January 14, 2009

17                   1:32 P.M.

18

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           Federal Official Court Reporter
24           3470 12th Street, Rm. 134
           Riverside, California  92501
25               (951) 274-0844
             WWW.THERESALANZA.COM

```
 1
      APPEARANCES:
 2

 3    On Behalf of Plaintiffs:

 4
                          LAW OFFICES OF MARC TOBEROFF
 5                        BY:  Marc Toberoff
                          BY:  Nicholas C. Williamson
 6                        2049 Century Park East,
                          Suite 2720
 7                        Los Angeles, California  90067
                          310-246-3100
 8

 9
      on behalf of Defendants:
10

11                        WEISSMANN WOLFF BERGMAN COLEMAN
                           GRODIN & EVALL LLP
12                        BY:  Michael Bergman
                          9665 Wilshire Boulevard,
13                        Ninth Floor
                          Beverly Hills, California  90212
14                        310-858-7888

15

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2                                                    Page

3    MOTIONS........................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1      Riverside, California; Wednesday, January 14, 2009; 1:32 P.M.
 2                            -oOo-
 3           THE CLERK:  Calling calendar item two in the case of
 4    Joanne Siegel, etc., versus Warner Brothers Entertainment Inc.,
 5    etc., case number CV 04-08400-SGL(RZx).                            00:11
 6           May we have counsel please come forward and state
 7    your appearances for the record.
 8           MR. BERGMAN:  Good afternoon, your Honor.
 9           Michael Bergman for the defendants.
10           MR. TOBEROFF:  Marc Toberoff for the plaintiff, along    00:12
11    with my associate Nicholas Williamson.
12           THE COURT:  Good afternoon to you both.
13           I'm sorry about the terrible traffic conditions that
14    you encountered coming out here.
15           MR. BERGMAN:  Thank you, your Honor.                      00:12
16           I apologize to the Court and to opposing counsel.
17           THE COURT:  No apology necessary.  Unfortunately,
18    that's part of living and driving in Southern California.
19           I have before me two discovery motions.  I've
20    reviewed the papers.  Let's begin with the defendant's motion   00:12
21    to produce this letter.
22           I guess my first question for Warner Brothers on this
23    is this:  The characterization of the letter by Mr. Toberoff in
24    his papers characterizes it as a communication essentially
25    between counsel and a client.  I don't find anywhere where you  00:12
```

1    dispute that characterization.

2            Am I mistaken?

3        **MR. BERGMAN:**  No, your Honor, you're not.  But I'm in

4    a position where, due to the confidentiality agreement, I

5    cannot disclose, absent Mr. Toberoff relieving me of that                00:13

6    confidentiality, how Mr. Toberoff characterized the document in

7    the letter which disclosed it.

8            I can tell the Court that it was not described in

9    Mr. Toberoff's letter as a communication with clients.

10        **THE COURT:**  It was not described in Mr. Toberoff's               00:13

11    letter --

12        **MR. BERGMAN:**  The letter to me in which he disclosed

13    what the document was.

14        **THE COURT:**  Fair enough.  But the characterization I

15    have from Mr. Toberoff at this point is that, and I'll just              00:13

16    quote it:  "The privileged document consists of a communication

17    between plaintiffs, the executor of the estate of Superman

18    co-creator Joe Shuster, and plaintiff's counsel who represents

19    both parties, regarding settlement of this action."

20        **MR. BERGMAN:**  Based on --                                       00:14

21        **THE COURT:**  I don't have the letter.

22         You don't have the letter, I presume.

23        **MR. BERGMAN:**  That's correct.

24        Well, I have the letter, Your Honor.

25        **THE COURT:**  That's right.  You do have the letter.             00:14

 1    Of course.

 2            **MR. BERGMAN:**  Based on what Mr. Toberoff stated in

 3    the letter, his characterization of a communication with

 4    clients is not correct.  It is characterized as something else;

 5    something else which I will represent to the Court falls          00:14

 6    clearly, if it's producible, within the two categories of the

 7    requests that we have outlined.

 8            Beyond that, there's really nothing.

 9            **THE COURT:**  That, to me, is the turning point, the

10    tipping point of this argument right here; so Mr. Toberoff, I     00:14

11    need your response.

12            I would ordinarily simply accept the representation

13    of any counsel before me that a letter is privileged

14    communication.  This is a unique situation where, because it

15    was in a settlement conference, defense counsel sees it.  He is   00:15

16    disputing your characterization.

17            I would rather not look at this letter myself,

18    particularly since we have a bench trial starting in a few

19    weeks, but there may not be any other way for me to address

20    this than to do so.                                              00:15

21            I'll give you an opportunity to respond.

22            **MR. TOBEROFF:**  Your Honor, this is absolutely a

23    privileged communication, attorney-client privilege, joint

24    interest privilege, as a communication between parties with an

25    interest in litigation and attorney-work product.  The document  00:15

1    was signed by me summarizing discussions between my clients.

2    There's no way this document would not be protected by the

3    attorney-client privilege.

4         The document was written a week before the settlement

5    mediation solely for the purposes of advancing settlement.  It          00:15

6    reflects discussions between myself and my clients regarding

7    settlement and settlement strategy.

8         **THE COURT:**  Without getting into the substance of the

9    document, is it fair to say -- and perhaps this explains your

10   different positions -- is it fair to say, Mr. Toberoff, that it          00:16

11   is not self evident from the letter itself that it is

12   representing a communication between a lawyer and a client and

13   that is perhaps why defense counsel looks at it and does not

14   see it that way, but you, being in your position, know that it

15   is?                                                                      00:16

16        Is that what it is?

17        **MR. TOBEROFF:**  Let me correct a misimpression I

18   believe the Court has.

19        Defendants have never seen the document; all they

20   received from me was -- they never saw --                               00:16

21        **THE COURT:**  They never saw the letter.

22        **MR. TOBEROFF:**  They never saw the document on which

23   to base a claim that it's not privileged.  I simply described

24   it in a different letter after we entered into a

25   confidentiality agreement which took the JAMMS confidentiality          00:16

1    settlement agreement, actually beefed up those provisions;

2    included in the confidentiality agreement was the provision

3    that any communications in the course of mediation marked

4    'settlement, for confidential purposes only' --

5            **THE COURT:**  I read that.                                      00:17

6            **MR. TOBEROFF:**  So I wrote a letter, 'settlement, for

7    confidential purposes only,' and in there I talked about this

8    communication because it bore on -- it was a discussion between

9    my clients regarding settlement, and I gave some of the results

10   of that.  Based on that, they are demanding the underlying       00:17

11   communication.

12           **THE COURT:**  I have to stop you and go back to defense

13   counsel.

14           Did you see the letter or did you just see a letter

15   describing the letter?                                           00:17

16           **MR. BERGMAN:**  Your Honor, I did not see the letter

17   which we are calling the undisclosed document; it has not been

18   produced to us.

19           **THE COURT:**  I'm sorry, then.  I thought you just told

20   me that you did see the letter.                                  00:17

21           **MR. BERGMAN:**  No, your Honor.  What I meant -- and

22   perhaps I misspoke.

23           Mr. Toberoff, the day after we signed the

24   confidentiality agreement, sent me a letter; that letter in

25   redacted form is attached to my declaration.                     00:18

1          **THE COURT:**  Okay.

2          **MR. BERGMAN:**  That letter, which is what's called the

3   transmittal letter or the disclosure letter, the disclosure

4   letter from Mr. Toberoff to me purports to describe the

5   document which we are seeking production of.  As described in          00:18

6   Mr. Toberoff's letter to me, it does not appear to be a

7   communication between a lawyer and a client.  It is

8   characterized by Mr. Toberoff as being something much different

9   than that; something which would, unquestionably, if it were

10  not privileged, be producible in response to request number 63.        00:18

11         **THE COURT:**  Fair enough.  That would provide you

12  basis for having brought your motion.  I understand that.  But

13  now we're at a different juncture, and I'm having counsel

14  characterize the undisclosed document itself.

15         So my question is:  Is there any reason at this point          00:19

16  to question counsel's clarified clarification of the document

17  in question?

18         **MR. BERGMAN:**  Well, with all respect, your Honor, the

19  only reason would be is that it is contrary to the way

20  Mr. Toberoff described the document when he disclosed its          00:19

21  existence to us.

22         **THE COURT:**  Can you explain that, Mr. Toberoff?

23         **MR. TOBEROFF:**  That's an incorrect statement.

24         **THE COURT:**  How did you describe it in the letter?

25         Could I see that?  Is that the unredacted version?          00:19

```
 1              MR. BERGMAN:  That's correct.

 2              THE COURT:  Let me see the unredacted version.

 3              This is the letter that was disclosed describing the

 4   letter?

 5              MR. TOBEROFF:  But that discloses the contents of the     00:19

 6   letter.

 7              THE COURT:  It does?

 8              MR. TOBEROFF:  Yes; that's totally covered by our

 9   confidentiality agreement --

10              THE COURT:  Okay.  Then I don't want to see that.        00:19

11              MR. TOBEROFF: -- which they are not supposed to use

12   anything in settlement in this litigation, which they are now

13   attempting to do by putting this in front of you.

14              I'll say this:  The letter that I sent does not

15   describe every aspect of this communication, nor does it attach     00:20

16   the communication.  It describes some of the results of the

17   communication as it bears on settlement.

18              The communication is signed by me.  It is signed by

19   me, and it refers to discussions that I had with my clients

20   regarding settlement.  How that cannot be privileged, I do not      00:20

21   know.  Even if it had not been signed by me but merely

22   reflected a communication between two parties with an interest

23   in litigation regarding settlement or regarding settlement

24   strategy, that would be protected by the joint interest

25   privilege.                                                          00:20
```

1          **THE COURT:**  Thank you, Counsel.

2          Anything further?

3          **MR. BERGMAN:**  I'm at a real disadvantage here.

4          **THE COURT:**  I know you are.  The only one who is at

5    more of a disadvantage is the Court.                              00:20

6          **MR. BERGMAN:**  I understand.

7          Would your Honor permit me to use the one-word

8    adjective with which Mr. Toberoff described the letter?

9          **MR. TOBEROFF:**  No I will not.

10          You're breaching the confidentiality--                     00:21

11          **THE COURT:**  Counsel, stop.  Stop.  We have a lot of

12    litigation together.  I don't want to see that happen again.

13          You address the Court one at a time.

14          Understood?

15          **MR. TOBEROFF:**  Sure.                                    00:21

16          **THE COURT:**  No.

17          Is there anything further on this point?

18          **MR. BERGMAN:**  Only, your Honor, the obvious point

19    that if there is an agreement in existence which is not

20    privileged which has never before been disclosed and it's       00:21

21    disclosed for the first time as part of a mediation process,

22    that does not make the document itself privileged.

23          **THE COURT:**  I understand that.

24          Mr. Toberoff, I've heard enough.

25          **MR. TOBEROFF:**  If I may just --                        00:21

1              **THE COURT:**  I said I've heard enough.

2          The motion is denied.

3          I will accept Mr. Toberoff's clarification of the

4    letter or characterization of the letter.  I understand without

5    having seen it that defense received a partial rendering of          00:22

6    that letter that led them to believe that it was not

7    privileged.  I can understand why they brought this motion and

8    I certainly do not fault them for doing that.

9              However, I will accept Mr. Toberoff's

10   characterization of it as a privileged document, as an officer     00:22

11   of the court.  I have every reason to believe that he is the

12   only person who has access to the underlying privileged

13   document; is fairly and accurately representing that to the

14   Court; and I will rely on that representation.

15             Part of this is motivated simply by the Court's          00:22

16   commitment to maintaining the settlement privilege.  It was the

17   Court that encouraged you to engage in that settlement effort,

18   and I want to maintain the confidences that were agreed to

19   during that period.  So that motion is denied.

20             Let's take up the plaintiff's motion with respect to     00:23

21   compelling documents.

22             I guess I need clarification, perhaps from both sides

23   on this.  As I understand it, there were three or four

24   different document productions made by the defense.  And if I

25   am understanding the plaintiff's motion correctly, you're          00:23

```
 1    simply asking that the defense supplement any and all requests

 2    for which supplemental documentation exists.

 3          Is that correct, Mr. Toberoff?

 4          MR. TOBEROFF:  That's correct, your Honor.

 5          THE COURT:  Okay.                                          00:23

 6          That's required by the local rules regardless of any

 7    requests or regardless of any letters or specific meet and

 8    confers; that's something which is an ongoing obligation which

 9    I know the defense understands and appreciates; so I don't see

10    what the problem is.                                             00:23

11          MR. BERGMAN:  Indeed, we do understand that, your

12    Honor.  And as a matter of fact, the documents have been

13    produced, and our papers reflect that.

14          THE COURT:  I understand documents have been

15    produced.  My question to you is have supplemental documents    00:24

16    been produced in all categories for which previous documents

17    have been produced, so as to update them and fulfill your

18    obligations under the Federal Rules of Civil Procedure?

19          MR. BERGMAN:  Yes, Sir.

20          And the reason why -- just to explain the                 00:24

21    circumstances, if I may briefly, your Honor -- why we did not

22    produce these requested documents immediately is the narrow

23    focus of the February 3rd trial.  Mr. Toberoff and we had

24    agreed 60 days prior to each trial, we would supplement our

25    prior productions relating to the issue to be tried.            00:24
```

1          The issues to be tried on February 3rd are either

2    alter ego or sweetheart deal; that is something that's going to

3    be addressed in the motion in limine.

4          **THE COURT:**  I've gone through the motions in limine,

5    the motions in limine/motions for reconsideration of the          00:25

6    Court's summary judgment order, and I will deal with those on

7    Monday, January 26th.

8          **MR. BERGMAN:**  Okay.

9          The documents which Mr. Toberoff specified in his

10   letter which began this process, which is Exhibit H to           00:25

11   Mr. Toberoff's declaration, his meet and confer letter, if you

12   will, lists the categories of documents that he wanted

13   supplemented.  With one exception, the 12 or 13 categories all

14   relate to the exploitation in one way or another of either the

15   "Superman Returns" film or "Smallville", documents pertaining    00:25

16   to its exhibition on ABC to its syndication to independent

17   television stations.

18         None of that material is relevant to the issue of

19   "are these contracts sweetheart deals?"  It has nothing do with

20   that subject.  It has nothing do with the alter ego subject.     00:26

21   That was our basis for not producing the documents in the first

22   instance.  We reached the point where we realized that the

23   fight was not worth the fight, and we produced all of the

24   documents we had.

25         If I'm not mistaken, as I read Mr. Toberoff's              00:26

```
 1   supplemental brief, it appears that the only thing he's
 2   complaining of now is that we did not provide drafts and
 3   correspondence pertaining to the agreements which we did
 4   produce in the supplemental production, one of them being an
 5   agreement with Warner Brothers consumer products that had
 6   literally been executed on December 15th or 16th, after the
 7   date to produce, and we've produced it.
 8         THE COURT:  I guess my concern is, and I want to make
 9   sure I'm being clear, I don't want Mr. Toberoff's specific
10   requests and your satisfaction of those specific requests to be
11   viewed as satisfying your ongoing obligations to supplement for
12   the entire category of requests that have been made and to
13   which you have produced documents in the past.  And that's the
14   impression that I got from reading that correspondence and your
15   responses.
16         I want it understood that if there's an agreement
17   between counsel that we're going to focus on discovery for the
18   trial that we have on February 3rd now, that makes sense to me.
19   But at some point in time, sooner as opposed to later, there
20   needs to be a full supplemental production on the part of
21   Warner Brothers for every category for which they have
22   previously produced documents to the extent that they have
23   supplemental documents.  That's understood.
24         MR. BERGMAN:  That is understood, and I assume the
25   same thing applies to plaintiffs.
```

00:26
00:27
00:27
00:27
00:27
00:28

```
 1          THE COURT:  Of course.  Rules apply to both sides.

 2          So let me hear from Mr. Toberoff.

 3          If counsel understands that obligation, do you have

 4   this agreement to cabin off the discovery in anticipation of

 5   the February 3rd trial?                                          00:28

 6          What exactly is it that you're seeking from the Court

 7   to order in light of counsel's representation that he

 8   understands his obligations to supplement to the extent there

 9   are supplemental documents.

10          MR. TOBEROFF:  First of all, it's incorrect that they   00:28

11   have produced all documents.

12          Even though it's not plaintiff's burden to pinpoint

13   documents they have not seen yet but to give requests for

14   categories to which they need to respond, I can think of a few

15   areas where they have not produced documents where documents   00:28

16   would exist.

17          Since 2006, the last production, there have been

18   additional Superman agreements and amendments to existing

19   agreements.  They produced those finally on December 17th, but

20   they did not produce drafts showing the negotiating history of  00:29

21   those agreements, which are obviously relevant to an

22   examination of whether agreements are entered into at arms'

23   length.

24          Previously, in their prior production they produced

25   drafts and correspondence, but in their supplemental they did   00:29
```

```
 1   not supplement by producing drafts and correspondence of new
 2   agreements and amendments; so that's one area that I can think
 3   of.
 4          Another is for over two years there have been
 5   internal memorandum of D.C. and Warner Brothers and              00:29
 6   correspondence between D.C. and Warner Brothers regarding their
 7   Superman agreements and regarding their relationship which are
 8   all very relevant to the upcoming alter ego trial.  They have
 9   not produced any internal memorandum or correspondence which
10   they must produce.                                               00:29
11          I need to take this back, because this is really not
12   a casual thing; this is a bigger problem and should not be
13   treated in the casual manner advocated by defendants.
14          I spent about four to five months with them prior to
15   arriving at this agreement, meeting and conferring about         00:30
16   supplementation, because I was very concerned about it.  In
17   fact, we had to bring a prior motion to compel where we served
18   our portion of a joint stipulation, and it was only after that
19   that they finally agreed to supplement 60 days before trial.
20   That date was calculated to also be before the LR 16 when each   00:30
21   side had to basically earmark their evidence and plan out their
22   trial strategy.
23          We finally arrive at this discovery agreement -- and
24   the rules are meant to promote exactly this type of
25   compromise -- and they willfully breached the agreement.  When   00:30
```

1    I address it, Mr. Bergman is evasive.  I bring it up again

2    on -- we comply with the agreement on November 21st.  Not only

3    do we supplement with our prior production, but we supplement

4    by providing all documents we intend to rely upon at trial.

5           I bring it up.  They are evasive.  Then on                    00:31

6    December 2nd, they say flat out, 'we're not supplementing.'

7    December 8th, at another meet and confer regarding motions in

8    limine, they say 'we are not supplementing.'  Then on

9    December 17th at 7:00 p.m., a messenger is sent over to the

10   office; the next day the motion in limine on this very subject     00:31

11   is due, they suddenly make a selective production.

12           This is just flat out wrong.

13           And they did it to disrupt their trial preparation,

14   to disrupt our motion to compel on the subject, and to disrupt

15   their motion in limine on the subject.                             00:31

16           In that supplementation, rather than supplement

17   within the responsive framework of requests and their prior

18   production, as your Honor has referred to, they simply take my

19   meet and confer letter which specifically mentioned the

20   relevant requests that are relevant to the alter ego trial, and   00:32

21   instead of focusing on documents responsive to those requests,

22   they say 'we disagree that we have any duty to supplement,' and

23   then they selectively go through some of the examples I've

24   given of what would be responsive documents and they narrow

25   that list and claim they have supplemented.                        00:32

1              This is improper.  And because they have breached an

2    expressed agreement, we believe they need to be ordered by the

3    Court to supplement, if not sanctioned, for their behavior.

4              **THE COURT:**  At this point, though, you do agree that

5    there is this agreement in terms of narrowing the production to      00:32

6    documents that are relevant to the February 3rd trial; is that

7    correct?

8              **MR. TOBEROFF:**  Absolutely.  And we gave them a list

9    of those requests which are relevant to this first phase of the

10   trial.                                                               00:32

11             **THE COURT:**  Very well.

12             And Counsel, you agree with this?

13             **MR. BERGMAN:**  I'm not sure what the 'this' is, your

14   Honor.

15             **THE COURT:**  'This' being that you have a duty to       00:33

16   supplement all document requests that are related to this

17   phase, this trial.

18             **MR. BERGMAN:**  Unquestionably.

19             **THE COURT:**  And you have made that production.

20             **MR. BERGMAN:**  I believe that we have produced          00:33

21   everything that Mr. Toberoff has identified.

22             **THE COURT:**  That wasn't the question I asked.

23             You're doing it again what you did in the papers, and

24   that's really causing me to think that you have not done what I

25   asked.                                                               00:33

```
 1              Have you produced supplements for every document

 2    request that is relevant to the February 3rd trial?

 3              It's a yes or no.

 4              MR. BERGMAN:  Yes.

 5              THE COURT:  I want you to make sure of that.            00:33

 6              MR. BERGMAN:  Yes, sir.

 7              THE COURT:  Because of your equivocation, I'm going

 8    to give you one week to make sure of that.

 9              Today is the 14th, you have to the 21st; so you have

10    one week to reaffirm, to make sure, that you have supplemented   00:33

11    every category.  Not just what Mr. Toberoff has identified, but

12    every category that is relevant to the February 3rd trial.

13              And more than that, I'm going to accept your

14    representation today that you have done so.  Nothing that you

15    produce after today is going to be used in the February 3rd     00:34

16    trial by Warner Brothers.

17              MR. BERGMAN:  Yes, sir.

18              THE COURT:  Anything further, Mr. Toberoff?

19              MR. TOBEROFF:  Yes, your Honor.

20              It has to do with the aspect of your words 'relevant   00:34

21    to the trial.'

22              Defendants have taken a very sort of self-serving

23    view.  It's in their interests to try and narrow what this

24    trial is about.  They want to narrow the trial, not only to the

25    terms of a couple agreements, but just to the financial terms   00:34
```

 1   of those agreements.  So when they say, 'yes, relevant to the

 2   trial,' that really should not be the measure.  It should be

 3   relevant to either the scope that you say that is --

 4           THE COURT:  If I was dealing with a young,

 5   fresh-out-of-law-school attorney, I would have more concerns      00:35

 6   about this, but I'm sure that all counsel in this room

 7   understand the distinction between the standard of relevancy in

 8   the discovery phase versus the standard of relevancy at the

 9   trial itself.  And I'm sure at the end of this next week,

10   counsel will make sure that anything that is discoverable, as    00:35

11   that term is used in the Federal Rules of Civil Procedure,

12   related or potentially related or likely to lead to the

13   discovery of evidence, will be produced.

14           MR. TOBEROFF:  I understand, your Honor.

15           May I bring up one aspect which was touched upon?        00:35

16           THE COURT:  Sure.

17           MR. TOBEROFF:  He mentioned documents which regard

18   the distribution of Smallville or Superman Returns as being

19   entirely irrelevant.

20           We've asked for -- once this television show             00:35

21   "Smallville" is produced, they make an agreement to broadcast

22   it; and then, after they make an agreement, to put it on cable

23   and other media.  So we asked for their agreement between WBTV

24   and the WB Network which broadcasts and for the agreement with

25   the ABC Family Entertainment, and they have taken the position   00:36

1   that it's completely irrelevant to this trial.

2            It is not irrelevant, and I can just give you a few

3   examples.

4            **THE COURT:**  It may or may not be relevant in terms of

5   being admitted at trial.  I'm not going to rule on that now.          00:36

6   It's certainly subject to discovery, and let's have it turned

7   over.

8            **MR. TOBEROFF:**  Thank you, your Honor.

9            **THE COURT:**  We have some very interesting issues to

10  take up on the 26th.  The Court believes that it will be in a        00:36

11  position to rule from the bench on all eight motions that it

12  has before it on the 26th.

13           Be prepared to argue.  I will certainly indicate at

14  the outset my tentative.  I'll look forward to seeing you on

15  January 26th.                                                         00:36

16           **THE CLERK:**  Court is in recess.

17

18                            CERTIFICATE

19

20  I hereby certify that pursuant to section 753, title 28, United
    States Code, the foregoing is a true and correct transcript of
21  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
22  conformance with the regulations of the Judicial Conference of
    the United States.

23

24  _____          _____
    THERESA A. LANZA, CSR, RPR                          Date
25  Federal Official Court Reporter