Marc Toberoff (State Bar No. 188547)
 *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
 *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone: (310) 246-3333
Fax:          (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| DC COMICS,<br>       Plaintiff,<br>  vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br>       Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR RECONSIDERATION OF APRIL 11, 2011 ORDER**<br><br>*[Proposed] Order filed concurrently*<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Hearing Date: June 20, 2011<br>Hearing Time: 10:00 a.m.<br>Courtroom: 540 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.    ARGUMENT ........................................................................................................2

    A.    Motions for Reconsideration Are Highly Disfavored ...........................2

    B.    DC's Motion Improperly Repeats Arguments From Its Original Motion ...............................................................................................2

    C.    DC's Motion Improperly Repeats Arguments Rejected by Judge Wright ...................................................................................................3

    D.    The May 13 Letter Is Not a Basis For Reconsideration ........................7

        1.    The May 13 Letter Is Irrelevant, Inadmissible, and Provides No New Information .......................................................7

        2.    DC Is Not Entitled to Any Further Documents Based on the May 13 Letter ...............................................................11

III.    CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*389 Orange Street Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ..................................................................................2

*Aventis Pharms SA v. Amphastar Pharm., Inc.*,
2005 WL 5957795 (C.D. Cal. Mar. 25, 2005)........................................................2

*Cabral v. Am. Airlines, Inc.*,
2003 U.S. Dist. LEXIS 501 (S.D.N.Y. Jan. 15, 2003) ............................................6

*Campbell v. United States Dist. Court*,
501 F.2d 196 (9th Cir. 1974) ..............................................................................1, 4

*Chase Manhattan Bank N.A. v. Stapleton*,
2008 U.S. Dist. LEXIS 42655 (D.V.I. 2008) .........................................................5

*Credit Bureau Connection, Inc. v. Pardini*,
726 F. Supp. 2d 1107 (E.D. Cal. 2010) ..................................................................2

*FTC v. Namer*,
2007 U.S. App. LEXIS 24013 (5th Cir. Oct. 12, 2007) .........................................5

*Hepler v. Wash. Mut. Bank, F.A.*,
2008 WL 4866285 (C.D. Cal. Oct. 28, 2008)...................................................... 2-3

*Hitachi America, Ltd. v. Japan Intermodal Transport Co.*,
1991 U.S. Dist. LEXIS 14354 ( E.D. Mich. May 21, 1991) ..................................6

*Hy Kom Dev. Co. v. Manatee County*,
837 F. Supp. 1182 (M.D. Fla. 1993).......................................................................6

*In re Carmona*,
224 F. Supp. 497 (S.D. Cal. 1963)..........................................................................6

*Jackson v. Ashcroft*,
2002 U.S. Dist. LEXIS 15821 (N.D. Ill. Aug. 22, 2002) .......................................5

*Marcella v. Capital Dist. Physician's Health Plan, Inc.*,
293 F.3d 42 (2d Cir. 2002) .....................................................................................5

*Mathews v. Weber*,
423 U.S. 261 (1976).................................................................................................4

*McCoy v. Roe,*
234 Fed. Appx. 559 (9th Cir. 2007)........................................................................2

*Parks By and Through Parks v. Collins*,
761 F.2d 1101 (5th Cir. 1985) ................................................................................5

*Ridgeway v. Mont. High School Ass'n*,
858 F.2d 579 (9th Cir. 1988) ..................................................................................5

*Rojas-Gutierrez v. Hoy*,
161 F. Supp. 448 (S.D. Cal. 1958) ..................................................................................6

*Siegel v. Warner Bros. Ent. Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ........................................................................6, 8

*Siemer v. Assocs. Fin. Servs.*,
1999 U.S. Dist. LEXIS 22784 (D. Ariz. July 22, 1999) ..............................................5

*Spickler v. Dube*,
626 F. Supp. 1092 (D. Me. 1986) ...................................................................................5

*Taylor v. Nat'l Group of Co.'s, Inc.*,
765 F. Supp. 411 (N.D. Ohio 1990) ...............................................................................5

*Trust Corp. v. Aetna Casualty and Surety Co.*,
873 F. Supp. 1386 (D. Ariz. 1994) .................................................................................2

*United States v. Desert Gold Min. Co.*,
433 F.2d 713 (9th Cir. 1970) ..........................................................................................6

*United States v. First Nat'l Bank*,
576 F.2d 852 (10th Cir. 1978) ........................................................................................5

*USW v. PPG Indus.*,
2005 U.S. Dist. LEXIS 41660 (W.D. Pa. Sept. 30, 2005) ............................................6

**Federal Statutes**

F.R.C.P. 72(a) ......................................................................................................................5

28 U.S.C. § 636(b)(1)(A) ....................................................................................................5

Local Rule 7-18 ..............................................................................................................2, 12

## I. INTRODUCTION

As this Court stated in its April 11, 2011 Order ("April 11 Order") when it denied DC's underlying motion to compel, "one bite at the proverbial apple usually is good enough." Docket No. 209 at 3. DC, denied by Judge Larson in the *Siegel* action, denied by this Court's April 11 Order, and denied by Judge Wright when it moved for review of the April 11 Order (Docket No. 248), seeks a fourth bite at the apple with this redundant motion for reconsideration (Docket No. 253; "Mot.") of the April 11 Order. Here, DC not only improperly repeats arguments made to this Court, it also repeats, practically verbatim, specific arguments made to and rejected by Judge Wright after full briefing, and thus impermissibly invites conflicting adjudications, by asking this Court to accept arguments rejected by Judge Wright. *See Campbell v. United States Dist. Court*, 501 F.2d 196, 205–06 (9th Cir. 1974).

Even if this Court were inclined to entertain the proposition that it could overrule Judge Wright's order, DC's motion is meritless.[1] It is entirely based on an uneventful and inadmissible May 13, 2003 letter from Michael Siegel to Laura Siegel (the "May 13 Letter"), which Defendants promptly produced in accordance with the Court's April 11 Order. Notwithstanding DC's hyperbole, the May 13 Letter, as Defendants pointed out to Judge Wright, relates to neither DC's claims for relief nor the pending anti-SLAPP motion; its dubious "relevance" is solely based on DC's conflation of purported offers to Michael Siegel with an offer alleged in its complaint to Laura Siegel Larson and Joanne Siegel. *See* Mot. at 3-5. DC's trumped-up arguments are just another desperate attempt to salvage its frivolous claims that are subject to fully briefed dispositive motions to dismiss and an anti-SLAPP motion, which should soon be decided. DC's motion should be denied.

---

[1] DC falsely complains that Defendants "declined to engage with DC" on this motion. Defendants met-and-conferred with DC on its duplicative motion for review, s*ee* Docket No. 225 at 1, and sent a detailed letter on April 21, 2011 objecting to DC's motion for reconsideration (*See* Docket No. 253-10, Ex. I), after which DC did not seek to further meet-and-confer, as the issues had been more than covered.

## II. ARGUMENT

### A. Motions for Reconsideration Are Highly Disfavored

Local Rule 7-18 prohibits motions for reconsideration except under extraordinary circumstances:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. ***No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion***.

L.R. 7-18 (emphasis added). Motions for reconsideration "are disfavored and are rarely granted." *Trust Corp. v. Aetna Casualty and Surety Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). *See also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances..."). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1132 (E.D. Cal. 2010).

### B. DC's Motion Improperly Repeats Arguments From Its Original Motion

DC's motion is brought under the guise of alleged "newly discovered evidence" (*i.e.,* the inadmissible and only marginally relevant May 13 Letter). Mot., Notice at 1. DC's motion actually highlights and repeats its prior arguments in violation of L.R. 7-18, and attempts to mask its repetition by purporting to reference its prior arguments. *See, e.g.,* Mot at 7:18-26, 8:6-19, 9:15-26,. *See McCoy v. Roe*, 234 Fed. Appx. 559, 560 (9th Cir. 2007) (approving denial of motion for reconsideration that "restated the arguments and allegations made in support of [the] original motion"); *Aventis Pharms SA v. Amphastar Pharm., Inc.,* 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) (motion to reconsider failed because it was "repeating an argument"); *Hepler v. Wash. Mut. Bank, F.A.,* 2008 WL 4866285, at *1

(C.D. Cal. Oct. 28, 2008) (same).

### C. DC's Motion Improperly Repeats Arguments Rejected by Judge Wright

*First*, for DC to bring a motion for review to Judge Wright *and* a motion for reconsideration to this Court of the same April 11 Order is improper, as it poses the obvious risk of circular and inconsistent rulings. DC has asked two courts to adjudicate the same subject matter and to review the exact same April 11 Order, based on the same arguments, demonstrating an utter lack of respect for the unwarranted burden this places on judicial resources and on Defendants.

*Second*, Judge Wright on May 12, 2011 and on May 23, 2011 twice ***denied*** DC's motion for review of the April 11 Order (Docket Nos. 248, 252); DC's motion for reconsideration effectively asks this Court to improperly sit in review of Judge Wright's order. In fact, DC's motion for reconsideration repeats the exact same arguments as in its denied motion for review:

| DC's Motion for "Reconsideration" (Docket No. 253) | DC's Motion for "Review" (Docket No. 225) |
|---|---|
| To be clear, Judge Larson never *specifically* ruled on the privileged status of the July 11 letter or the two privilege log entries that DC believes correspond to the letter. *Id.*; Case No. CV-04-8400, Docket Nos. 374, 386. Nor did defendants clearly "assert[] privilege as to the letter," as opposed to the fax from Ms. Larson to Mr. Toberoff transmitting the letter. Docket No. 225 at 16 (at 7:18-26). | As for the "July 11, 2003" letter, Judge Larson never specifically ruled on the allegedly privileged status of the letter or log entries 715 and 716. *See* Docket No. 171 at 3. He ruled only that he would not have the "escrow agent" in *Siegel* assess the validity of Toberoff's privilege claims. *See id.*; Case No. CV-04-8400, Docket Nos. 374, 386. Moreover, defendants did not clearly "assert[] privilege as to the letter" in *Siegel*; they claimed privilege over the fax transmitting the letter, but did not assert that the underlying letter was privileged or log it separately (at 16:1-10). |
| The existence of the May 13 letter, its contents, and defendants' unjustified failure to disclose, produce, or log it provide ample reason for this Court to reconsider its ruling regarding the July 11 letter and order production of the letter to DC or submission to this Court | The recent revelation of the May 13 letter—which was never before Judge Larson or the Magistrate—also calls into question defendants' assertions regarding their July 2003 correspondence. The existence of the May 13 letter, its contents, and |

3
DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION

| DC's Motion for "Reconsideration" (Docket No. 253) | DC's Motion for "Review" (Docket No. 225) |
|---|---|
| for in camera review (at 8:1-4). | defendants' failure to produce or log it provide ample reason for the Court to revisit the Magistrate's rulings and order defendants to produce the "July 5, 2003" and "July 11, 2003" letters …. (at 17:5-10). |
| DC submits that in light of the withholding and contents of the May 13 letter, together with the November 2002 correspondence, and their importance to refuting defendants' factual assertions, further elaboration of defendants' logs— at least related to Mr. Siegel—is warranted (at 9:23-26). | DC submits that in light of the belated disclosure of the May 13 letter—and its importance to refuting defendants' factual assertions— "further elaboration" is warranted. Defendants have not offered *any* explanation why the May 13 letter was never produced, disclosed, or logged. This significant omission presents a strong basis for concern and reason to compel defendants to update and expand their logs (at 18:4-9). |
| Defendants provided no detail about their method or criteria for "matching up" DC's description of the July 5 letter with the documents in their files, cf. Docket No. 209 at 12 n.2, and gave no explanation why they did not deny the letter's existence during the parties' meet-and-confer discussions. See Seto Decl. Exs. B at 9 ¶ 10; C at 13-14 ¶ 10; D at 16 ¶ 10; E at 20-21 ¶ 10 (at 8:12-17). | As for the "July 5, 2003" letter, the Magistrate incorrectly read the ambiguous footnote in defendants' brief as affirmatively verifying that the letter does not exist. Docket No. 209 at 12 n.2. The Magistrate overlooked that defendants never denied the existence of this letter in the parties' meet-and-confer discussions and failed to describe their method or criteria for "matching up" DC's description of the letter with documents in defendants' files (at 16:26-17: 3). |

DC thus openly (*e.g.,* Docket No. 225 at 1. n.1, No. 253 at 5:5-6:2) asks this Court to adjudicate arguments made to and rejected by Judge Wright, and thus to effectively overrule Judge Wright, the final decision-maker in this case. *See Mathews v. Weber*, 423 U.S. 261, 270 (1976) ("[T]he magistrate acts 'under the supervision of the district judges' when he accepts a referral, and that authority for making final decisions remains at all times with the district judge. '[A] district judge would retain ultimate responsibility for decision making in every instance ….'") (citations omitted); *Campbell*, 501 F.2d at 205–06 ("'[T]he district judge is to retain the ultimate responsibility for the conduct of pretrial or discovery proceedings,'" and

the statute authorizing magistrates to decide pre-trial matters "'cannot be read in derogation of the fundamental responsibility of judges to decide the cases before them.'"); *United States v. First Nat'l Bank*, 576 F.2d 852, 853 (10th Cir. 1978) ("It is clear that district court judges were intended to retain ultimate decision-making power and continuing jurisdiction over the actions of magistrates.").

Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1)(A) provides authority for the district court to review orders by the magistrate; nowhere do the Rules provide authority for a magistrate to review a decision by the district court judge, or to reconsider a decision upheld by that judge. *See Taylor v. Nat'l Group of Co.'s, Inc.*, 765 F. Supp. 411, 413-14 (N.D. Ohio 1990) ("[T]he Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior rulings of a district judge.").[2]

Moreover, pursuant to the law of the case doctrine, the same issue presented a second time in the same case should lead to the same result, as to do otherwise "would create intolerable instability for the parties." *Ridgeway v. Mont. High School Ass'n*, 858 F.2d 579, 587-88 (9th Cir. 1988). Where, as here, a district court has ruled on a motion for review of a magistrate's order, the district court's ruling *is* the "law of the case." *See Spickler v. Dube*, 626 F. Supp. 1092, 1095 (D. Me. 1986) ("[T]he rulings of the Magistrate, as accepted by this Court, establish the 'law of the case.'").[3]

---

[2] *See also Parks By and Through Parks v. Collins*, 761 F.2d 1101, 1105-07 (5th Cir. 1985) (holding that the magistrate judge lacked authority to set aside a default judgment entered by a district judge); *FTC v. Namer*, 2007 U.S. App. LEXIS 24013, at *30 (5th Cir. Oct. 12, 2007) ("[T]he magistrate judge lacked authority to vacate an order of the district court …"); *Chase Manhattan Bank N.A. v. Stapleton*, 70 Fed. R. Serv. 3d (Callaghan) 985, 2008 U.S. Dist. LEXIS 42655, at *5 (D.V.I. 2008) ("[T]he magistrate judge lacks the authority to set aside prior decisions of a district judge."); *Jackson v. Ashcroft*, 2002 U.S. Dist. LEXIS 15821, at *6 (N.D. Ill. Aug. 22, 2002) (holding by a magistrate that "this Court does not have the authority to reconsider [District] Judge Alesia's discovery rulings").

[3] *See also Marcella v. Capital Dist. Physician's Health Plan, Inc.*, 293 F.3d 42, 46-47 (2d Cir. 2002) (failure to timely object to magistrate's order forfeits further review, and the magistrate judge's finding becomes the law of the case); *Siemer v. Assocs. Fin. Servs.*, 1999 U.S. Dist. LEXIS 22784, at *15 (D. Ariz. July 22, 1999) (holding that where "[t]he District

Thus, Judge Wright's final decision is the "law of the case," notwithstanding DC's attempt to cast existential doubt on what Judge Wright "may have based" his ruling on. Mot. at 5.

DC's current posture is that it "will seek review of ***all*** rulings adverse to DC" (*see* Declaration of Cassandra Seto ("Seto Decl."), Ex. H at 27) (emphasis added), and endlessly re-litigate every adverse ruling, both here and in *Siegel*, without regard to the burden and waste that this entails.[4] In raising these issues for the third time in this case, DC does not make any argument that it did not make in its motion for review. This tactic creates exactly the sort of "instability" that the law of the case doctrine seeks to prevent.[5]

This procedural mess is entirely of DC's own making. DC could easily have

---

Court adopted the Magistrate Judge's Report and Recommendation … the law of the case doctrine applies"); *Hy Kom Dev. Co. v. Manatee County*, 837 F. Supp. 1182, 1185 (M.D. Fla. 1993) (where the district court has approved a magistrate's decisions, "[t]he Magistrate Judge's report and recommendation has thus become the law of the case."); *Cabral v. Am. Airlines, Inc.*, 2003 U.S. Dist. LEXIS 501, at *5 (S.D.N.Y. Jan. 15, 2003) ("[I]f the transferor district court had ruled on the magistrate judge's report, it would be considered the 'law of the case' as a prior ruling in an earlier stage of litigation."); *USW v. PPG Indus.*, 2005 U.S. Dist. LEXIS 41660, at *9 (W.D. Pa. Sept. 30, 2005) ("Because the district court subsequently denied the [] objections to Magistrate Judge Benson's Memorandum Order it now appears to be the law of the case."); *Hitachi America, Ltd. v. Japan Intermodal Transport Co.*, 1991 U.S. Dist. LEXIS 14354, at *7 ( E.D. Mich. May 21, 1991) (holding as "the established law of the case …. an order [] adopting Magistrate Judge Komives' [] report and recommendation").

[4] In addition to its motions for reconsideration/review, DC's complaint seeks reconsideration of numerous rulings in the closely related case of *Siegel v. Warner Bros. Entertainment Inc.*, Case No. 04-CV-8400 ODW (RZx) ("*Siegel*"). *See* Docket No. 49 (First Amended Complaint, "FAC") at 50 n.4, 57 n.6. *Compare* Docket No. 49, FAC ¶¶ 125-28 (alleging that a May 21, 1948 consent judgment was not terminated) *with Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1126 (C.D. Cal. 2008) (specifically rejecting that argument). When Judge Wright in *Siegel* recently entered a Rule 54(b) judgment, DC immediately moved to reconsider that order as well, *see Siegel,* Docket No. 661, which motion was denied as moot. *Siegel,* Docket No. 664.

[5] *See also United States v. Desert Gold Min. Co.*, 433 F.2d 713, 715 (9th Cir. 1970) ("[O]ne judge should not overrule another except for the most cogent reasons."); *Rojas-Gutierrez v. Hoy*, 161 F. Supp. 448, 451-52 (S.D. Cal. 1958) (stating that for judges "to presume to overrule one another usually adds only unseemly conflict and confusion where certainty and predictability are most to be desired. The 'overruling' decision settles nothing, and more often than not serves only to compound uncertainty as to the correct rule to be followed."); *In re Carmona*, 224 F. Supp. 497, 498 (S.D. Cal. 1963) ("[W]here a judge has decided a question of law in one manner a judge of co-ordinate jurisdiction should not normally undertake to decide it another way. This rule, based upon judicial comity as well as good judicial administration, is of great universality.").

set a hearing date for its motion for review sufficiently far in advance that this motion for reconsideration could have been decided by this Court before Judge Wright ruled on DC's motion for review.

### D. The May 13 Letter Is Not a Basis For Reconsideration

#### 1. The May 13 Letter Is Irrelevant, Inadmissible, and Provides No New Information

In an attempt to justify its motion, DC hypes the "May 13 Letter" and argues that it somehow "corroborates DC's key allegations in this case." Mot. at 3. However, the letter does not relate to DC's allegations. DC's argument falsely conflates two separate events. The first is an August 2002 offer by the talent agent Ari Emanuel to buy out the interest of Joanne and Laura Siegel for $15 million, a proper offer which has been the subject of extensive testimony and discovery, but which nonetheless forms the basis of DC's Fifth Claim for Relief. The second – the subject of the May 13 Letter – is a separate offer by Mr. Emanuel in mid-2003 to buy out Michael Siegel's interest, which was also the subject of extensive discovery. *See, e.g.,* Docket No. 160 at 35-36 (describing the production of 15 documents relating to such offers). Notably, despite this discovery and numerous documents in DC's possession relating to this Michael Siegel offer when it filed its complaint, this offer does not form the basis of **_any_** claims for relief by DC and, in fact, Michael Siegel is nowhere even mentioned in any of DC's allegations. *See* Docket No. 49 (First Amended Complaint, "FAC").

In brief, DC's baseless Fifth Claim for Relief, for interference with economic advantage (FAC, ¶¶ 180-186), alleges that Mr. Toberoff, in an August 2002 conversation with Kevin Marks, falsely claimed he had an "investor" for Joanne and Laura Siegel's Superman rights (an offer which Joanne and Laura never accepted), and that this offer "induced" them to repudiate a purported settlement agreement with DC on September 21, 2002. *See also* FAC, ¶¶ 77-80.

As set forth in defendants' Anti-SLAPP motion (Docket No. 145-1 at 7:1-9:20,

22:4-24:2; No. 196 at 2:15-3:6, 4:3-6:3), this contradicts all of the admissible evidence in DC's and its counsel's possession:

- Joanne Siegel had made clear in a May 9, 2002 letter to Time Warner that her negotiations with DC were moribund. Docket No. 145-5, Ex. O ("After four years we have no deal and this contract makes an agreement impossible."). Judge Larson held that the May 9, 2002 letter confirmed the Siegel Heirs had "clearly and unequivocally" rejected DC's proposals. *Siegel*, 542 F. Supp. 2d at 1139. DC's purported "prospective economic advantage" was thus at an end long before Mr. Toberoff had any communication at all with the Siegels or any substantive communication with their then-counsel, Marks.

- There was no mention of a "billionaire investor" in Mr. Toberoff's August 2002 conversation with Mr. Marks, in which the talent agent, Ari Emanuel [not a mysterious "billionaire"] offered to purchase the Siegel Heirs' rights for $15 million plus a participation. *See* Docket No. 196-2, Ex. H at 166:6-170:24 (testimony of Kevin Marks), Ex. E at 98:25-104:14 (testimony of Marc Toberoff); Docket No. 196-3 (further testimony of Kevin Marks).

- The pertinent witnesses all testified that Mr. Toberoff had no further contact with Mr. Marks and no direct contact with the Siegels until after they had officially terminated all negotiations with DC and terminated Mr. Marks by letters dated September 21, 2002. *See* Docket No. 145, Ex. R at 105:24-106:23 (testimony of Marc Toberoff); Docket No. 196-3, Ex. A at 169:23-170:12, 171:14-21, 172:14-17, 174:17-21 (testimony of Kevin Marks); Docket No. 196-2, Exs. E at 106:1-107:7 (testimony of Marc Toberoff), Ex. F at 33:17-34:1, 41:1-3 (testimony of Joanne Siegel), Ex. G at 17:6-8, 261:17-262:7 (testimony of Laura Siegel).

Thus, the overwhelming record evidence establishes that Mr. Toberoff did not and could not have caused the Siegels to end negotiations with DC, the May 13 Letter has no bearing on the actual issues in the case, and, as set forth in Defendants'

anti-SLAPP motion and motion to dismiss, DC's Fifth Claim will fail.

Against this evidence, DC now claims that the May 13 Letter "corroborates" DC's "billionaire investor" claim. Mot. at 3. To do so, DC misleadingly conflates Michael Siegel with the "Siegels." DC's actual allegations in its complaint relate to the "Siegel Heirs," defined as Joanne Siegel and Laura Siegel Larson (FAC, ¶ 66), not Michael Siegel. The May 13 Letter does not address any offer to the Siegel Heirs, but rather an offer to "buy out my [Michael Siegel's] share of the copyright." Seto Decl., Ex. A. There is no reference in the letter to any offer to Joanne Siegel and/or Laura Siegel Larson.

Defendants addressed DC's trumped-up mysterious "billionaire" claim in opposition to DC's original motion to compel, and noted that DC itself had long ago identified the "investor" as Mr. Emanuel. Docket No. 160 at 70:2-71:3. Defendants likewise pointed out in their anti-SLAPP motion that the August 2002 offer was made by Mr. Emanuel, not a mysterious "billionaire," as consistently testified to by Mssrs. Marks and Toberoff in 2006. *See* Docket No. 145 at 8:12-28; No. 196-2, Ex. E at 103:8-9, Docket No. 145-6, Ex. R at 168:2-169:5.

In addition to this non-issue of a "billionaire investor," DC "matches up" in a chart statements in the anonymous inadmissible Timeline to statements in the inadmissible May 13 Letter to unpersuasively hype the May 13 letter as "dramatically corroborat[ing] the Timeline." Mot. at 4. This is nonsense. The Timeline author obviously had access to Michael Siegel's May 13 Letter which it purported to enclose and freely adapted both its tone and verbiage in his conspiratorial "hit piece" against Mr. Toberoff.

Michael Siegel was but a small child when his parents divorced, and as an adult lived with his mother. He was not a signatory to the notices of termination served by his stepmother, Joanne Siegel and stepsister, Laura Siegel Larson and as shown by his May 13 Letter, clearly felt "out of the loop," leading to insecurity and dramatic speculation. *See* Docket No. 160 at 3:3-8; Seto Decl., Ex. A. The Timeline

mimics speculative allegations in Michael Siegel's May 13 Letter that are meritless or irrelevant:

| May 13 Letter | Record |
|---|---|
| "Now that you have signed with [Mr. Toberoff], he is in control of the whole Superman copyright." | The letter earlier states that "Marc [Toberoff] is now the attorney for the entire Superman Copyright." Seto Decl., Ex. A. The quoted statement obviously refers to Mr. Toberoff's representation of both the Shusters and Siegels. *See* Docket No. 145-1 at 6:13-28 and 8:12-9:20, and evidence cited therein. |
| "Do you know who owns the Shuster interest in the Superman copyright? Has Marc bought the Shuster interest himself?" | Mr. Toberoff holds no ownership in the Shuster termination interest. Mr. Toberoff represents the Shuster estate pursuant to a legal retainer dated as of November 23, 2001 (which has been produced to DC) under which his firm is solely entitled to a contingent legal fee. *See* Docket No. 267-14, Ex. K. The Shuster estate's notice of termination is not effective until October 26, 2013; and prior to that date the termination interest could not, in any event, be transferred to any person or entity other than DC Comics as a matter of law. 17 U.S.C. § 304(c)(6)(d). |
| "Marc has chosen not to open any dialog with Time Warner or anyone else." | Warner Bros.' former general counsel testified that he met with Toberoff "to engage in negotiations regarding *Superman* and *Superboy*, but to no avail." Docket No. 145-1 at 10:2-4 (citing testimony of John Schulman). |
| "Marc seems to have an agenda of someone buying me out so I will have to look for the best deal I can get. Marc is really pressing for an answer to the offer his investor made." | Defendants acknowledged that Mr. Toberoff's discussions regarding the purchase of Michael Siegel's interest was on behalf of Mr. Emanuel. Docket No. 160 at 70:2-71:3 |

Certain words that appear in the May 13 Letter unsurprisingly appear in DC's complaint (*e.g.,* "billionaire," FAC ¶ 7-8, 66-85) because the complaint is based on

the inadmissible rant in the anonymous Timeline,[6] which, in turn, clearly riffed off Michael Siegel's speculations in his inadmissible May 13 Letter. DC cherry-picks these repeated words to somehow validate its baseless complaint and to falsely accuse Defendants of misrepresenting to the Court. DC specious arguments ignore the innocuous actual content of the May 13 Letter.

### 2. DC Is Not Entitled to Any Further Documents Based on the May 13 Letter

The irrelevant May 13 Letter was duly produced in accordance with this Court's April 11 Order which stated that "Defendants shall either (a) produce [the May 13 Letter] to Plaintiff; or (b) submit a verified further response to Plaintiff indicating that it does not exist." Order at 12. There was no "suppression" (Mot. at 9). Defendants did not claim that the letter did not exist, did not claim the letter was privileged (except for certain marginalia addressed in DC's recently-filed motion to compel), and timely produced the letter in accordance with the Order, without burdening Judge Wright or this Court with further motion practice. DC nonetheless claims that the irrelevant May 13 Letter justifies reconsideration of three aspects of this Court's April 11 Order, as to: (i) a logged July 11, 2003 letter (repeatedly upheld), (ii) a purported July 5, 2003 letter (which does not exist as described), and (iii) the logging of documents related to "Michael Siegel" (repeatedly upheld).

All of DC's arguments were rejected by Judge Wright. DC argued before Judge Wright that the May 13 Letter "calls into question defendants' assertions regarding their July 2003 correspondence," and asked that Judge Wright order the production of "the 'July 5, 2003' and 'July 11, 2003'" letters.'" Docket No. 225 at 17:5-10. Judge Wright refused. Docket No. 248. Similarly, DC argued to Judge Wright that the May 13 Letter called into question Defendants' privilege logs with

---

[6] Warner Bros.' in-house counsel, Wayne Smith, also clearly read the May 13 Letter when it was anonymously enclosed by the Timeline and delivered along with the other stolen documents to Warner Bros., and years later Mr. Smith appeared to have an uncanny, if not photographic, memory as to the contents of the May 13 Letter. *See* Docket No. 160 at 66:4-68:7; Docket No. 162-14, Ex. VV; Docket No. 164-2, Ex. G at 4:27-5:19.

11
DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION

respect to Michael Siegel. Docket No. 225 at 17:24-18:9. Again, Judge Wright rejected that argument and denied DC's motion. Docket No. 248.

Nor do DC's arguments on any of the specific issues hold water:

<u>July 11, 2003 Letter:</u>  DC begins by impermissibly repeating its argument to this Court that "Judge Larson never *specifically* ruled on the privilege status" of this document. Mot. at 7; L.R. 7-18. As this Court stated, "the record establishes that [defendants] asserted privilege as to the letter during the prior litigation, a designation that was upheld by the Court" (Order at 11). As previously pointed out, DC ***unsuccessfully*** challenged Defendants' privilege assertion as to the July 11 Letter in the *Siegel* action on no fewer than ***five*** separate occasions. *See* Docket No. 160 at 66:10-68:14; *see also* Docket No. 163, Ex. TT, ¶ 9; Docket No. 164, Ex. B, ¶ 3; Docket No. 163, Ex. UU; Docket No. 164, Ex. C at 20:15-22:26; Docket No. 164, Ex. D, ¶¶ 48-51; Docket No. 164, Ex. G at 5; Docket No. 163, Ex. VV, ¶¶ 6-7; Docket No. 164, Ex. I at 1, 4.

DC now claims that the July 11 Letter "contains Ms. Larson's response" but cites no evidence for this assertion. Mot. at 7.[7]  DC's argument that the May 13 Letter somehow "calls into questions assertions of privilege related to the 'July 11' letter" is a *non sequitur*.  As the Court noted in its April 11 Order (Order at 12), and as DC states in its motion (Mot. at 1), the May 13 Letter was never "logged" and Defendants never claimed that the letter was privileged.

As with DC's underlying motion, DC "points to nothing to demonstrate that the prior ruling was incorrect; [DC] simply wants to see the document still." Order at 11. Such is not a basis for this Court to reconsider its already-upheld ruling.

<u>July 5, 2003 Letter:</u>  DC repeats its original arguments to this Court and its

---

[7] The only "question" that DC extracts from the letter – "Marc is now the attorney for the entire Superman copyright … Has he told you this?  Do you know who owns the Shuster interest in the Superman copyright?  Has Marc bought the Shuster interest himself?" (Mot. at 6) – is also beside the point. As set forth above, the Siegels first contacted Mr. Toberoff for legal representation based on the Shusters' recommendation. Docket No. 145-2, Ex. B at 107:8-24.

arguments in its motion for review rejected by Judge Wright. As previously stated, this purported July 5 letter from Laura Siegel to Michael Siegel does not exist as described. DC claims this letter exists based solely on a reference in the anonymous Timeline. As Defendants previously pointed out, the Timeline describes numerous documents that do not exist:

> *E.g.*, a purported (1) September-October 2003 letter with Ari Emanuel; (2) December 16, 2002 letter from Marc Toberoff and Ari Emanuel to Joanne Siegel and Laura Siegel Larson; and (3) July 5, 2003 letter from Laura Siegel to Michael Siegel. As Defendants informed DC, they were unable to identify a document that matched either (1), (2) (although there was a December 16, 2002 letter from Marc Toberoff to Ari Emanuel, Joanne Siegel, and Laura Siegel Larson that was long ago produced to DC) or (3).

Docket No. 160 at 71-72, n.26. DC previously misrepresented this statement to the Court, and was called on it. Now, it oddly dismisses this as a "footnote" and "indirect" (Mot. at 8), when Defendants' statement is perfectly clear.

DC's motion now advocates that the Court order a vague search and production that goes far beyond the purported July 5 letter and implicates privileged communications. For instance, "communications from June or July 2003 involving Michael Siegel, Don Bulson [Michael Siegel's attorney]," *etc.*, or a "draft" of contemplated communication. Mot. at 8-9. DC thus argues that the alleged July 5 Letter may be completely different from what is described in the Timeline, the sole basis for DC's original motion. There are many duly logged communications from this period. *See* Docket Nos. 162-7, 162-8, Ex. W. DC's motion for reconsideration on this point is both nonsensical and moot.

<u>Privilege Logs/Michael Siegel Documents:</u> As before, DC seeks "further elaboration" (Mot. at 9) of Defendants' privilege logs, already upheld as proper both in this case and in *Siegel*, with respect to Michael Siegel. The Court, in its April 11 Order, denied DC's motion on this point and upheld Defendants' privilege logs, as did Judge Wright. *See* Docket Nos. 248, 252.

In its current motion, DC argues that the May 13 Letter somehow justifies reconsideration of this Court's upholding of Defendants' privilege logs. As set forth

above, the May 13 Letter was not listed on a privilege log, and as such cannot plausibly cast doubt on Defendants' privilege logs.

DC further argues that Defendants have not "explained why the November 2002 letter from Ms. Larson to Mr. Siegel … has never been disclosed, produced, or listed on any privilege log." Mot. at 9. Defendants searched for, but were unable to locate, a November 2, 2002 letter from Laura Siegel to Michael Siegel. *See* Docket No. [Tob Dec], ¶¶ 4-5. In that search, Defendants found a November 1, 2002 letter from Laura Siegel to Don Bulson and Michael Siegel – an uneventful cover letter that merely forwarded a letter from Ms. Siegel to DC (in DC's possession). *Id.*. Once Defendants discovered that this cover letter had inadvertently been overlooked, they voluntarily brought the letter to DC's attention and produced it on May 6, 2011. *Id.*

There is nothing to support DC's argument. DC's underlying motion specifically challenged the assertion of privilege as to "Michael Siegel documents" listed on Defendants' privilege logs. Docket No. 160 at 36 ("[T]he Siegel and Shuster privilege logs identify at least 11 communications between Bulson and Toberoff that may contain non-privileged relevant evidence."). Defendants stated that many of the documents in question had already been produced to DC (*id.* at 70 n.25); and as to the remaining documents, Defendants characterized them as follows:

> DC seeks documents 1203-04, 1360-62, and 1375, which are 2006 communications between Bulson and the Siegels' counsel, that relate to Bulson's response to a subpoena served by DC. At that point in the *Siegel* litigation, Michael Siegel was deceased and Laura Siegel was his sole beneficiary under Ohio intestancy law. As such, the interests of Bulson's client, Michael Siegel, and those of his beneficiary, Laura Siegel, were aligned. Such communications, made for the purposes of coordinating a common legal strategy on behalf of clients with a joint interests, are privileged.

*Id.* at 69. Based on these arguments, the Court reviewed the documents *in camera,* agreed with Defendants' characterization of the documents as privileged, and characterized Michael Siegel and Laura Siegel as having common interests:

> The Court has reviewed those documents, which, to the Court's mind, have little of substance, and mostly deal with logistical issues. Those logistical issues, however, do relate to Mr. Bulson's representation of Michael Siegel prior to Mr. Siegel's death ***and do relate to interests that Mr. Siegel and Ms. Larson held in common***. Thus, although the documents may be much ado

about nothing, they are protected, and Plaintiff's motion to compel their production is denied.

Docket No. 239 at 1 (emphasis added).

In short, DC has all of the non-privileged documents it sought; Defendants did not claim privilege as to the May 13 Letter; and when DC sought to test the accuracy of Defendants' privilege logs, the Court upheld the privilege. DC offers no basis for this Court to reconsider its upholding of Defendants' privilege logs as to the Michael Siegel documents.

### III.  CONCLUSION

For the reasons stated above, DC's motion should be denied.

Dated:  May 31, 2011    RESPECTFULLY SUBMITTED,

Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura
Siegel Larson, individually and as
personal representative of the Estate of
Joanne Siegel