DANIEL M. PETROCELLI (S.B. # 097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. # 211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. # 246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:    (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>     v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, as personal representative of the ESTATE OF JOANNE SIEGEL, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF APRIL 11, 2011 ORDER**<br><br>**Judge**:     Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**:    June 20, 2011<br>**Hearing Time**:    10:00 a.m.<br>**Courtroom**:    540<br>**Discovery Cutoff**:  None Set<br>**Pretrial Conference**:  None Set<br>**Trial**:    None Set |

# I.    INTRODUCTION

It is not until page 12 of their 15-page opposition that defendants address the July 2003 correspondence between Laura Siegel Larson and Michael Siegel at issue here.  When they do, as before, defendants do *not* deny that Ms. Larson sent her brother a letter in July 2003 concerning the sale of the Siegels' asserted Superman rights.  They do not dispute that Ms. Larson's letter is part of entries 715 and 716 of defendants' privilege log.  And, they have provided no authentication of the letter as a privileged document, including no declaration by Mr. Toberoff, Ms. Larson, or anyone else.  Instead, they spend 12 pages saying they should not be required to turn over the July 2003 correspondence because the new evidence DC cites—a May 13, 2003, letter from Michael Siegel to his sister—is "uneventful and inadmissible." Opp. at 1.  However, it is defendants' arguments that are "uneventful," for their attempt to explain away the May 13 letter does not excuse their having withheld it.

The May 13 letter is new evidence that makes it virtually certain Ms. Larson wrote to her brother in July 2003 addressing his concerns about Mr. Toberoff's dealings and responding to his pointed questions, in his letter, about Mr. Toberoff's representations to the family.  This is confirmed by the Toberoff Timeline, which specifically describes correspondence between Laura and Michael Siegel in both May and July 2003.  Yet it was only after this Court's April 11 order compelling production of the May 13 letter that defendants finally turned it over, laying bare their indefensible representations that it did not exist.  In January, when DC directly asked for the "May 13, 2003, letter," Docket No. 253-5 at 16, defendants stated:

> As to your claims that we have not produced certain documents alluded to in the ranting, anonymous Timeline, we have repeatedly stated that the inadmissible Timeline is extremely untrustworthy. *To the extent that relevant documents exist, they have either been produced or designated as privileged*.
>
> Nonetheless, in the interest of clarity: …
>
> • There are *no documents* related to an offer by a "billionaire investor" to purchase the Siegels' Superman rights, because no

such offer was ever conveyed, and the sworn testimony of the relevant witnesses is consistent on this point….

- Documents related to the potential purchase of the Michael Siegel interest were sought by DC, produced in the Ohio action, and designated by Defendants in their December 7 letter. Defendants have duly asserted privilege as to the remaining documents.

DC's overzealous quest to find *non-existent documents* based on frivolous allegations in an anonymous incoherent "hit piece" is unworthy of DC and its counsel.  Docket No. 253-6 at 21 (italics added).

Given the emergence of the non-privileged May 13 letter, the non-privileged response should be produced.  In denying DC's prior motion for this July 2003 correspondence, this Court declined to revisit rulings in the *Siegel* case.  However, the May 2003 letter is indisputably new evidence that was neither before this Court nor the *Siegel* court when such rulings were made and, thus, is ample cause for reconsideration, especially given defendants' inexcusable withholding of the May 2003 letter.  In addition, defendants now concede the May 2003 letter was among the allegedly "stolen documents," Opp. at 11 n.6, that they have possessed since 2006, Docket No. 42 at 45, and provided to the U.S. Attorney in September 2010. Therefore, far from wrongly denying its existence, defendants and their counsel, not to mention the government, plainly had knowledge and possession of the May 2003 letter this past fall and should have produced it no later than December 2010, when their initial discovery responses in this case were due by court order.

Discovery is not a game of hide-and-seek.  DC is being wrongfully deprived of important evidence.  We respectfully submit reconsideration is warranted.

## II.    THIS COURT SHOULD RECONSIDER ITS APRIL 11 RULINGS.

### A.    This Court Is Fully Empowered To Reconsider Its Prior Rulings In Light Of New Evidence.

As defendants' own cases confirm, "newly discovered evidence" is a proper ground for reconsideration.  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  The plain text of Local Rule 7-18 provides that "the emergence of

DC COMICS' REPLY IN SUPPORT OF
MOT. FOR RECONSIDERATION

new material facts" permits reconsideration, and many cases grant reconsideration on this basis. *E.g.*, *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162-63 (C.D. Cal. 2008); *see also Kennedy v. Lubar*, 273 F.3d 1293, 1299 & n.6 (10th Cir. 2001) ("availability of new evidence" is "grounds that justif[ies] reconsideration").

Defendants do not address these cases, many of which DC cited.  Rather, *each* of their citations involved motions for reconsideration based on evidence and arguments that were not new and were presented or should been presented before.[1] These cases are not relevant to the current motion, which is based on defendants' disclosure of the May 2003 letter some 50 days *after* argument on DC's motion and 7 days *after* the issuance of the Court's ruling that DC seeks to have reconsidered.

## B.    The Court's Prior Rulings Do Not Bar This Motion.

Judge Larson never directly addressed the privileged status of the July 2003 correspondence or the log entries encompassing it.  Docket No. 253 at 7-8.  Even if he had, this Court would not be not bound by such a ruling on a "law of the case" theory because the doctrine does *not* apply when new evidence, like the May letter, has emerged.  *E.g.*, *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697-98 (Fed. Cir. 2001) (new evidence reason to reject law-of the-case doctrine); *Daly v. Sprague*, 742 F.2d 896, 900 (5th Cir. 1984) (same).

---

[1] *See Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1133 (E.D. Cal. 2010) (defendants "do not, and cannot, argue that [evidence cited in reconsideration motion] was 'newly discovered'"); *McCoy v. Roe*, 234 Fed. Appx. 559, 560 (9th Cir. 2007) (plaintiff "merely restated the arguments and allegations made in support of his original motion and stated no grounds for reconsideration"); *Aventis Pharms. S A v. Amphastar Pharms., Inc.*, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) (reconsideration motion based on "failure by the court to consider material facts presented to it" rather than new evidence); *Hepler v. Wash. Mut. Bank, F.A.*, 2008 WL 4866285, at *1 (C.D. Cal. Oct. 28, 2008) (denying reconsideration motion based on failure to "set forth any new law or facts"); *Resolution Trust Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994) (while moving party "relie[d] somewhat on … [new] testimony," motion based on legal "arguments that should have been made at an earlier time").

DC COMICS' REPLY IN SUPPORT OF MOT. FOR RECONSIDERATION

1    Nor is Judge Wright's ruling—summarily denying DC's motion for review—

2 a bar.  Defendants have not identified a single authority limiting DC's ability to file

3 a motion for reconsideration following a motion for review.  Such a rule would

4 make no sense, because the two procedures address different circumstances and are

5 governed by different legal tests.  Motions for review are granted if a magistrate's

6 ruling is "clearly erroneous or contrary to law."  Docket No. 18 at 3.  Motions for

7 reconsideration present an easier test and turn on whether "new material facts"

8 justify reconsideration.  L.R. 7-18; *see Milton*, 568 F. Supp. 2d at 1162-63; *Intamin*,

9 623 F. Supp. 2d at 1068.  The two motions serve separate purposes:  one addresses

10 alleged clear errors of law and fact; the other considers the effect of *new* facts or

11 intervening changes in law.  Despite all the rhetoric and string cites to inapposite

12 cases, defendants offer no response to this basic—and essential—distinction.

13    It is equally wrong that granting DC's motion for reconsideration would

14 operate to "overrule" the District Court.  While DC raised the May 13 letter in its

15 motion for review (among other arguments), the District Court was *never* asked to

16 rule—and never did rule—whether the May 13 letter was grounds for this Court to

17 reconsider its April 11 ruling.  Because that is a separate question than the one DC

18 presented to the District Court, the law-of-the-case doctrine does not apply.  In

19 short, the District Court and this Court never were asked to consider the "same

20 issue."  *Arizona v. Calif.*, 460 U.S. 605, 618 (1983).  In any event, the discretionary

21 law-of-the-case doctrine does not trump a court's "inherent power to reconsider and

22 modify an interlocutory order any time prior to the entry of judgment."  *K.C.1986*

23 *Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007).

24    Moreover, it is impossible to know the reasons for the District Court's one-

25 word denial.  DC's motion for review fully disclosed it was filing this motion for

26 reconsideration, Docket No. 225 at 1 n.1, and defendants opposed the motion for

27 review on the ground, among others, that this Court was hearing a "simultaneous

28 motion for reconsideration," Docket No. 231 at 1:16.  The District Court's denial of

DC COMICS' REPLY IN SUPPORT OF
MOT. FOR RECONSIDERATION

1    DC's motion might well have been based on defendants' procedural argument and

2    the District Court's decision to defer to this Court, which is better positioned to

3    consider the impact of new evidence on its rulings.  *Cf. Rajaratnam v. Moyer*, 47

4    F.3d 922, 925 (7th Cir. 1995) (summary denial of motion for review "is much more

5    naturally read as the court's declination to review a matter that it had delegated for

6    final decision to the magistrate"); *Syles v. Anderson*, 625 F.3d 294 (6th Cir. 2010)

7    (declining to defer to district court where it "did not adequately give the reasons for

8    [its] denial").  Similarly, the District Court may have concluded this Court's April

9    11 order was not "clearly erroneous" based on the record evidence this Court

10    considered—*i.e.*, everything *but* the May 2003 letter, which just now emerged.

11        Granting DC's motion for reconsideration would in no way undermine Judge

12    Wright's ruling.  Defendants' cases do not hold otherwise, but stand for the general

13    principle that a magistrate has authority to make rulings only within the scope of its

14    reference.[2]  Here, the District Court made clear:  "*All discovery matters* have been

15    referred to a United States Magistrate Judge."  Docket No. 18 at 2 (emphasis

16    added).  This reference entitles this Court to reconsider rulings based on new

17    evidence.  Neither the Court's standing order, nor its one-word denial of DC's

18    motion, limits this authority.

19

20    _____

21        [2] *See Mathews v. Weber*, 423 U.S. 261, 263 (1976) (district court may refer Social Security cases to magistrate); *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 198

22    (9th Cir. 1974) (district court reference to magistrate to hold evidentiary hearing); *U.S. v. First Nat'l Bank*, 576 F.2d 852, 853-54 (10th Cir. 1978) (appellate court

23    lacks jurisdiction to review magistrate's order not appealed to district court); *Taylor v. Nat'l Group of Cos.*, 765 F. Supp.  411, 413-14 (N.D. Ohio 1990) (magistrate

24    lacks authority to review court's summary judgment rulings); *Parks By & Through Parks v. Collins*, 761 F.2d 1101, 1105 (5th Cir. 1985) (magistrate cannot set aside

25    default judgment entered by district court absent reference); *Chase Manhattan Bank N.A. v. Stapleton*, 2008 U.S. Dist. LEXIS 42655, at *5-8 (D.V.I. May 29, 2008)

26    (same); *FTC v. Namer*, 2007 U.S. App. LEXIS 24013, at *30 (5th Cir. Oct. 12, 2007) (magistrate cannot set aside order entered by district court and reviewed by

27    court of appeal); *Jackson v. Ashcroft*, 2002 U.S. Dist. LEXIS 15821, at *6 (N.D. Ill. Aug. 22, 2002) (magistrate declined to overrule discovery rulings of district judge).

28

DC COMICS' REPLY IN SUPPORT OF MOT. FOR RECONSIDERATION

**C.     Defendants' Efforts To Discredit The May Letter Are Unavailing.**

Though plainly matters for trial, not discovery, defendants challenge the relevance, admissibility, and probative value of the May 13 letter to seek to bar reconsideration.  Neither Rule 26 nor Local Rule 7-18 is so cramped, and the latter provides that any new, "material" evidence may form the basis for a reconsideration motion.  There is no admissibility-at-trial requirement in Rule 7-18, and defendants unsurprisingly cite no case or authority establishing one.

Defendants' attack on Mr. Siegel, asserting he "was but a small child when his parents divorced," "lived with his mother" as an adult, and "clearly felt 'out of the loop,' leading to insecurity and dramatic speculation," Opp. at 9:24-25, 9:27-28, is therefore wholly immaterial to the resolution of this motion.  If anything, these assertions—coming after Mr. Siegel's death and after he could be deposed concerning his letter—only underscore DC's entitlement to Ms. Siegel's July 2003 letter and all related evidence, in order to refute defendants' positions at trial.

Finally, although it will be the province of Judge Wright to decide, the May 13 letter is both admissible and probative of DC's claims.  The letter plainly supports DC's allegations that Mr. Toberoff used false promises of a "billionaire investor" and movie-production deal to induce the Siegels to cut ties with DC. Docket No. 49 ¶¶ 7-8, 66-85.  Defendants mischaracterize the "billionaire investor" offer as aimed at Mr. Siegel alone, but the letter's plain language refers to "*all members of the Siegel interest*" and concludes:  "When you [*i.e.*, Ms. Larson] signed with Marc the billionaire investor invested elsewhere."  Docket No. 267-10 at 189.  The letter contains admissible party admissions by Mr. Toberoff.  FED. R. EVID. 801(d)(2).  In addition, it is relevant both for non-hearsay purposes (*e.g.*, to show Ms. Larson was put on notice of these claims of wrongdoing and did not dispute them, *e.g., id.* 801(c); *id.*, Advisory Comm. Note (statement "not hearsay" if offered for "fact that it was made"); *U.S. v. Gibson*, 690 F.2d 697, 700-01 (9th Cir. 1982) (statements offered to prove scheme not hearsay)), and under several hearsay

DC COMICS' REPLY IN SUPPORT OF
MOT. FOR RECONSIDERATION

1   exceptions, particularly given when and how it emerged, *e.g.*, FED. R. EVID. 803(3),

2   803(21), 807.  Finally, the letter can be used to propound discovery and examine

3   witnesses during depositions, and should have been produced by defendants, for

4   these reasons alone, years ago.[3]

5       **D.   Defendants Should Be Ordered To Produce All July 2003**

6           **Correspondence Involving Mr. Siegel And Update Their Logs.**

7           In all the meet-and-confer letters and motion practice on this issue,

8   defendants and their counsel have never definitively stated—much less attested

9   under oath—that the "July 11, 2003, letter" (or something like it) from Ms. Larson

10  to Mr. Siegel does not exist.  This Court called defendants' statements regarding

11  this letter, in the last round of motion practice, "cryptic," Docket No. 209 at 11, and

12  given the emergence of the May 2003 letter, the Court should order defendants to

13  produce any such correspondence.  The Court should also review *in camera* the

14  documents listed at defendants' privilege log entries 715 and 716.  If, as it appears,

15  these documents are not privileged—and we see no way a letter from Ms. Siegel to

16  her brother could be privileged—that is only more reason, in addition to the

17

18      [3] Defendants' other misguided arguments, including that DC "identified the

19  [billionaire] 'investor' as Mr. Emanuel," Opp. at 9:11-12, are also wrong.  The

20  Timeline and May 13 letter show Mr. Toberoff told Ms. Siegel, her mother, and her brother about an unnamed "billionaire investor," other than Mr. Emanuel.  *E.g.*,

21  Docket No. 49 ¶¶ 7-8, 66-85; *id.* Ex. A 63 ("MT tells Marks that he *and Emanuel have a billionaire* ready to offer $15 million"); *id.* at 64 ("MT then tells Joanne and

22  Laura that his *mysterious billionaire* has decided to invest elsewhere"); *id.* at 67 ("MT admits to Laura Siegel that there never was a billionaire"); Docket No. 267-

23  10 at 189 ("Marc had a *mysterious billionaire*"; referring separately to Emanuel).

24      Equally disturbing—and contradicted by their own prior discovery responses— is defendants' claim that, as of "May 9, 2002," the Siegels' negotiations with DC

25  "were moribund" and thus DC's prospective economic advantage was "at an end" before Mr. Toberoff intervened.  Opp. at 8:3-10.  In 2006 discovery responses in

26  *Siegel*, the Siegels expressly denied they had "terminated negotiations" with DC as of May 9, 2002.  Docket Nos. 182-39 RFA 85 at 675; Docket Nos. 49 ¶¶ 75-85;

27  184 at 6-8.  *Compare also* Opp. at 10, *with* Docket No. 185 at 5-6 (refuting Mr. Toberoff's claim he did not hold a copyright interest in the Shusters' rights;

28  showing how Pacific Pictures agreements assigned his company the rights).

- 7 -

1  emergence of the May 13 letter, to require defendants to provide more informative

2  privilege logs.

3        Likewise, as to the "July 5, 2003, letter" from Ms. Larson to Mr. Siegel

4  specifically identified in the Toberoff Timeline *and* not listed on any privilege log,

5  *cf.* Docket No. 162-6 at 427 (Privilege Log Entry 712—July 5, 2003, facsimile

6  from Laura Siegel to Marc Toberoff), defendants still refuse to provide any

7  information about the document, including:  Do the Siegels or their agents have

8  letters or drafts of letters from Ms. Larson to her brother in response to his May 13

9  letter?  If so, where are they?  If not, did they exist and were they destroyed?

10 Again, defendants are vague, saying only the July 5 letter disclosed in the Timeline

11 "does not exist *as described*."  Opp. at 11:17, 13:2-3 (emphasis added).  Defendants

12 should not be allowed to hedge their responses, especially given their false

13 assertions that the May 13 letter was "non-existent."  *Supra* at 1-2; Docket No. 253-

14 6 at 21 ("DC's overzealous quest to find *non-existent* documents based on frivolous

15 allegations in an anonymous incoherent 'hit piece' is unworthy of DC and its

16 counsel.") (italics added).

17 **III.    CONCLUSION**

18        DC's motion for reconsideration should be granted.

19 Dated:        June 6, 2011              Respectfully Submitted,
                                          O'MELVENY & MYERS LLP
20
                                          By:  /s/ Daniel M. Petrocelli
21                                              Daniel M. Petrocelli
                                          Attorneys for Plaintiff DC Comics
22 CC1:851006

23

24

25

26

27

28