DANIEL M. PETROCELLI (S.B. # 097802)
   dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. # 211640)
   mkline@omm.com
CASSANDRA L. SETO (S.B. # 246608)
   cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
   pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>              Plaintiff,<br><br>     v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, as personal representative of the ESTATE OF JOANNE SIEGEL, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DC COMICS' MOTION TO COMPEL THE FURTHER PRODUCTION OF DOCUMENTS (ISSUES 12-14)**<br><br>**Judge**:         Hon. Otis D. Wright II<br>**Magistrate**:   Hon. Ralph Zarefsky<br><br>**Hearing Date**:          June 20, 2011<br>**Hearing Time**:          10:00 a.m.<br>**Courtroom**:              540<br>**Discovery Cutoff**:     None Set<br>**Pretrial Conference**: None Set<br>**Trial**:                         None Set |

Defendants' opposition is more a rhetorical tirade against DC and its legal claims than a response to the pending motion. DC addressed defendants' SLAPP and Rule 12 arguments in its oppositions to those motions, Docket Nos. 181-82, 184-86, and Judge Wright has just ordered the parties to file new opposition and reply briefs on these motions starting in August—*after* DC has had the opportunity to take depositions and obtain other discovery, Docket No. 270. Now is not the time to litigate these SLAPP and Rule 12 issues, so DC will confine this brief to those few arguments in defendants' opposition that actually respond to DC's motion. DC also directs the Court to its contemporaneously filed reply brief in support of its motion for reconsideration ("MFR Reply"), in which common issues, such as defendants' attack on Michael Siegel and his May 13 letter, are addressed.

**I.     Issue 12: Defendants Should Be Ordered To Produce The November 2, 2002, Letter And To Conduct A Thorough Search Of The Files In Their Possession, Custody, And Control For *All* Responsive Documents.**

Defendants' assurances that they have fully complied with their discovery obligations and produced all responsive documents cannot be credited. Defendants offer no excuse—none—for their failure to produce the May 13, 2003, letter to DC. Instead, they now admit the May letter was among the documents "enclosed" with the Toberoff Timeline, Docket No. 269 at 11 n.6—meaning the letter was in defendants' files since *at least 2006*, when a copy of the Timeline and its enclosures were sent to Mr. Toberoff, Docket No. 42 at 45.[1]

Defendants also do not dispute the May 2003 letter was responsive to DC's requests in this case. They do not dispute they submitted the very same document

---

[1] Defendants also do not deny the May 2003 letter was responsive to document requests in *Siegel*, and offer no excuse why they failed to produce it there. Indeed, in May 2007, this Court ordered Mr. Toberoff to eliminate the "wiggle room" in defendants' privilege logs, and submit a sworn declaration itemizing which of the Timeline enclosures had been produced or withheld on privilege grounds. Docket No. 42 at 49-51. Mr. Toberoff's May 21, 2007 declaration makes *no mention* of the May 13, 2003 letter. Docket No. 42-14 at 194-206. Nor did defendants produce the May letter in 2007—even though they clearly possessed it then, and were under court order to go through all of the Timeline documents once again.

1  to the U.S. Attorney's office just months before responding to DC's requests.  They
2  do not dispute they waived all objections other than privilege in agreeing to a *court*
3  *order* setting December 7, 2010, as the date for production.  And they do not
4  dispute that, in the course of the parties' meet-and-confer exchanges, DC repeatedly
5  and specifically requested that defendants produce the May 13, 2003 document.

6        Defendants try to sweep all this away, saying they produced the May 2003
7  document as soon as this Court ordered them to do so.  Docket No. 267-1 at 24-25.
8  But this belated act of compliance means little.  Defendants violated *two court*
9  *orders* in failing to produce the document in 2007 and 2010.  And when DC said it
10  was going to file a motion demanding production of the May 2003 letter,
11  defendants represented to DC the document was "non-existent" and chastised DC
12  for acting in an "unworthy" manner in demanding its production.  MTR Reply at 1-
13  2.  While defendants now claim they never asserted the May 2003 document did not
14  exist, Docket No. 267-1 at 24:25-27, Mr. Toberoff said *precisely the opposite* in his
15  January 8, 2011, letter, MTR Reply at 1-2; Docket No. 253-6 at 21 ("DC's
16  overzealous quest to find non-existent documents based on frivolous allegations in
17  an anonymous incoherent 'hit piece' is unworthy of DC and its counsel.").  When
18  DC filed its motion seeking the May 2003 document and the Court heard argument,
19  defendants still *never* disclosed that the letter existed.  *Cf.* Docket Nos. 160 & 177.

20        This should not be allowed.  The May 2003 letter—from Michael Siegel to
21  his sister, Laura—openly discloses a November 2, 2002, letter from Ms. Larson to
22  which Mr. Siegel responds.  That November 2 letter has never been produced.  All
23  that Mr. Toberoff will attest about the letter is that, "I caused my office to re-check
24  our relevant case files," and the November 2 letter "was not located."  Docket No.
25  267-16 ¶ 4.  He offers no details or further explanation, such as who in his office
26  checked the files, what "our relevant case files" encompasses, what sort of search
27  method was used, or how much time was spent conducting the search.  Moreover,
28  he makes no representation that Ms. Larson was asked to check her own or her late

1   mother's files (even though the discovery requests are directed at them), or that the
2   files of Michael Siegel and Don Bulson were reviewed (even though defendants'
3   privilege logs disclose that Mr. Toberoff now possesses them, Docket No. 163-17).
4   Importantly, there is no declaration from Ms. Larson denying she sent such a letter,
5   nor one from Mr. Toberoff or other counsel saying they never saw one.

6       All that Mr. Toberoff's declaration reveals is that yet another letter—a
7   November 1, 2002, letter—was also never produced, even though it was responsive
8   to document requests in this case and *Siegel*. Docket No. 267-16 ¶¶ 4-5. And his
9   declaration notably offers no explanation why the November 1 letter was not
10  produced or any assurance that based on the discovery of this un-produced letter,
11  defendants have undertaken efforts to ensure that their productions are complete.

12      DC's proposed order on Issue Number 12 should be granted, and defendants
13  should be ordered to produce the November 2 letter or provide a clear accounting of
14  why it no longer exists. They should also be ordered to search all their files for all
15  other responsive documents yet to be produced.

16  **II.      Issue 13: An Unredacted Copy Of The May Letter Must Be Produced.**

17      Defendants bear the burden of establishing privilege. Docket No. 160 at 23.
18  Mr. Toberoff's declaration does nothing to meet this burden and does not reveal
19  who made the allegedly privileged notes on the May 13 letter defendants redacted,
20  or when these notes were made, why, in what circumstances, or what efforts were
21  taken to make sure the privilege was maintained. *Cf. id.*; Docket No. 267-16. Mr.
22  Toberoff refused to disclose these details in our conferences as well. *Id*. No. 267-2.

23      This failure of proof is reason alone to order defendants to produce an
24  unredacted copy of the May 2003 letter. In addition, defendants waived any right
25  to claim privilege by failing to produce it in 2007 and 2010, when they were
26  required by two court orders to do so. Defendants now assert that internal attorney
27  marginalia on documents need not be logged as redacted, but no part of the parties'
28  stipulation regarding privilege protocols allowed defendants to withhold the non-

privileged May 2003 letter or redact marginalia of an attorney they cannot identify.

Most telling is defendants' conspicuous failure to address DC's concern that defendants are withholding still other documents because an "attorney" wrote notes on them. To eliminate this possibility, DC's proposed order on Issues 12 and 13 should be granted. Equally troubling is the fact that the version of the May 2003 document that defendants produced does *not* bear the "Q" Bates Stamps of the escrow agent who maintained the Timeline documents. *Compare* Docket No. 225-4 at 3-4 (May 13 letter), *with* No. 163-15 at 618 ("Q" stamp). While defendants insist only "marginalia" and "underlining" were redacted, Docket No. 267-1 at 26:6-9, it appears the Bates Stamp was also removed.

### III. Issue 14: Unredacted Copies Of The Shuster And Siegel Retainer Agreements Should Be Reviewed *In Camera* And/Or Produced To DC.

Despite requests from DC for specifics during our discussions, defendants disclosed virtually none of the factual claims they now make in their briefing on Issue No. 14—*e.g.*, what Mr. Ruttenberg did when he disclosed the Siegel contracts in probate court, what subject matters the redacted paragraphs address, and to what extent the agreements tracked *Rutter*. This has been defendants' practice throughout, and it is inconsistent with their obligations to meet and confer in good faith with DC. In any event, defendants' new disclosures do not shield unredacted copies of the retainer agreements from *in camera* inspection or production.

First, nowhere in defendants' brief or Mr. Toberoff's declaration is it denied that *Mr. Toberoff* had an agreement with the heirs that restricts their freedom and ability to enter into agreements with DC or settle their claims. Such agreements violate DC's rights, Docket No. 267-1 at 16, and courts closely scrutinize business transactions between lawyers and clients, *e.g., Fair v. Bakhtiari*, 2011 WL 1991999 (Cal. Ct. App. May 24, 2011). While Mr. Toberoff says the redacted sections concern "potential litigation outcomes" and claims that no Shuster-Siegel lock-up exists, Docket No. 267-1 at 27:25-26, 28:15-22, he is silent as to whether those

- 4 - SUPPL. MEMO ISO DC'S MOT. TO COMPEL (ISSUES 12-14)

contracts contain a lock-up agreement benefitting him—something DC is entitled to know and requested in its motion. A lock-up agreement would not be surprising here, given that Mr. Toberoff placed one in each business contract he had the heirs sign. *Compare*, *e.g.*, Docket No. 184 at 4-8, *with Fair*, 2011 WL 1991999, at 10-12 (condemning lawyer's contract giving him 50% interest in client's profits).

      Second, defendants offer no justification for redacting numerous paragraph headings, which do not convey legal advice and are not privileged, or for their page-after-page, block redactions that are not limited to legal advice. Absent explanation, defendants' redactions cannot be made with such a heavy pen.[2]

      Third, defendants waived any claim of confidentiality in the Siegel contracts through their actions in the probate court. While they posit an artificial distinction between lodging and filing such documents, they admit they *voluntarily* disclosed the contracts in unredacted form—not in response to any court order, or as part of any duly noticed motion that the documents be kept confidential. This is waiver.[3]

**IV. Conclusion**

      DC's motion should be granted.

---

[2] While defendants assert their retainer agreements differ from *Rutter*, Docket No. 267-1 at 27:27-28:11, the content is largely the same and only the paragraph headings appear to differ. *Compare*, *e.g.*, *id.* at 32 ¶ 5 ("Negotiability of Fees"), *with* 267-10 at 192 ¶ 5 ("Legal Fees" paragraph noting fees "are negotiable … and have been negotiated by Client with the Firm"); 267-1 at 33 ¶ 8 ("Monthly Billing Statements"), *with* 267-10 at 195 ¶ 8 ("Payment and Notices" paragraph noting firm will provide "[a] statement … including … itemized Costs"); 267-1 at 35 ¶ 16 ("Choice of Law"), *with* 267-10 at 196 ¶ 11 ("Miscellaneous" paragraph noting "Agreement shall be governed by the Laws of the State of California"); 267-1 at 35 ¶ 17 ("Entire Agreement"), *with* 267-10 at 196 ¶ 11 ("Miscellaneous" paragraph noting "Agreement contains the full understanding of the parties").

[3] *Cf.* CAL. EVID. CODE § 912 (privilege waived if holder, "*without coercion*, has disclosed a significant part of the communication") (emphasis added); *In re Visaxis' Estate*, 95 Cal. App. 617, 624 (1928) ("one who might otherwise object on the ground of privilege is estopped to do so when he has introduced evidence which discloses the very intelligence which he claims is privileged"). Defendants cite no support for their claim that the return of the unredacted retainer agreements cured their waiver. *Cf. Hollywood v. Super. Ct.*, 43 Cal. 4th 721, 735 n.8 (2008) (once privilege waived, "the bell has been rung").

1 | Dated: June 6, 2011 | Respectfully Submitted,
  |                     | O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics

CC1:850804