Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED TO THE UNITED STATES ATTORNEY'S OFFICE PURSUANT TO A GRAND JURY SUBPOENA FOR CRIMINAL INVESTIGATION**<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:      July 11, 2011<br>Time:      1:30 p.m.<br>Place:     Courtroom 11 |

1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (State Bar No. 90072)
2    *rkendall@kbkfirm.com*
   Laura W. Brill (State Bar No. 195889)
3    *lbrill@kbkfirm.com*
   Nicholas F. Daum (State Bar No. 236155)
4    *ndaum@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California  90067
   Telephone:   (310) 556-2700
6  Facsimile:   (310)556-2705

7  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
8  Worldwide, LLC, and IPW, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING
PRIVILEGE ON STOLEN DOCUMENTS TURNED OVER TO THE UNITED STATES
ATTORNEY'S OFFICE PURSUANT TO A GRANT JURY SUBPOENA

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 11, 2011 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Marc Toberoff, Mark Warren Peary, Jean Adele Peavy and Laura Siegel Larson will and hereby do move this court for review of Magistrate Judge Zarefsky's May 25, 2011 order ("May 25 Order") that found a waiver of privilege on documents, stolen from the law offices of defendants' counsel, that were provided to the United States Attorney's Office as part of its criminal investigation into the theft of such documents.  Docket No. 262 at 4.[1]  Such stolen documents were produced pursuant to a Grand Jury subpoena and an express agreement with the government that the documents were subject to a joint interest/prosecution privilege and that to maintain the privilege, which was never intended to be waived, the documents would be held as strictly confidential and then returned to defendants' counsel.

The documents were provided to the government in an effort to enforce the privacy interests in privileged communications that the thief had invaded in violation of law.  The May 25 Order requiring the documents' disclosure has the inverse, pro-criminal result of accomplishing the very purpose of the theft, *i.e.*, to eliminate the privilege and privacy protection that is a foundational principle of our system of justice and legal representation.

The May 25 Order acknowledged "the absence of controlling authority from the Ninth Circuit," that a policy wherein privilege was not waived "has much to recommend it," that the result of the order could be that "perpetrator[s] go[] free," and that the waiver cases relied on by DC "do not deal with victims of crime."  *Id.* at 3.  The May 25 Order nonetheless held that privilege had been waived for all the

---

[1] Although the motion was directed at Mr. Toberoff, Defendants Mark Warren Peary, Jean Adele Peavy and Laura Siegel Larson hold the privilege in the documents at issue and are the real parties in interest.

1

NOTICE OF MOTION & MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

privileged stolen documents.  *Id.*  However, Magistrate Judge Zarefsky judiciously recognized the importance of this issue of first impression, stayed his ruling and invited further review.  *Id.* at 4.

Numerous cases show why the "waiver" rule adopted by the May 25 Order is inappropriate, especially where the case involves the *victims* of a crime, there is a confidentiality agreement and where documents are produced pursuant to a Grand Jury subpoena.  *In re Steinhardt Partners L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 1, 2011.  This motion is based on the attached memorandum of points and authorities, the pleadings and records on file in this action, such additional authority and argument as may be presented in any reply and at the hearing on this motion, and such other matters of which this Court may take judicial notice.


Dated:  June 7, 2011          RESPECTFULLY SUBMITTED,


                              /s/ Marc Toberoff
                              Marc Toberoff

                              TOBEROFF & ASSOCIATES, P.C.
                              Attorneys for Defendants Mark Warren Peary, as
                              personal representative of the Estate of Joseph
                              Shuster, Jean Adele Peavy, and Laura Siegel Larson,
                              individually and as personal representative of the
                              Estate of Joanne Siegel

                              /s/ Laura W. Brill
                              Laura W. Brill

                              KENDALL BRILL & KLIEGER LLP
                              Attorneys for Defendants Marc Toberoff,  Pacific
                              Pictures Corporation, IP Worldwide, LLC, and IPW,
                              LLC

NOTICE OF MOTION & MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................1

BACKGROUND ...........................................................................................5

    A.    The Theft of Privileged Documents from Toberoff &
Associates ..............................................................................5

    B.    The Criminal Investigation ..................................................6

    C.    DC's Motion to Compel and the May 25 Order ..............................8

ARGUMENT ..............................................................................................9

    I.    The May 25 Order Erred in Finding "No Important
Distinction" Between Disclosure to Law Enforcement
Authorities By an Alleged Criminal And By the Victim of a
Privacy Crime ...........................................................................9

    II.    The May 25 Order Misapplied Out-of-Circuit Law to Reach
Its Erroneous Conclusion .................................................11

        A.    Privilege Is Preserved When Disclosures to the
Government Are Made Pursuant to an Agreement to
Maintain Privilege ...............................................13

        B.    The May 25 Order Erred in Finding an Express
Voluntary Waiver of Privilege Rather Than an
Involuntary Limited Waiver ...............................................15

        C.    The Ninth Circuit Has Refused to Adopt DC's
"Waiver" Theory, and the Eighth Circuit Has Expressly
Rebuffed It ...............................................15

    III.    The May 25 Order Failed to Recognize the Common Interest
Shared By Defendants and the Government ...............................16

CONCLUSION ...........................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                          **Pages**

*Anderson v. Torrington Company*,
120 F.R.D. 82 (N.D. Ind. 1987) ........................................................................17

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ................................................................ 4, 15-16

*Burroughs v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) ........................................................ 8, 17-18

*Diversified Industries, Inc. v. Meredith*,
572 F.2d 59 (8th Cir. 1978) ..............................................................................16

*E.E.O.C. v. Chemtech Intern. Corp.*,
1995 U.S. Dist. LEXIS 21877 (S.D. Tex. 1995) ............................................18

*Fossyl v. Watson*,
2006 U.S. Dist. LEXIS 98406 (S.D. Ohio Sept. 5, 2006) ..............................14

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
115 F.R.D. 308 (N.D. Cal. 1987) ............................................................. 11-12

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
293 F.3d 289 (6th Cir. 2002) ............................................................................12

*In re Grand Jury Proceedings*,
851 F.2d 860 (6th Cir. 1988) ............................................................................14

*In re Grand Jury Subpoenas*,
902 F.2d 244 (4th Cir. 1990) ............................................................................17

*In re Qwest Comms. Int'l*,
450 F.3d 1179 (10th Cir. 2006) ........................................................................12

*In re Leslie Fay Companies, Inc. Sec. Litig.*,
161 F.R.D. 274 (S.D.N.Y. 1995) ......................................................................13

*In re LTV Securities Litigation*,
89 F.R.D. 595 (N.D. Tex. 1981) .......................................................................17

*In re Steinhardt Partners L.P.*,
9 F.3d 230 (2d Cir. 1993) ....................................................................4, 13, 16

*In re Subpoenas Duces Tecum*,
738 F.2d 1367 (D.C. Cir. 1984) ........................................................................15

*Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*,
161 B.R. 689 (D. Colo. 1993) .................................................................. 10-11, 13

*KL Group v. Case, Kay & Lynch*,
829 F.2d 909 (9th Cir. 1987) ............................................................................15

*Maruzen Co. v. HSBC USA, Inc.*,
2002 U.S. Dist. LEXIS 13288 (S.D.N.Y. 2002)................................................10

*Permian Corp. v. United States*,
665 F.2d 1214 (D.C. Cir. 1981) ........................................................................12

*Picard Chemical, Inc. v. Perrigo Co.*,
951 F. Supp. 679 (W.D. Mich. 1996) ................................................................14

*Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley, L.L.P.*,
1997 U.S. Dist. LEXIS 269 (D.D.C. Jan. 13, 1997)..........................................15

*Police & Fire Ret. Sys. v. Safenet, Inc.*,
2010 U.S. Dist. LEXIS 23196 (S.D.N.Y. Mar. 11, 2010)..................................13

*Pritchard-Keang Nam Corp. v. Jaworski*,
751 F.2d 277 (8th Cir. 1984) ............................................................................16

*SEC v. Amster & Co.*,
126 F.R.D. 28 (S.D.N.Y. 1989) ........................................................................13

*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
795 F. Supp. 329 (C.D. Cal. 1992) ............................................................4, 8, 17

*Schnell v. Schnall*,
550 F. Supp. 650 (S.D.N.Y. 1982) ....................................................................11

*Sidari v. Orleans County*,
2000 U.S. Dist. LEXIS 15126 (W.D.N.Y. Oct. 3, 2000) ...................................15

*Swidler & Berlin v. United States*,
524 U.S. 399 (1998).............................................................................................9

*Teachers Insurance and Annuity Association of America v. Shamrock
Broadcasting Co.*,
521 F. Supp. 638 (S.D.N.Y. 1981) ....................................................................13

*United States v. Bay State Ambulance & Hosp. Rental Serv.*,
874 F.2d 20 (1st Cir. 1989)................................................................................17

*United States v. Bergonzi*,
403 F.3d 1048 (9th Cir. 2005) ......................................................................4, 16

*United States v. Cisco Sys.*,
2011 U.S. Dist. LEXIS 30902 (E.D. Ark. Mar. 15, 2011) .................................18

*United States v. Gumbaytay*,
2011 U.S. Dist. LEXIS 47142 (M.D. Ala. Jan. 19, 2011)..................................18

*United States v. Massachusetts Institute of Technology*,
129 F.3d 681 (1st Cir. 1997)..............................................................................12

*United States v. Reyes*,
239 F.R.D. 591 (N.D. Cal. 2006)........................................................................12

*United States v. Shyres*,
898 F.2d 647 (8th Cir.) ........................................................................14

*Westinghouse Electric Corporation v. The Republic of the Philippines*,
951 F.2d 1414 (3d Cir. 1991) ...............................................................12

**Federal Statutes and Rules**

Federal Rule of Evidence 502(e) .........................................................14

Fed. R. Crim. P 6(e)(2) ........................................................................14

Fed. R. Crim. P. 16(a)(2) .....................................................................11

**State Cases**

*American Mutual Liability Ins. Co. v. Superior Court*,
38 Cal.App.3d 579 (1974) ....................................................................15

*McKesson HBOC, Inc. v. Superior Court*,
115 Cal. App. 4th 1229 (2004) ............................................................12

*Mitchell v. Superior Court*,
37 Cal. 3d 591 (1984) ..........................................................................10

*People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
20 Cal. 4th 1135 (1999) ....................................................................9-10

*Regents of Univ. of Cal. v. Superior Court*,
165 Cal. App. 4th 672 (2008) .............................................................14

**Other Authorities**

Letter from the Committee on Rules and Practice and Procedure of the
Judicial Conference of the United States to the Committee on the Judiciary
of the U.S. Senate and House of Representatives dated Sept. 26, 2007 ...........14

Minutes of Advisory Committee on Evidence Rules Meeting (April 12-13,
2007) .................................................................................................14

# **INTRODUCTION**

This motion seeks review of Magistrate Judge Zarefsky's May 25, 2011 order (Docket No. 262; "May 25 Order").[2]  The May 25 Order held that defendants waived privilege on numerous attorney-client communications stolen from their counsel's law firm by producing such documents to the United States Attorney's Office ("USAO"), which was investigating the theft, pursuant to a Grand Jury subpoena and a confidentiality agreement with the USAO.  The May 25 Order should be reversed as an unprecedented expansion of the waiver doctrine to victims of crime that will seriously impair criminal investigations and chill cooperation with law enforcement.  The May 25 Order acknowledged that there was no controlling Ninth Circuit authority and no support in any federal case that addressed analogous facts and such alleged waiver by the victim of a crime.  Recognizing the importance and unprecedented nature of the ruling, Magistrate Judge Zarefsky judiciously stayed his own order and invited further review.  Docket No. 262 at 4.

This motion thus seeks such review.  The question presented is as follows: When an attorney is the victim of theft of privileged material from his law office, may he provide copies of that privileged material to law enforcement authorities who are investigating the crime, pursuant to a grand jury subpoena and subject to an express agreement with the government that the documents will remain confidential and be protected by a common interest privilege, without waiving the very attorney-client privilege as to third parties that the government's investigation is aimed at protecting?  In a fair and rational system of justice and law enforcement, the answer to this question must be yes.

On May 14, 2010, plaintiff DC Comics ("DC") initiated this retaliatory lawsuit against its long-time opposing counsel, Marc Toberoff, who had successfully represented the heirs of Superman's co-creators (Jerry Siegel and Joe Shuster) in

---

[2] For the Court's convenience, the May 25 Order, as well as certain key exhibits and documents filed in connection with the original motion, have been re-submitted with this motion as exhibits to the Declaration of Keith Adams ("Adams Decl.").

1

exercising their termination rights under the Copyright Act, and who had vindicated the Siegel copyrights through years of hard-fought litigation in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx) ("*Siegel*").  In this classic SLAPP suit, DC sued Mr. Toberoff, and his clients, Laura Siegel Larson and Mark Warren Peary/Jean Adele Peavy, heirs to Jerry Siegel and Joe Shuster, respectively.

In the midst of *Siegel,* Mr. Toberoff and defendants were victimized by a theft of reams of privileged documents stolen from Mr. Toberoff's law firm by a rogue attorney employed at the firm, who delivered them directly to their litigation adversaries at DC through its parent, Warner Bros. Entertainment Inc. (the "Stolen Documents").  From the outset, even in the *Siegel* case, DC and Warner have persistently tried to leverage this outrageous theft and to use the Stolen Documents for their own benefit in these lawsuits.

The theft from Mr. Toberoff's law firm obviously resulted in an *involuntary* disclosure of privileged material.  To investigate the crime, the USAO informed Mr. Toberoff that it needed to view copies of the privileged material.  To avoid any further invasion of the privilege, the government agreed that the material would be maintained as strictly privileged and confidential, and a Grand Jury subpoena was issued such that production of the documents was pursuant to process, rather than voluntary.  Based on this confidentiality agreement, the subpoena, the parties' joint interest in investigating the theft, and the government's representation that it could not investigate the crime without viewing the stolen material, Mr. Toberoff provided the Stolen Documents to the government.

DC contended first that there was no agreement with the government to maintain the documents as confidential.  That argument was flatly contradicted by the facts, however, and Magistrate Judge Zarefsky adopted no such finding.  DC's fall-back position was that the mere act of sharing the privileged material with law enforcement officials waives the attorney-client privilege as to the entire world, regardless of any understanding to the contrary.  In other words, DC contended that a

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

victim of a privacy crime cannot provide law enforcement with confidential information necessary to *investigate* such crime without *accomplishing the very object* of the illegal activity – the dissemination of privileged communications. Acknowledging that the result of such a ruling could well be that the "perpetrator goes free," and without any controlling authority compelling such a counter-intuitive, anti-law enforcement result, the May 25 Order accepted DC's argument.  There was no basis in law or reason to do so.

*First,* the May 25 Order was based on inapplicable out-of-circuit decisions where the ***targets*** of criminal investigation were found to have waived privilege when they attempted to use privileged documents as both a sword and a shield.  Most commonly, these cases arise when a corporation is being investigated by the government, and offers to provide privileged material as a means of obtaining better treatment from prosecutors or regulators.  These cases have nothing to do with the situation here, where the ***victims*** of a crime cooperated with the USAO as a mandatory prerequisite for a criminal investigation and the criminal investigation sought to protect the right of privacy.  Nonetheless, the May 25 Order found "no important distinction" between the public interest in prosecuting crime and an alleged criminal's interest in avoiding prosecution.  Docket No. 262 at 3.

The distinction, however, could not be more clear.  *The initial disclosure of the privileged material was entirely involuntary as it was the result of a theft.*  Mr. Toberoff clearly sought to further the privacy and privilege interests of his clients in cooperating with law enforcement, not to compromise them.  The government had the same objective.  No sound principle of justice, nor any case from any federal court before the May 25 Order, requires a victim to choose between foregoing the assistance of law enforcement entirely or waiving the very privacy protections that the criminal sought to invade.  Such a ruling is especially unwarranted within the Ninth Circuit, which has repeatedly refused to adopt a broad waiver doctrine even when those seeking to protect the privilege were parties accused of crimes, rather

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

than their victims.  *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003).  The weight of the caselaw on involuntary waiver from other circuits looks *precisely* at the context of the disclosure to the government and the efforts taken to maintain the material as privileged on a case-by-case basis, something the May 25 Order failed to do. *See In re Steinhardt Partners L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

    **Second,** the May 25 Order found that "[w]hile a grand jury subpoena is in fact an order," to preserve the privilege Defendants would have had to force the USAO to move to compel the documents.  Docket No. 262 at 2-3.  This would be untenable for the victims of such a theft of privileged material:  Either the government would be successful in a motion to compel, meaning the documents were not privileged (indisputably not true here), or the motion to compel would not succeed, in which case the material would not be shared with the government, and an investigation could not move forward.  Defendants cannot be faulted for not insisting that the USAO, in investigating a crime against Defendants, litigate a motion to compel that would have either prevented the criminal investigation or mooted it by holding the documents to be non-privileged.

    **Third**, the Court ignored the fact that the USAO recognized a common interest with Defendants in prosecuting the theft (*see* Adams Decl., Ex. F, ¶ 7), that circuit courts have squarely held that "the disclosing party and the government may share a common interest in developing legal theories and analyzing information" (*In re Steinhardt Partners L.P.*, 9 F.3d at 236), and that district courts have often found a joint interest between the government and private parties investigating the same conduct.  *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992).  The May 25 Order cited no authority in support of its conclusion that, as a matter of law, a victim and the government cannot invoke the common interest privilege even if, as here, the documents are provided pursuant to an agreement that they share such an interest and the government and victim in fact have

4

1 "an interest in seeing the theft prosecuted."  Docket No. 262 at 3.

2     The May 25 Order is an unprecedented ruling that could have a broad, pro-

3 criminal effect and seriously hamstring law enforcement's ability to investigate and

4 prosecute crime.  Under the rationale of the May 25 Order, every victim of the theft

5 of privileged or confidential material, be it an attorney-client communications, a trade

6 secret, a bank record, national security documents, or internal judicial records, would

7 risk waiving such protection simply by cooperating and sharing such material with

8 law enforcement authorities to vindicate their privacy interests.  No court has found a

9 privilege waiver by a victim of crime, in even a remotely analogous situation, and

10 this Court should not be the first.

11                              **BACKGROUND**

12     **A.    The Theft of Privileged Documents from Toberoff & Associates**

13     On July 18, 2005, Mr. Toberoff's law firm was approached by a young

14 attorney named David Michaels ("Michaels") who offered to work at the firm for

15 very low pay, and was hired as its most junior attorney.  *See* Adams Decl., Ex. D at 5.

16 Michaels had access to attorney-client privileged material relating to the *Siegel* case,

17 Joanne Siegel, Laura Siegel Larson, Jean Adele Peavy, Mark Warren Peary, and

18 other clients of Mr. Toberoff.  In mid-October 2005, after just three months, and

19 without any incident or warning, Michaels left in the middle of a work day and never

20 returned; numerous concerned calls to Michaels went unanswered.  *Id.*  In November-

21 December 2005, Michaels contacted the Siegels.  He had documents surreptitiously

22 stolen from Mr. Toberoff's files, and attempted to divert the Siegels to another firm,

23 with him as their attorney, by accusing Mr. Toberoff of purported unethical conduct,

24 like allegedly charging the Siegels "unconscionable fees."  *Id.* at 6.  In December

25 2005, the Siegels rejected Michaels' overtures.  *Id.*

26     In July 2006, Warner Bros. divulged that three copies of an anonymous

27 defamatory "Timeline," each enclosing a large package of privileged documents

28 stolen from Mr. Toberoff's law firm's files (the Stolen Documents), had earlier been

received by three high-level Warner executives, including its General Counsel.  *Id.* at
6-7.  The ranting Timeline, written as a hit-piece against Mr. Toberoff, stated
"consider this an early Holiday present."  Docket No. 54, Ex. A at 1.  Warner has
dubiously claimed that it has no records of when the three packages of Stolen
Documents were actually received by it.  Adams Decl., Ex. D at 7.

## B.    The Criminal Investigation

In or about November 2007, years before this action was filed, Mr. Toberoff
met with Stanley Ornellas of the Los Angeles FBI Field Office and reported the theft.
Adams Decl., Ex. D at 8.  Mr. Ornellas was a lead investigator of the Pellicano
scandal, which involved illegal surveillance by lawyers in the entertainment industry.

In May 2010, DC filed the instant lawsuit, which attached and relied upon the
defamatory "Timeline," in a clear effort to benefit from criminal activity perpetrated
against Mr. Toberoff and to chill Mr. Toberoff's representation of his clients against
DC.  *See* Docket No. 145.  Thereafter, the USAO initiated a Grand Jury Investigation
regarding the Stolen Documents.  Adams Decl., Ex. D at 8.  As part of that
investigation, Assistant U.S. Attorneys Beong-Soo Kim and Brian Klien advised Mr.
Toberoff's counsel, Richard Kendall, a former Assistant U.S. Attorney, that "they
would need to review the privileged Stolen Documents as part of any investigation
and/or prosecution regarding the theft from Mr. Toberoff's offices" in order to
determine the nature and severity of the crime.  *See* Adams Decl., Ex. F (Declaration
of Richard Kendall), ¶ 4.  Mr. Kendall insisted that defendants "would not disclose
the documents to the government unless the privilege could be protected."  *Id.*, ¶ 5.

On September 13, 2010, a Grand Jury subpoena was served on Mr. Toberoff
requesting copies of the Timeline and the Stolen Documents.  *See* Adams Decl., Ex.
A.  In a letter to Mr. Kendall, the USAO agreed to maintain the confidentiality of the
requested documents, recognized the "objective to preserve any and all applicable
privileges," and assured Defendants that the provision of the documents was not "to
waive any applicable privilege or protection under law."  Adams Decl., Ex. B at 2.

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN
DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

The USAO also assured defendants that it "will maintain the confidentiality of the [Stolen D]ocuments and related information," and that it would "return the [] documents …as soon as we determine that we no longer need them."  *Id.* at 1.  The USAO also assured Defendants that it "will maintain the confidentiality of the [Stolen D]ocuments and related information," and that it would "return the [] documents … as soon as we determine that we no longer need them."  *Id.* at 1.

On September 17, 2010, Mr. Kendall produced the Stolen Documents to the USAO pursuant to the Grand Jury subpoena and the USAO's assurances, together with a letter confirming the understanding that the documents were being provided pursuant to a common interest privilege and without waiver of privilege:

> We are in receipt of the Grand Jury subpoena issued by your office on September 13, 2010. ***As demanded by the subpoena, and in an effort to assist the Government in its ongoing criminal investigation,*** Mr. Toberoff provides hereunder the "SUPERMAN - MARC TOBEROFF TIMELINE" (the "Timeline") and its enclosures . . . .

> This response to the Grand Jury's subpoena ***is made subject to and without waiver of the attorney-client privilege, work product immunity, or any other privilege applicable to these documents.*** The Timeline itself and many of the enclosed documents are clearly subject to the attorney-client privilege and/or work-product immunity, and ***we are providing them subject to our mutual understanding that providing such documents in response to your subpoena shall not constitute a waiver of any applicable privilege or immunity.***

> Moreover, the provision of these documents is expressly made in reliance upon the Government's representations, in its letter of September 10, 2010, that (i) "the Government will maintain the confidentiality of the MT documents and related information and will not provide the MT documents and related information to non-governmental third parties except as may be required by law or court order"; (ii) "the Government will return the MT documents to you and your client as soon as we determine that we no longer need them"; (iii) "to the extent attorney work product or communications protected by the attorney client privilege are shared with the Government ... Mr. Toberoff is sharing them as a selective and limited disclosure in reliance on the Government's agreement that, in recognition of his objective to preserve any and all applicable privileges, the Government will keep them confidential and not disclose them to any non-governmental third parties (except as may be required by law or court order)"; and (iv) "nothing in Mr. Toberoff's disclosure of the MT documents and related information is intended to waive any applicable privilege or protection available under law."

> ***Any privileged documents being produced to the Government pursuant to the subpoena are also subject to a common interest/joint***

7
MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

1   ***prosecutorial privilege.*** *See Sedlacek v. Morgan Whitney Trading
2   Group*, 795 F. Supp. 329, 330 (C.D. Cal. 1992) (communications
    between civil litigants and government investigating similar wrongdoing
3   subject to joint prosecution/common interest privilege); *United States ex
    rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996)
4   (same). The privilege is particularly applicable here given Mr. Toberoff
    and the Government's common interest in investigating the wrong
    committed against Mr. Toberoff and his law firm through the theft of
5   these documents and creation of the Timeline.

6   Adams Decl., Ex. C (emphasis added). Defendants' understanding, based on such

7   oral conversations and written correspondence, was that privilege was not being

8   waived, that the documents were subject to an express assertion of "common interest

9   privilege," that the USAO did not object to and "was willing to be governed by those

10  conditions [in Mr. Kendall's September 17 letter] in accepting the documents," and

11  that the documents were produced subject to an express agreement to maintain

12  confidentiality and privilege. Adams Decl., Ex. C, Ex. F (Declaration of Richard

13  Kendall), ¶ 7. The Stolen Documents were thus produced in response to a Grand

14  Jury subpoena to aid the USAO in its joint investigation of the Stolen Documents.

15      **C.    DC's Motion to Compel and the May 25 Order**

16      Nonetheless, on April 4, 2011, DC moved to compel the production of the

17  Stolen Documents, based on a theory that privilege was waived when the documents

18  were produced to the USAO. Docket No. 205. On May 25, 2011, Magistrate

19  Zarefsky granted DC's motion and held that "Defendants waived the privileges by

20  producing the documents to a third party, the United States, in response to a grand

21  jury subpoena." Docket No. 262 at 3. However, Magistrate Zarefsky also expressly

22  noted "the absence of controlling authority from the Ninth Circuit," and that "the

23  cases [on which DC relied] do not deal with victims of crime." *Id.* at 2. Recognizing

24  the importance of this issue of first impression in the Ninth Circuit, Magistrate Judge

25  Zarefsky judiciously stayed his ruling and invited review of the ruling. *Id.* at 3

26  ("However, the Court stays its ruling to allow Defendants to seek review before the

27  District Judge.").

28  ///

# ARGUMENT

## I.   The May 25 Order Erred in Finding "No Important Distinction" Between Disclosure to Law Enforcement Authorities By an Alleged Criminal And By the Victim of a Privacy Crime

The May 25 Order examined cases concerning the voluntary or "selective" disclosure of privileged material.  In so doing, it acknowledged that "[i]t is true, as Defendants state, that the cases [finding waiver] do not deal with victims of crime." The order, however, dismissed this fact as unimportant.  Docket No. 262 at 3.  But the distinction between the victim of a crime and a target of a criminal investigation is striking, especially where, as here, the crime investigated *itself* involves the theft of privileged information.  Criminals who steal the privileged or confidential records of attorneys, financial institutions, medical providers, national security agencies, judges, large corporations or law firms, or who engage in industrial espionage, necessarily cause an involuntary disclosure and dissemination of material protected from disclosure.  Indeed, removing the protections afforded confidential material is precisely the objective of such crimes.  When such an invasion occurs and the victim reports the crime and cooperates with law enforcement, he or she does so to vindicate their privilege and privacy interests, not to further erode it, and the role of law enforcement in this circumstance is the same.

Just as with confidential health records, judicial records, financial records, and national security materials, the privacy interests protected by the attorney-client privilege are compelling.  "The attorney-client privilege is one of the oldest recognized privileges for confidential communications ….  The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citations omitted).  *See also People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1146 (1999) ("Protecting the confidentiality of communications between attorney and client is fundamental to our

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

legal system.  The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of '"ensuring the right of every person to freely and  fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense."') (quoting *Mitchell v. Superior Court*, 37 Cal. 3d 591, 599 (1984)).

Here, there is no dispute that the theft and initial disclosure of privileged material was involuntary.  It is also undisputed that the thief's objective was to disclose Defendants' privileged documents to their litigation adversaries, DC and Warner Bros.  The USAO *required* that it review the Stolen Documents in order to understand the severity of that crime and to decide whether to investigate and prosecute it.  Adams Decl., Ex. F (Declaration of Richard Kendall), ¶ 4 (the USAO stated that it "need[ed] to review the privileged stolen documents as part of any investigation and/or prosecution").  If not reversed, the May 25 Order will have a substantial anti-law enforcement effect and seriously chill the ability of law enforcement to investigate and prosecute crime.  The May 25 Order itself recognized that the rule of law it established would mean that either privilege is lost or "a perpetrator goes free."  Docket No. 262 at 3.  Under the May 25 Order, the victims of such privacy crimes, and third-parties wishing to assist a criminal investigation, will be penalized for cooperating with the government by sharing privileged or confidential information.  Either the privilege would be maintained, and the crime would go unsolved and unpunished, or the privilege would be waived and the object of the crime accomplished.  Neither the victim of a crime or the government should be placed in this untenable situation.  There is no basis for a strict waiver rule in cases where the initial disclosure was the result of the involuntary actions of a criminal, not the party cooperating with law enforcement.

Cases recognize this striking policy distinction.  In *Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*, 161 B.R. 689, 691-92 (D. Colo. 1993), for example, a bank provided attorney letters and memoranda to assist the USAO in its criminal

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

investigation of a client of the bank, "subject to the requirement that any information provided … be treated as privileged, subject to protection under Fed. R. Crim. P. 16(a)(2) and [that it] not be disseminated except as required under federal law or the rules of criminal procedure."  Thereafter, the bank asserted privilege, and the Court found that no waiver of privilege occurred because the bank took "substantial steps to ensure that its disclosures to the U.S. Attorney would be kept confidential."  *Id.* at 696.  Defendants acted similarly:  they provided documents to assist in a criminal investigation and took reasonable steps to ensure that the documents would be kept confidential, and that their cooperation was not to be deemed a waiver of privilege.  *See also Schnell v. Schnall*, 550 F. Supp. 650 (S.D.N.Y. 1982) (where client testified in an SEC proceeding as to privileged attorney/client communications to assist the SEC in a prosecution, that testimony "does not constitute a waiver of the attorney-client privilege" in subsequent litigation).

## II.    The May 25 Order Misapplied Out-of-Circuit Law to Reach Its Erroneous Conclusion

The May 25 Order adopted what it called the "majority perspective" that disclosure to the government waives privilege, based solely on inapplicable cases where the ***targets of a criminal investigation***, not the victims of a crime, disclose privileged information, typically to avoid prosecution or to plea bargain, as the May 25 Order acknowledged.  *See* Docket No. 262 at 3 ("It is true, as Defendants state, that the cases [finding waiver] do not deal with victims of crime.").  In each such case, the essential relationship between the government and the target of the investigation was adversarial, and there was no disclosure at all of privileged material prior to the corporation's voluntary attempt to use the privilege as both a shield and a sword.  It is that type of disclosure that creates a waiver.  *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310-11 (N.D. Cal. 1987) (waiver is intended to apply to situations where privilege holders use "as a sword or shield, some of the information contained in the subject communication but [] deny their opponents

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

access to the remainder of the communication.  It is this 'truth-garbling' risk that justifies the finding of waiver, not the mere fact of disclosure").

In *United States v. Massachusetts Institute of Technology*, 129 F.3d 681, 683-86 (1st Cir. 1997), for example, on which DC and the Magistrate Judge relied, a defense contractor provided privileged information, without any agreement to maintain confidentiality and privilege, to an auditing agency while it was being audited.  Because the contractor was under investigation, the *MIT* Court recognized that the relationship was "easily characterized as adversarial," and found a waiver of privilege.  *Id.* at 686.  Similarly, in *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991), also relied on by DC, Westinghouse waived the attorney-client privilege by providing privileged materials to the SEC and the Department of Justice while those agencies were investigating allegations of bribery by the company.  *Westinghouse* was expressly limited to "whether a party that discloses information protected by the attorney-client privilege and the work-product doctrine … [to] a government agency ***that is investigating it*** waives the privilege …."  *Id.* at 1417 (emphasis added).[3]

Such cases are clearly distinct from this situation, where the disclosure resulted from a theft of privileged material, and the sharing of such material with the government, within the confines of joint interest and a confidentiality agreement, was solely for the purpose of investigating and prosecuting that wrongful disclosure.

---

[3]  *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 291, 302 (6th Cir. 2002) (health care company subject to fraud investigation waived privilege when it disclosed privileged materials to the Justice Department to negotiate settlement of investigation); *Permian Corp. v. United States*, 665 F.2d 1214, 1226 (D.C. Cir. 1981) (companies subject to securities fraud investigation waived privilege when they disclosed documents to the SEC during its investigation); *In re Qwest Comms. Int'l*, 450 F.3d 1179, 1181 (10th Cir. 2006) (target waived privilege by disclosing protected materials during investigations by the SEC and the USAO); *United States v. Reyes*, 239 F.R.D. 591, 596 (N.D. Cal. 2006) (waiver of privilege where company disclosed information to the SEC and Department of Justice while the company was under scrutiny); *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229, 1223, 1234 (2004) (company waived privilege by providing documents during SEC and USAO investigation of company).

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

### A.    Privilege Is Preserved When Disclosures to the Government Are Made Pursuant to an Agreement to Maintain Privilege

The May 25 Order also failed to consider the clear authority that protects privileged material disclosed to the government pursuant to a confidentiality agreement and a Grand Jury subpoena.  Here, Defendants produced the Stolen Documents only under the compulsion of a Grand Jury subpoena, and subject to an express agreement by the USAO to hold the documents as strictly confidential in order to maintain the privilege.  Adams Decl., Ex. C.

In such circumstances, where privileged materials are produced pursuant to an express agreement to protect the privilege, numerous courts have found no waiver of privilege.  *In re Steinhardt Partners L.P.*, 9 F.3d at 236, expressly contemplated that privilege would not be waived if there was an "explicit agreement that the [government] will maintain the confidentiality of the disclosed materials," and many other courts follow such an approach.  *See Police & Fire Ret. Sys. v. Safenet, Inc.*, 2010 U.S. Dist. LEXIS 23196 at *7 (S.D.N.Y. Mar. 11, 2010) (rejecting waiver based on disclosure to the SEC pursuant to a confidentiality agreement, because "[t]here is a strong public interest in encouraging disclosure and cooperation with law enforcement agencies; [and] violating a cooperating party's confidentiality expectations jeopardizes this public interest"); *Maruzen Co. v. HSBC USA, Inc.*, 2002 U.S. Dist. LEXIS 13288, at *2 (S.D.N.Y. 2002) (maintaining privilege based on "explicit confidentiality agreements with the authorities").[4]

Defendants took reasonable steps to preserve their privilege:  they only

---

[4] *In re Leslie Fay Companies, Inc. Sec. Litig.*, 161 F.R.D. 274, 284 (S.D.N.Y. 1995) (disclosures "pursuant to confidentiality agreements intended to preserve any privilege applicable to the disclosed documents" did not result in a waiver of privilege); *Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*, 161 B.R. at 691 (no waiver of privilege where disclosures were made "subject to the requirement that any information provided under the Letter Agreement be treated as privileged"); *Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 644-45 (S.D.N.Y. 1981) (recognizing no waiver of privilege if "the right to assert the privilege in subsequent litigation is specifically reserved at the time the disclosure is made" pursuant to a "stipulation or other express reservation"); *SEC v. Amster & Co.*, 126 F.R.D. 28, 29-30 (S.D.N.Y. 1989) (pursuant to an agreement with SEC to maintain confidentiality of disclosed documents, privilege was not waived against subsequent litigants).

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

produced documents in response to a Grand Jury subpoena, subject to Fed. R. Crim. P. 6(e)(2)'s strong Grand Jury secrecy protections, and pursuant to an express agreement with the USAO to protect and maintain the privilege.  *See In re Grand Jury Proceedings*, 851 F.2d 860, 866 (6th Cir. 1988) (confidential documents produced to grand jury cannot be disclosed pursuant to Fed. R. Crim. P. 6(e), and it would violate such secrecy to permit a party "pursuing a civil action [to ask] a court for all documents obtained pursuant to subpoenas issued by a grand jury"); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (privilege not waived by production of documents to grand jury), *cert. denied*, 498 U.S. 821.[5]

DC contends that Defendants should have objected to the Grand Jury subpoena, and forced the government to move to compel production of the Stolen Documents.  However, in *none* of the above-cited cases did a Court require that a party object to the government's subpoena or require it to make a motion to compel; the issuance of the subpoena and the agreement to maintain responsive documents as strictly confidential was, in itself, enough to preserve the attorney-client privilege.[6]

---

[5] *See Fossyl v. Watson*, 2006 U.S. Dist. LEXIS 98406, at *7-8 (S.D. Ohio Sept. 5, 2006) (no waiver of privilege on documents produced pursuant to Grand Jury subpoena where the party "took reasonable steps" to protect the privilege); *Picard Chemical, Inc. v. Perrigo Co.*, 951 F. Supp. 679, 689 (W.D. Mich. 1996) (maintaining privilege where a party takes "reasonable steps to protect the privilege"); *Regents of Univ. of Cal. v. Superior Court*, 165 Cal. App. 4th 672 (2008) ("[N]o waiver of the privilege will occur if the holder of the privilege has taken reasonable steps under the circumstances to prevent disclosure. The law does not require that the holder of the privilege take 'strenuous or Herculean efforts' to resist disclosure.").

[6] The May 25 Order's imposition of a requirement for an additional order beyond the subpoena itself appears to have derived from a new argument DC made at the hearing that Federal Rule of Evidence 502(e) purportedly required a court order to preserve confidentiality.  In fact, Rule 502 does not address, or affect, the issue here. The drafters of Rule 502 were explicit that they were leaving the law of "selective waiver" – i.e., the effect of disclosure of privileged material to government investigators – unaffected by the Rule. *See* Letter from the Committee on Rules and Practice and Procedure of the Judicial Conference of the United States to the Committee on the Judiciary of the U.S. Senate and House of Representatives dated Sept. 26, 2007; Minutes of Advisory Committee on Evidence Rules Meeting [6], at 15 (April 12-13, 2007).  Counsel for DC eventually admitted at the hearing that Rule 502 did not change the law of selective waiver.  Transcript of April 25, 2011 Hearing at 6:22-7:2.

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

### B.   The May 25 Order Erred in Finding an Express Voluntary Waiver of Privilege Rather Than an Involuntary Limited Waiver

The May 25 Order found an express voluntary waiver of privilege by Defendants as opposed to an involuntary limited waiver under *Bittaker v. Woodford*, 31 F.3d 715 (9th Cir. 2003). *See* Docket No. 262 at 2-3. However, the law in both the Ninth Circuit and California courts is that production pursuant to a court-enforceable subpoena is not considered to be "voluntary" and does not expressly waive the attorney-client privilege. *See American Mutual Liability Ins. Co. v. Superior Court*, 38 Cal.App.3d 579, 596 (1974) (an attorney's "production of the files in question responsive to a subpoena *duces tecum* being involuntary, cannot constitute a waiver"); *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918-919 (9th Cir. 1987) (citing *American Mutual* and noting that "attorney-client privilege [is] not waived by attorney's production of files in response to a subpoena *duces tecum*, because [the] production [is] not voluntary") (citation omitted).[7] As Defendants produced the Stolen Documents under the compulsion of a Grand Jury subpoena seeking such documents, there was, at most, an involuntary limited waiver of privilege as to the Grand Jury investigation, not the broad express waiver, applicable to all litigation, found by the May 25 Order.

### C.   The Ninth Circuit Has Refused to Adopt DC's "Waiver" Theory, and the Eighth Circuit Has Expressly Rebuffed It

While the May 25 Order stated there was an "absence of controlling authority from the Ninth Circuit" (Docket No. 262 at 3), that absence goes beyond the fact that the Ninth Circuit (like all other courts) has never ruled that disclosure to law

---

[7] *See also In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373 (D.C. Cir. 1984) (waiving privilege on documents submitted voluntarily, rather than pursuant to a subpoena, because the "distinction between voluntary disclosure and disclosure by subpoena is that the latter [is] involuntary...."); *Sidari v. Orleans County*, 2000 U.S. Dist. LEXIS 15126, at *21-23 (W.D.N.Y. Oct. 3, 2000) (finding waiver of privilege where documents were produced "voluntarily, and not pursuant to a subpoena"); *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley, L.L.P.*, 1997 U.S. Dist. LEXIS 269 (D.D.C. Jan. 13, 1997) (finding waiver of privilege where party "voluntar[il]y spoke with the [the government] under an express written waiver of attorney client privilege; it did so without the compulsion of a subpoena, investigation demand, or any other process").

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

enforcement by the victim of a crime waives privilege.  Notably, the Ninth Circuit twice conspicuously declined to rule that disclosure to law enforcement even by the target of investigation constitutes a waiver.  *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker*, 331 F.3d at 720 n.5.

Other circuits also reject what the Court categorized as the "majority perspective" as to disclosure by the target of an investigation.  Notably, the Eighth Circuit in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (*en banc*) expressly held that documents retained privilege in civil litigation even where the target "disclosed [] documents in a separate and nonpublic SEC investigation."  *See Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 284 (8th Cir. 1984) (waiving privilege of report of internal investigation produced to the SEC "could deter such inquiries, which should not be chilled as a matter of policy").

As there is no Ninth Circuit authority even for the proposition that disclosures by the target of an investigation waives privilege, the May 25 Order's finding that disclosures by a victim waives privilege is without legal precedent and runs contrary to strong countervailing public policies.

## III.   The May 25 Order Failed to Recognize the Common Interest Shared By Defendants and the Government

The May 25 Order erred in finding that Defendants and the government did not share a common interest, and courts maintain privilege in such circumstances. Docket No. 262 at 3.  The May 25 Order incorrectly held that because Mr. Toberoff was a victim of a crime, and not himself a prosecutor, he could not share a protectable common interest with the government.  In so doing, the order ignored the well-recognized principle that private entities and the government can "share a common interest in developing legal theories and analyzing information" in enforcement actions or where the private party is the victim of the conduct under investigation.  *In re Steinhardt Partners L.P.*, 9 F.3d at 236.  The USAO accepted such "a common interest/joint prosecutorial privilege" based on "Mr. Toberoff and

the government's common interest in investigating the wrong," when it indicated that it "was willing to be governed by those conditions [set forth in Mr. Kendall's September 17, 2011 letter] in accepting the documents." Adams Decl., Ex. C; Ex. F (Declaration of Richard Kendall), ¶ 7.

Numerous cases have found that when the government and a private party have a joint interest in the prosecution of an underlying crime, the disclosure of privileged material to the government is subject to a joint prosecution privilege and there is no waiver of the attorney-client privilege. Thus, in *Sedlacek v. Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992), the court held that sharing privileged materials between the plaintiff and the Federal Trade Commission did not waive privilege, because both were investigating the same alleged fraud. The *Sedlacek* Court expressly held that the joint prosecution privilege is applicable "'whether the litigation or potential litigation is civil or criminal,'" or "'ongoing,'" and "that the privilege is not limited to co-parties." *Id.* at 331. *See also In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) (extending common interest privilege to non-parties and "potential co-parties to prospective litigation").[8]

Such a joint-prosecution privilege exists where "(1) the communications were made in the course of a joint effort, (2) the statements were designed to further the joint effort, and (3) the privilege has not been waived." *Burroughs*, 167 F.R.D. at 686 (citing *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989)). Here, all three elements are easily met. The provision of the Stolen Documents was made in the course of the government's ongoing criminal investigation of the theft of Toberoff & Associates' privileged legal files for prosecution and Mr. Toberoff's contemplated legal action against the perpetrator, was designed to further that investigation/prosecution, and were provided to the

---

[8] *See Anderson v. Torrington Company*, 120 F.R.D. 82, 86 (N.D. Ind. 1987) (communications between non-party union and plaintiffs were subject to a "common interest" privilege because plaintiffs were union members and union played active role); *In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D. Tex. 1981) (disclosures "by an attorney to actual or potential co-defendants" is subject to a common interest privilege).

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

government subject to an express agreement to preserve confidentiality and the privileged status of the material. Numerous cases have similarly found that where a private party and the government are involved in closely related litigation, communications between them are subject to a common interest privilege.[9]

In short, the law, far from requiring the problematic legal rule set forth in the May 25 Order, encourages protection of the privilege in situations similar to this one.

## CONCLUSION

For the foregoing reasons, the May 25, 2011 Order, insofar as it ordered that Defendants waived privilege on Stolen Documents provided to the United States Attorney's Office pursuant to a Grand Jury subpoena and confidentiality agreement, should be reversed.

Dated:  June 7, 2011                 RESPECTFULLY SUBMITTED,


                                     /s/ Marc Toberoff
                                     Marc Toberoff

                                     TOBEROFF & ASSOCIATES, P.C.
                                     Attorneys for Defendants Mark Warren Peary, as
                                     personal representative of the Estate of Joseph
                                     Shuster, Jean Adele Peavy, and Laura Siegel Larson,
                                     individually and as personal representative of the
                                     Estate of Joanne Siegel

---

[9] *See Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) (sharing of work product between government and counsel for *qui tam* relator protected by joint prosecution privilege); *United States v. Gumbaytay*, 2011 U.S. Dist. LEXIS 47142, at *12 (M.D. Ala. Jan. 19, 2011) (recognizing "that the common interest rule protects communications between a governmental agency and persons on whose behalf the governmental agency brings suit"); *United States v. Cisco Sys.*, 2011 U.S. Dist. LEXIS 30902, at *4 (E.D. Ark. Mar. 15, 2011) (recognizing a "Common Interest privilege" between the government and a *qui tam* relator); *E.E.O.C. v. Chemtech Intern. Corp.*, 1995 U.S. Dist. LEXIS 21877, at *1 (S.D. Tex. 1995) ("[B]ecause the EEOC and the private citizen have many identical interests, the attorney-client privilege is essentially a joint prosecution privilege that extends to communications between a party and the attorney for a co-litigant.").

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA

1

2

/s/ Laura W. Brill

Laura W. Brill

3

4

5

6

KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants Marc Toberoff,  Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR REVIEW OF MAY 25, 2011 ORDER WAIVING PRIVILEGE ON STOLEN DOCUMENTS PRODUCED PURSUANT TO A GRANT JURY SUBPOENA