# EXHIBIT G

Case: 10-73851  12/17/2010  Page: 3 of 44  ID: 7585263  DktEntry: 1-5

RECEIVED
OFFICE OF THE CLERK
U.S. COURT OF APPEALS
PUBLIC INFORMATION UNIT

CASE NO. _____

2010 DEC 17  PM 3: 33

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DATE    INITIAL

# 10-73851

IN RE PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC,
IPW, LLC, MARC TOBEROFF, MARK WARREN PEARY, JEAN
ADELE PEAVY, JOANNE SIEGEL AND LAURA SIEGEL LARSON

*Defendants-Petitioners,*

*(caption continued on next page)*

PETITION FOR A WRIT OF MANDAMUS COMPELLING HEARING AND
DECISIONS ON MOTIONS AND PROHIBITING DISTRICT COURT FROM
ALLOWING ONE-SIDED DISCOVERY

REQUEST FOR URGENT RESOLUTION UNDER CIRCUIT RULE 27-3(B)
PRIOR TO JANUARY 10, 2011

From The United States District Court for the Central District of California,
Case No. CV-10-3633

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff (188547)
Nicholas C. Williamson (231124)
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone:  (310) 246-3333

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
Laura W. Brill (195889)
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700

*Attorneys for Defendants-Petitioners*
*Mark Warren Peary, as personal*
*representative of the Estate of Joseph*
*Shuster, Jean Adele Peavy, Joanne*
*Siegel and Laura Siegel Larson*

*Attorneys for Defendants-Petitioners*
*Pacific Pictures Corporation, IP*
*Worldwide, LLC, IPW, LLC, and Marc*
*Toberoff*

EXHIBIT G
18

v.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*Respondent,*

DC COMICS,

*Plaintiff-Real Party in Interest.*

EXHIBIT G
19

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Petitioners make the following disclosure statements:

Defendant-Petitioner IPW, LLC does not have a parent corporation, nor does any publicly held corporation own 10% or more of IPW, LLC.

Defendant-Petitioner IP Worldwide, LLC does not have a parent corporation, nor does any publicly held corporation own 10% or more of IP Worldwide, LLC.

Defendant-Petitioner Pacific Pictures Corporation does not have a parent corporation, nor does any publicly held corporation own 10% or more of Pacific Pictures Corporation.

Dated: December 17, 2010

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, Joanne Siegel
and Laura Siegel Larson

Dated: December 17, 2010

Laura W. Brill
KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants-Petitioners,
Pacific Pictures Corporation, IP Worldwide,
LLC, IPW, LLC, and Marc Toberoff

1

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................1

II.  STATEMENT OF RELIEF SOUGHT AND ISSUES
     PRESENTED ....................................................................4

III.  FACTUAL BACKGROUND ...............................................4

IV.  PROCEDURAL POSTURE OF THE *DC ACTION* ...............8

V.  ARGUMENT .....................................................................13

    A.  A Writ of Mandamus Should Issue......................................13

        1.  Defendants Have No Other Means To Challenge
           The Order .............................................................16

        2.  Absent Mandamus Relief, Petitioners Will Be
           Damaged In A Way That Cannot Be Corrected On
           Appeal ..................................................................17

        3.  The Orders Below Require Correction ...................19

           a.  The Anti-SLAPP Immunity...........................20

           b.  The Orders Violate Due Process And
               Eliminate Defendants' Rights Under The
               Federal Rules Of Civil Procedure...................26

VI.  CONCLUSION....................................................................30

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP.
P. 21(d)......................................................................................32

STATEMENT OF RELATED CASES ............................................33

CERTIFICATE OF SERVICE .......................................................34

i

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Steinberg,*
107 Cal. App. 4th 568 (2003) ..................................................................22

*Admiral Ins. Co. v. United States Dist. Ct.,*
881 F.2d 1486 (9th Cir. 1989) ................................................................15

*Bank of Am. v. First Mut. Bancorp of Ill., Inc.,*
2010 U.S. Dist. LEXIS 41841 (N.D. Ill. Apr. 26, 2010)........................28

*Barton v. United States Dist. Ct. for Central Dist. of Calif.,*
410 F.3d 1104 (9th Cir. 2005) ...........................................................15, 18

*Bauman v. United States District Court,*
557 F.2d 650 (9th Cir. 1977) .......................................................... *passim*

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ........................................................ *passim*

*Bearden v. Honeywell International Inc.,*
2010 WL 3239285, Case No. 3:09-1035 (M.D. Tenn. Aug. 16, 2010).................23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................26

*Bosley Med. Inst., Inc. v. Kremer,*
403 F.3d 672 (9th Cir. 2005) ..................................................................21

*Bourne Co. v. MPL Commc'ns, Inc.,*
675 F. Supp. 859 (S.D.N.Y. 1987)..........................................................24

*California Dep't of Water Resources v. Powerex Corp.,*
533 F.3d 1087 (9th Cir. 2008) .................................................................24

*Cheney v. United States Dist. Ct. for Dist. of Columbia,*
542 U.S. 367 (2004)..................................................................................25

ii

*Ellis v. United States District Court*,
356 F.3d 1198 (9th Cir. 2004) ........................................................................15

*Englert v. MacDonnel*,
551 F.3d 1099 (9th Cir. 2009) .......................................................................24

*Fair Political Practices Comm'n v. Am. Civil Rights Coalition, Inc.*,
121 Cal. App. 4th 1171 (2004) ......................................................................21

*Ferguson v. Countrywide Credit Indus.*,
298 F.3d 778 (9th Cir. 2002) ........................................................................28

*Green v. Occidental Petroleum Corp.*,
541 F.2d 1335 (9th Cir. 1976) ......................................................................14

*Hickman v. Taylor*,
329 U.S. 495 (1947).......................................................................................28

*In re Cement Antitrust Litig.*,
688 F.2d 1297 (9th Cir. 1982) ......................................................................14

*In re Gonzalez*,
623 F.3d 1242 (9th Cir. 2010) ......................................................................14

*In re Graphics Processing Units Antitrust Litig.*,
2007 U.S. Dist. LEXIS 57982 (N.D. Cal. July 24, 2007).............................29

*In re Union Carbide Gas Plant Disaster*,
809 F.2d 195 (2d Cir. 1987)..........................................................................28

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
2010 WL 2756947, Case No. 1:08-WP-65000 (N.D. Ohio July 12, 2010) ..........23

*Inland Am. (LIP) Sub, LLC v. Lauth*,
2010 U.S. Dist. LEXIS 14899 (S.D. Ind. Feb. 19, 2010) .............................28

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ........................................................................14

iii

EXHIBIT G

23

*LaBuy v. Howes Leather Co.,*
352 U.S. 249 (1957) ..................................................................14

*Matthews v. Mariner,*
2009 U.S. Dist. LEXIS 13420 (S.D. Ind. Feb. 19, 2009) ......................28

*McKinney v. Bayer Corp.,*
__ F. Supp. 2d __, 2010 WL 3834327, Case No. 10-CV-224
(N.D. Ohio Sep. 30, 2010) .........................................................23

*Medhekar v. United States District Court,*
99 F.3d 325 (9th Cir. 1996) ...................................................15, 17

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001) .................................................. 23-24

*Mesa v. California,*
489 U.S. 121, 109 S. Ct. 959 (1989).............................................14

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) .................................................. 23-24

*Mindys Cosmetics, Inc. v. Dakar,*
611 F.3d 590 (9th Cir. 2010) ....................................................8, 21

*Mitchell v. Forsyth,*
472 U.S. 511 (1985)..................................................................22

*Mohawk Indus., Inc. v. Carpenter,*
130 S. Ct. 599, 175 L. Ed. 2d 458 (2009).......................................18

*Nelson v. Adams USA, Inc.,*
529 U.S. 460 (2000)..................................................................26

*New.Net, Inc. v. Lavasoft,*
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ..........................................21

*Pacific Pictures Corporation v. DC Comics,*
9th Cir. Case No. 10-56594 ..........................................................9

iv

EXHIBIT G

*Paterno v. Superior Court,*
163 Cal. App. 4th 1342 (2008) ..................................................................... 21-22

*People of State of Cal. v. Mesa,*
813 F.2d 960 (9th Cir. 1987) ............................................................................14

*Price v. Stossel,*
620 F.3d 992 (9th Cir. 2010) .............................................................................24

*Rae v. Union Bank,*
725 F.2d 478 (9th Cir. 1984) .............................................................................29

*Rivera v. Heyman,*
1997 U.S. Dist. LEXIS 2003 (S.D.N.Y. Feb. 27, 1997)....................................29

*Rutman Wine Co. v. E. & J. Gallo Winery,*
829 F.2d 729 (9th Cir. 1987) ......................................................................27, 29

*Schlagenhauf v. Holder,*
379 U.S. 104 (1964)...........................................................................................14

*Semegen v. Weidner,*
780 F.2d 727 (9th Cir. 1985) ............................................................................27

*Perry v. Schwarzenegger,*
591 F.3d 1147 (9th Cir. 2010) .....................................................................15, 25

*Reynaga v. Cammisa,*
971 F.2d 414 (9th Cir. 1992) ............................................................................16

*S.G. Cowen Sec. Corp. v. United States Dist. Ct.,*
189 F.3d 909 (9th Cir. 1999) ............................................................................17

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
130 S. Ct. 1431 (2010) .............................................................................. *passim*

*Siegel v. Warner Bros. Ent. Inc.,*
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ........................................................5-7, 9

v

*Thomas v. N.Y. City Dep't of Educ.*,
2010 U.S. Dist. LEXIS 95798 (E.D.N.Y. Sept. 14, 2010) ....................................29

*Wagh v. Metris Direct, Inc.*,
363 F.3d 821 (9th Cir. 2003) .............................................................................29

*Weatherford v. Bursey*,
429 U.S. 545 (1977) ..................................................................................... 27-28

*Will v. United States*,
389 U.S. 90 (1967) ............................................................................................30

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ..............................................................................29

## **Other Authorities**

17 U.S.C. § 304(c) ......................................................................................... 5-6

17 U.S.C. § 304(c)(2)(D) ....................................................................................5

17 U.S.C. § 304(d) ..............................................................................................6

28 U.S.C. § 2072(b) ..........................................................................................26

Cal. Civ. Code § 47(b) ........................................................................................9

Cal. Code Civ. Proc. § 425.16(f) ............................................................ 18, 21-22

Cal. Code Civ. Proc. § 425.16(g) ...........................................................11, 18, 21

Cal. Code Civ. Proc. § 425.16(i).............................................................18, 22

Circuit Rule 27-3...........................................................................................3-4

F.R.C.P. 8 .........................................................................................................26

F.R.C.P. 9(b) ....................................................................................................26

F.R.C.P. 11 .......................................................................................................27

EXHIBIT G

F.R.C.P. 12(b)(6)..................................................................................... *passim*

F.R.C.P. 13 ...................................................................................................27

F.R.C.P. 14 ...................................................................................................27

F.R.C.P. 26(b)(1) ..........................................................................................28

F.R.C.P. 26(d)(1)-(2)....................................................................................28

F.R.C.P. 72 ...................................................................................................11

Pub. Law 105-298 (1998) ..............................................................................5

vii

EXHIBIT G

27

# I.    **INTRODUCTION**

This petition raises important and recurring questions concerning the application of California's anti-SLAPP statute to strategic lawsuits against public participation ("SLAPP" suits) brought in federal court.  At issue is whether a court may refuse to promptly adjudicate an anti-SLAPP motion while allowing the plaintiff to obtain "full" discovery on claims that are subject to the anti-SLAPP statute, without determining that the discovery is necessary to the defense of the SLAPP claims.  The petition arises from orders that (i) allowed such "full" discovery by the Plaintiff DC Comics ("DC"), while (ii) vacating without consideration a duly noticed hearing on the Defendants' anti-SLAPP motion and other fully briefed dispositive motions, and (iii) staying entirely the Defendants' side of the case.  This petition thus also addresses the fundamental unfairness of a one-sided stay that allows the Plaintiff to obtain unbridled discovery on facially barred claims, while the Defendants can make no use of the court's processes to defend themselves by motions, counterclaims, reciprocal discovery, or otherwise.

The underlying lawsuit stems from a dispute between DC, its effective parent Warner Bros., and the heirs/estate of Jerry Siegel and Joe Shuster, the co-creators of Superman ("Heirs").  On May 14, 2010, DC filed a paradigmatic SLAPP suit, in which DC sued the opposing counsel who had represented the Heirs in filing and/or enforcing statutory terminations under the Copyright Act of

1

Siegel and Shuster's old Superman grants, and vindicated the Siegels' recaptured copyrights after successfully litigating for six years.

After DC sued the Heirs' lawyer, Defendants (Petitioners herein) filed an anti-SLAPP motion and other dispositive motions, which were fully briefed and set for hearing on October 18, 2010. On October 15, 2010, the district court stayed the entire action *sua sponte*, see n. 3, *infra*. While the *sua sponte* order vacated Defendants' pending dispositive motions, it nonetheless respected Defendants' immunity from suit and discovery under California's anti-SLAPP statute as to DC's baseless state law claims. Appendix Ex. 31.

On November 16, 2010, however, the district court reversed course. In response to misleading arguments by DC, the court partially lifted the stay *in favor of DC alone*, permitting DC to take "full" one-sided discovery, while the case remained stayed as to Defendants. *Id.*, Ex. 37. Defendants immediately applied to the district court to clarify and correct this order, and to reinstate their anti-SLAPP motion and other dispositive motions, but their application was denied without explanation. *Id.*, Exs. 39, 43.

The resulting one-sided stay in favor of DC is demonstrably unfair and in need of immediate review and correction. Its effect is that Defendants, who are entitled to immunity, have lost the substantive protections of state anti-SLAPP law, while DC, the SLAPP Plaintiff, has obtained effective immunity from process and

EXHIBIT G
29

is unconstrained in the burdens it can impose on Defendants.

The rulings are contrary to the Supreme Court's recent decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J., concurring), which provides that the substantive protections of state law, even if embodied in a rule that appears procedural, must apply to state-law claims in federal court. The protections of California's anti-SLAPP law, including the right to a timely ruling on an anti-SLAPP motion and immunity from abusive discovery pending such ruling, are clearly substantive, and under *Shady Grove* must be applied in federal as well as state court. The above orders are also contrary to basic norms of due process as reflected in the Federal Rules of Civil Procedure, which provide for mutual discovery, dispositive motions to halt insufficient pleading, and equal access to the courts' processes.

A writ of mandamus should promptly issue in this case to end the unfair, one-sided process in the underlying action, and to provide guidance with respect to important and recurring issues of law within the Circuit concerning the application of California's anti-SLAPP statute in federal court.

Pursuant to Circuit Rule 27-3, Defendants respectfully request that relief be granted **prior to January 10, 2011**, to avoid irreparable prejudice to Defendants.[1]

---

[1] Pursuant to Circuit Rule 27-3, Defendants hereby certify that to avoid irreparable harm, action is needed prior to January 10, 2011, the date Defendants' responses to voluminous written discovery are due, and two days before the deposition of the

3

## II.   STATEMENT OF RELIEF SOUGHT AND ISSUES PRESENTED

1.      Should a writ of mandamus issue when a district court refuses to

apply the substantive protections of California's anti-SLAPP statute, as required by

the Supreme Court's recent decision in *Shady Grove Orthopedic Associates, P.A.*

*v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010)?

2.      Should a writ of mandamus issue when a district court issues a one-

sided stay that allows the plaintiff to conduct "full" discovery of the defendants

while staying the entire action as to defendants, such that they cannot defend

themselves by motion, counterclaim, discovery, or otherwise?

## III.   FACTUAL BACKGROUND

In the mid-1930s, two high school students, Jerome Siegel (an author) and

---

93-year-old Joanne Siegel.  Once Defendants are required to respond to such
discovery, then the relief sought in this petition will be partially moot.  Therefore,
Defendants will promptly file with this Court a motion for a stay of the district
court decisions issued on November 16 and 24, 2010 pursuant to Circuit Rule 27-3.
*See* Appendix Exs. 37, 43.  Should this Court grant a stay prior to January 10,
2011, then a ruling on this petition prior to that date may be unnecessary.

On December 15 and 16, 2010, counsel for certain Defendants-Petitioners, Laura
W. Brill, notified DC's counsel, Matthew Kline, that Defendants would be filing
this petition.  DC opposes the relief requested herein.  Defendants proposed to DC
that the parties agree to an overall schedule that could avoid the need for an urgent
writ, but DC did not accept that offer.  All grounds advanced in support of this
petition were submitted to the district court in connection with Petitioners-
Defendants' Opposition to DC Comics' Motion For Reconsideration and to
Modify the Court's October 15, 2010 Order Staying Action Pending Outcome of
Appeal, and Petitioners-Defendants' *Ex Parte* Application for the Reinstatement of
Defendants' Motions.  Appendix Exs. 34, 39-40, 42.

Joseph Shuster (an illustrator), co-created Superman and with it, the superhero genre. *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1102-11 (C.D. Cal. 2008) ("*Siegel I*"). In 1938, for a pittance, they signed a publisher's release granting their entire Superman copyright to DC, which has exploited it for more than 70 years. *Id.* at 1107, 1110.

In 1976, Congress amended the Copyright Act to extend the copyright term, and, in response to the plight of authors who, like Siegel and Shuster, lacked the bargaining power to retain any financial interest in their copyrights, Congress gave authors and their heirs the inalienable right to terminate prior grants of copyright and recapture their copyrights for the extended term. 17 U.S.C. § 304(c); *see also* Pub. Law 105-298 (1998); 17 U.S.C. § 304(c)(2)(D) (extending right to the personal representative or executor of an author's estate).

In 1996, Jerome Siegel died. *Siegel I*, 542 F. Supp. 2d at 1113. He was survived by his widow, Defendant Joanne Siegel, and their daughter, Defendant Laura Siegel Larson (the "Siegels"). *Id.* at 1102, 1114. In 1997, the Siegels served statutory notices of termination on DC of Jerome Siegel's 1938 Superman copyright grants, effective as of April 16, 1999. *Id.* at 1114.

Joseph Shuster died in 1992. Appendix Ex. 6, ¶ 97. Shuster was survived by his siblings, Frank Shuster (who died in 1996) and Defendant Jean Peavy ("Peavy"), and by Peavy's two children. Joseph Shuster's nephew, Defendant

Mark Warren Peary ("Peary"), is the personal representative of his estate. *Id.*, Ex. 6, ¶ 97.

In mid-2001, Marc Toberoff ("Toberoff"), a noted copyright attorney, began providing legal advice to Peavy and Peary (the "Shusters") in connection with the probate of Joseph Shuster's estate and their statutory termination. *Id.*, Ex. 12, Ex. B at 52:9-25; Ex. G at 20:5-20:22. Subsequently, in October 2002, the Siegels contacted and retained Toberoff in connection with their statutory termination, following a breakdown in their settlement negotiations with DC. *Id.*, Ex. 12, Ex. L; Ex. B at 106:1-107:24, 135:1-6; Ex. K at 41:1-3; Ex. M at 17:6-13.

In November 2002, attorney Toberoff, on behalf of the Siegels, drafted, served on DC, and filed with the U.S. Copyright Office an additional notice of termination under 17 U.S.C. § 304(c) regarding the character Superboy. Appendix Ex. 12, Ex. N. In November 2003, Toberoff, as attorney for Peary and the Shuster estate, drafted, served on DC, and filed with the U.S. Copyright Office a notice of termination of Joseph Shuster's Superman copyright grants under 17 U.S.C. § 304(d). *Siegel I*, 542 F. Supp. 2d at 1114, n.3.

In October 2004, the Siegels, represented by Toberoff, filed two federal actions, No. 04-CV-08400 ODW (RZx) (C.D. Cal.) (Superman) & 04-CV-08776 ODW (RZx) (C.D. Cal.) (Superboy) (together, the "*Siegel*" actions), which sought, among other remedies, declarations that the Siegels' statutory terminations were

6

valid and enforceable. These cases are in their seventh year.

In March 2008, DC suffered an enormous setback in the *Siegel* actions. The court granted partial summary judgment largely in favor of the Siegels, holding that they had recaptured Siegel's Superman copyrights. *Siegel I,* 542 F. Supp. 2d at 1116, 1145. This result threatened DC's exclusive control over Superman.

After that loss, the *Siegel* actions were transferred to the current district court judge, whereupon DC retained new counsel and concocted a retaliatory strategy to sue opposing counsel Toberoff personally and to re-litigate the same issues DC had lost in six years of complex copyright litigation in the *Siegel* actions. DC's tactic is reflected in the complaint it filed on May 14, 2010 in this new action (the "*DC Action*"). Appendix Ex. 1. DC alleged six claims for relief – three under state law and three under federal law. Two of the state law claims – for tortious interference with contract and tortious interference with economic relations – were brought against Toberoff and affiliated entities, Pacific Pictures Corp. (defunct), IP Worldwide, LLC (inactive), and IPW, LLC. *Id.*, Ex. 1, ¶¶ 161-73. DC's third state law claim sought declaratory relief under California's unfair competition law that was premised on an alleged violation of a nonexistent "right" of exclusive negotiation under the Copyright Act to buy back the Heirs' recaptured copyrights, a "right" with no basis in the statute or case law. *Id.*, Ex. 1, ¶¶ 174-76.[2]

---

[2] One of DC's supposed federal claims was based on the same nonexistent "right"

7

DC's Complaint was a classic "SLAPP" suit – a strategic lawsuit against public participation – designed to chill core values of freedom of expression and petition. Central to the Complaint were allegations that the Shusters' attorney, Toberoff, should be held personally liable for assisting the Shuster estate with its termination under the Copyright Act. *Id.*, Ex. 1, ¶¶ 54, 164-66. DC also alleged that the Siegel's lawyer, Toberoff, should be held personally liable for purportedly inducing the Siegels to end unfruitful settlement negotiations and to enforce their statutory termination rights through litigation. *Id.*, Ex. 1, ¶¶ 62-72, 168-73. Finally, DC sued the Heirs, the Siegels and the Shusters, for allegedly agreeing to bargain collectively in settlement negotiations with DC regarding their recaptured copyrights. *Id.*, Ex. 1, ¶¶ 11, 88, 110, 159, 165, 175-76. This Court has unequivocally held that California's anti-SLAPP law applies to claims like these. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) ("[A]n attempt to establish a property right under a comprehensive federal statutory scheme" is protected by the anti-SLAPP law).

## IV. PROCEDURAL POSTURE OF THE *DC ACTION*

On August 13, 2010, Defendants filed a motion to strike DC's state law

---

of exclusive negotiation that served as a predicate for DC's faulty state law claim. Appendix Ex. 1, ¶¶ 154-55. DC's other two federal claims sought to re-litigate identical issues decided against DC in the related *Siegel* action regarding the same Superman works and copyright grants by Siegel and Shuster.

8

claims pursuant to California's anti-SLAPP statute and moved to dismiss all of the claims pursuant to F.R.C.P. 12(b)(6). Appendix Exs. 2-5. All of these motions made clear that DC's claims were barred as a matter of law. DC's Third, Fourth, Fifth and Sixth Claims, for example, are all barred by the statute of limitations; the Fourth, Fifth and Sixth Claims are barred by the litigation privilege (Cal. Civ. Code § 47(b)); the Third and Sixth Claims are barred because they are both based on an alleged right under the Copyright Act that has no basis in the statutory text or caselaw; the Sixth Claim, based thereon, is preempted by the Copyright Act; and the First and Second Claims are barred by the law of the case doctrine in that they seek to re-litigate issues already decided in *Siegel I,* 542 F. Supp. 2d 1098. *See generally* Appendix Ex. 9 at 57-61 (summarizing grounds for dispositive motions). DC's oppositions were due on September 3, 2010, but instead of opposing the motions, DC filed an amended complaint on the last possible day to do so. *Id.,* Ex. 6.[3] Defendants renewed their anti-SLAPP motion and motions to dismiss, which

---

[3] On September 7, 2010, the district court *sua sponte* entered an order deeming moot and vacating Defendants' original motions. Appendix Ex. 7. Defendants timely filed a notice of appeal (*Pacific Pictures Corporation v. DC Comics,* Case No. 10-56594, the "Attorney's Fees Appeal") of this order to preserve their statutory right to recover attorneys' fees on their original anti-SLAPP motion. *Id.,* Ex. 30. On October 21, 2010, this Court issued an Order to Show Cause as to its jurisdiction over that appeal. The parties have fully briefed their responses to the Order to Show Cause, but this Court has not yet issued a ruling on the Order to Show Cause or set a briefing schedule on the merits. The district court's October 15, 2010 *sua sponte* order stayed the entire action pending resolution of the Attorney's Fees Appeal. *Id.,* Ex. 31.

9

were fully briefed and scheduled to be heard on October 18, 2010. Appendix Exs. 11-26, 28-29.

DC nonetheless insisted that it had a right to take immediate and unconstrained discovery of the Heirs. Appendix Ex. 9 at 34-55. DC pressed for depositions even though: (1) neither Defendants' anti-SLAPP motion nor Rule 12(b)(6) motions had been resolved; (2) DC failed to identify any factual issues or discovery needed to resolve the anti-SLAPP motion, which, like Defendants' motions to dismiss, showed that DC's claims failed as a matter of law; (3) each of the witnesses DC sought to depose had already been deposed at length in the closely related *Siegel* actions (Appendix Ex. 9 at 25-31 (identifying prior testimony of the witnesses regarding the facts alleged in the complaint)); (4) three of the four witnesses were at significant risk of medical problems from repeat depositions due to their old age and/or serious medical conditions (*id.*, Ex. 9 at 24-25) (setting forth medical opinions); and (5) a ruling on Defendants' dispositive motions would have eliminated or greatly narrowed discovery.

On September 13, 2010, Defendants moved to stay these depositions. Appendix Exs. 8-9. On September 20, 2010, the magistrate judge granted that motion in part, and stayed all depositions until November 15, 2010, to enable the district court to first rule on the pending dispositive motions. *Id.*, Ex. 10. While granting this relief, the ruling failed to stay discovery pending a ruling on

EXHIBIT G

Defendants' anti-SLAPP motion, as Defendants had requested under Cal. Code Civ. Proc. § 425.16(g), *Shady Grove*, *supra*, and *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003). Instead, the magistrate judge concluded, erroneously, that the anti-SLAPP statute's automatic discovery stay does not apply in federal court. Appendix Ex. 10; Ex. 40, Ex. C at 57:3-9. On October 4, 2010, Defendants timely moved under F.R.C.P. 72 to have the district court review the September 20 order as to the discovery stay. Appendix Ex. 27. The motion for review was set for hearing before the district court on November 8, 2010, prior to the date when the interim stay imposed by the magistrate would have ended.

On October 15, 2010, with the interim discovery stay still in place, the district court *sua sponte* stayed the entire *DC Action*, pending the outcome of Defendants' Attorney's Fees Appeal. *See* Appendix Ex. 31. This October 15 order also vacated Defendants' fully briefed dispositive motions, plus their motion for review regarding the anti-SLAPP discovery stay. While Defendants had not requested a stay in connection with their appeal, the stay order appeared to grant them temporary immunity, consistent with the anti-SLAPP law.

On November 1, 2010, DC moved to modify the court's October 15 order. Appendix Ex. 32. Notwithstanding the protections of the anti-SLAPP law and Defendants' dispositive motions, which demonstrated that DC's claims fail as a matter of law, DC misleadingly argued that Defendants' pending appeal was

11

"frivolous," and that DC should be allowed to take "full" discovery, without citing the critical cases on this issue. *Id.*, Ex. 32 at 4-8. In its motion, DC provided no basis to lift the stay for DC's benefit alone, no specific factual issue as to which discovery was needed to oppose the anti-SLAPP motion, and no explanation of how any of its claims survived Defendants' dispositive motions. Defendants opposed DC's motion, arguing, among other things, that *Shady Grove* required the application of the anti-SLAPP statute's substantive protections to DC's state-law claims, and that DC's federal claims, which were equally subject to dismissal as a matter of law, did not support premature discovery. Appendix Ex. 34 at 8-10, 14. In reply, DC urged the district court to ignore *Shady Grove*, to apply conflicting Circuit precedent, and to allow DC to conduct one-sided discovery. Appendix Ex. 36 at 4-6. On November 16, 2010, the district court, without oral argument, adopted DC's prejudicial proposed order as follows:

> "The stay imposed in the Court's October 15, 2010 order is hereby modified *to allow DC Comics* to take full discovery related to its federal claims; The stay imposed in the Court's October 15, 2010 order is hereby modified *to allow DC Comics* to take full discovery related to its state-law claims; and The stay imposed in the Court's October 15, 2010 order is hereby modified *to allow DC Comics* to proceed with full and complete discovery of Joanne Siegel, Laura Siegel Larson, Jean Peavy, and Mark Peary."

Appendix Ex. 37 (emphasis added). The November 16 order offered no explanation for lifting the stay as to DC alone, and did not reinstate Defendants' pending dispositive motions or motion for review.

12

Seeking clarification and correction, Defendants immediately applied to the district court: (i) to reinstate and decide their vacated motions; (ii) to permit Defendants to make use of normal judicial processes in defense of the action; and (iii) to maintain a stay of discovery in the interim, or at least until this Court could decide whether discovery or a stay pending appellate writ review was appropriate. Appendix Exs. 39-40. On November 24, 2010, Defendants' application was summarily denied, with no explanation. Appendix Ex. 43.

DC took full advantage of the prejudicial orders it procured. On December 10, 2010, it served voluminous written discovery on each of the Defendants, due January 10, 2011. DC also continued to press for duplicative depositions of the Heirs, commencing on January 12, 2011, despite the fact that most of the Heirs are elderly and/or infirm and DC has already taken their full depositions in the closely related *Siegel* actions. Declaration of Nicholas Williamson, Exs. A-G.

## V.    **ARGUMENT**

### A.    **A Writ of Mandamus Should Issue**

A writ of mandamus should issue (1) to stop the clearly erroneous one-sided litigation process that is currently unfolding below, and (2) to provide guidance to the district courts regarding the proper procedures governing anti-SLAPP motions.

This Court has the power to issue writs of mandamus pursuant to its supervisory authority to "insure the proper and orderly administration of the

13

federal judicial system." *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1299 (9th Cir. 1982) (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)); *see also Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1339 (9th Cir. 1976) ("[M]andamus [i]s a tool to supervise the proper judicial administration in the district courts."). Such writs are regularly granted to provide guidance to district courts on important and recurring issues, including issues that implicate sensitive issues of federalism and the relationship between federal courts and the sovereign power of the states. *See In re Gonzalez*, 623 F.3d 1242, 1246 (9th Cir. 2010) (supervisory mandamus appropriate to address "proper judicial administration in the federal system") (quoting *LaBuy v. Howes Leather Co., 352* U.S. 249, 259-60 (1957)).[4]

Mandamus review of district court rulings is also available under the factors identified in *Bauman v. United States District Court*:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; ... (2) [t]he petitioner will be damaged or prejudiced in a way not correctable on appeal (this guideline is closely related to the first) ... (3) [t]he district court's order is clearly erroneous as a matter of law; ... (4) [t]he district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; ... [and] (5) [t]he district court's order raises new and important problems, or issues of law of first impression.

557 F.2d 650, 654-55 (9th Cir. 1977). These five factors are non-exclusive, as

---

[4] *See also People of State of Cal. v. Mesa*, 813 F.2d 960, 963 (9th Cir. 1987) ("federalism concerns justify review by mandamus") *aff'd sub nom. Mesa v. California*, 489 U.S. 121, 109 S. Ct. 959 (1989); *John B. v. Goetz*, 531 F.3d 448, 461 (6th Cir. 2008) (same).

each determination of whether to grant review on a petition requires a balancing of these factors, and not all five factors need be satisfied to justify mandamus. *Id.* at 655. *See Ellis v. United States District Court*, 356 F.3d 1198, 1210 (9th Cir. 2004) (writ petition granted where three of five *Bauman* factors were present); *Medhekar v. United States District Court*, 99 F.3d 325, 327 (9th Cir. 1996) (same).

Mandamus review is particularly appropriate when a district court's order violates a discovery immunity designed to protect a defendant from the consequences of an improperly brought suit. *Medhekar,* 99 F.3d at 326 (granting mandamus relief when discovery was ordered in violation of statute's discovery stay in a case of first impression); *cf. Barton v. United States Dist. Ct. for Central Dist. of Calif.*, 410 F.3d 1104, 1108–09 (9th Cir. 2005) (mandamus relief to resolve questions of privilege); *Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1491 (9th Cir. 1989) (same). Mandamus is similarly appropriate when a district court's order may undermine the protection of free expression. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010).

In this case, a writ of mandamus should be granted both under the *Bauman* factors and as an exercise of this Court's supervisorial authority. The orders in question interfere with immunities from suit provided by state law to protect the rights of free expression and petition, and implicate both issues of federalism and the First Amendment. In addition, the correct implementation of California's anti-

15

SLAPP law following the Supreme Court's decision in *Shady Grove* presents an important and recurring question of law as to which the district courts require guidance. Moreover, the one-sided stay elicited by DC calls for immediate review and correction as it has no foundation in law and violates due process.

### 1. Defendants Have No Other Means To Challenge The Order

The first *Bauman* factor is satisfied. In addition to this writ petition, Defendants have filed a notice of appeal in the district court from the relevant interlocutory orders. If this Court determines that it has no jurisdiction over the orders below under the collateral order doctrine or otherwise, then there is no means, other than through a writ of mandamus, for Defendants to obtain the necessary relief. Because this Court must have jurisdiction one way or another to review the district court's one-sided stay and the resulting deprivation of the immunities provided by the anti-SLAPP statute, the appropriate procedure is to grant at least an interim stay of the district court's November 16 order, consolidate the writ and appeal for prompt adjudication, and resolve the question of which procedure is appropriate at the same time as the Court resolves the merits.[5]

---

[5] *See Reynaga v. Cammisa*, 971 F.2d 414, 418 (9th Cir. 1992) (where district court order not directly appealable, court may treat appeal as petition for writ of mandamus or prohibition); Ninth Circuit General Orders Appendix A at 121, item 57 (June 2010) (authorizing motions attorneys to refer to the merits panel jurisdictional "issues intricately bound up in the merits of the appeal").

EXHIBIT G

### 2. Absent Mandamus Relief, Petitioners Will Be Damaged In A Way That Cannot Be Corrected On Appeal

The second *Bauman* factor is also satisfied. Defendants would suffer irreparable injury if review were delayed until an appeal of final judgment. This Court has consistently held that orders that improperly violate a statutory immunity from discovery are appropriate subjects for mandamus, because the purpose of that protection is to relieve a defendant of the burdens of the discovery *before* final judgment. In *Medhekar*, for example, this Court held, regarding a statutory immunity from discovery, that "[t]o the extent that potential harm exists in this case, it is irreparable and probably cannot even be addressed in a subsequent appeal from entry of a final judgment because it will be moot. It is the precise harm intended to be avoided by the stay provision of the Act." 99 F.3d at 327. *See also S.G. Cowen Sec. Corp. v. United States Dist. Ct.*, 189 F.3d 909, 914 (9th Cir. 1999) (noting that a violation of a statutory immunity from discovery could not be corrected on appeal).

The very harm that Defendants sought to avoid by their vacated dispositive motions – excessive litigation, cost, waste, disruption, inefficiency and burden from DC's baseless claims – cannot be corrected absent mandamus relief. *See Medhekar*, 99 F.3d at 326 (the "burden and cost" of discovery while defendants' motion to dismiss was pending could not be corrected in a subsequent appeal).

17

The same is true of the unfair one-sided stay in this case, which subjects Defendants to unbridled discovery while depriving them of any ability to defend themselves by motion, counterclaims or discovery. Additionally, unless a writ is granted, Defendants' compliance with the one-sided discovery order could moot appeal of that order as to discovery thereby obtained by DC. *Id.*

Moreover, as explained in more detail in section V.A.3.a below, California's anti-SLAPP statute, which provides for a substantive immunity from suit through (1) an automatic discovery stay, (2) prompt disposition of an anti-SLAPP motion before discovery ensues, and (3) immediate appellate review, is designed to protect freedom of speech and petition by discouraging retaliatory lawsuits like this one.[6] Such protections cannot be restored once Defendants are burdened with substantial litigation of baseless claims, while their duly filed anti-SLAPP motion is vacated.[7]

Here, the irreparable harm is palpable. DC is pressing for an extensive deposition on January 12 and 14, 2011 of Joanne Siegel, the 93-year-old widow of

---

[6] *See* Cal. Code Civ. Proc. §§ 425.16(g) (discovery stay), 425.16(f) (motion to be filed within 60 days and heard within 30 days of filing), § 425.16(i) (rulings on anti-SLAPP motions immediately appealable); *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) ("[T]he protection of the anti-SLAPP statute [is] a substantive immunity from suit.").

[7] *See Barton,* 410 F.3d at 1109 (noting that orders requiring discovery, despite a privilege or immunity, meet the second *Bauman* factor since such "disclosure cannot be undone"); *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 608, 175 L. Ed. 2d 458 (2009) (writ review serves as "safety valve … for promptly correcting" orders that "work[] a manifest injustice").

18

EXHIBIT G

Superman co-creator Jerome Siegel, despite testimony by her physician that this poses *a significant risk of heart attack or stroke* due to her age and heart condition, and even though DC already took her full-day deposition in the closely related *Siegel* action.  Appendix Ex. 9 at 24.  DC will also shortly re-take the deposition of her daughter, Laura Siegel Larson, who suffers from multiple sclerosis, painful spine disorders and fibromyalgia, even though Laura was already deposed twice in the *Siegel* action.  *Id.,* Ex. 9 at 24.  DC will similarly re-take the deposition of Jean Peavy, the 89-year-old sister of Superman co-creator Joseph Shuster, who suffers from aphasia due to a severe stroke last year, and was also already deposed in the *Siegel* case.  *Id.,* Ex. 9 at 43-45.  DC has also recently promulgated hundreds of document requests and interrogatories pertaining to its baseless state-law claims, with responses due on January 10, 2011.  Declaration of Nicholas Williamson, Exs. A-G.

### 3.     The Orders Below Require Correction

The Third through Fifth *Bauman* factors focus on the importance, persistence, and clarity of errors in a district court's orders.  These factors all point in favor of granting the writ.  In preventing Defendants from taking any action to defend themselves, while allowing DC to indulge in "full" one-sided discovery, the orders entail multiple clear errors of law.  As a result:  (1) Defendants cannot obtain a hearing or decision on their anti-SLAPP motion and other dispositive

19

motions, and have been stripped of their right to have these motions heard at a meaningful time; (2) Defendants cannot obtain a hearing or decision on their motion that sought to stay discovery as to DC's state-law claims under California's anti-SLAPP statute; (3) Defendants cannot otherwise defend themselves in this action through motions, counterclaims, or discovery because the action remains stayed as to Defendants; and (4) despite the closing of the courthouse doors to Defendants, DC may proceed to take unbridled discovery on its facially barred claims. The orders violate California's anti-SLAPP law, basic norms of due process, and the Federal Rules of Civil Procedure. The errors are persistent in that Defendants' detailed application to rectify the unfairness caused by the one-sided November 16 order was refused. Appendix Exs. 39-40, 42-43.

### a.    The Anti-SLAPP Immunity

DC urged and obtained clear error by arguing that Defendants were not entitled to the protections of the anti-SLAPP statute merely because DC had filed suit in federal court. The anti-SLAPP law is a substantive provision of California law designed to address and remedy "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code. Civ. Proc. § 425.16(a). In enacting the law, the California legislature expressly declared "that it is in the public interest to encourage continued participation in matters of public

20

significance, and that this participation should not be chilled through abuse of the

judicial process," and that the law should be "broadly construed." *Id.*

As this Court has recognized, "[t]he protection of the anti-SLAPP statute [is]

a substantive immunity from suit." *Batzel*, 333 F.3d at 1025. "The statute was

designed to allow courts 'to promptly expose and dismiss meritless and harassing

claims seeking to chill protected expression,'" and prevents a plaintiff from

coercing a defendant to respond to abusive, costly and time-consuming discovery

before the court has ruled on the anti-SLAPP motion. *Mindys,* 611 F.3d at 595

(citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005)).

The statute mandates that an anti-SLAPP motion be heard and decided in a

timely manner that protects the defendant's immunity from the burdens of

litigation. It must be served no more than 60 days after service of the complaint,

and set for hearing not more than 30 days after the service of the motion. Cal.

Code Civ. Proc. § 425.16(f); *Fair Political Practices Comm'n v. Am. Civil Rights

Coalition, Inc.*, 121 Cal. App. 4th 1171, 1175 (2004) (noting importance of prompt

resolution to protect defendants). Discovery remains stayed pending the decision

on the motion to suppress "non-meritorious cases aimed at chilling [the right of

petition] through costly, time-consuming litigation." *New.Net, Inc. v. Lavasoft,*

356 F. Supp. 2d 1090, 1098 (C.D. Cal. 2004); Cal. Code Civ. Proc. § 425.16(g).

That stay may only be lifted in narrow particularized circumstances, *id.*, which DC

made no effort to meet. *See, e.g., Paterno v. Superior Ct.*, 163 Cal. App. 4th 1342, 1351 (2008) (reversing grant of discovery); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 593 (2003) (affirming denial of discovery). As with federal immunities from suit, an adverse ruling on an anti-SLAPP motion is subject to immediate appellate review. Cal. Code Civ. Proc. § 425.16(i); *Batzel*, 333 F.3d at 1025; *cf. Mitchell v. Forsyth*, 472 U.S. 511, 524-30 (1985) (qualified immunity).

The immunity from the burdens of litigation pending prompt determination of an anti-SLAPP motion is an essential protection of the anti-SLAPP statute. Cal. Code. Civ. Proc. §§ 425.16(f), (g). Under the district court's orders, however, Defendants cannot obtain a ruling on their anti-SLAPP motion, are subject to onerous discovery burdens, including duplicative depositions of elderly and ill witnesses, and have no ability to take any affirmative action to defend against DC's baseless retaliatory claims. The anti-SLAPP statute is turned on its head.

The reasoning of the recent Supreme Court decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, mandates that the substantive protections of California's anti-SLAPP statute must apply to state claims brought in federal court. 130 S. Ct. 1431 (2010). In *Shady Grove*, the Supreme Court addressed the interaction between a New York law relating to class action lawsuits and Rule 23 of the Federal Rules of Civil Procedure. In a controlling concurrence, Justice Stevens made clear that, under the Rules Enabling Act, a federal rule does

not govern when it "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." 130 S. Ct. at 1452 (Stevens, J., concurring).[8] As Justice Ginsburg noted in her dissent, between the concurrence and dissent, a majority of the Court "agrees that Federal Rules should be read with moderation" in suits as to which state law provides the rule of decision "to accommodate important state concerns." *Shady Grove,* 130 S. Ct. at 1463 n.2 (Ginsburg, J., dissenting).

DC erroneously argued that the substantive protections of the anti-SLAPP statute have no application in federal court, citing *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832 (9th Cir. 2001). Appendix Ex. 9 at 18-23, 52-55; Ex. 27 at 3-5. DC's position was inconsistent with and effectively overruled by *Shady Grove.* *See Miller v. Gammie,* 335 F.3d 889 (9th Cir. 2003) (*en banc*) (noting obligation to apply Supreme Court ruling that may not have decided the identical question to

---

[8] *See McKinney v. Bayer Corp.,* __ F. Supp. 2d __, 2010 WL 3834327 at *9-*12, Case No. 10-CV-224 (N.D. Ohio Sep. 30, 2010) (holding Justice Stevens' *Shady Grove* concurrence as controlling, and that the class action certification requirements of state law were substantive and applied in federal court despite the F.R.C.P.); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation,* 2010 WL 2756947 at *2, Case No. 1:08-WP-65000 (N.D. Ohio July 12, 2010) (same); *Bearden v. Honeywell International Inc.,* 2010 WL 3239285 at *10, Case No. 3:09-1035 (M.D. Tenn. Aug. 16, 2010) (holding Justice Stevens' *Shady Grove* concurrence as controlling, and that state-law provision in question was "so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights" and therefore applied in federal court).

23

one previously addressed by this Court, but that nonetheless has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"); *California Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087, 1093-95 (9th Cir. 2008) (3-judge panel applying *Miller*). *Metabolife* is also in tension with decisions of this Court, including *Batzel*, 333 F.3d at 1025 (recognizing California anti-SLAPP law as immunity from suit), *Englert v. MacDonnel*, 551 F.3d 1099, 1105-06 (9th Cir. 2009) (same), and *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010) (describing "automatic[]" discovery stay of California anti-SLAPP law).

Under *Shady Grove* and *Batzel*, the anti-SLAPP statute provides Defendants with substantive protections against DC's state law claims pending a prompt ruling on their anti-SLAPP motion. Instead, they got the opposite.

DC contended in the alternative that the anti-SLAPP statute does not apply to federal claims, such as its Third Claim. Ex. 32 at 4-6; Ex. 40, Ex. C at 44:20-45:7. However, the Third Claim has no basis in federal law or otherwise. Appendix Ex. 15 at 4-7, 11-13. It asserts a purported exclusive "right" under the Copyright Act to negotiate the repurchase of the Heirs' recaptured copyrights that is contrary to the explicit text of the Act and to caselaw that is directly on point. *See* Appendix Ex. 15 at 5-7; *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987). DC's Third Claim is little more than an effort to

24

erroneously re-plead its state law claims (*see* Sixth Claim, Appendix Ex. 6 at ¶¶ 178-80) under federal law. A facially baseless federal claim cannot undo the protections of the anti-SLAPP law's discovery stay. Otherwise plaintiffs, like DC, could simply replead their state law SLAPP claims as purported federal claims to defeat the anti-SLAPP statute. At a minimum, where state claims have the indicia of a meritless retaliatory lawsuit subject to the anti-SLAPP statute, district courts should approach with caution broad discovery demands as to purported federal claims that are subject to dismissal as a matter of law.[9]

Particularly in a case like this, which implicates core First Amendment values and the appropriate role of federal courts in adjudicating anti-SLAPP claims, a writ of mandamus is needed to provide clarity and guidance, including the appropriate management of facially deficient federal claims in furtherance of a SLAPP suit. *See Perry*, 591 F.3d at 1159 ("[T]his novel and important question [affecting core First Amendment protections] may repeatedly evade review because of the collateral nature of the discovery ruling."); *Cheney v. United States Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 381 (2004) (an "intrusion by the federal judiciary on a delicate area of federal-state relations" will justify a writ).

---

[9] DC's other two federal claims (the First Claim and Second Claim) sought to re-litigate matters already decided in the *Siegel* action and, like the Third Claim, were subject to dismissal as a matter of law. *See* Appendix Ex. 12.

25

### b. The Orders Violate Due Process And Eliminate Defendants' Rights Under The Federal Rules Of Civil Procedure

Under the orders in question, DC is allowed "full" discovery as to all its claims, meritless or not, while Defendants are prevented by a one-sided stay from taking any action to defend themselves, whether by motion, counterclaims, discovery or otherwise. Appendix Exs. 37, 43. Defendants' request to correct this unfairness was denied. The orders have deprived Defendants of due process and the normal protections of the Federal Rules of Civil Procedure.

"The Federal Rules of Civil Procedure are designed to vindicate the due process of law." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000). They are not designed to give either side a substantive advantage. 28 U.S.C. § 2072(b) (rules of procedure "shall not abridge, enlarge or modify any substantive right"). Rather, they are designed to level the playing field. The plaintiff is required to provide a "plausible" basis for any complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (construing F.R.C.P. 8). This requirement is necessary because "the costs of modern federal [] litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim." *Id.* at 558-60.

As to DC's fraud-based allegations (Appendix Ex. 6, ¶¶ 78, 175-179, 185; Ex. 22 at 15-16), particularity in pleading is required. F.R.C.P. 9(b). That

EXHIBIT G
53

heightened standard is also designed to protect defendants against unwarranted discovery. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (Rule 9(b)'s purpose is to "prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs.").

Federal Rule of Civil Procedure 12(b)(6) provides defendants a means to test the "legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). "'[I]f the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery … would represent an abdication of our judicial responsibility.'" *Rutman,* 829 F.2d at 738. Our system of justice does not contemplate prohibiting a defendant from testing the legal sufficiency of a complaint and using other procedures to defend and advance its position, while affording the plaintiff the full panoply of discovery in search of anything that might enable it to craft a new cause of action. *See Twombly,* 550 U.S. at 559 ("it is self-evident that the problem of discovery abuse cannot be solved" without meaningful review of the pleadings). Rather, there must be a factual and legal basis for any complaint before it is signed and filed. F.R.C.P. 11. Once subject to process, a defendant may bring counterclaims and third-party claims. F.R.C.P. 13 & 14.

In addition to these pleading standards, discovery under the Federal Rules

27

and as a matter of due process is a "two-way street." *Weatherford v. Bursey*, 429 U.S. 545, 562 (1977); *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947) ("[D]iscovery is mutual," as "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."); *In re Union Carbide Gas Plant Disaster*, 809 F.2d 195, 205 (2d Cir. 1987) (due process requires that "both sides be treated equally" in discovery); F.R.C.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant ...."); F.R.C.P. 26(d)(1)-(2) ("discovery may be used in any sequence"; "discovery by one party does not require any other party to delay its discovery"). Indeed, one-sided discovery is unconscionable. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 786–87 (9th Cir. 2002) (holding an arbitration agreement "unfairly one-sided and, therefore, substantively unconscionable" because it allowed for one-sided discovery favoring one side over the other).[10]

Here, Defendants are not only forced to endure abusive discovery on meritless claims, they must do so while their entire side of the case is stayed,

---

[10] *See also Inland Am. (LIP) Sub, LLC v. Lauth*, 2010 U.S. Dist. LEXIS 14899, at *5 (S.D. Ind. Feb. 19, 2010) (denying defendant's motion to extend the deadline for themselves because defendants essentially "seek a one-sided discovery stay"); *Bank of Am. v. First Mut. Bancorp of Ill., Inc.*, 2010 U.S. Dist. LEXIS 41841, at *11 (N.D. Ill. Apr. 26, 2010) ("[I]t would be unfair to impose a one-sided stay"); *Matthews v. Mariner*, 2009 U.S. Dist. LEXIS 13420, at *6 (S.D. Ind. Feb. 19, 2009) ("[T]he particular stay requested by Petitioners would likely prejudice or tactically disadvantage Plaintiff because it seemingly would allow Petitioners to conduct discovery but would not permit Plaintiff to do so").

EXHIBIT G

thereby eliminating their right to test the legal sufficiency of the pleadings, their right to bring counterclaims or third-party claims, and their right to mutual discovery. While some discovery may be permitted while a motion to dismiss is pending, the general practice is not to do so,[11] and there is no authority allowing a plaintiff to conduct "full" one-sided discovery on baseless claims, while the defendant is paralyzed from taking any action in its defense, including by procedurally proper motions that dispose of such claims as a matter of law. This intolerable scenario violates fundamental due process norms protected by the Fifth Amendment to the U.S. Constitution, and flies in the face of Rule 8, Rule 9(b), Rule 11, the availability of dismissal under Rule 12(b)(6), the ability to bring affirmative claims under Rules 13 and 14, as well as the aforementioned rules of

---

[11] *See Rutman,* 829 F.2d at 738 (that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense"); *Wagh v. Metris Direct, Inc.,* 363 F.3d 821, 829 (9th Cir. 2003) ("[D]iscovery at the pleadings stage is only appropriate where factual issues are raised by a Rule 12(b) motion."); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984) (approving discovery stay because "there were no factual issues" raised by motions to dismiss); *Wood v. McEwen,* 644 F.2d 797, 802 (9th Cir. 1981) (authorizing stay of discovery when "plaintiff will be unable to state a claim for relief"); *In re Graphics Processing Units Antitrust Litig.,* 2007 U.S. Dist. LEXIS 57982, at *24 (N.D. Cal. July 24, 2007) ("[F]irst resolving the motions to dismiss is the better course."); *Rivera v. Heyman,* 1997 U.S. Dist. LEXIS 2003, at *3 (S.D.N.Y. Feb. 27, 1997) (holding that "disposition of the dismissal motion" should precede discovery); *Thomas v. N.Y. City Dep't of Educ.,* 2010 U.S. Dist. LEXIS 95798, at *8-9 (E.D.N.Y. Sept. 14, 2010) (motion to dismiss would "narrow and clarify" the scope of discovery).

mutual discovery.[12] This Court is fully justified in stepping in to correct the inequities caused by this one-sided stay that effectively nullifies the Federal Rules. *Will v. United States*, 389 U.S. 90, 107 (1967) (noting the vital corrective and didactic function of mandamus).

## VI.    CONCLUSION

For the foregoing reasons, a writ of mandamus should be granted. This Court should direct the district court to: (1) vacate its orders of November 16 and 24, 2010; (2) reinstate, promptly set for hearing and decide Defendants' dispositive motions; and (3) stay discovery until Defendants' anti-SLAPP motion is decided absent a showing of particularized need by DC.

---

[12] On December 17, 2010, DC informed Defendants that DC would not object to Defendants "pursuing discovery." Declaration of Laura W. Brill, ¶¶ 2-3, Ex. A. Significantly, DC, in seeking to modify the district court's October 15 stay order and in opposing Defendants' request that the November 16 order be clarified, failed to state that they would accept discovery from Defendants notwithstanding the stay order, and the district court's November 16 modification order, which adopted the one-sided order *proposed by DC*, is to the contrary. *See* Appendix Exs. 34, 36-37. Defendants have proposed that DC stipulate to the resolution of the matters addressed in this writ, but DC has not agreed. *See* Declaration of Laura Brill, ¶¶ 2-3, Ex. A.

30

Dated:  December 17, 2010

Respectfully submitted,

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, Joanne Siegel
and Laura Siegel Larson

Laura W. Brill
KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants-Petitioners,
Pacific Pictures Corporation, IP Worldwide,
LLC, IPW, LLC, and Marc Toberoff

31

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 21(d)

Pursuant to Federal Rule of Appellate Procedure 21(d), I certify that

Defendants-Petitioners' brief is proportionately spaced, has a typeface of 14 points

or more and does not exceed 30 pages.


Dated: December 17, 2010

_____
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, Joanne Siegel
and Laura Siegel Larson


Dated: December 17, 2010

_____
Laura W. Brill
KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants-Petitioners,
Pacific Pictures Corporation, IP Worldwide,
LLC, IPW, LLC, and Marc Toberoff


32

EXHIBIT G
59

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rules 21-3 and 28-2.6, Defendants-Petitioners hereby identify the following related cases pending in this Court, which arise out of the same case in the district court:

(1)    *Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, and Marc Toberoff v. DC Comics*, Case No. 10-56594.

(2)    *Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Joanne Siegel, Laura Siegel Larson, and Jean Adele Peavy v. DC Comics*, Case No. 10-56980.

Dated: December 17, 2010

_____
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, Joanne Siegel
and Laura Siegel Larson

Dated: December 17, 2010

_____
Laura W. Brill
KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants-Petitioners,
Pacific Pictures Corporation, IP Worldwide,
LLC, IPW, LLC, and Marc Toberoff

33

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2010, I caused to be served a true and correct copy of the documents entitled Petition For a Writ of Mandamus Compelling Hearing and Decisions on Motions and Prohibiting District Court From Allowing One-Sided Discovery, Petitioners' Appendix of Exhibits in Support of Petition For a Writ Of Mandamus Compelling Hearing and Decisions on Motions and Prohibiting District Court From Allowing One-Sided Discovery – Volumes 1 through 6, and the Declaration of Nicholas C. Williamson in Support of Petition for a Writ of Mandamus Compelling Hearing and Decisions on Motions and Prohibiting District Court From Allowing One-Sided Discovery by personal service on the following interested parties in this action:

Daniel Petrocelli, Esq.
O'MELVENY & MYERS LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Honorable Otis D. Wright II
United States District Court
Courtroom 11
312 N. Spring Street
Los Angeles, CA 90012

Dated: December 17, 2010

Keith G. Adams

34

EXHIBIT G
61