# EXHIBIT 5

1

1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
4

5
    DC COMICS,                      )
6                                   )
                                    )
7          PLAINTIFF,               )
                                    )
8          VS.                      ) CASE NO. CV 10-03633-ODW(RZX)
                                    )
9                                   )
    PACIFIC PICTURES CORP.,         )
10   ET AL.,                        )
                                    ) LOS ANGELES, CALIFORNIA
11                                  ) JUNE 20, 2011
                                    ) (10:38 A.M. TO 11:32 A.M.)
12         DEFENDANTS.              )
    _____)
13

14                            HEARING
                 BEFORE THE HONORABLE RALPH ZAREFSKY
15               UNITED STATES MAGISTRATE JUDGE

16

17

18   APPEARANCES:              SEE NEXT PAGE

19   COURT REPORTER:           RECORDED; COURT SMART

20   COURTROOM DEPUTY:         ILENE BERNAL

21   TRANSCRIBER:              DOROTHY BABYKIN
                               COURTHOUSE SERVICES
22                             1218 VALEBROOK PLACE
                               GLENDORA, CALIFORNIA   91740
23                             (626) 963-0566

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25

EXHIBIT 5
30

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        O'MELVENY & MYERS LLP
 2                             BY:   MATTHEW T. KLINE
                                     JASON TOKORO
 3                                   CASSANDRA L. SETO
                                     ATTORNEYS AT LAW
 4                             1999 AVENUE OF THE STARS
                               7TH FLOOR
 5                             LOS ANGELES, CALIFORNIA  90067

 6
     FOR SIEGEL AND SHUSTER    TOBEROFF & ASSOCIATES, P.C.
 7   DEFENDANTS:               BY:   MARC TOBEROFF
                                     KEITH GREGORY ADAMS
 8                                   ATTORNEYS AT LAW
                               2049 CENTURY PARK EAST
 9                             SUITE 2720
                               LOS ANGELES, CALIFORNIA  90067
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 5
31

3

1                          I N D E X

2    CASE NO. CV 10-03633-ODW(RZX)              JUNE 20, 2011

3    PROCEEDINGS:   1.  PLAINTIFF'S MOTION FOR RECONSIDERATION OF
                        APRIL 11, 2011 ORDER
4                   2.  PLAINTIFF'S MOTION TO COMPEL THE FURTHER
                        PRODUCTION OF DOCUMENTS
5                   3.  DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 5
32

4

1          LOS ANGELES, CALIFORNIA; MONDAY, JUNE 20, 2011; 10:38 A.M.

2                    THE CLERK:  ITEM NUMBER 3, CASE NUMBER

3     CV 10-03633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES CORP.,

4     ET AL.

5                    COUNSEL, PLEASE MAKE YOUR APPEARANCES.

6                    MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.

7                    MARC TOBEROFF FOR THE DEFENDANTS.

8                    THE COURT:  NOW, MR. TOBEROFF, THE LAST TIME YOU WERE

9     HERE I TEASED YOU ABOUT THE FACT THAT YOU DIDN'T HAVE BUSINESS

10    CARDS.  AND YOU SAID, WELL, I'VE JUST MOVED.  AND STILL ALL I

11    GET IS A POST-IT.

12                   MR. TOBEROFF:  WE STILL DON'T HAVE CARDS.  WE HAVEN'T

13    MOVED YET.  WE WERE SUPPOSED TO MOVE, BUT WE HAVEN'T MOVED YET.

14                   THE COURT:  ALL RIGHT.

15                   MR. TOBEROFF:  I WAS GOING TO GET THEM MADE SPECIALLY

16    UP FOR YOU, BUT IT --

17                   THE COURT:  WELL, MAYBE THAT'S WHAT YOU SHOULD DO.

18                   MR. TOBEROFF:  -- SLIPPED MY MIND.

19                   THE COURT:  ALL RIGHT.  LET'S GET THE OTHER

20    APPEARANCES.

21                   MR. KLINE:  YOUR HONOR, MATT KLINE ON BEHALF OF DC

22    COMICS FROM O'MELVENY & MYERS ALONG WITH MY COLLEAGUES

23    CASSANDRA SETO AND JASON TOKORO.

24                   THE COURT:  ALL RIGHT.

25                   OKAY.  WE HAVE THREE MOTIONS HERE.

EXHIBIT 5
33

5

1          MR. KLINE:  WE DO, YOUR HONOR.  AND WITH YOUR

2   INDULGENCE, I'D LIKE TO START WITH THE MOTION FOR

3   RECONSIDERATION.

4          THE COURT:  WELL, THAT'S THE ONE I WAS GOING TO START

5   WITH.  SO, YOU GO AHEAD.

6          MR. KLINE:  REALLY TWO ISSUES PRESENTED HERE.

7          THE FIRST IS SEEKING JULY CORRESPONDENCE FROM MS.

8   LARSON TO HER BROTHER MICHAEL SIEGEL.

9          AND THE REASON WHY WE'RE HERE ON THIS MOTION FOR

10  RECONSIDERATION IS THERE'S PRETTY POWERFUL NEW EVIDENCE THAT

11  SUCH A JULY LETTER EXISTS.  AND THE POWERFUL NEW EVIDENCE FOR

12  THAT IS THE MAY 13TH, 2003 DOCUMENT THAT YOU ORDERED PRODUCED

13  IN APRIL.

14         AND JUST TO FRAME THE ISSUE, YOUR HONOR, THIS IS

15  DOCKET NUMBER 162-6 AT 47.  THIS IS ONE OF THE PIECES OF

16  EVIDENCE WE'VE CITED IN OUR BRIEF.

17         THERE ARE FIVE PRIVILEGE LOG ENTRIES ON DEFENDANT'S

18  LOGS FROM JULY 2003 THAT INCLUDE THE IDENTITY OF THE AUTHOR IS

19  LAURA SIEGEL LARSON.  IT GOES TO ATTORNEY MARC TOBEROFF.  IT'S

20  CLAIMED TO BE A FACSIMILE.  AND THEN THE PRIVILEGE CLAIM IS

21  ATTORNEY-CLIENT PRIVILEGE.

22         AND IF YOU BELIEVE THE TOBEROFF TIME LINE DOCUMENT,

23  THEY SAY THAT THERE'S A JULY 5TH, 2003 LETTER THAT MS. LARSON

24  SENT TO HER BROTHER.

25         IF YOU LOOK AT SOME OF THE "Q" NUMBERS AND THE ESCROW

EXHIBIT 5
34

6

1   NUMBERS AND MR. SMITH'S DECLARATION FROM WAY BACK WHEN, WE

2   THOUGHT IT WAS AROUND JULY 11TH THAT THIS LETTER IS SENT FROM

3   SISTER TO BROTHER, A NON-PRIVILEGED LETTER.

4         AND TO BE REALLY CLEAR, IN YOUR LAST RULING YOU SAID

5   A COUPLE OF THINGS.  YOU SAID, ONE, DEFENDANTS HAVE BEEN

6   CRYPTIC ABOUT WHETHER THIS SISTER-TO-BROTHER LETTER EXISTS.

7   BUT I'M NOT GOING TO RECONSIDER THAT BECAUSE YOU DON'T HAVE ANY

8   NEW EVIDENCE FOR ME TO CONSIDER -- RECONSIDER JUDGE LARSON'S

9   RULING IN SIEGEL.  AND I'M GOING TO TREAT THIS AS LAW OF THE

10  CASE.

11        WE THINK THAT THE NEW EVIDENCE IS OBVIOUSLY THE MAY

12  2013 LETTER -- I'M SORRY, MAY 2003 LETTER BECAUSE IT ASKED

13  THESE 12 QUESTIONS OF THE SISTER.  THERE'S NEVER BEEN A

14  RESPONSE PRODUCED.  THERE'S NO DECLARATION FROM MR. TOBEROFF.

15  THERE'S NO DECLARATION FROM MS. LARSON HERSELF SAYING I NEVER

16  SENT SUCH A LETTER.  I DON'T KNOW WHAT THEY'RE TALKING ABOUT.

17  THAT'S NOT WHAT THESE PRIVILEGE LOG ENTRIES ARE.

18        AND I THINK WHAT'S REALLY IMPORTANT HERE TO THINK

19  ABOUT IS THE FOLLOWING.

20        AND, JASON, CAN YOU HOLD UP THE OTHER DOCUMENT.

21        (PAUSE IN PROCEEDINGS.)

22        MR. KLINE:  WAY BACK IN MAY 2003 -- NO, SORRY, MAY

23  2007, THE ISSUE OF THE TOBEROFF TIME LINE DOCUMENT CAME UP.

24  AND DC WAS SAYING WE DON'T THINK ALL THE DOCUMENTS THAT ARE

25  ATTACHED TO THE TOBEROFF TIME LINE DOCUMENT HAVE EITHER BEEN

EXHIBIT 5
35

7

1   PRODUCED OR LOGGED.

2          AND YOU SAID AT A HEARING, MR. TOBEROFF, I THINK

3   YOU'VE LOST SOME WIGGLE ROOM HERE.  PLEASE SUBMIT A DECLARATION

4   TO ME THAT GOES THROUGH EVERY SINGLE ONE OF THE ENTRIES.

5          AND IF YOU LOOK OVER HERE, HERE ARE THE BATES NUMBERS

6   THAT THE ESCROW AFFIXED TO THE DOCUMENTS.

7          -- AND TELL ME WHETHER -- WHERE IT IS.

8          AND IN SOME INSTANCES THEY SAID, WELL, IT'S AT

9   PRIVILEGE LOG ENTRY NUMBER 325.  OTHER TIMES THEY SAID, WELL,

10  HERE IT'S BEEN PRODUCED.

11         THIS OBVIOUSLY WAS THE TOBEROFF TIME LINE DOCUMENT.

12         THEY HAVE NOW ADMITTED IN THEIR RESPONSES --

13  RESPONSIVE BRIEFINGS ON THE BRIEFS FOR TODAY'S HEARING THAT THE

14  MAY 13TH, 2003 LETTER IS AMONG THE STOLEN DOCUMENTS.  BUT IF

15  YOU READ THIS LOG BEGINNING TO END, THERE'S ABSOLUTELY NO

16  INDICATION OF WHERE THAT MAY 13TH, 2000 DOCUMENT EXISTS.

17         AND, SO, THERE'S TWO PROBLEMS PRESENTED THERE.  ONE

18  IS, A LOT OF WIGGLE ROOM WAS LEFT.  AND A DOCUMENT LIKE THE MAY

19  13TH, 2003 DOCUMENT, DESPITE THE COURT'S ORDERS, EITHER PRODUCE

20  THE DOCUMENTS THAT YOU HAVEN'T LOGGED BEFORE OR TELL ME WHERE

21  THERE'S LOGGED -- WAS SLOTTED, NUMBER ONE.

22         AND, NUMBER TWO, I KNOW WE KEEP ON RAISING THIS

23  POINT, BUT THE PRIVILEGE LOGS IN THIS CASE ARE JUST -- THEY'RE

24  TOO OPAQUE.  AND I UNDERSTAND THAT THERE'S NO HARD AND FAST

25  RULE ABOUT HOW MUCH DETAIL ONE MUST REQUIRE.  AND I UNDERSTAND

EXHIBIT 5
36

8

1    THE SIEGEL CASE AND IN THE RUTTER GUIDE ITSELF, IT BLESSES

2    CERTAIN FORM USES OF PRIVILEGE LOGS.

3            BUT I THINK IF YOU LOOK AT RUTTER AND SPECIFICALLY

4    SECTION 11:1918, IT SAYS VERY SPECIFICALLY THAT THE BEST

5    PRACTICE IS TO SEPARATELY LIST ATTACHMENTS TO DOCUMENTS.

6            AND DOUBTLESS, THE MAY 13TH, 2003 LETTER IS AN

7    ATTACHMENT TO ONE OF THESE DOCUMENTS OVER WHICH THEY CLAIM

8    PRIVILEGE.  WE ALSO BELIEVE THAT THE JULY 2003 CORRESPONDENCE

9    FROM THE SISTER TO HER BROTHER IS AN ATTACHMENT AS WELL.

10           AND, SO, WE'RE REALLY SEEKING TWO ORDERS ON THIS

11   MOTION.  THE FIRST IS GO THROUGH ALL THE JULY CORRESPONDENCE

12   THAT YOU HAVE, DEFENDANTS.  AND IF SUCH A LETTER FROM SISTER TO

13   BROTHER EXISTS OR DRAFTS OF IT, YOU MUST PRODUCE IT.

14           AN ALTERNATIVE WAY OF GETTING AT THAT ISSUE, YOUR

15   HONOR, IS FOR YOU TO ORDER THE IN CAMERA INSPECTION OF THOSE

16   FIVE PRIVILEGE LOG ENTRIES FROM MS. LARSON TO MR. TOBEROFF

17   DURING THAT RELEVANT TIME PERIOD.  AND, AGAIN, THOSE PRIVILEGE

18   LOG ENTRIES ARE 7/12 THROUGH 7/15.

19           BUT I THINK THE THIRD AND MOST IMPORTANT THING IS

20   WE'RE JUST GOING TO BE BACK HERE AGAIN AND AGAIN AND AGAIN

21   UNLESS THERE IS AN ORDER THAT MORE SPECIFIC PRIVILEGE LOGS BE

22   PRODUCED IN THIS CASE.  I THINK ONCE THE TOBEROFF TIME LINE

23   DOCUMENTS COME PRODUCED, WE'RE GOING TO FIND MANY, MANY MORE

24   DOCUMENTS THAT WERE NOT PRIVILEGED THAT WERE IMPROPERLY

25   WITHHELD AND WERE BURIED BEHIND OPAQUE PRIVILEGE LOG ENTRIES

EXHIBIT 5
37

9

1  LIKE THIS.  AND I THINK THERE'S A NEED NOW TO DO THAT.

2         NOW, WHAT'S -- I KNOW YOU HAVE TO BALANCE THE

3  EQUITIES IN THINKING ABOUT ISSUING A DISCOVERY ORDER LIKE THAT.

4  ON THE ONE HAND, I THINK IT WOULD REQUIRE THEM SEVERAL DAYS TO

5  GO THROUGH THEIR CURRENT PRIVILEGE LOGS AND UPDATE THEM TO

6  INCLUDE THE FOLLOWING:

7         IF A DOCUMENT IS A SEPARATE ATTACHMENT, LIST IT AS A

8  SEPARATE ATTACHMENT.

9         IF THERE ARE SEVEN EMAILS IN A CHAIN, AND YOU'RE

10 CLAIMING ONE IS PRIVILEGED OR TWO ARE PRIVILEGED OR ALL SEVEN

11 ARE PRIVILEGED, LIST THEM OUT SEPARATELY.

12        NUMBER THREE, WHO ARE THE TRUE AUTHORS AND RECIPIENTS

13 OF THESE DOCUMENTS.  IF IT'S A LETTER FROM SISTER TO BROTHER,

14 THAT'S A LETTER COMMUNICATED TO THE ATTORNEY, THE SENDER IS THE

15 SISTER.  THE RECIPIENT IS THE BROTHER.  AND THE ATTORNEY IS A

16 LATER C.C.

17        AND IF YOU LOOK AT THE RUTTER GUIDE, IT'S VERY CLEAR

18 THAT THESE ARE THE BETTER PRACTICES TO FOLLOW HERE.  WE'RE NOT

19 ASKING FOR SOME NOVEL EXCEPTION HERE.  RUTTER SAYS THESE ARE

20 THE BETTER PRACTICES TO FOLLOW TO AVOID DISPUTES LIKE THIS.

21        AND, SO, ON THE OTHER HALF OF THE EQUATION IS WHAT IS

22 THE PREJUDICE TO DC OF NOT HAVING THIS INFORMATION.  THE

23 PREJUDICE TO DC IS NOT HAVING ACCESS TO RELEVANT, PERTINENT,

24 PROBATIVE INFORMATION LIKE THE MAY 2003 LETTER OR THE JULY 2003

25 LETTER THAT WE CURRENTLY DON'T HAVE.

EXHIBIT 5
38

1          THAT'S THE NUB OF OUR ARGUMENT ON THE MOTION FOR

2    RECONSIDERATION.

3          I KNOW THAT THE DEFENDANTS HAVE MADE A PROCEDURAL

4    ARGUMENT THAT THIS MOTION IS MOOT OR SOMEHOW BARRED BY JUDGE

5    WRIGHT'S ONE-WORD DENIAL OF OUR MOTION TO REVIEW IN FRONT OF

6    HIM.  THAT JUST CAN'T BE THE CASE FOR TWO REASONS.

7          NUMBER ONE, VERY DISTINCT LEGAL STANDARDS AND

8    DIFFERENT ONES.  ON THE ONE HAND, HE WAS REVIEWING YOUR RULING

9    FOR CLEAR ERROR BASED ON THE RECORD IN FRONT OF YOU.  THAT

10   RECORD DID NOT INCLUDE THE MAY 13TH, 2003 LETTER.

11         MOTION FOR RECONSIDERATION:  DIFFERENT STANDARD.

12   HAVE NEW FACTS EMERGED.  AND CLEARLY, THIS IS A NEW FACT THAT

13   WAS NOT BEFORE THE COURT.

14              AND, YOUR HONOR, I WANT TO BE VERY CLEAR ABOUT THIS.

15              THERE WERE TWO COURT ORDERS, ONE FROM 2007 --

16              THE COURT:  NO.  I'VE READ --

17              MR. KLINE:  -- AND ONE FROM 2000- --

18              THE COURT:  -- ALL THIS.

19              MR. KLINE:  OKAY.  SO, I DON'T WANT TO RETREAD THAT

20   GROUND.  BUT THAT'S BASICALLY OUR SUBMISSION ON THE MOTION FOR

21   RECONSIDERATION.

22              THE COURT:  ALL RIGHT.  LET ME HEAR FROM MR.

23   TOBEROFF.

24              MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.

25              THE COURT:  GOOD MORNING.

EXHIBIT 5
39

11

1          MR. TOBEROFF:  THE SOLE BASIS -- THE PURPORTED BASIS

2   FOR THEIR BRINGING THIS MOTION FOR RECONSIDERATION IS THE MAY

3   13TH LETTER, WHICH THEY HAVE DECLARED IS A STUNNING REVELATION.

4   AND IT'S BARELY, IF AT ALL, RELEVANT TO THIS CASE.

5          THEY MADE THE EXACT SAME ARGUMENTS REGARDING THE --

6   AND IT DOESN'T -- BY THE WAY, THE MAY 13TH LETTER HAS NO

7   BEARING ON THE VERACITY OF OUR PRIVILEGE LOGS BECAUSE THE MAY

8   13TH LETTER WAS NOT LOGGED.  AND WHEN THIS BECAME AN ISSUE AND

9   THE FOCUS WAS ON THE MAY 13TH LETTER, WE NEVER SAID IT WAS

10  LOGGED.  SO, IT COULDN'T THROW INTO QUESTION THE VERACITY OF

11  THE ENTRIES ON OUR PRIVILEGE LOG.  THEY'RE JUST BOOTSTRAPPING

12  THAT.

13          THEY WENT TO JUDGE WRIGHT AND ASKED -- SAID THIS

14  COURT WAS WRONG AND ASKED FOR JUDGE WRIGHT TO REVIEW ITS RULING

15  IN WHICH THEY FEATURED THE MAY 13TH LETTER JUST LIKE THEY'RE

16  TRYING TO FEATURE IT NOW.  AND THEY ACTUALLY CALLED IT -- I

17  WASN'T BEING SARCASTIC -- I MEAN, I WAS BEING SARCASTIC, BUT

18  THEY ACTUALLY CALLED IT A STUNNING -- STUNNING -- THEY CALLED

19  IT ABSOLUTELY STUNNING, THIS LETTER.  AND IT WAS DENIED.

20  WHETHER IT'S DENIED WITH A ONE-WORD DENIAL OR A LENGTHY

21  OPINION, IT'S STILL DENIED.  AND THAT RENDERS YOUR DISCOVERY

22  RULING A FINAL RULING.  AND IT'S LAW OF THE CASE.

23          THE COURT:  MAYBE I SHOULD TAKE A LESSON FROM JUDGE

24  WRIGHT AND I SHOULD JUST ISSUE ONE-WORD RULINGS.

25          MR. TOBEROFF:  IN THIS CASE, THIS PROCEDURE -- THIS

EXHIBIT 5
40

1    IS A PROCEDURAL MESS AND IT'S CIRCULAR.  AND IT'S A MESS OF

2    THEIR OWN MAKING BECAUSE WHAT THEY COULD HAVE DONE IS WITHIN

3    THE TIME LIMITS TO BRING A MOTION FOR REVIEW, THEY COULD HAVE

4    FILED THEIR MOTION FOR REVIEW BUT SET THE HEARING DATE FAR IN

5    ADVANCE TO ALLOW THEM TO COME TO YOU WITH A MOTION FOR

6    RECONSIDERATION.  THAT WOULD HAVE -- WE WOULD HAVE OPPOSED THAT

7    AS WELL AS BRINGING SIMULTANEOUS MOTIONS FOR REVIEW AND

8    RECONSIDERATION.  BUT AT LEAST IT WOULDN'T CREATE THIS PROBLEM

9    WHERE YOU GET A FINAL ORDER FROM THE DISTRICT COURT.  AND

10   THEY'RE ESSENTIALLY ASKING YOU NOW TO NOT ONLY RECONSIDER --

11         THE COURT:  OKAY.  THE PROCEDURAL MATTER I CAN DEAL

12   WITH.  TELL ME ABOUT THE SUBSTANCE.

13         MR. TOBEROFF:  AS FAR AS THE SUBSTANCE IS CONCERNED,

14   THE BASIS FOR THIS COURT'S RULING THAT THE -- THEY DON'T GET

15   THE JULY -- WE'LL CALL THEM THE JULY LETTERS, THE JULY 5TH

16   LETTER AND THE JULY 11TH LETTER, WAS THE FACT THAT THEY HAD

17   BROUGHT UP THESE JULY LETTERS NO LESS THAN FIVE TIMES.  AND

18   THAT'S ALL DOCUMENTED IN OUR ORIGINAL OPPOSITION TO THE MOTION

19   IN FRONT -- IN THE SIEGEL CASE.

20         AND THEY BROUGHT IT UP SPECIFICALLY BASED ON THE

21   RECOLLECTIONS OF WAYNE SMITH, EVEN THOUGH TO YOU HE SAID HE

22   ONLY THUMBED THROUGH THESE DOCUMENTS, HE WAS ABLE TO

23   SPECIFICALLY DESCRIBE LETTERS IN DETAIL FOR WHICH PRIVILEGE HAD

24   BEEN ASSERTED, WHICH MEANS HE WAS GOING THROUGH PRIVILEGED

25   DOCUMENTS AND MOST PROBABLY EITHER KEPT COPIES OF THOSE

EXHIBIT 5
41

13

1   DOCUMENTS OR TOOK EXTENSIVE NOTES.  OTHERWISE, IT WOULD HAVE

2   BEEN IMPOSSIBLE FOR HIM YEARS LATER TO BE DESCRIBING THESE

3   DOCUMENTS.

4            EVEN AFTER THEY DID THAT IN FRONT OF JUDGE LARSON,

5   SPECIFICALLY CALLING OUT THESE JULY LETTERS, JUDGE LARSON

6   DENIED THEIR MOTION.  THEY THEN TOOK THEIR PURPORTEDLY NEUTRAL

7   ESCROW AGENT, AND THEY HAD THAT ESCROW AGENT MAKE AN EX PARTE

8   COMMUNICATION TO JUDGE LARSON ASKING -- SAYING THAT HE WANTS TO

9   PEEK BEHIND THE PRIVILEGE LOGS AND DO EXACTLY WHAT THEY'RE

10   ASKING TO DO HERE, WHICH IS TO MATCH UP BY BATES NUMBERS

11   ENTRIES ON THE LOGS IN ORDER TO TEST THE VERACITY OF THE LOGS.

12   AND ONCE AGAIN JUDGE LARSON PUT HIS FOOT DOWN AND SAID NO.

13            AND I DON'T THINK WE SHOULD LOSE SIGHT OF THE CONTEXT

14   OF THESE DISCOVERY MOTIONS.  AND THAT CONTEXT IS A TREMENDOUSLY

15   UNFAIR ADVANTAGE THAT DC AND WARNER BROTHERS ARE OBTAINING HERE

16   BY VIRTUE OF REVIEWING STOLEN DOCUMENTS.  AND THAT PROBLEM

17   INFILTRATES, YOU KNOW, THIS ENTIRE ISSUE IN THIS CASE.

18            THE ONLY REASON THEY'RE ABLE TO -- I MEAN, WE WOULD

19   HAVE A FIELD DAY IF WE WERE GIVEN ACCESS TO THEIR FILES.  YOU

20   COULD BE SURE WE WOULD BE HERE NOT JUST ON ONE OR TWO LETTERS,

21   WHICH THEY ARE -- THIS IS IN THE COURSE OF A SIX-YEAR

22   LITIGATION THEY'RE COMING MAKING ALL THESE ACCUSATIONS THAT

23   WE'RE SECRETING EVIDENCE, WE'RE DOING THESE TERRIBLE THINGS,

24   WITH NO BASIS WHATSOEVER.  THEY'RE SAYING IF THEY GET THE

25   STOLEN DOCUMENTS, THAT THAT WILL REVEAL MANY OTHER DOCUMENTS

EXHIBIT 5
42

14

1   THAT HAVE BEEN SUPPRESSED --

2          THE COURT:  LET'S JUST FOCUS ON THE MOTION FOR THE

3   MOMENT.

4          MR. TOBEROFF:  OKAY.

5          THE COURT:  DOES THE MAY 13TH LETTER GIVE GROUNDS FOR

6   RECONSIDERATION.  THAT'S THE ISSUE.

7          MR. TOBEROFF:  NO, IT DOESN'T GIVE GROUNDS FOR

8   RECONSIDERATION BECAUSE IT REALLY DOESN'T -- FIRST OF ALL,

9   THEY'RE PROCEDURALLY BARRED FROM HAVING RECONSIDERATION --

10          THE COURT:  RIGHT.  THAT'S YOUR ARGUMENT AS TO JUDGE

11   WRIGHT.

12          MR. TOBEROFF:  AND, SECONDLY, IT DOESN'T REALLY GIVE

13   GROUNDS FOR RECONSIDERATION BECAUSE IT DOESN'T ILLUMINATE OR

14   CHANGE THE BASIS FOR YOUR HONOR'S RULING, WHICH HAD TO DO WITH

15   THE FACT THAT THIS WAS SPECIFICALLY BROUGHT BEFORE JUDGE

16   LARSON.  AND HE RULED AGAINST THEM MORE THAN ONCE.  AND THEN ON

17   THAT BASIS YOU WERE NOT GOING TO RECONSIDER THOSE RULINGS OF

18   JUDGE LARSON.

19          AND, YOU KNOW, I SHOULD POINT OUT WHEN A MATTER OF

20   TREMENDOUS IMPORTANCE TO OUR SIDE CAME UP WHERE WE BELIEVED

21   THAT JUDGE LARSON HAD MISREAD YOUR ORDER REGARDING THE STOLEN

22   DOCUMENTS WHERE YOU ORIGINALLY HAD US DO A DECLARATION, AND YOU

23   UPHELD THOSE DOCUMENTS THAT WERE KEY TO THE PRIVILEGE LOG, AND

24   THAT THE TIME LINE WASN'T LISTED ON OUR PRIVILEGE LOGS BECAUSE

25   WE DIDN'T AUTHOR THE TIME LINE.

EXHIBIT 5
43

15

1        IT WASN'T A COMMUNICATION BETWEEN US AND OUR CLIENTS.

2   SO, WE DIDN'T THINK OF LISTING IT ON THE PRIVILEGE LOG.  AND IT

3   WASN'T THE BASIS OF THEIR MOTION BECAUSE THEY DEFINE THE ESCROW

4   DOCUMENTS AS NOT INCLUDING THE TIME LINE.

5        WE BELIEVE THAT JUDGE LARSON HAD MISREAD -- AND I

6   BELIEVE IT'S CLEAR THAT HE HAD MISREAD YOUR ORDER.  AND WHEN WE

7   WERE DISCUSSING THIS YOU SAID, YOU UNDERSTAND THAT WE'RE TRYING

8   TO GET YOU TO WEIGH IN ON THAT BUT YOU REFUSED TO DO SO.

9        THE COURT:  AND DON'T THROW ME IN THAT BRIAR PATCH.

10        MR. TOBEROFF:  RIGHT.  BUT, YOU KNOW, WE CAN ALL

11   READ, YOU KNOW, EXPRESSIONS.  AND FROM THAT, YOU KNOW, I GOT

12   THE FEELING THAT IF YOU DID RULE ON THAT, THAT YOU WOULD COME

13   OUT THAT, IN FACT, HE HAD MISREAD THE ORDER.  BUT YOU WERE NOT

14   GOING TO OVERRULE HIS RULINGS.  AND WHAT'S GOOD FOR THE GOOSE

15   IS GOOD FOR THE GANDER.  AND THAT'S A MATTER OF MUCH GREATER

16   IMPORTANCE THAN THIS SINGLE LETTER.  AS DEMONSTRATED BY THE MAY

17   13TH LETTER --

18        THE COURT:  MR. TOBEROFF, WE HAVE THREE MOTIONS, AND

19   YOU KEEP WANDERING OFF.

20        MR. TOBEROFF:  OKAY.

21        THE COURT:  I JUST WANT TO KNOW, DO YOU HAVE AN

22   ARGUMENT, A FURTHER ARGUMENT?  IF NOT, I'M PREPARED TO RULE.

23   IF YOU HAVE A FURTHER ARGUMENT ABOUT THE MAY 13TH LETTER,

24   WHETHER IT GIVES GROUNDS FOR RECONSIDERATION OR NOT, THEN, I'LL

25   HEAR YOU.

EXHIBIT 5

1        BUT, YOU KNOW, THERE'S A LOT OF MATERIAL HEAR.  AND

2   WHILE I DON'T KNOW AS MUCH ABOUT THIS CASE AS YOU FOLKS, I'M

3   NOT UNFAMILIAR WITH IT EITHER.

4        MR. TOBEROFF:  I CAN EXPLAIN TO YOU WHAT HAPPENED

5   WITH THE MAY 13TH LETTER.  THE MAY 13TH LETTER -- OUR SOLE COPY

6   OF THE MAY 13TH LETTER IN OUR FILES IS A -- AND THIS -- I THINK

7   THIS IS RELEVANT BECAUSE THEY'RE USING THE MAY 13TH LETTER AS A

8   BASIS FOR MAKING ALL SORTS OF FALSE CLAIMS ABOUT OUR PRACTICES

9   IN DISCOVERY, THE SINGLE LETTER.

10        THE MAY 13TH LETTER, THE SOLE COPY THAT WE HAD IN OUR

11   FILES HAD ATTORNEY MARGINALIA --

12        THE COURT:  AND THAT'S THE SUBJECT OF ANOTHER MOTION.

13        MR. TOBEROFF:  RIGHT, RIGHT.

14        THE COURT:  WE'LL SOON DEAL WITH THAT SHORTLY.

15        MR. TOBEROFF:  WE KNOW IT'S NOT IN THE HANDWRITING OF

16   LAURA SIEGEL OR JOANNE SIEGEL --

17        THE COURT:  JUST RECONSIDERATION.  JUST ON THE

18   GROUNDS FOR RECONSIDERATION.

19        MR. TOBEROFF:  I'M GOING TO FOCUS ON THAT.

20        I'M TALKING ABOUT THE MAY 13TH LETTER, YOUR HONOR,

21   BECAUSE THEY'RE USING THE MAY 13TH LETTER IN THIS PARADE OF

22   HORRORS BASED ON THE MAY 13TH LETTER.  SO, I'M GOING TO TAKE

23   THE STINK AWAY THAT THEY'VE CREATED ABOUT THIS MAY 13TH LETTER

24   BY DESCRIBING TO YOU WHAT HAPPENED.

25        THE MAY 13TH LETTER, THE SOLE COPY IN OUR FILES HAD

EXHIBIT 5
45

1   ATTORNEY NOTATIONS -- OR SOMEBODY IN OUR LAW FIRM -- NOTATIONS

2   IN THE MARGINS AND UNDERLINING ON IT.  THAT WAS THE SOLE COPY

3   THAT WE HAD.

4           AND IT WAS ORIGINALLY IN THE SIEGEL LITIGATION

5   BELIEVED THAT THAT LETTER HAD BEEN LOGGED AND THAT PRIVILEGE

6   HAD BEEN ASSERTED BECAUSE THE LETTER -- THERE WERE A LOT OF

7   ISSUES ABOUT JOINT INTEREST PRIVILEGE BETWEEN MICHAEL SIEGEL

8   AND LAURA SIEGEL.  AND, ALSO, THE LETTER WE BELIEVE WAS PART OF

9   A LARGER COMMUNICATION FROM THE CLIENT WANTING TO DISCUSS THESE

10  COMMUNICATIONS WITH HER BROTHER -- IT'S ACTUALLY HER

11  STEPBROTHER.

12          AND, SO, WE INTENDED TO ASSERT PRIVILEGE AND BELIEVE

13  WE HAD ASSERTED PRIVILEGE.  AND THAT IT HAD BEEN LOGGED WITH

14  OTHER DOCUMENTS FROM THE CLIENT ON THE PRIVILEGE LOG.

15          BUT NOBODY WAS FOCUSED IN THE SIEGEL LITIGATION ON

16  THAT MAY 13TH LETTER.

17          IN THIS CASE WHEN THEY BROUGHT UP THE MAY 13TH

18  LETTER, AND WE WENT BACK TO THE FILES AND WE PULLED THAT SAME

19  DOCUMENT, IT WAS NOTICED -- BECAUSE WE WERE CHECKING IT BECAUSE

20  THERE WAS A MICRO FOCUS NOW ON THAT LETTER -- IT WAS NOTICED

21  THAT THE FAX HEADER FROM LAURA SIEGEL TO MY OFFICE HAD A

22  DIFFERENT DATE.  IT APPEARED PAPER CLIPPED WITH THE OTHER

23  DOCUMENTS AS PART OF THIS ATTORNEY-CLIENT COMMUNICATION, BUT WE

24  NOTICED THAT THE FAX HEADER DIFFERED FROM THE FAX HEADER ON THE

25  OTHER DOCUMENTS, AND, THAT, THEREFORE, AN INADVERTENT MISTAKE

EXHIBIT 5
46

18

1    HAD BEEN MADE.  AND IT ACTUALLY DIDN'T COME IN AS PART OF THAT

2    OTHER COMMUNICATION AND, THEREFORE, HAD BEEN MISLOGGED, HADN'T

3    BEEN PROPERLY LOGGED IN THE SIEGEL LITIGATION.

4           AND BECAUSE IT WASN'T LOGGED, WE NEVER CLAIMED IT WAS

5    -- WE DIDN'T CLAIM PRIVILEGE, AND WE DIDN'T CLAIM IT DIDN'T

6    EXIST.  AND THEY HAD MADE A MOTION REGARDING THE MAY 13TH

7    LETTER.  THE WAY THEY MEET AND CONFER IS THEY TELL US ON, YOU

8    KNOW, ON A WEDNESDAY OR A THURSDAY THAT THEY'RE MAKING A MOTION

9    ON A MONDAY.

10          SO, THEY HAD -- I BELIEVE THEY HAD ALREADY MADE THEIR

11   MOTION WHEN WE DISCOVERED THIS DISCREPANCY IN THE FAX HEADER

12   LEGENDS.  AND AT THAT POINT WE DIDN'T DENY ITS EXISTENCE.  WE

13   DIDN'T SAY IT WAS PRIVILEGED BECAUSE WE KNEW IT HADN'T BEEN

14   LOGGED.  WE THOUGHT IT HAD BEEN LOGGED.  AND WHEN YOUR HONOR

15   ORDERED IT PRODUCED, WE IMMEDIATELY PRODUCED IT.

16          THE COURT:  I READ ALL THIS.

17          MR. TOBEROFF:  WAS THAT IN -- I'M NOT SURE THE FAX

18   HEADER, WAS THAT IN --

19          THE COURT:  NO, THE FAX HEADER IS NEW TO ME, BUT I

20   READ ALL THE REST OF IT.

21          MR. TOBEROFF:  THANK YOU, YOUR HONOR.

22          THE COURT:  ALL RIGHT.  THANK YOU, MR. TOBEROFF.

23          I DON'T REALLY SEE THE NEED -- SEE A NEED FOR REPLY,

24   DO YOU?

25          MR. KLINE:  NOT IF YOU DON'T WANT IT AT THIS MOMENT.

EXHIBIT 5
47

19

 1              THE COURT:  ALL RIGHT.

 2              FIRST, ON THE PROCEDURAL MATTER, IN MY VIEW JUDGE

 3    WRIGHT'S RULING DOES NOT BAR RECONSIDERATION.  JUDGE WRIGHT

 4    DENIED THE MOTION FOR REVIEW BASED ON THE RECORD BEFORE HIM.

 5    AND HE COULD NOT REVIEW FOR ABUSE OF DISCRETION SOMETHING THE

 6    COURT HAD NOT CONSIDERED AT ALL.

 7              AND, SO, IF RECONSIDERATION OTHERWISE IS APPROPRIATE,

 8    THEN, IN MY VIEW THE FACT THAT JUDGE WRIGHT DENIED THE MOTION

 9    FOR REVIEW WOULD NOT BAR THIS COURT FROM LOOKING AT THE MATTER.

10              THE COURT FEELS, HOWEVER, THAT RECONSIDERATION IS NOT

11    APPROPRIATE AS TO THE JULY 11TH LETTER.  KNOWING THE SPECIFIC

12    LANGUAGE OF THE MAY 13TH LETTER DOES NOT TELL MUCH ABOUT THE

13    JULY 11TH LETTER.  THERE'S NOTHING TO DEMONSTRATE THAT THE

14    PRIOR ORDERS LONG AGO UPHELD ON THE GROUNDS THAT DC COMICS DID

15    NOT SEEK REVIEW OF THIS COURT'S EARLIER RULING WERE MATERIALLY

16    WRONG.

17              EVEN MORE SO, THE MAY 13TH LETTER DOES NOT JUSTIFY A

18    DIFFERENT RULING ON THE JULY 5TH LETTER.  AS THE COURT

19    PREVIOUSLY STATED, THE DEFENDANTS CLEARLY STATED THAT SUCH A

20    LETTER DID NOT EXIST.

21              PLAINTIFF ASSERTS THAT MAYBE IT EXISTS IN A DIFFERENT

22    FORM OR WITH A DIFFERENT DATE, BUT THE COURT DECLINES TO ORDER

23    DEFENDANTS TO UNDERTAKE A VAGUE OR AMORPHOUS FURTHER SEARCH.

24              FINALLY, THE COURT DECLINES TO RECONSIDER ITS RULING

25    ON THE FORM OF THE PRIVILEGE LOGS.  THAT FORM HAS BEEN APPROVED

EXHIBIT 5
48

20

1    BY THE NINTH CIRCUIT.  AND THE MAY 13TH LETTER IN THE COURT'S

2    VIEW PROVIDES NO CONVINCING BASIS ON THE NEED TO CHANGE THAT

3    RULING.

4            THE MOTION FOR RECONSIDERATION IS DENIED.

5            NOW, MR. TOBEROFF, LET'S PROCEED TO YOUR MOTION FOR A

6    PROTECTIVE ORDER.  THIS IS NOT A COMPLICATED MOTION.

7            MR. TOBEROFF:  FIRST, THERE'S AN INITIAL ISSUE WHERE

8    I DON'T BELIEVE THERE IS AN ISSUE.  DEFENDANTS HAVE BROUGHT IT

9    UP, AND THEY HAVE ACTED AS IF THE -- YOUR STAY WAS LIMITED

10   SOLELY TO JUDGE WRIGHT'S REVIEW OF YOUR ORDER REGARDING WAIVER

11   OF THE STOLEN DOCUMENTS.

12           I THINK IT'S CLEAR FROM YOUR ORDER THAT THE STAY WAS

13   NOT LIMITED TO JUDGE WRIGHT'S REVIEW.  BASED ON ITS PLAIN

14   WORDING, IT SAID, QUOTE:

15           "THE STAY SHALL CONTINUE IN EFFECT UNTIL

16            ALL REVIEW IS EXHAUSTED, OR THE DISTRICT

17            JUDGE RULES TO THE CONTRARY ON THE MATTER."

18           SO, THERE ARE REALLY TWO REASONS WHY IT WOULDN'T BE

19   LIMITED TO JUDGE WRIGHT'S REVIEW.  THE FIRST IS, THE PLAIN

20   WORDING, "SHALL CONTINUE IN EFFECT UNTIL ALL REVIEW."  IT'S AS

21   IF YOU WENT OUT OF YOUR WAY TO SAY THAT WHEN YOU COULD HAVE

22   EASILY SAID AFTER JUDGE WRIGHT HAS RULED.

23           AND, SECONDLY, BY YOUR USE OF THE WORDS "TO THE

24   CONTRARY."  BECAUSE THERE'S AN IMPLICATION WHEN YOU SAY "OR

25   UNTIL" JUDGE WRIGHT -- "THE DISTRICT JUDGE RULES TO THE

EXHIBIT 5
49

21

1   CONTRARY" THAT IF HE AFFIRMS, THE STAY WOULD STILL BE IN

2   EXISTENCE SHOULD WE SEEK A WRIT TO THE NINTH CIRCUIT, WHICH IS

3   EXACTLY WHAT WE'RE DOING.

4        YOUR ORDER, YOU KNOW, I BELIEVE INVITED SUCH REVIEW.

5   AND I THINK THERE IS GOOD REASON, AND WE HAVE A DECENT SHOT OF

6   HAVING OUR PETITION FOR A WRIT ACCEPTED BY THE NINTH CIRCUIT.

7   AND THE REASON FOR THAT IS --

8        THE COURT:  TALK ABOUT OPTIMISM.  ALREADY YOU'RE

9   PLANNING ON LOSING IN FRONT OF JUDGE WRIGHT.

10       MR. TOBEROFF:  NO.  NO, OUR MOTION -- I'M MISSING

11  SOMETHING.  OUR MOTION FOR --

12       THE COURT:  HAS JUDGE WRIGHT RULED ON THIS MATTER?

13       MR. TOBEROFF:  YES.

14       THE COURT:  THAT'S NEWS TO ME.

15       MR. TOBEROFF:  WE -- WE MADE A MOTION --

16       EXCUSE ME?

17       (COUNSEL BRIEFLY CONFERRING.)

18       MR. TOBEROFF:  WE MADE A MOTION FOR REVIEW WHICH WAS

19  STAMPED "DENIED" BEFORE THEY EVEN PUT IN THEIR OPPOSITION.

20       THE COURT:  OH, ALL RIGHT.  NOBODY TOLD ME THAT.

21       MR. KLINE:  YOUR HONOR, BOTH SIDES FILED A

22  SUPPLEMENTAL PAPER ON WEDNEDSAY OF LAST WEEK.  IT PROBABLY

23  DIDN'T GET TO YOUR CHAMBERS --

24       THE COURT:  ALL RIGHT.  THAT WOULD BE THE PROBLEM.

25       ALL RIGHT.  I'M SORRY.

EXHIBIT 5
50

22

1          ALL RIGHT.  SO, JUDGE WRIGHT HAS DENIED THE MOTION.

2          MR. TOBEROFF:  YEAH.  JUDGE WRIGHT --

3          THE COURT:  DENIED YOUR MOTION FOR REVIEW.  ALL

4   RIGHT.

5          MR. TOBEROFF:  DENIED THE MOTION BEFORE --

6          THE COURT:  OKAY.

7          MR. TOBEROFF:  -- HE STAMPED IT "DENIED" AS HE STAMPED

8    --

9          THE COURT:  BUT IN ANY EVENT --

10          MR. TOBEROFF:  -- THEIR MOTION IS DENIED.

11          THE COURT: -- BEFORE ME IS WHETHER THE DEPOSITION

12   SHOULD BE STAYED.

13          MR. TOBEROFF:  SO --

14          THE COURT:  SO, LET'S ADDRESS THAT AND ONLY THAT.

15   OKAY.

16          MR. TOBEROFF:  OKAY.  SO, GIVEN THAT THE STAY APPLIES

17   PENDING THE REVIEW BY THE NINTH CIRCUIT, WE BELIEVE THERE'S

18   GOOD REASON TO AT LEAST PUT OFF THE DEPOSITIONS TILL WE HEAR

19   WHETHER THE NINTH CIRCUIT WILL ACCEPT THIS WRIT.

20          AND THE BACKGROUND IS AS FOLLOWS.  WE OFFERED TO

21   PRODUCE THE PARTIES LAURA SIEGEL AND WARREN PEARY A LONG TIME

22   AGO.  WE SAID THEY'RE IMMEDIATELY AVAILABLE.  YOU CAN TAKE

23   THEIR DEPOSITIONS.  BUT WE ASK -- BECAUSE AS YOUR HONOR HAS

24   RULED, BECAUSE THIS CASE IS SO CLOSELY RELATED TO THE SIEGEL

25   CASE, TO BE CONSIDERED ONE OF THE SAME CASE, AND BECAUSE LAURA

EXHIBIT 5
51

23

1    SIEGEL HAS BEEN DEPOSED TWICE IN THE SIEGEL CASE, AND MR. PEARY

2    WAS DEPOSED ONCE IN THE SIEGEL CASE, IF THEY GET THE STOLEN

3    DOCUMENTS AFTER THEY TAKE THE DEPOSITION -- IF OUR PETITION IS

4    DENIED BY THE NINTH CIRCUIT, AND THEY GET THE STOLEN DOCUMENTS,

5    WE ALL KNOW THAT DESPITE THEIR CLAIMING THAT THIS IS UNRIPE,

6    THAT THEY WILL IMMEDIATELY MOVE TO TAKE CARE -- TO RETAKE THE

7    DEPOSITIONS OF LAURA SIEGEL AND MARK WARREN PEARY.

8              EVEN IF IT WAS A SINGLE DOCUMENT, THEY WOULD DO SO.

9    BUT HERE WE'RE DEALING WITH, YOU KNOW, A WHOLE FILE FULL OF

10   PRIVILEGED STOLEN DOCUMENTS.  SO, WE KNOW THAT THEY WOULD TAKE

11   THE DEPOSITION.  AND WE HAVE SAID TO THEM -- BECAUSE AT THE

12   TIME WE ORIGINALLY SAID TO THEM, LOOK, YOU CAN TAKE THE

13   DEPOSITION NOW OR YOU CAN PUT IT OFF, THEY HAD SOMETHING LIKE

14   FIVE MOTIONS TO COMPEL PENDING.

15             AND SINCE THERE IS NO DISCOVERY CUTOFF IN THIS CASE,

16   WE HAVE -- THE JUDGE HASN'T EVEN SET A SCHEDULE IN THIS CASE

17   YET, THEY'RE NOT REALLY PREJUDICED BY WAITING.  AND OUR CLIENTS

18   WILL BE PREJUDICED BY HAVING THEIR -- EXPOSING THEM TO HAVING

19   THEIR DEPOSITION TAKEN, IN THE CASE OF LAURA SIEGEL, FOUR TIMES

20   -- TWICE IN THE OTHER CASE AND TWICE IN THIS CASE.

21             SO, WE SAID, LOOK, IT'S YOUR CHOICE.  YOU CAN TAKE

22   HER DEPOSITION NOW OR YOU CAN WAIT UNTIL SOME OF THESE

23   DISCOVERY ISSUES ARE RESOLVED.  SO, YOU ARE TAKING HER

24   DEPOSITION BASED -- YOU KNOW, DEALING WITH A FULL DECK OF

25   DOCUMENTS, WHAT'S YOUR CHOICE.

EXHIBIT 5

24

1          AND EACH TIME THEY REFUSED TO COMMIT TO NOT RETAKING

2    HER DEPOSITION, WHICH IS CLEAR THAT THEY WILL.

3          AND, SO, THE BASIS IS -- AND I'M TRYING TO SORT OF

4    SEE IF THERE'S A BASIS TO SORT OF CUT THE BABY HERE BY SAYING

5    SINCE WE ARE DEFINITELY BRINGING THIS WRIT, WHAT ABOUT WAITING

6    UNTIL TO SEE IF WRIT REVIEW IS GRANTED.

7          AND IT'S HARD TO GET THE NINTH CIRCUIT TO GRANT, YOU

8    KNOW, WRIT REVIEW.  I THINK WE HAVE A FIGHTING CHANCE HERE, BUT

9    IT'S HARD.  IF THE NINTH CIRCUIT DENIES OUR PETITION FOR A

10   WRIT, THEN, THERE'S NO DISPUTE.  WE'LL PRODUCE THE STOLEN

11   DOCUMENTS.  THEY'LL TAKE DEPOSITIONS WITHOUT HAVING TO GO BACK

12   IN THIS COURT AND MOVE TO TAKE THE DEPOSITIONS AGAIN.

13         IF THE NINTH CIRCUIT ACCEPTS REVIEW, THEN, THIS COURT

14   IN ITS DISCRETION CAN DECIDE EITHER THAT WE MUST TAKE THE

15   DEPOSITIONS WITHOUT THE STOLEN DOCUMENTS, OR THAT WE SHOULD

16   WAIT WITH THE DEPOSITIONS UNTIL THE NINTH CIRCUIT HAS COMPLETED

17   ITS REVIEW OF THIS IMPORTANT ISSUE.

18         WE'RE ALSO GOING TO ASK THE NINTH CIRCUIT TO EXPEDITE

19   ITS REVIEW.

20         THE COURT:  HAVE YOU FILED A WRIT PETITION YET?

21         MR. TOBEROFF:  NOT YET.  WE HOPE TO DO SO THIS WEEK.

22         THE COURT:  ALL RIGHT.  THEY MAKE TAKE IT.  I DON'T

23   KNOW.  YOU KNOW, THERE'S NO WAY OF KNOWING.  AS YOU SAY, A WRIT

24   IS ALWAYS DIFFICULT TO OBTAIN.  BUT THIS IS AN ISSUE OF SOME

25   IMPORTANCE.  AND IT'S UNDECIDED.

EXHIBIT 5
53

25

1              MR. TOBEROFF:  YES.  IT'S A VERY -- IT'S A VERY

2    INTERESTING ISSUE.  AND IT'S A VERY IMPORTANT ISSUE.

3              THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE

4    PLAINTIFF.

5              MR. KLINE:  YOUR HONOR, YOU ENTERED AN ORDER ON JUNE

6    2ND, WHICH WAS APPROVING A STIPULATION THAT PLAINTIFFS SIGNED

7    VOLUNTARILY THAT SAID,

8              "DEFENDANT MARK PEARY SHALL APPEAR FOR DEPOSITION ON

9              JUNE 29TH, 2011.

10             DEFENDANT LAURA SIEGEL SHALL APPEAR FOR DEPOSITION ON

11             JULY 1, 2011."

12             THEN, IN PARAGRAPH 3,

13             "AND ENTERING INTO THE STIPULATION, NO PARTY WAIVES

14             ANY RIGHTS TO SEEK OR OPPOSE ADDITIONAL DEPOSITION

15             DAYS FOR MR. PEARY OR MS. LARSON AS PROVIDED IN THE

16             FEDERAL RULES."

17             SO, THIS LITERALLY IS A BAIT AND SWITCH.  THEY

18   COMMITTED TO CERTAIN DEPOSITION DATES.  THEY SHALL APPEAR ON

19   THOSE DATES.

20             WE'LL LEAVE FOR ANOTHER DAY A MOTION ON WHETHER WE

21   GET A SECOND DAY BASED ON THE EMERGENCE OF NEW EVIDENCE.  THEY

22   SAY THAT, YOU KNOW, THE BIG REVELATORY CHANGE WAS JUDGE WRIGHT

23   DENYING LAST WEDNESDAY THEIR MOTION FOR REVIEW, BUT IT WAS

24   ALWAYS POSSIBLE THAT YOU WOULD GRANT THE MOTION TO ORDER THEM

25   TO PRODUCE THOSE DOCUMENTS AND THAT JUDGE WRIGHT WOULD DENY

EXHIBIT 5
54

1    THAT MOTION FOR REVIEW.

2            THE COURT:  I DON'T THINK THEY THOUGHT THERE WAS EVER

3    THAT POSSIBILITY --

4            MR. KLINE:  WELL, YOU DIDN'T SAY --

5            THE COURT:  -- THAT I WOULD GRANT THE MOTION.  NO,

6    I'M JUST JOKING.  OF COURSE, THERE WAS ALWAYS THE POSSIBILITY.

7            MR. KLINE:  NO.  I HEAR YOU.  BUT I MEAN, THAT'S

8    WHERE WE ARE.  THAT'S THE EXISTING ORDER THAT THEY'RE ASKING

9    YOU TO REWRITE.

10           NOW, IN TERMS OF WHETHER THEIR WRIT IS GOING TO BE

11   GRANTED, I MEAN, MR. TOBEROFF WAS TALKING ABOUT SOMETHING

12   PRETTY IMPORTANT AT THE BEGINNING.  AND THIS IS ADDRESSED IN

13   THE WEDNESDAY FILINGS THAT BOTH SIDES MADE.  AS I READ YOUR

14   STAY ORDER, IT SAYS THE FOLLOWING:

15           "HOWEVER, THE" -- AND THIS IS AT THE FIRST PAGE OF

16   THEIR SUPPLEMENTAL FILING.

17           "HOWEVER, THE COURT STAYS ITS RULING TO ALLOW

18           DEFENDANTS TO SEEK REVIEW BEFORE THE DISTRICT

19           JUDGE.  IF THE DEFENDANTS SEEK SUCH REVIEW,

20           I.E., IN FRONT OF THE DISTRICT JUDGE, THE STAY

21           SHALL CONTINUE IN EFFECT UNTIL ALL REVIEW IS

22           EXHAUSTED OR THE DISTRICT COURT RULES TO THE

23           CONTRARY."

24           NOW, THE DISTRICT COURT DENIED THEIR MOTION FOR

25   REVIEW.  AS WE UNDERSTAND YOUR ORDER, THAT MEANS, OKAY.  WE'RE

EXHIBIT 5
55

1   DONE.  PRODUCE THE DOCUMENTS.  GO TAKE THESE DEPOSITIONS.

2          THEY'RE TAKING THE POSITION THAT LITERALLY UNTIL ALL

3   REVIEW IS COMPLETED, THEY DON'T HAVE TO PRODUCE THE DOCUMENTS,

4   THAT THE STAY REMAINS IN EFFECT.

5          NOW, THAT'S HIGHLY PROBLEMATIC FOR A NUMBER OF

6   REASONS.

7          NUMBER ONE, THEY DIDN'T ASK JUDGE WRIGHT TO ENTER A

8   STAY AFTER HIS REVIEW.  THEY WERE REQUIRED TO DO SO.  UNDER

9   1292(B) -- 28 U.S.C. 1292(B) THE WAY YOU GET A STAY PENDING

10  NINTH CIRCUIT REVIEW IS YOU ASK THE DISTRICT COURT FOR A STAY.

11          THE COURT:  LET'S JUST FOCUS --

12          MR. KLINE:  HE DENIES IT OR GRANTS IT.

13          THE COURT:  -- ON THIS MOTION.  BECAUSE NOBODY HAS

14  BROUGHT A MOTION BEFORE ME ASKING FOR WHAT DID YOU MEAN BY YOUR

15  ORDER.  SO, LET'S JUST FOCUS ON THE PROTECTIVE ORDER MOTION.

16          MR. KLINE:  I THINK IT'S PRETTY SIMPLE.  THESE

17  WITNESSES SHOULD BE ORDERED TO COME TESTIFY.  AND IF THEY

18  REFUSE TO PRODUCE DOCUMENTS IN THE INTERVENING WEEKS BEFORE --

19  THE DEPOSITIONS ARE SCHEDULED TO TAKE NEXT WEEK.  IF THEY

20  REFUSE TO PRODUCE THE DOCUMENTS THAT THEY WERE ORDERED TO

21  PRODUCE, THEN, YES, WE MIGHT HAVE TO TAKE A SECOND DEPOSITION.

22          BUT THAT'S WHAT THE PARTIES' STIPULATION AND THIS

23  COURT'S JUNE 2ND ORDER ALWAYS CONTEMPLATED.

24          AND IN TERMS OF -- SO, THE MAIN THRUST OF THEIR

25  ARGUMENT IS, HEY, WE'VE GOT A FIGHTING CHANCE ON GETTING A WRIT

EXHIBIT 5
56

28

1    GRANTED.

2             I DON'T THINK THAT'S POSSIBLE.  WHY IS THAT.  BECAUSE

3    THE MOHAWK CASE THE SUPREME COURT HANDED DOWN IN 2009 SAYS THE

4    FOLLOWING.  IT SAYS:

5             "EVEN WHERE PRIVILEGE IS INVOLVED, THE NORMAL RULES

6             OF APPEAL APPLY."

7             AND IF YOU OR JUDGE WRIGHT MADE AN ERROR IN ORDERING

8    THESE DOCUMENTS PRODUCED, AND WE WIN AT TRIAL, AND THEY APPEAL,

9    AND THE JUDGE -- THE COURT OF APPEAL DECIDES THAT, HEY, YOU

10   SHOULDN'T HAVE ORDERED THOSE DOCUMENTS PRODUCED, THERE'S A

11   SIMPLE REMEDY.  IT'S CALLED A REMAND FOR A NEW TRIAL.  THAT'S

12   WHAT THE SUPREME COURT IN MOHAWK SAID.

13            NOW, THEY CITE ONE CASE IN THIS WEDNESDAY FILING THAT

14   THEY MADE SAYING, OH, BUT, YOU KNOW, WRIT REVIEW IS GRANTED ALL

15   THE TIME IN PRIVILEGE CASES.

16            THAT'S NOT SO.  THERE ARE NUMEROUS CASES WHERE THE

17   NINTH CIRCUIT IN PRIVILEGE CASES HAS SAID, WE'RE NOT GOING TO

18   HEAR THIS CASE.  WE'RE GOING TO DEAL WITH IT LATER.

19            THE COURT:  YOU KNOW, THE ONE THING I'M DEFINITELY

20   NOT GOING TO DO IS HANDICAP THE CHANCES IN THE NINTH CIRCUIT.

21   I NEVER HAD A GOOD RECORD ON DOING THAT WHEN I WAS A

22   PRACTITIONER, AND I DON'T HAVE A GOOD RECORD DOING IT AS A

23   JUDGE.  SO, LET'S JUST -- I MEAN, I THINK I UNDERSTAND YOUR

24   ARGUMENT.  I THINK I UNDERSTAND MR. TOBEROFF'S ARGUMENT.

25            MR. KLINE:  WE'RE BUTTING UP AGAINST A REAL PRACTICAL

EXHIBIT 5
57

29

```
 1   IMPEDIMENT HERE.  JUDGE WRIGHT HAS ASKED US TO REBRIEF OUR RULE

 2   12 OPPOSITIONS AND OUR SLAP OPPOSITIONS ON AUGUST 8TH.  AND

 3   WE'RE FACING A FOUR-CORNERS OFFENSE HERE.  THEY'RE TRYING TO

 4   PUSH OUT ANY PRODUCTION OF THESE DOCUMENTS UNTIL LATE JULY.

 5   AND, THEN, WE'RE GOING TO HAVE A HARD TIME SCHEDULING THOSE

 6   DEPOSITIONS IN LATE JULY.  AND IF THEY ASSERT A BUNCH OF

 7   OBJECTIONS AT THOSE DEPOSITIONS, WE'VE HAVE ABSOLUTELY NO TIME

 8   TO COME IN HERE AND GET ANY RELIEF.  AND, YET, WE'LL BE FORCED

 9   BY AUGUST 8TH TO FILE THESE NEW OPPOSITIONS.

10         AND, SO, WE THINK WE ARE BEING SIGNIFICANTLY

11   PREJUDICED BY THEIR REQUEST TO MOVE THESE DEPOSITIONS TO SOME

12   UNDETERMINED DATE WHEN THE NINTH CIRCUIT RULES.

13         THE COURT:  ALL RIGHT.  THAT'S A VALID ARGUMENT.

14         MR. KLINE:  BUT THE ONE THING --

15         THE COURT:  THAT'S A DIFFERENT ARGUMENT.

16         MR. KLINE:  THE ONE THING THAT WE CAN WORRY ABOUT IS

17   THAT EVEN THOUGH THEY SAY THIS IS THIS EMERGENCY PROBLEM, THIS

18   EMERGENCY SITUATION, IT'S BEEN FIVE, SIX DAYS NOW AND THERE'S

19   NO FILING.

20         IN THE PAST WHEN THEY IMMEDIATELY WANTED TO GET A

21   WRIT ON FILE, THEY GOT IT ON FILE.  BUT NOW THAT IT SUITS THEIR

22   INTEREST THEY'RE TRYING TO DRAG THIS THING OUT AS LONG AS THEY

23   CAN.  THEY HAVEN'T GONE IN AND SOUGHT EX PARTE RELIEF FROM

24   JUDGE WRIGHT SAYING, WE UNDERSTAND YOU DENIED OUR ORDER, BUT

25   HERE'S THE PROPER PROCEDURE.  YOU KNOW, WE WANT A 1292(B) STAY
```

EXHIBIT 5
58

1   PENDING THE WRIT WE'RE GOING TO FILE.  THEY HAVEN'T GONE IN AND

2   FILED AN EMERGENCY STAY MOTION LIKE THEY DID LAST DECEMBER IN

3   FRONT OF THE NINTH CIRCUIT SAYING DON'T LET THESE DEPOSITIONS

4   PROCEED.

5          THEY'RE HOPING JUST TO KIND OF DRAG THIS THING OUT TO

6   RELY ON WHAT THEY PERCEIVE AS AN AMBIGUITY IN YOUR ORDER SO

7   THAT THEY DON'T HAVE TO -- THEY'RE NOT GOING TO REQUEST A STAY.

8   I DON'T HEAR THEM SAYING WE'RE GOING TO GO TO THE NINTH CIRCUIT

9   AND ASK FOR A STAY.  THEY'RE HOPING THAT THEY CAN RELY ON THE

10  AMBIGUITY IN YOUR ORDER AND PREVENT ANY DISCOVERY FROM

11  HAPPENING FOR THE NEXT MONTH.  AND THAT'S A PROBLEM.

12         SO, WE THINK THE MOTION FOR A PROTECTIVE ORDER SHOULD

13  BE DENIED.

14         THE COURT:  ALL RIGHT.

15         RULE 26(C) DOES ALLOW THE COURT TO ISSUE A PROTECTIVE

16  ORDER TO PREVENT UNDUE BURDEN AND EXPENSE.  THE UNDUE BURDEN

17  AND EXPENSE ARE SAID TO ARISE HERE IF THIS COURT'S ORDER

18  PROVIDING FOR DISCLOSURE OF CERTAIN DOCUMENTS CONTINUES TO BE

19  UPHELD.

20         I DON'T AGREE WITH THAT.  THE PARTIES ARE IN THE SAME

21  POSITION NOW AS IF THE PREVIOUS MOTION NEVER HAD BEEN MADE.

22  AND IT'S THE SAME SITUATION EXISTING AT THE TIME THE

23  DEPOSITIONS WERE SCHEDULED.  THEY WERE SCHEDULED AT A TIME

24  WHEN DOCUMENTS HAD NOT BEEN PRODUCED.  IT WAS ANTICIPATED BY

25  BOTH SIDES THAT THE DEPOSITIONS WOULD GO FORWARD ON THAT

EXHIBIT 5
59

1    SCHEDULE.

2              NOW, I'VE EXPRESSED BEFORE MY RELUCTANCE ABOUT

3    MULTIPLE DEPOSITIONS OF THE SAME WITNESS.  AND I'M NOT RULING

4    NOW ON A MOTION THAT MIGHT BE MADE IN THE FUTURE.  BUT, IN

5    GENERAL, COURTS, AND THIS COURT IS ONE OF THEM, DISFAVOR REPEAT

6    DEPOSITIONS.  THE PLAINTIFF KNOWS THIS.  AND THE PLAINTIFF IS

7    FOREWARNED AND THE PLAINTIFF CAN ADJUST ITS SCHEDULE IF IT SO

8    CHOOSES.  BUT THE PLAINTIFF IS NOT REQUIRED TO AS THERE MAY

9    WELL BE COUNTERVAILING CONSIDERATIONS.

10             THE BOTTOM LINE FOR ME IS THAT WHILE I BELIEVE I DO

11   HAVE DISCRETION TO ADJUST THE SCHEDULING OF THE DEPOSITIONS,

12   NOTWITHSTANDING THE STIPULATION, I DON'T SEE ANY BASIS FOR

13   UPSETTING THE SCHEDULE HERE.

14             AND, SO, THE MOTION FOR A PROTECTIVE ORDER IS DENIED.

15             LET'S MOVE TO THE LAST MOTION AND SEE IF WE CAN WRAP

16   THAT ONE UP QUICKLY BECAUSE I DO HAVE A MEETING I HAVE TO GET

17   TO.

18             MR. KLINE:  YES, YOUR HONOR.

19             THE COURT: THERE ARE THREE ISSUES THAT ARE PRESENTED

20   -- RIGHT? -- ISSUES 12, 13, AND 14.

21             MR. KLINE:  YES, YOUR HONOR.  AND I'LL BE AS BRIEF AS

22   I CAN.

23             THE FIRST ISSUE IS THE NOVEMBER 2ND LETTER THAT HAS

24   NOT BEEN PRODUCED.  A COUPLE OF POINTS ABOUT THAT.

25             NUMBER ONE, THE DECLARATION THAT THEY SUBMITTED THAT

EXHIBIT 5
60

32

1    I CAUSED MY OFFICE TO RECHECK OUR RELEVANT CASE FILES AND COULD

2    NOT FIND THE NOVEMBER 2ND LETTER DOES NOT COMPLY WITH WHAT

3    RUTTER AND THE WATERBURY CASE REQUIRE.  THESE ARE CASES THAT WE

4    CITED IN OUR REPLY BRIEFS THAT SAY, NO, YOU NEED TO GO INTO

5    SOME MORE DETAIL ABOUT THE TYPE OF SEARCH YOU CONDUCTED, WHICH

6    FILES YOU ACTUALLY CONSULTED, AND WHY YOU COULD NOT FIND THESE

7    DOCUMENTS.

8            OR IN THE ALTERNATIVE, IF THIS DOCUMENT DID NOT

9    EXIST, YOU NEED A DECLARATION EITHER FROM THE CLIENT OR COUNSEL

10   SAYING THIS DOCUMENT DOES NOT EXIST.  AND THAT COMES RIGHT OUT

11   OF THE WATERBURY CASE AND RUTTER.  AND WE THINK THEY'RE JUST

12   BEING TOO VAGUE HERE.

13           I DON'T WANT TO RECOVER GROUND THAT I COVERED BEFORE,

14   YOUR HONOR, BUT THE MARCH -- THE MAY 2007 DECLARATION THAT THEY

15   SUBMITTED IS STUNNING IN THE FOLLOWING RESPECT.  WHERE ON IT

16   CAN ONE FIND THE MAY 2003 LETTER.

17           AND AS WE HEARD THE EXPLANATION FOR THE MAY 2003

18   LETTER, THERE ARE ALL THESE DOCUMENTS THAT ARE STAPLED TOGETHER

19   THAT MAY BE PRIVILEGED DOCUMENTS, THAT MAY NOT BE PRIVILEGED

20   DOCUMENTS.

21           THAT'S NOT A SATISFYING EXPLANATION.  AND WHEN MY

22   CLIENT READS THE TRANSCRIPT, THEY'RE GOING TO SAY TO ME WHY

23   CAN'T WE GET SOME MORE SPECIFICITY FROM THESE PRIVILEGE LOGS.

24           THEY JUST ADMITTED THAT THEY STAPLED A BUNCH OF STUFF

25   TOGETHER.  SOME OF IT'S PRIVILEGED; SOME OF IT'S NOT.  NOBODY

EXHIBIT 5
61

33

1    IS ARGUING IT'S NOT RESPONSIVE.  WE'VE HEARD ABSOLUTELY NO

2    REPRESENTATION FROM THEIR COUNSEL THAT THERE IS NOT A JULY 2003

3    LETTER FROM MS. SIEGEL TO HER BROTHER.

4           WE NEED SPECIFICITY, FOR EXAMPLE, ON THINGS LIKE THE

5    NOVEMBER 2ND LETTER.  SO, I THINK YOU'VE READ OUR PAPERS.

6    YOU'VE SEEN WHAT WE'VE HAD TO SAY ABOUT THE NOVEMBER 2ND

7    LETTER.  BUT WE NEED SOME SPECIFICITY HERE.

8           WE WERE TOLD IN AN UNQUALIFIED WAY IN A JANUARY 8TH

9    LETTER FROM COUNSEL THAT THE MAY 13TH DOCUMENT DID NOT EXIST.

10   IT WAS NON-EXISTENT.  WE ASKED FOR IT SPECIFICALLY IN TWO

11   LETTERS.  WHERE'S THE MAY 13TH, 2003 LETTER.

12          THEIR FIRST RESPONSE, AND I'LL POINT YOU TO THE --

13          THE COURT:  YOU'RE NOW MOVING TO ISSUE 13?

14          MR. KLINE:  YES.

15          THE COURT:  OKAY.

16          MR. KLINE:  BUT I THINK IT ALSO HAS TO DO WITH ISSUE

17   12.  THESE KIND OF -- THESE BLAND ASSURANCES THAT, HEY, THE

18   DOCUMENT'S NOT OUT THERE CANNOT BE TRUSTED.

19          I WROTE A LETTER ON JANUARY 5, 2011, AND I SAY:

20          "THERE WERE TWO OTHER COMMUNICATIONS MENTIONED

21          IN THE TOBEROFF TIME LINE THAT YOU DID NOT

22          ADDRESS IN JANUARY 4TH LETTER.

23          THEY ARE, ONE, A MAY 13, 2003 LETTER FROM

24          MICHAEL SIEGEL TO LAURA SIEGEL LARSON."  AND THEN THE

25   SECOND LETTER.

EXHIBIT 5
62

34

1       AND IT'S FOUR DAYS LATER ON JANUARY 8TH THAT THEY

2  WRITE BACK:

3           "AS TO YOUR CLAIMS THAT WE HAVE NOT PRODUCED

4           CERTAIN DOCUMENTS ALLUDED TO IN THE RANTING

5           ANONYMOUS TIME LINE, WE HAVE REPEATEDLY STATED

6           THAT THE INADMISSIBLE TIME LINE IS EXTREMELY

7           UNTRUSTWORTHY.  TO THE EXTENT THAT RELEVANT

8           DOCUMENTS EXIST, THEY HAVE EITHER BEEN

9           PRODUCED OR DESIGNATED AS PRIVILEGED."

10       THEY TOLD US IN AN UNQUALIFIED WAY THE MAY LETTER

11  DOES NOT EXIST.

12       NOW, WE LOOK AT -- I'M TALKING ABOUT THE NOVEMBER 2ND

13  LETTER HERE FOR THE MOMENT -- THIS VERY VAGUE REFERENCE IN A

14  DECLARATION THAT, HEY, THE RELEVANT FILES WERE SEARCHED.  WE

15  COULDN'T FIND THEM.

16       WE NEED MORE THAN THAT.  WE NEED REPRESENTATIONS THAT

17  WE SEARCHED THE MICHAEL SIEGEL FILES, THE DON BULSON FILES.  WE

18  TALKED TO OUR CLIENT.  SHE SAID SUCH A LETTER DOESN'T EXIST.  THERE

19  NEEDS TO BE MORE DILIGENCE HERE TO SEE WHETHER THAT NOVEMBER

20  2ND LETTER EXISTS.

21       IN TERMS OF THEM -- MOVING NEXT TO ISSUE NUMBER 13,

22  AND THAT'S WHETHER WE GET AN UNREDACTED COPY OF THE MAY 13TH

23  LETTER.  IT IS VITALLY IMPORTANT THAT WE GET AN UNREDACTED COPY

24  OF THE MAY 13TH LETTER.  THEY SAY IN THEIR BRIEFS THAT IT IS

25  AMONG THE TOBEROFF TIME LINE DOCUMENTS.  AND WE WANT TO SEE THE

EXHIBIT 5
63

35

1    "Q" BATES STAMPS ON THAT DOCUMENT.  WE WANT TO SEE HOW IT GETS

2    BURIED IN MR. TOBEROFF'S MAY 2007 DECLARATION.  WE'RE ENTITLED

3    TO THAT.  WE'RE ENTITLED TO SEE WHAT THE "Q" NUMBERS ARE SO

4    THAT WE CAN TRY TO PUZZLE HOW DID THIS DOCUMENT GET BURIED IN

5    THAT DECLARATION, HOW IS IT NOT APPEARING ANYWHERE IN ANY

6    PRIVILEGE LOGS, HOW IS IT NOT PRODUCED.  THAT'S NUMBER ONE.

7              NUMBER TWO, THEY KEEP SAYING THAT THERE ARE THESE

8    ATTORNEY NOTATIONS ON THE DOCUMENT.  BUT THEY DON'T SAY WHO THE

9    ATTORNEY WAS AND WHEN THEY WROTE THEM AND WHAT THE PURPOSE FOR

10   WRITING THEM WAS, HOW THE CONFIDENTIAL NATURE OF THOSE

11   COMMUNICATIONS WAS MAINTAINED.  THEY'VE DONE UTTERLY NOTHING TO

12   MEET THE REQUIREMENT OF PROVING PRIVILEGE.

13             NUMBER THREE, ANY CLAIM OF PRIVILEGE WAS WAIVED.

14   THIS DOCUMENT WAS RESPONSIVE TO REQUESTS SERVED ON SIEGEL MANY,

15   MANY, MANY YEARS AGO.

16             IN RESPONSE TO YOUR HONOR'S MAY 2007 -- OR APRIL 2007

17   ORDER THEY HAD TO LIST IT IN THE MAY 2007 DECLARATION.  THEY

18   DID NOT.

19             SO, WE GET THAT DOCUMENT.

20             LASTLY, UNDER "RETAINER AGREEMENTS" -- SORRY.  I WANT

21   TO BACK UP ONE STEP, YOUR HONOR, IF YOU'D INDULGE ME FOR A

22   SECOND.

23             WE ALSO HAVE REQUESTED A VERY SPECIFIC ORDER.  WE

24   WERE TOLD BY MR. TOBEROFF IN HIS ARGUMENT HERE WE WITHHELD

25   CERTAIN DOCUMENTS BECAUSE THERE WERE ATTORNEY WRITINGS ON THEM.

EXHIBIT 5
64

1    THAT IS HIS EXPLANATION FOR WHY THE MAY 13TH, 2003 DOCUMENT WAS

2    NOT PRODUCED.  AN ATTORNEY WRITING ON A NON-PRIVILEGED DOCUMENT

3    IS NOT A BASIS TO WITHHOLD DOCUMENTS.

4         WE HAVE ASKED THE COURT FOR A VERY CLEAR ORDER TO

5    REQUIRE PLAINTIFFS TO GO BACK TO THEIR FILES -- SORRY -- TO

6    REQUIRE DEFENDANTS TO GO BACK TO THEIR FILES AND MAKE SURE

7    THEY'RE NOT WITHHOLDING ANY OTHER DOCUMENTS ON THAT GROUND.

8         AND WE THINK WE'RE ENTITLED TO THAT GIVEN THE

9    ADMISSION -- WE DIDN'T SPRING THIS MOTION ON THEM.  WE HAD A

10   MEET AND CONFER IN DECEMBER.  WE WROTE A LETTER.  WE HAD A MEET

11   AND CONFER IN JANUARY.  WE WROTE A LETTER.  WE FILED OUR MOTION

12   IN EARLY FEBRUARY.

13        THEY NEVER CAME OUT TO US AND SAID, HEY, HERE'S THE

14   MAY 13TH DOCUMENT.  THEY NEVER SAID, HEY, BACK OFF YOU DON'T

15   NEED TO MOVE ON THAT GROUND.  WE HAVE FOUND THE MAY 13TH

16   DOCUMENT.  IT'S GOT THESE REDACTIONS ON IT.  WE'RE SO SORRY.

17   HERE'S THE DOCUMENT.

18        THEY NEVER DID THAT.  THEY ROLLED THE DICE.  THEY

19   HOPED THAT YOU WOULD NOT ORDER THEM TO PRODUCE THAT DOCUMENT.

20   AND, YET, THEY HAD TO.

21        AND WE NEED SIMILAR RELIEF HERE.  WE JUST NEED A VERY

22   CLEAR ORDER THAT SAYS, IF YOU'RE WITHHOLDING A DOCUMENT ON THE

23   GROUND THAT IT HAS ATTORNEY NOTATIONS ON IT, YOU NEED TO

24   PRODUCE THAT DOCUMENT IN UNREDACTED FORM.

25        LASTLY, WE LOOK AT THE RETAINER AGREEMENTS.  AND THE

EXHIBIT 5
65

37

1    RETAINER AGREEMENTS THEY'RE IN FRONT OF YOU.  I THINK IN TOTAL

2    THEY'RE ABOUT 15 PAGES LONG.  CHIEF JUDGE KLINE -- NO RELATION

3    TO ME ALTHOUGH I EXTERNED FOR HIM AND WE SPELL OUR NAME THE

4    SAME WAY -- UP IN SAN FRANCISCO JUST ISSUED A VERY IMPORTANT

5    DECISION IN THE FAIR CASE SETTING SOME VERY CLEAR PARAMETERS ON

6    WHAT TYPES OF LANGUAGE RESTRICTIONS LAWYERS CAN PUT IN BUSINESS

7    ARRANGEMENTS WITH THEIR CLIENTS.

8            AND WE NEED TO SEE THE RETAINER AGREEMENTS HERE.  MR.

9    TOBEROFF DOES NOT DENY THAT THERE ARE IMPEDIMENTS BETWEEN

10   HIMSELF AND HIS CLIENTS IN THE SETTLEMENT AGREEMENTS THAT

11   IMPEDE THEIR ABILITY TO SETTLE.

12           THERE ARE SOME CRYPTIC LANGUAGE AT THE END OF THEIR

13   OPPOSITION PAPERS THAT SAY, HEY, THERE'S NO DEAL BETWEEN THE

14   SHUSTERS AND THE SIEGELS HERE ABOUT SETTLEMENT AND DC'S OTHER

15   FANCIFUL CLAIMS OR SOME PEJORATIVE LIKE THAT.  HE SAYS THOSE

16   DON'T EXIST.

17           WE JUST WANT YOU TO LOOK THROUGH THOSE RETAINER

18   AGREEMENTS AND SEE IF THERE'S ANY LIMITATION ON THE HEIRS'

19   ABILITY TO SETTLE THIS CASE.  I MEAN, ONE OF THE BIG ISSUES IN

20   THE CASE -- IN THE SIEGEL CASE, FOR EXAMPLE, IS THEY'RE SAYING,

21   OH, GOSH, YOU KNOW, SETTLEMENT IS REALLY GOING TO BE MOVED

22   ALONG IN THIS CASE IF THIS RULE 54(B) APPEAL THAT THEY'RE

23   PURSUING IN THE SIEGEL CASE IS ALLOWED TO GO FORWARD.

24           WE WANT TO SETTLE THIS CASE TOO.  AND IF MR. TOBEROFF

25   HAS AN ILLEGAL AGREEMENT WITH HIS CLIENTS THAT SAYS HE GETS TO

EXHIBIT 5

66

1   APPROVE THEIR SETTLEMENTS OR NOT, WE WANT TO KNOW THAT BECAUSE

2   ONE OF OUR CLAIMS FOR RELIEF IS TO DECLARE THAT INVALID.  AND

3   IT'S CLEARLY INVALID UNDER CALIFORNIA LAW, INCLUDING RECENT

4   CASES LIKE FAIR.

5           MOREOVER, MR. RUTTENBERG, WHO'S SERVING AS PROBATE

6   COUNSEL FOR THE SIEGEL FAMILY, LODGED THIS DOCUMENT, ONE OF THE

7   SIEGEL RETAINER AGREEMENT DOCUMENTS IN THE STATE TRIAL COURT.

8           I THINK ANYONE KNOWS THAT IF YOU PRACTICE IN STATE

9   TRIAL COURT YOU HAVE TO FILE A MOTION TO SEAL, OR, OTHERWISE,

10  YOUR DOCUMENTS ARE DEEMED TO BE PUBLIC AND ANY PRIVILEGE IS

11  WAIVED.  AND I'M AWARE OF NO PROCEDURE KNOWN AS "THE

12  CONFIDENTIAL LODGING" PROCEDURE WHERE YOU HOPE THAT THE JUDGE

13  GIVES YOU YOUR COPY OF YOUR DOCUMENT BACK.

14          AND, SO, WE THINK A WAIVER HAS BEEN MADE AT LEAST AS

15  TO THE SIEGEL RETAINER AGREEMENT.  TO BE CLEAR, THE SHUSTER

16  RETAINER AGREEMENT WAS NOT SUBMITTED TO THE PROBATE JUDGE IN

17  THAT CASE.

18          SO, WE THINK THIS MOTION SHOULD BE GRANTED.  AND I'LL

19  SUBMIT ON THAT, YOUR HONOR.

20          THE COURT:  ALL RIGHT.  THANK YOU.

21          MR. TOBEROFF.

22          MR. TOBEROFF:  I'LL, FIRST OF ALL, START WITH THE

23  NOVEMBER 2ND LETTER.  AS WE SAID IN OUR PAPERS, WE DID PERFORM

24  A DILIGENT SEARCH OF OUR RECORDS, ALL OF OUR RECORDS, AND

25  THERE'S NO NOVEMBER 2ND LETTER AS DESCRIBED.  THERE'S NO

EXHIBIT 5
67

39

1  NOVEMBER 2ND LETTER APPEARING IN OUR FILES.

2          NOW, I HATE TO RELY ON THEIR TIME LINE BECAUSE OF THE

3  NATURE OF THAT DOCUMENT WRITTEN BY A THIEF, BUT THE AUTHOR OF

4  THAT TIME LINE OBVIOUSLY HAD ACCESS TO OUR LEGAL FILES, AND HE

5  DIDN'T MENTION THE NOVEMBER 2ND LETTER EITHER, WHICH IN A

6  PERVERSE WAY LENDS SOME CREDIBILITY TO THE FACT THAT IT ISN'T

7  IN OUR LEGAL FILES.

8          WE WEREN'T PROVIDED A COPY.  WE ALSO, OF COURSE,

9  ASKED OUR CLIENT WHETHER SHE HAD A COPY AND TO RESEARCH HER

10  RECORDS.  AND SHE DIDN'T HAVE A COPY EITHER.  AND WE INFORMED

11  THEM THAT THEIR MOTION TO COMPEL WOULD BE MOOT.  AND THEY

12  BROUGHT IT ANYWAY.  I CAN'T PRODUCE A DOCUMENT THAT WE CAN'T

13  FIND.  THAT'S THE NOVEMBER 2ND LETTER.

14          I BELIEVE IT'S NOT A PROPER -- I BELIEVE MR. KLINE

15  MISCHARACTERIZES THE RECORD WHEN HE WAS SPEAKING, USING THIS AS

16  AN OPPORTUNITY TO ASK YOU TO RECONSIDER YOUR PRIOR RULINGS

17  REGARDING THE JULY LETTER.  AND HE STARTED TALKING AGAIN ABOUT

18  THE MAY 13TH LETTER AND SAID THAT WE DENIED ITS EXISTENCE.

19          WE DID NOT DENY ITS EXISTENCE.  THE COURT, IN FACT,

20  NOTED THAT IN OUR BRIEF WE DID NOT DENY ITS EXISTENCE.  AND ON

21  THAT BASIS SINCE WE DIDN'T SAY IT WAS PRIVILEGED OR DENIED ITS

22  EXISTENCE, THE COURT ORDERED US TO PRODUCE IT, ORDERED US TO

23  GIVE A DECLARATION THAT IT DIDN'T EXIST.  AND WE PRODUCED IT

24  IMMEDIATELY.

25          SO, THEIR WHOLE PREMISE THAT WE WERE SECRETING

EXHIBIT 5
68

40

1    EVIDENCE IS NOT TRUE.  THERE ARE -- YOU KNOW, WE ARE DEALING --

2    HE'S ISOLATING THIS ONE LETTER, BUT WE ARE DEALING IN RAPID

3    FIRE WITH THEM ON MANY, MANY, AND MANY DISCOVERY ISSUES.

4           AS HAS --

5           THE COURT:  MR. TOBEROFF, LET ME JUST ASK YOU

6    SOMETHING.  ON THE MAY 13TH LETTER I THINK YOU TOLD ME THAT YOU

7    ONLY HAD ONE COPY OF IT.

8           MR. TOBEROFF:  OKAY.  YES.  ACTUALLY -- ACTUALLY, LET

9    ME -- WE HAVE ONE COPY -- WHAT I SAID WAS, WE HAVE ONE COPY IN

10   OUR FILE -- I'M GOING TO GET TO THE BATES STAMP ISSUE.  WE HAVE

11   ONE COPY IN OUR FILES WITH ATTORNEY NOTATIONS.  WHEN WE

12   PRODUCED THE MAY 13TH LETTER WE PRODUCED THE COPY IN OUR FILE.

13   DOESN'T HAVE -- WE DIDN'T GO TO A COPY OF THAT COPY, WHICH IS

14   THE STOLEN DOCUMENTS WITH THE BATES NUMBER ON IT.  AND THAT'S

15   WHY -- AND, SO, WE DIDN'T -- WE DIDN'T REDACT THE BATES NUMBER.

16          IN RETROSPECT, WHAT WE COULD HAVE DONE IS PRODUCED

17   OUR TWO COPIES, ONE WITH THE BATES NUMBER, ONE WITHOUT THE

18   BATES NUMBER.  WE DIDN'T -- WE DIDN'T -- THAT WAS NOT

19   INTENTIONAL.  WE JUST PRODUCED OUR -- WE WENT TO OUR FILE, AND

20   WE PRODUCED THE COPY IN THE FILE.  AND ALL THAT WE REDACTED IS

21   THE ATTORNEY MARGINALIA.  AND WE DIDN'T -- MARGINALIA, EXCUSE

22   ME.

23          WE DIDN'T -- THOSE ATTORNEY NOTATIONS ARE NOT LISTED

24   IN THE PRIVILEGE LOG BECAUSE OF TWO AGREEMENTS THAT WE HAVE.

25   ONE IN THIS CASE WE HAVE A STIPULATION WITH THE OTHER SIDE THAT

EXHIBIT 5
69

41

1    I BELIEVE YOUR HONOR SIGNED, WHICH SAID THAT THE

2    POST-LITIGATION INTERNAL COMMUNICATIONS, WHICH ATTORNEY

3    UNDERLINING OR MARGINALIA WOULD BE, NEED NOT BE LOGGED.  SO,

4    THERE'S NO WAIVER IN THIS CASE.

5             IN THE SIEGEL CASE WE HAD AN AGREEMENT WITH THEM THAT

6    POST-LITIGATION DOCUMENTS -- NO POST-LITIGATION DOCUMENTS NEED

7    BE LOGGED.

8             AND THAT AGREEMENT WAS ACKNOWLEDGED BY THE PRIOR

9    COUNSEL MICHAEL BERGMAN IN A DECLARATION TO JUDGE LARSON THAT

10   WE'VE CITED BEFORE TO THIS COURT.

11            SO, THERE WAS NO WAIVER WITH RESPECT TO THE

12   MARGINALIA, BUT I CAN TELL YOU THAT WE'RE FIGHTING OVER -- AS

13   THE COURT SAID, THIS IS ONE OF THOSE MUCH ADO ABOUT NOTHING

14   ARGUMENTS.

15            STILL, WE DON'T BELIEVE WE SHOULD PRODUCE PRIVILEGED

16   NOTATIONS OR UNDERLINING BY AN ATTORNEY.

17            THE COURT:  ALL RIGHT.  WHY DON'T YOU MOVE ON TO

18   ISSUE 14, THE RETAINER AGREEMENTS.

19            MR. TOBEROFF:  AS FAR AS THE RETAINER AGREEMENTS,

20   THEY'RE MAKING A MOTION BASED ON SPECULATION.  THEY'RE

21   BASICALLY SAYING THIS DOCUMENT IS IMPROPERLY REDACTED BECAUSE

22   IT COULD HAVE A -- LIMITING THE CLIENT'S ABILITY TO SETTLE THE

23   CASE WHERE THE ATTORNEY NEEDS TO APPROVE SETTLEMENT.

24            OF COURSE, THERE IS NO SUCH LIMITATION IN THE

25   RETAINER AGREEMENT.  AND I CAN REPRESENT TO YOUR HONOR THERE'S

EXHIBIT 5
70

42

1  NO REPRESENTATION IN THE AGREEMENT, AND THERE'S NO BASIS FOR

2  THEM TO SAY THAT IT'S IN THIS LEGAL RETAINER AGREEMENT.  IT IS

3  NOT.

4       THE PROBATE ATTORNEY -- I DON'T THINK MR. KLINE --

5  WHICH I DON'T BELIEVE ANYBODY WOULD CONFUSE WITH THE JUDGE THAT

6  HE MENTIONED BECAUSE KLINE IS A FAIRLY COMMON NAME.  BUT I

7  DON'T BELIEVE HE KNOWS THE INS AND OUTS OF HOW THEY WORK IN

8  PROBATE COURT.  IN PROBATE COURT THERE ARE A LOT OF THINGS THAT

9  ARE HANDLED ON A MUCH LESS FORMAL BASIS.  AND ONE OF THEM IS

10  THIS CONFIDENTIAL LODGING IN WHICH THE PROBATE ATTORNEY

11  ACTUALLY WITHOUT MY KNOWLEDGE HAD CONFIDENTIALLY LODGED FOR AN

12  HOUR AND 45 MINUTES WITH THE COURT FOR THE COURT TO JUST REVIEW

13  SOME DOCUMENTS, INCLUDING THE RETAINER AGREEMENT.  AND I DON'T

14  BELIEVE THAT WOULD CONSTITUTE A WAIVER.  IT WASN'T FILED.  IT

15  WASN'T AVAILABLE TO THE PUBLIC.  AND IT WAS SIMPLY REVIEWED BY

16  THE COURT ON A CONFIDENTIAL BASIS SIMILAR TO AS IF YOU REVIEWED

17  A DOCUMENT IN CAMERA.

18       THE COURT:  ALL RIGHT.

19       MR. TOBEROFF:  THAT DOESN'T CONSTITUTE WAIVER.  AND

20  THEY HAVEN'T BEEN ABLE TO CITE A SINGLE CASE SAYING THAT THAT

21  CONSTITUTES A WAIVER.

22       WHAT WE REDACTED IN THEIR RETAINER AGREEMENT WERE

23  PURSUANT TO THE COURT'S ORDER ASPECTS OF THE RETAINER AGREEMENT

24  THAT PERTAINED TO THE SCOPE OF OUR SERVICES THAT CONNOTED LEGAL

25  ADVICE AND OTHER ASPECTS IN A RETAINER AGREEMENT THAT DEALS

EXHIBIT 5
71

43

1  WITH DIFFERENT POTENTIAL OUTCOMES OF THE CASE, WHICH WE BELIEVE

2  WERE PROPERLY REDACTED AND IMPLICATE ATTORNEY WORK-PRODUCT AND

3  ATTORNEY-CLIENT PRIVILEGE.

4       ALSO, THEY HAVE SORT OF STRETCHED THOSE CASES THAT

5  SAY YOU CAN -- THE CASES THAT THEY RELIED ON TO GET THE

6  RETAINER AGREEMENT TO BEGIN WITH ARE NOT CASES THAT SAY IT'S

7  COMMON PRACTICE TO GET THE OTHER SIDE'S RETAINER AGREEMENT IN A

8  CASE AND IT'S NOT PRIVILEGED.  THOSE CASES SAY THE FEE

9  ARRANGEMENT IS NOT PRIVILEGED.  THE FEE ARRANGEMENT IS NOT

10  PROTECTED.

11       THEY HAVE OUR FEE ARRANGEMENT.  AFTER SIMILAR

12  BASELESS SPECULATION THAT I IN PLEADING -- WHERE THEY SAY THAT

13  I OWN A PIECE OF THE SUPERMAN RIGHTS AND I PROPERLY OWN THIS IN

14  CONTRAVENTION OF THEIR RIGHTS UNDER THE COPYRIGHT ACT AND SO ON

15  AND SO ON.

16       AND I ALWAYS SAID WE HAVE THE RETAINER AGREEMENT.

17  ALL I HAVE IS A CONTINGENCY, WHICH THE LAST TIME I CHECKED WAS

18  LEGAL IN THE STATE OF CALIFORNIA.  NOW THEY HAVE THAT, AND

19  THEY'RE STILL COMPLAINING.

20       THE COURT:  ALL RIGHT.  I DON'T SEE A NEED FOR REPLY,

21  MR. KLINE.

22       MR. KLINE:  THANK YOU, YOUR HONOR.

23       THE COURT:  ALL RIGHT.  ON ISSUE 13, IN MY VIEW THE

24  RECORD ESTABLISHES THAT THE DEFENDANTS HAVE CONDUCTED A

25  DILIGENT AND REASONABLE SEARCH, AND THEY HAVE REPRESENTED THAT

EXHIBIT 5
72

44

1   SUCH A SEARCH DISCLOSED NO NOVEMBER 2ND, 2002 LETTER.   IN THE

2   COURT'S VIEW THAT'S SUFFICIENT.

3           AS TO ISSUE NUMBER 13, AGAIN, WE DEAL WITH THE MAY

4   13TH LETTER.   THE COURT AGREES THAT THE FACE OF THE LETTER

5   ITSELF DISCLOSES NO REDACTIONS.   BASED ON THE TERMS OF THE

6   DECEMBER 2010 STIPULATION IT DOES NOT APPEAR TO THE COURT THAT

7   THE DEFENDANTS HAVE WAIVED CLAIMS OF PRIVILEGE OR OTHER

8   PROTECTION.

9           NOR DOES THE FACT THAT AN ATTORNEY IS NOT IDENTIFIED

10  MEAN THAT THE DEFENDANTS CANNOT SUSTAIN A WORK-PRODUCT CLAIM.

11  MARGINALIA ITSELF CLEARLY CAN INDICATE THE NATURE AS TO AN

12  ATTORNEY'S COMMENTS.

13          AS TO ISSUE NUMBER 14, THE ISSUE AS TO THE RETAINER

14  AGREEMENTS I BELIEVE -- I AGREE HERE IS PURE SPECULATION.   THE

15  COURT AUTHORIZED REDACTION OF THE AGREEMENTS.   AND THE FACT

16  THAT PLAINTIFF THINKS THE DEFENDANTS USED A PRACTICE GUIDE AS A

17  MODEL IS NO BASIS FOR THE COURT TO DOUBT THE APPROPRIATENESS OF

18  THE CLAIM OF PRIVILEGE.   NOR DOES THE LODGING OF THE SIEGEL

19  RETAINER AGREEMENT WITH THE PROBATE COURT IN ORDER TO RECEIVE

20  TESTAMENTARY LETTERS A BASIS FOR THE WAIVER.

21          THE MOTION IS DENIED.

22          MR. KLINE:   YOUR HONOR, MAY I ASK ONE THING?

23          CAN WE ASK TO AT LEAST GET A COPY OF THE "Q" BATES

24  STAMPED VERSION OF THE MAY 13TH, 2003 LETTER?   THERE'S UTTERLY

25  NO CLAIM THAT THAT'S A PRIVILEGED DOCUMENT, AND THERE'S NO

EXHIBIT 5

73

45

1   REASON WHY WE SHOULDN'T GET A COPY OF IT --

2           THE COURT:  MR. KLINE, YOU FOLKS ARE VERY GOOD AT

3   FILING PAPER.  I THINK I'VE DEALT WITH EVERYTHING THAT HAS BEEN

4   PRESENTED AS A MOTION.  SO, I'M NOT GOING TO START TAKING ORAL

5   MOTIONS.

6           MR. KLINE:  THANK YOU, YOUR HONOR.

7           THE COURT:  ALL RIGHT.  WE'LL BE IN RECESS.

8           (PROCEEDINGS CONCLUDED 11:32 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 5

46

```
 1

 2                            C E R T I F I C A T E

 3

 4            I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

 5    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

 6    ABOVE-ENTITLED MATTER.

 7

 8

 9

10    /S/ DOROTHY BABYKIN                      6/27/11

11    _____         _____

12    FEDERALLY CERTIFIED TRANSCRIBER          DATED

13    DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 5
75