# EXHIBIT D

CASE NO. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## IN RE PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, MARK WARREN PEARY, JEAN ADELE PEAVY, AND LAURA SIEGEL LARSON

*Defendants-Petitioners,*

(*caption continued on next page*)

_____

PETITION FOR A WRIT OF MANDAMUS REVERSING WAIVER OF PRIVILEGE ON STOLEN PRIVILEGED DOCUMENTS PRODUCED TO THE UNITED STATES ATTORNEY'S OFFICE PURSUANT TO A GRAND JURY SUBPOENA AND A CONFIDENTIALITY AGREEMENT

From The United States District Court for the Central District of California, Case No. CV-10-3633

_____

| | |
|---|---|
| TOBEROFF & ASSOCIATES, P.C. | KENDALL BRILL & KLIEGER LLP |
| Marc Toberoff (188547) | Richard B. Kendall (90072) |
| Keith G. Adams (240497) | Laura W. Brill (195889) |
| 2049 Century Park East, Suite 3630 | 10100 Santa Monica Blvd., Suite 1725 |
| Los Angeles, California, 90067 | Los Angeles, California  90067 |
| Telephone:  (310) 246-3333 | Telephone:   (310) 556-2700 |

*Attorneys for Defendants-Petitioners Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel*

*Attorneys for Defendants-Petitioners Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, and Marc Toberoff*

86356.1

v.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF
CALIFORNIA

*Respondent,*

DC COMICS,

*Plaintiff-Real Party in Interest.*

86356.1

EXHIBIT D
81

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Petitioners make the following disclosure statements:

Defendant-Petitioner IPW, LLC does not have a parent corporation, nor does any publicly held corporation own 10% or more of IPW, LLC.

Defendant-Petitioner IP Worldwide, LLC does not have a parent corporation, nor does any publicly held corporation own 10% or more of IP Worldwide, LLC.

Defendant-Petitioner Pacific Pictures Corporation does not have a parent corporation, nor does any publicly held corporation own 10% or more of Pacific Pictures Corporation.

Dated: June 30, 2011
/s Marc Toberoff
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.

Attorneys for Defendants-Petitioners,
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura Siegel
Larson, individually and as personal
representative of the Estate of Joanne Siegel

Dated: June 30, 2011
/s/ Richard Kendall
Richard Kendall
KENDALL BRILL & KLIEGER LLP

Attorneys for Defendants-Petitioners,
Pacific Pictures Corporation, IP Worldwide,
LLC, IPW, LLC, and Marc Toberoff

86356.1

1

EXHIBIT D

82

## TABLE OF CONTENTS

I.     INTRODUCTION .........................................................................1

II.    STATEMENT OF RELIEF SOUGHT AND ISSUES
      PRESENTED ...........................................................................5

III.   BACKGROUND .......................................................................5

     A.    General Background ...........................................................5

     B.    The Theft Of Privileged Documents From Toberoff &
         Associates .......................................................................6

     C.    The Criminal Investigation ..................................................8

     D.    DC's Motion To Compel And The May 25 Order ...........................11

IV.   ARGUMENT ...........................................................................12

     A.    A Writ Of Mandamus Should Issue, As The May 25
         Order Was Erroneous And Is Plainly An Appropriate
         Matter for Writ Review......................................................12

         1.    Defendants Have No Other Means To Challenge
             The Order .............................................................15

         2.    Absent Mandamus Relief, Defendants Will Be
             Damaged In A Way That Cannot Be Corrected On
             Appeal ................................................................15

         3.    The Orders Below Require Correction ...................................17

             a.    The May 25 Order Erred In Finding "No
                 Important Distinction" Between Disclosure
                 To Law Enforcement Authorities By An
                 Alleged Criminal And Disclosure By The
                 Victim Of A Privacy Crime .........................................17

|   | b. | The May 25 Order Misapplied Out-Of-Circuit Law To Reach Its Erroneous Conclusion .................................................... 20 |
|   | c. | Privilege Is Preserved When Disclosures Are Made Pursuant To An Express Agreement To Maintain Privilege .............................. 23 |
|   | d. | The District Court Failed To Recognize The Common Interest Between Defendants And The Government ......................................... 26 |
|   | e. | The District Court's Order Raises Important Issues of First Impression In The Ninth Circuit, As This Court Has Never Adopted DC's Waiver Theory In Any Context.......................... 29 |

V. CONCLUSION ............................................................. 30

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 21(d) .............................................. 32

STATEMENT OF RELATED CASES ................................ 33

CERTIFICATE OF SERVICE ......................................... 34

EXHIBIT D
84

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*,
881 F.2d 1486 (9th Cir. 1989) ........................................................ 14-15

*Anderson v. Torrington Company*,
120 F.R.D. 82 (N.D. Ind. 1987) ...............................................28

*Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*,
410 F.3d 1104 (9th Cir. 2005) ...............................................14

*Bauman v. United States District Court*,
557 F.2d 650 (9th Cir. 1977) ........................................ 13-15, 17

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ...............................................4, 29

*Burroughs v. DeNardi Corp.*,
167 F.R.D. 680 (S.D. Cal. 1996) ...............................................10, 28

*City of Las Vegas v. Foley*,
747 F.2d 1294 (9th Cir. 1984) ...............................................15

*Diversified Industries, Inc. v. Meredith*,
572 F.2d 596 (8th Cir. 1978) ........................................ 4, 29-30

*E.E.O.C. v. Chemtech Intern. Corp.*,
1995 U.S. Dist. LEXIS 21877 (S.D. Tex. 1995) ...............................................28

*Ellis v. United States District Court*,
356 F.3d 1198 (9th Cir. 2004) ...............................................13

*Fossyl v. Watson*,
2006 U.S. Dist. LEXIS 98406 (S.D. Ohio Sept. 5, 2006) ...............................................25

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
115 F.R.D. 308 (N.D. Cal. 1987) ...............................................21

EXHIBIT D

*In re Anonymous Online Speakers*,
09-71265, 2011 WL 61635 (9th Cir. Jan. 7, 2011)...............................................14

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
293 F.3d 289 (6th Cir. 2002) ................................................................22

*In re Grand Jury Proceedings*,
851 F.2d 860 (6th Cir. 1988) ................................................................25

*In re Grand Jury Subpoenas*,
902 F.2d 244 (4th Cir. 1990) ................................................................28

*In re LTV Securities Litigation*,
89 F.R.D. 595 (N.D. Tex. 1981) ................................................................28

*In re Leslie Fay Companies, Inc. Sec. Litig.*,
161 F.R.D. 274 (S.D.N.Y. 1995) ................................................................ 24-25

*In re Steinhardt Partners L.P.*,
9 F.3d 230 (2d Cir. 1993)...........................................................4, 23, 27

*In re Qwest Comms. Int'l*,
450 F.3d 1179 (10th Cir. 2006) ................................................................22

*Islamic Shura Council of S. Cal. v. FBI*,
635 F.3d 1160 (9th Cir. 2011) ................................................................16

*Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*,
161 B.R. 689 (D. Colo. 1993)................................................................20, 24

*Maruzen Co. v. HSBC USA, Inc.*,
2002 U.S. Dist. LEXIS 13288 (S.D.N.Y. 2002)................................................................25

*McKesson HBOC, Inc. v. Superior Court*,
115 Cal. App. 4th 1229 (2004) ................................................................22

*Medhekar v. United States District Court*,
99 F.3d 325 (9th Cir. 1996) ................................................................13

86356.1

iv

*Mohawk Indus. v. Carpenter*,
130 S. Ct. 599 (2009) ............................................................................................16

*People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
20 Cal. 4th 1135 (1999) .......................................................................................18

*Permian Corp. v. United States*,
665 F.2d 1214 (D.C. Cir. 1981) ............................................................................22

*Picard Chemical, Inc. v. Perrigo Co.*,
951 F. Supp. 679 (W.D. Mich. 1996) ...................................................................25

*Police & Fire Ret. Sys. v. Safenet, Inc.*,
2010 U.S. Dist. LEXIS 23196 (S.D.N.Y. Mar. 11, 2010) ....................................24

*Pritchard-Keang Nam Corp. v. Jaworski*,
751 F.2d 277 (8th Cir. 1984) ...............................................................................30

*Regents of Univ. of Cal. v. Superior Court*,
165 Cal. App. 4th 672 (2008) ...............................................................................25

*SEC v. Amster & Co.*,
126 F.R.D. 28 (S.D.N.Y. 1989) .............................................................................25

*SEC v. Rajaratnam*,
622 F.3d 159 (2d Cir. 2010)............................................................................ 16-17

*Schnell v. Schnall*,
550 F. Supp. 650 (S.D.N.Y. 1982).......................................................................20

*Sedlacek v. Morgan Whitney Trading Group, Inc.*,
795 F. Supp. 329 (C.D. Cal. 1992) ........................................................... 10, 27-28

*Siegel v. Warner Bros. Ent. Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................................ 5-6

*Swidler & Berlin v. United States*,
524 U.S. 399 (1998)..............................................................................................18

*Teachers Insurance and Annuity Association of America v. Shamrock
Broadcasting Co.*,
521 F. Supp. 638 (S.D.N.Y. 1981)................................................................... 23-24

*United States v. Bay State Ambulance & Hosp. Rental Serv.*,
874 F.2d 20 (1st Cir. 1989) ............................................................................. 28-29

*United States v. Bergonzi*,
403 F.3d 1048 (9th Cir. 2005) ...........................................................................4, 29

*United States v. Chen*,
99 F.3d 1495 (9th Cir. 1996) ..........................................................................13, 18

*United States v. Cisco Sys.*,
2011 U.S. Dist. LEXIS 30902 (E.D. Ark. Mar. 15, 2011) ...................................28

*United States v. Gumbaytay*,
2011 U.S. Dist. LEXIS 47142 (M.D. Ala. Jan. 19, 2011).....................................28

*United States v. Massachusetts Institute of Technology*,
129 F.3d 681 (1st Cir. 1997) ........................................................................... 21-22

*United States v. Reyes*,
239 F.R.D. 591 (N.D. Cal. 2006)..........................................................................22

*United States v. Shyres*,
898 F.2d 647 (8th Cir. 1990) ...............................................................................25

*Westinghouse Electric Corporation v. The Republic of the Philippines*,
951 F.2d 1414 (3d Cir. 1991) ...................................................................4, 22, 30

## Other Authorities

17 U.S.C. § 304 ......................................................................................................6

Fed. R. Crim. P. 6...................................................................................................25

Fed. R. Crim. P. 16.................................................................................................20

F.R.E. 502 .............................................................................................................26

Christopher A. Goelz and Meredith J. Watts, CALIFORNIA PRACTICE GUIDE: FEDERAL 9TH CIRCUIT CIVIL APPELLATE PRACTICE, Ch. 13-C ........................................................................................................14

Letter from the Committee on Rules and Practice and Procedure of the Judicial Conference of the United States to the Committee on the Judiciary of the U.S. Senate and House of Representatives dated Sept. 26, 2007; Minutes of Advisory Committee on Evidence Rules Meeting [6], at 15 (April 12-13, 2007) ...............................................................................................26

86356.1

EXHIBIT D
89

# I.     <u>INTRODUCTION</u>

This petition raises important and recurring questions concerning the preservation of attorney-client privilege in the context of criminal investigations by law enforcement authorities.  Specifically at issue is whether the victims of a theft of privileged documents can show copies thereof to law enforcement, pursuant to a Grand Jury subpoena and a confidentiality agreement, to enable law enforcement to investigate the crime, without waiving privilege as to third parties?

In any rational system of justice that values the attorney-client privilege and seeks to discourage the theft of privileged material, the answer must be yes – such disclosures do not waive privilege.  This is especially true in the instant case, where a young attorney stole privileged client documents from the law firm where he was newly employed and delivered the documents to the clients' litigation adversary.  The theft was designed to destroy the attorney-client privilege to the advantage of the clients' litigation adversary.  It is counterintuitive that theft cannot be investigated unless the victim waives the privilege the thief sought to invade.

Despite the clear intent of the victims and the U.S. Attorney's Office ("USAO")  to preserve the privilege through an extensive confidentiality agreement and the protections of Grand Jury secrecy law, the Magistrate Judge, relying on inapposite out-of-circuit cases involving voluntary disclosures by targets of investigation to prosecutors in the hope of avoiding prosecution, and finding "no

86356.1

1

Case 2:10-cv-03633-ODW-RZ Document 298-6 Filed 07/18/11 Page 13 of 43 Page
ID #:17768

important distinction" (Exhibit ("Ex.") 24 at 3) between a victim's interest in

seeking justice  and an investigation target's interest in avoiding prosecution,

erroneously found a waiver of privilege and ordered the documents produced.

The underlying lawsuit stems from a dispute between plaintiff DC Comics

("DC"), its effective parent Warner Bros. Entertainment Inc. ("Warner), and the

heirs/estate of Jerry Siegel and Joe Shuster, the co-creators of Superman ("Heirs").

On May 14, 2010, DC initiated this retaliatory lawsuit against the Heirs' long-time

opposing counsel, Marc Toberoff, who had successfully represented the Heirs in

exercising their termination rights under the Copyright Act, and who had

vindicated the Siegel copyrights through years of litigation in *Siegel v. Warner

Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx).

In the midst of the *Siegel* case*,* Mr. Toberoff and the Heirs (collectively,

with the other defendants, "Defendants") were victimized by the theft of reams of

privileged documents stolen from Mr. Toberoff's law firm, by a newly employed

attorney, who delivered the privileged material to their litigation opponents at

Warner (the "Stolen Privileged Documents").  In both *Siegel* and this case, Warner

and DC have sought to exploit the Stolen Privileged Documents.

After Mr. Toberoff and his clients reported the theft to the FBI and the

USAO, the USAO informed Mr. Toberoff's counsel that it needed to review copies

of the Stolen Privileged Documents in order to investigate the crime.  To safeguard

the attorney-client privilege, the USAO agreed that the material would be maintained as strictly privileged and confidential, acknowledged that the USAO shared a common interest with Defendants, issued a Grand Jury subpoena such that production of the documents to the USAO was pursuant to process, rather than voluntary, and promised to return the documents after completing its review. Based on the USAO's confidentiality agreement, the subpoena, the secrecy surrounding a Grand Jury, the USAO's joint interest in investigating the crime, and the USAO's representation that it needed to review the Stolen Privileged Documents to investigate the crime, Mr. Toberoff provided them to the USAO.

Thereafter, DC moved to compel production of the Stolen Privileged Documents, contending that the mere act of temporarily sharing this privileged material with law enforcement officials had waived the attorney-client privilege as to the entire world, regardless of the express understanding to the contrary. On May 25, 2011, the Magistrate Judge issued an order (the "May 25 Order") that defendants had broadly waived privilege on the Stolen Privileged Documents by showing them to the USAO. The May 25 Order acknowledged its result could well be that "perpetrator[s] goes free," but still found a broad waiver, without any authority compelling this counter-intuitive, anti-law enforcement result.

In so doing, Magistrate Judge relied on out-of-circuit cases dealing not with victims of crimes, but rather with disclosures to the government by the ***targets*** of

criminal investigations whose interests were adverse to the government. Even as to this different fact pattern, there is no Ninth Circuit authority compelling disclosure. This Court has not yet addressed the issue of waiver by the targets of investigation, and other Circuits are split on the issue. *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005) (deferring decision); *Bittaker v. Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003) (same); *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (privilege is preserved); *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991) (privilege waived). Moreover, even cases that found such a waiver by *the target* of an investigation have recognized that when documents are produced, as here, pursuant to an express agreement by the government to maintain them as confidential, the privilege must be preserved. *See, e.g., In re Steinhardt Partners L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

The Magistrate Judge acknowledged the critical "importance of the issue," and the lack of authority from this Court, and accordingly stayed the disclosure order to permit further review. Ex. 24. As the Magistrate Judge explained, "[t]he Ninth Circuit … has not weighted these considerations in a context like that presented here," and "the consequences of a wrong decision are significant" in that if writ relief is not granted the privilege "will not have been preserved, and the confidence which clients reposed in their attorneys will have been undermined."

Ex. 32 at 2.  As the May 25 Order dramatically undermines the attorney-client
privilege and hamstrings the ability of law enforcement to properly investigate
thefts of privileged and confidential material, and as this error cannot be
meaningfully corrected on appeal from a final judgment, this Court should issue a
writ of mandamus, reverse the Order, and confirm that no waiver occurred.

## II.   STATEMENT OF RELIEF SOUGHT AND ISSUES PRESENTED

Should a writ of mandamus issue to correct an erroneous district court ruling
that clients, who were the victim of a crime when their privileged documents were
stolen from their lawyer's office and delivered to their litigation adversary, waived
privilege in the stolen documents when their counsel temporarily provided the
documents to federal authorities investigating the crime, in response to a grand jury
subpoena and subject to a common-interest/confidentiality agreement with the
United States Attorney that was designed to ensure that the privilege would not be
waived ?

## III.   BACKGROUND

### A.   General Background

In the mid-1930s, two high school students, Jerome Siegel (an author) and
Joseph Shuster (an illustrator), co-created Superman and with it, the superhero
genre.  *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1102-11 (C.D.
Cal. 2008).  In 1938, for a pittance, they signed a publisher's release which was

later held to have granted their entire Superman copyright to DC, which has exploited it for more than 70 years. *Id.* at 1107, 1110.

In 1976, Congress amended the Copyright Act to extend the copyright term, and, in response to the plight of authors who, like Siegel and Shuster, lacked the bargaining power to retain any financial interest in their copyrights, Congress gave authors and their heirs the inalienable right to terminate prior grants of copyright and recapture their copyrights for the extended term. 17 U.S.C. §§ 304(c), (d).

In 1996, Jerome Siegel died. *Siegel*, 542 F. Supp. 2d at 1113. He was survived by his widow, the late Joanne Siegel, and their daughter, defendant Laura Siegel Larson (the "Siegels"). *Id.* at 1102, 1114. In 1997, the Siegels served statutory notices of termination on DC of Jerome Siegel's 1938 Superman copyright grants, effective as of April 16, 1999. *Id.* at 1114. In Fall 2002, the Siegels contacted and thereafter retained the intellectual property attorney Marc Toberoff ("Toberoff") in connection with their statutory termination, after a breakdown of their negotiations with DC. *Id.* In October 2004, the Siegels, represented by Toberoff, filed two federal actions, No. 04-CV-08400 ODW (RZx) (C.D. Cal.) & 04-CV-08776 ODW (RZx) (C.D. Cal.), seeking to vindicate their terminations under the Copyright Act.

**B.**     **The Theft Of Privileged Documents From Toberoff & Associates**

On July 18, 2005, Mr. Toberoff's law firm, Toberoff & Associates, P.C.,

was approached by a young attorney named David Michaels ("Michaels"), who

was hired as its most junior attorney.  *See* Ex. 26, Ex. D at 5.  Michaels had access

to attorney-client privileged material relating to the *Siegel* case, Joanne Siegel,

Laura Siegel Larson, Jean Adele Peavy, Mark Warren Peary, and other clients of

Mr. Toberoff.  In mid-October 2005, after just three months and without incident

or warning, Michaels left work in the middle of the day and never returned.

Numerous concerned calls to Michaels went unanswered.  *Id.*  In November-

December 2005, Michaels contacted the Siegels.  He had documents stolen from

Mr. Toberoff's files, and attempted to divert the Siegels to another firm, with him

as their attorney, by accusing Mr. Toberoff of purported unethical conduct, like

allegedly charging "unconscionable fees."  *Id.* at 6.  In December 2005, the Siegels

rejected Michaels' overtures.  *Id.*

      In July 2006, Warner disclosed to Defendants that its General Counsel had

allegedly been sent anonymously received a large package of privileged and

confidential documents stolen from Mr. Toberoff's law firm, from an allegedly

anonymous sender, along with a rambling cover letter, allegedly penned by the

thief in the form of a so-called "Timeline," in which the thief expressed opinions

supposedly based on the Stolen Privileged Documents.  *Id.* at 6-7.[1]  In or about

---

[1] The Timeline, written as a hit-piece against Mr. Toberoff, said "consider this an
early Holiday present," Docket No. 54, Ex. A at 1, but the documents were not
disclosed by Warner until July.

86356.1

November 2007, Mr. Toberoff met with Stanley Ornellas of the Los Angeles FBI Field Office and reported the theft. *Id.* at 8. Eventually, in late 2008, the Stolen Privileged Documents were ordered returned to Mr. Toberoff. Exs. 1-2.

## C.     __The Criminal Investigation__

In May 2010, DC filed the instant lawsuit, which attached and relied heavily upon the thief's Timeline. *See* Ex. 3, Ex. A. Thereafter, the USAO initiated a Grand Jury Investigation regarding the Stolen Privileged Documents after being contacted by Defendants' counsel. *Id.* at 8. As part of that investigation, Assistant U.S. Attorneys Beong-Soo Kim and Brian Klien advised Mr. Toberoff's counsel, Richard Kendall, a former Assistant U.S. Attorney, that "they would need to review the privileged Stolen Privileged Documents as part of any investigation and/or prosecution regarding the theft from Mr. Toberoff's offices" in order to determine the nature and severity of the crime. *See* Ex. 21, ¶ 4. Mr. Kendall responded that defendants "would not disclose the documents to the government unless the privilege could be protected." *Id.*, ¶ 5.

On September 13, 2010, a Grand Jury subpoena was served on Mr. Toberoff requesting copies of the Timeline and the Stolen Privileged Documents. *See* Ex. 10, Ex. A. In a letter to Mr. Kendall, the USAO agreed to maintain the confidentiality of the requested documents, recognized the "objective to preserve any and all applicable privileges," and assured Defendants that "nothing in ... Mr.

86356.1

Toberoff's disclosure of the [Stolen D]ocuments … is intended to waive any applicable privilege or protection under law." Ex. 10, Ex. B at 2. The USAO also assured Defendants that it "will maintain the confidentiality of the [Stolen D]ocuments and related information," and that it would "return the [] documents …as soon as we determine that we no longer need them." *Id.* at 1.

On September 17, 2010, Mr. Kendall produced the Stolen Privileged Documents to the USAO pursuant to the Grand Jury subpoena and the USAO's assurances, together with a letter confirming the understanding that the documents were being provided pursuant to a common interest privilege and without waiver of privilege:

> We are in receipt of the Grand Jury subpoena issued by your office on September 13, 2010. ***As demanded by the subpoena, and in an effort to assist the Government in its ongoing criminal investigation,*** Mr. Toberoff provides hereunder the "SUPERMAN - MARC TOBEROFF TIMELINE" (the "Timeline") and its enclosures . . . .

> This response to the Grand Jury's subpoena ***is made subject to and without waiver of the attorney-client privilege, work product immunity, or any other privilege applicable to these documents.*** The Timeline itself and many of the enclosed documents are clearly subject to the attorney-client privilege and/or work-product immunity, and ***we are providing them subject to our mutual understanding that providing such documents in response to your subpoena shall not constitute a waiver of any applicable privilege or immunity.***

> Moreover, the provision of these documents is expressly made in reliance upon the Government's representations, in its letter of September 10, 2010, that (i) "***the Government will maintain the confidentiality of the MT documents*** and related information and will not provide the MT documents and related information to non-

9

governmental third parties except as may be required by law or court order"; (ii) "***the Government will return the MT documents*** to you and your client as soon as we determine that we no longer need them"; (iii) "to the extent attorney work product or communications protected by the attorney client privilege are shared with the Government ... Mr. Toberoff is sharing them as a selective and limited disclosure in reliance on the Government's agreement that, in recognition of his objective to preserve any and all applicable privileges, the Government will keep them confidential and not disclose them to any non-governmental third parties (except as may be required by law or court order)"; and (iv) "nothing in Mr. Toberoff's disclosure of the MT documents and related information is intended to waive any applicable privilege or protection available under law."

***Any privileged documents being produced to the Government pursuant to the subpoena are also subject to a common interest/joint prosecutorial privilege.*** *See Sedlacek v. Morgan Whitney Trading Group*, 795 F. Supp. 329, 330 (C.D. Cal. 1992) (communications between civil litigants and government investigating similar wrongdoing subject to joint prosecution/common interest privilege); *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996) (same). The privilege is particularly applicable here given Mr. Toberoff and the Government's common interest in investigating the wrong committed against Mr. Toberoff and his law firm through the theft of these documents and creation of the Timeline.

Ex. 10, Ex. C (emphasis added). Based on the above, both Defendants and the

Government agreed that the documents were subject to the USAO's joint assertion

of the "common interest privilege," that the USAO "was willing to be governed by

those conditions [in Mr. Kendall's September 17 letter] in accepting the

documents," and that the documents were being produced subject to an express

agreement to maintain confidentiality and privilege. Ex. 10, Ex. C; Ex. 21, ¶ 7.

The Stolen Privileged Documents were thereupon produced in response to a Grand

Jury subpoena to enable the USAO to conduct its investigation.

**D.**     **DC's Motion To Compel And The May 25 Order**

On April 4, 2011, DC moved to compel the production of the Stolen

Privileged Documents, based on a theory that privilege had been waived by such

production.  Ex. 9.  On May 25, 2011, the Magistrate Judge acknowledged "the

absence of controlling authority from the Ninth Circuit," that "the cases [on which

DC relied, dealing with *the targets* of an investigation] do not deal [as here] with

victims of crime," and that the result of such a broad waiver doctrine may well be

that "the perpetrator goes free," but nonetheless granted DC's motion, finding that

there was "no important distinction" between a victim's interest in prosecuting

crime, shared by the public and government, and an alleged criminal's interest in

avoiding prosecution.  Ex. 24 at 3.  The May 25 Order thus held that "Defendants

waived the privileges by producing the documents to a third party, the United

States, in response to a grand jury subpoena."  *Id.* at 2-3.  Recognizing the

importance of this issue of first impression, the Magistrate Judge expressly stayed

his ruling "until all review is exhausted," "to allow Defendants to seek review."

*Id.* at 4.

On June 7, 2011, Defendants sought review of the May 25 Order before the

District Court.  Ex. 25.  On June 14, 2011, the District Court, perhaps appreciating

that this matter would ultimately be resolved by this Court, summarily denied

Defendants' motion by stamping "DENIED" on their proposed order. Exs. 28, 33. There was no hearing on the motion, nor any written minute order or opinion stating the District Court's reasons for its ruling.

Following the District Court's ruling, DC sought to persuade the Magistrate Judge to modify the May 25 Order's stay to require Defendants to produce the Stolen Privileged Documents before this Court could review the important question presented. Exs. 30. On June 27, 2011, in response to DC's motion, the Magistrate Judge issued an order (Ex. 32) underscoring the basis for writ review:

> The Ninth Circuit …. has not weighed these considerations in a context like that presented here. While the Court is satisfied with its analysis, the matter is not clear cut, and the consequences of a wrong decision are significant. It may be true that an erroneous releasing of privileged documents can be repaired through an appellate reversal, as Plaintiff argues, but the privilege nevertheless in that case will not have been preserved, and the confidence which clients reposed in their attorneys will have been undermined. This is not a situation the Court takes lightly …. It is for that reason that the Court stayed its ruling.

In light of the importance of this issue and the irreparable harm that would otherwise result, the stay remains in effect while this Court addresses the writ.

## IV.  ARGUMENT

### A.  A Writ Of Mandamus Should Issue, As The May 25 Order Was Erroneous And Is Plainly An Appropriate Matter for Writ Review

As recognized by the Magistrate Judge, the May 25 Order is a paradigmatic ruling for which writ review is appropriate. It is a matter of first impression, dealing with a significant privilege, and cannot be corrected on an appeal from a

86356.1

12

Case 2:10-cv-03633-ODW-RZ   Document 298-6   Filed 07/18/11   Page 24 of 43   Page
ID #:17779
Case 3:07-cv-01644   06/30/2011   Page 23 of 42   ID #:7808736   Sumary of 4

final judgment.  Writ review will allow this Court to provide guidance with respect

to important and recurring issues of law within this Circuit.

Mandamus review of district court rulings is available under the factors

identified in *Bauman v. United States District Court*:

> (1) The party seeking the writ has no other adequate means, such as a direct
> appeal, to attain the relief he or she desires; … (2) [t]he petitioner will be
> damaged or prejudiced in a way not correctable on appeal (this guideline is
> closely related to the first) … (3) [t]he district court's order is clearly
> erroneous as a matter of law; … (4) [t]he district court's order is an oft-
> repeated error, or manifests a persistent disregard of the federal rules; …
> [and] (5) [t]he district court's order raises new and important problems, or
> issues of law of first impression.

557 F.2d 650, 654-55 (9th Cir. 1977).  These five factors are non-exclusive, as

each determination of whether to grant review on a petition requires a balancing of

these factors, and not all five factors need be satisfied to justify mandamus.  *Id.* at

655.  *See Ellis v. United States District Court*, 356 F.3d 1198, 1210 (9th Cir. 2004)

(writ petition granted where three of five *Bauman* factors were present); *Medhekar

v. United States District Court*, 99 F.3d 325, 327 (9th Cir. 1996) (same).

Mandamus review is particularly appropriate where a district court's order

implicates important privilege issues.  *See Perry v. Schwarzenegger*, 591 F.3d

1147, 1157 (9th Cir. 2010); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir.

2010).  Such writs are regularly granted to provide guidance to district courts on

important recurring issues, especially on "particularly important questions of first

impression, [and] especially when called upon to define the scope of an important

privilege." *Perry,* 591 F.3d at 1157. *See also Hernandez,* 604 F.3d at 1101 (granting petition for writ of mandamus where District Court clearly erred in finding a "blanket waiver of the attorney-client and work product privileges"); *Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1109 (9th Cir. 2005) (granting writ based upon "fundamental importance of the attorney-client privilege to our adversarial system of justice"); *In re Anonymous Online Speakers*, 09-71265, 2011 WL 61635 (9th Cir. Jan. 7, 2011) (granting writ related to defining scope of attorney-client privilege); *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486 (9th Cir. 1989) (same); Christopher A. Goelz and Meredith J. Watts, CALIFORNIA PRACTICE GUIDE: FEDERAL 9TH CIRCUIT CIVIL APPELLATE PRACTICE, Ch. 13-C ("The most common use of the writ in the discovery context is to protect privileged information. Courts have long recognized that a party can suffer irreparable harm if erroneously required to disclose privileged information (*i.e.*, it is impossible to 'unring the bell').").

 Here, a writ of mandamus should be granted under the *Bauman* factors. The orders establish a new and erroneous doctrine whereby the victims of a theft of privileged material cannot provide such material to law enforcement, even if it is necessary for a criminal investigation and provided pursuant to process and a common interest/confidentiality agreement, without waiver of privilege.

 The result harms the victims of privacy crimes and chills the administration

of justice.  At the same time, it favors criminals and those like DC that regrettably

seek to exploit the lawless acts of others for their own financial gain.  No policy

justifies this result, and no principle of law compels it.  The writ should be granted

as explained in more detail below.

### 1.    Defendants Have No Other Means To Challenge The Order

The first *Bauman* factor is easily satisfied, as the May 25 Order is a

discovery order and it is well-established that "[a] discovery order … is

interlocutory and non-appealable."  *Perry*, 591 F.3d at 1157 (quoting *City of Las*

*Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984)); *see also Admiral Ins. Co.,*

881 F.2d at 1490 (mandamus only method available for review of an order adverse

to the attorney-client privilege).

### 2.    Absent Mandamus Relief, Defendants Will Be Damaged In A Way That Cannot Be Corrected On Appeal

The second *Bauman* factor is also satisfied.  In *Admiral Insurance Company*,

the Ninth Circuit found that "an appeal after disclosure of the privileged

communication is an inadequate remedy" for the "irreparable harm a party likely

will suffer if erroneously required to disclose privileged materials or

communications."  881 F.2d at 1491.  When the Supreme Court recently affirmed

that orders that find privilege waivers are not immediately appealable collateral

orders, it also expressly approved of other "discretionary review mechanisms,"

including mandamus, "for promptly correcting serious errors," especially in

86356.1

15

"particularly injurious or novel privilege ruling[s]." *Mohawk Indus. v. Carpenter*, 130 S. Ct. 599, 607-608 (2009). After *Mohawk,* the Ninth Circuit has emphasized that writ review is appropriate where "discovery orders rais[e] particularly important questions of first impression, especially … [as to] the scope of an important privilege" (*Perry*, 591 F.3d at 1157), or where a court finds a broad "waiver of the attorney-client and work product privileges." *Hernandez*, 604 F.3d at 1101.

Here, the trial court's finding of a waiver was both novel and particularly injurious. The Stolen Privileged Documents include numerous clearly privileged attorney-client communications directly related to this action. Defendants would obviously suffer irreparable injury if such privileged documents were disclosed and review delayed until an appeal of final judgment, as the bell could not be un-rung, nor the disclosures purged from the minds of DC and its counsel. Given the large number and scope of privileged documents at issue, this wrongful disclosure would taint the entire process. Such irreparable harm cannot be corrected absent mandamus relief. *See Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160 (9th Cir. 2011) (unsealing confidential information satisfied second factor because it would make such information "permanently public in a way that is not correctable on later appeal"); *SEC v. Rajaratnam*, 622 F.3d 159, 170 (2d Cir. 2010) ("Once the 'cat is out of the bag,' the right against disclosure cannot later be vindicated."); *see*

16

*also* cases cited *supra* at pp. 14-15 on writ review of privilege determinations.

### 3.      The Orders Below Require Correction

The Third through Fifth *Bauman* factors focus on the importance, persistence, and clarity of errors in a district court's orders.  These factors favor granting the writ.  The May 25 Order, and the district court's affirmation of that order, clearly erred on an important issue of first impression.

### a.      The May 25 Order Erred In Finding "No Important Distinction" Between Disclosure To Law Enforcement Authorities By An Alleged Criminal And Disclosure By The Victim Of A Privacy Crime

The May 25 Order was based exclusively on out-of-circuit cases finding waiver where the target of a criminal investigation "selectively" discloses privileged material to the government.  Ex. 24 at 3.  The Magistrate Judge acknowledged that "[i]t is true, as Defendants state, that the cases [finding waiver] do not deal with victims of crime," but dismissed this distinction as unimportant. *Id.* ("[T]he Court can see no important distinction that applies to victims.").  However, the differences between the victim of a crime, who is seeking justice, and the target of a criminal investigation, who is seeking to avoid punishment, are striking, especially where the crime *itself* involves the theft of privileged information.  Criminals who steal the privileged or confidential records of attorneys, financial institutions, medical providers, national security agencies, judges, large corporations or law firms, or who engage in industrial espionage,

necessarily cause an involuntary disclosure of such privileged or confidential
material.  Indeed, invading privilege is the objective of such crimes.  When the
victim reports the crime and cooperates with law enforcement, he does so to
vindicate his privilege and to deter such crimes – a purpose shared by law
enforcement.

Just as with confidential health records, judicial records, financial records,
and national security materials, the privacy interests protected by the attorney-
client privilege are compelling.  "The attorney-client privilege is one of the oldest
recognized privileges for confidential communications ….  The privilege is
intended to encourage full and frank communication between attorneys and their
clients and thereby promote broader public interests in the observance of law and
the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399,
403 (1998) (citations omitted).  *See United States v. Chen*, 99 F.3d 1495, 1500 (9th
Cir. 1996) (observing that "counseling clients" is a "valuable social service [that]
cannot be performed effectively if clients are scared to tell their lawyers what they
are doing"); *People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems,
Inc.*, 20 Cal. 4th 1135, 1146 (1999) ("Protecting the confidentiality of
communications between attorney and client is fundamental to our legal system.").

Here, there is no dispute that the theft and its disclosure of numerous
privileged documents was involuntary.  It is also undisputed that the thief's

86356.1

18

objective was to disclose Defendants' privileged documents to their litigation adversaries, DC and Warner Bros., in the midst of a high-profile lawsuit. The USAO *required* that it review the Stolen Privileged Documents in order to assess the severity of that crime and to properly investigate it. Ex. 21, ¶ 4 (the USAO stated that it "need[ed] to review the privileged [S]tolen [D]ocuments as part of any investigation and/or prosecution"). The May 25 Order means that Defendants' production of the Stolen Privileged Documents to law enforcement, as required to investigate the theft, waives privilege and results in the documents' involuntary disclosure to DC – the very objective of the thief. That cannot be the right result.

The Magistrate Judge recognized that pursuant to his Order, either the privilege is maintained and the "perpetrator goes free" or the privilege is waived and the object of the crime is accomplished:

> The salutary policy of promoting the enforcement of the criminal law applies equally to situations where the waiving party is the victim of a crime. Sometimes hard choices need to be made, and whether secrets are disclosed or a perpetrator goes free can be one of those hard choices.

Ex. 24 at 3. The Hobson's Choice imposed by the Order has far-reaching implications. The victims of any crimes involving the theft of privileged material and third parties wishing to assist a criminal investigation are forced between a rock and a hard place. Either the privilege would be maintained, and the crime would go unsolved and unpunished, or the privilege would be waived and the object of the crime accomplished. Neither the victim of a crime nor the

86356.1

19

government should be placed in this inequitable situation.

The cases avoid this untenable result.  In *Jobin v. Bank of Boulder (In re M & L Bus. Mach. Co.)*, 161 B.R. 689, 691-92 (D. Colo. 1993), for example, a bank provided attorney letters and memoranda to assist the USAO in its criminal investigation of a client of the bank, "subject to the requirement that any information provided … be treated as privileged, subject to protection under Fed. R. Crim. P. 16(a)(2) and [that it] not be disseminated except as required under federal law or the rules of criminal procedure."  Thereafter, the bank asserted privilege, and the Court found that there was no waiver of privilege because the bank took "substantial steps to ensure that its disclosures to the U.S. Attorney would be kept confidential."  *Id.* at 696.  Defendants acted similarly:  they provided documents to assist in a criminal investigation and took reasonable steps to ensure that the documents would be kept confidential, and that their cooperation was not to be deemed a waiver of privilege.  *See also Schnell v. Schnall*, 550 F. Supp. 650 (S.D.N.Y. 1982) (where client testified in SEC proceeding to privileged attorney/client communications to assist the SEC in a prosecution, that "does not constitute a waiver of the attorney-client privilege" in subsequent litigation).

**b.    The May 25 Order Misapplied Out-Of-Circuit Law To Reach Its Erroneous Conclusion**

In reaching its counter-intuitive, anti-law enforcement result, the May 25 Order relied upon what it called the "majority perspective" that disclosure to the

Case 2:10-cv-03633-ODW-RZ   Document 298-6   Filed 07/18/11   Page 32 of 43   Page
ID #:17787
Case: 3:07-... 06/30/20... Page 39 of 42   ID: 7808736   Entry: of 43

government waives privilege, based solely on inapplicable cases where the ***targets***

***of a criminal investigation***, not the victims of a crime, disclose privileged

information, typically to avoid prosecution or to plea bargain, as the Order

acknowledged.  *See* Ex. 24 at 3 ("It is true, as Defendants state, that the cases

[finding waiver] do not deal with victims of crime.").

     However, not only has the "majority perspective" never been adopted by

this Court, but it manifestly does not apply to the situation here.  In the cases relied

upon by the May 25 Order, the relationship between the government and the target

of its investigation was adversarial, and it was the target's voluntary attempt to use

the privileged documents as both a sword (to challenge the investigation) and a

shield (as privileged in subsequent litigation) that created a waiver.  *See Hewlett-*

*Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310-11 (N.D. Cal. 1987)

(waiver applies to situations where privilege holders use "as a sword or shield,

some of the information contained in the subject communication but [] deny their

opponents access to the remainder ....  It is this 'truth-garbling' risk that justifies

the finding of waiver, not the mere fact of disclosure").

     For example, in *United States v. Massachusetts Institute of Technology*, 129

F.3d 681, 683-86 (1st Cir. 1997), on which DC and the Magistrate Judge relied, a

defense contractor provided privileged information, without any agreement to

maintain confidentiality and privilege, to an auditing agency while it was being

86356.1

21

audited.  Because the contractor was under investigation, the *MIT* Court recognized

that the relationship was "easily characterized as adversarial," and found a waiver

of privilege on that basis.  *Id.* at 686.

Similarly, in *Westinghouse Electric Corporation v. The Republic of the*

*Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991), also relied on by DC,

Westinghouse waived the attorney-client privilege by providing privileged

materials to the SEC and the Department of Justice while those agencies were

investigating allegations of bribery by the company, and without any express

agreement concerning waiver.  *Westinghouse* expressly limited itself to "whether a

party that discloses information protected by the attorney-client privilege and the

work-product doctrine … [to] a government agency ***that is investigating it*** waives

the privilege …."  *Id.* at 1417 (emphasis added).[2]

Such cases are clearly distinguishable from the situation here, where the

---

[2]  *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293
F.3d 289, 291, 302 (6th Cir. 2002) (health care company subject to fraud
investigation waived privilege when it disclosed privileged materials to the Justice
Department to negotiate settlement of investigation); *Permian Corp. v. United
States*, 665 F.2d 1214, 1226 (D.C. Cir. 1981) (companies subject to securities fraud
investigation waived privilege when they disclosed documents to the SEC during
its investigation); *In re Qwest Comms. Int'l*, 450 F.3d 1179, 1181 (10th Cir. 2006)
(target waived privilege by disclosing protected materials during investigations by
the SEC and the USAO); *United States v. Reyes*, 239 F.R.D. 591, 596 (N.D. Cal.
2006) (waiver of privilege where company disclosed information to the SEC and
the DOJ while under scrutiny); *McKesson HBOC, Inc. v. Superior Court*, 115 Cal.
App. 4th 1229, 1223, 1234 (2004) (company waived privilege by providing
documents during SEC and USAO investigation of company).

Case 2:10-cv-03633-ODW-RZ   Document 298-6   Filed 07/18/11   Page 34 of 43   Page
ID #:17789
Case: 3:06-cv-03844   06/30/20??   Document: 39-6   42   Filed 07/08/16   Summary of 4

crime itself involved the theft and disclosure of privileged material, and the sharing
of such material with the government, within the confines of its joint interest and
an express confidentiality agreement, was solely for the purpose of investigating
and prosecuting that wrongful disclosure.

### c. Privilege Is Preserved When Disclosures Are Made Pursuant To An Express Agreement To Maintain Privilege

The May 25 Order also ignored clear authority that protects privileged
material disclosed to the government pursuant to a confidentiality agreement and
Grand Jury subpoena.  Defendants produced the Stolen Privileged Documents only
under compulsion of a Grand Jury subpoena, and an express agreement by the
USAO to preserve privilege by holding the documents as strictly confidential.  Ex.
10, Ex. C.

Where privileged materials are produced pursuant to an express agreement
to protect the privilege, the Second Circuit, and many other courts, have long
found no waiver of privilege.  *In re Steinhardt Partners L.P.*, 9 F.3d at 236, held
that "establishing a rigid [waiver] rule" would chill cooperation with the
government and expressly contemplated that privilege would not be waived if there
was an "explicit agreement that the [government] will maintain the confidentiality
of the disclosed materials." *Teachers Insurance and Annuity Association of
America v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 644-45 (S.D.N.Y.
1981) recognized that there would be no waiver of privilege if, as in this case, "the

EXHIBIT D
112

right to assert the privilege in subsequent litigation is specifically reserved at the time the disclosure is made" pursuant to a "stipulation or other express reservation." *Teachers Insurance* stated that such an express agreement struck an appropriate policy balance, as it would not "substantially curtail the investigatory ability of the" government, but "would make it clear that … the disclosing party has made some effort to preserve the privacy of the privileged communication, rather than having engaged in abuse of the privilege by first making a knowing decision to waive the rule's protection and then seeking to retract that decision in connection with subsequent litigation." *See also Police & Fire Ret. Sys. v. Safenet, Inc.*, 2010 U.S. Dist. LEXIS 23196, at *7 (S.D.N.Y. Mar. 11, 2010) (rejecting waiver based on disclosure to the SEC pursuant to a confidentiality agreement, because "[t]here is a strong public interest in encouraging disclosure and cooperation with law enforcement agencies; [and] violating a cooperating party's confidentiality expectations jeopardizes this public interest"); *Jobin,* 161 B.R. at 691, 696 (no waiver of privilege where disclosures were made "subject to the requirement that any information provided under the Letter Agreement be treated as privileged" as maintaining privilege under such circumstances properly "balance[s] the policy goal of encouraging cooperation with the government … with the strict requirement of confidentiality").[3]

---

[3] *See also In re Leslie Fay Companies, Inc. Sec. Litig.*, 161 F.R.D. 274, 284

Here, Defendants, faced with an involuntary disclosure perpetrated by the

thief, took every reasonable step to preserve their privilege:  they produced

documents solely in response to a Grand Jury subpoena, subject to Fed. R. Crim. P.

6(e)(2)'s Grand Jury secrecy protections, and pursuant to an express agreement

with the USAO to protect and maintain privilege.  *See In re Grand Jury*

*Proceedings*, 851 F.2d 860, 866 (6th Cir. 1988) (confidential documents produced

to grand jury cannot be disclosed pursuant to Fed. R. Crim. P. 6(e), and it would

violate such secrecy to permit a party "pursuing a civil action [to ask] a court for

all documents obtained pursuant to subpoenas issued by a grand jury"); *United*

*States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (privilege not waived by

production of documents to grand jury), *cert. denied*, 498 U.S. 821.[4]

---

(S.D.N.Y. 1995) (disclosures "pursuant to confidentiality agreements intended to
preserve any privilege applicable to the disclosed documents" did not result in a
waiver of privilege, because such disclosures were intended "to facilitate
disclosure and avoid unnecessary duplication" with court-appointed investigator);
*SEC v. Amster & Co.*, 126 F.R.D. 28, 29-30 (S.D.N.Y. 1989) (pursuant to the
SEC's agreement to maintain confidentiality of disclosed documents, privilege not
waived as to subsequent litigants); *Maruzen Co. v. HSBC USA, Inc.*, 2002 U.S.
Dist. LEXIS 13288, at *2 (S.D.N.Y. 2002) (maintaining privilege based on
"explicit confidentiality agreements with the authorities").

[4] *See Fossyl v. Watson*, 2006 U.S. Dist. LEXIS 98406, at *7-8 (S.D. Ohio Sept. 5,
2006) (no waiver of privilege on documents produced pursuant to Grand Jury
subpoena where the party "took reasonable steps" to protect the privilege); *Picard*
*Chemical, Inc. v. Perrigo Co.*, 951 F. Supp. 679, 689 (W.D. Mich. 1996)
(maintaining privilege where a party takes "reasonable steps to protect the
privilege"); *Regents of Univ. of Cal. v. Superior Court*, 165 Cal. App. 4th 672
(2008) ("[N]o waiver of the privilege will occur if the holder of the privilege has

86356.1

The May 25 Order implies that Defendants should have objected to the

Grand Jury subpoena, and forced the government to move to compel production of

the Stolen Privileged Documents.  However, in *none* of the above-cited cases did a

court require that a party object to the government's subpoena or require it to make

a motion to compel.  The issuance of a subpoena and an express agreement to

maintain the documents as confidential was sufficient to preserve the attorney-

client privilege.  Requiring a motion to compel places Defendants in an intolerable

Catch-22.  If the court denied such motion based on privilege, law enforcement

would be prevented from prosecuting the crime.  If the court granted the motion, it

would have had to conclude that the documents were not privileged, mooting the

investigation.[5]  There is no rationale for this untenable procedure.

### d.   The District Court Failed To Recognize the Common Interest Between Defendants and the Government

The May 25 Order also erred in summarily finding that Defendants and the

---

taken reasonable steps under the circumstances to prevent disclosure. The law does not require that the holder of the privilege take 'strenuous or Herculean efforts' to resist disclosure.").

[5] Without briefing or notice, DC cited Federal Rule of Evidence 502 at the hearing on its motion, and argued that the rule purportedly requires a court order to preserve confidentiality.  In fact, Rule 502 does not address, or affect, the issue here. The drafters of Rule 502 were explicit that they were leaving the law of "selective waiver" unaffected by the Rule.  *See* Letter from the Committee on Rules and Practice and Procedure of the Judicial Conference of the United States to the Committee on the Judiciary of the U.S. Senate and House of Representatives dated Sept. 26, 2007; Minutes of Advisory Committee on Evidence Rules Meeting [6], at 15 (April 12-13, 2007).  Counsel for DC admitted that Rule 502 did not change the law of selective waiver. Ex. 20 at 6:22-7:2.

Government could not share a protectable common interest because Mr. Toberoff
and his clients were victims of a crime, and not themselves prosecutors, when
courts find and maintain a common interest privilege in such circumstances.  Ex.
24 at 3.  The Order ignored well-recognized law that private entities and the
government "share a common interest in developing legal theories and analyzing
information" in enforcement actions or where the private party is the victim of the
conduct under investigation.  *In re Steinhardt Partners L.P.*, 9 F.3d at 236.  The
USAO accepted such "a common interest/joint prosecutorial privilege" based on
"Mr. Toberoff and the government's common interest in investigating the wrong,"
affirming that it "was willing to be governed by those conditions [in Mr. Kendall's
September 17 letter] in accepting the documents."  Ex. 10, Ex. C; Ex. 21, ¶ 7.

Numerous cases have found that when the government and a private party
have a joint interest in the prosecution of a crime, the disclosure of privileged
material to the government is subject to a joint prosecution privilege and there is
no waiver of the attorney-client privilege.  Thus, in *Sedlacek v. Morgan Whitney
Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992), the court held that
sharing privileged materials between the plaintiff and the Federal Trade
Commission did not waive privilege, because both were investigating the same
alleged fraud.  The *Sedlacek* Court expressly held that the joint prosecution
privilege is applicable "'whether the litigation or potential litigation is civil or

EXHIBIT D
116

criminal,'" or "'ongoing,'" and "that the privilege is not limited to co-parties." *Id.* at 331. *See also In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) (extending common interest privilege to non-parties and "potential co-parties to prospective litigation").[6] Numerous cases have similarly found that where a private party and the government are involved in closely related litigation, communications between them are subject to a common interest privilege.[7]

A joint-prosecution privilege exists where "(1) the communications were made in the course of a joint effort, (2) the statements were designed to further the joint effort, and (3) the privilege has not been waived." *Burroughs*, 167 F.R.D. at 686 (citing *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d

---

[6] *See Anderson v. Torrington Company*, 120 F.R.D. 82, 86 (N.D. Ind. 1987) (communications between non-party union and plaintiffs were subject to a "common interest" privilege because plaintiffs were union members and union played active role); *In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D. Tex. 1981) (disclosures "by an attorney to actual or potential co-defendants" is subject to a common interest privilege).

[7] *See Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) (sharing of work product between government and counsel for *qui tam* relator protected by joint prosecution privilege); *United States v. Gumbaytay*, 2011 U.S. Dist. LEXIS 47142, at *12 (M.D. Ala. Jan. 19, 2011) (recognizing "that the common interest rule protects communications between a governmental agency and persons on whose behalf the governmental agency brings suit"); *United States v. Cisco Sys.*, 2011 U.S. Dist. LEXIS 30902, at *4 (E.D. Ark. Mar. 15, 2011) (recognizing a "Common Interest privilege" between the government and *qui tam* relator); *E.E.O.C. v. Chemtech Intern. Corp.*, 1995 U.S. Dist. LEXIS 21877, at *1 (S.D. Tex. 1995) ("[B]ecause the EEOC and the private citizen have many identical interests, the attorney-client privilege is essentially a joint prosecution privilege that extends to communications between" them).

20, 28 (1st Cir. 1989)). Here, all three elements are easily met. The provision of the Stolen Privileged Documents was made in the course of the government's ongoing criminal investigation of the theft of privileged legal files for prosecution and Mr. Toberoff's contemplated legal action against the perpetrator, was designed to further that common interest, and were provided to the government subject to an express agreement to preserve confidentiality and privilege.

### e. The District Court's Order Raises Important Issues of First Impression In The Ninth Circuit, As This Court Has Never Adopted DC's Waiver Theory In Any Context

Finally, the issuance of a writ will clarify critical issues as to the scope of the waiver doctrine within the Ninth Circuit. While the May 25 Order stated there was an "absence of controlling authority from the Ninth Circuit" (Ex. 24 at 3), that absence goes beyond the fact that this Court (like other courts) has never ruled that disclosure to law enforcement by the victim of a crime waives privilege. This Court has twice declined to determine when disclosure to law enforcement by even the *target* of investigation (such as a corporation under investigation by the SEC) constitutes a waiver. *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker v. Woodford,* 331 F.3d 715, 720 n.5 (9th Cir. 2003). Other Circuits have split as to whether disclosure to law enforcement even by the target of an investigation waives privilege, and as to whether privilege may be preserved by a confidentiality agreement with a government agency. *Compare Diversified*

*Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) to *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991).  Courts have rejected what the May 25 Order miscategorized as the "majority perspective" as to disclosure by the target of an investigation, because such would also have the effect of deterring cooperation with government investigations.  *See Diversified,* 572 F.2d at 611; *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 284 (8th Cir. 1984) (waiving privilege on a report produced to the SEC "could deter such inquiries, which should not be chilled as a matter of policy").

Such policy considerations apply with even greater force here, where privileged materials were provided to the Government by the victims of a theft and criminal disclosure of such material.  This Circuit should make clear that in such circumstances victims may cooperate with the Government in criminal or civil investigations without waiving critical privileges and privacy protections.

## V.     CONCLUSION

For the foregoing reasons, a writ of mandamus should be issued.  This Court should direct the District Court to reverse the May 25 Order's waiver of privilege.

Dated: June 30, 2011                    /s Marc Toberoff_____
                                         Marc Toberoff
                                         TOBEROFF & ASSOCIATES, P.C.

                                         Attorneys for Defendants-Petitioners,
                                         Mark Warren Peary, *et al.*

86356.1                              30

EXHIBIT D
119

Dated: June 30, 2011      /s/ Richard Kendall
                        Richard Kendall
                        KENDALL BRILL & KLIEGER LLP

                        Attorneys for Defendants-Petitioners,
                        Pacific Pictures Corporation, *et al.*

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 21(d)

Pursuant to Federal Rule of Appellate Procedure 21(d), I certify that

Defendants-Petitioners' brief is proportionately spaced, has a typeface of 14 points

or more and does not exceed 30 pages.


Dated: June 30, 2011          /s Marc Toberoff_____
                              Marc Toberoff
                              TOBEROFF & ASSOCIATES, P.C.

                              Attorneys for Defendants-Petitioners,
                              Mark Warren Peary, *et al.*

Dated: June 30, 2011          /s/ Richard Kendall_____
                              Richard Kendall
                              KENDALL BRILL & KLIEGER LLP

                              Attorneys for Defendants-Petitioners,
                               Pacific Pictures Corporation, *et al.*

86356.1

EXHIBIT D
121