# EXHIBIT B

after 2000.

Q. That she would work on a typewriter?

A. Yes. I don't for sure.

Q. Did you retrieve the typewriter when she passed away?

A. Yes.

Q. You still have it?

A. Yes.

Q. Where is it?

A. I put it with her other furniture that I currently have just put in storage until I figure out what to do with it.

Q. What's the storage facility?

A. It's called public storage.

Q. The one -- is there one in Marina nearby?

A. Yes.

Q. The Superman papers and materials that you collected from your mother's home?

A. Um-hum.

Q. Did you put those in public storage?

A. Well, I brought a lot of them home. I'm currently trying to go through things. So at the moment my place is almost unlivable because I have, you know, my stuff and her stuff and, you know, it's unbelievable.

Q. And again I am only focused on Superman materials,

63

but between your Superman papers, files, and materials, and your mother's?

A. Yes.

Q. Can you somehow in your own way approximate the volume, let's say boxes? Have you put it all on the bankers boxes, how much boxes would there be? Ten boxes?

A. I couldn't guess at that because there with a lot of things that -- there are many difference things in anyone given box. These things that I haven't gone through yet. So there could be a box that has one paper relating to Superman or there could be many papers.

Q. Like for example the letters that you exchanged with Michael Siegle that you said are in your home, where in your home are those letters?

    MR. TOBEROFF: Lacks foundation.

    THE WITNESS: Well, anything that I had, you know, is also mixed in with papers. I mean I have -- I have various boxes that relate to the case. I have other boxes that relate to my divorce. I have got a lot of different things.

BY MR. PETROCELLI:

Q. Have you since this lawsuit was filed in May, 2010, have you gone and searched for and given to someone else your mike will Siegle correspondence?

A. Well, whenever I find anything that I think relates to the case, you turn it over to Mr. Toberoff.

64

EXHIBIT B
7

Case 2:10-cv-03633-ODW-RZ  Document 301-3  Filed 07/25/11  Page 4 of 7  Page ID #:17824

Q. Since may, 2010 have you turned over to Mr. Toberoff any of your correspondence with Michael Siegle that was in your home?

A. Probably.

Q. Okay.

A. Oh, excuse me. May I say something about 2 you thank you 10?

Q. You may.

A. I believe that you -- I believe that you asked me earlier about documents from 2010, around that time. We were talking about different agreements and we were talking about -- in connection with when this lawsuit had been filed.

Q. Proceed.

A. Okay. I believe that I misstated something. I -- after this lawsuit was filed, Mr. Toberoff did send me another -- what was it called? -- conflict, another, you know, delineating, you know, potential conflicts, a document regarding conflicts and I don't -- on he I don't believe I mentioned that earlier. You were asking me different ones for different dates.

Q. And your recollection about that was prompted as a result of Mr. Toberoff mentioning it to you during a break?

A. Well, I went to the bathroom. It was cooler. I was --

    MR. TOBEROFF: You can -- you can -- you can -- you

65

EXHIBIT B
8

invasion of her privacy but the details of that we will have to work out. Okay? Because I don't know exactly what that means. We are not going to negotiation a protective right now on the record.

    MR. TOBEROFF: But we have talked at times about having a protective order in this case.

    MR. PETROCELLI: Okay.

    MR. TOBEROFF: And I'm sure your client is going to want a protective order when it comes to discovery of its materials and that day is coming that we -- this information should be subject to that protective order.

    MR. PETROCELLI: I understand you would like to designate this as confidential. Okay.

BY MR. PETROCELLI:

    Q. What is George's e-mail address?

    A. I don't have it off the top of my head.

    Q. Did your mother have an e-mail address?

    A. No.

    Q. So before you remembered this document we were talking about documents in general, and I want to go back to that. Okay?

    A. Okay.

    Q. You said you -- when you gave Mr. Toberoff documents related to this case?

    A. Yes.

Q. Did you keep copies for yourself?

A. No. When I gave them to him, I gave them to him.

Q. When your mom passed and you took some -- you took all of her files and papers, did you turn any of that material over to Mr. Toberoff?

A. Yes. I found something that I --

Q. What did you find?

A. I found a file that she had about a lawyer that we had been talking about potentially hiring.

Q. Is that Jerry Spence?

A. Jerry Spence, yes.

Q. And you just turned that over to him when?

A. Just a couple of days ago.

Q. Okay. So what caused you a couple of days ago to come across that file? Were you looking for materials related to this case?

A. No. I was going -- going through a becomes of her papers and it happened to be in there.

Q. Has anyone other than you since the filing of this lawsuit in May, 2010, has anyone other than you searched the papers in your home related to this case?

    MR. TOBEROFF: At her home?

    MR. PETROCELLI: Yes.

    THE WITNESS: No.

BY MR. PETROCELLI:

70

    Q. For example, did Mr. Toberoff come to your house and search through your files or a member of his law firm?

    A. No.

    Q. Okay. Since the filing of this case have you provided Mr. Toberoff with any materials other than that Jerry Spence file you just found?

    A. Yes.

    Q. What did you give?

    A. Papers relating to my divorce.

    Q. When was that?

    A. There was a document request from I believe your office and in response to that I produce those.

    Q. Anything other than the divorce file -- that's from your former husband Dennis Larson correct?

    A. Yes.

    Q. And the Jerry Spence file. Anything else since the filing of this lawsuit that you gave to Mr. Toberoff from your home?

    A. Since the filing of this lawsuit. I don't recall anything specific.

    Q. Okay. Now, why -- how was it that you came across the Jerry Spence file a couple of days ago?

    MR. TOBEROFF: Asked and answered. You can answer.

BY MR. PETROCELLI:

    Q. You were looking?