# EXHIBIT 37

**CERTIFIED COPY**

# In The Matter Of:

*DC COMICS*

*v.*

*PACIFIC PICTURES CORPORATION*

---

*PEARY, MARK WARREN - Vol. 1*

*June 29, 2011*

---

**MERRILL CORPORATION**
LegaLink, Inc.

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

EXHIBIT 37
1102

MARK WARREN PEARY - 6/29/2011

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CERTIFIED COPY**

DC COMICS,                          )
                                    )
            Plaintiff,              )   No. CV-10-3633 ODW (RZx)
                                    )
     VS.                            )
                                    )
PACIFIC PICTURES CORPORATION,)
IP WORLDWIDE, LLC, IPW, LLC, )
MARC TOBEROFF, an individual,)
Laura Siegel Larson, as       )
personal representative of    )
the ESTATE OF JOSEPH SHUSTER,)
JEAN ADELE PEAVY, an          )
individual, JOANNE SIEGEL,    )
an individual, LAURA SIEGEL   )
LARSON, an individual, and    )
DOES 1-10, inclusive,         )
                              )
            Defendants.       )
                              )
     _____  )

VIDEOTAPED DEPOSITION OF MARK WARREN PEARY

TAKEN ON

WEDNESDAY, JUNE 29, 2011

Reported by:  SHANDA GABRIEL

CSR No. 10094

Merrill   Corporation   -   Los Angeles
800-826-0277                         www.merrillcorp.com/law

EXHIBIT 37
1103

MARK WARREN PEARY - 6/29/2011

Page 2

1           Videotaped deposition of MARK WARREN PEARY,

2    taken on behalf of the Plaintiff, at 1999 Avenue of

3    the Stars, Los Angeles, California, commencing at

4    10:28 a.m., WEDNESDAY, JUNE 29, 2011, before SHANDA

5    GABRIEL, CSR No. 10094.

6

7    APPEARANCES:

8    FOR THE PLAINTIFF:

9           O'MELVENY & MYERS LLP

10          BY:  DANIEL M. PETROCELLI, ESQ.

11               MATTHEW T. KLINE, ESQ.

12               JASON TOKORO, ESQ.

13          1999 Avenue of the Stars

14          7th Floor

15          Los Angeles, California  90067-6035

16          (310) 553-6700

17

18   FOR THE DEFENDANTS:

19          TOBEROFF & ASSOCIATES

20          BY:  MARC TOBEROFF, ESQ.

21          2049 Century Park East

22          Suite 3630

23          Los Angeles, California  90067

24          (310) 246-3333

25   ALSO PRESENT:  FRITZ SPERBERG, VIDEOGRAPHER

EXHIBIT 37
1104

MARK WARREN PEARY - 6/29/2011

```
1                        I N D E X
2
3    WITNESS              EXAMINATION              PAGE
4    MARK WARREN PEARY    (BY MR. PETROCELLI)        9
5
6
7                     E X H I B I T S
8    NO.          PAGE       DESCRIPTION
9    Exhibit 1     35        First Amended Complaint
10   Exhibit 2    102        December 23, 1975
                             Agreement
11
     Exhibit 3    123        August 21, 1992
12                           handwritten letter to Paul
                             from Jean Shuster Peavy,
13                           with attachments
14   Exhibit 4    130        September 10, 1992
                             handwritten letter to Paul
15                           from Frank Shuster
16   Exhibit 5    134        DC Comics agreement dated
                             August 1, 1992 signed by
17                           Frank Shuster and Jean
                             Shuster Peavy on
18                           October 2, 1992
19   Exhibit 6    143        Letter dated October 2,
                             1992 to Paul Levitz from
20                           Frank Shuster
21   Exhibit 7    149        April 27, 1995 letter to
                             Paul Levitz from Jean
22                           Shuster Peavy
23   Exhibit 8    150        September 7, 1999 letter
                             to Paul Levitz from Jean
24                           Shuster Peavy
25
```

EXHIBIT 37
1105

MARK WARREN PEARY - 6/29/2011

```
1                   I N D E X  (CONTINUED)

2

3                      E X H I B I T S

4     NO.            PAGE        DESCRIPTION
```

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| Exhibit 9 | 165 | Document entitled "Notice of Termination of Transfer Covering Extended Renewal Term" |
| Exhibit 10 | 196 | Joint Venture Agreement |
| Exhibit 11 | 283 | Document entitled "Notice of Termination of Transfer Covering Extended Renewal Term, Superboy" |
| Exhibit 12 | 273 | Probate proceeding papers filed October 21, 2003 |
| Exhibit 13 | 286 | Pacific Pictures Corporation agreement dated October 27, 2003 signed by Mark Warren Peary and Jean A. Peavy on October 3, 2003 |
| Exhibit 14 | 298 | Document entitled "Notice of Termination of Transfer Covering Extended Copyright Renewal Term of Superman" |
| Exhibit 15 | 303 | 1940 Superboy script |
| Exhibit 16 | 304 | Partial Xerox copy of More Fun Comics issue No. 101 |
| Exhibit 17 | 307 | Document entitled "Renewal Registrations" |
| Exhibit 18 | 308 | Application for Registration of a Claim to Renewal Copyright |

EXHIBIT 37
1106

MARK WARREN PEARY - 6/29/2011

Page 5

1                          I N D E X (CONTINUED)

2

3                             E X H I B I T S

4      NO.                 PAGE        DESCRIPTION

5      Exhibit 19          310         Document entitled "Books"

6      Exhibit 20          330         September 10, 2004
                                       document to Warren and
7                                      Jean from Marc Toberoff,
                                       signed by Mark Warren
8                                      Peary and Jean A. Peavy

9      Exhibit 21          334         Document dated
                                       November 21, 2001 to
10                                     Warren and Jean re:
                                       Engagement for
11                                     Professional Services,
                                       signed by Mark Warren
12                                     Peary and Jean A. Peavy

13     Exhibit 22          345         Documents, first page
                                       headed Attachments for
14                                     Paramount - Part 1/2
                                       addressed to Daniel
15                                     Ferleger and others from
                                       Marc Toberoff
16
       Exhibit 23          350         Xerox copy of Vehicle Pass
17
       Exhibit 24          27          Document entitled "Dave
18                                     Sim's Glamourpuss
                                       Bulletins
19
       Exhibit 25          259         Document entitled
20                                     "Superman - Marc Toberoff
                                       Timeline"
21
       Exhibit 26          145         Document entitled "Last
22                                     Will and Testament of
                                       Joseph Shuster"
23

24

25

MARK WARREN PEARY - 6/29/2011

```
 1                    I N D E X  (CONTINUED)
 2
 3                UNANSWERED QUESTIONS
 4                     PAGE      LINE
                        42        23
 5                      44         9
                        50         2
 6                      66         9
                        66        22
 7                      67        13
                        69        13
 8                      69        20
                        70        15
 9                      70        22
                        71         5
10                      71        15
                        85        18
11                      88         7
                        93        22
12                      98        25
                       100        11
13                     163        16
                       175        11
14                     176        12
                       184        24
15                     200        13
                       203        15
16                     204        24
                       213         9
17                     214         3
                       221         1
18                     221         9
                       221        14
19                     222         7
                       222        16
20                     225        25
                       231         1
21                     231        15
                       237        19
22                     238        10
                       251        11
23                     252        17
                       252        24
24                     253         8
                       253        20
25                     253        25
```

EXHIBIT 37
1108

MARK WARREN PEARY - 6/29/2011

```
 1                    I N D E X (CONTINUED)

 2

 3               UNANSWERED QUESTIONS

 4                    PAGE        LINE
                      256          24
 5                    271          17
                      289          19
 6                    303           2
                      319          16
 7                    322          16
                      322          23
 8                    331          23
                      340          15
 9                    342          14
                      342          22
10                    343          13
                      344           1
11                    344           8
                      344          23
12                    345          13
                      349          19
13                    350          25
                      351          13
14                    351          17
                      352           3
15                    355          14
                      355          23
16                    356           9
                      356          23
17                    359           5

18

19

20

21

22

23

24

25
```

EXHIBIT 37
1109

MARK WARREN PEARY - 6/29/2011

Page 8

| | | |
|---|---|---|
| 1 | LOS ANGELES, CALIFORNIA; | |
| 2 | WEDNESDAY, JUNE 29, 2011 | |
| 3 | 10:28 A.M. | |
| 4 | | 09:10:32 |
| 5 | THE VIDEOGRAPHER:  Good morning.  This | 09:10:32 |
| 6 | marks the beginning of Volume I, Videotape Number 1 | 10:28:59 |
| 7 | in the deposition of Mark Warren Peary in the matter | 10:29:02 |
| 8 | entitled DC Comics versus Pacific Pictures | 10:29:07 |
| 9 | Corporation, et al., filed in the United States | 10:29:11 |
| 10 | District Court for the Central District of | 10:29:14 |
| 11 | California.  This is case number 1036330 DW RZX. | 10:29:16 |
| 12 | Today's date is June 29, 2011 and the time | 10:29:23 |
| 13 | on the video monitor is 10:28 a.m. | 10:29:26 |
| 14 | The video operator today is Fritz Sperberg, | 10:29:30 |
| 15 | a notary public, contracted by Merrill Legal | 10:29:33 |
| 16 | Solutions at 20750 Ventura Boulevard, Woodland | 10:29:34 |
| 17 | Hills, California. | 10:29:39 |
| 18 | This video deposition is taking place at | 10:29:40 |
| 19 | 1999 Avenue of the Stars in Los Angeles and was | 10:29:42 |
| 20 | noticed by Daniel M. Petrocelli of O'Melveny & | 10:29:45 |
| 21 | Myers. | 10:29:48 |
| 22 | Counsel, please identify yourselves and | 10:29:49 |
| 23 | state whom you represent. | 10:29:51 |
| 24 | MR. PETROCELLI:  Daniel Petrocelli for | 10:29:52 |
| 25 | plaintiff DC Comics. | 10:29:55 |

EXHIBIT 37
1110

MARK WARREN PEARY - 6/29/2011

Page 9

| | | |
|---|---|---|
| 1 | MR. TOKORO:  Jason Tokoro for plaintiff DC | 10:29:57 |
| 2 | Comics. | 10:29:59 |
| 3 | MR. TOBEROFF:  Marc Toberoff for defendants | 10:30:00 |
| 4 | Laura Siegel Larson and Mark Warren Peary. | 10:30:02 |
| 5 | THE VIDEOGRAPHER:  Our court reporter today | 10:30:06 |
| 6 | is Shanda Gabriel of Merrill.  Would the reporter | 10:30:09 |
| 7 | please swear in the witness. | 10:30:11 |
| 8 | | 10:30:12 |
| 9 | MARK WARREN PEARY, | 10:30:12 |
| 10 | having been first duly sworn, was | 10:30:12 |
| 11 | examined and testified as follows: | 10:30:12 |
| 12 | | 10:30:19 |
| 13 | THE VIDEOGRAPHER:  Please begin. | 10:30:19 |
| 14 | | 10:30:19 |
| 15 | EXAMINATION | 10:30:19 |
| 16 | BY MR. PETROCELLI: | 10:30:19 |
| 17 | Q.  Good morning, Mr. Peary. | 10:30:21 |
| 18 | A.  Good morning. | 10:30:24 |
| 19 | Q.  We're starting at 10:30 rather than the | 10:30:25 |
| 20 | noticed time of 9:30 because Mr. Toberoff informed | 10:30:27 |
| 21 | me this morning of car problems.  So we'll probably | 10:30:33 |
| 22 | have to go later than anticipated but hopefully | 10:30:38 |
| 23 | we'll get through this today. | 10:30:42 |
| 24 | Marc, all the defendants' counsel were | 10:30:43 |
| 25 | noticed for the deposition.  The other counsel is | 10:30:50 |

EXHIBIT 37
1111

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | not present but we're going to proceed in their | 10:30:54 |
| 2 | absence.  They were given full notice. | 10:30:58 |
| 3 | MR. TOBEROFF:  They're not attending today. | 10:30:59 |
| 4 | MR. PETROCELLI:  Okay. | 10:31:01 |
| 5 | Q.  Let me mention to you, Mr. Peary, that I've | 10:31:04 |
| 6 | reviewed the deposition that you gave in the Siegel | 10:31:10 |
| 7 | case on November 11, 2006 and it was a somewhat | 10:31:13 |
| 8 | brief deposition.  This will be lengthier.  It's not | 10:31:23 |
| 9 | my intention to duplicate what you were already | 10:31:26 |
| 10 | asked, although I will be, from time to time, | 10:31:34 |
| 11 | picking up on things that were touched upon in that | 10:31:36 |
| 12 | deposition and following up. | 10:31:39 |
| 13 | So I do want you to know that I'm mindful | 10:31:41 |
| 14 | of what your prior testimony is and if you want a -- | 10:31:45 |
| 15 | I think you have a copy in front of you, Marc, but | 10:31:48 |
| 16 | if you need to consult a copy I have one. | 10:31:51 |
| 17 | So first let me start by expanding a bit on | 10:32:01 |
| 18 | your background. | 10:32:04 |
| 19 | You were born on January 14, 1962. | 10:32:05 |
| 20 | Is that right? | 10:32:05 |
| 21 | A.  Yes. | 10:32:08 |
| 22 | Q.  And so you're 49 years old right now? | 10:32:08 |
| 23 | A.  Yes. | 10:32:10 |
| 24 | Q.  And you have never been married, correct? | 10:32:12 |
| 25 | A.  Correct. | 10:32:12 |

EXHIBIT 37
1112

MARK WARREN PEARY - 6/29/2011

| | | | |
|---|---|---|---|
| 1 | Q. | And you have no children. | 10:32:15 |
| 2 | | Is that right? | 10:32:15 |
| 3 | A. | Correct. | 10:32:18 |
| 4 | Q. | You live in Albuquerque? | 10:32:18 |
| 5 | A. | Santa Fe. | 10:32:20 |
| 6 | Q. | Santa Fe, New Mexico? | 10:32:21 |
| 7 | | Do you live alone? | 10:32:23 |
| 8 | A. | No. | 10:32:25 |
| 9 | Q. | With whom do you reside? | 10:32:25 |
| 10 | A. | I share a house with my family, other | 10:32:27 |
| 11 | family members. | | 10:32:31 |
| 12 | Q. | Who are they? | 10:32:32 |
| 13 | A. | My mother and sister. | 10:32:33 |
| 14 | Q. | And your mother is Jean Peavy. | 10:32:36 |
| 15 | | Is that right? | 10:32:38 |
| 16 | A. | Yes. | 10:32:38 |
| 17 | Q. | And your sister is Dawn Peavy? | 10:32:39 |
| 18 | A. | Yes. | 10:32:42 |
| 19 | Q. | D-a-w-n, right? | 10:32:44 |
| 20 | A. | Right. | 10:32:45 |
| 21 | Q. | Anyone else reside with you? | 10:32:45 |
| 22 | A. | No. | 10:32:48 |
| 23 | Q. | Okay.  Dawn was born October 1965. | 10:32:51 |
| 24 | | Is that right? | 10:32:51 |
| 25 | A. | Yes. | 10:32:51 |

EXHIBIT 37
1113

MARK WARREN PEARY - 6/29/2011

Page 12

| | | | |
|---|---|---|---|
| 1 | Q. | Okay.  She has three -- three children? | 10:32:55 |
| 2 | A. | Yes. | 10:32:58 |
| 3 | Q. | Do they reside with you? | 10:33:00 |
| 4 | A. | She has a -- her youngest is -- is there | 10:33:02 |
| 5 | | sometimes. | 10:33:06 |
| 6 | Q. | Do you know the ages of her children and | 10:33:09 |
| 7 | | their names? | 10:33:11 |
| 8 | A. | Let's see, the youngest one is 19, and -- | 10:33:13 |
| 9 | Q. | And what's the 19 year old's name? | 10:33:16 |
| 10 | A. | Jake. | 10:33:18 |
| 11 | Q. | Jake? | 10:33:20 |
| 12 | A. | Jake. | 10:33:20 |
| 13 | Q. | Last name? | 10:33:21 |
| 14 | A. | He uses -- I think he uses his -- his | 10:33:21 |
| 15 | | father's last name, Anderson, I believe. | 10:33:28 |
| 16 | Q. | Okay. | 10:33:30 |
| 17 | A. | I don't use it that much. | 10:33:30 |
| 18 | Q. | Jake Anderson, 19 years old.  And who are | 10:33:32 |
| 19 | | the other two? | 10:33:35 |
| 20 | A. | Other, 20 -- you want their age or -- | 10:33:36 |
| 21 | Q. | Both name and age. | 10:33:40 |
| 22 | A. | Okay.  Nicole and -- let me see, I haven't | 10:33:42 |
| 23 | | seen them in a long time.  They live in different | 10:33:51 |
| 24 | | cities and I haven't seen them in a very long time. | 10:33:54 |
| 25 | | So let's see, Nicole and -- | 10:33:57 |

EXHIBIT 37
1114

MARK WARREN PEARY - 6/29/2011

Page 13

| | | |
|---|---|---|
| 1 | Q. Starting with Nicole, how old is Nicole? | 10:34:02 |
| 2 | A. Yeah, she's something like 23 or -4. | 10:34:05 |
| 3 | Q. And where -- what's Nicole's last name? | 10:34:06 |
| 4 | A. She uses her mother's last name. | 10:34:09 |
| 5 | Q. Peavy? | 10:34:11 |
| 6 | A. Yes. Yeah. | 10:34:12 |
| 7 | Q. And who is the third child? | 10:34:15 |
| 8 | A. Let me see. I haven't seen him in such a | 10:34:17 |
| 9 | long time. You're making my -- what is his name? I | 10:34:20 |
| 10 | haven't seen him in a long time. He lives far away. | 10:34:29 |
| 11 | Q. You don't know his name? | 10:34:31 |
| 12 | A. I do, but I'm not recalling it at the | 10:34:33 |
| 13 | moment. | 10:34:35 |
| 14 | Q. Do you know his age? | 10:34:35 |
| 15 | A. He is something -- I -- I don't know, late | 10:34:36 |
| 16 | twenties. | 10:34:38 |
| 17 | Q. I take it it's a male? | 10:34:39 |
| 18 | A. Yes. | 10:34:40 |
| 19 | Q. Okay. | 10:34:42 |
| 20 | A. Yes. | 10:34:42 |
| 21 | Q. And where does Jake Anderson live? What | 10:34:42 |
| 22 | city? | 10:34:47 |
| 23 | A. The youngest, Jake, he's -- sometimes he's | 10:34:47 |
| 24 | with us and sometimes he's elsewhere. | 10:34:50 |
| 25 | Q. Elsewhere meaning where? | 10:34:58 |

EXHIBIT 37
1115

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  I -- I -- I think he has a girlfriend that | 10:34:58 |
| 2 | he stays with if you want -- | 10:35:01 |
| 3 | Q.  In Santa Fe? | 10:35:02 |
| 4 | A.  Yes, if you want the details. | 10:35:03 |
| 5 | Q.  No, I just want to know the city. | 10:35:04 |
| 6 | A.  Okay. | 10:35:06 |
| 7 | Q.  And Nicole lives in what city? | 10:35:06 |
| 8 | A.  She's in Denver. | 10:35:08 |
| 9 | Q.  Denver.  And the older boy, you don't | 10:35:09 |
| 10 | remember? | 10:35:12 |
| 11 | A.  He -- he's -- he's in El Paso. | 10:35:12 |
| 12 | Q.  How long have you resided with your sister, | 10:35:19 |
| 13 | Dawn? | 10:35:26 |
| 14 | A.  She's been with us since 2001 or '-2, | 10:35:28 |
| 15 | somewhere in there. | 10:35:40 |
| 16 | Q.  Continuously to the present? | 10:35:40 |
| 17 | A.  Yes. | 10:35:42 |
| 18 | Q.  Okay.  And how long have you resided with | 10:35:44 |
| 19 | your mother, Jean? | 10:35:45 |
| 20 | A.  We -- we've been there since -- since 1999. | 10:35:47 |
| 21 | Q.  How old is your mom now? | 10:36:00 |
| 22 | A.  90. | 10:36:01 |
| 23 | Q.  And how is her health? | 10:36:04 |
| 24 | A.  It's -- it's fair.  She had a stroke two | 10:36:05 |
| 25 | years ago. | 10:36:09 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  Do you have full-time healthcare for her, | 10:36:13 |
| 2 | like a caretaker? | 10:36:17 |
| 3 | A.  I'm -- I serve as a caretaker quite often. | 10:36:19 |
| 4 | Q.  Okay.  But other than the family members, | 10:36:22 |
| 5 | is there a professional caretaker? | 10:36:25 |
| 6 | A.  No. | 10:36:26 |
| 7 | Q.  Okay.  Your father was William Peavy? | 10:36:30 |
| 8 | A.  Yes. | 10:36:33 |
| 9 | Q.  And he passed away in 1996? | 10:36:33 |
| 10 | A.  That's correct. | 10:36:35 |
| 11 | Q.  And your dad wrote books and was a teacher? | 10:36:49 |
| 12 | A.  Well, he -- he did.  He had -- he had a | 10:36:52 |
| 13 | long career. | 10:36:57 |
| 14 | Q.  As a -- as a teacher and an author? | 10:36:58 |
| 15 | A.  You want his last position before he | 10:37:00 |
| 16 | retired or -- | 10:37:05 |
| 17 | Q.  Just a general idea of his -- | 10:37:06 |
| 18 | A.  -- in general? | 10:37:07 |
| 19 | Q.  -- professional background. | 10:37:08 |
| 20 | A.  Yeah, he was a civil servant. | 10:37:09 |
| 21 | Q.  Working for whom? | 10:37:11 |
| 22 | A.  He worked for the Texas A&M extension | 10:37:12 |
| 23 | service. | 10:37:17 |
| 24 | Q.  What is that? | 10:37:17 |
| 25 | A.  Texas A&M extension service. | 10:37:18 |

EXHIBIT 37
1117

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  Oh, the university? | 10:37:20 |
| 2 | A.  It's a branch of the university. | 10:37:21 |
| 3 | Q.  Okay.  Now, what about your employment? | 10:37:23 |
| 4 | Can you briefly trace it for me? | 10:37:26 |
| 5 | A.  I've been doing investment work. | 10:37:28 |
| 6 | Q.  I saw from your prior -- your deposition in | 10:37:31 |
| 7 | the Siegel case that you have a two-year degree from | 10:37:35 |
| 8 | I think it's Texas El Paso. | 10:37:39 |
| 9 | Is that right? | 10:37:39 |
| 10 | A.  Yes. | 10:37:39 |
| 11 | Q.  And you went there right out of high | 10:37:42 |
| 12 | school? | 10:37:44 |
| 13 | A.  Yes. | 10:37:45 |
| 14 | Q.  And so what have you been doing | 10:37:46 |
| 15 | occupationally from the time you left college, Texas | 10:37:49 |
| 16 | El Paso, to the present? | 10:37:53 |
| 17 | A.  You want everything I've done or just -- | 10:37:55 |
| 18 | Q.  If you can summarize it that would be | 10:37:58 |
| 19 | helpful. | 10:38:00 |
| 20 | A.  Summarize it. | 10:38:00 |
| 21 | I've done a lot of different things.  I | 10:38:03 |
| 22 | built -- | 10:38:05 |
| 23 | Q.  Can you do it in chronological order for | 10:38:05 |
| 24 | me? | 10:38:08 |
| 25 | A.  I can try. | 10:38:08 |

EXHIBIT 37
1118

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.   Sure. | 10:38:09 |
| 2 | A.   I built homes for a time and sold real | 10:38:11 |
| 3 | estate for a time. | 10:38:14 |
| 4 | Q.   While living in -- | 10:38:18 |
| 5 | A.   In El Paso. | 10:38:18 |
| 6 | Q.   -- in El Paso? | 10:38:20 |
| 7 | A.   Yes.  And -- and then I -- I -- I had a | 10:38:27 |
| 8 | stint selling insurance as well and then I -- I got | 10:38:33 |
| 9 | involved in trading and investing at a later time. | 10:38:40 |
| 10 | Q.   Trading and investing in what? | 10:38:47 |
| 11 | A.   Yes.  I started off in trading futures. | 10:38:48 |
| 12 | Q.   Commodities? | 10:38:55 |
| 13 | A.   Yes.  And then later on branched out more | 10:38:56 |
| 14 | into equity investments and that type of thing and | 10:39:04 |
| 15 | that's been my primary activity for quite a few | 10:39:08 |
| 16 | years. | 10:39:11 |
| 17 | Q.   To the present? | 10:39:11 |
| 18 | A.   Yes. | 10:39:12 |
| 19 | Q.   And you've also written some books from | 10:39:14 |
| 20 | time to time? | 10:39:17 |
| 21 | A.   Yes. | 10:39:17 |
| 22 | Q.   How many books have you authored? | 10:39:18 |
| 23 | A.   Two. | 10:39:19 |
| 24 | Q.   And did you co-author a book with your | 10:39:21 |
| 25 | father? | 10:39:25 |

EXHIBIT 37
1119

MARK WARREN PEARY - 6/29/2011

Page 18

| | | |
|---|---|---|
| 1 | A.  I did. | 10:39:25 |
| 2 | Q.  Is that in addition to the two books or one | 10:39:25 |
| 3 | of the two? | 10:39:28 |
| 4 | A.  No, that's one of the two. | 10:39:28 |
| 5 | Q.  And what was that book? | 10:39:30 |
| 6 | A.  What was the title of it? | 10:39:31 |
| 7 | Q.  Yeah, the one you did with your dad. | 10:39:33 |
| 8 | A.  It was called Super Nutrition Gardening. | 10:39:34 |
| 9 | Q.  The one you did on your own? | 10:39:37 |
| 10 | A.  It was called The Greatest Health Secrets. | 10:39:38 |
| 11 | Q.  Okay.  You mentioned at the deposition in | 10:39:41 |
| 12 | November of 2006 that you were working on a | 10:39:44 |
| 13 | screenplay of Joe Shuster's life? | 10:39:48 |
| 14 | A.  Yes. | 10:39:52 |
| 15 | Q.  Do you recall that? | 10:39:52 |
| 16 | A.  Yes. | 10:39:52 |
| 17 | Q.  Have you continued to work on that? | 10:39:54 |
| 18 | A.  No. | 10:39:55 |
| 19 | Q.  Have you written any other material | 10:39:58 |
| 20 | regarding either Joe Shuster -- about either Joe | 10:40:05 |
| 21 | Shuster or Jerry Siegel? | 10:40:10 |
| 22 | A.  No. | 10:40:12 |
| 23 | Q.  Have you been on any -- have you | 10:40:13 |
| 24 | participated in any presentations or pitches to | 10:40:19 |
| 25 | third parties about acquiring options for any work. | 10:40:22 |

EXHIBIT 37
1120

MARK WARREN PEARY - 6/29/2011

| 1 | that you've done? | 10:40:29 |
| 2 | A.  At one time -- | 10:40:30 |
| 3 | MR. TOBEROFF:  Meaning -- meaning -- | 10:40:34 |
| 4 | THE WITNESS:  On a screenplay? | 10:40:35 |
| 5 | MR. TOBEROFF:  -- authored work? | 10:40:37 |
| 6 | MR. PETROCELLI:  Yeah. | 10:40:37 |
| 7 | Q.  Any work that you've authored or -- yeah. | 10:40:38 |
| 8 | Any work that you authored? | 10:40:40 |
| 9 | A.  On any screenplay or -- I have other | 10:40:41 |
| 10 | screenplays I've also worked on, so -- | 10:40:44 |
| 11 | MR. TOBEROFF:  He's just talking about any | 10:40:46 |
| 12 | literary work. | 10:40:47 |
| 13 | THE WITNESS:  I've been offered options on | 10:40:51 |
| 14 | other screenplays, yes. | 10:40:53 |
| 15 | BY MR. PETROCELLI: | 10:40:53 |
| 16 | Q.  Have any of them been developed? | 10:40:54 |
| 17 | A.  No. | 10:40:57 |
| 18 | Q.  Have any of the screenplays concerned at | 10:40:58 |
| 19 | all the life of Joe Shuster, the one that was an | 10:41:02 |
| 20 | option? | 10:41:09 |
| 21 | A.  There was one that was. | 10:41:09 |
| 22 | Q.  Was optioned? | 10:41:11 |
| 23 | A.  It has expired, so it's no -- it's not | 10:41:13 |
| 24 | active. | 10:41:13 |
| 25 | Q.  Now, was that -- what was the underlying | 10:41:16 |

EXHIBIT 37
1121

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | work that was optioned? | 10:41:19 |
| 2 | A.   Screenplay. | 10:41:19 |
| 3 | Q.   Was that the screenplay to which you | 10:41:19 |
| 4 | adverted in your deposition in 2006? | 10:41:21 |
| 5 | A.   Yes, yes. | 10:41:24 |
| 6 | Q.   And it was after your deposition that you | 10:41:25 |
| 7 | optioned it? | 10:41:30 |
| 8 | A.   I'm not -- I'm not sure of the exact date. | 10:41:33 |
| 9 | I don't -- I really don't recall the exact date on | 10:41:35 |
| 10 | that. | 10:41:40 |
| 11 | Q.   Did you option it to Ilya Salkind? | 10:41:41 |
| 12 | A.   Yes. | 10:41:44 |
| 13 | Q.   Okay.  And the option was renewed? | 10:41:52 |
| 14 | A.   No. | 10:41:53 |
| 15 | Q.   How much did you receive for the option? | 10:41:59 |
| 16 | A.   We weren't paid anything up front. | 10:42:01 |
| 17 | Q.   Okay.  Did the -- how long was the option? | 10:42:04 |
| 18 | A.   I believe it was a year. | 10:42:08 |
| 19 | Q.   Did it expire? | 10:42:10 |
| 20 | A.   Yes, it did. | 10:42:11 |
| 21 | Q.   And has anything happened to that | 10:42:11 |
| 22 | screenplay since the expiration of the option to | 10:42:14 |
| 23 | Mr. Salkind? | 10:42:17 |
| 24 | A.   No.  We have no sales or options. | 10:42:18 |
| 25 | Q.   Have you attempted to present or pitch the | 10:42:22 |

EXHIBIT 37
1122

MARK WARREN PEARY - 6/29/2011

Page 21

| | | | |
|---|---|---|---|
| 1 | | screenplay to anyone else? | 10:42:27 |
| 2 | A. | No, I have not. | 10:42:29 |
| 3 | Q. | How many pages is that screenplay? | 10:42:36 |
| 4 | A. | 130. | 10:42:37 |
| 5 | Q. | And have you done any further work on it | 10:42:43 |
| 6 | | since the time you optioned it? | 10:42:45 |
| 7 | A. | Nothing substantial. | 10:42:51 |
| 8 | Q. | And is the screenplay about the life of Joe | 10:42:54 |
| 9 | | Shuster? | 10:42:56 |
| 10 | A. | Yes. | 10:42:57 |
| 11 | Q. | When you wrote the screenplay, did you | 10:43:00 |
| 12 | | collect a -- a file on Joe Shuster from which you | 10:43:02 |
| 13 | | put together your screenplay? | 10:43:07 |
| 14 | A. | I did historical background research. | 10:43:08 |
| 15 | Q. | What were the years when you wrote the | 10:43:12 |
| 16 | | screenplay? | 10:43:14 |
| 17 | A. | 1996 I started, up until the early 2000s. | 10:43:15 |
| 18 | Q. | When your uncle died, he died in July of | 10:43:27 |
| 19 | | 1992. | 10:43:29 |
| 20 | | Is that right? | 10:43:29 |
| 21 | A. | Yes. | 10:43:29 |
| 22 | Q. | And after he passed, you were involved in | 10:43:33 |
| 23 | | collecting his belongings? | 10:43:38 |
| 24 | A. | Yes. | 10:43:40 |
| 25 | Q. | You went out to his apartment in | 10:43:43 |

EXHIBIT 37
1123

MARK WARREN PEARY - 6/29/2011

Page 22

| 1 | Los Angeles with your mom? | 10:43:44 |
| 2 | A. Yes. | 10:43:46 |
| 3 | Q. And did you then take possession of some of | 10:43:48 |
| 4 | his papers and library of comic book materials, | 10:43:55 |
| 5 | whatever he had, drawings, things like that? | 10:44:01 |
| 6 | A. There were -- there were very limited | 10:44:04 |
| 7 | papers and we didn't find any vintage comics, | 10:44:06 |
| 8 | unfortunately, which would have been worth a lot. | 10:44:10 |
| 9 | He didn't have any. There were some limited papers, | 10:44:13 |
| 10 | but nothing -- nothing significant. Mostly personal | 10:44:19 |
| 11 | items. | 10:44:22 |
| 12 | Q. Where did you get the materials that you | 10:44:24 |
| 13 | used for your book? | 10:44:26 |
| 14 | A. The book? | 10:44:27 |
| 15 | Q. Excuse me, the screenplay. | 10:44:30 |
| 16 | A. The materials, it came from historical | 10:44:34 |
| 17 | research. | 10:44:37 |
| 18 | Q. About Joe? | 10:44:38 |
| 19 | A. Yes. I had a lot of -- a lot of vintage | 10:44:39 |
| 20 | articles that came from the -- the era, which is | 10:44:46 |
| 21 | probably unusual to have a lot of material. That's | 10:44:51 |
| 22 | where most of it came from. | 10:44:55 |
| 23 | Q. You collected this on your own? | 10:44:57 |
| 24 | A. Yes. | 10:44:58 |
| 25 | Q. By doing public record searches? | 10:44:59 |

EXHIBIT 37
1124

MARK WARREN PEARY - 6/29/2011

Page 23

| | | |
|---|---|---|
| 1 | A. Yes. And family files. | 10:45:02 |
| 2 | Q. Who -- who had possession of the family | 10:45:05 |
| 3 | files? | 10:45:07 |
| 4 | A. My mother had collected articles throughout | 10:45:07 |
| 5 | the years. | 10:45:11 |
| 6 | Q. And those articles are in your home where | 10:45:12 |
| 7 | you and your mother now live, right? | 10:45:14 |
| 8 | A. Oh, I -- I guess so. It's just old | 10:45:17 |
| 9 | magazine articles. | 10:45:23 |
| 10 | Q. Did you retrieve any materials from Joe's | 10:45:28 |
| 11 | apartment after his death that you put in your file | 10:45:32 |
| 12 | for use in writing your screenplay? | 10:45:37 |
| 13 | A. I -- I don't recall getting any papers from | 10:45:39 |
| 14 | his apartment. He didn't have much. | 10:45:42 |
| 15 | Q. What about during his lifetime? Did he | 10:45:46 |
| 16 | ever give you any material, any papers, any | 10:45:50 |
| 17 | writings, any of his drawings, any comic books, | 10:45:53 |
| 18 | things like that, that you've collected and saved? | 10:45:56 |
| 19 | A. We -- we had a vintage drawing, a few | 10:45:59 |
| 20 | mementos is all. | 10:46:05 |
| 21 | Q. Were you close to him? | 10:46:06 |
| 22 | A. Somewhat. | 10:46:08 |
| 23 | Q. So you were about 30 when he passed, right? | 10:46:11 |
| 24 | You were born in '62, right? | 10:46:14 |
| 25 | A. Yeah, that sounds correct. | 10:46:15 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  And you had known him since you were a | 10:46:18 |
| 2 | small boy? | 10:46:21 |
| 3 | A.  Yes.  Not real closely, but I did know him. | 10:46:21 |
| 4 | Q.  He had no children, right? | 10:46:28 |
| 5 | A.  Correct. | 10:46:28 |
| 6 | Q.  But he had been married once? | 10:46:30 |
| 7 | A.  Briefly. | 10:46:31 |
| 8 | Q.  What years was he married? | 10:46:36 |
| 9 | A.  1979, I believe. | 10:46:37 |
| 10 | Q.  Did you attend his wedding? | 10:46:43 |
| 11 | A.  No. | 10:46:45 |
| 12 | Q.  Did he and his wife elope? | 10:46:46 |
| 13 | A.  Excuse me? | 10:46:49 |
| 14 | Q.  Did they elope, they went off on their own | 10:46:50 |
| 15 | and got married without a cere- -- you know, a | 10:46:53 |
| 16 | ceremony for the family? | 10:46:56 |
| 17 | A.  I'm not aware of the circumstances of their | 10:46:57 |
| 18 | marriage. | 10:47:01 |
| 19 | Q.  What was his wife's name? | 10:47:01 |
| 20 | A.  I'm not sure I can recall.  I never met | 10:47:02 |
| 21 | her. | 10:47:11 |
| 22 | Q.  Never spoke with her? | 10:47:11 |
| 23 | A.  No. | 10:47:12 |
| 24 | Q.  Ever communicate at all with her in | 10:47:13 |
| 25 | writing? | 10:47:16 |

EXHIBIT 37
1126

MARK WARREN PEARY - 6/29/2011

Page 25

| | | |
|---|---|---|
| 1 | A.  No, I did not.  It's like 1979, '80, last | 10:47:16 |
| 2 | time they were together. | 10:47:20 |
| 3 | Q.  Did you ever see her? | 10:47:22 |
| 4 | A.  I never met her. | 10:47:23 |
| 5 | Q.  Did you ever see a picture of her? | 10:47:24 |
| 6 | A.  Yes. | 10:47:26 |
| 7 | Q.  Where? | 10:47:26 |
| 8 | A.  Somehow we had -- we had a picture that I | 10:47:31 |
| 9 | had -- I had seen from -- I don't know what it was. | 10:47:33 |
| 10 | It was -- maybe it was -- I -- I don't remember. | 10:47:38 |
| 11 | Somewhere I did see a picture of them, but I never | 10:47:40 |
| 12 | met her. | 10:47:42 |
| 13 | Q.  And Joe had how many nieces and nephews? | 10:47:44 |
| 14 | A.  Just myself and my sister. | 10:47:49 |
| 15 | Q.  Now, you -- I've seen his will or at least | 10:47:59 |
| 16 | a copy of the will and it names your mom, Jean, as | 10:48:03 |
| 17 | his sole beneficiary but identifies you as an | 10:48:08 |
| 18 | alternate beneficiary, as well as executor in the | 10:48:10 |
| 19 | event that she is unwilling or unable to serve. | 10:48:17 |
| 20 | You're generally familiar with that? | 10:48:19 |
| 21 | A.  Yes. | 10:48:20 |
| 22 | Q.  And I notice that your sister wasn't in | 10:48:21 |
| 23 | there. | 10:48:24 |
| 24 | Did your sister, to your knowledge, not | 10:48:25 |
| 25 | have a good relationship with -- with your uncle | 10:48:30 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1127

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Joe? | 10:48:32 |
| 2 | A.   No, it had nothing to do with that. | 10:48:32 |
| 3 | Q.   Do you have any understanding or belief why | 10:48:34 |
| 4 | only you were included, not your sister? | 10:48:37 |
| 5 | MR. TOBEROFF:  Don't speculate. | 10:48:41 |
| 6 | THE WITNESS:  My sister's provided for by | 10:48:44 |
| 7 | us, so there's no problem with the relationship. | 10:48:48 |
| 8 | That's all I could say. | 10:48:53 |
| 9 | BY MR. PETROCELLI: | 10:48:53 |
| 10 | Q.   When you said your sister is provided for | 10:48:56 |
| 11 | by "us," who is the "us"? | 10:48:58 |
| 12 | A.   Yeah, me and my mom. | 10:49:00 |
| 13 | Q.   Have you been supporting your mom | 10:49:02 |
| 14 | financially since your dad passed? | 10:49:07 |
| 15 | A.   I don't know if I am supporting her.  We | 10:49:11 |
| 16 | have a mutual relationship where she needs my help | 10:49:15 |
| 17 | and I give it to her. | 10:49:21 |
| 18 | Q.   Do you provide financial support to your | 10:49:23 |
| 19 | sister, Dawn? | 10:49:25 |
| 20 | A.   Somewhat but she has a job. | 10:49:28 |
| 21 | Q.   What does she do for a living? | 10:49:30 |
| 22 | A.   She works for a food distributor. | 10:49:32 |
| 23 | Q.   In Santa Fe? | 10:49:36 |
| 24 | A.   Yes. | 10:49:36 |
| 25 | Q.   What's the name of the company? | 10:49:37 |

EXHIBIT 37
1128

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.   It -- it's called Labatt. | 10:49:41 |
| 2 | Q.   She's unmarried at the current time? | 10:49:43 |
| 3 | A.   Yes. | 10:49:47 |
| 4 | Q.   Are you familiar with a comic book blogger | 10:49:53 |
| 5 | named Dave Sims or Dave Sim, S-i-m? | 10:49:56 |
| 6 | A.   I'm not sure I am. | 10:50:02 |
| 7 | MR. TOBEROFF:  How do you spell that? | 10:50:10 |
| 8 | MR. PETROCELLI:  S-i-m. | 10:50:12 |
| 9 | Q.   Did your mom in the last four or five years | 10:50:13 |
| 10 | do an interview for Canadian Broadcasting Company, | 10:50:19 |
| 11 | CBC? | 10:50:22 |
| 12 | A.   I'm not aware of that. | 10:50:23 |
| 13 | MR. PETROCELLI:  I've taken the time while | 10:50:26 |
| 14 | we were waiting for you folks to arrive to pre-mark | 10:50:28 |
| 15 | the deposition exhibits that I intend to use.  Now, | 10:50:31 |
| 16 | that said, because I tend to move around a bit, | 10:50:35 |
| 17 | they're not exactly in sequential order. | 10:50:39 |
| 18 | Q.   But let me start by showing you just | 10:50:43 |
| 19 | briefly an exhibit which is a copy of a blog by | 10:50:45 |
| 20 | Mr. Sim about your family dated February 19, 2007. | 10:50:50 |
| 21 | It's Exhibit 24. | 10:50:59 |
| 22 | Marc, I started with 1, Exhibit 1, which | 10:51:00 |
| 23 | I'll get to and I've numbered exhibits starting with | 10:51:03 |
| 24 | 1 since this is the first deposition in the case. | 10:51:10 |
| 25 | (The document referred to was | 10:51:13 |

EXHIBIT 37
1129

MARK WARREN PEARY - 6/29/2011

Page 28

| | | |
|---|---|---|
| 1 | marked for identification by the | 10:51:13 |
| 2 | C.S.R. as Exhibit 24 and attached | 10:51:13 |
| 3 | to this deposition.) | 10:51:16 |
| 4 | BY MR. PETROCELLI: | 10:51:16 |
| 5 | Q.  Have you ever seen this blog before or | 10:51:17 |
| 6 | this -- | 10:51:19 |
| 7 | A.  No. | 10:51:19 |
| 8 | Q.  Excuse me, this particular edition of | 10:51:20 |
| 9 | Mr. Sim's blog? | 10:51:23 |
| 10 | A.  No.  I'm not familiar with him. | 10:51:25 |
| 11 | Q.  Okay.  If you go to the second page, the | 10:51:28 |
| 12 | middle of the paragraph, the paragraph that starts | 10:51:31 |
| 13 | with: | 10:51:38 |
| 14 | "Oh, here is a great one:  a | 10:51:42 |
| 15 | letter from Jean and Dawn and | 10:51:44 |
| 16 | Warren Shuster (Peavy/Perry)." | 10:51:47 |
| 17 | Do you see that? | 10:51:51 |
| 18 | A.  Yes. | 10:51:51 |
| 19 | Q.  And then it goes on to have some discussion | 10:51:53 |
| 20 | about -- about you and your sister and your mom. | 10:51:56 |
| 21 | Did you provide a letter to Mr. Sim? | 10:52:00 |
| 22 | A.  A letter? | 10:52:06 |
| 23 | Q.  Yeah. | 10:52:06 |
| 24 | A.  I don't recall having any dealings with | 10:52:16 |
| 25 | Sim. | 10:52:19 |

EXHIBIT 37
1130

MARK WARREN PEARY - 6/29/2011

Page 29

| | | |
|---|---|---|
| 1 | Q.  Did you attend the inaugural Joe Shuster | 10:52:19 |
| 2 | Awards at Toronto Con?  It's Toronto and then C-o-n. | 10:52:24 |
| 3 | A.  No. | 10:52:28 |
| 4 | Q.  Do you know that your mother and sister | 10:52:29 |
| 5 | did? | 10:52:31 |
| 6 | A.  Yes. | 10:52:32 |
| 7 | Q.  What year was that? | 10:52:32 |
| 8 | A.  I'm not sure.  I didn't go. | 10:52:40 |
| 9 | Q.  Last -- was it in the last -- | 10:52:41 |
| 10 | A.  Sometime after 2000. | 10:52:45 |
| 11 | Q.  Okay.  Are you aware of any letters that | 10:52:46 |
| 12 | they wrote to Mr. Sim, "they" being your sister or | 10:52:50 |
| 13 | your mother? | 10:52:54 |
| 14 | A.  No, I don't believe I am. | 10:53:02 |
| 15 | Q.  And you'll see in this next paragraph that | 10:53:03 |
| 16 | follows, at the very end there's a reference to some | 10:53:05 |
| 17 | of your screenplays, then there's some photographs, | 10:53:08 |
| 18 | and the photograph on -- on the third page of | 10:53:12 |
| 19 | Exhibit 24 at the very bottom, is that you, your | 10:53:16 |
| 20 | mother, Jean, and your sister, Dawn? | 10:53:19 |
| 21 | A.  Yes. | 10:53:21 |
| 22 | Q.  Okay.  And then there's the fourth page at | 10:53:21 |
| 23 | the top, talks about the option arrangement with | 10:53:25 |
| 24 | Mr. Salkind. | 10:53:28 |
| 25 | Do you see that? | 10:53:29 |

EXHIBIT 37
1131

MARK WARREN PEARY - 6/29/2011

Page 30

| | | |
|---|---|---|
| 1 | A.  Yes. | 10:53:29 |
| 2 | Q.  Okay.  And as far as you know, you didn't | 10:53:31 |
| 3 | provide any of this information to -- to Mr. Sim. | 10:53:34 |
| 4 | Is that right? | 10:53:34 |
| 5 | A.  I don't recall having any dealings with -- | 10:53:41 |
| 6 | with Sim, so I don't know where he got it. | 10:53:44 |
| 7 | Q.  And go to the -- the next page at the very | 10:53:46 |
| 8 | end which starts with, "So there you go." | 10:53:49 |
| 9 | A.  Next page at the very end.  Uh-huh. | 10:53:55 |
| 10 | Q.  It says at the end: | 10:53:57 |
| 11 | "Stay tuned as we try to | 10:53:59 |
| 12 | track down Jean Shuster Peavy's CBC | 10:54:01 |
| 13 | interview." | 10:54:05 |
| 14 | Do you know anything about that interview? | 10:54:06 |
| 15 | A.  No, I don't. | 10:54:07 |
| 16 | Q.  Okay.  When did you change your name from | 10:54:08 |
| 17 | Peavy to Peary? | 10:54:17 |
| 18 | A.  Sometime in the early 1980s. | 10:54:18 |
| 19 | Q.  Did you legally change it? | 10:54:24 |
| 20 | A.  Yes. | 10:54:26 |
| 21 | Q.  Why -- why did you do that? | 10:54:26 |
| 22 | A.  It was like -- it was a -- like a kind of a | 10:54:27 |
| 23 | business type of decision.  I was doing some acting | 10:54:34 |
| 24 | at the time.  That was part of it.  I thought it had | 10:54:36 |
| 25 | a better sound, as actors frequently change their | 10:54:40 |

EXHIBIT 37
1132

MARK WARREN PEARY - 6/29/2011

Page 31

| | | |
|---|---|---|
| 1 | names so -- | 10:54:43 |
| 2 | Q.  Did you -- | 10:54:44 |
| 3 | A.  -- it had to do with that. | 10:54:45 |
| 4 | Q.  Did you appear in anything -- | 10:54:46 |
| 5 | A.  I did. | 10:54:50 |
| 6 | Q.  -- that was previous to -- | 10:54:51 |
| 7 | A.  I did local paid productions and did some | 10:54:53 |
| 8 | various auditions for a time, but I didn't pursue | 10:54:59 |
| 9 | it. | 10:55:01 |
| 10 | Q.  Are you also a musician? | 10:55:09 |
| 11 | A.  I have -- yes, I have done music. | 10:55:12 |
| 12 | Q.  Did you perform in a band called the Cotton | 10:55:14 |
| 13 | Pickin' Peavys? | 10:55:19 |
| 14 | A.  Oh, as a child, that was a childhood thing. | 10:55:19 |
| 15 | Q.  Who -- who was in that band? | 10:55:25 |
| 16 | A.  Myself, mother and father, maybe an | 10:55:26 |
| 17 | occasional other musician. | 10:55:30 |
| 18 | Q.  And what did you play, the banjo? | 10:55:32 |
| 19 | A.  Yes. | 10:55:33 |
| 20 | Q.  Okay.  So you have done some music in your | 10:55:35 |
| 21 | background and you've done some acting? | 10:55:40 |
| 22 | A.  Yes. | 10:55:41 |
| 23 | Q.  Have you ever been compensated for acting? | 10:55:42 |
| 24 | A.  Yes. | 10:55:43 |
| 25 | Q.  How long ago? | 10:55:45 |

EXHIBIT 37
1133

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  Early 1980s. | 10:55:48 |
| 2 | Q.  So I want to go back a bit on your | 10:55:56 |
| 3 | relationship with your uncle, Joe Shuster. | 10:55:58 |
| 4 | Did you ever spend one-on-one time with him | 10:56:05 |
| 5 | growing up? | 10:56:09 |
| 6 | A.  Some. | 10:56:09 |
| 7 | Q.  Did you go stay with him, for example, for | 10:56:09 |
| 8 | a while? | 10:56:12 |
| 9 | A.  There was one occasion I stayed with him | 10:56:12 |
| 10 | for a couple weeks. | 10:56:16 |
| 11 | Q.  When was that? | 10:56:18 |
| 12 | A.  That's when I thought I might become an | 10:56:20 |
| 13 | actor and I came out here and he let me stay in his | 10:56:22 |
| 14 | place for a while. | 10:56:27 |
| 15 | Q.  Late '80s? | 10:56:27 |
| 16 | A.  No.  That was the early '80s when I had all | 10:56:28 |
| 17 | my hair. | 10:56:32 |
| 18 | Q.  And when did you last see him before he | 10:56:33 |
| 19 | died? | 10:56:39 |
| 20 | A.  There -- there might have been an occasion | 10:56:39 |
| 21 | in the late '80s where we visited him, I believe. | 10:56:46 |
| 22 | It wasn't very long, though. | 10:56:52 |
| 23 | Q.  What wasn't very long? | 10:56:57 |
| 24 | A.  The visit was not long. | 10:56:59 |
| 25 | Q.  Did you speak with him by phone? | 10:57:03 |

EXHIBIT 37
1134

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  Not much.  Mostly it was to his sister, | 10:57:07 |
| 2 | Jean. | 10:57:11 |
| 3 | Q.  Were you -- so your contact with him | 10:57:15 |
| 4 | diminished in -- over the last years of his life? | 10:57:18 |
| 5 | A.  I don't know if it diminished.  There | 10:57:27 |
| 6 | was -- I would say it was pretty steady as it had | 10:57:31 |
| 7 | been. | 10:57:34 |
| 8 | Q.  But you hadn't seen him in three or four | 10:57:37 |
| 9 | years, right? | 10:57:39 |
| 10 | A.  Yeah, I don't recall the last time I'd seen | 10:57:40 |
| 11 | him, if that's what you're asking.  It was -- we had | 10:57:42 |
| 12 | visited him sometime in the late 1980s and he -- he | 10:57:44 |
| 13 | had gotten older and slower and had various health | 10:57:50 |
| 14 | problems, so it wasn't -- it wasn't a whole lot | 10:57:55 |
| 15 | said.  I don't recall speaking with him much at that | 10:58:05 |
| 16 | time. | 10:58:08 |
| 17 | Q.  Did you ever have a conversation with -- | 10:58:08 |
| 18 | with Joe Shuster about copyright interests or | 10:58:11 |
| 19 | termination of copyright interests? | 10:58:16 |
| 20 | A.  No. | 10:58:18 |
| 21 | MR. TOBEROFF:  Compound. | 10:58:20 |
| 22 | THE WITNESS:  No.  Never discussed that. | 10:58:22 |
| 23 | BY MR. PETROCELLI: | 10:58:22 |
| 24 | Q.  Did you ever have a conversation with Joe | 10:58:26 |
| 25 | Shuster about any contractual arrangements he had | 10:58:28 |

MARK WARREN PEARY - 6/29/2011

Page 34

| | | |
|---|---|---|
| 1 | with DC Comics or Time-Warner or Warner | 10:58:34 |
| 2 | Communications or any other affiliated entity? | 10:58:39 |
| 3 | MR. TOBEROFF:  Compound. | 10:58:42 |
| 4 | THE WITNESS:  No. | 10:58:45 |
| 5 | BY MR. PETROCELLI: | 10:58:45 |
| 6 | Q.  Did he ever discuss with you any of his | 10:58:51 |
| 7 | pension arrangements or agreements? | 10:58:55 |
| 8 | A.  No. | 10:58:57 |
| 9 | Q.  Were you aware of them? | 10:59:00 |
| 10 | A.  I knew he was getting a pension. | 10:59:04 |
| 11 | Q.  From whom? | 10:59:06 |
| 12 | A.  Time-Warner, I believe. | 10:59:07 |
| 13 | Q.  Were you at all involved in his financial | 10:59:15 |
| 14 | affairs, helping him out with paying bills or things | 10:59:19 |
| 15 | like that? | 10:59:23 |
| 16 | A.  Not while he was alive. | 10:59:23 |
| 17 | Q.  When he died, though, you -- you did go | 10:59:26 |
| 18 | through and reconstruct all of his payments and | 10:59:29 |
| 19 | checks and tried to get a handle on how much money | 10:59:32 |
| 20 | he had. | 10:59:36 |
| 21 | Is that right? | 10:59:38 |
| 22 | MR. TOBEROFF:  Vague. | 10:59:38 |
| 23 | You can answer. | 10:59:43 |
| 24 | THE WITNESS:  The only thing I recall is I | 10:59:43 |
| 25 | helped my mo- -- mother clear up his affairs. | 10:59:45 |

Merrill   Corporation   -   Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1136

MARK WARREN PEARY - 6/29/2011

Page 35

| | | |
|---|---|---|
| 1 | That's about the only involvement I had at the -- | 10:59:55 |
| 2 | after he died. | 10:59:56 |
| 3 | BY MR. PETROCELLI: | 10:59:56 |
| 4 | Q.  And after he died, were you assisting your | 11:00:03 |
| 5 | mom in her discussions with either DC Comics or | 11:00:11 |
| 6 | Time-Warner about financial arrangements? | 11:00:17 |
| 7 | MR. TOBEROFF:  Lacks foundation.  Assumes | 11:00:22 |
| 8 | facts. | 11:00:24 |
| 9 | THE WITNESS:  I -- no, I really had nothing | 11:00:30 |
| 10 | to do with what she was saying. | 11:00:32 |
| 11 | BY MR. PETROCELLI: | 11:00:32 |
| 12 | Q.  Okay.  I'll come back to that in a bit. | 11:00:34 |
| 13 | You are aware that DC Comics has filed a | 11:00:39 |
| 14 | lawsuit against you and other defendants, including | 11:00:47 |
| 15 | Mr. Toberoff? | 11:00:55 |
| 16 | A.  Yes. | 11:00:56 |
| 17 | Q.  Let me show you a copy of the complaint | 11:01:02 |
| 18 | which is Exhibit 1. | 11:01:03 |
| 19 | (The document referred to was | 11:01:06 |
| 20 | marked for identification by the | 11:01:06 |
| 21 | C.S.R. as Exhibit 1 and attached to | 11:01:06 |
| 22 | this deposition.) | 11:01:16 |
| 23 | MR. PETROCELLI:  Actually the first amended | 11:01:16 |
| 24 | complaint. | 11:01:19 |
| 25 | MR. TOBEROFF:  Is this -- I thought this -- | 11:01:19 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | the other blog was Exhibit 1. | 11:01:21 |
| 2 | MR. PETROCELLI:  No, no, I premarked them, | 11:01:23 |
| 3 | as I said.  So that was -- I identified that on the | 11:01:25 |
| 4 | record as Exhibit 24. | 11:01:28 |
| 5 | You have a copy of that blog that's been | 11:01:40 |
| 6 | marked by the reporter, Marc?  This one right here? | 11:01:43 |
| 7 | Why don't you put that over there so we can keep the | 11:01:47 |
| 8 | exhibits organized.  That's for the reporter.  Thank | 11:01:50 |
| 9 | you. | 11:01:56 |
| 10 | Q.  When this -- this lawsuit was first filed | 11:01:56 |
| 11 | on I believe it was May 14, 2010 and a copy of the | 11:01:58 |
| 12 | complaint at the time was served on you, did you | 11:02:04 |
| 13 | read the complaint? | 11:02:07 |
| 14 | A.  I scanned it. | 11:02:09 |
| 15 | Q.  Scanned it? | 11:02:11 |
| 16 | A.  Yes. | 11:02:12 |
| 17 | Q.  Did you discuss it with your mom? | 11:02:14 |
| 18 | A.  Her -- not -- not -- not really.  She -- | 11:02:22 |
| 19 | faculties are not -- not very good because of her | 11:02:28 |
| 20 | stroke.  She's -- she's perhaps aware -- she's | 11:02:34 |
| 21 | probably aware of it, I'm sure. | 11:02:38 |
| 22 | Q.  When the lawsuit was served on you and you | 11:02:40 |
| 23 | became aware of it, did you have any discussion at | 11:02:42 |
| 24 | all with your mother about it, even -- even in the | 11:02:45 |
| 25 | most general terms, like, you know, "They filed a | 11:02:48 |

EXHIBIT 37
1138

MARK WARREN PEARY - 6/29/2011

Page 37

| | | |
|---|---|---|
| 1 | case against us" or anything like that? | 11:02:50 |
| 2 | A.  That would be the only extent of it.  I | 11:02:52 |
| 3 | would have mentioned something.  That's it. | 11:02:56 |
| ·4 | Q.  Do you recall what, if anything, she said | 11:03:00 |
| 5 | to you? | 11:03:02 |
| 6 | A.  Her -- her faculties are such that I don't | 11:03:06 |
| 7 | think she completely understands what's going on | 11:03:09 |
| 8 | with this. | 11:03:11 |
| 9 | Q.  "With this" meaning -- | 11:03:13 |
| 10 | A.  This. | 11:03:14 |
| 11 | Q.  -- all the legal issues? | 11:03:14 |
| 12 | A.  This legal -- yes. | 11:03:16 |
| 13 | Q.  Did you discuss it with your sister, Jean, | 11:03:18 |
| 14 | with whom you were living at the time? | 11:03:26 |
| 15 | A.  You mean -- | 11:03:27 |
| 16 | Q.  Your sister, Dawn, excuse me. | 11:03:28 |
| 17 | A.  -- Dawn? | 11:03:29 |
| 18 | Q.  What -- what is Dawn's last name?  Does she | 11:03:30 |
| 19 | go by Peary? | 11:03:35 |
| 20 | A.  She uses Peavy right now. | 11:03:37 |
| 21 | Q.  Peavy.  Excuse me.  Okay.  And what is your | 11:03:38 |
| 22 | address? | 11:03:46 |
| 23 | A.  51 Camino Cabo, Santa Fe, New Mexico, | 11:03:46 |
| 24 | 87508. | 11:03:58 |
| 25 | Q.  Who owns the house? | 11:04:00 |

EXHIBIT 37
1139

MARK WARREN PEARY - 6/29/2011

Page 38

| | | |
|---|---|---|
| 1 | A.  I do with -- with my mother. | 11:04:01 |
| 2 | Q.  Did you discuss the lawsuit with -- with | 11:04:10 |
| 3 | Dawn? | 11:04:12 |
| 4 | A.  No. | 11:04:13 |
| 5 | Q.  Never? | 11:04:16 |
| 6 | A.  No.  She hasn't -- she hasn't been involved | 11:04:16 |
| 7 | in any of the legal issues.  She just has a general | 11:04:23 |
| 8 | awareness of it. | 11:04:25 |
| 9 | MR. TOBEROFF:  If I might, just focus -- | 11:04:27 |
| 10 | just answer his question and focus on the question. | 11:04:28 |
| 11 | BY MR. PETROCELLI: | 11:04:28 |
| 12 | Q.  Did you tell her that you were coming here | 11:04:31 |
| 13 | for a deposition? | 11:04:32 |
| 14 | A.  She's aware of that. | 11:04:33 |
| 15 | Q.  Based on your interactions with her, do you | 11:04:38 |
| 16 | believe she's aware that a lawsuit has been filed by | 11:04:39 |
| 17 | DC Comics against you and others with respect to the | 11:04:42 |
| 18 | Joe Shuster termination interest? | 11:04:46 |
| 19 | A.  I don't know if I've discussed that with | 11:04:48 |
| 20 | her. | 11:04:51 |
| 21 | Q.  Have you discussed this case with anyone | 11:04:53 |
| 22 | else other than Marc Toberoff? | 11:04:55 |
| 23 | A.  No. | 11:04:57 |
| 24 | Q.  Have you discussed it with any other | 11:05:02 |
| 25 | lawyers besides Mr. Toberoff? | 11:05:06 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | MR. TOBEROFF: Including lawyers at my | 11:05:08 |
| 2 | firm? | 11:05:09 |
| 3 | MR. PETROCELLI: Not including any lawyers | 11:05:09 |
| 4 | at Mr. Toberoff's firm. Anybody else? | 11:05:11 |
| 5 | THE WITNESS: No. | 11:05:14 |
| 6 | BY MR. PETROCELLI: | 11:05:14 |
| 7 | Q. Who is Michael Catron? | 11:05:16 |
| 8 | A. He is a friend. | 11:05:20 |
| 9 | Q. Where does he live? | 11:05:23 |
| 10 | A. He lives in Pennsylvania. | 11:05:24 |
| 11 | Q. How did you become acquainted with him? | 11:05:28 |
| 12 | A. I became acquainted with him -- I don't | 11:05:30 |
| 13 | recall. I've known him since I was younger. | 11:05:40 |
| 14 | Q. You grew up together? | 11:05:43 |
| 15 | A. No, he knew the family. He knew our family | 11:05:44 |
| 16 | and I knew him since -- I can't recall exactly. | 11:05:48 |
| 17 | We've known him for years, though. | 11:05:52 |
| 18 | Q. What does he do for a living? | 11:05:53 |
| 19 | A. He is some kind of a teacher, I believe. | 11:05:55 |
| 20 | Q. What city in Pennsylvania? | 11:05:59 |
| 21 | A. I don't recall. | 11:06:01 |
| 22 | Q. When was the last time you had any contact | 11:06:04 |
| 23 | with him? | 11:06:07 |
| 24 | A. Personal or on the phone or -- | 11:06:07 |
| 25 | Q. Any way, on the phone, writing, e-mail, | 11:06:12 |

EXHIBIT 37
1141

MARK WARREN PEARY - 6/29/2011

Page 40

| | | |
|---|---|---|
| 1 | anything. | 11:06:14 |
| 2 | A.   I must have spoken with him in the last | 11:06:19 |
| 3 | year on the phone. | 11:06:21 |
| 4 | Q.   And you don't know what city he lives in? | 11:06:26 |
| 5 | A.   I can't recall.  Usually I just talk to him | 11:06:28 |
| 6 | on the phone. | 11:06:32 |
| 7 | Q.   Do you know how old he is? | 11:06:32 |
| 8 | A.   I believe he's in his 50s. | 11:06:33 |
| 9 | Q.   Do you have an e-mail address? | 11:06:40 |
| 10 | A.   Yes. | 11:06:41 |
| 11 | Q.   What is it? | 11:06:42 |
| 12 | A.   WPeary@comcast.net. | 11:06:44 |
| 13 | Q.   Is that P-e-a-r-y? | 11:06:54 |
| 14 | A.   Yes. | 11:06:57 |
| 15 | Q.   And do you know if your sister, Dawn, has | 11:06:58 |
| 16 | an e-mail address? | 11:07:00 |
| 17 | A.   She uses one through work.  I can't recall. | 11:07:00 |
| 18 | Q.   Does your mom have one? | 11:07:08 |
| 19 | A.   No. | 11:07:09 |
| 20 | Q.   Are you generally familiar with the nature | 11:07:18 |
| 21 | of DC Comics' claims in this case? | 11:07:20 |
| 22 | A.   Somewhat. | 11:07:22 |
| 23 | Q.   Are you aware, and again, very generally, | 11:07:29 |
| 24 | that DC Comics is challenging the termination notice | 11:07:34 |
| 25 | served by the estate of Joe Shuster? | 11:07:40 |

EXHIBIT 37
1142

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.   Yeah, I saw that here. | 11:07:45 |
| 2 | Q.   And by "challenging," I mean DC is | 11:07:47 |
| 3 | contending that the termination notice is not valid | 11:07:53 |
| 4 | or not effective. | 11:07:55 |
| 5 | Do you have a general understanding of | 11:07:58 |
| 6 | that? | 11:07:59 |
| 7 | A.   Just from what I read here. | 11:08:00 |
| 8 | Q.   Okay.  You also -- do you also have an | 11:08:02 |
| 9 | understanding that DC claims that certain agreements | 11:08:05 |
| 10 | that you and/or your mother entered into, violate | 11:08:19 |
| 11 | its rights under the copyright laws?  Do you have a | 11:08:24 |
| 12 | general understanding that DC is making that | 11:08:27 |
| 13 | contention? | 11:08:30 |
| 14 | MR. TOBEROFF:  I just want to instruct you, | 11:08:33 |
| 15 | Warren, to the extent he asks you a question whether | 11:08:35 |
| 16 | you have an understanding, you can answer that | 11:08:39 |
| 17 | question as to what your understanding is, provided | 11:08:42 |
| 18 | that understanding is not based on your | 11:08:44 |
| 19 | conversations with me and is based on something | 11:08:47 |
| 20 | independent of your communications with me. | 11:08:50 |
| 21 | If it's -- if your understanding is solely | 11:08:54 |
| 22 | based on your communications with me, you can't | 11:08:57 |
| 23 | discuss with Mr. Petrocelli what your answer is | 11:09:02 |
| 24 | because you would be divulging the substance of your | 11:09:06 |
| 25 | communications with me. | 11:09:08 |

EXHIBIT 37
1143

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Do you understand that? | 11:09:09 |
| 2 | THE WITNESS:  Yes. | 11:09:11 |
| 3 | MR. TOBEROFF:  So you can answer solely to | 11:09:12 |
| 4 | the extent you have an understanding independent of | 11:09:14 |
| 5 | your discussions with me. | 11:09:17 |
| 6 | THE WITNESS:  Okay. | 11:09:18 |
| 7 | BY MR. PETROCELLI: | 11:09:18 |
| 8 | Q.  You read the complaint, you said -- you | 11:09:19 |
| 9 | said you scanned it, right? | 11:09:21 |
| 10 | A.  Yes. | 11:09:21 |
| 11 | Q.  So when you scanned the complaint, did you | 11:09:23 |
| 12 | understand that, among other things, that DC was | 11:09:27 |
| 13 | contending that certain agreements that you and/or | 11:09:29 |
| 14 | your mother entered into violated its rights under | 11:09:33 |
| 15 | the copyright laws? | 11:09:36 |
| 16 | MR. TOBEROFF:  Again, you can only answer | 11:09:40 |
| 17 | that question to the extent you have some | 11:09:41 |
| 18 | independent understanding, independent of your | 11:09:43 |
| 19 | discussions with me. | 11:09:45 |
| 20 | THE WITNESS:  My understanding of -- of | 11:09:47 |
| 21 | this is intricately linked to my discussions with | 11:09:50 |
| 22 | Marc Toberoff. | 11:09:56 |
| 23 | (Unanswered question.) | 11:09:56 |
| 24 | BY MR. PETROCELLI: | 11:09:56 |
| 25 | Q.  When you receive the complaint and scanned | 11:09:58 |

EXHIBIT 37
1144

MARK WARREN PEARY - 6/29/2011

Page 43

| | | |
|---|---|---|
| 1 | it, that was before you spoke to Mr. Toberoff about | 11:10:03 |
| 2 | the contents of the complaint, correct? | 11:10:05 |
| 3 | MR. TOBEROFF:  Assumes facts. | 11:10:10 |
| 4 | THE WITNESS:  I scanned it. | 11:10:15 |
| 5 | BY MR. PETROCELLI: | 11:10:15 |
| 6 | Q.  And so I'm focusing on that point in time | 11:10:16 |
| 7 | before any communication with Mr. Toberoff. | 11:10:19 |
| 8 | MR. TOBEROFF:  I'd like you to answer his | 11:10:23 |
| 9 | question.  He asked you a question and you didn't | 11:10:24 |
| 10 | answer it. | 11:10:27 |
| 11 | MR. PETROCELLI:  I think he answered it. | 11:10:27 |
| 12 | MR. TOBEROFF:  No, he didn't. | 11:10:29 |
| 13 | THE WITNESS:  What was the question? | 11:10:31 |
| 14 | BY MR. PETROCELLI: | 11:10:31 |
| 15 | Q.  Let me re- --- rewind this, okay? | 11:10:32 |
| 16 | I want you to focus on the time when you | 11:10:35 |
| 17 | received the complaint and you scanned it before you | 11:10:39 |
| 18 | spoke to Mr. Toberoff about it. | 11:10:42 |
| 19 | MR. TOBEROFF:  Assumes facts. | 11:10:44 |
| 20 | BY MR. PETROCELLI: | 11:10:44 |
| 21 | Q.  Are you with me? | 11:10:46 |
| 22 | A.  Uh-huh. | 11:10:47 |
| 23 | Q.  Okay.  At that point in time, did you have | 11:10:48 |
| 24 | a general understanding that DC was claiming that | 11:10:53 |
| 25 | certain agreements you or your mother entered into | 11:10:57 |

MARK WARREN PEARY - 6/29/2011

Page 44

| | | |
|---|---|---|
| 1 | violated its rights? | 11:10:59 |
| 2 | MR. TOBEROFF: Okay. And again, my | 11:11:03 |
| 3 | instruction to you is if you had an understanding | 11:11:03 |
| 4 | that's independent of your discussions with me, you | 11:11:06 |
| 5 | can answer the question. If you don't, I instruct | 11:11:09 |
| 6 | you not to answer. | 11:11:12 |
| 7 | THE WITNESS: All my understanding is based | 11:11:13 |
| 8 | on my discussions with Mr. Toberoff. | 11:11:18 |
| 9 | (Unanswered question.) | 11:11:18 |
| 10 | BY MR. PETROCELLI: | 11:11:18 |
| 11 | Q. Well, you had an understanding at some | 11:11:22 |
| 12 | level when you read the complaint, right? | 11:11:24 |
| 13 | MR. TOBEROFF: Assumes facts. | 11:11:28 |
| 14 | THE WITNESS: I don't really -- I don't | 11:11:29 |
| 15 | really understand the -- the complaints, to tell you | 11:11:31 |
| 16 | the truth. I don't. So all my understanding is -- | 11:11:37 |
| 17 | is bound with my discussions with Marc Toberoff. | 11:11:41 |
| 18 | BY MR. PETROCELLI: | 11:11:41 |
| 19 | Q. Well, when you received it and you saw it, | 11:11:46 |
| 20 | you picked it up and you scanned it, you said. | 11:11:47 |
| 21 | Is that right? | 11:11:47 |
| 22 | A. Yes. | 11:11:47 |
| 23 | Q. And you did that before having an in-depth | 11:11:52 |
| 24 | discussion with Mr. Toberoff about the document, | 11:11:55 |
| 25 | correct? | 11:11:56 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1146

MARK WARREN PEARY - 6/29/2011

Page 45

| | | |
|---|---|---|
| 1 | A. You're asking what my understanding of this | 11:12:02 |
| 2 | says? | 11:12:04 |
| 3 | MR. TOBEROFF: He's asking whether -- | 11:12:04 |
| 4 | MR. PETROCELLI: Marc. | 11:12:05 |
| 5 | MR. TOBEROFF: Okay. I'm sorry. Focus on | 11:12:06 |
| 6 | the question. | 11:12:07 |
| 7 | BY MR. PETROCELLI: | 11:12:07 |
| 8 | Q. Yeah. When you got the document, you | 11:12:08 |
| 9 | scanned it and you did that before having an | 11:12:12 |
| 10 | in-depth conversation with Mr. Toberoff about the | 11:12:17 |
| 11 | contents of the complaint, correct? | 11:12:20 |
| 12 | MR. TOBEROFF: Assumes facts. | 11:12:22 |
| 13 | THE WITNESS: I -- I don't remember if I | 11:12:27 |
| 14 | read through it first or talked to Marc Toberoff | 11:12:30 |
| 15 | first. I really don't. I don't know what the | 11:12:33 |
| 16 | timeline is on that. | 11:12:35 |
| 17 | BY MR. PETROCELLI: | 11:12:35 |
| 18 | Q. Speaking of timelines, did you read the | 11:12:37 |
| 19 | last document, the attachment to the complaint | 11:12:39 |
| 20 | called the Toberoff timeline? | 11:12:43 |
| 21 | A. Yes, I -- I scanned that. | 11:12:49 |
| 22 | Q. Okay. When you scanned the Toberoff | 11:12:50 |
| 23 | timeline that's attached as Exhibit -- Exhibit A to | 11:12:52 |
| 24 | the complaint, is that the first time you had ever | 11:13:04 |
| 25 | seen the Toberoff timeline? | 11:13:09 |

EXHIBIT 37
1147

MARK WARREN PEARY - 6/29/2011

Page 46

| | | |
|---|---|---|
| 1 | A.  No. | 11:13:11 |
| 2 | Q.  When had you first seen it? | 11:13:14 |
| 3 | A.  I had seen it sometime before.  I -- I | 11:13:20 |
| 4 | don't recall when.  There's so much documents | 11:13:22 |
| 5 | that -- so much discussions, but I was aware of | 11:13:26 |
| 6 | this. | 11:13:30 |
| 7 | Q.  This document? | 11:13:32 |
| 8 | A.  Yes. | 11:13:32 |
| 9 | Q.  Do you know when you first became aware of | 11:13:33 |
| 10 | it? | 11:13:35 |
| 11 | A.  I couldn't give you a date.  I know that I | 11:13:40 |
| 12 | had become aware of it. | 11:13:43 |
| 13 | Q.  When you -- had you received a copy of it | 11:13:51 |
| 14 | prior to seeing it attached to the complaint? | 11:13:54 |
| 15 | A.  I had -- I had seen it.  Some point I know | 11:13:58 |
| 16 | I had seen it.  I don't know if it was -- how it | 11:14:04 |
| 17 | came to me.  I don't recall because I get so much, | 11:14:08 |
| 18 | but I do recall seeing it. | 11:14:13 |
| 19 | Q.  You get so much what? | 11:14:14 |
| 20 | A.  Material. | 11:14:15 |
| 21 | Q.  Okay.  What do you do with the material | 11:14:16 |
| 22 | that you get? | 11:14:18 |
| 23 | A.  If it comes by mail, I keep it.  E-mail, if | 11:14:19 |
| 24 | it -- I look at it.  Keep some of it if I need to, | 11:14:28 |
| 25 | if not, it just gets taken away. | 11:14:32 |

EXHIBIT 37
1148

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  You've -- you delete e-mails? | 11:14:36 |
| 2 | A.  Yes. | 11:14:38 |
| 3 | Q.  Related to this case? | 11:14:39 |
| 4 | A.  Well, if it -- if it isn't some -- some -- | 11:14:40 |
| 5 | some -- some communications I would delete.  Only | 11:14:46 |
| 6 | documents I would save. | 11:14:49 |
| 7 | Q.  When you say only documents you would save, | 11:14:57 |
| 8 | what do you mean by that?  You mean attachments to | 11:15:00 |
| 9 | e-mails? | 11:15:02 |
| 10 | A.  Legal documents.  Things -- things that | 11:15:02 |
| 11 | should be kept. | 11:15:05 |
| 12 | Q.  Have you had this e-mail address for the | 11:15:08 |
| 13 | past three years? | 11:15:10 |
| 14 | A.  Yes. | 11:15:11 |
| 15 | Q.  Do you have any other? | 11:15:13 |
| 16 | A.  No. | 11:15:17 |
| 17 | Q.  Have you been made aware of the need to | 11:15:20 |
| 18 | preserve evidence since the moment this case was | 11:15:23 |
| 19 | filed? | 11:15:27 |
| 20 | A.  Preserve evidence?  Can you clarify? | 11:15:31 |
| 21 | Q.  Have you been made -- have you been made | 11:15:34 |
| 22 | aware of -- that you should not delete e-mails or | 11:15:37 |
| 23 | discard material that could be evidence in this | 11:15:45 |
| 24 | case? | 11:15:49 |
| 25 | A.  I don't believe I've deleted anything that | 11:15:49 |

EXHIBIT 37
1149

MARK WARREN PEARY - 6/29/2011

Page 48

| | | |
|---|---|---|
| 1 | would be evidence. | 11:15:53 |
| 2 | Q.  I asked you if you've been made aware that | 11:15:56 |
| 3 | you should not do so. | 11:15:58 |
| 4 | MR. TOBEROFF:  Objection.  The only way he | 11:15:59 |
| 5 | could be made aware of it is through communications | 11:16:02 |
| 6 | with his attorney, so you're asking him -- | 11:16:04 |
| 7 | MR. PETROCELLI:  Marc, that's not | 11:16:08 |
| 8 | necessarily true. | 11:16:09 |
| 9 | MR. TOBEROFF:  How else could he be made | 11:16:10 |
| 10 | aware? | 11:16:12 |
| 11 | MR. PETROCELLI:  His sister could have told | 11:16:12 |
| 12 | him.  I mean, I would appreciate you don't prompt | 11:16:17 |
| 13 | him that way. | 11:16:17 |
| 14 | MR. TOBEROFF:  Excuse me, I'm not | 11:16:17 |
| 15 | prompting. | 11:16:19 |
| 16 | You could answer the question if -- so | 11:16:19 |
| 17 | long -- regards to whether you were made aware to | 11:16:22 |
| 18 | preserve evidence by someone other than your | 11:16:25 |
| 19 | attorney. | 11:16:27 |
| 20 | THE WITNESS:  So are you asking if -- if I | 11:16:32 |
| 21 | was supposed to save this, if I received it, if I | 11:16:36 |
| 22 | was made aware to save it? | 11:16:40 |
| 23 | BY MR. PETROCELLI: | 11:16:40 |
| 24 | Q.  No. | 11:16:43 |
| 25 | A.  Oh. | 11:16:44 |

Merrill   Corporation   -   Los Angeles
800-826-0277                        www.merrillcorp.com/law

EXHIBIT 37
1150

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  I'm asking something different than that. | 11:16:44 |
| 2 | A.  Oh. | 11:16:46 |
| 3 | Q.  I'm asking whether you have been made aware | 11:16:46 |
| 4 | that you are required to preserve material that | 11:16:51 |
| 5 | could be evidence relevant to this case? | 11:16:55 |
| 6 | MR. TOBEROFF:  And -- and -- | 11:16:58 |
| 7 | BY MR. PETROCELLI: | 11:16:58 |
| 8 | Q.  You can answer that "yes" or "no." | 11:17:00 |
| 9 | MR. TOBEROFF:  And I'm instructing you that | 11:17:01 |
| 10 | you can answer that question with respect to any | 11:17:03 |
| 11 | party except an attorney. | 11:17:06 |
| 12 | MR. PETROCELLI:  And by the way, just for | 11:17:08 |
| 13 | the record, because I don't like to have big | 11:17:11 |
| 14 | arguments on the record -- | 11:17:13 |
| 15 | MR. TOBEROFF:  I agree. | 11:17:14 |
| 16 | MR. PETROCELLI:  -- I don't even agree with | 11:17:14 |
| 17 | that instruction because I believe that's | 11:17:16 |
| 18 | discoverable even if it comes from counsel. | 11:17:18 |
| 19 | Q.  But -- but I can't -- there's no judge | 11:17:20 |
| 20 | here, so I can't force you to answer over your | 11:17:23 |
| 21 | attorney's instructions and I'm going to assume that | 11:17:29 |
| 22 | you're going to abide by your attorney's | 11:17:31 |
| 23 | instructions at all times. | 11:17:34 |
| 24 | Is that right? | 11:17:34 |
| 25 | A.  Yes, that's correct. | 11:17:35 |

EXHIBIT 37
1151

MARK WARREN PEARY - 6/29/2011

Page 50

| | | |
|---|---|---|
| 1 | Q.  Okay. | 11:17:35 |
| 2 | (Unanswered question.) | 11:17:39 |
| 3 | BY MR. PETROCELLI: | 11:17:39 |
| 4 | Q.  Prior to -- on what -- from the time that | 11:17:40 |
| 5 | this lawsuit became aware, other than conversations | 11:17:44 |
| 6 | with Mr. Toberoff, were you aware of an obligation | 11:17:48 |
| 7 | to preserve evidence related to this case? | 11:17:52 |
| 8 | A.  I'm not sure.  I -- | 11:17:57 |
| 9 | Q.  Going back to the first agreement you | 11:18:07 |
| 10 | entered into with Mr. Toberoff or one of his | 11:18:10 |
| 11 | entities, which I think is sometime in | 11:18:13 |
| 12 | November 2001, from that point on, were you aware of | 11:18:16 |
| 13 | an obligation to preserve evidence related in any | 11:18:25 |
| 14 | way to the Joe Shuster termination issue? | 11:18:30 |
| 15 | MR. TOBEROFF:  Same instruction. | 11:18:34 |
| 16 | You can answer outside of communications | 11:18:37 |
| 17 | with your attorney. | 11:18:38 |
| 18 | THE WITNESS:  I'm not -- my understanding | 11:18:42 |
| 19 | is that any documents that need to be saved would be | 11:18:48 |
| 20 | saved by my attorney.  So I wouldn't -- I don't -- I | 11:18:53 |
| 21 | don't know specifically if it was something I'm | 11:19:00 |
| 22 | supposed to save.  I'm not -- I'm not sure I | 11:19:06 |
| 23 | understand the question. | 11:19:08 |
| 24 | BY MR. PETROCELLI: | 11:19:08 |
| 25 | Q.  From whom -- where in your home are the -- | 11:19:15 |

Merrill   Corporation   -   Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1152

MARK WARREN PEARY - 6/29/2011

```
 1    are the papers related to this case or any legal        11:19:23
 2    matter having to do with Joe Shuster?                   11:19:28
 3        A.  I have a filing cabinet.                        11:19:31
 4        Q.  How many drawers?                               11:19:37
 5        A.  Three.                                          11:19:38
 6        Q.  When did you start to collect that material     11:19:41
 7    that is contained in these drawers of this filing       11:19:47
 8    cabinet?                                                11:19:51
 9        A.  It would have been with the original legal      11:19:54
10    agreement.                                              11:19:57
11        Q.  Back in 2001?                                   11:19:59
12        A.  Yes.                                            11:20:00
13        Q.  Where is the cabinet located?                  11:20:01
14        A.  In a study.                                     11:20:03
15        Q.  In your home?                                   11:20:06
16        A.  Yes.                                            11:20:07
17        Q.  And that has all the physical copies of        11:20:08
18    documents?                                              11:20:12
19        A.  Yes.                                            11:20:13
20        Q.  And besides -- it fills up three drawers?      11:20:15
21        A.  No.  It shares it with a host of other         11:20:19
22    papers.                                                 11:20:22
23        Q.  Okay.  And besides that filing cabinet,        11:20:22
24    where else, if any place, do you keep any copies of    11:20:27
25    documents relating to this -- this matter?             11:20:31
```

MARK WARREN PEARY - 6/29/2011

Page 52

| | | | |
|---|---|---|---|
| 1 | A. | Perhaps a lock box. | 11:20:37 |
| 2 | Q. | What's -- | 11:20:43 |
| 3 | A. | A lock box. | 11:20:44 |
| 4 | Q. | What do you mean by "a lock box"? | 11:20:45 |
| 5 | A. | Just a fireproof lock box. | 11:20:46 |
| 6 | Q. | In your house? | 11:20:48 |
| 7 | A. | Yes. | 11:20:49 |
| 8 | Q. | And how big is it? | 11:20:50 |
| 9 | A. | Very small.  Hand-held. | 11:20:51 |
| 10 | Q. | What do you have in there? | 11:20:53 |

11    A.  Oh, original documents of all kinds;     11:20:56

12  titles, house, car titles, everything like that.     11:21:02

13    Q.  As -- as pertains to Joe Shuster, what do     11:21:06

14  you have?     11:21:14

15    A.  Oh.  The -- the original -- original signed     11:21:14

16  agreements, legal agreements and retainers that I     11:21:19

17  have with my attorney.     11:21:24

18    Q.  Anything else?     11:21:30

19    A.  There might be -- the original will might     11:21:30

20  be in there.  I would have -- I'm not sure.     11:21:40

21    Q.  Anything else?     11:21:44

22    A.  Not pertaining to the case, no.     11:21:44

23    Q.  How many agreements are there in your lock     11:21:48

24  box between you and Mr. Toberoff or any of his     11:21:51

25  companies?     11:21:56

EXHIBIT 37
1154

MARK WARREN PEARY - 6/29/2011

| | | | |
|---|---|---|---|
| 1 | A. | There is -- there's only one. | 11:21:57 |
| 2 | Q. | Which one is that? | 11:22:02 |
| 3 | A. | That's the legal retainer. | 11:22:03 |
| 4 | Q. | What's the date of it? | 11:22:07 |
| 5 | A. | It is -- it is active as of 2001. | 11:22:08 |
| 6 | Q. | But created after the fact? | 11:22:19 |
| 7 | A. | Yes. | 11:22:20 |
| 8 | Q. | When was it created? | 11:22:23 |
| 9 | A. | 2004, I believe. | 11:22:24 |
| 10 | Q. | And is that the last document you have | 11:22:32 |
| 11 | signed with Mr. Toberoff or any of his entities? | | 11:22:39 |
| 12 | A. | With Mr. Toberoff. | 11:22:44 |
| 13 | | MR. TOBEROFF:  You mean last agreement or | 11:22:45 |
| 14 | any document? | | 11:22:47 |
| 15 | BY MR. PETROCELLI: | | 11:22:47 |
| 16 | Q. | Is that the last agreement, contract, that | 11:22:49 |
| 17 | you have signed with Mr. Toberoff or any of his | | 11:22:54 |
| 18 | entities, the one in 2004 that you said goes back to | | 11:22:56 |
| 19 | 2001? | | 11:23:03 |
| 20 | A. | Yes. | 11:23:05 |
| 21 | Q. | Have you signed any other agreements at any | 11:23:07 |
| 22 | time since 2004 relating to legal representation | | 11:23:13 |
| 23 | relating to this case in any way? | | 11:23:20 |
| 24 | A. | Yes. | 11:23:22 |
| 25 | Q. | What have you signed? | 11:23:24 |

EXHIBIT 37
1155

MARK WARREN PEARY - 6/29/2011

Page 54

| | | |
|---|---|---|
| 1 | A.   It's a -- | 11:23:25 |
| 2 | MR. TOBEROFF:   Don't go into -- just -- | 11:23:28 |
| 3 | just give a very -- the title or -- don't go into | 11:23:36 |
| 4 | details of the document. | 11:23:40 |
| 5 | THE WITNESS:   It's -- it's called a consent | 11:23:40 |
| 6 | agreement. | 11:23:42 |
| 7 | BY MR. PETROCELLI: | 11:23:42 |
| 8 | Q.   Is that in your lock box? | 11:23:45 |
| 9 | A.   Yes. | 11:23:46 |
| 10 | Q.   Why didn't you mention it earlier when I | 11:23:50 |
| 11 | asked you about the agreements in your lock box? | 11:23:52 |
| 12 | MR. TOBEROFF:   Argumentative. | 11:23:55 |
| 13 | THE WITNESS:   I -- I mentioned what I had | 11:24:01 |
| 14 | recalled. | 11:24:07 |
| 15 | BY MR. PETROCELLI: | 11:24:07 |
| 16 | Q.   So you're now recalling additional | 11:24:10 |
| 17 | documents that you signed? | 11:24:12 |
| 18 | A.   I -- I recall -- I stated what -- the | 11:24:12 |
| 19 | documents I recalled. | 11:24:18 |
| 20 | Q.   You now recall that you signed something | 11:24:20 |
| 21 | called a consent agreement and that's also in your | 11:24:22 |
| 22 | lock box? | 11:24:24 |
| 23 | A.   Yes. | 11:24:25 |
| 24 | Q.   Okay.   When was that signed? | 11:24:26 |
| 25 | A.   That was 2008, I believe. | 11:24:30 |

MARK WARREN PEARY - 6/29/2011

Page 55

| | | |
|---|---|---|
| 1 | Q.  When is the last time you saw it, or a copy | 11:24:38 |
| 2 | of it? | 11:24:42 |
| 3 | A.  Fairly recently I reviewed it last, I don't | 11:24:46 |
| 4 | know, maybe in the last month or so I might have | 11:24:51 |
| 5 | reviewed it. | 11:24:53 |
| 6 | Q.  Why? | 11:24:54 |
| 7 | A.  Because I was thinking about this case | 11:24:54 |
| 8 | because of this. | 11:25:00 |
| 9 | Q.  This deposition? | 11:25:02 |
| 10 | A.  Yes. | 11:25:03 |
| 11 | Q.  Besides the 2008 consent agreement, what | 11:25:06 |
| 12 | else did you review in connection with this | 11:25:09 |
| 13 | deposition? | 11:25:13 |
| 14 | A.  I reviewed my prior deposition for the | 11:25:13 |
| 15 | Siegel case and exhibits.  That's -- that's what | 11:25:19 |
| 16 | I've reviewed. | 11:25:30 |
| 17 | Q.  Did you have a copy of your prior | 11:25:32 |
| 18 | deposition? | 11:25:34 |
| 19 | A.  Yes. | 11:25:36 |
| 20 | Q.  And the exhibits? | 11:25:37 |
| 21 | A.  Yes. | 11:25:38 |
| 22 | Q.  Besides the 2008 consent agreement and your | 11:25:42 |
| 23 | deposition in the Siegel case together with the | 11:25:45 |
| 24 | exhibits of that deposition, what else did you | 11:25:48 |
| 25 | review in connection with this deposition? | 11:25:51 |

EXHIBIT 37
1157

MARK WARREN PEARY - 6/29/2011

Page 56

| | | |
|---|---|---|
| 1 | A. That's -- that's pretty much it. | 11:25:55 |
| 2 | Q. Where did you get the consent agreement to | 11:26:02 |
| 3 | review, from the lock box? | 11:26:04 |
| 4 | A. I -- I -- I -- yes or -- or it could have | 11:26:10 |
| 5 | been a copy. | 11:26:15 |
| 6 | Q. Where -- where was the copy? | 11:26:16 |
| 7 | A. The copy is -- it could be in a separate | 11:26:18 |
| 8 | folder. | 11:26:22 |
| 9 | Q. What -- what's the name of the folder? | 11:26:24 |
| 10 | A. The folder is "Legal." | 11:26:26 |
| 11 | Q. Where is the folder maintained? | 11:26:29 |
| 12 | A. The folder, there could be a copy in there, | 11:26:30 |
| 13 | in the -- in the filing cabinet. | 11:26:35 |
| 14 | Q. Is the 2008 consent agreement the last | 11:26:40 |
| 15 | agreement of any kind that you have signed in | 11:26:44 |
| 16 | connection with either this case or anything having | 11:26:49 |
| 17 | to do with the Joe Shuster termination issue? | 11:26:52 |
| 18 | A. Yes. | 11:26:55 |
| 19 | Q. Okay. Who else signed the 2008 consent | 11:26:57 |
| 20 | agreement? | 11:27:07 |
| 21 | A. Would have been the -- Laura, Joanne | 11:27:07 |
| 22 | Siegel. | 11:27:17 |
| 23 | Q. Laura Siegel and Joanne Siegel? | 11:27:17 |
| 24 | A. Yes. | 11:27:20 |
| 25 | Q. Anyone else? | 11:27:20 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  I think there was -- and -- and my attorney | 11:27:21 |
| 2 | signed it. | 11:27:28 |
| 3 | Q.  You mean Mr. Toberoff? | 11:27:28 |
| 4 | A.  Yes. | 11:27:29 |
| 5 | Q.  And did your mother, Jean Peavy, sign it? | 11:27:30 |
| 6 | A.  I don't recall if she did.  I just -- I | 11:27:33 |
| 7 | didn't read it.  I just scanned the -- the pages.  I | 11:27:44 |
| 8 | didn't -- I don't recall the signature page.  She | 11:27:48 |
| 9 | might have. | 11:27:51 |
| 10 | Q.  Do you know where you were when you signed | 11:27:53 |
| 11 | the document in -- in 2008? | 11:27:55 |
| 12 | A.  Yeah.  When -- when I signed it, I -- I was | 11:27:57 |
| 13 | at home. | 11:28:01 |
| 14 | Q.  And what did you do after you signed it? | 11:28:05 |
| 15 | What did you do with it? | 11:28:08 |
| 16 | A.  Well, an original was FedExed to | 11:28:09 |
| 17 | Mr. Toberoff and I kept another original. | 11:28:14 |
| 18 | Q.  You signed two copies? | 11:28:18 |
| 19 | A.  Yes. | 11:28:20 |
| 20 | Q.  And you put the other original in your lock | 11:28:21 |
| 21 | box? | 11:28:25 |
| 22 | A.  Yes. | 11:28:25 |
| 23 | Q.  Did you ever get back from Mr. Toberoff a | 11:28:26 |
| 24 | version that had more signatures on it? | 11:28:29 |
| 25 | A.  Well, yes, the version in the lock box | 11:28:30 |

Merrill   Corporation   -   Los Angeles

800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1159

MARK WARREN PEARY - 6/29/2011

Page 58

| | | |
|---|---|---|
| 1 | would have all the original signatures. | 11:28:35 |
| 2 | Q.  Why did you review -- why did you pick the | 11:28:48 |
| 3 | 2008 consent agreement to review? | 11:28:51 |
| 4 | A.  Well, before I came I -- I brought out my | 11:28:53 |
| 5 | folder and it says "Legal, Shuster case" and I | 11:28:59 |
| 6 | flipped through documents, just looked at them and | 11:29:06 |
| 7 | said what do I want to bring, what don't I want to | 11:29:08 |
| 8 | bring and -- and that's all.  It was just a cursory | 11:29:10 |
| 9 | review of what I had in there.  And I left most of | 11:29:15 |
| 10 | it at home, so it was just a cursory review of what | 11:29:18 |
| 11 | I had. | 11:29:21 |
| 12 | Q.  What did you bring with you? | 11:29:23 |
| 13 | A.  I brought a copy of the legal retainer as | 11:29:25 |
| 14 | of 2001 and I brought a -- a copy of the first page | 11:29:28 |
| 15 | of the consent agreement and a -- with a cover | 11:29:41 |
| 16 | letter that was a communication between Mr. Toberoff | 11:29:43 |
| 17 | and another attorney, so it was just like the first | 11:29:48 |
| 18 | page of it, just to jog my memory.  And -- | 11:29:53 |
| 19 | Q.  Who was the other attorney? | 11:29:56 |
| 20 | A.  It was -- can I say that?  Just -- it was a | 11:29:57 |
| 21 | communication.  I don't know if that's privileged. | 11:30:04 |
| 22 | MR. TOBEROFF:  Well -- | 11:30:07 |
| 23 | THE WITNESS:  Just -- | 11:30:07 |
| 24 | MR. TOBEROFF:  I -- I think you can -- I | 11:30:08 |
| 25 | think you can give the name of the attorney. | 11:30:12 |

EXHIBIT 37
1160

MARK WARREN PEARY - 6/29/2011

Page 59

| | | |
|---|---|---|
| 1 | THE WITNESS:  It was -- it was -- it was | 11:30:15 |
| 2 | Bergman. | 11:30:16 |
| 3 | BY MR. PETROCELLI: | 11:30:16 |
| 4 | Q.  Michael Bergman? | 11:30:17 |
| 5 | A.  Yes. | 11:30:19 |
| 6 | MR. TOBEROFF:  That's not privileged. | 11:30:19 |
| 7 | THE WITNESS:  No, okay.  Okay.  Yeah. | 11:30:20 |
| 8 | BY MR. PETROCELLI: | 11:30:20 |
| 9 | Q.  When did you arrive in Los Angeles for this | 11:30:24 |
| 10 | deposition? | 11:30:26 |
| 11 | A.  Oh, it was -- it was a Monday afternoon, | 11:30:27 |
| 12 | Monday. | 11:30:33 |
| 13 | Q.  Of this week? | 11:30:34 |
| 14 | A.  Yes, of this week. | 11:30:35 |
| 15 | Q.  And have you had meetings with Mr. Toberoff | 11:30:37 |
| 16 | to get ready for this deposition? | 11:30:42 |
| 17 | A.  Yes.  We talked. | 11:30:43 |
| 18 | Q.  Who attended the meetings? | 11:30:48 |
| 19 | A.  Just Mr. Toberoff. | 11:30:49 |
| 20 | Q.  How long did you meet in total since you | 11:30:52 |
| 21 | arrived Monday afternoon? | 11:30:56 |
| 22 | A.  Yeah, a couple hours. | 11:30:57 |
| 23 | Q.  When?  Monday? | 11:31:03 |
| 24 | A.  No, primarily yesterday. | 11:31:05 |
| 25 | Q.  At Mr. Toberoff's office? | 11:31:10 |

EXHIBIT 37
1161

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A. No, in my hotel. | 11:31:11 |
| 2 | Q. Where is your hotel? | 11:31:13 |
| 3 | A. Hyatt. | 11:31:14 |
| 4 | Q. Right here in Century City? | 11:31:17 |
| 5 | A. Yes. | 11:31:19 |
| 6 | Q. The Hyatt Century Plaza? | 11:31:20 |
| 7 | A. Yes. | 11:31:24 |
| 8 | Q. And were you shown any documents yesterday | 11:31:24 |
| 9 | when you met with Mr. Toberoff? | 11:31:32 |
| 10 | A. We reviewed the prior deposition and | 11:31:35 |
| 11 | exhibits and the -- reviewed our agreements. | 11:31:41 |
| 12 | Q. What agreements? | 11:31:46 |
| 13 | A. The legal retainer and the -- the complaint | 11:31:47 |
| 14 | from DC and the supporting legal documents, quite -- | 11:31:55 |
| 15 | quite a few, but just -- just that stuff. | 11:32:01 |
| 16 | Q. Did you also show Mr. Toberoff the consent | 11:32:07 |
| 17 | agreement pages that you had taken with you? | 11:32:11 |
| 18 | A. Yes, just the -- the copy that I brought to | 11:32:14 |
| 19 | jog my memory. | 11:32:17 |
| 20 | Q. Okay. | 11:32:19 |
| 21 | MR. TOBEROFF: Is this a good time for a | 11:32:33 |
| 22 | short break, Dan, to use the restroom? | 11:32:34 |
| 23 | MR. PETROCELLI: Okay. | 11:32:36 |
| 24 | THE VIDEOGRAPHER: Off the record. The | 11:32:38 |
| 25 | time is 11:31. | 11:32:40 |

EXHIBIT 37
1162

MARK WARREN PEARY - 6/29/2011

Page 61

| | | |
|---|---|---|
| 1 | (Brief recess.) | 11:32:45 |
| 2 | THE VIDEOGRAPHER:  Back on the record at | 11:42:27 |
| 3 | 11:41. | 11:42:38 |
| 4 | BY MR. PETROCELLI: | 11:42:38 |
| 5 | Q.  Mr. Peary, did you travel here alone? | 11:42:41 |
| 6 | A.  Yes. | 11:42:44 |
| 7 | Q.  Besides the -- some of the pages from the | 11:42:50 |
| 8 | 2008 consent agreement and I think you said the -- | 11:42:53 |
| 9 | your legal retention agreement as well -- | 11:43:02 |
| 10 | A.  Yes. | 11:43:02 |
| 11 | Q.  -- did you bring any other documents with | 11:43:04 |
| 12 | you when you took your trip here? | 11:43:05 |
| 13 | A.  No. | 11:43:08 |
| 14 | Q.  Just those two documents? | 11:43:10 |
| 15 | A.  Yes. | 11:43:11 |
| 16 | Q.  Did you take the complaint? | 11:43:14 |
| 17 | A.  No. | 11:43:15 |
| 18 | Q.  Have -- other than the 2008 consent | 11:43:22 |
| 19 | agreement, have you signed any other papers that any | 11:43:24 |
| 20 | member of the Siegel family also has signed? | 11:43:32 |
| 21 | A.  No. | 11:43:37 |
| 22 | Q.  Is that the only one? | 11:43:39 |
| 23 | A.  Yes. | 11:43:39 |
| 24 | Q.  Have you spoken to any member of the Siegel | 11:43:48 |
| 25 | family since this lawsuit was filed back in May of | 11:43:51 |

EXHIBIT 37
1163

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | 2010? | 11:43:56 |
| 2 | A.  2010.  Yes. | 11:44:07 |
| 3 | Q.  With whom? | 11:44:11 |
| 4 | A.  With -- with Joanne before she died.  And | 11:44:14 |
| 5 | once with Laura. | 11:44:18 |
| 6 | Q.  Did you attend funeral services for Joanne? | 11:44:23 |
| 7 | A.  No. | 11:44:26 |
| 8 | Q.  Any member of your family attend? | 11:44:29 |
| 9 | A.  No. | 11:44:31 |
| 10 | Q.  Did you speak to Laura before or after | 11:44:34 |
| 11 | Joanne's passing? | 11:44:36 |
| 12 | A.  After. | 11:44:40 |
| 13 | Q.  Addressing first your -- was it a phone | 11:44:43 |
| 14 | call with Joanne before she passed? | 11:44:46 |
| 15 | A.  Yes. | 11:44:48 |
| 16 | Q.  What was the -- what did you talk about? | 11:44:49 |
| 17 | A.  The phone call after she passed. | 11:44:52 |
| 18 | Q.  The one with Joanne before she died. | 11:44:54 |
| 19 | A.  Oh, Joanne. | 11:44:56 |
| 20 | Q.  That was a phone call? | 11:44:57 |
| 21 | A.  Yes. | 11:44:58 |
| 22 | Q.  What did the two of you talk about? | 11:45:03 |
| 23 | A.  It was more or less friendly chitchat.  We | 11:45:04 |
| 24 | did not discuss any legal issues. | 11:45:11 |
| 25 | Q.  You called her? | 11:45:13 |

MARK WARREN PEARY - 6/29/2011

Page 63

| | | |
|---|---|---|
| 1 | A. She called me.  And she speaks with Jean as | 11:45:14 |
| 2 | well, of course. | 11:45:18 |
| 3 | Q. Did she speak with Jean? | 11:45:19 |
| 4 | A. Yes. | 11:45:20 |
| 5 | Q. So the purpose of the call, as far as you | 11:45:26 |
| 6 | know, was pure pleasantries? | 11:45:28 |
| 7 | A. Yes. | 11:45:30 |
| 8 | Q. Nothing at all discussed about legal | 11:45:33 |
| 9 | issues? | 11:45:35 |
| 10 | A. No.  I didn't discuss any legal issues. | 11:45:35 |
| 11 | Q. Did your mother? | 11:45:39 |
| 12 | A. I'm not aware she did. | 11:45:40 |
| 13 | Q. Was it just the two of you on the phone? | 11:45:43 |
| 14 | A. Yes. | 11:45:46 |
| 15 | Q. Joanne and you? | 11:45:46 |
| 16 | A. Yes. | 11:45:47 |
| 17 | Q. Did you then pass the phone to your mom? | 11:45:48 |
| 18 | A. Yes. | 11:45:49 |
| 19 | Q. And that's the only time you've spoken to | 11:45:54 |
| 20 | Joanne prior to her death for a long period of time? | 11:45:57 |
| 21 | A. I may have spoken with her just a couple | 11:46:01 |
| 22 | times in the recent past. | 11:46:07 |
| 23 | Q. About what? | 11:46:10 |
| 24 | A. It's -- she usually calls -- when she was | 11:46:11 |
| 25 | alive -- she usually calls to speak with Jean and I | 11:46:14 |

EXHIBIT 37
1165

MARK WARREN PEARY - 6/29/2011

Page 64

| | | |
|---|---|---|
| 1 | kind of talk to her like a grandson would talk to a | 11:46:19 |
| 2 | grandmother, kind of -- her faculties weren't, I | 11:46:22 |
| 3 | don't think -- the way old people are, you have to | 11:46:28 |
| 4 | be kind of slow and friendly, so it's friendly, kind | 11:46:33 |
| 5 | of grandson-to-grandmother-type talk basically.  How | 11:46:36 |
| 6 | are you, what -- what -- what are you doing, you | 11:46:41 |
| 7 | know, and what -- what's going on, what are your -- | 11:46:43 |
| 8 | pleasantries.  No legal. | 11:46:48 |
| 9 | Q.  Were you very close to her? | 11:46:51 |
| 10 | A.  I was -- I knew her.  I wouldn't say close, | 11:46:53 |
| 11 | but I did know her. | 11:46:59 |
| 12 | Q.  When was the last time you saw her before | 11:47:01 |
| 13 | she passed? | 11:47:04 |
| 14 | A.  That would have been in 2008. | 11:47:04 |
| 15 | Q.  What was the occasion? | 11:47:16 |
| 16 | A.  Oh.  It was -- there was a Summer of | 11:47:17 |
| 17 | Superman event in Cleveland. | 11:47:22 |
| 18 | Q.  Did you attend a mediation in April 2010 | 11:47:28 |
| 19 | where she was also present? | 11:47:36 |
| 20 | A.  Yes. | 11:47:37 |
| 21 | Q.  So you saw her then, too? | 11:47:41 |
| 22 | A.  Yes. | 11:47:42 |
| 23 | Q.  Did you spend any time with her before or | 11:47:44 |
| 24 | after the mediation session? | 11:47:48 |
| 25 | A.  No. | 11:47:53 |

Merrill   Corporation   -   Los Angeles
800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37
1166

MARK WARREN PEARY - 6/29/2011

Page 65

| | | |
|---|---|---|
| 1 | Q. Was that mediation session in April 2010 | 11:47:54 |
| 2 | the last time you saw her? | 11:47:56 |
| 3 | A. In person, yes. | 11:48:00 |
| 4 | Q. You said you spoke with her daughter, | 11:48:02 |
| 5 | Laura? | 11:48:04 |
| 6 | A. Yes. | 11:48:05 |
| 7 | Q. When was that? | 11:48:07 |
| 8 | A. After she died. | 11:48:09 |
| 9 | Q. What was the purpose of that? Phone call? | 11:48:11 |
| 10 | A. Yes. | 11:48:14 |
| 11 | Q. To give your condolences? | 11:48:16 |
| 12 | A. Yes. | 11:48:17 |
| 13 | Q. And have you spoken to Laura since then? | 11:48:18 |
| 14 | A. No. | 11:48:25 |
| 15 | Q. You identified the document that the | 11:48:28 |
| 16 | Siegels and you signed as a consent agreement. | 11:48:30 |
| 17 | Is the word -- is that the title of the | 11:48:34 |
| 18 | document? | 11:48:37 |
| 19 | A. I believe the title, if I'm allowed to say | 11:48:43 |
| 20 | that -- | 11:48:45 |
| 21 | MR. TOBEROFF: Objection. Actually, you | 11:48:46 |
| 22 | can -- you can testify as to the title, but that's | 11:48:50 |
| 23 | it. Not to any contents of the document. | 11:48:53 |
| 24 | THE WITNESS: I recall the title says | 11:48:57 |
| 25 | "Superman Agreement." | 11:48:59 |

Merrill   Corporation  -  Los Angeles
800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37
1167

MARK WARREN PEARY - 6/29/2011

Page 66

```
 1    BY MR. PETROCELLI:                              11:48:59

 2        Q.   Why did you use the word consent agreement?   11:49:03

 3        A.   It's --                                11:49:08

 4             MR. TOBEROFF:   You can only answer if that   11:49:11

 5    answer is not based on communication with your   11:49:12

 6    attorney.                                        11:49:14

 7             THE WITNESS:   It's -- it's -- it's all   11:49:15

 8    based on my communication with my attorney.      11:49:17

 9             (Unanswered question.)                  11:49:17

10    BY MR. PETROCELLI:                               11:49:17

11        Q.   What's --                               11:49:23

12        A.   The term.                               11:49:23

13        Q.   The use of the term?                    11:49:25

14        A.   The use of the term, yes.               11:49:26

15        Q.   When you signed the 2008 consent agreement,   11:49:30

16    did you -- what did you understand the purpose of   11:49:50

17    that agreement to be?  Why were you signing it?   11:49:52

18             MR. TOBEROFF:   You can only answer that --   11:49:57

19    actually, I instruct you not to answer because the   11:49:58

20    sole -- your sole understanding is through         11:50:01

21    communications with me.                          11:50:03

22             (Unanswered question.)                  11:50:04

23    BY MR. PETROCELLI:                               11:50:04

24        Q.   You read the document before you signed it,   11:50:05

25    didn't you?                                      11:50:05
```

MARK WARREN PEARY - 6/29/2011

Page 67

| | | |
|---|---|---|
| 1 | A.  Yes, but I'll have to follow my attorney's | 11:50:09 |
| 2 | advice. | 11:50:11 |
| 3 | Q.  Well, based on your reading of the | 11:50:12 |
| 4 | document, what did you understand the purpose of | 11:50:14 |
| 5 | your signing it to be? | 11:50:16 |
| 6 | MR. TOBEROFF:  I instruct you not to answer | 11:50:18 |
| 7 | if you -- put it this way:  You can only answer the | 11:50:19 |
| 8 | question if you have an understanding independent of | 11:50:23 |
| 9 | your conversations with me. | 11:50:24 |
| 10 | THE WITNESS:  Well, all my understanding is | 11:50:28 |
| 11 | based on my communication with my attorney, so I | 11:50:30 |
| 12 | can't say anything. | 11:50:32 |
| 13 | (Unanswered question.) | 11:50:33 |
| 14 | BY MR. PETROCELLI: | 11:50:33 |
| 15 | Q.  Are you saying that when -- when you read | 11:50:34 |
| 16 | the document, you derived absolutely no | 11:50:36 |
| 17 | understanding from reading the words? | 11:50:39 |
| 18 | A.  My understanding is intricately bound with | 11:50:41 |
| 19 | my communications with Marc Toberoff. | 11:50:43 |
| 20 | Q.  Can you answer my question? | 11:50:46 |
| 21 | A.  I don't believe I can. | 11:50:47 |
| 22 | MR. TOBEROFF:  He did. | 11:50:49 |
| 23 | MR. PETROCELLI:  It wasn't responsive to my | 11:50:52 |
| 24 | question. | 11:50:53 |
| 25 | Q.  My question was, when you read the document | 11:50:54 |

Merrill   Corporation   -   Los Angeles
800-826-0277                            www.merrillcorp.com/law

EXHIBIT 37
1169

MARK WARREN PEARY - 6/29/2011

Page 68

| | | |
|---|---|---|
| 1 | are you saying that you drew no understanding at all | 11:50:57 |
| 2 | from reading the words on the page of the document? | 11:51:00 |
| 3 | A.  It's -- it's all based upon -- my | 11:51:07 |
| 4 | understanding is intricately bound to my | 11:51:10 |
| 5 | communications with my attorney. | 11:51:14 |
| 6 | Q.  Are you saying that had you not spoken to | 11:51:19 |
| 7 | your attorney, you would have had no idea what -- | 11:51:20 |
| 8 | what you were signing? | 11:51:26 |
| 9 | A.  What, if I had no idea? | 11:51:28 |
| 10 | Q.  Right.  You signed a -- a document together | 11:51:30 |
| 11 | with other individuals.  Are you saying that you did | 11:51:34 |
| 12 | not understand what you were signing except for what | 11:51:38 |
| 13 | Marc Toberoff had to tell you? | 11:51:41 |
| 14 | MR. TOBEROFF:  Asked and answered. | 11:51:42 |
| 15 | Misstates his testimony. | 11:51:43 |
| 16 | THE WITNESS:  My understanding is -- is | 11:51:47 |
| 17 | bound up, what -- whatever I have is bound up. | 11:51:52 |
| 18 | BY MR. PETROCELLI: | 11:51:52 |
| 19 | Q.  I appreciate you keep repeating that phrase | 11:51:56 |
| 20 | that your understanding is bound up or intricately | 11:52:00 |
| 21 | bound up.  I'm asking you something different than | 11:52:03 |
| 22 | that.  I'm not required to simply accept that | 11:52:05 |
| 23 | phrase. | 11:52:07 |
| 24 | A.  Uh-huh. | 11:52:07 |
| 25 | Q.  Did you understand that you were entering | 11:52:08 |

EXHIBIT 37
1170

MARK WARREN PEARY - 6/29/2011

Page 69

| | | |
|---|---|---|
| 1 | into a contract, an agreement, with the Siegels when | 11:52:12 |
| 2 | you signed the document? | 11:52:17 |
| 3 | A.  Yes. | 11:52:23 |
| 4 | Q.  Did you understand that the agreement that | 11:52:24 |
| 5 | you were entering into required that you could not | 11:52:25 |
| 6 | settle any claim with DC Comics without the consent | 11:52:32 |
| 7 | of the Siegels? | 11:52:38 |
| 8 | MR. TOBEROFF:  I instruct you not to | 11:52:39 |
| 9 | answer.  The document has been held to be privileged | 11:52:41 |
| 10 | and off limits and they can't ask you questions | 11:52:44 |
| 11 | about the contents of the document.  Instruct you | 11:52:47 |
| 12 | not to answer. | 11:52:49 |
| 13 | (Unanswered question.) | 11:52:50 |
| 14 | MR. PETROCELLI:  I don't agree with that as | 11:52:50 |
| 15 | you well know. | 11:52:53 |
| 16 | Q.  Is there any arrangement whereby you would | 11:52:54 |
| 17 | have the authority to approve any kind of settlement | 11:52:57 |
| 18 | that Joanne Siegel might enter into with DC Comics? | 11:52:59 |
| 19 | MR. TOBEROFF:  Instruct you not to answer. | 11:53:03 |
| 20 | (Unanswered question.) | 11:53:07 |
| 21 | MR. PETROCELLI:  Marc, you allowed that | 11:53:07 |
| 22 | verbatim question to be answered at the first -- at | 11:53:09 |
| 23 | the Siegel session of his deposition. | 11:53:12 |
| 24 | MR. TOBEROFF:  I'm instructing him not to | 11:53:13 |
| 25 | answer and as you suggested we shouldn't debate | 11:53:15 |

EXHIBIT 37
1171

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | these things in the deposition. | 11:53:17 |
| 2 | BY MR. PETROCELLI: | 11:53:17 |
| 3 | Q.  So is it possible for Joanne Siegel -- | 11:53:22 |
| 4 | MR. TOBEROFF:  I'm going to instruct | 11:53:23 |
| 5 | him not to -- just to shorten -- shorten this, I | 11:53:25 |
| 6 | will instruct him not to answer any questions | 11:53:27 |
| 7 | regarding the substance of the consent agreement. | 11:53:29 |
| 8 | BY MR. PETROCELLI: | 11:53:29 |
| 9 | Q.  So is it possible for Joanne Siegel and | 11:53:33 |
| 10 | Laura Siegel-Larson to settle their case with DC | 11:53:36 |
| 11 | Comics and you would have no say so in that? | 11:53:40 |
| 12 | Is that accurate? | 11:53:41 |
| 13 | MR. TOBEROFF:  I instruct you not to answer | 11:53:42 |
| 14 | on the basis of attorney-client privilege. | 11:53:48 |
| 15 | (Unanswered question.) | 11:53:48 |
| 16 | BY MR. PETROCELLI: | 11:53:48 |
| 17 | Q.  And if they were to settle -- and if they | 11:53:50 |
| 18 | were to settle and receive money from DC Comics, is | 11:53:50 |
| 19 | there any arrangement by which you would receive any | 11:53:53 |
| 20 | of that money? | 11:53:56 |
| 21 | MR. TOBEROFF:  Same instruction. | 11:53:57 |
| 22 | (Unanswered question.) | 11:53:57 |
| 23 | BY MR. PETROCELLI: | 11:53:57 |
| 24 | Q.  Are you able right now, on behalf of the | 11:54:06 |
| 25 | Joe Shuster estate, to enter into an agreement with | 11:54:09 |

EXHIBIT 37

MARK WARREN PEARY - 6/29/2011

Page 71

| | | |
|---|---|---|
| 1 | DC regarding the Shuster termination interests | 11:54:12 |
| 2 | without the consent of any -- anyone else? | 11:54:17 |
| 3 | MR. TOBEROFF:  Same instruction. | 11:54:22 |
| 4 | Attorney-client privilege. | 11:54:24 |
| 5 | (Unanswered question.) | 11:54:25 |
| 6 | THE WITNESS:  I'll have to follow my | 11:54:26 |
| 7 | attorney's advice. | 11:54:27 |
| 8 | BY MR. PETROCELLI: | 11:54:27 |
| 9 | Q.  Do you have a current agreement to share | 11:54:32 |
| 10 | with any member of the Siegel family any settlement | 11:54:36 |
| 11 | or other recoveries having to do with the Superman | 11:54:39 |
| 12 | termination interests? | 11:54:43 |
| 13 | MR. TOBEROFF:  I instruct you not to answer | 11:54:47 |
| 14 | based on privilege. | 11:54:48 |
| 15 | (Unanswered question.) | 11:54:49 |
| 16 | MR. PETROCELLI:  When you say "based on | 11:54:57 |
| 17 | privilege," to be clear, what privilege, Mr. -- are | 11:54:59 |
| 18 | you talking about the attorney-client privilege? | 11:55:02 |
| 19 | MR. TOBEROFF:  Attorney-client privilege, | 11:55:04 |
| 20 | work product, the privilege that was upheld by | 11:55:05 |
| 21 | Magistrate Suresky, Judge Larson in your motion that | 11:55:10 |
| 22 | was denied as to obtaining the consent agreement. | 11:55:14 |
| 23 | If you can't obtain the consent agreement because | 11:55:17 |
| 24 | you're not entitled to view the substance of the | 11:55:21 |
| 25 | consent agreement, you're not entitled to get at | 11:55:24 |

MARK WARREN PEARY - 6/29/2011

Page 72

| | | |
|---|---|---|
| 1 | that substance through questioning my client. | 11:55:27 |
| 2 | MR. PETROCELLI:  We -- we disagree. | 11:55:28 |
| 3 | MR. TOBEROFF:  That's fine. | 11:55:33 |
| 4 | BY MR. PETROCELLI: | 11:55:33 |
| 5 | Q.  Is the consent agreement that you signed in | 11:55:34 |
| 6 | 2008 still in effect? | 11:55:36 |
| 7 | A.  Yes. | 11:55:39 |
| 8 | Q.  Have you had any discussions with any | 11:55:48 |
| 9 | member of the Siegel family about it at any time | 11:55:50 |
| 10 | both before or after signing it? | 11:55:55 |
| 11 | A.  Not directly. | 11:55:59 |
| 12 | Q.  What does that mean? | 11:56:00 |
| 13 | A.  All my discussions are through my attorney. | 11:56:01 |
| 14 | Q.  How do you have a discussion with the | 11:56:04 |
| 15 | Siegels through the attorney? | 11:56:08 |
| 16 | A.  Then the answer is no. | 11:56:09 |
| 17 | Q.  What did you mean when you said not | 11:56:11 |
| 18 | directly, through your attorney? | 11:56:13 |
| 19 | A.  All -- all my communication about the | 11:56:14 |
| 20 | agreement is -- is through my discussions with my | 11:56:15 |
| 21 | attorney and what he has told me the Siegels have | 11:56:19 |
| 22 | communicated.  That's what I mean. | 11:56:26 |
| 23 | Q.  Have you ever had a -- a discussion with | 11:56:28 |
| 24 | your mom about the consent agreement? | 11:56:43 |
| 25 | A.  She -- she -- I may have -- she has a -- | 11:56:56 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1174

MARK WARREN PEARY - 6/29/2011

Page 73

| | | |
|---|---|---|
| 1 | little interest in this.  Her faculties, as I said, | 11:57:04 |
| 2 | are -- are poor and I don't recall if I've mentioned | 11:57:08 |
| 3 | it to her or not because of its detail. | 11:57:14 |
| 4 | Q.  Back in 2008 she was of sound mind, | 11:57:19 |
| 5 | correct? | 11:57:19 |
| 6 | A.  That's when she had her stroke. | 11:57:25 |
| 7 | Q.  Before or after the consent agreement? | 11:57:27 |
| 8 | A.  I don't -- I don't recall.  I don't -- I | 11:57:29 |
| 9 | don't know if I've ever discussed it with her or | 11:57:38 |
| 10 | not.  I mean, she's not -- she's not that interested | 11:57:41 |
| 11 | in legal matters.  I know that she -- she -- she | 11:57:46 |
| 12 | knows about it.  I don't know if she understands it. | 11:57:53 |
| 13 | Q.  How do you know she knows about it? | 11:58:00 |
| 14 | A.  I -- I -- she would have been aware of it. | 11:58:01 |
| 15 | Q.  How do you know that? | 11:58:05 |
| 16 | A.  Well, I -- as far as I know, she -- as far | 11:58:05 |
| 17 | as -- as far as I can remember, I probably have said | 11:58:10 |
| 18 | something.  That's all I can say.  I mean, that's -- | 11:58:14 |
| 19 | Q.  What did you say to her? | 11:58:17 |
| 20 | A.  I -- if I had said anything, it would just | 11:58:20 |
| 21 | have been that there's -- I don't remember what I | 11:58:23 |
| 22 | said to her, frankly.  I mean, I don't know what to | 11:58:29 |
| 23 | say because I don't -- I don't remember my words. | 11:58:31 |
| 24 | She doesn't really -- | 11:58:33 |
| 25 | MR. TOBEROFF:  Don't speculate. | 11:58:34 |

EXHIBIT 37
1175

MARK WARREN PEARY - 6/29/2011

Page 74

| | | |
|---|---|---|
| 1 | THE WITNESS:  Right.  I -- I -- it would be | 11:58:35 |
| 2 | speculating.  I don't remember. | 11:58:37 |
| 3 | MR. PETROCELLI:  Don't interrupt the | 11:58:43 |
| 4 | witness, please. | 11:58:44 |
| 5 | Q.  Have you -- do you think the consent | 11:58:49 |
| 6 | agreement was an important document at the time that | 11:58:55 |
| 7 | you signed it? | 11:58:58 |
| 8 | A.  Yes. | 11:58:59 |
| 9 | Q.  Did you think your mother had a right to | 11:59:01 |
| 10 | know what it meant? | 11:59:02 |
| 11 | A.  Did she have a right to know? | 11:59:08 |
| 12 | Q.  Yeah.  Do you think she was entitled to | 11:59:11 |
| 13 | know what -- what document you were signing that was | 11:59:12 |
| 14 | important? | 11:59:16 |
| 15 | A.  She -- she's not directly involved in this | 11:59:19 |
| 16 | case, so I don't know how to answer that.  She -- | 11:59:23 |
| 17 | she doesn't -- there's not a legal right. | 11:59:29 |
| 18 | Q.  I didn't mean a legal right. | 11:59:36 |
| 19 | A.  Yeah. | 11:59:36 |
| 20 | Q.  I mean, do you think she would want to know | 11:59:38 |
| 21 | that kind of information? | 11:59:39 |
| 22 | A.  Would she want to know, yeah.  Well, | 11:59:40 |
| 23 | that's -- | 11:59:47 |
| 24 | MR. TOBEROFF:  Calls for speculation. | 11:59:47 |
| 25 | BY MR. PETROCELLI: | 11:59:48 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37

MARK WARREN PEARY - 6/29/2011

Page 75

| | | |
|---|---|---|
| 1 | Q. Did you explain to her what it meant? | 11:59:48 |
| 2 | MR. TOBEROFF: Asked and answered. | 11:59:51 |
| 3 | THE WITNESS: Just -- just what I said | 11:59:52 |
| 4 | before. I can't remember exactly what I said. | 11:59:54 |
| 5 | BY MR. PETROCELLI: | 11:59:54 |
| 6 | Q. What's your best recollection of what you | 11:59:58 |
| 7 | told her? | 11:59:59 |
| 8 | A. That -- that there is some agreement that | 12:00:00 |
| 9 | we are making with the Siegels. That would have | 12:00:09 |
| 10 | been about the extent of it. | 12:00:12 |
| 11 | Q. Well, you explained to her that the | 12:00:14 |
| 12 | agreement had to do with Superman, right? | 12:00:17 |
| 13 | A. Yes. | 12:00:17 |
| 14 | Q. And you explained to her that it had to do | 12:00:20 |
| 15 | with settling your case, right? | 12:00:22 |
| 16 | A. I suppose. That's about it. I wouldn't | 12:00:29 |
| 17 | have said any more. | 12:00:33 |
| 18 | Q. Who -- who's the beneficiary of any money | 12:00:46 |
| 19 | that comes in as a result of the Superman | 12:00:51 |
| 20 | termination interest that Joe Shuster has asserted? | 12:00:53 |
| 21 | Who gets the money? | 12:01:00 |
| 22 | A. We plan on any proceeds would go into a | 12:01:01 |
| 23 | trust. | 12:01:06 |
| 24 | Q. Well, your mother is the beneficiary, | 12:01:08 |
| 25 | correct? | 12:01:08 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  According to the will.  She -- she's | 12:01:13 |
| 2 | expressed that she wants me and my sister to -- to | 12:01:20 |
| 3 | have -- to have anything through a trust. | 12:01:25 |
| 4 | Q.  Under Joe Shuster's will, she's the sole | 12:01:29 |
| 5 | beneficiary, correct? | 12:01:32 |
| 6 | A.  Yes. | 12:01:33 |
| 7 | Q.  Okay.  And are you saying that your mother | 12:01:35 |
| 8 | has in turn created testamentary documents that pass | 12:01:39 |
| 9 | the interest to you and your sister? | 12:01:46 |
| 10 | A.  She -- she has expressed that she wants any | 12:01:47 |
| 11 | proceeds to go into a trust for me and my sister. | 12:01:52 |
| 12 | Q.  Does such a trust exist? | 12:01:56 |
| 13 | A.  Not yet. | 12:01:58 |
| 14 | Q.  Does your mother have a will? | 12:02:00 |
| 15 | A.  Yes. | 12:02:02 |
| 16 | Q.  Have you ever seen it? | 12:02:03 |
| 17 | A.  Yes. | 12:02:04 |
| 18 | Q.  Does it name you as the executor? | 12:02:07 |
| 19 | A.  I believe. | 12:02:10 |
| 20 | Q.  Does it distribute her estate equally | 12:02:16 |
| 21 | between you and your sister, Dawn? | 12:02:20 |
| 22 | A.  I believe. | 12:02:25 |
| 23 | Q.  Does it distribute the estate directly to | 12:02:27 |
| 24 | Dawn and you or to trusts of which Dawn and you are | 12:02:32 |
| 25 | beneficiaries? | 12:02:36 |

EXHIBIT 37
1178

MARK WARREN PEARY – 6/29/2011

| | | |
|---|---|---|
| 1 | A.   It doesn't -- it doesn't state "trust" in | 12:02:37 |
| 2 | the will, but that's -- that's her intention. | 12:02:43 |
| 3 | Q.   How do you know that's her intention? | 12:02:46 |
| 4 | A.   We've talked about it. | 12:02:50 |
| 5 | Q.   When did she tell you that she wanted to | 12:02:52 |
| 6 | create trusts for you to receive her testamentary | 12:02:55 |
| 7 | disposition? | 12:02:58 |
| 8 | A.   Well, let me see, she wants -- she wants us | 12:02:59 |
| 9 | to -- to be provided for and secure and she's 90 | 12:03:06 |
| 10 | years old and she's had a stroke so she knows she's | 12:03:13 |
| 11 | not going to be around forever and she doesn't | 12:03:16 |
| 12 | really have any need for -- for money.  So we've | 12:03:18 |
| 13 | discussed it for -- well, we've probably -- we've | 12:03:25 |
| 14 | probably discussed it for a few years. | 12:03:31 |
| 15 | Q.   In the last few years? | 12:03:33 |
| 16 | A.   Yes. | 12:03:34 |
| 17 | Q.   And when you've discussed it, given the | 12:03:35 |
| 18 | comments you've made about your mom's mental state, | 12:03:37 |
| 19 | do you believe that she understood what she was | 12:03:41 |
| 20 | talking about? | 12:03:43 |
| 21 | MR. TOBEROFF:  Assumes facts. | 12:03:44 |
| 22 | THE WITNESS:  Yes, she understands. | 12:03:48 |
| 23 | BY MR. PETROCELLI: | 12:03:48 |
| 24 | Q.   In talking about things like trusts and | 12:03:49 |
| 25 | such, she's competent to discuss those topics, in | 12:03:51 |

EXHIBIT 37
1179

MARK WARREN PEARY - 6/29/2011

Page 78

| | | |
|---|---|---|
| 1 | your view? | 12:03:51 |
| 2 | A.  She understands the -- | 12:03:55 |
| 3 | MR. TOBEROFF:  Excuse me.  You have to | 12:03:56 |
| 4 | leave time for me to object after he asks the | 12:03:57 |
| 5 | question.  You got to pause after he asks the | 12:04:01 |
| 6 | question so I have time to object. | 12:04:03 |
| 7 | The question assumes facts. | 12:04:06 |
| 8 | BY MR. PETROCELLI: | 12:04:06 |
| 9 | Q.  You can answer. | 12:04:10 |
| 10 | A.  Okay. | 12:04:11 |
| 11 | Q.  Want me to repeat the question? | 12:04:13 |
| 12 | A.  Yes. | 12:04:14 |
| 13 | Q.  Yeah.  When -- when you have been talking | 12:04:16 |
| 14 | with her about -- in the last couple of years | 12:04:17 |
| 15 | regarding such issues as trusts for your benefit and | 12:04:19 |
| 16 | Dawn's benefit, do you believe that she was | 12:04:22 |
| 17 | competent to talk about and understand those ideas? | 12:04:26 |
| 18 | MR. TOBEROFF:  Misstates testimony. | 12:04:31 |
| 19 | THE WITNESS:  I -- I believe she | 12:04:33 |
| 20 | understands the idea.  I know what her intentions | 12:04:38 |
| 21 | are.  She's expressed them to me. | 12:04:41 |
| 22 | BY MR. PETROCELLI: | 12:04:41 |
| 23 | Q.  Verbally? | 12:04:43 |
| 24 | A.  Yes. | 12:04:44 |
| 25 | Q.  What has she said to you? | 12:04:45 |

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  She wants us to be provided for, to be | 12:04:46 |
| 2 | secure. | 12:04:49 |
| 3 | Q.  You already are provided for her in her | 12:04:52 |
| 4 | will, right? | 12:04:54 |
| 5 | A.  I'm in her -- her will -- | 12:04:57 |
| 6 | Q.  Right. | 12:04:58 |
| 7 | A.  -- yes. | 12:04:59 |
| 8 | Q.  Why -- why the specific -- in other words, | 12:05:00 |
| 9 | did she discuss with you that she wants you to | 12:05:03 |
| 10 | receive the inheritance together with Dawn through a | 12:05:05 |
| 11 | trust? | 12:05:07 |
| 12 | A.  That's -- that's what we have discussed. | 12:05:10 |
| 13 | Q.  Who is the "we"? | 12:05:12 |
| 14 | A.  Me and my mother. | 12:05:14 |
| 15 | Q.  Has Dawn been part of the discussion? | 12:05:15 |
| 16 | A.  I -- I don't know specifically about | 12:05:17 |
| 17 | trusts.  But she knows she's a part of this. | 12:05:22 |
| 18 | Q.  Is there any particular discussion that | 12:05:25 |
| 19 | you've had about trusts as to why it would be a | 12:05:28 |
| 20 | trust rather than just a bequest under a will? | 12:05:31 |
| 21 | A.  As to like in financial planning terms, | 12:05:34 |
| 22 | that kind of thing? | 12:05:38 |
| 23 | Q.  Yes. | 12:05:38 |
| 24 | A.  It's -- the idea is it's a sensible means | 12:05:40 |
| 25 | of pre- -- preserving assets so that they're not | 12:05:46 |

MARK WARREN PEARY - 6/29/2011

Page 80

| | | |
|---|---|---|
| 1 | wasted and squandered, so it's a long-term thing and | 12:05:51 |
| 2 | not wasted away. | 12:05:58 |
| 3 | Q.  Wasted by you and Dawn? | 12:06:00 |
| 4 | A.  Yes. | 12:06:01 |
| 5 | Q.  Has your mom expressed reservations that | 12:06:04 |
| 6 | you or Dawn might waste the money absent a trust? | 12:06:07 |
| 7 | A.  No.  That's -- that is a -- the purpose of | 12:06:11 |
| 8 | a trust, to preserve assets. | 12:06:14 |
| 9 | Q.  Do you have an estate or trust lawyer? | 12:06:17 |
| 10 | A.  Yes. | 12:06:19 |
| 11 | Q.  Who is it? | 12:06:23 |
| 12 | A.  The -- there's an attorney that established | 12:06:27 |
| 13 | the Shuster estate. | 12:06:29 |
| 14 | Q.  Here in Los Angeles, the probate attorney? | 12:06:32 |
| 15 | A.  I believe so. | 12:06:35 |
| 16 | Q.  And have you consulted him regarding estate | 12:06:37 |
| 17 | planning in recent years? | 12:06:40 |
| 18 | A.  No.  Not on that issue, no. | 12:06:42 |
| 19 | Q.  Not on the issue of the trust? | 12:06:45 |
| 20 | A.  That's correct. | 12:06:46 |
| 21 | Q.  Have you, in discussions with your mother | 12:06:48 |
| 22 | about the will, the trust and the financial | 12:06:51 |
| 23 | planning, ever discussed how much money might be | 12:06:54 |
| 24 | received one day for your benefit and Dawn's | 12:06:59 |
| 25 | benefit? | 12:07:02 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1182

MARK WARREN PEARY - 6/29/2011

Page 81

| | | |
|---|---|---|
| 1 | A. No. We haven't got into that. | 12:07:03 |
| 2 | Q. For example, have you said, you know, it | 12:07:10 |
| 3 | would be in -- approximately 5 million or 10 million | 12:07:12 |
| 4 | or 100 million or any numbers, discussed in your | 12:07:15 |
| 5 | conversations with your mother? | 12:07:22 |
| 6 | A. I don't recall getting into figures with | 12:07:23 |
| 7 | her. We just -- no, I don't. | 12:07:29 |
| 8 | Q. Have you ever had anybody try to do an | 12:07:34 |
| 9 | estimate for you as to how much you might recover | 12:07:38 |
| 10 | one day as a result of Joe Shuster's asserted | 12:07:40 |
| 11 | termination interests? | 12:07:44 |
| 12 | A. I -- I know -- | 12:07:48 |
| 13 | MR. TOBEROFF: You -- you could answer that | 12:07:49 |
| 14 | question solely if it's outside of the | 12:07:51 |
| 15 | attorney-client relationship. | 12:07:57 |
| 16 | THE WITNESS: All I know is that my | 12:08:00 |
| 17 | attorney, Marc Toberoff, has -- | 12:08:04 |
| 18 | MR. TOBEROFF: Don't -- don't discuss what | 12:08:06 |
| 19 | your attorney has done. | 12:08:07 |
| 20 | THE WITNESS: Okay. Okay. | 12:08:08 |
| 21 | MR. TOBEROFF: The -- | 12:08:09 |
| 22 | THE WITNESS: I don't have any -- no, I | 12:08:10 |
| 23 | don't have any idea of economic value outside of my | 12:08:12 |
| 24 | discussions, no. | 12:08:16 |
| 25 | BY MR. PETROCELLI: | 12:08:16 |

EXHIBIT 37
1183

MARK WARREN PEARY - 6/29/2011

Page 82

| | | |
|---|---|---|
| 1 | Q.  Have you ever met or spoken or communicated | 12:08:17 |
| 2 | with anybody who you understood to be estimating the | 12:08:20 |
| 3 | value of the termination interest? | 12:08:26 |
| 4 | A.  No. | 12:08:27 |
| 5 | Q.  Have you ever provided any information to | 12:08:29 |
| 6 | any such person? | 12:08:31 |
| 7 | A.  No. | 12:08:31 |
| 8 | Q.  Did you tell your mother in your | 12:08:38 |
| 9 | conversations over the years, and in particular | 12:08:42 |
| 10 | about the consent agreement, that any agreement with | 12:08:46 |
| 11 | DC or settlement with DC requires the consent of the | 12:08:52 |
| 12 | Siegels? | 12:08:56 |
| 13 | THE WITNESS:  Am I allowed to answer that? | 12:09:05 |
| 14 | Is that -- | 12:09:07 |
| 15 | BY MR. PETROCELLI: | 12:09:07 |
| 16 | Q.  You are. | 12:09:09 |
| 17 | MR. TOBEROFF:  Actually, I'll let you | 12:09:09 |
| 18 | answer that question without waiver of any privilege | 12:09:27 |
| 19 | that could apply. | 12:09:31 |
| 20 | THE WITNESS:  Okay.  So the question being | 12:09:31 |
| 21 | she -- | 12:09:34 |
| 22 | MR. PETROCELLI:  Can you repeat the | 12:09:50 |
| 23 | question. | 12:09:51 |
| 24 | (The reporter read the record | 12:09:51 |
| 25 | as follows: | 12:09:51 |

EXHIBIT 37
1184

MARK WARREN PEARY - 6/29/2011

Page 83

| | | |
|---|---|---|
| 1 | "QUESTION:  Did you tell your | 12:08:40 |
| 2 | mother in your conversations over | 12:08:41 |
| 3 | the years and in particular about | 12:08:44 |
| 4 | the consent agreement that any | 12:08:46 |
| 5 | agreement with DC or settlement | 12:08:51 |
| 6 | with DC requires the consent of the | 12:08:54 |
| 7 | Siegels?") | 12:08:56 |
| 8 | THE WITNESS:  Yes. | 12:09:52 |
| 9 | BY MR. PETROCELLI: | 12:09:52 |
| 10 | Q.  What did you say in that regard? | 12:09:54 |
| 11 | A.  Pretty much what -- what you said there. | 12:09:59 |
| 12 | Q.  Did you discuss with her what would happen | 12:10:04 |
| 13 | if, for example, you wanted to do a settlement or an | 12:10:12 |
| 14 | agreement with DC but the Siegels did not, how you | 12:10:16 |
| 15 | would deal with that circumstance? | 12:10:19 |
| 16 | A.  I don't recall going into that detail of | 12:10:27 |
| 17 | what-ifs. | 12:10:30 |
| 18 | Q.  Did your mom ask you, "Well, what if we | 12:10:32 |
| 19 | can't agree with the Siegels?  I mean, what happens | 12:10:35 |
| 20 | then?"  Did she put that -- | 12:10:37 |
| 21 | A.  No. | 12:10:40 |
| 22 | Q.  -- question to you in so many words? | 12:10:41 |
| 23 | A.  No. | 12:10:42 |
| 24 | Q.  Do you -- did -- if she had put that | 12:10:46 |
| 25 | question to you, could you have answered it? | 12:10:48 |

MARK WARREN PEARY - 6/29/2011

Page 84

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  Again, don't testify based | 12:10:53 |
| 2 | on knowledge and communications you received -- | 12:10:56 |
| 3 | don't testify based on knowledge you received | 12:11:00 |
| 4 | through your communications with your attorney. | 12:11:02 |
| 5 | THE WITNESS:  I -- all I can -- | 12:11:07 |
| 6 | MR. TOBEROFF:  And I also, when he asks you | 12:11:08 |
| 7 | about conversations, if you understand the substance | 12:11:11 |
| 8 | of the conversation you can give him that substance. | 12:11:14 |
| 9 | If you understand the exact words you used, you can | 12:11:17 |
| 10 | give him the exact words.  But if you don't remember | 12:11:19 |
| 11 | the exact words you used, don't make up the words to | 12:11:21 |
| 12 | fill in the blanks.  That would be speculating. | 12:11:25 |
| 13 | THE WITNESS:  Uh-huh.  The question again | 12:11:27 |
| 14 | being? | 12:11:33 |
| 15 | BY MR. PETROCELLI: | 12:11:33 |
| 16 | Q.  Did you have an understanding in | 12:11:33 |
| 17 | discussions with your mom about the consent | 12:11:38 |
| 18 | agreement what would happen if the Siegels and you | 12:11:40 |
| 19 | could not agree? | 12:11:43 |
| 20 | MR. TOBEROFF:  Asked and answered. | 12:11:45 |
| 21 | THE WITNESS:  I didn't discuss that with | 12:11:49 |
| 22 | her. | 12:11:51 |
| 23 | BY MR. PETROCELLI: | 12:11:51 |
| 24 | Q.  Did you have an awareness in your own mind | 12:11:52 |
| 25 | of what would happen? | 12:11:57 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1186

MARK WARREN PEARY - 6/29/2011

Page 85

| | | |
|---|---|---|
| 1 | A.  I'm aware -- | 12:11:59 |
| 2 | Q.  Had she asked you the question, could you | 12:11:59 |
| 3 | have answered it? | 12:12:01 |
| 4 | A.  Oh. | 12:12:02 |
| 5 | MR. TOBEROFF:  You can only answer the next | 12:12:02 |
| 6 | question to the extent you have an understanding | 12:12:04 |
| 7 | that's separate and apart from your communications | 12:12:06 |
| 8 | with me. | 12:12:09 |
| 9 | THE WITNESS:  Just -- okay. | 12:12:10 |
| 10 | It's just we -- I thought the agreement was | 12:12:14 |
| 11 | good.  It was mutually beneficial.  That's -- that's | 12:12:17 |
| 12 | all I can say. | 12:12:24 |
| 13 | BY MR. PETROCELLI: | 12:12:24 |
| 14 | Q.  Why did you think it was good and mutually | 12:12:25 |
| 15 | beneficial? | 12:12:28 |
| 16 | MR. TOBEROFF:  I instruct you not to | 12:12:28 |
| 17 | answer. | 12:12:29 |
| 18 | (Unanswered question.) | 12:12:30 |
| 19 | THE WITNESS:  I follow -- | 12:12:32 |
| 20 | MR. TOBEROFF:  I instruct you not to | 12:12:34 |
| 21 | answer. | 12:12:35 |
| 22 | THE WITNESS:  I follow my attorney's | 12:12:35 |
| 23 | advice. | 12:12:36 |
| 24 | BY MR. PETROCELLI: | 12:12:36 |
| 25 | Q.  Can I get an answer to my prior question, | 12:12:47 |

Merrill  Corporation  -  Los Angeles

800-826-0277                                          www.merrillcorp.com/law

EXHIBIT 37

MARK WARREN PEARY - 6/29/2011

Page 86

| | | |
|---|---|---|
| 1 | which was, did you have an awareness of what would | 12:12:50 |
| 2 | happen in the event the Siegels and the Shusters | 12:12:52 |
| 3 | could not agree on -- on an agreement with DC? | 12:12:55 |
| 4 | A.  I didn't think it was a problem. | 12:13:03 |
| 5 | MR. TOBEROFF:  He -- that's not his | 12:13:06 |
| 6 | question. | 12:13:08 |
| 7 | THE WITNESS:  No? | 12:13:08 |
| 8 | MR. TOBEROFF:  Focus on the question. | 12:13:11 |
| 9 | THE WITNESS:  Say it again. | 12:13:11 |
| 10 | MR. TOBEROFF:  It's a "yes" or "no" | 12:13:12 |
| 11 | question. | 12:13:15 |
| 12 | THE WITNESS:  Did I have -- say it again, | 12:13:15 |
| 13 | please. | 12:13:16 |
| 14 | BY MR. PETROCELLI: | 12:13:16 |
| 15 | Q.  Did you have an understanding in your | 12:13:17 |
| 16 | conversations with your mom about the 2008 consent | 12:13:19 |
| 17 | agreement, what would happen -- | 12:13:22 |
| 18 | A.  Oh. | 12:13:25 |
| 19 | Q.  -- if the Siegels and you could not agree? | 12:13:25 |
| 20 | A.  Did I have an understanding -- | 12:13:27 |
| 21 | MR. TOBEROFF:  In his conversations with | 12:13:28 |
| 22 | his mom? | 12:13:30 |
| 23 | MR. PETROCELLI:  Yeah. | 12:13:30 |
| 24 | Q.  At the time that you were -- during the | 12:13:31 |
| 25 | period of time when you were having these | 12:13:34 |

EXHIBIT 37
1188

MARK WARREN PEARY - 6/29/2011

Page 87

| | | |
|---|---|---|
| 1 | discussions with your mom. | 12:13:34 |
| 2 | A. Did I have an understanding? | 12:13:35 |
| 3 | Q. Yeah. Had she asked you -- well, what did | 12:13:36 |
| 4 | she call you, Warren? | 12:13:39 |
| 5 | A. Yes. | 12:13:41 |
| 6 | Q. Okay, "Well, Warren, you know, what happens | 12:13:42 |
| 7 | if the Siegels and we can't agree; we want to do a | 12:13:43 |
| 8 | deal and the Siegels don't want to do a deal and, | 12:13:46 |
| 9 | you know, consent is required, how do we get out of | 12:13:48 |
| 10 | that?" | 12:13:51 |
| 11 | First of all, did she ever ask you such a | 12:13:53 |
| 12 | thing? | 12:13:55 |
| 13 | MR. TOBEROFF:  Asked and answered. | 12:13:56 |
| 14 | You can answer again. | 12:14:00 |
| 15 | THE WITNESS:  No. | 12:14:01 |
| 16 | BY MR. PETROCELLI: | 12:14:01 |
| 17 | Q. Did you ever explain to her that | 12:14:02 |
| 18 | circumstance or walk her through that situation? | 12:14:07 |
| 19 | MR. TOBEROFF:  Asked and answered. | 12:14:11 |
| 20 | You can answer. | 12:14:14 |
| 21 | THE WITNESS:  I -- I don't recall getting | 12:14:14 |
| 22 | to that level of detail.  She didn't ask any more | 12:14:18 |
| 23 | about it. | 12:14:22 |
| 24 | BY MR. PETROCELLI: | 12:14:22 |
| 25 | Q. And had she asked you, could you have | 12:14:30 |

EXHIBIT 37
1189

MARK WARREN PEARY - 6/29/2011

Page 88

| | | |
|---|---|---|
| 1 | answered the question?  That's a "yes" or "no." | 12:14:32 |
| 2 | A.  Yes. | 12:14:37 |
| 3 | Q.  Okay.  What would you have said? | 12:14:38 |
| 4 | MR. TOBEROFF:  Instruct you not to answer. | 12:14:39 |
| 5 | You can't divulge the substance of the consent | 12:14:40 |
| 6 | agreement. | 12:14:42 |
| 7 | (Unanswered question.) | 12:14:43 |
| 8 | BY MR. PETROCELLI: | 12:14:43 |
| 9 | Q.  Do you have any current arrangement for the | 12:14:58 |
| 10 | consent agreement or otherwise whereby the Shuster | 12:15:05 |
| 11 | interest's share in any proceeds or recovery | 12:15:13 |
| 12 | attributable to Superboy? | 12:15:16 |
| 13 | MR. TOBEROFF:  Okay.  On this question, | 12:15:19 |
| 14 | I -- I will make an exception and allow him to | 12:15:23 |
| 15 | answer that question provided you agree that his | 12:15:27 |
| 16 | answering the question is not a waiver of any | 12:15:30 |
| 17 | privilege regarding the consent agreement. | 12:15:32 |
| 18 | Otherwise, I'll instruct him not to answer. | 12:15:34 |
| 19 | MR. PETROCELLI:  I guess I'll have to do | 12:15:46 |
| 20 | this on a question-by-question basis.  So as to this | 12:15:47 |
| 21 | particular question and answer, that's acceptable. | 12:15:53 |
| 22 | MR. TOBEROFF:  Okay.  Do you want to -- | 12:15:56 |
| 23 | MR. PETROCELLI:  Do you want to repeat the | 12:15:58 |
| 24 | question? | 12:15:59 |
| 25 | Read back the question. | 12:16:00 |

EXHIBIT 37
1190

MARK WARREN PEARY - 6/29/2011

Page 89

| | | |
|---|---|---|
| 1 | (The reporter read the record | 12:16:23 |
| 2 | as follows: | 12:16:23 |
| 3 | "QUESTION:  Do you have any | 12:14:58 |
| 4 | current arrangement for the consent | 12:15:00 |
| 5 | agreement or otherwise whereby the | 12:15:06 |
| 6 | Shuster interest's share in any | 12:15:10 |
| 7 | proceeds or recovery attributable | 12:15:15 |
| 8 | to Superboy?") | 12:15:17 |
| 9 | MR. TOBEROFF:  That was really fast. | 12:15:17 |
| 10 | THE REPORTER:  I'm sorry. | 12:15:17 |
| 11 | (The reporter read the record as | 12:15:17 |
| 12 | follows: | 12:15:17 |
| 13 | "QUESTION:  Do you have any | 12:14:58 |
| 14 | current arrangement for the consent | 12:15:00 |
| 15 | agreement or otherwise whereby the | 12:15:06 |
| 16 | Shuster interests share in any | 12:15:10 |
| 17 | proceeds or recovery attributable | 12:15:15 |
| 18 | to Superboy.") | 12:15:17 |
| 19 | THE WITNESS:  No. | 12:16:24 |
| 20 | BY MR. PETROCELLI: | 12:16:24 |
| 21 | Q.  Does the consent agreement -- under the | 12:16:31 |
| 22 | consent agreement as you understand it, would the | 12:16:33 |
| 23 | Shuster interest's share in any proceeds or recovery | 12:16:39 |
| 24 | attributable to Superboy? | 12:16:44 |
| 25 | MR. TOBEROFF:  This is the same question. | 12:16:47 |

Merrill  Corporation  -  Los Angeles

800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1191

MARK WARREN PEARY - 6/29/2011

Page 90

| | | |
|---|---|---|
| 1 | Do we have the same agreement? | 12:16:49 |
| 2 | MR. PETROCELLI: We do. It's not the same | 12:16:50 |
| 3 | question because I limited it to the consent | 12:16:54 |
| 4 | agreement. | 12:16:54 |
| 5 | MR. TOBEROFF: Do we have the same | 12:16:54 |
| 6 | agreement that I will allow him to answer but that | 12:16:58 |
| 7 | will not be deemed -- | 12:16:58 |
| 8 | MR. PETROCELLI: Yes. | 12:16:58 |
| 9 | MR. TOBEROFF: -- a waiver of the privilege | 12:17:00 |
| 10 | as to any other questions or the document? | 12:17:00 |
| 11 | MR. PETROCELLI: Yes. | 12:17:02 |
| 12 | MR. TOBEROFF: You can answer. | 12:17:03 |
| 13 | THE WITNESS: Okay. No. | 12:17:03 |
| 14 | BY MR. PETROCELLI: | 12:17:03 |
| 15 | Q. Have the Shusters, by "the Shusters" I mean | 12:17:07 |
| 16 | you, your mom, the estate of Joe Shuster, the | 12:17:13 |
| 17 | Shuster interest, have the Shusters ever had any | 12:17:17 |
| 18 | agreement with the Siegels regarding Superboy? | 12:17:21 |
| 19 | A. No. | 12:17:28 |
| 20 | Q. Is it your understanding that if the | 12:17:34 |
| 21 | Siegels were to be paid or recover money associated | 12:17:42 |
| 22 | with Superboy, that it would belong solely to them | 12:17:47 |
| 23 | and not to the Shuster side? | 12:17:50 |
| 24 | Is that your understanding? | 12:17:55 |
| 25 | A. Yes. | 12:17:56 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1192

MARK WARREN PEARY - 6/29/2011

Page 91

| | | |
|---|---|---|
| 1 | Q.  Have you ever had any discussions with any | 12:18:02 |
| 2 | member of the Siegel family about Superboy and | 12:18:08 |
| 3 | sharing or not sharing in recoveries associated with | 12:18:16 |
| 4 | Superboy? | 12:18:21 |
| 5 | A.  No. | 12:18:21 |
| 6 | Q.  Have you ever had a discussion with your | 12:18:24 |
| 7 | mother about whether the Shusters had an interest in | 12:18:24 |
| 8 | Superboy? | 12:18:33 |
| 9 | A.  No. | 12:18:37 |
| 10 | Q.  You never once raised that subject with | 12:18:37 |
| 11 | her? | 12:18:39 |
| 12 | A.  No. | 12:18:41 |
| 13 | Q.  Has she ever discussed it with you? | 12:18:42 |
| 14 | A.  No. | 12:18:45 |
| 15 | Q.  At any time, even going back to the time | 12:18:46 |
| 16 | when Joe Shuster was alive? | 12:18:49 |
| 17 | A.  We never discussed that. | 12:18:51 |
| 18 | Q.  Did you ever discuss it with Joe Shuster? | 12:18:53 |
| 19 | A.  No. | 12:18:55 |
| 20 | MR. PETROCELLI:  Okay.  Okay.  Would you | 12:19:07 |
| 21 | agree that I don't need to ask any more questions | 12:19:14 |
| 22 | about his knowledge about the consent agreement | 12:19:17 |
| 23 | because you're -- you're going to assert the same | 12:19:21 |
| 24 | objections? | 12:19:23 |
| 25 | MR. TOBEROFF:  If you're asking as to the | 12:19:24 |

MARK WARREN PEARY - 6/29/2011

Page 92

| | | |
|---|---|---|
| 1 | substance of contents of the consent agreement, I | 12:19:26 |
| 2 | will assert same. | 12:19:29 |
| 3 | MR. PETROCELLI:  The existence of the terms | 12:19:30 |
| 4 | and provisions, the substance of them, the contents | 12:19:31 |
| 5 | of them. | 12:19:34 |
| 6 | MR. TOBEROFF:  Yes. | 12:19:34 |
| 7 | MR. PETROCELLI:  Okay.  Let me just make | 12:19:36 |
| 8 | sure I nail this down. | 12:19:48 |
| 9 | Q.  After signing the consent agreement in | 12:19:51 |
| 10 | 2008, did you ever sign a piece of paper that you | 12:19:57 |
| 11 | thought was amending or modifying the consent | 12:20:04 |
| 12 | agreement? | 12:20:07 |
| 13 | A.  No. | 12:20:08 |
| 14 | Q.  Okay.  Or cancelling it? | 12:20:11 |
| 15 | A.  No. | 12:20:12 |
| 16 | Q.  Okay.  When you signed the consent | 12:20:13 |
| 17 | agreement in 2008, your lawyer at the time was whom? | 12:20:25 |
| 18 | A.  Marc Toberoff. | 12:20:34 |
| 19 | Q.  Who did you understand -- did you | 12:20:36 |
| 20 | understand that the Siegels were represented by | 12:20:39 |
| 21 | counsel? | 12:20:41 |
| 22 | A.  Yes. | 12:20:41 |
| 23 | Q.  Who did you understand their counsel to be? | 12:20:44 |
| 24 | A.  Marc Toberoff. | 12:20:46 |
| 25 | Q.  Did you consult with any attorney other | 12:20:51 |

EXHIBIT 37
1194

MARK WARREN PEARY - 6/29/2011

Page 93

| | | |
|---|---|---|
| 1 | than Marc Toberoff about signing a document with the | 12:20:55 |
| 2 | Siegels? | 12:20:59 |
| 3 | A. No. | 12:20:59 |
| 4 | Q. Did you consult with anyone other than Marc | 12:21:02 |
| 5 | Toberoff on that subject, attorney or not? | 12:21:06 |
| 6 | A. No. | 12:21:08 |
| 7 | Q. Did you give any thought or consideration | 12:21:11 |
| 8 | to whether there were conflicts of interest given | 12:21:17 |
| 9 | Mr. Toberoff's representation of the Siegels and the | 12:21:21 |
| 10 | Shusters? Did that thought cross your mind? | 12:21:27 |
| 11 | A. I suppose. | 12:21:33 |
| 12 | Q. When it crossed your mind, in what respect | 12:21:33 |
| 13 | did you think about it? | 12:21:39 |
| 14 | MR. TOBEROFF: You could only answer that | 12:21:41 |
| 15 | to the extent you have an understanding of conflict | 12:21:42 |
| 16 | of interest independent of your discussions with me. | 12:21:45 |
| 17 | THE WITNESS: Okay. Well, my whole | 12:21:52 |
| 18 | understanding is -- is bound up with my | 12:21:56 |
| 19 | conversations with Marc Toberoff. | 12:22:00 |
| 20 | MR. TOBEROFF: Then I instruct you not to | 12:22:04 |
| 21 | answer. | 12:22:06 |
| 22 | (Unanswered question.) | 12:22:06 |
| 23 | BY MR. PETROCELLI: | 12:22:06 |
| 24 | Q. Did you receive any disclosures from | 12:22:10 |
| 25 | Mr. Toberoff regarding potential or actual conflicts | 12:22:13 |

EXHIBIT 37
1195

MARK WARREN PEARY - 6/29/2011

Page 94

| | | |
|---|---|---|
| 1 | of interest? | 12:22:17 |
| 2 | A.  Yes. | 12:22:18 |
| 3 | Q.  In what form? | 12:22:20 |
| 4 | A.  He sent a -- he sent a -- a letter, a | 12:22:24 |
| 5 | waiver, a document. | 12:22:29 |
| 6 | Q.  Is that a document separate from the | 12:22:33 |
| 7 | consent agreement that you signed? | 12:22:35 |
| 8 | A.  Yes. | 12:22:38 |
| 9 | Q.  Did you sign that document? | 12:22:39 |
| 10 | A.  Yes. | 12:22:40 |
| 11 | Q.  So that's another document you signed, | 12:22:44 |
| 12 | right, you -- that you didn't mention earlier. | 12:22:46 |
| 13 | Is that in your lock box? | 12:22:53 |
| 14 | A.  I suppose. | 12:23:01 |
| 15 | Q.  Did you bring -- bring it with you? | 12:23:02 |
| 16 | A.  The waiver of conflict of interest? | 12:23:07 |
| 17 | Q.  Right. | 12:23:07 |
| 18 | A.  Is that the -- | 12:23:10 |
| 19 | MR. TOBEROFF:  He's asking whether you | 12:23:11 |
| 20 | brought that document with you to -- | 12:23:12 |
| 21 | THE WITNESS:  The waiver of conflict of | 12:23:13 |
| 22 | interest? | 12:23:14 |
| 23 | BY MR. PETROCELLI: | 12:23:14 |
| 24 | Q.  Correct.  That's how you call the document, | 12:23:15 |
| 25 | right? | 12:23:17 |

MARK WARREN PEARY - 6/29/2011

| | | | |
|---|---|---|---|
| 1 | A. | Yeah. | 12:23:17 |
| 2 | Q. | And it's a separate document from the | 12:23:18 |
| 3 | consent agreement. | | 12:23:19 |
| 4 | | Is that right? | 12:23:19 |
| 5 | A. | Yes. | 12:23:19 |
| 6 | Q. | Who are the signatories to that document? | 12:23:22 |
| 7 | A. | I believe that -- that I am and the Siegels | 12:23:29 |
| 8 | and Mr. Toberoff. | | 12:23:32 |
| 9 | Q. | When was that signed? | 12:23:38 |
| 10 | A. | 2010, I believe. | 12:23:39 |
| 11 | Q. | Two years after the consent agreement? | 12:23:54 |
| 12 | A. | Yeah, if my memory is right. | 12:23:57 |
| 13 | Q. | And after the filing of this lawsuit? | 12:24:03 |
| 14 | A. | I don't know if it was after.  I don't | 12:24:05 |
| 15 | recall the date.  I think it was sometime -- I don't | | 12:24:10 |
| 16 | recall the date. | | 12:24:14 |
| 17 | Q. | The date's on the document, right? | 12:24:16 |
| 18 | A. | Well, yeah, I don't -- it's not on this | 12:24:20 |
| 19 | document, though. | | 12:24:21 |
| 20 | Q. | No.  It's on the conflict of interest | 12:24:22 |
| 21 | document, right? | | 12:24:24 |
| 22 | A. | Yeah. | 12:24:24 |
| 23 | Q. | Does the conflict of interest document say | 12:24:25 |
| 24 | that the date is effective as to some earlier point | | 12:24:27 |
| 25 | in time?  Like the legal representation documents | | 12:24:29 |

EXHIBIT 37
1197

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | you described, it went back from '04 to '01? | 12:24:33 |
| 2 | A.  I don't know. | 12:24:40 |
| 3 | Q.  Did you -- were you advised to seek | 12:24:41 |
| 4 | independent counsel before signing or even in | 12:24:49 |
| 5 | considering whether to sign the conflict of waiver? | 12:24:54 |
| 6 | A.  Yes. | 12:24:56 |
| 7 | Q.  Who told you that? | 12:24:58 |
| 8 | A.  Mr. Toberoff. | 12:25:00 |
| 9 | Q.  What did he tell you? | 12:25:01 |
| 10 | A.  He said that I could seek separate counsel. | 12:25:03 |
| 11 | Ask -- ask someone else. | 12:25:10 |
| 12 | Q.  Did he suggest any lawyers to you? | 12:25:11 |
| 13 | A.  No. | 12:25:14 |
| 14 | Q.  Okay.  Did he tell you this in a verbal | 12:25:18 |
| 15 | conversation or in a letter? | 12:25:20 |
| 16 | A.  Probably verbal. | 12:25:22 |
| 17 | Q.  Did you seek separate counsel? | 12:25:30 |
| 18 | A.  No. | 12:25:31 |
| 19 | Q.  Did you make any inquiries at all? | 12:25:34 |
| 20 | MR. TOBEROFF:  As to separate counsel? | 12:25:38 |
| 21 | MR. PETROCELLI:  Correct. | 12:25:40 |
| 22 | THE WITNESS:  No. | 12:25:41 |
| 23 | BY MR. PETROCELLI: | 12:25:41 |
| 24 | Q.  Did you even consider it? | 12:25:42 |
| 25 | A.  I may have considered it. | 12:25:47 |

MARK WARREN PEARY - 6/29/2011

Page 97

| | | |
|---|---|---|
| 1 | Q. You decided not to? | 12:25:48 |
| 2 | A. Yes. | 12:25:52 |
| 3 | Q. Did you discuss it with the Siegels? | 12:25:53 |
| 4 | MR. TOBEROFF: The conflict waiver? | 12:25:58 |
| 5 | MR. PETROCELLI: Yes. | 12:26:00 |
| 6 | THE WITNESS: No, not directly. | 12:26:01 |
| 7 | BY MR. PETROCELLI: | 12:26:01 |
| 8 | Q. Did you discuss with the Siegels whether | 12:26:03 |
| 9 | they were seeking separate counsel or independent | 12:26:04 |
| 10 | counsel in deciding whether to sign the conflict | 12:26:07 |
| 11 | waiver? | 12:26:09 |
| 12 | A. No, I did not. | 12:26:11 |
| 13 | Q. Do you know if they did? | 12:26:12 |
| 14 | A. I don't. | 12:26:14 |
| 15 | MR. PETROCELLI: I think we're going to run | 12:26:20 |
| 16 | out of videotape now so it's probably a good time to | 12:26:22 |
| 17 | go to lunch. | 12:26:24 |
| 18 | THE VIDEOGRAPHER: This will mark the end | 12:26:24 |
| 19 | of Volume I, Tape Number 1 in the deposition of Mark | 12:26:26 |
| 20 | Warren Peary. Going off the record. The time is | 12:26:30 |
| 21 | 12:25. | 12:26:32 |
| 22 | (At 12:25 p.m., the deposition | 12:27:45 |
| 23 | of MARK WARREN PEARY was adjourned | |
| 24 | for noon recess.) | |
| 25 | /// | |

MARK WARREN PEARY - 6/29/2011

Page 98

```
 1              (At 1:17 p.m., the deposition of

 2         MARK WARREN PEARY was reconvened.)

 3                                                        13:18:26

 4              THE VIDEOGRAPHER:  We're back on the     13:18:26

 5    record.  This marks the beginning of Volume I, Tape 13:18:35

 6    Number 2 in the deposition of Mark Warren Peary.   13:18:38

 7    The time is 1:17.                                  13:18:41

 8                                                        13:18:41

 9              EXAMINATION (CONTINUED)                  13:18:45

10    BY MR. PETROCELLI:                                 13:18:45

11       Q.  Mr. Peary, with respect to the conflict of 13:18:46

12    interest document that you signed in or about 2010 13:18:51

13    that we were talking about before the lunch break, 13:18:55

14    do you remember that?                              13:18:58

15       A.  Yes.                                        13:18:58

16       Q.  Okay.  Did you understand that that         13:18:59

17    document that you signed pertained to the 2008     13:19:04

18    consent agreement?                                 13:19:10

19              MR. TOBEROFF:  You -- you -- I instruct you 13:19:14

20    not to answer regarding the contents of the consent 13:19:17

21    agreement.  It's a conflict waiver which is listed 13:19:22

22    on the privilege log and privileged.               13:19:26

23              THE WITNESS:  Yeah.  I'll have to follow my 13:19:28

24    attorney's advice.                                 13:19:30

25              (Unanswered question.)                   13:19:30
```

EXHIBIT 37
1200

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | MR. PETROCELLI:  Well, I'm not asking about | 13:19:31 |
| 2 | the contents of the consent agreement in this | 13:19:33 |
| 3 | question.  I'm -- | 13:19:35 |
| 4 | MR. TOBEROFF:  No, the conflict waiver. | 13:19:36 |
| 5 | BY MR. PETROCELLI: | 13:19:36 |
| 6 | Q.  Did you understand that the purpose of the | 13:19:42 |
| 7 | conflict waiver related to the consent agreement? | 13:19:43 |
| 8 | MR. TOBEROFF:  You can only answer that | 13:19:49 |
| 9 | question if you have an understanding of the purpose | 13:19:50 |
| 10 | of the conflict waiver separate and apart from your | 13:19:52 |
| 11 | communications with counsel. | 13:19:55 |
| 12 | THE WITNESS:  Well, then all my | 13:19:59 |
| 13 | understanding is associated with my communications | 13:20:00 |
| 14 | with counsel, so I guess I can't answer it. | 13:20:03 |
| 15 | BY MR. PETROCELLI: | 13:20:03 |
| 16 | Q.  You've -- but you've testified to some of | 13:20:07 |
| 17 | your communications with counsel on the subject of | 13:20:10 |
| 18 | this conflict waiver already before the lunch break. | 13:20:12 |
| 19 | In those communications that you had with | 13:20:20 |
| 20 | counsel about the conflict waiver, which you said | 13:20:22 |
| 21 | that he made a disclosure to you about a conflict of | 13:20:24 |
| 22 | interest and -- or potential conflict of interest, | 13:20:27 |
| 23 | said that you could seek independent counsel, do you | 13:20:31 |
| 24 | recall -- | 13:20:34 |
| 25 | A.  Yes. | 13:20:34 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1201

MARK WARREN PEARY - 6/29/2011

Page 100

| | | |
|---|---|---|
| 1 | Q.  -- having related that to me? | 13:20:35 |
| 2 | A.  Yes. | 13:20:36 |
| 3 | Q.  Okay.  In your conversations with | 13:20:37 |
| 4 | Mr. Toberoff, was -- did you gain an understanding | 13:20:41 |
| 5 | of the purpose of your being presented with a | 13:20:47 |
| 6 | conflict waiver? | 13:20:51 |
| 7 | A.  Yes. | 13:20:52 |
| 8 | Q.  What was that purpose? | 13:20:54 |
| 9 | MR. TOBEROFF:  I instruct you not to | 13:20:57 |
| 10 | answer. | 13:20:58 |
| 11 | (Unanswered question.) | 13:21:06 |
| 12 | BY MR. PETROCELLI: | 13:21:06 |
| 13 | Q.  Was the purpose of the conflict waiver set | 13:21:06 |
| 14 | forth in the document? | 13:21:08 |
| 15 | A.  I believe so. | 13:21:11 |
| 16 | Q.  And again, this was a document you said was | 13:21:17 |
| 17 | signed by the Siegel parties as well as the Shuster | 13:21:18 |
| 18 | side, right? | 13:21:23 |
| 19 | A.  Yes. | 13:21:23 |
| 20 | Q.  And Mr. Toberoff, correct? | 13:21:24 |
| 21 | A.  Yes. | 13:21:25 |
| 22 | Q.  Did your mother sign it? | 13:21:26 |
| 23 | A.  I don't remember.  I don't remember. | 13:21:36 |
| 24 | Q.  In or about 2008 at the time when you | 13:21:47 |
| 25 | signed the consent agreement, did you at that time | 13:21:50 |

EXHIBIT 37
1202

MARK WARREN PEARY - 6/29/2011

Page 101

| | | |
|---|---|---|
| 1 | sign any document involving a conflict of interest | 13:21:57 |
| 2 | or a potential conflict of interest? | 13:22:01 |
| 3 | MR. TOBEROFF:  Objection.  Asks for a legal | 13:22:08 |
| 4 | conclusion. | 13:22:09 |
| 5 | And you could answer that question if you | 13:22:11 |
| 6 | have an understanding of conflict of interest and | 13:22:15 |
| 7 | potential conflict of interest outside of your | 13:22:17 |
| 8 | communications with me. | 13:22:21 |
| 9 | MR. PETROCELLI:  Let me rephrase that | 13:22:22 |
| 10 | question. | 13:22:23 |
| 11 | Q.  In or about 2008 when you signed the | 13:22:24 |
| 12 | consent agreement, did you also sign another | 13:22:27 |
| 13 | document that you believed related to the subject of | 13:22:31 |
| 14 | waiving conflicts of interest? | 13:22:37 |
| 15 | A.  I don't recall. | 13:22:42 |
| 16 | Q.  You don't -- you don't recall having done | 13:22:46 |
| 17 | so? | 13:22:47 |
| 18 | A.  I don't recall, no, having done so. | 13:22:48 |
| 19 | Q.  Okay.  Is the only time that you can recall | 13:22:53 |
| 20 | having signed a document related to conflicts of | 13:22:54 |
| 21 | interest is this one in 2010? | 13:22:58 |
| 22 | MR. TOBEROFF:  Vague and overbroad. | 13:23:03 |
| 23 | MR. PETROCELLI:  Let me rephrase it. | 13:23:08 |
| 24 | Q.  Is the only time that you can recall | 13:23:10 |
| 25 | signing a document waiving any potential or actual | 13:23:12 |

EXHIBIT 37
1203

MARK WARREN PEARY - 6/29/2011

Page 102

| | | |
|---|---|---|
| 1 | conflict of interest is the one that you signed in | 13:23:16 |
| 2 | 2010? | 13:23:19 |
| 3 | A.  That's the one I recall. | 13:23:22 |
| 4 | Q.  Do you think there are others? | 13:23:24 |
| 5 | A.  I -- I don't remember any others. | 13:23:26 |
| 6 | Q.  Okay.  Okay.  Let me show you Exhibit 2 | 13:23:39 |
| 7 | which is the 1975 agreement that Joe Shuster and | 13:23:52 |
| 8 | Jerry Siegel signed with Warner Communications | 13:24:04 |
| 9 | calling for various payments to -- to both men and | 13:24:06 |
| 10 | their families. | 13:24:13 |
| 11 | (The document referred to was | 13:24:15 |
| 12 | marked for identification by the | 13:24:15 |
| 13 | C.S.R. as Exhibit 2 and attached to | 13:24:15 |
| 14 | this deposition.) | 13:24:19 |
| 15 | BY MR. PETROCELLI: | 13:24:19 |
| 16 | Q.  Have you seen this document before? | 13:24:19 |
| 17 | A.  No, sir. | 13:24:20 |
| 18 | Q.  You were asked about a -- a pension | 13:24:27 |
| 19 | agreement in your Siegel deposition in 2006. | 13:24:28 |
| 20 | Did you have an understanding -- let me ask | 13:24:32 |
| 21 | you these questions prior to the time that you first | 13:24:39 |
| 22 | had any contact with Mr. Toberoff, okay? | 13:24:44 |
| 23 | A.  Uh-huh. | 13:24:47 |
| 24 | Q.  You first had contact with Mr. Toberoff | 13:24:49 |
| 25 | sometime in 2001. | 13:24:53 |

MARK WARREN PEARY - 6/29/2011

Page 103

| | | |
|---|---|---|
| 1 | Is that right? | 13:24:55 |
| 2 | A.  Yes. | 13:24:56 |
| 3 | Q.  In your Siegel deposition you said that you | 13:24:56 |
| 4 | were looking into the issue of copyright matters and | 13:25:03 |
| 5 | you came across Mr. Toberoff? | 13:25:09 |
| 6 | A.  Yes. | 13:25:10 |
| 7 | Q.  I think you said it might have been six | 13:25:15 |
| 8 | months or so or a few months prior to the time that | 13:25:17 |
| 9 | you signed your first agreement in November 2001. | 13:25:20 |
| 10 | Does that sound right? | 13:25:22 |
| 11 | A.  Between the time I first contacted him and | 13:25:23 |
| 12 | then we signed an agreement? | 13:25:26 |
| 13 | Q.  Yeah, what was that time span? | 13:25:27 |
| 14 | A.  I remember I first contacted him in 2001. | 13:25:30 |
| 15 | That's all I can recall. | 13:25:35 |
| 16 | Q.  Okay.  And to provide a bit more detail, | 13:25:36 |
| 17 | did someone give you his number? | 13:25:38 |
| 18 | A.  I found it through research on my own. | 13:25:42 |
| 19 | Q.  When you say research on your own, you were | 13:25:44 |
| 20 | on your computer on the Internet? | 13:25:46 |
| 21 | A.  Yes, yes. | 13:25:47 |
| 22 | Q.  And how did you come across it?  What did | 13:25:48 |
| 23 | you search that yielded his name? | 13:25:50 |
| 24 | A.  I was doing research on copyright law and | 13:25:53 |
| 25 | changes to the copyright law and various searches | 13:25:56 |

EXHIBIT 37
1205

MARK WARREN PEARY - 6/29/2011

Page 104

| | | |
|---|---|---|
| 1 | having to do with copyright and attorneys involved | 13:26:06 |
| 2 | in entertainment. | 13:26:08 |
| 3 | Q.  And how -- how many names were -- were | 13:26:09 |
| 4 | netted as a result of your searches? | 13:26:13 |
| 5 | A.  Oh, boy, I can't -- I can't recall that. | 13:26:21 |
| 6 | I -- I was impressed with -- when I came across | 13:26:22 |
| 7 | information regarding Mr. Toberoff's dealings. | 13:26:26 |
| 8 | Q.  On the Web site? | 13:26:31 |
| 9 | A.  Yes.  I was impressed. | 13:26:32 |
| 10 | Q.  What impressed you about what you saw on | 13:26:33 |
| 11 | the Web site? | 13:26:35 |
| 12 | A.  I was impressed with what I had read.  Gave | 13:26:36 |
| 13 | me the impression he had a great deal of knowledge | 13:26:39 |
| 14 | and talent in copyright law with property and | 13:26:41 |
| 15 | rights. | 13:26:46 |
| 16 | Q.  Had you -- did you visit his Web site? | 13:26:47 |
| 17 | A.  I don't recall his Web site in particular. | 13:26:53 |
| 18 | Q.  Was it an article you -- you recall having | 13:26:56 |
| 19 | read about him? | 13:26:59 |
| 20 | A.  Excuse me? | 13:27:00 |
| 21 | Q.  An article about him?  I mean, what is it | 13:27:00 |
| 22 | that you read that impressed you? | 13:27:03 |
| 23 | A.  Jeez, it's so far back.  Various searches, | 13:27:04 |
| 24 | his mentions of lawyers and articles.  That's all I | 13:27:10 |
| 25 | can recall. | 13:27:15 |

EXHIBIT 37
1206

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  Searches you're doing on your home | 13:27:15 |
| 2 | computer? | 13:27:17 |
| 3 | A.  Yes. | 13:27:17 |
| 4 | Q.  Okay.  When you -- whatever you read -- by | 13:27:18 |
| 5 | the way, did you save the material that mentioned | 13:27:22 |
| 6 | him? | 13:27:26 |
| 7 | A.  I don't think so from that time.  But I -- | 13:27:26 |
| 8 | I got his contact information and contacted him. | 13:27:34 |
| 9 | MR. TOBEROFF:  Just focus on his question. | 13:27:37 |
| 10 | Only answer his question. | 13:27:38 |
| 11 | BY MR. PETROCELLI: | 13:27:38 |
| 12 | Q.  Did you contact anyone other than -- | 13:27:40 |
| 13 | MR. TOBEROFF:  Don't give a narrative. | 13:27:41 |
| 14 | BY MR. PETROCELLI: | 13:27:41 |
| 15 | Q.  -- contact anyone other than him? | 13:27:43 |
| 16 | A.  Prior to that time, I did. | 13:27:44 |
| 17 | Q.  As a result of the research you were doing? | 13:27:50 |
| 18 | A.  Oh, at that time, no. | 13:27:52 |
| 19 | Q.  Okay.  So when you did the research, the | 13:27:53 |
| 20 | only person that you contacted as a result of that | 13:27:58 |
| 21 | research was Mr. Toberoff? | 13:28:02 |
| 22 | A.  At that time, yes. | 13:28:03 |
| 23 | Q.  Then you called him on the telephone? | 13:28:04 |
| 24 | A.  Yes. | 13:28:06 |
| 25 | Q.  And you had a phone conversation? | 13:28:07 |

EXHIBIT 37
1207

MARK WARREN PEARY - 6/29/2011

Page 106

| | | |
|---|---|---|
| 1 | A.  Yes. | 13:28:08 |
| 2 | Q.  And after that phone conversation did you | 13:28:10 |
| 3 | have a meeting? | 13:28:12 |
| 4 | A.  A face-to-face -- | 13:28:14 |
| 5 | Q.  Face-to-face meeting, right. | 13:28:19 |
| 6 | A.  Not at that time. | 13:28:20 |
| 7 | Q.  How long thereafter until you first met | 13:28:23 |
| 8 | him? | 13:28:28 |
| 9 | A.  When I first met him it was -- it was after | 13:28:28 |
| 10 | we had signed the original legal agreement. | 13:28:32 |
| 11 | Q.  So you had not met him prior to signing the | 13:28:36 |
| 12 | document. | 13:28:40 |
| 13 | Is that correct? | 13:28:42 |
| 14 | A.  Not face to face. | 13:28:43 |
| 15 | Q.  Okay.  Had your sister met him? | 13:28:44 |
| 16 | A.  No. | 13:28:48 |
| 17 | Q.  Had your mother? | 13:28:49 |
| 18 | A.  No. | 13:28:50 |
| 19 | Q.  Had you spoken to anybody who had met him | 13:28:53 |
| 20 | or worked with him prior to signing the document, | 13:28:57 |
| 21 | the first document? | 13:29:01 |
| 22 | A.  I don't believe so. | 13:29:02 |
| 23 | Q.  Did you -- did you have more than one | 13:29:11 |
| 24 | telephone call? | 13:29:12 |
| 25 | A.  Yes. | 13:29:13 |

EXHIBIT 37
1208

MARK WARREN PEARY - 6/29/2011

Page 107

| | | |
|---|---|---|
| 1 | Q.  About how many? | 13:29:16 |
| 2 | A.  Boy, before signing the first agreement I | 13:29:22 |
| 3 | would have had to -- I -- I don't know exactly, but | 13:29:28 |
| 4 | it -- it was a number of times.  I don't know to | 13:29:30 |
| 5 | characterize.  I don't -- I don't have a log, but I | 13:29:35 |
| 6 | talked to him quite a bit. | 13:29:38 |
| 7 | Q.  Okay.  The agreement that you did sign | 13:29:41 |
| 8 | which I'll show you in a bit, were there drafts of | 13:29:43 |
| 9 | that that went back and forth or -- as you recall or | 13:29:48 |
| 10 | did you get a document, sign it and return it? | 13:29:51 |
| 11 | A.  There were drafts. | 13:29:54 |
| 12 | Q.  Did you keep copies of the drafts? | 13:29:56 |
| 13 | A.  No. | 13:29:57 |
| 14 | Q.  On your end, who was reviewing the drafts? | 13:30:01 |
| 15 | A.  I was. | 13:30:07 |
| 16 | Q.  Did you feel competent and capable to | 13:30:09 |
| 17 | understand what you were reading and made changes | 13:30:11 |
| 18 | and comments? | 13:30:15 |
| 19 | A.  Yes. | 13:30:16 |
| 20 | Q.  Okay.  Did you consult with anybody? | 13:30:18 |
| 21 | A.  Like another lawyer? | 13:30:26 |
| 22 | Q.  Yes. | 13:30:26 |
| 23 | A.  No. | 13:30:26 |
| 24 | Q.  Did you discuss with your mother in 2001 | 13:30:29 |
| 25 | these -- your talking to Mr. Toberoff, your | 13:30:34 |

EXHIBIT 37
1209

MARK WARREN PEARY - 6/29/2011

Page 108

| | | |
|---|---|---|
| 1 | telephone calls with him, receiving the draft | 13:30:40 |
| 2 | agreements, working on them, this whole activity, | 13:30:44 |
| 3 | did you share all of that with your mother? | 13:30:46 |
| 4 | A. I'm sure I did. | 13:30:52 |
| 5 | Q. Did she ask you to undertake this effort? | 13:30:54 |
| 6 | A. No. I -- I was doing all of this research | 13:30:57 |
| 7 | on my own. She didn't know anything about it. | 13:30:59 |
| 8 | Q. At what point did you disclose to her what | 13:31:03 |
| 9 | you were doing? | 13:31:06 |
| 10 | A. Probably when I decided to work, retain | 13:31:06 |
| 11 | Mr. Toberoff, it's probably when I really discussed | 13:31:15 |
| 12 | it. | 13:31:20 |
| 13 | Q. Did you have a one-on-one conversation with | 13:31:20 |
| 14 | your mother or was your sister involved? | 13:31:23 |
| 15 | A. Boy, I -- | 13:31:26 |
| 16 | Q. Family meeting? | 13:31:28 |
| 17 | A. I can't actually visualize that in my mind. | 13:31:30 |
| 18 | I know I talked with Jean. I don't recall talking | 13:31:33 |
| 19 | to Dawn at that time. | 13:31:38 |
| 20 | Q. You -- why did you decide not to share with | 13:31:43 |
| 21 | your mother your -- your activities until just | 13:31:47 |
| 22 | before you were ready to sign the document? | 13:31:52 |
| 23 | A. I was doing research on my own and she -- | 13:31:58 |
| 24 | she had no interest or knowledge of any of -- of | 13:32:01 |
| 25 | that, any of the rights or anything. It was | 13:32:04 |

EXHIBIT 37
1210

MARK WARREN PEARY - 6/29/2011

Page 109

| | | |
|---|---|---|
| 1 | something I did completely on my own because I | 13:32:09 |
| 2 | wanted to be thorough, so that's the reason. | 13:32:11 |
| 3 | Q. And did you come to a point when you | 13:32:19 |
| 4 | thought, like, you had sufficient, thorough | 13:32:20 |
| 5 | information that you could then talk with her? | 13:32:23 |
| 6 | A. Yes. | 13:32:25 |
| 7 | Q. And -- and when you did talk with her, was | 13:32:26 |
| 8 | it in that conversation that you first identified to | 13:32:30 |
| 9 | her that you had contacted Mr. Toberoff and you were | 13:32:33 |
| 10 | recommending him? | 13:32:36 |
| 11 | A. I believe so. | 13:32:36 |
| 12 | Q. Had she ever heard of Mr. Toberoff, to your | 13:32:42 |
| 13 | knowledge? | 13:32:45 |
| 14 | A. No. | 13:32:45 |
| 15 | Q. Did you put Mr. Toberoff in touch with the | 13:32:54 |
| 16 | Siegel family? | 13:32:57 |
| 17 | A. If I recall, after we had signed a legal | 13:33:01 |
| 18 | agreement, at some point we were -- we were happy | 13:33:05 |
| 19 | that my mother had talked with Joanne and mentioned | 13:33:13 |
| 20 | his name. | 13:33:16 |
| 21 | Q. Were you present when your mother first | 13:33:24 |
| 22 | mentioned Mr. Toberoff to Joanne? | 13:33:28 |
| 23 | A. No. | 13:33:32 |
| 24 | Q. It's a telephone call? | 13:33:34 |
| 25 | A. Yes. | 13:33:35 |

EXHIBIT 37
1211

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.   Okay.   You said that you had contacted a | 13:33:40 |
| 2 | lawyer at some time before Mr. Toberoff. | 13:33:43 |
| 3 | Was that a fellow in Albuquerque? | 13:33:46 |
| 4 | A.   Yes.   There was a lawyer in Albuquerque. | 13:33:49 |
| 5 | Q.   And what was that person's name? | 13:33:52 |
| 6 | A.   I don't think I remember it because I | 13:33:53 |
| 7 | didn't do any -- I didn't sign anything with him. | 13:33:58 |
| 8 | Q.   What year was that? | 13:34:02 |
| 9 | A.   Would have first been, I believe, 1999. | 13:34:03 |
| 10 | Q.   Is 1999 the first time that you started to | 13:34:15 |
| 11 | think about researching copyright issues related to | 13:34:20 |
| 12 | Mr. Shuster or his estate? | 13:34:25 |
| 13 | A.   Boy, the first time I started thinking | 13:34:27 |
| 14 | about that.   Probably I thought about it earlier. | 13:34:33 |
| 15 | Q.   When is the first time you actually did | 13:34:39 |
| 16 | anything on that subject? | 13:34:40 |
| 17 | A.   As far as research? | 13:34:42 |
| 18 | Q.   You said you probably thought about it | 13:34:46 |
| 19 | earlier, right? | 13:34:47 |
| 20 | A.   Uh-huh. | 13:34:51 |
| 21 | Q.   So when is the first time you decided to do | 13:34:51 |
| 22 | something, whether it be start looking things up on | 13:34:53 |
| 23 | the Internet, start making inquiries to friends, | 13:34:55 |
| 24 | maybe look for a lawyer regarding the subject of his | 13:34:59 |
| 25 | copyright and whether he had a termination interest | 13:35:03 |

EXHIBIT 37
1212

MARK WARREN PEARY - 6/29/2011

Page 111

| | | |
|---|---|---|
| 1 | and -- | 13:35:07 |
| 2 | A.   Yeah. | 13:35:07 |
| 3 | Q.   -- related to Superman. | 13:35:08 |
| 4 | A.   Yeah, that might have been when I first | 13:35:13 |
| 5 | took a look through the copyright code, maybe 1998 I | 13:35:15 |
| 6 | was looking through that, and then after that that's | 13:35:19 |
| 7 | when I contacted an attorney in Albuquerque. | 13:35:25 |
| 8 | Q.   Did you meet with him? | 13:35:31 |
| 9 | A.   Yes. | 13:35:36 |
| 10 | Q.   Where? | 13:35:36 |
| 11 | A.   In Albuquerque. | 13:35:37 |
| 12 | Q.   Who attended the meeting? | 13:35:38 |
| 13 | A.   I think it was just me. | 13:35:40 |
| 14 | Q.   Did your mom know what you were doing? | 13:35:45 |
| 15 | A.   I don't believe so. | 13:35:49 |
| 16 | Q.   And you decided not to hire this fellow? | 13:35:55 |
| 17 | A.   That's correct. | 13:35:57 |
| 18 | Q.   And you don't know his name? | 13:35:58 |
| 19 | A.   I can't recall. | 13:36:00 |
| 20 | Q.   Did you get any documents from him? | 13:36:01 |
| 21 | A.   I don't -- I don't think so. | 13:36:03 |
| 22 | Q.   Where did you get his name from? | 13:36:11 |
| 23 | A.   That's a long time back.  I don't know if | 13:36:16 |
| 24 | it was the -- the phone book or under "attorneys," | 13:36:21 |
| 25 | it said "intellectual property" or something of that | 13:36:26 |

EXHIBIT 37
1213

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | nature.  I really don't remember. | 13:36:28 |
| 2 | Q.   Why didn't you hire him? | 13:36:30 |
| 3 | A.   Gee, I think it's because I thought they | 13:36:34 |
| 4 | maybe weren't as good as the best.  Maybe they | 13:36:37 |
| 5 | didn't know everything that they should have. | 13:36:43 |
| 6 | Q.   "They" is whom? | 13:36:46 |
| 7 | A.   The attorney. | 13:36:47 |
| 8 | Q.   Was it a law firm? | 13:36:48 |
| 9 | A.   It was -- well, it was one attorney in a | 13:36:50 |
| 10 | firm. | 13:36:52 |
| 11 | Q.   Okay.  And so after that -- that was the | 13:36:55 |
| 12 | first person you've ever -- lawyer you've ever | 13:36:58 |
| 13 | contacted -- | 13:37:02 |
| 14 | A.   Yes. | 13:37:02 |
| 15 | Q.   -- in pursuit of this issue, right? | 13:37:03 |
| 16 | A.   Yes. | 13:37:03 |
| 17 | Q.   But before you contacted that lawyer, had | 13:37:05 |
| 18 | you spoken to other people, like in the comic book | 13:37:07 |
| 19 | business or in the entertainment business about this | 13:37:10 |
| 20 | issue? | 13:37:16 |
| 21 | A.   It's possible that just in conversation | 13:37:20 |
| 22 | that I talked with other people, but not lawyers. | 13:37:27 |
| 23 | Q.   Okay.  Were you starting to do research? | 13:37:29 |
| 24 | A.   Yes. | 13:37:34 |
| 25 | Q.   Is there any particular reason why you | 13:37:36 |

EXHIBIT 37
1214

MARK WARREN PEARY - 6/29/2011

Page 113

| | | |
|---|---|---|
| 1 | didn't come across Mr. Toberoff's name back in 1999 | 13:37:37 |
| 2 | when you were first -- or in '98 when you were first | 13:37:41 |
| 3 | looking into this? | 13:37:44 |
| 4 | A.  Well, I didn't think of contacting a lawyer | 13:37:45 |
| 5 | at all until sometime in '99 -- | 13:37:52 |
| 6 | Q.  Right. | 13:37:54 |
| 7 | A.  -- probably the second half.  Because I | 13:37:55 |
| 8 | wasn't sure of what rights were available under the | 13:37:58 |
| 9 | law.  And I -- I guess I wanted to go to a local | 13:38:00 |
| 10 | lawyer that was right there in town so I could just | 13:38:06 |
| 11 | drive to the office and meet with them. | 13:38:10 |
| 12 | Q.  In Santa Fe? | 13:38:19 |
| 13 | A.  That was in Albuquerque. | 13:38:19 |
| 14 | Q.  That was Albuquerque? | 13:38:19 |
| 15 | A.  That was Albuquerque. | 13:38:19 |
| 16 | Q.  You were living in Albuquerque then? | 13:38:19 |
| 17 | A.  Yes, just before I moved. | 13:38:19 |
| 18 | Q.  Living alone? | 13:38:20 |
| 19 | A.  I think it was -- it was after my father | 13:38:21 |
| 20 | died, so I was with -- I was just with -- with my | 13:38:24 |
| 21 | mother, just the two of us. | 13:38:29 |
| 22 | Q.  When your dad passed you were all living in | 13:38:32 |
| 23 | Albuquerque? | 13:38:35 |
| 24 | A.  Yes. | 13:38:36 |
| 25 | Q.  Okay.  And then you folks moved to -- | 13:38:37 |

EXHIBIT 37
1215

MARK WARREN PEARY - 6/29/2011

Page 114

| | | |
|---|---|---|
| 1 | A.  Santa Fe. | 13:38:42 |
| 2 | Q.  -- Santa Fe? | 13:38:43 |
| 3 | A.  Yes. | 13:38:44 |
| 4 | Q.  So you expanded your search then as time | 13:38:46 |
| 5 | on -- went by and extended it to Los Angeles? | 13:38:52 |
| 6 | A.  Yes. | 13:38:56 |
| 7 | Q.  Okay.  So from the time that you met with | 13:38:58 |
| 8 | this attorney in Albuquerque until the time that you | 13:39:03 |
| 9 | identified Mr. Toberoff, had you identified any | 13:39:05 |
| 10 | other attorneys in between then, those two time | 13:39:08 |
| 11 | periods? | 13:39:12 |
| 12 | A.  I -- I didn't talk with any others.  Is | 13:39:17 |
| 13 | that what you're asking? | 13:39:21 |
| 14 | Q.  Yes. | 13:39:21 |
| 15 | A.  Okay. | 13:39:24 |
| 16 | Q.  Were you referred to any? | 13:39:26 |
| 17 | A.  No. | 13:39:27 |
| 18 | Q.  Okay.  And you said you got a -- you were | 13:39:29 |
| 19 | studying the copyright code.  How did you get a copy | 13:39:33 |
| 20 | of it? | 13:39:36 |
| 21 | A.  It must have been -- must have been at the | 13:39:39 |
| 22 | university library because I photocopied some | 13:39:42 |
| 23 | sheets. | 13:39:46 |
| 24 | Q.  University of New Mexico? | 13:39:47 |
| 25 | A.  I believe so. | 13:39:48 |

EXHIBIT 37
1216

MARK WARREN PEARY - 6/29/2011

| | |
|---|---|
| 1    Q.   Okay.  What else did you research besides | 13:39:56 |
| 2  the copyright code?  What other materials? | 13:40:00 |
| 3    A.   With regard to? | 13:40:07 |
| 4    Q.   This issue of whether there was any | 13:40:08 |
| 5  copyright rights that your family might have. | 13:40:10 |
| 6    A.   I found out that there was legislation that | 13:40:18 |
| 7  was passed that -- that gave the -- broadened the | 13:40:20 |
| 8  scope of rights to estates. | 13:40:28 |
| 9    Q.   How did you find out about that | 13:40:35 |
| 10  legislation? | 13:40:37 |
| 11    A.   Oh, just looking around. | 13:40:40 |
| 12    Q.   Had you heard that the Siegel family had or | 13:40:45 |
| 13  was in the process of pursuing termination rights on | 13:40:51 |
| 14  behalf of Jerome Siegel? | 13:40:54 |
| 15    A.   I had heard that. | 13:40:57 |
| 16    Q.   And how had you heard that? | 13:40:58 |
| 17    A.   Oh, boy.  I -- I don't know exactly.  I -- | 13:41:05 |
| 18  I just know I had heard about it.  I -- | 13:41:11 |
| 19    Q.   Did you come across a notice of termination | 13:41:18 |
| 20  of copyright interest that the Siegel family served | 13:41:22 |
| 21  in 1997? | 13:41:27 |
| 22    A.   Did I see that? | 13:41:31 |
| 23    Q.   Yes. | 13:41:31 |
| 24    A.   Their notice of termination?  No, I did not | 13:41:32 |
| 25  see that. | 13:41:35 |

EXHIBIT 37
1217

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q.  Okay.  Did you speak to Joanne or Laura | 13:41:36 |
| 2 | Siegel about their having filed such a notice of | 13:41:39 |
| 3 | termination around the time that they did? | 13:41:43 |
| 4 | A.  Not at that time. | 13:41:46 |
| 5 | Q.  Do you know if your mom did? | 13:41:48 |
| 6 | A.  I don't believe so. | 13:41:50 |
| 7 | Q.  Is it -- is it -- was it upon learning that | 13:41:52 |
| 8 | they were seeking to terminate copyright interest | 13:41:54 |
| 9 | that spurred you to begin inquiring about the same | 13:42:00 |
| 10 | thing? | 13:42:03 |
| 11 | A.  I'm sure it's a factor. | 13:42:08 |
| 12 | Q.  What were the other factors? | 13:42:09 |
| 13 | A.  I don't know.  I guess that's the main | 13:42:15 |
| 14 | thing that spurred me. | 13:42:17 |
| 15 | Q.  At the time that you began thinking about | 13:42:20 |
| 16 | this, were you under the belief that your family had | 13:42:23 |
| 17 | no termination interests? | 13:42:27 |
| 18 | A.  At one time I had thought that and later | 13:42:33 |
| 19 | changed -- changed my mind. | 13:42:37 |
| 20 | Q.  What changed your mind? | 13:42:40 |
| 21 | A.  The legislation. | 13:42:42 |
| 22 | Q.  Prior to the legislation -- you're talking | 13:42:45 |
| 23 | about a change to the copyright act -- | 13:42:49 |
| 24 | A.  Yes. | 13:42:51 |
| 25 | Q.  -- that became effective in or about 1998, | 13:42:51 |

EXHIBIT 37
1218

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | right? | 13:42:51 |
| 2 | A.   Yeah, I believe. | 13:42:55 |
| 3 | Q.   Sometimes known as the Sonny Bono Copyright | 13:42:56 |
| 4 | Extension Act? | 13:42:59 |
| 5 | A.   Yes. | 13:43:00 |
| 6 | Q.   Okay.  Prior to your learning about that | 13:43:01 |
| 7 | act, you were of the view that your family had no | 13:43:06 |
| 8 | termination rights? | 13:43:09 |
| 9 | A.   I didn't -- didn't think so.  I wasn't | 13:43:10 |
| 10 | certain.  I -- I wasn't positive, so that's what | 13:43:17 |
| 11 | spurred me to do the research. | 13:43:24 |
| 12 | Q.   And why did you think that the family might | 13:43:27 |
| 13 | not have termination rights prior to the -- the | 13:43:30 |
| 14 | change in the law? | 13:43:33 |
| 15 | A.   The -- when I looked at the copyright code, | 13:43:35 |
| 16 | it -- it only stated certain relations to creators | 13:43:41 |
| 17 | at that time, spouses and children, and it didn't | 13:43:47 |
| 18 | say anything else. | 13:43:52 |
| 19 | Q.   And you were aware that Joe Shuster had | 13:43:54 |
| 20 | died without a surviving spouse, correct? | 13:43:57 |
| 21 | A.   Yes. | 13:43:57 |
| 22 | Q.   And without a surviving child or | 13:44:00 |
| 23 | grandchild, correct? | 13:44:04 |
| 24 | A.   That's correct. | 13:44:05 |
| 25 | Q.   And you were also aware that he had never | 13:44:08 |

EXHIBIT 37
1219

MARK WARREN PEARY - 6/29/2011

Page 118

| | |
|---|---|
| 1 | exercised a right of termination during his | 13:44:10 |
| 2 | lifetime, right? | 13:44:13 |
| 3 | A.  That's right. | 13:44:15 |
| 4 | Q.  But you were aware that he did have an | 13:44:15 |
| 5 | opportunity to have done so prior to his death? | 13:44:17 |
| 6 | A.  I'm not -- I'm not sure about those | 13:44:20 |
| 7 | details.  I'm not sure. | 13:44:32 |
| 8 | Q.  Did you discuss with your mother from time | 13:44:32 |
| 9 | to time this idea or view that because he did not | 13:44:38 |
| 10 | leave a surviving spouse or issue that he -- this is | 13:44:41 |
| 11 | after he died, I mean -- | 13:44:47 |
| 12 | A.  Uh-huh. | 13:44:49 |
| 13 | Q.  -- that there was no right of termination? | 13:44:49 |
| 14 | Is that a topic you discussed with your mom? | 13:44:53 |
| 15 | A.  I don't think it was discussed until I got | 13:44:56 |
| 16 | serious about confirming we actually had rights. | 13:45:01 |
| 17 | And then at that point, probably at that point, I | 13:45:08 |
| 18 | probably discussed it. | 13:45:11 |
| 19 | MR. TOBEROFF:  Again, Warren, if you have a | 13:45:14 |
| 20 | basis for -- if you remember discussing something, | 13:45:17 |
| 21 | of course, talk about it.  But if you don't have a | 13:45:24 |
| 22 | specific memory or any memory, don't speculate as to | 13:45:27 |
| 23 | what you probably did or probably didn't do. | 13:45:34 |
| 24 | MR. PETROCELLI:  Marc, honestly, I don't | 13:45:34 |
| 25 | think that's necessary.  He wasn't speculating. | 13:45:36 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1220

MARK WARREN PEARY - 6/29/2011

Page 119

```
 1              MR. TOBEROFF:  I didn't say he was        13:45:37

 2    speculating.                                        13:45:38

 3              MR. PETROCELLI:  There's no reason --     13:45:39

 4              MR. TOBEROFF:  I'm cautioning him.        13:45:40

 5              MR. PETROCELLI:  -- to caution him not to 13:45:41

 6    speculate when he's not speculating.                13:45:44

 7              MR. TOBEROFF:  Actually, I think he may   13:45:45

 8    have been speculating, but I'm not going to pass    13:45:47

 9    judgment on that.  I'm just advising my client not  13:45:48

10    to -- there's a human tendency to try to fill in the 13:45:50

11    blanks.                                             13:45:57

12    BY MR. PETROCELLI:                                  13:45:57

13        Q.  You understand, though, that I'm entitled  13:45:58

14    to your best recollection no matter how faint or    13:46:00

15    vague it might be?                                  13:46:05

16        A.  Yes, and it is faint often.                13:46:05

17        Q.  Okay.  That's okay.                         13:46:07

18              MR. TOBEROFF:  He is also entitled to your 13:46:11

19    best estimation if you have a basis for estimating. 13:46:13

20    BY MR. PETROCELLI:                                  13:46:13

21        Q.  I am.                                       13:46:15

22              So getting back to where we were.  Did you 13:46:19

23    ever discuss with your mother whether Joe Shuster   13:46:29

24    had a right of termination with regard to Superman  13:46:32

25    copyrights prior to the time that Joe died?         13:46:37
```

MARK WARREN PEARY - 6/29/2011

Page 120

```
 1              MR. TOBEROFF:  Asked and answered.         13:46:41

 2              THE WITNESS:  No.                          13:46:42

 3    BY MR. PETROCELLI:                                   13:46:42

 4         Q.  Were you even aware of the subject prior to 13:46:45

 5    the time of Joe -- that Joe died?                    13:46:48

 6              MR. TOBEROFF:  Asked and answered.         13:46:50

 7              THE WITNESS:  No.                          13:46:51

 8    BY MR. PETROCELLI:                                   13:46:51

 9         Q.  When is the first time you ever learned     13:46:54

10    about the idea that an heir -- or an author, I       13:46:57

11    should say, could terminate a right interest?        13:47:01

12              MR. TOBEROFF:  You mean a copyright grant? 13:47:08

13              MR. PETROCELLI:  Copyright grant, yes.     13:47:10

14              THE WITNESS:  Probably around 1998.        13:47:14

15    BY MR. PETROCELLI:                                   13:47:14

16         Q.  And how did you become aware of it?         13:47:19

17         A.  I became aware of the idea, of the          13:47:20

18    possibility, it's as I stated before, I did some     13:47:26

19    research in copyright law --                         13:47:33

20         Q.  Yeah, I want to make sure you're            13:47:36

21    understanding what I'm asking.                       13:47:37

22              I'm not asking you when you started to     13:47:38

23    believe that the Shuster family had the ability to   13:47:41

24    terminate a copyright grant.  I'm asking when did    13:47:43

25    you first become aware that there was even such a    13:47:46
```

EXHIBIT 37
1222

MARK WARREN PEARY - 6/29/2011

Page 121

| | | |
|---|---|---|
| 1 | thing possible in the law of copyright, that | 13:47:48 |
| 2 | creators could terminate copyright grants? | 13:47:52 |
| 3 | A. It's -- well, it would be around that time | 13:47:55 |
| 4 | and that's when I heard something about the Siegel | 13:47:58 |
| 5 | termination. | 13:48:01 |
| 6 | Q. Okay. And when you heard that, did you | 13:48:03 |
| 7 | talk to your mom about it and ask, because she was | 13:48:08 |
| 8 | the sole beneficiary of the estate, whether she knew | 13:48:11 |
| 9 | anything about this, whether she had ever spoken to | 13:48:15 |
| 10 | her brother about it, you know -- | 13:48:18 |
| 11 | A. Well, no, I don't think so. Initially, I | 13:48:20 |
| 12 | didn't think that we had anything. | 13:48:23 |
| 13 | Q. Why did you think that, because your | 13:48:24 |
| 14 | reading of the code? | 13:48:27 |
| 15 | A. Yes. | 13:48:28 |
| 16 | Q. Okay. Did you -- during this period, '97, | 13:48:29 |
| 17 | '98 that you're now describing, did you come across | 13:48:34 |
| 18 | any of the agreements that Joe had signed with DC or | 13:48:41 |
| 19 | Warner Bros. including Exhibit 2 in front of you? | 13:48:47 |
| 20 | A. No. | 13:48:50 |
| 21 | Q. As of the time that you first contacted | 13:48:53 |
| 22 | Mr. Toberoff, had you come across Exhibit 2? | 13:48:54 |
| 23 | A. No. | 13:49:00 |
| 24 | Q. Had you come across any of the agreements | 13:49:03 |
| 25 | that had been signed either by Joe Shuster or by | 13:49:06 |

Merrill   Corporation   -   Los Angeles

800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1223

MARK WARREN PEARY - 6/29/2011

Page 122

| | | |
|---|---|---|
| 1 | Jean Peavy or by Frank Shuster? | 13:49:11 |
| 2 | A.  I don't believe so. | 13:49:13 |
| 3 | Q.  Were you aware of the existence of such | 13:49:17 |
| 4 | agreements as of the time you contacted | 13:49:19 |
| 5 | Mr. Toberoff? | 13:49:21 |
| 6 | A.  I don't think so. | 13:49:23 |
| 7 | Q.  And remind me, I may have asked you this, | 13:49:30 |
| 8 | when was the first time you saw Exhibit 2? | 13:49:32 |
| 9 | MR. TOBEROFF:  Lacks foundation.  Assumes | 13:49:41 |
| 10 | facts. | 13:49:43 |
| 11 | You can answer. | 13:49:47 |
| 12 | THE WITNESS:  Oh.  I don't think I've seen | 13:49:47 |
| 13 | it before, actually. | 13:49:50 |
| 14 | BY MR. PETROCELLI: | 13:49:50 |
| 15 | Q.  Before today? | 13:49:52 |
| 16 | A.  Yes. | 13:49:52 |
| 17 | Q.  Okay.  When your uncle died, Joe Shuster, | 13:49:53 |
| 18 | in July of 1992, did you become aware about any | 13:50:32 |
| 19 | dealings that your mother then had with DC Comics or | 13:50:37 |
| 20 | Warner Communications regarding financial affairs? | 13:50:43 |
| 21 | A.  Yeah, the only dealing I'm aware of is she | 13:50:48 |
| 22 | asked for them to cover some expenses because he | 13:50:55 |
| 23 | had -- he had more debts than assets. | 13:50:58 |
| 24 | Q.  Okay.  Well, take a look at Exhibit 3. | 13:51:01 |
| 25 | Jason, you can maybe make a pile there so | 13:51:07 |

EXHIBIT 37
1224

MARK WARREN PEARY - 6/29/2011

Page 123

| | | |
|---|---|---|
| 1 | we don't lose track of the official exhibits. | 13:51:14 |
| 2 | Mr. Peary can also take that complaint.  Put that | 13:51:18 |
| 3 | over there, too.  Thank you. | 13:51:21 |
| 4 | (The document referred to was | 13:51:23 |
| 5 | marked for identification by the | 13:51:23 |
| 6 | C.S.R. as Exhibit 3 and attached to | 13:51:23 |
| 7 | this deposition.) | 13:51:23 |
| 8 | BY MR. PETROCELLI: | 13:51:23 |
| 9 | Q.  Exhibit 3 is two documents.  One is a | 13:51:26 |
| 10 | handwritten note from Jean Peavy to Paul, Paul is | 13:51:32 |
| 11 | Paul Levitz, dated August 21, 1992 and then there's | 13:51:36 |
| 12 | a typewritten letter from Jean to Marty Payson, the | 13:51:41 |
| 13 | then-vice president of Time-Warner dated August 21, | 13:51:47 |
| 14 | 1992. | 13:51:50 |
| 15 | Have you ever seen either of these | 13:51:52 |
| 16 | documents before? | 13:51:53 |
| 17 | A.  I don't believe so, no. | 13:51:59 |
| 18 | Q.  In 1992 -- well, turn to the top of page 2 | 13:52:02 |
| 19 | of the typewritten letter, your mom's typewritten | 13:52:19 |
| 20 | letter. | 13:52:29 |
| 21 | Do you have that? | 13:52:29 |
| 22 | A.  Yes. | 13:52:30 |
| 23 | Q.  And you'll see at the very top of the page | 13:52:30 |
| 24 | in that first paragraph that says: | 13:52:33 |
| 25 | "This is very embarrassing." | 13:52:34 |

EXHIBIT 37
1225

MARK WARREN PEARY - 6/29/2011

Page 124

| | | |
|---|---|---|
| 1 | A.  Yes. | 13:52:36 |
| 2 | Q.  She says in the middle of the sentence, in | 13:52:38 |
| 3 | the middle of the paragraph: | 13:52:41 |
| 4 | "I had my son itemize Joe's | 13:52:42 |
| 5 | 1992 checks and bank statements to | 13:52:45 |
| 6 | see where his money went.  We've | 13:52:47 |
| 7 | been able to account for most of | 13:52:51 |
| 8 | his checks." | 13:52:53 |
| 9 | And that's something that you did at your | 13:52:53 |
| 10 | mom's request, right? | 13:52:56 |
| 11 | A.  Yeah, at the time of his death. | 13:52:56 |
| 12 | Q.  Correct? | 13:52:56 |
| 13 | A.  Yes. | 13:52:56 |
| 14 | Q.  Okay.  Were you aware that your mother was | 13:52:58 |
| 15 | communicating with Time-Warner about these matters? | 13:53:00 |
| 16 | A.  I had some awareness. | 13:53:07 |
| 17 | Q.  Did you help her draft the letters? | 13:53:09 |
| 18 | A.  I -- no, I did not. | 13:53:12 |
| 19 | Q.  Were you living with her at the time? | 13:53:14 |
| 20 | A.  Yes, I was -- after my father had died and | 13:53:15 |
| 21 | before we moved to Santa Fe, yes. | 13:53:21 |
| 22 | Q.  I thought your dad died in 1996. | 13:53:23 |
| 23 | A.  Yes. | 13:53:25 |
| 24 | Q.  This is 1992. | 13:53:25 |
| 25 | A.  Wait a minute.  After?  Oh, I'm mixed up. | 13:53:26 |

EXHIBIT 37
1226

MARK WARREN PEARY - 6/29/2011

Page 125

| 1 | Sorry.  Okay.  Well, he was alive, then.  Yeah. | 13:53:28 |
| 2 | Anyway, I -- 1992.  That's a long time ago.  Didn't | 13:53:31 |
| 3 | realize. | 13:53:38 |
| 4 | I -- no, I did not help her with this, | 13:53:38 |
| 5 | though.  I did not see this. | 13:53:41 |
| 6 | Q.  Do you know if your dad was helping your | 13:53:42 |
| 7 | mom write these letters? | 13:53:44 |
| 8 | A.  No, I don't know. | 13:53:46 |
| 9 | Q.  Did you attend Joe Shuster's funeral? | 13:53:53 |
| 10 | A.  Yes. | 13:53:56 |
| 11 | Q.  The one in Los Angeles or the memorial | 13:54:02 |
| 12 | service in New York? | 13:54:03 |
| 13 | A.  It was New York. | 13:54:04 |
| 14 | (Videographer interruption.) | 13:54:15 |
| 15 | BY MR. PETROCELLI: | 13:54:15 |
| 16 | Q.  The next paragraph on the second page of | 13:54:18 |
| 17 | your mother's typewritten letter it indicates that | 13:54:24 |
| 18 | Joe was paying over $1,200 a month to Joanne Siegel | 13:54:35 |
| 19 | for some kind of commission. | 13:54:40 |
| 20 | Do you see that? | 13:54:41 |
| 21 | A.  Yes. | 13:54:41 |
| 22 | Q.  Were you aware over the years that your | 13:54:42 |
| 23 | uncle was paying a commission to the Siegel family? | 13:54:47 |
| 24 | A.  Not -- not at the time. | 13:54:55 |
| 25 | Q.  And after your uncle's death in 1992, were | 13:54:57 |

EXHIBIT 37
1227

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | you aware that those commission payments continued? | 13:55:01 |
| 2 | A.  After his death? | 13:55:08 |
| 3 | Q.  Yes.  Were you aware whether any commission | 13:55:11 |
| 4 | payments continued to Joanne Siegel after Joe's | 13:55:13 |
| 5 | death based on money that Warner Bros. or Warner | 13:55:16 |
| 6 | Communications or DC was paying to the Shuster | 13:55:21 |
| 7 | family? | 13:55:25 |
| 8 | A.  She might have mentioned something about | 13:55:26 |
| 9 | it. | 13:55:29 |
| 10 | Q.  "She" being whom? | 13:55:30 |
| 11 | A.  Jean. | 13:55:30 |
| 12 | Q.  Mentioned to you that commissions were | 13:55:32 |
| 13 | being paid? | 13:55:33 |
| 14 | A.  I -- I think she mentioned something. | 13:55:34 |
| 15 | That's all I can recall. | 13:55:36 |
| 16 | Q.  And do you know why commissions were being | 13:55:37 |
| 17 | paid to Joanne Siegel for monies paid to the Shuster | 13:55:41 |
| 18 | family? | 13:55:44 |
| 19 | A.  Not really. | 13:55:45 |
| 20 | Q.  Did you ever ask, "Why are we paying her | 13:55:49 |
| 21 | money?" | 13:55:52 |
| 22 | A.  Well, it was Joe, she told me it was Joe | 13:55:52 |
| 23 | that was paying. | 13:55:56 |
| 24 | Q.  What about after Joe's death? | 13:55:56 |
| 25 | A.  No. | 13:55:59 |

Merrill   Corporation   -   Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1228

MARK WARREN PEARY - 6/29/2011

Page 127

| | | | |
|---|---|---|---|
| 1 | Q. | No, what? | 13:55:59 |
| 2 | A. | There was nothing paid after his death. | 13:55:59 |
| 3 | Q. | Okay.  Go down to the fourth paragraph, | 13:56:05 |
| 4 | | take a quick look at that, "Joe's lady friend." | 13:56:07 |
| 5 | A. | Uh-huh. | 13:56:10 |
| 6 | Q. | It said: | 13:56:20 |

```
 7              "Joe's lady friend admitted      13:56:22
 8         to me how generous he had been to     13:56:24
 9         her and her son.  Her son is a        13:56:26
10         psychology professor."                13:56:28
```

| | | | |
|---|---|---|---|
| 11 | | Do you see that? | 13:56:28 |
| 12 | A. | Yes. | 13:56:30 |
| 13 | Q. | Do you know who Joe's lady friend was at | 13:56:30 |
| 14 | | that time? | 13:56:33 |
| 15 | A. | I never met her, I just saw pictures as we | 13:56:38 |
| 16 | | stated earlier.  I just saw pictures of her. | 13:56:43 |
| 17 | Q. | Is it your understanding the reference to | 13:56:46 |
| 18 | | the lady friend was the woman that Joe had married? | 13:56:48 |
| 19 | | Because you talked about pictures of Joe's former | 13:56:50 |
| 20 | | spouse. | 13:56:52 |
| 21 | A. | That's a good question.  Joe's lady friend. | 13:56:52 |
| 22 | | You know, it must have been another lady friend | 13:56:59 |
| 23 | | after. | 13:57:01 |
| 24 | Q. | Did you ever meet that person? | 13:57:01 |
| 25 | A. | No. | 13:57:03 |

EXHIBIT 37
1229

MARK WARREN PEARY - 6/29/2011

Page 128

| | | |
|---|---|---|
| 1 | Q.  Do you know who the son is, the psychology | 13:57:04 |
| 2 | professor? | 13:57:05 |
| 3 | A.  I think I very briefly met him, very | 13:57:05 |
| 4 | briefly after Joe's death. | 13:57:11 |
| 5 | Q.  Where did you meet him? | 13:57:13 |
| 6 | A.  He came by Joe's apartment briefly. | 13:57:16 |
| 7 | Q.  Do you remember his name? | 13:57:20 |
| 8 | A.  Oh, boy, no. | 13:57:21 |
| 9 | Q.  Have you had any contact with him since? | 13:57:22 |
| 10 | A.  No. | 13:57:23 |
| 11 | Q.  Do you know where he taught? | 13:57:24 |
| 12 | A.  No, I don't remember. | 13:57:28 |
| 13 | Q.  And then if you go to the last page of your | 13:57:36 |
| 14 | mother's letter, you'll see a reference to the | 13:57:37 |
| 15 | agreement with Joanne Siegel to take 20 percent of | 13:57:41 |
| 16 | his, his being Joe's, income. | 13:57:44 |
| 17 | Have you ever seen a written agreement to | 13:57:48 |
| 18 | that effect? | 13:57:50 |
| 19 | A.  No, I haven't. | 13:57:51 |
| 20 | Q.  Now, did you have any interactions at all | 13:57:59 |
| 21 | in 1992 with the people at Time-Warner, Time | 13:58:01 |
| 22 | Comm- -- Time-Warner or DC Comics? | 13:58:06 |
| 23 | A.  No. | 13:58:07 |
| 24 | Q.  Like Paul Levitz or Marty Payson, any of | 13:58:08 |
| 25 | those people? | 13:58:11 |

EXHIBIT 37
1230

MARK WARREN PEARY - 6/29/2011

Page 129

| | | |
|---|---|---|
| 1 | A.  No, I did not. | 13:58:12 |
| 2 | Q.  At any time prior to contacting | 13:58:13 |
| 3 | Mr. Toberoff did you have any contact with any | 13:58:17 |
| 4 | representatives of DC Comics or Time-Warner? | 13:58:20 |
| 5 | A.  If -- if I had -- I might have had contact, | 13:58:26 |
| 6 | but it wasn't regarding any rights. | 13:58:32 |
| 7 | Q.  What was it regarding? | 13:58:34 |
| 8 | A.  I think my mother had written to Paul | 13:58:36 |
| 9 | about, A, "I've got a screenplay, are you | 13:58:40 |
| 10 | interested?"  And there was another book that I had | 13:58:44 |
| 11 | written to submit to Warner Books and she had asked | 13:58:48 |
| 12 | for a contact.  That's all I recall. | 13:58:54 |
| 13 | Q.  Did you ever talk to Frank Shuster -- he | 13:58:58 |
| 14 | was your uncle, right? | 13:59:01 |
| 15 | A.  Yes. | 13:59:01 |
| 16 | Q.  About Joe Shuster's copyright interests? | 13:59:03 |
| 17 | A.  No. | 13:59:08 |
| 18 | Q.  Do you know what year your uncle passed | 13:59:18 |
| 19 | away? | 13:59:22 |
| 20 | A.  I don't recall the exact year. | 13:59:22 |
| 21 | Q.  1996 sound right? | 13:59:29 |
| 22 | A.  Yeah. | 13:59:32 |
| 23 | Q.  Okay.  Prior to Frank Shuster's death -- | 13:59:32 |
| 24 | that's what I meant by "your uncle." | 13:59:39 |
| 25 | A.  Uh-huh. | 13:59:43 |

EXHIBIT 37
1231

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | Q. Prior to Frank Shuster's death in 1996, to | 13:59:43 |
| 2 | be clear, you never had any discussions with him on | 13:59:46 |
| 3 | the subject of copyright interests or terminating | 13:59:49 |
| 4 | copyright interests? | 13:59:50 |
| 5 | A. No, I did not. | 13:59:50 |
| 6 | Q. Okay. Can you turn to Exhibit 4. | 13:59:52 |
| 7 | A. Oh, okay. | 14:00:14 |
| 8 | (The document referred to was | 14:00:14 |
| 9 | marked for identification by the | 14:00:14 |
| 10 | C.S.R. as Exhibit 4 and attached to | 14:00:14 |
| 11 | this deposition.) | 14:00:16 |
| 12 | BY MR. PETROCELLI: | 14:00:16 |
| 13 | Q. This is a letter from Frank Shuster to Paul | 14:00:16 |
| 14 | Levitz dated September 10, 1992. | 14:00:18 |
| 15 | Have you ever seen this letter before | 14:00:23 |
| 16 | today? | 14:00:24 |
| 17 | A. I don't think so. | 14:00:35 |
| 18 | Q. Did you become aware that after Joe | 14:00:36 |
| 19 | Shuster's death, as a result of your mother's | 14:00:37 |
| 20 | efforts, DC Comics or Time-Warner agreed to make | 14:00:42 |
| 21 | pension payments or payments to the Shuster family? | 14:00:54 |
| 22 | A. I was aware of a pension agreement. | 14:00:57 |
| 23 | Q. And are you aware that after Joe Shuster's | 14:01:02 |
| 24 | death, that -- that the folks at Time-Warner or DC | 14:01:04 |
| 25 | Comics agreed to increase payments? | 14:01:12 |

EXHIBIT 37
1232

MARK WARREN PEARY - 6/29/2011

Page 131

| | | |
|---|---|---|
| 1 | A.   No.   I didn't know the details, no. | 14:01:17 |
| 2 | Q.   Was your father working in 1992 or was he | 14:01:21 |
| 3 | retired or disabled? | 14:01:27 |
| 4 | A.   I believe he was mostly retired. | 14:01:33 |
| 5 | Q.   Do you know if he had a pension? | 14:01:40 |
| 6 | A.   Yes. | 14:01:41 |
| 7 | Q.   From where? | 14:01:44 |
| 8 | A.   It was a teacher retirement system and a | 14:01:50 |
| 9 | civil service. | 14:01:52 |
| 10 | Q.   From Texas? | 14:01:54 |
| 11 | A.   Yes. | 14:01:55 |
| 12 | Q.   El -- where did you say? | 14:01:58 |
| 13 | A.   Texas A&M. | 14:01:59 |
| 14 | Q.   That's right, Texas A&M. | 14:02:01 |
| 15 | Did your mother have any source of income | 14:02:03 |
| 16 | in 1992 in the years thereafter other than what she | 14:02:10 |
| 17 | received from DC Comics or Time-Warner? | 14:02:13 |
| 18 | A.   She had a survivor's pension. | 14:02:16 |
| 19 | Q.   From your dad -- for your dad's employment? | 14:02:23 |
| 20 | A.   Yes. | 14:02:26 |
| 21 | Q.   Other than that? | 14:02:26 |
| 22 | A.   No. | 14:02:26 |
| 23 | Q.   And forgive me, I don't remember your | 14:02:31 |
| 24 | answer, but have you seen this document, Exhibit 4, | 14:02:33 |
| 25 | before today? | 14:02:37 |

Merrill   Corporation   -   Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1233

MARK WARREN PEARY - 6/29/2011

Page 132

| | | |
|---|---|---|
| 1 | A.   I don't believe so. | 14:02:38 |
| 2 | Q.   Okay.  Were you aware that Frank Shuster | 14:02:43 |
| 3 | had requested that payments -- were you aware that | 14:02:46 |
| 4 | Time-Warner or DC Comics was making payments also to | 14:02:54 |
| 5 | Frank Shuster after Joe Shuster's death? | 14:02:58 |
| 6 | A.   I don't -- no, I don't think I knew the | 14:03:03 |
| 7 | details. | 14:03:05 |
| 8 | Q.   Did you know that he was receiving money? | 14:03:05 |
| 9 | A.   No. | 14:03:07 |
| 10 | Q.   I'll direct you to the third paragraph of | 14:03:12 |
| 11 | this letter by Frank to Paul Levitz.  He states: | 14:03:16 |
| 12 | "The suggestion that | 14:03:22 |
| 13 | payments were made in her name" -- | 14:03:23 |
| 14 | meaning your mother's name -- "she | 14:03:25 |
| 15 | would not pursue the termination of | 14:03:29 |
| 16 | the Superman copyright as provided | 14:03:31 |
| 17 | for to creators' heirs in the 1976 | 14:03:34 |
| 18 | U.S. Copyright Act and that she | 14:03:38 |
| 19 | could send me whatever money I | 14:03:42 |
| 20 | wanted as a gift which would not be | 14:03:43 |
| 21 | taxable to me." | 14:03:45 |
| 22 | Were you aware of an arrangement whereby DC | 14:03:46 |
| 23 | Comics or Time-Warner agreed to give money to Jean | 14:03:50 |
| 24 | who, in turn, would then gift it to Frank? | 14:03:55 |
| 25 | A.   I -- I never heard that from her, those | 14:03:58 |

EXHIBIT 37
1234

MARK WARREN PEARY - 6/29/2011

Page 133

| | | |
|---|---|---|
| 1 | details, no. | 14:04:04 |
| 2 | Q.  Did you know of any of this prior to the | 14:04:05 |
| 3 | time you contacted Mr. Toberoff? | 14:04:07 |
| 4 | A.  I don't think I did. | 14:04:09 |
| 5 | Q.  Prior to the time you contacted | 14:04:14 |
| 6 | Mr. Toberoff, did you know that Frank Shuster had | 14:04:16 |
| 7 | suggested that Jean Peavy would not pursue the | 14:04:21 |
| 8 | termination of the Superman copyright under the 1976 | 14:04:26 |
| 9 | U.S. Copyright Act? | 14:04:31 |
| 10 | A.  I didn't know anything about this. | 14:04:32 |
| 11 | Q.  Is this the first time you've learned about | 14:04:36 |
| 12 | that? | 14:04:40 |
| 13 | A.  Yes. | 14:04:40 |
| 14 | Q.  Okay.  Go to the second page of this letter | 14:04:41 |
| 15 | and you'll see in the second paragraph that it | 14:04:51 |
| 16 | refers to the memorial service held in New York on | 14:04:53 |
| 17 | September 24th.  It says: | 14:04:56 |
| 18 | "Some of Joe's relatives have | 14:05:00 |
| 19 | said they would like to attend." | 14:05:02 |
| 20 | You indicated you attended, right? | 14:05:05 |
| 21 | A.  Yes. | 14:05:05 |
| 22 | Q.  Who else attended, if you remember? | 14:05:08 |
| 23 | A.  Oh, boy.  There was -- it seems to me that | 14:05:12 |
| 24 | some of Siegel's relatives might have been there | 14:05:19 |
| 25 | because they lived in the northeast part of the | 14:05:21 |

EXHIBIT 37
1235

MARK WARREN PEARY - 6/29/2011

Page 134

| | | |
|---|---|---|
| 1 | country. | 14:05:23 |
| 2 | Q.  The Siegel relatives? | 14:05:23 |
| 3 | A.  A few.  I don't recall -- I didn't know | 14:05:25 |
| 4 | really any of the others.  I don't recall any other | 14:05:27 |
| 5 | Shuster relatives besides Frank. | 14:05:32 |
| 6 | Q.  Your sister attend, Dawn? | 14:05:34 |
| 7 | A.  No.  I don't think so. | 14:05:39 |
| 8 | Q.  Your father? | 14:05:40 |
| 9 | A.  Yes. | 14:05:40 |
| 10 | Q.  And your mother? | 14:05:41 |
| 11 | A.  Yes. | 14:05:42 |
| 12 | Q.  And Frank? | 14:05:43 |
| 13 | A.  Right. | 14:05:44 |
| 14 | Q.  Let's turn to Exhibit 5. | 14:05:47 |
| 15 | (The document referred to was | 14:05:59 |
| 16 | marked for identification by the | 14:05:59 |
| 17 | C.S.R. as Exhibit 5 and attached to | 14:05:59 |
| 18 | this deposition.) | 14:06:02 |
| 19 | BY MR. PETROCELLI: | 14:06:02 |
| 20 | Q.  Exhibit 5 is an agreement apparently signed | 14:06:03 |
| 21 | by Frank Shuster and Jean Peavy on October 2, 1992 | 14:06:08 |
| 22 | dated as of August 1, 1992.  An agreement between DC | 14:06:13 |
| 23 | Comics and Jean Shuster Peavy and Frank Shuster. | 14:06:20 |
| 24 | Have you ever seen this document before | 14:06:25 |
| 25 | today? | 14:06:27 |

EXHIBIT 37
1236

MARK WARREN PEARY - 6/29/2011

Page 135

| | | |
|---|---|---|
| 1 | A.  Yes. | 14:06:27 |
| 2 | Q.  When did you first see this document? | 14:06:29 |
| 3 | A.  I -- I found it in -- when I started | 14:06:30 |
| 4 | working with Marc Toberoff and we were -- it came up | 14:06:36 |
| 5 | at that time, sometime around -- sometime around | 14:06:42 |
| 6 | that time, as I recall. | 14:06:45 |
| 7 | Q.  Where did you find this document? | 14:06:49 |
| 8 | A.  Where -- that's a good question.  Marc | 14:06:54 |
| 9 | Toberoff might have showed it to me.  I don't -- I | 14:06:59 |
| 10 | don't recall where I first saw it.  I know that I | 14:07:03 |
| 11 | saw it around that time. | 14:07:05 |
| 12 | Q.  Did you send -- after you retained | 14:07:07 |
| 13 | Mr. Toberoff or around the time you retained him, | 14:07:11 |
| 14 | did you collect materials and send them to him? | 14:07:13 |
| 15 | A.  Yes. | 14:07:17 |
| 16 | Q.  Was this Exhibit 5 one of the documents you | 14:07:20 |
| 17 | sent him? | 14:07:24 |
| 18 | A.  It could have been. | 14:07:26 |
| 19 | Q.  Did you discuss Exhibit 5 with your mother? | 14:07:28 |
| 20 | A.  I don't know.  I don't remember.  I | 14:07:31 |
| 21 | don't -- I -- that was when I saw it.  I didn't know | 14:07:40 |
| 22 | it was -- until that time, I didn't -- I didn't know | 14:07:44 |
| 23 | she had this. | 14:07:48 |
| 24 | Q.  When you saw it is when you first learned | 14:07:50 |
| 25 | that -- that Frank and Jean were getting $25,000 a | 14:07:51 |

EXHIBIT 37
1237

MARK WARREN PEARY - 6/29/2011

Page 136

| 1 | year and all -- | 14:07:57 |
| 2 | A.   Yes. | 14:07:58 |
| 3 | Q.   -- the other details in this? | 14:07:58 |
| 4 | A.   Yes. | 14:08:00 |
| 5 | Q.   Now, at the -- around this time then you | 14:08:06 |
| 6 | had been doing your research on the copyright | 14:08:08 |
| 7 | termination issue, including having read the 1998 | 14:08:11 |
| 8 | amendment to the copyright law, right? | 14:08:16 |
| 9 | A.   Yes. | 14:08:18 |
| 10 | MR. TOBEROFF:   Objection.   Misstates his | 14:08:18 |
| 11 | testimony. | 14:08:20 |
| 12 | BY MR. PETROCELLI: | 14:08:20 |
| 13 | Q.   And -- | 14:08:23 |
| 14 | MR. TOBEROFF:   Give me time to object, | 14:08:25 |
| 15 | please, and listen carefully to all aspects of his | 14:08:26 |
| 16 | questions. | 14:08:30 |
| 17 | BY MR. PETROCELLI: | 14:08:30 |
| 18 | Q.   You had -- you reached out to Mr. Toberoff | 14:08:32 |
| 19 | in 2001, you said, and you had reached out to the | 14:08:41 |
| 20 | Albuquerque lawyer around the second half of 1999? | 14:08:45 |
| 21 | A.   Yes. | 14:08:49 |
| 22 | Q.   And in between that time period, were you | 14:08:49 |
| 23 | steadily doing research on this issue of whether | 14:08:55 |
| 24 | there were termination rights under the -- under the | 14:08:58 |
| 25 | copyright laws?   Or had you put it down for a while | 14:09:01 |

EXHIBIT 37
1238

MARK WARREN PEARY - 6/29/2011

Page 137

| | | |
|---|---|---|
| 1 | and then started up again in 2001? | 14:09:05 |
| 2 | A.  Oh, I -- I don't remember exactly how much | 14:09:12 |
| 3 | research I did in between those times.  I'm not | 14:09:15 |
| 4 | sure.  I might have set it aside and started up | 14:09:19 |
| 5 | again. | 14:09:22 |
| 6 | Q.  And at the point when you first went to | 14:09:23 |
| 7 | your mom to explain that you had been doing this | 14:09:27 |
| 8 | research and you had reached out and found a lawyer | 14:09:30 |
| 9 | that you wanted to recommend -- | 14:09:34 |
| 10 | A.  Uh-huh. | 14:09:35 |
| 11 | Q.  -- did you discuss this letter with her and | 14:09:37 |
| 12 | whether this letter affected the family's ability to | 14:09:40 |
| 13 | claim any termination rights? | 14:09:45 |
| 14 | A.  I didn't know about it then. | 14:09:47 |
| 15 | Q.  Well, you learned about it not long | 14:09:49 |
| 16 | thereafter, right, because you found it as among the | 14:09:53 |
| 17 | materials that you were gathering for Mr. Toberoff, | 14:09:56 |
| 18 | right? | 14:09:56 |
| 19 | A.  When I entered into an agreement with | 14:09:59 |
| 20 | Mr. Toberoff, around that time. | 14:10:01 |
| 21 | Q.  It's when you found it, right? | 14:10:05 |
| 22 | A.  Yes. | 14:10:05 |
| 23 | Q.  And you don't remember where you found it? | 14:10:08 |
| 24 | A.  It would have been -- it would have been in | 14:10:09 |
| 25 | Jean's files somewhere. | 14:10:16 |

EXHIBIT 37
1239

MARK WARREN PEARY - 6/29/2011

Page 138

| | | |
|---|---|---|
| 1 | Q.   When you say "Jean's files," do you call | 14:10:18 |
| 2 | your mom Jean? | 14:10:20 |
| 3 | A.   Oftentimes.   Sometimes Mom and oftentimes | 14:10:21 |
| 4 | Jean. | 14:10:24 |
| 5 | Q.   Okay.   When you -- where are Jean's files, | 14:10:24 |
| 6 | as you put it?   Strike that. | 14:10:41 |
| 7 | Where were -- you were living in 19- -- in | 14:10:42 |
| 8 | 2001, when you retained Mr. Toberoff, in the same | 14:10:47 |
| 9 | home you're living now? | 14:10:52 |
| 10 | A.   Yes. | 14:10:53 |
| 11 | Q.   Okay.   And does Jean have her own study or | 14:10:54 |
| 12 | place where she keeps her files? | 14:10:57 |
| 13 | A.   Yes. | 14:10:59 |
| 14 | Q.   Separate from yours? | 14:11:00 |
| 15 | A.   Yes. | 14:11:01 |
| 16 | Q.   And when you were doing your research, did | 14:11:04 |
| 17 | you -- even before you called Mr. Toberoff, did you | 14:11:07 |
| 18 | go through Jean's files to see what documents she | 14:11:11 |
| 19 | had relating to Joe Shuster's copyrights? | 14:11:14 |
| 20 | A.   No.   I didn't. | 14:11:21 |
| 21 | Q.   At the time -- at the time that you first | 14:11:32 |
| 22 | saw Exhibit 5, I assume you read it, correct? | 14:11:45 |
| 23 | A.   Yes. | 14:11:45 |
| 24 | Q.   Okay.   And you saw the reference in the | 14:11:55 |
| 25 | second paragraph to: | 14:11:57 |

EXHIBIT 37
1240

MARK WARREN PEARY - 6/29/2011

Page 139

| | | |
|---|---|---|
| 1 | "Fully settling all claims | 14:12:04 |
| 2 | to any payments or other rights or | 14:12:09 |
| 3 | remedies which you may have under | 14:12:11 |
| 4 | any other agreement or otherwise, | 14:12:13 |
| 5 | whether now or hereafter existing | 14:12:16 |
| 6 | regarding any copyrights, | 14:12:18 |
| 7 | trademarks or other property right | 14:12:20 |
| 8 | and any and all works created in | 14:12:23 |
| 9 | whole or in part by your brother, | 14:12:25 |
| 10 | Joseph Shuster, or any works based | 14:12:27 |
| 11 | thereon." | 14:12:30 |
| 12 | You read that language, right? | 14:12:32 |
| 13 | A.   Yes. | 14:12:32 |
| 14 | Q.   And you also read the next sentence which | 14:12:34 |
| 15 | said: | 14:12:36 |
| 16 | "In any event, you now grant | 14:12:36 |
| 17 | to us any such rights and release | 14:12:37 |
| 18 | us, our licensees and all others." | 14:12:40 |
| 19 | And it goes on and I won't read the rest of | 14:12:45 |
| 20 | the -- the legal words there. | 14:12:48 |
| 21 | When you read those words in that second | 14:12:50 |
| 22 | paragraph, did you believe they had any impact on | 14:12:54 |
| 23 | whether your family had any termination rights? | 14:13:00 |
| 24 | A.   If I can answer that, I -- no, I did not | 14:13:08 |
| 25 | think it affected the -- the rights that I was | 14:13:12 |

EXHIBIT 37
1241

MARK WARREN PEARY - 6/29/2011

Page 140

| | | |
|---|---|---|
| 1 | looking at. | 14:13:16 |
| 2 | Q.  And why is that? | 14:13:17 |
| 3 | A.  Because the copyright act allows the | 14:13:20 |
| 4 | estate's rights. | 14:13:25 |
| 5 | Q.  Because the copyright act allows the | 14:13:32 |
| 6 | estate's rights? | 14:13:37 |
| 7 | A.  Grants estate's rights. | 14:13:38 |
| 8 | Q.  Okay. | 14:13:40 |
| 9 | A.  Estate's, comma, rights. | 14:13:41 |
| 10 | Q.  Okay. | 14:13:42 |
| 11 | MR. TOBEROFF:  Apostrophe, you mean. | 14:13:45 |
| 12 | BY MR. PETROCELLI: | 14:13:45 |
| 13 | Q.  Apostrophe, you mean? | 14:13:47 |
| 14 | A.  Okay, yes. | 14:13:48 |
| 15 | Q.  Did you consult with anyone other than | 14:13:50 |
| 16 | Mr. Toberoff whether this paragraph had any effect | 14:13:53 |
| 17 | on any termination rights you were inquiring about? | 14:13:57 |
| 18 | A.  No. | 14:14:00 |
| 19 | Q.  Did you go to your mom and say, "Jean, | 14:14:03 |
| 20 | what's this about"?  You know, "Why did we do this?" | 14:14:06 |
| 21 | Ask her to explain the circumstances to you?  Did | 14:14:13 |
| 22 | you have any discussion with her about this | 14:14:15 |
| 23 | agreement, and in particular, the paragraph that I | 14:14:19 |
| 24 | just read to you? | 14:14:23 |
| 25 | A.  I'm sure I asked her about it. | 14:14:25 |

EXHIBIT 37
1242

MARK WARREN PEARY - 6/29/2011

Page 141

| | | |
|---|---|---|
| 1 | Q.  What did she say? | 14:14:28 |
| 2 | MR. TOBEROFF:  Again, I just -- and I'm -- | 14:14:31 |
| 3 | I want you to freely testify based on your memory | 14:14:35 |
| 4 | but when you say "I'm sure I asked her about it," | 14:14:38 |
| 5 | that makes me wonder whether you recall asking her | 14:14:41 |
| 6 | about it or you're assuming you asked her about it. | 14:14:45 |
| 7 | I don't want you to make assumptions and speculate. | 14:14:49 |
| 8 | THE WITNESS:  Okay. | 14:14:51 |
| 9 | MR. TOBEROFF:  I want you to testify from | 14:14:51 |
| 10 | memory. | 14:14:51 |
| 11 | THE WITNESS:  I don't remember. | 14:14:52 |
| 12 | MR. TOBEROFF:  Even if you have the | 14:14:53 |
| 13 | slightest memory, I want you to testify as to that | 14:14:54 |
| 14 | memory as Mr. Petrocelli aptly put it. | 14:14:57 |
| 15 | THE WITNESS:  I -- I -- I don't remember | 14:15:01 |
| 16 | what I said.  I can't recall the conversation.  I'm | 14:15:01 |
| 17 | just assuming that I asked her about it. | 14:15:04 |
| 18 | MR. TOBEROFF:  I don't want you to assume. | 14:15:09 |
| 19 | I want you to testify from your memory. | 14:15:10 |
| 20 | THE WITNESS:  Okay.  Well, I don't recall | 14:15:12 |
| 21 | the conversation. | 14:15:13 |
| 22 | BY MR. PETROCELLI: | 14:15:13 |
| 23 | Q.  Now, you said you read that paragraph, and | 14:15:20 |
| 24 | having studied the copyright code in which estates | 14:15:24 |
| 25 | had certain rights, you believe that this paragraph | 14:15:28 |

EXHIBIT 37
1243

MARK WARREN PEARY - 6/29/2011

Page 142

| | | |
|---|---|---|
| 1 | had no bearing on the estate's rights, correct? | 14:15:30 |
| 2 | A.  Yes. | 14:15:39 |
| 3 | Q.  Is that -- is that a conclusion that you | 14:15:40 |
| 4 | reached without much thought or did you think about | 14:15:41 |
| 5 | it?  Did you go back and look at the code?  Did you | 14:15:45 |
| 6 | ask around?  Did you inquire of the Siegels? | 14:15:50 |
| 7 | A.  I am -- employed Marc Toberoff to represent | 14:15:55 |
| 8 | me. | 14:15:58 |
| 9 | Q.  And is that the answer to my question? | 14:16:06 |
| 10 | A.  Yes, yes. | 14:16:07 |
| 11 | Q.  So in order to determine the impact that | 14:16:08 |
| 12 | this had, you wanted Mr. Toberoff to assist in that? | 14:16:09 |
| 13 | A.  Yes. | 14:16:12 |
| 14 | Q.  Okay.  Did you receive any money when you | 14:16:13 |
| 15 | signed the first document or agreement with | 14:16:20 |
| 16 | Mr. Toberoff? | 14:16:23 |
| 17 | A.  No. | 14:16:24 |
| 18 | Q.  Did he pay you or your family any money? | 14:16:26 |
| 19 | A.  No. | 14:16:28 |
| 20 | Q.  As we'll see momentarily, you -- the first | 14:16:51 |
| 21 | agreement you signed was with a company that | 14:16:55 |
| 22 | Mr. Toberoff owned called Pacific Pictures | 14:17:00 |
| 23 | Corporation. | 14:17:04 |
| 24 | Do you remember the name of that company? | 14:17:04 |
| 25 | A.  Yes. | 14:17:06 |

EXHIBIT 37
1244

MARK WARREN PEARY - 6/29/2011

Page 143

```
 1        Q.  Did you receive any money or did members of    14:17:09
 2   your family receive any money from Pacific Pictures     14:17:11
 3   Corporation --                                          14:17:14
 4        A.  No.                                             14:17:14
 5        Q.  -- or any other entity with which               14:17:14
 6   Mr. Toberoff was affiliated?                             14:17:16
 7        A.  No.                                             14:17:18
 8        Q.  Now, I'll come back to this letter in a         14:17:26
 9   moment, this agreement, Exhibit 5, but let's go to       14:17:39
10   Exhibit 6 now.                                           14:17:42
11            (The document referred to was                   14:17:43
12            marked for identification by the                14:17:43
13            C.S.R. as Exhibit 6 and attached to             14:17:43
14            this deposition.)                               14:17:52
15   BY MR. PETROCELLI:                                       14:17:52
16        Q.  Exhibit 6 is a document, letter between         14:17:53
17   Frank Shuster and Paul Levitz dated October 2, 1992,     14:17:55
18   which briefly states:                                    14:18:03
19            "In consideration of the                        14:18:08
20            agreement dated as of August 1,                 14:18:09
21            1992, between DC Comics, myself and             14:18:11
22            Jean Shuster Peavy, I hereby waive              14:18:14
23            any rights or remedies that I may              14:18:17
24            have under the agreement dated                 14:18:18
25            December 23, 1975 between Warner               14:18:20
```

EXHIBIT 37
1245

MARK WARREN PEARY - 6/29/2011

Page 144

| | | |
|---|---|---|
| 1 | Communications, Inc., Jerome Siegel | 14:18:26 |
| 2 | and Joseph Shuster." | 14:18:27 |
| 3 | Is this the first time you've seen this | 14:18:34 |
| 4 | document? | 14:18:35 |
| 5 | A.  Yes. | 14:18:35 |
| 6 | Q.  Okay.  One second.  Jason -- | 14:18:36 |
| 7 | (Pause in proceedings.) | 14:18:51 |
| 8 | BY MR. PETROCELLI: | 14:18:51 |
| 9 | Q.  After Joe Shuster passed away in 1992, did | 14:19:08 |
| 10 | you assist in finding an estate lawyer or anybody to | 14:19:11 |
| 11 | deal with his estate issues? | 14:19:17 |
| 12 | A.  No. | 14:19:22 |
| 13 | Q.  Did you come across a copy of his will in | 14:19:30 |
| 14 | 1992? | 14:19:33 |
| 15 | A.  I don't know if we found his copy.  We had | 14:19:34 |
| 16 | a copy and an original.  I don't know if we found | 14:19:43 |
| 17 | his copy.  It was disorganized. | 14:19:48 |
| 18 | Q.  Did you find an original? | 14:19:52 |
| 19 | A.  Yes. | 14:19:54 |
| 20 | Q.  Is there any reason why the original wasn't | 14:19:56 |
| 21 | made available when the probate was opened in | 14:19:58 |
| 22 | Los Angeles in 2003? | 14:20:01 |
| 23 | A.  Yes. | 14:20:04 |
| 24 | Q.  What's the reason? | 14:20:06 |
| 25 | A.  My mother had lost it back in a file | 14:20:06 |

EXHIBIT 37
1246

MARK WARREN PEARY - 6/29/2011

Page 145

| | | |
|---|---|---|
| 1 | somewhere, mixed up.  We found it later. | 14:20:10 |
| 2 | Q.   When did you start using your lock box? | 14:20:15 |
| 3 | A.   Soon thereafter. | 14:20:22 |
| 4 | MR. PETROCELLI:  Jason, does this have an | 14:20:23 |
| 5 | exhibit number? | 14:20:25 |
| 6 | MR. TOKORO:  Yes, it's number 26. | 14:20:27 |
| 7 | MR. PETROCELLI:  I already used 26 I | 14:20:31 |
| 8 | thought.  No?  I used 24.  Okay. | 14:20:32 |
| 9 | (The document referred to was | 14:20:37 |
| 10 | marked for identification by the | 14:20:37 |
| 11 | C.S.R. as Exhibit 26 and attached | 14:20:37 |
| 12 | to this deposition.) | 14:20:38 |
| 13 | BY MR. PETROCELLI: | 14:20:38 |
| 14 | Q.   Take a look at Exhibit 26. | 14:20:38 |
| 15 | This is a copy of Mr. Shuster's -- what | 14:20:43 |
| 16 | purports to be Mr. Shuster's last will and | 14:20:48 |
| 17 | testament.  And you've seen a copy of his will | 14:20:53 |
| 18 | before, right? | 14:20:56 |
| 19 | A.   Yes. | 14:20:56 |
| 20 | Q.   And by the way, on the second page it | 14:20:59 |
| 21 | identifies a couple of the -- it identifies two | 14:21:01 |
| 22 | witnesses to the execution of his will. | 14:21:05 |
| 23 | Do you know who these people are? | 14:21:10 |
| 24 | A.   Not personally, no. | 14:21:14 |
| 25 | Q.   Have you ever spoken to them? | 14:21:16 |

EXHIBIT 37
1247

MARK WARREN PEARY - 6/29/2011

Page 146

| | | |
|---|---|---|
| 1 | A.  No. | 14:21:16 |
| 2 | Q.  One is named Tom, last name seems to be | 14:21:24 |
| 3 | F-a -- | 14:21:27 |
| 4 | MR. TOBEROFF:  F-e. | 14:21:29 |
| 5 | BY MR. PETROCELLI: | 14:21:29 |
| 6 | Q.  F-e-n-a-u-g-h-t-y and the other one appears | 14:21:37 |
| 7 | to be Robert S. Williams.  But you don't know either | 14:21:38 |
| 8 | of them. | 14:21:41 |
| 9 | Is that right? | 14:21:41 |
| 10 | A.  I don't know them. | 14:21:42 |
| 11 | Q.  Either of these two people? | 14:21:43 |
| 12 | A.  I don't know them, no. | 14:21:44 |
| 13 | Q.  Never heard the names before, right? | 14:21:46 |
| 14 | A.  Only when I saw the -- the will. | 14:21:50 |
| 15 | Q.  Did you try contacting them? | 14:21:52 |
| 16 | A.  No. | 14:21:54 |
| 17 | Q.  Okay.  Now attached to this document on the | 14:21:55 |
| 18 | third page of Exhibit 26 is an Affidavit of Jean | 14:21:58 |
| 19 | Peavy Under California Probate Code Section 13101. | 14:22:03 |
| 20 | It's dated August 17, 1992 and it's signed by Jean | 14:22:12 |
| 21 | Peavy. | 14:22:15 |
| 22 | Do you -- have you ever seen this document | 14:22:16 |
| 23 | before? | 14:22:19 |
| 24 | A.  I might have seen this document. | 14:22:20 |
| 25 | Q.  Do you know -- | 14:22:31 |

EXHIBIT 37
1248

MARK WARREN PEARY - 6/29/2011

Page 147

| | | |
|---|---|---|
| 1 | A. I might have seen this. | 14:22:31 |
| 2 | Q. What do you remember about it? | 14:22:33 |
| 3 | A. I know that his estate was so small that he | 14:22:36 |
| 4 | had to go through the small estates -- small estates | 14:22:38 |
| 5 | code or something like that. That was -- that's all | 14:22:49 |
| 6 | I know. | 14:22:52 |
| 7 | Q. Do you know who prepared this document? | 14:22:52 |
| 8 | A. I don't remember. | 14:22:56 |
| 9 | Q. Did you assist in finding a person to | 14:22:59 |
| 10 | prepare it? | 14:23:01 |
| 11 | A. Yeah, I might have assisted. | 14:23:05 |
| 12 | Q. Who did you locate? An attorney? | 14:23:07 |
| 13 | A. No. I don't believe so. I don't believe | 14:23:14 |
| 14 | so. | 14:23:14 |
| 15 | Q. Who did you locate? | 14:23:18 |
| 16 | A. It would have been either a friend, | 14:23:19 |
| 17 | unless -- unless I helped with it. I'm not sure. | 14:23:34 |
| 18 | Q. Which friend? | 14:23:38 |
| 19 | A. I don't -- I don't know. I don't remember. | 14:23:39 |
| 20 | I -- it's -- it's quite a while back. | 14:23:41 |
| 21 | Q. A friend in -- in Los Angeles or where you | 14:23:46 |
| 22 | lived? | 14:23:52 |
| 23 | A. Yeah, it could have been Los Angeles. | 14:23:52 |
| 24 | Q. What friend did you have in Los Angeles | 14:23:53 |
| 25 | that might have assisted you in 1992? | 14:23:55 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1249

MARK WARREN PEARY - 6/29/2011

Page 148

| | | |
|---|---|---|
| 1 | A. I might have done this. Just with the | 14:23:57 |
| 2 | small estate -- I might have assisted her with this. | 14:23:59 |
| 3 | I'm not recalling. | 14:24:04 |
| 4 | Q. You might have prepared it? | 14:24:04 |
| 5 | A. I might have. Yeah, it's been a long time. | 14:24:05 |
| 6 | Q. What happened to the shares of stock in | 14:24:15 |
| 7 | Time-Warner -- in the Time-Warner rights? Those | 14:24:16 |
| 8 | were given to your mom? | 14:24:19 |
| 9 | A. Yeah, those were stock rights, I believe. | 14:24:20 |
| 10 | Not copyright rights. Stock. It was -- yeah, it | 14:24:23 |
| 11 | must have -- I don't know, she must have -- she must | 14:24:29 |
| 12 | have sold the stock for cash, I guess. | 14:24:34 |
| 13 | Q. To have prepared a document like this, did | 14:24:37 |
| 14 | you research the law books and find a -- a model | 14:24:42 |
| 15 | that you could use? | 14:24:45 |
| 16 | A. I must have. I -- it was such a -- this -- | 14:24:50 |
| 17 | the estate had a negative net worth or it was very | 14:24:53 |
| 18 | small. It was very small. That's what it was. | 14:24:57 |
| 19 | Q. Under $60,000? | 14:24:59 |
| 20 | A. Yes. Yeah, it was smaller than that even, | 14:25:00 |
| 21 | so -- | 14:25:02 |
| 22 | Q. Paragraph 5 says it's under $60,000 -- | 14:25:03 |
| 23 | A. Right. | 14:25:05 |
| 24 | Q. -- right? | 14:25:05 |
| 25 | Okay. Let's take a look at Exhibit 7. | 14:25:06 |

EXHIBIT 37
1250

MARK WARREN PEARY - 6/29/2011

Page 149

| | | |
|---|---|---|
| 1 | (The document referred to was | 14:25:12 |
| 2 | marked for identification by the | 14:25:12 |
| 3 | C.S.R. as Exhibit 7 and attached to | 14:25:12 |
| 4 | this deposition.) | 14:25:21 |
| 5 | THE WITNESS:  7? | 14:25:21 |
| 6 | BY MR. PETROCELLI: | 14:25:21 |
| 7 | Q.  This is a letter from Jean to Paul Levitz | 14:25:25 |
| 8 | of DC dated April 27, 1995 thanking Paul for the | 14:25:28 |
| 9 | book, The Adventures of Superman by Lowther, | 14:25:37 |
| 10 | L-o-w-t-h-e-r, that Paul sent, talking about the | 14:25:43 |
| 11 | Lois & Clark Show and then stating in the middle: | 14:25:48 |
| 12 | "I do hope you will remember | 14:25:53 |
| 13 | Frank and myself once again.  Is it | 14:25:54 |
| 14 | possible to reward us with a gift | 14:25:56 |
| 15 | versus a bonus so that there's no | 14:25:59 |
| 16 | tax liability to us." | 14:26:02 |
| 17 | Did you become -- first of all, have you | 14:26:06 |
| 18 | seen this document, Exhibit 7, before today? | 14:26:11 |
| 19 | A.  I don't think I have, no. | 14:26:13 |
| 20 | Q.  Were you aware that from time to time your | 14:26:16 |
| 21 | mom had requested bonuses or -- or gifts from DC in | 14:26:18 |
| 22 | addition to what was provided in the 1992 agreement? | 14:26:26 |
| 23 | A.  She might have mentioned something.  I | 14:26:32 |
| 24 | haven't seen this. | 14:26:35 |
| 25 | Q.  Let's turn to the next exhibit, Exhibit 8. | 14:26:41 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1251

MARK WARREN PEARY - 6/29/2011

Page 150

| | | |
|---|---|---|
| 1 | This is a letter from Jean to Paul Levitz dated | 14:26:44 |
| 2 | September 7, 1999. | 14:26:47 |
| 3 | (The document referred to was | 14:26:50 |
| 4 | marked for identification by the | 14:26:50 |
| 5 | C.S.R. as Exhibit 8 and attached to | 14:26:50 |
| 6 | this deposition.) | 14:27:01 |
| 7 | BY MR. PETROCELLI: | 14:27:01 |
| 8 | Q.  In the first paragraph it says: | 14:27:02 |
| 9 | "Mike Catron recently sent me | 14:27:04 |
| 10 | a video he made of the 1998 Action | 14:27:06 |
| 11 | #1 comic book panel which I had | 14:27:08 |
| 12 | participated in." | 14:27:10 |
| 13 | Mike Catron is a fellow you know who lives | 14:27:11 |
| 14 | in Pennsylvania. | 14:27:15 |
| 15 | Is that right? | 14:27:15 |
| 16 | A.  Yes. | 14:27:15 |
| 17 | Q.  Okay.  Is one of Mike's hobbies comic books | 14:27:16 |
| 18 | or is he involved in the comic book business | 14:27:23 |
| 19 | somehow? | 14:27:25 |
| 20 | A.  Yes, he's interested. | 14:27:26 |
| 21 | Q.  As a hobby or professionally? | 14:27:28 |
| 22 | A.  Yes, hobby. | 14:27:30 |
| 23 | Q.  Had you ever seen this video that he sent | 14:27:31 |
| 24 | your mom? | 14:27:33 |
| 25 | A.  I don't know if I saw that video.  I don't | 14:27:37 |

MARK WARREN PEARY - 6/29/2011

Page 151

| | | |
|---|---|---|
| 1 | recall. | 14:27:40 |
| 2 | Q.  Have you ever seen this letter before | 14:27:40 |
| 3 | today, Exhibit 8? | 14:27:42 |
| 4 | A.  No, this is -- this is her doing. | 14:27:45 |
| 5 | Q.  And you see in the third paragraph it says: | 14:27:52 |
| 6 | "You had once told Frank and | 14:27:54 |
| 7 | I that instead of a yearly raise of | 14:27:55 |
| 8 | the pension you would prefer to | 14:27:58 |
| 9 | offer a bonus directly from DC | 14:27:59 |
| 10 | itself.  I'm making that request | 14:28:01 |
| 11 | again for 1999." | 14:28:03 |
| 12 | Did she discuss any of these affairs with | 14:28:04 |
| 13 | you that she was asking for bonuses and how much she | 14:28:07 |
| 14 | would receive and so forth?  Would she discuss these | 14:28:10 |
| 15 | matters with you? | 14:28:18 |
| 16 | A.  From time to time. | 14:28:19 |
| 17 | Q.  How much was she receiving, do you know? | 14:28:19 |
| 18 | A.  As far as I know, every now and then she | 14:28:24 |
| 19 | would get a small bonus. | 14:28:27 |
| 20 | Q.  Did she ever ask for your help in any way? | 14:28:33 |
| 21 | A.  No, these letters are hers.  I didn't have | 14:28:36 |
| 22 | any involvement in this. | 14:28:41 |
| 23 | Q.  Did you have the view that, let's say | 14:28:44 |
| 24 | around 1998 to 1999, that your family had not been | 14:28:45 |
| 25 | adequately compensated by DC Comics or Time-Warner? | 14:28:52 |

MARK WARREN PEARY - 6/29/2011

| | | | |
|---|---|---|---|
| 1 | A. | Did I have that view? | 14:28:58 |
| 2 | Q. | Yes. | 14:28:58 |
| 3 | A. | Yes. | 14:28:58 |
| 4 | Q. | What informed that view? | 14:29:01 |
| 5 | A. | What informed the view? | 14:29:08 |
| 6 | Q. | Yeah, why did you feel that way? | 14:29:09 |
| 7 | A. | The value of Superman from my own ideas of | 14:29:13 |

7      A.   The value of Superman from my own ideas of      14:29:13
8  what I know of it.                                        14:29:20
9      Q.   When did you first have that view?              14:29:27
10      A.   About how much Superman is worth?              14:29:30
11      Q.   That you did not believe your family was       14:29:32
12  being properly compensated?                             14:29:34
13      A.   When did I first have that view?  Well,        14:29:40
14  maybe later on when I -- when I -- I realized how --    14:29:46
15  how broke Joe was when he died and I know that          14:29:56
16  Superman had brought in billions in revenues over       14:30:02
17  the years and they had a -- basically just how --       14:30:06
18  how poor he was in relation to the value of             14:30:14
19  Superman.                                               14:30:18
20      Q.   But you also knew that Joe never felt the      14:30:20
21  need to terminate or try to terminate his copyright     14:30:22
22  grants, right?                                          14:30:26
23           MR. TOBEROFF:  Assumes facts.                  14:30:30
24           THE WITNESS:  My knowledge of the history      14:30:31
25  is that they did try to get rights back at times.       14:30:36

EXHIBIT 37
1254

MARK WARREN PEARY - 6/29/2011

Page 153

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 14:30:36 |
| 2 | Q.  He never tried to get rights back under the | 14:30:40 |
| 3 | termination provisions of the 1976 copyright act, | 14:30:43 |
| 4 | right? | 14:30:43 |
| 5 | A.  Not that I -- no, not on that. | 14:30:47 |
| 6 | Q.  Did you ever inquire why if he felt -- if | 14:30:49 |
| 7 | he was as broke as -- as you say he was, why he | 14:30:53 |
| 8 | didn't seek to terminate any copyright grants that | 14:30:56 |
| 9 | he had given? | 14:31:00 |
| 10 | A.  I -- I didn't ask him about it. | 14:31:02 |
| 11 | Q.  Did you ask your mother? | 14:31:04 |
| 12 | A.  No. | 14:31:05 |
| 13 | Q.  Did you become aware as part of your | 14:31:11 |
| 14 | research that as early as 1984 Joe Shuster had the | 14:31:13 |
| 15 | right to serve a notice of copyright termination | 14:31:17 |
| 16 | under the 1976 act? | 14:31:23 |
| 17 | A.  No. | 14:31:24 |
| 18 | Q.  And that he lived for eight years without | 14:31:26 |
| 19 | having done so? | 14:31:29 |
| 20 | A.  I was not aware. | 14:31:32 |
| 21 | Q.  After you saw how broke he was, and I know | 14:31:35 |
| 22 | you were involved in totaling up the -- the checks | 14:31:37 |
| 23 | and the bills that we saw from your mother's letter, | 14:31:39 |
| 24 | did you discuss with your mother the idea that, | 14:31:44 |
| 25 | "Hey, what happened here?  You know, why is he so | 14:31:47 |

Merrill   Corporation   -   Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1255

MARK WARREN PEARY - 6/29/2011

Page 154

| | | |
|---|---|---|
| 1 | broke?  Superman has made billions." | 14:31:49 |
| 2 | A.   Yeah, might have -- might have asked her | 14:31:52 |
| 3 | about it. | 14:31:58 |
| 4 | Q.   What did she say? | 14:31:58 |
| 5 | A.   That it's -- just expressed that it was | 14:32:02 |
| 6 | just an injustice and it was just -- it wasn't | 14:32:07 |
| 7 | right, that type of thing. | 14:32:14 |
| 8 | Q.   How did you know as early as 1992 when Joe | 14:32:19 |
| 9 | Shuster died that Superman had, as you put it, | 14:32:23 |
| 10 | generated billions of dollars in revenue? | 14:32:26 |
| 11 | A.   Well, I had seen Superman all my life.  I | 14:32:28 |
| 12 | grew up -- grew up with Superman and the -- the big | 14:32:32 |
| 13 | movie in '79, the big Superman movie, or '78, I was | 14:32:37 |
| 14 | aware that was the first big blockbuster superhero | 14:32:44 |
| 15 | movie that started the whole genre of superhero | 14:32:48 |
| 16 | movies that is just the rage.  So I'm just aware | 14:32:53 |
| 17 | of -- of how widespread it is and popular. | 14:32:55 |
| 18 | Q.   You were aware of this in 1992 when Joe | 14:32:58 |
| 19 | died broke, right? | 14:33:00 |
| 20 | A.   Yeah, just in general of how -- the history | 14:33:02 |
| 21 | of Superman and how big it is. | 14:33:06 |
| 22 | Q.   And when you had this conversation with | 14:33:13 |
| 23 | your mother right after Joe's death, you're telling | 14:33:15 |
| 24 | us that she agreed with you? | 14:33:23 |
| 25 | A.   Well, she expressed to me that she thought | 14:33:24 |

EXHIBIT 37
1256

MARK WARREN PEARY - 6/29/2011

Page 155

| | | |
|---|---|---|
| 1 | it was an injustice.  And did I agree with her?  Is | 14:33:31 |
| 2 | that what you're asking? | 14:33:34 |
| 3 | Q.  Yes. | 14:33:35 |
| 4 | A.  Well, yes. | 14:33:36 |
| 5 | Q.  The injustice that she expressed to you was | 14:33:39 |
| 6 | that Joe had so little money when Superman had | 14:33:41 |
| 7 | generated so much? | 14:33:44 |
| 8 | A.  Yes. | 14:33:45 |
| 9 | Q.  So did it come as a surprise to you then | 14:33:53 |
| 10 | that she entered into an agreement after that | 14:33:55 |
| 11 | conversation with DC and Time-Warner in which she | 14:33:59 |
| 12 | gave up any copyright interest that the family might | 14:34:06 |
| 13 | have? | 14:34:10 |
| 14 | A.  I don't know what her thinking was. | 14:34:10 |
| 15 | MR. TOBEROFF:  Sorry.  Assumes facts. | 14:34:13 |
| 16 | Lacks foundation. | 14:34:16 |
| 17 | BY MR. PETROCELLI: | 14:34:16 |
| 18 | Q.  She didn't consult with you, right? | 14:34:18 |
| 19 | A.  No. | 14:34:18 |
| 20 | Q.  She was certainly of sound mind in 1992, | 14:34:20 |
| 21 | right? | 14:34:20 |
| 22 | A.  Yes. | 14:34:20 |
| 23 | Q.  When she was expressing to you the | 14:34:24 |
| 24 | injustice after Joe's death, you didn't think she -- | 14:34:26 |
| 25 | she was mentally infirm, you thought that she was | 14:34:30 |

EXHIBIT 37
1257

MARK WARREN PEARY - 6/29/2011

Page 156

| | | |
|---|---|---|
| 1 | healthy and sound and knew exactly what she was | 14:34:34 |
| 2 | saying, right? | 14:34:35 |
| 3 | A.  Yes. | 14:34:36 |
| 4 | Q.  And in -- and she didn't consult with you | 14:34:36 |
| 5 | when she signed that agreement, Exhibit 5, as of | 14:34:41 |
| 6 | August 31, 1992, correct? | 14:34:46 |
| 7 | A.  That's correct. | 14:34:48 |
| 8 | Q.  And when you saw it, were you surprised | 14:34:50 |
| 9 | that she had signed that agreement given her | 14:34:52 |
| 10 | statements to you that it was an injustice? | 14:34:54 |
| 11 | A.  Well, yes. | 14:34:57 |
| 12 | Q.  Do you think that she felt like the | 14:34:59 |
| 13 | injustice had been rectified by virtue of her having | 14:35:00 |
| 14 | obtained that agreement from DC? | 14:35:05 |
| 15 | MR. TOBEROFF:  Calls for speculation. | 14:35:07 |
| 16 | THE WITNESS:  Can I answer? | 14:35:09 |
| 17 | BY MR. PETROCELLI: | 14:35:09 |
| 18 | Q.  Did you discuss that with her when you saw | 14:35:17 |
| 19 | the letter? | 14:35:18 |
| 20 | A.  Yeah, what was the original question? | 14:35:20 |
| 21 | Q.  When you saw the letter, the agreement, | 14:35:21 |
| 22 | Exhibit 5, and I misspoke, I said August 31, it's | 14:35:23 |
| 23 | August 1, 1992, when you found it and you saw it, | 14:35:28 |
| 24 | did you have a discussion with her to the effect | 14:35:36 |
| 25 | that -- about whether she felt better now that the | 14:35:38 |

EXHIBIT 37
1258

MARK WARREN PEARY - 6/29/2011

Page 157

| | | |
|---|---|---|
| 1 | injustice had been -- had been rectified because DC | 14:35:42 |
| 2 | has -- had entered into this agreement? | 14:35:47 |
| 3 | A. No, she didn't feel it had been rectified. | 14:35:50 |
| 4 | Q. How do you know? | 14:35:52 |
| 5 | A. This is what I recall her telling me: | 14:35:54 |
| 6 | 17,000 a year after tax as a pension, didn't feel it | 14:35:56 |
| 7 | was rectified. | 14:36:01 |
| 8 | Q. Did she -- but you didn't know about this | 14:36:02 |
| 9 | agreement when she told you that, right? | 14:36:04 |
| 10 | A. No, no. | 14:36:06 |
| 11 | Q. And when you saw the agreement, did you | 14:36:06 |
| 12 | have a discussion with her about, "Why did you sign | 14:36:09 |
| 13 | it"? | 14:36:11 |
| 14 | A. Well -- well, yeah, I -- I -- I -- I can't | 14:36:11 |
| 15 | recall what exactly I said, but I -- I -- I'm sure I | 14:36:17 |
| 16 | talked with her. | 14:36:20 |
| 17 | Q. Do you know why -- did you ask her, "Well | 14:36:22 |
| 18 | since we" -- "since you knew by the time you signed | 14:36:26 |
| 19 | this agreement how valuable Superman was, we had | 14:36:30 |
| 20 | talked about how it was an injustice that Joe died | 14:36:32 |
| 21 | broke when it made so much money, what was your | 14:36:36 |
| 22 | thinking in signing this agreement, Exhibit 5?" Did | 14:36:38 |
| 23 | you have that kind of conversation with her? | 14:36:42 |
| 24 | A. Oh, if I asked her that? | 14:36:43 |
| 25 | Q. Did you have that kind of discussion with | 14:36:45 |

EXHIBIT 37
1259

MARK WARREN PEARY - 6/29/2011

Page 158

| | |
|---|---|
| 1   her? | 14:36:46 |
| 2        A.  I -- I -- her thinking was that -- | 14:36:46 |
| 3             MR. TOBEROFF:  Answer the question. | 14:36:50 |
| 4   BY MR. PETROCELLI: | 14:36:50 |
| 5        Q.  Did you have that kind of a discussion with | 14:36:51 |
| 6   her? | 14:36:53 |
| 7        A.  Oh.  Okay.  Did -- | 14:36:53 |
| 8        Q.  Are you tracking what I'm asking you? | 14:36:56 |
| 9        A.  Yes.  Yes.  I -- I asked her. | 14:36:57 |
| 10       Q.  And what did she say? | 14:37:03 |
| 11       A.  That she didn't feel that it had rectified | 14:37:06 |
| 12   anything. | 14:37:10 |
| 13       Q.  Did you ask, "Well, then, why did you sign | 14:37:11 |
| 14   it?  Why didn't you ask for more?" | 14:37:13 |
| 15       A.  I don't -- I don't recall the details. | 14:37:16 |
| 16       Q.  Did she say, "I asked for millions and they | 14:37:19 |
| 17   said no"? | 14:37:21 |
| 18       A.  I -- I think she didn't believe she had any | 14:37:23 |
| 19   rights at that time. | 14:37:26 |
| 20       Q.  Why did she agree to give up termination | 14:37:30 |
| 21   rights if she didn't have any? | 14:37:33 |
| 22       A.  I don't know. | 14:37:35 |
| 23             MR. TOBEROFF:  Assumes facts.  Lacks | 14:37:36 |
| 24   foundation. | 14:37:36 |
| 25             You got to -- we're speeding up here, so | 14:37:39 |

EXHIBIT 37
1260

MARK WARREN PEARY - 6/29/2011

Page 159

| | | |
|---|---|---|
| 1 | you got to keep the same -- he can speed it up.  You | 14:37:41 |
| 2 | stay the same pace.  Give me time to object. | 14:37:44 |
| 3 | THE WITNESS:  Okay. | 14:37:47 |
| 4 | BY MR. PETROCELLI: | 14:37:47 |
| 5 | Q.  Did she have a discussion with you where | 14:37:52 |
| 6 | she said, "I agreed to give up termination rights | 14:37:55 |
| 7 | even though I didn't have any"? | 14:38:03 |
| 8 | A.  I don't -- I don't think she understood | 14:38:08 |
| 9 | exactly what she signed.  I don't think she | 14:38:14 |
| 10 | understood the details.  That's my impression. | 14:38:17 |
| 11 | Q.  She didn't tell you that she didn't | 14:38:22 |
| 12 | understand it, right? | 14:38:26 |
| 13 | A.  That was my impression, that she didn't. | 14:38:27 |
| 14 | Q.  But she didn't tell you that, right? | 14:38:29 |
| 15 | A.  That -- specifically that, "I don't | 14:38:31 |
| 16 | understand the details"? | 14:38:32 |
| 17 | Q.  Right.  She -- she did not say to you, "I | 14:38:33 |
| 18 | did not understand what I was signing back in 1992," | 14:38:36 |
| 19 | correct? | 14:38:36 |
| 20 | A.  She didn't say that specifically. | 14:38:40 |
| 21 | Q.  And, in fact, she never once brought this | 14:38:46 |
| 22 | agreement to your attention until you first found it | 14:38:48 |
| 23 | and asked her about it, right? | 14:38:50 |
| 24 | A.  Yes. | 14:38:51 |
| 25 | Q.  Were you upset when you saw that she had | 14:38:52 |

Merrill  Corporation  -  Los Angeles
800-826-0277                         www.merrillcorp.com/law

EXHIBIT 37
1261

MARK WARREN PEARY -- 6/29/2011

Page 160

| | | |
|---|---|---|
| 1 | signed this agreement? | 14:38:58 |
| 2 | A.  Yes. | 14:38:58 |
| 3 | Q.  Why? | 14:39:01 |
| 4 | A.  I -- I didn't know if it affected our | 14:39:04 |
| 5 | rights or not. | 14:39:07 |
| 6 | Q.  Why?  Why didn't you know? | 14:39:09 |
| 7 | A.  I didn't know because I'm not a legal | 14:39:13 |
| 8 | expert. | 14:39:15 |
| 9 | Q.  But you were concerned about it, right? | 14:39:18 |
| 10 | A.  I had concerns. | 14:39:21 |
| 11 | Q.  Did you ask her why she didn't consult with | 14:39:24 |
| 12 | a lawyer in 1992, or whether she had? | 14:39:29 |
| 13 | A.  I don't know if I asked her about that. | 14:39:34 |
| 14 | Q.  Do you know if she had? | 14:39:36 |
| 15 | A.  I don't know. | 14:39:39 |
| 16 | Q.  Were you upset that she hadn't consulted | 14:39:43 |
| 17 | with you in 1992 before signing this document? | 14:39:47 |
| 18 | A.  Was I upset?  Well, I couldn't do anything | 14:39:51 |
| 19 | about it, so I -- I decided to -- to pursue legal | 14:39:53 |
| 20 | advice instead of getting upset. | 14:40:00 |
| 21 | Q.  Do you have Exhibit 8 in front of you?  Do | 14:40:04 |
| 22 | you have it in front of you? | 14:40:14 |
| 23 | A.  Yes. | 14:40:15 |
| 24 | Q.  The last paragraph says -- this is your | 14:40:16 |
| 25 | mother's letter again, September 7, 1999: | 14:40:18 |

EXHIBIT 37
1262

MARK WARREN PEARY - 6/29/2011

Page 161

| | | |
|---|---|---|
| 1 | "I have learned from the | 14:40:22 |
| 2 | Internet that Joanne Siegel has | 14:40:23 |
| 3 | filed a copyright claim for | 14:40:25 |
| 4 | Superman.  I want you to know that | 14:40:27 |
| 5 | I intend to continue to honor our | 14:40:29 |
| 6 | pension agreement.  I would, | 14:40:31 |
| 7 | however, appreciate a generous | 14:40:35 |
| 8 | bonus for this year as you have | 14:40:36 |
| 9 | done many times in the past." | 14:40:38 |
| 10 | And this is the first time you've seen this | 14:40:45 |
| 11 | letter? | 14:40:48 |
| 12 | A.   Yes. | 14:40:48 |
| 13 | Q.   Okay.  And your mother did not tell you | 14:40:50 |
| 14 | that she was expressing her gratitude to DC as late | 14:40:52 |
| 15 | as 1999, even after knowing that the Siegel family | 14:40:55 |
| 16 | had terminated their interest -- had sought to | 14:40:58 |
| 17 | terminate their copyright? | 14:41:02 |
| 18 | A.   No, I did not know about this. | 14:41:03 |
| 19 | Q.   And you did not know that your mother, with | 14:41:04 |
| 20 | knowledge that the Siegel family had filed for | 14:41:07 |
| 21 | copyright termination, told DC that she intended to | 14:41:11 |
| 22 | honor their agreement? | 14:41:17 |
| 23 | A.   I didn't know this letter. | 14:41:18 |
| 24 | Q.   Are you aware of any letter that your -- | 14:41:26 |
| 25 | that Jean wrote to DC, after she signed the 1992 | 14:41:27 |

EXHIBIT 37
1263

MARK WARREN PEARY - 6/29/2011

Page 162

| | | |
|---|---|---|
| 1 | agreement, saying that DC was mistreating her or | 14:41:30 |
| 2 | that there was a grave injustice being perpetrated | 14:41:34 |
| 3 | on her or her family? | 14:41:36 |
| 4 | A. I'm not aware of any of her letters, | 14:41:41 |
| 5 | really. | 14:41:44 |
| 6 | Q. Have you ever seen such a letter to that | 14:41:44 |
| 7 | effect? | 14:41:46 |
| 8 | A. No. | 14:41:46 |
| 9 | Q. After you had the conversation with Jean | 14:42:00 |
| 10 | following Joe's death about the injustice, did you | 14:42:04 |
| 11 | continue to have conversations with her over the | 14:42:09 |
| 12 | years from let's say 1992 to 2001 about this | 14:42:12 |
| 13 | injustice? | 14:42:18 |
| 14 | A. I believe it came up from time to time. | 14:42:20 |
| 15 | Q. And when it came up, she was not telling | 14:42:28 |
| 16 | you that she was thanking and expressing her | 14:42:30 |
| 17 | gratitude to DC and affirmatively telling them she | 14:42:36 |
| 18 | had no intent to exercise any copyright termination | 14:42:40 |
| 19 | rights? | 14:42:42 |
| 20 | A. No, she wasn't telling me that. | 14:42:43 |
| 21 | Q. Have you -- did you make this letter | 14:43:02 |
| 22 | available to Mr. Toberoff when you signed the first | 14:43:04 |
| 23 | document with him? | 14:43:08 |
| 24 | A. Exhibit 8? | 14:43:11 |
| 25 | Q. Yes. | 14:43:11 |

Merrill   Corporation   -   Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1264

MARK WARREN PEARY - 6/29/2011

Page 163

| | | |
|---|---|---|
| 1 | A. I don't remember. | 14:43:18 |
| 2 | Q. You had never seen it before now, right? | 14:43:19 |
| 3 | A. No, I don't -- I don't remember seeing it | 14:43:21 |
| 4 | before now, so -- no, I don't. | 14:43:25 |
| 5 | Q. Do you think it -- it matters that your -- | 14:43:31 |
| 6 | your mom specifically told DC in September of 1999 | 14:43:35 |
| 7 | that she had no intent to terminate any interest in | 14:43:40 |
| 8 | Superman? | 14:43:42 |
| 9 | MR. TOBEROFF: Vague and ambiguous. | 14:43:46 |
| 10 | You can only answer to the extent your | 14:43:46 |
| 11 | answer to that question isn't based on conversations | 14:43:49 |
| 12 | with your attorney and legal advice from your | 14:43:52 |
| 13 | attorney. | 14:43:54 |
| 14 | THE WITNESS: Yeah, well, issues of -- of | 14:43:58 |
| 15 | rights are all based on my attorney discussions. | 14:44:03 |
| 16 | (Unanswered question.) | 14:44:08 |
| 17 | BY MR. PETROCELLI: | 14:44:08 |
| 18 | Q. What about your conversations with your | 14:44:09 |
| 19 | mom? When you -- have you had any conversations | 14:44:11 |
| 20 | with her in recent years when you -- in which you | 14:44:18 |
| 21 | asked her "Why were you" -- "Why did you tell DC you | 14:44:27 |
| 22 | wouldn't exercise any rights even after you knew | 14:44:31 |
| 23 | that the law had changed and that the Siegel family | 14:44:33 |
| 24 | was doing so"? Did you ever have that kind of | 14:44:38 |
| 25 | conversation with her? | 14:44:40 |

EXHIBIT 37
1265

MARK WARREN PEARY – 6/29/2011

Page 164

| | | |
|---|---|---|
| 1 | A.  I never berated her. | 14:44:40 |
| 2 | Q.  I didn't say berate her.  Did you inquire | 14:44:42 |
| 3 | of her -- | 14:44:45 |
| 4 | A.  Inquire. | 14:44:46 |
| 5 | Q.  -- why she would tell DC that she had no | 14:44:46 |
| 6 | intent to exercise any copyright claims, no intent | 14:44:49 |
| 7 | to terminate -- | 14:44:52 |
| 8 | A.  Did I -- | 14:44:55 |
| 9 | Q.  -- even after the Siegel family terminated | 14:44:56 |
| 10 | following the 1998 change in the law? | 14:45:01 |
| 11 | MR. TOBEROFF:  Assumes facts.  Lacks | 14:45:07 |
| 12 | foundation. | 14:45:07 |
| 13 | THE WITNESS:  I never really asked her that | 14:45:13 |
| 14 | specifically. | 14:45:15 |
| 15 | BY MR. PETROCELLI: | 14:45:15 |
| 16 | Q.  When you -- do you remember when you | 14:45:22 |
| 17 | finally sat down and told her that you had been | 14:45:27 |
| 18 | doing all of this research and all of this work and | 14:45:29 |
| 19 | wanted to go out and hire a lawyer and -- and | 14:45:32 |
| 20 | terminate grants in Superman that Joe Shuster had | 14:45:37 |
| 21 | made years before?  Do you remember that | 14:45:44 |
| 22 | conversation? | 14:45:46 |
| 23 | MR. TOBEROFF:  Assumes facts.  Lacks | 14:45:49 |
| 24 | foundation. | 14:45:52 |
| 25 | THE WITNESS:  Not -- not the specific | 14:45:52 |

EXHIBIT 37
1266

MARK WARREN PEARY - 6/29/2011

Page 165

| | | |
|---|---|---|
| 1 | conversation, no.  Not a specific conversation. | 14:45:57 |
| 2 | BY MR. PETROCELLI: | 14:45:57 |
| 3 | Q.  Well, you said you hadn't -- you didn't | 14:46:02 |
| 4 | tell her initially because you wanted to be | 14:46:04 |
| 5 | thorough, remember? | 14:46:07 |
| 6 | A.  Right. | 14:46:07 |
| 7 | Q.  And you were doing this research, you | 14:46:08 |
| 8 | identified Mr. Toberoff, and then at some point you | 14:46:09 |
| 9 | told her -- | 14:46:12 |
| 10 | A.  Yes. | 14:46:12 |
| 11 | Q.  -- that you had been -- did you tell her, | 14:46:14 |
| 12 | "Look, Jean," or "Mom, I've been" -- | 14:46:16 |
| 13 | A.  Yeah. | 14:46:17 |
| 14 | Q.  -- "doing all this work and I want to go | 14:46:18 |
| 15 | ahead and do this"? | 14:46:21 |
| 16 | A.  At some point I would have said something | 14:46:23 |
| 17 | to that effect. | 14:46:25 |
| 18 | Q.  And do you remember what she said to you? | 14:46:30 |
| 19 | A.  She didn't -- it was -- not really.  It was | 14:46:32 |
| 20 | something that was my initiative so, no, she didn't | 14:46:42 |
| 21 | say anything particular. | 14:46:45 |
| 22 | Q.  Exhibit 9, take a look at Exhibit 9. | 14:46:53 |
| 23 | (The document referred to was | 14:47:03 |
| 24 | marked for identification by the | 14:47:03 |
| 25 | C.S.R. as Exhibit 9 and attached to | 14:47:03 |

MARK WARREN PEARY - 6/29/2011

Page 166

| | | |
|---|---|---|
| 1 | this deposition.) | 14:47:16 |
| 2 | MR. PETROCELLI:  This is the notice of | 14:47:16 |
| 3 | termination sent by the Siegels in 1997. | 14:47:19 |
| 4 | Q.  Have you ever seen this before? | 14:47:31 |
| 5 | A.  No. | 14:47:32 |
| 6 | Q.  Did you come across this in any of your | 14:47:34 |
| 7 | research? | 14:47:36 |
| 8 | A.  No.  I did not look at this. | 14:47:39 |
| 9 | Q.  Your mom wrote that she saw that the Siegel | 14:47:40 |
| 10 | family had -- had effectuated a termination by | 14:47:42 |
| 11 | looking on the Internet. | 14:47:48 |
| 12 | She would use the Internet as of 1999? | 14:47:50 |
| 13 | A.  That was probably a result of my research | 14:47:55 |
| 14 | on the Internet. | 14:47:59 |
| 15 | Q.  Did she use the computer? | 14:48:01 |
| 16 | A.  No. | 14:48:02 |
| 17 | Q.  So you found it on the Internet? | 14:48:04 |
| 18 | A.  Yes. | 14:48:06 |
| 19 | Q.  How did you find it? | 14:48:07 |
| 20 | MR. TOBEROFF:  Let's be clear.  Are you | 14:48:10 |
| 21 | asking whether he found this document on the | 14:48:11 |
| 22 | Internet? | 14:48:13 |
| 23 | MR. PETROCELLI:  No.  I'm asking about the | 14:48:13 |
| 24 | facts of termination. | 14:48:15 |
| 25 | THE WITNESS:  Oh.  Just general searches. | 14:48:17 |

MARK WARREN PEARY - 6/29/2011

Page 167

| | | |
|---|---|---|
| 1 | Lots of different sites. | 14:48:24 |
| 2 | BY MR. PETROCELLI: | 14:48:24 |
| 3 | Q.  Is that how you first learned it or was it | 14:48:27 |
| 4 | mentioned by the Siegel family and then you went on | 14:48:29 |
| 5 | the Internet to follow up?  Do you remember what the | 14:48:32 |
| 6 | sequence -- | 14:48:34 |
| 7 | A.  I first found out about it in my own | 14:48:35 |
| 8 | research. | 14:48:37 |
| 9 | Q.  Did you come across this document, Exhibit | 14:48:37 |
| 10 | 9? | 14:48:39 |
| 11 | A.  No. | 14:48:43 |
| 12 | Q.  Have you ever seen it before today? | 14:48:43 |
| 13 | A.  No. | 14:48:44 |
| 14 | Q.  When you learned that the Siegels had | 14:48:51 |
| 15 | terminated in 1999 as a result of your research, did | 14:48:53 |
| 16 | you understand that they had terminated copyright | 14:48:55 |
| 17 | grants with respect to both Superman and Superboy? | 14:48:59 |
| 18 | A.  Yes. | 14:49:03 |
| 19 | Q.  That was in the research that you found? | 14:49:04 |
| 20 | A.  I don't know if I had that level of | 14:49:11 |
| 21 | understanding until I consulted with Marc Toberoff. | 14:49:13 |
| 22 | Q.  Prior to consulting with Marc Toberoff, did | 14:49:15 |
| 23 | you have a view, based on the research that you had | 14:49:19 |
| 24 | done or anything else, about whether the Shuster | 14:49:23 |
| 25 | family had any rights to Superboy as opposed to | 14:49:26 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1269

MARK WARREN PEARY - 6/29/2011

Page 168

| | | |
|---|---|---|
| 1 | Superman? | 14:49:29 |
| 2 | A.  I didn't consider Superboy.  I mainly | 14:49:36 |
| 3 | focused on Superman. | 14:49:38 |
| 4 | Q.  Well, you were aware of Superboy, right? | 14:49:40 |
| 5 | A.  Yes. | 14:49:40 |
| 6 | Q.  Did you have a -- did you make a decision | 14:49:43 |
| 7 | not to -- to exclude Superboy from your | 14:49:48 |
| 8 | consideration? | 14:49:50 |
| 9 | A.  That was only after consulting with my | 14:49:53 |
| 10 | attorney. | 14:49:56 |
| 11 | Q.  Your attorney is Mr. Toberoff. | 14:49:56 |
| 12 | Is that right? | 14:49:57 |
| 13 | MR. TOBEROFF:  Don't talk about the | 14:49:58 |
| 14 | substance of your consultation with your attorney, | 14:49:59 |
| 15 | either directly or by implication. | 14:50:01 |
| 16 | BY MR. PETROCELLI: | 14:50:01 |
| 17 | Q.  Your attorney is Mr. Toberoff, for the | 14:50:07 |
| 18 | record. | 14:50:07 |
| 19 | Is that right? | 14:50:07 |
| 20 | A.  Yes. | 14:50:07 |
| 21 | Q.  Again, I'm referring to before -- | 14:50:07 |
| 22 | A.  Oh. | 14:50:10 |
| 23 | Q.  -- you ever spoke to Mr. Toberoff.  Are you | 14:50:10 |
| 24 | with me? | 14:50:12 |
| 25 | A.  Yes. | 14:50:13 |

EXHIBIT 37
1270

MARK WARREN PEARY - 6/29/2011

Page 169

| | | |
|---|---|---|
| 1 | Q. Okay. When you were doing your research | 14:50:14 |
| 2 | about termination of copyright grants and reading | 14:50:16 |
| 3 | the Code, the 1998 change of law and so forth, you | 14:50:20 |
| 4 | were not making a calculated effort to exclude | 14:50:31 |
| 5 | Superboy from your consideration, right? | 14:50:34 |
| 6 | A. Not specifically. | 14:50:39 |
| 7 | Q. Not specifically. And you had no view at | 14:50:39 |
| 8 | the time whether Joe Shuster did or did not have any | 14:50:43 |
| 9 | claim to Superboy, right? | 14:50:45 |
| 10 | A. Right. | 14:50:47 |
| 11 | Q. And that's a view that you've only come to | 14:50:50 |
| 12 | hold after you contacted Mr. Toberoff, correct? | 14:50:52 |
| 13 | A. Yes. | 14:50:55 |
| 14 | Q. Okay. Now, prior to contacting | 14:50:55 |
| 15 | Mr. Toberoff, did you do any research regarding Joe | 14:51:02 |
| 16 | Shuster's role with respect to Superboy? | 14:51:09 |
| 17 | A. I -- I had a cursory knowledge of his role. | 14:51:16 |
| 18 | Q. Where did you get it from? | 14:51:23 |
| 19 | A. Just my understanding of the history. | 14:51:25 |
| 20 | Q. Where did you get it from? | 14:51:29 |
| 21 | A. It would have been various sources. Just | 14:51:32 |
| 22 | reading articles about their ideas for Superboy and | 14:51:34 |
| 23 | just the history of articles of different kinds. | 14:51:41 |
| 24 | Q. Did you do any searches of the copyright | 14:51:47 |
| 25 | records, registrations, copyright registrations, to | 14:51:50 |

Merrill   Corporation  -  Los Angeles
800-826-0277                                      www.merrillcorp.com/law

EXHIBIT 37
1271

MARK WARREN PEARY - 6/29/2011

Page 170

| | | |
|---|---|---|
| 1 | see what kind of copyrights Joe Shuster had filed | 14:51:56 |
| 2 | over the years? | 14:52:03 |
| 3 | A.  No, not that. | 14:52:05 |
| 4 | Q.  Okay.  Did you -- did you review any of the | 14:52:11 |
| 5 | old comic books related to Superboy to see the | 14:52:17 |
| 6 | by-lines? | 14:52:21 |
| 7 | A.  I had seen reproductions. | 14:52:24 |
| 8 | Q.  And did you see Joe Shuster's name | 14:52:27 |
| 9 | attributed to Superboy together with Jerry Siegel's? | 14:52:28 |
| 10 | A.  Yes. | 14:52:31 |
| 11 | Q.  And did you ask your mother about what she | 14:52:34 |
| 12 | knew regarding Joe's contributions to the creation | 14:52:39 |
| 13 | of Superboy? | 14:52:43 |
| 14 | A.  Yes. | 14:52:44 |
| 15 | Q.  What did she -- what did she tell you? | 14:52:45 |
| 16 | A.  Just that they -- it was one of the | 14:52:48 |
| 17 | derivative characters. | 14:52:52 |
| 18 | Q.  Derivative of what? | 14:52:54 |
| 19 | A.  Of Superman. | 14:52:55 |
| 20 | Q.  So when you were researching copyright | 14:53:03 |
| 21 | termination issues in 1998 and 1999 after the change | 14:53:08 |
| 22 | in law and after you heard about what the Siegel | 14:53:13 |
| 23 | family was doing, you were looking at it broadly, | 14:53:15 |
| 24 | right, Superman, Superboy; whatever Joe had an | 14:53:23 |
| 25 | interest in, you wanted to know, correct? | 14:53:25 |

MARK WARREN PEARY - 6/29/2011

Page 171

| | | |
|---|---|---|
| 1 | A.  Yes. | 14:53:27 |
| 2 | Q.  By the way, why didn't you contact the | 14:53:29 |
| 3 | Siegels' lawyer? | 14:53:32 |
| 4 | A.  We didn't discuss their filing at the time. | 14:53:37 |
| 5 | They -- they didn't say anything about that to us. | 14:53:40 |
| 6 | Q.  But once you found out they had filed it, | 14:53:42 |
| 7 | as you did and as your mom wrote to DC, why didn't | 14:53:45 |
| 8 | you -- instead of doing all this research to find an | 14:53:51 |
| 9 | attorney, why didn't you just pick up the phone and | 14:53:54 |
| 10 | call Joanne, a woman that you said was like a | 14:53:56 |
| 11 | grandmother to you, and say, "Hey, who is your | 14:53:59 |
| 12 | attorney?" | 14:54:05 |
| 13 | MR. TOBEROFF:  Misstates his testimony. | 14:54:06 |
| 14 | THE WITNESS:  It -- I came -- I came to | 14:54:11 |
| 15 | understand they weren't entirely happy with their | 14:54:15 |
| 16 | attorney. | 14:54:17 |
| 17 | BY MR. PETROCELLI: | 14:54:17 |
| 18 | Q.  When did you understand that? | 14:54:20 |
| 19 | A.  I don't know.  I just heard that they | 14:54:22 |
| 20 | weren't. | 14:54:24 |
| 21 | Q.  Who told you that? | 14:54:24 |
| 22 | A.  I don't remember. | 14:54:26 |
| 23 | Q.  Can't identify that -- anybody who told you | 14:54:27 |
| 24 | such a thing? | 14:54:29 |
| 25 | A.  No. | 14:54:30 |

EXHIBIT 37
1273

MARK WARREN PEARY - 6/29/2011

Page 172

```
1          Q.  Did you call and ask them and say, "Hey,     14:54:33
2    I'm looking for an attorney regarding the Joe         14:54:36
3    Shuster rights situation and how about your           14:54:40
4    attorney?"  Or "I heard that your attorney -- you     14:54:47
5    may not be happy with your attorney."                 14:54:51
6          Did you have those kinds of discussions          14:54:54
7    with them before contacting Mr. Toberoff?             14:54:55
8          A.  I did not discuss it with them, no.         14:55:00
9          Q.  Is it fair to say that you wanted your own   14:55:05
10   attorney, not the same attorney that the Siegel       14:55:07
11   family had?                                           14:55:10
12         A.  That's not quite right.                     14:55:13
13         Q.  Is that part of it?                          14:55:15
14         A.  No, it's not.                               14:55:18
15         Q.  You didn't have any concern whatsoever       14:55:19
16   about sharing the same lawyer that the Siegel family  14:55:21
17   had?                                                  14:55:24
18         A.  That -- that was not the issue.             14:55:26
19         Q.  I didn't ask you if that was the issue.      14:55:28
20         MR. TOBEROFF:  Asked and answered twice.        14:55:31
21   BY MR. PETROCELLI:                                    14:55:31
22         Q.  I asked you whether you had any concern at   14:55:32
23   all about sharing the same attorney that they had     14:55:34
24   when you were looking for an attorney.                14:55:37
25         A.  I didn't think about that at the time.      14:55:42
```

Merrill  Corporation  -  Los Angeles
800-826-0277                      www.merrillcorp.com/law

EXHIBIT 37
1274

MARK WARREN PEARY - 6/29/2011

Page 173

| | | |
|---|---|---|
| 1 | Q. Are you saying the thought never occurred | 14:55:45 |
| 2 | to you to call the Siegels and ask them who their | 14:55:46 |
| 3 | attorney was and at least have a -- a conversation | 14:55:52 |
| 4 | with that person? | 14:55:54 |
| 5 | A. Not after I found out they were unhappy | 14:55:55 |
| 6 | with their attorney. | 14:55:58 |
| 7 | Q. What about before you found out they were | 14:55:58 |
| 8 | unhappy? | 14:56:00 |
| 9 | A. Well, I don't know about that. It's around | 14:56:01 |
| 10 | the time that I was looking into the rights issue | 14:56:04 |
| 11 | that I came to be aware that they were unhappy with | 14:56:09 |
| 12 | their attorney. | 14:56:12 |
| 13 | Q. What year was that? | 14:56:13 |
| 14 | A. I don't recall. | 14:56:15 |
| 15 | Q. And yet you can't tell us how or who or | 14:56:18 |
| 16 | what you heard or anything about this notion that | 14:56:23 |
| 17 | they were unhappy with their attorney? | 14:56:26 |
| 18 | A. Not really. Just conversations my mother | 14:56:30 |
| 19 | would have with Joanne, could have been from that, | 14:56:38 |
| 20 | it could have been from something I -- I read. | 14:56:44 |
| 21 | Q. Did you call them up and ask them if they | 14:56:46 |
| 22 | were unhappy with their attorney? | 14:56:48 |
| 23 | A. No. | 14:56:53 |
| 24 | MR. TOBEROFF: Asked and answered. | 14:56:54 |
| 25 | BY MR. PETROCELLI: | 14:56:54 |

EXHIBIT 37
1275

MARK WARREN PEARY - 6/29/2011

Page 174

| | | |
|---|---|---|
| 1 | Q. Do you know why they were unhappy with | 14:57:00 |
| 2 | their attorney? | 14:57:03 |
| 3 | A. Not exactly. | 14:57:03 |
| 4 | Q. What do you mean "exactly"? Do you know | 14:57:08 |
| 5 | anything about why they were unhappy with their | 14:57:09 |
| 6 | attorney that you learned, prior to calling | 14:57:10 |
| 7 | Mr. Toberoff, not after? | 14:57:18 |
| 8 | A. Oh, no, not -- not prior. I don't know | 14:57:20 |
| 9 | exactly. | 14:57:23 |
| 10 | Q. Okay. Did you have any inkling that they | 14:57:23 |
| 11 | were unhappy with their attorney prior to your | 14:57:27 |
| 12 | calling Mr. Toberoff? | 14:57:30 |
| 13 | A. Yes. | 14:57:31 |
| 14 | Q. But you don't have any details? | 14:57:33 |
| 15 | A. No. | 14:57:34 |
| 16 | Q. And you never spoke to them about it? | 14:57:36 |
| 17 | A. No. | 14:57:37 |
| 18 | MR. PETROCELLI: We'll take a short break. | 14:57:44 |
| 19 | THE VIDEOGRAPHER: Off the record. The | 14:57:46 |
| 20 | time is 2:56. | 14:57:47 |
| 21 | This will mark the end of Volume I, Tape | 14:57:51 |
| 22 | Number 2 in the deposition of Mark Warren Peary. | 14:57:53 |
| 23 | (Brief recess.) | 15:17:12 |
| 24 | THE VIDEOGRAPHER: We're back on the | 15:17:12 |
| 25 | record. | 15:17:20 |

EXHIBIT 37
1276

MARK WARREN PEARY - 6/29/2011

Page 175

| | |
|---|---|
| 1 | This marks the beginning of Volume I, Tape | 15:17:20 |
| 2 | Number 3 in the deposition of Mark Warren Peary. | 15:17:22 |
| 3 | The time is 3:16. | 15:17:25 |
| 4 | BY MR. PETROCELLI: | 15:17:25 |
| 5 | Q. Do you have any agreement to share in any | 15:17:30 |
| 6 | accounting recovery that the Siegels might obtain in | 15:17:35 |
| 7 | their case against DC or Warner Bros.? | 15:17:39 |
| 8 | MR. TOBEROFF: I instruct you not to answer | 15:17:48 |
| 9 | that because it delves into the potential substance | 15:17:50 |
| 10 | of the consent agreement. | 15:17:56 |
| 11 | (Unanswered question.) | 15:17:58 |
| 12 | THE WITNESS: I'll have to follow my | 15:17:58 |
| 13 | attorney's advice. | 15:18:00 |
| 14 | BY MR. PETROCELLI: | 15:18:00 |
| 15 | Q. Putting aside the consent agreement, the | 15:18:08 |
| 16 | 2008 consent agreement for the moment, have you | 15:18:10 |
| 17 | signed any agreement by which the Shuster interests | 15:18:14 |
| 18 | would share in any accounting recovery by the Siegel | 15:18:22 |
| 19 | parties? | 15:18:28 |
| 20 | MR. TOBEROFF: Asked and answered. | 15:18:31 |
| 21 | You can answer. | 15:18:32 |
| 22 | THE WITNESS: As I stated before, is | 15:18:34 |
| 23 | that -- | 15:18:44 |
| 24 | MR. TOBEROFF: You can answer the question. | 15:18:45 |
| 25 | THE WITNESS: I can answer that? Okay. | 15:18:45 |

Merrill  Corporation  -  Los Angeles
800-826-0277                                        www.merrillcorp.com/law

EXHIBIT 37
1277

MARK WARREN PEARY - 6/29/2011

Page 176

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  I'm just objecting for the | 15:18:47 |
| 2 | record that it's asked and answered. | 15:18:48 |
| 3 | THE WITNESS:  I understand. | 15:18:50 |
| 4 | MR. TOBEROFF:  But you can answer it again. | 15:18:51 |
| 5 | THE WITNESS:  No. | 15:18:53 |
| 6 | BY MR. PETROCELLI: | 15:18:53 |
| 7 | Q.  As part of the 2008 consent agreement, is | 15:18:54 |
| 8 | there a provision by which the Shusters share in any | 15:18:57 |
| 9 | accounting recoveries that the Siegels might obtain? | 15:19:00 |
| 10 | MR. TOBEROFF:  I instruct you not to answer | 15:19:05 |
| 11 | as to the contents of the consent agreement. | 15:19:06 |
| 12 | (Unanswered question.) | 15:19:09 |
| 13 | BY MR. PETROCELLI: | 15:19:09 |
| 14 | Q.  When you -- when you were doing the | 15:19:15 |
| 15 | research on Mr. Toberoff, did you come to learn that | 15:19:19 |
| 16 | in addition to being an experienced entertainment | 15:19:29 |
| 17 | attorney, that he was also a producer of literary | 15:19:32 |
| 18 | properties, including motion pictures and other | 15:19:39 |
| 19 | popular titles? | 15:19:43 |
| 20 | A.  Yes. | 15:19:45 |
| 21 | Q.  And how did you come to learn that? | 15:19:49 |
| 22 | A.  In our discussions. | 15:19:54 |
| 23 | Q.  With Mr. Toberoff? | 15:19:57 |
| 24 | A.  Yes. | 15:19:58 |
| 25 | Q.  Did you also see descriptions of | 15:20:10 |

EXHIBIT 37
1278

MARK WARREN PEARY - 6/29/2011

Page 177

```
 1    Mr. Toberoff's business activities outside of his      15:20:15

 2    law practice on the Internet when you were doing       15:20:21

 3    your research?                                         15:20:23

 4        A.  No.                                            15:20:27

 5        Q.  References to him as an entrepreneur and       15:20:28

 6    producer?                                              15:20:32

 7        A.  No, I don't recall that.                       15:20:33

 8        Q.  You didn't check his Web site?                 15:20:34

 9        A.  Not initially, no.                             15:20:40

10        Q.  At some point did you?                         15:20:41

11        A.  I don't recall.  I don't remember checking     15:20:42

12    his Web site.                                          15:20:47

13        Q.  Did you speak to anybody about                 15:20:50

14    Mr. Toberoff, before signing the document?  After      15:20:53

15    having called him and spoken to him, did you call      15:20:56

16    around for references?                                 15:20:59

17            MR. TOBEROFF:  Asked and answered.             15:21:01

18            You can answer.                                15:21:02

19            THE WITNESS:  I -- I don't remember doing      15:21:03

20    that.                                                  15:21:14

21    BY MR. PETROCELLI:                                     15:21:14

22        Q.  Did you speak to anybody else at his office    15:21:20

23    or at any of his companies?                            15:21:22

24            MR. TOBEROFF:  At any time?                    15:21:24

25            MR. PETROCELLI:  Prior to signing.             15:21:25
```

EXHIBIT 37
1279

MARK WARREN PEARY - 6/29/2011

Page 178

| | | |
|---|---|---|
| 1 | THE WITNESS: Not about any issues. | 15:21:28 |
| 2 | BY MR. PETROCELLI: | 15:21:28 |
| 3 | Q. About what? | 15:21:32 |
| 4 | A. Did I speak to anyone who -- maybe they | 15:21:35 |
| 5 | answered the phone. So, no. | 15:21:37 |
| 6 | Q. If you -- if you said you didn't do any | 15:21:46 |
| 7 | research -- did you do any research at all on any of | 15:21:48 |
| 8 | his companies like Pacific Pictures Corporation? | 15:21:52 |
| 9 | A. No. | 15:21:54 |
| 10 | Q. But yet you signed a contract with Pacific | 15:21:59 |
| 11 | Pictures Corporation? | 15:22:03 |
| 12 | A. That was a -- a legal -- | 15:22:03 |
| 13 | MR. TOBEROFF: Just answer the question. | 15:22:07 |
| 14 | THE WITNESS: Okay. Yes. | 15:22:09 |
| 15 | BY MR. PETROCELLI: | 15:22:09 |
| 16 | Q. Did you do any research on what was Pacific | 15:22:11 |
| 17 | Pictures Corporation before you signed a contract | 15:22:16 |
| 18 | with it? | 15:22:17 |
| 19 | A. No. | 15:22:17 |
| 20 | Q. Did you think Pacific Pictures Corporation | 15:22:22 |
| 21 | was the name of a law firm? | 15:22:23 |
| 22 | A. I didn't -- I didn't think about it. | 15:22:28 |
| 23 | Q. In fact, the documents that you signed | 15:22:31 |
| 24 | specifically state that Pacific Pictures is not a | 15:22:33 |
| 25 | law firm, right? | 15:22:36 |

EXHIBIT 37
1280

MARK WARREN PEARY - 6/29/2011

Page 179

| | | |
|---|---|---|
| 1 | A.  I -- I -- yes, I guess that's correct. | 15:22:42 |
| 2 | Q.  So why did you enter into a contract with a | 15:22:44 |
| 3 | company that was not a law firm? | 15:22:47 |
| 4 | A.  That's how we retained our attorney. | 15:22:52 |
| 5 | Q.  Why -- why did you retain your attorney by | 15:22:55 |
| 6 | entering into a contract with a company that was in | 15:22:58 |
| 7 | the motion -- or in the entertainment production | 15:23:01 |
| 8 | business called Pacific Pictures? | 15:23:03 |
| 9 | MR. TOBEROFF:  Assumes facts not in | 15:23:07 |
| 10 | evidence. | 15:23:09 |
| 11 | THE WITNESS:  I don't know why he used that | 15:23:13 |
| 12 | format exactly. | 15:23:14 |
| 13 | BY MR. PETROCELLI: | 15:23:14 |
| 14 | Q.  Well, why were you comfortable with it? | 15:23:16 |
| 15 | A.  It established our legal relationship with | 15:23:23 |
| 16 | one another. | 15:23:25 |
| 17 | Q.  Why didn't you sign a simple | 15:23:27 |
| 18 | attorney-client legal agreement that doesn't involve | 15:23:31 |
| 19 | a motion -- an entertainment company called Pacific | 15:23:35 |
| 20 | Pictures? | 15:23:39 |
| 21 | MR. TOBEROFF:  Assumes facts not in | 15:23:40 |
| 22 | evidence. | 15:23:41 |
| 23 | THE WITNESS:  I don't know. | 15:23:43 |
| 24 | BY MR. PETROCELLI: | 15:23:43 |
| 25 | Q.  Did you get any advice on it from anyone | 15:23:45 |

EXHIBIT 37
1281

MARK WARREN PEARY - 6/29/2011

Page 180

| | | |
|---|---|---|
| 1 | other than Mr. Toberoff? | 15:23:49 |
| 2 | MR. TOBEROFF:  Assumes facts not in | 15:23:51 |
| 3 | evidence. | 15:23:51 |
| 4 | THE WITNESS:  No. | 15:23:54 |
| 5 | BY MR. PETROCELLI: | 15:23:54 |
| 6 | Q.  Why did you enter into a joint venture with | 15:23:58 |
| 7 | Pacific Pictures? | 15:24:03 |
| 8 | A.  I -- I don't know why he used that | 15:24:08 |
| 9 | particular form. | 15:24:10 |
| 10 | Q.  Why are you saying -- why are you answering | 15:24:12 |
| 11 | my questions by telling me what Mr. Toberoff did? | 15:24:14 |
| 12 | You're a person, you're making decisions.  You | 15:24:17 |
| 13 | understood that this was an important matter, right? | 15:24:21 |
| 14 | A.  Yes. | 15:24:21 |
| 15 | Q.  You -- you had your mother's interest at | 15:24:24 |
| 16 | heart, right?  She was the sole beneficiary of the | 15:24:28 |
| 17 | termination interest that you were seeking to | 15:24:34 |
| 18 | pursue, correct? | 15:24:36 |
| 19 | MR. TOBEROFF:  Assumes facts.  Lacks | 15:24:38 |
| 20 | foundation. | 15:24:38 |
| 21 | BY MR. PETROCELLI: | 15:24:38 |
| 22 | Q.  Am I correct, sir, that your mother, not | 15:24:42 |
| 23 | you and not your sister, held -- was the sole | 15:24:44 |
| 24 | beneficiary of any termination interest that the | 15:24:47 |
| 25 | estate could -- could obtain, correct? | 15:24:50 |

Merrill   Corporation  -  Los Angeles

EXHIBIT 37
1282

MARK WARREN PEARY - 6/29/2011

Page 181

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  Assumes facts.  Lacks | 15:24:53 |
| 2 | foundation.  Calls for a legal conclusion. | 15:24:57 |
| 3 | THE WITNESS:  I guess it's a legal | 15:24:58 |
| 4 | conclusion.  I don't know if I'm going to answer it, | 15:25:02 |
| 5 | if I'm qualified to answer. | 15:25:06 |
| 6 | BY MR. PETROCELLI: | 15:25:06 |
| 7 | Q.  I'm not asking you about legal conclusions. | 15:25:09 |
| 8 | I'm asking you, you signed agreements, you're acting | 15:25:11 |
| 9 | as an executor, you have legal duties to the court, | 15:25:15 |
| 10 | you have legal duties to the beneficiary and you | 15:25:18 |
| 11 | can't hide behind the privilege on all these | 15:25:22 |
| 12 | questions.  I've been very careful in how I'm asking | 15:25:26 |
| 13 | these questions. | 15:25:28 |
| 14 | MR. TOBEROFF:  Objection. | 15:25:31 |
| 15 | BY MR. PETROCELLI: | 15:25:31 |
| 16 | Q.  So let me try -- let me try this again. | 15:25:32 |
| 17 | MR. TOBEROFF:  Argumentative. | 15:25:34 |
| 18 | MR. PETROCELLI:  Well, he's parroting your | 15:25:36 |
| 19 | objections.  And I've been tolerant of it, but I | 15:25:38 |
| 20 | don't want this to get carried away with that. | 15:25:42 |
| 21 | MR. TOBEROFF:  Argumentative.  Don't | 15:25:48 |
| 22 | focus -- | 15:25:51 |
| 23 | MR. PETROCELLI:  Let's try it again. | 15:25:51 |
| 24 | MR. TOBEROFF:  -- on the argument, just | 15:25:52 |
| 25 | focus on his questions, every piece and every part | 15:25:53 |

EXHIBIT 37
1283

MARK WARREN PEARY - 6/29/2011

Page 182

| | | |
|---|---|---|
| 1 | of his question, and answer it to the best of your | 15:25:55 |
| 2 | ability. | 15:25:58 |
| 3 | MR. PETROCELLI:  Exactly. | 15:26:04 |
| 4 | Q.  You understood that when you were pursuing | 15:26:04 |
| 5 | this termination interest, your research, your | 15:26:08 |
| 6 | looking out to hire a lawyer, your wanting to see if | 15:26:10 |
| 7 | your family had rights, your concern about the 1992 | 15:26:14 |
| 8 | agreement, all of the things that we've been | 15:26:18 |
| 9 | discussing, you were pursuing that for the benefit | 15:26:21 |
| 10 | of your mother who was the sole beneficiary under | 15:26:25 |
| 11 | Joe Shuster's will, correct? | 15:26:29 |
| 12 | MR. TOBEROFF:  Assumes facts.  Lacks | 15:26:32 |
| 13 | foundation. | 15:26:36 |
| 14 | THE WITNESS:  Yes. | 15:26:36 |
| 15 | BY MR. PETROCELLI: | 15:26:36 |
| 16 | Q.  Okay.  You're not a personal beneficiary, | 15:26:37 |
| 17 | right? | 15:26:37 |
| 18 | A.  I am of her. | 15:26:46 |
| 19 | Q.  But your mother could change her will, | 15:26:48 |
| 20 | correct?  You don't have a legal right to this money | 15:26:51 |
| 21 | that the estate may recover, correct? | 15:26:53 |
| 22 | MR. TOBEROFF:  Talking about him | 15:26:55 |
| 23 | personally? | 15:26:57 |
| 24 | MR. PETROCELLI:  Correct. | 15:26:57 |
| 25 | THE WITNESS:  Yes. | 15:26:57 |

EXHIBIT 37
1284

MARK WARREN PEARY - 6/29/2011

Page 183

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 15:26:57 |
| 2 | Q.  Your mother could decide to give it all to | 15:26:58 |
| 3 | charity, right? | 15:27:00 |
| 4 | A.  Yes. | 15:27:00 |
| 5 | Q.  Okay.  Now, you understand that you have a | 15:27:01 |
| 6 | fiduciary duty to your mother as the person who took | 15:27:05 |
| 7 | up this cause to pursue the termination interest, | 15:27:13 |
| 8 | right? | 15:27:13 |
| 9 | MR. TOBEROFF:  Calls for a legal | 15:27:17 |
| 10 | conclusion. | 15:27:18 |
| 11 | You could answer to the extent you have | 15:27:19 |
| 12 | knowledge. | 15:27:21 |
| 13 | BY MR. PETROCELLI: | 15:27:21 |
| 14 | Q.  I didn't ask you if you had a fiduciary | 15:27:21 |
| 15 | duty.  I asked you did you understand that you had a | 15:27:24 |
| 16 | fiduciary duty? | 15:27:26 |
| 17 | A.  Yes. | 15:27:27 |
| 18 | Q.  Okay.  And then you also agreed to serve as | 15:27:28 |
| 19 | the executor of your mother's estate in lieu of your | 15:27:33 |
| 20 | mother, right? | 15:27:36 |
| 21 | MR. TOBEROFF:  Assumes facts.  Lacks | 15:27:37 |
| 22 | foundation. | 15:27:37 |
| 23 | You can answer. | 15:27:40 |
| 24 | THE WITNESS:  Yes. | 15:27:41 |
| 25 | BY MR. PETROCELLI: | 15:27:41 |

EXHIBIT 37
1285

MARK WARREN PEARY - 6/29/2011

Page 184

| | |
|---|---|
| 1 | Q.  In 2003, your mother was competent.  She | 15:27:42 |
| 2 | had the ability to serve as an executor, correct? | 15:27:45 |
| 3 | A.  Yes. | 15:27:45 |
| 4 | Q.  Yet you were the executor, not her, | 15:27:54 |
| 5 | correct? | 15:27:58 |
| 6 | A.  Yes. | 15:27:58 |
| 7 | Q.  And you filed papers with the court which | 15:27:59 |
| 8 | we'll -- we'll talk about, but -- | 15:28:01 |
| 9 | A.  Yes. | 15:28:04 |
| 10 | Q.  -- agreeing to be the executor, right? | 15:28:05 |
| 11 | A.  Yes. | 15:28:07 |
| 12 | Q.  Now, what -- what did you do -- withdrawn. | 15:28:09 |
| 13 | Why did you agree in lieu of entering into | 15:28:20 |
| 14 | a traditional lawyer-client agreement to hire the | 15:28:26 |
| 15 | services of a lawyer?  Whether it's on a contingent | 15:28:30 |
| 16 | fee or an hourly fee, why did you agree to enter | 15:28:33 |
| 17 | into a joint venture with Pacific Pictures, a | 15:28:37 |
| 18 | company that is not a law firm? | 15:28:45 |
| 19 | MR. TOBEROFF:  You can't -- unless you can | 15:28:50 |
| 20 | answer that question independent of your discussions | 15:28:56 |
| 21 | with me, I instruct you not to answer. | 15:28:58 |
| 22 | THE WITNESS:  Okay.  I'll have to follow | 15:29:02 |
| 23 | your advice. | 15:29:07 |
| 24 | (Unanswered question.) | 15:29:10 |
| 25 | BY MR. PETROCELLI: | 15:29:10 |

EXHIBIT 37
1286

MARK WARREN PEARY - 6/29/2011

Page 185

| | | |
|---|---|---|
| 1 | Q.  But you understood that Mr. Toberoff not | 15:29:10 |
| 2 | only acted as a lawyer in some of your dealings with | 15:29:13 |
| 3 | him, but he also acted as the president of a company | 15:29:16 |
| 4 | with whom you entered into a joint venture, correct? | 15:29:19 |
| 5 | A.  Yes. | 15:29:21 |
| 6 | Q.  And that company was called Pacific | 15:29:24 |
| 7 | Pictures, correct? | 15:29:26 |
| 8 | A.  Yes. | 15:29:26 |
| 9 | Q.  And that company is not a law firm, | 15:29:30 |
| 10 | correct? | 15:29:30 |
| 11 | A.  Not the company. | 15:29:35 |
| 12 | Q.  Right.  And did you do any background on | 15:29:36 |
| 13 | what Pacific Pictures was, what it did in -- in | 15:29:41 |
| 14 | its -- in its business? | 15:29:46 |
| 15 | MR. TOBEROFF:  Asked and answered. | 15:29:48 |
| 16 | BY MR. PETROCELLI: | 15:29:48 |
| 17 | Q.  What assets it owned? | 15:29:49 |
| 18 | A.  My -- | 15:29:51 |
| 19 | MR. TOBEROFF:  Asked and answered. | 15:29:52 |
| 20 | You can answer. | 15:29:53 |
| 21 | THE WITNESS:  It's already -- my purpose in | 15:29:54 |
| 22 | contacting him was to retain legal counsel. | 15:30:00 |
| 23 | BY MR. PETROCELLI: | 15:30:00 |
| 24 | Q.  I didn't ask you about your purpose in | 15:30:00 |
| 25 | contacting him. | 15:30:09 |

MARK WARREN PEARY - 6/29/2011

Page 186

| | | |
|---|---|---|
| 1 | I'm not trying to be difficult, but can you | 15:30:09 |
| 2 | repeat my question? | 15:30:09 |
| 3 | (The reporter read the record | 15:30:09 |
| 4 | as follows: | 15:30:09 |
| 5 | "QUESTION:  And did you do any | 15:29:37 |
| 6 | background on what Pacific Pictures | 15:29:40 |
| 7 | was, what it did in its business? | 15:29:42 |
| 8 | What assets it owned?") | 15:29:49 |
| 9 | THE WITNESS:  Not really, no. | 15:30:21 |
| 10 | BY MR. PETROCELLI: | 15:30:21 |
| 11 | Q.  Did you think it was typical to enter into | 15:30:25 |
| 12 | a joint venture agreement with an entertainment | 15:30:28 |
| 13 | company instead of a standard lawyer-client | 15:30:35 |
| 14 | engagement letter if you're trying to secure the | 15:30:38 |
| 15 | services of a lawyer? | 15:30:42 |
| 16 | MR. TOBEROFF:  Assumes facts. | 15:30:43 |
| 17 | BY MR. PETROCELLI: | 15:30:43 |
| 18 | Q.  Did that strike you as -- as standard or | 15:30:44 |
| 19 | did that strike you as somewhat unusual? | 15:30:46 |
| 20 | A.  I'm not familiar enough to -- for it to | 15:30:49 |
| 21 | have struck me as being out of line or untoward or | 15:30:54 |
| 22 | anything. | 15:30:59 |
| 23 | Q.  Well, have you ever entered into a joint | 15:31:00 |
| 24 | venture with anyone before? | 15:31:02 |
| 25 | A.  No. | 15:31:03 |

EXHIBIT 37
1288

MARK WARREN PEARY - 6/29/2011

Page 187

| | | |
|---|---|---|
| 1 | Q.  This is the first joint venture you ever | 15:31:10 |
| 2 | entered into? | 15:31:13 |
| 3 | A.  Yes. | 15:31:13 |
| 4 | Q.  Did you -- were you concerned that by | 15:31:15 |
| 5 | entering into a joint venture for the purpose of | 15:31:25 |
| 6 | pursuing Joe Shuster's termination interests, if | 15:31:31 |
| 7 | any, that you were violating the law? | 15:31:36 |
| 8 | A.  No. | 15:31:38 |
| 9 | Q.  Did you receive any advice on that subject? | 15:31:42 |
| 10 | A.  No. | 15:31:44 |
| 11 | Q.  Are you aware that in the lawsuit that DC | 15:31:48 |
| 12 | has filed, it claims that your agreements with | 15:31:51 |
| 13 | Pacific Pictures did, in fact, violate the law? | 15:31:55 |
| 14 | A.  I may have scanned it. | 15:32:01 |
| 15 | Q.  Why did you just scan it?  You seem very | 15:32:07 |
| 16 | adept at reading code provisions that you find on | 15:32:11 |
| 17 | your own, the copyright code, the amendments in 1998 | 15:32:14 |
| 18 | and yet you just scanned a lawsuit against you -- | 15:32:24 |
| 19 | A.  Yes. | 15:32:27 |
| 20 | Q.  -- and against your mother relating to the | 15:32:28 |
| 21 | matters as to which you are executor.  And you | 15:32:32 |
| 22 | didn't read it carefully?  Not once? | 15:32:36 |
| 23 | A.  I -- I scanned it because I -- I find | 15:32:42 |
| 24 | the -- the claims to be unfounded and -- and it | 15:32:47 |
| 25 | ticks me off that they're filing the claim, and I am | 15:32:52 |

MARK WARREN PEARY - 6/29/2011

Page 188

| | | |
|---|---|---|
| 1 | referring all of the detailed analysis to my | 15:32:55 |
| 2 | attorney because it angers me to read -- read these | 15:32:59 |
| 3 | claims. | 15:33:04 |
| 4 | Q.  Well, how could it anger you to read the -- | 15:33:05 |
| 5 | how could it anger you unless you first understood | 15:33:11 |
| 6 | what the claims were, which you would need to read | 15:33:13 |
| 7 | the complaint rather than just scan it in order to | 15:33:17 |
| 8 | understand?  How would you be angry about it? | 15:33:19 |
| 9 | A.  I -- I understood the gist of the claims | 15:33:22 |
| 10 | and I find -- find them to be reprehensible that | 15:33:27 |
| 11 | they would sue us for trying to give us something | 15:33:34 |
| 12 | that the law grants to us. | 15:33:37 |
| 13 | Q.  Okay.  And you had that view on your own | 15:33:39 |
| 14 | before talking to Mr. Toberoff. | 15:33:41 |
| 15 | Is that right? | 15:33:41 |
| 16 | A.  Yes. | 15:33:41 |
| 17 | Q.  That's based on your scanning but not | 15:33:45 |
| 18 | reading carefully the complaint, right? | 15:33:47 |
| 19 | A.  I got the gist of it. | 15:33:51 |
| 20 | Q.  And -- and you did not read it word for | 15:33:52 |
| 21 | word. | 15:33:55 |
| 22 | Is that correct? | 15:33:55 |
| 23 | A.  I got the gist of it, perhaps not word for | 15:34:02 |
| 24 | word. | 15:34:04 |
| 25 | Q.  You did not read it word for word. | 15:34:07 |

EXHIBIT 37
1290

MARK WARREN PEARY - 6/29/2011

Page 189

| | | |
|---|---|---|
| 1 | Is that correct? | 15:34:08 |
| 2 | A.  I'd say so. | 15:34:09 |
| 3 | Q.  Is that the first time that a lawsuit's | 15:34:14 |
| 4 | been filed against you? | 15:34:16 |
| 5 | A.  Yes. | 15:34:17 |
| 6 | Q.  First time, to your knowledge, a lawsuit | 15:34:18 |
| 7 | has been filed against your mother? | 15:34:19 |
| 8 | A.  Yes. | 15:34:23 |
| 9 | Q.  And you didn't bother to read the complaint | 15:34:24 |
| 10 | word for word? | 15:34:26 |
| 11 | MR. TOBEROFF:  He's answered that question | 15:34:27 |
| 12 | three times. | 15:34:28 |
| 13 | You don't have to answer that question | 15:34:29 |
| 14 | again. | 15:34:30 |
| 15 | THE WITNESS:  I already answered. | 15:34:30 |
| 16 | BY MR. PETROCELLI: | 15:34:30 |
| 17 | Q.  What's the answer? | 15:34:32 |
| 18 | A.  What I said before. | 15:34:33 |
| 19 | Q.  Which is what? | 15:34:33 |
| 20 | A.  That I read the gist of it then discussed | 15:34:38 |
| 21 | it with my attorney. | 15:34:40 |
| 22 | Q.  After you read the gist of it, you said you | 15:34:41 |
| 23 | got angry. | 15:34:46 |
| 24 | Is that right? | 15:34:46 |
| 25 | A.  Yes. | 15:34:46 |

EXHIBIT 37
1291

MARK WARREN PEARY - 6/29/2011

Page 190

| | |
|---|---|
| 1      Q.   And why did you get angry? | 15:34:49 |
| 2           MR. TOBEROFF:  He already answered that | 15:34:55 |
| 3    question on his own. | 15:34:57 |
| 4           But you can answer it again. | 15:35:00 |
| 5           THE WITNESS:  Because they -- DC is | 15:35:02 |
| 6    fighting us on grants and rights that are granted to | 15:35:07 |
| 7    us by law instead of cooperating. | 15:35:11 |
| 8    BY MR. PETROCELLI: | 15:35:11 |
| 9      Q.   How do you know that DC's claims are | 15:35:21 |
| 10   unfounded? | 15:35:24 |
| 11     A.   That's my impression from my reading and my | 15:35:27 |
| 12   discussions. | 15:35:31 |
| 13     Q.   Well, before talking to -- to Mr. Toberoff, | 15:35:32 |
| 14   based on your reading of the claims, why would you | 15:35:34 |
| 15   have concluded that they're unfounded? | 15:35:39 |
| 16     A.   They're trying to deny our termination | 15:35:43 |
| 17   rights.  That pisses me off. | 15:35:46 |
| 18     Q.   Are you -- but at the time that you -- but | 15:35:52 |
| 19   you, yourself, didn't know about the 1992 agreement | 15:35:58 |
| 20   at the time you began to undertake this research. | 15:36:01 |
| 21   And as you've already testified, you, yourself, were | 15:36:05 |
| 22   concerned when you saw the agreement for the first | 15:36:08 |
| 23   time.  And it was only after you retained | 15:36:10 |
| 24   Mr. Toberoff that you formed the view that the | 15:36:16 |
| 25   agreement posed no threat, correct? | 15:36:21 |

EXHIBIT 37
1292

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | A.  I was unsure what the agreement meant. | 15:36:24 |
| 2 | Q.  Now, could you not appreciate that DC | 15:36:28 |
| 3 | Comics, given even your apparent concern on reading | 15:36:31 |
| 4 | the agreement, might have a different view and that | 15:36:34 |
| 5 | that could be a matter on which reasonable minds | 15:36:37 |
| 6 | could differ? | 15:36:40 |
| 7 | A.  What I know is that Jean and Frank had no | 15:36:48 |
| 8 | termination rights, so it's irrelevant to this. | 15:36:51 |
| 9 | Q.  How do you know that? | 15:36:55 |
| 10 | A.  I know that from my research and my | 15:36:56 |
| 11 | discussions with my attorney. | 15:36:58 |
| 12 | Q.  Can you appreciate that there -- well, if | 15:37:02 |
| 13 | they didn't have any rights, why did they agree in | 15:37:04 |
| 14 | writing in order to get money, in order to get more | 15:37:12 |
| 15 | money for your family, that they wouldn't assert any | 15:37:14 |
| 16 | such rights even if they were hereafter created? | 15:37:19 |
| 17 | A.  I don't know. | 15:37:22 |
| 18 | MR. TOBEROFF:  Misstates their letters. | 15:37:23 |
| 19 | MR. PETROCELLI:  Not really. | 15:37:26 |
| 20 | MR. TOBEROFF:  Yes, it does. | 15:37:28 |
| 21 | BY MR. PETROCELLI: | 15:37:28 |
| 22 | Q.  Well, can you appreciate that -- that | 15:37:30 |
| 23 | that's an issue that should be resolved by the | 15:37:35 |
| 24 | courts?  That's a serious issue?  When you read the | 15:37:38 |
| 25 | complaint, did that occur to you? | 15:37:44 |

EXHIBIT 37
1293

MARK WARREN PEARY - 6/29/2011

Page 192

| | | |
|---|---|---|
| 1 | A.  If it has to be resolved by the courts, it | 15:37:48 |
| 2 | will be. | 15:37:50 |
| 3 | Q.  And you've seen letters today that you've | 15:37:51 |
| 4 | never seen before, even though your attorney has | 15:37:53 |
| 5 | advised you, as you've said, letters that -- which | 15:37:59 |
| 6 | your mother said she had no intention to pursue | 15:38:01 |
| 7 | termination rights, even after knowing about the | 15:38:03 |
| 8 | change of the law, even after knowing about the | 15:38:06 |
| 9 | Siegel family? | 15:38:08 |
| 10 | A.  She wrote letters to everyone, frequently I | 15:38:09 |
| 11 | didn't know anything about.  She was always writing | 15:38:14 |
| 12 | and chatting and I was unaware of all this back and | 15:38:16 |
| 13 | forth chitchatting and letters that she was writing | 15:38:21 |
| 14 | off -- | 15:38:24 |
| 15 | Q.  So you're belittling your mother -- | 15:38:24 |
| 16 | A.  No, I'm not belittling my mother. | 15:38:26 |
| 17 | Q.  -- in 1999 writing letters? | 15:38:28 |
| 18 | A.  I'm not belittling her. | 15:38:30 |
| 19 | Q.  That -- well, sounds like you're saying | 15:38:31 |
| 20 | that her letters have no real meaning or consequence | 15:38:34 |
| 21 | and that you would have known better. | 15:38:37 |
| 22 | Is that what you're suggesting? | 15:38:39 |
| 23 | A.  No, no. | 15:38:40 |
| 24 | MR. TOBEROFF:  It -- | 15:38:40 |
| 25 | BY MR. PETROCELLI: | 15:38:40 |

EXHIBIT 37
1294

MARK WARREN PEARY - 6/29/2011

Page 193

| | | |
|---|---|---|
| 1 | Q.  Okay. | 15:38:42 |
| 2 | MR. TOBEROFF:  Just focus on the questions. | 15:38:42 |
| 3 | BY MR. PETROCELLI: | 15:38:42 |
| 4 | Q.  So what you're suggesting by your answer | 15:38:48 |
| 5 | about your mother just chitchatting is that those | 15:38:50 |
| 6 | letters have no real significance. | 15:38:52 |
| 7 | Is that right? | 15:38:52 |
| 8 | A.  I don't know.  She wrote letters to lots of | 15:38:59 |
| 9 | people I didn't know about. | 15:39:03 |
| 10 | Q.  You don't think your mother was capable of | 15:39:05 |
| 11 | expressing how she really felt about things? | 15:39:07 |
| 12 | MR. TOBEROFF:  Vague and ambiguous. | 15:39:10 |
| 13 | BY MR. PETROCELLI: | 15:39:10 |
| 14 | Q.  Is that what you're suggesting? | 15:39:14 |
| 15 | A.  No.  I don't know how to answer that. | 15:39:15 |
| 16 | Q.  In 1999 did your mother understand how to | 15:39:18 |
| 17 | express her feelings about things? | 15:39:21 |
| 18 | A.  Yes. | 15:39:23 |
| 19 | Q.  And in 1992 did she understand that? | 15:39:24 |
| 20 | A.  Yes. | 15:39:25 |
| 21 | Q.  Let me show you -- by the way, after you | 15:39:45 |
| 22 | hired Mr. Toberoff, have you had occasion to do any | 15:39:48 |
| 23 | research on all the entertainment companies with | 15:39:50 |
| 24 | which he is associated? | 15:39:54 |
| 25 | MR. TOBEROFF:  Assumes facts.  Vague and | 15:39:59 |

Merrill  Corporation - Los Angeles

EXHIBIT 37

1295

MARK WARREN PEARY - 6/29/2011

Page 194

| | | |
|---|---|---|
| 1 | ambiguous. | 15:40:00 |
| 2 | BY MR. PETROCELLI: | 15:40:00 |
| 3 | Q. Such as Intellectual Properties Worldwide, | 15:40:00 |
| 4 | such as IPW? | 15:40:04 |
| 5 | A. I'm aware of those. | 15:40:06 |
| 6 | Q. And have you researched those companies to | 15:40:07 |
| 7 | see what kind of a business Mr. Toberoff conducts | 15:40:10 |
| 8 | through those companies? | 15:40:17 |
| 9 | MR. TOBEROFF: Assumes facts. | 15:40:18 |
| 10 | THE WITNESS: Minimally. | 15:40:21 |
| 11 | BY MR. PETROCELLI: | 15:40:21 |
| 12 | Q. Did you know about those other companies | 15:40:28 |
| 13 | when you entered into the first agreement with | 15:40:30 |
| 14 | Pacific Pictures? | 15:40:33 |
| 15 | MR. TOBEROFF: Assumes facts. | 15:40:38 |
| 16 | THE WITNESS: I don't remember about those | 15:40:39 |
| 17 | other companies specifically. | 15:40:41 |
| 18 | BY MR. PETROCELLI: | 15:40:41 |
| 19 | Q. Do you believe that when you are having a | 15:40:45 |
| 20 | conversation with Mr. Toberoff in his role as | 15:40:47 |
| 21 | president of Pacific Pictures, that every one of | 15:40:51 |
| 22 | your conversations is a -- is an attorney-client | 15:40:53 |
| 23 | privileged conversation? | 15:40:56 |
| 24 | MR. TOBEROFF: Assumes facts. Ask -- | 15:40:58 |
| 25 | really asks for a legal conclusion. | 15:41:01 |

EXHIBIT 37
1296

MARK WARREN PEARY - 6/29/2011

Page 195

| | | |
|---|---|---|
| 1 | MR. PETROCELLI:  No, I didn't.  I didn't | 15:41:02 |
| 2 | ask him what the law was.  I asked for his state of | 15:41:04 |
| 3 | mind. | 15:41:07 |
| 4 | MR. TOBEROFF:  His state of mind as to what | 15:41:07 |
| 5 | the law is. | 15:41:09 |
| 6 | MR. PETROCELLI:  Correct. | 15:41:09 |
| 7 | MR. TOBEROFF:  Okay. | 15:41:11 |
| 8 | MR. PETROCELLI:  That's correct. | 15:41:11 |
| 9 | MR. TOBEROFF:  I don't accept that | 15:41:11 |
| 10 | carve-out. | 15:41:13 |
| 11 | You can answer the question. | 15:41:16 |
| 12 | THE WITNESS:  Okay.  At the time it was | 15:41:16 |
| 13 | Pacific Pictures.  All my dealings were with Marc | 15:41:20 |
| 14 | Toberoff as my attorney. | 15:41:23 |
| 15 | BY MR. PETROCELLI: | 15:41:23 |
| 16 | Q.  You never once communicated with the | 15:41:28 |
| 17 | president of Pacific Pictures, the company with whom | 15:41:30 |
| 18 | you entered into a joint venture agreement? | 15:41:32 |
| 19 | A.  No. | 15:41:34 |
| 20 | Q.  Do you even know who the president is? | 15:41:36 |
| 21 | A.  I -- not really.  It never came up. | 15:41:37 |
| 22 | Q.  Did you see it in the document you signed | 15:41:43 |
| 23 | who the president was? | 15:41:45 |
| 24 | A.  No. | 15:41:46 |
| 25 | Q.  You didn't read the document that you | 15:41:47 |

EXHIBIT 37
1297

MARK WARREN PEARY - 6/29/2011

Page 196

| | | |
|---|---|---|
| 1 | signed? | 15:41:48 |
| 2 | A. Yes. | 15:41:49 |
| 3 | Q. And the document said that Marc Toberoff | 15:41:51 |
| 4 | was the president of Pacific Pictures, right? | 15:41:53 |
| 5 | MR. TOBEROFF: Only answer to the extent | 15:41:57 |
| 6 | you have a recollection of that. Otherwise, he can | 15:41:59 |
| 7 | show you the document. | 15:42:01 |
| 8 | THE WITNESS: Okay. I -- I don't recall. | 15:42:02 |
| 9 | I'd have to see the document. | 15:42:03 |
| 10 | MR. PETROCELLI: I'll show it to you. Next | 15:42:04 |
| 11 | document is Exhibit 10. | 15:42:06 |
| 12 | (The document referred to was | 15:42:07 |
| 13 | marked for identification by the | 15:42:07 |
| 14 | C.S.R. as Exhibit 10 and attached | 15:42:07 |
| 15 | to this deposition.) | 15:42:24 |
| 16 | BY MR. PETROCELLI: | 15:42:24 |
| 17 | Q. I notice you're looking right to the end | 15:42:25 |
| 18 | where I wanted to direct you and you see it says, | 15:42:28 |
| 19 | "Marc Toberoff, president of Pacific Pictures | 15:42:30 |
| 20 | Corporation," correct? | 15:42:33 |
| 21 | A. Yes. | 15:42:34 |
| 22 | MR. TOBEROFF: He actually was not, for the | 15:42:34 |
| 23 | record, looking right to the end. He was looking in | 15:42:36 |
| 24 | the middle. | 15:42:38 |
| 25 | BY MR. PETROCELLI: | 15:42:38 |

EXHIBIT 37
1298

MARK WARREN PEARY - 6/29/2011

Page 197

| | | |
|---|---|---|
| 1 | Q. Signature page. Do you see any signature | 15:42:40 |
| 2 | on this document that says, "Marc Toberoff, | 15:42:46 |
| 3 | attorney"? | 15:42:49 |
| 4 | A. No. | 15:42:50 |
| 5 | Q. Okay. And this is, in fact -- and for the | 15:42:55 |
| 6 | record, I will describe it as a document | 15:43:00 |
| 7 | entitled "Joint Venture Agreement" as of | 15:43:02 |
| 8 | November 23, 2001 by and between Pacific Pictures | 15:43:05 |
| 9 | Corporation, Jean Peavy, and her son, Mark Warren | 15:43:11 |
| 10 | Peavy, formerly known as Mark Warren -- Mark Warren | 15:43:15 |
| 11 | Peary formerly known as Mark Warren Peavy signed by | 15:43:19 |
| 12 | you, correct, on November 28, 2001? | 15:43:24 |
| 13 | A. Yes. | 15:43:27 |
| 14 | Q. And by your mother, Jean? | 15:43:27 |
| 15 | A. Yes. | 15:43:29 |
| 16 | Q. On the same day? | 15:43:30 |
| 17 | A. Yes. | 15:43:33 |
| 18 | Q. And you -- and then you see that | 15:43:33 |
| 19 | Mr. Toberoff signed it as president of Pacific | 15:43:37 |
| 20 | Pictures on November 28, 2001, correct? | 15:43:40 |
| 21 | A. Yes. | 15:43:40 |
| 22 | Q. And this was the only agreement that you | 15:43:48 |
| 23 | signed in 2001 with Mr. Toberoff, right? | 15:43:51 |
| 24 | A. Yes. | 15:43:51 |
| 25 | Q. And you didn't sign any agreements with him | 15:43:58 |

Merrill  Corporation  -  Los Angeles
800-826-0277                                  www.merrillcorp.com/law

EXHIBIT 37

MARK WARREN PEARY - 6/29/2011

Page 198

| | | |
|---|---|---|
| 1 | in 2002, correct? | 15:44:00 |
| 2 | A.  Not to my recollection. | 15:44:03 |
| 3 | Q.  And you signed another agreement with him | 15:44:04 |
| 4 | in 2003, also as president of Pacific Pictures, | 15:44:06 |
| 5 | correct? | 15:44:06 |
| 6 | A.  Yes. | 15:44:06 |
| 7 | Q.  And the first time you signed any agreement | 15:44:16 |
| 8 | with him where he signed as a lawyer was in 2004, | 15:44:18 |
| 9 | correct? | 15:44:18 |
| 10 | A.  Yes. | 15:44:18 |
| 11 | Q.  That's what you've been calling the legal | 15:44:24 |
| 12 | retainer agreement, right? | 15:44:25 |
| 13 | A.  Yes. | 15:44:25 |
| 14 | Q.  Okay.  Now, you certainly understood this | 15:44:28 |
| 15 | agreement -- withdrawn. | 15:44:37 |
| 16 | You did read this agreement word for word | 15:44:39 |
| 17 | before you signed it, correct? | 15:44:41 |
| 18 | A.  Yes. | 15:44:41 |
| 19 | Q.  You didn't just scan it, right? | 15:44:43 |
| 20 | A.  Yes. | 15:44:43 |
| 21 | Q.  You understood that signing this was a | 15:44:45 |
| 22 | matter of extreme importance, correct? | 15:44:48 |
| 23 | MR. TOBEROFF:  Hold on.  I need -- you're | 15:44:50 |
| 24 | answering his questions too quickly without me being | 15:44:51 |
| 25 | able to interject an objection, okay?  You got to | 15:44:54 |

EXHIBIT 37
1300

MARK WARREN PEARY - 6/29/2011

Page 199

| | | |
|---|---|---|
| 1 | pause after he asks his question so that I can | 15:44:57 |
| 2 | object. He is saying, "Correct?" You're saying, | 15:44:59 |
| 3 | "Yes" immediately and I can't object in between. | 15:45:02 |
| 4 | Do you understand? Just slow it down so I | 15:45:13 |
| 5 | can object. | 15:45:14 |
| 6 | MR. PETROCELLI: What was the question? | 15:45:14 |
| 7 | (The reporter read the record | 15:45:14 |
| 8 | as follows: | 15:45:14 |
| 9 | "QUESTION: You understood | 15:44:45 |
| 10 | that signing this was a matter of | 15:44:45 |
| 11 | extreme importance, correct?") | 15:44:48 |
| 12 | MR. TOBEROFF: You can answer. | 15:45:27 |
| 13 | THE WITNESS: Yes. | 15:45:28 |
| 14 | BY MR. PETROCELLI: | 15:45:28 |
| 15 | Q. Did you go over this carefully with your | 15:45:32 |
| 16 | mother before you and she signed? | 15:45:34 |
| 17 | A. I went over it with her. | 15:45:39 |
| 18 | Q. Now, when you signed this, did -- you | 15:45:47 |
| 19 | understood that you were expecting to, at some | 15:45:50 |
| 20 | point, serve a notice of termination with respect to | 15:45:59 |
| 21 | the Shuster interest. | 15:46:03 |
| 22 | Is that right? | 15:46:03 |
| 23 | A. Yes. | 15:46:03 |
| 24 | Q. Did you have an understanding when you | 15:46:07 |
| 25 | signed Exhibit 10 when you would serve that notice? | 15:46:09 |

EXHIBIT 37
1301

MARK WARREN PEARY - 6/29/2011

Page 200

| | | |
|---|---|---|
| 1 | A.   Yes. | 15:46:12 |
| 2 | Q.   When? | 15:46:16 |
| 3 | MR. TOBEROFF:   You can -- you can -- since | 15:46:20 |
| 4 | you've testified that you viewed me as your attorney | 15:46:23 |
| 5 | and you're seeking legal advice from me, any -- you | 15:46:26 |
| 6 | can't answer that question because that question | 15:46:31 |
| 7 | would be based on your discussions with me acting as | 15:46:33 |
| 8 | your counsel with respect to the termination | 15:46:35 |
| 9 | notices. | 15:46:37 |
| 10 | MR. PETROCELLI:   Well -- | 15:46:37 |
| 11 | MR. TOBEROFF:   So I instruct you not to | 15:46:43 |
| 12 | answer. | 15:46:44 |
| 13 | (Unanswered question.) | 15:46:44 |
| 14 | MR. PETROCELLI:   You know, we're not going | 15:46:44 |
| 15 | to solve the problem today, of course, but you know, | 15:46:45 |
| 16 | we dispute that you can cover every single | 15:46:47 |
| 17 | conversation you had with him based on the | 15:46:50 |
| 18 | attorney-client privilege in the face of these | 15:46:53 |
| 19 | documents and other facts. | 15:46:55 |
| 20 | Do the best I can. | 15:46:59 |
| 21 | Q.   Based on the research that you had done | 15:47:09 |
| 22 | before contacting Mr. Toberoff, did you have an | 15:47:10 |
| 23 | understanding as to when the earliest you could | 15:47:14 |
| 24 | serve a notice of termination was? | 15:47:18 |
| 25 | MR. TOBEROFF:   Separate from your | 15:47:23 |

EXHIBIT 37
1302

MARK WARREN PEARY - 6/29/2011

Page 201

| | | |
|---|---|---|
| 1 | conversations with me. | 15:47:23 |
| 2 | THE WITNESS: Well -- | 15:47:25 |
| 3 | MR. PETROCELLI: Well, it has to be | 15:47:25 |
| 4 | separate because I said "before." | 15:47:26 |
| 5 | THE WITNESS: Okay. I -- I don't believe I | 15:47:28 |
| 6 | understood that level of detail at that time. | 15:47:32 |
| 7 | BY MR. PETROCELLI: | 15:47:32 |
| 8 | Q. Now, you said that there were drafts of | 15:47:43 |
| 9 | this that went back and forth. | 15:47:45 |
| 10 | What changes did you make prior to agreeing | 15:47:46 |
| 11 | to this Exhibit 10? | 15:47:49 |
| 12 | A. I believe I had some issues with if | 15:48:05 |
| 13 | something had happened to Marc Toberoff, bodily harm | 15:48:12 |
| 14 | or something of that nature. | 15:48:16 |
| 15 | Q. You asked him to address that? | 15:48:23 |
| 16 | A. Yes. I don't recall what else there was, | 15:48:24 |
| 17 | discussions. | 15:48:32 |
| 18 | Q. Did you -- did you have any discussions as | 15:48:33 |
| 19 | to why you were entering into a joint venture | 15:48:35 |
| 20 | agreement rather than a regular attorney-client | 15:48:41 |
| 21 | agreement? And why he wasn't signing as Marc | 15:48:43 |
| 22 | Toberoff, the lawyer? Any discussions on that | 15:48:48 |
| 23 | subject? | 15:48:50 |
| 24 | A. Yes. It was -- it was clear to me that | 15:48:54 |
| 25 | he -- | 15:48:59 |

EXHIBIT 37
1303

MARK WARREN PEARY - 6/29/2011

Page 202

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  Just -- just answer his -- | 15:48:59 |
| 2 | he asked you whether you had any discussions with | 15:49:01 |
| 3 | me -- | 15:49:04 |
| 4 | THE WITNESS:  Yes. | 15:49:04 |
| 5 | MR. TOBEROFF:  -- and you're launching -- | 15:49:04 |
| 6 | MR. PETROCELLI:  I didn't actually ask with | 15:49:06 |
| 7 | you, I said any discussions. | 15:49:08 |
| 8 | MR. TOBEROFF:  And you are launching -- | 15:49:10 |
| 9 | MR. PETROCELLI:  He said "yes." | 15:49:10 |
| 10 | MR. TOBEROFF:  He just wanted to know if | 15:49:12 |
| 11 | you had any discussions -- | 15:49:14 |
| 12 | THE WITNESS:  Yes. | 15:49:15 |
| 13 | BY MR. PETROCELLI: | 15:49:15 |
| 14 | Q.  With whom? | 15:49:15 |
| 15 | MR. TOBEROFF:  Excuse me. | 15:49:16 |
| 16 | When he asks you a question, I know it's | 15:49:16 |
| 17 | difficult, try and answer the question.  Don't | 15:49:18 |
| 18 | launch into a narrative. | 15:49:20 |
| 19 | BY MR. PETROCELLI: | 15:49:20 |
| 20 | Q.  With whom? | 15:49:21 |
| 21 | A.  With Marc Toberoff. | 15:49:22 |
| 22 | Q.  What did he say and what did you say on | 15:49:27 |
| 23 | that subject? | 15:49:30 |
| 24 | THE WITNESS:  Can I answer? | 15:49:37 |
| 25 | MR. TOBEROFF:  You can -- what's the | 15:49:41 |

Merrill  Corporation - Los Angeles

800-826-0277                                          www.merrillcorp.com/law

EXHIBIT 37
1304

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | question again?  Can you read it back to me or can | 15:49:42 |
| 2 | you repeat it to me? | 15:49:44 |
| 3 | MR. PETROCELLI:  Yeah. | 15:49:46 |
| 4 | Q.  What did you and he discuss on this subject | 15:49:47 |
| 5 | as to why you were entering into a joint venture | 15:49:49 |
| 6 | agreement rather than a normal attorney-client | 15:49:52 |
| 7 | agreement? | 15:49:54 |
| 8 | THE WITNESS:  Can I -- | 15:49:59 |
| 9 | MR. TOBEROFF:  You can't answer that | 15:50:00 |
| 10 | question. | 15:50:01 |
| 11 | THE WITNESS:  Okay. | 15:50:02 |
| 12 | MR. TOBEROFF:  You cannot answer that | 15:50:02 |
| 13 | question. | 15:50:03 |
| 14 | THE WITNESS:  Okay.  Okay. | 15:50:03 |
| 15 | (Unanswered question.) | 15:50:05 |
| 16 | MR. TOBEROFF:  I'm instructing him not to | 15:50:07 |
| 17 | answer that question. | 15:50:09 |
| 18 | MR. PETROCELLI:  Attorney-client privilege, | 15:50:09 |
| 19 | right? | 15:50:09 |
| 20 | MR. TOBEROFF:  Yes. | 15:50:11 |
| 21 | THE WITNESS:  Okay. | 15:50:12 |
| 22 | BY MR. PETROCELLI: | 15:50:12 |
| 23 | Q.  Did you discuss with your mother why she | 15:50:15 |
| 24 | and you were forming a joint venture with a company | 15:50:18 |
| 25 | called Pacific Pictures Corporation? | 15:50:23 |

EXHIBIT 37
1305

MARK WARREN PEARY - 6/29/2011

Page 204

| | | |
|---|---|---|
| 1 | A. No. | 15:50:27 |
| 2 | Q. Had you ever heard of Pacific Pictures | 15:50:28 |
| 3 | Corporation before? | 15:50:30 |
| 4 | A. No. | 15:50:30 |
| 5 | Q. Were you aware of anything that it had | 15:50:31 |
| 6 | done? | 15:50:33 |
| 7 | A. It had -- we had discussed -- discussed it. | 15:50:33 |
| 8 | I can't recall the details now. | 15:50:42 |
| 9 | Q. Did you inquire whether Pacific Pictures | 15:50:44 |
| 10 | Corporation had -- had owned any other termination | 15:50:47 |
| 11 | interests, or this was the first one? | 15:50:53 |
| 12 | MR. TOBEROFF: Lacks foundation. | 15:51:00 |
| 13 | THE WITNESS: No, I don't know about that. | 15:51:05 |
| 14 | BY MR. PETROCELLI: | 15:51:05 |
| 15 | Q. Did you have any discussion about giving | 15:51:15 |
| 16 | away 50 percent of your rights to a joint venture? | 15:51:21 |
| 17 | A. Yes. | 15:51:26 |
| 18 | Q. With whom? | 15:51:29 |
| 19 | A. Marc Toberoff. | 15:51:29 |
| 20 | Q. What did you and he discuss on that | 15:51:31 |
| 21 | subject? | 15:51:34 |
| 22 | MR. TOBEROFF: I instruct you not to answer | 15:51:40 |
| 23 | as to the substance of our discussions. | 15:51:41 |
| 24 | (Unanswered question.) | 15:51:44 |
| 25 | BY MR. PETROCELLI: | 15:51:44 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1306

MARK WARREN PEARY - 6/29/2011

Page 205

| | |
|---|---|
| 1    Q.   Did you discuss that with your mother? | 15:51:47 |
| 2    A.   Not -- not details, no. | 15:51:49 |
| 3    Q.   Why didn't you go over this in detail with | 15:51:58 |
| 4    your mother, explain exactly what was happening? | 15:52:00 |
| 5    You were creating a joint venture, you're giving up | 15:52:05 |
| 6    50 percent of the rights. | 15:52:08 |
| 7    A.   She -- she read it. | 15:52:09 |
| 8    Q.   So -- and you assumed that by her reading | 15:52:13 |
| 9    it that she knew exactly what she was doing? | 15:52:16 |
| 10   A.   Yes. | 15:52:18 |
| 11   Q.   Just like she knew exactly what she was | 15:52:27 |
| 12   doing when she signed the '92 agreement, right? | 15:52:29 |
| 13   A.   I don't know. | 15:52:35 |
| 14   Q.   Unsure? | 15:52:36 |
| 15   A.   Unsure, yeah. | 15:52:37 |
| 16   Q.   But not this one, ten years later. | 15:52:39 |
| 17       Was there any negotiation over the 50 | 15:52:48 |
| 18   percent?  Did you say, "50 percent?  You got to be | 15:52:52 |
| 19   kidding me.  How about 5 percent or 10 percent?" | 15:52:54 |
| 20   You know, was there any conversation about that? | 15:53:01 |
| 21       MR. TOBEROFF:  You can answer that. | 15:53:06 |
| 22   BY MR. PETROCELLI: | 15:53:06 |
| 23   Q.   You said there were drafts that went back | 15:53:07 |
| 24   and forth? | 15:53:09 |
| 25   A.   Yes, there were conversations. | 15:53:09 |

EXHIBIT 37
1307

MARK WARREN PEARY - 6/29/2011

Page 206

| | | |
|---|---|---|
| 1 | Q.   What were they?  Relate them to me. | 15:53:10 |
| 2 | THE WITNESS:   Can I answer? | 15:53:17 |
| 3 | MR. TOBEROFF:   You can answer as to whether | 15:53:18 |
| 4 | there were negotiations regarding the 50 percent, | 15:53:19 |
| 5 | but not as to -- not -- just whether we had the | 15:53:22 |
| 6 | conversation.  Actually, you already answered that. | 15:53:28 |
| 7 | THE WITNESS:   Yeah. | 15:53:30 |
| 8 | MR. TOBEROFF:   But you can't answer the | 15:53:31 |
| 9 | substance of our conversations. | 15:53:33 |
| 10 | THE WITNESS:   We had discussed the split. | 15:53:35 |
| 11 | BY MR. PETROCELLI: | 15:53:35 |
| 12 | Q.   Did you seek a lower split?  Lower for | 15:53:42 |
| 13 | the -- for Pacific Pictures? | 15:53:47 |
| 14 | A.   I -- I had -- I had asked about the split | 15:53:51 |
| 15 | and we discussed it back and forth and what would be | 15:53:54 |
| 16 | involved on Marc Toberoff's part, the work involved, | 15:53:59 |
| 17 | the cost he would bear. | 15:54:04 |
| 18 | Q.   Did you suggest a different number? | 15:54:08 |
| 19 | A.   I don't remember if I did.  We arrived at | 15:54:10 |
| 20 | a -- a mutual agreement after talking about it. | 15:54:24 |
| 21 | Q.   Did you check around on whether 50 percent | 15:54:31 |
| 22 | was appropriate for this joint venture? | 15:54:37 |
| 23 | A.   Check around? | 15:54:40 |
| 24 | Q.   Research. | 15:54:46 |
| 25 | MR. TOBEROFF:   Vague. | 15:54:48 |

EXHIBIT 37
1308

MARK WARREN PEARY - 6/29/2011

Page 207

| | | |
|---|---|---|
| 1 | THE WITNESS:  I don't remember if I did or | 15:54:55 |
| 2 | not. | 15:54:56 |
| 3 | BY MR. PETROCELLI: | 15:54:56 |
| 4 | Q.  Once you signed Exhibit 10, you were | 15:55:04 |
| 5 | satisfied that you understood all of its terms and | 15:55:07 |
| 6 | provisions? | 15:55:10 |
| 7 | A.  Yes. | 15:55:13 |
| 8 | Q.  Okay.  And you understood that it included, | 15:55:15 |
| 9 | in addition to Superman elements, Superboy as well, | 15:55:18 |
| 10 | including Smallville, right? | 15:55:24 |
| 11 | A.  I saw that, yes. | 15:55:27 |
| 12 | Q.  And you didn't make any effort to exclude | 15:55:34 |
| 13 | Superboy or Smallville -- Smallville from this | 15:55:36 |
| 14 | agreement, Exhibit 10, correct? | 15:55:38 |
| 15 | A.  No. | 15:55:40 |
| 16 | Q.  In fact, it's specifically included, | 15:55:40 |
| 17 | correct? | 15:55:43 |
| 18 | A.  Yes.  Can I finish answering that? | 15:55:43 |
| 19 | Q.  Sure. | 15:55:55 |
| 20 | MR. TOBEROFF:  No. | 15:55:56 |
| 21 | THE WITNESS:  No?  Okay. | 15:55:56 |
| 22 | MR. TOBEROFF:  Wait for the -- | 15:55:57 |
| 23 | THE WITNESS:  Okay. | 15:55:58 |
| 24 | MR. TOBEROFF:  Just answer the question. | 15:55:59 |
| 25 | THE WITNESS:  Okay.  I didn't know if I | 15:56:00 |

Merrill  Corporation  -  Los Angeles

800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37

MARK WARREN PEARY - 6/29/2011

Page 208

| | | |
|---|---|---|
| 1 | answered it. | 15:56:03 |
| 2 | BY MR. PETROCELLI: | 15:56:03 |
| 3 |     Q.  Now, you -- can you turn to paragraph 8. | 15:56:10 |
| 4 | Starting with the second sentence, it says: | 15:56:18 |
| 5 |         "Upon the expiration of the | 15:56:21 |
| 6 |        term and the winding up of the | 15:56:22 |
| 7 |        Venture or in the event of | 15:56:25 |
| 8 |        termination of the Venture for any | 15:56:26 |
| 9 |        reason, all Rights, property or | 15:56:28 |
| 10 |        assets of the Venture will be held | 15:56:31 |
| 11 |        50 percent by the claimants and 50 | 15:56:34 |
| 12 |        percent by PPC as tenants in | 15:56:37 |
| 13 |        common." | 15:56:41 |
| 14 |     Do you see that? | 15:56:42 |
| 15 |     A.  Yes. | 15:56:42 |
| 16 |     Q.  It goes on to continue from there. | 15:56:43 |
| 17 |     Now, you understood when you signed this | 15:56:45 |
| 18 | that "rights" is a defined word. | 15:56:47 |
| 19 |     Do you see it has capital "R"? | 15:56:51 |
| 20 |     A.  Yes. | 15:56:52 |
| 21 |     Q.  And it's defined in the first paragraph as | 15:56:53 |
| 22 | all of the -- Joe Shuster's and his estate's rights, | 15:56:57 |
| 23 | claims, copyrights, property, title and interests | 15:57:02 |
| 24 | into Joe Shuster's creations. | 15:57:07 |
| 25 |     A.  Yes. | 15:57:08 |

EXHIBIT 37
1310

MARK WARREN PEARY - 6/29/2011

| | |
|---|---|
| 1 | Q.  Okay?  And you understood that once you | 15:57:09 |
| 2 | signed this document, those rights became the | 15:57:15 |
| 3 | property of the venture called the Joe Shuster | 15:57:18 |
| 4 | Venture, correct? | 15:57:22 |
| 5 | A.  My understanding is that it's a -- a -- an | 15:57:30 |
| 6 | interest -- an interest in proceeds coming from the | 15:57:36 |
| 7 | rights. | 15:57:40 |
| 8 | Q.  It says: | 15:57:44 |
| 9 | "All rights, properties or | 15:57:44 |
| 10 | assets of the Venture" -- | 15:57:46 |
| 11 | Do you see that in paragraph 8? | 15:57:49 |
| 12 | A.  Yes. | 15:57:49 |
| 13 | Q.  "Will be" -- "in the event of a termination | 15:57:52 |
| 14 | for any reason will be held 50 percent by | 15:57:54 |
| 15 | the claimants." | 15:57:57 |
| 16 | That's you and your mother, right? | 15:57:58 |
| 17 | A.  Yes. | 15:57:59 |
| 18 | Q.  And then 50 percent by Pacific Pictures | 15:58:00 |
| 19 | Corporation, correct? | 15:58:04 |
| 20 | A.  Yes. | 15:58:04 |
| 21 | Q.  So, you understood that even if this | 15:58:07 |
| 22 | venture was terminated for any reason, you would own | 15:58:13 |
| 23 | 50 percent of the rights with your mother, but PPC | 15:58:17 |
| 24 | would own the other 50 percent as a tenant in | 15:58:21 |
| 25 | common, correct? | 15:58:24 |

EXHIBIT 37
1311

MARK WARREN PEARY - 6/29/2011

Page 210

| | | |
|---|---|---|
| 1 | A.  Well -- | 15:58:27 |
| 2 | Q.  Not in the proceeds, but in the actual | 15:58:27 |
| 3 | rights? | 15:58:29 |
| 4 | A.  My -- my understanding is you can't | 15:58:29 |
| 5 | transfer something you have rights in. | 15:58:31 |
| 6 | Q.  And that's something that you learned after | 15:58:34 |
| 7 | you signed this agreement, correct? | 15:58:37 |
| 8 | A.  Well, I believe I had some awareness of | 15:58:41 |
| 9 | that before I signed it. | 15:58:44 |
| 10 | Q.  You learned that after you signed this | 15:58:45 |
| 11 | agreement when you tried to fix the problem by | 15:58:47 |
| 12 | entering into the legal agreement in 2004 which you | 15:58:51 |
| 13 | then backdated back to 2001, correct? | 15:58:55 |
| 14 | MR. TOBEROFF:  Also, let me just interject. | 15:59:02 |
| 15 | I don't want you answering questions that are based | 15:59:03 |
| 16 | on any legal understanding that you've received or | 15:59:07 |
| 17 | knowledge or -- he is asking you information that | 15:59:11 |
| 18 | you just know all on your own.  I know it's hard to | 15:59:16 |
| 19 | distinguish between the two, but -- but I'm going to | 15:59:17 |
| 20 | ask you to try and do that and not answer questions | 15:59:22 |
| 21 | based on conversations with attorneys. | 15:59:24 |
| 22 | THE WITNESS:  Okay. | 15:59:28 |
| 23 | BY MR. PETROCELLI: | 15:59:28 |
| 24 | Q.  Can you look at paragraph 2?  It says in | 15:59:47 |
| 25 | the middle, "In consideration for PPC's" -- that's | 15:59:54 |

EXHIBIT 37
1312

MARK WARREN PEARY - 6/29/2011

Page 211

```
 1    Pacific Pictures Corporation's -- "contributions to        15:59:57
 2    the Venture" -- and you see "venture" is capital V,        16:00:00
 3    right?                                                     16:00:00
 4         A.  Which line are you on?  Oh, yes, okay.            16:00:07
 5         Q.  And that's the venture between Pacific            16:00:09
 6    Pictures and you and your mother, correct?                 16:00:12
 7         A.  Yes.                                              16:00:12
 8         Q.  Okay.  It says:                                   16:00:15
 9              "In consideration for PPC's                      16:00:16
10              contributions to the Venture in the             16:00:18
11              mutual covenants contained herein,              16:00:19
12              claimants hereby transfer and                   16:00:22
13              assign to the Venture their rights,             16:00:24
14              titles and -- title and interests              16:00:27
15              in the rights."                                 16:00:29
16         Do you see that?                                     16:00:31
17         A.  Yes.                                             16:00:31
18         Q.  So you understood when you signed this that      16:00:32
19    all of the Joe Shuster rights, termination rights,        16:00:36
20    to the extent they existed, were being transferred        16:00:40
21    and assigned to the venture just as it says,             16:00:43
22    correct?                                                  16:00:43
23         A.  Yes.                                             16:00:43
24         Q.  Now, are you saying you signed this              16:00:50
25    believing it was invalid because you can't make such      16:00:52
```

EXHIBIT 37
1313

MARK WARREN PEARY - 6/29/2011

Page 212

| | | |
|---|---|---|
| 1 | an assignment or transfer of the rights?  Are you | 16:00:56 |
| 2 | telling me -- | 16:00:59 |
| 3 | A.  No. | 16:00:59 |
| 4 | Q.  -- now that it's something you learned | 16:01:00 |
| 5 | afterwards? | 16:01:01 |
| 6 | A.  I learned it afterwards. | 16:01:04 |
| 7 | Q.  Okay.  Let's continue.  How did you learn | 16:01:07 |
| 8 | it, by the way? | 16:01:11 |
| 9 | A.  Discussions with my attorney. | 16:01:15 |
| 10 | Q.  Who is that? | 16:01:17 |
| 11 | MR. TOBEROFF:  I'll let you answer without | 16:01:20 |
| 12 | waiver. | 16:01:22 |
| 13 | MR. PETROCELLI:  I just need to know who | 16:01:22 |
| 14 | the attorney is.  I'd rather have you say | 16:01:23 |
| 15 | "Mr. Toberoff." | 16:01:26 |
| 16 | THE WITNESS:  Mr. Toberoff. | 16:01:26 |
| 17 | MR. TOBEROFF:  But I'm saying I'm letting | 16:01:28 |
| 18 | him answer that question -- | 16:01:29 |
| 19 | MR. PETROCELLI:  Oh, okay. | 16:01:29 |
| 20 | MR. TOBEROFF:  -- without waiver of the | 16:01:31 |
| 21 | privilege. | 16:01:31 |
| 22 | BY MR. PETROCELLI: | 16:01:31 |
| 23 | Q.  The reason I ask you that question is | 16:01:32 |
| 24 | because you may be referring to some other attorney | 16:01:34 |
| 25 | and I just have to have the record be clear. | 16:01:35 |

EXHIBIT 37
1314

MARK WARREN PEARY - 6/29/2011

Page 213

| | | |
|---|---|---|
| 1 | A.   Okay. | 16:01:39 |
| 2 | Q.   So what did you learn from Mr. Toberoff | 16:01:39 |
| 3 | that was different from what you signed in 2001? | 16:01:44 |
| 4 | MR. TOBEROFF:   I'm instructing you not to | 16:01:49 |
| 5 | answer.   I've already let -- let -- give the gist of | 16:01:52 |
| 6 | it, and I'm sure Mr. Petrocelli could figure out the | 16:01:56 |
| 7 | rest on his own. | 16:01:58 |
| 8 | THE WITNESS:   Okay. | 16:02:00 |
| 9 | (Unanswered question.) | 16:02:01 |
| 10 | BY MR. PETROCELLI: | 16:02:01 |
| 11 | Q.   Did you ask Mr. Toberoff -- well, when you | 16:02:03 |
| 12 | signed this document you thought that Mr. Toberoff | 16:02:09 |
| 13 | was an expert in these issues, right, termination | 16:02:10 |
| 14 | issues? | 16:02:14 |
| 15 | A.   Yes. | 16:02:15 |
| 16 | Q.   So when you later found out that you had | 16:02:16 |
| 17 | signed something that was not valid, did you ask | 16:02:19 |
| 18 | him, "Why did you have us sign this document?   You | 16:02:23 |
| 19 | were the expert."   Did you get into that kind of | 16:02:28 |
| 20 | discussion with him? | 16:02:32 |
| 21 | MR. TOBEROFF:   Don't -- don't -- I instruct | 16:02:39 |
| 22 | you not to give testimony as to what discussions you | 16:02:42 |
| 23 | got into or got -- didn't get into with me. | 16:02:45 |
| 24 | BY MR. PETROCELLI: | 16:02:45 |
| 25 | Q.   Did you talk to him on that subject? | 16:02:50 |

Merrill  Corporation  -  Los Angeles

800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1315

MARK WARREN PEARY - 6/29/2011

| | |
|---|---|
| 1 | MR. TOBEROFF:  I instruct you not to | 16:02:52 |
| 2 | answer. | 16:02:54 |
| 3 | (Unanswered question.) | 16:02:54 |
| 4 | BY MR. PETROCELLI: | 16:02:54 |
| 5 | Q.  So -- so -- I want -- | 16:02:57 |
| 6 | MR. TOBEROFF:  The question is | 16:02:57 |
| 7 | rhetorical -- the question is rhetorical anyway. | 16:02:59 |
| 8 | BY MR. PETROCELLI: | 16:02:59 |
| 9 | Q.  I want to go back to where I was before, | 16:03:03 |
| 10 | then, paragraph 8, and you -- when you signed this, | 16:03:05 |
| 11 | you understood that in the event that this venture | 16:03:06 |
| 12 | was terminated for any reason, that PPC would own 50 | 16:03:08 |
| 13 | percent of the rights as a tenant in common with | 16:03:14 |
| 14 | Jean and you, correct? | 16:03:17 |
| 15 | A.  Yes. | 16:03:17 |
| 16 | Q.  Okay.  Also, by the way, in paragraph 10 | 16:03:31 |
| 17 | there's a reference to approving Mr. Michael Catron | 16:03:35 |
| 18 | to become the administrator of Joe Shuster's estate | 16:03:39 |
| 19 | once it's established. | 16:03:43 |
| 20 | Do you see that? | 16:03:44 |
| 21 | A.  Yes. | 16:03:44 |
| 22 | Q.  Whose idea was that? | 16:03:45 |
| 23 | A.  I'm not sure. | 16:03:51 |
| 24 | Q.  Why was he selected?  He is a guy -- you | 16:03:52 |
| 25 | don't even know what city he lives in. | 16:03:55 |

EXHIBIT 37
1316

MARK WARREN PEARY – 6/29/2011

Page 215

1      A.  Well --                                          16:03:57

2      Q.  Why is he in here as -- as the executor of       16:03:59

3  Joe Shuster's estate?                                    16:04:02

4      A.  I don't recall why we had -- had him listed      16:04:08

5  at that time.                                            16:04:11

6      Q.  But your mother's -- but Joe's will said it      16:04:12

7  was to be your mother or if she's unable or              16:04:15

8  unwilling to serve, then you.                            16:04:17

9      A.  Uh-huh.                                          16:04:18

10     Q.  It said nothing about Mr. Catron.                16:04:19

11     A.  Uh-huh.                                          16:04:21

12     Q.  So why -- why did you agree to that?             16:04:22

13     A.  I don't know.                                    16:04:27

14     Q.  You don't know?                                  16:04:30

15     A.  I don't know.  I don't recall why we did.        16:04:31

16     Q.  Did Michael Catron ever meet Joe Shuster?        16:04:35

17     A.  Yes.                                             16:04:37

18     Q.  Did they -- how well did they know each          16:04:40

19  other?                                                  16:04:43

20     A.  Pretty well.                                     16:04:43

21     Q.  Do you have his contact information,             16:04:45

22  Michael Catron?                                         16:04:46

23     A.  Yeah.                                            16:04:49

24     Q.  What's his phone number?                         16:04:50

25     A.  Not with me.                                     16:04:51

MARK WARREN PEARY - 6/29/2011

Page 216

| | | |
|---|---|---|
| 1 | Q. And you don't know his address, right? | 16:04:54 |
| 2 | A. Not on the top of my head. | 16:04:56 |
| 3 | Q. Do you know his e-mail address? | 16:04:59 |
| 4 | A. Not on the top of my head. | 16:05:00 |
| 5 | Q. Now, go to paragraph 7. It states: | 16:05:08 |
| 6 | "The venture and/or the estate | 16:05:11 |
| 7 | of Joe Shuster (to be established | 16:05:12 |
| 8 | hereunder) will retain Marc | 16:05:15 |
| 9 | Toberoff, Esquire to render legal | 16:05:22 |
| 10 | services in connection with the | 16:05:23 |
| 11 | rights in the venture, including in | 16:05:25 |
| 12 | connection with all legal disputes, | 16:05:30 |
| 13 | litigation, arbitration and/or | 16:05:32 |
| 14 | mediation regarding the rights," et | 16:05:34 |
| 15 | cetera. | 16:05:37 |
| 16 | Now, paragraph 7 says that the venture or | 16:05:40 |
| 17 | Mr. Shuster's estate will retain Mr. Toberoff. | 16:05:47 |
| 18 | Do you see that? | 16:05:47 |
| 19 | A. Yes. | 16:05:47 |
| 20 | Q. This -- Mr. Toberoff was not retained as a | 16:05:54 |
| 21 | lawyer in this document, though, right? | 16:05:57 |
| 22 | MR. TOBEROFF: Calls for a legal | 16:06:01 |
| 23 | conclusion. | 16:06:01 |
| 24 | BY MR. PETROCELLI: | 16:06:01 |
| 25 | Q. Do you see a signature line for Marc | 16:06:03 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1318

MARK WARREN PEARY -- 6/29/2011

Page 217

1    Toberoff, Esquire agreeing to render services?                   16:06:06

2              MR. TOBEROFF:  Asked and answered.                      16:06:09

3         You can answer.                                              16:06:13

4              THE WITNESS:  It's already been answered.               16:06:13

5              MR. TOBEROFF:  You can answer.                          16:06:16

6    BY MR. PETROCELLI:                                                16:06:16

7         Q.  When you signed this document, you                      16:06:20

8    understood that you would have to sign another                   16:06:23

9    document or the venture would, to retain                         16:06:26

10   Mr. Toberoff, correct?                                           16:06:28

11             MR. TOBEROFF:  Assumes facts.                          16:06:35

12             THE WITNESS:  My understanding was this                16:06:36

13   document retained Marc Toberoff as our attorney.                 16:06:37

14   BY MR. PETROCELLI:                                               16:06:37

15        Q.  Where does it say that?                                 16:06:40

16        A.  Paragraph 7.                                            16:06:44

17        Q.  Where is the signature of Mr. Toberoff?                 16:06:44

18        A.  Signature page.                                         16:06:49

19        Q.  It says president, right, Pacific Pictures             16:06:50

20   Corporation?  Where is there a signature line for               16:06:54

21   Marc Toberoff, Esquire?                                          16:06:56

22        A.  He's also esquire.                                      16:06:57

23        Q.  But he signed the document only in his                 16:07:03

24   capacity as the president of this company that was              16:07:04

25   doing a joint venture with you.                                 16:07:08

EXHIBIT 37
1319

MARK WARREN PEARY - 6/29/2011

Page 218

| | | |
|---|---|---|
| 1 | Did you -- did you question why he's not | 16:07:12 |
| 2 | signing on -- on as a lawyer to render the services | 16:07:15 |
| 3 | contemplated by paragraph 7?  Did you have that | 16:07:18 |
| 4 | discussion with him? | 16:07:22 |
| 5 | MR. TOBEROFF:  You can answer.  He's asking | 16:07:24 |
| 6 | whether you had a -- the discussion he just | 16:07:27 |
| 7 | summarized with me. | 16:07:33 |
| 8 | THE WITNESS:  Well, yes. | 16:07:34 |
| 9 | MR. TOBEROFF:  Do you understand the | 16:07:34 |
| 10 | question?  Do you want to repeat the question? | 16:07:35 |
| 11 | MR. PETROCELLI:  Let her repeat the | 16:07:35 |
| 12 | question. | 16:07:35 |
| 13 | (The reporter read the record | 16:07:35 |
| 14 | as follows: | 16:07:35 |
| 15 | "QUESTION:  But he signed the | 16:07:03 |
| 16 | document only in his capacity as | 16:07:03 |
| 17 | the president of this company that | 16:07:05 |
| 18 | was doing a joint venture with you. | 16:07:07 |
| 19 | Did you question why he's not | 16:07:13 |
| 20 | signing on as a lawyer to render | 16:07:15 |
| 21 | the services contemplated by | 16:07:16 |
| 22 | paragraph 7?  Did you have that | 16:07:19 |
| 23 | discussion with him?") | 16:07:22 |
| 24 | MR. TOBEROFF:  "Yes" or "no." | 16:07:58 |
| 25 | THE WITNESS:  I -- I don't recall if I | 16:07:59 |

EXHIBIT 37
1320

MARK WARREN PEARY - 6/29/2011

Page 219

1    specifically asked him why he didn't sign, how                    16:08:02

2    you're saying.                                                    16:08:08

3    BY MR. PETROCELLI:                                                16:08:08

4        Q.   Did you express concern about entering into             16:08:14

5    a joint venture agreement, that if it were ever                  16:08:17

6    terminated for any reason Pacific Pictures would own             16:08:19

7    half the rights forever?                                         16:08:23

8        A.   Yes.                                                     16:08:25

9        Q.   Who did you express that to?                            16:08:32

10       A.   I expressed it to Marc Toberoff.                        16:08:35

11       Q.   Did you explain that consequence to your               16:08:37

12   mother?                                                          16:08:39

13       A.   I don't -- I don't know if I got into that             16:08:44

14   with her or not.   I don't remember.                             16:08:50

15       Q.   Do you think that was important for her to             16:08:51

16   understand?                                                      16:08:54

17       A.   Yes.                                                    16:08:54

18       Q.   Why did you agree to that?                             16:09:01

19       A.   Why?                                                    16:09:07

20       Q.   Yes.   Why didn't you insist on a provision           16:09:08

21   that said in the event that the agreement is                    16:09:10

22   terminated for any reason, that the rights revert              16:09:12

23   back to the Shusters, 100 percent of that?                      16:09:15

24       MR. TOBEROFF:   Answer to the extent that                  16:09:22

25   you have a recollection of why.                                 16:09:23

Merrill   Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1321

MARK WARREN PEARY - 6/29/2011

Page 220

| | | |
|---|---|---|
| 1 | THE WITNESS:  Yeah, okay. | 16:09:26 |
| 2 | My -- my -- my recollection of why is | 16:09:32 |
| 3 | that -- that he was going to see this case through | 16:09:36 |
| 4 | no matter what, and -- and I thought that he would, | 16:09:38 |
| 5 | and I had thought that there would be no reason it | 16:09:42 |
| 6 | would be canceled or terminated until the rights had | 16:09:48 |
| 7 | been pursued.  He had every -- every economic motive | 16:09:52 |
| 8 | to pursue it to the fullest extent. | 16:09:58 |
| 9 | BY MR. PETROCELLI: | 16:09:58 |
| 10 | Q.  But if he quit two years later or you fired | 16:10:05 |
| 11 | him or canceled this agreement, he owned half the | 16:10:08 |
| 12 | rights.  That didn't bother you? | 16:10:11 |
| 13 | MR. TOBEROFF:  Not according to you. | 16:10:15 |
| 14 | THE WITNESS:  No. | 16:10:18 |
| 15 | BY MR. PETROCELLI: | 16:10:18 |
| 16 | Q.  Okay.  Take a look at paragraph 7.  It | 16:10:21 |
| 17 | states there that the venture will retain Toberoff | 16:11:14 |
| 18 | to render legal services including in connection | 16:11:18 |
| 19 | with legal disputes and litigation. | 16:11:21 |
| 20 | Do you see that? | 16:11:23 |
| 21 | A.  Yes. | 16:11:23 |
| 22 | Q.  Legal disputes and litigation with whom? | 16:11:26 |
| 23 | MR. TOBEROFF:  I instruct you not to | 16:11:31 |
| 24 | answer.  This obviously deals with discussions with | 16:11:32 |
| 25 | counsel regarding potential litigation. | 16:11:39 |

EXHIBIT 37
1322

MARK WARREN PEARY - 6/29/2011

Page 221

| | | |
|---|---|---|
| 1 | (Unanswered question.) | 16:11:40 |
| 2 | BY MR. PETROCELLI: | 16:11:40 |
| 3 | Q.  Well, it's fair to say that you understood | 16:11:42 |
| 4 | when you signed this that there was a prospect of | 16:11:44 |
| 5 | litigation with DC Comics or some Time-Warner | 16:11:50 |
| 6 | company, correct? | 16:11:53 |
| 7 | MR. TOBEROFF:  Instruct you not to answer. | 16:11:54 |
| 8 | It implicates attorney-client communications. | 16:11:56 |
| 9 | (Unanswered question.) | 16:11:58 |
| 10 | BY MR. PETROCELLI: | 16:11:58 |
| 11 | Q.  You didn't -- you didn't need a lawyer to | 16:11:59 |
| 12 | tell you that, right? | 16:12:01 |
| 13 | MR. TOBEROFF:  Instruct you not to answer. | 16:12:02 |
| 14 | (Unanswered question.) | 16:12:02 |
| 15 | MR. PETROCELLI:  Why? | 16:12:02 |
| 16 | MR. TOBEROFF:  It implicates | 16:12:04 |
| 17 | attorney-client communications. | 16:12:05 |
| 18 | MR. PETROCELLI:  That doesn't cover any | 16:12:07 |
| 19 | privilege.  That's just un- -- unreasonable. | 16:12:08 |
| 20 | MR. TOBEROFF:  How he is assessing the | 16:12:12 |
| 21 | potential for litigation -- | 16:12:13 |
| 22 | MR. PETROCELLI:  I didn't ask how he is | 16:12:15 |
| 23 | assessing.  Merely the fact -- | 16:12:16 |
| 24 | MR. TOBEROFF:  Whether there is a potential | 16:12:18 |
| 25 | for litigation. | 16:12:20 |

EXHIBIT 37
1323

MARK WARREN PEARY - 6/29/2011

Page 222

```
1    BY MR. PETROCELLI:                              16:12:20

2        Q.  You understood -- you understood that when   16:12:21

3    you signed this there was some appreciation that you   16:12:26

4    would be in litigation?                          16:12:31

5            MR. TOBEROFF:  Instruction.  Same       16:12:32

6    instruction.                                     16:12:33

7            (Unanswered question.)                   16:12:34

8    BY MR. PETROCELLI:                               16:12:34

9        Q.  So you shouldn't have been surprised when   16:12:58

10   you read the lawsuit that DC filed since you     16:12:59

11   contemplated litigation as early as 2001, correct?   16:13:05

12           MR. TOBEROFF:  I instruct you not to answer   16:13:08

13   as to your reactions in the midst of a litigation   16:13:10

14   because it implicates attorney-client            16:13:15

15   communications.                                  16:13:18

16           (Unanswered question.)                   16:13:19

17           THE WITNESS:  I'll have to follow        16:13:19

18   Mr. Toberoff's advice.                           16:13:21

19   BY MR. PETROCELLI:                               16:13:21

20       Q.  When you saw the lawsuit from DC Comics   16:13:22

21   challenging the termination, that's something that   16:13:25

22   you understood could happen as early as 2001 when   16:13:27

23   you signed this joint venture agreement, correct?   16:13:31

24           MR. TOBEROFF:  Same instruction.         16:13:34

25           (Unanswered question.)                   16:13:35
```

Merrill   Corporation  -  Los Angeles

800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1324

MARK WARREN PEARY - 6/29/2011

Page 223

| | | |
|---|---|---|
| 1 | MR. PETROCELLI:  Again, I don't think these | 16:13:36 |
| 2 | questions are -- these instructions are proper. | 16:13:39 |
| 3 | Q.   Look at paragraph 4. | 16:13:39 |
| 4 | MR. TOBEROFF:  I'm not going to allow him | 16:13:42 |
| 5 | to answer how he is assessing potential litigation | 16:13:44 |
| 6 | after he has retained me. | 16:13:49 |
| 7 | MR. PETROCELLI:  It's just going to have to | 16:13:49 |
| 8 | get sorted out in court. | 16:13:52 |
| 9 | Q.   Go to paragraph 4.  It says: | 16:13:55 |
| 10 | "The terms of any and all | 16:13:59 |
| 11 | agreements regarding any of the | 16:14:00 |
| 12 | rights in any respect shall be | 16:14:02 |
| 13 | subject to the express written | 16:14:04 |
| 14 | approval of claimants and PPC.  The | 16:14:06 |
| 15 | parties each warrant and represent | 16:14:10 |
| 16 | that after signing this agreement | 16:14:11 |
| 17 | they will not, without the express | 16:14:13 |
| 18 | written consent of all the parties, | 16:14:15 |
| 19 | transfer, limit or encumber the | 16:14:16 |
| 20 | rights in any respect." | 16:14:18 |
| 21 | When you signed this, you understood that | 16:14:20 |
| 22 | you could not enter into any agreement with DC | 16:14:24 |
| 23 | Comics or any affiliate of DC Comics without the | 16:14:30 |
| 24 | express written consent of Pacific Pictures, | 16:14:35 |
| 25 | correct? | 16:14:35 |

MARK WARREN PEARY - 6/29/2011

Page 224

| | | |
|---|---|---|
| 1 | A.  Yes. | 16:14:35 |
| 2 | Q.  And in your mind who is Pacific Pictures? | 16:14:40 |
| 3 | A.  Marc Toberoff. | 16:14:45 |
| 4 | Q.  And so you understood that you -- you and | 16:14:50 |
| 5 | your family could not enter into a contract with DC | 16:14:54 |
| 6 | Comics no matter how badly you wanted, unless Marc | 16:14:58 |
| 7 | Toberoff consented, correct? | 16:15:03 |
| 8 | A.  Yes. | 16:15:03 |
| 9 | Q.  Did you think that that was an appropriate | 16:15:09 |
| 10 | power for a lawyer to have over a client? | 16:15:17 |
| 11 | A.  I thought it was in his best interest to -- | 16:15:24 |
| 12 | Q.  That's not what I asked you. | 16:15:35 |
| 13 | MR. TOBEROFF:  He's trying to answer your | 16:15:36 |
| 14 | question. | 16:15:37 |
| 15 | MR. PETROCELLI:  Yes. | 16:15:37 |
| 16 | Q.  Did you think -- did you think that it was | 16:15:38 |
| 17 | proper for lawyers to impose that -- to have such | 16:15:44 |
| 18 | a -- an agreement with a client that the client | 16:15:52 |
| 19 | can't settle without the lawyer's consent no matter | 16:15:54 |
| 20 | how much the client wants to settle? | 16:15:58 |
| 21 | A.  At the time I didn't consider it | 16:16:04 |
| 22 | unreasonable. | 16:16:05 |
| 23 | Q.  Did you think it was appropriate?  Did you | 16:16:08 |
| 24 | have any knowledge on that subject whether the | 16:16:11 |
| 25 | lawyers are even permitted under the law to have | 16:16:13 |

MARK WARREN PEARY - 6/29/2011

Page 225

| | | |
|---|---|---|
| 1 | such arrangements? | 16:16:17 |
| 2 | A.  No, I -- I was not aware. | 16:16:21 |
| 3 | Q.  Did you do any research on that subject? | 16:16:22 |
| 4 | A.  Not specifically this, no. | 16:16:27 |
| 5 | Q.  Were you aware that it's not lawful for a | 16:16:30 |
| 6 | lawyer to have such a -- an agreement with a client? | 16:16:33 |
| 7 | A.  Not at the time. | 16:16:39 |
| 8 | Q.  Have you since become aware of that? | 16:16:40 |
| 9 | A.  Yes. | 16:16:42 |
| 10 | Q.  When? | 16:16:46 |
| 11 | A.  Sometime 2003. | 16:16:55 |
| 12 | Q.  How? | 16:16:57 |
| 13 | A.  Discussions with Marc Toberoff. | 16:17:01 |
| 14 | Q.  What led to -- what prompted those | 16:17:11 |
| 15 | discussions? | 16:17:13 |
| 16 | A.  We -- we both realized that this format was | 16:17:13 |
| 17 | not -- not the best approach to take. | 16:17:20 |
| 18 | Q.  Why was it not the best approach? | 16:17:25 |
| 19 | A.  We decided a legal retainer, a standard | 16:17:30 |
| 20 | legal retainer was a preferred association. | 16:17:33 |
| 21 | Q.  You said in 2001 when you signed this, | 16:17:36 |
| 22 | you -- you were not even able to appreciate the | 16:17:42 |
| 23 | difference between a standard legal retainer and a | 16:17:44 |
| 24 | joint venture agreement. | 16:17:46 |
| 25 | Do you recall giving that testimony?  You | 16:17:48 |

EXHIBIT 37
1327

MARK WARREN PEARY - 6/29/2011

Page 226

| | | |
|---|---|---|
| 1 | said you were not even in a position to note that | 16:17:53 |
| 2 | there was anything unusual about it.  Do you recall | 16:17:55 |
| 3 | giving me that answer? | 16:17:57 |
| 4 | MR. TOBEROFF:  I believe that misstates his | 16:17:58 |
| 5 | testimony. | 16:17:59 |
| 6 | MR. PETROCELLI:  I don't think so. | 16:17:59 |
| 7 | THE WITNESS:  What -- what did I say? | 16:18:01 |
| 8 | BY MR. PETROCELLI: | 16:18:01 |
| 9 | Q.  So you were aware in 2001 when you signed | 16:18:02 |
| 10 | the agreement that you were agreeing to a -- an | 16:18:04 |
| 11 | arrangement that was different from the standard | 16:18:08 |
| 12 | lawyer-client agreement in setting up a joint | 16:18:11 |
| 13 | venture with Pacific Pictures? | 16:18:15 |
| 14 | MR. TOBEROFF:  Misstates his testimony. | 16:18:16 |
| 15 | BY MR. PETROCELLI: | 16:18:16 |
| 16 | Q.  I'm asking you now. | 16:18:18 |
| 17 | A.  What did I say before? | 16:18:20 |
| 18 | Q.  Let's not get hung up on what you said | 16:18:22 |
| 19 | before.  It's a new question. | 16:18:25 |
| 20 | A.  Okay. | 16:18:26 |
| 21 | Q.  Okay? | 16:18:26 |
| 22 | Can you read it back, please? | 16:18:27 |
| 23 | (The reporter read the record | 16:18:27 |
| 24 | as follows: | 16:18:27 |
| 25 | "QUESTION:  So you were aware | 16:18:02 |

EXHIBIT 37
1328

MARK WARREN PEARY - 6/29/2011

Page 227

| | | |
|---|---|---|
| 1 | in 2001 when you signed the | 16:18:03 |
| 2 | agreement that you were agreeing to | 16:18:05 |
| 3 | an arrangement that was different | 16:18:08 |
| 4 | from the standard lawyer-client | 16:18:10 |
| 5 | agreement in setting up a joint | 16:18:12 |
| 6 | venture with Pacific Pictures?") | 16:18:15 |
| 7 | THE WITNESS:  Was I aware that it was | 16:18:43 |
| 8 | different than the standard -- standard legal | 16:18:45 |
| 9 | retainer? | 16:18:46 |
| 10 | BY MR. PETROCELLI: | 16:18:47 |
| 11 | Q.  In 2001 when you signed Exhibit 10 -- | 16:18:48 |
| 12 | A.  2001. | 16:18:50 |
| 13 | Q.  -- were -- were -- were you -- | 16:18:51 |
| 14 | A.  I was. | 16:18:53 |
| 15 | Q.  -- aware that you were signing a contract | 16:18:53 |
| 16 | that was different from the standard lawyer-client | 16:18:57 |
| 17 | agreement? | 16:19:01 |
| 18 | A.  I was not keenly aware of that. | 16:19:03 |
| 19 | Q.  But you became keenly aware of it in 2003, | 16:19:06 |
| 20 | correct? | 16:19:06 |
| 21 | A.  Sometime in there. | 16:19:10 |
| 22 | Q.  Okay.  You said that you and Mr. Toberoff | 16:19:12 |
| 23 | decided that this approach was not the best approach | 16:19:14 |
| 24 | and you should revert to a lawyer- -- a standard | 16:19:19 |
| 25 | lawyer-client agreement, right? | 16:19:22 |

MARK WARREN PEARY - 6/29/2011

Page 228

| | | |
|---|---|---|
| 1 | A.  Yes. | 16:19:24 |
| 2 | Q.  Okay.  What prompted that? | 16:19:25 |
| 3 | A.  I -- I don't remember.  We just discussed | 16:19:32 |
| 4 | things over time. | 16:19:36 |
| 5 | Q.  You said you learned that the -- it was not | 16:19:40 |
| 6 | lawful for a lawyer to be able to withhold his | 16:19:46 |
| 7 | consent to a client settlement. | 16:19:49 |
| 8 | A.  I did -- at the time I didn't know that -- | 16:19:53 |
| 9 | that was the case. | 16:19:56 |
| 10 | Q.  But you knew that in '03, right? | 16:19:56 |
| 11 | A.  Whenever -- whenever we started discussing | 16:19:59 |
| 12 | changing the form, then at some point after that we | 16:20:02 |
| 13 | agreed we needed to change it, I became aware of | 16:20:09 |
| 14 | that. | 16:20:11 |
| 15 | Q.  Was it -- did he just call you up one day | 16:20:14 |
| 16 | and say, "We have to make a change"?  What brought | 16:20:16 |
| 17 | the change about? | 16:20:19 |
| 18 | A.  I don't remember. | 16:20:20 |
| 19 | Q.  Did you get any legal advice from someone | 16:20:30 |
| 20 | other than Mr. Toberoff when he told you that a | 16:20:32 |
| 21 | change was required? | 16:20:37 |
| 22 | A.  No. | 16:20:38 |
| 23 | Q.  Did it cause you any concern after you | 16:20:43 |
| 24 | learned that you had signed an agreement that had | 16:20:45 |
| 25 | legal problems associated with it? | 16:20:47 |

MARK WARREN PEARY - 6/29/2011

Page 229

| | | |
|---|---|---|
| 1 | A.  No, because we were replacing it with a | 16:20:51 |
| 2 | better one. | 16:20:54 |
| 3 | Q.  How do you know it was better?  You thought | 16:20:57 |
| 4 | the first one was good. | 16:21:02 |
| 5 | A.  Well, maybe I got smarter. | 16:21:03 |
| 6 | Q.  In other words, you -- you believed what | 16:21:07 |
| 7 | Mr. Toberoff told you, correct? | 16:21:09 |
| 8 | A.  Yes. | 16:21:09 |
| 9 | Q.  Okay.  But you believed him in 2001 when | 16:21:13 |
| 10 | you signed the invalid agreement, right? | 16:21:15 |
| 11 | MR. TOBEROFF:  Assumes facts. | 16:21:20 |
| 12 | THE WITNESS:  I'm not aware it was invalid. | 16:21:22 |
| 13 | BY MR. PETROCELLI: | 16:21:22 |
| 14 | Q.  Do you -- when you -- you ultimately signed | 16:21:31 |
| 15 | a document -- well, I'll get to that. | 16:21:34 |
| 16 | Did you come to learn that there were -- | 16:21:47 |
| 17 | the agreement that you signed with Mr. Toberoff, | 16:21:52 |
| 18 | this joint venture agreement in 2001 and again in | 16:21:55 |
| 19 | '03, did violate the copyright laws, correct? | 16:21:58 |
| 20 | MR. TOBEROFF:  Mischaracterizes -- Strike | 16:22:07 |
| 21 | that. | 16:22:07 |
| 22 | You can answer. | 16:22:12 |
| 23 | THE WITNESS:  I didn't know that | 16:22:13 |
| 24 | specifically, that it violated copyright laws.  But | 16:22:17 |
| 25 | it wasn't the best structure. | 16:22:22 |

EXHIBIT 37
1331

MARK WARREN PEARY - 6/29/2011

Page 230

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 16:22:22 |
| 2 | Q. Okay. Tell me how it wasn't the best | 16:22:25 |
| 3 | structure. | 16:22:27 |
| 4 | A. We needed to have a standard legal | 16:22:28 |
| 5 | retainer. | 16:22:30 |
| 6 | Q. Why? | 16:22:31 |
| 7 | A. Because that was the best structure. | 16:22:32 |
| 8 | Q. Why? Why was it the best? In what way was | 16:22:33 |
| 9 | it better? | 16:22:39 |
| 10 | MR. TOBEROFF: The "whys" get into his | 16:22:39 |
| 11 | conversations with me. And so you can't get into | 16:22:41 |
| 12 | that. | 16:22:44 |
| 13 | BY MR. PETROCELLI: | 16:22:44 |
| 14 | Q. You understood when you changed this | 16:22:45 |
| 15 | structure or at least attempted to change the | 16:22:47 |
| 16 | structure that the Pacific Picture agreements | 16:22:50 |
| 17 | constituted a violation of the copyright laws, | 16:22:55 |
| 18 | correct? Did you have that understanding at that | 16:23:01 |
| 19 | time? | 16:23:02 |
| 20 | A. At that time -- at that time, no. | 16:23:02 |
| 21 | Q. Did you come to that understanding | 16:23:04 |
| 22 | afterwards? | 16:23:06 |
| 23 | MR. TOBEROFF: You can't answer that | 16:23:10 |
| 24 | without divulging attorney-client communications. | 16:23:11 |
| 25 | Instruct you not to answer. | 16:23:16 |

EXHIBIT 37
1332

MARK WARREN PEARY - 6/29/2011

Page 231

| | | |
|---|---|---|
| 1 | (Unanswered question.) | 16:23:17 |
| 2 | THE WITNESS:  I have to follow Marc | 16:23:18 |
| 3 | Toberoff's advice. | 16:23:20 |
| 4 | BY MR. PETROCELLI: | 16:23:20 |
| 5 | Q.  You -- you are familiar with an aspect of | 16:23:22 |
| 6 | the copyright law in the sections dealing with | 16:23:27 |
| 7 | termination that the grantee -- that the grantor | 16:23:30 |
| 8 | cannot enter into an agreement with anyone other | 16:23:39 |
| 9 | than the grantee until the termination is effective? | 16:23:43 |
| 10 | MR. TOBEROFF:  I instruct you not to | 16:23:49 |
| 11 | answer. | 16:23:50 |
| 12 | He can't possibly answer those legal | 16:23:50 |
| 13 | questions without divulging his communications with | 16:23:52 |
| 14 | his attorney. | 16:23:55 |
| 15 | (Unanswered question.) | 16:23:55 |
| 16 | MR. PETROCELLI:  Why?  He's cap- -- | 16:23:56 |
| 17 | perfectly capable of knowing that and he reads the | 16:23:57 |
| 18 | codes, he researches and he reads all the legal | 16:23:59 |
| 19 | papers. | 16:24:03 |
| 20 | MR. TOBEROFF:  You're exaggerating his | 16:24:03 |
| 21 | testimony. | 16:24:05 |
| 22 | MR. PETROCELLI:  No, I'm not. | 16:24:05 |
| 23 | MR. TOBEROFF:  Same instruction.  When I | 16:24:10 |
| 24 | instruct you, you don't answer.  You don't have to | 16:24:11 |
| 25 | keep asserting that you're -- | 16:24:13 |

EXHIBIT 37
1333

MARK WARREN PEARY - 6/29/2011

Page 232

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 16:24:13 |
| 2 | Q.  You -- you are -- | 16:24:13 |
| 3 | MR. TOBEROFF:  Excuse me.  You don't have | 16:24:13 |
| 4 | to keep asserting that you're going to follow my | 16:24:15 |
| 5 | instruction.  We've already established you're going | 16:24:16 |
| 6 | to follow my instruction. | 16:24:18 |
| 7 | BY MR. PETROCELLI: | 16:24:18 |
| 8 | Q.  You read the complaint or you scanned it, | 16:24:20 |
| 9 | but got the gist of it, that DC Comics was | 16:24:21 |
| 10 | contending in the lawsuit that these Pacific | 16:24:25 |
| 11 | Pictures agreements violated the exclusivity | 16:24:30 |
| 12 | provisions of the copyright statute.  You got the | 16:24:32 |
| 13 | gist of that, right? | 16:24:34 |
| 14 | A.  The exclusivity provisions? | 16:24:39 |
| 15 | Q.  In the copyright termination provisions, | 16:24:41 |
| 16 | correct? | 16:24:44 |
| 17 | A.  I'm not sure I -- I have enough legal | 16:24:44 |
| 18 | knowledge about the exclusivity provisions. | 16:24:48 |
| 19 | Q.  Did you get the gist of the claim that DC | 16:24:50 |
| 20 | Comics made in the lawsuit that these Pacific | 16:24:56 |
| 21 | Pictures agreements violated certain provisions of | 16:24:59 |
| 22 | the copyright statute? | 16:25:02 |
| 23 | A.  I got the gist. | 16:25:04 |
| 24 | Q.  And did you understand that DC Comics was | 16:25:05 |
| 25 | contending that the Shusters did not have the legal | 16:25:08 |

EXHIBIT 37
1334

MARK WARREN PEARY - 6/29/2011

Page 233

| | | |
|---|---|---|
| 1 | right to enter into an agreement with anyone other | 16:25:14 |
| 2 | than DC until and unless their termination became | 16:25:20 |
| 3 | effective? | 16:25:24 |
| 4 | MR. TOBEROFF: You can only answer to the | 16:25:29 |
| 5 | extent you scanned the complaint on your own and you | 16:25:30 |
| 6 | came to that conclusion. | 16:25:35 |
| 7 | THE WITNESS: I -- I -- I may not be fully | 16:25:36 |
| 8 | aware of that detail. | 16:25:38 |
| 9 | BY MR. PETROCELLI: | 16:25:38 |
| 10 | Q. Are you aware that Mr. Toberoff has stated | 16:25:42 |
| 11 | in papers filed with the court that these Pacific | 16:25:44 |
| 12 | Picture agreements were void? | 16:25:48 |
| 13 | A. Yes. | 16:25:54 |
| 14 | Q. How did you become aware of that? | 16:25:55 |
| 15 | A. Through our discussions. | 16:25:58 |
| 16 | Q. Did you read any of the legal filings that | 16:26:00 |
| 17 | are made in this case? | 16:26:02 |
| 18 | A. The voiding of the Pacific Pictures or | 16:26:03 |
| 19 | anything else? | 16:26:12 |
| 20 | Q. Well, you understand you filed the lawsuit | 16:26:13 |
| 21 | and then your -- your counsel has filed a motion to | 16:26:15 |
| 22 | dismiss the lawsuit and through -- lots of briefs | 16:26:19 |
| 23 | have been filed. | 16:26:23 |
| 24 | Do you read that material? | 16:26:24 |
| 25 | A. I read some of it. | 16:26:25 |

MARK WARREN PEARY -- 6/29/2011

Page 234

| | | |
|---|---|---|
| 1 | Q.  Are you aware that Mr. Toberoff has | 16:26:31 |
| 2 | acknowledged that the Pacific Pictures agreements | 16:26:33 |
| 3 | did not comply with the copyright laws? | 16:26:37 |
| 4 | A.  Yes. | 16:26:41 |
| 5 | Q.  Why did you sign agreements that did not | 16:26:45 |
| 6 | comply with the copyright laws? | 16:26:47 |
| 7 | A.  At the time I was unaware. | 16:26:51 |
| 8 | Q.  Why were you unaware? | 16:26:55 |
| 9 | A.  I'm not a lawyer. | 16:26:58 |
| 10 | Q.  You relied on Mr. Toberoff? | 16:27:01 |
| 11 | A.  Yes. | 16:27:07 |
| 12 | Q.  Having learned that you signed agreements | 16:27:07 |
| 13 | that violated the copyright law, why did you think | 16:27:17 |
| 14 | that DC Comics had no right to file a claim? | 16:27:26 |
| 15 | MR. TOBEROFF:  Objection.  I'm objecting to | 16:27:31 |
| 16 | your use of the word "violated" the copyright laws. | 16:27:33 |
| 17 | Also stated in that paper something being invalid -- | 16:27:35 |
| 18 | MR. PETROCELLI:  You don't need to -- | 16:27:35 |
| 19 | MR. TOBEROFF:  -- under the copyright law | 16:27:37 |
| 20 | and violating law is two separate -- | 16:27:38 |
| 21 | MR. PETROCELLI:  You know, that's not | 16:27:40 |
| 22 | appropriate, Marc. | 16:27:40 |
| 23 | MR. TOBEROFF:  Okay. | 16:27:42 |
| 24 | MR. PETROCELLI:  We don't need to teach | 16:27:44 |
| 25 | Mr. Peary the niceties of copyright law, | 16:27:45 |

EXHIBIT 37
1336

MARK WARREN PEARY - 6/29/2011

Page 235

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  I'm not teaching him. | 16:27:50 |
| 2 | MR. PETROCELLI:  Let's move on.  What's the | 16:27:51 |
| 3 | next exhibit, 11?  Okay. | 16:27:58 |
| 4 | Q.  Now, after signing this document, Exhibit | 16:28:00 |
| 5 | 10, sometime thereafter your -- your mother put | 16:28:02 |
| 6 | Joanne Siegel in touch with Marc Toberoff, right? | 16:28:14 |
| 7 | A.  Yes. | 16:28:14 |
| 8 | Q.  And do you know when that happened? | 16:28:18 |
| 9 | A.  I believe sometime in 2003. | 16:28:25 |
| 10 | Q.  Were you keeping close -- in close contact | 16:28:31 |
| 11 | with Mr. Toberoff about his contacts with the Siegel | 16:28:36 |
| 12 | family prior to the time the Siegel family hired | 16:28:42 |
| 13 | him? | 16:28:46 |
| 14 | MR. TOBEROFF:  Assumes facts.  Lacks | 16:28:49 |
| 15 | foundation. | 16:28:49 |
| 16 | Do you understand the question? | 16:28:55 |
| 17 | THE WITNESS:  Was I in close contact with | 16:28:55 |
| 18 | him regarding the Siegels? | 16:28:57 |
| 19 | BY MR. PETROCELLI: | 16:28:57 |
| 20 | Q.  Yes.  As he was courting the Siegels? | 16:29:00 |
| 21 | MR. TOBEROFF:  Assumes facts.  Lacks | 16:29:03 |
| 22 | foundation.  Object to the word "courting the | 16:29:05 |
| 23 | Siegels" -- the phrase "courting the Siegels." | 16:29:06 |
| 24 | THE WITNESS:  I was aware he had a -- | 16:29:09 |
| 25 | MR. TOBEROFF:  Do you understand what the | 16:29:13 |

Merrill   Corporation   -   Los Angeles

800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37
1337

MARK WARREN PEARY - 6/29/2011

Page 236

| | | |
|---|---|---|
| 1 | question is?  Because I don't. | 16:29:14 |
| 2 | THE WITNESS:  Maybe not.  I don't know. | 16:29:16 |
| 3 | MR. PETROCELLI:  He was about to answer it. | 16:29:17 |
| 4 | Of course he understood what the question was. | 16:29:18 |
| 5 | MR. TOBEROFF:  No, it's very confusing. | 16:29:20 |
| 6 | Can you read back -- | 16:29:20 |
| 7 | MR. PETROCELLI:  It's not confusing. | 16:29:21 |
| 8 | MR. TOBEROFF:  Okay.  Let me just restate | 16:29:23 |
| 9 | that. | 16:29:23 |
| 10 | Could you read back the question for me. | 16:29:23 |
| 11 | MR. PETROCELLI:  We're into the courtship | 16:29:29 |
| 12 | of the Siegels, Marc.  Come on, this is a good part | 16:29:31 |
| 13 | of the exam. | 16:29:33 |
| 14 | MR. TOBEROFF:  I object to your word -- I | 16:29:34 |
| 15 | object to your self-serving word "courtship" as I do | 16:29:36 |
| 16 | to the word "violation of the copyright act." | 16:29:38 |
| 17 | (The reporter read the record | 16:29:51 |
| 18 | as follows: | 16:29:51 |
| 19 | "QUESTION:  Were you keeping | 16:28:32 |
| 20 | in close contact with Mr. Toberoff | 16:28:36 |
| 21 | about his contacts with the Siegel | 16:28:37 |
| 22 | family prior to the time the Siegel | 16:28:42 |
| 23 | family hired him?") | 16:28:45 |
| 24 | THE WITNESS:  Yes. | 16:29:52 |
| 25 | BY MR. PETROCELLI: | 16:29:52 |

MARK WARREN PEARY - 6/29/2011

Page 237

| | | |
|---|---|---|
| 1 | Q.  Did you approve of Mr. Toberoff taking on | 16:29:54 |
| 2 | the representation of the Siegels? | 16:30:03 |
| 3 | A.  Yes. | 16:30:11 |
| 4 | Q.  Did you feel that in some way that might | 16:30:11 |
| 5 | conflict with your interests or your mother's | 16:30:14 |
| 6 | interests? | 16:30:19 |
| 7 | A.  I thought it would potentially be an | 16:30:22 |
| 8 | advantage. | 16:30:24 |
| 9 | Q.  How so? | 16:30:25 |
| 10 | MR. TOBEROFF:  You can only answer that if | 16:30:29 |
| 11 | you formed an opinion as to that that's not bound up | 16:30:30 |
| 12 | with your discussions with me. | 16:30:36 |
| 13 | MR. PETROCELLI:  Now, look -- | 16:30:40 |
| 14 | MR. TOBEROFF:  If you have an opinion | 16:30:41 |
| 15 | that's independent of your advice of counsel, you | 16:30:42 |
| 16 | can answer.  If not, I instruct you not to. | 16:30:45 |
| 17 | THE WITNESS:  Okay.  Well, my opinion is | 16:30:50 |
| 18 | bound up in discussions. | 16:30:51 |
| 19 | (Unanswered question.) | 16:30:54 |
| 20 | BY MR. PETROCELLI: | 16:30:54 |
| 21 | Q.  Just because something may be bound up in | 16:30:55 |
| 22 | discussions, whatever that means, doesn't mean that | 16:30:58 |
| 23 | you can't have a thought of your own that you can't | 16:31:01 |
| 24 | convey. | 16:31:07 |
| 25 | MR. TOBEROFF:  Argumentative. | 16:31:08 |

EXHIBIT 37
1339

MARK WARREN PEARY - 6/29/2011

Page 238

| | | |
|---|---|---|
| 1 | And don't listen to his instructions, | 16:31:09 |
| 2 | listen to mine. And I instruct you not to answer | 16:31:11 |
| 3 | unless you can answer independently of your | 16:31:13 |
| 4 | discussions with me. | 16:31:15 |
| 5 | THE WITNESS: Well, my -- | 16:31:18 |
| 6 | BY MR. PETROCELLI: | 16:31:18 |
| 7 | Q. Why did you believe that Marc Toberoff | 16:31:21 |
| 8 | representing the Siegels would be to your advantage? | 16:31:26 |
| 9 | MR. TOBEROFF: Same instruction. | 16:31:31 |
| 10 | (Unanswered question.) | 16:31:31 |
| 11 | BY MR. PETROCELLI: | 16:31:31 |
| 12 | Q. Did you discuss that with anyone? | 16:31:35 |
| 13 | A. My belief as to why it's an advantage -- | 16:31:37 |
| 14 | MR. TOBEROFF: Excuse me. I'm instructing | 16:31:39 |
| 15 | you not to answer what your belief was based on your | 16:31:41 |
| 16 | testimony that it's bound up with your discussions | 16:31:44 |
| 17 | with me. | 16:31:47 |
| 18 | What's the -- what's the next question? | 16:31:48 |
| 19 | BY MR. PETROCELLI: | 16:31:50 |
| 20 | Q. Did you discuss that with anyone? | 16:31:51 |
| 21 | MR. TOBEROFF: Other than me? | 16:31:52 |
| 22 | MR. PETROCELLI: No, I said with anyone. | 16:31:53 |
| 23 | MR. TOBEROFF: You could -- | 16:31:56 |
| 24 | BY MR. PETROCELLI: | 16:31:56 |
| 25 | Q. Answer that "yes" or "no." | 16:31:57 |

EXHIBIT 37

1340

MARK WARREN PEARY - 6/29/2011

Page 239

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  You can answer whether you | 16:31:58 |
| 2 | discussed the subject with your attorney, "yes" or | 16:31:59 |
| 3 | "no." | 16:32:01 |
| 4 | MR. PETROCELLI:  I didn't say with your | 16:32:01 |
| 5 | attorney.  I said with anyone. | 16:32:03 |
| 6 | MR. TOBEROFF:  With anyone.  With anyone. | 16:32:04 |
| 7 | THE WITNESS:  With anyone else? | 16:32:05 |
| 8 | BY MR. PETROCELLI: | 16:32:05 |
| 9 | Q.  No, with anyone? | 16:32:06 |
| 10 | A.  Oh, yes. | 16:32:07 |
| 11 | Q.  With whom? | 16:32:08 |
| 12 | A.  Well, Marc Toberoff. | 16:32:08 |
| 13 | Q.  Anyone else? | 16:32:09 |
| 14 | A.  No. | 16:32:10 |
| 15 | Q.  Did you discuss it with your mother? | 16:32:12 |
| 16 | MR. TOBEROFF:  Asked and answered. | 16:32:16 |
| 17 | THE WITNESS:  I -- I don't recall if I | 16:32:24 |
| 18 | discussed it with her. | 16:32:29 |
| 19 | BY MR. PETROCELLI: | 16:32:29 |
| 20 | Q.  You realize -- you believe that it was | 16:32:31 |
| 21 | advantageous for Marc Toberoff to also represent the | 16:32:36 |
| 22 | Siegels and you didn't discuss that with your | 16:32:39 |
| 23 | mother? | 16:32:42 |
| 24 | MR. TOBEROFF:  Asked and answered. | 16:32:43 |
| 25 | THE WITNESS:  Just what I said.  That -- | 16:32:48 |

MARK WARREN PEARY - 6/29/2011

Page 240

| | |
|---|---|
| 1 | MR. TOBEROFF:  Just -- | 16:32:53 |
| 2 | BY MR. PETROCELLI: | 16:32:53 |
| 3 | Q.  What did you -- you said you can't recall. | 16:32:55 |
| 4 | A.  Yes. | 16:32:58 |
| 5 | Q.  Do you believe you would have discussed | 16:32:59 |
| 6 | that with her given the nature of its importance? | 16:33:01 |
| 7 | MR. TOBEROFF:  Don't speculate.  Only | 16:33:06 |
| 8 | testify as to your memory. | 16:33:07 |
| 9 | THE WITNESS:  Yeah, I don't know. | 16:33:09 |
| 10 | BY MR. PETROCELLI: | 16:33:09 |
| 11 | Q.  It's not speculation.  It's based on a | 16:33:12 |
| 12 | practice that you would have had of conveying and | 16:33:14 |
| 13 | sharing and communicating with your mother on | 16:33:16 |
| 14 | matters that were important to this topic. | 16:33:19 |
| 15 | Is it fair to say that you had that | 16:33:26 |
| 16 | practice of sharing important and discussing | 16:33:27 |
| 17 | important information relating to the Superman issue | 16:33:29 |
| 18 | after you retained Mr. Toberoff, that you would have | 16:33:33 |
| 19 | discussions on important developments with your | 16:33:35 |
| 20 | mother? | 16:33:40 |
| 21 | MR. TOBEROFF:  Vague. | 16:33:40 |
| 22 | THE WITNESS:  Some. | 16:33:43 |
| 23 | BY MR. PETROCELLI: | 16:33:43 |
| 24 | Q.  Did you believe that this was an important | 16:33:45 |
| 25 | development, whether or not Mr. Toberoff should | 16:33:46 |

EXHIBIT 37
1342

MARK WARREN PEARY - 6/29/2011

Page 241

| | | |
|---|---|---|
| 1 | become the lawyers for the Siegels, given that you | 16:33:51 |
| 2 | believed he also was your family's lawyer? | 16:33:52 |
| 3 | A.  Yes. | 16:33:55 |
| 4 | Q.  Do you believe based on the importance of | 16:33:56 |
| 5 | that information that you discussed that with your | 16:33:57 |
| 6 | mother? | 16:34:01 |
| 7 | A.  Probably. | 16:34:04 |
| 8 | Q.  And what did you and she discuss on that | 16:34:08 |
| 9 | subject? | 16:34:10 |
| 10 | MR. TOBEROFF:  Only answer if you have a | 16:34:12 |
| 11 | recollection. | 16:34:13 |
| 12 | MR. PETROCELLI:  That's true of every | 16:34:15 |
| 13 | answer. | 16:34:16 |
| 14 | MR. TOBEROFF:  But I want to make sure. | 16:34:17 |
| 15 | Witnesses have a tendency, not this witness, but any | 16:34:19 |
| 16 | witness has a tendency to try to fill in the blanks. | 16:34:21 |
| 17 | THE WITNESS:  My mother, she liked Marc | 16:34:26 |
| 18 | Toberoff a lot personally.  She had spoken with him | 16:34:31 |
| 19 | and she -- she thought she would be helping the | 16:34:36 |
| 20 | Siegels by referring them to him. | 16:34:40 |
| 21 | BY MR. PETROCELLI: | 16:34:40 |
| 22 | Q.  Did you discuss how this would be | 16:34:44 |
| 23 | advantageous to the Shuster family by having | 16:34:47 |
| 24 | Mr. Toberoff also represent the Siegels? | 16:34:51 |
| 25 | A.  I don't think we discussed that at that | 16:34:57 |

EXHIBIT 37
1343

MARK WARREN PEARY - 6/29/2011

Page 242

```
 1    time.                                            16:34:59
 2         Q.  Why didn't you discuss that?  Wasn't that   16:34:59
 3    the -- the most important part of the discussion?   16:35:02
 4         A.  The -- the advantages came up in          16:35:13
 5    discussions over time as we discussed back and forth  16:35:18
 6    with Marc Toberoff.  That's -- that's --           16:35:23
 7         Q.  I'm asking you about your discussions with   16:35:27
 8    your mother because I'm trying to get at information  16:35:29
 9    that's clearly and plainly discoverable.           16:35:31
10         A.  At that time we did not discuss any        16:35:35
11    specific strategic value for having the Siegels and  16:35:39
12    Toberoff work together.                            16:35:47
13         Q.  Why did you not discuss that subject with   16:35:49
14    your mother given its importance?                  16:35:51
15         A.  I don't know.                             16:35:55
16         Q.  You made a decision not to bring it up?    16:35:59
17         A.  I know she recommended him to the Siegels   16:36:03
18    because she liked him and trusted him and -- and she  16:36:06
19    thought it would be a good idea for them to talk to   16:36:11
20    him and that's -- that was -- at that point that's   16:36:14
21    all we discussed.                                  16:36:18
22         Q.  And you never once discussed with her your  16:36:19
23    views as to how it would be advantageous to the    16:36:21
24    Shusters to have Mr. Toberoff represent the Siegels?  16:36:25
25         MR. TOBEROFF:  Asked and answered twice.      16:36:28
```

EXHIBIT 37
1344

MARK WARREN PEARY - 6/29/2011

Page 243

```
 1            THE WITNESS:  Not at that time.          16:36:29
 2   BY MR. PETROCELLI:                                16:36:29
 3       Q.  At any time?                              16:36:32
 4       A.  At any time -- some -- some -- some time  16:36:33
 5   later, I suppose.                                 16:36:49
 6       Q.  Tell me what you said to her about those  16:36:50
 7   advantages.                                       16:36:54
 8       A.  It was based upon my discussions with Marc 16:36:55
 9   Toberoff about the value of having all the rights. 16:37:01
10       Q.  Tell me what you said to your mother --   16:37:10
11       A.  That's what I told her.                   16:37:12
12       Q.  -- on that subject.                       16:37:13
13           You said "it was based on."              16:37:14
14       A.  Yes.                                      16:37:16
15       Q.  I didn't ask you what it was based on.   16:37:17
16       A.  Okay.                                     16:37:18
17       Q.  I'm asking you what you actually said to 16:37:18
18   her.                                              16:37:21
19       A.  Okay.                                     16:37:22
20       Q.  Tell me what you said to her about why it 16:37:22
21   was valuable to have all the rights.             16:37:24
22       A.  I believe that's all I said.             16:37:29
23       Q.  What did you mean by that?               16:37:30
24       A.  Just what it says.  Valuable to have all 16:37:33
25   the rights.                                       16:37:36
```

Merrill   Corporation   -   Los Angeles
800-826-0277                      www.merrillcorp.com/law

EXHIBIT 37
1345

MARK WARREN PEARY - 6/29/2011

Page 244

| | | |
|---|---|---|
| 1 | Q.  Valuable to whom? | 16:37:36 |
| 2 | A.  To all of us. | 16:37:38 |
| 3 | Q.  Who are "all"? | 16:37:39 |
| 4 | A.  Siegels and Shusters together. | 16:37:40 |
| 5 | Q.  Valuable in that you can demand and command | 16:37:49 |
| 6 | more money?  Valuable in that sense? | 16:37:55 |
| 7 | A.  Well, there's -- there's -- | 16:37:57 |
| 8 | MR. TOBEROFF:  Excuse me.  You can testify | 16:38:04 |
| 9 | as to what you specifically said to your mother, but | 16:38:07 |
| 10 | you can't testify as to your understanding of the | 16:38:11 |
| 11 | value if that value is based on discussions with | 16:38:14 |
| 12 | your attorney. | 16:38:19 |
| 13 | MR. PETROCELLI:  That's not exactly true if | 16:38:21 |
| 14 | he has discussed that subject with his mother. | 16:38:23 |
| 15 | MR. TOBEROFF:  That's what I just said.  He | 16:38:26 |
| 16 | can testify, but he can't -- | 16:38:27 |
| 17 | MR. PETROCELLI:  But even if the | 16:38:29 |
| 18 | information came from you -- | 16:38:30 |
| 19 | MR. TOBEROFF:  He can testify -- | 16:38:31 |
| 20 | MR. PETROCELLI:  -- entirely -- | 16:38:32 |
| 21 | MR. TOBEROFF:  -- only to what he said to | 16:38:34 |
| 22 | his mother even if the information came from me. | 16:38:35 |
| 23 | MR. PETROCELLI:  Correct. | 16:38:35 |
| 24 | MR. TOBEROFF:  If he didn't say that to his | 16:38:37 |
| 25 | mother and he just said, "I think this is a good | 16:38:39 |

MARK WARREN PEARY - 6/29/2011

Page 245

| | | |
|---|---|---|
| 1 | idea" -- | 16:38:41 |
| 2 | MR. PETROCELLI: Well -- | 16:38:41 |
| 3 | MR. TOBEROFF: -- then -- then you can't | 16:38:42 |
| 4 | say, "Why do you think it was a good idea?" | 16:38:42 |
| 5 | MR. PETROCELLI: I'm also entitled to ask | 16:38:44 |
| 6 | about his state of mind as to why he said what he | 16:38:45 |
| 7 | said to his mother. | 16:38:48 |
| 8 | MR. TOBEROFF: This isn't a hearsay | 16:38:51 |
| 9 | objection. This is a privilege objection. | 16:38:53 |
| 10 | MR. PETROCELLI: No, but we're trying to | 16:38:55 |
| 11 | get at discovery. | 16:38:56 |
| 12 | MR. TOBEROFF: Okay. | 16:38:59 |
| 13 | MR. PETROCELLI: And it's -- and it's | 16:38:59 |
| 14 | relevant for that purpose. | 16:39:01 |
| 15 | MR. TOBEROFF: You can testify as to what | 16:39:05 |
| 16 | you said to your mother. If he asks you why you | 16:39:06 |
| 17 | said that and the whys and the wheres are based on | 16:39:10 |
| 18 | your conversations with me, I instruct you not to | 16:39:13 |
| 19 | testify. That's -- | 16:39:17 |
| 20 | MR. PETROCELLI: Well, I don't accept that. | 16:39:18 |
| 21 | THE WITNESS: Well -- | 16:39:19 |
| 22 | BY MR. PETROCELLI: | 16:39:19 |
| 23 | Q. Let me ask my next question. | 16:39:20 |
| 24 | Did you -- you did not sign a conflict | 16:39:21 |
| 25 | waiver in 2001, 2002 or '-3 having to do with | 16:39:37 |

EXHIBIT 37
1347

Page 246

| | | |
|---|---|---|
| 1 | Mr. Toberoff representing the Siegels, right? | 16:39:45 |
| 2 | A.  Right. | 16:39:49 |
| 3 | Q.  You were never presented with one, either, | 16:39:49 |
| 4 | right? | 16:39:49 |
| 5 | A.  I don't think so. | 16:39:53 |
| 6 | Q.  Did you -- did Mr. Toberoff discuss with | 16:40:05 |
| 7 | you his attempts to reach out to the Siegels | 16:40:11 |
| 8 | prior -- now this is prior to the time that | 16:40:16 |
| 9 | Mr. Toberoff went to work for the Siegels which I | 16:40:20 |
| 10 | will represent to you was sometime in the late | 16:40:23 |
| 11 | summer of 2002. | 16:40:28 |
| 12 | MR. TOBEROFF:  That's incorrect.  That's a | 16:40:31 |
| 13 | misrepresentation of fact. | 16:40:34 |
| 14 | MR. PETROCELLI:  September, October 2002. | 16:40:36 |
| 15 | Q.  Prior to that time -- | 16:40:46 |
| 16 | MR. TOBEROFF:  Nobody views October as late | 16:40:47 |
| 17 | summer. | 16:40:50 |
| 18 | MR. PETROCELLI:  Well, it's a little bit | 16:40:50 |
| 19 | unclear. | 16:40:52 |
| 20 | MR. TOBEROFF:  If you say, "I'm taking a | 16:40:52 |
| 21 | summer holiday" -- | 16:40:54 |
| 22 | MR. PETROCELLI:  You've got a September -- | 16:40:54 |
| 23 | you've got a September date in there where she's | 16:40:55 |
| 24 | terminated the lawyers.  I think it's September 21. | 16:40:58 |
| 25 | I think there's a letter there.  I may be mixing my | 16:41:03 |

EXHIBIT 37
1348

MARK WARREN PEARY - 6/29/2011

Page 247

| | | |
|---|---|---|
| 1 | dates up. Let's call it October. I'm not going | 16:41:06 |
| 2 | to -- vouching for the date, but let's just say | 16:41:10 |
| 3 | prior to October 2002, prior to that time -- well, | 16:41:13 |
| 4 | let me do it differently. | 16:41:18 |
| 5 | Q.  Did there come a time when you learned that | 16:41:19 |
| 6 | Mr. Toberoff had been retained by the Siegels? | 16:41:26 |
| 7 | A.  Yes. | 16:41:28 |
| 8 | Q.  How did you find out? | 16:41:29 |
| 9 | A.  He told me. | 16:41:30 |
| 10 | Q.  Okay.  Prior to that time when he told you | 16:41:31 |
| 11 | he was retained by the Siegels, and you think that | 16:41:37 |
| 12 | was in 2003, you said, right? | 16:41:40 |
| 13 | A.  That's -- that's what I had thought.  I | 16:41:45 |
| 14 | didn't -- I don't remember. | 16:41:47 |
| 15 | Q.  Did -- did the -- Joanne Siegel or Laura | 16:41:52 |
| 16 | Siegel have any discussions with you or your mother, | 16:41:56 |
| 17 | to your knowledge, about the decision to hire | 16:42:02 |
| 18 | Mr. Toberoff? | 16:42:02 |
| 19 | A.  No discussions with me. | 16:42:02 |
| 20 | Q.  Do you know whether they had any | 16:42:07 |
| 21 | discussions with your mother to the effect, "Hey, I | 16:42:08 |
| 22 | met him" or "I've talked to him.  I think I'm -- I | 16:42:11 |
| 23 | think I'm going to retain him"? | 16:42:14 |
| 24 | A.  I don't know what they said to her. | 16:42:16 |
| 25 | Q.  Did they call you up to ask if it would | 16:42:17 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1349

MARK WARREN PEARY - 6/29/2011

Page 248

| | | |
|---|---|---|
| 1 | pose any problem with respect to you or your mother | 16:42:20 |
| 2 | if he went to work for the Siegels? | 16:42:26 |
| 3 | A.  No. | 16:42:28 |
| 4 | Q.  Have you -- were you told about -- by | 16:42:36 |
| 5 | Mr. Toberoff about any of his efforts to contact the | 16:42:40 |
| 6 | Siegels or make contact with them prior to the time | 16:42:44 |
| 7 | he was retained by them? | 16:42:47 |
| 8 | A.  No. | 16:42:48 |
| 9 | Q.  Did you learn about what he was -- about | 16:42:54 |
| 10 | his efforts to get in touch with them from any other | 16:42:59 |
| 11 | source? | 16:43:03 |
| 12 | A.  No. | 16:43:03 |
| 13 | Q.  So is what you're telling me that at one | 16:43:09 |
| 14 | point you told him that you had no issue with his | 16:43:15 |
| 15 | representing the Siegels and then the next time you | 16:43:18 |
| 16 | discussed the subject with him, he told you he was | 16:43:22 |
| 17 | the lawyer for the Siegels and there was no | 16:43:25 |
| 18 | discussion in between on that subject? | 16:43:27 |
| 19 | A.  I don't know. | 16:43:32 |
| 20 | Q.  When did you and Mr. Toberoff have the | 16:43:33 |
| 21 | discussion about it being mutually advantageous for | 16:43:36 |
| 22 | Mr. Toberoff to also represent the Siegels?  When | 16:43:43 |
| 23 | did you have that discussion? | 16:43:48 |
| 24 | A.  Sometime after they retained him. | 16:43:50 |
| 25 | Q.  Oh, after they retained him? | 16:43:54 |

EXHIBIT 37
1350

MARK WARREN PEARY - 6/29/2011

Page 249

| | | |
|---|---|---|
| 1 | A.  Yes. | 16:43:55 |
| 2 | Q.  Okay.  So prior to the time that the | 16:43:57 |
| 3 | Siegels retained Mr. Toberoff, other than your | 16:44:00 |
| 4 | mother putting -- other than your mother making a | 16:44:05 |
| 5 | phone call to Joanne, you had no knowledge about | 16:44:09 |
| 6 | Mr. Toberoff contacting the Siegels or trying to | 16:44:16 |
| 7 | become their lawyer or anything like that? | 16:44:20 |
| 8 | MR. TOBEROFF:  Lacks foundation.  Assumes | 16:44:22 |
| 9 | facts as to "trying to become their lawyer." | 16:44:25 |
| 10 | THE WITNESS:  I don't know about that. | 16:44:32 |
| 11 | BY MR. PETROCELLI: | 16:44:32 |
| 12 | Q.  Do you -- when did -- when did you and your | 16:44:36 |
| 13 | mother discuss that she would recommend Mr. Toberoff | 16:44:45 |
| 14 | to Joanne Siegel?  Was that before or after you | 16:44:49 |
| 15 | signed the 2001 agreement with Mr. Toberoff? | 16:44:52 |
| 16 | A.  Before or after we signed the 2001 | 16:44:57 |
| 17 | agreement? | 16:45:05 |
| 18 | Q.  Yes. | 16:45:09 |
| 19 | MR. TOBEROFF:  Do you understand the | 16:45:09 |
| 20 | question? | 16:45:10 |
| 21 | THE WITNESS:  Yeah, yeah.  When -- | 16:45:12 |
| 22 | MR. TOBEROFF:  Do you understand the | 16:45:12 |
| 23 | question? | 16:45:13 |
| 24 | BY MR. PETROCELLI: | 16:45:13 |
| 25 | Q.  Exhibit 10 was signed in November 2001, | 16:45:14 |

MARK WARREN PEARY - 6/29/2011

Page 250

| | | |
|---|---|---|
| 1 | right?  Exhibit 10, you have that in front of you, | 16:45:16 |
| 2 | the joint venture agreement? | 16:45:18 |
| 3 | A.  Yes. | 16:45:19 |
| 4 | Q.  Was it before or after you signed Exhibit | 16:45:19 |
| 5 | 10 that you and your mother had a discussion about | 16:45:21 |
| 6 | putting him -- putting -- having Joanne Siegel -- | 16:45:24 |
| 7 | telling Joanne Siegel about Marc Toberoff? | 16:45:29 |
| 8 | A.  I don't know if we specifically discussed | 16:45:31 |
| 9 | it.  She mentioned him. | 16:45:34 |
| 10 | Q.  "She" whom? | 16:45:38 |
| 11 | A.  My mother, in a -- in a phone conversation. | 16:45:38 |
| 12 | Q.  To whom? | 16:45:42 |
| 13 | A.  To Joanne. | 16:45:43 |
| 14 | Q.  Before or after? | 16:45:45 |
| 15 | A.  After. | 16:45:46 |
| 16 | Q.  How long after? | 16:45:47 |
| 17 | MR. TOBEROFF:  Asked and answered. | 16:45:50 |
| 18 | THE WITNESS:  I don't know. | 16:45:50 |
| 19 | BY MR. PETROCELLI: | 16:45:50 |
| 20 | Q.  And you were there when she mentioned it or | 16:45:52 |
| 21 | she told you about it afterwards? | 16:45:56 |
| 22 | A.  She told me. | 16:45:57 |
| 23 | Q.  Okay.  And what did she tell you she had | 16:45:58 |
| 24 | done? | 16:46:01 |
| 25 | A.  I don't remember exactly what she said. | 16:46:04 |

Merrill  Corporation  -  Los Angeles
800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1352

MARK WARREN PEARY - 6/29/2011

Page 251

| | | |
|---|---|---|
| 1 | Q.  Okay.  Did you have a follow-up | 16:46:08 |
| 2 | conversation with Mr. Toberoff about the fact that | 16:46:09 |
| 3 | your mother had mentioned him to Joanne Siegel? | 16:46:11 |
| 4 | A.  No. | 16:46:15 |
| 5 | Q.  Did you have any conversations with him | 16:46:17 |
| 6 | about whether it would be a good idea or a bad idea | 16:46:19 |
| 7 | for him also to represent the Siegel family? | 16:46:22 |
| 8 | MR. TOBEROFF:  I instruct you not to answer | 16:46:26 |
| 9 | as to the substance of our conversations whether | 16:46:28 |
| 10 | it's a good idea or bad idea. | 16:46:30 |
| 11 | (Unanswered question.) | 16:46:32 |
| 12 | BY MR. PETROCELLI: | 16:46:32 |
| 13 | Q.  Did you -- when is the next time you had | 16:46:33 |
| 14 | any conversation with anyone about the subject of | 16:46:35 |
| 15 | Marc Siegel having some kind of a relationship with | 16:46:39 |
| 16 | the Siegels? | 16:46:44 |
| 17 | MR. TOBEROFF:  Marc -- | 16:46:45 |
| 18 | BY MR. PETROCELLI: | 16:46:45 |
| 19 | Q.  Marc Toberoff having some kind of | 16:46:46 |
| 20 | relationship with the Siegels after this one event | 16:46:49 |
| 21 | that you describe where your mother told you she | 16:46:52 |
| 22 | spoke to Joanne? | 16:46:54 |
| 23 | A.  When is the next time I talked to anyone? | 16:46:55 |
| 24 | Q.  On that subject, correct. | 16:46:57 |
| 25 | A.  Other than Marc Toberoff?. | 16:47:01 |

EXHIBIT 37
1353

MARK WARREN PEARY - 6/29/2011

Page 252

```
 1        Q.  No, including Marc Toberoff.              16:47:02

 2        A.  Oh.                                       16:47:03

 3            MR. TOBEROFF:  You can't -- okay.  I'll let   16:47:05

 4   you answer that.                                   16:47:08

 5            THE WITNESS:  I don't remember.           16:47:08

 6   BY MR. PETROCELLI:                                 16:47:08

 7        Q.  Was it before or after Mr. Toberoff was   16:47:10

 8   retained by the Siegels?                           16:47:13

 9        A.  I don't -- I don't remember.  Too long ago.  16:47:14

10        Q.  Did Mr. Toberoff discuss with you that   16:47:24

11   there was a -- that he was approaching the Siegels   16:47:26

12   not to represent them as a lawyer but to do a      16:47:29

13   business transaction with them?                    16:47:32

14            MR. TOBEROFF:  Assumes facts.  Lacks      16:47:35

15   foundation.  Instruct you not to answer as to the  16:47:41

16   substance of our conversations.                    16:47:44

17            (Unanswered question.)                    16:47:45

18   BY MR. PETROCELLI:                                 16:47:45

19        Q.  Did he discuss that he was aware of an    16:47:46

20   investor, very wealthy investor, maybe even a      16:47:50

21   billionaire investor who wanted to do a deal for the  16:47:54

22   Superman rights?                                   16:47:59

23            MR. TOBEROFF:  Same instruction --        16:48:00

24            (Unanswered question.)                    16:48:04

25   BY MR. PETROCELLI:                                 16:48:04
```

EXHIBIT 37
1354

MARK WARREN PEARY - 6/29/2011

Page 253

| | | |
|---|---|---|
| 1 | Q.  Did he discuss -- | 16:48:04 |
| 2 |     MR. TOBEROFF:  -- as to our discussions or | 16:48:05 |
| 3 | conversations. | 16:48:06 |
| 4 | BY MR. PETROCELLI: | 16:48:06 |
| 5 |    Q.  Did he discuss with you that he was going | 16:48:06 |
| 6 | to approach the Siegels about such an investor? | 16:48:08 |
| 7 |     MR. TOBEROFF:  Same instruction. | 16:48:14 |
| 8 |     (Unanswered question.) | 16:48:16 |
| 9 | BY MR. PETROCELLI: | 16:48:16 |
| 10 |    Q.  Have you ever come to learn that | 16:48:19 |
| 11 | Mr. Toberoff had discussions with the Siegels about | 16:48:23 |
| 12 | an investor who would buy their Superman rights? | 16:48:27 |
| 13 |     MR. TOBEROFF:  You can only answer that if | 16:48:35 |
| 14 | you have knowledge independent of your discussions | 16:48:39 |
| 15 | with me. | 16:48:39 |
| 16 |     THE WITNESS:  I don't have knowledge | 16:48:41 |
| 17 | independent of my discussions. | 16:48:43 |
| 18 |     MR. TOBEROFF:  Then I instruct you not to | 16:48:45 |
| 19 | answer. | 16:48:47 |
| 20 |     (Unanswered question.) | 16:48:47 |
| 21 | BY MR. PETROCELLI: | 16:48:47 |
| 22 |    Q.  Did you have discussions with Mr. Toberoff | 16:48:48 |
| 23 | on that topic in 2002? | 16:48:51 |
| 24 |     MR. TOBEROFF:  Same instruction. | 16:48:55 |
| 25 |     (Unanswered question.) | 16:48:55 |

MARK WARREN PEARY – 6/29/2011

Page 254

1    BY MR. PETROCELLI:                                      16:48:55

2        Q.   Did you have discussions with Mr. Toberoff     16:49:00

3    on -- about the Siegels in 2002?                        16:49:01

4            MR. TOBEROFF:   Just about the Siegels?         16:49:07

5            MR. PETROCELLI:   Anything related to the       16:49:08

6    Siegels.                                                16:49:09

7            MR. TOBEROFF:   You can -- you could            16:49:11

8    answer -- without waiver of privilege, you can         16:49:13

9    answer whether we had any discussions on the subject   16:49:16

10   of the Siegels if you remember.   Date specific.       16:49:17

11           THE WITNESS:   I don't remember                16:49:22

12   specifically.   I can only assume.   I don't remember. 16:49:23

13   BY MR. PETROCELLI:                                      16:49:23

14       Q.   You said earlier that you saw a document      16:49:28

15   called the Toberoff timeline and you saw it prior to   16:49:30

16   seeing that it was attached to the lawsuit that we     16:49:38

17   filed.                                                  16:49:39

18       A.   Yes.                                           16:49:39

19       Q.   Okay.   And when you saw that document, you   16:49:41

20   read it?                                                16:49:43

21       A.   Yeah, scanned it.                              16:49:44

22       Q.   Scanned again?                                 16:49:50

23       A.   Yeah, I read it.                               16:49:50

24       Q.   Read it?                                       16:49:52

25       A.   I didn't think much of it.                    16:49:53

EXHIBIT 37
1356

MARK WARREN PEARY - 6/29/2011

Page 255

| | | |
|---|---|---|
| 1 | Q. What does that mean? | 16:49:55 |
| 2 | A. You want me to explain my -- my feelings | 16:49:59 |
| 3 | about what that is? | 16:50:01 |
| 4 | Q. Sure. | 16:50:03 |
| 5 | A. I think that someone came in intentionally | 16:50:05 |
| 6 | to try to set Marc Toberoff up to make him look bad | 16:50:12 |
| 7 | and sent an anonymous letter -- | 16:50:16 |
| 8 | Q. What's the basis -- | 16:50:23 |
| 9 | A. -- without -- without signing. That's what | 16:50:24 |
| 10 | I -- my belief and feeling is about that. | 16:50:26 |
| 11 | Q. Why -- why did you form that belief, that | 16:50:29 |
| 12 | someone was trying to set him up? | 16:50:34 |
| 13 | A. Because -- | 16:50:34 |
| 14 | Q. Set him up for what? | 16:50:36 |
| 15 | A. Because documents were stolen. | 16:50:37 |
| 16 | Q. What does that mean, they were stolen? | 16:50:39 |
| 17 | A. Documents were stolen from his office. | 16:50:41 |
| 18 | Q. How do you know that? | 16:50:43 |
| 19 | A. He told me. | 16:50:44 |
| 20 | Q. Do you know it from any other source? | 16:50:47 |
| 21 | A. Just from a -- a -- later as a grand jury | 16:50:54 |
| 22 | subpoena regarding that theft. | 16:51:02 |
| 23 | Q. You were examined in front of the grand | 16:51:04 |
| 24 | jury? | 16:51:07 |
| 25 | A. No, there was -- I was aware of a grand | 16:51:07 |

EXHIBIT 37
1357

MARK WARREN PEARY - 6/29/2011

1    jury subpoena regarding that theft issue.                    16:51:10

2        Q.  How did you become aware of that?                    16:51:12

3            MR. TOBEROFF:  You're getting into an area           16:51:14

4    where your awareness is solely based on                     16:51:17

5    conversations with me.  You were talking quickly and        16:51:20

6    you meant -- when he said "he told me," I would have        16:51:22

7    objected to that as attorney-client privilege.              16:51:25

8            MR. PETROCELLI:  He learned about the grand          16:51:26

9    jury --                                                     16:51:27

10           MR. TOBEROFF:  You got that out before I             16:51:27

11   could object.                                               16:51:28

12           THE WITNESS:  Oh, sorry.                             16:51:28

13           MR. TOBEROFF:  So I would slow it down.              16:51:29

14   BY MR. PETROCELLI:                                          16:51:32

15       Q.  The grand jury subpoena information came            16:51:33

16   from Mr. Toberoff.                                          16:51:35

17           Is that right?                                      16:51:35

18       A.  Yes.                                                16:51:36

19       Q.  And the information about the circumstances         16:51:37

20   of how those documents got created came from               16:51:39

21   Mr. Toberoff, right?                                        16:51:43

22           MR. TOBEROFF:  I instruct you not to                16:51:44

23   answer.                                                     16:51:45

24           (Unanswered question.)                              16:51:45

25           THE WITNESS:  Okay.                                 16:51:46

EXHIBIT 37
1358

MARK WARREN PEARY - 6/29/2011

Page 257

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 16:51:46 |
| 2 | Q. Well, you said he is the one who told you | 16:51:47 |
| 3 | they were stolen, right? | 16:51:49 |
| 4 | A. Yes. | 16:51:49 |
| 5 | Q. Have you ever spoken to the person who | 16:51:53 |
| 6 | allegedly took the documents? | 16:51:56 |
| 7 | A. No. | 16:51:57 |
| 8 | Q. Did you ever speak to the Siegels about | 16:52:02 |
| 9 | whether anything said in the document is true? | 16:52:04 |
| 10 | MR. TOBEROFF: Vague. You mean the | 16:52:10 |
| 11 | timeline? | 16:52:11 |
| 12 | MR. PETROCELLI: Yeah. | 16:52:12 |
| 13 | Q. Did you ever talk to the Siegels about | 16:52:12 |
| 14 | whether anything stated in the timeline is true? | 16:52:14 |
| 15 | A. No. | 16:52:17 |
| 16 | Q. Why not? | 16:52:22 |
| 17 | A. I don't know. | 16:52:23 |
| 18 | Q. You saw in there references to Mr. Toberoff | 16:52:27 |
| 19 | misleading the Siegels? | 16:52:30 |
| 20 | A. Yes. | 16:52:32 |
| 21 | Q. Okay. And trying to, you know, corner the | 16:52:33 |
| 22 | rights mainly for himself? | 16:52:37 |
| 23 | A. I saw that. | 16:52:40 |
| 24 | Q. Okay. And you saw in there that there were | 16:52:44 |
| 25 | references of making statements to the Siegels that | 16:52:46 |

EXHIBIT 37
1359

MARK WARREN PEARY - 6/29/2011

Page 258

1    there was a billionaire investor when, in fact,        16:52:49

2    there wasn't?        16:52:51

3         A.   I read that.        16:52:56

4         Q.   Okay.   Did you discuss any of that with        16:52:56

5    your mother when you first read that material?        16:52:58

6         A.   I don't recall.        16:53:04

7         Q.   And the -- did you give any thought to        16:53:09

8    talking to the Siegels about whether any of it was        16:53:12

9    true?        16:53:17

10             MR. TOBEROFF:   Asked and answered.        16:53:21

11             THE WITNESS:   I did not discuss it with        16:53:22

12    them.        16:53:26

13    BY MR. PETROCELLI:        16:53:26

14         Q.   Did you give any thought to discussing it        16:53:27

15    with them?        16:53:29

16         A.   I don't know if I gave any thought.        16:53:29

17         Q.   Did you do anything to look into the -- the        16:53:37

18    truth of what was said in that document?   See if any        16:53:42

19    of it was true?        16:53:49

20         A.   I'm aware that there were a number of        16:53:50

21    factual errors and falsehoods, as a matter of fact.        16:53:55

22    A lot of concoctions, things that are concocted that        16:53:59

23    are -- that are factually incorrect.        16:54:05

24         Q.   How do you know they are?        16:54:06

25         A.   Because I'm familiar with some of the        16:54:07

MARK WARREN PEARY - 6/29/2011

Page 259

| | | |
|---|---|---|
| 1 | timelines. | 16:54:09 |
| 2 | Q.  Let me show it to you.  It's Exhibit 25. | 16:54:10 |
| 3 | (The document referred to was | 16:54:31 |
| 4 | marked for identification by the | 16:54:31 |
| 5 | C.S.R. as Exhibit 25 and attached | 16:54:31 |
| 6 | to this deposition.) | 16:54:33 |
| 7 | BY MR. PETROCELLI: | 16:54:33 |
| 8 | Q.  Identify for me what you know to be false. | 16:54:33 |
| 9 | A.  Well, I have to go through it. | 16:54:40 |
| 10 | Q.  To be clear, you received this -- you first | 16:54:41 |
| 11 | saw this document years ago, right? | 16:54:44 |
| 12 | MR. TOBEROFF:  Asked and answered. | 16:54:52 |
| 13 | THE WITNESS:  Yeah, I already answered. | 16:54:52 |
| 14 | BY MR. PETROCELLI: | 16:54:52 |
| 15 | Q.  Please answer my question. | 16:54:55 |
| 16 | MR. TOBEROFF:  You can -- when I say "asked | 16:54:55 |
| 17 | and answered," that's for the record -- excuse me. | 16:54:57 |
| 18 | When I say "asked and answered," I'm not instructing | 16:54:59 |
| 19 | you not to answer.  I'm making an objection for the | 16:55:02 |
| 20 | record. | 16:55:04 |
| 21 | You can answer again -- you can answer | 16:55:04 |
| 22 | again unless I instruct you. | 16:55:07 |
| 23 | THE WITNESS:  Oh.  I don't remember exactly | 16:55:08 |
| 24 | when I saw it.  I know I have seen it before today. | 16:55:15 |
| 25 | BY MR. PETROCELLI: | 16:55:15 |

Merrill  Corporation  -  Los Angeles
800-826-0277                      www.merrillcorp.com/law

EXHIBIT 37
1361

MARK WARREN PEARY - 6/29/2011

Page 260

| | |
|---|---|
| 1 | Q.  And you got it from Mr. Toberoff when you | 16:55:17 |
| 2 | did see it for the first time, right? | 16:55:19 |
| 3 | A.  Yes. | 16:55:19 |
| 4 | Q.  Now you can answer my question.  I know you | 16:55:24 |
| 5 | have to look at the documents, but my question is to | 16:55:24 |
| 6 | identify what you know to be false. | 16:55:27 |
| 7 | MR. TOBEROFF:  Take your time reading the | 16:55:36 |
| 8 | document. | 16:55:37 |
| 9 | THE WITNESS:  Well -- | 16:55:41 |
| 10 | MR. TOBEROFF:  There's a lot in here. | 16:55:43 |
| 11 | THE WITNESS:  Yeah, it is.  There is a lot | 16:55:44 |
| 12 | in here.  There's a lot in here. | 16:55:46 |
| 13 | Well, one inaccuracy is here on page 3, | 16:56:36 |
| 14 | March 2003.  It characterizes -- March 3rd, 2003 -- | 16:56:40 |
| 15 | it characterizes Marc Toberoff as, quote: | 16:56:47 |
| 16 | "Messing up relationships for | 16:56:51 |
| 17 | his own personal benefits." | 16:56:52 |
| 18 | And -- as if DC and the Siegels had a great | 16:56:53 |
| 19 | relationship.  And when, in fact, that they had cut | 16:56:57 |
| 20 | off talks, fired their attorneys and -- and wrote a | 16:57:03 |
| 21 | letter calling Time-Warner -- comparing them to the | 16:57:07 |
| 22 | Gestapo in their dealings with them. | 16:57:14 |
| 23 | He's saying that Marc Toberoff is | 16:57:16 |
| 24 | interfering with all the relationships up to this | 16:57:18 |
| 25 | point.  It was already -- the relationship was | 16:57:19 |

Merrill Corporation - Los Angeles
800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37
1362

MARK WARREN PEARY - 6/29/2011

Page 261

| | | |
|---|---|---|
| 1 | already bad. | 16:57:21 |
| 2 | BY MR. PETROCELLI: | 16:57:21 |
| 3 | Q.  Let me stop you right there. | 16:57:23 |
| 4 | How do you know what you just said? | 16:57:24 |
| 5 | A.  Well, I -- I know in- -- independently that | 16:57:26 |
| 6 | the Siegels fired their lawyer. | 16:57:31 |
| 7 | Q.  How do you know that? | 16:57:32 |
| 8 | A.  I'm -- how do I know that?  I'm aware | 16:57:33 |
| 9 | from -- I'm aware from them.  At some point, they | 16:57:41 |
| 10 | informed us of that and that they had broken off | 16:57:46 |
| 11 | negotiations with -- with DC because they were | 16:57:53 |
| 12 | unhappy with the terms.  And I know that also from | 16:57:57 |
| 13 | my discussions with Marc Toberoff. | 16:58:02 |
| 14 | MR. TOBEROFF:  Don't talk about your | 16:58:05 |
| 15 | discussions with me. | 16:58:06 |
| 16 | THE WITNESS:  Okay.  Okay. | 16:58:07 |
| 17 | BY MR. PETROCELLI: | 16:58:07 |
| 18 | Q.  When you -- you had previously told me that | 16:58:10 |
| 19 | you couldn't recall any contact with the Siegels | 16:58:13 |
| 20 | about their relationship with Toberoff and I asked | 16:58:17 |
| 21 | you a number of times about the time period up to | 16:58:25 |
| 22 | the time when Mr. Toberoff was first retained by | 16:58:29 |
| 23 | them. | 16:58:32 |
| 24 | Now, you're telling me they told you that | 16:58:35 |
| 25 | they broke off talks and all this other stuff. | 16:58:36 |

EXHIBIT 37
1363

MARK WARREN PEARY - 6/29/2011

Page 262

| | | |
|---|---|---|
| 1 | Did you learn that after the fact? | 16:58:40 |
| 2 | MR. TOBEROFF:  Misstates his testimony. | 16:58:41 |
| 3 | THE WITNESS:  Yes, it does misstate my | 16:58:42 |
| 4 | testimony. | 16:58:44 |
| 5 | BY MR. PETROCELLI: | 16:58:44 |
| 6 | Q.  How does it misstate your testimony? | 16:58:45 |
| 7 | A.  The only -- the only thing that I knew at | 16:58:46 |
| 8 | the time that my mother contacted Joanne -- | 16:58:49 |
| 9 | Q.  Correct. | 16:58:51 |
| 10 | A.  -- was that they were not happy with their | 16:58:51 |
| 11 | attorney and she recommended Marc Toberoff.  And | 16:58:54 |
| 12 | that's the only thing that I knew from them at that | 16:58:57 |
| 13 | time. | 16:59:00 |
| 14 | Q.  Well, that's not what you testified to, but | 16:59:00 |
| 15 | let me -- let me go over this again. | 16:59:03 |
| 16 | Are -- are you saying that your mother had | 16:59:04 |
| 17 | a phone call with Joanne Siegel after you and she | 16:59:08 |
| 18 | signed Exhibit 10 in November 2001 and in that phone | 16:59:14 |
| 19 | call Joanne Siegel says, "I'm not happy with my | 16:59:21 |
| 20 | attorney" and your mother says, "Oh, let me | 16:59:24 |
| 21 | introduce you to Marc Toberoff"?  And that occurs in | 16:59:27 |
| 22 | a conversation after November 2001? | 16:59:31 |
| 23 | A.  Yes. | 16:59:34 |
| 24 | Q.  All in one conversation? | 16:59:36 |
| 25 | A.  I don't know about that. | 16:59:39 |

Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

EXHIBIT 37
1364

MARK WARREN PEARY - 6/29/2011

Page 263

| | | |
|---|---|---|
| 1 | Q.  Okay.  And other than that, you had no | 16:59:46 |
| 2 | other contact with the Siegels prior to the time | 16:59:49 |
| 3 | that they hired Mr. Toberoff?  You said that | 16:59:52 |
| 4 | already, correct? | 16:59:57 |
| 5 | A.  Phone contact? | 17:00:00 |
| 6 | Q.  Any contact. | 17:00:01 |
| 7 | A.  I -- | 17:00:02 |
| 8 | Q.  2001, all the way through 2002 up to the | 17:00:03 |
| 9 | time they hired Mr. Toberoff? | 17:00:07 |
| 10 | A.  I -- I don't know if I had no phone contact | 17:00:08 |
| 11 | at all.  I don't remember.  I don't remember that. | 17:00:12 |
| 12 | Q.  Did you have any contact with him during | 17:00:18 |
| 13 | that time period from the moment your mom made that | 17:00:19 |
| 14 | phone call until the time that they hired | 17:00:22 |
| 15 | Mr. Toberoff? | 17:00:24 |
| 16 | A.  I -- I don't -- I do not remember. | 17:00:24 |
| 17 | Q.  Okay.  And did your mother have any contact | 17:00:26 |
| 18 | with him during that year, from the time that she | 17:00:28 |
| 19 | made that first phone call until the time they hired | 17:00:35 |
| 20 | Mr. Toberoff sometime in September or October 2002? | 17:00:38 |
| 21 | A.  I -- I don't know if there was any. | 17:00:41 |
| 22 | MR. TOBEROFF:  Assumes facts.  Lacks | 17:00:43 |
| 23 | foundation. | 17:00:44 |
| 24 | BY MR. PETROCELLI: | 17:00:44 |
| 25 | Q.  Okay.  You don't know, right? | 17:00:45 |

EXHIBIT 37
1365

MARK WARREN PEARY - 6/29/2011

Page 264

| | | |
|---|---|---|
| 1 | A.  I don't know if there was any subsequent | 17:00:46 |
| 2 | phone call. | 17:00:49 |
| 3 | Q.  So where are you getting the information? | 17:00:49 |
| 4 | Other than from Mr. Toberoff, where did you get the | 17:00:51 |
| 5 | information that they broke off talks and the | 17:00:53 |
| 6 | Gestapo letter and all this kind of stuff?  Where | 17:00:56 |
| 7 | did that come from? | 17:00:59 |
| 8 | A.  Well, in the present, I have gotten much of | 17:01:01 |
| 9 | this from my discussions with Marc Toberoff. | 17:01:04 |
| 10 | Q.  Okay. | 17:01:08 |
| 11 | MR. TOBEROFF:  Don't talk about your | 17:01:09 |
| 12 | discussions with me. | 17:01:11 |
| 13 | BY MR. PETROCELLI: | 17:01:11 |
| 14 | Q.  So the reason why you know that these | 17:01:12 |
| 15 | statements in here are untrue is what Marc Toberoff | 17:01:13 |
| 16 | has told you? | 17:01:15 |
| 17 | A.  And -- and there has been -- there has been | 17:01:16 |
| 18 | contact with the -- the Siegels. | 17:01:20 |
| 19 | Q.  Tell me about it.  When? | 17:01:24 |
| 20 | A.  I -- I don't know.  They call every now and | 17:01:27 |
| 21 | then to wish Merry Christmas and happy birthday | 17:01:30 |
| 22 | and -- and usually my mother has talked with them | 17:01:36 |
| 23 | and she has become aware of their situation in | 17:01:39 |
| 24 | casual conversation. | 17:01:43 |
| 25 | Q.  This is what your mother has told you? | 17:01:47 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1366

MARK WARREN PEARY - 6/29/2011

Page 265

```
 1        A.   Yes.                                        17:01:49

 2        Q.   Okay.  And -- and in casual conversation    17:01:50

 3   they said I wrote a Gestapo letter?                   17:01:55

 4        A.   I don't know if they -- they discussed that 17:01:59

 5   particular thing.                                     17:02:02

 6        Q.   So here's what I'm trying to find out from  17:02:02

 7   you, because this is how we got on to this subject:   17:02:05

 8   What -- what information do you have that any of       17:02:12

 9   this is untrue, other than what Marc Toberoff has     17:02:16

10   told you?  I don't -- for the purpose of this         17:02:16

11   question, I am not interested in what Marc Toberoff   17:02:18

12   told you.                                             17:02:21

13        MR. TOBEROFF:  And I'm instructing you not       17:02:22

14   to answer as to what I've told you.                   17:02:24

15        THE WITNESS:  Okay.  You're instructing me       17:02:29

16   not to answer?                                        17:02:32

17        MR. TOBEROFF:  No.  You can answer the           17:02:33

18   question, but don't answer if you can as to -- don't  17:02:34

19   answer based on our conversations.  So you've         17:02:41

20   testified to a Gestapo letter.  If you have a basis   17:02:45

21   other than conversations with me that you can         17:02:49

22   recollect, you can discuss that with him.  That's     17:02:51

23   what he was asking you.                               17:02:53

24        THE WITNESS:  Uh-huh.                            17:02:54

25   BY MR. PETROCELLI:                                    17:02:54
```

EXHIBIT 37
1367

MARK WARREN PEARY - 6/29/2011

Page 266

```
 1        Q.  Tell me what you know to be untrue based on      17:02:57
 2   information that you have obtained from people other      17:03:00
 3   than Marc Toberoff.                                       17:03:03
 4        A.  Well, I know there are things to be untrue       17:03:04
 5   that are -- are based on my discussions with Marc         17:03:06
 6   Toberoff.                                                 17:03:12
 7        Q.  And I'm not asking you about that.               17:03:12
 8        A.  Okay.  I guess I can't say it then.              17:03:14
 9        Q.  Okay.                                            17:03:16
10        MR. TOBEROFF:  Well, you can -- you can              17:03:17
11   look at the letter and you -- you have to --              17:03:18
12        MR. PETROCELLI:  We don't have to spend any          17:03:20
13   more time on it if that's your answer.                    17:03:21
14        MR. TOBEROFF:  No.                                   17:03:21
15        MR. PETROCELLI:  But if you want to read             17:03:24
16   through it, you tell me if there's anything that you      17:03:26
17   know to be untrue based on something other than Marc      17:03:28
18   Toberoff telling you.                                     17:03:33
19        MR. TOBEROFF:  And what I'm suggesting to            17:03:34
20   you is that --                                            17:03:36
21        MR. PETROCELLI:  Now, what is it you're              17:03:37
22   pointing out to him?  You're not allowed to do that.      17:03:38
23        MR. TOBEROFF:  He is pointing out a                  17:03:41
24   paragraph.                                                17:03:42
25        You can take this thing from the very               17:03:43
```

EXHIBIT 37
1368

MARK WARREN PEARY - 6/29/2011

Page 267

| | | |
|---|---|---|
| 1 | beginning -- wait -- since he's asked the question, | 17:03:44 |
| 2 | this document is several pages long, it's goes on | 17:03:47 |
| 3 | for seven pages.  Read every single line and answer | 17:03:53 |
| 4 | when you reach something that you believe is untrue | 17:03:59 |
| 5 | and you can talk about it because it's not based on | 17:04:02 |
| 6 | conversations with me, you can tell Mr. Petrocelli | 17:04:05 |
| 7 | what you believe is untrue, if anything, and why. | 17:04:10 |
| 8 | That's it. | 17:04:13 |
| 9 | And take your time because it's his | 17:04:14 |
| 10 | deposition and you can -- you need to spend the time | 17:04:17 |
| 11 | to answer the question properly.  It's a very | 17:04:21 |
| 12 | time-consuming assignment. | 17:04:23 |
| 13 | BY MR. PETROCELLI: | 17:04:23 |
| 14 | Q.  What paragraph did you just point out to | 17:04:25 |
| 15 | Mr. Toberoff? | 17:04:27 |
| 16 | MR. TOBEROFF:  You can answer that. | 17:04:29 |
| 17 | THE WITNESS:  The one on -- referencing | 17:04:30 |
| 18 | October 27, 2003. | 17:04:36 |
| 19 | BY MR. PETROCELLI: | 17:04:36 |
| 20 | Q.  What page is that on? | 17:04:40 |
| 21 | A.  5. | 17:04:41 |
| 22 | Q.  Okay.  Tell me about that paragraph. | 17:04:45 |
| 23 | Why -- why were you pointing it out? | 17:04:46 |
| 24 | A.  It completely mischaracterizes the current | 17:04:53 |
| 25 | legal agreement -- | 17:04:57 |

EXHIBIT 37
1369

MARK WARREN PEARY - 6/29/2011

Page 268

| | | |
|---|---|---|
| 1 | Q.  How so? | 17:05:00 |
| 2 | A.  -- that we have. | 17:05:00 |
| 3 | Q.  How does it mischaracterize it? | 17:05:02 |
| 4 | THE WITNESS:  Can I go into that? | 17:05:05 |
| 5 | BY MR. PETROCELLI: | 17:05:05 |
| 6 | Q.  Well, again, this is based on -- this is | 17:05:09 |
| 7 | based on what you know, not based on what Marc | 17:05:11 |
| 8 | Toberoff told you.  So that's -- that's what you're | 17:05:15 |
| 9 | answering. | 17:05:19 |
| 10 | MR. TOBEROFF:  You can't go -- what are you | 17:05:21 |
| 11 | talking about?  Can you go into the details of our | 17:05:23 |
| 12 | retainer agreement? | 17:05:26 |
| 13 | THE WITNESS:  Why this is false. | 17:05:27 |
| 14 | MR. TOBEROFF:  Let me read it. | 17:05:31 |
| 15 | MR. PETROCELLI:  Do you have to change the | 17:05:57 |
| 16 | videotape? | 17:05:59 |
| 17 | THE VIDEOGRAPHER:  I do.  You have | 17:05:59 |
| 18 | approximately a minute or a little bit more. | 17:06:00 |
| 19 | MR. PETROCELLI:  Okay. | 17:06:02 |
| 20 | MR. TOBEROFF:  Yes.  Are you talking about | 17:06:04 |
| 21 | the highlighted portion? | 17:06:04 |
| 22 | THE WITNESS:  Yes. | 17:06:06 |
| 23 | MR. TOBEROFF:  Yes, you can -- you can -- | 17:06:07 |
| 24 | you can answer that. | 17:06:09 |
| 25 | THE WITNESS:  Okay. | 17:06:12 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1370

MARK WARREN PEARY - 6/29/2011

Page 269

| | | |
|---|---|---|
| 1 | MR. PETROCELLI: Well, we're going to have | 17:06:14 |
| 2 | to change the videotape right now. | 17:06:15 |
| 3 | THE WITNESS: Oh. | 17:06:16 |
| 4 | THE VIDEOGRAPHER: Okay. This will mark | 17:06:17 |
| 5 | the end of Volume I, Tape Number 3 in the deposition | 17:06:19 |
| 6 | of Mark Warren Peary. Changing tapes at 5:05. | 17:06:21 |
| 7 | (Brief recess.) | 17:06:26 |
| 8 | THE VIDEOGRAPHER: We are back on the | 17:18:26 |
| 9 | record and this marks the beginning of Volume I, | 17:18:33 |
| 10 | Tape Number 4 in the deposition of Mark Warren | 17:18:36 |
| 11 | Peary. The time is 5:17. | 17:18:39 |
| 12 | BY MR. PETROCELLI: | 17:18:39 |
| 13 | Q. You were going to tell me what was | 17:18:44 |
| 14 | inaccurate about the October 27, 2003 reference in | 17:18:46 |
| 15 | the timeline document, Exhibit 25. | 17:18:51 |
| 16 | A. Yes. | 17:18:54 |
| 17 | Q. Without telling me about your conversations | 17:18:57 |
| 18 | with Mr. Toberoff on that subject. | 17:18:59 |
| 19 | A. Yes. The -- the new legal retainer | 17:19:00 |
| 20 | completely superseded all the old agreements with | 17:19:08 |
| 21 | Pacific Pictures and canceled those out completely | 17:19:12 |
| 22 | and so this completely mischaracterizes his interest | 17:19:18 |
| 23 | in -- in any proceeds. | 17:19:23 |
| 24 | Q. We'll talk about that when we get to it. | 17:19:31 |
| 25 | Anything else? | 17:19:33 |

Merrill Corporation - Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1371

MARK WARREN PEARY - 6/29/2011

Page 270

| | | |
|---|---|---|
| 1 | A.   There -- there are probably lots of things | 17:19:35 |
| 2 | if I had a lot of time to study it.  It's full of | 17:19:39 |
| 3 | inaccuracies and mischaracterizations.  Just -- I | 17:19:42 |
| 4 | would just say in -- in general that Marc Toberoff | 17:19:50 |
| 5 | is -- is probably one of the hardest-working -- | 17:19:59 |
| 6 | Q.   That's not what I'm asking you. | 17:20:02 |
| 7 | A.   -- dedicated lawyers. | 17:20:04 |
| 8 | MR. PETROCELLI:  Move to strike.  It's | 17:20:05 |
| 9 | non-responsive. | 17:20:06 |
| 10 | MR. TOBEROFF:  Let him answer. | 17:20:08 |
| 11 | MR. PETROCELLI:  We're not -- we're not -- | 17:20:09 |
| 12 | we're not doing that. | 17:20:10 |
| 13 | MR. TOBEROFF:  And this mischaracterizes -- | 17:20:11 |
| 14 | MR. PETROCELLI:  Not on my -- | 17:20:13 |
| 15 | Q.   I was asking you about if there were any | 17:20:14 |
| 16 | other particular statements in here that you want to | 17:20:16 |
| 17 | point out. | 17:20:17 |
| 18 | MR. TOBEROFF:  He is answering you.  You | 17:20:17 |
| 19 | cut off his answer because you didn't want to hear | 17:20:19 |
| 20 | it. | 17:20:21 |
| 21 | MR. PETROCELLI:  No, I'm asking about | 17:20:21 |
| 22 | specific statements in here. | 17:20:22 |
| 23 | MR. TOBEROFF:  He's answering.  Objection. | 17:20:24 |
| 24 | You need to let the witness answer. | 17:20:29 |
| 25 | BY MR. PETROCELLI: | 17:20:29 |

EXHIBIT 37
1372

MARK WARREN PEARY - 6/29/2011

Page 271

| | | |
|---|---|---|
| 1 | Q.   Let me ask you a question about the last -- | 17:20:40 |
| 2 | right after that paragraph you pointed out to me it | 17:20:43 |
| 3 | says: | 17:20:46 |
| 4 | "MT inquires into the legality | 17:20:50 |
| 5 | of entering into the Pacific | 17:20:51 |
| 6 | Pictures Corporation agreement with | 17:20:54 |
| 7 | the Peavys, heirs to Shuster | 17:20:54 |
| 8 | estate, using the law firm | 17:20:59 |
| 9 | Armstrong Hirsch Jackoway Tyerman & | 17:21:00 |
| 10 | Wertheimer." | 17:21:02 |
| 11 | Did Mr. Toberoff discuss with you that he | 17:21:06 |
| 12 | had obtained legal advice from the Armstrong Hirsch | 17:21:11 |
| 13 | firm on the subject of the legality of your | 17:21:17 |
| 14 | agreement? | 17:21:19 |
| 15 | MR. TOBEROFF:   Instruct you not to answer | 17:21:19 |
| 16 | as to the substance of our discussions. | 17:21:21 |
| 17 | (Unanswered question.) | 17:21:24 |
| 18 | BY MR. PETROCELLI: | 17:21:24 |
| 19 | Q.   Have you seen a -- any opinion or memoranda | 17:21:25 |
| 20 | from the Armstrong Hirsch firm on the subject of | 17:21:31 |
| 21 | your agreement? | 17:21:35 |
| 22 | A.   No. | 17:21:38 |
| 23 | Q.   Have you spoken to anyone other than | 17:21:40 |
| 24 | Mr. Toberoff on the subject of the validity or | 17:21:42 |
| 25 | legality of your Pacific Pictures agreements? | 17:21:47 |

EXHIBIT 37
1373

MARK WARREN PEARY - 6/29/2011

Page 272

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  Asked and answered. | 17:21:49 |
| 2 | You can answer again. | 17:21:50 |
| 3 | THE WITNESS:  No. | 17:21:51 |
| 4 | BY MR. PETROCELLI: | 17:21:51 |
| 5 | Q.  Okay.  Put this document aside in the | 17:21:52 |
| 6 | interest of time. | 17:21:56 |
| 7 | MR. TOBEROFF:  So you're not interested in | 17:21:58 |
| 8 | him finishing his answer about what's incorrect | 17:21:59 |
| 9 | about this document? | 17:22:02 |
| 10 | MR. PETROCELLI:  I'm going to have to come | 17:22:03 |
| 11 | back to it if I have time, but since I'm working on | 17:22:04 |
| 12 | a budget right here, I got to make better use of my | 17:22:08 |
| 13 | time. | 17:22:10 |
| 14 | Q.  Now, in 2003 you -- you became the executor | 17:22:22 |
| 15 | of the Joe Shuster estate, correct? | 17:22:31 |
| 16 | A.  Yes. | 17:22:31 |
| 17 | Q.  And did your mother indicate that she was | 17:22:35 |
| 18 | unwilling to serve? | 17:22:37 |
| 19 | A.  We had no such discussion. | 17:22:41 |
| 20 | Q.  Well, did she say why wasn't she named the | 17:22:47 |
| 21 | executor of the estate pursuant to the will? | 17:22:50 |
| 22 | A.  I'm the one that has initiated the whole -- | 17:22:55 |
| 23 | the whole project.  I've been involved in it with | 17:23:02 |
| 24 | Marc Toberoff from the beginning and I'm active and | 17:23:06 |
| 25 | knowledgeable on it. | 17:23:12 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1374

MARK WARREN PEARY - 6/29/2011

Page 273

| | | |
|---|---|---|
| 1 | Q.  You never had any discussion that your | 17:23:15 |
| 2 | mother was unable or unwilling to serve as executor. | 17:23:16 |
| 3 | Is that correct? | 17:23:22 |
| 4 | A.  Right. | 17:23:22 |
| 5 | Q.  Take a look at Exhibit 12, which is a | 17:23:23 |
| 6 | collection of papers from the probate proceeding. | 17:23:29 |
| 7 | (The document referred to was | 17:23:42 |
| 8 | marked for identification by the | 17:23:42 |
| 9 | C.S.R. as Exhibit 12 and attached | 17:23:42 |
| 10 | to this deposition.) | 17:23:43 |
| 11 | BY MR. PETROCELLI: | 17:23:43 |
| 12 | Q.  Now, you'll see your signature, | 17:23:44 |
| 13 | September 30, 2003, Mark Warren Peary -- | 17:23:49 |
| 14 | A.  Okay. | 17:23:53 |
| 15 | Q.  -- on the first page. | 17:23:54 |
| 16 | Do you see that? | 17:23:57 |
| 17 | A.  Yes. | 17:23:58 |
| 18 | Q.  Do you see your signature on the second | 17:23:59 |
| 19 | page? | 17:24:00 |
| 20 | A.  Yes. | 17:24:00 |
| 21 | Q.  These applications for the administration | 17:24:01 |
| 22 | of the estate? | 17:24:04 |
| 23 | A.  Yes. | 17:24:05 |
| 24 | Q.  Do you see your signature there under the | 17:24:06 |
| 25 | date September 30, 2003? | 17:24:08 |

Merrill  Corporation  -  Los Angeles
800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1375

MARK WARREN PEARY - 6/29/2011

Page 274

1       A.  Yes.                                             17:24:09

2       Q.  Now, if we go to the next page we have a         17:24:12

3  proof of subscribing witness, Tom Fenaughty,              17:24:14

4  F-e-n-a-u-g-h-t-y, the same person who witnessed Joe      17:24:20

5  Shuster's will.                                           17:24:22

6           Do you see that?  It's on page 3.                17:24:27

7       A.  Oh, 3.                                           17:24:28

8       Q.  Did you have any contact with him, put him       17:24:30

9  in touch with your lawyer?                                17:24:36

10      A.  I didn't have personal contact.                  17:24:45

11      Q.  John Pettker is the name of the probate          17:24:46

12 attorney that was retained to do this work on behalf      17:24:49

13 of the Shuster estate?                                    17:24:51

14      A.  Yes.                                             17:24:52

15      Q.  Did you -- did you understand that he was        17:24:53

16 reaching out to Mr. Fenaughty?                            17:24:55

17      A.  I -- I wasn't aware.                             17:24:58

18      Q.  Okay.  Just flipping through to page -- go       17:25:06

19 to the page that's -- Jason, can you -- can you help      17:25:22

20 him find these pages because they're not marked.  Go      17:25:28

21 get this page for him.  At the top it says, "In the       17:25:32

22 matter of the estate of Joseph Shuster, decedent.         17:25:34

23 Attachment 2D1," et cetera, et cetera.                    17:25:38

24          Do you have that page in front of you?           17:25:57

25      MR. TOBEROFF:  Just a second.  I need to             17:26:00

EXHIBIT 37
1376

MARK WARREN PEARY - 6/29/2011

Page 275

1    get it, too.                                              17:26:02

2          MR. KLINE:  It's toward the back.                  17:26:13

3    BY MR. PETROCELLI:                                        17:26:13

4          Q.  While he's looking for that, do you have       17:26:17

5    that page in front of you, sir?                           17:26:21

6          A.  Yes.                                            17:26:23

7          Q.  Okay.  And you'll see that it's an             17:26:23

8    attachment to a -- if you go two pages earlier, it's     17:26:26

9    a petition for probate and this is an attachment to      17:26:29

10   it that you signed on July 15, 2003, correct?            17:26:34

11         A.  Yes.                                            17:26:34

12         Q.  Okay.  And that's your signature above the     17:26:40

13   name Mark -- Mark Warren Peary, right?                   17:26:42

14         MR. TOBEROFF:  He is referring to this             17:26:45

15   document.  You're looking at this document.  He is       17:26:46

16   asking you about this.                                   17:26:48

17         THE WITNESS:  Uh-huh.                              17:26:49

18   BY MR. PETROCELLI:                                        17:26:49

19         Q.  Okay.  Do you have that in front of you        17:26:50

20   now, the right document?                                 17:26:52

21         A.  Yes.                                            17:26:53

22         Q.  Do you see that that's an attachment to a      17:26:56

23   petition that appears two pages earlier in the           17:26:58

24   stack?  I think that's why -- you're looking at the      17:27:02

25   right document.                                          17:27:04

EXHIBIT 37
1377

MARK WARREN PEARY - 6/29/2011

Page 276

1    A.  I was looking at this petition.                    17:27:05

2    Q.  Yes, you were.  Okay.  Now, go back to the         17:27:07

3    attachment that bears your signature and the date      17:27:09

4    July 15, 2003.  And this, for the record, this is      17:27:10

5    all part of Exhibit 12.                                17:27:14

6        Now, look at paragraph 1.  It says that            17:27:16

7    second sentence, "Jean Adele Peavy" -- that's your     17:27:22

8    mother, right?                                          17:27:26

9    A.  Yes.                                                17:27:26

10   Q.  "Jean Adele Peavy who is the                        17:27:27

11       sister of the decedent is also                      17:27:29

12       the sole beneficiary under the                      17:27:30

13       decedent's will and the sole heir                   17:27:32

14       at law of the decedent's estate                     17:27:35

15       under the laws of intestacy."                       17:27:38

16       Do you see that?                                    17:27:40

17   A.  Yes.                                                17:27:41

18   Q.  And you signed this statement indicating           17:27:41

19   that that was a truthful statement, correct?           17:27:45

20   A.  Yes.                                                17:27:48

21   Q.  That was not a truthful statement, though,         17:27:48

22   correct?  Because under the laws of intestacy, your    17:27:56

23   mother, Jean Adele Peavy, was not the sole heir at     17:28:00

24   law.  Under the laws of intestacy, she and Frank       17:28:03

25   Shuster were the heirs at law?                         17:28:10

Merrill  Corporation  -  Los Angeles

EXHIBIT 37
1378

MARK WARREN PEARY - 6/29/2011

Page 277

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  Calls for a legal | 17:28:11 |
| 2 | conclusion.  You're asking him to -- to -- this is | 17:28:12 |
| 3 | something -- | 17:28:15 |
| 4 | BY MR. PETROCELLI: | 17:28:15 |
| 5 | Q.  Is that correct? | 17:28:16 |
| 6 | MR. TOBEROFF:  You can only answer if | 17:28:18 |
| 7 | you -- | 17:28:19 |
| 8 | BY MR. PETROCELLI: | 17:28:19 |
| 9 | Q.  At the time that -- | 17:28:19 |
| 10 | MR. TOBEROFF:  -- if you feel equipped to | 17:28:20 |
| 11 | answer these questions, you can answer. | 17:28:22 |
| 12 | MR. PETROCELLI:  You don't have to tell him | 17:28:23 |
| 13 | not to answer, Marc. | 17:28:25 |
| 14 | MR. TOBEROFF:  I'm not telling him not to | 17:28:26 |
| 15 | answer.  I'm advising him only answer to the extent | 17:28:27 |
| 16 | you feel equipped to answer.  He is going into legal | 17:28:30 |
| 17 | territory -- | 17:28:30 |
| 18 | MR. PETROCELLI:  That's true of all | 17:28:34 |
| 19 | questions. | 17:28:35 |
| 20 | MR. TOBEROFF:  -- I'm not sure I even | 17:28:35 |
| 21 | understand because I'm not a trust and estates | 17:28:37 |
| 22 | lawyer. | 17:28:40 |
| 23 | BY MR. PETROCELLI: | 17:28:40 |
| 24 | Q.  When Joe Shuster died he had two siblings | 17:28:41 |
| 25 | who survived him, correct, Jean and Frank? | 17:28:44 |

MARK WARREN PEARY - 6/29/2011

Page 278

1       A.  Yes.                                              17:28:47

2       Q.  Okay.  Why did you write here that Jean          17:28:47

3   would have been the sole heir at law under the laws      17:28:54

4   of intestacy?                                            17:28:57

5           MR. TOBEROFF:  Misstates the record.             17:28:59

6   BY MR. PETROCELLI:                                       17:28:59

7       Q.  Do you know what that means, "under the          17:29:04

8   laws of intestacy"?                                      17:29:05

9       A.  Please explain.                                  17:29:07

10      Q.  It means that if you had died without a          17:29:08

11  will based on the statutory laws of -- of               17:29:13

12  disposition --                                           17:29:15

13      A.  Uh-huh.                                           17:29:18

14      Q.  -- and are you aware that under those --         17:29:18

15  those laws that Jean was not the sole heir, but was     17:29:20

16  one of two heirs?                                        17:29:25

17      A.  All I know is that she -- she had a will.        17:29:29

18  That's all I'm aware of.                                 17:29:36

19      Q.  Who prepared this document?                      17:29:38

20      A.  I am not certain.                                17:29:39

21      Q.  What did you do to assure yourself that the      17:29:41

22  statements were truthful before you made them to the    17:29:44

23  court?                                                   17:29:47

24      A.  I trusted the estate attorneys.                  17:29:47

25      Q.  Did you understand that this was a serious       17:29:54

EXHIBIT 37
1380

MARK WARREN PEARY - 6/29/2011

Page 279

1   matter, that you're making a filing with a court                    17:29:56

2   representing that Ms. -- that your mother was the                   17:29:58

3   sole heir at law because you did not have an                        17:30:03

4   original will, you had a copy and you were                          17:30:07

5   representing to the court that it should accept the                 17:30:11

6   copy because even if no will existed she would still                17:30:14

7   be the sole heir?  You understood that was the                      17:30:16

8   purpose of this filing?                                             17:30:19

9        A.  Frank Shuster was dead at that time.                       17:30:22

10  That's my understanding of it.                                      17:30:26

11       Q.  But you understood that when Joe died Frank                17:30:30

12  was alive, as well as your mother, correct?                         17:30:32

13       A.  At that time.                                              17:30:35

14       Q.  Did Joe have -- did Frank have a will?                     17:30:36

15       A.  I believe so.                                              17:30:38

16       Q.  Do you know so?                                            17:30:44

17       A.  I -- I can't -- I can't say with certainty.               17:30:46

18       Q.  Did you understand that you were making a                  17:30:55

19  filing with the court in that it was your obligation               17:30:57

20  to provide the court with accurate information?                     17:31:00

21            MR. TOBEROFF:  You can answer that.                       17:31:07

22            THE WITNESS:  Yes.                                        17:31:11

23  BY MR. PETROCELLI:                                                  17:31:11

24       Q.  Turn the page.  In the next attachment to                 17:31:13

25  the probate petition that you filed, it said:                      17:31:18

EXHIBIT 37
1381

MARK WARREN PEARY - 6/29/2011

Page 280

| | | |
|---|---|---|
| 1 | "The decedent never married | 17:31:22 |
| 2 | and never had any issue." | 17:31:24 |
| 3 | That also is false? | 17:31:27 |
| 4 | A.  It was a mistake. | 17:31:30 |
| 5 | Q.  Why -- why did you allow this to be filed | 17:31:34 |
| 6 | and why did you sign it if it was untrue? | 17:31:36 |
| 7 | A.  It was simply a mistake. | 17:31:42 |
| 8 | Q.  Did you scan this or did you read this? | 17:31:44 |
| 9 | A.  I -- I don't know. | 17:31:54 |
| 10 | Q.  And go to the one, two, three, four, fifth | 17:31:57 |
| 11 | page from the -- from the end, document called | 17:32:05 |
| 12 | "Declination to Act As Personal Representative" | 17:32:08 |
| 13 | signed by Jean Peavy. | 17:32:11 |
| 14 | And this document's signed in the same date | 17:32:19 |
| 15 | that you signed the document we just looked at. | 17:32:21 |
| 16 | Your mom is -- is declining to serve as personal | 17:32:24 |
| 17 | representative of Joe Shuster's estate as indicated | 17:32:30 |
| 18 | in paragraph 3. | 17:32:35 |
| 19 | Do you see that? | 17:32:35 |
| 20 | A.  Yes. | 17:32:35 |
| 21 | Q.  Do you have any understanding why she so | 17:32:39 |
| 22 | declined? | 17:32:41 |
| 23 | A.  She didn't want to be bothered with this. | 17:32:46 |
| 24 | Q.  Is that what she told you? | 17:32:49 |
| 25 | A.  To that effect. | 17:32:51 |

MARK WARREN PEARY - 6/29/2011

Page 281

```
1         Q.  "I don't want to be bothered with this."     17:32:52

2    What does that mean?                                   17:32:54

3         A.  She wants me to handle these affairs.         17:32:58

4         Q.  In paragraph 1 it says:                       17:33:00

5              "I am the only sibling of                    17:33:01

6         the decedent Joseph Shuster."                     17:33:03

7              Do you see that?                             17:33:03

8         A.  At the time, that's true.                     17:33:06

9         Q.  She wasn't the only sibling.  Joe Shuster     17:33:09

10   had two siblings, correct?                             17:33:11

11        A.  Yes.                                          17:33:13

12        Q.  She was the only living sibling?              17:33:13

13        A.  Yes.                                          17:33:15

14        Q.  Did Frank have any family of his own?         17:33:27

15        A.  No.                                           17:33:29

16        Q.  Is there any reason that you can think of     17:33:41

17   why all these mistakes were made in these documents?   17:33:43

18        MR. TOBEROFF:  Assumes facts.  Lacks              17:33:52

19   foundation.                                            17:33:54

20        THE WITNESS:  I'm not sure.                       17:33:54

21   BY MR. PETROCELLI:                                     17:33:54

22        Q.  There seems to have been an effort not to     17:33:56

23   identify the existence of either Joe Shuster's wife    17:33:58

24   or Frank Shuster, Joe Shuster's brother?              17:34:02

25        MR. TOBEROFF:  Misstates the document.            17:34:07
```

MARK WARREN PEARY - 6/29/2011

Page 282

1    BY MR. PETROCELLI:                                    17:34:07

2        Q.  Were you attempting to repre- -- represent   17:34:09

3    to the court that only you and your mother were the  17:34:11

4    sole interested parties in Joe Shuster's estate?     17:34:17

5        A.  Well, at this time, that's correct.          17:34:19

6        Q.  Did you -- but did you make a decision not   17:34:23

7    to disclose to the court that he had been married    17:34:26

8    and that he had a brother and let the court sort out 17:34:32

9    whether there were any interests there?              17:34:32

10       A.  No.                                           17:34:32

11       Q.  You just signed the documents that the       17:34:34

12   lawyers put in front of you without reading them     17:34:37

13   carefully?                                            17:34:39

14       A.  I -- I signed the -- I read the documents,   17:34:39

15   what required signatures.                             17:34:45

16       Q.  The purpose of your becoming the executor    17:34:47

17   of the estate was to be able to serve the            17:34:50

18   termination notice, correct?                          17:34:52

19       A.  Yes.                                          17:34:52

20       Q.  Can you take a look at the next exhibit,     17:34:55

21   Exhibit 13.                                           17:34:57

22           Before I go to Exhibit 13, which is the      17:35:07

23   letter -- another agreement with Pacific Pictures    17:35:10

24   dated October 27, 2003, take a look at -- where is   17:35:13

25   the Superboy termination?  What exhibit number is    17:35:32

EXHIBIT 37
1384

MARK WARREN PEARY - 6/29/2011

Page 283

1      that?

2                    Take a look at Exhibit 11, please.                    17:35:34
                                                                            17:35:44
3                    Exhibit 11 is the notice of termination of            17:35:49

4      the grants regarding Superboy filed by Mr. Toberoff               17:35:54

5      on behalf of the Siegels.                                          17:36:00

6                    (The document referred to was                       17:36:00

7                    marked for identification by the                    17:36:00

8                    C.S.R. as Exhibit 11 and attached                   17:36:00

9                    to this deposition.)                                17:36:04

10                   MR. TOBEROFF:  This is Shuster 11?                   17:36:04

11                   MR. PETROCELLI:  Exhibit 11, right.                  17:36:08

12          Q.   After you entered into the November 2001                17:36:11

13     Pacific Pictures joint venture agreement, which                   17:36:14

14     mentioned that the rights included Superboy, did                  17:36:18

15     you -- you said you became aware at some point of                 17:36:24

16     that -- of some issue regarding Superboy.                         17:36:26

17                   Is that right?                                       17:36:26

18          A.   Yes.                                                     17:36:26

19          Q.   What did you become aware of?                            17:36:33

20          A.   That the Shuster estate doesn't have rights             17:36:34

21     to it.                                                             17:36:39

22          Q.   How did you learn that?                                 17:36:41

23          A.   Through my attorney, Marc Toberoff.                     17:36:43

24          Q.   Did you learn it from any other source?                17:36:45

25          A.   No.                                                      17:36:47

MARK WARREN PEARY - 6/29/2011

Page 284

1       Q.   Did you do any work to verify it?  Did you          17:36:49

2  contact any other counsel?                                    17:36:54

3       A.   No.                                                 17:36:55

4       Q.   Did you get a second opinion from anybody?          17:36:56

5       A.   No.                                                 17:36:58

6       Q.   Okay.  Did you do any independent review to         17:37:02

7  determine whether Mr. Toberoff was correct?                   17:37:07

8       A.   I -- I did some research on my own.                 17:37:12

9       Q.   After he told you?                                  17:37:17

10      A.   I believe.                                          17:37:19

11      Q.   What research did you do?                           17:37:20

12      A.   There was a 1947 case where the courts             17:37:23

13  awarded Superboy to Jerry Siegel.                            17:37:28

14      Q.   Mr. Toberoff pointed that out to you,               17:37:31

15  correct?                                                     17:37:31

16      A.   Well, I became aware of that --                    17:37:33

17      Q.   He --                                               17:37:34

18      A.   -- and that's correct.                             17:37:35

19      Q.   He pointed it out to you, correct?                  17:37:36

20      A.   I was aware of that case prior to that.             17:37:37

21      Q.   Were you aware of that when you signed the          17:37:39

22  November 2001 joint venture agreement?                       17:37:43

23      A.   I don't know if I was aware of the legal            17:37:44

24  details.                                                     17:37:50

25      Q.   You were aware of the case?                         17:37:50

Merrill  Corporation  -  Los Angeles
800-826-0277                           www.merrillcorp.com/law

EXHIBIT 37
1386

MARK WARREN PEARY - 6/29/2011

Page 285

| | | |
|---|---|---|
| 1 | A.  I was aware of the case back to '47. | 17:37:51 |
| 2 | Q.  And you became aware of the legal details | 17:37:53 |
| 3 | as a result of conversations with Mr. Toberoff, | 17:37:55 |
| 4 | correct? | 17:37:55 |
| 5 | A.  Yes. | 17:37:59 |
| 6 | Q.  And then you became aware, so your -- you | 17:38:00 |
| 7 | accepted Mr. Toberoff's advice that the Shuster | 17:38:11 |
| 8 | estate had no interest in Superboy, correct? | 17:38:13 |
| 9 | A.  Yes. | 17:38:13 |
| 10 | Q.  Okay.  And you became aware around the same | 17:38:16 |
| 11 | time that the Siegels were claiming 100 percent | 17:38:20 |
| 12 | rights to Superboy, correct? | 17:38:27 |
| 13 | A.  I don't know exactly when I became aware of | 17:38:31 |
| 14 | it. | 17:38:34 |
| 15 | Q.  But you became aware of that, right? | 17:38:34 |
| 16 | A.  I did. | 17:38:36 |
| 17 | Q.  And you became aware of that at a time when | 17:38:36 |
| 18 | Mr. Toberoff was representing the Siegels, correct? | 17:38:41 |
| 19 | A.  Sometime in there. | 17:38:44 |
| 20 | Q.  Okay.  And Exhibit 11 is the Superboy | 17:38:46 |
| 21 | notice of termination that the Siegels filed at the | 17:38:50 |
| 22 | time that they were represented by Mr. Toberoff. | 17:38:57 |
| 23 | Did you see it at the time? | 17:39:00 |
| 24 | A.  No. | 17:39:01 |
| 25 | Q.  Okay.  Now, thereafter, you then entered | 17:39:04 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1387

MARK WARREN PEARY - 6/29/2011

Page 286

| | | |
|---|---|---|
| 1 | into an amendment to your joint venture agreement to | 17:39:09 |
| 2 | delete Superboy from the venture, correct? | 17:39:14 |
| 3 | A.  Yes. | 17:39:14 |
| 4 | Q.  And you did that? | 17:39:18 |
| 5 | MR. TOBEROFF:  Excuse me.  Excuse me. | 17:39:18 |
| 6 | BY MR. PETROCELLI: | 17:39:18 |
| 7 | Q.  Take a look at Exhibit 13. | 17:39:28 |
| 8 | (The document referred to was | 17:39:28 |
| 9 | marked for identification by the | 17:39:28 |
| 10 | C.S.R. as Exhibit 13 and attached | 17:39:28 |
| 11 | to this deposition.) | 17:39:32 |
| 12 | MR. TOBEROFF:  Okay. | 17:39:32 |
| 13 | BY MR. PETROCELLI: | 17:39:32 |
| 14 | Q.  Do you have that in front of you?  You can | 17:39:33 |
| 15 | put the other exhibits away. | 17:39:34 |
| 16 | MR. TOBEROFF:  You need to wait after he | 17:39:36 |
| 17 | asks a question before you answer, particularly when | 17:39:37 |
| 18 | he asks a leading question.  Wait, give me a chance | 17:39:40 |
| 19 | to object.  Okay? | 17:39:42 |
| 20 | So what's the question? | 17:39:49 |
| 21 | MR. PETROCELLI:  Does he have Exhibit 13 in | 17:39:50 |
| 22 | front of him, Marc? | 17:39:51 |
| 23 | THE WITNESS:  Yes. | 17:39:57 |
| 24 | BY MR. PETROCELLI: | 17:39:57 |
| 25 | Q.  Is that Exhibit 13?  Okay.  Can you push | 17:39:58 |

EXHIBIT 37
1388

MARK WARREN PEARY - 6/29/2011

Page 287

1    aside the other exhibits?  Thank you.  Okay.                    17:40:00

2          Can you take these exhibits and move those              17:40:06

3    over there so -- they're obstructing my view.  Thank           17:40:07

4    you.  And also the big thick one as well.                      17:40:14

5          Now, Exhibit 13 is dated October 27, 2003                17:40:20

6    directed to you as now the new executor of the                 17:40:28

7    estate, right?                                                 17:40:32

8        A.  Yes.                                                   17:40:32

9        Q.  Okay.  And if you go to the end, it is                 17:40:36

10   signed by you as executor on October 30, 2003,                 17:40:41

11   right?                                                         17:40:41

12       A.  Yes.                                                   17:40:41

13       Q.  And it's signed by Jean Peavy, your mother,            17:40:52

14   on the same date, correct?                                     17:40:58

15       A.  Yes.                                                   17:40:59

16       Q.  And it's signed by Mr. Toberoff as                     17:40:59

17   president of PPC, correct?                                     17:41:01

18       A.  Yes.                                                   17:41:06

19       Q.  Okay.  And you do see in paragraph 2 here              17:41:06

20   that it states PPC is not a law firm, right?                   17:41:10

21       A.  Yes.                                                   17:41:10

22       Q.  Okay.  And you understood that when you                17:41:17

23   signed it, right?                                              17:41:18

24       A.  Yes.                                                   17:41:21

25       Q.  And you -- and the first paragraph -- and              17:41:21

Merrill  Corporation  -  Los Angeles
800-826-0277
www.merrillcorp.com/law

EXHIBIT 37
1389

MARK WARREN PEARY - 6/29/2011

Page 288

| | | |
|---|---|---|
| 1 | you read this carefully before signing it and you | 17:41:24 |
| 2 | understood it when you signed it, right?  "It" being | 17:41:27 |
| 3 | Exhibit 13? | 17:41:31 |
| 4 | A.  Yes. | 17:41:32 |
| 5 | Q.  Okay.  And it states that this letter | 17:41:34 |
| 6 | was -- is intended to supplement your prior joint | 17:41:38 |
| 7 | venture agreement dated as of November 31, 2001, | 17:41:42 |
| 8 | right? | 17:41:42 |
| 9 | A.  Yes. | 17:41:42 |
| 10 | Q.  And in paragraph 1 it redefines the rights, | 17:41:50 |
| 11 | but this time excludes Superboy, correct? | 17:41:55 |
| 12 | MR. TOBEROFF:  Wait.  Just one second. | 17:42:01 |
| 13 | Objection.  You're mischaracterizing the | 17:42:12 |
| 14 | agreement. | 17:42:14 |
| 15 | BY MR. PETROCELLI: | 17:42:14 |
| 16 | Q.  Is that correct, sir?  There's no reference | 17:42:19 |
| 17 | to Superboy in paragraph 1, correct? | 17:42:26 |
| 18 | A.  I don't see it. | 17:42:28 |
| 19 | Q.  And there was in the first version, | 17:42:29 |
| 20 | correct? | 17:42:29 |
| 21 | A.  Yes. | 17:42:29 |
| 22 | Q.  And there's no reference -- | 17:42:32 |
| 23 | MR. TOBEROFF:  Excuse me.  I'd like to give | 17:42:33 |
| 24 | him the first version so he can compare the two. | 17:42:35 |
| 25 | BY MR. PETROCELLI: | 17:42:35 |

Merrill  Corporation  -  Los Angeles
800-826-0277
www.merrillcorp.com/law

EXHIBIT 37
1390

MARK WARREN PEARY - 6/29/2011

Page 289

| | | |
|---|---|---|
| 1 | Q. Do you have Exhibit -- what's the exhibit | 17:42:38 |
| 2 | number, Marc? | 17:42:41 |
| 3 | MR. TOBEROFF: 10. | 17:42:41 |
| 4 | BY MR. PETROCELLI: | 17:42:41 |
| 5 | Q. Do you have Exhibit 10 and you see the | 17:42:43 |
| 6 | reference to Superboy and Smallville? What | 17:42:44 |
| 7 | paragraph is it contained in Exhibit 10? | 17:42:47 |
| 8 | A. 1. | 17:42:49 |
| 9 | Q. And in paragraph 1 of Exhibit 13 there's no | 17:42:49 |
| 10 | reference to Superboy or Smallville. | 17:42:52 |
| 11 | Is that correct? | 17:42:52 |
| 12 | A. Yes. | 17:42:52 |
| 13 | Q. Okay. And that was the result of the | 17:42:57 |
| 14 | advice given to you that the Shuster estate had no | 17:43:00 |
| 15 | interest in Superboy? | 17:43:04 |
| 16 | MR. TOBEROFF: I instruct you not to answer | 17:43:05 |
| 17 | as to the advice given to you. You can't answer | 17:43:07 |
| 18 | that question. | 17:43:10 |
| 19 | (Unanswered question.) | 17:43:11 |
| 20 | BY MR. PETROCELLI: | 17:43:11 |
| 21 | Q. When you signed this, you understood that | 17:43:12 |
| 22 | Superboy was not part of the agreement, correct? | 17:43:13 |
| 23 | MR. TOBEROFF: Instruct you not to answer | 17:43:15 |
| 24 | to the extent your understanding is based on | 17:43:16 |
| 25 | conversations with me. | 17:43:18 |

MARK WARREN PEARY - 6/29/2011

Page 290

| | | |
|---|---|---|
| 1 | MR. PETROCELLI:  Come on.  You can't -- you | 17:43:19 |
| 2 | can't block all examination on this subject. | 17:43:21 |
| 3 | MR. TOBEROFF:  You shouldn't be surprised, | 17:43:23 |
| 4 | Mr. Petrocelli, after suing your opposing counsel | 17:43:25 |
| 5 | for six years.  You shouldn't be surprised. | 17:43:28 |
| 6 | MR. PETROCELLI:  For six years? | 17:43:30 |
| 7 | MR. TOBEROFF:  That's right.  You're DC. | 17:43:30 |
| 8 | Seven years. | 17:43:32 |
| 9 | MR. PETROCELLI:  I'm going to try and | 17:43:37 |
| 10 | follow that, but -- | 17:43:38 |
| 11 | MR. TOBEROFF:  In talking about -- excuse | 17:43:45 |
| 12 | me.  In talking about these agreements, if he is | 17:43:47 |
| 13 | comparing this agreement to this agreement, make | 17:43:49 |
| 14 | sure you read carefully what he is comparing it to | 17:43:52 |
| 15 | before you answer. | 17:43:55 |
| 16 | BY MR. PETROCELLI: | 17:43:55 |
| 17 | Q.  You can put aside paragraph -- excuse me, | 17:44:00 |
| 18 | the Exhibit 10.  I'm going to just focus on Exhibit | 17:44:03 |
| 19 | 13 because we've been through Exhibit 10 already. | 17:44:08 |
| 20 | When you signed -- when you as the executor | 17:44:10 |
| 21 | signed this supplement to your joint venture | 17:44:17 |
| 22 | agreement with your joint venture partner, Pacific | 17:44:21 |
| 23 | Pictures Corporation, you understood that you were | 17:44:28 |
| 24 | eliminating Superboy from the definition of rights | 17:44:30 |
| 25 | contained in paragraph 1, correct? | 17:44:34 |

EXHIBIT 37
1392

MARK WARREN PEARY - 6/29/2011

Page 291

1          MR. TOBEROFF:  He's asking you at the time          17:44:41

2    that you signed it, so you can only answer that          17:44:42

3    question what your understanding was at the time you          17:44:44

4    signed it.          17:44:49

5          THE WITNESS:  Yes.          17:44:49

6    BY MR. PETROCELLI:          17:44:49

7      Q.  Okay.  And in paragraph 4, you see that you          17:44:51

8    understood by virtue of your agreeing to paragraph 4          17:45:04

9    that on behalf of the Shuster estate you as executor          17:45:08

10   required the agreement of PPC, Pacific Pictures          17:45:13

11   Corporation, to enter into any agreement regarding          17:45:17

12   the Superman rights, correct?          17:45:19

13     A.  Yes.          17:45:19

14     Q.  And you understood in paragraph 7 that upon          17:45:23

15   the expiration of the term of this joint venture          17:45:31

16   agreement or in the event of a termination for any          17:45:34

17   reason, that the estate would hold 50 percent of the          17:45:40

18   rights and Pacific Pictures Corporation would hold          17:45:49

19   the remaining 50 percent as tenants in common,          17:45:54

20   correct?          17:45:54

21     A.  Yes.          17:45:54

22     Q.  Did you discuss with your mother the          17:46:04

23   elimination of Superboy from your joint venture          17:46:08

24   agreement?          17:46:11

25     A.  I don't remember a specific discussion.          17:46:18

EXHIBIT 37
1393

MARK WARREN PEARY - 6/29/2011

Page 292

1     Q.  Do you -- did you believe that that was an     17:46:24
2  important matter?                                      17:46:26
3     A.  Yes.                                            17:46:27
4     Q.  And you as the executor, you -- you            17:46:30
5  understood you had a fiduciary duty to your mother     17:46:34
6  in her role as the sole beneficiary, correct?         17:46:36
7     A.  Yes.                                            17:46:36
8     Q.  And you were signing an agreement              17:46:40
9  subtracting rights from the prior agreement,          17:46:48
10  correct?                                              17:46:48
11        MR. TOBEROFF:  Lacks foundation.  Assumes       17:46:53
12  facts.  Mischaracterizes the exhibit.                 17:46:55
13  BY MR. PETROCELLI:                                    17:46:55
14     Q.  In your capacity as the executor, the         17:47:01
15  court-appointed executor who applied for and          17:47:04
16  obtained the right of power to administer this        17:47:07
17  estate with respect to this issue, you understood     17:47:12
18  that in signing this document you were removing from  17:47:17
19  the estate any claim to the Superboy rights,          17:47:27
20  correct?                                              17:47:31
21     A.  Only with regard to this document.            17:47:35
22     Q.  Well, what other document were you            17:47:38
23  reserving it in?                                      17:47:39
24     A.  My understanding was we didn't have rights.   17:47:43
25  That's why this agreement did not include it in       17:47:46

EXHIBIT 37
1394

MARK WARREN PEARY - 6/29/2011

Page 293

1    Superboy.                                                          17:47:48

2        Q.  But you -- it was included in the first                    17:47:48

3    agreement that you signed in November, Exhibit 10 --              17:47:51

4            MR. TOBEROFF:  Here is the exhibit.                       17:47:54

5    BY MR. PETROCELLI:                                                17:47:54

6        Q.  -- paragraph 1.                                           17:47:56

7        A.  Yes.                                                       17:47:56

8            MR. TOBEROFF:  He's referring -- again,                   17:47:57

9    when he refers to Exhibit 10, paragraph 1 and the                 17:47:58

10   inclusion of Superboy, I'd like you to read                       17:48:02

11   paragraph 1 to see the way Superboy is included.                  17:48:04

12           MR. PETROCELLI:  You know, please don't.                  17:48:07

13           MR. TOBEROFF:  No.                                        17:48:07

14           MR. PETROCELLI:  It's not appropriate.                    17:48:09

15           MR. TOBEROFF:  It's only fair that when you               17:48:10

16   talk about something, he looks at it.                             17:48:11

17           MR. PETROCELLI:  He doesn't need you to                   17:48:13

18   tell him how to read it, okay?                                    17:48:14

19           MR. TOBEROFF:  I'm not telling him --                     17:48:16

20           MR. PETROCELLI:  That's just inappropriate.               17:48:16

21           MR. TOBEROFF:  I'm telling him to read it.                17:48:17

22           MR. PETROCELLI:  No, you're telling him                   17:48:19

23   more than that.  Let's not get -- go down this path.              17:48:20

24       Q.  What did you as the executor on behalf of                 17:48:22

25   the estate get as consideration for giving up any                 17:48:26

Merrill  Corporation  -  Los Angeles
800-826-0277                                    www.merrillcorp.com/law

EXHIBIT 37
1395

MARK WARREN PEARY - 6/29/2011

Page 294

| | | |
|---|---|---|
| 1 | claim to Superboy? | 17:48:30 |
| 2 | MR. TOBEROFF:  Assumes facts.  Lacks | 17:48:32 |
| 3 | foundation. | 17:48:33 |
| 4 | THE WITNESS:  My understanding is the | 17:48:36 |
| 5 | Shuster estate -- | 17:48:40 |
| 6 | BY MR. PETROCELLI: | 17:48:41 |
| 7 | Q.  Did you understand my question?  Let me ask | 17:48:41 |
| 8 | it again. | 17:48:44 |
| 9 | A.  Repeat it. | 17:48:48 |
| 10 | Q.  Yes. | 17:48:48 |
| 11 | As the executor of the Shuster estate, in | 17:48:48 |
| 12 | executing Exhibit 13, the October 27, 2003 amendment | 17:48:57 |
| 13 | to your joint venture agreement, what did the estate | 17:48:57 |
| 14 | get in return for giving up any and all claim to | 17:49:02 |
| 15 | Superboy? | 17:49:07 |
| 16 | MR. TOBEROFF:  Assumes facts and lacks | 17:49:07 |
| 17 | foundation. | 17:49:13 |
| 18 | THE WITNESS:  I think the question | 17:49:13 |
| 19 | mischaracterizes the situation. | 17:49:14 |
| 20 | BY MR. PETROCELLI: | 17:49:14 |
| 21 | Q.  Can you answer the question? | 17:49:18 |
| 22 | MR. TOBEROFF:  He's trying and you're | 17:49:19 |
| 23 | interrupting his answer. | 17:49:20 |
| 24 | MR. PETROCELLI:  No. He's -- | 17:49:21 |
| 25 | MR. TOBEROFF:  Excuse me. | 17:49:22 |

EXHIBIT 37
1396

MARK WARREN PEARY - 6/29/2011

Page 295

| | | |
|---|---|---|
| 1 | MR. PETROCELLI:  -- he's arguing and he's | 17:49:22 |
| 2 | not answering my question. | 17:49:23 |
| 3 | MR. TOBEROFF:  No, he's -- he's -- | 17:49:25 |
| 4 | BY MR. PETROCELLI: | 17:49:26 |
| 5 | Q.  Do you understand the question, sir? | 17:49:26 |
| 6 | A.  I -- I think it mischaracterizes the | 17:49:27 |
| 7 | situation. | 17:49:28 |
| 8 | Q.  It's not up to you to make that decision. | 17:49:29 |
| 9 | That's for a judge to make. | 17:49:31 |
| 10 | MR. TOBEROFF:  He can answer. | 17:49:33 |
| 11 | BY MR. PETROCELLI: | 17:49:33 |
| 12 | Q.  Do you understand the question? | 17:49:34 |
| 13 | A.  I don't know how to answer it because it | 17:49:35 |
| 14 | assumes certain things that are -- that I don't | 17:49:37 |
| 15 | believe are true. | 17:49:40 |
| 16 | Q.  What, if anything, did the estate get for | 17:49:42 |
| 17 | removing the words "Superboy" and "Smallville" from | 17:49:44 |
| 18 | your joint venture agreement from the way they | 17:49:49 |
| 19 | appeared in Exhibit 10? | 17:49:52 |
| 20 | MR. TOBEROFF:  Again, he's referring to | 17:49:55 |
| 21 | Exhibit 10.  Please look at Exhibit 10 and the way | 17:49:57 |
| 22 | they appeared in Exhibit 10.  Those are your words, | 17:49:59 |
| 23 | Mr. Petrocelli.  So please look at the way Superboy | 17:50:02 |
| 24 | appeared in Exhibit 10. | 17:50:06 |
| 25 | MR. PETROCELLI:  Marc, you don't need to | 17:50:07 |

EXHIBIT 37
1397

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | repeat my question to him.  Now, really, you're -- | 17:50:08 |
| 2 | you're starting to get out -- out of hand here. | 17:50:10 |
| 3 | MR. TOBEROFF:  I've been pretty good.  I've | 17:50:12 |
| 4 | been a good boy. | 17:50:14 |
| 5 | MR. PETROCELLI:  Let's -- let's keep it | 17:50:15 |
| 6 | that way.  Okay? | 17:50:16 |
| 7 | MR. TOBEROFF:  Please look at Exhibit 10 | 17:50:18 |
| 8 | which he's referred to before you answer the | 17:50:20 |
| 9 | question. | 17:50:21 |
| 10 | BY MR. PETROCELLI: | 17:50:21 |
| 11 | Q.  So what did -- what's the answer? | 17:50:27 |
| 12 | A.  What did we get? | 17:50:29 |
| 13 | Q.  Yes.  What did you get in return for your | 17:50:31 |
| 14 | agreement to delete the references to Superboy and | 17:50:33 |
| 15 | Smallville? | 17:50:45 |
| 16 | A.  All I can say is I don't think we have | 17:50:45 |
| 17 | rights to it. | 17:50:48 |
| 18 | Q.  I didn't ask you whether you thought you | 17:50:48 |
| 19 | had rights.  I asked you what -- what, if anything, | 17:50:50 |
| 20 | did you get for agreeing to do this supplement? | 17:50:53 |
| 21 | A.  There was -- okay.  There was no | 17:50:56 |
| 22 | remuneration or compensation or anything. | 17:50:58 |
| 23 | Q.  None, right? | 17:51:01 |
| 24 | A.  Okay. | 17:51:02 |
| 25 | Q.  Is that correct? | 17:51:02 |

EXHIBIT 37
1398

MARK WARREN PEARY - 6/29/2011

Page 297

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  He just answered you. | 17:51:05 |
| 2 | THE WITNESS:  That's what I said. | 17:51:06 |
| 3 | BY MR. PETROCELLI: | 17:51:06 |
| 4 | Q.  Okay.  And the estate of which you were in | 17:51:07 |
| 5 | charge of administering did not seek a second | 17:51:12 |
| 6 | opinion from another lawyer on that subject. | 17:51:15 |
| 7 | Is that right? | 17:51:15 |
| 8 | A.  That's correct. | 17:51:20 |
| 9 | Q.  The sole advice that you accepted was the | 17:51:20 |
| 10 | lawyer who represented the Siegels who were | 17:51:24 |
| 11 | asserting 100 percent ownership. | 17:51:28 |
| 12 | Is that correct? | 17:51:28 |
| 13 | A.  Yes. | 17:51:28 |
| 14 | Q.  Did you disclose to the probate court that | 17:51:41 |
| 15 | you had executed this amendment deleting any | 17:51:45 |
| 16 | reference to Superboy and Smallville for no | 17:51:48 |
| 17 | remuneration or compensation based on the advice of | 17:51:53 |
| 18 | the lawyer for the Siegels who were claiming 100 | 17:51:56 |
| 19 | percent rights to Superboy?  Did you make that | 17:52:01 |
| 20 | disclosure to the probate court? | 17:52:03 |
| 21 | A.  I don't believe so. | 17:52:06 |
| 22 | Q.  When you -- in connection with your | 17:52:13 |
| 23 | decision to accept the -- the advice of | 17:52:17 |
| 24 | Mr. Toberoff, were you made aware of any | 17:52:26 |
| 25 | copyright -- before I get there, turn to Exhibit 14. | 17:52:39 |

EXHIBIT 37
1399

MARK WARREN PEARY - 6/29/2011

Page 298

| | | |
|---|---|---|
| 1 | (The document referred to was | 17:52:44 |
| 2 | marked for identification by the | 17:52:44 |
| 3 | C.S.R. as Exhibit 14 and attached | 17:52:44 |
| 4 | to this deposition.) | 17:52:44 |
| 5 | MR. PETROCELLI:  Exhibit 14 is the notice | 17:52:53 |
| 6 | of termination prepared by Mr. Toberoff on behalf of | 17:53:00 |
| 7 | the Shusters that was sent out in November -- | 17:53:04 |
| 8 | November 7, 2003. | 17:53:13 |
| 9 | Q.  You've seen this document before? | 17:53:14 |
| 10 | A.  Yes. | 17:53:16 |
| 11 | Q.  And you signed it, correct?  If you look at | 17:53:17 |
| 12 | page 9, you signed it as the executor of the estate | 17:53:25 |
| 13 | of Joseph Shuster? | 17:53:28 |
| 14 | A.  Yeah, let me find it.  I don't see the | 17:53:29 |
| 15 | signature page. | 17:53:34 |
| 16 | Q.  It's page 9, Mr. Peary, if you look at the | 17:53:35 |
| 17 | numbers in the center of the page. | 17:53:38 |
| 18 | A.  The center? | 17:53:39 |
| 19 | Q.  The one -- the one on the right-hand corner | 17:53:41 |
| 20 | would be 17. | 17:53:43 |
| 21 | A.  Oh.  Okay.  The signature page, oh, okay, | 17:53:44 |
| 22 | yes. | 17:53:44 |
| 23 | Q.  That's your signature as the executor of | 17:53:57 |
| 24 | the Joseph Shuster estate? | 17:53:58 |
| 25 | A.  Yes. | 17:54:00 |

EXHIBIT 37
1400

MARK WARREN PEARY - 6/29/2011

Page 299

| | | |
|---|---|---|
| 1 | Q.  And you executed this document, Exhibit 14, | 17:54:00 |
| 2 | the notice of termination a little more than a week | 17:54:02 |
| 3 | after the Exhibit 13, the amendment to the joint | 17:54:06 |
| 4 | venture agreement dated October 27, 2003, correct? | 17:54:12 |
| 5 | A.  Yes. | 17:54:16 |
| 6 | Q.  Okay.  And this notice of termination | 17:54:17 |
| 7 | includes no reference to Superboy or Smallville, | 17:54:23 |
| 8 | correct? | 17:54:23 |
| 9 | A.  I believe that's correct. | 17:54:30 |
| 10 | Q.  Okay. | 17:54:33 |
| 11 | MR. TOBEROFF:  Don't -- don't -- you have | 17:54:33 |
| 12 | to read the document before you can answer, as do I. | 17:54:34 |
| 13 | THE WITNESS:  Okay.  I don't remember it | 17:54:39 |
| 14 | being in there. | 17:54:43 |
| 15 | BY MR. PETROCELLI: | 17:54:43 |
| 16 | Q.  Well, based on your prior testimony you | 17:54:44 |
| 17 | would not expect it to be there because you said you | 17:54:46 |
| 18 | did not believe the estate had any such interest | 17:54:49 |
| 19 | based on the advice you received, correct? | 17:54:51 |
| 20 | A.  I would not expect it. | 17:54:53 |
| 21 | MR. TOBEROFF:  Calls for a legal | 17:54:54 |
| 22 | conclusion.  Legal document. | 17:54:55 |
| 23 | BY MR. PETROCELLI: | 17:54:55 |
| 24 | Q.  I'm going to ask you another question now. | 17:55:08 |
| 25 | MR. TOBEROFF:  Are you asking him | 17:55:10 |

EXHIBIT 37
1401

MARK WARREN PEARY - 6/29/2011

Page 300

```
 1    whether it's in here or not?                        17:55:11
 2           MR. PETROCELLI:  No, I'm not.  It's not in   17:55:12
 3    there.  I'll represent that.                        17:55:14
 4       Q.  To be clear, when you executed this notice   17:55:18
 5    of termination, you understood that Superboy was not 17:55:21
 6    included, correct?                                  17:55:24
 7       A.  Yes.                                         17:55:24
 8       Q.  Okay.  Did you disclose to the probate       17:55:29
 9    court that you had served in your capacity as       17:55:30
10    executor a notice of termination that did not extend 17:55:34
11    to Superboy?                                        17:55:37
12       A.  Did I give notice to the probate court?      17:55:38
13       Q.  Did you make that disclosure to the probate  17:55:43
14    court, yes?                                         17:55:45
15       A.  I don't recall that.                         17:55:45
16       Q.  You didn't do that, right?                   17:55:48
17       A.  I don't recall doing that.                   17:55:51
18       Q.  Okay.  Now -- and you understood that by     17:55:57
19    not serving notice of termination with respect to   17:55:58
20    Superboy, that the estate would be forever giving up 17:56:00
21    any ability to recapture or terminate or recapture  17:56:06
22    any Superboy rights, correct?                       17:56:10
23           MR. TOBEROFF:  Assume -- calls for a legal   17:56:14
24    conclusion.  Assumes facts and lacks foundation.    17:56:16
25    BY MR. PETROCELLI:                                  17:56:19
```

EXHIBIT 37
1402

MARK WARREN PEARY - 6/29/2011

Page 301

| | | |
|---|---|---|
| 1 | Q.  You can answer. | 17:56:19 |
| 2 | A.  I -- I -- I'm not sure the legal | 17:56:20 |
| 3 | technicalities. | 17:56:22 |
| 4 | Q.  Well, you understood that by not seeking to | 17:56:22 |
| 5 | terminate it, the estate was giving up any -- any | 17:56:26 |
| 6 | claim even to Superboy, right? | 17:56:28 |
| 7 | MR. TOBEROFF:  Calls for a legal | 17:56:32 |
| 8 | conclusion. | 17:56:33 |
| 9 | THE WITNESS:  All I know is it wasn't -- it | 17:56:36 |
| 10 | wasn't -- a notice was not given in this document. | 17:56:38 |
| 11 | BY MR. PETROCELLI: | 17:56:38 |
| 12 | Q.  Or in any other document, right? | 17:56:43 |
| 13 | A.  No. | 17:56:47 |
| 14 | Q.  Correct? | 17:56:47 |
| 15 | A.  That's correct. | 17:56:48 |
| 16 | Q.  In fact, the -- the time within which to | 17:56:48 |
| 17 | file a notice of termination with respect to | 17:56:52 |
| 18 | Superboy on behalf of the Shuster estate expired 11 | 17:56:55 |
| 19 | days later on November 18, 2003, correct? | 17:56:58 |
| 20 | MR. TOBEROFF:  Assumes facts.  Lacks | 17:57:04 |
| 21 | foundation.  Calls for a legal conclusion. | 17:57:06 |
| 22 | THE WITNESS:  I'm not positive of the | 17:57:09 |
| 23 | details. | 17:57:11 |
| 24 | BY MR. PETROCELLI: | 17:57:11 |
| 25 | Q.  But you do know now that -- as you sit here | 17:57:12 |

EXHIBIT 37
1403

MARK WARREN PEARY - 6/29/2011

Page 302

| | | |
|---|---|---|
| 1 | now as the executor of the Joseph Shuster estate | 17:57:15 |
| 2 | that the time has long passed for -- for the estate | 17:57:17 |
| 3 | filing a notice of termination with respect to | 17:57:21 |
| 4 | Superboy, correct? | 17:57:23 |
| 5 | MR. TOBEROFF: You can -- you can only | 17:57:24 |
| 6 | answer these questions requiring legal knowledge, | 17:57:25 |
| 7 | number one, if you know one way or another and, | 17:57:28 |
| 8 | number two, if it's not based on your discussions | 17:57:31 |
| 9 | with me. That's it. | 17:57:34 |
| 10 | THE WITNESS: Okay. I'm -- I'm not sure. | 17:57:38 |
| 11 | BY MR. PETROCELLI: | 17:57:38 |
| 12 | Q. Well, since 2003 to the present have you | 17:57:41 |
| 13 | ever purported to serve a notice of termination for | 17:57:44 |
| 14 | Superboy on behalf of the Shuster estate? | 17:57:47 |
| 15 | A. No. | 17:57:49 |
| 16 | Q. Okay. And do you have any intention right | 17:57:52 |
| 17 | now to do so? | 17:57:53 |
| 18 | MR. TOBEROFF: Don't discuss your | 17:57:58 |
| 19 | intentions as to legal acts in this case. | 17:57:59 |
| 20 | BY MR. PETROCELLI: | 17:57:59 |
| 21 | Q. In your capacity as executor, do you have a | 17:58:04 |
| 22 | current intention of which you are currently aware | 17:58:06 |
| 23 | to serve a notice of termination with respect to | 17:58:08 |
| 24 | Superboy? | 17:58:12 |
| 25 | MR. TOBEROFF: Instruct you not to answer | 17:58:12 |

EXHIBIT 37
1404

MARK WARREN PEARY -- 6/29/2011

Page 303

| | | |
|---|---|---|
| 1 | that. | 17:58:13 |
| 2 | (Unanswered question.) | 17:58:14 |
| 3 | MR. PETROCELLI:  On what ground? | 17:58:14 |
| 4 | MR. TOBEROFF:  On the ground that any | 17:58:16 |
| 5 | intention he has as to exercising his -- exercising | 17:58:17 |
| 6 | whatever rights he may or may not have under the | 17:58:21 |
| 7 | copyright act are the product of any discussions | 17:58:23 |
| 8 | with his counsel. | 17:58:27 |
| 9 | MR. PETROCELLI:  That's not a fair response | 17:58:28 |
| 10 | to my question. | 17:58:29 |
| 11 | MR. TOBEROFF:  I disagree. | 17:58:30 |
| 12 | BY MR. PETROCELLI: | 17:58:30 |
| 13 | Q.  Have you reviewed any drafts of any notices | 17:58:33 |
| 14 | of termination with respect to Superboy? | 17:58:35 |
| 15 | A.  No. | 17:58:37 |
| 16 | Q.  Okay.  Take a look at Exhibit 15. | 17:58:43 |
| 17 | (The document referred to was | |
| 18 | marked for identification by the | |
| 19 | C.S.R. as Exhibit 15 and attached | |
| 20 | to this deposition.) | |
| 21 | BY MR. PETROCELLI: | |
| 22 | Q.  At the time that Mr. Toberoff gave you | 17:58:48 |
| 23 | advice that the estate had no claim to Superboy, did | 17:58:51 |
| 24 | Mr. Toberoff show you Exhibit 15? | 17:58:55 |
| 25 | MR. TOBEROFF:  Misstates his testimony. | 17:58:58 |

Merrill   Corporation   -   Los Angeles

EXHIBIT 37
1405

MARK WARREN PEARY - 6/29/2011

Page 304

| | | |
|---|---|---|
| 1 | Misstates the record.  This is 15? | 17:58:59 |
| 2 | MR. PETROCELLI:  Yes.  15 is a 1940 | 17:59:06 |
| 3 | Superboy script. | 17:59:11 |
| 4 | Q.  Have you seen this document before? | 17:59:14 |
| 5 | A.  No, I don't think so. | 17:59:18 |
| 6 | Q.  Okay.  And so I take it from your answer | 17:59:20 |
| 7 | that prior to serving the notice of termination, | 17:59:22 |
| 8 | Exhibit 14, you were not aware of this document. | 17:59:28 |
| 9 | Is that correct? | 17:59:28 |
| 10 | A.  Yes. | 17:59:28 |
| 11 | Q.  Okay.  And the document says in the first | 17:59:34 |
| 12 | sentence or first paragraph: | 17:59:38 |
| 13 | "(Panel occupies full page, | 17:59:45 |
| 14 | contains the title Superboy, the | 17:59:46 |
| 15 | by-line by Jerry Siegel and Joe | 17:59:48 |
| 16 | Shuster --" | 17:59:51 |
| 17 | And then it goes on. | 17:59:52 |
| 18 | Were you aware of the existence of this | 17:59:57 |
| 19 | script by which Joe Shuster was identified as one of | 18:00:02 |
| 20 | the two by-line people? | 18:00:09 |
| 21 | MR. TOBEROFF:  Vague.  Unintelligible. | 18:00:12 |
| 22 | THE WITNESS:  I haven't seen this before. | 18:00:17 |
| 23 | BY MR. PETROCELLI: | 18:00:17 |
| 24 | Q.  Take a look at Exhibit 16. | 18:00:27 |
| 25 | (The document referred to was | 18:00:29 |

EXHIBIT 37
1406

MARK WARREN PEARY - 6/29/2011

Page 305

| | | |
|---|---|---|
| 1 | marked for identification by the | 18:00:29 |
| 2 | C.S.R. as Exhibit 16 and attached | 18:00:29 |
| 3 | to this deposition.) | 18:00:43 |
| 4 | BY MR. PETROCELLI: | 18:00:43 |
| 5 | Q.  Do you have Exhibit 16? | 18:00:44 |
| 6 | Prior to serving the notice of termination, | 18:00:46 |
| 7 | Exhibit 14, were you aware of Exhibit 16? | 18:00:50 |
| 8 | Exhibit 16 is More -- a copy of parts of More Fun | 18:01:02 |
| 9 | Comics number 101. | 18:01:07 |
| 10 | A.  Are you asking me if I've ever seen this | 18:01:20 |
| 11 | before? | 18:01:22 |
| 12 | Q.  Yes. | 18:01:22 |
| 13 | A.  I don't recognize this first page | 18:01:34 |
| 14 | specifically showing Superboy, no. | 18:01:37 |
| 15 | Q.  You're referring to page -- the second page | 18:01:39 |
| 16 | of this exhibit -- | 18:01:42 |
| 17 | A.  Yes. | 18:01:42 |
| 18 | Q.  -- that has the picture of Superboy on it? | 18:01:43 |
| 19 | A.  Yes. | 18:01:44 |
| 20 | Q.  Were you aware that copyright renewal | 18:01:45 |
| 21 | registrations were filed indicating that -- in the | 18:01:53 |
| 22 | name of both Joe Shuster and Jerome Siegel with | 18:01:59 |
| 23 | respect to More Fun Comics 101? | 18:02:04 |
| 24 | MR. TOBEROFF:  Lacks foundation. | 18:02:06 |
| 25 | BY MR. PETROCELLI: | 18:02:06 |

EXHIBIT 37
1407

MARK WARREN PEARY - 6/29/2011

Page 306

1    Q.  Were you aware prior to the time that you          18:02:12
2    sent out -- that you signed the termination notice,    18:02:13
3    Exhibit 14, that copyright registration renewals for   18:02:18
4    Superboy by Jerome Siegel and Joe Shuster had been     18:02:25
5    filed with the copyright office?                       18:02:29
6    A.  At -- at what -- at what time?                      18:02:30
7    Q.  As of the time you sent out the notice of          18:02:39
8    termination in November 2003.                          18:02:40
9    A.  As of -- no.                                        18:02:43
10   Q.  Were you aware -- were you aware of either          18:02:46
11   this -- any such copyright registration renewals or    18:02:49
12   Exhibit 15, the Superboy script, at the time that      18:02:55
13   you signed the amendment to the joint venture          18:02:58
14   deleting Superboy?                                      18:03:00
15   A.  Copyright renewals in the '60s?  1960s?             18:03:04
16   Q.  No.  '71 -- '72.                                    18:03:11
17   A.  '72.  Okay.                                         18:03:13
18   Q.  Were you aware of those documents, the             18:03:17
19   renewal registration for Superboy in the name of Joe   18:03:20
20   Shuster and Jerry Siegel and were you aware of the     18:03:24
21   Superboy script, Exhibit 15, when you deleted or       18:03:26
22   agreed to delete Superboy from your joint venture?     18:03:31
23   A.  I was not aware of the specific documents.          18:03:36
24   Q.  The ones that I just asked you about,              18:03:40
25   correct?                                                18:03:40

Merrill   Corporation  -  Los Angeles
800-826-0277                         www.merrillcorp.com/law

EXHIBIT 37
1408

MARK WARREN PEARY - 6/29/2011

Page 307

| | | |
|---|---|---|
| 1 | A.  Yeah, right.  I've never seen those. | 18:03:42 |
| 2 | Q.  Okay.  Take a look at Exhibit 17. | 18:03:44 |
| 3 | (The document referred to was | 18:03:47 |
| 4 | marked for identification by the | 18:03:47 |
| 5 | C.S.R. as Exhibit 17 and attached | 18:03:47 |
| 6 | to this deposition.) | 18:04:02 |
| 7 | BY MR. PETROCELLI: | 18:04:02 |
| 8 | Q.  At the time that you signed the -- at the | 18:04:02 |
| 9 | time that you signed the -- the supplement to the | 18:04:06 |
| 10 | joint venture agreement removing Superboy and | 18:04:12 |
| 11 | Smallville, were you aware that your uncle, Joe | 18:04:19 |
| 12 | Shuster, in the 1970s claimed a joint interest in | 18:04:22 |
| 13 | Superboy in copyright filings? | 18:04:25 |
| 14 | MR. TOBEROFF:  Misstates the evidence. | 18:04:30 |
| 15 | Assumes facts and lacks foundation. | 18:04:32 |
| 16 | THE WITNESS:  No. | 18:04:36 |
| 17 | BY MR. PETROCELLI: | 18:04:36 |
| 18 | Q.  Okay.  Take a look at Exhibit 17. | 18:04:40 |
| 19 | Do you see the reference -- I'll represent | 18:04:44 |
| 20 | to you this is a listing of the copyright renewal | 18:04:48 |
| 21 | registrations and do you see the name Joe Shuster? | 18:04:50 |
| 22 | A.  Oh.  Yes. | 18:04:55 |
| 23 | Q.  And you see Superboy under the name Joe | 18:04:59 |
| 24 | Shuster? | 18:05:04 |
| 25 | A.  Yes. | 18:05:04 |

EXHIBIT 37
1409

MARK WARREN PEARY - 6/29/2011

Page 308

| | | |
|---|---|---|
| 1 | Q.  And it says Sieg- -- Siegel, Jerome? | 18:05:05 |
| 2 | A.  Yes. | 18:05:09 |
| 3 | Q.  Then you go under Siegel, Jerome. | 18:05:10 |
| 4 | Do you see that, couple entries down? | 18:05:13 |
| 5 | A.  Yes. | 18:05:16 |
| 6 | Q.  It says "Superboy by Jerome Siegel and Joe | 18:05:16 |
| 7 | Shuster in More Fun Comics, January to | 18:05:19 |
| 8 | February 1945," copyright sign, "18 November 1944, | 18:05:26 |
| 9 | B653651, Jerome Siegel and Joe Shuster" and then | 18:05:32 |
| 10 | there's some other -- other data. | 18:05:39 |
| 11 | Were you aware of such copyright | 18:05:42 |
| 12 | registration filings when you agreed to remove | 18:05:46 |
| 13 | Superboy from your joint venture agreement? | 18:05:56 |
| 14 | A.  No. | 18:05:58 |
| 15 | Q.  When you served the termination notice | 18:06:01 |
| 16 | without reference to Superboy? | 18:06:03 |
| 17 | A.  No. | 18:06:04 |
| 18 | Q.  Did Mr. Toberoff provide these -- any of | 18:06:07 |
| 19 | these documents to you, Exhibits 15, 16 and 17 that | 18:06:09 |
| 20 | I've just gone through with you? | 18:06:16 |
| 21 | A.  I don't believe so. | 18:06:21 |
| 22 | Q.  Take a look at Exhibit 18. | 18:06:23 |
| 23 | (The document referred to was | 18:06:24 |
| 24 | marked for identification by the | 18:06:24 |
| 25 | C.S.R. as Exhibit 18 and attached | 18:06:24 |

EXHIBIT 37
1410

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | to this deposition.) | 18:06:31 |
| 2 | THE WITNESS:  Can we get some | 18:06:31 |
| 3 | air-conditioning in here? | 18:06:33 |
| 4 | MR. KLINE:  Sure. | 18:06:33 |
| 5 | BY MR. PETROCELLI: | 18:06:33 |
| 6 | Q.  Exhibit 18 is an application for | 18:06:39 |
| 7 | registration of a claim to renewal of copyright, | 18:06:41 |
| 8 | indicating -- for Superboy, More Fun Comics 101, | 18:06:49 |
| 9 | indicating co-authors Jerome Siegel and Joe Shuster. | 18:06:57 |
| 10 | Do you see that document? | 18:07:02 |
| 11 | A.  Yes. | 18:07:03 |
| 12 | Q.  Is this the first time you're seeing this | 18:07:07 |
| 13 | document? | 18:07:09 |
| 14 | A.  Yes. | 18:07:09 |
| 15 | Q.  I take it that this document was not | 18:07:12 |
| 16 | provided to you by Mr. Toberoff. | 18:07:14 |
| 17 | Is that correct? | 18:07:14 |
| 18 | A.  Yes. | 18:07:14 |
| 19 | Q.  You were unaware of this document when you | 18:07:23 |
| 20 | removed Superboy and Smallville from the joint | 18:07:26 |
| 21 | venture agreement, correct? | 18:07:29 |
| 22 | A.  Yes. | 18:07:29 |
| 23 | Q.  And when you sent out the termination | 18:07:34 |
| 24 | notice without reference to Superboy, correct? | 18:07:36 |
| 25 | A.  Yes. | 18:07:36 |

EXHIBIT 37
1411

MARK WARREN PEARY - 6/29/2011

Page 310

| | | |
|---|---|---|
| 1 | Q. And you reference some case in the 1940s. | 18:07:42 |
| 2 | Do you recall that, that Mr. Toberoff | 18:07:45 |
| 3 | mentioned it to you? | 18:07:49 |
| 4 | A. Yes. | 18:07:49 |
| 5 | Q. And you're aware that these filings are | 18:07:53 |
| 6 | made in the 1970s, some 25 years later? | 18:07:55 |
| 7 | A. Yes. | 18:07:57 |
| 8 | Q. Take a look at Exhibit 19. | 18:08:03 |
| 9 | (The document referred to was | 18:08:06 |
| 10 | marked for identification by the | 18:08:06 |
| 11 | C.S.R. as Exhibit 19 and attached | 18:08:06 |
| 12 | to this deposition.) | 18:08:16 |
| 13 | BY MR. PETROCELLI: | 18:08:16 |
| 14 | Q. Exhibit 19 is another page from -- | 18:08:16 |
| 15 | indicating copyright registration filings. | 18:08:22 |
| 16 | Do you have that in front of you? | 18:08:25 |
| 17 | A. Yes. | 18:08:27 |
| 18 | Q. Do you see the reference to Joe Shuster? | 18:08:28 |
| 19 | A. Yes. | 18:08:30 |
| 20 | Q. This is for the year 1973. The one I just | 18:08:34 |
| 21 | showed you before, Exhibits -- Exhibit 17 was for | 18:08:39 |
| 22 | the year 1972. | 18:08:42 |
| 23 | And you'll see the reference to Joe Shuster | 18:08:47 |
| 24 | and Superboy, which is then cross-referenced down to | 18:08:50 |
| 25 | Jerome Siegel where it also indicates that -- both | 18:08:55 |

EXHIBIT 37
1412

MARK WARREN PEARY - 6/29/2011

Page 311

| | | |
|---|---|---|
| 1 | the names of Jerome Siegel and Joe Shuster for | 18:09:00 |
| 2 | Superboy in More -- in More Fun Comics. | 18:09:02 |
| 3 | Do you see that? | 18:09:05 |
| 4 | A.  Yes. | 18:09:05 |
| 5 | Q.  And were you aware that they had filed | 18:09:08 |
| 6 | copyright renewal registrations in 1973 with respect | 18:09:12 |
| 7 | to Superboy, that is, Joe Shuster had together with | 18:09:16 |
| 8 | Jerome Siegel? | 18:09:19 |
| 9 | A.  I had some vague awareness that they were | 18:09:20 |
| 10 | filing for renewal copyrights and they were denied. | 18:09:26 |
| 11 | Q.  With respect to Superboy? | 18:09:29 |
| 12 | A.  With all the -- all the elements. | 18:09:30 |
| 13 | Q.  I'm asking you specifically, did you know | 18:09:36 |
| 14 | about the Superboy copyright registration renewals | 18:09:37 |
| 15 | when you signed those documents? | 18:09:40 |
| 16 | A.  A general vague idea of Superman and | 18:09:41 |
| 17 | related elements. | 18:09:44 |
| 18 | Q.  But you didn't have any specific knowledge | 18:09:45 |
| 19 | of the Superboy registration filings. | 18:09:47 |
| 20 | Is that correct? | 18:09:49 |
| 21 | A.  Not specifically Superboy. | 18:09:49 |
| 22 | Q.  And none of these documents with respect to | 18:09:51 |
| 23 | Superboy had been made available to you at the time | 18:09:52 |
| 24 | you signed the amendment to the joint venture | 18:09:55 |
| 25 | agreement on October 27, 2003 removing Superboy, | 18:09:58 |

EXHIBIT 37
1413

MARK WARREN PEARY - 6/29/2011

Page 312

| | | |
|---|---|---|
| 1 | correct? | 18:09:58 |
| 2 | A.  Yes. | 18:10:06 |
| 3 | Q.  And is it fair to say that had these | 18:10:07 |
| 4 | documents been made available to you, you would have | 18:10:09 |
| 5 | taken them into account in making a decision whether | 18:10:11 |
| 6 | or not to delete Superboy, correct? | 18:10:14 |
| 7 | MR. TOBEROFF:  Calls for a legal conclusion | 18:10:17 |
| 8 | as to a complex issue. | 18:10:17 |
| 9 | MR. PETROCELLI:  Hardly. | 18:10:21 |
| 10 | MR. TOBEROFF:  You're so wrong. | 18:10:22 |
| 11 | MR. PETROCELLI:  Hardly. | 18:10:22 |
| 12 | MR. TOBEROFF:  You're so wrong. | 18:10:25 |
| 13 | MR. PETROCELLI:  You didn't -- you didn't | 18:10:27 |
| 14 | listen to my question. | 18:10:27 |
| 15 | MR. TOBEROFF:  I listened to it. | 18:10:28 |
| 16 | BY MR. PETROCELLI: | 18:10:28 |
| 17 | Q.  Can you answer my question? | 18:10:33 |
| 18 | A.  Would I have -- | 18:10:34 |
| 19 | Q.  Taking these documents into account had | 18:10:34 |
| 20 | they been made available to you? | 18:10:37 |
| 21 | A.  I don't think it would have made a | 18:10:39 |
| 22 | difference because the legal situation with regard | 18:10:43 |
| 23 | to -- | 18:10:46 |
| 24 | MR. TOBEROFF:  Don't testify based on | 18:10:48 |
| 25 | conversations with your attorney. | 18:10:50 |

EXHIBIT 37
1414

MARK WARREN PEARY - 6/29/2011

Page 313

| | | |
|---|---|---|
| 1 | THE WITNESS:  Okay.  Then I can't say | 18:10:51 |
| 2 | anything. | 18:10:52 |
| 3 | BY MR. PETROCELLI: | 18:10:52 |
| 4 | Q.  Did your -- you were unaware of these | 18:10:56 |
| 5 | documents, correct? | 18:10:56 |
| 6 | A.  Of these specific documents? | 18:10:59 |
| 7 | Q.  Correct, right. | 18:10:59 |
| 8 | And you were -- is it fair to say that you | 18:11:02 |
| 9 | would have wanted to know about these -- these | 18:11:08 |
| 10 | documents prior to having made the decision to sign | 18:11:11 |
| 11 | those -- the amended joint venture agreement? | 18:11:14 |
| 12 | MR. TOBEROFF:  Calls for a legal | 18:11:20 |
| 13 | conclusion. | 18:11:21 |
| 14 | THE WITNESS:  I knew their renewal requests | 18:11:22 |
| 15 | were denied back in the early '70s. | 18:11:25 |
| 16 | BY MR. PETROCELLI: | 18:11:25 |
| 17 | Q.  You're not -- you're not answering my | 18:11:29 |
| 18 | question. | 18:11:31 |
| 19 | MR. TOBEROFF:  He's answering your | 18:11:31 |
| 20 | question. | 18:11:32 |
| 21 | MR. PETROCELLI:  No. | 18:11:32 |
| 22 | Q.  You're -- you -- | 18:11:32 |
| 23 | MR. TOBEROFF:  You keep cutting him off -- | 18:11:33 |
| 24 | excuse me, I'm talking. | 18:11:35 |
| 25 | BY MR. PETROCELLI: | 18:11:35 |

EXHIBIT 37
1415

MARK WARREN PEARY - 6/29/2011

Page 314

| | | |
|---|---|---|
| 1 | Q.   You testified that -- | 18:11:36 |
| 2 | Marc, Marc -- | 18:11:36 |
| 3 | MR. TOBEROFF:  Excuse me.  Excuse me. | 18:11:36 |
| 4 | Excuse me.  Excuse me, I'm talking. | 18:11:37 |
| 5 | MR. PETROCELLI:  Don't waste my time. | 18:11:38 |
| 6 | MR. TOBEROFF:  No, I will not.  I will not. | 18:11:40 |
| 7 | BY MR. PETROCELLI: | 18:11:40 |
| 8 | Q.  You've already testified, sir, that -- | 18:11:42 |
| 9 | MR. TOBEROFF:  I will not. | 18:11:43 |
| 10 | BY MR. PETROCELLI: | 18:11:43 |
| 11 | Q.  Sir, you testified -- | 18:11:44 |
| 12 | MR. TOBEROFF:  You're talking over me.  I | 18:11:45 |
| 13 | will not have you talk over me.  No. | 18:11:46 |
| 14 | MR. PETROCELLI:  Take a break.  We're off | 18:11:48 |
| 15 | the record. | 18:11:49 |
| 16 | MR. TOBEROFF:  No, we're on the record.  I | 18:11:50 |
| 17 | don't agree to take a break.  I don't agree -- | 18:11:52 |
| 18 | MR. PETROCELLI:  I'm not going to -- | 18:11:52 |
| 19 | MR. TOBEROFF:  I don't agree to go off the | 18:11:54 |
| 20 | record. | 18:11:54 |
| 21 | MR. PETROCELLI:  I'm not going to -- | 18:11:54 |
| 22 | MR. TOBEROFF:  I do not agree to go off the | 18:11:54 |
| 23 | record. | 18:11:54 |
| 24 | MR. PETROCELLI:  I'm not going to let you | 18:11:57 |
| 25 | chew up my time making speeches. | 18:11:58 |

EXHIBIT 37
1416

MARK WARREN PEARY - 6/29/2011

Page 315

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  I'm not chewing up your | 18:12:00 |
| 2 | time.  Don't talk over me and you're going to -- | 18:12:01 |
| 3 | MR. PETROCELLI:  Marc, I'm -- I'm going | 18:12:01 |
| 4 | to -- | 18:12:01 |
| 5 | MR. TOBEROFF:  -- let me finish. | 18:12:04 |
| 6 | MR. PETROCELLI:  -- terminate the | 18:12:05 |
| 7 | deposition if you continue. | 18:12:05 |
| 8 | MR. TOBEROFF:  You can do whatever you see | 18:12:06 |
| 9 | fit.  I'm going to finish my sentence. | 18:12:08 |
| 10 | MR. PETROCELLI:  Finish your sentence -- | 18:12:10 |
| 11 | MR. TOBEROFF:  You're not going to talk | 18:12:10 |
| 12 | over me. | 18:12:10 |
| 13 | MR. PETROCELLI:  Finish your sentence and | 18:12:12 |
| 14 | you've got 20 seconds. | 18:12:12 |
| 15 | MR. TOBEROFF:  You're wasting time not | 18:12:14 |
| 16 | letting me speak. | 18:12:14 |
| 17 | MR. PETROCELLI:  I'm -- I'm -- I'm -- | 18:12:14 |
| 18 | MR. TOBEROFF:  You don't tell me how long I | 18:12:15 |
| 19 | get to speak -- | 18:12:16 |
| 20 | MR. PETROCELLI:  You're timed.  Go. | 18:12:17 |
| 21 | MR. TOBEROFF:  -- okay? | 18:12:18 |
| 22 | When he says something that you don't want | 18:12:19 |
| 23 | him to say, you cut him off.  It's an old trick.  My | 18:12:20 |
| 24 | client, when he's attempting to answer your | 18:12:24 |
| 25 | question, you have to let him finish the answer.  He | 18:12:27 |

MARK WARREN PEARY - 6/29/2011

Page 316

```
 1   was about to -- he was talking and you cut him off          18:12:29
 2   and then when I objected and said, "Please let my           18:12:32
 3   client finish," you cut me off and started talking          18:12:34
 4   over me.  Please don't do that.                             18:12:37
 5        I'm finished.                                          18:12:38
 6   BY MR. PETROCELLI:                                          18:12:38
 7        Q.  Mr. -- Mr. Peary --                                18:12:38
 8        MR. TOBEROFF:  How did I do on the 20                  18:12:41
 9   seconds?                                                    18:12:42
10        MR. PETROCELLI:  Just made it.                         18:12:42
11        Q.  I -- I don't want you to be telling me             18:12:43
12   about copyright registration renewals that were            18:12:46
13   denied when you have already specifically testified        18:12:49
14   that you have no knowledge that these specific             18:12:52
15   Superboy registrations were denied.  It's not             18:12:55
16   responsive and it's not helpful.                           18:12:58
17        MR. TOBEROFF:  And you can -- you can                  18:13:00
18   answer the question any way you see fit.                    18:13:02
19   BY MR. PETROCELLI:                                          18:13:02
20        Q.  And if you do, I will --                           18:13:04
21        MR. TOBEROFF:  You're talking over me                  18:13:05
22   again.                                                      18:13:07
23        You can answer the question any way you see           18:13:07
24   fit.  And -- and I -- and with the exception that I        18:13:08
25   will instruct you not to answer certain questions          18:13:12
```

MARK WARREN PEARY - 6/29/2011

Page 317

```
 1   that impinge on the attorney-client privilege.        18:13:15

 2   BY MR. PETROCELLI:                                     18:13:15

 3       Q.  Now, my question to you is, would you have     18:13:18

 4   wanted to know about various documents in which --     18:13:20

 5   that evidence your uncle claiming co-authorship of     18:13:23

 6   Superboy and filing copyright registrations as late    18:13:28

 7   as the mid-'70s in making a determination to remove    18:13:32

 8   the -- any interest of the estate to Superboy?         18:13:37

 9           MR. TOBEROFF:  Objection.  Assumes facts.       18:13:40

10   Lacks foundation.  It mischaracterizes the exhibits.   18:13:43

11           You can answer.                                 18:13:48

12           THE WITNESS:  My answer is I don't think it    18:13:51

13   would have made any difference, so no.                 18:13:52

14   BY MR. PETROCELLI:                                     18:13:52

15       Q.  Why wouldn't it have made a difference?        18:13:55

16           MR. TOBEROFF:  You can only answer that to     18:13:57

17   the extent that your knowledge is not based on         18:13:59

18   conversations with me regarding Superboy.              18:14:01

19           THE WITNESS:  I -- I -- it's kind of legal.    18:14:05

20   I -- I just know --                                    18:14:15

21           MR. TOBEROFF:  You can only answer that --     18:14:17

22   please follow my instruction.  If your conversations   18:14:19

23   are based on knowledge independent of your             18:14:23

24   discussions with me, I'm happy for you to answer the   18:14:25

25   question.  If they're not, then you can't answer the   18:14:27
```

EXHIBIT 37
1419

MARK WARREN PEARY - 6/29/2011

Page 318

| | | |
|---|---|---|
| 1 | question.  That's it. | 18:14:31 |
| 2 | THE WITNESS:  Okay. | 18:14:33 |
| 3 | BY MR. PETROCELLI: | 18:14:33 |
| 4 | Q.  As -- | 18:14:37 |
| 5 | A.  My -- my knowledge of it is -- is based | 18:14:38 |
| 6 | mostly on my discussions, so I guess I can't answer | 18:14:44 |
| 7 | it. | 18:14:49 |
| 8 | Q.  You're the executor of the estate.  You | 18:14:50 |
| 9 | filed legal documents in that capacity.  You filed | 18:14:52 |
| 10 | them as a matter of public record. | 18:14:56 |
| 11 | On what basis did you file documents | 18:15:03 |
| 12 | concluding that the estate had no interest in | 18:15:06 |
| 13 | Superboy? | 18:15:09 |
| 14 | MR. TOBEROFF:  You can answer that as -- as | 18:15:13 |
| 15 | long as your basis is not based on conversations and | 18:15:15 |
| 16 | advice with your -- from and with your attorney. | 18:15:18 |
| 17 | THE WITNESS:  Okay.  So what do I know | 18:15:25 |
| 18 | separate from talking with my attorney? | 18:15:30 |
| 19 | MR. TOBEROFF:  Don't involve him in that | 18:15:33 |
| 20 | thought process.  Think to yourself whether you have | 18:15:34 |
| 21 | an understanding separate from your conversations | 18:15:36 |
| 22 | with me or if you can separate it, then you can | 18:15:41 |
| 23 | answer the question.  If not, I instruct you not to | 18:15:43 |
| 24 | answer. | 18:15:46 |
| 25 | THE WITNESS:  Well, my knowledge is tied to | 18:15:48 |

EXHIBIT 37
1420

MARK WARREN PEARY - 6/29/2011

Page 319

| | | |
|---|---|---|
| 1 | my discussions with Marc Toberoff. I don't know how | 18:15:50 |
| 2 | to separate it. | 18:15:54 |
| 3 | BY MR. PETROCELLI: | 18:15:54 |
| 4 | Q. I'm asking you for your judgement -- | 18:15:56 |
| 5 | MR. TOBEROFF: I instruct you not to | 18:15:57 |
| 6 | answer. | 18:15:58 |
| 7 | BY MR. PETROCELLI: | 18:15:58 |
| 8 | Q. I'm asking you to answer the question based | 18:15:59 |
| 9 | on your judgment and your -- your capacity as the | 18:16:01 |
| 10 | executor of the estate. You're the decision-maker, | 18:16:02 |
| 11 | not your lawyer. | 18:16:06 |
| 12 | MR. TOBEROFF: It's the same instruction. | 18:16:07 |
| 13 | His question doesn't change my instruction. | 18:16:09 |
| 14 | THE WITNESS: I have to follow the | 18:16:14 |
| 15 | instruction. | 18:16:15 |
| 16 | (Unanswered question.) | 18:16:16 |
| 17 | BY MR. PETROCELLI: | 18:16:16 |
| 18 | Q. Did you -- do you believe that Joe Shuster | 18:16:17 |
| 19 | knew better than Marc Toberoff as to whether he | 18:16:20 |
| 20 | participated in the creation of Superboy? | 18:16:25 |
| 21 | A. I'm not sure I understand the question. | 18:16:34 |
| 22 | Q. Well, you saw that I showed you various | 18:16:34 |
| 23 | documents including copyright registration files -- | 18:16:36 |
| 24 | filings in which Joe Shuster was attributed as a | 18:16:41 |
| 25 | co-author of Superboy. You saw that, right? | 18:16:48 |

EXHIBIT 37
1421

MARK WARREN PEARY - 6/29/2011

Page 320

| | | |
|---|---|---|
| 1 | A.   Yes. | 18:16:51 |
| 2 | Q.   Okay.  Do you think that Joe Shuster would | 18:16:52 |
| 3 | have had a better understanding of whether he was a | 18:16:54 |
| 4 | co-author of Superboy than Marc Toberoff? | 18:16:56 |
| 5 | MR. TOBEROFF:  Calls for a legal | 18:17:01 |
| 6 | conclusion.  Lacks foundation. | 18:17:02 |
| 7 | THE WITNESS:  All I know is these -- these | 18:17:09 |
| 8 | terminations were based upon a -- a renewal period | 18:17:13 |
| 9 | that -- that doesn't currently apply. | 18:17:17 |
| 10 | MR. TOBEROFF:  Don't -- don't discuss -- | 18:17:20 |
| 11 | BY MR. PETROCELLI: | 18:17:22 |
| 12 | Q.   How do you know what you just said? | 18:17:23 |
| 13 | MR. TOBEROFF:  Excuse me. | 18:17:24 |
| 14 | BY MR. PETROCELLI: | 18:17:24 |
| 15 | Q.   You just said that these renewals don't | 18:17:26 |
| 16 | apply.  What did you mean by that? | 18:17:29 |
| 17 | MR. TOBEROFF:  Excuse me.  I'm going to | 18:17:31 |
| 18 | make my instruction again.  I'm instructing you not | 18:17:33 |
| 19 | to testify based on advice or information that you | 18:17:36 |
| 20 | have only received from your attorney. | 18:17:41 |
| 21 | Do you understand that instruction?  Do you | 18:17:43 |
| 22 | understand that instruction? | 18:17:46 |
| 23 | THE WITNESS:  Not to testify to information | 18:17:48 |
| 24 | that I have received from my attorney? | 18:17:49 |
| 25 | MR. TOBEROFF:  Yes. | 18:17:51 |

EXHIBIT 37
1422

MARK WARREN PEARY - 6/29/2011

Page 321

| | | |
|---|---|---|
| 1 | Do you understand that instruction? | 18:17:51 |
| 2 | THE WITNESS:  Yes. | 18:17:53 |
| 3 | MR. TOBEROFF:  Okay.  So if you have | 18:17:54 |
| 4 | knowledge outside of your conversations with me or | 18:17:55 |
| 5 | outside of advice that I have given you, then you | 18:17:59 |
| 6 | can testify. | 18:18:02 |
| 7 | THE WITNESS:  Okay.  Well -- | 18:18:09 |
| 8 | MR. TOBEROFF:  And you don't have to feel | 18:18:11 |
| 9 | bad about it.  Just you make the decision whether | 18:18:12 |
| 10 | it's based on knowledge -- the knowledge -- based on | 18:18:14 |
| 11 | advice and knowledge you've obtained from me and | 18:18:16 |
| 12 | conversations with me, in which event I instruct you | 18:18:19 |
| 13 | not to answer.  You don't have to feel bad about not | 18:18:21 |
| 14 | answering.  You don't answer the question.  You're | 18:18:24 |
| 15 | instructed not to answer. | 18:18:26 |
| 16 | If, however, you have information based on | 18:18:27 |
| 17 | your own independent knowledge that's not part and | 18:18:30 |
| 18 | parcel of your discussions and advice from me, then | 18:18:34 |
| 19 | you -- then you can answer the question and only | 18:18:37 |
| 20 | then. | 18:18:39 |
| 21 | Do you understand that? | 18:18:39 |
| 22 | THE WITNESS:  Okay.  Yes. | 18:18:44 |
| 23 | MR. TOBEROFF:  Okay.  Good. | 18:18:45 |
| 24 | BY MR. PETROCELLI: | 18:18:45 |
| 25 | Q.  So answer the question now. | 18:18:47 |

Merrill  Corporation  -  Los Angeles
800-826-0277                    www.merrillcorp.com/law

EXHIBIT 37
1423

MARK WARREN PEARY - 6/29/2011

Page 322

| | | |
|---|---|---|
| 1 | A. So my -- my -- my understanding is based on | 18:18:48 |
| 2 | my discussions with Marc Toberoff, my -- and where | 18:18:58 |
| 3 | we discuss copyright law. That's -- | 18:19:02 |
| 4 | Q. But you -- you made a judgment. It was | 18:19:06 |
| 5 | your decision to make, not Mr. Toberoff's. You made | 18:19:08 |
| 6 | a judgment to enter into an amendment to a joint | 18:19:10 |
| 7 | venture removing certain rights from the venture. | 18:19:14 |
| 8 | And in what -- when you made that judgment I | 18:19:18 |
| 9 | would -- I want you to tell me what was the basis of | 18:19:20 |
| 10 | that judgment? | 18:19:23 |
| 11 | MR. TOBEROFF: Asked and answered. | 18:19:24 |
| 12 | I instruct you not to answer. You've | 18:19:25 |
| 13 | already answered the question. The basis is legal | 18:19:27 |
| 14 | advice. You don't have to answer and you don't have | 18:19:30 |
| 15 | to speak. | 18:19:31 |
| 16 | (Unanswered question.) | 18:19:32 |
| 17 | MR. TOBEROFF: Next question. | 18:19:34 |
| 18 | BY MR. PETROCELLI: | 18:19:34 |
| 19 | Q. And when you made the judgment as the | 18:19:36 |
| 20 | executor of the estate to reject any claim to | 18:19:38 |
| 21 | Superboy, what was the basis of that judgment? | 18:19:48 |
| 22 | MR. TOBEROFF: Same instruction. | 18:19:56 |
| 23 | (Unanswered question.) | 18:19:56 |
| 24 | BY MR. PETROCELLI: | 18:19:56 |
| 25 | Q. Did you -- did you talk to the -- to the | 18:20:03 |

EXHIBIT 37
1424

MARK WARREN PEARY - 6/29/2011

Page 323

| | | |
|---|---|---|
| 1 | Siegels about your decision before making it? | 18:20:11 |
| 2 | A. I don't recall doing that. | 18:20:24 |
| 3 | Q. Did you approach the Siegels at any time | 18:20:25 |
| 4 | and indicate to them that based on Joe Shuster's | 18:20:30 |
| 5 | contributions to Superboy, that the right should be | 18:20:38 |
| 6 | equally divided? Did you have any discussion like | 18:20:44 |
| 7 | that with the Siegels? | 18:20:47 |
| 8 | A. No. | 18:20:48 |
| 9 | Q. Did you even think about having that kind | 18:20:50 |
| 10 | of conversation? | 18:20:52 |
| 11 | A. I don't know if I thought about it. | 18:20:57 |
| 12 | Q. Did you talk to your mom that you were | 18:20:59 |
| 13 | going to relinquish rights to Superboy? | 18:21:03 |
| 14 | MR. TOBEROFF: Misstates his testimony. | 18:21:06 |
| 15 | Assumes facts. Lacks foundation. | 18:21:09 |
| 16 | THE WITNESS: I didn't think we had rights. | 18:21:15 |
| 17 | BY MR. PETROCELLI: | 18:21:15 |
| 18 | Q. That was based on what Marc Toberoff told | 18:21:18 |
| 19 | you, correct? | 18:21:19 |
| 20 | A. Largely. | 18:21:21 |
| 21 | Q. Well, what -- what part wasn't based on | 18:21:22 |
| 22 | what Marc Toberoff told you? | 18:21:24 |
| 23 | A. I have seen section 304 D of the copyright | 18:21:25 |
| 24 | law. | 18:21:33 |
| 25 | Q. So you made your own interpretation of | 18:21:34 |

EXHIBIT 37
1425

MARK WARREN PEARY - 6/29/2011

Page 324

| | | |
|---|---|---|
| 1 | section 304 D of the copyright law and concluded | 18:21:36 |
| 2 | that Joe Shuster had no rights to Superboy? | 18:21:39 |
| 3 | A.  I read it in consultation with my attorney. | 18:21:43 |
| 4 | MR. TOBEROFF:  Again, please, don't go into | 18:21:46 |
| 5 | areas that are based on your consultation with your | 18:21:48 |
| 6 | attorney, please. | 18:21:50 |
| 7 | THE WITNESS:  Okay. | 18:21:51 |
| 8 | MR. TOBEROFF:  Just because he keeps asking | 18:21:52 |
| 9 | you the same questions all over again, you don't | 18:21:54 |
| 10 | have to feel bad when you can't answer those | 18:21:56 |
| 11 | questions, because it's attorney-client privilege. | 18:21:58 |
| 12 | He could ask the question -- | 18:22:00 |
| 13 | MR. PETROCELLI:  Marc -- | 18:22:01 |
| 14 | MR. TOBEROFF:  -- over and over again. | 18:22:02 |
| 15 | MR. PETROCELLI:  -- Marc, Marc, it's not -- | 18:22:03 |
| 16 | MR. TOBEROFF:  I'm instructing -- | 18:22:04 |
| 17 | MR. PETROCELLI:  No, no. | 18:22:05 |
| 18 | MR. TOBEROFF:  When you interrupt me it | 18:22:06 |
| 19 | take -- wastes more time than you letting me finish. | 18:22:07 |
| 20 | MR. PETROCELLI:  You're taking a minute -- | 18:22:10 |
| 21 | MR. TOBEROFF:  No, I'm not. | 18:22:10 |
| 22 | MR. PETROCELLI:  You can go off the record | 18:22:11 |
| 23 | and tell him that. | 18:22:12 |
| 24 | MR. TOBEROFF:  You're wasting time. | 18:22:13 |
| 25 | MR. PETROCELLI:  I don't want you -- I | 18:22:14 |

EXHIBIT 37
1426

MARK WARREN PEARY - 6/29/2011

Page 325

| | | |
|---|---|---|
| 1 | don't want you using valuable time -- | 18:22:15 |
| 2 | MR. TOBEROFF:  Stop interrupting. | 18:22:15 |
| 3 | MR. PETROCELLI:  -- telling him he doesn't | 18:22:17 |
| 4 | have to feel bad. | 18:22:18 |
| 5 | MR. TOBEROFF:  If you were concerned about | 18:22:19 |
| 6 | the time you wouldn't engage me in colloquy. | 18:22:20 |
| 7 | MR. PETROCELLI:  No, no, I can't let you | 18:22:20 |
| 8 | keep doing this. | 18:22:20 |
| 9 | MR. TOBEROFF:  I'm going to instruct my | 18:22:23 |
| 10 | client as I see fit -- | 18:22:25 |
| 11 | MR. PETROCELLI:  Just instruct him not to | 18:22:25 |
| 12 | answer. | 18:22:25 |
| 13 | MR. TOBEROFF: -- and you can reserve all | 18:22:26 |
| 14 | your rights. | 18:22:27 |
| 15 | MR. PETROCELLI:  Okay.  Well -- | 18:22:27 |
| 16 | MR. TOBEROFF:  You keep -- | 18:22:27 |
| 17 | MR. PETROCELLI:  -- I'm putting you on | 18:22:27 |
| 18 | notice right now -- | 18:22:29 |
| 19 | MR. TOBEROFF:  Interrupting me again. | 18:22:29 |
| 20 | MR. PETROCELLI:  -- that I'm going to seek | 18:22:31 |
| 21 | more time to examine the witness -- | 18:22:34 |
| 22 | MR. TOBEROFF:  I -- I reject that. | 18:22:34 |
| 23 | MR. PETROCELLI:  -- because -- because | 18:22:37 |
| 24 | you're taking undue time -- | 18:22:37 |
| 25 | MR. TOBEROFF:  No, the time is being wasted | 18:22:40 |

EXHIBIT 37
1427

MARK WARREN PEARY - 6/29/2011

Page 326

```
 1    by --                                              18:22:40

 2              MR. PETROCELLI:  All you have to do --

 3              THE REPORTER:  I can only get you one at a

 4    time.

 5              MR. TOBEROFF:  -- two attorneys --

 6              MR. PETROCELLI:  All you've got to do is

 7    tell the witness --

 8              MR. TOBEROFF:  I've asked you not to

 9    interrupt me.

10              MR. PETROCELLI:  All you've got to do is

11    tell the witness --

12              MR. TOBEROFF:  You're not going to browbeat

13    me.  You're not going to interrupt me.           18:22:45

14              MR. PETROCELLI:  -- that you instruct him  18:22:45

15    not to answer.  You don't have to go into any       18:22:46

16    further colloquy with him.                          18:22:49

17              MR. TOBEROFF:  I see that my client is     18:22:50

18    getting very distressed because you're asking him   18:22:52

19    the same question --                                18:22:54

20              MR. PETROCELLI:  Well, then --            18:22:54

21              MR. TOBEROFF:  Please don't interrupt me.  18:22:56

22    Please don't interrupt me.                          18:22:57

23              MR. PETROCELLI:  -- ask you to go off the  18:22:58

24    record so you don't take up my time.  That's all I'm 18:22:59

25    asking you.                                         18:23:02
```

EXHIBIT 37
1428

MARK WARREN PEARY - 6/29/2011

Page 327

| | | |
|---|---|---|
| 1 | MR. TOBEROFF:  We can go off the record. | 18:23:02 |
| 2 | MR. PETROCELLI:  Thank you. | 18:23:04 |
| 3 | THE VIDEOGRAPHER:  Off the record.  The | 18:23:05 |
| 4 | time is 6:22. | 18:23:06 |
| 5 | (Brief recess.) | 18:32:05 |
| 6 | THE VIDEOGRAPHER:  Back on the record at | 18:32:06 |
| 7 | 6:31. | 18:32:11 |
| 8 | BY MR. PETROCELLI: | 18:32:11 |
| 9 | Q.  I put Exhibit 13 back in front of you. | 18:32:15 |
| 10 | It's the October 27, 2003 amendment to the joint | 18:32:17 |
| 11 | venture agreement which you signed as executor with | 18:32:21 |
| 12 | Pacific Pictures Corporation. | 18:32:30 |
| 13 | When you entered into this amendment to the | 18:32:33 |
| 14 | joint venture agreement with Pacific Pictures | 18:32:36 |
| 15 | Corporation, on what basis did you determine to | 18:32:41 |
| 16 | remove references to Superboy from your joint | 18:32:48 |
| 17 | venture? | 18:32:52 |
| 18 | A.  It was on advice of counsel. | 18:32:56 |
| 19 | Q.  But the counsel you're talking about is -- | 18:32:59 |
| 20 | was the other party to the joint venture, correct? | 18:33:03 |
| 21 | MR. TOBEROFF:  Argumentative. | 18:33:07 |
| 22 | BY MR. PETROCELLI: | 18:33:07 |
| 23 | Q.  The counsel you're talking about is Marc | 18:33:11 |
| 24 | Toberoff, correct? | 18:33:13 |
| 25 | A.  Marc Toberoff, attorney. | 18:33:13 |

MARK WARREN PEARY - 6/29/2011

Page 328

| | | |
|---|---|---|
| 1 | Q. Marc Toberoff was the president of the | 18:33:14 |
| 2 | joint venture, that was the other party to your | 18:33:16 |
| 3 | joint venture agreement, correct? | 18:33:23 |
| 4 | A. Yes. | 18:33:23 |
| 5 | Q. President of Pacific Pictures, so you took | 18:33:27 |
| 6 | the advice of the president of Pacific -- you're | 18:33:30 |
| 7 | relying on the advice of the president of Pacific | 18:33:32 |
| 8 | Pictures Corporation and on that basis refusing to | 18:33:37 |
| 9 | tell me why you deleted Superboy? | 18:33:39 |
| 10 | MR. TOBEROFF: Argumentative. | 18:33:43 |
| 11 | THE WITNESS: My relationship with -- | 18:33:44 |
| 12 | MR. TOBEROFF: What -- what's the question? | 18:33:47 |
| 13 | BY MR. PETROCELLI: | 18:33:49 |
| 14 | Q. Is that correct? | 18:33:49 |
| 15 | A. That -- say it again. | 18:33:52 |
| 16 | Q. That you're -- you're -- you're telling me | 18:33:53 |
| 17 | that the sole basis of your decision to remove | 18:33:55 |
| 18 | Superboy from your amendment to your joint venture, | 18:34:00 |
| 19 | which is Exhibit 13, that you entered into with the | 18:34:04 |
| 20 | president of Pacific Pictures Corporation was the | 18:34:07 |
| 21 | advice given to you by the president of Pacific | 18:34:11 |
| 22 | Pictures Corporation? | 18:34:15 |
| 23 | A. As my attorney, yes. | 18:34:17 |
| 24 | Q. And you had no other basis other than what | 18:34:20 |
| 25 | your attorney told you, other than what Mr. Toberoff | 18:34:23 |

EXHIBIT 37
1430

MARK WARREN PEARY - 6/29/2011

Page 329

| | | |
|---|---|---|
| 1 | told you, correct? | 18:34:25 |
| 2 | A.  Yes. | 18:34:25 |
| 3 | Q.  And you refused to -- to share the basis | 18:34:29 |
| 4 | for your judgment simply because your lawyer told | 18:34:36 |
| 5 | you? | 18:34:39 |
| 6 | A.  My counsel told me, yes. | 18:34:41 |
| 7 | Q.  And -- and you understood at the time that | 18:34:47 |
| 8 | you relied exclusively on the advice of | 18:34:55 |
| 9 | Mr. Toberoff, that he was the lawyer for the Siegels | 18:35:00 |
| 10 | who were claiming 100 percent rights to Superboy, | 18:35:06 |
| 11 | correct? | 18:35:06 |
| 12 | A.  Yes. | 18:35:06 |
| 13 | Q.  Now, you said that this agreement got | 18:35:29 |
| 14 | terminated or canceled because you learned from | 18:35:40 |
| 15 | Mr. Toberoff that it was invalid. | 18:35:45 |
| 16 | Is that correct? | 18:35:45 |
| 17 | MR. TOBEROFF:  I believe that misstates his | 18:35:50 |
| 18 | testimony. | 18:35:51 |
| 19 | THE WITNESS:  I -- I don't remember the | 18:35:53 |
| 20 | reason why I said. | 18:35:55 |
| 21 | BY MR. PETROCELLI: | 18:35:55 |
| 22 | Q.  What was your understanding why the | 18:35:59 |
| 23 | reason -- why the agreement was invalid? | 18:36:01 |
| 24 | A.  I don't know if I thought it was invalid. | 18:36:06 |
| 25 | We changed it to a legal retainer because it was a | 18:36:09 |

EXHIBIT 37
1431

MARK WARREN PEARY - 6/29/2011

Page 330

| | | |
|---|---|---|
| 1 | better format. | 18:36:12 |
| 2 | Q.  Why -- and -- but you also in connection | 18:36:18 |
| 3 | with that decision received advice that certain | 18:36:21 |
| 4 | parts of your agreement might not be valid, correct? | 18:36:27 |
| 5 | A.  I believe so. | 18:36:35 |
| 6 | Q.  What parts? | 18:36:35 |
| 7 | MR. TOBEROFF:  I'll -- I'll -- I'll -- he | 18:36:43 |
| 8 | can't go into that without divulging the substance | 18:36:46 |
| 9 | of his communications with me on the subject. | 18:36:51 |
| 10 | BY MR. PETROCELLI: | 18:36:51 |
| 11 | Q.  Well, as the executor of the estate | 18:36:55 |
| 12 | entering into -- well, let me start all over again. | 18:36:58 |
| 13 | Take a look at Exhibit 20. | 18:37:00 |
| 14 | (The document referred to was | 18:37:09 |
| 15 | marked for identification by the | 18:37:09 |
| 16 | C.S.R. as Exhibit 20 and attached | 18:37:09 |
| 17 | to this deposition.) | 18:37:09 |
| 18 | BY MR. PETROCELLI: | 18:37:09 |
| 19 | Q.  This is the September 10, 2004 document | 18:37:16 |
| 20 | that you signed and your mother also signed, | 18:37:20 |
| 21 | correct? | 18:37:20 |
| 22 | A.  Yes. | 18:37:20 |
| 23 | Q.  You signed it both in your individual | 18:37:25 |
| 24 | capacity as executor of Mr. Shuster's estate? | 18:37:26 |
| 25 | A.  Yes. | 18:37:29 |

EXHIBIT 37
1432

MARK WARREN PEARY - 6/29/2011

Page 331

| | | |
|---|---|---|
| 1 | Q. And it says -- it's a letter from | 18:37:31 |
| 2 | Mr. Toberoff to you and to Ms. Peavy, right? | 18:37:37 |
| 3 | A. Yes. | 18:37:42 |
| 4 | Q. It says: | 18:37:43 |
| 5 | "This is to confirm that, 1, | 18:37:44 |
| 6 | the joint venture agreement dated | 18:37:46 |
| 7 | as of November 23, 2001 between you | 18:37:48 |
| 8 | and Pacific Pictures Corporation | 18:37:50 |
| 9 | and, 2, the engagement agreement | 18:37:53 |
| 10 | dated October 27, 2003 between the | 18:37:56 |
| 11 | estate of Joseph Shuster and | 18:37:59 |
| 12 | Pacific Pictures Corp. have been | 18:38:01 |
| 13 | canceled. Sincerely yours, Marc | 18:38:03 |
| 14 | Toberoff." | 18:38:03 |
| 15 | And it's on the letterhead of Pacific | 18:38:08 |
| 16 | Pictures Corporation. | 18:38:11 |
| 17 | Do you see that? | 18:38:11 |
| 18 | A. Yes. | 18:38:11 |
| 19 | Q. When you agreed to this cancellation, what | 18:38:18 |
| 20 | provisions of your prior agreement did you believe | 18:38:26 |
| 21 | were invalid? | 18:38:28 |
| 22 | MR. TOBEROFF: Same instruction. | 18:38:33 |
| 23 | (Unanswered question.) | 18:38:33 |
| 24 | BY MR. PETROCELLI: | 18:38:33 |
| 25 | Q. Were there drafts of the October 27, 2003 | 18:38:40 |

EXHIBIT 37
1433

MARK WARREN PEARY - 6/29/2011

Page 332

| | | |
|---|---|---|
| 1 | amendment to the joint venture or did you just sign | 18:38:42 |
| 2 | the one and only version that was given to you? | 18:38:44 |
| 3 | A.  I don't remember if there were any other | 18:38:53 |
| 4 | drafts. | 18:38:54 |
| 5 | Q.  Were there drafts of Exhibit 20 in the | 18:38:54 |
| 6 | September 10, 2004 document that you have in front | 18:38:56 |
| 7 | of you? | 18:39:04 |
| 8 | A.  I only recall getting this. | 18:39:04 |
| 9 | Q.  Excuse me?  You only recall receiving? | 18:39:10 |
| 10 | A.  This.  I only recall getting this document. | 18:39:10 |
| 11 | Q.  If you go back and look at Exhibit 10 for a | 18:39:12 |
| 12 | moment -- | 18:39:15 |
| 13 | A.  Which is? | 18:39:15 |
| 14 | Q.  Exhibit 10.  And paragraph -- paragraph 8 | 18:39:32 |
| 15 | and you see the reference in there that in the event | 18:40:04 |
| 16 | of a termination for any reason, the rights will be | 18:40:06 |
| 17 | held by the claimants, that's you and your mother, | 18:40:11 |
| 18 | 50 percent, and by PPC as tenants in common, 50 | 18:40:14 |
| 19 | percent. | 18:40:19 |
| 20 | Do you see that, paragraph 8? | 18:40:20 |
| 21 | A.  Yes. | 18:40:20 |
| 22 | Q.  And you see the same provision in Exhibit | 18:40:21 |
| 23 | 13 in paragraph 7, that's the October 27, 2003 | 18:40:24 |
| 24 | amendment.  In the event of a termination for any | 18:40:30 |
| 25 | reason the rights go to you 50 percent, the estate, | 18:40:33 |

EXHIBIT 37
1434

MARK WARREN PEARY - 6/29/2011

Page 333

| | |
|---|---|
| 1   and then 50 percent PPC. | 18:40:42 |
| 2        Do you see that? | 18:40:47 |
| 3    A.   2003, which? | 18:40:47 |
| 4    Q.   Paragraph 7. | 18:41:12 |
| 5    A.   Oh, 7.  Okay.  Yeah, okay. | 18:41:12 |
| 6    Q.   You got that? | 18:41:20 |
| 7    A.   In the event of termination? | 18:41:32 |
| 8    Q.   Right, for any reason. | 18:41:33 |
| 9    A.   On expiration -- oh, okay. | 18:41:34 |
| 10   Q.   So you see it has the same provision, | 18:41:37 |
| 11  correct? | 18:41:37 |
| 12   A.   Almost.  It just leaves out the word | 18:41:40 |
| 13  "venture" is all. | 18:41:44 |
| 14   Q.   Okay.  Now, are you aware of any document | 18:41:47 |
| 15  at the time you executed Exhibit 20, which is the | 18:41:51 |
| 16  December -- December -- excuse me, the September 10, | 18:41:54 |
| 17  2004 document, that states that the rights do not go | 18:41:58 |
| 18  50 percent to the estate and 50 percent to PPC in | 18:42:09 |
| 19  the event of a termination? | 18:42:14 |
| 20   A.   Not in that document, no. | 18:42:16 |
| 21   Q.   It's not in Exhibit 20, correct? | 18:42:20 |
| 22   A.   That's correct. | 18:42:24 |
| 23   Q.   Is there any other document of which you | 18:42:24 |
| 24  were aware that provided that as a result of | 18:42:26 |
| 25  executing Exhibit 20, the rights went other than as | 18:42:29 |

EXHIBIT 37
1435

MARK WARREN·PEARY — 6/29/2011

Page 334

| | | |
|---|---|---|
| 1 | directed by Exhibits 10 and 13, the joint venture | 18:42:35 |
| 2 | agreements? | 18:42:39 |
| 3 | A.  Yes. | 18:42:39 |
| 4 | Q.  What document is that? | 18:42:42 |
| 5 | A.  The legal retainer. | 18:42:44 |
| 6 | Q.  Okay.  Show me that.  Here is our copy of | 18:42:46 |
| 7 | it.  It's Exhibit 21. | 18:42:54 |
| 8 | MR. TOBEROFF:  May I have a copy, please? | 18:43:01 |
| 9 | (The document referred to was | 18:43:03 |
| 10 | marked for identification by the | 18:43:03 |
| 11 | C.S.R. as Exhibit 21 and attached | 18:43:03 |
| 12 | to this deposition.) | 18:43:11 |
| 13 | BY MR. PETROCELLI: | 18:43:11 |
| 14 | Q.  Now, this is a copy that's redacted.  Do | 18:43:12 |
| 15 | you understand what "redacted" means?  When | 18:43:19 |
| 16 | Mr. Toberoff produced it to us he excised or omitted | 18:43:23 |
| 17 | various parts of it, so it's not a complete | 18:43:26 |
| 18 | document, but it's all that we have. | 18:43:28 |
| 19 | This is a document that you signed, what | 18:43:39 |
| 20 | you're now calling this retainer agreement, | 18:43:46 |
| 21 | Exhibit 21? | 18:43:48 |
| 22 | A.  Yes. | 18:43:48 |
| 23 | Q.  Okay.  And did you sign this at or around | 18:43:48 |
| 24 | the time that you executed Exhibit 20, the | 18:43:51 |
| 25 | September 10, 2004 document? | 18:43:54 |

EXHIBIT 37
1436

MARK WARREN PEARY - 6/29/2011

Page 335

| | |
|---|---|
| 1 | A.  It was signed around that time. | 18:44:04 |
| 2 | Q.  And where in Exhibit 21, the -- by the way, | 18:44:09 |
| 3 | would you call Exhibit 21 the -- more or less a | 18:44:21 |
| 4 | standard legal retainer agreement? | 18:44:24 |
| 5 | A.  I believe. | 18:44:28 |
| 6 | MR. TOBEROFF:  Vague. | 18:44:28 |
| 7 | BY MR. PETROCELLI: | 18:44:28 |
| 8 | Q.  Where in the Exhibit 21 does it say that | 18:44:30 |
| 9 | the rights upon termination of the venture go other | 18:44:35 |
| 10 | than as directed by the joint venture agreements, | 18:44:41 |
| 11 | Exhibits 10 and 13? | 18:44:45 |
| 12 | A.  In 9 it says: | 18:44:51 |
| 13 | "This agreement supersedes | 18:44:52 |
| 14 | all prior and contemporaneous | 18:44:54 |
| 15 | understandings." | 18:44:56 |
| 16 | Q.  Is there any place in this document that | 18:45:01 |
| 17 | says that in the event that the joint venture | 18:45:03 |
| 18 | agreements -- because the joint venture agreements | 18:45:06 |
| 19 | have been canceled, that the rights go not as | 18:45:10 |
| 20 | directed by the joint venture agreements but in some | 18:45:13 |
| 21 | other manner?  Is there some more explicit clause | 18:45:17 |
| 22 | than -- than 9? | 18:45:20 |
| 23 | MR. TOBEROFF:  Are you asking -- are you | 18:45:20 |
| 24 | asking him to read the document? | 18:45:22 |
| 25 | MR. PETROCELLI:  No, I'm asking him to tell | 18:45:24 |

EXHIBIT 37
1437

MARK WARREN PEARY - 6/29/2011

Page 336

| | | |
|---|---|---|
| 1 | me from memory, because I've read what you've given | 18:45:27 |
| 2 | me and there is no such statement in what you | 18:45:29 |
| 3 | produced to us in the redacted version. | 18:45:32 |
| 4 | Q.  So is there any such statement that you | 18:45:38 |
| 5 | recall that appeared in this document when you | 18:45:39 |
| 6 | signed it before it was sent to us in redacted form? | 18:45:42 |
| 7 | A.  That specifically states? | 18:45:45 |
| 8 | Q.  That notwithstanding -- in words or | 18:45:46 |
| 9 | substance, notwithstanding what is stated in the | 18:45:49 |
| 10 | joint venture agreement, in the event of a | 18:45:52 |
| 11 | termination for any reason, the claimants will own | 18:45:53 |
| 12 | 50 percent and PPC will own the remaining 50 | 18:45:56 |
| 13 | percent? | 18:45:59 |
| 14 | MR. TOBEROFF:  Asked and answered. | 18:46:00 |
| 15 | BY MR. PETROCELLI: | 18:46:00 |
| 16 | Q.  That the rights will not go to Mr. Toberoff | 18:46:01 |
| 17 | or any company associated with him or PPC, but will | 18:46:04 |
| 18 | go as -- in some different way? | 18:46:08 |
| 19 | MR. TOBEROFF:  Asked and answered. | 18:46:11 |
| 20 | BY MR. PETROCELLI: | 18:46:11 |
| 21 | Q.  Something like that.  Is there some | 18:46:12 |
| 22 | explicit reference in this retainer agreement along | 18:46:13 |
| 23 | those lines? | 18:46:16 |
| 24 | MR. TOBEROFF:  Asked and answered. | 18:46:17 |
| 25 | You can answer. | 18:46:21 |

EXHIBIT 37
1438

MARK WARREN PEARY - 6/29/2011

Page 337

| | | |
|---|---|---|
| 1 | THE WITNESS:  Not exactly as you stated it. | 18:46:22 |
| 2 | BY MR. PETROCELLI: | 18:46:22 |
| 3 | Q.  Is there any reference to the disposition | 18:46:25 |
| 4 | of the rights on termination of the joint venture | 18:46:28 |
| 5 | other than the first sentence of paragraph 9 that | 18:46:33 |
| 6 | you just pointed out to me? | 18:46:37 |
| 7 | A.  Well, to me, the -- | 18:46:42 |
| 8 | MR. TOBEROFF:  You'd have to read the | 18:46:44 |
| 9 | agreement before you can answer. | 18:46:45 |
| 10 | Do you want him to read the agreement? | 18:46:47 |
| 11 | BY MR. PETROCELLI: | 18:46:48 |
| 12 | Q.  Are you aware of anything?  You pointed | 18:46:49 |
| 13 | readily to paragraph 9.  Are you aware of any other | 18:46:52 |
| 14 | agreement, other provision in the document that | 18:46:54 |
| 15 | deals with the disposition of the rights? | 18:46:56 |
| 16 | MR. TOBEROFF:  Without reading it? | 18:46:58 |
| 17 | MR. PETROCELLI:  Yes.  Without reading it | 18:47:00 |
| 18 | word for word. | 18:47:02 |
| 19 | Q.  You can scan it. | 18:47:03 |
| 20 | A.  To me, it's -- it's clear between the legal | 18:47:15 |
| 21 | retainer and the letter that canceled the joint | 18:47:20 |
| 22 | venture that the -- the legal retainer, as it | 18:47:23 |
| 23 | states, supersedes everything else. | 18:47:29 |
| 24 | Q.  Your understanding that Pacific Pictures | 18:47:33 |
| 25 | Corporation was a party to this retainer agreement? | 18:47:36 |

EXHIBIT 37
1439

MARK WARREN PEARY - 6/29/2011

Page 338

| | | |
|---|---|---|
| 1 | A. No. | 18:47:36 |
| 2 | Q. So Pacific Pictures Corporation didn't | 18:47:45 |
| 3 | agree to anything in this retainer agreement so far | 18:47:50 |
| 4 | as you know, right? | 18:47:56 |
| 5 | A. As far as I know they're not a party. | 18:47:57 |
| 6 | Q. So, are you aware of a document by which | 18:47:59 |
| 7 | Pacific Pictures Corporation specifically stated | 18:48:02 |
| 8 | that notwithstanding the provisions of the joint | 18:48:07 |
| 9 | venture agreement in the event of a termination, | 18:48:09 |
| 10 | Pacific Pictures Corporation will not own any | 18:48:12 |
| 11 | rights? | 18:48:16 |
| 12 | A. The -- my understanding of the Pacific | 18:48:17 |
| 13 | Pictures, it says if the venture is terminated, not | 18:48:26 |
| 14 | if it's canceled. | 18:48:30 |
| 15 | Q. Terminated for any reason, right? | 18:48:32 |
| 16 | A. That's -- if the venture is -- it's not the | 18:48:35 |
| 17 | same thing as canceled. That's my understanding. | 18:48:38 |
| 18 | Q. What's the difference between the two? | 18:48:43 |
| 19 | A. The -- the difference, being canceled means | 18:48:44 |
| 20 | it has been supplanted by the legal retainer and | 18:48:48 |
| 21 | supersedes all prior agreements like it states here. | 18:48:52 |
| 22 | Q. Pacific Pictures is not a party to this | 18:48:55 |
| 23 | agreement you said, right? | 18:48:58 |
| 24 | A. Not to the legal retainer. | 18:48:59 |
| 25 | Q. Right. So you're saying that -- who told | 18:49:00 |

EXHIBIT 37
1440

MARK WARREN PEARY - 6/29/2011

Page 339

| | | |
|---|---|---|
| 1 | you that the word "canceled" means that the | 18:49:03 |
| 2 | termination provisions of the joint venture | 18:49:07 |
| 3 | agreements no longer apply? | 18:49:09 |
| 4 | MR. TOBEROFF:  Assumes facts.  Lacks | 18:49:11 |
| 5 | foundation. | 18:49:11 |
| 6 | BY MR. PETROCELLI: | 18:49:11 |
| 7 | Q.  Is that something that you just thought of | 18:49:17 |
| 8 | right now or is that something that you were told at | 18:49:18 |
| 9 | the time that by using one word "canceled" instead | 18:49:21 |
| 10 | of the word "terminated," that would solve the | 18:49:23 |
| 11 | problem? | 18:49:29 |
| 12 | A.  That's my understanding of it. | 18:49:32 |
| 13 | Q.  And who told you that? | 18:49:33 |
| 14 | MR. TOBEROFF:  Assumes facts.  Lacks | 18:49:37 |
| 15 | foundation. | 18:49:39 |
| 16 | THE WITNESS:  I told myself that. | 18:49:39 |
| 17 | BY MR. PETROCELLI: | 18:49:39 |
| 18 | Q.  No one told you that, in other words, | 18:49:40 |
| 19 | right?  That's something you've come up with on your | 18:49:45 |
| 20 | own? | 18:49:47 |
| 21 | A.  We have a clear -- a clear understanding | 18:49:47 |
| 22 | when we switched from the joint venture to the legal | 18:49:50 |
| 23 | retainer.  We clearly understood each other. | 18:49:52 |
| 24 | Q.  Who is "we"? | 18:49:55 |
| 25 | A.  Me and Marc Toberoff. | 18:49:57 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1441

MARK WARREN PEARY - 6/29/2011

Page 340

| | | |
|---|---|---|
| 1 | Q. How do you know that? | 18:49:58 |
| 2 | A. Because we discussed it. | 18:49:59 |
| 3 | Q. What did you -- what did you and he discuss | 18:50:01 |
| 4 | in that regard? | 18:50:03 |
| 5 | MR. TOBEROFF: I'll allow you to answer | 18:50:06 |
| 6 | that question without waiver of the attorney-client | 18:50:07 |
| 7 | privilege. | 18:50:09 |
| 8 | THE WITNESS: We discussed -- | 18:50:11 |
| 9 | MR. TOBEROFF: Do you agree that I'm not | 18:50:12 |
| 10 | waiving the privilege by allowing him to answer | 18:50:14 |
| 11 | that? | 18:50:16 |
| 12 | MR. PETROCELLI: No. | 18:50:17 |
| 13 | MR. TOBEROFF: Okay. Then I instruct you | 18:50:18 |
| 14 | not to answer with our discussions. | 18:50:19 |
| 15 | (Unanswered question.) | 18:50:21 |
| 16 | MR. PETROCELLI: No, I can't -- I can't | 18:50:27 |
| 17 | allow you to selectively waive like that. | 18:50:29 |
| 18 | MR. TOBEROFF: Fine. | 18:50:36 |
| 19 | BY MR. PETROCELLI: | 18:50:36 |
| 20 | Q. Did you -- have you reviewed a copy of this | 18:50:56 |
| 21 | retainer agreement recently? | 18:51:03 |
| 22 | A. I believe so. | 18:51:07 |
| 23 | Q. When? | 18:51:09 |
| 24 | A. I believe before I came here. | 18:51:13 |
| 25 | Q. In connection with the deposition? | 18:51:18 |

EXHIBIT 37
1442

MARK WARREN PEARY - 6/29/2011

Page 341

| | | |
|---|---|---|
| 1 | A.  I would say so. | 18:51:23 |
| 2 | Q.  Do you have a copy at home? | 18:51:25 |
| 3 | A.  Yes. | 18:51:26 |
| 4 | Q.  Where was it maintained? | 18:51:31 |
| 5 | A.  A copy? | 18:51:37 |
| 6 | Q.  Yes. | 18:51:37 |
| 7 | A.  There's one in a filing cabinet. | 18:51:39 |
| 8 | Q.  And you read this retainer agreement and | 18:51:44 |
| 9 | you also said you read the consent agreement and | 18:51:47 |
| 10 | what else did you read? | 18:51:51 |
| 11 | A.  The deposition materials. | 18:51:55 |
| 12 | Q.  The prior deposition in the Siegel case? | 18:51:57 |
| 13 | A.  Yes. | 18:51:59 |
| 14 | Q.  And you read all of those materials prior | 18:52:00 |
| 15 | to coming here for the deposition? | 18:52:03 |
| 16 | A.  Yes. | 18:52:05 |
| 17 | Q.  Did you bring the retainer agreement with | 18:52:06 |
| 18 | you? | 18:52:08 |
| 19 | A.  No. | 18:52:09 |
| 20 | Q.  Is this the last document that you have | 18:52:16 |
| 21 | signed in connection with either Mr. Toberoff or the | 18:52:21 |
| 22 | Siegels other than the subsequent 2008 consent | 18:52:27 |
| 23 | agreement? | 18:52:31 |
| 24 | A.  This would be the last one other than that. | 18:52:32 |
| 25 | Q.  Next -- so this is the next to last one, | 18:52:34 |

Merrill  Corporation  -  Los Angeles

800-826-0277                                www.merrillcorp.com/law

EXHIBIT 37
1443

MARK WARREN PEARY - 6/29/2011

Page 342

| | | |
|---|---|---|
| 1 | right? | 18:52:34 |
| 2 | A.  I believe so. | 18:52:38 |
| 3 | Q.  And does this document, Exhibit 21, contain | 18:52:38 |
| 4 | any provisions in it that deal with agreements with | 18:52:48 |
| 5 | the Siegels or getting the consent of the Siegels? | 18:52:55 |
| 6 | MR. TOBEROFF:  You have to read the | 18:53:05 |
| 7 | document. | 18:53:06 |
| 8 | MR. PETROCELLI:  I'm talking about the | 18:53:07 |
| 9 | parts that are omitted.  The redacted parts. | 18:53:08 |
| 10 | MR. TOBEROFF:  He can't testify as to the | 18:53:13 |
| 11 | redacted parts, obviously. | 18:53:15 |
| 12 | Instruct you not to answer any questions | 18:53:18 |
| 13 | about the redacted parts. | 18:53:18 |
| 14 | (Unanswered question.) | 18:53:21 |
| 15 | MR. PETROCELLI:  With resp- -- yeah, | 18:53:21 |
| 16 | because I can read the parts that have been produced | 18:53:22 |
| 17 | to us. | 18:53:24 |
| 18 | Q.  Based on your review of the entire | 18:53:25 |
| 19 | document, was there any reference in the document to | 18:53:27 |
| 20 | the Siegels? | 18:53:29 |
| 21 | MR. TOBEROFF:  Instruct you not to answer. | 18:53:33 |
| 22 | (Unanswered question.) | 18:53:34 |
| 23 | BY MR. PETROCELLI: | 18:53:34 |
| 24 | Q.  Was there -- is there any reference in the | 18:53:36 |
| 25 | document to Superboy? | 18:53:38 |

EXHIBIT 37
1444

MARK WARREN PEARY - 6/29/2011

Page 343

| | | |
|---|---|---|
| 1 | MR. TOBEROFF: Are you asking him | 18:53:43 |
| 2 | whether -- about the omitted portions in the | 18:53:44 |
| 3 | document? | 18:53:46 |
| 4 | MR. PETROCELLI: Yes. | 18:53:46 |
| 5 | MR. TOBEROFF: Okay. | 18:53:47 |
| 6 | MR. PETROCELLI: In other words, I can read | 18:53:47 |
| 7 | the portion -- | 18:53:48 |
| 8 | MR. TOBEROFF: Since you're concerned about | 18:53:49 |
| 9 | your time, we can save a lot of time, I'm going to | 18:53:50 |
| 10 | instruct him not to answer any question as to the | 18:53:53 |
| 11 | redacted portions of the agreement that have been | 18:53:55 |
| 12 | upheld by the court. | 18:53:58 |
| 13 | (Unanswered question.) | 18:54:00 |
| 14 | BY MR. PETROCELLI: | 18:54:00 |
| 15 | Q. Have you been aware of any efforts to | 18:54:18 |
| 16 | market any rights for Superman that you or the | 18:54:24 |
| 17 | estate may own? | 18:54:30 |
| 18 | A. No. | 18:54:31 |
| 19 | Q. Are you aware that Mr. -- of any efforts by | 18:54:35 |
| 20 | Mr. Toberoff to approach third parties, like motion | 18:54:38 |
| 21 | picture studios or others, to try to sell an | 18:54:47 |
| 22 | interest in Superman? | 18:54:54 |
| 23 | MR. TOBEROFF: Instruct you not to answer | 18:54:54 |
| 24 | as to any awareness that can only be based on the | 18:54:54 |
| 25 | substance of communications between us. | 18:54:58 |

MARK WARREN PEARY - 6/29/2011

Page 344

| | | |
|---|---|---|
| 1 | (Unanswered question.) | 18:54:59 |
| 2 | BY MR. PETROCELLI: | 18:54:59 |
| 3 | Q.  Are you aware of any reports by | 18:55:00 |
| 4 | Mr. Toberoff, not of legal advice, but that he met | 18:55:01 |
| 5 | with third parties to discuss the possible sale of | 18:55:04 |
| 6 | your interest in Superman? | 18:55:12 |
| 7 | MR. TOBEROFF:  Same instruction. | 18:55:14 |
| 8 | (Unanswered question.) | 18:55:15 |
| 9 | MR. PETROCELLI:  On what ground? | 18:55:17 |
| 10 | MR. TOBEROFF:  Same ground. | 18:55:20 |
| 11 | MR. PETROCELLI:  Attorney-client privilege? | 18:55:21 |
| 12 | MR. TOBEROFF:  Same grounds. | 18:55:22 |
| 13 | MR. PETROCELLI:  Even though there's no | 18:55:22 |
| 14 | legal advice? | 18:55:24 |
| 15 | MR. TOBEROFF:  I'm not going to argue with | 18:55:24 |
| 16 | you. | 18:55:26 |
| 17 | BY MR. PETROCELLI: | 18:55:26 |
| 18 | Q.  Are you aware that -- whether or not any | 18:55:27 |
| 19 | contacts have been made to sell the estate's | 18:55:29 |
| 20 | interest or negotiate potential sale of the estate's | 18:55:33 |
| 21 | interest on your behalf? | 18:55:37 |
| 22 | MR. TOBEROFF:  Same instruction. | 18:55:38 |
| 23 | (Unanswered question.) | 18:55:38 |
| 24 | BY MR. PETROCELLI: | 18:55:38 |
| 25 | Q.  Is the -- what is the estate doing to | 18:55:43 |

EXHIBIT 37
1446

MARK WARREN PEARY - 6/29/2011

Page 345

| | | |
|---|---|---|
| 1 | market its interest? | 18:55:49 |
| 2 | A. Currently? | 18:55:56 |
| 3 | Q. Yes. What -- since you became the executor | 18:55:57 |
| 4 | of the estate, what efforts have you undertaken as | 18:55:59 |
| 5 | the executor to determine -- to attempt to sell any | 18:56:02 |
| 6 | interest in the rights that the estate seeks to -- | 18:56:07 |
| 7 | seeks to recapture? | 18:56:11 |
| 8 | A. I don't believe we've done that yet. | 18:56:13 |
| 9 | Q. Are you aware of Mr. Toberoff having | 18:56:18 |
| 10 | contacted third parties on behalf of the estate? | 18:56:22 |
| 11 | MR. TOBEROFF: I instruct you not to | 18:56:26 |
| 12 | answer. It implicates our communications. | 18:56:28 |
| 13 | (Unanswered question.) | 18:56:30 |
| 14 | BY MR. PETROCELLI: | 18:56:30 |
| 15 | Q. Are you aware -- have you discussed that | 18:56:35 |
| 16 | subject with your mother? | 18:56:37 |
| 17 | A. I don't believe so. | 18:56:44 |
| 18 | Q. Or with the Siegels? | 18:56:44 |
| 19 | A. No. | 18:56:45 |
| 20 | Q. Take a look at Exhibit 22. | 18:56:47 |
| 21 | (The document referred to was | 18:56:49 |
| 22 | marked for identification by the | 18:56:49 |
| 23 | C.S.R. as Exhibit 22 and attached | 18:56:49 |
| 24 | to this deposition.) | 18:56:55 |
| 25 | MR. TOBEROFF: Can I get a time check how | 18:56:55 |

EXHIBIT 37
1447

MARK WARREN PEARY - 6/29/2011

Page 346

| | | |
|---|---|---|
| 1 | long we've been going here? | 18:56:57 |
| 2 | THE VIDEOGRAPHER:  Yes.  Approximately 14 | 18:56:58 |
| 3 | minutes left in the seven hours. | 18:57:01 |
| 4 | MR. TOBEROFF:  Could you please let me know | 18:57:04 |
| 5 | when it's seven hours? | 18:57:06 |
| 6 | BY MR. PETROCELLI: | 18:57:06 |
| 7 | Q.  Are you aware of -- have you seen this | 18:57:26 |
| 8 | document before? | 18:57:30 |
| 9 | A.  I don't believe so. | 18:57:35 |
| 10 | Q.  Have you seen any e-mails between Paramount | 18:57:36 |
| 11 | Pictures and Marc Toberoff prior to today? | 18:57:43 |
| 12 | A.  No. | 18:57:44 |
| 13 | Q.  You'll see on page 1 that this is an e-mail | 18:57:47 |
| 14 | from Mr. Toberoff to individuals at Paramount dated | 18:57:49 |
| 15 | April 29, 2010. | 18:57:57 |
| 16 | A.  Yes. | 18:57:57 |
| 17 | Q.  And you see that some of the attachments | 18:58:00 |
| 18 | are listed below.  One of them is the Shuster | 18:58:03 |
| 19 | termination. | 18:58:06 |
| 20 | Do you see that? | 18:58:06 |
| 21 | A.  Which one is that on the e-mail? | 18:58:12 |
| 22 | Q.  The first page. | 18:58:15 |
| 23 | A.  Yeah.  The attachments. | 18:58:16 |
| 24 | Q.  You see the reference to Shuster | 18:58:17 |
| 25 | termination.  It says, "Three attachments, Shuster | 18:58:19 |

EXHIBIT 37
1448

MARK WARREN PEARY - 6/29/2011

Page 347

| | | |
|---|---|---|
| 1 | termination." | 18:58:21 |
| 2 | A.  That's the "Siegel V"? | 18:58:25 |
| 3 | Q.  Excuse me?  I can't hear you, sir. | 18:58:27 |
| 4 | A.  That's the "Siegel V" attachments at the | 18:58:32 |
| 5 | bottom? | 18:58:34 |
| 6 | Q.  I'm just asking, do you see the reference | 18:58:37 |
| 7 | to Shuster termination on page 1? | 18:58:39 |
| 8 | A.  Oh, let me see. | 18:58:41 |
| 9 | Q.  Are you looking at the same document I am? | 18:58:48 |
| 10 | MR. TOBEROFF:  We have a different document | 18:58:53 |
| 11 | here. | 18:58:53 |
| 12 | MR. PETROCELLI:  Well, that explains the | 18:58:53 |
| 13 | confusion.  Okay.  Can you get -- what page is he | 18:58:54 |
| 14 | on? | 18:59:02 |
| 15 | Q.  Okay.  So, for the record, you're looking | 18:59:13 |
| 16 | on a page that's included in Exhibit 22 and at the | 18:59:20 |
| 17 | top it says, "Attachments for Paramount part 2/2," | 18:59:22 |
| 18 | correct? | 18:59:22 |
| 19 | At the bottom there's a Bates number LSL | 18:59:30 |
| 20 | 00098. | 18:59:32 |
| 21 | Do you see that? | 18:59:34 |
| 22 | A.  Yes. | 18:59:34 |
| 23 | Q.  Okay.  And you'll see I just wanted to | 18:59:34 |
| 24 | direct your attention to the e-mail in the reference | 18:59:36 |
| 25 | to the Shuster termination notice. | 18:59:38 |

EXHIBIT 37
1449

MARK WARREN PEARY - 6/29/2011

Page 348

| | | |
|---|---|---|
| 1 | You see that now, correct? | 18:59:43 |
| 2 | A.  Yes. | 18:59:43 |
| 3 | Q.  Okay.  Now, can you turn to the page that | 18:59:45 |
| 4 | says part 1 of 2, LSL 00209.  And there's another | 18:59:54 |
| 5 | e-mail there from Mr. Toberoff to folks at Paramount | 19:00:04 |
| 6 | saying: | 19:00:08 |
| 7 | "This is the first two | 19:00:08 |
| 8 | e-mails attaching requested | 19:00:11 |
| 9 | documents." | 19:00:13 |
| 10 | And then there's some description of the | 19:00:18 |
| 11 | documents that were forwarded, including documents | 19:00:20 |
| 12 | relating to the Shusters. | 19:00:26 |
| 13 | Do you see that? | 19:00:29 |
| 14 | A.  Yes. | 19:00:29 |
| 15 | Q.  Okay.  Now, were you aware that documents | 19:00:30 |
| 16 | relating to the Shuster termination interest were | 19:00:35 |
| 17 | being sent to Paramount Pictures? | 19:00:40 |
| 18 | A.  I don't think so. | 19:00:47 |
| 19 | Q.  Okay.  First time you're seeing this? | 19:00:49 |
| 20 | A.  These e-mails, yes. | 19:00:52 |
| 21 | Q.  Okay.  And were you aware of any contacts | 19:00:56 |
| 22 | that Mr. Toberoff had made with Paramount regarding | 19:01:01 |
| 23 | the Shuster termination interest prior to today? | 19:01:04 |
| 24 | A.  There have been discussions. | 19:01:13 |
| 25 | MR. TOBEROFF:  Don't -- you can't talk | 19:01:16 |

EXHIBIT 37
1450

MARK WARREN PEARY - 6/29/2011

Page 349

| | | |
|---|---|---|
| 1 | about discussions with me. | 19:01:18 |
| 2 | THE WITNESS:  I know.  I know.  I can't -- | 19:01:18 |
| 3 | BY MR. PETROCELLI: | 19:01:18 |
| 4 | Q.  Discussions with whom? | 19:01:21 |
| 5 | A.  My attorney. | 19:01:21 |
| 6 | Q.  Who is your attorney? | 19:01:22 |
| 7 | A.  Marc Toberoff. | 19:01:23 |
| 8 | Q.  When did those discussions occur? | 19:01:24 |
| 9 | A.  I can't remember specific dates. | 19:01:25 |
| 10 | Q.  What year? | 19:01:32 |
| 11 | A.  Sometime in the seven years that he has | 19:01:35 |
| 12 | been working on this is all I can say. | 19:01:37 |
| 13 | Q.  Were you aware of discussions within the | 19:01:40 |
| 14 | last year having to do with Paramount? | 19:01:44 |
| 15 | MR. TOBEROFF:  If your awareness is solely | 19:01:51 |
| 16 | based on discussions with me, I have to cut it off. | 19:01:53 |
| 17 | I can't have you testify. | 19:01:55 |
| 18 | THE WITNESS:  Okay.  Can't say anything. | 19:01:58 |
| 19 | (Unanswered question.) | 19:02:01 |
| 20 | BY MR. PETROCELLI: | 19:02:01 |
| 21 | Q.  Have you had any discussions directly with | 19:02:01 |
| 22 | third parties, like Paramount? | 19:02:04 |
| 23 | A.  No. | 19:02:08 |
| 24 | Q.  How is it that the estate intends to -- | 19:02:18 |
| 25 | before I ask you that, take a look at Exhibit 23, | 19:02:21 |

EXHIBIT 37
1451

MARK WARREN PEARY - 6/29/2011

Page 350

| | | |
|---|---|---|
| 1 | which is a vehicle pass that Mr. Toberoff has | 19:02:27 |
| 2 | produced which says "Pitched Superman." | 19:02:31 |
| 3 | (The document referred to was | 19:02:38 |
| 4 | marked for identification by the | 19:02:38 |
| 5 | C.S.R. as Exhibit 23 and attached | 19:02:38 |
| 6 | to this deposition.) | 19:02:50 |
| 7 | BY MR. PETROCELLI: | 19:02:50 |
| 8 | Q.  Are you aware of any pitches that -- this | 19:02:52 |
| 9 | one is dated November 19, 2010.  It's got Bates | 19:02:55 |
| 10 | number LSL 00210 on it. | 19:02:58 |
| 11 | Do you see that? | 19:02:58 |
| 12 | A.  Yes. | 19:03:05 |
| 13 | Q.  Are you aware of any meetings that | 19:03:05 |
| 14 | Mr. Toberoff attended relating to the Shusters' | 19:03:10 |
| 15 | termination interest, meetings with third parties to | 19:03:15 |
| 16 | pitch Superman? | 19:03:17 |
| 17 | A.  Not this specifically. | 19:03:18 |
| 18 | Q.  How -- how is it that the estate intends to | 19:03:25 |
| 19 | get any money for the Superman interest that it has | 19:03:32 |
| 20 | sought to terminate? | 19:03:36 |
| 21 | MR. TOBEROFF:  You -- you can't -- I | 19:03:40 |
| 22 | instruct you not to answer that question if your | 19:03:42 |
| 23 | answer to that question is based on your discussions | 19:03:44 |
| 24 | with me and advice of counsel. | 19:03:46 |
| 25 | (Unanswered question.) | 19:03:48 |

EXHIBIT 37
1452

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | THE WITNESS:  Well, my understanding is | 19:03:51 |
| 2 | based on discussions with counsel. | 19:03:53 |
| 3 | BY MR. PETROCELLI: | 19:03:53 |
| 4 | Q.  I'm not asking about legal advice.  Your -- | 19:03:56 |
| 5 | in your capacity as executor of the estate, how is | 19:03:58 |
| 6 | it you -- you've asked for the powers to be granted | 19:04:03 |
| 7 | to you and they were granted to go and take various | 19:04:07 |
| 8 | proceedings to -- with respect to the Shuster | 19:04:15 |
| 9 | termination interest for the benefit of the estate. | 19:04:17 |
| 10 | How is it that you as the executor intend | 19:04:20 |
| 11 | to get any money for the termination interest? | 19:04:25 |
| 12 | MR. TOBEROFF:  Same instruction. | 19:04:30 |
| 13 | (Unanswered question.) | 19:04:31 |
| 14 | BY MR. PETROCELLI: | 19:04:31 |
| 15 | Q.  Have you given any thought to that? | 19:04:33 |
| 16 | MR. TOBEROFF:  Same instruction. | 19:04:36 |
| 17 | (Unanswered question.) | 19:04:36 |
| 18 | MR. PETROCELLI:  That -- | 19:04:37 |
| 19 | MR. TOBEROFF:  You can answer whether or | 19:04:39 |
| 20 | not, "yes" or "no," you've given any thought to it. | 19:04:40 |
| 21 | You can answer that. | 19:04:42 |
| 22 | THE WITNESS:  Yes.  I've given thought. | 19:04:45 |
| 23 | MR. TOBEROFF:  Okay. | 19:04:47 |
| 24 | BY MR. PETROCELLI: | 19:04:47 |
| 25 | Q.  And what -- what thoughts have you had on | 19:04:48 |

EXHIBIT 37
1453

MARK WARREN PEARY - 6/29/2011

Page 352

| | | |
|---|---|---|
| 1 | that subject? | 19:04:50 |
| 2 | MR. TOBEROFF:  Same instruction. | 19:04:51 |
| 3 | (Unanswered question.) | 19:04:51 |
| 4 | BY MR. PETROCELLI: | 19:04:51 |
| 5 | Q.  Are you incapable of having a thought on | 19:04:55 |
| 6 | that subject that does not involve Marc Toberoff? | 19:04:57 |
| 7 | MR. TOBEROFF:  Argumentative. | 19:05:01 |
| 8 | MR. PETROCELLI:  It's definitely not | 19:05:02 |
| 9 | argumentative. | 19:05:04 |
| 10 | Q.  In your role as executor of the estate, is | 19:05:07 |
| 11 | it your testimony that you have been able to -- you | 19:05:10 |
| 12 | can't do anything or even think of anything that | 19:05:15 |
| 13 | doesn't involve the legal advice of Marc Toberoff? | 19:05:17 |
| 14 | A.  That's correct. | 19:05:22 |
| 15 | Q.  Okay.  So everything that you do and | 19:05:25 |
| 16 | everything that you know as the executor of the | 19:05:27 |
| 17 | estate is based on the legal advice of Marc | 19:05:32 |
| 18 | Toberoff? | 19:05:37 |
| 19 | MR. TOBEROFF:  Vague. | 19:05:37 |
| 20 | THE WITNESS:  Yes.  Follow my counsel. | 19:05:41 |
| 21 | BY MR. PETROCELLI: | 19:05:43 |
| 22 | Q.  And -- well, I didn't ask you whether you | 19:05:43 |
| 23 | follow your counsel.  I'm asking you in your role | 19:05:45 |
| 24 | as -- you're executor, you don't have any judgment | 19:05:47 |
| 25 | or any ideas or any thoughts other than what | 19:05:54 |

EXHIBIT 37
1454

MARK WARREN PEARY - 6/29/2011

Page 353

| | | |
|---|---|---|
| 1 | Toberoff discusses with you. | 19:06:00 |
| 2 | Is that correct? | 19:06:00 |
| 3 | MR. TOBEROFF:  Misstates his testimony. | 19:06:03 |
| 4 | You can answer. | 19:06:04 |
| 5 | THE WITNESS:  That's correct. | 19:06:07 |
| 6 | BY MR. PETROCELLI: | 19:06:07 |
| 7 | Q.  Do you believe you're fit to be an executor | 19:06:16 |
| 8 | under those circumstances? | 19:06:18 |
| 9 | A.  Yes. | 19:06:22 |
| 10 | Q.  Have you disclosed to the court that you | 19:06:27 |
| 11 | refuse to say anything about your thinking, your | 19:06:29 |
| 12 | judgement, your thoughts or your actions because | 19:06:36 |
| 13 | everything is based on conversations with Marc | 19:06:38 |
| 14 | Toberoff as to which you will claim the privilege? | 19:06:41 |
| 15 | Is that something that you indicated to the probate | 19:06:43 |
| 16 | court when you sought permission to act as executor? | 19:06:46 |
| 17 | MR. TOBEROFF:  Misstates testimony and the | 19:06:53 |
| 18 | assertion of privilege. | 19:06:55 |
| 19 | THE WITNESS:  No. | 19:06:56 |
| 20 | BY MR. PETROCELLI: | 19:06:56 |
| 21 | Q.  Do you understand that you have fiduciary | 19:06:58 |
| 22 | duties to people other than your mother as the | 19:06:59 |
| 23 | beneficiary? | 19:07:07 |
| 24 | MR. TOBEROFF:  Calls for a legal | 19:07:08 |
| 25 | conclusion.  Lacks foundation.  Assumes facts. | 19:07:09 |

Merrill   Corporation   -   Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT 37
1455

MARK WARREN PEARY - 6/29/2011

Page 354

| | | |
|---|---|---|
| 1 | BY MR. PETROCELLI: | 19:07:09 |
| 2 | Q.  Who do you understand -- in your role as | 19:07:16 |
| 3 | the executor, who do you understand that you owe a | 19:07:18 |
| 4 | fiduciary duty to? | 19:07:23 |
| 5 | MR. TOBEROFF:  Calls for a legal | 19:07:24 |
| 6 | conclusion. | 19:07:24 |
| 7 | THE WITNESS:  My understanding is the | 19:07:26 |
| 8 | Shuster heirs. | 19:07:29 |
| 9 | BY MR. PETROCELLI: | 19:07:29 |
| 10 | Q.  And who is that? | 19:07:31 |
| 11 | A.  Jean, myself and my sister. | 19:07:35 |
| 12 | Q.  Is that a thought that you've had without | 19:07:38 |
| 13 | talking to Marc Toberoff or did Mr. Toberoff tell | 19:07:40 |
| 14 | you that? | 19:07:47 |
| 15 | A.  No, I'm -- I'm aware of that on my own. | 19:07:47 |
| 16 | Q.  Is that the only thing you're aware of on | 19:07:49 |
| 17 | your own? | 19:07:51 |
| 18 | MR. TOBEROFF:  About anything? | 19:07:52 |
| 19 | MR. PETROCELLI:  Correct. | 19:07:54 |
| 20 | Q.  Having to do with the administration of the | 19:07:56 |
| 21 | estate, and in particular, the termination interest. | 19:07:58 |
| 22 | MR. TOBEROFF:  Vague.  Overbroad. | 19:08:01 |
| 23 | THE WITNESS:  I don't know.  You would have | 19:08:03 |
| 24 | to be specific. | 19:08:04 |
| 25 | BY MR. PETROCELLI: | 19:08:04 |

MARK WARREN PEARY - 6/29/2011

Page 355

| | |
|---|---|
| 1      Q.  Has anyone told you that you owe a | 19:08:10 |
| 2   fiduciary duty to creditors, including DC Comics? | 19:08:12 |
| 3      A.  I don't know about that. | 19:08:18 |
| 4      Q.  Are you aware that unless you make an | 19:08:29 |
| 5   agreement with DC Comics, that the estate may get | 19:08:34 |
| 6   nothing at any time with respect to its Superman | 19:08:40 |
| 7   interests? | 19:08:44 |
| 8         MR. TOBEROFF:  You can't -- if you have an | 19:08:46 |
| 9   opinion about that independent of discussions with | 19:08:50 |
| 10  me, you can answer the question.  Otherwise, I | 19:08:53 |
| 11  instruct you not to answer. | 19:08:56 |
| 12        THE WITNESS:  No, my -- my opinion is based | 19:09:01 |
| 13  on discussions with counsel. | 19:09:04 |
| 14        (Unanswered question.) | 19:09:04 |
| 15  BY MR. PETROCELLI: | 19:09:04 |
| 16     Q.  Do you have the opinion that the estate can | 19:09:06 |
| 17  sell an interest in Superman without making an | 19:09:07 |
| 18  agreement with DC Comics? | 19:09:10 |
| 19        MR. TOBEROFF:  Same instruction. | 19:09:13 |
| 20        If you have an opinion independent of the | 19:09:14 |
| 21  advice of counsel, you can answer.  Otherwise, I | 19:09:15 |
| 22  instruct you not to answer. | 19:09:19 |
| 23        (Unanswered question.) | 19:09:21 |
| 24  BY MR. PETROCELLI: | 19:09:21 |
| 25     Q.  I'm not strictly asking for opinions.  I'm | 19:09:21 |

EXHIBIT 37
1457

MARK WARREN PEARY - 6/29/2011

| | | |
|---|---|---|
| 1 | asking for your state of mind, your knowledge, your | 19:09:23 |
| 2 | information, your beliefs. | 19:09:26 |
| 3 | MR. TOBEROFF:  If any of those are | 19:09:27 |
| 4 | independent of the advice of counsel regarding his | 19:09:29 |
| 5 | particular question, you can answer.  Otherwise, I | 19:09:31 |
| 6 | instruct you not to answer. | 19:09:33 |
| 7 | THE WITNESS:  No, they're not independent | 19:09:36 |
| 8 | of counsel. | 19:09:38 |
| 9 | (Unanswered question.) | 19:09:38 |
| 10 | BY MR. PETROCELLI: | 19:09:38 |
| 11 | Q.  Have you formed any views about the | 19:09:41 |
| 12 | estate's ability to sell an interest in Superman | 19:09:46 |
| 13 | without having an agreement with DC Comics? | 19:09:51 |
| 14 | MR. TOBEROFF:  He is just asking -- I'll | 19:10:02 |
| 15 | let you answer the question whether or not you | 19:10:02 |
| 16 | formed any views, not what those views are. | 19:10:04 |
| 17 | THE WITNESS:  Okay.  Yes, I formed views. | 19:10:07 |
| 18 | BY MR. PETROCELLI: | 19:10:07 |
| 19 | Q.  And what are those views? | 19:10:11 |
| 20 | MR. TOBEROFF:  Based on your prior answers | 19:10:12 |
| 21 | to his similar questions, I instruct you not to | 19:10:13 |
| 22 | answer. | 19:10:16 |
| 23 | (Unanswered question.) | 19:10:16 |
| 24 | BY MR. PETROCELLI: | 19:10:16 |
| 25 | Q.  Are -- are you aware that the estate could | 19:10:20 |

EXHIBIT 37
1458

MARK WARREN PEARY - 6/29/2011

Page 357

| | | |
|---|---|---|
| 1 | lose this case and the court could find that the | 19:10:27 |
| 2 | Shuster termination notice is not valid with respect | 19:10:31 |
| 3 | to Superman? | 19:10:35 |
| 4 | MR. TOBEROFF:  If you're -- | 19:10:40 |
| 5 | BY MR. PETROCELLI: | 19:10:42 |
| 6 | Q.  As -- as the executor of the estate, have | 19:10:42 |
| 7 | you -- have you thought about that issue? | 19:10:44 |
| 8 | MR. TOBEROFF:  You can just answer that in | 19:10:51 |
| 9 | the most general fashion without going into any | 19:10:53 |
| 10 | particulars. | 19:10:55 |
| 11 | THE WITNESS:  Okay.  Yes. | 19:10:56 |
| 12 | BY MR. PETROCELLI: | 19:10:56 |
| 13 | Q.  Okay.  And have you received any advice on | 19:10:58 |
| 14 | that subject other than from Marc Toberoff? | 19:11:03 |
| 15 | A.  No. | 19:11:06 |
| 16 | Q.  Okay.  And the estate has already given up | 19:11:15 |
| 17 | any interest and claim to Superboy, correct? | 19:11:17 |
| 18 | MR. TOBEROFF:  Assumes facts.  Lacks | 19:11:21 |
| 19 | foundation. | 19:11:23 |
| 20 | THE WITNESS:  As far as I know. | 19:11:23 |
| 21 | BY MR. PETROCELLI: | 19:11:23 |
| 22 | Q.  So you -- you understand that given that | 19:11:27 |
| 23 | the estate has already given up an interest in | 19:11:30 |
| 24 | Superboy, and the estate could lose this case and | 19:11:32 |
| 25 | the court could find that the Shuster termination | 19:11:40 |

EXHIBIT 37
1459

MARK WARREN PEARY - 6/29/2011

Page 358

| | | |
|---|---|---|
| 1 | notice is invalid, that you as executor could yield | 19:11:42 |
| 2 | the estate zero.  You have entertained that as a | 19:11:45 |
| 3 | possible outcome, correct? | 19:11:49 |
| 4 | MR. TOBEROFF:  Assumes facts.  Lacks | 19:11:51 |
| 5 | foundation. | 19:11:51 |
| 6 | You can answer in the most general fashion | 19:11:55 |
| 7 | without going into any details. | 19:11:58 |
| 8 | THE WITNESS:  I -- | 19:12:01 |
| 9 | MR. TOBEROFF:  This is -- this is his last | 19:12:02 |
| 10 | answer because we're -- we've met our seven-hour | 19:12:05 |
| 11 | max. | 19:12:08 |
| 12 | MR. PETROCELLI:  It's not a max, but I | 19:12:08 |
| 13 | understand you're leaving at the end of seven hours. | 19:12:11 |
| 14 | THE WITNESS:  I've only considered that | 19:12:13 |
| 15 | like I would an asteroid hitting us and wiping out | 19:12:17 |
| 16 | life on earth. | 19:12:21 |
| 17 | BY MR. PETROCELLI: | 19:12:21 |
| 18 | Q.  Is -- and again, it's based on | 19:12:22 |
| 19 | Mr. Toberoff's advice? | 19:12:25 |
| 20 | MR. TOBEROFF:  We're cutting this at seven | 19:12:25 |
| 21 | hours. | 19:12:27 |
| 22 | THE WITNESS:  Yes. | 19:12:28 |
| 23 | BY MR. PETROCELLI: | 19:12:28 |
| 24 | Q.  Okay.  One other question.  Are you able to | 19:12:29 |
| 25 | enter into a settlement agreement with DC without | 19:12:33 |

EXHIBIT 37
1460

MARK WARREN PEARY - 6/29/2011

Page 359

| | | |
|---|---|---|
| 1 | the consent of the Siegels? | 19:12:37 |
| 2 | MR. TOBEROFF:  I instruct you not to answer | 19:12:39 |
| 3 | that question.  He's asking you about the consent | 19:12:40 |
| 4 | agreement. | 19:12:43 |
| 5 | (Unanswered question.) | 19:12:44 |
| 6 | MR. PETROCELLI:  Well, I wasn't but -- | 19:12:46 |
| 7 | Q.  Independent -- | 19:12:46 |
| 8 | MR. TOBEROFF:  No more questions.  It's | 19:12:52 |
| 9 | done.  Seven hours and I'm cutting it off. | 19:12:53 |
| 10 | MR. PETROCELLI:  Are you saying that | 19:12:55 |
| 11 | we're -- | 19:12:56 |
| 12 | MR. TOBEROFF:  I'm abiding by the Federal | 19:12:57 |
| 13 | rules.  We're over the seven hours.  I gave you an | 19:13:00 |
| 14 | extra question and that was one question too many. | 19:13:02 |
| 15 | MR. PETROCELLI:  Well, since you're | 19:13:04 |
| 16 | declining to go forward, we obviously are not | 19:13:08 |
| 17 | finished.  So we will -- | 19:13:10 |
| 18 | MR. TOBEROFF:  I disagree. | 19:13:12 |
| 19 | MR. PETROCELLI:  Well, I understand.  I'm | 19:13:13 |
| 20 | just making it clear that I'm not concluding the | 19:13:15 |
| 21 | deposition.  We'll have to seek court relief to not | 19:13:18 |
| 22 | only continue it, but also, Marc, to address the | 19:13:22 |
| 23 | objections. | 19:13:28 |
| 24 | MR. TOBEROFF:  On what basis are you saying | 19:13:28 |
| 25 | we haven't concluded if you've used up the seven | 19:13:30 |

EXHIBIT 37
1461

MARK WARREN PEARY - 6/29/2011

Page 360

| | | |
|---|---|---|
| 1 | hours that you've gotten under the rules? | 19:13:32 |
| 2 | MR. PETROCELLI: Because the rules require, | 19:13:35 |
| 3 | permit more time in appropriate circumstances and | 19:13:36 |
| 4 | there's legions of cases on that. We don't need to | 19:13:40 |
| 5 | debate that now. | 19:13:43 |
| 6 | MR. TOBEROFF: Okay. Well, our position, | 19:13:44 |
| 7 | of course, is that it has concluded, you used up | 19:13:46 |
| 8 | your seven hours and that you're not entitled to go | 19:13:48 |
| 9 | beyond that. | 19:13:50 |
| 10 | MR. PETROCELLI: Can we have the normal | 19:13:51 |
| 11 | stipulation on the record, which is that when this | 19:13:54 |
| 12 | has -- let's say 30 days to review it and to advise | 19:13:58 |
| 13 | of any corrections, bearing in mind that any | 19:14:01 |
| 14 | corrections of substance may shed light on your | 19:14:05 |
| 15 | credibility. | 19:14:09 |
| 16 | It can be signed under penalty of perjury. | 19:14:11 |
| 17 | And if it's not signed, it can be used as though | 19:14:13 |
| 18 | signed. | 19:14:16 |
| 19 | MR. TOBEROFF: Yes. And then the court | 19:14:17 |
| 20 | reporter, don't we under California have to relieve | 19:14:19 |
| 21 | the court reporter? | 19:14:22 |
| 22 | MR. PETROCELLI: Relieve the court reporter | 19:14:23 |
| 23 | of her duties. | 19:14:24 |
| 24 | MR. TOBEROFF: I will hold the original and | 19:14:25 |
| 25 | send that to us. | 19:14:28 |

MARK WARREN PEARY - 6/29/2011

Page 361

```
 1              MR. PETROCELLI:  Right.  So, you'll send      19:14:29
 2      the original to Mr. Toberoff and certified copy to    19:14:30
 3      us.  And you have 30 days on your receipt of it.      19:14:34
 4              MR. TOBEROFF:  Okay.                           19:14:38
 5              MR. PETROCELLI:  Thank you.                    19:14:38
 6              MR. TOBEROFF:  Agreed.  So stipulated.         19:14:39
 7              MR. PETROCELLI:  Thank you.                    19:14:42
 8              THE VIDEOGRAPHER:  This will then mark the    19:14:42
 9      end of Volume I, Tape Number 4 in the deposition of   19:14:44
10      Mark Warren Peary.                                     19:14:46
11              All original videotapes will be retained by   19:14:48
12      Merrill Legal Solutions at 20750 Ventura Boulevard,   19:14:49
13      Woodland Hills, California.                            19:14:54
14              Going off the record.  The time is 7:13.      19:14:54
15              (Deposition adjourned at 7:13 p.m.)
16                            -oOo-
17
18
19
20
21
22
23
24
25
```

Merrill  Corporation  -  Los Angeles
800-826-0277                            www.merrillcorp.com/law

EXHIBIT 37
1463

MARK WARREN PEARY - 6/29/2011

```
 1                        DECLARATION

 2

 3

 4

 5

 6           I hereby declare I am the deponent in the

 7    within matter; that I have read the foregoing

 8    deposition and know the contents thereof, and I

 9    declare that the same is true of my knowledge except

10    as to the matters which are therein stated upon my

11    information or belief, and as to those matters, I

12    believe it to be true.

13           I declare under the penalties of perjury of

14    the State of California that the foregoing is true

15    and correct.

16           Executed on the _____ day of

17    _____ 2011, at

18    _____,

19    California.

20

21

22

23

24    _____

25                   W I T N E S S
```

EXHIBIT 37
1464

MARK WARREN PEARY - 6/29/2011

Page 363

```
1     STATE OF CALIFORNIA      )
                              )  ss.
2     COUNTY OF LOS ANGELES    )

3

4          I, Shanda Gabriel, Certified Shorthand

5     Reporter, Certificate No. 10094, for the State of

6     California, hereby certify:

7          I am the deposition officer that

8     stenographically recorded the testimony in the

9     foregoing deposition;

10         Prior to being examined the witness was by

11    me first duly sworn;

12         The foregoing transcript is a true record

13    of the testimony given.

14

15    Dated  July 14, 2011            .

16

17                  _____

                          Shanda Gabriel
18                        CSR 10094

19

20

21

22

23

24

25
```

Merrill Corporation - Los Angeles

EXHIBIT 37
1465