# EXHIBIT 44

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 7, 2011

OUR FILE NUMBER
905,900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

**<u>VIA E-MAIL</u>**

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:    ***<u>DC Comics v. Pacific Pictures Corp. et al.</u>, CV-10-3633 (ODW) (RZx)***

Dear Counsel:

We write to follow up on our meet-and-confer discussions with Messrs. Toberoff and Adams concerning DC Comics' narrowed document requests.

DC served its document requests on Mr. Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC on December 10, 2010. Defendants' January 24, 2011, objections and April 11, 2011, opposition to DC's motion to compel asserted that the parties should meet and confer in an effort to narrow DC's requests. Magistrate Zarefsky's May 25, 2011, order instructed the parties to endeavor "to resolve the dispute short of court action," pursuant to Local Rule 37-2.1. To this end, DC sent defendants a lengthy letter on June 1, 2011, that narrowed and clarified its December 2010 document requests to take into account defendants' objections.

Defendants' June 13, 2011, letter merely asserted blanket objections and did not specifically respond to any of DC's revised document requests. During our meet-and-confer call later that day, Mr. Toberoff declined meaningfully to engage in the compromise process or propose alternative formulations for DC's document requests, saying, "No, that's not my job." While Messrs. Toberoff and Adams initially agreed to respond to DC's June 1 discovery requests by July 5 in accordance with Federal Rule 34, they later asserted that DC failed to adequately "accept" this agreement and refused to respond until July 15. We disagreed with defendants' characterization but, in the interest of compromise, agreed to send the following letter by July 7

EXHIBIT 44
1511

O'MELVENY & MYERS LLP

July 7, 2011 - Page 2

provided defendants agreed to provide responsive documents by July 15 rather than asserting
blanket objections as they had in the past.  Defendants declined to commit to producing any
documents on July 15, stating only that DC "is welcome to properly serve its new document
requests pursuant to the Rules and defendants will duly respond pursuant to the Rules."
Defendants' refusal meaningfully to participate in the meet-and-confer process they themselves
proposed—which appears calculated to improperly delay discovery until after the August 8,
2011, deadline set by Judge Wright for DC to submit new oppositions to defendants' Rule 12
and SLAPP motions—is inconsistent with the Court's May 25 order and admonishment to
counsel not "to be obstructive."  Docket No. 74.

In a final effort to avoid unnecessary motion practice, we have attempted below to
crystallize the parties' respective positions on DC's revised document requests and, in some
cases, to narrow the requests even further.  Note that in many instances, it was difficult to
determine defendants' position based on the blanket nature of the objections asserted in their
June 13 letter and reiterated during the meet-and-confer call that day.

## PART I

Many of defendants' objections are based solely on their position that the term
"RELATING" in DC's requests is "very broadly defined" and "render[s] such requests
overbroad."  We disagree, but in an effort to compromise, will adopt a modified version of the
definition used in defendants' June 13 letter:  to "refer to or bear on."

Defendants also rely on general objections that DC's requests are overbroad,
burdensome, and irrelevant.  The narrowed scope and any relevance objections are addressed
individually below.

As to the three categories of objections identified in defendants' June 13 letter, DC
responds:

**Objection Category A**.  Defendants contend that these requests[1] merely repeat requests
rejected by Magistrate Zarefsky as overbroad.  However, DC modified each of these requests by
replacing the "RELATING" language to which defendants objected with narrower language
making clear that DC seeks documents "identifying" the information sought, not "everything
there is about companies with which Mr. Toberoff has been associated."

On the June 13 call, although DC had already narrowed its requests, we asked for
defendants' counterproposals regarding this category of documents.  Mr. Toberoff refused to
provide any.

---

[1] Toberoff Request Nos. 56-58; PPC Request Nos. 31, 33; IPWW Request Nos. 32-34; IPW
Request Nos. 27, 29.

EXHIBIT 44
1512

O'MELVENY & MYERS LLP
July 7, 2011 - Page 3

**Objection Category B**.  Requests placed in this category[2] break down into two groups.  First, Toberoff Request Nos. 27 and 28 were misquoted by defendants in their initial objections.  Even after we pointed this out in our June 1 letter and on the June 13 call, defendants stated in their June 14 letter that their "responses, including the objections, stand," despite the much narrower scope of the actual requests compared to those misquoted by defendants.

The second group includes requests reasserted by DC because they were formulated in the same manner as Toberoff Request No. 34, to which defendants originally agreed to produce responsive documents.  On the June 13 call, Mr. Toberoff and Mr. Adams contended that Toberoff Request No. 34, which relates to the 2001 Pacific Pictures agreement, was more limited than requests related to other agreements because that 2001 agreement was subsequently amended and canceled.  After we pointed out that the same logic should apply to DC's requests concerning the 2003 Pacific Pictures agreement (Toberoff Request No. 40) and 2002 IP Worldwide agreement (Toberoff Request No. 52), Mr. Adams and Mr. Toberoff abandoned this rationale in their June 14 letter, stating that the original response to Toberoff Request No. 34 should not have agreed to produce documents.

In any event, defendants now assert that, assuming the parties agree to a definition of "RELATING," defendants have produced all "non-privileged responsive documents sought by these requests."  Pursuant to the proposal regarding the definition of "RELATING" noted above, DC is entitled to a clear statement that defendants have searched their files for all documents in the requests listed in Objection Category B, and that no such documents exist that have not been previously produced.  *See Ibanez v. Miller*, 2009 WL 1706665, at *4 (E.D. Cal. June 17, 2009) (ordering verification that all responsive documents had been produced since defendants produced no responsive documents); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *8 (N.D. Cal. June 3, 2011) (noting previous order to verify that all responsive documents had been produced and imposing evidentiary sanctions for untimely production); *Rodriguez v. Niagara Cleaning Servs., Inc.*, 2010 WL 1655519, at *2-3 (S.D. Fla. Apr. 23, 2010) (ordering verification that all responsive documents had been produced because particulars of search for documents were not provided).  To the extent they are not moot, any remaining relevance objections are addressed individually below.

**Objection Category C**.  Defendants object generally that these requests[3] propound "new discovery."  But each of the requests in this category are narrowed versions of DC's prior requests that take into account defendants' objections.[4]  In any event, defendants have treated all

---

[2] Toberoff Request Nos. 27-28, 40-41, 44, 52; PPC Request Nos. 24, 27-28; IPWW Request Nos. 24, 27.

[3] Toberoff Request Nos. 5, 9, 12-15, 18, 29-32, 42, 46, 48, 53-54; PPC Request Nos. 5, 15, 19, 23, 25, 29-30; IPWW Request Nos. 5, 15, 18, 25, 28-30; IPW Request Nos. 24-26.

[4] *E.g.*, Toberoff Request No. 5 (limiting request for all documents related to Superman and/or Superboy to those documents related to the Siegel Heirs' or Shuster Heirs' interest in those characters); PPC Request No. 19 (requesting documents related only to company's "introduction to" Shuster Heirs, not "involvement with" them); IPWW Request No. 30 (limiting request to

EXHIBIT 44
1513

O'MELVENY & MYERS LLP
July 7, 2011 - Page 4

of DC's narrowed and reformulated requests as "new discovery"—unilaterally giving themselves 30 days to respond to DC's narrowed requests before (a) informing DC of defendants' objections and responses to the requests, or (b) much less producing *any* documents.

## **Requests for Production to Defendant Marc Toberoff**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS' claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS' claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  This request has been narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs' interest in Superman and Superboy, not all documents relating to those characters.  Such documents are clearly relevant to DC's claims, which, *inter alia*, concern the Shusters' effort to recapture Superman rights and misconduct in connection with the Siegels' attempt to recapture Superman and Superboy rights.

Request No. 9

- Original:  All DOCUMENTS RELATING to any of the DEFENDANTS OBTAINED by YOU prior to YOUR initial contact with any of them.

- Proposed 9(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS OBTAINED by YOU prior to YOUR initial contact with each of them.

- Proposed 9(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS OBTAINED by YOU prior to YOUR initial contact with each of them.

Defendants place these requests in Objection Category C.  This request has been narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs only, not all defendants, and may include news articles, correspondence, draft filings, or numerous other documents.  Such documents are clearly relevant to DC's claims involving, *inter alia*, acts of interference by Mr. Toberoff and his companies.  Moreover, the relationship between the Toberoff defendants and the Siegel and Shuster heirs is a key factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated, and DC is entitled to discovery relating to that question.  Mr. Toberoff has stated in deposition that he followed via the

---

documents "identifying" the current corporate status of IP Worldwide and removing reference to "RELATING," to which defendants have objected).

EXHIBIT 44
1514

O'MELVENY & MYERS LLP

July 7, 2011 - Page 5

internet the progress of the Siegel heirs' termination efforts, and these requests seek any similar documents relating to the Siegel heirs and/or Shuster heirs.

Request No. 12

- Original:  All DOCUMENTS RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought.  DC is not seeking pursuant to this request Jerry Siegel or Joe Shuster's agreements with DC or its predecessors, but only the named defendants' documents, which may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Mark Peary admitted at his June 29 deposition, for example, that "[t]here were drafts" of the 2001 agreement he signed with Pacific Pictures Corporation.  Peary Dep. Tr. 99:6-10.  Such documents are clearly relevant to DC's Third and Sixth claims, which relate to, *inter alia*, unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 13

- Original:  All DOCUMENTS RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 14

- Original:  All DOCUMENTS RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

EXHIBIT 44
1515

O'MELVENY & MYERS LLP
July 7, 2011 - Page 6

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 15

- Original:  All DOCUMENTS RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 18

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought.  DC seeks any documents relating to valuations by defendants, their counsel, or agents to valuate Superman as a property or defendants' purported Superman interest, and may include reports from accountants or other experts, correspondence seeking such reports, or numerous other documents.  Such documents are clearly relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  They also potentially relate to determining the role Mr. Toberoff and his companies have played in representing the Siegel heirs and Shuster heirs, which is a key factual issue yet to be determined in this case.

Request No. 27

- Original:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

EXHIBIT 44
1516

O'MELVENY & MYERS LLP
July 7, 2011 - Page 7

Defendants place this request in Objection Category B.  This request relates only to Mr. Toberoff's introduction to the Siegel heirs, not the broader "involvement with" them quoted by defendants.  These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims.  They are also relevant to DC's Sixth claim, which, *inter alia*, relates to improper agreements defendants entered into prohibiting them from dealing with DC.  Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 28

- Original:  All DOCUMENTS RELATING to YOUR introduction to the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  This request relates only to Mr. Toberoff's introduction to the Shuster heirs, not the broader "involvement with" them quoted by defendants.  These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents.  Such documents are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts.  They are also relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 29

- Original:  All DOCUMENTS RELATING to the transfer of any property or interest between or among YOU and any DEFENDANT.

- Proposed:  All DOCUMENTS RELATING to the transfer of any property or interest in SUPERMAN and/or SUPERBOY between or among YOU and any DEFENDANT.

Defendants place this request in Objection Category C.  This request has been narrowed to make clear that it relates only to interests in Superman and/or Superboy, not unrelated transfers between or among Mr. Toberoff and his companies.  These documents may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other

EXHIBIT 44
1517

O'MELVENY & MYERS LLP

July 7, 2011 - Page 8

documents.  Such documents are relevant to the same claims and for the same reasons as
described in Toberoff Request No. 12.

Request No. 30

- Original:  All COMMUNICATIONS RELATING to any disclosure of a potential or
  actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed:  All COMMUNICATIONS RELATING to any disclosure of a potential or
  actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS.

Defendants place this request in Objection Category C.  This request has been narrowed
to make clear that it relates only to disclosures among Mr. Toberoff, the Siegel heirs, and Shuster
heirs, not all defendants.  Such documents are clearly relevant to DC's Fourth and Fifth claims,
which, *inter alia*, relate to acts of interference with DC's rights by Mr. Toberoff and his
companies.  Those claims also implicate the nature of Mr. Toberoff's relationship with the Siegel
heirs and Shuster heirs.  The requested documents are also relevant to DC's First claim, which,
*inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in
part, that their termination fails because of improper dealings related to Superboy that benefited
the Siegel heirs to the detriment of the Shuster heirs and DC.  And while Mr. Toberoff
mentioned during the June 13 call that he was not sure whether the Siegel heirs or Shuster heirs
had outside counsel advising them before entering into agreements with Mr. Toberoff and his
companies, California law requires that an attorney inform in writing one with whom he is
entering into a business transaction of conflicts and give that person the opportunity to seek
independent counsel.

Request No. 31

- Original:  All DOCUMENTS RELATING to any waiver or acknowledgement of a
  potential or actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed:  All DOCUMENTS RELATING to any waiver or acknowledgement of a
  potential or actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER
  HEIRS.

Defendants place this request in Objection Category C.  DC seeks the same types of
documents—relevant to the same claims and for the same reasons—as sought in Toberoff
Request No. 30.  Mr. Peary admitted at his June 29 deposition, for example, that he, the Siegel
heirs, and Mr. Toberoff all signed a conflict of interest waiver in 2010, yet none has been
produced.  Defendants may claim that this document is listed on a privilege log, but DC cannot
locate such a document—one more example of how the opacity of defendants' privilege logs
prevents DC or the Court from assessing defendants' assertions of privilege.  In any event, these
documents are not privileged and should be produced immediately.  *See E. Maine Baptist
Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D. Mo. May 10, 2007) ("The production
of conflict memoranda, new matter forms, and correspondence regarding conflicts is not

EXHIBIT 44
1518

O'MELVENY & MYERS LLP
July 7, 2011 - Page 9

protected by the attorney-client privilege or work product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004) (ordering production of conflict of interest waiver).

Request No. 32

- Original:  All DOCUMENTS RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual entity RELATING to any DEFENDANT.

- Proposed:  All DOCUMENTS created during or since 2000 RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual or entity RELATING to any purported interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought and now makes clear that it seeks only documents relating to Superman and/or Superboy, not all alliances by Mr. Toberoff, and may include agreements, drafts of agreements, correspondence discussing potentially-aligned business interest, or numerous other documents.  Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  Any partnerships or strategic alliances, actual or potential, are therefore relevant to potential discussions regarding the value of the heirs' rights.  Additionally, Mr. Toberoff has made representations regarding his efforts to market the heirs' rights, and DC is entitled to investigate them through the discovery process.

Request No. 40

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 27, 2003 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  Documents sought by this request, including drafts of agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents, are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts as well as DC's interference claims.  The documents sought are, in addition, relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, acts of interference by Mr. Toberoff (the businessman) and his companies, as well as efforts by the defendants to market the Shuster heirs' purported Superman rights and any negotiations or agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the October 27, 2003, agreement makes clear that Pacific Pictures is not a law firm.  The nature of this relationship—and defendants' claims

EXHIBIT 44
1519

O'MELVENY & MYERS LLP

July 7, 2011 - Page 10

regarding it—are factual issues that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 41

- Original: All DOCUMENTS RELATING to the letter dated September 10, 2004 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 40.

Request No. 42

- Original: All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks.

- Proposed 42(a): All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SIEGEL HEIRS.

- Proposed 42(b): All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SHUSTER HEIRS.

Defendants place these requests in Objection Category C. These requests now make clear that they seek only documents relating to communications regarding the Siegel heirs and/or Shuster heirs, not all communications Mr. Toberoff may have had with Mr. Marks, and may include phone records, calendar logs, correspondence setting up meetings, communicated offers, drafts of agreements, or numerous other documents. Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks. Regardless of defendants' position on the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks. And Mr. Toberoff has described at deposition other conversations he had with Mr. Marks related to the Siegel heirs, all of which DC has the right to investigate.

Request No. 44

- Original: All DOCUMENTS RELATING to the letter dated August 9, 2002 from Kevin Marks to Joanne and/or Laura Siegel.

Defendants place this request in Objection Category B. Documents sought by this request, including phone records, calendar logs, correspondence evidencing negotiations, communicated offers, drafts of agreements, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks. Regardless of defendants' position on

EXHIBIT 44
1520

O'MELVENY & MYERS LLP
July 7, 2011 - Page 11

the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks, including one subsequent to an August 8, 2002, telephone call including Mr. Marks and Mr. Toberoff.  DC has the right to investigate the claims in the Timeline, especially in light of the Court's May 25 order holding that defendants waived privilege over the Timeline documents provided to the U.S. Attorney's Office.

Request No. 46

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel RELATING to the rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel or his representatives RELATING to the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request now makes clear that it seeks only documents relating to communications regarding the Siegel heirs' purported interest in Superman and/or Superboy, not all communications Mr. Toberoff may have had with Mr. Siegel or his representatives.  Such documents, including valuations, drafts of agreements, correspondence evidencing negotiations, communicated offers, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs.  The proceedings in the Northern District of Ohio confirm that defendants did not share a common interest with Mr. Siegel or his representatives while Mr. Siegel was alive, and all such documents should be produced.

Request No. 48

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between or among Laura Siegel Larson and Michael Siegel.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between Joanne Siegel and/or Laura Siegel Larson, on one hand, and Michael Siegel or his representatives on the other hand.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 46.

Request No. 52

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002 that YOU signed on behalf of DEFENDANT IP Worldwide, LLC, and any revisions, modifications, or adjustments thereto.

EXHIBIT 44
1521

O'MELVENY & MYERS LLP
July 7, 2011 - Page 12

Defendants place this request in Objection Category B.  Documents sought by this request include agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents.  Such documents are relevant to the same claims and for the same reasons as those sought in Toberoff Request No. 27.

Request No. 53

- Original:  All DOCUMENTS RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term:  Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

- Proposed:  All DOCUMENTS created from 1995 to the present RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term:  Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, or numerous other documents.  DC is not seeking pursuant to this request any Superboy documents dating back to the character's first appearance, merely documents related to the Superboy termination notice.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC.  The requested documents are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims.

Request No. 54

- Original:  All DOCUMENTS RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed:  All DOCUMENTS created from 2001 to the present RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, correspondence stating the reason for the failure of the Shuster heirs to seek separate termination of Superboy, or numerous other documents.  DC is not seeking pursuant to this request any Superman documents dating back to the character's first appearance, merely documents related to the Superman

EXHIBIT 44
1522

O'MELVENY & MYERS LLP
July 7, 2011 - Page 13

termination notice.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC.  Unlike the Siegel heirs' initial termination notice, the Shuster heirs' notice did not include any Superboy works.  The requested documents are also relevant to DC's Fourth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the 1992 agreement signed by Jean Peavy and Frank Shuster.

Request No. 56

- Original:  All DOCUMENTS RELATING to your role and ownership interest in Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 56(a):  All DOCUMENTS identifying your past, present, and/or future role or position in Pacific Pictures Corporation.

- Proposed 56(b):  All DOCUMENTS identifying your past and/or present ownership interest in Pacific Pictures Corporation.

- Proposed 56(c):  All DOCUMENTS involved in the formation of Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, filings, business plans.

- Proposed 56(d):  All DOCUMENTS evidencing Pacific Pictures Corporation's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of Pacific Pictures, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 57

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IP Worldwide LLC, including, articles of organization, operating agreements, minutes,

EXHIBIT 44
1523

O'MELVENY & MYERS LLP
July 7, 2011 - Page 14

capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 57(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IP Worldwide, LLC.

- Proposed 57(b):  All DOCUMENTS identifying your past and/or present ownership interest in IP Worldwide, LLC.

- Proposed 57(c):  All DOCUMENTS involved in the formation of IP Worldwide, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 57(d):  All DOCUMENTS evidencing IP Worldwide, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IP Worldwide.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures. Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process. They are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs.  Defendants have asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 58

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IPW, LLC, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 58(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IPW, LLC.

EXHIBIT 44
1524

O'MELVENY & MYERS LLP
July 7, 2011 - Page 15

- Proposed 58(b):  All DOCUMENTS identifying your past and/or present ownership interest in IPW, LLC.

- Proposed 58(c):  All DOCUMENTS involved in the formation of IPW, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 58(d):  All DOCUMENTS evidencing IPW, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IPW, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  We are entitled to see all documents effectuating and related to that transfer.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.

**Requests for Production to Defendant Pacific Pictures Corporation**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS' claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS' claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

EXHIBIT 44
1525

O'MELVENY & MYERS LLP
July 7, 2011 - Page 16

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 18.

Request No. 19

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement with the SHUSTER HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SHUSTER HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to Pacific Pictures' introduction to the Shuster heirs, not the broader "involvement with" them.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 28.

Request No. 23

- Original:  All DOCUMENTS RELATING to YOUR past and current ownership and management structure, including operating agreements, by-laws, capitalization schedules, capital accounts, shares, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying YOUR past and current ownership and management structure, including operating agreements, by-laws, capitalization schedules, capital accounts, shares, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 56.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B.  Because the document described here appears to have created IP Worldwide, documents sought by this request, including drafts of agreements, correspondence evidencing negotiations, correspondence stating the purpose of the document described, amending agreements or correspondence, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs while DC and the

EXHIBIT 44
1526

O'MELVENY & MYERS LLP
July 7, 2011 - Page 17

Siegel heirs were negotiating a global settlement of the Siegel heirs' claims. Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm. The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 25

- Original: All DOCUMENTS RELATING to any contributions by YOU to the IP Worldwide joint venture.

- Proposed: All DOCUMENTS identifying any contributions by YOU to the IP Worldwide joint venture.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying." Through this request, DC seeks all documents identifying Pacific Pictures' contributions to IP Worldwide, another of Mr. Toberoff's companies, and may include agreements, drafts of agreements, correspondence evidencing negotiations, amending agreements or correspondence, or numerous other documents. Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures. Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest. Regardless of defendants' current position on this issue, DC seeks any documents relating to it. Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 27

- Original: All DOCUMENTS RELATING to the letter agreement dated October 27, 2003 that YOU entered into with the SHUSTER HEIRS.

Defendants place this request in Objection Category B. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as those sought in Toberoff Request No. 40.

Request No. 28

- Original: All DOCUMENTS RELATING to the letter dated September 10, 2004 that YOU signed with the SHUSTER HEIRS.

EXHIBIT 44
1527

O'MELVENY & MYERS LLP

July 7, 2011 - Page 18

Defendants place this request in Objection Category B. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as those sought in Toberoff Request No. 40.

Request No. 29

- Original: All DOCUMENTS RELATING to the formation of PACIFIC PICTURES.

- Proposed: All DOCUMENTS involved in the formation of PACIFIC PICTURES, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying." Through this request, DC seeks all of Pacific Pictures' formation documents. Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose. Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm. DC is entitled to test defendants' representation through the discovery process.

Request No. 30

- Original: All DOCUMENTS RELATING to the current corporate status of PACIFIC PICTURES.

- Proposed: All DOCUMENTS identifying the current corporate status of PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying." Through this request, DC seeks documents identifying the current status of Pacific Pictures. Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose. They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures. Regardless of defendants' current position on this issue, DC seeks any documents relating to it. Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

EXHIBIT 44
1528

O'MELVENY & MYERS LLP
July 7, 2011 - Page 19

Request No. 31

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any business plans of PACIFIC PICTURES, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by Pacific Pictures (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

Request No. 33

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by Pacific Pictures of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

**Requests for Production to Defendant IP Worldwide, LLC**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

EXHIBIT 44
1529

O'MELVENY & MYERS LLP

July 7, 2011 - Page 20

Defendants place these requests in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 18.

Request No. 18

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement with the SIEGEL HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to IP Worldwide's introduction to the Siegel heirs, not the broader "involvement with" them.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 27.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 24.

Request No. 25

- Original:  All DOCUMENTS RELATING to contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

EXHIBIT 44
1530

O'MELVENY & MYERS LLP
July 7, 2011 - Page 21

- Proposed:  All DOCUMENTS identifying contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 25.

Request No. 27

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002—and any revisions, modifications, or adjustments thereto—that IP WORLDWIDE signed with the SIEGEL HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 52.

Request No. 28

- Original:  All DOCUMENTS RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed:  All DOCUMENTS created from 2001 to the present RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

This request narrows the timeframe of documents sought.  Through this request, DC seeks all documents relating to the identification of IP Worldwide in the Shuster heirs' termination notice.  Such documents, including correspondence or other documents evidencing work IP Worldwide performed for the Shuster heirs, correspondence describing the purpose of the identification of IP Worldwide in the document described, or numerous other documents, are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  To our knowledge, defendants have produced no documents identifying any work that IP Worldwide did for the Shuster heirs, but documents previously produced do show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff (the businessman) and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

EXHIBIT 44
1531

O'MELVENY & MYERS LLP
July 7, 2011 - Page 22

Request No. 29

- Original:  All DOCUMENTS RELATING to the formation of IP WORLDWIDE.

- Proposed:  All DOCUMENTS involved in the formation of IP WORLDWIDE, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of IP Worldwide's formation documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference by Mr. Toberoff (the businessman) and his companies with DC's rights with relation to the Siegel heirs.  Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  Moreover, these documents relate to DC's First claim, which seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representations through the discovery process.

Request No. 30

- Original:  All DOCUMENTS RELATING to the current corporate status of IP WORLDWIDE.

- Proposed:  All DOCUMENTS identifying the current corporate status of IP WORLDWIDE.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of IP Worldwide.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.

EXHIBIT 44
1532

O'MELVENY & MYERS LLP
July 7, 2011 - Page 23

Request No. 32

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IP WORLDWIDE.

- Proposed:  All DOCUMENTS identifying any business plans of IP WORLDWIDE, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IP Worldwide (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.  These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 33

- Original:  All DOCUMENTS RELATING to any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

- Proposed:  All DOCUMENTS identifying any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

Request No. 34

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

EXHIBIT 44
1533

O'MELVENY & MYERS LLP
July 7, 2011 - Page 24

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by IP Worldwide of interests related to Superman and/or Superboy.  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

## Requests for Production to Defendant IPW, LLC

Request No. 24

- Original:  All DOCUMENTS RELATING to the formation of IPW.

- Proposed:  All DOCUMENTS involved in the formation of IPW, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of IPW's formation documents.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representations through the discovery process.

Request No. 25

- Original:  All DOCUMENTS RELATING to the current corporate status of IPW.

- Proposed:  All DOCUMENTS identifying the current corporate status of IPW.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of IPW.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

EXHIBIT 44
1534

O'MELVENY & MYERS LLP
July 7, 2011 - Page 25

Request No. 26

- Original:  All DOCUMENTS RELATING to the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the ownership and management structure of IPW, not every transaction in which it ever engaged. Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

Request No. 27

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IPW.

- Proposed:  All DOCUMENTS identifying any business plans of IPW, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IPW (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24. These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 29

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IPW.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IPW.

EXHIBIT 44
1535

O'MELVENY & MYERS LLP
July 7, 2011 - Page 26

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying." Through this request, DC seeks documents identifying any transfers by IPW of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents. Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

## PART II

As set forth in our June 1 letter, there are five categories of document requests for which defendants have produced no or almost no documents. Defendants have sidestepped or ignored entirely DC's requests for clarification concerning these documents.

### A.    Agreements Between or Among Defendants

<u>Drafts and Correspondence.</u> Despite the many business agreements between and among defendants, you have yet to produce *any* drafts of those agreements or written communications addressing them. To take just one example, the 2001 Pacific Pictures agreement sets forth a detailed explanation of the parties' rights and obligations and provides that "[t]he parties have *mutually participated in the negotiation and drafting* of this Agreement." (Emphasis added.) Mr. Peary confirmed that drafts of that agreement do in fact exist:

> Mr. Petrocelli: Okay. The agreement that you did sign which I'll show you in a bit [the 2001 Pacific Pictures agreement], were there drafts of that that went back and forth as you recall or did you get a document, sign it, and return it?
>
> Mr. Peary: There were drafts.

Peary Dep. Tr. 99:6-10. The 2003 Pacific Pictures agreement, in which the Shuster heirs suddenly and inexplicably disclaimed any interest in Superboy, contains an identical provision. And in 2004, Mr. Toberoff (the businessman) sent the Shuster heirs a letter "confirm[ing]" that the 2001 and 2003 agreements "have been cancelled"—with no explanation of how, when, or why. The drafts disclosed by Mr. Peary have not been produced, nor have any others.

During our June 13 call, Mr. Toberoff (falsely) represented that there are no drafts of these (or any other) agreements and that he could not locate any relevant correspondence. He suggested that such correspondence may have been destroyed as a result of his 2007 house fire. Mr. Toberoff did not clarify whether additional copies of such correspondence exist in electronic form, in the Siegel or Shuster heirs' files, in his law office's files, or in his businesses' files. Moreover, such documents should have been produced in *Siegel* at the same time as the agreements themselves in 2006—well before the 2007 fire. *See, e.g.*, Siegel Request No. 63 ("All Writings concerning the Shuster Representatives, including but not limited to any communication or agreements between Plaintiffs and any of the Shuster Representatives."). In light of Mr. Peary's testimony, defendants should immediately produce all drafts of the 2001 Pacific Pictures agreement, as well as drafts of all other business agreements between and among

EXHIBIT 44
1536

O'MELVENY & MYERS LLP
July 7, 2011 - Page 27

defendants.  If in fact no drafts or correspondence regarding these agreements exist (aside from those disclosed by Mr. Peary), DC is entitled to a clear and unequivocal statement from defendants to this effect.

Conflict Disclosures and Waivers.  Defendants' June 13 letter still did not address whether there are any disclosures, waivers, or similar documents addressing the conflict of interest between Mr. Toberoff and the Siegel and Shuster heirs, as required by California law. *E.g.*, *Fair v. Bakhtiari*, 2011 WL 1991999 (Cal. Ct. App. May 24, 2011) (requiring attorney to disclose, and clients to waive, conflicts of interest in writing).  Mr. Peary, however, admitted during his June 29 deposition that at least one such document—entered into in 2010 and signed by the Siegel heirs, Mr. Toberoff, and him—does exist.  Peary Dep. Tr. 86:2-18.  DC is entitled to discover this document and any other conflict disclosures or waivers, including advice to seek outside counsel.  *E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D. Mo. May 10, 2007) ("The production of conflict memoranda, new matter forms, and correspondence regarding conflicts is not protected by the attorney-client privilege or work product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004) (ordering production of conflict of interest waiver).  During our June 13 call, I expressly asked Mr. Toberoff whether the heirs consulted with independent counsel before entering into business agreements with his companies, and he responded:  "I don't know."

## B.   Toberoff's Ownership Interest

Despite the objection in Mr. Toberoff's June 13 letter, there is nothing "incomprehensible" about DC's position that defendants are required to produce documents concerning the Toberoff defendants' ownership interest in the Siegels' or Shusters' putative copyright termination rights.  Pursuant to the 2001 and 2003 Pacific Pictures agreements, the Shusters transferred their Superman rights to the joint venture and agreed to divide these rights with Pacific Pictures 50-50 if the joint venture was "terminated for any reason."  A 2004 letter purported to "cancel" both Pacific Pictures agreements.  While defendants now claim that the Pacific Pictures agreements were "void *ab initio*" under the Copyright Act, there are no documents addressing what happened to the outstanding half of the Shusters' copyright interests. DC is entitled to such documents to the extent they exist.

## C.   Marketing of Purported Superman Rights

The Toberoff defendants have repeatedly represented—to DC, the Siegels, the Shusters, and to the public—that there are scores of potential investors interested in buying the Siegel and Shuster heirs' putative Superman rights and that they have endeavored to market those rights. Defendants have only produced two pieces of evidence to back this up:  a parking pass to Fox and an e-mail exchange with Paramount.  We asked Mr. Toberoff on our June 13 call whether this was the totality of documents regarding his efforts to market the Superman rights, and he responded that defendants have produced *all* such documents—there are no other communications, calendar entries, scheduling e-mails, or similar documents.  We asked Mr. Toberoff whether he had communicated with any other actual or potential investor, as he

EXHIBIT 44
1537

O'MELVENY & MYERS LLP
July 7, 2011 - Page 28

previously claimed, but he refused to respond and advised that DC should serve interrogatories on the subject, which we did on July 1, 2011.

### D.    Toberoff-Related Business Entities

While we disagree with defendants' position, we have substantially narrowed these requests, as described above (PPC Request No. 31, IP Worldwide Request No. 32, IPW Request No. 27).

## PART III

There are many gaps in defendants' production beyond the five categories of documents identified in our June 1 letter, including a conspicuous absence of documents concerning Ari Emanuel, David Michaels, and the unnamed "billionaire investor."  DC intends to raise these deficiencies in a motion before the Magistrate unless defendants produce these documents or explain their absence.

### A.    Ari Emanuel Documents

Magistrate Zarefsky ordered defendants to produce documents all documents involving Ari Emanuel "that pertain to Superman, Superboy, the Siegels or the Shusters."  Docket No. 262 at 5.  On June 17, defendants produced a total of *seven pages* consisting of six non-substantive e-mails from Mr. Toberoff to Mr. Emanuel, most of which were merely forwarding news reports related to Superman.

In 2002, Mr. Toberoff formed the IP Worldwide joint venture with Mr. Emanuel for the sole purpose of exploiting the Siegels' putative Superman rights.  Despite this nearly ten-year partnership, defendants produced *no* substantive communications between Messrs. Toberoff and Emanuel—for example, drafts of the Toberoff-Emanuel agreement or IP Worldwide-Siegel agreement, correspondence regarding efforts to exploit the Siegels' Superman rights, documents addressing the supposed expiration of the IP Worldwide-Siegel agreement in 2005 and subsequent assignment of IP Worldwide's rights to IPW, e-mails from Mr. Emanuel responding to Mr. Toberoff's six e-mails, or any other communication from Mr. Emanuel.

Moreover, during our meet-and-confer exchanges, Ms. Brill represented that defendants were withholding numerous Ari Emanuel documents—far more than the seven pages defendants ultimately produced.  Ms. Brill's February 2011 correspondence referred to Mr. Toberoff's "long-standing relationship with Mr. Emanuel" and asserted that defendants would produce relevant documents if DC narrowed its document requests.  During our February 14 meet-and-confer discussion, Ms. Brill represented that there were many more responsive Ari Emanuel documents than defendants had produced.  Now that defendants' proposed narrowing of DC's requests has been adopted by the Court, defendants are required to produce all such documents or justify their continued withholding of documents.

EXHIBIT 44
1538

O'MELVENY & MYERS LLP
July 7, 2011 - Page 29

For the reasons described above (*see*, *e.g.*, PPC Request No. 24), these documents are integral to DC's interference claims and the factual assertions in defendants' SLAPP briefing.

DC reserves its rights to file a motion seeking to compel these documents if they are not produced forthwith.

### B.    David Michaels Communications

Toberoff Document Request No. 20 seeks:  "All DOCUMENTS RELATING to any COMMUNICATIONS YOU have had with the TOBEROFF TIMELINE AUTHOR since July 2006," and defines "YOU" to include "any PERSON … acting on [Mr. Toberoff's] behalf, including but not limited to his/their agents, employees, attorneys, and representatives." Defendants redefined "YOU" to include only Mr. Toberoff, and responded:  "Toberoff has no responsive documents to this request."

Defendants' unilateral revision of DC's document request was improper and unwarranted—defendants are required to respond to the request as written.  *See Goodrich Corp. v. Emhart Indus., Inc.*, 2005 WL 6440828, at *3-4 (C.D. Cal. June 10, 2005) (ordering production of all responsive documents in respondent's control notwithstanding broad definition of "you" or "your"); 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 34.14[2][c] (2011) (documents in attorney's possession remain in party's "control").  If in fact there have been no communications between Mr. Michaels and Mr. Toberoff or his agents, employees, attorneys, or other representatives since July 2006, defendants must state so clearly and unequivocally.

These documents are necessary for DC to determine whether defendants have endeavored to silence a key witness in this case.

### C.    "Investor" Documents

DC's document requests asked for:  "All DOCUMENTS RELATING to any potential investors or other PERSONS who have expressed interest in purchasing or otherwise investing in any rights in SUPERMAN and/or SUPERBOY."  Mr. Toberoff has repeatedly claimed that there is (or was) an unnamed "investor" interested in purchasing the Siegels' putative Superman rights. *E.g.*, DB 029, 040, LSL 211, Q1-7.  Despite the fact that this "investor" was supposedly in regular contact with Mr. Toberoff and negotiating multi-million dollar offers, defendants have *never* produced a single communication with the investor, or any document—including a calendar entry or otherwise relating to meetings or other communications with such an investor.

Please produce all documents relating to this and any other investors.  If no such documents exist, DC is entitled to a clear and unequivocal statement to this effect.

*          *          *

EXHIBIT 44
1539

O'MELVENY & MYERS LLP
July 7, 2011 - Page 30


        We are available on July 11 or 12 to further discuss these issues.  As we made clear in our July 3 e-mail, however, now that DC has substantially narrowed and clarified its document requests, we expect that defendants will make a complete production of responsive documents on July 15 and will not merely assert blanket objections as they have in the past.

        We reserve all rights.

                                        Very truly yours,


                                        Matthew T. Kline
                                        of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli

EXHIBIT 44
1540