# EXHIBIT 48

LAW OFFICES

## RENNER, OTTO, BOISSELLE & SKLAR, LLP

1621 EUCLID AVENUE, NINETEENTH FLOOR
CLEVELAND, OHIO 44115-2191
TEL: (216) 621-1113   FAX: (216) 621-6165
EMAIL: MailRoom@RennerOtto.com

JOSHUA M. RYLAND
JRYLAND@RENNEROTTO.COM

July 15, 2011

**VIA EMAIL**

Matthew Kline
MKline@OMM.com
Jason Tokoro
jtokoro@OMM.com
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

> Re:   ***Third-Party Subpoena of Don W. Bulson, Esq. in the matter of
> DC Comics v. Pacific Pictures, et al.***

Dear Counsel,

I am writing to follow up on our conversations regarding the subpoenas served on Don Bulson on or about May 10, 2011. As you are aware, neither Mr. Bulson nor Renner Otto represent Michael Siegel, his estate, or any other party relating to the matter listed above. As you are also aware, Renner Otto provided Michael Siegel's entire case file to the lawyers for his estate in 2006. That same year, Warner Brothers Entertainment, Inc. filed a motion to compel Mr. Bulson's production of certain documents and his deposition in the United States District Court for the Northern District of Ohio. In 2008, the Northern District of Ohio ruled on that motion and Mr. Bulson provided his deposition. (*See JoAnne Siegel, et al. v. Warner Bros. Entertainment, Inc.*, Case No. 06-MC-99.)

While the May 2011 subpoenas appear to cover the same ground as the production and deposition requests made in 2006, Mr. Bulson's sole interest in this matter is complying fully with any properly issued subpoena. To that end, Mr. Bulson will appear for his deposition, as agreed, on July 19, 2011 in Renner Otto's offices. As we discussed, both Mr. Bulson and I have 5PM commitments that day that we intend to keep. Given that

EXHIBIT 48
1608

Matthew Kline
Jason Tokoro
July 15, 2011

Mr. Bulson testified to the same subject matter in 2008, and given his cooperation, I trust that these commitments will not be a problem.  If we need to move the deposition's start time (9AM) to accommodate those commitments, please let me know.

Mr. Bulson's desire to cooperate with the parties certainly also extends to the document subpoenas.  In response to the document subpoena Mr. Bulson received, Mr. Bulson's files were searched.  That search produced the following: (1) an electronic archive of the files provided to Mr. Siegel's estate's lawyers, and (2) miscellaneous documents relating to the 2006 motion to compel.

As we discussed, however, Mr. Bulson is in a unique position with respect to producing the documents that remain in his possession.  Mr. Siegel is Mr. Bulson's former client.  After he died, Mr. Siegel's estate terminated that Mr. Bulson's (and Renner Otto's) representation.  As such, while Mr. Bulson may possess documents relating to Mr. Siegel that may contain information subject to privileges and/or immunities, neither Mr. Bulson nor Renner Otto can assert or waive any privilege or immunity relating to these remaining archives.  That decision, of course, needs to come from the parties having the proper authority—namely, the estate of Mr. Siegel.

At the same time, Mr. Bulson has a duty to comply with any properly served subpoena.  Without waiving any objections he may have (which will be provided), Mr. Bulson indentified potentially responsive documents, maintained them, and informed both parties as to the broad categories of information in his possession.  As we discussed, these items will also be burned to a disk and provided to Mr. Toberoff with a copy to the lawyers for Mr. Siegel's estate (both copied on this letter).  In addition, there were several documents not within the electronic archive that Mr. Bulson was willing to produce subject to the appropriate privilege review.

Renner Otto provided those documents to Mr. Toberoff to ensure that no issues of privilege or immunity would be implicated by their production.  As the attached letter from Mr. Toberoff indicates, Mr. Toberoff instructed Renner Otto that two items—the 2006 letter to Mr. Siegel's estate's lawyer (Mr. Banchek) and the screen capture—were not appropriate for production.  Given that Mr. Bulson has no authority to make any decisions with respect to privilege, Mr. Toberoff's requests will be honored.  Accordingly, also attached to this letter are the non-privileged documents that remain after Mr. Toberoff's review.

This circuitous review and production only underscores Mr. Bulson's challenge in responding to the parties' various demands.  To be clear, we do not think it is appropriate that Mr. Bulson is being asked to resolve these document issues by dealing with the

EXHIBIT 48
1609

Matthew Kline
Jason Tokoro
July 15, 2011

parties separately.  Both parties are aware that (1) Mr. Bulson is not free to make any decisions with respect to production, privilege, and the like, and (2) that the archive documents at Renner Otto are a duplicate of the files possessed by the Michael Siegel's estate.   Given these facts, Mr. Bulson has identified what is in his possession in a forthright manner, agrees to preserve those documents for the time being, and asks that the parties work together to resolve any remaining issues.  Provided that no undue burden is placed on Mr. Bulson or Renner Otto, Mr. Bulson remains fully willing to comply with the parties' resolution—and certainly with any court order.

I look forward to meeting with you all on July 19.  Please let me know if you have any questions or concerns in the meantime.

Very truly yours,

Joshua M. Ryland

cc:     Don Bulson (via email)
        Marc Toberoff (via email)
        Gerald Berk (via U.S. mail)

3

EXHIBIT 48
1610

LAW OFFICES

# RENNER, OTTO, BOISSELLE & SKLAR, LLP

1621 EUCLID AVENUE - NINETEENTH FLOOR

CLEVELAND, OHIO  44115-2191

Tel: (216) 621-1113    Fax: (216) 621-6165

EMAIL: MAILROOM@RENNEROTTO.COM

Extension:  149

Direct Email:  DBulson@RennerOtto.com

June 15, 2006

Melvin H. Banchek, Esq.
55 Public Square, Suite 918
Cleveland, Ohio 44113

        Re:    Estate of Michael Siegel
               Cuyahoga County Probate Court Case
               Number 2006 EST 0110075

Dear Mr. Banchek:

        Enclosed are Renner Otto's files pertaining to Michael Siegel.

        Please be advised that we have retained a research file containing general research as well as files containing a copy of the termination notices and copies of litigation which Mrs. Larson provided us.

        Please let us know if you have any questions.

                                        Very truly yours,

                                        Jennifer A. Moore
                                        Assistant to Don W. Bulson

# EXHIBIT 48
# 1611

Bulson Production
00001



**Judge Solomon Oliver, Jr.**
United States District Court
801 West Superior Avenue
Cleveland, Ohio 44113-1830

(216) 357-7171
(216) 357-7176 (FAX)

# FAX TRANSMISSION

No. of Pages Including Cover Page: 4

**DATE:**  2-5-08
**TO:**  JOSHUA RYLAND
**FROM:**  **Judge Solomon Oliver, Jr.**
**FAX NO.:**  216-631-6165
**MESSAGE:**

Please call (216) 357-7171 immediately if this
transmission is incomplete or illegible. Thank you.



EXHIBIT 48
1612

Bulson Production
00002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

IN RE: SUBPOENA DUCES TECUM )    Case No.: 1:06 MC 99
ISSUED BY THE U.S. DISTRICT )
COURT FOR THE NORTHERN )
DISTRICT OF Ohio in: )    Case Nos.    SA CV 04-8400 SJO (RZx)
 )                    SA CV 04-8776 SJO (RZx)
JOANNE SIEGEL, *et al.*, )
 )    JUDGE SOLOMON OLIVER, JR.
     Plaintiffs )
 )
     v. )
 )
WARNER BROS. ENTERTAINMENT )
INC., )
 )
     Defendant )    <u>AMENDED ORDER</u>

       Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications, Inc.,

Warner Bros. Television Production Inc., and Defendant-Counterclaimant DC Comics (collectively,

"Movants"), by and through counsel, hereby move the court pursuant to Fed. R. Civ. P. 45: (1) for

an order compelling Cleveland, Ohio resident Don Bulson, Esq. ("Bulson") to produce documents

responsive to a subpoena duces tecum issued by the U.S. District Court for the Northern District of

Ohio in the above-captioned actions; (2) to compel such production without regard to the attorney-

client privilege; (3) to appear for deposition in accordance with the subpoena; and (4) to award to

Movants their cost and attorneys' fees incurred in making this Motion.

       Movants are Defendants in two complex actions pending in the U.S. District Court for the

Central District of California relating to, *inter alia,* copyrights in certain Superman literary works.

EXHIBIT 48
1613

Bulson Production
00003

Movants served their subpoena on Don Bulson, a resident of Cleveland, who was counsel for Michael Siegel, the deceased son of Jerry Siegel, one of the co-creators of Superman. Plaintiffs in the two actions in California, Joanne Siegel and her daughter, Laura Siegel Larson, are respectively the widow and daughter of Jerry Siegel, who, along with Joseph Schuster, created the first Superman comic story, published in 1938. One California action arises out of a purported termination of the rights of the Warner Bros. Defendants relating to literary works featuring the Superman character. Jerry Siegel's share relative to the grants by Jerry Siegel and Schuster is proportionally owned as follows: 50% by Joanne Siegel; 25% by Laurel Siegel Larson and 25% by Michael Siegel, Jerry Siegel's son from his first marriage. The second California action involves a notice of termination relating only to comics featuring Super Boy, in which only Jerry Siegel held the copyright. His wife, daughter and son hold proportionate interests in the same percentages that they hold in respect to his rights to Superman.

The court has held two hearings in regard to the Motion to Compel by Movants, the latest of which was on February 1, 2008. Because motions for summary judgment have been filed in both actions, Bulson argues that further discovery is inappropriate. Movant argues that further discovery is appropriate and may be useful in the underlying actions. After reviewing all of the submissions of the parties and hearing their arguments, the court hereby rules as indicated herein.

The court denies the Motion to Compel Production Without Regard to Attorney Client Privilege because the court finds that the submission of the privileged log was not so delayed as to effect a waiver. The court also finds that the award of attorney fees to Movants is not appropriate because their document request to Mr. Bulson, attorney for deceased Michael Siegel, was extremely broad and covered large numbers of documents, and because it could be anticipated that some of

-2-

EXHIBIT 48
1614

Bulson Production
00004

these documents would be covered by the attorney client privilege. It was also likely that the court might have to determine whether the privilege was applicable. The court finds that Movants may be entitled to the documents set forth at Page 8 of their Reply Brief.

Mr. Bulson must submit a revised privilege log by February 11, 2008. That revised log shall relate to only the 15 communications set forth on page 8 of the Movant's Reply Memorandum in Support of Their Motion to Compel. The description portion of the log shall be revised to give sufficient detail so that Movants can determine whether they have a basis for objecting to the assertion of the attorney-client privilege based on a joint interest. On or before February 19, 2008, Movants must determine whether they still wish to pursue all or some of these documents. If the parties have any resulting differences after that time, Movants shall notify this court by February 20, 2008. Thereafter, the court will review the documents in dispute and determine whether the documents are covered by the attorney-client privilege. To save time, Mr. Bulford shall submit the 15 documents to the court by February 19, 2008, so the court will be prepared to review them *in camera.* The court further held at the conference with counsel for the parties that Mr. Bulford must be deposed by March 3, 2008, at a time that is convenient to all relevant parties.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

February 5, 2008

-3-

EXHIBIT 48
1615

Bulson Production
00005

LAW OFFICES

## RENNER, OTTO, BOISSELLE & SKLAR, LLP

1621 EUCLID AVENUE, NINETEENTH FLOOR
CLEVELAND, OHIO 44115-2191
TEL: (216) 621-1113   FAX: (216) 621-6165
EMAIL: MAILROOM@RENNEROTTO.COM

JOSHUA M. RYLAND
JRYLAND@RENNEROTTO.COM

February 18, 2008

**VIA ECF**

The Honorable Solomon Oliver, Jr.
United States District Court Judge
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1838

> Re:   *Joanne Siegel, et al. v. Warner Bros. Entertainment, Inc.*
>        U.S. District Court for the Northern District of Ohio, Case No. 1:06-MC-99

Dear Judge Oliver:

I am writing to clarify which counsel and party will be asserting the attorney-client privilege and filing documents responsive to Your Honor's Order of February 6, 2008. That Order required Don Bulson to submit a revised privilege log, produce the documents on that log to the Court, and appear for deposition. Marc Toberoff, counsel in the underlying action for Joanne Siegel and Laura Siegel, will make all required filings on behalf of the estate of Michael Siegel—not Mr. Bulson.

Mr. Bulson and his firm represented Michael Siegel, now deceased, but do not represent any party involved in the underlying litigation and no longer possess the original documents at issue. After Michael Siegel's passing, the administrator for Mr. Siegel's estate, Melvin Banchek, instructed Mr. Bulson to communicate with Marc Toberoff regarding the instant subpoena. Accordingly, Mr. Bulson understands that any attorney-client privilege is not his to assert. Instead, Mr. Toberoff is asserting the attorney-client privilege on behalf of Michael Siegel's estate and Laura Siegel as his sole heir and successor.

Mr. Bulson's sole goal in this matter is to comply with the Court's Order in every respect. Thus, Mr. Bulson will take *no position* regarding privilege over these documents or his deposition testimony but will honor Ms. Siegel's and/or Mr. Banchek's assertions of attorney-client privilege unless instructed by the Court to do otherwise. To that end, Mr. Toberoff and his firm will be solely responsible for drafting and filing any revised privilege log and the production of documents. Mr. Bulson, of course, will make himself available for deposition in accord with Your Honor's Order.

EXHIBIT 48
1616

Bulson Production
00006

The Honorable Solomon Oliver, Jr.
Case No. 1:06-MC-99
February 18, 2008

       Should Your Honor require any additional clarification or wish to address this matter further, Mr. Bulson will cooperate in any way requested.

       Respectfully submitted,

Joshua M. Ryland
Counsel for Don Bulson

2

EXHIBIT 48
1617

Bulson Production
00007



# Facsimile Transmission

North Point, 901 Lakeside Avenue • Cleveland, Ohio 44114-1190 • (216) 586-3939
Facsimile: (216) 579-0212
mrawlin@jonesday.com

**November 21, 2006**

Please hand deliver the following facsimile to:

| | Name/Company: | Facsimile No.: | Telephone No.: |
|---|---|---|---|
| 1. | Marc Toberoff / Law Offices of Marc Toberoff, PLC | (310) 246-3101 | (310) 246-3333 |
| 2. | Joshua Ryland / Renner Otto Boiselle & Sklar, LLP | (216) 621-6165 | (216) 621-1113 |

☐ **Copies distributed** _____
Operator's initials

From:     **Meggan A. Rawlin**

JP No.:   **JP000367**

Send Copies To:

Re:       **Joanne Siegel, et al. v. Warner Bros. Entertainment Inc., et al.**

Direct Telephone No.:   **(216) 586-7204**

CAM No.:   **418351-600001**

Number of pages (including this page):   **32**

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

EXHIBIT 48
1618

Bulson Production
00008

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:<br><br>JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>              Plaintiffs,<br><br>     v.<br><br>WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>              Defendants. | Misc. Case No. 1:06MC0099<br><br>Case Nos.  SA CV 04-8400 SGL (RZx)<br>            SA CV 04-8776 SGL (RZx)<br><br>(Consolidated for Discovery Purposes)<br><br>Action Pending in the U.S. District Court for the Central District of California |

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants"), by and through counsel, Jones Day, hereby submit this reply brief in further support of their motion pursuant to Fed. R. Civ. P. 45. Movants respectfully request that, despite Bulson's belated production of a privilege log, their motion should nonetheless be granted because of inherent deficiencies in the log and Bulson's failure to carry his burden to establish a claimed "common interest" with Joanne Siegel and Laura Siegel Larson, the plaintiffs in the Underlying Actions, so as to justify the failure to produce certain limited documents consisting of his written communications with them, withheld on the ground of attorney-client privilege. At the very least, Movants seek the production of those documents, an order requiring Mr. Bulson to appear for deposition, and for their costs and fees in connection with this motion.

CLI-1469591v1

EXHIBIT 48
1619

Bulson Production
00009

## INTRODUCTION

Having done nothing in response to Movants' subpoena, and having repeatedly ignored Movants' requests for responsive documents and a privilege log, Bulson and his counsel leapt into action following Movants' service of this motion, by producing a privilege log on October 23, 2006 (one business day after the filing of this motion). The eleventh-hour production of this privilege log is not sufficient to sustain the claims of privilege made here. While Bulson's privilege log identifies correspondence between the deceased Michael Siegel and his attorney Don Bulson (which Movants acknowledge is likely privileged), it also lists correspondence between Mr. Bulson and the plaintiffs in the Underlying Actions and their attorneys. No basis, however, has been provided for withholding this information on privilege grounds.

Knowing this full well, counsel for Mr. Bulson in his opposition brief engages in a litany of attacks on purported problems with Movants' discovery in the Underlying Actions (Bulson Br. at 4). Of course, counsel fails to substantiate any of his accusations (indeed, Plaintiffs have not filed any discovery motion in the Underlying Actions) or, more importantly, explain why any of that is relevant to the instant motion, which deals with Mr. Bulson's failure to comply with a subpoena issued by this Court. The fact of the matter is that Mr. Bulson has made no effort at all to comply with the subpoena, let alone carry his burden to justify his claim that certain documents are subject to the "joint interest" exception to what would otherwise comprise a waiver of the attorney-client privilege. For these reasons, Movants respectfully request that the Court order Bulson to produce any and all such documents and appear for deposition.[1]

---

[1] In a last ditch attempt to avoid a court order, Mr. Bulson argues that he tried to compromise by offering on November 1, 2006 – over two and a half months after the subpoena was served and almost two weeks after this motion was filed "to represent that all responsive document had been listed in Bulson's privilege log and even to produce certain privileged documents." (Toberoff Decl. ¶ 9). This "offer" however, was only made in context of a request by Bulson's counsel to extend his time to respond to this motion to compel, and based on a fallacious privilege claim to shield from discovery Bulson's communication with third persons. (Weinberger Decl. Exs. 12-14). Moreover, the offer contained no

CLI-1469591v1                                                    2

EXHIBIT 48
1620

Bulson Production
00010

## I.    BULSON'S PRIVILEGE LOG IS LATE AND INSUFFICIENT

Bulson's privilege log was not produced until after this motion was filed, two full months after he served objections to the August 11, 2006 subpoena and after Movants' counsel had repeatedly requested a log to no avail. Bulson's counsel claims that Movants' counsel was informed as to the status of the document production and/or log (Williamson Decl. ¶ 5), but this is incorrect. The only time Bulson's counsel ever contacted Movants' counsel concerning the subpoena prior to the motion being filed on October 20, 2006 was: (i) to object to the subpoena on August 23 and (ii) confirm by telephone on September 7 that no deposition was going forward on September 12. (Weinberger Decl. ¶ 5). At no time did Bulson's counsel make any representation that he had received files from Mr. Bulson or that a log was being prepared. (*Id.*) He simply confirmed that the deposition was not going forward on the day noticed, and said that he had to provide an update on when Movants could expect a log. (*Id.*) Until this motion was filed, he never did. (*Id.*)

It is well settled that "the burden of proving the existence of the attorney-client privilege is on the party claiming the privilege." *In re Rospatch Sec. Litig.*, 1:90-CV-805, 1:90-CV-806, 1:90-CV-807, 1:91-CV-085, 1991 WL 574963, *5 (W.D. Mich. Mar. 14, 1991) (citing *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir.), *cert. denied*, 449 U.S. 494 (1980)). *See also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996); *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993); *Peyko v. Frederick*, 25 Ohio St.3d 164, 166 (1986) ("'[T]he burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] . . . .'" (citation omitted)). In meeting the burden of proving the existence of a privilege, the asserting party must

---

promise of when the documents might be produced or how extensive the production would be, nor did it address other components of this motion. That, coupled with the fact that discovery in the Underlying Actions closed on November 17, 2006 left Movants with no choice but to proceed with the motion.

EXHIBIT 48
1621

Bulson Production
00011

identify each document withheld on a claim of privilege with "sufficient particularity," and include an index of the documents with a "particularized description of the contents of each document." *Rospatch*, 1991 WL 574963 at *5 (citing *Walsh*, 623 F.2d at 493; *In re Richardson-Merrell, Inc.*, 97 F.R.D. 481, 484 (S.D. Ohio 1983)).

Here, Bulson's late privilege log is on its face insufficient to sustain a claim of privilege, as it is woefully inadequate in terms of the level of information provided about the purportedly privileged documents. Bulson's log (Williamson Decl. Exh. A) classifies withheld documents by the following categories: "Log #," "Date of Document," "Identity of Recipient(s)," "Identity of Author(s)," "Document Description," "Privilege Claim," and "Present Location." (*Id.*) The "Document Description" category does not, however, describe the document at all, instead only identifying the document by type: "Letter," "Email," "Notes," or otherwise. Absent is any sort of indication to the Court or the opposing party as to what, exactly, the document relates to and why it is a privileged subject matter, as required by Rule 26(b)(5).

The reason for the rule's requirements is to avoid abuse of the privilege simply because a client and lawyer are corresponding with each other. Indeed, it is well accepted that simply because a document is the subject of communication between an attorney and his client, that document does not become subject to the privilege: the "mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638 (1994). Consequently, a party does not satisfy its burden of establishing the privilege when it makes blanket claims of privilege with respect to entire files simply because attorneys had something to do with them; claims of privilege must be supported on a document-by-document basis. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990). The party asserting the privilege has the burden of describing the nature of withheld

EXHIBIT 48
1622

Bulson Production
00012

documents in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege. Fed. R. Civ. P. 26(b)(5); *Antonious v. Spalding*, 1998 U.S. Dist. LEXIS 10725, at *3 (D. Md. April 21, 1998). Without that knowledge, Movants have no platform from which to challenge the assertion, which is the very reason that Rule 26(b)(5) requires the level of disclosure that it does. Accordingly, Bulson's log is insufficient.[2]

## II. BULSON HAS NOT MET HIS BURDEN OF ESTABLISHING A COMMON INTEREST FOR CERTAIN COMMUNICATIONS WITH PLAINTIFFS AND THEIR COUNSEL

Even had Bulson's log been timely and provided greater detail so as to permit Movants to analyze the log to determine whether a claim of privilege was proper, there are certain communications listed on the privilege log which, based on undisputed facts in the Underlying Actions, cannot be subject to Mr. Bulson's claim of "joint interest."

The so-called "joint defense," "common interest" or "community of interest" rule is "an exception to the general principle that communications in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." 1 Paul R. Rice, *Attorney-Client Privilege*, § 4:35 at 192-95 (2d ed. 1999) (hereinafter "Rice"). *See also Libbey Glass, Inc. v. Onedia, Ltd.*, 197 F.R.D. 342, 347-49 (N.D. Ohio 1999) (adopting "restrictive approach" to common interest exception, limiting opportunity to claim the common interest privilege to show concurrent *legal* interest, as opposed to commercial interests); *Cigna Ins. Co. v. Cooper Tires & Rubber, Inc.*, 3:99CV7397,

---

[2] Bulson's citation to the approval of the California Magistrate Judge for his log format fails for the simple reason that this proceeding is not taking place in California, but in Ohio. *See* Fed. R. Civ. P. 45(a)(2) (requiring subpoena *duces tecum* and for deposition to be issued from the court for the district where the production or inspection is to be made or deposition is to be taken, not from the court in which the underlying action is pending). *See also New York v. American Power & Elec. Power Serv. Corp.*, No. 2:04-CV-1098, 2:05-CV-360, 2006 WL 1526110, *1 (S.D. Ohio May 26, 2006) (holding that a "conclusory and often vague privilege log precludes this Court from assessing the applicability of the privilege in favor of Defendants" and, consequently, granting motion to compel).

EXHIBIT 48
1623

Bulson Production
00013

2001 WL 640703, *2 (N.D. Ohio May 21, 2001) ("the 'common interest' extension of the privilege should be construed narrowly, rather than expansively."). If the parties to a communication share some common legal goal, then they may share otherwise privileged communications without concern that they will later have to disclose them as waived. *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, *6 (N.D. Ohio Feb. 9, 2006).

The common interest doctrine is a narrow exception to the rule that the privilege governing communications between clients and their counsel is waived when those communications are shared with third parties. The narrowness of the common interest exception is underscored by that fact that "this protection is not applicable to disputes between the participants in the joint defense who may subsequently find themselves in conflict over the very matter about which they were previously joining forces against a common adversary." Rice, § 4:35 at 198. *See also MPT*, 2006 WL 314435 at *7 ("[A]dversarial aspects of the relationship such as license negotiations are not protected."). Nor is it applicable where the parties only have a common "commercial interest." *Id.* at *6. *Libbey Glass*, 197 F.R.D. at 349. "The common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.* at 348. *MPT* is directly on point here.

The Court will note that there are numerous entries on the privilege log (Williamson Decl. Ex. A) evidencing communications between Bulson, as Michael Siegel's attorney, on the one hand, and Plaintiffs Joanne Siegel and Laura Siegel Larson or their representatives, their former counsel Kevin Marks of Gang Tyre Ramer & Brown or present counsel Marc Toberoff, on the other. As set forth in their moving brief, defendants have asserted counterclaims in the Underlying Action to enforce a settlement agreement with Plaintiffs that the parties reached in October 2001. (Moving Br. at 4 & Ex. 4, ¶¶ 47-56). Plaintiffs repudiated that agreement by letter to DC and its counsel on September 21, 2002, in which they indicated that any deal with

6

EXHIBIT 48

1624

Bulson Production
00014

defendants was off and that they were terminating all negotiations. (*Id.*). Indeed, no further negotiations took place after September 21, 2002 until the Underlying Actions were filed in October 2004. (*Id.*).

Mr. Bulson's client, Michael Siegel (now deceased), owned a vested 25% share of the copyright termination interest that was the subject of the October 2001 settlement and that is now the subject of the Underlying Actions. And while defendants did not negotiate the 2001 settlement with Mr. Siegel directly, he stood to benefit from it and Mr. Bulson was tangentially involved in the negotiations, thus creating an arguably legitimate basis for a claim of joint or common interest, protecting communications between Plaintiffs' counsel and Mr. Bulson on the subject of the settlement, to the extent they occurred, before October 2002 (although such a claim would only apply to communications in furtherance of a joint settlement). However, when on September 21, 2002 Plaintiffs repudiated their agreement and announced that settlement discussions had ceased, that potentially legitimate common interest ended.

Furthermore, Plaintiffs and Michael Siegel undisputedly assumed an adversarial position vis-à-vis their ownership shares after Plaintiffs repudiated the settlement, thus eviscerating any claim of joint privilege, around the time that the settlement was repudiated. Plaintiffs retained a California company, IP Worldwide ("IPW") (in which their current counsel Mr. Toberoff is a principal) to represent them in connection with efforts to exploit their Superman termination interest. (Weinberger Decl. Ex. 15). Then, in January 2003, Plaintiffs and IPW entered into a second agreement (*id.* Ex. 16) in which they acknowledged certain "risks and potential problems regarding Michael Siegel" and agreed that IPW partner Ariel Emanuel "will attempt to purchase all of Michael Siegel's rights, title and interest" in his termination rights in connection with IPW's representation of Plaintiffs. (*Id.*) Such a transaction had nothing to do with Michael Siegel's prior common interest with Plaintiffs in seeking a settlement with defendants.

CLI-1469595v1

7

EXHIBIT 48
1625

Bulson Production
00015

These earlier agreements between Plaintiffs and IPW also cast substantial doubt on Bulson's claim that post-January 2003 correspondence between Toberoff and Bulson, or their clients, Plaintiffs and Michael Siegel, fall under any purported common interest.[3] There are at least 15 separate communications disclosed on Bulson's log that clearly fit in this timeframe:

| Log # | Date | Author | Recipient | Description | Privilege Claimed |
|-------|------|--------|-----------|-------------|-------------------|
| 299 | 4/16/03 | Laura & Joanne Siegel (Plaintiffs) | Don Bulson | Letter | Attorney/Client ("AC") – Joint Interest ("JI") |
| 301 | 4/30/03 | Marc Toberoff | Bulson | Letter | AC/JI |
| 319 | 6/18/03 | Bulson | Toberoff | Letter | AC/JI |
| 325 | 7/16/03 | Toberoff | Bulson | Letter | AC/JI |
| 327 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 328 | 8/6/03 | Toberoff | Bulson | Letter | AC/JI |
| 377 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 378 | 11/12/04 | Bulson | Toberoff | Email | AC/JI |
| 379 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 380 | 11/17/04 | Toberoff | Bulson | Email | AC/JI |
| 381 | 11/18/04 | Toberoff | Bulson | Email | AC/JI |
| 386 | 11/24/04 | Bulson | Toberoff | Email | AC/JI |
| 388 | 11/29/04 | Toberoff | Bulson | Email | AC/JI |
| 393 | 1/17/05 | Toberoff | Bulson | Email | AC/JI |
| 412 | 11/18/05 | Bulson | Toberoff | Email | AC/JI |

Bulson, of course, makes no effort either through his belated privilege log or opposition to this motion to support his claim of joint interest with Plaintiffs. That is because no such joint interest exists, and any privilege was waived when Messrs. Toberoff and Bulson or their clients

---

[3] Any remaining doubt must be resolved against a finding of joint interest, since Michael Siegel's "last act" before his passing was to affirmatively exclude Plaintiffs from any future ownership stake in his share of the Superman termination interest. (Moving Br. Ex. 5).

8

EXHIBIT 48
1626

Bulson Production
00016

exchanged correspondence thereby breaking the confidentiality required to maintain the privilege.[4]

As noted in their moving brief, the 15 documents sought here -- none of which have been produced by Plaintiffs in the Underlying Actions – are important to Movants' discovery efforts in the underlying litigation for two chief reasons.  First, from a review of the January 21, 2003 agreement between Plaintiffs and IPW in which IPW was to attempt to purchase Michael Siegel's termination interest, Plaintiffs and IPW were concerned about "various risks and potential problems" regarding Michael Siegel (*i.e.*, that Michael Siegel might have had a different view as to the nature and scope of the termination rights).  Second, any offer made by Toberoff or Emanuel on behalf of IPW to purchase Michael Siegel's interest has a bearing on the valuation issues at stake in the Underlying Actions.  Given the limited nature of the documents (15 letters or emails) sought from Mr. Bulson, and the broad scope of discovery afforded by Rule 26, Bulson should be ordered to produce these documents.

---

[4] Incredibly, Bulson argues in his opposition to this motion that Movants' motion relating to Bulson's privilege claims "is flawed as they have not challenged the detailed privilege assertions embodied in Bulson's privilege log." (Bulson Br. at 9). However, since Bulson *withheld* his privilege log until *after* Movants filed their motion, there was no opportunity to challenge its contents.

EXHIBIT 48
1627

Bulson Production
00017

## CONCLUSION

Accordingly, and for the reasons set forth in their moving brief, Movants respectfully request that their motion to compel be granted.

Respectfully submitted,

By  s/Meggan A. Rawlin
David A. Kutik  (0006418)
Meggan A. Rawlin  (0074215)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dakutik@jonesday.com
mrawlin@jonesday.com

Counsel for Movants

Of counsel:

Roger L. Zissu
James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, PC
866 United Nations Plaza
New York, New York 10017
Phone: (212) 813-5900
Fax: (212) 813-5901

CLI-1469591v1

10

EXHIBIT 48
1628

Bulson Production
00018

## CERTIFICATE OF SERVICE

Movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics hereby certify that a copy of the foregoing Reply Memorandum in Further Support of Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees was served on November 20, 2006 via U.S. Mail, facsimile, and the Court's electronic case filing system on the following counsel:

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Joshua Ryland, Esq.
Renner Otto Boisselle & Sklar, LLP
1621 Euclid Avenue, Ninth Floor
Cleveland, Ohio 44115
Telephone: (216) 621-1113
Facsimile: (216) 621-6165

s/ Meggan A. Rawlin
Meggan A. Rawlin
Attorney for Movants

CLI-1469591v1

EXHIBIT 48
1629

Bulson Production
00019

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:<br><br>JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>Defendants. | Misc. Case No. 1:06MC0099<br><br>Case Nos. SA CV 04-8400 SGL (RZx)<br>SA CV 04-8776 SGL (RZx)<br><br>(Consolidated for Discovery Purposes)<br><br>Action Pending in the U.S. District Court for the Central District of California |

### DECLARATION OF JAMES D. WEINBERGER IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

I, James D. Weinberger, declare under penalty of perjury:

1.    I am an associate in the law firm of Fross Zelnick Lehrman & Zissu, P.C., counsel for Movants. This declaration, based upon my own personal knowledge and on our office's records in this action, is submitted in support of the motion of movants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and defendant-counterclaimant DC Comics, (collectively "Movants") to compel non-party Don Bulson, Esq. ("Bulson") to comply with a subpoena and appear for deposition.

2.    Attached as Exhibit 12 hereto[1] is a true and correct copy of my letter of November 1, 2006 to Marc Toberoff, counsel for Plaintiffs in the Underlying Actions and for Mr. Bulson on this motion.

---

[1] For the convenience of the Court, exhibits have been numbered sequentially and following the exhibits attached to Movants' brief in support of this motion, filed on October 20, 2006.

EXHIBIT 48
1630

Bulson Production
00020

3.      Attached as Exhibit 13 hereto is a true and correct copy of Mr. Toberoff's November 1, 2006 email to me.

4.      Attached as Exhibit 14 hereto is a true and correct copy of my November 2, 2006 letter to Mr. Toberoff.

5.      Bulson's counsel claims that I was informed as to the status of the document production and/or log before this motion was filed on October 20, 2006 (Declaration of Nicholas Williamson, ¶ 5), but this is false. The only time Mr. Bulson's counsel ever contacted Movants' counsel concerning the subpoena prior to the motion being filed on October 20, 2006 was: (i) to object to the subpoena on August 23 and (ii) confirm by telephone call placed to me (by Mr. Williamson) on September 7 that no deposition was going forward on September 12. At no time did Bulson's counsel make any representation that he had received files from Mr. Bulson or that a log was being prepared. He simply confirmed that the deposition was not going forward on the day noticed, and said that he had to provide an update on when Movants could expect a log. Until this motion was filed, he never did.

6.      Attached hereto as Exhibit 15 is a true and correct copy of the October 3, 2002 agreement between Plaintiffs in the Underlying Actions and IP Worldwide, an entity controlled by Mr. Toberoff, produced by Plaintiffs in the Underlying Actions.

7.      Attached hereto as Exhibit 16 is a true and correct copy of the January 21, 2003 (the 2002 date is incorrect, according to sworn testimony in the Underlying Actions) agreement between Plaintiffs and IP Worldwide under which IP Worldwide was to procure rights in the Superman termination interest from Michael Siegel, as well as a full release of any claims Mr. Siegel had against Plaintiffs in connection therewith.

2

EXHIBIT 48
1631

Bulson Production
00021

I declare under penalty of perjury of the laws of the United States of America that the

foregoing is true and correct.

Sworn to me this 20th day of November, 2006 at New York, New York.

James D. Weinberger

I:\jweinberger\decl\Siegel Litigation\Pleadings\04cv8400\061120-0425344-JDW Decl Mot Compel Bulson-jdw.DOC

3

EXHIBIT 48
1632

Bulson Production
00022

# EXHIBIT 12

EXHIBIT 48
1633

Bulson Production
00023

# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

865 UNITED NATIONS PLAZA
AT FIRST AVENUE & 48ᵀᴴ STREET
NEW YORK, N. Y. 10017

TELEPHONE: (212) 813-5900
FACSIMILE: (212) 813-5901
E-MAIL: jweinberger@frosszelnick.com

November 1, 2006

**BY EMAIL**

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

Re:  *Superman Litigation*, Case Nos. CV 04-8400 SGL (RZx), CV 04-8776 SGL
     (RZx) (C.D. Cal) (Our Ref. No. DCC USA TC-04/25344)

Dear Marc:

    I write in connection with the pending Northern District of Ohio motion to compel Don
Bulson to comply with the subpoena we served back in early August. I understand from Meggan
Rawlin of Jones Day that you have requested that we withdraw the motion on the basis of
privilege log you forwarded me by letter of October 23, 2006. We decline to withdraw the
motion.

    We served the subpoena on Mr. Bulson on August 11, 2006. On August 23, we received
from your office lengthy objections, with no indication of any intent to comply with your
obligation to produce documents, a privilege log, and make Mr. Bulson available for a
deposition. Over the next several weeks, I wrote numerous letters to your office and spoke to
Nick Williamson on the phone repeatedly requesting compliance with the subpoena. We never
even received the courtesy of a response. Thus, as we had previously advised we would do if
your client did not comply with his obligations under the subpoena, we filed a motion to compel
in the U.S. District Court for Northern District of Ohio on October 20, 2006.

    It was only after we went through the trouble, time and expense of preparing and filing a
motion that you served Mr. Bulson's privilege log on October 23. Conduct of this sort has been
pervasive throughout this litigation, and we cannot accept it. Furthermore, even a cursory

**EXHIBIT 48**
**1634**

Bulson Production
00024

Marc Toberoff, Esq.
November 1, 2006
Page 2

examination of the privilege log reveals it to be woefully inadequate in terms of the level of detail provided. Finally, many of the allegedly privileged documents you characterize as subject to "joint interest," such as correspondence between Plaintiffs or their representatives, on the one hand, and Michael Siegel or Mr. Bulson, on the other, are obviously not privileged. Since many of these documents are dated after Plaintiffs repudiated the settlement in October 2002 and your company, IP Worldwide, entered into an agreement by which you and Ari Emanuel sought to purchase Michael Siegel's share of the termination interests at issue in this litigation, any joint interest ever held by Plaintiffs and Michael Siegel – and we do not agree that such an interest was ever present – was obviously non-existent at that point.

Given your conduct and the obvious deficiencies in the privilege log, we will not withdraw our motion. Moreover, as discovery in the underlying litigation will close on November 17, 2006, we will not grant any extension of the November 6, 2006 deadline to respond to the motion and will oppose any attempt by you to obtain an extension.

Very truly yours,

James D. Weinberger

cc:    Nicholas C. Williamson, Esq.
       Meggan A. Rawlin, Esq.
       Michael Bergman, Esq.
       Anjani Mandavia, Esq.
       Adam Hagen, Esq.
       Patrick T. Perkins, Esq.
       Roger L. Zissu, Esq.

EXHIBIT 48
1635

Bulson Production
00025

**EXHIBIT 13**

EXHIBIT 48
1636

Bulson Production
00026

**James Weinberger**

| | |
|---|---|
| From: | Marc Toberoff [mtoberoff@ipwla.com] |
| Sent: | Wednesday, November 01, 2006 6:42 PM |
| To: | James Weinberger |
| Subject: | Bulson Subpoena |
| Importance: | High |

James:

This is to confirm the proposal I discussed with you a moment ago in an effort to amicably resolve our dispute regarding Bulson's privilege log and to avoid having to press forward with a motion to compel in Cleveland.

1.   Bulson would produce communications to/from me, IP Worldwide, the Siegels, etc., if any, regarding a buy-out of Michael Siegel's interest.

2.   Bulson would revise the privilege log for entries after October 22, 2002, other than for communications to/from Michael Siegel or Bulson's notes to file, to include the basic subject matter to enable you to better assess the assertion of privilege along the lines of the privilege logs prepared by your firm in this case.

In consideration for this compromise you would extend the motion to compel and upon satisfactory completion of items 1 and 2 take the motion off calendar.

I look forward to your response.

Marc Toberoff
Law Offices of Marc Toberoff, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fx: (310) 246-3101

11/20/2006

EXHIBIT 48
1637

Bulson Production
00027

# EXHIBIT 14

EXHIBIT 48
1638

Bulson Production
00028

# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

866 UNITED NATIONS PLAZA
AT FIRST AVENUE & 48TH STREET
NEW YORK, N. Y. 10017

TELEPHONE: (212) 813-5900
FACSIMILE: (212) 813-5901
E-MAIL: jweinberger@frosszelnick.com

November 2, 2006

**BY EMAIL**

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

Re:  *Superman Litigation*, Case Nos. CV 04-8400 SGL (RZx), CV 04-8776 SGL
(RZx) (C.D. Cal) (Our Ref. No. DCC USA TC-04/25344)

Dear Marc:

I write further to our correspondence of yesterday and your proposal by email at 6:42 p.m. last night (and your follow-up voicemail message of today) in which you offered to produce certain documents and revise Mr. Bulson's privilege log in return for Defendants withdrawing the pending motion in Ohio.

As an initial matter, our past experience in attempting to resolve discovery disputes without assistance from the Court have not been good. When we had our initial dispute over Plaintiffs' responses to DC's interrogatories concerning the allegedly infringing *Smallville* episodes, we withheld our motion and stipulated to allow Plaintiffs' to supplement those responses based on the belief that we would get complete answers without objection. When we did not get such answers, we had to go back to the Court to obtain the answers that we should have had in the beginning. This process took months and added unnecessary expense for our clients. History thus dictates that just because we are able to compromise does not mean that Defendants will get the discovery to which they are entitled without going back to Court.

In any event, while we would have much preferred a solution to these issues that would have avoided the need to seek relief from the Ohio court (indeed, the motion was only filed after we received no response to numerous inquiries concerning Mr. Bulson's intent to comply with

EXHIBIT 48
1639

Bulson Production
00029

Marc Toberoff, Esq.
November 2, 2006
Page 2

the subpoena), this is simply a matter of too little, too late, as we do not believe that your proposal is sufficient to protect our clients' need for the discovery at issue given the limited time frame in which we are operating.

That being said, if, as is obligated under the subpoena, in advance of the decision on the motion (preferably now) you (a) produce the non-privileged documents now listed as subject to a purported "joint interest" between Plaintiffs and Michael Siegel and (b) revise the privilege log to allow Defendants to make a genuine evaluation of any remaining privilege claims made on the basis of such joint interest, as well as provide us with (c) adequate written assurances that all documents are being produced, (d) a firm date to depose Mr. Bulson within the discovery period, and (e) our costs and fees incurred in connection with making the motion, we of course would be willing to reconsider. Short of that, it is simply too late for any other compromise.

Very truly yours,

James D. Weinberger

cc:    Nicholas C. Williamson, Esq.
       Meggan Rawlin, Esq.
       Michael Bergman, Esq.
       Anjani Mandavia, Esq.
       Adam Hagen, Esq.
       Patrick T. Perkins, Esq.
       Roger L. Zissu, Esq.

I:\jweinberger\doc\Siegel Litigation\Correspondence\061102-0425344-Toberoff Ltr(24)-jdw.DOC

EXHIBIT 48
1640

Bulson Production
00030

# EXHIBIT 15

EXHIBIT 48
1641

Bulson Production
00031

# Ip worldwide

As of October 3, 2002

Joanne Siegel
13929 Marquisas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Re: "Superman"

Dear Joanne and Laura:

This letter shall confirm the agreement and understanding between you ("Owner") and us ("IPW") regarding Owner's retention of IPW to exclusively represent Owner with respect to any and all of Owner's rights, claims, title and interest in and to the comic book property commonly known as "Superman," including, without limitation, all characters and copyright interests therein (jointly and individually, "Rights"):

1.    In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.

2.    IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. IPW will also provide Marc Toberoff's legal services with respect to all legal contracts in connection with all of the above. IPW will be solely responsible for Marc Toberoff's legal fees in connection herewith, if any.

3.    The terms of any and all agreements regarding the Rights will require Owner's express written approval.

4.    IPW will pay its own costs and expenses in connection with this Agreement, including without limitation, office overhead, photocopying, messenger fees, postage and overnight mail, long distance telephone and fax charges, travel and accommodation costs and any legal fees to Marc Toberoff, and such costs will not be recoupable from Proceeds hereunder. Notwithstanding this, in the event IPW advances or loans Owner moneys to pay costs in furtherance of the Rights (e.g., US Copyright Office fees and audit fees, if any) the terms and repayment of any such advances or loans will be set forth in a separate written agreement between the parties.

8701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3344
E-mail: MToberoff@IPWW.biz

000001878

EXHIBIT 48
1642

Bulson Production
00032

Oct-06-06  07:08pm  From-

-2002  04:56 PM

Oct-21-02  08:13am  Prop-

T-836  P.003  F-795

1  ( ' 827 7227      P.03

T-262  P.005/015  F-755

# Ip worldwide

Page 2
Retainer Agreement/ Superman
As of October 3, 2002

5.      The term ("Term") of this Agreement is eighteen (18) months from the date this Agreement is executed by all parties. In the event the parties are actively negotiating an agreement regarding this Rights when the Term is due to expire, the Term will automatically be extended for three (3) additional months. In the event during the Term either Marc Toberoff or Ariel Emanuel are unable to render services in connection with this Agreement for a continuous period greater than three (3) months due to death, incapacity or otherwise, Owner may in its discretion terminate this Agreement prior to the expiration of the Term.

6.      In consideration of the services to be furnished by IPW hereunder you hereby agree to pay and authorize IPW to retain out of all gross compensation, moneys or other consideration that may be payable or recovered for or by reason of Owner's Rights whether by negotiation, dispute resolution, settlement or otherwise ("Proceeds"): a fee ("Fee") of ten percent (10%) of any and all gross compensation payable including, without limitation, option, quitclaim or licensing fees, purchase price, settlement amounts, advances, fixed and/or contingent compensation. In computing IPW's fee no deduction will be made from gross Proceeds, including, without limitation, no deduction for Owner's taxes, expenses and/or moneys payable to any and all third parties if any. IPW's Fee shall apply to any and all agreements regarding the Rights made during the Term or the material terms of which are substantially negotiated during the Term and/or to any agreements between Owner and an investor or buyer introduced by IPW to Owner during the Term. For the avoidance of doubt, in the event "Superman" and the Rights are sold, settled, licensed or otherwise exploited in conjunction with other characters or rights owned or controlled by Owner (e.g., "Superboy"); it is understood and agreed that IPW will not "double dip" and the above 10% IPW Fee will apply to gross Proceeds from any said joined transaction(s).

Notwithstanding the above, for purposes of computing IPW's Fee, Proceeds will not include Joanne Siegel's annual "pension" payments which commenced in 1996 (currently $ 126,148 annually, plus cost of living increases or bonuses, if any) and her full medical and dental coverage provided by AOL Time Warner which consideration and interests pre-date and are wholly separate from her copyright termination interests.

///
///
///
///
///
///

000001879

EXHIBIT 48
1643

Bulson Production
00033

# Ip worldwide

Page 3
Retainer Agreement/ *Superman*
As of October 3, 2002

7.    Owner hereby authorizes IPW to collect and receive all Proceeds due and payable; to endorse and deposit any checks or moneys payable into a silent trust account on Owner's behalf; to deduct IPW's fee as set forth above; whereupon IPW will promptly pay the remainder directly to Owner as directed by Owner in writing. It is understood that the Rights may involve multiple rights and claims against multiple parties and accordingly IPW's above fee shall be applicable to each Rights payment or recovery from any party and same is not contingent on any other Rights payment.

8.    Owner hereby warrants and represents that Owner will not transfer, assign, license or in any manner encumber the Rights during the Term or extended Term other than through or as a result of IPW's exclusive representation hereunder, with the exception of by will, probate or pursuant to other Court order.

9.    All notices and/or payments hereunder shall be made to the parties at the addresses set forth on page 1 hereof unless and until either party gives the other prior written notice of a change of address.

10.    The parties understand and acknowledge that the scope of this Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services and advancing of such expenses, if requested and desired by Owner, will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and Owner.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by both parties. The parties acknowledge that they fully understand the terms and conditions of this Agreement and have agreed to such terms and conditions after negotiation, mature thought and deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. The terms of this Agreement shall be construed pursuant to their fair meaning, not for or against either party. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals. This Agreement shall be governed by the

000001880

EXHIBIT 48
1644

Bulson Production
00034

# Ip worldwide

Page 4
Retainer Agreement/ Superman
As of October 3, 2002

Laws of the State of California applicable to agreements made in and to be performed therein.

We are very pleased and excited to work with you and will do our very best to handle this matter in a dedicated manner and to achieve results satisfactory to you.

Yours sincerely,

Marc Toberoff
Authorized signatory

Ariel Emanuel
Authorized signatory

Agreed, Understood and Accepted:

Joanne Siegel

Date: October 23rd 2002

Laura Siegel Larson

Date: October 23, 2002

000001881

EXHIBIT 48
1645

Bulson Production
00035

# EXHIBIT 16

EXHIBIT 48
1646

Bulson Production
00036

Oct-06-06  07:10pm  From-

FROM :SIEGEL                    FAX NO. :13106215054               T-036  P.012/010  F-735
                                                                   Jun. 22 2003 05:21PM P1

# Ip worldwide

January 21, 2002

*Privileged & Confidential*

Joanne Siegel
13529 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Dear Joanne and Laura:

This is to confirm the agreement and understanding in connection with our recent discussion and disclosure to you of various risks and potential problems regarding Michael Siegel, and the mitigation of possible conflicts of interest with respect to the following proposed remedial actions:

1.    Ariel Emanuel ("AE") will attempt to purchase all of Michael Siegel's rights, title and interest in *Superman, Superboy and The Spectre* ("MS Interests") to be financed by AE.

2.    The proposed purchase will be subject to Michael Siegel entering into a formal written settlement agreement, settling and releasing each of you, your representatives, successors and assigns from any and all disputes, claims or causes of actions regarding *Superman, Superboy and The Spectre*. The settlement agreement will specifically disclose the separate *Superboy* termination, recently served and filed.

3.    In the event Michael Siegel agrees to the above purchase and settlement, the following conditions will apply to and bind AE, any designee entity owned or controlled by him and his heirs, successors or assigns with respect to the MS Interests:

     (a)    The MS Interests will only be sold or assigned to a separate third party (i.e., not owned or controlled by AE) in conjunction with the sale or assignment of your interests in *Superman, Superboy and/or The Spectre*, respectively, to said third party and not independently of your interests.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-4100; Fax: (310) 246-3335
E-mail: MToberof@IPWW.biz

000001888

EXHIBIT 48
1647

Bulson Production
00037

Oct-06-06  07:10pm  From-

FROM :SIEGEL        (        FAX NO. :13108215894

Jan-21-03  07:04pm  From-

T-098  P.013/018  F-765

Jan. 22 2003 05:23PM  P2
T-408  P.006/010  F-410

# Ip worldwide

Page 2
Joanne Siegel and Laura Siegel Larson
January 21, 2002

(b)    You retain full and complete decision making authority with respect to the disposition of the copyright termination interests in *Superman, Superboy* and *The Spectre* arising from Jerome Siegel's copyright interest therein.

(c)    AB will fully indemnify you and hold you completely harmless against any and all claims, causes of action, damages, costs or loss (including attorney's fees), if any, arising out of the purchase of the MS Interests and the settlement agreement.

(d)    AB will reimburse you for twenty-five percent (25%) of any expenses paid by you after October 17, 2000 in connection with the Jerome Siegel copyright termination interests in *Superman, Superboy or The Spectre*, including without limitation, the filing cost of the Superboy Copyright Termination, upon and subject to your providing him with an itemized list of such expenses.

(e)    AB will also pay twenty-five percent (25%) of the following sums: (i) fees, commission or settlement amounts, if any, to the law firm of Gang, Tyre, Ramer & Brown and/or its attorneys regarding their alleged services in connection with Jerome Siegel's copyright termination interests; (ii) fees, costs or expenses of any audit, if any, of *Superman, Superboy or The Spectre* and (iii) fees, costs, expenses or profits derived from *Superman, Superboy or The Spectre* and (iii) fees, costs or expenses of any other actions to protect, enforce or enhance Jerome Siegel's copyright termination interests in *Superman, Superboy or The Spectre*.

(f)    If, after the sale or assignment of the *Superman/Superboy/The Spectre* rights is made and royalties are being paid to the Siegel interest, AB chooses to offer his royalty interest for sale, you, or in the event of your death, your heirs, will have the right of first refusal to purchase said royalty interest.

4.    This letter contains the full and complete understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in a writing signed by each party. This letter shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this letter shall be valid.

///
///
///
///
///
///
///
///

000001889

EXHIBIT 48
1648

Bulson Production
00038

Oct-06-06  07:18am  From-                                                                    T-039  P.014/018  F-705
FROM :SIEGEL                           FAX NO. :13186215094              Jan. 22 2003 09:22PM  P3
            Jan-21-03  08:00pm  From-                                                Y-023  P.007/013  Y-083

# Ip worldwide

Page 3
Joanne Siegel and Laura Siegel Larson
January 21, 2002

acceptable substitutes for executed originals.

If the above comports with your understanding please indicate this by your signatures below and returning a copy of this letter to me.

Yours sincerely,

Marc Toberoff

Agreed, Understood and Accepted:

_____          Date: 1/22/03
Ariel Z. Emanuel

_____          Date: 1/22/03
Joanne Siegel

_____          Date: 1/22/03
Laura Siegel Larson

000001890

EXHIBIT 48
1649

Bulson Production
00039