1

1

2                        UNITED STATES DISTRICT COURT

3                        CENTRAL DISTRICT OF CALIFORNIA
                              WESTERN DIVISION

4

5
     DC COMICS,                        )
6                                      )
                                       )
7           PLAINTIFF,                 )
                                       )
8           VS.                        ) CASE NO. CV 10-03633-ODW(RZX)
                                       )
9                                      )
     PACIFIC PICTURES CORP. ET AL.,)
10                                     ) LOS ANGELES, CALIFORNIA
                                       ) AUGUST 8, 2011
11                                     ) (9:50 A.M. TO 10:11 A.M.)
            DEFENDANTS.                )
12   _____)

13
                              HEARING
14            BEFORE THE HONORABLE RALPH ZAREFSKY
                  UNITED STATES MAGISTRATE JUDGE

15

16

17

18   APPEARANCES:              SEE NEXT PAGE

19   COURT REPORTER:           RECORDED; COURT SMART

20   COURTROOM DEPUTY:         ILENE BERNAL

21
     TRANSCRIBER:              DOROTHY BABYKIN
22                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
23                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
1    APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:       O'MELVENY & MYERS LLP
2                             BY:  MATTHEW T. KLINE
                                   ATTORNEY AT LAW
3                             1999 AVENUE OF THE STARS
                              7TH FLOOR
4                             LOS ANGELES, CALIFORNIA  90067

5    FOR SIEGEL AND SHUSTER   TOBEROFF & ASSOCIATES, P.C.
     DEFENDANTS:              BY:  MARC TOBEROFF
6                                  KEITH ADAMS
                                   ATTORNEYS AT LAW
7                             2049 CENTURY PARK EAST
                              SUITE 2720
8                             LOS ANGELES, CALIFORNIA  90067

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1                           I N D E X
        CASE NO. CV 10-03633-ODW(RZX)              AUGUST 8, 2011
2
        PROCEEDINGS:   1.  PLAINTIFF'S MOTION TO COMPEL
3                          PRODUCTION OF DENNIS LARSON DOCUMENTS
                       2.  PLAINTIFF'S MOTION TO COMPEL PRODUCTION
4                          OF ALL COMMUNICATIONS WITH THE GOVERNMENT
                           RE TOBEROFF TIMELINE
5                      3.  PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
                           ALL COPIES OF THE 5/13/03 LETTER
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1          LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 8, 2011; 9:50 A.M.

2               THE CLERK:  ITEM NUMBER 2, CASE NUMBER

3    CV 10-3633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES CORP.,

4    ET AL.

5               COUNSEL, PLEASE MAKE YOUR APPEARANCES.

6               MR. KLINE:  MATT KLINE OF O'MELVENY & MYERS ON

7    BEHALF OF DC COMICS.

8               THE COURT:  GOOD MORNING.

9               MR. TOBEROFF:  MARC TOBEROFF ON BEHALF OF THE

10   DEFENDANTS.

11              MR. ADAMS:  KEITH ADAMS ON BEHALF OF THE

12   DEFENDANTS.

13              THE COURT:  GOOD MORNING.

14              ALL RIGHT.  WE HAVE THREE MOTIONS THAT THE

15   PLAINTIFF HAS BROUGHT.  I DON'T KNOW THAT ANY OF THEM NEEDS

16   MUCH ARGUMENT.

17              IS THERE ANY OF THEM THAT YOU WISH TO BE HEARD ON,

18   MR. KLINE?

19              MR. KLINE:  JUST VERY BRIEFLY, YOUR HONOR.  I JUST

20   WANT TO MAKE SURE YOU GOT DOCKET NUMBER 301, OUR SUPPLEMENTAL

21   MEMORANDUM.

22              THE COURT:  YES.

23              MR. KLINE:  GREAT.

24              LET ME JUST HIT ONE KEY POINT ON EACH OF THE

25   MOTIONS IF YOU DON'T MIND.

5

1            I THINK THE KEY POINT ON THE "Q" BATES STAMP

2    MOTION, WHICH IS DOCKET NUMBER 296, IS PLAINTIFF'S ADMISSION

3    THAT THESE DOCUMENTS ARE RESPONSIVE AND NOT PRIVILEGED.  AND,

4    ALSO, THEIR STATEMENT AT THE LAST TRANSCRIPT -- SORRY, AT THE

5    LAST ORAL ARGUMENT, IF YOU LOOK AT PAGE 45 OF THE TRANSCRIPT

6    WHERE THEY ADMITTED -- I'M SORRY, PAGE -- EXHIBIT 5, PAGE 69,

7    WHERE THEY ADMITTED THAT THEY DID NOT REDACT THE BATES NUMBER

8    OFF THE COPY THAT WAS AT ISSUE IN THE LAST MOTION.

9            AND, SO, THIS COURT HAS NOT RESOLVED THE ISSUE OF

10   WHETHER THAT DOCUMENT SHOULD BE PRODUCED.  AND AT THE END OF

11   THAT LAST HEARING YOUR HONOR REMINDED ME THAT HE WAS NOT

12   GOING TO HEAR ORAL MOTION.  SO, WE THINK THAT THAT DOCUMENT

13   -- THOSE THREE DOCUMENTS SHOULD BE PRODUCED WITH THEIR "Q"

14   BATES STAMPS ON THEM.

15           I WON'T BELABOR THOSE POINTS, BUT WE THINK THAT

16   THEY ARE CLEARLY RESPONSIVE, OBVIOUSLY NOT PRIVILEGED, AND

17   THERE'S BEEN NO PRIOR RULING AS TO THEIR -- WHETHER THEY

18   SHOULD BE PRODUCED OR NOT.

19           THE COURT:  ALL RIGHT.

20           MR. KLINE:  TURNING TO DOCKET NUMBER 298 -- AND

21   THIS IS THE ONE DEALING WITH THE COMMUNICATIONS WITH THE

22   GOVERNMENT -- THE COURT NEVER REACHED THIS ISSUE EXPLICITLY

23   IN ITS LAST ORDER.  THE DOCUMENTS ARE CLEARLY RESPONSIVE TO

24   REQUESTS THAT WE SERVED.

25           THE ONLY GROUNDS FOR WITHHOLDING THEM, THIS COMMON

6

1    INTEREST GROUND, WAS REJECTED.  AND I JUST POINT OUT THAT THE

2    RELEVANCE THEORY OF THESE DOCUMENTS MAY LEAD TO FURTHER

3    DISCOVERY IS JUST NOT RESPONDED TO.  IT'S CONCEDED IN THEIR

4    PAPERS.  THEY HAVE NO ANSWER TO IT.

5          AS TO THE IMPACT ON THE CREDIBILITY OF WITNESSES,

6    INCLUDING MR. MICHAELS, I BRING THE COURT'S ATTENTION TO

7    CASES LIKE THE GREEN CASE OUT OF THE THIRD CIRCUIT WHERE THEY

8    SAID, YOU KNOW, IF SOMEBODY IS TRYING TO INTIMIDATE A WITNESS

9    FROM TESTIFYING, IF SOMEBODY IS TRYING TO ENGAGE IN EFFORTS

10   THAT WOULD STOP THAT WITNESS FROM TESTIFYING, SUCH EVIDENCE

11   SHOWING LACK OF BIAS WOULD BE HELPFUL.

12         AND HERE, IF MR. MICHAELS WERE TO GIVE TESTIMONY IN

13   THE FACE OF THIS EFFORT TO GET HIM CRIMINALLY PROSECUTED,

14   THAT WOULD OBVIOUSLY SHOW OR HELP SHOW A LACK OF BIAS.

15         AND UNDER THE SUPREME COURT'S ABLE DECISION, BIAS

16   IS INTERPRETED VERY BROADLY IN TERMS OF A RELEVANT STANDARD

17   AND ITS USE IN TRIAL.  AND, OBVIOUSLY, HERE WE'RE NOT EVEN AT

18   THE TRIAL STAGE YET.  WE'RE AT THE DISCOVERY STAGE WHERE THE

19   RELEVANCE THEORY IS EVEN MORE BROAD.

20         FINALLY, AS TO THE DIVORCE DOCUMENTS, DOCKET NUMBER

21   297, AGAIN, THE RELEVANCE AND OVERBURDENSOME OBJECTIONS THE

22   DEFENDANTS ARE ASSERTING NOW WERE WAIVED BACK IN DECEMBER OF

23   LAST YEAR.  THESE DOCUMENTS ARE RESPONSIVE.  WE'VE DONE

24   EVERYTHING WE COULD TO NARROW THE REQUEST BY NOT ASKING FOR

25   PUBLICLY FILED DOCUMENTS.  WE THINK THAT THEY SHOULD BE

7

1    PRODUCED.

2         WE WERE TOLD IN THE MEET AND CONFER -- AND THIS IS

3    ATTESTED TO IN MR. HAYDEN'S DECLARATION -- THAT THEY

4    AFFIRMATIVELY STRIPPED OUT ENCLOSURES AND ATTACHMENTS TO

5    THOSE MATERIALS.

6         THERE'S A FOOTNOTE IN THEIR BRIEF THAT SAYS THEY

7    DIDN'T DO THAT.  BUT THAT'S THE FIRST TIME THEY EVER SAID

8    THAT AND CONTRARY TO WHAT THEY TOLD US ON THE PHONE.

9         AND, SO, AGAIN, WE THINK THAT MOTION SHOULD BE

10   GRANTED.

11        THE COURT:  ALL RIGHT.  THANK YOU.

12        MR. TOBEROFF OR MR. ADAMS.

13        MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.

14        THE COURT:  GOOD MORNING.

15        MR. TOBEROFF:  SORRY TO REPORT I STILL DON'T HAVE

16   THE NEW BUSINESS CARDS.

17        THE COURT:  I NOTICED THAT.  I WASN'T GOING TO SAY

18   ANYTHING FIGURING THAT IN THE CURRENT STATE OF THE ECONOMY,

19   PERHAPS IT HAS SUNK THAT LOW, BUT SINCE YOU BROUGHT IT UP --

20        WHAT DO YOU HAVE TO TELL ME --

21        MR. TOBEROFF:  I'LL DEAL WITH THE --

22        THE COURT: -- MR. TOBEROFF?

23        MR. TOBEROFF:  I'LL DEAL WITH THE USAO DOCUMENTS

24   FIRST.

25        THE COURT:  OKAY.

8

1          MR. TOBEROFF:  DC CLEARLY MADE A MOTION TO COMPEL

2    BOTH THE STOLEN DOCUMENTS AND ANY AND ALL COMMUNICATIONS WITH

3    THE USAO.  THEY WERE SET FORTH SEPARATELY.  IT WAS CLEAR AS A

4    BELL IN THEIR MOTION TO COMPEL -- THEIR PRIOR MOTION.  THAT

5    MOTION WAS GRANTED IN PART AND DENIED IN PART.  AND ONE CAN

6    ONLY INFER SINCE IT WAS GRANTED AS TO THE STOLEN DOCUMENTS,

7    IT WAS DENIED AS TO THE USAO DOCUMENTS.

8          THEY CAREFULLY WORD THEIR MOTION TO SAY IT WASN'T

9    EXPLICITLY DENIED.  IT WAS DENIED NONETHELESS.  IT WOULD BE

10   LAW OF THE CASE.  THEY NEVER MOVED FOR REVIEW OF THAT ORDER

11   UNDER RULE 74 -- 72.

12         AND THEY MAKE NO -- THIS ESSENTIALLY BY DEFINITION

13   IS A MOTION FOR RECONSIDERATION, AND THEY'VE MADE NO SHOWING

14   UNDER THE LOCAL RULES OR TREATED THIS AS A MOTION FOR

15   RECONSIDERATION, AND IT SHOULD BE DENIED ON THAT BASIS.

16         THOSE DOCUMENTS WERE ASSERTED ON OUR PRIVILEGE LOG.

17   IT WAS SET FORTH IN OUR PRIVILEGE LOG, AND THAT'S WHY THEY

18   MOVED TO COMPEL THOSE DOCUMENTS.  AND THAT MOTION WAS NOT

19   GRANTED.

20         THEY -- THEIR WORK PRODUCT AS TO INVESTIGATION OF A

21   THEFT, THEIR -- I SEE NO RELEVANCE OF A THEFT OF MY -- WHAT I

22   DO TO INVESTIGATE A THEFT OF MY LAW FIRM IS NOT RELEVANT TO

23   ANY OF THE CLAIMS IN THIS CASE.

24         ASIDE FROM THAT, CASES HOLD THAT -- I DRAW YOUR

25   ATTENTION TO IN RE MC KESSON HBOC, 2005 U.S. DISTRICT LEXIS

9

1  7098, AT PAGE 46 TO 47, NORTHERN DISTRICT OF CALIFORNIA CASE.

2  THAT SAYS THAT WORK PRODUCT PROTECTION WAS NOT WAIVED TO

3  DISCLOSURE TO INVESTIGATING GOVERNMENT AGENCY BECAUSE, QUOTE:

4           DISCLOSURE SIMPLY TO ANOTHER PERSON WHO

5           HAS AN INTEREST IN THE INFORMATION BUT WHO

6           IS NOT REASONABLY VIEWED AS A CONDUIT TO A

7           POTENTIAL ADVERSARY WILL NOT BE DEEMED A

8           WAIVER OF WORK-PRODUCT PROTECTION.

9           AND THERE ARE A NUMBER OF OTHER CASES WE CITE --

10  FOUR OTHER CASES IN OUR BRIEF, WHICH HOLD SIMILARLY.

11           THIS IS A LITTLE DIFFERENT THAN THE WAIVER FOUND OF

12  THE ATTORNEY-CLIENT PRIVILEGE WHERE YOU'RE TALKING ABOUT

13  CONFIDENCES BETWEEN AN ATTORNEY AND A CLIENT WAIVED BY

14  DISCLOSURE TO A THIRD PARTY.

15           HERE IT'S MY LAW FIRM SPEAKING TO THE USAO ABOUT AN

16  INVESTIGATION AND THEORIES AS TO WHO THE PERPETRATOR MIGHT

17  BE.  WORK PRODUCT -- THERE'S NO DISCLOSURE TO A THIRD PARTY.

18  THE PARTY IS THE USAO.  AND THAT WAS MADE SUBJECT TO A

19  CONFIDENTIALITY AGREEMENT.

20           FINALLY, THEY'RE MOVING -- THIS MOTION IS NOT

21  TIMELY BECAUSE THEY'RE MOVING TO COMPEL BASED ON STATEMENTS

22  IN AN ORDER WHICH WAS EXPRESSLY STAYED PENDING REVIEW.  OUR

23  WRIT IS STILL BEFORE THE NINTH CIRCUIT.  THEY HAVEN'T BUMPED

24  IT, WHICH SEEMS TO INDICATE THAT THEY'RE GOING TO REVIEW

25  THIS.  AND --

10

1        THE COURT:  SO, YOU'RE SAYING THEY'RE BOTH TOO

2   EARLY AND TOO LATE AT THE SAME TIME?

3        MR. TOBEROFF:  YES.  IT'S TOO -- IT'S NOT TOO LATE.

4   IT'S JUST THAT IT'S A MOTION FOR RECONSIDERATION AND THEY

5   DIDN'T EVEN ATTEMPT TO SATISFY THE LOCAL RULES ON A MOTION

6   FOR RECONSIDERATION.  IT SEEMS STRANGE TO BRING A MOTION TO

7   COMPEL BASED ON AN ORDER THAT -- AN ORDER THAT EXPRESSLY BY

8   ITS OWN WORDS WAS STAYED.  AND THAT STAY IS STILL IN EFFECT.

9   AND THAT WOULD APPLY TO THESE DOCUMENTS AS WELL.

10       ESSENTIALLY WHAT HAS HAPPENED IN THIS CASE IS EVERY

11  TIME DC IS NOT HAPPY WITH ANY RULING, THEY BRING MOTIONS FOR

12  RECONSIDERATION UNDER VARIOUS -- ANY EXCUSE THEY'LL BRING A

13  MOTION FOR RECONSIDERATION.  AND RARELY DO THEY TITLE IT A

14  MOTION FOR RECONSIDERATION.  AND THEY'VE BROUGHT, IN FACT,

15  WHEN YOU ADD THIS CASE TO THE SIEGEL CASE, THEY SOMETIMES

16  BRING TWO OR THREE MOTIONS FOR RECONSIDERATION AS WITH THE

17  PRIVILEGE LOGS.  OR THEY KEEP -- THE PRIVILEGE LOGS KEEP

18  BEING UPHELD, AND THEY KEEP ATTACKING THE PRIVILEGE LOGS WITH

19  THE SLIMMEST GROUNDS AND AT THE SLIGHTEST EXCUSE FOR DOING

20  SO.

21       AS FAR AS THE MAY 13TH LETTER, THEY ACTUALLY IN

22  THAT -- IT'S SIMILAR.  IN THEIR MOTION THEY SPECIFICALLY

23  CALLED OUT THAT THEY WERE ENTITLED TO -- EXCUSE ME -- THEY

24  SPECIFICALLY CALLED OUT THAT THEY WERE ENTITLED TO COPIES OF

25  COPIES.

11

1           WE SAID THAT WE PRODUCED THE LETTER AS IT EXISTS IN

2    OUR FILES.  AND THAT'S THE LETTER THAT WAS STOLEN BY THE

3    THIEF WHO DELIVERED THOSE DOCUMENTS TO WARNER BROS.  AND

4    WARNER BROS. PROCEEDED TO MAKE ADDITIONAL COPIES AND TO BATES

5    STAMP THEM.

6           WE PRODUCED THAT ACTUAL COPY.  THEY MADE A MOTION,

7    THEY SAY WE WANT AN UNREDACTED COPY, INCLUDING THE Q-STAMPED

8    COPIES.  IT WAS AS CLEAR AS A BELL IN THEIR MOTION, AND THAT

9    MOTION WAS DENIED.

10          SO, THEY'RE NOW BRINGING ANOTHER MOTION SAYING,

11   WELL, THERE WAS SOME DISCUSSION AT THE HEARING, AND WE WANT

12   THOSE DOCUMENTS.  BUT, AGAIN, THEY MADE NO SHOWING UNDER RULE

13   -- LOCAL RULE -- I THINK IT'S 7.18 -- FOR A MOTION FOR

14   RECONSIDERATION.

15          AND, AGAIN, OTHER THAN JUST FOR ANOTHER MOTION FOR

16   RECONSIDERATION, I DON'T SEE THE RELEVANCE OF COPIES OF

17   COPIES OF DOCUMENTS.  THEY ALREADY HAVE THE LETTER.

18          FINALLY, AS TO THE DIVORCE DOCUMENTS, THIS IS

19   PRETTY STRAIGHTFORWARD IN THE RECORD.  THEY INITIALLY ASKED

20   -- THEIR INITIAL REQUEST FOR THE DIVORCE DOCUMENTS WERE

21   EXTREMELY BROAD.  WE OPPOSED THOSE REQUESTS ON THE BASIS THAT

22   THEY WERE EXTREMELY BROAD.

23          IN THE MEET AND CONFER PROCESS, THE ORIGINAL MEET

24   AND CONFER PROCESS THEY SAID WHAT WE REALLY WANT IS

25   POST-SEPARATION COMMUNICATIONS BETWEEN MR. AND MRS. LARSON

12

1    AND/OR THEIR ATTORNEYS.

2              IT WAS --

3              THE COURT:  I DID READ ALL THIS, MR. TOBEROFF.

4              MR. TOBEROFF:  I UNDERSTAND.

5              IT WAS CLEARLY TAKEN FROM THEIR MEET AND CONFER.

6    IT COULD ONLY HAVE BEEN SOMETHING LESS THAN THEY WERE ASKING

7    FOR IN THEIR REQUESTS IN THE MEET AND CONFER PROCESS.  AND WE

8    SAID WE WILL GIVE YOU POST-SEPARATION COMMUNICATIONS AS LONG

9    AS WE HAVE A PROTECTIVE ORDER.

10             AND YOU READING THAT SAID, WELL, I DON'T REALLY SEE

11   A DISPUTE HERE.  THEY'RE WILLING TO PRODUCE THOSE DOCUMENTS.

12   THEY JUST NEED A PROTECTIVE ORDER.  AND I'M GRANTING THAT

13   PROTECTIVE ORDER.

14             AFTER THAT WHEN WE WENT ABOUT -- AND WE PRODUCED

15   THE DOCUMENTS, THEY THEN WENT BACK TO THEIR ORIGINAL REQUEST

16   AND SAID, NO, WE WANT ALL MOTIONS, ALL PLEADINGS, ANYTHING

17   BEARING ON THE DENNIS LARSON CLAIM THAT HE WAS A -- THAT IT'S

18   COMMUNITY PROPERTY.  THE TERMINATION INTEREST IS COMMUNITY

19   PROPERTY.

20             AND WE SAID, NO, THAT'S NOT THE DEAL.  THAT'S NOT

21   THE ORDER.  THE DEAL WAS WE'RE GOING TO GIVE YOU

22   COMMUNICATIONS.

23             AS FAR AS THEIR RED HERRING THAT WE STRIPPED OUT

24   PAPERS, THIS IS NOT TRUE.  LAURA HAD FILE COPIES OF

25   COMMUNICATIONS WHERE SHE JUST HAD THE LETTERS, NOT

13

1    NECESSARILY ALL ATTACHMENTS, WHICH WERE HER ATTORNEY SENDING

2    HER PAPERS IN THE CASE -- PLEADINGS AND SO FORTH.

3            AND SHE JUST KEPT, AS PEOPLE VERY OFTEN DO,

4    PARTICULARLY CIVILIANS, SHE KEPT JUST THE LETTERS, AND WE

5    PRODUCED THOSE LETTERS.  AND A COUPLE OF THOSE LETTERS REFER

6    TO SOME PLEADINGS, WHICH WERE NOT PRODUCED.

7            WE OFFERED IN THE MEET AND CONFER PROCESS TO GO

8    BACK AND GO OVER THE FULL ATTORNEY'S FILES.  THEY SAY IN

9    THEIR PAPERS WE MADE NO EFFORT TO GET THE FILES FROM THE

10   ATTORNEYS.  WE GOT ALL THE PAPERS FROM THE ATTORNEYS.  AND WE

11   OFFERED IN THE MEET AND CONFER PROCESS TO PRODUCE ALL

12   CORRESPONDENCE RELATING TO -- RESPONSIVE TO THEIR REQUEST AND

13   RELATING TO THE TERMINATION INTERESTS.

14           AND THEY SAID, NO, WE WANT EVERYTHING -- ALL

15   PLEADINGS, ALL MOTION PAPERS, ALL DISCOVERY REQUESTS, ALL

16   DISCOVERY.

17           AND IT'S BURDENSOME.  PARTICULARLY BECAUSE THE ONLY

18   RELEVANCE IS A CLAIM BY DENNIS LARSON THAT HAS NOW BEEN

19   DENIED BY THE CALIFORNIA COURT OF APPEALS --

20           THE COURT:  AS I SAID, MR. TOBEROFF, I DID READ

21   THIS.

22           MR. TOBEROFF:  OKAY.  WELL, I'M DONE.

23           THE COURT:  I DON'T NEED YOU TO READ YOUR PAPER TO

24   ME.

25           MR. TOBEROFF:  I APOLOGIZE.  I'M FINISHED.

14

1          THE COURT:  ALL RIGHT.

2          MR. TOBEROFF:  THAT'S THE GOOD NEWS.

3          THE COURT:  THANK YOU.

4          MR. KLINE, ANYTHING FURTHER?

5          MR. KLINE:  VERY QUICKLY, YOUR HONOR.

6          THEIR COMMUNICATIONS WITH THE U.S. ATTORNEY'S

7   OFFICE, AS WE ALL KNOW FROM FOOTNOTE 1 OF THEIR BRIEF, THEY

8   SELECTIVELY DISCLOSED.  THEY DISCLOSED ONES THAT THEY THOUGHT

9   WERE HELPFUL TO THEIR PUBLISHED CLAIMS, AND THEY KEPT THE

10  REMAINDER HIDDEN BEHIND THEIR PRIVILEGE LOGS.

11         WE ARE ENTITLED TO THE FULL RECORD BACK AND FORTH.

12  THEY CAN'T PICK AND CHOOSE WHICH COMMUNICATIONS WITH THE

13  GOVERNMENT THEY WANT TO DISCLOSE.  THEY DISCLOSED THOSE

14  COMMUNICATIONS IN SUPPORT OF THEIR MOTION.  THEY LOST THAT

15  MOTION.

16         NUMBER TWO, ON THE IN RE MC KESSON CASE, THAT CASE

17  IS VERY CLEARLY IF THE PARTY TO WHOM YOU'RE DISCLOSING THE

18  WORK PRODUCT COULD BE A CONDUIT TO THIRD PARTIES OF THAT

19  INFORMATION, YOU HAVE TO PRODUCE THOSE MATERIALS.

20         THE U.S. ATTORNEY VERY EXPLICITLY TOLD MR. KENDALL

21  WE COULD BE REQUIRED BY COURT ORDER OR THE LAW TO TURN OVER

22  ANY MATERIALS YOU CHOOSE TO PRODUCE TO US.  THEY CHOSE TO

23  PRODUCE THOSE MATERIALS.  THEY HAVE WAIVED.  THEY WERE GIVEN

24  EVERY OPPORTUNITY TO WITHHOLD THEM ON PRIVILEGE LOGS, TO LIST

25  THEM ON PRIVILEGE LOGS.  THEY DIDN'T.

1          IN TERMS OF THE WRIT, THE NINTH CIRCUIT TAKES SIX

2   TO EIGHT WEEKS NORMALLY TO RULE ON WRITS.   WE HAVEN'T EVEN

3   REACHED THE SIX-WEEK FILING DEADLINE YET.   THERE'S NOTHING IN

4   THE RULES THAT SAYS THIS COURT CAN'T REACH THE SUBSTANCE OF

5   DC'S DISCOVERY MOTION RIGHT NOW.   AND THEY HAVEN'T CITED ANY

6   CASE THAT SAYS THAT.

7          THIS IS NOT A MOTION FOR RECONSIDERATION.   THERE'S

8   JUST NO EXPRESS RULING ON THAT.   AND WE'RE NOT TRYING TO READ

9   INFERENCES INTO THE RULING ONE WAY OR THE OTHER; NOR DO WE

10  THINK IT WOULD BE PROPER TO DO SO.

11         IN TERMS OF THE MAY 13TH LETTER, MR. TOBEROFF

12  ADMITTED THEY NEVER PRODUCED THE "Q" BATES STAMPED COPY OF

13  THE LETTER.   THAT'S EXHIBIT 5, PAGE 69.   THEY MADE A TACTICAL

14  CHOICE NOT TO PRODUCE THAT "Q" BATES STAMPED COPY.   AND WE'RE

15  ENTITLED TO THAT "Q" BATES STAMPED COPY.   THERE'S NO --

16  THERE'S NO BASIS NOT TO PRODUCE THAT DOCUMENT.

17         AND WE WERE SHUT DOWN WHEN WE ASKED ORALLY FOR A

18  COPY OF THAT MOTION ON THE EXPRESS GROUNDS THAT THAT VERY

19  ISSUE WAS NOT BEFORE THE COURT THE LAST TIME WE WERE HERE.

20         IN TERMS OF THE DIVORCE DOCUMENTS, BETTER BE REALLY

21  CLEAR ABOUT SOMETHING.   THEY WAIVED ALL OBJECTIONS AS TO

22  RELEVANCE AND TO OVERBREADTH IN DECEMBER.   THAT WAS PURSUANT

23  TO A STIPULATION.

24         ALL THESE ARGUMENTS WERE WAIVED A LONG TIME AGO.

25  IN TERMS OF WHAT THEY OFFERED TO PRODUCE TO US, WE SAID,

1    SURE, GIVE US THE COMMUNICATIONS.  BUT WE WANT MORE THAN

2    THAT.  THEY STILL HAVEN'T GIVEN US THE COMMUNICATIONS.  WE'RE

3    ENTITLED TO ALL THOSE THINGS.

4              WE NEVER ASKED FOR THE COURT PLEADINGS.  IT'S VERY

5    CLEAR IN OUR PAPERS.  AND HE'S NOW SAYING WE ALSO ASKED FOR

6    PUBLICLY FILED COURT PLEADINGS.  WE NEVER ASKED FOR THAT.

7              WHAT WE WANT ARE MR. LARSON'S ASSERTED CLAIMS IN

8    THAT LITIGATION AND INTERROGATORY RESPONSES AND OTHERWISE

9    WHERE HE SAYS, HERE'S WHY I'M ENTITLED TO CERTAIN RIGHTS

10   HERE.

11             AND THAT'S WHAT OUR MAIN FOCUS IS HERE.  AND WE

12   NEVER LIMITED OUR REQUESTS TO COMMUNICATIONS.  WE ALWAYS WERE

13   FOCUSED ON THE DOCUMENTS.

14             THANK YOU, YOUR HONOR.

15             THE COURT:  ALL RIGHT.

16             WE HAVE THREE MOTIONS.  I'LL START WITH THE LARSON

17   DOCUMENTS FIRST.

18             THIS MOTION IN MY VIEW WAS A MISUSE OF RESOURCES

19   THE FIRST TIME.  AND IT'S A MISUSE OF RESOURCES THIS TIME.

20             I REVIEWED THE BRIEFING FROM THE FIRST MOTION, AND

21   I AGREED THAT WHAT WAS AT ISSUE WERE COMMUNICATIONS BETWEEN

22   MR. AND MRS. LARSON DURING THE DISSOLUTION OF THEIR MARRIAGE.

23             THE ONLY ISSUE WAS WHETHER AS A FAIRLY PRIVATE

24   MATTER THOSE COMMUNICATIONS WOULD BE PROTECTED.

25             THE DEFENDANTS STATED THEY WERE WILLING TO PRODUCE

17

1   THEM, BUT THEY WISHED TO PROTECT THE PRIVACY OF THE PARTIES

2   AS TO THIS DOMESTIC MATTER.

3        THE DIVORCE PROCEEDINGS ARE ENTIRELY COLLATERAL,

4   BUT THE COMMUNICATIONS MAY HAVE SOME MINOR RELEVANCE, AND SO

5   THE COURT ORDERED THEM PRODUCED SUBJECT TO THE PROTECTIONS

6   THAT THE COURT IDENTIFIED IN ITS ORDER.

7        AS I UNDERSTAND IT, THERE'S NO -- FROM THE PAPERS,

8   THERE'S NO DISPUTE THAT THE DEFENDANTS PRODUCED THE

9   COMMUNICATIONS.  THE ENTIRE DIVORCE FILE WAS NOT THE SUBJECT

10  OF THE PRIOR MOTION, AND THAT MATTER WILL NOT BE REVISITED

11  NOW.  THAT MOTION IS DENIED.

12        AS TO THE U.S. ATTORNEY DOCUMENTS.  NO MATTER WHAT

13  PERSPECTIVE ONE TAKES, THE ISSUES PRESENTED BY THIS MOTION

14  HAVE BEEN HERE BEFORE.  ON THE PRIOR MOTION THE COURT FOCUSED

15  MOSTLY ON THE DOCUMENTS THAT HAD BEEN DELIVERED PURSUANT TO

16  THE GRAND JURY SUBPOENA AND THE ACCOMPANYING QUESTION OF

17  WHETHER WAIVER HAD OCCURRED.

18        THAT'S WHERE THE MAJOR PART OF THE BRIEFING HAD

19  BEEN, AND, QUITE FRANKLY, THAT'S FAR MORE IMPORTANT.

20        THE COMMUNICATIONS THAT MR. TOBEROFF HAD WITH THE

21  UNITED STATES ATTORNEY'S OFFICE ARE OF SUCH MARGINAL

22  RELEVANCE THAT HAD THAT POINT BEEN FULLY DEVELOPED IN THE

23  EARLIER BRIEFING, THE COURT MAY WELL HAVE RULED THEM

24  IRRELEVANT, EVEN UNDER THE LIBERAL DEFINITION OF RELEVANCE

25  EMPLOYED BY THE DISCOVERY RULES.  BUT RELEVANCE WAS NOT THE

18

1   MAIN ISSUE EVEN AS TO THE COMMUNICATIONS.

2          THE COURT DID EARLIER OVERRULE THE DEFENDANTS'

3   OBJECTION AS TO A JOINT PROSECUTION PRIVILEGE WITH THE UNITED

4   STATES, WHICH WAS THE ISSUE THAT WAS PRESENTED AS TO THESE

5   COMMUNICATIONS.

6          ACCORDINGLY, PLAINTIFF'S MOTION IS GRANTED AS TO

7   THESE COMMUNICATIONS.

8          HOWEVER, AS THEY AND THE ARGUMENT ABOUT A JOINT

9   PRIVILEGE WITH THE GOVERNMENT ARE WRAPPED UP WITH THE

10  PROCEEDINGS CONCERNING THE GRAND JURY DOCUMENTS, THE COURT'S

11  RULING TODAY IS GOVERNED BY THE SAME STAY THAT THE COURT PUT

12  IN PLACE ON THE GRAND JURY DOCUMENTS.

13         AS TO THE MAY 13TH LETTER, THE COURT ORDERED THAT

14  LETTER PRODUCED, AND THE COURT ALSO ORDERED THAT ATTORNEY

15  MARGINALIA AND UNDERLINING COULD BE REDACTED.  AND AS THE

16  COURT UNDERSTANDS, THAT WAS DONE, AND THE MAY 13TH LETTER WAS

17  PRODUCED.

18         WHEN DOCUMENTS TAKEN FROM MR. TOBEROFF'S FILE WERE

19  DELIVERED UNSOLICITED TO ATTORNEYS FOR DC COMICS, AND THEN AT

20  THE COURT'S ORDER TO AN ESCROW AGENT, APPARENTLY A COPY OF

21  THE MAY 13TH LETTER WAS AMONG THEM, A COPY OF THE LETTER THAT

22  MR. TOBEROFF ULTIMATELY PRODUCED.

23         BACK WHEN THE ESCROW AGENT HAD THEM, THE ESCROW

24  AGENT WAS TO RETURN MANY OF THE DOCUMENTS TO MR. TOBEROFF.

25  AND I TAKE IT THAT THE MAY 13TH LETTER WAS AMONG THOSE.  AND,

19

1   SO, IT HAD TO BE RETURNED.

2          THE FACT THAT THE ESCROW AGENT PUT A REFERENCE

3   NUMBER ON IT DOES NOT MAKE IT AN ADDITIONAL COPY OR EVEN AN

4   EXTRA COPY OF THE LETTER BECAUSE AS AN ESCROW AGENT HE HELD

5   IT IN TRUST FOR THE PARTY WHO RECEIVED IT, WHICH WAS MR.

6   TOBEROFF.

7          AS OFTEN AS HAS BEEN THE CASE, THIS IS A MOTION

8   THAT SHOULD NOT HAVE BEEN BROUGHT.  THE MOTION IS DENIED.

9          MR. KLINE:  YOUR HONOR, MAY I BE HEARD ON ONE

10  POINT, PLEASE?

11         THE COURT:  NO, MR. KLINE, THERE'S BEEN WAY MORE

12  THAN SHOULD HAVE BEEN ON ANY OF THESE MOTIONS.

13         MR. KLINE:  I APOLOGIZE, YOUR HONOR.  THERE'S ONE

14  POINT YOU MADE ABOUT THE STATUS OF PRODUCTION OF THE LARSON

15  DOCUMENTS THAT I WISH TO BE HEARD ON IF YOU DON'T MIND.

16         THE COURT:  I DO MIND.  I DO MIND.  IT'S BEEN

17  BRIEFED.  IT'S BEEN RULED UPON.  YOU HAVE YOUR REMEDIES IF

18  YOU ARE DISSATISFIED.

19         MR. KLINE:  YOUR HONOR, YOU SAID THAT ALL THE

20  COMMUNICATIONS --

21         THE COURT:  MR. KLINE, I DON'T KNOW HOW I CAN BE

22  ANY MORE CLEAR.

23         MR. KLINE:  I APOLOGIZE, YOUR HONOR.  I'M JUST --

24  YOU MADE A STATEMENT ABOUT WHAT HAD BEEN PRODUCED IN TERMS OF

25  THE COMMUNICATIONS IN YOUR RULING.  AND YOU SAID I BELIEVE

20

1   THAT ALL THE COMMUNICATIONS IN THAT PROCEEDING HAVE BEEN

2   PRODUCED.  AND THEY HAVEN'T BECAUSE THEY'VE JUST OBTAINED THE

3   DIVORCE LAWYER'S FILES.  AND, SO, RATHER THAN BE BACK HERE

4   BEFORE YOU ON ANOTHER MOTION ON THOSE FILES, I JUST WANTED TO

5   BRING IT TO YOUR ATTENTION NOW.

6           AND I UNDERSTAND YOUR COURT'S COMMENTS -- THE

7   COURT'S COMMENTS.  I WAS JUST TRYING TO ADDRESS THE ONE

8   FACTUAL ISSUE THAT YOU SAID YOU WEREN'T SURE ABOUT IN THAT

9   FIRST RULING.

10          THE COURT:  ALL RIGHT.  THANK YOU, MR. KLINE.

11          WE'LL BE IN RECESS.

12          (PROCEEDINGS CONCLUDED 10:11 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1

2

3                          C E R T I F I C A T E

4

5           I CERTIFY THAT THE FOREGOING IS A CORRECT

6    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

7    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9

10

11   /S/ DOROTHY BABYKIN                        8/16/11

12   _____        _____

13   FEDERALLY CERTIFIED TRANSCRIBER           DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25