## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 11, 2011

OUR FILE NUMBER
905,900-321

**VIA PERSONAL DELIVERY**

WRITER'S DIRECT DIAL
(310) 246-6707

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd, Suite 1725
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

Re:  *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Laura:

Enclosed please find DC Comics' Notices of Deposition of defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC. In light of Mr. Toberoff's impending vacation from July 23 through August 7, 2011, we have scheduled these depositions for after his return.

Very truly yours,

Jason H. Tokoro
for O'MELVENY & MYERS LLP

Enclosures

cc:  Marc Toberoff, Esq.

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
   mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
   cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone: (310) 553-6700
6  Facsimile: (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
   pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone: (845) 265-2820
10 Facsimile: (845) 265-2819

11

12  Attorneys for Plaintiff DC Comics

13  **UNITED STATES DISTRICT COURT**

14  **CENTRAL DISTRICT OF CALIFORNIA**

15  DC COMICS,

16         Plaintiff,

17         v.

18  PACIFIC PICTURES
   CORPORATION, IP WORLDWIDE,
19  LLC, IPW, LLC, MARC TOBEROFF,
   an individual, MARK WARREN
20  PEARY, as personal representative of
   the ESTATE OF JOSEPH SHUSTER,
21  JEAN ADELE PEAVY, an individual,
   LAURA SIEGEL LARSON, as
22  personal representative of the ESTATE
   OF JOANNE SIEGEL and an
23  individual, and DOES 1-10, inclusive,

24         Defendants.

25

26

27

28

Case No. CV-10-3633 ODW (RZx)

**DISCOVERY MATTER**

**PLAINTIFF DC COMICS'
NOTICE OF DEPOSITION OF
DEFENDANT MARC TOBEROFF**

**Judge:** Hon. Otis D. Wright II
**Magistrate:** Hon. Ralph Zarefsky

Deposition Date: August 10, 2011
Deposition Time: 9:00 a.m.

**EXHIBIT J**
**149**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30, the deposition upon oral examination of defendant Marc Toberoff will be taken in the above-entitled action on August 10, 2011, starting at 9:00 a.m. and continuing over the course of one day until completed or otherwise adjourned. The deposition will be held at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

A list of all parties or attorneys on whom this Notice of Deposition is being served is shown on the accompanying Proof of Service.

Dated:  July 11, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

NOTICE OF DEPOSITION OF
DEFENDANT MARC TOBEROFF

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15  DC COMICS,                          Case No. CV-10-3633 ODW (RZx)

16          Plaintiff,                  **DISCOVERY MATTER**

17          v.                          **PLAINTIFF DC COMICS'
                                        NOTICE OF DEPOSITION OF
18  PACIFIC PICTURES                    PERSON MOST
    CORPORATION, IP WORLDWIDE,          KNOWLEDGEABLE AT
19  LLC, IPW, LLC, MARC TOBEROFF,       DEFENDANT IPW, LLC**
    an individual, MARK WARREN
20  PEARY, as personal representative of   **Judge**: Hon. Otis D. Wright II
    the ESTATE OF JOSEPH SHUSTER,       **Magistrate**: Hon. Ralph Zarefsky
21  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, as             Deposition Date:  August 30, 2011
22  personal representative of the ESTATE   Deposition Time:  9:00 a.m.
    OF JOANNE SIEGEL and an
23  individual, and DOES 1-10, inclusive,

24          Defendants.

25

26

27

28

                        **EXHIBIT J**                NOTICE OF DEPOSITION OF
                        **151**                      DEFENDANT IPW, LLC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, the deposition upon oral examination of defendant IPW, LLC (the "Deponent") will be taken in the above-entitled action on August 30, 2011, starting at 9:00 a.m. and continuing from day-to-day until completed or otherwise adjourned. The deposition will be held at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Deponent is required to designate one or more officers, directors, managing agents, or other persons who are most knowledgeable to testify about the Deponent's knowledge, and not just information personally known by them, regarding the matters described in Attachment A. If the designated representative or representatives do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary.

This Notice of Deposition is being served on Deponent's counsel at the address shown on the accompanying Proof of Service.

Dated: July 11, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

NOTICE OF DEPOSITION OF
DEFENDANT IPW, LLC

# ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.     "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to:  e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.     "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.     "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

4.     "YOU" or "YOUR" or "IPW" means IPW, LLC and, as applicable, any PERSON in which it has a controlling interest or that is acting on its behalf, including but not limited to its agents, employees, attorneys, and representatives.

5.     "DEFENDANT" or "DEFENDANTS" means, collectively and severally, any defendant in the above-entitled action, including YOU; Pacific Pictures Corporation; IP Worldwide, LLC; Marc Toberoff; Mark Warren Peary, on behalf of the Estate of Joseph Shuster; Jean Adele Peavy; and Laura Siegel Larson and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

2                                     NOTICE OF DEPOSITION OF
                                      DEFENDANT IPW, LLC

6.    "DC COMICS" means plaintiff DC Comics and any of its affiliates or predecessors, including but not limited to National Allied Publications, Detective Comics, National Comics, and National Periodical Publications.

7.    "WARNER" means Time Warner Inc. and any of its subsidiaries, affiliates, or predecessors, including but not limited to Warner Bros. Entertainment Inc., Warner Communications Inc., and Warner Bros. Television Production Inc.

8.    "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

9.    "SHUSTER HEIRS" means, collectively and severally, the Estate of Joseph Shuster, Jean Adele Peavy, Mark Warren Peary, Dawn Peavy, Frank Shuster, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

10.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics. No. 1.*

11.    "SUPERBOY" means the Superboy character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *More Fun Comics No. 101.*

12.    "MARKET" means to any effort to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property.

NOTICE OF DEPOSITION OF
DEFENDANT IPW, LLC

13.   "INVESTOR" means any PERSON or entity that provides money or other capital in exchange for rights or property, including but not limited to an investment bank, private equity firm, hedge fund, venture capital firm, mutual fund, motion picture studio, entertainment production company, or individual.

14.   "INCLUDING" means "including, but not limited to."

15.   "Any" and "All" are interchangeable.

16.   The singular form includes the plural form, and vice versa.

## SCHEDULE OF DEPOSITION TOPICS

Topics to be covered in YOUR deposition include:

1.   All facts and COMMUNICATIONS concerning the allegations in the COMPLAINT involving IPW, including pages 62-68.

2.   All facts and COMMUNICATIONS concerning the formation of IPW.

3.   All facts and COMMUNICATIONS concerning the past, current, and planned operation, management, and ownership of IPW.

4.   All facts and COMMUNICATIONS concerning any effort by YOU to solicit clients.

5.   All facts and COMMUNICATIONS concerning any property in which IPW held, holds, or will hold any right or interest.

6.   All facts and COMMUNICATIONS concerning any partnership or strategic alliance involving IPW.

7.   All facts and COMMUNICATIONS concerning any effort by YOU to MARKET any right or interest involving SUPERMAN and/or SUPERBOY.

8.   All facts and COMMUNICATIONS concerning any actual or potential INVESTOR in any right or interest involving SUPERMAN and/or SUPERBOY.

NOTICE OF DEPOSITION OF
DEFENDANT IPW, LLC

9.     All facts and COMMUNICATIONS concerning any agreement involving SUPERMAN and/or SUPERBOY to which any DEFENDANT is or was a party.

10.    All facts and COMMUNICATIONS concerning the relationship between or among any DEFENDANT and DC COMICS and/or WARNER.

11.    All facts and COMMUNICATIONS concerning the ownership, disposition, or division of any right or interest involving SUPERMAN and/or SUPERBOY.

12.    All facts and COMMUNICATIONS concerning or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

13.    All facts and COMMUNICATIONS concerning or affecting the ability of any DEFENDANT to negotiate or enter into agreements regarding SUPERMAN and/or SUPERBOY.

14.    All facts and COMMUNICATIONS concerning any actual or potential conflict of interest involving any DEFENDANT, including any disclosure, waiver, or solicitation of independent advice.

15.    All facts and COMMUNICATIONS concerning YOUR introduction to and relationship with any DEFENDANT.

16.    All facts and COMMUNICATIONS concerning YOUR knowledge of efforts by any DEFENDANT to recapture any right or interest involving SUPERMAN and/or SUPERBOY under the copyright termination provisions in the United States Copyright Act.

17.    All facts and COMMUNICATIONS concerning YOUR introduction to and relationship with Ari Emanuel.

18.    All facts and COMMUNICATIONS concerning YOUR assertion in the Certification of Interested Parties filed on YOUR behalf in the above-entitled

1   case on July 15, 2010 that YOU have "no pecuniary interest in the matters that are

2   the subject of Plaintiff's Third and Sixth Causes of action."

3

4       Dated:  July 11, 2011                    Respectfully submitted,

5                                               O'MELVENY & MYERS LLP

6

7                                               By: _____
                                                    /Daniel M. Petrocelli

8                                               Attorneys for Plaintiff DC Comics

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF
                                                          DEFENDANT IPW, LLC

DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:  (845) 265-2819

Attorneys for Plaintiff DC Comics

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>          Plaintiff,<br><br>     v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, as personal representative of the ESTATE OF JOANNE SIEGEL and an individual, and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. CV-10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF DC COMICS' NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT DEFENDANT PACIFIC PICTURES CORPORATION**<br><br>**Judge**: Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>Deposition Date:  August 12, 2011<br>Deposition Time:  9:00 a.m. |

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, the deposition upon oral examination of defendant Pacific Pictures Corporation (the "Deponent") will be taken in the above-entitled action on August 12, 2011, starting at 9:00 a.m. and continuing from day-to-day until completed or otherwise adjourned.  The deposition will be held at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Deponent is required to designate one or more officers, directors, managing agents, or other persons who are most knowledgeable to testify about the Deponent's knowledge, and not just information personally known by them, regarding the matters described in Attachment A.  If the designated representative or representatives do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary.

This Notice of Deposition is being served on Deponent's counsel at the address shown on the accompanying Proof of Service.

Dated:  July 11, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
    Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

# ATTACHMENT A
## DEFINITIONS AND INSTRUCTIONS

1.     "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.     "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.     "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

4.     "YOU" or "YOUR" or "PPC" means Pacific Pictures Corporation and, as applicable, any PERSON in which it has a controlling interest or that is acting on its behalf, including but not limited to its/their agents, employees, attorneys, and representatives.

5.     "DEFENDANT" or "DEFENDANTS" means, collectively and severally, any defendant in the above-entitled action, including YOU; IP Worldwide, LLC; IPW, LLC; Marc Toberoff; Mark Warren Peary, on behalf of the Estate of Joseph Shuster; Jean Adele Peavy; and Laura Siegel Larson and, as

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

1  applicable, any PERSON acting on their behalf, including but not limited to their

2  agents, employees, attorneys, and representatives.

3       6.    "DC COMICS" means plaintiff DC Comics and any of its affiliates

4  or predecessors, including but not limited to National Allied Publications,

5  Detective Comics, National Comics, and National Periodical Publications.

6       7.    "WARNER" means Time Warner Inc. and any of its subsidiaries,

7  affiliates, or predecessors, including but not limited to Warner Bros.

8  Entertainment Inc., Warner Communications Inc., and Warner Bros. Television

9  Production Inc.

10       8.    "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel,

11  Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor,

12  administrator, heir, relative, or representative of Jerome Siegel and, as applicable,

13  any PERSON acting on their behalf, including but not limited to their agents,

14  employees, attorneys, and representatives.

15       9.    "SHUSTER HEIRS" means, collectively and severally, the Estate of

16  Joseph Shuster, Jean Adele Peavy, Mark Warren Peary, Dawn Peavy, Frank

17  Shuster, or any other executor, administrator, heir, relative, or representative of

18  Joseph Shuster and, as applicable, any PERSON acting on their behalf, including

19  but not limited to their agents, employees, attorneys, and representatives.

20       10.    "SUPERMAN" means the Superman character as delineated in

21  literary works such as comic books, newspapers, novels, radio programs,

22  television programs, and motion pictures, and any of the works in which he

23  appears, including but not limited to *Action Comics. No. 1.*

24       11.    "SUPERBOY" means the Superboy character as delineated in

25  literary works such as comic books, newspapers, novels, radio programs,

26  television programs, and motion pictures, and any of the works in which he

27  appears, including but not limited to *More Fun Comics No. 101.*

28

**EXHIBIT J**
**161** 3

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

1    12.    "MARKET" means to any effort to promote, arrange, or negotiate

2    the sale, assignment, lease, license, or any other disposition or exploitation of

3    rights or property.

4    13.    "INVESTOR" means any PERSON or entity that provides money or

5    other capital in exchange for rights or property, including but not limited to an

6    investment bank, private equity firm, hedge fund, venture capital firm, mutual

7    fund, motion picture studio, entertainment production company, or individual.

8    14.    "COMPLAINT" means the First Amended Complaint filed on

9    September 3, 2010 in *DC Comics v. Pacific Pictures Corporation et al.*, Case No.

10   CV-10-3633 (ODW) (RZx) (Docket No. 49).

11   15.    "Any" and "All" are interchangeable.

12   16.    The singular form includes the plural form, and vice versa.

13   ## SCHEDULE OF DEPOSITION TOPICS

14   Topics to be covered in YOUR deposition include:

15   1.    All facts and COMMUNICATIONS concerning the allegations in

16   the COMPLAINT involving PPC, including pages 62-68.

17   2.    All facts and COMMUNICATIONS concerning the formation of

18   PPC.

19   3.    All facts and COMMUNICATIONS concerning the past, current,

20   and planned operation, management, and ownership of PPC.

21   4.    All facts and COMMUNICATIONS concerning any effort by YOU

22   to solicit clients.

23   5.    All facts and COMMUNICATIONS concerning any property in

24   which PPC held, holds, or will hold any right or interest.

25   6.    All facts and COMMUNICATIONS concerning any partnership or

26   strategic alliance involving PPC.

27   7.    All facts and COMMUNICATIONS concerning any effort by YOU

28   to MARKET any right or interest involving SUPERMAN and/or SUPERBOY.

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

1    8.    All facts and COMMUNICATIONS concerning any actual or

2   potential INVESTOR in any right or interest involving SUPERMAN and/or

3   SUPERBOY.

4    9.    All facts and COMMUNICATIONS concerning any agreement

5   involving SUPERMAN and/or SUPERBOY to which any DEFENDANT is or

6   was a party.

7    10.    All facts and COMMUNICATIONS concerning the relationship

8   between or among any DEFENDANT and DC COMICS and/or WARNER.

9    11.    All facts and COMMUNICATIONS concerning the ownership,

10   disposition, or division of any right or interest involving SUPERMAN and/or

11   SUPERBOY.

12    12.    All facts and COMMUNICATIONS concerning or affecting the

13   division of revenue, proceeds, or other profits regarding SUPERMAN and/or

14   SUPERBOY.

15    13.    All facts and COMMUNICATIONS concerning or affecting the

16   ability of any DEFENDANT to negotiate or enter into agreements regarding

17   SUPERMAN and/or SUPERBOY.

18    14.    All facts and COMMUNICATIONS concerning any actual or

19   potential conflict of interest involving any DEFENDANT, including any

20   disclosure, waiver, or solicitation of independent advice.

21    15.    All facts and COMMUNICATIONS concerning YOUR introduction

22   to and relationship with any DEFENDANT.

23    16.    All facts and COMMUNICATIONS concerning YOUR knowledge

24   of efforts by any DEFENDANT to recapture any right or interest involving

25   SUPERMAN and/or SUPERBOY under the copyright termination provisions in

26   the United States Copyright Act.

27    17.    All facts and COMMUNICATIONS concerning the letter agreement

28   dated August 1, 1992, signed by Paul Levitz, Jean Peavy, and Frank Shuster.

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

1        18.    All facts and COMMUNICATIONS concerning the letter agreement

2  dated November 23, 2001, between PPC and the SHUSTER HEIRS.

3        19.    All facts and COMMUNICATIONS concerning the letter agreement

4  dated October 27, 2003, between PPC and the SHUSTER HEIRS.

5        20.    All facts and COMMUNICATIONS concerning the letter dated

6  September 10, 2004, that YOU signed with the SHUSTER HEIRS.

7        21.    All facts and COMMUNICATIONS concerning YOUR introduction

8  to and relationship with Ari Emanuel.

9        22.    All facts and COMMUNICATIONS concerning the Memorandum of

10  Agreement dated February 2, 2002, between PPC and Ari Emanuel.

11

12      Dated:  July 11, 2011          Respectfully submitted,

13                                O'MELVENY & MYERS LLP

14

15                            By:                       

                                      Daniel M. Petrocelli

16                          Attorneys for Plaintiff DC Comics

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF
DEFENDANT PACIFIC PICTURES CORP.

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11

    Attorneys for Plaintiff DC Comics
12

13                  **UNITED STATES DISTRICT COURT**

14                  **CENTRAL DISTRICT OF CALIFORNIA**

15  DC COMICS,                          Case No. CV-10-3633 ODW (RZx)

16              Plaintiff,              **DISCOVERY MATTER**

17         v.                          **PLAINTIFF DC COMICS'
                                        NOTICE OF DEPOSITION OF
18  PACIFIC PICTURES                    PERSON MOST
    CORPORATION, IP WORLDWIDE,          KNOWLEDGEABLE AT
19  LLC, IPW, LLC, MARC TOBEROFF,       DEFENDANT IP WORLDWIDE,
    an individual, MARK WARREN          LLC
20  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,       **Judge**: Hon. Otis D. Wright II
21  JEAN ADELE PEAVY, an individual,    **Magistrate**:  Hon. Ralph Zarefsky
    LAURA SIEGEL LARSON, as
22  personal representative of the ESTATE Deposition Date: August 16, 2011
    OF JOANNE SIEGEL and an             Deposition Time:  9:00 a.m.
23  individual, and DOES 1-10, inclusive,

24              Defendants.

25

26

27

28

                    **EXHIBIT J**                    NOTICE OF DEPOSITION OF
                      **165**                    DEFENDANT IP WORLDWIDE, LLC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, the deposition upon oral examination of defendant IP Worldwide, LLC (the "Deponent") will be taken in the above-entitled action on August 16, 2011, starting at 9:00 a.m. and continuing from day-to-day until completed or otherwise adjourned.  The deposition will be held at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067.  The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Deponent is required to designate one or more officers, directors, managing agents, or other persons who are most knowledgeable to testify about the Deponent's knowledge, and not just information personally known by them, regarding the matters described in Attachment A.  If the designated representative or representatives do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary.

This Notice of Deposition is being served on Deponent's counsel at the address shown on the accompanying Proof of Service.

Dated:  July 11, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

NOTICE OF DEPOSITION OF
DEFENDANT IP WORLDWIDE, LLC

# ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.     "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001. This shall include, but is not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.     "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.     "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

4.     "YOU" or "YOUR" or "IPWW" means IP Worldwide, LLC and, as applicable, any PERSON in which it has a controlling ownership interest or that is acting on its behalf, including but not limited to its agents, employees, attorneys, and representatives.

5.     "DEFENDANT" or "DEFENDANTS" means, collectively and severally, any defendant in the above-entitled action, including YOU; Pacific Pictures Corporation; IPW, LLC; Marc Toberoff; Mark Warren Peary, on behalf of the Estate of Joseph Shuster; Jean Adele Peavy; and Laura Siegel Larson and,

NOTICE OF DEPOSITION OF
DEFENDANT IP WORLDWIDE, LLC

1  as applicable, any PERSON acting on their behalf, including but not limited to

2  their agents, employees, attorneys, and representatives.

3        6.   "DC COMICS" means plaintiff DC Comics and any of its affiliates

4  or predecessors, including but not limited to National Allied Publications,

5  Detective Comics, National Comics, and National Periodical Publications.

6        7.   "WARNER" means Time Warner Inc. and any of its subsidiaries,

7  affiliates, or predecessors, including but not limited to Warner Bros.

8  Entertainment Inc., Warner Communications Inc., and Warner Bros. Television

9  Production Inc.

10        8.   "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel,

11  Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor,

12  administrator, heir, relative, or representative of Jerome Siegel and, as applicable,

13  any PERSON acting on their behalf, including but not limited to their agents,

14  employees, attorneys, and representatives.

15        9.   "SHUSTER HEIRS" means, collectively and severally, the Estate of

16  Joseph Shuster, Jean Adele Peavy, Mark Warren Peary, Dawn Peavy, Frank

17  Shuster, or any other executor, administrator, heir, relative, or representative of

18  Joseph Shuster and, as applicable, any PERSON acting on their behalf, including

19  but not limited to their agents, employees, attorneys, and representatives.

20       10.   "SUPERMAN" means the Superman character as delineated in

21  literary works such as comic books, newspapers, novels, radio programs,

22  television programs, and motion pictures, and any of the works in which he

23  appears, including but not limited to *Action Comics. No. 1.*

24       11.   "SUPERBOY" means the Superboy character as delineated in

25  literary works such as comic books, newspapers, novels, radio programs,

26  television programs, and motion pictures, and any of the works in which he

27  appears, including but not limited to *More Fun Comics No. 101.*

28

NOTICE OF DEPOSITION OF
DEFENDANT IP WORLDWIDE, LLC

1    12.    "MARKET" means to any effort to promote, arrange, or negotiate

2    the sale, assignment, lease, license, or any other disposition or exploitation of

3    rights or property.

4    13.    "INVESTOR" means any PERSON or entity that provides money or

5    other capital in exchange for rights or property, including but not limited to an

6    investment bank, private equity firm, hedge fund, venture capital firm, mutual

7    fund, motion picture studio, entertainment production company, or individual.

8    14.    "COMPLAINT" means the First Amended Complaint filed on

9    September 3, 2010 in *DC Comics v. Pacific Pictures Corporation et al.*, Case No.

10   CV-10-3633 (ODW) (RZx) (Docket No. 49).

11   15.    "Any" and "All" are interchangeable.

12   16.    The singular form includes the plural form, and vice versa.

13                      **<u>SCHEDULE OF DEPOSITION TOPICS</u>**

14   Topics to be covered in YOUR deposition include:

15   1.    All facts and COMMUNICATIONS concerning the allegations in

16   the COMPLAINT involving IPWW, including pages 62-68.

17   2.    All facts and COMMUNICATIONS concerning the formation of

18   IPWW.

19   3.    All facts and COMMUNICATIONS concerning the past, current,

20   and planned operation, management, and ownership of IPWW.

21   4.    All facts and COMMUNICATIONS concerning any effort by YOU

22   to solicit clients.

23   5.    All facts and COMMUNICATIONS concerning any property in

24   which IPWW held, holds, or will hold any right or interest.

25   6.    All facts and COMMUNICATIONS concerning any partnership or

26   strategic alliance involving IPWW.

27   7.    All facts and COMMUNICATIONS concerning any effort by YOU

28   to MARKET any right or interest involving SUPERMAN and/or SUPERBOY.

NOTICE OF DEPOSITION OF
                                DEFENDANT IP WORLDWIDE, LLC

1       8.     All facts and COMMUNICATIONS concerning any actual or

2   potential INVESTOR in any right or interest involving SUPERMAN and/or

3   SUPERBOY.

4       9.     All facts and COMMUNICATIONS concerning any agreement

5   involving SUPERMAN and/or SUPERBOY to which any DEFENDANT is or

6   was a party.

7       10.    All facts and COMMUNICATIONS concerning the relationship

8   between or among any DEFENDANT and DC COMICS and/or WARNER.

9       11.    All facts and COMMUNICATIONS concerning the ownership,

10  disposition, or division of any right or interest involving SUPERMAN and/or

11  SUPERBOY.

12      12.    All facts and COMMUNICATIONS concerning or affecting the

13  division of revenue, proceeds, or other profits regarding SUPERMAN and/or

14  SUPERBOY.

15      13.    All facts and COMMUNICATIONS concerning or affecting the

16  ability of any DEFENDANT to negotiate or enter into agreements regarding

17  SUPERMAN and/or SUPERBOY.

18      14.    All facts and COMMUNICATIONS concerning any actual or

19  potential conflict of interest involving any DEFENDANT, including any

20  disclosure, waiver, or solicitation of independent advice.

21      15.    All facts and COMMUNICATIONS concerning YOUR introduction

22  to and relationship with any DEFENDANT.

23      16.    All facts and COMMUNICATIONS concerning YOUR knowledge

24  of efforts by any DEFENDANT to recapture any right or interest involving

25  SUPERMAN and/or SUPERBOY under the copyright termination provisions in

26  the United States Copyright Act.

27      17.    All facts and COMMUNICATIONS concerning YOUR introduction

28  to and relationship with Ari Emanuel.

NOTICE OF DEPOSITION OF
DEFENDANT IP WORLDWIDE, LLC

18.     All facts and COMMUNICATIONS concerning the Memorandum of Agreement purporting to create the IP Worldwide joint venture dated February 2, 2002 between DEFENDANT Pacific Pictures Corporation and Ari Emanuel.

19.     All DOCUMENTS concerning the letter agreement dated October 3, 2002—and any revisions, modifications, or adjustments thereto—between YOU and the SIEGEL HEIRS.

20.     All facts and COMMUNICATIONS concerning the identification of IPWW on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

21.     All facts and COMMUNICATIONS concerning YOUR assertion in the Certification of Interested Parties filed on YOUR behalf in the above-entitled case on July 15, 2010, that YOU have "no pecuniary interest in the matters that are the subject of Plaintiff's Third and Sixth Causes of action."

Dated:  July 11, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____

Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

NOTICE OF DEPOSITION OF
DEFENDANT IP WORLDWIDE, LLC

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:  (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, New York 10516
    Telephone: (845) 265-2820
10  Facsimile: (845) 265-2819

11  Attorneys for Plaintiff DC COMICS

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15  DC COMICS,                          | Case No. CV 10-3633 ODW (RZx)

16              Plaintiff,              | **PROOF OF SERVICE**

17       v.                            | Hon. Otis D. Wright, II

18  PACIFIC PICTURES CORPORATION,
    IP WORLDWIDE, LLC, IPW, LLC,
19  MARC TOBEROFF, an individual,
    MARK WARREN PEARY, as personal
20  representative of the ESTATE OF
    JOSEPH SHUSTER, JEAN ADELE
21  PEAVY, an individual, LAURA
    SIEGEL LARSON, an individual and as
22  personal representative of the ESTATE
    OF JOANNE SIEGEL, and DOES 1-10,
23  inclusive,

24              Defendants.

25

26

27

28

**EXHIBIT J**
**172**

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California, by First Legal Support Services, whose address is 1511 W. Beverly Blvd., Los Angeles, CA 90026. I am over the age of eighteen years and not a party to the within action. On July 11, 2011, I personally served the following:

**PLAINTIFF DC COMICS' NOTICE OF DEPOSITION OF DEFENDANT MARC TOBEROFF**

**PLAINTIFF DC COMICS' NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT DEFENDANT PACIFIC PICTURES CORPORATION**

**PLAINTIFF DC COMICS' NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT DEFENDANT IP WORLDWIDE, LLC**

**PLAINTIFF DC COMICS' NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT DEFENDANT IPW, LLC**

by delivering copies thereof to the offices of the following, and either handing the copy to or leaving it with the receptionist of the office thereof:

Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067

PROOF OF SERVICE

1

2

3
Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067

4       I declare under penalty of perjury under the laws of the United States that the

5   above is true and correct.  Executed on February July 11, 2011, at Los Angeles,

6   California.

7

8       SIGNATURE:                    _____

9

10      PRINTED NAME:                 _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 12, 2011

OUR FILE NUMBER
905,900-321

**VIA HAND MESSENGER**

WRITER'S DIRECT DIAL
(310) 246-6840

Susan Allison
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Susan:

In light of defendants' pending writ petition concerning documents relevant to Kevin Marks' deposition, as well as briefing due in the case on August 8, we need to reschedule Mr. Marks' deposition and set it for August 3, 4, or 5, 2011. Enclosed please find an Amended Deposition Subpoena for Mr. Marks setting it for August 5.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

Enclosure(s)

cc:   Daniel M. Petrocelli, Esq., Marc Toberoff, Esq., Richard Kendall, Esq.

**EXHIBIT K**
**175**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:  (845) 265-2819

11

   Attorneys for Plaintiff DC Comics
12

13                **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15 DC COMICS,                          | Case No. CV-10-3633 ODW (RZx)

16          Plaintiff,                 | **DISCOVERY MATTER**

17          v.                         | **PLAINTIFF DC COMICS'**
                                        **AMENDED NOTICE OF**
18 PACIFIC PICTURES                    **SUBPOENA FOR DEPOSITION**
   CORPORATION, IP WORLDWIDE,          **OF KEVIN S. MARKS, ESQ.**
19 LLC, IPW, LLC, MARC TOBEROFF,
   an individual, MARK WARREN          **Judge:** Hon. Otis D. Wright II
20 PEARY, as personal representative of **Magistrate:** Hon. Ralph Zarefsky
   the ESTATE OF JOSEPH SHUSTER,
21 JEAN ADELE PEAVY, LAURA             Deposition Date: August 5, 2011
   SIEGEL LARSON, an individual and    Deposition Time: 9:00 a.m.
22 as personal representative of the
   ESTATE OF JOANNE SIEGEL, and
23 DOES 1-10, inclusive,

24          Defendants.

25

26

27

28

                                        AMENDED NOTICE OF SUBPOENA FOR
                                        DEPOSITION OF KEVIN S. MARKS, ESQ.
                    **EXHIBIT K**
                         **176**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, a subpoena to testify at deposition, as set forth in attachment "A" hereto, has been served on Kevin S. Marks, Esq. of Gang, Tyre, Ramer & Brown, Inc., c/o Susan Allison, Jeffer Mangels Butler & Mitchell LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067. The deposition upon oral examination of Mr. Marks will be taken in the above-entitled action on August 5, 2011, starting at 9:00 a.m. and continuing over the course of one day until completed or otherwise adjourned. The deposition will be held at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

A list of all parties or attorney on whom this Notice of Subpoena is being served is shown on the accompanying Proof of Service.

Dated:  July 12, 2011

Respectfully submitted,

O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli

Attorneys for Plaintiff DC Comics

AMENDED NOTICE OF SUBPOENA FOR
DEPOSITION OF KEVIN S. MARKS, ESQ.

**EXHIBIT K**
**177**



# Attachment A

EXHIBIT K
178

AO 88A (Rev 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10-3633 |
| Pacific Pictures Corporation, et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | . . . . . ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Kevin S. Marks, Esq. of Gang, Tyre, Ramer & Brown, Inc., c/o Susan Allison, Jeffer Mangels Butler & Mitchell
LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a
deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate
one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf
about the following matters, or those set forth in an attachment:

| Place: O'MELVENY & MYERS LLP<br>1999 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067 | Date and Time:<br>08/05/2011 9:00 am |
|---|---|

The deposition will be recorded by this method:  Stenographic, Sound, and Visual Means

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents,
electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:   07/12/2011

        *CLERK OF COURT*
                                            OR

   _____           _____
   *Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Attorneys for Plaintiff DC Comics _____ , who issues or requests this subpoena, are:
Daniel M. Petrocelli, O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 700, Los Angeles, CA 90067
Email: dpetrocelli@omm.com, Phone: (310) 246-6850

**EXHIBIT K**
**179**

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   10-3633

# PROOF OF SERVICE

## *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*     Kevin S. Marks, Esq. of Gang, Tyre, Ramer & Brown, Inc.

was received by me on *(date)*      07/12/2011

☑ I served the subpoena by delivering a copy to the named individual as follows:  Kevin S. Marks, Esq. of

Gang, Tyre, Ramer & Brown, Inc., c/o Susan Allison, Jeffer Mangels Butler & Mitchell LLP, 1900 Avenue of the

Stars, 7th Floor, Los Angeles, California 90067                    on *(date)*   07/12/2011   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____   for travel and $ _____   for services, for a total of $   0.00  .

I declare under penalty of perjury that this information is true.

Date:    07/12/2011

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT K**
**180**

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



---

**Re: D.C. Comics - Marks deposition**                                    Monday, July 18, 2011 11:23 AM

From:  "Marc Toberoff" <mtoberoff@ipwla.com>
To:  "Kline, Matthew" <MKline@omm.com>
Cc:  "Allison, Susan J." <SJA@jmbm.com>, "Petrocelli, Daniel" <DPetrocelli@omm.com>, "Seto, Cassandra" <cseto@omm.com>, "Keith Adams" <kgadams@ipwla.com>

---

Matt:

Mr. Marks and defendants have both repeatedly offered to hold the deposition on July 21, 2011, the date which was agreed upon over a month ago, and around which I planned my summer holiday with my family.  There was no basis for DC to attempt to unilaterally move the deposition from July 21 to August 5. Defendants' pending writ provides no basis, since it is entirely possible, if not likely, that the writ will not be decided by that date.

As Mr. Marks has also informed you he is on jury duty the week of August 5. Accordingly, even if I were willing to disrupt my vacation and fly in from the East Coast for the deposition this presents an impossible situation as Mr. Marks will not know until 5 pm the day before on August 4, whether he will be relieved from jury duty on August 5.

Your unreasonable and arrogant stance with respect to this simple matter is beyond the pale.  Please be advised that we will move ex parte for a protective order..

I will also advise Judge Wright of your unprofessional conduct in seeking to leverage for strategic advantage my long planned summer vacation with my family.

Marc Toberoff

On Sun, Jul 17, 2011 at 7:22 AM, Tokoro, Jason <jtokoro@omm.com> wrote:

Please see below correspondence sent on behalf of Matthew T. Kline.

*          *          *

Susan,

The deposition is duly noticed, and we intend to proceed on August 5. If Mr. Toberoff refuses to attend or work out a compromise schedule, that is his choice, but we will take Mr. Marks' non-appearance if he refuses to appear (and is not in jury service that day). Again, these are all issues of Mr. Toberoff's making: he is pursuing the writ, he won't move the August 8 deadline to account for the writ or travel plans, and he continues to decline to produce documents on which witnesses need to be examined. We wish this wasn't the case and he'd work productively toward a compromise, but he refuses.

We reserve all rights,

Matt

---

**From**: Allison, Susan J. [mailto:SJA@JMBM.com]
**Sent**: Saturday, July 16, 2011 08:47 AM
**To**: Kline, Matthew
**Cc**: Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Patrick Perkins <pperkins@ptplaw.com>; Marc Toberoff <mtoberoff@ipwla.com>; rkendall@kbkfirm.com <rkendall@kbkfirm.com>

---

**EXHIBIT L**
**182**

**Subject**: RE: D.C. Comics - Marks deposition

Matt:

I'm not sure that you saw my email to all counsel sent at 12;42, just before you sent the one below.  Mr. Marks will not commit to appear on a date to which all counsel have not agreed.  All counsel and Mr. Marks appear to have agreed on July 21, so we will keep that date open. Let me know if you and Mr. Toberoff both agree to either July 21 or August 5 as the date for Mr. Marks' deposition (with the August 5 date subject to Mr. Marks' jury service obligations).

Thanks,
Susan

Susan Allison of
JMBM | Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

(310) 785-5303 Direct
(310) 712-3303 Fax
SAllison@jmbm.com
JMBM.com

This e-mail message and any attachments are confidential and may be attorney-client privileged. Dissemination, distribution or copying of this message or attachments without proper authorization is strictly prohibited. If you are not the intended recipient, please notify JMBM immediately by telephone or by e-mail, and permanently delete the original, and destroy all copies, of this message and all attachments. For further information, please visit JMBM.com.

Circular 230 Disclosure: To assure compliance with Treasury Department rules governing tax practice, we hereby inform you that any advice contained herein (including in any attachment) (1) was not written or intended to be used, and cannot be used, by you or any taxpayer for the purpose of avoiding any penalties that may be imposed on you or any taxpayer and (2) may not be used or referred to by you or any other person in connection with promoting, marketing or recommending to another person any transaction or matter addressed herein.

---

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Friday, July 15, 2011 12:43 PM
**To:** Marc Toberoff
**Cc:** Allison, Susan J.; Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Patrick Perkins
**Subject:** RE: D.C. Comics - Marks deposition

Marc,

We disagree with the sum and substance of your email and will proceed with Mr. Marks' deposition on August 5, or shortly thereafter, if need arises.  All of DC's rights are reserved.

Matt

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Friday, July 15, 2011 11:40 AM
**To:** Kline, Matthew
**Cc:** Allison, Susan J.; Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Patrick Perkins
**Subject:** Re: D.C. Comics - Marks deposition

**EXHIBIT L**
**183**

Matt:

Though inconvenient we would be happy to move Laura Siegel Larson's deposition back to Friday, July 22, provided you proceed with Mr. Marks' deposition on July 21 as originally scheduled.

You cannot proceed with the deposition on August 5. As Mr. Marks is the former attorney of Ms. Larson I must obviously be present at Mr. Marks' deposition to assert the attorney-client privilege on her behalf  and must also be present at the deposition as counsel for the defendants.

In addition, Mr. Marks has indicated that he has jury duty the week of August 5. You will recall that Dan Petrocelli cancelled the previously scheduled deposition of Ms. Larson, on the basis of jury duty.

You have had over nine months to take Mr. Marks' deposition.  Yet, just days before his long scheduled July 21 deposition, you cancelled it as a tactical manuever to force an extension of the already generous August 8 deadline for DC to file a second opposition to defendants' anti-SLAPP motion to strike DC's frivolous claims.

We will not permit you to use my summer vacation with my family (of which you have long had advance notice) to leverage an unwarranted extension of the August 8 deadline set by the Court. Nor should you inconvenience third parties, such as Mr. Marks, by such gamesmanship.

Marc Toberoff

On Fri, Jul 15, 2011 at 10:55 AM, Kline, Matthew <MKline@omm.com> wrote:
Dear Susan:

    Thank you for your letter.  We will plan to proceed on Friday, August 5.  If Mr. Marks is chosen for jury service (and I assume he's being asked to call in or report that Monday), we can reschedule the deposition for the following week or shortly thereafter.  Having been through the process myself recently, often times you report that first day and that (or another day or two) is the extent of your service.  Given defendants' pending writ--which they filed on June 30, after we set the July 21 deposition date on June 9--the July 21 date no longer works; that is, unless you'll agree to a second deposition session after the writ is resolved.  Further, we'd be happy to try and target a later day in August, or even September, for Mr. Marks' deposition, but Mr. Toberoff refuses to extend the August 8 filing deadline in our case by even a few weeks.  Finally, I'm not sure he told you this, but after we re-noticed Mr. Marks' deposition, Mr. Toberoff asked that Ms. Larson's deposition be moved to July 21, and we agreed to his request.

    I'm happy to discuss these issues, if you'd like.

Best regards,

Matt

---

**From:** Allison, Susan J. [mailto:SJA@JMBM.com]
**Sent:** Thursday, July 14, 2011 12:23 PM
**To:** Kline, Matthew
**Cc:** Kevin S. Marks; Marc Toberoff; rkendall@kbkfirm.com

**Subject:** FW: D.C. Comics - Marks deposition

Please see the attached letter.

Susan Allison of
JMBM | Jeffer Mangels Butler & Mitchell LLP

**EXHIBIT L**
**184**

1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

(310) 785-5303 Direct
(310) 712-3303 Fax
SAllison@jmbm.com
JMBM.com

This e-mail message and any attachments are confidential and may be attorney-client privileged. Dissemination, distribution or copying of this message or attachments without proper authorization is strictly prohibited. If you are not the intended recipient, please notify JMBM immediately by telephone or by e-mail, and permanently delete the original, and destroy all copies, of this message and all attachments. For further information, please visit JMBM.com.

Circular 230 Disclosure: To assure compliance with Treasury Department rules governing tax practice, we hereby inform you that any advice contained herein (including in any attachment) (1) was not written or intended to be used, and cannot be used, by you or any taxpayer for the purpose of avoiding any penalties that may be imposed on you or any taxpayer and (2) may not be used or referred to by you or any other person in connection with promoting, marketing or recommending to another person any transaction or matter addressed herein.

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**EXHIBIT L**
**185**

Case 2:10-cv-03633-ODW -RZ    Document 314-3    Filed 08/29/11    Page 39 of 71    Page ID #:20863



**FW: DC Comics v. PPC - Deposition Scheduling**        Wednesday, July 20, 2011 6:37 PM

From: "Seto, Cassandra" <cseto@OMM.com>
To: "Marc Toberoff" <mtoberoff@ipwla.com>, "Keith Adams" <kgadams@ipwla.com>, "Allison, Susan J." <SJA@JMBM.com>, "'rkendall@kbkfirm.com'" <rkendall@kbkfirm.com>
Cc: "Petrocelli, Daniel" <DPetrocelli@OMM.com>, "Kline, Matthew" <MKline@OMM.com>

Counsel:

Please see the email below sent on behalf of Matt Kline.

     *            *            *

Marc, in response to your email below concerning Mr. Marks' deposition, we will proceed with the deposition on August 5 if Mr. Marks is not required to appear for jury duty and if the Toberoff Timeline documents that are the subject of your pending writ have been produced to us prior to August 5. Otherwise, and because Mr. Marks has not agreed to appear for a second session, we will defer the deposition for a brief period to await production of the documents. Notwithstanding Mr. Marks' position, we reserve all our rights to seek additional deposition sessions should we take his deposition at a later date without the Toberoff Timeline documents.

You say you've cancelled a vacation to attend the deposition on August 5; we never asked you to do that and proposed various, reasonable alternatives--all of which you declined.

Matt

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Wednesday, July 20, 2011 2:56 PM
**To:** Petrocelli, Daniel
**Cc:** Allison, Susan J.; Richard Kendall
**Subject:** Re: DC Comics v. PPC - Deposition Scheduling

Matt, already gave his position. That is why I cancelled my vacation plans; so we are expecting that DC follows through on August 5 with Marks' depo as Matt repeatedly demanded and said you would.

On Wed, Jul 20, 2011 at 1:23 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
Marc, agreed as to Laura's deposition. Start time is 9:30 am.

As to Dawn Peavy, we will take her deposition in New Mexico on the date noticed.

As to Kevin Marks, Matt will get back to you today with our position.

Dan

**EXHIBIT M**
**186**

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Wednesday, July 20, 2011 12:29 PM
**To:** Petrocelli, Daniel
**Cc:** Kline, Matthew; Seto, Cassandra
**Subject:** Fwd: DC Comics v. PPC - Deposition Scheduling


Dan:

This is to confirm our conversation yesterday agreeing that Laura Siegel Larson's deposition will go forward on Friday, July 22, 2011, not Thursday, July 21, 2011.

As I also stated, Ms. Peavy's and Mr. Marks' deposition will go forward, as DC has noticed, on August 3 and August 5, 2011, as I cancelled my July 23-August 7 vacation.

As mentioned, Ms. Peavy works full-time and is at best an extremely marginal witness.

If you can hold her deposition on a Sunday, DC will reimburse the costs of Dawn's airfare and accommodations (as with Mr. Peary), she is willing to fly in from New Mexico for the deposition at a considerable saving to your client of legal fees and costs.  Otherwise, the deposition will proceed on August 3 in New Mexico.

In addition, as noted, it may be in both sides interest to think of alternative ways other than a full-blown all-day deposition, to establish Dawn's lack of knowledge.

Please get back to me today if possible regarding Dawn Peavy as both she and I would need to make plans.

Thank-you
--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com



--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**EXHIBIT M**
**187**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

July 25, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corp., et al.*</u>, Case No. 10-CV-03633 ODW (RZx)

Matt:

Defendants write in response to the notices of deposition served on Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC ("IPWW"), and IPW, LLC ("IPW"), for deposition dates of August 10, 12, 16, and 30, 2011, respectively.

DC's July 11, 2011 letter indicated that it scheduled the depositions for these dates in light of Mr. Toberoff's vacation from July 25-August 5, 2011.  As you know, Mr. Toberoff cancelled that vacation to accommodate the depositions of Dawn Peavy and Kevin Marks, noticed by DC for August 3 and 5, respectively.

**If DC wishes to take Mr. Toberoff's deposition in advance of its August 8, 2011 deadline to file a new opposition to defendants' anti-SLAPP motion, Mr. Toberoff is available for deposition on July 28-29, 2011.**   If DC wishes to proceed on such dates, please notify us immediately.

Otherwise, Mr. Toberoff is available for deposition on August 10, 2011 as noticed, as well as the other noticed dates of August 12 and August 16, 2011.  However, he is not available on August 30, as he has rescheduled his family vacation for August 21 – September 6, 2011.

PPC is as you know dissolved, IPWW has long been inactive and the allegations in DC's complaint do not even involve IPW.  Moreover, all three were (as to PPC) and are closely-held companies of Mr. Toberoff. When Mr. Toberoff first appears for his deposition pursuant to F.R.C.P. 30(b)(1), he will also appear as the F.R.C.P. 30(b)(6) witness designated by PPC, IPWW and IPW, which will adopt his testimony.  *See, e.g., Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162–63 (D. Del. 2001); *A.I.A. Holdings, S.A v. Lehman Brothers, Inc.*, 2002 U.S. Dist. LEXIS 9218, at *18 (S.D.N.Y. May 20, 2002) ("However, common sense

**EXHIBIT N**
**188**

**TOBEROFF & ASSOCIATES, P.C.**

July 25, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2

teaches that in the case of relatively small, closely-held entities … there may be no difference between the knowledge of the entity and the knowledge of its principals….  A 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would be identical to his testimony as an individual….  In such a situation, there appears to be no obstacle to the entity's complying with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity."); *Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637, at *3-*4 (S.D.N.Y. Dec. 10, 2001) ("In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity. In such a situation, the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition.").

Please be advised that Mr. Toberoff will not appear for four separate 7-hour depositions as noticed by DC, and DC's attempt to get four bites at the proverbial apple is unreasonable, unduly burdensome and harassing.

Defendants will move for a protective order pursuant to F.R.C.P. 26(c) to limit the deposition testimony of Mr. Toberoff, PPC, IPWW and IPW to a single day of seven hours, and hereby request a conference of counsel pursuant to L.R. 37-1 on this subject.  Defendants are available today, as well as July 26-29 and August 1-4, 2011, to meet and confer.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith G. Adams

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 26, 2011

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel,

We write in response to Keith Adams' July 25, 2011, letter.  There is no basis for your refusal to produce half of the defendants in this case for their duly-noticed depositions.

DC clearly is entitled to depose defendant Marc Toberoff in his individual capacity under Federal Rule of Civil Procedure 30(a)(1), and also to depose the corporate designees of defendants Pacific Pictures Corporation; IP Worldwide, LLC; and IPW, LLC under Federal Rule of Civil Procedure 30(b)(6).  Rule 30(b)(6) expressly provides that it "*does not preclude a deposition by any other procedure* allowed by these rules."  (Emphasis added.)  Defendants' own cases confirm that "the 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit."  *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, *2 (S.D.N.Y. Dec. 12, 2001) (any other rule would create "substantial potential for over-reaching"); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002) ("[T]he mere fact that the principal of a corporation has been deposed [in his individual capacity] is not an automatic substitute for a 30(b)(6) deposition.").  This makes sense, as "the depositions serve distinct purposes, impose different obligations ... and involve different ramifications."  *Commodity Futures Trading Comm. v. Midland Rare Coin Exch. Inc.*, 1999 U.S. Dist. LEXIS 16939, *9-*10 (S.D. Fla. July 28, 1999).  The need for separate depositions is particularly compelling in this case, where each of the Toberoff

O'MELVENY & MYERS LLP
July 26, 2011 - Page 2

defendants is alleged to have engaged in different acts of misconduct and entered into separate
agreements that violate DC's rights in different ways.  *See* Comp. ¶¶ 165-89.

Indeed, there is *no* authority barring multiple depositions of a witness in his individual
and 30(b)(6) capacities, even where the testimony "may be similar."  *Provide Commerce, Inc. v.
Preferred Commerce, Inc.*, 2008 WL 360588, *3 (S.D. Fla. Feb. 8, 2008) (denying protective-
order motion and observing:  "this Court did not find *any case law* that barred a second
deposition of an individual who was first deposed in his individual capacity and then called to
testify a second time on behalf of the corporation) (emphasis added); *see also ICE Corp. v.
Hamilton Sundstrand Corp.*, 2007 WL 1732369, *3 (D. Kan. June 11, 2007) (denying protective-
order motion and noting:  "the court has failed to find, *any authority* whereby the previous
deposition of certain witnesses prevents 30(b)(6) depositions of those same witnesses.  In fact,
*Rule 30(b)(6) anticipates such an occurrence*….") (emphasis added); *Smith v. Gen. Mills, Inc.*,
2009 WL 2525462, *5 (S.D. Ohio Aug. 13, 2009) ("Courts have soundly rejected [the] argument
that prior deposition testimony from individual fact witnesses relieves a corporation from
designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition.").
Courts routinely deny motions seeking to bar depositions on this ground.  *E.g.*, *id.*; *Ice Corp. v.
Hamilton Sundstrand Corp.*, 2007 WL 1500311, *3 (D. Kan. May 21, 2007) (denying protective-
order motion; "[j]ust because [defendant] may choose to designate certain individuals as its
corporate designees whose fact depositions have already occurred does not insulate [defendant]
from the requirements of Rule 30(b)(6).  *Such a finding would eviscerate Rule 30(b)(6)*.")
(emphasis added); *LendingTree, Inc. v. LowerMyBills, Inc.*, 2006 U.S. Dist. LEXIS 59589, at *3-
*6, *9 (W.D.N.C. Aug. 22, 2006) (granting motion to compel Rule 30(b)(6) deposition even
though designee had previously testified on similar topics as individual); *In re Willkie Farr &
Gallagher LLP to Quash Subpoena*, 2008 WL 3884380, at *2-*3 (S.D.N.Y. Aug. 14, 2008)
(denying motion to quash where insufficient showing "Rule 30(b)(6) deposition … would be
entirely, or even substantially, redundant of the deposition of [witness] in his individual
capacity"); *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 210 F.3d 1, 17 (1st Cir. 2000)
(imposing sanctions and fees for refusal to produce 30(b)(6) witnesses because issuing party
"had in early stages of the case already deposed the employees"); *Sabre v. First Dominion
Capital, LLC,* 2002 WL 31556379, *2 (S.D.N.Y. Nov. 15, 2002) (denying motion to quash; "the
fact that individually named witness have testified concerning a subject is generally no obstacle
to a 30(b)(6) deposition on the same subject").

In *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 2734289 (N.D. Cal.
Sept. 25, 2006), the district court considered circumstances nearly identical to those here.
Defendant William Spencer was the president and sole owner of defendant FWS, which in turn
controlled defendant BMC.  *Id.* at *1.  The court allowed plaintiff to depose Spencer three
separate times—once in his individual capacity, once as the 30(b)(6) designee of FWS, and again
as the 30(b)(6) designee of BMC.  *Id.* at *1-*2.

These rules make sense.  Mr. Toberoff chose to set up these separate companies, and
invoked the laws and protections of each state of incorporation in doing so.  Each company made
contracts, conducted business, and engaged in activities that are alleged to run afoul of the law—

O'MELVENY & MYERS LLP

July 26, 2011 - Page 3

some aspects of which defendants have admitted, *see* Docket Nos. 147-1 at 2, 8; 191 at 8—and while Mr. Toberoff has yet to admit that each was his alter ego and acting as his agent, defendants now wish to treat them as one and the same so as to avoid their independent and separate discovery obligations.

We cannot countenance that, particularly given the way you have obstructed other depositions. That said, we are willing to discuss consolidating the Toberoff defendants' depositions into two, seven-hour days, rather than four.

We are available to meet and confer on these issues August 1-4.  During that meeting, we can discuss when to schedule the depositions.  Dan has an upcoming trial before Judge Fairbank, and the dates you propose just a few days from now are not reasonable in any event, especially given that the Ninth Circuit has not yet ruled on defendants' writ.

All of DC's rights are reserved.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 29, 2011

OUR FILE NUMBER
905,900-321

**VIA EMAIL**

Susan Allison
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:     *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Susan:

Given that the Ninth Circuit has not yet resolved defendants' writ petition and you have not agreed to a second day of deposition for Mr. Marks after the writ is ruled on, we need to defer Mr. Marks' deposition until defendants have produced the Toberoff Timeline documents. Though we had hoped to take Mr. Marks' deposition prior to August 8 due to briefing deadlines in this case—which Mr. Toberoff refused to extend—proceeding with the deposition was conditioned on defendants producing the Timeline documents to us prior to August 5. We would like to talk to you next week about rescheduling Mr. Marks' deposition for sometime in September.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:     Daniel M. Petrocelli, Esq., Marc Toberoff, Esq., Richard Kendall, Esq.

**EXHIBIT P
193**

1   EDWARD A. RUTTENBERG (State Bar No. 67378)
    LEOPOLD, PETRICH & SMITH, P.C.
2   2049 Century Park East, Suite 3110
    Los Angeles, California 90067-3274
3   Tel.: (310) 277-3333 • Fax: (310) 277-7444
    Email: eruttenberg@lpsla.com
4
    Attorneys for Defendant
5   THE WEINSTEIN COMPANY LLC

6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **FOR THE COUNTY OF LOS ANGELES**

10                                **WEST DISTRICT**

11

12   ARTHUR LEEDS,                              | **CASE NO.** SC 106045

13              Plaintiffs,                       | UNLIMITED JURISDICTION

14   v.                                          | [Assigned for all purposes to the Honorable Lisa
                                                    Hart Cole]
15   CHAKO VAN LEEUWEN AKA TOSHIKO
     CHAKO VAN LEEUWEN, MARK
16   TOBEROFF, INTELLECTUAL PROPERTIES         | **NOTICE OF ENTRY OF ORDER**
     WORLDWIDE AKA IP WORLDWIDE,
17   CHAKO FILM INTERNATIONAL AND DOES
     2-50,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

LEOPOLD, PETRICH
    & SMITH
A Professional Corporation

24211

EXHIBIT Q
194

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

     **NOTICE** IS HEREBY GIVEN that, on July 8, 2011, the Court entered its Order Granting Motion of Defendant The Weinstein Company LLC to Dismiss the First Amended Complaint of Plaintiff Arthur Leeds for Failure to Join and Serve an Indispensable Party (the "Order").

     A conformed copy of such Order is attached hereto as Exhibit A.

DATED:  July 22, 2011                    LEOPOLD, PETRICH & SMITH, P.C.

                                         By: _____
                                             EDWARD A. RUTTENBERG
                                             Attorneys for  Defendant
                                             THE WEINSTEIN COMPANY LLC

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

24211

NOTICE **EXHIBIT Q**RY OF ORDER

195

1   EDWARD A. RUTTENBERG (State Bar No. 67378)
    ELIZABETH L. SCHILKEN (State Bar No. 241231)
2   LEOPOLD, PETRICH & SMITH, P.C.
    2049 Century Park East, Suite 3110
3   Los Angeles, California 90067-3274
    Tel: (310) 277-3333 • Fax: (310) 277-7444
4   Email: eruttenberg@lpsla.com; eschilken@lpsla.com

5   Attorneys for Defendant
    THE WEINSTEIN COMPANY LLC

6

7

*CONFORMED COPY*
*OF ORIGINAL FILED*
*Los Angeles Superior Court*

**JUL 08 2011**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
        Nancy Lee

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **FOR THE COUNTY OF LOS ANGELES**

10                    **WEST DISTRICT**

11

12   ARTHUR LEEDS,

13          Plaintiff,

14         v.

15   CHAKO VAN LEEUWEN AKA TOSHIKO
    CHAKO VAN LEEUWEN, MARK
16   TOBEROFF, INTELLECTUAL PROPERTIES
    WORLDWIDE AKA IP WORLDWIDE,
17   CHAKO FILM INTERNATIONAL AND DOES
    2-50,
18
          Defendants.
19

20

CASE NO.: SC 106045

UNLIMITED JURISDICTION

[Assigned for all purposes to the Honorable Lisa Hart Cole]

~~[PROPOSED]~~ **ORDER GRANTING MOTION OF DEFENDANT THE WEINSTEIN COMPANY LLC TO DISMISS THE FIRST AMENDED COMPLAINT OF PLAINTIFF ARTHUR LEEDS FOR FAILURE TO JOIN AND SERVE AN INDISPENSABLE PARTY**

21

22

23

24

25

26

27

28

# EXHIBIT A

~~[PROPOSED]~~ ORDER GRANTING MOTION TO DISMISS

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

23712

196

1   The Motion of Defendant The Weinstein Company LLC to Dismiss the First Amended

2   Complaint of Plaintiff Arthur Leeds for Failure to Join and Serve an Indispensable Party ("Motion")

3   came on regularly for hearing on June 16, 2011, The Honorable Lisa Hart Cole, Superior Court

4   Judge presiding.  Plaintiff appeared in propria persona.  Defendant The Weinstein Company LLC

5   appeared by its attorney, Edward A. Ruttenberg.  Defendants Marc Toberoff and IP Worldwide,

6   LLC appeared by their attorney, Jeffrey R. Rhoads.

7

8   After reviewing the moving and opposing papers, the supporting and opposing evidence, the

9   pleadings, records and files in this action, and hearing oral argument, the Court hereby GRANTS the

10   Motion of The Weinstein Company LLC, and orders that Plaintiff's First Amended Complaint be

11   dismissed without prejudice as to all defendants.  Defendants to file costs bills pursuant to the rules.

12

13   IT IS SO ORDERED.

14

15   Dated: ___JUL 0 8 2011___                    _____LISA HART COLE_____

16                                                                  LISA HART COLE

17                                                          JUDGE OF THE SUPERIOR COURT

18   Presented By:

19   LEOPOLD, PETRICH & SMITH, P.C.

20

21   By: ___Edward A. Ruttenberg___

22   EDWARD A. RUTTENBERG
     Attorneys for Defendant

23   THE WEINSTEIN COMPANY LLC

24

25

26

27

28

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

23712

**EXHIBIT Q**
[PROPOSED] ORDER GRANTING MOTION TO DISMISS
197

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274.**

On July 22, 2011, I served the foregoing document described as **NOTICE OF ENTRY OF ORDER** on the interested parties in this action.

☒     by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒     **BY REGULAR MAIL:** I deposited such envelope in the mail at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐     **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐     **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail transmission(s) were directed as indicated on the service list.

☐     **BY OVERNIGHT MAIL:** I deposited such documents at the Federal Express Drop Box located at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was deposited with delivery fees thereon fully prepaid.

☐     **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒     (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 22, 2011, at Los Angeles, California.

_____
Kathryn Toyama

LEOPOLD, PETRICH & SMITH
A Professional Corporation
24211

NOTICE OF ENTRY OF ORDER
**EXHIBIT Q**
**198**

1

**SERVICE LIST**

2

3   Arthur Leeds, Esq.                          Plaintiff *In Propria Persona*
    1560 San Remo Drive
4   Pacific Palisades, CA  90272

5

    Mark Toberoff, Esq.                         *Attorneys for Defendants*
6   Jeffrey Rhoads, Esq.                        MARK TOBEROFF and IP WORLDWIDE,
    TOBEROFF & ASSOCIATES, P.C.                 LLC
7   2049 Century Park East, Suite 3630
    Los Angeles, CA  90067

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

24211



http://www.variety.com/index.asp?layout=print_story&articleid=VR1118012493&categoryid=3841

To print this page, select "PRINT" from the File Menu of your browser.

**Posted: Wed., Dec. 9, 2009, 3:44pm PT**

# Dealmakers: Lawyers

## Entertainment attorneys impact list

### By VARIETY STAFF

**DAN H. BLACK**
**Greenberg Traurig**

When Black entered private practice in 1990, screenwriters were still using typewriters. Today he can look back at a career that has embraced all the technical upheaval that has transformed the entertainment industry. At one point "I had the opportunity to be of service to Microsoft," he understates. "I needed to immerse myself in the client's world."
Black repped the software giant in its Hollywood deals. AEG Live retained him to help create a digital strategy. His negotiations on behalf of Belgium's XDC helped set 3D film standards.
His knowledge of digital sets Black apart from many entertainment lawyers. "It almost became part of my DNA to try to stay current," he says.
Black thinks it's essential for his clients on the digital side to have someone conversant in their vocabulary to help them navigate Hollywood. "They need someone who understands both worlds," he stresses. "And these worlds, increasingly, are beginning to intersect."
**KEY DEALS:** Repped XDC deploying 3D movie projectors throughout Europe.
**TOOL OF CHOICE:** Blackberry
**TOP CAUSE:** African Kids in Need
**ROLE MODEL:** Philip Black, father

**JOE CALABRESE**
**O'Melveny & Myers**

The economic climate has been rough on a lot of people, but Calabrese says: "Knock wood, our group has held up particularly well. Our practice has always been mostly on the company side, and that's been a good thing the past 18 months. I've read lots of articles about the talent side being hit pretty hard." Considered one of the most creative entertainment deal lawyers in Hollywood, Calabrese is known for his skill in crafting innovative, complex financial agreements.

**EXHIBIT R**
**200**

Shine, in acquisition of Reveille.
**TECH TOOL:** Blackberry
**TOP CAUSE:** Stanford U. Law School
**ROLE MODELS:** "The lawyers who went ahead of me in this firm."

**ROBERT SCHUMER**
**Paul, Weiss, Rifkind, Wharton & Garrison**

Repping the Endeavor Agency in its successful merger with William Morris is the most recent highlight of Schumer's career. And, to hear him talk about, it was also a lot of fun. The parties involved in the deal "had a blast," he says. "It wasn't easy to get done, but it was done in a way that both sides felt they succeeded."
For Schumer, there's no pat formula for getting big deals done in Hollywood. The key to success is to approach the process with an outside-the-box bent and forge deals acceptable to both sides of the table.
**KEY DEALS:** Repped Endeavor in merger with William Morris, creating the new WME, which combines rosters of the two shops and stands as a rival to CAA.
**TECH TOOL:** Blackberry
**TOP CAUSE:** Ken's Kids
**ROLE MODEL:** Abraham Lincoln

**NINA L. SHAW**
**Del, Shaw, Moonves, Tanaka, Finkelstein & Lezcano**

The detail-oriented Shaw is intimately involved in all facets of her transactions. For example, when she set up thesp Jamie Foxx and helmer F. Gary Gray with the revenge thriller "Law Abiding Citizen," she focused on getting the best deal possible in a tough economic environment.
"The margins have been cut razor-thin," she says, "but at the end of the day you still have what you started with — people's underlying passion is what motivates them."
**KEY DEALS:** "Law Abiding Citizen" for clients Foxx and Gray; "CSI" for Laurence Fishburne.
**TECH TOOLS:** Blackberry, Facebook
**TOP CAUSE:** Independent School Alliance for Minority Affairs
**ROLE MODEL:** Partner Ernie Del, who "puts deals ahead of ego"

**MARC TOBEROFF**
**Toberoff & Associates, P.C.**

"I believe I'm on the side of the good guys, or people who have never gotten what was coming to them," says intellectual property litigator Toberoff, who has carved out his own niche by exploiting "termination rights," a little-noticed part of the Copyright Act that gives original content creators or their heirs the ability to claw back control after a long span of time.
A scourge to the studios, Toberoff has become a legal superhero to such clients as the heirs of Jerry Siegel and Joe Schuster, the pair who created the Superman character in 1938 and sold the rights for $130. The upshot following a cascade of favorable court decisions is that the overall copyright on the Man of Steel will revert to the two estates in 2013 — including control over new projects.
His latest legal blast is on behalf of the heirs of Jack Kirby, who played a major role in the creation of Marvel comicbook icons like X-Men, the Fantastic Four and Spider-Man. Toberoff in September sent out 45 termination of copyright notices to Disney (which is buying Marvel), Sony, Fox and Universal. He has lately turned his gaze toward music. "I'm looking to get involved in music publishing and copyrights in a big way," says the lawyer. For starters, he's repping the kids of Ray Charles.

**EXHIBIT R**
**201**

**KEY DEALS:** Repped creators or heirs for Superman, Lassie, the Dukes of Hazzard
**TECH TOOL:** Blackberry
**TOP CAUSE:** Wants to start a foundation for artist rights
**ROLE MODEL:** Max Toberoff, father, a New York trial lawyer

### FRED TOCZEK
**Felker Toczek Gellman Suddleson**

With an eclectic clientele that includes Seth Rogen, Daniel Radcliffe and Noah Baumbach, Toczek skews to the independent and to young, up-and-coming actors. The split of the final two Potter films set a precedent, while the deal for Baumbach's upcoming "Greenberg" was on a far more modest scale.
The challenge, says Toczek, is "looking at different models in how you're going to approach a deal. If the money isn't available, then look at how you can be creative on the backend and find new and different ways for clients to taste success in a project."
Other Toczek clients: Bill Hader, Idris Elba, Judy Greer, Alice Eve, Aaron Johnson, Shailene Woodley and Jason Dolley. When the clients "don't have the leverage of a long and established career as an actor, you have to push really hard to get the deals where you want them," he says. "The next deal doesn't impact just the next deal. It impacts the next two or three."
**KEY DEALS:** Repped Radcliffe in the split of Potter films; Rogen and partner Evan Goldberg's "Green Hornet" and two Mandate Pictures projects: "I'm With Cancer" and "Jay and Seth vs. the Apocalypse," starring Rogen and Jay Baruchel.
**TECH TOOL:** Blackberry
**TOP CAUSE:** Maimonides Academy
**ROLE MODEL:** Mother: "More than anything, what matters in life is that you be a mensch."

### KEVIN YORN
**Morris Yorn Barnes & Levine**

A priority for Yorn these days is learning to exploit emerging digital distribution platforms on behalf of big-name talent. A recent example: "Plan 26: Dark Origins," a mixed-media thriller by client Anthony Zuiker, creator of the "CSI" franchise. Promoted as the first "digi-novel" by publisher Dutton, between chapters it refers readers to Web- and iPhone-borne video vignettes.
He handles transactions for Scarlett Johansson and Ellen DeGeneres, and repped the latter in her signing with Fox to become a judge on ratings behemoth "American Idol." Part of the package: an Idol-related tie-in with her syndicated talkshow, distributed by Warner Bros. "The goal is to make both deals work together," says Yorn.
Yorn repped Johansson to be the new face for Dolce & Gabbana, replacing Penelope Cruz, and as endorser for clothing line Mango. Johansson, by the way, has a new hit album, "Break Up," her second with rocker Pete Yorn — the attorney's younger brother. DeGeneres recently tweeted praise for the work.
**KEY DEALS:** Negotiations with Dutton and Apple for Zuiker's "digi-novel," first of a planned trilogy combining text with video interludes.
**TECH TOOLS:** Blackberry, iPhone, several iPods and a Kindle
**TOP CAUSE:** Cedars-Sinai Medical Center
**ROLE MODEL:** Herman Goldblatt, grandfather, 100 and still going strong

### KEN ZIFFREN
**Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook, Johnson, Lande & Wolf**

**EXHIBIT R**
**202**

# Film

 

---

*Posted: Sun., Mar. 30, 2008, 8:00pm PT*                    Share   Print

Get Variety:

## Warner vexed by legal Man of Steel

### Lawyer Toberoff dings Superman

By DIANE GARRETT

He's a superhero to rights holders -- but Kryptonite to studios.

-- Advertisement --

Last week, attorney Marc Toberoff won a potentially costly "Superman" victory against Warner Bros. for co-creator Jerome Siegel's heirs. The federal ruling, which gives the heirs a stake in rights sold 71 years ago, could put a serious crimp on future plans for one of the studio's most enduring -- and lucrative -- franchises, especially if co-creator Joe Shuster's heirs follow suit in five years, when they are eligible to do so.



*'Superman Returns'*

As it is, the studio has at least two Superman projects in development -- a follow-up to Bryan Singer's "Superman Returns" and "Justice League" -- and it may end up paying tens of millions from the domestic haul of "Superman Returns" to Siegel's heirs under the ruling, which applies to domestic monies for Superman projects since 1999.

The case is Toberoff's latest -- and potentially most damaging -- claim against the studio. The dedicated copyright crusader has pursued claims involving "Wild Wild West," "Dukes of Hazzard," "Smallville" and the upcoming "Get Smart."

He has gone after other studios, including Sony, but his most high-profile cases -- and victories -- have involved Warners. The studio paid "Moonrunners" producer Robert B. Clark a $17.5 million settlement in a case about similarities between that 1974 movie and the bigscreen "The Dukes of Hazzard." And a federal judge ruled earlier in the Siegels' favor over "Smallville," although that was challenged and the case still being resolved.

The studio declined to comment on the latest ruling in favor of their legal nemesis, issuing only a statement noting that, "substantial issues relating to the accounting of profits were ruled in our favor."

Among these issues: international profits, trademark-related revs and profits stemming from Superman fare produced before 1999, when Siegel's heirs terminated the earlier copyright arrangement under a 1976 law.

To the Siegels, Toberoff's legal maneuvers are nothing short of heroic. The family had been destitute for years after Siegel sold rights to his Man of Steel to Detective Comics for $130. DC Comics had started to pony up more monies after Warners made successful movies based on the character, but Siegel had long wished to redress the fact he had gotten so little from his creation; he died in 1996.

Toberoff has set up a production company, Intellectual Properties Worldwide, to develop films around these and other titles. And he has built up a sideline business producing bigscreen adaptations of the projects whose copyright claims he pursues. He has a producing credit on "Fantasy Island," a Sony project for Eddie Murphy, as well as "Sanford and Son."

Contact the Variety newsroom at news@variety.com.

WE RECOMMEND...

Zack Snyder to direct 'Superman'

Judge sentences McTiernan to year in prison

Tony Gilroy to direct 'Bourne 4'

CAA looks to diversify

Screen Gems tunes up 'Instruments'

Low turnout for 'Teach' bow

Powered by  newstogram

RELATED ARTICLES:

Art Alliance picks up 'Chops'

Paramount gets 'Happy'

U.K. directors forming org

Art Alliance picks up 'Chops'

72Prods. taps 'Combustion'

Fans protest TWC release

-- Advertisement --



STUDIO CANAL

WARMLY CONGRATULATES

JON FELTHEIMER

ON RECEIVING THE

PERSONALITY OF THE YEAR AWARD

AT MIPCOM 2010

**Read next article:** Art Alliance picks up 'Chops'  >



VARIETY
CONFERENCES

Film Marketing Summit
October 5-6, 2010
Hilton Los Angeles,CA

Entertainment & Technology Summit
October 18, 2010
The Loews in Santa Monica, CA

Future of Film Summit
November 9, 2010

**EXHIBIT S**
**203**

© Copyright 2010 RBI, a division of Reed Elsevier Inc.
Privacy Policy | Terms & Conditions | About Us | Advertise | Contact Us | Site Map | Help | Login

**Media:** LA 411 | New York 411 | Variety     **Construction:** Reed Construction Data     **Business Directory:** HotFrog

**EXHIBIT S**
**204**

*The New York Times* Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



March 20, 2010

# A Supersized Custody Battle Over Marvel Superheroes

**By BROOKS BARNES and MICHAEL CIEPLY**

LOS ANGELES

WHEN the Walt Disney Company agreed in August to pay $4 billion to acquire Marvel Entertainment, the comic book publisher and movie studio, it snared a company with a library that includes some of the world's best-known superheroes, including Spider-Man, the X-Men, the Incredible Hulk and the Fantastic Four.

The heirs of Jack Kirby, the legendary artist who co-created numerous Marvel mainstays, were also intrigued by the deal. Mr. Kirby's children had long harbored resentments about Marvel, believing they had been denied a share of the lush profits rolling out of the company's superheroes franchises.

They spent years preparing for a lawsuit by enlisting a Los Angeles copyright lawyer, Marc Toberoff, to represent them. When the Marvel deal was struck, Mr. Toberoff — who helped win a court ruling last year returning a share of Superman profits to heirs of one of that character's creators — sprang into action.

Pow! Wham! Another high-profile copyright fight broke out in Hollywood, and this one could be the broadest the industry has yet seen.

Last September in a prelude to a lawsuit, Mr. Toberoff — using a provision in copyright law that, under certain conditions, gives authors or their heirs the right to regain ownership of a product after a given number of years — sent 45 notices of copyright termination to Marvel, Disney and other studios. The notices expressed the family's intent to regain copyrights to some of Mr. Kirby's creations as early as 2014. By Mr. Toberoff's calculation, as much as 88 percent of Marvel's film earnings have been what he calls "Kirby related."

Marvel and Mr. Toberoff entered settlement talks. But on Jan. 8, Marvel surprised the Kirbys with a lawsuit seeking to invalidate the notices — stunning Mr. Toberoff, who figured Disney, having just written a huge check for Marvel, would settle. His foes thought otherwise.

"We took the initiative because we have a very strong legal position," said James W. Quinn, a

EXHIBIT T
205

Marvel lawyer. "There is no question that Kirby was a great artist. But that's not the law."

The family has since filed a lawsuit against Marvel and Disney. Aside from seeking dismissal of Marvel's lawsuit, Mr. Kirby's children accuse the company of depriving the Kirby estate of credit — and thus profits — from movies like "X-Men Origins: Wolverine," which took in $373 million at the global box office. Mr. Quinn dismissed this claim as frivolous.

"The family has nothing to show for all of this," said Mr. Toberoff, as he sipped hot chocolate in the lounge of the Peninsula Hotel here last month. "They just want what is fair."

The dispute is also emblematic of a much larger conflict between intellectual property lawyers and media companies that, in Mr. Toberoff's view, have made themselves vulnerable by building franchises atop old creations. So-called branded entertainment — anything based on superheroes, comic strips, TV cartoons or classic toys — may be easier to sell to audiences, but the intellectual property may also ultimately belong in full or in part to others.

"Any young lawyer starting out today could turn what he's doing into a real profit center," Paul Goldstein, who teaches intellectual-property law at Stanford's law school, said of Mr. Toberoff's specialty.

Mr. Goldstein said cases like the one involving Marvel are only the tip of an iceberg. A new wave of copyright termination actions is expected to affect the film, music and book industries as more works reach the 56-year threshold for ending older copyrights, or a shorter period for those created under a law that took effect in 1978.

Mr. Toberoff is tackling what could be one of the most significant rights cases in Hollywood history; it's certainly the biggest involving a superhero franchise. Unlike his continuing fight with Warner Brothers over Superman, Mr. Toberoff's rights-reclamation effort against Marvel involves dozens of stories and characters from about 240 comic books.

Complicating matters are licensing agreements Marvel has made over the years with rival studios for characters Mr. Kirby helped to create. Sony holds long-term movie rights to Spider-Man; 20th Century Fox has the equivalent for the X-Men and Fantastic Four. Universal Studios holds theme park rights to Spider-Man and the Incredible Hulk. And more films stemming from Mr. Kirby's work are coming: Marvel is spending hundreds of millions to bring Thor and the Avengers to theaters.

If the Kirbys succeed in their reclamation effort — and that's still an enormous *if* — they would be entitled to a share of profits from new works based on any of the copyrighted material.

And the four Kirby heirs (Lisa, Neal, Barbara and Susan) could acquire a nonexclusive right to initiate new projects based on characters partially created by their father, as long as they

**EXHIBIT T**
**206**

accounted to Marvel for its share in any of them.

"This is like the Superman case times five," said Mr. Toberoff, who predicts a three- to five-year court battle, including appeals, if the case proceeds.

MR. TOBEROFF, 54, could be a movie character himself. Alternately described by lawyers who have worked with him as a brilliant crusader for the little guy and a Svengali who asserts a high degree of control over clients, he has evolved from his early years as a producer of low-budget films into his job as a high-stakes litigator with multiple wins.

With the Kirbys, Mr. Toberoff will square off against a squadron of corporate lawyers that includes Mr. Quinn, whose most recent claim to fame was quashing Dan Rather's $70 million breach-of-contract suit against CBS. Disney is no stranger to intellectual property fights, having spent 18 years battling a rights-infringement case involving Winnie the Pooh and ultimately winning. The company pushed so hard for an extension of copyright terms in 1998 that the resulting law was derisively nicknamed the Mickey Mouse Protection Act.

There is nothing corporate about Mr. Toberoff. A graduate of Columbia's law school, he practiced briefly in New York before ditching the law profession to become what he describes as "a glorified go-fer" for the director Robert Altman. Mr. Toberoff got a quick education in Hollywood's rough-and-tumble ways in 1987 with "Zombie High," a horror picture he made on a minuscule budget with student labor.

"I'll cut your throat!" Mr. Toberoff recalls Aziz Ghazal, a partner on the project, screaming in one disagreement. Mr. Ghazal later became infamous, Mr. Toberoff noted, as the suspected killer of his own wife and daughter before he was found shot to death in an apparent suicide.

In 1994, Mr. Toberoff met an heir to the writer-producer Robert Pirosh. After looking through old papers with his new friend, he discovered that the Pirosh estate owned hitherto undetected movie rights to the TV series "Combat!" It was the first of about 10 old shows, including "Fantasy Island" and "My Favorite Martian," that Mr. Toberoff helped to recycle as movie projects.

A short leap later and he was back in legal practice, handling film rights cases. One included a suit in which he won an injunction blocking Warner from releasing a big-screen version of "The Dukes of Hazzard." A judge ruled in 2005 that Warner had failed to secure rights to an earlier movie, "Moonrunners," on which the new film was partly based. Warner settled for a reported $17.5 million.

Three years later, Mr. Toberoff won a ruling that allowed the heirs to Jerome Siegel, a co-creator of Superman, to reclaim their copyright from Warner and its DC Comics unit, though complex accounting issues in the case have yet to be resolved and the studio recently hired a new legal team. The heirs still haven't seen any money.

**EXHIBIT T**
**207**

Mr. Toberoff's aggressive style has been controversial at times. Edmée Reit, the widow of Seymour Reit, a co-creator of the character Casper the Friendly Ghost, said Mr. Toberoff called her soon after her husband died to propose a rights lawsuit.

"Seymour was literally not even buried yet when this man started calling," Mrs. Reit said in an interview. "I just felt this man was really an exploiter."

Mr. Toberoff sharply disagreed with Mrs. Reit's version of events. He said he contacted her at a time when she was expected to be a witness in a court case involving Casper and told her that a rights waiver her husband had signed before his death ran counter to the law.

"I thought this was wrong and informed Mrs. Reit of her rights in the process of investigating this situation in defense of my clients," Mr. Toberoff wrote in an e-mail message last week.

Lisa Kirby said Mr. Toberoff began representing her after they were introduced by a mutual friend some years ago. She says that she is braced for a long fight, and that she believes that her father, who died in 1994, would have wanted the copyrights terminated.

"In the end, my father became consumed with the fact that he was not properly compensated or recognized for his tremendous contributions to Marvel, and sadly, he died without either," Ms. Kirby wrote.

IN many ways, the Marvel case is simple. It turns on whether Mr. Kirby was working as a hired hand or whether he was producing material on his own that he then sold to publishers. The Copyright Revision Act of 1976, which opened the door to termination attempts, bans termination for people who delivered work at the "instance and expense" of an employer.

Mr. Toberoff and Marvel disagree on the circumstances under which Mr. Kirby created or co-created the trove of characters.

Pressed by Mr. Toberoff for a settlement, Marvel got fed up and sent the first volley with its January filing against the Kirby children in Federal District Court in Manhattan, seeking to end their efforts to regain long-term rights to the various characters. "Any contributions made by Kirby to the works at issue," the complaint reads, "were works made for hire."

Case closed, as far as Marvel's lawyers were concerned.

The Kirbys fired back on March 9, filing a lawsuit with the Federal District Court in Los Angeles that argues the opposite. From 1958 to 1963, the period of Mr. Kirby's prolific career that is under scrutiny, "Kirby worked solely on a freelance basis out of his own home, with his own instruments and materials, and thereby bore the financial risk of creating his copyrighted materials," according to the lawsuit.

**EXHIBIT T**
**208**

Mr. Toberoff is poised to argue that Mr. Kirby — and, by extension, others like him — were selling their work on a freelance basis, rather than serving as hired hands.

THE Kirby case is virtually certain to reopen the much-chewed-over history of Marvel to an examination even more intense than it has received from comic book fans. Many fans believe that Marvel and Stan Lee — who once wore varied professional hats, including editor in chief and publisher at Marvel — assigned too little credit to the contribution of an artist they like to call "King Kirby." Mr. Kirby has drawn lavish praise from such luminaries as the novelist Michael Chabon, who has described him as "the Shakespeare or Cervantes of comic books."

Mark Evanier, who worked as an assistant to Mr. Kirby and wrote the book "Kirby: King of Comics," said he expected to be called as a witness in the case and declined to comment. Mr. Evanier testified in support of the Jerome Siegel heirs in their suit against Warner.

Mr. Lee, now 87, will surely have his own version of past events and is almost certain to become a witness in the case if it goes to court. Mr. Lee — who notably fought and won a profit-participation lawsuit with Marvel a decade ago — declined to be interviewed for this article.

If Mr. Lee is called to testify about Mr. Kirby, his testimony could be complicated by an expanded business relationship with Disney. On Dec. 31, Disney announced that it had paid $2.5 million to increase an already existing stake in POW Entertainment (for Purveyors of Wonder), a company in which Mr. Lee is now a principal and the chief creative officer. POW develops new characters and stories for use in comic books, films, digital media and elsewhere. At the time, Disney said the investment was meant to obtain Mr. Lee's help in mining the Marvel library.

If Mr. Toberoff has his way, the picture painted in court will be one of chaos. He says that during Marvel's early days — when Mr. Kirby was creating his superheroes — the company was a shoestring operation that was barely afloat.

"There was no bullpen; there was a one-man office," he said, contending that an industrywide decency code put so much pressure on Marvel that few at the company were worrying about contractual niceties with artists like Mr. Kirby that would have tidied up all of the legal issues surrounding work arrangements. "It's easy to imagine that nobody at the time was thinking about work for hire."

**EXHIBIT T
209**

# The Hollywood Reporter.

July 24-26, 2009 — $5.99 (U.S.) $8.99 (Can) £5.50 (U.K.) €9.25 (EU) — **INTERNATIONAL WEEKEND EDITION** — THR.com

# 'Avatar' out of the blue

## Fox lets fans in on Cameron's magnum opus at Comic-Con

By Steven Zeitchik and Borys Kit

SAN DIEGO — James Cameron and Fox took the wraps off "Avatar," their pricey, visually splashy 3D movie, to a deeply enthusiastic if not over-the-top hysterical crowd Thursday at Comic-Con.

Cameron warmed up the sci-fi-minded audience by asking, "Who wants to go to another planet?" before rolling nearly 25 minutes of scenes from his otherworldly tale, set on the fictional planet of Pandorum.

A few expositional scenes showing main character Sam Worthington becoming an avatar (a blue-skinned human-alien hybrid) segued into a series of jungle battle scenes — many of them striking in color and scope — in which Worthington and co-star Zoe Saldana fight prehistoric-looking creatures.

The footage showed a vividly original world complete with its own language and ecology.

"Everybody always asks, 'Where have you been?' Well, that's
*continued on page 49*



### MORE COMIC-COVERAGE

▲ **SURPRISE GUEST**: Tim Burton brought his Mad Hatter, Johnny Depp, onstage during the "Alice in Wonderland" presentation. **PAGE 49**

▶ **FOCUS**: Studios and networks are taking their products to the people in San Diego. **PAGE 50**

### THR.COM/COMIC-CON

Showtime is creating animated webisodes for the fall that will serve as a "Dexter" prequel. **Michael C. Hall** will do the voice. Read about that and the happenings in Hall H throughout the weekend with THR's team of bloggers.





**THE FACE OF THE FUTURE**: Fox unspooled nearly 25 minutes of James Cameron's epic "Avatar" in San Diego.

# Warwick stays in tune with 'Idol'

By Nellie Andreeva

One by one, Fox's "American Idol" is securing its key players.

"Idol" executive producer/showrunner Ken Warwick has inked a three-year deal with the show's co-producer, FremantleMedia North America, to remain at the helm of television's top series. The pact, said to be well into the eight-figure range, is believed the richest for a reality showrunner.



Warwick

It comes on the heels of another three-year deal — a $45 million agreement inked recently by host Ryan Seacrest with "Idol" co-producer 19 Entertainment — that broke a money record for a reality host.

FremantleMedia declined comment on Warwick's deal.

Warwick has been on "Idol," created by Simon Fuller, since the show's first episode in 2000. He was co-showrunner for the first seven seasons alongside Nigel Lythgoe and became sole showrunner when Lythgoe left last summer.

During his first solo stint at
*continued on page 52*



0  71896 47619  4

EXHIBIT 8
210

**Power Lawyers**

special report

# Power of Attorneys

*In a down economy, a tenacious Hollywood lawyer is more important than ever. Here are 100 of the best in the biz.*

"It's really rough out there." That's a top talent attorney bemoaning the economic sea changes washing over every corner of Hollywood — yes, even the lawyers are feeling the pinch. And yet, as studios squeeze star salaries and the credit crunch slows the pace of deal activity, compiling The Hollywood Reporter's third annual list of the 100 most influential entertainment lawyers in America was no easy task. From high-stakes litigation like the battle between Warner Bros. and Fox over "Watchmen" to the year-long maneuvering that paired DreamWorks with India's Reliance Big Entertainment and Disney, the industry's most compelling dramas increasingly cast lawyers in the starring roles. To put together the list, we again solicited nominations from the community on our entertainment law blog (THREsq.com), then dove into our own research on the deals closed, the cases won and the clients signed. Some attorneys are such mainstays in the business that they've made the list each year, others are appearing for the first time based on recent performance. Only U.S.-based attorneys are eligible, and no full-time law professors or in-house studio or network lawyers are allowed — except one, Warner Bros. president of worldwide business affairs Steve Spira, who is this year's Raising the Bar Studio Lawyer Award honoree at today's Power Lawyers breakfast. To mix things up, we asked a few Power Lawyers veterans to give us some free legal advice. Read closely, this wisdom usually costs hundreds of dollars an hour. We consider this issue less a power list than a reference guide to 100 amazing entertainment attorneys. It is really rough out there. That's why you need a good lawyer.



— *Matthew Belloni*

Illustrations by
Chris Morris



THR.com   Full attorney profiles, coverage of today's Power Lawyers breakfast and a Web-only Q&A with NBC Universal antipiracy guru Rick Cotton at THREsq.com.

Power Lawyers
litigation/corporate

his idea for an Americanized version of the Eurovision Song Contest, winning a potentially influential decision allowing early dismissal of reality show lawsuits if the defendant presents good evidence of independent creation.

## Marc Toberoff
### Toberoff & Associates
Toberoff says Hollywood operates under the incorrect assumption that if a large company controls a successful entertainment franchise, it must have cleared all the rights for future use. "I have proven time and time again that's not always the case," he says. His biggest victory came when he represented the estate of comic book artist Joe Shuster in a battle to terminate Warner Bros.' copyright to Superman. He emerged victorious on that issue, though he lost a separate trial this month over the accounting repercussions of Shuster winning his share. Meanwhile, Toberoff recently filed a $20 million breach of contract suit on behalf of a charitable trust created by "Dukes of Hazzard" creator Gy Waldron over the sequel to the movie. If the case sounds familiar, Warner Bros. paid $14 million to settle a previous case over the first "Dukes" movie after Toberoff won an injunction against its release.

## Howard Weitzman
### Kinsella Weitzman Iser
### Kump & Aldisert
After 45 years in practice, Weitzman says he still loves "the challenge of solving problems." And there's plenty out there: Recent representations

### FREE ADVICE
## Martin Singer
Lavely & Singer

#### How do I keep my sex tape off the Internet?
Don't make one! But if you must, here are some tips on how to keep it private. The person who records the tape is the copyright owner. So you should be the camera-person and try to own or co-own the copyright because third-party distributors are less likely to touch a sex tape if there is a potential copyright claim. Even if you don't own the copyright, you also can assert claims for violation or your rights of privacy and publicity, both of which can lead to injunctions against distribution. Unless someone is on the tape telling you that the tape will be exploited, the release will violate your expectation of privacy. Plus, your name or image can't be used for commercial purposes without your consent, so you can stop the promotion of the tape if not the release itself. Finally, if you didn't know you were being taped, criminal charges might also be appropriate.

*Singer represents talent in high-stakes litigation against media companies and is currently handling three cases involving celebrity sex tapes.*

include Rande Gerber in litigation involving the Hard Rock Hotel in San Diego; Sharon Osbourne in a case brought against her by a "Rock of Love: Charm School" contestant; and a suit over an HBO Farrah Fawcett documentary. The former Universal exec vp operations also was brought in recently to handle disputes on behalf of the Michael Jackson estate.

### CORPORATE
›› The big deals haven't disappeared, they've just gotten tougher. And they require even tougher lawyers.

## Daniel Black
### Greenberg Traurig
Many probably wish Black hadn't done such a good job helping Heidi Montag and Spencer Pratt craft their growing cottage industry, but he treats Speidi Inc. the same as all his corporate clients. Black handles many of Microsoft's Hollywood deals and this year helped concert events powerhouse AEG craft its digital strategy. Next-generation technology has inspired him since an early visit to the World Fair, and the same sense of discovery applies to digital deal-making in an unsettled industry: "Because there's not an existing paradigm you can mirror," he says.

## P. John Burke
### Akin Gump Strauss Hauer & Feld
"It's kind of our sweet spot," Burke says of his specialty repping the money side of film finance deals. That money isn't flowing like it once was, but Burke is still handling Dune Capital Management's $600 million, 60-picture production and distribution deal with Fox,

and Dresdner Kleinwort's two $300 million slate financing arrangements for Spyglass Entertainment and Paramount. He also continues to oversee Comerica's $500 million credit facility for Summit Entertainment and Bank of America's $1.2 billion investment in Village Roadshow to co-finance films with Warner Bros.

## Joe Calabrese
### O'Melveny & Myers
The credit crisis doesn't scare Calabrese. "We've seen this before, and we're prepared for it," he says. Calabrese is fighting back with unique deals, like helping the Digital Cinema Implementation Partners in its $1 billion effort to digitize movie screens across North America. He's also behind the International Olympic Committee's $100 million deal with China Central Television, and he's helping Cineworld Group to double the movie theater chain's number of digital projectors. By the deal's completion, the U.K. company will be able to show 3D films to 40,000 customers at a time.

## Robert Darwell
### Sheppard Mullin
### Richter & Hampton
Darwell wanted to be an ambassador to France and even learned the language at the University of Paris. "But there's only two ways to get there," he says. "Either have a lifelong career in civil service, or wind up friends with the president. I have to work on the second one." Instead he has become a go-to lawyer for international film finance and production work on projects like "Milk" and "Che." He broke ground with a negative pickup deal for a video game adaptation and brokered remake rights for "Bienvenue Chez les Ch'tis" to Overbrook Entertainment. *Tres bien!*

## Nancy Derwin-Weiss new
### Wildman Harrold
The Wildman firm is making an aggressive push into Hollywood with talented pickups like Derwin-Weiss, a marketing law specialist and veteran of Paramount's digital division. Along with recently hired colleagues Alan Friel, Carole Handler, Ken Suddleson and Fred Bernstein, Derwin-Weiss is counseling such studio clients as CBS, MGM and Summit on how far they can take their campaigns. "Marketing folks want to push the envelope," she says. "Our job is to say, 'Here are the issues, here are the potential risks, if you want to take the risk you can.'" Next on Derwin-Weiss' plate is Summit's massive push for "Twilight" sequel "New Moon."

## John Frankenheimer
### Loeb & Loeb
Don't write off the music business just yet. "The financial community is looking more favorably at it," Frankenheimer says. Plus, the major labels are starting to get acquisitive. This year, he repped Imagem Music Group in a $250 million deal to acquire the Rodgers & Hammerstein catalog of musicals and songs, and he finished up Univision's sale of its music recording and publishing business to Universal Music Group for $153 million. Frankenheimer also reps several top acts, including Diana Ross, Vince Gill and Duncan Sheik.

## Josh Grode
### Liner Grode Stein Yankelevitz
### Sunshine Regenstreif & Taylor
The son of an entertainment lawyer (mom Susan has repped "The Simpsons" creator Matt Groening), Grode is carving a niche as a practical deal-closer for complex financings. He repped Union Bank and Comerica in an

EXHIBIT U
212



INTERNATIONAL WEEKEND EDITION

# The Holly   Reporter

July 16-18, 2010      $5.99 (U.S.)   $8.99 (Can)          £5.50 (U.K.)   €9.25 (EU)      THR.com

**POWER LAWYERS**

BEGINS AFTER PAGE 6

ON THE COVER: NINA SHAW



Bruce Ramer



Michael Donaldson

# POWER LAWYERS 2010

*Don't let the smiles fool you. These are Hollywood's 100 fiercest advocates*

PORTRAITS BY DAN BUSTA

**EXHIBIT V**
**214**

07.16.10

Case 2:10-cv-03633-ODW-RZ   Document 314-3   Filed 08/29/11   Page 68 of 71   Page ID #:20892



Linda Lichter



Martin Singer

# THE E-MAILS ARRIVE IN OUR INBOX EVERY COUPLE OF WEEKS.

Someone is desperately — *desperately!* — looking for a great Hollywood lawyer. Maybe it's an author fielding offers to turn her novel into a movie. Or a TV producer upset that a new reality show looks awfully similar to the concept he pitched a year ago. They invariably ask whether the editor of a blog devoted to entertainment law (THREsq.com) can offer a recommendation or two. Well, consider this issue to be one giant "reply all." For The Hollywood Reporter's fourth edition of Power Lawyers, we researched the biggest deals and lawsuits of the year in film, television and music to zero in on the 100 attorneys who are most influencing the entertainment business. Only outside, private practice attorneys are eligible (no in-house studio, network or music-label execs), nor do we include guild or agency lawyers, professors or non-U.S. attorneys. We've broken down the list into specialties (talent, litigation, corporate dealmaking and labor), hopefully creating a comprehensive resource filled only with great Hollywood lawyers. Still can't find one?  Please don't shoot us an e-mail.

— *Matthew Belloni*

# Settle That Case!

*Top showbiz mediators explain how to end disputes before they spill into court*



Stanton "Larry" Stein

"I start by asking: What's the endgame? Set their expectations in reality. In entertainment cases, instead of starting out with a mediation session (of both sides together), I have an early session with individuals. I do that to make initial contact with the principals and hopefully build up some capital that I can tap back into. We settle a lot of these cases by putting principals together at the end. When the goal posts get closer, real businesspeople want to end it."
— *Daniel Weinstein, JAMS*

"In Hollywood, these are not one-off disputes. The parties have either been in business for a long time or they're going to be in business in the future. In one case, the two sides were actually sitting at the table negotiating their next deal while they were resolving the current dispute."
— *James Mulholland, Entertainment Mediation Institute*

"Can we combine the settlement with some other venture? Like, if it's an actor, let's not just decide how much money to pay him, let's come up with another project that the two sides might want to do together. This is a settlement, but it's also an investment."
— *Joel Grossman, JAMS*

"There are some huge personalities in Hollywood. If you are familiar with the relationships and the history, you have a far better shot of settling the dispute."
— *Diane Wayne, JAMS*

"On an employment case between a network and a high-level manager involving allegations of age discrimination, a highly charged issue was whether the manager was 'out of touch' with current tastes. The only way to settle the case was to change the focus of the dispute to more mundane matters. By making it a business dispute rather than a question of competence, we were able to settle."
— *Robert Altman, ADR Services*

"Why would you want to have 12 total strangers who have no interest being there deciding your fate? A trial is like a mediation, except you have no input in the outcome."
— *Enrique Romero, ADR Services*

"In a copyright case, a concession of infringement was obtained in the morning, allowing us to focus on debatable damages issues."
— *John Zebrowski, ADR Services*

senting "Scream" producer Cathy Konrad in a $3 million claim against the Weinstein Co. over whether she was entitled to produce sequels to the franchise. And he's also representing Patty Glaser's law firm in pursuit of $3.3 million from Rod Stewart in unpaid fees for work on at least 19 matters over 20 years.

### Gail Migdal Title
*Katten Muchin Rosenman*
Title was working in the public defender's office when she stumbled upon entertainment law. Her first firm (Rosenfeld, Meyer & Susman) gave her a shot because they liked her courtroom experience. These days, Title is adept at being relentless and paying careful attention to details, especially for her star client, NBC Universal. Last month she won an important appeals court ruling in a case brought by two individuals who claimed they conceived the Syfy hit "Ghost Hunters." She's also recently handled profit participation and copyright claims over "Hercules," "Quincy, M.E." and "The Biggest Loser." "It's amazing that when I started out, I didn't even know what entertainment law was," she says.

### Marc Toberoff
*Toberoff & Associates*
The thorn in Hollywood's side dug in even deeper this year. In addition to representing heirs of the two creators of Superman in thus-far successful attempts to wrestle back key rights, Toberoff took aim at Marvel Entertainment on behalf of the estate of comics icon Jack Kirby, trying to

terminate copyrights and gain control to such creations as "Spider-Man" and "X-Men." Toberoff estimates that the Kirby characters represent 80% of Disney-owned Marvel's revenues. In May, Warner Bros. lobbed a bombshell complaint against Toberoff personally for pursuing a "scheme" that interfered with its contracts over "Superman." Toberoff promises revenge. "After we get rid of the frivolous tortious interference claims, I am going to go personally after Warner Bros. and the individuals involved, including (litigator and fellow Power Lawyer) Dan Petrocelli, and file a malicious prosecution lawsuit," he says. "I'll knock this out even if it takes me 10 years."

### Howard Weitzman
*Kinsella Weitzman Iser Kump & Aldisert*
Weitzman has a knack for getting involved in some wacky disputes, from representing Sharon Osbourne in court to dealing with the fallout from a Farrah Fawcett documentary. This year got even weirder (and more rewarding) when Weitzman became counsel for the Michael Jackson estate. It's his job to respond to all sorts of unusual claims, from the attempts by the late singer's mother to challenge the executors of the estate to the range of demands from creditors. Not a week goes by, he says, where someone isn't claiming to be Jackson's long-lost wife or child. One woman even filed a petition to adopt Jackson's real children. "It's amazing what these people think they can get away with," he says.

**EXHIBIT V**
**216**

07.16.10



-- Advertisement --

http://www.variety.com/article/VR1117925363?refcatid=1236

To print this page, select "PRINT" from the File Menu of your browser.

*Posted: Wed., Jun. 29, 2005, 9:00pm PT*

# Warners ponies up 'Hazzard' pay

### Studio settles with producer Clark for $17.5 mil

By CLAUDE BRODESSER

Chalk one up for the little guy.

Warner Bros. Pictures has agreed to pay a Georgia-based producer at least $17.5 million for infringing on the copyright to his even-more-obscure 1974 United Artists film, "Moonrunners," which became the basis of the hit Warners TV skein, "The Dukes of Hazzard."

The amount paid to the producer, Robert B. Clark, is more than what the studio spent in talent salaries on the new "Hazzard" pic.

However, Warners was faced with federal judge Gary Allen Feess' preliminary injunction, which would have canceled the Aug. 13 release of Warner's new "Dukes of Hazzard" feature and seen all copies of the $55 million Johnnie Knoxville-starrer impounded by federal marshals.

What's more, the film's DVD release would have been delayed indefinitely, and its $40 million theatrical marketing budget -- much of that spent on spot TV ads -- would have gone down the drain.

Marc Toberoff, the attorney who represented Clark in U.S. District Court, would only reiterate his previous statement of last week that "the parties have reached a settlement of all claims in the litigation," adding that "the terms of that settlement are confidential." (*Daily Variety*, July 23)

Scott Rowe, a spokesman for Warner Bros. Entertainment, said on Thursday afternoon that the studio declined to comment.

In winning a preliminary injunction, Toberoff demonstrated to the judge's satisfaction that Clark was likely to win at trial and would suffer irreparable harm if the movie opened. Irreparable harm is presumed in copyright infringement cases, based on a 1999 lawsuit by Sun Microsystems against Microsoft.

Now that a settlement has been reached, Warners will premiere the new "The Dukes of Hazzard" feature July 28 at the Mann Chinese Theater on Hollywood Boulevard.

Still unclear is whether Clark will be getting an invitation.

Contact the Variety newsroom at news@variety.com

Read the full article at:

**EXHIBIT W**
**217**

http://www.variety.com/article/VR1117925363?refcatid=1236

Like this article? Variety.com has over 150,000 articles, 40,000 reviews and 10,000 pages of charts.
Subscribe today!
http://www.variety.com/subscribe or call
(866) MY-VARIETY.

© 2010 Reed Business Information
Use of this Website is subject to Terms of Use. Privacy Policy

**EXHIBIT W**
**218**