# EXHIBIT H

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 4, 2011

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

**VIA MESSENGER & E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write to confirm our efforts to meet and confer with Marc Toberoff on open discovery issues following Dawn Peavy's deposition yesterday.

First, we discussed defendants' request to consolidate the Rule 30(a)(1) deposition of defendant Marc Toberoff and the Rule 30(b)(6) depositions of the corporate designees of defendants Pacific Pictures Corporation; IP Worldwide, LLC; and IPW, LLC.  Mr. Toberoff confirmed his intention to appear as the Rule 30(b)(6) designee of all three corporate defendants. DC clearly is entitled to separately depose Mr. Toberoff in his individual capacity and his Rule 30(b)(6) capacity as a representative for each company.  *See* FED. R. CIV. P. 30(b)(6) ("This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."). Defendants notably had no response to the plain language of Rule 30(b)(6) in their August 1, 2011, letter—or to the fact that the very case they rely on, *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, *2 (S.D.N.Y. Dec. 12, 2001), confirms that "the 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a *separate, independent seven-hour time limit*."  (Emphasis added.)

In an effort to avoid unnecessary motion practice, we offered to consolidate the Toberoff defendants' depositions to two, seven-hour days.  Mr. Toberoff refused, asserting that he will only appear for one, seven-hour day of deposition on behalf of all four defendants, because he

O'MELVENY & MYERS LLP

August 4, 2011 - Page 2

claims that Pacific Pictures, IP Worldwide, and IPW are "closely-held corporations" that are largely inactive—despite the fact that DC's complaint alleges that each of these defendants engaged in separate and distinct acts of misconduct.  Docket No. 49 ¶¶ 165-89.  Mr. Toberoff stated he has been deposed before, he knows all the questions we are going to ask, and that his counsel at the deposition (Mr. Kendall) will object less frequently than Mr. Toberoff has done in this case, and thus the seven hours would be adequate for all four defendants.

We asked Mr. Toberoff if defendants were willing to concede that all three companies are his alter egos and act as his agent.  He said defendants do not concede this.  We asked about other potential 30(b)(6) designees—*e.g.*, J. Todd Harris—but Mr. Toberoff refused to discuss the details of who the companies' employees, investors, and officers were, saying we would have to ask such questions at his deposition.

In a final effort toward compromise, we are willing to discuss scheduling one, extended day of deposition during which we will endeavor to complete our questioning of the four Toberoff defendants, with the understanding that if we are unable to do so, we will continue to a second day.  Let us know if you will agree to this compromise so we can discuss scheduling the deposition.

<u>Second</u>, we discussed defendants' failure to review for responsive documents the "various boxes" related to this case that Laura Siegel Larson testified she has in her possession, *e.g.*, July 22, 2011, Larson Tr. at 64, 70, 245, 267, 275, 277—which include documents that defendants previously represented were non-existent to the Court and DC.  Mr. Toberoff confirmed that Ms. Larson has documents that have never been reviewed, including documents formerly belonging to her mother, Joanne Siegel, but that have been in Mr. Larson's possession for months, and were in her possession when DC's recent discovery motions were litigated.  We asked Mr. Toberoff to commit to a date certain by which he would review Ms. Larson's files and produce or log any responsive documents, but he declined to do so, saying only that he would speak to Ms. Larson when she returns from vacation in two weeks.

When we pressed for further document productions or privilege logs concerning the other attorneys with whom the Siegels have admittedly communicated in recent years, you again declined to provide any date certain by which you would make this production.  Moreover, we note a disturbing pattern in defendants' production of communications with attorneys—while Ms. Larson produced her written communications with Gerry Spence (a lawyer whom defendants say her mother considered hiring), defendants refuse to produce the Siegels' communications with David Michaels.  Docket No. 210 at 11-12.  This is yet another selective waiver, and further grounds to compel the production of the Michaels letters.

Mr. Toberoff also refused to confirm the existence of Mr. Larson's response to Michael Siegel's May 13, 2003 letter—even though she testified that she was "sure" she responded to the May 13 letter, *id.* at 267, Mr. Toberoff "made suggestions of changes in the wording" of her response, *id.* at 279, and that the response may well have been sent on July 5, 2003, as recounted in the Toberoff Timeline, *id.* at 277.  Mr. Toberoff refused to address whether such a letter or

O'MELVENY & MYERS LLP
August 4, 2011 - Page 3

drafts of it existed in his files, whether Ms. Larson possessed a copy of it, or whether this document was among those defendants have listed on their privilege logs.  When we said her recent testimony clearly confirmed the existence of such a responsive letter, as raised in our previous motions, Mr. Toberoff suggested that Ms. Larson might have been referring to another letter of another date.  When we asked him when the letter she testified about was sent, if not in July, he refused to address the issue.  When we pointed out that his refusal to provide these details made it impossible to determine whether to file our motion as one to compel or one for reconsideration, he acknowledged this problem, but still refused to provide the necessary detail.

Nor would Mr. Toberoff confirm or deny the existence of the letter that Ms. Larson testified she "sent [Michael Siegel] on November 2", 2002, Tr. at 267, saying only that he reviewed "our files" and was "unable to find" such a letter.

Mr. Toberoff asserted that DC's motions seeking production of the July 5 and November 2 letters were denied—but failed to explain his representations in opposition to those motions that, for example,

- he "did perform a diligent search of our records, *all of our records*," for responsive documents, June 20, 2011 Hr'g Tr. at 38:23-39:1 (emphasis added);

- he "asked [Ms. Larson] whether she had a copy and to *research her records*," *id.* at 39:8-10 (emphasis added);

- "To the extent that relevant documents exist, they have either been produced or designated as privileged," Jan. 8, 2011 Letter from M. Toberoff to M. Kline at 3.

- he conducted "a diligent search" but could not locate "a supposed November 2, 2002 letter," Docket No. 267-1 at 4; and

- he "caused [his] office to re-check our relevant case files" for responsive documents, Docket No. 267-16 ¶ 4.

Finally, Mr. Toberoff argued generally that we had taken Ms. Larson's testimony out of context, but would not explain how or point to any testimony suggesting that DC had misread Ms. Larson's sworn statements.

We have reached an impasse on the production of Ms. Larson's letter responding to her brother's May 13, 2003 letter and related drafts, and will serve a motion on the subject shortly, unless you produce those documents this week.  Moreover, unless defendants commit to a date certain for producing and/or logging all responsive documents in Ms. Larson's possession, custody, and control—including her letters to Michael Siegel dated on or around July 5, 2003, and November 2, 2002—DC will move to compel on this issue, as well as the issue of the Siegels' correspondence with counsel.

EXHIBIT H
369

O'MELVENY & MYERS LLP

August 4, 2011 - Page 4

Third, we attempted to meet and confer on the deficiencies in defendants' responses to DC's revised requests for production. We clearly identified those deficiencies in our 30-page letter sent on July 7, 2011, requested a meet and confer on these issues in our July 19 letter, and reiterated that request in our July 29 letter—all of which are attached. Mr. Toberoff, however, refused to meet and confer, asserting—incorrectly—that DC had failed to timely request a meet and confer pursuant to Local Rule 37. DC will therefore proceed with its motion to compel, unless you agree to meet and confer on these issues sometime tomorrow.

Finally, we asked Mr. Toberoff why defendants had failed to produce several documents discussed during the depositions of Mr. Peary and Ms. Peavy, including unredacted versions of defendants' agreements with Ari Emanuel, Jean Peavy's will, and the two scripts concerning Joseph Shuster's life written by Mr. Peary. After discussing these documents at some length and why they should or should not be produced, Mr. Toberoff claimed that we had not met and conferred on the need to produce them, pursuant to Rule 37. Demand is hereby made to have such conference. Also, although we think DC's current document requests call for Ms. Peavy's will and Mr. Peary's scripts, please find enclosed additional requests for production seeking them specifically.

We reserve all rights.

Very truly yours,

Matthew T. Kline

cc:    Daniel M. Petrocelli, Esq.

Enclosures

EXHIBIT H
370

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

July 7, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:     _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write to follow up on our meet-and-confer discussions with Messrs. Toberoff and Adams concerning DC Comics' narrowed document requests.

DC served its document requests on Mr. Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC on December 10, 2010.  Defendants' January 24, 2011, objections and April 11, 2011, opposition to DC's motion to compel asserted that the parties should meet and confer in an effort to narrow DC's requests.  Magistrate Zarefsky's May 25, 2011, order instructed the parties to endeavor "to resolve the dispute short of court action," pursuant to Local Rule 37-2.1.  To this end, DC sent defendants a lengthy letter on June 1, 2011, that narrowed and clarified its December 2010 document requests to take into account defendants' objections.

Defendants' June 13, 2011, letter merely asserted blanket objections and did not specifically respond to any of DC's revised document requests.  During our meet-and-confer call later that day, Mr. Toberoff declined meaningfully to engage in the compromise process or propose alternative formulations for DC's document requests, saying, "No, that's not my job." While Messrs. Toberoff and Adams initially agreed to respond to DC's June 1 discovery requests by July 5 in accordance with Federal Rule 34, they later asserted that DC failed to adequately "accept" this agreement and refused to respond until July 15.  We disagreed with defendants' characterization but, in the interest of compromise, agreed to send the following letter by July 7

O'MELVENY & MYERS LLP
July 7, 2011 - Page 2

provided defendants agreed to provide responsive documents by July 15 rather than asserting blanket objections as they had in the past.  Defendants declined to commit to producing any documents on July 15, stating only that DC "is welcome to properly serve its new document requests pursuant to the Rules and defendants will duly respond pursuant to the Rules." Defendants' refusal meaningfully to participate in the meet-and-confer process they themselves proposed—which appears calculated to improperly delay discovery until after the August 8, 2011, deadline set by Judge Wright for DC to submit new oppositions to defendants' Rule 12 and SLAPP motions—is inconsistent with the Court's May 25 order and admonishment to counsel not "to be obstructive."  Docket No. 74.

In a final effort to avoid unnecessary motion practice, we have attempted below to crystallize the parties' respective positions on DC's revised document requests and, in some cases, to narrow the requests even further.  Note that in many instances, it was difficult to determine defendants' position based on the blanket nature of the objections asserted in their June 13 letter and reiterated during the meet-and-confer call that day.

## PART I

Many of defendants' objections are based solely on their position that the term "RELATING" in DC's requests is "very broadly defined" and "render[s] such requests overbroad."  We disagree, but in an effort to compromise, will adopt a modified version of the definition used in defendants' June 13 letter:  to "refer to or bear on."

Defendants also rely on general objections that DC's requests are overbroad, burdensome, and irrelevant.  The narrowed scope and any relevance objections are addressed individually below.

As to the three categories of objections identified in defendants' June 13 letter, DC responds:

**Objection Category A**.  Defendants contend that these requests[1] merely repeat requests rejected by Magistrate Zarefsky as overbroad.  However, DC modified each of these requests by replacing the "RELATING" language to which defendants objected with narrower language making clear that DC seeks documents "identifying" the information sought, not "everything there is about companies with which Mr. Toberoff has been associated."

On the June 13 call, although DC had already narrowed its requests, we asked for defendants' counterproposals regarding this category of documents.  Mr. Toberoff refused to provide any.

---

[1] Toberoff Request Nos. 56-58; PPC Request Nos. 31, 33; IPWW Request Nos. 32-34; IPW Request Nos. 27, 29.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 3

**Objection Category B**.  Requests placed in this category[2] break down into two groups. First, Toberoff Request Nos. 27 and 28 were misquoted by defendants in their initial objections. Even after we pointed this out in our June 1 letter and on the June 13 call, defendants stated in their June 14 letter that their "responses, including the objections, stand," despite the much narrower scope of the actual requests compared to those misquoted by defendants.

The second group includes requests reasserted by DC because they were formulated in the same manner as Toberoff Request No. 34, to which defendants originally agreed to produce responsive documents.  On the June 13 call, Mr. Toberoff and Mr. Adams contended that Toberoff Request No. 34, which relates to the 2001 Pacific Pictures agreement, was more limited than requests related to other agreements because that 2001 agreement was subsequently amended and canceled.  After we pointed out that the same logic should apply to DC's requests concerning the 2003 Pacific Pictures agreement (Toberoff Request No. 40) and 2002 IP Worldwide agreement (Toberoff Request No. 52), Mr. Adams and Mr. Toberoff abandoned this rationale in their June 14 letter, stating that the original response to Toberoff Request No. 34 should not have agreed to produce documents.

In any event, defendants now assert that, assuming the parties agree to a definition of "RELATING," defendants have produced all "non-privileged responsive documents sought by these requests."  Pursuant to the proposal regarding the definition of "RELATING" noted above, DC is entitled to a clear statement that defendants have searched their files for all documents in the requests listed in Objection Category B, and that no such documents exist that have not been previously produced.  *See Ibanez v. Miller*, 2009 WL 1706665, at *4 (E.D. Cal. June 17, 2009) (ordering verification that all responsive documents had been produced since defendants produced no responsive documents); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *8 (N.D. Cal. June 3, 2011) (noting previous order to verify that all responsive documents had been produced and imposing evidentiary sanctions for untimely production); *Rodriguez v. Niagara Cleaning Servs., Inc.*, 2010 WL 1655519, at *2-3 (S.D. Fla. Apr. 23, 2010) (ordering verification that all responsive documents had been produced because particulars of search for documents were not provided).  To the extent they are not moot, any remaining relevance objections are addressed individually below.

**Objection Category C**.  Defendants object generally that these requests[3] propound "new discovery."  But each of the requests in this category are narrowed versions of DC's prior requests that take into account defendants' objections.[4]  In any event, defendants have treated all

---

[2] Toberoff Request Nos. 27-28, 40-41, 44, 52; PPC Request Nos. 24, 27-28; IPWW Request Nos. 24, 27.

[3] Toberoff Request Nos. 5, 9, 12-15, 18, 29-32, 42, 46, 48, 53-54; PPC Request Nos. 5, 15, 19, 23, 25, 29-30; IPWW Request Nos. 5, 15, 18, 25, 28-30; IPW Request Nos. 24-26.

[4] *E.g.*, Toberoff Request No. 5 (limiting request for all documents related to Superman and/or Superboy to those documents related to the Siegel Heirs' or Shuster Heirs' interest in those characters); PPC Request No. 19 (requesting documents related only to company's "introduction to" Shuster Heirs, not "involvement with" them); IPWW Request No. 30 (limiting request to

O'MELVENY & MYERS LLP
July 7, 2011 - Page 4

of DC's narrowed and reformulated requests as "new discovery"—unilaterally giving themselves 30 days to respond to DC's narrowed requests before (a) informing DC of defendants' objections and responses to the requests, or (b) much less producing *any* documents.

**<u>Requests for Production to Defendant Marc Toberoff</u>**

<u>Request No. 5</u>

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS' claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS' claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  This request has been narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs' interest in Superman and Superboy, not all documents relating to those characters.  Such documents are clearly relevant to DC's claims, which, *inter alia*, concern the Shusters' effort to recapture Superman rights and misconduct in connection with the Siegels' attempt to recapture Superman and Superboy rights.

<u>Request No. 9</u>

- Original:  All DOCUMENTS RELATING to any of the DEFENDANTS OBTAINED by YOU prior to YOUR initial contact with any of them.

- Proposed 9(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS OBTAINED by YOU prior to YOUR initial contact with each of them.

- Proposed 9(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS OBTAINED by YOU prior to YOUR initial contact with each of them.

Defendants place these requests in Objection Category C.  This request has been narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs only, not all defendants, and may include news articles, correspondence, draft filings, or numerous other documents.  Such documents are clearly relevant to DC's claims involving, *inter alia*, acts of interference by Mr. Toberoff and his companies.  Moreover, the relationship between the Toberoff defendants and the Siegel and Shuster heirs is a key factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated, and DC is entitled to discovery relating to that question.  Mr. Toberoff has stated in deposition that he followed via the

documents "identifying" the current corporate status of IP Worldwide and removing reference to "RELATING," to which defendants have objected).

O'MELVENY & MYERS LLP
July 7, 2011 - Page 5

internet the progress of the Siegel heirs' termination efforts, and these requests seek any similar documents relating to the Siegel heirs and/or Shuster heirs.

Request No. 12

- Original:  All DOCUMENTS RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought.  DC is not seeking pursuant to this request Jerry Siegel or Joe Shuster's agreements with DC or its predecessors, but only the named defendants' documents, which may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Mark Peary admitted at his June 29 deposition, for example, that "[t]here were drafts" of the 2001 agreement he signed with Pacific Pictures Corporation.  Peary Dep. Tr. 99:6-10.  Such documents are clearly relevant to DC's Third and Sixth claims, which relate to, *inter alia*, unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 13

- Original:  All DOCUMENTS RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 14

- Original:  All DOCUMENTS RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 6

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 15

- Original:  All DOCUMENTS RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 18

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought.  DC seeks any documents relating to valuations by defendants, their counsel, or agents to valuate Superman as a property or defendants' purported Superman interest, and may include reports from accountants or other experts, correspondence seeking such reports, or numerous other documents.  Such documents are clearly relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  They also potentially relate to determining the role Mr. Toberoff and his companies have played in representing the Siegel heirs and Shuster heirs, which is a key factual issue yet to be determined in this case.

Request No. 27

- Original:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 7

Defendants place this request in Objection Category B. This request relates only to Mr. Toberoff's introduction to the Siegel heirs, not the broader "involvement with" them quoted by defendants. These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents. Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims. They are also relevant to DC's Sixth claim, which, *inter alia*, relates to improper agreements defendants entered into prohibiting them from dealing with DC. Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm. The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 28

- Original: All DOCUMENTS RELATING to YOUR introduction to the SHUSTER HEIRS.

Defendants place this request in Objection Category B. This request relates only to Mr. Toberoff's introduction to the Shuster heirs, not the broader "involvement with" them quoted by defendants. These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents. Such documents are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts. They are also relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose. Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm. The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 29

- Original: All DOCUMENTS RELATING to the transfer of any property or interest between or among YOU and any DEFENDANT.

- Proposed: All DOCUMENTS RELATING to the transfer of any property or interest in SUPERMAN and/or SUPERBOY between or among YOU and any DEFENDANT.

Defendants place this request in Objection Category C. This request has been narrowed to make clear that it relates only to interests in Superman and/or Superboy, not unrelated transfers between or among Mr. Toberoff and his companies. These documents may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other

O'MELVENY & MYERS LLP
July 7, 2011 - Page 8

documents. Such documents are relevant to the same claims and for the same reasons as described in Toberoff Request No. 12.

Request No. 30

- Original: All COMMUNICATIONS RELATING to any disclosure of a potential or actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed: All COMMUNICATIONS RELATING to any disclosure of a potential or actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS.

Defendants place this request in Objection Category C. This request has been narrowed to make clear that it relates only to disclosures among Mr. Toberoff, the Siegel heirs, and Shuster heirs, not all defendants. Such documents are clearly relevant to DC's Fourth and Fifth claims, which, *inter alia*, relate to acts of interference with DC's rights by Mr. Toberoff and his companies. Those claims also implicate the nature of Mr. Toberoff's relationship with the Siegel heirs and Shuster heirs. The requested documents are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC. And while Mr. Toberoff mentioned during the June 13 call that he was not sure whether the Siegel heirs or Shuster heirs had outside counsel advising them before entering into agreements with Mr. Toberoff and his companies, California law requires that an attorney inform in writing one with whom he is entering into a business transaction of conflicts and give that person the opportunity to seek independent counsel.

Request No. 31

- Original: All DOCUMENTS RELATING to any waiver or acknowledgement of a potential or actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed: All DOCUMENTS RELATING to any waiver or acknowledgement of a potential or actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS.

Defendants place this request in Objection Category C. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 30. Mr. Peary admitted at his June 29 deposition, for example, that he, the Siegel heirs, and Mr. Toberoff all signed a conflict of interest waiver in 2010, yet none has been produced. Defendants may claim that this document is listed on a privilege log, but DC cannot locate such a document—one more example of how the opacity of defendants' privilege logs prevents DC or the Court from assessing defendants' assertions of privilege. In any event, these documents are not privileged and should be produced immediately. *See E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D. Mo. May 10, 2007) ("The production of conflict memoranda, new matter forms, and correspondence regarding conflicts is not

O'MELVENY & MYERS LLP
July 7, 2011 - Page 9

protected by the attorney-client privilege or work product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004) (ordering production of conflict of interest waiver).

<u>Request No. 32</u>

- Original:  All DOCUMENTS RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual entity RELATING to any DEFENDANT.

- Proposed:  All DOCUMENTS created during or since 2000 RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual or entity RELATING to any purported interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought and now makes clear that it seeks only documents relating to Superman and/or Superboy, not all alliances by Mr. Toberoff, and may include agreements, drafts of agreements, correspondence discussing potentially-aligned business interest, or numerous other documents.  Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  Any partnerships or strategic alliances, actual or potential, are therefore relevant to potential discussions regarding the value of the heirs' rights.  Additionally, Mr. Toberoff has made representations regarding his efforts to market the heirs' rights, and DC is entitled to investigate them through the discovery process.

<u>Request No. 40</u>

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 27, 2003 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  Documents sought by this request, including drafts of agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents, are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts as well as DC's interference claims.  The documents sought are, in addition, relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, acts of interference by Mr. Toberoff (the businessman) and his companies, as well as efforts by the defendants to market the Shuster heirs' purported Superman rights and any negotiations or agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the October 27, 2003, agreement makes clear that Pacific Pictures is not a law firm.  The nature of this relationship—and defendants' claims

O'MELVENY & MYERS LLP
July 7, 2011 - Page 10

regarding it—are factual issues that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 41

- Original:  All DOCUMENTS RELATING to the letter dated September 10, 2004 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 40.

Request No. 42

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks.

- Proposed 42(a):  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SIEGEL HEIRS.

- Proposed 42(b):  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SHUSTER HEIRS.

Defendants place these requests in Objection Category C.  These requests now make clear that they seek only documents relating to communications regarding the Siegel heirs and/or Shuster heirs, not all communications Mr. Toberoff may have had with Mr. Marks, and may include phone records, calendar logs, correspondence setting up meetings, communicated offers, drafts of agreements, or numerous other documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks.  Regardless of defendants' position on the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks.  And Mr. Toberoff has described at deposition other conversations he had with Mr. Marks related to the Siegel heirs, all of which DC has the right to investigate.

Request No. 44

- Original:  All DOCUMENTS RELATING to the letter dated August 9, 2002 from Kevin Marks to Joanne and/or Laura Siegel.

Defendants place this request in Objection Category B.  Documents sought by this request, including phone records, calendar logs, correspondence evidencing negotiations, communicated offers, drafts of agreements, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks.  Regardless of defendants' position on

O'MELVENY & MYERS LLP
July 7, 2011 - Page 11

the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks, including one subsequent to an August 8, 2002, telephone call including Mr. Marks and Mr. Toberoff.  DC has the right to investigate the claims in the Timeline, especially in light of the Court's May 25 order holding that defendants waived privilege over the Timeline documents provided to the U.S. Attorney's Office.

Request No. 46

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel RELATING to the rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel or his representatives RELATING to the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request now makes clear that it seeks only documents relating to communications regarding the Siegel heirs' purported interest in Superman and/or Superboy, not all communications Mr. Toberoff may have had with Mr. Siegel or his representatives.  Such documents, including valuations, drafts of agreements, correspondence evidencing negotiations, communicated offers, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs.  The proceedings in the Northern District of Ohio confirm that defendants did not share a common interest with Mr. Siegel or his representatives while Mr. Siegel was alive, and all such documents should be produced.

Request No. 48

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between or among Laura Siegel Larson and Michael Siegel.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between Joanne Siegel and/or Laura Siegel Larson, on one hand, and Michael Siegel or his representatives on the other hand.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 46.

Request No. 52

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002 that YOU signed on behalf of DEFENDANT IP Worldwide, LLC, and any revisions, modifications, or adjustments thereto.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 12

Defendants place this request in Objection Category B. Documents sought by this request include agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents. Such documents are relevant to the same claims and for the same reasons as those sought in Toberoff Request No. 27.

Request No. 53

- Original: ALL DOCUMENTS RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term: Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

- Proposed: All DOCUMENTS created from 1995 to the present RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term: Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

Defendants place this request in Objection Category C. This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, or numerous other documents. DC is not seeking pursuant to this request any Superboy documents dating back to the character's first appearance, merely documents related to the Superboy termination notice. Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC. The requested documents are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims.

Request No. 54

- Original: All DOCUMENTS RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed: All DOCUMENTS created from 2001 to the present RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

Defendants place this request in Objection Category C. This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, correspondence stating the reason for the failure of the Shuster heirs to seek separate termination of Superboy, or numerous other documents. DC is not seeking pursuant to this request any Superman documents dating back to the character's first appearance, merely documents related to the Superman

O'MELVENY & MYERS LLP
July 7, 2011 - Page 13

termination notice.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC.  Unlike the Siegel heirs' initial termination notice, the Shuster heirs' notice did not include any Superboy works.  The requested documents are also relevant to DC's Fourth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the 1992 agreement signed by Jean Peavy and Frank Shuster.

Request No. 56

- Original:  All DOCUMENTS RELATING to your role and ownership interest in Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 56(a):  All DOCUMENTS identifying your past, present, and/or future role or position in Pacific Pictures Corporation.

- Proposed 56(b):  All DOCUMENTS identifying your past and/or present ownership interest in Pacific Pictures Corporation.

- Proposed 56(c):  All DOCUMENTS involved in the formation of Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, filings, business plans.

- Proposed 56(d):  All DOCUMENTS evidencing Pacific Pictures Corporation's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of Pacific Pictures, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 57

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IP Worldwide LLC, including, articles of organization, operating agreements, minutes,

EXHIBIT H
383

O'MELVENY & MYERS LLP
July 7, 2011 - Page 14

capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 57(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IP Worldwide, LLC.

- Proposed 57(b):  All DOCUMENTS identifying your past and/or present ownership interest in IP Worldwide, LLC.

- Proposed 57(c):  All DOCUMENTS involved in the formation of IP Worldwide, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 57(d):  All DOCUMENTS evidencing IP Worldwide, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IP Worldwide.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.  They are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs.  Defendants have asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 58

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IPW, LLC, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 58(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IPW, LLC.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 15

- Proposed 58(b):  All DOCUMENTS identifying your past and/or present ownership interest in IPW, LLC.

- Proposed 58(c):  All DOCUMENTS involved in the formation of IPW, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 58(d):  All DOCUMENTS evidencing IPW, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IPW, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  We are entitled to see all documents effectuating and related to that transfer.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.

## Requests for Production to Defendant Pacific Pictures Corporation

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS' claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS' claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 16

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 18.

Request No. 19

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement with the SHUSTER HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SHUSTER HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to Pacific Pictures' introduction to the Shuster heirs, not the broader "involvement with" them.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 28.

Request No. 23

- Original:  All DOCUMENTS RELATING to YOUR past and current ownership and management structure, including operating agreements, by-laws, capitalization schedules, capital accounts, shares, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying YOUR past and current ownership and management structure, including operating agreements, by-laws, capitalization schedules, capital accounts, shares, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 56.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B.  Because the document described here appears to have created IP Worldwide, documents sought by this request, including drafts of agreements, correspondence evidencing negotiations, correspondence stating the purpose of the document described, amending agreements or correspondence, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs while DC and the

EXHIBIT H
386

O'MELVENY & MYERS LLP
July 7, 2011 - Page 17

Siegel heirs were negotiating a global settlement of the Siegel heirs' claims. Defendants have
also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their
relationship, while the only agreement under which they operated at that time was through IP
Worldwide, which is not a law firm. The nature of this relationship is a factual issue that must
be explored through discovery before defendants' Rule 12 and SLAPP motions can be
adjudicated.

Request No. 25

- Original: All DOCUMENTS RELATING to any contributions by YOU to the IP
  Worldwide joint venture.

- Proposed: All DOCUMENTS identifying any contributions by YOU to the IP
  Worldwide joint venture.

This request removes the "RELATING" language characterized by defendants as
overbroad and substitutes "identifying." Through this request, DC seeks all documents
identifying Pacific Pictures' contributions to IP Worldwide, another of Mr. Toberoff's
companies, and may include agreements, drafts of agreements, correspondence evidencing
negotiations, amending agreements or correspondence, or numerous other documents. Such
documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the
validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails
because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer
of 50% of their purported Superman rights to Pacific Pictures. Documents previously produced
show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide,
presumably including the Shuster heirs' purported Superman interest. Regardless of defendants'
current position on this issue, DC seeks any documents relating to it. Moreover, the extent to
which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue
that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 27

- Original: All DOCUMENTS RELATING to the letter agreement dated October 27, 2003
  that YOU entered into with the SHUSTER HEIRS.

Defendants place this request in Objection Category B. DC seeks the same types of
documents—relevant to the same claims and for the same reasons—as those sought in Toberoff
Request No. 40.

Request No. 28

- Original: All DOCUMENTS RELATING to the letter dated September 10, 2004 that
  YOU signed with the SHUSTER HEIRS.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 18

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as those sought in Toberoff Request No. 40.

Request No. 29

- Original:  All DOCUMENTS RELATING to the formation of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS involved in the formation of PACIFIC PICTURES, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of Pacific Pictures' formation documents.  Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  DC is entitled to test defendants' representation through the discovery process.

Request No. 30

- Original:  All DOCUMENTS RELATING to the current corporate status of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying the current corporate status of PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of Pacific Pictures.  Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 19

Request No. 31

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any business plans of PACIFIC PICTURES, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by Pacific Pictures (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

Request No. 33

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by Pacific Pictures of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

**Requests for Production to Defendant IP Worldwide, LLC**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 20

Defendants place these requests in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 18.

Request No. 18

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement with the SIEGEL HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to IP Worldwide's introduction to the Siegel heirs, not the broader "involvement with" them.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 27.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 24.

Request No. 25

- Original:  All DOCUMENTS RELATING to contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 21

- Proposed:  All DOCUMENTS identifying contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 25.

Request No. 27

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002—and any revisions, modifications, or adjustments thereto—that IP WORLDWIDE signed with the SIEGEL HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 52.

Request No. 28

- Original:  All DOCUMENTS RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed:  All DOCUMENTS created from 2001 to the present RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

This request narrows the timeframe of documents sought.  Through this request, DC seeks all documents relating to the identification of IP Worldwide in the Shuster heirs' termination notice.  Such documents, including correspondence or other documents evidencing work IP Worldwide performed for the Shuster heirs, correspondence describing the purpose of the identification of IP Worldwide in the document described, or numerous other documents, are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  To our knowledge, defendants have produced no documents identifying any work that IP Worldwide did for the Shuster heirs, but documents previously produced do show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff (the businessman) and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 22

Request No. 29

- Original:  All DOCUMENTS RELATING to the formation of IP WORLDWIDE.

- Proposed:  All DOCUMENTS involved in the formation of IP WORLDWIDE, including, articles of organization, operating agreements, minutes, filings, business plans.

    This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of IP Worldwide's formation documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference by Mr. Toberoff (the businessman) and his companies with DC's rights with relation to the Siegel heirs.  Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  Moreover, these documents relate to DC's First claim, which seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representations through the discovery process.

Request No. 30

- Original:  All DOCUMENTS RELATING to the current corporate status of IP WORLDWIDE.

- Proposed:  All DOCUMENTS identifying the current corporate status of IP WORLDWIDE.

    This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of IP Worldwide.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 23

Request No. 32

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IP WORLDWIDE.

- Proposed:  All DOCUMENTS identifying any business plans of IP WORLDWIDE, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IP Worldwide (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.  These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 33

- Original:  All DOCUMENTS RELATING to any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

- Proposed:  All DOCUMENTS identifying any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

Request No. 34

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 24

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by IP Worldwide of interests related to Superman and/or Superboy.  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

## Requests for Production to Defendant IPW, LLC

Request No. 24

- Original:  All DOCUMENTS RELATING to the formation of IPW.

- Proposed:  All DOCUMENTS involved in the formation of IPW, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of IPW's formation documents.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representations through the discovery process.

Request No. 25

- Original:  All DOCUMENTS RELATING to the current corporate status of IPW.

- Proposed:  All DOCUMENTS identifying the current corporate status of IPW.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of IPW.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 25

Request No. 26

- Original:  All DOCUMENTS RELATING to the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the ownership and management structure of IPW, not every transaction in which it ever engaged.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

Request No. 27

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IPW.

- Proposed:  All DOCUMENTS identifying any business plans of IPW, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IPW (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.  These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 29

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IPW.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IPW.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 26

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying." Through this request, DC seeks documents identifying any transfers by IPW of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents. Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

## PART II

As set forth in our June 1 letter, there are five categories of document requests for which defendants have produced no or almost no documents. Defendants have sidestepped or ignored entirely DC's requests for clarification concerning these documents.

### A.    Agreements Between or Among Defendants

<u>Drafts and Correspondence.</u>  Despite the many business agreements between and among defendants, you have yet to produce *any* drafts of those agreements or written communications addressing them. To take just one example, the 2001 Pacific Pictures agreement sets forth a detailed explanation of the parties' rights and obligations and provides that "[t]he parties have *mutually participated in the negotiation and drafting* of this Agreement." (Emphasis added.) Mr. Peary confirmed that drafts of that agreement do in fact exist:

> Mr. Petrocelli: Okay. The agreement that you did sign which I'll show you in a bit [the 2001 Pacific Pictures agreement], were there drafts of that that went back and forth as you recall or did you get a document, sign it, and return it?

> Mr. Peary: There were drafts.

Peary Dep. Tr. 99:6-10. The 2003 Pacific Pictures agreement, in which the Shuster heirs suddenly and inexplicably disclaimed any interest in Superboy, contains an identical provision. And in 2004, Mr. Toberoff (the businessman) sent the Shuster heirs a letter "confirm[ing]" that the 2001 and 2003 agreements "have been cancelled"—with no explanation of how, when, or why. The drafts disclosed by Mr. Peary have not been produced, nor have any others.

During our June 13 call, Mr. Toberoff (falsely) represented that there are no drafts of these (or any other) agreements and that he could not locate any relevant correspondence. He suggested that such correspondence may have been destroyed as a result of his 2007 house fire. Mr. Toberoff did not clarify whether additional copies of such correspondence exist in electronic form, in the Siegel or Shuster heirs' files, in his law office's files, or in his businesses' files. Moreover, such documents should have been produced in *Siegel* at the same time as the agreements themselves in 2006—well before the 2007 fire. *See, e.g.*, Siegel Request No. 63 ("All Writings concerning the Shuster Representatives, including but not limited to any communication or agreements between Plaintiffs and any of the Shuster Representatives."). In light of Mr. Peary's testimony, defendants should immediately produce all drafts of the 2001 Pacific Pictures agreement, as well as drafts of all other business agreements between and among

O'MELVENY & MYERS LLP
July 7, 2011 - Page 27

defendants.  If in fact no drafts or correspondence regarding these agreements exist (aside from
those disclosed by Mr. Peary), DC is entitled to a clear and unequivocal statement from
defendants to this effect.

Conflict Disclosures and Waivers.  Defendants' June 13 letter still did not address
whether there are any disclosures, waivers, or similar documents addressing the conflict of
interest between Mr. Toberoff and the Siegel and Shuster heirs, as required by California law.
*E.g.*, *Fair v. Bakhtiari*, 2011 WL 1991999 (Cal. Ct. App. May 24, 2011) (requiring attorney to
disclose, and clients to waive, conflicts of interest in writing).  Mr. Peary, however, admitted
during his June 29 deposition that at least one such document—entered into in 2010 and signed
by the Siegel heirs, Mr. Toberoff, and him—does exist.  Peary Dep. Tr. 86:2-18.  DC is entitled
to discover this document and any other conflict disclosures or waivers, including advice to seek
outside counsel.  *E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D.
Mo. May 10, 2007) ("The production of conflict memoranda, new matter forms, and
correspondence regarding conflicts is not protected by the attorney-client privilege or work
product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004)
(ordering production of conflict of interest waiver).  During our June 13 call, I expressly asked
Mr. Toberoff whether the heirs consulted with independent counsel before entering into business
agreements with his companies, and he responded:  "I don't know."

**B.      Toberoff's Ownership Interest**

Despite the objection in Mr. Toberoff's June 13 letter, there is nothing
"incomprehensible" about DC's position that defendants are required to produce documents
concerning the Toberoff defendants' ownership interest in the Siegels' or Shusters' putative
copyright termination rights.  Pursuant to the 2001 and 2003 Pacific Pictures agreements, the
Shusters transferred their Superman rights to the joint venture and agreed to divide these rights
with Pacific Pictures 50-50 if the joint venture was "terminated for any reason."  A 2004 letter
purported to "cancel" both Pacific Pictures agreements.  While defendants now claim that the
Pacific Pictures agreements were "void *ab initio*" under the Copyright Act, there are no
documents addressing what happened to the outstanding half of the Shusters' copyright interests.
DC is entitled to such documents to the extent they exist.

**C.      Marketing of Purported Superman Rights**

The Toberoff defendants have repeatedly represented—to DC, the Siegels, the Shusters,
and to the public—that there are scores of potential investors interested in buying the Siegel and
Shuster heirs' putative Superman rights and that they have endeavored to market those rights.
Defendants have only produced two pieces of evidence to back this up:  a parking pass to Fox
and an e-mail exchange with Paramount.  We asked Mr. Toberoff on our June 13 call whether
this was the totality of documents regarding his efforts to market the Superman rights, and he
responded that defendants have produced *all* such documents—there are no other
communications, calendar entries, scheduling e-mails, or similar documents.  We asked
Mr. Toberoff whether he had communicated with any other actual or potential investor, as he

O'MELVENY & MYERS LLP
July 7, 2011 - Page 28

previously claimed, but he refused to respond and advised that DC should serve interrogatories on the subject, which we did on July 1, 2011.

### D.    Toberoff-Related Business Entities

While we disagree with defendants' position, we have substantially narrowed these requests, as described above (PPC Request No. 31, IP Worldwide Request No. 32, IPW Request No. 27).

## PART III

There are many gaps in defendants' production beyond the five categories of documents identified in our June 1 letter, including a conspicuous absence of documents concerning Ari Emanuel, David Michaels, and the unnamed "billionaire investor." DC intends to raise these deficiencies in a motion before the Magistrate unless defendants produce these documents or explain their absence.

### A.    Ari Emanuel Documents

Magistrate Zarefsky ordered defendants to produce documents all documents involving Ari Emanuel "that pertain to Superman, Superboy, the Siegels or the Shusters." Docket No. 262 at 5. On June 17, defendants produced a total of *seven pages* consisting of six non-substantive e-mails from Mr. Toberoff to Mr. Emanuel, most of which were merely forwarding news reports related to Superman.

In 2002, Mr. Toberoff formed the IP Worldwide joint venture with Mr. Emanuel for the sole purpose of exploiting the Siegels' putative Superman rights. Despite this nearly ten-year partnership, defendants produced *no* substantive communications between Messrs. Toberoff and Emanuel—for example, drafts of the Toberoff-Emanuel agreement or IP Worldwide-Siegel agreement, correspondence regarding efforts to exploit the Siegels' Superman rights, documents addressing the supposed expiration of the IP Worldwide-Siegel agreement in 2005 and subsequent assignment of IP Worldwide's rights to IPW, e-mails from Mr. Emanuel responding to Mr. Toberoff's six e-mails, or any other communication from Mr. Emanuel.

Moreover, during our meet-and-confer exchanges, Ms. Brill represented that defendants were withholding numerous Ari Emanuel documents—far more than the seven pages defendants ultimately produced. Ms. Brill's February 2011 correspondence referred to Mr. Toberoff's "long-standing relationship with Mr. Emanuel" and asserted that defendants would produce relevant documents if DC narrowed its document requests. During our February 14 meet-and-confer discussion, Ms. Brill represented that there were many more responsive Ari Emanuel documents than defendants had produced. Now that defendants' proposed narrowing of DC's requests has been adopted by the Court, defendants are required to produce all such documents or justify their continued withholding of documents.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 29

For the reasons described above (*see*, *e.g.*, PPC Request No. 24), these documents are integral to DC's interference claims and the factual assertions in defendants' SLAPP briefing.

DC reserves its rights to file a motion seeking to compel these documents if they are not produced forthwith.

### B.    David Michaels Communications

Toberoff Document Request No. 20 seeks:  "All DOCUMENTS RELATING to any COMMUNICATIONS YOU have had with the TOBEROFF TIMELINE AUTHOR since July 2006," and defines "YOU" to include "any PERSON … acting on [Mr. Toberoff's] behalf, including but not limited to his/their agents, employees, attorneys, and representatives." Defendants redefined "YOU" to include only Mr. Toberoff, and responded:  "Toberoff has no responsive documents to this request."

Defendants' unilateral revision of DC's document request was improper and unwarranted—defendants are required to respond to the request as written.  *See Goodrich Corp. v. Emhart Indus., Inc.*, 2005 WL 6440828, at *3-4 (C.D. Cal. June 10, 2005) (ordering production of all responsive documents in respondent's control notwithstanding broad definition of "you" or "your"); 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 34.14[2][c] (2011) (documents in attorney's possession remain in party's "control").  If in fact there have been no communications between Mr. Michaels and Mr. Toberoff or his agents, employees, attorneys, or other representatives since July 2006, defendants must state so clearly and unequivocally.

These documents are necessary for DC to determine whether defendants have endeavored to silence a key witness in this case.

### C.    "Investor" Documents

DC's document requests asked for:  "All DOCUMENTS RELATING to any potential investors or other PERSONS who have expressed interest in purchasing or otherwise investing in any rights in SUPERMAN and/or SUPERBOY."  Mr. Toberoff has repeatedly claimed that there is (or was) an unnamed "investor" interested in purchasing the Siegels' putative Superman rights. *E.g.*, DB 029, 040, LSL 211, Q1-7.  Despite the fact that this "investor" was supposedly in regular contact with Mr. Toberoff and negotiating multi-million dollar offers, defendants have *never* produced a single communication with the investor, or any document—including a calendar entry or otherwise relating to meetings or other communications with such an investor.

Please produce all documents relating to this and any other investors.  If no such documents exist, DC is entitled to a clear and unequivocal statement to this effect.

*        *        *

EXHIBIT H
399

O'MELVENY & MYERS LLP
July 7, 2011 - Page 30


We are available on July 11 or 12 to further discuss these issues.  As we made clear in our July 3 e-mail, however, now that DC has substantially narrowed and clarified its document requests, we expect that defendants will make a complete production of responsive documents on July 15 and will not merely assert blanket objections as they have in the past.

We reserve all rights.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 19, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

Your July 18 letter once again offers no date for production of the documents defendants agreed to produce in their July 15 responses and objections.  DC needs to review those documents before the deposition of Laura Siegel Larson set for this Thursday, July 21.  Unless defendants agree to produce documents by Wednesday, July 20, DC will serve a motion to compel the immediate production of the documents and for sanctions.  The issue is simple and fully joined, and your refusal to turn over documents you have committed to producing is designed to prevent our use of the documents at Ms. Larson's deposition, thereby making it necessary to examine her again after receiving the documents, as well as defer your discovery obligations until after August 8.

We also intend to move on <u>each</u> of the document requests served on defendants because: (1) you improperly exclude "attorneys" from the scope of the defined terms "YOU," "DEFENDANTS," "SHUSTER HEIRS," and "SIEGEL HEIRS"; (2) you improperly exclude Dennis Larson and Michael Siegel from the definition of "SIEGEL HEIRS"; (3) you object to the definition of "RELATING" despite DC's adoption of a definition very similar to the one you proposed; (4) you neither agree to produce documents nor to discuss any compromise on Toberoff Request Nos. 56 (a-d), 57 (a-d), 58 (a-d); PPC Request Nos. 25, 31, 33; IP Worldwide Request Nos. 25, 28, 32-34; and IPW Request Nos. 27, 29; and (5) you state that you are "willing to meet and confer with Plaintiff regarding the tailoring" of certain requests,[1] but despite DC's previous lengthy meet-and-confer letters on this exact subject, you offer no

---

[1] Toberoff Request Nos. 52, 53, 54; PPC Request Nos. 23, 29; IP Worldwide Request No. 29; and IPW Request Nos. 24 and 26

O'MELVENY & MYERS LLP
July 19, 2011 - Page 2


compromises or suggestions.  We request a date to meet and confer on these issues as soon as possible.  We are available tomorrow or after Ms. Larson's deposition this Thursday.


Very truly yours,


Matthew T. Kline
of O'MELVENY & MYERS LLP

EXHIBIT H
402

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California  90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE  (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE  (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

July 29, 2011

**VIA E-MAIL**

Keith G. Adams
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Keith:

Based on your representation that you have now produced all of the documents that you committed to producing in your July 15, 2011, responses to DC's requests for production of documents, we will withdraw our motion without prejudice.  However, your production does not cure the deficiencies identified in our 30-page, July 7 letter.  As you know, we contend that you have failed to produce numerous responsive documents.  We restate our request from July 19 to meet and confer on these issues as soon as possible.  Please provide us with the times you are available on Monday or Tuesday of next week, August 1 and 3.

In addition, we sent you a letter this past Monday, July 25, requesting that you confirm that, by no later than July 29, you would: (1) produce all correspondence between Mr. Siegel and Ms. Larson, including Ms. Larson's November 2, 2002, letter to Mr. Siegel and Ms. Larson's response to the May 13 letter; (2) confirm that you have conducted a diligent and thorough review of all documents in Ms. Larson's possession, custody, and control—including any and all documents in her home, in storage, or in her attorneys' files, and any and all documents formerly belonging to Joanne Siegel; and (3) produce all responsive documents.  We also stated that if you declined to do so, to provide us with the earliest possible date this week you were available to meet and confer on these issues.  You have not responded to our letter and we will address these issues at the meet and confer next week Monday or Tuesday, as requested above.

We hope to make some progress on these issues early next week but if we can't we are going to have to file a motion shortly thereafter.

EXHIBIT H
403

O'MELVENY & MYERS LLP
July 29, 2011 - Page 2

DC reserves all rights.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq., Marc Toberoff, Esq.

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                      **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| DC COMICS, | Case No. CV-10-3633 ODW (RZx) |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **PLAINTIFF DC COMICS' SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT JEAN PEAVY** |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, as personal representative of the ESTATE OF JOANNE SIEGEL and an individual, and DOES 1-10, inclusive, | **Judge**:  Hon. Otis D. Wright II  **Magistrate**:  Hon. Ralph Zarefsky |
| Defendants. | |

25  **PROPOUNDING PARTY**:    Plaintiff DC Comics

26  **RESPONDING PARTY**:    Defendant Jean Peavy

27  **SET NUMBER**:    Two (Request Nos. 23-38)

28

Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics hereby requests that defendant Jean Peavy produce for inspection and copying all documents described in the following Requests for Production, in accordance with the definitions and instructions contained therein, by no later than September 6, 2011.

## DEFINITIONS AND INSTRUCTIONS

1.      "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to:  e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.      "VIDEO FOOTAGE" means any recording of visual images and/or sound, including without limitation any recording stored in videotape, DVD, or digital format.

3.      "COMMUNICATION" means any written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

4.      "RELATE" means, without limitation, to refer to or bear upon.

5.      "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

- 1 -

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

6.     "YOU" or "YOUR" means Jean Peavy and, as applicable, any PERSON that is acting on her behalf, including but not limited to her agents, employees, attorneys, representatives, and caretakers.

7.     "SHUSTER HEIRS" means, collectively and severally, YOU, the Estate of Joseph Shuster, Mark Warren Peary, Dawn Peavy, Joseph Barry, Nicole Peavy, Jacob Anderson, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

8.     "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

9.     "DC COMICS" means plaintiff DC Comics and any of its affiliates or predecessors, including but not limited to National Allied Publications, Detective Comics, National Comics, and National Periodical Publications.

10.     "WARNER" means Time Warner Inc. and any of its subsidiaries, affiliates, or predecessors, including but not limited to Warner Bros. Entertainment Inc., Warner Communications Inc., and Warner Bros. Television Production Inc.

11.     "PEAVY WILL" means any written instrument relating to the disposition or division of any actual or prospective right, interest, or property YOU hold that is intended to take effect after YOUR death.

12.     "PEAVY TRUST" means any *inter vivos*, testamentary, or other trust created to dispose of or divide any actual or prospective right, interest, or property YOU hold.

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
407

1       13.    "1997 PEARY SCREENPLAY" means the screenplay titled

2   "Dreamers" submitted by Mark Warren Peary and/or Rick Palacioz to WARNER

3   and/or DC COMICS on or around January 21, 1997.

4       14.    "2006 PEARY SCREENPLAY" means the screenplay titled "Ilya

5   Salkind's Siegel & Shuster" submitted by Mark Warren Peary, Rick Palacioz,

6   and/or Ilya Salkind to WARNER and/or DC COMICS on or around September 6,

7   2006.

8       15.    "WORKING SCREENPLAY DRAFT" means the screenplay

9   identified by Mark Warren Peary during his June 29, 2011, deposition in the

10  above-entitled action:

```
0018
23     Q.  Have you been on any -- have you
24  participated in any presentations or pitches to
25  third parties about acquiring options for any work
0019
 1  that you've done?
 2     A.  At one time --
 3        MR. TOBEROFF:  Meaning -- meaning --
 4        THE WITNESS:  On a screenplay?
 5        MR. TOBEROFF:  -- authored work?
 6        MR. PETROCELLI:  Yeah.
 7     Q.  Any work that you've authored or -- yeah.
 8  Any work that you authored?
 9     A.  On any screenplay or -- I have other
10  screenplays I've also worked on, so --
11        MR. TOBEROFF:  He's just talking about any
12  literary work.
13        THE WITNESS:  I've been offered options on
14  other screenplays, yes.
15  BY MR. PETROCELLI:
16     Q.  Have any of them been developed?
17     A.  No.
18     Q.  Have any of the screenplays concerned at
19  all the life of Joe Shuster, the one that was an
20  option?
21     A.  There was one that was.
22     Q.  Was optioned?
23     A.  It has expired, so it's no -- it's not
24  active.
25     Q.  Now, was that -- what was the underlying
0020
 1  work that was optioned?
 2     A.  Screenplay.
 3     Q.  Was that the screenplay to which you
 4  adverted in your deposition in 2006?
```

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
408

5    A.  Yes, yes.
6    Q.  And it was after your deposition that you
7  optioned it?
8    A.  I'm not -- I'm not sure of the exact date.
9  I don't -- I really don't recall the exact date on
10  that.
11    Q.  Did you option it to Ilya Salkind?
12    A.  Yes.
13    Q.  Okay.  And the option was renewed?
14    A.  No.
15    Q.  How much did you receive for the option?
16    A.  We weren't paid anything up front.
17    Q.  Okay.  Did the -- how long was the option?
18    A.  I believe it was a year.
19    Q.  Did it expire?
20    A.  Yes, it did.
21    Q.  And has anything happened to that
22  screenplay since the expiration of the option to
23  Mr. Salkind?
24    A.  No.  We have no sales or options.
25    Q.  Have you attempted to present or pitch the
0021
1  screenplay to anyone else?
2    A.  No, I have not.
3    Q.  How many pages is that screenplay?
4    A.  130.
5    Q.  And have you done any further work on it
6  since the time you optioned it?
7    A.  Nothing substantial.
8    Q.  And is the screenplay about the life of Joe
9  Shuster?
10    A.  Yes.

16.    "JOSEPH SHUSTER FILE" means any and all articles,

correspondence, notes, outlines, artwork, comic books, and other documents

concerning Joseph Shuster, including the file Mark Warren Peary identified

during his June 29, 2011, deposition in the above-entitled action:

11    Q.  When you wrote the screenplay, did you
12  collect a -- a file on Joe Shuster from which you
13  put together your screenplay?
14    A.  I did historical background research.
15    Q.  What were the years when you wrote the
16  screenplay?
17    A.  1996 I started, up until the early 2000s.
18    Q.  When your uncle died, he died in July of
19  1992.
20    Is that right?
21    A.  Yes.
22    Q.  And after he passed, you were involved in
23  collecting his belongings?
24    A.  Yes.

- 4 -

25      Q.  You went out to his apartment in
0022
1  Los Angeles with your mom?
2       A.  Yes.
3       Q.  And did you then take possession of some of
4  his papers and library of comic book materials,
5  whatever he had, drawings, things like that?
6       A.  There were -- there were very limited
7  papers and we didn't find any vintage comics,
8  unfortunately, which would have been worth a lot.
9  He didn't have any.  There were some limited papers,
10  but nothing -- nothing significant.  Mostly personal
11  items.
12      Q.  Where did you get the materials that you
13  used for your book?
14      A.  The book?
15      Q.  Excuse me, the screenplay.
16      A.  The materials, it came from historical
17  research.
18      Q.  About Joe?
19      A.  Yes.  I had a lot of -- a lot of vintage
20  articles that came from the -- the era, which is
21  probably unusual to have a lot of material.  That's
22  where most of it came from.
23      Q.  You collected this on your own?
24      A.  Yes.
25      Q.  By doing public record searches?
0023
1       A.  Yes.  And family files.
2       Q.  Who -- who had possession of the family
3  files?
4       A.  My mother had collected articles throughout
5  the years.
6       Q.  And those articles are in your home where
7  you and your mother now live, right?
8       A.  Oh, I -- I guess so.  It's just old
9  magazine articles.

17.    "PEARY RECORDS" means any and all documents, agreements,

correspondence, e-mails, notes, and other records in YOUR residence, including

without limitation the lock box, filing cabinet, and e-mail account identified by

Mark Warren Peary during his June 29, 2011, deposition in the above-entitled

action:

0050
24  BY MR. PETROCELLI:
25      Q.  From whom -- where in your home are the --
0051
1  are the papers related to this case or any legal
2  matter having to do with Joe Shuster?
3       A.  I have a filing cabinet.

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

```
 4    Q.  How many drawers?
 5    A.  Three.
 6    Q.  When did you start to collect that material
 7  that is contained in these drawers of this filing
 8  cabinet?
 9    A.  It would have been with the original legal
10  agreement.
11    Q.  Back in 2001?
12    A.  Yes.
13    Q.  Where is the cabinet located?
14    A.  In a study.
15    Q.  In your home?
16    A.  Yes.
17    Q.  And that has all the physical copies of
18  documents?
19    A.  Yes.
20    Q.  And besides -- it fills up three drawers?
21    A.  No.  It shares it with a host of other
22  papers.
23    Q.  Okay.  And besides that filing cabinet,
24  where else, if any place, do you keep any copies of
25  documents relating to this -- this matter?
0052
 1    A.  Perhaps a lock box.
 2    Q.  What's --
 3    A.  A lock box.
 4    Q.  What do you mean by "a lock box"?
 5    A.  Just a fireproof lock box.
 6    Q.  In your house?
 7    A.  Yes.
…

0040
 9    Q.  Do you have an e-mail address?
10    A.  Yes.
11    Q.  What is it?
12    A.  WPeary@comcast.net.
13    Q.  Is that P-e-a-r-y?
```

18.    14    A.  Yes.

19.    "SUPERMAN" means the Superman character as delineated in

literary works such as comic books, newspapers, novels, radio programs,

television programs, and motion pictures, and any of the works in which he

appears, including but not limited to *Action Comics. No. 1*.

20.    "SUPERBOY" means the Superboy character as delineated in

literary works such as comic books, newspapers, novels, radio programs,

- 6 -

1   television programs, and motion pictures, and any of the works in which he

2   appears, including but not limited to *More Fun Comics No. 101*.

3       21.    "INCLUDING" means "including, but not limited to."

4       22.    "Any" and "All" are interchangeable.

5       23.    The singular form includes the plural form, and vice versa.

6       24.    YOU are instructed to produce all DOCUMENTS that are responsive

7   to these Requests and that are in YOUR possession, custody, or control.  A

8   DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR

9   physical possession, located in your place of residence, or if, as a practical matter,

10  YOU have the ability, upon request, to OBTAIN possession of the DOCUMENT

11  or a copy thereof from another person or entity that has physical possession of the

12  DOCUMENT.

13      25.    If any DOCUMENT or category of DOCUMENTS is not produced

14  in full, please state with particularity the reason or reasons it is not being

15  produced in full, and describe, to the best of YOUR knowledge, information and

16  belief, and with as much particularity as possible, the DOCUMENT or portions of

17  the DOCUMENT that are not being produced.

18      26.    Each DOCUMENT is to be produced as it is kept in the usual course

19  of business, including all file folders, binders, notebooks, and other devices by

20  which such DOCUMENTS may be organized or separated.

21      27.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT,

22  on grounds that it is protected from discovery by the attorney-client privilege,

23  work-product doctrine, or other privilege or immunity from discovery, please set

24  forth, for each DOCUMENT or portion of a DOCUMENT withheld:

25              (a)    The place, approximate date, and manner of recording, creating

26                     or otherwise preparing the DOCUMENT;

27              (b)    The names and organization position, if any, of each author,

28                     sender, and recipient of the DOCUMENT;

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
412

1    (c)    A general description of the subject matter of the DOCUMENT;

2    (d)    The basis of any claim of privilege; and

3    (e)    If work-product is asserted, the proceeding for which the

4    DOCUMENT was created.

5    28.    For any DOCUMENT or category of DOCUMENTS that was, but

6    no longer is, in YOUR possession, custody or control, please describe each such

7    DOCUMENT as completely as possible and provide the following information:

8    (a)    The reason the DOCUMENT is no longer in YOUR possession,

9    custody or control;

10    (b)    The person or entity, if any, who has possession, custody or

11    control or, if unknown, so state; and

12    (c)    If the DOCUMENT was destroyed or otherwise disposed of,

13    state (i) the manner of disposal (*i.e.*, destruction, loss, discarding

14    or other means of disposal); (ii) the date of disposal; (iii) the

15    reason for disposal; (iv) the person authorizing disposal; (v) the

16    person disposing of the DOCUMENT; and (vi) the name and

17    address of the most recent custodian of the DOCUMENT.

18    29.    Each Request shall be construed independently and no Request shall

19    be viewed as limiting the scope of any other Request.

20    30.    All responsive DOCUMENTS maintained or stored in electronic

21    format shall be produced in native file format with all associated metadata

22    preserved.  All responsive DOCUMENTS maintained in hard copy shall be

23    produced in TIFF.

24    31.    The collection and production of DOCUMENTS shall be performed

25    in a manner that ensures that the source of each DOCUMENT may be

26    determined, if necessary.

27    32.    DOCUMENTS attached to each other shall not be separated.

28    These Requests impose a continuing obligation subsequent to YOUR initial

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

1    production within thirty days of the service date of these Requests, or other date

2    mutually agreed upon by the parties, to timely supplement YOUR response or

3    production if YOU determine that YOUR response or production is incomplete or

4    incorrect.

5                          **<u>DOCUMENTS REQUESTED</u>**

6    **<u>Request No. 23</u>**

7          The PEAVY WILL, including any and all drafts and prior versions of the

8    PEAVY WILL.

9    **<u>Request No. 24</u>**

10         All DOCUMENTS RELATING to the PEAVY WILL.

11   **<u>Request No. 25</u>**

12         All DOCUMENTS RELATING to the PEAVY TRUST.

13   **<u>Request No. 26</u>**

14         All COMMUNICATIONS with Michael Catron.

15   **<u>Request No. 27</u>**

16         All COMMUNICATIONS with David Sims.

17   **<u>Request No. 28</u>**

18         All COMMUNICATIONS with Ilya Salkind.

19   **<u>Request No. 29</u>**

20         The 1997 PEARY SCREENPLAY, including any and all drafts and prior

21   versions of the 1997 PEARY SCREENPLAY.

22   **<u>Request No. 30</u>**

23         All DOCUMENTS RELATING to the 1997 PEARY SCREENPLAY.

24   **<u>Request No. 31</u>**

25         The 2006 PEARY SCREENPLAY, including any and all drafts and prior

26   versions of the 2006 PEARY SCREENPLAY.

27   **<u>Request No. 32</u>**

28         All DOCUMENTS RELATING to the 2006 PEARY SCREENPLAY.

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
414

**Request No. 33**

The WORKING SCREENPLAY DRAFT, including any and all drafts and prior versions of the WORKING SCREENPLAY DRAFT.

**Request No. 34**

Any and all drafts, outlines, or notes RELATING to any script, screenplay, or story regarding SUPERMAN, SUPERBOY, the SHUSTER HEIRS, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or DC.

**Request No. 35**

The JOSEPH SHUSTER FILE.

**Request No. 36**

All VIDEO FOOTAGE depicting YOU or any other SHUSTER HEIR RELATING to SUPERMAN, SUPERBOY, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or DC, including without limitation all VIDEO FOOTAGE of YOUR interview on the Canadian Broadcasting Corporation on or around April 30, 2005, and all VIDEO FOOTAGE of a panel discussion YOU participated in at a Comic-Con event in or around 1998.

**Request No. 37**

All DOCUMENTS received from Dawn Peavy, including without limitation any e-mails sent from the e-mail account dawnpeavy@gmail.com, RELATING to SUPERMAN, SUPERBOY, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or DC.

**Request No. 38**

All DOCUMENTS in the PEARY RECORDS RELATING to SUPERMAN, SUPERBOY, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or DC.

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
415

1

2      Dated:  August 4, 2011                    Respectfully submitted,

3                                               By:  /s/ Daniel M. Petrocelli

4                                                     Daniel M. Petrocelli

5                                               Attorneys for Plaintiff DC Comics

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQS. FOR PRODUC. OF DOCS.
TO DEF. JEAN PEAVY

EXHIBIT H
416

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15 DC COMICS,                          Case No. CV-10-3633 ODW (RZx)

16              Plaintiff,             **DISCOVERY MATTER**

17       v.                           **PLAINTIFF DC COMICS'
                                       SECOND SET OF REQUESTS
18 PACIFIC PICTURES                    FOR PRODUCTION TO
   CORPORATION, IP WORLDWIDE,          DEFENDANT MARK WARREN
   LLC, IPW, LLC, MARC TOBEROFF,       PEARY**
19 an individual, MARK WARREN
   PEARY, as personal representative of **Judge**:  Hon. Otis D. Wright II
20 the ESTATE OF JOSEPH SHUSTER,       **Magistrate**:  Hon. Ralph Zarefsky
   JEAN ADELE PEAVY, an individual,
21 LAURA SIEGEL LARSON, as
   personal representative of the ESTATE
22 OF JOANNE SIEGEL and an
   individual, and DOES 1-10, inclusive,
23
               Defendants.
24

25 **PROPOUNDING PARTY**:   Plaintiff DC Comics

26 **RESPONDING PARTY**:    Defendant Mark Warren Peary

27 **SET NUMBER**:          Two (Request Nos. 23-38)

28
                                       REQS. FOR PRODUC. OF DOCS.
                                       TO DEF. MARK WARREN PEARY

                              EXHIBIT H
                                417

Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics hereby requests that defendant Mark Warren Peary produce for inspection and copying all documents described in the following Requests for Production, in accordance with the definitions and instructions contained therein, by no later than September 6, 2011.

## DEFINITIONS AND INSTRUCTIONS

1.      "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to:  e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.      "VIDEO FOOTAGE" means any recording of visual images and/or sound, including without limitation any recording stored in videotape, DVD, or digital format.

3.      "COMMUNICATION" means any written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

4.      "RELATE" means, without limitation, to refer to or bear upon.

5.      "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

- 1 -

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

6.      "YOU" or "YOUR" means Mark Warren Peary and, as applicable, any PERSON that is acting on his behalf, including but not limited to his agents, employees, attorneys, and representatives.

7.      "SHUSTER HEIRS" means, collectively and severally, YOU, the Estate of Joseph Shuster, Jean Peavy, Dawn Peavy, Joseph Barry, Nicole Peavy, Jacob Anderson, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

8.      "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

9.      "DC COMICS" means plaintiff DC Comics and any of its affiliates or predecessors, including but not limited to National Allied Publications, Detective Comics, National Comics, and National Periodical Publications.

10.      "WARNER" means Time Warner Inc. and any of its subsidiaries, affiliates, or predecessors, including but not limited to Warner Bros. Entertainment Inc., Warner Communications Inc., and Warner Bros. Television Production Inc.

11.      "PEAVY WILL" means any written instrument relating to the disposition or division of any actual or prospective right, interest, or property held by Jean Peavy that is intended to take effect after her death.

12.      "PEAVY TRUST" means any *inter vivos*, testamentary, or other trust created to dispose of or divide any actual or prospective right, interest, or property held by Jean Peavy.

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

EXHIBIT H
419

1          13.    "1997 PEARY SCREENPLAY" means the screenplay titled

2    "Dreamers" submitted by YOU and/or Rick Palacioz to WARNER and/or DC

3    COMICS on or around January 21, 1997.

4          14.    "2006 PEARY SCREENPLAY" means the screenplay titled "Ilya

5    Salkind's Siegel & Shuster" submitted by YOU, Rick Palacioz, and/or Ilya

6    Salkind to WARNER and/or DC COMICS on or around September 6, 2006.

7          15.    "WORKING SCREENPLAY DRAFT" means the screenplay YOU

8    identified during your June 29, 2011, deposition in the above-entitled action:

```
0018
23     Q.  Have you been on any -- have you
24  participated in any presentations or pitches to
25  third parties about acquiring options for any work
0019
1   that you've done?
2     A.  At one time --
3        MR. TOBEROFF:  Meaning -- meaning --
4        THE WITNESS:  On a screenplay?
5        MR. TOBEROFF:  -- authored work?
6        MR. PETROCELLI:  Yeah.
7     Q.  Any work that you've authored or -- yeah.
8   Any work that you authored?
9     A.  On any screenplay or -- I have other
10  screenplays I've also worked on, so --
11        MR. TOBEROFF:  He's just talking about any
12  literary work.
13        THE WITNESS:  I've been offered options on
14  other screenplays, yes.
15  BY MR. PETROCELLI:
16     Q.  Have any of them been developed?
17     A.  No.
18     Q.  Have any of the screenplays concerned at
19  all the life of Joe Shuster, the one that was an
20  option?
21     A.  There was one that was.
22     Q.  Was optioned?
23     A.  It has expired, so it's no -- it's not
24  active.
25     Q.  Now, was that -- what was the underlying
0020
1   work that was optioned?
2     A.  Screenplay.
3     Q.  Was that the screenplay to which you
4   adverted in your deposition in 2006?
5     A.  Yes, yes.
6     Q.  And it was after your deposition that you
7   optioned it?
8     A.  I'm not -- I'm not sure of the exact date.
```

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

EXHIBIT H
420

9   I don't -- I really don't recall the exact date on
10  that.
11      Q.  Did you option it to Ilya Salkind?
12      A.  Yes.
13      Q.  Okay.  And the option was renewed?
14      A.  No.
15      Q.  How much did you receive for the option?
16      A.  We weren't paid anything up front.
17      Q.  Okay.  Did the -- how long was the option?
18      A.  I believe it was a year.
19      Q.  Did it expire?
20      A.  Yes, it did.
21      Q.  And has anything happened to that
22  screenplay since the expiration of the option to
23  Mr. Salkind?
24      A.  No.  We have no sales or options.
25      Q.  Have you attempted to present or pitch the
0021
1  screenplay to anyone else?
2      A.  No, I have not.
3      Q.  How many pages is that screenplay?
4      A.  130.
5      Q.  And have you done any further work on it
6  since the time you optioned it?
7      A.  Nothing substantial.
8      Q.  And is the screenplay about the life of Joe
9  Shuster?
10      A.  Yes.

16.     "JOSEPH SHUSTER FILE" means any and all articles,

correspondence, notes, outlines, artwork, comic books, and other documents

concerning Joseph Shuster, including the file YOU identified during your June

29, 2011, deposition in the above-entitled action:

11      Q.  When you wrote the screenplay, did you
12  collect a -- a file on Joe Shuster from which you
13  put together your screenplay?
14      A.  I did historical background research.
15      Q.  What were the years when you wrote the
16  screenplay?
17      A.  1996 I started, up until the early 2000s.
18      Q.  When your uncle died, he died in July of
19  1992.
20      Is that right?
21      A.  Yes.
22      Q.  And after he passed, you were involved in
23  collecting his belongings?
24      A.  Yes.
25      Q.  You went out to his apartment in
0022
1  Los Angeles with your mom?
2      A.  Yes.

- 4 -

3      Q.  And did you then take possession of some of
4   his papers and library of comic book materials,
5   whatever he had, drawings, things like that?
6      A.  There were -- there were very limited
7   papers and we didn't find any vintage comics,
8   unfortunately, which would have been worth a lot.
9   He didn't have any.  There were some limited papers,
10  but nothing -- nothing significant.  Mostly personal
11  items.
12     Q.  Where did you get the materials that you
13  used for your book?
14     A.  The book?
15     Q.  Excuse me, the screenplay.
16     A.  The materials, it came from historical
17  research.
18     Q.  About Joe?
19     A.  Yes.  I had a lot of -- a lot of vintage
20  articles that came from the -- the era, which is
21  probably unusual to have a lot of material.  That's
22  where most of it came from.
23     Q.  You collected this on your own?
24     A.  Yes.
25     Q.  By doing public record searches?
0023
1      A.  Yes.  And family files.
2      Q.  Who -- who had possession of the family
3   files?
4      A.  My mother had collected articles throughout
5   the years.
6      Q.  And those articles are in your home where
7   you and your mother now live, right?
8      A.  Oh, I -- I guess so.  It's just old
9   magazine articles.

17.    "PEARY RECORDS" means any and all documents, agreements,

correspondence, e-mails, notes, and other records in YOUR possession, custody,

and control, including without limitation the lock box, file cabinet, and e-mail

account YOU identified during YOUR June 29, 2011, deposition in the above-

entitled action:

0050
24  BY MR. PETROCELLI:
25     Q.  From whom -- where in your home are the --
0051
1   are the papers related to this case or any legal
2   matter having to do with Joe Shuster?
3      A.  I have a filing cabinet.
4      Q.  How many drawers?
5      A.  Three.
6      Q.  When did you start to collect that material
7   that is contained in these drawers of this filing

- 5 -

8   cabinet?
9       A.  It would have been with the original legal
10  agreement.
11      Q.  Back in 2001?
12      A.  Yes.
13      Q.  Where is the cabinet located?
14      A.  In a study.
15      Q.  In your home?
16      A.  Yes.
17      Q.  And that has all the physical copies of
18  documents?
19      A.  Yes.
20      Q.  And besides -- it fills up three drawers?
21      A.  No.  It shares it with a host of other
22  papers.
23      Q.  Okay.  And besides that filing cabinet,
24  where else, if any place, do you keep any copies of
25  documents relating to this -- this matter?
0052
1       A.  Perhaps a lock box.
2       Q.  What's --
3       A.  A lock box.
4       Q.  What do you mean by "a lock box"?
5       A.  Just a fireproof lock box.
6       Q.  In your house?
7       A.  Yes.
…

0040
9       Q.  Do you have an e-mail address?
10      A.  Yes.
11      Q.  What is it?
12      A.  WPeary@comcast.net.
13      Q.  Is that P-e-a-r-y?
14      A.  Yes.

18.    "SUPERMAN" means the Superman character as delineated in

literary works such as comic books, newspapers, novels, radio programs,

television programs, and motion pictures, and any of the works in which he

appears, including but not limited to *Action Comics. No. 1*.

19.    "SUPERBOY" means the Superboy character as delineated in

literary works such as comic books, newspapers, novels, radio programs,

television programs, and motion pictures, and any of the works in which he

appears, including but not limited to *More Fun Comics No. 101*.

20.    "INCLUDING" means "including, but not limited to."

21.    "Any" and "All" are interchangeable.

- 6 -

1    22.    The singular form includes the plural form, and vice versa.

2    23.    YOU are instructed to produce all DOCUMENTS that are responsive

3    to these Requests and that are in YOUR possession, custody, or control.  A

4    DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR

5    physical possession, located in your place of residence, or if, as a practical matter,

6    YOU have the ability, upon request, to OBTAIN possession of the DOCUMENT

7    or a copy thereof from another person or entity that has physical possession of the

8    DOCUMENT.

9    24.    If any DOCUMENT or category of DOCUMENTS is not produced

10    in full, please state with particularity the reason or reasons it is not being

11    produced in full, and describe, to the best of YOUR knowledge, information and

12    belief, and with as much particularity as possible, the DOCUMENT or portions of

13    the DOCUMENT that are not being produced.

14    25.    Each DOCUMENT is to be produced as it is kept in the usual course

15    of business, including all file folders, binders, notebooks, and other devices by

16    which such DOCUMENTS may be organized or separated.

17    26.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT,

18    on grounds that it is protected from discovery by the attorney-client privilege,

19    work-product doctrine, or other privilege or immunity from discovery, please set

20    forth, for each DOCUMENT or portion of a DOCUMENT withheld:

21            (a)    The place, approximate date, and manner of recording, creating

22                    or otherwise preparing the DOCUMENT;

23            (b)    The names and organization position, if any, of each author,

24                    sender, and recipient of the DOCUMENT;

25            (c)    A general description of the subject matter of the DOCUMENT;

26            (d)    The basis of any claim of privilege; and

27            (e)    If work-product is asserted, the proceeding for which the

28                    DOCUMENT was created.

- 7 -

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

1        27.    For any DOCUMENT or category of DOCUMENTS that was, but

2   no longer is, in YOUR possession, custody or control, please describe each such

3   DOCUMENT as completely as possible and provide the following information:

4              (a)    The reason the DOCUMENT is no longer in YOUR possession,

5                     custody or control;

6              (b)    The person or entity, if any, who has possession, custody or

7                     control or, if unknown, so state; and

8              (c)    If the DOCUMENT was destroyed or otherwise disposed of,

9                     state (i) the manner of disposal (*i.e.*, destruction, loss, discarding

10                    or other means of disposal); (ii) the date of disposal; (iii) the

11                    reason for disposal; (iv) the person authorizing disposal; (v) the

12                    person disposing of the DOCUMENT; and (vi) the name and

13                    address of the most recent custodian of the DOCUMENT.

14       28.    Each Request shall be construed independently and no Request shall

15   be viewed as limiting the scope of any other Request.

16       29.    All responsive DOCUMENTS maintained or stored in electronic

17   format shall be produced in native file format with all associated metadata

18   preserved.  All responsive DOCUMENTS maintained in hard copy shall be

19   produced in TIFF.

20       30.    The collection and production of DOCUMENTS shall be performed

21   in a manner that ensures that the source of each DOCUMENT may be

22   determined, if necessary.

23       31.    DOCUMENTS attached to each other shall not be separated.

24   These Requests impose a continuing obligation subsequent to YOUR initial

25   production within thirty days of the service date of these Requests, or other date

26   mutually agreed upon by the parties, to timely supplement YOUR response or

27   production if YOU determine that YOUR response or production is incomplete or

28   incorrect.

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

EXHIBIT H
425

# **DOCUMENTS REQUESTED**

**Request No. 23**

The PEAVY WILL, including any and all drafts and prior versions of the PEAVY WILL.

**Request No. 24**

All DOCUMENTS RELATING to the PEAVY WILL.

**Request No. 25**

All DOCUMENTS RELATING to the PEAVY TRUST.

**Request No. 26**

All COMMUNICATIONS with Michael Catron.

**Request No. 27**

All COMMUNICATIONS with David Sims.

**Request No. 28**

All COMMUNICATIONS with Ilya Salkind.

**Request No. 29**

The 1997 PEARY SCREENPLAY, including any and all drafts and prior versions of the 1997 PEARY SCREENPLAY.

**Request No. 30**

All DOCUMENTS RELATING to the 1997 PEARY SCREENPLAY.

**Request No. 31**

The 2006 PEARY SCREENPLAY, including any and all drafts and prior versions of the 2006 PEARY SCREENPLAY.

**Request No. 32**

All DOCUMENTS RELATING to the 2006 PEARY SCREENPLAY.

**Request No. 33**

The WORKING SCREENPLAY DRAFT, including any and all drafts and prior versions of the WORKING SCREENPLAY DRAFT.

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

EXHIBIT H
426

1    **Request No. 34**

2         Any and all drafts, outlines, or notes RELATING to any script, screenplay, or

3    story regarding SUPERMAN, SUPERBOY, the SHUSTER HEIRS, the SIEGEL

4    HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or DC.

5    **Request No. 35**

6         The JOSEPH SHUSTER FILE.

7    **Request No. 36**

8         All VIDEO FOOTAGE depicting YOU or any other SHUSTER HEIR

9    RELATING to SUPERMAN, SUPERBOY, the SIEGEL HEIRS, Joseph Shuster,

10   Jerome Siegel, WARNER, or DC, including without limitation all VIDEO

11   FOOTAGE of an interview with Jean Peavy on the Canadian Broadcasting

12   Corporation on or around April 30, 2005, and all VIDEO FOOTAGE of a panel

13   discussion featuring Jean Peavy at a Comic-Con event in or around 1998.

14   **Request No. 37**

15        All DOCUMENTS received from Dawn Peavy, including without limitation

16   any e-mails sent from the e-mail account dawnpeavy@gmail.com, RELATING to

17   SUPERMAN, SUPERBOY, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel,

18   WARNER, or DC.

19   **Request No. 38**

20        All DOCUMENTS in the PEARY RECORDS RELATING to SUPERMAN,

21   SUPERBOY, the SIEGEL HEIRS, Joseph Shuster, Jerome Siegel, WARNER, or

22   DC.

23        Dated:  August 4, 2011              Respectfully submitted,

24                                            By:  /s/ Daniel M. Petrocelli

25                                                 Daniel M. Petrocelli

26                                            Attorneys for Plaintiff DC Comics

27

28

- 10 -

REQS. FOR PRODUC. OF DOCS.
TO DEF. MARK WARREN PEARY

EXHIBIT H
427