Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:        (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>          Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>          Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW OF MAGISTRATE ZAREFSKY'S SEPTEMBER 15, 2011 ORDER DENYING DC COMICS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20 AND APRIL 11, 2011 ORDERS**<br><br>Complaint filed: May 14, 2010<br>Trial Date:      None Set<br><br>Hearing Date: October 31, 2011<br>Hearing Time: 1:30 p.m.<br>Courtroom:    11 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT .........................................................................................................3

    A.   The "Clear Error" Standard of Review .......................................................3

    B.   There Was No Basis for Reconsideration of the Decisions of Magistrate Zarefsky, Judge Larson and This Court ..............................3

    C.   Communications Between Ms. Larson and Mr. Siegel Are Privileged ....................................................................................................7

    D.   DC's Repeated Motions Seek Material of Minimal Relevance to Support Baseless Claims ...................................................9

III. CONCLUSION ...................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*389 Orange Street Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ................................................................................. 4

*Aventis Pharms. SA v. Amphastar Pharm., Inc.*,
2005 WL 5957795 (C.D. Cal. Mar. 25, 2005) ........................................................ 7

*Britesmile, Inc. v. Discus Dental, Inc.*,
2004 U.S. Dist. LEXIS 20023 (N.D. Cal. Aug. 10, 2004) ...................................... 8

*Credit Bureau Connection, Inc. v. Pardini*,
726 F. Supp. 2d 1107 (E.D. Cal. 2010) .................................................................. 4

*Easley v. Cromartie*,
532 U.S. 234 (2001) ................................................................................................ 3

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) ................................................................................... 8

*Griffith v. Davis*,
161 F.R.D. 687 (C.D. Cal. 1995) ........................................................................... 8

*Grimes v. City and County of San Francisco*,
951 F.2d 236 (9th Cir. 1991) .................................................................................. 3

*Hepler v. Wash. Mut. Bank, F.A.*,
2008 WL 4866285 (C.D. Cal. Oct. 28, 2008) ........................................................ 7

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
115 F.R.D. 308 (N.D. Cal. 1987) ........................................................................... 8

*Hunydee v. U.S.*,
355 F.2d 183 (9th Cir. 1965) .................................................................................. 8

*Husain v. Olympic Airways*,
316 F.3d 829 (9th Cir. 2002) .................................................................................. 3

*Maisonville v. F2 America, Inc.*,
902 F.2d 746 (9th Cir. 1990) .................................................................................. 3

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .................................................................................. 3

*McCoy v. Roe*,
234 Fed. Appx. 559 (9th Cir. 2007) .................................................................. 2, 7

*Official Committee of Administrative Claimants v. Bricker,*
2011 U.S. Dist. LEXIS 49504 (N.D. Ohio May 9, 2011) ...................................... 8

*Siegel v. Warner Bros. Entertainment, Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................................ 2, 10

...

*U.S. v. BNS, Inc.*,
858 F.2d 456 (9th Cir. 1988) ..................................................................................3

*U.S. v. Under Seal*,
902 F.2d (4th Cir. 1990) ........................................................................................8

*Trust Corp. v. Aetna Casualty and Surety Co.*,
873 F. Supp. 1386 (D. Ariz. 1994) ..................................................................... 3-4

**<u>Other Authorities</u>**

17 U.S.C. § 304(c)(2) ...............................................................................................7

28 U.S.C. § 636(b)(1)(A) .........................................................................................3

Fed. R. Civ. P. 72(a) .................................................................................................3

Local Rule 7-18 ..................................................................................................... 3-4

6-26 Moore's Federal Practice § 26.49[5][b] ...........................................................8

## I. INTRODUCTION

This Court has clearly stated that discovery rulings are only reversed "where it has been shown that [the] order is clearly erroneous or contrary to law." Docket No. 18 at 3. Plaintiff DC Comics' ("DC") wasteful motion for review (Docket No. 329; "Motion" or "Mot.") of Magistrate Judge Zarefsky's September 15, 2011 Order (Docket No. 323; the "September 15 order") raises, for *the tenth time*, a July 2003 letter from Laura Siegel Larson to Michael Siegel (the "July 2003 letter"). DC raised this issue *five* times in the related case *Siegel v. Warner Bros. Entertainment, Inc.*, Case No. 04-CV-08400 ODW (RZx). Here, DC's repeated motions to compel this logged document have been denied four times, and the Siegels' privilege logs have been repeatedly upheld. *First*, DC attempted to compel the production of the "July 11 letter" – in a motion to Magistrate Zarefsky (Docket No. 159), which was denied in his April 11, 2011 order (Docket No. 209). *Second*, DC sought review (Docket No. 225) by this Court of the Magistrate's April 11, 2011 order, which was likewise denied (Docket No. 248). *Third*, DC sought reconsideration by the Magistrate of his April 11, 2011 order (Docket No. 253), which was denied in his June 20, 2011 order (Docket No. 285). *Fourth*, DC *again* sought reconsideration of both the April 11 and June 20, 2011 orders (Docket No. 315), which was denied by the September 15, 2011 order, a ruling that DC now moves once again to review.

This motion for review of the September 15 order, which denied DC's *second* motion for reconsideration, represents *the fifth time* that DC has moved on this topic in this case. DC demonstrates no "clear error" on an issue that both this Court (once) and Magistrate Zarefsky (thrice) have already ruled on. Enough is enough. As the Magistrate put it in his orders, "[a]t some point a matter has to be set aside, and the parties go on to other issues" (Docket No. 323 at 2) and the "Court will not revisit [an] issue just for the purpose of having that issue re-visited." Docket No. 209 at 8.

This motion is a paradigmatic example of how DC and its counsel are abusing discovery with endless motion practice, including repeat motions for reconsideration

and review. Defendants demonstrated in their anti-SLAPP motion (Docket No. 145), under submission, that such burdensome motion practice is an end in itself for DC because the objective of its frivolous claims against its opposing counsel, Mr. Toberoff, is to obtain leverage by driving up his and his clients' litigation costs.

Magistrate Zarefsky correctly upheld privilege as to the July 2003 letter. DC's sole basis for its repeat motion for reconsideration and its current motion for review was Ms. Larson's simple deposition testimony that she wrote a letter in response to Michael Siegel's May 13, 2003 letter (the "May 13 letter"), while ignoring that DC repeatedly moved to compel the July 2003 letter before and presented testimony to that effect. As DC's motion for reconsideration did no more than "restate[] the arguments and allegations made in support of [its] original motion," the Magistrate properly rejected that motion, and DC's current motion should likewise be denied on that ground alone. *McCoy v. Roe*, 234 Fed. Appx. 559, 560 (9th Cir. 2007).

DC's assertions that the July 2003 letter is "key evidence" (Mot. at 5) also do not add up. DC's complaint makes no allegations concerning Michael Siegel. *See* Docket No. 49 ("FAC"). DC undoubtedly assumes that the letter is relevant to its Fifth Claim for Relief, but that claim is meritless. DC's Fifth Claim is for interference with a non-existent settlement agreement between DC and the Siegels that allegedly occurred in **August 2002**, after the Siegels had "clearly and unequivocally" rejected DC's proposals in **May 2002**, as Judge Larson held in an order that this Court entered as a judgment. *Siegel v. Warner Bros. Entertainment, Inc.,* 542 F. Supp. 2d 1098, 1139 (C.D. Cal. 2008); *Siegel*, Docket No. 669.

DC's strategy is to endlessly re-litigate every adverse ruling, without regard to the burden and waste of judicial resources that this entails. DC's motion should be denied, and DC should be dissuaded from continuing to make such unwarranted motions with no regard for this Court's time or the governing standards of review.

///

///

## II. ARGUMENT

### A. The "Clear Error" Standard of Review

As stated in this Court's standing order (Docket No. 18 at 3), on a motion for review of a magistrate's discovery order, the trial court is deferential and will uphold the order unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). *See Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (the district court reviews the magistrate's order for "clear error"). A magistrate's pretrial orders are not subject to *de novo* determination. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). A reviewing court does not substitute its own judgment for that of the magistrate judge. *See U.S. v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988). Rather, "[r]eview for clear error is significantly deferential and requires a 'definite and firm conviction that a mistake has been committed.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quot'g *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). Notably, reversal for "clear error" is inappropriate as long as the court's "'findings are plausible in light of the record viewed in its entirety.'" *Id.* (quoting *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002)).

### B. There Was No Basis for Reconsideration of the Decisions of Magistrate Zarefsky, Judge Larson and This Court

DC's underlying motion, as shown by its title, was for reconsideration of Magistrate Zarefsky's April 11 and June 20 orders. Local Rule 7-18 prohibits motions for reconsideration except under extraordinary circumstances:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. ***No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion***.

L.R. 7-18 (emphasis added).

Motions for reconsideration "are disfavored and are rarely granted." *Trust*

3
DEFENDANTS' OPPOSITION TO F.R.C.P. 72 MOTION FOR REVIEW

1  *Corp. v. Aetna Casualty and Surety Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994).
2  *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("[A]
3  motion for reconsideration should not be granted, absent highly unusual
4  circumstances...").  "To succeed, a party must set forth facts or law of a strongly
5  convincing nature to induce the court to reverse its prior decision." *Credit Bureau
6  Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1132 (E.D. Cal. 2010).  DC
7  completely failed to justify its underlying motion for reconsideration under Local
8  Rule 7-18, and thus its motion for review fails.

   The July 2003 letter is privileged, has been claimed and repeatedly upheld by the courts as privileged, and DC provided no basis to reconsider such decisions.  As Magistrate Zarefsky held in its April 11, 2011 order that rejected DC's prior attempt to compel the July 2003 letter, "the record establishes that [defendants] asserted privilege as to the [July 2003] letter during the prior litigation, a designation that was upheld by the Court."  Docket No. 209 at 11.

   In fact, DC had ***unsuccessfully*** challenged Defendants' privilege assertion as to the July 2003 letter in the *Siegel* action on ***five*** separate occasions (*see* Docket No. 160 at 66:10-68:14; *see also* Docket No. 163, Ex. TT, ¶ 9; Docket No. 164, Ex. B, ¶ 3; Docket No. 163, Ex. UU; Docket No. 164, Ex. C at 20:15-22:26; Docket No. 164, Ex. D, ¶¶ 48-51; Docket No. 164, Ex. G at 5; Docket No. 163, Ex. VV, ¶¶ 6-7; Docket No. 164, Ex. I at 1, 4) and on ***four*** separate occasions in this action.  *See* Docket Nos. 160, 225, 253, 315.

   DC disingenuously claims that its motion for review is based on "new" testimony from Ms. Larson (Mot. at 3), but this is just a pretext, as DC advanced the exact same argument as to the existence and logging of the July 2003 letter in all its prior unsuccessful motions. *See e.g.* Docket No. 243 at 10 ("By all accounts, the 'July 11, 2003,' letter exists and is a non-privileged communication.").

   • In support of DC's first motion to compel the production of the stolen documents in *Siegel*, DC specifically sought correspondence between Laura

1  Siegel and her "step-brother, Michael Siegel." Docket No. 163, Ex. TT, ¶ 9;
2  No. 164, Ex. B, ¶ 3.  In response to Magistrate Zarefsky's April 30, 2007 order
3  (Docket No. 163, Ex. UU) on DC's motion, the July 2003 letter was matched
4  up to the Siegels' "supplemental privilege log # 82." Docket No. 163, Ex. VV,
5  ¶¶ 6-7.  On December 4, 2008 Judge Larson then upheld privilege as to all
6  documents matched up to the Siegels' privilege log entries, including the July
7  2003 letter.  Docket No. 164, Ex. I at 4.

- DC thereafter made three more separate challenges to the Siegels' privilege logs based, among other things, on the July 2003 letter. *See* Docket Nos. 164, Ex. C at 20:15-22:26; Ex. D, ¶¶ 48-51; Ex. G at 5.  On September 26, 2008, Judge Larson *rejected* DC's challenges, including its attempt to compel the July 2003 letter.  Docket No. 164, Ex. H at 5.  That order again upheld the "privilege log entries … [noted] in Mr. Toberoff's May 21, 2007 declaration," made pursuant to Magistrate Zarefsky's April 30, 2007 order.  *Id.*, Ex. H at 5.
- DC then had its supposedly "neutral escrow" attorney write to the Court *ex parte* on October 16, 2008 advocating that he be permitted to peek beneath the privilege logs by "matching up" escrow documents.  Docket No. 164, Ex. I at 1.  The *Siegel* Court *denied* that ***fifth*** attempt to challenge the Siegels' logs, and ended the matter on December 4, 2008, by ordering DC's attorney to finally disburse the escrowed stolen documents.  Docket No. 164, Ex. I at 4.
- In ***this*** litigation, DC again moved to compel the July 2003 letter arguing that "[o]n July 11, 2003, Laura Siegel Larson sent a letter or email to her half-brother, Michael Siegel," and that "Defendants claim privilege over this letter and have included it on their privilege log."  Docket No. 160 at 30-33.  On April 11, 2011, Magistrate Zarefsky denied DC's motion, holding that defendants "asserted privilege as to the letter during the prior litigation; a designation that was upheld."  Docket No. 209 at 11.
- On April 25, 2011, in a motion for review of the April 11 order, DC argued to

this Court that: the July 2003 letter existed, was in response to a May 13 letter, was not privileged, and must be produced. *See* Docket No. 225 at 15-17 ("the Toberoff Timeline describes a July 2003 letter from Laura Siegel Larson to Michael Siegel"; Defendants do "not deny there was correspondence between Ms. Larson … and Mr. Siegel during this general time period"; and "[n]or is there any other reason to allow defendants to shield this clearly non-privileged communication from disclosure"); No. 243 at 10 ("Ms. Larson wrote a reply in July 2003"; "By all accounts, the 'July 11, 2003,' letter exists and is a non-privileged communication"). On May 11, 2011, this Court rejected DC's motion. Docket Nos. 248, 252.

- On May 23, 2011, in its first motion for reconsideration to Magistrate Zarefsky, DC again argued that the July 2003 letter was a response to the May 13 letter, was in defendants' possession, and was purportedly not privileged. Docket No. 253 at 6-9 ("the May 13 letter is new proof that the July 11 letter exists"; "It appears that the July 11 letter … contains Ms. Larson's response"). On June 20, 2011, after oral argument, Magistrate Zarefsky rejected DC's motion in its entirety. Docket No. 285.

- On September 2, 2011, DC brought its *second* motion for reconsideration on the false pretext of Ms. Larson's testimony, which was denied by Magistrate Zarefsky on September 3, 2011 (Docket No. 323) – the subject of this motion.

In short, and contrary to DC's misleading claims that this issue was somehow "obscure" or that there was "deception" (Mot. at 2-3), DC repeatedly raised **the exact same issue** before as it does in this motion, that a July 2003 letter existed and was improperly logged. In fact, the specific privilege log entries DC makes so much of and incorporates into its motion (Mot. at 1) were at issue as early as **April 2007**, and were argued about by DC to the *Siegel* Court, Magistrate Zarefsky, and this Court, which *each* consistently rejected DC's arguments.

DC has no new argument to justify reconsideration. Rather, DC merely points

6
DEFENDANTS' OPPOSITION TO F.R.C.P. 72 MOTION FOR REVIEW

to the testimony of Ms. Larson that she wrote such a letter. This testimony does absolutely nothing to distinguish this motion from DC's prior denied motions where it offered similar testimony as to the existence of the July 2003 letter. *See* Docket No. 163, Ex. TT, ¶ 9; Docket No. 164, Ex. B, ¶ 3, Ex. D, ¶¶ 48-51.

DC falsely states that the September 15 order "misapprehended the relief DC sought … production of the July 2003 letter – not supplementation of a privilege log." Mot. at 4. Magistrate Judge Zarefsky was perfectly clear on what DC sought: "[DC] seeks to have produced a letter by Defendant Laura Larson, written to her half brother apparently in early to mid July 2003." Docket No. 323 at 1. DC had brought two prior motions on this exact subject before the Magistrate, both of which were subject to full oral argument where it ventilated these issues *ad nauseum*. *See* Docket Nos. 177, 232. There was no "misapprehension" by the Magistrate Judge.

As with DC's prior motions on this subject, DC "points to nothing to demonstrate that the prior ruling was incorrect; [DC] simply wants to see the document still" (Docket No. 209 at 11) and its motion for review should be denied on that ground alone. *See McCoy*, 234 Fed. Appx. 559, 560 (9th Cir. 2007) (approving denial of motion for reconsideration that "restated the arguments and allegations made in support of [the] original motion"); *Aventis Pharms. SA v. Amphastar Pharm., Inc.*, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) (motion to reconsider failed because it was merely "repeating an argument"); *Hepler v. Wash. Mut. Bank, F.A.*, 2008 WL 4866285, at *1 (C.D. Cal. Oct. 28, 2008) (same).

### C. Communications Between Ms. Larson and Mr. Siegel Are Privileged

DC erroneously argues that communications between Laura Siegel Larson and her half brother Michael Siegel are not subject to a common interest privilege. Motion at 3-4. Ms. Larson and Mr. Siegel had an obvious common interest in the Siegel terminations because Mr. Siegel had a statutory interest in the terminations as a matter of law. 17 U.S.C. § 304(c)(2).

Communications between clients, where such clients have a common legal

1  interest, are privileged.  *See* 6-26 Moore's Federal Practice § 26.49[5][b] ("The
2  common interest doctrine, which is an exception to the general rule that the attorney-
3  client privilege is waived on disclosure of privileged information with a third party,
4  provides that parties with a shared interest in actual or potential litigation against a
5  common adversary may share privileged information without waiving the
6  privilege."); *U.S. v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990) (collecting cases)
7  ("[T]he rationale for the joint defense rule remains unchanged: persons who share a
8  common interest in litigation should be able to communicate with their respective
9  attorneys ***and with each other***…") (emphasis added).  Such a common interest can
10 exist even if the interests of the clients are at odds in certain respects.  *See Hunydee v.*
11 *U.S.*, 355 F.2d 183, 185 (9th Cir. 1965) (applying common interest doctrine to
12 statements concerning a matter of common concern, even though co-defendants
13 generally had a conflict of interest); *Griffith v. Davis*, 161 F.R.D. 687, 692 n.6 (C.D.
14 Cal. 1995) (holding the interest applies even if the parties "may even be adverse in
15 some respects"); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d Cir. 1985) (same).

16       The courts have also emphasized that direct communications between jointly-
17 interested clients are privileged where both parties have an interest in potential
18 litigation, even where such communications are not sent through an attorney.  *See*
19 *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 U.S. Dist. LEXIS 20023 (N.D. Cal. Aug.
20 10, 2004) (common interest privilege applied where seller sent privileged material
21 directly to potential buyer); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115
22 F.R.D. 308 (N.D. Cal. 1987) (same); *Official Committee of Administrative Claimants*
23 *v. Bricker,* 2011 U.S. Dist. LEXIS 49504, at *10–11 (N.D. Ohio May 9, 2011)
24 (communications between "'individual [committee] members and professionals'"
25 protected by common-interest privilege, even though not sent to an attorney).

26       Magistrate Zarefsky expressly upheld the joint-interest privilege for "interests
27 that Mr. Siegel and Ms. Larson held in common" (Docket No. 239 at 1) – *i.e.,* the
28 "Michael Siegel" interest that is the subject of the May 13 letter, and any response by

Ms. Larson to the May 13 letter. Even if the July 2003 letter were as DC describes it, Ms. Larson duly logged this document and her logs have been repeatedly upheld.

DC tries to obscure this clear issue by misrepresenting the findings of an Ohio district court. The Ohio court only partially granted a prior motion by DC and solely as to documents "relate[d] to the offers back and forth between Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and [his attorney Don] Bulson on behalf of Michael Siegel," because they did "not relate to settlement offers regarding [DC] or the risk of litigation." Docket No. 161-1, Ex. E at 3.

DC thereafter challenged in the Ohio court the Siegels' invocation of the "joint interest" privilege as to *all* communications between Laura Siegel and Michael Siegel after settlement negotiations with DC had broken down. Docket No. 161-1, Ex. E; *see also* Docket No. 164 Ex. A at 8. The district court rejected DC's motion to compel, finding that Laura and Michael Siegel shared a joint interest in the *Siegel* litigations and expressly stating that its prior rejection of joint interest as to a specific investor's buy-out offers to Michael Siegel did not "cast the entire process into question." Docket No. 161-1, Ex. E at 6. Contrary to DC's false characterizations, the Ohio order did not deny the common interest between Laura and Michael Siegel.

### D. DC's Repeated Motions Seek Material of Minimal Relevance to Support Baseless Claims

Not only does DC move to compel the same document for the tenth time and claim that the document is somehow "key evidence," the document, by DC's own pleadings, has minimal relevance. DC argues that the July 2003 letter, which responded to Michael Siegel's May 13, 2003 letter, is purportedly relevant to DC's Fifth Claim for supposed interference with an alleged settlement agreement between DC and Laura Siegel Larson and Joanne Siegel, now deceased, ("Agreement") due to a competing financial offer to Laura and Joanne Siegel in August, 2002.

However, the May 13, 2003 letter does not refer to any statements to Laura and Joanne Siegel. Although DC had numerous documents concerning Michael Siegel

1 when it filed its complaint, Michael Siegel is never even mentioned in DC's
2 complaint.  Docket No. 49 ("FAC"), ¶¶ 1-198.  The May 13, 2003 letter was written
3 nine months after the August 2002 events at issue, by someone who did not witness
4 or address them, and it does *nothing* to "corroborate" DC's allegations.

5     Moreover, in *Siegel*, Judge Larson ruled, and this Court has since entered
6 judgment, that no such Agreement was made by DC, which simply continued to grind
7 the Siegels in four years of grueling negotiations. *Siegel,* 542 F. Supp. 2d at 1139;
8 Docket No. 669.

9     DC's Fifth Claim also makes no sense as a matter of timing or causation.
10 Dissatisfied with these negotiations, the Siegels looked for litigation counsel as early
11 as March 2002, well before any outside financial offer or contact with Mr. Toberoff.
12 *See, e.g.,* Docket No. 314, Ex. B; Docket No. 206, Ex. 24 at 142:4-17.  As Judge
13 Larson also held, Joanne Siegel's May 9, 2002 letter to Time Warner "clearly and
14 unequivocally" rejected DC's proposals, and made clear that the negotiations were
15 moribund.  *Siegel,* 542 F. Supp. 2d at 1139; Docket No. 145-5, Ex. O ("After four
16 years we have no deal and this contract makes an agreement impossible.").  DC's
17 alleged "probability of future economic benefit" (FAC ¶ 183) (an essential element of
18 its claim for tortious interference) was at an end long before Mr. Toberoff had any
19 substantive communication with the Siegels' attorney, in August 2002.

20     After significant discovery in both *Siegel* and this case, DC has no evidence to
21 support its concocted claim.  In fact, as set forth in Defendants' Anti-SLAPP motion
22 (Docket No. 145-1 at 7:1-9:20, 22:4-24:2), DC's Fifth Claim contradicts the
23 discovery in *Siegel* and here.  *See, e.g.,* Docket No. 312-2, ¶¶ 2-5 (testimony of the
24 Siegels' former attorney Kevin Marks).  DC's claim is also squarely barred by both
25 the statute of limitations (as DC had the information alleged in 2006) and by the
26 litigation privilege as it concerns settlement.  *See* Docket No. 145-1 at 7-9, 22-24.

27     From every possible angle, DC's Fifth Claim is meritless.  For far too long DC
28 has burdened this Court and Magistrate Zarefsky with endless motions on the same

topic, irrelevant to a meritless cause of action, and barred as a matter of law.

## III. CONCLUSION

For the reasons stated above, DC's motion should be denied.

Dated: October 7, 2011        RESPECTFULLY SUBMITTED,

_____
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants,
Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel