DANIEL M. PETROCELLI (S.B. #097802)
 dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
 mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
 cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
 pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone: (845) 265-2820
Facsimile: (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>   Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>   Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE'S ORDER ON PLAINTIFF'S MOTION TO COMPEL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE COURT'S JUNE 20 AND APRIL 11, 2011, ORDERS PURSUANT TO FED. R. CIV. P. 72(A) AND L.R. 72-2.1**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**: October 31, 2011<br>**Hearing Time**: 1:30 p.m.<br>**Courtroom**: 11 |

1   Defendants spend 11 pages arguing that DC is barred from discovering a
2   single document—defendant Laura Siegel Larson's July 11, 2003, letter to her half-
3   brother Michael—and base this argument on prior court orders that *never* addressed
4   the relevance, discoverability, or alleged common-interest privileged status of the
5   letter.  There is good reason no court ever addressed these issues:  Until September
6   1, 2011, defendants' privilege logs concealed Laura's July 2003 letter—describing
7   it, at log Entry No. 82, as a "Facsimile" from "Laura Siegel" to "Marc Toberoff."
8   Indeed, before September 1, 2011, defendants *never* confirmed the existence of the
9   July 2003 letter, *never* listed it among any of their 7,565 privilege-log entries, and
10  *never* asserted a common-interest privilege over the document.

11   No court, until September 2011, could test the veracity of log Entry No. 82 or
12  assess the common-interest privilege defendants first asserted on September 1.  The
13  *Siegel* court only approved the general format of defendants' logs and relied on
14  their (untrue) representations that their logs and productions were complete, but no
15  court examined the log entry or letter, let alone sustained the objection defendants
16  now assert.  To the contrary, an Ohio federal court—the only court ever to address
17  the issue—rejected defendants' common-interest claim.  Laura's letter is highly
18  relevant, not privileged, and should be produced forthwith.

19   Finally, defendants devote much of their brief to additional arguments in
20  support of their SLAPP motion.  These arguments are both irrelevant and incorrect.

21  **I.    No Court Has Ever Ruled That Laura's July 2003 Letter Is Privileged.**

22   Defendants contend the question whether Laura's July 2003 letter is
23  privileged was resolved in their favor nine times.  While there are five court rulings
24  touching on this issue, *none* addressed or answered this question directly.

25   <u>Ruling No. 1.</u>  In March 2007, DC moved in *Siegel* to compel the production
26  of all non-privileged Timeline enclosures, including "correspondence concerning
27  the interest in Superman that might be owned by … Michael Siegel."  Docket Nos.
28  163-12, Ex. TT ¶ 9; 164-1, Ex. B ¶ 3.  In response, defendants did not disclose

- 1 -   DC'S REPLY ISO MOT. FOR REVIEW
OF MAGISTRATE'S ORDER

1  Laura's July 2003 letter, did not list it on a log, and did not say it was subject to a
2  common-interest privilege. Rather, they represented that they had "produced non-
3  privileged responsive documents in their possession and listed the privileged
4  documents in a privilege log." Docket No. 42-13 at 129-32. On April 30, the
5  Magistrate said this representation left some "wiggle room" and ordered Toberoff
6  to submit a declaration identifying by Bates-stamp and log-entry number each
7  Timeline enclosure. Docket No. 317-4. Defendants now assert for the first time
8  that, in Toberoff's 2007 declaration, "the July 2003 letter was matched up to the
9  Siegels' 'supplemental privilege log #82,'" Opp. at 5:3-4. But Entry No. 82 logs a
10 fax from Laura to Toberoff, and asserts "Atty/Client" privilege:

| Log# | Date | Identity of Recipient(s) | Identity of Author(s) | Document Description | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 82 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiff's Counsel |

14 Docket No. 317-2 at 8. As one can plainly see, Entry No. 82 makes *no* mention of
15 a July 2003 letter from Laura to Michael or any common-interest privilege claim.
16 Instead, Entry No. 82 falsely characterizes the document.

17      Ruling No. 2. In September 2007, DC challenged Toberoff's reading of the
18 Court's April 30 order as a justification for withholding numerous documents.
19 Docket No. 164-1, Ex. C. DC pointed to missing correspondence between Laura
20 and Michael as examples of documents yet to be produced. *Id.* at 49; Docket No.
21 164-2 at 92-93. Defendants again did not disclose that Laura's July 2003 letter
22 existed or claim any privilege over it; rather, they argued the Court had "approved
23 the format of [their] logs." Docket No. 164-1, Ex. C at 70. Judge Larson did not
24 "reject DC's challenges [to the Siegels' privilege logs], *including its attempt to*
25 *compel the July 2003 letter*," as defendants assert. Opp. at 5:8-14 (emphasis
26 added). To the contrary, in late 2008, the Court ordered the escrow agent who held
27 the Timeline documents to "produce to [DC] any escrow document not previously
28 listed in a privilege log" or previously produced. Docket No. 164-2, Ex. H at 116.

(Defendants describe this one order as three separate rulings.  Opp. at 5:8-14.)

<u>Ruling No. 3.</u>  The escrow holder sought clarification of the Court's order, and DC urged the Court to allow the escrow to compare the Timeline documents with Toberoff's declaration to ensure all non-privileged documents were produced.  Docket No. 164-2 at 118.  Judge Larson declined to permit the escrow holder to test the veracity of Toberoff's privilege log entries, relying instead on defendants' assurance that *all* responsive, non-privileged documents had been produced.  *Id.* at 121.  Judge Larson made no ruling regarding the July 2003 letter.  Nor could he have.  The July 2003 letter is mentioned *nowhere* in Toberoff's declaration, Docket No. 236-8, contrary to defendants' assertions here, Opp. at 5, and given that log Entry No. 82 was still falsely identified as a fax from Laura to *Toberoff*, *no* claim of common-interest privilege was ever asserted over the July 2003 letter or litigated.

<u>Ruling No. 4.</u>  In this action, DC moved in January to obtain correspondence between Laura and Michael from May and July 2003 referenced in the Toberoff Timeline.  Docket No. 160 at 30-38.  Defendants refused to confirm whether such letters existed, except to deny that a "July 5 letter" existed, Docket No. 160 at 71-72.  Defendants *never* claimed common-interest privilege over any of these letters.  Rather, they argued the Court rejected challenges to the format of "the Siegels' privilege logs"; the Timeline was "a grossly inaccurate hit piece" that referred "to numerous documents that do not exist"; and to "the extent that relevant documents exist, they have either been produced or designated as privileged."  *Id.* at 67, 71.

On April 11, the Magistrate ordered defendants to produce a May 13, 2003, letter from Michael to Laura, but declined to order production of Laura's July 2003 response, reasoning "[a]lthough defendants are somewhat cryptic about [the July 2003] letter, … they asserted privilege as to the letter during the prior litigation, a designation that was upheld by this Court."  Docket No. 209 at 11.  But defendants have now conceded the truth:  The letter to which "they asserted privilege" is at Entry 82, and the only communication listed at that log entry is a fax from Laura to

1  Toberoff—*not* a July 2003 letter from Laura to Michael. *Compare* Opp. at 5, *with*
2  Docket No. 317, Appendix A at 2. No Court ever sustained a privilege claim as to
3  that letter between siblings. And the Magistrate did not have defendants' later
4  admissions about Entry No. 82—made on September 1, 2011—when it ruled.

<span style="margin-left:2em"></span>Ruling No. 5. Citing the May 13 letter, DC moved to compel Laura's likely
July 2003 response to it, and asked the Court to order defendants to search for all
correspondence between the siblings. Docket No. 253. Defendants again did not
admit the July 2003 letter existed or claim it was covered by a common-interest
privilege. Instead, they accused Michael Siegel (who is deceased) of being a
disturbed man, said his May 13 letter could not be trusted, and argued DC's motion
was barred by the Court's prior rulings. Docket No. 269 at 10-12. On June 20, the
Court denied DC's motion, saying it did not want to compel defendants to conduct
a "vague" search for a document that might not exist. Docket No. 288 at 19:10-23.

<span style="margin-left:2em"></span>Of course, the Magistrate did not have before it Laura's deposition testimony
and defendants' September 1 admissions that the July 2003 *did exist* and defendants
*know exactly where it was*: hidden behind Siegel privilege log Entry No. 82.

**II.      The July 2003 Letter Is Directly Relevant To DC's Claims.**

<span style="margin-left:2em"></span>Defendants assert the July 2003 is not relevant and should not be discovered,
Opp. at 9:20-10:8, but omit to mention that in December 2010 they *waived*, by
stipulation and court order, all relevancy objections to DC's document requests
calling for the July 2003 letter, Docket Nos. 133 at 1; 316 at 14 n.1. Michael
Siegel's May 13 letter—to which Laura's July 2003 letter admittedly responds—
also disproves defendants' claims that the July 2003 letter is irrelevant. Opp. at
9:27-28. Toberoff's false representations about "mysterious billionaire" to "*all
members of the Siegel interest*," Docket No. 225-4 at 3 (emphasis added), is raised
in the May 13 letter and DC's complaint, Docket No. 49 ¶ 8, and May 13 letter
refutes defendants' claims in their SLAPP briefs that Toberoff never invoked a
"mysterious billionaire" to induce the Siegels to cut their ties to DC, Docket No.

1  225-4 at 3.  Indeed, the May 13 letter establishes a pattern and practice by Toberoff
2  and his companies of falsely claiming to have a "billionaire investor" willing to pay
3  heirs for their rights, when no such person exists.  As she recently testified, Laura's
4  July 2003 letter responds to Michael's concerns about Toberoff's false promises,
5  which are directly relevant to DC's tort claims.  Docket Nos. 49 ¶¶ 7-9, 66-85; 49
6  Ex. A at 64-65; *see* Docket Nos. 160 at 30-33, 37-38; 171 at 3-4; 225 at 13-17; 243
7  at 10-12; 253 at 6-9; 274 at 1-2, 6-8; 307 at 9-13, 15-17; 316 at 1-3, 6-20; 317.

**III.   The July 2003 Letter Is Not Shielded By A Common-Interest Privilege.**

Defendants falsely suggest the Magistrate ruled Laura's July 2003 letter was shielded by a common-interest privilege.  Opp. at 8:26-9:1.  Defendants first raised the common-interest claim on September 1, 2011.  Docket No. 317 at 1.  In denying DC's motion, the Magistrate said *nothing* about defendants' common-interest privilege claim; he said instead he was bound by prior rulings, which even if "incorrect," he would not revisit now.  Docket No. 323 at 2.  Because the Magistrate never reached the merits of defendants' common-interest claim, there is no ruling on this issue to which this Court can or must defer.

Defendants also assert the Magistrate "expressly upheld the joint interest privilege … that is the subject of the May 13 letter, and any response by Ms. Larson to the May 13 letter."  Opp. at 8-9.  This contention is also in error.  To begin, the Magistrate ordered defendants to *produce* the May 13 letter, Docket No. 209 at 12, and they did so without asserting common-interest.  For this reason alone, the common-interest claim they assert as to the July 2003 letter makes no sense; Laura admits her July letter was a *direct response* to Michael's May letter.

In opposing DC's motion to compel 11 other communications between Laura's and Michael's representatives, defendants swore five of the documents did *not* exist and the remaining six—*all from 2006*—"relate[d] to Bulson's [Michael Siegel's attorney's] response to a subpoena served by DC," and thus fell under common-interest protection.  Docket No. 160 at 69:14.  The Magistrate reviewed

those six subpoena-related documents *in camera* and found they dealt with "logistical issues." Docket No. 239 at 1. The Magistrate did not address Laura's July 2003 letter to her brother—which was never reviewed *in camera*, had nothing to do with a subpoena, and which defense counsel refused to confirm existed until September 1, 2011. Docket Nos. 316 at 4-5, 21-31; 316-1 ¶ 9; 316-6; 316-9 ¶¶ 3-4.

In 2008, an Ohio district court did review 15 pieces of Siegel-related correspondence from 2003 and held that 15 of the 15 documents over which defendants claimed a common-interest privilege were *not* privileged. Docket No. 161-5 at 30-31. These communications concerned Toberoff's offers and efforts to acquire the Siegel heirs' rights. *Id.* As such, the Ohio court held that Laura's interests were not in common with Michael's, and these 15 communications must be produced to DC:

> *[T]he court finds that the interest of Michael Siegel … is separate and apart from those of Joanne and Laura Siegel.* These documents relate to offers back and forth between Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and Bulson on behalf of Michael Siegel. *Id.* (emphasis added).

Before they filed their current opposition brief, defendants admitted Laura's July 2003 letter to Michael concerned the very same subject. In a brief submitted on September 2, 2011, they wrote: "The July 2003 letter was a response to a May 11, 2003 letter from Michael Siegel that concerned an offer to purchase Mr. Siegel's limited Superman interest." Docket No. 316 at 4:24-25. This admission was corroborated by Laura, at her deposition, in which she testified her July 2003 letter addressed "criticisms of Mr. Toberoff," and promises he made to the Siegels about "investors." Docket No. 316-5 at 325-27. These are the very subjects the Ohio court held were not covered by a common-interest claim.

Defendants suggest a further motion DC filed and that the Ohio court denied validates the "Siegels' invocation of the 'joint interest' privilege as to *all* communications between Laura Siegel and Michael Siegel…." Opp. at 9. Again,

- 6 -

DC'S REPLY ISO MOT. FOR REVIEW OF MAGISTRATE'S ORDER

1  this is wrong.  DC's motion did not seek and could not seek such relief, since *no*
2  *communication between Laura and Michael has ever been logged by defendants—*
3  *none.*  Decl. of Jason Tokoro ¶ 2.  Moreover, contrary to defendants' assertion, the
4  Ohio court never "f[ound] … that Laura and Michael Siegel shared a joint interest."
5  Opp. at 9:13.  Rather, the Ohio court denied DC's motion because "the substantive
6  phase of the [*Siegel*] litigation [was] over" and the documents DC sought did not
7  relate to "valuation issues," which was what remained at issue in the *Siegel*
8  accounting trial.  Docket No. 161-7 at 42-43.  Here, of course, Toberoff's dealings
9  with the Siegel heirs is directly relevant, and is the subject of discovery the
10 Magistrate, this Court, and the Ninth Circuit all have rightly permitted.

11 **IV.    Newly-Discovered Evidence Makes Reconsideration Appropriate.**

12         Even assuming the courts' prior orders are relevant, reconsideration of them
13 is necessary given the "emergence of new material facts."  C.D. LOCAL RULE 7-18.
14 It was not until Laura's July 22, 2011 deposition in this case—which occurred *after*
15 the prior motions at issue here—that she admitted she wrote a July 2003 letter to
16 Michael that addressed his accusations about Toberoff.  Docket No. 316-5 at
17 314:12-15, 316:11-12, 323:11-14, 325:22-327:22, 328:3-330:3.  And it was not
18 until September 1, 2011—well *after* all of the orders at issue here—that defendants
19 admitted (a) Laura's July 2003 letter was identified on their logs as a "Facsimile"
20 from Laura to Toberoff (*not* a letter from Laura to Michael); and (b) that the letter
21 had been withheld on "Atty/Client Privilege" (*not* common interest) grounds.

22         Defendants' claim that Laura's deposition testimony "does absolutely
23 nothing to distinguish this motion from DC's prior denied motions," Opp. at 7:1:4,
24 is plainly untrue.  Even after Laura gave her testimony, defendants refused to
25 confirm they still possessed the July 2003 letter until September 1, 2011.  Docket
26 Nos. 316-1 ¶ 9; 316-6; 316-9 ¶¶ 3-4.  Moreover, the Magistrate denied DC's motion
27 seeking correspondence between Michael and Laura on the grounds that it was
28

1  unclear such a letter existed. *Supra* at 4. Defendants' September 1 admission that
2  they possess Laura's July 2003 letter directly obviates this concern.

**V.    Defendants' SLAPP Arguments Are Irrelevant And Without Merit.**

Evading the Court's page limitations on briefing yet again, Docket No. 328, defendants spend over three pages of their opposition making additional arguments in support of their non-meritorious SLAPP motion. DC will not belabor the issue, but each argument defendants' advance is directly belied by their sworn discovery responses, admissions, the law, and common sense.

- Any claim that DC sued Toberoff for his actions as a lawyer, Opp. at 10, is belied by the plain terms of DC's complaint, which targets his conduct in conducting commercial, business transactions involving contracts made by him and his entertainment companies. He told the *Wall Street Journal* he "keeps a defined firewall between producing and legal matters," Docket No. 307 at 1, and California law is clear: the SLAPP statute and litigation privilege do *not* apply to lawsuits against lawyers challenging business conduct, *id*. at 15-17, 23-24.
- Toberoff's claim that he and his companies could not have interfered with DC's business relations with the Siegels because DC's relationship with the Siegels ended in May 2002, Opp. at 10, is also false. The Siegels swore in interrogatory responses in the *Siegel* case and Laura confirmed in her deposition in this case that the Siegels "did not cut off negotiations" with DC until September 2002 and Toberoff intervened. Docket Nos. 305-21 at 694; 305-24 at 889:12-15
- The notion that any of DC's claims is barred by the statute of limitations, Opp. at 10, is also unfounded. DC did not discover Toberoff's August 2002 acts of fraud until December 2008, when Judge Larson ordered the Toberoff Timeline to be produced to DC. DC's claims are also not time-barred because defendants fraudulently concealed their misconduct. *E.g.*, Docket No. 184 at 10-13.
- Defendants' claim that DC has "no evidence" to support its claims, Opp. at 10, ignores defendants' recent admissions that the related Shuster business

- 8 -                                    DC'S REPLY ISO MOT. FOR REVIEW
                                                  OF MAGISTRATE'S ORDER

1 | agreements Toberoff induced the heirs to sign were "void" under copyright law
2 | and unlawful. Docket Nos. 147-1 at 2, 8; 191 at 8; 305-37 at 1310:1-1314:3,
3 | 1325:9-1337:1. It also ignores that after Toberoff intervened and misled the
4 | Siegels, the Siegels fired Marks, terminated their relationship with DC, and
5 | signed contracts with Toberoff's entertainment company, IP Worldwide.
6 | Docket No. 184 at 4-8.

## VI. Conclusion

DC's motion should be granted.

Dated: October 13, 2011

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli