Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:   (310) 246-3333
Fax:           (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Complaint filed:    May 14, 2010<br>Discovery Cutoff:  None Set<br>Trial Date:          None Set<br><br>Date:    November 14, 2011<br>Time:    1:30 p.m.<br>Place:   Courtroom 11 |

1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (State Bar No. 90072)
2    *rkendall@kbkfirm.com*
   Laura W. Brill (State Bar No. 195889)
3    *lbrill@kbkfirm.com*
   Nicholas F. Daum (State Bar No. 236155)
4    *ndaum@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California 90067
   Telephone: (310) 556-2700
6  Facsimile: (310)556-2705

7  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
8  Worldwide, LLC, and IPW, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2011 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, and Jean Adele Peavy (the "Shuster Defendants"), defendant Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel (the "Siegel Defendant"), and defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC (the "Toberoff Defendants") (collectively, "Defendants"), will and hereby do move to dismiss the claims for relief in the plaintiff DC Comics' ("DC") first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and this Court's September 27, 2011 order (Docket No. 328) as follows:

- The Shuster Defendants move to dismiss the First Claim for Relief, in which they are the only named defendants, as it is barred by the statute of limitations. The Shuster Defendants also move to dismiss sub-part (3) of the First Claim, which incorrectly alleges that a 1992 Agreement prevents the Shuster Estate from pursuing its termination rights, and sub-part (4) as barred by the judgment in the closely related case *Siegel v. Warner Bros. Entertainment, Inc.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx) ("*Siegel*") (Request for Judicial Notice, Ex. J) under the doctrine of issue preclusion.

- The Shuster Defendants move to dismiss sub-parts (a) and (c) of the Second Claim for Relief, in which they are the only named defendants, as such sub-parts are barred by the judgment in *Siegel* under the doctrine of issue preclusion.

- All Defendants move to dismiss the Third Claim and Sixth Claims for Relief, for declaratory relief under the Copyright Act and California's Unfair Competition Law, respectively, as both claims are barred by (i) the statute of limitations. Both claims also fail to state a claim because (ii) they are premised

1
NOTICE OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

on the erroneous legal position that DC has a statutory "right" to a so-called "period of exclusivity" under 17 U.S.C. § 304, and (iii) DC consequently lacks standing and the claims are subject to dismissal under F.R.C.P. 12(b)(1).   The Sixth Claim is also (iv) barred by the "litigation privilege," Cal. Civil Code § 47, (v) preempted by the Copyright Act and (vi) fails to state a claim because DC fails to plead "unfair, unlawful or fraudulent" conduct.

- Defendants Marc Toberoff and Pacific Pictures Corporation move to dismiss the Fourth Claim for Relief, for tortious interference with contract, for which they are the only named defendants, as it is barred (i) by the statute of limitations, (ii) by the "litigation privilege" of California Civil Code § 47, and (iii) because it fails to state a claim, as neither interference nor a valid contract has been alleged.

- Defendant Marc Toberoff moves to dismiss the Fifth Claim for Relief, for tortious interference with prospective economic advantage, in which he is the only named defendant, as it is barred (i) by the statute of limitations, and (ii) by the "litigation privilege" of California Civil Code § 47.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 15, 2010 and on October 6, 2011.  This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated:  October 14, 2011          RESPECTFULLY SUBMITTED,

/s/ Richard Kendall
Richard Kendall

KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants Marc Toberoff,  Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Marc Toberoff
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, as
personal representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura Siegel
Larson, individually and as personal representative
of the Estate of Joanne Siegel

NOTICE OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................1

ARGUMENT ............................................................................................................4

    I.      Legal Standard.............................................................................4

    II.     The First Claim...........................................................................5

          A.    The First Claim Is Barred By the Statute of Limitations.......5

          B.    The 1992 Agreement Does Not Bar the Shuster Termination...................................................................6

          C.    The 1948 Consent Judgment Does Not Bar the Shuster Termination...................................................................6

    II.     The Second Claim .......................................................................6

    III.    The Third and Sixth Claims ........................................................7

          A.    The Third Claim Is Barred By the Statute of Limitations...................................................................7

          B.    The Sixth Claim Is Barred By the Statute of Limitations......8

          C.    DC Has No Legal "Right" to Negotiate (Third and Sixth Claims) ........................................................8

          D.    DC Lacks Standing to Bring the Third and Sixth Claims ...10

          E.    The Sixth Claim Is Barred By the Litigation Privilege .......11

          F.    The Sixth Claim Is Preempted By the Copyright Act .........12

          G.    The Sixth Claim Fails To Plead Conduct That Violates the UCL...............................................................13

    IV.    The Fourth Claim .....................................................................15

          A.    The Fourth Claim Is Barred By the Statute of Limitations...................................................................15

          B.    The Fourth Claim Is Barred By the Litigation Privilege .....16

          C.    DC Fails to State a Claim For Tortious Interference...........17

    V.     The Fifth Claim .......................................................................22

          A.    The Fifth Claim Is Barred By the Statute of Limitations ....22

          B.    The Fifth Claim Is Barred By the Litigation Privilege........23

CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>** **Pages**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ...................................................................5

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ...................................................................................11

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) .................................................................12

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) .................................................................................4

*Blue Nile, Inc. v. Ice.com, Inc.*,
478 F. Supp. 2d 1240 (W.D. Wash. 2007) ..............................................13

*Bourne Co. v. MPL Commc'ns, Inc.*,
675 F. Supp. 859 (S.D.N.Y. 1987) ....................................................... 9-10

*Brown v. Dunbar*,
2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010).......................... 6-7

*Campbell v. PMI Food Equipment Group, Inc.*,
509 F.3d 776 (6th Cir. 2007) .....................................................................8

*Classic Media, Inc. v. Mewborn*,
532 F.3d 978 (9th Cir. 2008) ...............................................................1, 20

*Clinton v. Jones*,
520 U.S. 681 (1997).....................................................................................7

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ...................................................................6

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987) ...................................................................13

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
623 F. Supp. 2d 1144 (E.D. Cal. 2009) ....................................................6

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .................................................................21

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) .....................................................................21

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002).....................................................................................19

*Eagle Precision Tech., Inc. v. Eaton Leonard Robolix, Inc.*,
2006 WL 6544087, No. 03-CV-352 BEN (WMc) (S.D. Cal. 2006)......................16

*Estate of Blue v. County of Los Angeles*,
120 F.3d 982 (9th Cir. 1997) ............................................................ 4-5

*Forcier v. Microsoft Corp.*,
123 F. Supp. 2d 520 (N.D. Cal. 2000) ............................................ 15-16

*Gardner v. Nike, Inc.*,
279 F.3d 774 (9th Cir. 2002) ...............................................................11

*Idema v. Dreamworks, Inc.*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................................12

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
2007 U.S. Dist. LEXIS 12786 (N.D. Cal. Feb. 12, 2007) .........................8

*Kodadek v. MTV Networks*,
152 F.3d 1209 (9th Cir. 1998) ...................................................... 12-13

*Marvel Characters, Inc. v. Simon*,
310 F.3d 280 (2d Cir. 2002) ................................................................19

*Medimatch, Inc. v. Lucent Techs., Inc.*,
120 F. Supp. 2d 842 (N.D. Cal. 2000) ...................................................8

*MEECO Mfg. Co. v. True Value Co.*,
Copy. L. Rep. (CCH) P29,368,
2007 U.S. Dist. LEXIS 25986 (W.D. Wash. Apr. 3, 2007) .......................8

*Metro. Transp. Comm'n v. Motorola, Inc.*,
342 Fed. Appx. 269 (9th Cir. 2009)........................................................6

*Milne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) .....................................................10, 20

*Mindys Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ...............................................................17

*Morcote v. Oracle Corp.*,
2005 WL 3157512 (N.D. Cal. Nov. 23, 2005) ........................................8

*Motown Record Corp. v. George A. Hormel & Co.*,
657 F. Supp. 1236 (C.D. Cal. 1987) .....................................................13

*Nasr v. Geary*,
2003 U.S. Dist. LEXIS 13887 (C.D. Cal. June 9, 2003) .........................11

*Oei v. N. Star Capital Acquisitions, LLC*,
486 F. Supp. 2d 1089 (C.D. Cal. 2006) ..................................................5

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
469 U.S. 189 (1985)............................................................................10

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1997) .................................................................5

*Preminger v. Peake*,
536 F.3d 1000 (9th Cir. 2008) ............................................................... 11

*Ritchie v. Williams*,
395 F.3d 283 (6th Cir. 2005) ................................................................. 12

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997) ........................................................ 7

*Seiden Assoc., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) ................................................................... 21

*Shroyer v. New Cingular Wireless Servs.*,
606 F.3d 658 (9th Cir. 2010) ................................................................. 14

*Siegel v. Warner Bros. Entertainment Inc.*,
Case No. 04-CV-08400 ODW (RZx) ............................................... *passim*

*Siegel v. Warner Bros. Entertainment Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ......................................... 5-6, 19

*Siegel v. Warner Bros. Entertainment Inc.*,
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ............................................... 6-7

*Simply Fit of N. Am., Inc. v. Poyner*,
579 F. Supp. 2d 371 (E.D.N.Y. 2008) ..................................................... 21

*Stewart v. Abend*,
495 U.S. 207 (1990) ............................................................................... 19

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) ........................................ 15

*Super Tire Eng'g Co. v. McCorkle*,
416 U.S. 115 (1974) ................................................................................. 8

*Trenton v. Infinity Broadcast'g Corp.*,
865 F. Supp. 1416 (C.D. Cal. 1994) ....................................................... 13

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) .................................................................... 5

**Federal Statutes and Rules**

17 U.S.C. § 203(a)(5) .............................................................................. 19

17 U.S.C. § 301(a) ................................................................................... 12

17 U.S.C. § 304(c)(5) ..................................................................... 3, 6, 19-20

17 U.S.C. § 304(c)(6)(B) ........................................................................... 5

17 U.S.C. § 304(c)(6)(D) ................................................................... *passim*

17 U.S.C. § 304(d) ................................................................................. 2, 16

17 U.S.C. § 507(b) ................................................................................. 5, 7

F.R.C.P. 8(a)(2) ........................................................................................ 4

F.R.C.P. 9(b) ........................................................................................... 14

F.R.C.P. 12(b)(1) ..................................................................................... 3

F.R.C.P. 12(b)(6) ................................................................................. 4, 21

**<u>State Cases</u>**

*Aronson v. Kinsella,*
58 Cal. App. 4th 254 (1997) ................................................................. 11

*Asia Inv. Co. v. Borowski,*
133 Cal. App. 3d 832 (1982) ................................................................ 12

*Beck v. Mfrs. Hanover Trust Co.,*
481 N.Y.S.2d 211 (N.Y. Sup. Ct. 1984) ............................................... 21

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners,*
52 Cal. App. 4th 867 (1997) ................................................................. 19

*Brandlin v. Belcher,*
67 Cal. App. 3d 997 (1977) .................................................................. 24

*Cabral v. Martins,*
177 Cal. App. 4th 471 (2009) ............................................................... 17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal. 4th 163 (1999) ......................................................................... 14

*Chang v. Lederman,*
172 Cal. App. 4th 67 (2009) ................................................................. 17

*Crowley v. Katleman,*
8 Cal. 4th 666 (1994) ........................................................................... 24

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
47 Cal. App. 4th 777 (2008) ................................................................. 24

*Drum v. Bleau, Fox & Associates,*
107 Cal. App. 4th 1009 (2003) ............................................................. 17

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) ............................................................. 14

*Flaum v. Birnbaum,*
508 N.Y.S.2d 115 (N.Y. App. 1986) ..................................................... 21

*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal. 4th 797 (2005) ................................................................................ 22-23

*Frank Pisano & Associates v. Taggart,*
29 Cal. App. 3d 1 (1972) .................................................................................. 17

*GeneThera, Inc. v. Troy & Gould Professional Corp.,*
171 Cal. App. 4th 901 (2009) ........................................................................... 12

*Grisham v. Philip Morris U.S.A., Inc.,*
40 Cal.4th 623 (2007) ......................................................................................... 8

*Jolly v. Eli Lilly & Co.,*
44 Cal. 3d 1103 (1988) ............................................................................... 16, 22

*Kashian v. Harriman,*
98 Cal. App. 4th 892 (2002) ........................................................................ 24-25

*Olszewski v. Scripps Health,*
30 Cal. 4th 798 (2003) ...................................................................................... 13

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
50 Cal. 3d 1118 (1990) ......................................................................... 17-18, 25

*People's Choice Wireless v. Verizon Wireless,*
131 Cal. App. 4th 656 (2005) ........................................................................... 14

*Rosenthal v. Irell & Manella,*
135 Cal. App. 3d 121 (1982) ..................................................................*passim*

*Rothman v. Jackson,*
49 Cal. App. 4th 1134 (1996) ........................................................................... 11

*Rubin v. Green,*
4 Cal. 4th 1187 (1993) ............................................................................*passim*

*Rusheen v. Cohen,*
37 Cal. 4th 1048 (2006) .................................................................................... 11

*Samuels v. Forest,*
2007 WL 3149285 (Cal. App. Oct. 30, 2007) ................................................. 16

*Seltzer v. Barnes,*
182 Cal. App. 4th 953 (2010) ........................................................................... 12

*Silberg v. Anderson,*
50 Cal. 3d 205 (1990) ....................................................................................... 11

*Snapp & Associates Ins. Services, Inc. v. Robertson,*
96 Cal. App. 4th 884 (2002) ............................................................................... 8

*Stutz Motor Car of Am. v. Reebok Int'l,*
909 F. Supp. 1353 (C.D. Cal. 1995) .................................................................. 8

*Taheri Law Group v. Evans*,
160 Cal. App. 4th 482 (2008) ...................................................................24

*Trembath v. Digardi*,
43 Cal. App. 3d 834 (2000) ......................................................................15

*Wilton v. Mountain Wood Homeowners Assn.*,
18 Cal.App.4th 565 (1993) ......................................................................17

**State Statutes and Rules**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................2, 14

Cal. Bus. & Prof. Code § 17208 .................................................................8

Cal. Civil Code §47(b)....................................................................*passim*

Cal. Code Civ. Proc. § 339(1)............................................................15, 22

**Other Authorities**

H.R. Rep. No. 94-1476 (1976)............................................................ 12-13

61 CAL. JUR. 3d UNFAIR COMPETITION § 3 (2008) ...............................14

M. Nimmer & D. Nimmer, *Nimmer on Copyright* (2010) ("*Nimmer*")
1 *Nimmer* § 1.01[B][1] ..................................................................... 12-13

3 *Nimmer* § 11.01...................................................................................20

3 *Nimmer* § 11.08[A], n.6 .......................................................................10

W. Patry, *Patry on Copyright* (2010),
3 *Patry on Copyright* § 7:47 ...................................................................10

3 *Patry on Copyright* § 21:18 .................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

The Copyright Act's "termination" provisions, which preempt ordinary contract principles and empower authors and designated heirs after lengthy periods to terminate old copyright grants without cause, were enacted by Congress in recognition of the "unequal bargaining position of authors" and to enable them to secure "the monetary rewards of a work that may have been initially undervalued, but which later becomes a commercial success." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983-84 (9th Cir. 2008). This Court has determined, in three published opinions and a judgment in the related case of *Siegel v. Warner Bros. Entertainment Inc.*, Case No. 04-CV-08400 ODW (RZx) ("*Siegel*"), that plaintiff DC Comics ("DC") has neither the facts nor the law on its side in its long-running dispute with the heirs of Superman's co-creators, Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster"), over the exercise of their termination rights under the Copyright Act.

After this Court ruled in *Siegel* that Siegel's heirs had at long last recaptured his copyright in his iconic co-creation, DC filed this retaliatory lawsuit in 2010 against (a) Joanne Siegel (now deceased) and Laura Siegel Larson, individually and now personal representative of Joanne Siegel's Estate (the "Siegel Defendants"); (b) Mark Warren Peary, personal representative of the Estate of Joseph Shuster (the "Shuster Executor"), and Shuster's sister, Jean Adele Peavy (the "Shuster Defendants") (with the Siegel Defendants, the "Heirs"), and (c) their long-time attorney, Marc Toberoff, and affiliated entities, Pacific Pictures Corp. (dissolved), IP Worldwide, LLC (inactive) and IPW, LLC (the "Toberoff Defendants").

The transparent purpose of DC's lawsuit is to re-litigate the issues DC has already lost in the *Siegel* case; to disrupt the successful relationship between Mr. Toberoff and his clients; to obtain economic leverage by driving up Defendants' litigation costs, and to delay the final reckoning between DC and the Heirs.[1]

---

[1] Detailed background concerning the Copyright Act's termination provisions, the dispute between the Heirs and DC, the *Siegel* action, and DC's current allegations is set forth in the Toberoff Defendants' pending Anti-SLAPP Motion. *See* Docket No. 145-1 at 4-12.

Since filing this baseless suit, DC has run roughshod with burdensome and unwarranted motion practice, filing 15 discovery motions covering 30 issues, and has lost or withdrawn 24 of them. *See* Docket No. 313, ¶ 8; No. 323. The time has come to put an end to DC's sideshow, and dismiss its infirm claims as a matter of law.

First Claim (against the Shuster Defendants): DC's First Claim (First Amended Complaint (Docket No. 49) ("FAC"), ¶¶ 105-134) seeks to invalidate the Shuster Executor's notice of termination served on DC in 2003 and filed with the Copyright Office pursuant to 17 U.S.C. § 304(d) (the "Shuster Termination"). DC's First Claim presents five erroneous legal arguments in the hopes of undermining the Shuster Termination. However, this Court need not decide them as the First Claim accrued in 2003 and is clearly barred by the three-year statute of limitations. DC's alleged defenses based on a 1992 agreement and a 1948 consent judgment also fail as a matter of law.

Second Claim (against the Shuster Defendants): DC's Second Claim (FAC ¶¶ 135-164) seeks to adjudicate the "scope" of the Shuster Termination. This claim substantially duplicates issues already decided or pending in *Siegel*. Sub-parts (a) and (c) of this claim must be dismissed as barred by the judgment in *Siegel* (*see* Request for Judicial Notice ("RJN"), Ex. J) under the doctrine of issue preclusion, and the remainder of this claim should be stayed pending resolution of the more advanced *Siegel* litigation.

Third and Sixth Claims (against all Defendants): DC's Third Claim (FAC ¶¶ 165-173) for declaratory relief under the Copyright Act, and Sixth Claim (FAC ¶¶ 187-189) for declaratory relief under California's "Unfair Competition Law" (Cal. Bus. & Prof. Code §§ 17200 et seq.) ("UCL") both fail as a matter of law.

Both claims are barred by the statute of limitations: the Third Claim accrued by no later than 2006 and is subject to a three-year statute of limitations; the Sixth Claim accrued by no later than 2003 and is subject to a four-year statute.

Both claims are falsely premised on a nonexistent "right" to exclusively

negotiate with the Heirs to buy back the copyrights that are subject to termination. As DC has no such "right" under 17 U.S.C. § 304(c)(6)(D), its Third and Sixth Claims must fail as a matter of law.  Furthermore, as the statute grants DC no rights, DC also lacks standing under F.R.C.P. 12(b)(1) to pursue either claim.

The Sixth Claim is also barred by the litigation privilege under Cal. Civil Code §47(b), because it targets settlement and litigation related activity.  It is also preempted by the Copyright Act, as it concerns the same subject matter.  It also fails to state a viable UCL claim because it pleads no "unlawful, unfair or fraudulent" acts.

The Fourth Claim:  DC's Fourth Claim (FAC ¶¶ 174-79), for intentional interference with contract against defendants Marc Toberoff and Pacific Pictures Corporation, alleges that they induced defendant Mark Warren Peary to file statutory notices of termination and that these filings supposedly *breached* a 1992 agreement between DC and Joseph Shuster's siblings, Frank Shuster and defendant Jean Peavy (the "1992 Agreement").  The Fourth Claim is barred by the applicable two-year statute of limitations, since it is based on a purported breach in 2001, which DC indisputably discovered no later than 2006.  The claim is based on supposedly interfering agreements that were entered into for the purpose of effecting the Shuster Termination, and that Mr. Toberoff would provide legal support for that effort, and is therefore also barred by the litigation privilege under Cal. Civil Code § 47(b).

In addition, the Shuster Termination could not breach the 1992 Agreement as a matter of law because Shuster's siblings never possessed, exercised, or transferred a termination right under the Copyright Act.  Finally, even if the 1992 Agreement had attempted to prohibit the Shuster Termination in any way – and it did not – it would be void under the Copyright Act as a matter of law.  17 U.S.C. § 304(c)(5).

The Fifth Claim:  DC's Fifth Claim (FAC ¶¶ 180-86), for intentional interference with prospective economic advantage, against Mr. Toberoff, alleges that Mr. Toberoff interfered with the Siegel Defendants' settlement negotiations with DC. The FAC indisputably alleges that the purported interference took place in 2002

1   (FAC ¶¶ 74-81), and DC was on inquiry notice of all the alleged facts underlying this

2   claim by 2006 at the very latest, rendering it time-barred by the applicable two-year

3   statute of limitations.  Like the Fourth and Sixth Claims, this claim is also barred by

4   the litigation privilege.  The gravamen of the Fifth Claim is Mr. Toberoff's supposed

5   encouragement of the Siegel Defendants (a) to reject a "settlement offer" (FAC ¶

6   181) designed to "avoid the possibility of an expensive and protracted lawsuit

7   regarding ownership of rights" (FAC ¶ 183), and (b) to solicit an agreement that

8   expressly provided for Mr. Toberoff's legal services (FAC ¶ 83).  However, even if

9   these false allegations were true, such communications relating to the rejection of

10  settlement offers (*see Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 126

11  (1982)) and the alleged "solicitation" of clients (*see Rubin v. Green*, 4 Cal. 4th 1187

12  (1993)) are protected by law under Cal. Civil Code § 47(b)'s litigation privilege.

13                          <u>**ARGUMENT**</u>

14  **I.    LEGAL STANDARD**

15          Under F.R.C.P. 8(a)(2), a complaint must contain "a short and plain statement

16  of the claim showing that the pleader is entitled to relief."  To survive a motion to

17  dismiss under F.R.C.P. 12(b)(6), "a complaint must contain sufficient factual matter

18  … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct.

19  1937, 1949 (2009) (citations omitted).  "[W]here the well-pleaded facts do not permit

20  the court to infer more than the mere possibility of misconduct, the complaint has

21  alleged – but it has not 'shown' – 'that the pleader is entitled to relief'" and, on that

22  basis, must be dismissed.  *Id.,* 129 S.Ct. at 1950 (quoting F.R.C.P. 8(a)(2)).  Legal

23  conclusions "are not entitled to an assumption of truth."  *Id.* at 1950.

24          It is further well-established that courts can and should apply the statute of

25  limitations or other dispositive defenses on a motion to dismiss if the relevant facts

26  are alleged in the complaint or can be judicially noticed.  *See Estate of Blue v. County*

27  *of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) ("[T]he pleadings themselves

28  contain a detailed account of the procedural history…. [W]e may properly take

judicial notice of the papers filed…. It therefore was not error to decide the statute of limitations question on a motion to dismiss"); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1101-1103 (C.D. Cal. 2006) (determining litigation privilege at the pleading stage).  It is also proper to take judicial notice of documents referenced in a complaint, which are effectively incorporated by such reference.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1997).

## II.   THE FIRST CLAIM

### A.   The First Claim Is Barred By the Statute of Limitations

DC's First Claim (FAC ¶¶ 105-134) is for declaratory relief under the Copyright Act that the Shuster Termination is invalid and that DC will continue to co-own the Superman copyrights as the successor to Shuster's co-authorship share. The Ninth Circuit has held that such a claim for declaratory relief as to copyright co-ownership must be brought under 17 U.S.C. § 507(b) "within three years after the claim accrued," and that such a claim accrues upon a "plain and express repudiation" of ownership.  *Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (same); *Siegel*, 542 F. Supp. 2d 1098, 1134 (C.D. Cal. 2008) (same).

The Shuster Termination, served on November 10, **2003**, which terminates Shuster's Superman copyright grants to DC, clearly constitutes a "plain and express repudiation" of DC's copyright co-ownership – triggering the three-year statute of limitations under *Zuill* and *Aalmuhammed*.  FAC ¶ 92.  Moreover, the Shuster Executor's termination interest "vested on the [2003] date the notice of termination ha[d] been served."  17 U.S.C. § 304(c)(6)(B).  DC's claims are thus time-barred.

DC itself argued in the closely-related *Siegel* litigation for the application of the three-year statute of limitations to declaratory relief claims regarding termination notices, *see Siegel*, 542 F. Supp. 2d at 1134-36, yet for nearly five years since that action began and six years since receiving the Shuster Termination, DC chose to sit on its hands.  DC's First Claim should be dismissed as clearly barred by the statute of

1  limitations.

### B. The 1992 Agreement Does Not Bar the Shuster Termination

Part (3) of DC's First Claim that the 1992 Agreement bars termination (FAC ¶¶ 112-17) fails as a matter of law.[2]  As set forth in detail in Section IV.C regarding the Fourth Claim, the 1992 Agreement, as a matter of law, has no relevance to or effect on the Shuster Termination and, even if it was designed to prevent such termination, it could have no such effect, according to 17 U.S.C. § 304(c)(5).

### C. The 1948 Consent Judgment Does Not Bar the Shuster Termination

Part (4) of DC's First Claim that the May 21, 1948 consent judgment in an old Westchester, NY action (FAC ¶¶ 125-28) bars statutory termination also fails as a matter of law.  DC's exact same argument was rejected in *Siegel*, in an order now entered as a Rule 54(b) judgment.  *Siegel*, 542 F. Supp. 2d at 1131-32; Request for Judicial Notice ("RJN"), Ex. J.  The doctrine of issue preclusion or collateral estoppel bars re-litigation of such issues that have already been decided against DC on the merits, and applies with equal force to a Rule 54(b) judgment.  *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987); *Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010).

## II. SECOND CLAIM

DC's Second Claim (FAC ¶¶ 135-164) addresses the "scope" of the Shuster Termination.  Sub-parts (a) and (c) of DC's Second Claim concern "work for hire" issues which were thoroughly litigated and resolved in the *Siegel* action, and which are equally applicable to the Siegel and Shuster Terminations, since Siegel and Shuster co-authored the same Superman works and executed the same Superman grants subject to such terminations.  *Compare* FAC ¶¶ 153-54, 158-59 *with Siegel*, 542 F. Supp. 2d at 1126-30; *Siegel*, 658 F. Supp. 2d 1036, 1063-68, 1083 (C.D. Cal.

---

[2] Where one claim presents multiple theories, courts can dismiss those portions or sub-parts of a claim that are barred as a matter of law.  *See, e.g., Metro. Transp. Comm'n v. Motorola, Inc.*, 342 Fed. Appx. 269, 272 (9th Cir. 2009); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1180 (E.D. Cal. 2009).

2009) (work for hire issues); and FAC ¶¶ 153-54 *with Siegel*, 658 F. Supp. 2d at 1061 (unpublished Superman works).  Accordingly, sub-parts (a) and (c) of DC's Second Claim are clearly barred by the judgment in *Siegel* (RJN, Ex. J) under the doctrine of issue preclusion or collateral estoppel.  *See Brown v. Dunbar,* 2010 U.S. App. LEXIS 8160.  The remaining parts of the claim should be stayed pending resolution of the more advanced *Siegel* litigation.  *See, e.g., Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) (staying action pending related litigation to "serve the interests of judicial economy"); *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (a court "has broad discretion to stay proceedings as an incident to its power to control its own docket").

## III.    THE THIRD AND SIXTH CLAIMS

DC's Third Claim (for declaratory relief under the Copyright Act; FAC ¶¶ 165-73) and Sixth Claim (for declaratory relief under California's UCL; FAC ¶¶ 187-89) overlap as both focus on the 2001 and 2003 Pacific Pictures Agreements ("PPC Agreements") with the Shuster Defendants, which expired in 2004; a 2002 IP Worldwide Agreement with the Siegel Defendants, which expired in 2005 ("IPWW Agreement"); and a collective bargaining agreement between the Siegel Defendants and the Shuster Defendants made in *Siegel* ("Consent Agreement").[3]  RJN, Ex. I.  DC erroneously claims that these agreements "interfered" with a non-existent "right" of DC to negotiate with the Heirs regarding their statutory terminations.  Both claims are barred as a matter of law on numerous grounds:

### A.    The Third Claim Is Barred By the Statute of Limitations

The Third Claim for declaratory relief under the Copyright Act is subject to 17 U.S.C. § 507(b)'s three-year statute of limitations.  The Third Claim is expressly based on the old PPC Agreements and IPWW Agreement.  FAC ¶ 169.  DC knew about these agreements by **November 15, 2006** (if not earlier) when the agreements

---

[3] DC's allegations as to the Consent Agreement (FAC ¶¶ 101, 170, 188) are solely based on disclosures in Court-ordered settlement mediation, and willfully breach the explicit JAMS Confidentiality Agreement entered into by DC and the Heirs.  *See* Docket No. 160 at 51-57.

DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

1   were voluntarily produced to DC, and in **November 2006**, when DC took deposition

2   testimony regarding these agreements and Mr. Toberoff's relationship with the Heirs.

3   RJN, Exs. B-D, G-H, ¶ 7.[4]  Thus, DC's Third Claim expired in **November 2009**, six

4   months before this suit was filed.  Nor can DC claim any continuing harm from such

5   agreements, as they expired in 2004 and 2005, respectively.  *See* FAC ¶¶ 81-83, 99.[5]

### B.    The Sixth Claim Is Barred By the Statute of Limitations

7        DC's Sixth Claim is based on California's UCL.  "Any action to enforce any

8   cause of action [under the UCL] shall be commenced within four years after the

9   cause of action accrued."  Cal. Bus. & Prof. Code § 17208.  Like the Third Claim, the

10  Sixth Claim is expressly based on the **2001/2003** PPC Agreements and **2002** IPWW

11  Agreement.  FAC ¶ 188.  DC alleges that it was unaware of these claims when they

12  first accrued, but courts – especially federal courts applying the UCL – hold UCL

13  claims accrue at the moment of the alleged injury "irrespective of whether plaintiff

14  knew of its accrual."  *Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353,

15  1363 (C.D. Cal. 1995).[6]  DC's Sixth Claim therefore expired by no later than **2007**.

### C.    DC Has No Legal "Right" to Negotiate (Third and Sixth Claims)

17       DC's Third and Sixth Claims are both premised on the erroneous legal position

18  that DC has a "right" under 17 U.S.C. § 304(c)(6)(D) to negotiate the purchase of the

19  Heirs' recaptured Superman copyrights, and that the PPC, IPWW and Consent

---

21  [4] DC has argued that this claim and/or its Sixth Claim is saved from the statute of limitations by the 2008 Consent Agreement; however the Consent Agreement provides DC
22  with no basis for relief as a matter of law.  *See* Section III.C, *infra*.

23  [5] The Third and Sixth Claims are also moot insofar as they are based on the PPC and IPWW Agreements.  Since these agreements are no longer in effect, there is no "live controversy"
24  to support such declaratory relief claims.  *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974); *Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 781-82 (6th Cir. 2007); *Morcote v. Oracle Corp.*, 2005 WL 3157512, *4-5 (N.D. Cal. Nov. 23, 2005).

25  [6] *See Snapp & Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (2002)
26  ("The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to
27  [UCL] actions."); *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2007 U.S. Dist. LEXIS 12786, at *18 (N.D. Cal. Feb. 12, 2007) (following *Snapp*); *Medimatch, Inc. v.*
28  *Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 861 (N.D. Cal. 2000) (following *Stutz*).  *Cf.*
*Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 635 n.7 (2007).

Agreements purportedly interfere with DC's "right."  FAC ¶¶ 168-170, 188.
However, as shown below, the statute provides no such right, and case law
recognizes that no such right exists.  Indeed, the "Consent Agreement" issue has
already been addressed in this case.  After extensive briefing, Magistrate Zarefsky
rejected DC's arguments that the Consent Agreement constitutes "an independent
wrong [that] violates the Copyright Act," and found, instead, that it is simply a
legitimate "Drysdale-Koufax collective approach to negotiation." Docket No. 209 at
1-10.  This Court upheld that ruling.  Docket No. 252.

DC purports to base its argument on 17 U.S.C. § 304(c)(6)(D), which simply
provides that a "further grant, or agreement to make a further grant, of any right
covered by a terminated grant is valid only if it is made after the effective date of the
termination," but that an "agreement for such a further grant may be made between
the author or [his heirs] and the original grantee or such grantee's successor in title,
after the notice of termination has been served."  DC alleges that § 304(c)(6)(D)
gives it an exclusive "right" to negotiate the purchase of the recaptured Superman
copyrights, when *the statute says no such thing*.  *See* FAC ¶¶ 168-71.  It plainly does
not provide a terminated grantee such as DC any "right" of negotiation or otherwise.
The statute also does not mandate any action by the terminating party; it merely
*invalidates* certain agreements that grant or promise to make a grant, under specified
circumstances.  *See* 17 U.S.C. § 304(c)(6)(D).

The theory DC advances was expressly addressed and rejected in *Bourne Co.
v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987):

> ***Nor does the statute [17 U.S.C. § 304(c)(6)(D)] provide for an exclusive
> period of negotiation. The statute neither compels the terminating party to
> negotiate with the terminated grantee, nor forbids him from negotiating with
> anyone else.*** All it requires is that prior to the effective date of termination, the
> terminated grantee is the only person with whom the author or his successor
> can make an enforceable and effective agreement to transfer those rights. The
> provision does give the terminated grantee a preferred competitive position but
> "[i]f the author can afford to wait for competitive offers until after the effective
> date of termination, he can overcome any advantage the grantee or successor
> may seek to gain from the preferential position."

DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

*Bourne* also noted that "[i]ndeed, the statute merely provides that a grant to someone other than the original grantee is valid 'only if it is made after the effective date of termination,' not that such a grant is valid only if *negotiated* after the termination date." *Id.* at n.11 (emphasis in original). If Congress intended to give a terminated party a right of exclusive negotiations or a right of first refusal, rather than a mere "competitive advantage," it would have done so in the statute.[7]

The Siegels and the Shuster Executor were not compelled to negotiate with DC either before or after they served their termination notices. DC's Third and Sixth Claims fail on their face because they misapprehend the law and contravene the plain meaning of the statute's unambiguous language. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language … and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

### D.    DC Lacks Standing to Bring the Third and Sixth Claims

Because DC has no particular "rights" under 17 U.S.C. § 304(c)(6)(D), it has no basis nor standing to sue for an alleged "violat[ion] of section 304(c)(6)(D)." FAC ¶¶ 170, 188. *Patry on Copyright*, a leading copyright treatise, agrees:

> "[Section 304(c)(6)(D)], sometimes ***erroneously described as a 'right of first refusal,'*** does not give the original grantee a right to conclude such an agreement; it only means that if such an agreement is made, it will be enforceable. Most importantly, ***if the original grantee is not provided a first crack, there is no remedy***."

3 W. Patry, *Patry on Copyright* § 7:47 (2010) (emphasis added). A terminated grantee has "no rights under [§ 304(c)(6)(D)], cannot sue for failure to comply, and the provision therefore does not provide a basis for standing." 3 *Patry on Copyright* § 21:18. As § 304(c)(6)(D) does not create a "legally protected interest," it does not

---

[7] *See Milne v. Stephen Slesinger, Inc.,* 430 F.3d 1036, 1048 (9th Cir. 2005) (holding, with respect to termination rights, "if Congress intended [a requirement] it would have clearly said so"); *Bourne,* 675 F. Supp. at 866 ("If Congress had intended to create a right of first refusal, it would have done so in clear language," and "[t]he statute does not provide that any agreement negotiated by the terminating party must first be offered on the same terms to the terminated grantee."); 3 *Nimmer* § 11.08[A], n.6 (2010) ("It is inaccurate to refer to this [§ 304(c)(6)(D)] advantage as 'an exclusive period of negotiation.'").

confer standing on DC to sue for a violation. *Preminger v. Peake*, 536 F.3d 1000, 1005 (9th Cir. 2008). Therefore, DC's Third and Sixth Claims, based on § 304(c)(6)(D), both fail. *See Gardner v. Nike, Inc.*, 279 F.3d 774, 777 (9th Cir. 2002) (holding that copyright licensees "lacked standing to bring the action because they had no legally cognizable interest in the suit"); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding that there is no federal cause of action unless Congress showed "an intent to create not just a private right but also a private remedy," and without such intent, "a cause of action does not exist and courts may not create one").

### E.    The Sixth Claim Is Barred By the Litigation Privilege

DC's Sixth Claim is also barred as a matter of law by the litigation privilege codified in California Civil Code § 47(b). FAC ¶¶ 101, 170, 188. Civil Code § 47(b) provides ***absolute immunity*** against all torts for any communication in any "judicial proceeding" or "any other official proceeding authorized by law," as discussed in Section IV.B. *See Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990). In addition, "where the [claim] is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1052 (2006).

The Consent Agreement was entered into *during* the *Siegel* litigation as part of settlement discussions. Both the PPC Agreements and the IPWW Agreement clearly reference litigation regarding the terminations and recaptured Superman copyrights, and were entered into during a climate of anticipated litigation apparent from the Siegels' unsuccessful settlement negotiations. FAC ¶¶ 60-65, 90; RJN, Exs. B-D; *see Nasr v. Geary*, 2003 U.S. Dist. LEXIS 13887 (C.D. Cal. June 9, 2003) ("'[C]ommunications which have some relation to an anticipated lawsuit'" are protected by the litigation privilege) (quoting *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997)); *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) (same); *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1145 (1996) (same).

DC admits that all of these agreements relate to ***settlement*** of litigation. *See*

1   FAC ¶ 170 (such "agreements … impede [DC's] ability to settle any and all disputes

2   with the Shusters and Siegels"), ¶ 188 (the agreements "strip the Siegels and Shusters

3   of their right freely to settle their claims").  Where alleged conduct regards

4   "settlement … [the] Civil Code section 47 litigation privilege applies as a matter of

5   law."  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 972 (2010).[8]  DC's claim is thus

6   barred by the litigation privilege.

7   **F.      The Sixth Claim Is Preempted By the Copyright Act**

8       DC's Sixth Claim is clearly preempted by the Copyright Act.  The Copyright

9   Act "broadly preempts state law claims."  *Ritchie v. Williams*, 395 F.3d 283, 285 (6th

10  Cir. 2005).  17 U.S.C. § 301(a) specifically preempts "all legal or equitable rights that

11  are equivalent to any of the exclusive rights within the general scope of copyright,"

12  as defined in 17 U.S.C. § 106.  If a "state law unfair competition claim is based solely

13  on rights equivalent to those protected by the federal copyright laws," then the claim

14  is preempted.  *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. 1998).

15      To avoid preemption, the plaintiff must demonstrate that its "state law claim

16  includes an 'extra element' that makes the right asserted qualitatively different from

17  those protected under the Copyright Act."  *Altera Corp. v. Clear Logic, Inc.*, 424

18  F.3d 1079, 1089-90 (9th Cir. 2005).  To determine whether a state claim contains an

19  "extra element," courts look to "whether the gravamen of the state law claim … is the

20  same as the rights protected by the Copyright Act."  *Idema v. Dreamworks, Inc.*, 162

21  F. Supp. 2d 1129, 1190 (C.D. Cal. 2001).  "[I]f a state-created right is 'within the

22  general scope of copyright,' it is subject to pre-emption, even if the precise contours

23  of the right differ from any of those conferred by Section 106."  1 M. Nimmer & D.

24  Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 1.01[B][1] (quoting H.R. Rep. No. 94-

---

[8] *See GeneThera, Inc. v. Troy & Gould Professional Corp.*, 171 Cal. App. 4th 901, 909-10 (2009) ("A settlement letter directed to counsel falls within the category of communications to which the [§ 47(b)] privilege attaches …."); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 128 (1982) (letter sent by an attorney to induce plaintiff's professional liability insurers to settle a malpractice action against him was absolutely privileged under § 47(b)); *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 842 (1982) (settlement proposal that was an alleged "threat to coerce" through legal action was absolutely privileged under § 47(b)).

1476 (1976) at 130); *Trenton v. Infinity Broadcast'g Corp.*, 865 F. Supp. 1416, 1428 (C.D. Cal. 1994) ("'The fact that the state-created right is either broader or narrower than its federal counterpart will not save it from preemption.'") (citation omitted).

Here, DC's Sixth Claim for "state-law" unfair competition is a mere reformulation of DC's Third Claim for declaratory relief under the Copyright Act. DC's Third Claim under the Copyright Act seeks "[a] declaration … to establish the parties' respective rights and obligations with respect to the copyright interest in the Superman material."  FAC, ¶ 172.  DC's Sixth Claim under the UCL likewise seeks to "establish the parties' respective rights and obligations with respect to the copyright interest in the Superman material."  FAC ¶ 189.  As DC's UCL Claim is inextricably intertwined with copyright rights, it is clearly preempted.[9]

Furthermore, DC's Sixth Claim incorporates by reference "each and every allegation contained in the paragraphs above" under the Copyright Act and makes no additional allegations.  FAC ¶¶ 187-88.  This alone concedes preemption.  *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987) (dismissing California UCL claim that incorporated by reference plaintiff's copyright claim).[10]

## G.    The Sixth Claim Fails To Plead Conduct That Violates the UCL

DC's Sixth Claim also does not plead any "unlawful, unfair, or fraudulent business practice" as required under the UCL (*Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003)), and must be dismissed as a matter of law.

Unlawful:    "A business practice is unlawful [under the UCL] 'if it is forbidden

---

[9] *See Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (finding preemption of  UCL claim where "[t]he argument is constructed upon the premise" of a Copyright Act violation"); *Kodadek,* 152 F.3d at 1212-13 (dismissing California UCL claim where allegations were "within the 'subject matter' of the Copyright Act").

[10] *See also Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) ("Plaintiff's [UCL] claim is dismissed as preempted because by incorporating the copyright claims by reference, the [UCL] claim is based on rights equivalent to those protected by copyright."); *MEECO Mfg. Co. v. True Value Co.*, Copy. L. Rep. (CCH) P29,368, 2007 U.S. Dist. LEXIS 25986 at *14 (W.D. Wash. Apr. 3, 2007) (same).

by any law….'" *Id.* at 827.  Conduct that is "neither required nor proscribed by law does not constitute an 'unlawful' business activity under the [UCL]."  61 CAL. JUR. 3d UNFAIR COMPETITION § 3 (2008).  As set forth above, DC alleges that the PPC, IPWW and Consent Agreements violate DC's purported "rights" under 17 U.S.C. § 304(c)(6)(D).  However, § 304(c)(6)(D) does not "require" or "proscribe" any conduct, but simply states the conditions under which a transfer of the termination interest will be valid.  As § 304(c)(6)(D) concerns enforceability and federal preemption of contracts, not the "lawfulness" of conduct, it cannot form the basis for a claim of "unlawful" business activity under the UCL.

Unfair:  If a "practice" is not "unlawful," it is only considered to be "unfair" in violation of the UCL if it "threatens an incipient violation of an antitrust law … or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999) (emphasis added).[11] DC's FAC alleges that "consent agreements" are somehow "void and unenforceable" under the UCL purportedly because "they strip the Siegels and Shusters of their right freely to settle their claims and violate [DC's] concomitant right freely to negotiate settlement of such claims."  FAC ¶ 188.  Such allegations certainly do not amount to "conduct that threatens an incipient violation of an antitrust law… or otherwise significantly threatens or harms competition" and thus do not sustain an unfair competition claim.  *Cel-Tech*, 20 Cal. 4th at 187.  Ironically, DC's bogus claim to an exclusive "right" seeks to cripple competition for the Heirs' Superman copyrights.

Fraud:  A claim of fraudulent practices under the UCL must be pled with specificity pursuant to F.R.C.P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake.").  *See Shroyer v. New Cingular Wireless Servs.*, 606 F.3d 658, 665-67 (9th Cir. 2010) (applying Rule 9(b) to dismiss

---

[11] *See People's Choice Wireless v. Verizon Wireless*, 131 Cal. App. 4th 656, 662–63 (2005) ("Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus [under UCL].");  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010) ("[A]ny finding of unfairness to competitors under section 17200 [must] be tethered to …proof of some actual or threatened impact on competition.").

1  UCL "fraud" claim as "the complaint must allege the time, place, and content of the

2  fraudulent representation; conclusory allegations do not suffice").  DC's Sixth Claim

3  does not even refer to fraud; it refers only to "unlawful" and "unfair[]" conduct.  FAC

4  ¶ 188.  DC's vague allegations as to "various copyright assignment and consent

5  agreements" (FAC ¶ 188), and its conclusory use of the word "fraudulent" elsewhere

6  in its complaint (*id.*, ¶ 80) utterly fail to plead fraudulent conduct with the requisite

7  specificity to permit its Sixth Claim to survive.

8  **IV.    THE FOURTH CLAIM**

9      **A.    <u>The Fourth Claim Is Barred By the Statute of Limitations</u>**

10      DC's Fourth Claim, for tortious interference with contract, is barred by the

11  two-year statute of limitations.  *See* Cal. Code Civ. Proc. § 339(1).  A claim for

12  tortious interference with contract accrues on the date of the alleged breach of the

13  contract.  *See Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (2000) ("[T]he accrual

14  date could not be later than the actual breach of the contract by the party who was

15  wrongfully induced to breach"); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520,

16  530 (N.D. Cal. 2000) (same).  DC's Fourth Claim is based entirely upon allegations

17  that the 2001/2003 PPC Agreements were entered into for the purpose of serving and

18  filing the 2003 Shuster Termination with the Copyright Office, and that this

19  purportedly *breached* the 1992 Agreement.  *See* FAC ¶¶ 58, 60-65, 90, 99, 177-178.[12]

20      DC's FAC was filed in May 2010.  A breach of contract alleged by DC to have

21  occurred seven years earlier in 2003 cannot support an interference claim with a two-

22  year statute of limitations.  *See Streamcast Networks, Inc. v. Skype Techs., S.A.*, 2006

23  WL 5441237, at *10 (C.D. Cal. Sept. 14, 2006) (interference claim accrued once

24  plaintiff was aware that counterparty sought to "terminate the [contract]").

25      California's "discovery rule" does not save DC's Fourth Claim.  The

---

27  [12] DC alleges that "terminating DC Comics rights w[as] substantially certain to interfere
with DC Comics' 1992 Agreement" and "DC Comics' ongoing business relationship with

28  the Shusters" – that is, that the termination itself constituted interference.  FAC ¶ 177.  DC
admits that it was served with the Shuster Termination on November 10, 2003.  *Id.*, ¶ 92.

California Supreme Court has long held that the "discovery rule" means that:

> [T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . . A plaintiff need not be aware of the specific 'facts' necessary to establish the claim . . . . Once the plaintiff has a suspicion of wrongdoing . . . she must decide whether to file suit or sit on her rights.

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).

DC has alleged no facts to invoke the delayed discovery rule.  Moreover, it is a matter of public record that DC knew about the 2001 and 2003 PPC Agreements by no later than **November 15, 2006,** when unredacted versions of both the 2001 and 2003 PPC Agreements were produced to DC in the *Siegel* action, and DC introduced the agreements as exhibits in its deposition of Mr. Toberoff two days later.  RJN ¶ 7, Exs. G-H.  DC was therefore on "notice" of the purported "interference" – the 2003 Shuster Termination signed by Mr. Toberoff (RJN, Ex. E) and the related PPC Agreements showing Mr. Toberoff's role as counsel (*id.*, Exs. B, D) – by November 2006 at the very latest, *three years* before DC filed this case. [13]  *See Samuels v. Forest*, 2007 WL 3149285, at *8 (Cal. App. Oct. 30, 2007) (plaintiff was on notice of interference claim once he saw agreement that allegedly interfered with his contract).  DC Fourth Claim is thus clearly time-barred under the applicable two-year statute.

### B.    The Fourth Claim Is Barred By the Litigation Privilege

DC's Fourth Claim is also barred by the litigation privilege of Cal. Civil Code § 47(b).  DC alleges that the supposedly interfering PPC Agreements were entered into "for the purpose of terminating DC Comics' rights" under 17 U.S.C. § 304(d).  FAC ¶ 177.  The PPC Agreements state that Mr. Toberoff would "furnish directly to the [Shusters] all legal services required by the[m] in connection with the rights" (Ex. H at 86), and he acted as an attorney in drafting, serving and filing the Shuster Termination, signed by "Marc Toberoff, Esq., Counsel for the Estate of Joseph

---

[13] DC tries to bypass the statute of limitations by arguing that there is "continuing harm" from alleged interference, but the "continuing harm" doctrine does <u>not</u> apply to tortious interference claims.  *See Eagle Precision Tech., Inc. v. Eaton Leonard Robolix, Inc.*, 2006 WL 6544087, No. 03-CV-352 BEN (WMc) (S.D. Cal. 2006) (interference claim accrued at breach, despite continuing harm); *Forcier*, 123 F. Supp. 2d at 530 (same).

Shuster."  FAC ¶ 93.  The Fourth Claim alleges conduct protected by the litigation privilege as it is entirely based upon Mr. Toberoff's alleged solicitation of the Shuster Defendants as his clients (FAC ¶¶ 178-79; *see Rubin,* 4 Cal. 4th at 1194), and on communications made in the context of reasonably anticipated litigation.  *See Rosenthal,* 135 Cal. App. 3d at 126.

Moreover, Mr. Toberoff's service and filing with the Copyright Office of the Shuster Termination is central to DC's "interference" allegations (FAC ¶ 177), and such actions are clearly protected by § 47(b).  *See Drum v. Bleau, Fox & Associates*, 107 Cal. App. 4th 1009, 1028 (2003) (holding that the filing with a government agency of "a notice, a statement, to the world, of a potential interest in property" is protected by the litigation privilege); *Frank Pisano & Associates v. Taggart*, 29 Cal. App. 3d 1, 25-26 (1972) (filing of lien protected by the litigation privilege); *Wilton v. Mountain Wood Homeowners Assn.*, 18 Cal.App.4th 565, 569-70 (1993) (same); *see also Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (holding that "an attempt to establish a property right under a comprehensive federal statutory scheme" qualifies as protected conduct under an analogous statute).

DC's Fourth Claim also hinges on allegations that Mr. Toberoff "interfered" by causing the Shuster Estate to be probated.  *See* FAC ¶¶ 175-179.  Acts taken in support of probate proceedings "are all absolutely protected by the litigation privilege." *Cabral v. Martins*, 177 Cal. App. 4th 471, 485 (2009); *see Chang v. Lederman*, 172 Cal. App. 4th 67, 87 (2009) (holding that a letter "sent to further the objectives of the probate proceedings" clearly fell within the litigation privilege).

## C.    DC Fails to State a Claim For Tortious Interference

DC's Fourth Claim for tortious interference with the 1992 Agreement also fails to state a cognizable claim.  A claim for tortious interference with contract requires, at a minimum, that there is "a valid contract between plaintiff and a third party" and an "actual breach or disruption of the contractual relationship."  *Pacific Gas & Electric Co. v. Bear Stearns & Co.* ("*PG&E*"), 50 Cal. 3d 1118, 1126 (1990).

Neither element is present here.  DC alleges that the 1992 Agreement was interfered with by the Shuster Executor's "'termination pursuant to [17 U.S.C. § 304] of any and all grant or transfers by Joe Shuster of any copyright interest in his creations.'" FAC ¶ 177.  However, it is impossible as a matter of law for this alleged interference to have occurred, because the 1992 Agreement was *irrelevant* under 17 U.S.C. § 304 to the Shuster Termination, undertaken by the Shuster Executor, Mark Warren Peary.

No Breach of the 1992 Agreement:  There is no cognizable allegation of any breach of any term of the 1992 Agreement, or of any disruption of any right held by any party to the 1992 Agreement, which remains undisturbed.  The parties to the 1992 Agreement are DC, Frank Shuster, and Jean Peavy, the brother and sister of Joseph Shuster.  FAC ¶ 55.  This simple one page agreement contains only three obligations for Frank Shuster and Jean Peavy.  They settled any claim to payment that they held relating to any work by Joseph Shuster, granted to DC any rights that they held, and covenanted not to assert any rights that they held against DC.  RJN, Ex. A.  The 1992 Agreement with Frank Shuster and Jean Peavy ("you") provides:

> [T]his agreement fully settles all claims to any payments or other rights or remedies which ***you*** may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon.  In any event, ***you*** now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.

*Id.* (emphasis added).  The 1992 Agreement does not even mention termination, and does not discuss any right, remedy, or claim of anyone other than Mr. Shuster or Ms. Peavy.  A deceased author's siblings, like Jean Peavy and Frank Shuster who signed the 1992 Agreement, have *never* had any termination rights under the Copyright Act.  17 U.S.C. § 304(c)(2).  In fact, in 1992, no one was eligible for termination rights regarding Shuster's copyrights.  As Shuster left no widow or child (FAC ¶ 51), no one held termination rights until 1998, when the Copyright Term Extension Act, Pub. L. 105-298, extended termination rights to "the author's executor [or] personal

1  representative."  17 U.S.C. § 304(c)(2)(D).

2          The sole party with the power to exercise the termination right is the Shuster

3  Executor.  As neither the Shuster Executor nor the Estate were parties to the 1992

4  Agreement it has no bearing on them.  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S.

5  279, 294 (2002) ("[A] contract cannot bind a nonparty.").  The Shuster Estate was not

6  probated until 2003.  FAC ¶ 65.  Ms. Peavy's and Mr. Shuster's promises in the 1992

7  Agreement had no effect on the Shuster Executor's 2003 termination and vice versa.

8          Nor does the 1992 Agreement purport to revoke or replace Siegel and

9  Shuster's longstanding Superman copyright grants to DC, pursuant to which DC has

10  long owned and exploited Superman.  FAC ¶¶ 32, 37, 44, 46-47; *Siegel*, 542 F. Supp.

11  2d at 1142.  Jean Peavy and Frank Shuster had no Superman copyright interests to

12  grant to DC in the 1992 Agreement as the Superman copyrights were already owned

13  by DC. Accordingly, the 1992 Agreement nowhere even mentions Superman.

14          <u>Unenforceability of 1992 Agreement</u>:   In order for a claim for intentional

15  interference with a contract to stand, the underlying contract must be enforceable.

16  *See Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*,

17  52 Cal. App. 4th 867, 877-80 (1997).  However, if the 1992 Agreement prohibited or

18  encumbered the Shuster Termination in any way – and it did not – it would be void

19  under the Copyright Act as a matter of law.

20          The 1976 Copyright Act established that an author or certain of his heirs may

21  terminate a copyright grant "notwithstanding any agreement to the contrary,

22  including an agreement to make a will or to make any future grant."  *See* 17 U.S.C.

23  §§ 304(c)(5), 203(a)(5).  To further protect authors and their statutory heirs, Congress

24  specified that the termination right or interest is inalienable and that "an agreement to

25  grant rights covered by a terminated grant is not valid if entered before notice of

26  termination." 17 U.S.C. § 304(c)(6)(D).[14]  Thus, any agreement to waive, bar or to

27

28  _____

[14] *See Stewart v. Abend*, 495 U.S. 207, 230 (1990) (the 1976 Act "provides an inalienable termination right"); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) ("[T]he clear Congressional purpose behind § 304(c) was to prevent authors from waiving

19

1   transfer the termination right prior to service of a termination notice has no force.

2   Accordingly, even if the 1992 Agreement could somehow be construed as

3   transferring or impeding the Shuster Executor's right of termination in 2003, it would

4   be unenforceable under the plain language of 17 U.S.C. § 304(c)(5) and (6).

5   　　　No "Revocation and Regrant":  *Milne*, 430 F.3d at 1040 n.5, 1042-45

6   recognized a very narrow exception to the above rule of inalienability, solely where

7   there is no longer an operative pre-1978 copyright grant to terminate because a party,

8   with a current termination right, ***expressly revoked*** a pre-1978 copyright grant, and

9   replaced it with a non-terminable post-1978 copyright ***re-grant***.

10   　　　The Ninth Circuit thereafter limited *Milne* in *Classic Media, Inc. v. Mewborn,*

11   532 F.3d 978, 986-89 (9th Cir. 2008), where the plaintiff publisher tried, like DC

12   here, to evade statutory termination by mischaracterizing a redundant post-January 1,

13   1978 copyright grant as a "revocation and regrant" to artificially invoke *Milne's*

14   narrow exception.  The Ninth Circuit held that the post-January 1, 1978 grant was a

15   "nullity," because it purported to grant copyright interests that had already been

16   granted to the publisher in 1976, and did not expressly revoke that pre-1978 grant. *Id.*

17   　　　This case clearly falls within *Mewborn.*  Just as in *Mewborn*, the grantee (DC)

18   already long owned all of Joe Shuster's Superman copyrights at the time of the 1992

19   Agreement; the 1992 Agreement contained no language of revocation; the 1992

20   Agreement did not mention termination; and the alleged grantors (Jean Peavy and

21   Frank Shuster) did not have current termination rights.  *Id.*; RJN, Ex. A.  DC's claim

22   is even weaker than that rejected in *Mewborn*, because there the grantor had a future

23   termination right, while Jean Peavy and Frank Shuster can never hold such rights.

24   　　　DC attempts to sidestep the utter lack of any language of "revocation and

25   regrant" in the 1992 Agreement by arguing that this raises a purported factual issue as

26   to the parties' intent.  *See* FAC ¶¶ 52-57, 116.  However, under New York law, which

27

28   their termination right by contract."); 3 *Nimmer* § 11.01 (congressional intent of termination
     is to provide authors/heirs with relief from one-sided, unremunerative copyright grants).

20

DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

governs the 1992 Agreement,[15] the contract's unambiguous terms can be resolved
readily on a motion to dismiss as a matter of law:  "Whether a contract is ambiguous
is a threshold question of law to be determined by the court."  *Duane Reade, Inc. v.
St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (granting Rule
12(b)(6) dismissal of contract claim).  *See Seiden Assoc., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425, 428 (2d Cir. 1992) ("[L]anguage of a contract is not made ambiguous
simply because the parties urge different interpretations.  Nor does ambiguity exist
where one party's view 'strain[s] the contract language beyond its reasonable and
ordinary meaning.'") (citations omitted).

Applicable New York law requires express language for a revocation and
replacement of prior contracts.  *See Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp.
2d 371, 377 (E.D.N.Y. 2008) (holding prior contract remained in effect where later
contract "did not expressly manifest an intention to substitute or replace" it).[16]
Yet, there is no language whatsoever in the 1992 Agreement of a revocation or
rescission of Joe Shuster's valuable Superman grants to DC and of a re-grant.

In sum, the 1992 Agreement by Jean Peavy and Frank Shuster was totally
irrelevant to the Shuster Termination as a matter of law.  It involved parties legally
incapable of exercising the termination right.  It could not have waived or
encumbered the termination right.  It therefore was not breached by the Shuster
Executor's exercise of his termination rights.  DC's Fourth Claim thus fails.

///

---

[15] This Court applies California choice of law principles, which dictate that the laws of the
state with a "materially greater interest" control.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1087
(9th Cir. 2009).  The 1992 Agreement was drafted by DC, a New York partnership; was
sent from DC's N.Y.C. headquarters, on N.Y.C. stationary; was between two New York
parties (DC and Frank Shuster) and a New Mexican party (Peavy); and concerned property
owned and managed by DC in New York.  RJN, Ex. A.

[16] *See, e.g., Flaum v. Birnbaum*, 508 N.Y.S.2d 115, 120 (N.Y. App. 1986) (holding that, to
rescind and replace a existing contract, all parties must have "clearly expressed their
intention that a subsequent agreement superseded or substituted for an old agreement");
*Beck v. Mfrs. Hanover Trust Co.*, 481 N.Y.S.2d 211, 218 (N.Y. Sup. Ct. 1984) (same;
rescission and replacement of a contract "'must never be presumed'") (citations omitted).

# V.    THE FIFTH CLAIM

## A.    The Fifth Claim Is Barred By the Statute of Limitations

Like DC's Fourth Claim, DC's Fifth Claim for interference with prospective economic advantage is time-barred by the applicable two-year statute of limitations. *See* Cal. Code Civ. Proc. § 339(1).  DC's complaint alleges that interference by the Siegels' counsel, Mr. Toberoff, occurred in **2002**, when the Siegels terminated their settlement negotiations with DC.  FAC ¶¶ 75, 180-86.

DC cannot possibly meet its burden of showing facts sufficient to invoke the delayed "discovery rule," *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005), because DC had more than enough facts to have put it on inquiry notice by, at the latest, **2006**.  DC alleges that a September 21, 2002 letter from the Siegels ended DC's negotiations for the Siegels' Superman rights, alerting DC to the disruption of its alleged prospective economic advantage.  FAC ¶ 80.  In **November 2006**, a copy of the IPWW Agreement was produced to DC in *Siegel*, documenting a joint venture, as of October 3, 2002, between Mr. Toberoff, the Siegels, and Ari Emanuel, to "arrange and negotiate the sale, lease, license, and all other dispositions or exploitations" of the Siegels' Superman rights.  *See id.*; RJN ¶ 7, Exs. C, G-H.

Thus, by **2006**, based solely on the facts alleged in the FAC and the judicially-noticeable public record, DC indisputably knew:  (a) that its supposed economic relationship had allegedly been disrupted (FAC ¶ 80); and (b) that two weeks later Mr. Toberoff and Mr. Emanuel, a prominent talent agent, entered into the IPWW Agreement with the Siegels (FAC ¶¶ 81-84) to represent and sell the same Superman rights that DC had been negotiating to purchase (FAC ¶¶ 67-69, 81, 182-85).

All that information was more than sufficient, as a matter of law, to have raised a reasonable "suspicion" as to DC's allegation that Mr. Toberoff had purportedly induced the Siegels to end their negotiations with DC – the entire basis for DC's Fifth Claim.  *See* FAC ¶¶ 171-72.  *See Jolly*, 44 Cal. 3d at 1110-11 (holding that the statute of limitations runs "once the plaintiff has notice or information of circumstances to

1   put a reasonable person on inquiry"); *Ethicon*, 35 Cal. 4th at 807 ("Suspicion of one

2   or more of the elements of a cause of action, coupled with knowledge of any

3   remaining elements, will generally trigger the statute of limitations period.").

4       The two-year limitations period was plainly triggered in 2006, almost four

5   years before DC filed its complaint in 2010.

6       **B.    The Fifth Claim Is Barred By the Litigation Privilege**

7       DC's Fifth Claim is also barred, on its face, by the litigation privilege of

8   California Civil Code § 47(b).  The Fifth Claim can be summarized as follows:  After

9   the Siegels served Superman notices of termination, they engaged in settlement

10  discussions with DC.  Mr. Toberoff allegedly solicited them as clients and induced

11  them to end those discussions, file Superboy termination notices, and to prosecute

12  both the Superman and Superboy terminations in litigation with DC.  FAC ¶¶ 180-

13  186.  The litigation privilege bars this claim for at least three independent reasons.

14      *First*, the claim is based on alleged communications by Toberoff regarding the

15  Siegels' settlement negotiations with DC, to allegedly induce the Siegels to become

16  his clients, to conduct further settlement negotiations on their behalf, and, in the

17  event the Siegels' rights were not settled, to initiate legal proceedings against DC in

18  which Toberoff would serve as the Siegels' counsel.  *Id.* ¶¶ 70-84, 78; RJN, Ex. C.

19  In *Rubin*, 4 Cal. 4th 1187, the California Supreme Court ruled that such a third party

20  action against an attorney for wrongful solicitation was squarely barred by § 47(b):

21          *Plaintiff's claims, however styled, are founded essentially upon alleged
            misrepresentations* made by the law firm . . . in the course of discussions
22          over park conditions and the possibility of being retained to prosecute the
            failure-to-maintain action, and the subsequent filing of pleadings in the
23          lawsuit itself.  *Whether these acts amounted to wrongful attorney
            solicitation or not, they were communicative in their essential nature and
24          therefore within the privilege of section 47(b)*. . . .

25  *Id.* at 1196 (emphasis added).  *Rubin* reasoned that "a rule permitting the defendant in

26  a civil action to institute parallel litigation seeking to impose liability on the attorney

27  for the adverse party based on the circumstances surrounding the formation of the

28  attorney-client relationship" would result in dire consequences.  *Id.* at 1198.  Here,

1  the gravamen of DC's claim is that Toberoff purportedly took improper steps to gain

2  the Siegels as clients, causing them to reject DC's settlement offer.  FAC ¶¶ 184-86.

3       As DC itself alleges, the IPWW Agreement expressly provided that "the legal

4  services of Marc Toberoff, Esq.," would be rendered in connection with the

5  "settlement" of the Siegels' rights and that they foresaw potential litigation.[17]  *See*

6  FAC ¶ 83 (noting that the IP Worldwide Agreement provided that "the provision of

7  such [legal] services…will be rendered by Marc Toberoff, Esq."); RJN Ex. C.  DC

8  further alleges that the Siegels' "repudiation" of the purported agreement caused DC

9  "to incur millions of dollars in subsequent legal fees in disputes with the Siegel

10 Heirs" – *i.e.,* the *Siegel* litigation, in which Mr. Toberoff represented the Siegels.

11 FAC ¶ 186.  DC's retaliatory Fifth Claim is barred by the litigation privilege as it is

12 unquestionably based upon Mr. Toberoff's alleged solicitation and successful

13 representation of his clients.[18]

14      ***Second***, the Fifth Claim rests entirely upon DC's allegations that Toberoff

15 interfered with ongoing settlement negotiations to resolve anticipated litigation.

16 DC's core allegation is that Toberoff caused the Siegels to reject a "settlement offer."

17 FAC ¶ 181.  Such communications relating to the rejection of a settlement offer are

18 clearly within the litigation privilege.  *See Rosenthal*, 135 Cal. App. 3d at 126

19 (applying privilege to bar alleged tortious interference with settlement negotiations

20 by an attorney); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002) (holding that

21 communications by an attorney before a lawsuit are protected by the litigation

---

22 [17]  DC's conclusory allegation that "Toberoff engaged in this misconduct in his role as
23 businessman and shareholder of IP Worldwide," FAC ¶ 185, is refuted decisively by its own
    allegations.  That the IP Worldwide Agreement was not itself a "legal retainer agreement" is
24 irrelevant to whether Toberoff  and the Siegels shared an attorney-client relationship.  *See
    Brandlin v. Belcher*, 67 Cal. App. 3d 997, 1001 (1977) ("[N]either a retainer nor formal
25 agreement is required to establish the attorney-client relationship.").

26 [18] *See Crowley v. Katleman*, 8 Cal. 4th 666, 681 n.9 (1994) (applying *Rubin's* holding "that
    one who is the target of a threatened lawsuit cannot maintain a retaliatory action charging
27 the attorneys for the opposing party with 'soliciting' the suit"); *Taheri Law Group v. Evans*,
    160 Cal. App. 4th 482, 490 (2008) (same); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
28 47 Cal. App. 4th 777, 781-82 (2008) (suits based on communications between an attorney
    and "persons with potential claims" are barred by litigation privilege).

1  privilege, even if "they are, or are alleged to be, fraudulent, perjurious, unethical, or

2  even illegal," so long as they are "'logically related'" to the action).

3      ***Third***, even if Mr. Toberoff was not acting as an attorney – and he expressly

4  was – the California Supreme Court has clearly held that there can be <u>no</u> liability

5  <u>whatsoever</u> for tortious interference with contract based on the inducement of a party

6  to file suit by a non-attorney.  *PG&E*, 50 Cal. 3d at 1127 ("This conclusion will bring

7  us face to face with the question … [of] whether it is proper to impose liability for

8  inducing a potentially meritorious lawsuit. We will conclude that it is not.").  *PG&E*

9  held that where a non-attorney defendant contacted an agency, convinced them to

10  seek declaratory relief in order to terminate a contract, paid "for legal, engineering

11  and marketing studies," and retained and paid for outside counsel, in exchange for a

12  percentage of any increased revenues, such activities were protected by the litigation

13  privilege and could not, as a matter of law, give rise to a claim for tortious

14  interference.  *Id.* at 1123-24, 1136.  The Fifth Claim is similarly premised on alleged

15  inducement of the Siegels to reject a settlement offer, and to file a declaratory

16  judgment action.  As such, it is plainly barred as a matter of law.

## CONCLUSION

18      For the foregoing reasons, DC's First, Third, Fourth, Fifth and Sixth Claims

19  should be dismissed, and DC's Second Claim should be dismissed in part and the

20  remainder stayed as set forth above.

21  Dated:  October 14, 2011        RESPECTFULLY SUBMITTED,

22                                  /s/ Marc Toberoff
                                    _____
23                                  Marc Toberoff

24                                  TOBEROFF & ASSOCIATES, P.C.
                                    Attorneys for Defendants Mark Warren Peary *et al.*
25

26                                  /s/ Richard Kendall
                                    _____
                                    Richard Kendall

27                                  KENDALL BRILL & KLIEGER LLP
                                    Attorneys for Defendants Marc Toberoff *et al.*

28

DEFENDANTS' CONSOLIDATED MOTION TO DISMISS