1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

15          Plaintiff,                  **DC COMICS' OPPOSITION TO
                                        DEFENDANTS' CONSOLIDATED
16      v.                              MOTION TO DISMISS
                                        PURSUANT TO FED. R. CIV. P.
17  PACIFIC PICTURES                    12(b)(6) (DOCKET NO. 333)**
    CORPORATION, IP WORLDWIDE,
18  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN          Hon. Otis D. Wright II
19  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,
20  JEAN ADELE PEAVY, an individual,    **Hearing Date**:   November 14, 2011
    LAURA SIEGEL LARSON, an             **Hearing Time**:   1:30 p.m.
21  individual and as personal          **Place**:          Courtroom 11
    representative of the ESTATE OF
22  JOANNE SIEGEL, and DOES 1-10,
    inclusive,                          Complaint Filed:  May 14, 2010
23                                      Discovery Cutoff: None Set
          Defendants.                   Trial Date:       None Set
24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ........................................................................ 1

4  II.   THE GOVERNING LEGAL FRAMEWORK ON THIS MOTION ............. 2

5  III.  DC'S FIRST CLAIM MAY NOT BE DISMISSED ..................................... 2

6        A.    Relevant Factual Background ................................................. 2

7        B.    DC's First Claim In This Case And Defendants' Challenge To It ....... 4

8        C.    DC's First Claim Is Not Time-Barred ..................................... 4

9        D.    Defendants' Challenge To The Merits Of DC's First Claim Fail ........ 5

10 IV.   DC'S SECOND CLAIM MAY NOT BE DISMISSED ............................. 10

11 V.    DC'S THIRD CLAIM MAY NOT BE DISMISSED .................................. 11

12       A.    Defendants' Consent Agreements Violate The Copyright Act, And

13             DC Has Standing Under The Act To Sue To Challenge Them .......... 12

14       B.    DC's Third Claim Is Not Time Barred ................................... 16

15 VI.   DC'S FOURTH CLAIM MAY NOT BE DISMISSED ............................. 17

16       A.    Defendants Committed The Torts Alleged In DC's Fourth Claim. ... 17

17       B.    The Litigation Privilege Does Not Bar DC's Fourth Claim ............. 18

18       C.    DC's Fourth Claim Is Not Time-Barred ................................. 20

19 VII.  DC'S FIFTH CLAIM MAY NOT BE DISMISSED .................................. 21

20       A.    The Litigation Privilege Does Not Bar DC's Fifth Claim ................ 21

21       B.    DC's Fifth Claim Is Not Time-Barred ................................... 22

22 VIII. DC'S SIXTH CLAIM MAY NOT BE DISMISSED .................................. 23

23       A.    Defendants' Unlawful Agreements Constitute Unfair Competition .. 23

24       B.    The Litigation Privilege Does Not Apply Here ........................... 24

25       C.    DC'S Sixth Claim Is Not Preempted ...................................... 24

26       D.    DC's Sixth Claims Is Not Time Barred ................................... 25

27 IX.   CONCLUSION ........................................................................ 25

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Aalmuhammed v. Lee,*

    202 F.3d 1227 (9th Cir. 2000) ............................................................... 5

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*

    41 Cal. 4th 1232 (2007) .............................................................. 18, 20

*Altera Corp. v. Clear Logic, Inc.,*

    424 F.3d 1079 (9th Cir. 2005) ............................................................ 25

*Baker v. Beech Aircraft Corp.,*

    39 Cal. App. 3d 315 (1974) ........................................................... 17, 23

*Balboa Ins. Co. v. Trans Global Equities,*

    218 Cal. App. 3d 1327 (1990) ............................................................ 25

*Beck v. Mfrs. Hanover Trust Co.,*

    481 N.Y.S.2d 211 (N.Y. Sup. Ct. 1984) ................................................. 8

*Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.,*

    2007 WL 1110736 (S.D. Cal. Apr. 5, 2007) ........................................ 25

*Betz v. Trainer Wortham & Co.,*

    236 Fed. Appx. 253 (9th Cir. 2007) ................................................... 25

*Blackburn v. Brady,*

    116 Cal. App. 4th 670 (2004) ............................................................ 19

*Blair & Co. v. Otto,*

    5 A.D.2d 276 (N.Y. App. Div. 1958) ............................................... 7, 8

*Blue Nile, Inc. v. Ice.com, Inc.,*

    478 F. Supp. 2d 1240 (W.D. Wash. 2007) ......................................... 25

*Bourne Co. v. MPL Commc'ns, Inc.,*

    675 F. Supp. 859 (S.D.N.Y. 1987) .................................................... 14

**TABLE OF AUTHORITIES**
(continued)

Page

*Broberg v. The Guardian Life Ins. Co. of Am.*,

   171 Cal. App. 4th 912 (2009)........................................................................25

*Burdick v. Union Sec. Ins. Co.*,

   2009 WL 4798873 (C.D. Cal. 2009)............................................................25

*Bylin Heating Sys., Inc. v. M & M Gutters, LLC*,

   2008 WL 744706 (E.D. Cal. Mar. 18, 2008) ...............................................19

*Cahill v. Liberty Mut. Ins. Co.*,

   80 F.3d 336 (9th Cir. 1996)............................................................................2

*CBOCS West, Inc. v. Humphries*,

   553 U.S. 442 (2008) .....................................................................................13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

   20 Cal. 4th 163 (1999)..................................................................................24

*Chang v. Lederman*,

   172 Cal. App. 4th 67 (2009)........................................................................20

*Classics Media, Inc. v. Mewborn*,

   532 F.3d 978 (9th Cir. 2008)........................................................................8-9

*Del Madera Props. v. Rhodes & Gardner, Inc.*,

   820 F.2d 973 (9th Cir. 1987)........................................................................25

*Dep't of Fair Emp't & Hous. v. 1105 Alta Loma Road Apts., LLC*,

   154 Cal. App. 4th 1273 (2007).....................................................................19

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,

   498 F.3d 1059 (9th Cir. 2007)......................................................................11

*Drew v. Equifax Info. Servs.*,

   2007 WL 2028745 (N.D. Cal. July 11, 2007).............................................16

*Drum v. Bleau, Fox & Assocs.*,

   107 Cal. App. 4th 1009 (2003).....................................................................20

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Edwards v. Centex Real Estate Corp.*,

    53 Cal. App. 4th 15 (1997) ................................................................... 18

*Estate of Blue v. Cnty. of Los Angeles*,

    120 F.3d 982 (9th Cir. 1997) ................................................................ 16

*Farmers Ins. Exch. v. Super. Ct.*,

    2 Cal. 4th 377 (1992) ........................................................................... 24

*Flaum v. Birnbaum*,

    508 N.Y.S.2d 115 (N.Y. App. 1986) ..................................................... 8

*Flowers v. Carville*,

    310 F.3d 1118 (9th Cir. 2002) .............................................................. 16

*Fox v. Ethicon Endo-Surgery, Inc.*,

    35 Cal. 4th 797 (2005) ......................................................................... 16

*Frank Pisano & Assocs. v. Taggart*,

    29 Cal. App. 3d 1 (1972) ..................................................................... 20

*Gallimore v. State Farm Fire & Cas. Ins. Co.*,

    102 Cal. App. 4th 1388 (2002) ...................................................... 19-20

*Grisham v. Philip Morris U.S.A., Inc.*,

    40 Cal. 4th 623 (2007) ......................................................................... 25

*Haddock v. Bd. of Dental Exam'rs of Cal.*,

    777 F.2d 462 (9th Cir. 1985) .................................................................. 4

*Haneline Pac. Props., LLC v. May*,

    167 Cal. App. 4th 311 (2008) ......................................................... 18, 20

*Hansen v. Bear Film Co.*,

    28 Cal. 2d 154 (1946) ........................................................................... 23

*Hartzheim v. Valley Land & Cattle Co.*,

    153 Cal. App. 4th 383 (2007) ............................................................... 13

# TABLE OF AUTHORITIES
### (continued)

Page

*Idema v. Dreamworks, Inc.*,

   162 F. Supp. 2d 1129 (C.D. Cal. 2001)...........................................................25

*In re Estate of Molino*,

   165 Cal. App. 4th 913 (2008)...................................................................10

*In re Kalt's Estate*,

   16 Cal.2d 807 (1940)..........................................................................10

*In re Rubber Chems. Antitrust Litig.*,

   504 F. Supp. 2d 777 (N.D. Cal. 2007)..................................................16, 23

*In re WorldCom, Inc.*,

   2007 WL 2049723 (S.D.N.Y. July 13, 2007) ....................................7, 8

*Jolly v. Eli Lilly & Co.*,

   44 Cal. 3d 1103 (1988)........................................................................23

*Kashian v. Harriman*,

   98 Cal. App. 4th 892 (2002)..................................................................22

*Kearns v. Ford Motor Co.*,

   567 F.3d 1120 (9th Cir. 2009)..............................................................24

*Kodadek v. MTV Networks, Inc.*,

   152 F.3d 1209 (9th Cir. 1998)..............................................................25

*Lockyer v. Mirant Corp.*,

   398 F.3d 1098 (9th Cir. 2005)..............................................................11

*Marvel Characters, Inc. v. Simon*,

   310 F.3d 280 (2d Cir. 2002)................................................................8-9

*McCreary v. Mercury Lumber Distribs.*,

   124 Cal. App. 2d 477 (1954)..................................................................7

*McKell v. Wash. Mut., Inc.*,

   142 Cal. App. 4th 1457 (2006)..............................................................24

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(continued)**

Page

*MEECO Mfg. Co. v. True Value Co.,*

    2007 U.S. Dist. LEXIS 25986 (W.D. Wash. Apr. 3, 2007) ............................... 25

*Milne v. Stephen Slesinger, Inc.,*

    430 F.3d 1036 (9th Cir. 2005) .................................................... *passim*

*Mindys Cosmetics, Inc. v. Dakar,*

    611 F.3d 590 (9th Cir. 2010) ............................................................ 20

*Motown Record Corp. v. George A. Hormel & Co.,*

    657 F. Supp. 1236 (C.D. Cal. 1987) ........................................... 24, 25

*Newport Builders, Inc. v. N. Bay Constr., Inc.,*

    2009 WL 2083359 (N.D. Cal. July 14, 2009) ............................ 18, 22

*Oei v. N. Star Capital Acquisitions, LLC,*

    486 F. Supp. 2d 1089 (C.D. Cal. 2006) ............................................ 20

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.,*

    50 Cal. 3d 1118 (1990) .................................................................... 22

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*

    469 U.S. 189 (1985) ........................................................................ 15

*Pashley v. Pac. Elec. Co.,*

    25 Cal. 2d 226 (1944) ..................................................................... 23

*Penguin Group (USA) Inc. v. Steinbeck,*

    537 F.3d 193 (2d Cir. 2008) .................................................... *passim*

*Polar Bear Prods., Inc. v. Timex Corp.,*

    384 F.3d 700 (9th Cir. 2004) ........................................................... 17

*Robles v. Chalilpoyil,*

    181 Cal. App. 4th 566 (2010) .......................................................... 20

*Rosenthal v. Irell & Manella,*

    135 Cal. App. 3d 121 (1982) ........................................................... 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Rubin v. Green,*

4 Cal. 4th 1187 (1993) ......................................................................... 22

*Shade v. Gorman,*

2009 WL 196400 (N.D. Cal. Jan. 28, 2009) ...................................... 16

*Shropshire v. Fred Rappaport Co.,*

294 F. Supp. 2d 1085 (N.D. Cal. 2003) ............................................. 20

*Siegel v. Warner Bros. Entm't Inc.,*

542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................ 4-5

*Simply Fit of N. Am., Inc. v. Poyner,*

579 F. Supp. 2d 371 (E.D.N.Y. 2008) ................................................. 8

*Stearns v. Select Comfort Retail Corp.,*

2010 WL 2898284 (N.D. Cal. 2010) ................................................. 25

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.,*

909 F. Supp. 1353 (C.D. Cal. 1995) .................................................. 25

*Suh v. Yang,*

987 F. Supp. 783 (N.D. Cal. 1997) .................................................... 16

*Sullivan v. Little Hunting Park, Inc.,*

396 U.S. 229 (1969) ........................................................................... 13

*Touche Ross & Co. v. Redington,*

442 U.S. 560 (1979) ........................................................................... 13

*Turner v. Vista Pointe Ridge Homeowners Ass'n,*

180 Cal. App. 4th 676 (2009) ............................................................ 19

*U.S. v. Hardesty,*

977 F.2d 1347 (9th Cir. 1992) ............................................................. 9

*UAS Mgmt., Inc. v. Mater Misericordiae Hosp.,*

169 Cal. App. 4th 357 (2008) ............................................................ 24

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

Page

*Unruh-Haxton v. Regents of Univ. of Cal.*,
  162 Cal. App. 4th 343 (2008)............................................................................23

*Wang v. Asset Acceptance, LLC*,
  681 F. Supp. 2d 1143 (N.D. Cal. 2010)...............................................................4

*Wells Fargo Bank v. Bank of Am.*,
  32 Cal. App. 4th 424 (1995).................................................................................8

*Wilton v. Mountain Wood Homeowners Assn.*,
  18 Cal. App. 4th 565 (1993)..............................................................................20

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*,
  172 Cal. App. 4th 1561 (2009)..........................................................................19

*Wyatt v. Union Mortg. Co.*,
  24 Cal. 3d 773 (1979).......................................................................................16

*Zuill v. Shanahan*,
  80 F.3d 1366 (9th Cir. 1996)..............................................................................5

STATUTES AND RULES

17 U.S.C. § 106.................................................................................................25

17 U.S.C. § 301(a) ...........................................................................................25

17 U.S.C. § 304......................................................................................*passim*

CAL. CIV. PROC. CODE § 339(1) ......................................................................23

CAL. PROBATE CODE § 12200 ..........................................................................10

OTHER AUTHORITIES

1 GOLDSTEIN ON COPYRIGHT § 5.4.3 (2007)....................................................15

3 NIMMER ON COPYRIGHT § 11.08 (2010) .......................................................14

3 PATRY ON COPYRIGHT § 7:47 (2009)........................................................14-15

1 WITKIN, SUMM. OF CAL. LAW: CONTRACTS § 928 (2005) .....................................7

H.R. REP. NO. 94-1476 ......................................................................................12

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (continued)

**Page**

RESTATEMENT (SECOND) OF CONTRACTS § 279 (1981)............................................7

SECOND SUPP. REG.'S REP. ON GEN. REV'N OF U.S. COPYRIGHT

   LAW, 94TH CONG. 304 (1975) ............................................................... 13

SUPP. REG.'S REP. ON GEN. REV'N OF U.S. COPYRIGHT LAW,

   89TH CONG. 72 (1965) ......................................................................... 13

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    **I.    INTRODUCTION**

2        DC Comics filed its complaint in this case to address two separate sets of

3    claims—neither of which is amenable to defendants' Rule 12 motion.

4        1. DC's First and Second Claims, brought against the Shuster heirs, contest

5    the Shuster copyright termination notice.  Despite their current rhetoric, Mot. at 1,

6    Judge Larson held and defendants conceded in the related *Siegel* cases that those

7    cases could not resolve whether the Shuster termination notice is valid.  Docket No.

8    61 at 48-49 (Larson, J.: "It is by no means a foregone conclusion that the Shuster

9    estate will be successful in terminating the grant to the Superman material….";

10   Defendants:  "[T]he Siegel Litigations do <u>not</u> concern Shuster's copyright[s]").

11       In its First Claim, DC asserts five reasons why the Shuster termination notice

12   is invalid.  Defendants' motion *fails to address three of them*.  For this reason alone,

13   their motion must be denied.  The only ground defendants seriously contest—that

14   the Shuster termination notice is barred by a 1992 contract between DC and Jean

15   Peavy, Shuster's sole heir—is fully supported by binding case law holding Peavy

16   had full authority to make her 1992 contract and dispose of the Shusters' rights.

17       2. DC's Third to Sixth Claims challenge business agreements that defendant

18   Marc Toberoff's entertainment companies made with the Shuster and Siegel heirs

19   that violate DC's rights.  Defendants argue these claims are time barred, but not

20   only does that raise factual questions that cannot be resolved on a Rule 12 motion,

21   it ignores that defendants' offending conduct was first disclosed to DC in *2008*—

22   well within the statutory period—and that defendants' "fraudulent concealments"

23   and ongoing misconduct fully tolled any statutes.

24       Defendants' assertion that their business agreements were shielded by the

25   litigation privilege misses the mark.  Toberoff admits these companies' operations

26   were separated from his legal work by a "defined firewall," and he does not dispute

27   having signed the contracts at issue as *president* of these entertainment companies,

28   *not* as a lawyer.  Nor does he dispute that the aspects of the contracts DC challenges

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

involve the *assignment* of the heirs' copyrights to his companies, *not* Toberoff's practice of law.  Faced with DC's specifically pled allegations that these business relationships are actionable, defendants assert DC is wrong—a conclusion that merely ignores DC's pleadings, as well as defendants' own concessions that certain of their challenged contracts were void under copyright law.  Docket No. 307 at 22-23.  If anything, defendants' admissions entitle DC to judgment on several claims.

In the remainder of their brief—which includes 18 long footnotes and a *nine-page* reference to another brief, Mot. at 1 n.1—defendants run through a scattershot list of other attacks on DC's pleading and discovery in this case.  Although DC cannot address each point consistent with the Court's page limitations, all are disputed and without basis.  Defendants' Rule 12 motion should be denied.

## II.   THE GOVERNING LEGAL FRAMEWORK ON THIS MOTION

On this Rule 12 motion, the Court must construe DC's complaint in its favor, accept its allegations as true, and deny the motion if DC alleges any set of facts to support its claims.  *E.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  Although the Court requires counsel "to discuss thoroughly" the substance of Rule 12 motions, Docket No. 18 at 4, defendants refused to do so, Kline Decl. Exs. 1-4.  This refusal to meet and confer, like defendants' continued flouting of the Court's page limits (by using excessive footnotes, incorporating pages from other briefs, and arguing the merits of their motion in a request for judicial notice), is grounds to deny this motion summarily.  Docket No. 328.

## III.  DC'S FIRST CLAIM MAY NOT BE DISMISSED.

### A.   Relevant Factual Background

Jerry Siegel and Joe Shuster created "Superman" in the 1930s.  In 1938, they assigned all of their rights in Superman to DC, and as its employees, adapted their Superman comic strip into a 13-page story Superman story that was published as part of *Action Comics No. 1*.  First Am. Compl. ("FAC") ¶¶ 28-32 (Docket No. 49).  Siegel and Shuster worked for DC throughout the 1940s under work-for-hire

agreements.  DC's relationship with the Siegel and Shuster families spanned 75 years, and over that time DC invested hundreds of millions of dollars reshaping and expanding the Superman universe.  *Id.* ¶¶ 28-39, 40-45.  Siegel and Shuster were paid millions of dollars for their work.  *Id.* ¶¶ 40-44.

By the 1970s, Siegel and Shuster ran into financial difficulties.  Despite Siegel and Shuster having twice sued DC, DC agreed to help, and in 1975, Siegel, Shuster, and DC signed a new contract in which Siegel and Shuster acknowledged DC was the exclusive owner of Superman.  DC agreed to pay the men and their families significant pensions—amounting to nearly $4 million over the past 35 years.  FAC ¶¶ 45-48.  Siegel and Shuster had the opportunity during their lifetimes to exercise any putative right to "terminate" their copyright grants to DC.  But they chose not to do so, instead honoring their agreements with DC.  *Id.* ¶¶ 49-50.

Shuster passed away in July 1992.  When he died, he had no wife or children and was survived by his brother, Frank Shuster, who died in 1996, and his sister Jean Peavy, who is still living.  Shortly after Joe died, Jean and Frank reached an agreement with DC in which they bargained for enhanced lifetime pension and other benefits from DC in return for relinquishing all claims to Joe's possible rights.  *Id.* ¶¶ 51-55.  The October 1992 letter agreement provides:

> We [DC] ask you [Frank and Peavy] to confirm by your signatures below that this agreement *fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing* regarding *any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster*, or any works based thereon.  In any event, *you now grant to us any such rights* and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever….  Docket No. 333-2 at 8 (emphasis added).

This 1992 agreement, which DC has honored, bars the termination claim the Shusters first asserted 10 years later—after Toberoff intervened.  FAC ¶¶ 51-57, 112-17.  Indeed, in 1999—*after* amendments to the Copyright Act expanding termination claims heirs could advance and *after* the Siegel heirs asserted such a

claim against DC, Peavy wrote to DC and promised to "honor" her 1992 contract:

> I have learned from the Internet that Joanne Siegel has filed a copyright claim for SUPERMAN. I want you to know that I intend to continue to honor our pension agreement. DC's RJN Ex. E at 49.

DC and Peavy enjoyed a good relationship until 2001 when Toberoff, a self-styled "movie producer," induced Peavy and her son, Mark Peary, to form a Joint Venture with Toberoff's movie company, Pacific Pictures. The agreement defined the Shusters' rights as all "rights, claims, [and] copyrights, in … SUPERMAN," and required Peavy and Peary to "assign to the Venture" their Superman rights. In 2003, Toberoff induced Peavy, Peary, and the Estate of Joseph Shuster (of which Peavy was the sole beneficiary) to enter into the same agreement. The Estate then served a copyright termination notice on DC. FAC ¶¶ 58-65, 86-101, 112-17.

### B. DC's First Claim In This Case And Defendants' Challenge To It

DC's First Claim seeks a declaration that the Shusters' termination notice is invalid on five separate grounds. *Id.* ¶¶ 106-34. Retreating from their prior motion, *cf.* Docket No. 186, defendants do *not* separately challenge the first, third, or fifth grounds. Rather, they argue the entire claim is time barred and challenge just the second and fourth grounds. Defendants' inability to challenge *all* the alleged bases for DC's claim requires denial of their motion. If DC's First Claim "states a claim under any legal theory," the motion must be rejected. *Haddock v. Bd. of Dental Exam'rs of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985). While defendants suggest a Rule 12 motion can be used to pick off sub-parts of a claim, Mot. at 6 n.2, the Court need not engage in this needless exercise, nor does doing so make sense here. *E.g.*, *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1145 (N.D. Cal. 2010).

### C. DC's First Claim Is Not Time-Barred.

Citing two infringement cases, defendants argue DC had three years from service of the Shuster termination notice in November 2003 to challenge it in court. Mot. at 5. This is baseless. The termination notice does not purport to take effect until *2013*, and as Judge Larson held in *Siegel*: "One could quibble with whether

1    any date other than the termination effective date itself can serve as the accrual date

2    in a case involving the right to termination of a grant," but "[u]nless and until that

3    legal triggering point is passed"—here, October 26, 2013—"there is nothing for the

4    other co-owner to reject or challenge."  *Siegel v. Warner Bros. Entm't Inc*., 542 F.

5    Supp. 2d 1098, 1134 n.7 (C.D. Cal. 2008).  As for their two cited cases—*Zuill* and

6    *Aalmuhammed*—defendants argued in *Siegel* that both case were inapposite in a

7    termination case like this one.  Case No. CV-04-8400, Docket No. 198 at 45-47.

8        Defendants' argument is also self-defeating.  They say a termination-related

9    claim "accrues when there is a 'plain and express repudiation' of co-ownership."

10   Mot. at 5.  But in May 2005—over *six years* ago—the Shusters acknowledged DC

11   "den[ied] [their] termination interests."  DC's RJN Ex. F.  The Shusters *never* filed

12   suit seeking to enforce their notice or to dispute DC's repudiation.  By defendants'

13   own logic, their right to enforce their termination notice ran in May 2008, and DC

14   thereby owns free and clear all interests to which the Shusters claim an entitlement.

### D.    Defendants' Challenge To The Merits Of DC's First Claim Fail.

16       Peavy's 1992 agreement with DC renders the Shuster termination notice

17   invalid.  Defendants sidestep the issue by devoting only a paragraph to it in their

18   briefing on DC's First Claim, Mot. at 6, then confusingly discuss it as part of DC's

19   Fourth Claim, *id*. at 17-22.  This misdirection is unavailing.

20       *1. The Case Law.*  The termination provisions on which the Shusters rely

21   apply only to *pre-1978* copyrights grants.  17 U.S.C. § 304.  Peavy's 1992 contract

22   with DC effectively rescinded and replaced all pre-1978 grants that Joe Shuster

23   ever made, meaning there was nothing left for the Estate to terminate in 2003.

24       The leading case on point is *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036,

25   1048 (9th Cir. 2005), which held that when an agreement that *post-dates 1978*

26   revokes all prior copyright grants an author made, it bars any termination claim a

27   party might later assert.  In *Milne*, Christopher Milne, an heir of the Winnie the

28   Pooh author, approached SSI in 1983 to re-negotiate royalty arrangements for

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1  copyright grants made in 1930 and 1961.  Christopher and SSI agreed to a new

2  contract that revoked the "1930 and 1961 agreements in favor of the new [one],

3  followed by the re-granting … of the rights in the Pooh works to SSI." *Id.* at 1040.

4  In exchange, Christopher received a four-fold increase in royalty payments. *Id.*

5  In 2002, Christopher's daughter, Clare, served a copyright termination notice

6  seeking to terminate the 1930 grant.  The Ninth Circuit rejected her claim, holding

7  that whatever termination right she may have held was extinguished by the 1983

8  contract. *Id.* at 1043.  Clare argued, like defendants here, that the 1983 contract

9  was an unenforceable "agreement to the contrary" under § 304(c)(5), and that

10  Congress intended "to make the termination right inalienable." *Id.*  The court

11  disagreed, reasoning that the Act's text did not support this view and its legislative

12  history confirmed "parties may contract, as an alternative to statutory termination,

13  to revoke a prior grant by replacing it with a new one." *Id.* at 1043, 1046.

14  The other case to consider an agreement like the 1992 Agreement—*Penguin*

15  *Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 196 (2d Cir. 2008)—also concluded

16  it barred an author's heirs from terminating.  In 1994, Elaine Steinbeck, John

17  Steinbeck's heir, entered into a new agreement with Penguin to publish Steinbeck's

18  works. *Id.* at 196.  This 1994 agreement provided it would "cancel and supersede

19  the previous agreements." *Id.*  When Ms. Steinbeck's son and grandson filed a

20  copyright termination notice in 2004, the Second Circuit held the notice was

21  invalid, because Elaine's "1994 Agreement terminated and superseded the 1938

22  Agreement …, leaving in effect no pre-1978 grants to … terminat[e]." *Id.* at 200.

23  *2. Peavy's 1992 Agreement.*  Peavy's 1992 contract operates just like the

24  contracts in *Milne* and *Steinbeck*.  Like Milne and Steinbeck, Peavy approached DC

25  after Joe Shuster's death.  Describing herself as Joe's sole heir, Peavy granted to

26  DC all of Joe's copyrights, in exchange for DC's paying Joe's debts, increasing

27  Peavy's and Frank's annual survivor payments *five-fold*, and making these

28  payments to Peavy to provide a tax advantage the heirs requested.  FAC ¶¶ 51-55.

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    Defendants contend the 1992 contract did not revoke Joe Shuster's pre-1978

2 copyright grants because the word "revoke" is not present. This is wrong. If two

3 parties enter into a contract regarding the same subject matter as prior contracts, the

4 prior contracts are rescinded. 1 WITKIN, SUMM. OF CAL. LAW: CONTRACTS § 928(3)

5 (2005); *Blair & Co. v. Otto*, 5 A.D.2d 276, 279-82 (N.Y. App. Div. 1958); *In re*

6 *WorldCom, Inc.*, 2007 WL 2049723, at *2 (S.D.N.Y. July 13, 2007). "It is not

7 necessary that the parties say, in so many words, that they do mutually rescind the

8 contract…." *McCreary v. Mercury Lumber Distribs.*, 124 Cal. App. 2d 477, 486

9 (1954); RESTATEMENT (SECOND) OF CONTRACTS § 279 (1981); *Blair*, 5 A.D.2d at

10 279-82; *WorldCom*, 2007 WL 2049723, at *2. Defendants cite no authority to the

11 contrary and neither *Milne* nor *Steinbeck* imposed any "magic words" requirement.

12    What is important is the sweeping language of the 1992 agreement. It grants

13 to DC "any copyrights … in any and all work created" by Joe Shuster and covers

14 all of the same subjects as all of the pre-1992 agreements, swallowing them whole.

15 FAC ¶ 55. If there was any doubt as to this intent, the 1992 contract affirms it

16 "*fully settles all claims* to any payments or other rights or remedies which you may

17 have under *any other agreement or otherwise*, whether now or hereafter existing

18 regarding *any copyrights*…." *Id.* The reference to "other agreements" "now

19 existing"—*i.e.*, all the pre-1992 agreements—being "fully settled" confirms that a

20 revocation occurred, RESTATEMENT, *supra*, § 279. So, too, do Peavy's and Frank's

21 promise "not to assert any claim of right, by suit or otherwise…." FAC ¶ 55.

22    Similar language repeatedly has been held (under New York, California, and

23 other law) to evince the parties' "unmistakable" intent, *Blair*, 5 A.D.2d at 282, to

24 supersede all prior contracts. In *Blair*, a New York court considered whether

25 plaintiff could sue defendant under the parties' original contract or whether a new

26 contract replaced it. Like the 1992 contract, the new contract in *Blair* said the new

27 payments plaintiff made "constitute[d] complete satisfaction for services rendered,

28 past and future." Although the contract included no talismanic words like "revoke"

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    or "novate," *Blair* held it fully substituted for the old agreement.  *Id.* at 278-79.

2        Likewise in *WorldCom*, Judge Wood held that a settlement contract between

3    SkyTel and Beepwear superseded their previous marketing agreement.  The new

4    contract "release[d] and discharge[d] SkyTel … from any and all actual or potential

5    claims."  2007 WL 2049723, at *2.  Despite the absence of words like "revocation,"

6    the court held these broad releases "evince[d] an unambiguous intention to

7    extinguish" the parties' prior agreement.  *Id*.  The court noted the uniform view in

8    numerous jurisdictions that "a new contract's release of parties' claims under an old

9    contract proves that the parties intended to novate the old contract."  *Id.* at *3.

10        The same result obtained in *Wells Fargo Bank v. Bank of Am.*, 32 Cal. App.

11   4th 424, 431-32 (1995), in which a lessee conveyed all of its "right, title and

12   interest" in a lease to the bank, and the lessee was expressly "relieved of all liability

13   accruing under th[e] lease…."  This language—which tracks Peavy's grant of all

14   Joe's copyrights to DC and Peavy's broad release—superseded the parties' prior

15   agreement and extinguished all rights under it.  *Id.*  While defendants suggest they

16   did not "intend" to relinquish any termination rights by signing the 1992 agreement,

17   that is not what they said at the time.  In 1992, Frank said Peavy would "not pursue

18   the termination of the Superman copyright," and in 1999, *after* Congress expanded

19   the termination provisions in the Copyright Act, Peavy told DC, "I have learned

20   from the Internet that Joanne Siegel has filed a copyright claim for SUPERMAN.  I

21   want you to know that I intend to honor our pension agreement."  *Id.* ¶¶ 54-56.[1]

22        *3. The 1992 Contract Is Valid.*  Recycling the unsuccessful arguments from

23   *Milne* and *Steinbeck*, defendants say the 1992 agreement is a void "agreement to the

24   contrary."  Mot. at 19.  Defendants cite *Marvel* and *Mewborn* for this proposition.

---

[1] Defendants' cases provide them no help and do not create an "express language"
requirement for revoking or replacing existing contracts.  *Simply Fit*, 579 F. Supp.
2d at 377, found no revocation because the new contract contained no inconsistent
terms; *Flaum*, 508 N.Y.S.2d at 120, found novation *occurred* where a new contract
consolidated all liability; and *Beck*, 481 N.Y.S.2d at 218, found no novation where
a duty was delegated to a new party, but the original party was not discharged.

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    Mot. at 19-20.  Both *Steinbeck* and *Milne* rejected *Marvel* as inapposite, as should

2    this Court.  *Marvel* dealt with an agreement made decades after the fact to re-

3    characterize works as "works made for hire."  The agreement did not operate to

4    revoke pre-1978 grants or replace them with new *post*-1978 grants; thus, it has no

5    application here.  *Steinbeck*, 537 F.3d at 203; *Milne*, 430 F.3d at 1044.

6         *Mewborn* is equally off point, and defendants' assertion that it "limited"

7    *Milne*, Mot. at 20, is wrong—*Milne*, the earlier-decided opinion, "controls."  *U.S. v.*

8    *Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992).  In *Mewborn*, Mewborn entered

9    into an agreement with Classic in 1976, granting it copyrights in Lassie.  In 1978,

10   after Congress created the termination right, Classic convinced Mewborn to sign a

11   new agreement in exchange for $3,000.  532 F.3d at 980-81.  The agreement did not

12   "substitute[] or revoke[]" any pre-1978 copyright grants; rather, it "affirm[ed]" the

13   1976 grant and granted Classic "addition[al]" rights.  *Id.* at 986, 989.  Mewborn

14   was not aware of her right of termination, and discovery established that in entering

15   into the 1978 agreement she had no intent "to waive or relinquish" rights.  *Id.* at

16   989.  In 1996, Mewborn sought to terminate the 1976 agreement, and the Ninth

17   Circuit held she could do so because the 1978 agreement did not replace the 1976

18   agreement and because Mewborn was unaware of her termination right in 1978 and

19   thus had "nothing in hand with which to bargain," unlike in *Milne*.  *Id.* at 989-90.

20        Here, the Shusters were fully aware of the Copyright Act's termination

21   provisions and invoked them—just as Steinbeck and Milne did.  *Compare* FAC ¶¶

22   54-56, *with Milne*, 430 F.3d at 1040 (Milne used "bargaining power conferred" by

23   termination right), *Steinbeck*, 537 F.3d at 196, 203 n.5 (Steinbeck "wield[ed] the

24   threat of termination" even though she lacked present right).  Moreover, Peavy and

25   Frank signed extensive releases openly waiving *all rights* in exchange for the

26   lifetime financial security that was of utmost importance to them.  *Supra* at 3.

27        *4. Peavy Had Full Authority To Dispose Of Joe Shuster's Copyrights.*

28   Defendants assert the 1992 agreement does not bar the Shuster termination notice

- 9 -

because "neither the Shuster Executor [Mark Peary] nor the Estate were parties to the 1992 Agreement." Mot. at 19. This is specious. Joe's will named *Peavy* the "sole beneficiary" and "executrix" of his estate, as Peavy represented to DC in 1992 and to the California courts in 1992 and 2003. FAC ¶ 51; DC's RJN Ex. A. As Joe's sole heir, she had full authority to assign all rights in his putative copyrights when she signed the October 1992 contract. Title to property passing by will vests in the beneficiary at the time of the testator's death, *In re Kalt's Estate*, 16 Cal.2d 807, 811 (1940)—here in July 1992, when Joe died. As a beneficiary, Peavy could transfer her interest in an estate *prior to probate*, and the transfer was as effective as if made *after* probate. *Id.*; *Estate of Molino*, 165 Cal. App. 4th 913, 921 (2008). Defendants mention none of this controlling law. As executor, Peary has had no good reason to keep the Shuster probate open and withhold the transfer of rights to Peavy. A court adjudged Peavy to be Joe's sole heir *eight years* ago, DC's RJN Ex. B at 19, and Peary was required by law and swore he would distribute the Estate's asset to Peavy without delay, CAL. PROBATE CODE § 12200; DC's RJN Ex. C. Peary has only delayed to facilitate defendants' current shell-game arguments.

*5.* Defendants make other arguments about DC's claims that page limits prevent DC from addressing. Included among them is their new claim that the 1992 contract does not bar the Shusters' termination because the contract does not say "Superman" and refers to "you"—Peavy and Frank—not Joe Shuster. Mot. at 11-12. This is frivolous. The 1992 agreement clearly applies to:

> *all* claims … you may have under any *other agreement or otherwise*, whether now or hereafter existing regarding any *copyrights*... in *any and all work created* in whole or in part by *your brother, Joseph Shuster*….

Joe's most famous "creat[ion]" was Superman. Peavy claimed in 1992 and 2003 to be entitled to all of Joe's rights, including copyrights, by operation of his will.

## IV. DC'S SECOND CLAIM MAY NOT BE DISMISSED.

DC's Second Claim is pled in the alternative: if the Shusters' termination notice is valid, it is impermissibly overbroad in scope in *five* material ways. FAC

¶¶ 135-64.  Defendants move on only *two* of the five grounds, Mot. at 6-7, which is

reason alone to deny their motion.  And defendants' claim that rulings in *Siegel* bar

parts of DC's Second Claim is mistaken.  The claim presents new issues turning on

contested issues of fact, including Shuster's employment status and agreements

with DC, the work he did for DC and the way in which he was paid and supervised,

the extent of Shuster's contributions to early Superman works, and his involvement

with pre-*Action Comics No. 1* materials.  FAC ¶¶ 135-64; Docket No. 89 at 23.

Defendants' argument that DC's Second Claim should be stayed pending the

*Siegel* appeal is meant to prejudice DC.  DC filed this case in 2010 to confirm its

rights in Superman and remove the cloud placed over them by the Shuster's claims

to such rights starting in 2013.  This cloud severely impacts DC's business, since

making the full panoply of agreements necessary to exploit Superman takes years

of planning.  A stay must be denied where there is a fair possibility it will prejudice

DC, *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066

(9th Cir. 2007), and when, as here, defendants cannot show such harm, *Lockyer v.

Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a

suit, without more, does not constitute a clear case of hardship or inequity").

## V.    DC'S THIRD CLAIM MAY NOT BE DISMISSED

DC's Third Claim seeks a declaration that the contracts Toberoff and Pacific

Pictures induced the Shuster heirs to sign are unlawful.  FAC ¶¶ 165-73.  Pacific

Pictures convinced the Shusters to assign to a Venture all their Superman rights,

and the Shusters agreed "in the event of termination of the Venture for any reason,"

as happened in 2004, all such rights would be held 50% by the Shusters and 50%

by Pacific Pictures.  *Id*. ¶¶ 61-62.  The Pacific Pictures contract also barred the

Shusters from entering into any agreement, with DC or otherwise, with respect to

their Superman rights "without the express written consent" of Pacific Pictures.  *Id.*

As alleged in DC's complaint, FAC ¶¶ 165-73—and admitted by defendants

in briefs and deposition, Docket No. 307 at 7—these contracts were "void" under

1  the Copyright Act because they assign copyright interests to Pacific Pictures that

2  may not be assigned and that prevented the Shusters from settling claims with DC

3  without Toberoff's consent, *id.*  Toberoff engineered a further unlawful consent

4  agreement that prevents the Shusters and Siegels, to this day, from settling claims

5  with DC, and in which the Siegels appear to have promised the Shusters money to

6  encumber their alleged Superman rights.  *Id.* at 17, 23; FAC ¶¶ 101, 170, 188.

7      A.    **Defendants' Consent Agreements Violate The Copyright Act, And**

8            **DC Has Standing Under The Act To Sue To Challenge Them.**

9      *1.* The plain language of § 304(c)(6)(D) of the Copyright Act establishes an

10 exclusive period between the time a copyright termination notice is served and its

11 effective date in which *only* an original copyright grantee (*i.e.*, DC) may make an

12 agreement with the terminating party (*i.e.*, the Shusters).  The section provides:  "A

13 further grant, or agreement to make a further grant, *of any right* covered by a

14 terminated grant *is valid only if* it is made *after the effective date of the*

15 *termination*."  17 U.S.C. § 304(c)(6)(D).  This provision not only bars third parties

16 (like Pacific Pictures) from trafficking in future copyright interests, it also protects

17 original grantees (like DC).  It does so by further stating that "an agreement for

18 such a further grant may be made between the author or [his heirs] and the original

19 grantee or [its successor], after the notice of termination has been served."  *Id.*

20     Thus, between November 10, 2003 (when the Shuster termination notice was

21 served) and October 26, 2013 (its stated effective date), DC was the *only* party that

22 lawfully could enter into an agreement with the Shusters regarding their putative

23 Superman rights.  Congress described this right running in DC's favor as "in the

24 nature of a right of 'first refusal,'" H.R. REP. NO. 94-1476 at 127, and the Ninth

25 Circuit confirmed this in *Milne*, 430 F.3d at 1047, holding that § 304(c)(6)(D)

26 "give[s] the original grantee a competitive advantage over third parties" akin to a

27 "right of 'first refusal.'"  Looking to the language and legislative history of

28 § 304(c)(6)(D), the court ruled that "trafficking in future interests"—as Toberoff,

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    Pacific Pictures, and the Siegels and Shusters did—runs afoul of this right.  *Id.*

2    In fashioning the termination provisions in § 304, Congress struck a balance

3    between creators and original grantees.  This was an essential feature of the new

4    law and reflected Congress' recognition of the rights of grantees like DC, which

5    invested 70 years and hundreds of millions of dollars to develop, nurture, and

6    promote Superman.  FAC ¶¶ 33-39.  Section 304(c)(6)(D) and provisions like it

7    "represent[] a compromise which, [Congress] hope[d], w[ould] accomplish th[e]

8    purpose" of providing a "practical benefit to authors and their families without

9    being unfair to publishers, film producers" and other grantees.[2]

10   *2.* DC has every right to sue to enforce its rights under § 304(c)(6)(D).

11   Parties whose negotiation rights are aggrieved have standing to vindicate them and

12   such rights are "enforceable against third persons" like Pacific Pictures.  *Hartzheim*

13   *v. Valley Land & Cattle Co.*, 153 Cal. App. 4th 383, 389 (2007); *Sullivan v. Little*

14   *Hunting Park, Inc.*, 396 U.S. 229, 239 (1969) ("The existence of a statutory right

15   implies the existence of all necessary and appropriate remedies.").  Where, as here,

16   Congress demonstrated its clear intent to create such a right and called it "in the

17   nature of a right of 'first refusal,'" DC has standing to enforce the right.  *CBOCS*

18   *West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008).  Congress' intent to confer such

19   a right is found in "the language and focus of the statute, its legislative history, and

20   its purpose."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979).

21   In defendants' prior versions of their Rule 12 motions, they conceded the

22   Pacific Pictures agreements were "void" under § 304(c)(6)(D).  Docket Nos. 147-1

23   at 2, 8; 191 at 8.[3]  Defendants omit this now, knowing it entitles DC to partial

24   ─────────────────────

25   [2] Supp. Reg.'s Rep. on Gen. Rev'n of U.S. Copyright Law, 89th Cong. 72 (1965); Second Supp. Reg.'s Rep. on Gen. Rev'n of U.S. Copyright Law, 94th

26   Cong. 304 (1975) (§ 304(c)(6)(D) "is a compromise that attempts to balance the interests" authors and transferees); *id.* at 307 ("'first refusal' exception was one of

27   the compromises on which the delicate balance of section [304(c)(6)(D)] rests.").

28   [3] *See also* Docket No. 305-37 at 1335:10-1336:4 (Peary Dep.: "Q. Are you aware that Mr. Toberoff has stated in papers filed with the court that these Pacific Picture

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    judgment on its Third Claim, which seeks a judicial declaration that these contracts

2    are void.  *Cf.* Docket No. 307 at 22-25.  Defendants contend DC has no standing to

3    pursue this claim, Mot. at 8-11, but this argument flies in the face of the plain text

4    of the statute, its legislative history, and the cases above, including *Milne*.

5        Defendants rely on a 1987 district court decision from New York, which

6    unlike *Milne* is not binding on this Court and, in any event, confirms § 304(c)(6)(D)

7    created for DC "a preferred competitive position."  *Bourne Co. v. MPL Commc'ns,*

8    *Inc.*, 675 F. Supp. 859, 864 (S.D.N.Y. 1987).  In *Bourne*, Ruby served a copyright

9    termination notice on Bourne, the original grantee.  Before the effective termination

10   date, Ruby made an agreement with a third-party, MPL, assigning her copyrights.

11   Like DC, Bourne sought a declaration that the agreement was invalid.  The court

12   *neither decided nor dismissed* this declaratory relief claim and recognized the

13   agreement was "invalid because MPL was not the original grantee and it was

14   executed prior to the effective date of termination."  *Id.* at 861.

15       Bourne also argued § 304(c)(6)(D) "gives rise to a private right of action for

16   damages."  *Id.* at 865.  The court dismissed the damages claim, ruling the section

17   makes no mention of an "exclusive statutory right of first refusal" on which a

18   damages claim may be brought.  *Id.* at 865-66.  This reading of the text runs

19   contrary to *Milne* and to the legislative history of the statute, but is of no moment

20   here, because DC does not seek damages on this claim and because *Bourne* did *not*

21   foreclose the possibility of a declaratory relief claim.  *Id.*  Indeed, Nimmer, on

22   whom defendants rely, describes *Bourne* as an "action for damages."  3 NIMMER ON

23   COPYRIGHT § 11.08[A] n.6 (2010).  As for defendants' reliance on Nimmer and

24   Patry, neither treatise has been updated to discuss *Milne*, and *Milne*, 430 F.3d at

25   1047-48, rejected Nimmer's reading of § 304.  Patry admits Congress expressed a

26   "hostility toward those [like Pacific Pictures] who would attempt to offer the

27

28   agreements were void?  A. Yes. …  Q. Are you aware [he] acknowledged that the
     Pacific Pictures agreements did not comply with the copyright laws?  A. Yes.").

- 14 -

1  grantor a better deal" before a grantee can do so, 3 PATRY ON COPYRIGHT § 7:47, at
2  7-104 n.1 (2009), and other commentators agree with DC that § 304(c)(6)(D)
3  "gives current grantees and successor grantees the first opportunity to negotiate a
4  new grant." 1 GOLDSTEIN ON COPYRIGHT § 5.4.3, at 5:127 (2007). While
5  defendants urge the Court to ignore legislative history, *Milne* rejects this position,
6  430 F.3d at 1045-47, and the case defendants cite, Mot. at 10, holds that courts are
7  *required* to take legislative history into account where, as here, defendants' reading
8  of the statute contravenes Congress' clear intent, *Park 'N Fly*, 469 U.S. at 197-98.

9      *3.* Defendants have yet to admit the Shuster-Siegel consent agreement is void
10 under the Copyright Act, but in briefs and depositions admitted it precludes the
11 Shusters from assigning their putative copyright interests to DC without the
12 Siegels' express approval. *E.g.*, Docket No. 160 at 63; Docket No. 305-37 at
13 1156:5-6. Granting the Siegels a right to encumber the Shuster copyrights runs
14 directly afoul of § 304(c)(6)(D), as it blocks the exclusive window DC had to
15 negotiate with the Shusters between 2003 and 2013.

16     Defendants say Magistrate Zarefsky held the Siegel-Shuster consent
17 agreement did not violate DC's rights. Mot. at 9. To the contrary, he said it was an
18 open question under *Milne* and "one cannot know with certainty what the consent
19 agreement means without seeing" it. Docket No. 209 at 8. While he suggested it
20 *might* be "a sort of Drysdale-Koufax collective approach to negotiation," *id.* at 6:1-
21 2, defendants later admitted their agreement is not a gentleman's handshake, but a
22 binding contract barring the Shusters from negotiating directly with DC. Docket
23 No. 305-37 at 1174:5-7, 1156:5-6. Worse still, it appears the Siegels promised the
24 Shusters money to encumber their rights. *See id.*; Docket No. 305-37 at 1277:5-
25 1278:12; Docket No. 305-24 at 760:20-25, 763:17-764:4, 762:20-763:3, 817:19-25.
26 This is prohibited rights trafficking, pure and simple. *Milne*, 430 F.3d at 1047.
27 And, in no event can the parties' ongoing factual fight on these issues be resolved
28 on this motion. DC's allegations in its complaint, which have been confirmed in

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    discovery, must be treated as true, and if defendants truly believed their agreement

2    were lawful, they would have disclosed it and attached a copy of it to their motion.

3         **B.    DC's Third Claim Is Not Time Barred.**

4         Defendants' statute-of-limitations argument likewise flounders in requiring

5    the Court to resolve fact questions—when DC's allegations must be taken as true,[4]

6    and DC's complaint clearly alleges facts showing this claim is timely.  DC's Third

7    Claim is timely because it was filed in 2010, challenges the unlawful 2008 Siegel-

8    Shuster agreement, and addresses a continuing course of conduct starting with the

9    Pacific Pictures agreements.  Defendants concede the statute-of-limitations is three

10   years on this claim, Mot. at 7:23-24, meaning DC's challenge to the 2008

11   agreement—and its Third Claim generally—are timely.

12        As for defendants' earlier offending agreements, the statute on them starts

13   running only when the "continuing wrong" ceases, which has yet to happen here.

14   *Suh v. Yang*, 987 F. Supp. 783, 795 (N.D. Cal. 1997); *Flowers v. Carville*, 310 F.3d

15   1118, 1126 (9th Cir. 2002); *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 788 (1979).

16   Defendants' consent agreements began with the Pacific Pictures contracts, includes

17   the 2008 agreement they refuse to renounce, and continues to harm DC today and

18   will do so through 2013.  FAC ¶¶ 101, 169-70.  While defendants assert the Pacific

19   Pictures agreements are no longer "in effect," Mot. 8 n.5, DC's complaint shows

20   that when the Venture was cancelled, Pacific Pictures acquired 50% of the Shuster

21   copyrights—meaning the harm is neither moot nor abated.  Docket No. 307 at 8-9;

22   FAC ¶¶ 61-64, 99.  To circumvent this, defendants manufactured new evidence in

---

23   [4] *See, e.g., In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D.

24   Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005); *Shade v. Gorman*, 2009 WL 196400, at *3 (N.D. Cal. Jan. 28, 2009); *Drew v. Equifax

25   Info. Servs.*, 2007 WL 2028745, at *3 (N.D. Cal. July 11, 2007). Defendants cite one case in which a statute-of-limitation question was resolved at the pleading

26   stage, but the facts were *not* disputed, the *complaint itself* revealed the claim was time-barred, *plaintiff* asked the court to look beyond the complaint to decide the

27   issue, and plaintiff made the "tactical" choice to *dismiss* its case and then refile it years later.  *Estate of Blue*, 120 F.3d at 983-84.

28

- 16 -

1   2011 trying to unwind the transaction, but this *confirmed* the merits of DC's claim

2   and enforced why DC requires a judicial declaration of its rights.  Docket No. 322.

3          Finally, while defendants say they disclosed the Pacific Pictures contracts to

4   DC in 2006 and thereby put DC on notice, it was not until December 2008, when

5   Judge Larson ordered the Toberoff Timeline produced, that DC was able to address

6   the misconduct it exposed.  FAC ¶¶ 102-04.  "Whether [DC] should have made

7   discovery sooner in view of the facts set forth, is not a question to be concluded as a

8   matter of law." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 323 (1974);

9   *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004).

10  **VI.   DC'S FOURTH CLAIM MAY NOT BE DISMISSED**

11         DC's Fourth Claim, which is against Toberoff and Pacific Pictures, alleges

12  they tortiously interfered with DC's October 1992 contract with Peavy and with

13  DC's business relationship with the Shuster heirs in general by, *inter alia*, "entering

14  into the illegal joint-venture agreements described above."  FAC ¶¶ 180-86.

15         **A.    Defendants Committed The Torts Alleged In DC's Fourth Claim.**

16         Defendants say DC's Fourth Claim is infirm because Peavy's 1992 contract

17  with DC is unenforceable; and even if it is valid, Peavy did not breach it because

18  the 1992 contract is "irrelevant" to the termination Peary filed in 2003.  However,

19  as both *Milne* and *Steinbeck* hold, the 1992 agreement is fully enforceable and *not*

20  an "agreement to the contrary."  *Supra* at 5-8.  California probate law establishes

21  Peavy had the right as Joe Shuster's sole heir to convey all his copyrights to DC in

22  October 1992.  *Id*. at 10.  In doing so, and in exchange for hundreds of thousands of

23  dollars, Peavy "covenant[ed] not to assert any claim of right, by suit or otherwise"

24  with respect to Joe's copyrights.  Yet in the Pacific Pictures contracts, she agreed to

25  assign those very same rights to the Venture.  Despite their wordplay now, Mot. at

26  19, defendants plainly interfered with DC's 1992 contract.

27         Defendants say the 1992 contract did not mention Joe's rights or termination.

28  *Id*. at 18.  This is immaterial.  In inducing DC to enter into the agreement, Peavy

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1   told DC she was Shuster's sole heir, meaning she owned all of his rights; Frank

2   invoked termination in discussing the 1992 contract; and Peavy did the same in

3   1999.  Defendants say Peavy could not dispose of Peary's right, as executor, to later

4   assert a copyright termination claim.  *Milne* and *Steinbeck* refute this.  In *Milne*, one

5   heir entitled to assert a termination claim (a father) dispensed with his daughter's

6   rights; in *Steinbeck*, an heir who had no present termination right (a mother)

7   dispensed with her son and grandson's possible, future rights.  *Supra* at 5-6.

8          Defendants' motion also ignores that DC's Fourth Claim asserts a claim for

9   tortious interference with contract *and* one for interference with *prospective*

10  *economic advantage*.  FAC ¶¶ 176 & n.5.  Defendants nowhere address the latter

11  theory, and this is reason alone to deny their motion.  *Supra* at 4.

12         **B.      The Litigation Privilege Does Not Bar DC's Fourth Claim.**

13         California's litigation privilege protects communicative conduct in ongoing

14  or anticipated litigation.  *Haneline Pac. Props., LLC v. May*, 167 Cal. App. 4th 311,

15  319 (2008).  Courts look at the *gravamen* of a claim to decide whether the privilege

16  applies, *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232,

17  1248 (2007), because "there is always at least the potential for a lawsuit any time a

18  dispute arises," and if the privilege is read too broadly it "would swallow up much

19  of the law of torts" and "provide immunity for fraud."  *Edwards v. Centex Real*

20  *Estate Corp.*, 53 Cal. App. 4th 15, 32, 33 (1997).

21         Defendants' motion impermissibly seeks such immunity.  DC's Fourth Claim

22  challenges their *business* conduct in having Pacific Pictures enter into a contract

23  with the Shusters, in which they assigned rights to his Venture.  FAC ¶¶ 174-79.

24  Toberoff signed the contracts as Pacific Pictures' president, *not as a lawyer*, and he

25  claims to keep a "defined firewall" between business and legal matters.  These

26  business deals and others Toberoff engineered unlawfully traffic in rights and, thus,

27  do not trigger the litigation privilege.  *See Newport Builders, Inc. v. N. Bay Constr.,*

28  *Inc.*, 2009 WL 2083359, at *4 (N.D. Cal. July 14, 2009).  Neither the litigation

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

privilege nor the SLAPP statute offers protection to wrongful business conduct, including efforts to obtain, control, or exploit intellectual property.  *See World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1569 (2009); *Bylin Heating Sys., Inc. v. M & M Gutters, LLC*, 2008 WL 744706, at *6 (E.D. Cal. Mar. 18, 2008); *Blackburn v. Brady*, 116 Cal. App. 4th 670, 676-77 (2004).

Defendants have no answer to these cases and instead try to rewrite DC's complaint, arguing the Fourth Claim is "*entirely based* upon Mr. Toberoff's alleged solicitation of the Shuster Defendants *as his clients*…."  Mot. at 17:2-3 (emphasis added).  Defendants cite paragraphs 178 and 179 of the complaint as the source for this, *id.*, but those paragraphs say no such thing:

> 178. Toberoff and Pacific Pictures engaged in independently wrongful conduct to achieve this goal.  They induced the Shuster Heirs to breach the 1992 Agreement and enter into the illegal joint-venture agreements described above.  Toberoff also induced the Shusters to manipulate claims of ownership in Superboy.  Toberoff engaged in this misconduct in his role as businessman and shareholder of Pacific Pictures.
> 179. As the direct result of Toberoff's and Pacific Pictures' actions, the Shuster Heirs have breached the 1992 Agreement, causing DC Comics to lose the value of the Agreement and forcing DC Comics to incur substantial attorneys' fees and costs in an amount to be proven at trial.

Illicit acts of rights-grabbing are *not* the provision or solicitation of legal advice, and defendants cannot "recharacterize" DC's complaint to make them so.  *Turner v. Vista Pointe Ridge Homeowners Ass'n*, 180 Cal. App. 4th 676, 685 (2009).

Defendants also assert DC's Fourth Claim "hinges" on Toberoff's work on probate matters and the termination notice.  Mot. at 17.  What DC's claim hinges on are *business agreements* defendants admit are "void" and restrict the Shusters' rights.  Defendants' misconduct before the Copyright Office is a subject of DC's first *federal* claim—*not* this claim.  FAC ¶¶ 129-33.  The termination and probate filings are at most evidence in support of DC's Fourth Claim, not its gravamen.  As such, they do not trigger the litigation privilege or SLAPP.  *E.g., Dep't of Fair Emp't & Hous. v. 1105 Alta Loma Road Apts., LLC*, 154 Cal. App. 4th 1273, 1283-88 (2007) (protected court filings merely evidence of misconduct); *Gallimore v.*

DC'S OPP. TO DEFS' CONSOLIDATED MOTION TO DISMISS

*State Farm Fire & Cas. Ins. Co.*, 102 Cal. App. 4th 1388, 1399 (2002) (defendant conflated "*wrongful acts* with the *evidence* that plaintiff will need to prove" them). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether" the protections apply; "collateral allusions to protected activity" do not qualify. *Robles v. Chalilpoyil*, 181 Cal. App. 4th 566, 575 (2010).[5]

Finally, defendants ask the Court to look beyond the actual words in DC's complaint and conclude the claim addresses Toberoff's work as a lawyer. Even indulging in this improper exercise, the evidence shows Toberoff did *not* enter a *legal* retainer agreement with the Shusters until years after the unlawful Pacific Pictures contracts were made; and in the 10 years he has done business with the Shusters, Toberoff has never filed any litigation on their behalf. Docket No. 307 at 14. While defendants assert litigation was "reasonably anticipated" when their relationship began, Mot. 17, courts consistently reject such conclusory claims:

> The Mays argue that "The spectre of litigation 'loomed' over the entire course of the parties' communications," but the same could be said of nearly any high-stakes negotiation …. Negotiations and persuasion are part of any business deal. To suggest that nearly any attempt at negotiation is covered by the privilege, especially when attorneys are involved, is unduly overbroad…. *Haneline*, 167 Cal. App. 4th at 320.

In any event, this Court cannot determine what defendants' intentions were—a fact issue—on a Rule 12 motion. *E.g.*, *Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1100 (N.D. Cal. 2003); *Action*, 41 Cal. 4th at 1251. Defendants' one case in which this defense was resolved on the pleadings, involved a complaint that challenged the *filing of a lawsuit*—no more. *Oei*, 486 F. Supp. 2d at 1101-03.

## C.    DC's Fourth Claim Is Not Time-Barred.

DC's Fourth Claim is timely for the same reasons its Third Claim is. DC suffers from a continuing harm defendants compounded with recent misconduct

---

[5] In contrast, the claims in defendants' cases targeted *statements made in court and other filings*: *Drum*, 107 Cal. App. 4th at 1028 (statement in writ of execution); *Frank Pisano*, 29 Cal. App. 3d at 25-26 (mechanic's lien); *Wilton*, 18 Cal. App. 4th at 569-70 (assessment lien); *Mindys*, 611 F.3d at 597 (trademark filing); *Cabral*, 177 Cal. App. 4th at 485 (will); *Chang*, 172 Cal. App. 4th at 86 (notice-to-vacate).

1   and actions occurring within the statutory period; plus, defendants fraudulently

2   concealed their misconduct.  Defendants' contrary arguments, at best, raise fact

3   questions.  In neither of defendants' cases cited in footnote 13 did the court hold the

4   continuing-harm doctrine does not apply to interference claims—both cases are

5   silent on this point.  The doctrine can and should be extended and applied here.

6   **VII.   DC'S FIFTH CLAIM MAY NOT BE DISMISSED.**

7        DC's Fifth Claim against Toberoff targets fraudulent acts to induce Jerry

8   Siegel's heirs to sever their business relationship with DC and appoint his

9   company, IP Worldwide, as their exclusive broker.  Again, this claim focuses on

10   Toberoff's business conduct seeking business remuneration.  In 1997, after Siegel

11   died, his wife Joanne and daughter Laura served a termination notice on DC.  After

12   years of negotiations, the Siegels' then-attorney Kevin Marks confirmed DC and

13   the Siegels had resolved the Siegels' claims.  While DC and the Siegels worked on

14   a long-form agreement, Toberoff intervened and used misrepresentations to induce

15   the Siegels to cut all business ties with DC.  Toberoff approached the Siegels in a

16   business capacity, offering to act as their exclusive broker and market their rights in

17   return for a broker's commission.  In October 2002, the Siegels signed a contract

18   with Toberoff's company IP Worldwide to "negotiate the sale, lease, or license" of

19   their putative Superman rights in exchange for 10% of all gross proceeds.  The

20   agreement provided the Siegels could "not transfer, assign, license or in any manner

21   encumber" their Superman rights without IP Worldwide's consent.  This contract—

22   and others like it Toberoff procured—violated DC's rights.  FAC ¶¶ 66-85, 100-01.

23        **A.    The Litigation Privilege Does Not Bar DC's Fifth Claim.**

24        Defendants rewrite DC's Fifth Claim to fit it within the litigation privilege,

25   asserting it targets (1) Toberoff's solicitation of the Siegels as legal clients; (2) his

26   alleged advice to reject a settlement offer; and (3) his alleged urgings to file a

27   lawsuit against DC.  Mot. at 23-25.  DC's complaint focuses on none of this.  It

28   targets Toberoff and his business partner's false representations to the Siegels that

1   they had a wealthy investor ready to purchase their Superman rights *if* they hired IP

2   Worldwide (*not* Toberoff's law firm) to represent them exclusively as brokers (*not*

3   lawyers).  The misrepresentations Toberoff made were made *not* in connection with

4   "settlement," but to induce the Siegels to repudiate their relationship with DC.

5   FAC ¶¶ 68-71.  As for filing a lawsuit against DC, Laura admitted she did not sign

6   a litigation agreement with Toberoff until *2004*—two years later.  Docket No. 307

7   at 13.  As cases like *Newport Builders* illustrate, defendants cannot avoid liability

8   by trying to tether their *business* misconduct to related litigation activities:

> 9    The record demonstrates that Defendant was merely *communicating a
>       proposed business deal*, not an offer to settle its own claims.  That the
> 10   Defendant's offer was made *while the DeAngelis Plaintiffs and the
>       Newport Defendants were engaged in efforts to resolve their dispute
> 11   does not cloak Defendant's communications under the auspices of
>       protected activity*.  Any connection between Defendant and the
> 12   ongoing settlement discussions between the DeAngelis Plaintiffs and
>       the Newport Defendants was, at best, tangential to the litigation, and
> 13   otherwise too attenuated to establish that Defendant was engaged in
>       protected activity.  2009 WL 2083359 at *4 (emphasis added).
> 14

15  None of the defendants' citations help them.  At issue in *Rosenthal*, 135 Cal.

16  App. 3d at 126, were statements made during litigation by an attorney representing

17  a party to settlement.  Toberoff's deceptions about the "investor" were made years

18  before litigation was ever filed and were aimed at securing a business deal.  The IP

19  Worldwide contract makes this purpose clear: "[T]his Agreement does not include

20  legal services and/or expenses in connection with litigation or formal legal

21  arbitration, if any."  Docket No. 333-2 at 15 ¶ 10.  In *Kashian*, 98 Cal. App. 4th at

22  920, the protected communication was a letter sent to an attorney general asking for

23  an investigation; in *Rubin*, 4 Cal. 4th at 1195, plaintiff's claim was premised on an

24  attorney's comments on "the merits" of a proposed lawsuit; and in *PG&E*, 50 Cal.

25  3d at 1124, the claim was based on urgings to file a lawsuit—*none* involved false

26  inducements about an "investor" made to secure an exclusive brokerage fee.

27      **B.    DC's Fifth Claim Is Not Time-Barred.**

28      DC's Fifth Claim is timely under the rules governing delayed discovery and

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

1    fraudulent-concealment. DC did not discover Toberoff's August 2002 acts of fraud

2    until December 2008, when the Timeline was ordered produced. FAC ¶¶ 102-04.

3    Defendants omit this pivotal point and that the Timeline revealed how Toberoff:

- fraudulently represented to the Siegels there was a "billionaire waiting to invest $15 million" if they cut their ties to DC, FAC Ex. A at 67;
- falsely promised the Siegels that they would produce a competing Superman movie if the Siegels cut their ties with DC, *id.* at 63;
- "mess[ed] up relationships for his own personal benefit," *id.* at 64; and
- "interfer[ed]" with DC's relationships with the Shusters and Siegels, *id.*

8    DC filed its complaint in this case on May 14, 2010—17 months after receiving the

9    Timeline, well within the two-year statute. CAL. CIV. PROC. CODE § 339(1).

10        The Timeline author also explains why DC would not have the necessary

11   "suspicion of wrongdoing" to preclude its reliance on the discovery rule. *Jolly v.*

12   *Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988). "DC is trying to understand why

13   [the Siegels] backed out of the deal. The reason is MT [Toberoff] who is

14   interfering …." FAC Ex. A at 64. DC's Fifth Claim is also timely because

15   defendants fraudulently concealed their misdeeds. *Pashley v. Pac. Elec. Co.*, 25

16   Cal. 2d 226, 231 (1944). Where "a defendant is guilty of fraudulent concealment of

17   the cause of action, the statute of limitation is deemed not to become operative until

18   the aggrieved party discovers" it. *Hansen v. Bear Film Co.*, 28 Cal. 2d 154, 178

19   (1946); *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 367

20   (2008). These concealment issues present fact questions that cannot be decided on

21   this motion. *In re Rubber*, 504 F. Supp. 2d at 789; *Baker*, 39 Cal. App. 3d at 323.

22   **VIII. DC'S SIXTH CLAIM MAY NOT BE DISMISSED.**

23        **A.    Defendants' Unlawful Agreements Constitute Unfair Competition.**

24        DC's Sixth Claim, brought under California's unfair competition laws

25   ("UCL"), seeks a declaration that the Toberoff defendants violated the UCL by

26   securing a series of consent agreements impeding DC's rights. Although

27   defendants argue none of the statutory predicates—*unlawful*, *unfair*, or *fraudulent*

28   conduct—is pled, DC plainly alleges all three. DC states a valid UCL claim if any

1    *one* is alleged.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

2         *1. Unlawful.*  Defendants concede the Pacific Pictures agreements violate the

3    Copyright Act and are otherwise not lawful.  *Supra* at 12.  The "unlawful" prong of

4    the UCL "borrows violations of other laws and treats these violations, when

5    committed pursuant to business activity, as unlawful practices" actionable under the

6    UCL.  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

7         *2. Unfair.*  Business practices are unfair if they "significantly threaten[] or

8    harm[] competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

9    20 Cal. 4th 163, 187 (1999).  Defendants' consent agreements improperly prohibit

10   the Shusters and Siegels from doing business with DC.  *See UAS Mgmt., Inc. v.*

11   *Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 371 (2008).

12        *3. Fraud.*  DC alleges fraud with particularity, *compare, e.g.,* FAC ¶¶ 78-79,

13   *with* Mot. at 14, detailing the "who, what, when, where, and how of the misconduct

14   charged," *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009).

15        **B.    The Litigation Privilege Does Not Apply Here.**

16        Defendants' litigation privilege arguments fail for the same reasons they fail

17   on DC's Fourth and Fifth Claims.  Defendants add that the 2008 consent agreement

18   was made "*during* the Siegel litigation," was allegedly related to settlement, and,

19   thus, is different, Mot. at 11, but these factual assertions are disputed and cannot be

20   resolved on this motion.  They are also belied by defendants' admissions.  For

21   example, Peary testified the 2008 agreement remains in effect today, did not expire

22   when settlement efforts failed, and currently operates to restrict the Shusters and

23   Siegels from entering into an agreement with DC.  Docket No. 307 at 17.

24        **C.    DC'S Sixth Claim Is Not Preempted.**

25        Copyright preemption applies only to state-law claims based on rights

26   "'equivalent' to any exclusive rights of a federal copyright."  *Motown Record Corp.*

27   *v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1238 (C.D. Cal. 1987).  A state-

28   law claim that contains an "extra element"—and that is not premised on the rights

DC'S OPP. TO DEFS' CONSOLIDATED
MOTION TO DISMISS

to reproduce, prepare derivative works, distribute, perform, and display a work—is *not* preempted. 17 U.S.C. §§ 106, 301(a); *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987). Although copyrights may be the subject of a state-law claim, where the claim's gravamen is a breach or tort the claim is not preempted. *E.g.*, *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1353 (1990) (fiduciary breach not preempted); *Bekaert Progressive Compos. Corp. v. Wave Cyber Ltd.*, 2007 WL 1110736, at *2-3 (S.D. Cal. Apr. 5, 2007) (same; misappropriation); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). Here, DC's UCL claim concerns copyright interests with which defendants interfered—it does not allege infringement or improper use.[6]

### D.    DC's Sixth Claims Is Not Time Barred.

Defendants' statute-of-limitation arguments fail for the reasons above. While defendants argue (citing *Stutz*) the delayed discovery rule does not apply to UCL claims, Mot. at 8 & n.6, they do not disclose that after *Stutz*, the California Supreme Court and Ninth Circuit said this was an open question. *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 635 n.7 (2007); *Betz v. Trainer Wortham & Co.*, 236 Fed. Appx. 253, 256 (9th Cir. 2007). Since then, courts have held that the discovery applies in UCL cases when fraud is alleged—as it plainly is here. *E.g., Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920-21 (2009).[7]

## IX.    CONCLUSION

Defendants' motion should be denied.

Dated:  October 24, 2011                    Respectfully Submitted,
                                            By:  /s/ Daniel M. Petrocelli
                                            Daniel M. Petrocelli

---

[6] In contrast, defendants' off-point cases all do. *Motown*, *supra*, (unauthorized use); *Del Madera*, *supra*, (same); *Idema*, 162 F. Supp. 2d at 1190 (same); *Blue Nile*, 478 F. Supp. 2d at 1250; (unauthorized copying); *MEECO*, 2007 U.S. Dist. LEXIS 25986, at *14 (unauthorized reproduction); *Kodadek*, 152 F.3d at 1212 (same).

[7] *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *10 n.16 (C.D. Cal. 2009); *Stearns v. Select Comfort Retail Corp.*, 2010 WL 2898284, at *17 (N.D. Cal. 2010).

DC'S OPP. TO DEFS' CONSOLIDATED
                                            MOTION TO DISMISS