# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | | |
|---|---|---|---|
| Sheila English | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):** Order Denying Defendants' Motion to Strike Pursuant to Anti-SLAPP Statute [145]

Defendants move to strike the Fourth, Fifth and Sixth Claims from Plaintiffs' First Amended Complaint ("FAC") pursuant to California's Anti-SLAPP statute, Code Civ. P. § 425.16(e)(2). [145] Defendants argue these claims "concern conduct protected by the Anti-SLAPP law because they concern statements made in connection with litigation and filings in the U.S. Copyright Office." (Mot. at 13.) Plaintiffs disagree.

Having considered the papers filed in support of and in opposition to the instant motion, the Court deems this matter suitable for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. As discussed below, Defendants' motion is **DENIED**.

**DISCUSSION**

The anti-SLAPP statute establishes a procedure to expose and dismiss meritless and harassing claims that seek to chill the exercise of a person's Constitutional rights of petition or free speech in connection with a public issue. *Kearny v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009). Analysis of an anti-SLAPP motion to strike involves a two-step process. First, the defendant must show that the claim arises from an "act . . . in furtherance of the person's right of petition or free speech under the United States or California Constitution ..." *Id.* (quoting Cal. Code Civ. P. § 425.16(b)(1)).

"If the court determines that the defendant has met this burden, it must then determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

whether the plaintiff has demonstrated a probability of prevailing on the merits." *Id.* To establish a probability of prevailing, the plaintiff must show that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (footnote and citations omitted).

*Fourth Claim*: Interference With 1992 Shuster Agreement

Defendants argue "[b]ecause DC's Fourth Claim is clearly based upon filing with the U.S. Copyright Office [ ] of statutory termination notices, under clear Ninth Circuit precedent it is subject to the protections of the Anti-SLAPP law." (Mot at 14-15.) Plaintiffs counter that "DC's Fourth Claim would be viable if all it alleged was that defendants wrongfully induced the Shusters to sign the Pacific Pictures agreements." (Opp'n at 18) ("Even if the subsequent acts singled out in defendants' motion (filing notices, assisting in a probate case, or even encouraging litigiousness) might help evidence the overall scheme, they are not the root of DC's claims and do not trigger SLAPP.").

It is "the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." *Freeman v. Schack*, 154 Cal. App. 4th 719, 727 ( 2007) (quoting *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 188 (2003)).

Here, Plaintiffs allege they had an agreement with the Shusters to settle the parties' rights with respect to the subject copyrights ("1992 Agreement"). (FAC ¶ 175.) Marc Toberoff ("Toberoff") then allegedly interfered with this agreement by reaching out to, and forming a joint venture between the Shusters and Pacific Pictures Corporation (helmed by Toberoff) to exploit the Shusters' copyrights. (Id. ¶ 177) ("Toberoff's ultimate purpose in approaching the Shuster Heirs was to induce them to repudiate the 1992 Agreement and grant him the rights they had already granted to DC Comics."). This is the gravamen of Plaintiffs' claim, a business tort.

Defendants attempt to invoke the Anti-SLAPP statute by bootstrapping protected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

activity to this claim. (*See* Reply at 4) (mining the operative complaint for arguably protected activity). Defendants also take issue with Plaintiffs' statement that the Fourth Claim "would be viable if all it alleged was that defendants wrongfully induced the Shusters to sign the [Pacific Pictures Agreements]." ("This makes no sense, as all of DC's alleged damages stem from the Shuster estate's exercise of its statutory termination [of DC's] rights by filing a notice with the U.S. Copyright Office, triggering litigation with DC.").

Unlike Defendants, the Court finds logic in Plaintiffs' argument. By inducing the Shusters to sign the Pacific Pictures Agreements, which purport to assign Toberoff the same rights they already assured DC by the 1992 Agreement, Plaintiffs argue that Toberoff interfered with DC's rights under the 1992 Agreement. This makes sense, as the Pacific Pictures Agreements essentially gut the 1992 Agreement, purporting to assign to Toberoff those rights which were already assigned to DC Comics.

As for the protected activity advanced by Defendants, such activity is not *itself* the act of interference. The interference was Toberoff's inducement of the Shusters to repudiate the 1992 Agreement and otherwise encumber the subject copyrights, all in derogation of DC's own interests in those very copyrights. The protected activities advanced by Defendants, while relevant to be sure, are not the material facts underlying the alleged interference. *See, e.g., Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 443 (2011) ("A cause of action 'arising from protected activity' means that the defendant's acts underpinning the plaintiff's cause of action involved an exercise of the right of petition or free speech. [Citation.] ... The defendant must establish that the plaintiff's cause of action is actually *based on* conduct in the exercise of those rights. [Citation.]") (emphasis in original). And, while such protected activity may *evidence* the alleged interference, it does not shield it. *See, e.g., Gallimore v. State Farm Fire & Casualty Ins. Co.*, 102 Cal. App. 4th 1388, 1399 (2002) ("This contention confuses State Farm's allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct.") (emphasis in original).

In short, the Court finds that Defendants have not met their initial burden of demonstrating that Plaintiffs' Fourth Claim arises from protected activity. Accordingly, Plaintiffs need not demonstrate a probability of prevailing on the merits of this claim.

**Fifth Claim**: Interference with Prospective Economic Advantage re: Siegel-DC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

Comics Agreement (Against Toberoff)

Plaintiffs Fifth Claim is for "Interference with Prospective Economic Advantage re: Siegel-DC Comics Agreement." (*See* FAC.) Specifically, Plaintiffs allege "Toberoff was well aware of the [settlement] agreement between [DC] and the Siegel Heirs…. when he approached the Siegel Heirs and their representatives in late 2001and 2002 to express interest in purchasing their Superman rights…." (FAC ¶¶ 184-85) ("Toberoff intentionally engaged in independently wrongful conduct to carry out his interference by … falsely misrepresenting to the Siegel Heirs that he had a billionaire investor ready to purchase their Superman rights if they repudiated their settlement agreement with [DC]; falsely representing to the Siegels that he would help them produce a competing Superman motion picture; and wrongly inducing the Siegels to repudiate their agreement and business relationship with [DC].").

Defendants argue "it is [ ] clear that Toberoff's communications with the Siegels occurred in connection with settlement negotiations and anticipated litigation." (Mot. at 17.) The Court does not share Defendants' clarity. Plaintiffs allege "[a]t the time Toberoff approached the Siegel Heir in 2001, DC Comics and the Siegel Heirs had finally reached an agreement resolving their claims to the Superman . . . rights." (Compl. ¶ 182.) Plaintiffs acknowledge that this Court previously found this agreement deficient, but contend new evidence (including, but not limited to the contested Toberoff Timeline) warrants further review. (Compl. at 57 n.6.)

As the Toberoff Timeline is currently the subject of a discovery dispute, and Plaintiffs sought but Defendants opposed staying this motion pending resolution of discovery, the Court is inclined to construe the uncertainty against the moving parties, Defendants. In any event, Plaintiffs have established a long-lasting economic relationship with the Siegels, and allege that Toberoff's nonprotected conduct interfered with this relationship. (Compl. ¶¶ 180-86.) Under the facts before the Court, Defendants have simply not met their burden of demonstrating that this claim arises from protected activity.

The Court finds particularly illustrative Judge Larson's prior observations of the negotiations between DC Comics and the Siegels, around the time of the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

interference, and without knowledge of the present claim:

> From the Court's reading of the parties' [October 19, 2001 and October 26, 2001] correspondence, it is clear that the parties went well beyond reaching a settlement in principle regarding their respective positions to the Superman property. Rather, . . . the parties' correspondence, and the actions taken in response thereto, illustrates that they found themselves in the all-too-familiar situation in which verbal settlement negotiations result in what the parties believe to be an agreement on all the major points of dispute, but which, upon further discussion, falls short of the agreement needed to resolve their dispute. The devil, as it often is, was in the details.

*Siegel v. Warner Bros. Entertainment Inc.*, 542 F.Supp.2d 1098, 1137 (C.D. Cal. 2008). The devil, Plaintiffs argue, was Toberoff's interference and, suffice it to say, Defendants have not established-through the haze of details-that Toberoff's alleged misconduct is protected.

> *Sixth Claim*: Declaratory Relief re: Invalidity of Copyright Assignment and Consent Agreements

Here, Plaintiffs seek a declaration invalidating Toberoff's various agreements with the Siegels and Shusters. Defendants contend "DC's challenge to these alleged agreements under the unfair competition laws [ ] invokes the litigation-protection provisions of the Anti-SLAPP law." (Mot. at 20.) Like above, however, Defendants' attempt to harness these claims to protected activities falters.

Defendants contend the "agreements at issue [were] expressly entered into with respect to Toberoff's legal services regarding the Siegel Termination and Shuster Termination, respectively." (Mot. at 20) ("For instance, [ ] both the 2001 and 2003 [Pacific Pictures] Agreements specifically refer to employing Toberoff's legal services (Ex. C ¶ 7, Ex. D ¶ 2), and this was clearly understood by Toberoff's clients."). Not quite.

To begin, said agreements engage Pacific Pictures "as [the Shusters'] exclusive advisor for the purpose of retrieving, enforcing and exploiting . . . Joe Shuster's creations."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

(Def. Exh. D ¶ 1.) And, "in furtherance of this exclusive agreement, [Pacific Pictures] (which is not a law firm) shall engage the services of attorney Mark Toberoff [the President of Pacific Pictures]...." (Id. ¶ 2.) Plainly, this was not an agreement for the provision of legal services, but one concerning the exploitation of Joe Shuster's creations. Merely referencing an intent to engage a particular attorney in the future does not transform this into an agreement for legal services.

As Plaintiffs offer, moreover, other agreements specifically disclaim any suggestion that they encompass legal services. (*See*, *e.g.*, Opp'n at 13) ("[T]his Agreement does not include legal services and/or expenses in connection with litigation or formal legal arbitration, if any. The provision of such services…, if requested and desired by [the Siegels], will be rendered and provided by Marc Toberoff, Esq., subject to good faith negotiation of a mutually acceptable agreement executed by Mr. Toberoff and [the Siegels].") (citation omitted).

Finally, the earliest agreement referenced by Defendants is a November 28, 2001 Joint Venture Agreement with the Shusters, a month or so *after* DC Comics and the Shusters had reached "a.settlement in principle," as noted by Judge Larson. (*See* Def. Exh. B.) Such a timeline-coupled with Plaintiffs' arguments and Defendants' inability to demonstrate that Toberoff's conduct was protected-counsels against striking these claims. More pointedly, it gives the Court great pause that a business relationship lasting over 60 years (between DC Comics and the Shusters) came undone at around the time of the alleged interference, after those parties had apparently reached a settlement in principle.[1]

Again, Defendants fail to establish that this claim is subject to the Anti-SLAPP statute, and Plaintiffs need not demonstrate a probability of prevailing on the merits.

**CONCLUSION**

---

[1] Defendants' attempt to cloak Toberoff's alleged interference with protected, litigation and settlement related conduct lacks the specificity required to meet their burden. Such failure affects the Court's disposition of every claim attacked by Defendants' motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-3633 ODW (RZx) | Date | October 25, 2011 |
|---|---|---|---|
| Title | *DC Comics v. Pacific Pictures Corp., et al.* | | |

    Because Defendants have not met their burden of showing that the claims arise from Toberoff's protected activity, Defendants' special motion to strike is **DENIED**.

**SO ORDERED**

                                                                                              ---- : 00

                                                                               Initials of Preparer    SE