Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone: (310) 246-3333
Fax: (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS**<br><br>Complaint filed: May 14, 2010<br>Discovery Cutoff: None Set<br>Trial Date: None Set<br><br>*Supplemental Request for Judicial Notice filed concurrently*<br><br>Date: November 14, 2011<br>Time: 1:30 p.m.<br>Place: Courtroom 11 |

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (State Bar No. 90072)
 rkendall@kbkfirm.com
Laura W. Brill (State Bar No. 195889)
 lbrill@kbkfirm.com
Nicholas F. Daum (State Bar No. 236155)
 ndaum@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:    (310)556-2705

Attorneys for Defendants Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................2

      I.     The First Claim......................................................................................2

      II.    The Second Claim .................................................................................4

      III.   The Third Claim ....................................................................................5

      IV.   The Fourth Claim ..................................................................................7

      V.    The Fifth Claim .....................................................................................9

      VI.   The Sixth Claim ..................................................................................11

CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                          **Pages**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) ............................................................................. 12

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*,
688 F. Supp. 2d 940 (N.D. Cal. 2010) ................................................................. 8

*Bourne Co. v. MPL Communications, Inc.*,
675 F. Supp. 859 (S.D.N.Y. 1987) ..................................................................... 5-6

*Classic Media, Inc. v. Mewborn,*
532 F.3d 978 (9th Cir. 2008) ................................................................................. 3

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987) ............................................................................... 12

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
600 F.3d 190 (2d Cir. 2010) .................................................................................. 4

*Eagle Precision Techs., Inc. v. Eaton Leonard Robolix, Inc.*,
2006 U.S. Dist. LEXIS 98598 (S.D. Cal. Apr. 5, 2006) ...................................... 7-8

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) ............................................................................... 7

*In re: WorldCom, Inc. v. SkyTel Corp.*,
2007 U.S. Dist. LEXIS 51147 (S.D.N.Y. July 13, 2007) ....................................... 3

*Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*,
285 F.3d 848 (9th Cir. 2002) ........................................................................... 11-12

*Milne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) ................................................................... 2-3, 5-6

*Oei v. N. Star Capital Acquisitions, LLC*,
486 F. Supp. 2d 1089 (C.D. Cal. 2006) ................................................................ 8

*Penguin Group (USA) Inc. v. Steinbeck*,
537 F.3d 193 (2d Cir. 2008) .................................................................................. 2

*Perez v. Nidek Co. Ltd.*,
657 F. Supp. 2d 1156 (S.D. Cal. 2009) .............................................................. 12

*Preminger v. Peake*,
536 F.3d 1000 (9th Cir. 2008) ............................................................................... 6

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997) ..................................................................... 5

*Seiden Assoc., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992) .................................................................................. 4

*Siegel v. Warner Bros. Entertainment Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ...................................................... 1-2, 4, 11

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) ............................................................................ 4, 6

**Federal Statutes and Rules**

17 U.S.C. § 304(c)(2) ............................................................................................ 2

17 U.S.C. § 304(c)(6)(D) ............................................................................. *passim*

17 U.S.C. § 507(b) .................................................................................. 1, 5-7, 12

**State Cases**

*Barber v. Superior Court*,
234 Cal. App. 3d 1076 (1991) ........................................................................ 8, 10

*Beck v. Mfrs. Hanover Trust Co.*,
481 N.Y.S.2d 211 (N.Y. Sup. Ct. 1984) ............................................................ 3-4

*Blair & Co. v. Otto*,
5 A.D.2d 276 (N.Y. App. 1958) ........................................................................... 3

*Cabral v. Martins*,
177 Cal. App. 4th 471 (2009) ............................................................................... 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ........................................................................................ 12

*Drum v. Bleau, Fox & Associates*,
107 Cal. App. 4th 1009 (2003) ....................................................................... 9, 11

*Flaum v. Birnbaum*,
508 N.Y.S.2d 115 (N.Y. App. 1986) .................................................................... 3

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........................................................................................ 10

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) ........................................................................................ 10

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ................................................................................. 8-9, 11

*Rubin v. Green*,
4 Cal. 4th 1187 (1993) ........................................................................................ 11

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ........................................................................................ 8

*Seltzer v. Barnes*,
182 Cal. App. 4th 953 (2010) ......................................................................... 11-12

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990) ............................................................................................8

*Trembath v. Digardi*,
43 Cal. App. 3d 834 (1974) ................................................................................ 7-8

*Wilton v. Mountain Wood Homeowners Assn.*,
18 Cal. App. 4th 565 (1993) ..................................................................................9

**<u>State Statutes and Rules</u>**

Cal. Civil Code §47(b)............................................................................................8

**<u>Other Authorities</u>**

W. Patry, *Patry on Copyright* (2010),
3 *Patry on Copyright* § 21:18 ................................................................................6

# INTRODUCTION

DC Comics' ("DC") opposition, which distorts its own complaint and the applicable law, fails under well-established law:

(1) All of DC's claims are time-barred. The Fourth, Fifth, and Sixth Claims are all time-barred under the applicable statute of limitations because DC's complaint ("FAC") and the judicially noticeable facts unquestionably demonstrate that DC was on notice of its purported claims in *2006*, when Defendants produced the allegedly offending PPC Agreements and IPWW Agreements and DC reviewed the defamatory "Timeline" attached to DC's complaint. DC's First and Third Claims are time-barred by the Copyright Act's three-year limitations period.

(2) DC's First and Fourth Claims fail under copyright law and the plain terms of the 1992 Agreement between DC and Frank Shuster/Jean Peavy. Frank Shuster and Jean Peavy have never held any termination rights under the Copyright Act, nor did they ever revoke or regrant Siegel and Shuster's prior Superman grants on which DC has long relied. To give up the Copyright Act's termination right, clear Ninth Circuit law requires <u>both</u> (i) an express revocation and regrant, <u>and</u> (ii) that the contracting party have a then-existing statutory termination right. As a matter of law, neither of these mandatory elements were present in the 1992 Agreement, which had no effect on the Shuster executor's notice of termination (the "Shuster Termination").

(3) DC's Third and Sixth Claims fail because 17 U.S.C. § 304(c)(6)(D), on which DC relies, does not provide it with any enforceable right. There are direct caselaw and treatises on point, and DC can cite no authority to the contrary.

(4) DC's Fourth, Fifth, and Sixth Claims also fail due to California's litigation privilege. DC's Second Claim is in part barred by the judgment in *Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008) ("*Siegel*") under the doctrine of issue preclusion, and the remainder should be stayed.[1]

---

[1] DC argues about a purported failure to meet-and-confer (Opp. at 2), but Defendants did meet and confer *and* this motion simply consolidates three *fully briefed* Rule 12(b)(6) motions that were the subject of an extensive meet and confer. Docket No. 334-4, Ex. 3.

1
DEFENDANTS' REPLY IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS

## ARGUMENT

**I.      THE FIRST CLAIM**

**The 1992 Agreement:** DC's argument that the 1992 agreement between DC and Frank Shuster/Jean Peavy (the "1992 Agreement") bars the Shuster Termination because it was a post-1978 "revocation and regrant" of Joe Shuster's pre-1978 copyright grants to DC (FAC ¶¶ 112-17) fails as a matter of law.

DC cites *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1040 (9th Cir. 2005) and *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 204 (2d Cir. 2008). Docket No. 334. ("Opp.") at 5-6.  However, both cases involved and required: (1) *express* revocations and regrants, and (2) that the revoking party held current termination rights.  *Milne*, 430 F.3d at 1040, 1045; *Steinbeck*, 537 F.3d at 196, 202. Here, as DC concedes:  (1) there was no express revocation and regrant whatsoever in the 1992 Agreement (Opp. at 7; *see also* Docket No. 333-1 ("RJN"), Ex. A); and (2) siblings like Jean Peavy and Frank Shuster, who signed the 1992 Agreement, have *never* held termination rights under the Copyright Act.  17 U.S.C. § 304(c)(2).

The 1992 Agreement refers to "all claims to any payments or other rights or remedies which ***you*** [Jean and Frank] may have."  RJN, Ex. A.  DC ignores that neither Jean Peavy, nor Frank Shuster, nor Joe Shuster's estate, nor Jean Peavy as its beneficiary, had any Superman copyrights to grant.  As DC itself alleged in its complaints, here and in *Siegel*, Joe Shuster had long ago granted all of his Superman copyright to DC, and DC has long owned and exploited Superman under the terms of such grants.  FAC ¶¶ 32, 37, 44, 46-47; *Siegel*, 542 F. Supp. 2d at 1142.

DC's position is absurd.  DC argues that this insubstantial half-page 1992 Agreement – a quitclaim raising Jean and Frank's annual pension by a few thousand dollars that ***nowhere even mentions Superman or Joe Shuster's prior grants*** – was intended to "revoke" and replace Shuster's critical Superman copyright grants.  It defies reason that DC/Warner Bros. would have relied on this for its chain-of-title to the billion-dollar Superman franchise (*e.g.*, the 2005 "Superman Returns" movie).

DC's unsupported argument was rejected by the Ninth Circuit's decision in *Classic Media, Inc. v. Mewborn,* 532 F.3d 978, 986-89 (9th Cir. 2008), which DC ineffectively tries to distinguish.  Just as in *Mewborn,* where the plaintiff publisher tried to evade statutory termination by mischaracterizing a post-1978 copyright grant as a "revocation and regrant" within *Milne,* here the 1992 Agreement is a "nullity," because Joe Shuster had long ago granted to DC his Superman copyrights, and his grants were never revoked.  *Id.* at 986-89; FAC ¶¶ 32, 37, 44, 46-47.

DC misstates the law of express revocation, and cites cases – many arising under inapplicable *California* law (*see* Docket No. 333 ("Mot.") at 20-21) – and all of which are easily distinguishable.  *See In re: WorldCom, Inc. v. SkyTel Corp.*, 2007 U.S. Dist. LEXIS 51147, at *7 (S.D.N.Y. July 13, 2007) (later agreement stated it was "'the entire agreement between or among the parties hereto with respect to the subject matter hereof, supersedes any and all prior communications, negotiations and agreements between or among the parties pertaining to the subject matter hereof'"); *Blair & Co. v. Otto*, 5 A.D.2d 276, 280 (N.Y. App. 1958) (prior agreement was "wholly terminated and dissolved," and later agreement also stated "we no longer have any interest in such [prior] Agreement").[2]

This is not a case of "'magic words'" (Opp. at 7), but a case where there are ***no*** words of revocation, and where any purported revocation must be ***expressly*** stated. *See* RJN, Ex. A; *Flaum v. Birnbaum*, 508 N.Y.S.2d 115, 120 (N.Y. App. 1986) (rescission requires that the parties have "clearly expressed their intention that a subsequent agreement superseded or substituted for an old agreement"); *Beck v. Mfrs. Hanover Trust Co.*, 481 N.Y.S.2d 211, 218 (N.Y. Sup. Ct. 1984) (rescission "'must never be presumed'") (citations omitted).  The language of the 1992 Agreement is not

---

[2] *See McCreary v. Mercury Lumber Distribs.*, 124 Cal. App. 2d 477, 483 (1954) (plaintiff "repudiated said written agreement, and rescinded the same, and gave to defendant notice of such rescission"); *Wells Fargo Bank v. Bank of Am.*, 34 Cal. App. 4th 433 (1995) (holding that "[i]t must 'clearly appear' that the parties intended to extinguish … the original agreement," and finding a later assignment "extinguished" the prior contract where the prior contract stated assignment meant the assigning party "'shall be relieved of all liability'").

"reasonably susceptible" to DC's interpretation. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010); *see also Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("[L]anguage of a contract is not made ambiguous simply because the parties urge different interpretations.").

**The 1948 Consent Judgment:** DC offers no support for its claim that the May 21, 1948 consent judgment bars statutory termination (FAC ¶¶ 125-28), which fails as a matter of law and was rejected in *Siegel*. 542 F. Supp. 2d at 1131-32.

**Statute of Limitations:** DC's First Claim is time-barred by the Copyright Act's three-year limitations period, as DC filed its complaint 6½ years after DC was served with the Shuster Termination that expressly repudiated DC's co-ownership of the original Superman copyrights. *See* Docket No. 49 ("FAC") ¶ 92; 17 U.S.C. § 507(b) (no civil action under this title unless commenced within three years of accrual); *Zuill v. Shanahan*, 80 F.3d 1366, 1369-70 (9th Cir. 1996) (claim accrues upon "plain and express repudiation"). In contrast to DC's new position that the statute cannot accrue until the Shuster Termination date (Mot. at 4-5), DC advocated the exact opposite in *Siegel* – that the statute was triggered by DC's alleged "repudiation [] expressed by a letter submitted to [Siegels'] counsel dated December 18, 1997," well ***before*** the April 16, 1999 Siegel Termination date. 542 F. Supp. 2d at 1034-35 (citing *Zuill*). In *Siegel*, Judge Larson held the statute was tolled by the parties' written tolling agreement. *Id.* at 1134-36.[3]

## II. THE SECOND CLAIM

DC's Second Claim concerns whether early ***Superman*** works, jointly written/illustrated by Siegel *and* Shuster, respectively, were "works for hire." FAC ¶¶ 137-49, 158-59. That issue was fully adjudicated in *Siegel*, which addressed every

---

[3] DC's argument that DC repudiated the Shuster Termination (Mot. at 5) is irrelevant and frivolous. DC does not – because it cannot – attach a single communication from DC that expresses such a repudiation. DC also misleadingly focuses on a letter from Mr. Toberoff referring to DC's rejection of the Siegel Termination, but omits DC's letter to which Mr. Toberoff responded, which plainly did not repudiate the Shuster Termination. Supp. Req. for Judicial Notice ("SRJN"), Ex. A.

*Superman* work listed in the Shuster Termination. DC's "work for hire" claims are, without a doubt, barred by the doctrine of issue preclusion. The remainder of the Second Claim should be stayed pending resolution of *Siegel*. *See* Mot. at 6-7; *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997).

## III. THE THIRD CLAIM

**DC Has No Legal Right to Negotiate:** 17 U.S.C. § 304(c)(6)(D) states: "[A] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of the termination," and that "an agreement for such a further grant may be made between the author or [his heirs] and the original grantee … after the notice of termination has been served." DC has no "rights" under this provision, as § 304(c)(6)(D) "neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else." *Bourne Co. v. MPL Communications, Inc.*, 675 F. Supp. 859, 864, 865 n.11 (S.D.N.Y. 1987).

DC erroneously argues that § 304(c)(6)(D) prohibits "any agreement" that implicates termination rights and that it gives DC "a right of 'first refusal.'" Opp. at 12. It plainly does not. *Bourne*, 675 F. Supp. at 866 ("If Congress had intended to create a right of first refusal, it would have done so in clear language.").

DC falsely states (Opp. at 12) that *Milne,* 430 F.3d 1036, 1047-48, somehow confirmed its arguments, but *Milne* establishes no "right" either, and merely stated that § 304(c)(6)(D) is "intended to give the original grantee a competitive advantage over third parties." This is fully consistent with *Bourne,* 675 F. Supp. at 864, which states that § 304(c)(6)(D) "does give the terminated grantee a preferred competitive position." Despite DC's flailing attempts to split these authorities, there is no conflict between § 304(c)(6)(D), *Bourne*, and *Milne*: all recognize that original grantees have a "competitive advantage," since before the termination date the terminating party can only transfer its interests to the original grantee, but <u>none</u> recognize this "advantage" as a substantive "right."

As § 304(c)(6)(D) does not create a "legally protected interest," it does not confer standing on DC. *Preminger v. Peake*, 536 F.3d 1000, 1005 (9th Cir. 2008); 3 W. Patry, *Patry on Copyright* § 21:18 (a terminated grantee has "no rights under [§ 304(c)(6)(D)] … and the provision therefore does not provide a basis for standing").

Less than a year before filing this case, DC's counsel, Mr. Petrocelli, claimed the exact opposite on behalf of Disney in the ongoing *Milne* litigation:

> Section 304(c)(6)(D) of the Copyright Act 'provides merely that an agreement between the terminating party and the terminated grantee prior to the effective date of termination is the only one that is *valid* and *enforceable* against the former.' *Id*. [*Bourne*, 675 F. Supp.] at 865 (emphases added). This section does not create a 'right of first refusal' … and it 'neither *compels* the terminating party to negotiate with the terminated grantee, nor *forbids* him from negotiating with anyone else.' *Id*. (emphases added).

*Milne v. Stephen Slesinger, Inc.*, 2009 U.S. Dist. Ct. Motions LEXIS 49109, at *39, n.10 (C.D. Cal. July 6, 2009) (emphasis in original).

As to a 2008 agreement between the Siegels and the Shusters to collectively negotiate settlement with DC, DC tries to create issues of fact by mischaracterizing testimony. Opp. at 15. But DC's complaint (the focus of a motion to dismiss) alleges that this 2008 agreement "prohibits either family from entering into agreements conveying rights to DC Comics without the express approval of all stakeholders in the heirs' rights." FAC ¶ 170. This is <u>not</u> "a further grant, or agreement to make a further grant" barred by § 304(c)(6)(D). Nor is there any other basis to block the Siegels and the Shuster Executor from acting together to realize market value for their joint Superman works, just as Siegel and Shuster had originally acted together.

**Statute of Limitations:** DC's Third Claim is time-barred by the applicable three-year statute of limitations (17 U.S.C. § 507(b); *Zuill,* 80 F.3d at 1369-70) because it is based on the 2001/2003 Pacific Pictures Agreements ("PPC Agreements") and/or 2002 IP Worldwide Agreement ("IPWW Agreement"), which DC was provided with in ***2006***. Mot at 7-8, 8 n.4.

To evade the statute, DC argues that it is suffering a "continuing wrong." Opp. at 16. However, the "continuing wrong" doctrine applies to ongoing torts, and solely

1  "where there is 'no single incident' that can 'fairly or realistically be identified as the
2  cause of significant harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir.
3  2002) (rejecting "continuing harm" theory based on continued publication of a book).
4  Because DC's claim is expressly based on allegations that the agreements themselves
5  violate its purported rights (*see* FAC ¶¶ 62-63, 82, 169), DC's receipt of such
6  agreements put it on notice of its claims and triggered the statute of limitations.

7      DC's concession in its pleadings that these agreements were cancelled/expired
8  in 2004-05 (FAC ¶¶ 81-83, 99) also refutes any "continuing wrong." DC's only
9  argument for "continuing wrong" is based on the notion that the PPC Agreements
10  somehow transferred the Shuster copyrights (Opp. at 16), but that is impossible as a
11  matter of law under 17 U.S.C. § 304(c)(6)(D), as DC also concedes. FAC ¶¶ 167-71.

## IV. THE FOURTH CLAIM

**Statute of Limitations**: DC alleges that the ***2001/2003*** PPC Agreements and
the Shuster Termination, served on DC in ***2003***, interfered with and breached the
1992 Agreement in 2003. FAC ¶¶ 177-78. This Court recently held that the PPC
Agreements constituted the alleged act of interference and "the gravamen of
Plaintiff's claim." Docket No. 337 at 2-3. DC does not dispute that copies of the PPC
Agreements were voluntarily produced to DC in *Siegel* in ***2006***. *See* RJN, Exs. G-H.
Under California law, "the accrual date [for interference claims] could not be later
than the actual breach of the contract." *Trembath v. Digardi*, 43 Cal. App. 3d 834,
836 (1974). DC's claim is clearly time-barred by the two-year statute of limitations.

    DC again attempts to evade the statute by arguing "continuing harm" (Opp. at
21), but, again, that doctrine applies only if there is no ascertainable "incident" (here,
the PPC Agreements) that allegedly caused the harm. *Flowers*, 310 F.3d at 1126.
Moreover, the doctrine has no application to interference claims, which accrue
immediately on notice of breach of the contract "interfered" with. *See Eagle
Precision Techs., Inc. v. Eaton Leonard Robolix, Inc.*, 2006 U.S. Dist. LEXIS 98598,
*6-7 (S.D. Cal. Apr. 5, 2006) ("At the very latest, the statute of limitations began to

run on the date [plaintiff] learned of the breach (June 14, 2000) when it received a copy of the [interfering] Agreement" that purportedly caused the breach); *Trembath*, 43 Cal. App. 3d at 836.

DC can cite *no* case applying the "continuing harm" doctrine to interference claims because "of California decisions that have applied the 'continuing tort' doctrine, none have extended the doctrine to the tort of intentional interference with prospective economic advantage." *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010) (rejecting "continuing harm" theories for interference claim).

DC's claims of fraudulent concealment are irrelevant, because "the fraudulent concealment tolling provision does not come into play, whatever the lengths to which a defendant has gone to conceal his wrongs, if a plaintiff is on notice of a potential claim," as DC was. *Barber v. Superior Court*, 234 Cal. App. 3d 1076, 1083 (1991). DC has also not "pled with particularity" fraudulent concealment, as is required. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010).

**Litigation Privilege:**  Civil Code § 47(b) provides ***absolute immunity*** against all torts based on any communication in any "judicial proceeding" or "any other official proceeding authorized by law" (*Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990)), and protects all "noncommunicative actions which are necessarily related to that communicative act." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1052 (2006).

DC's straw man that the Fourth Claim involves "business conduct" (Opp. at 18) is of no moment.  It is well accepted that ***the litigation privilege applies to the actions of attorneys and non-attorneys alike***, *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990), and courts routinely apply this bar at the pleading stage.  *See, e.g., Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1101-03 (C.D. Cal. 2006).

DC's Fourth Claim hinges on the PPC Agreements/Shuster Termination. FAC ¶¶ 176-177.  As set forth above, Shuster's heirs held no Superman rights.  Only the

Shuster estate, if probated, would hold termination rights under 17 U.S.C. § 304(c).

As conceded in DC's complaint, the clear and express purpose of the PPC Agreements was "to investigate, retrieve and exploit the rights [of the Shuster estate] … via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304(c) of the U.S. Copyright [Act]."  RJN, Ex. B, ¶ 2; *see* FAC ¶ 60 (alleging the same).  "[A]ctions in the probate proceedings … are all absolutely protected by the litigation privilege." *Cabral v. Martins*, 177 Cal. App. 4th 471, 485 (2009).  Similarly, Mr. Toberoff's service and filing of the Shuster Termination with the Copyright Office (signed by "Marc Toberoff, Esq., Counsel for the Estate of Joseph Shuster," see RJN, Ex. E at 33) are also clearly protected. *See Drum v. Bleau, Fox & Associates*, 107 Cal. App. 4th 1009, 1028 (2003) (filing notice of "potential interest in property" protected by the litigation privilege); *Wilton v. Mountain Wood Homeowners Assn.*, 18 Cal. App. 4th 565, 569-70 (1993) (filing of lien protected by the litigation privilege).  Notwithstanding DC's hype, its claim arises from protected activity and is squarely barred by the litigation privilege.

**No Interference With the 1992 Agreement:**  DC's Fourth Claim requires an "actual breach or disruption of the contractual relationship" established in the 1992 Agreement. *Pacific Gas & Electric Co.,* 50 Cal. 3d at 1126.  As set forth above, the 1992 Agreement had no bearing on the Superman copyrights long ago granted to DC by Siegel and Shuster, and the Shuster Termination of those old grants had absolutely no effect on the 1992 Agreement as a matter of law.  Nor could DC have had a "prospective economic advantage" (a half-hearted reference by DC in a footnote, see FAC ¶ 176 n.5) as the 1992 Agreement granted no Superman rights.

## V.   THE FIFTH CLAIM

**Statute of Limitations:**  As with its Fourth Claim, DC cannot refute that its Fifth Claim, for interference with prospective economic advantage, is barred by the two-year statute of limitations.  Mot. at 22-23.  The law is crystal clear that claims accrue when the plaintiff "at least 'suspects … that someone has done something

9

wrong' to him," and that the plaintiff "need not know the 'specific facts'" involved in the allegations. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (citations omitted). *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (interference claims accrue when plaintiff "suspects" a potential claim).

The Fifth Claim is allegedly based (FAC ¶¶ 102-104, 184-86) on the IPWW Agreement and the Timeline, enclosing stolen privileged documents, *both* of which DC had read in *2006*. The IPWW Agreement was voluntarily produced to DC in 2006. RJN, Exs. G-H. DC clearly knew the contents of the Timeline in 2006, when its in-house legal team at its parent company, Warner Bros., reviewed the document, contrary to DC's misrepresentation that it did not know its contents "until December 2008, when the Timeline was ordered produced." Opp. at 23. *See* SRJN, Ex. B, ¶ 3 ("I [Wayne Smith, Warner's in-house counsel] looked at what might be characterized as the 'cover letter' that came with the Superman Documents," and Smith summarizes the Timeline's contents); ¶ 4 ("Mr. Schulman [Warner's General Counsel] … advised me that he had only looked at the cover letter [Timeline] ….").

DC attached the Timeline to its complaint, and adapted its defamatory accusations to make the allegations in the Fourth Claim, as it admits in its opposition. *See* Opp. at 23; FAC ¶¶ 67-69, 75, 80-85, 102-04, 182-82; Ex. A at 64-67.

DC also knew by *2006* that IPWW/Emanuel had made an August 2002 offer to buy the Siegels' Superman rights, that the Siegels suspended negotiations with DC (DC's alleged economic advantage) in September *2002*; and that weeks later the Siegels entered into the IPWW Agreement, but did not sell their rights to IPWW. *See* Mot. at 22-23; RJN, ¶ 7, Exs. C, G-H; FAC ¶¶ 67-69, 75, 80-85, 182-82.

DC cannot deny that all of the above caused it to "at least 'suspect'" (*Norgart*, 21 Cal. 4th at 398) its alleged "claims" in *2006*, triggering the two-year statute. DC's Fourth Claim, which it failed to file for four years, is plainly time-barred. DC's vague fraudulent concealment arguments cannot toll the statute of limitations, as DC was "on notice of a potential claim" in 2006. *Barber,* 234 Cal. App. 3d at 1083.

**Litigation Privilege:** Despite DC's false protests and prejudicial remarks, the Fifth Claim is also squarely barred by the litigation privilege. DC cannot hide from its Fifth Claim allegations that in August 2002, Mr. Toberoff allegedly (i) induced the Siegels to end settlement discussions with DC as to their termination rights, so they would become his clients, (ii) filed *Superboy* termination notices, and (iii) prosecuted the Siegels' statutory terminations in litigation with DC. FAC ¶¶ 180-86.

DC's straw man that Mr. Toberoff was not acting as an attorney is again both false and irrelevant. The litigation privilege applies equally to attorneys and non-attorneys. *Pacific Gas & Electric Co.,* 50 Cal. 3d at 1126. The Fifth Claim is based on settlement discussions, and where alleged conduct relates to "settlement … [the] Civil Code section 47 litigation privilege applies as a matter of law." *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 972 (2010). Notably, in 2004, before *Siegel* was filed, Mr. Toberoff *continued* settlement negotiations with DC, but DC would not budge from the onerous contract rejected by the Siegels in May 2002. *See Siegel*, 542 F. Supp. 2d at 1139; Docket No. 305-49, Ex. 49 at 1669-70.

DC's other key allegations all fall right within the litigation privilege: Mr. Toberoff's filing of Superboy terminations (*Drum*, 107 Cal. App. 4th at 1028); DC's damage allegations that it "incur[red] millions of dollars in subsequent legal fees in disputes with the Siegel[s]" (FAC ¶ 186), which arise out of the Siegels' prosecution of their copyright claims, with Mr. Toberoff as their counsel; and DC's claim based on "alleged misrepresentations … [in] discussions over … the possibility of being retained." *Rubin v. Green*, 4 Cal. 4th 1187, 1196 (1993); *see* FAC ¶¶ 185-86.

## VI.   THE SIXTH CLAIM

**Statute of Limitations:** DC's Sixth Claim for unfair competition ("UCL") alleges a course of conduct that began in 2001-2003. FAC ¶¶ 58-65, 80-83, 187-89. In *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002), the Ninth Circuit held that UCL claims "are subject to a four-year statute of limitations which [begins] to run on the date the cause of action accrued [*i.e.,* the

1  conduct occurred], not on the date of discovery."  While DC cites to conflicting state-
2  court cases, "[a]bsent a clear indication from the California courts that the Ninth
3  Circuit's interpretation of [the UCL] was incorrect," this court must follow the
4  interpretation set forth in *Karl Storz*.  *Perez v. Nidek Co. Ltd.*, 657 F. Supp. 2d 1156,
5  1166 (S.D. Cal. 2009).  DC's UCL claim is clearly time-barred.

6        **DC Has No Legal Right to Negotiate:**  As stated above, DC has no "right" to
7  negotiate under § 304(c)(6)(D), and the Sixth Claim thus fails. *See* Section III, *supra*.

8        **Litigation Privilege:**  DC's Sixth Claim, alleging "consent agreements"
9  regarding the *settlement of litigation* (FAC ¶¶ 170, 188), is barred because where
10  alleged conduct regards "settlement … [the] Civil Code section 47 litigation privilege
11  applies as a matter of law."  *Seltzer,* 182 Cal. App. 4th at 972.

12        **Preemption:** To avoid preemption, a UCL claim must "include[] an 'extra
13  element' that makes the right asserted qualitatively different from those protected
14  under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90
15  (9th Cir. 2005).  DC alleges ***no*** such extra element, as DC's Sixth Claim expressly
16  "concerns copyright interests" (Opp. at 25) and seeks to "establish the parties'
17  respective rights and obligations with respect to the copyright interest in the
18  Superman material."  FAC ¶ 189.  The Sixth Claim is "constructed upon the premise"
19  of a Copyright Act violation and therefore preempted.  *Del Madera Properties v.*
20  *Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987).

21        **Failure to Plead "Unfair" Conduct:**  DC has no UCL claim for "unfair"
22  conduct because it alleges no conduct that "significantly threatens or harms
23  competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th
24  163, 187 (1999).  In fact, DC seeks to squelch competition, by asserting a fictitious
25  "right" of exclusivity.  FAC ¶ 168.  Even as alleged, the "consent agreements" do not
26  "forbid" the Siegels/Shusters from negotiating with DC.  FAC ¶ 101.

27  **CONCLUSION**
28        As set forth in defendants' motion, DC's Claims should be dismissed.

| | | |
|---|---|---|
| 1 | Dated: October 31, 2011 | RESPECTFULLY SUBMITTED, |
| 2 | /s/ Marc Toberoff | /s/ Laura W. Brill |
| 3 | TOBEROFF & ASSOCIATES, P.C. | KENDALL BRILL & KLIEGER LLP |
| | Attorneys for Defendants Mark | Attorneys for Defendants Marc Toberoff |
| 4 | Warren Peary *et al.* | *et al.* |