Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California, 90067
Telephone:   (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>              Plaintiff,<br><br>      vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>*Reply Brief filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:     November 14, 2011<br>Time:     1:30 p.m.<br>Place:    Courtroom 11 |

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (State Bar No. 90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (State Bar No. 195889)
 *lbrill@kbkfirm.com*
Nicholas F. Daum (State Bar No. 236155)
 *ndaum@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:    (310)556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

# TABLE OF CONTENTS

| Exhibit | Document | Page |
|---------|----------|------|
|  | Request for Judicial Notice | 1 |
| A | April 28, 2005 letter from DC Comics to Mark Warren Peary | 4 |
| B | March 27, 2007 Declaration of Wayne Smith | 11 |

Pursuant to Rule 201 of the Federal Rules of Evidence, defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC ("Defendants"), respectfully request that this Court take supplemental judicial notice of the following documents, submitted in support of Defendants' Consolidated Motion to Dismiss Plaintiff DC Comic's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider matters subject to judicial notice.  *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1111-12 (C.D. Cal. 2003) ("In deciding a motion to dismiss…a court may consider…matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.").  "Subsection (d) [of Rule 201] makes the taking of judicial notice mandatory if the Court is so requested and supplied with the necessary information."  *Haye v. United States*, 461 F.Supp. 1168, 1174 (C.D. Cal. 1978)

1.     Defendants request that the Court take judicial notice of a letter from Paul Levitz, President of DC Comics, to defendants Mark Warren Peary and Jean Adele Peavy, dated April 28, 2005.  A true and correct copy of the April 28, 2005 letter is attached hereto as **Exhibit A.**  Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). *See Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (court takes judicial notice on a motion to dismiss of conference call transcripts for the fact that statements were made on the dates specified); *Werner v. Werner*, 267 F.3d 288, 295-296 (3d Cir. 2001) (determination on a motion to dismiss of whether defendants produced corporate meeting minutes during discovery in related state court action "is capable of accurate and ready determination by resort to sources whose accuracy

1  cannot reasonably be questioned by [defendants]").

2      2.    Defendants request that the Court take judicial notice of the Declaration

3  of Wayne Smith in Support of Defendants' Motion to Compel Production of Whistle-

4  Blower Documents, which was dated March 26, 2007 and which was filed on March

5  27, 2007 in the related case, *Siegel v. Warner Bros. Entertainment Inc.*, C.D. Cal.

6  Case No. 04-CV-08400 ODW (RZx), at Docket No. 108.  A true and correct copy of

7  the March 27, 2007 Declaration of Wayne Smith is attached hereto as **Exhibit B**.  It

8  is proper for the Court to take judicial notice of proceedings and determinations of

9  prior related litigation. 1-201 *Weinstein's Federal Evidence* § 201.12[3] ("Courts

10  have the power to judicially recognize their own records of prior litigation closely

11  related to the present case").  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442

12  F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice, as a matter of public record,

13  of briefs, pleadings, memoranda, expert reports from related litigation); *Kourtis v.*

14  *Cameron*, 419 F.3d 989, 1001 (9th Cir. 2005) ("[C]ourt records from related

15  proceedings can be taken into account without converting a motion to dismiss into a

16  summary judgment motion"), *abrogated on other grounds by Taylor v. Sturgell*, 553

17  U.S. 880 (2008); *Ungureanu v. Teichert*, 2011 U.S. Dist. LEXIS 118507, at *5 (E.D.

18  Cal. Oct. 13, 2011) (holding that "the fact that a declarant uttered such facts … in a

19  declaration which was filed could not be reasonably disputed" and would be subject

20  to judicial notice); *Butcher v. Advanced Mineral Techs., Inc.*, 2011 U.S. Dist. LEXIS

21  21493, at *9 (D. Nev. Mar. 2, 2011) (taking judicial notice "of the fact that

22  [defendant] made certain statements under oath in his declaration filed in the [related]

23  state court action"); *Berman v. McManus*, 2011 U.S. Dist. LEXIS 57841, at *83

24  (E.D. Cal. May 31, 2011) (granting "request for judicial notice as to the [d]eclaration

25  because it is part of another court's file that bears directly on the plaintiff's claims in

26  this action"); *Molus v. Swan*, 2009 U.S. Dist. LEXIS 4192, at *10 (S.D. Cal. Jan. 22,

27  2009) (the court took "judicial notice of the existence of these documents [including

28  a declaration] and the specific statements and/or allegations contained within the

documents" from a related case).

Pursuant to Federal Rules of Evidence 201, and for the reasons set forth above, Defendants respectfully request that this Court take judicial notice of the documents described above.

Dated:  October 31, 2011

/s/ Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark
Warren Peary *et al.*

RESPECTFULLY SUBMITTED,

/s/ Laura W. Brill

KENDALL BRILL & KLIEGER LLP
Attorneys for Defendants Marc Toberoff
*et al.*

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS



DC COMICS
1700 Broadway
New York, NY 10019
(212) 636-5555
FAX (212) 636-5485
e-mail: paul.levitz@dccomics.com

Paul Levitz - President & Publisher

<u>By Federal Express</u>

April 28, 2005

Jean Adele Peavy
  (as sole heir to Joseph Shuster)
Mark Warren Peary
  (as personal representative of the Estate of Joseph Shuster)
51 Camino Cabo
Santa Fe, NM 87505-2277

Dear Jean and Warren:

I write to you today to offer to license from you the interest in Superman which is the subject of your recent notice of termination.  Without in any way conceding that the notice of termination is valid, and though the interest you claim in Superman cannot, under any circumstances, become yours until April 2013 — over eight years from now — DC Comics is proposing to enter into an arrangement with you and begin paying you substantial payments starting *now*. For the period covered by your termination notice, DC will only pay a premium to *one* terminating party.  Therefore, before proposing the terms of our offer I believe it would be helpful to lay out some of the background and history that brings us to where we are today.

As an initial matter, I want to reiterate to you the great respect that DC Comics and I personally have for Joe Shuster's work, and for Superman's value and contribution to American culture and to DC Comics.  As you may know, I have been working in the comic book field for over thirty years, and like Joe, while still in high school started out as a freelancer for DC. It was my pleasure to know Joe for almost the last two decades of his life.  As a result of my long association with DC, I can personally attest to DC's heavy investment in and nurturing of the Superman property, which I believe has played a substantial part in creating the lasting value and continued popular interest the character that Joe and Jerry created has enjoyed.  DC's efforts have included the distribution of television programming and motion pictures featuring Superman, merchandising of the Superman character, and continually creating new and interesting story lines that have kept Superman alive in the public's imagination.  I hope you agree that DC has done its job well in its management and development of Superman.

1



A Warner Bros. Entertainment Company

**EXHIBIT A**
**4**


Shuster
> Ex. 10.

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 2

Given DC's long history of stewardship, commitment and dedication of resources to Superman, I believe that there is no company better positioned than DC to continue Superman's success.

As you are no doubt aware, aside from you and DC Comics, the heirs of Jerry Siegel also claim to have an interest in the Superman character, and as you probably know, in October 2004 those heirs commenced two lawsuits in federal court in Los Angeles against DC Comics and certain of its affiliated companies. In the first lawsuit they seek an accounting for profits derived from DC's exploitation of the Superman character following the Siegel heirs' purported termination of Jerry Siegel's original 1938 grant to DC. They claim the termination was effective April 16, 1999. In the second lawsuit the Siegel heirs assert that Jerry Siegel – without any contribution from Joe Shuster – was the sole creator and owner of the character Superboy, that the Siegel heirs purported to terminate DC's interest in the Superboy character effective November 18, 2004, and that neither DC, you nor anyone other than the Siegel heirs is entitled to exploit the Superboy property.

The Siegel lawsuits are pending and in their early stages. Although it is too early to tell how these lawsuits will turn out (and we believe that DC has substantial defenses to the Siegel heirs' claims) I am advised that the Siegel heirs' counsel has communicated to our lawyers that it is their ultimate goal to settle all claims with DC relating to Superman. This would presumably include all claims relating to any interest in the copyright extension period that begins in 2013 – the same period in which you claim rights. Most lawsuits do, in fact, settle, and it continues to be our hope as well to reach some sort of amicable resolution with the Siegel heirs. In fact, one of the principal defenses we have raised in the Siegel heirs litigations is that DC did, in fact, reach a comprehensive settlement with the Siegel heirs in 2001, which covered all copyright extension periods, and which was confirmed by the Siegel heirs' lawyers in writing. The Siegel heirs now deny that there was such an agreement. This is one of the issues that the court will ultimately decide.

I want to be frank in telling you that if we are able to resolve matters with the Siegel heirs (whether by settlement or judgment) *before* we reach an agreement with you, so that we acquire or are adjudged to own rights to the Superman character during the copyright extension term that begins in 2013, there will not be any pressing need to reach an agreement with you in advance of that date. The reason that we are contacting you at this time is that we are interested in removing now any possible issues as to whether DC Comics has sufficient rights to continue to fully exploit the Superman character in new works during the extension term beginning in 2013. Once we have certainty that we

2

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 3

have those rights from one of the joint holders, we are then assured of our right to continue to exploit those rights to create new works, and the other joint holder at best is entitled to a participation or has a claim for an accounting. Therefore, if you are interested in receiving something *now* in exchange for rights that cannot ripen until 2013, you should be aware that we are more motivated to make such a deal now. The deal that we envision makes a payment to you as soon as it is signed, but the opportunity to enter into such a deal exists only in the absence of a similar arrangement with the Siegel heirs, or a judgment by the court that the Siegel heirs have already settled the matter – as we contend they have.

In considering our proposal – which you should discuss with any advisors to you – please keep in mind that even after 2013, if your termination notice is valid, your interest will be limited to U.S. rights since the termination notice you gave applies to rights under U.S. law only. In addition, you will still have to share the copyright with either or both the Siegel heirs or DC, so at best you will only have non-exclusive rights. Further, your interest will be limited to the 1930s version of the Superman character and the triangular (as opposed to the current 5-sided) "S" shield which have extremely limited marketability by themselves. These limitations are substantial and could make it virtually impossible for you to enter into any sort of significant license deal with another company. So a deal between you and DC really makes by far the most sense; it gives both parties significant benefits.

So, with that background, I would like generally to outline for you our offer in exchange for your exclusive license to DC of all rights arising out of Joe's authorship or contributions to DC Comics, including any Shuster post-April 2013 rights in Superman and all related properties, including Superboy (the "Superman Property"). Although there may be fine points to this offer that our representatives will want to work out, the following is our basic proposal:

1.    **Non-Refundable Cash Advance**

Upon signing, you shall be paid:

- A non-refundable advance against royalties (as described below) of two million dollars ($2,000,000.00) (This means that no matter what, you get to keep the money; it is applied against money DC may owe you commencing in 2013; it is not repayable by you)

3

EXHIBIT A
6

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 4

2.   **Royalty Payments**

Beyond the initial advance, you shall share in the success of the
Superman Property in connection with new works created after
April 18, 2013. Commencing with revenues received on account of
such works after April 18, 2013, DC shall pay you royalties, subject
to recoupment of the advance described above, but in no event
less than $100,000.00 per year, as follows:

- On merchandising and media licenses:

    - 6% of DC's receipts from all media and
      merchandising licenses for the domestic (U.S.)
      territory for use of the Superman Property where
      the property is not commingled with any other
      superhero or equivalent property

    - 3% of DC's receipts from all media and
      merchandising licenses for the domestic territory
      for use of the Superman Property where the
      property is commingled with one other superhero
      or equivalent property (e.g., Batman, Flash)

    - An allocable share of DC's receipts from all media
      and merchandising licenses for the domestic
      territory where the Superman Property is
      commingled with multiple other properties,
      provided that the 6% royalty shall not be reduced
      to less than 1%

    - 1% of DC's receipts from all media and
      merchandising licenses for the domestic territory
      for use of the Superman Property where the
      property is used in an extraordinarily mixed license
      with multiple other properties (e.g. Six Flags
      license with DC and Looney Tunes characters),
      except to the extent that receipts can be
      specifically attributed to the Superman property in
      which case the 6% royalty would apply to such
      receipts.

4

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 5

- On merchandise sold directly by DC

  o 6% of an allocable portion of domestically derived revenue from the Superman Property consistent with revenue reporting by third-party licensees, reducible by commingling or bundling as per the media and merchandising licenses above

- On publications sold directly by DC

  o 1% of the cover price of copies sold in the domestic territory of DC's own editions of publications ("Publications") based on the Superman Property where the Superman Property comprises the title of the publication (*e.g.* "Superman") or where the Superman Property comprises the entire subject matter of the publication (*e.g.* "Action Comics")

  o 1/2% of the cover price of Publications which are based on multiple properties which include the Superman Property

  o there shall be no royalties payable hereunder where the Superman Property appears in publications or stories based on other properties where neither the publication or story title contains the Superman Property

The royalties will be paid to you on a calendar year basis beginning in 2014 (for the April – December, 2013 period) and thereafter through 2033. During this period, you will receive a minimum royalty of $100,000.00 per year regardless of whether DC has recouped its advance. To the extent that the minimum royalty exceeds the royalties earned under the above definitions, such excess shall be treated as an advance against royalties to be earned. Aside from the $100,000.00 minimum, all royalties earned shall first be applied to any unrecouped advances. All sums advanced shall bear interest at the prime interest rate – whatever it may be – to the extent unrecouped.

5

**EXHIBIT A**
**8**

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 6

3.    **Credit**

DC Comics shall accord credit along the lines of "Superman
created by Jerry Siegel and Joe Shuster," "Created by Jerry Siegel
and Joe Shuster" or "Based on the characters created by Jerry
Siegel and Joe Shuster" on comic books, television programs (main
titles), motion pictures (main titles on screen), all publications and
other works where credit to creators is customary. Credit must be
consistent with guild and other obligations.

4.    **Miscellaneous Terms**

You will make appropriate warranties and representations that you
have not transferred or licensed any of the Superman rights and
that DC may exploit the Superman Property without interference.
You and DC will also mutually release each other and provide
certain covenants and indemnities as to future claims. Finally, you
will acknowledge DC's right to use and publish Joe's biographical
facts, materials and photographs in connection with the Superman
Property, including in connection with publicity and exploitation of
Superman, which is something we want to do.

As mentioned above, there may be other details that would need to be
ironed out before an agreement is signed, but we've tried to set forth herein the
essential terms of the deal we are proposing.

We hope you feel there are compelling reasons for you to seriously
consider our offer. First, it gives you money now, eight years before you could
be entitled to it otherwise. Second, it provides you with an annual advance for
each year from 2014 through 2033 — as long as the term of copyright in Action
Comics no. 1. Third, it allows you to capitalize on the synergies created by the
combination of your rights — which, by themselves are at best extremely narrow
and likely unmarketable — with those of DC. This is a situation where the whole
is clearly greater than the sum of the parts and both you and DC can benefit from
their combination.

Finally, to be fully open and candid, there is an additional point which I
feel compelled to mention. I understand that you are represented by counsel in
this matter — Marc Toberoff — and so I will ask DC's representatives to send him
a copy of this letter. I assume that you know that Mr. Toberoff is also
representing the Siegel heirs in their lawsuits against DC. I feel compelled to
mention the dual role Mr. Toberoff is playing because the offer in this letter is

6

EXHIBIT A
9

Jean Adele Peavy
Mark Warren Peary
April 28, 2005
Page 7


made only to you, on a confidential basis, in the hopes of making a deal that is
mutually beneficial to your family and to DC.  I hope that you will consider your
own best interests and instruct your counsel accordingly; keeping in mind that
what is best for you may well conflict with the interests of Mr. Toberoff's other
client.

I am hopeful that you will find our proposal beneficial and fair.  I very much
look forward to your response and would welcome the opportunity to discuss any
question you may have.  Please call or write to me at your convenience, but I
urge you to do so soon as given the current situation we can only keep this offer
open for a short time.  Thank you.

Sincerely,

Paul Levitz

7

EXHIBIT A
10

1   WEISSMANN WOLFF BERGMAN
        COLEMAN GRODIN & EVALL LLP
2   Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3   Adam Hagen (SBN 218021)
    9665 Wilshire Boulevard, Ninth Floor
4   Beverly Hills, California 90212
    Telephone: (310) 858-7888
5   Fax: (310) 550-7191

6   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
7   James D. Weinberger (Admitted *pro hac vice*)
    866 United Nations Plaza
8   New York, New York 10017
    Telephone: (212) 813-5900
9   Fax: (212) 813-5901

10  PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
11  1711 Route 9D
    Cold Spring, New York 10516
12  Telephone: (845) 265-2820
    Fax: (845) 265-2819

13

14  Attorneys for Defendants and Counterclaimant

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

| 17 | JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case Nos. [Consolidated for Discovery]: |
|---|---|---|
| 18 | Plaintiffs, | CV 04-8400 SGL (RZx) |
| 19 | vs. | CV 04-8776 SGL (RZx) |
| 20 | WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | Hon. Steven G. Larson, U.S.D.J. Hon. Ralph Zarefsky, U.S.M.J. |
| 21 | Defendants. | **DECLARATION OF WAYNE M. SMITH IN SUPPORT OF** |
| 22 | JOANNE SIEGEL and LAURA SIEGEL LARSON, | **DEFENDANTS' MOTION TO COMPEL** |
| 23 | Plaintiffs, | **PRODUCTION OF WHISTLE-BLOWER DOCUMENTS** |
| 24 | vs. | |
| 25 | TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10, | **DISCOVERY MATTER LOCAL RULE 37** |
| 26 | | Time: 10:00 a.m. |
| 27 | Defendants. | Date: April 16, 2007 Courtroom: 540 Mag. Judge Ralph Zarefsky |
| 28 | AND RELATED COUNTERCLAIMS | Discovery Cutoff: Nov. 17, 2006 |

{F0010672 1 }

**EXHIBIT B**

**11**

1    I, Wayne M. Smith, declare and state as follows:

2    1.    I am an attorney, admitted to practice before the Supreme Court of the

3    State of California and before this Court, and am employed by defendant Warner

4    Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and

5    Chief Patent Counsel. I submit this declaration in support of Defendants' Motion to

6    Compel Production of Whistle-blower Documents. I have personal knowledge of

7    the facts contained within this declaration, and, if called upon as a witness, I could

8    and would testify competently thereto.

9    2.    During the afternoon of June 28, 2006, I received a telephone call from

10   John A. Schulman, General Counsel of Warner Bros., who asked that I come to his

11   office. Upon arriving at his office, Mr. Schulman advised me that a set of

12   documents (the "Superman Documents") addressed to him and apparently relating

13   to the Siegel litigation had arrived from an anonymous source at his office that day.

14   Mr. Schulman informed me that the cover letter contained with the documents

15   indicated that other executives at Warner Bros. may have received the same set of

16   documents, and that he had called the offices of those executives to see if they had

17   received anything. He further advised me that he had asked those executives to send

18   the documents to his office without reviewing them, and that one set of documents

19   had already been delivered to him. Mr. Schulman handed me the stack

20   (approximately an inch high) of Superman Documents that he had received and

21   asked me to wait outside his office while he completed a meeting, after which we

22   would discuss them. The stack did not include any envelope or packaging in which

23   the documents may have arrived. This was not unusual as it has been my experience

24   that the practice of Mr. Schulman's office staff is to dispose of envelopes and

25   packaging upon opening mail.

26   3.    While I was waiting, I looked at what might be characterized as the

27   "cover letter" that came with the Superman Documents. The cover letter, which

28

{F0010672 3}

1

1  was not signed, alleged various types of ethical misconduct on the part of the

2  Plaintiffs' counsel in connection with the Siegel litigations.  The cover letter also

3  asserted ethical misconduct – violating the terms of a confidentiality agreement by

4  leaking settlement information to the press – in connection with another litigated

5  matter where Plaintiffs' counsel had also represented a party adverse to Warner

6  Bros.  The letter appeared designed to right wrongs caused by Plaintiffs' counsel's

7  misconduct.  The letter also referenced the documents enclosed, providing an

8  overview of their contents and their connection to Plaintiffs' counsel's alleged

9  wrongdoing.  I also thumbed through the Superman Documents contained with the

10  letter, but did not read any of them in detail.  Meanwhile, an assistant for another

11  Warner Bros. executive delivered what appeared to be another set of Superman

12  Documents to Mr. Schulman's office.  I did not observe that any of the three sets of

13  Superman Documents – (i) the set Mr. Schulman handed to me; (ii) the other set in

14  his office; or (iii) the set that was delivered while I was waiting outside his office –

15  was contained in an envelope or other packaging.

16        4.        I then met with Mr. Schulman.  I told Mr. Schulman that based on the

17  contents of the cover letter and my brief thumbing through the documents, it

18  appeared that certain of the documents in the package were privileged.  I said that

19  before I looked at the documents I wanted to review the case law in the area to

20  determine what level of review, if any, of the Superman Documents was

21  appropriate.  Mr. Schulman agreed with this approach, gave me one set of the

22  documents, retained the other two sets that he had received, and advised me that he

23  had only looked at the cover letter that came with the documents and would not

24  review the documents at all.

25        5.        I returned to my office with the set of documents.  I initially went on

26  the internet and performed a Google search relating to the issue of what obligations,

27  if any, governed the handling of the Superman Documents we had received.  My

28  initial search located an article from the June 2006 Los Angeles Lawyer magazine

{F00106723.}

1   entitled "On the Receiving End," by Kurt L. Schmalz (a true and correct copy of

2   which is attached as Exhibit "A" hereto) which was posted on the Los Angeles

3   County Bar Association web site. The article concerns the obligations of lawyers

4   who unwittingly receive privileged documents from opposing counsel's files and

5   discusses various California cases that have dealt with the issue, including the *Rico*

6   *v. Mitsubishi Motors Corporation* case pending before the California Supreme

7   Court.

8       6.      I read the Schmalz article and then downloaded and studied the three

9   principal California cases it identifies: *Aerojet-General Corporation v. Transport*

10  *Indemnity Insurance*, 18 Cal.App.4th 996 (1993), *State Compensation Insurance*

11  *Fund v. WPS, Inc. (State Fund)*, 70 Cal.App.4th 644 (1999) and the Court of Appeal

12  decision in the case under review, *Rico v. Mitsubishi Motors Corporation*, 116

13  Cal.App.4th 51 (2004) (*review granted* June 9, 2004). Based on my review of the

14  relevant California authorities, it appeared that a conservative approach to handling

15  the Superman Documents was to follow the procedure laid out by the Court in *State*

16  *Fund*, specifically: (i) to review each document but to cease the review once it

17  became apparent that the document was privileged; (ii) to contact opposing counsel

18  and advise that the documents have been received; and (iii) to refrain from using any

19  information in the documents until there was either an agreement with opposing

20  counsel, or the court had determined the documents' disposition.

21      7.      Following my review of the law, I called Mr. Schulman and advised

22  him of the results of my research. I said that I intended to review the Superman

23  Documents in accordance with *State Fund*. At Mr. Schulman's request I also sent

24  copies of the three key cases and the article to Mr. Schulman's office.

25      8.      That evening, I took the Superman Documents home with me and spent

26  approximately a half hour reviewing them. Certain of the documents – such as

27  executed agreements relating to Superman and correspondence between the

28  Plaintiffs and non-lawyer third parties – did not appear subject to any applicable

[F0010672 1]

**EXHIBIT B**
**14**

1  privilege.  As I was going through the documents I placed them into three piles: (i)

2  "non-privileged," (ii) "privileged," and (iii) "?" (where either I could not tell

3  whether it was privileged or I believed the document covered subject matter where

4  privilege may have been waived in the case, as explained below).  In reviewing each

5  document, where it first appeared to me that it was entirely privileged, I ceased

6  reading it, placed the document in the "privileged" pile and did not look at it further.

7  After going through the documents, I placed a post-it note on the top of each pile

8  (indicating "privileged," "non-privileged," or "?"), and fastened each pile together.

9  I did not look at the documents further.  Because I did not conduct a detailed review

10  of the Superman Documents, and because of the passage of time, I do not recall

11  their specific contents.  I do, however, recall generally the subject matter of certain

12  of the documents.

13       9.    The non-privileged pile was the second largest of the three.  It

14  contained what appeared to be agreements between, *inter alia*, the Siegels and/or

15  Shusters and various entities, as well as correspondence concerning the interest in

16  Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother,

17  Michael Siegel.  To my knowledge, this last category of documents has never been

18  produced in the litigation

19       10.    The "?" pile was the smallest.  I believe that one or two of the

20  documents in this category potentially fall within the scope of a privilege waiver

21  based Plaintiffs' reliance on an affirmative defense that their predecessor counsel

22  did not have authority to accept a settlement proposal made by Defendants.

23  Defendants position on this privilege waiver is the subject of a separate Motion to

24  Compel filed concurrently herewith.

25       11.    The pile of documents I labeled "privileged" was the largest.

26       12.    Even from the brief review made, it appeared to me that, with the

27  exception of the cover letter (which also addressed the other litigation involving

28  Plaintiffs' counsel), all of the Superman Documents related to the subject matter of

[F001\06723.]

**EXHIBIT B**
**15**

1 the instant litigation and were responsive to document requests the Defendants had
2 previously served on Plaintiffs. However, it did not appear to me at the time that
3 any of the "non-privileged" documents had been produced in the litigation.
4 Moreover, at least some (and perhaps virtually all) of the privileged documents, as
5 well as those in the "?" pile, were, to the best of my knowledge, never identified in
6 any privilege log served by the Plaintiffs.

7      13.    The next morning, June 29, 2006, I returned with the Superman
8 Documents to see Mr. Schulman in his office. Mr. Schulman and I discussed having
9 a neutral third party hold the documents pending either the parties' agreement as to
10 their disposition or order of the Court. We decided to ask John Quinn, then with
11 Arnold & Porter, and former president of the Los Angeles County Bar Association,
12 to act as the neutral based on his reputation and legal ethics experience. He agreed
13 and the following morning, June 30, 2006, the three sets of the Superman
14 Documents, including the set that I had categorized, were handed over to Mr. Quinn.
15 Out of an abundance of caution we handed over *all* the documents to Mr. Quinn, not
16 just those that were clearly or potentially privileged. Further, we have not shared
17 the contents of the Superman Documents with any of the outside counsel
18 representing the Defendants in this action, nor have we used the contents of the
19 documents in the litigation.

20      I declare under penalty of perjury of the laws of the United States of America
21 that the foregoing is true and correct.
22      Dated this 26th day of March 2007 at Burbank, California.

23
24                                        Wayne M. Smith
25
26
27
28