1   DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14  DC COMICS,                          | Case No. CV 10-3633 ODW (RZx)

15          Plaintiff,                  | **DISCOVERY MATTER**

16          v.                          | **JOINT STIPULATION REGARDING DC COMICS' MOTION FOR LEAVE TO SERVE SIX ADDITIONAL INTERROGATORIES ON DEFENDANT MARC TOBEROFF**

17  PACIFIC PICTURES
    CORPORATION, IP
18  WORLDWIDE, LLC, IPW, LLC,
    MARC TOBEROFF, an individual,
19  MARK WARREN PEARY, as
    personal representative of the
20  ESTATE OF JOSEPH SHUSTER,
    JEAN ADELE PEAVY, an
21  individual,  LAURA SIEGEL
    LARSON, an individual and as
22  personal representative of the
    ESTATE OF JOANNE SIEGEL,
23  and DOES 1-10, inclusive,

24          Defendants.

NOTICE OF MOTION AND MOTION,
DECLARATION OF CASSANDRA
SETO, AND [PROPOSED] ORDER
FILED CONCURRENTLY HEREWITH

**Judge**:       Hon. Otis D. Wright II
**Magistrate**:   Hon. Ralph Zarefsky

**Hearing Date**:   Jan. 30, 2012
**Hearing Time**:   10:00 a.m.
**Courtroom**:      540
**Discovery Cutoff**:   None Set
**Pretrial Conference**:   None Set
**Trial**:          None Set

(continued from previous page)

MARC TOBEROFF (S.B. #188547)
  mtoberoff@ipwla.com
NICHOLAS C. WILLIAMSON (S.B. #231124)
  nwilliamson@ipwla.com
KEITH G. ADAMS (S.B. #240497)
  kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, Jean Peavy, and Laura Siegel Larson

# TABLE OF CONTENTS

**Page**

I.   DC'S INTRODUCTION.................................................................................1

II.  DEFENDANTS' INTRODUCTION ...........................................................2

III. DC'S STATEMENT OF ISSUES IN DISPUTE..........................................3

    A.   Relevant Factual Background ...............................................................3

    B.   DC's Six Additional Interrogatories Comport With The Rules ...........5

    C.   None Of Toberoff's Boilerplate Objections Has Merit .......................7

    D.   Conclusion ..........................................................................................10

IV.  DEFENDANT'S STATEMENT OF ISSUES IN DISPUTE .......................11

    A.   DC Has Not Shown "Good Cause" to Serve Additional
           Interrogatories ....................................................................................11

    B.   Defendants' Objection ........................................................................13

    C.   Conclusion ..........................................................................................14

1          Pursuant to Federal Rules of Civil Procedure 26, 33, and 37 and Central

2    District Local Rule 37-2, the parties respectfully submit the following Joint

3    Stipulation Regarding DC Comics' Motion For Leave To Serve Six Additional

4    Interrogatories On Defendant Marc Toberoff.  Pursuant to Central District Local

5    Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and

6    therefore respectfully seek the assistance of the Court.

7    Dated:     January 3, 2012      Respectfully Submitted,

8                O'MELVENY & MYERS LLP

9

10               By: /s/ Daniel M. Petrocelli

11                 Daniel M. Petrocelli
                   Attorneys for Plaintiff DC Comics

12   Dated:     January 3, 2012      Respectfully Submitted,

13               TOBEROFF & ASSOCIATES, P.C.

14

15               By:  /s/ Keith Adams

16                 Keith Adams

17                 Attorneys for Defendants Laura
                   Siegel Larson, Mark Warren Peary,

18                 and Jean Adele Peavy

19

20

21

22

23

24

25

26

27

28

JOINT STIP. RE: DC'S MOT. FOR LEAVE
     TO SERVE ADDT'L ROGS

## I.    DC'S INTRODUCTION

DC seeks leave to propound six additional interrogatories (beyond the default limit of 25) to defendant Marc Toberoff.  The interrogatories are confined to the limited subject of whether and to what extent Toberoff attempted to market the Siegel and Shuster heirs' purported Superman and Superboy rights to third parties, as he represented in inducing them to cut their ties with DC and Warner Bros.  DC sought this information from Toberoff and his three companies (collectively the "Toberoff Defendants") in requests for the production of documents.  They only produced a handful of documents.  When DC pressed the issue, defendants invited DC to propound interrogatories instead, which DC separately served on Toberoff and each of his three companies.  While Toberoff's companies answered the interrogatories, claiming they had made no such marketing efforts, Toberoff refused to answer the interrogatories himself on the grounds that he would not answer more than 25 interrogatories, and based on additional boilerplate objections.

DC should be granted leave to ask the six additional interrogatories at issue.  In addition, DC seeks an order compelling Toberoff to answer them now.  DC seeks these answers to verify Toberoff's claims concerning his efforts to market the heirs' purported rights to third-parties.  This issue was not the subject of discovery in the related *Siegel* case, and it is directly relevant to DC's claims in this case.  Judge Wright recently denied defendants' SLAPP motion seeking to strike DC's state-law claims, and in light of his ruling and conclusions, defendants withdrew their fully briefed motion to dismiss DC's federal and state-law claims.  DC's six interrogatories are aimed at specific relevant evidence and will assist in streamlining discovery in this case, including the scope of depositions of the Toberoff Defendants and third-party discovery.  DC's motion should be granted.

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

## II.    <u>DEFENDANTS' INTRODUCTION</u>

Plaintiff DC Comics' ("DC") motion for leave to serve additional interrogatories, like so many of its pleadings in this action, is larded with a false and misleading summary of purported facts irrelevant to its motion, while ignoring the central legal issue.  Pursuant to F.R.C.P. 33(a)(1), DC is limited to twenty-five interrogatories of Mr. Toberoff.  DC freely chose to use all twenty-five interrogatories to question Mr. Toberoff in detail on a single subject – the documents stolen from Mr. Toberoff's law offices and Mr. Toberoff's response to that theft.  DC now seeks to compel responses to additional interrogatories. However, there is no "good cause" to allow DC to evade the consequences of its decision to use all of its interrogatories on one topic, especially when, as set forth below, DC already taken discovery as to information it seeks and its interrogatories are not designed to obtain information relevant to its claims.

JOINT STIP. RE: DC'S MOT. FOR LEAVE TO SERVE ADDT'L ROGS

1

III.   **DC'S STATEMENT OF ISSUES IN DISPUTE**

2

   A.   **Relevant Factual Background**

3

   Toberoff and his companies represented to the Siegels, Shusters, and their

4

representatives (not to mention DC and other third parties) that there were potential

5

investors (*e.g.*, an alleged "billionaire," competing motion picture studios,

6

investment banks, and others) interested in buying the Siegel and Shuster heirs'

7

putative Superman and Superboy rights.  The Toberoff Defendants also represented

8

that they would market those rights as part of business agreements they induced the

9

heirs to sign.  *E.g.*, Decl. of Cassandra Seto ("Seto Decl.") Ex. R at 2-3; Docket

10

Nos. 49, FAC Ex. A at 62-64; 225-4 at 3; 305-24 at 764:19-778:3, 858:6-859:5;

11

305-37 at 1445:15-1453:2; 305-54 ¶ 2; 305-55 ¶ 1; 305-56 ¶ 1.

12

   As alleged in DC's complaint, the Toberoff Defendants misled the Siegels

13

and Shusters about their intentions, abilities, and access to funds as part of an

14

improper plan to induce the heirs to repudiate their business relationships with DC

15

and transfer their purported rights to the Toberoff Defendants.  Docket No. 49, FAC

16

¶¶ 1-12, 58-85, 174-186 & Ex. A at 62-64.  Discovery from the heirs has confirmed

17

the Toberoff Defendants concealed materials facts.  For example, they failed to

18

disclose to Laura Siegel Larson the Pacific Pictures business agreements Toberoff

19

induced the Shusters to sign, Docket No. 316-5 at 174:11-19, 176:13-178:4,

20

228:16-233:7, 247:17-24; they colluded with Larson to keep her infirm brother

21

Michael in the dark about the identity of the unnamed "investor"—Toberoff's

22

business partner—who was pressing to buy Michael's rights at a steep discount, *id*.

23

at 295:19-299:4, 300:15-314:7; and aided defendant Mark Peary in misleading his

24

sister Dawn about her putative rights, Docket No. 305-37 at 1178:20-22.

25

   At the outset of this case, DC served defendants with requests for production

26

of documents relating to their claimed marketing efforts.  *E.g.*, Seto Decl. Ex. C at

27

23 (Requests 15-17).  Toberoff and his related business entities failed to produce

28

any responsive documents other than a single parking pass to 20th Century Fox

JOINT STIP. RE: DC'S MOT. FOR LEAVE TO SERVE ADDT'L ROGS

Studios and an e-mail exchange with Paramount Pictures. *Id.* Exs. A, D. These documents relate to two meetings the Toberoff Defendants apparently had with these motion picture studios in April and November 2010, *id.*—some *nine years after* the Toberoff Defendants induced the heirs to break off their dealings with DC.

DC and defendants met and conferred regarding their production, and DC asked Toberoff if he communicated with other actual or potential investors or if these two motion picture studios comprised the full list. *Id.* Exs. F at 213-14, L at 251-52. Toberoff declined to respond, telling DC to serve interrogatories if it desired this information. *Id.* DC served Toberoff's companies (defendants Pacific Pictures Corp., IP Worldwide, LLC, and IPW, LLC), with interrogatories seeking this information. *Id.* Ex. E. Each responded almost identically, indicating it had not engaged in *any* communications with third parties about marketing or exploiting the Superman or Superboy rights. *Id.* Exs. H-J. For instance, Interrogatory No. 4 asked defendants to describe "all communications you have had with actual or potential investors concerning rights involving Superman and/or Superboy." Each responded: "None."[1]

DC then served the same six interrogatories on Toberoff individually to verify his claimed communications with investors. *Id.* Ex. K. When it did so—and given it had already served 25 interrogatories on him—DC asked Toberoff to "confirm immediately that you will respond to these simple interrogatories by the

---

[1] *E.g., id.* Ex. H at 223-24 (Request No. 4) (emphases added):
   [Defendant] objects to this interrogatory on grounds that it is overbroad, burdensome and oppressive. [Defendant] further objects to this request on the grounds that it is not reasonably limited in scope. [Defendant] objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. [Defendant] additionally objects to this request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation. *Subject to and without waiving the foregoing general and specific objections, [Defendant] responds, without limitations as follows: None.*

JOINT STIP. RE: DC'S MOT. FOR LEAVE
                                                    TO SERVE ADDT'L ROGS

date listed." *Id.* Ex. L at 252.  A week later Toberoff said he would "respond/object to the interrogatories pursuant to and consistent with the federal rules."  *Id.* Ex. M at 253.  When DC asked for clarification whether service was accepted or Toberoff objected to service on numerosity grounds, Toberoff refused to say.  *Id.* Ex. N.

Hoping to avoid motion practice, DC waited for a formal response.  Toberoff served it in 30 days, objecting to the six requests on numerosity grounds and providing no substantive responses.[2]  Toberoff also asserted boilerplate objections, including a refusal to respond on grounds of defendants' pending SLAPP motion, *see infra* Appendix 1 at 1 ¶ 3—which Judge Wright shortly thereafter denied, Docket No. 337.  After receiving Toberoff's response, DC sent him a letter asking him to answer the same interrogatories the other Toberoff defendants had answered. *Id.* Ex. P.  Toberoff refused, *id.* Ex. Q at 269-70, and this motion followed.

## B.    DC's Six Additional Interrogatories Comport With The Rules.

1. Rule 33 imposes a default limit of 25 interrogatories per party.  FED. R. CIV. P. 33(a)(1).  The aim of the rule "is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device."  FED. R. CIV. P. 33, commentary to 1993 Amendments.  Thus, a Court "shall" grant leave to propound additional interrogatories where a party makes a "particularized showing why the additional discovery is necessary." *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999); W. SCHWARZER, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1699 (2011).

Additional discovery should be allowed where the likely benefits outweigh the burdens.  *E.g., Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 2008 WL 2782903, at *2 (N.D. Cal. July 16, 2008).  In assessing this, courts consider the need for additional discovery in light of the "scope and complexity" of

---

[2] Pursuant to Local Rule 37-2, DC has reproduced in Appendix 1 all of the interrogatories at issue and all of Toberoff's objections.

JOINT STIP. RE: DC'S MOT. FOR LEAVE TO SERVE ADDT'L ROGS

the case, *Beckett v. Mellon Investor Servs.*, 2010 U.S. Dist. LEXIS 46208, at *8
(W.D. Wash. Apr. 5, 2010); the relevance of the information sought, *Masters v.
Boston Sci. Corp.*, 2008 U.S. Dist. LEXIS 53597, at *17 (N.D. Cal. June 11, 2008)
(allowing additional interrogatories that "may yield relevant information beyond
that which has already been provided"); and the impact on the efficiency of the
discovery process, *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 U.S. Dist.
LEXIS 84027, at *6-7 (E.D. Cal. Nov. 8, 2006). Courts recognize as a general rule
that "[n]umerous interrogatories" are appropriate "where a case presents complex
issues, technical matters or where significant amounts of money are at stake."
*Walters v. Generation Fin. Mortg. LLC*, 2011 U.S. Dist. LEXIS 43348, at *3 (D.
Conn. Apr. 21, 2011) (citing 7 MOORE'S FED. PRAC. § 33.30[3][b] (3d ed. 2011)).

    2. All of these factors are present here. Each of the six interrogatories will
yield relevant information about important issues in the case—*i.e.*, whether
Toberoff followed through on the Toberoff Defendants' (DC submits, false)
promise actively to market their rights. This discovery is narrowly tailored to seek
facts uniquely within Toberoff's personal knowledge; his companies answered the
same interrogatories; and there is no undue burden in asking him to do the same.
Indeed, if one takes the contracts his companies signed at face value, it was their
obligation to market the heirs' rights,[3] and they abjectly failed to do so.[4]

    DC is entitled to know one way or the other whether Toberoff himself
engaged in marketing efforts separate and apart from his companies. If the one
meeting with Paramount and one meeting with Fox (both of which took place *nine
years* after he induced the heirs to do business with him) are the only efforts in
which he engaged, that will be important proof that he misled the heirs.

---

[3] *E.g.*, Docket No. 305-56 ¶ 1 (agreement between Siegel heirs and IP
Worldwide for the purpose of "arrang[ing] and negotiat[ing] the sale, lease, license
and all other dispositions or exploitations" of the heirs' purported Superman rights).
[4] *E.g.*, Seto Decl. Ex. I at 232 (IP Worldwide's Response to Request No. 4).

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

Propounding additional interrogatories on Toberoff is the most efficient way to obtain this information.  Toberoff's answers to these six questions will help focus his deposition, those of his companies, and those of third parties.  *E.g.*, *Life Music, Inc. v. Broad. Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966) ("The point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow the issues in the case.").  Efficiency is especially important here given the Toberoff Defendants' (improper) assertion that all four of them must be deposed once in one seven-hour deposition.  *See* Seto Decl. Ex. G.

Finally, Toberoff's claim that DC's six interrogatories are barred by Rule 26(b)(2), *see* Seto Decl. Ex. O at 258, is without merit.  The interrogatories are not "duplicative," FED. R. CIV. P. 26(b)(2)(C)(i), because no discovery was directed at Toberoff on this topic in the *Siegel* case, *id.* 26(b)(2)(C)(ii), and DC's first set of interrogatories to Toberoff *in* this case sought information about the identity of the author of the Toberoff Timeline and investigations into the Timeline and its author, *see* Docket No. 207-6 at 49-59.  In short, DC's interrogatories come nowhere close to the sorts of extra interrogatories that courts forbid.[5]

## C.    None Of Toberoff's Boilerplate Objections Has Merit

Toberoff also asserts boilerplate objections that, under the law, amount to no objection at all.  In the few instances where he makes a specific argument why the request is improper, his objections fail on the merits.

1. Discovery Stay.  Toberoff objects to the interrogatories on the ground that they are relevant only to DC's state-law claims, and "his pending anti-SLAPP

---

[5] *E.g. Duncan v. Paragon Publ'g, Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001) (denying a request to serve 99 interrogatories that "resemble[d] a deposition outline rather than a set of interrogatories"); *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (denying request to propound 50 additional interrogatories where there was no explanation of need other than that the defendant failed to answer the first set); *Frost v. Williams*, 46 F.R.D. 484, 485 (D. Md. 1969) (finding that defendant's service of over 200 interrogatories on plaintiff in an ordinary rear-end automobile collision damage suit was oppressive).

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1    motion should have stayed discovery regarding these state claims." Seto Decl. Ex.

2    O at 258. This Court and Judge Wright rejected this objection in rulings last year,

3    Docket Nos. 117; 95 at 56-57; DC showed in briefing these issues that its discovery

4    related to both its *federal* and *state-law* claims, and SLAPP does not apply to the

5    former, *e.g.*, Docket No. 110 at 4-9; and that, under California law, discovery can

6    be permitted even when a SLAPP motion is filed, *e.g.*, *id.* at 7-8.

7         Judge Wright, in any event, denied defendants' SLAPP motion. He held that

8    the "gravamen of [DC's] claim" was a business tort and rejected defendants'

9    attempt to "bootstrap" Toberoff's alleged work as a lawyer into the compass of

10   DC's claim. Docket No. 337 at 2-3. As examples, Judge Wright held:

11   • ***Fourth Claim***: "By inducing the Shusters to sign the Pacific Pictures
         Agreements, which purported to assign Toberoff the same rights they
12       already assured DC by the 1992 agreement, Plaintiffs argue that Toberoff
         interfered with DC's rights under the 1992 Agreement. This makes sense,
13       as the Pacific Pictures Agreements essentially gut the 1992 Agreement,
         purporting to assign to Toberoff those rights which were already assigned
14       to DC Comics." *Id.* at 3.

15   • ***Fifth Claim***: "Plaintiffs have established a long-lasting economic
16       relationship with the Siegels, and allege that Toberoff's unprotected
         conduct interfered with this relationship. Under the facts before the
17       Court, Defendants have simply not met their burden of demonstrating that
         this claim arises from protected activity." *Id.* at 4 (citation omitted).
18

19        In response to this ruling, defendants not only withdrew their pending Rule

20   12 motion, but represented to the Court that they "are not currently seeking a stay

21   of discovery in this case." Docket No. 344 ¶ 1. Nor are they entitled to such a stay.

22   Discovery must proceed on DC's *federal* claims even though defendants have

23   appealed Judge Wright's SLAPP order on their state-law claims, *see Hilton v.*

24   *Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010), and discovery on DC's *state-*

25   *law* claims is also permitted pending defendants' SLAPP appeal, *see Schering*

26   *Corp. v. First DataBank, Inc.*, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007).

27        2. <u>Privilege</u>. Toberoff objects to the interrogatories, asserting attorney-client

28   privilege, joint-interest privilege, attorney-work-product doctrine, "or any other

- 8 -                              JOINT STIP. RE: DC'S MOT. FOR LEAVE
                                   TO SERVE ADDT'L ROGS

privileges," but provides no basis for doing so.  Seto Decl. Ex. O at 258-59.  A "blanket claim of privilege is simply not sufficient," and "objections should be plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable."  *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections to interrogatories inadequate where party "never identified, with any specificity, the interrogatories to which the claim of privilege pertained").  When DC propounded the same interrogatories on Toberoff's companies, they gave substantive answers, even though they asserted the same privileges.  *E.g.*, Seto Decl. Ex. H at 220, 222.  DC sought clarification what information, if any, was withheld based on the asserted privilege.  *Id.* Ex. L at 251.  Toberoff's companies stated "no responsive information concerning efforts to market purported rights to third parties or communications with potential third-party investors was withheld…."  *Id.* Ex. M at 253.  Defendants' willingness to respond to such discovery confirms what is obvious:  Toberoff's marketing discussions with third parties are not protected.[6]

     3. <u>Protected Information</u>.  Toberoff's trade secret and "other confidential or proprietary information" objections are equally unsubstantiated.  *E.g.*, Seto Decl. Ex. O at 259.  Conclusory claims of confidentiality are inadequate, and the party resisting discovery must show the information is confidential and its disclosure would cause harm.  *E.g.*, *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point*

---

[6] *E.g.*, 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.14 (Bender 2d ed. 2011) ("communications from third parties, other than the client's representatives, to the attorney are not privileged"); *Atty. Gen. of U.S. v. Covington & Burling*, 430 F. Supp. 1117, 1121-22 (D.D.C. 1977) (privilege did not apply to communications concerning counsel's "contract negotiations" on behalf of client); *U.S. v. Davis*, 131 F.R.D. 391, 401-02 (S.D.N.Y.1990) (for communications to be privileged, an attorney "must be functioning as an attorney"; rejecting privilege claim over documents whose "primary purpose" was "business negotiations"); *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986) (counsel's "discussion concerning business negotiations, is not privileged"); *J.P. Foley & Co., Inc. v. Vanderbilt*, 65 F.R.D. 523, 527 (S.D.N.Y. 1974) ("where the attorney acts as a negotiator or business agent for his client, the confidential communications between them are not privileged).

JOINT STIP. RE: DC'S MOT. FOR LEAVE TO SERVE ADDT'L ROGS

*Events, LP*, 256 F.R.D. 678, 683 (C.D. Cal. 2009); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 327 (10th Cir. 1981).  No showing is made here.

4.  <u>Information in DC's Possession.</u>  Toberoff objects "to the extent that [the interrogatories] seek information and/or documents already in the possession of the propounding party…."  Seto Decl. Ex. O at 259.  This is not a valid objection.  DC does not know to whom Toberoff marketed the heirs' rights.

5.  <u>Vague or Indefinite.</u>  Toberoff objects to the interrogatories "to the extent that they are vague or indefinite with respect to the information sought, or are overbroad and unduly burdensome."  *Id.* Ex. O at 259.  Such "boilerplate objections … are improper…."  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).  Toberoff makes the same objection to each interrogatory without providing any explanation of applicability to the underlying request.  Such objections provide no basis on which to judge their merits and must be overruled.  *E.g., Walker*, 186 F.R.D. at 587; *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

6.  <u>Relevance.</u>  Toberoff's unexplained relevance objection is addressed above, *supra* at 3-4, 6-7, and none of the other Toberoff Defendants stood on this objection, nor could they fairly.  "Relevance for purposes of discovery is defined very broadly."  *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998); *see also* FED. R. CIV. P. 26(b).  DC claims Toberoff misrepresented his intentions to the heirs by assuring them of his efforts to secure lucrative agreements with investors to exploit their alleged rights.  *E.g.*, Docket No. 49 ¶¶ 105-89.  Proof about his actual efforts is directly relevant to these claims—as well as to his credibility generally.

**D.    Conclusion**

DC's motion should be granted, and Toberoff should be compelled to answer Interrogatories 26-31 by no later than 21 days from a ruling on this motion.

IV.   **DEFENDANT'S STATEMENT OF ISSUES IN DISPUTE**

A.   **DC Has Not Shown "Good Cause" to Serve Additional Interrogatories**

Pursuant to F.R.C.P. 33(a)(1), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Thus, absent leave of the court, DC was limited to twenty-five interrogatories. DC made a clear strategic decision at the outset of discovery to use all twenty-five of its available interrogatories to Mr. Toberoff on a single subject – namely the theft of documents from Mr. Toberoff's law offices and Mr. Toberoff's response to the theft. *See* Declaration of Cassandra Seto ("Seto Decl."), Ex. B. Such interrogatories were answered fully and in detail by Mr. Toberoff, and DC's motion to compel further responses was denied. *See* Docket No. 262.

DC did not bother to serve any interrogatories as to Mr. Toberoff's potential defenses in the case, or as to the truth (or falsity) of the allegations in DC's complaint, or as to evidentiary support for any factual claims. Seto Decl., Ex. B.

After that, DC unilaterally served an additional six interrogatories, without leave of Court. *Id.*, Ex. L. DC was obviously aware of the rules governing the number of interrogatories, judged that gathering information about the "stolen documents" was the best use of their interrogatories, drafted its interrogatories accordingly, and then unilaterally chose to serve additional interrogatories. There is no basis to compel Mr. Toberoff to respond to DC's additional interrogatories under these circumstances.

Nor does "good cause" exist to allow these additional interrogatories.

First, DC already has taken discover regarding the information it seeks and/or can readily obtain such information. DC acknowledges that it already has document discovery on this issue (*supra* at 3-4), and it can obviously ask the same questions during a deposition of Mr. Toberoff. DC had ample opportunity to take

1   Mr. Toberoff's deposition, but it took Mr. Toberoff's scheduled deposition off-

2   calendar twice, in both August and September 2011, and has not rescheduled it in

3   the subsequent months.  *See* Declaration of Keith Adams, Exs. A at 3, B.  There is

4   no need to grant DC leave to propound interrogatories to get information it can

5   readily obtain at deposition.  *See E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*,

6   2006 U.S. Dist. LEXIS 84027, at *6-7 (E.D. Cal. Nov. 8, 2006) (denying motion as

7   to interrogatories where the party "will have the opportunity to depose these

8   sources" and had already gone over the twenty-five interrogatory limit).

9        Second, DC's entire motion is a blatant pretext to obtain business

10   information about the Defendants' discussions regarding the potential sale of

11   reverted Superman rights to third parties, not issues relevant to DC's actual claims.

12   DC's claims against Mr. Toberoff are based on allegations that he (a) in 2002

13   somehow induced the Siegels to break off moribund discussions about a sale of

14   their termination interest to DC (see *Siegel v. Warner Bros. Entertainment Inc.,* 542

15   F. Supp. 2d 1098, 1136-1139 (C.D. Cal. 2008)), and (b) in 2001-2003 caused Mark

16   Warren Peary to serve and file termination notices on behalf of the Estate of Joseph

17   Shuster.  *See* Docket No. 49 (First Amended Complaint), ¶¶ 174-186.   DC already

18   has information regarding Mr. Toberoff's actions during the relevant period from

19   2001-2004, from discovery in both this case and in the related *Siegel* case.

20   Moreover, IP Worldwide, which acted as the Siegels' marketing agent during this

21   period, and Pacific Pictures Corporation, which contracted with the Shusters,

22   answered DC's interrogatories as to their activities during this period.  *See* Seto

23   Decl., Ex, H; [7] Ex. I at 230-232.

24        It is obvious that DC seeks leave to propound additional interrogatories not to

25   secure information about the relevant 2001-2004 period, but to determine

26

27   _____

    [7] Pacific Pictures Corporation took no action to "market" the Estate of Joseph
28   Shuster's rights to third parties, as such rights would not be sellable to anyone other
    than DC until the termination became effective in 2013.  17 U.S.C. § 304(c)(6)(D).

1  competing current suitors for Defendants' Superman rights, information not

2  relevant to any of DC's claims.

3       As shown by the cases cited by DC, courts routinely deny motions for leave

4  to serve additional interrogatories where, as here, they are not relevant to the claims

5  in the case or where they are duplicative. *See Archer Daniels Midland Co. v. Aon*

6  *Risk Servs., Inc.*, 187 F.R.D. 578, 587 (D. Minn. 1999) (denying motion for leave to

7  propound additional interrogatories as the motion was "bereft of any showing that

8  specific Interrogatories are required if Aon is to properly defend itself against

9  ADM's claims"); *E. & J. Gallo Winery*, 2006 U.S. Dist. LEXIS 84027, at *6-7

10  (denying motion as to interrogatories where "much of the information sought in the

11  proposed interrogatories has been asked in prior interrogatories or requests for

12  documents"); *Siegel v. Warner Bros. Entertainment Inc.*, Case No. 04-CV-08400

13  ODW (RZx), Docket No. 158 (denying motion to compel answers to interrogatories

14  on the basis that they exceeded the 25-interrogatory limit).

15       **B.    Defendants' Objections**

16       To distract from the real issue and prejudice the Court, DC mounts an

17  entirely unnecessary attack on Mr. Toberoff's objections.

18       Anti-SLAPP Motion:  DC spends two pages attacking the straw man of Mr.

19  Toberoff's objection based on his then-pending anti-SLAPP motion. *Supra* at 7-8.

20  That motion was denied in late October 2011 (Docket No. 333), well after the

21  objections were served on September 6, 2011 (Seto Decl., Ex. O), and the Court's

22  ruling is currently on appeal to the Ninth Circuit.  Docket No. 339.

23       Other Objections:  DC also asks the Court to issue an advisory ruling

24  overruling Mr. Toberoff's other objections to DC's interrogatories. *Supra* at 8-10.

25  As even DC admits, when "DC propounded the same interrogatories on Mr.

26  Toberoff's companies, they gave substantive answers" (*supra* at 9), despite making

27  the same objections DC attacks here. *See* Seto Decl., Exs. H-J; *compare, e.g.,* Seto

28  Decl., Ex. I at 228-229 (IP Worldwide responses making "protected information,"

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1  "information already in DC's possession," "vague or indefinite" and "relevance"

2  objections) *with* Ex. O at 258-260 (Mr. Toberoff's response, making the same

3  objections).  Thus, even if the Court were inclined to grant DC leave to serve

4  additional interrogatories, and there is no good cause to do so, DC's motion seeks

5  an advisory ruling in a vacuum as to such objections, before Mr. Toberoff has

6  responded substantively.  The more logical course is for DC to bring a motion to

7  compel if it is dissatisfied with any such responses.

8       **C.**    **Conclusion**

9       DC's motion for leave to serve additional interrogatories should be denied.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1
2    Dated:     January 3, 2012          Respectfully Submitted,
3                                        O'MELVENY & MYERS LLP
4
5                                        By: /s/ Daniel M. Petrocelli
                                             Daniel M. Petrocelli
6                                            Attorneys for Plaintiff DC Comics
7    Dated:     January 3, 2012          Respectfully Submitted,
8                                        TOBEROFF & ASSOCIATES, P.C.
9
10                                       By: /s/ Keith Adams
                                             Keith Adams
11                                           Attorneys for Defendants Laura
                                             Siegel Larson, Mark Warren Peary,
12                                           and Jean Adele Peavy
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 15 -                                        JOINT STIP. RE: DC'S MOT. FOR LEAVE
                                              TO SERVE ADDT'L ROGS

1

## APPENDIX 1

2

**Toberoff Objections and Responses to Interrogatories 26-31**

3

    **A.  General Objections**

4

    1.     Toberoff objects to the entire set of Interrogatories on each of the

5 following grounds, and incorporates by reference each of the following objections

6 into his response to each individual interrogatory within it:

7

    2.     Toberoff objects to the Interrogatories as they exceed the scope of

8 Rules 26 and 33 of the Federal Rules of Civil Procedure or the Local Rules of the

9 United States District Court for the Central District of California.  Toberoff further

10 objects to the Interrogatories as improperly exceeding the permitted number of 25

11 total interrogatories under Federal Rule 33(a)(1).  On December 10, 2010, Plaintiff

12 served 25 interrogatories on Toberoff, to which Toberoff served responses on

13 January 24, 2011.  Plaintiff's current set of interrogatories includes six further

14 interrogatories.  Since service of more than 25 interrogatories is not permitted, the

15 entire set of interrogatories is improper.

16

    3.     Toberoff objects to each individual Interrogatory to the extent it is

17 relevant only to the Fourth through Sixth state law claims for relief in DC's First

18 Amended Complaint ("FAC").  Toberoff contends that his pending anti-SLAPP

19 motion should have stayed discovery regarding these state law claims.  *See* Cal.

20 Code Civ. Proc. § 425.16(g); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

21 *Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J., concurring); *Batzel v. Smith*, 333

22 F.3d 1018, 1024 (9th Cir. 2003); *Godin v. Schencks*, 2010 U.S. App. LEXIS 25980

23 (1st Cir. Dec. 22, 2010).

24

    4.     Toberoff objects to the Interrogatories to the extent that they purport to

25 demand information protected from disclosure by the attorney-client privilege, joint

26 interest privilege, attorney work product doctrine or any other privileges or

27 immunities provided by the rules of this Court, statute or agreement.  Inadvertent

28 disclosure of any information subject to any applicable privilege or doctrine is not

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1    intended to be and shall not operate as a waiver of any such privilege or doctrine, in

2    whole or in part; nor is any such inadvertent disclosure intended to be, nor shall it

3    constitute, a waiver of the right to object to any use of such information.

4         5.    Toberoff objects to the Interrogatories to the extent that they seek

5    information comprising or reflecting any trade secret or other confidential or

6    proprietary information of Toberoff or any other person or entity.

7         6.    Toberoff objects to the Interrogatories to the extent that they seek

8    information which is protected from disclosure by court order, or any privacy or

9    similar rights of any person or entity.

10        7.    Toberoff objects to the Interrogatories to the extent that they seek

11   information and/or documents already in the possession of the propounding party

12   on the grounds such interrogatories are unnecessary and unduly oppressive and

13   burdensome.

14        8.    Toberoff objects generally to the definitions of the terms "YOU" and

15   "YOUR" as vague and ambiguous, overbroad and unduly burdensome.  Toberoff

16   will construe these terms to refer to Toberoff.

17        9.    Toberoff objects to the Interrogatories to the extent that they are vague

18   or indefinite with respect to the information sought, or are overbroad and unduly

19   burdensome.

20        10.   Toberoff objects to the Interrogatories to the extent that they seek

21   information which is neither relevant to the subject matter of the pending litigation

22   nor reasonably calculated to lead to the discovery of admissible evidence.

23        11.   No incidental or implied admissions are intended by Toberoff's

24   responses to the Interrogatories.  The supplying of any fact does not constitute an

25   admission by Toberoff that such fact is relevant or admissible.  The fact that

26   Toberoff has responded to any interrogatory is not intended to be and shall not be

27   construed as a waiver by Toberoff of all or any part of any objection to any

28   interrogatory.  Toberoff reserves until the time of trial all objections as the

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1    relevance or admissibility of any facts provided in his answers to the

2    Interrogatories.

3         12.    The general and specific objections set forth herein are based on

4    information now available to Toberoff and Toberoff reserves the right to revise,

5    correct, add, clarify or supplement the general and specific objections and responses

6    set forth herein.

7         **B.  <u>Responses to Interrogatories</u>**

8         Subject to, and without waiving the General Objections and qualifications

9    above, Toberoff responds to each individual Interrogatory as follows:

10   <u>**Interrogatory No. 26:**</u>

11        DESCRIBE in detail all efforts YOU have made to MARKET any rights

12   involving SUPERMAN and/or SUPERBOY.

13   <u>**Response to Interrogatory No. 26:**</u>

14        As set forth in General Objection No. 1, because the entire set of

15   interrogatories is improper as exceeding the limit of 25 total interrogatories under

16   Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

17   also objects to this interrogatory on the grounds that it is overbroad, burdensome

18   and oppressive.  Toberoff further objects to this interrogatory on the grounds that it

19   is not reasonably limited in scope.  Toberoff also objects to this interrogatory to the

20   extent that it seeks information that is not reasonably calculated to lead to the

21   discovery of relevant and admissible evidence.  Toberoff additionally objects to this

22   interrogatory to the extent that it seeks communications or items protected by the

23   attorney-client privilege, the attorney work product doctrine and any other privilege

24   or immunity available under law or arising from contractual obligation.

25   <u>**Interrogatory No. 27:**</u>

26        IDENTIFY any PERSONS with whom YOU have COMMUNICATED in

27   connection with efforts to MARKET any rights involving SUPERMAN and/or

28   SUPERBOY.

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

**Response to Interrogatory No. 27:**

As set forth in General Objection No. 1, because the entire set of
interrogatories is improper as exceeding the limit of 25 total interrogatories under
Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff
objects to this interrogatory on the grounds that it is overbroad, burdensome and
oppressive.  Toberoff further objects to this interrogatory on the grounds that it is
not reasonably limited in scope.  Toberoff objects to this interrogatory to the extent
that it seeks information that is not reasonably calculated to lead to the discovery of
relevant and admissible evidence.  Toberoff additionally objects to this
interrogatory to the extent that it seeks communications or items protected by the
attorney-client privilege, the attorney work product doctrine and any other privilege
or immunity available under law or arising from contractual obligation.

**Interrogatory No. 28:**

DESCRIBE in detail when any efforts YOU have made to MARKET any
rights involving SUPERMAN and/or SUPERBOY took place.

**Response to Interrogatory No. 28:**

As set forth in General Objection No. 1, because the entire set of
interrogatories is improper as exceeding the limit of 25 total interrogatories under
Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff
objects to this interrogatory on the grounds that it is overbroad, burdensome and
oppressive.  Toberoff further objects to this interrogatory on the grounds that it is
not reasonably limited in scope.  Toberoff objects to this interrogatory to the extent
that it seeks information that is not reasonably calculated to lead to the discovery of
relevant and admissible evidence.  Toberoff additionally objects to this
interrogatory to the extent that it seeks communications or items protected by the
attorney-client privilege, the attorney work product doctrine and any other privilege
or immunity available under law or arising from contractual obligation.

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

1    **Interrogatory No. 29:**

2        DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

3    potential INVESTORS concerning rights involving SUPERMAN and/or

4    SUPERBOY.

5    **Response to Interrogatory No. 29:**

6        As set forth in General Objection No. 1, because the entire set of

7    interrogatories is improper as exceeding the limit of 25 total interrogatories under

8    Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

9    objects to this interrogatory on the grounds that it is overbroad, burdensome and

10   oppressive.  Toberoff further objects to this interrogatory on the grounds that it is

11   not reasonably limited in scope.  Toberoff objects to this interrogatory to the extent

12   that it seeks information that is not reasonably calculated to lead to the discovery of

13   relevant and admissible evidence.  Toberoff additionally objects to this

14   interrogatory to the extent that it seeks communications or items protected by the

15   attorney-client privilege, the attorney work product doctrine and any other privilege

16   or immunity available under law or arising from contractual obligation.

17   **Interrogatory No. 30:**

18       IDENTIFY any PERSON with whom YOU have COMMUNICATED

19   concerning actual and/or potential INVESTORS in rights involving SUPERMAN

20   and/or SUPERBOY.

21   **Response to Interrogatory No. 30:**

22       As set forth in General Objection No. 1, because the entire set of

23   interrogatories is improper as exceeding the limit of 25 total interrogatories under

24   Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

25   objects to this interrogatory on the grounds that it is overbroad, burdensome and

26   oppressive.  Toberoff further objects to this interrogatory on the grounds that it is

27   not reasonably limited in scope.  Toberoff objects to this interrogatory to the extent

28   that it seeks information that is not reasonably calculated to lead to the discovery of

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS

relevant and admissible evidence. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.

**Interrogatory No. 31:**

DESCRIBE in detail when YOU have COMMUNICATED with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 31:**

As set forth in General Objection No. 1, because the entire set of interrogatories is improper as exceeding the limit of 25 total interrogatories under Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory. Toberoff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Toberoff further objects to this interrogatory on the grounds that it is not reasonably limited in scope. Toberoff objects to this interrogatory to the extent that it seeks information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. Toberoff additionally objects to this interrogatory to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.

JOINT STIP. RE: DC'S MOT. FOR LEAVE
TO SERVE ADDT'L ROGS