# EXHIBIT D
# Part 2 of 2



LE 00152

DCC 001421 D



00153



DC 00154



LSL 00155
DCC 00142183

**EXHIBIT D**
**114**



SUPERMAN DC
COMIC MAGAZINES:

DR. LAURETTA BENDER
Associate Professor of Psychiatry
School of Medicine, New York University

PEARL S. BUCK
Author, The Good Earth, Dragon Seed,
etc. Winner, 1938 Nobel Prize.
President, East and West Association

JOSETTE FRANK
Staff Advisor on Children's Reading
Child Study Association of America

JESS B. LAIR
Educational Director
United Parents Association, etc.

DR. C. BOWIE MILLICAN
Department of English Literature
New York University

DR. W. D. JONES
Professor of Education and
Director of Curriculum Study
University of Pittsburgh

DR. ROBERT THORNDIKE
Department of Educational Psychology,
Teachers College, Columbia University

Com. GENE TUNNEY   U.S.N.R.
Former World's Heavyweight
Boxing Champion
Member, Executive Board
New York Boy Scout Foundation



The following magazines all bear this
trademark as your guarantee of
the best in comic reading

ACTION COMICS
ADVENTURE COMICS
ALL FUNNY COMICS
BATMAN
BOY COMMANDOS
BUZZY
DETECTIVE COMICS
LEADING COMICS
MORE FUN COMICS
REAL SCREEN COMICS
STAR SPANGLED COMICS
SUPERMAN
WORLD'S FINEST COMICS

is for

**BEAVER**
WHO CHEWS TREES
AND BARK
BUT WHEN HE'S
**REAL** "CHEWSEY"
HE LOOKS FOR
THIS MARK!

A SUPERMAN DC PUBLICATION

— ON THE COVER OF
**BATMAN**
FOR EXAMPLE! 
IT'S YOUR
GUARANTEE
OF THE **BEST**
IN **ANY**
COMIC
MAGAZINE!

EXHIBIT D
115



LSL 00157

DCC 0014218

**EXHIBIT D**
**116**



LSL 00158

DCC 001321

**EXHIBIT D**

**117**



LSB 00159
DCC 00142117



LSL 00160
DCC 0014218

**EXHIBIT D**
**119**



00161





LSL 00163
42191

**EXHIBIT D**
**122**









LSL 00166
DCC 0014219



00167



LSL 00168
DCC 0014219



SL 00169

**EXHIBIT D**
**128**



00170

DCC 00170 8



00171

https://mail.google.com/mail/?ui=2&ik=03edd0e16c&view=pt&q=pa.



Marc Toberoff <marc.toberoff@gmail.com>

## Attachments for Paramount - Part 1/2

Ferleger, Daniel - Paramount <Daniel_Ferleger@paramount.com>                    Fri, Apr 30, 2010 at 1:51 PM
To: Marc Toberoff <mtoberoff@ipwla.com>, "Martin, Scott - Paramount" <Scott_Martin@paramount.com>, "Moore, Rob - Paramount" <rsm@paramount.com>, "Cosgrove, Rona - Paramount" <Rona_Cosgrove@paramount.com>

   Mark,

   I received the attachments to the second e-mail (thank you) but did not have anything attached to the first one.  Could you
   please forward to me and perhaps the other people on the list are missing it too.

   Daniel

   From: marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] On Behalf Of Marc Toberoff
   Sent: Thursday, April 29, 2010 6:54 PM
   To: Ferleger, Daniel - Paramount; Martin, Scott - Paramount; Moore, Rob - Paramount; Cosgrove, Rona - Paramount
   Subject: Attachments for Paramount - Part 1/2

   [Quoted text hidden]

   This email (including any attachments) is for its intended-recipient's use only.
   This email may contain information that is confidential or privileged.
   If you received this email in error, please immediately advise the sender by
   replying to this email and then delete this message from your system.

LSL 00172

**EXHIBIT D**
**131**

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  Keith G. Adams (CA State Bar No. 240497)
   TOBEROFF & ASSOCIATES, P.C.
3  2049 Century Park East, Suite 2720
   Los Angeles, CA 90067
4  Telephone: (310) 246-3333
   Facsimile: (310) 246-3101
5  MToberoff@ipwla.com

6  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON

7
                    UNITED STATES DISTRICT COURT
8
        CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION
9

10 JOANNE SIEGEL, an individual; and     Case No: CV 04-08400 SGL (RZx)
   LAURA SIEGEL LARSON, an
11 individual,                           Hon. Stephen G. Larson, U.S.D.J.

12              Plaintiffs,              **PLAINTIFFS JOANNE SIEGEL
          vs.                           AND LAURA SIEGEL LARSON'S
13                                       NOTICE OF MOTION AND
                                         MOTION FOR
14 WARNER BROS.                          RECONSIDERATION OF THE
   ENTERTAINMENT INC., a                 COURT'S AUGUST 12, 2009
15 corporation; TIME WARNER INC.,        "WORK FOR HIRE" ORDER AS
   a corporation; DC COMICS, a           TO McCLURE NEWSPAPER
16 general partnership; and DOES 1-10,   STRIPS**

17                                       Complaint filed:  October 8, 2004
              Defendants.                Trial Date:  None Set
18
                                         Date:    October 19, 2009
19                                       Time:    10:00 a.m.
                                         Place:   Courtroom 1
20 DC COMICS,

21              Counterclaimant,

22        vs.

23 JOANNE SIEGEL, an individual;
   and LAURA SIEGEL LARSON, an
24 individual,

25
              Counterclaim Defendants.
26

27

28

LSL 00173

**EXHIBIT D**
**132**

1  TO DEFENDANTS WARNER BROS. ENTERTAINMENT INC., DC COMICS,

2  AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that on October 19, 2009, at 10:00 a.m., or as soon

4  thereafter as the matter may be heard, in Courtroom 1 of the above-entitled court,

5  plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") will and hereby do

6  move the Court for an order reconsidering, in part, the Court's August 12, 2009 order

7  ("Order") concerning the "work-for-hire" status of certain *Superman* works.

8  Specifically, Plaintiffs seek reconsideration of that portion of the Court's August 12,

9  2009 Order ("Order") that finds the Superman newspaper strips (the "Strips")

10 released by the McClure News Syndicate ("McClure") were "work-for-hire" on the

11 basis that: (1) summary judgment was inappropriate given the Court's ruling that the

12 Strips were on the "outer edges" (Order at 61:12) or "outer boundaries" (Order at

13 66:18) of the "work for hire" doctrine; (2) the "expense" prong (of the two-part

14 "instance and expense" test for "work for hire" under the 1909 Copyright Act) was

15 never met; (3) defendants are collaterally estopped from re-litigating whether

16 McClure was the "author" of the Strips as "works for hire," as *National Comics Publ.,*

17 *Inc. v. Fawcett Publications, Inc.* ("Nat'l Comics II"), 191 F.2d 594 (2d Cir. 1951)

18 ruled by implication that it was not; (4) it was determined after a full trial in *National*

19 *Comics Publ., Inc. v. Fawcett Publications, Inc.*, 93 F.Supp. 349 (S.D.N.Y. 1950) that

20 Detective, McClure, Siegel and Shuster formed a joint venture regarding the Strips,

21 and as this finding was not reversed in *Nat'l Comics II*, it is binding on defendants;

22 and (5) these facts and the fact that Siegel and Shuster bore significant, if not the

23 greatest, risk of financial loss as the financiers of the Strips' production preclude a

24 finding that the Strips were "works-made-for-hire."

25        Plaintiffs' motion is based on this notice of motion; the accompanying

26 memorandum of points and authorities; all prior pleadings and proceedings in this

27 matter; any matters of which the court may take judicial notice; and all oral and

28 written evidence to be presented at the hearing, if any, on this motion.

LSL 00174

1

**EXHIBIT D**

**133**

1   DATED: October 3, 2009          TOBEROFF & ASSOCIATES, P.C.

2

3                                    By _____

4                                          Marc Toberoff

5                                    Attorneys for Plaintiffs JOANNE SIEGEL
                                     and LAURA SIEGEL LARSON
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    LSL 00175

                                          2

**EXHIBIT D**
**134**

## I.    INTRODUCTION

Plaintiffs seek reconsideration of the part of the Court's August 12, 2009 Order ("Order") that holds that the *Superman* newspaper strips ("Strips") syndicated by the McClure News Syndicate ("McClure") were "works-for-hire" as a matter of law.

## II.    ARGUMENT

### A.    Summary Judgment Is Inappropriate As the Court Found that the Strips Lie on the "Outer Edges" of Work-for-Hire

The Court's Order decided the "work-for-hire" issues in this case on summary judgment. However, the Order fails to address that *Defendants* bear the significant burden of proving by "credible evidence" that the Strips were created at the "instance and expense" of their predecessor.[1] The Order also failed to construe the record evidence in the light most favorable to *Plaintiffs*, and to resolve any doubts or ambiguities in *Plaintiffs*' favor as the non-movants.[2] *Anderson v. Liberty Lobby*, 477 U.S. 242, 261 n.2 (1986); *Celotex v. Catrett*, 477 U.S. 317, 327 (1986) (Rule 56 must be considered "with due regard … for the rights of persons … to have those claims and defenses tried to a jury…."). The Court candidly concludes that "in sum this case … lies on the outer boundaries of what would constitute a work made for hire." Order at 66:18. Plaintiffs respectfully submit that summary judgment in Defendants' favor is improper, for it cannot be that no reasonable juror could find that the Strips were *not* "works made for hire" when the issue, according to the Court, is such a close call.

---

[1] Defendants carry this burden because: (i) "work for hire" is a statutory exception to the termination statute (*see Woods v. Bourne Co.*, 60 F.3d 978, 994 (2d Cir. 1995)); (ii) "work for hire" is an affirmative defense (*see Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 877-79 (9th Cir. 2005)); and (iii) Defendants moved for summary judgment pursuant to F.R.C.P. 56 (*see Celotex*, 477 U.S. at 323–25).

[2] For instance, the Order (64:6-11) gives short shrift to the fact that "McClure took it upon itself to list Siegel and Shuster as the 'author' of the newspaper strips." Instead of viewing this *evidence* of intent in the light most favorable to Plaintiffs, the Order deflects it on the basis that a registration certificate creates a rebuttable presumption of copyright validity. The Order also disregards that Siegel and Shuster have the lion's share of the Strips' profits *viz a viz* Detective. *See Donaldson Pub. Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 642 (2d Cir. 1967) (That "the money arrangement was heavily weighted in [the creator's] favor" "corroborate[s] the conclusion" that the works were not "made-for-hire."). As further examples see Order at 61:22-26, 64:26-65:5 (regarding McClure's alleged control), and 65:8-23 (regarding employment by DC). *See also* Section II.D, *infra*.

LSL 00176

1    By definition, whether a work is "made for hire" is a mixed question of fact
2 and law that turns on the "mutual intent of the parties." *Twentieth Century,* 429 F.3d
3 at 874-75. Accordingly, summary judgment is disfavored because the "work for
4 hire" issue usually entails genuine issues of material fact *barring* summary judgment.
5 *Id.* at 874-75 (reversing summary judgment because of "genuine issues of material
6 fact as to [the parties'] intent on the work-for-hire issue").[3]
7    *Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002) is instructive. It
8 concerned a notice of termination by Joe Simon regarding his co-creation, *Captain
9 America. Id.* at 282. Despite Simon's prior admission in a settlement agreement that
10 *Captain America* was "*work for hire*," the Second Circuit held that Simon's contrary
11 testimony created "a genuine issue of material fact," which "will be up to a jury to
12 determine." *Id.* at 289, 292. Here, conflicting evidence regarding the Strips bars
13 summary judgment in Defendants' favor. *See* n.2, *supra,* and Section II.D, *infra.*

**B.    The "Expense" Prong Was Not Met**

15    The Order all but admits that the expense prong of the test for "work for hire"
16 was not met with respect to the Strips, or, at the very least, weighs heavily against the
17 conclusion that the Strips were "works for hire," because Siegel and Shuster's *sole*
18 compensation was a share of speculative profits.[4] *See* Order at 61:10-12 ("Here,

---

[3] *See also Dolman v. Agee,* 157 F.3d 708, 712 (9th Cir. 1998) (in light of issues of fact, previous summary judgment ruling on work-for-hire issue reconsidered and tried at trial); *Self-Realization Fellowship Church v. Ananda Church,* 206 F.3d 1322, 1330 (9th Cir. 2000) (summary judgment is inappropriate for a work-for-hire determination under the 1909 Act); *May v. Morganelli-Heumann & Assoc.,* 618 F.2d 1363, 1368 (9th Cir.1980) (reversing summary judgment due to "questions of fact as to the parties' intent"); 3 *Nimmer* 12.10[A] ("[Q]uestions … as to the parties' intent … are for the trier of fact.").

[4] The fact that Siegel and Shuster were paid solely in royalties weighs heavily against a finding of work-for-hire. *See* 2 *Patry on Copyright* §5:61 ("Where payment is solely by royalties, this fact weighs against an employment relationship."); *Twentieth Century,* 429 F.3d at 881 (holding that "there is little doubt that the book was authored at [Publisher's] expense" because the publisher "took on all the financial risk of the book's success, agreeing to pay … a lump sum for writing the book, instead of negotiating a royalty deal"); *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Cont. Dance, Inc.,* 380 F.3d 624, 635 (2d Cir. 2004); *Playboy Ent. v. Dumas,* 53 F.3d 549, 535 (2d Cir.1995) ("royalty" payments "generally weigh against finding a work-for-hire relationship"); *Siegel v. Time-Warner, Inc.,* 496 F.Supp.2d 1111, 1138 (C.D. Cal. 2007) ("In contrast, where the creator of a work receives a royalty as payment, that method of payment generally weighs against finding a work-for-hire relationship.").

LSL 00177

2

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

1  Siegel and Shuster were paid only royalties.  Such a financial arrangement ... places

2  this case on the outer edges of the work for hire doctrine.").[5]  However, after a

3  discussion of the "instance" prong, the Order finds, *without explanation*, "that the

4  expense prong is met, and that the newspaper strips were works made for hire"

5  (Order at 65:8-9), even though its prior analysis indicates that the expense prong was

6  not met and that this weighs heavily in Plaintiffs' favor.

7      The Order's sole basis for not adhering to the abundant case law enforcing the

8  "expense" prong is *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213 (2d Cir. 1972),

9  an old, cursory four-page decision that is factually distinguishable and conceptually

10  flawed.  Order at 62-64.  Moreover, in *Picture Music*, the appellate court affirmed

11  "the findings of the trial court" after a full trial on the merits, not on summary

12  judgment, where far greater evidentiary burdens apply.  *Id.* at 1215.

13      The *Picture Music* facts more closely approximate traditional employment than

14  the facts relevant to the Strips' creation.  While there may be tri-party similarity, the

15  cases significantly diverge as to the *creation* of the respective works – the touchstone

16  of "work-for-hire" analysis.  *See Twentieth Century*, 429 F.3d at 879.  In *Picture*

17  *Music*, Disney, the rightsholder of a musical film score, and Irving Berlin Inc., the

18  score's composer, decided to adapt the score into a song, and employed Ann Ronell

19  to assist in this narrow, controlled task in collaboration with a Berlin employee.  *Id.*

20  at 1214-17.  Ronell had little artistic input,[6] and for 27 years did not claim co-

21  ownership.  *Id.*

22      The facts here are entirely different.  Siegel and Shuster were the driving force

23  behind exploiting *Superman* as newspaper strips, and the driving force in the Strips'

24  artistic creation.  *See* Plaintiffs' Opposition Brief on Additional Issues (Docket Entry

25

---

26  [5] *See also* Order at 59:14-17 ("Rather than being paid a salary or sum certain, the artists were paid only a percentage of any 'net proceeds' ... that is, a royalty payment.... [T]his

27  manner of payment tends to rebut the notion that the newspaper strips were made for hire.").

28  [6] Indeed, the lower court ruled that Ronell's contributions were so slight they likely would not constitute authorship.  *Picture Music, Inc. v. Bourne, Inc.*, 314 F.Supp. 640, 647 (S.D.N.Y. 1970) (the copyrightability of Ronell's "additions" are "shrouded in doubt."SL 00178

3

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

1  # 349) at 16:23-17:27. Detective and McClure had only a minimal degree of

2  oversight, to the continual frustration of Detective. *Id*. at 17:11-14. Siegel and

3  Shuster did not make marginal contributions; they created the Strips in their entirety.

4  Siegel and Shuster did not lie silent for 27 years; they consistently protested and soon

5  took legal action, in 1947, regarding *Superman* magazines and the Strips.

6       *Picture Music* is also flawed in that it failed to apply the "instance and

7  expense" test intelligibly. It improperly based its decision on a surface analysis of

8  just the "instance" factor and whether Disney/Berlin were "'motivating factors' in the

9  composition of the new song." *Id*. at 1217.[7] Unsurprisingly, the perfunctory *Picture*

10  *Music* decision has been roundly criticized by leading copyright authorities. *See* 3

11  *Nimmer on Copyright* § 9.03[D] at 9-28.2-28.3 ("[*Picture Music*] appears to this

12  writer to be wrong both on principle and under the rule of the early cases and

13  received only limited recognition by other courts.").[8]

14

15      **C.**    **The Second Circuit Impliedly Held That the Newspaper Strips Were Not "Work for Hire" Owned by McClure**

16       The Order relies in part on *National Comics Publ., Inc. v. Fawcett*

17  *Publications, Inc.* ("*Nat'l Comics II*"), 191 F.2d 594 (2d Cir. 1951), holding that

18  "Defendants are bound by that judgment." Order at 56:5-6. DC's predecessor,

19  National, and McClure had brought suit against Fawcett alleging that *Captain Marvel*

20  infringed the *Superman* copyrights. *Id*. at 597-98. Fawcett's main defense was that

21  the Strips had been injected into the public domain via publication with improper

22  notices in McClure's name. *Id*. at 598. Fawcett contended "that McClure was

23  neither the author, nor the proprietor … but that it was a mere licensee" of the Strips,

24

---

25  [7] *Picture Music* does not apply the "instance and expense" test *per se* and virtually ignores the "expense" prong. It simply mentions in passing that the absence of a fixed salary is not

26  determinative (citing *Brattleboro Publ. Co. v. Winmill Publ. Corp.*, 369 F.2d 565 (2d Cir 1966), which did not concern a profit participation or contingent compensation). *Id*. at 1217.

27  [8] "*Picture Music* relied upon two prior decisions, *i.e.*, *Brattleboro Publ'g Co. v. Winmill*

28  *Publ'g Corp.*, 369 F.2d 565 (2d Cir. 1966), and *Yardley v. Houghton Mifflin Co.*, 108 F.2d 28 (2d Cir. 1939). Neither *Brattleboro* nor *Yardley* support [its] conclusion; indeed, they point to a contrary result." 3 *Nimmer* § 9.03[D] at 9-28.3, n.98.

LSL 00179

4

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

because under the 1909 Act copyright was secured through publication in the name of the "author or proprietor" of a work. *National Comics Publ., Inc. v. Fawcett Publications, Inc.* ("*Nat'l Comics I*"), 93 F.Supp. 349, 357-58 (S.D.N.Y. 1950). *See also Nat'l Comics II*, 191 F.2d at 599 (citing 17 U.S.C. §§ 9-10 (1947)). National also alleged that McClure was a mere licensee, so as not to be bound by McClure's omissions. *Nat'l Comics I*, 93 F.Supp. at 357.

These defenses placed at issue whether McClure was the "author or proprietor" of the Strips, and by extension *whether the Strips were a "work for hire" for McClure.*[9] *Nat'l Comics II*, 191 F.2d at 599. The Second Circuit clearly held that "'McClure' was the 'proprietor' of the copyrights" in the Strips, ***not the author***. *Nat'l Comics II*, 191 F.2d at 599 ("Section 9 declares that it is the 'author or proprietor of any work' who is entitled to its copyright…. Unless therefore 'McClure' was the proprietor of the 'strips' the purpose of the parties to copyright them was defeated."). Under the 1909 Act, the "author" of a work was either the individual author or the "employer in the case of works made for hire." *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 743-744 (1989) (citing 17 U.S.C. § 26). ***In contrast, the "proprietor" of a work was an "assign" of the rights in the work.*** *Public Ledger v. N.Y. Times*, 275 F. 562, 563-64 (S.D.N.Y. 1921) (Hand, L.). *See Egner v. E. C. Schirmer Music Co.,* 139 F.2d 398, 399 (1st Cir. 1943) ("Proprietor means the same as 'assigns.'") (citing *Mifflin v. R. H. White*, 190 U.S. 260 (1902)); *Jacobs v. Robitaille*, 406 F.Supp. 1145, 1150 (D.N.H. 1976) (refers to "proprietor or assign" as synonyms); *Morse v. Fields*, 127 F.Supp. 63, 64 (S.D.N.Y. 1954) ("[A] person to whom the right to copyright is assigned is a proprietor.").[10]

---

[9] Defendants are precluded from re-litigating this issue, as they are bound by the judgment in *National Comics II*. (Order at 56:5-6). Collateral estoppel prevents a party "from re-litigating an issue decided against that party in a previous adjudication." *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002). The preclusive effect of the prior litigation extends to issues that "by necessary implication [were] contained in that which [was] explicitly decided." *Id.* (quoting *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986)).

[10] The Order (at 57:3-6) misreads *Nat'l Comics II* in holding that "McClure's position as a 'proprietor' [of the]…'strips' renders it conceivable that the creation of those strips we

5

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

ESL 00180

1    *Nat'l Comics I* was litigated only a decade after the Strips were published,

2    when the evidence was fresh and most witnesses were alive. If it were even a remote

3    possibility that the Strips were "work made for hire" for McClure under the

4    agreements *at issue*, the parties and the Court in *Nat'l Comics II* would have had every

5    incentive to question whether McClure *owned* the Strips as "works for hire," but

6    instead focused solely on whether McClure was a proprietor by assignment.[11]

7    ### D.    McClure's Agreement and Conduct Conflict with the Order

8    The Order indicates that the Strips are *McClure's* "work for hire." Order at

9    57:3-6. Plaintiffs contend that the McClure Agreement created a joint venture, to

10    which Detective contributed the Superman rights, Siegel and Shuster contributed the

11    product at their sole expense, and McClure syndicated the product.[12] *See* Plaintiffs'

12    Opposition and Response (Docket Entry # 365) at 7:14-26. *National Comics I*, 93

13    F.Supp. at 357-58, came to the same conclusion (after a full trial with live witnesses

14

15    _____

16    made at its 'instance and expense' (and thus as a work for hire)." This contradicts the 1909 Act's distinction between "author or proprietor" in the Sections 9 and 10 of the 1909 Act *at issue* in *Nat'l Comics II*, 191 F.2d at 599, and the many cases which, *in focusing on that*

17    *distinction*, clearly hold that the "proprietor" of a copyright under the 1909 Act is an "assign." In fairness, the two cases cited by the Order *do* use the term "proprietor" to refer

18    to "works for hire," but do so in a colloquial sense, see *Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 2002 U.S. Dist. LEXIS 4219, at *67 (S.D.N.Y. Mar. 15, 2002) (analyzing

19    the term "proprietor" in a contract) and *Shapiro, Bernstein & Co. v. Bryan*, 123 F.2d 697, 700 (2d Cir. 1941) (holding that a proprietor of a work "for hire" owns the renewal right),

20    not in analyzing the difference between "author or proprietor" in Sections 9 and 10 of the 1909 Act at issue in *Nat'l Comics II*, 191 F.2d at 599.

21    [11] *Nat'l Comics II* focused on whether McClure had *contractual* title to the Strips, which,

22    like the distinction between "author" and "proprietor" under the 1909 Act, indicates that the Strips were not McClure's "work for hire." *Id.* at 599 ("[U]ntil the contract came to an end,

23    'McClure' was to have the 'title' to the copyrights, for property cannot 'revert' from one person to another unless the person from whom it 'reverts' [*i.e.*, McClure] holds title to it.").

24    It indicated that McClure held the copyright "in trust" for Detective, and that the copyright in the Strips was not originally held by Detective (as "work for hire" or otherwise), which

25    runs contrary to a finding that the Strips were "works made for hire" for McClure or Detective. *Id.* ("[T]he copyrights [in the Strips] were **only in the future** to becomes

26    [Detective's] property.") (emphasis added). Thus, the only remaining possibility is that the Strips were owned at inception by Siegel and Shuster as the "authors" of the Strips, and

27    impliedly assigned to National. *See* Plaintiffs' Objection and Response (Docket Entry # 357) at 6:24-19:6; Plaintiffs' Opposition and Response (Docket Entry # 365) at 5:11-13:11.

28    [12] Contrary to the Order (at 66:9-10), a joint venturer's obligations or restrictions do not preclude the finding of a joint venture.

LSL 00181

6

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

1  contemporaneous with the agreement), which finding was not reversed.[13]

2      However, the Order concludes *on summary judgment* that the McClure

3  Agreement "is reflective of a more traditional employment engagement" (Order at

4  62:2) based, in part, on the *incorrect* assumption that the McClure Agreement "lacks

5  some of the key elements for a joint venture," notably "a sharing of the losses."

6  Order at 62 n.19.  Since Siegel and Shuster agreed to produce the Strips at their

7  expense and *solely* for a share of syndication profits, they would share in any losses

8  of the venture.  As the Court elsewhere noted, Siegel and Shuster bore significant

9  "financial risk." Order at 60:11-19.[14]  It is a long-standing principle of New York

10 law that when joint venturers agree to contribute services, risking the value of their

11 services and loss of their expenses, that constitutes an agreement to share in their

12 venture's losses. *Dundes v. Fuersich*, 791 N.Y.S.2d 893 (N.Y. Sup. Ct. 2004);

13 *Kraemer v. World-Wide Trad. Co.*, 187 N.Y.S. 16, 19 (N.Y. App. Div. 1921)

14 ("[S]ince plaintiff took the risk of receiving nothing for his services and each of the

15 parties was to receive one-half of any commissions … a joint adventure is shown.").

16     As noted by *Nat'l Comics I*, 93 F.Supp. at 357, "there could be no losses" to

17 McClure or Detective.  The reason was that Siegel and Shuster bore the lion's share

18 of the risk.  The significant risk of loss to Siegel and Shuster, along with the *lack* of

19 such risk by McClure and Detective, does not approximate employment and weighs

20 heavily against a determination that the Strips were "works for hire."

21 ///

22
---
[13] *Nat'l Comics II*, 191 F.2d at 599, reversed the lower court *on other grounds* and expressly
23 did not rule as to "whether the contract constituted a 'joint venture,'" as it found McClure to
   be the "proprietor" of the Strips in any event.  An appellate court's reversal of a lower
24 court's judgment affects *only* those issues expressly decided by the appellate court. *See
   Ortega v. O'Connor*, 50 F.3d 778, 780 (9th Cir. 1995) ("A judgment of reversal by an
25 appellate court is an adjudication only of matters expressly discussed and decided."); *Mut.
   Life Ins. v. Hill*, 193 U.S. 551, 553–54 (1901) ("[A] judgment of reversal is not necessarily
26 an adjudication by the appellate court of any other than the questions in terms discussed and
   decided.").

27
[14] "The ongoing financial risk assumed by Siegel and Shuster with regards to the newspaper
28 strips was significantly higher than they had borne in any of their other business dealings
   involving Superman," because their "expenses could be borne for months or even longer
   depending entirely on the material's commercial success." *Id.*

LSL 00182

7

PLAINTIFFS' MOTION FOR RECONSIDERATION OF "WORK FOR HIRE" ORDER

EXHIBIT D
141

1  **III.    CONCLUSION**

2          For the foregoing reasons, Plaintiffs respectfully request that the Court

3  reconsider its August 12, 2009 Order and grant Plaintiffs' motion.

4

5  DATED:  October 3, 2009          TOBEROFF & ASSOCIATES, P.C.

6

7                                   By _____
                                            Marc Toberoff

8                                   Attorneys for Plaintiffs JOANNE SIEGEL

9                                   and LAURA SIEGEL LARSON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LSL 00183

8

**EXHIBIT D**
**142**

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  Keith G. Adams (CA State Bar No. 240497)
   TOBEROFF & ASSOCIATES, P.C.
3  2049 Century Park East, Suite 2720
   Los Angeles, CA 90067
4  Telephone: (310) 246-3333
   Facsimile: (310) 246-3101
5  MToberoff@ipwla.com

6  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

10 | JOANNE SIEGEL, an individual;        | Case No: CV 04-08400 SGL (RZx)
   | and LAURA SIEGEL LARSON, an          |
11 | individual,                          | Hon. Stephen G. Larson, U.S.D.J.
   |                                       |
12 |          Plaintiffs,                 | **PLAINTIFFS JOANNE SIEGEL AND LAURA SIEGEL LARSON'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 12, 2009 "WORK FOR HIRE" ORDER AS TO McCLURE NEWSPAPER STRIPS**
   |     vs.                               |
13 |                                       |
14 | WARNER BROS.                         |
   | ENTERTAINMENT INC., a                |
15 | corporation; TIME WARNER INC.,       |
   | a corporation; DC COMICS, a          | Complaint filed: October 8, 2004
16 | general partnership; and DOES 1-10,  | Trial Date: None Set
17 |                                       |
   |          Defendants.                 | Date:    October 19, 2009
18 |                                       | Time:    11:00 a.m.
   |                                       | Place:   Courtroom 1
19 |                                       |
20 | DC COMICS,                           |
21 |                                       |
   |          Counterclaimant,            |
22 |     vs.                               |
23 |                                       |
   | JOANNE SIEGEL, an individual;        |
24 | and LAURA SIEGEL LARSON, an          |
   | individual,                          |
25 |                                       |
26 |          Counterclaim Defendants.    |
27
28

LSL 00184

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

**EXHIBIT D**
**143**

1  Plaintiffs' motion for reconsideration properly asks this Court to reconsider its

2  August 12, 2009 order ("Order") regarding the McClure newspaper strips ("Strips")

3  on the grounds that: (1) the Order failed on Defendants' summary judgment motion

4  to resolve all ambiguities and draw all reasonable inferences *against* the moving

5  party, *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); (2) Defendants failed to

6  meet their burden as to the "expense" test; (3) Defendants are bound by the decision

7  in *National Comics Publ., Inc. v. Fawcett Publ.* ("*Nat'l Comics II*"), 191 F.2d 594

8  (2d Cir. 1951) that McClure is not the "author" of the Strips; and (4) the finding of a

9  joint venture in *National Comics Publ., Inc. v. Fawcett Publ.* ("*Nat'l Comics I*"), 93

10  F.Supp. 349, 357-58 (S.D.N.Y. 1950), is persuasive.[1]  Defendants' superficial and

11  often misleading opposition fails to counter each of these arguments.

12  **A.    Summary Judgment Was Inappropriate**

13  Defendants do not address the specifics of Plaintiffs' motion. *See* Defts. Opp.

14  at 1:18-3:4.  Instead, Defendants cite two readily distinguishable cases where it was

15  decided on summary judgment that works were clearly <u>not</u> "works for hire."[2]  In

16  "work for hire" analysis, questions of fact remain solely "for the finder of fact;" the

17  "ultimate determination" *based on such findings* is a question of law. 3 *Nimmer on*

18  *Copyright* § 12.10[A] at 12-180.4; n.6.  The issue of McClure/Siegel and Shuster's

19  intent presents material issues of fact preventing summary judgment in Defendants'

20  favor. *See May v. Morganelli-Heuman & Assc.*, 618 F.2d 1363, 1368 (9th Cir. 1980)

21  (reversing summary judgment due to "questions of fact as to the parties' intent.").

22

---

23  [1] Defendants falsely claim that Plaintiffs argued that *Nat'l Comics I* has preclusive effect.  However, Plaintiffs cited it as a *persuasive* contemporary decision finding a "joint venture." *Nat'l Comics II*,

24  in ruling on other grounds, declined to address the issue, leaving this "joint venture" finding undisturbed. 191 F.2d at 599. *See Ortega v. O'Connor*, 50 F.3d 778, 780 (9th Cir. 1995).

25  [2] *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1326

26  (9th Cir. 2000) held that "[w]orks motivated by [the author's] own desire for self-expression or religious instruction of the public are not 'works for hire'" by definition, as they were not done at the

27  "instance" of the putative employer.  In *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998), the party alleging "work for hire" simply "failed to meet his initial burden of production on [the] issue."

28  Both cases were clear-cut, not on the "outer edges" of "work for hire" doctrine. Order at 61. *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1137 (C.D. Cal. 2007) is also distinguishable, as the 1947 Westchester action issued binding findings of fact regarding Superboy, but not the Strips.

JSL 00185

1

1   Evidence cannot be viewed the same on summary judgment as at a bench trial.[3] The

2   Order simply did not resolve all ambiguities[4] and draw all reasonable inferences

3   *against* Defendants on their motion.[5] As the evidence on summary judgment must be

4   construed in the light most favorable to the non-movant, summary judgment that a

5   work was "for hire" is *only* appropriate in narrow, clear-cut circumstances. *See*

6   *Marvel Characters v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002).

7       **B.    Defendants Cannot Explain How the "Expense Test" Was Met**

8           Defendants' opposition relies on Siegel and Shuster's agreements with

9   Detective to misleadingly argue that Plaintiffs were paid a "sum certain" for the

10  Strips, a position rejected by the Court. Order at 57-58. The authors' cash

11  compensation for Superman comic books was distinct from their compensation for

12  the Strips, which was limited solely to a potential profit share. This weighs *heavily*

13  against a finding of "work for hire." *See* Pls. Mot. at 2, n.4.[6] Tellingly, *none* of the

14  cases misleadingly cited by Defendants hold that the "expense" test is met solely by

15

16  [3] *Liberty Lobby*, 477 U.S. at 255. Defendants ignore this crucial point, and speciously argue that a
    trial would just rehash the legal arguments. *See* Defts. Opp. at 3:1-3. At trial Plaintiffs would also

17  have had the opportunity to present their case through both documentary evidence and live fact and
    expert testimony, absent from what Defendants originally styled as a motion *in limine.*

18
    [4] The Order also ignored Plaintiffs' point that ambiguities must be construed against

19  Detective/McClure as the drafters of the agreements at issue. *See Commercial Banking Corp. v.
    Putnam*, 429 F.2d 1112, 1117-18 (9th Cir. 1970); 3 *Nimmer on Copyright* § 10.08[B].

20
    [5] For instance, even though Detective's "Employment Agreement" plainly stated the Strips were to

21  be "furnish[ed] pursuant to the [McClure Agreement]" (Order at 18), the Court, at Defendants'
    urging, made up for McClure's inadequacies in the McClure Agreement by freely drawing from

22  the Detective Agreement. *Id.* at 57-58, 64-65. Even though Detective's control as the owner of
    underlying Superman rights does not render derivative works "for hire," the Order relied on

23  Detective's underlying control to satisfy the "instance" test. *Id.* at 65. The Order gave no weight to
    the fact that DC Comics (Detective's close successor with superior evidentiary access) insisted that

24  McClure was *a mere licensee* (*id.* at 50-56), or to *McClure's* copyright registration of the Strips
    listing Siegel and Shuster as "authors" (*id.* at 75-76), or to the fact that, as between Siegel and

25  Shuster and Detective, the former had the lion's share (80%) of profits from the Strips. *Id.* at 18-19.
    The Order also misconstrued or gave little weight to Siegel and Shuster's significant investment in

26  the Strips' creation and consequent risk of loss should their remuneration, consisting *solely* of a
    profit share, not exceed their investment. *Id.* at 62 n.19. *See* Pls. Mot. at 5-6.

27
    [6] Siegel's compensation was not "a percentage of the monies to be paid to Detective by McClure," as

28  Defendants misleadingly argue. Defts. Opp. at 4, n.6. The money passed through Detective, with
    *80%*, profit statements and an accounting right going to Siegel and Shuster. Order at 18-19.

LSL 00186

2

**EXHIBIT D**
**145**

1    contingent royalty payments.[7]  Each case shows that fixed cash compensation or a

2    "sum certain" was also paid.  *See id.* at 3:16-4:11; and note 6, *supra*.

3        Finally, Plaintiffs distinguished *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d

4    1213, 1217 (2d Cir. 1972), because it did not analyze the "expense" prong and

5    focused solely on the "instance" test.[8]  Furthermore, the differences between the

6    "instance" evidence in *Picture Music* (author had limited artistic input, see *id.* at

7    1214-17) and here (authors were *the driving force* behind the Strips, see Docket

8    Entry # 349 at 16-17) are glaring.[9]  Neither Defendants nor the Order explain how the

9    "instance" prong swallows the "expense" prong.  Here, the expense prong weighs

10   heavily against "work for hire" and, unlike the trial in *Picture Music*, the issue is

11   before the Court on summary judgment.

12   **C.    *National Comics II* Precludes "Works for Hire" Conclusion**

13       The dispute in *Nat'l Comics II* centered on whether or not McClure was the

14   "author or proprietor" of the copyrights in the Strips under § 9 of the 1909 Copyright

15   Act, and the Court held that McClure was the *proprietor*.  191 F.2d at 599.  Under §

16   9 of the 1909 Act, "proprietor" refers to an **assignee**, not the author of a work made

17   for hire.[10]  As held by this Court, *Nat'l Comics II* has preclusive effect.  Order at 56.

18   _____

19   [7] *See Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1142 (9th Cir. 2003) ("[R]oyalties [were] only one form of compensation given to Warren... Warren was also given a fixed sum 'payable upon completion.'").  *Warren* also arose under the 1976 Copyright Act, and "the agreements signed by the

20   parties illustrate an *express* agreement that the works in question were specially commissioned as works for hire." *Id.* at 1140; *see* 17 U.S.C. § 101; *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549,

21   555 (2d Cir. 1995) (payment of a fixed sum); *Donaldson Publ'g Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 642-43 (2d Cir. 1967) (fixed sum and royalties paid, but nonetheless finding that

22   the works were not "for hire"); *Twentieth Century Fox Film Corp. v. Entm't Distrib'g*, 429 F.3d 876, 879 (9th Cir. 2005) (publisher paid "a lump sum … instead of negotiating a royalty deal").

23

24   [8] Defendants' exaggerated claim that "[*Picture Music*] states the law of the Ninth Circuit" is incorrect.  Defts. Opp. at 4, n.4.  *See Twentieth Century*, 429 F.3d at 880 (cites *Picture Music* for the limited proposition that "complete control over the author's work is not necessary"); *Warren*, 328

25   F.3d at 1142 (merely cites *Playboy's* citation of *Picture Music*).

26   [9] Defendants grossly miscite ¶ 35 of the Westchester Findings of Fact as stating that Detective "found a newspaper syndicator."  ¶ 35 says no such thing, and speaks only about the *comic* strip.

27

28   [10] The cases cited by Defendants do not construe § 9 of the 1909 Act.  *See* Pls. Mot. at 5-6, n.10. The fact that "work for hire" caselaw changed after *Nat'l Comics II* does not affect the outcome, because the Second Circuit found that McClure was the "proprietor" (*i.e.*, assign) of the Strips, which precludes a finding of work-for-hire "authorship" under later caselaw as well.    LSL 00187

3

**EXHIBIT D**
**146**

1        Accordingly, for the reasons stated, Plaintiffs' motion should be granted.

2   DATED:  October 16, 2009     TOBEROFF & ASSOCIATES, P.C.

3

4                   By

5                         Marc Toberoff

6              Attorneys for Plaintiffs JOANNE SIEGEL
                and LAURA SIEGEL LARSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

LSL 00188

**EXHIBIT D**
**147**

**Superman**—By Jerry Siegel and Joe Shuster

*The Superman Is Born*

(Copyright, 1938.)






**Superman**—By Jerry Siegel and Joe Shuster

*Destruction Menaces*

(Copyright, 1938.)






13

LSL 00189

**EXHIBIT D**
**148**

Superman—By Jerry Siegel and Joe Shuster

*Safe!*

(Copyright. 1939.)






Superman—By Jerry Siegel and Joe Shuster

*The Terrible Truth!*

(Copyright. 1939.)






14

LSL 00190

**EXHIBIT D**
**149**

Superman—By Jerry Siegel and Joe Shuster          *Krypton Doomed!*

   

Superman—By Jerry Siegel and Joe Shuster          *A Solution*

   

15

LSL 00191

**EXHIBIT D**
**150**

Superman—By Jerry Siegel and Joe Shuster                    *No One Believes Him*                    (Copyright, 1939.)







Superman—By Jerry Siegel and Joe Shuster                    *A Strange Ship*                    (Copyright, 1939.)






16

LSL 00192

Superman—By Jerry Siegel and Joe Shuster       Destruction!                    (Copyright, 1939.)

   

Superman—By Jerry Siegel and Joe Shuster       Speeding Towards Earth          (Copyright, 1939.)

  

17

LSL 00193

**EXHIBIT D**
**152**

**Superman**—By Jerry Siegel and Joe Shuster

*A Perilous Arrival*

(Copyright, 1939.)

   

**Superman**—By Jerry Siegel and Joe Shuster

*The Superman Is Here!*

(Copyright, 1939.)

   

18

LSL 00194

## ADDENDUM A



LSL 00195

**EXHIBIT D**
**154**

Case 2:04-cv-08400-SGL-RZ    Document 293-2    Filed 03/26/2008    Page 2 of 2









LSL 00196

**EXHIBIT D**

**155**

Case 2:04-cv-08400-SGL-RZ    Document 293-3    Filed 03/26/2008    Page 1 of 2










LSL 00197

**EXHIBIT D**
**156**

Case 2:04-cv-08400-SGL-RZ    Document 293-3    Filed 03/26/2008    Page 2 of 2












LSL 00198

EXHIBIT D
157

Case 2:04-cv-08400-SGL-RZ    Document 293-4    Filed 03/26/2008    Page 1 of 2










LSL 00199

**EXHIBIT D**
**158**











LSL 00200

Case 2:04-cv-08400-SGL-RZ    Document 293-5    Filed 03/26/2008    Page 1 of 2












LSL 00201

**EXHIBIT D**
**160**

Case 2:04-cv-08400-SGL-RZ    Document 293-5    Filed 03/26/2008    Page 2 of 2



LSL 00202










LSL 00203

**EXHIBIT D**
**162**

Case 2:04-cv-08400-SGL-RZ    Document 293-6    Filed 03/26/2008    Page 2 of 2










LSL 00204

**EXHIBIT D**
**163**












LSL 00205

**EXHIBIT D**
**164**

Case 2:04-cv-08400-SGL-RZ    Document 293-7    Filed 03/26/2008    Page 2 of 2



LSL 00206

**EXHIBIT D**
**165**







LSL 00207

**EXHIBIT D**
**166**











LSL 00208

**EXHIBIT D**
**167**



Marc Toberoff <marc.toberoff@gmail.com>

# Attachements for Paramount - Part 1/2

**Marc Toberoff <mtoberoff@ipwla.com>**                                    **Fri, Apr 30, 2010 at 2:29 PM**
To: Daniel_Ferleger@paramount.com, "Martin, Scott - Paramount" <Scott_Martin@paramount.com>, "Moore, Rob - Paramount" <rsm@paramount.com>, "Cosgrove, Rona - Paramount" <Rona_Cosgrove@paramount.com>

Gentlemen:

This is the first two e-mails attaching requested documents.

Please find attached copies of the works with respect to which Siegel's joint copyright interest has been held to have been successfully recaptured and for which Shuster's other half of the copyright will be recaptured on October 26, 2013: (1) the first Superman story published in Action Comics No. 1 and (2) the first two weeks of newspaper strips.

As discussed, I also attached our motion for reconsideration of the Court's ruling regarding the many other strips authored by Siegel and Shuster. For the reasons stated therein the additional recapture of such strips which contain the first appearance of numerous Superman elements has a strong chance of success on appeal.

Regards,

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**4 attachments**

    **Action Comics No. 1 Color.pdf**
    17310K

    **Siegel v. Warner Bros.Newspaper-Strips.1stTwoWeeks.pdf**
    479K

    **Siegel v. Warner Bros.Motion.Reconsid-WFH.10.3.2009.8pm.FINAL.pdf**
    51K

    **Siegel v. Warner Bros..Motion.Reconsid-WFH.Reply.10.16.2009.FILED.pdf**
    31K

LSL 00209

**EXHIBIT D**
**168**