# EXHIBIT E

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10  Facsimile:  (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14
   DC COMICS,                          Case No. CV-10-3633 ODW (RZx)
15
                    Plaintiff,         **DISCOVERY MATTER**
16
         v.                            **PLAINTIFF DC COMICS' FIRST**
17                                     **SET OF INTERROGATORIES TO**
                                       **DEFENDANT PACIFIC**
18  PACIFIC PICTURES                   **PICTURES CORPORATION**
   CORPORATION, IP WORLDWIDE,
   LLC, IPW, LLC, MARC TOBEROFF,
19  an individual, MARK WARREN         **Judge**:  Hon. Otis D. Wright II
   PEARY, as personal representative of  **Magistrate**:  Hon. Ralph Zarefsky
20  the ESTATE OF JOSEPH SHUSTER,
   JEAN ADELE PEAVY, an individual,
21  LAURA SIEGEL LARSON, an
   individual and as personal
22  representative of the ESTATE OF
   JOANNE SIEGEL, and DOES 1-10,
23  inclusive,

24                    Defendants.

25  **PROPOUNDING PARTY**:    Plaintiff DC Comics

26  **RESPONDING PARTY**:     Defendant Pacific Pictures Corporation

27  **SET NUMBER**:           First (Interrogatory Nos. 1-6)

28
                                       PL.'S FIRST SET OF INTERROGS.
                                       TO DEF. PACIFIC PICTURES CORP.

Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics hereby requests that defendant Pacific Pictures Corporation respond in writing and under oath to the following First Set of Interrogatories ("Interrogatories"), in accordance with the definitions and instructions contained herein, by no later than August 1, 2011.

## DEFINITIONS AND INSTRUCTIONS

1. "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all documents evidencing any verbal or nonverbal interaction between any individuals or entities.

2. "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

3. "DESCRIBE" means to set forth fully and in detail all factual information and data that are responsive to the particular request seeking such statement or description.

4. "YOU" or "YOUR" means Pacific Pictures Corporation and, as applicable, any PERSON acting on its behalf, including but not limited to its agents, employees, attorneys, and representatives.

5. "MARKET" means to any effort to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property.

6. "INVESTOR" means any PERSON or entity that provides money or other capital in exchange for rights or property, including but not limited to an investment bank, private equity firm, hedge fund, venture capital firm, mutual fund, motion picture studio, entertainment production company, or individual.

- 1 -

PL.'S FIRST SET OF INTERROGS.
TO DEF. PACIFIC PICTURES CORP.

**EXHIBIT E**
**170**

7.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics. No. 1*.

8.    "SUPERBOY" means the Superboy character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *More Fun Comics No. 101*.

9.    "IDENTIFY" means the following:

a.    When used in reference to a PERSON, it means to state the person's full name, present or last known address, and present or last known business affiliation and business address;

b.    When used in reference to an organization, it means to state the organization's full name and, if it is a corporation, partnership, or other business entity, the address of its principal place of business;

c.    When used in reference to a DOCUMENT, it means to state, to the extent known, the DOCUMENT'S (i) type (*i.e.* letter, memo, note, e-mail); (ii) subject matter; (iii) current location; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

d.    When used in reference to a COMMUNICATION, it means to state, to the extent known, the COMMUNICATION'S (i) date; (ii) type (*i.e.* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

PL.'S FIRST SET OF INTERROGS.
TO DEF. PACIFIC PICTURES CORP.

**EXHIBIT E**

**171**

10.    "INCLUDING" means "including, but not limited to."

11.    "Any" and "All" are interchangeable.

12.    The singular form includes the plural form, and vice versa.

13.    Each answer must be as complete and straightforward as the information reasonably available to YOU permits.  If an Interrogatory cannot be answered completely, answer it to the extent possible.

14.    Whenever an Interrogatory may be answered by referring to a DOCUMENT, the DOCUMENT may be attached as an exhibit to the response and referred to in the response.  If the DOCUMENT has more than one page, refer to the page and section where the answer to the Interrogatory can be found.

15.    Federal Rule of Civil Procedure 33 provides these instructions, which YOU must follow when responding to these Interrogatories:

      a.    Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

      b.    The answers are to be signed by the person making them, and the objections signed by the attorney making them.

      c.    The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories.

      d.    All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

      e.    The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

PL.'S FIRST SET OF INTERROGS.
TO DEF. PACIFIC PICTURES CORP.

**EXHIBIT E**
**172**

16.    Each Interrogatory shall be construed independently and no Interrogatory shall be viewed as limiting the scope of any other Interrogatory.

17.    These Interrogatories impose a continuing obligation subsequent to YOUR initial responses to timely supplement YOUR responses if YOU determine that any response is incomplete or incorrect.

## **INTERROGATORIES**

Interrogatory No. 1

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 2

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 3

DESCRIBE in detail when any efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY took place.

Interrogatory No. 4

DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 5

IDENTIFY any PERSON with whom YOU have COMMUNICATED concerning actual or potential INVESTORS in rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 6

DESCRIBE in detail when YOU have COMMUNICATED with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

PL.'S FIRST SET OF INTERROGS.
TO DEF. PACIFIC PICTURES CORP.

**EXHIBIT E**
**173**

1

2  Dated:  July 1, 2011                    Respectfully submitted,

3                                          O'MELVENY & MYERS LLP

4
                                           By:  /s/ Daniel M. Petrocelli
5                                               Daniel M. Petrocelli

6                                          Attorneys for Plaintiff DC Comics

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S FIRST SET OF INTERROGS.
TO DEF. PACIFIC PICTURES CORP.

**EXHIBIT E**
**174**

1   DANIEL M. PETROCELLI (S.B. #97802)
       dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
       mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
       cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:  (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
       pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:  (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  DC COMICS,                              Case No. CV-10-3633 ODW (RZx)

16                  Plaintiff,              **DISCOVERY MATTER**

17          v.                             **PLAINTIFF DC COMICS' FIRST
                                           SET OF INTERROGATORIES TO
18  PACIFIC PICTURES                       DEFENDANT IP WORLDWIDE,
    CORPORATION, IP WORLDWIDE,             LLC**
19  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN             **Judge**:  Hon. Otis D. Wright II
20  PEARY, as personal representative of   **Magistrate**:  Hon. Ralph Zarefsky
    the ESTATE OF JOSEPH SHUSTER,
21  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, an
22  individual and as personal
    representative of the ESTATE OF
23  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
24                  Defendants.

25  **PROPOUNDING PARTY**:    Plaintiff DC Comics

26  **RESPONDING PARTY**:     Defendant IP Worldwide, LLC

27  **SET NUMBER**:           First (Interrogatory Nos. 1-6)

28
                                           PL.'S FIRST SET OF INTERROGS.
                                           TO DEF. IP WORLDWIDE, LLC

Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics hereby requests that defendant IP Worldwide, LLC respond in writing and under oath to the following First Set of Interrogatories ("Interrogatories"), in accordance with the definitions and instructions contained herein, by no later than August 1, 2011.

### DEFINITIONS AND INSTRUCTIONS

1.      "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all documents evidencing any verbal or nonverbal interaction between any individuals or entities.

2.      "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

3.      "DESCRIBE" means to set forth fully and in detail all factual information and data that are responsive to the particular request seeking such statement or description.

4.      "YOU" or "YOUR" means IP Worldwide, LLC and, as applicable, any PERSON acting on its behalf, including but not limited to its agents, employees, attorneys, and representatives.

5.      "MARKET" means to any effort to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property.

6.      "INVESTOR" means any PERSON or entity that provides money or other capital in exchange for rights or property, including but not limited to an investment bank, private equity firm, hedge fund, venture capital firm, mutual fund, motion picture studio, entertainment production company, or individual.

- 1 -

PL.'S FIRST SET OF INTERROGS.
TO DEF. IP WORLDWIDE, LLC

**EXHIBIT E**
**176**

7.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics. No. 1*.

8.    "SUPERBOY" means the Superboy character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *More Fun Comics No. 101*.

9.    "IDENTIFY" means the following:

a.    When used in reference to a PERSON, it means to state the person's full name, present or last known address, and present or last known business affiliation and business address;

b.    When used in reference to an organization, it means to state the organization's full name and, if it is a corporation, partnership, or other business entity, the address of its principal place of business;

c.    When used in reference to a DOCUMENT, it means to state, to the extent known, the DOCUMENT'S (i) type (*i.e.* letter, memo, note, e-mail); (ii) subject matter; (iii) current location; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

d.    When used in reference to a COMMUNICATION, it means to state, to the extent known, the COMMUNICATION'S (i) date; (ii) type (*i.e.* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

- 2 -

PL.'S FIRST SET OF INTERROGS.
TO DEF. IP WORLDWIDE, LLC

10.     "INCLUDING" means "including, but not limited to."

11.     "Any" and "All" are interchangeable.

12.     The singular form includes the plural form, and vice versa.

13.     Each answer must be as complete and straightforward as the information reasonably available to YOU permits.  If an Interrogatory cannot be answered completely, answer it to the extent possible.

14.     Whenever an Interrogatory may be answered by referring to a DOCUMENT, the DOCUMENT may be attached as an exhibit to the response and referred to in the response.  If the DOCUMENT has more than one page, refer to the page and section where the answer to the Interrogatory can be found.

15.     Federal Rule of Civil Procedure 33 provides these instructions, which YOU must follow when responding to these Interrogatories:

  a.     Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

  b.     The answers are to be signed by the person making them, and the objections signed by the attorney making them.

  c.     The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories.

  d.     All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

  e.     The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

PL.'S FIRST SET OF INTERROGS.
TO DEF. IP WORLDWIDE, LLC

**EXHIBIT E**
**178**

1    16.    Each Interrogatory shall be construed independently and no

2  Interrogatory shall be viewed as limiting the scope of any other Interrogatory.

3    17.    These Interrogatories impose a continuing obligation subsequent to

4  YOUR initial responses to timely supplement YOUR responses if YOU

5  determine that any response is incomplete or incorrect.

6                    **INTERROGATORIES**

7  Interrogatory No. 1

8    DESCRIBE in detail all efforts YOU have made to MARKET any rights

9  involving SUPERMAN and/or SUPERBOY.

10  Interrogatory No. 2

11    IDENTIFY any PERSONS with whom YOU have COMMUNICATED in

12  connection with efforts to MARKET any rights involving SUPERMAN and/or

13  SUPERBOY.

14  Interrogatory No. 3

15    DESCRIBE in detail when any efforts YOU have made to MARKET any

16  rights involving SUPERMAN and/or SUPERBOY took place.

17  Interrogatory No. 4

18    DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

19  potential INVESTORS concerning rights involving SUPERMAN and/or

20  SUPERBOY.

21  Interrogatory No. 5

22    IDENTIFY any PERSON with whom YOU have COMMUNICATED

23  concerning actual or potential INVESTORS in rights involving SUPERMAN

24  and/or SUPERBOY.

25  Interrogatory No. 6

26    DESCRIBE in detail when YOU have COMMUNICATED with actual or

27  potential INVESTORS concerning rights involving SUPERMAN and/or

28  SUPERBOY.

- 4 -

PL.'S FIRST SET OF INTERROGS.
TO DEF. IP WORLDWIDE, LLC

**EXHIBIT E**

**179**

1

2    Dated:  July 1, 2011                Respectfully submitted,

3                                        O'MELVENY & MYERS LLP

4
                                         By:  /s/ Daniel M. Petrocelli
5                                             Daniel M. Petrocelli

6                                        Attorneys for Plaintiff DC Comics

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S FIRST SET OF INTERROGS.
                                           TO DEF. IP WORLDWIDE, LLC

**EXHIBIT E**
**180**

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:  (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:  (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| DC COMICS, | Case No. CV-10-3633 ODW (RZx) |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **PLAINTIFF DC COMICS' FIRST SET OF INTERROGATORIES TO DEFENDANT IPW, LLC** |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual, and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | **Judge**:  Hon. Otis D. Wright II **Magistrate**:  Hon. Ralph Zarefsky |
| Defendants. | |

25  **PROPOUNDING PARTY**:   Plaintiff DC Comics

26  **RESPONDING PARTY**:   Defendant IPW, LLC

27  **SET NUMBER**:   First (Interrogatory Nos. 1-6)

28

1    Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics hereby
2  requests that defendant IPW, LLC respond in writing and under oath to the
3  following First Set of Interrogatories ("Interrogatories"), in accordance with the
4  definitions and instructions contained herein, by no later than August 1, 2011.

5                    **DEFINITIONS AND INSTRUCTIONS**

6    1.    "COMMUNICATION" means all written, electronic, oral,
7  telephonic, gesture, or other transmission or exchange of information, including
8  without limitation any inquiry, request, dialogue, discussion, conversation,
9  interview, correspondence, letter, note, consultation, negotiation, agreement,
10  understanding, meeting, e-mail, and all documents evidencing any verbal or
11  nonverbal interaction between any individuals or entities.

12    2.    "PERSON" means any natural person, firm, association, corporation,
13  partnership, or other legal entity or organization separately identifiable, and any
14  department(s) or division(s) therein.

15    3.    "DESCRIBE" means to set forth fully and in detail all factual
16  information and data that are responsive to the particular request seeking such
17  statement or description.

18    4.    "YOU" or "YOUR" means IPW, LLC and, as applicable, any
19  PERSON acting on its behalf, including but not limited to its agents, employees,
20  attorneys, and representatives.

21    5.    "MARKET" means to any effort to promote, arrange, or negotiate
22  the sale, assignment, lease, license, or any other disposition or exploitation of
23  rights or property.

24    6.    "INVESTOR" means any PERSON or entity that provides money or
25  other capital in exchange for rights or property, including but not limited to an
26  investment bank, private equity firm, hedge fund, venture capital firm, mutual
27  fund, motion picture studio, entertainment production company, or individual.

28

- 1 -

PL.'S FIRST SET OF
INTERROGS. TO DEF. IPW, LLC

**EXHIBIT E**
**182**

1    7.    "SUPERMAN" means the Superman character as delineated in

2 literary works such as comic books, newspapers, novels, radio programs,

3 television programs, and motion pictures, and any of the works in which he

4 appears, including but not limited to *Action Comics. No. 1*.

5    8.    "SUPERBOY" means the Superboy character as delineated in

6 literary works such as comic books, newspapers, novels, radio programs,

7 television programs, and motion pictures, and any of the works in which he

8 appears, including but not limited to *More Fun Comics No. 101*.

9    9.    "IDENTIFY" means the following:

10    a.    When used in reference to a PERSON, it means to state the

11        person's full name, present or last known address, and present or

12        last known business affiliation and business address;

13    b.    When used in reference to an organization, it means to state the

14        organization's full name and, if it is a corporation, partnership,

15        or other business entity, the address of its principal place of

16        business;

17    c.    When used in reference to a DOCUMENT, it means to state, to

18        the extent known, the DOCUMENT'S (i) type (*i.e.* letter, memo,

19        note, e-mail); (ii) subject matter; (iii) current location; (iv) every

20        author, recipient or addressee; and (v) the bates number of the

21        DOCUMENT if simultaneously or previously produced in this

22        or any related action.

23    d.    When used in reference to a COMMUNICATION, it means to

24        state, to the extent known, the COMMUNICATION'S (i) date;

25        (ii) type (*i.e.* oral, telephonic, e-mail); (iii) subject matter; (iv)

26        every author, recipient or addressee; and (v) the bates number of

27        the DOCUMENT if simultaneously or previously produced in

28        this or any related action.

- 2 -

1      10.    "INCLUDING" means "including, but not limited to."

2      11.    "Any" and "All" are interchangeable.

3      12.    The singular form includes the plural form, and vice versa.

4      13.    Each answer must be as complete and straightforward as the

5  information reasonably available to YOU permits.  If an Interrogatory cannot be

6  answered completely, answer it to the extent possible.

7      14.    Whenever an Interrogatory may be answered by referring to a

8  DOCUMENT, the DOCUMENT may be attached as an exhibit to the response

9  and referred to in the response.  If the DOCUMENT has more than one page,

10  refer to the page and section where the answer to the Interrogatory can be found.

11      15.    Federal Rule of Civil Procedure 33 provides these instructions,

12  which YOU must follow when responding to these Interrogatories:

13          a.    Each interrogatory shall be answered separately and fully in

14              writing under oath, unless it is objected to, in which event the

15              objecting party shall state the reasons for objection and shall

16              answer to the extent the interrogatory is not objectionable.

17          b.    The answers are to be signed by the person making them, and

18              the objections signed by the attorney making them.

19          c.    The party upon whom the interrogatories have been served shall

20              serve a copy of the answers, and objections if any, within 30

21              days after the service of the interrogatories.

22          d.    All grounds for an objection to an interrogatory shall be stated

23              with specificity.  Any ground not stated in a timely objection is

24              waived unless the party's failure to object is excused by the

25              court for good cause shown.

26          e.    The party submitting the interrogatories may move for an order

27              under Rule 37(a) with respect to any objection to or other failure

28              to answer an interrogatory.

PL.'S FIRST SET OF
INTERROGS. TO DEF. IPW, LLC

16.     Each Interrogatory shall be construed independently and no Interrogatory shall be viewed as limiting the scope of any other Interrogatory.

17.     These Interrogatories impose a continuing obligation subsequent to YOUR initial responses to timely supplement YOUR responses if YOU determine that any response is incomplete or incorrect.

## **INTERROGATORIES**

Interrogatory No. 1

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 2

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 3

DESCRIBE in detail when any efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY took place.

Interrogatory No. 4

DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 5

IDENTIFY any PERSON with whom YOU have COMMUNICATED concerning actual or potential INVESTORS in rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 6

DESCRIBE in detail when YOU have COMMUNICATED with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

- 4 -

PL.'S FIRST SET OF
INTERROGS. TO DEF. IPW, LLC

**EXHIBIT E**

**185**

1

2   Dated:  July 1, 2011                          Respectfully submitted,

3                                                 O'MELVENY & MYERS LLP

4
                                                  By: /s/ Daniel M. Petrocelli
5                                                      Daniel M. Petrocelli

6                                                 Attorneys for Plaintiff DC Comics

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S FIRST SET OF
INTERROGS. TO DEF. IPW, LLC

**EXHIBIT E**
**186**

# EXHIBIT F

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 7, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

    Re:    <u>*DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)</u>

Dear Counsel:

    We write to follow up on our meet-and-confer discussions with Messrs. Toberoff and Adams concerning DC Comics' narrowed document requests.

    DC served its document requests on Mr. Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC on December 10, 2010. Defendants' January 24, 2011, objections and April 11, 2011, opposition to DC's motion to compel asserted that the parties should meet and confer in an effort to narrow DC's requests. Magistrate Zarefsky's May 25, 2011, order instructed the parties to endeavor "to resolve the dispute short of court action," pursuant to Local Rule 37-2.1. To this end, DC sent defendants a lengthy letter on June 1, 2011, that narrowed and clarified its December 2010 document requests to take into account defendants' objections.

    Defendants' June 13, 2011, letter merely asserted blanket objections and did not specifically respond to any of DC's revised document requests. During our meet-and-confer call later that day, Mr. Toberoff declined meaningfully to engage in the compromise process or propose alternative formulations for DC's document requests, saying, "No, that's not my job." While Messrs. Toberoff and Adams initially agreed to respond to DC's June 1 discovery requests by July 5 in accordance with Federal Rule 34, they later asserted that DC failed to adequately "accept" this agreement and refused to respond until July 15. We disagreed with defendants' characterization but, in the interest of compromise, agreed to send the following letter by July 7

**EXHIBIT F**
**187**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 2

provided defendants agreed to provide responsive documents by July 15 rather than asserting
blanket objections as they had in the past.  Defendants declined to commit to producing any
documents on July 15, stating only that DC "is welcome to properly serve its new document
requests pursuant to the Rules and defendants will duly respond pursuant to the Rules."
Defendants' refusal meaningfully to participate in the meet-and-confer process they themselves
proposed—which appears calculated to improperly delay discovery until after the August 8,
2011, deadline set by Judge Wright for DC to submit new oppositions to defendants' Rule 12
and SLAPP motions—is inconsistent with the Court's May 25 order and admonishment to
counsel not "to be obstructive."  Docket No. 74.

In a final effort to avoid unnecessary motion practice, we have attempted below to
crystallize the parties' respective positions on DC's revised document requests and, in some
cases, to narrow the requests even further.  Note that in many instances, it was difficult to
determine defendants' position based on the blanket nature of the objections asserted in their
June 13 letter and reiterated during the meet-and-confer call that day.

**PART I**

Many of defendants' objections are based solely on their position that the term
"RELATING" in DC's requests is "very broadly defined" and "render[s] such requests
overbroad."  We disagree, but in an effort to compromise, will adopt a modified version of the
definition used in defendants' June 13 letter:  to "refer to or bear on."

Defendants also rely on general objections that DC's requests are overbroad,
burdensome, and irrelevant.  The narrowed scope and any relevance objections are addressed
individually below.

As to the three categories of objections identified in defendants' June 13 letter, DC
responds:

**Objection Category A**.  Defendants contend that these requests[1] merely repeat requests
rejected by Magistrate Zarefsky as overbroad.  However, DC modified each of these requests by
replacing the "RELATING" language to which defendants objected with narrower language
making clear that DC seeks documents "identifying" the information sought, not "everything
there is about companies with which Mr. Toberoff has been associated."

On the June 13 call, although DC had already narrowed its requests, we asked for
defendants' counterproposals regarding this category of documents.  Mr. Toberoff refused to
provide any.

---

[1] Toberoff Request Nos. 56-58; PPC Request Nos. 31, 33; IPWW Request Nos. 32-34; IPW
Request Nos. 27, 29.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 3

**Objection Category B**.  Requests placed in this category[2] break down into two groups. First, Toberoff Request Nos. 27 and 28 were misquoted by defendants in their initial objections. Even after we pointed this out in our June 1 letter and on the June 13 call, defendants stated in their June 14 letter that their "responses, including the objections, stand," despite the much narrower scope of the actual requests compared to those misquoted by defendants.

The second group includes requests reasserted by DC because they were formulated in the same manner as Toberoff Request No. 34, to which defendants originally agreed to produce responsive documents.  On the June 13 call, Mr. Toberoff and Mr. Adams contended that Toberoff Request No. 34, which relates to the 2001 Pacific Pictures agreement, was more limited than requests related to other agreements because that 2001 agreement was subsequently amended and canceled.  After we pointed out that the same logic should apply to DC's requests concerning the 2003 Pacific Pictures agreement (Toberoff Request No. 40) and 2002 IP Worldwide agreement (Toberoff Request No. 52), Mr. Adams and Mr. Toberoff abandoned this rationale in their June 14 letter, stating that the original response to Toberoff Request No. 34 should not have agreed to produce documents.

In any event, defendants now assert that, assuming the parties agree to a definition of "RELATING," defendants have produced all "non-privileged responsive documents sought by these requests."  Pursuant to the proposal regarding the definition of "RELATING" noted above, DC is entitled to a clear statement that defendants have searched their files for all documents in the requests listed in Objection Category B, and that no such documents exist that have not been previously produced.  *See Ibanez v. Miller*, 2009 WL 1706665, at *4 (E.D. Cal. June 17, 2009) (ordering verification that all responsive documents had been produced since defendants produced no responsive documents); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *8 (N.D. Cal. June 3, 2011) (noting prior order to verify that all responsive documents had been produced and imposing evidentiary sanctions for untimely production); *Rodriguez v. Niagara Cleaning Servs., Inc.*, 2010 WL 1655519, at *2-3 (S.D. Fla. Apr. 23, 2010) (ordering verification that all responsive documents had been produced because particulars of search for documents were not provided).  To the extent they are not moot, any remaining relevance objections are addressed individually below.

**Objection Category C**.  Defendants object generally that these requests[3] propound "new discovery."  But each of the requests in this category are narrowed versions of DC's prior requests that take into account defendants' objections.[4]  In any event, defendants have treated all

---

[2] Toberoff Request Nos. 27-28, 40-41, 44, 52; PPC Request Nos. 24, 27-28; IPWW Request Nos. 24, 27.

[3] Toberoff Request Nos. 5, 9, 12-15, 18, 29-32, 42, 46, 48, 53-54; PPC Request Nos. 5, 15, 19, 23, 25, 29-30; IPWW Request Nos. 5, 15, 18, 25, 28-30; IPW Request Nos. 24-26.

[4] *E.g.*, Toberoff Request No. 5 (limiting request for all documents related to Superman and/or Superboy to those documents related to the Siegel Heirs' or Shuster Heirs' interest in those characters); PPC Request No. 19 (requesting documents related only to company's "introduction to" Shuster Heirs, not "involvement with" them); IPWW Request No. 30 (limiting request to

O'MELVENY & MYERS LLP
July 7, 2011 - Page 4

of DC's narrowed and reformulated requests as "new discovery"—unilaterally giving themselves
30 days to respond to DC's narrowed requests before (a) informing DC of defendants' objections
and responses to the requests, or (b) much less producing *any* documents.

**Requests for Production to Defendant Marc Toberoff**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS'
  claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS'
  claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  This request has been
narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs'
interest in Superman and Superboy, not all documents relating to those characters.  Such
documents are clearly relevant to DC's claims, which, *inter alia*, concern the Shusters' effort to
recapture Superman rights and misconduct in connection with the Siegels' attempt to recapture
Superman and Superboy rights.

Request No. 9

- Original:  All DOCUMENTS RELATING to any of the DEFENDANTS OBTAINED by
  YOU prior to YOUR initial contact with any of them.

- Proposed 9(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS OBTAINED by
  YOU prior to YOUR initial contact with each of them.

- Proposed 9(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS OBTAINED
  by YOU prior to YOUR initial contact with each of them.

Defendants place these requests in Objection Category C.  This request has been
narrowed to make clear that DC seeks documents relating to the Siegel and Shuster heirs only,
not all defendants, and may include news articles, correspondence, draft filings, or numerous
other documents.  Such documents are clearly relevant to DC's claims involving, *inter alia*, acts
of interference by Mr. Toberoff and his companies.  Moreover, the relationship between the
Toberoff defendants and the Siegel and Shuster heirs is a key factual issue that must be resolved
before defendants' Rule 12 and SLAPP motions can be adjudicated, and DC is entitled to
discovery relating to that question.  Mr. Toberoff has stated in deposition that he followed via the

documents "identifying" the current corporate status of IP Worldwide and removing reference to
"RELATING," to which defendants have objected).

**EXHIBIT F**
**190**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 5

internet the progress of the Siegel heirs' termination efforts, and these requests seek any similar documents relating to the Siegel heirs and/or Shuster heirs.

Request No. 12

- Original:  All DOCUMENTS RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought.  DC is not seeking pursuant to this request Jerry Siegel or Joe Shuster's agreements with DC or its predecessors, but only the named defendants' documents, which may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Mark Peary admitted at his June 29 deposition, for example, that "[t]here were drafts" of the 2001 agreement he signed with Pacific Pictures Corporation.  Peary Dep. Tr. 99:6-10.  Such documents are clearly relevant to DC's Third and Sixth claims, which relate to, *inter alia*, unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 13

- Original:  All DOCUMENTS RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 14

- Original:  All DOCUMENTS RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 6

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 15

- Original:  All DOCUMENTS RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

- Proposed:  All DOCUMENTS created during or since 1997 RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 12.

Request No. 18

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created during or since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought.  DC seeks any documents relating to valuations by defendants, their counsel, or agents to valuate Superman as a property or defendants' purported Superman interest, and may include reports from accountants or other experts, correspondence seeking such reports, or numerous other documents.  Such documents are clearly relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  They also potentially relate to determining the role Mr. Toberoff and his companies have played in representing the Siegel heirs and Shuster heirs, which is a key factual issue yet to be determined in this case.

Request No. 27

- Original:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 7

Defendants place this request in Objection Category B. This request relates only to Mr. Toberoff's introduction to the Siegel heirs, not the broader "involvement with" them quoted by defendants. These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents. Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims. They are also relevant to DC's Sixth claim, which, *inter alia*, relates to improper agreements defendants entered into prohibiting them from dealing with DC. Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm. The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 28

- Original: All DOCUMENTS RELATING to YOUR introduction to the SHUSTER HEIRS.

Defendants place this request in Objection Category B. This request relates only to Mr. Toberoff's introduction to the Shuster heirs, not the broader "involvement with" them quoted by defendants. These documents may include phone records, calendar logs, correspondence setting up meetings, or numerous other documents. Such documents are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts. They are also relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose. Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm. The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 29

- Original: All DOCUMENTS RELATING to the transfer of any property or interest between or among YOU and any DEFENDANT.

- Proposed: All DOCUMENTS RELATING to the transfer of any property or interest in SUPERMAN and/or SUPERBOY between or among YOU and any DEFENDANT.

Defendants place this request in Objection Category C. This request has been narrowed to make clear that it relates only to interests in Superman and/or Superboy, not unrelated transfers between or among Mr. Toberoff and his companies. These documents may include agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other

**EXHIBIT F**
**193**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 8

documents. Such documents are relevant to the same claims and for the same reasons as described in Toberoff Request No. 12.

Request No. 30

- Original: All COMMUNICATIONS RELATING to any disclosure of a potential or actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed: All COMMUNICATIONS RELATING to any disclosure of a potential or actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS.

Defendants place this request in Objection Category C. This request has been narrowed to make clear that it relates only to disclosures among Mr. Toberoff, the Siegel heirs, and Shuster heirs, not all defendants. Such documents are clearly relevant to DC's Fourth and Fifth claims, which, *inter alia*, relate to acts of interference with DC's rights by Mr. Toberoff and his companies. Those claims also implicate the nature of Mr. Toberoff's relationship with the Siegel heirs and Shuster heirs. The requested documents are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC. And while Mr. Toberoff mentioned during the June 13 call that he was not sure whether the Siegel heirs or Shuster heirs had outside counsel advising them before entering into agreements with Mr. Toberoff and his companies, California law requires that an attorney inform in writing one with whom he is entering into a business transaction of conflicts and give that person the opportunity to seek independent counsel.

Request No. 31

- Original: All DOCUMENTS RELATING to any waiver or acknowledgement of a potential or actual conflict of interest by or to YOU or any DEFENDANT.

- Proposed: All DOCUMENTS RELATING to any waiver or acknowledgement of a potential or actual conflict of interest by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS.

Defendants place this request in Objection Category C. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 30. Mr. Peary admitted at his June 29 deposition, for example, that he, the Siegel heirs, and Mr. Toberoff all signed a conflict of interest waiver in 2010, yet none has been produced. Defendants may claim that this document is listed on a privilege log, but DC cannot locate such a document—one more example of how the opacity of defendants' privilege logs prevents DC or the Court from assessing defendants' assertions of privilege. In any event, these documents are not privileged and should be produced immediately. *See E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D. Mo. May 10, 2007) ("The production of conflict memoranda, new matter forms, and correspondence regarding conflicts is not

O'MELVENY & MYERS LLP
July 7, 2011 - Page 9

protected by the attorney-client privilege or work product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004) (ordering production of conflict of interest waiver).

Request No. 32

- Original:  All DOCUMENTS RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual entity RELATING to any DEFENDANT.

- Proposed:  All DOCUMENTS created during or since 2000 RELATING to any past, current, or planned partnership or strategic alliance between YOU and any individual or entity RELATING to any purported interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe of documents sought and now makes clear that it seeks only documents relating to Superman and/or Superboy, not all alliances by Mr. Toberoff, and may include agreements, drafts of agreements, correspondence discussing potentially-aligned business interest, or numerous other documents.  Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to unlawful consent agreements and attempts to transfer the Siegel heirs' and/or Shuster heirs' interests before the date allowed by the Copyright Act.  They are also relevant to DC's Second claim, which, *inter alia*, relates to the scope of rights subject to recapture by the Shuster heirs, if any.  Any partnerships or strategic alliances, actual or potential, are therefore relevant to potential discussions regarding the value of the heirs' rights.  Additionally, Mr. Toberoff has made representations regarding his efforts to market the heirs' rights, and DC is entitled to investigate them through the discovery process.

Request No. 40

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 27, 2003 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  Documents sought by this request, including drafts of agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents, are clearly relevant to DC's First and Second claims, which, *inter alia*, seek declaratory relief regarding the validity and scope of the Shuster heirs' termination efforts as well as DC's interference claims.  The documents sought are, in addition, relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, acts of interference by Mr. Toberoff (the businessman) and his companies, as well as efforts by the defendants to market the Shuster heirs' purported Superman rights and any negotiations or agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the October 27, 2003, agreement makes clear that Pacific Pictures is not a law firm.  The nature of this relationship—and defendants' claims

O'MELVENY & MYERS LLP
July 7, 2011 - Page 10

regarding it—are factual issues that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 41

- Original:  All DOCUMENTS RELATING to the letter dated September 10, 2004 that YOU signed with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 40.

Request No. 42

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks.

- Proposed 42(a):  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SIEGEL HEIRS.

- Proposed 42(b):  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Kevin Marks RELATING to the SHUSTER HEIRS.

Defendants place these requests in Objection Category C.  These requests now make clear that they seek only documents relating to communications regarding the Siegel heirs and/or Shuster heirs, not all communications Mr. Toberoff may have had with Mr. Marks, and may include phone records, calendar logs, correspondence setting up meetings, communicated offers, drafts of agreements, or numerous other documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks.  Regardless of defendants' position on the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks.  And Mr. Toberoff has described at deposition other conversations he had with Mr. Marks related to the Siegel heirs, all of which DC has the right to investigate.

Request No. 44

- Original:  All DOCUMENTS RELATING to the letter dated August 9, 2002 from Kevin Marks to Joanne and/or Laura Siegel.

Defendants place this request in Objection Category B.  Documents sought by this request, including phone records, calendar logs, correspondence evidencing negotiations, communicated offers, drafts of agreements, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs while they were represented by Mr. Marks.  Regardless of defendants' position on

O'MELVENY & MYERS LLP
July 7, 2011 - Page 11

the trustworthiness of the Toberoff Timeline, the Court has repeatedly held that DC has the right to take discovery related to the Timeline, which describes conversations between Mr. Toberoff and Mr. Marks, including one subsequent to an August 8, 2002, telephone call including Mr. Marks and Mr. Toberoff.  DC has the right to investigate the claims in the Timeline, especially in light of the Court's May 25 order holding that defendants waived privilege over the Timeline documents provided to the U.S. Attorney's Office.

Request No. 46

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel RELATING to the rights in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between YOU and Michael Siegel or his representatives RELATING to the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  This request now makes clear that it seeks only documents relating to communications regarding the Siegel heirs' purported interest in Superman and/or Superboy, not all communications Mr. Toberoff may have had with Mr. Siegel or his representatives.  Such documents, including valuations, drafts of agreements, correspondence evidencing negotiations, communicated offers, or numerous other documents, are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to interference with DC's rights with relation to the Siegel heirs.  The proceedings in the Northern District of Ohio confirm that defendants did not share a common interest with Mr. Siegel or his representatives while Mr. Siegel was alive, and all such documents should be produced.

Request No. 48

- Original:  All DOCUMENTS RELATING to any COMMUNICATION between or among Laura Siegel Larson and Michael Siegel.

- Proposed:  All DOCUMENTS RELATING to any COMMUNICATION between Joanne Siegel and/or Laura Siegel Larson, on one hand, and Michael Siegel or his representatives on the other hand.

Defendants place this request in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 46.

Request No. 52

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002 that YOU signed on behalf of DEFENDANT IP Worldwide, LLC, and any revisions, modifications, or adjustments thereto.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 12

Defendants place this request in Objection Category B.  Documents sought by this request include agreements, correspondence evidencing negotiations, correspondence stating the purpose for the document described, amending agreements or correspondence, or numerous other documents.  Such documents are relevant to the same claims and for the same reasons as those sought in Toberoff Request No. 27.

Request No. 53

- Original:  All DOCUMENTS RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term:  Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

- Proposed:  All DOCUMENTS created from 1995 to the present RELATING to the Notice of Termination of Transfer Covering Extended Renewal Term:  Superboy served on behalf of the SIEGEL HEIRS on or around November 8, 2002.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, or numerous other documents.  DC is not seeking pursuant to this request any Superboy documents dating back to the character's first appearance, merely documents related to the Superboy termination notice.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC.  The requested documents are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the Siegel heirs while DC and the Siegel heirs were negotiating a global settlement of the Siegel heirs' claims.

Request No. 54

- Original:  All DOCUMENTS RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed:  All DOCUMENTS created from 2001 to the present RELATING to the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

Defendants place this request in Objection Category C.  This request has narrowed the timeframe for documents sought, and may include agreements relating to the disposition of Superboy rights, correspondence stating the purpose of the document described, correspondence stating the reason for the failure of the Shuster heirs to seek separate termination of Superboy, or numerous other documents.  DC is not seeking pursuant to this request any Superman documents dating back to the character's first appearance, merely documents related to the Superman

O'MELVENY & MYERS LLP
July 7, 2011 - Page 13

termination notice.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because of improper dealings related to Superboy that benefited the Siegel heirs to the detriment of the Shuster heirs and DC.  Unlike the Siegel heirs' initial termination notice, the Shuster heirs' notice did not include any Superboy works.  The requested documents are also relevant to DC's Fourth claim, which, *inter alia*, relates to Mr. Toberoff's interference with DC's rights with relation to the 1992 agreement signed by Jean Peavy and Frank Shuster.

Request No. 56

- Original:  All DOCUMENTS RELATING to your role and ownership interest in Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 56(a):  All DOCUMENTS identifying your past, present, and/or future role or position in Pacific Pictures Corporation.

- Proposed 56(b):  All DOCUMENTS identifying your past and/or present ownership interest in Pacific Pictures Corporation.

- Proposed 56(c):  All DOCUMENTS involved in the formation of Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, filings, business plans.

- Proposed 56(d):  All DOCUMENTS evidencing Pacific Pictures Corporation's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of Pacific Pictures, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 57

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IP Worldwide LLC, including, articles of organization, operating agreements, minutes,

O'MELVENY & MYERS LLP
July 7, 2011 - Page 14

capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 57(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IP Worldwide, LLC.

- Proposed 57(b):  All DOCUMENTS identifying your past and/or present ownership interest in IP Worldwide, LLC.

- Proposed 57(c):  All DOCUMENTS involved in the formation of IP Worldwide, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 57(d):  All DOCUMENTS evidencing IP Worldwide, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IP Worldwide.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures. Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process. They are also relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his companies' interference with DC's rights with relation to the Siegel heirs.  Defendants have asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 58

- Original:  All DOCUMENTS RELATING to your role and ownership interest in IPW, LLC, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

- Proposed 58(a):  All DOCUMENTS identifying your past, present, and/or future role or position in IPW, LLC.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 15

- Proposed 58(b):  All DOCUMENTS identifying your past and/or present ownership interest in IPW, LLC.

- Proposed 58(c):  All DOCUMENTS involved in the formation of IPW, LLC, including, articles of organization, operating agreements, minutes, filings,  business plans.

- Proposed 58(d):  All DOCUMENTS evidencing IPW, LLC's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

These requests remove the "RELATING" language characterized by defendants as overbroad and substitute "identifying" or "evidencing."  Through these requests, DC seeks documents identifying the ownership, management and capital structures, and formation documents of IPW, not every transaction in which it ever engaged.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  We are entitled to see all documents effectuating and related to that transfer.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.

## Requests for Production to Defendant Pacific Pictures Corporation

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to any interest the SIEGEL HEIRS' claim in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to any interest the SHUSTER HEIRS' claim in SUPERMAN and/or SUPERBOY.

Defendants place these requests in Objection Category C.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

**EXHIBIT F**
**201**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 16

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any
  past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C.  DC seeks the same types of
documents—relevant to the same claims and for the same reasons—as sought in Toberoff
Request No. 18.

Request No. 19

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement
  with the SHUSTER HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SHUSTER
  HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to
Pacific Pictures' introduction to the Shuster heirs, not the broader "involvement with" them.  DC
seeks the same types of documents—relevant to the same claims and for the same reasons—as
sought in Toberoff Request No. 28.

Request No. 23

- Original:  All DOCUMENTS RELATING to YOUR past and current ownership and
  management structure, including operating agreements, by-laws, capitalization schedules,
  capital accounts, shares, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying YOUR past and current ownership and
  management structure, including operating agreements, by-laws, capitalization schedules,
  capital accounts, shares, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as
overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the
same claims and for the same reasons—as sought in Toberoff Request No. 56.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated
  February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B.  Because the document described
here appears to have created IP Worldwide, documents sought by this request, including drafts of
agreements, correspondence evidencing negotiations, correspondence stating the purpose of the
document described, amending agreements or correspondence, or numerous other documents,
are clearly relevant to DC's Fifth claim, which, *inter alia*, relates to Mr. Toberoff's and his
companies' interference with DC's rights with relation to the Siegel heirs while DC and the

O'MELVENY & MYERS LLP
July 7, 2011 - Page 17

Siegel heirs were negotiating a global settlement of the Siegel heirs' claims.  Defendants have also asserted that Mr. Toberoff acted as the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through IP Worldwide, which is not a law firm.  The nature of this relationship is a factual issue that must be explored through discovery before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 25

- Original:  All DOCUMENTS RELATING to any contributions by YOU to the IP Worldwide joint venture.

- Proposed:  All DOCUMENTS identifying any contributions by YOU to the IP Worldwide joint venture.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all documents identifying Pacific Pictures' contributions to IP Worldwide, another of Mr. Toberoff's companies, and may include agreements, drafts of agreements, correspondence evidencing negotiations, amending agreements or correspondence, or numerous other documents.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

Request No. 27

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 27, 2003 that YOU entered into with the SHUSTER HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as those sought in Toberoff Request No. 40.

Request No. 28

- Original:  All DOCUMENTS RELATING to the letter dated September 10, 2004 that YOU signed with the SHUSTER HEIRS.

**EXHIBIT F**
**203**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 18

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as those sought in Toberoff Request No. 40.

Request No. 29

- Original:  All DOCUMENTS RELATING to the formation of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS involved in the formation of PACIFIC PICTURES, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of Pacific Pictures' formation documents.  Such documents are clearly relevant to DC's Third and Sixth claims, which, *inter alia*, relate to efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  Defendants have also asserted that Mr. Toberoff acted as the Shuster heirs' lawyer from the outset of their relationship, while the only agreement under which they operated at that time was through Pacific Pictures, which is not a law firm.  DC is entitled to test defendants' representation through the discovery process.

Request No. 30

- Original:  All DOCUMENTS RELATING to the current corporate status of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying the current corporate status of PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of Pacific Pictures.  Such documents are clearly relevant to DC's Third, Fourth, and Sixth claims, all of which relate to, *inter alia*, efforts by Mr. Toberoff and Pacific Pictures to market the Shuster heirs' purported Superman rights and agreements entered into for that purpose.  They are also relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 19

Request No. 31

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any business plans of PACIFIC PICTURES, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by Pacific Pictures (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

Request No. 33

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by PACIFIC PICTURES.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by Pacific Pictures of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents.  Such documents are relevant to same claims and for the reasons stated in PPC Request No. 30.

**Requests for Production to Defendant IP Worldwide, LLC**

Request No. 5

- Original:  All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

- Proposed 5(a):  All DOCUMENTS RELATING to the SIEGEL HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

- Proposed 5(b):  All DOCUMENTS RELATING to the SHUSTER HEIRS' purported interest in SUPERMAN and/or SUPERBOY.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 20

Defendants place these requests in Objection Category C. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 5.

Request No. 15

- Original:  All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

- Proposed:  All DOCUMENTS created since 1995 RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY.

Defendants place this request in Objection Category C. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 18.

Request No. 18

- Original:  All DOCUMENTS RELATING to YOUR introduction to and involvement with the SIEGEL HEIRS.

- Proposed:  All DOCUMENTS RELATING to YOUR introduction to the SIEGEL HEIRS.

This request has been narrowed to make clear that DC seeks documents relating to IP Worldwide's introduction to the Siegel heirs, not the broader "involvement with" them. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 27.

Request No. 24

- Original:  All DOCUMENTS RELATING to the Memorandum of Agreement dated February 2, 2002 that YOU entered into with Ari Emanuel.

Defendants place this request in Objection Category B. DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 24.

Request No. 25

- Original:  All DOCUMENTS RELATING to contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

O'MELVENY & MYERS LLP

July 7, 2011 - Page 21

- Proposed:  All DOCUMENTS identifying contributions of DEFENDANTS Marc Toberoff and Pacific Pictures Corporation to IP WORLDWIDE.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in PPC Request No. 25.

Request No. 27

- Original:  All DOCUMENTS RELATING to the letter agreement dated October 3, 2002—and any revisions, modifications, or adjustments thereto—that IP WORLDWIDE signed with the SIEGEL HEIRS.

Defendants place this request in Objection Category B.  DC seeks the same types of documents—relevant to the same claims and for the same reasons—as sought in Toberoff Request No. 52.

Request No. 28

- Original:  All DOCUMENTS RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

- Proposed:  All DOCUMENTS created from 2001 to the present RELATING to the identification of IP WORLDWIDE on the Document Cover Sheet for Recordation of Documents filed with the Transfer Covering Extended Copyright Renewal Term of "Superman" served on behalf of the Estate of Joseph Shuster on November 10, 2003.

This request narrows the timeframe of documents sought.  Through this request, DC seeks all documents relating to the identification of IP Worldwide in the Shuster heirs' termination notice.  Such documents, including correspondence or other documents evidencing work IP Worldwide performed for the Shuster heirs, correspondence describing the purpose of the identification of IP Worldwide in the document described, or numerous other documents, are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  To our knowledge, defendants have produced no documents identifying any work that IP Worldwide did for the Shuster heirs, but documents previously produced do show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  Moreover, the extent to which Mr. Toberoff (the businessman) and/or his companies have an interest in the heirs' rights is a factual issue that must be resolved before defendants' Rule 12 and SLAPP motions can be adjudicated.

**EXHIBIT F**
**207**

O'MELVENY & MYERS LLP
July 7, 2011 - Page 22

Request No. 29

- Original:  All DOCUMENTS RELATING to the formation of IP WORLDWIDE.

- Proposed:  All DOCUMENTS involved in the formation of IP WORLDWIDE,
  including, articles of organization, operating agreements, minutes, filings, business
  plans.

This request removes the "RELATING" language characterized by defendants as
overbroad and substitutes "identifying."  Through this request, DC seeks all of IP Worldwide's
formation documents.  Such documents are clearly relevant to DC's Fifth claim, which, *inter
alia*, relates to interference by Mr. Toberoff (the businessman) and his companies with DC's
rights with relation to the Siegel heirs.  Defendants have also asserted that Mr. Toberoff acted as
the Siegel heirs' lawyer from the outset of their relationship, while the only agreement under
which they operated at that time was through IP Worldwide, which is not a law firm.  Moreover,
these documents relate to DC's First claim, which seeks to determine the validity of the Shuster
heirs' termination effort and alleges, in part, that their termination fails because they lacked the
necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their
purported Superman rights to Pacific Pictures.  Documents previously produced show that
Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide,
presumably including the Shuster heirs' purported Superman interest.  Regardless of defendants'
current position on this issue, DC seeks any documents relating to it.  DC is entitled to test
defendants' representations through the discovery process.

Request No. 30

- Original:  All DOCUMENTS RELATING to the current corporate status of IP
  WORLDWIDE.

- Proposed:  All DOCUMENTS identifying the current corporate status of IP
  WORLDWIDE.

This request removes the "RELATING" language characterized by defendants as
overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying
the current status of IP Worldwide.  Such documents are clearly relevant to DC's First claim,
which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and
alleges, in part, that their termination fails because they lacked the necessary majority interest to
terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific
Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP
business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported
Superman interest.  Regardless of defendants' current position on this issue, DC seeks any
documents relating to it.  DC is entitled to test defendants' representation through the discovery
process.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 23

Request No. 32

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IP WORLDWIDE.

- Proposed:  All DOCUMENTS identifying any business plans of IP WORLDWIDE, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IP Worldwide (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities. Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representation through the discovery process.  These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 33

- Original:  All DOCUMENTS RELATING to any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

- Proposed:  All DOCUMENTS identifying any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

Request No. 34

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 24

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IP WORLDWIDE.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by IP Worldwide of interests related to Superman and/or Superboy.  Such documents are relevant to same claims and for the reasons stated in IP Worldwide Request No. 32.

**Requests for Production to Defendant IPW, LLC**

Request No. 24

- Original:  All DOCUMENTS RELATING to the formation of IPW.

- Proposed:  All DOCUMENTS involved in the formation of IPW, including, articles of organization, operating agreements, minutes, filings, business plans.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks all of IPW's formation documents.  Such documents are clearly relevant to DC's First claim, which, *inter alia*, seeks to determine the validity of the Shuster heirs' termination effort and alleges, in part, that their termination fails because they lacked the necessary majority interest to terminate due to the Shuster heirs' transfer of 50% of their purported Superman rights to Pacific Pictures.  Documents previously produced show that Pacific Pictures contributed its "current IP business" at the formation of IP Worldwide, presumably including the Shuster heirs' purported Superman interest.  Mr. Toberoff has stated at deposition that interests in rights held by IP Worldwide were assigned to IPW.  Regardless of defendants' current position on this issue, DC seeks any documents relating to it.  DC is entitled to test defendants' representations through the discovery process.

Request No. 25

- Original:  All DOCUMENTS RELATING to the current corporate status of IPW.

- Proposed:  All DOCUMENTS identifying the current corporate status of IPW.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the current status of IPW.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 25

Request No. 26

- Original:  All DOCUMENTS RELATING to the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

- Proposed:  All DOCUMENTS identifying the past and current ownership and management structure of IPW, including operating agreements, capitalization schedules, capital accounts, filings, and other financial forms.

This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying the ownership and management structure of IPW, not every transaction in which it ever engaged.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

Request No. 27

- Original:  All DOCUMENTS RELATING to any past, current, or planned business activity of IPW.

- Proposed:  All DOCUMENTS identifying any business plans of IPW, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license, or otherwise transfer rights.

DC offers this narrowed request, which removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying business plans relating to rights held by IPW (including any efforts to promote, arrange, or negotiate the sale, assignment, lease, license, or any other disposition or exploitation of rights or property), not all unrelated business activities.  Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.  These documents are also relevant to statements by Mr. Toberoff regarding efforts by his companies and him to market the Siegel heirs' and Shuster heirs' purported Superman rights and to claims in the May 13, 2003, letter from Michael Siegel alleging that Mr. Toberoff was making no efforts to market the Siegel heirs' rights, all of which DC is entitled to investigate.

Request No. 29

- Original:  All DOCUMENTS RELATING to any individual or entity that currently holds property or interests formerly held by IPW.

- Proposed:  All DOCUMENTS identifying any individual or entity that currently holds property or interests formerly held by IPW.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 26

     This request removes the "RELATING" language characterized by defendants as overbroad and substitutes "identifying."  Through this request, DC seeks documents identifying any transfers by IPW of interests related to Superman and/or Superboy, including agreements, drafts of agreements, correspondence evidencing negotiations, or numerous other documents. Such documents are relevant to the same claims and for the reasons stated in IPW Request No. 24.

## PART II

     As set forth in our June 1 letter, there are five categories of document requests for which defendants have produced no or almost no documents.  Defendants have sidestepped or ignored entirely DC's requests for clarification concerning these documents.

### A.    Agreements Between or Among Defendants

     <u>Drafts and Correspondence.</u>  Despite the many business agreements between and among defendants, you have yet to produce *any* drafts of those agreements or written communications addressing them.  To take just one example, the 2001 Pacific Pictures agreement sets forth a detailed explanation of the parties' rights and obligations and provides that "[t]he parties have *mutually participated in the negotiation and drafting* of this Agreement."  (Emphasis added.) Mr. Peary confirmed that drafts of that agreement do in fact exist:

> Mr. Petrocelli:  Okay.  The agreement that you did sign which I'll show you in a bit [the 2001 Pacific Pictures agreement], were there drafts of that that went back and forth as you recall or did you get a document, sign it, and return it?
>
> Mr. Peary:  There were drafts.

Peary Dep. Tr. 99:6-10.  The 2003 Pacific Pictures agreement, in which the Shuster heirs suddenly and inexplicably disclaimed any interest in Superboy, contains an identical provision. And in 2004, Mr. Toberoff (the businessman) sent the Shuster heirs a letter "confirm[ing]" that the 2001 and 2003 agreements "have been cancelled"—with no explanation of how, when, or why.  The drafts disclosed by Mr. Peary have not been produced, nor have any others.

     During our June 13 call, Mr. Toberoff (falsely) represented that there are no drafts of these (or any other) agreements and that he could not locate any relevant correspondence.  He suggested that such correspondence may have been destroyed as a result of his 2007 house fire. Mr. Toberoff did not clarify whether additional copies of such correspondence exist in electronic form, in the Siegel or Shuster heirs' files, in his law office's files, or in his businesses' files. Moreover, such documents should have been produced in *Siegel* at the same time as the agreements themselves in 2006—well before the 2007 fire.  *See, e.g.*, Siegel Request No. 63 ("All Writings concerning the Shuster Representatives, including but not limited to any communication or agreements between Plaintiffs and any of the Shuster Representatives.").  In light of Mr. Peary's testimony, defendants should immediately produce all drafts of the 2001 Pacific Pictures agreement, as well as drafts of all other business agreements between and among

O'MELVENY & MYERS LLP
July 7, 2011 - Page 27

defendants.  If in fact no drafts or correspondence regarding these agreements exist (aside from
those disclosed by Mr. Peary), DC is entitled to a clear and unequivocal statement from
defendants to this effect.

    <u>Conflict Disclosures and Waivers.</u>  Defendants' June 13 letter still did not address
whether there are any disclosures, waivers, or similar documents addressing the conflict of
interest between Mr. Toberoff and the Siegel and Shuster heirs, as required by California law.
*E.g.*, *Fair v. Bakhtiari*, 2011 WL 1991999 (Cal. Ct. App. May 24, 2011) (requiring attorney to
disclose, and clients to waive, conflicts of interest in writing).  Mr. Peary, however, admitted
during his June 29 deposition that at least one such document—entered into in 2010 and signed
by the Siegel heirs, Mr. Toberoff, and him—does exist.  Peary Dep. Tr. 86:2-18.  DC is entitled
to discover this document and any other conflict disclosures or waivers, including advice to seek
outside counsel.  *E. Maine Baptist Church v. Regions Bank*, 2007 WL 1445257, at *2-3 (E.D.
Mo. May 10, 2007) ("The production of conflict memoranda, new matter forms, and
correspondence regarding conflicts is not protected by the attorney-client privilege or work
product doctrine."); *Chevron USA Inc. v. Peuler*, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004)
(ordering production of conflict of interest waiver).  During our June 13 call, I expressly asked
Mr. Toberoff whether the heirs consulted with independent counsel before entering into business
agreements with his companies, and he responded:  "I don't know."

    **B.**    **Toberoff's Ownership Interest**

    Despite the objection in Mr. Toberoff's June 13 letter, there is nothing
"incomprehensible" about DC's position that defendants are required to produce documents
concerning the Toberoff defendants' ownership interest in the Siegels' or Shusters' putative
copyright termination rights.  Pursuant to the 2001 and 2003 Pacific Pictures agreements, the
Shusters transferred their Superman rights to the joint venture and agreed to divide these rights
with Pacific Pictures 50-50 if the joint venture was "terminated for any reason."  A 2004 letter
purported to "cancel" both Pacific Pictures agreements.  While defendants now claim that the
Pacific Pictures agreements were "void *ab initio*" under the Copyright Act, there are no
documents addressing what happened to the outstanding half of the Shusters' copyright interests.
DC is entitled to such documents to the extent they exist.

    **C.**    **Marketing of Purported Superman Rights**

    The Toberoff defendants have repeatedly represented—to DC, the Siegels, the Shusters,
and to the public—that there are scores of potential investors interested in buying the Siegel and
Shuster heirs' putative Superman rights and that they have endeavored to market those rights.
Defendants have only produced two pieces of evidence to back this up:  a parking pass to Fox
and an e-mail exchange with Paramount.  We asked Mr. Toberoff on our June 13 call whether
this was the totality of documents regarding his efforts to market the Superman rights, and he
responded that defendants have produced *all* such documents—there are no other
communications, calendar entries, scheduling e-mails, or similar documents.  We asked
Mr. Toberoff whether he had communicated with any other actual or potential investor, as he

O'MELVENY & MYERS LLP
July 7, 2011 - Page 28

previously claimed, but he refused to respond and advised that DC should serve interrogatories on the subject, which we did on July 1, 2011.

> **D.      Toberoff-Related Business Entities**

While we disagree with defendants' position, we have substantially narrowed these requests, as described above (PPC Request No. 31, IP Worldwide Request No. 32, IPW Request No. 27).

## PART III

There are many gaps in defendants' production beyond the five categories of documents identified in our June 1 letter, including a conspicuous absence of documents concerning Ari Emanuel, David Michaels, and the unnamed "billionaire investor."  DC intends to raise these deficiencies in a motion before the Magistrate unless defendants produce these documents or explain their absence.

> **A.      Ari Emanuel Documents**

Magistrate Zarefsky ordered defendants to produce documents all documents involving Ari Emanuel "that pertain to Superman, Superboy, the Siegels or the Shusters."  Docket No. 262 at 5.  On June 17, defendants produced a total of *seven pages* consisting of six non-substantive e-mails from Mr. Toberoff to Mr. Emanuel, most of which were merely forwarding news reports related to Superman.

In 2002, Mr. Toberoff formed the IP Worldwide joint venture with Mr. Emanuel for the sole purpose of exploiting the Siegels' putative Superman rights.  Despite this nearly ten-year partnership, defendants produced *no* substantive communications between Messrs. Toberoff and Emanuel—for example, drafts of the Toberoff-Emanuel agreement or IP Worldwide-Siegel agreement, correspondence regarding efforts to exploit the Siegels' Superman rights, documents addressing the supposed expiration of the IP Worldwide-Siegel agreement in 2005 and subsequent assignment of IP Worldwide's rights to IPW, e-mails from Mr. Emanuel responding to Mr. Toberoff's six e-mails, or any other communication from Mr. Emanuel.

Moreover, during our meet-and-confer exchanges, Ms. Brill represented that defendants were withholding numerous Ari Emanuel documents—far more than the seven pages defendants ultimately produced.  Ms. Brill's February 2011 correspondence referred to Mr. Toberoff's "long-standing relationship with Mr. Emanuel" and asserted that defendants would produce relevant documents if DC narrowed its document requests.  During our February 14 meet-and-confer discussion, Ms. Brill represented that there were many more responsive Ari Emanuel documents than defendants had produced.  Now that defendants' proposed narrowing of DC's requests has been adopted by the Court, defendants are required to produce all such documents or justify their continued withholding of documents.

O'MELVENY & MYERS LLP
July 7, 2011 - Page 29

For the reasons described above (*see*, *e.g.*, PPC Request No. 24), these documents are integral to DC's interference claims and the factual assertions in defendants' SLAPP briefing.

DC reserves its rights to file a motion seeking to compel these documents if they are not produced forthwith.

**B.    David Michaels Communications**

Toberoff Document Request No. 20 seeks:  "All DOCUMENTS RELATING to any COMMUNICATIONS YOU have had with the TOBEROFF TIMELINE AUTHOR since July 2006," and defines "YOU" to include "any PERSON … acting on [Mr. Toberoff's] behalf, including but not limited to his/their agents, employees, attorneys, and representatives." Defendants redefined "YOU" to include only Mr. Toberoff, and responded:  "Toberoff has no responsive documents to this request."

Defendants' unilateral revision of DC's document request was improper and unwarranted—defendants are required to respond to the request as written.  *See Goodrich Corp. v. Emhart Indus., Inc.*, 2005 WL 6440828, at *3-4 (C.D. Cal. June 10, 2005) (ordering production of all responsive documents in respondent's control notwithstanding broad definition of "you" or "your"); 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 34.14[2][c] (2011) (documents in attorney's possession remain in party's "control").  If in fact there have been no communications between Mr. Michaels and Mr. Toberoff or his agents, employees, attorneys, or other representatives since July 2006, defendants must state so clearly and unequivocally.

These documents are necessary for DC to determine whether defendants have endeavored to silence a key witness in this case.

**C.    "Investor" Documents**

DC's document requests asked for:  "All DOCUMENTS RELATING to any potential investors or other PERSONS who have expressed interest in purchasing or otherwise investing in any rights in SUPERMAN and/or SUPERBOY."  Mr. Toberoff has repeatedly claimed that there is (or was) an unnamed "investor" interested in purchasing the Siegels' putative Superman rights. *E.g.*, DB 029, 040, LSL 211, Q1-7.  Despite the fact that this "investor" was supposedly in regular contact with Mr. Toberoff and negotiating multi-million dollar offers, defendants have *never* produced a single communication with the investor, or any document—including a calendar entry or otherwise relating to meetings or other communications with such an investor.

Please produce all documents relating to this and any other investors.  If no such documents exist, DC is entitled to a clear and unequivocal statement to this effect.

*        *        *

**EXHIBIT F**
**215**

O'MELVENY & MYERS LLP

July 7, 2011 - Page 30


        We are available on July 11 or 12 to further discuss these issues.  As we made clear in
our July 3 e-mail, however, now that DC has substantially narrowed and clarified its document
requests, we expect that defendants will make a complete production of responsive documents on
July 15 and will not merely assert blanket objections as they have in the past.

        We reserve all rights.

                                        Very truly yours,


                                        Matthew T. Kline
                                        of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli

**EXHIBIT F**
**216**

# EXHIBIT G

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

July 25, 2011

Via E-Mail

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Matt:

Defendants write in response to the notices of deposition served on Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC ("IPWW"), and IPW, LLC ("IPW"), for deposition dates of August 10, 12, 16, and 30, 2011, respectively.

DC's July 11, 2011 letter indicated that it scheduled the depositions for these dates in light of Mr. Toberoff's vacation from July 25-August 5, 2011.  As you know, Mr. Toberoff cancelled that vacation to accommodate the depositions of Dawn Peavy and Kevin Marks, noticed by DC for August 3 and 5, respectively.

**If DC wishes to take Mr. Toberoff's deposition in advance of its August 8, 2011 deadline to file a new opposition to defendants' anti-SLAPP motion, Mr. Toberoff is available for deposition on July 28-29, 2011.**  If DC wishes to proceed on such dates, please notify us immediately.

Otherwise, Mr. Toberoff is available for deposition on August 10, 2011 as noticed, as well as the other noticed dates of August 12 and August 16, 2011.  However, he is not available on August 30, as he has rescheduled his family vacation for August 21 – September 6, 2011.

PPC is as you know dissolved, IPWW has long been inactive and the allegations in DC's complaint do not even involve IPW.  Moreover, all three were (as to PPC) and are closely-held companies of Mr. Toberoff. When Mr. Toberoff first appears for his deposition pursuant to F.R.C.P. 30(b)(1), he will also appear as the F.R.C.P. 30(b)(6) witness designated by PPC, IPWW and IPW, which will adopt his testimony.  *See, e.g., Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162–63 (D. Del. 2001); *A.I.A. Holdings, S.A v. Lehman Brothers, Inc.*, 2002 U.S. Dist. LEXIS 9218, at *18 (S.D.N.Y. May 20, 2002) ("However, common sense

**EXHIBIT G**
**217**

**TOBEROFF & ASSOCIATES, P.C.**

July 25, 2011
Re:   *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 2

teaches that in the case of relatively small, closely-held entities … there may be no difference between the knowledge of the entity and the knowledge of its principals…. A 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would be identical to his testimony as an individual…. In such a situation, there appears to be no obstacle to the entity's complying with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity."); *Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637, at *3-*4 (S.D.N.Y. Dec. 10, 2001) ("In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity. In such a situation, the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition.").

Please be advised that Mr. Toberoff will not appear for four separate 7-hour depositions as noticed by DC, and DC's attempt to get four bites at the proverbial apple is unreasonable, unduly burdensome and harassing.

Defendants will move for a protective order pursuant to F.R.C.P. 26(c) to limit the deposition testimony of Mr. Toberoff, PPC, IPWW and IPW to a single day of seven hours, and hereby request a conference of counsel pursuant to L.R. 37-1 on this subject. Defendants are available today, as well as July 26-29 and August 1-4, 2011, to meet and confer.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith G. Adams

# EXHIBIT H

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 rkendall@kbkfirm.com
Laura W. Brill (195889)
 lbrill@kbkfirm.com
Nicholas F Daum (236155)
 ndaum@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California, 90067
Telephone:   310.556.2700
Facsimile:    310.556.2705


Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN Peary, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; LAURA<br>SIEGEL LARSON, individually and as<br>personal representative of the ESTATE<br>OF JOANNE SIEGEL,<br>and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANT PACIFIC<br>PICTURES CORPORATION'S<br>RESPONSE TO PLAINTIFF DC<br>COMICS' FIRST SET OF<br>INTERROGATORIES**<br><br>Complaint Filed:  May 14, 2010<br>Trial Date:  None Set |

DEFENDANT PACIFIC PICTURES CORPORATION'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT H**
**219**

Defendant Pacific Pictures Corporation ("PPC"), by and through its attorneys, responds as follows to the First Set of Interrogatories dated July 1, 2011 (the "Interrogatories") propounded by plaintiff DC Comics ("Plaintiff" or "DC").

**I.**

**GENERAL OBJECTIONS**

PPC objects to the entire set of Interrogatories on each of the following grounds, and incorporates by reference each of the following objections into its response to each individual interrogatory within it:

1.     PPC objects to each Interrogatory to the extent it is relevant to the Fourth through Sixth state law claims for relief in DC's First Amended Complaint ("FAC").  PPC contends that its pending anti-SLAPP motion stays discovery regarding these state law claims. *See* Cal. Code Civ. Proc. § 425.16(g); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J., concurring); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Godin v. Schencks*, 2010 U.S. App. LEXIS 25980 (1st Cir. Dec. 22, 2010).

2.     PPC objects to the Interrogatories generally to the extent they exceed the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Central District of California.

3.     PPC objects to the Interrogatories to the extent that they purport to demand information protected from disclosure by the attorney-client privilege, joint interest privilege, attorney work product doctrine or any other privileges or immunities provided by the rules of this Court, statute or agreement.  Inadvertent disclosure of any information subject to any applicable privilege or doctrine is not intended to be and shall not operate as a waiver of any such privilege or doctrine, in whole or in part; nor is any such inadvertent disclosure intended to be, nor shall it constitute, a waiver of the right to object to any use of such information.

4.     PPC objects to the Interrogatories to the extent that they seek information comprising or reflecting any trade secret or other confidential or

1   proprietary information of PPC or any other entity or person.

2         5.      PPC objects to the Interrogatories to the extent that they seek

3   information which is protected from disclosure by court order, or any privacy or

4   similar rights of any person or entity.

5         6.      PPC objects to the Interrogatories to the extent that they seek

6   information and/or documents already in the possession of the propounding party on

7   the grounds such interrogatories are unnecessary and unduly oppressive and

8   burdensome.

9         7.      PPC objects generally to the definitions of the terms "YOU" and

10  "YOUR" as vague and ambiguous, overbroad and unduly burdensome.  PPC will

11  construe these terms to refer to PPC.

12        8.      PPC objects to the Interrogatories to the extent that they are vague or

13  indefinite with respect to the information sought, or are overbroad and unduly

14  burdensome.

15        9.      PPC objects to the Interrogatories to the extent that they seek

16  information which is neither relevant to the subject matter of the pending litigation

17  nor reasonably calculated to lead to the discovery of admissible evidence.

18        10.     No incidental or implied admissions are intended by PPC's responses to

19  the Interrogatories.  The supplying of any fact does not constitute an admission by

20  PPC that such fact is relevant or admissible.  The fact that PPC has responded to any

21  interrogatory is not intended to be and shall not be construed as a waiver by PPC of

22  all or any part of any objection to any interrogatory.  PPC reserves until the time of

23  trial all objections as to the relevance or admissibility of any facts provided in its

24  answers to the Interrogatories.

25        11.     The general and specific objections set forth herein are based on

26  information now available to PPC and PPC reserves the right to revise, correct, add,

27  clarify or supplement the general and specific objections and responses set forth

28  herein.

## II.

## RESPONSES TO INTERROGATORIES

Subject to, and without waiving the General Objections and qualifications above, PPC responds to each individual Interrogatory as follows:

**Interrogatory No. 1**

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 1**

PPC objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive.  PPC further objects to this request on the grounds that it is not reasonably limited in scope.  PPC objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  PPC additionally objects to this request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, PPC responds, without limitation, as follows:

None.

**Interrogatory No. 2**

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 2**

PPC objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive.  PPC further objects to this request on the grounds that it is not reasonably limited in scope.  PPC objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of

1  relevant and admissible evidence.  PPC additionally objects to this request to the

2  extent that it seeks communications or items protected by the attorney-client

3  privilege, the attorney work product doctrine and any other privilege or immunity

4  available under law or arising from contractual obligation.  Subject to and without

5  waiving the foregoing general and specific objections, PPC responds, without

6  limitation, as follows:

7       None.

8  **Interrogatory No. 3**

9       DESCRIBE in detail when any efforts YOU have made to MARKET any

10  rights involving SUPERMAN and/or SUPERBOY took place.

11  **Response to Interrogatory No. 3**

12       PPC objects to this interrogatory on the grounds that it is overbroad,

13  burdensome and oppressive.  PPC further objects to this request on the grounds that it

14  is not reasonably limited in scope.  PPC objects to this request to the extent that it

15  seeks information which is not reasonably calculated to lead to the discovery of

16  relevant and admissible evidence.  PPC additionally objects to this request to the

17  extent that it seeks communications or items protected by the attorney-client

18  privilege, the attorney work product doctrine and any other privilege or immunity

19  available under law or arising from contractual obligation.  Subject to and without

20  waiving the foregoing general and specific objections, PPC responds, without

21  limitation, as follows:

22       None.

23  **Interrogatory No. 4**

24       DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

25  potential INVESTORS concerning rights involving SUPERMAN and/or

26  SUPERBOY.

27  **Response to Interrogatory No. 4**

28       PPC objects to this interrogatory on the grounds that it is overbroad,

1  burdensome and oppressive.  PPC further objects to this request on the grounds that it

2  is not reasonably limited in scope.  PPC objects to this request to the extent that it

3  seeks information which is not reasonably calculated to lead to the discovery of

4  relevant and admissible evidence.  PPC additionally objects to this request to the

5  extent that it seeks communications or items protected by the attorney-client

6  privilege, the attorney work product doctrine and any other privilege or immunity

7  available under law or arising from contractual obligation.  Subject to and without

8  waiving the foregoing general and specific objections, PPC responds, without

9  limitation, as follows:

10         None.

11  **Interrogatory No. 5**

12         IDENTIFY any PERSON with whom YOU have COMMUNICATED

13  concerning actual and/or potential INVESTORS in rights involving SUPERMAN

14  and/or SUPERBOY.

15  **Response to Interrogatory No. 5**

16         PPC objects to this interrogatory on the grounds that it is overbroad,

17  burdensome and oppressive.  PPC further objects to this request on the grounds that it

18  is not reasonably limited in scope.  PPC objects to this request to the extent that it

19  seeks information which is not reasonably calculated to lead to the discovery of

20  relevant and admissible evidence.  PPC additionally objects to this request to the

21  extent that it seeks communications or items protected by the attorney-client

22  privilege, the attorney work product doctrine and any other privilege or immunity

23  available under law or arising from contractual obligation.  Subject to and without

24  waiving the foregoing general and specific objections, PPC responds, without

25  limitation, as follows:

26         None.

27  **Interrogatory No. 6**

28         DESCRIBE in detail when YOU have COMMUNICATED with actual or

5

DEFENDANT PACIFIC PICTURES CORPORATION'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1    potential INVESTORS concerning rights involving SUPERMAN and/or

2    SUPERBOY.

3    **Response to Interrogatory No. 6**

4        PPC objects to this interrogatory on the grounds that it is overbroad,

5    burdensome and oppressive.  PPC further objects to this request on the grounds that it

6    is not reasonably limited in scope.  PPC objects to this request to the extent that it

7    seeks information which is not reasonably calculated to lead to the discovery of

8    relevant and admissible evidence.  PPC additionally objects to this request to the

9    extent that it seeks communications or items protected by the attorney-client

10   privilege, the attorney work product doctrine and any other privilege or immunity

11   available under law or arising from contractual obligation.  Subject to and without

12   waiving the foregoing general and specific objections, PPC responds, without

13   limitation, as follows:

14        None.

15   Dated:  August 1, 2011                KENDALL BRILL & KLIEGER LLP

16

17                                          /s/ Nicholas F. Daum
                                            Nicholas F. Daum

18

19                                          Attorneys for Defendants Marc Toberoff,
                                            Pacific Pictures Corporation, IP
20                                          Worldwide, LLC, and IPW, LLC

21

22

23

24

25

26

27

28

1

## **<u>VERIFICATION</u>**

2      I declare under penalty of perjury that on information and belief the facts set

3  forth in the foregoing answers to the Interrogatories are true to the best of my present

4  knowledge and belief.

5

6  DATED:  August 1, 2011

7  _____          _____
   Marc Toberoff                        Signature
   Print Name of Signatory

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT I

1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (90072)
2    rkendall@kbkfirm.com
   Laura W. Brill (195889)
3    lbrill@kbkfirm.com
   Nicholas F Daum (236155)
4    ndaum@kbkfirm.com
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California, 90067
   Telephone:   310.556.2700
6  Facsimile:   310.556.2705

7

8  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
   Worldwide, LLC, and IPW, LLC
9

10                **UNITED STATES DISTRICT COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

12  DC COMICS,                      | Case No: CV 10-03633 ODW (RZx)

                    Plaintiff,      | Hon. Otis D. Wright II, U.S.D.J.
13
            vs.                     | **DEFENDANT IP WORLDWIDE,
14                                  | LLC'S RESPONSE TO
   PACIFIC PICTURES CORPORATION;    | PLAINTIFF DC COMICS'
15  IP WORLDWIDE, LLC; IPW, LLC;    | FIRST SET OF
   MARC TOBEROFF, an individual;    | INTERROGATORIES**
16  MARK WARREN Peary, as personal
   representative of the ESTATE OF  | Complaint Filed:  May 14, 2010
17  JOSEPH SHUSTER; JEAN ADELE      | Trial Date:  None Set
   PEAVY, an individual; LAURA
18  SIEGEL LARSON, individually and as
   personal representative of the ESTATE
19  OF JOANNE SIEGEL,
20  and DOES 1-10, inclusive,
21
                    Defendants.
22

23

24

25

26

27

28

DEFENDANT IP WORLDWIDE, LLC'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT I**
**227**

1    Defendant IP Worldwide, LLC ("IPWW"), by and through its attorneys,

2    responds as follows to the First Set of Interrogatories dated July 1, 2011 (the

3    "Interrogatories") propounded by plaintiff DC Comics ("Plaintiff" or "DC").

**I.**

**GENERAL OBJECTIONS**

6    IPWW objects to the entire set of Interrogatories on each of the following

7    grounds, and incorporates by reference each of the following objections into its

8    response to each individual interrogatory within it:

9    1.    IPWW objects to each Interrogatory to the extent it is relevant to the

10   Fourth through Sixth state law claims for relief in DC's First Amended Complaint

11   ("FAC").  IPWW contends that its pending anti-SLAPP motion stays discovery

12   regarding these state law claims. *See* Cal. Code Civ. Proc. § 425.16(g); *Shady Grove*

13   *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens,

14   J., concurring); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Godin v.*

15   *Schencks*, 2010 U.S. App. LEXIS 25980 (1st Cir. Dec. 22, 2010).

16   2.    IPWW objects to the Interrogatories generally to the extent they exceed

17   the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure or the Local

18   Rules of the United States District Court for the Central District of California.

19   3.    IPWW objects to the Interrogatories to the extent that they purport to

20   demand information protected from disclosure by the attorney-client privilege, joint

21   interest privilege, attorney work product doctrine or any other privileges or

22   immunities provided by the rules of this Court, statute or agreement.  Inadvertent

23   disclosure of any information subject to any applicable privilege or doctrine is not

24   intended to be and shall not operate as a waiver of any such privilege or doctrine, in

25   whole or in part; nor is any such inadvertent disclosure intended to be, nor shall it

26   constitute, a waiver of the right to object to any use of such information.

27   4.    IPWW objects to the Interrogatories to the extent that they seek

28   information comprising or reflecting any trade secret or other confidential or

1
DEFENDANT IP WORLDWIDE, LLC'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT I**
**228**

1   proprietary information of IPWW or any other entity or person.

2       5.      IPWW objects to the Interrogatories to the extent that they seek

3   information which is protected from disclosure by court order, or any privacy or

4   similar rights of any person or entity.

5       6.      IPWW objects to the Interrogatories to the extent that they seek

6   information and/or documents already in the possession of the propounding party on

7   the grounds such interrogatories are unnecessary and unduly oppressive and

8   burdensome.

9       7.      IPWW objects generally to the definitions of the terms "YOU" and

10  "YOUR" as vague and ambiguous, overbroad and unduly burdensome.  IPWW will

11  construe these terms to refer to IPWW.

12      8.      IPWW objects to the Interrogatories to the extent that they are vague or

13  indefinite with respect to the information sought, or are overbroad and unduly

14  burdensome.

15      9.      IPWW objects to the Interrogatories to the extent that they seek

16  information which is neither relevant to the subject matter of the pending litigation

17  nor reasonably calculated to lead to the discovery of admissible evidence.

18      10.     No incidental or implied admissions are intended by IPWW's responses

19  to the Interrogatories.  The supplying of any fact does not constitute an admission by

20  IPWW that such fact is relevant or admissible.  The fact that IPWW has responded to

21  any interrogatory is not intended to be and shall not be construed as a waiver by

22  IPWW of all or any part of any objection to any interrogatory.  IPWW reserves until

23  the time of trial all objections as to the relevance or admissibility of any facts

24  provided in its answers to the Interrogatories.

25      11.     The general and specific objections set forth herein are based on

26  information now available to IPWW and IPWW reserves the right to revise, correct,

27  add, clarify or supplement the general and specific objections and responses set forth

28  herein.

## II.

### RESPONSES TO INTERROGATORIES

Subject to, and without waiving the General Objections and qualifications above, IPWW responds to each individual Interrogatory as follows:

**Interrogatory No. 1**

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 1**

IPWW objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive.  IPWW further objects to this request on the grounds that it is not reasonably limited in scope.  IPWW objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  IPWW additionally objects to this request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, IPWW responds, without limitation, as follows:

Ari Emanuel and Marc Toberoff engaged in negotiations with Warner Bros. Entertainment Inc. regarding the sale and/or license of Joanne Siegel and Laura Siegel Larson's (the "Siegels") rights in Superman and Superboy to Warner.  Warner proposed terms that were virtually identical to its settlement proposal to the Siegels in 2001-2002.  The Siegels once again rejected such proposals.

**Interrogatory No. 2**

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 2**

DEFENDANT IP WORLDWIDE, LLC'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT I**
**230**

1    IPWW objects to this interrogatory on the grounds that it is overbroad,

2  burdensome and oppressive.  IPWW further objects to this request on the grounds

3  that it is not reasonably limited in scope.  IPWW objects to this request to the extent

4  that it seeks information which is not reasonably calculated to lead to the discovery

5  of relevant and admissible evidence.  IPWW additionally objects to this request to the

6  extent that it seeks communications or items protected by the attorney-client

7  privilege, the attorney work product doctrine and any other privilege or immunity

8  available under law or arising from contractual obligation.  Subject to and without

9  waiving the foregoing general and specific objections, IPWW responds, without

10  limitation, as follows:

11    Warner Bros. Entertainment Inc. and its then General Counsel, John Schulman,

12  4000 Warner Boulevard, Burbank, California, 91522.

13    Laura Siegel Larson, 6400 Pacific Avenue, Suite 106, Playa del Rey, CA

14  90293.

15    Joanne Siegel, deceased.

16  **Interrogatory No. 3**

17    DESCRIBE in detail when any efforts YOU have made to MARKET any

18  rights involving SUPERMAN and/or SUPERBOY took place.

19  **Response to Interrogatory No. 3**

20    IPWW objects to this interrogatory on the grounds that it is overbroad,

21  burdensome and oppressive.  IPWW further objects to this request on the grounds

22  that it is not reasonably limited in scope.  IPWW objects to this request to the extent

23  that it seeks information which is not reasonably calculated to lead to the discovery

24  of relevant and admissible evidence.  IPWW additionally objects to this request to the

25  extent that it seeks communications or items protected by the attorney-client

26  privilege, the attorney work product doctrine and any other privilege or immunity

27  available under law or arising from contractual obligation.  Subject to and without

28  waiving the foregoing general and specific objections, IPWW responds, without

1  limitation, as follows:

2      From 2003 through September 2004, mostly in July-early September 2004.

3  **Interrogatory No. 4**

4      DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

5  potential INVESTORS concerning rights involving SUPERMAN and/or

6  SUPERBOY.

7  **Response to Interrogatory No. 4**

8      IPWW objects to this interrogatory on the grounds that it is overbroad,

9  burdensome and oppressive.  IPWW further objects to this request on the grounds

10  that it is not reasonably limited in scope.  IPWW objects to this request to the extent

11  that it seeks information which is not reasonably calculated to lead to the discovery

12  of relevant and admissible evidence.  IPWW additionally objects to this request to the

13  extent that it seeks communications or items protected by the attorney-client

14  privilege, the attorney work product doctrine and any other privilege or immunity

15  available under law or arising from contractual obligation.  Subject to and without

16  waiving the foregoing general and specific objections, IPWW responds, without

17  limitation, as follows:

18      None.

19  **Interrogatory No. 5**

20      IDENTIFY any PERSON with whom YOU have COMMUNICATED

21  concerning actual or potential INVESTORS in rights involving SUPERMAN and/or

22  SUPERBOY.

23  **Response to Interrogatory No. 5**

24      IPWW objects to this interrogatory on the grounds that it is overbroad,

25  burdensome and oppressive.  IPWW further objects to this request on the grounds

26  that it is not reasonably limited in scope.  IPWW objects to this request to the extent

27  that it seeks information which is not reasonably calculated to lead to the discovery

28  of relevant and admissible evidence.  IPWW additionally objects to this request to the

1  extent that it seeks communications or items protected by the attorney-client

2  privilege, the attorney work product doctrine and any other privilege or immunity

3  available under law or arising from contractual obligation.  Subject to and without

4  waiving the foregoing general and specific objections, IPWW responds, without

5  limitation, as follows:

6        None.

7  **Interrogatory No. 6**

8        DESCRIBE in detail when YOU have COMMUNICATED with actual or

9  potential INVESTORS concerning rights involving SUPERMAN and/or

10 SUPERBOY.

11 **Response to Interrogatory No. 6**

12       IPWW objects to this interrogatory on the grounds that it is overbroad,

13 burdensome and oppressive.  IPWW further objects to this request on the grounds

14 that it is not reasonably limited in scope.  IPWW objects to this request to the extent

15 that it seeks information which is not reasonably calculated to lead to the discovery

16 of relevant and admissible evidence.  IPWW additionally objects to this request to the

17 extent that it seeks communications or items protected by the attorney-client

18 privilege, the attorney work product doctrine and any other privilege or immunity

19 available under law or arising from contractual obligation.  Subject to and without

20 waiving the foregoing general and specific objections, IPWW responds, without

21 limitation, as follows:

22       None.

23 Dated:  August 1, 2011              KENDALL BRILL & KLIEGER LLP

24

25                                     /s/ Nicholas F. Daum
                                       Nicholas F. Daum

26

27                                     Attorneys for Defendants Marc Toberoff,
                                       Pacific Pictures Corporation, IP
28                                     Worldwide, LLC, and IPW, LLC

1

## **VERIFICATION**

2      I declare under penalty of perjury that on information and belief the facts set

3 forth in the foregoing answers to the Interrogatories are true to the best of my present

4 knowledge and belief.

5

6 DATED:  August 1, 2011

7  Marc Toberoff _____        _____
  Print Name of Signatory                              Signature

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT J

1   KENDALL BRILL & KLIEGER LLP
    Richard B. Kendall (90072)
2    rkendall@kbkfirm.com
    Laura W. Brill (195889)
3    lbrill@kbkfirm.com
    Nicholas F Daum (236155)
4    ndaum@kbkfirm.com
    10100 Santa Monica Blvd., Suite 1725
5   Los Angeles, California, 90067
    Telephone:   310.556.2700
6   Facsimile:   310.556.2705

7
    Attorneys for Defendants Marc Toberoff,
8   Pacific Pictures Corporation, IP
    Worldwide, LLC, and IPW, LLC
9
                    UNITED STATES DISTRICT COURT
10
            CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
11
    DC COMICS,                          Case No: CV 10-03633 ODW (RZx)
12
                    Plaintiff,          Hon. Otis D. Wright II, U.S.D.J.
13
            vs.                         DEFENDANT IPW, LLC'S
                                        RESPONSE TO PLAINTIFF DC
14  PACIFIC PICTURES CORPORATION;       COMICS' FIRST SET OF
                                        INTERROGATORIES
15  IP WORLDWIDE, LLC; IPW, LLC;
    MARC TOBEROFF, an individual;       Complaint Filed: May 14, 2010
16  MARK WARREN Peary, as personal      Trial Date:  None Set
    representative of the ESTATE OF
17  JOSEPH SHUSTER; JEAN ADELE
    PEAVY, an individual; LAURA
18  SIEGEL LARSON, individually and as
    personal representative of the ESTATE
19  OF JOANNE SIEGEL,
20  and DOES 1-10, inclusive,
21
22                  Defendants.
23
24
25
26
27
28
                    DEFENDANT IPW, LLC'S RESPONSE
            TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1    Defendant IPW, LLC ("IPW"), by and through its attorneys, responds as

2   follows to the First Set of Interrogatories dated July 1, 2011 (the "Interrogatories")

3   propounded by plaintiff DC Comics ("Plaintiff" or "DC").

I.

## GENERAL OBJECTIONS

6    IPW objects to the entire set of Interrogatories on each of the following

7   grounds, and incorporates by reference each of the following objections into its

8   response to each individual interrogatory within it:

9    1.    IPW objects to each Interrogatory to the extent it is relevant to the

10   Fourth through Sixth state law claims for relief in DC's First Amended Complaint

11   ("FAC").  IPW contends that its pending anti-SLAPP motion stays discovery

12   regarding these state law claims. *See* Cal. Code Civ. Proc. § 425.16(g); *Shady Grove*

13   *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens,

14   J., concurring); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Godin v.*

15   *Schencks*, 2010 U.S. App. LEXIS 25980 (1st Cir. Dec. 22, 2010).

16    2.    IPW objects to the Interrogatories generally to the extent they exceed the

17   scope of Rules 26 and 33 of the Federal Rules of Civil Procedure or the Local Rules

18   of the United States District Court for the Central District of California.

19    3.    IPW objects to the Interrogatories to the extent that they purport to

20   demand information protected from disclosure by the attorney-client privilege, joint

21   interest privilege, attorney work product doctrine or any other privileges or

22   immunities provided by the rules of this Court, statute or agreement.  Inadvertent

23   disclosure of any information subject to any applicable privilege or doctrine is not

24   intended to be and shall not operate as a waiver of any such privilege or doctrine, in

25   whole or in part; nor is any such inadvertent disclosure intended to be, nor shall it

26   constitute, a waiver of the right to object to any use of such information.

27    4.    IPW objects to the Interrogatories to the extent that they seek

28   information comprising or reflecting any trade secret or other confidential or

1  proprietary information of IPW or any other entity or person.

2      5.    IPW objects to the Interrogatories to the extent that they seek

3  information which is protected from disclosure by court order, or any privacy or

4  similar rights of any person or entity.

5      6.    IPW objects to the Interrogatories to the extent that they seek

6  information and/or documents already in the possession of the propounding party on

7  the grounds such interrogatories are unnecessary and unduly oppressive and

8  burdensome.

9      7.    IPW objects generally to the definitions of the terms "YOU" and

10 "YOUR" as vague and ambiguous, overbroad and unduly burdensome.  IPW will

11 construe these terms to refer to IPW.

12     8.    IPW objects to the Interrogatories to the extent that they are vague or

13 indefinite with respect to the information sought, or are overbroad and unduly

14 burdensome.

15     9.    IPW objects to the Interrogatories to the extent that they seek

16 information which is neither relevant to the subject matter of the pending litigation

17 nor reasonably calculated to lead to the discovery of admissible evidence.

18     10.    No incidental or implied admissions are intended by IPW's responses to

19 the Interrogatories.  The supplying of any fact does not constitute an admission by

20 IPW that such fact is relevant or admissible.  The fact that IPW has responded to any

21 interrogatory is not intended to be and shall not be construed as a waiver by IPW of

22 all or any part of any objection to any interrogatory.  IPW reserves until the time of

23 trial all objections as to the relevance or admissibility of any facts provided in its

24 answers to the Interrogatories.

25     11.    The general and specific objections set forth herein are based on

26 information now available to IPW and IPW reserves the right to revise, correct, add,

27 clarify or supplement the general and specific objections and responses set forth

28 herein.

## II.

## RESPONSES TO INTERROGATORIES

Subject to, and without waiving the General Objections and qualifications above, IPW responds to each individual Interrogatory as follows:

**Interrogatory No. 1**

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 1**

IPW objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive.  IPW further objects to this request on the grounds that it is not reasonably limited in scope.  IPW objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  IPW additionally objects to this request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine and any other privilege or immunity available under law or arising from contractual obligation.  Subject to and without waiving the foregoing general and specific objections, IPW responds, without limitation, as follows:

None.

**Interrogatory No. 2**

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

**Response to Interrogatory No. 2**

IPW objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive.  IPW further objects to this request on the grounds that it is not reasonably limited in scope.  IPW objects to this request to the extent that it seeks information which is not reasonably calculated to lead to the discovery of

**EXHIBIT J**
**238**

1   relevant and admissible evidence.  IPW additionally objects to this request to the

2   extent that it seeks communications or items protected by the attorney-client

3   privilege, the attorney work product doctrine and any other privilege or immunity

4   available under law or arising from contractual obligation.  Subject to and without

5   waiving the foregoing general and specific objections, IPW responds, without

6   limitation, as follows:

7          None.

8   **Interrogatory No. 3**

9          DESCRIBE in detail when any efforts YOU have made to MARKET any

10  rights involving SUPERMAN and/or SUPERBOY took place.

11  **Response to Interrogatory No. 3**

12         IPW objects to this interrogatory on the grounds that it is overbroad,

13  burdensome and oppressive.  IPW further objects to this request on the grounds that it

14  is not reasonably limited in scope.  IPW objects to this request to the extent that it

15  seeks information which is not reasonably calculated to lead to the discovery of

16  relevant and admissible evidence.  IPW additionally objects to this request to the

17  extent that it seeks communications or items protected by the attorney-client

18  privilege, the attorney work product doctrine and any other privilege or immunity

19  available under law or arising from contractual obligation.  Subject to and without

20  waiving the foregoing general and specific objections, IPW responds, without

21  limitation, as follows:

22         None.

23  **Interrogatory No. 4**

24         DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

25  potential INVESTORS concerning rights involving SUPERMAN and/or

26  SUPERBOY.

27  **Response to Interrogatory No. 4**

28         IPW objects to this interrogatory on the grounds that it is overbroad,

1   burdensome and oppressive.  IPW further objects to this request on the grounds that it

2   is not reasonably limited in scope.  IPW objects to this request to the extent that it

3   seeks information which is not reasonably calculated to lead to the discovery of

4   relevant and admissible evidence.  IPW additionally objects to this request to the

5   extent that it seeks communications or items protected by the attorney-client

6   privilege, the attorney work product doctrine and any other privilege or immunity

7   available under law or arising from contractual obligation.  Subject to and without

8   waiving the foregoing general and specific objections, IPW responds, without

9   limitation, as follows:

10          None.

11  **Interrogatory No. 5**

12          IDENTIFY any PERSON with whom YOU have COMMUNICATED

13  concerning actual and/or potential INVESTORS in rights involving SUPERMAN

14  and/or SUPERBOY.

15  **Response to Interrogatory No. 5**

16          IPW objects to this interrogatory on the grounds that it is overbroad,

17  burdensome and oppressive.  IPW further objects to this request on the grounds that it

18  is not reasonably limited in scope.  IPW objects to this request to the extent that it

19  seeks information which is not reasonably calculated to lead to the discovery of

20  relevant and admissible evidence.  IPW additionally objects to this request to the

21  extent that it seeks communications or items protected by the attorney-client

22  privilege, the attorney work product doctrine and any other privilege or immunity

23  available under law or arising from contractual obligation.  Subject to and without

24  waiving the foregoing general and specific objections, IPW responds, without

25  limitation, as follows:

26          None.

27  **Interrogatory No. 6**

28          DESCRIBE in detail when YOU have COMMUNICATED with actual or

5
DEFENDANT IPW, LLC'S RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT J**
**240**

1  potential INVESTORS concerning rights involving SUPERMAN and/or

2  SUPERBOY.

3  **Response to Interrogatory No. 6**

4      IPW objects to this interrogatory on the grounds that it is overbroad,

5  burdensome and oppressive.  IPW further objects to this request on the grounds that it

6  is not reasonably limited in scope.  IPW objects to this request to the extent that it

7  seeks information which is not reasonably calculated to lead to the discovery of

8  relevant and admissible evidence.  IPW additionally objects to this request to the

9  extent that it seeks communications or items protected by the attorney-client

10  privilege, the attorney work product doctrine and any other privilege or immunity

11  available under law or arising from contractual obligation.  Subject to and without

12  waiving the foregoing general and specific objections, IPW responds, without

13  limitation, as follows:

14      None.

15  Dated:  August 1, 2011              KENDALL BRILL & KLIEGER LLP

16
                                        /s/ Nicholas F. Daum
17                                      Nicholas F. Daum

18
                                        Attorneys for Defendants Marc Toberoff,
19                                      Pacific Pictures Corporation, IP
20                                      Worldwide, LLC, and IPW, LLC

21

22

23

24

25

26

27

28

1

## <u>VERIFICATION</u>

2      I declare under penalty of perjury that on information and belief the facts set

3 forth in the foregoing answers to the Interrogatories are true to the best of my present

4 knowledge and belief.

5

6 DATED:  August 1, 2011

7  Marc Toberoff _____        _____

Print Name of Signatory                        Signature

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT K

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10  Facsimile:  (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12                 UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14
    DC COMICS,                          Case No. CV-10-3633 ODW (RZx)
15
                  Plaintiff,            **DISCOVERY MATTER**
16
          v.                            **PLAINTIFF DC COMICS'**
17                                       **SECOND SET OF**
    PACIFIC PICTURES                     **INTERROGATORIES TO**
18  CORPORATION, IP WORLDWIDE,           **DEFENDANT MARC TOBEROFF**
    LLC, IPW, LLC, MARC TOBEROFF,
19  an individual, MARK WARREN           **Judge**:  Hon. Otis D. Wright II
    PEARY, as personal representative of **Magistrate**:  Hon. Ralph Zarefsky
20  the ESTATE OF JOSEPH SHUSTER,
    JEAN ADELE PEAVY, an individual,
21  LAURA SIEGEL LARSON, an
    individual and as personal
22  representative of the ESTATE OF
    JOANNE SIEGEL, and DOES 1-10,
23  inclusive,

24                Defendants.

25  **PROPOUNDING PARTY**:    Plaintiff DC Comics

26  **RESPONDING PARTY**:     Defendant Marc Toberoff

27  **SET NUMBER**:           Second (Interrogatory Nos. 26-31)

28
                                    PL.'S SECOND SET OF INTERROGS.
                                       TO DEF. MARC TOBEROFF

**EXHIBIT K**
243

1         Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics hereby

2    requests that defendant Marc Toberoff respond in writing and under oath to the

3    following Second Set of Interrogatories ("Interrogatories"), in accordance with the

4    definitions and instructions contained herein, by no later than September 2, 2011.

5    **DEFINITIONS AND INSTRUCTIONS**

6        1.    "COMMUNICATION" means all written, electronic, oral,

7    telephonic, gesture, or other transmission or exchange of information, including

8    without limitation any inquiry, request, dialogue, discussion, conversation,

9    interview, correspondence, letter, note, consultation, negotiation, agreement,

10   understanding, meeting, e-mail, and all documents evidencing any verbal or

11   nonverbal interaction between any individuals or entities.

12       2.    "PERSON" means any natural person, firm, association, corporation,

13   partnership, or other legal entity or organization separately identifiable, and any

14   department(s) or division(s) therein.

15       3.    "DESCRIBE" means to set forth fully and in detail all factual

16   information and data that are responsive to the particular request seeking such

17   statement or description.

18       4.    "YOU" or "YOUR" means Marc Toberoff and, as applicable, any

19   PERSON acting on his behalf, including but not limited to his agents, employees,

20   attorneys, and representatives.

21       5.    "MARKET" means to any effort to promote, arrange, or negotiate

22   the sale, assignment, lease, license, or any other disposition or exploitation of

23   rights or property.

24       6.    "INVESTOR" means any PERSON or entity that provides money or

25   other capital in exchange for rights or property, including but not limited to an

26   investment bank, private equity firm, hedge fund, venture capital firm, mutual

27   fund, motion picture studio, entertainment production company, or individual.

28

PL.'S SECOND SET OF INTERROGS.
TO DEF. MARC TOBEROFF

**EXHIBIT K**
**244**

7.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics. No. 1*.

8.    "SUPERBOY" means the Superboy character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *More Fun Comics No. 101*.

9.    "IDENTIFY" means the following:

    a.    When used in reference to a PERSON, it means to state the person's full name, present or last known address, and present or last known business affiliation and business address;

    b.    When used in reference to an organization, it means to state the organization's full name and, if it is a corporation, partnership, or other business entity, the address of its principal place of business;

    c.    When used in reference to a DOCUMENT, it means to state, to the extent known, the DOCUMENT'S (i) type (*i.e.* letter, memo, note, e-mail); (ii) subject matter; (iii) current location; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

    d.    When used in reference to a COMMUNICATION, it means to state, to the extent known, the COMMUNICATION'S (i) date; (ii) type (*i.e.* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

- 2 -

PL.'S SECOND SET OF INTERROGS.
TO DEF. MARC TOBEROFF

**EXHIBIT K**
**245**

10. "INCLUDING" means "including, but not limited to."

11. "Any" and "All" are interchangeable.

12. The singular form includes the plural form, and vice versa.

13. Each answer must be as complete and straightforward as the information reasonably available to YOU permits. If an Interrogatory cannot be answered completely, answer it to the extent possible.

14. Whenever an Interrogatory may be answered by referring to a DOCUMENT, the DOCUMENT may be attached as an exhibit to the response and referred to in the response. If the DOCUMENT has more than one page, refer to the page and section where the answer to the Interrogatory can be found.

15. Federal Rule of Civil Procedure 33 provides these instructions, which YOU must follow when responding to these Interrogatories:

a. Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

b. The answers are to be signed by the person making them, and the objections signed by the attorney making them.

c. The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories.

d. All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

e. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

- 3 -

PL.'S SECOND SET OF INTERROGS.
TO DEF. MARC TOBEROFF

**EXHIBIT K**
**246**

16.     Each Interrogatory shall be construed independently and no Interrogatory shall be viewed as limiting the scope of any other Interrogatory.

17.     These Interrogatories impose a continuing obligation subsequent to YOUR initial responses to timely supplement YOUR responses if YOU determine that any response is incomplete or incorrect.

## **INTERROGATORIES**

Interrogatory No. 26

DESCRIBE in detail all efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 27

IDENTIFY any PERSONS with whom YOU have COMMUNICATED in connection with efforts to MARKET any rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 28

DESCRIBE in detail when any efforts YOU have made to MARKET any rights involving SUPERMAN and/or SUPERBOY took place.

Interrogatory No. 29

DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 30

IDENTIFY any PERSON with whom YOU have COMMUNICATED concerning actual or potential INVESTORS in rights involving SUPERMAN and/or SUPERBOY.

Interrogatory No. 31

DESCRIBE in detail when YOU have COMMUNICATED with actual or potential INVESTORS concerning rights involving SUPERMAN and/or SUPERBOY.

PL.'S SECOND SET OF INTERROGS.
TO DEF. MARC TOBEROFF

**EXHIBIT K**
**247**

1

2    Dated:  August 3, 2011                    Respectfully submitted,

3                                              O'MELVENY & MYERS LLP

4
                                              By: /s/ Daniel M. Petrocelli
5                                                    Daniel M. Petrocelli

6                                              Attorneys for Plaintiff DC Comics

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S SECOND SET OF INTERROGS.
TO DEF. MARC TOBEROFF

**EXHIBIT K**
**248**

1    DANIEL M. PETROCELLI (S.B. #97802)
        dpetrocelli@omm.com
2    MATTHEW T. KLINE (S.B. #211640)
        mkline@omm.com
3    CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, CA  90067-6035
     Telephone:   (310) 553-6700
6    Facsimile:    (310) 246-6779

7    PATRICK T. PERKINS (admitted *pro hac vice*)
        pperkins@ptplaw.com
8    PERKINS LAW OFFICE, P.C.
     1711 Route 9D
9    Cold Spring, New York 10516
     Telephone: (845) 265-2820
10   Facsimile:  (845) 265-2819

11   Attorneys for Plaintiff DC COMICS

12                   **UNITED STATES DISTRICT COURT**

13                   **CENTRAL DISTRICT OF CALIFORNIA**

14
     DC COMICS,                          | Case No. CV 10-3633 ODW (RZx)
15
                        Plaintiff,       | **PROOF OF SERVICE**
16
              v.                         | Hon. Otis D. Wright, II
17
     PACIFIC PICTURES CORPORATION,
18   IP WORLDWIDE, LLC, IPW, LLC,
     MARC TOBEROFF, an individual,
19   MARK WARREN PEARY, as personal
     representative of the ESTATE OF
20   JOSEPH SHUSTER, JEAN ADELE
     PEAVY, an individual, LAURA
21   SIEGEL LARSON, an individual and as
     personal representative of the ESTATE
22   OF JOANNE SIEGEL, and DOES 1-10,
     inclusive,
23
24                      Defendants.
25
26
27
28

**EXHIBIT K**
**249**

1          **PROOF OF SERVICE BY E-MAIL**

2          I am a citizen of the United States and employed in the County of Los

3   Angeles, State of California; my business address is 1999 Avenue of the Stars,

4   Suite 700, Los Angeles, California 90067.  I am over the age of eighteen years and

5   not a party to the within action.

6          On August 3, 2011, I served the following document:

7          **PLAINTIFF DC COMICS' SECOND SET OF
           INTERROGATORIES TO DEFENDANT MARC**
8          **TOBEROFF**

9   by electronic mail upon:

10         Marc Toberoff, Esq.
11         Toberoff & Associates, P.C.
           2049 Century Park East, Suite 3630
12         Los Angeles, CA 90067
13         Email:  mtoberoff@ipwla.com

14         Laura Brill
15         Kendall Brill & Klieger LLP
           10100 Santa Monica Boulevard, Suite 1725
16         Los Angeles, CA 90067
17         Email:  lbrill@kbkfirm.com

18         I declare under penalty of perjury under the laws of the United States that the

19   above is true and correct.  Executed on August 3, 2011, at Los Angeles, California.

20         SIGNATURE:

21                                    Jason H. Tokoro

22

23

24

25

26

27

28

                              - 1 -                    PROOF OF SERVICE

**EXHIBIT K**
**250**

# EXHIBIT L

O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

August 3, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

> Re:  *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

    I write to follow up on the responses and objections served on August 1 by defendants Pacific Pictures Corporation, IP Worldwide, and IPW to Plaintiff DC Comics' First Set Of Interrogatories. Every response of PPC, IPWW, and IPW is subject to a General Objection "to the Interrogatories to the extent that they purport to demand information protected from disclosure by the attorney-client privilege, joint interest privilege, attorney work product doctrine or any other privileges…." Likewise, all six responses by each company are individually made "[s]ubject to" a privilege objection.

    Although you went on to respond to each request, it is unclear whether those responses withhold any further information based on the asserted privilege. Any such withholding is improper, as the interrogatories all deal with efforts to market purported rights to third parties or communications with potential third-party investors. *See U.S. v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). None of the interrogatories seeks the substance of communications between an attorney and client, and none could, as PPC "is not a law firm," 2003 PPC Agreement ¶ 2, and both IPWW and IPW are limited liability companies owned by PPC, Ari Emanuel, and Endeavor, EN 00002-13, none of which is an attorney. As the interrogatory responses from Mr. Toberoff's business entities disclosed no such communications, we need responses from Mr. Toberoff himself. Please confirm immediately that no information has been withheld on the basis of privilege.

**EXHIBIT L**
**251**

O'MELVENY & MYERS LLP
August 3, 2011 - Page 2


      Additionally, we have attached Plaintiff DC Comics' Second Set Of Interrogatories To
Defendant Marc Toberoff, which pose the exact same questions to him as were posed to his
business entities.  During our June 13 meet-and-confer call, and as confirmed in my July 7 letter,
I asked Mr. Toberoff about his communications with actual or potential investors, and he refused
to respond, advising DC to serve interrogatories on the subject.  Please confirm immediately that
you will respond to these simple interrogatories by the date listed.

      We are available this week to meet and confer, if necessary, to discuss any issues you
have with the above.

                    Very truly yours,

                    Matthew T. Kline
                    of O'MELVENY & MYERS LLP


Enclosure

**EXHIBIT L**
**252**

# EXHIBIT M

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

August 10, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Matt:

I write in response to your August 3, 2011 letter regarding the responses of defendants Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC to DC's interrogatories.

In answer to DC's question, and as is clear from defendants' interrogatory responses, no responsive information concerning efforts to market purported rights to third parties or communications with potential third-party investors was withheld on the basis of privilege.

As to DC's second set of interrogatories to Mr. Toberoff, we will respond/object to the interrogatories pursuant to and consistent with the Federal Rules of Civil Procedure.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**EXHIBIT M**
**253**

# EXHIBIT N

**Subject:**                    FW: DC Comics v. Pacific Pictures Corp.

**From:** Seto, Cassandra
**Sent:** Thursday, August 11, 2011 7:22 PM
**To:** 'Keith Adams'; Kline, Matthew
**Cc:** Petrocelli, Daniel; Marc Toberoff
**Subject:** RE: DC Comics v. Pacific Pictures Corp.

Please see the email below sent on behalf of Matt Kline.

\*        \*        \*

Keith,

We don't follow what you mean.  If there is no ambiguity, please answer these two simple questions--yes or no.

- Are you accepting service of the interrogatories?
- Will Mr. Toberoff respond to them in substance or object on numerosity grounds?

If he objects on numerosity grounds, we will seek leave to ask these additional interrogatories, and request a Rule 37 conference to do so.

Thanks,

Matt


**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Thursday, August 11, 2011 6:36 PM
**To:** Kline, Matthew
**Cc:** Seto, Cassandra; Petrocelli, Daniel; Marc Toberoff
**Subject:** RE: DC Comics v. Pacific Pictures Corp.

Matt:

I fail to see any ambiguity in my statement. Mr. Toberoff will respond/object to DC's interrogatories within the time provided by the Rules.

Keith G. Adams
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com
http://www.ipwla.com

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

--- On **Wed, 8/10/11, Seto, Cassandra <_cseto@OMM.com_>** wrote:

1

**EXHIBIT N**
**254**

From: Seto, Cassandra <cseto@OMM.com>
Subject: RE: DC Comics v. Pacific Pictures Corp.
To: "Keith Adams" <kgadams@ipwla.com>, "Marc Toberoff" <mtoberoff@ipwla.com>
Cc: "Petrocelli, Daniel" <DPetrocelli@OMM.com>, "Kline, Matthew" <MKline@OMM.com>
Date: Wednesday, August 10, 2011, 12:49 PM

Please see the email below sent on behalf of Matt Kline.


*           *           *


Keith:


Thanks for your letter.  We don't understand what you mean by this sentence:  "As to DC's second set of interrogatories to
Mr. Toberoff, we will respond/object to the interrogatories pursuant to and consistent with the Federal Rules of Civil
Procedure."  Are you accepting service of the interrogatories and will Mr. Toberoff respond to them in substance, or do we
need to seek leave to ask these additional interrogatories?  If it's the former, we appreciate it, and think this will move
discovery along.  If it's the latter, we request a Rule 37 conference.


Thanks,


Matt


_____

**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Wednesday, August 10, 2011 9:32 AM
**To:** Petrocelli, Daniel; Seto, Cassandra; Kline, Matthew
**Subject:** DC Comics v. Pacific Pictures Corp.


Counsel:

Please see the attached correspondence.

Keith G. Adams
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com

2

**EXHIBIT N**
**255**

http://www.ipwla.com

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may
not read, copy, distribute or use this information. If you have received this transmission in error, please notify
the sender immediately by reply e-mail and then delete this message.

**EXHIBIT N
256**

# EXHIBIT O

1 | KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
2 |  *rkendall@kbkfirm.com*
Laura W. Brill (195889)
3 |  *lbrill@kbkfirm.com*
Nicholas F Daum (236155)
4 |  *ndaum@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
5 | Los Angeles, California, 90067
Telephone:   310.556.2700
6 | Facsimile:   310.556.2705

7 | Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
8 | Worldwide, LLC, and IPW, LLC

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

11 | DC COMICS,

Case No: CV 10-03633 ODW (RZx)

12 |                Plaintiff,

Hon. Otis D. Wright II, U.S.D.J.

          vs.

13 |

**DEFENDANT MARC
TOBEROFF'S RESPONSE TO
PLAINTIFF DC COMICS'
SECOND SET OF
INTERROGATORIES**

14 | PACIFIC PICTURES CORPORATION;
IP WORLDWIDE, LLC; IPW, LLC;
15 | MARC TOBEROFF, an individual;
MARK WARREN PEARY, as personal
16 | representative of the ESTATE OF
JOSEPH SHUSTER; JEAN ADELE
17 | PEAVY, an individual; LAURA
SIEGEL LARSON, individually and as
18 | personal representative of the ESTATE
OF JOANNE SIEGEL,
19 | and DOES 1-10, inclusive,

Complaint Filed:  May 14, 2010
Trial Date:  None Set

20 |

21 |

22 |                Defendants.

23 |

24 |

25 |

26 |

27 |

28 |

DEFENDANT MARC TOBEROFF'S RESPONSE
TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

**EXHIBIT O**
**257**

Defendant Marc Toberoff ("Toberoff"), by and through his attorneys, responds as follows to the Second Set of Interrogatories dated August 3, 2011 (the "Interrogatories") propounded by plaintiff DC Comics ("Plaintiff" or "DC").

# I.

## <u>GENERAL OBJECTIONS</u>

Toberoff objects to the entire set of Interrogatories on each of the following grounds, and incorporates by reference each of the following objections into his response to each individual interrogatory within it:

1.      Toberoff objects to the Interrogatories as they exceed the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Central District of California.  Toberoff further objects to the Interrogatories as improperly exceeding the permitted number of 25 total interrogatories under Federal Rule 33(a)(1).  On December 10, 2010, Plaintiff served 25 interrogatories on Toberoff, to which Toberoff served responses on January 24, 2011.  Plaintiff's current set of interrogatories includes six further interrogatories. Since service of more than 25 interrogatories is not permitted, the entire set of interrogatories is improper.

2.      Toberoff objects to each individual Interrogatory to the extent it is relevant only to the Fourth through Sixth state law claims for relief in DC's First Amended Complaint ("FAC").  Toberoff contends that his pending anti-SLAPP motion should have stayed discovery regarding these state law claims. *See* Cal. Code Civ. Proc. § 425.16(g); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1452 (2010) (Stevens, J., concurring); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Godin v. Schencks*, 2010 U.S. App. LEXIS 25980 (1st Cir. Dec. 22, 2010).

3.      Toberoff objects to the Interrogatories to the extent that they purport to demand information protected from disclosure by the attorney-client privilege, joint interest privilege, attorney work product doctrine or any other privileges or

1  immunities provided by the rules of this Court, statute or agreement. Inadvertent

2  disclosure of any information subject to any applicable privilege or doctrine is not

3  intended to be and shall not operate as a waiver of any such privilege or doctrine, in

4  whole or in part; nor is any such inadvertent disclosure intended to be, nor shall it

5  constitute, a waiver of the right to object to any use of such information.

6      4.    Toberoff objects to the Interrogatories to the extent that they seek

7  information comprising or reflecting any trade secret or other confidential or

8  proprietary information of Toberoff or any other person or entity.

9      5.    Toberoff objects to the Interrogatories to the extent that they seek

10  information which is protected from disclosure by court order, or any privacy or

11  similar rights of any person or entity.

12     6.    Toberoff objects to the Interrogatories to the extent that they seek

13  information and/or documents already in the possession of the propounding party on

14  the grounds such interrogatories are unnecessary and unduly oppressive and

15  burdensome.

16     7.    Toberoff objects generally to the definitions of the terms "YOU" and

17  "YOUR" as vague and ambiguous, overbroad and unduly burdensome. Toberoff will

18  construe these terms to refer to Toberoff.

19     8.    Toberoff objects to the Interrogatories to the extent that they are vague

20  or indefinite with respect to the information sought, or are overbroad and unduly

21  burdensome.

22     9.    Toberoff objects to the Interrogatories to the extent that they seek

23  information which is neither relevant to the subject matter of the pending litigation

24  nor reasonably calculated to lead to the discovery of admissible evidence.

25     10.   No incidental or implied admissions are intended by Toberoff's

26  responses to the Interrogatories. The supplying of any fact does not constitute an

27  admission by Toberoff that such fact is relevant or admissible. The fact that Toberoff

28  has responded to any interrogatory is not intended to be and shall not be construed as

1   a waiver by Toberoff of all or any part of any objection to any interrogatory.

2   Toberoff reserves until the time of trial all objections as the relevance or admissibility

3   of any facts provided in his answers to the Interrogatories.

4         11.    The general and specific objections set forth herein are based on

5   information now available to Toberoff and Toberoff reserves the right to revise,

6   correct, add, clarify or supplement the general and specific objections and responses

7   set forth herein.

8                       **II.**

9           **RESPONSES TO INTERROGATORIES**

10        Subject to, and without waiving the General Objections and qualifications

11   above, Toberoff responds to each individual Interrogatory as follows:

12   **Interrogatory No. 26**

13        DESCRIBE in detail all efforts YOU have made to MARKET any rights

14   involving SUPERMAN and/or SUPERBOY.

15   **Response to Interrogatory No. 26**

16        As set forth in General Objection No. 1, because the entire set of

17   interrogatories is improper as exceeding the limit of 25 total interrogatories under

18   Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff also

19   objects to this interrogatory on the grounds that it is overbroad, burdensome and

20   oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

21   reasonably limited in scope.  Toberoff also objects to this interrogatory to the extent

22   that it seeks information that is not reasonably calculated to lead to the discovery of

23   relevant and admissible evidence.  Toberoff additionally objects to this interrogatory

24   to the extent that it seeks communications or items protected by the attorney-client

25   privilege, the attorney work product doctrine and any other privilege or immunity

26   available under law or arising from contractual obligation.

27   **Interrogatory No. 27**

28        IDENTIFY any PERSONS with whom YOU have COMMUNICATED in

1  connection with efforts to MARKET any rights involving SUPERMAN and/or

2  SUPERBOY.

3  **Response to Interrogatory No. 27**

4      As set forth in General Objection No. 1, because the entire set of

5  interrogatories is improper as exceeding the limit of 25 total interrogatories under

6  Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

7  objects to this interrogatory on the grounds that it is overbroad, burdensome and

8  oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

9  reasonably limited in scope.  Toberoff objects to this interrogatory to the extent that it

10  seeks information that is not reasonably calculated to lead to the discovery of relevant

11  and admissible evidence.  Toberoff additionally objects to this interrogatory to the

12  extent that it seeks communications or items protected by the attorney-client

13  privilege, the attorney work product doctrine and any other privilege or immunity

14  available under law or arising from contractual obligation.

15  **Interrogatory No.28**

16      DESCRIBE in detail when any efforts YOU have made to MARKET any

17  rights involving SUPERMAN and/or SUPERBOY took place.

18  **Response to Interrogatory No. 28**

19      As set forth in General Objection No. 1, because the entire set of

20  interrogatories is improper as exceeding the limit of 25 total interrogatories under

21  Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

22  objects to this interrogatory on the grounds that it is overbroad, burdensome and

23  oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

24  reasonably limited in scope.  Toberoff objects to this interrogatory to the extent that it

25  seeks information that is not reasonably calculated to lead to the discovery of relevant

26  and admissible evidence.  Toberoff additionally objects to this interrogatory to the

27  extent that it seeks communications or items protected by the attorney-client

28  privilege, the attorney work product doctrine and any other privilege or immunity

1   available under law or arising from contractual obligation.

2   **Interrogatory No. 29**

3      DESCRIBE in detail all COMMUNICATIONS YOU have had with actual or

4   potential INVESTORS concerning rights involving SUPERMAN and/or

5   SUPERBOY.

6   **Response to Interrogatory No. 29**

7      As set forth in General Objection No. 1, because the entire set of

8   interrogatories is improper as exceeding the limit of 25 total interrogatories under

9   Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

10  objects to this interrogatory on the grounds that it is overbroad, burdensome and

11  oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

12  reasonably limited in scope.  Toberoff objects to this interrogatory to the extent that it

13  seeks information that is not reasonably calculated to lead to the discovery of relevant

14  and admissible evidence.  Toberoff additionally objects to this interrogatory to the

15  extent that it seeks communications or items protected by the attorney-client

16  privilege, the attorney work product doctrine and any other privilege or immunity

17  available under law or arising from contractual obligation.

18  **Interrogatory No. 30**

19     IDENTIFY any PERSON with whom YOU have COMMUNICATED

20  concerning actual and/or potential INVESTORS in rights involving SUPERMAN

21  and/or SUPERBOY.

22  **Response to Interrogatory No. 30**

23     As set forth in General Objection No. 1, because the entire set of

24  interrogatories is improper as exceeding the limit of 25 total interrogatories under

25  Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

26  objects to this interrogatory on the grounds that it is overbroad, burdensome and

27  oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

28  reasonably limited in scope.  Toberoff objects to this interrogatory to the extent that it

**EXHIBIT O**
**262**

1 seeks information that is not reasonably calculated to lead to the discovery of relevant

2 and admissible evidence.  Toberoff additionally objects to this interrogatory to the

3 extent that it seeks communications or items protected by the attorney-client

4 privilege, the attorney work product doctrine and any other privilege or immunity

5 available under law or arising from contractual obligation.

6 **Interrogatory No. 31**

7      DESCRIBE in detail when YOU have COMMUNICATED with actual or

8 potential INVESTORS concerning rights involving SUPERMAN and/or

9 SUPERBOY.

10 **Response to Interrogatory No. 31**

11      As set forth in General Objection No. 1, because the entire set of

12 interrogatories is improper as exceeding the limit of 25 total interrogatories under

13 Federal Rule 33(a)(1), Toberoff will not respond to this interrogatory.  Toberoff

14 objects to this interrogatory on the grounds that it is overbroad, burdensome and

15 oppressive.  Toberoff further objects to this interrogatory on the grounds that it is not

16 reasonably limited in scope.  Toberoff objects to this interrogatory to the extent that it

17 seeks information that is not reasonably calculated to lead to the discovery of relevant

18 and admissible evidence.  Toberoff additionally objects to this interrogatory to the

19 extent that it seeks communications or items protected by the attorney-client

20 privilege, the attorney work product doctrine and any other privilege or immunity

21 available under law or arising from contractual obligation.

22

23 Dated:  September 6, 2011           KENDALL BRILL & KLIEGER LLP

24                   By:   /s/_____

25                       Nicholas F. Daum

                      Attorneys for Defendants Marc Toberoff,

26                       Pacific Pictures Corporation, IP Worldwide,

                      LLC, and IPW, LLC

27

28

**EXHIBIT O**
**263**

1

**<u>VERIFICATION</u>**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

    I have read the foregoing **DEFENDANT MARC TOBEROFF'S**

4

**RESPONSE TO PLAINTIFF DC COMICS' SECOND SET OF
INTERROGATORIES** and know its contents.

5

6

    I am a party to this action.  The matters stated in the foregoing document are
true of my own knowledge except as to those matters which are stated on information

7

and belief, and as to those matters I believe them to be true.

8

    Executed on September 6, 2011, at Los Angeles, California.

9

    I declare under penalty of perjury under the laws of the State of California that

10

the foregoing is true and correct.

11

12

  Marc M. Toberoff

13

Print Name of Signatory                           Signature

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT P

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

September 16, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Re:    _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write to address the September 6, 2011, interrogatory responses by defendant Marc Toberoff, and defendants Mark Warren Peary and Jean Adele Peavy's responses to DC's document requests.

**Defendant Toberoff's Interrogatory Responses**

We are troubled by your tactical decision to wait 30 days to respond to DC's interrogatories only to state that defendants will not provide any substantive answer because DC's requests "exceed[] the limit of 25 total interrogatories under Federal Rule 33(a)(1)." Defendants' choice was clearly intended only to cause delay.

Having refused to answer our questions about his communications with actual or potential investors during our June 13 meet-and-confer, Mr. Toberoff advised DC to serve interrogatories on the subject.  We served the requested interrogatories on August 3 and asked you to "confirm immediately that you will respond to these simple interrogatories by the date listed."  Mr. Toberoff's associate, Keith Adams, sent a response letter on August 10 and wrote that Mr. Toberoff "will respond/object to the interrogatories pursuant to and consistent with the federal rules."  Mr. Adams did not say that Mr. Toberoff would not substantively respond to the interrogatories, or that defendants would refuse to answer on grounds that the interrogatories exceeded the number allowed by the Federal Rules.

**EXHIBIT P**
**265**

O'MELVENY & MYERS LLP
September 16, 2011 - Page 2

We sought to clarify Mr. Adams' statement and sent an email the same day asking whether Mr. Toberoff would "respond to [the interrogatories] in substance, or do we need to seek leave to ask these additional interrogatories?"  We stated that "[i]f it's the latter, we request a Rule 37 conference."  Mr. Adams responded by writing, "Mr. Toberoff will respond/object to DC's interrogatories within the time period provided by the Rules."  He did not say that DC needed to seek leave to ask these additional interrogatories, nor did he respond to our request for a Rule 37 conference by providing us with times when he was available to meet.  To be certain of defendants' position, we wrote back to Mr. Adams and asked him to answer two simple questions:  "[(1)] Are you accepting service of the interrogatories? [(2)] Will Mr. Toberoff respond to them in substance or object on numerosity grounds?"  We stated that "[i]f [Mr. Toberoff] objects on numerosity grounds, we will seek leave to ask these additional interrogatories, and request a Rule 37 conference to do so."  Defendants never responded and instead waited until September 6 to object to DC's interrogatories on numerosity grounds.

Defendants' refusal to substantively respond to DC's interrogatories is even more disconcerting given their position that the depositions of Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC, are limited to examination of Mr. Toberoff for one day of seven hours.  DC had hoped to streamline parts of the examination by receiving answers to its interrogatories, but will now be forced to go through these topics with Mr. Toberoff in full and, of course, spend other days and hours examining the companies on their activities.

Please let us know if you are willing to withdraw your objections and substantively respond to DC's interrogatories by Wednesday, September 21.  If not, please let us know when you are available next week to meet and confer to discuss these issues.

**Defendants Peary and Peavy's Document Production Responses and Objections**

Not a single document was produced to DC by Peary or Peavy with their September 6, 2011, responses to DC's second set of requests for production of documents.  Nor did either defendant provide DC with an updated privilege log identifying withheld documents.  Defendants continue to ignore their discovery obligations causing unnecessary delay and requiring DC on multiple occasions to seek the Court's assistance.  They do so, even though key depositions are scheduled for the coming weeks.

1.  Privilege Logs.  You stated in recent correspondence that defendants "anticipate" updating their privilege logs "this month," but have not provided a date certain when DC will receive the updated logs, what materials are being logged, or whether we will have these logs in advance of September 27, when depositions again begin.  Please confirm whether documents withheld by Peary and Peavy in response to DC's document requests will be included in the updated logs.

2.  Boilerplate Objections.  Peary and Peavy assert many of the same boilerplate objections they chose not to defend in entering into the parties' December 7, 2010, stipulated order.  Docket No. 133.  DC has shown that these non-specific objections are "inadequate and

**EXHIBIT P**
**266**

O'MELVENY & MYERS LLP
September 16, 2011 - Page 3

tantamount to not making any objection at all." *E.g., Walker v. Lakewood Condo. Owners Ass'n.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see* Docket No. 205 at 25-29. None of these objections has merit; all are asserted to obstruct and delay. Please confirm that defendants will withdraw these objections.

2. Peavy Will and Trust (Request Nos. 23-25). Defendants respond to each of these requests that they "will produce the responsive, non-privileged documents, if any, consistent with [their] understanding of th[e] request." No documents were produced with defendants' September 6 responses, and even now, 10 days later, DC has not received a single responsive document. Nor have defendants provided a date certain when they will produce these documents. There is no basis for defendants not to have produced these documents with their responses.

We have addressed your confidentiality concerns and offered to treat the Peavy will/trust and all related documents produced for the first time in this case as "CONFIDENTIAL" pursuant to the protective order in the *Siegel* case. Please confirm that defendants will produce all responsive documents by no later than Friday, September 23.

3. Communications with Catron, Sim, and Salkind (Request Nos. 26-28). Defendants state they "will meet-and-confer with [DC] regarding narrowing the scope of [these] request[s]," but do not propose any ways to narrow them. It is defendants' obligation to identify specifically what they believe is objectionable about each request so that DC can meaningfully respond during the parties' meet-and-confer efforts, and defendants failed to meet that obligation.

Defendants' stated objections, moreover, are without merit. There is no indication that the communications sought by DC are numerous or that defendants are not readily in possession of the documents. There is no basis to assert privilege over communications with these non-lawyer, third parties. And the relevance of the communications is apparent:

- Catron: Catron was originally identified as the administrator of the Estate of Joseph Shuster, but was replaced by Peary when the estate was probated in 2003. Peary Tr. at 214:16-216:4. DC is entitled to discover why Catron was removed, including why he was selected as administrator of the estate, whose idea it was to remove him, and whether and how he was notified. Catron also communicated with DC as the "representative of Jean Shuster Peavy." Ex. 67 (Feb. 23, 2006 Catron Email to Levitz). DC is permitted to discover the extent of the relationship between Catron and the Shusters.

- Sim: Peary and Dawn Peavy testified that they are familiar with Sim and have met him on at least one occasion. Peary Tr. at 27:4-30:15; D. Peavy Tr. at 17:20-23:1. And DC is aware of at least two letters from the Shusters to Sim. *See* Exs. 24, 66. The letters discuss the Shusters' treatment by DC, including their attendance at the premiere of "Superman Returns," and the screenplay written by Peary about the lives of Joseph Shuster and Jerry Siegel. DC is entitled to discover the complete correspondence.

**EXHIBIT P**
**267**

O'MELVENY & MYERS LLP
September 16, 2011 - Page 4

- Salkind:  Peary confirmed that he optioned to Illya Salkind his screenplay about the lives of Joseph Shuster and Jerry Siegel.  Peary Tr. at 20:11-24.  The relevance of these screenplays is discussed below, and the relevance of Peary seeking to market Superman-related rights is obvious.  DC is entitled to discover the correspondence between Salkind and the Shusters concerning Peary's screenplay, including Salkind's efforts to license, market, or otherwise exploit the screenplay.

    4.  Screenplays / Joseph Shuster File (Request Nos. 29-35).  DC urges defendants to produce the requested screenplays and related documents as there is no basis for these documents to be withheld.  There can be no dispute that these documents are relevant to DC's claims in this case and defendants' defenses.  The screenplays, as described by Peary, revolve around the lives of Joseph Shuster and Jerry Siegel, including the creation and development of Superman.  *E.g.,* Peary Tr. 18:23-21:10.  We understand that, in these screenplays, DC and Warner Bros. are depicted as laudable good companies that came to the aid of Shuster and Siegel in the later years of their lives.  This depiction, which Peary authored, directly contradicts your arguments in briefing in this case, as well as Peary's testimony, that Mr. Shuster or his family still felt aggrieved by DC or Warner Bros. in the later years of Mr. Shuster's life.  DC is entitled to discover the screenplays and the related documents on which Mr. Peary based them.

    5.  Dawn Peavy Documents (Request No. 37).  To our knowledge, defendants have never produced a single document or communication from Dawn Peavy; not in this case and not in the *Siegel* cases.  Nor have any communications involving Dawn been logged.  Is it defendants' position that no responsive documents involving Dawn exist?  She mentioned at her deposition having discussions about Superman with at least one co-worker.

    6.  Peary Records (Request No. 38).  It cannot be disputed that DC is entitled to discover all documents in the Shusters' possession, custody, or control relating to Superman, Superboy, the Siegels, Joseph Shuster, Jerome Siegel, Warner Bros., and DC.  DC's requests seek the production of just those types of documents, limited to the files maintained by Peary as he described them at his deposition.  Peary Tr. 40:9-14, 50:24-52:7.  Peary knows exactly where these documents are located and there is no indication that non-responsive documents are kept in the same location.  These documents need to be produced.

    Please confirm that defendants will withdraw all objections and produce (redacted if need be) or log all responsive documents by Friday, September 23.  If not, please let us know when you are available next week to meet and confer, pursuant to Rule 37, to address these issues.

    All of DC's rights are reserved.

                                    Very truly yours,

                                    Daniel M. Petrocelli
                                    of O'MELVENY & MYERS LLP

cc:    Matthew T. Kline, Esq.

**EXHIBIT P**
**268**

# EXHIBIT Q

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

September 22, 2011

<u>Via E-Mail</u>

Daniel Petrocelli
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corp., et al.*</u>, Case No. 10-CV-03633 ODW (RZx)

Dan:

I write in response to your September 16, 2011 letter regarding Mr. Toberoff's responses to DC's interrogatories and Mr. Peary and Ms. Peavy's discovery responses and document production.

<u>Mr. Toberoff's Interrogatory Responses:</u>  As set forth in my August 10, 2011 letter, "[a]s to DC's second set of interrogatories to Mr. Toberoff, he will respond/object to the interrogatories pursuant to and consistent with the Federal Rules of Civil Procedure."

Pursuant to F.R.C.P. 30(a)(1), DC is limited to twenty-five interrogatories of Mr. Toberoff "[u]nless otherwise stipulated or ordered by the court."  DC made a clear strategic decision to use all twenty-five of its interrogatories to Mr. Toberoff on a single subject in its first set of interrogatories.  DC's second set of interrogatories was nothing more than an attempt to dodge the consequences of that decision.  There was plainly no stipulation or order pursuant to F.R.C.P. 30(a)(1) that permitted DC to serve additional interrogatories on Mr. Toberoff.

DC's suggestion that at a meet-and-confer on June 13 Mr. Toberoff somehow "advised" that DC serve the interrogatories is self-serving and unfounded.  Mr. Toberoff simply stated that DC's tactic of consistently using meet-and-confers to cross-examine and take discovery was improper and that interrogatories were more appropriate.

DC now complains that defendants "did not say that Mr. Toberoff would not substantively respond to the interrogatories, or that defendants would refuse to answer on the grounds that the interrogatories exceeded the number allowed by the Federal Rules."  DC is obviously aware of the Federal Rules, and defendants repeatedly stated that Mr. Toberoff would "object/respond" to the interrogatories pursuant to the Rules.  DC did not miss defendants' meaning, and responded

**EXHIBIT Q**
**269**

**TOBEROFF & ASSOCIATES, P.C.**

September 22, 2011
Re:      *DC Comics v. Pacific Pictures Corp.*
Page:    2 of 3

by requesting that defendants confirm that Mr. Toberoff would "substantively respond" to the
interrogatories, to which we did not agree.

DC requests that the parties meet-and-confer, but defendants do not understand DC's basis for a
meet-and-confer.  Does DC seek to move to compel responses to the interrogatories, or does DC
seek leave of the Court to propound additional interrogatories?

The issue would also appear to be moot in light of Mr. Toberoff's imminent deposition
scheduled for September 27, 2011.

Lastly, defendants reject DC's assumption that it will have "days and hours" to question Mr.
Toberoff beyond his initial deposition on September 27.

Peary/Peavy Document Production:  Mr. Peary's and Ms. Peavy's non-confidential documents
responsive to DC's requests will be produced this week.  As stated, Ms. Peavy will produce her
confidential documents such as her will (though it is hardly relevant to DC's claims) once the
parties have a protective order in place in this action.  We will shortly address DC's counter-draft
of our proposed protective order in separate correspondence.

*Privilege Logs:*  As stated in my September 6, 2011 letter, defendants anticipate that they will
update their privilege logs this month.

*Purported Boilerplate Objections:*  DC has never "shown [that] these non-specific objections are
'inadequate.'"  In fact, Magistrate Zarefsky *rejected* DC's identical argument in DC's motion to
compel that sought to overrule defendants' supposedly "boilerplate" objections.  Docket No.
262.  The Court has never ruled on this issue in DC's favor. Just because Mr. Peary and Ms.
Peavy stipulated on December 6, 2010 to withdraw many of their objections to DC's *prior*
discovery requests does not mean that they cannot fully object to DC's subsequent requests.

*Communications with Catron, Sim and Salkind:*  These requests are all grossly overbroad, and
seek "all communications" whatsoever with these individuals at any time and are in no way
limited to issues relevant to DC's claims, or even *Superman.*

Defendants specifically objected to the requests on these grounds: "[Defendant] also objects to
this request on the grounds that it is compound, overbroad, burdensome and oppressive, as it
seeks all communications with [the individual] regardless whether the communications are
related to the litigation at issue or are likely to lead to the discovery of admissible evidence."  *See*
Peary Response Nos. 26-28; Peavy Response Nos. 26-28.

DC's assumptions that ordinary individuals keep all copies of every piece of correspondence –
especially when DC's requests, as written, plainly seek correspondence from the 1990's and
earlier – are also unfounded.

**EXHIBIT Q**
**270**

**TOBEROFF & ASSOCIATES, P.C.**

September 22, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 3

*Screenplays:*  As defendants understand it, DC's theory of relevance is that Mr. Peary may have depicted DC as a "laudable" company in his *fictional* screenplay, and that this would somehow "directly contradict" Mr. Peary's testimony that the Shuster family felt aggrieved by DC. The argument makes little sense and does more to underscore the irrelevance of Mr. Peary's screenplay to this case than to support it.

*Dawn Peavy Documents:*  DC's continued focus on Dawn Peavy is difficult to understand. Defendants informed DC long ago, and Dawn Peavy testified at her deposition, that she knows virtually nothing about this case or any relevant issue.  The most that DC can point to is that she "mentioned at her deposition having discussions about Superman with at least one co-worker." Unsurprisingly, there is no responsive correspondence between Dawn and Jean and/or Mr. Peary to produce or log.

*Peary Records:*  Defendants dispute DC's claim that it is entitled to every document in defendants' possession related in any way to Superman or to Joseph Shuster.  DC is certainly not entitled to every document somehow "related" to defendants' brother/uncle.  Nonetheless, defendants produce herewith the "Shuster File," as maintained by Mr. Peary.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**EXHIBIT Q**
**271**

# EXHIBIT R

11-2003 12:03 PM                              1 310 827 7227              P.02

Laura Siegel Larson
6400 Pacific Avenue #106
Playa Del Rey, CA 90293

July 11, 2003

Dear Michael,

Thank you for your May 13th letter. I hope you received the sympathy card from my mother and me with our condolences over the loss of your mother.

This is my first opportunity to answer your letter due, in part, to my health but also to the extremely time-consuming and complex nature of my divorce which is far from over. In fact, I have to work on aspects of it every day. It is especially difficult because my ex-husband is a lawyer representing himself and he is using every trick in the legal system to complicate matters.

One of the many issues I am dealing with involves the Copyright Terminations. He is trying to get the Court to award him half of my rights to Superman and other properties created by our father, claiming they should be treated as community property. This is a particularly difficult fight because there are no legal precedents for a case like mine and finding a lawyer who knows both Copyright Termination Law and California Divorce and Family Law is like looking for a needle in a haystack. My divorce attorney is doing her best but it's a tough fight. The Judge doesn't know anything about Copyright Law. The decision that will be made in my case in a few weeks will set the precedent for all heirs of author-creators who receive intellectual property rights through Termination and later go through a divorce. It would be a tragedy not only for me but for all intellectual property creators and their heirs if the true intent of the Copyright Law is ignored and this issue is lost.

Now to the issues you raised in your letter. There are many so I will try to group my answers so I don't miss anything. Because I am still pressed for time I am writing the following in outline form. It is simpler for me that way and, I hope, clearer.

<u>Outline of Topics:</u>

<u>Our opinion regarding the Time Warner-DC offer:</u>
    -It was a bogus offer filled with unacceptable land mines.
    -They wanted us to <u>warrant we had no rights</u> which is completely false.
    -They insisted on a deal that included characters that had nothing to do with Superman.
    -They wanted us to sign away the ability to get anything additional if the copyright law
        changes to give creators and their families additional rights or if an extension of time
        is one day given to rights holders before the property goes into the public domain.
    -They even wanted us to sign away the public domain rights we'd one day have.
    -As a result of Time Warner's hardball tactics, we feared that we would have trouble
        collecting any future money from them.
    -It was a bad and unreasonable deal.

LSL 00482

**EXHIBIT R**
**272**

UL-?13-2003 12:03 PM                                        1 310 827 7227              P.03

-You and Don Bulson stated that you couldn't believe how bad the document was that they
    had written.

Our opinion as to why this has not been like other "contract negotiations":
-Time Warner is a huge, and we believe, arrogant company.
-They took months to respond to each issue all along the way and their responses were
    unacceptable, self-serving and one-sided.
-We believe their lawyers are particularly heartless and that it is their common practice to use
    every ounce of their leverage to grind people in negotiations.
-This conflict has a long, tortured history and Time Warner doesn't want to be viewed as
    losing it.
-They want to make an example of us so that other creators and their heirs won't go after
    their rights by Termination or otherwise.

Marc Toberoff and the Shuster interest:
-Marc does not control the Superman copyright. He has been hired to do a job.
-Marc does not own the Shuster interest. He is a lawyer hired by Joe Shuster's estate.
-In 2013, Marc doesn't "take" the copyright from Time Warner, Shuster's estate could
    reacquire rights as we have via Terminations. Then the Shusters would have to
    negotiate a deal with Time Warner.
-The Shuster rights are completely separate from the Siegel rights.
-Time Warner/DC will own the Shuster rights until they vest with the Shusters in 2013 at the
    earliest.

We went to Marc to talk about him representing the Siegels. Marc did not pursue us:
-We fired Kevin Marks and Bruce Ramer because they were insisting we take a bad TW/DC
    deal. You'll remember that you, Don Bulson and we were shocked when Kevin
    Marks said that if asked to, he would testify against us in court.
-Neither Kevin Marks nor Don Bulson informed us that Marc Toberoff had contacted Marks
    and you about the Superman rights until months after it had taken place.
-Kevin Marks had turned Marc away saying we had a deal with DC when we did not.
-Marc did not call my mom nor me.
-My mom called the Shuster family to see what the Shusters were doing.
-The family gave Marc's number to my mom and she called him after we had fired Ramer
    and Marks.
-We felt Marc grasped our situation very well and was sympathetic to author's rights.
-Marc Toberoff has no plans to produce a Superman movie.

Why the original investor left:
-Kevin Marks told Marc we had a deal with Time Warner/DC.
-Neither Kevin Marks nor Don Bulson responded to the interest of the investor.
-Marc told the above to the investor who found another place to invest his money.
-Marc did not know we did not have a deal with TW/DC until later when we contacted him.

LSL 00483

**EXHIBIT R**
**273**

<u>With Marc's assistance, a new Notice of Termination regarding Superboy was sent out:</u>
- We did this to further assert the Siegel rights to this character.
- My mom advanced the $4,000 filing fees to the Copyright Office in November 2002.
- A copy of the $4,000 check which was recently processed by the Copyright Office is enclosed.
- The canceled check was not sent to my mom by her bank until recently. This was after we sent the itemization of other expenses to Don Bulson.
- Your 25% of this expense is $1,000. We are also sending this to Don and it will be included in the settling of the account before the money being held in trust is forwarded to you by Marc.

<u>Unfortunately we've discovered that The Spectre Termination did not vest for the Siegel family:</u>
- Kevin Marks repeatedly told my mom not to pay the fees to the Copyright Office for the copyright filing while he was negotiating with Time Warner. He said she shouldn't waste thousands of dollars of her money for the filing fees because Time Warner/DC was going to include payment for The Spectre in a deal. She told him several times that she wanted to send in the fees but he kept telling her it wasn't a good time and it was unnecessary.
- Kevin did not tell us there was a time limit on when the fees could be paid.
- When negotiations were terminated, we found out from the Copyright Office it was too late to pay the fees.
- The window to reacquire our share of the Spectre rights through Termination is, unfortunately, no longer open.

<u>Why Marc has not been negotiating with Time Warner:</u>
- The fact that Time Warner doesn't know what to expect from us since we broke off negotiations and turned down their last offer gives us strength.
- By not running to them right away, we do not appear desperate and needy, willing to take a bad deal.
- Timing the negotiations is an art.
- When we were in our last negotiations with Time Warner, they were moving ahead on a Superman movie with a top director. TW was trying to sign the director and actors to a three picture deal. Now even a single film appears to be on hold indefinitely. The director left the project and stars are repeatedly turning down offers to play the role of Superman.
- We believe that with far less happening on the Superman movie right now, our negotiating leverage with Time Warner is less than when they offered us that bad deal. Right now, there's nothing really happening so there is no motivation for them to wrap up a deal with us.

<u>Why there is a buyout offer from an investor for your interest only:</u>
- You have been saying you needed money badly, were out of work and had big bills.
- Marc asked our permission to present the investor's offer to you and we decided not to stand in your way if you want to accept it.
- My interests are too entangled due to my divorce.

Page 3

LSL 00484

**EXHIBIT R**
**274**

-We have not received an offer from the investor. Apparently the investor wants some stake
in Superman but does not want to pay the higher amount that would be required to
buy 100% of the Siegel interest (as opposed to your 25%).

<u>Why I think any investor would offer less than Time Warner did in its last offer:</u>
-It is a risky investment.
-Any investor would want some protection and a worthwhile profit on his investment.
-There is no immediate or guaranteed payback.
-Your interest is only a passive financial interest (25% of what we get) with no decision
making power.
-The investor may well face legal expenses and ongoing litigation with Time Warner in the
future. For instance, we may have to sue to have a Court define the "profits" we
participate in, to combat Time Warner/DC's "creative bookkeeping" or for other
reasons that we can't currently predict.
-It is a situation that sounds similar to one in which businesses give immediate money to
beneficiaries of Wills who do not want to wait until the Will goes through Probate
to receive their money. The beneficiaries always get less if they do this than if they
wait for the Will to go through Probate and Wills are more certain than this.

<u>Your belief that you have something to sell independently:</u>
-We empathize with the fact that this will be upsetting to you, but we have recently learned
that under the law, you do not have the right to sell a copyright interest because since
you did not take part in the actual Termination, you do not have legal title to the
Siegel copyright interest.
-You only have a right to receive 25% of the money that we receive, if any.
-In addition, we believe that you are not allowed to sell that passive financial interest to a
third party without our approval.
-We can't approve even an attempt to sell your passive financial interest to Time Warner
because we believe it would be destructive to the overall Siegel interest.
-We would, therefore, have no choice and would be forced to hold you accountable for any
harm to us.
-We will, however, give approval for a sale by you to a third party monitored by Marc
Toberoff, if you want it, as long as it is not Time Warner, DC Comics, or any
affiliated company.

<u>Why Time Warner/DC will not buy your interest (or would offer you far less than 25% of their last
offer):</u>
-Since Time Warner would know that we wouldn't give approval for you to approach them,
they might see dealing with you as subjecting them to additional liability.
-If you approached them, it would show weakness and a division among us which Time
Warner would take full advantage of and use against all of us.
-Even an attempt by you to separately sell to Time Warner would weaken us all in their eyes.
-Because Time Warner would get so little from you--a passive financial interest (25% of
what we receive, if anything)--that would be reflected in a very low-ball amount of
money offered to you.

Page 4

LSL 00485

**EXHIBIT R**
**275**

In conclusion, the Termination process and the unsuccessful negotiations with Time Warner have taken a long time and we have no idea when or if we will ever reach a fair and acceptable settlement. I know you are not happy about this. It doesn't make my mom and me happy either but this is the unfortunate reality of dealing with Time Warner which we all face.

For the reasons listed above, we will not give approval for you to go to Time Warner/DC Comics or its affiliates regarding a buyout which, we believe, would be a grave mistake from both your and our points of view.

We won't stand in your way if you decide you want to take the buyout from the investor that Marc has found but that decision has to be yours and yours alone.

On another matter, we are surprised that you have not yet made the arrangements to get the money that is being held in trust for you. We completed the very detailed volumes of the proof of expenses for you on April 16, 2003. Marc sent them to Don Bulson to give to you but Don recently told Marc that you and he still haven't looked at them. We put a lot of time and work into finding and xeroxing all our bills for you. We hope you will look at the materials soon so that we can put that behind us.

I hope this letter has answered your questions and clarified key points that you raised in your last letter. Please let us know what you decide to do.

Best regards from my mom and me and once again, our sincere condolences on the loss of your mother. It must have been very hard for you. We are so sorry.

Sincerely,

*Laura*

Laura

Enclosure

LSL 00486

**EXHIBIT R**
**276**