1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:    (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:    (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  DC COMICS, | Case No. CV 10-3633 ODW (RZx) |
| 15           Plaintiff, | **DISCOVERY MATTER** |
| 16           v. | **DC COMICS' NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT FURTHER DEPOSITION OF DAWN PEAVY** |
| 17  PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | |
| 18 | DECLARATIONS OF MATTHEW T. KLINE AND CASSANDRA SETO, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH |
| 19 20 21 22 | **Judge**:          Hon. Otis D. Wright II
**Magistrate**:   Hon. Ralph Zarefsky |
| 23 24  Defendants. | **Hearing Date**:       Feb. 13, 2012
**Hearing Time**:       10:00 a.m.
**Courtroom**:          540 |
| 25 26 | **Discovery Cutoff**:   None Set
**Pretrial Conference**:   None Set |
| 27 | |
| 28 | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 13, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, California in Courtroom 540, plaintiff DC Comics will and hereby does move the Court for leave to conduct further deposition of Dawn Peavy.

This motion is made pursuant to Rules 26, 30, and 37 of the Federal Rules of Civil Procedure and Local Rule 37-2 on the grounds that defendants' withholding of documents that contradict Dawn Peavy's testimony provides good cause for her further deposition.  DC seeks leave to depose Dawn Peavy for nor more than 90 minutes with examination limited to the topics of the two recently disclosed documents, and will accommodate Dawn Peavy's preferences as to time and place of the deposition.

Pursuant to Local Rule 37-1, the parties attempted to resolve this dispute, but were unable to do so.  Pursuant to Central District Local Rule 37-2.4, and as explained the Declaration of Matthew T. Kline filed concurrently herewith, DC is forced to submit this as a motion rather than a joint stipulation because defendants have improperly refused to provide their opposition in s timeline manner in accordance with Local Rule 37-2.2.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently-filed Declarations of Matthew T. Kline and Cassandra Seto and exhibits in support thereof; any additional briefing that may be filed; all exhibits, files, and records on file in this action; matters of which judicial notice may be taken; and such

DC'S NOTICE OF MOT. & MOT. FOR LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

1    additional submissions and argument as may be presented at or before the hearing

2    on this motion.

3    Dated:        January 23, 2012              Respectfully Submitted,

4                                                O'MELVENY & MYERS LLP

5

6                                                By: /s/ Daniel M. Petrocelli

7                                                    Daniel M. Petrocelli
                                                     Attorneys for Plaintiff DC Comics

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DC'S NOTICE OF MOT. & MOT. FOR
                                                LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ................................................... 3

III. ARGUMENT .................................................................................................. 10

    A.   DC Is Entitled To Re-Examine Dawn Regarding The Peavy Will .... 10

    B.   DC Is Entitled To Depose Dawn Peavy Regarding The 2011 Pacific Pictures Agreement And Her Mother's Competency To Sign It ............................................................................................. 11

IV.  CONCLUSION ............................................................................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dixon v. Certainteed Corp.*,
    164 F.R.D. 685 (D. Kan. 1996) ........................................................... 10

*Kress v. Price Waterhouse Coopers*,
    2011 U.S. Dist. LEXIS 126224 (E.D. Cal. Nov. 1, 2011) ................................. 10

*Perry v. Kelly-Springfield Tire Co., Inc.*,
    117 F.R.D. 425 (N.D. Ind. 1987) ........................................................ 10

*St. Clair v. U.S.*,
    21 F.R.D. 330 (S.D.N.Y. 1958) ......................................................... 10

OTHER AUTHORITIES

FED. R. CIV. P. 26(b) ................................................................. 10

FED. R. CIV. P. 30 .................................................................. 10

FED. R. CIV. P. 30(a)(2)(A)(ii) ....................................................... 10

FED. R. CIV. P. 30(d)(1) ............................................................. 10

W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1374
    (Rutter 2011) ..................................................................... 10

## I.    INTRODUCTION

DC seeks leave to depose Dawn Peavy for no more than 90 minutes, and for a second time in this action (following her earlier three-hour deposition), in light of the disclosure of two key documents that defendants withheld until a month *after* her deposition—one of which had been in defendants' possession for years, but they refused to produce, and the other of which they created *the day before her deposition* to try (unsuccessfully) to moot one of DC's claims.  DC is willing to take Dawn Peavy's deposition via videoconference, to pay for her to travel to Los Angeles to give the testimony, and/or to take the deposition on the weekend, in the morning, or in the evening to accommodate her work schedule.

The first document that defendants withheld was a will that Dawn Peavy's mother, defendant Jean Peavy, executed (the "Peavy Will"), in which she disposed of her putative rights in Superman.  Defendants produced the Peavy Will *after* both Dawn Peavy and her brother, defendant Mark Peary, were deposed and questioned as to its contents, and despite the fact that the Peavy Will was responsive to DC's document requests, which had been served six months prior.  The terms and validity of the Peavy Will are essential to (a) ascertaining Peary's standing and ability to act as the authorized representative of the Shuster Estate in this litigation; (b) assessing the conduct of Peary and defendant Marc Toberoff in procuring Jean Peavy's purported consent to the transactions and agreements at issue in DC's claims; and (c) evaluating the credibility of Peary, Dawn Peavy, and Toberoff.

The terms of the actual Peavy Will are inconsistent with, and contradict, both Peary's and Dawn Peavy's sworn testimony about its contents.  Both testified that, as siblings, they shared equally under the will—and that this is what Peary told his sister about the will.  The actual will states that Peary is entitled to his mother's *entire* estate unless he predeceases his mother.  This stark inconsistency (which Peary and Toberoff have concealed from Dawn Peavy) bears directly DC's claims in the case and Peary's and Toberoff's credibility.

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

The second document defendants withheld is a letter agreement signed by Toberoff, Peary, and Jean Peavy the day before Dawn Peavy's deposition—a day on which Dawn Peavy, Toberoff, Peary, and Jean Peavy met.  In this self-serving 2011 agreement between the Shuster heirs, Toberoff, and his now-defunct company Pacific Pictures, the parties "confirmed" that despite contrary language in earlier Pacific Pictures agreements, the Shusters had *not* transferred to Pacific Pictures or Toberoff a 50% ownership interest in their putative rights in Superman.  This "2011 Pacific Pictures Agreement" was created only *after* DC filed this lawsuit, *after* DC directed its First, Third, and Fourth and Sixth Claims at its contents, *after* Peary admitted in deposition that Toberoff told him the Pacific Pictures agreements were "unlawful," and *after* DC refuted Peary's argument that a 2004 "cancellation" of the earlier Pacific Pictures agreements had transferred the Shusters' putative copyright interests back to the Shusters, away from Toberoff and his companies.

Jean Peavy's capacity to understand or lawfully execute the 2011 Pacific Pictures agreement is in serious doubt, and DC should have been afforded the opportunity to examine Dawn Peavy regarding her mother's ability to understand and execute the agreement.  Starting in 2010, defendants argued Jean Peavy was too infirm to sit for a deposition.  Both Peary and Dawn Peavy then testified her health had so significantly declined that she had difficulty understanding issues and communicating.  DC has not deposed Jean Peavy, nor did it press her children concerning the full details of her health and mental capacity, given the sensitivity of these matters and Dawn Peavy's express desire not to discuss the subject.  Then one month later—and in connection with filing their reply brief on their now-defeated SLAPP motion—defendants sprung the 2011 Pacific Pictures Agreement on DC.

DC asked defendants for an hour to 90 minutes to depose Dawn Peavy on issues related to the 2011 Pacific Pictures Agreement and the Peavy Will. Defendants have refused.  Dawn Peavy was never deposed in the related *Siegel* litigation, and the topics of the short, new deposition that DC seeks will be limited

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

1    to these recently discovered documents, the ways in which Dawn Peavy was

2    misled, and Jean Peavy's capacity to sign the 2011 Pacific Pictures Agreement.

3    **II.    RELEVANT FACTUAL BACKGROUND**

4        *1. The 2011 Pacific Pictures Agreement*

5        As alleged in DC's complaint, the Toberoff Defendants improperly induced

6    the Shuster heirs to repudiate Jean Peavy and Frank Shuster's 1992 Agreement with

7    DC, in which the Shusters assigned all rights they would ever have in Superman to

8    DC and, instead, to sign illicit agreements purporting to assign those same rights to

9    Toberoff's entertainment company, Pacific Pictures.  Docket No. 49, First Am.

10   Comp. ("FAC") ¶¶ 6, 58-65, 174-179.  As Judge Wright held in denying

11   defendants' SLAPP motion, these Pacific Pictures agreements "gut[ted]" the 1992

12   Agreement and Toberoff obtained them in his role as a *businessman*—not as a

13   lawyer.  Docket No. 337 at 2-3, 5-7.

14       The 2001 and 2003 Pacific Pictures Agreements created a Joint Venture that

15   Pacific Pictures and the Shuster heirs owned 50-50.  In the 2001 and 2003

16   contracts, the Shuster heirs assigned all of their putative rights in Superman to the

17   Joint Venture.  Docket Nos. 305-54, 305-55.[1]  The 2001 and 2003 agreements also

18   provided that, "in the event of termination by [the Shusters] for any reason … all

19   Rights will be held fifty percent (50%) by the [Shusters] and fifty percent (50%) by

20   [Pacific Pictures Corporation]."  Docket Nos. 305-54 ¶ 8, 305-55 ¶ 7.

21       In 2004, the Shuster heirs and Toberoff signed a new Pacific Pictures

22   agreement that purported to "cancel" the earlier agreements.  Docket No. 163-7.  As

23   DC showed in a series of briefs—and in the course of Mark Peary's deposition—

24   this cancellation effectively transferred 50% of the heirs' purported Superman

25   rights, going forward, to Toberoff and his company.  *E.g.,* Docket Nos. 49 ¶¶ 9, 58-

26   _____

27   [1] For example, the 2001 Pacific Pictures Agreement defined the rights that the
     Shuster heirs were "assigning" to include all "rights, claims, title, copyrights and
     interests in and to each character, story element, and indicia associated with …
28   'SUPERMAN' [and] Superboy."  Docket No. 305-54 ¶ 1.

64, 169; 305-37 at 1310:3-1314:6, 1316:9-15, 1434:14-1440:5; 307 at 6-9; 334 at

11-17.  Peary testified (and Toberoff argued) that they had made an *oral* agreement

returning the putative Superman rights to the Shusters, *e.g.*, Docket Nos. 305-37 at

1371:13-23; 312 at 4-6, but DC showed how such an oral understanding could not

supersede or overcome the plain language of the 2001 and 2003 Pacific Pictures

Agreements or the integration clauses that they contained, Docket Nos. 305-37 at

1310:1-1314:3, 1325:9-1337:1, 1432:19-1439:1; 307 at 6-9; 334 at 11-17.

Peary also admitted in deposition that Toberoff told him the 2001 and 2003

Pacific Pictures Agreements were "unlawful," Docket No. 305-37 at 1310:1-

1314:3, 1325:9-1337:1, and all of the defendants admitted in briefing that the

agreements are "void" under the copyright laws.  Docket Nos. 78 at 8; 90 at 16-24.

Some 15 months *after* DC filed this lawsuit, two months *after* Peary was

deposed, and one month *after* Dawn Peavy was deposed, defendants disclosed in

the reply brief on their renewed SLAPP motion yet another new Pacific Pictures

agreement.  This latest agreement was purported to have been executed by them on

August 2, 2011—the day before Dawn Peavy's deposition—in Santa Fe, New

Mexico.  Docket No. 312 at 7-8.  The 2011 Pacific Pictures Agreement provides:

> This is to confirm your and our understanding that the retainer
> agreement between Mark Warren Peary, Jean Adele Peavy and the
> Law Offices of Marc Toberoff (now Toberoff & Associates, P.C.),
> dated as of November 23, 2001 *[but which defendants now admit was
> executed on September 10, 2004, Docket No. 305-39 (Request No. 6)]*
> (the "Retainer Agreement"), completely replaced and superseded the
> November 23, 2001 agreement between Pacific Pictures Corporation,
> Jean Adele Peavy and Mark Warren Peary, as well as the October 27,
> 2003 agreement between Pacific Pictures Corporation and Mark
> Warren Peary (the "PPC Agreement(s)"), and that no provisions of the
> PPC Agreements, including paragraph 8 of the 2001 PPC Agreement
> and paragraph 7 of the 2003 PPC Agreement [which assigned the
> Shusters' putative Superman rights], survived or had any continuing
> force or effect after the Retainer Agreement was executed.
>
> This also serves to confirm your and our understanding that the
> September 10, 2004 letter between Pacific Pictures Corporation, Mark
> Warren Peary and Jean Adele Peavy totally cancelled the PPC

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

Agreements, and that no term of the PPC Agreements, including paragraph 8 of the 2001 PPC Agreement and paragraph 7 of the 2003 PPC Agreement, was intended to survive such cancellation. Docket No. 314-2 at 118-19.

DC wishes to depose Dawn Peavy about this agreement because it is not remotely clear that her mother, Jean Peavy, was competent to understand or execute it. Starting in July 2010, defendants argued that Jean Peavy was too infirm to sit for a deposition. *E.g.*, Docket Nos. 64 at 3; 64-4, ¶ 7. The Court ordered that Jean Peavy could only be examined using written questions, and DC has yet to depose her. Docket No. 74. When DC asked Peary about his mother's health, and whether she understood the 1992 Agreement she signed or letters she sent DC up through 1999, he affirmed that her mental capacity was fine in the 1990s. Docket No. 305-37 at 1256:8-1258:3. He said, however, that after her stroke in 1999, her "faculties are such that I don't think she completely understands what's going on with this [lawsuit]." *Id.* at 1139:6-8. Peary also admitted that he kept his mother largely in the dark about his early efforts to recapture Joe Shuster's copyright and she relies on him almost completely to address all matters related to the termination and litigation that has ensued. *Id.* at 1138:10-1139:12, 1212:10-1223:15, 1266-1267:21.

Dawn Peavy was also examined briefly about her mother's health; when asked a few questions, she said the subject was upsetting, and DC moved on to other topics. In her limited testimony, Dawn testified her mother's health was poor, Seto Decl. Ex. A at 11:13-22; that she had difficulty understanding issues, *id.* at 55:8-10; and that when asked whether her mother was "in a state right now where she could be signing legal documents," she replied, "She can sign her name."

> Q. But she has a hard time communicating with you verbally?
> A. Yes.
> Q. Does she have a hard time understanding things?
> A. (Witness nods.) *Id.* at 55:4-13.

DC ended the examination on this subject because Dawn said the issue was upsetting and because it had *no idea* that Toberoff had asked Jean Peavy *the day*

DC'S NOTICE OF MOT. & MOT. FOR LEAVE RE: FURTHER D. PEAVY DEPO

*before* to execute the 2011 Pacific Pictures Agreement.  That 2011 Pacific Pictures

Agreement was plainly responsive to DC's long-ago served discovery requests;[2]

DC had pressed Toberoff repeatedly in advance of Peary and Peavy's depositions to

produce all such documents, *e.g.*, Docket Nos. 125, 160, 205, 207-10, 207-12; and

even though Toberoff defended Dawn Peavy's deposition and the parties met and

conferred on document issues before the deposition and after it, Toberoff *never*

disclosed the existence of the 2011 Pacific Pictures Agreement until a month later,

in his SLAPP reply, Docket No. 314-2 at 118-19.  Toberoff withheld the document

even though Dawn Peavy testified that she, her mother, and brother had all met

with Toberoff the day before her deposition—the very day the 2011 Pacific Pictures

Agreement was purportedly signed.  Seto Decl. Ex. A at 12:8-13:9, 14:11-13.

> 2. *Jean Peavy's Will*

DC's document requests dating back to 2010 also called for the production of

Jean Peavy's will, which, if defendants' termination notices are valid, would

bequeath her rights in Superman.[3]  Defendants, however, never produced her will,

and Mark Peary first disclosed its existence during his June 2011 deposition.

---

[2] *E.g.*, Docket No. 161-16 at 173 (Peary Request No. 1 ("All agreements between or among YOU and any DEFENDANTS regarding the SHUSTER HEIRS' purported rights in SUPERMAN and/or SUPERBOY.")); Docket No. 207-5 at 17 (Toberoff Request No. 2 ("All agreements between or among YOU and any DEFENDANT RELATING to the agreements between or among YOU and any DEFENDANT."); Toberoff Request No. 10 ("All DOCUMENTS RELATING to your past, current, or potential ownership interest in any rights in SUPERMAN and/or SUPERBOY.")); *id.* at 45 (Pacific Pictures Request No. 2 ("All agreements between or among YOU and any DEFENDANTS regarding the SHUSTER HEIRS' purported rights in SUPERMAN and/or SUPERBOY.")).

[3] *E.g.*, Docket No. 162 at 183 (Jean Peavy Request No. 6 ("All DOCUMENTS relating to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.")); Docket No. 161-16 at 173 (Peary Request No. 6 ("All DOCUMENTS relating to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY.")); Docket No. 207-5 at 18 (Toberoff Request No. 14 ("All DOCUMENTS RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY")).

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

Docket No. 305-37 at 1178:10-1179:4.  In response to DC's question about who would benefit under the will from proceeds from the asserted Shuster Superman interest, he said:

> A.  She [my mother, Jean Peavy] -- she has expressed that she wants any proceeds to go into a trust for me and my sister.
> Q.  Does such a trust exist?
> A.  Not yet.
> Q.  Does you mother have a will?
> A.  Yes.
> Q.  Have you seen it?
> A.  Yes.
> Q.  Does it name you as the executor?
> A.  I believe.
> *Q.  Does it distribute her estate equally between you and your sister, Dawn?*
> *A.  I believe.*
> Q.  Does it distribute the estate directly to Dawn and you or to trusts of which Dawn and you are beneficiaries?
> A.  It doesn't -- it doesn't state "trust" in the will, but that's -- that's her intention.
> Q.  How do you know that's her intention?
> A.  We've talked about it.  *Id.* (emphasis added).

When DC deposed Dawn concerning the will, she said:

> Q.  You understand, though, that that you brother -- you understand that your lawyer here today, Mr. Toberoff, and your brother are seeking to get millions of dollars for your family based on the alleged "Superman" rights that your family holds; correct?
> A.  Yes.
> Q.  You understand that; correct?
> A.  Yes.
> *Q.  And you also understand that you and your brother split the proceeds of your mother's estate 50/50 in her will; correct?*
> *A.  Yes.*  Seto Decl. Ex. A at 38:9-22 (emphasis added).

DC asked her basis for understanding the Will's terms.  She said:

> Q.  Have you seen a copy of your mother's will?
> A.  No.
> Q.  Do[] you know that it names you as a beneficiary?
> A.  Yes.
> Q.  How do you know that?
> A.  They told me.
> Q.  Who is "they"?

A.  My brother [Mark Peary] and her [Jean Peavy]…. *Id.* at 53:14-23.

Q.  You understand that your family is claiming an interest in certain
rights --
A.  Correct.  I understand that.
Q.  -- related to "Superman."  You understand that; correct?
A.  Yes.
Q.  And those rights come from the fact that your Uncle Joe Shuster
was the original illustrator; correct?
A.  Correct.
*Q.  And when your brother shares 50/50 under your mother's will, is it
your expectation that whatever those rights are -- and I know they're a
legal definition -- that's one of the assets?*
*A.  That we'll split 50/50, yes.  Id.* at 104:25-105:14 (emphasis added).

DC asked Toberoff for a copy of the Peavy Will in a conference immediately

after the deposition.  *Id.* Ex. B at 122.  DC made clear at both Peary's and Peavy's

depositions that it reserved the right to continue either examination in light of

defendants' incomplete document productions.  Docket No. 305-37 at 1461:15-

1462:5; Seto Decl. Ex. A at 113:4-115:8.  Defendants refused to produce the Peavy

Will in response to DC's existing discovery requests.  Seto Decl. Exs. B at 122; E

at 148.  To moot the issue, DC served additional requests for production on Peary

and Dawn Peavy directed at the Peavy Will.  *Id.* Exs. C; D (Requests 23-25).

Defendants refused to comply with these requests, claiming that "DC was

well-aware … that Jean Peavy could have a will, and that such documents were not

part of the Shusters' production in December, 2010."  *Id.* Ex. E at 148.  Defendants

then objected the Peavy Will was confidential and could not be produced absent a

protective order.  *Id.* Ex. M at 204.  DC agreed that the Will—and any drafts of it or

related trust documents, which Peary's testimony suggested existed, Docket No.

305-37 at 1178:4-1179:22—could be treated as "Confidential" pursuant to the

protective order in place in the *Siegel* case.  Seto Decl. Ex. N at 214-15.

After several weeks of further delay, *id.* Exs. N-P, defendants finally

produced the Peavy Will, *id.* Ex. Q.  Contrary to the deposition testimony of both

Peary and Dawn Peavy, the Peavy Will states:

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

> Upon my death or upon being declared legally missing for one month
> *Mark Warren Peary … shall be sole beneficiary of my estate*….
>
> If he does not survive me or is declared legally missing for at least one
> month, Dawn Laura Peavy … shall be the sole beneficiary of my
> estate. *Id.* at 235.

One of the reasons Dawn Peavy testified that she paid so little attention to the Shuster termination notice, the related litigation, Peary's work as the executor for his mother's estate, and Peary's business dealings with Toberoff *is that she trusted her brother, Mark. Id.* Ex. A at 42:6-14, 43:16-45:2, 58:10-18, 63:11-65:24 ("I don't speak to [Peary] about anything of the legal fight …. I trust whatever he's doing."). And as noted above, Dawn said she trusted brother her Mark when he told Dawn she shared 50% under their mother's will, Seto Decl. at 53:14-23, 104:25-105:14—a will Peary admitted he helped his mother prepare only *after* he started working with Toberoff to reclaim Joe Shuster's copyrights, Docket No. 305-37 at 1138:10-1139:12, 1178:10-1179:4, 1212:10-1223:15, 1266:16-1267:21.

The contents of the Peavy Will cast Peary's credibility—a key issue in this case—in serious doubt. It shows he misled his sister on an incredibly important matter, when he is accused of working with Toberoff improperly to convince his mother to repudiate contractual agreements she made with DC and enter into improper contracts with Toberoff that interfere with DC's rights. As part of Peary and Toberoff's scheme, Peary convinced Jean Peavy to decline to serve as executor of the Shuster Estate and convinced Dawn Peavy to nominate him to do so—all to her obvious detriment. Docket No. 334-7 at 14-17.

The Peavy Will—and Mark and Dawn's testimony concerning its contents—equally casts Toberoff's credibility in doubt. He claims to represent Dawn Peavy as counsel, but obviously allowed her to be misled about her actual rights.

DC has asked to depose Peary and Dawn Peavy concerning the Peavy Will and their testimony and statements concerning its contents. Seto Decl. Exs. R, T, U, W. Defendants have flatly refused. *Id.* Exs. S, V.

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

1    III.    ARGUMENT

2            A.    **DC Is Entitled To Re-Examine Dawn Regarding The Peavy Will.**

3            Rule 30 sets a default limit in federal cases of one deposition per deponent of

4    seven hours.  FED. R. CIV. P. 30(a)(2)(A)(ii).  A party must seek leave of court to

5    depose a person for a second time, and the court "*must allow additional time* … if

6    needed to fairly examine the deponent or if the deponent, another person, or any

7    other circumstance impedes … the examination…."  FED. R. CIV. P. 30(d)(1); *see*

8    FED. R. CIV. P. 26(b).  Most such motions are granted, *see Perry v. Kelly-

9    Springfield Tire Co., Inc.*, 117 F.R.D. 425, 426 (N.D. Ind. 1987), and DC need only

10   show "good cause" to take Dawn Peavy's second deposition, *see* W. Schwarzer *et

11   al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1374 (Rutter 2011) ("Rutter").

12           "Good cause" exists if an "examination reveals that documents have been

13   requested but not produced"—as is the case here.  FED. R. CIV. P. 30 advisory

14   committee note; *see* Rutter § 11:1374 ("'Good cause' for such order may include:

15   new documents have been produced.").[4]  Defendants created the need for DC to re-

16   depose Dawn Peavy by failing to produce the Peavy Will earlier.  In addition to

17   withholding the Will improperly, defendants are at fault for Peary testifying falsely

18   about its contents, and Toberoff allowing both Peary and Dawn to do the same.

19   Neither witness ever corrected their testimony on the subject, Seto Decl. Exs. R at

20   238; W at 245, and DC should be allowed to examine Dawn concerning the Peavy

21   Will, and all of her conversations in which defendants misrepresented its contents.

22           The extent to which Peary provided false testimony during his deposition and

23   misled Dawn Peavy about the contents of the Peavy Will is necessary to assess

24   _____

25           [4] *Accord Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996)
     ("good cause" to redepose in negligence action where defendant failed to produce
26   safety report written by witness); *St. Clair v. U.S.*, 21 F.R.D. 330, 331 (S.D.N.Y.
     1958) (granting leave to redepose where matters sought to be examined were "only
27   recently disclosed"); *Kress v. Price Waterhouse Coopers*, 2011 U.S. Dist. LEXIS
     126224, at *5-6 (E.D. Cal. Nov. 1, 2011) ("'Good cause' for an order exists where
28   … new documents have been produced.").

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

1   Peary and Toberoff's conduct in convincing Jean to consent to the Pacific Pictures

2   agreements, including the transfer of the Shusters' putative Superman rights to the

3   Pacific Pictures joint venture.  Discovery concerning the terms and validity of the

4   Peavy Will is also relevant to determining Peary's standing and ability to act as the

5   representative of the Shuster Estate.  Peary has engaged in significant misconduct

6   as executor of the estate, including failing to distribute the assets of the estate to his

7   mother in a timely fashion, Docket Nos. 334 at 9-10, 334-9 at 23-24, and

8   fraudulently inducing his sister to sign a declaration appointing him as executor

9   when he has lied to her about her rights, Docket No. 334-7 at 14-17.

10   **B.    DC Is Entitled To Depose Dawn Peavy Regarding The 2011 Pacific**

11   **Pictures Agreement And Her Mother's Competency To Sign It.**

12   Just one day after her mother Jean signed the 2011 Pacific Pictures

13   Agreement, Dawn Peavy testified that her mother had a hard time understanding

14   things and communicating.  DC terminated its already brief examination on the

15   subject of Jean Peavy's health because (a) it had no idea that Toberoff induced her

16   to sign yet another Pacific Pictures agreement the day before Dawn Peavy's

17   deposition; and (b) questions concerning her mother's health upset Dawn.

18   Jean Peavy's competence to execute the 2011 Pacific Pictures Agreement—

19   and whether that agreement somehow moots any claims in this case—is directly in

20   dispute.  Docket Nos. 322 at 1-2; 324 at 1.  The question bears on DC's First and

21   Third Claims for Relief, as well as its Fourth and Sixth Claims, which seek to fully

22   uncover and invalidate the web of agreements that the Toberoff Defendants used to

23   "gut" DC's rights vis-à-vis the Shusters.  Docket Nos. 49, FAC ¶¶ 3-9,58-65, 112-

24   24, 165-79, 187-89; 307 at 1-3, 6-9, 13-15, 17-19, 22-23; 334 at 1-20, 23-25; 337 at

25   2-6.  The issue also bears directly on the credibility of defendants Peary and

26   Toberoff, including given the representations they have made concerning her

27   health.  Docket Nos. 64 at 2-5; 64-4, ¶ 7; 305-37 at 1139:6-8, 1256:8-1258:3.

28

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2

1        If defendants are willing to stipulate that Jean Peavy was not competent to

2   execute the 2011 Pacific Pictures Agreement (which they have refused to do thus

3   far, Seto Decl. Exs. S, V), DC has no need to examine Dawn Peavy on the subject.

4   As its stands, however, DC needs to depose Dawn Peavy on the subject and

5   concerning the day on which she, her brother, and her mother met with Toberoff

6   and Jean Peavy purportedly executed the 2011 Pacific Pictures Agreement. *Id.* Ex.

7   A at 12:8-13:9, 14:11-13; Docket No. 314-2 at 118-19.

8        DC is willing to make all reasonable compromises to take Dawn Peavy's

9   deposition—including taking it on a weekend, in Santa Fe or Los Angeles, or via

10  videoconference.  DC also agrees to limit the examination to 90 minutes—which

11  means in total, Dawn Peavy will be examined for less than five hours in this case.

12  **IV.    CONCLUSION**

13       For the foregoing reasons, DC's motion should be granted.

14  Dated:           January  23, 2012                    Respectfully Submitted,

15                                                         O'MELVENY & MYERS LLP

16

17                                                         By: /s/ Daniel M. Petrocelli

18                                                              Daniel M. Petrocelli
                                                              Attorneys for Plaintiff DC Comics

19

20

21

22

23

24

25

26

27

28

DC'S NOTICE OF MOT. & MOT. FOR
LEAVE RE: FURTHER D. PEAVY DEPO

OMM_US:70400145.2