# EXHIBIT 33

# CONFIDENTIAL

## Ip worldwide


*free no punch*
*To Joel Handler*

9595 Wilshire Blvd., Suite 811
Beverly Hills, CA 90212
Tel: (310)246-3100; Fax: (310) 246-3101

---

### FACSIMILE COVER PAGE

| TO: Ariel Z. Emanuel | FAX: 310-248-2033 |
| --- | --- |
| FROM: Marc Toberoff | PAGES ( including cover ) : 7 |
| DATE : 6/3/02 | RE: AE/PPC IPW Agreement |

**COMMENTS:**

**Confidential**

Attached as requested is an executed copy of the agreement dated February 2, 2002 between Ariel Emanuel and Pacific Pictures Corp. regarding IP Worldwide, LLC.


RECEIVED
JUN 3 2003
Tom McGuire

---

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

EN00001

**EXHIBIT 33**
273

CONFIDENTIAL

## MEMORANDUM OF AGREEMENT

The following sets forth the deal terms of the agreement between Pacific Pictures Corporation f/s/o Marc Toberoff ("PPC") and Ariel Emanuel ("AE") to form a joint venture ("Newco") to acquire and exploit intellectual property rights ("IP"):

### A.    Basic Structure

Newco will be a separate entity (probably a limited liability company ("LLC") whose equity will be owned 50% by PPC; 40% by AE, 10 % by Endeavor.

### B.    Contributions to Newco.

   1.    From PPC:

      (a)    PPC's current IP business
(subject to pre-existing commitments and exclusions per Appendix "I" and ¶ D below)

      (b)    Marc Toberoff's ("MT") exclusive IP services;
- IP legal skills;
- IP contacts, precedent and goodwill;
- Access to extensive IP research (6 years) and IP hit list;

   2.    From AE:

      (a)    Annual Overhead of $          + ppi) plus

1

EN00002

**EXHIBIT 33**
**274**

**CONFIDENTIAL**

(

C.      Annual Allocation of Gross Receipts:

1.      PPC will be entitled to the first $        as deferred salary for year
1. AE will next recoup his overhead expenditure for year 1 ($        ). Any
remaining gross receipts in year 1 will be divided as set forth below.  In year 2,
PPC will then be entitled to the next $        as deferred salary for year 2. AE
will next recoup his overhead expenditure for year 2 ($        ). To the extent
PPC and AE were not paid their respective $1 million and $        in years 1
and 2 respectively, those sums will carry over to subsequent years in the same
recoupment priority. Following said recoupment, Newco gross receipts will be
distributed 50% to PPC, 40% to AE, and 10% to Endeavor.  All revenues derived
from Newco IP go through Newco, excluding commissions on third party
Endeavor clients. It is the intention of the parties to share fairly in the values
generated by transactions hereunder.

If Newco is entitled to less than 100% of payments for certain IP,
yet it is arranged for Endeavor to receive 10% of 100% of said IP payments,
then, in such case, Endeavor will not also commission Newco's less than 100%
IP payment, and the above distribution of Newco gross receipts will be adjusted
so that the net effect is that PPC receives 50% of the aggregate gross receipts,
AE receives 40% and Endeavor 10%.

2.      Without obligation to spend money, if AE opts to invest additional
money in Newco to acquire certain IP for a profit, AE will be entitled to recoup its
investment from gross receipts, plus a 20% return, with the balance of gross
receipts distributed per ¶ C 1 above. If AE/Newco doesn't invest in certain IP
after 30 days of its introduction to AE/Newco, MT will be free to set up said IP
outside of Newco after notice to AE.

D.      PPC's Current IP/Allocation of Gross Receipts

1.      On PPC's pre-existing IP assets (as set forth in Appendix I ¶ A) that
are not set-up, Newco has the right to participate in the revenue stream if AE or
Endeavor attaches a key element and/or actually sets up the project during the
Term as follows: Newco receives 50% of 100% of PPC revenues from the IP
(excluding Producer fees); Endeavor in addition receives 10% of MT Producer
fees and 100% of its third party client commissions.

2.      On PPC's projects that are already set up (as set forth in Appendix I
B) ¶ D1 above applies if the Rights revert or return to PPC by some other means
(turnaround, expiration of option) during the Term. Otherwise, if AE or Endeavor
contributes something material to greenlight a project already set up by MT/PPC,

CONFIDENTIAL

Newco receives 25% of 100% of PPC revenues from the IP (excluding Producer fees); Endeavor in addition receives 10% of MT Producer fees and 100% of its third party client commissions.

    3.    With respect to the legal disputes identified in Appendix I C, if there is an opportunity for AE to contribute services to settle such disputes, MT will negotiate with AE a reasonable fee to AE, subject to AE's settlement of such disputes.

E.    MT's Producer fees

    Newco will not be actively engaged in film production. MT, personally, will be attached as a Producer to Newco IP and personally receive screen credit and a fee (fixed and contingent) for such services outside of Newco to be negotiated by MT in good faith with the financier/distributor of such IP derived projects. Endeavor will receive an agent's commission of 10% of such MT Producer fees.

F.    Additional AE Right

    1.    AE has the absolute right to decline to participate in certain IP in which case any such IP deals are outside Newco and PPC directly receives 100% of the IP and producer proceeds, if any.

G.    Term

    The Term shall be two years, commencing on or about March 1, 2002 once this agreement is executed and Newco's offices and principal staff are in place.

H.    Dissolution of the Venture

    Upon dissolution, Newco assets acquired during the Term will be owned by the parties in the same proportion as their equity in Newco as tenants in common, and gross receipts from assets acquired or assets set up during the Term will continue to be divided and payable per the terms of this Agreement. Pre-existing PPC assets set forth in Appendix 1 remain owned by PPC unencumbered.

I.    Dispute Resolution

    In the event of any disputes between the parties concerning this agreement, any such dispute will be resolved first by meaningful informed discussions, chaired by a mutually approved mediator. If those discussions do not result in a resolution the parties will submit any such dispute to binding

3

EN00004

**EXHIBIT 33**

276

CONFIDENTIAL

expedited arbitration before a single arbitrator familiar with the entertainment
business.

J.    General

      The parties will in good faith execute such further documents as are
necessary or desirable to carry out the purposes and intent of this agreement.
The parties contemplate that they will enter into a longer form agreement(s)
incorporating the terms hereof, but until such time or in the event no such longer
agreement is executed, this agreement is and will remain binding.

      This agreement contains the full understanding of the parties and
supersedes all prior or contemporaneous understandings whether written or oral
with respect to the subject matter hereof and may not be modified except in
writing signed by the party to be bound. The parties acknowledge that they have
not signed this agreement in reliance on any promise or representation not
expressly set forth herein. This agreement may not be assigned by either party.
This Agreement shall bind and inure to the benefit of the parties and their
respective heirs and executors. Executed facsimile copies of this agreement shall
be valid and acceptable with the same force and effect as executed originals.

      This agreement shall be construed and applied pursuant to the laws of the
State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____          Date: _2_/_12_/_02_
Ariel Emanuel

Pacific Pictures Corporation


_____          Date: _2_/_12_/_02_
By: Marc Toberoff, President


4                                    EN00005

**EXHIBIT 33**
277

CONFIDENTIAL

Ariel Emanuel - w – Pacific Pictures Corporation

APPENDIX 1

REDACTED

EN00006

EXHIBIT 33
278

T-582   P.007/007   F-860

# CONFIDENTIAL

Ariel Emanuel - w – Pacific Pictures Corporation

### APPENDIX 1 (Continued)

C.    Legal Claims/Litigation (initialed due to confidentiality)

JS Claims

REDACTED

6

EN00007

**EXHIBIT 33**
**279**

CONFIDENTIAL

# IPW

AUG 1 9 2004

Tom McGuire

August 17, 2004

<u>Via 1st Class Mail</u>

Tom McGuire, Esq.
Endeavor Talent Agency
9601 Wilshire Boulevard
3rd Floor
Beverly Hills, CA  90212

Dear Tom:

Enclosed please find the amended Winding-Up Agreement for IP Worldwide, LLC executed by all parties on August 17, 2004.

Thank you for assistance in getting this done.

Regards,

Marc Toberoff

EN00008

EXHIBIT 33
280

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, for the Term plus the Extended Term the Company incurred costs totaling $          (of which $          was invested by AE, $          was advanced by Endeavor, and $          was advanced by PPC for remaining costs accounts payable for the Extended Term), plus Endeavor advanced $          to cover Company salaries for the period July 1-15, 2004 (bringing the total advance from Endeavor to $          ).

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003), AE has heretofore received distributions from Company totaling $

Whereas, PPC has heretofore received its deferred salary for Year 1 of the Company's operations.

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

REDACTED

EN00009

**EXHIBIT 33**
**281**

CONFIDENTIAL

1.    <u>Newco</u>

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    <u>Assignment of Assets to Newco</u>

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    <u>Bookkeeping Adjustments</u>

Upon execution hereof, (i) AE will reimburse to PPC the sum of $        ( for remaining costs and accounts; (ii) AE will reimburse to Endeavor the sum of $        (the money Endeavor advanced during the Extended Term minus (iii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $        (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    <u>Distribution of Revenues</u>

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $        to PPC (f/s/o Marc Toberoff) as deferred accrued salary for Year 2; thereafter,

b.    The sum of $        to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

c.    The sum of $        to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

REDACTED

2

EN00010

**EXHIBIT 33**
**282**

CONFIDENTIAL

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, IP Worldwide, LLC and Endeavor hereby forever relieve, release and discharge each other, IPW, LLC and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder.  The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express

3

EN00011

**EXHIBIT 33**
**283**

CONFIDENTIAL

terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.   Dispute Resolution

a.   In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.   The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.   The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.   General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies

4

EN00012

**EXHIBIT 33**
**284**

CONFIDENTIAL

of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:

Date: 8.17.04

Ariel Emanuel

Pacific Pictures Corporation

Date: 8.17.04

By: Marc Toberoff, President

IP Worldwide, LLC

By: _____ Date: 8.17.04
    Marc Toberoff, Member

By: _____
    Ariel Emanuel, Member

Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency

Date: 8.17.04

By: Tom McGuire, General Counsel

5

EN00013

**EXHIBIT 33**
**285**

CONFIDENTIAL

## EXHIBIT "A"

## IP Worldwide, LLC Contracts

1.    Agreement:    IP Worldwide and Joanne Siegel and Laura
                     Siegel Larson
      Date:          As of October 3, 2002 (extended March 29, 2004)
      RE:            Superman (Jerome Siegel's 50% interest in US Copyright
                     via section 304 termination)
      Term:          Until 4/23/05.

      Agreement:    IP Worldwide and Joanne Siegel and Laura
                     Siegel Larson
      Date:          As of October 3, 2002
      RE:            Superboy (Jerome Siegel's 100% interest in US Copyright
                     via section 304 termination)
      Term:          Until 4/23/05.

      Agreement:    IP Worldwide and Joanne Siegel and Laura
                     Siegel Larson
      Date:          January 21, 2002
      RE:            Conflict waiver re purchase of Michael Seigel's Rights to
                     Superman, Superboy and Spectre

REDACTED

EN00014

EXHIBIT 33
286

CONFIDENTIAL

REDACTED

7

EN00015

**EXHIBIT 33**
**287**

CONFIDENTIAL

REDACTED

8

EN00016

EXHIBIT 33
288

CONFIDENTIAL

REDACTED

9                                    EN00017

EXHIBIT 33
289

CONFIDENTIAL

**EXHIBIT "B"**

REDACTED

EN00018

**EXHIBIT 33**
**290**

CONFIDENTIAL

REDACTED

11                                          EN00019

**EXHIBIT 33**
**291**

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, for the Term plus the Extended Term the Company incurred costs totaling $      (of which $        was invested by AE, $        was advanced by Endeavor, and $        was advanced by PPC for remaining costs accounts payable for the Extended Term), plus Endeavor advanced $        to cover Company salaries for the period July 1-15, 2004 (bringing the total advance from Endeavor to $

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003), AE has heretofore received distributions from Company totaling $

Whereas, PPC has heretofore received its deferred salary for Year 1 of the Company's operations.

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

REDACTED

1

EN00020

**EXHIBIT 33**
**292**

CONFIDENTIAL

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will reimburse to PPC the sum of $        ( for remaining costs and accounts; (ii) AE will reimburse to Endeavor the sum of $        (the money Endeavor advanced during the Extended Term minus (iii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $        advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $        to PPC (f/s/o Marc Toberoff) as deferred accrued salary for Year 2; thereafter,

b.    The sum of $        to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

c.    The sum of $        to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

2                                    REDACTED

EN00021

**EXHIBIT 33**
**293**

CONFIDENTIAL

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, IP Worldwide, LLC and Endeavor hereby forever relieve, release and discharge each other, IPW, LLC and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express

3

EN00022

**EXHIBIT 33**
**294**

CONFIDENTIAL

terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. In accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies

4

EN00023

**EXHIBIT 33**
**295**

CONFIDENTIAL

of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____          Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____          Date: _____
By: Marc Toberoff, President

IP Worldwide, LLC


By: _____          Date: _____
    Marc Toberoff, Member


By: _____
    Ariel Emanuel, Member

Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____          Date: _____
By: Tom McGuire, General Counsel

5

EN00024

**EXHIBIT 33**
**296**

**EXHIBIT "A"**

CONFIDENTIAL

**IP Worldwide, LLC Contracts**

1.    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:    As of October 3, 2002 (extended March 29, 2004)
    RE:    Superman (Jerome Siegel's 50% interest in US Copyright via section 304 termination)
    Term:    Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:    As of October 3, 2002
    RE:    Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination)
    Term:    Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:    January 21, 2002
    RE:    Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre

REDACTED

6

EN00025

**EXHIBIT 33**
**297**

CONFIDENTIAL

REDACTED

7

EN00026

EXHIBIT 33
298

CONFIDENTIAL

Redacted

8

EN00027

EXHIBIT 33
299

CONFIDENTIAL

REDACTED

9

EN00028

EXHIBIT 33
300

CONFIDENTIAL

EXHIBIT "B"

**Contingent Receivables of IP Worldwide, LLC**

REDACTED

10

EN00029

EXHIBIT 33
301

CONFIDENTIAL

REDACTED

11

EN00030

EXHIBIT 33
302

*CONFIDENTIAL*

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, for the Term plus the Extended Term the Company incurred costs totaling $         (of which $           was invested by AE, $          was advanced by Endeavor, and $          was advanced by PPC for remaining costs accounts payable for the Extended Term), plus Endeavor advanced $          to cover Company salaries for the period July 1-15, 2004 (bringing the total advance from Endeavor to $          ).

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003), AE has heretofore received distributions from Company totaling $    .

Whereas, PPC has heretofore received its deferred salary for Year 1 of the Company's operations.

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

REDACTED

1

EN00031

**EXHIBIT 33**
303

CONFIDENTIAL

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will reimburse to PPC the sum of $·        ( for remaining costs and accounts; (ii) AE will reimburse to Endeavor the sum of $ _ _,       (the money Endeavor advanced during the Extended Term minus (iii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $_,      (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $         .. to PPC (f/s/o Marc Toberoff) as deferred accrued salary for Year 2; thereafter,

b.    The sum of $         to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

c.    The sum of $         to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

REDACTED

2

EN00032

**EXHIBIT 33**

**304**

CONFIDENTIAL

AE will be solely responsible for payments, if any, to Endeavor arising under the
JV Agreement, including without limitation, Endeavor's interest, if any, in the
monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will
automatically terminate and be superceded by the terms and conditions of this
Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement
and any other agreement(s) executed by the Company and/or any party prior to
July 1, 2004 (other than the JV Agreement which is hereby superceded) and in
consideration of the terms of this Agreement and the promises and payments
referenced herein, PPC, Ariel Emanuel, IP Worldwide, LLC and Endeavor hereby
forever relieve, release and discharge each other, IPW, LLC and, without
limitation, their respective present, former and future representatives, including
without limitation, predecessors, successors, partners, officers, directors,
shareholders, attorneys, parent and subsidiary corporations and entities, the
officers, directors, employees, agents, and shareholders of each of them, from
any and all claims, cross-claims, demands, debts, liabilities, obligations,
promises, acts, agreements, costs, offsets, expenses, damages, actions and
causes of action of whatever kind or nature, whether known or unknown,
suspected or unsuspected which exist, or have existed arising out of, or in
connection with  all matters relating to or arising out of the Company and/or the
JV Agreement. The Parties further acknowledge that they may hereafter discover
facts different from or in addition to those which they now know or believe to be
true with respect to any release herein made, and agree that every release
herein made is now and will remain effective notwithstanding such different or
additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits
conferred upon them by the provisions of section 1542 of the California Civil
Code, which are as follows:

          A general release does not extend to claims which the
          creditor does not know or suspect to exist in his favor
          at the time of executing the release, which if known by
          him must have materially affected his settlement with
          the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section
1542 of the California Civil Code is part of the consideration hereunder.  The
Parties expressly consent that the mutual general releases set forth herein shall
be given full force and effect in accordance with each and all of their express

EN00033

**EXHIBIT 33**

CONFIDENTIAL

terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

    a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

    b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

    c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties.    Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies

EN00034

**EXHIBIT 33**
**306**

CONFIDENTIAL

of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____       Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____       Date: _____
By: Marc Toberoff, President

IP Worldwide, LLC

By: _____       Date: _____
     Marc Toberoff, Member

By: _____
     Ariel Emanuel, Member

Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____       Date:_____
By: Tom McGuire, General Counsel

5

EN00035

**EXHIBIT 33**
**307**

CONFIDENTIAL

## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.  Agreement:   IP Worldwide and Joanne Siegel and Laura
                 Siegel Larson
    Date:        As of October 3, 2002 (extended March 29, 2004)
    RE:          Superman (Jerome Siegel's 50% interest in US Copyright
                 via section 304 termination)
    Term:        Until 4/23/05.

    Agreement:   IP Worldwide and Joanne Siegel and Laura
                 Siegel Larson
    Date:        As of October 3, 2002
    RE:          Superboy (Jerome Siegel's 100% interest in US Copyright
                 via section 304 termination)
    Term:        Until 4/23/05.

    Agreement:   IP Worldwide and Joanne Siegel and Laura
                 Siegel Larson
    Date:        January 21, 2002
    RE:          Conflict waiver re purchase of Michael Seigel's Rights to
                 Superman, Superboy and Spectre

REDACTED

6

EN00036

**EXHIBIT 33**
**308**

CONFIDENTIAL

REDACTED

**EXHIBIT 33**
**309**

EN00037

CONFIDENTIAL

REDACTED

EN00038

**EXHIBIT 33**
**310**

CONFIDENTIAL

Redacted

9

**EXHIBIT 33**

**311**

EN00039

CONFIDENTIAL

**EXHIBIT "B"**

Redacted

EN00040

**EXHIBIT 33**

**312**

CONFIDENTIAL

REDACTED

EN00041

**EXHIBIT 33**
**313**

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

> Deleted: are

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

> Deleted: are

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $          ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $          which have been paid by PPC.

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $          ($          paid plus the above $          ) ("Year 2 and Extended Term Expenses");

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $          of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1– July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of

1

REDACTED

EN00042

**EXHIBIT 33**
**314**

CONFIDENTIAL

Year 1 Expenses all pursuant to the JV Agreeement (plus the sum of $ [i.e., $.        -        ] mistakenly overpaid), all pursuant to the JV Agreement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $        (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $.        ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of  $ :        (the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $        (advanced by Endeavor for Company salaries for July 1–July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $        . to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e.; $.        - $ refunded per paragraph 3 above); thereafter,

b.    The sum of $        to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

2

REDACTED

EN00043

**EXHIBIT 33**
315

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Deleted: are

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Deleted: are

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $          ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $          which have been paid by PPC.

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $          ($:          paid plus the above $          ) ("Year 2 and Extended Term Expenses");

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of  $

Whereas, $          of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1- July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of

REDACTED

1

EN00044

**EXHIBIT 33**
**316**

CONFIDENTIAL

Year 1 Expenses all pursuant to the JV Agreeement (plus the sum of $ [i.e., $         .         ] mistakenly overpaid), all pursuant to the JV Agreement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $         which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $ .          ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of  $          (the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $          (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $          to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $         - $ refunded per paragraph 3 above); thereafter,

b.    The sum of $          to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

REDACTED

2

EN00045

**EXHIBIT 33**
**317**

*CONFIDENTIAL*

c.    The sum of $.        to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

3

REDACTED

EN00046

**EXHIBIT 33**
**318**

CONFIDENTIAL

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. In accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

4

EN00047

**EXHIBIT 33**

319

CONFIDENTIAL

7.    General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____        Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____        Date: _____
By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____        Date:_____
By: Tom McGuire, General Counsel


5

EN00048

**EXHIBIT 33**
**320**

CONFIDENTIAL

## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.  **Agreement:**  IP Worldwide and Joanne Siegel and Laura Siegel Larson
    **Date:**  As of October 3, 2002 (extended March 29, 2004)
    **RE:**  Superman (Jerome Siegel's 50% interest in US Copyright via section 304 termination)
    **Term:**  Until 4/23/05.

    **Agreement:**  IP Worldwide and Joanne Siegel and Laura Siegel Larson
    **Date:**  As of October 3, 2002
    **RE:**  Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination)
    **Term:**  Until 4/23/05.

    **Agreement:**  IP Worldwide and Joanne Siegel and Laura Siegel Larson
    **Date:**  January 21, 2002
    **RE:**  Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre

REDACTED

6

EN00049

**EXHIBIT 33**

**321**

CONFIDENTIAL

REDACTED

7

EN00050

**EXHIBIT 33**
**322**

CONFIDENTIAL

REDACTED

8

EN00051

**EXHIBIT 33**
**323**

CONFIDENTIAL

REDACTED

9

EN00052

EXHIBIT 33
324

CONFIDENTIAL

**EXHIBIT "B"**

REDACTED

10

EN00053

**EXHIBIT 33**
**325**

CONFIDENTIAL

REDACTED

11

EN00054

**EXHIBIT 33**
**326**

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $          ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $ .

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $          which have been paid by PPC.

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $ ($          paid plus the above $          ) ("Year 2 and Extended Term Expenses");

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $          of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1– July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of

1

REDACTED

EN00055

**EXHIBIT 33**
**327**

CONFIDENTIAL

Year 1 Expenses all pursuant to the JV Agreeement (plus the sum of $ [i.e., $              ]) mistakenly overpaid), all pursuant to the JV Agreeement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    <u>Newco</u>

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    <u>Assignment of Assets to Newco</u>

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    <u>Bookkeeping Adjustments</u>

Upon execution hereof, (i) AE will refund to PPC the sum of $:          (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $          ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of $          (the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $          i (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    <u>Distribution of Revenues</u>

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.    The sum of $          to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $          - $          refunded per paragraph 3 above); thereafter,

b.    The sum of $          to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

2

REDACTED

EN00056

**EXHIBIT 33**
328

CONFIDENTIAL

c.    The sum of $         to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

3

REDACTED

EN00057

EXHIBIT 33
329

CONFIDENTIAL

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder.  The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

    a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

    b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

    c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties.  Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

4

EN00058

**EXHIBIT 33**

**330**

CONFIDENTIAL

7.  General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:

_____          Date: _____
Ariel Emanuel

Pacific Pictures Corporation

_____          Date: _____
By: Marc Toberoff, President

Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency

_____          Date:_____
By: Tom McGuire, General Counsel

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - [ Deleted: ¶ ]

5

EN00059

**EXHIBIT 33**

**331**

CONFIDENTIAL

## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.  Agreement:   IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:         As of October 3, 2002 (extended March 29, 2004)
    RE:           Superman (Jerome Siegel's 50% interest in US Copyright via section 304 termination)
    Term:         Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:         As of October 3, 2002
    RE:           Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination)
    Term:         Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
    Date:         January 21, 2002
    RE:           Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre

REDACTED

6

EN00060

**EXHIBIT 33**

**332**

CONFIDENTIAL

REDACTED

7

EN00061

EXHIBIT 33
333

CONFIDENTIAL

REDACTED

8

EN00062

**EXHIBIT 33**
**334**

CONFIDENTIAL

REDACTED

9

EN00063

**EXHIBIT 33**
**335**

**EXHIBIT "B"**

CONFIDENTIAL

REDACTED

10

EN00064

**EXHIBIT 33**
**336**

CONFIDENTIAL

REDACTED

11

EN00065

**EXHIBIT 33**

**337**

CONFIDENTIAL

### WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, for the Term plus the Extended Term the Company incurred costs totaling $    (of which $      was invested by AE, $      , was advanced by Endeavor, and $      was advanced by PPC for remaining costs accounts payable for the Extended Term), plus Endeavor advanced $      to cover Company salaries for the period July 1-15, 2004 (bringing the total advance from Endeavor to $      ).

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003), AE has heretofore received distributions from Company totaling $

Whereas, PPC has heretofore received its deferred salary for Year 1 of the Company's operations.

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

*AE E P - J Todd Harris fee*

1

REDACTED

EN00066

**EXHIBIT 33**
**338**

CONFIDENTIAL

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will reimburse to PPC the sum of $ _____ ( for remaining costs and accounts; (ii) AE will reimburse to Endeavor the sum of $ _____ (the money Endeavor advanced during the Extended Term minus (ii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $ _____ (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

| | |
|---|---|
| **Deleted:** (i) AE will refund to PPC the sum of $ _____ (which per the Jv Agreement should have been paid t PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); | |
| **Deleted:** i | |
| **Deleted:** i | |
| **Deleted:** 0.60 | |
| **Deleted:** v | |
| **Deleted:** v | |
| **Deleted:** .05 | |

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

    a.    The sum of $ _____ to PPC (f/s/o Marc Toberoff) as deferred accrued salary for Year 2; thereafter,

    b.    The sum of $ _____ to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

    c.    The sum of $ _____ to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

    d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

    e.    Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

| | |
|---|---|
| **Deleted:** | |
| **Deleted:** as remaining | |
| **Deleted:** (i.e., $ _____ refunded per paragraph 3 above) | |
| **Deleted:** 46 | |
| **Deleted:** 619 | |

REDACTED

2

EN00067

**EXHIBIT 33**
**339**

CONFIDENTIAL

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder.  The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown

3

EN00068

**EXHIBIT 33**
340

CONFIDENTIAL

and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

     a.     In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

     b.     The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

     c.     The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    <u>General</u>

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their

4

EN00069

**EXHIBIT 33**
341

CONFIDENTIAL

respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____    Date: _____

Ariel Emanuel

Pacific Pictures Corporation


_____    Date: _____

By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____    Date:_____

By: Tom McGuire, General Counsel




## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.  Agreement:    IP Worldwide and Joanne Siegel and Laura
              Siegel Larson
    Date:       As of October 3, 2002 (extended March 29, 2004)
    RE:         Superman (Jerome Siegel's 50% interest in US Copyright
              via section 304 termination)
    Term:       Until 4/23/05.


5


EN00070

EXHIBIT 33
342

CONFIDENTIAL

| | |
|---|---|
| Agreement: | IP Worldwide and Joanne Siegel and Laura Siegel Larson |
| Date: | As of October 3, 2002 |
| RE: | Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination) |
| Term: | Until 4/23/05. |

| | |
|---|---|
| Agreement: | IP Worldwide and Joanne Siegel and Laura Siegel Larson |
| Date: | January 21, 2002 |
| RE: | Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre |

REDACTED

6

EN00071

**EXHIBIT 33**
**343**

CONFIDENTIAL

REDACTED

7

EN00072

**EXHIBIT 33**
**344**

CONFIDENTIAL

Redacted

8

EN00073

**EXHIBIT 33**
**345**

CONFIDENTIAL

REDACTED

**EXHIBIT "B"**

**Contingent Receivables of IP Worldwide, LLC**

EN00074

**EXHIBIT 33**
**346**

CONFIDENTIAL

REDACTED

10

EN00075

**EXHIBIT 33**
**347**

CONFIDENTIAL

REDACTED

11

EN00076

**EXHIBIT 33**
**348**



## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts PPC hereby warrants and represents are all included in and set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, for the Term plus the Extended Term the Company incurred costs totaling $____ (of which $____ was invested by AE, $____ was advanced by Endeavor, and $____ was advanced by PPC for remaining costs accounts payable for the Extended Term), plus Endeavor advanced $____ to cover Company salaries for the period July 1-15, 2004 (bringing the total advance from Endeavor to $____).

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003), AE has heretofore received distributions from Company totaling $____

Whereas, PPC has heretofore received its deferred salary for Year 1 of the Company's operations.

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

REDACTED

1

EN00077

**EXHIBIT 33**
349

CONFIDENTIAL

1.     Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.     Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.     Bookkeeping Adjustments

Upon execution hereof, (i) AE will reimburse to PPC the sum of $        ( for remaining costs and accounts; (ii) AE will reimburse to Endeavor the sum of $        (the money Endeavor advanced during the Extended Term minus (iii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $        (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.     Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, but excluding any producing fees as under the JV Agreement ("Revenues") will be payable in the following order and priority:

a.     The sum of $ . ... to PPC (f/s/o Marc Toberoff) as deferred accrued salary for Year 2; thereafter,

b.     The sum of $        to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

c.     The sum of $ _ . . . . to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.     One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

e.     Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

REDACTED

2

EN00078

**EXHIBIT 33**
350

CONFIDENTIAL

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    <u>Supercession of JV Agreement</u>

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    <u>Mutual Releases.</u>

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder.  The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown

3

EN00079

**EXHIBIT 33**

351

CONFIDENTIAL

and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

    a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

    b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

    c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their

4

EN00080

**EXHIBIT 33**
352

CONFIDENTIAL

respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____    Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____    Date: _____
By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____    Date:_____
By: Tom McGuire, General Counsel




**EXHIBIT "A"**

**IP Worldwide, LLC Contracts**

1.    Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson
      Date:        As of October 3, 2002 (extended March 29, 2004)
      RE:          Superman (Jerome Siegel's 50% interest in US Copyright via section 304 termination)
      Term:        Until 4/23/05.


5

EN00081

**EXHIBIT 33**
353

CONFIDENTIAL

| | |
|---|---|
| Agreement: | IP Worldwide and Joanne Siegel and Laura Siegel Larson |
| Date: | As of October 3, 2002 |
| RE: | Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination) |
| Term: | Until 4/23/05. |

| | |
|---|---|
| Agreement: | IP Worldwide and Joanne Siegel and Laura Siegel Larson |
| Date: | January 21, 2002 |
| RE: | Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre |

REDACTED

6

EN00082

**EXHIBIT 33**
**354**

CONFIDENTIAL

REDACTED

EN00083

**EXHIBIT 33**
**355**

CONFIDENTIAL

REDACTED

8

**EXHIBIT 33**
**356**

**EN00084**

CONFIDENTIAL

REDACTED

**EXHIBIT "B"**

9

EN00085

**EXHIBIT 33**
**357**

CONFIDENTIAL

Redacted

EN00086

**EXHIBIT 33**
**358**

CONFIDENTIAL

REDACTED

11

EN00087

**EXHIBIT 33**
**359**

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $           ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $ _____ which have been paid by PPC.

| Deleted: |
| Deleted: |

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $ 346,618.78 ($           paid plus the above $           ("Year 2 and Extended Term Expenses");

| Deleted: |

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $           of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1– July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreement (plus the sum of $

1

REDACTED

EN00088

**EXHIBIT 33**
**360**

CONFIDENTIAL

[i.e., $    -    ] mistakenly overpaid), all pursuant to the JV Agreeement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $    (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $    ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of $    (the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $!    (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

> Deleted: il
>
> Deleted: il

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables ("Revenues") will be payable in the following order and priority:

> Deleted: , after the deduction and retention by Newco of one-third (1/3) of such gross revenues to cover expenses,

a.    The sum of $    , to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $·    - $ refunded per paragraph 3 above); thereafter,

b.    The sum of $    to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

REDACTED

2

EN00089

**EXHIBIT 33**
**361**

CONFIDENTIAL

c.   The sum of $ _____ to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

d.   One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

Formatted: Bullets and Numbering

e.   Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.   Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.   Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

REDACTED

3

EN00090

**EXHIBIT 33**
**362**

CONFIDENTIAL

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

    a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

    b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. In accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

    c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

4

EN00091

**EXHIBIT 33**

7.    <u>General</u>

CONFIDENTIAL

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____          Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____          Date: _____
By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____          Date: _____
By: Tom McGuire, General Counsel


5

EN00092

**EXHIBIT 33**
**364**

CONFIDENTIAL

EXHIBIT "A"

Deleted: ¶

### IP Worldwide, LLC Contracts

1.   Agreement:   IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
     Date:        As of October 3, 2002 (extended March 29, 2004)
     RE:          Superman (Jerome Siegel's 50% interest in US Copyright
                  via section 304 termination)
     Term:        Until 4/23/05.

     Agreement:   IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
     Date:        As of October 3, 2002
     RE:          Superboy (Jerome Siegel's 100% interest in US Copyright
                  via section 304 termination)
     Term:        Until 4/23/05.

     Agreement:   IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
     Date:        January 21, 2002
     RE:          Conflict waiver re purchase of Michael Seigel's Rights to
                  Superman, Superboy and Spectre

REDACTED

6

EN00093

**EXHIBIT 33**
**365**

CONFIDENTIAL

REDACTED

7

EN00094

**EXHIBIT 33**
**366**

CONFIDENTIAL

REDACTED

8

EN00095

**EXHIBIT 33**
**367**

CONFIDENTIAL

REDACTED

9

EN00096

EXHIBIT 33
368

EXHIBIT "B" ----------------------------------- Deleted: ¶
¶

CONFIDENTIAL

REDACTED

10

EN00097

**EXHIBIT 33**
**369**

CONFIDENTIAL

REDACTED

11

EN00098

EXHIBIT 33
370

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $         ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $         which have been paid by PPC.

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $ 346,618.78 ($         paid plus the above $         ) ("Year 2 and Extended Term Expenses");

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $         of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1- July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreeement (plus the sum of $

REDACTED

1

EN00099

**EXHIBIT 33**
371



[i.e., $        ] mistakenly overpaid), all pursuant to the JV Agreeement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $        (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $        ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of $        (the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $        (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables ("Revenues") will be payable in the following order and priority:

a.    The sum of $        to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $        - $        refunded per paragraph 3 above); thereafter,

b.    The sum of $        to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

REDACTED

2

EN00100

**EXHIBIT 33**

**372**

CONFIDENTIAL

   c.   The sum of $          to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

   d.   One-third (1/3) of the sums payable per paragraph 4 (a-c) to IPW,LLC (as the agreed deferred overhead factor).

   e.   Thereafter, after the deduction and retention by Newco of one-third (1/3) of such Revenues (as the agreed overhead factor), Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.   <u>Supercession of JV Agreement</u>

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.   <u>Mutual Releases.</u>

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

REDACTED

3

EN00101

**EXHIBIT 33**
**373**

CONFIDENTIAL

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his favor
> at the time of executing the release, which if known by
> him must have materially affected his settlement with
> the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section
1542 of the California Civil Code is part of the consideration hereunder. The
Parties expressly consent that the mutual general releases set forth herein shall
be given full force and effect in accordance with each and all of their express
terms and provisions, including those terms and provisions relating to unknown
and unsuspected Claims, demands and causes of action, if any, to the same
effect as those terms and provisions relating to any other Claims, demands and
causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

   a.    In the event of any controversy, dispute or claim arising out of or
         related to this Agreement, that cannot be settled through informal
         negotiation between the parties, the parties shall first attempt to
         settle such dispute or claim via non-binding mediation chaired by a
         mutually approved mediator. If the parties are unsuccessful in
         resolving the dispute at mediation, the matter shall be settled
         exclusively by final and binding arbitration which may be initiated at
         the request of either party.

   b.    The arbitration shall be conducted before a retired judge on the
         ADR Services panel in Los Angeles, California familiar with the
         entertainment business. in accordance with the provisions of
         Sections 1280 et seq. of the California Code of Civil Procedure.

   c.    The parties agree to be bound by the decision of the arbitrator(s)
         and the decision thereof to be entered into any appropriate court.
         The expenses of the arbitrators shall be divided equally between
         and payable by the parties. Notwithstanding the procedures set
         forth in this Section, any party hereto may apply to the Los Angeles
         Superior Court: (i) to enforce this agreement to arbitration in this
         Agreement; (ii) to seek injunctive relief so as to enforce, or assist in
         the enforcement of, any agreements in this Agreement; (iii) to avoid
         the expiration of any applicable limitation period; or (iv) to challenge
         or seek to have vacated any final judgment, award or decision of
         the arbitrators that does not comport with express provisions of this
         section.

4

EN00102

**EXHIBIT 33**
**374**

CONFIDENTIAL

7.    Underline: General

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____        Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____        Date: _____
By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____        Date:_____
By: Tom McGuire, General Counsel


5

EN00103

**EXHIBIT 33**
**375**



## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.    Agreement:   IP Worldwide and Joanne Siegel and Laura
Siegel Larson
Date:    As of October 3, 2002 (extended March 29, 2004)
RE:    Superman (Jerome Siegel's 50% interest in US Copyright
via section 304 termination)
Term:    Until 4/23/05.

Agreement:   IP Worldwide and Joanne Siegel and Laura
Siegel Larson
Date:    As of October 3, 2002
RE:    Superboy (Jerome Siegel's 100% interest in US Copyright
via section 304 termination)
Term:    Until 4/23/05.

Agreement:   IP Worldwide and Joanne Siegel and Laura
Siegel Larson
Date:    January 21, 2002
RE:    Conflict waiver re purchase of Michael Seigel's Rights to
Superman, Superboy and Spectre

REDACTED

6

CONFIDENTIAL

**EXHIBIT 33**
**376**

EN00104

CONFIDENTIAL

REDACTED

7

EN00105

**EXHIBIT 33**
**377**

CONFIDENTIAL

REDACTED

EN00106

**EXHIBIT 33**
**378**

CONFIDENTIAL

Redacted

9

EN00107

**EXHIBIT 33**
**379**

EXHIBIT "B"

CONFIDENTIAL

REDACTED

EN00108

**EXHIBIT 33**
**380**

CONFIDENTIAL

REDACTED

EN00109

**EXHIBIT 33**
**381**

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

CONFIDENTIAL

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor Talent Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $     ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $      which have been paid by PPC.

Deleted: ....
Deleted:

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $ 346,618.78 ($.     paid plus the above $     ("Year 2 and Extended Term Expenses");

Deleted:

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $:     of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1– July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreement (plus the sum of $

1

REDACTED

EN00110

**EXHIBIT 33**
**382**

CONFIDENTIAL

[i.e., $          ] -          ] mistakenly overpaid), all pursuant to the JV Agreement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $.          (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to PPC the sum of $          ( for remaining costs and accounts; (iii) AE will reimburse to Endeavor the sum of  $          the money Endeavor advanced during the Extended Term minus (iv) below); and (iv) PPC will (or will cause Newco to) reimburse Endeavor the sum of $:          (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

**Deleted:** ll

**Deleted:** ll

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables ("Revenues") will be payable in the following order and priority:

**Deleted:** , after the deduction and retention by Newco of one-third (1/3) of such gross revenues to cover expenses,

   a.    The sum of $          to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $ .          - $l          refunded per paragraph 3 above); thereafter,

   b.    The sum of $          to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

REDACTED

2

EN00111

EXHIBIT 33
383

CONFIDENTIAL

c.    The sum of $        to PPC (f/s/o Marc Toberoff) as deferred
accrued salary for the Extended Term.

d.    One-third (1/3) of the sums payable per paragraph 4 (a-c) to
IPW,LLC (as the agreed deferred overhead factor).                    - - - - ► [ Formatted: Bullets and Numbering

e.    Thereafter, after the deduction and retention by Newco of one-third
(1/3) of such Revenues (as the agreed overhead factor), Revenues
will be divided and payable fifty percent (50%) to Newco and fifty
percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the
JV Agreement, including without limitation, Endeavor's interest, if any, in the
monies received pursuant to paragraph 3 above.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will
automatically terminate and be superceded by the terms and conditions of this
Agreement.

5.    Mutual Releases.

Except as to the rights and obligations of the parties created by this Agreement
and any other agreement(s) executed by the Company and/or any party prior to
July 1, 2004 (other than the JV Agreement which is hereby superceded) and in
consideration of the terms of this Agreement and the promises and payments
referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve,
release and discharge each other and, without limitation, their respective present,
former and future representatives, including without limitation, predecessors,
successors, partners, officers, directors, shareholders, attorneys, parent and
subsidiary corporations and entities, the officers, directors, employees, agents,
and shareholders of each of them, from any and all claims, cross-claims,
demands, debts, liabilities, obligations, promises, acts, agreements, costs,
offsets, expenses, damages, actions and causes of action of whatever kind or
nature, whether known or unknown, suspected or unsuspected which exist, or
have existed arising out of, or in connection with  all matters relating to or arising
out of the Company and/or the JV Agreement. The Parties further acknowledge
that they may hereafter discover facts different from or in addition to those which
they now know or believe to be true with respect to any release herein made, and
agree that every release herein made is now and will remain effective
notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits
conferred upon them by the provisions of section 1542 of the California Civil
Code, which are as follows:

REDACTED

3

EN00112

**EXHIBIT 33**
**384**

CONFIDENTIAL

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. In accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

4

EN00113

**EXHIBIT 33**

CONFIDENTIAL

7.    Underline{General}

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____          Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____          Date: _____
By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____          Date:_____
By: Tom McGuire, General Counsel


5

EN00114

**EXHIBIT 33**
**386**

CONFIDENTIAL

EXHIBIT "A"

Deleted: ¶

**IP Worldwide, LLC Contracts**

1.  Agreement:    IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
    Date:         As of October 3, 2002 (extended March 29, 2004)
    RE:           Superman (Jerome Siegel's 50% interest in US Copyright
                  via section 304 termination)
    Term:         Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
    Date:         As of October 3, 2002
    RE:           Superboy (Jerome Siegel's 100% interest in US Copyright
                  via section 304 termination)
    Term:         Until 4/23/05.

    Agreement:    IP Worldwide and Joanne Siegel and Laura
                  Siegel Larson
    Date:         January 21, 2002
    RE:           Conflict waiver re purchase of Michael Seigel's Rights to
                  Superman, Superboy and Spectre

REDACTED

6

EN00115

**EXHIBIT 33**
**387**

CONFIDENTIAL

REDACTED

7

EN00116

**EXHIBIT 33**
**388**

CONFIDENTIAL

REDACTED

8

EN00117

**EXHIBIT 33**
**389**

CONFIDENTIAL

Redacted

9

EN00118

**EXHIBIT 33**
**390**

CONFIDENTIAL

EXHIBIT "B"

| | Deleted: ¶ |
|---|---|
| | ¶ |

**Contingent Receivables of IP Worldwide, LLC**

REDACTED

10

EN00119

**EXHIBIT 33**
**391**

CONFIDENTIAL

REDACTED

11

EN00120

EXHIBIT 33
392

CONFIDENTIAL

**Tom McGuire Assistant**

| | |
|---|---|
| **From:** | Tom McGuire |
| **Sent:** | Tuesday, August 03, 2004 8:49 AM |
| **To:** | Tom McGuire Assistant |
| **Subject:** | FW: IPW Wind-UP |
| **Importance:** | High |

print

-----Original Message-----
**From:** mtoberoff@ipwla.com [mailto:mtoberoff@ipwla.com]
**Sent:** Monday, August 02, 2004 1:55 PM
**To:** Tom McGuire
**Subject:** IPW Wind-UP
**Importance:** High

Tom:

Attached please find for your review the latest version of the Wind-up Agreement including the complete exhibits of contracts/properties and with all numbers plugged in. The expense numbers are from Endeavor Accounting.

I checked the addition/subtraction a few times to arrive at the numbers plugged into the Agreement, and can explain to you precisely how they are derived from the Endeavor numbers.

If at all possible please review and get back to me today on this so we can send this out to AE.

Many thanks.

Marc Toberoff
IPW
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
(310) 246-3100
Fax:(310) 246-3101
MToberoff@ipwla.com

EN00121

8/3/2004

**EXHIBIT 33**
**393**

CONFIDENTIAL

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

*a California corporation*

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel ("AE") and the Endeavor ~~Talent~~ Agency ("Endeavor"), on the other hand with respect to the limited liability company, IP Worldwide, LLC ("Company") formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 30, 2004 ("Extended Term");

Whereas, during the *all* Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $        ("Year 1 Expenses") which funds were invested by AE; and AE has received distributions from Company totaling $

Whereas the Company had for the Extended Term remaining costs and accounts payable totaling $        which have been paid by PPC.

Whereas, in the remaining period of the Company's Term as extended (March 15, 2003 to June 30, 2004) Company expended and incurred $        ($        paid plus the above $        ) ("Year 2 and Extended Term Expenses");

Whereas, for part payment of the Extended Term Expenses (and Company salaries for the period July 1 – July 15, 2004) Endeavor advanced money on behalf of AE in the amount of $

Whereas, $        of the amount advanced by Endeavor was paid for Company salaries after the end of the Term for the period July 1- July 15, 2004.

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreement (plus the sum of $

1

REDACTED

EN00122

**EXHIBIT 33**
**394**

CONFIDENTIAL

[i.e., $ ̅     -  ̅ mistakenly overpaid), all pursuant to the JV Agreeement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC has established a new California limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties hereby assign and transfer to Newco (IPW, LLC) in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookkeeping Adjustments

Upon execution hereof, (i) AE will refund to PPC the sum of $     (which per the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE); (ii) AE will reimburse to Endeavor the sum of $     (the money Endeavor advanced during the Extended Term minus (iii) below); and (iii) PPC will (or will cause Newco to) reimburse Endeavor the sum of $     (advanced by Endeavor for Company salaries for July 1-July 15, 2004).

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, after the deduction and retention by Newco of one-third (1/3) of such gross revenues to cover expenses, will be payable in the following order and priority:

    a.    The sum of $     to PPC (f/s/o Marc Toberoff) as remaining deferred accrued salary for Year 2 (i.e., $     - $ refunded per paragraph 3 above); thereafter,

    b.    The sum of $     to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

REDACTED

2

EN00123

**EXHIBIT 33**
**395**



CONFIDENTIAL

    c.     The sum of $      to PPC (f/s/o Marc Toberoff) as deferred accrued salary for the Extended Term.

    d.     Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to the AE.

AE will be solely responsible for payments, if any, to Endeavor arising under the JV Agreement, including without limitation, Endeavor's interest, if any, in the monies received pursuant to paragraph 3 above.

4.    <u>Supercession of JV Agreement</u>

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    <u>Mutual Releases.</u>

Except as to the rights and obligations of the parties created by this Agreement and any other agreement(s) executed by the Company and/or any party prior to July 1, 2004 (other than the JV Agreement which is hereby superceded) and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

        A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

REDACTED

3

EN00124

**EXHIBIT 33**
**396**



The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    <u>General</u>

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the

CONFIDENTIAL

party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____        Date: _____

Ariel Emanuel

Pacific Pictures Corporation


_____        Date: _____

By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns the Endeavor Talent Agency:

Endeavor Talent Agency


_____        Date: _____

By: Tom McGuire, General Counsel


5                                         EN00126

**EXHIBIT 33**
**398**



## EXHIBIT "A"

### IP Worldwide, LLC Contracts

1.     Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson

Date:    As of October 3, 2002 (extended March 29, 2004)

RE:    Superman (Jerome Siegel's 50% interest in US Copyright via section 304 termination)

Term:    Until 4/23/05.

Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson

Date:    As of October 3, 2002

RE:    Superboy (Jerome Siegel's 100% interest in US Copyright via section 304 termination)

Term:    Until 4/23/05.

Agreement:    IP Worldwide and Joanne Siegel and Laura Siegel Larson

Date:    January 21, 2002

RE:    Conflict waiver re purchase of Michael Seigel's Rights to Superman, Superboy and Spectre

REDACTED

6                                            EN00127

**EXHIBIT 33**
**399**

CONFIDENTIAL

REDACTED

EN00128

EXHIBIT 33
400

CONFIDENTIAL

REDACTED

EN00129

**EXHIBIT 33**
**401**

CONFIDENTIAL

REDACTED

EN00130

EXHIBIT 33
402

*CONFIDENTIAL*

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel and the Endeavor Talent Agency,) on the other hand (collectively, "AE") with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

*[handwritten: — LLC]*
*[handwritten: ) ?]*

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 25, 2004 ("Extended Term");

*[handwritten: July 1 2004]*

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $ .        ("Year 1 Expenses") which funds were ~~invested~~ by AE; and AE has received distributions from Company totalling $        *[handwritten: advanced to Company]*

*[handwritten: ) are these +,.ed?]*

Whereas the Company has for the Extended Term remaining accounts payable totalling $        *[handwritten: — schedule]*

Whereas, in the remaining period of the Company's Term as extended (May 15, 2003 to June 25, 2004) Company expended and incurred $ _____ in expenses ("Year 2 and Extension Expenses");

Whereas, Endeavor advanced money on behalf of AE in the amount of $_____ [.        as of 6/15/04] which was expended on Company overhead through the Extended Term.

*[handwritten: — advanced an expense]*

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreeement (plus the sum of $ 9,049 [i.e., $        -  ] mistakenly overpaid), all pursuant to the JV Agreeement;

R<small>EDACTED</small>

1

EN00131

**EXHIBIT 33**
**403**

CONFIDENTIAL

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    Newco

PPC will establish a new limited liability company named IPW, LLC ("Newco").

2.    Assignment of Assets to Newco

The Company and the Parties will assign to Newco in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all Company Contracts, Company Receivables, agreements, rights, interests and claims.

3.    Bookeeping Adjustments

Upon execution hereof, AE will (i) refund to PPC the sum of $ ____ (which per ~NO~ the JV Agreement should have been paid to PPC as part of its deferred Year 2 salary but instead was mistakenly paid to AE; (ii) deposit in the Company's checking account the amount of $ $ ____ to cover the remaining expenses incurred by the Company through June 25, 2004 which remain unpaid or unfunded, and (iii) reimburse Endeavor for the money it has advanced during the Extended Term in the amount of $ ____.

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, after the deduction and retention by Newco of one-third (1/3) of such gross revenues to cover expenses, will be payable in the following order and priority: _No – itr pro rata_

a.    The sum of $ ____ to PPC as remaining deferred accrued salary for Year 2 (i.e., $ ____ - $ ____ refunded per paragraph 3 above); thereafter,

b.    The sum of $ ____ to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

c.    The sum of $ ____ to PPC as deferred accrued salary for the ~No~ Extended Term.

REDACTED

2                                          EN00132

**EXHIBIT 33**
**404**

CONFIDENTIAL

d.    Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to AE.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement.

5.    Mutual Releases.

Except as to the rights and obligations created by this Agreement and by any other existing agreement(s), other than the JV Agreement, to which any of the Parties are a party, and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder. The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same

3

EN00133

EXHIBIT 33
405

CONFIDENTIAL

effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    <u>Dispute Resolution</u>

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

b.    The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.    The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties. Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.

7.    <u>General</u>

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

4

EN00134

**EXHIBIT 33**
**406**

CONFIDENTIAL

This Agreement shall be construed and applied pursuant to the laws of the State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____     Date: _____

Ariel Emanuel

Pacific Pictures Corporation


_____     Date: _____

By: Marc Toberoff, President


Agreed, insofar as this Agreement concerns it:

Endeavor Talent Agency


_____     Date: _____

By: Tom McGuire, General Counsel

5

EN00135

**EXHIBIT 33**
**407**

CONFIDENTIAL *Tice Toberoff*

— *email VK re no trp's*

① *Attach acctg stm*

## WINDING-UP AGREEMENT FOR IP WORLDWIDE, LLC

The following sets forth the terms of the agreement between Pacific Pictures Corporation ("PPC"), on the one hand and Ariel Emanuel and the Endeavor Talent Agency, on the other hand (collectively, "AE") with respect to the limited liability company, IP Worldwide, LLC ("Company"), formed by PPC and AE to acquire and exploit intellectual property rights ("IP") pursuant to their agreement dated February 12, 2002 (the "JV Agreement").

Whereas, the two year Term of the JV Agreement was heretofore extended by the Parties from March 15, 2004 until June 25, 2004 ("Extended Term");

Whereas, during the Term the Company entered into a number of contracts pursuant to which the Company has varied interests in intellectual property rights and/or claims, which contracts are set forth in Exhibit "A" attached hereto ("Company Contracts");

Whereas, during the Term the Company entered into contracts with entertainment Studios which contracts are set forth in Exhibit "B" attached hereto ("Company Receivables") pursuant to which the Company would be entitled to certain contingent payments;

Whereas, in the first year of the Company's Term (i.e. March 15, 2002 to March 15, 2003) the Company expended $ _____ ("Year 1 Expenses") which funds were invested by AE.

Whereas, in the remaining period of the Company's Term as extended (May 15, 2003 to June 25, 2004) Company expended $ _____ ("Year 2 and Extension Expenses");

Whereas, PPC has already received its deferred salary for Year 1 of the Company's operations and AE has received and recouped his investment of Year 1 Expenses all pursuant to the JV Agreeement, plus the sum of $ _____ mistakenly overpaid, all pursuant to the JV Agreeement;

Whereas, the Parties have mutually decided not to renew or further extend the Term of the JV Agreement and to wind up the business of the Company;

The Parties, therefore, agree as follows:

1.    <u>Newco</u>

PPC will establish a new limited liability company named IPW, LLC ("Newco").

REDACTED

1

EN00136

**EXHIBIT 33**
**408**

CONFIDENTIAL

2.    Assignment of Assets to Newco

The Company and the Parties will assign to Newco in perpetuity throughout the world all right, title and interest in all Company assets, including without limitation all accounts receivables ("Company Receivables"), Company Contracts, agreements, rights, interests and claims.

*[handwritten: lien vs agmts to extent of their interest.]*

3.    Bookeeping Adjustments

*[handwritten: what are these #s]*

Upon execution hereof, AE will (i) refund to PPC the sum of $_____ which should have been paid to PPC as part of its deferred Year 2 salary per the JV Agreement but instead was paid to AE and (ii) deposit in the Company's checking account the amount of $_____ to cover the remaining expenses incurred by the Company through June 25, 2004 which remain unpaid or unfunded.

4.    Distribution of Revenues

One hundred percent (100%) of the Company's gross revenues from the Company Contracts for the full duration of each respective contract and Company Receivables, after the deduction and retention by Newco of one-third (1/3) of such gross revenues to cover expenses, will be payable in the following order and priority:

  a.    The sum of $_____ to PPC as remaining deferred accrued salary for Year 2 (i.e., $        - $___ refunded per paragraph __ above); thereafter,

  b.    The sum of $ _____ to AE in recoupment of Year 2 and Extended Term Expenses; thereafter

  c.    The sum of $        to PPC as deferred accrued salary for the Extended Term.

  d.    .Revenues will be divided and payable fifty percent (50%) to Newco and fifty percent (50%) to AE.

4.    Supercession of JV Agreement

Upon execution of this Agreement by all the Parties, the JV Agreement will automatically terminate and be superceded by the terms and conditions of this Agreement. *[handwritten: W/ A E Loop, MT will do all necessary to dissolve.]*

5.    Mutual Releases.

    Except as to the rights and obligations created by this Agreement and by any other existing agreement(s), other than the JV Agreement, to which any of

2

REDACTED
EN00137

**EXHIBIT 33**
**409**

CONFIDENTIAL

the Parties are a party, and in consideration of the terms of this Agreement and the promises and payments referenced herein, PPC, Ariel Emanuel, and Endeavor hereby forever relieve, release and discharge each other and, without limitation, their respective present, former and future representatives, including without limitation, predecessors, successors, partners, officers, directors, shareholders, attorneys, parent and subsidiary corporations and entities, the officers, directors, employees, agents, and shareholders of each of them, from any and all claims, cross-claims, demands, debts, liabilities, obligations, promises, acts, agreements, costs, offsets, expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected which exist, or have existed arising out of, or in connection with  all matters relating to or arising out of the Company and/or the JV Agreement. The Parties further acknowledge that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to any release herein made, and agree that every release herein made is now and will remain effective notwithstanding such different or additional facts or the discovery thereof.

The Parties hereto expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of section 1542 of the California Civil Code, which are as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties acknowledge that the foregoing waiver of the provisions of section 1542 of the California Civil Code is part of the consideration hereunder.  The Parties expressly consent that the mutual general releases set forth herein shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown and unsuspected Claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other Claims, demands and causes of action hereinabove specified.

6.    Dispute Resolution

a.    In the event of any controversy, dispute or claim arising out of or related to this Agreement, that cannot be settled through informal negotiation between the parties, the parties shall first attempt to settle such dispute or claim via non-binding mediation chaired by a mutually approved mediator. If the parties are unsuccessful in resolving the dispute at mediation, the matter shall be settled exclusively by final and binding arbitration which may be initiated at the request of either party.

3

EN00138

**EXHIBIT 33**

CONFIDENTIAL

b.  The arbitration shall be conducted before a retired judge on the ADR Services panel in Los Angeles, California familiar with the entertainment business. in accordance with the provisions of Sections 1280 et seq. of the California Code of Civil Procedure.

c.  The parties agree to be bound by the decision of the arbitrator(s) and the decision thereof to be entered into any appropriate court. The expenses of the arbitrators shall be divided equally between and payable by the parties.  Notwithstanding the procedures set forth in this Section, any party hereto may apply to the Los Angeles Superior Court: (i) to enforce this agreement to arbitration in this Agreement; (ii) to seek injunctive relief so as to enforce, or assist in the enforcement of, any agreements in this Agreement; (iii) to avoid the expiration of any applicable limitation period; or (iv) to challenge or seek to have vacated any final judgment, award or decision of the arbitrators that does not comport with express provisions of this section.  The prevailing party shall be entitled to be reimbursed reasonable attorneys fees and costs incurred in connection with the arbitration and any court proceedings.

7.  <u>General</u>

The parties will in good faith execute such further documents as are necessary or desirable to carry out the purposes and intent of this Agreement.

This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. The parties acknowledge that they have not signed this agreement in reliance on any promise or representation not expressly set forth herein. This Agreement shall bind and inure to the benefit of the parties and their respective heirs, executors, successors and assigns. Executed facsimile copies of this agreement shall be valid and acceptable with the same force and effect as executed originals.

This Agreement shall be construed and applied pursuant to the laws of the

4

EN00139

**EXHIBIT 33**
411

CONFIDENTIAL

State of California applicable to agreements made and to be performed therein.

AGREED, UNDERSTOOD AND ACCEPTED:


_____          Date: _____
Ariel Emanuel

Pacific Pictures Corporation


_____          Date: _____
By: Marc Toberoff, President

Endeavor Talent Agency

5% on immortals?                                            To extent of
                                                           E intr.

_____          Date: _____
By: Tom McGuire, General Counsel

                                              - immortals


Ariel Emanuel - w – Pacific Pictures Corporation

                    APPENDIX 1




                    REDACTED



                           5

**EXHIBIT 33**
**412**

EN00140

CONFIDENTIAL

REDACTED

Ariel Emanuel - w – Pacific Pictures Corporation

APPENDIX 1 (Continued)

C.    Legal Claims/Litigation (initialed due to confidentiality)

JS Claims

EN00141

**EXHIBIT 33**
**413**

CONFIDENTIAL

Tobers

REDACTED

superman - may find problem
now, but doesn't surface
until after the term

**EXHIBIT 33**
414

EN00142

# EXHIBIT 34

1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Keith G. Adams (State Bar No. 240497)
      *kgadams@ipwla.com*
3   TOBEROFF & ASSOCIATES, P.C.
    22631 Pacific Coast Highway #348
4   Malibu, California 90265
    Telephone:  (310) 246-3333
5   Fax:        (310) 246-3101

6   Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
7   Estate of Joseph Shuster, Jean Adele Peavy
    and Laura Siegel Larson, individually and
8   as personal representative of the Estate of
    Joanne Siegel
9
              **UNITED STATES DISTRICT COURT**
10
      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**
11
    DC COMICS,                         | Case No: CV 10-03633 ODW (RZx)
12              Plaintiff,             |
                                       | Hon. Otis D. Wright II, U.S.D.J.
13      vs.                            |
                                       | **DEFENDANT MARK WARREN**
14  PACIFIC PICTURES CORPORATION;      | **PEARY'S FIRST REQUEST**
    IP WORLDWIDE, LLC; IPW, LLC;       | **FOR PRODUCTION OF**
15  MARC TOBEROFF, an individual;      | **DOCUMENTS AND THINGS TO**
                                       | **PLAINTIFF DC COMICS**
16  MARK WARREN PEARY, as personal     |
    representative of the ESTATE OF    | Complaint Filed:  May 14, 2010
17  JOSEPH SHUSTER; JEAN ADELE         | Trial Date:  None Set
18  PEAVY, an individual; LAURA        |
    SIEGEL LARSON, individually and as |
19  personal representative of the ESTATE |
    OF JOANNE SIEGEL,                  |
20                                     |
    and DOES 1-10, inclusive,          |
21                                     |
22              Defendants.            |

23
24
25
26
27
28

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**415**

PROPOUNDING PARTY:      Mark Warren Peary

RESPONDING PARTY:       DC Comics

SET NUMBER:             One (Nos. 1-68)

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of Civil Procedure defendant Mark Warren Peary hereby requests that plaintiff DC Comics within thirty (30) days produce for inspection and copying the original documents and other tangible things designated in the requests for production below at Toberoff & Associates, P.C., 22631 Pacific Coast Highway #348, Malibu, California 90265 and continuing as long as reasonably required.

## I.

## DEFINITIONS AND INSTRUCTIONS

1.      Words and phrases spelled in capital letters herein shall have the specific meanings and definitions expressly assigned to them in these "Definitions and Instructions," which shall apply to each and every Document Request set forth herein, and are hereby fully incorporated within each Document Request by reference.

2.      The terms "YOU" and "YOUR" refer to plaintiff DC Comics, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, parent company, affiliated company, subsidiary or division thereof, including Warner Bros. Entertainment Inc., and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

3.      The terms "DOCUMENT" and "DOCUMENTS," as used herein, are used in their broad sense to encompass all documents and tangible things subject to a Request under Rule 34 of the Federal Rules of Civil Procedure, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in

**EXHIBIT 34**
**416**

1   Rule 1001 of the Federal Rules of Evidence.  They shall include, but are not limited

2   to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes,

3   memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of

4   proposed contracts or agreements, papers, and photographs.

5          4.     The term "COMMUNICATION" means all written, electronic, oral,

6   telephonic, gesture, or other transmission or exchange of information, including

7   without limitation any inquiry, request, dialogue, discussion, conversation, interview,

8   correspondence, letter, note, consultation, negotiation, agreement, understanding,

9   meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal

10  interaction between any individuals or entities.

11         5.     The term "DEFENDANTS," as used herein, refers to Laura Siegel

12  Larson, Mark Warren Peary, Jean Adele Peavy, Marc Toberoff, Pacific Pictures

13  Corporation, IP Worldwide, LLC, and IPW, LLC.

14         6.     The term "SIEGEL LITIGATIONS," as used herein, refers to the cases

15  *Siegel v. Warner Bros. Entertainment Inc., et al.*, C.D. Cal. Case No. 04-CV-08400

16  ODW (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-CV-08776

17  ODW (RZx).

18         7.     The term "WARNER," as used herein, refers to Warner Bros.

19  Entertainment, Inc., and any of its past or present predecessors-in-interest or

20  successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or

21  division thereof, and any other person or persons acting on its behalf, including, but

22  not limited to, past or present agents, managers, representatives, advisors, employees,

23  attorneys, accountants, investigators and insurance companies, and any agents or

24  employees of the above, both singularly and cumulatively.

25         8.     The term "COMPLAINT," as used herein, refers to DC Comics' First

26  Amended Complaint, filed in this case on September 3, 2010.

27         9.     The term "SHUSTER TERMINATION" refers to the "Notice of

28  Termination of Transfer Covering Extended Copyright Renewal Term of

'Superman,'" served on November 10, 2003, referred to in Paragraph 92 of the COMPLAINT.

10.     The term "1992 AGREEMENT," as used herein, refers to the alleged letter agreement dated October 2, 1992 between DC Comics, Jean Adele Peavy and Frank Shuster, referred to in Paragraph 55 of the COMPLAINT.

11.     The term "SEPTEMBER 10, 1992 LETTER," as used herein, refers to the purported letter dated September 10, 1992, sent from Frank Shuster to DC Comics, referred to in Paragraph 54 of the COMPLAINT.

12.     The term "SEPTEMBER 7, 1999 LETTER," as used herein, refers to the purported letter dated September 7, 1999, sent from Jean Adele Peavy to DC Comics, referred to in Paragraph 56 of the COMPLAINT.

13.     The terms "REFER" and "RELATE" mean, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or comment upon.

14.     The terms "REGARDING," "RELATING TO" and "REFERRING TO" shall each have the same meaning as REFER and RELATE.

15.     As used herein, the singular shall always include the plural, or vice-versa, and verb tenses shall always include the past, present and future tenses.  The word "any" shall be understood to include and encompass "all."  The word "all" shall be understood to include and encompass "any."  The words "AND" as well as "OR" shall be construed disjunctively or conjunctively, as necessary, to bring within the scope of these Requests all DOCUMENTS or things which might otherwise be construed to be outside their scope.

16.     The requested DOCUMENTS include all attachments, enclosures, explanatory notes or memoranda, and any other material that accompanied the DOCUMENTS requested.  If the specific DOCUMENT elicited a response, that response is also to be identified and produced.  If the DOCUMENT itself was a response, the DOCUMENT to which it is responding is also to be identified and

1   produced.

2       17.    These Requests are continuing, and any DOCUMENT obtained

3   subsequent to production which would have been produced had it been available or

4   its existence known to YOU is to be supplied forthwith.

5       18.    YOU are to produce any and all DOCUMENTS in YOUR possession,

6   custody or control, or subject to YOUR control, including but not limited to, in the

7   possession of any of YOUR attorneys, agents, shareholders, officers and

8   representatives.  In the event that YOU cannot produce all of the DOCUMENTS

9   designated in a particular request, YOU shall produce those DOCUMENTS which

10  YOU can produce, and shall describe in detail each reason for YOUR inability to

11  produce each of the remaining DOCUMENTS.

12      19.    In the event that any DOCUMENT called for by a Request has been

13  destroyed, lost, discarded or otherwise disposed of, any such DOCUMENT is to be

14  identified as completely as possible by providing, without limitation, the following

15  information: the date of disposal; the manner of disposal; the reason for disposal; the

16  person authorizing disposal; and the person who disposed of the document.

17      20.    If YOU contend that any responsive DOCUMENT is privileged, YOU

18  must identify each such DOCUMENT by providing the following information: the

19  date of the DOCUMENT, a description of its nature and content, the name and

20  capacity of the individual who originated the DOCUMENT, the name and capacity of

21  the individual to whom the DOCUMENT is addressed and all individuals to whom it

22  was circulated; and the privilege(s) asserted.

23      21.    Where an objection is made to any Request, or part thereof, all grounds

24  for the objection must be stated with specificity.  Any ground not stated in an

25  objection shall be deemed to be waived.

26      22.    If any Request is objected to as being ambiguous, vague and/or

27  overbroad, all DOCUMENTS that YOU reasonably believe are within the scope of

28  the Request should be produced, and YOUR objection should specify what is

4
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**419**

1    otherwise ambiguous, vague or overbroad about the Request.

2        23.    Each DOCUMENT is to be produced as it is kept in the usual course of

3    business, including all file folders, binders, notebooks, and other devices by which

4    such DOCUMENTS may be organized or separated.

5        24.    All responsive DOCUMENTS maintained or stored in electronic format

6    shall be produced in native file format with all associated metadata preserved.  All

7    responsible DOCUMENTS maintained in hard copy shall be produced in PDF.

8        25.    The collection and production of DOCUMENTS shall be performed in a

9    manner that ensures that the source of each DOCUMENT may be determined, if

10    necessary.

## II.

## DOCUMENTS AND THINGS REQUESTED

**Request No. 1**

All COMMUNICATIONS between YOU AND Mark Warren Peary.

**Request No. 2**

All COMMUNICATIONS between YOU AND Jean Adele Peavy.

**Request No. 3**

All COMMUNICATIONS between YOU AND Frank Shuster.

**Request No. 4**

All COMMUNICATIONS between YOU AND Dawn Peavy.

**Request No. 5**

All COMMUNICATIONS between YOU AND Joseph Shuster.

**Request No. 6**

All drafts of the 1992 AGREEMENT.

**Request No. 7**

All DOCUMENTS that RELATE to the 1992 AGREEMENT.

**Request No. 8**

All DOCUMENTS that RELATE to the SEPTEMBER 10, 1992 LETTER.

5
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**420**

**Request No. 9**

All DOCUMENTS that RELATE to the SEPTEMBER 7, 1999 LETTER.

**Request No. 10**

All DOCUMENTS that REFER to the SHUSTER TERMINATION.

**Request No. 11**

All DOCUMENTS that REFER to the right(s) under the United States Copyright Act to terminate prior copyright grants by Joseph Shuster to YOU.

**Request No. 12**

All COMMUNICATIONS with third parties that REFER to the 1992 AGREEMENT.

**Request No. 13**

All COMMUNICATIONS with the United States Copyright Office that REFER to the 1992 AGREEMENT.

**Request No. 14**

All DOCUMENTS that describe OR explain YOUR chain-of-title to Superman.

**Request No. 15**

All post-1990 DOCUMENTS, other than pleadings in this lawsuit OR in the SIEGEL LITIGATIONS, that REFER to ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 16**

All pre-1990 DOCUMENTS that REFER to ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 17**

All DOCUMENTS that REFER to the revocation of ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 18**

All DOCUMENTS, excluding pleadings in this lawsuit, that REFER to the

6

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**EXHIBIT 34**

**421**

1    1992 AGREEMENT as a revocation of Joseph Shuster's copyright grants to YOU.

2    **Request No. 19**

3    All DOCUMENTS, excluding pleadings in this lawsuit, that REFER to the

4    1992 AGREEMENT as a re-grant of Joseph Shuster's copyright interests to YOU.

5    **Request No. 20**

6    All COMMUNICATIONS with third parties, excluding parties to this lawsuit,

7    that REFER to this lawsuit OR to ANY of the SIEGEL LITIGATIONS (excluding

8    pleadings filed in this lawsuit OR in ANY of the SIEGEL LITIGATIONS).

9    **Request No. 21**

10   All DOCUMENTS that support YOUR contention that "Toberoff purported to

11   secure a majority and controlling financial stake in copyright interests in Superman

12   assertedly held by the Siegel and Shuster heirs and to preclude the heirs from freely

13   entering into new agreements with DC Comics for the continued exploitation of

14   Superman," found in paragraph 3 of YOUR COMPLAINT.

15   **Request No. 22**

16   All DOCUMENTS that support YOUR contention that "Toberoff procured this

17   joint-venture agreement even though he knew that the Shusters' 1992 agreement with

18   DC Comics operated to grant any and all of the heirs' interest in Superman to DC

19   Comics and extinguish any termination rights the heirs might have held," found in

20   paragraph 6 of YOUR COMPLAINT.

21   **Request No. 23**

22   All DOCUMENTS that support YOUR contention that "Toberoff

23   manufactured the position that Jerry Siegel alone—to the exclusion of Shuster—was

24   the sole creator of Superboy," found in paragraph 9 of YOUR COMPLAINT.

25   **Request No. 24**

26   All DOCUMENTS that support YOUR contention that the "deletion of

27   Superboy was directly contrary to the Shusters' interests and occurred solely to park

28   all of the alleged Superboy rights with the Siegels," found in paragraph 10 of YOUR

7
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**422**

1  COMPLAINT.

2  **Request No. 25**

3    All DOCUMENTS that support YOUR contention that "Toberoff induced the

4  Siegels and Shusters to enter into agreements transferring their respective interests to

5  his companies and preventing them from conveying any rights to DC Comics without

6  each other's—and Toberoff's—consent," found in paragraph 11 of YOUR

7  COMPLAINT.

8  **Request No. 26**

9    All DOCUMENTS that support YOUR contention that "[d]espite their

10 previous legal battles with National and the widespread publicity surrounding this

11 legislation, neither Jerry Siegel nor Joe Shuster ever endeavored to exercise any

12 termination rights under the statute," found in paragraph 50 of YOUR COMPLAINT.

13 **Request No. 27**

14   All DOCUMENTS that support YOUR contention that "[t]he 1992 Agreement

15 thus operated to revoke, rescind, and replace Shuster's prior copyright grants and

16 agreements," found in paragraph 55 of YOUR COMPLAINT.

17 **Request No. 28**

18   All DOCUMENTS that support YOUR contention that "[a]fter the 1992

19 Agreement, DC Comics enjoyed an amicable relationship with the Shuster Heirs,"

20 found in paragraph 55 of YOUR COMPLAINT.

21 **Request No. 29**

22   All DOCUMENTS that support YOUR contention that "the clear effect of the

23 1992 Agreement was to revoke and regrant any prior copyright grants that could

24 otherwise have been subject to termination," found in paragraph 56 of YOUR

25 COMPLAINT.

26 **Request No. 30**

27   All DOCUMENTS that support YOUR contention that "[i]n 2001, Toberoff

28 and his motion-picture production company, Pacific Pictures, induced the Shuster

8

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**

**423**

1  Heirs to violate their 1992 Agreement and wrongfully attempt to acquire and exploit

2  future copyright interests in Superman," found in paragraph 58 of YOUR

3  COMPLAINT.

4  **Request No. 31**

5      All DOCUMENTS that support YOUR contention that "Toberoff made

6  contact with the Shuster Heirs and embarked on a course of conduct with them to

7  disrupt their relationship with DC Comics, including DC Comics' rights under the

8  1992 Agreement," found in paragraph 60 of YOUR COMPLAINT.

9  **Request No. 32**

10     All DOCUMENTS that support YOUR contention that "Toberoff used the

11  Shuster Heirs to gain access to the heirs of Jerry Siegel, Joanne Siegel and Laura

12  Siegel Larson," found in paragraph 66 of YOUR COMPLAINT.

13  **Request No. 33**

14     All DOCUMENTS that support YOUR contention that "[o]n or around

15  February 9, 2002, Toberoff approached Steven Spira, a Warner Bros. Pictures

16  executive, at a social function and told him: 'You have a Superman rights problem,'"

17  found in paragraph 73 of YOUR COMPLAINT.

18  **Request No. 34**

19     All DOCUMENTS that support YOUR contention that "as a result of the

20  Siegel-Toberoff Agreement and IP Worldwide Agreement, Toberoff now owns a

21  45% financial interest in the Siegel Heirs' purported Superman rights," found in

22  paragraph 84 of YOUR COMPLAINT.

23  **Request No. 35**

24     All DOCUMENTS that support YOUR contention that the November 8, 2002

25  "Superboy" termination notice "not only erroneously stated that Superboy was a

26  copyrightable work not derivative of Superman, but falsely recited that Superboy was

27  created solely by Siegel (without contribution from Shuster)," and that "Defendants

28  knew these claims were false," found in paragraphs 86-87 of YOUR COMPLAINT.

9
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**424**

**Request No. 36**

All DOCUMENTS that support YOUR contention that "[t]hrough Pacific Pictures, Toberoff manipulated the Siegel and Shuster Heirs into falsely positioning Siegel as the sole creator of any putative copyrightable elements in Superboy," and that "[t]hey did so to enable the Siegels to claim a sole ownership interest in Superboy elements allegedly subject to recapture and thereby prevent DC Comics from exploiting Superboy without the Siegels' authorization and without being subject to claims of copyright infringement," found in paragraph 89 of YOUR COMPLAINT.

**Request No. 37**

All DOCUMENTS that support YOUR contention that "Toberoff (acting through Pacific Pictures) caused the Shuster Heirs to remove from the 2001 joint venture between Pacific Pictures and the Shuster Heirs all claims by the Shusters to alleged rights in any and all Superboy elements," found in paragraph 90 of YOUR COMPLAINT.

**Request No. 38**

All DOCUMENTS that support YOUR contention that "Toberoff induced the Shuster Heirs to disclaim any interest in Superboy so that Toberoff could position the Siegel Heirs to recapture 100% of these rights and assert a copyright infringement action against DC Comics," found in paragraph 90 of YOUR COMPLAINT.

**Request No. 39**

All DOCUMENTS that support YOUR contention that "IP Worldwide is the Toberoff entity which, upon information and belief, holds a portion of the Siegel Heirs' Superman and Superboy rights pursuant to the IP Worldwide Agreement," found in paragraph 93 of YOUR COMPLAINT.

**Request No. 40**

All DOCUMENTS that support YOUR contention that "because the Shuster Heirs and Pacific Pictures had agreed that all rights held by their joint venture would

1  be divided 50/50 upon termination of the joint venture 'for any reason,' the apparent

2  effect of the September 10, 2004 Letter was to transfer 50% of the Shuster Heirs'

3  purported share of Shuster's rights to Toberoff or his companies," found in paragraph

4  99 of YOUR COMPLAINT.

5  **Request No. 41**

6  All DOCUMENTS that support YOUR contention that "DC Comics is

7  informed and believes that Toberoff (or his companies) now own 50% of the Shuster

8  Heirs' putative rights as well as the 45% share of the Siegel Heirs' putative rights,"

9  found in paragraph 100 of YOUR COMPLAINT.

10  **Request No. 42**

11  All DOCUMENTS that support YOUR contention that "Toberoff, Pacific

12  Pictures, IP Worldwide, the Siegels, and the Shusters have entered into one or more

13  agreements preventing the Siegels or Shusters from conveying rights to DC Comics

14  or entering into other agreements with DC Comics, including for the settlement of

15  their putative termination claims or litigation, without the consent of other parties,"

16  found in paragraph 101 of YOUR COMPLAINT.

17  **Request No. 43**

18  All DOCUMENTS that support YOUR contention that "[t]he Shuster

19  Termination Notice is invalid, and thus ineffective," found in paragraph 106 of

20  YOUR COMPLAINT.

21  **Request No. 44**

22  All DOCUMENTS that support YOUR contention that "Shuster's termination

23  right ceased to exist on his death," found in paragraph 110 of YOUR COMPLAINT.

24  **Request No. 45**

25  All DOCUMENTS that support YOUR contention that "[t]he 1992 Agreement

26  that Frank Shuster and Jean Peavy entered into with DC Comics bars the Shuster

27  Estate from pursuing termination because, *inter alia*, in exchange for valuable

28  consideration, the 1992 Agreement effected a rescission, revocation, and re-grant of

1  all prior copyright grants, which eliminated any pre-1978 grant that could be subject

2  to termination under section 304 of the Copyright Act," found in paragraph 112 of

3  YOUR COMPLAINT.

4  **Request No. 46**

5      All DOCUMENTS that support YOUR contention that "Shuster's heirs

6  approached DC Comics in 1992 seeking increased annual payments, certain tax

7  benefits, and payment of Shuster's debts and expenses," and that "[a]t the time,

8  Shuster's heirs recognized the value of Superman as a property," found in paragraph

9  115 of YOUR COMPLAINT.

10  **Request No. 47**

11      All DOCUMENTS that support YOUR contention that "[b]y effectively

12  rescinding, revoking, and re-granting any and all prior grants of Joe Shuster's rights,

13  the Shuster Heirs have no right to terminate any of the Superman copyrights," found

14  in paragraph 116 of YOUR COMPLAINT.

15  **Request No. 48**

16      All DOCUMENTS that support YOUR contention that "the Shusters are

17  estopped from disputing that the 1992 Agreement remains in full force and effect,

18  which operates to preclude the assertion of any termination right," found in paragraph

19  117 of YOUR COMPLAINT.

20  **Request No. 49**

21      All DOCUMENTS that support YOUR contention that "[t]he Shuster

22  Termination Notice is also invalid because the party that filed it … lacked authority

23  to do so," found in paragraph 118 of YOUR COMPLAINT.

24  **Request No. 50**

25      All DOCUMENTS that support YOUR contention that "the Shuster Estate

26  does not own—and did not own at the time the Shuster Termination Notice was

27  executed—the 'more than one-half' majority interest necessary to terminate under

28  section 304( c)(1) of the Copyright Act," found in paragraph 119 of YOUR

1  COMPLAINT.

2  **Request No. 51**

3      All DOCUMENTS that support YOUR contention that on November 13, 2003,

4  "the Shuster Estate did not own any of the purported termination right, as this and all

5  other rights had been transferred to the joint venture with Pacific Pictures," found in

6  paragraph 121 of YOUR COMPLAINT.

7  **Request No. 52**

8      All DOCUMENTS that support YOUR contention that "[a]s a result of the

9  September 10, 2004 Letter purporting to cancel the 2001 and 2003 Pacific Pictures

10  Agreements and by the terms of the 2001 and 2003 agreements themselves, any

11  putative rights held by the joint venture were split 50/50 between the Shuster Heirs

12  and Pacific Pictures on cancellation of the joint venture agreement," found in

13  paragraph 121 of YOUR COMPLAINT.

14  **Request No. 53**

15      All DOCUMENTS that support YOUR contention that purported "omissions

16  were not inadvertent, but were intended to conceal material information from DC

17  Comics, including: (a) the various conflicts of interest arising from Toberoff's and

18  his companies' significant ownership interest in the Shuster Estate's and the Siegel

19  Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting

20  the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics

21  regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

22  **Request No. 54**

23      All DOCUMENTS that support YOUR contention that "the Shuster

24  Termination Notice … contains material misrepresentations intended to mislead the

25  courts, Copyright Office, and DC Comics—all to the detriment of DC Comics,"

26  found in paragraph 129 of YOUR COMPLAINT.

27  **Request No. 55**

28      All DOCUMENTS that support YOUR contention that "[i]nduced by

13

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**428**

1  Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights
2  in the Shuster Termination Notice," that "[t]his permitted Toberoff to assert on behalf
3  of the Siegel heirs a baseless Superboy-related copyright infringement claim against
4  DC Comics," and that "[p]rior to these manipulations by Toberoff, Shuster and the
5  Shuster heirs had truthfully maintained for over 50 years that Shuster had co-created
6  Superboy," found in paragraph 131 of YOUR COMPLAINT.

7  **Request No. 56**

8      All DOCUMENTS that support YOUR contention that "Defendants
9  compromised the integrity of the Copyright Office and judicial system by crafting the
10  Shuster Termination Notice in this way, and the Shuster Termination Notice should
11  be held invalid on this and the other related grounds set forth herein," found in
12  paragraph 133 of YOUR COMPLAINT.

13  **Request No. 57**

14      All DOCUMENTS that support YOUR contention that "[t]he Unpublished
15  1940 Superboy Script was derived entirely from pre-existing Superman elements and
16  ideas that had been published by DCI as part of works for hire, and contained no
17  original copyrightable element," found in paragraph 149 of YOUR COMPLAINT.

18  **Request No. 58**

19      All DOCUMENTS that support YOUR contention that the "Superboy" story in
20  "More Fun Comics No. 101 … bore no resemblance to the Unpublished 1940
21  Superboy Script," found in paragraph 150 of YOUR COMPLAINT.

22  **Request No. 59**

23      All DOCUMENTS that support YOUR contention that "the Shuster Heirs have
24  entered into agreements that frustrate and impede DC Comics' period of exclusivity,"
25  found in paragraph 169 of YOUR COMPLAINT.

26  **Request No. 60**

27      All DOCUMENTS that support YOUR contention that "Toberoff has induced
28  the Siegel and Shuster Heirs to enter into additional agreements, which prohibit either

14
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**429**

1  family from entering into agreements conveying rights to DC Comics without the

2  express approval of all stakeholders in the heirs' rights," found in paragraph 170 of

3  YOUR COMPLAINT.

4  **Request No. 61**

5      All DOCUMENTS that support YOUR contention that "the Shuster Heirs have

6  never disputed the validity or existence of the 1992 Agreement, which operated to

7  rescind, revoke, and re-grant all of the Shusters' prior grants of rights in the

8  Superman properties to DC Comics," found in paragraph 175 of YOUR

9  COMPLAINT.

10  **Request No. 62**

11      All DOCUMENTS that support YOUR contention that "[i]n that 1992

12  Agreement, the Shuster Heirs further agreed that they would not—either then or in

13  the future—make any claim of right to any work created in whole or part by Joe

14  Shuster," found in paragraph 175 of YOUR COMPLAINT.

15  **Request No. 63**

16      All DOCUMENTS that support YOUR contention that "DC Comics' 1992

17  Agreement with the Shuster Heirs was both a valid contract and had the probability

18  of future economic benefit to DC Comics," found in paragraph 176 of YOUR

19  COMPLAINT.

20  **Request No. 64**

21      All DOCUMENTS that support YOUR contention that "The Shuster Heirs

22  fully relinquished their rights under any prior agreement and re-granted to DC

23  Comics all of their Superman-related rights," found in paragraph 176 of YOUR

24  COMPLAINT.

25  **Request No. 65**

26      All DOCUMENTS that support YOUR contention that "Toberoff and Pacific

27  Pictures were aware of the 1992 Agreement and DC Comics' ongoing business

28  relationship with the Shusters," and that "Toberoff knew that his actions in having his

15
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**430**

1  company enter into a joint venture with the Shusters for the purpose of terminating

2  DC Comics' rights were substantially certain to interfere with DC Comics' 1992

3  Agreement with the Shusters," found in paragraph 177 of YOUR COMPLAINT.

4  **Request No. 66**

5      All DOCUMENTS that support YOUR contention that "Toberoff and Pacific

6  Pictures engaged in independently wrongful conduct," that they "induced the Shuster

7  Heirs to breach the 1992 Agreement and enter into the illegal joint-venture

8  agreements described above," that they "induced the Shusters to manipulate claims of

9  ownership in Superboy," and that "Toberoff engaged in this misconduct in his role as

10  businessman and shareholder of Pacific Pictures," found in paragraph 178 of YOUR

11  COMPLAINT.

12  **Request No. 67**

13      All DOCUMENTS that support YOUR contention that "[a]s the direct result of

14  Toberoff's and Pacific Pictures' actions, the Shuster Heirs have breached the 1992

15  Agreement," found in paragraph 179 of YOUR COMPLAINT.

16  **Request No. 68**

17      All DOCUMENTS that support YOUR contention that "[t]he consent

18  agreements Toberoff has procured are void as a matter of law and public policy

19  because they strip the Siegels and Shusters of their right freely to settle their claims

20  and violate DC Comics' concomitant right freely to negotiate settlement of such

21  claims," found in paragraph 188 of YOUR COMPLAINT.

22  Dated:  December 13, 2011      RESPECTFULLY SUBMITTED,
                                    /s/ Marc Toberoff
23  ─────────────────────────────────────────────────
                                    Marc Toberoff
24                                  TOBEROFF & ASSOCIATES, P.C.

25                                  Attorneys for Defendants, Mark Warren Peary, as
                                    personal representative of the Estate of Joseph
26                                  Shuster, Jean Adele Peavy, and Laura Siegel
                                    Larson, individually and as personal representative
27                                  of the Estate of Joanne Siegel

28

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**431**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17
DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC
COMICS

**EXHIBIT 34**
**432**

# EXHIBIT 35

1  Marc Toberoff (State Bar No. 188547)
   *mtoberoff@ipwla.com*
2  Keith G. Adams (State Bar No. 240497)
   *kgadams@ipwla.com*
3  TOBEROFF & ASSOCIATES, P.C.
   22631 Pacific Coast Highway #348
4  Malibu, California 90265
   Telephone:  (310) 246-3333
5  Fax:        (310) 246-3101

6  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
7  Estate of Joseph Shuster, Jean Adele Peavy
   and Laura Siegel Larson, individually and
8  as personal representative of the Estate of
   Joanne Siegel

9

10              **UNITED STATES DISTRICT COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

11  DC COMICS,                          Case No: CV 10-03633 ODW (RZx)

12              Plaintiff,              Hon. Otis D. Wright II, U.S.D.J.

13       vs.                           **DEFENDANT MARK WARREN
                                        PEARY'S FIRST SET OF
14  PACIFIC PICTURES CORPORATION;       INTERROGATORIES TO
    IP WORLDWIDE, LLC; IPW, LLC;        PLAINTIFF DC COMICS**
15  MARC TOBEROFF, an individual;
    MARK WARREN PEARY, as personal      Complaint Filed:  May 14, 2010
16  representative of the ESTATE OF      Trial Date:  None Set
    JOSEPH SHUSTER; JEAN ADELE
17  PEAVY, an individual; LAURA
    SIEGEL LARSON, individually and as
18  personal representative of the ESTATE
    OF JOANNE SIEGEL,
19
    and DOES 1-10, inclusive,
20
21
              Defendants.
22

23

24

25

26

27

28

DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC
COMICS

**EXHIBIT 35**
**433**

1  PROPOUNDING PARTY:        Mark Warren Peary

2  RESPONDING PARTY:         DC Comics

3  SET NUMBER:               One (Nos. 1-15)

4      PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of

5  Civil Procedure, defendant Mark Warren Peary hereby requests that plaintiff DC

6  Comics answers the following First Set of Interrogatories ("Interrogatories"),

7  separately and fully, in writing and under oath, and serve answers upon the attorneys

8  of record for defendants within thirty (30) days from the date of service hereof.

## I.

## DEFINITIONS AND INSTRUCTIONS

11     1.    Words and phrases spelled in capital letters herein shall have the specific

12  meanings and definitions expressly assigned to them in these "Definitions and

13  Instructions," which shall apply to each and every Interrogatory set forth herein, and

14  are hereby fully incorporated within each Interrogatory by reference.

15     2.    The terms "YOU" and "YOUR" refer to plaintiff DC Comics, and any

16  of its past or present predecessors-in-interest or successors-in-interest, any partner,

17  joint venturer, parent company, affiliated company, subsidiary or division thereof,

18  including Warner Bros. Entertainment Inc., and any other person or persons acting on

19  its behalf, including, but not limited to, past or present agents, managers,

20  representatives, advisors, employees, attorneys, accountants, investigators and

21  insurance companies, and any agents or employees of the above, both singularly and

22  cumulatively.

23     3.    The terms "DOCUMENT" and "DOCUMENTS," as used herein, are

24  used in their broad sense to encompass all documents and tangible things subject to

25  an interrogatory under Rule 33 of the Federal Rules of Civil Procedure, including,

26  without limitation, any "writing," "recording," or "photograph" as those terms are

27  defined in Rule 1001 of the Federal Rules of Evidence.  They shall include, but are

28  not limited to: e-mail, audio or video recordings, correspondence, letters, phone

1
DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC
COMICS

**EXHIBIT 35**
**434**

1   messages, notes, memoranda, facsimiles, publications, contracts, agreements,

2   calendars, drafts of proposed contracts or agreements, papers, and photographs.

3       4.      The term "COMMUNICATION" means all written, electronic, oral,

4   telephonic, gesture, or other transmission or exchange of information, including

5   without limitation any inquiry, request, dialogue, discussion, conversation, interview,

6   correspondence, letter, note, consultation, negotiation, agreement, understanding,

7   meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal

8   interaction between any individuals or entities.

9       5.      The term "DEFENDANTS," as used herein, refers to Laura Siegel

10  Larson, Mark Warren Peary, Jean Adele Peavy, Marc Toberoff, Pacific Pictures

11  Corporation, IP Worldwide, LLC, and IPW, LLC.

12      6.      The term "SIEGEL LITIGATION," as used herein, refers to the cases

13  *Siegel v. Warner Bros. Entertainment Inc., et al.*, C.D. Cal. Case No. 04-CV-08400

14  ODW (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-CV-08776

15  ODW (RZx).

16      7.      The term "WARNER," as used herein, refers to Warner Bros.

17  Entertainment, Inc., and any of its past or present predecessors-in-interest or

18  successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or

19  division thereof, and any other person or persons acting on its behalf, including, but

20  not limited to, past or present agents, managers, representatives, advisors, employees,

21  attorneys, accountants, investigators and insurance companies, and any agents or

22  employees of the above, both singularly and cumulatively.

23      8.      The term "COMPLAINT," as used herein, refers to DC Comics' First

24  Amended Complaint, filed in this case on September 3, 2010.

25      9.      The term "1992 AGREEMENT," as used herein, refers to the letter

26  agreement dated October 2, 1992 between DC Comics, Jean Adele Peavy and Frank

27  Shuster, referred to in Paragraph 55 of the COMPLAINT.

28      10.     The term "SEPTEMBER 10, 1992 LETTER," as used herein, refers to

2
DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC
COMICS

EXHIBIT 35
435

1  the purported letter dated September 10, 1992, sent from Frank Shuster to DC

2  Comics, referred to in Paragraph 54 of the COMPLAINT.

3      11.    The term "SEPTEMBER 7, 1999 LETTER," as used herein, refers to the

4  purported letter dated September 7, 1999, sent from Jean Adele Peavy to DC Comics,

5  referred to in Paragraph 56 of the COMPLAINT.

6      12.    The term "IDENTIFY," as used herein, means the following:

7      a.    When used in reference to a person, it means to state the person's full

8            name, present or last known address, and present or last known business

9            affiliation and business address;

10     b.    When used in reference to an organization, it means to state the

11            organization's full name and, if it is a corporation, partnership, or other

12            business entity, the address of its principal place of business;

13     c.    When used in reference to a DOCUMENT, it means to state, to the

14            extent known, the DOCUMENT's (i) type (*e.g.,* letter, memo, note, e-

15            mail); (ii) subject matter; (iii) current location; (iv) every author,

16            recipient, and addressee; and (v) the bates number of the DOCUMENT

17            if simultaneously or previously produced in this or any related action;

18     d.    When used in reference to a COMMUNICATION, it means to state, to

19            the extent known, the COMMUNICATION's (i) date; (ii) type (*e.g.,*

20            oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient

21            and addressee; and (v) the bates number of the DOCUMENT if

22            simultaneously or previously produced in this or any related action.

23     13.    The terms "REFER" and "RELATE" mean, without limitation,

24  evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention,

25  show, discuss, describe, or comment upon.

26     14.    The terms "REGARDING," "RELATING TO" and "REFERRING TO"

27  shall each have the same meaning as REFER and RELATE.

28     15.    As used herein, the singular shall always include the plural, or vice-

versa, and verb tenses shall always include the past, present and future tenses.  The word "any" shall be understood to include and encompass "all."  The word "all" shall be understood to include and encompass "any."  The words "AND" as well as "OR" shall be construed disjunctively or conjunctively, as necessary, to bring within the scope of these Interrogatories all information which might otherwise be construed to be outside their scope.

## II.

## INTERROGATORIES

**Interrogatory No. 1**

IDENTIFY all COMMUNICATIONS between YOU AND Mark Warren Peary.

**Interrogatory No. 2**

IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele Peavy.

**Interrogatory No. 3**

IDENTIFY all COMMUNICATIONS between YOU AND Frank Shuster.

**Interrogatory No. 4**

IDENTIFY all COMMUNICATIONS between YOU AND Joseph Shuster REGARDING YOUR rights in AND to Superman.

**Interrogatory No. 5**

IDENTIFY all COMMUNICATIONS between YOU AND any third-party that REFFERRED TO the 1992 AGREEMENT.

**Interrogatory No. 6**

IDENTIFY all persons who participated in the negotiation of the 1992 AGREEMENT.

**Interrogatory No. 7**

IDENTIFY all persons who participated in the drafting of the 1992 AGREEMENT.

///

DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC COMICS

**EXHIBIT 35**
**437**

**Interrogatory No. 8**

IDENTIFY all witnesses REGARDING the 1992 AGREEMENT.

**Interrogatory No. 9**

IDENTIFY any evidence that supports YOUR contention that "[t]he Shuster Termination Notice is invalid, and thus ineffective," found in paragraph 106 of YOUR COMPLAINT.

**Interrogatory No. 10**

IDENTIFY any evidence that supports YOUR contention that "[t]he 1992 Agreement that Frank Shuster and Jean Peavy entered into with DC Comics bars the Shuster Estate from pursuing termination because, *inter alia*, in exchange for valuable consideration, the 1992 Agreement effected a rescission, revocation, and re-grant of all prior copyright grants, which eliminated any pre-1978 grant that could be subject to termination under section 304 of the Copyright Act," found in paragraph 112 of YOUR COMPLAINT.

**Interrogatory No. 11**

IDENTIFY any evidence that supports YOUR contention that "Shuster's heirs approached DC Comics in 1992 seeking increased annual payments, certain tax benefits, and payment of Shuster's debts and expenses," and that "[a]t the time, Shuster's heirs recognized the value of Superman as a property," found in paragraph 115 of YOUR COMPLAINT.

**Interrogatory No. 12**

IDENTIFY any evidence that supports YOUR contention that "the Shusters are estopped from disputing that the 1992 Agreement remains in full force and effect, which operates to preclude the assertion of any termination right," found in paragraph 117 of YOUR COMPLAINT.

**Interrogatory No. 13**

IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were

**EXHIBIT 35**
**438**

1  intended to conceal material information from DC Comics, including: (a) the various

2  conflicts of interest arising from Toberoff's and his companies' significant ownership

3  interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent

4  agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to

5  enter into agreements with DC Comics regarding those rights," found in paragraph

6  123 of YOUR COMPLAINT.

7  **Interrogatory No. 14**

8      IDENTIFY any evidence that supports YOUR contention that "the Shuster

9  Termination Notice … contains material misrepresentations intended to mislead the

10  courts, Copyright Office, and DC Comics—all to the detriment of DC Comics,"

11  found in paragraph 129 of YOUR COMPLAINT.

12  **Interrogatory No. 15**

13      IDENTIFY any evidence that supports YOUR contention that "[i]nduced by

14  Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights

15  in the Shuster Termination Notice," found in paragraph 131 of YOUR

16  COMPLAINT.

17

18  Dated:  December 13, 2011          RESPECTFULLY SUBMITTED,
19                                      /s/ Marc Toberoff
                                        _____
20                                      Marc Toberoff
                                        TOBEROFF & ASSOCIATES, P.C.
21                                      Attorneys for Defendants, Mark Warren Peary, as
22                                      personal representative of the Estate of Joseph
                                        Shuster, Jean Adele Peavy, and Laura Siegel
23                                      Larson, individually and as personal representative
                                        of the Estate of Joanne Siegel
24

25

26

27

28

DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC
COMICS

**EXHIBIT 35**
**439**

# EXHIBIT 36

# O'MELVENY & MYERS LLP

<table>
<tr><td>BEIJING<br>BRUSSELS<br>HONG KONG<br>LONDON<br>LOS ANGELES<br>NEWPORT BEACH<br>NEW YORK</td><td>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067-6035<br><br>TELEPHONE (310) 553-6700<br>FACSIMILE (310) 246-6779<br>www.omm.com</td><td>SAN FRANCISCO<br>SHANGHAI<br>SILICON VALLEY<br>SINGAPORE<br>TOKYO<br>WASHINGTON, D.C.</td></tr>
</table>

December 16, 2011

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

   Re:  ***DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)**

Dear Marc:

   We have received defendant Mark Warren Peary's First Request For Production Of Documents And Things and First Set of Interrogatories, both dated December 13, 2011. Pursuant to Rules 6, 33, and 34 of the Federal Rules of Civil Procedure, our responses are due on January 17, 2012. In light of the intervening holidays and similar extensions we have granted defendants in the past, we would appreciate a 30-day extension—until February 17, 2012—to serve our responses. Please let us know whether you agree to this brief extension.

   Moreover, we note that many of the definitions in Mr. Peary's requests are similar—or in some cases, far broader—than the definitions in DC's prior discovery requests, which defendants objected to and argued were impermissibly "vague and ambiguous, overbroad and unduly burdensome." To take just a few examples:

| DC's Definition | Defendants' Objections | Peary's Definition |
|---|---|---|
| "'YOU'" or 'YOUR' means Mark Warren Peary and the Estate of Joseph Shuster, and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives." *E.g.*, Aug. 17, 2010 Req. for Prod. to Def. Peary at 2. | "Peary objects generally to the definitions of the terms 'YOU' and 'YOUR' as vague and ambiguous, overbroad and unduly burdensome. Peary will construe these terms to refer to Peary." Oct. 8, 2010 Def. Peary's Resp. & Objs. to DC's Req. for Prod. at 6. | "The terms 'YOU' and 'YOUR' refer to plaintiff DC Comics, and <u>any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, parent company, affiliated company, subsidiary or division thereof, including Warner Bros. Entertainment Inc., and any other person or persons acting on its behalf,</u> |

**EXHIBIT 36
440**

O'Melveny & Myers llp
December 16, 2011 - Page 2

| | | including but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively." *E.g.*, Dec. 13, 2011 Req. for Prod. to Pl. DC at 1 (emphasis added). |
|---|---|---|
| Definitions of the terms "DEFENDANTS," "SHUSTER HEIRS," "SIEGEL HEIRS," "SHUSTER," and "SIEGEL" included those groups' "agents, employees, attorneys, and representatives." *E.g.*, Aug. 17, 2010 Req. for Prod. to Def. Peary at 2-3. | Defendants objected to the definitions of "DEFENDANTS," "SHUSTER HEIRS," and "SIEGEL HEIRS" as "vague and ambiguous, overbroad and unduly burdensome, especially with respect to the definition's reference to 'attorneys.'" In each instance, defendants "construe[d]" those terms so as not to include the reference to "attorneys." Sept. 6, 2011 Def. Peary Resp. & Objs. to DC's Req. for Prod. at 5.<br><br>Defendants similarly "construe[d]" the definitions of "SHUSTER" and "SIEGEL" so as not to include those individual's "agents, employees, attorneys, and representatives." Oct. 8, 2010 Def. Peary's Resp. & Objs. to DC's Req. for Prod. at 6. | "The term 'WARNER,' as used herein, refers to Warner Bros. Entertainment, Inc., and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person, or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively." *E.g.*, Dec. 13, 2011 Req. for Prod. to Pl. DC at 2 1 (emphasis added). |
| "'REFER' or 'RELATE' means, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or | "[A] fundamental problem with DC's prior requests was their use of the very broadly defined term 'RELATING,' which potentially implicated virtually every document in | "The terms 'REFER' and 'RELATE' mean, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, |

**EXHIBIT 36**
**441**

O'MELVENY & MYERS LLP
December 16, 2011 - Page 3

| | | |
|---|---|---|
| comment upon." *E.g.*, Aug. 17, 2010 Req. for Prod. to Def. Peary at 2 (emphasis added). | the case and rendered such requests overbroad." June 13, 2011 Toberoff Letter at 3. | discuss, describe, or comment upon." *E.g.*, Dec. 13, 2011 Req. for Prod. to Pl. DC at 3 (emphasis added). |

It therefore appears that defendants have changed their position on the propriety of DC's definitions.  DC will proceed to prepare its responses on the premise that defendants agree DC's definitions were proper and will supplement their previous discovery responses accordingly.  If not, we assume you will withdraw Mr. Peary's discovery requests and serve new ones that include more narrowly-tailored definitions.

Please let us know your position as soon as possible so that we may respond accordingly.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Richard Kendall, Esq.
       Laura Brill, Esq.

EXHIBIT 36
442

# EXHIBIT 37

| | |
|---|---|
| **Subject:** | FW: DC Comics v. PPC |
| **Attachments:** | 12.16.11 Letter.pdf |

**From:** Seto, Cassandra
**Sent:** Wednesday, December 21, 2011 6:55 PM
**To:** Marc Toberoff; 'Keith Adams'; 'rkendall@kbkfirm.com'; Laura Brill
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** FW: DC Comics v. PPC

Dear Counsel,

We have received no response to our December 16, 2011 letter concerning Mr. Peary's discovery requests (attached hereto).  We need to know your position on these matters so that we may proceed without further delay.

Thanks,
Cassie

---

**From:** Seto, Cassandra
**Sent:** Friday, December 16, 2011 5:18 PM
**To:** Marc Toberoff; 'Keith Adams'; 'rkendall@kbkfirm.com'; Laura Brill
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** DC Comics v. PPC

Dear Counsel,

Please see the attached letter from Matthew Kline.

**Cassandra L. Seto**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067
Telephone:  310.246.6703  |  Facsimile:  310.246.6779

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

1

**EXHIBIT 37**
**443**

# EXHIBIT 38

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22631 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

December 23, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

I write in response to your December 16, 2011 letter and the Local Rule 37-1 joint stipulation that DC served on December 20, 2011.

***Extension Request:*** We will agree to a one-month extension of the deadline for DC to respond to the December 13, 2011 discovery served by Mark Warren Peary, from January 17, 2012 to February 17, 2012, provided that DC stipulates to a court order that it will provide substantive responses, not just objections, to such discovery and produce all responsive documents on February 17, 2012.

***Definitions:*** Defendants have not "changed their position." Defendants simply used the same definitions that DC used. If DC objects to its own definitions, it should do so in the above-referenced objections.

***Motion to Compel:*** DC's motion to compel Mr. Toberoff to respond to six additional interrogatories is without any legitimate basis, in light of DC's tactical decision to use all twenty-five of its interrogatories to Mr. Toberoff to probe one subject, as set forth in our August 10 and September 22, 2011 correspondence. Moreover, DC chose to serve its motion such that defendants' response would be due December 27, 2011, shortly after Christmas, when Mr. Toberoff is on holiday with his family and I am also unavailable, even though DC would not need to file its motion until December 30, 2012. In light of the intervening holidays, defendants request an extension of their time to respond to the motion until 6:00 p.m. on December 30, 2011.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

**EXHIBIT 38**
**444**

**TOBEROFF & ASSOCIATES, P.C.**

December 23, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2


Very truly yours,

Keith Adams

**EXHIBIT 38**
**445**

# EXHIBIT 39

**Subject:**                        FW: DC Comics v. Pacific Pictures Corp.

**From:** Seto, Cassandra
**Sent:** Saturday, December 24, 2011 11:57 AM
**To:** Marc Toberoff; 'Keith Adams'
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** FW: DC Comics v. Pacific Pictures Corp.

Counsel,

Please see the email below sent on behalf of Matt Kline.

        *        *        *

Keith,

In response to your letter of last night, there's no need for a court order to provide for a 30-day extension to respond to discovery.  You've asked for many extensions, been granted them, and that has not been a condition.  Nor should we need to trouble the Court with having to enter an order on a routine discovery extension.  I trust we can dispense with this.

On your opposition to our motion, the extension you requested is fine, provided that you agree to sign and return the completed joint stipulation by 8.00 p.m. on December 30 so that we may file it that day and maintain the January 23 hearing date.  The unfortunately typical vitriol in your letter is not productive and undercut by your unreasonable demands concerning our extension request, the fact that defendants waited over a week, and until midnight before Christmas Eve to respond to our request, and the fact that had you called earlier in the week and asked for the extension we would have provided it.

The rest of your letter is disputed, and DC's rights are reserved.

Matt

**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Friday, December 23, 2011 05:10 PM
**To:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Subject:** DC Comics v. Pacific Pictures Corp.

Counsel:

Please see the attached correspondence.

Keith G. Adams
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com
http://www.ipwla.com

This message and any attached documents may contain information from

1

**EXHIBIT 39**
**446**

Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

2

**EXHIBIT 39**
**447**