DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

Attorneys for Plaintiff DC Comics

(continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**JOINT STATUS REPORT PURSUANT TO NOVEMBER 28, 2011 ORDER SCHEDULING STATUS CONFERENCE, FED. R. CIV. P. 16 AND 26, AND C.D. CAL. R. 26-1**<br><br>Hon. Otis D. Wright II |

j

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:    (845) 265-2819

Attorneys for Plaintiff DC Comics

MARC TOBEROFF (S.B. #188547)
  mtoberoff@ipwla.com
NICHOLAS C. WILLIAMSON (S.B. #231124)
  nwilliamson@ipwla.com
KEITH G. ADAMS (S.B. #240497)
  kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265
Telephone:  (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Laura Siegel Larson,
Mark Warren Peary, and Jean Peavy

RICHARD B. KENDALL (S.B. # 90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. # 195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. # 236155)
  ndaum@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

Attorneys for Marc Toberoff, Pacific Pictures
Corporation, IP Worldwide, LLC, and IPW, LLC

JOINT STATUS REPORT

1    The parties respectfully submit this Joint Status Report pursuant to the
2  Court's November 28, 2011 order (Docket No. 350), Rules 26(f) and 16(b)-(c) of
3  the Federal Rules of Civil Procedure, and Local Rules 16-15 and 26-1.  The Joint
4  Status Report reflects the parties' good-faith efforts to discuss and resolve various
5  case management issues and identifies those issues on which the parties have been
6  unable to reach agreement.  In such instances, the parties separately set forth their
7  respective positions.  The parties reserve all rights to respond to the contentions of
8  other parties at the appropriate time.

9  **I.    NATURE OF THE CASE**

10        **A.    <u>Key Issues</u>**

11              1.    <u>DC's Position</u>

12    DC filed this case in May 2010.  The estate of Joseph Shuster, a co-creator of
13  Superman, served a copyright termination notice that purports to recapture
14  Shuster's copyright interest in Superman, effective October 26, 2013.  DC's
15  complaint challenges the validity of this termination notice.  DC's complaint also
16  alleges that the Toberoff defendants interfered with its rights under federal and state
17  law and its agreements with the Shuster heirs and the heirs of Jerome Siegel,
18  another co-creator of Superman.  DC's complaint asserts six claims for relief:

19    • DC's First Claim seeks a declaration that the Shuster estate's copyright
20      termination notice is invalid on five grounds.  Docket No. 49 ¶¶ 105-34.

21    • DC's Second Claim, pleaded in the alternative, seeks a declaration
22      concerning the limited scope of the Shusters' recaptured rights (if any).  *Id.*
23      ¶¶ 135-64.

24    • DC's Third Claim, also pleaded in the alternative to the First Claim, seeks a
25      declaration that section 304(c)(6)(D) of the Copyright Act prohibits
26      defendants from restricting the Shusters' freedom to negotiate with DC
27      concerning their putative copyrights.  *Id.* ¶¶ 165-73.

28

- DC's Fourth through Sixth Claims, which arise under California law, allege that the Toberoff defendants induced the Siegel and Shuster heirs to enter into business agreements in violation of DC's rights and business interests. *Id.* ¶¶ 174-89.

The parties recently proposed to the Court, by stipulation, a bifurcated trial on DC's First Claim. The parties submitted that such a trial was an efficient way to obtain a prompt adjudication on a key issue in the case, and they agreed that the Court's ruling on DC's First Claim could be certified for immediate appeal under Rule 54(b). Docket No. 351. On December 13, 2011, the Court denied the parties' proposal. Docket No. 354. If the Court would like, the parties are prepared to address the benefits of bifurcation at the status conference.

Bifurcation is appropriate where, as here, it "defers costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am., Inc., v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). There is a need for swift resolution of DC's First Claim, given that the alleged effective date of the Shuster estate's termination notice is October 26, 2013, and it is in the best interests of all parties (including fans of Superman) to have the basic issue of the validity of the notice resolved now. DC's contracts concerning the exploitation of the underlying Superman rights often need to be negotiated well in advance—for example, merchandising contracts often require a forward-looking term of four years or more.

The parties estimate that a trial on DC's First Claim would take less than one week. Many of the legal issues underlying these claims were extensively briefed in connection with defendants' now-withdrawn Rule 12(b)(6) motions.

DC also believes its Third Claim could be addressed at this bifurcated trial; defendants do not stipulate to trying DC's Third Claim in this fashion.

DC and defendants disagree whether a bifurcated trial on its First Claim would require empanelling a jury. The parties would need to brief this issue in

JOINT STATUS REPORT

1    advance of such a trial.  DC submits that its First Claim is equitable in nature, seeks

2    a judicial declaration, presents issues of statutory interpretation, and therefore is

3    triable by the Court.

4        If the Court remains disinclined to hold a bifurcated trial on DC's First

5    Claim, the parties contemplate cross-summary judgment motions on certain of

6    DC's claims.

7                    2.    Defendants' Position

8        Defendants filed an answer asserting defenses to DC's claims, including,

9    without limitation:  failure to state a claim (all claims); the statute of limitations (all

10   claims); California's litigation immunity (Fourth, Fifth and Sixth Claims); issue

11   preclusion (Second Claim, and parts of the First Claim); and federal preemption

12   (Sixth Claim).  Specifically, DC's Third Claim fails because 17 U.S.C. §

13   304(c)(6)(D), on which DC relies, does not provide it with any enforceable right.

14   There is direct caselaw and treatises on point.  *Bourne Co. v. MPL*

15   *Communications, Inc*., 675 F. Supp. 859, 864, 865 n.11 (S.D.N.Y. 1987); 3 W.

16   Patry, *Patry on Copyright* § 7:47, § 21:18.Defendants filed an appeal of this Court's

17   October 25, 2011, order denying defendants' motion to strike DC's Fourth, Fifth,

18   and Sixth Claims for Relief pursuant to California's anti-SLAPP statute, which is

19   currently pending before the Ninth Circuit.  Docket Nos. 337, 339.  The Court

20   therefore lacks jurisdiction to decide these claims at this time and a trial date as to

21   such claims cannot be set.

22       Whereas, Defendants agree that bifurcation as to the First Claim combined

23   with Rule 54(b) certification of the resulting judgment would provide an effective

24   means of efficiently resolving this case, it is neither necessary nor desirable to

25   bifurcate the Third Claim, which involves far more issues, numerous defendants,

26   and substantially overlaps almost completely DC's Sixth Claim, the merits of which

27   are currently before the Ninth Circuit.

28

1    Defendants submit that DC's First Claim presents issues as to contractual

2   intent that are closely intertwined with the issues in DC's Fourth Claim to which

3   the right to a jury trial applies.  In addition, the First Claim for declaratory relief as

4   to a copyright notice of termination looks to the underlying substantive claim, *i.e.,*

5   copyright infringement, to which the right to a jury trial also attaches.  Whether in

6   the context of addressing bifurcation or otherwise, the issue of the right to jury trial

7   requires full briefing.

8        **B.    Complexity of the Case**

9    The parties do not believe this case warrants designation as a complex case

10   or application of the procedures outlined in the Manual For Complex Litigation.

11   **II.    JURISDICTION**

12    This Court has original subject matter jurisdiction over DC's federal claims

13   pursuant to 28 U.S.C. §§ 1331, 1338 and the Copyright Act, 17 U.S.C. §§ 101 *et*

14   *seq.*  This Court has supplemental jurisdiction over DC's state-law claims pursuant

15   to 28 U.S.C. § 1367(a).

16   **III.    DISCOVERY**

17        **A.    Scope of Discovery**

18    The parties held an initial Rule 26(f) conference on August 16, 2010.  The

19   parties served initial disclosures pursuant to Rule 26(a)(1) on September 13, 2010,

20   and will supplement those disclosures as necessary.

21            1.    DC's Position

22    DC does not believe that any changes should be made in the timing, form, or

23   requirement of disclosures under Federal Rules of Civil Procedure 26, 29, or 37.

24   Aside from the limitations set by the applicable rules, DC does not believe that

25   discovery should be conducted in phases or restricted to particular issues.  Indeed,

26   DC defeated myriad efforts by defendants to halt all discovery in this case or limit

27   its scope.  *See* Docket Nos. 42 at 4-7, 40-61; 45 at 2-4, 8-17; 61 at 5-7, 32-55; 74;

28   95 at 55:18-60:10; 110; 115; 117; 121; 124; 160 at 1-3, 6-44;  162-16; 162-17; 163-

1; 163-2; 163-3; 205; 206; 209; 222; 278-1 at 2-4, 9-16; 280;  285; 305; 307; 337; 341.

Written discovery and depositions have been ongoing, although DC has been unable to obtain certain key discovery absent court orders compelling it.  On May 25, 2011, the Magistrate ordered defendants to produce a collection of documents compiled by the author of the "Toberoff Timeline" attached to DC's complaint. Docket No. 262.  The Magistrate stayed its order pending "review before the District Judge."  *Id.* at 4.  This Court upheld that ruling on June 14, 2011.  Docket No. 279.  Defendants refused to produce the documents, filing a petition for a writ of mandamus in the Ninth Circuit and seeking a stay.  *See* Docket Nos. 283, 287. Oral argument on defendants' writ petition is scheduled for February 7, 2012.

Once the Ninth Circuit issues its ruling, DC expects to seek additional discovery concerning the Toberoff Timeline documents, including depositions of:

- the author of the Toberoff Timeline;
- Marc Toberoff and his companies;
- Toberoff's business partners and affiliates; and
- Kevin Marks, the Siegels' former counsel, to whom Toberoff and his business partner made their business offers that are one subject of this case.

DC will not address defendants' ad hominem attacks below, which are inaccurate, contrary to the courts' rulings, and unproductive, but DC reserves its right to do if necessary.

Finally, defendants' claim (added late this evening) that DC somehow wanted to add length or rhetoric to this joint submission is without basis, as proven by the content and tone of the parties' respective arguments in and the drafting history of this document.

2.    Defendants' Position

Defendants do not believe that any changes should be made in the timing, form, or requirement of disclosures under Federal Rules of Civil Procedure 26, 29,

or 37.  Aside from the applicable rules, defendants do not believe that discovery should be conducted in phases or restricted to particular issues.  Defendants believe that discovery should have been stayed during the pendency of their anti-SLAPP motion and that this Court retains authority to stay discovery while the case is on appeal.  Cal. Code. Civ. Proc. §§ 425.16(f)-(g).

As shown by the drafting history of this document and accompanying correspondence, Defendants repeatedly proposed that the parties present a more streamlined status report and limit argument and discussion of discovery disputes.  However, DC's insistence on maintaining such arguments and rhetoric, particularly as to discovery matters and its inaccurate portrayal of writ proceedings, unfortunately necessitates a response.

Numerous privileged documents of the Siegel and Shuster heirs were stolen from Mr. Toberoff's law firm, and anonymously delivered to defendants' litigation opponents at DC/Warner Bros., along with the anonymous "Toberoff Timeline," attached to DC's complaint.  On May 25, 2011, the Magistrate ordered defendants to produce on the grounds that the materials had been disclosed to the U.S. Attorney's Office pursuant to a grand jury subpoena so it could investigate this crime.  Docket No. 262.  The Magistrate stayed its order pending review.  *Id.* at 4.  This Court upheld the Magistrate's May 25 Order on June 14, 2011.  Docket No. 279.  The Magistrate thereafter confirmed that the stay imposed by its May 25 Order applied pending "all review," including writ review by the Ninth Circuit.  Docket No. 287.  Defendants filed a petition for a writ of mandamus in the Ninth Circuit on June 30, 2011, for which the Ninth Circuit ordered full briefing.  Oral argument on defendants' writ petition is scheduled for February 7, 2012.

DC has frivolously and abusively used discovery practice for leverage by increasing defendants' litigation costs, and has brought numerous failed motions, or motions that could easily have been resolved by stipulation.  *See, e.g.,* Docket Nos. 74 (denying DC's motion to initiate discovery as moot), 132-33 (withdrawing DC's

JOINT STATUS REPORT

1  motion pursuant to stipulation), 209 at 1-10, 12 (denying DC's motion as to consent

2  agreements and defendants' privilege logs), 248 (this Court denying DC's motion

3  for review), 260 (withdrawing DC's motion pursuant to stipulation), 262 at 4-5

4  (denying DC's motion as to "document requests [that] are hopelessly overbroad,"

5  and interrogatories answered in a "fully responsive" manner), 285 (denying DC's

6  motion as to redactions to privileged correspondence and retainer agreements), 287

7  (denying DC's motion for reconsideration of stay order), 309 (denying motion to

8  compel documents from Laura Siegel Larson's divorce).

9       After the Court denied defendants' anti-SLAPP motion, defendants initiated

10  their own discovery.  Defendants will serve written discovery as to DC's Second

11  through Sixth Claims and factual allegations in DC's complaint, and anticipate

12  completing such discovery including depositions in 2012.

13       **B.**   **Expert Witnesses**

14       Neither party has designated any expert, nor has a schedule been set to do so.

15       **C.**   **Electronic Information**

16       The parties believe the discovery of electronically-stored information ("ESI")

17  should be governed by the Federal Rules and have taken reasonable steps to

18  preserve ESI and other evidence reasonably related to the allegations in its

19  complaint.

20       **D.**   **Privilege Issues**

21       The parties entered into a December 7, 2010, stipulation concerning certain

22  privilege issues, which provides in part that "[t]he Parties are not required to list on

23  their respective privilege logs in this case any Privileged documents created on or

24  after May 14, 2010"—the date this action was commenced—or certain "internal

25  communications" created during the related *Siegel* litigation.  Docket No. 133 ¶ 5.

26

27

28

JOINT STATUS REPORT

1    **IV.    DISPOSITIVE MOTIONS**

2        **A.    <u>Motions Filed to Date</u>**

3            On August 20, 2010, defendants filed a motion to strike DC's state-law

4    claims (its Fourth, Fifth, and Sixth Claims) under California's anti-SLAPP statute.

5    Docket No. 75.  This Court denied that motion on October 25, 2011.  Docket No.

6    337.  Defendants appealed this ruling, pertaining to DC's Fourth, Fifth and Sixth

7    Claims, on November 2, 2011.  Docket No. 339.

8            On August 20, 2010, Defendants filed motions to dismiss all of DC's claims

9    pursuant to Rule 12(b)(6).  Docket Nos. 77-78, 80.  This Court ordered those

10   motions stricken on September 27, 2011.  Docket No. 328.  Defendants filed a

11   consolidated Rule 12(b)(6) motion on October 14, 2011, which was fully briefed

12   and taken under submission by this Court.  Docket Nos. 333, 334, 338, 342.

13   Defendants thereafter withdrew their Rule 12 motion and answered DC's

14   complaint.  Docket Nos. 343, 347-49.

15           There are no substantive motions currently pending before the Court.

16       **B.    <u>Contemplated Motions</u>**

17           1.    <u>DC's Position</u>

18           If the Court is not inclined to hold a bifurcated trial, DC will likely move for

19   summary judgment on its First Claim on the following grounds, *inter alia*:

20           ***The 1992 Agreement.***  Defendant Jean Peavy—the sole beneficiary of

21   Joseph Shuster's estate—entered into the 1992 agreement with DC, which

22   rescinded all of Shuster's prior copyright grants and re-granted any and all such

23   copyright interests that either he or the Shuster family held to DC.  This 1992

24   Agreement, under which the Shusters have been paid over half a million dollars and

25   continue to be paid, left no pre-1978 copyright grant intact for the Estate of Joseph

26   Shuster to terminate.  *See* 17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen*

27   *Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005); *Penguin Group (USA) Inc.*

28   *v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008).  As explained in DC's Rule 12

1   opposition, the law makes clear that when Peavy entered into this contract, she had

2   full right and authority to dispose of these rights.  Docket No. 89 at 5-13.  The

3   Court could either hold a short bench trial on this issue, particularly to hear the

4   testimony of the party who negotiated the 1992 agreement with Peavy, or it could

5   address it on a more limited basis on summary judgment.

6       *The Lack of Majority Interest.*  Peavy, along with her son Mark Peary and

7   the Estate of Joseph Shuster, "assign[ed]" in 2001 and 2003 all of their putative

8   Superman copyrights and interests to a joint venture they created with Pacific

9   Pictures.  Thus, when the Estate of Joseph Shuster served its copyright termination

10  notice on November 10, 2003, none of Peavy, Peary, or the Estate possessed the

11  required "majority," or greater than 50%, interest necessary to notice the

12  termination.  *See* 17 U.S.C. §§ 304(d), 304(c)(1); 37 C.F.R. § 201.10(b)(1)(vii),

13  (c)(2); *Steinbeck*, 537 F.3d at 202.  This was not a harmless or excusable error.

14  Both the notice itself—and a sworn declaration that Toberoff filed along with it,

15  Docket No. 49 ¶ 93—concealed these critical facts about ownership in the alleged

16  Superman copyrights, in clear violation of federal regulations and law.

17      *The Lack of Statutory Basis to Terminate.*  Section 304(d) of the Copyright

18  Act—on which the Shusters' termination notice is premised—allows termination

19  only by individuals whose rights "expired" under section 304(c) of the Act.

20  Because Joseph Shuster passed away without ever exercising any purported

21  termination right and before his rights could "expire" under the terms of the

22  Copyright Act, there is no basis in law for the Shuster heirs to terminate under the

23  second-chance provisions in section 304(d).  Docket No. 89 at 13-17.

24      DC understands that defendants, as discussed below, may move for summary

25  judgment as well.  DC submits that defendants' motions are without basis, as best

26  evidenced by defendants' choice to abandon such arguments in withdrawing their

27  fully-briefed Rule 12 motion.  Many of DC's responses to defendants' arguments

28

- 9 -                           JOINT STATUS REPORT

1  are contained in its Rule 12 oppositions, should the Court wish to reference them.

2  Docket Nos. 89-91.

3                  2.    <u>Defendants' Position</u>

4       Defendants will file a motion for summary judgment as to the First Claim in

5  its entirety on, without limitation, the following grounds:

6  ***The Shuster Executor Held Termination Rights under § 304(d)***: Part (1) of

7  DC's First Claim (FAC, ¶¶ 107-11) argues that the Shuster Executor purportedly

8  had no termination right under § 304(d) because Joe Shuster's termination rights

9  did not "expire," but "ceased to exist on his death" in 1992.  There is no meaningful

10  distinction between rights "expiring" and rights that "cease[] to exist."  *See*

11  *Groucho Marx Prods. v. Day & Night Co.*, 689 F.2d 317, 320 (2d Cir. 1982);

12  *Milton H. Greene Archives v. CMG Worldwide,* 568 F. Supp. 2d 1152, 1156 (C.D.

13  Cal. 2008).  Moreover, *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197

14  (2d Cir. 2008), plainly holds that § 304(d) termination rights "expire" upon death.

15  DC's wordplay has also been rejected by the Supreme Court in the copyright

16  context, *Stewart v. Abend*, 495 U.S. 207, 212 (1990), and in the termination context

17  as well.  *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364 (S.D.N.Y. 1999).

18  ***Pacific Pictures Had No Termination Rights***: Part (2) of DC's First Claim

19  (FAC, ¶¶ 118-24) argues that Pacific Pictures Corporation held termination rights

20  by purported assignment from the Shuster heirs and had to sign the Shuster

21  Termination.  As a pure matter of law, Pacific Pictures could not and did not hold

22  any termination rights or prospective termination interests and was not required to

23  sign the Shuster Termination.  17 U.S.C. §304(c)(6)(D).

24  ***The 1992 Agreement***: Part (3) of DC's First Claim (FAC ¶¶ 112-17) arguing

25  that the 1992 agreement between DC and Joe Shuster's siblings Frank Shuster and

26  Jean Peavy (the "1992 Agreement") purportedly bars the Shuster Termination

27  because it was a supposed post-1978 "revocation and regrant" of Joe Shuster's pre-

28  1978 copyright grants to DC, fails as a matter of law.  Frank Shuster and Jean

Peavy, as siblings, have never held any termination rights under the Copyright Act, 17 U.S.C. § 304, nor did they ever revoke or regrant Siegel and Shuster's prior Superman grants on which DC has long relied.  To relinquish the Copyright Act's termination right, clear Ninth Circuit law requires <u>both</u> (i) an express revocation and regrant, <u>and</u> (ii) that the contracting party has a then-existing statutory termination right.  *Classic Media, Inc. v. Mewborn,* 532 F.3d 978, 986-89 (9th Cir. 2008).  As a matter of law, neither of these mandatory elements were present in the 1992 Agreement, which had no effect on the Shuster Executor's notice of termination.  The construction of the unambiguous 1992 Agreement is properly a matter of law.  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005).

***The 1948 Consent Judgment***:  Part (4) of DC's First Claim that the May 21, 1948 consent judgment in an old Westchester, NY action (FAC ¶¶ 125-28) bars statutory termination also fails as a matter of law.  DC's exact same argument was expressly rejected in *Siegel v. Warner Bros. Entertainment Inc.*, in an order now entered as a Rule 54(b) judgment.  42 F. Supp. 2d 1098 1131-32 (C.D. Cal. 2008).  The doctrine of issue preclusion or collateral estoppel bars re-litigation of such issues that have already been decided against DC on the merits, and applies with equal force to a Rule 54(b) judgment.  *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987); *Brown v. Dunbar*, 2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010).

***Unclean Hands***:  DC argues that the Shuster Executor possesses "unclean hands" (FAC ¶¶ 129-133) and that the Shuster Termination should be invalidated on that basis, but this fails as a matter of law.  Unclean hands cannot be used offensively to invalidate the Shuster Termination.  *Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir. 2003).  DC's concocts a convoluted "unclean hands" claim based on alleged manipulation of Superboy by the Siegel and Shuster heirs (FAC, ¶¶ 131-33), because the Shuster Executor did not seek to "terminate" DC's rights in

1   Superboy, when that decision was squarely based on preclusive factual findings

2   from the 1947 Action and the Shuster heirs have no financial interest in Superboy.

3   *See Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1121 (C.D. Cal. 2007).

4   Moreover, the relevant Superboy works were outside of the 17 U.S.C. § 304(d)

5   termination "window," and the Shuster Executor could not have terminated such

6   works in any event as a matter of law

7       ***Statute of Limitations***:  The Shuster Termination, served on November 10,

8   **2003**, which terminates Joe Shuster's Superman copyright grants to DC, constitutes

9   a "plain and express repudiation" of DC's continuing copyright co-ownership –

10  triggering the three-year statute of limitations under *Zuill v. Shanahan*, 80 F.3d

11  1366, 1370-71 (9th Cir. 1996) and *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th

12  Cir. 2000).  DC sat on its hands and did not to file its First Claim until April 2010,

13  well outside the statute.

14      Defendants also anticipate seeking summary judgment on DC's Second and

15  Third Claims and anticipate filing such motions with respect to the, Fourth, Fifth

16  and Sixth Claims if they do not prevail in their anti-SLAPP appeal before the Ninth

17  Circuit.  Each of these claims is barred as a matter of law on, *inter alia,* the bases

18  set forth in their motions to dismiss, and DC will not be able to identify any

19  genuine issues of material fact precluding summary judgment.

20      DC's claim that defendants' arguments are "without basis" or were

21  "abandoned" due to defendants' withdrawal of a Rule 12 motion is frivolous.

22  Defendants withdrew such motion as large portions pertained to claims no longer

23  properly before this Court due to defendants' pending appeal.

24  **V.    MEDIATION**

25      The parties engaged in formal mediation sessions before the Hon. Daniel

26  Weinstein (Ret.) in April 2010 and December 2011.  The parties continue to

27  explore settlement, but none is imminent.

28  **VI.    AMENDMENT OF PLEADINGS AND ADDITION OF PARTIES**

1    None is contemplated at present.

2    **VII.    REFERENCE**

3    Neither party believes this case is appropriate for reference to a magistrate or

4    the Alternative Dispute Resolution Program, except as set forth below.

5    **A.    <u>DC's Position</u>**

6    DC believes that the appointment of a discovery referee is warranted to

7    review defendants' privilege logs.   DC has disputed the accuracy and completeness

8    of defendants' privilege logs in a series of motions with the Magistrate.  *E.g.*,

9    Docket Nos. 209 at 12; 225 at 13-17; 253 at 3-5; 329 at 1-5; 332 at 1-4; 336.  To

10   avoid burdening the Magistrate, DC will move for the appointment of a private

11   discovery referee to review defendants' privilege logs in their entirety.

12   Defendants' assertions below about DC's intent in filing such a motion are

13   untrue and inappropriate—and ignore the many rulings by this Court, the

14   Magistrate, and other courts requiring defendants to produce documents that they

15   had improperly logged as privileged.  *See* Docket Nos. 161-5, 209, 262.

16   **B.    <u>Defendants' Position</u>**

17   Claims and motions by DC have been repeatedly denied and defendants'

18   privilege logs have been repeatedly approved.  *See* Docket Nos. 209 at 12; 248;

19   285.  DC seeks to circumvent Magistrate Zarefsky, who has ruled against it and

20   upheld defendants' privilege logs, and to impose on defendants an unwarranted

21   financial burden in the form of a private judge, despite Magistrate Zarefsky's long

22   service as the discovery magistrate in this case and the closely related case, *Siegel*

23   *v. Warner Bros. Entertainment, Inc.*, C.D. Cal. Case No. 04-CV-08400 ODW

24   (RZx).  Moreover, DC has not met-and-conferred on its contemplated motion

25   pursuant to Local Rule 37.

26   **VIII.  TRIAL**

27   The parties estimate that a trial on DC's First Claim can be concluded within

28   one week.  Given that the Shuster estate's copyright termination notice—if valid—

would take effect in 2013, the parties believe that such a trial should take place as soon as practicable as permitted by the schedules of this Court and trial counsel, and preferably no later than September 2012.  Subject to the Court's calendar and views on case management, the parties propose the following schedule:

| Event | Date |
|---|---|
| Bifurcated Trial Begins<br>(Estimated Length:  3 to 5 days) | July 24, 2012 |
| Last Date to File Final Pretrial Exhibit Stipulation | July 19, 2012 |
| Pre-Trial Conference; Deadline to File Statement of Case; Last Day to Hear Dispositive Motions re: First Claim | July 2, 2012 |
| Deadline to Lodge Proposed Pretrial Conference Order & Pretrial Exhibit Stipulation, File Contentions of Fact & Law, Exhibit and Witness Lists, Status Report Regarding Settlement, Etc. | June 25, 2012 |
| Last Day to Hear Discovery Motions | June 18, 2012 |
| Last Date to Conduct Settlement Conference | May 31, 2012 |
| Expert Witness Discovery Cut-Off | May 28, 2012 |
| Last Day to File Discovery Motions | May 28, 2012 |
| Last Day to Conduct Depositions | May 24, 2012 |

     1.    <u>DC's Position</u>

This Court rightly denied defendants' motion to strike DC's Fourth, Fifth, and Sixth Claims under California's SLAPP statute.  Docket No. 337.  Defendants appealed this ruling, Docket No. 340, and DC believes defendants' appeal lacks merit—as did defendants' previous appeals concerning their SLAPP motion.  *E.g.*, Docket Nos. 163-1, 163-2.  DC has every right to pursue discovery regarding its state-law claims pending resolution of this latest appeal.  Docket No. 341.  Indeed, defendants have conceded that they "are not currently seeking a stay of discovery in

JOINT STATUS REPORT

1    this case" based on their SLAPP appeal.  Docket No. 344.  In light of the appeal,

2    DC is not presently asking the Court to set a trial on its state-law claims.

3            2.        Defendants' Position

4            Defendants have not proposed trial dates for the Fourth, Fifth or Sixth

5    Claims, or for a non-bifurcated trial of all claims, in light of defendants' appeal

6    regarding their anti-SLAPP motion and the Court's consequent lack of jurisdiction

7    over the Fourth, Fifth and Sixth Claims.  The parties should submit an additional

8    scheduling report as to the trial for such claims once the appeal is concluded.

9
10   Dated:  January 23, 2012              O'MELVENY & MYERS LLP

11                                         By:  /s/ Daniel M. Petrocelli
12                                              Daniel M. Petrocelli
                                                Attorneys for DC Comics

13   Dated:  January 23, 2012              TOBEROFF & ASSOCIATES, P.C.
14
15                                         By:  /s/ Marc Toberoff
16                                              Marc Toberoff
                                                Attorneys for Laura Siegel Larson,
                                                Mark Warren Peary, and Jean Peavy

17   Dated:  January 23, 2012              KENDALL BRILL & KLIEGER LLP
18
19                                         By:  /s/ Laura Brill
20                                              Laura Brill
                                                Attorneys for Marc Toberoff, Pacific
                                                Pictures Corporation, IP Worldwide,
21                                              LLC, and IPW, LLC

22
23
24
25
26
27
28