1  Marc Toberoff (State Bar No. 188547)
     *mtoberoff@ipwla.com*
2  Keith G. Adams (State Bar No. 240497)
     *kgadams@ipwla.com*
3  TOBEROFF & ASSOCIATES, P.C.
   22631 Pacific Coast Highway #348
4  Malibu, California, 90265
   Telephone: (310) 246-3333
5  Fax:        (310) 246-3101

6  Attorneys for Defendants Mark
   Warren Peary, as personal
7  representative of the Estate of Joseph
   Shuster, Jean Adele Peavy, and Laura
8  Siegel Larson, individually and as
   personal representative of the Estate of
9  Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
|---|---|
| Plaintiff, | Hon. Otis D. Wright II, U.S.D.J. |
| vs. | **DEENDANTS' OPPOSITION TO DC COMICS' MOTION FOR LEAVE TO CONDUCT FURTHER DEPOSITION OF DAWN PEAVY** |
| PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | Complaint Filed: May 14, 2010<br>Trial Date: None Set<br><br>*Declaration of Keith Adams Filed Concurrently Herewith*<br><br>Judge:        Hon. Otis D. Wright II<br>Magistrate: Hon. Ralph Zarefsky<br><br>Hearing Date: February 13, 2012<br>Hearing Time: 10:00 a.m.<br>Courtroom:    540<br><br>Discovery Cutoff:    None Set<br>Pretrial Conference: None Set<br>Trial:               None Set |
| Defendants. | |

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT .........................................................................................................3

    A.   DC's Deposition of Dawn Peavy .................................................................3

    B.   DC Is Not Entitled to Take a Second Deposition of Dawn Peavy ..............4

        1.   Standards For a Second Deposition....................................................4

        2.   None of DC's Stated Grounds Provides a Basis for a Second Deposition ........................................................................5

            a.   The August 2 Letter ....................................................................5

            b.   Jean Peavy's Will Provides No Basis for a Second Deposition .........................................................................6

            c.   Jean Peavy's Competency Provides No Basis for a Second Deposition .................................................................9

    C.   DC and Its Counsel Should Be Reprimanded For Their Aggressive Misrepresentations to the Court...................................10

III. CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Graebner v. James River Corp.*,
130 F.R.D. 440 (N.D. Cal. 1989) ................................................................... 2-4

*Independence Park Apartments v. U.S.*,
59 Fed.Cl. 765 (Fed. Cl. 2004) ......................................................................... 4

*Melhorn v. New Jersey Transit Rail Operations, Inc.*,
203 F.R.D. 176, 180 (E.D. Pa. 2001) ............................................................ 4-5

*Sentry Ins. v. Shivers*,
164 F.R.D. 255, 256 (D. Kan. 1996) ................................................................ 5

**Federal Statutes and Rules**

F.R.C.P. 11(b)(3) ................................................................................................ 12

F.R.C.P. 30(d)(2) .............................................................................................. 3-5

**State Cases**

Cal. Bus. & Prof. Code § 6068(d) ................................................................. 2, 12

## I. INTRODUCTION

Plaintiff DC Comics' ("DC") motion to re-depose Dawn Peavy, a third party with little to no knowledge of any relevance, is based on nothing more than gross and sanctionable distortions of the facts by DC and its counsel. DC desires to depose Dawn twice on the issues of (a) Jean Peavy's will, (b) an August 2, 2011 letter that Dawn did not sign and receive, and (c) Jean Peavy's mental state. None of these supposed grounds has any merit whatsoever.

DC claims Defendants "withheld" Jean Peavy's will when DC did not even request the will until *after* Dawn Peavy's August 3, 2011 deposition (see Declaration of Cassandra Seto (Docket No. 360-1-2; "Seto Decl."), Exs. B-D), and when DC even questioned Mark Warren Peary about the will's contents on June 29, 2011, well prior to Dawn's deposition. *See* Declaration of Keith Adams ("Adams Decl."), Ex. A at 13:14-17. DC then attempts to drum up supposed "inconsistencies" between the terms of Jean Peavy's will and the testimony of Mr. Peary and Dawn Peavy. However, Mr. Peary's deposition transcript – which DC intentionally did *not* attach to its motion – shows that Mr. Peary primarily testified as to Jean Peavy's intent to establish a trust for the benefit of him and his sister Dawn, not the contents of her will, and, to the extent he testified as to the will, he testified as to his *belief* at the time. Adams Decl., Ex. A at 13:18-14:4.

Furthermore, although DC spends several pages on the supposed importance of Jean Peavy's will, DC never demonstrates its relevance to any of DC's claims or to any issue in the action.

DC then makes much ado over a so-called "2011 Pacific Pictures Agreement" – which is no more than an August 2, 2011 letter to which the long-dissolved Pacific Pictures is not a party (the "August 2 letter") that confirms that a 2004 letter cancelling the 2001 and 2003 Pacific Pictures Agreements was intended to leave Pacific Pictures with *no* continuing interest whatsoever in the

1
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

Shuster Termination. *See* Ex. Adams Decl., Ex. G. Dawn Peavy was neither a sender, recipient or signatory to (a) the 2011 letter, (b) the 2004 letter, or (c) the cancelled 2001 and 2003 Pacific Pictures Agreements, all of which are in DC's possession. *See* Adams Decl., Exs. B-D, G; Docket No. 333-1 at 4-5, ¶ 7.

DC and its counsel also egregiously mislead the Court as to Jean Peavy's competency, falsely claiming that she suffered a stroke in 1999, *before* the key events in this case. Mot. at 5. As DC is well aware from the testimony of Jean's doctor, Warren and Dawn, Jean Peavy suffered a stroke in May 2009, well after such events. Docket No. 64-4, ¶ 5; Seto Decl., Ex. A at 25:2-6; Adams Decl., Ex. A at 9:23-25.

DC not only had the full opportunity to depose Dawn Peavy on her mother's capacity – which was brought to DC's and this Court's attention in September 2010 – DC in fact did so. Seto Decl., Ex. A at 55:4-10. DC's desire to question Dawn further on this topic provides no basis for a second deposition.

Lastly, throughout its motion, as in its other pleadings, DC and its counsel misrepresent the facts and knowingly spread fabrications and false innuendo that are unsupported and flatly contradicted by the record in violation of their duties under Cal. Bus. & Prof. Code § 6068(d).

Having first sought to disrupt the Shuster termination and the Shusters' attorney-client relationship through fabricated attacks on Mr. Toberoff, DC and its counsel used Dawn Peavy's initial deposition to disrupt and induce distrust amongst the Shuster family through divisive attacks on Mr. Peary and Mr. Toberoff, while probing defendants' settlement position. DC's motion for a second deposition is but a pretext for further improper efforts along the same lines.

Second depositions, especially of non-parties, are highly disfavored. *See Graebner v. James River Corp.*, 130 F.R.D. 440 (N.D. Cal. 1989); Federal Rule

of Civil Procedure 30(d)(2).  There is no basis whatsoever to subject third party Dawn Peavy to a second deposition, when she had no involvement whatsoever in the events or agreements at issue in this litigation, and has no knowledge of the underlying facts.

## II.     ARGUMENT

### A.     DC's Deposition of Dawn Peavy

DC noticed the deposition of Dawn Peavy on July 1, 2011, for August 3, 2011 in Sante Fe, New Mexico, despite prior notice that this was in the middle of defendants' counsel's vacation and that "Dawn has little or no relevant knowledge and no involvement with this case."  Adams Decl., Ex. F at 34.  DC rejected all offers to hold the deposition anytime before defendants' counsel was to leave for vacation on July 22, 2011, and also rejected offers to hold the deposition on a weekend (even in Los Angeles) to accommodate Dawn Peavy's job.  Adams Decl., Exs. E-F.

At her deposition, Dawn confirmed what was already obvious – that she had no practical involvement with Superman copyright matters, or this case. *See, e.g.,* Seto Decl., Ex. A at 37:11-13 ("Q.  Do you ever talk to your brother about Superman-related issues?  A. Not really."), 66:12-68:10, 74:4-17.

DC used Dawn's deposition ***not*** to gather relevant information, but to improperly probe Dawn as to defendants' settlement posture and positions and to manipulate her and her family with regard to the Shuster termination:

- Q.  You understand, though, that your brother -- you understand that your lawyer here today, Mr. Toberoff, and your brother are seeking to get millions of dollars for your family based on the alleged "Superman" rights that your family holds; correct? (*id.* at 38:9-14);
- Q. And it would be a significant change in your life, would it not, if their efforts were successful and millions of dollars were obtained for your family; correct? (*id.* at 38: 23-39:1);
- Q.  If your family recovered the millions of dollars they say they're entitled to, do you think it would have an impact on your life? (*id.* at 40:1-4; *see also id.* at 40:11-16 (same));
- Q. Would you have to work less hard, potentially?  …. Q. Could you provide more for your children? (*id.* at 40:19-22);

3
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

- Q. Do you know that your brother, on behalf of your family, through your attorney, has made specific settlement demands on my client for money, millions of dollars? (*id.* at 42:22-25);
- Q. Are you aware that your family and your brother have made settlement demands on my client to settle their claims? (*id.* at 43:5-8);
- Q. Okay. And are you aware that DC Comics has made settlement offers to your family over the years? (*id.* at 43:16-18);
- Q. Do you remember overhearing your brother and mother discussing DC's offer to settle its claims with your family? (*id.* at 70:24-71:1);
- Q. Did your brother tell you that DC offered your family a settlement in which there would be a certain upfront cash component and then these royalties on future "Superman" products? (*id.* at 71:3-6);
- Q. Did he tell you that the upfront cash component would be paid right away, and not in 2013, when the purported termination takes effect? (*id.* at 71:8-10)
- Q. Okay. And so your brother has not discussed the fact that the Kirbys [the heirs to comic book creator Jack Kirby, who served notices of termination relating to Marvel comic book characters such as *Thor, X-Men,* and *The Fantastic Four*] filed a lawsuit and lost that lawsuit recently? ….
- Q. And you have not discussed with him that they [the Kirbys] turned down a settlement offer before litigation commenced? (*id.* 86:18-25);[1]
- Q. Do you know that in the scripts that he wrote, the final act, as it were, of the scripts is that your Uncle Joe and Jerry Siegel enter into pension agreements with Warner Brothers that take care of them and their families? Are you aware of that? (*id.* at 76:18-23)

*See also id.* at 92:9-93:25 (inquiring whether Laura Siegel Larson and Dawn Peavy/Mark Warren Peary were friends); 60:2-64:19 (attempting to prejudice Dawn through misleading questions about Mr. Peary's actions as personal representative of the Shuster estate).

### B. DC Is Not Entitled to Take a Second Deposition of Dawn Peavy

#### 1. Standards For a Second Deposition

Federal Rule of Civil Procedure 30(d)(2) clearly states that "a deposition is limited to one day of seven hours." There is no plausible reason to subject anyone to redundant depositions, as "repeat depositions are disfavored." *Graebner*, 130 F.R.D. 440. *See also Independence Park Apartments v. U.S.*, 59 Fed.Cl. 765, 769 (Fed. Cl. 2004) (The approach taken by the courts has been "to limit a deposition to seven hours absent a showing of good cause for additional time."); *Melhorn v. New Jersey Transit Rail Operations, Inc.*, 203 F.R.D. 176,

---

[1] DC's suggestion that the Kirbys (whom Mr. Toberoff represents) turned down a settlement offer before litigation commenced is a complete fabrication.

4
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT FURTHER DEPOSITION OF DAWN PEAVY

180 (E.D. Pa. 2001) ("Absent some showing of need or good reason for doing so, a deponent should not be required to appear for a second deposition."); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996) (citations omitted) ("Scheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense.").[2]

DC's first deposition of Dawn Peavy was itself unnecessary given her obvious lack of any involvement in or knowledge of any aspect of this case (see Seto Decl., Ex. A); DC has wholly failed to meet its burden of demonstrating "good cause" for a second deposition.

### 2. None of DC's Stated Grounds Provides a Basis for a Second Deposition

#### a. The August 2 Letter

DC seeks to re-depose Dawn Peavy as to an August 2, 2011 letter of which she was not a recipient and in which she had no involvement. However, the August 2 letter is hardly "new" evidence; the letter simply re-confirms what the parties had previously testified to, and what was obvious from the September 10, 2004 letter (cancelling the 2001 and 2003 Pacific Pictures agreements) and the legal retainer agreement dated as of November 23, 2001, all of which she also had no involvement in. *See* Adams Decl., Ex. D ("This is to confirm [the 2001 and 2003 Pacific Pictures Agreements] have been cancelled."); Ex. G at 36 ("This is to confirm your and our understanding that the retainer agreement … dated as of November 23, 2001 … completely replaced and superceded the November 23, 2001 agreement … as well as the October 27, 2003 agreement …. **This also serves to confirm your and our**

---

[2] DC's claim that it "reserved the right" to continue Mr. Peary's and Dawn Peavy's depositions is meaningless. Under F.R.C.P. 30(d)(2), there is no "right" to continue a deposition past one day or seven hours.

5
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

*understanding that the September 10, 2004 letter …* totally cancelled the PPC Agreements.").

DC had all of these documents in **2006**, with the exception of the retainer agreements (which it received in 2011, see Docket No. 209), and directly alleged their existence and contents in its complaint. Docket No. 49 ("FAC") ¶¶ 60, 90, 99. *See also* Docket No. 146-1 at 20; No. 146-2, ¶¶ 4-5, 10; No. 146-3, Exs. D-E, J. Mr. Toberoff, Pacific Pictures and Mr. Peary all repeatedly confirmed that Pacific Pictures has *no continuing interest in the Shuster termination*. *See, e.g.,* Docket No. 80 at 13:3-14:11, No. 103 at 8:8-22.

Notably, even though DC had *all* the documentation referenced in the August 2 letter, DC did not question Dawn Peavy about their contents and did not introduce any of the documents as exhibits. Seto Decl., Ex. A at 6-7. It strains credulity that a letter confirming a cancellation of prior agreements provides a basis for a second deposition where the deposing party deliberately did not bother to question the witness as to the cancellation of the prior agreements in the first place.

DC's claim that Defendants "withheld" (Mot. at 2, 6) the letter in advance of Dawn Peavy's August 3, 2011 deposition is misplaced. DC received the letter on August 29, 2011, three weeks after it was executed (Docket No. 314-2), and it was formally produced to DC on September 1, 2011. F.R.C.P. 26(e)(1) requires that parties supplement their production "in a timely manner" – not the instant a document is written. Most importantly, the letter had no connection or relevance to Dawn Peavy or her deposition.

    b. <u>Jean Peavy's Will Provides No Basis for a Second Deposition</u>

Nor is DC entitled to re-depose Dawn Peavy as to the contents of Jean Peavy's will. Prior to August 4, 2011, DC had never requested Jean's will in either this case or the closely related *Siegel* case. This is unsurprising as the

6
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

will dated August 24, 2001 precedes any contact between Mr. Toberoff and Mr. Peary or Jean Peavy. Seto Decl., Ex. Q. Thus, as DC notes, defendants did not search for or include Jean Peavy's will in their December 2010 production. Tellingly, even though DC brought a 40-page motion regarding such production (Docket No.160), it made no mention whatsoever of Jean Peavy's will.

DC was clearly aware that Ms. Peavy could have a will. One of DC's early questions at Mr. Peary's deposition was on that very subject. MWP at 76:14. DC never mentioned the production of Jean Peavy's will until *after* it had taken the depositions of both Mr. Peary and Dawn Peavy. Seto Decl., Ex. B.[3] On August 4, 2011, DC then served new discovery requests asking for the will, effectively admitting that its prior requests had not done so. *Id.*, Exs. C-D. Defendants thereafter produced the will. *Id.*, Ex. Q.

This provides no basis whatsoever to re-depose Dawn Peavy or for DC's frivolous allegation that the will was "withheld." Mot. at 1. DC could easily have brought the subject up or propounded discovery after Mr. Peary's June 29, 2011 deposition, if not long before it, and received Jean Peavy's will well prior to Dawn Peavy's August 3, 2011 deposition, but DC declined to do so. DC controlled the timing of Dawn's deposition, controlled the timing of its discovery requests, and knew that it did not have Jean Peavy's will, but nonetheless chose to proceed with Dawn's deposition. Under such circumstances, the subsequent production of the will is no excuse to re-depose an out-of-state, third-party witness.

Nor is there any basis to depose Dawn Peavy on a document she has never seen:

> Q. (By Mr. Kline) Have you seen a copy of your mother's will?
> A. No.

---

[3] While DC claims that the will is responsive to DC's prior discovery requests, such requests refer to documents relating to "SUPERMAN" (*see* Mot. at 6, n.3), and the will makes no mention whatsoever of Superman or termination interests.

7
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

```
Q. Did they keep a copy of it in the house; do you know?
A. I don't know.
Q. Do you know if that will names any of your children as beneficiaries?
A. No.
Q. You don't know, one way or the other, or --
A. No.
Q. Okay. Do you think that it does, or you just don't know at all?
A. Don't know.
```

Seto Decl., Ex. A at 49:15-50:10.

As a pretext, DC tenuously claims that Mr. Peary falsely testified about the will, and that he supposedly "concealed" the will and misled Dawn Peavy about its contents. *See, e.g.,* Mot. at 1, 9, 10. However, Mr. Peary's testimony (conspicuously omitted from DC's motion) makes it clear that he testified as to the contents of the will based on a vague memory and *belief*:

```
Q.  Does [Jean Peavy's will] name you as the executor?
A. [Mr. Peary]:  I believe.
Q.  Does it distribute her estate equally between you and your sister Dawn?
A.  I believe.
```

Adams Decl., Ex. A at 13:18-14:4]. *See also* MWP at 16:18-17:8 (series of leading questions regarding Jean Peavy's testamentary intent). Nor did DC ever ask when Mr. Peary had last read the will.

As to DC's frivolous divisive claim that Mr. Peary seeks to advance his interests to the "detriment" (*supra* at 9) of his own sister Dawn, Mr. Peary clearly testified to his and his mother's intent to set up a trust to benefit Dawn, and that such a trust did not yet exist, as Dawn's testimony confirmed. *See* Adams Decl., Ex. A at 12:22-23 ("We plan on any proceeds would go into a trust."), 13:10-13 ("A:  She [] has expressed that she wants any proceeds to go into a trust for me and my sister.  Q: Does such a trust exist? A: Not yet."); Seto Decl., Ex. A at 55:1-3 ("Q. Do you know if those trusts, formal documents, have been set up and signed?  A. No.").

According to DC, the only relevance of the will is supposedly to Mr. Peary's "credibility," yet DC can point to nothing of any moment that places

Mr. Peary's credibility in dispute. In essence, DC barely questioned this witness as to a document; he testified on the basis of his imperfect memory ("I believe"); and DC now touts this as placing his "credibility" at issue. Nor can DC show how re-deposing Dawn will resolve this manufactured issue. As DC has the will itself, DC knows its contents. The supposed "credibility" of another witness as to a non-issue in the case hardly provides a basis for a second deposition of Dawn Peavy.

### c. Jean Peavy's Competency Provides No Basis for a Second Deposition

Lastly, DC claims that it is entitled to re-depose Dawn Peavy as to Jean Peavy's competency to testify and to sign agreements. However, Jean Peavy's competency was at issue long before Dawn Peavy's August 3, 2011 deposition. DC sued Jean Peavy in August 2010, and made numerous allegations as to her conduct. FAC ¶¶ 20, 52-56. As Jean Peavy's testimony is potentially relevant to DC's claims, her competency to testify was equally relevant.

In September 2010, defendants clearly established that Jean Peavy had aphasia as a result of a stroke in May, 2009, and consequently had some trouble with spoken language. *See* Docket Nos. 64-3, 64-4. Dawn Peavy's and Mr. Peary's testimony in summer 2011 confirmed the same. Seto Decl., Ex. A at 55:4-13; Adams Decl., Ex. A at 10:22-11:12 (Peary's testimony that Jean Peavy does not "completely understand[]" the "legal issues" in the case). While DC dubiously claims that it did not "press" the subject of Jean Peavy's competency at Dawn's deposition given the "sensitivity" of the issue, it specifically raised that issue. Seto Decl., Ex. A at 44:4-6 ("Q: Do you know if your mother -- I mean, is your mother in a state right now where she could be signing legal documents like that?"); *see also* Adams Decl., Ex. A at 15:16-21 ("Q: … do you believe [Jean Peavy] was competent to talk about and understand those ideas? … [Mr. Peary]: "I – I believe she understands the idea. I know what her

intentions are. She's expressed them to me."). DC's desire to ask additional questions about an obvious issue, which it had every ability to inquire about previously, and did so, provides no basis for a second deposition.

### C. DC and Its Counsel Should Be Reprimanded For Their Aggressive Misrepresentations to the Court

DC egregiously attempts to mislead the Court as to numerous issues – notably, Ms. Peavy's competency. DC claims that Mr. Peary "affirmed [Jean Peavy's] mental capacity was fine in the 1990's" (when she signed the 1992 Agreement or wrote letters to DC), but that "after her stroke in 1999" (and therefore before signing any agreements with Mr. Toberoff in 2001 and 2003), her faculties were impaired, and implies that Mr. Peary kept Jean Peavy "in the dark" about his activities during this period. Mot. at 5.[4] However, Ms. Peavy had her stroke in May **2009**, well after the key events in this case, as DC was well aware from briefs and declarations filed with this Court and as both Dawn and Warren testified at their depositions. *See* Docket No. 64-4, ¶ 5; Seto Decl., Ex. A at 21:2-5; Adams Decl., Ex. A at 9:23-25.

This is but a piece of the ***numerous*** falsehoods and prejudicial accusations DC makes throughout its motion. In addition to all those pointed out above:

- DC claims that "Peary and Toberoff have concealed from Dawn Peavy" (Mot. at 1) Jean Peavy's will, without any basis whatsoever.
- DC accuses Mr. Toberoff of "allow[ing] [Dawn] to be misled about her rights" (Mot. at 9) and of "allowing" Mr. Peary and Dawn Peavy to "falsely" testify about the will (Mot. at 10), despite the fact that there is *no* evidence that Dawn was ever misled; there was *no* false testimony,

---

[4] Nor, given the chronological structure of the paragraph at issue, is it plausible that this is a typo.

|   |   |
|---|---|
| 1 | and DC does not even attempt to establish that Mr. Toberoff knew the |
| 2 | will's contents. |

- Contrary to DC's suggestion that it "showed in a series of briefs" (Mot. at 3) that Pacific Pictures continued to own part of the Shuster termination interest based on cancelled 2001 and 2003 Pacific Pictures agreements, DC affirms in its own complaint that under 17 U.S.C. § 304(c)(6)(D) such agreements could not transfer any part of the Shuster termination interest as a matter of law.  FAC ¶ 167 (the "statute bars third parties" from acquiring such interests).

- DC twice represents that "Peary admitted in deposition that Toberoff told him that the Pacific Pictures agreements were 'unlawful,'" while purposefully not attaching any of his deposition testimony.  Mot. at 2. Mr. Peary merely testified that he now understands that such cancelled agreements were ineffective to begin with.  *Id.* (citing Docket No. 305-37 at 233:10-13.

- DC represents that "Peary testified … that [he and Mr. Toberoff] made an oral agreement returning the putative Superman rights to the Shusters." Mot. at 4, citing Docket No. 305-37 at 1371:13-23.  Mr. Peary testified to no such thing.

- DC represents that Peary "admitted he helped his mother prepare [her will] only *after* he started working with Toberoff," citing omitted testimony that in no way supports that proposition.  Mot. at 9, citing Docket No. 305-17 at 1138:10-1139:12 (discussing Jean Peavy's competency), 1178:10-1179:4 (discussing that Jean Peavy had a will and her desire to create a trust), 1212:10-1223:15 (discussing early termination research), 1266:16-1267:21 (discussing Mr. Peary's decision to pursue termination).  Mr. Peary never testified as to any involvement with the preparation of his mother's will (or lack thereof), nor when such

will was created. See Docket No. 305-37. Moreover, the will dated August 24, 2001 was created before Mr. Peary and his mother even contacted Mr. Toberoff. Seto Decl., Ex. Q.

- DC represents that Peary "fail[ed] to distribute the assets of the estate [of Joseph Shuster] to his mother in a timely fashion," solely citing to its own prior argument. Mot. at 11. DC omits that the Shuster estate's only relevant "asset" is its statutory termination, which does not become effective until October 2013. See 17 U.S.C. § 304(c)(6) ("[A]ll rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to all of those entitled to terminate the grant.").

- DC represents "Peary convinced Jean Peavy to decline to serve as executor of the Shuster Estate and convinced Dawn Peavy to nominate him to do so" (Mot. at 9) based on nothing more than Dawn's declining to serve as personal representative instead of Mr. Peary. Docket No. 334-7, Ex. A at 16-17.

- DC states that Mr. Toberoff "induced" Jean Peavy "to sign yet another Pacific Pictures Agreement" (Mot. at 11), again on the basis of ***no evidence whatsoever*** and without ever even attempting to depose Ms. Peavy or Mr. Toberoff.

In so doing, DC's counsel flout their duty not "to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Cal. Bus. & Prof. Code § 6068(d) (codifying lawyer's duty). *See also* F.R.C.P. 11(b)(3) (counsel are to ensure that its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Throughout their complaint, this motion and many others, DC and its counsel habitually try to mislead and prejudice the Court by fabrications and misrepresentations of the

12
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO CONDUCT
FURTHER DEPOSITION OF DAWN PEAVY

record; falsely accusing defendants in general and Mr. Toberoff in particular of onerous conduct without evidentiary support.  Apparently, DC's counsel banks on the fact that our already overtaxed judiciary has neither the time nor resources to unwind their gamesmanship.  DC and its counsel should not be permitted to blithely indulge in such blatant misconduct.

### III.   CONCLUSION

For all of the above reasons, DC's motion to conduct a second deposition of Dawn Peavy should be denied.

DATED:  January 30, 2012         TOBEROFF & ASSOCIATES, P.C.

By_____
           Marc Toberoff

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel