ORIGINAL

# In The Matter Of:

*DC COMICS*

*v.*

*PACIFIC PICTURES CORPORATION*

---

## *PEARY, MARK WARREN - Vol. 1*

### *June 29, 2011*

---

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**EXHIBIT A-3**

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ORIGINAL

DC COMICS,                           )
                                     )
              Plaintiff,             )  No. CV-10-3633 ODW (RZx)
                                     )
       VS.                           )
                                     )
PACIFIC PICTURES CORPORATION,)
IP WORLDWIDE, LLC, IPW, LLC, )
MARC TOBEROFF, an individual,)
Laura Siegel Larson, as      )
personal representative of   )
the ESTATE OF JOSEPH SHUSTER,)
JEAN ADELE PEAVY, an         )
individual, JOANNE SIEGEL,   )
an individual, LAURA SIEGEL  )
LARSON, an individual, and   )
DOES 1-10, inclusive,        )
                                     )
              Defendants.            )
                                     )
       _____      )


VIDEOTAPED DEPOSITION OF MARK WARREN PEARY

TAKEN ON

WEDNESDAY, JUNE 29, 2011


Reported by:  SHANDA GABRIEL

              CSR No. 10094


Merrill  Corporation  -  Los Angeles
800-826-0277                          www.merrillcorp.com/law

**EXHIBIT A-4**

```
 1              Videotaped deposition of MARK WARREN PEARY,

 2    taken on behalf of the Plaintiff, at 1999 Avenue of

 3    the Stars, Los Angeles, California, commencing at

 4    10:28 a.m., WEDNESDAY, JUNE 29, 2011, before SHANDA

 5    GABRIEL, CSR No. 10094.

 6

 7    APPEARANCES:

 8    FOR THE PLAINTIFF:

 9              O'MELVENY & MYERS LLP

10              BY:  DANIEL M. PETROCELLI, ESQ.

11                   MATTHEW T. KLINE, ESQ.

12                   JASON TOKORO, ESQ.

13              1999 Avenue of the Stars

14              7th Floor

15              Los Angeles, California  90067-6035

16              (310) 553-6700

17
      FOR THE DEFENDANTS:
18
                TOBEROFF & ASSOCIATES
19
                BY:  MARC TOBEROFF, ESQ.
20
                2049 Century Park East
21
                Suite 3630
22
                Los Angeles, California  90067
23
                (310) 246-3333
24

25    ALSO PRESENT:  FRITZ SPERBERG, VIDEOGRAPHER
```

**EXHIBIT A-5**

```
 1                        I N D E X

 2

 3    WITNESS              EXAMINATION              PAGE

 4    MARK WARREN PEARY   (BY MR. PETROCELLI)          6

 5

 6

 7                    E X H I B I T S

 8    NO.            PAGE        DESCRIPTION

 9    Exhibit 1       35         First Amended Complaint

10    Exhibit 2      102         December 23, 1975
                                 Agreement
11
      Exhibit 3      123         August 21, 1992
12                               handwritten letter to Paul
                                 from Jean Shuster Peavy,
13                               with attachments

14    Exhibit 4      130         September 10, 1992
                                 handwritten letter to Paul
15                               from Frank Shuster

16    Exhibit 5      134         DC Comics agreement dated
                                 August 1, 1992 signed by
17                               Frank Shuster and Jean
                                 Shuster Peavy on
18                               October 2, 1992

19    Exhibit 6      143         Letter dated October 2,
                                 1992 to Paul Levitz from
20                               Frank Shuster

21    Exhibit 7      149         April 27, 1995 letter to
                                 Paul Levitz from Jean
22                               Shuster Peavy

23    Exhibit 8      150         September 7, 1999 letter
                                 to Paul Levitz from Jean
24                               Shuster Peavy

25
```

**EXHIBIT A-6**

```
1                    I N D E X  (CONTINUED)

2

3                      E X H I B I T S

4      NO.              PAGE       DESCRIPTION

5      Exhibit 9        165        Document entitled "Notice
                                   of Termination of Transfer
6                                  Covering Extended Renewal
                                   Term"
7
       Exhibit 10       196        Joint Venture Agreement
8
       Exhibit 11       283        Document entitled "Notice
9                                  of Termination of Transfer
                                   Covering Extended Renewal
10                                 Term, Superboy"

11     Exhibit 12       273        Probate proceeding papers
                                   filed October 21, 2003
12
       Exhibit 13       286        Pacific Pictures
13                                 Corporation agreement
                                   dated October 27, 2003
14                                 signed by Mark Warren
                                   Peary and Jean A. Peavy on
15                                 October 3, 2003

16     Exhibit 14       298        Document entitled "Notice
                                   of Termination of Transfer
17                                 Covering Extended
                                   Copyright Renewal Term of
18                                 Superman"

19     Exhibit 15       303        1940 Superboy script

20     Exhibit 16       304        Partial Xerox copy of More
                                   Fun Comics issue No. 101
21
       Exhibit 17       307        Document entitled "Renewal
22                                 Registrations"

23     Exhibit 18       308        Application for
                                   Registration of a Claim to
24                                 Renewal Copyright

25
```

**EXHIBIT A-7**

```
 1              I N D E X (CONTINUED)

 2

 3                E X H I B I T S

 4    NO.            PAGE      DESCRIPTION

 5    Exhibit 19     310       Document entitled "Books"

 6    Exhibit 20     330       September 10, 2004
                               document to Warren and
 7                             Jean from Marc Toberoff,
                               signed by Mark Warren
 8                             Peary and Jean A. Peavy

 9    Exhibit 21     334       Document dated
                               November 21, 2001 to
10                             Warren and Jean re:
                               Engagement for
11                             Professional Services,
                               signed by Mark Warren
12                             Peary and Jean A. Peavy

13    Exhibit 22     345       Documents, first page
                               headed Attachments for
14                             Paramount - Part 1/2
                               addressed to Daniel
15                             Ferleger and others from
                               Marc Toberoff
16
      Exhibit 23     350       Xerox copy of Vehicle Pass
17
      Exhibit 24     27        Document entitled "Dave
18                             Sim's Glamourpuss
                               Bulletins
19
      Exhibit 25     259       Document entitled
20                             "Superman - Marc Toberoff
                               Timeline"
21
      Exhibit 26     145       Document entitled "Last
22                             Will and Testament of
                               Joseph Shuster"
23

24

25
```

**EXHIBIT A-8**

| | | |
|---|---|---|
| 1 | A.  I -- 1 -- 1 think he has a girlfriend that | 10:34:58 |
| 2 | he stays with if you want -- | 10:35:01 |
| 3 | Q.  In Santa Fe? | 10:35:01 |
| 4 | A.  Yes, if you want the details. | 10:35:03 |
| 5 | Q.  No, I just want to know the city. | 10:35:04 |
| 6 | A.  Okay. | 10:35:06 |
| 7 | Q.  And Nicole lives in what city? | 10:35:06 |
| 8 | A.  She's in Denver. | 10:35:08 |
| 9 | Q.  Denver.  And the older boy, you don't | 10:35:09 |
| 10 | remember? | 10:35:12 |
| 11 | A.  He -- he's -- he's in El Paso. | 10:35:12 |
| 12 | Q.  How long have you resided with your sister, | 10:35:19 |
| 13 | Dawn? | 10:35:26 |
| 14 | A.  She's been with us since 2001 or '-2, | 10:35:28 |
| 15 | somewhere in there. | 10:35:40 |
| 16 | Q.  Continuously to the present? | 10:35:40 |
| 17 | A.  Yes. | 10:35:42 |
| 18 | Q.  Okay.  And how long have you resided with | 10:35:44 |
| 19 | your mother, Jean? | 10:35:45 |
| 20 | A.  We -- we've been there since -- since 1999. | 10:35:47 |
| 21 | Q.  How old is your mom now? | 10:36:00 |
| 22 | A.  90. | 10:36:01 |
| 23 | Q.  And how is her health? | 10:36:04 |
| 24 | A.  It's -- it's fair.  She had a stroke two | 10:36:05 |
| 25 | years ago. | 10:36:09 |

**EXHIBIT A-9**

Page 36

| | | |
|---|---|---|
| 1 | the other blog was Exhibit 1. | 11:01:21 |
| 2 | MR. PETROCELLI:  No, no, I premarked them, | 11:01:23 |
| 3 | as 1 said.  So that was -- I identified that on the | 11:01:25 |
| 4 | record as Exhibit 24. | 11:01:28 |
| 5 | You have a copy of that blog that's been | 11:01:40 |
| 6 | marked by the reporter, Marc?  This one right here? | 11:01:43 |
| 7 | Why don't you put that over there so we can keep the | 11:01:47 |
| 8 | exhibits organized.  That's for the reporter.  Thank | 11:01:50 |
| 9 | you. | 11:01:56 |
| 10 | Q.  When this -- this lawsuit was first filed | 11:01:56 |
| 11 | on I believe it was May 14, 2010 and a copy of the | 11:01:58 |
| 12 | complaint at the time was served on you, did you | 11:02:04 |
| 13 | read the complaint? | 11:02:07 |
| 14 | A.  I scanned it. | 11:02:09 |
| 15 | Q.  Scanned it? | 11:02:11 |
| 16 | A.  Yes. | 11:02:12 |
| 17 | Q.  Did you discuss it with your mom? | 11:02:14 |
| 18 | A.  Her -- not -- not -- not really.  She -- | 11:02:22 |
| 19 | faculties are not -- not very good because of her | 11:02:28 |
| 20 | stroke.  She's -- she's perhaps aware -- she's | 11:02:34 |
| 21 | probably aware of it, I'm sure. | 11:02:38 |
| 22 | Q.  When the lawsuit was served on you and you | 11:02:40 |
| 23 | became aware of it, did you have any discussion at | 11:02:42 |
| 24 | all with your mother about it, even -- even in the | 11:02:45 |
| 25 | most general terms, like, you know, "They filed a | 11:02:48 |

**EXHIBIT A-10**

| | | |
|---|---|---|
| 1 | case against us" or anything like that? | 11:02:50 |
| 2 | A. That would be the only extent of it. I | 11:02:52 |
| 3 | would have mentioned something. That's it. | 11:02:56 |
| 4 | Q. Do you recall what, if anything, she said | 11:03:00 |
| 5 | to you? | 11:03:02 |
| 6 | A. Her -- her faculties are such that I don't | 11:03:06 |
| 7 | think she completely understands what's going on | 11:03:09 |
| 8 | with this. | 11:03:11 |
| 9 | Q. "With this" meaning -- | 11:03:13 |
| 10 | A. This. | 11:03:14 |
| 11 | Q. -- all the legal issues? | 11:03:14 |
| 12 | A. This legal -- yes. | 11:03:16 |
| 13 | Q. Did you discuss it with your sister, Jean, | 11:03:18 |
| 14 | with whom you were living at the time? | 11:03:26 |
| 15 | A. You mean -- | 11:03:27 |
| 16 | Q. Your sister, Dawn, excuse me. | 11:03:28 |
| 17 | A. -- Dawn? | 11:03:29 |
| 18 | Q. What -- what is Dawn's last name? Does she | 11:03:30 |
| 19 | go by Peary? | 11:03:35 |
| 20 | A. She uses Peavy right now. | 11:03:37 |
| 21 | Q. Peavy. Excuse me. Okay. And what is your | 11:03:38 |
| 22 | address? | 11:03:46 |
| 23 | A. 51 Camino Cabo, Santa Fe, New Mexico, | 11:03:46 |
| 24 | 87508. | 11:03:58 |
| 25 | Q. Who owns the house? | 11:04:00 |

**EXHIBIT A-11**

| | | |
|---|---|---|
| 1 | Q.  Did you explain to her what it meant? | 11:59:48 |
| 2 | MR. TOBEROFF:  Asked and answered. | 11:59:51 |
| 3 | THE WITNESS:  Just -- just what I said | 11:59:52 |
| 4 | before.  I can't remember exactly what I said. | 11:59:54 |
| 5 | BY MR. PETROCELLI: | 11:59:54 |
| 6 | Q.  What's your best recollection of what you | 11:59:58 |
| 7 | told her? | 11:59:59 |
| 8 | A.  That -- that there is some agreement that | 12:00:00 |
| 9 | we are making with the Siegels.  That would have | 12:00:09 |
| 10 | been about the extent of it. | 12:00:12 |
| 11 | Q.  Well, you explained to her that the | 12:00:14 |
| 12 | agreement had to do with Superman, right? | 12:00:17 |
| 13 | A.  Yes. | 12:00:17 |
| 14 | Q.  And you explained to her that it had to do | 12:00:20 |
| 15 | with settling your case, right? | 12:00:22 |
| 16 | A.  I suppose.  That's about it.  I wouldn't | 12:00:29 |
| 17 | have said any more. | 12:00:33 |
| 18 | Q.  Who -- who's the beneficiary of any money | 12:00:46 |
| 19 | that comes in as a result of the Superman | 12:00:51 |
| 20 | termination interest that Joe Shuster has asserted? | 12:00:53 |
| 21 | Who gets the money? | 12:01:00 |
| 22 | A.  We plan on any proceeds would go into a | 12:01:01 |
| 23 | trust. | 12:01:06 |
| 24 | Q.  Well, your mother is the beneficiary, | 12:01:08 |
| 25 | correct? | 12:01:08 |

MARIE WARREN PEARY — 6/29/2011

Page 76

| | | |
|---|---|---|
| 1 | A.  According to the will.  She -- she's | 12:01:13 |
| 2 | expressed that she wants me and my sister to -- to | 12:01:20 |
| 3 | have -- to have anything through a trust. | 12:01:25 |
| 4 | Q.  Under Joe Shuster's will, she's the sole | 12:01:29 |
| 5 | beneficiary, correct? | 12:01:32 |
| 6 | A.  Yes. | 12:01:33 |
| 7 | Q.  Okay.  And are you saying that your mother | 12:01:35 |
| 8 | has in turn created testamentary documents that pass | 12:01:39 |
| 9 | the interest to you and your sister? | 12:01:46 |
| 10 | A.  She -- she has expressed that she wants any | 12:01:47 |
| 11 | proceeds to go into a trust for me and my sister. | 12:01:52 |
| 12 | Q.  Does such a trust exist? | 12:01:56 |
| 13 | A.  Not yet. | 12:01:58 |
| 14 | Q.  Does your mother have a will? | 12:02:00 |
| 15 | A.  Yes. | 12:02:02 |
| 16 | Q.  Have you ever seen it? | 12:02:03 |
| 17 | A.  Yes. | 12:02:04 |
| 18 | Q.  Does it name you as the executor? | 12:02:07 |
| 19 | A.  I believe. | 12:02:10 |
| 20 | Q.  Does it distribute her estate equally | 12:02:16 |
| 21 | between you and your sister, Dawn? | 12:02:20 |
| 22 | A.  I believe. | 12:02:25 |
| 23 | Q.  Does it distribute the estate directly to | 12:02:27 |
| 24 | Dawn and you or to trusts of which Dawn and you are | 12:02:32 |
| 25 | beneficiaries? | 12:02:36 |

Merrill  Corporation  -  Los Angeles
800-826-0277                              www.merrillcorp.com/law

**EXHIBIT A-13**

| | |
|---|---|
| 1    A.   It doesn't -- it doesn't state "trust" in | 12:02:37 |
| 2  the will, but that's -- that's her intention. | 12:02:43 |
| 3    Q.   How do you know that's her intention? | 12:02:46 |
| 4    A.   We've talked about it. | 12:02:50 |
| 5    Q.   When did she tell you that she wanted to | 12:02:52 |
| 6  create trusts for you to receive her testamentary | 12:02:55 |
| 7  disposition? | 12:02:58 |
| 8    A.   Well, let me see, she wants -- she wants us | 12:02:59 |
| 9  to -- to be provided for and secure and she's 90 | 12:03:06 |
| 10  years old and she's had a stroke so she knows she's | 12:03:13 |
| 11  not going to be around forever and she doesn't | 12:03:16 |
| 12  really have any need for -- for money.  So we've | 12:03:18 |
| 13  discussed it for -- well, we've probably -- we've | 12:03:25 |
| 14  probably discussed it for a few years. | 12:03:31 |
| 15    Q.   In the last few years? | 12:03:33 |
| 16    A.   Yes. | 12:03:34 |
| 17    Q.   And when you've discussed it, given the | 12:03:35 |
| 18  comments you've made about your mom's mental state, | 12:03:37 |
| 19  do you believe that she understood what she was | 12:03:41 |
| 20  talking about? | 12:03:43 |
| 21      MR. TOBEROFF:  Assumes facts. | 12:03:44 |
| 22      THE WITNESS:  Yes, she understands. | 12:03:48 |
| 23  BY MR. PETROCELLI: | 12:03:48 |
| 24    Q.   In talking about things like trusts and | 12:03:49 |
| 25  such, she's competent to discuss those topics, in | 12:03:51 |

**EXHIBIT A-14**

| | | |
|---|---|---|
| 1 | your view? | 12:03:51 |
| 2 | A.  She understands the -- | 12:03:55 |
| 3 | MR. TOBEROFF:  Excuse me.  You have to | 12:03:56 |
| 4 | leave time for me to object after he asks the | 12:03:57 |
| 5 | question.  You got to pause after he asks the | 12:04:01 |
| 6 | question so I have time to object. | 12:04:03 |
| 7 | The question assumes facts. | 12:04:06 |
| 8 | BY MR. PETROCELLI: | 12:04:06 |
| 9 | Q.  You can answer. | 12:04:10 |
| 10 | A.  Okay. | 12:04:11 |
| 11 | Q.  Want me to repeat the question? | 12:04:13 |
| 12 | A.  Yes. | 12:04:14 |
| 13 | Q.  Yeah.  When -- when you have been talking | 12:04:16 |
| 14 | with her about -- in the last couple of years | 12:04:17 |
| 15 | regarding such issues as trusts for your benefit and | 12:04:19 |
| 16 | Dawn's benefit, do you believe that she was | 12:04:22 |
| 17 | competent to talk about and understand those ideas? | 12:04:26 |
| 18 | MR. TOBEROFF:  Misstates testimony. | 12:04:31 |
| 19 | THE WITNESS:  I -- I believe she | 12:04:33 |
| 20 | understands the idea.  I know what her intentions | 12:04:38 |
| 21 | are.  She's expressed them to me. | 12:04:41 |
| 22 | BY MR. PETROCELLI: | 12:04:41 |
| 23 | Q.  Verbally? | 12:04:43 |
| 24 | A.  Yes. | 12:04:44 |
| 25 | Q.  What has she said to you? | 12:04:45 |

EXHIBIT A-15

|    |    |    |
|----|----|----|
| 1  | A.  She wants us to be provided for, to be | 12:04:46 |
| 2  | secure. | 12:04:49 |
| 3  | Q.  You already are provided for her in her | 12:04:52 |
| 4  | will, right? | 12:04:54 |
| 5  | A.  I'm in her -- her will -- | 12:04:57 |
| 6  | Q.  Right. | 12:04:58 |
| 7  | A.  -- yes. | 12:04:59 |
| 8  | Q.  Why -- why the specific -- in other words, | 12:05:00 |
| 9  | did she discuss with you that she wants you to | 12:05:03 |
| 10 | receive the inheritance together with Dawn through a | 12:05:05 |
| 11 | trust? | 12:05:07 |
| 12 | A.  That's -- that's what we have discussed. | 12:05:10 |
| 13 | Q.  Who is the "we"? | 12:05:12 |
| 14 | A.  Me and my mother. | 12:05:14 |
| 15 | Q.  Has Dawn been part of the discussion? | 12:05:15 |
| 16 | A.  I -- I don't know specifically about | 12:05:17 |
| 17 | trusts.  But she knows she's a part of this. | 12:05:22 |
| 18 | Q.  Is there any particular discussion that | 12:05:25 |
| 19 | you've had about trusts as to why it would be a | 12:05:28 |
| 20 | trust rather than just a bequest under a will? | 12:05:31 |
| 21 | A.  As to like in financial planning terms, | 12:05:34 |
| 22 | that kind of thing? | 12:05:38 |
| 23 | Q.  Yes. | 12:05:38 |
| 24 | A.  It's -- the idea is it's a sensible means | 12:05:40 |
| 25 | of pre- -- preserving assets so that they're not | 12:05:46 |

**EXHIBIT A-16**

| | | |
|---|---|---|
| 1 | wasted and squandered, so it's a long-term thing and | 12:05:51 |
| 2 | not wasted away. | 12:05:58 |
| 3 | Q.  Wasted by you and Dawn? | 12:06:00 |
| 4 | A.  Yes. | 12:06:01 |
| 5 | Q.  Has your mom expressed reservations that | 12:06:04 |
| 6 | you or Dawn might waste the money absent a trust? | 12:06:07 |
| 7 | A.  No.  That's -- that is a -- the purpose of | 12:06:11 |
| 8 | a trust, to preserve assets. | 12:06:14 |
| 9 | Q.  Do you have an estate or trust lawyer? | 12:06:17 |
| 10 | A.  Yes. | 12:06:19 |
| 11 | Q.  Who is it? | 12:06:23 |
| 12 | A.  The -- there's an attorney that established | 12:06:27 |
| 13 | the Shuster estate. | 12:06:29 |
| 14 | Q.  Here in Los Angeles, the probate attorney? | 12:06:32 |
| 15 | A.  I believe so. | 12:06:35 |
| 16 | Q.  And have you consulted him regarding estate | 12:06:37 |
| 17 | planning in recent years? | 12:06:40 |
| 18 | A.  No.  Not on that issue, no. | 12:06:42 |
| 19 | Q.  Not on the issue of the trust? | 12:06:45 |
| 20 | A.  That's correct. | 12:06:46 |
| 21 | Q.  Have you, in discussions with your mother | 12:06:48 |
| 22 | about the will, the trust and the financial | 12:06:51 |
| 23 | planning, ever discussed how much money might be | 12:06:54 |
| 24 | received one day for your benefit and Dawn's | 12:06:59 |
| 25 | benefit? | 12:07:02 |

EXHIBIT A-17

MARK WARREN PEARY - 6/29/2011

Page 363

```
 1    STATE OF CALIFORNIA      )
                               )  ss.
 2    COUNTY OF LOS ANGELES    )

 3

 4           I, Shanda Gabriel, Certified Shorthand

 5    Reporter, Certificate No. 10094, for the State of

 6    California, hereby certify:

 7           I am the deposition officer that

 8    stenographically recorded the testimony in the

 9    foregoing deposition;

10           Prior to being examined the witness was by

11    me first duly sworn;

12           The foregoing transcript is a true record

13    of the testimony given.

14

15    Dated  July 14, 2011          .

16

17                    Shanda Gabriel

18                    Shanda Gabriel
                      CSR 10094

19

20

21

22

23

24

25
```

**EXHIBIT A-18**

## JOINT VENTURE AGREEMENT

AGREEMENT made as of November 23, 2001 by and between Pacific Pictures Corporation ("PPC") with offices at 23852 Pacific Coast Highway, Suite 555, Malibu, CA 90265 ; tel. (310) 589-5151; fax: (310) 589-5152 and Jean A. Peavy and her son Mark Warren Peary (f/k/a Mark Warren Peavy) (individually and collectively, "Claimants") located at 51 Camino Cabo, Sante Fe, New Mexico 87508; tel. / fax: (505) 466-4551, regarding the formation of a joint venture for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights").

1.    The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, such as, without limitation, "Superman," "Clark Kent," "Lois Lane," "Jimmy Olsen," "Lex Luther," "Lana Lang," "Mr. Mxyztplk," "Superboy," "Supergirl," "The Daily Planet," "Krypton," "Kryptonite," and "Smallville."

2.    In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304 (c) of the U.S. Copyright Law (Title 17, U.S.C.) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. In consideration for PPC'S contributions to the Venture and the mutual covenants contained herein Claimants hereby transfer and assign to the Venture their rights, title and interests in the Rights. The name of the Venture shall be the "Joe Shuster Venture." The Venture's office address shall be the California address set forth above.

3.    PPC will pay any and all costs and expenses of the Venture, including the legal fees and costs of setting up Joe Shuster's estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the enforcement and/or defense of the Rights and the Venture. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying,

Initials: _____

Page 2
Joint Venture Agreement / Joe Shuster
11/23/01

postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC'S share of Proceeds set forth in paragraph 5 below.

4.    The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Claimants and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.    Any and all moneys and proceeds received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Claimants and fifty percent (50%) to PPC. The parties will use all reasonable efforts to have Joe Shuster's estate/administrator and third party payors, if any, directly pay to the Claimants and PPC their respective fifty percent (50%) share of Proceeds. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Claimants of a reasonable accounting and receipts for said expenses.

6.    All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.    The Venture and/or the Estate of Joe Shuster (to be established hereunder) will retain Marc Toberoff, Esq. to render legal services in connection with the Rights and the Venture, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights.

Initials

**EXHIBIT B-20**

PPC 00006

Page 3
Joint Venture Agreement / Joe Shuster
11/23/01

8.    The term ("Term") of the Venture shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term and the winding-up of the Venture or in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by the Claimants and fifty percent (50%) by PPC as tenants in common, and Claimants and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination of the Venture.

9.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (c) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Claimants.

10.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement, including without limitation an irrevocable letter of authority instructing the administrator of Joe Shuster's Estate to divide and disburse all Proceeds from the Rights as set forth in paragraph 5 above. When required hereunder, consent shall not be unreasonably withheld by any party regarding the business of the Venture. The parties hereby approve Michael Catron for appointment as the administrator of Joe Shuster's Estate, once it is established.

11.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. To the extent any provision of this Agreement is found invalid, said provision shall be stricken

**EXHIBIT B-21**

PPC 00007

Page 4
Joint Venture Agreement / Joe Shuster
11/23/01

and shall not affect the validity of the remaining provisions hereof. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

11.    This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

Agreed, understood and accepted:

Pacific Pictures Corporation


By: Marc Toberoff, President                    Date: Nov. 28, 2001


Jean A. Peavy                                   Date: Nov. 28, 2001


Mark Warren Peary                               Date: Nov. 28, 2001
(f/k/a Mark Warren Peavy)

PPC 00008

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

1.    Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

2.    In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

3.    PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _AT_, _MWP_

**EXHIBIT C-23**

PPC 00001

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4.     The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.     Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peavy and Warren Peavy, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6.     All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.     The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _____, _____

EXHIBIT C-24

PPC 00002

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

8.    To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

9.    All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

10.    This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

11.    This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

If the terms and conditions of this agreement are acceptable to you, please

/ / /
/ / /
/ / /
/ / /

Initials: _____, _____

**EXHIBIT C-25**

PPC 00003

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

*Marc Toberoff*

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

*Mark Warren Peary*                                    Date: 10-30-03

By: Mark Warren Peary, Executor
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my interests are concerned.

*Jean A. Peavy*                                    Date: 10-30-03

Jean A. Peavy

**EXHIBIT C-26**

PPC 00004

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

September 10, 2004

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor, Estate of Joseph Shuster
Jean Peavy
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren and Jean:

This is to confirm that (1) the joint venture agreement dated as of November 23, 2001 between you and Pacific Pictures Corp. and (2) the engagement agreement dated October 27, 2003 between the Estate of Joseph Shuster and Pacific Pictures Corp. have been cancelled.

Sincerely yours,

Marc Toberoff

AGREED:

The Estate of Joseph Shuster

By: Mark Warren Peary, Executor

Mark Warren Peary

Jean A. Peavy

**EXHIBIT D-27**

PPC 00009

| Subject: | DC v. PPC Ignore Last Email (Typo Corrected Below) |
| --- | --- |
| From: | Marc Toberoff (mtoberoff@ipwla.com) |
| To: | MKline@omm.com; |
| Cc: | DPetrocelli@omm.com; cseto@omm.com; jtokoro@omm.com; kgadams@ipwla.com; |
| Date: | Friday, July 8, 2011 3:38 PM |

Matt:

Don Bulson's deposition is not until July 19, and as a partner intimately involved with every aspect of this case you are more than capable of taking Dawn Peavy's marginal deposition on July 17 even if Dan is out of the country on vacation.

If you can't make July 17 work in Los Angeles (which would be easiest for everyone), as stated in my prior e-mail, we can set the deposition in New Mexico on another date in the two week period **between now and July 22**.

Please do not schedule Dawn's deposition while I am on vacation with my family on the East Coast.

Thank-you.

Marc

On Fri, Jul 8, 2011 at 2:06 PM, Tokoro, Jason <jtokoro@omm.com> wrote:

Please see below correspondence sent on behalf of Matthew T. Kline.

*          *          *

Marc,

Your proposal, unfortunately, is not workable.  There are two Sundays between now and July 23.  One of those two Sundays is two days away (when Dan is out of the country, and I am travelling with my family), the other is July 17 (when Dan is out of the country, and I am getting ready to travel to Cleveland for Don Bulson's deposition).

As a result, we will take the deposition when and where it was noticed.  We remain willing to take it on

**EXHIBIT E-28**

August 7 or 13 in New Mexico—assuming you

agree to move the SLAPP opposition filing date to August 17 at 5pm PDT.


Matt

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, July 07, 2011 5:50 PM
**To:** Petrocelli, Daniel; Kline, Matthew
**Cc:** Seto, Cassandra; Tokoro, Jason; Keith Adams


**Subject:** RE: DC v. PPC




Dan and Matt:

We are authorized to accept service on Ms. Dawn Peavy's behalf.

As to scheduling, we are generally available from now until July 22, 2011, for Dawn's deposition.  The
deposition cannot proceed on August 3 because as previously advised I will be on  holiday with my family
from July 23-August 7.

Dawn has a full time job. Her preference is that the deposition occur on a Sunday if at all possible.  If that
were agreeable she is willing to fly to Los Angeles for the deposition provided DC covers all transportation
and 2 nights hotel.  As with Warren Peary, this may be advisable given the considerable savings in legal
fees from your team not having to travel to New Mexico.

Please let us know your availability as soon as possible so we can schedule this before July 23. The more
advance notice we can provide Dawn the better given her job obligations.

Defendants do not agree to extend the "August 8 deadline" based on a purported need to take Ms. Peavy's
deposition, as she is not a party, has not been involved with these lawsuits and has little or no relevant
knowledge.  Notwithstanding the equivocal language in Dan's e-mail, DC clearly stated that it intended to
move to extend the August 8 deadline (Docket No. 290 at 2-3) well before DC sought to notice Dawn's
deposition, and can hardly use the scheduling of her depo as an excuse.

Regards

**EXHIBIT E-29**

Marc Toberoff

--- On **Wed, 7/6/11, Tokoro, Jason *<jtokoro@OMM.com>*** wrote:

From: Tokoro, Jason <jtokoro@OMM.com>

Subject: RE: DC v. PPC

To: "Marc Toberoff" <mtoberoff@ipwla.com>, "'Keith Adams'" <kgadams@ipwla.com>, "'nwilliamson@ipwla.com'" <nwilliamson@ipwla.com>

Cc: "Petrocelli, Daniel" <DPetrocelli@OMM.com>, "Kline, Matthew" <MKline@OMM.com>, "Seto, Cassandra" <cseto@OMM.com>

Date: Wednesday, July 6, 2011, 4:44 PM

Please see below correspondence sent on behalf of Daniel M. Petrocelli.

\*         \*         \*

Marc,

We have court filings due on August 8, so we need to take her deposition August 3 or earlier. If you are willing to agree to asking the Court to extend the August 8 deadline by 30 days, we can defer it. We may need to seek such relief (or more time) in any event, in light of your writ and approach to discovery generally.

On the service issue, we need to know an answer by week's end.

Dan

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Wednesday, July 06, 2011 3:27 PM
**To:** Tokoro, Jason
**Subject:** Re: DC v. PPC

**EXHIBIT E-30**

Jason:

As I informed Dan, who I understand is shortly leaving for a holiday, I will on a family vacation from Saturday July 23 through Sunday August 7, 2011 so we need to schedule a different date for a deposition of Dawn Peavy.

I placed a call to Dawn to see if I she will authorize me to accept service on her behalf but have I have not heard back yet. I see no reason why she will not authorize this ans await her call.

Marc

On Wed, Jul 6, 2011 at 10:24 AM, Tokoro, Jason <jtokoro@omm.com> wrote:

Marc,


Following up on Dan's letter from Friday, July 1, please confirm that you are authorized to accept service on behalf of Dawn Peavy and that you agree to produce her for deposition.  If we do not hear back from you by end of day tomorrow, we will proceed to personally serve Ms. Peavy with the subpoena for her deposition and production of documents.



Regards,



Jason H. Tokoro

---

**From:** Tokoro, Jason
**Sent:** Friday, July 01, 2011 2:47 PM
**To:** Marc Toberoff; Keith Adams; 'nwilliamson@ipwla.com'; rkendall@kbkfirm.com; lbrill@kbkfirm.com; Nicholas Daum
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Subject:** DC v. PPC


Counsel,


Please see attached correspondence and discovery requests, all of which were personally served on your offices today, July 1, 2011.

**EXHIBIT E-31**

**Jason H. Tokoro**
**O'Melveny & Myers LLP - Century City**
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
Direct Dial:  (310) 246-6707
Fax:  (310) 246-6779
Email: jtokoro@omm.com

*This message and any attached documents contain information from the law firm
of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are
not the intended recipient, you may not read, copy, distribute, or use this
information. If you have received this transmission in error, please notify the
sender immediately by reply e-mail and then delete this message.*

P    please consider the environment - do you really need to print this email?

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

**EXHIBIT E-32**

Case 2:10-cv-03633-ODW-RZ    Document 366-2    Filed 01/30/12    Page 31 of 35    Page
ID #:23941

Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**EXHIBIT E-33**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

July 13, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

I write regarding your transparent, improper tactic of scheduling two depositions during the week of August 1-5, 2011, knowing that I will be on vacation with my family from July 23 to August 7, 2011, to further delay the resolution of defendants' long pending anti-SLAPP motion. We will not submit to such gamesmanship.

On June 27, 2011, DC clearly stated its objective to bypass the August 8 deadline. Docket No. 290 at 2-3. Since then, you have drummed up and orchestrated discovery disputes to buttress this unwarranted delay.

On July 1, 2011, you suddenly announced that you would take the deposition of Warren Peary's sister Dawn Peavy on August 3, 2011 in New Mexico, despite prior notice that I will be on vacation at this time, and even though you could have noticed her deposition at any time during the three week period from July 1-22, 2011. As you know, Dawn has little or no relevant knowledge and no involvement with this case. You flatly rejected my offers to hold this marginal deposition between July 7 and July 22, and improperly conditioned any change of the August 3 date, when I will be away with my family, on an unwarranted extension of the August 8 deadline.

The deposition of Kevin Marks has long been scheduled for July 21, 2011. However, yesterday, you unilaterally re-noticed the deposition of Mr. Marks to August 5, 2011, again, in the middle of my summer vacation. The claimed basis for the date change was "defendants' pending writ petition," yet we have no indication that the writ petition will be resolved by August 5. Moreover, the supposed rationale for DC's rescheduling of Mr. Marks' deposition would apply to Ms. Larson's deposition, yet that deposition is still set for July 22, 2011.

**EXHIBIT F-34**

**TOBEROFF & ASSOCIATES, P.C.**

July 13, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 2

The three discovery motions DC served last Friday, July 8, 2011, are part of the same abusive pattern.  Although these motions could have been filed and heard earlier (*e.g.*, the dispute regarding Laura Siegel Larson's divorce papers arose in December 2010, and Magistrate Judge Zarefsky's order regarding the divorce was entered on April 11, 2011).  Yet, you purposefully timed all three motions for hearing on August 8, 2011, DC's deadline to file its second opposition to the anti-SLAPP motion, to artificially support your objective to delay its resolution. Even with DC's unwarranted delay in bringing these motions, you could easily have served the "divorce" motion for hearing on July 11, 2011, and the "USAO" motion for July 18, 2011.

DC's lengthy July 7 and July 11, 2011 letters are similarly engineered to generate discovery disputes that it will use as a further excuse to delay the resolution of defendants' long pending anti-SLAPP motion.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Marc Toberoff

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

August 2, 2011

Via E-Mail

Mark Warren Peary
Jean Adele Peavy
51 Camino Cabo
Santa Fe, New Mexico 87508

Re:     Pacific Pictures Agreements

Mark:

This is to confirm your and our understanding that the retainer agreement between Mark Warren
Peary, Jean Adele Peavy and the Law Offices of Marc Toberoff (now Toberoff & Associates,
P.C.), dated as of November 23, 2001 (the "Retainer Agreement"), completely replaced and
superseded the November 23, 2001 agreement between Pacific Pictures Corporation, Jean Adele
Peavy and Mark Warren Peary, as well as the October 27, 2003 agreement between Pacific
Pictures Corporation and Mark Warren Peary (the "PPC Agreement(s)"), and that no provisions
of the PPC Agreements, including paragraph 8 of the 2001 PPC Agreement and paragraph 7 of
the 2003 PPC Agreement, survived or had any continuing force or effect after the Retainer
Agreement was executed.

This also serves to confirm your and our understanding that the September 10, 2004 letter
between Pacific Pictures Corporation, Mark Warren Peary and Jean Adele Peavy totally
cancelled the PPC Agreements, and that no term of the PPC Agreements, including paragraph 8
of the 2001 PPC Agreement and paragraph 7 of the 2003 PPC Agreement, was intended to
survive such cancellation.

Pacific Pictures Corporation has been dissolved, and Marc Toberoff is its successor in interest.
For the avoidance of doubt, in the unlikely event that any right, title or interest of Pacific Pictures
Corporation under either of the PPC Agreements is deemed to have nonetheless survived your
and our mutual cancellation and replacement of the PPC Agreements, Mr. Toberoff hereby
quitclaims any such right, title or interest of Pacific Pictures Corporation to the Estate of Joseph
Shuster.

This letter, including the above quitclaim, shall have no affect on the parties' rights and
obligations under the Retainer Agreement, all of which are expressly preserved.

**EXHIBIT G-36**

**TOBEROFF & ASSOCIATES, P.C.**

August 2, 2011
Re:    Pacific Pictures Agreements
Page:   2 of 2


Very truly yours,

Marc Toberoff


AGREED:


The Estate of Joseph Shuster


Mark Warren Peary,
as Personal Representative


Mark Warren Peary


Jean Adele Peavy


Marc Toberoff,
as successor to Pacific Pictures Corporation


**EXHIBIT G-37**