Marc Toberoff (State Bar No. 188547)
 *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
 *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
22631 Pacific Coast Highway #348
Malibu, California, 90265
Telephone:  (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele
Peavy, and Laura Siegel Larson,
individually and as personal
representative of the Estate of Joanne
Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS**<br><br>Complaint Filed:  May 14, 2010<br>Trial Date:  None Set<br><br>*Declaration of Keith Adams Filed Concurrently Herewith*<br><br>Judge:       Hon. Otis D. Wright II<br>Magistrate:Hon. Ralph Zarefsky<br><br>Hearing Date:   February 13, 2012<br>Hearing Time:   10:00 a.m.<br>Courtroom:      540<br><br>Discovery Cutoff:    None Set<br>Pretrial Conference:  None Set<br>Trial:       None Set |

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND ................................................................3

III.    ARGUMENT ........................................................................6

        A.    Issue 1:  DC's Corporate Records Request Nos. 56-58 to
              Toberoff ....................................................................6

              1.    DC's Requests Were Already Denied, and DC's
                    Motion Should Be Denied on That Basis Alone .................6

              2.    DC's Motion is Moot on This Issue ...................................7

              3.    DC Has All the Documents It Is Entitled To........................7

              4.    The Documents DC Claims to Seek Do Not
                    Correspond to the Requests DC Moves On ........................9

              5.    There Is No Mystery Concerning Chain of Title ...............11

              6.    DC's "Alter Ego" Excuse ..................................................12

        B.    Issue 2:  DC's "Corporate Status" Requests.............................13

              1.    Defendants Have Produced the Documents ........................13

              2.    DC's "Corporate Status" Requests Are Overbroad.............14

        C.    Issue 3:  "Boilerplate" Objections .................................14

        D.    Issue 4:  Ari Emanuel Documents ..............................15

IV.     CONCLUSION ........................................................................16

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Del Campo v. American Corrective Counseling Services, Inc.,*
2008 U.S. Dist. LEXIS 93298 (N.D. Cal. Nov. 10, 2008) ................................ 14

*TC Skyrocket, LLC v. Superskyrocket, LLC,*
2007 WL 1110723 (S.D. Cal. Mar. 29, 2007) ...................................... 14

## <u>Federal Statutes and Rules</u>

17 U.S.C. § 304(c)(6)(D) ...................................................................... 11

F.R.C.P. 30(b)(6) ...................................................................................... 8

F.R.C.P. 34 ................................................................................................. 4

F.R.C.P. 72 ................................................................................................. 6

Local Rule 72-2.1 ..................................................................................... 6

## <u>State Cases</u>

*Doctors' Co. v. Superior Court*
 49 Cal. 3d 39, 44 (1989) ..................................................................... 13

# I.    INTRODUCTION

DC's motion to compel the production of "corporate records" (Docket No. 361; "Mot.") from Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC ("IPWW"), and IPW, LLC ("IPW") (collectively, "Defendants") seeks documents that are either irrelevant, non-existent, or already in DC's possession.

Between this case and *Siegel,* Defendants have produced thousands of pages of responsive documents that provide the information DC purports to seek.  To manufacture a dispute, DC mischaraterizes documents which have been produced to hype supposed inconsistencies or gaps in Defendants' production.

For example, much of DC's motion is directed at "rights" that talent agent Ari Emanuel supposedly has in the Siegel or Shuster terminations.  Since 2006, DC has had the documents in its possession that clearly demonstrate, by their own terms, that Emanuel has no rights whatsoever in the Siegel or Shuster termination.  *See* Declaration of Cassandra Seto (Docket No. 361-1-3; "Seto Decl."), Ex. 33; Docket No. 333-1, ¶ 7.  The only interest Mr. Emanuel had was based on an 2002 agreement between IP Worldwide, LLC and Joanne Siegel/Laura Siegel Larson that provided that IP Worldwide would exclusively negotiate for a limited term on behalf of the Siegels in exchange for a 10% agent's commission if a transaction was consummated within the term (Adams Decl., Ex. A (the "IPWW Agreement")) – a term that expired in 2005 per the agreement, even as extended.  Adams Decl., Ex. A at 4, ¶ 5; Seto Decl., Ex. 19 at 212; Ex. 33.  DC feigns confusion to argue there must be unproduced agreements where Mr. Emanuel "relinquished" his interests, when such interests simply expired by their own terms.

All of DC's supposed "issues" lack merit.

As to "Issue 1," DC seeks to compel Mr. Toberoff to respond to Requests

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

Nos. 56-58, which this Court specifically denied as "hopelessly overbroad" and as improperly "calling for everything there is about companies with which Mr. Toberoff has been associated." Docket No. 262 at 5. DC's motion is based on the fallacy that (i) because Mr. Toberoff refused to produce documents in response to such already-denied requests, but (ii) PPC, IPWW and IPW (the "Corporate Defendants") answered somewhat similar requests and (iii) did not produce as many documents as DC would like, that (iv) Defendants are somehow concealing documents through the pretense they are in the possession of Mr. Toberoff. This is not the case, and also makes no sense because Mr. Toberoff is/was a member or officer of each of the Corporate Defendants and therefore responsive documents in his possession would be within the Corporate Defendants' control. As Defendants informed DC in June 2011, and again in September 2011, many of the documents it seeks never existed in the first place or were destroyed when Mr. Toberoff's home was completely destroyed by the Malibu wildfire in November 2007, and those that did exist were produced. Seto Decl., Ex. 11 at 80, Ex. 32 at 270-72. Lastly, many of the documents DC demands as part of this supposed "issue" are not even responsive to the Requests DC moves on.

It is apparent that what DC really seeks is the entire "universe of documents concerning Toberoff's companies" (Mot. at 10) through the artifice of a limited number of already-denied overbroad requests, but DC is not entitled to that "universe," and Defendants did not agree to provide it.

As to "Issue 2," DC seeks documents demonstrating the Corporate Defendants' corporate status. Such documents have already been produced.

As to "Issue 3," DC seeks to overrule supposed "boilerplate" objections, but documents were not withheld on the basis of the objections referred to.

As to "Issue 4," DC has long had the redacted versions of the agreements it now seeks unredacted versions of, and should be precluded from objecting

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

1 years after receiving these documents.  The redactions pertain not to

2 "Superman," but to unrelated business matters, and Defendants have properly

3 produced those portions of the documents "that pertain to Superman, Superboy,

4 the Siegels or the Shusters."  Docket No. 262 at 5.

5    DC's entire motion is little more than an exercise in billing and in prying

6 into Mr. Toberoff's business affairs that are irrelevant to this litigation.  DC's

7 motion is consistent with its practice of burdening this Court and Defendants

8 with overzealous, misleading and unnecessary motions.  It should be denied in

9 its entirety.

10 ## II.  BACKGROUND

11    The Toberoff Defendants served their responses to DC's initial document

12 requests on January 24, 2011; the responses objected that DC's requests were

13 extremely overbroad, but offered to work with DC to intelligently tailor their

14 requests.  *See* Docket No. 207, Ex. E, I.  Refusing to properly meet-and-confer,

15 DC brought a motion seeking ***all*** of the Toberoff Defendants' business

16 documents and records, which motion was largely denied on May 25, 2011:

17    Issue 11, Objections in Remaining Requests

18    This issue suffers greatly from the fact that the parties have not prepared a
Joint Stipulation. Plaintiff asserts that a large number of document
19    requests were responded to with boilerplate objections, and asks the
Court simply to override the objections. The Court is loath to issue a
20    blanket order, without understanding the particular requests and the
particular objections. Insofar as groups of those have been briefed in an
21    understandable form, the Court rules as follows:

22    a. Requests 35-38 address Mr. Toberoff's relationship with agent Ari
Emanuel. ***The Court agrees that the requests are overbroad, in that they***
23    ***call for everything, not just documents that relate to the issues in this***
***lawsuit.*** The Local Rules provide that where there is a dispute, the parties
24    shall describe their proposals to resolve the dispute short of court action.
L.R. 37-2.1. Defendants' proposal was the more reasonable. Accordingly,
25    Defendants shall produce documents in these categories that pertain to
Superman, Superboy, the Siegels or the Shusters. Otherwise, the motion
26    is denied as to these categories.

27    b. Requests 56-58 and 27-31. ***These document requests are hopelessly***
***overbroad, calling for everything there is about companies with which***
28    ***Mr. Toberoff has been associated. The motion is denied as to these***
***requests.***

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

Because the Court cannot undertake to assess the other objections in the format in which the motion has been brought, the motion is denied as to any remaining categories.

Docket No. 262 at 5 (emphasis added).  On June 1, 2011, DC sent a twenty-page, single-spaced letter in which it, for the most part, simply broke up its overbroad requests into separate overbroad requests ("Requests"), and demanded a "meet-and-confer" on such "new" Requests in two days.  Seto Decl., Ex. 1.  Notably, Toberoff Request Nos. 56-58 and IPW Request Nos. 27-31 (and equivalent requests directed at PPC and IPWW), denied as "hopelessly overbroad," were simply divided into sub-parts, *e.g.*:

> • Original Request No. 56: All DOCUMENTS RELATING to your role and ownership interest in Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, capital tables or other DOCUMENTS evidencing capital accounts or capital structure, filings, income statements, business plans, etc.

> • Proposed 56(a): All DOCUMENTS identifying your past, present, and/or future role or position in Pacific Pictures Corporation.
> • Proposed 56(b): All DOCUMENTS identifying your past and/or present ownership interest in Pacific Pictures Corporation.
> • Proposed 56(c): All DOCUMENTS involved in the formation of Pacific Pictures Corporation, including, articles of organization, operating agreements, minutes, filings, business plans.
> • Proposed 56(d): All DOCUMENTS evidencing Pacific Pictures Corporation's past and/or present capital structure, including capital tables or other DOCUMENTS evidencing capital accounts or capital structure.

Seto Decl., Ex. 1 at 10.

Prior to the parties' June 13, 2011 meet-and-confer, Defendants sent two responsive letters[1] and offered a clear compromise:  "[D]efendants are willing to disregard the informal service of DC's requests in the form of your June 1, 2011 letter and to provide their responses/objections thereto pursuant to F.R.C.P. 34."  *Id.*, Ex. 8 at 48.  "DC conspicuously never accepted that offer, keeping its

---

[1] Contrary to DC's suggestion that Defendants "refused timely to meet and confer" (Mot. at 3), Defendants responded to DC's June 1 letter with a June 3 letter setting forth their concerns with DC's approach, notably DC's improper recycling of specifically denied requests.  Seto Decl., Ex. 5.  DC had informed Defendants that it was unavailable on Wednesday-Friday, June 8-10 (*id.*, Ex. 3 at 31); thus, while Defendants were available June 9-10 to discuss DC's requests (*id.*, Ex. 5 at 36), the parties set the meet-and-confer for June 13, 2011.  *Id.*, Ex. 7 at 42-45.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

options open." *Id.*, Ex. 10 at 53-54 ; *see also id.*, Ex. 9;

Thereafter, DC pretended that it had accepted Defendants offer when it clearly had not. *See* Ex. 11 at 55-56. DC also sent a thirty-page letter purporting to explain and/or narrow its Requests if Defendants would respond by July 15, 2011. *Id.*, Ex. 11.

Defendants served their responses on July 15, 2011, and maintained certain of their objections to DC's overbroad Requests. *Id.*, Ex. 14. On July 18, Defendants stated that they would shortly produce documents where they had agreed to do so in their responses. Defendants also informed DC that, in light of the documents already produced and the very limited number of additional documents, DC should not expect a "voluminous" production of new documents. *Id.*, Ex. 16. On July 22, 2011, DC nonetheless served a frivolous motion to compel Defendants to produce the very documents Defendants had just stated would be produced shortly. *Id.*, Ex. 18.

Defendants duly served responsive documents on July 28, 2011, including the production by designation of responsive documents previously produced in *Siegel* per the parties' standing agreement (Docket No. 232), totaling several thousand pages of responsive documents. *Id.*, Exs. 19-20.

Thereafter, Defendants specifically addressed twelve separate categories of documents that DC contended it was entitled to. *Id.*, Ex. 26. Defendants also restated their position that "Toberoff Request Nos. 56-58, PPC Request Nos. 31, 33; IPWW Request Nos. 32-34; and IPW Request Nos. 27, 29 are mere [slight] variations on requests that were specifically denied in DC's prior motion to compel." *Id.*, Ex. 29 at 247.

On September 15, DC once again simply re-split its requests – such that the specifically-denied Toberoff Request No. 56 went from one overbroad request (originally) to 4 overbroad requests (on June 1) to 7 overbroad requests (on September 15). *See, e.g., id.*, Ex. 31 at 257-58. On September 22, 2011,

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

Defendants clarified that they had no further responsive documents to appropriate Requests and that they would not produce further documents in response to DC's other overbroad Requests (*e.g.,* all tax filings), as Defendants had repeatedly stated in their objections and during the parties' meet-and-confer.  Ex. 32.

DC did not respond to the relevant portions of Defendants' September 22, 2011 letter, and remained silent on the topic for **four months**, until it served the instant motion in mid-January 2012, along with two other motions to compel. DC then refused Defendants' request for a one-week extension as to DC's three dense motions so that the motions could be filed as joint stipulations, even though there was no urgency whatsoever, and even though Defendants offered to maintain DC's desired February 13 hearing date.  *See, e.g.,* Docket No. 363-1, Ex. E at 8-9, Ex. G at 12; Objection to the Declaration of Matthew Kline.

## III.  ARGUMENT

### A.  <u>Issue 1:  DC's Corporate Records Request Nos. 56-58 to Toberoff</u>

#### 1.    **DC's Requests Were Already Denied, and DC's Motion Should Be Denied on That Basis Alone**

DC moves to compel Mr. Toberoff to respond to its "revised" Request Nos. 56-58.  This Court specifically rejected such requests as "hopelessly overbroad, calling for everything there is about companies with which Mr. Toberoff has been associated.  The motion is denied as to these requests." Docket No. 262 at 5.  DC chose not to seek review of such ruling, which is now binding pursuant to F.R.C.P. 72 and Local Rule 72-2.1.  As shown by DC's recitation of such requests, it did little more than split its initial, overbroad requests into seven sub-parts, which together comprise the prior denied requests.  Mot. at 5-7.  There is no basis to permit DC to bring a motion to compel as to already-denied requests, simply by "cutting and pasting" them into

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

1   sub-parts, and DC's motion should be denied on that basis alone.

2   ## 2.    DC's Motion is Moot on This Issue

3        DC's motion to compel Mr. Toberoff to respond to Requests Nos. 56-58

4   is also moot.  DC states in its motion that the three Corporate Defendants

5   produced the documents in their possession.  Defendants informed DC on June

6   13, 2011 that many of the relevant old corporate documents had been stored at

7   Mr. Toberoff's home and were completely destroyed in the Malibu wild fires in

8   November 2007.  *See* Seto Decl., Ex. 11 at 80.  Nor is it surprising that Pacific

9   Pictures (a loan-out corporation) or IPWW (short-lived and long inactive) do

10  not have many corporate records.  As repeatedly confirmed by Defendants,

11  where they agreed to produce documents in response to DC's requests, the

12  responsive documents in their possession were produced physically or by

13  designation of previously produced documents.  *See, e.g.,* Seto Decl., Exs. 26,

14  29, 32.

15       DC feigns that it "accepts those representations."  Mot. at 4.  However,

16  DC argues that, while the Corporate Defendants "have now responded to DC's

17  corporate record requests" (Mot. at 9), the supposedly "meager production"

18  means that Toberoff possesses the documents "himself" and refuses to produce

19  them.  *Id.* at 10.  No documents were withheld on such a basis.  Moreover, this

20  makes no sense as Toberoff is/was a member or officer of such companies and

21  his possession of responsive documents would naturally extend to his

22  companies.

23  ## 3.    DC Has All the Documents It Is Entitled To

24       Defendants have fully responded to DC's Request Nos. 56-58, as broken

25  up into sub-parts (a) through (g) on September 15.  DC already has the

26  information responsive to sub-parts (a) through (d), which address Mr.

27  Toberoff's roles in the various Corporate Defendants.  DC has the operative

28  documents (*i.e.,* the foundational agreements and modifications) that show Mr.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

Toberoff's ownership and management roles. *See, e.g.,* Seto Decl., Exs. 19 at 199-201, 33. PPC was a loan-out corporation for Mr. Toberoff formed decades ago. Sub-part (e), which seeks formation filing documents, is addressed in Part III.B.1, *infra*, but such documents as were in Defendants' possession were produced. As to sub-parts (f) and (g), these demands for the Corporate Defendants' "capital structure" (Request Nos. 56(f)-(g), 57(f)-(g), 58(f)-(g)) effectively ask for all documents pertaining to such companies' finances, regardless of their relevance to this litigation, and were duly objected to as grossly overbroad. *See, e.g.,* Seto Decl., Ex. 14 at 135-36 (IPW Request No. 26) 162-63 (Pacific Pictures Request No. 162).

To confuse the Court and evade its actual requests, DC freely distorts the facts to give the false impression that it lacks the relevant information or that Defendants withheld documents they agreed to produce:

- DC claims "Toberoff suggested he had at least one limited partner in one of his companies" and presents this as a great mystery, when it is clear to DC that the individual in question is "Bruce Karsh." Mot. at 10-11.

- DC trumps up J. Todd Harris as a person "whose precise role Toberoff refuses to discuss or disclose" (Mot. at 11) when Defendants "clearly stated that Mr. Harris was/is ***not*** an employee" of the Corporate Defendants and that "Mr. Harris would also not be a proper Rule 30(b)(6) witness on any of the topics in DC's deposition notices." Seto Decl., Ex. 22 at 219.[2]

- DC states that the Corporate Defendants "employed various individuals," "had outside investors," and "touted their success in various outlets"

---

[2] In exchange for the provision of office overhead by IPW, Mr. Harris rendered production development services with respect to various projects having nothing to do with Superman, *e.g.,* the 2008 film "Bottle Shock." Contrary to DC's suggestion, he has/had no ownership interest in any of the Corporate Defendants, and also was not an officer or employee of any, and he had no interest in or involvement with Superman.

8

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

(Mot. at 10), but cites no support for its assertions, which are untrue as to PPC, largely untrue as to IPWW, and partly untrue as to IPW. *See* Docket No. 75 at 24-25 (setting forth companies' relevant activities).

- IPW has no interest in or involvement with Superman, the Siegels or the Shusters. *See* Docket No. 75 at 25:9-16. Throughout its complaint, DC makes **_no_** specific allegations regarding IPW. As DC has known since 2006 (*id.*), IPW's only involvement with "Superman" was a brief period where it was the successor to the IP Worldwide Agreement, which expired within months of IPW's formation. *Id.* IPW's limited production should therefore be no surprise to DC.

- In their answer, Defendants denied that Mr. Toberoff "is" the sole shareholder of PPC, because PPC no longer exists, and denied that Mr. Toberoff is/was the "sole" shareholder of IPW and IP Worldwide because he is not. *See* Docket No. 347 ¶¶ 14-17. DC pretends these answers are somehow "confusing[]." Mot. at 11.

- Contrary to DC's suggestion that Defendants have concealed the ownership structure of IP Worldwide and IPW, Defendants have disclosed (and DC even references in its motion, see Mot. at 11) that the only individuals other than Mr. Toberoff who held or hold any interest in any of the Corporate Defendants are Mr. Emanuel (IP Worldwide, LLC) and Mr. Karsh (IPW, LLC). *See* Docket No. 305-17 at 472:13-474:22; Docket No. 333-1, ¶ 7.

- The Corporate Defendants are not obliged to disclose the identities of every employee they have ever had, as DC suggests (Mot. at 11-12), nor does DC even point to a Request that asks for the same.

### 4.    The Documents DC Claims to Seek Do Not Correspond to the Requests DC Moves On

DC claims that it is entitled to all of the Corporate Defendants'

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

"agreements," "lists of each companies' owners, managers and employees," and "documents relating to company meetings and operations." Mot. at 14. However, the Requests on which DC moves to compel ***do not ask for this material***. Moreover, if they did, that would be grossly overbroad. For instance all "agreements" and all "documents relating to company meetings and operations" encompass virtually every document in each companies' entire business history, unrelated to Superman, Superboy, the Siegels or the Shusters. *See* Docket No. 262 at 5 (DC is not entitled to "for everything there is about companies with which Mr. Toberoff has been associated"); Seto Decl., Ex. 15 at 150-51.

Nor does DC point to any response where the Corporate Defendants agreed to provide such material. In response to many of DC's overbroad requests, these entities stood on their objections. *See, e.g.,* Seto Decl., Ex. 14 at 150-51 (objecting to a request for "[a]ll DOCUMENTS identifying any business plans of IP WORLDWIDE, including but not limited to marketing of rights held, solicitation of new business, or plans to sell, lease, license or otherwise transfer rights"); 151-52 (objecting to a request for "[a]ll DOCUMENTS identifying any past, current, or planned property in which IP WORLDWIDE held, holds, or will hold an interest").[3] Defendants also stood on such objections during the meet-and-confer process. *See, e.g., id.*, Ex. 26 at 239-240; Ex. 29 at 248; Ex. 32 at 270-72 (further explaining that, as narrowed to Superman-related documents, the responsive documents were produced).

DC's motion is ***not*** brought as to such Requests. DC's motion, filled with rhetoric as to what it supposedly is entitled to in general, as opposed to in response to the Requests cited in its motion, is little more than a Trojan horse

---

[3] While DC claims it has "gone to great pains and lengths to describe exactly the sort of documents it seeks" (Mot. at 14), it is obvious from its own motion seeking the "universe of documents concerning Toberoff's companies" (*id.* at 10) that it still improperly seeks "everything there is about companies with which Mr. Toberoff has been associated." Docket No. 262 at 5.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

for its overbroad requests previously denied by this Court.

### 5.    There Is No Mystery Concerning Chain of Title

DC also makes much ado about purported "rights" transactions or the "chain of title" to the Siegel and Shuster termination rights.

DC has *all* of the transactions that relate to the terminations, none of which affect the Siegels' or the Shuster estate's chain-of-title to their respective termination interests:  the 2001 and 2003 PPC Agreements, which could not transfer the Shuster termination interest as a matter of law under 17 U.S.C. § 304(c)(6)(D) and hence do not affect the chain of title; the letters cancelling the 2001 and 2003 PPC Agreements that affirm PPC has no interest in this litigation of Superman (Adams Decl., Exs. B-C); the 2002 IPWW Agreement which did not transfer any rights and simply provided for a 10% commission during a limited term which long ago expired (Adams Decl., Ex. A at 4 ¶ 5); PPC's transfer of assets to IP Worldwide which excluded any interest in Superman (Docket No. 305-20 at 673); and IP Worldwide's assignment of its limited rights under the expiring 2002 IPWW Agreement to IPW as part of a "Winding-Up" agreement.  Seto Decl., Ex. 33; Docket No. 305-17 at 473:4-15.

As clearly shown by these documents, the Corporate Defendants have *no* interest in the Siegel and Shuster terminations.  DC even has Mr. Toberoff's retainer agreements with the Siegels and Shusters, and Mr. Toberoff's exact legal contingency fee – the sole "interest" of any of the Toberoff Defendants in either the Siegel or the Shuster terminations.  Docket No. 209 at 11; No. 285.

The only document that DC does not have is the so-called "consent agreement" – an identified and logged document that this Court and Judge Wright have upheld as privileged.  Docket Nos. 209, 248.

The only "chain of title" issue is one that DC concocts out of whole cloth. DC argues that "there appears to be an existing contract that provides Emanuel shares in monies received from the putative Superman rights" and feigns that

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

there was no "relinquishment" of this contract by Mr. Emanuel. Mot. at 15. DC purports to refer to an August 17, 2004 "Winding-Up" Agreement for IP Worldwide, which entitles Mr. Emanuel to a percentage of revenue from "Company Contracts." Ex. 33 at 282. The relevant "Company Contract" is the 2002 IPWW Agreement that ended on April 23, 2005, as the "Winding-Up" agreement specifically notes. Ex. 33 at 286. Mr. Emanuel thus has no "interest" in the Siegel termination to "relinquish," as DC undoubtedly knows. Even the handwritten note cited by DC in its motion (apparently a "post-it" from Emanuel's counsel, Tom McGuire, that was inadvertently copied and produced) references this. *See* Mot. at 28; Seto Decl., Ex. 33 at 414 ("Superman – may find problem now, but doesn't surface <u>until after the term</u>.") (emphasis added).

In any event, had such "chain of title" issue been DC's true concern, it could easily have deposed Mr. Emanuel in this case, or served focused interrogatories on the Corporate Defendants (on whom it has served only six interrogatories in 20 months of litigation) and received intelligent responses. *See, e.g.,* Docket No. 262 at 6 ("[T]he Court agrees that Defendant answered these interrogatories satisfactorily. … [H]e certainly provided a fair response to the interrogatories."; "[T]he answers are fully responsive.").

### 6.      DC's "Alter Ego" Excuse

Through its motion, DC hypes its complaint's standard "alter ego" allegation as a reason why it is supposedly entitled to the "entire universe" (Mot. at 10) of documents from the Toberoff Defendants. This is nothing more than a transparent excuse to pry into Mr. Toberoff's business activities that have nothing whatsoever to do with this litigation.

Such boilerplate "alter ego" allegations are commonplace and included in virtually every complaint against related entities. *See* FAC ¶ 23 ("alter ego" assertion based on alleged "unity of interest" between the Toberoff Defendants). DC has made no substantive allegations as to any real "alter ego" issues such as

the improper transfer or commingling of funds, etc. Under DC's theory, whenever any company is subject to a boilerplate "alter ego" allegation, nearly every financial or business document of that company would be relevant and discoverable, which is clearly not the law.  Docket No. 262 at 5.

Moreover, DC's "alter ego" allegation is virtually meaningless and ineffective, as DC brings a claim for damages against only Mr. Toberoff and his long dissolved loan-out company, PPC.  *See* FAC ¶¶ 174-86.  DC's Third and Sixth Claims – the only claims brought against IP Worldwide and IPW, LLC – seek declaratory relief, not damages.  *See* FAC ¶¶ 165-73, 187-89, 192-94.  The only claims on which DC seeks damages are its tort claims*,* the Fourth and Fifth Claims.  The Fifth Claim is against Mr. Toberoff only (FAC ¶¶ 180-86), and Mr. Toberoff and PPC are subject to joint and several liability for the Fourth Claim (FAC ¶¶ 174-79) in any event.  *See Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 44 (1989).

## B.  **Issue 2:  DC's "Corporate Status" Requests**

### 1.  **Defendants Have Produced the Documents**

DC's demand for "corporate status" documents is also moot.

Defendants ***produced*** the responsive documents that show the Corporate Defendants' status.  Defendants produced the articles of organization for IP Worldwide and IPW (*see* Ex. 19 at 199-205), and directed DC to the California Secretary of State's website that confirms that both are still active entities.  Ex. 32 at 271.  As to PPC, Defendants informed DC that it "was formed decades ago as a 'loan-out' corporation, and PPC cannot locate further responsive documents."  Ex. 32 at 270.

DC then complains that the Corporate Defendants "have not produced the documents that they themselves filed with the government or prepared for their shareholders or members when they dissolved."  Mot. at 18.  This is a *non sequitur*:  IPW and IP Worldwide have not dissolved.  As to PPC, the

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

"[d]ocuments that show that PPC was dissolved by proclamation were produced in this action." Ex. 32 at 270; Ex. 19 at 197-98.

To the extent DC was ever actually confused or unclear as to the Corporate Defendants' status, ownership structure or management, it easily could have or can serve focused interrogatories.

## 2.   DC's "Corporate Status" Requests Are Overbroad

Despite DC's misleading statements that its Requests just seek documents that demonstrate Defendants' "corporate status," DC's Requests actually ask for "[a]ll DOCUMENTS filed with or received from any government agency reflecting the current corporate status" of the Corporate Defendants. Mot. at 16. Thus, even its supposedly "narrowed" Requests seek *all* documents filed by the Corporate Defendants with the government, as such documents would necessarily "reflect" their "corporate status." Nor has DC offered an intelligible explanation of the documents it seeks, if it is not seeking every document ever filed with the government.[4]

## C.   Issue 3:  "Boilerplate" Objections

DC seeks to overrule Defendants' general objections. Many of these simply restate for the purpose of clarity the terms of this Court's prior orders or the parties' agreements – *e.g.*, this Court's order upholding the consent agreement as privileged or the parties' agreement to produce documents by

---

[4] DC claims that "[t]hese specific requests do not seek tax filings" (Mot. at 18) notwithstanding their plain wording. DC nonetheless cites inapposite cases where tax filings were ordered produced because, unlike here, such documents were directly relevant to the plaintiff's claims. *See Del Campo v. American Corrective Counseling Services, Inc.*, 2008 U.S. Dist. LEXIS 93298 (N.D. Cal. Nov. 10, 2008) (allegations that private contractors administering government program violated Federal law and manipulated funds to do so); *TC Skyrocket, LLC v. Supersky rocket*, LLC, 2007 WL 1110723 (S.D. Cal. Mar. 29, 2007) (tax information relevant to bifurcated separate trial on "alter ego" allegations that plaintiff paid money and provided property to corporate defendant that subsequently closed its business).

14

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS

designation.  *See, e.g.,* Mot at 20-24, ¶¶ 2-4, 14-16.  Furthermore, while DC dismisses Defendants' objections as mere "boilerplate," Defendants' response to DC's requests provided numerous specific reasons why the requests were grossly overbroad on their face.  *See, e.g.*, Motion, Appendix I at 46 (stating "this request … is compound, duplicative, overbroad, burdensome and oppressive, as it could be reasonably construed to request all documents related to Superman"), 55 (the request "effectively asks for every document filed with a government agency regarding IP Worldwide").

With respect to defendants' SLAPP objection, Defendants did not withhold any documents based on this objection as DC is well aware (*see, e.g.,* Docket No. 210 at 24:19-21), but noted it out of an abundance of caution to preserve their rights on appeal.

### D.    Issue 4:  Ari Emanuel Documents

As to this issue, DC seeks all documents related to both Mr. Emanuel and "'Superman, Superboy, the Siegels or the Shusters.'"  Mot. at 26.  Contrary to DC's aggressive misrepresentations, Defendants produced the responsive "Ari Emanuel" documents by designation – including the IP Worldwide Agreement with Emanuel as well as the 2004 "Winding Up" Agreement for IP Worldwide. Ex. 19 at 193-94.

Effectively, this issue has already been decided, when the Court endorsed Defendants' proposal that, as to "Requests 35-38 [which] address Mr. Toberoff's relationship with agent Ari Emanuel …. Defendants shall produce documents in these categories that pertain to Superman, Superboy, the Siegels or the Shusters.  Otherwise, the motion is denied as to these categories."  Docket No. 262 at 5.

DC argues it is entitled to an unredacted version of the 2004 "Winding-Up" Agreement.  The redacted portions of that agreement concern non-Superman matters not relevant to this litigation (*i.e.,* transactions entirely

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE PRODUCTION OF CORPORATE RECORDS

unrelated to Superman) to which DC is not entitled. As this Court has already held, DC is not entitled to "everything there is about companies with which Mr. Toberoff has been associated." *Id.*

DC received redacted copies of such agreements in 2006 in the closely related *Siegel* action based on similar requests, <u>and</u> the documents were produced by designation in this case in December 2010. Yet, DC failed to voice any objection to such redactions until August 2011. Ex. 21 at 218.

Lastly, as set forth above, DC's claim that the 2004 "Winding-Up" Agreement entitles Mr. Emanuel to any money with regard to Superman willfully misinterprets that agreement and the original 2002 IP Worldwide Agreement. *See* Section III.A.5, *supra*. Contrary to DC's suggestion (Mot. at 13-14), there is no contradiction whatsoever between these agreements and Defendants' statements or Ms. Larson's testimony that Mr. Emanuel has no interest in her recaptured Superman interests. DC slyly complains that "no document evidencing Emanuel relinquishing his interests" has been produced (Mot. at 28), when there is no need to "relinquish" an interest that long ago expired on its own terms. DC's accusation that Defendants have "conspicuously hidden the details of their agreements among each other and with Emanuel" (Mot. at 29), like so many of its counsels' misleading and prejudicial statements, is based on nothing.

## IV.    CONCLUSION

For the reasons set forth above, DC's motion to compel should be denied in its entirety.

DATED:  January 30, 2012          TOBEROFF & ASSOCIATES, P.C.


By _____
          Marc Toberoff
Attorneys for Defendants Mark Warren Peary, *et al.*

16
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL THE
PRODUCTION OF CORPORATE RECORDS