DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>                Plaintiff,<br><br>       v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT FURTHER DEPOSITION OF DAWN PEAVY**<br><br>SUPPLEMENTAL DECLARATION OF JASON H. TOKORO FILED CONCURRENTLY HEREWITH<br><br>**Judge**:        Hon. Otis D. Wright II<br>**Magistrate**: Hon. Ralph Zarefsky<br><br>**Hearing Date**:       Feb 13, 2012<br>**Hearing Time**:       10:00 a.m.<br>**Courtroom**:            540<br>**Discovery Cutoff**:   None Set<br>**Pretrial Conference**: None Set<br>**Trial**:                      None Set |

Dawn Peavy should be deposed for another 90 minutes. Defendants' substantive objections to DC's two stated bases for reexamining her are without merit, and their *ad hominem* attacks on DC are both improperly raised and false.

1. <u>The Peavy Will</u>. Defendants argue at length that Mark Peary never intentionally misrepresented the contents of the Peavy Will during his deposition, and that when he falsely testified that he and his sister shared 50-50 under the Will, it was based on a mistaken "belief" that the Will had the same terms as a "trust" that his mother hoped to create, but never created. Opp. 1:8-20, 6:26-9:7. Even accepting *arguendo* this dubious claim, *nowhere in defendants' brief* do they address the core fact and thrust of DC's motion—which was that Dawn testified that *Mark* described the contents of the Will to her, and apparently did so falsely:

> Q. Have you seen a copy of your mother's will?
> A. No.
> Q. Do[] you know that it names you as a beneficiary?
> A. Yes.
> *Q. How do you know that?*
> *A. They told me.*
> *Q. Who is "they"?*
> A. *My brother* [Mark Peary] and her [Jean Peavy]. Seto Decl. Ex. A at 53:14-23.
> Q. You understand that your family is claiming an interest in certain rights --
> A. Correct. I understand that.
> Q. -- related to "Superman." You understand that; correct?
> A. Yes.
> Q. And those rights come from the fact that your Uncle Joe Shuster was the original illustrator; correct?
> A. Correct.
> *Q. And when your brother <u>shares 50/50 under your mother's will</u>, is it your expectation that whatever those rights are -- and I know they're a legal definition -- that's one of the assets?*
> A. <u>*That we'll split 50/50, yes*</u>. *Id.* at 104:25-105:14 (emphases added).

This testimony was quoted in DC's motion, Mot. 7-8, and defendants ignored it. They also ignore that Dawn and Mark discussed the Will as a separate stand-alone document from the alleged "trust," Seto Decl. Ex. A at 54:11-55:3; Docket No. 305-37 at 1177:18-1182:20, and that Dawn repeatedly said that she and her

1  brother shared 50-50 under the Will.[1]

2  DC should be permitted to examine Dawn fully about what Mark told her about the contents of the Will and trust, using the actual Will for cross-examination. Defendants do not and cannot dispute that newly produced documents are a well-recognized bases for re-opening depositions. Mot. 10 & n.4. Nor can they dispute that Mark's credibility is a core issue here, that he saw his mother's Will and described it to his sister erroneously, or that his standing properly to act as an executor of Joe Shuster's estate in lieu of his mother is an issue in dispute.

Defendants contend in a footnote that Peavy's Will was not responsive to DC's original discovery requests, and this excuses their failure to produce it before Dawn's deposition, Opp. 7. n.3, but this, too, lacks merit. DC's requests—to which defendants expressly waived *all objections* save for privilege in 2010, Docket No. 133—called for, *inter alia*, "ALL DOCUMENTS relating to … the disposition … of any rights in SUPERMAN," Mot. 6 n.3. Defendants cannot credibly claim that Jean Peavy's Will *bore no relation to the disposition of any Superman rights*—as all agree that one of Jean's primary assets to bequeath was her putative Superman rights. Defendants knew and conceded the Siegel and Shuster heirs' wills were responsive to DC's document requests—they produced Joanne Siegel's will in early 2011 pursuant to them. *See* Tokoro Decl. Exs. A-C. Defendants' assertion that Jean's rights were too inchoate (before 2013) to count as a "right," Opp. 12:4-11, is

---

[1] Seto Decl. Ex. A at 98:22-99:17 (emphases added):
Q. As I understand it, your brother's doing all the work on these legal issues on behalf of your family; correct?
A. My brother and Marc -- I mean, and Toberoff are the ones working on it.
*Q. And you have also testified that you and your brother, [Mark] Warren [Peary], share 50/50 under your mother's will; correct?*
*A. Yes.*
Q. Do you and your brother, Warren, have any agreement by which he would be compensated for the work that your brother, Warren, is doing on these legal matters?
A. No. The agreement is, *it's an estate that's set up for both of us to share.*
Q. And so you don't have some agreement that, "Hey, I'm going to record the time that I spend on this matter and I'll charge some hourly rate to the estate"?
A. No. We're family. We do everything together.

equally baseless.  Toberoff long before tried to sell those unproven rights to third parties and purportedly contributed the rights to his business partnership with Ari Emanuel.  Docket Nos. 305-54; 305-55; 356 at 1, 3-5; 361-3 at 273-79.

    2. The 2011 Pacific Pictures Agreement.  Defendants do not dispute that the 2011 Pacific Pictures Agreement was executed *before* Dawn's deposition; that it was *responsive* to numerous of DC's pending document requests; and that they first produced it *weeks after* Dawn testified.  Nor do they dispute that Dawn was at the in-person meeting with Jean Peavy, Marc Toberoff, and Mark Peary when the 2011 Pacific Pictures Agreement was signed, or that Dawn could testify to her mother's health, demeanor, and communication abilities that fateful day.  Nor do they dispute that Dawn was asked only a handful of brief questions concerning her mother's health, before DC, at Dawn's request, moved on to other subjects.  Finally, nor do defendants dispute that the series of Pacific Pictures agreements Toberoff and the Shuster heirs signed are at the center of this case and DC's claims—or that the 2011 Pacific Pictures Agreement was created, mid-litigation, to respond to them.

    All of this is simple and sound reason to permit DC a short period of time to examine Dawn again concerning her mother's competency as of August 2011—an issue in dispute in the case, and an issue that defendants notably *decline* to concede.  *Cf.* Mot. 12:1-7.  Rather, defendants seize on a single typographical error in DC's motion stating that the date of Jean Peavy's stroke was *1999* rather than *2009*, and suggest that DC wants to ask Dawn about Jean Peavy's competency over a period of 10 years—rather than as of August 2011.  *Compare* Mot. 11:12-12:7, *with* Opp. 10:6-16.  Not so.  DC believes Jean Peavy was fully competent when she wrote DC a long series of letters starting 1990s, in which she affirmed DC's full rights.[2]

    For all these reasons, DC's motion should be granted.

    3. Defendants' *Ad Hominem* Attacks.  Recycling rhetoric and argument from their now-rejected SLAPP motion, -abandoned Rule 12 motions, -rejected Toberoff

---

[2] *E.g.*, Docket Nos. 49 ¶¶ 51-57; 305-28 - 305-36; 307 at 6-9; 334 at 3-4.

1  Timeline motion, -rejected interlocutory appeals, and -lost discovery motions in
2  which they improperly claimed privilege, defendants go so far as to ask the Court to
3  sanction DC. Of course, defendants followed none of the rules for making such a
4  request, and their attacks are best ignored as irrelevant. The attacks are also untrue:

    a. Defendants repeatedly claim that DC sought to deprive the Court of Mark Peary's actual deposition testimony. Opp. 1:16, 8:10, 11:12. But DC submitted *Mark's full testimony* before, and rather than re-file those 360 pages, cited to files to which the Court has full, ready access. *E.g.*, Mot at 7:1 (citing Docket No. 305-37).

    b. Defendants say DC insisted Dawn's deposition take place during counsel's vacation. Opp. 3:7-14. Again, untrue. DC offered to take the deposition later if they could file their SLAPP opposition a week later; defendants refused.

    c. Defendants suggest DC sought to "drive a wedge" between Dawn and her brother by asking her questions about developments in Superman-related litigation. Opp. 3:19-4:17. DC asked these questions because Dawn took the dubious position (from which she later retreated, Seto Decl. Ex. A at 48:11-50:10, 99:21-100:10, 108:8-14) that, despite living with her mother and brother, they never discussed Superman legal issues, *id.* Ex. A at 36:11-22, 37:11-38:6, 42:6-45:2, 46:8-19, 47:25-48:24, 66:12-67:25, 70:24-71:22, 73:12-75:2, 76:2-17, 85:1-86:6.

    d. Finally, in a series of bullet points, Opp. 10:17-12:20, defendants accuse DC of nine "prejudicial" "falsehoods." Taking each accusation in turn:

- Dawn Peavy's own testimony (block quoted above) shows that the true terms of the Peavy Will were concealed from her and misrepresented.
- That same testimony, which Toberoff observed and did not correct—along with the plain terms of the Will—shows she was misled.
- If the net-effect of the pre-2011 Pacific Pictures agreements did *not* preclude Pacific Pictures from arguing it owned 50% of the Shusters' rights (the express terms surely create this right, Mot. 4), then why else did defendants create the 2011 Pacific Pictures Agreement?

- Reproduced in the margin is Peary's exact testimony on the *unlawfulness* of the Pacific Picture agreements and Toberoff's admissions regarding it.[3]
- Peary admitted his alleged understanding with Toberoff concerning terms of the Pacific Pictures agreement appeared *nowhere* in the contracts, Docket Nos. 305-37 at 1434:14-1442:18; 307 at 6-9; 334 at 11-17; Mot. 4—if so his alleged understanding to the contrary had to be based on an "oral" agreement, unless he is now saying it was based on mind reading.
- Jean Peavy testified in *Siegel* that she met Toberoff in the "middle" of 2001, Docket No. 305-59 at 2110:24-2111:15—*before* August 2001, when her Will is dated, Docket No. 360-2- at 235-36.  Mark Peary, in turn, testified he did not introduce his mother to Toberoff until *after* he had researched Toberoff and had decided to work with him—pushing back the date even further before the Will.  Docket No. 305-37 at 1207:12-1210:22.   As to Mark's work on the Will, Jean testified in *Siegel*, "[m]y son handles everything legal," and Mark admitted he talked with his mother about her alleged desire to modify the Will with a trust, Docket Nos. 305-37 at 1177:18-1182:20; 305-59 at 2107:12.

---

[3] Docket No. 305-37 at 1326:16-1327:13 (emphasis added):
Q. Did you think -- did you think that it was proper for lawyers to impose that -- to have such a -- an agreement with a client that the client can't settle without the lawyer's consent no matter how much the client wants to settle?
A. At the time I didn't consider it unreasonable.
Q. Did you think it was appropriate?  Did you have any knowledge on that subject whether the lawyers are even permitted under the law to have such arrangements?
A. No, I -- I was not aware.
Q. Did you do any research on that subject?
A. Not specifically this, no.
*Q. Were you aware that it's not lawful for a lawyer to have such a -- an agreement with a client?*
*A. Not at the time.*
*Q. Have you since become aware of that?*
*A. Yes.*
*Q. When?*
*A. Sometime 2003.*
*Q. How?*
*A. Discussions with Marc Toberoff.*

- Peary's failings as an executor are several, Mot. 10-11, and the shell games defendants have played in the probate case are central to DC's First Claim and to defendants' now-abandoned Rule 12 motion, *e.g.*, Docket No. 334 at 9-10. Despite defendants' *ipse dixit* to the contrary, Peary's delay in the probate matter *is* improper. *E.g.*, *id.*; Docket No. 334-9 at 23-24 (Peary falsely promised in 2003 to "determine the value of the property" and "file an inventory and appraisal … within four months" after the letters testamentary were issued); CAL. PROBATE CODE §§ 8800 & 12200 (requiring Peary to petition for distribution over six years ago).
- Joe Shuster's will named *Jean* as his Executor, Docket No. 334-7 at 9, and as their Rule 12 papers revealed, defendants substituted Peary for Peavy as the Executor to facilitate their shell-game argument that Peary was not bound by the 1992 agreement that Peavy signed forfeiting all Superman rights. Docket No. 334 at 9-10. Jean and Mark testified she Jean deferred to Mark on all "legal" matters—and they did not exclude the probate case from the list. Docket Nos. 305-37 at 1138:10-1139:12, 1174:23-1176:17; 305-59 at 2107:12.
- No one disputes that Toberoff and his colleague drafted the 2011 Pacific Pictures Agreement, his colleague e-mailed it to the Shuster heirs, and Toberoff waited until he travelled to Santa Fe and met with Jean, Mark, and Dawn to get Jean's signature. Who else "induced" Jean to sign the agreement? Defendants notably do not say, and instead invite DC to depose Jean on the issue—whom they long said was too infirm to testify.

Dated: February 1, 2012

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli