DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone: (845) 265-2820
Facsimile: (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Judge**: Hon. Otis D. Wright II<br>**Magistrate**: Hon. Ralph Zarefsky<br><br>**Hearing Date**: Feb. 13, 2012<br>**Hearing Time**: 10:00 a.m.<br>**Courtroom**: 540<br>**Discovery Cutoff**: None Set<br>**Pretrial Conference**: None Set<br>**Trial**: None Set |

1  Defendants' 19-page opposition to producing the Marks Memo to DC (or to
2  this Court for *in camera* review) never really grapples with the key realities
3  compelling the production of the Marks Memo. DC's motion should be granted.
4  1. Citing no case law and providing no reasoning for their position,
5  defendants assert (and throughout their brief assume) that Judge Wright did not
6  reject their common-interest privilege claim over the July 11, 2003, letter from
7  defendant Laura Siegel Larson to Michael Siegel. Opp. at 13:21-25. Judge
8  Wright's ruling compelling the production of this letter over defendants' strident
9  claims that it was privileged and rulings in the *Siegel* case barred its production
10 necessarily rejected defendants' privilege claims and other asserted arguments. Yet
11 almost every case defendants cite and every argument they make assumes Judge
12 Wright did not reach this conclusion. *E.g.*, Opp. at 1:8-2:18, 7:2-9:27, 13:9-15:23.
13 Defendants took the *precise opposite* position last year, when they asserted
14 that the district court's one-word denial of DC's motion to review necessarily
15 meant DC's "arguments" in that motion had been "rejected by Judge Wright."
16 Docket No. 269 at 1, 3-4, 13. In that situation, it made no sense to read the district
17 court's summary denial as necessarily rejecting DC's substantive arguments
18 because the denial could have been based on the heightened standard of review on a
19 motion for review. Docket No. 274 at 4-5. Here, Judge Wright's order granting
20 DC's motion for review and *compelling* defendants to produce the July 2003 letter
21 can *only* be read as his rejecting their privilege and other arguments—all of which
22 they asserted foreclosed production.
23 2. Defendants assert that DC does not need to see the Marks Memo because
24 he testified consistent with its terms in the *Siegel* case and, in the *Siegel* case, Judge
25 Larson rejected DC's "settlement defense" on summary judgment. Opp. at 1:25-
26 2:22, 3:2-5:3. What defendants fail to confront is that, in *Siegel*, Marks testified
27 (and Laura argued) she had not reached an "*enforceable*" deal with DC, even if she
28

1  agreed to settle her claims in October 2001.  Opp. at 5:16-21 (quoting Marks'
2  testimony; emphasis in original); Case No. CV-04-8400, Docket No. 161 at 45-61.

3  The qualifier "enforceable" is key here.  It *never* appears in Laura's July
4  2003 letter to her brother.  Docket No. 362-2 at 287 ("Kevin Marks had turned
5  Marc away saying we had a deal with DC when we did not."; "Kevin Marks told
6  Marc we had a deal with Time Warner/DC.").  To the contrary, Laura complained
7  in her letter to Michael that Marks (and his law partner Bruce Ramer) were forcing
8  her to honor a "deal" she did not like—again, no "enforceable" qualifier.  *Id.*  These
9  are stunning, *unqualified* admissions from Laura, which defendants improperly
10 withheld.  DC is also entitled to see these admissions repeated as they are stated in
11 the Marks Memo itself—and to see if it, too, lacks this "enforceable" qualifier.

12 The Marks Memo, like the July 2003 letter, is new, independent grounds—
13 based on direct admissions from Laura and Marks—that DC can and must be able
14 to use to impeach Marks and Laura in this case.  These documents and admissions
15 are also fully supportive of DC's interference-with-prospective-economic-
16 advantage claim, which is unique to this case and was expressly not asserted in
17 *Siegel*.  Docket Nos. 49, FAC ¶¶ 180-86; 334 at 21-23.  These newly emerged
18 documents and admissions are also proper grounds, as DC will argue in *Siegel*
19 (before Judge Wright and the Ninth Circuit), to reconsider Judge Larson's summary
20 judgment ruling, given that Laura deprived Judge Larson (and DC) of this key
21 evidence by asserting baseless and erroneous privilege objections over it.

22 3.  Laura suggests her brother was somehow duty bound *not* to disclose the
23 contents of her July 2003 letter to third parties, Opp. at 12:12-13:6, and that all she
24 did in her July 2003 letter was repeat a past confidence they shared with Marks, *id.*
25 at 7:22-9:11.  This whole line of argument again ignores Judge Wright's *rejection*
26 of defendants' common-interest claims over the July 2003 letter, and defendants
27 also provide no answer to the following key point:  By July 2003, the relationship
28 between Laura and Michael had soured, and Michael was accusing Toberoff (her

1  business partner) of a range of frauds.  Defendants admit in "early 2003" Toberoff
2  sought to purchase Michael's putative Superman rights, Opp. at 5:13-15—placing
3  Laura and Michael on opposite sides of a negotiation.  Michael's lawyer, Bulson,
4  moreover, testified that far from sharing a common, trusting relationship, Toberoff
5  withheld key facts from him—including Ari Emanuel's stake, and Toberoff's
6  personal stake in trying to secure Michael's rights.  *E.g.*, Docket No. 305-52 at
7  1863:5-11, 1877:21-1878:3.  Toberoff now says he was not duty bound to be open
8  or fair with Bulson, Opp. at 17:3-7, but even accepting this *arguendo* as true, it
9  dispositively refutes the claim that Michael and Laura shared the unstated common-
10  interest agreement defendants assert—and that Judge Wright and the Ohio district
11  court both rightly rejected for this time period.  Docket Nos. 161-5 at 31; 336.

12       4. Defendants say they never purposefully waived any privilege in sending
13  the July 2003 letter to Michael or in handling the Toberoff Timeline itself—only
14  court orders compelled their disclosure.  Opp. at 7:22-12:9.  Both claims are untrue.

- Judge Wright did *not* order defendants to produce a privileged document in ordering them to produce the July 2003 letter, *cf. e.g.*, Opp. at 1:21, 23, 12:3-9; he ordered them to produce a document that was facially *not* privileged and should have *never* been designated as such.  All of defendants' cases holding that court-compelled waivers do not effect broader waivers, *e.g., id.*, have no application here to a July 2003 letter that Laura and Toberoff chose to send to Michael, who was by then an adversary in tough negotiations vis-à-vis Laura and Toberoff concerning Michael's putative rights.
- As for the Timeline document, yes, Judge Larson ordered it produced, and, yes, by Siegel's and Toberoff's own admission it was rife with privileged information, *e.g.,* Docket No. 95 at 20:5 (Defendants' counsel: "It's riddled with privileged information."), including disclosures from Marks, Docket No. 49, FAC Ex. A at 63.  Defendants contend that after Judge Larson's ruling they engaged in no further waiver, and DC only first exposed the Timeline by

1   attaching it as Exhibit A to its complaint here in May 2010.  Opp. at 10:4-
2   11:22.  Again, untrue.  At the time the Timeline was produced, defendants
3   took no steps to designate it as "Confidential" pursuant to the protective order
4   in *Siegel* or to bar its dissemination to third parties.  And despite DC's
5   *express* invitation to defendants to file a motion seeking such relief *in March*
6   *2009*, defendants filed none when DC and defendants attached the Timeline
7   to a fully public discovery filing in *Siegel*, for the world to see.  Docket No.
8   42 at 4-5, 43-47.

9       5.  Defendants do not dispute that parts of the Marks Memo, including
10  Toberoff's business offer to the Siegels, are not privileged.  Opp. at 14:22-15:2.
11  They just want DC and the world to trust that their description of Marks' recitation
12  of that offer is true, and they argue that neither this Court nor DC should be able to
13  test that assertion by reviewing the actual Memo.  Opp. at 14:17-15:23.  There is no
14  basis to deny DC these and other non-privileged portions of the Memo, and there is
15  no basis for crediting defendants' self-serving and untrustworthy assertions to the
16  contrary.  Defendants do not and cannot deny that the conveyance of a business
17  offer is *not* a privileged communication.  *Compare* Mot. at 12:21-13:23, *with* Opp.
18  14:17-15:23.

19      6.  Defendants argue this motion is barred by rulings in *Siegel* and the law of
20  the case.  Opp. at 13:28-14:15.  But it is *defendants'* arguments that are barred—by
21  a ruling in *this* case.  In his October 25, 2011, order, Judge Wright necessarily
22  rejected defendants' claim that no fewer than *eight prior rulings*, including many
23  from the *Siegel* case, precluded production of the July 2003 letter produced.
24  *Compare* Docket No. 336 (order), *with* Docket No. 331 at 1:2-26, 4:9-7:21
25  (defendants arguing preclusive effect of these orders to Judge Wright).  Moreover,
26  the Court in *Siegel* never had before it the July 2003 letter, which is a critical new
27  fact and which confirms the validity of the relief DC now seeks.
28

- 4 -

DC'S REPLY ISO MOT. TO COMPEL PROD. OF DOCS

1           7.  Finally, defendants launch their all-too-familiar and baseless *ad hominem* attacks on DC.  Opp. at 15:26-18:27.  While DC will not waste the Court's time by responding to each specious assertion, the oddest one is defendants' claim that the July 2003 letter that they so long fought to conceal somehow helps their case.  *Id.* at 17:12-18:27.  Among the so-called helpful statements defendants quote is Laura telling her brother, Michael, that Toberoff owns no part of the Shuster rights and is only the Shusters' lawyer.  Opp. at 18:3-5 ("Marc [Toberoff] does not control the Superman copyright.  He has been hired to do a job"; "Marc does not own the Shuster interest.  He is a lawyer hired by Joe Shuster's estate.").  Yet, as of the date of the July 2003 letter—which Toberoff concedes reviewing and editing—he *owned 50% of the Shusters' rights* through his entertainment company, Pacific Pictures.  Docket Nos. 49, FAC ¶¶ 60-64; 305-54; 305-55.  This just confirms that Toberoff had misled Laura about what rights he owned and how he was using her as a conduit to repeat those lies to her brother—and *not* that Laura, Michael, and Toberoff shared any sort of valid common interest.

Dated:      February 1, 2012            Respectfully Submitted,
                                        O'MELVENY & MYERS LLP

                                        By: /s/ Daniel. P. Petrocelli
                                            Daniel M. Petrocelli