1  DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12                 UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14
   DC COMICS,                          Case No. CV 10-03633 ODW (RZx)
15
              Plaintiff,               **DISCOVERY MATTER**
16
         v.                            **DC COMICS' REPLY IN
17                                     SUPPORT OF MOTION TO
   PACIFIC PICTURES                    COMPEL PRODUCTION OF
18 CORPORATION, IP WORLDWIDE,          CORPORATE RECORDS AND
   LLC, IPW, LLC, MARC TOBEROFF,       OTHER DOCUMENTS FROM
19 an individual, MARK WARREN          TOBEROFF DEFENDANTS**
   PEARY, as personal representative of
20 the ESTATE OF JOSEPH SHUSTER,
   JEAN ADELE PEAVY, an individual,    **Judge**:       Hon. Otis D. Wright II
21 LAURA SIEGEL LARSON, an             **Magistrate**:  Hon. Ralph Zarefsky
   individual and as personal
22 representative of the ESTATE OF
   JOANNE SIEGEL, and DOES 1-10,       **Hearing Date**:     Feb 13, 2012
23 inclusive,                          **Hearing Time**:     10:00 a.m.
                                       **Courtroom**:        540
24            Defendants.              **Discovery Cutoff**:  None Set
                                       **Pretrial Conference**: None Set
25                                     **Trial**:             None Set

26

27

28

1    Defendants' opposition is helpful in one key respect—it makes a series of

2  admissions about what documents and rights defendants do not possess, *admissions*

3  *they refused to make before*.  But the brief concedes defendants are still withholding

4  key documents and information, including behind improper overbreadth objections

5  and redactions.  DC's motion should be granted.

6  **I.    Defendants' Corporate Records**

7    A.  Documents Not Produced.  In April 2007, this Court recognized that

8  Toberoff was leaving himself "wiggle room" in responding to discovery and rightly

9  compelled him to produce a full accounting, in a declaration, of what documents

10  existed and had still not been produced.  Case No. CV-04-8400, Docket No. 177 at

11  19:8-22.  That important order led to the discovery of key evidence that had

12  previously been withheld.  *E.g.*, Docket Nos. 209, 336.  While defendants say DC's

13  present motion is much ado about nothing, Opp. 3, a careful parsing of their brief

14  reveals a number of responsive, relevant documents they still refuse to produce.

15    1.  Defendants argue DC's requests for the Toberoff companies' corporate

16  records are moot because the companies "produced" all responsive documents and

17  "no documents were withheld" on the grounds that Toberoff possessed them.  Opp.

18  2, 7.  Yet, when DC asked Toberoff *himself* during various meet and confers to

19  produce documents responsive DC's corporate records requests, he never affirmed

20  he would do so; rather, he argued DC's requests were overbroad, rejected by the

21  Court, and sought irrelevant information.  *E.g.,* Docket No. 361-2 at 253, 270.

22  Toberoff persists in pressing these objections now.  Opp. 6-7.[1]

23    2.  Defendants are clearly relying on these objections to withhold key

24  documents, and the objections should be overruled.  For example:

25    • Defendants concede other individuals (*e.g.*, Bruce Karsh) hold or held

26

27    [1] Among the objections he continues to press are defendants' general objections, Opp.

28  14-15—despite the Court's ruling "there is no provision in the federal rules for 'general objections' that then are incorporated into" specific responses.  Docket No. 365 at 2.

interests in the corporate defendants, Opp. 8, but defendants have yet to produce a *single document* showing when Karsh came to own that interest, what it was, what he paid for it, whether he still owns it, etc.

- Moreover, documents reflecting Emanuel's interests (which defendants produced only by designation based on a prior production by a third party) are heavily redacted. Defendants have made no showing—*none*—that those redactions do not obscure information related to DC's alter-ego claims.[2] They only assert the redactions do not pertain to Superman, Opp. 15, but as shown in DC's currently pending motion regarding Jean Peavy's Will, defendants' views on what information relates to the issues in this case are wildly inconsistent and self-serving. Docket No. 371 at 2.

- Defendants also assert that they produced documents that prove their "corporate status," Opp. 13-14, but they continue to object to the requests as overbroad, *id.* 14, and refuse to produce filings they made, including articles of organization for IP Worldwide and documents *they* filed with the New York Department of State dissolving Pacific Pictures.

Similarly, defendants claim they "fully responded to DC's Requests Nos. 56-58," Opp. 7-8, but concede they produced *no* documents in response to subparts (f) and (g), which seek financial information regarding the companies, and which defendants still object are overbroad, *id.* at 8:5-10. These objections—like all their overbreadth objections—are without basis. Not only did DC narrow and break down these requests to meet such concerns,[3] the documents sought are classic alter-

---

[2] *Cf. Verizon Calif. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F. Supp. 2d 1144, 1150 (C.D. Cal. 2003) (burden on redacting party to establish their propriety); *DeArmand E. v. City of Antioch*, 2009 WL 1704686, at *4 (N.D. Cal. June 17, 2009) (party failing to justify redaction ordered to produce documents without redaction); *Henderson v. Metro. Prop. & Cas. Ins. Co.*, 2010 WL 4394912, at *203 (W.D. Wash. Dec. 22, 2010) (same).

[3] *Compare* Mot. at 5-15, *with* Opp. 6-11; *see Panasonics Comms. Corp of Am. v. U.S.*, 99 Fed. Cl. 422, 424 (Fed. Cl. 2011) (rejecting overbreadth objections where requesting party identified specific examples of types of documents sought); *Corbello v. Devito*, 2010 WL 4703519, at *3-6 (D. Nev. Nov. 12, 2010) (same)

1  ago evidence to which DC is entitled.[4]  Defendants have provided no capitalization

2  records—*none*—for any of the corporate defendants; not a single capital account,

3  no bank records, no evidence of their initial or subsequent capitalization, no balance

4  sheets, no accountings or listing of assets, no evidence of any equity or debt

5  outstanding, no evidence of their expenses, not a single tax return—*nothing*.

6        Even if defendants' overbreadth objections were well taken—and they are

7  not—they were obligated to produce responsive documents to the extent they exist

8  in each category, to clarify what documents they refused to search for and on what

9  grounds (*e.g.*, they would provide capital accounts, but not tax returns), or to make

10  a clear admission that no responsive documents exist.  FED. R. CIV. P. 34(b)(2)(B)-

11  (C); *Bottom v. Liberty Life Assur. Co. of Boston*, 2011 WL 6181423, at *7 (D. Colo.

12  Dec. 13, 2011).  A discovery request is overbroad where it requests information that

13  is not relevant or where the language is so broad that it fails reasonably to identify

14  the information requested.  *E.g., Dobson v. Twin City Fire Ins. co.*, 2011 WL

15  6288103, at *3 (C.D. Cal. Dec. 14, 2011); *Doubt v. NCR Corp.*, 2011 WL 3740853,

16  at *4 (N.D. Cal. Aug. 25, 2011).  Neither condition exists here.  Defendants cannot

17  dispute the documents DC seeks are relevant, *inter alia*, to its alter-ego claim, or

18  that DC identified the specific documents it sought.  Docket No. 361-2 at 257-61.

19        B.  Defendants' Other Arguments And Attacks On DC.

20        1.  Defendants suggest an undisclosed number of responsive documents

21  "were destroyed" by a fire at Toberoff's Malibu home in 2007.  Opp. 2.  The only

22  time Toberoff adverted to this fire prior to filing his brief was close to a year ago—

23  when discussing drafts of 2001 and 2003 Pacific Pictures contracts, which are not

24  the subject of this motion.  Docket No. 361-2 at 80.  In the past six months,

25  Toberoff sent DC more than 10 letters addressing DC's corporate-records requests,

26  _____

27        [4] *E.g., Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837-38 (1962) (capitalization a key factor in deciding alter-ego claim); *Columbia Pictures Inds., Inc. v.*

28  *Bunnell*, 2007 WL 4916964, at *11-12 (C.D. Cal. May 7, 2007) (compelling production of financial records in connection with alter-ego claim).

DC'S REPLY ISO MTC TOBEROFF DEFS' PROD. CORP. RECS. & OTHER DOCS

1  in addition to a number of emails, and he *never once* said a fire destroyed any

2  documents responsive to these requests.  *E.g., id.* at 35-36, 47-50, 270-72.

3       If responsive documents were destroyed, defendants were required to bring

4  that to DC's attention and describe what specific documents were lost and how.

5  *E.g.*, W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1913

6  (Rutter 2011) (a response of "inability to comply with the Rule 34 request" should

7  include "the reason the party is unable to comply: e.g., the document … was

8  inadvertently destroyed").  DC's requests cited this obligation,[5] and defendants'

9  lengthy responses *never once* mentioned a fire or the destruction of documents.

10  Docket No. 361-2 at 92-171.  Nor in their opposition do they identify a single

11  document that they claim was lost—be it capitalization records for Pacific Pictures,

12  balance sheets for the two IPW companies, Karsh's agreements with IPW, etc.  Nor

13  do they advise whether duplicate documents were stored at the corporations' active

14  business addresses[6] or can be obtained through other custodians, such as their

15  accountants, lawyers, banks, or business partners.

16       2.  Defendants cannot deny the documents DC seeks are relevant under alter-

17  ego law, so instead assert that DC's alter-ego claim is "boilerplate" and an "excuse"

18  to pry into Toberoff businesses.  Opp. 12.  It is neither, and if defendants truly

19  believed DC's alter-ego claim was unsubstantiated, they were required to move to

20  dismiss it under Rule 12—not attack in an opposition to a discovery motion.

21  Defendants never so moved, despite filing *100 pages* of motions attacking DC's

22  complaint—briefing Judge Wright struck for evading the page-limit rules.  Docket

23  No. 328.  *Two months before* defendants re-filed their Rule 12 motion, DC told

24

25       [5] Docket No. 207-5 at 16 ¶ 23 ("For any DOCUMENT or category of DOCUMENTS
that was, but no longer is, in YOUR possession, custody or control, please describe each
26  such DOCUMENT as completely as possible and provided the following information: …
(c) If the DOCUMENT was destroyed or otherwise disposed of, state the manner of
27  disposal (*i.e.*, destruction, loss, discarding or other means of disposal)….").
       [6] According to the California Secretary of State website, IP Worldwide LLC's address
28  was "9701 Wilshire Blvd 10th Fl, Beverly Hills CA 90212" and IPW, LLC's address was
"2049 Century Park E Ste 2720, Los Angeles CA 90067."

DC'S REPLY ISO MTC TOBEROFF DEFS'
PROD. CORP. RECS. & OTHER DOCS

1   defendants that it was seeking these documents in aid of its *alter-ego claims*,

2   Docket No. 361-2 at 228—yet, defendants did not move to dismiss the claim, *see*

3   Docket No. 333.  DC's alter-ego claim is well pleaded, operative claim in the case,

4   and defendants' answer denied it, squarely placing it in dispute.  Mot. 8.

5          Defendants also assert DC's alter-ego claim is "virtually meaningless" given

6   the declaratory relief DC seeks.  Opp. 13.  Not so.  One thrust of DC's claims is to

7   prevent Toberoff and his companies from inhibiting the Siegel and Shuster heirs

8   from freely negotiating their rights with the series of lock-up agreements that

9   Toberoff and his companies negotiated.  DC seeks a clear and complete declaration

10  eliminating this web of side-deals—*one which applies to Toberoff and all of the*

11  *alter-egos he utilizes*.[7]  Such alter-ego findings are especially important here, given

12  the way Toberoff tried to use different hats (agent, producer, lawyer), to induce the

13  heirs to do business with him (as President of a movie production company, or as

14  business partner to a famous talent agent), and then to tried to immunize his

15  conduct, arguing he acted only as a lawyer.  *Cf.* Docket No. 337 (Judge Wright

16  rejecting these arguments).  Finally, DC does seek damages from the Toberoff

17  defendants, and seeks an alter-ego ruling to enforce a judgment against each one.

18         3.  While defendants suggest Pacific Pictures was a mere "loan-out"

19  company and unsurprisingly had few documents, Opp. 7, Pacific Pictures was in

20  operation for many years and clearly was not created merely to receive income.  As

21  just one example, Pacific Pictures (along with Toberoff) was sued in 1997 for

22  financial frauds.  Docket No. 305-5.[8]

23  ───────────────

24  [7] Perhaps the most stunning admission in defendants' brief is their concession that the 2008 "consent agreement"—which they have refused to produce on *privilege* grounds—

25  bears on the "chain of title" of the heirs' putative Superman rights.  Opp. 11.  Rights-affecting agreements—or at least the parts of them addressing the disposition of rights—

26  are *not* privileged, Docket No. 160 at 11-27, and should be ordered produced, no matter what Judge Larson said on this issue in *Siegel*, when he did not have this admission before

27  him, *cf.* Docket No. 209 at 1-10 (Court's order on this document relying on *Siegel* ruling).

28  [8] Defendants accuse DC of having no support for the claim that Toberoff's companies had employees or investors, or that they publicly touted their success.  Opp. 8-9.  As noted in DC's motion, Toberoff testified in *Siegel* that his companies employed various

1      4.  Defendants refuse to produce an undefined universe of corporate-record

2  documents in response to Request Nos. 56-58, on the erroneous ground that this

3  Court ruled that DC's *prior* versions of the requests were overbroad.  Opp. 6-7.

4  Defendants seek to sweep aside the fact that the Court's ruling also invited DC to

5  narrow its requests (which it did twice) and to confer on defendants' objections

6  (which it has done at length), Mot. 1, by suggesting that DC merely "cut and paste"

7  its old requests into new subparts, Opp. 6.  DC broke the requests into subparts so

8  that if one request were objectionable, defendants could address it specifically and

9  explain any well-grounded reasons for doing so.  Yet their objections—like their

10  opposition, which they once again refused to file in the required joint-stipulation

11  format[9]—do not explain why each request is improper.  Defendants also ignore that

12  DC made material changes to each request, including, for example, eliminating the

13  term "RELATING"—to which defendants objected—and focusing on specific

14  categories of documents (both in the requests themselves and in meet-and-confer

15  letters)—to meet defendants' claim that DC's requests sought every record in their

16  possession.  Docket No. 361-2 at 10-11.  Rather than respond to each narrowed

17  requests as he was obligated to do, FED. R. CIV. P. 32(b)(2)(B); *Lurensky v.*

18  *Wellinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009), Toberoff stands on a blanket

19  objection that the Court's prior ruling excuse him from responding, Opp. 6-7.

20      5.  Citing page 14 of DC's motion, defendants make the false claim that DC

21  moves to compel documents that its Requests at issue "***do not ask for***…."  Opp. 9-

22  10 (emphasis in original).  Page 14 of DC's motion makes no mention of the three

23  categories of document defendants complain about, and, in any event, the three

24  _____

25  individuals, including "Andrew," "Mark Perrone," "Mark Marcum," and unnamed interns.
Mot. 11-12.  Toberoff testified in *Siegel* and told several media outlets that his companies

26  obtained "outside financing" for various entertainment projects.  Docket No. 350-17 at
470; Docket No. 305 ¶¶ 6-8.  IPW's website also touted the company's success.  Docket
No. 305 ¶ 5.

27      [9] Defendants exacerbate this by failing to organize their brief as required by the

28  rules—*i.e.*, by identifying the request and response at issue, followed by defendants'
arguments limited to that specific dispute.  C.D. CAL. L.R. 37-2.

DC'S REPLY ISO MTC TOBEROFF DEFS'
PROD. CORP. RECS. & OTHER DOCS

1  categories (which defendants appear to have plucked from a sentence on page 12 of

2  DC's motion) are embraced by DC's requests.  DC has long sought "agreements"

3  between Toberoff's companies and third parties; its current and pending Requests

4  56(a)-(d) all seek agreements concerning "ownership" interests in his companies,

5  Mot. 6-7, and as defendants' admissions regarding, *e.g.*, Karsh confirm, not all such

6  documents have been produced.  DC has also long sought to understand Toberoff's

7  "role" and "position" in each company—as Request 56(b) seeks—and a document

8  that "lists of each companies' owners, managers and employees" or evidences

9  "company meetings and operations" is responsive to this request.[10]

10 **II.    Ari Emanuel Documents**

11       Defendants assert there is "no mystery" what their Superman rights are vis-à-

12 vis Ari Emanuel or other third parties.  Opp. 11, 15-16.  This is not the case.

13       1.  Defendants have never produced the large majority of Emanuel-related

14 Superman records.  Instead, they advert by designation to 142 pages of heavily

15 redacted documents that Emanuel's agency, Endeavor, produced in *Siegel*—in

16 response to document demands *not* at issue here.  These redactions obscure *half* the

17 contents of the documents, including all appendices, key economic terms relevant

18 to the alter-ego and capitalization analysis, Docket No. 361-3 at 273-414, and

19 content that, on defendants' own submission, led Endeavor's lawyer to make a note

20 about "Superman" rights when reviewing them, Opp. 12.

21       But for this after-the-fact, speculative explanation why the lawyer wrote what

22 he did concerning Superman—unsupported by any declaration and never mentioned

23 during the meet-and-confer process—defendants proffer no concrete explanation

24 why any of the scores of pages were redacted.  Nor do they represent that they

25 made an effort to redact the documents themselves in light of the claims and issues

26 presented in this new case, including in light of DC's claims of interference and its

27

28

---

[10] Finally, defendants' claim that they designated "thousands of pages" of responsive documents from *Siegel* in this case, Opp. 1, but they do not dispute that the *only* corporate records they identified were *17 pages* of documents produced here.  Mot. 3.

DC'S REPLY ISO MTC TOBEROFF DEFS'
PROD. CORP. RECS. & OTHER DOCS

alter-ego claims.  Defendants fail to meet their burden to justify withholding such evidence, and unredacted copies of documents should be ordered produced.[11]

2.  Defendants suggest the Superman and Emanuel rights pictures have long been clear and DC has no basis to press for firm and final details regarding them. Opp. 11, 15-16.  They fail to mention that it was not until Laura Siegel Larson's recent deposition *in this case* that it emerged that defendants had neither produced nor logged an agreement extending the term of the IP Worldwide agreements among IP Worldwide, Emanuel, Toberoff, and the Siegels.  Docket No. 305-24 at 779.  This long-suppressed agreement is the *very same agreement* that defendants now claim cuts off Emanuel's rights.  Opp. 15-16.  Until the binding admission in their brief that all of Emanuel's rights have been cut off, Opp. 11-12, DC had no formal assurance of this fact—or that no other such documents existed.

And even when defendants have assured DC it is clear who owns what rights, they have created new rights agreements mid-litigation—which they then have then withheld for perceived tactical advantage.  In August 2011, they created yet another Pacific Pictures Agreement, but did not produce it when it was signed or could be used at deposition—but sprung it on DC in their reply brief on their SLAPP motion. Docket No. 322 at 1-2.  DC needs a court order compelling the production of all such documents so no further documents are withheld.

Lastly, defendants' assurances about what documents do not exist or do not contain can no longer be taken at face value.  Their misleading statements about the existence and contents of key May and July 2003 correspondence between Michael and Laura Siegel were proven untrue.  Docket Nos. 209, 336.  So, too, were their bellicose claims about the contents of the Toberoff Timeline as compared to the underlying documents and events it describes.  Docket Nos. 253 at 3-5; 209; 336.

---

[11] *See supra* n.2 (collecting cases); *see also Pac. Coast Steel v. Leany*, 2011 WL 4572008, at *5 (Sept. 30, 2011) (defendant ordered to produce privilege log justifying each redaction); *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *4 (N.D. Cal. Aug. 8, 2011) (rejecting plaintiff's post hoc rationalizations for redactions).

DC'S REPLY ISO MTC TOBEROFF DEFS'
PROD. CORP. RECS. & OTHER DOCS

So, too, was their claim that they did not possess a November 2002 letter from Laura to Michael Siegel.  Docket No. 267-1 at 21-14.  And so, too, was their recent—incredible—claim that Jean Peavy's will is *not* a document that "relat[es] to … the disposition … of any rights in SUPERMAN."  Docket No. 371 at 2-3.

## III.   Defendants' Other Arguments

1.  Citing no authority, defendants suggest they need not further respond to DC's documents requests since DC could serve "focused interrogatories" to obtain the same information.  Opp. 12.  Defendants' obligation fully to respond to DC's document requests is not excused by offering to respond to interrogatories.[12]  In any event, where defendants have made similar offers in the past, they subsequently reneged, only forcing more motion practice.  Docket No. 365 at 1-2.

2.  Defendants fault DC for filing this motion when it did and insisting that defendants respond to it within 12 rather than 19 days, Opp. 6—when 7 is all the rules allow, C.D. CAL. L.R. 37-2.2.  As defendants well know, DC waited to file the motion until after a good-faith effort to settle the case failed.  DC declined giving defendants an even lengthier extension to respond to this motion because their proposal would have deprived DC of any reply.  Docket No. 363-1 at 14-15.

## IV.   Conclusion

DC's proposed order submitted with this motion should be granted.

Dated:      February 6, 2012           Respectfully Submitted,
                                        O'MELVENY & MYERS LLP

                                        By:  /s/ Daniel M. Petrocelli
                                             Daniel M. Petrocelli

---

[12] *E.g.*, 7 MOORE'S FEDERAL PRACTICE § 34.02 (2011) ("It has long been recognized that Rule 33 and Rule 34 are cumulative, not alternative, methods of discovery that may generally be used in any order."); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 1995 WL 389822, at *9 (N.D. Ill. Feb. 15, 1995) ("a party has an 'absolute duty to respond'" to a discovery request and "must take reasonable steps to ensure that [its] responses are complete and accurate'").

DC'S REPLY ISO MTC TOBEROFF DEFS' PROD. CORP. RECS. & OTHER DOCS