Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22631 Pacific Coast Highway #348
Malibu, California, 90265
Telephone: (310) 246-3333
Fax: (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**OBJECTION TO REPLIES IN SUPPORT OF DC COMICS' MOTIONS TO COMPEL SET FOR HEARING ON FEBRUARY 13, 2012**<br><br>Judge:　　Hon. Otis D. Wright II<br>Magistrate: Hon. Ralph Zarefsky<br><br>Hearing Date:　February 13, 2012<br>Hearing Time:　10:00 a.m.<br>Courtroom:　　540<br><br>Discovery Cutoff:　None Set<br>Pretrial Conference:　None Set<br>Trial:　　　　None Set |

OBJECTION TO REPLIES RE: FEBRUARY 13, 2012 MOTIONS

Defendants hereby object to the replies (Docket Nos. 371, 372, 374) in support of DC Comics' three discovery motions set for hearing on February 13, 2012 (Docket Nos. 360-362). DC's replies are all full of the same hype and falsehoods that permeated DC's underlying motions, which were largely addressed in Defendants' oppositions. Docket Nos. 366-68. However, Defendants must briefly object to and address certain new false statements by DC:

**Second Deposition of Dawn Peavy (Docket No. 371)**

- DC claims that its assertion that Jean Peavy's stroke occurred in 1999, rather than 2009, was a mere "typographical error." Docket No. 371 at 3. This is implausible given the chronological structure of the paragraph at issue: DC's motion erroneously states that Jean's stroke occurred in 1999, asserts that Jean was therefore fully competent until the late 1990's, and then claims Mr. Peary kept his mother "in the dark" about his efforts to effect a termination of Joe Shuster's copyrights in the early 2000's. Docket No. 360 at 5.
- DC portrays Jean Peavy's vague testimony that she met Mr. Toberoff sometime in the "'middle of 2001,'" into confirmation that she met Mr. Toberoff *before* she signed her will in August 2001, when, in fact, she met Mr. Toberoff in late November, 2001, and he had no involvement whatsoever with her will. Docket No. 371 at 5.

**Kevin Marks' Privileged Attorney-Client Letter (Docket No. 372)**

- DC argues that the fact that "[t]he qualifier 'enforceable' … *never* appears in Laura's July 2003 letter" is somehow a "stunning, *qualified* admission" that the Kevin Marks' August 2002 letter opines that DC and the Siegels had reached an enforceable agreement. Docket No. 372 at 2. This again is based on nothing more than speculation about the contents of Marks' privileged August 2002 letter. DC's claim that it could somehow "impeach Marks and Laura" (*id.*) with that letter is without basis.

**Unrelated Corporate Records (Docket No. 374)**

- DC also argues that it is entitled to all of IPW's transactional documents (Docket No. 374 at 1:28-2:3), but ignores the fact that IPW's ongoing business is entirely irrelevant: IPW has no interest in or involvement with Superman, except for a brief period over seven years ago where it was the successor to the IP Worldwide Agreement, which expired within months of IPW's formation, and accordingly, DC has made *no* specific allegations as to IPW anywhere in its complaint. Docket No. 367 at 9:4-10.
- DC argues that it is entitled to, essentially, all of the Corporate Defendants' financial records. Docket No. 374 at 3:1-5. This was already rejected by this Court (Docket No. 262 at 5), Defendants **never** agreed to provide such records, nor does DC make any showing as to how such records are in any way relevant to this litigation.
- DC claims that there was a "long-suppressed agreement [which] is the *very same agreement* that defendants now claim cuts off Emanuel's rights." Docket No. 374 at 8. This is a fabrication:
  - DC has long had the underlying agreement – the 2002 "IP Worldwide Agreement" between the Siegels and IP Worldwide, which had a limited, eighteen-month term. *See* Docket No. 333-1, ¶ 7; Docket No. 367-2, Ex. A, ¶ 5.
  - DC has long known that the term of that agreement was extended for six months, as that is also clearly stated in the "Winding-Up" agreement for IP Worldwide that DC has had since 2006. Docket No. 367 at 12:4-6.
  - Defendants specifically referred to this extension in their briefing. *See* Docket No. 75 at 25 ("As for IP Worldwide, the IP Worldwide Agreement provided that the term of the agreement was 'eighteen (18) months from the date this Agreement is executed by all parties,' and was extended for twelve (12) months, meaning that the agreement expired on

April 23, 2005.").

- The only document that DC did not have – the supposedly "suppressed" document – was a *pro forma*, one-paragraph extension letter, which Defendants immediately produced in this litigation once they realized it had not been produced previously. Docket No. 361-2, Ex. 19 at 212 (reading, in full: "This is to confirm our understanding that the agreement ('Agreement') between you and IP Worldwide dated as of October 3, 2002 (executed by you on October 23, 2002) is re-instated and that the Term of the Agreement is extended until April 23, 2005.").

- DC asserts that Defendants stated "they need not further respond to DC's documents requests since DC could serve 'focused interrogatories' to obtain the same information." Docket No. 374 at 9. This again is false. Defendants asserted that, if DC's true concern was acquiring information about "chain of title" or Mr. Toberoff's position within the Corporate Defendants, it could easily have served focused interrogatories. Docket No. 367 at 12, 14. The fact that DC declined to do so, while "playing dumb" about the documents in its possession, suggests that DC's true desire was to pry into the Toberoff defendants' unrelated business through overbroad discovery requests.

- Lastly, DC claims that "DC waited to file the motion until after a good-faith effort to settle the case failed." Docket No. 374. This is disingenuous: the last meet-and-confer on the issue referred to occurred in September 2011. Docket No. 369. The parties' settlement mediation took place on December 1, 2011. DC served its motion on January 11, 2012. The mediation clearly had nothing to do with DC's delays.

Dated:  February 9, 2012         RESPECTFULLY SUBMITTED,

                                 /s/ Marc Toberoff
                                 _____
                                 Marc Toberoff

                                 TOBEROFF & ASSOCIATES, P.C.
                                 Attorneys for Defendants Mark Warren Peary *et al.*