**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>vs.<br><br>PACIFIC PICTURES CORPORATION, ET AL.<br><br>    Defendants. | CASE NO. CV 10-03633 ODW (RZx)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket # 362) |

      This matter came before the Court on February 13, 2012 on the motion of Plaintiff DC Comics to compel. Plaintiff appeared through its attorney Matthew Kline. Defendants Mark Warren Peary, Jean Adele Peavy and Laura Siegel Larson appeared through their attorney Marc Toberoff. The Court heard argument of counsel and took the matter under submission. Having reviewed the matter and being fully advised, the Court denies the motion for the reasons set forth below.

      Plaintiff seeks to compel production of an August 9, 2002 letter from Kevin Marks, who at the time was counsel for Defendant Laura Siegel Larson in connection with disputes and negotiations with Plaintiff DC Comics and Time Warner. In a privilege log in this case, Defendants assert that the attorney-client privilege protects against production of the letter. Some of the substance of this letter

may be referred to in a letter of July 13, 2003 from Ms. Larson to her half brother Michael Siegel, and from that letter, and from comments of counsel at oral argument and in the memoranda before the Court, the Court concludes that the matters communicated by Mr. Marks to Ms. Larson in August 2002 were shared with Michael Siegel's attorney at about that time and presumably therefore also shared with Michael Siegel. The July 13, 2003 letter has been produced to Plaintiff by order of the court, on review of the undersigned's order, and Plaintiff argues that whatever privilege might have applied to the August 2002 letter has been waived.

At the time the August 9, 2002 letter was written, Mr. Marks clearly functioned as Ms. Larson's counsel. Defendants assert that there was a community of legal interest between Ms. Larson and her half-brother Mr. Siegel. At oral argument, Plaintiff argued that this assertion did not matter because Defendants did not invoke the common interest privilege in their privilege log, only invoking instead the attorney-client privilege. This argument, however, bespeaks a misunderstanding of the common interest doctrine.

As the Ninth Circuit has reminded recently, the circuit "has long recognized that the joint defense privilege is 'an extension of the attorney-client privilege.'" *United States v. Gonzalez*, ___ F.3d ___, 2012 WL 206266 at *3 (9th Cir. January 25, 2012), quoting *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2005). Under that joint defense doctrine, legal advice from counsel to one party can be shared with counsel for another party without effecting a waiver; in some senses, the doctrine is an exception to the general rule that a client's disclosure to a third party waives the privilege. *In re Grand Jury Subpoenas, 89-3 and 89-4*, 902 F.2d 244, 248 (4th Cir. 1990). By asserting that the August 9, 2002 letter is protected by the attorney-client privilege, Defendants invoked the privilege that was applicable to them, and that invocation included any protections against disclosure that the common legal interest

2

doctrine might have encompassed.

The common interest doctrine, although it originated in the criminal law context and was then (and still sometimes is) known as the joint defense privilege, applies to civil matters as well as to criminal ones. *Id.* The Court finds that Ms. Larson and Mr. Siegel shared a common legal interest in August 2002. At that time negotiations with Plaintiff were on-going, and disputes were arising, and each of the heirs of Superman's creator had similar interests, from a legal standpoint, in respect of those negotiations and disputes, notwithstanding that they had different counsel. Hence, Mr. Marks, who was counsel for Ms. Larson, could share with Mr. Siegel's counsel, advice that he provided to Ms. Larson. *Both* Ms. Larson and Mr. Siegel therefore became holders of the privilege, and neither unilaterally could waive the privilege.. *See Gonzalez, supra*, 2012 WL 206266 at \*7; *John Morrell & Co. v. Local Uniton 304A of United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 556 (8th Cir. 1990).

Plaintiff argues, however, that "[w]hether Michael previously shared a common interest with Larson makes no difference." (Plaintiff's Memorandum at 10:18-19). Plaintiff asserts that, by sending the letter in July 2003 to Mr. Siegel, Ms. Larson waived whatever interest she might have had. The Court disagrees.

In August 2002, both Ms. Larson and Mr. Siegel were entitled to claim privilege, and they and their counsel were entitled to communicate about the subject of the negotiations. As the Fourth Circuit has said in analyzing the common interest doctrine:

> Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or

> criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims.

*In re Grand Jury Subpoenas, 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990) (emphasis added). Portions of this opinion are cited with favor by the Ninth Circuit in *United States v. Gonzalez, supra*. Thus, either directly or through their counsel, Ms. Larson and Mr. Siegel had communicated on these subjects in August 2002. As holders of the privilege in August 2002, both Ms. Larson and Mr. Siegel could have prevented disclosure of the document in July 2003 if they had *not* communicated with each other about it at that time. As the Ninth Circuit indicated in *Gonzalez*, any statements made during the period that the joint defense agreement was in existence would remain privileged. *Gonzalez*, ___ F.3d ___, 2012 WL 206266 at *6. The Court does not understand how parties who once had been privileged to discuss the advice they had been given, and who each independently could still protect such advice — and who even could prevent the other one from disclosing the advice, *Gonzalez, supra* at * 7 (joint defense privilege cannot be waived without the consent of all parties to the defense) — could not mention to one another the fact that they had received the advice during the time that they did have a community of interest.

Plaintiff also asserts, as if it were fact, that in July 2003 Ms. Siegel and Mr. Larson had no community of interest. The Ohio court that Plaintiff references as support for this proposition did not rule so broadly; rather, it ruled that the 15 documents that it reviewed *in camera* did not involve the giving of legal advice, were not made in connection with a common legal defense or strategy, and that the interest

4

of Ms. Larson and Ms. Siegel, as reflected in those documents, were separate and apart. *In re Subpoena Duces Tecum Issued by the U.S. District Court for the Northern District of Ohio*, Case No. 1:06 MC 99 (Order of April 1, 2008) (filed as Docket No. 165-1 in the within action). Subsequently (at a point after liability had been determined adversely to Plaintiff in the *Siegel* action), the Ohio court declined to broaden its order beyond the 15 documents. *In re Subpoena Duces Tecum Issued by the U.S. District Court for the Northern District of Ohio*, Case No. 1:06 MC 99 (Order of August 13, 2008) (attached as Exhibit B to the Adams declaration in support of the opposition to the present motion.) And, while this District Court did order the July 13, 2003 letter produced, the ruling does not contain a broad statement that the community of interest that had existed previously no longer existed for any purpose. Parties can even be adverse for some purposes and share a community of legal interest for other purposes. *Gonzalez*, *supra* at * 5 (acknowledging that parties need not have identical interests, and even may have adverse motives, and still may have common interest.)

Still, whether one might say that the community of interest that once had existed had waned by July 2003 or still existed for some purposes, the fact remains that, when the community of interest *did* exist, the communication that Defendants say contains legal advice was protected from disclosure, and that there is no basis for vitiating the privilege by the mere repetition among the privilege-holders of information they already had. In the limited and quite unusual circumstances here, the Court finds that the sending of the July 11, 2003 letter, that alluded in part to prior communications between Ms. Larson and Mr. Siegel and counsel at a point when Ms. Siegel and Mr. Larson did have a community of legal interest, did not waive the attorney-client privilege that Defendants possessed.

Plaintiff posits a second theory of waiver, however. Plaintiff asserts that

5

1   the existence of the so-called Toberoff Timeline waives the attorney-client privilege.
2   Whatever else might be said about the Toberoff Timeline, it is clear that it was not
3   authored by Ms. Siegel or authorized by her. The privilege, of course, belongs to the
4   client. In short, there is no evidence that the holder of the privilege waived the
5   privilege through this document.
6         Plaintiff urges a final argument, that the Court review the document *in
7   camera* and redact those portions, if any, that contain attorney-client privileged
8   material. The Court declines to exercise its discretion to do so. A showing that *in
9   camera* review *must* be had has not been made out, and the Court declines to be in the
10  business of deciding which lines of which documents constitute advice.
11        In accordance with the foregoing, the motion to compel is denied.

14  Dated: February 15, 2012    _____
15                              RALPH ZAREFSKY
                                UNITED STATES MAGISTRATE JUDGE