Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22631 Pacific Coast Highway #348
Malibu, California, 90265
Telephone:   (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW OF MAGISTRATE'S ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 72(A) AND L.R. 72-2.1**<br><br>*Declaration of Keith Adams and [Proposed] Order filed concurrently herewith*<br><br>Judge:      Hon. Otis D. Wright II<br>Magistrate: Hon. Ralph Zarefsky<br><br>Hearing Date:   March 26, 2012<br>Hearing Time:   1:30 p.m.<br>Courtroom:      11<br><br>Discovery Cutoff:      None Set<br>Pretrial Conference:   None Set<br>Trial:                 None Set |

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE: KEVIN MARKS COMMUNICATION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     STANDARD OF REVIEW .................................................. 2

III.    ARGUMENT ....................................................................... 3

        A.      DC Distorts The July 2003 And August 2002 Letters ............... 3

        B.      The August 2002 Letter Is Squarely Protected By The
                Common-Interest Privilege ......................................... 4

        C.      DC's Position Runs Afoul Of Recent Ninth Circuit
                Precedent .................................................................. 5

        D.      The July 2003 Letter Did Not Waive Privilege As To The
                August 2002 Letter .................................................... 7

        E.      The Unauthorized "Timeline" Did Not Waive Privilege ........... 8

        F.      The Common Interest Privilege Between Michael Siegel
                And Laura Siegel Larson Has Been Repeatedly Upheld ........... 9

        G.      DC's "Attorney-Messenger" Argument Is Without Merit
                And Contrary To Ninth Circuit Precedent ............................ 10

        H.      DC Lards Its Motion With Distortions Of The Record ........... 11

IV.     CONCLUSION ................................................................. 12

## TABLE OF AUTHORITIES

**Federal Cases**

*Burroughs v. DeNardi Corp.*
167 F.R.D. 680 (S.D. Cal. 1996) ................................................................ 4

*Easley v. Cromartie,*
532 U.S. 234 (2001) ................................................................................... 3

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985) ...................................................................... 5

*Electro Scientific Industries. Inc v. Gen Scanning, Inc.,*
175 F.R.D. 539 (N.D. Cal. 1997) .............................................................. 8

*Griffith v. Davis,*
161 F.R.D. 687 (C.D. Cal. 1995) .............................................................. 5

*Hebbard v. City of Dover,*
2007 U.S. Dist. LEXIS 59966 (D.N.H. Aug. 13, 2007) ............................. 7

*Hernandez v. Tanninen,*
604 F.3d 1095 (9th Cir. 2010) .................................................................. 8

*Hunydee v. U.S.,*
355 F.2d 183 (9th Cir. 1965) ..................................................................... 5

*In re Joanne Siegel,*
N.D. Ohio, Case No. 1:06 MC 99, Order dated August 13, 2008 ................. 2

*Informatica Corp. v. Bus. Objects Data Integration, Inc.,*
454 F. Supp. 2d 957 (N.D. Cal. 2006) ....................................................... 8

*Maisonville v. F2 America, Inc.,*
902 F.2d 746 (9th Cir. 1990) ..................................................................... 2

*Marlyn Nutraceuticals, Inc. v. Mucos Pharm. GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) ..................................................................... 2

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,*
254 F.R.D. 568 (ND. Cal. 2006) ................................................................ 8

*Resolution Trust Corp. v. Dean,*
813 F. Supp. 1426 (D. Ariz. 1993) ............................................................ 9

*Ridgeway v. Mont. High School Ass'n,*
858 F.2d 579 (9th Cir. 1988) ..................................................................... 9

*Siegel v. Warner Bros. Entertainment Inc.,*
542 F.Supp.2d 1098  (C.D. Cal. 2008) ................................................ 3-4, 8

*Tennenbaum v. Deloitte & Touche,*
77 F.3d 337  (9th Cir. 1996) ................................................................... 8-9

*Transamerica Computer Co. v. IBM Corp.*,
573 F.2d 646 (9th Cir. 1978) ........................................................................ 8

*U.S. v. Bauer*,
132 F.3d 504 (9th Cir. 1997) .................................................................. 10-11

*U.S. v. Freeman*,
519 F.2d 67 (9th Cir. 1975) ...................................................................... 10

*U.S. v. Reyes*,
239 F.R.D. 591 (N.D. Cal. 2006).......................................................... 8, 11

*United States v. Bay State Ambulance & Hosp. Rental Serv.*,
874 F.2d 20 (1st Cir. 1989)........................................................................ 4

*United States v. Buljubasic*,
808 F.2d 1260  (7th Cir. 1987) .................................................................. 7

*United States v. Chen*,
99 F.3d 1495 (9th Cir. 1996) ...................................................................... 9

*United States v. Gonzalez*,
_ F.3d _, 2012 U.S. App. LEXIS 1303, *14 (9th Cir. Jan. 25, 2012) ... *passim*

*United States v. Martin*,
278 F.3d 988 (9th Cir. 2002) ...................................................................... 8

*United States v. Under Seal*,
902 F.2d 244 (4th Cir. 1990) .................................................................... 5

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*,
647 F.2d 18 (9th Cir. 1981) ........................................................................ 8

**Federal Statutes and Rules**

28 U.S.C. § 636(b)(1)(A)............................................................................ 2

Fed. R. Civ. P. 72(a) .................................................................................. 2

**Other Authorities**

26 Moore's Federal Practice § 26.49[5][b]................................................ 4

# I.     INTRODUCTION

DC frivolously asks the Court to overturn Magistrate Judge Zarefsky's order denying DC's motion to compel production of a clearly privileged letter ("August 2002 Letter") from attorney Kevin Marks to his clients, Joanne Siegel and Laura Siegel Larson (owners of ¾ of Jerome Siegel's statutory termination interest), and to Don Bulson, the attorney for Michael Siegel (owner of ¼ of the same termination interest).  As Magistrate Zarefsky correctly ruled, the August 2002 Letter falls squarely within the well-established protection of common-interest privilege.  *See* Docket No. 378 ("Zarefsky Order").  Virtually every argument DC advances, in its third motion for review of Magistrate Zarefsky's orders (Docket No. 385; "Motion" or "Mot."), was specifically rejected by the Ninth Circuit in its recent decision, *United States v. Gonzalez,* __ F.3d __, 2012 U.S. App. LEXIS 1303, *14 (9th Cir. Jan. 25, 2012), a case heavily relied on by Magistrate Zarefsky that DC nowhere addresses in its brief.

DC argues that Laura Siegel's passing allusion to the August 2002 Letter in a July 11, 2003 letter to Michael Siegel (the "July 2003 Letter"; Declaration of Cassandra Seto (Docket No. 362-1-2; "Seto Decl."), Ex. C) waived privilege by supposed "disclosure" of a small portion of the August 2002 Letter.  This is ludicrous as Michael Siegel was *not* a third party, but a privileged ***recipient*** of the August 2002 Letter itself.  There could be no waiver by "disclosure" in Laura's July 2003 Letter, as Michael was already in possession of the information within the circle of privilege.  Or, as Magistrate Zarefsky put it, the "mere repetition among privilege-holders of information they already had" does not waive privilege.  Docket 378 at 5:16-21.

DC's incessant attempts to affect a waiver of privilege as to communications between Laura and Michael Siegel have been firmly rejected by an Ohio federal district court, Magistrate Zarefsky and Judge Larson.  *See Siegel,* Docket Nos. 374, 386; Docket No. 239 (upholding privilege between

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE: KEVIN MARKS COMMUNICATION

1 | Laura and Michael Siegel); Docket No. 368-2, Ex. A (*In re Joanne Siegel*, N.D.
2 | Ohio, Case No. 1:06 MC 99, Order dated August 13, 2008); Docket No. 378.

3 |         DC's motion is no more than the latest in a long line of increasingly
4 | desperate attempts to re-litigate issues both here and in the closely related case
5 | *Siegel v. Warner Bros. Entertainment Inc.*, Case No. 04-CV-08400 ODW (RZx).
6 | Specifically, DC seeks to re-litigate Judge Larson's ruling and this Court's
7 | judgment in *Siegel* that **no agreement** was reached by the parties by harping on
8 | privileged communications of the Siegels' counsel, Kevin Marks.

9 |         This is but another example of how DC is abusing discovery with constant
10 | failed and frivolous motions, with no regard for the waste of resources this
11 | entails – all under the self-righteous guise of a "search for truth."  Mot. at 9.[1]
12 | Magistrate Zarefsky detailed order and analysis was proper, as there is no basis
13 | to compel production of the privileged August 2002 Letter.

14 | **II.    STANDARD OF REVIEW**

15 |         As stated in this Court's standing order (Docket No. 18 at 3), but avoided
16 | by DC, on a motion for review the trial court will uphold a magistrate's
17 | discovery order unless it is "clearly erroneous or contrary to law."  Fed. R. Civ.
18 | P. 72(a); 28 U.S.C. § 636(b)(1)(A).  *See Maisonville v. F2 America, Inc.*, 902
19 | F.2d 746, 748 (9th Cir. 1990) (reversal for "clear error").  "Review for clear
20 | error is significantly deferential and requires a 'definite and firm conviction that
21 | a mistake has been committed.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharm.*

---

[1] *See, e.g.,* Docket Nos. 74 (denying DC's motion to initiate discovery as moot), 132-33 (withdrawing DC's motion pursuant to stipulation), 209 at 1-10, 12 (denying DC's motion as to consent agreements and defendants' privilege logs), 248 (this Court denying DC's motion for review), 260 (withdrawing DC's motion pursuant to stipulation), 262 at 4-5 (denying DC's motion as to communications between Laura Siegel Larson/Joanne Siegel and former/prospective attorneys, "document requests [that] are hopelessly overbroad," and interrogatories that were answered in a "fully responsive" manner), 285 (denying DC's motion as to redactions to privileged correspondence and retainer agreements), 287 (denying DC's motion for reconsideration of stay order), 309 (denying motion to compel documents from Laura Siegel Larson's divorce), 385-2 at 19:1-20:8 (largely denying DC's motion to compel "corporate records" from Defendants as such documents had already been produced).

2

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

1  *GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Easley v. Cromartie*,

2  532 U.S. 234, 242 (2001)).  Reversal is inappropriate as long as the magistrates'

3  "findings are plausible in light of the record viewed in its entirety." *Id.*

4  **III.    ARGUMENT**

5       **A.    DC Distorts The July 2003 And August 2002 Letters**

6       Contrary to DC's assertions, the July 2003 Letter in no way "refutes key

7  factual and legal positions that the Siegels and Marc Toberoff have taken." Mot.

8  at 1.  As this Court held in a final judgment, no binding agreement was reached

9  between DC and the Siegels in 2001-2002.  *Siegel v. Warner Bros.*

10  *Entertainment Inc.*, 542 F.Supp.2d 1098, 1116-7 (C.D. Cal. 2008); Case No. 04-

11  CV-08400 ODW (RZx), Docket No. 669.  That holding was not based on the

12  opinion of one attorney, but on the parties' clear exchange of offers and

13  counteroffers, which amply demonstrated that no agreement had been reached:

14       Defendants [DC and Warner Bros.] further seek to create issues of fact
         through <u>post hoc</u> testimony and rationalizations.  ***None of this subjective***
15       ***belief is sufficient to defeat the objective manifestation of the parties'***
         ***intent relayed in the documents referenced above that aptly demonstrate***
16       ***that there was no "meeting of the minds" on all material terms... One***
         ***need only review the language of the parties' correspondence, their***
17       ***conduct in reaction thereto, and the numerous material differences***
         ***between the terms relayed in the October 19 and 26, 2001 letters and the***
18       ***February 1, 2002, draft to reach the conclusion that the parties failed to***
         ***come to an agreement on all material terms...*** Far from signifying that
19       the parties' "negotiations… result[ed] in a binding contract" …these
         submissions between the parties went far beyond that by adding in or
20       further refining areas from what was contained in the October 19 letter…
         From all of this there is no document or set of documents reflecting
21       agreement by the parties to singular agreed terms.

22  *Id.,* 542 F. Supp. 2d at 1138-1139 (internal citations omitted) (emphasis added).

23  Nothing in the July 2003 Letter (or August 2002 Letter) refutes this.

24       DC makes much ado over *anonymous* double hearsay in the inadmissible

25  "Timeline" that Marks told the Siegels "he believes there has already been an

26  agreement reached." Mot. at 7.  However, even this does not contradict Mark's

27  actual deposition testimony:

28       [Marks]: Well, if the question is did I think at this point there was a final,
         binding, enforceable agreement, the answer would be no, ***but I did***

3

*believe that we had come to an agreement back on October 19th, 2001*....
So while I thought we had an agreement on these terms, John [Schulman, Warner's General Counsel) evidently didn't, and where you don't have a meeting of the minds, you don't have an agreement.

Docket No. 368 Ex. A at 9:12-10:2.  DC wonders if the privileged August 2002 Letter might help impeach Marks' testimony, and argues that this trumps privilege.  Outrageously, DC presents as fact pure speculation that "when Marks wrote his August 2002 memo he never qualified his description of DC's deal with the Siegels" as being "enforceable" and "remained emphatic in 2002 that a 'deal' existed."  Mot. at 1.  DC has no basis *whatsoever* for such statements. Nor would any such subjective belief supersede, in any event, the objective documents relied on by the Court, or that by May 2002, Joanne Siegel had written to Time Warner "recounting that … they had been 'stabbed in the back,'" and "that '[a]fter four years we have no deal and this [February 2002] contract makes an agreement impossible.'"  *Siegel,* 542 F. Supp. 2d at 1117.

## B.    The August 2002 Letter Is Squarely Protected By The Common-Interest Privilege

Communications between clients and attorneys, where such clients have a common legal interest, are privileged.  *See United States v. Gonzalez* ("*Gonzalez*"), __ F.3d __, 2012 U.S. App. LEXIS 1303, at *7 (9th Cir. Jan. 25, 2012) ("The Ninth Circuit has long recognized that the joint defense privilege is an extension of the attorney-client privilege.") (citations omitted); 6-26 Moore's Federal Practice § 26.49[5][b] ("The common interest doctrine … provides that parties with a shared interest in actual or potential litigation against a common adversary may share privileged information without waiving the privilege.").

A common interest privilege exists where "(1) the communications were made in the course of a joint effort, (2) the statements were designed to further the joint effort, and (3) the privilege has not been waived."  *Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) (citing *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989)).

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE: KEVIN MARKS COMMUNICATION

Here, all three elements are easily met. The August 2002 Letter was from Marks to his clients, Joanne Siegel and Laura Siegel, and to Don Bulson, Michael Siegel's attorney.  There was an obvious common interest between Michael, Laura and Joanne Siegel, as they all shared the statutory termination interest as a matter of law. 17 U.S.C. § 304(c)(2)(B).  The August 2002 Letter concerned the Siegels' settlement negotiations with DC, in which all of three interests were aligned, and none ever disclosed their privileged communications to outsiders.  *See United States v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990) (collecting cases) ("[P]ersons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other…").

Laura and Michael's interests were squarely aligned in August 2002, and even if their interests may later have diverged in some respect, they remained co-owners of the termination interest and possessed a common interest privilege as to DC.  *See Griffith v. Davis*, 161 F.R.D. 687, 692 n.6 (C.D. Cal. 1995) (a common interest privilege can exist even where the parties' interests may be "adverse in some respects"); *Gonzalez*, 2012 U.S. App. LEXIS 1303, at *14 (affirming common interest between parties with some adverse interests); *Hunydee v. U.S.*, 355 F.2d 183, 185 (9th Cir. 1965) (applying common interest doctrine even though co-defendants had a conflict of interest); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-788 (3d Cir. 1985) ("[C]ommunications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests").

Lastly, contrary to DC's false claim that "defendants *never once* asserted a common-interest privilege claim over the Marks Memo" (Mot. at 2), such a privilege was in fact asserted.  *See* Adams Decl., Ex. A, Entry Nos. 370-71.

### C.    DC's Position Runs Afoul Of Recent Ninth Circuit Precedent

Tellingly, DC's motion does not once address *Gonzalez*, *supra*,[2] a recent

---

[2] DC buries a cursory summary of *Gonzalez* among eighteen cases listed in an appendix. (Mot. at Appendix B)

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

Ninth Circuit case repeatedly cited by Judge Zarefsky that eviscerates DC's
rejected arguments:

- *Gonzalez* reaffirms that "the joint defense privilege is 'an extension of the
  attorney-client privilege'" (*Gonzalez*, 2012 U.S. App. LEXIS 1303 at *7);
  rebutting DC's contention (Mot. at 2) that Defendants waived privilege by
  listing the August 2002 letter as protected by the "attorney-client privilege,"
  rather than the "common interest privilege." *See* Zarefsky Order at 2:16-19.

- *Gonzalez* reaffirms that statements made during a period of common-interest
  *remain privileged* even after the parties no longer share a common interest,
  rebutting DC's argument (Mot. at 5) that the privilege was waived once the
  parties' interests allegedly diverged. *See Gonzalez* 2012 U.S. App. LEXIS
  1303 at *17 ("If the communication occurred during the existence of the
  [common interest], then it remains protected. . ."); Zarefsky Order at 4:13-15.

- *Gonzalez* reaffirms that parties with common interests "need not have
  identical interests and may even have some adverse motives" (*Gonzalez*,
  2012 U.S. App. LEXIS 1303 at *13), rebutting DC's argument (Mot. at 7)
  that alleged differences destroyed privilege. Zarefsky Order at 5:12-15.

- *Gonzalez* reaffirms that the common-interest privilege applies to all parties
  who share the interest, and that "the case law is clear that one party … cannot
  unilaterally waive the privilege for other holders" (*Gonzalez* 2012 U.S. App.
  LEXIS 1303, at *18), rebutting DC's unsupported assertion (Mot. at 6) that
  Laura could unilaterally waive Michael's joint privilege as to the August
  2002 Letter. Zarefsky Order at 3:10-14.[3]

- *Gonzalez* reaffirms that "no written agreement is required" and that
  "privilege applies even without an express understanding that the recipient

---

[3] DC also advances an unsupported argument that "it is *Laura* who made the waiver,
and it is against *Laura* that DC seeks to use the waiver." Mot. at 6. *First*, there was no
waiver. *Second*, using this against Laura is equivalent to using it against Michael
Siegel and his estate, as they both share in the same copyright termination interest.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

shall not communicate the contents thereof to others" (*Gonzalez*, 2012 U.S.
App. LEXIS 1303, at *18), rebutting DC's arguments (Mot. at 5, 7) that
Laura needed a privilege agreement and to mark her letter "Confidential."

DC's silence as to *Gonzalez*, despite the fact that it was highlighted in
both Defendants' opposition (Docket No. 368 at 7, 12-13) and Magistrate
Zarefsky's order (Zarefsky Order at 2:16, 3:12; 4:8-9; 4:13-21), is deafening.

## D.    The July 2003 Letter Did Not Waive Privilege As To The August 2002 Letter

As Judge Zarefsky properly found, Laura's July 2003 Letter to Michael
did not and could not waive privilege as to the August 2002 Letter.  Zarefsky
Order at 5:16-20.  The false crux of DC's argument is that Laura waived
privilege by supposedly "disclosing" the August 2002 Letter to Michael in her
July 2003 Letter.  Mot. at 1-3, 5, 8-9.  However, Laura's passing allusion to the
August 2002 Letter could not waive privilege by *disclosure* to Michael, because
Michael was a party to the August 2002 Letter sent to his attorney Bulson.

The July 2003 Letter did not "disclose" to Michael such information as
was already in his possession, and therefore could not waive privilege.  *See
United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987) ("A client does
not waive the privilege by stating facts that [the recipients] already know or
could deduce."); *Hebbard v. City of Dover*, 2007 U.S. Dist. LEXIS 59966 at *8
(D.N.H. Aug. 13, 2007) ("[C]onfirmation to a reporter of what the reporter
already knew is not sufficient to waive the privilege allowed the contents of the
document").  Thus Magistrate Zarefsky aptly characterized the July 2003 Letter
as "mere repetition among privilege-holders of information they already had"
which does not waive privilege.  Docket 378 at 5:16-21.

DC's *sole* argument against this authority is its vague contention that
"[c]laims of privilege impede the search for the truth" (Mot. at 6), but it offers
*no* argument as to why an allusion to a privileged communication made in

private correspondence to someone who is already well aware of such privileged

communication could effect a waiver by purported "disclosure."

None of the "waiver" cases cited by DC are even remotely applicable.[4]

Tellingly, DC does not cite one case where waiver is found based on the

repetition of privileged information between privilege holders.

DC takes issue with Magistrate Zarefsky not discussing a distinguishable

case, *Electro Scientific Industries. Inc v. Gen Scanning, Inc.,* 175 F.R.D. 539

(N.D. Cal. 1997), that actually supports Defendants.  In *Electro Scientific*,

privilege was waived only where the defendant publicly disclosed opinions in a

voluntary press release.  *Id.* at 542.  Notably, *Electro Scientific* found *no waiver*

where the defendant communicated to customers with a shared "community of

interest" – as Laura did when she communicated with Michael.  *Id.* at 539-42.

### E.      The Unauthorized "Timeline" Did Not Waive Privilege

In both this case and *Siegel*, privilege was expressly upheld as to the

logged documents the anonymous Timeline purports to discuss; and DC's

motions to compel arguing "waiver" due to such unauthorized "disclosures,"

were firmly rejected.  *See Siegel*, Docket Nos. 158, 374, 386, 476, 478.

DC provides no basis whatsoever to revisit such rulings.  Waiver of the

attorney-client privilege arises only if the disclosure "is voluntary and not

compelled."  *Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th

Cir. 1978).  Unauthorized disclosures of privileged communications, like the

Timeline, do not waive the privilege.  *See Tennenbaum v. Deloitte & Touche*, 77

---

[4] *See, e.g., Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981) (voluntary disclosure to opposing side during deposition); *United States v. Martin*, 278 F.3d 988, 1000-01 (9th Cir. 2002) (officer of sham corporation has no attorney-client relationship with the corporation's general counsel); *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010) (disclosure where plaintiff attached counsel's handwritten notes as evidence in public filing); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 454 F. Supp. 2d 957 (N.D. Cal. 2006) (voluntary public disclosure of patent counsel opinion in patent infringement case); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568 (ND. Cal. 2006) (voluntary public disclosure of patent prosecution documents*); U.S. v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006) (waiver when party voluntarily disclosed documents to government).

8

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

F.3d 337, 341 (9th Cir. 1996); *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (ex-employee "cannot waive the corporation's privilege); *Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1430 (D. Ariz. 1993) (unauthorized and possibly criminal disclosure "did not voluntarily waive any…privilege").[5]

## F. The Common Interest Privilege Between Michael Siegel And Laura Siegel Larson Has Been Repeatedly Upheld

The "law of the case" doctrine stands for the common-sense principle that the same *issue* presented a second time in the same court should lead to the same result, as to do otherwise "would create intolerable instability for the parties." *Ridgeway v. Mont. High School Ass'n*, 858 F.2d 579, 587-88 (9th Cir. 1988).

Specifically, DC already brought a motion to compel the production of the August 2002 Letter in *Siegel*, on essentially the same grounds as it does here, which motion was ***denied***. *Siegel,* Docket Nos. 476, 478.

In addition, Magistrate Zarefsky previously upheld the common interest privilege in denying DC's motion to compel documents concerning Mr. Bulson's representation of Michael Siegel. Docket No. 239.

DC argues that an Ohio Court ruling supports its assertion that in July 2003 Laura and Michael had no community of interest. Magistrate Zarefsky did not buy this argument; nor should this Court. The Ohio Court found that only a handful of communications relating to Ari Emanuel's attempt to purchase Michael's ¼ termination interest were not subject to the common interest privilege. Zarefsky Order at 4:22-5:9. As to the many other communications between Laura and Michael at issue, the Ohio Court ***denied*** DC's motion, upholding their privileged status. *Id*.

---

[5] DC misleadingly argues that Defendants waived privilege when *DC* publicly filed the Timeline with a discovery joint stipulation to compel the August 2002 Letter in *Siegel*. Mot. at 7-9. As Defendants previously stated (see Docket No. 65 at 2), *DC* filed the Timeline (Docket No. 42-17 at 337-44) over the Siegels' adamant objections (Docket No. 42-16 at 270, 330), just as DC willfully publicized this defamatory anonymous "hit piece" by gratuitously attaching it to DC's complaint. *See* Docket Nos. 1, 49.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE: KEVIN MARKS COMMUNICATION

Nor did this Court broadly find against a common-interest privilege between Laura and Michael, as DC asserts. Mot. at 5. Magistrate Zarefsky properly declined to adopt DC's mischaracterization of the October 26, 2011 order (Docket No. 336, which simply "Granted" DC's motion as to a single letter) as implying a wholesale rejection of privilege. Zarefsky Order at 5:9-11.[6]

The July 2003 Letter presents no valid ground to revisit the Courts' repeated rulings upholding a common interest between Laura and Michael Siegel or as to the August 2002 Letter, itself.

## G. DC's "Attorney-Messenger" Argument Is Without Merit And Contrary To Ninth Circuit Precedent

DC speculates that the August 2002 Letter contains "facts" as to an August 2002 offer by Ari Emanuel to the Siegels' attorney Marks, and Marks' opinion thereof, and argues that this necessitates *in camera* review. DC's straw man is unpersuasive. The Emanuel offer itself is not privileged and was freely testified to by Marks, while maintaining privilege as to his communications with his clients, including his privileged opinions regarding such offer. *See* Docket No. 75 at 8:25-9:1. DC already has all of the "facts" it is entitled to and improperly demands an adverse attorney's privileged *opinion* about such "facts." All attorney-client communications necessarily entail "facts," intertwined with the substance of such communications. This does not render them discoverable.

DC's reliance on *U.S. v. Freeman*, 519 F.2d 67 (9th Cir. 1975) is misguided. Mot. at 8. *Freeman* simply held that an attorney had to testify as to whether he had provided his client with notice of a judicial order, as such information "was not of a confidential nature." *Id. U.S. v. Bauer*, 132 F.3d 504 (9th Cir. 1997) expressly rejected DC's reading of *Freeman*, and limited the case

---

[6] To circumvent Magistrate Zarefsky's refusal to adopt DC's erroneous arguments, DC has stated that it will seek the appointment of a special master to review Defendants' privilege logs (Docket No. 364 at 13:5-15) that both Magistrate Zarefsky and this Court have repeatedly upheld. *See* Docket Nos. 209 at 12; 248; 285.

10

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

to situations "wherein the contents of a message that otherwise amounts to public information is not protected by the attorney-client privilege." *Id.* at 508.[7]

Lastly, contrary to DC's assertion that Magistrate Zarefsky "never addressed" this issue, he expressly held that DC failed to meet its burden of requiring *in camera* review. Docket 378 at 6:6-10.

## H.    DC Lards Its Motion With Distortions Of The Record

Unable to forge any real argument, DC tries to prejudice the Court by constant distortions of the record and *ad hominem* attacks on opposing counsel:

- DC misrepresents that the August 2002 offer to the Siegels was from Mr. Toberoff (Mot. at 1, 7), when the record is clear that it was by the talent agent Ari Emanuel. *See, e.g.,* Docket No. 75 at 8:22-26; Docket No. 269 at 7.

- DC falsely claims that the July 2003 Letter was to convince Michael Siegel "to sell his rights to Toberoff" (Mot. at 6; 7), when it well knows that Mr. Emanuel sought to purchase Michael's interest. *See* Docket No. 160 at 70-71; No. 164, Ex. A at 7; No. 269 at 7.

- DC states that Michael Siegel was offered a "pittance" for his minority share (Mot. at 7); Mr. Emanuel offered $200,000 plus a $100,000/year for 22 years, plus a profit participation. *See* Docket No. 161-8, Ex. H at 68.

- DC asserts that Michael "was openly accusing Mr. Toberoff of fraud" (Mot. at 1) in his May 2003 letter, which does no such thing. Docket No. 225-4.

- DC claims that Defendants "do not dispute that key parts of the [August 2002] Marks memo … are not privileged" (Mot. at 8-9) when they always asserted that the letter is entirely privileged. Docket No. 368 at 8-9, 14.

- DC falsely asserts that there is an "open and frank discussion of the contents of the Marks Memo in [the] July 2003 letter" (Mot. at 4), when the letter does not even specify the August 2002 memo and barely alludes to it.

---

[7] *U.S. v. Reyes*, 239 F.R.D. at 602, cited by DC (Mot. at 4), also emphatically rejected DC's argument as "without merit" and noted that communications concerning facts are "entirely different things" than facts themselves.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION

1

## IV.   CONCLUSION

2          For all of the above reasons, DC's motion for review should be denied.

3   DATED:  March 5, 2012              TOBEROFF & ASSOCIATES, P.C.

4

5                                      By _____
                                             Marc Toberoff

6                                      Attorneys for Defendants Mark Warren Peary,
                                       as personal representative of the Estate of
7                                      Joseph Shuster, Jean Adele Peavy, and Laura
                                       Siegel Larson, individually and as personal
8                                      representative of the Estate of Joanne Siegel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR REVIEW RE:
KEVIN MARKS COMMUNICATION