DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR REVIEW OF MAGISTRATE'S ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 72(A) AND L.R. 72-2.1**<br><br>SUPPLEMENTAL DECLARATION OF CASSANDRA SETO FILED CONCURRENTLY HEREWITH<br><br>**Judge**:     Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>**Hearing Date**:  Mar. 26, 2012<br>**Hearing Time**:  1:30 p.m.<br>**Courtroom**:     11 |

Defendants' opposition is long on demonizing rhetoric and footnotes, but never addresses the thrust of DC Comic's motion, which Judge Zarefsky, even though he ruled against DC, concluded his hearing on the matter by saying it posed a hard question.  Docket No. 385-2 at 62:24-63:1.  There are four simple reasons to grant DC's motion for review—none of which defendants address head on.

1. Defendants' Several-Year Failure to Assert Common-Interest Privilege Over the Marks Memo.  Defendants say DC's motion is "frivolous," "ludicrous," "desperate," "outrageous," and "wasteful" because the Marks Memo was "clearly" and "squarely protected" by the common-interest privilege.  Opp. 2, 4.  But it is not until page five of defendants' brief that defendants contend with the fact that *none* of them *ever once* asserted a common-interest privilege over the Marks Memo for some *six years*.  Defendants asserted common-interest privilege 505 times in their various logs, and the Marks Memo is variously listed in defendants privilege logs—including at Siegel Log Entry No. 623 and Toberoff Log Entry No. 624.  Docket No. 385-1 ¶¶ 2-5.  But *not once* do they assert common-interest over the Memo.  *Id.*

At page five of their brief, defendants assert that they did, in fact, assert a common-interest privilege objection over the Marks Memo.  Opp. 5:23-25.  But all that they cite for this point is Don Bulson's—a *third-party's*—privilege log, which was prepared and submitted only *after* DC said it would move to compel the production of the Marks Memo in this case.  Docket Nos. 362-2 at 291-92; 385-1 ¶ 4.  Defendants' logs *never once* assert this privilege.  Docket No. 385-1 ¶¶ 2-5.

Judge Zarefsky clearly erred—as a matter of fact and law—in upholding a common-interest privilege objection that defendants *never* asserted.  Defendants offer no response—none—to the cases DC cited holding that the failure to assert such a privilege in one's logs for so long constitutes a waiver.  Mot. 2-3.  On this simple ground alone, DC's motion should be granted.

2. Laura's Choice To Disclose the Contents of the Marks Memo in a Non-Privileged Letter to Her Brother Waived *Any* Privilege.  Defendants assert that this

1  Court did not reject their common-interest privilege claim over the July 11, 2003,
2  letter from defendant Laura to Michael Siegel. Opp. 10. This position is not well
3  taken. The Court's October 26, 2011, order granting DC's motion for review and
4  *compelling* defendants to produce the July 2003 letter over defendants' strident
5  claims that it was covered by a common-interest privilege can *only* be read as
6  rejecting that claim. *Compare* Docket No. 336, *with* Docket No. 331 at 1-2, 7-9.

Laura's July 2003 letter openly discloses the contents of the Marks Memo—it does not make a "passing allusion" to it as defendants assert, Opp. 7—and effects a subject-matter privilege waiver over the following parts of the Memo:

> We fired Kevin Marks and Bruce Ramer because *they were insisting we* [Laura and her mother, Joanne Siegel] *take a bad TW/DC deal.* You'll remember that you [Michael], Don Bulson [your lawyer] and we were shocked when Kevin Marks said that if asked to, *he would testify against us in court*. …
> Kevin Marks had turned Marc [Toberoff] away saying *we had a deal with DC* when we did not. …
> *Kevin Marks told Marc we had a deal* with Time Warner/DC. Docket No. 362-2 at 287 (emphasis added).

*Compare Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) (waiver where holder disclosed "the bottom line of the lawyer's opinion, his conclusion, the ultimate outcome of his legal reasoning"). Defendants have no response to the long line of cases holding that when one discloses the subject matter of an allegedly privileged communication in a *non*-privileged forum in this way, all privilege in that same subject matter is waived. Mot. 3.

Defendants, likewise, have no response to the cases cited in Appendix B to DC's motion, which show that while one party to a joint-privilege cannot waive it for all parties, the rule applies only when one holder of the joint-privilege makes a waiver and a third party argues waiver against *another* party to the privilege. Here, *Laura* waived, and it is only against *Laura* that DC argues waiver. Defendants say Laura now controls Michael's estate and DC is using the waiver against Michael, Opp. 6 n.3, but that is false. Michael's estate is *not* party to this suit.

1      Significantly, defendants cite *no case* in which a court found that the holder of the joint-privilege who made the waiver (*i.e.*, Laura) is not bound by it. Instead, they cite cases like *U.S. v. Gonzalez*, 2012 U.S. App. LEXIS 1303 (9th Cir. Jan. 25, 2012), which they say "eviscerates" DC's arguments, Opp. 5-7, but *Gonzalez* only confirms DC's position. There, Gonzalez and Paiz had a joint-defense agreement. *Id.* at *1-2. Paiz filed a habeas petition arguing ineffective assistance of counsel, which put at issue Gonzalez's discussions with Wilder, Paiz's counsel. *Id.* at *2. The government sought discovery of all joint-defense discussions between Gonzalez and Wilder. *Id.* at *3. The court held that Gonzalez was not bound by Paiz's waiver since Paiz had filed a habeas petition and Gonzalez had not "*chosen to put his communications at issue.*" *Id.* at *21-22; *see* Mot. App. B (discussing same). *Gonzalez* confirms that the "no unilateral waiver" rule applies when a third party (*e.g.*, the government) seeks to obtain joint-defense information from a party to the privilege (Gonzalez) based on a waiver by another party to the privilege (Paiz). Here, DC seeks the Marks Memo from *Laura* because of *Laura's* waiver.

     Moreover, it is not DC's argument, as defendants suggest, Opp. 6, that any joint-defense privilege that might have applied to the Marks Memo was waived once Laura's and Michael's interests diverged. Laura waived privilege in Marks' communication by choosing to create a *new non-privileged communication* in July 2003 that openly disclosed the contents of the Marks Memo. This Court rightly ordered the July 2003 letter produced because it was *not* privileged. The reason it was not privileged is that it was written when Michael and Laura were sparring, Michael was urging Laura to cut ties with Toberoff, and Toberoff and his business partner Emanuel were trying to buy Michael's rights for far less than Toberoff told DC such rights were worth. Docket Nos. 49, FAC Ex. A at 64-66; 183-4 at 47; 225-4 at 3-4; 362-2 at 3-4, 286-90; 305-52 at 1863:5-11, 1877:21-1878:3.

     Defendants argue Laura's 2003 letter did not waive privilege in discussing the Marks Memo because Michael's attorney was a recipient of the 2002 memo.

Opp. 7-8. Defendants conflate the initial 2002 Marks Memo and any privilege that obtained in it with *Laura's 2003 letter*, which this Court ruled is not privileged. And they ignore that Laura's disclosure of Marks' communication was made at a time when Michael was under no obligation to maintain the confidentiality of the July 2003 letter and could disclose its contents freely. Docket No. 362 at 10-11.

Laura's disclosure vitiates any claims of privilege, and the two cases cited by defendants—neither of which involve common-interest privilege—do not hold otherwise. In *U.S. v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987), a third-party witness testified he communicated with his attorney about his potential prosecution and sentence after receiving immunity from the government. No waiver occurred since the witness stated facts that were a "matter of public knowledge"—the reduction in his sentence, and the grant of immunity—and did not disclose "portions of communications that are private between attorney and client." *Id.* Here, Laura's July 2003 letter openly discloses the substance of the Marks Memo, which defendants claim is privileged, and *not* a "matter of public knowledge."

In *Hebbard v. City of Dover*, 2007 U.S. Dist. LEXIS 59966, at *7-8 (D.N.H. Aug. 13, 2007), the court found no waiver where a city manager "*confirmed*" information already *publicly* known by a reporter. The manager's "confirmation" of the existence of a memo was insufficient to waive privilege over "the attorney's reasoning, information received from the client, weaknesses in the case, or strategic plans for litigation." *Id.* at *8. Laura's discussion of the Marks Memo in her July 2003 letter does more than "confirm" its existence; she discloses the most important parts of Marks' communication: that Marks believed the Siegels "had a deal with Time Warner/DC" finally settling their putative Superman claims in October 2001; that Marks "turned Marc [Toberoff] away saying [the Siegels] had a deal with DC"; and that Marks made clear to the Siegels he "would testify against them in court" if they repudiated the October 2001 agreement to accept Toberoff's competing offer on behalf of the unnamed "investor." Docket No. 362 at 9.

3. Defendants' Tactical Choice Not to Move to Seal the Toberoff Timeline.

Defendants assert in a footnote their failure to move for a protective order sealing the Toberoff Timeline or limiting its use—DC's actual theory of waiver, not the one defendants invent—did not waive privilege in its contents. Opp. 9 n.5. They do not dispute DC invited them to file such a motion and that they chose not to do so. Rather, they argue they guarded privilege by making "adamant objections" to the public disclosure of the Timeline in a discovery opposition brief. *Id.* But the law requires filing a motion or cross-motion to seek affirmative relief, and rhetoric in an opposition brief does not maintain privilege—a motion for a protective order is required. The Timeline and its open description of the Marks Memo have been a matter of public record since 2009. Docket No. 42 at 43-44. This is another ground on which DC's motion can and should be granted.

4. The Non-Privileged Parts of the Marks Memo Should Be Produced.

Defendants argue DC is "speculating" the Marks Memo contains non-privileged "facts," Opp. 10, but in deposition and elsewhere *they* conceded Marks conveyed in his Memo Toberoff's offer to acquire the Siegels' purported rights and that his "offer itself is not privileged." Opp. 10; Docket Nos. 75 at 8-9; 368 at 2, 14-15. Laura's letter also says Marks told her that he told Toberoff that Laura had made a "deal" with DC—still more mere "facts" about what Toberoff and Marks discussed. Docket No. 362-2 at 287  Defendants do not deny that conveying a business offer is *not* a privileged communication. *Compare* Mot. at 8-9, *with* Opp. 10-11.

Defendants argue, instead, that DC is not entitled to discover the Marks Memo because Marks testified about Toberoff's offer in the *Siegel* case. Opp. 10. Yet Laura's July 2003 letter—like the Marks Memo itself—are both needed to impeach that testimony. In *Siegel*, Marks testified Laura had not reached an "*enforceable*" deal with DC, even if she accepted DC's offer in October 2001. Docket No. 368 at 5:16-21. The qualifier "enforceable" *never* appears in Laura's July 2003 letter, however. Docket No. 362-2 at 287. DC is entitled to use the

5

DC COMICS' MOT. FOR REVIEW
OF MAGISTRATE'S ORDER

Marks Memo, along with Laura's letter, to impeach Marks, whom defendants have used as a witness in this case. Docket Nos. 312-2.

5. *Defendants' Other Arguments*. Defendants assert DC's motion is barred by rulings in *Siegel*. Opp. 9. This position is frivolous. In its October 25, 2011, order, this Court rejected defendants' claim that no fewer than *eight prior rulings*, including those in *Siegel*, barred production of the July 2003 letter. *Compare* Docket No. 336, *with* Docket No. 331 at 1:2-26, 4:9-7:21. Yet defendants invoke those same inapposite rulings now to make the same rejected argument.

Defendants also launch a series of false *ad hominem* attacks on DC. DC will not waste the Court's time addressing each one; DC's position is set out in its motion and the evidence cited therein. However, given the inappropriate attacks on DC and its counsel—for filing this case and pursuing Toberoff for his obvious and now repeatedly admitted misconduct, Docket Nos. 78 at 2; 147-1 at 2; 305-37 at 1335:10-1336:4; 307 at 22-25—it is well worth noting that in oral argument on the discovery writ defendants took in this case, the Ninth Circuit expressly questioned whether Toberoff has acted in the Siegels' interests. Seto Decl. Ex. A at 20:5-17.

6. *Conclusion.* DC's motion for review should be granted.[1]

Dated: March 7, 2012

Respectfully Submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli

---

[1] DC also objects to defendants' brief on the ground that it violates Local Rule 11-3.8, which requires that the title page of "all documents" identify the "address … of the attorney … presenting the document." As DC has informed defendants, the address defendants list is an old address for "Mailboxes, Business & Shipping Center," a company that moved on January 27, 2012. On February 24, 2012, DC notified defendants that DC could not personally serve discovery responses at this address because it was closed, and defense counsel had not apprised DC or the Court of their new address, as required by Local Rule 83-2.7 and the California bar rules. Seto Decl. Exs. B, C, D; California State Bar Rule 2.3; CAL. BUS. & PROF. CODE § 6002.1.