# EXHIBIT A

**CERTIFIED COPY**

# In The Matter Of:

*PACIFIC PICTURES CORPORATION*

*v.*

*DC COMICS*

_____

## *ORAL ARGUMENT*

*February 7, 2012*

_____

**MERRILL CORPORATION**
**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**EXHIBIT A**
**2**

ORAL ARGUMENT - 2/7/2012

Case No. 11-71844

CERTIFIED COPY

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

PACIFIC PICTURES CORPORATION; ET AL.

Defendants-Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

Respondent.

DC COMICS,

Plaintiff-Real Party in Interest.

---

FEBRUARY 7, 2012

ORAL ARGUMENT

HEARD BEFORE JUDGES KOZINSKI, O'SCANNLAIN AND SMITH

TRANSCRIBED BY:  Melanie M. Faulconer

CSR No. 6420

**EXHIBIT A**

**3**

ORAL ARGUMENT - 2/7/2012

```
 1                    PASADENA, CALIFORNIA

 2                    FEBRUARY 7, 2012

 3

 4                       ---o---

 5

 6      RICHARD B. KENDALL, ESQ.:  May it please the Court.

 7   Richard Kendall on behalf of the petitioner.

 8         Your Honors, the question in this case is

 9   whether a theft of privileged documents from a law

10   office can be investigated without enabling the thief

11   and the litigation adversary --

12      JUDGE KOZINSKI:  Now, once again, you have to

13   remember what the case is here.  You're on a mandamus

14   petition, standard of review, and it's not a question if

15   something can be stolen or anything else.  The question

16   is is whether or not you meet the heavy burden that we

17   require under case law for getting a writ of mandamus.

18      RICHARD B. KENDALL, ESQ.:  Quite correct.

19      JUDGE KOZINSKI:  And that's what's at stake here.

20   Okay?

21         We know what the facts are.  So let's get on.

22   You've got nine minutes left, so let's talk about the

23   stuff of mandamus.

24      RICHARD B. KENDALL, ESQ.:  We argue, your Honor,

25   that the court below committed legal error on the law by
```

**EXHIBIT A**

**4**

ORAL ARGUMENT - 2/7/2012

```
 1    misinterpreting the law that governs privilege waiver in

 2    such situations.

 3            The cases that were cited by the magistrate and

 4    by my learned opponents are cases that involve only the

 5    voluntary disclosure by a target to an adverse party,

 6    and the picking and choosing among opponents by the

 7    target --

 8        JUDGE KOZINSKI:  Let me -- let me --

 9        RICHARD B. KENDALL, ESQ.:  -- that's not what

10    happened here.

11        JUDGE KOZINSKI:  Let me ask you a question.  It's

12    probably directed to your opponent.  But I -- there's a

13    couple of things I'm really confused about in this case,

14    and maybe you can address and then I'll ask him of

15    course.

16            One of them is, there was a subpoena here;

17    right?

18        RICHARD B. KENDALL, ESQ.:  Correct.

19        JUDGE KOZINSKI:  I'm not quite sure I understand.

20    There wasn't -- I looked at the briefs, and there was

21    no -- not much discussion.

22            Isn't a subpoena a lawful order that has to be

23    complied with?

24        RICHARD B. KENDALL, ESQ.:  It is, your Honor, and it

25    provides all --
```

**EXHIBIT A**

**5**

ORAL ARGUMENT - 2/7/2012

1      JUDGE KOZINSKI:  Well, why isn't that the

2   dispositive fact here?  All the back and forth between

3   the parties and agreements and what they wanted to do,

4   and all that, why isn't that entirely beside the point?

5      RICHARD B. KENDALL, ESQ.:  Well, I would like to

6   argue, your Honor, that it is.  Unfortunately there is

7   some precedent in the target cases that do involve Grand

8   Jury subpoenas that require me to point out the

9   difference between this case and those cases that did

10   involve subpoenas.

11        Here's my argument on the subpoena.

12      JUDGE SMITH:  Which cases are those?

13      RICHARD B. KENDALL, ESQ.:  The cases that are cited

14   in the list --

15      JUDGE KOZINSKI:  Give me a name, you know.  That's

16   how we identify cases, by name, possibly by a citation.

17      RICHARD B. KENDALL, ESQ.:  Yes, your Honor.

18        The --

19      JUDGE KOZINSKI:  You know, I might as well tell you

20   my second question because I'm also confused about

21   this.

22        Isn't a attorney-client privilege a privilege

23   of the client that can only be waived by the client?

24      RICHARD B. KENDALL, ESQ.:  Yes, your Honor.

25      JUDGE KOZINSKI:  What evidence is there here that

**EXHIBIT A**

**6**

ORAL ARGUMENT - 2/7/2012

1    the client here waived?

2        RICHARD B. KENDALL, ESQ.:  There is no evidence that

3    the client waived, your Honor.

4        JUDGE KOZINSKI:  Everything done here was by the

5    lawyer; right?

6        RICHARD B. KENDALL, ESQ.:  Everything that was done

7    here --

8        JUDGE KOZINSKI:  A lawyer can't waive the privilege

9    on behalf of the client.  It's one of those things like

10   pleading guilty that only the client can do.

11       RICHARD B. KENDALL, ESQ.:  Quite correct, your

12   Honor.

13       JUDGE KOZINSKI:  So why haven't you argued that

14   there's no evidence of waiver because there's no

15   client -- there's no action by the client?

16       RICHARD B. KENDALL, ESQ.:  Your Honor, I think it is

17   pointed out that the client has never waived.

18       JUDGE KOZINSKI:  It is?

19       RICHARD B. KENDALL, ESQ.:  And for that matter, nor

20   has the -- Mr. Toberoff.

21       JUDGE KOZINSKI:  Who cares what Toberoff did.

22   Toberoff's the lawyer.  The lawyer can't waive the

23   privilege for the client.  You know, all this talk about

24   what Toberoff did, again, especially the time, is beside

25   the point.

ORAL ARGUMENT - 2/7/2012

```
 1        RICHARD B. KENDALL, ESQ.:  Your Honor --

 2        JUDGE KOZINSKI:  Where is the client's waiver?

 3        RICHARD B. KENDALL, ESQ.:  There is no client

 4   waiver, your Honor, and beyond that --

 5        JUDGE KOZINSKI:  So you're briefing it.  That's so

 6   hard; right?  That's why -- it's full of why -- I looked

 7   and there's nothing here from the client.

 8        RICHARD B. KENDALL, ESQ.:  Quite right, your Honor.

 9             I would further point out that as long as this

10   case was before the Grand Jury, it was covered by the

11   restrictions that govern disclosures to a Grand Jury

12   under Rule 60 of the Federal Rules of Criminal

13   Procedure.  Those are equivalent to a protective order.

14   In fact, they're stronger than a protective order.  They

15   are statutory.  And as long as the case is in front of a

16   Grand Jury, there could be no disclosure of these

17   documents.  In that sense this is much like the Bittaker

18   case, the en banc case that your Honor authored in

19   which --

20        JUDGE KOZINSKI:  The brilliant Bittaker opinion, is

21   that the one?

22             (Laughter.)

23        JUDGE KOZINSKI:  Is that the one you're talking

24   about?

25             I don't remember it actually.
```

**EXHIBIT A**
**8**

ORAL ARGUMENT - 2/7/2012

```
 1          (Laughter.)

 2      RICHARD B. KENDALL, ESQ.:  And so, your Honor, I

 3  think --

 4      JUDGE KOZINSKI:  That was a habeas case; right?

 5      RICHARD B. KENDALL, ESQ.:  That was a habeas case in

 6  which Judge -- Judge Burns had issued a protective

 7  order, and the court pointed out that at the time the

 8  litigant disclosed the documents, the litigant was

 9  relying on the protections accorded by the protective

10  order and that shows the lack of intent to waive and the

11  lack of a waiver.  And then the same is true in this

12  case where the disclosing party was relying on Grand

13  Jury secrecy, which had the equivalent protections of a

14  protective order, also on the agreement of the receiving

15  United States Attorney to abide by not only Grand Jury

16  secrecy but the --

17      JUDGE SMITH:  When the subpoena was issued, it said

18  you need to disclose privileged materials, you could

19  withhold, redact or log any material over which you want

20  it to remain privileged, and there was no response by

21  you to redact, withhold or log at all, was there?

22      RICHARD B. KENDALL, ESQ.:  There wasn't, and the

23  reason for that is that to do so would have deprived the

24  Government of the corpus delicti of the crime.

25      JUDGE SMITH:  So what?  You're not -- you're not out
```

**EXHIBIT A**

**9**

ORAL ARGUMENT - 2/7/2012

Page 8

```
1    there trying to help the Government.  You're trying to
2    do what your client suggests.  If it's really privileged
3    and you really don't want it disclosed, it seems to me
4    that in those situations you make the Government come
5    after it.  You just don't produce --
6         RICHARD B. KENDALL, ESQ.:  The same --
7         JUDGE SMITH:  -- and then come back to me and say,
8    "Well I can produce to one person but I can't produce
9    to another."
10        RICHARD B. KENDALL, ESQ.:  The same could have been
11   said in the Bittaker case.  One can always refuse to
12   disclose privileged documents, but when there are
13   protections that prevent disclosure to unauthorized
14   parties and the only way for in this case the Siegels'
15   interest in having the theft of their privileged
16   documents to be investigated is to permit under those
17   protections the Grand Jury to review the documents; then
18   there was no other way.  To -- to assert privilege would
19   have defeated the desire to -- to have an investigation
20   done.
21        JUDGE SMITH:  So I can -- so as a person, I can
22   desire the Government to do something and produce what I
23   need to them without any problem, but don't come after
24   it in any other way?
25        RICHARD B. KENDALL, ESQ.:  Well, your Honor, I think
```

**EXHIBIT A**
**10**

ORAL ARGUMENT - 2/7/2012

1    it's very different in the cases that involve targets,

2    and the reason is that when a target of an investigation

3    discloses a document, he's disclosing it to the adverse

4    party, and the toothpaste is now out of the tube and the

5    adverse party has possession of the privileged

6    information.

7            In this case a neutral fact-finder is in

8    possession of the information.  This is much like the

9    submission to a court of privileged information in order

10   for the court to evaluate the privilege.

11       JUDGE SMITH:  Let me ask you another question.

12           Are all of the escrow documents now accessible

13   to the public?

14       RICHARD B. KENDALL, ESQ.:  No, not the privileged

15   ones.

16       JUDGE SMITH:  Just the the Tob- -- just the Toberoff

17   Timeline?  Is that all that's accessible?

18       RICHARD B. KENDALL, ESQ.:  That is the only one that

19   is accessible as -- well, the answer is "no."  No.

20       JUDGE SMITH:  From my review of the record, it seems

21   to me that the Toberoff Timeline is certainly accessible

22   to the public, and I frankly question whether all the

23   documents were also accessible, though I didn't go try

24   to find out.

25       RICHARD B. KENDALL, ESQ.:  It's absolutely clear,

ORAL ARGUMENT - 2/7/2012

1    your Honor, and I don't think there's any dispute on

2    this, that the privileged documents over which the

3    parties are fighting today are not accessible to the

4    public.

5        JUDGE O'SCANNLAIN:  Counsel, I have a question with

6    respect to -- assuming we apply the Bauman factor, why

7    can't we wait until the end of the litigation?  What's

8    so urgent?

9        RICHARD B. KENDALL, ESQ.:  Because if you wait until

10   the end of the litigation, then the privilege will

11   effectively have been lost.

12       JUDGE SMITH:  But doesn't Mohawk Industries versus

13   Carpenter make clear that an adequate remedy for ruling

14   out attorney-client privilege or attorney-client problem

15   is always available on appeal?

16       RICHARD B. KENDALL, ESQ.:  I don't think so, your

17   Honor.  I think in the situation like this in which if

18   we were to have a disclosure of these privileged

19   documents, it would be difficult to know at the end of

20   the day exactly what effect that has, but the -- the

21   privilege would not have been protected.

22           Your Honor, I only have 30 seconds left, but if

23   I could, I'd like to reserve for rebuttal.

24       JUDGE KOZINSKI:  Okay.  We'll hear from the other

25   side.

ORAL ARGUMENT - 2/7/2012

1          MATTHEW T. KLINE, ESQ.:  Good morning, your Honors,

2     Matt Kline on behalf of DC Comics.

3          Chief Judge Kozinski, I wanted to address head

4     on one of your factual questions.

5          If you go to Page 1038 of the record, that's

6     Mr. Kim at the U.S. Attorney's Office, his letter to

7     Mr. Kendall.  It says, "In the event that you provide

8     these documents to the Government voluntarily" -- and

9     that's his word -- "this letter will serve to

10    memorialize the following.  First, Mr. Toberoff has

11    obtained all relevant permissions and consents needed,

12    if any, it provided the MT documents and related

13    information to the Government."

14         I see no way not to read that as a client

15    waiver.  They're saying to him, "Have you obtained all

16    the relevant permissions and consents necessary?"

17    JUDGE KOZINSKI:  No, no.  See, that's the nature of

18    things.  You know, a client can't plead guilty for a --

19    or a lawyer can't stand up in court and say, "My client

20    please guilty."  There's certain things only the client

21    can do because a lawyer can't waive the privilege for

22    the client.

23         And the question here is:  Where is the

24    client's action?

25         The fact that the lawyer stands up and says,

ORAL ARGUMENT - 2/7/2012

1    even explicitly, "Yes, I have a waiver from my client,"

2    I don't think that's enough.  I'm not aware of any case

3    where that's enough.  You actually need to have the

4    client waive the privilege.

5            And the fact that the lawyer purports to waive

6    the privilege or implicitly waived the privilege or

7    explicitly waives the privilege or says that the client

8    has waived the privilege, I'm not aware of any case law

9    that says that's enough.

10            Where -- where --

11    MATTHEW T. KLINE, ESQ.:  I would argue, your Honor,

12    under -- under the Bauman test, under the Cheney test

13    for governing risk, given this evidence, given the

14    representation by Mr. Toberoff to the Government in

15    producing these documents, that he obtained -- had

16    obtained all necessary consents, it would not be

17    appropriate to reverse that decision below.

18    JUDGE KOZINSKI:  It doesn't matter what he's

19    obtained, he has obtained consent.  The question is:

20    Where are the consents in the record?  And if -- I don't

21    know.  I'm just not aware of any cases that allow the

22    lawyer to waive the privilege on behalf of --

23            It is the client's privilege; right?

24    MATTHEW T. KLINE, ESQ.:  It is, but a client --

25    JUDGE KOZINSKI:  If the client says, "No, this

**EXHIBIT A**
**14**

ORAL ARGUMENT - 2/7/2012

1    privilege will not be waived," the lawyer can't stand up

2    and say, "Well, you know, I -- I'm going to do it

3    anyway"; right?

4        MATTHEW T. KLINE, ESQ.:  Correct.

5           Now, I think what happens here to Judge

6    Smith's -- Judge Smith's point, the subpoena says, "You

7    may withhold or redact any documents you wish."

8        JUDGE KOZINSKI:  Well, it doesn't actually say

9    that.  What it says is, "If," I mean, "you withheld or

10    redacted" --

11        MATTHEW T. KLINE, ESQ.:  Yes.

12        JUDGE KOZINSKI:  -- "you must make a list."

13        MATTHEW T. KLINE, ESQ.:  It gives you the

14    affirmative choice.  And what Judge Becker said in the

15    Westinghouse case, and I think this is right on point,

16    in Footnote 15 of that case, he said the following:

17    "A subpoena that allows the party to assert privilege,

18    to, you know, move to quash it, that is not an act of

19    compulsion."

20           And in Westinghouse what happened in fact was

21    the Government and Westinghouse reached a stipulated

22    protective order approved by a court there that said,

23    "Yes, this will not affect a broader waiver," and Judge

24    Becker in one of his typically learned opinions said,

25    "That's not compulsion.  That's voluntary."

ORAL ARGUMENT - 2/7/2012

Page 14

```
 1            And two key factual findings were made here by
 2     the District Court judge that I think needs to be given
 3     heavy deference, if not dispositive deference here.
 4            He first held that petitioners had voluntarily
 5     produced these documents.  What they should have done in
 6     his view is asserted privilege.  If the Government truly
 7     needed these documents -- and there's no showing here
 8     that the Government truly needed these documents.
 9            Why is that?  How do you prosecute a case like
10     this without the underlying documents?
11            You use the Timeline document, which itself
12     discloses privileged documents.
13            To your question, Judge Smith, several of the
14     documents have been now ordered compelled produced in
15     the case below and are available to the public because
16     they have not been in fact privileged, and many of the
17     privileged claims have been overruled and rejected by
18     the District Court.
19            Secondly, on the factual finding point --
20     JUDGE SMITH:  There's no reason to postpone any
21     final activity, in other words, to deny the mandamus?
22     MATTHEW T. KLINE, ESQ.:  Yes.  I think there's three
23     ways to go here, your Honor.  One is to make a summary
24     denial based on Mohawk.  The second is to -- and I think
25     to me there are two very good footnotes in Bittaker.
```

**EXHIBIT A**
**16**

ORAL ARGUMENT - 2/7/2012

```
 1    The first is yours, Chief Judge Kozinski.  The second is
 2    from Judge O'Scannlain's concurrence with Judge
 3    Rawlinson, which put petitioners on notice.  And this
 4    was very important in the Qwest case.  This was very
 5    point in the MIT case.  He put them on notice.  And I'm
 6    reading from Footnote 2 of Judge O'Scannlain's opinion.
 7    It says, "The mere fact that disclosure to the opposing
 8    counsel is made in confidence, i.e. under protective
 9    order, should not alter the status of the waiver" and
10    went through and cited the Westinghouse opinions and the
11    like.
12         The question here is whether it was reasonable
13    to expect Grand Jury secrecy, to expect a
14    confidentiality agreement would protect disclosures
15    otherwise here, and in light of the case law and what
16    Qwest says is -- and, you know, very capable counsel
17    there too, David Boies representing the company there --
18    it said, "When you're dealing with an area of the law
19    when there might be some disagreement" -- and there
20    hadn't been a clear ruling yet, as was the case here --
21    "we're going find waiver.  We're not going to allow
22    private parties to enter into these agreements with the
23    Government."
24    JUDGE KOZINSKI:  But there's a difference between
25    disclosing something to opposing counsel and disclosing
```

**EXHIBIT A**
**17**

ORAL ARGUMENT - 2/7/2012

1    something in response to an order, which a subpoena is,

2    and I'm just not sure whether you're required to assert

3    a claim of privilege in response to an order.

4         MATTHEW T. KLINE, ESQ.:  You are.  You're invited

5    to.  The subpoena invited them to assert claims of

6    privilege, as Judge Becker I think rightly held in the

7    Westinghouse opinion.  Again, it's a very scholarly

8    opinion.  He said, "Subpoenas all the time, yes, they

9    are a court order," but you are invited to say in

10   response to the subpoena, "Here are the documents I am

11   producing.  I am withholding the following 25

12   documents.  I'm going to give you fair notice with a

13   privilege log of what I'm withholding, and if you, the

14   requesting party, think that I've acted in an untoward

15   fashion, you may go out and get -- you may move to

16   compel the remainder of the production."

17        No subpoena that I'm aware of under the federal

18   civil rules or federal criminal rules requires any party

19   to produce documents that are otherwise privileged.  And

20   here clearly a choice was made.

21        I wanted to address another point that's made

22   throughout their reply brief and argument today, the

23   notion that there's a distinction between target and

24   victim cases.

25        To me one of the most instructive cases here is

**EXHIBIT A**
**18**

ORAL ARGUMENT - 2/7/2012

1    the McKesson case.  It was decided by the California

2    Court of Appeal.  And in the agreement that McKesson

3    made with the Government in that case, the Government

4    said, "You are not the target of the investigation," and

5    the reason for that was McKesson was saying, "One of our

6    subsidiaries acted in an untoward fashion.  The HBO

7    company beneath us, a subsidiary, they did all the bad

8    stuff.  We are here reporting their crimes to you, SEC.

9    Went to give you our documents."

10         And what the California Court of Appeal said

11    there, as has every other Court of Appeal to really give

12    this issue any attention, is that you cannot through an

13    agreement or otherwise effect anything other than a full

14    and broad waiver here.

15         We do think to your question, Judge

16    O'Scannlain, now that the parties have briefed the

17    issue, now that it's fully before this Court, and I

18    would look to a case like In Re Burlington as a good

19    example -- I'm sorry.  It's the Burlington case that

20    talks about the Bauman factors and the clear error test

21    and the third factor being dispositive.

22         One thing this Court could do is articulate

23    what the rules are here a little bit more clearly so

24    that there is not litigation in this area and so there

25    might be an instance to write a little bit more

ORAL ARGUMENT - 2/7/2012

```
 1    broadly.  But one could go either way.  There could be a
 2    summary denial or a more broad opinion.
 3        JUDGE KOZINSKI:  Let me get back to the -- to the
 4    first issue we're discussing.
 5            You know, in a normal case the interests of the
 6    client and the lawyer are aligned or the client doesn't
 7    have -- the lawyer doesn't have an interest that is
 8    different from that of the client.  But in this case it
 9    seems to me that Toberoff is the one who is -- who
10    wanted to have the prosecution go forward because he was
11    angry at what he thought was the guy who -- who --
12    what's his -- his associate who released the documents.
13    But that's not in the interest of the client.  I mean,
14    the client has interest in the confidentiality of the
15    documents and not a particular stake in whether or not
16    this particular -- the suspected releaser gets
17    punished.
18            And, again, I'm just wondering why it is enough
19    in both circumstances for the lawyer to provide the
20    documents without some sort of indication or some sort
21    of actual proof that the client consented?
22        MATTHEW T. KLINE, ESQ.:  Well, I think what's
23    interesting, your Honor, is that this has come up in
24    almost all of the cases.
25            And why is that?
```

ORAL ARGUMENT - 2/7/2012

Page 19

```
 1          Because companies are targets of these
 2     prosecutions, or in the case of McKesson, they say,
 3     "We're reporting bad deeds by these other people," and
 4     often times what they are doing is they are waiving both
 5     on behalf of themselves as the corporation but also on
 6     behalf of the executives who worked at the company, and
 7     there's a broader waiver effected when these documents
 8     are turned over.
 9          I also think Mr. Kim, if you read his --
10     JUDGE KOZINSKI:  But that is different, a
11     corporation waiving on behalf of its -- of its
12     principals or its directors and officers.  There's a
13     difference in a lawyer waiving on behalf of the client.
14     The -- the -- the attorney-client privilege is a
15     privilege or communication between the lawyer and the
16     client.  There's a spousal privilege.  You know, the --
17     one spouse can prevent the other spouse from speaking in
18     violation of the spousal privilege, even though the
19     other spouse wants to -- wants to -- wants to testify.
20     In the same way the client can keep the lawyer from
21     talking, even though the lawyer would -- you know, has
22     his own reasons for wanting to disclose information.
23     MATTHEW T. KLINE, ESQ.:  I think that's both true
24     and not true, but I think the most important -- and I'll
25     explain --
```

**EXHIBIT A**
**21**

ORAL ARGUMENT - 2/7/2012

```
1        JUDGE KOZINSKI:  I understand where it's true.

2             In which sense -- in which sense is it not

3    true?

4        MATTHEW T. KLINE, ESQ.:  It's not true in the

5    following sense, your Honor.  In a lot of these

6    corporate investigations there are these investigatory

7    teams that are going in and interviewing people and the

8    subject of the waiver is -- is some of these memorandum,

9    and in some -- and in these cases often times what is

10   the case is there is a lot of ambiguity about who is

11   having that conversation:  Is that a conversation that's

12   being had between the company's counsel and the private

13   individual?  Is that -- is that a conversation that's

14   happening between the chairman of the board in his

15   personal capacity?  There's a lot of ambiguity there.

16   And despite that ambiguity, the courts have universally

17   held that there's a broader waiver.

18             More practically in looking at the record in

19   this case, your Honor, I think that's exactly why

20   Mr. Kim in his letter was very careful.  It's the first

21   point he makes.  He says, "I want to be very clear.

22   This is a voluntary production."  That's his word, even

23   though he's attaching a subpoena or a subpoena is coming

24   out a couple days before.  Mr. Kline -- not this

25   Mr. Kline but another Mr. Kline -- sends out the
```

ORAL ARGUMENT - 2/7/2012

```
 1   subpoena.  Mr. Kim sends a letter a few days later,

 2   "Your production is voluntary."  He confirms that:

 3   "You wish to produce these documents."  And the first

 4   thing he asks them to confirm -- and Mr. Kendall doesn't

 5   dispute it in his letter seven days later -- "You have

 6   obtained all of the relevant consents."

 7          Now, did Mr. Kim require them to have an

 8   affidavit under oath, to have a plea colloquy in the

 9   same way you would in a criminal case?

10          No.  But I don't think there's any scintilla of

11   evidence here that the client consents were not

12   obtained.  Otherwise, I doubt that the Mr. Kendall was

13   misrepresenting that; I doubt that Mr. Toberoff was

14   misrepresenting that he had obtained those consents.

15   There's not a -- there's not a scintilla of evidence,

16   your Honor, that the clients had not given those

17   consents.  And to the -- to the exact contrary, Mr. Kim

18   was very careful and said, "Please confirm for me.  This

19   memorializes our understanding.  You have obtained their

20   consents."

21          And Mr. Kendall didn't come back and say, "No,

22   no, no, no.  The reason I'm here is I'm representing

23   Toberoff individually.  Toberoff represents the Siegels

24   separately.  And I only consent as to him.  We don't

25   consent as to the heirs and it's their attorney-client
```

**EXHIBIT A**
**23**

ORAL ARGUMENT - 2/7/2012

```
 1    privilege to waive."  There's no record of that.
 2         JUDGE KOZINSKI:  Well, all these are fair inferences
 3    if the lawyer can do that.  I'm just -- one thing with
 4    authority here is that the lawyer can do that, can
 5    represent that the client waived without -- without an
 6    actual statement from the client.
 7         MATTHEW T. KLINE, ESQ.:  I'm unaware --
 8              I'm sorry to interrupt you, your Honor.
 9              I'm unaware of any one of the cases that even
10    though that you had the lawyers negotiating these
11    agreements with the DOJ, any one of these cases that
12    say, "We're also going to require that the client
13    themselves submit some type of affidavit, that the
14    client themselves submits some sort of proof here."  I'm
15    unaware of any one of the cases saying, "We're going to
16    add that had extra hurdle, that extra bar to find
17    waiver."
18              Every one of these cases, I mean --
19         JUDGE KOZINSKI:  I understand.  But you're also not
20    aware of any case that says -- that discusses the issue
21    and says, "It's enough for the lawyer to say it.  You
22    don't need a statement from the client."
23         MATTHEW T. KLINE, ESQ.:  I'm not sitting here
24    before, your Honor -- I'd love to go back and read all
25    the cases again, but I'm just not aware of --
```

**EXHIBIT A**
**24**

ORAL ARGUMENT - 2/7/2012

```
 1        JUDGE KOZINSKI:  I know.  It's just --
 2        MATTHEW T. KLINE, ESQ.:  Believe me, it's been
 3   enjoyable to read them again.
 4            (Laughter.)
 5        MATTHEW T. KLINE, ESQ.:  Any time I get to read a
 6   Judge Becker opinion, I'm a happy man.
 7            But I think that that's not a fair --
 8        JUDGE KOZINSKI:  Judge Becker doesn't talk about it
 9   in his opinion.
10        MATTHEW T. KLINE, ESQ.:  No, he doesn't, but what he
11   talks about very clearly is that the company and the DOJ
12   had gone in to a District Court judge and gotten a
13   protective order, and he said, "That's not enough."
14            And the company said, "Well, hold on.  We're
15   under the compulsion of a subpoena."
16            And they said, "That's not enough."  He said
17   "That's not enough."
18            And, you know, I'm not aware -- I mean, it's a
19   long opinion.  We all know how he loves to write
20   footnotes.  There's no footnote in there saying, you
21   know, "And by the way, in future cases I'm going to
22   require that the client himself, you know, stand up and
23   swear under oath that he too has agreed to the
24   consent."
25        JUDGE KOZINSKI:  But there's not a footnote saying,
```

**EXHIBIT A**
**25**

ORAL ARGUMENT - 2/7/2012

Page 24

1    "It's enough if the lawyer says it."

2         MATTHEW T. KLINE, ESQ.:  That is correct, your

3    Honor, but there's not any factual evidence in this

4    record to draw any contrary inference to the one

5    Judge Zarefsky drew here, which was that if you read

6    his factual conclusions, and I think those are

7    dispositive, and I don't want to get you the wrong page

8    of the record, but in his opinion he said, "You made a

9    choice.  This was voluntary," and he doesn't distinguish

10   between Toberoff and the other defendants in the case.

11   And I don't think that one can upset that factual

12   finding under --

13        JUDGE KOZINSKI:  You're saying that's a factual

14   finding about what the client did?

15        MATTHEW T. KLINE, ESQ.:  I do, I think because the

16   motion was filed against --

17        JUDGE KOZINSKI:  I'm sorry.  What exactly is the

18   finding?

19        MATTHEW T. KLINE, ESQ.:  He makes a finding over two

20   pages in his opinion.  I'll point you to the pages.

21        JUDGE KOZINSKI:  You're going to point to the page?

22        MATTHEW T. KLINE, ESQ.:  I do, your Honor.  It's

23   Pages 1482 to 1483 of the record.

24        JUDGE KOZINSKI:  Why don't you talk about lines, you

25   know, sort of like --

**EXHIBIT A**
**26**

ORAL ARGUMENT - 2/7/2012

1        MATTHEW T. KLINE, ESQ.:  Absolutely.

2        JUDGE KOZINSKI:  Where is it?

3        MATTHEW T. KLINE, ESQ.:  He starts off with a

4    discussion of the Bittaker case, maybe not the en banc

5    version of it, but the Bittaker case on page --

6        JUDGE KOZINSKI:  You don't have to give me a guided

7    tour.  Just tell me where the finding is.  I don't -- I

8    don't need a narrative.  Just give a page and a line.

9        MATTHEW T. KLINE, ESQ.:  The closest -- I'm sorry.

10    I would look at Page 1482 of the record --

11        JUDGE KOZINSKI:  Okay.

12        MATTHEW T. KLINE, ESQ.:  -- starting at Line 11 and

13    I would read through the next page to Line 2.

14        JUDGE KOZINSKI:  You have to read all of that to

15    find it?

16            Where is the finding that the client waived?

17        MATTHEW T. KLINE, ESQ.:  Your Honor, I'm not saying

18    that he made an express finding.

19        JUDGE KOZINSKI:  Implicitly.  I mean, just tell me

20    where -- where it is that we find it here.

21        MATTHEW T. KLINE, ESQ.:  He says --

22        JUDGE KOZINSKI:  Just give me explicitly.  You know,

23    how close does he come?

24        MATTHEW T. KLINE, ESQ.:  I'd be happy to.  I'm

25    sorry, your Honor.  The pressure of your questioning is

ORAL ARGUMENT - 2/7/2012

```
 1    throwing me off a tiny bit.  If you'd just give me one

 2    second, I promise I'll tell you.

 3         JUDGE KOZINSKI:  I'll say nothing.  You just --

 4         MATTHEW T. KLINE, ESQ.:  Thank you so much.

 5         JUDGE KOZINSKI:  You just read and find it.

 6         MATTHEW T. KLINE, ESQ.:  Okay.  He says in Line 15,

 7    "Express waiver" --

 8         JUDGE KOZINSKI:  It does?

 9         MATTHEW T. KLINE, ESQ.:  That's -- I'm going to --

10    there's two parts to it.  There's actually a syllogism

11    here that I want to walk you through, if that's okay.

12         JUDGE KOZINSKI:  Sure.

13         MATTHEW T. KLINE, ESQ.:  He says, "Express waiver

14    result from voluntary actions" --

15         JUDGE KOZINSKI:  Okay.  Line 15 --

16         MATTHEW T. KLINE, ESQ.:  Page 1482, your Honor.

17         JUDGE KOZINSKI:  There's a sentence there that says

18    "The Ninth circuit has analyzed."

19         MATTHEW T. KLINE, ESQ.:  That's 14--

20         JUDGE KOZINSKI:  "Essentially" --

21         JUDGE O'SCANNLAIN:  That's on 14.

22         JUDGE SMITH:  It says at 15.

23         JUDGE KOZINSKI:  So you're looking at the sentence

24    that starts "Essentially"?

25         MATTHEW T. KLINE, ESQ.:  Yes, your Honor.
```

ORAL ARGUMENT - 2/7/2012

```
 1        JUDGE KOZINSKI:  Okay.  You started reading in the
 2   middle of the sentence.
 3        MATTHEW T. KLINE, ESQ.:  I apologize.
 4        JUDGE KOZINSKI:  Okay.  I was just looking for the
 5   start.  That's fine.
 6        MATTHEW T. KLINE, ESQ.:  "Essentially express waiver
 7   results from voluntary actions by the attorney or
 8   client."  So that's the legal --
 9        JUDGE KOZINSKI:  He is wrong on that.  It is not "or
10   client."  It has to be the client.  The lawyer himself
11   cannot waive.
12            Isn't he simply wrong when he says "attorney or
13   client"?
14            "Attorney or client" means either the attorney
15   alone or the client alone.
16        MATTHEW T. KLINE, ESQ.:  I don't think that's fair,
17   your Honor.  I think that attorneys all the time act as
18   agents for their clients.
19        JUDGE KOZINSKI:  I'm asking you a question.
20            Is -- if he had just said "attorney" and just
21   not "client," he would be wrong on that?
22        MATTHEW T. KLINE, ESQ.:  I disagree because I think
23   attorneys act for agents for clients all the time and
24   are able to make representations for those clients.
25   Attorneys sign settlement agreements for clients all the
```

ORAL ARGUMENT – 2/7/2012

Page 28

```
 1    time.  Attorneys sign protective orders on behalf of
 2    their clients.  It happens all the time.  Attorneys act
 3    as agents and representatives.
 4         I'm standing here not in my own capacity as an
 5    attorney.  I'm standing here representing my client and
 6    I'm telling what you their positions are.  And in the
 7    course of litigation I am asked all the time, "Do you
 8    concede this point?"  "Yes, I do."  "Does DC Comics
 9    stipulate to this fact?"  "Yes, it does."
10         JUDGE KOZINSKI:  Well, there's lots of stuff --
11    there's lots of stuff that lawyers can do without
12    obtaining the lawyer -- the client's consent.
13         MATTHEW T. KLINE, ESQ.:  Correct.
14         JUDGE KOZINSKI:  There's lots of stuff.  Okay.
15         Waiving attorney-client privilege is not one of
16    them.  If the lawyer can do it at all without an actual
17    statement from a client is something that he has to act
18    on behalf of the client.
19         MATTHEW T. KLINE, ESQ.:  I agree with you.
20         JUDGE KOZINSKI:  It has to be the client's waiver
21    not the lawyer's waiver.
22         MATTHEW T. KLINE, ESQ.:  I agree with you.  The --
23         JUDGE KOZINSKI:  So far as this suggested the
24    attorney can do it on his own, it's wrong.
25         MATTHEW T. KLINE, ESQ.:  I don't think it suggested
```

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277          www.merrillcorp.com/law

ORAL ARGUMENT - 2/7/2012

Page 29

```
 1    he can do it on his own.  I think it assumes, as did

 2    Mr. Kim -- and the District Court had Mr. Kim's letter

 3    in front of him.  It was one of those crucial pieces of

 4    evidence here -- he can make the assumption, as I think

 5    any reasonable person could, when Mr. Kim says, "You

 6    have represented to me you obtained this consent."

 7        JUDGE KOZINSKI:  So if we read this, we should read

 8    this, "Express waiver results from voluntary action of

 9    the attorney on behalf of the client" --

10        MATTHEW T. KLINE, ESQ.:  Correct.

11        JUDGE KOZINSKI:  -- "or the client himself."

12        MATTHEW T. KLINE, ESQ.:  Correct.

13        JUDGE KOZINSKI:  That's really what --

14        MATTHEW T. KLINE, ESQ.:  Correct.  If an attorney --

15        JUDGE KOZINSKI:  Go ahead.

16            And where does he find that?

17        MATTHEW T. KLINE, ESQ.:  He finds in the next

18    paragraph --

19        JUDGE KOZINSKI:  I'm sorry.  Are you done with that

20    sentence?

21        MATTHEW T. KLINE, ESQ.:  I am, your Honor.

22        JUDGE KOZINSKI:  Okay.

23        MATTHEW T. KLINE, ESQ.:  He contrasts that with

24    limited waiver in that paragraph.

25        JUDGE KOZINSKI:  Okay.  Keep going.
```

**EXHIBIT A**
**31**

ORAL ARGUMENT - 2/7/2012

```
 1          Then where does he actually find they waived?
 2      MATTHEW T. KLINE, ESQ.:  I want to start at par- --
 3  at Line 23, if that's okay.
 4      JUDGE KOZINSKI:  Sure.
 5      MATTHEW T. KLINE, ESQ.:  "The closest the defendants
 6  come to fitting within this fact pattern" -- he's
 7  talking about involuntary waivers or limited waivers --
 8  "is that they responded to a Grand Jury subpoena.
 9  While a Grand Jury subpoena is in fact an order,
10  nevertheless, it did not and could not compel the
11  production of properly privileged material.  Defendants
12  could have responded to the subpoena by standing on the
13  privilege.  The Government then would have the choice of
14  whether to move to compel, and if it had successfully
15  moved to compel, the defendants would have a stronger
16  argument that they had not expressly waived the
17  privilege."
18          Now, he equates "express" with "voluntary."
19  That's why I started with that sentence where I read in
20  the middle of that.  And I apologize for starting in the
21  middle of the sentence.  But what he's saying here is,
22  "You made a voluntary waiver."  The subpoen- --
23  subpoenas, yes, they are, come with the force of a court
24  order.  So do all sorts of discovery responses.  But you
25  are permitted to stand on your objections, as they were
```

**EXHIBIT A**
**32**

ORAL ARGUMENT - 2/7/2012

Page 31

```
 1    here, as they were invited to here by the subpoena.

 2              And Mr. Kim, remember, they get the subpoena --

 3        JUDGE KOZINSKI:  Just so I understand, the lines

 4    you've read, what you would like us to read them, and

 5    it's maybe a fair reading.  I just want to understand

 6    it.

 7        MATTHEW T. KLINE, ESQ.:  Can I get some water as you

 8    ask?  Is that okay?

 9        JUDGE KOZINSKI:  Sure, if you can listen while

10    getting water.

11        MATTHEW T. KLINE, ESQ.:  I can.  I'm sorry.

12        JUDGE KOZINSKI:  But what you want us to read that

13    as being a finding -- an implicit finding, albeit that's

14    a finding that the things that the lawyer did here were

15    with express consent of the client?

16        MATTHEW T. KLINE, ESQ.:  I absolutely do, your

17    Honor.  And I think when Mr. Kim asked Mr. Kendall, as a

18    former AUSA himself and one of the finest lawyers in

19    town, when he asks him, "The first condition of this

20    agreement that we're entering into is, one, that you're

21    voluntarily producing these documents, and, two, all

22    proper consents have been obtained," I think it's

23    impossible to reach any contrary finding.

24              Now, if it's later revealed that the -- that

25    the clients themselves -- and no evidence of this has
```

**EXHIBIT A**
**33**

ORAL ARGUMENT - 2/7/2012

 1    emerged -- that they find some other lawyer, and they

 2    say, "No, no, no, no.  Toberoff never disclosed it to

 3    us.  He never got our consents," well, then that's going

 4    to have to be hashed out in some action against him.

 5    But here all the evidence is that they obtained this

 6    consent.  And Mr. Kim, it's the first condition of this

 7    agreement that he's talking about.  He says, "Represent

 8    to me that you've got all the appropriate consents and

 9    assents," and he doesn't say it to Mr. Kendall.  He

10    says, "Tell me that Toberoff got them," and the only

11    people that he would have -- I mean, the only people

12    that he could possibly --

13        JUDGE KOZINSKI:  I understand the chain of logic.

14    But these are the lines that you say are the finding

15    that we need to refer to.  I mean, I just want to

16    understand.

17        MATTHEW T. KLINE, ESQ.:  I absolutely think those

18    are the lines.

19        JUDGE KOZINSKI:  Okay.

20            You're way over your time.  Thank you.

21        MATTHEW T. KLINE, ESQ.:  Thank you for indulging me,

22    your Honor.

23        RICHARD B. KENDALL, ESQ.:  Your Honor, the

24    appropriate time for us to have sought a protective

25    order would have been in the event the Grand Jury

**EXHIBIT A**
**34**

ORAL ARGUMENT - 2/7/2012

Page 33

```
 1    returned an indictment.  It was premature to do it while
 2    we were under Grand Jury secrecy.  There was no need to
 3    do it at that time.  The Grand Jury secrecy was a
 4    complete protection.
 5           Secondly, on the Mohawk point, there is a
 6    post-Mohawk decision in this circuit, the Perry
 7    case --
 8       JUDGE KOZINSKI:  Why is Grand Jury secrecy enough?
 9       RICHARD B. KENDALL, ESQ.:  I'm sorry.
10       JUDGE KOZINSKI:  Why do you claim that Grand Jury
11    secrecy is enough?
12       RICHARD B. KENDALL, ESQ.:  In the same way that
13    Judge Burns' order in the Bittaker case protected
14    against disclosure of the documents in any other
15    proceeding, not only does the Grand Jury secrecy rule do
16    that, it also protects against any disclosure to any
17    persons other than the Grand Jury, Government agents --
18       JUDGE KOZINSKI:  Well, but it is a disclosure to the
19    Grand Jury.  The Grand Jury is not a part of the
20    privilege.  It is a third-party.  So if you turn them
21    over without a resolution of the -- of the privilege
22    claim, why haven't you waived it?
23           I mean, these are people who are not parties to
24    the -- sure, they won't tell anybody else, but you are
25    in fact disclosing it to third parties.
```

**EXHIBIT A**
**35**

ORAL ARGUMENT - 2/7/2012

```
 1         RICHARD B. KENDALL, ESQ.:  Correct.  And I think
 2    that argument proves too much, however, your Honor, and
 3    the reason is, when you disclose to the District Court
 4    in the Bittaker case and to the jurors and in fact in
 5    open court in that case or you disclose through a court
 6    for in camera review, you're also disclosing to third
 7    parties, and ultimately --
 8         JUDGE KOZINSKI:  No.  The difference is at that
 9    point you've asserted the privilege and you turn it over
10    subject to an assertion of a privilege.
11         RICHARD B. KENDALL, ESQ.:  Well, let's --
12         JUDGE KOZINSKI:  In this case you have not.  You've
13    turned -- I mean, there was a compulsion to turn it
14    over.  You know, you -- you -- you don't turn it over
15    and say, "Well, we asserted the privilege.  We don't
16    want you to look at it."
17         RICHARD B. KENDALL, ESQ.:  Well, your Honor, the
18    letters are replete with our assertions of the
19    privilege.  I did everything I could short of refusing
20    to disclose the corpus delicti of the crime.  I asserted
21    the privilege every which way before the Grand Jury in
22    the form of seeking Grand Jury secrecy from the
23    Government.  My letters over and over assert the
24    privilege and seek confidentiality and assert the
25    common-interest privilege as well.  So you cannot
```

ORAL ARGUMENT - 2/7/2012

1    possibly say that we did not assert the privilege.  Plus

2    this entire crime was the theft of privileged

3    documents.  That's what this whole thing is about.

4        JUDGE KOZINSKI:  You did not comply with the

5    procedures that the subpoena provides for, say, a

6    privilege which to make a -- an index and actually

7    withhold the --

8        RICHARD B. KENDALL, ESQ.:  That's -- that's true,

9    your Honor.

10            But why did we not do that?

11            If we had done that, we would not have been

12    able to provide --

13        JUDGE KOZINSKI:  Well, let me ask you the prior

14    question.

15            Why do I care why you haven't done it?

16        RICHARD B. KENDALL, ESQ.:  The reason you care --

17        JUDGE KOZINSKI:  The point is, you didn't do it.

18        RICHARD B. KENDALL, ESQ.:  The reason you care, your

19    Honor, is that it would be a perversion of policy to say

20    that when the object of the crime is the theft of

21    privileged documents to turn them over to the litigation

22    adversary that the only way the crime can be

23    investigated is to let the criminal and the recipient of

24    the property achieve their objectives.  That -- that

25    is --

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277              www.merrillcorp.com/law

**EXHIBIT A**
**37**

ORAL ARGUMENT - 2/7/2012

Page 36

```
 1        JUDGE KOZINSKI:  I have no idea what you just said.

 2           Why is what is making an index and claiming a

 3     privilege saying, "Look.  These are the index of the

 4     documents and these are the ones that are privileged,"

 5     how does that defeat the --

 6        RICHARD B. KENDALL, ESQ.:  Because the purpose of a

 7     privilege log is that you don't give the documents that

 8     are logged.

 9           There -- there was no need to individually log

10     the documents because they had already been asserted in

11     toto to the U.S. Attorney as privileged documents.

12     There was no question between us and the United States

13     Attorney and the Grand Jury as to whether the documents

14     were privileged.  There were two letters to that

15     effect.

16        JUDGE KOZINSKI:  Okay.  Thank you.

17           The case as argued will stand submitted.

18                       ---0---

19

20

21

22

23

24

25
```

**EXHIBIT A**
**38**

ORAL ARGUMENT - 2/7/2012

Page 37

```
 1              C E R T I F I C A T E

 2

 3          I, Melanie M. Faulconer, certify

 4      that the foregoing transcript is a true

 5      record of said proceedings, that I am not

 6      connected by blood or marriage with any of

 7      the parties herein, nor interested directly

 8      or indirectly in the matter in controversy,

 9      nor am I in the employ of counsel.

10              I have hereunto subscribed my name

11      this 9th day of February, 2012.

12

13                     Autumn Berry on behalf of Melanie Faulconer

14                     MELANIE M. FAULCONER

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT A**
**39**

# EXHIBIT B

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

February 24, 2012

OUR FILE NUMBER
905,900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6707

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

> Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

    We had difficulty personally serving you with our February 17, 2012, discovery responses because the address you provided to us and the Court as your place of business and that is listed on your California Bar website entry appears to be the former location of "Mailboxes, Business & Shipping Center," a company that apparently moved on January 27, 2012. The Local Rules require that you keep the Court and parties apprised of your current "office address (or residence address if no office is maintained)," C.D. Cal. L. R. 83-2.7, 11-3.8; *see also* CAL. BUS. & PROF. CODE § 6002.1; California State Bar Rule 2.3, in part, so that service may be easily effectuated. Please immediately notify us of the address where you can be personally served.

                            Very truly yours,

                            /s/ Jason H. Tokoro

                            Jason H. Tokoro
                            for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Matthew T. Kline, Esq.
       Richard Kendall, Esq.

**EXHIBIT B**
**40**

# EXHIBIT C



## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

February 28, 2012

WRITER'S DIRECT DIAL
(310) 246-6703

**VIA EMAIL**

WRITER'S E-MAIL ADDRESS
cseto@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265

> **Re:**    <u>*DC Comics v. Pacific Pictures Corp. et al.*</u><u>, CV-10-3633 (ODW) (RZx)</u>

Dear Counsel:

At the February 13, 2012 hearing on DC's Motion for Leave to Conduct Further Deposition of Dawn Peavy, Magistrate Zarefsky ordered defendants to "notify DC Comics' counsel within 14 days of today of a suitable time and location [for Ms. Peavy's deposition]. Otherwise, they get to set the time and date -- time and location." Feb. 13, 2012 Hr'g Tr. at 8:15-19. Defendants' 14-day deadline passed yesterday. On February 24, at your request, we proposed five possible weekend days for deposing Ms. Peavy in Los Angeles, but received no response. We therefore give notice that we will be deposing Ms. Peavy at The Rothstein Law Firm, 1215 Paseo de Peralta, Santa Fe, New Mexico, on Saturday, April 14 or Sunday, April 15, whichever day is more convenient for Ms. Peavy.

Also, we have not yet received a response to my February 24, 2012 letter requesting that you notify us of your current "office address (or residence address if no office is maintained)," in accordance with the Local Rules as well as the California state bar requirements. C.D. Cal. L. R. 83-2.7, 11-3.8; Cal. Bus. & Prof. Code § 6002.1; California State Bar Rule 2.3. Please immediately notify us of the address where you can be personally served.

Very truly yours,

/s/ Cassandra Seto

Cassandra Seto
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Matthew T. Kline, Esq.
       Richard Kendall, Esq.

**EXHIBIT C**
**41**

# EXHIBIT D

**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Wednesday, February 29, 2012 6:19 PM
**To:** Seto, Cassandra
**Subject:** DC v. PPC - Address for Service of Process

Counsel:

Please be advised that MBSC, located at 22337 Pacific Coast Highway, Malibu, California 90265, is irrevocably authorized to accept personal service on behalf of Mr. Toberoff as his agent.

Keith G. Adams
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com
http://www.ipwla.com

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**EXHIBIT D**
**42**