DANIEL M. PETROCELLI (S.B. #097802)
dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone: (845) 265-2820
Facsimile: (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DC COMICS,

Plaintiff,

v.

PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,

Defendants.

Case No. CV 10-3633 ODW (RZx)

**DISCOVERY MATTER**

**DC COMICS' NOTICE OF MOTION AND MOTION TO ENFORCE THE COURT'S FEBRUARY 13, 2012, ORDER**

DECLARATIONS OF JASON H. TOKORO AND CASSANDRA SETO, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH

**Judge**: Hon. Otis D. Wright II
**Magistrate**: Hon. Ralph Zarefsky

**Hearing Date**: May 21, 2012
**Hearing Time**: 10:00 a.m.
**Courtroom**: 540

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 21, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, California in Courtroom 540, plaintiff DC Comics will and hereby does move the Court to enforce its February 13, 2012, order (Docket No. 377) and compel defendants to produce to DC all documents showing the capitalization of defendants Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC.

This motion is made pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure and Rule 37-2 of the Local Rules of this Court on the grounds that defendants refuse to make a complete production of capitalization documents in response to DC Comics' Document Requests 56(f) and (g), which the Court enforced in its February 13 order.

Pursuant to Local Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court. Pursuant to Central District Local Rule 37-2.4, and as explained in the Declaration of Cassandra Seto filed concurrently herewith, DC is forced to submit this as a motion rather than a joint stipulation because defendants have improperly refused to provide their opposition in a timely manner in accordance with Local Rule 37-2.2.

This motion is based on this Notice of Motion and Motion; DC Comics' portion of the accompanying Joint Stipulation Regarding DC Comics' Motion To Enforce The Court's February 13, 2012, Order; the accompanying Declaration of Jason H. Tokoro and exhibits in support thereof; any supplemental memoranda that may be filed pursuant to Local Rule 37; all exhibits, files, and records on file in this action; matters of which judicial notice may be taken; and such additional

submissions and argument as may be presented at or before the hearing on this motion.

Dated: April 26, 2012

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

# I. INTRODUCTION

In contravention of the Court's February 13, 2012, order, defendants refuse to produce "documents showing [their] capital accounts" in response to DC's Document Requests 56, 57, and 58, sub-parts (f) and (g). Instead, defendants produced 10 random bank statements (Pacific Pictures: Feb. 2003, Oct. & Nov. 2008; IP Worldwide, LLC: May 2002, Mar. 2003, Feb. 2006, and Feb. 2012; IPW, LLC: July 2004, Apr. 2010, Feb. 2012)—which give no indication (a) who capitalized the companies; (b) when or how; (c) what capital contributions were withdrawn or why; (d) whether the capital contributions (or the money in the bank accounts) were encumbered by debt or other obligations; or (e) whether or how these companies commingled assets.

Defendants insist that these 10 bank statements suffice to meet their burden under the Court's February 13 order, but when DC pressed, defendants said they would produce *initial* capitalization records for IP Worldwide and IPW as well, but *only if* DC waived its right to seek documents from defendants showing how their capitalization changed over time. DC's document requests, which the Court upheld, were not limited to *initial* capitalization records or to just two of the three corporate defendants. Rather, DC's requests were aimed at all three companies and specifically requested documents showing how their capitalization "change[d]" over time. The case law is clear: the alter-ego test focuses *not only* on a companies' capitalization over its *lifetime*, but in particular at the time of the alleged torts at issue here, which span several years. Defendants' offer not only reveals that they are withholding additional, relevant documents, but it also purposefully excludes important evidence, such as when and how stakeholders like Bruce Karsh and Ari Emanuel invested in Toberoff's companies and withdrew from those investments.

## II. STATEMENT OF ISSUES IN DISPUTE

1. The Court's Order: On February 13, 2012, the Court ordered defendants to produce documents responsive to DC's requests 56, 57, and 58, sub-parts (f) and (g), holding that:

> THE COURT: As I see it, we're looking at three sets of requests. The first is as to request 56 and 57 and 58. Sub-parts A through E appear to have been responded to and the motion is denied as to them. Sub-parts F and G concerning capital structure, the motion is granted limited to documents showing capital accounts, if any such documents exist.

Docket Nos. 382 at 19:8-14; 377. DC's requests sought:

> 56[, 57, and 58](f): All DOCUMENTS reflecting [Pacific Pictures Corporation's, IP Worldwide, LLC's, or IPW, LLC's] *initial capital structure*, including capital tables or other DOCUMENTS reflecting capital accounts or capital structure.
>
> 56[, 57, and 58](g): All DOCUMENTS reflecting *any change in* [the companies'] *capital structure*, including capital tables or other DOCUMENTS reflecting capital accounts or capital structure.

Docket No. 361 at 35-42 (emphasis added).

At the February 13 hearing, defendants asked the Court to clarify its order, which prompted the following exchange:

> MR. TOBEROFF: I have one question regarding -- regarding the production of documents as to capital accounts. I honest would like to have some clarification as to what that would entail to show --
>
> THE COURT: I don't know. I haven't seen any documents, Mr. Toberoff.
>
> MR. TOBEROFF: No, I mean -- I mean, just take any corporation. Does that mean every bank statement that the company has ever had since the beginning of existence or just show that the [company] was capitalized initially, and how it's capitalized currently. I just [don't] know what it means.
>
> THE COURT: Well, I'm in a vacuum. And I'm not about to sit down with the documents myself. *I have seen corporate documents where, you know, there is a spreadsheet and it shows who has put in what capital, that sort of thing.*
>
> But I don't want to box myself in not knowing what documents exist. I wouldn't think check stubs normally would fall within that, but I don't know. I don't know what exists. But I would think that there -- *it would not surprise me if there was some document which indicated who capitalized and in what amounts and what.*

When I was in the partnership, and, you know, you probably are in a law partnership. I don't [know] the exact nature of your business right now, but *each partner had a capital account. And we knew which partners had put in which amount of capital. It may be different for these companies. I don't know.*

MR. TOBEROFF: I guess to a certain degree the production here -- naturally, when we're looking at the production we're trying to tailor the production to the claims that have been made in the case. And, so, when it comes to, you know, capital accounts of companies that have long been dissolved or -- I just don't --

THE COURT: If you don't have the documents then that's easy enough to say. … If the documents exist, then I think you need to produce them.

MR. TOBEROFF: Not only -- they're documents that we don't have. And then the other question is what -- how does this relate to this case.

THE COURT: *We're past that part.*

Docket No. 382 at 60:9-62:1 (emphasis added).

2. Defendants' Production. On March 16, defendants produced 10 random bank statements for the Toberoff companies—which have gaps of five or six years between several statements. Declaration of Jason H. Tokoro ("Tokoro Decl.") Ex. A at 3-19.[1] Defendants did not make a complete production of every *monthly* bank statement in their possession, custody or control—never representing that these are all the banking (or other fiscal) records that defendants maintain or possess, failing to preserve bank statements they have received since the start of this case, and declining to ask their respective banks for further records the banks maintain. Tokoro Decl. ¶ 4 & Exs. B at 20-22, C at 24-25.

DC pressed defendants to comply with the Court's order and produce capital account records relevant to DC's alter-ego claims and the capitalization test that is at the heart of that inquiry. *Id*. Ex. D. Defendants refused, arguing the production of the 10 bank statements "is fully responsive to the [February 13] Order" because

---

[1] Pacific Pictures Corporation: Bank of America Statements from Feb. 11, 2003, Oct. 31, 2008, and Nov. 28, 2008; IP Worldwide, LLC: City National Bank Statements from May 31, 2002, Mar. 31, 2003; Feb. 28, 2006, and Feb. 29, 2012; and, IPW, LLC: Bank of America Statements from July 30, 2004, Apr. 30, 2010, and Feb. 29, 2012.

Defendants marked the 10 bank statements "Confidential," so out of courtesy, DC has filed them under seal. Defendants still refuse to agree to a protective order in this case.

"the first and most recent bank statements [they produced] show[] that such entities held separate bank accounts over a significant period of time" and "show the earliest available capital accounts for all three entities." *Id.* Ex. C at 25. Defendants' representations regarding the import of the bank statements produced are untrue. At least as to defendant Pacific Pictures Corporation, defendants did not produce any statement reflecting the company's initial capitalization—Pacific Pictures was purportedly incorporated in August 1988, while the earliest statement produced for the production company is from February 2003, over four years later. *Compare* Tokoro Decl. Ex. A at 15, *with id.* Ex. E at 29.

3. What DC Seeks And Is Entitled To. The 10 bank statements selectively disclosed by defendants do not satisfy defendants' obligations under the Court's February 13 order or the applicable alter-ego discovery case law.

It is well-established that in evaluating capitalization where alter-ego claims are asserted, courts consider numerous categories of documents expected to be maintained by companies respecting corporate formalities, including without limitation: formation documents establishing capital structure, such as corporate charters and bylaws; books and records reflecting capital contributions, capital withdrawals, and the capital accounts held by investors or shareholders; shareholder or investor agreements; stock certificates, stock ledgers, and documents reflecting the issuance or transfer of stock; financial records such as general ledgers, balance sheets, annual reports, tax returns, and Schedule K-1 forms; documents reflecting loans or other debt incurred; tax records; documents reflecting transactions or the transfer of assets between the related companies; and insurance contracts. *E.g., Sonora Diamond Corp v. Super. Ct.*, 83 Cal. App. 4th 523, 547-48 (2000) (corporate books and records, intercompany loan documents, money transfers between the companies' bank accounts, and financial records accounting for asset sales); *Assoc. Vendors, Inc. v. Oakland Meat Co, Inc.*, 210 Cal. App. 2d 825, 838-41 (1962) (corporate books and records, issuance of stock, disbursement checks,

and bank account statements); *Goldberg v. Engelberg*, 34 Cal. App. 2d 10, 12 (1939) (corporate books and records, checks, and deed transferring company asset).[2] Defendants have produced none of these documents, nor have they stated whether such records exist.

DC seeks and is entitled to discover, among other things, who contributed capital to the companies and in what amounts; how the capital was treated (debt or equity) and whether it was withdrawn; what debt or loans were obtained and during what time; assets acquired, their value, and when or if they were encumbered or transferred; whether transactions occurred among the companies, and whether the capitalization of each company was commingled and treated as Toberoff's play thing, without proper formalities being observed. *E.g.*, *id.*; *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4916964, at *11-12 (C.D. Cal. May 7, 2007); *21X Capital Ltd. v. Werra*, 2008 WL 131918, at *1 (N.D. Cal. Jan. 11, 2008).

Defendants admit that Ari Emanuel, formerly of Endeavor, contributed capital to defendant IP Worldwide, LLC, and held an ownership interest in the company. *E.g.*, Docket No. 367 at 9 ("[T]he only individuals other than Mr. Toberoff who held or hold an interest in any of the Corporate Defendants are Mr.

[2] *See also*, *e.g.*, *Riddle v. Leuschner*, 51 Cal. 2d 574, 581-82 (1959) (stock issued by company and internal records showing intermingling of assets of the related companies); *Stark v. Coker*, 20 Cal. 2d 839, 846-47 (1942) (stock issued by company and internal books and records); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1284 & n.12 (1994) (annual report reflecting financial transactions); *Inst. of Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*, 116 Cal. App. 3d 111, 119-20 (1981) (stock issued by company, stock books of related companies, and consolidated financial statements); *TWM Homes, Inc. v. Atherwood Realty & Inv. Co.*, 214 Cal. App. 2d 826, 852 (1963) (bank account records, company balance sheet, and books and records of corporate transactions); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2008 WL 4858502, at *3-5 (N.D. Cal. Nov. 10, 2008) (compelling financial records to prove siphoning or commingling of funds, misuse of assets, and undercapitalization); *TC Skyrocket, LLC v. Superskyrocket, LLC*, 2007 WL 1110723, at *1 (S.D. Cal. March 29, 2007) (compelling production of tax returns in alter-ego case); *Irwin v. Mascott*, 2000 WL 35890723, at *6-7 (N.D. Cal. Aug. 28, 2000) (same); *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309 (8th Cir. 1992) (insurance policies); BALLANTINE & STERLING, CALIFORNIA CORPORATION LAWS § 298.02 n.2.1 (4th Ed. 2012) ("corporate assets," "mix of equity, indebtedness, insurance, or otherwise").

Emanuel (IP Worldwide, LLC) …"). Defendants also admit that Bruce Karsh contributed capital to defendant IPW, LLC, and held an ownership interest in the company. *Id.* at 8 ("DC claims 'Toberoff suggested he had at least one limited partner in one of his companies' and presents this as a great mystery, when it is clear to DC that the individual in question is 'Bruce Karsh.'"). Notwithstanding these admissions, defendants have produced no documents—none—reflecting these ownership interests or transactions that led to them; no shareholder agreements or records showing the amount of capital contributed, when the contributions were made, how the contributions were valued, the capital accounts of either Emanuel or Karsh; or when Emanuel or Karsh relinquished their ownership interests in the companies, how, and for what consideration. DC is entitled to discover the capital going into and out of the Toberoff companies and the Court's February 13 order contemplated exactly this type of information. *See* Docket No. 382 at 60:21-61:4 ("I have seen corporate documents where, you know, there is a spreadsheet and it shows who has put in what capital … . [I]t would not surprise me if there was some document which indicated who capitalized and in what amounts.").

Similarly, the two-page printout from the New York Department of State website that defendants produced concerning Pacific Pictures states that the company authorized 200 shares of stock. Tokoro Decl. Ex. E at 28. Defendants have never produced any corporate records authorizing the issuance of that stock, valuing it, showing who received it, or reflecting its sale, transfer, or encumbrance.

Defendants' bank statements are also plainly incomplete. They assert the statements "show the earliest available capital accounts for all three entities," *Id.* Ex. C at 25, but ignore the clearly relevant information the statements do not provide. The statements *do not* establish who contributed the capital, whether the capital was obtained through loans or other debt, how the capital was accounted for by the companies, under what terms the capital was contributed, or whether

Toberoff improperly shuttled it among his companies.[3] Shareholders and investors in non-alter-ego companies do not contribute capital to a company without this formal documentation. *E.g.*, *Associated Vendors*, 210 Cal. App. 2d at 841-42 (corporate records of capitalization, absence of commingling of funds, and loan documents); *Bd. of Trs. of Mill Cabinet Pension Trust Fund for N. Calif. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989) (issuance of shares at corporation formation).

There is equally no merit to defendants' claim that they need not make a complete production of the monthly bank statements for each of the Toberoff companies. Tokoro Decl. Ex. C at 25. The Court rejected defendant's relevance and overbreadth objections in issuing its February 13 order, Docket No. 382 at 61:20-21, 62:1 ("We're past that part."; "If the documents exists, then I think you need to produce them."), and did not restrict the order to the "first and last" bank statements. The missing bank statements will not only shed additional light on what the companies' cash positions were over time, but also whether Toberoff was moving money among them. *E.g.*, *Goldberg*, 34 Cal. App. 2d at 13.

4. Why Defendants' Compromise Offer Is Not Enough. When pressed by DC, defendants said they would produce *initial* capitalization records for IP Worldwide and IPW, but *only if* DC waived its rights to seek further documents. Tokoro Decl. Ex. C at 25-26. This offer falls well short for at least two reasons.

First, defendants' offer limits the capital account records to one isolated moment in time, whereas DC's Requests, the Court's order, and the case law on alter-ego claims are not so limited. *Id.* Ex. D at 27. The Court's order upheld DC's document requests seeking not only documents showing the initial capitalization of

---

[3] For example, the February 2003 statement for Pacific Pictures reflects an account in excess of $1.45 million. *Id.* Ex. A at 15. It does not show who contributed that money, how, why, whether it was encumbered, how long it stayed in the account, or any of the other relevant facts courts consider in comparing a companies' assets to its liabilities in the alter-ego analysis.

the Toberoff companies, but also documents showing how defendants' capitalization "change[d]" over time. *Supra* at 2-3 (Request 56(g)). And the courts look at a companies' capitalization at its outset,[4] over its lifetime,[5] at the time of the alleged torts,[6] at the time suit was filed,[7] and at the present moment.[8]

Second, defendants offer to produce nothing concerning the capitalization of Pacific Pictures, asserting the company is a "dissolved 'loan out' corporation." Tokoro Decl. Ex. C at 26. This is no excuse. DC is entitled to prove that Pacific Pictures was and is an alter-ego company and that Toberoff and the surviving corporate defendants are equally and fully liable for its business torts and acts.[9]

---

[4] *E.g., Automotriz Del. Golfo De Calif. v. Resnick*, 47 Cal. 2d 792, 798 (1957) (corporation inadequately capitalized at outset); *Shoreline Assocs. v. Miller*, 1993 U.S. Dist. LEXIS 2107, at *3-5 (N.D. Cal. Feb. 17, 1993) (same).

[5] *E.g., Associated Vendors*, 210 Cal. App. 2d at 841-42 (courts look at capitalization of corporation over its life); *Platt v. Billingsley*, 234 Cal. App. 2d 577, 583 (1965) (focusing on whether company had assets to meet its debts "as they became due" over time); PETER SPERO, ASSET PROTECTION ¶ 11.03[1][c] (2012) (noting that *Associated Vendors* did not measure capitalization "at the time the corporation [was] formed"; instead, court "examined capitalization throughout the conduct of the business").

[6] *E.g., Automotriz*, 47 Cal.2d at 798 (corporation operated on the verge of bankruptcy and was inadequately capitalized at time of alleged torts).

[7] *E.g., Automotriz*, 47 Cal.2d at 797-98 (liabilities dwarfed assets at time of suit); *Shoreline Assocs.*, 1993 U.S. Dist. LEXIS 2107, at *3-5 (same).

[8] *E.g., Shoreline Assocs.*, 1993 U.S. Dist. LEXIS 2107, at *3-5 (at present time, corporation's financial position had completely "collapsed").

[9] *E.g., Rowe v. Exline*, 153 Cal. App. 4th 1276, 1280-81 (2007) (plaintiff sought recovery of payment from individual defendants as alter-egos of dissolved corporation); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Symetry Constr. Servs. Corp.*, 2011 WL 2160575, at *3-5 (D. Or. May 31, 2011) (alleged alter-ego and dissolved company had an overlap in owners and the "same principal business, principal client/customer, business address, telephone number, fax number, and e-mail address," and asset purchase agreement described both companies as "in essence, the same party); *Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *6-7 (N.D. Cal. Nov. 15, 2010) (court considered in determining alter-ego checks written from dissolved corporation's bank account, that company's remaining funds at dissolution were withdrawn and distributed to principles of alleged alter-ego, and correspondence showing intent to defraud by dissolving company to avoid liability).

5. Conclusion. DC's motion should be granted and defendants ordered to produce all capitalization records for the Toberoff companies.

Dated: April 26, 2012

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics