Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:  (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF DC COMICS'** ***EX PARTE*** **MOTION TO LIFT STAY**<br><br>*Declaration of Keith Adams filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set |

DEFENDANTS' OPPOSITION TO PLAINTIFF DC COMICS' *EX PARTE* APPLICATION

# INTRODUCTION

This Court's June 27, 2011 order expressly stayed production of the stolen documents disclosed to the U.S. Attorney's Office (the "stolen documents") pursuant to a grand jury subpoena "until ***all*** review is exhausted." Docket No. 262 at 2-3 (emphasis added). The Court did so because "the matter is not clear cut and the consequences of a wrong decision are significant." Docket No. 287 at 2.

Despite DC's bluster in its *ex parte* application to lift that stay (Docket No. 391; "Application"), these precise reasons still apply, and production should remain stayed. Although the Ninth Circuit panel's April 17, 2012 decision (the "panel decision") denied Defendants' petition for a writ of mandamus, and upheld the May 25, 2011 order's finding that the disclosure to the government of the Stolen Documents created a waiver, this does not exhaust review. Defendants have notified DC and the Circuit of their intention to file a petition for rehearing or rehearing en banc of this important and novel privilege issue, during which the stay should continue. Docket 393-3, Ex. G. Moreover, the Ninth Circuit affirmed this Court's May 25 order, providing for the stay "until all review is exhausted." DC's purported "immediate need" to lift this Court's stay is nothing more than an attempt to moot further review through the premature production of the privileged documents at issue.

In addition, DC's main purported justification for its application is blatantly improper. There is currently an appeal of the district court's October 25, 2011 denial of defendants' Anti-SLAPP motion, *DC Comics v. Pacific Pictures Corporation, et al.*, 9th Cir. Case No. 11-56934 (the "Anti-SLAPP Appeal"). DC contends that an emergency *ex parte* application is justified so that it can file the Stolen Documents with its opposition brief, currently due on May 24, 2012, and the earliest a regular, noticed motion could be heard is June 4, 2012. However, under the well-established rules of appellate procedure, the record on that appeal is limited to the record before the district court. F.R.A.P. 10(a); *see, e.g., Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593-94 (9th Cir. 2002).

DC repeatedly implies and bases its motion on arguments that defendants are trying to delay a resolution of this case past "2013," when defendants in fact ***joined*** DC in a request to bifurcate the key First Claim (as to the validity of the Shuster Termination) and to schedule a trial on that claim for mid-April 2012. *See* Docket No. 351.

DC also lards its application with complete irrelevancies that are not before this Court – for instance, repeated argument as to the merits of defendants' intended petition for rehearing (Application at 4-5, 10-12), the supposed merits of DC's state-law claims at issue in the Anti-SLAPP Appeal (*id.* at 6-7) and DC's separate appeal in *Larson v. Warner Bros. Entertainment Inc.* (*id.* at 7) (Case Nos. 11-55863, 11-56034; the "*Siegel* Appeal"), and defendants' confidentiality concerns and request for a protective order as to the Stolen Documents (Application at 12-14).

In short, DC's *ex parte* application is improper, unjustified, and founded on repeated misstatements of the record. It should be denied.

### ARGUMENT

#### A. The Ninth Circuit Has An Established Mechanism for Review Of A Panel Decision And A Stay Pending Such Review Is Amply Justified

The Federal Rules of Appellate Procedure and the Ninth Circuit's Rules expressly allow appellants the opportunity to seek review of an unfavorable decision. The mechanisms include the right to petition for panel rehearing (FRAP 40(a); 9th Cir. Rule 40) and the right to seek rehearing *en banc* (FRAP Rule 35(b); 9th Cir. Rule 35). A rehearing *en banc* is warranted because of the exceptional importance of the privilege waiver issue in question, and the Circuit split as to this issue. Ninth Circuit Rule 35(a)(1).

There is ample basis for *en banc* review of this critical issue of privilege waiver. Under this decision, the victims of any crimes involving the theft of privileged or confidential material and third parties, wishing to assist a criminal investigation, will be penalized for cooperating with the government. The panel

decision has wide-ranging implications that stand to chill investigation and prosecution by the government, as it is the first decision from ***any*** circuit court on "selective waiver" regarding the *victim* of a crime as opposed to the *target* of a criminal investigation. The panel decided "selective waiver" issues that the Ninth Circuit had expressly declined to reach in two prior decisions, including an en banc decision. *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *Bittaker v. Woodford,* 331 F.3d 715, 720 n.5 (9th Cir. 2003) (en banc). In denying the writ and a victim's ability to safeguard privilege through a confidentiality agreement with the government, the panel decision went further than any circuit before it.

The importance of the policy concerns behind these issues of first impression, and issues newly-decided in this circuit, amply justify the stay, so as to afford the Ninth Circuit the opportunity to review, en banc, the panel decision should such review be deemed necessary.

Absent such stay, the issue would be mooted by the forced production to DC of numerous privileged documents, tainting this litigation and the closely related *Siegel* actions if the panel decision is reversed. If a stay is not maintained, subsequent reversal would have wide ranging effects, including potential disqualification of DC's counsel and a "do-over" of this entire case. *See, e.g., Richards v. Jain*, 168 F.Supp.2d 1195, 1209 (W.D. Wash. 2001) ("[I]n determining when to exercise its discretion to disqualify counsel in those cases involving the loss of the protection of privilege, 'the Court should resolve any doubts in favor of disqualification.'") (citations omitted). DC's prior claim that the bell can be un-rung by the later exclusion of the privileged material (Application at 10) is implausible given the broad scope and number of the stolen privileged documents at issue.

**B.     The Well-Established Rules Of Appellate Procedure Do Not Permit DC's *Ad Hoc* Attempts To Supplement The Record**

It is fundamental to appellate practice that the record on appeal consists of:

"(1) the official papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." F.R.A.P. 10(a); *see* Circuit Rule 10-2 (the "complete record on appeal" consists of "the official transcript[s]" and the "district court clerk's records of original pleadings, exhibits and other papers filed with the district court"). Thus, the "record on appeal is generally limited to 'the original papers and exhibits filed in the district court.'" *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593-94 (9th Cir. 2002) (emphasis in original). Documents "not filed with the district court … are not part of the clerk's record and cannot be part of the record on appeal." *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988); *see also Sattari v. British Airways World Cargo*, 2012 U.S. App. LEXIS 4749 (9th Cir. Feb. 12, 2012) (same); *Anton v. Mendez,* 2011 U.S. App. LEXIS 20798 (9th Cir. Sept. 27, 2011) (same); *United States v. Armstead*, 421 Fed. Appx. 749, 751 (9th Cir. 2011) (holding that the "contention that the evidence is properly included in the appellate record because it consists of documents filed in *other* district court cases is without merit") (emphasis in original).

DC's bizarre claim that "the Timeline documents are very much a part of the record" (Application at 9) is unmoored from any precedent or legal authority.

The stolen documents that have not been produced were obviously not part of the district court's record when it rendered its October 25, 2011 order denying defendants' Anti-SLAPP motion, giving rise to the Anti-SLAPP Appeal, and just as obviously were not part of the May 17, 2011 judgment in *Siegel* that gave rise to the *Siegel* Appeal. **None** of the cases cited by DC indicate that such a wholesale presentation of numerous documents that were not before the trial court is proper on appeal of the trial court's decision. *See* Application at 8; *Mangini v. United States*, 314 F.3d 1158, 1160-1161 (9th Cir. 2003) (taking notice of evidence that the judge was unequivocally subject to mandatory disqualification); *Colbert v. Potter*, 471 F.3d 158, 165-66 (D.C. Cir. 2006) (permitting complete copy of a single document to be

filed where partial copy had been filed with the district court); *Rigsby v. Avenenti*, 1992 U.S. App. LEXIS 15480 (9th Cir. June 26, 1992) (habeas petition in criminal case); *Cootz v. General Tel. Co.*, 1988 WL 131672, at *5 n.5 (9th Cir. Nov. 25, 1988) (summary unpublished opinion taking note of provisions in a collective bargaining agreement, which governed).

*Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003), which DC cites for the proposition that the "court has inherent authority to supplement record" (Application 8), expressly limited the situations when courts should do so and advised ***against*** the sort of appellate free-for-all DC seeks:

> **<u>Save in unusual circumstances, we consider only the district court record on appeal.</u>** Federal Rule of Appellate Procedure 10(a) explains which materials constitute the record. Fed. R. App. P. 10(a). And Circuit Rule 30-1 provides that the appellant (and, if necessary, the appellee) shall pre-pare 'excerpts' of that record. See 9th Cir. R. 30-1.1(a). The rather obvious implication is that the 'excerpts of record' are just that: 'excerpts' of the 'record.'
>
> **This limitation is fundamental. As a court of appeals, we lack the means to authenticate documents submitted to us, so we must be able to assume that documents designated part of the record actually are part of the record**. To be sure, the fact that a document is filed in the district court doesn't resolve all questions of authenticity, but it does ensure that both opposing counsel and the district court are aware of it at a time when disputes over authenticity can be properly resolved. **Litigants who disregard this process impair our ability to per-form our appellate function.**
>
> There are exceptions to the general rule. We may correct inadvertent omissions from the record, take judicial notice, and exercise inherent authority to supplement the record in extraordinary cases. Consideration of new facts may even be mandatory, for example, **when developments render a controversy moot and thus divest us of jurisdiction**.
>
> …..Sadly, this is not the first time a party has graced us with so-called 'excerpts of record' that have never before seen the light of courtroom day.

329 F.3d at 1024-25 (Kozinski, C.J.) (emphases added) (striking improper excerpts of record).

C. **<u>DC's *Ex Parte* Application Is Larded With Prejudicial And Inaccurate Statements</u>**

DC makes numerous other meritless arguments and false statements of fact on this issue:

- DC complains that the stay may somehow "last a year longer than the current 11-month stay has already lasted." Application (Notice) at 1. This is based on DC's contention that the Circuit "can take up to seven months to rule on en banc petitions" (Application at 2), but DC omits that a Ninth Circuit judge must request a vote on a petition for rehearing or rehearing en banc within twenty-one (21) days of the filing of such petition; otherwise, such petitions can be summarily denied. Ninth Circuit General Order 5.4(b)(1).
- DC makes repeated references to "delay" (*e.g.*, Application at 2), but never once did DC seek to expedite the Ninth Circuit's consideration of the writ.
- DC attempts to imply that defendants somehow waived their right to petition for rehearing or rehearing en banc, or limited this Court's stay to the Ninth Circuit's initial decision on the writ, when defendants simply stated that this Court's "stay is amply justified to allow the Ninth Circuit the opportunity to address this important issue." Docket No. 391 at 3. Despite DC's attempts to insinuate otherwise (*e.g.*, Application at 2, 5), defendants have not changed their position, nor have they waived their right to seek further review.
- DC makes much hay of the fact that the writ panel ruled in its favor on various grounds (Application at 4-5), when that is precisely the reason defendants seek rehearing and en banc review.
- DC falsely states that "Defendants want to grind this case to a halt for as long as they can." *Id.* at 9. In fact, in December 2011, Defendants ***joined*** in a stipulation to bifurcate and try the First Claim – the key claim which puts at issue the validity of the Shuster termination, the *real issue* in this case – and schedule a trial on that claim for mid-April 2012. Docket No. 351.
- DC also repeats its claim regarding Kevin Marks' communications with his clients, the Siegels, and his purported opinions regarding a "deal," well-worn territory and argument already rejected by this Court (Docket No. 378) in an order affirmed by Judge Wright. Docket No. 389.

- DC complains that it has "had to defer depositions for key witnesses" (Application at 9) – ignoring that it could have deposed *any* of the witnesses it lists during the year-and-a-half that discovery has been going on in this case.
- DC claims that it "needs and has the right to proceed to judgment in this case well before 2012." Application at 9. Of course, DC has no "right" to determine the court's schedule, and any delay in proceeding to judgment is related to the lack of a scheduling order in this case.
- DC also makes an extended argument about defendants' request that they be permitted to mark and treat certain of the stolen documents as "confidential" pursuant to the parties' protective order in the *Siegel case*, as the parties have agreed to do with respect to other sensitive documents in this case. Application at 12-14; Docket No. 391-3, Ex. D at 49. Furthermore, Defendants never refused to produce documents on the basis of a confidentiality dispute, but merely indicated that they would seek a protective order if the parties could not come to a reasonable compromise on this issue. *Id.*, Ex. D, Ex. F at 53.

### D. DC's *Ex Parte* Filing Was Unwarranted, And Can Be Denied On That Ground Alone

There is no basis for emergency or *ex parte* relief as shown by DC's own conduct.

DC indicated that it would move *ex parte* for the production of the documents over a week ago, on Tuesday, April 17, 2012; Defendants indicated they would oppose this application on April 19, 2012. Docket No. 391-3, Exs. C-F. DC then waited over *a week*, until Wednesday, April 25, 2012, to file this *ex parte* application, belying any claims of urgency. *See* Local Rule 37-3 ("Unless the Court in its discretion otherwise allows, no discovery motions shall be filed or heard on an ex parte basis, ***absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party***.") (emphasis added). DC's application also

violated Local Rule 7-19.1, by failing to provide defendants counsel with advance notice of "the date…of [its] proposed ex parte application," and instead, DC sandbagged defendants with a 15-page *ex parte* application in the midst of known scheduling conflicts. Docket No. 391, 391-3, Exs. C-G.

Furthermore, despite DC's claims that the earliest a noticed motion could be heard is June 4, 2012, had DC served a noticed motion in a timely fashion on or before Friday, April 20, 2012, that motion could have been heard on Monday, May 21, 2012, in advance of the deadline for DC to file its appellate brief in this case.  In addition, defendants had already agreed not to oppose a two-week extension of time (until June 7, 2012) for DC to file its opposition brief in the Anti-SLAPP Appeal. *See* Declaration of Keith Adams, Exhibit A.

Lastly, despite DC's sudden claims of urgency and complaints as to the length of the stay (Docket No. 391 (Notice) at 1), DC never once sought, as it could have pursuant to Circuit Rule 27-12, to expedite the Circuit's consideration of defendants' writ petition.

## **CONCLUSION**

It is far more prudent to stay production of the privileged documents, as this Court's affirmed Order has done, until review of the writ panel's opinion is exhausted.  Despite DC's excessive discovery motions and claims of urgency, there is no pressing need for DC to possess these documents, nor can DC properly force such documents into the record on any appeal.  There is no scheduling order in this case and no discovery cutoff has been set.  The important rights and legal issues at stake here trump DC's scheduling preferences and desire to improperly inject evidence into pending appeals that was not part of the district court record.

When review is exhausted, and if unsuccessful, defendants will of course produce the documents at issue.

///

///

| | | |
|---|---|---|
| 1 | Dated: April 30, 2012 | RESPECTFULLY SUBMITTED, |
| 2 | | *[signature]* |
| 3 | | Marc Toberoff |
| | | TOBEROFF & ASSOCIATES, P.C. |
| 4 | | |
| 5 | | Attorneys for Defendants |
| | | Mark Warren Peary, as personal representative of the |
| 6 | | Estate of Joseph Shuster, Jean Adele Peavy, and Laura |
| | | Siegel Larson, individually and as personal |
| 7 | | representative of the Estate of Joanne Siegel |