# EXHIBIT A

No. 11-71844

Argued and Submitted Feb. 7, 2012; Opinion Issued Apr. 17, 2012

(Kozinski, C.J.; O'Scannlain, J.; Smith, J.)

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————

*In Re:* PACIFIC PICTURES CORPORATION, ET AL.

PACIFIC PICTURES CORPORATION, ET AL.,

*Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

*Respondent.*

DC COMICS,

*Real Party in Interest.*

———————————

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, CASE NO. CV 10-3633 ODW (RZX) THE HONORABLE OTIS D. WRIGHT II, JUDGE

———————————

## REAL PARTY IN INTEREST DC COMICS' OPPOSITION TO PETITIONERS' MOTION FOR AN EXTENSION OF TIME TO FILE PETITION FOR REHEARING AND REHEARING EN BANC

———————————

PATRICK T. PERKINS
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, New York 10516
Telephone:  (845) 265-2820

DANIEL M. PETROCELLI
MATTHEW T. KLINE
CASSANDRA L. SETO
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700

*Attorneys for Real Party in Interest DC Comics*

**EXHIBIT A**

**2**

Petitioners' 11-page request for 30 extra days (until May 31, 2012) to file a 15-page rehearing petition should be denied. The extension being sought, which seeks a day to write each nine lines of text, is for an ulterior purpose designed to prejudice DC in its ongoing litigation against Petitioners pending both before this Court and the district court. There is no need for such delay. The rehearing petition Petitioners describe is baseless on its face and clearly intended to prevent DC from obtaining the Toberoff Timeline documents until after DC has to make two key appellate filings in this Court on May 24, 2011, in Appeal Nos. 11-55863, 11-56034, and 11-56934. The Timeline documents—which the district court held *11 months ago* were no longer privileged, in a ruling affirmed by this Court last week—will play a central role in both appeals. Petitioners are well aware of this and will stop at nothing to keep these documents from this Court and DC, including by delaying the rehearing process. Such delay efforts should be denied.[1]

## 1. Petitioners' Rehearing Petitions Are Baseless On Their Face, And Forty-Five Days Is *Not* Needed To Brief These Well-Trod Issues.

a. Petitioners had their day in court on their writ petition—which was denied on the merits in a well-reasoned, unanimous opinion—and petitioners have no sound basis for seeking en banc or other review. While petitioners say there is a

---

[1] Appellants' motion is also procedurally defective. In violation of Circuit Rule 25-4, petitioners failed to identify the names of the panel members who ruled in this case, who will rule on this motion, and who DC has requested hear the two related Superman appeals currently being briefed, *see* Appeal Nos. 11-55863, 11-56034, Docket Nos. 29-1; 35-1.

1

**EXHIBIT A**

**3**

"circuit split" concerning the selective-waiver rule, Mot. at 3, only one circuit court has ever recognized the rule—*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977)—and that was 35 years ago, in a few conclusory sentences, *id.*; *Westinghouse Elec. Corp. v. Repub. of the Phil.*, 951 F.2d 1414, 1424 (3d Cir. 1991); *In re Pacific Pictures Corp.*, 2012 WL 1293534, at *3-4 (9th Cir. April 17, 2012).[2]   As this Court observed, "every other circuit to consider the issue" has held that parties may not selectively disclose privileged materials.  *Pacific Pictures,* 2012 WL 1293534, at *3.[3]  The judges in these cases have been some of the most experienced, respected jurists in the country.[4]

Petitioners attempt to create the illusion of a circuit split by asserting that this Court's "conclusion that confidentiality agreements between the Government and a party cannot protect privileged documents from a third party," Mot. at 3,

---

[2] Indeed, the Eighth Circuit itself backed away from *Diversified*.  *In re Grand Jury Proc. Subpoena*, 841 F.2d 230, 234 (8th Cir. 1988) ("[v]oluntary disclosure is inconsistent with the confidential attorney-client relationship and waives the privilege"); *In re Chrysler Motors Corp.*, 860 F.2d 844, 846 (8th Cir. 1988).

[3] *Permian Corp. v. U.S.*, 665 F.2d 1214, 1216-17 (D.C. Cir. 1981); *In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416-18 (Fed. Cir. 1997); *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997); *In re Columbia/HCA Healthcare Cor. Billing Practices Litig.*, 293 F.3d 289, 302 (6th Cir. 2002); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179, 1201 (10th Cir. 2006); *McKesson HBOC, Inc. v. Super. Ct.*, 115 Cal. App. 4th 1229, 1236-41 (2004).

[4] *E.g.*, *Westinghouse*, 951 F.2d at 1424 (Becker, J.); *Permian*, 665 F.2d at 1216-17(Mikva, J.); *MIT*, 129 F.3d at 686 (Boudin, J.); *In re Qwest*, 450 F.3d at 1201 (Murphy, J.); *U.S. v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006) (Breyer, J.).

**EXHIBIT A**
**4**

"has created a significant circuit split with respect to the law of attorney-client privilege between this Circuit and the United States Court of Appeals for the Second and Seventh Circuit[s]," Mot. at 8 ¶ 4 (Decl. of L. Brill), *id*. at 4 (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993); *Dellwood Farms, Inc. v. Cargill*, Inc., 128 F.3d 1122, 1126 (7th Cir. 1997)).

This is Petitioners' sole premise for en banc review, and it is baseless. This Court was correct in observing that "*no circuit* has officially adopted such a rule," and the Court discussed *Steinhardt* and *Dellwood* in its opinion. *Pacific Pictures*, 2012 WL 1293534, at *5 (emphasis added). Circuit courts have uniformly rejected selective-waiver claims made based on confidentiality agreements,[5] and those courts willing to consider the *theoretical possibility* of such a rule call it a "leap," *In re Qwest*, 450 F.3d at 1192-94. If there were any doubt as to current federal policy on this question, as compared to dicta from the 1990s, Congress recently "declined to adopt even th[e] limited form of selective waiver" that defendants posit. *Pacific Pictures*, 2012 WL 1293534, at *5. And as the 2007 Advisory

---

[5] *E.g.*, *MIT*, 129 F.3d at 686 ("Anyone who chooses to disclose a privileged document to a third party, or does so pursuant to a prior agreement of understanding, has an incentive to do so …. [C]ourts have been unwilling to start down this path—which has no logical terminus—and we join in this reluctance."); *In re Columbia*, 293 F.3d at 302 ("any form of selective waiver, even that which stems from a confidentiality agreement, transforms the attorney-client privilege into 'merely another brush on an attorney's palette, utilized and manipulated to gain tactical and strategic advantage'"); *In re Chrysler*, 860 F.2d at 846-47 ("Nor does the agreement … not to disclose the computer tape to third-parties change the fact that the computer tape has not been kept confidential.").

3

**EXHIBIT A**

**5**

Committee Notes to the Federal Rules of Evidence make clear, the selective-waiver rule proved too "controversial" to endorse; thus, Rule 502, as amended, did "*not* provide a basis for a court to *enable parties to agree to a selective waiver* of the privilege, such as to a federal agency conducting an investigation." FEDERAL CRIMINAL CODE AND RULES 327 (West 2011 ed.) (emphasis added).

The two 1990s cases that Petitioners cite similarly afford them no help. The Second Circuit in *Steinhardt* never "found no waiver" based on a confidentiality agreement, despite petitioners' assertions to the contrary. Docket No. 1-1 at 23. Rather, in dicta—which cannot give rise to a circuit split[6]—the Second Circuit said that a confidentiality agreement *might* in some case excuse a selective waiver, but then rejected the selective-waiver claim being asserted. *Steinhardt*, 9 F.3d at 236; *Police & Fire Ret. Sys. v. Safenet, Inc.*, 2010 U.S. Dist. LEXIS 23196, at *7 (S.D.N.Y. Mar. 11, 2010) (confirming *Steinhardt* was "dicta").

Petitioners also contend that *Dellwood* evidences a "significant" circuit split between the Seventh Circuit and this Court as to whether "confidentiality

---

[6] "[A]n inconsistency in dicta" does not a circuit split make; for a true conflict to exist, "there must be a real or 'intolerable' conflict on the same matter of law or fact." R. STERN ET AL. SUPREME COURT PRACTICE 241 (9th ed. 2007); *see also Oncale v. Sundowner Offshore Servs. Inc.*, 83 F.3d 118, 120 n.3 (5th Cir. 1996) (noting "no circuit split yet exists" where courts had expressed differing views in dicta only); *see also Abbs v. Sullivan*, 963 F.2d 918, 925 (7th Cir. 1992) ("Dicta are not judgments."); *id.* at 924 (party "cannot appeal a judgment merely because there are passages in the court's opinion that displease him—that may indeed come back to haunt him in a future case").

4

**EXHIBIT A**

**6**

agreements" with the government preserve privilege.  Mot. at 3-4.  This, too, is incorrect.  *Dellwood* expressly noted it did *not* involve a confidentiality agreement at all, 128 F.3d at 1124, and it was the government, *not a private civil litigant like Toberoff*, who disclosed the materials in question, *id*. at 1126-27.  Moreover, while *Dellwood* recognized that other circuits had rejected the selective-waiver rule, it noted those cases did not apply, given that plaintiffs could obtain the same evidence from other sources.  *Id*.  As Judge Easterbrook made clear in 2003, the Seventh Circuit has joined the other circuits in rejecting petitioners' selective-waiver rule.  "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; *selective disclosure is not an option*."  *Burden-Meeks*, 319 F.3d at 899 (discussing *Dellwood*; emphasis added).

   b.  Petitioners' panel rehearing motion will be equally without basis. Tellingly, petitioners fail to cite a single statement in the Court's opinion that they will challenge.

   c.  At all events, it will not take 45 days to prepare the 15-page brief permitted to address these issues.  Petitioners have already filed 151 pages of briefs before this Court and the district court addressing these subjects, including their 11-page filing on this motion.  The *Dellwood* and *Steinhardt* cases on which they rely to show a supposed circuit split are short and do not require any sort of extensive discussion.  And the factual blunderbuss Petitioners promise to file will

**EXHIBIT A**
**7**

by their own accounting only address *three pages* of this Court's opinion. *See* Mot. at 5. Petitioners simply do not need any extra time or any extra pages to rehash arguments that have already been fully ventilated.

> **2.      Petitioners' Real Aim Here Is Delay And Depriving DC And This Court Of Critical Evidence On Two Related Appeals.**

Notwithstanding this Court's April 17 opinion, petitioners refuse to produce to DC the remaining undisclosed Timeline documents until this Court denies their petitions for rehearing and/or the Supreme Court denies a cert petition they may file. *See* Kline Decl. Ex. A (DC's *ex parte* application filed yesterday in the district court seeking immediate production of these documents). The reason Petitioners ask to have until *May 31* to file a simple 15-page brief is that DC has two critically important briefs due before this Court a week earlier—on *May 24*. *Id.* Petitioners are acutely aware that in both those briefs DC will rely on the Timeline documents, as these documents directly refute Petitioners' positions. *Id.*

a. In Appeal No. 11-56934 in this *Pacific Pictures* case, petitioners have appealed the district court's extensive and resounding denial of their SLAPP motion. Kline Decl. Ex. B. DC's answering brief in that appeal is due May 24— less than a month from today. The Timeline documents are important to DC's SLAPP briefing. The threshold inquiry under the SLAPP statute is whether DC's state-law claims are based on protected activity. *See Navellier v. Sletten*, 29 Cal.

**EXHIBIT A**
**8**

4th 82, 89 (2002).  According to the detailed descriptions in the Timeline, among the Timeline documents are Toberoff's correspondence and agreements with the Siegel and Shuster heirs, as well as a memo from an outside law firm advising Toberoff that his *business* deals with the heirs raise "questions of legality."  Docket No. 1-9 at 210-16.  These documents will confirm—as the district court rightly held—that DC's claims do not arise out of Toberoff's allegedly protected activities as a lawyer, but are instead based on Toberoff's inducing the heirs to enter into illicit business agreements with him, Kline Decl. Ex. B.

        The second step of the SLAPP analysis considers the probability of success on DC's state-law claims.  *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).  The Timeline documents directly corroborate DC's claims that Toberoff improperly interfered with DC's agreements and relationships with the heirs—including, for example, the memo from Kevin Marks to the Siegels affirming that they reached a "deal" with DC in 2001 and warning them against repudiating that agreement in favor of Toberoff's competing business offer.  *See* Docket No. 3-4 at 207-10; Kline Decl. Ex. C at 84-92.  These still-undisclosed Timeline documents will also demonstrate DC's right to further discovery, which is itself a basis for denying a SLAPP claim.  *See Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1100 (N.D. Cal. 2003); *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 868 (1995).

7

**EXHIBIT A**

**9**

b.  May 24, 2012, is also the deadline for DC to file its reply brief in the *Larson* cross-appeal, Appeal Nos. 11-55863, 11-56034.  A central issue in that appeal—indeed, the lead question DC presented, Kline Ex. D at 131-43—is whether DC and Larson reached a binding settlement agreement in 2001 that bars Larson's copyright claims.  DC has asked this Court to enter judgment in DC's favor as a matter of law on this claim, especially given that recent Ninth Circuit authority confirms that a settlement agreement is enforceable where, as here, the parties reached agreement on its material terms.  *Id.* (discussing, *e.g.*, *The Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011)).

The Timeline evidence includes the undisclosed Marks memo, which according to other evidence describing it, fully supports DC's cross-appeal and request for entry of judgment.  *Id.*  This still-suppressed evidence also confirms that there are, at a minimum, disputed factual issues that can only be resolved against DC, if ever, at a trial.  *Id.*  Documents like the Marks memo are key evidence in the *Larson* appeal, *id.*, and petitioners' delay and refusal to produce such documents is plainly tactical:  they seek to deprive the courts (especially this Court) of this highly relevant and damaging evidence.

c.  Petitioners seek to undermine the urgent need for DC to obtain the Timeline documents—and justify their needless delay in filing their rehearing petition—by asserting that DC cannot refer to the Timeline documents in its

**EXHIBIT A**

**10**

appellate briefs.  Mot. at 7.  This, too, is wrong—and it is this Court's prerogative, not petitioners, to decide whether the evidence is relevant.[7]  Both appeals are interlocutory, and thus this Court has even greater latitude and reason to consider the evidence.  The undisclosed Timeline documents are also already a part of the record in both cases; the Court ordered them produced on May 25, 2011—*before* petitioners filed their notice of appeal in *Larson* and *months before* the district court ruled on petitioners' SLAPP motion.  This Court has full discretion to receive this evidence, *id.*, and considering the evidence—including the Marks memo about the "deal" Larson made with DC and the other memo describing Toberoff's unlawful *business* dealings—makes a great deal of sense in both appeals.[8]

    d.  DC will also be prejudiced by the delay petitioners seek to engender because DC has an urgent need to complete discovery in this case and obtain a final judgment.  Many aspects of discovery, chief among them depositions, ground to a halt after petitioners filed their writ.  Often at the urging of witnesses' counsel, DC has had to defer depositions for key witnesses, including Toberoff, his three

---

    [7] *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003); *See More Light Invs. v. Morgan Stanley DW Inc.*, 415 Fed. Appx. 1, 2 (9th Cir. 2011); *Johnson v. Rancho Santiago Comm'y College Dist.*, 623 F.3d 1011, 1020 n.3 (9th Cir. 2010).

    [8] *Cf.*, *e.g.*, *Mangini v. U.S.*, 314 F.3d 1158, 1160-61 (9th Cir. 2003) (granting motion to supplement record with three newly discovered letters that refuted material misstatement in opposing party's affidavits below); *Colbert v. Potter*, 471 F.3d 158, 165-66 (D.C. Cir. 2006) (appellate court allowed appellee to supplement record with complete copy of record in parties' possession because this evidence went "to the heart of the contested issue, [and] it would be inconsistent with this court's own equitable obligations … to pretend that [it does] not exist").

**EXHIBIT A**

**11**

companies, his business partner Ari Emanuel, the Siegels' former counsel Kevin Marks, the Timeline author, and many others.  Kline Decl. Ex. A at 27.

Petitioners want to shut this case down as long as they can, on the theory that in October 2013 DC's rights will be compromised, as both the Siegels' and Shusters' termination notices purport to then take effect.  This is a bargaining ploy, of course, and DC needs and has the right to proceed to judgment in this case well before 2013.  A critical path item in doing so is completing discovery.

Petitioners might wish that the Supreme Court or the en banc court will save them.  But as *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606-07 (2009), made clear, this is not a valid impediment to DC getting the Timeline documents:

> [P]ostjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings:  by vacating an adverse judgment and remanding for a new trial….

No further delay by petitioners should be countenanced.  This Court should deny petitioners' motion for an extension of time and deny their rehearing petitions as expeditiously as possible.

Dated:  April 26, 2012

O'MELVENY & MYERS LLP

By:  /s/ Daniel M. Petrocelli

Daniel M. Petrocelli
Attorneys for Real Party in Interest
DC Comics

10

**EXHIBIT A**

**12**