1  Marc Toberoff (State Bar No. 188547)
     *mtoberoff@ipwla.com*
2  Keith G. Adams (State Bar No. 240497)
     *kgadams@ipwla.com*
3  Pablo D. Arredondo (State Bar No. 241142)
     *parredondo@ipwla.com*
4  TOBEROFF & ASSOCIATES, P.C.
   22337 Pacific Coast Highway #348
5  Malibu, California 90265
   Telephone:  (310) 246-3333
6  Facsimile:   (310) 246-3101

7  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
8  Estate of Joseph Shuster, Jean Adele Peavy,
   and Laura Siegel Larson, individually and
9  as personal representative of the Estate of
   Joanne Siegel

10                    **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

12  DC COMICS,                          | Case No: CV 10-03633 ODW (RZx)
13                 Plaintiff,           |
                                        | Hon. Otis D. Wright II, U.S.D.J.
14       vs.                            | Hon. Ralph Zarefsky, U.S.M.J.

15  PACIFIC PICTURES CORPORATION;       | **DISCOVERY MATTER**
16  IP WORLDWIDE, LLC; IPW, LLC;        |
    MARC TOBEROFF, an individual;       | **DEFENDANTS' OPPOSITION
17  MARK WARREN PEARY, as personal      | TO DC COMICS' MOTION TO
    representative of the ESTATE OF     | COMPEL THE PRODUCTION
18  JOSEPH SHUSTER; JEAN ADELE          | OF DOCUMENTS AND FOR
    PEAVY, an individual; LAURA         | RECONSIDERATION OF THE
19  SIEGEL LARSON, individually and as  | COURT'S JUNE 27, 2011
20  personal representative of the ESTATE OF | RULING**
    OF JOANNE SIEGEL,                   |
21                                      | *DECLARATION OF KEITH G.
22  and DOES 1-10, inclusive,           | ADAMS FILED CONCURRENTLY*
23                 Defendants.          | Complaint filed:  May 14, 2010
                                        | Trial Date:  None Set
24                                      |
                                        | Hearing Date: May 21, 2012
                                        | Hearing Time: 10:00 a.m.
25
26
27
28

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ARGUMENT .......................................................................................................2

    A.   Issue 1: The November 2001 Email From Marc Toberoff To Michael Siegel Is Privileged ...................................................2

        1.    Factual Background ...................................................2

        2.    DC's Speculation As ToThe Contents Of The November 2001 Email Do Not Defeat Privilege ..........................................4

    B.   Issue 2: Production of Don Bulson Calendar and Billing Entries ........6

    C.   Issue 3: The November 2001 Email From Marc Toberoff To Michael Siegel Is Privileged ...................................................7

    D.   Issue 4: DC's Misleading *Ad Hominem* Statements ...........................11

CONCLUSION...................................................................................................14

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Federal Cases**

*Barton v. United States Dist. Court*,
410 F.3d 1104, 1108 (9th Cir. 2005) ......................................................4

*Bud Antle, Inc. v. Grow-Tech, Inc.*,
131 F.R.D. 179, 182-83 (N.D. Cal. 1990) ..............................................11

*Burroughs v. DeNardi Corp.*,
167 F.R.D. 680, 685 (S.D. Cal. 1996) ...................................................7

*Grand River Enterprises Six Nations, Ltd. v. King*,
2009 WL 63461 (S.D.N.Y. Jan. 12, 2009) ............................................11

*Hooser v. Superior Court*,
84 Cal. App. 4th 997 (2000) ...................................................................4

*In re Auclair*,
961 F.2d at 69 (5th Cir. 1992) ................................................................4

*In re Joanne Siegel*,
N.D. Ohio, Case No. 1:06 MC 99 ..........................................................2

*Jumping Turtle Bar & Grill v. City of San Marcos*,
2010 U.S. Dist. LEXIS 119390 (S.D. Cal. Nov. 10, 2010) ...................11

*Lugosch v. Congel*,
219 F.R.D. 220, 238 (N.D.N.Y. 2003) ...................................................8

*Thompson v. Glenmede Trust Co.*,
1995 U.S. Dist. LEXIS 18780 (E.D. Pa. Dec. 19, 1995).........................8

*Tibble v. Edison Int'l*, 2008 U.S. Dist. LEXIS 106999 (C.D. Cal. Dec. 30, 2008) .........................................................................................................11

*United States v. Am. Tel. & Tel. Co*,
642 F.2d 1285 (D.C. Cir. 1980).............................................................9

*United States v. Gonzalez,*
669 F.3d 974 (9th Cir. 2012) ...............................................................7,8,9


**Statutes**

17 U.S.C. § 304(c)(2)(b) .............................................................................8


**Other Authorities**

6-26 Moore's Federal Practice
§ 26.49[5][b] .............................................................................................7

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

# **INTRODUCTION**

DC Comics' ("DC") motion  to compel and for reconsideration (Docket No. 394; "Motion" or "Mot.") once again kicks up a storm of accusations as to purportedly "hidden" documents, baseless speculation as to the contents of privileged documents DC has rightfully never seen, and distortions of law and fact.  Once the dust settles, it becomes clear that this is just the latest in a long series of unnecessary and meritless discovery motions.

Tellingly, and in violation of Local Rule 37-2.1, DC does not assert which discovery request *to Defendants* it moves on, or even as to which Defendant it moves.  At most, DC points to a subpoena served on a *third-party* Don Bulson ("Bulson") and a request made to Bulson's counsel during a deposition.  This is particularly egregious with regard to DC's request for Bulson's personal calendar and an expert report filed in an unrelated litigation (Issue 2), both of which are not, and would not reasonably be expected to be, in any of the Defendants' possession.

***Issue 1:***  DC asks this Court to compel production of a November 2001 e-mail from Marc Toberoff to Michael Siegel (who died in 2006).  DC speculates that the e-mail is an offer to purchase Michael Siegel's copyright (Mot. at 7), when it does no such thing and is a communication related to potential legal retention.  *See, e.g., Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 273 (D. Minn. 2007).  The November 2001 email is privileged, has been logged as such and was not, contrary to DC's baseless assertion, hidden for years.  Mot. at 1.  The e-mail was logged by Defendants shortly after it was received as part of an electronic archive from Michael Siegel's former counsel.  The email was not otherwise accessible as it did not exist in Defendants' paper files and had been sent eleven years ago from a defunct email account Mr. Toberoff has not used in a decade.  Moreover, DC's only purported use for this email is to rebut a supposed claim – that Marc Toberoff had no contact with Michael Siegel until October 2002 – that Defendants have never made.

***Issue 2:*** This is a non-issue.  As set forth below, DC asks this Court to compel

1

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

the production of Don Bulson's personal calendar (not in Defendants' possession)
and Bulson's billing entries from the period when he represented Michael Siegel
showing any communications with Mr. Toberoff.  While DC has failed to point to
any formal request for production to Defendants for such documents, Defendants
have nonetheless obtained and produced such documents.

*Issue 3*:  DC seeks production of a November 2002 letter between Laura Siegel
Larson and her half-brother Michael Siegel, which is protected by the common
interest privilege.  DC's prior repeated attempts to affect a waiver of privilege as to
all communications between Laura and Michael Siegel have been firmly rejected, by
both this Court and an Ohio federal district court.  Every court to have expressly
considered the issue has recognized the common-interest between Laura and Michael
Siegel, as co-owners of the Siegel termination interest, with respect to their dispute
with DC/Warner.  *See* Docket No. 209, 239, 368-2 at 18-23 (*In re Joanne Siegel*,
N.D. Ohio, Case No. 1:06 MC 99, Order dated August 13, 2008), 389.  DC's
argument that this common-interest disappeared when settlement negotiations
temporarily ceased in late 2002, has already been rejected by this Court.  Docket No.
239 (denying motion to compel and upholding common interest between Laura and
Michael Siegel after 2002).

## ARGUMENT

A.    **Issue 1:  The November 2001 Email From Marc Toberoff To
      Michael Siegel Is Privileged**

    1.    **Factual Background**

In August 2011, counsel for Defendants, on behalf of the estate of Michael
Siegel, received from Renner, Otto, Boisselle & Sklar, LLP ("Renner Otto")/Don
Bulson (Michael Siegel's former attorney) an electronic archive of Renner Otto's
Michael Siegel client file.  After reviewing these documents, on November 29, 2011,
the estate produced over 600 pages of responsive, non-privileged documents (most of
which were already in DC's possession through prior productions), a log detailing

2

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

those responsive documents that were privileged, and a "master list" of every document in the electronic archive.  Declaration of Keith Adams ("Adams Decl"), Ex. A.  DC was informed that the log and list contained duplications and overlap with prior logs in the *Siegel* case, which were based on paper copies of certain of the documents in the archive that had been provided to Ms. Larson's counsel in 2006 by Michael Siegel's Estate.  *Id.*  Counsel further pointed out to DC that there were "discrepancies concern[ing] documents which were not logged previously because they were not in the paper file used to generate the initial log," and addressed such discrepancies in great detail.  *See* Docket No. 362-2 at 323-24.

After this was properly explained to DC in December 2011, DC did nothing for four months.

DC now complains that the November 29, 2011 privilege log is not an "exact replica" of a log produced years earlier in the *Siegel* case based on a differing set of paper documents received by Defendants' counsel from Michael Siegel's estate.  Mot at 3.  The documents received by counsel for Ms. Larson from Michael Siegel's estate in 2006 did <u>not</u> contain everything in the Renner Otto archive.  When the electronic version of the electronic Renner Otto archive was sent to defendant's counsel in 2011, it was promptly accounted for by logging or producing additional responsive documents – including both the November 17, 2001 email from Mr. Toberoff to Michael Siegel and the November 2, 2002 letter from Laura to Michael addressed in Section B, *infra*.[1]  Adams Decl., Ex. A.

As usual, DC makes unsupported allegations that Defendants kept these documents hidden for years.[2]  In actuality, Defendants logged any new responsive

---

[1] Renner Otto claimed that the archive are "a duplicate of the files possessed by Michael Siegel's estate." Pearson Decl. Exs. L at 58.  This may or may not be correct, but, in any event, Defendants did not possess or control everything received or possessed by Michael Siegel's estate, a third party.

[2] The November 2001 email was not included in the privileged documents stolen from Defendants' legal files and improperly sent to Warner Bros. Entertainment Inc./DC; an ironic indication that it was not in Defendants' files.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR RECONSIDERATION

1  documents in their possession promptly after receiving Renner Otto's electronic

2  archive.

### 2.    DC's Speculation As To The Contents Of The November 2001 E-mail Do Not Defeat Privilege

It is well-established that communications between an attorney and a potential client about possible retention is protected by the attorney-client privilege.  *See Barton v. United States Dist. Court*, 410 F.3d 1104, 1108 (9th Cir. 2005) ("privilege applied to pre-employment communications"); *Hooser v. Superior Court* 84 Cal. App. 4th 997 (2000) (attorney-client privilege applies during preliminary discussions of prospective professional employment).  The privilege equally applies to such communications even if the attorney is not ultimately retained.  *See Barton,* 410 F.3d at 1111 (privilege applies "regardless of whether [prospective clients] have retained the lawyer, and regardless of whether they ever retain the lawyer."); *In re Auclair,* 961 F.2d at 69 (5th Cir. 1992) (preliminary communications are privileged "though employment is not accepted").

The November 2001 email, sent from a lawyer to a prospective client, pertains to legal retention.  This Court has already upheld privilege in a similar context:  when DC sought privileged communications between David Michaels and Laura Siegel Larson/Joanne Siegel from late 2005, when Michaels attempted to solicit the Siegels as clients.  This Court correctly found that the privilege applied and had not been waived, even though the Siegels never retained Michaels.  Docket No. 262 at 4.

The November 2001 email is privileged and has been properly logged as such. *See* Docket No. 362-2 at 309 (Entry 339).

DC's circular argument as to why privilege purportedly does not apply to the November 2001 communication is based on sheer speculation as to its contents, that it is somehow an e-mail "seeking to purchase copyright interests" (Mot. at 1) when it is not.  DC's similar prior attempts to defeat privilege with speculation has also already been rejected by this Court.  Docket No. 209 at 6 (""[T]he argument

4

ultimately is a circular one.  Plaintiff assumes the consent agreement constitutes an independent wrong and, acting on that assumption, takes the position … that the consent agreement is not protected."); No. 378 at 6 ("A showing that *in camera* review *must* be had has not been made out, and the Court declines to be in the business of deciding which lines of which documents constitute advice.").  DC speculates that the email concerns business (*i.e.,* an offer to purchase Michael Siegel's termination interest (Mot. at 7)), rather than legal, matters.  It did not.  If the attorney-client privilege is to afford any protection, opposing counsel's speculation as to the contents of a privileged communication cannot suffice to destroy it.

DC's sole basis for its speculation is a hearsay comment in a May 2003 letter by Michael Siegel, in which he appears to confuse and conflate Mr. Toberoff's initial communications in 2001 with discussions two years later in 2003 between Mr. Toberoff, on behalf of investor Ari Emanuel (now head of William Morris Endeavor), Laura Siegel Larson and Joanne Siegel, and Michael's attorney Bulson regarding a potential buy-out of Michael's 25% interest in Laura and Joanne Siegel's statutory termination.   Docket No. 225-4 at 3.  *See* Adams Decl. Ex. B (January 21, 2003 letter concerning Mr. Emanuel's attempt to buy Michael Siegel's termination interest).

DC's purported reason for wanting access to this privileged email is to rebut a claim – that Mr. Toberoff had no contact with Michael Siegel prior to October 2002 – that Defendants have never made.  It is plain from the Anti-SLAPP briefing cited by DC, which addresses DC's complaint, that Defendants references to the "Siegels" and/or the "Siegel family" referred to Defendants Laura Siegel Larson and Joanne Siegel.  Docket 145-1 at 2 ("Toberoff began representing … *the Siegels* in late 2002") (emphasis added), 5 (defining "Siegels" as Joanne Siegel and Laura Siegel Larson).  DC specious word-play does nothing to obscure the reality that Michael Siegel is irrelevant to DC's claims in this case, as shown by Michael Siegel's total absence from the allegations in DC's 61-page complaint.

5

1    DC assertion that the November 2001 email "casts even further doubt on

2    Toberoff's claim of non-interference" (Mot at 4) is nonsensical, as Michael was not

3    even a party to the settlement negotiations that DC alleges Mr. Toberoff disrupted,

4    and inaccurate, as it was Michael Siegel's estate, not Mr. Toberoff, which holds and

5    asserted the privilege.

6           **B.    Issue 2:  Production of Don Bulson Calendar and Billing Entries**

7           DC asks this Court to compel the Defendants to produce non-party Don

8    Bulson's personal calendar and billing entries from the period when he represented

9    non-party Michael Siegel, and an expert report that was allegedly produced in

10   litigation between Bulson's law firm Renner Otto and the estate of Michael Siegel,

11   also third-parties.  DC does not, and cannot, point to any discovery request *served on*

12   *Defendants* that would cover this material.  Instead, DC points to an informal request

13   made at Bulson's deposition, *to Bulson's counsel*.[3]  Mot. at 12 ("during Bulson's

14   deposition, DC requested production of calendars, billings entries, and expert

15   report").

16          DC misrepresents to the Court (Mot. at 12):  (1) that these materials were

17   contained in a copy of Renner Otto's electronic archive of Michael Siegel's client

18   files, sent to Defendants' counsel in 2011, (2) that Defendants refused to produced

19   Bulson's "calendars, billing entries, and expert report," and (3) that "when

20   Defendants produced the Bulson Privilege Log, they refused again to produce the

21   expert report, calendars, and billing entries."  Mot. at 12.  These materials –

22   "calendars, billing entries, and [an] expert report" – were _not_ in the archived files, nor

23   would one reasonably expect Bulson's  personal calendars, day to day billing entries

24   and a post-mortem expert report to be in Renner Otto's client file when the firm had

25   it electronically archived upon Michael Siegel's death in 2006.   As Defendants

26   properly informed DC, "such documents are not included in the 'Renner Otto

---

[3] As to the Expert Report that DC moves to compel, Bulson informed DC at his deposition that it
was part of the public record. Docket No. 305-52 at 15:19-16.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

1    electronic archive,'" nor in Defendants' possession.  Docket No. 362-2 at 324.

2        On August 3, 2011, DC wrote counsel for Defendants stating that it was "not

3    seeking the disclosure of attorney-client or work product information" but merely

4    "the dates on which Mr. Bulson spoke or corresponded with Mr. Toberoff."  Docket

5    395-1 at 25.   DC repeats that statement in its motion, where it indicates that it simply

6    needs to determine "whether Bulson met or spoke with Toberoff concerning Michael

7    Siegel, or an investor interested in the Siegel Superman rights."  Mot. at 14.

8        In an attempt to avoid burdening this Court with yet another discovery motion,

9    Defendants made multiple requests to Renner Otto for these documents, although ot

10   required to do so.  Adams Decl., Exs. C,D.  Renner Otto did not respond.  *Id.* at ¶6.

11   Nonetheless, Defendants were finally able to retrieve copies of Mr. Bulson's billing

12   entries; those entries, showing the dates of Mr. Bulson's communication with Mr.

13   Toberoff, as requested, were produced on May 4, 2012.  Adams Decl., Ex. E.  This

14   should settle the matter as DC has expressly stated that it was "not seeking the

15   disclosure of attorney-client or work product information" but only to "discover the

16   dates on which Mr. Bulson spoke or corresponded with Mr. Toberoff." 395-1 at 25.

17   **C.    Issue 3:  The November 2, 2002 Letter From Ms. Larson To Mr.**

18   **Siegel Is Privileged**

19        "The Ninth Circuit has long recognized that the joint defense privilege is an

20   extension of the attorney-client privilege." *United States v. Gonzalez* ("*Gonzalez*"),

21   669 F.3d 974, 978 (9th Cir. 2012).  *See* 6-26 Moore's Federal Practice § 26.49[5][b]

22   ("The common interest doctrine … provides that parties with a shared interest in

23   actual or potential litigation against a common adversary may share privileged

24   information without waiving the privilege.").  A common interest privilege exists

25   where "(1) the communications were made in the course of a joint effort, (2) the

26   statements were designed to further the joint effort, and (3) the privilege has not been

27   waived." *Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 685 (S.D. Cal. 1996) (citing

28   *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir.

7

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

1  1989)).

2       The common interest privilege extends to communications between clients

3  (*e.g.,* between Laura and Michael).  *See United States v. Under Seal*, 902 F.2d 244,

4  249 (4th Cir. 1990) (collecting cases) ("[P]ersons who share a common interest in

5  litigation should be able to communicate with their respective attorneys and with

6  each other…."); *Thompson v. Glenmede Trust Co.*, 1995 U.S. Dist. LEXIS 18780, at

7  *15–16 (E.D. Pa. Dec. 19, 1995) (common interest privilege applied when plaintiff

8  forwarded documents to siblings with shared interests in potential litigation);

9  *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) (joint defense privilege

10  applicable if parties share legal bond in anticipation of litigation).

11       Under the Copyright Act, Laura and Michael co-owned a statutory termination

12  interest. 17 U.S.C. § 304(c)(2)(b).  This shared termination interest, and the

13  surrounding dispute, settlement talks and litigation with DC, gave rise to a common

14  interest with respect to DC as a matter of law.  *See, e.g., Gonzalez,* 669 F.3d at 978

15  (the "[common-interest] privilege … [is not] limited to criminal defense situations or

16  even situations in which litigation has commenced").

17       Since filing termination notices in April 1997, Laura Siegel Larson, who, along

18  with her mother Joanne, filed notices of termination under 17 U.S.C. § 304(c), has

19  been in an intense dispute with DC/Warner Bros. that continues to this day.  This

20  dispute has spanned years of ongoing settlement negotiations and litigation. As this

21  Court has held, Laura and Michael Siegel, as co-owners of the Superman termination

22  interest, shared a common interest in disputes and negotiations with DC regarding

23  such termination interest.  Docket No. 378 at 3.  In denying DC's attempt to obtain

24  correspondence from Laura to Michael Siegel, this Court held:

25       Ms. Larson and Mr. Siegel shared a common legal interest in August
        2002.  At the time negotiations with Plaintiff [DC] were on-going, and
26       disputes were arising, and each of the heirs of Superman's creator had
        similar interests, from a legal standpoint, in respect of those negotiations
27       *and disputes.*

28  *Id.* (emphasis added).  *See also* Docket No. 209, 239, 368-2 at 18-23, 389.

8

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR RECONSIDERATION

1   DC's argument that this privilege should not apply to the November 2002

2   letter between Laura and Michael is erroneously premised on an artificial distinction.

3   DC claims that Laura and Michael's common interest is solely limited to a specific

4   set of settlement negotiations with DC (Mot. at 17), and supposedly ended when such

5   negotiations temporarily ended in late 2002.[4]  As the legal precedent and the Court's

6   order makes plain, the common interest is tied to the "dispute" with DC regarding the

7   regarding the validity and scope of the Siegel termination interest, co-owned by

8   Michael.  These disputes did not end, but rather intensified, after negotiations with

9   DC temporarily collapsed.  The failed negotiations placed the termination interest co-

10  owned by Laura, Joanne and Michael Sigel under the imminent spectre of litigation

11  that soon became a reality.  Moreover, in 2003-04, prior to the commencement of the

12  *Siegel* action in 2004, Laura and Joanne Siegel, represented by their attorney, Mr.

13  Toberoff, resumed settlement negotiations with Warner/DC, regarding the Siegel

14  termination interest, which negotiations have been sporadic and ongoing to the

15  present.  *See* Docket No. 305-49 at 1669-71.

16      Courts have routinely held that common-interest applies to pre-litigation

17  disputes as well as litigation.  *See Gonzalez*, 669 F.3d at 980 ("no requirement that

18  actual litigation even be in progress" for common interest to apply); *United States v.*

19  *Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C. Cir. 1980)("So long as [parties]

20  anticipate litigation against a common adversary on the same issue or issues, they

21  have strong common interests…."); *BriteSmile, Inc. v. Discus Dental Inc.,* 2004 WL

---

[4]  DC falsely asserts that Defendants took the position in their anti-SLAPP briefing that negotiations with DC "actually ended in May *2002*." Mot. at 17 n.2.  Defendants have always maintained, including in their SLAPP briefing, that negotiations formally terminated when Laura and Joanne Siegel sent a notice in September 21, 2002 specifically terminating such settlement negotiations, but that their negotiations were "moribund" and did not pose any probability of "prospective economic advantage" by May 2002, when Joanne Siegel sent a letter to Time-Warner's CEO bitterly complaining about DC's negotiation tactics and "unconscionable contract."  Docket No. 305-22 (Petrocelli Decl. Ex. 22).  This was months before Mr. Toberoff's discussions with Laura and Joanne's attorney Kevin Marks in August, 2002, that DC alleges "interfered" with its supposed "prospective economic advantage." Docket No. 49 at ¶71-72.

9

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR RECONSIDERATION

2271589 *2 (N.D. Cal. Aug. 10, 2004) (common interest between parties who shared interest in sale of intellectual property).

DC yet again engages in self-serving speculation as to a document it has never seen, stating, without basis, that "Laura's urgings that Michael engage in business with Toberoff … is surely a subject of the November 2002 letter." Mot at 17. The letter does no such thing: it concerns legal and settlement strategies *vis-à-vis* DC/Warner that is squarely within the common interest privilege that this Court earlier upheld.

DC's remaining arguments are also unpersuasive. DC cites to earlier discovery disputes and rulings, none of which compel piercing the common-interest privilege in this instance. Mot. at 16. This Court's April 11, 2011 ruling ordered the production of a May 13, 2003 letter because it had not been expressly claimed or logged as privileged; the April 11 order contained no findings as to whether or not it was privileged. Docket No. 209 at 11-12. Judge Wright's October 24, 2011 order, which summarily stamped "granted" DC's motion for review as to a July 2003 letter, without specifying which of DC's *multiple* arguments, it endorsed, or anything else, also does little to compel production of the November 2001 letter at issue. Docket No 336 at 1.

DC cites to language in the Ninth Circuit's recent writ opinion that supports the upholding of privilege here. Mot. at 16. The Ninth Circuit noted that privilege applies where parties are "pursuing a common legal strategy" (Writ Opinion (attached at Docket No. 391, Appendix A at 4252), as did Laura and Michael Siegel, statutory co-owners of the termination right, with regard to DC.

Despite being informed that Defendants did not obtain the November 2, 2002 letter until after Renner Otto produced its electronic archive in August 2011, and that the letter was then properly listed on a privilege log pertaining to the archive provided to DC in November 2011, DC speciously argues that Defendants waived privilege by "their failure [to assert privilege] …. for years." Mot. at 17. This is

10

without merit and plainly contradicted by the record.  *See supra* at 3-4.  As detailed above, once Defendants came into possession of the November 2, 2002 letter, they promptly logged it.  Since the privilege logs were not untimely, Defendants did not waive privilege.  *See Jumping Turtle Bar & Grill v. City of San Marcos*, 2010 U.S. Dist. LEXIS 119390 (S.D. Cal. Nov. 10, 2010) (ten-week delay in the production of privilege log did not result in a waiver, even though privilege was not asserted with the initial discovery responses); *Tibble v. Edison Int'l*, 2008 U.S. Dist. LEXIS 106999, at *4–7 (C.D. Cal. Dec. 30, 2008) (holding that, where defendants served timely written responses that asserted the attorney-client privilege, a two-month delay in providing a privilege log did not waive privilege); *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 182-83 (N.D. Cal. 1990) (six weeks delay in privilege log does not waive privilege);  *Grand River Enterprises Six Nations, Ltd. v. King*, 2009 WL 63461 (S.D.N.Y. Jan. 12, 2009) ("since the privilege logs were not untimely, let alone flagrantly untimely, Defendants did not waive privilege")

### D.    DC's Misleading *Ad Hominem* Statements

DC makes a number of additional false statements that are irrelevant to its motion but bear correction:

- DC refers to "Michael, Laura, and Joanne Siegel's October 2001 settlement agreement and business relationship with DC" (Mot. at 1) despite the Court's ruling and subsequent judgment in *Siegel* rejecting DC's erroneous defense that an agreement had been reached.  *See Siegel v. Warner Bros. Entertainment, Inc.*, 542 F. Supp. 2d 1098, 1037-39 (C.D. Cal. 2008).

- DC misrepresents to the Court that Defendants "resisted providing [the Bulson privilege log] for six months" (Mot. at 2).  In fact, Defendants received the electronic archive in mid-August 2011, and furnished the log in November 2011.  Adams Decl., Ex. A.

- DC claims that "Judge Wright made clear in denying Defendants' SLAPP motion" that certain communications were not protected by the attorney-client

11

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR RECONSIDERATION

privilege (Mot. at 1).  Judge Wright ruled that DC's claims did not fall within
California's Anti-SLAPP law, which ruling is currently under appeal. Appeal
No. 11-56934 Docket No. 8.  The attorney-client privilege was neither at issue
nor mentioned in that decision.  *See* Docket No. 337.  *See also* Mot. at 6
(contending that Defendants are making "the very same arguments that Judge
Wright rejected in denying Defendants' SLAPP motion."); Adams Decl., Ex.
F.

- DC falsely claims Mr. Toberoff "began pressing" Joanne and Laura Siegel "to
do *business*" in November 2001, based on nothing more than Mr. Toberoff's
single brief, *unreturned* telephone message for Kevin Marks (Joanne and
Laura's then attorney) to call Mr. Toberoff, after he began representing the
family of Joe Shuster, who co-created Superman.  Docket No. 145-1 at 7.

- DC falsely claims "Bulson testified that Toberoff concealed his personal
business interest" in the attempted purchase of Michael Siegel's rights by Ari
Emanuel (Mot. at 9), when, as shown by DC's own citations, Toberoff simply
refused to identify the investor (Ari Emanuel), and, as DC is well-aware, Mr.
Emanuel, not Mr. Toberoff, had that "personal business interest."  Adams
Decl. at ¶3, Ex. B.  *See also* Mot. at 14 (referring to a "secret role").

- DC asserts that the April 17, 2012 writ opinion addressing defendants writ of
mandamus as to a narrow privilege waiver issue "pointed out the obvious
ethical and professional concerns raised by Toberoff's actions."  Mot. at 5.  DC
intentionally omits that the Writ Opinion explicitly stated that "this is not
before this court." Writ Opinion at 4243 (attached at Docket No. 391,
Appendix A at 19).

- In a similar vein, DC pretends that the Writ Opinion somehow decided the
privileged status of the "Timeline" documents (Mot. at 6), the Writ Opinion
again expressly stated that "we do not address that issue" and noted that the
parties did not "challenge[] whether these communications would have been

12
DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSTRUCTION

1     privileged absent waiver, we do not address that issue." Writ Opinion at 4247.

2  • DC asserts that the Writ found that "Toberoff acted as a business man in his

3     dealing with the heirs."  Mot. at 6.  *See id.* at 5 (referring to supposed "dual

4     role").  That misstatement, like numerous other factual misstatements in the

5     Writ Opinion appears to recite DC's allegations (*e.g.*, "[Toberoff] also claimed

6     he would arrange for a new Superman film to be produced." Writ at 4243),

7     concern matters in serious dispute that have not yet been adjudicated or ruled

8     on by the District Court, is not supported by the record, and was not raised by

9     nor was it germane to Defendants' Writ petition. *Panaview Door & Window*

10    *Co. v. Reynolds Metals Co*., 255 F.2d 920, 926 (9th Cir. 1958) ("The Federal

11    Rules of Civil Procedure give this Court no power to make new independent

12    findings upon evidence which this Court did not hear. Trial de novo is not

13    permitted under our present system"). Accordingly, on May 1, 2012,

14    Defendants filed a petition for rehearing to address such errors.  Adams Decl.,

15    Ex. G.

16 • DC complains that it "requested documents relating to Toberoff's

17    communications with Bulson in its May 2011 subpoena … but defendants

18    produced none" (Mot. at 10), conveniently omitting that DC's May 2011

19    subpoena was to a third-party, *Bulson*, (Docket No. 395-1 at 105) not

20    Defendants, and that Defendants had already produced many of their

21    communications with Bulson, by Bates number designations of responsive

22    documents produced in *Siegel*, per the parties' express agreement.

23 • DC grossly mischaracterizes the Writ Opinion in stating "the [Ninth Circuit]

24    noted that because Toberoff acted as a business man in his dealings with the

25    heirs, 'most of these [Timeline] documents are not covered by the attorney-

26    client privilege.'"  (Mot. at 6).  As addressed above, the Writ Opinion was

27    explicit that it was not ruling on the privilege of the documents.  Writ Opinion

28    at 4247 n. 4 ("Because no one challenges whether these communications

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION

1    would have been privileged absent waiver, we do not address that issue.")

2                                    <u>**CONCLUSION**</u>

3          For the foregoing reasons, Defendants respectfully request that the Court deny

4    Plaintiff's Motion To Compel The Production of Documents And For

5    Reconsideration of The Court's June 27, 2011 Order.

6    Dated: May 7, 2012            RESPECTFULLY SUBMITTED,
7                                  /s/ Marc Toberoff
                                   _____
8                                  Marc Toberoff
                                   TOBEROFF & ASSOCIATES, P.C.

9                                  Attorneys for Defendants
10                                 Mark Warren Peary, as personal representative of the
                                   Estate of Joseph Shuster, Jean Adele Peavy, and Laura
11                                 Siegel Larson, individually and as personal
12                                 representative of the Estate of Joanne Siegel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION TO COMPEL AND FOR
RECONSIDERATION