Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER REGARDING THE PRODUCTION OF THE "STOLEN DOCUMENTS"**<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Proposed Hearing Date:  May 11, 2012<br>Proposed Hearing Time:  10:00 a.m.<br><br>Courtroom:  540 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that defendants request that the Court issue a protective order concerning the documents ordered produced pursuant to the Court's May 25, 2011 order and subsequent orders. Defendants respectfully requests a hearing on this *ex parte* application, on May 11, 2012, at 10:00 a.m., by the above-entitled Court, located at 255 East Temple Street, Los Angeles, California in Courtroom 540, or at a date or time thereafter convenient to the Court.

This *ex parte* application is made on the grounds that the documents consist of sensitive and confidential attorney-client privileged communications and attorney work product, which should be maintained as private and confidential and limited in use to the greatest extent possible, even if the privilege has been held to be technically waived by limited disclosure to the USAO pursuant to a grand jury subpoena and confidentiality agreement.

*Ex parte* relief is justified because the earliest date this motion could otherwise be heard is June 11, 2012, per Local Rule 37 and the Court's calendar, and the earliest a motion could be heard on shortened time is May 14, 2012, while the stay imposed by the May 25 Order is set to expire at 12:00 p.m. on May 11, 2012. Thus, absent emergency relief, Defendants would be unable to have their motion considered before being forced to produce the sensitive documents at issue without protection.

**If the Court is inclined to rule on this *ex parte* application after 12:00 p.m. on May 11, 2012, Defendants respectfully request that it briefly continue the time at which the existing stay will be lifted until the Court is able to consider and rule on this application**.

On May 8, 2012, Defendants gave notice of this *ex parte* application to counsel for Plaintiff, which opposed the relief that Defendants seek. *See* Declaration of Marc Toberoff ("Tob. Decl.") Ex. A. This application is made pursuant to Local Rule 7-19, and is based on this application, the attached memorandum of points and authorities, the concurrently filed declaration of Marc Toberoff and the attached

exhibits, such further showing or evidence that Defendants may present at a hearing
on this *ex parte* application, and any other matters properly before the Court.

In the alternative, the Court should order the documents produced pursuant to
the protective order already agreed-upon by the parties in *Siegel*; that order gives
parties the opportunity to challenge confidentiality designations via regular noticed
motions if they deem it appropriate. Tob. Decl., Ex. J.

Finally, at a minimum, the Court should enter a provisional protective order to
allow the Court to address the matter of any further disclosure in the context of a
fully noticed motion.

Dated:  May 9, 2010                              RESPECTFULLY SUBMITTED,

_____          _____
Laura W. Brill                                   Marc Toberoff
KENDALL BRILL & KLIEGER LLP              TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants-Petitioners,        Attorneys for Defendants-Petitioners,
*Pacific Pictures Corporation, IP*            *Mark Warren Peary, as personal*
*Worldwide, LLC, IPW, LLC, and*              *representative of the Estate of Joseph*
*Marc Toberoff*                               *Shuster, Jean Adele Peavy, Joanne*
                                             *Siegel and Laura Siegel Larson*

NOTICE OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER RE:
PRODUCTION OF THE STOLEN DOCUMENTS

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................... 1

PROCEDURAL BACKGROUND ...................................................... 3

    A.   Immediate Relief Is Necessary Because Privileged Documents Have Been Ordered Produced. ............................................... 3

    B.   The Documents In Question Were Repeatedly Upheld As Privileged ........................................................................... 4

    C.   Defendants Took Extensive Steps To Preserve The Documents Confidentiality ................................................................... 5

ARGUMENT ................................................................................... 6

    A.   A Protective Order Is Warranted As To Attorney-Client Communications ................................................................. 6

    B.   A Protective Order is Warranted As To Attorney-Client Communications ................................................................. 7

        1.   Documents Remain "Confidential" And Sensitive Meriting A Protective Order Even If Privilege Is Technically Waived ........................................................ 8

        2.   There Is Every Reason To Maintain the Confidentiality of These Documents ........................................................ 9

    C.   Communications During The USAO's Confidential Investigation Should Be Protected ...................................... 10

    D.   A Protective Order is Warranted as to Numerous Other Documents ...................................................................... 11

CONCLUSION .............................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Babcock v. Superior Court (DiGiovanni),*
29 Cal. App. 4th 721 (1994) .................................................................9

*Bonin v. World Umpires Ass'n,*
204 F.R.D. 67 (E.D. Pa. 2001)............................................................12

*Crystal Grower's Corp. v. Dobbins,*
616 F.2d 458 (10th Cir.1980) ...............................................................8

*Diversified Group, Inc. v. Daugerdas,*
217 F.R.D. 152 (S.D.N.Y. 2003) ..........................................................7

*Duracell Inc. v. SW Consultants, Inc.*
126 F.R.D. 576 (N.D.Ga.1989).......................................................11-12

*Fed. Election Comm'n v. Christian Coal,*
179 F.R.D. 22 (D.D.C. 1998)................................................................8

*Fid. Fed. Sav. & Loan Ass'n v. Felicetti,*
148 F.R.D. 532 (E.D. Pa. 1993)..........................................................11

*Hill v. NCAA,*
7 Cal. 4th 1 (1994) .............................................................................10

*In re Carrsow-Franklin,*
456 B.R. 753 (Bankr. D.S.C. 2011) .....................................................12

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,*
101 F.R.D. 34 (C.D. Cal. 1984).............................................................7

*IPALCO Enterprises, Inc. v. PSI Res., Inc.*
148 F.R.D. 604 (S.D. Ind. 1993)..........................................................12

*Keith H. v. Long Beach Unified Sch. Dist.,*
228 F.R.D. 652 (C.D. Cal. 2005) ..........................................................6

*Pintos v. Pacific Creditors Ass'n,*
605 F.3d 665 (9th Cir. 2010) ................................................................7

*Seals v. Mitchell,*
2001 WL 1233650 (N.D. Cal. 2011) ...................................................11

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984)...............................................................................9

*Siedle v. Putnam Invs.,*
147 F.3d 7 (1st Cir. 1998) ....................................................................8

*Smith v. City of Chicago,*
2005 WL 3215572 (N.D. Ill. Oct. 31, 2005) .......................................11

*Stadish v. Superior Court*,
71 Cal. App. 4th 1130 (1999) ....................................................................8

*UMG Recording, Inc. v. Bertelsmann AG*,
479 F.3d 1078 (9th Cir. 2007) ................................................................10

*United States v. Gangi*,
1998 WL 226196 (S.D.N.Y. May 4, 1998) ...............................................8

**<u>Other Authorities</u>**

Cal. Const., art. I, § 1 ...............................................................................9

Fed.R.Civ.P. 26(c) .............................................................................. 6-7, 9

Roberta M. Harding,
*"Show and Tell": An Analysis of the Scope of the Attorney-Client Waiver
Standards*, 14 Rev. Litig. 367, 417 (1995) ...............................................8

# **INTRODUCTION**

Defendants apply *ex parte* for a protective order concerning numerous highly-sensitive, privileged attorney-client communications that were stolen from Marc Toberoff's law firm ("Stolen Documents")[1] and confidential communications with the United States Attorney's Office ("USAO") relevant to its confidential investigation into the theft (the "USAO Documents").  The protective order Defendants seek would simply require that Plaintiff's counsel keep such documents confidential and that their use be restricted to this case and the related *Siegel* actions, and that any filing of such documents in this case or the related *Siegel* cases, be made under seal.  A similar order has been entered in *Siegel*, which, to facilitate discovery of sensitive materials, provides a rational procedure for a party to designate documents as confidential at the time of production.  Such an order would be appropriate here.

At a minimum, the Court should enter a provisional order restricting further public dissemination of the stolen privileged documents to allow the Court to consider in the context of a fully noticed motion the question of whether any further disclosure is permissible or appropriate.

Good cause exists for protecting these documents.  The documents consist of sensitive attorney-client communications and attorney work product, which should be protected as confidential to the greatest extent possible even if the privilege has been held to be waived by limited disclosure to the USAO pursuant to a grand jury subpoena.  Disclosure of these sensitive materials was only made pursuant to an express confidentiality agreement with the USAO to ensure that such materials be kept confidential as to third parties.  Ninth Circuit Case No. 11-71844 Docket No. 35-1 at 2 n.2.  A victim's right to privacy should be protected to the extent possible,

---

[1] To be clear the term "Stolen Documents" in this application refers **only** to as-yet-unproduced, attorney-client or work-product privileged documents, which are the only documents at issue herein.

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

and aside from the theft from Mr. Toberoff's office and involuntary disclosure made by the thief, the documents have been maintained as strictly confidential at all times. Moreover, this restricted confidential disclosure to the USAO was made under sympathetic circumstances as Defendants were the victims of the theft, and disclosed this material to the USAO, at its request, solely to enable the USAO to properly investigate the crime. This by no means should result in disclosure of this confidential client material to the public at large.

In the related *Siegel* actions, the parties stipulated to, and the Court entered a protective order that allows a party to mark confidential documents as such and that permits an orderly challenge to such confidentiality designations. A similar process and governing protective order would be appropriate here to protect the compelling interests of the Defendants in privacy for their confidential communications with counsel. The documents include without limitation medical and other confidential information that should not be disclosed.

A protective order as to this private information is especially justified due to Warner Bros.' strong interest in damaging Mr. Toberoff's reputation in order to eliminate him as a litigation adversary. Warner Bros. efforts have already included attaching the anonymous, derogatory Toberoff Timeline to its Complaint and engaging in a nasty media campaign against Mr. Toberoff based on the Timeline. It will no doubt sensationalize the Stolen Documents and seek to exploit them out of context for collateral gain. Declaration of Marc Toberoff ("Tob. Decl."), Exs. C-I.

A protective order is also justified as Defendants' petition for rehearing and rehearing en banc is still pending before the Ninth Circuit. Production of the documents without a protective order could prematurely preempt such review, by permitting plaintiff DC Comics ("DC") to freely disseminate the documents and use them in public filings and/or media campaigns, thereby irreparably injuring Defendants even if privilege is ultimately upheld by the Ninth Circuit.

*Ex parte* relief is necessary as this Court lifted its stay as to production of the

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

Stolen Documents effective Friday, May 11, 2012, at 12:00 p.m., and, if the Ninth

Circuit denies Defendants a stay, Defendants must produce such documents.

Defendants reasonably proposed to DC that they provisionally designate the Stolen

Documents as "Confidential" and thereafter move for a protective order, pursuant to

an expedited stipulated schedule to avoid unnecessarily burdening the Court with an

*ex parte* application on this important issue.  Tob. Decl., Ex. A.  DC refused such

proposals, necessitating the instant application.  *Id.*  Given the above, the deadline for

lifting the Court's stay should be briefly continued until this *ex parte* application is

heard and decided.

## PROCEDURAL BACKGROUND

### A.    Immediate Relief Is Necessary Because Privileged Documents Have Been Ordered Produced

On May 25, 2011, this Court ordered produced numerous privileged

documents stolen from the law offices of Marc Toberoff, counsel for plaintiff Laura

Siegel Larson in the *Siegel v. Warner Bros. Entertainment Inc.*, C.D. Cal. 04-08400

ODW (RZx) ("*Siegel*") and confidential communications between Mr. Toberoff and

the United States Attorney's Office during its investigation of the theft, but stayed

production "until *all* review is exhausted."  Docket No. 262 at 2-3.  Defendants

brought a petition for a writ of mandamus, which was recently denied by a panel of

the Ninth Circuit.  *In re Pacific Pictures Corporation,* 9th Cir. Case No. 11-71844,

Docket No. 27-1 (the "Writ Opinion").  Defendants thereafter brought a petition for

rehearing and rehearing en banc of the Writ Opinion to the Ninth Circuit.  *In re

Pacific Pictures Corporation,* 9th Cir. Case No. 11-71844, Docket No. 31-1 (the

"Rehearing Petition").

On May 7, 2012, this Court granted DC's *ex parte* application to lift the stay,

expressing the view that the matter was now in the hands of the Ninth Circuit and

best addressed by it.  Docket No. 416.  The Court deliberately left the stay in place

until 12:00 pm on Friday, May 11, 2012, to afford Defendants time to seek a stay

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE
ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

1   from the Ninth Circuit.  Docket No. 414 at 23-25.  On May 8, 2012, Defendants filed

2   an emergency motion for a stay with the Ninth Circuit, asking that such motion be

3   decided by May 11, 2012. *In re Pacific Pictures Corporation,* 9th Cir. Case No. 11-

4   71844, Docket No. 34-1 (the "Stay Motion").  As of the time of finalizing this *ex*

5   *parte* application, the Ninth Circuit has yet to rule on the Stay Motion.

6   **B.    The Documents In Question Were Repeatedly Upheld As Privileged**

7       As this Court is aware, DC unsuccessfully challenged the Siegels' and

8   Shusters' privilege assertions as to the Stolen Documents in *Siegel* on no fewer than

9   ***five*** separate occasions (*see* Docket No. 160 at 66:10-68:14; *see also* Docket No. 163,

10  Ex. TT, ¶ 9; Docket No. 164, Ex. B, ¶ 3; Docket No. 163, Ex. UU; Docket No. 164,

11  Ex. C at 20:15-22:26; Docket No. 164, Ex. D, ¶¶ 48-51; Docket No. 164, Ex. G at 5;

12  Docket No. 163, Ex. VV, ¶¶ 6-7; Docket No. 164, Ex. I at 1, 4), and similarly

13  challenged Defendants' privilege assertions on ***three*** separate occasions in this

14  litigation.  *See* Docket Nos. 160, 225, 253.  Each time privilege was upheld.

15  Specifically, Judge Larson *rejected* DC's repeated challenge to the Siegels' privilege

16  logs and their assertions of privilege as to the stolen documents, and specifically

17  upheld the "privilege log entries … in Mr. Toberoff's May 21, 2007 declaration,"

18  made pursuant to this Court's April 30, 2007 order.  Docket No. 164, Ex. H at 5.

19      In short, the Stolen Documents were repeatedly claimed and upheld as

20  privileged.  While DC has used the Writ Opinion's *dicta* concerning whether the

21  documents were privileged, and the confusing passage quoted out of context by DC,

22  which conflicts with the Circuit's prior express statement in the Writ Opinion that

23  "[b]ecause no one challenges whether these communications would have been

24  privileged absent waiver, we do not address that issue.  For example, we assume but

25  do not decide that these communications were all made for the purpose of obtaining

26  legal as opposed to business advice."  Writ Opinion at 4247 n.4.  Privilege had been

27  upheld by the District Court in *Siegel* and this case, and as the Circuit rightly noted

28  that issue was *not* before it on Defendants' writ petition.

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE
ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

## C.    Defendants Took Extensive Steps To Preserve The Documents Confidentiality

Regardless of whether privilege is ultimately found to be waived by restricted disclosure to one third party – the USAO – Defendants and the USAO took steps to preserve the confidentiality of these sensitive documents as to the rest of the world. As part of the USAO's investigation, Assistant U.S. Attorneys Beong-Soo Kim and Brian Klien advised Mr. Toberoff's counsel, Richard Kendall, a former Assistant U.S. Attorney, that "they would need to review the privileged Stolen Privileged Documents as part of any investigation and/or prosecution regarding the theft from Mr. Toberoff's offices" in order to determine the nature and severity of the crime. Docket No. 238, ¶ 4.  Mr. Kendall responded that Defendants "would not disclose the documents to the government unless the privilege could be protected."  Docket No. 238, ¶¶ 5.

On September 13, 2010, a Grand Jury subpoena was served on Mr. Toberoff requesting copies of the Timeline and the Stolen Privileged Documents.  *See* Docket No. 207, Ex. A.  In a letter to Mr. Kendall, the USAO agreed to maintain the confidentiality of the requested documents, recognized the "objective to preserve any and all applicable privileges," and assured Defendants that "nothing in … Mr. Toberoff's disclosure of the [Stolen D]ocuments … is intended to waive any applicable privilege or protection under law."  Docket No. 207, Ex. B at 2.  The USAO also assured Defendants that it "***will maintain the confidentiality of the [Stolen D]ocuments and related information***," and that it would "***return the [] documents …as soon as we determine that we no longer need them***."  *Id.* at 1 (emphasis added).

Moreover, the Stolen Documents were disclosed by Defendants in response to a grand jury subpoena, and subject to Fed. R. Crim. P. 6(e)(2)'s grand jury secrecy protections.  *See In re Grand Jury Proceedings*, 851 F.2d 860, 866 (6th Cir. 1988) (confidential documents produced to grand jury cannot be disclosed pursuant to Fed.

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

R. Crim. P. 6(e)); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990)
(privilege not waived by production of documents to grand jury).

On September 17, 2010, Mr. Kendall produced the Stolen Documents to the
USAO pursuant to the Grand Jury subpoena and the USAO's assurances, together
with a letter confirming the understanding that the documents were being provided
pursuant to a common interest privilege and without waiver of privilege.  Docket No.
207, Ex. C ("This response … is made subject to and without waiver of the attorney-
client privilege, work product immunity, or any other privilege applicable to these
documents."; "we are providing [the stolen documents] subject to our mutual
understanding that providing such documents in response to your subpoena shall not
constitute a waiver of any applicable privilege or immunity"; "'the Government will
maintain the confidentiality of the MT documents'") (emphasis added).  The USAO
"was willing to be governed by those conditions [in Mr. Kendall's September 17
letter] in accepting the documents," and that the documents were being produced
subject to an express agreement to maintain confidentiality and privilege.  Docket
No. 207, Ex. C; Docket No. 238, ¶ 7.

Thus, as even DC has admitted, "[e]veryone agreed that the USAO and
petitioners had entered into a confidentiality agreement that governed what the
USAO could do with the documents."  Ninth Circuit Case No. 11-71844 Docket No.
35-1 at 2 n.2.

## **ARGUMENT**

### A.    **This Court Has Broad Authority To Issue a Protective Order**

Rule 26(c) provides that the court, upon a showing of good cause, "may make
any order which justice requires to protect a party or person from annoyance,
embarrassment, oppression, or undue burden or expense."  Fed.R.Civ.P. 26(c).  *See
Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 660 (C.D. Cal. 2005)
(granting protective order under Rule 26(c) appropriate to prevent embarrassment to
party).

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE
ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

"A trial judge has discretion in the granting of a protective order.  This rule reflects the principle that 'every court has supervisory power over its own records and files.'"  *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 40-41 (C.D. Cal. 1984) (citation omitted).

"Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts."  *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007).  "These protective orders represent judicial efforts to strike a proper balance between 'the philosophy of full disclosure of relevant information' and the need for 'reasonable protection against harmful side effects'…."  *Id.* (citations omitted).

A court can seal documents, such as "private materials unearthed during discovery," pursuant to its powers under Rule 26(c), if a party shows "'good cause' exists to protect the information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.'"  *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citations omitted).

Moreover, under Federal Rule of Evidence 502(d), this Court has particular authority to issue a protective order regarding attorney-client communications, and has the express authority to issue orders concerning the use and disclosure of such documents.

## B.    A Protective Order Is Warranted As To Attorney-Client Communications

Many of the Stolen Documents are privileged attorney-client communications, others are attorney work product, and, as set forth above, have been repeatedly upheld as such in both this case and in *Siegel v. Warner Bros. Entertainment, Inc.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx).  *See also* Tob. Decl., Ex. B.  "It is undeniable that the public has a significant interest in preserving the confidentiality of attorney-client communications." *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 156 (S.D.N.Y. 2003).  "Indeed, this is precisely the kind of

countervailing concern that is capable of overriding the general preference for public access to judicial records." *Siedle v. Putnam Invs.*, 147 F.3d 7, 11 (1st Cir. 1998).

## 1. Documents Remain "Confidential" And Sensitive Meriting A Protective Order Even If Privilege Is Technically Waived

DC takes the onerous position that, because the attorney-client privilege was held waived as to these sensitive documents due to Defendants' cooperation with the USAO (pursuant to a grand jury subpoena and confidentiality agreement) they should be afforded no protection whatsoever.

That is contrary to the decisions of numerous courts which have found that even where the attorney-client privilege had been waived, it is still appropriate to maintain such communications under seal. *See Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 462 (10th Cir.1980) (placing documents under seal even though the attorney-client privilege had been waived); *Fed. Election Comm'n v. Christian Coal*, 179 F.R.D. 22, 24 (D.D.C. 1998) (granting a protective order as to confidential documents, reasoning that "[Plaintiff] has met its burden to show that *it* is entitled to these documents. But does its entitlement then require that the documents be shared with the world? Not at this stage of the proceeding."); *see also Stadish v. Superior Court*, 71 Cal. App. 4th 1130, 1144 (1999) ("[A] party may – even after it has waived its right to object to the production of documents, and has produced most of the documents requested – seek a protective order restricting dissemination of the documents"); Roberta M. Harding, *"Show and Tell": An Analysis of the Scope of the Attorney-Client Waiver Standards*, 14 Rev. Litig. 367, 417 (1995)("[Waiver] by no means prohibits a party from seeking a protective order to limit who can have access to the previously privileged communications.").

"In considering whether to enter a protective order, a court typically considers [] the kind of access traditionally afforded such documents." *United States v. Gangi*, 97 CR. 1215 (DC), 1998 WL 226196 (S.D.N.Y. May 4, 1998). Furthermore, "restraints placed on discovered, but not yet admitted, information are not a

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

1  restriction on a traditionally public source of information." *Seattle Times Co. v.*

2  *Rhinehart*, 467 U.S. 20, 33 (1984).  Here, the public traditionally has **no** access to

3  privileged and confidential attorney-client communications and attorney work

4  product shared solely with the USAO pursuant to a confidentiality agreement.

5  **2.**    **There Is Every Reason To Maintain The Confidentiality Of**

6  **These Documents**

7  There is no getting around the fact that Plaintiff claims unrestricted

8  "entitlement" to *stolen* attorney-client communications and work product.  The

9  Stolen Documents consist of communications at the core of the attorney-client

10  privilege and the work product doctrine, including, without limitation, frank

11  discussions of legal strategies and opinions requested by Defendants of legal ethics

12  counsel, and were clearly made with the expectation of privacy and confidentiality.

13  But for the theft and provision of these privileged documents to Defendants'

14  litigation adversaries during the *Siegel* case, there would have been no USAO

15  investigation, no cooperation with the USAO by Defendants, the victims of this

16  outrageous privacy crime, nor technical finding of waiver, substantially compounding

17  their injuries.  Notwithstanding, such technical waiver of privilege, Defendants each

18  still have legitimate privacy concerns that should be protected and their attorney-

19  client communications and attorney work product should not be made generally

20  available inequitably subjecting them to "annoyance, embarrassment, oppression, or

21  undue burden.  Fed.R.Civ.P. 26(c).  *See also* Cal. Const., art. I, § 1 (recognizing

22  "inalienable" right to privacy); Cal. Const. art. I, § 28(b)(1) ("In order to preserve and

23  protect a victim's rights to justice and due process, a victim shall be entitled to the

24  following rights: (1) To be treated with fairness and respect for his or her privacy and

25  dignity…"); *Babcock v. Superior Court (DiGiovanni)*, 29 Cal. App. 4th 721, 728

26  (1994) (recognizing "one whose privacy is involved is presumptively entitled to a

27  protective order limiting the use of the information to the litigation itself, and barring

28  its dissemination for purposes not related to a fair resolution of the action") (citation

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE
ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS

omitted); *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994) (recognizing a "right of privacy" that prevents "business interests from … from misusing information gathered for one purpose in order to serve other purposes or to embarrass us") (citation omitted).

This Court should at least, consistent with the authorities cited above, restrict Plaintiff's use of such Stolen Documents to this and the *Siegel* case.  DC's opposition to this application and its unreasonable refusal to even stipulate to an expedited schedule to hear Defendants' motion for a protective order underscores the need for protection.  As made clear in Defendants' correspondence with DC, the contemplated protective order would not inhibit DC from using the documents in question either in this case or in *Siegel*.  Tob Decl., Ex. A.  The only explanation for DC's refusal is that it intends to use the documents to obtain leverage through its ongoing media campaign to interfere with Defendants' attorney-client relationships and damage Mr. Toberoff's professional reputation.

DC's position that such confidential stolen documents should not be subject to a protective order would allow the broad dissemination of obviously sensitive heretofore privileged material, regardless of relevance or legitimate privacy concerns, and among the injuries to Defendants' privacy interests and other detriments would have a pronounced adverse effect on the public's faith in the confidentiality of attorney-client communications.  *See UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1090 (9th Cir. 2007) ("The attorney-client privilege is the oldest and arguably most fundamental of the common law privileges recognized under Federal Rule of Evidence 501.  The assurance of confidentiality promotes open attorney-client communications, which are 'central to the legal system and the adversary process.'") (citations omitted) (abrogated on other grounds, 130 S.Ct. 599).

**C.**    **Communications During The USAO's Confidential Investigation Should Be Protected**

Separate and apart from the issues presented by the Stolen Documents, there is the issue of Mr. Toberoff's communications with the USAO.  The USAO assured

Mr. Toberoff that it would "maintain the confidentiality" of his communications. Docket No. 207, Ex. B at 1).  Pursuant to this confidentiality agreement, Mr. Toberoff made highly sensitive communications to the USAO concerning its pending investigation.  These communications, which included Mr. Toberoff's frank assessment of potential suspects, were made with an obvious expectation of privacy pursuant to the confidentiality agreement and grand jury secrecy protections.

Although these communications were ultimately held by this Court not to be protected by the common interest privilege, their sensitive confidential nature remains, under both the authorities cited *supra* and the confidentiality of  USAO investigations.   *See Fid. Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993) (communications regarding USAO's investigations subject to protective order as such "were not meant to be available to the general public.").

### D.   A Protective Order Is Warranted As To Numerous Other Documents

Furthermore, the Stolen Documents contain information that, even aside from the confidential attorney-client communications and attorney work product, would warrant a protective order to preserve confidentiality.

In some of the communications (*e.g.,* Q 172-175, 310-313) personal information and sensitive medical information is revealed.  This alone warrants protection. *Seals v. Mitchell,* 2001 WL 1233650 (N.D. Cal. 2011) (medical information subject to protective order); *Smith v. City of Chicago*, 04 C 2710, 2005 WL 3215572 (N.D. Ill. Oct. 31, 2005) ("good cause exists to enter a protective order prohibiting public disclosure of social security numbers, salaries and rates of pay, home addresses and telephone numbers").

Other documents (*e.g.,* Q  10, Q 40, Q 57) divulge the Siegels' confidential strategies as to the exploitation of their copyright interests.  The public dissemination of such documents could impair their ability to realize value from their copyrights, justifying a protective order.  *See Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D.

576, 578–79 (N.D. Ga. 1989) (protective order for defendant's marketing strategy); *IPALCO Enterprises, Inc. v. PSI Res., Inc.*, 148 F.R.D. 604, 607 (S.D. Ind. 1993) (protection of business strategies properly handled through a protective order).

Still other documents (*e.g.*, Q 98-104) are legal ethics opinion from an ethics expert engaged by Defendants to review their agreements.  The broad dissemination of this document to the public, out of context, will undoubtedly harm defendants' reputation and cause undue hardship and embarrassment, justifying a protective order.  *See Bonin v. World Umpires Ass'n*, 204 F.R.D. 67, 70 (E.D. Pa. 2001) (granting protective order and reasoning that "plaintiffs should not be allowed carte blanche to utilize the information legitimately disclosed in discovery to work mischief on other fronts either to discredit or undermine [opposing party]"); *In re Carrsow-Franklin*, 456 B.R. 753, 758 (Bankr. D.S.C. 2011) (granting protective order were party's reputation adversely affected by the publication of his deposition on the Internet).

## **CONCLUSION**

Defendants respectfully request that this Court enter a protective order permitting Defendants to designate the Stolen Documents as "confidential" if/when they are produced, and requiring that Plaintiff and its counsel keep such Stolen Documents confidential, that their use be restricted to this case and the *Siegel* case, and that any filing of such documents in such cases, be made under seal, absent further order of the Court.

In the alternative, the Court should order the documents produced pursuant to the protective order already agreed-upon by the parties in *Siegel*, and address any challenges to the confidentiality designations in the context of a regularly-noticed if one is raised.  Tob. Decl., Ex. J.  At a minimum, the Court should enter a provisional protective order to prohibit any public dissemination of the documents or use outside of this action and *Siegel* to allow for further consideration pursuant to a regularly-noticed motion by Defendants for a protective order.  *See* [Proposed] Order filed

1 | concurrently.

2 |      Furthermore, if the Court is inclined to rule on this *ex parte* application after

3 | 12:00 p.m. on May 11, 2012, Defendants respectfully request that it briefly extend its

4 | ***lifting*** of the stay per its May 7, 2012 order so as to parallel its ruling on this

5 | application.

6 | Dated:  May 9, 2012       RESPECTFULLY SUBMITTED,

7 |

8 |        Marc Toberoff
  |        TOBEROFF & ASSOCIATES, P.C.

9 |

10 |        Attorneys for Defendants
   |        Mark Warren Peary, as personal representative of the

11 |        Estate of Joseph Shuster, Jean Adele Peavy, and Laura
   |        Siegel Larson, individually and as personal

12 |        representative of the Estate of Joanne Siegel

MEMO IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR A PROTECTIVE
ORDER RE: PRODUCTION OF THE STOLEN DOCUMENTS