DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>   Plaintiff,<br><br>   v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>   Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION FOR A PROTECTIVE ORDER**<br><br>DECLARATION OF CASSANDRA SETO FILED CONCURRENTLY HEREWITH<br><br>**Judge**:       Hon. Otis D. Wright II<br>**Magistrate**:  Hon. Ralph Zarefsky |

Defendants' *ex parte* application for a protective order is months too late, substantively without merit, and filled with conspiracy theories that are false and irrelevant. Despite this Court's having *one year* ago ordered defendants to produce the Timeline documents, defendants *never once* moved for a protective order in this case generally, or with respect to the Timeline or related USAO documents. Three weeks ago, the Ninth Circuit affirmed this Court's waiver ruling, and that same day DC asked defendants to produce all of these materials. Defendants yet again chose not to move for a protective order, even though DC proposed an expedited procedure to litigate such confidentiality issues. Two weeks ago, DC moved this Court *ex parte* to lift its stay order and require defendants to produce the documents. In its application, DC addressed and refuted defendants' arguments about the need for a protective order. Yet again, defendants rolled the dice and never moved for a protective order or explained on what basis one should enter.

The Court lifted its stay orders on Monday—and now more than two days later, and less than 36 hours before the Court's order takes effect—defendants move *ex parte* for a protective order and also ask the Court to stay its Monday ruling. Defendants caused their own "emergency" by selectively disclosing supposedly privileged documents to the USAO, and then when that waiver backfired, by *failing for almost a year to seek a protective order* that would govern their production.

There is no basis to treat these documents as confidential. The only real basis—*i.e.*, privilege—was waived, and the contents of the documents are already a matter of public record in, *e.g.*, the Toberoff Timeline that summarizes them. DC asked defendants for weeks to identify any legitimate bases to hold any of the documents in confidence, but they refused to provide the required specifics. Their *ex parte* application provides scant details, but nothing close to the document-by-document "good cause" showing required to justify shielding all or any parts of any document. The law does not permit the blanket protective order defendants seek. And for good reason; these are important documents that DC needs to use in

imminent filings with the Ninth Circuit and this Court—and in discovery and in use with witnesses. Defendants were required to show good cause as to *each document* they wish to protect. They have not done so and created an emergency situation where none was necessary. Accordingly, their application should be denied.

**1. Defendants Are Not Entitled To *Ex Parte* Relief.** The record is clear what happened here: Prior to this last-second *ex parte* application, defendants never moved the Court for a protective order notwithstanding the Court's ruling one year ago ordering them to produce Timeline documents. Indeed, defendants refused to agree to a protective order in this case *for more than a year*, including by making unreasonable demands about such an order last fall. *See* Decl. of Cassandra Seto ("Seto Decl.") Ex. A at 43-44. *Ex parte* relief is never warranted under such circumstances. *See Charley v. Chevron USA*, 2010 WL 2792486, at *1 (C.D. Cal. July 13, 2010) (*ex parte* application denied because applicant "created the purported 'emergency'"); *Jamdat Mobile Inc. v. Jamster Int'l Sarl Ltd.*, 2005 WL 5960924, *1 (C.D. Cal. Oct. 4, 2005) ("An *ex parte* application is solely for extraordinary relief."). As all know: "*Ex parte* applications are not intended to save the day for parties who failed to present requests when they should have." *Mission Power Eng'g Co. v. Cont'l Cas.* Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).

This Court ordered defendants to produce the Timeline documents in May 2011. Docket No. 262. In August 2011, it ordered them to produce all of their communications with the USAO. Docket No. 309. At defendants' request, the Court stayed both orders until defendants' petition for writ of mandamus was resolved. Docket Nos. 287, 309. That petition did not deprive this Court of jurisdiction to hear further discovery matters. *See Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) ("petitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case"); *Ellis v. U.S.D.C.*, 360 F.3d 1022, 1022-23 (9th Cir. 2004) (same). Yet, defendants never made any effort— *none*—in more than 11 months to move for a protective order.

This is not surprising. Defendants never raised confidentiality concerns in opposing DC's Timeline or USAO motions—the only claims they made were privilege and common-interest. Nor did they raise confidentiality concerns or the need for a protective order in requesting that this Court stay its orders, in seeking review from the district court, or in any of the Ninth Circuit proceedings.

On April 17, 2012, the Ninth Circuit denied defendants' writ petition and affirmed this Court's ruling that defendants waived privilege over the Timeline documents and had no common-interest privilege with the government. Docket No. 391 at 16-31. That same day, DC sent defendants a letter requesting that they produce the Timeline and USAO documents, and advised them that if they refused to do so, DC would move *ex parte* to obtain them. Seto Decl. Ex. B at 43-44. Defendants asked DC if the documents could be produced as "Confidential" pursuant to the protective order in the *Siegel* case, writing on April 17: "If DC is unwilling to agree to this simple procedure, we will have no choice but to seek a protective order." *Id.* Ex. C at 45. DC immediately declined defendants' offer, *id.* Ex. D at 47, but defendants took no steps to seek a protective order.

In the interest of expediting matters, DC did suggest on April 18 that, if defendants produced all of the documents by the end of the week:

> DC will treat the Timeline documents (but not defendants and defense counsels' communications with the government) as confidential pending our review of the Timeline documents. We will let you know next week whether we agree that any of the Timeline documents should be treated as confidential. If you disagree without our positions, we can meet and confer next week on the issue, and you can file a motion for any protective order you seek, and we will agree to expediting briefing and hearing on the issue.

*Id.* Defendants refused DC's offer, conditioning production on DC's agreement to keep all of the materials in question confidential. *Id.* Ex. E at 48-49.

On April 25, DC moved *ex parte* to lift the temporary stay on the Court's May 25 and August 8 orders. Docket No. 391. DC refuted defendants' protective-

order arguments. *Id.* at 12-15. Defendants never engaged, instead contending: "Defendants never refused to produce documents on the basis of a confidentiality dispute, but merely indicated that they would seek a protective order if the parties could not come to a reasonable compromise on the issue." Docket No. 401 at 7.

Apparently thinking the Court would not grant DC's application, defendants made the tactical choice not to move for such an order. This gamble backfired, and on May 7, the Court granted DC's *ex parte* application and ordered defendants to produce all of the Timeline and USAO documents on Friday, May 11, 2012, absent an intervening ruling from the Ninth Circuit. Docket Nos. 414 at 23:19-25:10; 416.

Defendants' *ex parte* application comes two-and-a-half days later, *and after two days in which defendants refused to explain which specific parts of documents it sought to keep confidential and on what basis*.[1] Defendants must be held to the

---

[1] Here is the exchange, from end to beginning, Docket No. 420-1 at 3-6:

**From: Petrocelli, Daniel**
**Sent: Tuesday, May 08, 2012 8:44 PM**
**To: 'mtoberoff@ipwla.com'**
  Marc, I would need to know more about the document(s) that you claim contain sensitive medical information. Feel free to call Matt or me to discuss. Otherwise, we will oppose your ex parte application.
**From: Marc Toberoff**
**Sent: Tuesday, May 08, 2012 08:13 PM**
**To: Petrocelli, Daniel**
  Dan: As I said below, I have yet to hear back from you or Matt Kline on the reasonable procedure I proposed, which would permit defendants to provisionally designate documents as confidential and place the burden on defendants to seek a protective order as to such documents under an expedited schedule, while avoiding at the same time burdening Magistrate Zarefsky with an ex parte application.
  If DC is unwilling to agree to this simple procedure, Defendants will have no other option but to bring a Local Rule 7-19.1 ex parte application tomorrow, Wednesday, May 9, 2012, seeking a protective order requiring that DC's counsel keep such documents confidential, that their use be restricted to this case and any related case, and that any filing of such documents be made under seal.
  As to why such documents are confidential, the reasons vary depending on the document in question and include, but are not limited to, sensitive medical information; personal information; and candid opinions that could cause unnecessary embarrassment or annoyance and were made with the expectation of privacy. Given the media attention that this case has attracted, a protective order is warranted.
**On Tue, May 8, 2012 at 2:57 PM, Marc Toberoff wrote:**
  Dan: As is clear from my e-mail, I am not interested in debating your contentions either, but I would like a straight answer to the reasonbale [sic] procedure I proposed which would avoid the necessity of burdening the Court with an ex parte application this week while our motion to the Ninth Circuit is pending.

1  consequences of their decisions, and cannot use the *ex parte* procedure to escape

> **On Tue, May 8, 2012 at 2:45 PM, Petrocelli, Daniel wrote:**
> Marc, I returned your call this morning and left a message with your assistant.  If you call back and I am not available, please feel free to talk to Matt Kline.
> As for our email exchange below, I see no reason to engage in needless debate.  As I said, if you can identify any basis for confidentiality other than the rejected claims of privilege, we would be happy to re-consider our position.
>  Please include this email correspondence in any filing related to this issue.
> **From:** marc.toberoff@gmail.com
> **Sent:** Tuesday, May 08, 2012 11:34 AM
> **To:** Petrocelli, Daniel
> Dan:  We disagree with the many erroneous factual contentions in your May 7 email below.
> Nonetheless, in the event that the Ninth Circuit denies defendants' motion for a stay (we will be asking for a decision by May 11, 2012), and does not otherwise stay the production, we suggest a compromise wherein we produce the stolen privileged documents, designated and marked "confidential," and that DC provisionally treat the documents as "confidential" pursuant to a stipulated schedule, during the pendency of a motion for a protective order before Magistrate Judge Zarefsky, regarding any disputed confidentiality designation.
>  We propose that parties meet-and-confer as to any "confidential" designations DC objects to by no later than May 15, 2012, that defendants would serve their portion of any joint stipulation for a protective order as to such document(s) by no later than May 18, 2012, and we would also stipulate to an expedited hearing. We are amenable to reviewing any alternative expedited schedule that you may propose.
> This way the parties follow a more orderly process and avoid unnecessarily burdening Magistrate Judge Zarefsky with an ex parte application this week while the matter of the stay is still pending before the Ninth Circuit.
> I look forward to your thoughts.
> **On Mon, May 7, 2012 at 4:02 PM, Petrocelli, Daniel wrote:**
> Marc, after this morning's court hearing and thereafter by telephone, you asked if DC would agree to treat as confidential pursuant to the stipulated protective order in the related Siegel case the documents defendants have been ordered to produce by noon this Friday.  I am reminded that in addition to your resisting agreement on a protective order in this case for over a year, you declined to agree to treat these very documents as confidential when, after receiving the Ninth Circuit's decision a couple of weeks ago, we suggested it as an approach to avoid further litigation over your continued efforts to maintain the stay.  You likewise elected not to agree to such an approach in the course of briefing and argument of our ex parte application to terminate the stay, which the Magistrate granted this morning.  In any event, now that the Court has ruled that DC is entitled to the documents without further delay and having now reviewed the Siegel stipulation, we cannot agree to stipulate to treat the documents as confidential.  In view of the judicial decisions of the Magistrate, District Court, and Ninth Circuit all rejecting defendants' assertion of privilege, there is no remaining justification for treating these documents as confidential.  In addition, many of the documents -- such as the correspondence with the USAO and documents related to business dealings -- were never privileged in the first place.  If you can identify a basis for confidentiality other than the rejected claims of privilege, I would be willing to re-consider our position.
> You also indicated in our telephone call that defendants planned to imminently file both an emergency application with the Ninth Circuit to overturn today's order terminating the stay and an ex parte application to the Magistrate for a protective order regarding the documents at issue.  In our view, both applications are unwarranted.  We will oppose them.

- 5 -    DC'S OPP'N TO DEFS.' *EX PARTE* APP.

their manifest and repeated delay in seeking a protective order. *See Charley*, 2010 WL 2792486 at *1; *Mission Power*, 883 F. Supp. at 492.

Indeed, not only do the *ex parte* due-diligence rules bar defendants' motion, *see id.*, defendants waived any independent confidentiality claim in the documents by not pressing that claim long ago. *Cf.* Docket Nos. 269 at 5 n.3; 286 at 5; 361-2 at 48; *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.,* 408 F.3d 1142, 1149-50 (9th Cir. 2005). Defendants did not seek separate "confidential" treatment of the Timeline documents in any of the hundreds of pages of briefs they filed on the Timeline and USAO issues. The privileges they asserted—and which were deemed waived (or not to exist, as in the case of the common-interest privilege), Docket Nos. 262 at 2-4; 391 at 16-31—were the *only* objections they litigated.

**2. <u>Defendants Have Not Shown The Required "Good Cause" Necessary To Shield Each Specific Document.</u>** Even assuming defendants' delay in seeking a protective order does not preclude their application, defendants must show "good cause" to obtain it. *See* FED. R. CIV. P. 26(c)(1); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). "The moving party must make a clear showing of a *particular and specific need*," W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1071 (Rutter 2012), and must do so with respect to each document in question, *see San Jose Mercury News, Inc. v. U.S.D.C.*, 187 F.3d 1096, 1102 (9th Cir. 1999) (to obtain protective order party must make "particularized showing of good cause with respect to any individual document"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (same).

"Courts have held that the showing of 'good cause' under Rule 26 is a *heavy burden*." *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004) (emphasis added); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (Posner, J.) ("The determination of good cause cannot be elided by allowing the parties to seal whatever they want …."). The moving party must

1 show that (a) the information contained in a specific document is a trade secret or
2 confidential under FED. R. CIV. P. 26(c)(1)(G); and (b) its disclosure improperly
3 would harm him. *Rivera*, 384 F.3d at 826 ("Good cause is established where it is
4 specifically demonstrated that disclosure will cause a specific prejudice or harm.").

5       a. Defendants have made no showing of "good cause" in general or on a
6 document-by-document basis. While they attach Toberoff's declaration listing the
7 Timeline documents, Docket No. 420-1 at 7-19, and previously logged many of
8 their USAO communications, Docket No. 163-17 at1036-38, 1041-42, they have
9 made *no effort* to go one-by-one and explain why parts or all of each document is
10 confidential, even though it is their burden to do so, *San Jose Mercury News*, 187
11 F.3d at 1102; *Foltz*, 331 F.3d at 1130, and they had months to make this showing.

12       The reason they avoid the very exercise that the law requires is that it would
13 reveal the lack of merit to their application. None of the documents they seek to
14 shield is any longer privileged (as every court has ruled); defendants do not claim
15 any contain trade secrets; and the contents of the documents are openly discussed in
16 public documents and court records, including the Timeline and other documents
17 defendants long suppressed. *E.g.,* Docket Nos. 49, Ex. A at 62-68; 253 at 3-4.

18       Indeed, these *non-privileged, public* documents that defendants were ordered
19 to produce openly discuss the allegedly confidential materials that are still yet
20 unproduced. Yet, defendants did not move to seal them. They include:

21       • The Toberoff Timeline itself, and its *seven*-page description of the
22          underlying documents it enclosed, which was produced to DC on
23          December 10, 2008, Docket No. 49 Ex. A;
24       • The allegedly "common interest privileged" documents between Laura
25          Siegel Larson and Michael Siegel that the federal court in Ohio ordered
26          defendants to produce in April 2008, which openly disclose defendants'
27          sharp dealings with Michael Siegel and his lawyer, and have been a
28          matter of public record for months, *e.g.*, Docket No. 161-8;

1    • The allegedly privileged, and now public correspondence between
2       Toberoff and the Siegels, which was included with the Timeline, and over
3       which the Court ruled years ago any privilege claim was waived, *e.g.*,
4       Seto Decl. Exs. F, G; Case No. CV 04-8400, Docket Nos. 374, 386.
5    • Additional correspondence between Michael and Laura that this Court
6       and Judge Wright ordered defendants to produce, and which again openly
7       discusses Toberoff's misconduct, *e.g.*, Docket Nos. 225-4, 357-4 Ex. R.
8  Again, defendants never moved to have any of these now public materials deemed
9  confidential or sealed, and indeed made the *express choice* not to move to seal the
10 Toberoff Timeline memo even though DC invited them to do so in 2009. Docket
11 Nos. 42 at 43-47; 362 at 11-12. Defendants' claim that they "Took Extensive Steps
12 To Preserve The Documents [sic] Confidentiality" is simply untrue. Mot. at 5.
13     Also without merit are defendants' arguments about their and their counsels'
14 correspondence with the USAO. Mot. at 10-11. These USAO documents were
15 *never* privileged or confidential to begin with, are discoverable in any criminal or
16 civil case, and defendants have already selectively and openly disclosed many of
17 the communications in this chain in public briefs when it served their tactical
18 interest. *E.g.,* Docket Nos. 209 at 12; 298 at 1-3; 336. The USAO documents are
19 especially important to make public and to allow DC to talk to witnesses about. As
20 Toberoff now admits, in those communications he made accusations of criminal
21 misconduct, Mot. at 13:2-6, which many people, including David Michaels (an
22 important witness in this case), vigorously dispute, Docket No. 408 Ex. A.
23     Moreover, the only basis for maintaining confidentiality over the Timeline
24 documents—*i.e.*, privilege—was waived. Docket Nos. 262 at 2-4; 279; 391 at 16-
25 31. Defendants claim these once-privileged documents should still be kept secret,
26 Mot. at 8, but there are at least four significant flaws with that argument. *First*, it is
27 a claim they should have raised a year ago—or at the latest weeks ago. *Second*,
28 defendants have not made the document-by-document showing required to obtain

1  the confidential protection they seek, as their own cited cases require. *Third*, the
2  only contents of documents they do discuss (*i.e.*, ethics opinions that condemn
3  Toberoff's business dealings, Mot. at 12, and copyright strategy in this case, *id*. at
4  11), are openly disclosed and discussed in the Toberoff Timeline, Docket No. 49
5  Ex. A at 61, 58-60, 62, which defendants never sealed.

6      *Fourth*, defendants made the contents of these documents a public issue,
7  claiming repeatedly in the press and elsewhere that the Timeline is an inaccurate
8  "hit piece" and that DC's lawsuit is malicious.[2] Defendants' desire to conceal the
9  tangible, irrefutable evidence that proves their claims false, on the eve of this
10 information's disclosure, is not a legitimate ground for protection. *Cf. Chevron
11 Corp. v. Pennzoil Corp.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992); *John Doe Co. v.
12 U.S.*, 350 F.3d 299, 303 (2d Cir. 2003) ("The unfairness courts have found which
13 justified imposing involuntary forfeiture generally resulted from a party's
14 advancing a claim to a court or jury (or perhaps another type of decision maker)
15 while relying on its privilege to withhold from a litigation adversary materials that
16 the adversary might need to effectively contest or impeach the claim.").

17     Defendants cite three cases—which they call "numerous," Mot. at 8—that
18 they say hold that protective orders should issue even where privilege is waived.
19 They are mistaken:

20 - In *Crystal Growers Corp. v. Dobbins*, 616 F.2d 458, 462 (10th Cir. 1980),
21   the court sealed appellate briefing after the case settled, because the court
22   "did not pass upon the merits of the [privilege] waiver finding" below,

---

23     [2] *E.g.*, M. Belloni, *Superman Lawyer Responds To Warner Bros. Suing Him*, THE HOLLYWOOD REPORTER, Dec. 21, 2010 (quoting Toberoff: "the frivolous allegations in
24 [DC's] complaint do not add up and will never pass muster in the federal courts"; the Timeline is "a hyperbolic rant" and "an anonymous, inadmissible letter spewing
25 unsubstantiated and unattributed accusations against Mr. Toberoff"; "Time will tell what role Warner played with regard to the stolen documents and the anonymous letter.");
26 *Warner Gets Victory In Legal Fight With Superman Heirs' Attorney*, L.A. TIMES, Apr.
27 17, 2012 (quoting Toberoff: "nothing in [the Ninth Circuit's] ruling or the documents at issue will affect the merits of this case"); Docket No. 160 at 5 (describing Timeline an
28 "anonymous ranting 'hit piece'" that is "facially untrustworthy [and] grossly inaccurate").

and did not want any inference to be drawn that it affirmed the waiver finding "*sub silencio.*"

- In *FEC v. Christian Coal.*, 179 F.R.D. 22, 24 (D.D.C. 1998), the court granted a <u>stipulated</u> protective order regarding work-product materials; *no finding of privilege waiver was made*.
- In *Stadish v. Super. Ct.*, 71 Cal. App. 4th 1130, 1144 (1999), the protective order concerned <u>*trade secrets*</u>, not privilege.

The footnote aside in the law review article on which defendants rely, Mot. at 8, cites *no case* to support its claim, and, in any event, has *never* been cited in any case and nowhere suggests that a party who waived privilege is exempt from meeting the rules for obtaining a protective order.

    b. Defendants also make vague references to "medical information" and other "privileged" contents of the documents, *supra* n.1; Mot. at 2, 11, but such nebulous, conclusory assertions are not "good cause." *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citing *In re Halkin*, 274, 598 F.2d 176, 193 (D.C. Cir. 1979) (to "establish good cause for a protective order under [Rule 26] [t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ("party opposing disclosure has the burden of proving good cause, which requires a showing that specific prejudice or harm will result" if protective order not granted).

    Equally insufficient are defendants' claims of embarrassment. *Compare supra* n.1, *with Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("embarrassment by the release of information is insufficient to constitute serious harm"); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 301 (N.D. Ill. 1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order"); *In re Perry*, 859 F.2d 1043, 1050 (1st Cir. 1988) ("embarrassment to a defendant stemming from disclosure of the vigorous defense of an unpopular cause" insufficient);

*Flaherty v. Seroussi*, 209 F.R.D. 295, 299 (N.D.N.Y. 2001) ("that some level of discomfort, or even embarrassment, may result from the dissemination of [defendant's] deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of protective order."); *In re Gitto Global Corp.*, 2005 WL 1027348, at *11 (D. Mass. May 2, 2005) (general "concerns about publicity surrounding the case and the publication of certain allegations are insufficient").

DC is certainly willing to discuss redacting in public filings specific portions of documents that discuss medical issues—*if any truly do*—but that does not warrant the blanket protective order that defendants seek. For one, defendants have openly disclosed details about the medical conditions of Joanne Siegel, Laura Siegel Larson, and Jean Peavy in a number of public filings. *E.g.*, Docket Nos. 61 at 24-25; 64 at 3-4; Case No. CV 04-8400 ODW (RZx), Docket Nos. 79, 80.

More importantly, as the Ninth Circuit held in *Foltz*: "A party asserting good cause bears the burden, *for each particular document it seeks to protect*, of showing that specific prejudice or harm will result if no protective order is granted." 331 F.3d at 1130 (emphasis added); *id.* at 1131 (rejecting "blanket protective order" because it "never required [movant] to show that *specific* discovery documents, whether eventually filed with the court or not" "contained confidential information that would satisfy the good cause standard").[3] Defendants do not and cannot meet this test, and cannot use as an excuse for this shortcoming the expedited procedure that their delay has now have forced both the Court and DC to confront.

**3. Defendants' Conspiracy Theories Are Neither True, Nor A Proper Basis For The Relief They Seek.** Defendants' wild claims about DC engaging in a "media campaign," Mot. at 2:19, are unsubstantiated and no more valid than their repeatedly disproved claims about the Toberoff Timeline being an "untrustworthy"

---

[3] *Accord Rivera*, 384 F.3d at 827 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (quoting *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002)); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (same).

- 11 -    DC'S OPP'N TO DEFS.' *EX PARTE* APP.

"hit piece." *E.g.,* Docket Nos. 145-1 at 12; 160 at 5. The realities are that: defendants have been ordered to produce the Timeline documents; desperately want to bar DC from using them freely in court filings, depositions, or with witnesses who can attest to defendants' misconduct; and the news sources and blogs that defendants cite, Toberoff Decl. Exs. C-I, have an interest in this case because *defendants* have spent years publicizing it. Impeding the flow of discovery or the public trial of this case are not proper grounds to issue a protective order. *See Henderson v. FedEx Corp.*, 2009 WL 1951059, at *5 (M.D. Ga. July 6, 2009).

While defendants say that DC wants to call Toberoff's ethics and conduct into question, Mot. at 10, *the courts* reached that conclusion themselves in public rulings (a) pointing out his obvious "ethical" shortcomings; and (b) rejecting the notion that DC sued Toberoff improperly. *E.g.*, Docket No. 337 at 6 n.1 (denying defendants' SLAPP motion and rejecting their "attempt to cloak Toberoff's alleged interference with protected, litigation and settlement related conduct"); *In re Pacific Pictures Corp.*, 2012 WL 1293534, at *2 (9th Cir. Apr. 17, 2012) (pointing out the "ethical and professional concerns raised by Toberoff's actions"). Toberoff merely wants to keep hidden further proof, including from his "ethics" counsel, that will no doubt confirm and lay out how he broke the law in his business dealings with the heirs. Mot. at 12. This proof is not news, nor has been remotely confidential since 2009; it is openly disclosed in the Timeline memo, Docket No. 49 Ex. A. While Toberoff has falsely called the Timeline an inaccurate "hit piece," the documents finally emerging in discovery are one-by-one confirming the veracity of its claims.

**4. Defendants' Request That The Court "Extend" The Date To Produce The Timeline Documents Is Improper.** Defendants use their *ex parte* application as an improper forum to rehash the very arguments this Court and the Ninth Circuit rejected concerning their selective waiver. *E.g.,* Mot. at 4-6. They also cite their many-months-too-tardy *ex parte* application for a protective as grounds to delay this Court's ruling that they produce all of the Timeline and USAO documents to

1  DC tomorrow, no later than 12 p.m.  *Id.* at 13.  This improper request for
2  reconsideration, like defendants' substantively and procedurally baseless *ex parte*
3  application, should be denied.  A hearing on these arguments is not warranted.
4  Enough time and expense has been devoted to this matter.

5  Dated:      May 10, 2012                    Respectfully Submitted,
                                                O'MELVENY & MYERS LLP
6
7                                               By: /s/ Daniel M. Petrocelli
                                                    Daniel M. Petrocelli
8                                               Attorneys for Plaintiff DC Comics

9  OMM_US:70679448

- 13 -     DC'S OPP'N TO DEFS.' *EX PARTE* APP.