DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS, | Case No. CV 10-3633 ODW (RZx) |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **DC COMICS' REPLY IN SUPPORT OF MOTION TO ENFORCE THE COURT'S FEBRUARY 13, 2012, ORDER** |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual,  LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | **Judge**:        Hon. Otis D. Wright II  **Magistrate**:  Hon. Ralph Zarefsky  **Hearing Date**:  May 21, 2012  **Hearing Time**:  10:00 a.m.  **Courtroom**:      540 |
| Defendants. | |

This motion presents a simple issue: rather than complying with the Court's February 13, 2012, Order to comply with DC's capitalization document requests, defendants have been bleeding out documents one-by-one, and often heavily and improperly redacted. DC's motion to enforce compliance with this Court's Order should be granted, and DC should be awarded its fees and costs in having to pursue the motion, as Rule 37(a)(5)(A) requires in these circumstances.

1. The Court's February 13 Order required defendants to produce documents "showing [the three corporate defendants' respective] capital accounts," so that DC could understand the companies' "capital structure" in aid of DC's alter-ego claims:

> THE COURT: As I see it, we're looking at three sets of requests. The first is as to requests 56 and 57 and 58. Sub-parts A through E appear to have been responded to and the motion is denied as to them. Sub-parts F and G concerning capital structure, *the motion is granted limited to documents showing capital accounts, if any such documents exist.*

Docket Nos. 382 at 19:8-14; 377 (emphasis added). Defendants asked the Court to narrow its order, but it refused, instructing them: "*If the documents exist, then I think you need to produce them.*" *Id.* at 61:20-21 (emphasis added).

2. Defendants did not obey this Order, and only after DC filed this motion did they produce anything more than a random assortment of their bank statements. *Compare* Mot. at 1-9, *with* Docket Nos. 418, 421 (Sealed Ex. B) (submitted after motion: K-1 Forms for IP Worldwide from 2002-2004, and IPW from 2004-2010).

Producing *court-ordered* documents only after a motion is filed does not end the matter, for two reasons. *First*, such a belated production, which establishes that the Order was violated, requires defendants to compensate DC for having to file the motion. *See* FED. R. CIV. P. 37(a)(5)(A) ("if the … requested discovery is provided after the motion was filed—*the court must*, after giving an opportunity to be heard, require the party [or attorney] … whose conduct necessitated the motion…, or both to pay the movant's reasonable expenses") (emphasis added); *ATM Exp., Inc. v. ATM Exp., Inc.*, 2008 WL 4997605, at *2 (S.D. Cal. Nov. 21, 2008) (same).

*Second*, defendants' belated show of compliance still fell well short. The alter-ego case law makes clear what sorts of corporate records are used to "show" a company's capitalization or "capital accounts." These records are the very ones DC identified in its meet-and-confer letters[1] and that the California alter-ego case law, on which the letters were based, identifies.[2] Defendants pretend DC is amending its document requests on the fly or making up the sorts of documents it wishes to see to prove that defendants were undercapitalized. Opp. at 1-4. But what DC asks for is exactly what the case law specifies are the relevant materials. Defendants suggest DC's alter-ego claims are not well taken, Opp. at 6, but we are well beyond the issue. Defendants could have moved to dismiss these claims, but notably chose

---

[1] For example, DC wrote:

> We cannot agree to withdraw our motion until we have assurance that your production encompasses all responsive documents—including, for example, *formation documents establishing capital structure, such as corporate charters and bylaws; books and records reflecting capital contributions, capital withdrawals, and the capital accounts held by investors or shareholders; shareholder or investor agreements; stock certificates, stock ledgers, and documents reflecting the issuance or transfer of stock; financial records such as general ledgers, balance sheets, annual reports, tax returns, and Schedule K-1 forms; documents reflecting loans or other debt incurred; tax records; documents reflecting transactions or the transfer of assets between the related companies; and insurance contracts.* If these documents do not exist or have been destroyed, we are entitled to a sworn statement to that effect.
>
> We reserve all rights to seek fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A) for having to file a motion to compel seeking those documents when you should have produced them from the outset.

Docket No. 413-2 at 8 (emphasis added).

[2] *E.g.*, *Sonora Diamond Cor. v. Super. Ct.*, 83 Cal. App. 4th 523, 547-48 (2000) (corporate books and records, intercompany loan documents, money transfers between the companies' bank accounts, and financial records accounting for asset sales); *Assoc. Vendors, Inc. v. Oakland Meat Co, Inc.*, 210 Cal. App. 2d 825, 838-41 (1962) (corporate books and records, issuance of stock, disbursement checks, and bank account statements); *Goldberg v. Engelberg*, 34 Cal. App. 2d 10, 12 (1939) (corporate books and records, checks, and deed transferring company asset); *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1280-81 (2007); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Symetry Constr. Servs. Corp.*, 2011 WL 2160575, at *3-5 (D. Or. May 31, 2011); *Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *6-7 (N.D. Cal. Nov. 15, 2010) (considering checks written from dissolved corporation's bank account, that company's remaining funds at dissolution were withdrawn and distributed to principles of alleged alter-ego, and correspondence showing intent to defraud by dissolving company to avoid liability).

DC'S REPLY IN SUPPORT OF MOT.
TO ENFORCE COURT'S ORDER

1    never to move.  As the Court made clear, "[w]e're past" such arguments—"[i]f the

2    documents exist … produce them."  Docket No. 382 at 61:20-62:1.

3         3.  Defendants disregard this well-established case law in claiming their

4    limited production of documents complies with the Court's order.  Opp. at 1.  An

5    incomplete collection of bank statements does not show whether there was a

6    "[c]ommingling of funds and other assets" between the Toberoff companies.  *See,*

7    *e.g., Assoc. Vendors*, 210 Cal. App. 2d at 837-38; *Goldberg*, 34 Cal. App. 2d at 13.

8    Similarly, the few K-1 Forms that only IP Worldwide and IPW produced do not

9    show how capital contributions were treated (debt or equity); when capital was

10   withdrawn; what debt was obtained and during what time; what assets were

11   acquired, their value. and when or if they were encumbered or transferred; and

12   whether transactions occurred among the companies.  *Supra* at n.2; *Columbia*

13   *Pictures, Inc. v. Bunnell*, 2007 WL 4916964, at *11-12 (C.D. Cal. May 7, 2007);

14   *21X Capital Ltd. v. Werra*, 2008 WL 131918, at *1 (N.D. Cal. Jan. 11, 2008).

15        In fact, *<u>defendants redacted</u>* those portions of the Schedule K-1 forms that

16   show, "Partner's share of liabilities at year end," including all outstanding

17   "Nonrecourse, Qualified nonrecourse financing, and recourse" debt.  *E.g.*, Docket

18   Nos. 418, 421 (Sealed Ex. B at IPWW00012).   Other large blocks of information

19   are redacted as well from the top right corner of the form where Part III appears and

20   is titled: "Partner's Share of Current Year Income, Deductions, Credits, and Other

21   Items."  Part III, when not redacted, includes line items for, *inter alia*, "Ordinary

22   business income (loss)," "dividends,"  "Distributions," and "Self-employment

23   earnings"—all earmarks of how a partnership's finances are managed.   *Compare*

24   *id.*, *with* n.2 (collecting cases).  Not only did defendants hide these details, they also

25   failed to produce the supporting documents that are normally attached to K-1s.

26   They also redacted all of section J—"Analysis of partner's capital account"—*e.g.*,

27   Docket Nos. 418, 421 (Sealed Ex. B at IPWW00026-29), and even apparently

28   obscured the names of all of the partners involved, *see id.*

DC'S REPLY IN SUPPORT OF MOT.
TO ENFORCE COURT'S ORDER

1       4.  As for Pacific Pictures, *no documents* were produced.  Defendants'

2   carefully-worded opposition states that records "equivalent" to a K-1 exist for this

3   company because Pacific Pictures is "a long-dissolved 'loan-out'" entity, Opp. at 5.

4   Defendants notably never state that no "capital account" documents exist for Pacific

5   Pictures, nor would such a claim be credible.  Defendants produced bank account

6   statements for Pacific Pictures dating as far back as February 2003 and as recently

7   as October 2008.  Docket No. 407 at 15-19 (Sealed Ex. A).  What is missing are all

8   the bank statements in the middle and other capitalization documents that the law

9   identifies, *e.g.*, *supra* n.2, and that defendants simply refuse to produce, in violation

10   of this Court's order, on the grounds that they are not "equivalent" to K-1s.

11       5.  Defendants' opposition also does not address why they have *never*

12   produced (1) shareholder agreements or similar documents setting forth the terms of

13   ownership and treatment of capital contributions by, *e.g.*, Ari Emanuel to IP

14   Worldwide and Bruce Karsh to IPW; or (2) corporate records of Pacific Pictures

15   authorizing the issuance of stock, valuing the stock, showing who received it, or

16   reflecting its sale, transfer, or encumbrance.  Mot. at 6-7.

17       6.  Defendants game of hide-the-ball and their flouting of this Court's order

18   should be brought an end.  This motion should be granted, and DC awarded its fees

19   and costs.  *See* FED. R. CIV. P. 37(a)(5)(A); *ATM Exp.*, 2008 WL 4997605, at *2.

20   Dated:     May 14, 2012         Respectfully Submitted,

21                         O'MELVENY & MYERS LLP

22

23                         By:  /s/ Daniel M. Petrocelli

24                           Daniel M. Petrocelli

                             Attorneys for Plaintiff DC Comics

25

26

27

28

DC'S REPLY IN SUPPORT OF MOT. TO ENFORCE COURT'S ORDER