DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:   (310) 246-6779

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>           Plaintiff,<br><br>     v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>           Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND FOR RECONSIDERATION OF THE COURT'S JUNE 27, 2011, RULING**<br><br>[DECLARATIONS OF JASON TOKORO FILED HEREWITH]<br><br>**Judge**:        Hon. Otis D. Wright II<br>**Magistrate**:   Hon. Ralph Zarefsky<br><br>**Hearing Date**:     May 21, 2012<br>**Hearing Time**:     10:00 a.m.<br>**Courtroom**:        540<br>**Discovery Cutoff**:  None Set<br>**Pretrial Conference**: None Set<br>**Trial**:              None Set |

1   This motion is simple and can and should be decided without oral argument.
2   Defendants refuse to produce two plainly non-privileged communications that
3   Michael Siegel's former counsel, the Renner Otto firm, confirms it gave defendants
4   *six years ago*, and that defendants failed to list on their privilege log until late 2011.
5   Defendants also refuse to produce a non-public expert report that they possess, and
6   yet offer no excuse for not producing.  And, lastly, while defendants finally
7   produced—after DC filed this motion—Renner Otto's billing records relating to its
8   contacts with Toberoff, defendants improperly and severely redacted the bills.  The
9   redactions should be eliminated, and DC's motion should be granted in full.

**I.   Toberoff's November 17, 2001, Email To Michael Siegel**

*A.  Any Privilege In The November 2001 Email Was Waived.*  Defendants'
only excuse for their five-year delay in logging this obviously relevant, responsive
email—a delay that, by law, compels a finding of waiver, Mot. at 8-9—is that it
was not included in the hard-copy document file that they received from the Ohio
law firm that represented Michael Siegel, Renner Otto.  Opp. at 1.  Renner Otto
disputes defendants' claim and confirms that the "electronic archive," Opp. at 1, it
provided defendants in 2011 included *the "same" documents* it provided
defendants *in paper form* in 2006, *see* Docket No. 395-1 at 56, 58.  See also:

> I appreciate you making us aware of Mr. Toberoff's 5/7/12 filing [*i.e.*,
> defendants' opposition to this motion].  I've spoken to Don Bulson
> [the Renner Otto partner on the Michael Siegel file] and consulted the
> "Renner Otto archive" referenced in [defendants'] brief.  To the best of
> my knowledge, the "Renner Otto archive" was the product of scanning
> Mr. Siegel's paper files before they were forwarded to the attorneys
> for Mr. Siegel's estate, and the documents in the "Renner Otto
> archive" and the paper file should be the same.

Tokoro Decl. Ex. A (May 14, 2012, email from Renner Otto partner J, Ryland).
This simple fact establishes defendants' acts of waiver and compels disclosure.

While defendants suggest that they themselves "did not possess or control
everything received or possessed by Michael Siegel's estate," Opp. at 3 n.1, this is a
fiction.  As the executor of Michael's estate, Laura Siegel Larson (and Toberoff)

1                                                               DC'S REPLY ISO MOT. TO
                                                                COMPEL & FOR RECON.

received all of the Renner Otto/Michael Siegel files *in 2006*, and even said so on the privilege logs Toberoff prepared. *E.g.,* Tokoro Decl. Ex. C at 8 (noting Toberoff held files). In 2006, Toberoff *alone* reviewed the Michael Siegel files in response to the DC's discovery demands on the estate and Bulson's firm. Docket Nos. 161-4 at 25-28; 316-3 at 10-11; 395-1 at 56; Tokoro Decl. Exs. C, D, E at 59:2-62:1.[1]

As for defendants' cited cases involving 6- to 10-week delays in producing privilege logs, Opp. at 11, they are well off the mark and do not excuse defendants' failure—for *five years*—to produce complete or proper logs. Defendants suggest in a footnote that the November 2001 email's absence from the Toberoff Timeline documents is an "indication that it was not in Defendants' files." Opp. at 3 n.2. But defendants have never claimed—nor do they now—that *all* of their legal files were among the Timeline documents. Defendants also say that the email Toberoff sent Michael was sent using an old email account. Opp. at 1:24-25. But they do not explain, much less attest under oath, why Toberoff does not have access to emails sent or received using the account, including the November 17, 2001, email.

*B. The November 2001 Email Is Not Privileged.* Defendants assert that Toberoff's November 2001 email to Michael "pertains to legal retention," Opp. at 4, and, thus, is privileged. Yet *all* of the evidence shows the opposite, and this is a second, independent ground to require the November 2001 email produced.

*First*, Michael's own words in his May 13, 2003, letter refute defendants' privilege claim. In the letter, Michael made clear that when Toberoff "*first contacted me*, he wanted to buy my share of the copyright." Docket No. 225-4 at 3 (emphases added). Defendants say Michael's statement "conflates Toberoff's

---

[1] In preparing these logs, Toberoff impeded efforts to learn what the files contained. The privilege logs were opaque, incomplete, and contained common-interest privilege claims the Ohio court rejected. Docket Nos. 161-3 at 22-24; 161-5 at 29-31. When DC sought to correct the logs as part of discovery in this new case, Toberoff obstructed again. Tellingly, he refused to let Renner Otto review its files and prepare a log that identified all of the documents included, as well as their attachments and complete bibliographic detail. *See* Docket No. 395-1 at 24-58. DC even offered to pay for this exercise—*which Renner Otto remains willing to perform*—but Toberoff objected and refused. *Id*. at 26, 30-31.

initial communications in 2001 with discussions two years later in 2003." Opp. at 5. But this conclusory assertion—supported by no competent evidence under oath—fails to satisfy *defendants' burden* to justify their privilege claim. *See U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). It also makes no sense: Toberoff was not communicating directly with Michael in 2003; for two years, he communicated with Michael through his attorney, Don Bulson, *e.g.*, Docket No. 161-8 at 44-81.[2]

  *Second*, Toberoff's making a *business* contact with Michael in November 2001 is fully consistent with *business* contacts he made with the Shusters then. As the November 2001 Pacific Pictures agreement makes plain, Toberoff was intent on obtaining half of the Superman heirs' putative copyrights for himself, and Toberoff signed his business agreement with the heirs as the "President" of his company, *not* as a lawyer. Docket No. 305-54 at 2069. Judge Wright cited this contract—which he said "gut[ted]" DC's contractual rights, Docket No. 337 at 3—in denying defendants' SLAPP motion and claims that Toberoff acted only as a lawyer.

  *Third*, as Kevin Marks and Toberoff admitted in their depositions in *Siegel*, when Toberoff contacted Marks (and Joanne and Laura Siegel) in November 2001 and February 2002, he did so again *not as a lawyer* looking for a client, but as party interested in *buying* the Superman rights. Docket Nos. 305-14 at 358:10-11, 359:6-360:13 (Marks: "I recall [Toberoff] saying that he was interested in the Superman … property and had understood that I was representing the Siegel family interest." "*I also recall him saying that he had a separate company that was in the business of acquiring intellectual property rights.*") (emphasis added); 305-17 at 513:17-515:4 (Toberoff: "at that time I was just trying to find out the status [of the Siegel termination]"); *see also* 305-18 at 584, 588.

---

[2] Indeed, it was the estate of Michael Siegel that had to assert any claim of privilege in the November 2001 email to Michael. There has been no evidence submitted—*none*—to show that the estate or its representative (Laura) has any knowledge of the contents of the November 2001 email or the circumstances under which it was sent. Only Michael has spoken to that question, and his letter refutes defendants' position that it was merely a legal solicitation letter. Docket No. 225-4 at 3.

1  Defendants provide no reason why Toberoff—whose focus was on obtaining
2  the heirs' rights—would have taken a different approach with Michael. Nor do
3  they address whether parts of the November 2001 email address business issues.
4  Nor do they invite the Court to examine the email *in camera*. Rather, they simply
5  say Michael was confused when he unambiguously described Toberoff's "first
6  contact" with him as an attempt to "buy" his rights.

7  Defendants' conclusory representations are neither competent evidence, nor
8  should they be believed. As DC can show at the hearing on this motion, should one
9  occur, the Toberoff Timeline and USAO documents—which DC finally received
10  today, *rather than on Friday as required*—reveal numerous misrepresentations to
11  the courts, including concerning privilege.[3] Other recent evidence similarly shows
12  how defendants misrepresented key facts to defend improper privilege claims.[4]

---

[3] *See* Tokoro Decl. Ex. G (Timeline and USAO documents ); Ex. F (email chain among counsel concerning their late production).

[4] For example, Toberoff told DC and the Court, *under penalty of perjury and without qualification*, that David Michaels was the Timeline author—a claim from which he last week retreated. *Compare* Docket No. 207-9 at 433-34 (sworn interrogatory response: Michaels is author), *with* 414 at 15:3-4 (last week: Toberoff "believes" Michaels author).

Counsel also told the Ninth Circuit there was no evidence the Siegels had consented to the document disclosure that led to the waiver and writ proceedings in this case:

> JUDGE KOZINSKI: You know, I might as well tell you my second question because I'm also confused about this. Isn't an attorney-client privilege a privilege of the client that can only be waived by the client?
> RICHARD B. KENDALL, ESQ.: Yes, your Honor.
> JUDGE KOZINSKI: What evidence is there here that the client here waived?
> RICHARD B. KENDALL, ESQ.: *There is no evidence that the client waived,* your Honor.
> JUDGE KOZINSKI: So why haven't you argued that there's no evidence of waiver because there's no client -- there's no action by the client?
> RICHARD B. KENDALL, ESQ.: *Your Honor, I think it is pointed out that the client has never waived….*
> JUDGE KOZINSKI: Where is the client's waiver?
> RICHARD B. KENDALL, ESQ.: *There is no client waiver, your Honor*.

Docket No. 387-2 at 6:21-8:4 (emphases added). The USAO and Timeline documents finally produced belatedly today directly refute these assertions:
*(footnote continued on next page….)*

## II. The November 2, 2002, Letter From Laura To Michael

*A. Any Privilege In The November 2002 Letter Was Waived.* As Renner Otto confirms, defendants have had the November 2, 2002, letter in their possession since 2006. *See supra* Part I. Defendants never listed it on a privilege log until late 2011, and went so far as to deny they possessed it when DC moved to compel the letter's production earlier last year. Docket No. 267-1 at 23-24. On these facts, any privilege claim in the letter was long ago waived. Mot. at 8-9 (citing cases).

*B. The November 2002 Letter Is Not Privileged.* Defendants' only argument why this letter is privileged is the claim that Michael and Laura shared a common interest with respect to their "settlement talks and litigation with DC." Opp. at 8. This misses the point. All the evidence indicates that the November 2002 letter is a letter from Laura to Michael discussing *Toberoff's and Emanuel's offers to purchase Michael's Superman rights*; any possible common interest that Laura and Michael may have shared with respect to their prior negotiations with DC is

> **Gmail** — Marc Toberoff <marc.toberoff@gmail.com>
>
> **Grand Jury subpoena dated Sept 13, 2010**
>
> Richard Kendall <rkendall@kbkfirm.com>          Thu, Oct 21, 2010 at 1:14 PM
> To: "Brian.Klein@usdoj.gov" <Brian.Klein@usdoj.gov>
> Cc: Marc Toberoff <mtoberoff@ipwla.com>
>
> Re: Documents Delivered to Warner Brothers with "SUPERMAN - MARC TOBEROFF TIMELINE"
>
> Dear Mr. Klein:
>
> You have requested that I confirm that Mr. Toberoff's clients have authorized Mr. Toberoff's disclosure to the United States Attorney's Office of the documents enclosed with my letter to you dated September 27, 2010, pursuant to the Grand Jury Subpoena dated September 13, 2010 and the terms of my September 27, 2010 letter. I so confirm.
>
> Kind regards,
>
> Richard B. Kendall

Tokoro Decl. Ex. G at 1149. This is only more proof that defendants' self-serving claims about the contents of documents and other important matters cannot be believed.

irrelevant. Docket No. 378 at 5 ("Parties can [] be adverse for some purposes and share a community of legal interest for other purposes.").

Once the Siegels broke off negotiations with DC in September 21, 2002, Docket No. 305-23 at 717—some *two months before* Laura sent her November 2002 letter to Michael—Laura and Michael's interests diverged.[5] Before she sent her letter, Laura had officially become Toberoff's and Ari Emanuel's business partner, Docket No. 305-56, and a few weeks later was signing another contract with Toberoff's company, IP Worldwide, in which she agreed to ally with Toberoff and Emanuel to buy-out Michael's rights, Docket No. 412-2 at 7-9 ("This is to confirm the agreement … in connection with our recent discussion and disclosure to you of various risks and potential problems regarding Michael Siegel, and the mitigation of possible conflicts of interest with respect to the following proposed remedial actions: 1. Ariel Emanuel ('AE') will attempt to purchase all of Michael's Siegel's rights, title and interest in *Superman, Superboy*…."). Laura and Toberoff discussed this agreement in November 2002, as this November 2002 draft letter attests: "this is to confirm that we have disclosed to you and discussed the following proposed actions that may pose potential conflicts of interest…. IPW will enter into negotiations with Michael Siegel and/or his representative to purchase all of Michael Siegel's rights…." Tokoro Decl. Ex. B at 5.

Indeed, the November 2002 letter that Laura wrote Michael so angered Michael that it prompted him to write his May 2003 letter, in which he detailed his many grievances with Toberoff and the false promises Toberoff had made to Michael and Laura. Docket No. 225-4 at 3-4 ("Marc had a mysterious billionaire

---

[5] Defendants assert negotiations with DC became "moribund" as a result of Joanne Siegel's May 9, 2002, letter in order to support Toberoff's claims of non-interference. *E.g.*, Docket No. 312 at 10-11. In that context, defendants suggest the "moribund" nature of any negotiations is helpful, because Toberoff could not have interfered with such dying talks. Faced with this motion, defendants now back-track, claiming negotiations only "temporarily ended," in May 2002, Opp. at 9, because they want their asserted common-interest claim to last longer. But defendants cannot swap factual positions like overcoats.

who wanted to invest in the Superman copyright, put $15 million up front plus participation. When you signed with Marc the billionaire invested elsewhere.").

The November 2002 letter, to which Michael's May 2003 letter directly responds, started a chain of non-privileged letters between the half-siblings, in which Laura urged Michael to do business with Toberoff, and Michael resisted in light of Toberoff's misdeeds. This Court and Judge Wright ruled that all later letters in this chain are *not* privileged. Docket Nos. 209 at 12; 336. There is no reason to extend privilege to this first letter in the chain. *See id.*; *see also* Docket No. 161-5 at 30-31 (Ohio court holding that 15 communications from April 2003 through January 2005 "relat[ing] to offers back and forth between Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and Bulson" were not subject to common-interest privilege).

The only information defendants provide about the contents of the November 2002 letter is a claim that "it concerns legal and settlement strategies *vis-à-vis* DC/Warner." Opp. at 10. The May and July 2003 letters refute this. The May 2003 letter opens by saying it is a response to the November 2002 letter, and it makes *no mention* of a "legal strategy" in negotiating with DC. Docket No 225-4. Laura's July 2003 response follows suit; it addresses Michael's stated concerns about Toberoff's conduct, *not* dealings with DC. Docket No. 357-4 at 272-76.[6]

### III. The Bulson Calendar And Billing Entries And Related Expert Report

*A. The Expert Report.* Defendants do not contest that an expert report documenting time Bulson spent on the Michael Siegel file and showing when he spoke to Toberoff and about what is responsive to DC's requests and relevant. Rather, they suggest that DC did not ask *defendants* produce the report. Opp. at 6.

---

[6] If there were any doubt about how Michael, Laura, and Joanne Siegel felt about one another, Laura dispelled it October 2, 2004, when she wrote in one of the Toberoff Timeline documents produced today: Tokoro Decl. Ex. G at 412 ("Michael Siegel has been *threatening to sue my mother for a portion of her pension for years* claiming that it is an advance on an eventual settlement.") (emphasis added).

1  Untrue. When DC learned of the report during Bulson's deposition, it asked
2  Renner Otto, defendants, and the estate of Michael Siegel to produce it. Docket
3  No. 39
4  and so
5  Defend
6  is untr
7  Defend
8
9  the Bu
10 motion
11 defend
12 37(a)(
13 page is
14 time o

<!-- Remainder of page obscured by large black redaction overlays showing fragments of a "Renner, Otto, Boisselle, & Sklar, LLP Pre-bill Worksheet" dated 11/22/2007, Page 726, re: SIEG.ZG0101:Mr. Mike Siegel (continued), with entries including 1/16/2003 DWB 71853 Service Email to Toberoff; 1/23/2003 DWB 71923 Service Tel. conf. with Marc Toberoff; 1/24/2003 DWB 71947 Service Tel. conf. with Marc Toberoff; Date: March 2003 3/4/2003 DWB 78829 Service Tel. conf. with Marc Toberoff -->

1   As DC showed in its motion—*and defendants did not and cannot contest*—
privilege does not extend to factual information in attorneys' billing records,
including dates, times, and descriptions of work done. Mot. at 12. Moreover, a
communication is not privileged just because the speaker or recipient is a member
of the Bar; the communication itself is protected only if it involves the provision of
confidential legal advice. *Id*. at 5. Toberoff spoke to Bulson in a business capacity,
looking to help Emanuel (Toberoff's business partner) buy Michael's rights.
Defendants cannot redact any of Bulson's descriptions concerning such business
conversations, which fall well outside any privilege. *Id.*

Defendants falsely claim that DC only requested to know the dates and times
Toberoff met with Bulson, Opp. at 7m but it requested the production of all "non-privileged portions of calendars and billing entries maintained by Mr. Bulson
and/or Renner Otto regarding the representation of Michael Siegel." Docket No.
395-1 at 25. DC made clear it was seeking "this non-privileged material from
Bulson's files: the time, date, client name, fee, and 'general description' of work
done sufficient to determine, *e.g.*, whether Bulson met or spoke with Toberoff
concerning Michael Siegel, or an investor interested in the Siegel Superman rights."
Mot. at 12-13. Defendants' heavily redacted production does not "settle the
matter." Opp. at 7. The billing and time records should be ordered produced—left
untouched.

**IV.  Conclusion**

For the foregoing reasons, DC's motion should be granted.[7]

Dated:      May 14, 2012              Respectfully Submitted,
                                      O'MELVENY & MYERS LLP

                                      By: /s/ Daniel M. Petrocelli
                                          Daniel M. Petrocelli

---

[7] DC will not respond to defendants' three-page capstone to their brief, in which they seek to re-argue (there and elsewhere) their lost writ petition and many other indisputable facts that compel granting this motion.