# EXHIBIT G
# Part 3 of 9

## STANDARD TERMS OF RETENTION
### RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
### A LAW CORPORATION



Except as modified in writing, the following provisions will apply to the relationship between Rodi, Pollock, Pettker, Galbraith & Cahill, A Law Corporation (the "Firm"), and you:

1.     Fees.  Fees for our services will be based on time spent and hourly billing rates current at the time that the services are performed.  The billing rates of our attorneys and legal assistants vary, depending generally on the experience and capabilities of the attorney or legal assistant involved, and we adjust these rates from time to time.  The time for which you will be charged will include, but will not be limited to, time spent in telephone and office conferences with you and with other counsel, witnesses, consultants, court personnel and others; factual investigation; legal research; responding to your requests for us to provide information to auditors in connection with reviews or audits of financial statements; drafting of letters, agreements, pleadings, briefs and other documents; traveling; court appearances, including waiting in court; and depositions and other discovery proceedings.

2.     Costs.  In addition to our fees, we will bill you separately, and typically monthly, for costs and expenses incurred and ancillary services provided such as photocopying, messenger and delivery service, computerized research, travel (including mileage, parking, airfare, lodging, meals and ground transportation), telephone, telecopying, secretarial overtime, court costs and filing fees.  Unless special arrangements are made, we do not take responsibility for paying fees and expenses of others, which will be the responsibility of and may be billed directly to you.

3.     Retainer.  In addition to any retainer to which you have agreed, the Firm reserves the right, as a condition to providing further services, to request an increase in the retainer in the event that the amount of work which we are called upon to perform, or expenses we are required to incur or advance, exceeds this Firm's current expectation.

4.     Estimates Not Binding.  Although we may furnish estimates of fees or costs that we anticipate will be incurred, these estimates are not intended to be binding, are subject to unforeseen circumstances, and are by their nature inexact.

5.     Billing and Payment.  Fees and expenses will generally be billed monthly and are payable upon presentation.  We expect prompt payment.  We reserve the right to postpone or defer providing additional services or to discontinue our representation if billed amounts are not paid when due.  We will be entitled to assume that you have raised any questions you have about a bill within 20 days of receipt. 

6.     Cooperation.  You will cooperate fully in our efforts on your behalf.

7.     Termination By You.  You have the right at any time, in your sole discretion, to terminate our services and representation.  Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf prior to the date of such termination or which are reasonably necessary thereafter.

8.     Termination By Us.  We reserve the right to withdraw from representing you if, among other things, you fail to honor the terms of our engagement letter, you fail to cooperate or follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical.  If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal, and we will be entitled to be paid at the time of withdrawal for all services rendered and costs and expenses paid or incurred on your behalf.

9.     Date of Termination.  Our representation of you will be considered terminated at the earlier of (i) your termination of our representation, (ii) our withdrawal from our representation of you, or (iii) the substantial completion of our substantive work for you.

10.     Related Activities.  If any claim or action is brought against us or any personnel of the Firm based on your negligence or misconduct, or if we are asked to testify as a result of our representation of you or must defend the confidentiality of your communications in any proceeding, you agree to pay us for any resulting costs or damages, including our time, even if our representation of you has ended.

11.     No Guarantee of Outcome.  We do not and cannot guarantee any outcome in a matter.

1

Q 0197

**Privileged & Confidential**
**All Rights Reserved**

SD 00197



12.    Conflicts.  Our ethical obligations will require us, while this representation is ongoing, to decline any other engagements which conflict directly with this representation unless you otherwise consent. When this representation is concluded, however, you understand that we will not be excluded from accepting a representation adverse to you, except where there is a substantial relationship between that representation and our present representation of you. Naturally, we will not disclose any confidential information received in the course of our representation of you in any future representation without your consent, just as we will not disclose to you the confidences of our other clients even if that might be to your advantage.

13.    Client.  As set forth in our letter accompanying these Standard Terms of Retention, you are the Firm's client for purposes of our representation. Unless expressly agreed otherwise, we are not undertaking the representation of (i) any person or entity related or affiliated with you; (ii) any of your relatives (including parents, children or brothers/sisters), subsidiaries, or affiliated corporations or entities; and (iii) any members, officers, directors, agents or employees of you or of any related or affiliated entities.

14.    Payment Notwithstanding Dispute.  In the event of any dispute that relates to our entitlement to any payment from you, all undisputed amounts shall be paid by you. Any amounts in any client trust account held on your behalf, sufficient to pay the disputed amounts, shall continue to be held in such trust account until the final disposition of the dispute.

15.    Document Retention and Destruction.  In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or others (collectively "materials"). Once the particular matter to which those materials relate has been concluded, this Firm will have no further responsibility to maintain such materials. If you have not sought the return of such materials within one year of the closing of the matter to which such materials relate, we will thereupon have the right to destroy such materials.

16.    Interest.  All statements are due and payable within thirty days. We reserve the right to charge simple interest at 10% per annum on all sums, whether for fees or reimbursement of costs, not paid within thirty days of the rendering of our statement. Our failure to impose this interest charge on any occasion, or on multiple, numerous, and even repetitive occasions, is not a waiver of our right to thereafter impose this charge on unpaid amounts from the thirty-first day after each unpaid amount was initially billed.

17.    Application to Subsequent Matters.  The agreement reflected in these Terms of Retention, and in the accompanying letter, apply to our present representation of you and to any subsequent matters which we agree to undertake on your behalf.



18.    Attorney's Lien.  The Firm will have a lien for attorneys' fees and costs advanced on all claims and causes of action that are the subject of the Firm's representation of you under the agreement reflected in these Terms of Retention and in the accompanying letter, and on all proceeds of any recovery obtained (whether by settlement, arbitration award, or court judgment).

19.    ARBITRATION.  IN THE EVENT OF A DISPUTE BETWEEN YOU AND THE FIRM REGARDING FEES, COSTS, OR ANY OTHER MATTER RELATED TO OR ARISING OUT OF OUR ENGAGEMENT BY YOU, OR ARISING OUT OF YOUR OR OUR PERFORMANCE OF THE AGREEMENT PURSUANT TO WHICH OUR SERVICES ARE PERFORMED (INCLUDING THE QUALITY OF THE SERVICES WHICH WE RENDER), YOU HAVE THE RIGHT TO HAVE THE DISPUTE DETERMINED, SETTLED AND RESOLVED BY CONFIDENTIAL ARBITRATION PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 6200-6206 WHICH PROVIDE PROCEDURES FOR ARBITRATION BEFORE THE STATE BAR OF CALIFORNIA OR BEFORE THE ATTORNEY-CLIENT RELATIONS DEPARTMENT OF THE LOS ANGELES COUNTY BAR ASSOCIATION. ARBITRATION UNDER THE CODE IS VOLUNTARY FOR CLIENTS BUT MANDATORY FOR LAW FIRMS. IF YOU SELECT ARBITRATION, ANY AWARD SHALL BE FINAL, BINDING AND CONCLUSIVE UPON THE PARTIES, AND A JUDGMENT RENDERED THEREON MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. IF YOU DO NOT SELECT ARBITRATION, ANY DISPUTE MAY BE DETERMINED BY A COURT OF LAW ON AN ACTION BROUGHT BY EITHER PARTY. THE PREVAILING PARTY IN ANY SUCH ARBITRATION OR COURT ACTION SHALL BE ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS. YOU AND THE FIRM AGREE THAT VENUE FOR ANY SUCH ARBITRATION OR COURT ACTION SHALL BE IN LOS ANGELES COUNTY, CALIFORNIA, AND FURTHER AGREE TO SUBMIT TO THE PERSONAL JURISDICTION OF THE ARBITRATOR OR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES.



Q 0198

Privileged & Confidential
All Rights Reserved

SD 00198

**EXHIBIT G**
**439**

### RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
### A LAW CORPORATION

### NOTICE OF PRIVACY POLICY

Law firms that provide tax planning and tax preparation services to individuals are now required by law[1] to inform their tax clients of the law firm's policies regarding privacy of client information. As attorneys, we have been and continue to be bound by rules of professional conduct that mandate more stringent rules of confidentiality of client matters and information than those required by law. Consequently, it has always been our policy to protect your right to privacy. The purpose of this Notice is to advise you with respect to what nonpublic information we collect, and how we use it.

### TYPES OF NONPUBLIC PERSONAL INFORMATION WE COLLECT

Generally, nonpublic personal information is personally identifiable financial information that is not publicly available. We collect nonpublic personal information about you that you provide to us, or that is obtained by us with your authorization.

### PARTIES TO WHOM WE DISCLOSE INFORMATION

**For current or former clients, we do not disclose any nonpublic personal information obtained in the course of our practice to anyone except as required or permitted by law, or as may be authorized by you.** Permitted disclosures include, for example, providing information to our employees and, in limited situations, to unrelated third parties, who need to know such information to assist us in providing services to you. In all such situations, such information is disclosed to process, administer, carry out or enforce your rights or to facilitate the transaction we are working on for you, and we stress the confidential nature of the information being shared with such parties.

### PROTECTING THE CONFIDENTIALITY AND SECURITY OF CLIENT'S INFORMATION

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs, and in some cases to comply with professional guidelines. We maintain physical, electronic, and procedural safeguards that comply with federal regulations and applicable state law, as well as our professional standards, in order to protect and safeguard your nonpublic personal information and privacy.

### IF YOU HAVE QUESTIONS

Please call if you have any questions, because your privacy, our professional ethics, and the ability to provide you with quality financial services are very important to us. You can reach us at: Elizabeth Blakely (213) 895-4900 x 237 [ebb@rodipollock.com] or Maureen Varnes (213) 895-4900 x 234 [mov@rodipollock.com].

Document7

---

[1] Section 504(a) of the Gramm-Leach-Bliley Act (Public Law 106-102) and Title 16, Part 313 of the Code of Federal Regulations

**Privileged & Confidential**
**All Rights Reserved**

Q 0199

SD 00199

**EXHIBIT G**
**440**

OFFICES OF
# MARC TOBEROFF

July 10, 2003

*Privileged & Confidential*

Via Federal Express

Jean Peavy
Warren Peary
51 Camino Cabo
Sante Fe, NM 87508

Dear Jean and Warren:

Enclosed please find for your review the documents to probate the Estate of Joseph Shuster and to appoint Warren as Executor of such Estate. The documents have been prepared by John Pettker, Esq. of the Rodi, Pollock law firm (the Trusts and Estates specialist we retained) with my input regarding relevant copyright matters.

Please follow very carefully the directions set forth in the Rodi Pollock cover letter dated July 8, 2003 in executing the documents as indicated and check both front and back of each document enclosed. The Declination by Dawn Peavy only relates to her not wanting to be the Executor, not to her entitlement to any share of any assets or moneys under Joe Shuster's or Jean Peavy's will. (I have timed the sending of these documents so that Dawn can execute the Declination while she is visiting you this weekend and thus I will receive for filing all the required executed documents together.)

I have also enclosed the legal retainer agreement requested by Rodi Pollock for Warren's signature along with mine. Although I am covering this legal expense pursuant to our Agreement (and this is referenced in the Rodi Pollock agreement) they have asked for your signature as well on their retainer agreement to reflect that you have authorized them to probate the Estate.

Once you have reviewed and fully executed the enclosed documents as indicated, please federal express the documents to me (feel free to use my account number) whereupon I will forward them to Rodi Pollock for filing with Court.

Please call me immediately to confirm receipt of this important package and to ask me any questions regarding the enclosed.

Best regards,

Marc Toberoff

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
MToberoff@ipww.biz

**Privileged & Confidential**
**All Rights Reserved**

Q 0200

SD 00200

EXHIBIT G
441

Jul-08-03  02:27pm  From-                                    T-749  P.01  F-604

# RODI·POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

JOHN D. CAHILL
JOHN O. PETTKER
WILLIAM R. CHRISTIAN
HENRY F. PRAMOV, JR.
ALLAN S. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE S. NORWOOD
PRIYA G. BHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

KARL B. RODI (1908-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1896-1979)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIERS
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-P1

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:    Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following
revised <u>original</u> probate documents appointing Mark Warren Peary as Executor, in place of
Jean Adele Peavy, along with a complete copy for your files:

a.    Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and
3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.    Declination to Act as Personal Representative and Waiver of Bond of Mark
Warren Peary as Personal Representative;

c.    Nomination of Personal Representative, Declination to Act, and Waiver of
Bond of Mark Warren Peary;

d.    Letters Testamentary;

e.    Duties and Liabilities of Personal Representative; and

d.    Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the
Petition is correct, please have Mr. Peary sign and date it where provided on the reverse
side. The Duties and Liabilities of Personal Representative and the Letters Testamentary
should be read and signed, but please do <u>not</u> date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of
Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Q 0201

Privileged & Confidential
All Rights Reserved

SD 00201

Jul-08-03  02:27pm  From-                                                    T-749  P.02  F-604

Marc Toberoff
July 8, 2003
Page 2

signature, along with the Nomination of Personal Representative for Dawn L. Peavy's
signature and return.

I will be petitioning the court for limited authority for Mr. Peary to administer the
estate under the Independent Administration of Estates Act. In view of the fact that there
is a possibility that the court may not accept the Will for probate, and that Mr. Peary is not
a resident of California, the court may require that he furnish a minimum bond. Therefore,
I have also enclosed bonding documents to be completed and signed by Mr. Peary.

Upon our receipt of these documents we will submit the Petition for Probate to the
court and publish the initiation of the probate in the appropriate newspaper. The court
hearing on the Petition will be scheduled to occur approximately 4 weeks after our filing of
these documents.

Thank you for giving our firm the opportunity to assist you in this probate matter.
Please feel free to call me if you have any questions.

Sincerely,

John D. Pettker

JDP:mmc
Enclosures
261509_1.doc

Q 0202

Privileged & Confidential
All Rights Reserved

SD 00202

EXHIBIT G
443

# Confirmation Report - Memory Send

Page        : 001
Date & Time: Jul-15-03  02:11pm
Line 1      :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 035 |
| Date | : | Jul-15 02:09pm |
| To | : | ☎915054664551 |
| Number of pages | : | 002 |
| Start time | : | Jul-15 02:09pm |
| End time | : | Jul-15 02:11pm |
| Pages sent | : | 002 |
| Status | : | OK |

Job number    : 035          *** SEND SUCCESSFUL ***

Jul-08-03 02:27pm  From-                                    T-749  P.01  F-604



RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 689-4900

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:    Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following revised original probate documents appointing Mark Warren Peary as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.    Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.    Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative;

c.    Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peary;

d.    Letters Testamentary;

e.    Duties and Liabilities of Personal Representative; and

d.    Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peary sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do not date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Q 0203

Privileged & Confidential
All Rights Reserved

SD 00203

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| (213) 895-4900 | (213) 895-4921 | |

JOHN D. PETTKER, Esq. (SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

ATTORNEY FOR *(Name):*    MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF *(Name):*   JOSEPH SHUSTER, also known as JOE
SHUSTER

/lost                                   DECEDENT

| PETITION FOR | [X] Probate of Will and for Letters Testamentary | CASE NUMBER: |
|---|---|---|
| | [ ] Probate of Will and for Letters of Administration with Will Annexed | |
| | [ ] Letters of Administration | HEARING DATE: |
| | [ ] Letters of Special Administration | |
| | [X] Authorization to Administer Under the Independent Administration of Estates Act [X] with limited authority | DEPT.:          TIME: |

1. Publication will be in *(specify name of newspaper):*  DAILY JOURNAL
   a. [X] Publication requested.   b. [ ] Publication to be arranged.
2. Petitioner *(name of each):*   MARK WARREN PEARY                                    requests
   a. [X] decedent's will and codicils, if any, be admitted to probate.
   b. [X] *(name):*  MARK WARREN PEARY
       be appointed  (1) [X] executor              (3) [ ] administrator
                     (2) [ ] administrator with will annexed   (4) [ ] special administrator
       and Letters issue upon qualification.
   c. [X] that [ ] full [X] limited  authority be granted to administer under the Independent Administration of Estates Act.
   d. (1) [X] bond not be required for the reasons stated in item 3d.
      (2) [ ] $ _____ bond be fixed. It will be furnished by an admitted surety insurer or as otherwise provided by law. *(Specify reasons in Attachment 2 if the amount is different from the maximum required by Probate Code section 8482.)*
      (3) [ ] $ _____ in deposits in a blocked account be allowed. Receipts will be filed. *(Specify institution and location):*

3. a. Decedent died on *(date):* July 30, 1992   at *(place):*  West Los Angeles, California
      (1) [X] a resident of the county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above located at *(specify location permitting publication in the newspaper named in item 1):*
   b. Street address, city, and county of decedent's residence at time of death *(specify):*  11944 Montana Avenue #305, West Los Angeles, County of Los Angeles, California 90049
   c. Character and estimated value of the property of the estate:
      (1) Personal property:           $      None
      (2) Annual gross income from
          (a) real property:           $      None
          (b) personal property:       $      None
                    Total:            $      None
      (3) Real property: $ None       *(If full authority under the Independent Administration of Estates Act is requested, state the fair market value of the real property less encumbrances.)*
   d. (1) [X] Will waives bond.  [ ] Special administrator is the named executor and the will waives bond.
      (2) [X] All beneficiaries are adults and have waived bond, and the will does not require a bond. *(Affix waiver as Attachment 3d(2).)*
      (3) [X] All heirs at law are adults and have waived bond. *(Affix waiver as Attachment 3d(3).)*
      (4) [ ] Sole personal representative is a corporate fiduciary or an exempt government agency.
   e. (1) [ ] Decedent died intestate.
      (2) [X] Copy of decedent's will dated: 6/28/1988   [ ] codicils dated: _____ are affixed as Attachment 3e(2).
          [X] The will and all codicils are self-proving (Prob. Code, § 8220).
                        (Continued on reverse)

| Form Approved by the Judicial Council of California DE-111 [Rev. January 1, 1998] Mandatory Use [1/1/2000] | PETITION FOR PROBATE | Legal Solutions Plus | Probate Code, §§ 8002, 10450 |
| | | | Q 0204 |

SD 00204

ESTATE OF (Name): JOSEPH SHUST  **also known as JOE**
SHUSTER
                                    **DECEDENT**

CASE NUMBER:

*Include in Attachment 3e(2) a typed copy of a handwritten will and a translation of a foreign language will.*

3. f. **Appointment of personal representative** (check all applicable boxes):
  (1) Appointment of executor or administrator with will annexed:
    (a) [X] Proposed executor is named as executor in the will and consents to act.
    (b) [ ] No executor is named in the will.
    (c) [ ] Proposed personal representative is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(1)(c).)*
    (d) [X] Other named executors will not act because of [ ] death [X] declination [ ] other reasons (specify in Attachment 3f(1)(d)).
  (2) Appointment of administrator:
    (a) [ ] Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 3f(2)(a).)*
    (b) [ ] Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(2)(b).)*
    (c) [ ] Petitioner is related to the decedent as (specify):
  (3) [ ] Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 3f(3).)*
  g. Proposed personal representative is a [ ] resident of California [X] nonresident of California *(affix statement of permanent address as Attachment 3g)* [X] resident of the United States [ ] nonresident of the United States.
4. [X] Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.
5. a. The decedent is survived by (check at least one box in each of items (1) - (3)):
  (1) [ ] spouse [X] no spouse as follows: [X] divorced or never married [ ] spouse deceased
  (2) [ ] child as follows: [ ] natural or adopted [ ] natural born by a third party [X] no child
  (3) [ ] issue of a predeceased child [X] no issue of a predeceased child
  b. Decedent [ ] is [X] is not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*
6. *(Complete if decedent was survived by (1) a spouse but no issue (only a or b apply), or (2) no spouse or issue. Check the **first box** that applies):*
  a. [ ] Decedent is survived by a parent or parents who are listed in item 8.
  b. [X] Decedent is survived by issue of deceased parents, all of whom are listed in item 8.
  c. [ ] Decedent is survived by a grandparent or grandparents who are listed in item 8.
  d. [ ] Decedent is survived by issue of grandparents, all of whom are listed in item 8.
  e. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
  f. [ ] Decedent is survived by next of kin, all of whom are listed in item 8.
  g. [ ] Decedent is survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.
  h. [ ] Decedent is survived by no known next of kin.
7. *(Complete only if no spouse or issue survived decedent)* Decedent [X] had no predeceased spouse [ ] had a predeceased spouse who (1) [ ] died not more than 15 years before decedent owning an interest in real property that passed to decedent, (2) [ ] died not more than five years before decedent owning **personal property** valued at $10,000 or more that passed to decedent, (3) [ ] neither (1) nor (2) apply. *(If you check (1) or (2), check only the first box that applies):*
  a. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
  b. [ ] Decedent is survived by a parent or parents of the predeceased spouse who are listed in item 8.
  c. [ ] Decedent is survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.
  d. [ ] Decedent is survived by next of kin of the decedent, all of whom are listed in item 8.
  e. [ ] Decedent is survived by next of kin of the predeceased spouse, all of whom are listed in item 8.
8. Listed in **Attachment 8** are the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person.
9. [XX] Number of pages attached: __9__

Date:
▶
                (SIGNATURE OF ATTORNEY*)
* (Signature of all petitioners also required (Prob. Code, § 1020).)    JOHN D. PETTKER, Esq. (SBN 42346)
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:
  MARK WARREN PEARY               ▶
      (TYPE OR PRINT NAME)                     (SIGNATURE OF PETITIONER)

                          ▶
      (TYPE OR PRINT NAME)                     (SIGNATURE OF PETITIONER)

DE-111 [Rev. January 1, 1998]            **PETITION FOR PROBATE**                Page two

Q 0205

SD 00205

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 2c
### Requested Additional Power

<u>Requested Additional Power</u>

Petitioner requests that the court grant him the following power in addition to the general powers conferred upon him by law and under the Independent Administration of Estates Act: *the power to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(c) of the United States Copyright Act, 17 U.S.C. §304(c)(2)(D), and to maintain and defend on behalf of the decedent and the estate all proceedings necessary or appropriate in connection with this action.*

Q 0206

261503_1.doc

**In the Matter of the Estate of JOSEPH SHUSTER, Decedent**
**Los Angeles County, California, Superior Court – Central District**

### ATTACHMENT 2d(1), 3(c) and 3(d)(1), (2) and (3)

No bond should be required of petitioner to act as Executor, or if a bond is required by the Court, it should be for a nominal amount, for the following reasons:

1.    The first named Executor, Jean Adele Peavy, has signed and filed a Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative. Jean Adele Peavy, who is the sister of the decedent, is also the sole beneficiary under the decedent's Will and the sole heir at law of the decedent's estate under the laws of intestacy.

2.    Petitioner is the alternate named Executor under the decedent's Will, and the decedent's Will waives bond.

3.    Petitioner, who is the son of Jean Adele Peavy, is the nephew of the decedent.

4.    A probate proceeding with respect to the decedent's estate would be unnecessary but for the fact that a personal representative of his estate needs to be appointed for the purpose of *terminating prior transfers of the decedent's copyright(s) pursuant to Section §304(c) of the United States Copyright Act, 17 U.S.C. §304(c)(2)(D)*. This right of the personal representative of the decedent's estate to terminate prior transfers of the decedent's copyright(s) was enacted into federal law as part of the Sonny Bono Copyright Act effective October 27, 1998. The purpose of such new law, enacted over six years after the decedent's death, is to give authors and their estates the power to recover previously assigned copyrights within time limits delineated in the statute.

5.    All assets of the decedent, with the exception of the decedent's interest in and to *the copyrights*, which currently have an undetermined value, were of minimal value and transferred through a §13101 affidavit by Jean Adele Peavy shortly after the decedent's death on July 30, 1992.

Dated: _____, 2003

_____
MARK WARREN PEARY



Q 0207

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

ATTACHMENT 3e(2)
*(Lost)* Last Will and Testament

Grounds for Admission of *Lost* Will

The decedent died more than 10 years ago on July 30, 1992. Petitioner and other family members have made a diligent and extensive search for the original Will executed by the decedent on June 28, 1988, but have been unable to find it. Petitioner has only found a copy of such Will, which he is submitting for probate as the decedent's lost Will. Petitioner believes that the original of such Will has been lost or inadvertently destroyed. There would be no reason for the decedent to have revoked such Will by destroying it, because the terms of the Will replicate the result if the decedent died intestate. Under both the Will and the laws on intestacy, petitioner's mother, Jean Adele Peavy, who is the decedent's sister and sole surviving heir at law, would be the sole beneficiary of the decedent's estate and, but for her declination to act, would be entitled to be appointed personal representative. Further, under both the decedent's Will and the laws of intestacy, by reason of the declinations to act that have been filed concurrently with this petition, petitioner is entitled to be appointed personal representative.

The decedent never married and never had any issue.

261503_1.doc

Q 0208

SD 00208

EXHIBIT G
449

THE

Last Will and Testament of

*Joseph Shuster*

Dated *June 28 19 88*

Q 0209

SD 00209

**EXHIBIT G**
**450**

# Last Will and Testament of

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, I ___JOSEPH SHUSTER___

of _____ W. Los Angeles, California _____ being of sound and disposing mind and memory, and not acting under duress, menace, fraud or the undue influence of any person whomsoever, do make, publish and declare this my Last Will and Testament.

## I.

I hereby declare that I am the ___brother___ of ___JEAN ADELE PEAVY___

at the time of the execution of this Will.

## II.

I make no bequest, gift or devise to my children named in Paragraph I, or to any other child or children hereafter born to or adopted by me, except as hereinafter stated, knowing their

_____N/A_____ will provide for them.
(mother, or father)

## III.

I hereby direct and order that all just debts for which proper claims are filed against my estate, and the expenses of my last illness and funeral, be paid by my execut_rix_ as soon after my death as is practicable; provided, however, that this direction shall not authorize any creditor to require payment of any debt or obligation prior to its normal maturity in due course.

## IV.

I give, devise and bequeath unto ___JEAN ADELE PEAVY___ all of the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated. In the event that ___Jean Adele Peavy___ shall predecease me, or in the event that both ___Jean Adele Peavy___ and I shall die as a result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, ___MARK WARREN PEARY___ .

## V.

I hereby nominate and appoint my ___sister___ ___Jean Adele Peavy___, execut_rix_ of this my Last Will and Testament, to act without bond. In the event that my ___sister___ is for any reason unable or unwilling to act as execut_rix_ hereof, I nominate and appoint ___Mark Warren Peary___ to act as execut_or_ also without bond.

Q 0210

SD 00210

## VI.

I further direct that my estate be settled without the intervention of any court, except to the extent required by law, and that my executrix settle my estate in such a manner as shall seem best and most conveniently to her____, and I hereby empower my executrix to mortgage, lease sell, exchange and convey the personal and real property of my estate without an order of court for that purpose and without notice, approval or confirmation and in all other respects to administer and settle my estate without the intervention of court.

Q 0211

SD 00211

## VII.

I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my Last Will and Testament.

In Witness Whereof I have hereunto set my hand this _28_ day of _June_ 19 _88_.

_Joseph Shuster_
Testator

STATE OF CALIFORNIA

County of _Los Angeles_ } ss.

Each of the undersigned, being first duly sworn on oath, states that on this _28_ day of _June_, 19 _88_:

(1) I am over the age of eighteen (18) years and competent to be a Witness to the Will of JOSEPH SHUSTER (the Testator );

(2) The Testator , in my presence and in the presence of the other Witnesses whose signatures appear below:

(a) Declared the foregoing instrument consisting of _one_ pages, of which this is the last to be _his_ Will;

(b) Requested me and the other Witnesses to act as Witnesses to _his_ Will and to make this affidavit; and

(c) Signed such instrument;

(3) I believe the Testator to be of sound mind, and that in so declaring and signing, he was not acting under any duress, menace, fraud, or undue influence;

(4) The other witnesses and I, in the presence of the Testator and of each other now affix our signatures as Witnesses to the Will and make this affidavit.

_Tom Fenaughty_
Witness
3374 Overland Ave #1
Address
L.A. Ca. 90064

_Robert E Williams_
Witness
3545 Mentone Ave #3
Address
Los Angeles California 90034

Witness

Address

Q 0212

SUBSCRIBED & SWORN to before me this _28_ day of _June_, 19 _88_.

_F. Patrick Hagerty_

Notary Public in and for the State of California, residing at _Santa Monica, Calif._

OFFICIAL SEAL
F. PATRICK HAGERTY
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires April 23, 1991

SD 00212

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 3g
### Nonresident of California and Permanent Address

I, Mark Warren Peary, the proposed personal representative, am a non-resident of California. I reside in the State of New Mexico at the following residence address:

51 Camino Cabo
Santa Fe, NM 87508

I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

_____
MARK WARREN PEARY

Q 0213

261503_1.doc

SD 00213

**EXHIBIT G**
**454**

In the Matter of the Estate of **JOSEPH SHUSTER**, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas 79936 | Niece | Adult |

Q 0214

261503_1.doc

SD 00214

**EXHIBIT G**
**455**

1   RODI, POLLOCK, PETTKER, GALBRAITH
    & CAHILL, A Law Corporation
2   JOHN D. PETTKER (SBN 42346)
    444 South Flower Street, Suite 1700
3   Los Angeles, California 90071-2901
    Telephone: (213) 895-4900
4   Facsimile: (213) 895-4921

5   Attorneys for MARK WARREN PEARY

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             DECLINATION TO ACT AS PERSONAL
13                                             REPRESENTATIVE AND WAIVER OF BOND
                                               OF MARK WARREN PEARY AS PERSONAL
14  JOSEPH SHUSTER, also known as             REPRESENTATIVE
    JOE SHUSTER
15

16

17                        Decedent.

18

19      I, JEAN ADELE PEAVY, state as follows:

20      1.      I am the only sibling of the decedent, JOSEPH SHUSTER.  The decedent's and my

21  parents are both deceased, having predeceased the decedent.  I have two children, both of whom

22  survived the decedent.  They are Mark Warren Peary and Dawn L. Peavy.

23      2.      I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am

24  nominated to act as Executor under such Will.

25      3.      I hereby decline to serve as personal representative of the decedent's estate, whether

26  as Executor of the decedent's Will or Administrator of his estate.

27      4.      I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as

28                                                                  Q 0215

DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
REPRESENTATIVE

SD 00215

EXHIBIT G
456

1    Executor of the decedent's Will or Administrator of his estate.

2        Dated:_____, 2003

3

4                                    _____

5                                    JEAN ADELE PEAVY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                                Q 0216

28    261504_1.doc

                                      2
─────────────────────────────────────────────────────────
DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
                                REPRESENTATIVE

ROOI, POLLOCK, PETKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

1  RODI, POLLOCK, PETTKER, GALBRAITH
   & CAHILL, A Law Corporation
2  JOHN D. PETTKER (SBN 42346)
   444 South Flower Street, Suite 1700
3  Los Angeles, California 90071-2901
   Telephone: (213) 895-4900
4  Facsimile: (213) 895-4921

5  Attorneys for MARK WARREN PEARY

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             NOMINATION OF PERSONAL REPRESENTATIVE,
13                                             DECLINATION TO ACT, AND WAIVER OF BOND
                                               OF MARK WARREN PEARY
14  JOSEPH SHUSTER, also known as
    JOE SHUSTER
15

16

17                          Decedent.

18                                                              Q 0217

19  I, DAWN L. PEAVY, state and declare as follows:

20      1.    I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,

21  being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

22      2.    If the decedent's Will is not admitted to probate and an Executor thereof is not

23  appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the

24  decedent's estate, I am a person entitled to equal priority for appointment as the personal

25  representative of the decedent's estate with my brother, MARK WARREN PEARY.

26      3.    If for any reason MARK WARREN PEARY is not appointed by the Court as

27  Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,

28  New Mexico, to serve as the personal representative of the decedent's estate without the

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

1

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00217

**EXHIBIT G**
**458**

1  requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465

2  of the California Probate Code, and I decline to act as such personal representative.

3       4.     My intent in making this nomination is to ensure the appointment of a person that I

4  trust to serve as the personal representative of my uncle's estate.

5       I declare under penalty of perjury under the laws of the State of California, that the

6  foregoing is true and correct.

7       Executed on _____, 2003, in El Paso, Texas.

8

9                                                _____

10                                             DAWN L. PEAVY

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  261505_1.doc                                    Q 0218

2

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

EXHIBIT G
459

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

(213) 895-4900        (213) 895-4921

JOHN D. PETTKER, Esq.(SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

ATTORNEY FOR (Name): MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF (Name):   JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

CASE NUMBER:

## LETTERS

| | |
|---|---|
| ☐ TESTAMENTARY | ☐ OF ADMINISTRATION |
| ☐ OF ADMINISTRATION WITH WILL ANNEXED | ☐ SPECIAL ADMINISTRATION |

### LETTERS

1. ☒ The last will of the decedent named above having been proved, the court appoints (name):
MARK WARREN PEARY
  a. ☐ executor.
  b. ☐ administrator with will annexed.

2. ☐ The court appoints (name):

  a. ☐ administrator of the decedent's estate.
  b. ☐ special administrator of decedent's estate
    (1) ☐ with the special powers specified in the Order for Probate.
    (2) ☐ with the powers of a general administrator.
    (3) ☐ letters will expire on (date):

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☐ with full authority
☒ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

| (SEAL) | Date: |
|---|---|
| | Clerk, by |
| | (DEPUTY) |

### AFFIRMATION

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):

I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
(Name and title):

4. Executed on (date):
at (place):          , California.

Q 0219

▶

(SIGNATURE)
**MARK WARREN PEARY**

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date: |
|---|---|
| | Clerk, by |
| | (DEPUTY) |

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

**LETTERS**
(Probate)

Legal Solutions Plus

Probate Code, §§ 1001, 8403;
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

SD 00219

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| JOHN D. PETTKER, Esq.(SBN 42346)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901<br>TELEPHONE NO.: (213) 895-4900    FAX NO. (Optional): (213) 895-4921<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): MARK WARREN PEARY | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles |
|---|
| STREET ADDRESS:    111 N. Hill Street |
| MAILING ADDRESS:    111 N. Hill Street |
| CITY AND ZIP CODE:    Los Angeles, CA 90012 |
| BRANCH NAME:    Central District |

| ESTATE OF (Name):    JOSEPH SHUSTER, also known as JOE SHUSTER |
|---|
| DECEDENT |

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

# DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

## 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

## 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Page 1 of 2

Q 0220

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>DE-147 [Rev. January 1, 2002] | DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>(Probate) |  | Probate Code, § 8404 |
|---|---|---|---|

| ESTATE OF *(Name)*: JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
| --- | --- |
| DECEDENT | |

**d. File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

## 3. NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

## 4. INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

## 5. RECORD KEEPING

**a. Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

**b. Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

## 6. CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. **When in doubt, contact your attorney.**

> **NOTICE:**
> 1. This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary.
> 2. If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions.

## ACKNOWLEDGMENT OF RECEIPT

1. I have petitioned the court to be appointed as a personal representative.
2. My address and telephone number are *(specify):* 316 Horton Lane N.W., Albuquerque, NM 87114 *corrected*
   (505) 466-4551
3. I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:

MARK WARREN PEARY
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PETITIONER)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PETITIONER)

> **CONFIDENTIAL INFORMATION:** If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).)

DE-147 [Rev. January 1, 2002]    **DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE**    Page 2 of 2
(Probate)

Q 0221

SD 00221

# AMERICAN CONTRACTORS INDEMNITY COMPANY

All Papers and notices may be served at
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA 90045

BOND NO. _____

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

**IN THE MATTER OF**

Case Number : _____

☐ Bond upon Qualifying        ☐ Additional Bond

Premium_____
Per Annum

KNOWN ALL MEN BY THESE PRESENTS:
That we,_____
as Principal, and the <u>**AMERICAN CONTRACTORS INDEMNITY COMPANY**</u> as Surety, are held and firmly bound
unto_____

in the sum of _____ Dollars ($_____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.
THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,
WHEREAS, an order was duly made and entered by the Superior Court of the State of California, for the County of
_____ on _____
☐ Appointing the above Principal, _____ of
the estate of_____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

NOW, THEREFORE, if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.
Signed and dated at _____ California on _____
                                    (Place)                                                              (Date)

_____                    _____
                                    As Principal                                                              As Principal

                                                                          _____
                                                                                                              As Principal

AMERICAN CONTRACTORS INDEMNITY COMPANY
IN WITNESS WHEREOF, The corporate seal and name of said Surety Company is hereto affixed and attested by
_____ . who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

                    By: _____
                                                              Attorney-in-Fact

Q 0222

SD 00222

**EXHIBIT G**
463

# Probate & Fiduciary Bond Application

## BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC
900 Wilshire Blvd., Suite 1400 • Los Angeles, CA 90017• (213) 628-2970 • (213) 628-2977 Fax

Type of Bond: _____

Hearing Date: _____

Bond No.: _____

Amount : _____

Premium : _____

Case No.: _____

> This application must be completed in detail before bond is approved for filing

Estate Name: _____

| | For Office Use Only |
|---|---|
| | By        Date |
| Underwritten: | |
| Joint Control: | |
| Approval: | |

Name _____    Tel. # _____

Address _____

Social Security No. _____    Driver's License # _____

Your Net Worth _____    Date of Birth _____

Employer/Retired _____    Position/Previous Position _____

Address _____  City _____  State _____  Zip _____

Tel # _____    Length of Employment _____

Do you own a home? _____  Rent? _____  Other _____

Your Bank _____    Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____  Lost a civil judgment? _____

If yes, explain _____

Have you or your spouse filed personal bankruptcy? _____  If yes, when? _____

Are you indebted to Decedent/Conservatee? _____  If yes, amount $ _____

Secured?  ☐ Yes   ☐ No    How? _____

Attorney handling this case: _____

Law Firm: _____    Phone No.: _____

Address: _____

Q 0223

# RODI POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

JOHN D. CAHILL
JOHN D. PETTKER
WILLIAM R. CHRISTIAN
HENRY F. PRAMOV, JR.
ALLAN E. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE E. NORWOOD
PRIYA G. BHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

KARL B. RODI (1906-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1898-1973)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIERS
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-P1

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:    Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following revised original probate documents appointing Mark Warren Peary as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.    Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.    Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative;

c.    Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peary;

d.    Letters Testamentary;

e.    Duties and Liabilities of Personal Representative; and

d.    Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peary sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do not date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Privileged & Confidential
All Rights Reserved

Q 0224

SD 00224

Marc Toberoff
July 8, 2003
Page 2

signature, along with the Nomination of Personal Representative for Dawn L. Peavy's signature and return.

I will be petitioning the court for limited authority for Mr. Peary to administer the estate under the Independent Administration of Estates Act. In view of the fact that there is a possibility that the court may not accept the Will for probate, and that Mr. Peary is not a resident of California, the court may require that he furnish a minimum bond. Therefore, I have also enclosed bonding documents to be completed and signed by Mr. Peary.

Upon our receipt of these documents we will submit the Petition for Probate to the court and publish the initiation of the probate in the appropriate newspaper. The court hearing on the Petition will be scheduled to occur approximately 4 weeks after our filing of these documents.

Thank you for giving our firm the opportunity to assist you in this probate matter. Please feel free to call me if you have any questions.

Sincerely,

John D. Pettker

JDP:mnc
Enclosures
261509_1.doc

Q 0225

SD 00225

Jul-08-03 02:28pm From-                                              T-749  P.03/19  F-604

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):<br>(213) 895-4900<br>JOHN D. PETTKER, Esq. (SBN 42346)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901 | TELEPHONE AND FAX NOS.:<br>(213) 895-4921 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR (Name):  MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF (Name):   JOSEPH SHUSTER, also known as JOE
SHUSTER
/lost                                    DECEDENT

| PETITION FOR | [X] Probate of Will and for Letters Testamentary<br>[ ] Probate of Will and for Letters of Administration<br>      with Will Annexed<br>[ ] Letters of Administration<br>[ ] Letters of Special Administration<br>[X] Authorization to Administer Under the Independent<br>      Administration of Estates Act [X] with limited authority | CASE NUMBER:<br><br>HEARING DATE:<br><br>DEPT.:          TIME: |
|---|---|---|

1. Publication will be in (specify name of newspaper):  DAILY JOURNAL
   a. [X] Publication requested.   b. [ ] Publication to be arranged.

2. Petitioner (name of each):   MARK WARREN PEARY                                requests
   a. [X] decedent's will and codicils, if any, be admitted to probate.
   b. [X] (name):   MARK WARREN PEARY
       be appointed (1) [X] executor                  (3) [ ] administrator
                    (2) [ ] administrator with will annexed    (4) [ ] special administrator
       and Letters issue upon qualification.
   c. [X] that [ ] full [X] limited   authority be granted to administer under the Independent Administration of Estates Act.
   d. (1) [X] bond not be required for the reasons stated in item 3d.
       (2) [ ] $            bond be fixed. It will be furnished by an admitted surety insurer or as otherwise provided by law.
                 (Specify reasons in Attachment 2 if the amount is different from the maximum required by Probate Code section 8482.)
       (3) [ ] $            in deposits in a blocked account be allowed. Receipts will be filed. (Specify institution and location):

3. a. Decedent died on (date):  July 30, 1992     at (place):   West Los Angeles, California
      (1) [X] a resident of the county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above located at (specify location permitting
              publication in the newspaper named in item 1):
   b. Street address, city, and county of decedent's residence at time of death (specify):  11944 Montana Avenue #305, West Los
      Angeles, County of Los Angeles, California 90049
   c. Character and estimated value of the property of the estate:
      (1) Personal property:          $         None
      (2) Annual gross income from
           (a) real property:          $         None
           (b) personal property:      $         None                                          Q 0226
               Total:                  $         None
      (3) Real property: $  None              (If full authority under the Independent Administration of Estates Act is requested,
                                              state the fair market value of the real property less encumbrances.)
   d. (1) [X] Will waives bond.   [ ] Special administrator is the named executor and the will waives bond.
      (2) [X] All beneficiaries are adults and have waived bond, and the will does not require a bond. (Affix waiver as Attachment
              3d(2).)
      (3) [X] All heirs at law are adults and have waived bond. (Affix waiver as Attachment 3d(3).)
      (4) [ ] Sole personal representative is a corporate fiduciary or an exempt government agency.
   e. (1) [ ] Decedent died intestate.
      (2) [X] Copy of decedent's will dated: 6/28/1988   [ ] codicils dated:        are affixed as Attachment 3e(2).
              [X] The will and all codicils are self-proving (Prob. Code, § 8220).
                                 (Continued on reverse)

Form Approved by the
Judicial Council of California
DE-111 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]                    PETITION FOR PROBATE          Legal                Probate Code, §§ 8002, 10450
                                                                         Solutions
                                                                         & Plus

Jul-08-03  02:28pm  From-                                                      T-749  P.04/19  F-604

| ESTATE OF *(Name):* JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
|---|---|
| DECEDENT | |

3. f. **Appointment of personal representative** *(check all applicable boxes):*

Include in Attachment 3e(2) a typed copy of a handwritten will and a translation of a foreign language will.

   (1) Appointment of executor or administrator with will annexed:
   - (a) [X] Proposed executor is named as executor in the will and consents to act.
   - (b) [ ] No executor is named in the will.
   - (c) [ ] Proposed personal representative is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(1)(c).)*
   - (d) [X] Other named executors will not act because of [ ] death [X] declination [ ] other reasons *(specify in Attachment 3f(1)(d)).*

   (2) Appointment of administrator:
   - (a) [ ] Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 3f(2)(a).)*
   - (b) [ ] Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(2)(b).)*
   - (c) [ ] Petitioner is related to the decedent as *(specify):*

   (3) [ ] Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 3f(3).)*

   g. Proposed personal representative is a [ ] resident of California [X] nonresident of California *(affix statement of permanent address as Attachment 3g)* [X] resident of the United States [ ] nonresident of the United States.

4. [X] Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

5. a. The decedent is survived by *(check at least one box in each of items (1) - (3))*
   - (1) [ ] spouse [X] no spouse as follows: [X] divorced or never married [ ] spouse deceased
   - (2) [ ] child as follows: [ ] natural or adopted [ ] natural adopted by a third party [X] no child
   - (3) [ ] issue of a predeceased child [X] no issue of a predeceased child

   b. Decedent [ ] is [X] is not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*

6. *(Complete if decedent was survived by (1) a spouse but no issue (only a or b apply), or (2) no spouse or issue. Check the first box that applies.)*
   - a. [ ] Decedent is survived by a parent or parents who are listed in item 8.
   - b. [X] Decedent is survived by issue of deceased parents, all of whom are listed in item 8.
   - c. [ ] Decedent is survived by a grandparent or grandparents who are listed in item 8.
   - d. [ ] Decedent is survived by issue of grandparents, all of whom are listed in item 8.
   - e. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
   - f. [ ] Decedent is survived by next of kin, all of whom are listed in item 8.
   - g. [ ] Decedent is survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.
   - h. [ ] Decedent is survived by no known next of kin.

7. *(Complete only if no spouse or issue survived decedent.)* Decedent [X] had no predeceased spouse [ ] had a predeceased spouse who (1) [ ] died not more than 15 years before decedent owning an interest in real property that passed to decedent, (2) [ ] died not more than five years before decedent owning personal property valued at $10,000 or more that passed to decedent, (3) [ ] neither (1) nor (2) apply. *(If you check (1) or (2), check only the first box that applies.)*
   - a. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
   - b. [ ] Decedent is survived by a parent or parents of the predeceased spouse who are listed in item 8.
   - c. [ ] Decedent is survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.
   - d. [ ] Decedent is survived by next of kin of the decedent, all of whom are listed in item 8.
   - e. [ ] Decedent is survived by next of kin of the predeceased spouse, all of whom are listed in item 8.

8. Listed in Attachment 8 are the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person.

9. [ ] Number of pages attached: _____

Date:

\* *(Signature of all petitioners also required (Prob. Code, § 1020).)*                    ▶ _____
                                                                                                                    (SIGNATURE OF ATTORNEY)
                                                                                           JOHN D. PETTKER, Esq. (SBN 42346)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

MARK WARREN PEARY                                     ▶ _____
_____                                      (SIGNATURE OF PETITIONER)
(TYPE OR PRINT NAME)

_____                                      ▶ _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PETITIONER)

DE-111 [Rev. January 1, 1998]                **PETITION FOR PROBATE**                                Page two

Q 0227

SD 00227

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 2c
### Requested Additional Power

<u>Requested Additional Power</u>
        Petitioner requests that the court grant him the following power in addition
to the general powers conferred upon him by law and under the Independent
Administration of Estates Act: *the power to terminate prior transfers of the decedent's
copyrights pursuant to 17 U.S.C §304(c)(2)(D), and to maintain and defend on behalf of
the decedent and the estate all proceedings necessary or appropriate in connection with
this action.*

261503_1.doc                                                    Q 0228

SD 00228

Jul-08-03  02:28pm    From-                                                T-749   P.06/19   F-604

**In the Matter of the Estate of JOSEPH SHUSTER, Decedent**
**Los Angeles County, California, Superior Court – Central District**

### ATTACHMENT 2d(1), 3(c) and 3(d)(1), (2) and (3)

No bond should be required of petitioner to act as Executor, or if a bond is required by the Court, it should be for a nominal amount, for the following reasons:

1.    The first named Executor, Jean Adele Peavy, has signed and filed a Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative. Jean Adele Peavy, who is the sister of the decedent, is also the sole beneficiary under the decedent's Will and the sole heir at law of the decedent's estate under the laws of intestacy.

2.    Petitioner is the alternate named Executor under the decedent's Will, and the decedent's Will waives bond.

3.    Petitioner, who is the son of Jean Adele Peavy, is the nephew of the decedent.

4.    A probate proceeding with respect to the decedent's estate would be unnecessary but for the fact that a personal representative of his estate needs to be appointed for the purpose of *terminating prior transfers of the decedent's copyrights pursuant to 17 U.S.C §304(c)(2)(D)*.

5.    All assets of the decedent, with the exception of the decedent's interest in and to *the copyrights*, which currently have an undetermined value, were of minimal value and transferred through a §13101 affidavit by Jean Adele Peavy shortly after the decedent's death on July 30, 1992.

Dated: _____, 2003

_____
MARK WARREN PEARY



261503_1.doc

Q 0229

SD 00229

**In the Matter of the Estate of JOSEPH SHUSTER, Decedent**
**Los Angeles County, California, Superior Court – Central District**

**ATTACHMENT 3e(2)**
**_(Lost)_ Last Will and Testament**

<u>Grounds for Admission of _Lost_ Will</u>

The decedent died more than 10 years ago on July 30, 1992. Petitioner and other family members have made a diligent and extensive search for the original Will executed by the decedent on June 28, 1988, but have been unable to find it. Petitioner has only found a copy of such Will, which he is submitting for probate as the decedent's lost Will. Petitioner believes that the original of such Will has been lost or inadvertently destroyed. There would be no reason for the decedent to have revoked such Will by destroying it, because the terms of the Will replicate the result if the decedent died intestate. Under both the Will and the laws on intestacy, petitioner's mother, Jean Adele Peavy, who is the decedent's sister and sole surviving heir at law, would be the sole beneficiary of the decedent's estate and, but for her declination to act, would be entitled to be appointed personal representative. Further, under both the decedent's Will and the laws of intestacy, by reason of the declinations to act that have been filed concurrently with this petition, petitioner is entitled to be appointed personal representative.

The decedent never married and never had any issue.

Q 0230

261503_1.doc

SD 00230

**EXHIBIT G**
**471**

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 3g
#### Nonresident of California and Permanent Address

I, Mark Warren Peary, the proposed personal representative, am a non-resident of California. I reside in the State of New Mexico at the following residence address:

316 Horton Lane N.W.
Albuquerque, NM 87114

I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

MARK WARREN PEARY

261503_1.doc                                                    Q 0231

SD 00231

EXHIBIT G
472

**In the Matter of the Estate of JOSEPH SHUSTER, Decedent**
**Los Angeles County, California, Superior Court – Central District**

### ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas 79936 | Niece | Adult |

261503_1.doc

Q 0232

SD 00232

1  RODI, POLLOCK, PETTKER, GALBRAITH
   & CAHILL, A Law Corporation
2  JOHN D. PETTKER (SBN 42346)
   444 South Flower Street, Suite 1700
3  Los Angeles, California 90071-2901
   Telephone: (213) 895-4900
4  Facsimile: (213) 895-4921

5  Attorneys for MARK WARREN PEARY

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             DECLINATION TO ACT AS PERSONAL
13                                             REPRESENTATIVE AND WAIVER OF BOND
                                               OF MARK WARREN PEARY AS PERSONAL
14  JOSEPH SHUSTER, also known as             REPRESENTATIVE
    JOE SHUSTER
15

16

17                          Decedent.

18

19      I, JEAN ADELE PEAVY, state as follows:

20      1.      I am the only sibling of the decedent, JOSEPH SHUSTER. The decedent's and my

21  parents are both deceased, having predeceased the decedent. I have two children, both of whom

22  survived the decedent. They are Mark Warren Peary and Dawn L. Peavy.

23      2.      I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am

24  nominated to act as Executor under such Will.

25      3.      I hereby decline to serve as personal representative of the decedent's estate, whether

26  as Executor of the decedent's Will or Administrator of his estate.

27      4.      I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as

28                                                         Q 0233

    _____
    DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
                                    REPRESENTATIVE

1    Executor of the decedent's Will or Administrator of his estate.

2        Dated:_____, 2003

3

4                                    _____
                                     JEAN ADELE PEAVY
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    Q 0234

28    261504_1.doc

ROD, POLLOCK, PETKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

2

DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
REPRESENTATIVE

SD 00234

EXHIBIT G
475

1 | RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
2 | JOHN D. PETTKER (SBN 42346)
444 South Flower Street, Suite 1700
3 | Los Angeles, California 90071-2901
Telephone: (213) 895-4900
4 | Facsimile: (213) 895-4921

5 | Attorneys for MARK WARREN PEARY

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11 | In re the Matter of the Estate of                CASE NO.

12 |                                                    NOMINATION OF PERSONAL REPRESENTATIVE,
13 |                                                    DECLINATION TO ACT, AND WAIVER OF BOND
                                                       OF MARK WARREN PEARY
14 | JOSEPH SHUSTER, also known as
JOE SHUSTER
15

16

17 |                          Decedent.

18 |                                                                        Q 0235

19 |     I, DAWN L. PEAVY, state and declare as follows:

20 |     1.     I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,

21 | being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

22 |     2.     If the decedent's Will is not admitted to probate and an Executor thereof is not

23 | appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the

24 | decedent's estate, I am a person entitled to equal priority for appointment as the personal

25 | representative of the decedent's estate with my brother, MARK WARREN PEARY.

26 |     3.     If for any reason MARK WARREN PEARY is not appointed by the Court as

27 | Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,

28 | New Mexico, to serve as the personal representative of the decedent's estate without the

1
NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00235

1  requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465

2  of the California Probate Code, and I decline to act as such personal representative.

3      4.      My intent in making this nomination is to ensure the appointment of a person that I

4  trust to serve as the personal representative of my uncle's estate.

5      I declare under penalty of perjury under the laws of the State of California, that the

6  foregoing is true and correct.

7      Executed on _____, 2003, in El Paso, Texas.

8

9

10                                      DAWN L. PEAVY

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE, (213) 985-4400

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  261505_1.doc                                      Q 0236

2

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00236

T-749  P.14/19  F-604

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| JOHN D. PETTKER, Esq. (SBN 42346)<br>RODi, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901 | (213) 895-4900<br>(213) 895-4921 | |

ATTORNEY FOR *(Name):* **MARK WARREN PEARY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles

STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF *(Name):*    JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| LETTERS | CASE NUMBER: |
|---|---|
| [X] TESTAMENTARY          [ ] OF ADMINISTRATION<br>[ ] OF ADMINISTRATION WITH WILL ANNEXED   [ ] SPECIAL ADMINISTRATION | |

## LETTERS

1. [X]  The last will of the decedent named above having
been proved, the court appoints *(name):*
   **MARK WARREN PEARY**
   a. [ ]  executor.
   b. [ ]  administrator with will annexed.

2. [ ]  The court appoints *(name):*

   a. [ ]  administrator of the decedent's estate.
   b. [ ]  special administrator of decedent's estate
      (1) [ ]  with the special powers specified
         in the *Order for Probate.*
      (2) [ ]  with the powers of a general
         administrator.
      (3) [ ]  letters will expire on *(date):*

3. [X]  The personal representative is authorized to administer
the estate under the Independent Administration of
Estates Act  [ ]  with full authority
   [X]  with limited authority (no authority, without
   court supervision, to (1) sell or exchange real property
   or (2) grant an option to purchase real property or (3)
   borrow money with the loan secured by an
   encumbrance upon real property).

4. [ ]  The personal representative is not authorized to take
possession of money or any other property without a
specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

| (SEAL) | Date:<br><br>Clerk, by<br><br><br>_____ (DEPUTY) |
|---|---|

## AFFIRMATION

1. [ ]  PUBLIC ADMINISTRATOR: No affirmation required
(Prob. Code, § 7621(c)).

2. [X]  INDIVIDUAL: I solemnly affirm that I will perform the
duties of personal representative according to law.

3. [ ]  INSTITUTIONAL FIDUCIARY *(name):*

   I solemnly affirm that the institution will perform the
   duties of personal representative according to law.
   I make this affirmation for myself as an individual and
   on behalf of the institution as an officer.
   *(Name and title):*

4.  Executed on *(date):*
   at *(place):*                                   , California.

▶                              Q 0237
                    _____
                          (SIGNATURE)
                    **MARK WARREN PEARY**

## CERTIFICATION

I certify that this document is a correct copy of the original on
file in my office and the letters issued the personal representa-
tive appointed above have not been revoked, annulled, or set
aside, and are still in full force and effect.

| (SEAL) | Date:<br><br>Clerk, by<br><br><br>_____ (DEPUTY) |
|---|---|

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

**LETTERS**
(Probate)

Legal
Solutions
Plus

Probate Code, §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

SD 00237

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

JOHN D. PETTKER, Esq. (SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
TELEPHONE NO. (213) 895-4900      FAX NO. *(Optional)*: (213) 895-4921
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF *(Name)*:  JOSEPH SHUSTER, also known as JOE SHUSTER
                                                          DECEDENT

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

# DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

## 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

## 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Page 1 of 2

SD 00238

**EXHIBIT G**
**479**

| ESTATE OF (Name): JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
|---|---|
| DECEDENT | |

**d. File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

## 3. NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

## 4. INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

## 5. RECORD KEEPING

**a. Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

**b. Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

## 6. CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. **When in doubt, contact your attorney.**

> **NOTICE: 1.** This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary.
> **2.** If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions.

## ACKNOWLEDGMENT OF RECEIPT

1. I have petitioned the court to be appointed as a personal representative.

2. My address and telephone number are (specify):   316 Horton Lane N.W., Albuquerque, NM 87114
(505) 466-4551

3. I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:

_____
MARK WARREN PEARY
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PETITIONER)

Date:

Q 0239

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PETITIONER)

> **CONFIDENTIAL INFORMATION:** If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).)

DE-147 (Rev. January 1, 2002)

**DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE**
(Probate)

Page 2 of 2

SD 00239

## EXHIBIT G
## 480

# AMERICAN CONTRACTORS INDEMNITY COMPANY

BOND NO. _____

All Papers and notices may be served at
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA 90045

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

**IN THE MATTER OF**

Case Number : _____

☐ Bond upon Qualifying    ☐ Additional Bond

Premium _____
       Per Annum

**KNOWN ALL MEN BY THESE PRESENTS:**

That we,_____
as Principal, and the <u>AMERICAN CONTRACTORS INDEMNITY COMPANY</u> as Surety, are held and firmly bound
unto_____
_____
in the sum of _____ Dollars ($_____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.
**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,**
**WHEREAS,** an order was duly made and entered by the Superior Court of the State of California, for the County of
_____ on _____
☐ Appointing the above Principal, _____ of
the estate of_____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

**NOW, THEREFORE,** if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.
Signed and dated at _____ California on _____
                              (Place)                                                    (Date)

_____          _____
              As Principal                                      As Principal

                                         _____
                                                      As Principal

                         AMERICAN CONTRACTORS INDEMNITY COMPANY
IN WITNESS WHEREOF, The corporate seal and name of said Surety Company is hereto affixed and attested by
_____ , who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

                              By: _____
                                                                Attorney-in-Fact

Q 0240

# Probate & Fiduciary Bond Application

## BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC
900 Wilshire Blvd., Suite 1400 ● Los Angeles, CA 90017● (213) 628-2970 ● (213) 628-2977 Fax

Type of Bond: _____  Bond No.: _____

Hearing Date: _____

| This application must be completed in detail | Amount : _____ |
| before bond is approved for filing | Premium : _____ |

Case No.: _____

Estate Name: _____

For Office Use Only
By: _____  Date _____
Underwritten: _____
Joint Control: _____
Approval: _____

Name _____  Tel. # _____

Address _____

Social Security No. _____  Driver's License # _____

Your Net Worth _____  Date of Birth _____

Employer/Retired _____  Position/Previous Position _____

Address _____  City _____  State _____  Zip _____

Tel # _____  Length of Employment _____

Do you own a home? _____  Rent? _____  Other _____

Your Bank _____  Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____  Lost a civil judgment? _____

If yes, explain _____

Have you or your spouse filed personal bankruptcy? _____  If yes, when? _____

Are you indebted to Decedent/Conservatee? _____  If yes, amount $ _____

Secured? ☐ Yes  ☐ No   How? _____

Attorney handling this case: _____

Law Firm: _____  Phone No.: _____

Address: _____

Q 0241

Continued on other side

SD-00241

Jul-08-03  02:32pm  From-                                          T-748  P.19/19  F-904

# ESTATE INFORMATION

Name of Decedent/Conservatee/Minor _____

Date of Birth of Conservatee/Minor _____

Estate Cash _____    Securities _____    Real Property _____

Other Assets _____    Annual Income (All Sources) _____

Bank where ESTATE ACCOUNT will be opened

Address _____

City _____    State _____    Zip code _____

Where will securities be kept? _____
(Safe deposit box, Brokerage – Including Name & Address)

Does estate contain a going business? _____    If yes, name _____

Type _____    Will it be continued? _____

If yes, do you understand you must have a court order to continue business? _____

Do you understand that the first year's bond premium is not refundable? _____

Do you understand all increases and reductions of the bond must be ordered by the court? _____

Do you understand the bond is in effect until a final discharge is signed by the judge and a copy delivered to the surety? _____

Do you understand the bond premium is to be paid annually? _____

Do you understand you must retain an attorney throughout the administration of this estate? _____

Do you understand that there is a $10 service charge for a credit report? _____

## INDEMNITY AGREEMENT

The undersigned applicant and/or indemnitors hereby request that American Contractors Indemnity Company and its affiliates, subsidiaries, and reinsurers (hereinafter collectively referred to as "the Company") become surety for and furnish the above bond and such other bond or bonds as may now or hereafter be required by or on behalf of the above named applicant. I understand that a consumer report may be obtained about me now and from time to time in the future, and if I ask, I will be told if a consumer report has been obtained and the name and address of the agency that supplied the report. I also understand and agree that I will be responsible for the usual and customary fee if this consumer report is obtained. The undersigned declares under penalty of perjury that the information and statements contained in this application are true, and the undersigned jointly and severally in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds for the applicant, do for value received hereby covenant, promise and agree to pay the Company the usual annual premium; and we each jointly and severally agree to indemnify and keep indemnified the Company from and against any liability, and all losses, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree to place the Company in funds to meet any claim or demand before it shall be required to make payment. (1) Unless otherwise indicated herein, the bond applied for shall not be applicable to guarantee or insure the applicant's operation, management, or control of an ongoing business operation. (2) Additionally, the Company may at its discretion impose a "joint control" requirement as a condition of its issuance of the bond to undersigned applicant. (3) In any event, issuance of a bond to the undersigned applicant is conditioned upon the appli____ retention of competent legal counsel throughout the duration of any period of time which the bond is in effect.

*SIGN HERE*

Signed this _____ day of _____ _____.

Q 0242

SD 00242

## RODI·POLLOCK

JOHN D. CAHILL
JOHN D. PETTKER
WILLIAM R. CHRISTIAN
HENRY P. PRAMOV, JR.
ALLAN E. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE E. NORWOOD
PRIYA G. BHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

KARL B. RODI (1908-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1898-1973)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIERS
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-P1

August 7, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:    Estate of Joseph Shuster

Dear Marc:

Please be advised that the hearing to appoint Mark W. Peary as executor of Joseph Shuster's Will is scheduled for *August 25, 2003*, in Department "5" of the Los Angeles Superior Court. Although we anticipate Mark will not be required to attend the hearing on that day, we will notify you a few days in advance if it becomes a requirement of the court.

Also, I am enclosing a conformed copy of the filed Supplement to the Petition for Probate of (Lost) Will, et seq., for your information and files.

Please feel free to call me if you have any questions.

Sincerely,

John D. Pettker

JDP:muc
Enclosures
262648_1.doc

Q 0243

Privileged & Confidential
All Rights Reserved

SD-00243

# RODI•POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CA 90071-2901
(213) 895-4900 • Fax (213) 895-4921

DATE: 10.2.03

TO: Marc Toberoff

FROM: LINDA L. HARRISON

☐ FOR YOUR REVIEW

☐ FOR YOUR INFORMATION AND FILES

☐ IN RESPONSE TO YOUR REQUEST

☐ PLEASE SIGN AND RETURN

☐ PLEASE CALL AND DISCUSS

☐ I WILL CALL YOU TO DISCUSS

☑ Sorry for the overs.gap!

REMARKS: _____

Q 0244

Privileged & Confidential
All Rights Reserved

SD 00244

EXHIBIT G
485

1   **RODI, POLLOCK, PETTKER, GALBRAITH**
    **& CAHILL, A Law Corporation**
2   **JOHN D. PETTKER (SBN 42346)**
    444 South Flower Street, Suite 1700
3   Los Angeles, CA  90071-2901
    Telephone: 213-895-4900
4   Facsimile: 213-895-4750

5   Attorneys for MARK WARREN PEARY,
    Petitioner

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11   In the Matter of the Estate of           **NO. BP-080635**

12   JOSEPH SHUSTER, also known as JOE    **ORDER ADMITTING WILL TO**
    SHUSTER,                        **PROBATE, APPOINTING EXECUTOR**
13                              **AND AUTHORIZING INDEPENDENT**
                   Deceased.      **ADMINISTRATION OF ESTATE WITH**
14                              **LIMITED AUTHORITY**

15                              **Hearing Date: 8-25-03**
                             **Dept. 5 at 9:15 a.m.**
16

17

18       Petitioner, MARK WARREN PEARY, filed his petition for probate of will and for letters

19   testamentary and for authorization to administer estate under the Independent Administration of

20   Estates Act with limited authority of the estate of Joseph Shuster, also known as Joe Shuster,

21   deceased (the "decedent"), and such petition came on regularly for hearing and approval by the

22   Court at 9:15 a.m. on August 25, 2003, in Department 5 of the above-entitled Court, the

23   Honorable H. RONALD HAUPTMAN, Judge Pro Tem presiding.  JOHN D. PETTKER of Rodi,

24   Pollock, Pettker, Galbraith & Cahill, A Law Corporation, appeared as the attorney for petitioner,

25   and no one appeared in opposition.

26       On evidence given to the satisfaction of the Court, THE COURT FINDS THAT:

27       1.      All notices required by law have been given.

28   /  /  /

                                                      Q 0245

                            1

ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUTHORITY

*Side text (rotated):* RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

**Privileged & Confidential**
**All Rights Reserved**

2.      The decedent died on July 30, 1992, a resident of the County of Los Angeles, State of California.

3.      The decedent died testate, leaving a will dated June 28, 1988. This will has never been revoked but was lost or inadvertently destroyed. Such will is admitted to probate by Minute Order on August 25, 2003, as the decedent's last Will, and its provisions are as follows:

# LAST WILL AND TESTAMENT OF

KNOW ALL PERSONS BY THESE PRESENTS:

I

That, I JOSEPH SHUSTER, of W. Los Angeles, California, being of sound and disposing mind and memory, and not acting under duress, menace, fraud or the undue influence of any person whomsoever, do make, publish and declare this my Last Will and Testament.

I hereby declare that I am the brother of JEAN ADELE PEAVY at the time of the execution of this Will.

II

I make no bequest, gift or devise to my children named in Paragraph I, or to any other child or children hereafter born to or adopted by me, except as hereinafter stated, knowing their ___N/A___ will provide for them.

III

I hereby direct and order that all just debts for which proper claims are filed against my estate, and the expenses of my last illness and funeral, be paid by my executrix as soon after my death as is practicable; provided, however, that this direction shall not authorize any creditor to require payment of any debt or obligation prior to its normal maturity in due course.

IV

I give devise and bequeath unto JEAN ADELE PEAVY all of the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated. In the event that Jean Adele Peavy shall predecease me, or in the event that both Jean Adele Peavy and I shall die as a

/   /   /

Q 0246

2

ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AU

Privileged & Confidential
All Rights Reserved

SD 00246

RODI, POLLOCK, PETKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE, (213) 895-4900

result of a common accident, illness or disaster, then I give, devise and bequeath the residue and

2 remainder of my estate to my nephew, MARK WARREN PEARY.

3                                        V

4        I hereby nominate and appoint my sister, Jean Adele Peavy, executrix of this my Last Will

5 and Testament, to act without bond.  In the event that my sister is for any reason unable or

6 unwilling to act as executrix hereof, I nominate and appoint Mark Warren Peary to act as executor,

7 also without bond.

8                                        VI

9        I further direct that my estate be settled without the intervention of any court, except to the

10 extent required by law, and that my executrix settle my estate in such a manner as shall seem best

11 and most conveniently to her, and I hereby empower my executrix to mortgage, lease, sell,

12 exchange and convey the personal and real property of my estate without an order of court for that

13 purpose and without notice, approval or confirmation and in all other respects to administer and

14 settle my estate without the intervention of court.

15                                        VII

16        I hereby revoke any and all former Wills and Codicils thereto made by me and declare this

17 my Last Will and Testament.

18        In Witness Whereof I have hereunto set my hand this 28th day of June, 1988.

19

20                                        JOSEPH SHUSTER
                                          Testator
21 STATE OF CALIFORNIA        )
                              )  ss.
22 COUNTY OF LOS ANGELES )

23        Each of the undersigned, being first duly sworn on oath, states that on this 28th day of June,

24 1988:

25        (1)    I am over the age of eighteen (18) years and competent to be a Witness to the Will

26 of JOSEPH SHUSTER (the Testator);

27        (2)    The Testator, in my presence and in the presence of the other Witnesses whose

28 signatures appear below:

                                          Q 0247

3

ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUT

RDD, POLLOCK, PETTKER, GALBRATH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 683-4900

Privileged & Confidential
All Rights Reserved

SD 00247

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 893-6600

1    (a) Declared the foregoing instrument consisting of one pages, of which this is the

2    last to be his Will;

3    (b) Requested me and the other Witnesses to act as Witnesses to his Will and to

4    make this affidavit; and

5    (c) Signed such instrument;

6    (3) I believe the Testator to be of sound mind, and that in so declaring and signing, he

7    was not acting under any duress, menace, fraud, or undue influence;

8    (4) The other witnesses and I, in the presence of the Testator and of each other now

9    affix our signatures as Witnesses to the Will and make this affidavit.

10   Tom Fenaughty                          Robert Williams

11   3374 Overland Ave., #1                 3545 Mentone Ave. #3

12   Los Angeles, CA 90064                  Los Angeles, California 90034

13   SUBSCRIBED & SWORN to before me this 28th day of June, 1988.

14                                          F. PATRICK HAGERTY
     [NOTARIAL SEAL]                        Notary Public in and for the State of California,
15                                          residing at Santa Monica, Calif.

16   **THE COURT ORDERS:**

17   1.    MARK WARREN PEARY is appointed Executor of the decedent's Will recited

18   above, and letters testamentary shall issue on qualification.

19   2.    The Executor is granted limited authority to administer the estate under the

20   Independent Administration of Estates Act (there is no authority, without court supervision, to (1)

21   sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money

22   with the loan secured by an encumbrance upon real property).

23   3.    The Executor is also granted the following special power in addition to the general

24   powers conferred upon him by law and under the Independent Administration of Estates Act:

25   The power to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(d)

26   of the United States Copyright Act, 17 U.S.C. §304(d), incorporating without limitation 17 U.S.C.

27   §304(c)(2)(D), and to maintain and defend on behalf of the decedent and the estate all proceedings

28   necessary or appropriate in connection with this action.

                                                              Q 0248

                                          4
ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUT

Privileged & Confidential
All Rights Reserved

SD 00248

1    4.    Bond is fixed at $6,000.00.

2    Dated: _____

3

4                                          _____
                                           Judge Pro Tem of the Superior Court
5

6    264438_1.doc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                              Q 0249

ROOL, POLLOCK, PETKYER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4600

5

ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUTH

Privileged & Confidential
All Rights Reserved

SD 00249

**LAURA SIEGEL LARSON**
**6400 PACIFIC AVE. #106**
**PLAYA DEL REY, CA  90293**

**June 1, 2004**

# CONFIDENTIAL
# FAX TRANSMITTAL

**TO:**      Marc Toberoff
**FAX#:**    (310) 246-3101

**FROM:**    Laura Siegel Larson
**FAX#:**    (310) 827-7227

**RE:**      Research from Arthur Levine

**Page 1 of 4**

**MESSAGE:**

Dear Marc,

Attached is the fax I received today from Arthur Levine.  I am sending you an email regarding it.

Sincerely,

*Laura*

**Laura Siegel Larson**

Q 0250

Privileged & Confidential
All Rights Reserved

SD 00250

**EXHIBIT G**
**491**

**LAW OFFICES**
# FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
1300 I Street, NW
Washington, DC 20005

Telephone
(202) 408-4000

Facsimile
(202) 408-4400

## FACSIMILE TRANSMITTAL

**TO**
Name: Laura Siegel Larson
Firm:
Fax No.: 310-827-7227
Phone No.:
Date: June 1, 2004
Subject:

**FROM**
Name: Arthur J. Levine
Phone No.: (202) 408-4032
Fax # Verified by: R. McGolrick
# Pages (incl. this): 3
Our File No.: 06589.0001

### Confirmation Copy to Follow: No

Message:

Dear Laura:

Attached is the research which my associate conducted. Marc Toberoff called me on Thursday and explained his reasoning. Our research suggests that his reasoning is correct, and that it would be exceedingly risky to not file by the September date. Marc and I both agree that the burden is on the other side to disprove the validity of the Notices, and that it is highly unlikely that they can meet that burden.

Sincerely,

Art

If there is a problem with this transmission, notify fax room at (202) 408-4174 or the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

Privileged & Confidential
All Rights Reserved

Q 0251

SD 00251

From:        Naresh KILARU
To:          Levine, Arthur
Date:        Thu, May 27, 2004 11:07 AM
Subject:     Siegel Issues

Art,

Here is a brief summary of the research issues relating to the Siegel matter:

**1. When does the Statute of Limitations begin to run against a co-owner seeking an accounting?**

Section 507(b) of the Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).  The key problem is of course determining the point at which the claim accrued.  There are only a handful of cases discussing this issue in the context of a co-owner seeking an accounting.  The leading Ninth Circuit case is summarized below.

In Zuill v. Shanahan, 80 F.3d 1366 (9th Cir. 1996), the defendant Shanahan created what became "Hooked on Phonics".  To improve the music in the program, the defendant brought in Zuill and Rossi (the plaintiffs).  The plaintiffs later sued the defendant for a declaratory judgment that they each owned one-third interests in "Hooked on Phonics."  The issue before the court was whether the plaintiffs' suit was time-barred under Section 507(b).

The plaintiffs had filed suit in 1991.  The court noted that the defendant had expressly repudiated any claims of co-ownership by Zuill and Rossi in 1987.  In interpreting the statutory language of when the claim accrued under Section 507(b), the court held, "We conclude that claims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." 80 F.3d at 1369.  The court's rationale for such an interpretation was largely based on equitable principles:  "It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort." 80 F.3d at 1371.  Because the plaintiffs had brought suit more than three years after their claims of co-ownership had been expressly repudiated by the defendant, the court held that the plaintiffs' suit was time-barred under Section 507(b).

My guess is that it is the Zuill case to which Marc Toberoff is referring when he puts 4/16/1999 as the date on which the statute of limitations began to run, as this is the date Time Warner rejected the validity of Siegel's Notices of Termination.  While I could not find any case law interpreting Section 507(b) specifically in the context of a party asserting co-ownership through a Notice of Termination (as opposed to asserting co-ownership through joint creation), it seems that the holding in Zuill would be equally applicable to our situation.

**2. Which party has the burden of proving the validity (or invalidity) of a termination notice?**

I found no cases discussing which party has the ultimate burden of proving the validity (of invalidity) of a termination notice.  But based on Zuill, it seems clear the party claiming co-ownership (either through joint creation or via a termination notice) has the burden of at least bringing a lawsuit within the statute of limitations period.  Thus, Marc Toberoff's conclusion that the statute of limitations runs against Siegel (and not against Time Warner) is likely correct.

Finally, I did find one case clearly holding that "when a termination is effected, all rights covered by the terminated grant revert, on the effective date of termination, to the author or his statutory successor." Bourne v. MPL Communications, Inc., 675 F. Supp. 859, 861 (S.D.N.Y. 1987).  Thus, assuming that the Notices of Termination were proper, it seems that 50% of the rights to Superman did in fact revert to Siegel upon the effective date of the terminations in April 1999.  Because Time Warner rejected the

Q 0252

Privileged & Confidential
All Rights Reserved

SD 00252

validity of the Notices of Termination (and hence repudiated Siegel's status as co-owner) on April 15, 1999, it seems that the Statute of Limitations began to run against Siegel on April 15, 1999 for her to bring a declaratory judgment action establishing her as co-owner and entitling her to an accounting.

CC:        McGoirick, Robin

Q 0253

** TOTAL PAGE.00 **

Privileged & Confidential
All Rights Reserved

SD 00253

The State Bar of California - Rules of Professional Conduct    Page 1 of 1

Printed from The State Bar of California website (www.calbar.ca.gov) on Tuesday May 27, 2003
Location: Home > Attorney Resources > Rules & Regulations > Rules of Professional Conduct

## CURRENT RULES

### Rule 1-120. Assisting, Soliciting, or Inducing Violations

A member shall not knowingly assist in, solicit, or induce any violation of these rules or the State Bar Act.

© 2003 State Bar of California

Q 0254

Privileged & Confidential
All Rights Reserved
http://www.calbar.ca.gov/state/calbar/calbar_generic_pr.jsp?BV_EngineID=hadchfkflekfbemgcfk...  5/27/2003

SD 00254

LAW OFFICES OF
# MARC TOBEROFF

June 13, 2003

John D. Peftker, Esq.
444 South Flower Street
Los Angeles, CA 90071

Re: Probate of Joseph Shuster Estate

Dear Jack:

As discussed enclosed please find the following:

(1) Copy of Joseph Shuster's Will dated June 28, 1988 (they can not find the original);
(2) Revocable Living Trust (plus Schedule A where assigned property = only stock and furniture) dated April 11, 1988. I have original;
(3) Affidavit of Jean Peavy per §13101 dated August 17, 1992 that decedent's property is under $60,000. I have original;
(4) Death certificate of Joseph Shuster, resident of Los Angeles, CA, died on August 14, 1992. I have original;
(5) Family tree.

The Trust does not appear to be a problem due to the limited property assigned to it per Schedule A which I located after we spoke today.

I 've also enclosed §304(c)(2)(D) of the US Copyright Act which gives executors, etc. a right to terminate prior transfers of copyright within delineated time windows. Previously, only a spouse, children and grandchildren had this right. So when Joe Shuster died in 1992 without spouse or children his Estate was worth under $60K. Then, on October 27, 1998 the Sonny Bono Copyright Act added subparagraph (D) giving the right to the executor, personal representative, etc. (see amendment enclosed).

We therefore want the Probate Court to approve in addition to the normal executor powers something like "the executor is empowered, without limitation, to terminate prior transfers of Joseph Shuster's copyrights [possibly even better if we can add, "including "Superman"] pursuant to 17 U.S.C. §304(c)(2)(D). Alternatively, the papers could state that Estate is being probated for this purpose.

I apologize for the delay in getting the above to you. Anything, you can do from here on to expedite the probate would be greatly appreciated. As discussed, please fax or e-mail me a retainer agreement whereupon I will send you the $2,500 retainer you requested.

Regards,

Marc Toberoff

Q 0255

9595 Wilshire Boulevard, 8th Floor, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
MToberoff@ipww.biz

Privileged & Confidential
All Rights Reserved

SD 00255

# CERTIFICATE OF DEATH
## STATE OF CALIFORNIA
### USE BLACK INK ONLY

| | | | |
|---|---|---|---|
| STATE FILE NUMBER | | | LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER |

**1A. NAME OF DECEDENT—FIRST (GIVEN):** JOSEPH
**1B. MIDDLE:** –
**1C. LAST (FAMILY):** SHUSTER
**2A. DATE OF DEATH—MO, DAY, YR:** Fnd July 30, 1992
**2B. HOUR:** 1106
**3. SEX:** MALE

**DECEDENT PERSONAL DATA**

**4. RACE:** CAUCASIAN
**5. HISPANIC—SPECIFY:** Yes ☐ No ☒
**6. DATE OF BIRTH—MO, DAY, YR:** JULY 10, 1914
**7. AGE IN YEARS:** 78
**IF UNDER 1 YEAR — MONTHS / DAYS — IF UNDER 24 HOURS — HOURS / MINUTES**

**8. STATE OF BIRTH:** CANADA
**9. CITIZEN OF WHAT COUNTRY:** USA
**10A. FULL NAME OF FATHER:** JULIUS SHUSTER
**10B. STATE OF BIRTH:** HOLLAND
**11A. FULL MAIDEN NAME OF MOTHER:** IDA KARLARSKY
**11B. STATE OF BIRTH:** RUSSIA

**12. MILITARY SERVICE?:** 19 ___ to 19 ___ NONE ☒
**13. SOCIAL SECURITY NO.:** 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
**14. MARITAL STATUS:** NEVER MARRIED
**15. NAME OF SURVIVING SPOUSE (IF WIFE, ENTER MAIDEN NAME):** NONE

**16A. USUAL OCCUPATION:** ARTIST
**16B. USUAL KIND OF BUSINESS OR INDUSTRY:** COMIC BOOKS
**16C. USUAL EMPLOYER:** DC COMICS
**16D. YEARS IN OCCUPATION:** 60
**17. EDUCATION—YEARS COMPLETED:** 14

**USUAL RESIDENCE**

**18A. RESIDENCE—STREET AND NUMBER OR LOCATION:** 11944 MONTANA AVENUE #305
**18B. CITY:** W. LOS ANGELES
**18C. ZIP CODE:** 90049

**18D. COUNTY:** LOS ANGELES
**18E. NUMBER OF YEARS IN THIS COUNTY:** 14
**18F. STATE OR FOREIGN COUNTRY:** CALIFORNIA
**20. NAME, RELATIONSHIP, MAILING ADDRESS AND ZIP CODE OF INFORMANT:** JEAN PEAVY-SISTER, 316 HORTON LANE N.W, ALBUQUERQUE, NEW MEXICO 87114

**PLACE OF DEATH**

**19A. PLACE OF DEATH:** Residence
**19B. IF HOSPITAL SPECIFY ONE: IP, ER/OP, DOA**
**19C. COUNTY:** Los Angeles

**19D. STREET ADDRESS—STREET AND NUMBER OR LOCATION:** 11944 Montana Avenue #305
**19E. CITY:** W. Los Angeles

**TIME INTERVAL BETWEEN ONSET AND DEATH**
**22. WAS DEATH REPORTED TO CORONER?:** Yes ☒ REFERRAL NUMBER 92-06897 / No ☐

**CAUSE OF DEATH**

**21. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR A, B, AND C)**

**IMMEDIATE CAUSE (A):** Congestive Heart Failure — Unk
**23. WAS BIOPSY PERFORMED?:** Yes ☐ No ☒

**DUE TO (B):** Arteriosclerotic Cardiovascular Disease — Years
**24A. WAS AUTOPSY PERFORMED?:** Yes ☐ No ☒

**DUE TO (C):**
**24B. WAS IT USED IN DETERMINING CAUSE OF DEATH?:** Yes ☐ No ☐

**25. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN 21:** Hypertension
**26. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 21 OR 25? IF YES, LIST TYPE OF OPERATION AND DATE.:** No

**PHYSICIAN'S CERTIFICATION**

**I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED.**
**27A. DECEDENT ATTENDED SINCE MONTH, DAY, YEAR:**
**27B. DECEDENT LAST SEEN ALIVE MONTH, DAY, YEAR:**
**27C. SIGNATURE AND DEGREE OR TITLE OF CERTIFIER:**
**27C. CERTIFIER'S LICENSE NUMBER:**
**27D. DATE SIGNED:**
**27E. TYPE ATTENDING PHYSICIAN'S NAME AND ADDRESS:**

**CORONER'S USE ONLY**

**I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED.**
**28A. SIGNATURE AND TITLE OF CORONER OR DEPUTY CORONER:** Deputy Coroner Mary T. Macia
**28B. DATE SIGNED:** 8-07-92

**29. MANNER OF DEATH—specify one: natural, accident, suicide, homicide, pending investigation or could not be determined:** Natural
**30A. PLACE OF INJURY:**
**30B. INJURY AT WORK:** Yes ☐ No ☐
**30C. DATE OF INJURY MONTH, DAY, YEAR:**
**31. HOUR:**

**32. LOCATION (STREET AND NUMBER OR LOCATION AND CITY):**
**33. DESCRIBE HOW INJURY OCCURRED (EVENTS WHICH RESULTED IN INJURY):**

**FUNERAL DIRECTOR AND LOCAL REGISTRAR**

**34A. DISPOSITION(S):** CR/RES
**34B. PLACE OF FINAL DISPOSITION—NAME AND ADDRESS:** RES: 11944 MONTANA AVE., #305 W.LOS ANGELES, CA 90049
**34C. DATE MO, DAY, YEAR:** 8/14/92
**35A. SIGNATURE OF EMBALMER:** NOT EMBALMED
**35B. LICENSE NUMBER:** NONE

**36A. NAME OF FUNERAL DIRECTOR (OR PERSON ACTING AS SUCH):** PIERCE BROS WESTWOOD VILLAGE
**36B. LICENSE NO.:** FD-951
**37. SIGNATURE OF LOCAL REGISTRAR:** Robert C. Getz 34
**38. REGISTRATION DATE:** AUG 1 0 1992

**STATE REGISTRAR**

| A. | B. | C. | D. | E. | F. | CENSUS TRACT |
|---|---|---|---|---|---|---|

VS-11 (REV. 3-91)     MAKE NO ERASURES, WHITEOUTS, OR OTHER ALTERATIONS

THIS IS A TRUE CERTIFIED COPY OF THE RECORD FILED IN THE COUNTY OF LOS ANGELES DEPARTMENT OF HEALTH SERVICES IF IT BEARS THIS SEAL IN PURPLE INK.

AUG 11 1992

70

Director of Health Services and Registrar

Privileged & Confidential
All Rights Reserved

Q 0256

SD 00256

**EXHIBIT G**
**497**

# Last Will and Testament of

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, I ___JOSEPH SHUSTER___

of ___W. Los Angeles, California___
being of sound and disposing mind and memory, and not acting under duress, menace, fraud or the undue influence of any person whomsoever, do make, publish and declare this my Last Will and Testament.

### I.

I hereby declare that I am the ___brother___ of ___JEAN ADELE PEAVY___

at the time of the execution of this Will.

### II.

I make no bequest, gift or devise to my children named in Paragraph I, or to any other child or children hereafter born to or adopted by me, except as hereinafter stated, knowing their

___N/A___ will provide for them.
(mother, or father)

### III.

I hereby direct and order that all just debts for which proper claims are filed against my estate, and the expenses of my last illness and funeral, be paid by my execut___rix___ as soon after my death as is practicable; provided, however, that this direction shall not authorize any creditor to require payment of any debt or obligation prior to its normal maturity in due course.

### IV.

I give, devise and bequeath unto ___JEAN ADELE PEAVY___ all of the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated. In the event that ___Jean Adele Peavy___ shall predecease me, or in the event that both ___Jean Adele Peavy___ and I shall die as a result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, ___MARK WARREN PEARY___ .

### V.

I hereby nominate and appoint my ___sister___ ___Jean Adele Peavy___, execut___rix___ of this my Last Will and Testament, to act without bond. In the event that my ___sister___ is for any reason unable or unwilling to act as execut___rix___ hereof, I nominate and appoint ___Mark Warren Peary___ to act as execut___or___, also without bond.

Q 0257

SD 00257

## VI.

I further direct that my estate be settled without the intervention of any court, except to the extent required by law, and that my executrix settle my estate in such a manner as shall seem best and most conveniently to her , and I hereby empower my executrix to mortgage, lease sell, exchange and convey the personal and real property of my estate without an order of court for that purpose and without notice, approval or confirmation and in all other respects to administer and settle my estate without the intervention of court.

Q 0258

SD 00258

VII.

I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my Last Will and Testament.

In Witness Whereof I have hereunto set my hand this _28_ day of _June_ 19_88_.

_Joseph Shuster_
Testator

STATE OF CALIFORNIA
County of _Los Angeles_  } ss.

Each of the undersigned, being first duly sworn on oath, states that on this _28_ day of _June_, 19_88_:

(1) I am over the age of eighteen (18) years and competent to be a Witness to the Will of _JOSEPH SHUSTER_ (the Testator_);

(2) The Testator_, in my presence and in the presence of the other Witnesses whose signatures appear below:

(a) Declared the foregoing instrument consisting of _one_ pages, of which this is the last to be _his_ Will;

(b) Requested me and the other Witnesses to act as Witnesses to _his_ Will and to make this affidavit; and

(c) Signed such instrument;

(3) I believe the Testator_ to be of sound mind, and that in so declaring and signing, _he_ was not acting under any duress, menace, fraud, or undue influence;

(4) The other witnesses and I, in the presence of the Testator_ and of each other now affix our signatures as Witnesses to the Will and make this affidavit.

_Tom Feraughty_
Witness
_3374 Overland Ave #1_
Address
_L.A.  Ca.    90064_

_Robert E Williams_
Witness
_3545 Mentona Ave #3_
Address
_Los Angeles California 90034_

_went to notary public office in Brentwood on Montana_

Witness

Address

SUBSCRIBED & SWORN to before me this _28_ day of _June_ 19_88_.

_F. Patrick Hagerty_

OFFICIAL SEAL
F. PATRICK HAGERTY
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires April 23, 1991

Notary Public in and for the State of California, residing at _Santa Monica, Calif._

Q 0259

SD 00259

THE

Last Will and Testament of

*Joseph J. Shuster*

Dated *June 28* 19 *88*

Q 0260

SD 00260

**EXHIBIT G**
501

Revocable Living Trust

This trust agreement is made this day of *April 11, 1988*
between _Joseph Shuster_ , the Grantor, and _Joseph Shuster_
and _Jean A. Peavy_ , the Trustees.

Upon my death or incapacity, I name _Jean A. Peavy_ successor.

The Grantor, _Joseph Shuster_ , hereby transfers to the
Trustees and to the Trustees' successor the property described
in the attached Schedule A. Such property and any other property
that may be received by the Trustees shall be held and may be
disposed of by the Trustees and the Trustees' successors.

The Grantor may, by signed instruments delivered to the Trustees,
revoke the Trust in whole or in part, or amend this Agreement
from time to time in any manner.

To the extent that any such requirements can be legally waived,
no Trustee shall ever be required to give any bond as Trustee or
qualify before, be appointed by, or in absence of breach of
trust, account to any court, or obtain the order or approval of any
court in the exercise of any power or discretion herein given.

IN WITNESS WHEREOF, the parties hereto have signed this
on the above-written date.

GRANTOR:        *Joseph Shuster*
                Joseph Shuster

WITNESS:        *Elsin Vivian*          *Carole Garthright*

TRUSTEES:       *Joseph Shuster*        *Jean A. Peavy*
                Joseph Shuster           Jean A. Peavy

SUCCESSOR TRUSTEE:    *Mark W. Peary*
                      Mark W. Peary

Q 0261

SD 00261

Attachment To Living Trust

SCHEDULE "A"

STATE OF __California__ , COUNTY OF __Los Angeles__

__4-11-88__                              _J.S._
      Date                          Grantor's Initial

The following is my property, both real and personal, in-cluded in the attached Revocable Living Trust.

1. Stock certificates

      Company _____

      No. of shares __50__

      Name(s) on certificates or account _____


2. Furniture and appliances

Q 0262

SD 00262

## AFFIDAVIT OF JEAN PEAVY UNDER
## CALIFORNIA PROBATE CODE SECTION 13101

The undersigned, JEAN PEAVY, hereby affirms the following information as required by California Probate Code Section 13101:

1.    The name of the decedent is JOSEPH SHUSTER (the "decedent").

2.    The decedent died on July 30, 1992 in Los Angeles County, California.

3.    At least 40 days have elapsed since the death of the decedent, as shown in a certified copy of the decedent's death certificate attached to this declaration.

4.    No proceeding is now being or has been conducted in California for administration of the decedent's estate.

5.    The gross value of the decedent's real and personal property in California, excluding the property described in Section 13050 of the California Probate Code, does not exceed Sixty Thousand Dollars ($60,000).

6.    The affiant is the successor of the decedent, as defined in Section 13006 of the California Probate Code.

7.    The property of the decedent to be transferred and delivered to the affiant, as the successor to the decedent, is:

768 shares of Time Warner Inc. Common Stock

116 Time Warner Rights

8.    No other person has a right to the interest of the decedent in the described property.

9.    The affiant requests that the described property be paid, delivered or transferred to her.

10.    The affiant declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:    August 17        , 1992

_Jean Peavy_
JEAN PEAVY

Q 0263

SD 00263

STATE OF      NEW MEXICO          )
                                  )  ss.
COUNTY OF    BERNALILLO           )


On ___August 17_____, 1992, before me, a notary public for the State of _New Mexico_____, personally appeared JEAN PEAVY (___) known to me or ( ✗ ) proved to me based on satisfactory evidence to be the person whose name is subscribed to the above instrument, and she acknowledged to me that she executed the same.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed my official seal on the day and year first above written.

SEAL:



Notary Public for the
State of _New Mexico_____

Q 0264

2.

SD 00264

EXHIBIT G
505



Q 0265

SD 00265

**EXHIBIT G**
**506**

US Code as of: 01/05/99

Sec. 304. Duration of copyright: Subsisting copyrights

* (a) Copyrights in Their First Term on January 1, 1978. - (1)(A) Any
  copyright, the first term of which is subsisting on January 1, 1978,
  shall endure for 28 years from the date it was originally secured.
  o (B) In the case of -
    + (i) any posthumous work or of any periodical, cyclopedic, or
      other composite work upon which the copyright was originally
      secured by the proprietor thereof, or
    + (ii) any work copyrighted by a corporate body (otherwise than

      as assignee or licensee of the individual author) or by an
      employer for whom such work is made for hire, the proprietor
      of such copyright shall be entitled to a renewal and
      extension of the copyright in such work for the further term
      of 67 years.
  o (C) In the case of any other copyrighted work, including a
    contribution by an individual author to a periodical or to a
    cyclopedic or other composite work -
    + (i) the author of such work, if the author is still living,
    + (ii) the widow, widower, or children of the author, if the
      author is not living,
    + (iii) the author's executors, if such author, widow, widower,

      or children are not living, or
    + (iv) the author's next of kin, in the absence of a will of
      the
      author, shall be entitled to a renewal and extension of the
      copyright in such work for a further term of 67 years.
    + (2)
      + (A) At the expiration of the original term of copyright
        in a work specified in paragraph (1)(B) of this
        subsection, the copyright shall endure for a renewed and
        extended further term of 67 years, which -
  o (i) if an application to register a claim to such further term
    has been made to the Copyright Office within 1 year before the
    expiration of the original term of copyright, and the claim is
    registered, shall vest, upon the beginning of such further term,
    in the proprietor of the copyright who is entitled to claim the
    renewal of copyright at the time the application is made; or
  o (ii) if no such application is made or the claim pursuant to
    such application is not registered, shall vest, upon the
    beginning of such further term, in the person or entity that was
    the proprietor of the copyright as of the last day of the
    original term of copyright.

* (B) At the expiration of the original term of copyright in a work
  specified in paragraph (1)(C) of this subsection, the copyright shall
  endure for a renewed and extended further term of 67 years, which -
  o (i) if an application to register a claim to such further term
    has been made to the Copyright Office within 1 year before the
    expiration of the original term of copyright, and the claim is
    registered, shall vest, upon the beginning of such further term,
    in any person who is entitled under paragraph (1)(C) to the
    renewal and extension of the copyright at the time the
    application is made; or
  o (ii) if no such application is made or the claim pursuant to
    such application is not registered, shall vest, upon the
    beginning of such further term, in any person entitled under
    paragraph (1)(C), as of the last day of the original term of
    copyright, to the renewal and extension of the copyright.
  o (3)

Q 0266

SD 00266

+ (A) An application to register a claim to the renewed and extended term of copyright in a work may be made to the Copyright Office -

* (i) within 1 year before the expiration of the original term of copyright by any person entitled under paragraph (1)(B) or (C) to such further term of 67 years; and
(ii) at any time during the renewed and extended term by any person in whom such further term vested, under paragraph (2)(A) or (B), or by any successor or assign of such person, if the application is made in the name of such person.

* (B) Such an application is not a condition of the renewal and extension of the copyright in a work for a further term of 67 years.

* (4)
  o (A) If an application to register a claim to the renewed and extended term of copyright in a work is not made within 1 year before the expiration of the original term of copyright in a work, or if the claim pursuant to such application is not registered, then a derivative work prepared under authority of a grant of a transfer or license of the copyright that is made before the expiration of the original term of copyright may continue to be used under the terms of the grant during the renewed and extended term of copyright without infringing the copyright, except that such use does not extend to the preparation during such renewed and extended term of other derivative works based upon the copyrighted work covered by such grant.
  o (B) If an application to register a claim to the renewed and extended term of copyright in a work is made within 1 year before its expiration, and the claim is registered, the certificate of such registration shall constitute prima facie evidence as to the validity of the copyright during its renewed and extended term and of the facts stated in the certificate. The evidentiary weight to be accorded the certificates of a registration of a renewed and extended term of copyright made after the end of that 1-year period shall be within the discretion of the court.

* (b) Copyrights in Their Renewal Term at the Time of the Effective Date of the Sonny Bono Copyright Term Extension Act. - Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective shall have a copyright term of 95 years from the date copyright was originally secured.

* (c) Termination of Transfers and Licenses Covering Extended Renewal Term. - In the case of any copyright subsisting in either its first or renewal term on January 1, 1978, other than a copyright in a work made for hire, the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978, by any of the persons designated by subsection (a)(1)(C) of this section, otherwise than by will, is subject to termination under the following conditions:
  o (1) In the case of a grant executed by a person or persons other than the author, termination of the grant may be effected by the surviving person or persons who executed it. In the case of a grant executed by one or more of the authors of the work, termination of the grant may be effected, to the extent of a particular author's share in the ownership of the renewal copyright, by the author who executed it or, if such author is dead, by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest.
  o (2) Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:

Q 0267

SD 00267

+ (A) the widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower
owns one-half of the author's interest;
+ (B) the author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them;
+ (C) the rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpe basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them. [1]
+ **(D) In [2] the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest. [2] So in original. Probably should not be capitalized.**

o (3) Termination of the grant may be effected at any time during a period of five years beginning at the end of fifty-six years from the date copyright was originally secured, or beginning on January 1, 1978, whichever is later.

o (4) The termination shall be effected by serving an advance notice in writing upon the grantee or the grantee's successor in title. In the case of a grant executed by a person or persons other than the author, the notice shall be signed by all of those entitled to terminate the grant under clause (1) of this subsection, or by their duly authorized agents. In the case of a grant executed by one or more of the authors of the work, the notice as to any one author's share shall be signed by that author or his or her duly authorized agent or, if that author is dead, by the number and proportion of the owners of his or her termination interest required under clauses (1) and (2) of this subsection, or by their duly authorized agents.

+ (A) The notice shall state the effective date of the termination, which shall fall within the five-year period specified by clause (3) of this subsection, or, in the case of a termination under subsection (d), within the five-year period specified by subsection (d)(2), and the notice shall be served not less than two or more than ten years before that date. A copy of the notice shall be recorded in the Copyright Office. before the effective date of termination, as a condition to its taking effect.
+ (B) The notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation.

o **(5) Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant.**

o (6) In the case of a grant executed by a person or persons other than the author, all rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to all of those entitled to terminate the grant under clause (1) of this subsection. In the case of a grant executed by one or more of the authors of the work, all of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or, if that author is dead, to the persons owning his or her termination interest under clause (2) of this subsection, including those owners who did not join in signing the notice of termination under clause (4) of this

Q 0268

SD 00268

**EXHIBIT G**
**509**

subsection. In all cases the reversion of rights is subject to
the following limitations:
+ (A) A derivative work prepared under authority of the grant
before its termination may continue to be utilized under the
terms of the grant after its termination, but this privilege
does not extend to the preparation after the termination of
other derivative works based upon the copyrighted work
covered
by the terminated grant.
+ (B) The future rights that will revert upon termination of
the grant become vested on the date the notice of termination

has been served as provided by clause (4) of this subsection.
+ (C) Where the author's rights revert to two or more persons
under clause (2) of this subsection, they shall vest in those

persons in the proportionate shares provided by that clause.
In such a case, and subject to the provisions of subclause
(D)
of this clause, a further grant, or agreement to make a
further
grant, of a particular author's share with respect to any
right
covered by a terminated grant is valid only if it is signed
by
the same number and proportion of the owners, in whom the
right
has vested under this clause, as are required to terminate
the
grant under clause (2) of this subsection. Such further grant

or agreement is effective with respect to all of the persons
in
whom the right it covers has vested under this subclause,
including those who did not join in signing it. If any person

dies after rights under a terminated grant have vested in him

or her, that person's legal representatives, legatees, or
heirs
at law represent him or her for purposes of this subclause.
+ (D) A further grant, or agreement to make a further grant, of

any right covered by a terminated grant is valid only if it
is
made after the effective date of the termination. As an
exception, however, an agreement for such a further grant may

be made between the author or any of the persons provided by
the first sentence of clause (6) of this subsection, or
between
the persons provided by subclause (C) of this clause, and the

original grantee or such grantee's successor in title, after
the notice of termination has been served as provided by
clause
o (4) of this subsection.
+ (E) Termination of a grant under this subsection affects only

those rights covered by the grant that arise under this
title,
and in no way affects rights arising under any other Federal,

State, or foreign laws.

Q 0269

SD 00269

+ (F) Unless and until termination is effected under this subsection, the grant, if it does not provide otherwise, continues in effect for the remainder of the extended renewal

term.

* (d) Termination Rights Provided in Subsection (c) Which Have Expired on or Before the Effective Date of the Sonny Bono Copyright Term Extension Act. - In the case of any copyright other than a work made for hire, subsisting in its renewal term on the effective date of the Sonny Bono Copyright Term Extension Act for which the termination right provided in subsection (c) has expired by such date, where the author or owner of the termination right has not previously exercised such termination right, the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978, by any of the persons designated in subsection (a)(1)(C) of this section, other than by will, is subject to termination under the following conditions:
    o (1) The conditions specified in subsections (c)(1), (2), (4),
        + () The conditions specified in subsections (c)(1), (2), (4), years of copyright term as provided by the amendments made by the
        Sonny Bono Copyright Term Extension Act.
    + (2) Termination of the grant may be effected at any time during
        a period of 5 years beginning at the end of 75 years from the

        date copyright was originally secured.
----------------------------------------------------------------------

Footnotes

[1] So in original. The period probably should be a semicolon.

Q 0270

SD 00270

LEXSEE 112 stat 2827

UNITED STATES PUBLIC LAWS
105th Congress -- 2nd Session
(c) 1998, LEXIS-NEXIS, A DIVISION OF REED ELSEVIER INC. AND REED ELSEVIER PROPERTIES INC.

PUBLIC LAW 105-298 [S. 505]

OCT. 27, 1998

[SONNY BONO COPYRIGHT TERM EXTENSION ACT; FAIRNESS IN MUSICAL LICENSING ACT OF 1998]

*105 P.L. 298; 112 Stat. 2827; 1998 Enacted S. 505; 105 Enacted S. 505*

BILL TRACKING REPORT:        105 Bill Tracking S. 505
FULL TEXT VERSION(S) OF BILL:  105 S. 505
CIS LEGIS. HISTORY DOCUMENT:   105 CIS Legis. Hist. P.L. 298

An Act

To amend the provisions of title 17, United States Code, with respect to the duration of copyright, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

TITLE I--COPYRIGHT TERM EXTENSION

[*101] SEC. 101. *<17 USC 101 note>* --SHORT TITLE.

This title may be referred to as the "Sonny Bono Copyright Term Extension Act".

[*102] SEC. 102. DURATION OF COPYRIGHT PROVISIONS.

(a) Preemption With Respect to Other Laws.--Section 301(c) of title 17, United States Code, is amended by striking "February 15, 2047" each place it appears and inserting "February 15, 2067".

(b) Duration of Copyright: Works Created on or After January 1, 1978.--Section 302 of title 17, United States Code, is amended--

(1) in subsection (a) by striking "fifty" and inserting "70";

(2) in subsection (b) by striking "fifty" and inserting "70";

(3) in subsection (c) in the first sentence--

(A) by striking "seventy-five" and inserting "95"; and

(B) by striking "one hundred" and inserting "120"; and

(4) in subsection (e) in the first sentence--

(A) by striking "seventy-five" and inserting "95";

(B) by striking "one hundred" and inserting "120"; and

(C) by striking "fifty" each place it appears and inserting "70".

Q 0271

SD 00271

105 P.L. 298, *; 112 Stat. 2827, **;
1998 Enacted S. 505; 105 Enacted S. 505

(c) Duration of Copyright: Works Created but Not Published or Copyrighted Before January 1, 1978.--Section 303 of title 17, United States Code, is amended in the second sentence by striking "December 31, 2027" and inserting "December 31, 2047".

(d) Duration of Copyright: Subsisting Copyrights.--

(1) In general.-- Section 304 of title 17, United States Code, is amended--

(A) in subsection (a)--

(i) in paragraph (1)--

(I) in subparagraph (B) by striking "47" and inserting "67"; and

(II) in subparagraph (C) by striking "47" and inserting "67";

[**2828]  (ii) in paragraph (2)--

(I) in subparagraph (A) by striking "47" and inserting "67"; and

(II) in subparagraph (B) by striking "47" and inserting "67"; and

(iii) in paragraph (3)--

(I) in subparagraph (A)(i) by striking "47" and inserting "67"; and

(II) in subparagraph (B) by striking "47" and inserting "67";

(B) by amending subsection (b) to read as follows:

"(b) Copyrights in Their Renewal Term at the Time of the Effective Date of the Sonny Bono Copyright Term Extension Act.--Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective shall have a copyright term of 95 years from the date copyright was originally secured.";

(C) in subsection (c)(4)(A) in the first sentence by inserting "or, in the case of a termination under subsection (d), within the five-year period specified by subsection (d)(2)," after "specified by clause (3) of this subsection,"; and

(D) by adding at the end the following new subsection:

"(d) Termination Rights Provided in Subsection (c) Which Have Expired on or Before the Effective Date of the Sonny Bono Copyright Term Extension Act.--In the case of any copyright other than a work made for hire, subsisting in its renewal term on the effective date of the Sonny Bono Copyright Term Extension Act for which the termination right provided in subsection (c) has expired by such date, where the author or owner of the termination right has not previously exercised such termination right, the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978, by any of the persons designated in subsection (a)(1)(C) of this section, other than by will, is subject to termination under the following conditions:

"(1) The conditions specified in subsections (c) (1), (2), (4), (5), and (6) of this section apply to terminations of the last 20 years of copyright term as provided by the amendments made by the Sonny Bono Copyright Term Extension Act.

"(2) Termination of the grant may be effected at any time during a period of 5 years beginning at the end of 75 years from the date copyright was originally secured.".

(2) Copyright amendments act of 1992.-- Section 102 of the Copyright Amendments Act of 1992 (Public Law 102-307; 106 Stat. 266; 17 U.S.C. 304 note) is amended--

(A) in subsection (c)--

(i) by striking "47" and inserting "67";

(ii) by striking "(as amended by subsection (a) of this section)"; and

(iii) by striking "effective date of this section" each place it appears and inserting "effective date of the Sonny Bono Copyright Term Extension Act"; and

Q 0272



SD 00272



Page 3

105 P.L. 298, *; 112 Stat. 2827, **;
1998 Enacted S. 505; 105 Enacted S. 505

(B) in subsection (g)(2) <17 USC 101 note> in the second sentence by inserting before the period the following: ", except each reference to forty-seven years in such provisions shall be deemed to be 67 years".

[**2829]    [*103]    SEC. 103. TERMINATION OF TRANSFERS AND LICENSES COVERING EXTENDED RENEWAL TERM.

Sections 203(a)(2) and 304(c)(2) of title 17, United States Code, are each amended--

(1) by striking "by his widow or her widower and his or her children or grandchildren"; and

(2) by inserting after subparagraph (C) the following:

"(D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.".

[*104] SEC. 104. REPRODUCTION BY LIBRARIES AND ARCHIVES.

Section 108 of title 17, United States Code, is amended--

(1) by redesignating subsection (h) as subsection (i); and

(2) by inserting after subsection (g) the following:

"(h)(1) For purposes of this section, during the last 20 years of any term of copyright of a published work, a library or archives, including a nonprofit educational institution that functions as such, may reproduce, distribute, display, or perform in facsimile or digital form a copy or phonorecord of such work, or portions thereof, for purposes of preservation, scholarship, or research, if such library or archives has first determined, on the basis of a reasonable investigation, that none of the conditions set forth in subparagraphs (A), (B), and (C) of paragraph (2) apply.

"(2) No reproduction, distribution, display, or performance is authorized under this subsection if--

"(A) the work is subject to normal commercial exploitation;

"(B) a copy or phonorecord of the work can be obtained at a reasonable price; or

"(C) the copyright owner or its agent provides notice pursuant to regulations promulgated by the Register of Copyrights that either of the conditions set forth in subparagraphs (A) and (B) applies.

"(3) The exemption provided in this subsection does not apply to any subsequent uses by users other than such library or archives.".

[*105] SEC. 105. VOLUNTARY NEGOTIATION REGARDING DIVISION OF ROYALTIES.

It is the sense of the Congress that copyright owners of audiovisual works for which the term of copyright protection is extended by the amendments made by this title, and the screenwriters, directors, and performers of those audiovisual works, should negotiate in good faith in an effort to reach a voluntary agreement or voluntary agreements with respect to the establishment of a fund or other mechanism for the amount of remuneration to be divided among the parties for the exploitation of those audiovisual works.

[*106] SEC. 106. <17 USC 108 note> EFFECTIVE DATE.

This title and the amendments made by this title shall take effect on the date of the enactment of this Act.

[**2830]    TITLE    II--MUSIC    LICENSING    EXEMPTION    FOR    FOOD    SERVICE    OR DRINKINGESTABLISHMENTS

[*201] SEC. 201. <17 USC 101 note> --SHORT TITLE.

This title may be cited as the "Fairness In Music Licensing Act of 1998".

[*202] SEC. 202. EXEMPTIONS.

(a) Exemptions for Certain Establishments.--Section 110 of title 17, United States Code, is amended--

(1) in paragraph (5)--

(A) by striking "(5)" and inserting "(5)(A) except as provided in subparagraph (B),"; and

Q 0273

SD 00273

LAW OFFICES OF
# MARC TOBEROFF

July 21, 2003

Jack Pettker, Esq.
444 South Flower Street, Suite 1700
Los Angeles, CA 90071-2901

Re: Joseph Shuster Probate

Dear Jack:

Enclosed please find my check no. 1007 in the amount of $2,500 as the retainer per the agreement for your firm's services with respect to the above.

Please excuse the short delay -- my wife gave birth to our second baby boy last Thursday.

Thank-you.

Very truly yours,

Marc Toberoff

Q 0274

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
MToberoff@ipww.biz

Privileged & Confidential
All Rights Reserved

SD 00274



Q 0275

Privileged & Confidential
All Rights Reserved

SD 00275

LAW OFFICES OF
## MARC TOBEROFF

July 15, 2003

Mark Warren Peary
51 Camino Cabo
Santa Fe, NM 87508

Re: Joe Shuster Probate

Dear Warren:

Enclosed please find a fully executed copy of the probate attorney's retainer for your files.

We're on our way!

Best,

Marc Toberoff

MK/rc

Encl.

Q 0276

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

**Privileged & Confidential**
**All Rights Reserved**

SD 00276

LAW OFFICES OF
# MARC TOBEROFF

July 15, 2003

John Pettker, Esq.
Rodi, Pollock, Pettker, Galbraith & Cahill
444 South Flower Street, Suite 1700
Los Angeles, CA 90071-2901

Re: Joseph Shuster Probate

Dear John:

Please find enclosed one copy of the probate documents fully executed as directed.

I have also enclosed one fully executed copy of the retainer agreement.

I will be mailing the $2500 probate check tomorrow.

Very truly yours,

Marc Toberoff

MK/rc

Encl.

Q 0277

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

**Privileged & Confidential**
**All Rights Reserved**

SD 00277

## Marc Toberoff

**From:**    Mistylight3@cs.com
**Sent:**    Saturday, August 13, 2005 12:21 AM
**To:**    MToberoff@ipwla.com
**Subject:** Burg letters

Dear Marc,
As my mom explained when she called you today, I was too ill after my extensive medical tests to call you
myself.  I trust the two of you have fully discussed the letters which arrived by fax this evening.

There is no need to respond to Burg further, in fact please don't, but in case it ever comes up in the future, I want
to you to know that when Terry Cunningham—who was seated a few seats from my mom—leaned over in that
noisy screening hall and introduced herself to my mom she said that they had met many years ago at a party that
had been thrown by Jennette Kahn [the woman who used to have the job that Paul Levitz has now].  There was a
lot of talking all around us and my mother couldn't hear what Ms. Cunningham said so she had to repeat that they
had met years ago more than once.  She still couldn't hear Ms. Cunningham so I told her what she said and even
then my mom did not remember her.  My mother and father attended that party more than 10 years ago at a
restaurant and met many, many people that night.  My mother remembered the party but did not remember Ms.
Cunningham.  I did not attend the party and had never met the woman before ComicCon.  For Burg to make the
ridiculous statement, "...Terry Cunningham with whom your client has been acquainted for 15 years" gives the
impression that my mom knew who she was—(she did not)—and that she has had ongoing personal contact with
her for 15 years—(again, she did not).  Burg's characterization is absolutely false.  Furthermore, my mother did not
ask Ms. Cunningham to get Paul—she simply asked whether he was in San Diego.  If Terry Cunningham decided
to go and get Paul so he could say hi to my mom it was something she chose to do, not the result of a request.  If
she said anything to my mom before she left, my mom could not hear her and she was surprised when Paul
walked up and greeted us.  Now the whole thing is turning into an argument between you and Burg.  I hope we
will not have to deal with this matter further.

Hope your weekend is a good one.
Sincerely,
Laura

Q 0278

8/15/2005

SD 00278

Aug-12-06  09:13am  From-WEISSM  WOLFF ETAL         310-550-7      T-530  P.02/03  F-840

**WWBCGE**

**VIA FAX:  (310) 246-3101**
**AND FIRST CLASS MAIL**

August 11, 2005

**David L. Burg**
a professional corporation
dburg@wwlp.com
310.860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff. PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California  90067

Re:     Siegel v. Warner Bros. Entertainment Inc., et al.
        U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
        Our File No. 2231.811

Dear Marc:

    This responds to your unsigned letter of August 4, 2005, regarding the contacts between Mr. Levitz and your clients.  We write for the sole purpose of setting the record straight based on the facts as we know them.

    The "Terry" referred to in your letter is Terri Cunningham, with whom your client has been acquainted for 15 years.  At the "Superman Returns" screening at Comic-con. Joanne Siegel (who happened to be sitting a few seats away from Ms. Cunningham) asked Ms. Cunningham if Mr. Levitz was in San Diego.  After being advised that he was, Mrs. Siegel then said she would like to see him.  Ms. Cunningham responded that she would attempt to get Mr. Levitz after the screening.  After the screening concluded, Ms. Cunningham asked Mrs. Siegel whether she should attempt to find Mr. Levitz.  Mrs. Siegel responded that she should and Ms. Cunningham proceeded to find Mr. Levitz and bring him over to where Mrs. Siegel was sitting.  The conversation that you have complained about then ensued.

    These are the facts as we know them, and we note that they are consistent with what you saw taking place from a "distance" of "a couple seats away."  In this context, you can appreciate why we reacted the way we did to your claim

**WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP**
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T. 310 858.7888 F: 310 550.7191 WWW.WWLLR.COM
LAWYERS

312348_1.DOC                                              Q 0279

SD 00279

Aug-12-05 09:13am From-REISSM OLFF ETAL 310-550-7 T-530 P.03/03 F-840

Marc Toberoff, Esq.
August 11, 2005
Page 2

that Mr. Levitz "directly approached" your clients, and your unfounded accusation that Mr. Levitz engaged in "inappropriate" conduct, as neither is true.

It certainly is your prerogative to communicate to us your clients' desire that Mr. Levitz and DC Comics not contact them directly, but not under the pretext that Mr. Levitz initiated the most recent series of contacts, when in fact he did not. This does constitute manufacturing a false dispute and we stand by that characterization.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
       (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

Q 0280

312348_1.DOC

SD 00280

Aug-12-05   09:14am   From-WEISSMANN WOLFF ETAL    310-550-7191    T-531   P.02/03   F-841

WWBCGE

VIA FAX: (310) 246-3101
AND FIRST CLASS MAIL

August 11, 2005

David L. Burg
a professional corporation
dburg@wwlip.com
310 860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California  90067

Re:    Siegel v. Warner Bros. Entertainment Inc., et al.
       U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
       Our File No. 2231 811

Dear Marc:

This responds to your letter of August 4, 2005, regarding your unauthorized meeting with Paul Levitz, President of DC Comics, on July 16, 2005 at Comic-con in violation of California Rule of Professional Conduct 2-100.

Your characterization of the events of July 16th does not comport with the facts. As you are aware, the conversation between you and Mr. Levitz took place at DC Comics' booth in a conference room at around 3:30 p.m. You and Mr. Levitz were alone in the conference room, although the fact that you went into the conference room alone with Mr. Levitz was witnessed by several people at the booth. This conversation went on for approximately 45 minutes and had nothing to do with speaking "in general terms with Mr. Levitz . . . in order not to appear rude." Rather, you were expressly engaged in an attempted settlement discussion with Mr. Levitz and, as such, your assertion that you have "always" refrained from discussion the "substance of the . . . litigation" directly with DC Comics is simply untrue.[1]

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD, NINTH FLOOR, BEVERLY HILLS, CA 90212 T. 310 858.7888 F. 310.550.7191 WWW.WWLLP.COM
LAWYERS

312351_1.DOC                                              Q 0281

SD 00281

EXHIBIT G
522

Marc Toberoff, Esq.
August 11, 2005
Page 2

Please let us know whether it is your position that you did not, in fact, have a private conversation with Mr. Levitz in a conference room at DC's booth at Comic-con.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
       (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

312351_1 DOC                                          Q 0282

Received   Aug-12-05   08:03am     From-310 550 7191          To-                    Page 002

Privileged & Confidential
All Rights Reserved

SD 00282

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

August 12, 2005

Via Fax: (310) 550-7191 and U.S. Mail

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

> Re: Siegel v. Warner Bros. Entertainment Inc. et al.
>    U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)

Dear David:

This will acknowledge receipt of your second letter to me of August 11, 2005, in which you once again attempt to "set the record straight" regarding your client's direct solicitation of our clients. Your efforts to extend and belabor this dialogue are not welcome and ultimately not in your client's interest as your letters only serve to antagonize our clients.

Our clients inform us that your recital of the occurrences at Comic-Con are completely false. While our clients experienced the events which occurred, you did not. Our clients were made uncomfortable by your clients' solicitous contact both during and after Comic-Con, and specifically asked me to request that your clients cease further direct contact with them. Please, there is no need to respond as you have already stated your position, twice. I assume that your clients will adhere to this request.

Very truly yours,

Marc Toberoff

cc: Ms. Joanne Siegel
    Ms. Laura Siegel Larson
    James D. Weinberger, Esq.

Q 0283

Privileged & Confidential
All Rights Reserved

SD 00283

**EXHIBIT G**
**524**

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK.

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

August 12, 2005

<u>Via Fax: (310) 550-7191 and U.S. Mail</u>

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

  Re: <u>Siegel v. Warner Bros. Entertainment Inc. et al.</u>
  <u>U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)</u>

Dear David:

  This will acknowledge receipt of your letter to me of August 11, 2005, in which you continue to erroneously belabor the point about my alleged "unauthorized meeting" with Paul Levitz of DC Comics. I dispute your self-serving characterization of events of which you have no personal knowledge. For your edification, I did not enter into any conference room alone with Mr. Levitz. Mr. Levitz came up to my clients and I as we were walking the Comic-Con floor. While I was talking to Laura Siegel Larson, Mr. Levitz ushered Joanne Siegel into a DC conference room, without me. I then followed them into the room with Laura and her two boys behind me. Laura then informed her mother that her boys wanted to attend a movie event upstairs, whereupon my clients left, leaving Mr. Levitz and me in the room. The events have none of the insidious characteristics you try to attribute to them.

  I already previously indicated to you in writing that I will not speak directly with your client about the substance of this action. There is nothing further that need be said on this subject.

    Very truly yours,

    Marc Toberoff

cc: James D. Weinberger, Esq.

Q 0284

Privileged & Confidential
All Rights Reserved

SD 00284

EXHIBIT G
525



# Confirmation Report — Memory Send

Page      : 001
Date & Time: Aug-12-05  05:47pm
Line 1    :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 554 |
| Date | : | Aug-12 05:46pm |
| To | : | ☎13108277227 |
| Number of pages | : | 003 |
| Start time | : | Aug-12 05:46pm |
| End time | : | Aug-12 05:47pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 554          **\*\*\* SEND SUCCESSFUL \*\*\***

## LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

### FACSIMILE COVER PAGE

| TO: Laura Siegel Larson | FAX: (310) 827-7227 |
|---|---|
| FROM: Marc Toberoff | PAGES (Including cover): 2 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

**Privileged & Confidential**
**All Rights Reserved**

Q 0285

SD 00285



# Confirmation Report — Memory Send

Page        : 001
Date & Time: Aug-12-05  06:00pm
Line 1      :
Machine ID  :

| | | |
|---|---|---|
| Job number | : | 557 |
| Date | : | Aug-12 05:57pm |
| To | : | ☎13108277227 |
| Number of pages | : | 009 |
| Start time | : | Aug-12 05:57pm |
| End time | : | Aug-12 06:00pm |
| Pages sent | : | 009 |
| Status | : | OK |

Job number    : 557                    *** SEND SUCCESSFUL ***

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

COMMENTS:

| | |
|---|---|
| TO: Laura Siegel Larson | DATE : 8/12/05 |
| FROM: Marc Toberoff | |
| FAX: (310) 827 7227 | PAGES ( including cover ): # 9 |
| RE: Siegel vs. Warner Bros. | |

## FACSIMILE COVER PAGE

# LAW OFFICES OF MARC TOBEROFF
A PROFESSIONAL CORPORATION
1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

Privileged & Confidential
All Rights Reserved

Q 0286

SD 00286

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Laura Siegel Larson | FAX: (310) 827 7227 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 9 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Privileged & Confidential
All Rights Reserved

Q 0287

SD 00287

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Joanne Siegel | FAX: (310) 821-5894 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 4 4 7 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE
INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS
PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE
READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE
AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL
SERVICE. THANK YOU.

Q 0288

**Privileged & Confidential
All Rights Reserved**

SD 00288

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540

LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Joanne Larson | FAX: (310) 821-5894 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 2 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

**Privileged & Confidential**
**All Rights Reserved**

Q 0289

SD 00289

# SUPERMAN – MARC TOBEROFF TIMELINE

*\*Please read closely. We have enclosed several supporting documents in our package to you, and very much hope you will spend some time reviewing them before you come to any potential settlement with Marc Toberoff, who represents the Siegels and the Schuster heirs in the ongoing Superman legal dispute with Time Warner and DC Comics.*

*The below information should save Time Warner potentially millions and millions of dollars, and, if you so choose, - have Marc Toberoff suspended, disgraced, --- if not ultimately disbarred --- from practicing law.*

*Toberoff being labeled as the "relentless crusader for artists' rights" is hardly that: he has devised a strategy whereas he has ultimately claimed much ownership of the Superman copyright personally as he can. And of course, he has done so without the knowledge and full disclosure to the Siegels and Schuster heirs, creators of Superman.*

*As it stands right now, the single person who would stand to gain the MOST in a settlement with Time Warner regarding the ongoing SUPERMAN legal dispute would not be the heirs themselves, but Marc Toberoff.*

*What you do with the below information is up to you. You should most certainly conduct your own investigation. We believe there are details within this timeline that will be of strong interest to you.*

*Consider it an early holiday gift.*

*(Also, please be aware that this timeline is written with the assumptions that the reader(s) are aware of the characters involved within the ongoing Superman legal dispute between Time Warner/DC Comics. The heirs to the SUPERMAN copyright are: the Siegels (Joanne, Laura & Michael), Jerry Siegel's heirs, who collectively have claims to 50% of the copyright to Superman, while the Schuster estate has claims on the other 50%.) Marc Toberoff currently represents both parties in ongoing litigation.*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

In 2000 MT established a separate corporation entitled "Pacific Pictures Corporation" (PPC), with an address of 23852 Pacific Coast Hwy, Suite 555, Malibu, CA 90265. Tel: (310)-589-5151. You will see below that he established this business to solicit his services as an attorney.

In 2001, Marc Toberoff (MT) began researching Superman, who had rights, etc.

MT initially contacts Kevin Marks at Gang, Tyre, who represented Joanne and Laura Siegel with an offer for the Siegel rights. Marks discourages Toberoff from any advances, and does not tell Siegels initially of the interaction because he believes it is not in their best interest.

Q 0290                        1

Privileged & Confidential
All Rights Reserved

SD 00290

On Nov. 23, 2001, MT entered into a joint venture agreement between his own outside corporation Pacific Pictures Corp. (NOT a law firm), and Mark Warren Peavy, and his mother Jean Peavy, heirs to the Joe Schuster estate. For the purposes of this document, we do not know the content of that agreement.

MT and Ari Emanuel, partner and agent at Endeavor, contacts Kevin Marks at Gang, Tyrer, Ramer, & Brown again, (who represented Joanne and Laura Siegel), on August 8, 2002. MT approaches the Siegels, *not as an attorney but as a film producer*, stating that he is "allied" with Emanuel, hoping such a claim will legitimize him.

On August 8th 2002, MT tells Marks that he and Emanuel have a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds for exploitation of the Siegels' rights to SUPERMAN and some continued royalties on an ongoing basis in all media. Kevin Marks says to the Siegels, "Don't do it." Gang, Tyrer tells the Siegels that they believe MT has brokered a confidential agreement with the Joe Schuster estate. Marks also tells the Siegels that the Schuster estate will have termination rights in approximately 2013. Schuster missed termination notices.

Within their offer, MT appeals to the Siegels' sense of ownership and encourages them to take this deal. MT says he can help them make a movie in direct competition to the one being made at Warner Brothers (MT makes this argument to Joanne and Laura, all the while knowing full well that no one would ever go near making such an attempt; no other studio would go for it because of the division of rights, and no one outside of the studio system would attempt such an endeavor for all the enormous costs attributable to the making, marketing and distribution of such a film.) In other words, MT displays "predatory intent" in his initial approach to the Siegels from the very beginning.

In their very first conversation, Kevin Marks tells MT "no go" --- that the Siegels have already reached an agreement with Time Warner and DC Comics.

Marks conveys MT's offer to the Siegels, and Marks does say to the Siegels, it is a better offer than the one you have. However, Marks also tells the Siegels that he would testify in court against the Siegels if they accepted this offer because he believes there has already been an agreement reached.

The Siegels are angry at Kevin Marks that he said he would testify against them if they took MT's offer, and relations break down between the Siegels and Gang, Tyrer. They fire Gang, Tyrer. And, because the Siegels believed that MT was sympathetic to their plight, and because MT appealed to their sense of ownership of SUPERMAN, they decide to enter into an agreement with Intellectual Properties Worldwide, otherwise known as "IPW", Marc Toberoff's film production company, for 10% for any kind of deal he got to make a movie or exploit the rights. (as you know, the Siegels submitted termination notices on the Superman copyright in 1997).

Q 0291                                                   2

**Privileged & Confidential**
**All Rights Reserved**

SD 00291

The Siegels' agreement with IPW is an agreement that mirrors the earlier Pacific Pictures agreement that MT makes with the heirs to Joe Schuster (*see more information on this below*). In other words, Marc Toberoff is named as their attorney within the agreement (which is masked as a retainer agreement) in the event that they go to litigation over anything (*please see enclosed document*). Upon the Siegels signing the agreement, MT then tells Joanne and Laura that his mysterious billionaire has decided to invest elsewhere. In other words, MT makes himself the Siegels' attorney of record while he solicited them as a film producer, violating the rule that no lawyer may directly solicit business, with the double violation of doing it under the auspices of doing separate business dealings. MT's sole intent was to become the Siegels' attorney, not to help the Siegels (as he had alleged) to make a movie in competition to *Superman Returns*, which was then in development at Warner Brothers. MT also never divulges his previous direct dealings with the Schuster heirs, and his Nov.23, 2001 joint agreement with the Peavys (the Schuster heirs) in which he is named their attorney of record.

In 2002, MT set his sights on acquiring the passive interest to Michael Siegel's rights, who, as you know, is Jerry Siegel's son from his first marriage, and is Laura's half-brother. Michael Siegel has an interest of 12.5% in SUPERMAN and SUPERBOY. The Siegels total have 50% interest (Joanne holds 50%, Laura 25%. Michael 25%). So, in essence, Joanne has 25%, Laura 12.5, Michael 12.5. MT used to his advantage the strained relationship between Joanne and Laura, and Michael; as well as strained communication with the Schusters.

Here comes Ari Emanuel, and he is going to finance the purchase of Michael Siegel's interest. But Michael Siegel turns him down flat. MT discloses the intent to purchase to Joanne and Laura, admitting it is a possible conflict of interest. MT is fully aware of what he is doing is wrong.

On December 16, 2002, there is another letter from MT and Ari Emanuel to Joanne and Laura Siegel, saying they are re-approaching Michael again about purchasing his interest. MT tells Michael Siegel that they have an investor ready to buy out his interest, though the amount is significantly less than what DC showed as his share.

March 3, 2003 – letter from Paul Levitz/DC Comics to the Siegels, and MT is messing up relationships for his own personal benefit. DC is trying to understand why they backed out of the deal. The reason is MT who is interfering in all the relationships up to this point.

May 2003 -- MT is continuing to make business arrangements with the Schuster heirs, unbeknownst to Joanne and Laura Siegel.

May 13, 2003: Michael Siegel sends a very concerned letter to Laura Siegel about Marc Toberoff's actions. (*please see enclosed letter; this letter lays out well MT's scheme*). Among other things, Michael Siegel tells her of how Toberoff is now controlling the whole of the SUPERMAN copyright, how he may have bought a substantial portion of the Schuster interest for himself, and he brings to light MT's utter lack of opening a

Q 0292          3

Privileged & Confidential
All Rights Reserved

SD 00292

dialogue with anyone regarding making another SUPERMAN movie, in partnership with Ari Emanuel.    Also that MT has not even made contact with Time Warner.  Lastly, Michael conveys that MT seems to have an agenda of "someone" buying him out, and that MT is pressing for an answer.

In May-June 2003. **STATUE OF LIMITATIONS is coming close on for filing of the SUPERMAN complaint. Both Joanne and Laura Siegel are now very ill.** MT starts saying to the Siegels that the statue of limitations is coming up, and they would have waived their right to sue based on the termination notices. *This is the very seed MT meant to mine all along.* He sends them the research on the statue of limitations, and concerned, the Siegels contact Art Levine in Washington, D.C. to have independent research done on the matter. The research confirms that they should file by September.

In June, Ari Emanuel through IPW is still trying to buy Michael Siegel's interest but can't come to terms on price.

End of June 2003, MT gets a law firm to represent the Schusters to assist with the SUPERMAN copyrights. They determine the value of the estate is $0, and California Probate Code will not be applicable, such that the estate attorney will not be entitled to any future settlement regarding the Superman interest.  Estate attorney is only receiving an hourly rate.  MT "graciously" pays all legal fees.

In other words, MT helped probate the estate, but hired an attorney to do the dirty work. Fittingly, the Joe Schuster will was "lost", so the will had no value.  So, the court writes the will for him, and includes the rights to proceed with the termination.  And since the firm receives an hourly rate, and the estate is valued at $0, it does not effect any future settlement.  The estate attorney will thereby not be entitled to statutory compensation. Another example of showing that MT is solely motivated *at all times* not by his clients' interests, but manipulating pieces of the puzzle so that he may receive the greatest percentage from a very possible large Time Warner settlement, through part ownership and unconscionable fees (*see below*).

**Absolutely nothing is moving ahead with Siegel/Schuster rights and agreements because MT was never intending to do anything with rights other than litigate.**

July 5, 2003. Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael --- MT has NOT told them he is about to enter into the PPC agreement, whereby MT *personally* will have a 50% of the Schuster interest in Superman. He will shortly own equal to what Joanne owns (25% of entire copyright), and double what Laura owns, *but MT has failed to disclose this.* The Schusters – through the Pacific Pictures Corp agreement – gave MT half of what they had.  MT never had the intention to make a movie in competition to the one at Warners – it is tantamount to throwing $$$ away, but it does appeal to the heirs' sense of lost ownership.  MT never did want to make a movie, and exploit the rights. MT knows no one is going to invest in an outside movie project outside of Warner Brothers, though he uses Ari Emanuel, the agent, to legitimize his claims.  *(please see enclosed letter)*

Q 0293

4

**Privileged & Confidential**
**All Rights Reserved**

SD 00293

Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft --- in response to Michael's accusations of Toberoff, Laura clearly states that MT does *not* have a production company. (This is false – Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes " MT has not plans to produce a SUPERMAN movie, nor is this feasible given the division of ownership of the rights." (please see enclosed letter). **This clearly delineates that Toberoff never had the intention of making a movie, and approached the Siegels and Schusters separately ---- not for the exploitation of rights as he initially asserted,** but to gain an unconscionable fee from a very large possible settlement with Time Warner.

August 7, 2003 --- Letter from Rodi-Pollock, who is the attorney in the Schuster estate – who says the Schuster Will would be written by the court August 25, 2003, since the Schuster Will had been "lost".

Sept-Oct 2003 ---- Letter with Ari Emanuel in which he would receive $2.5 million flat fee for "negotiating services"

On October 27, 2003, MT uses PPC to enter into another agreement with the Joe Schuster's heirs: Mark Warren Peavy and Jean Peavy, in which PPC is "engaged as the Executor of the recently probated estate of Joeseph Schuster." The agreement purports that PPC is the Peavys exclusive advisor "for the purpose of retrieving, enforcing, and exploiting all of Joe Schuster's rights ….in all of his creations…".    In this agreement, MT also names himself their attorney for any and all litigation or questions that should arise in regards to these Rights.  MT also clearly delineates that PPC is NOT a law firm. And, lastly but most significantly, MT defines that any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement, or exploitation of any of the Rights, ….any monies would be split 50/50.  **IN ESSENCE, MARC TOBEROFF NOW HAS A 25% STAKE IN SUPERMAN PERSONALLY BECAUSE OF HIS DEAL WITH THE SCHUSTERS THAT WAS MADE IN 2003. He gets – under the guise of Pacific Pictures Corp – the rights to retrieve and enforce and exploit Joe Schuster's interest in SUPERMAN.**   MT's alleged "firewall" between film producing and soliciting business as an attorney comes tumbling down. (*please see enclosed signed agreement, dated October 27, 2003*).

In 2013 MT will own Schuster's side of it; but it does not matter, they will settle before.

MT inquires into the legality of entering into the Pacific Pictures Corporation agreement with the Peavys, heirs to Schuster estate, using law firm Armstrong, Hirsch, Jackoway, Tyerman, & Wertheimer.  The inquiry raises strong eyebrows, and questions of legality as to MT's actions in regards to the Schusters, and strongly discourages further involvement with MT and this matter.

Q 0294

5

Privileged & Confidential
All Rights Reserved

SD 00294