# EXHIBIT G
# Part 6 of 9

LAW OFFICES OF
# MARC TOBEROFF

Laura Siegel negotiate and receive, and therefore there are major risks associated with this lack of control (a good reason why Michael may be interested in an investor in the first place);

3. Risk that Joanne and Laura Siegel may never arrive at a mutually acceptable settlement with Warner Bros;

4. Risk that the interest may not be monetized or bear fruit for a long time to come (a long term investment);

5. Risk that Superman will lose as opposed to gain value (there hasn't been a Superman movie since 1978 (compare the Bond franchise) and the recent failure to launch and talent package a new Superman film (lost their director and can't cast the lead) is well publicized.

I personally believe, despite the above, that this could be a smart long term investment for someone very wealthy who can afford to hold the investment for an unpredictable, and potentially very lengthy period of time. However, that doesn't mean that an investor will not weigh the reasonableness of the price against the above risks.

Please convey this letter to Michael and let me know what you and Michael suggest I do to salvage this situation.

Best regards.

Yours sincerely,

Marc Toberoff

Q 0490

SD 00491

**EXHIBIT G**
728

1  **RODI, POLLOCK, PETTKER, GALBRAITH**
   **& CAHILL, A Law Corporation**
2  **JOHN D. PETTKER (SBN 42346)**
   444 South Flower Street, Suite 1700
3  Los Angeles, CA 90071-2901
   Telephone: 213-895-4900
4  Facsimile: 213-895-4750

5  Attorneys for MARK WARREN PEARY,
   Petitioner

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11 | In the Matter of the Estate of        | NO. BP-080635

12 | JOSEPH SHUSTER, also known as JOE      | **ORDER ADMITTING WILL TO**
   | SHUSTER,                               | **PROBATE, APPOINTING EXECUTOR**
13 |                                        | **AND AUTHORIZING INDEPENDENT**
   |                          Deceased.     | **ADMINISTRATION OF ESTATE WITH**
14 |                                        | **LIMITED AUTHORITY**

15                                          **Hearing Date: 8-25-03**
                                            **Dept. 5 at 9:15 a.m.**
16

17

18         Petitioner, MARK WARREN PEARY, filed his petition for probate of will and for letters

19 testamentary and for authorization to administer estate under the Independent Administration of

20 Estates Act with limited authority of the estate of Joseph Shuster, also known as Joe Shuster,

21 deceased (the "decedent"), and such petition came on regularly for hearing and approval by the

22 Court at 9:15 a.m. on August 25, 2003, in Department 5 of the above-entitled Court, the

23 Honorable H. RONALD HAUPTMAN, Judge Pro Tem presiding. JOHN D. PETTKER of Rodi,

24 Pollock, Pettker, Galbraith & Cahill, A Law Corporation, appeared as the attorney for petitioner,

25 and no one appeared in opposition.

26         On evidence given to the satisfaction of the Court, THE COURT FINDS THAT:

27         1.     All notices required by law have been given.

28 / / /                                                          Q 0491

_(left margin, vertical text)_ RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL A LAW CORPORATION 444 SOUTH FLOWER STREET, SUITE 1700 LOS ANGELES, CALIFORNIA 90071-2901 TELEPHONE (213) 895-4900

                                            1
ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUTHORITY

SD 00492

**EXHIBIT G**
**729**

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

1    2.    The decedent died on July 30, 1992, a resident of the County of Los Angeles, State

2    of California.

3    3.    The decedent died testate, leaving a will dated June 28, 1988.  This will has never

4    been revoked but was lost or inadvertently destroyed.  Such will is admitted to probate by Minute

5    Order on August 25, 2003, as the decedent's last Will, and its provisions are as follows:

6    # LAST WILL AND TESTAMENT OF

7    KNOW ALL PERSONS BY THESE PRESENTS:

8    I

9    That, I  JOSEPH SHUSTER, of W. Los Angeles, California, being of sound and disposing mind

10    and memory, and not acting under duress, menace, fraud or the undue influence of any person

11    whomsoever, do make, publish and declare this my Last Will and Testament.

12

13    I hereby declare that I am the brother of JEAN ADELE PEAVY at the time of the

14    execution of this Will.

15    II

16    I make no bequest, gift or devise to my children named in Paragraph I, or to any other

17    child or children hereafter born to or adopted by me, except as hereinafter stated, knowing their

18    ___N/A___  will provide for them.

19    III

20    I hereby direct and order that all just debts for which proper claims are filed against my

21    estate, and the expenses of my last illness and funeral, be paid by my executrix as soon after my

22    death as is practicable; provided, however, that this direction shall not authorize any creditor to

23    require payment of any debt or obligation prior to its normal maturity in due course.

24    IV

25    I give devise and bequeath unto JEAN ADELE PEAVY all of the rest, residue and

26    remainder of my estate, whether real or personal, and wheresoever situated.  In the event that Jean

27    Adele Peavy shall predecease me, or in the event that both Jean Adele Peavy and I shall die as a

28    /  /  /

Q 0492

2

SD 00493

**EXHIBIT G**
**730**

result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, MARK WARREN PEARY.

V

I hereby nominate and appoint my sister, Jean Adele Peavy, executrix of this my Last Will and Testament, to act without bond. In the event that my sister is for any reason unable or unwilling to act as executrix hereof, I nominate and appoint Mark Warren Peary to act as executor, also without bond.

VI

I further direct that my estate be settled without the intervention of any court, except to the extent required by law, and that my executrix settle my estate in such a manner as shall seem best and most conveniently to her, and I hereby empower my executrix to mortgage, lease, sell, exchange and convey the personal and real property of my estate without an order of court for that purpose and without notice, approval or confirmation and in all other respects to administer and settle my estate without the intervention of court.

VII

I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my Last Will and Testament.

In Witness Whereof I have hereunto set my hand this 28th day of June, 1988.

JOSEPH SHUSTER
Testator

STATE OF CALIFORNIA    )
                        )  ss.
COUNTY OF LOS ANGELES   )

Each of the undersigned, being first duly sworn on oath, states that on this 28th day of June, 1988:

(1)    I am over the age of eighteen (18) years and competent to be a Witness to the Will of JOSEPH SHUSTER (the Testator);

(2)    The Testator, in my presence and in the presence of the other Witnesses whose signatures appear below:

Q 0493

3
ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUT

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

SD 00494

EXHIBIT G
731

1            (a) Declared the foregoing instrument consisting of one pages, of which this is the

2    last to be his Will;

3            (b) Requested me and the other Witnesses to act as Witnesses to his Will and to

4    make this affidavit; and

5            (c) Signed such instrument;

6       (3)    I believe the Testator to be of sound mind, and that in so declaring and signing, he

7    was not acting under any duress, menace, fraud, or undue influence;

8       (4)    The other witnesses and I, in the presence of the Testator and of each other now

9    affix our signatures as Witnesses to the Will and make this affidavit.

10   Tom Fenaughty                      Robert Williams

11   3374 Overland Ave., #1            3545 Mentone Ave. #3

12   Los Angeles, CA 90064           Los Angeles, California 90034

13   SUBSCRIBED & SWORN to before me this 28th day of June, 1988.

14                           F. PATRICK HAGERTY

15         [NOTARIAL SEAL]        Notary Public in and for the State of California,
                                  residing at Santa Monica, Calif.

16   **THE COURT ORDERS:**

17      1.    MARK WARREN PEARY is appointed Executor of the decedent's Will recited

18   above, and letters testamentary shall issue on qualification.

19      2.    The Executor is granted limited authority to administer the estate under the

20   Independent Administration of Estates Act (there is no authority, without court supervision, to (1)

21   sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money

22   with the loan secured by an encumbrance upon real property).

23      3.    The Executor is also granted the following special power in addition to the general

24   powers conferred upon him by law and under the Independent Administration of Estates Act:

25   The power to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(d)

26   of the United States Copyright Act, 17 U.S.C. §304(d), incorporating without limitation 17 U.S.C.

27   §304(c)(2)(D), and to maintain and defend on behalf of the decedent and the estate all proceedings

28   necessary or appropriate in connection with this action.

                                           Q 0494

ROD, POLLOCK, PETHER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

4

SD-00495

**EXHIBIT G**
**732**

1    4.    Bond is fixed at $6,000.00.

2    Dated: _____

3

4

5    _____
     Judge Pro Tem of the Superior Court

6    264438_1.doc

7

8

9

10

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Q 0495

5

ORDER ADMITTING WILL TO PROBATE, APPOINTING EXECUTOR AND AUTHORIZING IAEA WITH LIMITED AUTH

SD 00496

EXHIBIT G
733

JN-01-2004 02:21 PM                                    1 310 827 7227          P.01

**LAURA SIEGEL LARSON**
**6400 PACIFIC AVE. #106**
**PLAYA DEL REY, CA 90293**

June 1, 2004

# CONFIDENTIAL
# FAX TRANSMITTAL

**TO:**      Marc Toberoff
**FAX#:**    (310) 246-3101

**FROM:**    Laura Siegel Larson
**FAX#:**    (310) 827-7227

**RE:**      Research from Arthur Levine

Page 1 of 4

**MESSAGE:**

Dear Marc,

Attached is the fax I received today from Arthur Levine. I am sending you an email
regarding it.

Sincerely,

*Laura*

Laura Siegel Larson

Q 0496

**Privileged & Confidential**
**All Rights Reserved**

SD 00497

**EXHIBIT G**
**734**

JUN-01-2004 02:22 PM    1 310 827 7227    P.02
JUN 01 2004 12:54 FR FINNEGAN HENDERSON 202 408 4400 TO 13108277227

**LAW OFFICES**
## FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
1300 I Street, NW
Washington, DC 20005

Telephone
(202) 408-4000

Facsimile
(202) 408-4400

### FACSIMILE TRANSMITTAL

**TO**

Name:   Laura Siegel Larson

Firm:

Fax No.:   310-827-7227

Phone No.:

Date:   June 1, 2004

Subject:

**FROM**

Name:   Arthur J. Levine

Phone No.:   (202) 408-4032

Fax # Verified by:   R. McGolrick

# Pages (incl. this):   3

Our File No.:   06589.0001

### Confirmation Copy to Follow: No

Message:

Dear Laura:

Attached is the research which my associate conducted. Marc Toberoff called me on Thursday and explained his reasoning. Our research suggests that his reasoning is correct, and that it would be exceedingly risky to not file by the September date. Marc and I both agree that the burden is on the other side to disprove the validity of the Notices, and that it is highly unlikely that they can meet that burden.

Sincerely,

Art

If there is a problem with this transmission, notify fax room at (202) 408-4174 or the sender at the number above.

This facsimile is intended only for the individual to whom it is addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If you have received this facsimile in error, please notify the sender immediately by telephone (collect), and return the original message by first-class mail to the above address.

Privileged & Confidential
All Rights Reserved

Q 0497

SD 00498

JUN-01-2004 02:22 PM                                              1 310 827 7227        P.03
JUN 01 2004 12:55 FR FINNEGAN HENDERSON 202 408 4400 TO 13108277227#     PAGE

From:       Naresh KILARU
To:         Levine, Arthur
Date:       Thu, May 27, 2004 11:07 AM
Subject:    Siegel issues

Art,

Here is a brief summary of the research issues relating to the Siegel matter:

**1. When does the Statute of Limitations begin to run against a co-owner seeking an accounting?**

Section 507(b) of the Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The key problem is of course determining the point at which the claim accrued. There are only a handful of cases discussing this issue in the context of a co-owner seeking an accounting. The leading Ninth Circuit case is summarized below.

In Zuill v. Shanahan, 80 F.3d 1366 (9th Cir. 1996), the defendant Shanahan created what became "Hooked on Phonics". To improve the music in the program, the defendant brought in Zuill and Rossi (the plaintiffs). The plaintiffs later sued the defendant for a declaratory judgment that they each owned one-third interests in "Hooked on Phonics." The issue before the court was whether the plaintiffs' suit was time-barred under Section 507(b).

The plaintiffs had filed suit in 1991. The court noted that the defendant had expressly repudiated any claims of co-ownership by Zuill and Rossi in 1987. In interpreting the statutory language of when the claim accrued under Section 507(b), the court held, "We conclude that claims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." 80 F.3d at 1369. The court's rationale for such an interpretation was largely based on equitable principles: "It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort." 80 F.3d at 1371. Because the plaintiffs had brought suit more than three years after their claims of co-ownership had been expressly repudiated by the defendant, the court held that the plaintiffs' suit was time-barred under Section 507(b).

My guess is that it is the Zuill case to which Marc Toberoff is referring when he puts 4/16/1999 as the date on which the statute of limitations began to run, as this is the date Time Warner rejected the validity of Siegel's Notices of Termination. While I could not find any case law interpreting Section 507(b) specifically in the context of a party asserting co-ownership through a Notice of Termination (as opposed to asserting co-ownership through joint creation), it seems that the holding in Zuill would be equally applicable to our situation.

**2. Which party has the burden of proving the validity (or invalidity) of a termination notice?**

I found no cases discussing which party has the ultimate burden of proving the validity (of invalidity) of a termination notice. But based on Zuill, it seems clear the party claiming co-ownership (either through joint creation or via a termination notice) has the burden of at least bringing a lawsuit within the statute of limitations period. Thus, Marc Toberoff's conclusion that the statute of limitations runs against Siegel (and not against Time Warner) is likely correct.

Finally, I did find one case clearly holding that "when a termination is effected, all rights covered by the terminated grant revert, on the effective date of termination, to the author or his statutory successor." Bourne v. MPL Communications, Inc., 675 F. Supp. 859, 861 (S.D.N.Y. 1987). Thus, assuming that the Notices of Termination were proper, it seems that 50% of the rights to Superman did in fact revert to Siegel upon the effective date of the terminations in April 1999. Because Time Warner rejected the

Q 0498

**Privileged & Confidential**
**All Rights Reserved**

SD-00499

JUN-01-2004 02:23 PM                                1 310 827 7227        P.04
JUN 01 2004 12:55 FR FIN...GHN HENDERSON 202 466 4408 TO 13168271227...

validity of the Notices of Termination (and hence repudiated Siegel's status as co-owner) on April 15, 1999, it seems that the Statute of Limitations began to run against Siegel on April 15, 1999 for her to bring a declaratory judgment action establishing her as co-owner and entitling her to an accounting.

CC:        McGoirlck, Robin

Q 0499

** TOTAL PAGE.08 **

Privileged & Confidential
All Rights Reserved

SD 00500

LAW OFFICES OF
# MARC TOBEROFF

July 21, 2003

Jack Pettker, Esq.
444 South Flower Street, Suite 1700
Los Angeles, CA 90071-2901

Re: Joseph Shuster Probate

Dear Jack:

Enclosed please find my check no. 1007 in the amount of $2,500 as the retainer per the agreement for your firm's services with respect to the above.

Please excuse the short delay -- my wife gave birth to our second baby boy last Thursday.

Thank-you.

Very truly yours,

Marc Toberoff

Q 0500

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
MToberoff@ipww.biz

Privileged & Confidential
All Rights Reserved

SD 00501

EXHIBIT G
738



Privileged & Confidential
All Rights Reserved

Q 0501

SD 00502

EXHIBIT G
739

# AMERICAN CONTRACTORS INDEMNIT COMPANY

BOND NO. _____

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF LOS ANGELES

| IN THE MATTER OF |
| --- |

The Estate of

JOSEPH SHUSTER, also known as JOE SHUSTER,

Deceased

Case Number BP080635    OCT 2 1 2003

All Papers and notices may be sent to:
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD SUITE 1414 LOS ANGELES, CA 90045

SUPERIOR COURT
ORIGINAL FILED

☑ Bond upon Qualifying    ☐ Additional Bond

Premium  100
Per Annum

**KNOWN ALL MEN BY THESE PRESENTS:**
That we, MARK WARREN PEARY as Principal, and the AMERICAN CONTRACTORS INDEMNITY COMPANY as Surety, are held and firmly bound unto The State of California in the sum of SIX THOUSAND DOLLARS ($6,000.00) for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally, firmly by these presents.

**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,**
**WHEREAS,** an order was duly made and entered by the Superior Court of the State of California, for the County of LOS ANGELES ON AUGUST 25, 2003.
☑ Appointing the above Principal, Executor of the estate of JOSEPH SHUSTER Deceased.

☐ Directing the said Principal to execute an additional bond according to law in the sum above named.

**NOW, THEREFORE,** if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation shall be void, otherwise to remain in full force and effect.

Signed and dated at ____Santa Fe, New Mexico____    ~~California~~ on __September 30, 2003__
                          (Place)                                              (Date)

_Mark Warren Peary_
MARK WARREN PEARY, as Principal

AMERICAN CONTRACTORS INDEMNITY COMPANY
IN WITNESS WHEREOF, The corporate seal and name of said Surety Company is hereto affixed and attested by JEFF AASE, who declares under penalty of perjury that he is duly authorized Attorney-in-Fact acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

By: ____JEFF AASE____    /s/ ____    _____
         JEFF AASE                                Attorney-in-Fact

BOND UPON QUALIFYING                Q 0502

COPY

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL, A Law Corporation<br>JOHN D. PETTKER (SBN 42346)<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901<br>TELEPHONE NO.: 213-895-4900   FAX NO. *(Optional):* 213-895-4921 fax<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* MARK WARREN PEARY, Petitioner | SUPERIOR COURT<br><br>OCT 21 2003<br><br>ORIGINAL FILED |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   LOS ANGELES
STREET ADDRESS:   111 North Hill Street
MAILING ADDRESS:   111 North Hill Street
CITY AND ZIP CODE:   Los Angeles, CA 90012
BRANCH NAME:   Central District

| ESTATE OF *(Name):*   JOSEPH SHUSTER, also known as<br>JOE SHUSTER<br>                                                              DECEDENT | |

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>and Acknowledgment of Receipt | CASE NUMBER:<br>BP080635 |

## DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

### 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

### 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>DE-147 [Rev. January 1, 2002]

DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE
(Probate)


Legal
Solutions
Plus

Probate Code, § 8404

**SD 00504**

| ESTATE OF (Name):  JOSEPH S. .STER, also known as  JOE SHUSTER | CASE NUMBER:  BP080635 |
|---|---|
| DECEDENT | |

d.  **File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

## 3. NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

## 4. INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

## 5. RECORD KEEPING

a.  **Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

b.  **Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

## 6. CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. **When in doubt, contact your attorney.**

| NOTICE: | 1. | This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary. |
|---|---|---|
| | 2. | If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions. |

## ACKNOWLEDGMENT OF RECEIPT

1. I have petitioned the court to be appointed as a personal representative.

2. My address and telephone number are (specify):    51 Camino Cabo, Santa Fe, New Mexico 87508
Telephone:  505-466-4551

3. I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date: September 30, 2003

MARK WARREN PEARY
(TYPE OR PRINT NAME)                                                                           (SIGNATURE OF PETITIONER)

Date:

Q 0504

(TYPE OR PRINT NAME)                                                                           (SIGNATURE OF PETITIONER)

| **CONFIDENTIAL INFORMATION:** If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).) |
|---|

DE-147 [Rev. January 1, 2002]         **DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE**         Page 2 of 2
(Probate)

SD 00505



CONFIDENTIAL

DE-147S

| ESTATE OF (Name):  JOSEPH SHUSTER, also known as | CASE NUMBER: |
|---|---|
| JOE SHUSTER                                    DECEDENT | BP080635 |

## CONFIDENTIAL STATEMENT OF BIRTH DATE
## AND DRIVER'S LICENSE NUMBER

(Supplement to *Duties and Liabilities of Personal Representative* (Form DE-147))

*(NOTE: This supplement is to be used if the court by local rule requires the personal representative to provide a birth date and driver's license number. Do not attach this supplement to Form DE-147.)*

This separate *Confidential Statement of Birth Date and Driver's License Number* contains confidential information relating to the personal representative in the case referenced above. This supplement shall be kept separate from the *Duties and Liabilities of Personal Representative* filed in this case and shall not be a public record.

INFORMATION ON THE PERSONAL REPRESENTATIVE:

1. Name:  MARK WARREN PEARY

2. Date of birth:  01-14-62

3. Driver's license number: 537150487                   State:  New Mexico

```
                    TO COURT CLERK:
        THIS STATEMENT IS CONFIDENTIAL. DO NOT FILE
    THIS CONFIDENTIAL STATEMENT IN A PUBLIC COURT FILE.
```

Q 0505

Form Adopted for Mandatory Use
Judicial Council of California
DE-147S [New January 1, 2001]

CONFIDENTIAL SUPPLEMENT TO DUTIES AND
LIABILITIES OF PERSONAL REPRESENTATIVE
(Probate)

Legal
Solutions
Plus

Probate Code, § 8404

EXHIBIT G
743

SD 00506

OFFICES OF

# MARC TOBEROFF

July 10, 2003

*Privileged & Confidential*

<u>Via Federal Express</u>

Jean Peavy
Warren Peary
51 Camino Cabo
Sante Fe, NM 87508

Dear Jean and Warren:

Enclosed please find for your review the documents to probate the Estate of Joseph Shuster and to appoint Warren as Executor of such Estate. The documents have been prepared by John Pettker, Esq. of the Rodi, Pollock law firm (the Trusts and Estates specialist we retained) with my input regarding relevant copyright matters.

Please follow very carefully the directions set forth in the Rodi Pollock cover letter dated July 8, 2003 in executing the documents as indicated and check both front and back of each document enclosed. The Declination by Dawn Peavy only relates to her not wanting to be the Executor, not to her entitlement to any share of any assets or moneys under Joe Shuster's or Jean Peavy's will. (I have timed the sending of these documents so that Dawn can execute the Declination while she is visiting you this weekend and thus I will receive for filing all the required executed documents together.)

I have also enclosed the legal retainer agreement requested by Rodi Pollock for Warren's signature along with mine. Although I am covering this legal expense pursuant to our Agreement (and this is referenced in the Rodi Pollock agreement) they have asked for your signature as well on their retainer agreement to reflect that you have authorized them to probate the Estate.

Once you have reviewed and fully executed the enclosed documents as indicated, please federal express the documents to me (feel free to use my account number) whereupon I will forward them to Rodi Pollock for filing with Court.

Please call me immediately to confirm receipt of this important package and to ask me any questions regarding the enclosed.

Best regards,

Marc Toberoff

Q 0506

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101
MToberoff@ipww.biz

**Privileged & Confidential
All Rights Reserved**

SD 00507

**EXHIBIT G**
744

JUN-08-03  02:27pm  From-                                                    T-749  P.01  F-604

## RODI POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

JOHN D. CAHILL
JOHN O. PETTKER
WILLIAM R. CHRISTIAN
HENRY P. PRAMOV, JR.
ALLAN E. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE S. NORWOOD
PRIYA G. BHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

KARL B. RODI (1905-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1896-1975)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIER
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-P1

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:    Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following revised *original* probate documents appointing Mark Warren Peary as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.    Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.    Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative;

c.    Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peary;

d.    Letters Testamentary;

e.    Duties and Liabilities of Personal Representative; and

d.    Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peary sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do not date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Q 0507

Privileged & Confidential
All Rights Reserved

SD 00508

EXHIBIT G
745

Marc Toberoff
July 8, 2003
Page 2

signature, along with the Nomination of Personal Representative for Dawn L. Peavy's signature and return.

I will be petitioning the court for limited authority for Mr. Peary to administer the estate under the Independent Administration of Estates Act. In view of the fact that there is a possibility that the court may not accept the Will for probate, and that Mr. Peary is not a resident of California, the court may require that he furnish a minimum bond. Therefore, I have also enclosed bonding documents to be completed and signed by Mr. Peary.

Upon our receipt of these documents we will submit the Petition for Probate to the court and publish the initiation of the probate in the appropriate newspaper. The court hearing on the Petition will be scheduled to occur approximately 4 weeks after our filing of these documents.

Thank you for giving our firm the opportunity to assist you in this probate matter. Please feel free to call me if you have any questions.

Sincerely,

John D. Pettker

JDP:muc
Enclosures
261509_1.doc

Q 0508

Privileged & Confidential
All Rights Reserved

SD 00509

EXHIBIT G
746

# Confirmation Report - Memory Send

```
                                    Page      : 001
                                    Date & Time: Jul-15-03  02:11pm
                                    Line 1    :
                                    Machine ID :
```

| | | |
|---|---|---|
| Job number | : | 035 |
| Date | : | Jul-15 02:09pm |
| To | : | ☎915054664551 |
| Number of pages | : | 002 |
| Start time | : | Jul-15 02:09pm |
| End time | : | Jul-15 02:11pm |
| Pages sent | : | 002 |
| Status | : | OK |

Job number    : 035          *** SEND SUCCESSFUL ***

Jul-08-03  02:27pm  From-                                    T-749   P.01   F-604

---

**RODI·POLLOCK**

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
Los Angeles, California 90071-2901
TEL (213) 895-4900

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

    Re:    Estate of Joseph Shuster

Dear Marc:

    Pursuant to our conversation yesterday afternoon, I am enclosing the following revised original probate documents appointing Mark Warren Peavy as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.     Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.     Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peavy as Personal Representative;

c.     Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peavy;

d.     Letters Testamentary;

e.     Duties and Liabilities of Personal Representative; and

d.     Bond Application.

    Both Mr. Peavy and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peavy sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do not date either of these documents.

    Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peavy as Personal Representative for Jean Adele Peavy's review and

Q 0509

**Privileged & Confidential**
**All Rights Reserved**

SD 00510

**EXHIBIT G**
**747**

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
(213) 895-4900

TELEPHONE AND FAX NOS.: (213) 895-4921

JOHN D. PETTKER, Esq. (SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

ATTORNEY FOR (Name): MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF (Name): JOSEPH SHUSTER, also known as JOE SHUSTER
/lost
DECEDENT

PETITION FOR
[X] Probate of Will and for Letters Testamentary
[ ] Probate of Will and for Letters of Administration with Will Annexed
[ ] Letters of Administration
[ ] Letters of Special Administration
[X] Authorization to Administer Under the Independent Administration of Estates Act [X] with limited authority

CASE NUMBER:

HEARING DATE:

DEPT.:          TIME:

1. Publication will be in (specify name of newspaper): DAILY JOURNAL
   a. [X] Publication requested.    b. [ ] Publication to be arranged.

2. Petitioner (name of each):    MARK WARREN PEARY    requests
   a. [X] decedent's will and codicils, if any, be admitted to probate.
   b. [X] (name): MARK WARREN PEARY
      be appointed (1) [X] executor                      (3) [ ] administrator
                   (2) [ ] administrator with will annexed   (4) [ ] special administrator
      and Letters issue upon qualification.
   c. [X] that [ ] full [X] limited    authority be granted to administer under the Independent Administration of Estates Act.
   d. (1) [X] bond not be required for the reasons stated in item 3d.
      (2) [ ] $                       bond be fixed. It will be furnished by an admitted surety insurer or as otherwise provided by law.
          (Specify reasons in Attachment 2 if the amount is different from the maximum required by Probate Code section 8482.)
      (3) [ ] $                       in deposits in a blocked account be allowed. Receipts will be filed. (Specify institution and location):

3. a. Decedent died on (date): July 30, 1992    at (place): West Los Angeles, California
      (1) [X] a resident of the county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above located at (specify location permitting publication in the newspaper named in item 1):
   b. Street address, city, and county of decedent's residence at time of death (specify): 11944 Montana Avenue #305, West Los Angeles, County of Los Angeles, California 90049
   c. Character and estimated value of the property of the estate:
      (1) Personal property:              $    None
      (2) Annual gross income from
          (a) real property:              $    None
          (b) personal property:          $    None
              Total:                       $    None
      (3) Real property: $ None                    (If full authority under the Independent Administration of Estates Act is requested, state the fair market value of the real property less encumbrances.)
   d. (1) [X] Will waives bond. [ ] Special administrator is the named executor and the will waives bond.
      (2) [X] All beneficiaries are adults and have waived bond, and the will does not require a bond. (Affix waiver as Attachment 3d(2).)
      (3) [X] All heirs at law are adults and have waived bond. (Affix waiver as Attachment 3d(3).)    Q 0510
      (4) [ ] Sole personal representative is a corporate fiduciary or an exempt government agency.
   e. (1) [ ] Decedent died intestate.
      (2) [X] Copy of decedent's will dated: 6/28/1988 [ ] codicils dated:           are affixed as Attachment 3e(2).
          [X] The will and all codicils are self-proving (Prob. Code, § 8220).
                                    (Continued on reverse)

Form Approved by the
Judicial Council of California
DE-111 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

PETITION FOR PROBATE

Legal
Solutions
Plus

Probate Code, §§ 8002, 10450

Q 0510

SD 00511

ESTATE OF (Name): JOSEPH SHUST    also known as JOE
SHUSTER

CASE NUMBER:

DECEDENT

3. f. **Appointment of personal representative** (check all applicable boxes):

Include in Attachment 3e(2) a typed copy of a handwritten will and a translation of a foreign language will.

(1) Appointment of executor or administrator with will annexed:

   (a) [X] Proposed executor is named as executor in the will and consents to act.

   (b) [ ] No executor is named in the will.

   (c) [ ] Proposed personal representative is a nominee of a person entitled to Letters. (Affix nomination as Attachment 3f(1)(c).)

   (d) [X] Other named executors will not act because of [ ] death [X] declination [ ] other reasons (specify in Attachment 3f(1)(d)).

(2) Appointment of administrator:

   (a) [ ] Petitioner is a person entitled to Letters. (If necessary, explain priority in Attachment 3f(2)(a).)

   (b) [ ] Petitioner is a nominee of a person entitled to Letters. (Affix nomination as Attachment 3f(2)(b).)

   (c) [ ] Petitioner is related to the decedent as (specify):

(3) [ ] Appointment of special administrator requested. (Specify grounds and requested powers in Attachment 3f(3).)

g. Proposed personal representative is a [ ] resident of California [X] nonresident of California (affix statement of permanent address as Attachment 3g) [X] resident of the United States [ ] nonresident of the United States.

4. [X] Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

5. a. The decedent is survived by (check at least one box in each of items (1) - (3))

  (1) [ ] spouse [X] no spouse as follows: [X] divorced or never married [ ] spouse deceased

  (2) [ ] child as follows: [ ] natural or adopted [ ] natural adopted by a third party [X] no child

  (3) [ ] issue of a predeceased child [X] no issue of a predeceased child

  b. Decedent [ ] is [X] is not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. (See Prob. Code, § 6454.)

6. (Complete if decedent was survived by (1) a spouse but no issue (only a or b apply), or (2) no spouse or issue. Check the first box that applies):

  a. [ ] Decedent is survived by a parent or parents who are listed in item 8.

  b. [X] Decedent is survived by issue of deceased parents, all of whom are listed in item 8.

  c. [ ] Decedent is survived by a grandparent or grandparents who are listed in item 8.

  d. [ ] Decedent is survived by issue of grandparents, all of whom are listed in item 8.

  e. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.

  f. [ ] Decedent is survived by next of kin, all of whom are listed in item 8.

  g. [ ] Decedent is survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.

  h. [ ] Decedent is survived by no known next of kin.

7. (Complete only if no spouse or issue survived decedent) Decedent [X] had no predeceased spouse [ ] had a predeceased spouse who (1) [ ] died not more than 15 years before decedent owning an interest in real property that passed to decedent, (2) [ ] died not more than 5 years before decedent owning personal property valued at $10,000 or more that passed to decedent, (3) [ ] neither (1) nor (2) apply. (If you check (1) or (2), check only the first box that applies):

  a. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.

  b. [ ] Decedent is survived by a parent or parents of the predeceased spouse who are listed in item 8.

  c. [ ] Decedent is survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.

  d. [ ] Decedent is survived by next of kin of the decedent, all of whom are listed in item 8.

  e. [ ] Decedent is survived by next of kin of the predeceased spouse, all of whom are listed in item 8.

8. Listed in Attachment 8 are the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person.

9. [XX] Number of pages attached: ____9____

Date:

▶_____

(SIGNATURE OF ATTORNEY*)

* (Signature of all petitioners also required (Prob. Code, § 1020).)    JOHN D. PETTKER, Esq. (SBN 42346)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

__MARK WARREN PEARY_____    ▶_____

(TYPE OR PRINT NAME)    (SIGNATURE OF PETITIONER)

_____    ▶_____

(TYPE OR PRINT NAME)    (SIGNATURE OF PETITIONER)

DE-111 [Rev. January 1, 1998]    **PETITION FOR PROBATE**    Page two

Q 0511

SD 00512

**EXHIBIT G**
**749**

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 2c
### Requested Additional Power

<u>Requested Additional Power</u>
    Petitioner requests that the court grant him the following power in addition to the general powers conferred upon him by law and under the Independent Administration of Estates Act: *the power to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(c) of the United States Copyright Act, 17 U.S.C. §304(c)(2)(D), and to maintain and defend on behalf of the decedent and the estate all proceedings necessary or appropriate in connection with this action.*

Q 0512

261503_1.doc

SD 00513

**EXHIBIT G**
**750**

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 2d(1), 3(c) and 3(d)(1), (2) and (3)

No bond should be required of petitioner to act as Executor, or if a bond is required by the Court, it should be for a nominal amount, for the following reasons:

1.    The first named Executor, Jean Adele Peavy, has signed and filed a Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative. Jean Adele Peavy, who is the sister of the decedent, is also the sole beneficiary under the decedent's Will and the sole heir at law of the decedent's estate under the laws of intestacy.

2.    Petitioner is the alternate named Executor under the decedent's Will, and the decedent's Will waives bond.

3.    Petitioner, who is the son of Jean Adele Peavy, is the nephew of the decedent.

4.    A probate proceeding with respect to the decedent's estate would be unnecessary but for the fact that a personal representative of his estate needs to be appointed for the purpose of *terminating prior transfers of the decedent's copyright(s) pursuant to Section §304(c) of the United States Copyright Act, 17 U.S.C. §304(c)(2)(D)*. This right of the personal representative of the decedent's estate to terminate prior transfers of the decedent's copyright(s) was enacted into federal law as part of the Sonny Bono Copyright Act effective October 27, 1998. The purpose of such new law, enacted over six years after the decedent's death, is to give authors and their estates the power to recover previously assigned copyrights within time limits delineated in the statute.

5.    All assets of the decedent, with the exception of the decedent's interest in and to *the copyrights*, which currently have an undetermined value, were of minimal value and transferred through a §13101 affidavit by Jean Adele Peavy shortly after the decedent's death on July 30, 1992.

Dated: _____, 2003

_____
MARK WARREN PEARY



261503_1.doc

Q 0513

**EXHIBIT G**
**751**

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

ATTACHMENT 3e(2)
*(Lost)* Last Will and Testament

<u>Grounds for Admission of *Lost* Will</u>

The decedent died more than 10 years ago on July 30, 1992. Petitioner and other family members have made a diligent and extensive search for the original Will executed by the decedent on June 28, 1988, but have been unable to find it. Petitioner has only found a copy of such Will, which he is submitting for probate as the decedent's lost Will. Petitioner believes that the original of such Will has been lost or inadvertently destroyed. There would be no reason for the decedent to have revoked such Will by destroying it, because the terms of the Will replicate the result if the decedent died intestate. Under both the Will and the laws on intestacy, petitioner's mother, Jean Adele Peavy, who is the decedent's sister and sole surviving heir at law, would be the sole beneficiary of the decedent's estate and, but for her declination to act, would be entitled to be appointed personal representative. Further, under both the decedent's Will and the laws of intestacy, by reason of the declinations to act that have been filed concurrently with this petition, petitioner is entitled to be appointed personal representative.

The decedent never married and never had any issue.

261503_1.doc

Q 0514

SD 00515

EXHIBIT G
752

THE

Last Will and Testament of

*Joseph A. Shuster*

Dated *June 28* 19 *88*

Q 0515

SD 00516

**EXHIBIT G**
**753**

# Last Will and Testament of

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, I __JOSEPH SHUSTER__

of _____ W. Los Angeles, California _____

being of sound and disposing mind and memory, and not acting under duress, menace, fraud or the undue influence of any person whomsoever, do make, publish and declare this my Last Will and Testament.

### I.

I hereby declare that I am the __brother__ of __JEAN ADELE PEAVY__

at the time of the execution of this Will.

### II.

I make no bequest, gift or devise to my children named in Paragraph I, or to any other child or children hereafter born to or adopted by me, except as hereinafter stated, knowing their __N/A__ [mother, or father] will provide for them.

### III.

I hereby direct and order that all just debts for which proper claims are filed against my estate, and the expenses of my last illness and funeral, be paid by my exec__rix__ as soon after my death as is practicable; provided, however, that this direction shall not authorize any creditor to require payment of any debt or obligation prior to its normal maturity in due course.

### IV.

I give, devise and bequeath unto __JEAN ADELE PEAVY__ all of the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated. In the event that __Jean Adele Peavy__ shall predecease me, or in the event that both __Jean Adele Peavy__ and I shall die as a result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, __MARK WARREN PEARY__.

Q 0516

### V.

I hereby nominate and appoint my __sister__ __Jean Adele Peavy__, executrix of this my Last Will and Testament, to act without bond. In the event that my __sister__ is for any reason unable or unwilling to act as executrix hereof, I nominate and appoint __Mark Warren Peary__ to act as executor also without bond.

SD 00517

VI.

I further direct that my estate be settled without the intervention of any court, except to the extent required by law, and that my executrix settle my estate in such a manner as shall seem best and most conveniently to her, and I hereby empower my executrix to mortgage, lease sell, exchange and convey the personal and real property of my estate without an order of court for that purpose and without notice, approval or confirmation and in all other respects to administer and settle my estate without the intervention of court.

Q 0517

SD 00518

**EXHIBIT G**
**755**

VII.

I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my Last Will and Testament.

In Witness Whereof I have hereunto set my hand this _28_ day of _June_ 19_38_.

_Joseph Shuster_
Testator

STATE OF CALIFORNIA
County of _Los Angeles_ } ss.

Each of the undersigned, being first duly sworn on oath, states that on this _28_ day of _June_, 19_38_:

(1) I am over the age of eighteen (18) years and competent to be a Witness to the Will of _JOSEPH SHUSTER_ (the Testator___);

(2) The Testator___, in my presence and in the presence of the other Witnesses whose signatures appear below:

(a) Declared the foregoing instrument consisting of _one_ pages, of which this is the last to be _his_ Will;

(b) Requested me and the other Witnesses to act as Witnesses to _his_ Will and to make this affidavit; and

(c) Signed such instrument;

(3) I believe the Testator___ to be of sound mind, and that in so declaring and signing, _he_ was not acting under any duress, menace, fraud, or undue influence;

(4) The other witnesses and I, in the presence of the Testator___ and of each other now affix our signatures as Witnesses to the Will and make this affidavit;

_Tom Fenaughty_                          _Robert E. Williams_
Witness                                  Witness
3374 Overland Ave #1                     3545 Mentone Ave #3
Address                                  Address
L.A.  Ca.  90064                         Los Angeles California 90034

Witness

Address                                                          Q 0518

SUBSCRIBED & SWORN to before me this _28_ day of _June_, 19_88_.

_F. Patrick Hagerty_

Notary Public in and for the State of _California_,
residing at _Santa Monica, Calif._

OFFICIAL SEAL
F. PATRICK HAGERTY
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires April 23, 1991.

EXHIBIT G
756

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 3g
### Nonresident of California and Permanent Address

    I, Mark Warren Peary, the proposed personal representative, am a non-resident of California. I reside in the State of New Mexico at the following residence address:

<div align="center">

51 Camino Cabo
Santa Fe, NM 87508

</div>

    I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

<div align="right">

_____
MARK WARREN PEARY

</div>

S
H

Q 0519

261503_1.doc

SD 00520

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas 79936 | Niece | Adult |

Q 0520

261503_1.doc

SD 00521

**EXHIBIT G**
**758**

RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
JOHN D. PETTKER (SBN 42346)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone: (213) 895-4900
Facsimile: (213) 895-4921

Attorneys for MARK WARREN PEARY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL

In re the Matter of the Estate of

JOSEPH SHUSTER, also known as
JOE SHUSTER,

                                    Decedent.

CASE NO.

DECLINATION TO ACT AS PERSONAL
REPRESENTATIVE AND WAIVER OF BOND
OF MARK WARREN PEARY AS PERSONAL
REPRESENTATIVE

I, JEAN ADELE PEAVY, state as follows:

1.    I am the only sibling of the decedent, JOSEPH SHUSTER. The decedent's and my parents are both deceased, having predeceased the decedent. I have two children, both of whom survived the decedent. They are Mark Warren Peary and Dawn L. Peavy.

2.    I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am nominated to act as Executor under such Will.

3.    I hereby decline to serve as personal representative of the decedent's estate, whether as Executor of the decedent's Will or Administrator of his estate.

4.    I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as

Q 0521

1
DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL REPRESENTATIVE

SD 00522

EXHIBIT G
759

1    Executor of the decedent's Will or Administrator of his estate.

2        Dated:_____, 2003

3

4                                        _____

5                                        JEAN ADELE PEAVY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    261504_1.doc

ROD, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

Q 0522

2

DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL

SD 00523

1  RODI, POLLOCK, PETTKER, GALBRAITH
   & CAHILL, A Law Corporation
2  JOHN D. PETTKER (SBN 42346)
   444 South Flower Street, Suite 1700
3  Los Angeles, California 90071-2901
   Telephone: (213) 895-4900
4  Facsimile: (213) 895-4921

5  Attorneys for MARK WARREN PEARY

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             NOMINATION OF PERSONAL REPRESENTATIVE,
13                                             DECLINATION TO ACT, AND WAIVER OF BOND
                                               OF MARK WARREN PEARY
14  JOSEPH SHUSTER, also known as
    JOE SHUSTER
15

16

17                          Decedent.

18                                                         Q 0523
19      I, DAWN L. PEAVY, state and declare as follows:

20      1.    I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,

21  being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

22      2.    If the decedent's Will is not admitted to probate and an Executor thereof is not

23  appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the

24  decedent's estate, I am a person entitled to equal priority for appointment as the personal

25  representative of the decedent's estate with my brother, MARK WARREN PEARY.

26      3.    If for any reason MARK WARREN PEARY is not appointed by the Court as

27  Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,

28  New Mexico, to serve as the personal representative of the decedent's estate without the

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

1

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD-00524

EXHIBIT G
761

1  requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465
2  of the California Probate Code, and I decline to act as such personal representative.
3      4.      My intent in making this nomination is to ensure the appointment of a person that I
4  trust to serve as the personal representative of my uncle's estate.
5      I declare under penalty of perjury under the laws of the State of California, that the
6  foregoing is true and correct.
7      Executed on _____, 2003, in El Paso, Texas.

8
9                                      _____
10                                     DAWN L. PEAVY
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28  261505_1.doc                                          Q 0524

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

2

SD 00525

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state car number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, state car number, and address): (213) 895-4900    **TELEPHONE AND FAX NOS.:** (213) 895-4921

JOHN D. PETTKER, Esq. (SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

**ATTORNEY FOR** (Name): MARK WARREN PEARY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
**STREET ADDRESS:** 111 N. Hill Street
**MAILING ADDRESS:** 111 N. Hill Street
**CITY AND ZIP CODE:** Los Angeles, CA 90012
**BRANCH NAME:** Central District

**ESTATE OF** (Name): JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

**CASE NUMBER:**

## LETTERS

- [ ] TESTAMENTARY
- [ ] OF ADMINISTRATION WITH WILL ANNEXED
- [ ] OF ADMINISTRATION
- [ ] SPECIAL ADMINISTRATION

### LETTERS

1. [X] The last will of the decedent named above having been proved, the court appoints (name):
   MARK WARREN PEARY
   a. [ ] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints (name):

   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate*.
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on (date):

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [ ] with full authority
   [X] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

| (SEAL) | Date: |
|---|---|
| | Clerk, by |
| | (DEPUTY) |

### AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   *(Name and title):*

4. Executed on (date):
   at (place):                                    , California.

   ▶ _____
   (SIGNATURE)
   MARK WARREN PEARY

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date:              Q 0525 |
|---|---|
| | Clerk, by |
| | (DEPUTY) |

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

**LETTERS**
(Probate)

Legal Solutions Plus

Probate Code, §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

SD 00526

**EXHIBIT G**

**763**

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JOHN D. PETTKER, Esq.(SBN 42346) RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL A Law Corporation 444 South Flower Street, Suite 1700 Los Angeles, California 90071-2901 TELEPHONE NO.: (213) 895-4900    FAX NO. *(Optional):* (213) 895-4921 E-MAIL ADDRESS *(Optional):* ATTORNEY FOR *(Name):* MARK WARREN PEARY | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS:    111 N. Hill Street
MAILING ADDRESS:    111 N. Hill Street
CITY AND ZIP CODE:    Los Angeles, CA 90012
BRANCH NAME:    Central District

ESTATE OF *(Name):*    JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

# DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

## 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

## 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Page 1 of 2

Q 0526

Form Adopted for Mandatory Use
Judicial Council of California
DE-147 [Rev. January 1, 2002]

DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE
(Probate)

Legal Solutions ⊕ Plus

Probate Code, § 8404

SD 00527

**EXHIBIT G**
**764**

ESTATE OF *(Name):*  JOSEPH SHUSTER, also known as JOE SHUSTER

CASE NUMBER:

DECEDENT

**d.  File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

## 3.  NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative.  If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

## 4.  INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

## 5.  RECORD KEEPING

**a.  Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate.  You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction.  You must describe in detail what you have left after the payment of expenses.

**b.  Court review**
Your account will be reviewed by the court.  Save your receipts because the court may ask to review them.  If you do not file your accounts as required, the court will order you to do so.  You may be removed as personal representative if you fail to comply.

## 6.  CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times.  You and your attorney are responsible for completing the estate administration as promptly as possible.  **When in doubt, contact your attorney.**

---

**NOTICE:   1.  This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary.**
**2.  If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions.**

---

## ACKNOWLEDGMENT OF RECEIPT

1.  I have petitioned the court to be appointed as a personal representative.

2.  My address and telephone number are *(specify):*   316 Horton Lane N.W., Albuquerque, NM 87114  *corrected*
                          (505) 466-4551

3.  I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:                                                                                    Q 0527

_____                      ►  _____
MARK WARREN PEARY
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PETITIONER)

Date:

_____                      ►  _____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PETITIONER)

---

**CONFIDENTIAL INFORMATION:**  If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).)

DE-147 [Rev. January 1, 2002]          **DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE**          Page 2 of 2
                                                    (Probate)

SD 00528

# AMERICAN CONTRACTORS INDEMNITY COMPANY

All Papers and notices may be served at
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA 90045

BOND NO. _____

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

IN THE MATTER OF

Case Number : _____

☐ Bond upon Qualifying      ☐ Additional Bond

Premium_____
Per Annum

KNOWN ALL MEN BY THESE PRESENTS:
That we,_____
as Principal, and the **AMERICAN CONTRACTORS INDEMNITY COMPANY** as Surety, are held and firmly bound
unto_____

in the sum of _____ Dollars ($_____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.
THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,
WHEREAS, an order was duly made and entered by the Superior Court of the State of California, for the County of
_____ on_____,
☐ Appointing the above Principal, _____ of
the estate of_____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

NOW, THEREFORE, if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.
Signed and dated at _____ California on _____
                              (Place)                                                                    (Date)

_____                    _____
                As Principal                                                          As Principal

                                                                 _____
                                                                               As Principal

                              AMERICAN CONTRACTORS INDEMNITY COMPANY
IN WITNESS WHEREOF, The corporate seal and name of said Surety Company is hereto affixed and attested by
_____ , who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

                    By: _____
                                          Q 0528                    _____
                                                                               Attorney-in-Fact

SD 00529

**EXHIBIT G**
766

# Probate & Fiduciary Bond Application

### BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC
900 Wilshire Blvd., Suite 1400 ● Los Angeles, CA 90017● (213) 628-2970 ● (213) 628-2977 Fax

Type of Bond: _____

Hearing Date: _____

Bond No.: _____

Amount : _____
Premium : _____
Case No.: _____

| | This application must be completed in detail before bond is approved for filing |

Estate Name: _____

**For Office Use Only**

| | By | Date |
|---|---|---|
| Underwritten: | | |
| Joint Control: | | |
| Approval: | | |

Name _____ Tel. # _____

Address _____

Social Security No. _____ Driver's License # _____

Your Net Worth _____ Date of Birth _____

Employer/Retired _____ Position/Previous Position _____

Address _____ City _____ State _____ Zip _____

Tel # _____ Length of Employment _____

Do you own a home? _____ Rent? _____ Other _____

Your Bank _____ Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____ Lost a civil judgment? _____

If yes, explain _____

Have you or your spouse filed personal bankruptcy? _____ If yes, when? _____

Are you indebted to Decedent/Conservatee? _____ If yes, amount $ _____

Secured? ☐ Yes  ☐ No  How? _____

Attorney handling this case: _____

Law Firm: _____ Phone No.: _____

Address: _____

Q 0529

SD 00530

# ESTATE INFORMATION

Name of Decedent/Conservatee/Minor _____

_____

Date of Birth of Conservatee/Minor _____

Estate Cash _____ Securities _____ Real Property _____

Other Assets _____ Annual Income (All Sources) _____

Bank where ESTATE ACCOUNT will be opened _____

Address _____

City _____ State _____ Zip code _____

Where will securities be kept? _____

<div align="center">(Safe deposit box, Brokerage – Including Name & Address)</div>

Does estate contain a going business? _____ If yes, name _____

Type _____ Will it be continued? _____

If yes, do you understand you must have a court order to continue business? _____

Do you understand that the first year's bond premium is not refundable? _____

Do you understand all increases and reductions of the bond must be ordered by the court? _____

Do you understand the bond is in effect until a final discharge is signed by the judge and a copy delivered to the surety? _____

Do you understand the bond premium is to be paid annually? _____

Do you understand you must retain an attorney throughout the administration of this estate? _____

Do you understand that there is a $10 service charge for a credit report? _____

## INDEMNITY AGREEMENT

The undersigned applicant and/or indemnitors hereby request that American Contractors Indemnity Company and its affiliates, subsidiaries, and reinsurers (hereinafter collectively referred to as "the Company") become surety for and furnish the above bond and such other bond or bonds as may now or hereafter be required by or on behalf of the above named applicant. I understand that a consumer report may be obtained about me now and from time to time in the future, and if I ask, I will be told if a consumer report has been obtained and the name and address of the agency that supplied the report, I also understand and agree that I will be responsible for the usual and customary fee if this consumer report is obtained. The undersigned declares under penalty of perjury that the information and statements contained in this application are true, and the undersigned jointly and severally in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds for the applicant, do for value received hereby covenant, promise and agree to pay the Company the usual annual premium; and we each jointly and severally agree to indemnify and keep indemnified the Company from and against any liability, and all losses, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree to place the Company in funds to meet any claim or demand before it shall be required to make payment. (1) Unless otherwise indicated herein, the bond applied for shall not be applicable to guarantee or insure the applicant's operation, management, or control of an ongoing business operation. (2) Additionally, the Company may at its discretion impose a "joint control" requirement as a condition of its issuance of the bond to the undersigned applicant. (3) In any event, issuance of a bond to the undersigned applicant is conditioned upon the applicant's retention of competent legal counsel throughout the duration of any period of time which the bond is in effect.

Signed this _____ day of _____ _____.

Q 0530

SD 00531

# BOND SERVICES OF CALIFORNIA, LLC

900 Wilshire Blvd., Suite 1400 Los Angeles, CA 90017-4700 (213) 628-2970 (213) 628-2977

| | |
|---|---|
| INVOICE NO: 185293 | BOND NO: 415223 |
| INVOICE DATE: 10/23/2003 | CASE NO: BP080635 |
| DUE DATE: Due Upon Receipt | FILE NO: 1054553 |
| BOND CLASS: PROBATE | ATTY PHONE: (213) 895-4900 |

ATTN: JOHN D. PETTKER
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
444 S. FLOWER ST., #1700
LOS ANGELES, CA 90071

TO: MARK WARREN PEARY
51 CAMINO CABO
SANTA FE, NM 87508-

| Company:<br>AMERICAN CONTRACTORS INDEMNITY COMPANY | | Effective Date:<br>08/25/2003 | Anniversary Date:<br>08/25/2004 |
|---|---|---|---|

| BOND NO.<br>415223 | AMOUNT OF BOND<br>$6,000.00 | PREMIUM<br>$100.00 | | |
|---|---|---|---|---|

| Description | | | |
|---|---|---|---|
| 1st Year Premium on bond as Executor of the estate of<br>Joseph Shuster, deceased.<br>TRW Charges<br>Cert. Charges | | 100.00<br><br>10.00<br>13.97 | |
| | | Total Due | 123.97 |

---

**TO ENSURE PROPER CREDIT, PLEASE DETACH THIS PORTION AND RETURN WITH REMITTANC**

Please Send Payment to:
BOND SERVICES OF CALIFORNIA, LLC
P.O. Box 51408 Los Angeles, CA 90051-5708

| | | | |
|---|---|---|---|
| BOND NO: 415223 | | PRINCIPAL NAME: MARK WARREN PEARY | |
| CASE NO: BP080635 | | ESTATE OF: JOSEPH SHUSTER | |
| FILE NO: 1054553 | | If you have a new address or telephone number please provide us<br>with the new information: | |
| INVOICE NO: 185293 | | | |
| INVOICE DATE: 10/23/2003 | | _____ | |
| TOTAL DUE: 123.97 | | _____ | |
| | | _____ | |
| AMOUNT ENCLOSE _____ | | | |

## INVOICE

Q 0531

SD 00532

**PACIFIC PICTURES CORPORATION**
23852 PACIFIC COAST HWY #555
MALIBU, CA  90265

601

16-68/1220
99

Date _15 - 27 - 03_

Pay to the
Order of_ Bond Service of California_                          | $ _123. 92_

_One Hundred Twenty Three_ $92/100$ ─────────────────── Dollars

**Bank of America.**
Westwood Village
930 Westwood Blvd
Los Angeles CA
310.247.2060

Customer Since
1997

For _bond # 415 223, file 1054 553_

⑆ 1 2 2 0 0 0 6 6 ⑆ 0 6 0 1 ⑈ 0 0 9 9 4 ⑈ 2 5 2 8 4 ⑈

Q 0532

SD 00533

**EXHIBIT G**
770

Jul-08-03  02:27pm  From-                                    T-749  P.01   F-604

## RODI·POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

JOHN D. CAHILL
JOHN D. PETTKER
WILLIAM R. CHRISTIAN
HENRY F. PRAMOV, JR.
ALLAN E. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE E. NORWOOD
PRIYA G. SHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

KARL B. RODI (1908-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1898-1973)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIERS
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-P1

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:   Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following revised original probate documents appointing Mark Warren Peary as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.   Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.   Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative;

c.   Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peary;

d.   Letters Testamentary;

e.   Duties and Liabilities of Personal Representative; and

d.   Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peary sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do not date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Privileged & Confidential
All Rights Reserved

Q 0533

SD 00534

EXHIBIT G
771

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District


ATTACHMENT 3e(2)
*(Lost)* Last Will and Testament


Grounds for Admission of *Lost* Will
    The decedent died more than 10 years ago on July 30, 1992. Petitioner and other family members have made a diligent and extensive search for the original Will executed by the decedent on June 28, 1988, but have been unable to find it. Petitioner has only found a copy of such Will, which he is submitting for probate as the decedent's lost Will. Petitioner believes that the original of such Will has been lost or inadvertently destroyed. There would be no reason for the decedent to have revoked such Will by destroying it, because the terms of the Will replicate the result if the decedent died intestate. Under both the Will and the laws on intestacy, petitioner's mother, Jean Adele Peavy, who is the decedent's sister and sole surviving heir at law, would be the sole beneficiary of the decedent's estate and, but for her declination to act, would be entitled to be appointed personal representative. Further, under both the decedent's Will and the laws of intestacy, by reason of the declinations to act that have been filed concurrently with this petition, petitioner is entitled to be appointed personal representative.

    The decedent never married and never had any issue.


Q 0534

261503_1.doc

SD 00535

EXHIBIT G
772

Jul-08-03  02:29pm   From-                                                    T-749   P.08/19   F-604

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 3g
### Nonresident of California and Permanent Address

I, Mark Warren Peary, the proposed personal representative, am a non-resident of California.  I reside in the State of New Mexico at the following residence address:

316 Horton Lane N.W.
Albuquerque, NM 87114

I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

_____
MARK WARREN PEARY



Q 0535

261503_1.doc

SD 00536

**EXHIBIT G**
**773**

Jul-08-03 02:29pm   From-                    _                              T-749  P.09/19  F-604

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas  79936 | Niece | Adult |

Q 0536

261503_1.doc

SD 00537

**EXHIBIT G**
**774**

Jul-08-03  02:29pm  From-                                      T-749  P.10/19  F-604

1   RODI, POLLOCK, PETTKER, GALBRAITH
    & CAHILL, A Law Corporation
2   JOHN D. PETTKER (SBN 42346)
    444 South Flower Street, Suite 1700
3   Los Angeles, California 90071-2901
    Telephone: (213) 895-4900
4   Facsimile: (213) 895-4921

5   Attorneys for MARK WARREN PEARY

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of        CASE NO.

12
                                             DECLINATION TO ACT AS PERSONAL
13                                           REPRESENTATIVE AND WAIVER OF BOND
                                             OF MARK WARREN PEARY AS PERSONAL
14  JOSEPH SHUSTER, also known as            REPRESENTATIVE
    JOE SHUSTER
15

16

17                          Decedent.

18

19  I, JEAN ADELE PEAVY, state as follows:

20      1.    I am the only sibling of the decedent, JOSEPH SHUSTER. The decedent's and my

    parents are both deceased, having predeceased the decedent. I have two children, both of whom
21
    survived the decedent. They are Mark Warren Peary and Dawn L. Peavy.
22
        2.    I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am
23
    nominated to act as Executor under such Will.
24
        3.    I hereby decline to serve as personal representative of the decedent's estate, whether
25
    as Executor of the decedent's Will or Administrator of his estate.
26
        4.    I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as
27

28                                                        Q 0537

                                         1
    DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
                                   REPRESENTATIVE

SD 00538

1    Executor of the decedent's Will or Administrator of his estate.

2        Dated:_____, 2003

3

4                                    _____

5                                    JEAN ADELE PEAVY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              Q 0538

28    261504_1.doc

2

DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL

SD 00539

ROD, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

EXHIBIT G
776

1  RODI, POLLOCK, PETTKER, GALBRAITH
   & CAHILL, A Law Corporation
2  JOHN D. PETTKER (SBN 42346)
   444 South Flower Street, Suite 1700
3  Los Angeles, California 90071-2901
   Telephone: (213) 895-4900
4  Facsimile: (213) 895-4921

5  Attorneys for MARK WARREN PEARY

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11

12  In re the Matter of the Estate of            CASE NO.

13                                               NOMINATION OF PERSONAL REPRESENTATIVE,
                                                 DECLINATION TO ACT, AND WAIVER OF BOND
14  JOSEPH SHUSTER, also known as                OF MARK WARREN PEARY
    JOE SHUSTER
15

16

17                         Decedent.

18                                                      Q 0539

19      I, DAWN L. PEAVY, state and declare as follows:

20      1.    I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,

21  being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

22      2.    If the decedent's Will is not admitted to probate and an Executor thereof is not

23  appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the

24  decedent's estate, I am a person entitled to equal priority for appointment as the personal

25  representative of the decedent's estate with my brother, MARK WARREN PEARY.

26      3.    If for any reason MARK WARREN PEARY is not appointed by the Court as

27  Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,

28  New Mexico, to serve as the personal representative of the decedent's estate without the

*(vertical text left margin)* RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL / A LAW CORPORATION / 444 SOUTH FLOWER STREET, SUITE 1700 / LOS ANGELES, CALIFORNIA 90071-2901 / TELEPHONE (213) 895-4900

1

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00540

**EXHIBIT G**
**777**

1  requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465

2  of the California Probate Code, and I decline to act as such personal representative.

3    4.    My intent in making this nomination is to ensure the appointment of a person that I

4  trust to serve as the personal representative of my uncle's estate.

5    I declare under penalty of perjury under the laws of the State of California, that the

6  foregoing is true and correct.

7    Executed on _____, 2003, in El Paso, Texas.

8

9    _____

10    DAWN L. PEAVY

Rod, Pollock, Pettker, Galbraith & Cahil
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 865-4900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    Q 0540

28  261505_1.doc

2

SD 00541

Jul-08-03  02:30pm  From-                                     T-749  P.14/19  F-604

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:<br>(213) 895-4900 | TELEPHONE AND FAX NOS.:<br>(213) 895-4921 | FOR COURT USE ONLY |
|---|---|---|
| JOHN D. PETTKER, Esq.(SBN 42346)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901<br>ATTORNEY FOR *(Name)*:  MARK WARREN PEARY | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:  111 N. Hill Street
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central District

ESTATE OF *(Name)*:   JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| LETTERS | CASE NUMBER: |
|---|---|
| [X] TESTAMENTARY        [ ] OF ADMINISTRATION<br>[ ] OF ADMINISTRATION WITH WILL ANNEXED  [ ] SPECIAL ADMINISTRATION | |

| LETTERS | AFFIRMATION |
|---|---|
| 1. [X] The last will of the decedent named above having been proved, the court appoints *(name)*:<br>MARK WARREN PEARY<br>  a. [ ] executor.<br>  b. [ ] administrator with will annexed.<br><br>2. [ ] The court appoints *(name)*:<br><br>  a. [ ] administrator of the decedent's estate.<br>  b. [ ] special administrator of decedent's estate<br>    (1) [ ] with the special powers specified in the *Order for Probate*.<br>    (2) [ ] with the powers of a general administrator.<br>    (3) [ ] letters will expire on *(date)*:<br><br>3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [ ] with full authority<br>[X] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).<br><br>4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order. | 1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).<br><br>2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.<br><br>3. [ ] INSTITUTIONAL FIDUCIARY *(name)*:<br><br>I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title)*:<br><br>4. Executed on *(date)*:<br>at *(place)*:                        , California.<br><br>Q 0541<br><br>▶ _____<br>(SIGNATURE)<br>MARK WARREN PEARY<br><br>CERTIFICATION<br>I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect. |

WITNESS, clerk of the court, with seal of the court affixed.

| [SEAL] | Date:<br><br>Clerk, by<br><br><br>_____<br>(DEPUTY) | [SEAL] | Date:<br><br>Clerk, by<br><br><br>_____<br>(DEPUTY) |
|---|---|---|---|

| Form Approved by the<br>Judicial Council of California<br>DE-150 [Rev. January 1, 1998]<br>Mandatory Use [1/1/2000] | LETTERS<br>(Probate) | Legal<br>Solutions<br>Plus | Probate Code, §§ 1001, 8403,<br>8405, 8544, 8545;<br>Code of Civil Procedure, § 2015.6 |

SD 00542

Jul-08-03  02:30pm  From-                                                      T-748  P.15/19  F-604

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):<br>JOHN D. PETTKER, Esq. (SBN 42346)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901<br>TELEPHONE NO.: (213) 895-4900    FAX NO. (Optional): (213) 895-4921<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): MARK WARREN PEARY | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF (Name):   JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

# DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

## 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

## 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

<div style="text-align:right">Q 0542</div>

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>DE-147 [Rev. January 1, 2002] | DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>(Probate) |  Legal Solutions Plus | Probate Code, § 8404 |
|---|---|---|---|

SD 00543

Jul-08-03  02:31pm  From-                                                T-749  P.16/19  F-604

| ESTATE OF *(Name)*:  JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
|---|---|
| DECEDENT | |

**d. File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

### 3. NOTICE TO CREDITORS
You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

### 4. INSURANCE
You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

### 5. RECORD KEEPING

**a. Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

**b. Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

### 6. CONSULTING AN ATTORNEY
If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. When in doubt, contact your attorney.

| NOTICE: | 1. This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary. |
|---|---|
| | 2. If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions. |

## ACKNOWLEDGMENT OF RECEIPT

1. I have petitioned the court to be appointed as a personal representative.

2. My address and telephone number are *(specify)*:  316 Horton Lane N.W., Albuquerque, NM 87114
(505) 466-4551

3. I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:

MARK WARREN PEARY
(TYPE OR PRINT NAME)                                    ▶ _____
                                                         (SIGNATURE OF PETITIONER)

Date:

                                                         Q 0543

_____                                  ▶ _____
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PETITIONER)

| CONFIDENTIAL INFORMATION: If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).) |
|---|

| DE-147 [Rev. January 1, 2002] | DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE (Probate) | Page 2 of 2 |
|---|---|---|

SD 00544

Jul-08-03 02:31pm    From-                                    T-749  P.17/19  F-604

# AMERICAN CONTRACTORS INDEMNITY COMPANY

All Papers and notices may be served at:                          BOND NO. _____
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA 90045

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

**IN THE MATTER OF**

Case Number : _____

☐ Bond upon Qualifying          ☐ Additional Bond

Premium _____
         Per Annum

**KNOWN ALL MEN BY THESE PRESENTS:**
That we,_____
as Principal, and the **AMERICAN CONTRACTORS INDEMNITY COMPANY** as Surety, are held and firmly bound
unto_____
in the sum of _____ Dollars ($_____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.
**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,**
**WHEREAS,** an order was duly made and entered by the Superior Court of the State of California, for the County of
_____ on _____
☐ Appointing the above Principal,_____ of
the estate of _____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

**NOW, THEREFORE,** if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.
Signed and dated at _____ California on _____
                              (Place)                                                              (Date)

_____              _____
                              As Principal                                                              As Principal

                                                                 _____
                                                                                                              As Principal

AMERICAN CONTRACTORS INDEMNITY COMPANY
IN WITNESS WHEREOF, The corporate seal and name of said Surety Company is herein affixed and attested by
_____, who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

              By: _____              Q 0544              _____
                                                                                    Attorney-in-Fact

SD 00545

Jul-08-03 02:31pm From-                          T-749  P.18/19  F-604

# Probate & Fiduciary Bond Application

**BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC**
900 Wilshire Blvd., Suite 1400 ⬥ Los Angeles, CA 90017⬥ (213) 628-2970 ⬥ (213) 628-2977 Fax

Type of Bond: _____
Hearing Date: _____

Bond No.: _____

| This application must be completed in detail |
| before bond is approved for filing |

Amount : _____
Premium : _____
Case No.: _____

Estate Name: _____
_____
_____

For Office Use Only
By: _____ Date: _____
Underwritten: _____
Joint Control: _____
Approval: _____

Name _____        Tel. # _____

Address _____

Social Security No. _____    Driver's License # _____

Your Net Worth _____         Date of Birth _____

Employer/Retired _____       Position/Previous Position _____

Address _____    City _____    State _____    Zip _____

Tel # _____    Length of Employment _____

Do you own a home? _____    Rent? _____    Other _____

Your Bank _____    Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____    Lost a civil judgment? _____

If yes, explain _____

Have you or your spouse filed personal bankruptcy? _____    If yes, when? _____

Are you indebted to Decedent/Conservatee? _____    If yes, amount $ _____

Secured?  ☐ Yes   ☐ No    How? _____

Attorney handling this case: _____

Law Firm: _____    Phone No.: _____

Address: _____

Q 0545

SD 00546

Jul-08-03  02:32pm  From-                                          T-749   P.19/19   F-804

# ESTATE INFORMATION

Name of Decedent/Conservatee/Minor _____

_____

Date of Birth of Conservatee/Minor _____

Estate Cash _____ Securities _____ Real Property _____

Other Assets _____ Annual Income (All Sources) _____

Bank where ESTATE ACCOUNT will be opened _____

Address _____

City _____ State _____ Zip code _____

Where will securities be kept? _____
                                (Safe deposit box, Brokerage— Including Name & Address)

Does estate contain a going business? _____ If yes, name _____

Type _____ Will it be continued? _____

If yes, do you understand you must have a court order to continue business? _____

Do you understand that the first year's bond premium is not refundable? _____

Do you understand all increases and reductions of the bond must be ordered by the court? _____

Do you understand the bond is in effect until a final discharge is signed by the judge and a copy delivered to the surety? _____

Do you understand the bond premium is to be paid annually? _____

Do you understand you must retain an attorney throughout the administration of this estate? _____

Do you understand that there is a $10 service charge for a credit report? _____

## INDEMNITY AGREEMENT

The undersigned applicant and/or indemnitors hereby request that American Contractors Indemnity Company and its affiliates, subsidiaries, and reinsurers (hereinafter collectively referred to as "the Company") become surety for and furnish the above bond and such other bond or bonds as may now or hereafter be required by or on behalf of the above named applicant. I understand that a consumer report may be obtained about me now and from time to time in the future, and if I ask, I will be told if a consumer report has been obtained and the name and address of the agency that supplied the report, I also understand and agree that I will be responsible for the usual and customary fee if this consumer report is obtained. The undersigned declares under penalty of perjury that the information and statements contained in this application are true, and the undersigned jointly and severally in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds for the applicant, do for value received hereby covenant, promise and agree to pay the Company the usual annual premium; and we each jointly and severally agree to indemnify and keep indemnified the Company from and against any liability, and all losses, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree to place the Company in funds to meet any claim or demand before it shall be required to make payment. (1) Unless otherwise indicated herein, the bond applied for shall not be applicable to guarantee or insure the applicant's operation, management, or control of an ongoing business operation. (2) Additionally, th' Company may at its discretion impose a "joint control" requirement as a condition of its issuance of the bond to th undersigned applicant. (3) In any event, issuance of a bond to the undersigned applicant is conditioned upon the appl' retention of competent legal counsel throughout the duration of any period of time which the bond is in effect.

Signed this _____ day of _____ _____.

SIGN
HER'

Q 0546

SD 00547

**JOANNE SIEGEL**
13929 MARQUESAS WAY #201A
MARINA DEL REY, CA 90292

March 12, 2003

Paul Levitz
President and Publisher
DC Comics
1700 Broadway
New York, New York 10019

Dear Paul,

Thank you for your letter of March 3, 2003. Our new attorneys will be in touch with you at the appropriate time. At such time, please direct all further communications to them.

Best,

Joanne Siegel

Q 0547

SD 00548

LAW OFFICES OF
# MARC TOBEROFF

July 15, 2003

Mark Warren Peary
51 Camino Cabo
Santa Fe, NM 87508

Re: Joe Shuster Probate

Dear Warren:

Enclosed please find a fully executed copy of the probate attorney's retainer for your files.

We're on our way!

Best,

Marc Toberoff

MK/rc

Encl.

Q 0548

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

Privileged & Confidential
All Rights Reserved

SD 00549

EXHIBIT G
786

LAW OFFICES OF
## MARC TOBEROFF

July 15, 2003

John Pettker, Esq.
Rodi, Pollock, Pettker, Galbraith & Cahill
444 South Flower Street, Suite 1700
Los Angeles, CA 90071-2901

Re: Joseph Shuster Probate

Dear John:

Please find enclosed one copy of the probate documents fully executed as directed.

I have also enclosed one fully executed copy of the retainer agreement.

I will be mailing the $2500 probate check tomorrow.

Very truly yours,

Marc Toberoff

MK/rc

Encl.

Q 0549

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

Privileged & Confidential
All Rights Reserved

SD 00550

EXHIBIT G
787

# Marc Toberoff

| | |
|---|---|
| **From:** | Mistylight3@cs.com |
| **Sent:** | Saturday, August 13, 2005 12:21 AM |
| **To:** | MToberoff@ipwla.com |
| **Subject:** | Burg letters |

Dear Marc,
As my mom explained when she called you today, I was too ill after my extensive medical tests to call you myself. I trust the two of you have fully discussed the letters which arrived by fax this evening.

There is no need to respond to Burg further, in fact please don't, but in case it ever comes up in the future, I want to you to know that when Terry Cunningham--who was seated a few seats from my mom--leaned over in that noisy screening hall and introduced herself to my mom she said that they had met many years ago at a party that had been thrown by Jennette Kahn [the woman who used to have the job that Paul Levitz has now]. There was a lot of talking all around us and my mother couldn't hear what Ms. Cunningham said so she had to repeat that they had met years ago more than once. She still couldn't hear Ms. Cunningham so I told her what she said and even then my mom did not remember her. My mother and father attended that party more than 10 years ago at a restaurant and met many, many people that night. My mother remembered the party but did not remember Ms. Cunningham. I did not attend the party and had never met the woman before ComicCon. For Burg to make the ridiculous statement, "...Terry Cunningham with whom your client has been acquainted for 15 years" gives the impression that my mom knew who she was--(she did not)--and that she has had ongoing personal contact with her for 15 years--(again, she did not). Burg's characterization is absolutely false. Furthermore, my mother did not ask Ms. Cunningham to get Paul--she simply asked whether he was in San Diego. If Terry Cunningham decided to go and get Paul so he could say hi to my mom it was something she chose to do, not the result of a request. If she said anything to my mom before she left, my mom could not hear her and she was surprised when Paul walked up and greeted us. Now the whole thing is turning into an argument between you and Burg. I hope we will not have to deal with this matter further.

Hope your weekend is a good one.
Sincerely,
Laura

Q 0550

Aug-12-05  09:13am  From-WEISSMAN WOLFF ETAL          310-550-7          T-530  P.02/03  F-840

**WWBCGE**

**VIA FAX:  (310) 246-3101**
**AND FIRST CLASS MAIL**

August 11, 2005

**David L. Burg**
a professional corporation
dburg@wwlp.com
310.860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California  90067

Re:     Siegel v. Warner Bros. Entertainment Inc., et al.
        U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
        Our File No. 2231.611

Dear Marc:

        This responds to your unsigned letter of August 4, 2005, regarding the contacts between Mr. Levitz and your clients. We write for the sole purpose of setting the record straight based on the facts as we know them.

        The "Terry" referred to in your letter is Terri Cunningham, with whom your client has been acquainted for 15 years. At the "Superman Returns" screening at Comic-con, Joanne Siegel (who happened to be sitting a few seats away from Ms. Cunningham) asked Ms. Cunningham if Mr. Levitz was in San Diego. After being advised that he was, Mrs. Siegel then said she would like to see him. Ms. Cunningham responded that she would attempt to get Mr. Levitz after the screening. After the screening concluded, Ms. Cunningham asked Mrs. Siegel whether she should attempt to find Mr. Levitz. Mrs. Siegel responded that she should and Ms. Cunningham proceeded to find Mr. Levitz and bring him over to where Mrs. Siegel was sitting. The conversation that you have complained about then ensued

        These are the facts as we know them, and we note that they are consistent with what you saw taking place from a "distance" of "a couple seats away." In this context, you can appreciate why we reacted the way we did to your claim

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD, NINTH FLOOR, BEVERLY HILLS, CA 90212 T. 310 858.7888 F: 310 550.7191 WWW.WWLP.COM
LAWYERS

312348_1.DOC                                                    Q 0551

Received  Aug-12-05  09:02am    From-310 550 7191           To-              Page 002

SD 00552

**EXHIBIT G**
**789**

Aug-12-05 09:13am From-WEISSMAN WOLFF ETAL 310-550-7...    T-530  P.03/03  F-840

Marc Toberoff, Esq.
August 11, 2005
Page 2

that Mr. Levitz "directly approached" your clients, and your unfounded accusation that Mr. Levitz engaged in "inappropriate" conduct, as neither is true.

It certainly is your prerogative to communicate to us your clients' desire that Mr. Levitz and DC Comics not contact them directly, but not under the pretext that Mr. Levitz initiated the most recent series of contacts, when in fact he did not. This does constitute manufacturing a false dispute and we stand by that characterization.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
          (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

Q 0552

312348_1.DOC

Received  Aug-12-05  09:02am    From-310 550 7191    To-    Page 002

SD 00553

Aug-12-05  09:14am  From-WEISSMAN WOLFF ETAL 310-550-7191    T-531  P.02/03  F-841



VIA FAX:  (310) 246-3101
AND FIRST CLASS MAIL

August 11, 2005

**David L. Burg**
a professional corporation
dburg@wwllp.com
310 860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California  90067

Re:    Siegel v. Warner Bros. Entertainment Inc., et al.
U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
Our File No. 2231.811

Dear Marc:

This responds to your letter of August 4, 2005, regarding your unauthorized meeting with Paul Levitz, President of DC Comics, on July 16, 2005 at Comic-con in violation of California Rule of Professional Conduct 2-100.

Your characterization of the events of July 16th does not comport with the facts. As you are aware, the conversation between you and Mr. Levitz took place at DC Comics' booth in a conference room at around 3:30 p.m. You and Mr. Levitz were alone in the conference room, although the fact that you went into the conference room alone with Mr. Levitz was witnessed by several people at the booth. This conversation went on for approximately 45 minutes and had nothing to do with speaking "in general terms with Mr. Levitz . . . in order not to appear rude." Rather, you were expressly engaged in an attempted settlement discussion with Mr. Levitz and, as such, your assertion that you have "always" refrained from discussion the "substance of the . . . litigation" directly with DC Comics is simply untrue."

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212 T. 310 858.7888 F. 310.550.7191 WWW.WWLLP.COM
LAWYERS

312351_1.DOC

Q 0553

Received  Aug-12-05  09:08am    From-310 660 7191    To-    Page  002

SD 00554

Marc Toberoff, Esq.
August 11, 2005
Page 2

Please let us know whether it is your position that you did not, in fact, have a private conversation with Mr. Levitz in a conference room at DC's booth at Comic-con.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
       (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

312351_1.DOC

Q 0554

SD 00555

EXHIBIT G
792

# LAW OFFICES OF MARC TOBEROFF

### A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

August 12, 2005

Via Fax: (310) 550-7191 and U.S. Mail

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

      Re: Siegel v. Warner Bros. Entertainment Inc. et al.
      U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)

Dear David:

    This will acknowledge receipt of your second letter to me of August 11, 2005, in which you once again attempt to "set the record straight" regarding your client's direct solicitation of our clients. Your efforts to extend and belabor this dialogue are not welcome and ultimately not in your client's interest as your letters only serve to antagonize our clients.

    Our clients inform us that your recital of the occurrences at Comic-Con are completely false. While our clients experienced the events which occurred, you did not. Our clients were made uncomfortable by your clients' solicitous contact both during and after Comic-Con, and specifically asked me to request that your clients cease further direct contact with them. Please, there is no need to respond as you have already stated your position, twice. I assume that your clients will adhere to this request.

                Very truly yours,

                Marc Toberoff

cc: Ms. Joanne Siegel
    Ms. Laura Siegel Larson
    James D. Weinberger, Esq.

Q 0555

SD 00556

EXHIBIT G
793

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

August 12, 2005

Via Fax: (310) 550-7191 and U.S. Mail

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

      Re: Siegel v. Warner Bros. Entertainment Inc. et al.
        U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)

Dear David:

      This will acknowledge receipt of your letter to me of August 11, 2005, in which you continue to erroneously belabor the point about my alleged "unauthorized meeting" with Paul Levitz of DC Comics. I dispute your self-serving characterization of events of which you have no personal knowledge. For your edification, I did not enter into any conference room alone with Mr. Levitz. Mr. Levitz came up to my clients and I as we were walking the Comic-Con floor. While I was talking to Laura Siegel Larson, Mr. Levitz ushered Joanne Siegel into a DC conference room, without me. I then followed them into the room with Laura and her two boys behind me. Laura then informed her mother that her boys wanted to attend a movie event upstairs, whereupon my clients left, leaving Mr. Levitz and me in the room. The events have none of the insidious characteristics you try to attribute to them.

      I already previously indicated to you in writing that I will not speak directly with your client about the substance of this action. There is nothing further that need be said on this subject.

                Very truly yours,

                Marc Toberoff

cc: James D. Weinberger, Esq.

Q 0556

SD 00557

**EXHIBIT G**
**794**




Confirmation Report — Memory Send

Page        : 001
Date & Time: Aug-12-05  05:47pm
Line 1      :
Machine ID  :

| | | |
|---|---|---|
| Job number | : | 554 |
| Date | : | Aug-12 05:46pm |
| To | : | ☎13108277227 |
| Number of pages | : | 003 |
| Start time | : | Aug-12 05:46pm |
| End time | : | Aug-12 05:47pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 554              **\*\*\* SEND SUCCESSFUL \*\*\***

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
LARRY B. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS
* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Laura Siegel Larson | FAX: (310) 827-7227 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 2 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

COMMENTS:

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0557

SD 00558

# Confirmation Report – Memory Send

Page : 001
Date & Time: Aug-12-05 06:00pm
Line 1 :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 557 |
| Date | : | Aug-12 05:57pm |
| To | : | ☎13108277227 |
| Number of pages | : | 009 |
| Start time | : | Aug-12 05:57pm |
| End time | : | Aug-12 06:00pm |
| Pages sent | : | 009 |
| Status | : | OK |

Job number : 557 *** SEND SUCCESSFUL ***

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

COMMENTS:

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

| | |
|---|---|
| TO: Laura Siegel Larson | FAX: (310) 827 7227 |
| FROM: Marc Toberoff | PAGES ( including cover ): # 9 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

FACSIMILE COVER PAGE

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS
*ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067
A PROFESSIONAL CORPORATION

TELEPHONE
(310) 246-3333
FACSIMILE
(310) 246-3101

LAW OFFICES OF MARC TOBEROFF

Q 0558

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| **TO:** Laura Siegel Larson | **FAX:** (310) 827 7227 |
| **FROM:** Marc Toberoff | **PAGES ( including cover ):** ~~8~~ 9 |
| **DATE :** 8/12/05 | **RE:** Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0559

SD 00560

**EXHIBIT G**
**797**

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Joanne Siegel | FAX: (310) 821-5894 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 7 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0560

SD 00561

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| **TO:** Joanne Larson | **FAX:** (310) 821-5894 |
|---|---|
| **FROM:** Marc Toberoff | **PAGES ( including cover ):** 2 |
| **DATE :** 8/12/05 | **RE:** Siegel vs. Warner Bros. |

**COMMENTS:**

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0561

SD 00562

## SUPERMAN – MARC TOBEROFF TIMELINE

*\*Please read closely. We have enclosed several supporting documents in our package to you, and very much hope you will spend some time reviewing them before you come to any potential settlement with Marc Toberoff, who represents the Siegels and the Schuster heirs in the ongoing Superman legal dispute with Time Warner and DC Comics.*

*The below information should save Time Warner potentially millions and millions of dollars, and, if you so choose, - have Marc Toberoff suspended, disgraced, --- if not ultimately disbarred --- from practicing law.*

*Toberoff being labeled as the "relentless crusader for artists' rights" is hardly that: he has devised a strategy whereas he has ultimately claimed much ownership of the Superman copyright personally as he can. And of course, he has done so without the knowledge and full disclosure to the Siegels and Schuster heirs, creators of Superman.*

***As it stands right now, the single person who would stand to gain the MOST in a settlement with Time Warner regarding the ongoing SUPERMAN legal dispute would not be the heirs themselves, but Marc Toberoff.***

*What you do with the below information is up to you. You should most certainly conduct your own investigation. We believe there are details within this timeline that will be of strong interest to you.*

*Consider it an early holiday gift.*

*(Also, please be aware that this timeline is written with the assumptions that the reader(s) are aware of the characters involved within the ongoing Superman legal dispute between Time Warner/DC Comics. The heirs to the SUPERMAN copyright are: the Siegels (Joanne, Laura & Michael), Jerry Siegel's heirs, who collectively have claims to 50% of the copyright to Superman, while the Schuster estate has claims on the other 50%.) Marc Toberoff currently represents both parties in ongoing litigation.*

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

In 2000 MT established a separate corporation entitled "Pacific Pictures Corporation" (PPC), with an address of 23852 Pacific Coast Hwy, Suite 555, Malibu, CA 90265. Tel: (310)-589-5151. You will see below that he established this business to solicit his services as an attorney.

In 2001, Marc Toberoff (MT) began researching Superman, who had rights, etc.

MT initially contacts Kevin Marks at Gang, Tyre, who represented Joanne and Laura Siegel with an offer for the Siegel rights. Marks discourages Toberoff from any advances, and does not tell Siegels initially of the interaction because he believes it is not in their best interest.

SD 00563

**EXHIBIT G**
**800**

On Nov. 23, 2001, MT entered into a joint venture agreement between his own outside corporation Pacific Pictures Corp. (NOT a law firm), and Mark Warren Peavy, and his mother Jean Peavy, heirs to the Joe Schuster estate. For the purposes of this document, we do not know the content of that agreement.

MT and Ari Emanuel, partner and agent at Endeavor, contacts Kevin Marks at Gang, Tyrer, Ramer, & Brown again. (who represented Joanne and Laura Siegel), on August 8, 2002. MT approaches the Siegels, *not as an attorney but as a film producer*, stating that he is "allied" with Emanuel, hoping such a claim will legitimize him.  .

On August 8th 2002, MT tells Marks that he and Emanuel have a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds for exploitation of the Siegels' rights to SUPERMAN and some continued royalties on an ongoing basis in all media. Kevin Marks says to the Siegels, "Don't do it." Gang, Tyrer tells the Siegels that they believe MT has brokered a confidential agreement with the Joe Schuster estate. Marks also tells the Siegels that the Schuster estate will have termination rights in approximately 2013. Schuster missed termination notices.

Within their offer, MT appeals to the Siegels' sense of ownership and encourages them to take this deal. MT says he can help them make a movie in direct competition to the one being made at Warner Brothers (MT makes this argument to Joanne and Laura, all the while knowing full well that no one would ever go near making such an attempt; no other studio would go for it because of the division of rights, and no one outside of the studio system would attempt such an endeavor for all the enormous costs attributable to the making, marketing and distribution of such a film.) In other words, MT displays "predatory intent" in his initial approach to the Siegels from the very beginning.

In their very first conversation, Kevin Marks tells MT "no go" --- that the Siegels have already reached an agreement with Time Warner and DC Comics.

Marks conveys MT's offer to the Siegels, and Marks does say to the Siegels, it is a better offer than the one you have. However, Marks also tells the Siegels that he would testify in court against the Siegels if they accepted this offer because he believes there has already been an agreement reached.

The Siegels are angry at Kevin Marks that he said he would testify against them if they took MT's offer, and relations break down between the Siegels and Gang, Tyrer. They fire Gang, Tyrer. And, because the Siegels believed that MT was sympathetic to their plight, and because MT appealed to their sense of ownership of SUPERMAN, they decide to enter into an agreement with Intellectual Properties Worldwide, otherwise known as "IPW", Marc Toberoff's film production company, for 10% for any kind of deal he got to make a movie or exploit the rights. (as you know, the Siegels submitted termination notices on the Superman copyright in 1997).

Q 0563

2.

SD 00564

The Siegels' agreement with IPW is an agreement that mirrors the earlier Pacific Pictures agreement that MT makes with the heirs to Joe Schuster (*see more information on this below*). In other words, Marc Toberoff is named as their attorney within the agreement (which is masked as a retainer agreement) in the event that they go to litigation over anything (*please see enclosed document*). Upon the Siegels signing the agreement, MT then tells Joanne and Laura that his mysterious billionaire has decided to invest elsewhere. In other words, MT makes himself the Siegels' attorney of record while he solicited them as a film producer, violating the rule that no lawyer may directly solicit business, with the double violation of doing it under the auspices of doing separate business dealings. MT's sole intent was to become the Siegels' attorney, not to help the Siegels (as he had alleged) to make a movie in competition to *Superman Returns*, which was then in development at Warner Brothers. MT also never divulges his previous direct dealings with the Schuster heirs, and his Nov.23, 2001 joint agreement with the Peavys (the Schuster heirs) in which he is named their attorney of record.

In 2002, MT set his sights on acquiring the passive interest to Michael Siegel's rights, who, as you know, is Jerry Siegel's son from his first marriage, and is Laura's half-brother. Michael Siegel has an interest of 12.5% in SUPERMAN and SUPERBOY. The Siegels total have 50% interest (Joanne holds 50%, Laura 25%. Michael 25%). So, in essence, Joanne has 25%, Laura 12.5, Michael 12.5. MT used to his advantage the strained relationship between Joanne and Laura, and Michael; as well as strained communication with the Schusters.

Here comes Ari Emanuel, and he is going to finance the purchase of Michael Siegel's interest. But Michael Siegel turns him down flat. MT discloses the intent to purchase to Joanne and Laura, admitting it is a possible conflict of interest. MT is fully aware of what he is doing is wrong.

On December 16, 2002, there is another letter from MT and Ari Emanuel to Joanne and Laura Siegel, saying they are re-approaching Michael again about purchasing his interest. MT tells Michael Siegel that they have an investor ready to buy out his interest, though the amount is significantly less than what DC showed as his share.

March 3, 2003 – letter from Paul Levitz/DC Comics to the Siegels, and MT is messing up relationships for his own personal benefit. DC is trying to understand why they backed out of the deal. The reason is MT who is interfering in all the relationships up to this point.

May 2003 -- MT is continuing to make business arrangements with the Schuster heirs, unbeknownst to Joanne and Laura Siegel .

May 13, 2003: Michael Siegel sends a very concerned letter to Laura Siegel about Marc Toberoff's actions. (*please see enclosed letter; this letter lays out well MT's scheme*). Among other things, Michael Siegel tells her of how Toberoff is now controlling the whole of the SUPERMAN copyright, how he may have bought a substantial portion of the Schuster interest for himself, and he brings to light MT's utter lack of opening a

Q 0564                                          3

dialogue with anyone regarding making another SUPERMAN movie, in partnership with Ari Emanuel.   Also that MT has not even made contact with Time Warner.  Lastly, Michael conveys that MT seems to have an agenda of "someone" buying him out, and that MT is pressing for an answer.

In May-June 2003. **STATUE OF LIMITATIONS is coming close on for filing of the SUPERMAN complaint. Both Joanne and Laura Siegel are now very ill.** MT starts saying to the Siegels that the statue of limitations is coming up, and they would have waived their right to sue based on the termination notices. *This is the very seed MT meant to mine all along.* He sends them the research on the statue of limitations, and concerned, the Siegels contact Art Levine in Washington, D.C. to have independent research done on the matter. The research confirms that they should file by September.

In June, Ari Emanuel through IPW is still trying to buy Michael Siegel's interest but can't come to terms on price.

End of June 2003, MT gets a law firm to represent the Schusters to assist with the SUPERMAN copyrights. They determine the value of the estate is $0, and California Probate Code will not be applicable, such that the estate attorney will not be entitled to any future settlement regarding the Superman interest.  Estate attorney is only receiving an hourly rate.  MT "graciously" pays all legal fees.

In other words, MT helped probate the estate, but hired an attorney to do the dirty work. Fittingly, the Joe Schuster will was "lost", so the will had no value.  So, the court writes the will for him, and includes the rights to proceed with the termination.  And since the firm receives an hourly rate, and the estate is valued at $0, it does not effect any future settlement.  The estate attorney will thereby not be entitled to statutory compensation. Another example of showing that MT is solely motivated *at all times* not by his clients' interests, but manipulating pieces of the puzzle so that he may receive the greatest percentage from a very possible large Time Warner settlement, through part ownership and unconscionable fees (*see below*).

**Absolutely nothing is moving ahead with Siegel/Schuster rights and agreements because MT was never intending to do anything with rights other than litigate.**

July 5, 2003. Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael --- MT has NOT told them he is about to enter into the PPC agreement, whereby MT *personally* will have a 50% of the Schuster interest in Superman. He will shortly own equal to what Joanne owns (25% of entire copyright), and double what Laura owns, *but MT has failed to disclose this.*  The Schusters -- through the Pacific Pictures Corp agreement – gave MT half of what they had.  MT never had the intention to make a movie in competition to the one at Warners – it is tantamount to throwing $$$ away, but it does appeal to the heirs' sense of lost ownership.  MT never did want to make a movie, and exploit the rights.  MT knows no one is going to invest in an outside movie project outside of Warner Brothers, though he uses Ari Emanuel, the agent, to legitimize his claims.  *(please see enclosed letter)*

Q 0565

4

**EXHIBIT G**
**803**

**SD 00566**

Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft --- in response to Michael's accusations of Toberoff, Laura clearly states that MT does *not* have a production company. (This is false -- Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes " MT has not plans to produce a SUPERMAN movie, nor is this feasible given the division of ownership of the rights." (please see enclosed letter). **This clearly delineates that Toberoff never had the intention of making a movie, and approached the Siegels and Schusters separately ---- not for the exploitation of rights as he initially asserted,** but to gain an unconscionable fee from a very large possible settlement with Time Warner.

August 7, 2003 --- Letter from Rodi-Pollock, who is the attorney in the Schuster estate – who says the Schuster Will would be written by the court August 25, 2003, since the Schuster Will had been "lost".

Sept-Oct 2003 ---- Letter with Ari Emanuel in which he would receive $2.5 million flat fee for "negotiating services"

On October 27, 2003, MT uses PPC to enter into another agreement with the Joe Schuster's heirs: Mark Warren Peavy and Jean Peavy, in which PPC is "engaged as the Executor of the recently probated estate of Joeseph Schuster." The agreement purports that PPC is the Peavys exclusive advisor "for the purpose of retrieving, enforcing, and exploiting all of Joe Schuster's rights ....in all of his creations...".     In this agreement, MT also names himself their attorney for any and all litigation or questions that should arise in regards to these Rights. MT also clearly delineates that PPC is NOT a law firm. And, lastly but most significantly, MT defines that any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement, or exploitation of any of the Rights, ....any monies would be split 50/50. **IN ESSENCE, MARC TOBEROFF NOW HAS A 25% STAKE IN SUPERMAN PERSONALLY BECAUSE OF HIS DEAL WITH THE SCHUSTERS THAT WAS MADE IN 2003. He gets – under the guise of Pacific Pictures Corp – the rights to retrieve and enforce and exploit Joe Schuster's interest in SUPERMAN.** MT's alleged "firewall" between film producing and soliciting business as an attorney comes tumbling down. (*please see enclosed signed agreement, dated October 27, 2003*).

In 2013 MT will own Schuster's side of it; but it does not matter, they will settle before.

MT inquires into the legality of entering into the Pacific Pictures Corporation agreement with the Peavys, heirs to Schuster estate, using law firm Armstrong, Hirsch, Jackoway, Tyerman, & Wertheimer. The inquiry raises strong eyebrows, and questions of legality as to MT's actions in regards to the Schusters, and strongly discourages further involvement with MT and this matter.

Q 0566                                5

SD 00567

August 2003 -- Michael Siegel wants an annuity of $200,000, which equaled $3.5 million. MT tells him that "no investor is going to go for that." MT says Warners' estimation was $2 million less; such a bad risk for an investor, MT says. MT is tenaciously going after the 12.5%, and of course, the investor MT "has" is himself. He is trying to get Michael to lower the price.

**MT is also trying to convince Michael Siegel not to sell his interest to another outside party. MT is lying to Michael Siegel to make sure he can still draw a fee from Michael's 12.5% interest. If Michael went away, he would only draw from remaining 37.5%, instead of 50%. In the final letter, MT tells Michael Siegel that he cannot sell without our approval because Michael did not take part in the termination, but "we will give you (Michael Siegel) approval, if you sell it to a third party, *monitored by Marc Toberoff*." MT is lying to Michael Siegel about Siegel's ability to sell his interest in the SUPERMAN copyright.**

**Significantly, MT admits to Laura Siegel that there never was a billionaire willing to invest $15 million when he first approached them. But by then the Siegels were concerned about appearing flaky for changing lawyers a few times. They decide to stick it out.**

October 2, 2004 --- MT files the complaint with the court against Time-Warner. There is disgruntlement in the Siegel camp, regarding the contingency fee. MT pushes hard for 33.3% contingency fee to go up to 40% if it falls within 60 days of trial (which, of course, he would make sure that it would...). In the contingency agreement they signed for SUPERMAN, IPW (Marc Toberoff's *film production company*) would have received a 10% negotiating fee (thus most likely bolstering Ari Emanuel's take in the settlement from Time Warner as well). Thus, Toberoff used the "film production arm" of his company to use as a shell to elicit larger contingency fees from his clients despite the fact that Toberoff maintains that there is a "firewall" between his law firm and his production company. (see John Lippman, *Wall Street Journal* article enclosed.)

MT "graciously" agrees to decrease IPW's take by 5%, which will be deducted from the firm's % fee, applicable to the gross proceeds of any settlement or outcome of the litigations.

**\*\*\*\*In other words, MT decreases his contingency fee by 5% -- instead of getting 50%, he will get 45%. Combined with the Schuster interest, the aggregate of any outcome in SUPERMAN litigation for Marc Toberoff *personally* becomes 47.5% of the entire Superman interest.\*\*\*\*\* It becomes clear at this juncture that MT thwarted the earlier deal with Time Warner and DC Comics in 2002 for his own personal gain.**

And lastly, on the DUKES OF HAZZARD case, MT pocketed $8.5 million personally, more than any single plaintiff involved in the case (each plaintiff pocketed around $1.7 million). According to the settlement amount, he received an unconscionable 50% contingency fee.

Q 0567

6

Very strong likelihood that Marc <u>created an entity for the purposes of the lawsuit</u> (Moonrunners Limited, or Moonrunners LLP), which allegedly held the rights at issue and ultimately led to the injunction. Christensen-Miller, Kevin Leichter, or the like need explore in greater detail the existence of the entity in which the rights were allegedly held. It is strongly believed this entity was created only to bolster the lawsuit – that the rights were never conveyed at all.

**MT had his President of Production of IPW, J. Todd Harris, leak the confidential settlement on the DUKES OF HAZZARD case to Variety ($17.5 million). He then called Larry Greenfield, another attorney in his office at the time who has since left, to cover his tracks, "demanding" to know who leaked the amount, and to act as if he was portraying shock and dismay at the leak. MT did it himself to attract more business in town. At least 7 attorneys have come and gone at the Law Offices of Marc Toberoff, and many have left due to ethical issues.**

And lastly, MT is charging 50% in another Allison Giannini case involving real estate. The reason this fact is included is to show a history of charging unconscionable fees.

It should be noted for those at Time Warner that Marc Toberoff has still managed to set up SKYPORT as a producer at Warners, and he has a tangential hold on GILLIGAN'S ISLAND. Fyi.

******************

cc:    Alan Horn
      John Schulman
      Jeff Robinov
      Patty Connelly

Q 0569

8

FROM : SIEGEL                                FAX NO. : 13108215894              Jan. 22 2003 05:21PM  P1



January 21, 2002

*Privileged & Confidential*

Joanne Siegel
13929 Marquesas Way, Apt. 201A.
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Dear Joanne and Laura:

This is to confirm the agreement and understanding in connection with our recent
discussion and disclosure to you of various risks and potential problems regarding
Michael Siegel, and the mitigation of possible conflicts of interest with respect to the
following proposed remedial actions:

1.     Ariel Emanuel ("AE") will attempt to purchase all of Michael Siegel's rights, title
and interest in *Superman, Superboy* and *The Spectre* ("MS Interests") to be financed by
AE.

2.     The proposed purchase will be subject to Michael Siegel entering into a formal
written settlement agreement, settling and releasing each of you, your representatives,
successors and assigns from any and all disputes, claims or causes of actions regarding
*Superman, Superboy and The Spectre*. The settlement agreement will specifically
disclose the separate *Superboy* termination, recently served and filed.

3.     In the event Michael Siegel agrees to the above purchase and settlement, the
following conditions will apply to and bind AE, any designee entity owned or controlled
by him and his heirs, successors or assigns with respect to the MS Interests:

(a)     The MS Interests will only be sold or assigned to a separate third party
(i.e., not owned or controlled by AE) in conjunction with the sale or assignment of your
interests in *Superman, Superboy* and/or *The Spectre*, respectively, to said third party and
not independently of your interests.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3335
E-mail: MToberoff@IPWW.biz

Q 0570

SD 00571

EXHIBIT G
808

FROM : SIEGEL
Jan-21-03   07:58pm   From-
FAX NO. : 3486265894
Jan. 22 2003 05:22PM  P2
T-422  P.006/010  F-066

# Ip worldwide

Page 2
Joanne Siegel and Laura Siegel Larson
January 21, 2002

(b)    You retain full and complete decision making authority with respect to the disposition of the copyright termination interests in *Superman, Superboy* and *The Spectre* arising from Jerome Siegel's copyright interest therein.

(c)    AE will fully indemnify you and hold you completely harmless against any and all claims, causes of action, damages, costs or loss (including attorney's fees), if any, arising out of the purchase of the MS Interests and the settlement agreement.

(d)    AE will reimburse you for twenty-five percent (25%) of any expenses paid by you after October 17, 2000 in connection with the Jerome Siegel copyright termination interests in *Superman, Superboy or The Spectre* , including without limitation, the filing cost of the Superboy Copyright Termination, upon and subject to your providing him with an itemized list of such expenses.

(e)    AE will also pay twenty-five percent (25%) of the following sums: (i) fees, commission or settlement amounts, if any, to the law firm of Gang, Tyre, Ramer & Brown and/or its attorneys regarding their alleged services in connection with Jerome Siegel's copyright termination interests; (ii) fees, costs or expenses of any audit, if any, of revenues or profits derived from *Superman, Superboy* or *The Spectre* and (iii) fees, costs or expenses of any other actions to protect, enforce or enhance Jerome Siegel's copyright termination interests in *Superman, Superboy or The Spectre.*

(f)    If , after the sale or assignment of the *Superman/Superboy/The Spectre* rights is made and royalties are being paid to the Siegel interest, AE chooses to offer his royalty interest for sale, you, or in the event of your death, your heirs, will have the right of first refusal to purchase said royalty interest.

4.    This letter contains the full and complete understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by each party. This letter shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this letter shall be valid

///
///
///
///
///
///
///
///

Q 0571

SD 00572

**EXHIBIT G**
**809**

FROM :SIEGEL

Jan-21-03    08:00pm    From-

FAX NO. :3108213894

Jan. 22 2003 05:23PM  P3
T-422  P.007/010  F-068

# Ip worldwide

Page 3
Joanne Siegel and Laura Siegel Larson
January 21, 2002

acceptable substitutes for executed originals.

If the above comports with your understanding please indicate this by your signatures below and returning a copy of this letter to me.

Yours sincerely,

Marc Toberoff

Agreed, Understood and Accepted:

_____    Date: _____
Ariel Z. Emanuel

_____    Date: 1/22/03
Joanne Siegel

_____    Date: 1/22/03
Laura Siegel Larson

Q 0572

SD 00573

# Ip worldwide

December 16, 2002

*Privileged & Confidential*

Joanne Siegel
13929 Marquesas Way, Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Ariel Emanuel
9701 Wilshire Boulevard, 10th Floor
Beverly Hills, CA 90265

Dear Joanne, Laura and Ari:

This is confirm the agreement and understanding in connection with our recent discussion and disclosure to you of various risks and potential problems regarding Michael Siegel, and the mitigation of possible conflicts of interest with respect to the following proposed remedial actions:

1.      IPW/Ariel Emanuel will enter into negotiations with Michael Siegel to purchase all of Michael Siegel's rights, title and interest in *Superman* and *Superboy* ("MS Interests") to be financed by Ariel Emanuel.

2.      The proposed purchase will be subject to Michael Siegel entering into a formal written settlement agreement, settling and releasing each of you, your representatives, successors and assigns from any and all disputes, claims or causes of actions regarding *Superman* and *Superboy*. The settlement agreement will specifically disclose the separate *Superboy* termination, recently served and filed.

3.      In the event, Michael Siegel agrees to the above purchase and settlement, the following conditions will apply to and bind Ariel Emanuel, IPW (or any designee thereof) with respect to the MS Interests:

(a)      The MS Interests will only be sold or assigned to a separate third party in conjunction with the sale or assignment of your interests in *Superman* and *Superboy*, respectively, to said third party and will not be sold or assigned independently of your interests.

(b)      You retain full and complete decision making authority with respect to the disposition of the copyright termination interests in *Superman* and *Superboy* arising from Jerome Siegel's copyright interest therein.

9701 Wilshire Boulevard, 10th Floor Beverly Hills, CA 90212 Tel: (310) 246-3100; Fax: (310) 246-3335
E-mail: MToberoff@IPWW.biz

Q 0573

SD 00574

**EXHIBIT G**
**811**



Page 2
Joanne Siegel, Laura Siegel Larson and Ariel Emanuel
December 16, 2002

(c)    Ari Emanuel will fully indemnify you and hold you completely harmless against any and all claims, causes of action, damages, costs or loss (including reasonable attorney's fees), if any, arising out of the purchase of the MS Interests and the settlement agreement.

(d)    In the event a future profit participation or royalty interest ("MS Royalty") is retained in connection with the sale or transfer of the MS Interests to a third party along with your interests as set forth above, and the MS Royalty is thereafter offered for sale, you, or in the event of death, your heirs, will have a right of first refusal to purchase the MS Royalty.

If the above comports with your understanding please indicate this by your signatures below and returning a copy of this letter to me.

Yours sincerely,


Marc Toberoff

Agreed, Understood and Accepted:


_____        Date: _____
Ariel Z. Emanuel


_____        Date: _____
Joanne Siegel


_____        Date: _____
Laura Siegel Larson


Q 0574

SD 00575

EXHIBIT G
812



DC COMICS
1700 Broadway
New York, NY 10019
(212) 636-5555
FAX (212) 636-5485
e-mail: paul.levitz@dccomics.com

Paul Levitz - President & Publisher

March 3, 2003

Joanne Siegel
13929 Marquesas Way
Apartment 201A
Marina Del Rey  CA  90202

Dear Joanne,

I'm writing to follow up on our conversation at the end of last month.  I regret deeply that you remained unwilling to accept my repeated invitation to get together (accompanied by whatever representatives you chose, of course) to try to resolve matters.  But even more deeply, I regret not having a more personal way to react to your last letter, which I've been trying to arrange since its receipt in the fall.

After almost three decades of friendship, and many, many occasions on which you and Jerry saw fit to express your fond feelings for me, I'm saddened that you could write a letter which describes me as trying to "wear down" you and Laura.  At no point in this complicated problem has that been anyone's strategy, at DC, at Warner Bros., or at AOL Time Warner.  It is the real and sincere desire of all concerned on our side to settle this fairly, generously and to honor Jerry and Joe's memory in a manner consistent with our responsibilities under the law and to our shareholders.  Every person who has worked on this matter for our side has repeatedly expressed frustration that we have been unable to reach resolution — not because of any cost of difficulty created for our company, but because you and Laura and the boys should be enjoying the fruits of Jerry's creativity, not being frustrated by them.

You mentioned in congratulating me on my promotion that I now have 'the power.'  The reality is, the person with the most power to resolve this matter is you.  If you will sit down and guide us through your concerns which undid the deal your representatives agreed to a year ago, issues which have never been explained to us, I would hope we could solve them.  I will be happy to meet with you in any place or manner you prefer to work towards a solution that is satisfactory to you...and whatever power I have will be devoted to a solution that honors Jerry, as it has been in whatever position I've held at DC, or in fandom before that.



A division of Warner Bros. — An AOL Time Warner Company

Q 0575

SD 00576

**EXHIBIT G**
**813**

FROM :STEGEL                 FAX NO. :3236306394         Mar. 13 2003 10:28AM  P1

Alternatively, we remain open to constructive paths to resolution you may prefer. A suggestion from members of our team familiar with the process is to attempt non-binding mediation. The selection of the mediator would be subject to both your approval and ours, and neither of us would be required to continue the process if it seemed unhelpful. The presence of a skilled mediator might enable us to understand, directly, what is important to you and where the previous negotiation went wrong, and for you to understand the reasons certain issues are important to us. Together we would work to find answers. For this to succeed, I believe it would require your personal involvement, as well as the support and protection of your advisors and lawyers.

Please give some consideration to these approaches, or let us know how you would prefer to proceed towards the amicable resolution that has been our shared goal. Pass a copy of this to your new lawyer, if he or she is in place, and consider the possibilities. Our lawyers are also sending follow up documents to your notices and letters, which will be sent to you since we have no representative identified to receive them, and we would appreciate you sending them on as well.

Joanne, I will not claim to have had as many sleepless nights over this matter as you and Laura must have, but I assure you my inability to resolve it properly weighs heavily on me. Please consider the best way for us to get together and get this done, so you can go on to happier and more prosperous days.

Best,

Paul Levitz

:lf

cc: John Schulman

Q 0576

SD 00577

**EXHIBIT G**

**814**

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo.
Sante Fe, New Mexico 87508.

Dear Warren:

　　　We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

　　　1.　　　Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

　　　2.　　　In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

　　　3.　　　PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _AT_, _MWP_

Q 0577

SD 00578

**EXHIBIT G**

**815**

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4.    The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.    Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peavy and Warren Peavy, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6.    All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.    The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: *JP*, *WMW*

Q 0578

SD 00579

**EXHIBIT G**
816

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

8.     To cover the unlikely event that Marc Toberoff dies or is disabled, PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

9.     All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

10.     This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

11.     This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

If the terms and conditions of this agreement are acceptable to you, please

///
///
///
///

Initials: _____, _____

Q 0579

SD 00580

**EXHIBIT G**
**817**

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

By: Mark Warren Peary, Executor         Date: 10-30-03
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my interests are concerned.

Jean A. Peavy         Date: 10 - 30 - 03

Q 0580

SD 00581

**EXHIBIT G**
818

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We successfully completed the first step of probating Joe Shuster's Estate and appointing you as Executor for purposes of implementing the termination of prior assignments of Joe's copyrights pursuant to the Copyright Act. Enclosed please find a certified copy of the Letters Testamentary appointing you as the Executor. Congratulations.

As discussed, I've enclosed three original copies of an agreement for your review between this newly formed Estate of Joseph Shuster and my company, Pacific Pictures Corp., and incorporating the material terms of our standing agreement dated as of November 23, 2001. If all is in order please initial pages 1-3, sign page 4 (and have your mom sign page 4 as well, she doesn't need to initial) of each original. Please keep one original for your files and return the other two to me.

Upon receipt we will proceed full speed ahead with the Termination. This is quite exciting, if not historic.

Best regards.

Sincerely,

Marc Toberoff

Q 0581

SD 00582

**EXHIBIT G**
**819**

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
213-895-4900    TELEPHONE AND FAX NOS.: 213-895-4921 fax

RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
JOHN D. PETTKER (SBN 34346)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

ATTORNEY FOR (Name): MARK WARREN PEARY, Petitioner

FILED
LOS ANGELES SUPERIOR C...

OCT 2 1 2003
JOHN A. ...
BY ...

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF (Name):  JOSEPH SHUSTER, also known as
JOE SHUSTER
DECEDENT

| LETTERS | | CASE NUMBER: |
|---|---|---|
| [x] TESTAMENTARY | [ ] OF ADMINISTRATION | BP080635 |
| [ ] OF ADMINISTRATION WITH WILL ANNEXED | [ ] SPECIAL ADMINISTRATION | |

## LETTERS

1. [x] The last will of the decedent named above having been proved, the court appoints (name):
MARK WARREN PEARY
   a. [x] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints (name):
   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the Order for Probate.
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on (date):

3. [x] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [ ] with full authority [x] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

## AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [x] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. (Name and title):

4. Executed on (date):  September 30, 2003
   at (place):  Santa Fe, New Mexico.

   ◄ *Mark Warren Peary* (signature)
   (SIGNATURE)
   Mark Warren Peary

## CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

WITNESS, clerk of the court, with seal of the court affixed.

Date: OCT 2 1 2003
Clerk, by _JOHN A. CLARKE_
(DEPUTY)

Date: OCT 2 1 2003
Clerk, by John A. Clarke
(DEPUTY)                S. WE

Form Approved by the Judicial Council of California
DE-150 (Rev. January 1, 1998)
Mandatory Use (1/1/2000)

Q 0582

LETTERS
(Probate)

Legal
Solutions
Plus

Probate Code, §§ 1001, 8403,
8405, 8544, 8545
Code of Civil Procedure, § 2015.6

SD 00583

**EXHIBIT G**
**820**

# PACIFIC PICTURES CORPORATION

23852 Pacific Coast Highway, Suite 555
Malibu, CA 90265
Tel: (310) 589-5151
Fax: (310) 589-5152

October 27, 2003

Mark Warren Peary (f/k/a Mark Warren Peavy)
Executor
Estate of Joseph Shuster
51 Camino Cabo,
Sante Fe, New Mexico 87508

Dear Warren:

We are pleased to welcome you ("Client") as a client of Pacific Pictures Corp. ("PPC"). This letter is intended to supplement the joint venture agreement dated as of November 23, 2001 between PPC and you and your mother, Jean Peavy, and to confirm the agreement regarding your engagement of our company as the Executor of the recently probated Estate of Joseph Shuster.

1.     Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law.

2.     In furtherance of this exclusive agreement, PPC (which is not a law firm) shall engage the services of attorney Marc Toberoff ("Toberoff") to furnish directly to Client all legal services required by Client in connection with the Rights, including in connection with all legal disputes, litigation, arbitration and/or mediation regarding the Rights; to implement, enforce and prosecute the Rights; and to handle the negotiation of any contracts regarding exploitation of the Rights. PPC may engage additional outside counsel to assist Client, but only at PPC's sole expense.

3.     PPC has paid and will continue to pay any and all costs and expenses incurred by it in connection with this agreement, including the legal fees and costs of setting up Joseph Shuster's Estate, U.S. copyright office costs such as document retrieval costs and filing fees, research costs, and any and all attorneys' fees, costs and disbursements in connection with any legal actions or disputes concerning the

Initials: _MF_, _____

Q 0583

SD 00584

**EXHIBIT G**
**821**

# PACIFIC PICTURES CORPORATION

Page 2
Estate of Joseph Shuster
October 27, 2003

enforcement and/or defense of the Rights and the Estate of Joseph Shuster. In addition to attorneys' fees, PPC will be responsible for the payment of any legal filing fees, expert witness fees, subpoena and service of process fees, jury fees, deposition transcript costs, photocopying, postage, long distance telephone and fax charges, computerized legal research, reporter's fees, costs for preparation of exhibits and demonstrative evidence, travel costs outside of the Los Angeles area if required, and messenger fees. Any and all attorneys' fees payable on a contingency basis will be paid solely out of PPC's share of Proceeds set forth in paragraph 5 below.

4.       The terms of any and all agreements regarding any of the Rights, in any respect, shall be subject to the express written approval of Client and PPC. The parties each warrant and represent that after signing this Agreement they will not without the express written consent of all the parties transfer, limit or encumber the Rights in any respect.

5.       Any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement or exploitation of any of the Rights, including without limitation, fixed and contingent compensation, settlement or judgment amounts, purchase prices, option or quitclaim fees, and/or royalties (" Proceeds"), will be shared, divided and payable: fifty percent (50%) to Client and fifty percent (50%) to PPC. Prior to the above distribution of Proceeds, PPC will be entitled to recoup all of its out-of-pocket expenses under this Agreement subject to the presentation to Client of a reasonable accounting and receipts for said expenses. The parties hereby acknowledge and agree that the due payment to and receipt by Client of Proceeds hereunder shall constitute the due receipt of Proceeds by Jean Peary and Warren Peavy, respectively, pursuant to paragraph 5 of the Joint Venture Agreement, in full satisfaction of PPC's obligations under said paragraph.

6.       All notices, correspondence and payments to each party under this Agreement shall be sent to the respective addresses set forth on page 1 of this Agreement unless either party notifies the other of an address change in writing.

7.       The term ("Term") of this agreement shall extend for the full duration of the Rights and any exploitation of the Rights. Upon the expiration of the Term or in the event of termination by Client of this agreement for any reason, all Rights will be held fifty percent (50%) by the Client and fifty percent (50%) by PPC as tenants in common, and Client and PPC will each be entitled to receive and continue to receive fifty percent (50%) of all Proceeds derived from the Rights after termination, if any.

Initials: _HF_, _____.

Q 0584

SD 00585

EXHIBIT G
822

# PACIFIC PICTURES CORPORATION

Page 3
Estate of Joseph Shuster
October 27, 2003

8.      To cover the unlikely event that Marc Toberoff dies or is disabled; PPC will prior to service of any notice of termination regarding the Rights (pursuant to Section 304 (d) of the U.S. Copyright Law) either (a) arrange for a suitable replacement attorney experienced in copyright litigation and willing to enforce the Rights on solely a contingent fee basis; or (b) if no such replacement attorney is arranged to obtain "key man" insurance for Mr. Toberoff in the amount of $150,000 payable solely to Client.

9.      All parties agree to execute such further documents and to perform such further acts as may be reasonably necessary or desirable to carry out the purposes and effect of this Agreement. When required hereunder, consent shall not be unreasonably withheld by any party regarding actions conducted under this agreement.

10.      This Agreement contains the full understanding of the parties and supersedes all prior or contemporaneous understandings whether written or oral with respect to the subject matter hereof and may not be modified except in writing signed by the party to be bound. By countersigning this Agreement the parties each acknowledge that they clearly understand the terms and conditions of this Agreement; and have agreed to these terms and conditions after detailed and mature deliberation. The parties further acknowledge that they have not signed this Agreement in reliance on any promise or representation not expressly set forth in this Agreement. The parties have mutually participated in the negotiation and drafting of this Agreement and agree that the terms of this Agreement shall not be construed more favorably to one party than the other. If any provision of this Agreement is found to be unenforceable for any reason, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the parties expressed herein. This Agreement shall bind and inure to the benefit of the parties, their respective heirs, successors and assigns. Executed facsimile copies of this Agreement shall be valid acceptable substitutes for executed originals.

11.      This Agreement shall be governed by the laws of California applicable to agreements made and to be performed therein.

If the terms and conditions of this agreement are acceptable to you, please

/ / /
/ / /
/ / /
/ / /


Initials: _HS_, _____.


Q 0585

SD 00586

# PACIFIC PICTURES CORPORATION

Page 4
Estate of Joseph Shuster
October 27, 2003

acknowledge your acceptance by signing below.

Very truly yours,

Marc Toberoff
President

**Approval of Engagement of Pacific Pictures Corp.**

I have read the foregoing agreement and I agree to its terms.

The Estate of Joseph Shuster

_____        Date: _____
By: Mark Warren Peary, Executor
(f/k/a Mark Warren Peavy)

I have read the foregoing agreement and agree to its terms to the extent any of my interests are concerned.

_____        Date: _____
Jean A. Peavy

Q 0586

SD 00587

**EXHIBIT G**
**824**

# California Business Portal

Secretary of State BRUCE McPHERSON

SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | CA BUSINESS PORTAL | ARCHIVES & MUSEUM | SPECIAL PROGRAMS

Business Search Corporations

**Printer Friendly Page**

**New Search**

**Search Tips**

**Field Definitions**

**Status Definitions**

**Name Availability**

**Corporate Records**

**Business Entities
Records Order Form**
Certificates
Copies
Status Reports

**FAQS**

**Corporations Main Page**

**Site Search**

## Corporations

The information displayed here is current as of "APR 28, 2006" and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| PACIFIC PICTURES CORPORATION | | |
| Number: C2198479 | Date Filed: 9/25/2000 | Status: forfeited |
| Jurisdiction: NEW YORK | | |
| **Address** | | |
| 23852 PACIFIC COAST HWY STE 555 | | |
| MALIBU, CA 90265 | | |
| **Agent for Service of Process** | | |
| MARK TOBEROFF | | |
| 23852 PACIFIC COAST HWY STE 555 | | |
| MALIBU, CA 90265 | | |

Printer Friendly

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

Q 0587

http://kepler.ss.ca.gov/corpdata/ShowAllList?QueryCorpNumber=C2198479

5/4/2006

SD 00588

**EXHIBIT G**

**825**

Entity Information

# NYS Department of State

## Division of Corporations

**Entity Information**

Selected Entity Name: PACIFIC PICTURES CORPORATION

Selected Entity Status Information

Current Entity Name: PACIFIC PICTURES CORPORATION
Initial DOS Filing Date: AUGUST 26, 1988
County: NEW YORK
Jurisdiction: NEW YORK
Entity Type: DOMESTIC BUSINESS CORPORATION
Current Entity Status: ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
% MAX TOBEROFF
330 EAST 57TH STREET
APT 34A
NEW YORK, NEW YORK, 10022

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results        New Search

Division of Corporations, State Records and UCC Home Page   NYS Department of State Home Page

Q 0588

SD 00589

**EXHIBIT G**
**826**

JUL-06-2003 11:06 PM                                    1   10 827 7227              P.01

**LAURA SIEGEL LARSON**
**6400 PACIFIC AVE. #106**
**PLAYA DEL REY, CA 90293**
**(310) 827-8136**

**July 5, 2003**

# FAX TRANSMITTAL

**TO:**     Marc Toberoff

**FAX#:**   (310) 246-3101

**FROM:**   Laura Siegel Larson

**PHONE:**  (310) 827-8136

**RE:**     Michael Siegel Letter and Meeting with You

**Page 1 of 8**

**MESSAGE:**

Dear Marc,

Attached is the most recent letter I received from Michael Siegel and the draft of the response I am planning to send to him.

My mother tells me the two of you spoke by phone the other day and we need to schedule a meeting. Are you available this Tuesday, July 8th anytime between 11am and 1pm? Please let us know how long a meeting you feel we need to bring matters up to date. If Tuesday does not work for you, we could be available this Thursday or Friday. I will not be able to meet this Wednesday or, after this week, until the first week of August, so I hope you can fit us in on Tuesday, Thursday or Friday.

We look forward to meeting with you soon.

Sincerely,

*Laura Siegel Larson*

Laura Siegel Larson

Q 0589

Privileged & Confidential
All Rights Reserved

SD 00590

**EXHIBIT G**
**827**

JUL-06-2003 11:07 PM                                    1 ᵀ10 827 7227          P.02

Michael Siegel
3605 Bendemeer Rd.
Cleveland Heights, Ohio 44118

May 13, 2003

Dear Laura,

Thank you for your letter of November 2 of last year. I would have written sooner but I have
endured much sadness. My mother passed away last year and I am particularly saddened by her
not having been able to enjoy some of the money due us from DC Comics and Time Warner.

I really wish to discuss Marc Toberoff. I learned from Marks and Rammer that Marc was the
attorney on record for the Shuster half of the Superman copyright, has Marc ever informed you of
this? Now that you have signed with him, he is in control of the whole Superman copyright. I
told you when he first contacted me, he wanted to buy my share of the copyright. Marc had a
mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up
front plus participation. When you signed with Marc the billionaire invested elsewhere. Marc has
his own production company, he was going to team with Emmanuel and make a movie. This has
not happened. You mentioned Marc had a number of innovative, proactive ideas that could bring
all members of the Siegel interest both justice and many times more than the amount DC's
representatives wanted to throw our way to get rid of us. Marc has chosen not to open any
dialog with Time Warner or anyone else. How can he negotiate a contact if he is not talking to
anyone?

Marc is now the attorney for the entire Superman copyright. In 2013 under the Sunny Bono law
Marc will be able to take the Superman copyright from Time Warner. Has he told you this? Do
you know who owns the Shuster interest in the Superman copyright? Has Marc bought the
Shuster interest himself? For a long time now, Marks and Rammer said there should be a united
Siegel front. Marc is not negotiating with anyone, but he has found someone willing to buy me
out. How can he find someone to buy me out and not negotiate for the entire Siegel interest?
Has Marc offered to find someone to buy your interest? If I would sell my interest it would leave
you with less than half of the Superman copyright and not all of the Siegel interest in the
Superman copyright. This would weaken your position? The amount Marc's investor is offering
is less than half of what DC showed as my share. There is a very real possibility I will contact
Time Warner and see if they will buy me out. Marc seems to have an agenda of someone buying
me out so I will have to look for the best deal I can get. Marc is really pressing for an answer to
the offer his investor made.

Am I missing something? Is it Joanne's and your intention to do nothing? You have filed letters
of Termination on Superman and The Spectre, have any other letters of Termination been filed or
will there be more? Regarding an old item, I would very much appreciate the release of the funds
I understand are being held in escrow for me by Marc. If it turns out that we have no
disagreement regarding your expenses and too much money was released, that certainly can be
dealt with quickly. Last week a package of documents arrived from Marc. Don and I have not
had time to review them yet.

Q 0590

Privileged & Confidential
All Rights Reserved

SD 00591

EXHIBIT G
828

JUL-06-2003 11:08 PM                                1  10 827 7227              P.03

This procedure has taken way to long.  I have been on contract negotiation teams and have never
seen anything like this.  Your attorneys have chosen not to have any dialog with the other side for
years at a time.  I want a united Siegel interest, but I might be forced to act on my own.  I do have
something to sell independently, Marc's actions prove this.

I hope your health is getting better and that your divorce is now over.

Sincerely,

*Michael*

Q 0591

**Privileged & Confidential**
**All Rights Reserved**

SD 00592

**EXHIBIT G**
**829**

JUL-06-2003 11:08 PM                                    1 '18 827 7227          P.04

Laura Siegel Larson
6400 Pacific Avenue #106                    DRAFT
Playa Del Rey, CA 90293

July 5, 2003

Dear Michael,

Thank you for your May 13th letter. I hope you received the sympathy card from my mother and me with our condolences over the loss of your mother.

This is my first opportunity to answer your letter due, in part, to my health but also to the extremely time-consuming and complex nature of my divorce which is far from over. In fact, I have to work on aspects of it every day. It is especially difficult because my ex-husband is a lawyer representing himself and he is using every trick in the legal system to complicate matters.

One of the many issues I am dealing with involves the Copyright Terminations. He is trying to get the Court to award him half of my rights to Superman and other properties created by our father, claiming they should be treated as community property. This is a particularly difficult fight because there are no legal precedents for a case like mine and finding a lawyer who knows both Copyright Termination Law and California Divorce and Family Law is like looking for a needle in a haystack. My divorce attorney is doing her best but it's a tough fight. The Judge doesn't know anything about Copyright Law. The decision that will be made in my case in a few weeks will set the precedent for all heirs of author-creators who receive intellectual property rights through Termination and later go through a divorce. It would be a tragedy not only for me but for all intellectual property creators and their heirs if the true intent of the Copyright Law is ignored and this issue is lost.

Now to the issues you raised in your letter. There are many so I will try to group my answers so I don't miss anything. Because I am still pressed for time I am writing the following in outline form. It is simpler for me that way and, I hope, clearer.

## Outline of Topics:

Opinion re:

~~Facts regarding~~ the Time Warner-DC offer ~~and why it sucked~~:
   - It was a bogus offer filled with land mines and things they knew we'd never agree to
   - They wanted us to ~~warrant~~ we had no rights
   - ~~As a result, we could have had trouble collecting money had we signed with them~~
   - They wanted us to sign away the right to get anything additional if the copyright law changed, giving creators and their families additional rights or an extension of the time before it went into the public domain.

Page 1

Q 0592

Privileged & Confidential
All Rights Reserved

SD 00593

**EXHIBIT G**
830

JUL-06-2003 11:08 PM           1  10 827 7227       P.05

*DRAFT*

- They even wanted us to sign away the public domain rights we'd one day have
- You and Don Bulson stated that you couldn't believe how bad the contract they had written was
- It was a bad deal ~~and a trap and~~ we had to walk away *from*
  *(MT)*

## Marc Toberoff and the Shuster interest:

- ~~(MT)~~ He does not "control" the Superman copyright. He has been hired to do a job.
- *MT* He does not own the Shuster interest. He is a lawyer hired by ~~Jean Peavy,~~ Shuster, Joe Shuster's ~~sister~~ *Estate . (via)*
- In 2013, he doesn't "take" the copyright from Time Warner, Shuster's *Estate* heirs could reacquire rights ~~as we have~~ ~~as a result of our~~ Terminations. Then the Shusters would have to negotiate a deal or handle things as they choose.
- The Shuster rights are completely separate from the Siegel rights.
- DC will own the Shuster rights until they vest in 2013
- We have no intention of waiting until 2013 to do something with the Siegel rights

## We went to Marc to talk about him representing the Siegels. Marc did not pursue us:

- We fired Kevin Marks and Bruce Ramer because they were insisting we take the bad TW-DC deal. You'll remember that you, Don Bulson and we were shocked when Kevin Marks said that if asked to, he would testify against us in court.
- Neither Kevin Marks nor Don Bulson informed us that Marc Toberoff had contacted Marks and you about the Superman rights until months after it had taken place.
- Kevin Marks had turned Marc Toberoff away ~~falsely~~ saying we had a deal with DC
- Marc did not call my mom nor me
- ~~the Shuster's *family*~~ ↗ My mom called ~~Jean Peavy~~ to see what the Shusters were doing
- ~~The Shuster *family*~~ ↗ Peavy gave Marc's number to my mom and she called him after we had fired Ramer and Marks    *has no plans to produce a Superman movie, nor is his lis his*
- We felt he grasped our situation very well and was sympathetic to author's rights
- Marc Toberoff ~~does not have a production company and we have never heard anything about him planning to make a movie~~ *since the division of ownership of the rights.*

## Why the original (~~$15 million~~) investor left:

- Kevin Marks ~~falsely~~ told Marc we had a deal with DC
- Marc told this to the investor who found another place to invest his money
- Marc did not know we did not have a deal with DC until later when we contacted him

## With Marc's assistance, new Notices of Termination regarding Superboy were sent out:

- We did this to further assert the Siegel rights to this character, ~~separately created from Superman.~~
- My mom advanced the $4,000 filing fees immediately to the Copyright Office when the Notices were sent in October 2002
- A copy of the $4,000 check recently processed by the Copyright Office is enclosed with this letter to you.

Page 2

Q 0593

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**831**

SD 00594

JUL-06-2003 11:09 PM                                    1  10 827 7227           P.06

*DRAFT*

-The canceled check was not sent to my mom by her bank until recently. This was after
we sent the itemization of other expenses to Don Bulson.
-Your 25% of this expense is $1,000. We are also sending this to Don and it will be
included in the settling of the account before the money being held in trust is
forwarded to you by Marc.

**Unfortunately we've discovered that The Spectre Terminations did not vest for the Siegel family:**
-Kevin Marks repeatedly told my mom not to pay the fees to the Copyright Office for the
copyright filing while he was negotiating although she told him several times that
she wanted to send in the fees
-Kevin did not tell us there was a time limit on when the fees could be paid
-When negotiations were terminated, we found out from the Copyright Office it was too
late to pay the fees
-The Spectre rights are a dead issue

**Marc has a limited negotiation period to represent the Siegel interest:**
-For Superman: 18 months from Oct. 23, 2002 (until April 23, 2004)
-For the newly filed Superboy Terminations: 30 months from Oct. 23, 2002 (until April
23, 2005) This is longer because there is a two year waiting period from the time
the Notices were served to the date the rights vest.
-If we are not pleased with the results, he will no longer represent us after that time

**Why Marc has not been negotiating with Time Warner:**
-The fact that DC doesn't know what to expect from us since we broke off negotiations
and turned down their last offer gives us strength
-By not running to them right away, we do not appear desperate and needy, willing to take
a bad deal
-Timing the negotiations is an art
-It may be better not to deal with Time Warner at all but to go elsewhere

**Why there is a buyout offer from a venture capitalist for your interest only:**
-You have been saying you needed money badly, were out of work and had big bills
-The venture capitalist doesn't want to invest more than the amount to buy your interest
-My interests are too entangled due to my divorce
-Marc asked our permission to present an offer to you and we decided not to stand in your
way if you want to accept it. We do not know the amount that the investor is
offering to you

**Why any investor would offer less than Time Warner did in its last offer:**
-It is a risky investment
-No immediate payback
-The investor and we may face legal expenses and conflict with DC in the future if we
have to sue to get what's already owed or if we eventually make a deal with them
and they withhold payment due to "creative bookkeeping" or for other reasons

Page 3

Q 0594

Privileged & Confidential
All Rights Reserved

SD 00595

**EXHIBIT G**
832

JUL-06-2003 11:09 PM                                    1  710 827 7227                    P.07

*DRAFT*

- The investor wants a worthwhile profit on his investment
- ~~It is a situation similar to one in which businesses that give immediate money to~~
  ~~beneficiaries of Wills who do not want to wait until the Will goes through Probate~~
  ~~for them to receive their money. The beneficiaries always get less than if they~~
  ~~wait for the Will to go through Probate.~~

**Why you cannot ask Time Warner/DC for a buyout:**
- ~~It destroys~~ the possibility of us negotiating a fair deal
- It shows weakness which Tw will take advantage of.
- As the controlling interest, we do not give you approval to do it
- If it damaged our ability to later make a better deal, we would have no choice but to ~~sue~~
  ~~you~~ hold you accountable for such damages.

**Why this has not been like other "contract negotiations":**
- Time Warner is a huge, arrogant company
- ~~They~~ took months to respond to each issue all along the way and their responses were
  unacceptable
- ~~Time Warner has nothing to gain by settling this, they keep on making millions~~
- Their lawyers are particularly heartless, masters at screwing people. They have a bad
  reputation for this
- They delight in playing off what they see as the Siegel interest's weakness--our need for
  money
- If that wasn't enough, they want to include additional characters created by our father in
  one settlement. (They apparently do not yet realize that The Spectre rights did not
  vest to the Siegels.)
- They want to win this David and Goliath matter so that the rich and powerful will
  triumph over the little guy
- They want to make an example of us so that other creators and their heirs won't go after
  their rights.

**Your belief that you have something to sell independently:**
- You can only sell your rights to a third party with my mom's and my approval because
  we are the majority interest holders and you have a passive interest only
- We will not give approval for a sale to Time Warner because it would damage the
  overall Siegel interest
- We will give approval for a sale to a third party ~~found by Marc Toberoff~~ as long as it is
  not Time Warner, DC, or any ~~part of the Time Warner family of businesses and~~
  providing the sale does not damage our ability to make a deal for our portion of
  the Siegel interest

Although a united Siegel front would be best, we won't stand in your way if you decide
you want to take the buyout from the investor that Marc has found. The decision has to be yours
and yours alone. However, for the reasons listed above, we will not give approval for you to go
to Time Warner regarding a buyout,

Q 0595

Page 4

Privileged & Confidential
All Rights Reserved

**EXHIBIT G**
833

SD 00596