# EXHIBIT G
# Part 9 of 9

## VI.

I further direct that my estate be settled without the intervention of any court, except to the extent required by law, and that my executrix settle my estate in such a manner as shall seem best and most conveniently to her____, and I hereby empower my executrix to mortgage, lease sell, exchange and convey the personal and real property of my estate without an order of court for that purpose and without notice, approval or confirmation and in all other respects to administer and settle my estate without the intervention of court.

Q 0789

**EXHIBIT G**
**1023**

VII.

I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my
Last Will and Testament.

In Witness Whereof I have hereunto set my hand this _28_ day of _June_
19_88_.

_Joseph Shuster_
Testator

STATE OF CALIFORNIA
County of _Los Angeles_        } ss.

Each of the undersigned, being first duly sworn on oath, states that on this _28_ day of
_June_, 19_88_:

(1) I am over the age of eighteen (18) years and competent to be a Witness to the Will of
_JOSEPH SHUSTER_                                        (the Testator___);

(2) The Testat_or_, in my presence and in the presence of the other Witnesses whose signatures
appear below:

    (a) Declared the foregoing instrument consisting of _one_ pages, of which this is the last
    to be _his_ Will;

    (b) Requested me and the other Witnesses to act as Witnesses to _his_ Will and to make
    this affidavit; and

    (c) Signed such instrument;

(3) I believe the Testat_or_ to be of sound mind, and that in so declaring and signing, _he_
was not acting under any duress, menace, fraud, or undue influence;

(4) The other witnesses and I, in the presence of the Testat_or_ and of each other now affix
our signatures as Witnesses to the Will and make this affidavit.

_Tom Fenaughty_                          _Robert E Williams_
Witness                                  Witness
_3374 Overland Ave #1_                   _3545 Mentone Ave #3_
Address                                  Address
_L.A. Ca. 90064_                         _Los Angeles California 90034_

Witness

Address                                                      Q 0790

SUBSCRIBED & SWORN to before me this _28_ day of _June_, 19_88_.

_F. Patrick Hagerty_
Notary Public in and for the State of California,
residing at _Santa Monica, Calif._

OFFICIAL SEAL
F. PATRICK HAGERTY
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires April 23, 1991

SD-00791

**EXHIBIT G**
**1024**

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 3g
### Nonresident of California and Permanent Address

I, Mark Warren Peary, the proposed personal representative, am a non-resident of California. I reside in the State of New Mexico at the following residence address:

51 Camino Cabo
Santa Fe, NM 87508

I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

_____
MARK WARREN PEARY

Q 0791

261503_1.doc

**EXHIBIT G**
**1025**

**In the Matter of the Estate of JOSEPH SHUSTER, Decedent**
**Los Angeles County, California, Superior Court – Central District**

## ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>51 Camino Cabo<br>Santa Fe, NM 87508 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas 79936 | Niece | Adult |

Q 0792

261503_1.doc

SD 00793

**EXHIBIT G**
**1026**

RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
JOHN D. PETTKER (SBN 42346)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone: (213) 895-4900
Facsimile: (213) 895-4921

Attorneys for MARK WARREN PEARY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL

| | |
|---|---|
| In re the Matter of the Estate of | CASE NO. |
| JOSEPH SHUSTER, also known as JOE SHUSTER | DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL REPRESENTATIVE |
| Decedent. | |

I, JEAN ADELE PEAVY, state as follows:

1.    I am the only sibling of the decedent, JOSEPH SHUSTER. The decedent's and my parents are both deceased, having predeceased the decedent. I have two children, both of whom survived the decedent. They are Mark Warren Peary and Dawn L. Peavy.

2.    I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am nominated to act as Executor under such Will.

3.    I hereby decline to serve as personal representative of the decedent's estate, whether as Executor of the decedent's Will or Administrator of his estate.

4.    I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as

Q 0793

1
DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL REPRESENTATIVE

SD 00794

**EXHIBIT G**
**1027**

1    Executor of the decedent's Will or Administrator of his estate.

2        Dated:_____, 2003

3

4                                                    _____

5                                                    JEAN ADELE PEAVY

6

7

8

9

10

11

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    Q 0794

28    261504_1.doc

2

DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL REPRESENTATIVE

**EXHIBIT G**
**1028**

SD 00795

1   RODI, POLLOCK, PETTKER, GALBRAITH
    & CAHILL, A Law Corporation
2   JOHN D. PETTKER (SBN 42346)
    444 South Flower Street, Suite 1700
3   Los Angeles, California 90071-2901
    Telephone: (213) 895-4900
4   Facsimile: (213) 895-4921

5   Attorneys for MARK WARREN PEARY

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             NOMINATION OF PERSONAL REPRESENTATIVE,
13                                             DECLINATION TO ACT, AND WAIVER OF BOND
                                               OF MARK WARREN PEARY
14  JOSEPH SHUSTER, also known as
    JOE SHUSTER
15

16

17                           Decedent.

18                                                              Q 0795

19      I, DAWN L. PEAVY, state and declare as follows:

20      1.      I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,

21  being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

22      2.      If the decedent's Will is not admitted to probate and an Executor thereof is not

23  appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the

24  decedent's estate, I am a person entitled to equal priority for appointment as the personal

25  representative of the decedent's estate with my brother, MARK WARREN PEARY.

26      3.      If for any reason MARK WARREN PEARY is not appointed by the Court as

27  Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,

28  New Mexico, to serve as the personal representative of the decedent's estate without the

                                              1
NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00796

1 requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465

2 of the California Probate Code, and I decline to act as such personal representative.

3     4.    My intent in making this nomination is to ensure the appointment of a person that I

4 trust to serve as the personal representative of my uncle's estate.

5     I declare under penalty of perjury under the laws of the State of California, that the

6 foregoing is true and correct.

7     Executed on _____, 2003, in El Paso, Texas.

8

9                                   _____

10                                     DAWN L. PEAVY

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213) 895-4900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   261505_1.doc                                             Q 0796

2

SD 00797

**EXHIBIT G**
**1030**

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

(213) 895-4900

JOHN D. PETTKER, Esq.(SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901

TELEPHONE AND FAX NOS.: (213) 895-4921

ATTORNEY FOR *(Name):*   MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:  111 N. Hill Street
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central District

ESTATE OF *(Name):*    JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

CASE NUMBER:

## LETTERS

- [ ] TESTAMENTARY
- [ ] OF ADMINISTRATION WITH WILL ANNEXED
- [ ] OF ADMINISTRATION
- [ ] SPECIAL ADMINISTRATION

### LETTERS

1. [X] The last will of the decedent named above having been proved, the court appoints *(name):*
MARK WARREN PEARY
   a. [ ] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints *(name):*
   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate.*
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on *(date):*

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act  [ ] with full authority
[X] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

### AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY *(name):*

I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title):*

4. Executed on *(date):*
at *(place):*                                , California.

▶

*(SIGNATURE)*
MARK WARREN PEARY

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date:<br><br>Clerk, by<br><br>_____ (DEPUTY) | (SEAL) | Date:<br><br>Clerk, b<br><br>_____ (DEPUTY) |
|---|---|---|---|

Q 0797

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

LETTERS
(Probate)

Legal
Solutions
Plus

Probate Code, §§ 1001, 8403,
8405, 8544, 8545,
Code of Civil Procedure, § 2015.6

SD 00798

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| JOHN D. PETTKER, Esq.(SBN 42346) RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL A Law Corporation 444 South Flower Street, Suite 1700 Los Angeles, California 90071-2901 TELEPHONE NO.: (213) 895-4900   FAX NO. *(Optional)*: (213) 895-4921 E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*: MARK WARREN PEARY | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF *(Name)*:   JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

# DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

## 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

## 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Q 0798

| Form Adopted for Mandatory Use. Judicial Council of California DE-147 [Rev. January 1, 2002] | DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE (Probate) |  Legal Solutions Plus | Probate Code, § 8404 |
|---|---|---|---|

SD 00799

ESTATE OF (Name): JOSEPH SHUSTER, also known as JOE SHUSTER

CASE NUMBER:

DECEDENT

**d.  File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

## 3. NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

## 4. INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

## 5. RECORD KEEPING

**a.  Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

**b.  Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

## 6. CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. **When in doubt, contact your attorney.**

> **NOTICE:  1.** This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary.
> **2.** If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions.

## ACKNOWLEDGMENT OF RECEIPT

1.  I have petitioned the court to be appointed as a personal representative.

2.  My address and telephone number are (specify): 316 Horton Lane N.W., Albuquerque, NM 87114 *corrected*
(505) 466-4551

3.  I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:

MARK WARREN PEARY
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PETITIONER)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PETITIONER)

> **CONFIDENTIAL INFORMATION:** If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).)

Page 2 of 2

DE-147 [Rev. January 1, 2002]

## DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE
(Probate)

Q 0799

**EXHIBIT G**
**1033**

SD 00800

# AMERICAN CONTRACTORS INDEMNITY COMPANY

BOND NO. _____

All Papers and notices may be served at
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA. 90045

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

IN THE MATTER OF

Case Number : _____

☐ Bond upon Qualifying    ☐ Additional Bond

Premium _____
Per Annum

**KNOWN ALL MEN BY THESE PRESENTS:**

That we,_____
as Principal, and the <u>AMERICAN CONTRACTORS INDEMNITY COMPANY</u> as Surety, are held and firmly bound
unto_____

in the sum of_____ Dollars ($_____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.

**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,**

**WHEREAS,** an order was duly made and entered by the Superior Court of the State of California, for the County of
_____ on _____,
_____ of
☐ Appointing the above Principal, _____
the estate of_____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

**NOW, THEREFORE,** if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.

Signed and dated at _____ California on _____
                        (Place)                                              (Date)



_____          _____
                As Principal                                       As Principal

                                              _____
                                                             As Principal

                                    AMERICAN CONTRACTORS INDEMNITY COMPANY

**IN WITNESS WHEREOF,** The corporate seal and name of said Surety Company is hereto affixed and attested by
_____, who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

                        By: _____          _____
                                                                        Attorney-in-Fact

Q 0800

# Probate & Fiduciary Bond Application

## BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC
900 Wilshire Blvd.. Suite 1400 • Los Angeles, CA 90017• (213) 628-2970 • (213) 628-2977 Fax

Type of Bond: _____

Hearing Date: _____

> This application must be completed in detail
> before bond is approved·for filing

Estate Name: _____
_____
_____
_____

Bond No.: _____

Amount : _____
Premium : _____
Case No.: _____

For Office Use Only

| | By | Date |
|---|---|---|
| Underwritten: | | |
| Joint Control: | | |
| Approval: | | |

Name _____  Tel. # _____

Address _____

Social Security No. _____  Driver's License # _____

Your Net Worth _____  Date of Birth _____

Employer/Retired _____  Position/Previous Position _____

Address _____  City _____  State _____  Zip _____

Tel # _____  Length of Employment _____

Do you own a home? _____  Rent? _____  Other _____

Your Bank _____  Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____  Lost a civil judgment? _____

If yes, explain _____

Have·you or your spouse filed personal bankruptcy? _____  If yes, when? _____

Are you indebted to Decedent/Conservatee? _____  If yes, amount $ _____

Secured? ☐ Yes ☐ No How? _____

Attorney handling this·case: _____

Law Firm: _____  Phone No.: _____

Address: _____

Q 0801

# ESTATE INFORMATION

Name of Decedent/Conservatee/Minor _____

Date of Birth of Conservatee/Minor _____

Estate Cash _____ Securities _____ Real Property _____

Other Assets _____ Annual Income (All Sources) _____

Bank where ESTATE ACCOUNT will be opened _____

Address _____

City _____ State _____ Zip code _____

Where will securities be kept? _____
<div align="center">(Safe deposit box, Brokerage – including Name & Address)</div>

Does estate contain a going business? _____ If yes, name _____

Type _____ Will it be continued? _____

If yes, do you understand you must have a court order to continue business? _____

Do you understand that the first year's bond premium is not refundable? _____

Do you understand all increases and reductions of the bond must be ordered by the court? _____

Do you understand the bond is in effect until a final discharge is signed by the judge and a copy delivered to the surety? _____

Do you understand the bond premium is to be paid annually? _____

Do you understand you must retain an attorney throughout the administration of this estate? _____

Do you understand that there is a $10 service charge for a credit report? _____

## INDEMNITY AGREEMENT

The undersigned applicant and/or indemnitors hereby request that American Contractors Indemnity Company and its affiliates, subsidiaries, and reinsurers (hereinafter collectively referred to as "the Company") become surety for and furnish the above bond and such other bond or bonds as may now or hereafter be required by or on behalf of the above named applicant. I understand that a consumer report may be obtained about me now and from time to time in the future, and if I ask, I will be told if a consumer report has been obtained and the name and address of the agency that supplied the report, I also understand and agree that I will be responsible for the usual and customary fee if this consumer report is obtained. The undersigned declares under penalty of perjury that the information and statements contained in this application are true, and the undersigned jointly and severally, in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds for the applicant, do for value received hereby covenant, promise and agree to pay the Company the usual annual premium; and we each jointly and severally agree to indemnify and keep indemnified the Company from and against any liability, and all losses, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree to place the Company in funds to meet any claim or demand before it shall be required to make payment. (1) Unless otherwise indicated herein, the bond applied for shall not be applicable to guarantee or insure the applicant's operation, management, or control of an ongoing business operation. (2) Additionally, the Company may at its discretion impose a "joint control" requirement as a condition of its issuance of the bond to the undersigned applicant. (3) In any event, issuance of a bond to the undersigned applicant is conditioned upon the applicant's retention of competent legal counsel throughout the duration of any period of time which the bond is in effect.

Signed this _____ day of _____ _____.

Q 0802

SD 00803

# BOND SE VICES OF CALIFOR 'A, LLC

900 Wilshire Blvd., Suite 1400 Los Angeles, CA 90017-4700 (213) 628-2970 (213) 628-2977

| | |
|---|---|
| INVOICE NO: 185293 | BOND NO: 415223 |
| INVOICE DATE: 10/23/2003 | CASE NO: BP080635 |
| DUE DATE: Due Upon Receipt | FILE NO: 1054553 |
| BOND CLASS: PROBATE | ATTY PHONE: (213) 895-4900 |

ATTN: JOHN D. PETTKER
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
444 S. FLOWER ST., #1700
LOS ANGELES, CA 90071

TO: MARK WARREN PEARY
51 CAMINO CABO
SANTA FE, NM 87508-

| Company: AMERICAN CONTRACTORS INDEMNITY COMPANY | | | Effective Date: 08/25/2003 | Anniversary Date: 08/25/2004 |
|---|---|---|---|---|
| BOND NO. | AMOUNT OF BOND | PREMIUM | | |
| 415223 | $6,000.00 | $100.00 | | |

Description

| | |
|---|---|
| 1st Year Premium on bond as Executor of the estate of Joseph Shuster, deceased. | 100.00 |
| TRW Charges | 10.00 |
| Cert. Charges | 13.97 |

Total Due    123 97

---

TO ENSURE PROPER CREDIT, PLEASE DETACH THIS PORTION AND RETURN WITH REMITTANC

Please Send Payment to:

**BOND SERVICES OF CALIFORNIA, LLC**

P.O. Box 51408 Los Angeles, CA 90051-5708

| | | |
|---|---|---|
| BOND NO: | 415223 | PRINCIPAL NAME: MARK WARREN PEARY |
| CASE NO: | BP080635 | ESTATE OF: JOSEPH SHUSTER |
| FILE NO: | 1054553 | |
| INVOICE NO: | 185293 | If you have a new address or telephone number please provide us with the new information: |
| INVOICE DATE: | 10/23/2003 | |
| TOTAL DUE: | 123.97 | |
| AMOUNT ENCLOSE | | |

# INVOICE

Q 0803

SD 00804

**EXHIBIT G**
**1037**

**PACIFIC PICTURES CORPORATION**
23852 PACIFIC COAST HWY #555
MALIBU, CA 90265

601

16-66/1220
93-

Date 10-27-08

Pay to the
Order of _Bump Services of California_                    | $ 123.92

_One Hundred Twenty Three 92/100_ _____ Dollars

**Bank of America.**
Westwood Village
930 Westwood Blvd
Los Angeles CA
310.247.2080    Case no- 8D 08 0655

For _bond # 415 223, file 1054 553_                    _M TM_

⑆122000066⑆:0601⑈00994⑈25284⑈

Q 0804

SD 00805

**EXHIBIT G**
**1038**

Ju;-08-03  02:27pm  From-                                    T-749  P.01  F-604

# RODI·POLLOCK

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION

JOHN D. CAHILL
JOHN G. PETTKER
WILLIAM R. CHRISTIAN
HENRY F. PRAMOV, JR.
ALLAN E. CERAN
C. STEPHEN DAVIS
CRIS K. O'NEALL
THOMAS CURTISS, JR.
ELIZABETH B. BLAKELY
ROBERT C. NORTON
TIMOTHY G. CEPERLEY
ALFRED KLEIN
ROBERT A. YAHIRO
KENNETH A. FRANKLIN
WADE E. NORWOOD
PRIYA G. BHATT
ANDREW W. BODEAU
JEAN M. BEASLEY

444 SOUTH FLOWER STREET
SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TEL: (213) 895-4900

KARL B. RODI (1906-1982)
DANIEL C. BOND (1942-1977)
PAUL E. SCHWAB (1886-1973)

OF COUNSEL
JOHN P. POLLOCK
JAMES M. GALBRAITH
DAVID K.W. CHANG

TELECOPIERS
(213) 895-4921
(213) 895-4922
(213) 895-4750

OUR FILE NUMBER

5891-PI

July 8, 2003

Mr. Marc Toberoff
9595 Wilshire Boulevard, 8th Floor
Beverly Hills, CA 90212

Re:     Estate of Joseph Shuster

Dear Marc:

Pursuant to our conversation yesterday afternoon, I am enclosing the following revised <u>original</u> probate documents appointing Mark Warren Peary as Executor, in place of Jean Adele Peavy, along with a complete copy for your files:

a.    Petition for Probate of Lost Will with Attachments 2c, 2d(1), 3(c) and 3(d)(1), (2) and (3); 3e(2); 3g; and Attachment 8;

b.    Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative;

c.    Nomination of Personal Representative, Declination to Act, and Waiver of Bond of Mark Warren Peary;

d.    Letters Testamentary;

e.    Duties and Liabilities of Personal Representative; and

d.    Bond Application.

Both Mr. Peary and you should review the Petition for Probate carefully. If the Petition is correct, please have Mr. Peary sign and date it where provided on the reverse side. The Duties and Liabilities of Personal Representative and the Letters Testamentary should be read and signed, but please do <u>not</u> date either of these documents.

Also enclosed is the Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative for Jean Adele Peavy's review and

Q 0805

Privileged & Confidential
All Rights Reserved

SD 00806

EXHIBIT G
1039

Jul-03-03 02:27pm From-                                         T-749   P.02   F-604

Marc Toberoff
July 8, 2003
Page 2

signature, along with the Nomination of Personal Representative for Dawn L. Peavy's
signature and return.

I will be petitioning the court for limited authority for Mr. Peary to administer the
estate under the Independent Administration of Estates Act. In view of the fact that there
is a possibility that the court may not accept the Will for probate, and that Mr. Peary is not
a resident of California, the court may require that he furnish a minimum bond. Therefore,
I have also enclosed bonding documents to be completed and signed by Mr. Peary.

Upon our receipt of these documents we will submit the Petition for Probate to the
court and publish the initiation of the probate in the appropriate newspaper. The court
hearing on the Petition will be scheduled to occur approximately 4 weeks after our filing of
these documents.

Thank you for giving our firm the opportunity to assist you in this probate matter.
Please feel free to call me if you have any questions.

Sincerely,

John D. Pettker

JDP:muc
Enclosures
261509_1.doc

Q 0806

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1040

SD 00807

Jul-06-03 02:28pm From-                                        T-748  P.03/19  F-604

DE-111

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:<br>(213) 895-4900<br>JOHN D. PETTKER, Esq. (SBN 42346)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901 | TELEPHONE AND FAX NOS.:<br>(213) 895-4921 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR *(Name)*   MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

ESTATE OF *(Name)*:   JOSEPH SHUSTER, also known as JOE SHUSTER

/lost                                DECEDENT

| PETITION FOR | [X] Probate of Will and for Letters Testamentary<br>[ ] Probate of Will and for Letters of Administration<br>        with Will Annexed<br>[ ] Letters of Administration<br>[ ] Letters of Special Administration<br>[X] Authorization to Administer Under the Independent<br>        Administration of Estates Act [X] with limited authority | CASE NUMBER:<br><br>HEARING DATE:<br><br>DEPT.:                    TIME: |
|---|---|---|

1. Publication will be in *(specify name of newspaper)*:   DAILY JOURNAL
   a. [X] Publication requested.   b. [ ] Publication to be arranged.
2. Petitioner *(name of each)*:   MARK WARREN PEARY                                      requests
   a. [X] decedent's will and codicils, if any, be admitted to probate.
   b. [X] *(name)*:  MARK WARREN PEARY
      be appointed   (1) [X] executor                    (3) [ ] administrator
                     (2) [ ] administrator with will annexed    (4) [ ] special administrator
      and Letters issue upon qualification.
   c. [X] that [ ] full [X] limited   authority be granted to administer under the Independent Administration of Estates Act.
   d. (1) [X] bond not be required for the reasons stated in item 3d.
      (2) [ ] $                    bond be fixed. It will be furnished by an admitted surety insurer or as otherwise provided by law.
              *(Specify reasons in Attachment 2 if the amount is different from the maximum required by Probate Code section 8482.)*
      (3) [ ] $                    in deposits in a blocked account be allowed. Receipts will be filed. *(Specify institution and location)*:

3. a. Decedent died on *(date)*: July 30, 1992    at *(place)*:   West Los Angeles, California
      (1) [X] a resident of the county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above located at *(specify location permitting publication in the newspaper named in item 1)*:
   b. Street address, city, and county of decedent's residence at time of death *(specify)*:   11944 Montana Avenue #305, West Los Angeles, County of Los Angeles, California 90049
   c. Character and estimated value of the property of the estate:
      (1) Personal property:              $        None
      (2) Annual gross income from
          (a) real property:              $        None
          (b) personal property:          $        None
                    Total:               $        None
      (3) Real property: $  None                  *(If full authority under the Independent Administration of Estates Act is requested, state the fair market value of the real property less encumbrances.)*

      Q 0807

   d. (1) [X] Will waives bond.   [ ] Special administrator is the named executor and the will waives bond.
      (2) [X] All beneficiaries are adults and have waived bond, and the will does not require a bond. *(Affix waiver as Attachment 3d(2).)*
      (3) [X] All heirs at law are adults and have waived bond. *(Affix waiver as Attachment 3d(3).)*
      (4) [ ] Sole personal representative is a corporate fiduciary or an exempt government agency.
   e. (1) [ ] Decedent died intestate.
      (2) [X] Copy of decedent's will dated: 6/28/1988   [ ] codicils dated:           are affixed as Attachment 3e(2).
              [X] The will and all codicils are self-proving (Prob. Code, § 8220).
                                          *(Continued on reverse)*

| Form Approved by the<br>Judicial Council of California<br>DE-111 (Rev. January 1, 1998) | PETITION FOR PROBATE | Legal<br>Solutions<br>Plus | Probate Code, §§ 8002, 10450 |
|---|---|---|---|

Privileged & Confidential
All Rights Reserved

SD 00808

EXHIBIT G
1041

Jul-08-03 02:28pm From-                                                    T-749  P.04/19  F-604

| ESTATE OF *(Name):* JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
| | |
| DECEDENT | |

**3. f. Appointment of personal representative** *(check all applicable boxes):*

> *Include in Attachment 3e(2) a typed copy of a handwritten will and a translation of a foreign language will.*

(1) Appointment of executor or administrator with will annexed:
- (a) [X] Proposed executor is named as executor in the will and consents to act.
- (b) [ ] No executor is named in the will.
- (c) [ ] Proposed personal representative is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(1)(c).)*
- (d) [X] Other named executors will not act because of [ ] death [X] declination [ ] other reasons *(specify in Attachment 3f(1)(d)).*

(2) Appointment of administrator:
- (a) [ ] Petitioner is a person entitled to Letters. *(If necessary, explain priority in Attachment 3f(2)(a).)*
- (b) [ ] Petitioner is a nominee of a person entitled to Letters. *(Affix nomination as Attachment 3f(2)(b).)*
- (c) [ ] Petitioner is related to the decedent as *(specify):*

(3) [ ] Appointment of special administrator requested. *(Specify grounds and requested powers in Attachment 3f(3).)*

g. Proposed personal representative is a [ ] resident of California [X] nonresident of California *(affix statement of permanent address as Attachment 3g)* [X] resident of the United States. [ ] nonresident of the United States.

**4.** [X] Decedent's will does not preclude administration of this estate under the Independent Administration of Estates Act.

**5. a.** The decedent is survived by *(check at least one box in each of items (1) - (3))*:
- (1) [ ] spouse [X] no spouse as follows: [X] divorced or never married [ ] spouse deceased
- (2) [ ] child as follows: [ ] natural or adopted [ ] natural adopted by a third party [X] no child
- (3) [ ] issue of a predeceased child [X] no issue of a predeceased child

b. Decedent [ ] is [X] is not survived by a stepchild or foster child or children who would have been adopted by decedent but for a legal barrier. *(See Prob. Code, § 6454.)*

**6.** *(Complete if decedent was survived by (1) a spouse but no issue (only a or b apply), or (2) no spouse or issue. Check the first box that applies):*
- a. [ ] Decedent is survived by a parent or parents who are listed in item 8.
- b. [X] Decedent is survived by issue of deceased parents, all of whom are listed in item 8.
- c. [ ] Decedent is survived by a grandparent or grandparents who are listed in item 8.
- d. [ ] Decedent is survived by issue of grandparents, all of whom are listed in item 8.
- e. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
- f. [ ] Decedent is survived by next of kin, all of whom are listed in item 8.
- g. [ ] Decedent is survived by parents of a predeceased spouse or issue of those parents, if both are predeceased, all of whom are listed in item 8.
- h. [ ] Decedent is survived by no known next of kin.

**7.** *(Complete only if no spouse or issue survived decedent)* Decedent [X] had no predeceased spouse [ ] had a predeceased spouse who (1) [ ] died not more than 15 years before decedent owning an interest in real property that passed to decedent, (2) [ ] died not more than five years before decedent owning personal property valued at $10,000 or more that passed to decedent, (3) [ ] neither (1) nor (2) apply. *(If you check (1) or (2), check only the first box that applies):*
- a. [ ] Decedent is survived by issue of a predeceased spouse, all of whom are listed in item 8.
- b. [ ] Decedent is survived by a parent or parents of the predeceased spouse who are listed in item 8.
- c. [ ] Decedent is survived by issue of a parent of the predeceased spouse, all of whom are listed in item 8.
- d. [ ] Decedent is survived by next of kin of the decedent, all of whom are listed in item 8.
- e. [ ] Decedent is survived by next of kin of the predeceased spouse, all of whom are listed in item 8.

**8.** Listed in Attachment 8 are the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person.

**9.** Number of pages attached: _____

Date:

* *(Signature of all petitioners also required (Prob. Code, § 1020).)*

                                                    ▶ _____
                                                       (SIGNATURE OF ATTORNEY)
                                                       JOHN D. PETTKER, Esq. (SBN 42346)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

MARK WARREN PEARY                                   ▶ _____
_____                       (SIGNATURE OF PETITIONER)
        (TYPE OR PRINT NAME)

_____                   ▶ _____
        (TYPE OR PRINT NAME)                           (SIGNATURE OF PETITIONER)

DE-111 [Rev. January 1, 1998]            **PETITION FOR PROBATE**                    Page two

Privileged & Confidential
All Rights Reserved

Q 0808

SD 00809

**EXHIBIT G**
**1042**

Jul-09-03  02:28pm  From-                                                T-749  P.05/19  F-604

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

ATTACHMENT 2c
Requested Additional Power

Requested Additional Power
    Petitioner requests that the court grant him the following power in addition
to the general powers conferred upon him by law and under the Independent
Administration of Estates Act: *the power to terminate prior transfers of the decedent's
copyrights pursuant to 17 U.S.C §304(c)(2)(D), and to maintain and defend on behalf of
the decedent and the estate all proceedings necessary or appropriate in connection with
this action.*

261503_1.doc

Q 0809

SD 00810

EXHIBIT G
1043

### In the Matter of the Estate of JOSEPH SHUSTER, Decedent
### Los Angeles County, California, Superior Court – Central District

### ATTACHMENT 2d(1), 3(c) and 3(d)(1), (2) and (3)

No bond should be required of petitioner to act as Executor, or if a bond is required by the Court, it should be for a nominal amount, for the following reasons:

1.    The first named Executor, Jean Adele Peavy, has signed and filed a Declination to Act as Personal Representative and Waiver of Bond of Mark Warren Peary as Personal Representative. Jean Adele Peavy, who is the sister of the decedent, is also the sole beneficiary under the decedent's Will and the sole heir at law of the decedent's estate under the laws of intestacy.

2.    Petitioner is the alternate named Executor under the decedent's Will, and the decedent's Will waives bond.

3.    Petitioner, who is the son of Jean Adele Peavy, is the nephew of the decedent.

4.    A probate proceeding with respect to the decedent's estate would be unnecessary but for the fact that a personal representative of his estate needs to be appointed for the purpose of *terminating prior transfers of the decedent's copyrights pursuant to 17 U.S.C §304(c)(2)(D).*

5.    All assets of the decedent, with the exception of the decedent's interest in and to *the copyrights,* which currently have an undetermined value, were of minimal value and transferred through a §13101 affidavit by Jean Adele Peavy shortly after the decedent's death on July 30, 1992.



Dated: _____, 2003

_____
MARK WARREN PEARY

261503_1.doc

Q 0810

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District


ATTACHMENT 3e(2)
*(Lost)* Last Will and Testament


Grounds for Admission of *Lost* Will

The decedent died more than 10 years ago on July 30, 1992.  Petitioner
and other family members have made a diligent and extensive search for the original Will
executed by the decedent on June 28, 1988, but have been unable to find it.  Petitioner
has only found a copy of such Will, which he is submitting for probate as the decedent's
lost Will.  Petitioner believes that the original of such Will has been lost or inadvertently
destroyed.  There would be no reason for the decedent to have revoked such Will by
destroying it, because the terms of the Will replicate the result if the decedent died
intestate.  Under both the Will and the laws on intestacy, petitioner's mother, Jean Adele
Peavy, who is the decedent's sister and sole surviving heir at law, would be the sole
beneficiary of the decedent's estate and, but for her declination to act, would be entitled to
be appointed personal representative.  Further, under both the decedent's Will and the
laws of intestacy, by reason of the declinations to act that have been filed concurrently
with this petition, petitioner is entitled to be appointed personal representative.

The decedent never married and never had any issue.


261503_1.doc

Q 0811

SD 00812

Jul-08-03  02:29pm  From-                                                    T-749  P.08/19  F-604

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 3g
### Nonresident of California and Permanent Address

I, Mark Warren Peary, the proposed personal representative, am a non-resident of California.  I reside in the State of New Mexico at the following residence address:

316 Horton Lane N.W.
Albuquerque, NM 87114

I hereby consent to act as the personal representative of the estate of my uncle, Joseph Shuster.

Dated: _____, 2003

_____
MARK WARREN PEARY



261503_1.doc

Q 0812

SD 00813

**EXHIBIT G**
**1046**

Jul-08-03  02:29pm   From-                                          T-749   P.09/18   F-604

In the Matter of the Estate of JOSEPH SHUSTER, Decedent
Los Angeles County, California, Superior Court – Central District

## ATTACHMENT 8

The following is a list of the names, relationships, ages, and addresses, so far as known to or reasonably ascertainable by petitioner, of (1) all persons named in decedent's will and codicils, whether living or deceased, (2) all persons named or checked in items 2, 5, 6, and 7, and (3) all beneficiaries of a devisee trust in which the trustee and personal representative are the same person:

| Name and Address | Relationship | Age |
|---|---|---|
| Mark Warren Peary<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Petitioner/Nephew | Adult |
| Jean Adele Peavy<br>316 Horton Lane N.W.<br>Albuquerque, NM 87114 | Sister | Adult |
| Dawn L. Peavy<br>11405 Lake Nemi<br>El Paso, Texas  79936 | Niece | Adult |

261503_1.doc

Q 0813

SD 00814

Jul-08-03  02:29pm  From-                                        T-748   P.10/18   F-604

1   RODI, POLLOCK, PETTKER, GALBRAITH
    & CAHILL, A Law Corporation
2   JOHN D. PETTKER (SBN 42346)
    444 South Flower Street, Suite 1700
3   Los Angeles, California 90071-2901
    Telephone: (213) 895-4900
4   Facsimile: (213) 895-4921

5   Attorneys for MARK WARREN PEARY

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES, CENTRAL

10

11  In re the Matter of the Estate of          CASE NO.

12                                             DECLINATION TO ACT AS PERSONAL
13                                             REPRESENTATIVE AND WAIVER OF BOND
    JOSEPH SHUSTER, also known as              OF MARK WARREN PEARY AS PERSONAL
14  JOE SHUSTER                                REPRESENTATIVE

15

16

17                              Decedent.

18

19  I, JEAN ADELE PEAVY, state as follows:

20      1.      I am the only sibling of the decedent, JOSEPH SHUSTER.  The decedent's and my

21  parents are both deceased, having predeceased the decedent.  I have two children, both of whom

22  survived the decedent.  They are Mark Warren Peary and Dawn L. Peavy.

23      2.      I am the sole beneficiary under the decedent's Will dated June 28, 1988, and am

24  nominated to act as Executor under such Will.

25      3.      I hereby decline to serve as personal representative of the decedent's estate, whether

26  as Executor of the decedent's Will or Administrator of his estate.

27      4.      I hereby waive the requirement of a bond by Mark Warren Peary, whether acting as

28                                                                Q 0814

1
DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
REPRESENTATIVE

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE (213)895-4900

**EXHIBIT G**
**1048**

SD 00815

Jul-08-03  02:29pm  From-                                                    T-749  P.11/19  F-604

1  Executor of the decedent's Will or Administrator of his estate.

2      Dated:_____, 2003

3

4                                        _____

5                                        JEAN ADELE PEAVY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    Q 0815

28  261504_1.doc

                                    2
DECLINATION TO ACT AS PERSONAL REPRESENTATIVE AND WAIVER OF BOND OF MARK WARREN PEARY AS PERSONAL
                                REPRESENTATIVE

RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 895-4900

**EXHIBIT G**
**1049**

SD 00816

Jul-08-03  02:30pm  From-                                                        T-749  P.12/19  F-604

RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
JOHN D. PETTKER (SBN 42346)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone: (213) 895-4900
Facsimile: (213) 895-4921

Attorneys for MARK WARREN PEARY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL

In re the Matter of the Estate of

JOSEPH SHUSTER, also known as
JOE SHUSTER

                                    Decedent.

CASE NO.

NOMINATION OF PERSONAL REPRESENTATIVE,
DECLINATION TO ACT, AND WAIVER OF BOND
OF MARK WARREN PEARY

Q 0816

I, DAWN L. PEAVY, state and declare as follows:

1.      I am the niece of JOSEPH SHUSTER (the "decedent"), the decedent named herein,
being the daughter of the decedent's sister, Jean Adele Peavy. My brother is Mark Warren Peary.

2.      If the decedent's Will is not admitted to probate and an Executor thereof is not
appointed and if my mother, Jean Adele Peavy, declines to act as personal representative of the
decedent's estate, I am a person entitled to equal priority for appointment as the personal
representative of the decedent's estate with my brother, MARK WARREN PEARY.

3.      If for any reason MARK WARREN PEARY is not appointed by the Court as
Executor of the decedent's Will, I hereby nominate MARK WARREN PEARY of Albuquerque,
New Mexico, to serve as the personal representative of the decedent's estate without the

1

NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

SD 00817

EXHIBIT G
1050

1   requirement of any bond, pursuant to the authority provided to me under Sections 8461 and 8465

2   of the California Probate Code, and I decline to act as such personal representative.

3        4.      My intent in making this nomination is to ensure the appointment of a person that I

4   trust to serve as the personal representative of my uncle's estate.

5        I declare under penalty of perjury under the laws of the State of California, that the

6   foregoing is true and correct.

7        Executed on _____, 2003, in El Paso, Texas.

8

9

10                                              DAWN L. PEAVY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   261505_1.doc                                              Q 0817

ROD, POLLOCK, PETTKER, GALBRAITH & CAHILL
A LAW CORPORATION
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071-2901
TELEPHONE: (213) 865-4800

2
NOMINATION OF PERSONAL REPRESENTATIVE, DECLINATION TO ACT, AND WAIVER OF BOND OF MARK WARREN PEARY

EXHIBIT G
1051

SD 00818

Jul-08-03  02:30pm  From-                                    T-749  P.14/19  F-604

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| (213) 895-4900 | (213) 895-4921 | |

JOHN D. PETTKER, Esq.(SBN 42346)
RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL
A Law Corporation
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
ATTORNEY FOR (Name): MARK WARREN PEARY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:  111 N. Hill Street
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central District

ESTATE OF (Name):    JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

CASE NUMBER:

## LETTERS

[X] TESTAMENTARY          [ ] OF ADMINISTRATION
[ ] OF ADMINISTRATION WITH WILL ANNEXED   [ ] SPECIAL ADMINISTRATION

**LETTERS**

1. [X] The last will of the decedent named above having been proved, the court appoints (name):
   MARK WARREN PEARY
   a. [ ] executor.
   b. [ ] administrator with will annexed.

2. [ ] The court appoints (name):

   a. [ ] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate*.
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on (date):

3. [X] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [ ] with full authority [X] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

| (SEAL) | Date: |
|---|---|
| | Clerk, by |
| | _____ (DEPUTY) |

**AFFIRMATION**

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [X] INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date):
   at (place):                              , California.

   ►_____
   (SIGNATURE)
   MARK WARREN PEARY

**CERTIFICATION**

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date:  Q 0818 |
|---|---|
| | Clerk, by |
| | _____ (DEPUTY) |

**LETTERS**
(Probate)

Legal
Solutions
℗ Plus

Probate Code, §§ 1001, 8403, 8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

SD 00819

**EXHIBIT G**
**1052**

Jul-08-03  02:30pm  From-                                                T-749  P.15/19  F-604

DE-147

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JOHN D. PETTKER, Esq. (SBN 42348)<br>RODI, POLLOCK, PETTKER, GALBRAITH & CAHILL<br>A Law Corporation<br>444 South Flower Street, Suite 1700<br>Los Angeles, California 90071-2901<br>TELEPHONE NO. (213) 895-4900    FAX NO. *(Optional):* (213) 895-4921<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* MARK WARREN PEARY | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:  111 N. Hill Street
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central District

ESTATE OF *(Name):*   JOSEPH SHUSTER, also known as JOE SHUSTER

DECEDENT

| DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE<br>and Acknowledgment of Receipt | CASE NUMBER: |
|---|---|

## DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE

When the court appoints you as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should understand the following:

### 1. MANAGING THE ESTATE'S ASSETS

**a. Prudent investments**
You must manage the estate assets with the care of a prudent person dealing with someone else's property. This means that you must be cautious and may not make any speculative investments.

**b. Keep estate assets separate**
You must keep the money and property in this estate separate from anyone else's, including your own. When you open a bank account for the estate, the account name must indicate that it is an estate account and not your personal account. Never deposit estate funds in your personal account or otherwise mix them with your or anyone else's property. Securities in the estate must also be held in a name that shows they are estate property and not your personal property.

**c. Interest-bearing accounts and other investments**
Except for checking accounts intended for ordinary administration expenses, estate accounts must earn interest. You may deposit estate funds in insured accounts in financial institutions, but you should consult with an attorney before making other kinds of investments.

**d. Other restrictions**
There are many other restrictions on your authority to deal with estate property. You should not spend any of the estate's money unless you have received permission from the court or have been advised to do so by an attorney. You may reimburse yourself for official court costs paid by you to the county clerk and for the premium on your bond. Without prior order of the court, you may not pay fees to yourself or to your attorney, if you have one. If you do not obtain the court's permission when it is required, you may be removed as personal representative or you may be required to reimburse the estate from your own personal funds, or both. You should consult with an attorney concerning the legal requirements affecting sales, leases, mortgages, and investments of estate property.

### 2. INVENTORY OF ESTATE PROPERTY

**a. Locate the estate's property**
You must attempt to locate and take possession of all the decedent's property to be administered in the estate.

**b. Determine the value of the property**
You must arrange to have a court-appointed referee determine the value of the property unless the appointment is waived by the court. You, rather than the referee, must determine the value of certain "cash items." An attorney can advise you about how to do this.

**c. File an inventory and appraisal**
Within four months after Letters are first issued to you as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate.

Page 1 of 2

SD 00820

**EXHIBIT G**
**1053**

Jul-08-03  02:31pm  From-                                              T-748  P.16/19  F-604

| ESTATE OF (Name):  JOSEPH SHUSTER, also known as JOE SHUSTER | CASE NUMBER: |
|---|---|
| | DECEDENT |

**d. File a change of ownership**
At the time you file the inventory and appraisal, you must also file a change of ownership statement with the county recorder or assessor in each county where the decedent owned real property at the time of death, as provided in section 480 of the California Revenue and Taxation Code.

### 3. NOTICE TO CREDITORS

You must mail a notice of administration to each known creditor of the decedent within four months after your appointment as personal representative. If the decedent received Medi-Cal assistance, you must notify the State Director of Health Services within 90 days after appointment.

### 4. INSURANCE

You should determine that there is appropriate and adequate insurance covering the assets and risks of the estate. Maintain the insurance in force during the entire period of the administration.

### 5. RECORD KEEPING

**a. Keep accounts**
You must keep complete and accurate records of each financial transaction affecting the estate. You will have to prepare an account of all money and property you have received, what you have spent, and the date of each transaction. You must describe in detail what you have left after the payment of expenses.

**b. Court review**
Your account will be reviewed by the court. Save your receipts because the court may ask to review them. If you do not file your accounts as required, the court will order you to do so. You may be removed as personal representative if you fail to comply.

### 6. CONSULTING AN ATTORNEY

If you have an attorney, you should cooperate with the attorney at all times. You and your attorney are responsible for completing the estate administration as promptly as possible. **When in doubt, contact your attorney.**

| NOTICE: | 1. This statement of duties and liabilities is a summary and is not a complete statement of the law. Your conduct as a personal representative is governed by the law itself and not by this summary.
2. If you fail to perform your duties or to meet the deadlines, the court may reduce your compensation, remove you from office, and impose other sanctions. |
|---|---|

## ACKNOWLEDGMENT OF RECEIPT

1. I have petitioned the court to be appointed as a personal representative.

2. My address and telephone number are (specify):   316 Horton Lane N.W., Albuquerque, NM 87114
   (505) 466-4551

3. I acknowledge that I have received a copy of this statement of the duties and liabilities of the office of personal representative.

Date:

_____               ►  _____
MARK WARREN PEARY                                              (SIGNATURE OF PETITIONER)
        (TYPE OR PRINT NAME)

Date:

_____               ►  _____
        (TYPE OR PRINT NAME)                                   (SIGNATURE OF PETITIONER)

| CONFIDENTIAL INFORMATION:  If required to do so by local court rule, you must provide your date of birth and driver's license number on supplemental Form DE-147S. (Prob. Code, § 8404(b).) |
|---|

DE-147 [Rev. January 1, 2002]                    **DUTIES AND LIABILITIES OF PERSONAL REPRESENTATIVE**           Page 2 of 2
                                                              (Probate)
                                                                                        Q 0820

Jul-08-03  02:31pm  From-                                    T-749  P.17/19  F-604

# AMERICAN CONTRACTORS INDEMNITY COMPANY

All Papers and notices may be served at                    BOND NO. _____
AMERICAN CONTRACTORS INDEMNITY COMPANY
9841 AIRPORT BLVD, 9TH FLOOR, LOS ANGELES, CA 90045

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR COUNTY OF _____

**IN THE MATTER OF**

Case Number : _____

☐ Bond upon Qualifying          ☐ Additional Bond

Premium _____
        Per Annum

**KNOWN ALL MEN BY THESE PRESENTS:**
That we, _____
as Principal, and the **AMERICAN CONTRACTORS INDEMNITY COMPANY** as Surety, are held and firmly bound
unto _____
_____
in the sum of _____ Dollars ($ _____)
for which payment, well and truly be made, we bind ourselves, our heirs, executors, successors, and assigns jointly and severally,
firmly by these presents.
**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT,**
**WHEREAS**, an order was duly made and entered by the Superior Court of the State of California, for the County of _____
_____ on _____
☐ Appointing the above Principal, _____ of
the estate of _____
☐ Directing the said Principal to execute and additional bond according to law in the sum above named.

**NOW, THEREFORE**, if the said Principal shall faithfully execute the duties of the trust according to law, then this obligation
shall be void, otherwise to remain in full force and effect.
Signed and dated at _____ California on _____
                            (Place)                                        (Date)

_____          _____
                  As Principal                                As Principal

                                           _____
                                                         As Principal

                        AMERICAN CONTRACTORS INDEMNITY COMPANY
**IN WITNESS WHEREOF**, The corporate seal and name of said Surety Company is hereto affixed and attested by
_____, who declares under penalty of perjury that he is duly authorized Attorney-in-Fact
acting under an unrevoked power of attorney on file with the Clerk of the County in which above entitled Court is located.

                        By: _____
                                                    Attorney-in-Fact

                              Q 0821

SD 00822

Jul-08-03 02:31pm From-                                    T-749  P.18/19  F-604

# Probate & Fiduciary Bond Application

## BOND SERVICES OF CALIFORNIA INSURANCE AGENCY & BROKERAGE, LLC
900 Wilshire Blvd., Suite 1400 ● Los Angeles, CA 90017● (213) 628-2970 ● (213) 628-2977 Fax

Type of Bond: _____      Bond No.: _____

Hearing Date: _____

Amount : _____

Premium : _____

| This application must be completed in detail before bond is approved for filing |

Case No.: _____

Estate Name: _____

| For Office Use Only | | |
| --- | --- | --- |
| | By.: | Date |
| Underwritten: | | |
| Joint Control: | | |
| Approval: | | |

Name _____      Tel. # _____

Address _____

Social Security No. _____      Driver's License # _____

Your Net Worth _____      Date of Birth _____

Employer/Retired _____      Position/Previous Position _____

Address _____  City _____  State _____  Zip _____

Tel # _____  Length of Employment _____

Do you own a home? _____  Rent? _____  Other _____

Your Bank _____  Bank Account # _____

Bank Address _____

What is your relationship to Decedent/Conservatee/Minor _____

What is your share of this estate (Decedent's estate only) _____

Have you a criminal conviction? _____  Lost a civil judgment? _____

If yes, explain _____

Have you or your spouse filed personal bankruptcy? _____  If yes, when? _____

Are you indebted to Decedent/Conservatee? _____  If yes, amount $ _____

Secured?  ☐ Yes  ☐ No  How? _____

Attorney handling this case: _____

Law Firm: _____      Phone No.: _____

Address: _____

Q 0822

SD 00823

Jul-08-03  02:32pm  From-                                                    T-749  P.18/18  F-604

# ESTATE INFORMATION

Name of Decedent/Conservatee/Minor _____

_____

Date of Birth of Conservatee/Minor _____

Estate Cash _____    Securities _____    Real Property _____

Other Assets _____    Annual Income (All Sources) _____

Bank where ESTATE ACCOUNT will be opened _____

Address _____

City _____    State _____    Zip code _____

Where will securities be kept? _____
                               (Safe deposit box, Brokerage – Including Name & Address)

Does estate contain a going business? _____    If yes, name _____

Type _____    Will it be continued? _____

If yes, do you understand you must have a court order to continue business? _____

Do you understand that the first year's bond premium is not refundable? _____

Do you understand all increases and reductions of the bond must be ordered by the court? _____

Do you understand the bond is in effect until a final discharge is signed by the judge and a copy delivered to the

surety? _____

Do you understand the bond premium is to be paid annually? _____

Do you understand you must retain an attorney throughout the administration of this estate? _____

Do you understand that there is a $10 service charge for a credit report? _____

## INDEMNITY AGREEMENT

The undersigned applicant and/or indemnitors hereby request that American Contractors Indemnity Company and its affiliates, subsidiaries, and reinsurers (hereinafter collectively referred to as "the Company") become surety for and furnish the above bond and such other bond or bonds as may now or hereafter be required by or on behalf of the above named applicant. I understand that a consumer report may be obtained about me now and from time to time in the future, and if I ask, I will be told if a consumer report has been obtained and the name and address of the agency that supplied the report. I also understand and agree that I will be responsible for the usual and customary fee if this consumer report is obtained. The undersigned declares under penalty of perjury that the information and statements contained in this application are true, and the undersigned jointly and severally in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds for the applicant, do for value received hereby covenant, promise and agree to pay the Company the usual annual premium; and we each jointly and severally agree to indemnify and keep indemnified the Company from and against any liability, and all losses, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds and agree to place the Company in funds to meet any claim or demand before it shall be required to make payment. (1) Unless otherwise indicated herein, the bond applied for shall not be applicable to guarantee or insure the applicant's operation, management, or control of an ongoing business operation. (2) Additionally, th' Company may at its discretion impose a "joint control" requirement as a condition of its issuance of the bond to undersigned applicant. (3) In any event, issuance of a bond to the undersigned applicant is conditioned upon the appli' retention of competent legal counsel throughout the duration of any period of time which the bond is in effect.

Signed this _____ day of _____ _____.

                                                        Q 0823

SIGN
HERE

SD 00824

FROM SIEGEL                    FAX NO.                    Mar. 13 2003 10:02AM  P1

**JOANNE SIEGEL**
**13929 MARQUESAS WAY #201A**
**MARINA DEL REY, CA 90292**

March 12, 2003

Paul Levitz
President and Publisher
DC Comics
1700 Broadway
New York, New York 10019

Dear Paul,

Thank you for your letter of March 3, 2003. Our new attorneys will be in touch with you at the appropriate time. At such time, please direct all further communications to them.

Best,

Joanne Siegel

Q 0824

SD 00825

**EXHIBIT G**
**1058**

LAW OFFICES OF
# MARC TOBEROFF

July 15, 2003

Mark Warren Peary
51 Camino Cabo
Santa Fe, NM 87508

Re: Joe Shuster Probate

Dear Warren:

Enclosed please find a fully executed copy of the probate attorney's retainer for your files.

We're on our way!

Best,

Marc Toberoff

MK/rc

Encl.

Q 0825

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

Privileged & Confidential
All Rights Reserved

SD 00826

EXHIBIT G
1059

LAW OFFICES OF
## MARC TOBEROFF

July 15, 2003

John Pettker, Esq.
Rodi, Pollock, Pettker, Galbraith & Cahill
444 South Flower Street, Suite 1700
Los Angeles, CA 90071-2901

Re: Joseph Shuster Probate

Dear John:

Please find enclosed one copy of the probate documents fully executed as directed.

I have also enclosed one fully executed copy of the retainer agreement.

I will be mailing the $2500 probate check tomorrow.

Very truly yours,

Marc Toberoff

MK/rc

Encl.

Q 0826

9595 Wilshire Boulevard, Suite 811, Beverly Hills, CA 90212 Tel: (310) 246-3333; Fax: (310) 246-3101

**Privileged & Confidential
All Rights Reserved**

SD 00827

**EXHIBIT G
1060**

## Marc Toberoff

**From:** Mistylight3@cs.com
**Sent:** Saturday, August 13, 2005 12:21 AM
**To:** MToberoff@ipwla.com
**Subject:** Burg letters

Dear Marc,
As my mom explained when she called you today, I was too ill after my extensive medical tests to call you myself. I trust the two of you have fully discussed the letters which arrived by fax this evening.

There is no need to respond to Burg further, in fact please don't, but in case it ever comes up in the future, I want to you to know that when Terry Cunningham--who was seated a few seats from my mom--leaned over in that noisy screening hall and introduced herself to my mom she said that they had met many years ago at a party that had been thrown by Jennette Kahn [the woman who used to have the job that Paul Levitz has now]. There was a lot of talking all around us and my mother couldn't hear what Ms. Cunningham said so she had to repeat that they had met years ago more than once. She still couldn't hear Ms. Cunningham so I told her what she said and even then my mom did not remember her. My mother and father attended that party more than 10 years ago at a restaurant and met many, many people that night. My mother remembered the party but did not remember Ms. Cunningham. I did not attend the party and had never met the woman before ComicCon. For Burg to make the ridiculous statement, "...Terry Cunningham with whom your client has been acquainted for 15 years" gives the impression that my mom knew who she was--(she did not)--and that she has had ongoing personal contact with her for 15 years--(again, she did not). Burg's characterization is absolutely false. Furthermore, my mother did not ask Ms. Cunningham to get Paul--she simply asked whether he was in San Diego. If Terry Cunningham decided to go and get Paul so he could say hi to my mom it was something she chose to do, not the result of a request. If she said anything to my mom before she left, my mom could not hear her and she was surprised when Paul walked up and greeted us. Now the whole thing is turning into an argument between you and Burg. I hope we will not have to deal with this matter further.

Hope your weekend is a good one.
Sincerely,
Laura

Q 0827

8/15/2005

SD 00828

Aug-12-05  09:13am   From-WEISSMA WOLFF ETAL          310-550-7       T-630   P.02/03   F-840

VIA FAX:  (310) 246-3101
AND FIRST CLASS MAIL

August 11, 2005

**David L. Burg**
a professional corporation
dburg@wwllp.com
310.860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California  90067

Re:     Siegel v. Warner Bros. Entertainment Inc., et al.
        U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
        Our File No. 2231.811

Dear Marc:

This responds to your unsigned letter of August 4, 2005, regarding the contacts between Mr. Levitz and your clients. We write for the sole purpose of setting the record straight based on the facts as we know them.

The "Terry" referred to in your letter is Terri Cunningham, with whom your client has been acquainted for 15 years. At the "Superman Returns" screening at Comic-con, Joanne Siegel (who happened to be sitting a few seats away from Ms. Cunningham) asked Ms. Cunningham if Mr. Levitz was in San Diego. After being advised that he was, Mrs. Siegel then said she would like to see him. Ms. Cunningham responded that she would attempt to get Mr. Levitz after the screening. After the screening concluded, Ms. Cunningham asked Mrs. Siegel whether she should attempt to find Mr. Levitz. Mrs. Siegel responded that she should and Ms. Cunningham proceeded to find Mr. Levitz and bring him over to where Mrs. Siegel was sitting. The conversation that you have complained about then ensued.

These are the facts as we know them, and we note that they are consistent with what you saw taking place from a "distance" of "a couple seats away." In this context, you can appreciate why we reacted the way we did to your claim

**WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP**
9665 WILSHIRE BLVD, NINTH FLOOR, BEVERLY HILLS, CA 90212  T. 310 858.7888 F: 310 550.7191 WWW.WWLLP.COM
LAWYERS

312348_1.DOC                                              Q 0828

SD 00829

Aug-12-05  09:13am  From-WEISSMAN WOLFF ETAL          310-650-7        T-530  P.03/03  F-840

Marc Toberoff, Esq.
August 11, 2005
Page 2

that Mr. Levitz "directly approached" your clients, and your unfounded
accusation that Mr. Levitz engaged in "inappropriate" conduct, as neither is true.

It certainly is your prerogative to communicate to us your clients' desire
that Mr. Levitz and DC Comics not contact them directly, but not under the
pretext that Mr. Levitz initiated the most recent series of contacts, when in fact he
did not. This does constitute manufacturing a false dispute and we stand by that
characterization.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
       (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

Q 0829

312348_1.DOC

EXHIBIT G
1063

SD 00830

Aug-12-05  09:14am  From-WEISSMANN WOLFF ETAL        310-660-7191      T-531  P.02/03  F-841

**WWBCGE**

VIA FAX: (310) 246-3101
<u>AND FIRST CLASS MAIL</u>

August 11, 2005

David L. Burg
a professional corporation
dburg@wwllp.com
310 860.3322

Marc Toberoff, Esq.
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars
Suite 1540
Los Angeles, California 90067

Re:     Siegel v. Warner Bros. Entertainment Inc., et al.
        U.S. District Court Case Nos. 04-8400 and 04-08776 DDP (RZx)
        <u>Our File No. 2231 811</u>

Dear Marc:

This responds to your letter of August 4, 2005, regarding your unauthorized meeting with Paul Levitz, President of DC Comics, on July 16, 2005 at Comic-con in violation of California Rule of Professional Conduct 2-100.

Your characterization of the events of July 16th does not comport with the facts. As you are aware, the conversation between you and Mr. Levitz took place at DC Comics' booth in a conference room at around 3:30 p.m. You and Mr. Levitz were alone in the conference room, although the fact that you went into the conference room alone with Mr. Levitz was witnessed by several people at the booth. This conversation went on for approximately 45 minutes and had nothing to do with speaking "in general terms with Mr. Levitz . . . in order not to appear rude." Rather, you were expressly engaged in an attempted settlement discussion with Mr. Levitz and, as such, your assertion that you have "always" refrained from discussion the "substance of the . . . litigation" directly with DC Comics is simply untrue.[1]

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR. BEVERLY HILLS, CA 90212  T. 310.858.7888 F. 310.550.7191 WWW.WWLLP.COM
LAWYERS

312351_1 DOC                                                          Q 0830

SD 00831

**EXHIBIT G**
**1064**

Marc Toberoff, Esq.
August 11, 2005
Page 2

Please let us know whether it is your position that you did not, in fact, have
a private conversation with Mr. Levitz in a conference room at DC's booth at
Comic-con.

Very truly yours,

David L. Burg

cc:    Patrick T. Perkins, Esq.
       James D. Weinberger, Esq.
       (via e-mail)

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

Q 0831

312351_1 DOC

Received  Aug-12-05  08:03am        From-310 550 7191             To-                    Page  003

EXHIBIT G
1065

SD 00832

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

August 12, 2005

Via Fax: (310) 550-7191 and U.S. Mail

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California  90212

Re: Siegel v. Warner Bros. Entertainment Inc. et al.
U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)

Dear David:

    This will acknowledge receipt of your second letter to me of August 11, 2005, in which you once again attempt to "set the record straight" regarding your client's direct solicitation of our clients. Your efforts to extend and belabor this dialogue are not welcome and ultimately not in your client's interest as your letters only serve to antagonize our clients.

    Our clients inform us that your recital of the occurrences at Comic-Con are completely false. While our clients experienced the events which occurred, you did not. Our clients were made uncomfortable by your clients' solicitous contact both during and after Comic-Con, and specifically asked me to request that your clients cease further direct contact with them. Please, there is no need to respond as you have already stated your position, twice. I assume that your clients will adhere to this request.

Very truly yours,

Marc Toberoff

cc: Ms. Joanne Siegel
    Ms. Laura Siegel Larson
    James D. Weinberger, Esq.

Q 0832

SD 00833

EXHIBIT G
1066

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

* ALSO ADMITTED IN NEW YORK

FACSIMILE
(310) 246-3101

August 12, 2005

Via Fax: (310) 550-7191 and U.S. Mail

David L. Burg, Esq.
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

Re: Siegel v. Warner Bros. Entertainment Inc. et al.
U.S. District Court Case Nos. 04-8400 and 04-8766 DDP (RZx)

Dear David:

This will acknowledge receipt of your letter to me of August 11, 2005, in which you continue to erroneously belabor the point about my alleged "unauthorized meeting" with Paul Levitz of DC Comics. I dispute your self-serving characterization of events of which you have no personal knowledge. For your edification, I did not enter into any conference room alone with Mr. Levitz. Mr. Levitz came up to my clients and I as we were walking the Comic-Con floor. While I was talking to Laura Siegel Larson, Mr. Levitz ushered Joanne Siegel into a DC conference room, without me. I then followed them into the room with Laura and her two boys behind me. Laura then informed her mother that her boys wanted to attend a movie event upstairs, whereupon my clients left, leaving Mr. Levitz and me in the room. The events have none of the insidious characteristics you try to attribute to them.

I already previously indicated to you in writing that I will not speak directly with your client about the substance of this action. There is nothing further that need be said on this subject.

Very truly yours,

Marc Toberoff

cc: James D. Weinberger, Esq.

Q 0833

SD 00834



# Confirmation Report – Memory Send

Page        : 001
Date & Time: Aug-12-05  05:47pm
Line 1    :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 554 |
| Date | : | Aug-12 05:46pm |
| To | : | ☎13108277227 |
| Number of pages | : | 003 |
| Start time | : | Aug-12 05:46pm |
| End time | : | Aug-12 05:47pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 554        *** SEND SUCCESSFUL ***

## LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS
* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

### FACSIMILE COVER PAGE

| TO: Laura Siegel Larson | FAX: (310) 827-7227 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 2 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0834

SD 00835

## Confirmation Report – Memory Send

Page : 001
Date & Time: Aug-12-05 06:00pm
Line 1 :
Machine ID :

| | | |
|---|---|---|
| Job number | : | 557 |
| Date | : | Aug-12 05:57pm |
| To | : | ☎13108277227 |
| Number of pages | : | 009 |
| Start time | : | Aug-12 05:57pm |
| End time | : | Aug-12 06:00pm |
| Pages sent | : | 009 |
| Status | : | OK |

Job number : 557 *** SEND SUCCESSFUL ***

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

COMMENTS:

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

| | |
|---|---|
| TO: Laura Siegel Larson | FAX: (310) 827 7227 |
| FROM: Marc Toberoff | PAGES ( Including cover ): # 9 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

FACSIMILE COVER PAGE

LAW OFFICES OF MARC TOBEROFF
A PROFESSIONAL CORPORATION
1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS
* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333
FACSIMILE
(310) 246-3101

Q 0835

SD 00836

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540
LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Laura Siegel Larson | FAX: (310) 827 7227 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): ⚡ 9 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE
INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS
PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE
READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE
AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL
SERVICE. THANK YOU.

Q 0836

SD 00837

**EXHIBIT G**
**1070**

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540

LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Joanne Siegel | FAX: (310) 821-5894 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): ~~4~~ ~~4~~ 7 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included documents:

Two August 11, 2005 David Burg letters.

Two August 12, 2005 responses from Marc.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE
INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS
PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE
READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE
AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL
SERVICE. THANK YOU.

Q 0837

SD 00838

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
LARRY S. GREENFIELD*
NICHOLAS C. WILLIAMSON
DAVID MICHAELS

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540

LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| TO: Joanne Larson | FAX: (310) 821-5894 |
|---|---|
| FROM: Marc Toberoff | PAGES ( including cover ): 2 |
| DATE : 8/12/05 | RE: Siegel vs. Warner Bros. |

**COMMENTS:**

Included document:

August 11, 2005 David Burg letter that Marc responded to on August 12, 2005.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL SERVICE. THANK YOU.

Q 0838

SD 00839

# HOLLYWOOD REPORT / By John Lippman

# The Rights Stuff

### 'Hazzard' Legal Issues Lead To $17.5 Million Payday; Discovery on a Treadmill



Seann William Scott, left, and Johnny Knoxville, right, in 'The Dukes of Hazzard'

FOR THE NEW MOVIE "The Dukes of Hazzard," the biggest payoff didn't go to the actors or even the movie's director and producer. It went to clients of Marc Toberoff, an attorney who's made a reputation suing big studios on behalf of TV-show creators who claim they're owed money for the movie rights.

The film, which opens Aug. 5, is based on the popular 1970s-early '80s TV comedy about two Southern buddies who drive around getting into trouble and outwitting some local buffoons. It stars MTV personality Johnny Knoxville and reality-TV diva Jessica Simpson.

But before reaching the screen, the movie was tied up as a group of people who held rights related to the "Hazzard" TV show sued Warner Bros., the studio making the film. Last month, in an out-of-court settlement, the studio paid them $17.5 million, according to people familiar with the situation. It is believed to be the largest sum ever to arise out of a case involving movie rights for a TV show. It amounts to about one-third of the film's original budget. Mr. Toberoff, who usually takes his cases on a contingency-fee basis, declined to say how much he made from the "Hazzard" case. Warner Bros. declined to comment on any aspect of separated-rights issues.

For years, Hollywood has been besieged by lawsuits from people who claim studios stole their ideas. But those cases generally are about alleged copyright infringement. This lawsuit involves the "separated rights" clause in the Writers Guild of America's contract with the Hol-

#### "The lawyer says he isn't an 'ambulance chaser': 'I don't take on a case unless I believe in it.'"

lywood studios. (It also includes copyright-infringement claims.) The Writers Guild contract stipulates that the creator of a TV show retains the show's movie rights. A studio—or an independent producer—can acquire those rights separately only under narrow guidelines. Separated-rights cases involve whether a producer has the right to make the material into a movie.

#### Coming to the Fore

The issue has come to the fore in recent years as studios increasingly rely on versions of popular TV shows from the 1960s and 1970s. This summer has already seen "The Honeymooners" and "Bewitched." "Miami Vice" is coming up next year, and "Fuller House Best," "The A-Team," "Magnum, P.I." and "The Man from U.N.C.L.E." are in development. It couldn't be determined whether any of those projects are facing separated-rights challenges; the Writers Guild of America says separated-rights disputes are confidential. Studios have increasingly sought safe subjects, like old hit series, because they have a track record of success and sometimes don't cost much to develop into a film script. But in some cases, the plans for saving money can backfire, and the studios

have ended up paying large amounts because of litigation tied to TV-series rights.

For example, in 1999, the family of Gilbert Ralston, the creator of the 1960s TV series "The Wild, Wild West," sued Warner on a separated-rights case. (Mr. Toberoff represented them.) The studio was about to release a $150-million-budget movie based on the TV series. The suit was settled, and Warner ended up paying the Ralston family between $500,000 and $1.5 million, people involved in the case say. (The film was a disappointment at the box office.)

In the 1960s and 1970s, creators of series often sold certain TV rights to networks. But because big studios weren't generally in the market for making movies of these shows at that time, studios didn't always try to buy the movie rights. As a result, they must now go back and acquire them from the creators or their heirs—or risk being sued. "Since the whole idea of making a movie out of a TV series was highly speculative, by and large producers and studios didn't bother to acquire the separated rights," says attorney William Grantham. He represented United Artists a few years back when the studio wanted to turn the 1960s TV series "Rat Patrol" into a movie. The Writers Guild arbitrated issues involving those rights, though the movie hasn't been made.

In the case of "Hazzard," the TV series itself was based on a 1975 United Artists movie, "Moonrunners." Producer Bob Clark acquired a script by Gy Waldron, which Mr. Waldron also directed. In 1978, Warner Bros. acquired the rights to make "Moonrunners" into the "Hazzard" TV series. But according to Mr. Clark's lawsuit, the studio never acquired the movie rights. (Mr. Clark claimed copyright issues in the lawsuit, filed in Los Angeles Superior Court last February; specifically, that the "Hazzard" movie appears to rely to a large extent on "Moonrunners." The lawsuit details 25 points in the "Hazzard" movie, from plot to characters, in which the two movies possess "glaring and substantial similarities.")

On the basis of Mr. Clark's claims, the judge issued a preliminary injunction ordering Warner to withdraw marketing materials and postpone release of the movie until the parties could settle. A big delay would have been a serious setback

for the studio, since the movie cost about $53 million to make, was a major summer entry for Warner and had been widely publicized. The studio had also started rolling out its estimated $30 million advertising campaign. Within days of the judge's ruling, Warner lawyers holed up in a conference room at Mr. Toberoff's offices, and agreed to pay Mr. Clark and his partners. A settlement was reached June 21.

#### 'A Market to Be Tapped'

Mr. Toberoff, who says he's never lost a case, estimates he's handled rights issues related to 10 shows on behalf of their creators when producers wanted to make them into movies. The lawyer says most of the issues involved "cleaning up" the separated rights of the shows." In only three cases, he says, has he gone to court. (Other disputes are arbitrated by the Writers Guild.)

After winning one settlement, "he was selling himself as an expert," says Grace Reiner, assistant executive director at the Writers Guild, who works on the arbitration of disputes over separated rights. "He saw a market to be tapped, and he tapped it," she says. Regarding his work representing TV-show rights holders, Mr. Toberoff says, "People call me an 'ambulance chaser.' But I don't take on a case unless I believe in it."

Mr. Toberoff first got into the field of TV-series rights by way of the son of Robert Pirosh, the creator of the 1960s TV series "Combat." While on the treadmill at his health club in 1994, Mr. Toberoff read an ad, placed by the son, seeking help in sorting through his father's papers. Mr. Toberoff researched what rights he had, and hadn't, been sold. When it was announced a couple of weeks later that Bruce Willis was going to star in a movie version of "Combat," Mr. Toberoff was ready to press a claim the producer did not have the movie rights to the old TV series. Mr. Toberoff says a settlement was reached, though he won't say for how much. (That movie was never made.)

Meanwhile, Mr. Toberoff has pursued another line of work: producing. His Intellectual Properties Worldwide has acquired remake rights to classics like "High Sierra" and "The Asphalt Jungle," as well as such old TV shows as "Ironside," "Police Woman," "Hart to Hart" and "F-Troop." This could theoretically

put him in a delicate position, since he representing TV-show creators suing studios, while his production company seeks the cooperation of studios that's required to fund and distribute Hollywood films. Mr. Toberoff says he is aware of the potential conflict and "keeps a definite firewall between producing and legal matters."

## Bonhams & BUTTERFIELDS

### Fine and Rare Wines
Saturday July 30, 9am
San Francisco
Simulcast Los Angeles

Pre-auction Wine Tasting
Thursday July 28, 6:30pm
Los Angeles

Inquiries
Frank Martell +1 (323) 4 6 '64 11
frank.martell@bonhams.com
Manam Cebalo +1 (415) 503 3365
manam.cebalo@bonhams.com

To attend our pre-auction wine tasting please contact:
+1 (800) 223 2854 ext 3390
events.us@bonhams.com
*Registration fee for tasting

Bonhams & Butterfields
220 San Bruno Avenue
San Francisco, California 94103
www.bonhams.com/us

### INTERESTED IN BORDEAUX FUTURES?
You can't afford not to check out:
www.goodygoody.com

<u>CONFIDENTIAL CASE SUMMARY</u>

**THEFT OF PLAINTIFFS' PRIVILEGED "SUPERMAN" LEGAL DOCUMENTS**

**DELIVERED TO DEFENDANT WARNER BROS. IN THE MIDST OF A**

**BILLION-DOLLAR LAWSUIT**

TOBEROFF & ASSOCIATES, P.C.                    July 27, 2010
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: 310-246-3333
Fax: 310-246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

EXHIBIT G
1074

SD 00841

# I.

## INTRODUCTION

This matter concerns the pre-meditated theft of highly confidential and privileged attorney-client correspondence and other documents concerning Superman (the "Stolen Documents") from the legal files of the law firm, Toberoff & Associates, P.C. (f.k.a. The Law Offices of Marc Toberoff) (the "Firm"). The Stolen Documents were then provided to Warner Bros., in the middle of an ongoing billion dollar litigation against Warner Bros. over the copyright to Superman. The Firm has proof positive as to the identity of the perpetrator – an attorney who accepted a low-paid job at the Firm and, after just three months, disappeared one afternoon without notice.

The Firm's relationship with the attorney had always been cordial, *i.e.*, no basis for a grudge or ill-feelings existed. The record reveals that the perpetrator was solely motivated by financial gain. It further appears from the record that Warner Bros. received the Stolen Documents in late December 2005, but claimed that it had received the documents for the first time on June 28, 2006.

A disturbing connection may also exist between the perpetrator and the Christensen, Miller law firm (now Glaser, Weil *et al.*). The perpetrator had last worked for Christensen Miller. He started work at the Toberoff Firm when Terry Christensen was under investigation for wire-tapping in the Pellican case. Shortly thereafter, Christensen was indicted and sentenced to prison. Shortly after the perpetrator started at the Firm, Christensen Miller began representing Warner Bros. in major cases, when previously it had been unable to secure Warner's business. When the perpetrator worked at the Firm, he often visited Christensen Miller.

No statute of limitations problems are present with respect to prosecution as the perpetrator was out-of-state for at least two years (2006-2008). See page 6 below.

# II.

## CASE SUMMMARY

### A.    Recapture of the Superman Copyright by the Families of Superman's Co-Creators

The U.S. Copyright Act (17 U.S.C. § 304) permits authors or their heirs to *recapture* their copyrights after long waiting periods (56 or 75 years) by serving statutory notices terminating their prior copyright grants ("Termination Notices"). Such provisions were enacted to permit authors and their families to realize the increased market value of their works.

**Privileged & Confidential**
**All Rights Reserved**

Confidential Case Summary

1

SD 00842

In 1997, Joanne Siegel and Laura Siegel Larson (the "Siegels"), the heirs of Jerry Siegel, the co-creator of Superman, served and filed Termination Notices to recapture Jerry Siegel's 50% co-authorship share of Superman, which Notices became effective on **April 16, 1999.**

On October 8, 2004, the Firm, on behalf of the Siegels, filed an action for declaratory relief in federal court (*Joanne Siegel et al. v. Warner Bros. Entertainment Inc., et al.* 04-CV-8400 ODW (RZx)) that the Superman Termination Notices are valid under the Copyright Act, and for other remedies.

In 2008, the Firm won a motion for summary judgment that the Termination Notices were valid and the effective; and that the Siegels had thereby successfully recaptured 50% of the original Superman copyrights and were therefore owed an accounting of Superman profits since April 16, 1999. *See Siegel v. Warner Bros. Entm't, Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008). The high profile case and ruling received considerable media attention. (Exhibit 1).

On behalf of the Estate of Joseph Shuster, Superman's other co-creator, the Firm served and filed Termination Notices to recapture Shuster's 50% co-authorship share; and such Notices become effective on **October 26, 2013.** At that point, the Siegels and the Shuster Estate will have recovered and will co-own the original Superman copyrights, and Warner Bros. and its subsidiary DC Comics (collectively, "Warner Bros.") will no longer be able to exploit new Superman works, including Superman movies, television shows or merchandise, without a new license from the Siegels and the Shuster Estate.

At stake is Warner Bros.' Superman franchise - worth well in excess of $1 billion.

B.  **Theft of Privileged Superman Documents from the Confidential Legal Files of Toberoff & Associates, P.C.**

**July 18, 2005:**

The Firm hires attorney **David S. Michaels** as its lowest paid junior attorney. It appears from Michaels' interview that he took the low-paying job because he was in desperate need of money. Michaels previously worked at the law firm Christensen Miller Fink Jacobs Glaser Weil & Shapiro LLP (now Glaser, Weil *et al.*) after law school. During this period, the lead partner, Terry Christensen, is under federal investigation in the Pellicano wiretapping case. Christensen is eventually indicted and, though defended by his partner Patty Glaser, he is convicted in May 2008, and sentenced to 3 years in prison.

**July 2005:**

Shortly after Michaels is hired by the Firm, Patty Glaser of Christensen Miller is hired by Warner Bros. to defend it in a lawsuit involving *The Dukes of Hazzard*, filed by

**Privileged & Confidential**
**All Rights Reserved**

**Confidential Case Summary**

**EXHIBIT G**
**1076**

the Firm. In a prior action involving *The Dukes of Hazzard*, Mr. Toberoff had secured a
major settlement from Warner Bros. after he had won a well-publicized preliminary
injunction against it. Warner Bros.' hiring of Patty Glaser for the second *Dukes of
Hazzard* lawsuit was curious for two reasons. First, it came shortly before Christensen's
indictment. Second, according to a long-time Christensen Miller attorney, Glaser for
years had tried without success to land Warner Bros. as a client, but was unable to do so
because Warner Bros.' General Counsel, John Schulman, allegedly disliked her. At
Christensen Miller, attorney Kevin Leichter primarily handles the *Dukes of Hazzard*
lawsuit. Shortly thereafter, Glaser and Leichter are also hired by Warner Bros. to handle
the *Watchmen* lawsuit against 20th Century Fox, again primarily handled by Leichter.

Leichter is Michaels' primary contact at Christensen Miller. On more than one
occasion, when Michaels is sent to serve papers in the *Dukes of Hazzard* lawsuit on
Christensen Miller (whose offices are close to those of the Firm), Michaels disappears for
unusually long periods of time.

### Mid-October 2005:

After three just months, and without warning or explanation, Michaels abruptly
leaves work during the middle of the day and never returns. Numerous concerned calls to
Michaels are not returned. Curiously, there had never been any conflict or "bad blood"
between Michaels and Mr. Toberoff or anyone else at the Firm. In fact, shortly before
Michaels' disappearance, Mr. Toberoff had given Michaels a present for his daughter.

### November 2005:

Michaels contacts the Siegels and attempts to "steal" these clients from the Firm
by baselessly accusing Mr. Toberoff of purported unethical conduct, like allegedly
charging the Siegels "unconscionable fees." Under the guise of protecting the Siegels,
Michaels visits them, disparages Mr. Toberoff, and attempts to shepherd the Siegels to "a
larger firm." In the process, Michaels shares with the Siegels numerous *privileged
documents* he had systematically *stolen* from Toberoff & Associates' confidential legal
files, including privileged documents belonging to the Shuster Estate, all in clear
violation of his professional and ethical duties as an attorney. In follow-up e-mails (*see*
Exhibit 2), Michaels advises the Siegels to cease all communication with Mr. Toberoff,
and he provides them with a termination letter to give to the Firm, as well as a new
retainer agreement for the Siegels to hire *Michaels* at a sharply reduced contingency fee.

During this period, Michaels also approaches Allison Giannini, another client of
Toberoff & Associates. He attempts to steal Ms. Giannini's business as well by
disparaging Mr. Toberoff, but is rebuffed.

**Michaels calculated actions were clearly motivated by the prospect of
financial gain.**

3

**Privileged & Confidential
All Rights Reserved**

**Confidential Case Summary**

SD 00844

## C.    The Stolen Documents Are Delivered to Warner Bros.

### December 2005:

On December 12, 2005, the Siegels reject Michaels' attempt to take their case away from the Firm. (Exhibit 3).

Then, unbeknownst to the Firm, the Siegels and the Shuster Estate, Michaels takes copies of the stolen documents he had shown to the Siegels, as well as numerous additional stolen privileged documents, and delivers three duplicate packages of the Stolen Documents to high-level Warner Bros. executives, each allegedly with the same anonymous cover letter ("Cover Letter," *see* Exhibit 4). The Cover Letter opens with the line: "***Consider [this] an early Holiday gift.***" (Exhibit 4, p. 1).

The Stolen Documents were allegedly received by mail by high-level Warner Bros. executives Alan Horn (President & COO), John Schulman (General Counsel), and Patti Connolly (Executive Vice President of Business Affairs).

Michael's Cover Letter is a defamatory rant against Mr. Toberoff that fails to "connect the dots," while discussing the Stolen Documents included in the packages. The Cover Letter makes little sense, as Michaels accuses Mr. Toberoff of purported unethical conduct towards the Siegels and Shuster Estate, while Michaels intentionally harms these very clients by turning over their most privileged attorney-client communications to the other side in the midst of a billion dollar lawsuit.

***We have proof positive that Michaels wrote the Cover Letter enclosing the Stolen Documents to Warner Bros.*** The statements in the Cover Letter mirror: (i) the statements made by Michaels when he met with the Siegels, (ii) the statements made by Michaels in lengthy e-mails to the Siegels of which we have copies (*see* Exhibit 2); and (iii) Michaels' *handwritten notes* of which we have copies (Exhibit 5). For example, the Cover Letter (Exhibit 4) states that "the Siegels were concerned about appearing flaky," and Michaels states in his November 13, 2005 e-mail to the Siegels: "I believe it was Laura [Siegel] that said that you would be perceived as 'flaky.'" (Exhibit 2, p.1). The Cover Letter miscalculates the Firm's fees as 47.5%, and Michaels' November 13, 2005 e-mail contains the same miscalculated 47.5% fee. *Id.* Similarly, Michaels' handwritten notes (Exhibit 5) are drafted in the same "timeline" manner as the Cover Letter and contain similar ranting statements regarding Toberoff. For example, the notes state: "His [Toberoff's] interest includes him and not you," and "his interest is to squeeze Time Warner out of hundreds of millions for himself, while taking ½ from you, he will make many more times the money than you will;" (Exhibit 5, p. 4) and the Cover Letter states: "As it stands now, the single person who would stand to gain the MOST in a settlement with Time Warner regarding the ongoing SUPERMAN legal dispute would not be the heirs themselves, but Marc Toberoff," and "[t]he below information should save Time Warner potentially millions and millions of dollars…." (Exhibit 4, p. 1).

As Michaels' accusations against Mr. Toberoff are baseless, Michaels does not report Mr. Toberoff or anyone else at the Firm to the California State Bar. In short,

Privileged & Confidential
All Rights Reserved

Michaels' phony charges of purported unethical conduct were Michaels' "cover;" first in his attempt to steal Mr. Toberoff's clients, and then for providing Warner Bros. with privileged attorney-client communications that Michaels stole from the Firm's confidential legal files.

### July 5, 2006:

Toberoff receives a vague letter from Arnold & Porter LLP, who are retained by Warner Bros. The firm states that it is holding 3 sets of documents sent to it by Warner Bros.' General Counsel, John Schulman. These are eventually disclosed to be the three identical sets Stolen Documents each with the "anonymous" defamatory Cover Letter.

Knowing that it is under a duty to immediately notify the Firm of its receipt of the Firm's privileged documents, Warner Bros. dubiously claims to have received the Stolen Documents on June 28, 2006, even though Michael's Cover Letter states *"consider it an early Holiday gift,"* and even though this statement coincides with Michael's rejection by the Siegels *on December 12, 2005*. (Exhibit 3).

When Warner Bros. is requested to provide copies of the post-marked envelopes enclosing the Stolen Documents, and/or its mail-room, security and executive logs showing the receipt of the three packages, Warner Bros. dubiously claims it has no such evidence dating its receipt of the packages. Warner Bros. claims this even though these highly sensitive documents were received by its top executives, including its President and its General Counsel, in the midst of a major lawsuit.

Instead of returning the Stolen Documents to the Firm, Warner Bros. attempts to use the privileged documents to its advantage in the Superman litigation. In the process, Warner Bros. admits that their Senior VP of Litigation, Wayne Smith reviewed the stolen documents. Subsequent conduct by Warner Bros. reveals that they are far too familiar with the contents of the privileged Stolen Documents.

### Fall 2007:

Michaels starts a one year LLM tax program at the New York University School of Law. He thereafter serves for one year as a clerk to Judge Thomas B. Wells of the United States Tax Court in Washington D.C. In total, Michaels is out-of-state for at least two years (Fall 2007 - Fall 2009) following his theft.

### March 2009:

Warner Bros. tries to re-open discovery in the Superman lawsuit on the basis of the defamatory Cover Letter. District Court Judge Stephen G. Larson refuses to do so. Discovery in the now five-year-old case had long been "closed." Toberoff & Associates feels this is the "end" of the matter and that the Firm can properly focus on litigating the merits of the Superman case.

5

**Confidential Case Summary**

**Privileged & Confidential**
**All Rights Reserved**

SD 00846

**September 2009:**

Judge Larson, who had presided over the Superman case for several years, retires. After initially being re-assigned to Judge Mariana R. Pfaelzer, the Superman case is then re-assigned to Judge Otis D. Wright II.

**January -February 2010:**

Warner Bros. fires the two law firms that had been representing it in the case for over five years, and retains Daniel Petrocelli of O'Melveny & Myers.

**May 14, 2010**

Warner Bros. is unsuccessful in its attempts to negotiate a settlement with the Siegels and the Shuster Estate regarding their Superman copyrights. Warner Bros., through its subsidiary DC Comics, sues Mr. Toberoff *personally* in federal court, purportedly based on the defamatory Cover Letter. Warner Bros. oddly attaches the anonymous Cover Letter to its complaint, and launches a well-coordinated publicity campaign to "broadcast" the letter through multiple media outlets. It is a smear campaign disguised as a lawsuit, designed to intimidate the Siegels and Shuster Estate from enforcing their rights and to intimidate Toberoff from representing them. DC Comics baselessly alleges that Mr. Toberoff tortiously interfered with purported settlement agreements between Warner Bros., the Siegels and Shusters regarding Superman.

D.    **No Statute of Limitations Problems**

The statute of limitation for criminal actions is tolled for up to three years while the defendant is not within California, pursuant to California Penal Code section 803(d), which reads as follows:

"(d)    If the defendant is out of the state when or after the offense is committed, the prosecution may be commenced as provided in Section 804 within the limitations of time prescribed by this chapter, and no time up to a maximum of three years during which the defendant is not within the state shall be a part of those limitations."

*See People v. Everett*, 66 Cal. App. 4th 270, 275 (Cal. App. 2d Dist. 1998) (citing Penal Code section 803(d), noted that the time to commence a prosecution "may be tolled 'up to a maximum of three years' if a defendant 'is not within the state.'"); *People v. Lynch*, 182 Cal. App. 4th 1262, 1272 (Cal. App. 4th Dist. 2010) ("[T]he limitations period may have been tolled for some period of time while [the defendant] was residing outside of California."). See Memorandum of Law (Exhibit 6).

6

**Privileged & Confidential**
**All Rights Reserved**

Michaels resided outside of California for at least two years (2006-2008) while he was enrolled in a Masters tax program at NYU Law School in New York (2006-2007); and thereafter clerked for a Tax Court Judge in Washington, D.C. (2007-2008).  It has not yet been ascertained but Michaels, in fact, may have resided outside California for three years or longer as he did not surface at a short-lived job in California until October 2009.

### E.    Additional Info re: David S. Michaels

**Last known telephone numbers:**

 **Mobile:** (714) 357-9369

 **Home:** (714) 357-8581

**Last known e-mail:** Dmichaels0867@hotmail.com

**Address** listed with California State Bar:

  3806 Spurr Circle
  Brea, CA 92823
  (phone, fax and e-mail noted as "unavailable")

**California State Bar No.:** 235985

**Contact info** when Michaels worked for Law Offices of Marc Toberoff in 2005:

 **Address:** 304 Maui Drive
     Placenta, CA 92870

 **Tel:** (714) 357-8581

 **E-mail:** Dmichaels0867@aol.com
     Dmichaels@ipwla.com (e-mail at Firm; July-Oct, 2005)

**Michaels' possible Washington, D.C. address:**

  400 2nd Street NW
  Washington, D.C. 20217

**Birth date:** August 15, 1967(?).

**Social Security No.:** ▮▮▮▮▮▮▮

**Marital Status:** Single, divorced, with custody over a daughter.

**Privileged & Confidential**
**All Rights Reserved**

**Confidential Case Summary**

7

SD 00848

Michaels' admission to the California State Bar was originally delayed on "moral character" grounds. Apparently, Michaels, in transferring from one college to another, had lied about his academic transcript. While at the Firm, Michaels drafted a resume (Exhibit 7) which lied about the time he had worked at the Firm (stating he started in January 2005, instead of mid-July 2005) and misrepresented his involvement in high-profile cases such as *Winnie-The-Pooh*.

Michaels was last hired in or about October 2009 by a tax litigation firm, Hochman, Salkin, Rettig, Toscher & Perez, P.C., 9150 Wilshire Blvd., Suite 300, Beverly Hills, California 90212; tel: 310-281-3200. Michaels left that firm in or about April 2010.

**Privileged & Confidential**
**All Rights Reserved**

**Confidential Case Summary**

8

SD 00849

# Exhibit 1

Privileged & Confidential
All Rights Reserved

SD 00850





**PRINTER-FRIENDLY FORMAT**
SPONSORED BY

**March 29, 2008**

# Ruling Gives Heirs a Share of Superman Copyright

**By MICHAEL CIEPLY**

Correction Appended

LOS ANGELES — Time Warner is no longer the sole proprietor of Superman.

A federal judge here on Wednesday ruled that the heirs of Jerome Siegel — who 70 years ago sold the rights to the action hero he created with Joseph Shuster to Detective Comics for $130 — were entitled to claim a share of the United States copyright to the character. The ruling left intact Time Warner's international rights to the character, which it has long owned through its DC Comics unit.

And it reserved for trial questions over how much the company may owe the Siegel heirs for use of the character since 1999, when their ownership is deemed to have been restored. Also to be resolved is whether the heirs are entitled to payments directly from Time Warner's film unit, Warner Brothers, which took in $200 million at the domestic box office with "Superman Returns" in 2006, or only from the DC unit's Superman profits.

Still, the ruling threatened to complicate Warner's plans to make more films featuring Superman, including another sequel and a planned movie based on the DC Comics' "Justice League of America," in which he joins Batman, Wonder Woman and other superheroes to battle evildoers.

If the ruling survives a Time Warner legal challenge, it may also open the door to a similar reversion of rights to the estate of Mr. Shuster in 2013. That would give heirs of the two creators control over use of their lucrative character until at least 2033 — and perhaps longer, if Congress once again extends copyright terms — according to Marc Toberoff, a lawyer who represents the Siegels and the Shuster estate.

"It would be very powerful," said Mr. Toberoff, speaking by telephone on Friday. "After 2013, Time Warner couldn't exploit any new Superman-derived works without a license from the Siegels and Shusters."

**Privileged & Confidential**
**All Rights Reserved**

Ruling Gives Heirs a Share of Superman Copyright - New York Times    http://www.nytimes.com/2008/03/29/business/media/29comics.html?_...

Time Warner lawyers declined to discuss the decision, a spokesman said. A similar ruling in 2006 allowed the Siegels to recapture their rights in the Superboy character, without determining whether Superboy was, in fact, the basis for Warner Brothers's "Smallville" television series. The decision was later challenged in a case that has yet to be resolved, said Mr. Toberoff, who represented the family in that action.

This week's decision by Stephen G. Larson, a judge in the Federal District Court for the Central District of California, provided long-sought vindication to the wife and daughter of Mr. Siegel, who had bemoaned until his death in 1996 having parted so cheaply with rights to the lucrative hero.

"We were just stubborn," Joanne Siegel, Mr. Siegel's widow, said in a joint interview with her daughter, Laura Siegel Larson. "It was a dream of Jerry's, and we just took up the task."

The ruling specifically upheld the Siegels' copyright in the Superman material published in Detective Comics' Action Comics Vol. 1. The extent to which later iterations of the character are derived from that original was not determined by the judge.

In an unusually detailed narrative, the judge's 72-page order described how Mr. Siegel and Mr. Shuster, as teenagers at Glenville High School in Cleveland, became friends and collaborators on their school newspaper in 1932. They worked together on a short story, "The Reign of the Superman," in which their famous character first appeared not as hero, but villain.

By 1937, the pair were offering publishers comic strips in which the classic Superman elements — cape, logo and Clark Kent alter-ego — were already set. When Detective Comics bought 13 pages of work for its new Action Comics series the next year, the company sent Mr. Siegel a check for $130, and received in return a release from both creators granting the company rights to Superman "to have and hold forever," the order noted.

In the late 1940s, a referee in a New York court upheld Detective Comics' copyright, prompting Mr. Siegel and Mr. Shuster to drop their claim in exchange for $94,000. More than 30 years later, DC Comics (the successor to Detective Comics) gave the creators each a $20,000-per-year annuity that was later increased to $30,000. In 1997, however, Mrs. Siegel and her daughter served copyright termination notices under provisions of a 1976 law that permits heirs, under certain circumstances, to recover rights to creations.

Mr. Toberoff, their lawyer, has been something of a gadfly to Warner in the past. In the late 1990s, for example, he represented Gilbert Ralston, a television writer, in a legal battle over his rights in the CBS television series "The Wild Wild West," which was the basis for a 1999 Warner Brothers film that starred Will Smith. The case, said Mr. Toberoff, was settled.

Privileged & Confidential
All Rights Reserved

6/3/2010    SD 00852

Compensation to the Siegels would be limited to any work created after their 1999 termination date. Income from the 1978 "Superman" film, or the three sequels that followed in the 1980s, are not at issue. But a "Superman Returns" sequel being planned with the filmmaker Bryan Singer (who has also directed "The Usual Suspects" and "X-Men") might require payments to the Siegels, should they prevail in a demand that the studio's income, not just that of the comics unit, be subject to a court-ordered accounting.

Mrs. Siegel and Ms. Larson said it was too soon to make future plans for the Superman character. But they were inclined to relish this moment.

"I have lived in the shadow of this my whole life," Ms. Larson said. "I am so happy now, I just can't explain it."

This article has been revised to reflect the following correction:

Correction: April 1, 2008
A picture caption with an article on Saturday about a legal victory for the heirs of Jerry Siegel, a creator of the Superman action character, misstated the given name of his co-creator. He was Joe Shuster, not Max. The article also misspelled Mr. Siegel's family name as Seigel in one reference.

Copyright 2008 The New York Times Company

Privacy Policy | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map

Privileged & Confidential
All Rights Reserved

6/3/2010   SD 00853

EXHIBIT G
1086



http://www.variety.com/index.asp?layout=print_story&articleid=VR1117983184&categoryid=13

To print this page, select "PRINT" from the File Menu of your browser.

**Posted: Sun., Mar. 30, 2008, 8:00pm PT**

# Warner vexed by legal Man of Steel

## Lawyer Toberoff dings Superman

### By DIANE GARRETT

He's a superhero to rights holders -- but Kryptonite to studios.

Last week, attorney Marc Toberoff won a potentially costly "Superman" victory against Warner Bros. for co-creator Jerome Siegel's heirs. The federal ruling, which gives the heirs a stake in rights sold 71 years ago, could put a serious crimp on future plans for one of the studio's most enduring -- and lucrative -- franchises, especially if co-creator Joe Shuster's heirs follow suit in five years, when they are eligible to do so.

As it is, the studio has at least two Superman projects in development -- a follow-up to Bryan Singer's "Superman Returns" and "Justice League" -- and it may end up paying tens of millions from the domestic haul of "Superman Returns" to Siegel's heirs under the ruling, which applies to domestic monies for Superman projects since 1999.

The case is Toberoff's latest -- and potentially most damaging -- claim against the studio. The dedicated copyright crusader has pursued claims involving "Wild Wild West," "Dukes of Hazzard," "Smallville" and the upcoming "Get Smart."

He has gone after other studios, including Sony, but his most high-profile cases -- and victories -- have involved Warners. The studio paid "Moonrunners" producer Robert B. Clark a $17.5 million settlement in a case about similarities between that 1974 movie and the bigscreen "The Dukes of Hazzard." And a federal judge ruled earlier in the Siegels' favor over "Smallville," although that was challenged and the case still being resolved.

The studio declined to comment on the latest ruling in favor of their legal nemesis, issuing only a statement noting that, "substantial issues relating to the accounting of profits were ruled in our favor."

Among these issues: international profits, trademark-related revs and profits stemming from Superman

Privileged & Confidential
All Rights Reserved

http://www.variety.com/index.asp?layout=print_story&articleid=VR1...

fare produced before 1999, when Siegel's heirs terminated the earlier copyright arrangement under a 1976 law.

To the Siegels, Toberoff's legal maneuvers are nothing short of heroic. The family had been destitute for years after Siegel sold rights to his Man of Steel to Detective Comics for $130. DC Comics had started to pony up more monies after Warners made successful movies based on the character, but Siegel had long wished to redress the fact he had gotten so little from his creation; he died in 1996.

Toberoff has set up a production company, Intellectual Properties Worldwide, to develop films around these and other titles. And he has built up a sideline business producing bigscreen adaptations of the projects whose copyright claims he pursues. He has a producing credit on "Fantasy Island," a Sony project for Eddie Murphy, as well as "Sanford and Son."

Read the full article at:
http://www.variety.com/article/VR1117983184.html

Like this article? Variety.com has over 150,000 articles, 40,000 reviews and 10,000 pages of charts. Subscribe today!
http://www.variety.com/emailfriend
or call (866) MY-VARIETY.
Can't commit? Sign up for a free trial!
http://www.variety.com/emailfriend

© 2010 Reed Business Information
Use of this Website is subject to Terms of Use. Privacy Policy

**Privileged & Confidential**
**All Rights Reserved**

2 of 3

6/3/2010 3:54 PM



Advertisement

http://www.variety.com/index.asp?layout=print_story&articleid=VR1118007269&categoryid=1236

To print this page, select "PRINT" from the File Menu of your browser.

**Posted: Thurs., Aug. 13, 2009, 4:34pm PT**

# Superman co-creator's family given rights

## Siegels now control character's Krypton origins

### By MARC GRASER

Warner Bros. and DC Comics have lost a little more control over the Man of Steel.

In an ongoing Federal court battle over Superman, Judge Stephen Larson ruled Wednesday that the family of the superhero's co-creator, Jerry Siegel, has "successfully recaptured" rights to additional works, including the first two weeks of the daily Superman newspaper comic-strips, as well as portions of early Action Comics and Superman comic-books.

The ruling is based on the court's finding that these were not "works-made-for-hire" under the Copyright Act.

This means the Siegels -- repped by Marc Toberoff of Toberoff & Associates -- now control depictions of Superman's origins from the planet Krypton, his parents Jor-El and Lora, Superman as the infant Kal-El, the launching of the infant Superman into space by his parents as Krypton explodes and his landing on Earth in a fiery crash.

The first Superman story was published in 1938 in Action Comics No. 1. For $130, Jerry Siegel and co-creator Joel Shuster signed a release in favor of DC's predecessor, Detective Comics, and a 1974 court decision ruled they signed away their copyrights forever.

In 2008, the same court order ruled on summary judgment that the Siegels had successfully recaptured (as of 1999) Siegel's copyright in Action Comics No. 1, giving them rights to the Superman character, including his costume, his alter-ego as reporter Clark Kent, the feisty reporter Lois Lane, their jobs at the Daily Planet newspaper working for a gruff editor, and the love triangle among Clark/Superman and Lois.

While ownership of the Man of Steel is one point of all this legal activity, the real issue is money and how much Warner Bros. and DC owe the Siegels from profits they collected from Superman since 1999,

**Privileged & Confidential**
**All Rights Reserved**

SD 00856

when the heirs' recapture of Siegel's copyright became effective.

DC owns other elements like Superman's ability to fly, the term kryptonite, the Lex Luthor and Jimmy Olsen characters, Superman's powers and expanded origins.

In a statement, Warner Bros. and DC said, "Warner and DC Comics are pleased that the court has affirmed that the vast majority of key elements associated with the Superman character that were developed after Action Comics No. 1 are not part of the copyrights that the plaintiffs have recaptured and therefore remain solely owned by DC Comics."

The Shuster estate originally did not participate with the Siegels' case because Shuster has no spouse or children. But his estate later won a ruling of a recapture identical to the Siegels, which will be effective in 2013. At that point, the Siegels and Shusters will own the entire copyright to Action Comics No. 1. That will give them the chance to set up Superman pics, TV shows and other projects at another studio.

If they want to get a new "Superman" or even "Justice League" pic featuring the superhero, Warner Bros. and DC will be forced to go into production by 2011.

Read the full article at:
http://www.variety.com/article/VR1118007269.html

Like this article? Variety.com has over 150,000 articles, 40,000 reviews and 10,000 pages of charts. Subscribe today!
http://www.variety.com/emailfriend
or call (866) MY-VARIETY.
Can't commit? Sign up for a free trial!
http://www.variety.com/emailfriend

© 2010 Reed Business Information
Use of this Website is subject to Terms of Use. Privacy Policy

Privileged & Confidential
All Rights Reserved

2 of 2                                                                 6/3/2010 5:44 PM

SD-00657

**EXHIBIT G**
**1090**

**SPECIAL REPORT — POWER LAWYERS:** THR's annual list of
the 100 most influential entertainment attorneys in the U.S. ▶14

# The Hollywood Reporter.

July 24-26, 2009    $5.99 (U.S.)   $8.99 (Can)   £5.50 (U.K.)   €9.25 (EU)    **INTERNATIONAL WEEKEND EDITION**   THR.com

# 'Avatar' out of the blue

*Fox lets fans in on Cameron's
magnum opus at Comic-Con*

By Steven Zeitchik and Borys Kit

SAN DIEGO — James Cameron and Fox took the wraps off "Avatar," their pricey, visually splashy 3D movie, to a deeply enthusiastic if not over-the-top hysterical crowd Thursday at Comic-Con.

Cameron warmed up the sci-fi-minded audience by asking, "Who wants to go to another planet?" before rolling nearly 25 minutes of scenes from his otherworldly tale, set on the fictional planet of Pandorum.

A few expositional scenes showing main character Sam Worthington becoming an avatar (a blue-skinned human-alien hybrid) segued into a series of jungle battle scenes — many of them striking in color and scope — in which Worthington and co-star Zoe Saldana fight prehistoric-looking creatures.

The footage showed a vividly original world complete with its own language and ecology.

"Everybody always asks, 'Where have you been?' Well, that's *continued on page 49*



### MORE COMIC-COVERAGE

▲ SURPRISE GUEST: Tim Burton brought his Mad Hatter, Johnny Depp, onstage during the "Alice in Wonderland" presentation. PAGE 49

▶ FOCUS: Studios and networks are taking their products to the people in San Diego. PAGE 50

**THR.COM/COMIC-CON**


Showtime is creating animated webisodes for the fall that will serve as a "Dexter" prequel. Michael C. Hall will do the voice. Read about that and the happenings in Hall H throughout the weekend with THR's team of bloggers.


Fox unspooled nearly 25 minutes of James Cameron's epic "Avatar" in San Diego.

# Warwick stays in tune with 'Idol'

By Nellie Andreeva

One by one, Fox's "American Idol" is securing its key players.

"Idol" executive producer/showrunner Ken Warwick has inked a three-year deal with the show's co-producer, FremantleMedia North America, to remain at the helm of television's top series. The pact, said to be well into the eight-figure range, is believed the richest for a reality showrunner.


Warwick

It comes on the heels of another three-year deal — a $45 million agreement inked recently by host Ryan Seacrest with "Idol" co-producer 19 Entertainment — that broke a money record for a reality host.

FremantleMedia declined comment on Warwick's deal.

Warwick has been on "Idol," created by Simon Fuller, since the show's first episode in 2000. He was co-showrunner for the first seven seasons alongside Nigel Lythgoe and became sole showrunner when Lythgoe left last summer.

During his first solo stint at *continued on page 52*


0 71896 47619 5   3 0>

**Privileged & Confidential**
**All Rights Reserved**

SD 00858

**EXHIBIT G**
**1091**

# Power of Attorneys

*In a down economy, a tenacious Hollywood lawyer is more important than ever. Here are 100 of the best in the biz.*

"It's really rough out there." That's a top talent attorney bemoaning the economic sea changes washing over every corner of Hollywood — yes, even the lawyers are feeling the pinch. And yet, as studios squeeze star salaries and the credit crunch slows the pace of deal activity, compiling The Hollywood Reporter's third annual list of the 100 most influential entertainment lawyers in America was no easy task. From high-stakes litigation like the battle between Warner Bros. and Fox over "Watchmen" to the year-long maneuvering that paired DreamWorks with India's Reliance Big Entertainment and Disney, the industry's most compelling dramas increasingly cast lawyers in the starring roles. To put together the list, we again solicited nominations from the community on our entertainment law blog (THREsq.com), then dove into our own research on the deals closed, the cases won and the clients signed. Some attorneys are such mainstays in the business that they've made the list each year, others are appearing for the first time based on recent performance. Only U.S.-based attorneys are eligible, and no full-time law professors or in-house studio or network lawyers are allowed — except one, Warner Bros. president of worldwide business affairs Steve Spira, who is this year's Raising the Bar Studio Lawyer Award honoree at today's Power Lawyers breakfast. To mix things up, we asked a few Power Lawyers veterans to give us some free legal advice. Read closely, this wisdom usually costs hundreds of dollars an hour. We consider this issue less a power list than a reference guide to 100 amazing entertainment attorneys. It's really rough out there. That's why you need a good lawyer.

— *Matthew Belloni*

**Illustrations by
Chris Morris**



**THR.com** Full attorney profiles, coverage of today's Power Lawyers breakfast and a Web-only Q&A with NBC Universal antipiracy guru Rick Cotton at THREsq.com.

Privileged & Confidential
All Rights Reserved

his idea for an Americanized version of the Eurovision Song Contest, winning a potentially influential decision allowing early dismissal of reality show lawsuits if the defendant presents good evidence of independent creation.

## Marc Toberoff
**Toberoff & Associates**
Toberoff says Hollywood operates under the incorrect assumption that if a large company controls a successful entertainment franchise, it must have cleared all the rights for future use. "I have proven time and time again that's not always the case," he says. His biggest victory came when he represented the estate of comic book artist Joe Shuster in a battle to terminate Warner Bros.' copyright to Superman. He emerged victorious on that issue, though he lost a separate trial this month over the accounting repercussions of Shuster winning his share. Meanwhile, Toberoff recently filed a $20 million breach of contract suit on behalf of a charitable trust created by "Dukes of Hazzard" creator Gy Waldron over the sequel to the movie. If the case sounds familiar, Warner Bros. paid $14 million to settle a previous case over the first "Dukes" movie after Toberoff won an injunction against its release.

## Howard Weitzman
**Kinsella Weitzman Iser**
**Kump & Aldisert**
After 45 years in practice, Weitzman says he still loves "the challenge of solving problems." And there's plenty out there: Recent representations



**FREE ADVICE**

Martin Singer
*Lavely & Singer*

**How do I keep my sex tape off the Internet?**
Don't make one! But if you must, here are some tips on how to keep it private. The person who records the tape is the copyright owner. So you should be the camera-person and try to own or co-own the copyright because third-party distributors are less likely to touch a sex tape if there is a potential copyright claim. Even if you don't own the copyright, you also can assert claims for violation of your rights of privacy and publicity, both of which can lead to injunctions against distribution. Unless someone is on the tape telling you that the tape will be exploited, the release will violate your expectation of privacy. Plus, your name or image can't be used for commercial purposes without your consent, so you can stop the promotion of the tape if not the release itself. Finally, if you didn't know you were being taped, criminal charges might also be appropriate.

*Singer represents talent in high-stakes litigation against media companies and is currently handling three cases involving celebrity sex tapes.*

include Rande Gerber in litigation involving the Hard Rock Hotel in San Diego; Sharon Osbourne in a case brought against her by a "Rock of Love: Charm School" contestant; and a suit over an HBO Farrah Fawcett documentary. The former Universal exec vp operations also was brought in recently to handle disputes on behalf of the Michael Jackson estate.

**CORPORATE**

>> The big deals haven't disappeared, they've just gotten tougher. And they require even tougher lawyers.

## Daniel Black
**Greenberg Traurig**
Many probably wish Black hadn't done such a good job helping Heidi Montag and Spencer Pratt craft their growing cottage industry, but he treats Speidi Inc. the same as all his corporate clients. Black handles many of Microsoft's Hollywood deals and this year helped concert events powerhouse AEG craft its digital strategy. Next-generation technology has inspired him since an early visit to the World Fair, and the same sense of discovery applies to digital deal-making in an unsettled industry: "Because there's not an existing paradigm you can mirror," he says.

## P. John Burke
**Akin Gump Strauss Hauer & Feld**
"It's kind of our sweet spot," Burke says of his specialty repping the money side of film finance deals. That money isn't flowing like it once was, but Burke is still handling Dune Capital Management's $600 million, 60-picture production and distribution deal with Fox,

and Dresdner Kleinwort's two $300 million slate financing arrangements for Spyglass Entertainment and Paramount. He also continues to oversee Comerica's $500 million credit facility for Summit Entertainment and Bank of America's $1.2 billion investment in Village Roadshow to co-finance films with Warner Bros.

## Joe Calabrese
**O'Melveny & Myers**
The credit crisis doesn't scare Calabrese. "We've seen this before, and we're prepared for it," he says. Calabrese is fighting back with unique deals, like helping the Digital Cinema Implementation Partners in its $1 billion effort to digitize movie screens across North America. He's also behind the International Olympic Committee's $100 million deal with China Central Television, and he's helping Cineworld Group to double the movie theater chain's number of digital projectors. By the deal's completion, the U.K. company will be able to show 3D films to 40,000 customers at a time.

## Robert Darwell
**Sheppard Mullin**
**Richter & Hampton**
Darwell wanted to be an ambassador to France and even learned the language at the University of Paris. "But there's only two ways to get there," he says. "Either have a lifelong career in civil service, or wind up friends with the president. I have to work on the second one." Instead he has become a go-to lawyer for international film finance and production work on projects like "Milk" and "Che." He broke ground with a negative pickup deal for a video game adaptation and brokered remake rights for "Bienvenue Chez les Ch'tis" to Overbrook Entertainment. *Tres bien!*

## Nancy Derwin-Weiss new
**Wildman Harrold**
The Wildman firm is making an aggressive push into Hollywood with talented pickups like Derwin-Weiss, a marketing law specialist and veteran of Paramount's digital division. Along with recently hired colleagues Alan Friel, Carole Handler, Ken Suddleson and Fred Bernstein, Derwin-Weiss is counseling such studio clients as CBS, MGM and Summit on how far they can take their campaigns. "Marketing folks want to push the envelope," she says. "Our job is to say, 'Here are the issues, here are the potential risks, if you want to take the risk you can.'" Next on Derwin-Weiss' plate is Summit's massive push for "Twilight" sequel "New Moon."

## John Frankenheimer
**Loeb & Loeb**
Don't write off the music business just yet. "The financial community is looking more favorably at it," Frankenheimer says. Plus, the major labels are starting to get acquisitive. This year, he repped Imagem Music Group in a $250 million deal to acquire the Rodgers & Hammerstein catalog of musicals and songs, and he finished up Univision's sale of its music recording and publishing business to Universal Music Group for $153 million. Frankenheimer also reps several top acts, including Diana Ross, Vince Gill and Duncan Sheik.

## Josh Grode
**Liner Grode Stein Yankelevitz**
**Sunshine Regenstreif & Taylor**
The son of an entertainment lawyer (mom Susan has repped "The Simpsons" creator Matt Groening), Grode is carving a niche as a practical dealcloser for complex financings. He repped Union Bank and Comerica in an

Privileged & Confidential
All Rights Reserved

36  THR.COM

07.24.09

SD 00860

# Exhibit 2

**Privileged & Confidential**
**All Rights Reserved**

SD 00861

Page 1 of 2

Subj:
Date:       11/13/2005 3:27:35 PM Pacific Standard Time
From:       Dmichaels0667@aol.com
To:         J Mistylight3

Laura and Joanne,

    I once again thank you for inviting me to speak with you last Thursday. I have been thinking about your situation continuously and hope that you know that I truly sympathize with you and share in the disappointment you are feeling. That is what compelled me to contact you, and I must say that I know I did the right thing, both personally and professionally. It will be a day I will never forget and hopefully a day that will forever end the dishonesty, corruption and greed that has followed your father's wonderful creation.

    One of the last things you said to me was that you didn't know where to go or what to do, or whether any firm would take your case or give you the appropriate contingency agreement given that you have already been represented by two firms in this matter (I believe it was Laura that said that you would be perceived as "flakey"). You also expressed concern over the ability to terminate your current arrangement and whether you had a viable defamation claim with Michael. Indeed there is much to think about and an urgency to this case.

    Last night, I completed research in all of these areas. I will very briefly summarize what I have found, but we will need to meet very soon to discuss in person!

    As to your ability to terminate your current representation, you have an absolute right to do so, even if the attorney has rendered valuable legal services. Essentially, you have justifiably lost the confidence in the integrity of your attorney. I have several drafts completed for you. They will all be satisfactory.

    The current circumstances, as we have previously discussed, mandate a swift change to protect your interests and the future interests of your heirs. Recall, nearly half (in your case 45%) of the proceeds received in this case will go to your current counsel, an amount far in excess of what you and your children and grandchildren should be willing to give. I reiterate this point to remind you of how unconscionable your current contingency arrangement is. In light of Marc's undisclosed arrangement with the Shuster's, an agreement if you recall garner's Marc another 50% of Superman (the aggregate will amount to 47.5% of the total compensation for Superman - Siegel and Shuster's interests combined), Marc has more to gain than any of the heirs, and indeed, will earn an amount nearly equal to all of the heirs combined. This must not happen and will not happen once he is terminated. I have two notable authorities with whom you may contact concerning the impropriety of Marc's actions. I strongly advise against any further communication with Marc in any way.

    I have completed a thorough and exhaustive search of law firms in the area (Los Angeles and Orange County, and yes Joanne, Santa Monica too!) and have narrowed appropriate choices down to four. In my search, I considered the firm's reputation, experience and success in copyright litigation (especially trial), history of taking cases on contingency and issues of conflict as Time Warner and its many subsidiaries have been represented by many firms. In addition, I have several other contacts who would be most helpful in assisting me, however, I have not been able to exploit this avenue as I promised you I would not disclose your situation. With your permission, I believe I can find additional opportunities for your consideration.

    As to your inquiry regarding defamation, I have concluded the research. To narrow the issues and ultimately determine the viability of a claim, we must meet so that I may discuss the applicable law, and, more importantly, discuss issues which may weigh against bringing such

<div align="center">Sunday, November 13, 2005    CompuServe: Mistylight3</div>

Privileged & Confidential
All Rights Reserved.

SD 00862

<div align="center">EXHIBIT G
1095</div>

an action at this time.  Recall that we do not know if Michael has made a deal with anyone concerning his rights.  This information can be readily ascertained by having your attorney contact Michael's attorney.  I cannot emphasize enough the importance of having a good relationship with Michael's counsel.  He will ultimately be the person to convince Michael to stay "united" with you and secure the best possible outcome in your case.  To clarify, a new contingency agreement which rewards the heirs will greatly enhance Michael's recovery far beyond any settlement offer he would receive, and would undoubtedly be conveyed by his attorney as the appropriate course.

If I may comment on your case, little has been done in terms of negotiations or litigation.  I have a discovery plan which I prepared and which I would like to share with you (Superman and Superboy).  In a nutshell, the validity of the termination notices is of primary concern.  I do not feel that much discovery, if any, will be necessary to move forward with that issue and have the court declare them valid.  As well, simultaneous valuation of your copyright interests and an audit will provide the necessary figures you will need for meaningful negotiations.

As you probably can tell, I am excited for you.  You have a wonderful case.  Please do not feel like you are "flakey" in any way.  I understand the facts and law surrounding your case, and to have settled with Ramer would have been a great disappointment.  You did the right thing with Ramer.  You could not have known Marc would have done what he did.  Your case involves enormous financial reward, and unfortunately that attracts some rather unfortunate opportunists.

I saw this happening at my firm and felt I had a professional responsibility to leave.  I ultimately contacted you because you needed an advocate.  I have taken a risk in presenting you with much of the information we discussed, but I had to come forward for you.  As I said before I left last Thursday, I am offering to take your case to an appropriate firm and to explain the circumstances surrounding your need for change.  I would welcome the opportunity to protect your interests under such an arrangement, where a wealth of support, experience and understanding would ensure just compensation (and an appropriate contingency fee arrangement (10-15% with a "cap")).

By the way, Joanne, my father says it was the "Cloverleaf" bowling alley on Brecksville Road (Route 21) where he used to set "pins" in Cleveland.  He was not sure whether it was in existence before the early 1950's though.  My mother and father were raised in Garfield Heights.

I would love to hear from you as soon as possible, email or otherwise.  Phone:  714 357-8581.

Yours,

David

Sunday, November 13, 2005    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

SD 00863

**EXHIBIT G**
**1096**

Subj:     **Re:**
Date:     11/15/2005 12:00:07 PM Pacific Standard Time
From:     Dmichaels0867@aol.com
To:       A Mistylight3

Laura,

    Great.  Speak to you soon.    David

Tuesday, November 15, 2005     CompuServe: Mistylight3

**Privileged & Confidential**
**All Rights Reserved**

SD 00864

EXHIBIT G
1097

| | |
|---|---|
| Subj: | **meeting** |
| Date: | 12/7/2005 8:23:27 AM Pacific Standard Time |
| From: | Dmichaels0867@aol.com |
| To: | Mistylight3 |

Laura,

I am available at any time Thursday and Friday of this week and Tuesday thru Thursday next week. The weekend and Mondays and Fridays would be fine with notice as I would have to arrange for help with my daughter. Hope all is well!

David

Wednesday, December 07, 2005    CompuServe: Mistylight3

**Privileged & Confidential**
All Rights Reserved

SD 00865

EXHIBIT G
1098

Subj:     **model contingency fee arrangement - superman**
Date:     12/9/2005 4:30:51 PM Pacific Standard Time
From:     Dmichaels0887@aol.com
To:       Mistylight3

Laura and Joanne,

    I have completed a model contingency fee agreement for your review and a draft letter terminating your legal representation with Marc as promised in our last meeting (I cut and pasted the contingency agreement below, however, I will have to email you later today or tomorrow the letter as it is on a different computer). I am sure you will find both to your liking.

    As to the ethical issues we have discussed, I also prepared a detailed outline for my protection, presentation to the California State Bar for prosecution, and for your records. I will forward that to you in a couple of days. I can only forward you that portion which deals specifically with your cases.

    As stated in our last conversation on the phone, I would welcome the opportunity to meet with you both again to discuss your case. I have completed research on all issues in Superman and Superboy, including all defenses. I have done this without any expectation of representing your interests, but it indeed would be an honor to do so. I am sure I have become more immersed in your case and now know the case better than anyone, Marc Toberoff included. I have the financial resources to advance all costs of both the Superman and Superboy matters.

    In any event, I certainly would like to "show off" my charts to you. Your case is strong and should garner a significant outcome in the nine figure range. Indeed, a partial summary judgment motion as to Warner's statute of limitations defense, the alleged settlement agreement, the validity and timing of the termination notices, the ads, and the failure to terminate the consent judgment should all come out in your favor and should be filed immediately so as to pressure Warner to settle on the heals of Superman Returns (if a meet and confer is done in the next few weeks, the summary judgment motion should be decided within three short months!). I have seen trailers at the theatres already. Superboy is also ripe for partial summary judgment as well. I have so much stategy to share, and such a desire to help you.

    Whatever your decision, the contingency agreement and termination letter are both in accord with all requirements under California law. I strongly recommend a change of counsel, given the circumstances and the fact that Marc stands to make significantly more from this case than both of you, much like DC Comics has over the years. I am hear to help no matter what your decision, and I hope to hear from you shortly. There is indeed an urgency in this case. Please see below the contingency fee agreement. I am sure you will find this agreement fair and reasonable. A separate agreement similar to this must be completed for Superboy as well.

                          Sincerely,

                          David


ATTORNEY-CLIENT CONTINGENT FEE CONTRACT

    This ATTORNEY-CLIENT CONTINGENT FEE CONTRACT (the "Agreement") is the written fee contract that California law requires lawyers to have with their clients. It is between [name of new Attorney] ("Attorney") and you, Joanne Siegel and Laura Siegel Larson ("Client").

1. CONDITIONS. This Agreement will not take effect, and Attorney will have no obligation to provide legal services until Client returns a signed copy of this Agreement.


              Sunday, December 11, 2005      CompuServe: Mistylight3


Privileged & Confidential
All Rights Reserved                                              SD 00866

2. SCOPE AND DUTIES.  Client is hiring Attorney to represent Client in the matter of your claims against Time Warner Inc., Warner Bros. Entertainment Inc., and D.C. Comics (collectively, "Warner"), filed in the United States District Court, Central District of California on October 8, 2004, Case No. CV 04-8400 (DDP) (RZx), arising out of Client's April 16, 1999 termination of Jerome Siegel's prior grants of rights to Superman pursuant to section 304(c) of the United States Copyright Act.  Attorney will provide those legal services reasonably required to represent Client, and will take reasonable steps to inform Client of progress and to respond to Client's inquiries.  Attorney will represent Client in any court action until a settlement or judgment, by arbitration or trial, is reached, and in connection with any appropriate posttrial motions and appeals, if any.

   Attorney will also represent Client in any claim to legal fees made by their former legal representation in this matter, specifically, Gang, Tyre, Ramer & Brown, Inc. and the Law Offices of Marc Toberoff, PLC.  Any settlement or award of attorneys fees to prior counsel will be paid by Attorney out of Attorney's fee earned in this matter.  Client will not be required to pay a fee to Attorney for Attorney's representation in this regard.

3. CLIENT'S DUTIES.  Client agrees to be truthful with Attorney, to keep Attorney informed of developments, to abide by this Agreement, and to keep Attorney informed of Client's address, telephone number, and whereabouts.  You agree to appear, if I so request, for all depositions and court appearances, and to generally cooperate fully with me in all matters related to the preparation and presentation of your claims.

4. LIMITATION OF REPRESENTATION.  I am representing you only on the matters described in Paragraph 2.  Client agrees with Attorney that this Agreement does not include any independent or related matters that may arise.  Unless we agree with each other by a separate Agreement, you will not be liable to compensate me for any such independent or related legal matter that is not specifically covered by this Agreement.

5. COSTS AND EXPENSES.  All costs, disbursements, and litigation expenses are the responsibility of Client.  Attorney will advance such costs and expenses without interest.  Client will reimburse Attorney for such advance costs and expenses on settlement, judgment or otherwise.  These items include, but are not limited to, court fees, service of process charges, photocopying services, notary fees, computer-assisted legal research, long distance telephone charges, messenger and delivery fees, postage, in-office photocopying at $ .03 per page, facsimile charges, deposition costs, investigation expenses, consultants' fees, expert witness fees, and other similar items.  Client authorizes Attorney to incur all reasonable costs and to hire investigators, consultants, or expert witnesses reasonably necessary in Attorney's judgment.  Attorney shall obtain Client's consent before incurring any cost in excess of $1,000.

6. LEGAL FEES.  Attorney will be compensated for legal services rendered only if a recovery is obtained for Client.  If no recovery is obtained, Client will not be obligated to pay for any costs, disbursements or expenses incurred by Attorney in connection with this litigation.

   The fees to be paid by Client to Attorney will be 10 percent of the gross recovery, (the term "gross recovery" means the total of all amounts received by settlement, judgment or otherwise, however fashioned, prior to the deduction of any costs, disbursements or expenses set forth in Paragraph 5).  This fee will be calculated prior to any disbursement of Michael Siegel's twenty-five percent passive financial interest.

   Gross recovery will not include the following:  (i) amounts received by settlement, judgment or otherwise in excess of 100 million dollars (Attorney's maximum compensation for legal services is "capped" at 10 million dollars), (ii) the non-refundable $250,000 advanced by Warner to the Siegel's (Joanne, Laura and Michael) in November, 2000 against the resolution of the Superman claim; (iii) Joanne Siegel's annual non-advance "pension" payment by Warner of $126,148 per year, plus the cost of living increases to such payment and (iv) medical, dental or life insurance provided to Joanne Siegel, Laura Siegel Larson, Michael Siegel, and Laura's children Michael Larson and James Larson.

7. NEGOTIABILITY OF FEES.  The rates set forth above are not set by law, but are negotiable between Attorney and Client.

<center>Sunday, December 11, 2005     CompuServe: Mistylight3</center>

**Privileged & Confidential**
**All Rights Reserved**

SD 00867

8. DISCHARGE AND WITHDRAWAL.  Client may discharge Attorney at any time, on written notice to me, and Attorney will immediately after receiving such notice cease to render additional services.  Such a discharge does not, however, relieve Client of the obligation to pay any costs incurred prior to such termination, and Attorney has the right to recover from you the reasonable value of Attorney's legal services rendered from the effective date of the Agreement to the date of discharge.  All costs advanced by Attorney shall become due and payable within ninety days of the Attorney's discharge.  Attorney will return Client's files no later than ten days after discharge.

   Attorney may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.  The circumstances under which the Rules permit such withdrawal include, but are not limited to Client consent or Client's conduct rendering it unreasonably difficult for Attorney to carry out the employment effectively.  Additionally, I may be required or elect to withdraw if a conflict of interest develops between Client and Attorney or between Client and another person or entity that is not otherwise waived, which conflict adversely affects my ability to provide the type of representation I have a duty to or should provide to each of my clients, or if the matter requires an expertise which I do not have and it would not be practicable for me to try to develop under the circumstances.  Notwithstanding Attorney's withdrawal, Client is obligated to pay costs incurred prior to such withdrawal, and Attorney has the right to recover the reasonable value of Attorney's legal services rendered from the effective date of the Agreement to the date of withdrawal.

9. RELEASE OF CLIENT'S PAPERS AND PROPERTY UPON TERMINATION OF SERVICES.  At the termination of services under this Agreement, Attorney will release promptly to Client on request all of Client's papers and property. "Client's papers and property" include items reasonably necessary for Client's representation.  If Client's papers and property are unclaimed by Client, Client acknowledges that the records will be discarded if unclaimed after seven years.

10. LIEN.  Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement.  Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys fees under this Agreement.  The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.

11. ENTIRE AGREEMENT.  This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

12. SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.  If any provision of this Agreement is held by a court or other tribunal of competent jurisdiction, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

13. MODIFICATION BY SUBSEQUENT AGREEMENT.  This Agreement may be modified by subsequent agreement of the parties only in writing.

14. ARBITRATION OF FEE DISPUTE.  If a dispute arises between Attorney and Client regarding attorney's fees or costs under this Agreement and Attorney files suit in any court, Client will have the right to stay that suit by timely electing to arbitrate the dispute under Business and Professions Code sections 6200-6204, 6206 in which event Attorney must submit the matter to such non-binding arbitration.

15. DISCLAIMER OF GUARANTEE.  Although Attorney may offer an opinion about possible results regarding the subject matter of this Agreement, Attorney cannot guarantee any particular result.  Client acknowledges that Attorney has made no promises about the outcome, including the costs and expenses of any transaction or litigation, and that any opinion offered by Attorney in the future will not constitute a guarantee.

16. EFFECTIVE DATE.  This Agreement will take effect when Client has performed the conditions stated in Paragraph 1, but its effective date will be retroactive to the date Attorney first performed

Sunday, December 11, 2005    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

SD 00868

services. The date at the beginning of this Agreement is for reference only.

17. CHOICE OF LAW. This Agreement shall be governed by the laws of the State of California.

18. OPPORTUNITY TO CONSULT WITH OTHER COUNSEL. You may wish to consult with another attorney before signing below. Your signature will certify that you have either met with another attorney before signing or have chosen not to do so, but yet you understand and appreciate you have the right and have had the opportunity to consult with another attorney.

Attorney Name
By: Signature
Typed Name

    We have read and understood the foregoing terms and agree to them, as of this date _____[name of attorney] first provided services. If more than one party signs below, we agree to be liable jointly and severally for all obligations under this Agreement. By signing this Agreement, we acknowledge receipt of a fully executed duplicate of this Agreement.

Dated: _____

_____[Client signatures]
Joanne Siegel
13929 Marquesas Way
Apt. 201A
Marina Del Rey, CA 90292

_____
Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Sunday, December 11, 2005    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1102

SD 00869

Subj:    **contingency agreement - corrected**
Date:    12/10/2005 10:21:06 AM Pacific Standard Time
From:    Dmichaels0867@aol.com
To:      Mistylight3

Laura,

       The last email I sent to you had a couple of typos.  So I am resending with corrections.  I'll send a termination letter later today.  Hope all is well and looking forward to hearing from you.  Thanks.  David


Laura and Joanne,

     I have completed a model contingency fee agreement for your review and a draft letter terminating your legal representation with Marc as promised in our last meeting (I cut and pasted the contingency agreement below, however, I will have to email you later today or tomorrow the letter as it is on a different computer).  I am sure you will find both to your liking.

     As to the ethical issues we have discussed, I also prepared a detailed outline for my protection, presentation to the California State Bar for prosecution, and for your records.  I will forward that to you in a couple of days.  I can only forward you that portion which deals specifically with your cases.

     As stated in our last conversation on the phone, I would welcome the opportunity to meet with you both again to discuss your case.  I have completed research on all issues in Superman and Superboy, including all defenses.  I have done this without any expectation of representing your interests, but it indeed would be an honor to do so.  I am sure I have become more immersed in your case and now know the case better than anyone, Marc Toberoff included.  I have the financial resources to advance all costs of both the Superman and Superboy matters.

     In any event, I certainly would like to "show off" my charts to you.  Your case is strong and should garner a significant outcome in the nine figure range.  Indeed, a partial summary judgment motion as to Warner's statute of limitations defense, the alleged settlement agreement, the validity and timing of the termination notices, the ads, and the failure to terminate the consent judgment should all come out in your favor and should be filed immediately so as to pressure Warner to settle on the heals of Superman Returns (if a meet and confer is done in the next few weeks, the summary judgment motion should be decided within three short months!).  I have seen trailers at the theatres already.  Superboy is also ripe for partial summary judgment as well.  I have so much stategy to share, and such a desire to help you.

     Whatever your decision, the contingency agreement and termination letter are both in accord with all requirements under California law.  I strongly recommend a change of counsel, given the circumstances and the fact that Marc stands to make significantly more from this case than both of you, much like DC Comics has over the years.  I am here to help no matter what your decision, and I hope to hear from you shortly.  There is indeed an urgency in this case.  Please see below the contingency fee agreement.  I am sure you will find this agreement fair and reasonable.  A separate agreement similar to this must be completed for Superboy as well.

                                        Sincerely,

                                        David


             ATTORNEY-CLIENT CONTINGENT FEE CONTRACT

  This ATTORNEY-CLIENT CONTINGENT FEE CONTRACT (the "Agreement") is the written fee


            Sunday, December 11, 2005     CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

SD 00870

contract that California law requires lawyers to have with their clients. It is between [name of new Attorney] ("Attorney") and you, Joanne Siegel and Laura Siegel Larson ("Client").

1. CONDITIONS. This Agreement will not take effect, and Attorney will have no obligation to provide legal services until Client returns a signed copy of this Agreement.

2. SCOPE AND DUTIES. Client is hiring Attorney to represent Client in the matter of your claims against Time Warner Inc., Warner Bros. Entertainment Inc., and D.C. Comics (collectively, "Warner"), filed in the United States District Court, Central District of California on October 8, 2004, Case No. CV 04-8400 (DDP) (RZx), arising out of Client's April 16, 1999 termination of Jerome Siegel's prior grants of rights to Superman pursuant to section 304(c) of the United States Copyright Act. Attorney will provide those legal services reasonably required to represent Client, and will take reasonable steps to inform Client of progress and to respond to Client's inquiries. Attorney will represent Client in any court action until a settlement or judgment, by arbitration or trial, is reached, and in connection with any appropriate posttrial motions and appeals, if any.
    Attorney will also represent Client in any claim to legal fees made by their former legal representation in this matter, specifically, Gang, Tyre, Ramer & Brown, Inc. and the Law Offices of Marc Toberoff, PLC. Any settlement or award of attorneys fees to prior counsel will be paid by Attorney out of Attorney's fee earned in this matter. Client will not be required to pay a fee to Attorney for Attorney's representation in this regard.

3. CLIENT'S DUTIES. Client agrees to be truthful with Attorney, to keep Attorney informed of developments, to abide by this Agreement, and to keep Attorney informed of Client's address, telephone number, and whereabouts. You agree to appear, if I so request, for all depositions and court appearances, and to generally cooperate fully with me in all matters related to the preparation and presentation of your claims.

4. LIMITATION OF REPRESENTATION. I am representing you only on the matters described in Paragraph 2. Client agrees with Attorney that this Agreement does not include any independent or related matters that may arise. Unless we agree with each other by a separate Agreement, you will not be liable to compensate me for any such independent or related legal matter that is not specifically covered by this Agreement.

5. COSTS AND EXPENSES. All costs, disbursements, and litigation expenses are the responsibility of Client. Attorney will advance such costs and expenses without interest. Client will reimburse Attorney for such advance costs and expenses on settlement, judgment or otherwise. These items include, but are not limited to, court fees, service of process charges, photocopying services, notary fees, computer-assisted legal research, long distance telephone charges, messenger and delivery fees, postage, in-office photocopying at $ .03 per page, facsimile charges, deposition costs, investigation expenses, consultants' fees, expert witness fees, and other similar items. Client authorizes Attorney to incur all reasonable costs and to hire investigators, consultants, or expert witnesses reasonably necessary in Attorney's judgment. Attorney shall obtain Client's consent before incurring any cost in excess of $1,000.

6. LEGAL FEES. Attorney will be compensated for legal services rendered only if a recovery is obtained for Client. If no recovery is obtained, Client will not be obligated to pay for any costs, disbursements or expenses incurred by Attorney in connection with this litigation.
    The fees to be paid by Client to Attorney will be 10 percent of the gross recovery, (the term "gross recovery" means the total of all amounts received by settlement, judgment or otherwise, however fashioned, prior to the deduction of any costs, disbursements or expenses set forth in Paragraph 5). This fee will be calculated prior to any disbursement of Michael Siegel's twenty-five percent passive financial interest.
    Gross recovery will not include the following: (I) amounts received by settlement, judgment or otherwise in excess of 100 million dollars (Attorney's maximum compensation for legal services is "capped" at 10 million dollars), (ii) the non-refundable $250,000 advanced by Warner to the Siegel's (Joanne, Laura and Michael) in November, 2000 against the resolution of the Superman claim; (iii)

Sunday, December 11, 2005    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

Joanne Siegel's annual non-advance "pension" payment by Warner of $126,148 per year, plus the cost of living increases to such payment and (iv) medical, dental or life insurance provided to Joanne Siegel, Laura Siegel Larson, Michael Siegel, and Laura's children Michael Larson and James Larson.

7. NEGOTIABILITY OF FEES. The rates set forth above are not set by law, but are negotiable between Attorney and Client.

8. DISCHARGE AND WITHDRAWAL. Client may discharge Attorney at any time, on written notice to me, and Attorney will immediately after receiving such notice cease to render additional services. Such a discharge does not, however, relieve Client of the obligation to pay any costs incurred prior to such termination, and Attorney has the right to recover from you the reasonable value of Attorney's legal services rendered from the effective date of the Agreement to the date of discharge. All costs advanced by Attorney shall become due and payable within ninety days of the Attorney's discharge. Attorney will return Client's files no later than ten days after discharge.

Attorney may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California. The circumstances under which the Rules permit such withdrawal include, but are not limited to Client consent or Client's conduct rendering it unreasonably difficult for Attorney to carry out the employment effectively. Additionally, I may be required or elect to withdraw if a conflict of interest develops between Client and Attorney or between Client and another person or entity that is not otherwise waived, which conflict adversely affects my ability to provide the type of representation I have a duty to or should provide to each of my clients, or if the matter requires an expertise which I do not have and it would not be practicable for me to try to develop under the circumstances. Notwithstanding Attorney's withdrawal, Client is obligated to pay costs incurred prior to such withdrawal, and Attorney has the right to recover the reasonable value of Attorney's legal services rendered from the effective date of the Agreement to the date of withdrawal.

9. RELEASE OF CLIENT'S PAPERS AND PROPERTY UPON TERMINATION OF SERVICES. At the termination of services under this Agreement, Attorney will release promptly to Client on request all of Client's papers and property. "Client's papers and property" include items reasonably necessary for Client's representation. If Client's papers and property are unclaimed by Client, Client acknowledges that the records will be discarded if unclaimed after seven years.

10. LIEN. Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Agreement. Attorney's lien will be for any sums owing to Attorney for any unpaid costs or attorneys fees under this Agreement. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.

11. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

12. SEVERABILITY IN EVENT OF PARTIAL INVALIDITY. If any provision of this Agreement is held by a court or other tribunal of competent jurisdiction, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

13. MODIFICATION BY SUBSEQUENT AGREEMENT. This Agreement may be modified by subsequent agreement of the parties only in writing.

14. ARBITRATION OF FEE DISPUTE. If a dispute arises between Attorney and Client regarding attorney's fees or costs under this Agreement and Attorney files suit in any court, Client will have the right to stay that suit by timely electing to arbitrate the dispute under Business and Professions Code sections 6200-6204, 6206 in which event Attorney must submit the matter to such non-binding arbitration.

15. DISCLAIMER OF GUARANTEE. Although Attorney may offer an opinion about possible results regarding the subject matter of this Agreement, Attorney cannot guarantee any particular result. Client

Sunday, December 11, 2005    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1105

SD 00872

acknowledges that Attorney has made no promises about the outcome, including the costs and expenses of any transaction or litigation, and that any opinion offered by Attorney in the future will not constitute a guarantee.

16. EFFECTIVE DATE.  This Agreement will take effect when Client has performed the conditions stated in Paragraph 1, but its effective date will be retroactive to the date Attorney first performed services.  The date at the beginning of this Agreement is for reference only.

17. CHOICE OF LAW.  This Agreement shall be governed by the laws of the State of California.

18. OPPORTUNITY TO CONSULT WITH OTHER COUNSEL.  You may wish to consult with another attorney before signing below.  Your signature will certify that you have either met with another attorney before signing or have chosen not to do so, but yet you understand and appreciate you have the right and have had the opportunity to consult with another attorney.

Attorney Name
By: Signature
Typed Name

    We have read and understood the foregoing terms and agree to them, as of this date _____[name of attorney] first provided services.  If more than one party signs below, we agree to be liable jointly and severally for all obligations under this Agreement.  By signing this Agreement, we acknowledge receipt of a fully executed duplicate of this Agreement.

Dated: _____

_____[Client signatures]
Joanne Siegel
13929 Marquesas Way
Apt. 201A
Marina Del Rey, CA 90292

_____
Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

Sunday, December 11, 2005      CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

SD 00873

Subj:     **termination letter**
Date:     12/12/2005 12:08:33 PM Pacific Standard Time
From:     Dmichaels0867@aol.com
To:       Mistylight3

Laura and Joanne,

    Hi. Here is one of the termination letters I drafted. It gets right to the point, which is best. Recall that you can discharge an attorney with or without cause. Code Civ. Pro. 284. You may want to also state in the letter, which I haven't done, that Marc is not to contact you further for any reason. Hope all is well. I will forward the ethical info to you soon. Let me know if you have any questions. Have you heard from Chapman University yet?

                                                Sincerely,

                                                David

Joanne Siegel
13929 Marquesas Way
Apt. 201A
Marina Del Rey, CA 90292

Laura Siegel Larson
6400 Pacific Avenue, #106
Playa Del Rey, CA 90293

December 15, 2005

Marc Toberoff
The Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067

Dear Mr. Toberoff,

    This letter serves to inform you that we are terminating your legal representation in the following matters:

1. *Joanne Siegel and Laura Siegel Larson v. Warner Bros. Entertainment Inc., et al.,* Case No. CV 04-8400 (DDP) (RZx), filed in the United States District Court for the Central District of California October 8, 2004; and

2. *Joanne Siegel and Laura Siegel Larson v. Time Warner Inc., et al.,* Case No.      04-08776 RSWL (AJWx), filed in the United States District Court for the Central District of California October 22, 2004.

    Your discharge is effective immediately. We will have a representative contact you today to arrange a suitable time to pick up all documents pertaining to this matter. You will be reimbursed for your costs in accordance with the terms of our retainer agreement.

                    Monday, December 12, 2005    CompuServe: Mistylight3

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1107**

SD 00874

Sincerely,

_____
Joanne Siegel

_____
Laura Siegel Larson

Monday, December 12, 2005     CompuServe: Mistylight3

**Privileged & Confidential**
~~**All Rights Reserved**~~

SD 00875

| | |
|---|---|
| Subj: | **Re: Your emails** |
| Date: | 12/13/2005 9:30:58 AM Pacific Standard Time |
| From: | Dmichaels0867@aol.com |
| To: | |
| | Mistylight3 |

Laura and Joanne,

I never intended to pressure you into being your representative. I had a responsibility to leave the firm and to tell you the circumstances surrounding your representation. When I saw what was happening I felt an obligation to protect your interests. I didn't have to meet with you. I had no ulterior motive in doing so (with respect to taking your case).

At the end of our meeting I promised that I would get some answers for you, including a sample termination letter, and a model contingency arrangement. I felt an obligation to help because I could feel your frustration. That fee agreement was drafted without the intention of representing you, but to demonstrate exactly the type of agreement this case should be tried under. I hoped that you would have appreciated this. I always honor my promises, and that is what I did here.

You state in your letter that you are going up against a huge company and I read from that an implication that I would be unable to try such a case and that you need an experienced, expensive lawyer to go to "war" for you. This is such a difficult statement to respond to. Having a thorough understanding of 304(c) of the Copyright Act is all one needs to understand how strong your case is. The 1938 grant (the operative grant in your case) was terminated. All of the other "alleged" grants and the arguments surrounding them are baseless and irrelevant but important to defense lawyers as justifiable "billing" issues. Your father and Joe granted all rights to Superman in 1938, including the renewal as the 2nd Cir. held (the 2nd Cir made its findings based on the 1938 grant as that was the operative grant then, and continues to be today). The consent judgment, stipulation, etc. are distractors. The 1938 grant is the "rock" on which this case is built. This "huge" opponent you have knows this. The elements in your father's original Superman have been "recaptured" by you and DC Comics and Warner knows it. *Burroughs v. MGM*, a very important case involving Tarzan, is instructive and supports your termination solidly.

What's left are a few defenses, statute of limitations, settlement agreement, etc., which should be quickly disposed of on summary judgment, and "work for hire" which will best be left to play out for a jury - great facts for your case here. The rest is about apportionment and profits. Enough said.

My intent was never to pressure you or take advantage of you. I approached you to help. To inform you of your situation. To inform you of the many ethical and legal violations occurring in your case. They are obvious and will be dealt with by the state bar soon. The representation you have had thus far has fallen very short of what is necessary to adequately represent your interests. This is so clear. I don't think I need to say more on that subject. What I do need to say is that it appears that I have been your only "advocate" with your interests in mind thus far.

If you need me I'm here.

Sincerely,

David

Privileged & Confidential
All Rights Reserved

SD 00876

**EXHIBIT G**
**1109**

Subj:   **Re: Your emails**
Date:   12/13/2005 9:30:58 AM Pacific Standard Time
From:   
To:     

Laura and Joanne,

I never intended to pressure you into being your representative. I had a responsibility to leave the firm and to tell you the circumstances surrounding your representation. When I saw what was happening I felt an obligation to protect your interests. I didn't have to meet with you. I had no ulterior motive in doing so (with respect to taking your case).

At the end of our meeting I promised that I would get some answers for you, including a sample termination letter, and a model contingency arrangement. I felt an obligation to help because I could feel your frustration. That fee agreement was drafted without the intention of representing you, but to demonstrate exactly the type of agreement this case should be tried under. I hoped that you would have appreciated this. I always honor my promises, and that is what I did here.

You state in your letter that you are going up against a huge company and I read from that an implication that I would be unable to try such a case and that you need an experienced, expensive lawyer to go to "war" for you. This is such a difficult statement to respond to. Having a thorough understanding of 304(c) of the Copyright Act is all one needs to understand how strong your case is. The 1938 grant (the operative grant in your case) was terminated. All of the other "alleged" grants and the arguments surrounding them are baseless and irrelevant but important to defense lawyers as justifiable "billing" issues. Your father and Joe granted all rights to Superman in 1938, including the renewal as the 2nd Cir. held (the 2nd Cir made its findings based on the 1938 grant as that was the operative grant then, and continues to be today). The consent judgment, stipulation, etc. are distractors. The 1938 grant is the "rock" on which this case is built. This "huge" opponent you have knows this. The elements in your father's original Superman have been "recaptured" by you and DC Comics and Warner knows it. *Burroughs v. MGM*, a very important case involving Tarzan, is instructive and supports your termination solidly.

What's left are a few defenses, statute of limitations, settlement agreement, etc., which should be quickly disposed of on summary judgment, and "work for hire" which will best be left to play out for a jury - great facts for your case here. The rest is about apportionment and profits. Enough said.

My intent was never to pressure you or take advantage of you. I approached you to help. To inform you of your situation. To inform you of the many ethical and legal violations occurring in your case. They are obvious and will be dealt with by the state bar soon. The representation you have had thus far has fallen very short of what is necessary to adequately represent your interests. This is so clear. I don't think I need to say more on that subject. What I do need to say is that it appears that I have been your only "advocate" with your interests in mind thus far.

If you need me I'm here.

Sincerely,

David

Tuesday, March 20, 2007    CompuServe: Mistylight3

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1110

SD 00877

# Exhibit 3

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1111

SD 00878

Dear David,

We are surprised that you have written a proposed contract concerning representation of us as we did not authorize your doing so. All we agreed to was to listen to what you wanted to tell us and to think about the situation and that is all.

We are up against a huge, powerful company and while we appreciate your interest in our case, you should not expect to represent us. We must have an attorney with a proven track record in cases such as ours.

We wish you well for the holidays and for the coming New Year.

Sincerely,
Joanne Siegel and Laura Siegel Larson

Privileged & Confidential
All Rights Reserved

SD 00879

EXHIBIT G
1112

# Exhibit 4

Privileged & Confidential
All Rights Reserved

SD 00880

# SUPERMAN – MARC TOBEROFF TIMELINE

*\*Please read closely. We have enclosed several supporting documents in our package to you, and very much hope you will spend some time reviewing them before you come to any potential settlement with Marc Toberoff, who represents the Siegels and the Schuster heirs in the ongoing Superman legal dispute with Time Warner and DC Comics.*

*The below information should save Time Warner potentially millions and millions of dollars, and, if you so choose, - have Marc Toberoff suspended, disgraced, --- if not ultimately disbarred --- from practicing law.*

*Toberoff being labeled as the "relentless crusader for artists' rights" is hardly that: he has devised a strategy whereas he has ultimately claimed much ownership of the Superman copyright personally as he can. And of course, he has done so without the knowledge and full disclosure to the Siegels and Schuster heirs, creators of Superman.*

***As it stands right now, the single person who would stand to gain the MOST in a settlement with Time Warner regarding the ongoing SUPERMAN legal dispute would not be the heirs themselves, but Marc Toberoff.***

*What you do with the below information is up to you. You should most certainly conduct your own investigation. We believe there are details within this timeline that will be of strong interest to you.*

*Consider it an early holiday gift.*

*(Also, please be aware that this timeline is written with the assumptions that the reader(s) are aware of the characters involved within the ongoing Superman legal dispute between Time Warner/DC Comics. The heirs to the SUPERMAN copyright are: the Siegels (Joanne, Laura & Michael), Jerry Siegel's heirs, who collectively have claims to 50% of the copyright to Superman, while the Schuster estate has claims on the other 50%.) Marc Toberoff currently represents both parties in ongoing litigation.*

**· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·**

In 2000 MT established a separate corporation entitled "Pacific Pictures Corporation" (PPC), with an address of 23852 Pacific Coast Hwy, Suite 555, Malibu, CA 90265. Tel: (310)-589-5151. You will see below that he established this business to solicit his services as an attorney.

In 2001, Marc Toberoff (MT) began researching Superman, who had rights, etc.

MT initially contacts Kevin Marks at Gang, Tyre, who represented Joanne and Laura Siegel with an offer for the Siegel rights. Marks discourages Toberoff from any advances, and does not tell Siegels initially of the interaction because he believes it is not in their best interest.

1

Privileged & Confidential
All Rights Reserved

Q 0001

SD 00881

On Nov. 23, 2001, MT entered into a joint venture agreement between his own outside corporation Pacific Pictures Corp. (NOT a law firm), and Mark Warren Peavy, and his mother Jean Peavy, heirs to the Joe Schuster estate. For the purposes of this document, we do not know the content of that agreement.

MT and Ari Emanuel, partner and agent at Endeavor, contacts Kevin Marks at Gang, Tyrer, Ramer, & Brown again, (who represented Joanne and Laura Siegel), on August 8, 2002. MT approaches the Siegels, *not as an attorney but as a film producer*, stating that he is "allied" with Emanuel, hoping such a claim will legitimize him.

On August 8th 2002, MT tells Marks that he and Emanuel have a billionaire ready to offer $15 million dollars up-front, plus what they promise to be meaningful participation from proceeds for exploitation of the Siegels' rights to SUPERMAN and some continued royalties on an ongoing basis in all media. Kevin Marks says to the Siegels, "Don't do it." Gang, Tyrer tells the Siegels that they believe MT has brokered a confidential agreement with the Joe Schuster estate. Marks also tells the Siegels that the Schuster estate will have termination rights in approximately 2013. Schuster missed termination notices.

Within their offer, MT appeals to the Siegels' sense of ownership and encourages them to take this deal. MT says he can help them make a movie in direct competition to the one being made at Warner Brothers (MT makes this argument to Joanne and Laura, all the while knowing full well that no one would ever go near making such an attempt; no other studio would go for it because of the division of rights, and no one outside of the studio system would attempt such an endeavor for all the enormous costs attributable to the making, marketing and distribution of such a film.) In other words, MT displays "predatory intent" in his initial approach to the Siegels from the very beginning.

In their very first conversation, Kevin Marks tells MT "no go" --- that the Siegels have already reached an agreement with Time Warner and DC Comics.

Marks conveys MT's offer to the Siegels, and Marks does say to the Siegels, it is a better offer than the one you have. However, Marks also tells the Siegels that he would testify in court against the Siegels if they accepted this offer because he believes there has already been an agreement reached.

The Siegels are angry at Kevin Marks that he said he would testify against them if they took MT's offer, and relations break down between the Siegels and Gang, Tyrer. They fire Gang, Tyrer. And, because the Siegels believed that MT was sympathetic to their plight, and because MT appealed to their sense of ownership of SUPERMAN, they decide to enter into an agreement with Intellectual Properties Worldwide, otherwise known as "IPW", Marc Toberoff's film production company, for 10% for any kind of deal he got to make a movie or exploit the rights. (as you know, the Siegels submitted termination notices on the Superman copyright in 1997).

2

Privileged & Confidential
All Rights Reserved

Q 0002

SD 00882

EXHIBIT G
1115

The Siegels' agreement with IPW is an agreement that mirrors the earlier Pacific Pictures agreement that MT makes with the heirs to Joe Schuster (*see more information on this below*). In other words, Marc Toberoff is named as their attorney within the agreement (which is masked as a retainer agreement) in the event that they go to litigation over anything (*please see enclosed document*). Upon the Siegels signing the agreement, MT then tells Joanne and Laura that his mysterious billionaire has decided to invest elsewhere. In other words, MT makes himself the Siegels' attorney of record while he solicited them as a film producer, violating the rule that no lawyer may directly solicit business, with the double violation of doing it under the auspices of doing separate business dealings. MT's sole intent was to become the Siegels' attorney, not to help the Siegels (as he had alleged) to make a movie in competition to *Superman Returns*, which was then in development at Warner Brothers. MT also never divulges his previous direct dealings with the Schuster heirs, and his Nov.23, 2001 joint agreement with the Peavys (the Schuster heirs) in which he is named their attorney of record.

In 2002, MT set his sights on acquiring the passive interest to Michael Siegel's rights, who, as you know, is Jerry Siegel's son from his first marriage, and is Laura's half-brother. Michael Siegel has an interest of 12.5% in SUPERMAN and SUPERBOY. The Siegels total have 50% interest (Joanne holds 50%, Laura 25%. Michael 25%). So, in essence, Joanne has 25%, Laura 12.5, Michael 12.5. MT used to his advantage the strained relationship between Joanne and Laura, and Michael; as well as strained communication with the Schusters.

Here comes Ari Emanuel, and he is going to finance the purchase of Michael Siegel's interest. But Michael Siegel turns him down flat. MT discloses the intent to purchase to Joanne and Laura, admitting it is a possible conflict of interest. MT is fully aware of what he is doing is wrong.

On December 16, 2002, there is another letter from MT and Ari Emanuel to Joanne and Laura Siegel, saying they are re-approaching Michael again about purchasing his interest. MT tells Michael Siegel that they have an investor ready to buy out his interest, though the amount is significantly less than what DC showed as his share.

March 3, 2003 – letter from Paul Levitz/DC Comics to the Siegels, and MT is messing up relationships for his own personal benefit. DC is trying to understand why they backed out of the deal. The reason is MT who is interfering in all the relationships up to this point.

May 2003 -- MT is continuing to make business arrangements with the Schuster heirs, unbeknownst to Joanne and Laura Siegel .

May 13, 2003: Michael Siegel sends a very concerned letter to Laura Siegel about Marc Toberoff's actions. *(please see enclosed letter; this letter lays out well MT's scheme).* Among other things, Michael Siegel tells her of how Toberoff is now controlling the whole of the SUPERMAN copyright, how he may have bought a substantial portion of the Schuster interest for himself, and he brings to light MT's utter lack of opening a

3

Privileged & Confidential
All Rights Reserved

Q 0003

SD 00883

dialogue with anyone regarding making another SUPERMAN movie, in partnership with Ari Emanuel. Also that MT has not even made contact with Time Warner. Lastly, Michael conveys that MT seems to have an agenda of "someone" buying him out, and that MT is pressing for an answer.

In May-June 2003. **STATUE OF LIMITATIONS is coming close on for filing of the SUPERMAN complaint. Both Joanne and Laura Siegel are now very ill.** MT starts saying to the Siegels that the statue of limitations is coming up, and they would have waived their right to sue based on the termination notices. *This is the very seed MT meant to mine all along.* He sends them the research on the statue of limitations, and concerned, the Siegels contact Art Levine in Washington, D.C. to have independent research done on the matter. The research confirms that they should file by September.

In June, Ari Emanuel through IPW is still trying to buy Michael Siegel's interest but can't come to terms on price.

End of June 2003, MT gets a law firm to represent the Schusters to assist with the SUPERMAN copyrights. They determine the value of the estate is $0, and California Probate Code will not be applicable, such that the estate attorney will not be entitled to any future settlement regarding the Superman interest. Estate attorney is only receiving an hourly rate. MT "graciously" pays all legal fees.

In other words, MT helped probate the estate, but hired an attorney to do the dirty work. Fittingly, the Joe Schuster will was "lost", so the will had no value. So, the court writes the will for him, and includes the rights to proceed with the termination. And since the firm receives an hourly rate, and the estate is valued at $0, it does not effect any future settlement. The estate attorney will thereby not be entitled to statutory compensation. Another example of showing that MT is solely motivated *at all times* not by his clients' interests, but manipulating pieces of the puzzle so that he may receive the greatest percentage from a very possible large Time Warner settlement, through part ownership and unconscionable fees (*see below*).

**Absolutely nothing is moving ahead with Siegel/Schuster rights and agreements because MT was never intending to do anything with rights other than litigate.**

July 5, 2003. Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael --- MT has NOT told them he is about to enter into the PPC agreement, whereby MT *personally* will have a 50% of the Schuster interest in Superman. He will shortly own equal to what Joanne owns (25% of entire copyright), and double what Laura owns, *but MT has failed to disclose this.* The Schusters – through the Pacific Pictures Corp agreement – gave MT half of what they had. MT never had the intention to make a movie in competition to the one at Warners – it is tantamount to throwing $$$ away, but it does appeal to the heirs' sense of lost ownership. MT never did want to make a movie, and exploit the rights. MT knows no one is going to invest in an outside movie project outside of Warner Brothers, though he uses Ari Emanuel, the agent, to legitimize his claims. (*please see enclosed letter*)

4

Privileged & Confidential
All Rights Reserved

Q 0004

SD 00884

Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft --- in response to Michael's accusations of Toberoff, Laura clearly states that MT does *not* have a production company. (This is false – Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes " MT has not plans to produce a SUPERMAN movie, nor is this feasible given the division of ownership of the rights." (please see enclosed letter). **This clearly delineates that Toberoff never had the intention of making a movie, and approached the Siegels and Schusters separately ---- not for the exploitation of rights as he initially asserted,** but to gain an unconscionable fee from a very large possible settlement with Time Warner.

August 7, 2003 --- Letter from Rodi-Pollock, who is the attorney in the Schuster estate – who says the Schuster Will would be written by the court August 25, 2003, since the Schuster Will had been "lost".

Sept-Oct 2003 ---- Letter with Ari Emanuel in which he would receive $2.5 million flat fee for "negotiating services"

On October 27, 2003, MT uses PPC to enter into another agreement with the Joe Schuster's heirs: Mark Warren Peavy and Jean Peavy, in which PPC is "engaged as the Executor of the recently probated estate of Joeseph Schuster." The agreement purports that PPC is the Peavys exclusive advisor "for the purpose of retrieving, enforcing, and exploiting all of Joe Schuster's rights ....in all of his creations...". In this agreement, MT also names himself their attorney for any and all litigation or questions that should arise in regards to these Rights. MT also clearly delineates that PPC is NOT a law firm. And, lastly but most significantly, MT defines that any and all moneys and proceeds, in cash or in kind, received from the enforcement, settlement, or exploitation of any of the Rights, ....any monies would be split 50/50. **IN ESSENCE, MARC TOBEROFF NOW HAS A 25% STAKE IN SUPERMAN <u>PERSONALLY</u> BECAUSE OF HIS DEAL WITH THE SCHUSTERS THAT WAS MADE IN 2003. He gets – under the guise of Pacific Pictures Corp – the rights to retrieve and enforce and exploit Joe Schuster's interest in SUPERMAN.** MT's alleged "firewall" between film producing and soliciting business as an attorney comes tumbling down. (*please see enclosed signed agreement, dated October 27, 2003*).

In 2013 MT will own Schuster's side of it; but it does not matter, they will settle before.

MT inquires into the legality of entering into the Pacific Pictures Corporation agreement with the Peavys, heirs to Schuster estate, using law firm Armstrong, Hirsch, Jackoway, Tyerman, & Wertheimer. The inquiry raises strong eyebrows, and questions of legality as to MT's actions in regards to the Schusters, and strongly discourages further involvement with MT and this matter.

5

Privileged & Confidential
All Rights Reserved

Q 0005

SD 00885

**EXHIBIT G**
**1118**

August 2003 – Michael Siegel wants an annuity of $200,000, which equaled $3.5 million. MT tells him that "no investor is going to go for that." MT says Warners' estimation was $2 million less; such a bad risk for an investor, MT says. MT is tenaciously going after the 12.5%, and of course, the investor MT "has" is himself. He is trying to get Michael to lower the price.

**MT is also trying to convince Michael Siegel not to sell his interest to another outside party. MT is lying to Michael Siegel to make sure he can still draw a fee from Michael's 12.5% interest. If Michael went away, he would only draw from remaining 37.5%, instead of 50%. In the final letter, MT tells Michael Siegel that he cannot sell without our approval because Michael did not take part in the termination, but "we will give you (Michael Siegel) approval, if you sell it to a third party, *monitored by Marc Toberoff*." MT is lying to Michael Siegel about Siegel's ability to sell his interest in the SUPERMAN copyright.**

**Significantly, MT admits to Laura Siegel that there never was a billionaire willing to invest $15 million when he first approached them. But by then the Siegels were concerned about appearing flaky for changing lawyers a few times. They decide to stick it out.**

October 2, 2004 --- MT files the complaint with the court against Time-Warner. There is disgruntlement in the Siegel camp, regarding the contingency fee. MT pushes hard for 33.3% contingency fee to go up to 40% if it falls within 60 days of trial (which, of course, he would make sure that it would...). In the contingency agreement they signed for SUPERMAN, IPW (Marc Toberoff's *film production company*) would have received a 10% negotiating fee (thus most likely bolstering Ari Emanuel's take in the settlement from Time Warner as well). Thus, Toberoff used the "film production arm" of his company to use as a shell to elicit larger contingency fees from his clients despite the fact that Toberoff maintains that there is a "firewall" between his law firm and his production company. (see John Lippman, *Wall Street Journal* article enclosed.)

MT "graciously" agrees to decrease IPW's take by 5%, which will be deducted from the firm's % fee, applicable to the gross proceeds of any settlement or outcome of the litigations.

****In other words, MT decreases his contingency fee by 5% -- instead of getting 50%, he will get 45%. Combined with the Schuster interest, the aggregate of any outcome in SUPERMAN litigation for Marc Toberoff *personally* becomes 47.5% of the entire Superman interest.***** It becomes clear at this juncture that MT thwarted the earlier deal with Time Warner and DC Comics in 2002 for his own personal gain.

And lastly, on the DUKES OF HAZZARD case, MT pocketed $8.5 million personally, more than any single plaintiff involved in the case (each plaintiff pocketed around $1.7 million). According to the settlement amount, he received an unconscionable 50% contingency fee.

6

Privileged & Confidential
All Rights Reserved

Q 0006

**EXHIBIT G
1119**

SD 00886

Very strong likelihood that Marc created an entity for the purposes of the lawsuit (Moonrunners Limited, or Moonrunners LLP), which allegedly held the rights at issue and ultimately led to the injunction. Christensen-Miller, Kevin Leichter, or the like need explore in greater detail the existence of the entity in which the rights were allegedly held. It is strongly believed this entity was created only to bolster the lawsuit – that the rights were never conveyed at all.

**MT had his President of Production of IPW, J. Todd Harris, leak the confidential settlement on the DUKES OF HAZZARD case to Variety ($17.5 million). He then called Larry Greenfield, another attorney in his office at the time who has since left, to cover his tracks, "demanding" to know who leaked the amount, and to act as if he was portraying shock and dismay at the leak. MT did it himself to attract more business in town. At least 7 attorneys have come and gone at the Law Offices of Marc Toberoff, and many have left due to ethical issues.**

And lastly, MT is charging 50% in another Allison Giannini case involving real estate. The reason this fact is included is to show a history of charging unconscionable fees.

It should be noted for those at Time Warner that Marc Toberoff has still managed to set up SKYPORT as a producer at Warners, and he has a tangential hold on GILLIGAN'S ISLAND. Fyi.

*****************

cc:    Alan F. Horn
       Jeff Robinov
       John Schulman
       Patti Connolly

7

Privileged & Confidential
All Rights Reserved

Q 0007

SD 00887

**EXHIBIT G**
**1120**

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1121**

SD 00888

# Exhibit 5

Privileged & Confidential
All Rights Reserved

SD 00889

Received May-27-10 08:54am From- To- Page 011

pacific Pict[illegible]
[illegible]
used [illegible]

[illegible] Picture corps enters into joint venture agreement Mark Warren Peary and Jean Peavy on Nov 23, 2001.

In or about Oct 27, 2003, Mark Warren Peary and Jean Peavy [illegible] office as the Executor of the recently probated estate of Joseph Shuster.

Oct 27, 2003, Mark and Jean [illegible] PPC to be exclusive [illegible] to Shuster RIGHTS for Superman and other creations, including the Superman termination interest pursuant to 304(d)

PPC engages Marc Toberoff as attorney for Mark and Jean in connection with RIGHTS, and Marc is in fact the President of the company.

) Any agreement entered re Superman are subject to the express written approval of Mark, Jean, and PPC (a.k.a. Marc Toberoff)

) Everything any from the Rights (Proceeds) 50/50 between PPC and Jean and Mark,
— It appears under ¶ 5 that Marc pays [illegible] for [illegible] by the language, that [illegible] monies grants [illegible]

) The agreement is written to exclude for the sole direction of the [illegible], whichever term of agreement ends, [illegible] Rights [illegible] of the rights, [illegible] of Proceeds [illegible] from the Rights after [illegible] 50/50 of termination, if any.

Privileged & Confidential
All Rights Reserved



Privileged & Confidential
All Rights Reserved

SD 00891

Received    May-27-10  08:54am    From-    To-    To-    Page 013

Sept 2[?], 2004 letter from Laura to Marc re: [# See original]

— he was/had no incentive to [crossed out] complete negotiations w/
than 2/1, [?] No is not what he was looking for. — he needed
the negotiations to halt.

— they suggest 20% — he will get 35% & 40% — see below

October 1, 2004

— prior letter from [crossed out] Marc re:

See arrogate

— he says he knows the case backwards at forwards

Oct 2, 2004

Letter of retainer

35% — 2/10 % & 60 days trial
(prior to did advanced costs) —

30% to [?]— 5% to Marc [?],
[illegible]

Privileged & Confidential
All Rights Reserved

SD 00892

Received May-27-10 08:54am     From-     -To-     Page 014



Privileged & Confidential
All Rights Reserved

05/27/2010 10:14 FAX

SD 00893

**EXHIBIT G**
1126

— Shuster —→

— MS —→

— plain dealer —    < Opinion —→   [Opinion]
                      public figure →

3d edition Jew —→ came
He lie abt Danie Seigl

Michael Siegel —→ [get down]

Libel
Slander  <  — truth
            — opinion
            — public figure

— damages —→

Privileged & Confidential
All Rights Reserved

# Exhibit 6

**Privileged & Confidential**
**All Rights Reserved**

EXHIBIT G
1128

SD 00895

# DAVID MICHAELS
304 Maui Drive
Placentia, CA 92870
(714) 357-8581

**EDUCATION:** JURIS DOCTORATE, May 2001
*Chapman University School of Law*, Orange, CA
· Awarded Full Tuition Scholarship as Top Ranked Student, 1999 - 2001
· Law Review: Copy Editor
· Received Highest Grade In: Legal Research and Writing I, Contracts I & II,
  Torts II, Corporations, Constitutional Law II, Criminal Law, Property I, Legal
  Ethics, Criminal Procedure I & II, and Sales

BACHELOR OF ARTS, March 1991
*University of California at Los Angeles*, Los Angeles, CA
· Major: History
· UCLA Football: Wide Receiver 1988 - 1989

**EXPERIENCE:** ASSOCIATE, January 2005 - Present
*The Law Offices of Marc Toberoff, PLC*, Los Angeles, CA
· Copyright Litigation Practice Focused Entirely on Representing Plaintiffs In High
  Profile Disputes Over Copyright Ownership in the Motion Picture Industry
· Notable Cases Currently Involved With Include Rights Disputes Over "Lassie,"
  "Winnie the Pooh," "Casper the Friendly Ghost," the "Dukes of Hazzard" and
  "Superman/Superboy."
· Drafting Complaints, Interrogatories, Requests for Production of Documents,
  Requests for Admissions, Demurrers, Summary Judgment
  and Preliminary Injunction Motions, and Taking and Defending Depositions

ASSOCIATE, September 2001 - August 2002
*Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, Los Angeles, CA
· Business and Entertainment Litigation Practice Focused on Contract Disputes
· Extensive Trial Preparation Experience - Authored Trial Briefs, Prepared Witnesses
  and Witness Outlines, Drafted Motions in Limine, and Maintained
  Several Client Relationships
· Drafted Pretrial Dispositive Motions Including Motions to Dismiss and Summary
  Judgment
· Prepared Interrogatories, Requests for Admissions, Requests for Production of
  Documents, and Deposition Outlines

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1129**

SD 00896

EXTERN FOR THE HONORABLE GARY L. TAYLOR, May 2000 - August 2000
*United States District Court for the Central District of California*, Santa Ana, CA
· Drafted Tentative Opinions and Bench Memoranda
· Prepared Status and Pretrial Conference Reports

EXTERN FOR PRESIDING JUSTICE DAVID SILLS, January 2000 - May 2000
*Court of Appeal, Fourth Appellate District, Division Three*, Santa Ana, CA
· Drafted Case Opinions
· Performed Legal Research

SPECIALIST, October 1994 - December 1996
*United States Army, 10th Mountain Division*, Watertown, NY
· Field Artillery Specialist in Cannon Fire Direction
· Coordinated Fire Missions and Computed Data Necessary for Deployment of
  Artillery on Desired Objectives
· Established and Maintained Battalion Communications

STOCKBROKER, October 1993 - September 1994
*Chatfield Dean & Company*, Irvine, CA
· Created and Managed Client Portfolios
· Researched Investment Vehicles Suitable to Achieve Client Financial Goals
· Traded Stocks, Bonds, and Mutual Funds for Clientele

**MEMBER:** · State Bar of California

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1130**

SD 00897



**Marc Toberoff <marc.toberoff@gmail.com>**

---

## referral

**Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov>**          Thu, Aug 12, 2010 at 9:20 PM
To: mtoberoff@ipwla.com

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

_____

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1131**

SD 00898

Gmail - referral                                                      https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...



Marc Toberoff <marc.toberoff@gmail.com>

___

## referral

___

**Marc Toberoff** <mtoberoff@ipwla.com>                              Thu, Aug 12, 2010 at 10:19 PM
To: "Kim, Beong-Soo (USACAC)" <Beong-Soo.Kim@usdoj.gov>

Mr. Kim:

I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time. If Friday does not work are you available on Monday?

I would also be happy to go downtown and meet with you in person.

Thank-you.

Marc Toberoff

On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc: Let's try to talk tomorrow afternoon, if you're around, about your referral to my office. I'll leave it to you whether you'd like Ari Emanuel to be on the call.

___

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

SD.00899

**EXHIBIT G**
**1132**



**Marc Toberoff <marc.toberoff@gmail.com>**

## referral

**Kim, Beong-Soo (USACAC)** <Beong-Soo.Kim@usdoj.gov>                Thu, Aug 12, 2010 at 10:20 PM
To: Marc Toberoff <mtoberoff@ipwla.com>

I'm upstairs from Judge Wright; you could try me on the 11th Floor after your hearing?

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, August 12, 2010 10:20 PM
**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

Mr. Kim:

I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time.  If Friday does not work are you available on Monday?

I would also be happy to go downtown and meet with you in person.

Thank-you.

Marc Toberoff

On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*

--
Marc Toberoff

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1133**

SD 00900

Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

Privileged & Confidential
All Rights Reserved

**EXHIBIT G**
**1134**

SD 00901

Gmail - referral                                               https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt...



Marc Toberoff <marc.toberoff@gmail.com>

## referral

**Kim, Beong-Soo (USACAC)** <Beong-Soo.Kim@usdoj.gov>          Fri, Aug 13, 2010 at 4:56 PM
To: Marc Toberoff <mtoberoff@ipwla.com>

Yes, I'll be in on Monday.  We could also talk by phone now, if you wanted.  213-894-3868.

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Friday, August 13, 2010 4:55 PM
**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

We missed each other, but I will be in the area again Monday. Is there a time I could swing by and see you?

On Thu, Aug 12, 2010 at 10:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

I'm upstairs from Judge Wright; you could try me on the 11th Floor after your hearing?

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, August 12, 2010 10:20 PM
**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

Mr. Kim:

I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time.  If Friday does not work are you available on Monday?

I would also be happy to go downtown and meet with you in person.

Thank-you.

Marc Toberoff

On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1135**

SD 00902

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1136**

SD 00903

Gmail - referral                                                                    https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...



Marc Toberoff <marc.toberoff@gmail.com>

---

## referral

**Marc Toberoff** <mtoberoff@ipwla.com>                                 Mon, Aug 16, 2010 at 4:04 PM
To: "Kim, Beong-Soo (USACAC)" <Beong-Soo.Kim@usdoj.gov>
Cc: aemanuel@wmeentertainment.com

Mr. Kim:

Are you free to meet tomorrow morning for breakfast or at your office, any time between 8:30 and 10:30 am?

Marc Toberoff

On Fri, Aug 13, 2010 at 4:56 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

> Yes, I'll be in on Monday. We could also talk by phone now, if you wanted. 213-894-3868.

---

> **From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
> **Sent:** Friday, August 13, 2010 4:55 PM
>
> **To:** Kim, Beong-Soo (USACAC)
> **Subject:** Re: referral
>
>
> We missed each other, but I will be in the area again Monday. Is there a time I could swing by and see you?
>
> On Thu, Aug 12, 2010 at 10:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:
>
> I'm upstairs from Judge Wright; you could try me on the 11th Floor after your hearing?

---

> **From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
> **Sent:** Thursday, August 12, 2010 10:20 PM
> **To:** Kim, Beong-Soo (USACAC)
> **Subject:** Re: referral
>
>
> Mr. Kim:
>
> I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time. If Friday does not work are you available on Monday?
>
> I would also be happy to go downtown and meet with you in person.

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1137**

SD 00904

Thank-you.

Marc Toberoff


On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

_____

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


**Privileged & Confidential**
**All Rights Reserved**

SD 00905



**Marc Toberoff <marc.toberoff@gmail.com>**

## referral

**Kim, Beong-Soo (USACAC)** <Beong-Soo.Kim@usdoj.gov>                    Mon, Aug 16, 2010 at 4:14 PM
To: Marc Toberoff <mtoberoff@ipwla.com>
Cc: aemanuel@wmeentertainment.com

Tomorrow morning at my office would work; shall we say 10am?  If it's inconvenient to travel downtown,
we can just plan on talking by phone; I have a list of questions.

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, August 16, 2010 4:05 PM
**To:** Kim, Beong-Soo (USACAC)
**Cc:** aemanuel@wmeentertainment.com
**Subject:** Re: referral

Mr. Kim:

Are you free to meet tomorrow morning for breakfast or at your office, any time between 8:30 and 10:30 am?

Marc Toberoff

On Fri, Aug 13, 2010 at 4:56 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Yes, I'll be in on Monday.  We could also talk by phone now, if you wanted.  213-894-3868.

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Friday, August 13, 2010 4:55 PM

**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

We missed each other, but I will be in the area again Monday. Is there a time I could swing by and see you?

On Thu, Aug 12, 2010 at 10:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

I'm upstairs from Judge Wright; you could try me on the 11th Floor after your hearing?

**Privileged & Confidential**
**All Rights Reserved**

SD 00906

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, August 12, 2010 10:20 PM
**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral


Mr. Kim:

I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time.  If Friday does not work are you available on Monday?

I would also be happy to go downtown and meet with you in person.

Thank-you.

Marc Toberoff

On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

_____

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*



--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com



--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1140**

SD 00907

Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1141**

Gmail - referral                                    https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...



**Marc Toberoff <marc.toberoff@gmail.com>**

## referral

**Marc Toberoff** <mtoberoff@ipwla.com>                      Mon, Aug 16, 2010 at 4:50 PM
To: "Kim, Beong-Soo (USACAC)" <Beong-Soo.Kim@usdoj.gov>

!0 am is perféct. I will see you then.

My mobile phone is 310-736-5666 if you need to reach me tomorrow morning.

Marc Toberoff

On Mon, Aug 16, 2010 at 4:14 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

> Tomorrow morning at my office would work; shall we say 10am?  If it's inconvenient to travel
> downtown, we can just plan on talking by phone; I have a list of questions.

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, August 16, 2010 4:05 PM

**To:** Kim, Beong-Soo (USACAC)
**Cc:** aemanuel@wmeentertainment.com
**Subject:** Re: referral

Mr. Kim:

Are you free to meet tomorrow morning for breakfast or at your office, any time between 8:30 and 10:30 am?

Marc Toberoff

On Fri, Aug 13, 2010 at 4:56 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Yes, I'll be in on Monday.  We could also talk by phone now, if you wanted.  213-894-3868.

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Friday, August 13, 2010 4:55 PM

**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1142**

We missed each other, but I will be in the area again Monday. Is there a time I could swing by and see you?

On Thu, Aug 12, 2010 at 10:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

I'm upstairs from Judge Wright; you could try me on the 11th Floor after your hearing?

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, August 12, 2010 10:20 PM
**To:** Kim, Beong-Soo (USACAC)
**Subject:** Re: referral

Mr. Kim:

I would welcome that opportunity. However, I am in Federal Court tomorrow before Judge Otis Wright for a status conference at 2:30 pm, with traffic I may not be back to the office in time.  If Friday does not work are you available on Monday?

I would also be happy to go downtown and meet with you in person.

Thank-you.

Marc Toberoff

On Thu, Aug 12, 2010 at 9:20 PM, Kim, Beong-Soo (USACAC) <Beong-Soo.Kim@usdoj.gov> wrote:

Marc:  Let's try to talk tomorrow afternoon, if you're around, about your referral to my office.  I'll leave it to you whether you'd like Ari Emanuel to be on the call.

---

*Beong-Soo Kim*

*Chief, Major Frauds Section*

*Central District of California*

*(213) 894-3868 (phone); (213) 894-6269 (fax)*

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1143**

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1144**

Gmail - Contact info                                                              https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...



Marc Toberoff <marc.toberoff@gmail.com>

## Contact info

**Marc Toberoff** <mtoberoff@ipwla.com>                                        Tue, Aug 17, 2010 at 4:29 PM
To: "Kim, Beong-Soo (USACAC)" <Beong-Soo.Kim@usdoj.gov>

Dear Mr. Kim:

It was good to meet you this morning.

**Laura Siegel's telephone number is Home: 310-█████ and Mobile: 310-████.** She is the daughter of *Superman's* co-creator Jerry Siegel.

As discussed, please feel free to contact her directly.

I will be overseas, departing tomorrow August 18 and will be back in the office August 30.

However, I will be checking my e-mails and my office will be fully operational.  If you need something in my absence, please ask for attorneys Nic Williamson (nwilliamson@ipwla,com) or Keith Adams (kgadams@ipwla.com) and it would expedite matters to include them on any e-mails to me.

Thank-you.

Sincerely,

Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**Privileged & Confidential**
**All Rights Reserved**

SD 00912

**EXHIBIT G**
**1145**



Marc Toberoff <marc.toberoff@gmail.com>

## Fwd: Toberoff: Draft Letter Agreement

**Richard Kendall** <rkendall@kbkfirm.com>    Tue, Sep 14, 2010 at 9:14 AM
To: Marc Toberoff <MToberoff@ipwla.com>
Cc: Laura Brill <lbrill@kbkfirm.com>, Nicholas Daum <ndaum@kbkfirm.com>, Nathalie Cohen
<ncohen@kbkfirm.com>

Ltr received from AUSA Klein.  As we will be providing per subpoena rather than voluntarily, we will provide a
letter in which we elaborate on the basis for retaining the privilege.
Sent from handheld device

Begin forwarded message:

> **From:** "Klein, Brian (USACAC)" <Brian.Klein@usdoj.gov>
> **Date:** September 13, 2010 3:20:08 PM PDT
> **To:** Richard Kendall <rkendall@kbkfirm.com>
> **Subject: Toberoff: Draft Letter Agreement**
>
> Per our discussion:
>
> <<Letter Agreement (Richard B. Kendall) 9-10-10.pdf>>
>
> **Brian E. Klein | Assistant United States Attorney | Major Frauds Section**
> United States Attorney's Office | 312 N. Spring St. | Los Angeles, CA 90012
> T: 213.894.6920| F: 213.894.6269 | brian.klein@usdoj.gov

**2 attachments**

📎 **Letter Agreement (Richard B. Kendall) 9-10-10.pdf**
48K

📎 **ATT00001.htm**
1K

**Privileged & Confidential**
**All Rights Reserved**

SD 00913

**EXHIBIT G**
**1146**

**K**  Kendall Brill Klieger

writer's direct:
310.272.7900 telephone
310.272.7936 facsimile
rkendall@kbkfirm.com

September 17, 2010

## CONFIDENTIAL COMMUNICATION

<u>**VIA MESSENGER**</u>

Beong-Soo Kim, Brian E. Klein
Assistant United States Attorneys
United States Attorney
Central District of California
312 N. Spring Street
Los Angeles, CA 90012
*brian.klein@usdoj.gov*

Re:    Documents Delivered to Warner Brothers with "SUPERMAN - MARC TOBEROFF
TIMELINE"

Dear Mr. Klein:

We are in receipt of the Grand Jury subpoena issued by your office on September 13, 2010. As
demanded by the subpoena, and in an effort to assist the Government in its ongoing criminal
investigation, Mr. Toberoff provides hereunder the "SUPERMAN – MARC TOBEROFF
TIMELINE" (the "Timeline") and its enclosures, which were provided anonymously in three
different packages (Bates Nos. Q001-0289; Q0290-0561; Q0562-0839) to Warner Brothers
executives in or about 2005-2006 and became the subject of litigation in *Siegel et al. c. Warner
Bros. Entertainment Inc., et al.*, 04-CV-8400 (C.D. Cal.) and related litigation.

This response to the Grand Jury's subpoena is made subject to and without waiver of the
attorney-client privilege, work product immunity, or any other privilege applicable to these
documents. The Timeline itself and many of the enclosed documents are clearly subject to the
attorney-client privilege and/or work-product immunity, and we are providing them subject to
our mutual understanding that providing such documents in response to your subpoena shall not
constitute a waiver of any applicable privilege or immunity.

Moreover, the provision of these documents is expressly made in reliance upon the
Government's representations, in its letter of September 10, 2010, that (i) "the Government will
maintain the confidentiality of the MT documents and related information and will not provide
the MT documents and related information to non-governmental third parties except as may be
required by law or court order"; (ii) "the Government will return the MT documents to you and
your client as soon as we determine that we no longer need them"; (iii) "to the extent attorney
work product or communications protected by the attorney client privilege are shared with the
Government . . . Mr. Toberoff is sharing them as a selective and limited disclosure in reliance on
the Government's agreement that, in recognition of his objective to preserve any and all

**Privileged & Confidential**
**All Rights Reserved**    Kendall Brill & Klieger LLP

SD 00914

Kendall Brill & Klieger LLP

September 17, 2010                                    **CONFIDENTIAL COMMUNICATION**
Page 2

applicable privileges, the Government will keep them confidential and not disclose them to any
non-governmental third parties (except as may be required by law or court order)"; and (iv)
"nothing in Mr. Toberoff's disclosure of the MT documents and related information is intended
to waive any applicable privilege or protection available under law."

Any privileged documents being produced to the Government pursuant to the subpoena are also
subject to a common interest/joint prosecutorial privilege. *See Sedlacek v. Morgan Whitney
Trading Group*, 795 F. Supp. 329, 330 (C.D. Cal. 1992) (communications between civil litigants
and government investigating similar wrongdoing subject to joint prosecution/common interest
privilege); *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal.
1996) (same). The privilege is particularly applicable here given Mr. Toberoff and the
Government's common interest in investigating the wrong committed against Mr. Toberoff and
his law firm through the theft of these documents and creation of the Timeline.

Please let us know if we may be of further assistance.

Very truly yours,

Richard B. Kendall

Enclosures

cc:    Marc Toberoff, Esq.

Privileged & Confidential
All Rights Reserved

SD 00915

Gmail - Grand Jury subpoena dated Sept 13, 2010                    https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...

 **GMail** by Google                     Marc Toberoff <marc.toberoff@gmail.com>

## Grand Jury subpoena dated Sept 13, 2010

**Richard Kendall** <rkendall@kbkfirm.com>                    Thu, Oct 21, 2010 at 1:14 PM
To: "Brian.Klein@usdoj.gov" <Brian.Klein@usdoj.gov>
Cc: Marc Toberoff <mtoberoff@ipwla.com>

Re: Documents Delivered to Warner Brothers with "SUPERMAN - MARC TOBEROFF TIMELINE"

Dear Mr. Klein:

You have requested that I confirm that Mr. Toberoff's clients have authorized Mr. Toberoff's disclosure to the United
States Attorney's Office of the documents enclosed with my letter to you dated September 27, 2010, pursuant to the
Grand Jury Subpoena dated September 13, 2010 and the terms of my September 27, 2010 letter. I so confirm.

Kind regards,

Richard B. Kendall

## ⟪ Kendall Brill Klieger

**Richard B. Kendall**

Kendall Brill & Klieger LLP

10100 Santa Monica Boulevard, Suite 1725

Los Angeles, CA 90067

Kendall Brill & Klieger LLP

Direct: (310) 272-7900

Main: (310) 556-2700

Fax: (310) 272-7936

Email: rkendall@kbkfirm.com

Web: www.kbkfirm.com

**Privileged & Confidential**
**All Rights Reserved**

**EXHIBIT G**
**1149**

SD 00916

imail - Grand Jury subpoena dated Sept 13, 2010                                https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

Privileged & Confidential
All Rights Reserved

EXHIBIT G
1150

SD 00917