| | |
|---|---|
| 1 | DANIEL M. PETROCELLI (S.B. #097802) |
|   | dpetrocelli@omm.com |
| 2 | MATTHEW T. KLINE (S.B. #211640) |
|   | mkline@omm.com |
| 3 | CASSANDRA L. SETO (S.B. #246608) |
|   | cseto@omm.com |
| 4 | O'MELVENY & MYERS LLP |
|   | 1999 Avenue of the Stars, 7th Floor |
| 5 | Los Angeles, CA  90067-6035 |
|   | Telephone:  (310) 553-6700 |
| 6 | Facsimile:   (310) 246-6779 |
| 7 | PATRICK T. PERKINS (admitted *pro hac vice*) |
|   | pperkins@ptplaw.com |
| 8 | PERKINS LAW OFFICE, P.C. |
|   | 1711 Route 9D |
| 9 | Cold Spring, NY 10516 |
|   | Telephone:  (845) 265-2820 |
| 10 | Facsimile:   (845) 265-2819 |
| 11 | Attorneys for Plaintiff DC Comics |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS, | Case No. CV 10-03633 ODW (RZx) |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **DC COMICS' RESPONSE TO DEFENDANTS' OBJECTION TO EXHIBITS G-I OF JASON TOKORO'S DECLARATION IN SUPPORT OF DC COMICS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR RECONSIDERATION OF THE COURT'S JUNE 27, 2011 RULING** |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | |
| Defendants. | **DECLARATION OF ASHLEY K. PEARSON FILED HEREWITH** |
| | **Judge**:       Hon. Otis D. Wright II |
| | **Magistrate**: Hon. Ralph Zarefsky |
| | **Hearing Date**:       May 29, 2012 |
| | **Hearing Time**:       10:00 a.m. |
| | **Courtroom**:          540 |

Defendants' "objection" to the exhibits filed in support of DC's reply brief is substantively and procedurally without basis, and does no more than recycle arguments that this Court and the Ninth Circuit have now rejected *six times*.

1. DC made crystal-clear—in moving to lift the Court's stay orders, and in opposing defendants' months-too-late *ex parte* request for a protective order—that it would use the Timeline and USAO documents in imminent court filings in this case and before the Ninth Circuit. *E.g.*, Docket No. 422 at 1-2 ("these are important documents that *DC needs to use in imminent filings with the Ninth Circuit and this Court*—and in discovery and in use with witnesses"); Docket No. 391 at 6-7 ("DC needs the Timeline documents for *soon-to-be-filed appellate briefs*."); Docket No. 405 at 3 (same) (emphases added). This Court ruled, and the Ninth Circuit affirmed, that DC is entitled to use all of those documents; that with one limited exception the documents are not covered by any protective order (a limitation which DC fully observed, Docket No. 427-1 ¶¶ 8-9); and that DC's use of the documents would *not* be stayed pending defendants' petitions for rehearing and for certiorari, *see* Docket Nos. 262, 309, 416, 424, 425, 429.

2. Defendants' accusation that DC sought to "publicize" the documents by filing them with its discovery brief is false. While DC would be entirely within its rights to share these documents with the media, it has not done so. And as is clear from defendants' filing and any internet search, there has been *no publicity* surrounding DC's filing or the documents included. Indeed, defendants did not cite a single media report concerning the documents in their Objection, and DC is aware of none. If anything, it is *defendants'* improper filing that will draw attention to the documents—much like their press statements about this case and the Timeline have already done.[1]

---

[1] *See, e.g.*, M. Belloni, *Superman Lawyer Responds To Warner Bros. Suing Him*, THE HOLLYWOOD REPORTER, Dec. 21, 2010 (quoting Toberoff: "the frivolous allegations in [DC's] complaint do not add up and will never pass muster in the federal courts"; the Timeline is "a hyperbolic rant" and "an anonymous, inadmissible letter spewing unsubstantiated and unattributed accusations against Mr. Toberoff"; "Time will tell what

1                                                              DC'S RESPONSE TO DEFS.'
                                                                IMPROPER "OBJECTION"

1   3. DC submitted the Timeline and USAO documents for two fully proper
2   reasons—they are directly relevant to their pending discovery motions, and the
3   documents can and should be lodged as a part of the court record in this case in
4   connection with three pending appeals before the Ninth Circuit.

5   a. The Timeline and USAO documents are directly relevant to DC's pending
6   discovery motions, because the only objection defendants assert to producing the
7   documents at issue is that they are privileged or they did not receive them until
8   recently. The Renner Otto firm has confirmed that defendants misrepresented to
9   this Court which Michael Siegel-related files they possessed and when, Docket No.
10  427-2 at 4, and notably defendants lodge no objection—*nor could they*—to the
11  Renner Otto firm's refutation of their position.

12  Instead, defendants say the Timeline and USAO documents have no bearing
13  on DC's pending discovery motions. Obj. at 1. But as defendants well know, DC's
14  first discovery motion is focused on three sets of documents in Renner Otto's
15  Michael Siegel files. The Timeline and USAO documents show that defendants'
16  representations about what is in the Renner Otto files—and elsewhere—cannot be
17  believed. To take a few examples:

18  • Toberoff listed as Entry 319 on the Bulson privilege log that he produced on
19    October 23, 2006, a June 18, 2003, letter from Don Bulson (of the Renner
20    Otto firm) to Toberoff, over which Toberoff claimed common-interest
21    privilege. Docket No. 362-2 at 308. DC can now see that this letter is
22    Q0040 in the Timeline documents. *See* Docket No. 427-3 at 285. In this
23    June 18 letter, Bulson rejects Toberoff's offer to purchase Michael Siegel's
24    Superman rights on behalf of Toberoff's business partner, Ari Emanuel. *Id*.
25    Privilege does not apply to such communications, as the case law clearly

---

role Warner played with regard to the stolen documents and the anonymous letter.");
*Warner Gets Victory In Legal Fight With Superman Heirs' Attorney*, L.A. TIMES, Apr. 17,
2012 (quoting Toberoff: "nothing in [the Ninth Circuit's] ruling or the documents at issue
will affect the merits of this case"); Docket No. 160 at 5 (describing Timeline an
"anonymous ranting 'hit piece'" that is "facially untrustworthy [and] grossly inaccurate").

    shows, *see* Bulson Document Mot. at 5 (gathering cases) (Docket No. 394 at 5), and as every court to weigh in on the issue *in this case* has clearly held, including this Court, the Ohio court, and the Ninth Circuit, Docket Nos. 161-5 at 30-31; 209 at 11-12; 336 at 1; *In re Pacific Pictures Corp.*, 2012 WL 1640627, at *5 (9th Cir. May 10, 2012).

- Toberoff made a similar misrepresentation concerning Entry 327 on the Bulson log, which is an August 6, 2003, letter responding to the June 18 letter above. *Compare* Docket No. 317-3 at 46 (Entry 327), *with* Tokoro Decl. Ex. G at 302-03 (Q0057-58) (Docket No. 427-3 at 302-03). Again, this August 6 letter only discusses Toberoff's efforts to purchase Michael's rights.

- In yet another example related to Bulson, defendants listed Q0008-9 (the so-called Marks Memo) on their privilege logs in the *Siegel* case, Declaration of Ashley K. Pearson ("Pearson Decl.") Ex. A at 25 (Entry 325), which they republished in this case as an August 9, 2002, letter from Kevin Marks to Joanne and Laura Siegel, Docket No. 162-6 at 422 (Entry 623). Seeing Q0008-9 reveals that the memo was *also addressed to Don Bulson*—yet another example of defendants' logs both being incomplete and misleading. Docket No. 427-3 at 253-54.

    Defendants complain that DC's reply brief specifically addresses only a few examples of their misrepresentations revealed by the Timeline and USAO material. Obj. at 1. The reason for DC's brevity was not a shortage of material, but of time. Defendants flouted the Court's order to produce the documents on Friday, May 11, 2012, at 12:00 p.m., Docket No. 416, by refusing to deliver them by hand or to let DC pick them up that day (even though their offices are just across the street from DC's counsel), and instead insisting on sending them by regular mail late in the day, so DC did not receive them until mid-day Monday, May 14—the date its reply brief was due. Docket No. 427-1 ¶¶ 7-8, Ex. F.

The documents also revealed further misrepresentations beyond communications with Bulson. For instance:

- Defendants represented to the Ninth Circuit that there was *no evidence* the heirs consented to Toberoff's disclosure of the Timeline documents to the USAO. Docket No. 387-2 at 6:22-8:3. The USAO documents directly refute these assertions, Docket No. 427-11 at 1149, which has direct bearing on their credibility in the present discovery motions and with respect to defendants' rehearing petition regarding their failed writ petition. *See* Pearson Decl. Ex. B.

- The Timeline and USAO documents also show that defendants continue to omit from their privilege logs the names of all recipients of correspondence to conceal privilege waivers. Notably, Toberoff Privilege Log Entry No. 3158 lists an August 16, 2010, email from Toberoff to the USAO and Entry No. 3159 lists the USAO's response, which were withheld on grounds of a purported common-interest privilege. Docket No. 427-11 at 1149. Neither entry number lists any recipients other than Toberoff and the USAO. The USAO documents produced show that, *in fact, Ari Emanuel was copied on both emails*. Docket No. 427-11 at 1137-41. There is no basis for asserting Emanuel had a common-interest with the USAO; defendants have never made that claim; and, therefore the communications never should have been withheld. Indeed, defendants told this Court recently in fending off discovery motions that Emanuel has no more rights in the Superman property or in Toberoff's business. Docket No. 367 at 1, 11-12. Yet, in these never-before revealed documents, Toberoff and Emanuel are shown working hand in hand, Docket No. 427-11 at 1137-41.

- Defendants similarly have concealed key documents, including correspondence and legal memoranda, by not listing discrete documents separately as they are obligated to do. *See* Docket No. 160 at 32-33. For

example, in his court-ordered May 2007 declaration, Toberoff identified the documents at Q0027-33 as having been previously logged at "Plaintiffs' supplemental privilege log #82." Docket No. 236-8 at 93. Entry No. 82 identifies a July 11, 2003, fax from Laura to Toberoff. Docket No. 317-2 at 8. The documents at Q0027-33 *do not* include a fax from Laura to Toberoff, but instead are two discrete documents: a May 13, 2003, letter from Michael to Laura, and Laura's July 11, 2003, response. Docket No. 427-3 at 272-278. Along those same lines, Toberoff said Q0090-95 was previously logged at "Plaintiffs' supplemental privilege log #76," Docket No. 236-2 at 94, which identifies a May 28, 2003, letter from Jackoway to Toberoff, Docket No. 317-2 at 8. Toberoff concealed that the documents at Q0090-95 are not just a letter, but also include a May 27, 2003, memorandum regarding "Marc Toberoff – Superman rights." Docket No. 427-3 at 335-40.

- Toberoff represented to the Court in moving for a protective order that the USAO communications included his "frank assessment of potential *suspects*" for who authored the Toberoff Timeline. Docket No. 420 at 11 (emphasis added). The USAO documents establish that Toberoff did not identify any suspects other than David Michaels—his accusations were unqualified. Docket No. 427-11 at 1075 ("The Firm has proof positive as to the identity of the perpetrator—an attorney who accepted a low-paid job at the Firm and, after just three months, disappeared one afternoon without notice. … **David S. Michaels**."). Michaels disputes this claim. Docket No. 408 at 2-6.

Finally, the documents reveal disputes between Michael and Laura and Joanne so severe that both sides contemplated litigation, making even more implausible defendants' assertions of common-interest privilege over the November 2002 letter at issue here, and generally in this case. *E.g.*, Docket No. 427-4 at 412 (Q0167) (draft of the 2004 Siegel retainer agreement, in which Laura notes that "Michael Siegel has been threatening to sue my mother for a portion of her pension

for years claiming that it is an advance on an eventual settlement"); Docket No. 427-11 at 1127 (SD00889-94) (allegedly David Michaels' handwritten notes which make reference to the Siegels' intent to bring a defamation suit against Michael).

b. As discussed in the recent *ex parte* briefing, the Timeline and USAO documents are also key to DC's soon-to-be-filed appellate briefing. *See* Docket No. 391 at 6-9; 405 at 3. It is important to lodge the documents in this Court so the Ninth Circuit can take notice of them on appeal. *See Thomas v. Anchorage Equal Rights Comm'n*, 165 F.3d 692, 719 (9th Cir. 1999) (it is "appropriate to take judicial notice of … the records of" district court); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). The authenticity of these documents—admittedly from Toberoff's own files—is not disputed, nor can one dispute their relevance to the issues in both the *Siegel* and SLAPP appeals.

It is well within the "inherent authority" of the Ninth Circuit to consider the Timeline and USAO documents in the pending appeals. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003); *See More Light Invs. v. Morgan Stanley DW Inc.*, 415 Fed. Appx. 1, 2 (9th Cir. 2011); *Johnson v. Rancho Santiago Comm'y College Dist.*, 623 F.3d 1011, 1020 n.3 (9th Cir. 2010).

The documents provide key evidence in support of DC's arguments in both appeals. For instance, a determinative issue in the *Siegel* appeal is whether a settlement agreement was reached in October 2001 whereby the Siegels granted to DC all rights to Superman. The Marks Memo sent by Kevin Marks, the Siegels' prior counsel, to Laura and Joanne, and produced for the first time with the Timeline documents, confirms DC's claim that the parties had in fact "reached an agreement with DC Comics," and even states that Marks would testify against the Siegels on this point. Docket No. 427-3 at 253-54 (Q0008-9). Defendants may not want the Ninth Circuit to see this important document, and therefore seek to keep it

out of the district court and appellate record, but this tactical desire does not remotely justify striking it.

Similarly, the focus of the dispute in the SLAPP appeal is whether Toberoff acted as a businessman or an attorney when he approached the Siegels and Shusters and induced them to repudiate their agreements with DC. *See* Docket No. 307 at 13-21. The Timeline documents provide a wealth of examples of Toberoff's interacting with the heirs in a business capacity and as film producer, not as attorney. These include Toberoff's communications with Bulson offering to purchase Michael's Superman rights on behalf of his business partner Emanuel, as well as drafts of the conflict disclosure agreement laying out Toberoff's plan to buy Michael out, and demonstrating that the plan was brewing months before the finalized agreement was signed. *See* Docket Nos. 427-3 at 259-60, 264-65, 285, 302-03. An October 2, 2004, draft of the Siegel retainer agreement, including Laura's notes thereon, confirms that no legal agreement existed between Toberoff and the Siegels before that date. Docket No. 427-4 at 409-16.

Moreover, two key internal memoranda written by attorneys who Toberoff asked to handle the Shuster probate proceeding analyze Toberoff's "dual role" as businessman and lawyer and confirm what the Ninth Circuit noted was obvious, *In re Pacific Pictures*, 2012 WL 1640627, at *1—*i.e.*, that Toberoff's dual involvement contravened the ethical rules. *See* Docket Nos. 427-3 at 336-38, 341-49. Indeed, the Armstrong Hirsch attorneys explicitly declined involvement with the probate proceeding based on a fear of a "potential conflict of interest that the firm might have if we handled the probate matters, with PPC advancing all probate costs and in effect controlling the probate, and your [Toberoff's] being involved with the estate." Docket No. 427-3 at 337.

Finally, as for Toberoff's surprise that DC sued him for his acts as a businessman, the Marks Memo told Laura Siegel (and Toberoff) that such a lawsuit

1  against both of them was likely if Laura reneged on her "deal" with DC and took
2  Toberoff's and Emanuel's instead. Docket No. 427-3 at 253-54.

3      4. The only legal authority defendants cite in their objection is Rule 11,
4  which has utterly no application here. Aside from failing to meet-and-confer with
5  DC on the issue in violation of Local Rule 7-3, defendants ignore that a Rule 11
6  motion "*must not be filed or be presented to the court*" unless it was served on DC
7  "21 days" in advance. FED. R. CIV. P. 11(c)(2) (emphasis added). This 21-day
8  "safe-harbor provision" is an "absolute prerequisite." *Truesdell v. S. Cal.*
9  *Permanente Med. Grp.*, 209 F.R.D. 169, 174 (C.D. Cal. 2002); *see also Radcliffe v.*
10 *Rainbow Const. Co.*, 254 F.3d 772 (9th Cir. 2001). Indeed, seeking relief pursuant
11 to Rule 11 "without abiding by ... the safe-harbor provisions of Rule 11(c)(2), could
12 expose [defendants]—not [DC]—to sanctions." *Yuckming Chiu v. Citriz Sys., Inc.*,
13 2011 WL 6018278, at *8 (C.D. Cal. Nov. 23, 2011). DC reserves all rights in this
14 regard.

15      5. For the foregoing reasons, defendants' request to strike the documents
16 from the record should be denied.

17 Dated:     May 18, 2012          Respectfully Submitted,

18                                  O'MELVENY & MYERS LLP

19                                  By: /s/ Daniel M. Petrocelli
20                                      Daniel M. Petrocelli
                                        Attorneys for DC Comics