# EXHIBIT A

**PRIVILEGE LOG**

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s) | Document Description | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 1 | 00/00/00 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 2 | 4/18/1997 | Michael Siegel, Joanne & Laura Siegel | Atty Dennis Larson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 3 | 2/2/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 4 | 3/18/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 5 | 6/17/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 6 | 6/26/1998 | Atty Don Bulson, Joanne & Laura Siegel | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 7 | 9/4/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 8 | 11/3/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 9 | 11/9/1998 | Atty Arthur Levine, Joanne & Laura Siegel | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 10 | 12/3/1998 | Atty Dennis Larson | Atty Arthur Levine | Letter | Atty/Client | Plaintiffs' Counsel |
| 11 | 12/4/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 12 | 1/19/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |

**EXHIBIT A**

**2**

| 13 | 1/28/1999 | Atty Arthur Levine, Joanne & Laura Siegel | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 14 | 2/2/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Kevin Marks | Atty Bruce Ramer | Letter | Atty/Client | Plaintiffs' Counsel |
| 15 | 2/24/1999 | Atty Dennis Larson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 16 | 3/10/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint interest | Plaintiffs' Counsel |
| 17 | 3/31/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Kevin Marks | Atty Bruce Ramer | Letter | Atty/Client | Plaintiffs' Counsel |
| 18 | 3/31/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Kevin Marks | Atty Bruce Ramer | Letter | Atty/Client | Plaintiffs' Counsel |
| 19 | 4/12/1999 | Attys Bruce Ramer, Kevin Marks | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 20 | 4/12/1999 | Atty Bruce Ramer, Kevin Marks | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 21 | 4/7/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 22 | 4/7/1999 | Atty Kevin Marks | Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 23 | 4/16/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint interest | Plaintiffs' Counsel |
| 24 | 4/19/1999 | Atty Dennis Larson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 25 | 4/29/1999 | | Atty Bruce Ramer | Letter (draft) | Atty Work Product | Plaintiffs' Counsel |
| 26 | 4/29/1999 | Joanne & Laura Siegel, Atty Dennis Larson | Atty Kevin Marks | Letter | Atty/ Client | Plaintiffs' Counsel |

**EXHIBIT A**

**3**

| 27 | 5/10/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
|----|-----------|--|------------------|-------|-------------------|---------------------|
| 28 | 5/12/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 29 | 5/13/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 30 | 5/19/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 31 | 5/26/1999 | | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 32 | 5/27/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 33 | 5/28/1999 | Atty Kevin Marks | Atty Arthur Levine | Letter | Atty/Client | Plaintiffs' Counsel |
| 34 | 6/8/1999 | Atty Don Bulson, Joanne & Laura Siegel | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 35 | 6/22/1999 | Attys Bruce Ramer, Kevin Marks; Joanne & Laura Siegel; Atty George Zadorozny | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 36 | 6/30/1999 | Joanne & Laura Siegel; Atty Dennis Larson, Atty Bruce Ramer, Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 37 | 7/7/1999 | Attys Kevin Marks & Bruce Ramer | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 38 | 7/7/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 39 | 7/8/1999 | Atty Arthur Levine; Atty Dennis Larson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**4**

| | | | | | | |
|---|---|---|---|---|---|---|
| 40 | 7/8/1999 | Atty Dennis Larson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 41 | 7/12/1999 | Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 42 | 7/12/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 43 | 7/20/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 44 | 7/27/1999 | Atty Arthur Levine, Joanne & Laura Siegel, Atty Bruce Ramer, Atty Kevin Marks | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 45 | 7/31/1999 | Atty Kevin Marks | Atty Bruce Ramer | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 46 | 8/2/1999 | Atty Don Bulson; Joanne & Laura Siegel, Atty Kevin Marks | Atty Arthur Levine | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 47 | 8/4/1999 | Atty Kevin Marks | Atty Bruce Ramer | Letter | Atty/Client | Plaintiffs' Counsel |
| 48 | 8/10/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 49 | 8/25/1999 | Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 50 | 8/30/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 51 | 8/31/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 52 | 9/2/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 53 | 9/3/1999 | Atty Kevin Marks | Atty Arthur Levine | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**5**

Sep-28-06    08:25pm    From-

| 54 | 9/7/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
|----|----------|--|------------------|-------|-------------------|---------------------|
| 55 | 9/8/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 56 | 9/14/1999 | Atty Kevin Marks; Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 57 | 9/15/1999 | Joanne & Laura Siegel; Atty Dennis Larson, Atty Bruce Ramer, Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 58 | 9/17/1999 | Atty Kevin Marks | Atty Bruce Ramer | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 59 | 9/27/1999 | Attys Bruce Ramer & Kevin Marks | Atty Dennis Larson | Letter | Atty Work Product | Plaintiffs' Counsel |
| 60 | 9/28/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 61 | 10/8/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 62 | 10/8/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 63 | 10/25/1999 | Atty George Zadorozny | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 64 | 10/27/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 65 | 11/3/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Bruce Ramer; Atty Arthur Levine; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 66 | 11/8/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 67 | 11/18/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

T-025    P.007    F-762

| | | | | | | |
|---|---|---|---|---|---|---|
| 68 | 11/23/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 69 | 12/3/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 70 | 12/6/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 71 | 12/6/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 72 | 12/7/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 73 | 12/10/1999 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 74 | 12/15/1999 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 75 | 1/3/2000 | Atty Don Bulson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 76 | 1/10/2000 | Atty Don Bulson; Atty Dennis Larson; Atty Bruce Ramer; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 77 | 1/17/2000 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 78 | 1/19/2000 | Atty Bruce Ramer; Atty Kevin Marks; Joanne & Laura Siegel | Atty Dennis Larson | Letter | Atty/Client | Plaintiffs' Counsel |
| 79 | 1/25/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 80 | 2/6/2000 | Atty Kevin Marks; Atty Bruce Ramer | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 81 | 2/7/2000 | Atty Kevin Marks; Atty Bruce Ramer; Joanne & Laura Siegel | Atty George Zadorozny | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**7**

| | | | | | | |
|---|---|---|---|---|---|---|
| 82 | 3/1/2000 | Joanne & Laura Siegel; Atty Arthur Levine; Atty Bruce Ramer; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 83 | 3/6/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 84 | 3/8/2000 | Joanne & Laura Siegel; Atty Arthur Levine; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 85 | 3/30/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 86 | 4/3/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 87 | 4/5/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 88 | 4/5/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 89 | 4/5/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 90 | 4/11/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 91 | 4/12/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 92 | 4/12/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 93 | 4/15/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 94 | 4/18/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 95 | 4/21/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

Sep-29-06    08:25pm    From-

| 96 | 4/24/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 97 | 4/27/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 98 | 4/27/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 99 | 5/1/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 100 | 5/3/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 101 | 5/3/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 102 | 5/3/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Arthur Levine | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 103 | 5/5/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 104 | 5/8/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 105 | 5/8/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 106 | 5/9/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 107 | 5/10/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 108 | 5/10/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 109 | 5/15/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

T-025    P.010    F-762

**EXHIBIT A**

**9**

| 110 | 5/16/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 111 | 5/18/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 112 | 5/23/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 113 | 5/26/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 115 | 5/31/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 116 | 5/31/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 117 | 6/2/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 114 | 6/6/2000 | Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 118 | 6/7/2000 | Atty Bruce Ramer | Joanne & Laura Siegel | Notes | Atty Work Product | Plaintiffs' Counsel |
| 119 | 6/7/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 120 | 6/8/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 121 | 6/8/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 122 | 6/12/2000 | Atty Kevin Marks; Atty Bruce Ramer | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 123 | 7/6/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

| 124 | 7/7/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
|---|---|---|---|---|---|---|
| 125 | 7/10/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 126 | 7/10/2000 | Atty Kevin Marks | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 127 | 7/19/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 128 | 7/21/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 129 | 7/24/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 130 | 7/26/2000 | Atty Kevin Marks; Atty Bruce Ramer | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 131 | 7/26/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 132 | 7/28/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 133 | 7/29/2000 | Atty Kevin Marks | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 134 | 8/24/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 135 | 8/25/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 136 | 9/5/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 137 | 9/6/2000 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |

**EXHIBIT A**

**11**

| 138 | 9/7/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 139 | 9/8/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 140 | 9/8/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 141 | 9/8/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 142 | 9/8/2000 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 143 | 9/8/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 144 | 9/9/2000 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 145 | 9/12/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 146 | 9/14/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 147 | 9/15/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 148 | 9/17/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 149 | 9/18/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 150 | 9/19/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 151 | 9/22/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**12**

Sep-29-06   08:26pm   From-

| | | | | | | |
|---|---|---|---|---|---|---|
| 152 | 9/22/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 153 | 9/26/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 154 | 9/26/2000 | Atty Kevin Marks | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 155 | 10/10/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 156 | 10/10/2000 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 157 | 10/11/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 158 | 10/12/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 159 | 10/12/2000 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 160 | 10/13/2000 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 161 | 10/13/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 162 | 10/17/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 163 | 10/17/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 164 | 10/18/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 165 | 10/19/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

T-025   P.014/048   F-762

**EXHIBIT A**

**13**

| 166 | 10/20/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 167 | 10/21/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 168 | 10/24/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 169 | 10/26/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 170 | 10/26/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 171 | 11/3/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 172 | 11/4/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 173 | 11/6/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 174 | 11/8/2000 | Joanne & Laura Siegel, Atty Don Bulson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 175 | 11/10/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 176 | 11/20/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 177 | 11/29/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 178 | 12/6/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 179 | 12/18/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

**EXHIBIT A**

**14**

| 180 | 12/19/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 181 | 12/22/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 182 | 12/27/2000 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 183 | 12/28/2000 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 184 | 12/28/2000 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 185 | 12/30/2000 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 186 | 1/2/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 187 | 1/3/2001 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 188 | 1/10/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 189 | 1/12/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 190 | 1/16/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 191 | 2/7/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 192 | 2/11/2001 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 193 | 2/12/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

**EXHIBIT A**

**15**

Sep-28-06    08:27pm    From-    T-025    P.017/048    F-762

| 194 | 2/14/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 195 | 2/14/2001 | | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 196 | 2/20/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 197 | 2/26/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 198 | 3/12/2001 | Atty Kevin Marks; Michael Siegel | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 199 | 3/13/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 200 | 3/19/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 201 | 3/26/2001 | Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 202 | 4/2/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 203 | 4/11/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 204 | 4/18/2001 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 205 | 4/18/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 206 | 4/19/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 207 | 4/23/2001 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

EXHIBIT A
16

Sep-29-06    08:27pm    From-

| 208 | 4/27/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 209 | 4/27/2001 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 210 | 4/30/2001 | Atty Don Bulson; Joanne & Laura Siegel, Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 211 | 5/3/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 212 | 5/7/2001 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 213 | 5/8/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 214 | 5/10/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 215 | 5/14/2001 | Atty Kevin Marks | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 216 | 5/16/2000 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 217 | 5/16/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 218 | 5/16/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 219 | 5/17/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 220 | 5/18/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 221 | 5/18/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |

T-025    P.018/048    F-762

**EXHIBIT A**

| | | | | | | |
|---|---|---|---|---|---|---|
| 222 | 5/24/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 223 | 5/25/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 224 | 5/30/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 225 | 5/30/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 226 | 5/30/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 227 | 5/31/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 228 | 6/19/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 229 | 6/21/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 230 | 6/21/2001 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 231 | 6/22/2001 | Joanne & Laura Siegel; Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 232 | 6/25/2001 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 233 | 6/25/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 234 | 6/26/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 235 | 6/29/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**18**

| 236 | 6/29/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 237 | 6/29/2001 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 238 | 7/3/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 239 | 7/11/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 240 | 7/11/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 241 | 7/12/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 242 | 7/12/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 243 | 7/16/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 244 | 7/16/2001 | Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 245 | 7/18/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 246 | 7/20/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 247 | 7/24/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 248 | 7/27/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 249 | 7/30/2001 | Atty Don Bulson, Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |

**EXHIBIT A**

**19**

Sep-29-06    08:27pm    From-

| 250 | 7/31/2001 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 251 | 8/9/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 252 | 8/17/2001 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 253 | 8/24/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 254 | 8/24/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 255 | 9/5/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 256 | 9/13/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 257 | 9/14/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 258 | 9/17/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 259 | 9/17/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 260 | 9/21/2001 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiff's Counsel |
| 261 | 9/23/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 262 | 9/24/2001 | Atty Don Bulson; Joanne & Laura Siegel, Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 263 | 9/26/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

T-025    P.021/048    F-762

**EXHIBIT A**

**20**

| 264 | 9/28/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 265 | 9/28/2001 | Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 266 | 10/1/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 267 | 10/2/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 268 | 10/3/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 269 | 10/4/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 270 | 10/8/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 271 | 10/10/2001 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 272 | 10/10/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 273 | 10/15/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 274 | 10/16/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 275 | 10/17/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 276 | 10/17/2001 | Atty Don Bulson; Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 277 | 10/19/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

| 278 | 10/19/2001 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 279 | 12/28/2001 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 280 | 1/3/2002 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 281 | 1/3/2002 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 282 | 1/9/2002 | Atty Kevin Marks; Atty Jennifer Harding | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 283 | 1/10/2002 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 284 | 1/22/2002 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 285 | 2/4/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 286 | 2/4/2002 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 287 | 2/11/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 288 | 00/00/00 | | Atty Kevin Marks | Agreement (Draft) | Atty Work Product | Plaintiffs' Counsel |
| 289 | 3/7/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 290 | 3/8/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 291 | 4/19/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |

**EXHIBIT A**

**22**

Sep-23-06    08:28pm    From-

| 292 | 4/26/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 293 | 5/10/2002 | Atty Kevin Marks; Michael Siegel | Atty Don Bulson | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 294 | 5/12/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 295 | 5/13/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 296 | 5/16/2002 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 297 | 5/17/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 298 | 5/22/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 299 | 5/25/2002 | Atty Kevin Marks | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 300 | 6/5/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Memorandum | Atty/Client | Plaintiffs' Counsel |
| 301 | 6/5/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 302 | 6/7/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 303 | 6/24/2002 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 304 | 6/25/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 305 | 6/27/2006 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |

T-025    P. 024/048    F-762

**EXHIBIT A**
**23**

Sep-29-06    06:28pm    From-

| 306 | 7/2/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 307 | 7/8/2002 | Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 308 | 7/9/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 309 | 7/10/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 310 | 7/11/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 311 | 7/11/2002 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 312 | 00/00/00 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 313 | 7/12/2002 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 314 | 7/12/2002 | Joanne & Laura Siegel, Don Bulson | Atty Kevin Marks | Letter | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 315 | 7/1/2002 | Joanne & Laura Siegel, Don Bulson | Atty Kevin Marks | Draft Proposal | Atty/Client | Plaintiffs' Counsel |
| 316 | 7/1/2002 | | Atty Kevin Marks | Draft Proposal | Atty Work Product | Plaintiffs' Counsel |
| 317 | 7/15/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 318 | 7/16/2002 | Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 319 | 7/17/2002 | Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |

T-026    P.025/046    F-762

**EXHIBIT A**

**24**

| | | | | | | |
|---|---|---|---|---|---|---|
| 320 | 7/17/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 321 | 7/19/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 322 | 7/22/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 323 | 7/24/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 324 | 8/8/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 325 | 8/9/2002 | Joanne & Laura Siegel; Atty Don Bulson; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 326 | 8/12/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 327 | 8/19/2004 | Atty Arthur Levine | Joanne Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 328 | 8/20/2002 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 329 | 8/22/2002 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client– Joint Interest | Plaintiffs' Counsel |
| 330 | 8/27/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 331 | 8/30/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 332 | 9/3/2002 | | Atty Kevin Marks | Notes | Atty Work Product | Plaintiffs' Counsel |
| 333 | 9/3/2002 | Atty Kevin Marks | Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT A**

**25**

| 334 | 9/23/2002 | Atty Kevin Marks | Atty Don Bulson | E-mail | Atty/Client - Joint Interest | Plaintiffs' Counsel |
| 335 | 9/21/2002 | Atty Kevin Marks | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 336 | 9/26/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 337 | 10/4/2002 | Joanne & Laura Siegel | Atty Bruce Ramer | Letter | Atty/Client | Plaintiffs' Counsel |
| 338 | 10/4/2002 | Joanne & Laura Siegel; Atty Bruce Ramer | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 339 | 10/4/2002 | Joanne & Laura Siegel | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 340 | 1/5/2003 | Atty Marc Toberoff | Joanne & Laura Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 341 | 1/9/2003 | Atty Kevin Marks | Atty Marc Toberoff | Letter | Atty/Client | Plaintiffs' Counsel |
| 342 | 1/21/2003 | Atty Marc Toberoff | Atty Kevin Marks | Letter | Atty Work Product | Plaintiffs' Counsel |

# EXHIBIT B



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

May 15, 2012

OUR FILE NUMBER
905900-321

**VIA ECF SYSTEM**

WRITER'S DIRECT DIAL
(310) 246-6840

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, California 94103-1518

WRITER'S E-MAIL ADDRESS
mkline@omm.com

> **Re:**  *In re Pacific Pictures Corp., et al., No. 11-71844* **(Argued: Feb. 7, 2012)**
> **(Kozinski, C.J.; O'Scannlain, J.; Smith, N.R., J.)**

Dear Ms. Dwyer:

DC submits this FRAP 28(j) letter in connection with petitioners' pending petitions for rehearing.  Petitioners' rehearing petitions challenge the veracity of the Court's opinion, including footnote 6, which addresses whether the Siegel and Shuster heirs consented to the disclosure of the Timeline Documents to the USAO.  *Compare* Slip. Op. at 18, n.6, *with* Docket No. 31-1 at 15-16.

At oral argument, and as noted in the Court's opinion, Slip Op. at 17-18, counsel for petitioners argued that the "Heirs themselves [as opposed to Toberoff] did not take the affirmative step to disclose" privileged documents to the USAO:

> CHIEF JUDGE KOZINSKI:  …. Isn't a[n] attorney-client privilege a privilege of the client that can only be waived by the client?
> RICHARD B. KENDALL, ESQ.:  Yes, your Honor.
> CHIEF JUDGE KOZINSKI:  What evidence is there here that the client here waived?
> RICHARD B. KENDALL, ESQ.:  There is no evidence that the client waived, your Honor….
> CHIEF JUDGE KOZINSKI:  So why haven't you argued that there's no evidence of waiver because there's no client -- there's no action by the client?
> RICHARD B. KENDALL, ESQ.:  Your Honor, I think it is pointed out that the client has never waived…..
> CHIEF JUDGE KOZINSKI:  Where is the client's waiver?
> RICHARD B. KENDALL, ESQ.:  There is no client waiver, your Honor.

**EXHIBIT B**
**27**

O'MELVENY & MYERS LLP
May 15, 2012 - Page 2

Tr. 4:21-5:3, 5:13-18, 6:2-4 (Ex. A hereto).  DC disputed this factual claim, *id.* at 11:3-16, 11:3-16, 14:4-12, 20:4-25, 21:1-25, 22:1, 22:9-17, 24:2-25, 25:1-23, 28:4-9, 29:1-6, 31:16-25, 32:1-12, and counsel for petitioners never corrected the record.

On May 14, 2012, DC finally received copies of the Toberoff Timeline and USAO documents that the magistrate judge ordered produced, in a ruling affirmed by this Court.  In one of many critically important documents contained in these files, counsel for petitioners "confirm[ed]" that the heirs had authorized Toberoff's disclosure of these privileged materials:

 **Marc Toberoff** <marc.toberoff@gmail.com>

**Grand Jury subpoena dated Sept 13, 2010**

**Richard Kendall** <rkendall@kbkfirm.com>                    Thu, Oct 21, 2010 at 1:14 PM
To: "Brian.Klein@usdoj.gov" <Brian.Klein@usdoj.gov>
Cc: Marc Toberoff <mtoberoff@ipwla.com>

Re:  Documents Delivered to Warner Brothers with "SUPERMAN - MARC TOBEROFF TIMELINE"

Dear Mr. Klein:

You have requested that I confirm that Mr. Toberoff's clients have authorized Mr. Toberoff's disclosure to the United States Attorney's Office of the documents enclosed with my letter to you dated September 27, 2010, pursuant to the Grand Jury Subpoena dated September 13, 2010 and the terms of my September 27, 2010 letter.  I so confirm.

Kind regards,

Richard B. Kendall

A true and correct copy of counsel's email (Bates stamped "SD-00916") is attached as Exhibit B.  To the extent the heirs' consent to the disclosure remains material to the Court, the email confirms that, contrary to petitioners' claim, the heirs expressly consented.

Respectfully submitted,

/s/ Matthew T. Kline

Matthew T. Kline
of O'Melveny & Myers LLP
*Counsel for DC Comics*

cc:     All Counsel

**EXHIBIT B**
**28**

# EXHIBIT A

CERTIFIED
COPY

# In The Matter Of:

## PACIFIC PICTURES CORPORATION
### v.
## DC COMICS

---

## ORAL ARGUMENT

### February 7, 2012

---

**MERRILL CORPORATION**
LegaLink, Inc.

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**EXHIBIT A**
**3**
**EXHIBIT B**
**30**

Page 1

Case No. 11-71844

CERTIFIED
COPY

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

———————————————————————

PACIFIC PICTURES CORPORATION; ET AL.

Defendants-Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

Respondent.

DC COMICS,

Plaintiff-Real Party in Interest.

———————————————————————

FEBRUARY 7, 2012

ORAL ARGUMENT

HEARD BEFORE JUDGES KOZINSKI, O'SCANNLAIN AND SMITH

TRANSCRIBED BY: Melanie M. Faulconer

CSR No. 6420

**EXHIBIT A**
**4**
**EXHIBIT B**
**31**

ORAL ARGUMENT    2/7/2012

```
 1                    PASADENA, CALIFORNIA

 2                    FEBRUARY 7, 2012

 3

 4                        ---0---

 5

 6      RICHARD B. KENDALL, ESQ.:  May it please the Court.

 7  Richard Kendall on behalf of the petitioner.

 8          Your Honors, the question in this case is

 9  whether a theft of privileged documents from a law

10  office can be investigated without enabling the thief

11  and the litigation adversary --

12      JUDGE KOZINSKI:  Now, once again, you have to

13  remember what the case is here.  You're on a mandamus

14  petition, standard of review, and it's not a question if

15  something can be stolen or anything else.  The question

16  is is whether or not you meet the heavy burden that we

17  require under case law for getting a writ of mandamus.

18      RICHARD B. KENDALL, ESQ.:  Quite correct.

19      JUDGE KOZINSKI:  And that's what's at stake here.

20  Okay?

21          We know what the facts are.  So let's get on.

22  You've got nine minutes left, so let's talk about the

23  stuff of mandamus.

24      RICHARD B. KENDALL, ESQ.:  We argue, your Honor,

25  that the court below committed legal error on the law by
```

```
 1   misinterpreting the law that governs privilege waiver in

 2   such situations.

 3          The cases that were cited by the magistrate and

 4   by my learned opponents are cases that involve only the

 5   voluntary disclosure by a target to an adverse party,

 6   and the picking and choosing among opponents by the

 7   target --

 8       JUDGE KOZINSKI:  Let me -- let me --

 9       RICHARD B. KENDALL, ESQ.:  -- that's not what

10   happened here.

11       JUDGE KOZINSKI:  Let me ask you a question.  It's

12   probably directed to your opponent.  But I -- there's a

13   couple of things I'm really confused about in this case,

14   and maybe you can address and then I'll ask him of

15   course.

16          One of them is, there was a subpoena here;

17   right?

18       RICHARD B. KENDALL, ESQ.:  Correct.

19       JUDGE KOZINSKI:  I'm not quite sure I understand.

20   There wasn't -- I looked at the briefs, and there was

21   no -- not much discussion.

22          Isn't a subpoena a lawful order that has to be

23   complied with?

24       RICHARD B. KENDALL, ESQ.:  It is, your Honor, and it

25   provides all --
```

ORAL ARGUMENT – 2/7/2012

Page 4

```
 1        JUDGE KOZINSKI:  Well, why isn't that the
 2   dispositive fact here?  All the back and forth between
 3   the parties and agreements and what they wanted to do,
 4   and all that, why isn't that entirely beside the point?
 5        RICHARD B. KENDALL, ESQ.:  Well, I would like to
 6   argue, your Honor, that it is.  Unfortunately there is
 7   some precedent in the target cases that do involve Grand
 8   Jury subpoenas that require me to point out the
 9   difference between this case and those cases that did
10   involve subpoenas.
11           Here's my argument on the subpoena.
12        JUDGE SMITH:  Which cases are those?
13        RICHARD B. KENDALL, ESQ.:  The cases that are cited
14   in the list --
15        JUDGE KOZINSKI:  Give me a name, you know.  That's
16   how we identify cases, by name, possibly by a citation.
17        RICHARD B. KENDALL, ESQ.:  Yes, your Honor.
18           The --
19        JUDGE KOZINSKI:  You know, I might as well tell you
20   my second question because I'm also confused about
21   this.
22           Isn't a attorney-client privilege a privilege
23   of the client that can only be waived by the client?
24        RICHARD B. KENDALL, ESQ.:  Yes, your Honor.
25        JUDGE KOZINSKI:  What evidence is there here that
```

ORAL ARGUMENT - 2/7/2012

Page 5

```
 1    the client here waived?

 2         RICHARD B. KENDALL, ESQ.:  There is no evidence that

 3    the client waived, your Honor.

 4         JUDGE KOZINSKI:  Everything done here was by the

 5    lawyer; right?

 6         RICHARD B. KENDALL, ESQ.:  Everything that was done

 7    here --

 8         JUDGE KOZINSKI:  A lawyer can't waive the privilege

 9    on behalf of the client.  It's one of those things like

10    pleading guilty that only the client can do.

11         RICHARD B. KENDALL, ESQ.:  Quite correct, your

12    Honor.

13         JUDGE KOZINSKI:  So why haven't you argued that

14    there's no evidence of waiver because there's no

15    client -- there's no action by the client?

16         RICHARD B. KENDALL, ESQ.:  Your Honor, I think it is

17    pointed out that the client has never waived.

18         JUDGE KOZINSKI:  It is?

19         RICHARD B. KENDALL, ESQ.:  And for that matter, nor

20    has the -- Mr. Toberoff.

21         JUDGE KOZINSKI:  Who cares what Toberoff did.

22    Toberoff's the lawyer.  The lawyer can't waive the

23    privilege for the client.  You know, all this talk about

24    what Toberoff did, again, especially the time, is beside

25    the point.
```

```
 1        RICHARD B. KENDALL, ESQ.:  Your Honor --

 2        JUDGE KOZINSKI:  Where is the client's waiver?

 3        RICHARD B. KENDALL, ESQ.:  There is no client

 4   waiver, your Honor, and beyond that --

 5        JUDGE KOZINSKI:  So you're briefing it.  That's so

 6   hard; right?  That's why -- it's full of why -- I looked

 7   and there's nothing here from the client.

 8        RICHARD B. KENDALL, ESQ.:  Quite right, your Honor.

 9           I would further point out that as long as this

10   case was before the Grand Jury, it was covered by the

11   restrictions that govern disclosures to a Grand Jury

12   under Rule 60 of the Federal Rules of Criminal

13   Procedure.  Those are equivalent to a protective order.

14   In fact, they're stronger than a protective order.  They

15   are statutory.  And as long as the case is in front of a

16   Grand Jury, there could be no disclosure of these

17   documents.  In that sense this is much like the Bittaker

18   case, the en banc case that your Honor authored in

19   which --

20        JUDGE KOZINSKI:  The brilliant Bittaker opinion, is

21   that the one?

22           (Laughter.)

23        JUDGE KOZINSKI:  Is that the one you're talking

24   about?

25           I don't remember it actually.
```

**EXHIBIT A**
**9**
**EXHIBIT B**
**36**

```
 1              (Laughter.)

 2         RICHARD B. KENDALL, ESQ.:  And so, your Honor, I

 3    think --

 4         JUDGE KOZINSKI:  That was a habeas case; right?

 5         RICHARD B. KENDALL, ESQ.:  That was a habeas case in

 6    which Judge -- Judge Burns had issued a protective

 7    order, and the court pointed out that at the time the

 8    litigant disclosed the documents, the litigant was

 9    relying on the protections accorded by the protective

10    order and that shows the lack of intent to waive and the

11    lack of a waiver.  And then the same is true in this

12    case where the disclosing party was relying on Grand

13    Jury secrecy, which had the equivalent protections of a

14    protective order, also on the agreement of the receiving

15    United States Attorney to abide by not only Grand Jury

16    secrecy but the --

17         JUDGE SMITH:  When the subpoena was issued, it said

18    you need to disclose privileged materials, you could

19    withhold, redact or log any material over which you want

20    it to remain privileged, and there was no response by

21    you to redact, withhold or log at all, was there?

22         RICHARD B. KENDALL, ESQ.:  There wasn't, and the

23    reason for that is that to do so would have deprived the

24    Government of the corpus delicti of the crime.

25         JUDGE SMITH:  So what?  You're not -- you're not out
```

**EXHIBIT A**
**10**
**EXHIBIT B**
**37**

```
 1     there trying to help the Government.  You're trying to

 2     do what your client suggests.  If it's really privileged

 3     and you really don't want it disclosed, it seems to me

 4     that in those situations you make the Government come

 5     after it.  You just don't produce --

 6         RICHARD B. KENDALL, ESQ.:  The same --

 7         JUDGE SMITH:  -- and then come back to me and say,

 8     "Well I can produce to one person but I can't produce

 9     to another."

10         RICHARD B. KENDALL, ESQ.:  The same could have been

11     said in the Bittaker case.  One can always refuse to

12     disclose privileged documents, but when there are

13     protections that prevent disclosure to unauthorized

14     parties and the only way for in this case the Siegels'

15     interest in having the theft of their privileged

16     documents to be investigated is to permit under those

17     protections the Grand Jury to review the documents; then

18     there was no other way.  To -- to assert privilege would

19     have defeated the desire to -- to have an investigation

20     done.

21         JUDGE SMITH:  So I can -- so as a person, I can

22     desire the Government to do something and produce what I

23     need to them without any problem, but don't come after

24     it in any other way?

25         RICHARD B. KENDALL, ESQ.:  Well, your Honor, I think
```

ORAL ARGUMENT - 2/7/2012

```
 1    it's very different in the cases that involve targets,

 2    and the reason is that when a target of an investigation

 3    discloses a document, he's disclosing it to the adverse

 4    party, and the toothpaste is now out of the tube and the

 5    adverse party has possession of the privileged

 6    information.

 7              In this case a neutral fact-finder is in

 8    possession of the information.  This is much like the

 9    submission to a court of privileged information in order

10    for the court to evaluate the privilege.

11         JUDGE SMITH:  Let me ask you another question.

12              Are all of the escrow documents now accessible

13    to the public?

14         RICHARD B. KENDALL, ESQ.:  No, not the privileged

15    ones.

16         JUDGE SMITH:  Just the the Tob- -- just the Toberoff

17    Timeline?  Is that all that's accessible?

18         RICHARD B. KENDALL, ESQ.:  That is the only one that

19    is accessible as -- well, the answer is "no."  No.

20         JUDGE SMITH:  From my review of the record, it seems

21    to me that the Toberoff Timeline is certainly accessible

22    to the public, and I frankly question whether all the

23    documents were also accessible, though I didn't go try

24    to find out.

25         RICHARD B. KENDALL, ESQ.:  It's absolutely clear,
```

1    your Honor, and I don't think there's any dispute on

2    this, that the privileged documents over which the

3    parties are fighting today are not accessible to the

4    public.

5        JUDGE O'SCANNLAIN:  Counsel, I have a question with

6    respect to -- assuming we apply the Bauman factor, why

7    can't we wait until the end of the litigation?  What's

8    so urgent?

9        RICHARD B. KENDALL, ESQ.:  Because if you wait until

10    the end of the litigation, then the privilege will

11    effectively have been lost.

12        JUDGE SMITH:  But doesn't Mohawk Industries versus

13    Carpenter make clear that an adequate remedy for ruling

14    out attorney-client privilege or attorney-client problem

15    is always available on appeal?

16        RICHARD B. KENDALL, ESQ.:  I don't think so, your

17    Honor.  I think in the situation like this in which if

18    we were to have a disclosure of these privileged

19    documents, it would be difficult to know at the end of

20    the day exactly what effect that has, but the -- the

21    privilege would not have been protected.

22        Your Honor, I only have 30 seconds left, but if

23    I could, I'd like to reserve for rebuttal.

24        JUDGE KOZINSKI:  Okay.  We'll hear from the other

25    side.

**EXHIBIT A**
**13**
**EXHIBIT B**
**40**

1          MATTHEW T. KLINE, ESQ.:  Good morning, your Honors,

2    Matt Kline on behalf of DC Comics.

3          Chief Judge Kozinski, I wanted to address head

4    on one of your factual questions.

5          If you go to Page 1038 of the record, that's

6    Mr. Kim at the U.S. Attorney's Office, his letter to

7    Mr. Kendall.  It says, "In the event that you provide

8    these documents to the Government voluntarily" -- and

9    that's his word -- "this letter will serve to

10   memorialize the following.  First, Mr. Toberoff has

11   obtained all relevant permissions and consents needed,

12   if any, it provided the MT documents and related

13   information to the Government."

14          I see no way not to read that as a client

15   waiver.  They're saying to him, "Have you obtained all

16   the relevant permissions and consents necessary?"

17     JUDGE KOZINSKI:  No, no.  See, that's the nature of

18   things.  You know, a client can't plead guilty for a --

19   or a lawyer can't stand up in court and say, "My client

20   please guilty."  There's certain things only the client

21   can do because a lawyer can't waive the privilege for

22   the client.

23          And the question here is:  Where is the

24   client's action?

25          The fact that the lawyer stands up and says,

```
 1    even explicitly, "Yes, I have a waiver from my client,"

 2    I don't think that's enough.  I'm not aware of any case

 3    where that's enough.  You actually need to have the

 4    client waive the privilege.

 5              And the fact that the lawyer purports to waive

 6    the privilege or implicitly waived the privilege or

 7    explicitly waives the privilege or says that the client

 8    has waived the privilege, I'm not aware of any case law

 9    that says that's enough.

10              Where -- where --

11        MATTHEW T. KLINE, ESQ.:  I would argue, your Honor,

12    under -- under the Bauman test, under the Cheney test

13    for governing risk, given this evidence, given the

14    representation by Mr. Toberoff to the Government in

15    producing these documents, that he obtained -- had

16    obtained all necessary consents, it would not be

17    appropriate to reverse that decision below.

18        JUDGE KOZINSKI:  It doesn't matter what he's

19    obtained, he has obtained consent.  The question is:

20    Where are the consents in the record?  And if -- I don't

21    know.  I'm just not aware of any cases that allow the

22    lawyer to waive the privilege on behalf of --

23              It is the client's privilege; right?

24        MATTHEW T. KLINE, ESQ.:  It is, but a client --

25        JUDGE KOZINSKI:  If the client says, "No, this
```

ORAL ARGUMENT - 2/7/2012

1    privilege will not be waived," the lawyer can't stand up

2    and say, "Well, you know, I -- I'm going to do it

3    anyway"; right?

4        MATTHEW T. KLINE, ESQ.:  Correct.

5            Now, I think what happens here to Judge

6    Smith's -- Judge Smith's point, the subpoena says, "You

7    may withhold or redact any documents you wish."

8        JUDGE KOZINSKI:  Well, it doesn't actually say

9    that.  What it says is, "If," I mean, "you withheld or

10    redacted" --

11        MATTHEW T. KLINE, ESQ.:  Yes.

12        JUDGE KOZINSKI:  -- "you must make a list."

13        MATTHEW T. KLINE, ESQ.:  It gives you the

14    affirmative choice.  And what Judge Becker said in the

15    Westinghouse case, and I think this is right on point,

16    in Footnote 15 of that case, he said the following:

17    "A subpoena that allows the party to assert privilege,

18    to, you know, move to quash it, that is not an act of

19    compulsion."

20            And in Westinghouse what happened in fact was

21    the Government and Westinghouse reached a stipulated

22    protective order approved by a court there that said,

23    "Yes, this will not affect a broader waiver," and Judge

24    Becker in one of his typically learned opinions said,

25    "That's not compulsion.  That's voluntary."

ORAL ARGUMENT - 2/7/2012

Page 14

```
1              And two key factual findings were made here by

2      the District Court judge that I think needs to be given

3      heavy deference, if not dispositive deference here.

4              He first held that petitioners had voluntarily

5      produced these documents.  What they should have done in

6      his view is asserted privilege.  If the Government truly

7      needed these documents -- and there's no showing here

8      that the Government truly needed these documents.

9              Why is that?  How do you prosecute a case like

10     this without the underlying documents?

11             You use the Timeline document, which itself

12     discloses privileged documents.

13             To your question, Judge Smith, several of the

14     documents have been now ordered compelled produced in

15     the case below and are available to the public because

16     they have not been in fact privileged, and many of the

17     privileged claims have been overruled and rejected by

18     the District Court.

19             Secondly, on the factual finding point --

20     JUDGE SMITH:  There's no reason to postpone any

21     final activity, in other words, to deny the mandamus?

22     MATTHEW T. KLINE, ESQ.:  Yes.  I think there's three

23     ways to go here, your Honor.  One is to make a summary

24     denial based on Mohawk.  The second is to -- and I think

25     to me there are two very good footnotes in Bittaker.
```

ORAL ARGUMENT - 2/7/2012

Page 15

```
1    The first is yours, Chief Judge Kozinski.  The second is
2    from Judge O'Scannlain's concurrence with Judge
3    Rawlinson, which put petitioners on notice.  And this
4    was very important in the Qwest case.  This was very
5    point in the MIT case.  He put them on notice.  And I'm
6    reading from Footnote 2 of Judge O'Scannlain's opinion.
7    It says, "The mere fact that disclosure to the opposing
8    counsel is made in confidence, i.e. under protective
9    order, should not alter the status of the waiver" and
10   went through and cited the Westinghouse opinions and the
11   like.
12           The question here is whether it was reasonable
13   to expect Grand Jury secrecy, to expect a
14   confidentiality agreement would protect disclosures
15   otherwise here, and in light of the case law and what
16   Qwest says is -- and, you know, very capable counsel
17   there too, David Boies representing the company there --
18   it said, "When you're dealing with an area of the law
19   when there might be some disagreement" -- and there
20   hadn't been a clear ruling yet, as was the case here --
21   "we're going find waiver.  We're not going to allow
22   private parties to enter into these agreements with the
23   Government."
24        JUDGE KOZINSKI:  But there's a difference between
25   disclosing something to opposing counsel and disclosing
```

1    something in response to an order, which a subpoena is,

2    and I'm just not sure whether you're required to assert

3    a claim of privilege in response to an order.

4       MATTHEW T. KLINE, ESQ.:  You are.  You're invited

5    to.  The subpoena invited them to assert claims of

6    privilege, as Judge Becker I think rightly held in the

7    Westinghouse opinion.  Again, it's a very scholarly

8    opinion.  He said, "Subpoenas all the time, yes, they

9    are a court order," but you are invited to say in

10    response to the subpoena, "Here are the documents I am

11    producing.  I am withholding the following 25

12    documents.  I'm going to give you fair notice with a

13    privilege log of what I'm withholding, and if you, the

14    requesting party, think that I've acted in an untoward

15    fashion, you may go out and get -- you may move to

16    compel the remainder of the production."

17       No subpoena that I'm aware of under the federal

18    civil rules or federal criminal rules requires any party

19    to produce documents that are otherwise privileged.  And

20    here clearly a choice was made.

21       I wanted to address another point that's made

22    throughout their reply brief and argument today, the

23    notion that there's a distinction between target and

24    victim cases.

25       To me one of the most instructive cases here is

1    the McKesson case.  It was decided by the California

2    Court of Appeal.  And in the agreement that McKesson

3    made with the Government in that case, the Government

4    said, "You are not the target of the investigation," and

5    the reason for that was McKesson was saying, "One of our

6    subsidiaries acted in an untoward fashion.  The HBO

7    company beneath us, a subsidiary, they did all the bad

8    stuff.  We are here reporting their crimes to you, SEC.

9    Went to give you our documents."

10          And what the California Court of Appeal said

11    there, as has every other Court of Appeal to really give

12    this issue any attention, is that you cannot through an

13    agreement or otherwise effect anything other than a full

14    and broad waiver here.

15          We do think to your question, Judge

16    O'Scannlain, now that the parties have briefed the

17    issue, now that it's fully before this Court, and I

18    would look to a case like In Re Burlington as a good

19    example -- I'm sorry.  It's the Burlington case that

20    talks about the Bauman factors and the clear error test

21    and the third factor being dispositive.

22          One thing this Court could do is articulate

23    what the rules are here a little bit more clearly so

24    that there is not litigation in this area and so there

25    might be an instance to write a little bit more

ORAL ARGUMENT - 2/7/2012

1    broadly. But one could go either way. There could be a

2    summary denial or a more broad opinion.

3        JUDGE KOZINSKI: Let me get back to the -- to the

4    first issue we're discussing.

5            You know, in a normal case the interests of the

6    client and the lawyer are aligned or the client doesn't

7    have -- the lawyer doesn't have an interest that is

8    different from that of the client. But in this case it

9    seems to me that Toberoff is the one who is -- who

10   wanted to have the prosecution go forward because he was

11   angry at what he thought was the guy who -- who --

12   what's his -- his associate who released the documents.

13   But that's not in the interest of the client. I mean,

14   the client has interest in the confidentiality of the

15   documents and not a particular stake in whether or not

16   this particular -- the suspected releaser gets

17   punished.

18           And, again, I'm just wondering why it is enough

19   in both circumstances for the lawyer to provide the

20   documents without some sort of indication or some sort

21   of actual proof that the client consented?

22       MATTHEW T. KLINE, ESQ.: Well, I think what's

23   interesting, your Honor, is that this has come up in

24   almost all of the cases.

25           And why is that?

**EXHIBIT A**
**21**
**EXHIBIT B**
**48**

ORAL ARGUMENT - 2/7/2012

```
 1            Because companies are targets of these

 2    prosecutions, or in the case of McKesson, they say,

 3    "We're reporting bad deeds by these other people," and

 4    often times what they are doing is they are waiving both

 5    on behalf of themselves as the corporation but also on

 6    behalf of the executives who worked at the company, and

 7    there's a broader waiver effected when these documents

 8    are turned over.

 9            I also think Mr. Kim, if you read his --

10        JUDGE KOZINSKI:  But that is different, a

11    corporation waiving on behalf of its -- of its

12    principals or its directors and officers.  There's a

13    difference in a lawyer waiving on behalf of the client.

14    The -- the -- the attorney-client privilege is a

15    privilege or communication between the lawyer and the

16    client.  There's a spousal privilege.  You know, the --

17    one spouse can prevent the other spouse from speaking in

18    violation of the spousal privilege, even though the

19    other spouse wants to -- wants to -- wants to testify.

20    In the same way the client can keep the lawyer from

21    talking, even though the lawyer would -- you know, has

22    his own reasons for wanting to disclose information.

23        MATTHEW T. KLINE, ESQ.:  I think that's both true

24    and not true, but I think the most important -- and I'll

25    explain --
```

**EXHIBIT A**
**22**
**EXHIBIT B**
**49**

ORAL ARGUMENT - 2/7/2012

Page 20

```
 1        JUDGE KOZINSKI:  I understand where it's true.

 2            In which sense -- in which sense is it not

 3    true?

 4        MATTHEW T. KLINE, ESQ.:  It's not true in the

 5    following sense, your Honor.  In a lot of these

 6    corporate investigations there are these investigatory

 7    teams that are going in and interviewing people and the

 8    subject of the waiver is -- is some of these memorandum,

 9    and in some -- and in these cases often times what is

10    the case is there is a lot of ambiguity about who is

11    having that conversation:  Is that a conversation that's

12    being had between the company's counsel and the private

13    individual?  Is that -- is that a conversation that's

14    happening between the chairman of the board in his

15    personal capacity?  There's a lot of ambiguity there.

16    And despite that ambiguity, the courts have universally

17    held that there's a broader waiver.

18            More practically in looking at the record in

19    this case, your Honor, I think that's exactly why

20    Mr. Kim in his letter was very careful.  It's the first

21    point he makes.  He says, "I want to be very clear.

22    This is a voluntary production."  That's his word, even

23    though he's attaching a subpoena or a subpoena is coming

24    out a couple days before.  Mr. Kline -- not this

25    Mr. Kline but another Mr. Kline -- sends out the
```

**EXHIBIT A**
**23**
**EXHIBIT B**
**50**

ORAL ARGUMENT - 2/7/2012

Page 21

```
 1    subpoena.  Mr. Kim sends a letter a few days later,

 2    "Your production is voluntary."  He confirms that:

 3    "You wish to produce these documents."  And the first

 4    thing he asks them to confirm -- and Mr. Kendall doesn't

 5    dispute it in his letter seven days later -- "You have

 6    obtained all of the relevant consents."

 7              Now, did Mr. Kim require them to have an

 8    affidavit under oath, to have a plea colloquy in the

 9    same way you would in a criminal case?

10              No.  But I don't think there's any scintilla of

11    evidence here that the client consents were not

12    obtained.  Otherwise, I doubt that the Mr. Kendall was

13    misrepresenting that; I doubt that Mr. Toberoff was

14    misrepresenting that he had obtained those consents.

15    There's not a -- there's not a scintilla of evidence,

16    your Honor, that the clients had not given those

17    consents.  And to the -- to the exact contrary, Mr. Kim

18    was very careful and said, "Please confirm for me.  This

19    memorializes our understanding.  You have obtained their

20    consents."

21              And Mr. Kendall didn't come back and say, "No,

22    no, no, no.  The reason I'm here is I'm representing

23    Toberoff individually.  Toberoff represents the Siegels

24    separately.  And I only consent as to him.  We don't

25    consent as to the heirs and it's their attorney-client
```

ORAL ARGUMENT - 2/7/2012

Page 22

1    privilege to waive."  There's no record of that.

2        JUDGE KOZINSKI:  Well, all these are fair inferences

3    if the lawyer can do that.  I'm just -- one thing with

4    authority here is that the lawyer can do that, can

5    represent that the client waived without -- without an

6    actual statement from the client.

7        MATTHEW T. KLINE, ESQ.:  I'm unaware --

8            I'm sorry to interrupt you, your Honor.

9            I'm unaware of any one of the cases that even

10   though that you had the lawyers negotiating these

11   agreements with the DOJ, any one of these cases that

12   say, "We're also going to require that the client

13   themselves submit some type of affidavit, that the

14   client themselves submits some sort of proof here."  I'm

15   unaware of any one of the cases saying, "We're going to

16   add that had extra hurdle, that extra bar to find

17   waiver."

18           Every one of these cases, I mean --

19       JUDGE KOZINSKI:  I understand.  But you're also not

20   aware of any case that says -- that discusses the issue

21   and says, "It's enough for the lawyer to say it.  You

22   don't need a statement from the client."

23       MATTHEW T. KLINE, ESQ.:  I'm not sitting here

24   before, your Honor -- I'd love to go back and read all

25   the cases again, but I'm just not aware of --

**EXHIBIT A**
**25**
**EXHIBIT B**
**52**

ORAL ARGUMENT - 2/7//2012

1        JUDGE KOZINSKI:  I know.  It's just --

2        MATTHEW T. KLINE, ESQ.:  Believe me, it's been

3    enjoyable to read them again.

4            (Laughter.)

5        MATTHEW T. KLINE, ESQ.:  Any time I get to read a

6    Judge Becker opinion, I'm a happy man.

7            But I think that that's not a fair --

8        JUDGE KOZINSKI:  Judge Becker doesn't talk about it

9    in his opinion.

10       MATTHEW T. KLINE, ESQ.:  No, he doesn't, but what he

11   talks about very clearly is that the company and the DOJ

12   had gone in to a District Court judge and gotten a

13   protective order, and he said, "That's not enough."

14           And the company said, "Well, hold on.  We're

15   under the compulsion of a subpoena."

16           And they said, "That's not enough."  He said

17   "That's not enough."

18           And, you know, I'm not aware -- I mean, it's a

19   long opinion.  We all know how he loves to write

20   footnotes.  There's no footnote in there saying, you

21   know, "And by the way, in future cases I'm going to

22   require that the client himself, you know, stand up and

23   swear under oath that he too has agreed to the

24   consent."

25       JUDGE KOZINSKI:  But there's not a footnote saying,

ORAL ARGUMENT - 2/7/2012

```
 1      "It's enough if the lawyer says it."

 2         MATTHEW T. KLINE, ESQ.:  That is correct, your

 3      Honor, but there's not any factual evidence in this

 4      record to draw any contrary inference to the one

 5      Judge Zarefsky drew here, which was that if you read

 6      his factual conclusions, and I think those are

 7      dispositive, and I don't want to get you the wrong page

 8      of the record, but in his opinion he said, "You made a

 9      choice.  This was voluntary," and he doesn't distinguish

10      between Toberoff and the other defendants in the case.

11      And I don't think that one can upset that factual

12      finding under --

13         JUDGE KOZINSKI:  You're saying that's a factual

14      finding about what the client did?

15         MATTHEW T. KLINE, ESQ.:  I do, I think because the

16      motion was filed against --

17         JUDGE KOZINSKI:  I'm sorry.  What exactly is the

18      finding?

19         MATTHEW T. KLINE, ESQ.:  He makes a finding over two

20      pages in his opinion.  I'll point you to the pages.

21         JUDGE KOZINSKI:  You're going to point to the page?

22         MATTHEW T. KLINE, ESQ.:  I do, your Honor.  It's

23      Pages 1482 to 1483 of the record.

24         JUDGE KOZINSKI:  Why don't you talk about lines, you

25      know, sort of like --
```

**EXHIBIT A**
**27**
**EXHIBIT B**
**54**

ORAL ARGUMENT - 2/7/2012

Page 25

1          MATTHEW T. KLINE, ESQ.:  Absolutely.

2          JUDGE KOZINSKI:  Where is it?

3          MATTHEW T. KLINE, ESQ.:  He starts off with a

4     discussion of the Bittaker case, maybe not the en banc

5     version of it, but the Bittaker case on page --

6          JUDGE KOZINSKI:  You don't have to give me a guided

7     tour.  Just tell me where the finding is.  I don't -- I

8     don't need a narrative.  Just give a page and a line.

9          MATTHEW T. KLINE, ESQ.:  The closest -- I'm sorry.

10     I would look at Page 1482 of the record --

11          JUDGE KOZINSKI:  Okay.

12          MATTHEW T. KLINE, ESQ.:  -- starting at Line 11 and

13     I would read through the next page to Line 2.

14          JUDGE KOZINSKI:  You have to read all of that to

15     find it?

16               Where is the finding that the client waived?

17          MATTHEW T. KLINE, ESQ.:  Your Honor, I'm not saying

18     that he made an express finding.

19          JUDGE KOZINSKI:  Implicitly.  I mean, just tell me

20     where -- where it is that we find it here.

21          MATTHEW T. KLINE, ESQ.:  He says --

22          JUDGE KOZINSKI:  Just give me explicitly.  You know,

23     how close does he come?

24          MATTHEW T. KLINE, ESQ.:  I'd be happy to.  I'm

25     sorry, your Honor.  The pressure of your questioning is

 1    throwing me off a tiny bit.  If you'd just give me one

 2    second, I promise I'll tell you.

 3         JUDGE KOZINSKI:  I'll say nothing.  You just --

 4         MATTHEW T. KLINE, ESQ.:  Thank you so much.

 5         JUDGE KOZINSKI:  You just read and find it.

 6         MATTHEW T. KLINE, ESQ.:  Okay.  He says in Line 15,

 7    "Express waiver" --

 8         JUDGE KOZINSKI:  It does?

 9         MATTHEW T. KLINE, ESQ.:  That's -- I'm going to --

10    there's two parts to it.  There's actually a syllogism

11    here that I want to walk you through, if that's okay.

12         JUDGE KOZINSKI:  Sure.

13         MATTHEW T. KLINE, ESQ.:  He says, "Express waiver

14    result from voluntary actions" --

15         JUDGE KOZINSKI:  Okay.  Line 15 --

16         MATTHEW T. KLINE, ESQ.:  Page 1482, your Honor.

17         JUDGE KOZINSKI:  There's a sentence there that says

18    "The Ninth circuit has analyzed."

19         MATTHEW T. KLINE, ESQ.:  That's 14--

20         JUDGE KOZINSKI:  "Essentially" --

21         JUDGE O'SCANNLAIN:  That's on 14.

22         JUDGE SMITH:  It says at 15.

23         JUDGE KOZINSKI:  So you're looking at the sentence

24    that starts "Essentially"?

25         MATTHEW T. KLINE, ESQ.:  Yes, your Honor.

**EXHIBIT A**
**29**
**EXHIBIT B**
**56**

ORAL ARGUMENT - 2/7/2012

Page 27

```
 1          JUDGE KOZINSKI:  Okay.  You started reading in the
 2     middle of the sentence.
 3          MATTHEW T. KLINE, ESQ.:  I apologize.
 4          JUDGE KOZINSKI:  Okay.  I was just looking for the
 5     start.  That's fine.
 6          MATTHEW T. KLINE, ESQ.:  "Essentially express waiver
 7     results from voluntary actions by the attorney or
 8     client."  So that's the legal --
 9          JUDGE KOZINSKI:  He is wrong on that.  It is not "or
10     client."  It has to be the client.  The lawyer himself
11     cannot waive.
12              Isn't he simply wrong when he says "attorney or
13     client"?
14              "Attorney or client" means either the attorney
15     alone or the client alone.
16          MATTHEW T. KLINE, ESQ.:  I don't think that's fair,
17     your Honor.  I think that attorneys all the time act as
18     agents for their clients.
19          JUDGE KOZINSKI:  I'm asking you a question.
20              Is -- if he had just said "attorney" and just
21     not "client," he would be wrong on that?
22          MATTHEW T. KLINE, ESQ.:  I disagree because I think
23     attorneys act for agents for clients all the time and
24     are able to make representations for those clients.
25     Attorneys sign settlement agreements for clients all the
```

**EXHIBIT A**
**30**
**EXHIBIT B**
**57**

ORAL ARGUMENT - 2/7/2012

Page 28

```
1    time.  Attorneys sign protective orders on behalf of

2    their clients.  It happens all the time.  Attorneys act

3    as agents and representatives.

4            I'm standing here not in my own capacity as an

5    attorney.  I'm standing here representing my client and

6    I'm telling what you their positions are.  And in the

7    course of litigation I am asked all the time, "Do you

8    concede this point?"  "Yes, I do."  "Does DC Comics

9    stipulate to this fact?"  "Yes, it does."

10    JUDGE KOZINSKI:  Well, there's lots of stuff --

11    there's lots of stuff that lawyers can do without

12    obtaining the lawyer -- the client's consent.

13    MATTHEW T. KLINE, ESQ.:  Correct.

14    JUDGE KOZINSKI:  There's lots of stuff.  Okay.

15            Waiving attorney-client privilege is not one of

16    them.  If the lawyer can do it at all without an actual

17    statement from a client is something that he has to act

18    on behalf of the client.

19    MATTHEW T. KLINE, ESQ.:  I agree with you.

20    JUDGE KOZINSKI:  It has to be the client's waiver

21    not the lawyer's waiver.

22    MATTHEW T. KLINE, ESQ.:  I agree with you.  The --

23    JUDGE KOZINSKI:  So far as this suggested the

24    attorney can do it on his own, it's wrong.

25    MATTHEW T. KLINE, ESQ.:  I don't think it suggested
```

ORAL ARGUMENT - 2/7/2012

Page 29

```
 1    he can do it on his own.  I think it assumes, as did

 2    Mr. Kim -- and the District Court had Mr. Kim's letter

 3    in front of him.  It was one of those crucial pieces of

 4    evidence here -- he can make the assumption, as I think

 5    any reasonable person could, when Mr. Kim says, "You

 6    have represented to me you obtained this consent."

 7         JUDGE KOZINSKI:  So if we read this, we should read

 8    this, "Express waiver results from voluntary action of

 9    the attorney on behalf of the client" --

10         MATTHEW T. KLINE, ESQ.:  Correct.

11         JUDGE KOZINSKI:  -- "or the client himself."

12         MATTHEW T. KLINE, ESQ.:  Correct.

13         JUDGE KOZINSKI:  That's really what --

14         MATTHEW T. KLINE, ESQ.:  Correct.  If an attorney --

15         JUDGE KOZINSKI:  Go ahead.

16              And where does he find that?

17         MATTHEW T. KLINE, ESQ.:  He finds in the next

18    paragraph --

19         JUDGE KOZINSKI:  I'm sorry.  Are you done with that

20    sentence?

21         MATTHEW T. KLINE, ESQ.:  I am, your Honor.

22         JUDGE KOZINSKI:  Okay.

23         MATTHEW T. KLINE, ESQ.:  He contrasts that with

24    limited waiver in that paragraph.

25         JUDGE KOZINSKI:  Okay.  Keep going.
```

**EXHIBIT A**
**32**
**EXHIBIT B**
**59**

ORAL ARGUMENT - 2/7/2012

Page 30

```
 1            Then where does he actually find they waived?
 2        MATTHEW T. KLINE, ESQ.:  I want to start at par- --
 3    at Line 23, if that's okay.
 4        JUDGE KOZINSKI:  Sure.
 5        MATTHEW T. KLINE, ESQ.:  "The closest the defendants
 6    come to fitting within this fact pattern" -- he's
 7    talking about involuntary waivers or limited waivers --
 8    "is that they responded to a Grand Jury subpoena.
 9    While a Grand Jury subpoena is in fact an order,
10    nevertheless, it did not and could not compel the
11    production of properly privileged material.  Defendants
12    could have responded to the subpoena by standing on the
13    privilege.  The Government then would have the choice of
14    whether to move to compel, and if it had successfully
15    moved to compel, the defendants would have a stronger
16    argument that they had not expressly waived the
17    privilege."
18            Now, he equates "express" with "voluntary."
19    That's why I started with that sentence where I read in
20    the middle of that.  And I apologize for starting in the
21    middle of the sentence.  But what he's saying here is,
22    "You made a voluntary waiver."  The subpoen- --
23    subpoenas, yes, they are, come with the force of a court
24    order.  So do all sorts of discovery responses.  But you
25    are permitted to stand on your objections, as they were
```

 1    here, as they were invited to here by the subpoena.

 2            And Mr. Kim, remember, they get the subpoena --

 3        JUDGE KOZINSKI:  Just so I understand, the lines

 4    you've read, what you would like us to read them, and

 5    it's maybe a fair reading.  I just want to understand

 6    it.

 7        MATTHEW T. KLINE, ESQ.:  Can I get some water as you

 8    ask?  Is that okay?

 9        JUDGE KOZINSKI:  Sure, if you can listen while

10    getting water.

11        MATTHEW T. KLINE, ESQ.:  I can.  I'm sorry.

12        JUDGE KOZINSKI:  But what you want us to read that

13    as being a finding -- an implicit finding, albeit that's

14    a finding that the things that the lawyer did here were

15    with express consent of the client?

16        MATTHEW T. KLINE, ESQ.:  I absolutely do, your

17    Honor.  And I think when Mr. Kim asked Mr. Kendall, as a

18    former AUSA himself and one of the finest lawyers in

19    town, when he asks him, "The first condition of this

20    agreement that we're entering into is, one, that you're

21    voluntarily producing these documents, and, two, all

22    proper consents have been obtained," I think it's

23    impossible to reach any contrary finding.

24            Now, if it's later revealed that the -- that

25    the clients themselves -- and no evidence of this has

```
 1    emerged -- that they find some other lawyer, and they

 2    say, "No, no, no, no.  Toberoff never disclosed it to

 3    us.  He never got our consents," well, then that's going

 4    to have to be hashed out in some action against him.

 5    But here all the evidence is that they obtained this

 6    consent.  And Mr. Kim, it's the first condition of this

 7    agreement that he's talking about.  He says, "Represent

 8    to me that you've got all the appropriate consents and

 9    assents," and he doesn't say it to Mr. Kendall.  He

10    says, "Tell me that Toberoff got them," and the only

11    people that he would have -- I mean, the only people

12    that he could possibly --

13        JUDGE KOZINSKI:  I understand the chain of logic.

14    But these are the lines that you say are the finding

15    that we need to refer to.  I mean, I just want to

16    understand.

17        MATTHEW T. KLINE, ESQ.:  I absolutely think those

18    are the lines.

19        JUDGE KOZINSKI:  Okay.

20            You're way over your time.  Thank you.

21        MATTHEW T. KLINE, ESQ.:  Thank you for indulging me,

22    your Honor.

23        RICHARD B. KENDALL, ESQ.:  Your Honor, the

24    appropriate time for us to have sought a protective

25    order would have been in the event the Grand Jury
```

ORAL ARGUMENT - 2/7/2012

1    returned an indictment.  It was premature to do it while

2    we were under Grand Jury secrecy.  There was no need to

3    do it at that time.  The Grand Jury secrecy was a

4    complete protection.

5          Secondly, on the Mohawk point, there is a

6    post-Mohawk decision in this circuit, the Perry

7    case --

8        JUDGE KOZINSKI:  Why is Grand Jury secrecy enough?

9        RICHARD B. KENDALL, ESQ.:  I'm sorry.

10        JUDGE KOZINSKI:  Why do you claim that Grand Jury

11    secrecy is enough?

12        RICHARD B. KENDALL, ESQ.:  In the same way that

13    Judge Burns' order in the Bittaker case protected

14    against disclosure of the documents in any other

15    proceeding, not only does the Grand Jury secrecy rule do

16    that, it also protects against any disclosure to any

17    persons other than the Grand Jury, Government agents --

18        JUDGE KOZINSKI:  Well, but it is a disclosure to the

19    Grand Jury.  The Grand Jury is not a part of the

20    privilege.  It is a third-party.  So if you turn them

21    over without a resolution of the -- of the privilege

22    claim, why haven't you waived it?

23          I mean, these are people who are not parties to

24    the -- sure, they won't tell anybody else, but you are

25    in fact disclosing it to third parties.

**EXHIBIT A**
**36**
**EXHIBIT B**
**63**

ORAL ARGUMENT - 2/7/2012

Page 34

| 1 | RICHARD B. KENDALL, ESQ.: Correct. And I think |
| 2 | that argument proves too much, however, your Honor, and |
| 3 | the reason is, when you disclose to the District Court |
| 4 | in the Bittaker case and to the jurors and in fact in |
| 5 | open court in that case or you disclose through a court |
| 6 | for in camera review, you're also disclosing to third |
| 7 | parties, and ultimately -- |
| 8 | JUDGE KOZINSKI: No. The difference is at that |
| 9 | point you've asserted the privilege and you turn it over |
| 10 | subject to an assertion of a privilege. |
| 11 | RICHARD B. KENDALL, ESQ.: Well, let's -- |
| 12 | JUDGE KOZINSKI: In this case you have not. You've |
| 13 | turned -- I mean, there was a compulsion to turn it |
| 14 | over. You know, you -- you -- you don't turn it over |
| 15 | and say, "Well, we asserted the privilege. We don't |
| 16 | want you to look at it." |
| 17 | RICHARD B. KENDALL, ESQ.: Well, your Honor, the |
| 18 | letters are replete with our assertions of the |
| 19 | privilege. I did everything I could short of refusing |
| 20 | to disclose the corpus delicti of the crime. I asserted |
| 21 | the privilege every which way before the Grand Jury in |
| 22 | the form of seeking Grand Jury secrecy from the |
| 23 | Government. My letters over and over assert the |
| 24 | privilege and seek confidentiality and assert the |
| 25 | common-interest privilege as well. So you cannot |

ORAL ARGUMENT - 2/7/2012

Page 35

```
 1    possibly say that we did not assert the privilege.  Plus

 2    this entire crime was the theft of privileged

 3    documents.  That's what this whole thing is about.

 4        JUDGE KOZINSKI:  You did not comply with the

 5    procedures that the subpoena provides for, say, a

 6    privilege which to make a -- an index and actually

 7    withhold the --

 8        RICHARD B. KENDALL, ESQ.:  That's -- that's true,

 9    your Honor.

10            But why did we not do that?

11            If we had done that, we would not have been

12    able to provide --

13        JUDGE KOZINSKI:  Well, let me ask you the prior

14    question.

15            Why do I care why you haven't done it?

16        RICHARD B. KENDALL, ESQ.:  The reason you care --

17        JUDGE KOZINSKI:  The point is, you didn't do it.

18        RICHARD B. KENDALL, ESQ.:  The reason you care, your

19    Honor, is that it would be a perversion of policy to say

20    that when the object of the crime is the theft of

21    privileged documents to turn them over to the litigation

22    adversary that the only way the crime can be

23    investigated is to let the criminal and the recipient of

24    the property achieve their objectives.  That -- that

25    is --
```

ORAL ARGUMENT - 2/7/2012

Page 36

```
 1        JUDGE KOZINSKI:  I have no idea what you just said.

 2           Why is what is making an index and claiming a

 3     privilege saying, "Look.  These are the index of the

 4     documents and these are the ones that are privileged,"

 5     how does that defeat the --

 6        RICHARD B. KENDALL, ESQ.:  Because the purpose of a

 7     privilege log is that you don't give the documents that

 8     are logged.

 9           There -- there was no need to individually log

10     the documents because they had already been asserted in

11     toto to the U.S. Attorney as privileged documents.

12     There was no question between us and the United States

13     Attorney and the Grand Jury as to whether the documents

14     were privileged.  There were two letters to that

15     effect.

16        JUDGE KOZINSKI:  Okay.  Thank you.

17           The case as argued will stand submitted.

18                        ---0---

19

20

21

22

23

24

25
```

**EXHIBIT A
39
EXHIBIT B
66**

ORAL ARGUMENT - 2/7/2012

Page 37

```
 1                C E R T I F I C A T E

 2

 3          I, Melanie M. Faulconer, certify

 4     that the foregoing transcript is a true

 5     record of said proceedings, that I am not

 6     connected by blood or marriage with any of

 7     the parties herein, nor interested directly

 8     or indirectly in the matter in controversy,

 9     nor am I in the employ of counsel.

10          I have hereunto subscribed my name

11     this 9th day of February, 2012.

12

13                      Autumn Berry on behalf of Melanie Faulconer

14                      MELANIE M. FAULCONER

15

16

17

18

19

20

21

22

23

24

25
```

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277          www.merrillcorp.com/law

**EXHIBIT A**
**40**
**EXHIBIT B**
**67**

# EXHIBIT B

Gmail - Grand Jury subpoena dated Sept 13, 2010                    https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...

    Marc Toberoff <marc.toberoff@gmail.com>

## Grand Jury subpoena dated Sept 13, 2010

**Richard Kendall** <rkendall@kbkfirm.com>                    Thu, Oct 21, 2010 at 1:14 PM
To: "Brian.Klein@usdoj.gov" <Brian.Klein@usdoj.gov>
Cc: Marc Toberoff <mtoberoff@ipwla.com>

Re: Documents Delivered to Warner Brothers with "SUPERMAN - MARC TOBEROFF TIMELINE"

Dear Mr. Klein:

You have requested that I confirm that Mr. Toberoff's clients have authorized Mr. Toberoff's disclosure to the United States Attorney's Office of the documents enclosed with my letter to you dated September 27, 2010, pursuant to the Grand Jury Subpoena dated September 13, 2010 and the terms of my September 27, 2010 letter. I so confirm.

Kind regards,

Richard B. Kendall

**《 Kendall Brill Klieger**

**Richard B. Kendall**

Kendall Brill & Klieger LLP

10100 Santa Monica Boulevard, Suite 1725

Los Angeles, CA 90067

Kendall Brill & Klieger LLP

Direct:  (310) 272-7900

Main:  (310) 556-2700

Fax:  (310) 272-7936

Email:  rkendall@kbkfirm.com

Web:  www.kbkfirm.com

**Privileged & Confidential**
**All Rights Reserved**

                                                                    SD 00916

EXHIBIT B
41
EXHIBIT B
69

imail - Grand Jury subpoena dated Sept 13, 2010                    https://mail.google.com/mail/u/0/?ui=2&ik=03edd0e16c&view=pt&...

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

Privileged & Confidential
All Rights Reserved

SD 00917

EXHIBIT B
42
EXHIBIT B
70

9th Circuit Case Number(s) | 11-71844

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   May 15, 2012   .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   /s/ Jason H. Tokoro

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

**EXHIBIT B**
**71**