1  DANIEL M. PETROCELLI (S.B. #097802)
    dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' NOTICE OF MOTION AND MOTION FOR PARTIAL REVIEW, PURSUANT TO FED. R. CIV. P. 72(A) AND L.R. 72-2.1, OF MAGISTRATE'S JUNE 21, 2012, ORDER**<br><br>DECLARATION OF JASON H. TOKORO AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**:　　Hon. Otis D. Wright II<br>**Magistrate**:　Hon. Ralph Zarefsky<br><br>**Hearing Date**:　Aug. 6, 2012<br>**Hearing Time**:　1:30 p.m.<br>**Courtroom**:　　11 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND .................................................... 2

III. TOBEROFF'S NOVEMBER 2001 EMAIL SHOULD BE PRODUCED ...................................................................................................... 5

IV. CONCLUSION ............................................................................................ 12

# Table of Authorities

## CASES

*Ashelman v. Wawrzaszek*,
   111 F.3d 674 (9th Cir. 1997) .................................................................................. 11

*Bhan v. NME Hosps., Inc.*,
   929 F.2d 1404 (9th Cir. 1991) .............................................................................. 5, 6

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,
   408 F.3d 1142 (9th Cir. 2005) .............................................................................. 1, 11

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*,
   508 U.S. 602 (1993) .................................................................................................. 6

*Davis v. Team Elec. Co.*,
   520 F.3d 1080 (9th Cir. 2008) ................................................................................ 11

*Gapen v. Bobby*,
   2011 WL 5166566 (S.D. Ohio Oct. 31, 2011) ................................................... 6, 11

*Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*,
   2010 U.S. Dist. LEXIS 57880 (S.D. Cal. June 11, 2010) ..................................... 11

*In re Pacific Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ............................................................................. 2, 8

*U.S v. McCombs*,
   30 F.3d 310 (2d Cir. 1994) .................................................................................. 6, 11

*Vieste, LLC v. Hill Redwood Dev.*,
   2010 U.S. Dist. LEXIS 126607 (N.D. Cal. Nov. 18, 2010) ...................... 1, 11, 12

## STATUTES

28 U.S.C. § 636(b)(1)(A) ................................................................................................ 5

## OTHER AUTHORITIES

FED. R. CIV. P. 72(a) ....................................................................................................... 5

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 6, 2012, at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 312 North Spring Street, Los Angeles, California in Courtroom 11, plaintiff DC Comics will and hereby does move the Court for partial review of one aspect of the Magistrate Judge's June 21, 2012, Order Regarding Documents Reviewed *In Camera*.

This motion is made pursuant to paragraph 4 of this Court's Standing Order, Docket No. 18, Central District Local Rule 72-2.1, and Federal Rule of Civil Procedure 72(a), on the ground that the Magistrate's ruling denying DC's motion to compel the production of a single communication from Marc Toberoff to Michael Siegel is clearly erroneous. Pursuant to paragraph 5(b) of this Court's Standing Order Regarding Newly Assigned Cases and Central District Local Rule 7-3, the parties attempted unsuccessfully to resolve their disputes and therefore DC respectfully seeks the assistance of the Court.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently-filed Declaration of Jason H. Tokoro and exhibits in support thereof; any additional briefing that may be filed; all exhibits, files, and records on file in this action; matters of which judicial notice may be taken; and such additional submissions and argument as may be presented at or before the hearing on this motion.

Dated:   July 5, 2012                         Respectfully submitted,

                                                      O'MELVENY & MYERS LLP

                                                      By:  /s/ Daniel M. Petrocelli
                                                      Daniel M. Petrocelli
                                                      Attorneys for Plaintiff DC Comics

## I. INTRODUCTION

On June 21, 2012, the Magistrate Judge ordered defendants to produce a critically important document they had long-suppressed—a letter from defendant Laura Siegel Larson to her half-brother Michael Siegel, which defendants falsely claimed was privileged, but in fact, refutes a key factual position about the so-called "billionaire investor" that defendants have taken before this Court.  The Magistrate also ordered defendants to produce redacted copies of bills from Michael's lawyers, which help establish the timeline of defendant Toberoff's acts of interference.  But in a mistaken ruling, the Magistrate held that Toberoff had not waived privilege over a November 2001 email he sent Michael Siegel—an email, which refutes a key factual position Toberoff takes in this case, and which Toberoff failed to log on any privilege log *for over five years*, thereby waiving privilege.

Toberoff's November 2001 email is the sole document addressed in this motion for review.  While Toberoff told the Magistrate he did not have his own copy of the email in a now-defunct email account, what Toberoff had no answer for, and what the Magistrate did not address, was that Michael's lawyers confirmed that they gave Toberoff a copy of the email six years ago—in 2006—in the related *Siegel* case.  Both in *Siegel* and this case Toberoff demanded that he be the one to produce all of Michael Siegel's documents.  And *never once*, until late 2011, did he produce his November 2001 email or list it on any log.

The law is clear.  A five-year delay in logging a privileged document— especially when DC repeatedly challenged Toberoff's logs in this case and *Siegel*— constitutes a waiver.  *E.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (waiver given five-month delay in producing privilege logs); *Vieste, LLC v. Hill Redwood Dev.*, 2010 U.S. Dist. LEXIS 126607, at *27-29 (N.D. Cal. Nov. 18, 2010) (same; six months); *infra* at 11-12.

And there is no reason to believe Toberoff's self-serving claim that Michael's lawyers did not give him the November 2001 email six years ago.  The

1      DC'S MOT. FOR PARTIAL REVIEW OF MAGISTRATE'S ORDER

| | |
|---|---|
| 1 | Ninth Circuit has rightly questioned Toberoff's "ethical" and "professional" |
| 2 | conduct, *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012), and |
| 3 | called him out for refusing to produce non-privilege documents, *compare id.* at |
| 4 | 1129 ("most of the[ Timeline] documents are not covered by attorney-client |
| 5 | privilege because they do not represent communications between a lawyer and his |
| 6 | client for the purpose of obtaining legal advice. *Cf.* [*U.S. v.*] *Ruehle*, 583 F.3d |
| 7 | [600], 608-09 n.8 [(9th Cir.2009)] (rejecting a presumption of privilege even when |
| 8 | a communication involves a lawyer), *with id.* at 1125 ("Considering every |
| 9 | communication he had with the Heirs to be privileged—regardless of whether the |
| 10 | communication was in his capacity as a business advisor or an attorney—Toberoff |
| 11 | resisted all such [discovery]."). Moreover, as this Court's orders, the Magistrate's |
| 12 | orders, and an Ohio federal court's orders all reveal, Toberoff has repeatedly |
| 13 | misrepresented to DC and the courts whether certain documents exist in his files |
| 14 | and whether their contents are as he described them. *E.g.*, Docket Nos. 161-5 at 29- |
| 15 | 31; 160 at 30-38; 171 at 3-4; 209 at 12; 225 at 13-17; 230 at 1-10; 253 at 1-9; 267-1 |
| 16 | at 6-11; 274 at 1-8; 275 at 1-3; 316 at 1-3, 6-20; 317 at 1-5; 329 at 1-5; 332 at 1-9; |
| 17 | 336 at 1; 394 at 14-17; 427 at 5-7; 439 at 1-2; Decl. of Jason Tokoro Ex. A (July 2, |
| 18 | 2012, letter). As shown below, DC's motion for review should be granted. |

**II.     RELEVANT FACTUAL BACKGROUND**

20      1. In SLAPP briefing filed before this Court in 2010—and in an effort to undercut DC's tort claims—Toberoff argued he had "no contact with *any member of the Siegel family*" until late summer "2002." Docket No. 145-1 at 23-24 (emphasis added). DC challenged this factual claim in discovery and sought evidence of Toberoff's communications with each member of the Siegel family, including Michael Siegel. Docket Nos. 160 at 37-38; 253 at 6-9; 267-1; 316 at 14-20. On repeated occasions in this case and *Siegel*, DC insisted that Toberoff go through all of Michael's files—which Toberoff obtained from Michael's lawyers when he died, Docket No. 316-3 at 10-11—and confirm that all Michael Siegel-

1  related communications be produced or logged. *E.g.,* Docket Nos. 160 at 37-38;
2  253 at 6-9; 267-1 at 8-11; 316 at 14-20.
3        DC also obtained orders in the Ohio district court, from this Court, and from
4  Magistrate Judge Zarefsky, compelling Toberoff to produce Michael Siegel-related
5  communications that Toberoff initially said did not exist, falsely said were
6  privileged, and that he hid behind false entries on privilege logs. For example:

7  - The Ohio district court ordered Toberoff to produce 15 communications
8    between himself and Michael's lawyer, which Toberoff falsely claimed
9    were subject to common-interest privilege, but were, in fact, business
10   negotiations, in which Toberoff tried to buy Michael's rights. Docket
11   Nos. 160 at 34-36; 161-5 at 29-31; 394 at 15-16.
12 - Likewise, Magistrate Judge Zarefsky ordered Toberoff to produce a May
13   2003 letter from Michael to Laura, Docket No. 209 at 12, which Toberoff
14   initially refused to confirm existed, Docket No. 162-11 at 584 ¶ 10, but
15   did exist, refuted key factual positions Toberoff had taken about the
16   "billionaire investor" he used to defraud the Siegels, and revealed other
17   non-produced documents, Docket Nos. 225 at 13-14; 253 at 1-5.
18 - And this Court ordered Toberoff to produce a July 2003 letter from Laura
19   to Michael, which again Toberoff falsely suggested did not exist (even
20   though it was disclosed in the Toberoff Timeline, Docket Nos. 160 at 71-
21   72; 336 at 1), and then falsely claimed was privileged, even though it was
22   nowhere disclosed on his privilege logs—and was hidden behind other
23   entries, Docket No. 329 at 1-2. That explosive document showed that
24   Larson's former counsel, Kevin Marks, told Toberoff that Larson had a
25   "deal" with DC in 2001 and that Toberoff interfered with it. Docket No.
26   357-4 at 272-76. These tortious acts were confirmed by Marks' 2002
27   memo to Larson, which the Ninth Circuit just ordered Toberoff to
28   produce. Docket No. 427-3 at 333-34; Tokoro Decl. Ex. C at 56-57.

2. In late 2011—and after months of delay and wrangling—DC was finally able to force defendants to produce new privilege logs for Michael's lawyer, Don Bulson. Docket No. 394 at 3-5. These logs, and Bulson's billing records that DC just obtained from Toberoff pursuant to court order, contained stunning revelations.

First, a log entry from November 2001 (like the Bulson billing entry DC just obtained), showed that Toberoff misled the courts when he claimed he had "no contact with any member of the Siegel family" until late summer "2002." Docket No. 145-1 at 23-24. The Bulson log and billing entry showed that Toberoff emailed Michael Siegel in November *2001*—a year earlier than had been represented—and had a discussion with Bulson then as well.

Log Entry document Nov. 17, 2001 Email from Toberoff to Siegel:

| Log # | Date | Identity of Author(s) | Identity of Recipient(s) | Type | Privilege | Location |
|---|---|---|---|---|---|---|
| 339 | 11/17/2001 | Atty Marc Toberoff | Michael Siegel | E-mail | Attorney/Client | Renner Otto |

Docket No. 362-2 at 309 (Entry 339).

Bulson Billing record re Nov. 27, 2001 telephone conference with Toberoff:



Tokoro Decl. Ex. B at 5.

Second, the Bulson privilege log confirmed that defendants possessed the November 2002 letter from Laura to Michael. Docket No. 362-2 at 311 (Entry 399). DC had months earlier moved to compel production of the November 2002 letter, but defendants defeated that motion, falsely claiming they had no copy of it. Docket Nos. 394 at 14-17; 427 at 5-7.

3. DC asked defendants to produce Toberoff's November 2001 email to Michael and Laura's November 2002 letter to Michael, but Toberoff refused claiming both were privileged, and that defendants had not waived privilege by

failing to list either document on their logs for five years. Docket No. 362-2 at 319-25. Toberoff claimed the two documents were not among hard-copy documents that Bulson provided him in 2006, and he only obtained them in 2011, when he obtained an electronic copy of Bulson's files. *Id.* at 323-24. He also claimed that, even though he sent the November 2001 email to Michael himself, he no longer had a copy of the email because he did not maintain a paper copy and that email account was now defunct. Docket No. 412 at 1.

Bulson's law firm, Renner Otto, disputed Toberoff's former claim, making clear that the paper file they sent Toberoff in 2006 should have had the same contents as the electronic file that they sent in 2011.

> I appreciate you making us aware of Mr. Toberoff's 5/7/12 filing. I've spoken to Don Bulson and consulted the "Renner Otto [electronic] archive" referenced in [Toberoff's] brief. To the best of my knowledge, *the "Renner Otto archive" was the product of scanning Mr. Siegel's paper files* before they were forwarded to the attorneys for Mr. Siegel's estate, *and the documents in the "Renner Otto archive" and the paper file should be the same*.

Docket No. 427-2 at 4 (Renner Otto partner J. Ryland) (emphasis added).

4. The Magistrate Judge ordered Toberoff to produce Larson's November 2002 letter and Toberoff's November 2001 email for *in camera* review. Docket No. 439 at 1-2. Upon review, he rejected Toberoff's claim that Larson's November 2002 letter was privileged. He further held, however, that Toberoff's email to Michael was privileged, and that the privilege had not been waived:

> The Court sees no waiver of the privilege. The print-out comes from Mr. Siegel's files after those were sent to counsel for Defendants. The Court accepts the representation that the email was from a discontinued email account and thus not readily available for production earlier.

Docket No. 451 at 1-2, 6. Respectfully, this waiver analysis was clear error.

### III. TOBEROFF'S NOVEMBER 2001 EMAIL SHOULD BE PRODUCED.

A magistrate discovery order can be reversed if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *Bhan v. NME*

1  *Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). The clearly erroneous standard, which applies to the magistrate's findings of fact, is "significantly deferential, requiring a definite and firm conviction that a mistake [was] committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993).

The clear-error test is met when the record facts show that a finding of fact was mistaken. *E.g.*, *U.S v. McCombs*, 30 F.3d 310, 326-27 (2d Cir. 1994) (where magistrate judge held that parties had taken property subject to mortgage, but terms of conveyance showed that parties assumed and agreed to pay mortgage, magistrate judge's factual finding was clearly erroneous); *Gapen v. Bobby*, 2011 WL 5166566, at *3 (S.D. Ohio Oct. 31, 2011) (magistrate judge clearly erred when it concluded juror had not researched what Bible said about death penalty and shared research with other jurors, where paragraph of record cited by magistrate stated that juror shared his views and research about death penalty); *infra* at 11 (collecting cases).

1. The Magistrate Judge here committed clear error in finding that defendants did not have access to Toberoff's November 2001 email to Michael until they received Bulson's electronic files in 2011. Docket No. 451 at 1-2. Bulson's partner confirmed that the electronic file was created by scanning the paper file sent to Toberoff in 2006, *and thus should contain the same documents as the paper file*. Docket No. 427-2 at 4. The Magistrate Judge's ruling never grapples with this fact, and instead relies on Toberoff's naked assurance—without a declaration—that the November 2001 email was not included in the paper file.

Toberoff's representations cannot be believed. When Michael died in 2006, Laura—as the sole beneficiary of his estate—requested that Bulson send her his files, which he did. Docket Nos. 316-3 at 10-11; 395-1 at 56. When DC sought discovery from those files, Toberoff insisted that he alone, and not Bulson, conduct the document review and production. *Id.*; Docket No. 161-4 at 25-28. As the Ohio district court held—after reviewing 15 suspect documents in question—Toberoff improperly withheld all 15 documents on false grounds of privilege. *Supra* at 3.

6      DC COMICS' MOT. FOR REVIEW OF MAGISTRATE'S ORDER

1    As this Court and Magistrate also found, Toberoff wrongly withheld other Michael-
2    related documents, and DC showed he did not list them on his logs either. *Id.*
3        Toberoff also never logged his November 2001 email to Michael—either in
4    the *Siegel* case, or in initial logs he prepared for himself and the other defendants in
5    this case. *E.g.,* Docket No. 162-6 at 419; 163-17 at 883. It was not until late 2011,
6    after DC pressed defendants to produce Toberoff's communications with the Siegel
7    family and threatened to seek a court order obtaining a copy of Bulson's electronic
8    files, that Toberoff finally logged his November 2001 email to Michael. Docket
9    No. 362-2 at 295-318; 395-1 at 24-58.
10        2. It is incredible for Toberoff to claim that his November 2001 email was
11   somehow not among the paper files he obtained in 2006. Again, the electronic file
12   was created by scanning the paper file. Docket No. 427-2 at 4 ("the 'Renner Otto
13   [electronic] archive' was the product of scanning Mr. Siegel's paper files before
14   they were forwarded to the attorneys for Mr. Siegel's estate, and the documents in
15   the 'Renner Otto [electronic] archive' and the paper file should be the same").
16       Toberoff would have the Court believe his November 2001 email was
17   scanned, but the original paper copy of it was not sent to him. This makes no sense.
18   Like the November 2002 letter and other documents he likewise suppressed, the
19   November 2001 email is devastating to Toberoff's case, reveals his acts of
20   interference and fraud, and mysteriously, like those other documents, it just
21   happens to never appear on Toberoff's logs. *Supra* at 2-3; *infra* at 8-10. This
22   pattern of suppression is no mistake, and the latest cover story—the scanner
23   scanned the paper copy, but Toberoff did not get the paper copy it scanned—cannot
24   be believed. Renner Otto has no dog in this fight, and it confirmed that the
25   electronic file was simply a scan of the paper file they sent Toberoff in 2006.
26       Toberoff, in contrast, has every reason to deceive, and he repeatedly has been
27   shown to have misrepresented to DC and the courts the existence and substance of
28   documents damning to his position. *Supra* at 2-3. As two other examples show:

7                         DC COMICS' MOT. FOR REVIEW
                          OF MAGISTRATE'S ORDER

      a. Defendants' recent production of the Toberoff Timeline documents confirm Toberoff's pattern and practice of misrepresentation. *E.g.*:

- Entries 3158 and 3159 on Toberoff's privilege log identify an August 16, 2010, email chain between Toberoff and the U.S. Attorney's Office ("USAO"), *with no other recipients listed*. Docket No. 163-17 at 1038. Both entries assert a "Joint-Interest Privilege," *id.*, and for over a year the courts litigated Toberoff's bogus claim that he had a joint-interest with the USAO. The Ninth Circuit rejected this claim in May 2012, as had this Court, *Pacific Pictures*, 679 F.3d at 1129-30, and when Toberoff finally produced the August 16 emails they revealed that a third party—Hollywood agent Ari Emanuel—was copied on Toberoff's emails, Docket No. 427-11 at 1139-41. His inclusion on the emails eviscerated any claim of privilege, and showed that Toberoff had not only misrepresented key facts to the courts, but wasted their time litigating the issue.
- The Timeline documents likewise show that, contrary to Toberoff's claim in his SLAPP briefs that he represented Larson as a lawyer since the inception of his relationship with her in 2002, Docket No. 145-1, she and Toberoff were involved in contentious negotiations in October 2004 over a legal retainer agreement that had never been agreed to before. Docket Nos. 445-1 at 2-5; 427-4 at 409-16 (2004 draft agreement).

      b. Perhaps the worst example of Toberoff's acts of deception is Laura's November 2002 letter that the Magistrate Judge just ordered him to produce. DC's complaint alleges that, in inducing the Siegels to repudiate their agreement with DC, Toberoff misrepresented that "he had found a billionaire investor willing to purchase the Siegel Heirs' Superman rights [for] $15 million cash up front, plus generous royalty and 'back-end' rights…." Docket No. 49, FAC ¶ 78. In urging the Court to dismiss DC's complaint, Toberoff said DC's "billionaire investor" claim was a "mockery," "contrary to all evidence," "based entirely on the

8    DC COMICS' MOT. FOR REVIEW OF MAGISTRATE'S ORDER

1  untrustworthy, inadmissible Timeline," and that no "further discovery" would
2  establish the claim. Docket No. 196 at 1-5, 10. Toberoff also swore the only
3  "investor" he ever mentioned to Laura was Emanuel. *E.g.*, Docket No. 312 at 9.
4        Laura's November 2002 letter—which Toberoff first pretended did not exist,
5  then falsely asserted was privileged, *supra* at 3—confirms Toberoff told her about
6  the non-existent "billionaire investor." Tokoro Decl. Ex. A at 3-4. It also makes
7  clear that the "billionaire investor" was *not* Emanuel, and that Toberoff told Laura
8  the "billionaire investor" moved on, when Laura cut her ties with DC and made her
9  business deal with Toberoff and Emanuel, instead. *Id*. Laura's letter states: "My
10 mother and I have had extensive meetings with Toberoff and Emmanuel in the past
11 few weeks. We learned that due to the delays and the misinformation Kevin
12 [Marks] has given them that there was a deal with DC, the *billionaire investor who*
13 *was offering $15 million up front plus participation* thought it was a hopeless
14 situation and *invested his money elsewhere*." *Id*. (emphases added). These are
15 Laura's words—"billionaire investor"—that she used in a letter distinguishing
16 among Toberoff, Emanuel, and the billionaire investor as a third person. She says
17 it was the "billionaire investor" who made the $15 million offer, *not* Emanuel.
18       This letter verifies DC's claims, and it shows how defendants misrepresented
19 key facts in briefing and depositions. Here are three examples among many more:
20       • August 29, 2011, SLAPP Reply Filed Before This Court

> After extensive discovery, DC unsurprisingly has no admissible evidence to support the frivolous allegations in its Fifth Claim that, in August 2002, "Toberoff and his partner [Ari Emanuel, now head of the William Morris Endeavor Agency] [mis]represented to Marks that they had a wealthy or 'billionaire' investor who would pay the Siegels $15 million cash for their Superman rights … [and would produce] a new Superman movie." Opp. at 10; *see also* FAC ¶¶ 77-78. DC has long been aware that Mr. Emanuel was the investor. *See, e.g.*, Docket No. 196-2, Ex. H at 166:6-170:24 (testimony of Kevin Marks), Ex. E at 98:25-104:14 (testimony of Marc Toberoff).

28 Docket No. 312 at 9; *see also* Docket Nos. 99 at 2-3; 108 at 2-3.

- **April 24, 2012 SLAPP Appeal Filed Before Ninth Circuit**

  The sole [wrongful act alleged] in the Fifth Claim is that purportedly in August 2002, "Toberoff falsely misrepresent[ed] to the Siegel heirs that he had a billionaire investor ready to purchase their Superman rights" for $15 million and "falsely represent[ed] to the Siegels that he would help them produce a competing Superman motion picture." ER 1043 ¶185….

  This squarely contradicts the record evidence, and after two years of discovery DC has no evidence to support such allegations….

  As DC is aware, Emanuel, who made the $15 million offer, was the wealthy "investor." … As Marks testified, there was no mention of a "billionaire investor" or of producing a Superman movie. ER 164-65 ¶¶ 2-5.

Appeal No. 11-56934, Docket No. 8 at 53-54.

- **July 23, 2011 Deposition of Laura Siegel Larson In This Case**

  Q. [Michael Siegel's May 2003 letter to you] starts out "I really wish to discuss Marc Toberoff." And it says in the third sentence: "I told you when he first contacted me, he wanted to buy my share of the copyright. Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the billionaire invested elsewhere." Do you know where [Michael] got that information?
  A. I have no idea. …
  Q. *He's telling you that Marc Toberoff contacted him and said he had a mysterious billionaire.*
  A. *Yeah. Well, I don't know where that came from.*
  Q. Did you think your brother – your stepbrother was lying?
  A. I don't -- I don't know that he came up with the wording himself. You know, I mean it -- *I had never heard this referred to in any way other than in this letter, "mysterious billionaire." I don't know what that means.* …
  Q. <u>Mr. Toberoff had told you that he knew billionaire investors; correct?</u>
  A. <u>No, he never used that term. …</u>

Docket No. 305-24 at 1018:18-1020:4 (emphases added); *id.* at 1024:24-1025:12; *see also* Tokoro Decl. Ex. A (July 2, 2012 letter) (showing other examples).

3. These examples show how wildly irresponsible defendants have been in producing documents that undercut key factual claims they have made in briefs and depositions. The Magistrate Judge should not have accepted Toberoff's claim that

he did not possess a copy of his November 2001 email to Michael Siegel, when the Renner Otto firm directly disputed his claim.

This Court should find that Toberoff misrepresented when he first obtained a copy of his November 2001 email to Michael, and this Court clearly has the power and authority to do so on this motion for review. *E.g.*, *McCombs*, 30 F.3d at 326-27 (discussed *supra* at 6); *Gapen*, 2011 WL 5166566, at *3 (same); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1092 (9th Cir. 2008) (magistrate clearly erred when she concluded supervisor was a "co-worker with no managerial power" where record showed plaintiff "was put under [supervisor] to work" and supervisor "made [her] start picking up" her things at a certain time); *Ashelman v. Wawrzaszek*, 111 F.3d 674, 678 (9th Cir. 1997) (magistrate clearly erred in finding prison officials barred prisoner from resting and fasting on holy days when prisoner testified he had once asked to fast, but did not testify fast was prohibited by prison officials, and rabbi testified prisoner never complained to him he was forced to work on holiday).

4. If this Court concludes, as the Renner Otto firm confirmed, that Toberoff possessed in 2006 a copy of his November 2001 email, then Toberoff's failure to list the email on any of defendants' privilege logs for over five years constitutes a clear waiver of any claim of privilege. *E.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (waiver given five-month delay in producing privilege logs); *Vieste, LLC v. Hill Redwood Dev.*, 2010 U.S. Dist. LEXIS 126607, at *27-29 (N.D. Cal. Nov. 18, 2010) (same; six months); *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2010 U.S. Dist. LEXIS 57880, at *8-11 (S.D. Cal. June 11, 2010) (same; one year).

In *Vieste*, for example, defendants served plaintiffs with a privilege log in May 2010. 2010 U.S. Dist. LEXIS 126607, at *3. Plaintiffs challenged the log, and during a court-ordered meet-and-confer session in October 2010, defendants disclosed for the first time that they were withholding additional documents that had never been logged. *Id.* at *4-6. Finding that defendants' six-month delay in

1  logging the documents waived any claim of privilege, the court reasoned,
2  "[n]otwithstanding the evidence that Plaintiffs had been meeting and conferring
3  with Defendants regarding what Plaintiffs viewed as deficiencies in Defendants'
4  privilege log since at least July 2010, Defendants took four or more months to
5  disclose the documents they are withholding from Plaintiffs." *Id.* at \*27-28.

6  Here, DC has been pressing Toberoff to provide complete privilege logs for five years, and to review all of defendants' files, including the Renner Otto Michael Siegel files. *Supra* at 2-3. Toberoff never listed his November 2001 email until late 2011—*five years* after he obtained the paper copy of the Renner Otto files, and three months after obtaining the electronic copy of the files. As in *Vieste*, and many cases like it, Toberoff's logging of the November 2001 email was too little too late.

12 Indeed, Toberoff does not dispute that a five-year delay in logging the email waives whatever privileges might otherwise apply, nor could he, under the Ninth Circuit law set forth above. And, to be clear, the Magistrate Judge never held that such a delay would be permissible. Because of his erroneous factual finding, he did not reach that question.

## IV. CONCLUSION

DC's motion for review should be granted, and Toberoff's November 17, 2001, email to Michael Siegel (Bulson Privilege Log Entry No. 339, Docket No. 362-2 at 309) should be ordered produced immediately.

Dated: July 5, 2012

Respectfully submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli