DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF DC COMICS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS FOR RELIEF**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**: Aug. 20, 2012<br>**Hearing Time**: 1:30 p.m.<br>**Courtroom**: 11 |

After consideration of the papers in support of and in opposition to Plaintiff DC Comics' ("DC")[1] Motion For Partial Summary Judgment On Its First And Third Claims For Relief, the Court hereby makes its findings of uncontroverted facts and conclusions of law as follows:

## UNCONTROVERTED FACTS

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
| 1 | Jerome Siegel and Joseph Shuster created the character "Superman" in the 1930s; but for years, the pair was unable to find a publisher for their story. | Decl. of Daniel M. Petrocelli ("PD") Exs. 10 at 78 (FOF 10), 40 at ¶ 4, 41 at 340-42. |
| 2 | In 1938, DC—which had employed Siegel and Shuster to do other work—elected to include Superman in a new comic book titled *Action Comics*. | PD Exs. 1, 8, 10 at 80 (FOF 21), 13 at 133, 14 at 141, 40 at ¶ 5, 41 at 343-45 & 408-21. |
| 3 | On March 1, 1938, Siegel and Shuster granted to DC the "exclusive right to the use of the [Superman] characters and story." | PD Ex. 2. |
| 4 | *Action Comics #1* ("*AC#1*"), published on April 18, 1938, with a cover date of June, 1938, featured an adapted version of Siegel and Shuster's Superman story | PD Exs. 8, 41 at 408-21. |

---

[1] For simplicity, in this Statement and DC's summary judgment papers, "DC" refers to DC Comics and its predecessors in interest.

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | along with other stories. |  |
| 5 | After *AC#1* was published, Siegel and Shuster continued to supply DC with draft Superman material pursuant to work-for-hire agreements. Siegel and Shuster were compensated for their work in royalties and bonuses, both of which increased with Superman's success. | PD Exs. 3-6, 10 at 88-91 (FOF 55-59, 64-77). |
| 6 | By 1941, the *Saturday Evening Post* reported that Siegel and Shuster stood to make over $2 million (in today's terms) in the next year alone.[2] | PD Ex. 7 at 27. |
| 7 | In 1947, Siegel and Shuster sued DC in New York seeking to invalidate the 1938 assignment. The court concluded that the 1938 assignment granted all Superman rights to DC. In 1948, the parties entered into a stipulated judgment under which Siegel and Shuster acknowledged the 1938 assignment granted to DC all rights in Superman. | PD Exs. 9, 11-12. |
| 8 | In a 1975 agreement, DC provided Siegel and Shuster with, in today's dollars, lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works. Siegel and Shuster acknowledged that DC owned all | PD Ex. 15. |

---

[2] All present day dollar amounts were calculated using the Bureau of Labor Statistics' online inflation calculator, available at: http://www.bls.gov/data/inflation_calculator.htm/

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | Superman-related copyrights. |  |
| 9 | Since 1975, DC has voluntarily increased the annual payments, made periodic cost-of-living adjustments, given special bonuses, and paid to have Siegel, Shuster, and their families travel to Superman-related events. | *E.g.,* PD Exs. 17-19; Decl. of Paul Levitz ("LD") Exs. 23, 27, 33, 39, 53, 54, 60, 67, 71, 75-78. |
| 10 | All told, the Siegels and Shusters have been paid well over $4 million under the 1975 agreement, not including medical benefits or bonuses. | LD ¶ 4 & Exs. Exs. 23, 27, 33, 39, 53, 60, 67, 71. |
| 11 | Neither Siegel nor Shuster ever attempted to exercise any purported termination right, although the windows for both to do so opened in 1984, while both were alive. | *E.g.,* PD Exs. 25-31, 37. |
| 12 | Shuster passed away on July 30, 1992. | PD Ex. 20. |
| 13 | Shuster had no wife, child, or grandchild, and his will named his sister, Jean Peavy, as sole beneficiary and "executrix" of his estate. | PD Exs. 33 at 275-76, 46 at 443:10-444:9. |
| 14 | On August 17, 1992, Jean filed a sworn affidavit in California state court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her." | PD Ex. 21. |

- 3 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
| 15 | Four days after filing her affidavit in the California probate court, Jean wrote to DC, identifying herself as "heir to [Joe Shuster's] Will" and asking DC to pay Shuster's "final debts and expenses." | LD Ex. 3. |
| 16 | DC offered to cover Joe's debts and increase survivor payments to his brother Frank from $5,000 to $25,000 per year. | LD Ex. 5; PD Ex. 23. |
| 17 | On September 10, 1992, Frank sent a letter to DC's then-Executive Vice President, Paul Levitz, stating he was "extremely pleased" with the increased payments, and asking, after "discuss[ing] this good news with [Jean]," that payments be made directly to Jean, who would "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." Frank asked if he and Jean could meet with Levitz in New York to discuss the issue. | LD Ex. 6. |
| 18 | Levitz dealt with scores of authors and heirs during his decades running DC. When DC agreed to grant an author or heir's request for additional money, Levitz would give them the same admonition: this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC. Levitz reiterated this condition to Frank and Jean in 1992, who confirmed they understood | LD ¶ 8. |

- 4 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | and agreed. |  |
| 19 | The parties executed an agreement on October 2, 1992, confirming that DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life. In exchange, Jean and Frank re-granted all of Joe Shuster's rights (including any Superman copyrights) to DC and vowed never to assert a claim to such rights.<br><br>The 1992 agreement stated, in pertinent part:<br>   We [DC ]ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever. | LD Ex. 8. |
| 20 | Over the next decade, DC maintained good relations with the Shusters, and Jean and Levitz corresponded regularly. In the close to 60 letters back and forth between Paul and Jean, Jean thanked DC for its generosity, reaffirmed the 1992 agreement, and requested bonus payments in excess of those required. | LD ¶ 9 & Exs. 3, 10, 11, 16-20, 22-35, 37, 39, 41-43, 45-61, 63-74, 77-78. |
| 21 | In a 1993 letter, Jean confirmed she would "stick to our bargain" and not attempt "to reclaim the SUPERMAN | LD Ex. 20. |

- 5 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | copyright," but asked for an increase in payments "plus a yearly increment to account for inflation." |  |
| 22 | In 1999—after Congress amended the copyright statute to grant additional statutory heirs termination rights, 17 U.S.C. § 304(d), and after learning that Jerry Siegel's heirs had served Superman copyright termination notices on DC—Jean reiterated her commitment "to honor" the 1992 Agreement, and again asked for a bonus:<br><br>I have learned from the Internet that Joanne Siegel has filed a copyright claim for SUPERMAN. I want you to know that I intend to continue to honor our pension agreement. I would, however, appreciate a generous bonus for this year as you had done many times in the past. | LD Ex. 59. |
| 23 | In 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. | LD Exs. 23, 27, 33, 39, 53, 60, 67, 71. |
| 24 | In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal rights to make such requests, but would pay her a bonus anyway, which she thanked DC for doing. | LD Ex. 23. |
| 25 | DC has paid the Shusters over $610,000 under the 1992 agreement and as special bonuses, and DC continues to make payments to Jean to this day. | LD ¶ 9 & Exs. Exs. 23, 27, 33, 39, 53, 60, 67, 71. |

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
| 26 | Jean's 50-year-old son, Mark Peary (born Peavy), who lives with his mother and does not have a job, testified that Jean was of sound mind when she sent these letters to DC. | PD Ex. 46 at 443:19-444:22. |
| 27 | Mark Peary, Jean's doctor, and Jean's daughter testified that, after "suffer[ing] a debilitating stroke in May of 2009," Jean has aphasia, and has difficulty communicating and "understand[ing] what people are saying." | PD Exs. 44, 46 at 447:18-448:3, 455:10-21, 48 at 517:17-22, 520:2-4, 523:4-13. |
| 28 | In 1996, Peary sent Levitz a screenplay about "the life story of Joe Shuster and Jerry Siegel" called "Dreamers," and asked Levitz to share it with Warner Bros. Peary's screenplay detailed how Shuster became estranged from DC, but toward the end of his life, he and DC made amends. | LD ¶ 10 & Ex. 44. |
| 29 | Warner Bros. declined to develop "Dreamers," and in 1999, Peary submitted a revised script and asked Levitz if the Siegel family's copyright termination effort would "interfere with [him] selling [his] screenplay." | LD ¶ 10 & Ex. 46, 62. |
| 30 | Before Peary met Marc Toberoff, he never told DC the Shusters had a right to terminate or challenged the 1992 Agreement. Instead, from 1992 to 2001, he and Jean | *E.g.*, LD ¶ 10 & Exs. 20, 23, 24, 26, 27, 28, 33, |

- 7 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | affirmed the Agreement and accepted payments under it. | 34, 39, 43, 53, 54, 59, 60, 61, 67, 68, 71, 72. |
| 31 | In a November 2001 "Joint Venture Agreement," Peary and Jean formed a joint venture with Toberoff's company Pacific Pictures Corporation "for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations." Jean and Peary "transfer[ed] and assign[ed]" the following "Rights" to the Joint Venture:<br><br>The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books….<br><br>The agreement provided that "in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by [the Shusters] and fifty percent (50%) by [Pacific Pictures]." | PD Ex. 32; *see also* Docket No. 305-37. |
| 32 | Toberoff, Jean, Peary, and the Shuster Estate reaffirmed the terms of the Pacific Pictures Joint Venture in a 2003 amendment "confirm[ing]" that the joint venture held the Estate's "copyright termination interest in 'SUPERMAN' pursuant to Section 304(d) of the U.S. | PD Ex. 36. |

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | Copyright Law." |  |
| 33 | Peary admits that, in 2003, he understood "that all of the Joe Shuster rights, termination rights, to the extent they existed, were being transferred and assigned to the venture just as [the contract] says." | PD Ex. 46 at 482:8-23. |
| 34 | Peary concedes, as did Toberoff, that these Pacific Pictures agreements are "not lawful," because, *inter alia*, the Shusters could only make such a rights deal with DC. Peary testified he was unaware that the agreements were unlawful when he signed them and filed the Notice. | PD Ex. 46 at 485:16-488:21; Docket No. 191 at 8. |
| 35 | Peary negotiated the Pacific Pictures agreements directly with Toberoff, and without receiving any outside advice from counsel. | PD Ex. 39 at 319:9-320:14. |
| 36 | Peary only told his mother about the Pacific Pictures agreements "just before [they] were ready to sign." | PD Ex. 46 at 492:20-493:11. |
| 37 | When asked years ago about the Pacific Pictures agreements, Jean testified her "son handles everything legal" and she did not "know what's going on." | PD Ex. 38 at 310:14-312:13. |
| 38 | In 2003, Peary initiated proceedings to probate Joe Shuster's estate—even though, in 1992, his mother had already filed an affidavit in California probate court to obtain all of Shuster's assets. Peary asked the court to | PD Exs. 21, 33-34. |

- 9 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | appoint him executor in place of his mother. |  |
| 39 | Peary has kept this probate matter open for nine years—despite his sworn responsibility as executor to "complet[e] the estate administration as promptly as possible." | PD Ex. 35. |
| 40 | Several weeks after initiating the probate matter and signing the 2003 Pacific Pictures Joint Venture contract, Peary, on behalf of the newly formed Shuster Estate, served a copyright termination notice on DC purporting to take effect on October 26, 2013 (the "Notice"). The Notice nowhere mentions the Joint Venture with Pacific Pictures, or the fact that the Shusters had transferred all their putative termination interests to the Venture. | PD Ex. 37. |
| 41 | Attached to the Notice were sworn certifications by Toberoff and Peary that all information contained in the Notice was "true and correct" and "signed by all persons whose signature is necessary to terminate" Shuster's copyright grants. Toberoff also certified in the Notice that "that before serving the foregoing document …, I caused a reasonable investigation to be made as to the current ownership of the rights being terminated." | PD Ex. 37 at 303-304. |
| 42 | In 2008, Peary and Jean signed a "consent agreement" with the Siegels that bars the families from entering into an agreement with DC without the consent of the other. | PD Exs. 46 at 458:21-459:25, 461:19-462:9, |

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  |  | 465:25-469:1, 472:8-473:11, 47 at 500:10-501:24, 504:20-506:13, 509:15-511:8. |
| 43 | Peary conceded the "consent agreement" was signed by himself, "Laura [Larson], Joanne Siegel," and "Toberoff" in 2008; that it provides that "any agreement with DC or settlement with DC requires the consent of the Siegels"; and that it is "still in effect" today. | PD Exs. 46 at 458:21-459:25, 461:19-462:9, 469:5-7, 47 at 509:15-511:8; *see also* Docket No. 160 at 63, 231 at 6. |
| 44 | After this Court held in the related *Siegel* case that "promotional announcements" featuring the first appearance of Superman fell outside the termination window of § 304(c) of the Copyright Act, both the Siegel and Shuster heirs served new termination notices in 2012 purporting to terminate the announcements. | PD Exs. 41 at 369-70, 49-50. |
| 45 | Joe Shuster's original wish, as embodied in the 1975 agreement, was to take care of Frank Shuster because of the assistance Frank had rendered on the early Superman strips as a letterer, and because Frank had taken Joe in during the 1960s; he had never known or | LD ¶ 7. |

- 11 -

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Fact | Evidence |
|---|---|---|
|  | understood Joe to want to provide for Jean. |  |

## CONCLUSIONS OF LAW

As set forth in DC's summary judgment papers and proposed order:

1. Summary judgment is warranted in DC's favor on DC's First Claim for Relief on the ground that the 1992 agreement between DC and the heirs of Joseph Shuster eliminated any pre-1978 copyright grant that might otherwise be subject to termination under the 1976 Copyright Act. *See* 17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005); *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008). Accordingly, the Notice is invalid and ineffective.

2. Summary judgment is warranted in DC's favor on DC's First Claim for Relief on the ground that at the time the Notice was filed, neither the Estate of Joseph Shuster nor the Shuster heirs owned or possessed the majority share of Joseph Shuster's putative termination interest required to terminate under the Copyright Act and Copyright Office regulations. *See* 17 U.S.C. §§ 304(d), 304(c)(1); 37 C.F.R. 201.10(b)(1)(vii), (c)(2); *Steinbeck*, 537 F.3d at 202. Defendants' deliberate failure to disclose the transfer of their purported termination interest to defendant Pacific Pictures Corporation was not "harmless error," but concealed material facts about defendants' unlawful agreements from the Copyright Office and DC. Accordingly, on this alternative ground, the Notice is invalid and ineffective.

3. Summary judgment is warranted in DC's favor on DC's First Claim for Relief on the ground that the Shuster heirs have no statutory basis to terminate under § 304(d) of the Copyright Act because Joseph Shuster passed away without exercising any purported termination right and before his right could "expire" under

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

the terms of § 304(c).  *See* 17 U.S.C. §§ 304(c)-(d).  Accordingly, on this alternative ground, the Notice is invalid and ineffective.

      4.  Summary judgment is warranted in DC's favor on DC's Third Claim for Relief on the ground that defendants' unlawful rights-tying agreements violate the period of exclusivity provided to DC by § 304(c)(6)(D) of the Copyright Act.  17 U.S.C. § 304(c)(6)(D); *see Milne*, 430 F.3d at 1047.  Under § 304(c)(6)(D), DC was entitled to a period of exclusivity from the date the Notice was served (November 10, 2003) to the date it purports to take effect (October 26, 2013) during which the Shuster heirs were barred from entering into any agreement regarding the rights sought to be recaptured with any party other than DC, the original copyright "grantee" to those rights.  *Milne*, 430 F.3d at 1047.  Any agreement interfering with that period of exclusivity—including defendants' 2001 and 2003 agreements with Pacific Pictures and defendants' 2008 "consent agreement"—is invalid and unenforceable.  Assuming the Notice is valid, which the Court rejects above, the 10-year period of exclusivity to which DC was entitled under the Notice and the law should be restored.

Dated: _____   _____
                                            Honorable Otis D. Wright, II
                                            Judge, United States District Court