| | |
|---|---|
| 1 | DANIEL M. PETROCELLI (S.B. #097802) |
|   | dpetrocelli@omm.com |
| 2 | MATTHEW T. KLINE (S.B. #211640) |
|   | mkline@omm.com |
| 3 | CASSANDRA L. SETO (S.B. #246608) |
|   | cseto@omm.com |
| 4 | O'MELVENY & MYERS LLP |
|   | 1999 Avenue of the Stars, 7th Floor |
| 5 | Los Angeles, CA 90067-6035 |
|   | Telephone: (310) 553-6700 |
| 6 | Facsimile: (310) 246-6779 |
| 7 | Attorneys for Plaintiff DC Comics |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DC COMICS, | | Case No. CV 10-3633 ODW (RZx) |
| | Plaintiff, | **DECLARATION OF PAUL LEVITZ IN SUPPORT OF DC COMICS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS FOR RELIEF** |
| | v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | | Hon. Otis D. Wright II |
| | | **Hearing Date**: Aug. 20, 2012 |
| | | **Hearing Time**: 1:30 p.m. |
| | | **Courtroom**: 11 |
| | Defendants. | |

LEVITZ DECL. RE: DC'S
MOT. FOR PARTIAL SUMM. J.

## DECLARATION OF PAUL LEVITZ

1. I worked at DC Comics ("DC") for 38 years, and continue to serve as Senior Advisor, Consulting Editor, and as a writer for DC. I have personal knowledge of the matters set forth in this declaration or conducted due diligence to gather them, and if called to testify to the facts stated herein, I could and would do so competently.

2. In 1972, I began working as a freelance writer for DC. In 1973, I became an assistant editor. Throughout the 1970s, I became progressively more involved in management of DC's general business activities, and in 1980, I was promoted to Manager of Business Affairs. By 1985, I had become predominantly responsible for DC's business operations, and I was promoted to Executive Vice President. In 1989, I became Executive Vice President and Publisher. From 2002 to 2010, I served as DC's President and Publisher. Since then, I have served as Senior Advisor, Consulting Editor, and as a writer for DC.

3. During my many years as a business executive at DC, part of my role was to maintain relationships with writers and artists who had worked for DC in the past, as well as their families. I had many interactions with Joseph Shuster, his brother Frank Shuster, his sister Jean Peavy, and his nephew Mark Warren Peary. Attached hereto as Exhibits 1-78 are true and correct copies of my correspondence with the Shuster family that DC and I could locate.

4. In a 1975 agreement, DC affiliate Warner Communications Inc. agreed to provide Joe Shuster and Jerome Siegel with lump sum payments, lifetime annual payments, survivor payments to their heirs, insurance coverage, and other benefits. As of 2011, Warner had paid the Shuster and Siegel families $4.3 million under the 1975 agreement, not including medical benefits or special bonuses.

5. After Joe Shuster passed away in 1992, Frank and Jean wrote letters to me and Martin Payson at Time Warner asking for financial assistance. (Exhibits 3, 6 and 7.) Jean told us she was Joe's sole heir. (Exhibit 3.) I took the lead in

negotiations with Frank and Jean. On September 8, 1992, I sent Frank a letter offering that DC would increase the survivor payments due to Frank under the 1975 agreement from $5,000 to $25,000 per year. (Exhibit 5.)

6.     On September 10, 1992, Frank sent me a letter stating that he was "extremely pleased" with DC's offer, and saying that, after "discuss[ing] this good news with [his] sister Jean," she and Frank wished that payments be made directly to Jean, who would "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." (Exhibit 6.)

7.     Frank (who lived in New York) said that Jean would be visiting New York soon, and asked if he and Jean could meet with me in New York to discuss these issues further. (Exhibit 6.) I agreed, and we met in my office at DC in late September or early October 1992. Jean basically spoke for the two of them, as Frank was frail and considerably older. It was clear that by changing the agreement to pay the annual stipend for Jean's lifetime rather than Frank's, DC would both be far exceeding our promise to Joe and committing to a much larger sum. I understood Joe's original wish, as embodied in the 1975 agreement, to be to take care of Frank because of the assistance Frank had rendered on the early Superman strips as a letterer, and because Frank had taken Joe in during the 1960s; I had never known or understood Joe to want to provide for Jean. Nonetheless, on DC's behalf, I conditionally agreed to Jean and Frank's request.

8.     Given DC's financial success, former writers and artists, or their families, would from time to time, ask DC for money, much as Frank and Jean had done. Every time DC agreed to grant such a request, I would make clear to the writer, artist, or family member that the payment would represent their last and final deal with DC, and would resolve any past, present, or future claims against DC. I recall having this same discussion with Frank and Jean during our in-person meeting in 1992. Frank and Jean both confirmed that they understood. Following this discussion, DC (through me) and Frank and Jean signed an agreement on

October 2, 1992, dated as of August 1, 1992. A true and correct copy of that agreement is attached hereto as Exhibit 8. In key part, and consistent with the above, it states:

> We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.

9. DC maintained a good relationship with the Shuster family until 2001. In particular, Jean and I exchanged many letters, notes, and holiday cards. In many of Jean's letters, she would request special bonuses in excess of the payments due under the 1992 agreement based on some particular new success DC had achieved, like a television series. When Jean made such a request—including in 1999—DC agreed to honor Joe's memory and provide an additional bonus ranging from $10,000 to $25,000. DC paid Jean bonuses in 1993, 1994, 1995, 1996, 1998, 1999, 2000 and 2001. (Exhibits 23, 27, 33, 39, 53, 60, 67, 71.) In total, DC has paid Jean at least over $610,000 under the 1992 agreement, and continues to pay her under the agreement to this day, even though she went back on her word.

10. I also exchanged correspondence over the years with Jean's son, Mark Warren Peary. On May 29, 1996, Mark sent me a screenplay called "DREAMERS," which he described as "an inspiring life story of Joe Shuster and Jerry Siegel." (Exhibit 44.) The screenplay discusses how Joe Shuster made amends with DC late in his life. Mark asked me to pass along the screenplay to Warner Bros., which I did. On November 6, 1999, Mark asked whether I would be willing to submit a revised screenplay to Warner Bros. (which I later did) and asked whether Joanne Siegel's termination claim concerning her husband's rights would "interfere with us selling our screenplay." (Exhibit 62.) Mark Peary never told me that he thought he or his family had any remaining termination claims to assert. To

the contrary, in 1999, Jean told me she planned to honor our 1992 agreement and would assert no termination claim. (Exhibit 59.) I was disappointed when I learned that the Shuster family filed their termination claim.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration is executed this 16th day of July 2012 in New York, New York.

_____
Paul Levitz