Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway, #348
Malibu, California, 90265
Telephone:   (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy
and Laura Siegel Larson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; JOANNE SIEGEL, an individual; LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES**<br><br>NOTICE OF MOTION AND MOTION, DECLARATION OF PABLO D. ARREDONDO AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**: Hon. Otis D. Wright II<br>**Magistrate**: Hon. Ralph Zarefsky<br><br>**Complaint filed**: May 14, 2010<br>**Trial Date**:        None Set<br>**Hearing Date**:    August 13, 2012<br>**Hearing Time**:    10:00 a.m.<br>**Courtroom**:        540 |

Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Central District Court Local Rule 37-2, the parties respectfully submit the following Joint Stipulation Regarding Defendant's Motion for Interrogatory Responses.  Pursuant to Central District Local Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

Dated:      July 24, 2012            Respectfully Submitted,

                                     TOBEROFF & ASSOCIATES

                                     By:  /s/ Marc Toberoff

                                     Marc Toberoff
                                     Attorneys for Defendants Laura Siegel
                                     Larson, Mark Warren Peary, and Jean
                                     Adele Peavy


Dated:      July 24, 2012            Respectfully Submitted,

                                     O'MELVENY & MEYERS, LLP

                                     By:  /s/ Daniel M. Petrocelli

                                     Daniel M. Petrocelli
                                     Attorneys for Plaintiff DC Comics

# <u>TABLE OF CONTENTS</u>

I.      DEFENDANTS' INTRODUCTION ................................................................1

II.     DC'S INTRODUCTION ...........................................................................2

III.    THE PARTIES' RESPECTIVE STATEMENTS OF ISSUES AS TO
        EACH INTERROGATORY .......................................................................5

        A.      Defendants' Position On Interrogatories No. 1-2 ................................5

        B.      DC's Position On Interrogatories No. 1-2 ..........................................7

        C.      Defendants' Position On Interrogatory No. 5 ...................................18

        D.      DC's Position On Interrogatory No. 5 ...............................................21

        E.      Defendants' Position On Interrogatories Nos. 9-15...........................22

        F.      DC's Position On Interrogatories Nos. 9-15.....................................27

IV.     DEFENDANTS' CONCLUSION ................................................................40

V.      DC'S CONCLUSION ...........................................................................40

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

# I.   DEFENDANTS' INTRODUCTION

The sole purpose of a discovery request – whether it takes the form of a request for production or an interrogatory – is to provide the parties with answers that will enable them to assess their cases and prepare, if need be, for trial.  *See United States ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.") (citations and quotations omitted).  To obtain this sort of necessary information, Mark Warren Peary ("Peary") served his First Set of Interrogatories to Plaintiff DC ("Interrogatories") on December 17, 2011.  In these Interrogatories, Peary requested DC to provide answers to 15 specific questions.  All of the Interrogatories were targeted at the core issues in this case, with many, if not most, leveled at specific allegations in DC's Complaint.

About two months later, on February 17, 2011, DC responded to Peary's Interrogatories with its Objections and Responses to Defendant Mark Warren Peary's First Set of Interrogatories ("Responses").  Although DC claimed to "use reasonable diligence and reasonable judgment" in drafting these Responses, 10 out of 15 of its answers were designed to evade conveying any meaningful discovery to Peary. These Responses provide vague and decontextualized answers to Peary's interrogatories.  They fail to provide any specificity, citing instead to the entirety of the record in not just this case, but the related *Siegel* cases as well.  They misdirect Peary to irrelevant and/or non-responsive materials.  And they do so all in a non-committal and obtuse manner, refusing to state with any sort of clarity whether DC had fully answered the questions or is still withholding information based upon its boilerplate objections.  Effectively, the Responses fail to answer Peary's questions.

On March 8, 2012, Peary's counsel sent a letter to DC and objected to its Responses, noting their multiple shortcomings.  *See* Declaration of Pablo D. Arredondo Decl. ("Arredondo Decl."), Ex. A.  On March 16, 2012, the parties met

and conferred about these objections, but DC refused to amend or otherwise supplement its evasive Responses. *Id.,* Ex. B, ¶4. To date, DC has refused to meaningfully answer Peary's Interrogatories. DC's arguments below about the deposition of Paul Levitz are both factually inaccurate, and irrelevant as a party is entitled both to serve interrogatories and to take depositions of relevant witnesses; the two are not mutually exclusive.

Peary now respectfully asks this Court to compel DC to abide by its discovery obligations and provide direct, specific responses to Interrogatories Nos. 1, 2, and 5and 9-15.

## II.   DC's INTRODUCTION

Peary's motion to compel further interrogatory responses from DC should be denied for three reasons: (1) he failed to meet and confer on the motion as required by the rules; (2) DC's responses were fully proper; and (3) Peary has obtained (or will obtain) the additional information he claims he needs in the form of amended interrogatory responses from DC (served before this motion was filed), DC's motion for partial summary judgment (served before this motion was filed), and Paul Levitz's FED. R. CIV. P. 30(b)(6) deposition (which was set to take place two days after this motion is filed, until defendants unilaterally cancelled it). Peary's motion is procedurally and substantively without basis, and, at best, premature.

*1. The Failure to Meet and Confer.* Peary (like all of the defendants) waited 19 months—until December 2011—to serve any discovery. The interrogatories he served, and on which he moves, relate to DC's First Claim and one of the grounds for relief stated therein—*i.e.*, that a 1992 agreement DC made with Peary's mother (Jean Peavy) and uncle (Frank Shuster) bars the copyright termination notice Peary filed in 2003. DC's complaint, filed in May 2010, identifies that 1992 contract (signed by Levitz on behalf of DC), as well as correspondence between Frank, Jean, and Levitz, as proof that Peary's copyright termination claim is barred. DC

1  identified Levitz as a material witness in disclosures in 2010, and its interrogatory

2  responses (on which Peary does not move) make plain Levitz's importance.

3       DC started the meet-and-confer process on the first three of the interrogatory

4  responses (Nos. 1, 2, and 5) in March 2012 with Keith Adams—then-counsel for

5  Peary.  (Defendants' meet-and-confer letter did not address by number seven of the

6  ten interrogatory responses (Nos. 9-15) on which it now moves.)  DC told Mr.

7  Adams in writing and in a call that followed that it was willing to amend its answers

8  to Nos. 1, 2 and 5, if Peary narrowed those requests to conform with the rules and

9  not to target decades of irrelevant communications that have nothing to do with this

10  case.  DC reminded Mr. Adams that defendants had successfully objected to DC's

11  discovery requests that used similarly broad locution—and said defendants needed to

12  make a choice:  either to commit to answer DC's discovery as formerly framed, or to

13  narrow Peary's requests as DC had been forced to do.  Neither Mr. Adams nor other

14  defense counsel responded to DC's offer, even though DC told defendants and the

15  Court in January 2012—*six months ago*—that it would be moving for partial

16  summary judgment on its First Claim.  Docket Nos. 364 at 8.

17       DC notified defendants on June 21, 2012, that it would be filing its summary

18  judgment motion imminently.  Defendants said nothing about DC's need to amend

19  the interrogatory answers on which Peary now moves, but rather, a week later, on

20  June 28, 2012, noticed Paul Levitz's deposition.  Defendants also served subpoenas

21  on two other DC-related witnesses and explored whether their depositions were

22  necessary.  Over the next two weeks, defendants had numerous discussions with DC

23  about scheduling DC's summary judgment motion and the depositions and document

24  requests above.  *Never once* during any of these discussions did defendants ever say

25  they planned to move to compel on DC's interrogatory responses Nos. 1, 2, 5, and 9-

26  15, or otherwise.  Rather, after defendants declined the briefing schedule DC

27  proposed on its summary judgment motion—and hours after DC declined

28  defendants' counter-offer—Peary filed his present motion.

DC asked Peary to withdraw the motion, citing defendants' failure, since March 2012, to complete their meet-and-confer obligations.  Defendants sent a strident response, claiming Mr. Toberoff had perfected the meet-and-confer record in a June 12 email.  That email (as defendants concede) made *no reference to DC's interrogatory responses*.  Nevertheless, defendants refused to meet and confer on this motion and demanded that DC either agree to the relief sought or oppose it.  That take-it-or-leave-it choice does not meet the dictates of Rule 37.  This Court—at defendants' urging—has applied Rule 37 to deny DC's motions to compel based on a failure to meet and confer fully.  That same rule should apply to defendants, and defendants' motion should be denied on this ground.

   *2. DC's Responses Were Fully Adequate.*  Peary's overbroad interrogatories seek information concerning "all COMMUNICATIONS"—covering decades-long relationships—as well as "any" and "all" evidence supporting DC's claims.  The case law holds that both these types of requests are overbroad, as DC's objections and Rule 37 letter made plain.  When DC wrote and spoke to Mr. Adams in March, it told him that DC was willing to amend its responses if Peary focused his requests.  Peary never did so, and DC's responses—which identify scores of documents, communications, sources of testimony, and other evidence—all did their level best to respond to Peary's overly capacious requests.  Again, this Court, at defendants' urging, has limited defendants' obligation to respond to broad discovery requests.  That rule should apply to Peary with equal force, and his motion should be denied.

   *3. Peary's Motion Is Both Moot And Not Ripe.*  Peary says he wants to know on what evidence DC will rely to claim it owns the Superman rights to which Peary lays a claim.  That evidence was cited in DC's complaint and initial disclosures and provided in DC's document and interrogatory responses, which identified scores of communications on the subject.  That evidence was briefed, cited, and summarized in DC's summary judgment papers filed last week.  Defendants also would have had a full chance to depose Levitz about this these issues this week, had they not

1  cancelled his deposition.  And as DC invited him to do, Peary should have

2  withdrawn his motion, or withheld serving it, at least, until after Levitz testified.

3       As for Peary's few interrogatory requests that relate to DC's unclean-hands

4  claim, that claim, as defendants know, is not ripe for summary adjudication.

5  Document and deposition discovery into the claim is still ongoing and will be for

6  months.  The case law, moreover, makes clear that defendants have no right to

7  demand "all facts" in support of that claim.  *If ever*, such contention interrogatories

8  may only be asked after all discovery is complete.  Finally, defendants' March 2012

9  Rule 37 letter never mentions these interrogatories by number—meaning, under this

10 Court's prior rulings, Peary cannot move to compel on them.  Docket No. 262 at 6.

11 **III.   THE PARTIES' RESPECTIVE STATEMENTS OF ISSUES AS TO**

12 **        EACH INTERROGATORY**

13       **A.    Defendants' Position On Interrogatories Nos. 1-2**

14       DC's Responses to 10 out of 15 of Peary's Interrogatories are wholly

15 inadequate, designed to evade conveying any meaningful answers or information.

16            **1.      Interrogatories Nos. 1-2**

17       Peary's Interrogatories No. 1 and 2 requested DC to identify communications

18 it had previously had with various relevant parties:

19 **Interrogatory No. 1**

20 IDENTIFY all COMMUNICATIONS between YOU AND Mark Warren
   Peary.
21

22 **Interrogatory No. 2**
   IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele Peavy.
23

24       In answering these Interrogatories, DC recycles various boiler plate objections,

25 cites to various materials from this and the related *Siegel* cases, and then vaguely

26 adds at the end of each of its responses the following sentence: "Representatives from

27 DC, including Paul Levitz, had non-written communications with Mr. Peary [or Jean

28 Adele Peavy, Frank Shuster, Joseph Shuster, as applicable] over the years as well."

Below, is a verbatim copy of DC's response to Interrogatory No. 1, which is representative of its other responses to Interrogatories Nos. 2-4:[1]

DC objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope and would include, for example, discussions with Mr. Peary at mediation sessions. DC objects to the extent the Interrogatory calls for irrelevant information and calls for a search for documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent the Interrogatory seeks communications that defendants have refused to produce in response to discovery served by DC, including but not limited to screenplays Mr. Peary sent to DC in 1997 and 2006.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC has exercised reasonable diligence in identifying responsive information and documents, and hereby responds as follows:

DC00145-151, DCC00004186-87, DCC00004191, DCC00006855, DCC00006872-6879, DCC00057431-57447, DCC00089366-89372, WB008506-8507. **Representatives from Warner Bros. Entertainment Inc. and DC, including Paul Levitz,**

---

[1] Due to the length of DC's Responses, quoting each individual Response in full is not practicable and would render this motion more difficult to read. The complete Responses are therefore attached for the Court's convenience as Exhibit C to the concurrently filed declaration of Pablo D. Arredondo.

**had non-written communications with Mr. Peary over the years as Bros. Entertainment Inc.**

(emphasis added).[2]

These blithe references to "communications . . . over the years" are entirely deficient.  The Interrogatories clearly defined "IDENTIFY," when used in reference to communications, to reasonably require DC, to the extent known, to specify the communication's "(i) date; (ii) type (*e.g.,* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient and addressee."

DC's response makes no effort whatsoever to provide this information, failing to specify when or how these communications took place, who were involved in these communications, or what they were about.  DC should not be allowed to casually dodge its discovery obligations as to oral communications with such vague and uninformative answers.  *See Nickerman v. Remco Hydraulics, Inc.*, 2007 WL 3407437 at *3 (N.D. Cal. Nov. 13, 2007) (responses deficient where they lacked "basic specific details" such as dates).

Respectfully, this Court should compel DC to respond with answers that, at the very least, convey specific and meaningful information as to DC and Warner Bros.' oral communications with Mark Warren Peary and  Jean Adele Peavy.

B.     **DC's Position On Interrogatories Nos. 1-2**

1.     **The Relevant Factual Background Peary Omits**

*a. DC's First Claim.*  DC filed this action in May 2010.  DC's First Claim seeks a declaration that the "Shuster Termination Notice [is] invalid," on five independent grounds,  Docket No. 49 ¶¶ 106-34—three of which are relevant to this motion, one centrally so.  As set forth in DC's complaint and summary judgment motion filed last week, Docket No. 458, the first reason the Notice is invalid is

---

[2] *See* Arredondo Decl., Ex. C at 3-8, for DC's similar response to Interrogatory Nos. 2-4.

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

because a 1992 Agreement between DC and Jean and Frank Shuster rescinded all of
Joe Shuster's prior copyright grants and re-granted to DC any copyright interests that
Joe or his heirs may have held, including in Superman, *id.* at 10-18.  The 1992
agreement eliminated any pre-1978 copyright grant that might otherwise be subject to
termination and, thus, operates to bar Peary's Notice.  *Id.* (discussing and citing, *e.g.*,
17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036,
1042-45 (9th Cir. 2005) (holding same on similar contract); *Penguin Grp. (USA) Inc.
v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008) (same)).

A second ground for DC's First Claim is that, in 2001 and 2003, Jean, Peary,
and the Estate of Joseph Shuster "assign[ed]" any "copyright termination interest in
'SUPERMAN'" they possessed to a joint venture with defendant Pacific Pictures
Corporation, Toberoff's production company.  Thus, when the Estate served its
Notice a few weeks later in late 2003, none of Jean, Peary, or the Shuster Estate
owned the greater-than-50% share of the termination right required to terminate.  *See*
Docket No. 458 at 18-20 (citing and discussing, *e.g.*, 17 U.S.C. §§ 304(d), 304(c)(1);
37 C.F.R. §§ 201.10(b)(1)(vii), (c)(2); *Steinbeck*, 537 F.3d at 202).  DC also moved
for summary judgment on its First Claim on this ground last week.

A third ground for DC's First Claim is that the doctrine of unclean hands bars
the Notice.  Docket No. 49 at ¶¶ 129-33; Docket No. 186 at 17-20.  Among other acts
of unclean hands, any mention of the character Superboy is conspicuously missing
from the Shuster termination Notice.  Jerry Siegel and Joe Shuster both claimed
repeatedly that Joe Shuster helped create Superboy, and Jean and Peary each
acknowledged Joe's role in doing so when they identified Superboy as one of his
works, when they transferred rights in Superboy to the Pacific Pictures venture in
2001.  *Id.*  In a scheme to enable Toberoff to assert a copyright infringement claim on
behalf of the Siegels, however, Toberoff, Jean, and Peary agreed falsely to have the
Shusters disclaim any interest in Superboy in both the 2003 Pacific Pictures
agreement, and the Shuster Estate's 2003 copyright termination notice.  *Id.*  These

manipulations and misrepresentations of historical fact were a fraud on the Copyright Office, DC, and the courts. *Id.* As DC pointed out in its Rule 12 opposition briefing—on the motions that defendants withdrew in December 2011—more discovery, including deposing Toberoff himself about the Superboy fraud, is needed before this claim can be fully adjudicated. *E.g.*, Docket No. 186 at 5, 19-20.

     *b. DC's Initial Discovery Disclosures.* DC's complaint cited and collected evidence in support of its claims above. Docket No. 49 ¶¶ 1-12, 28-65, 86-101, 105-34 (citing and quoting, *e.g.*, relevant contracts, correspondence, copyright office filings in support of each claim). DC's Rule 26 disclosures, filed in September 2010, identified witnesses in support of its claims, including Paul Levitz, the DC representative who negotiated and interacted with the Shusters in 1992 and years subsequent. Decl. of Cassandra Seto ("Seto Decl.") Ex. 1 at 9. Despite these disclosures, defendants took no discovery in the case—either into DC's claims, or of witnesses like Levitz—for over 19 months. *Id.* ¶ 3.

     *c. DC Pushes to Have Its First Claim Resolved.* In November 2011—after the district court denied defendants' SLAPP motion, and defendants withdrew their fully briefed Rule 12 motions, Docket Nos. 337-43—DC told defendants it wished to adjudicate without delay its First and Third Claims, Seto Decl. ¶ 4, Exs. 2-3. DC asked defendants to stipulate to a bifurcated bench trial on both claims, *id.*, and informed defendants and the Court in a January 2012 joint status report that, if a bifurcated trial could not be had, DC intended to move for partial summary judgment on its First Claim—on the "1992 Agreement" and "Majority Interest" grounds noted above. Docket No. 364 at 8-9; *supra* at 7-8.

     Despite the courts' making clear that full discovery could proceed in this case despite defendants' pending SLAPP motion, Docket No. 95 at 55:18-60:10; 117; 283-11, defendants made the tactical choice not to initiate any discovery until

December 2011.[3]  In mid-December 2011, defendants finally served interrogatories

and document requests on DC, all which DC fully answered, and the latter of which

defendants have never moved to compel on.  *Id*. ¶ 5.

   *d.  Peary's Interrogatories No. 1-2.*  Peary's 15 interrogatories—10 of which

he now moves on—targeted aspects of DC's First Claim.   Numbers 1-4 asked DC to

identify "all COMMUNICATIONS" it had with Peary, Jean Peavy, or Frank

Shuster—*with no date or subject-matter limitation*—as well as "all" of DC's

"COMMUNICATIONS" with Joe Shuster regarding DC's "rights in AND to

Superman"—*with no date limitation*.  *Supra* at 5-6 n.4.  DC responded and objected

to these interrogatories in February 2012.  (DC's responses are set forth in part

above, *supra* at 6-7, as well as in the Arredondo Declaration, Exhibit C at 11-36.)

Each of DC's four responses identified scores of specific "COMMUNICATIONS"

that are responsive; noted that defendants possessed other communications they

refused to produce; and noted there were oral communications the people at DC,

including Levitz, had with the Shusters over many decades, about which DC could

provide defendants more detail if they focused their requests.  *E.g.*, *supra* at 7.

   Defendants did not depose Levitz about his communications.  Rather, they

wrote DC several weeks later requesting a Rule 37 conference to discuss DC's

responses to Interrogatory Nos. 1-4, as well as other discovery issues.  Arredondo Ex.

A at 2-3.  As to Nos. 1-4, defendants complained that DC had failed to identify and

describe all its oral communications with the Shusters.  *Id*.  DC responded a week

later—setting forth two principal concerns with defendants' position (noted by the

bracketed numbers below), and expressing a willingness to resolve the issue:

   <u>Interrogatory Nos. 1-4</u>.  Defendants claim they are entitled to details
   (*i.e.*, approximate dates, subject matter, or the persons involved)
   concerning non-written communications between DC and Mark Warren
   Peary, Jean Adele Peavy, Frank Shuster, and Joseph Shuster.

---

   [3] In December 2010, defendants had argued that a District Court order could be read to
bar them from taking discovery, but DC told defendants and the Ninth Circuit that it did not
take that position.  Docket No. 162-17.

**[1]** *Defendants successfully resisted providing exactly this type of information in response to DC's interrogatories concerning the Toberoff Timeline.* Docket Nos. 211, 262. Most recently, defendants refused to provide these types of details in response to DC's interrogatories to Toberoff, as set forth in our March 6, 2012, letter. *Defendants cannot have it both ways.*

**[2]** *The relationship between DC and the Shusters, moreover, has spanned more than 70 years, and DC cannot be expected to provide details for every conversation that ever occurred between them, including conversations over seven decades old*. DC objected to the scope of Interrogatory Nos. 1-4 as the requests are indefinite as to time and *defendants have proposed no narrowing or specific theories of relevance as to given time periods or communications. Once you do so, we will consider amending our responses or other compromises to provide you reasonable discovery that defendants may seek.*

Any such agreement must be made against the backdrop of defendants' discovery responses. For example, the period covered by the U.S. Attorney's Office's investigation into the Toberoff Timeline covered a brief four-month period, yet defendants refused to provide the level of detail they now demand. If defendants agree to provide the same level of detail in their own interrogatory responses that they are now requesting from DC, DC is willing to meet and confer to come to a reasonable compromise. Arredondo Decl. Ex. B at 6 (emphasis added).

The next day, DC met and conferred with Keith Adams—an associate who now no longer worked at Toberoff's firm when defendants served this motion—and Pablo Arredondo. Seto Decl. ¶ 7-8. During the call, and as it did in its letter, DC offered to amend or supplement its responses to provide further details if (a) Peary narrowed his interrogatories and identified his theories of relevance for specific requests; and (b) defendants agreed to provide the same level of specificity in their discovery responses. *Id.* Mr. Adams said he needed to confer with Mr. Toberoff, and that defendants would consider DC's proposal and respond. Mr. Adams never called or wrote DC again on this issue, and the issue of DC's interrogatory responses lay dormant for *four months*, until July 13, when Peary filed this motion. *Id.*

*e. DC's Summary Judgment Motion.* On June 21, DC wrote to defendants to request a final conference on its partial summary judgment. *Id.* Ex. 4. In the letter and in a meet-and-confer six days later, DC told defendants it would be moving on its First Claim on the grounds identified in DC's January 2012 joint-status report, including the "1992 Agreement" and "Majority Interest" issues. *Id.* & *id.* ¶ 11.

Neither in response to the letter or on the call did defendants raise *any issue* or concern about DC's responses to Interrogatories No. 1-4.  Instead, on June 28 —*two years* after DC identified Levitz as having information regarding the 1992 Agreement—defendants served notices of deposition for Levitz and a Rule 30(b)(6) witness on the 1992 Agreement.  *Id*. Exs. 5, 6.  DC told defendants that Levitz would serve as its 30(b)(6) witness, and that he was available to be deposed July 26.  *Id*. Ex. 7 & *id*. ¶ 14.  Defendants also subpoenaed two DC-related lawyers, Martin Payson and Lillian Laserson, for depositions and documents.  *Id.* Exs. 8-11.

Over the next several weeks, DC and defendants had numerous discussions about DC's summary judgment motion, its scheduling, and discovery defendants believed they needed to oppose it, including the four depositions noted above.  *Id*. ¶ 16; Ex. 17.  *Not once in these many discussions* about whether Payson and Laserson were even appropriate witnesses, by what date Levitz had to be deposed, or on issues such as what discovery DC needed to oppose defendants' threatened cross-motion, did defendants ever raise the issue of DC's interrogatory responses.  *Id*. ¶ 17.  Instead, the parties agreed on a deposition date for Levitz, and defendants stopped pressing for deposition dates for Payson and Laserson.  *Id*.  DC also proposed a briefing schedule on the parties' cross-motions for summary judgment, to which defendants objected.  *Id*. Ex. 17 at 91.  Days later, on July 13, defendants finally proposed a briefing schedule of their own.  Because that schedule prejudiced DC, DC declined to accept it, and instead said both parties should simply follow the rules that govern the normal schedule on such motions.  *Id*. Exs. 12, 17 at 91.

*f.  Peavy's Present Motion.*  Hours after DC declined to accept defendants' scheduling proposal, defendants served DC with the present motion.  *Compare id*. Ex. 12, *with id.* Ex. 13.  On July 15, DC asked defendants to withdraw the motion because they had not finished the meet-and-confer on it in March; they had made no mention of DC's interrogatory responses for months; and DC remained willing to discuss amending its responses.  *Id*. Ex. 14.  (The same day DC also filed its motion

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

1   for partial summary judgment.  Docket No. 458.)  Defendants refused, arguing

2   Toberoff had raised the issue of DC's interrogatory responses in a June 12 email, and

3   stating that defendants would not meet-and-confer, and instead DC must either

4   oppose the motion or amend its responses in accord with the relief it sought.  *Id.* Ex.

5   15 at 79.  DC pointed out in response that Toberoff's June 12 email made no

6   reference—*none*—to DC's interrogatory responses, *id*. Exs. 15 at 78-79, 16 at 82,

7   and DC declined defendants' offer to capitulate to relief sought in Peary's motion

8   because the motion did nothing to fix or narrow Peary's facially deficient

9   interrogatories.[4]

10      DC also last week amended its interrogatory responses to omit information

11  Peary complained about in response to Interrogatory No. 11; to reference two new

12  documents it produced weeks ago and that were responsive; and to reference both its

13  summary judgment filing and Levitz's declaration in support of it.  *Id.* Ex. 18.

14  During the meet-and-confer on DC's summary judgment motion, the parties

15  discussed these two documents, as well as the fact that Levitz, but not Payson or

16  Laserson, would file such a declaration on DC's behalf.  *Id.* ¶ 16.

17      *g.  Peary Withdraws Part of His Motion And Cancels Levitz's Deposition.*

18  While defendants initially argued in the first version of this motion that it sent DC

19  that "12" of DC's 15 interrogatory "answers were designed to evade conveying any

20  meaningful discovery to Peary," Seto Decl. Ex. 13 at 63, upon receipt of DC's

21  opposition to the motion last Friday, *id*. Ex. 19, defendants over the weekend

22  withdrew all argument concerning DC's answers to Interrogatory Nos. 3 and 4, *id*.

23  Ex. 20.  DC urged defendants to withdraw the remainder of their motion, or at least to

24

25      [4] Faced with the fact the June 12 email said nothing about DC's interrogatory answers,
    defendants pointed to a July 11 letter that they said perfected the meet-and-confer record.
26  *Id*. at 77.  Not so.  While the July 11 letter complains about DC's discovery responses, it
    says nothing about the parties' March 2012 meet-and-confer, DC's offer then to work with
27  defendants on amending the responses, or Peary's intent to bring a motion two days later.
    *Id*.  Defendants notably did *not* include the July 11 letter as an exhibit to this motion—that
28  is because it does *not* evidence a proper meet-and-confer.

1   defer filing it until after Levitz's deposition scheduled for July 26, *id.* Ex. 21.

2   Defendants refused.

3          Then, three days before Levitz's deposition—and hours before counsel for DC

4   were scheduled to fly to New York—defendants suddenly and unilaterally cancelled

5   Levitz's deposition, citing the "time pressures" of responding to DC's summary

6   judgment motion by July 30. Seto Decl. Ex. 22. Defendants took this position even

7   though had been on notice of DC's motion for six months, the timing of its filing for

8   a month, and defendants themselves asked for and confirmed Levitz's deposition on

9   July 26. *Id.* DC offered defendants an extension of two days (the needed time to

10  travel to New York and take the deposition) to file their opposition, with no similar

11  extension for DC on its reply, but defendants declined. *Id.* DC also offered to make

12  Levitz available for a video-conferenced deposition from New York to Los Angeles

13  (so defense counsel would not have to travel), and they declined. *Id.*

14          **2.      Peary's Motion on Interrogatories 1-2 Should Be Denied.**

15          Peary's motion should be denied because (a) he failed to meet and confer on it;

16  (b) DC's interrogatory responses were proper; and (c) Peary obtained (or will obtain)

17  the additional information he says he needs in DC's amended interrogatory

18  responses, DC's motion for partial summary judgment, and Levitz's deposition.

19          *a. The Failure To Meet and Confer.* At defendants' urging, and based on a

20  failure to meet and confer fully, this Court has denied DC's motions to compel the

21  production of further interrogatory answers and documents from defendants. *E.g.*,

22  Docket No. 262 at 5-6. Defendants violated those same rules here and worse. They

23  moved without warning on interrogatory requests that DC—*some four months*

24  *prior*—offered to amend or supplement if defendants would only focus them and

25  discuss them further. *Cf. supra* at 10-12; C.D. Cal. L.R. 37-1; *Sequoia Prop. v. U.S.*,

26  203 F.R.D. 447, 451-52 (E.D. Cal. 2001) (denying motion to compel for failure to

27  meet and confer).[5]  That offer remains open, but defendants apparently want to go on

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
           [5] *Accord Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010); *Shuffle
    Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 173 (D. Nev. 1996); *Williams v.*

offense and be the movant in discovery disputes, even where such disputes do not rightly exist.  This is reason alone to deny defendants' motion.

*b.  DC's Answers and Objections Were Proper*.  The rules require that motions to compel further interrogatory answers "contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions as to that particular interrogatory, separately stated."  C.D. CAL. L.R. 37-2.1; *see April v. U.S. Airways, Inc*., 2010 WL 2889931, at *1 (D. Ariz. 2010) (denying motion that failed to follow rule); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) (same).  Peary's grouping of interrogatories conflates certain important distinctions among the interrogatories, and also does not include DC's full answers.  *Cf. id*.  DC addresses each interrogatory and answer on its own, and where Peary omitted the relevant Q&A in its motion, DC includes it.  As shown below, DC's responses were proper:

### i.  DC's Position On Interrogatory No. 1.

Mark Peary, who is Joe Shuster's nephew and interacted with DC over three decades, does not challenge the part of DC's response that points him to relevant, written communications between DC and his family: DC00145-151, DCC00004186-87, DCC00004191, DCC00006855, DCC00006872-6879, DCC00057431-57447, DCC00089366-89372, WB008506-8507.  Rather, Peary complains that DC's response that its "[r]epresentatives …, including Paul Levitz, had non-written communications with Mr. Peary over the years" is deficient because it does not identify and describe each and every communication DC ever had with Peary—including its "date," "type," and "subject matter."  *Supra* at 7.

Peary's complaint ignores DC's objections to the interrogatory as overbroad; it also ignores the unfair burden, recognized by law, that is imposed by responding to such requests.  Interrogatory No. 1 seeks "all COMMUNICATIONS" between DC

*Kernan*, 2010 WL 731860, at *2 (N.D. Cal. Mar. 1, 2010); *Kyte v. Progressive Nw. Ins. Co.*, 2004 WL 491886, at *2 (D. Alaska Mar. 9, 2004); *infra* at 28.

and Peary, *and is not limited in any way as to time or subject matter*. It, thus, seeks volumes of irrelevant information, such as what Levitz may have discussed with Peary at a movie premiere or pleasantries DC or its counsel may have shared with Peary at his deposition or a mediation session.

Such requests are improper. *E.g., Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 618 (N.D. Cal. 2006) (interrogatory requesting "all communications" between two co-defendant corporations are "overly broad"); *Benham v. Rice*, 238 F.R.D. 15, 26 (D.D.C. 2006) (sustaining overbroad objection to interrogatory requesting "all communications relating to the complaint"); *In re Herald, Primeo and Thema Funds Secs. Litig.*, 2011 WL 4056819, at *3 (S.D.N.Y. Sept. 8, 2011) (finding interrogatories requesting all communications between defendants to be "vastly overbroad" where the issue was establishing in personam jurisdiction and the requests were not limited to parties located in the relevant state); *Motorola, Inc. v. Lemko Corp.*, 2010 WL 4781844, at *2 (N.D. Ill. Nov. 17, 2010) (interrogatory seeking all communications between plaintiff and third party concerning the trade secrets at issue in the case was "vastly overbroad"); *Chen v. Hewlett-Packard Co.*, 2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all communications . . . related to power supply problems" was "hopelessly over-broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1995 WL 526533, at *4 (D. Kan. 1995) (interrogatory requesting all communications with persons from whom responding party received advice on a certain topic was overly broad on its face); *S.T. Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988) (interrogatory seeking all communications with an individual was "overly broad").

Had Peary narrowed his request in March—as DC invited him to do—and sought communications concerning specific subjects in which defendants were interested—say Superboy—DC could have done the required diligence on such questions and formulated and provided tailored responses months ago. Defendants chose not to go this course, likely because they did not want to be bound to provide

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

DC similarly detailed responses, as DC insisted. *Supra* at 10-11. In any event, starting two years ago, defendants could have deposed Levitz about all conversations that he had with Peary that Levitz could remember. *Cf.* Docket No. 262 at 6 (deposition can be used to obtain specifics not included in interrogatory responses). Defendants chose never to take that deposition. Levitz is the main person with whom Peary dealt at DC, as Peary well knows. Why defendants made the tactical choice not to depose Levitz for two years, why they unilaterally chose to cancel his deposition days before it was set to take place this week, and why they chose not to accept DC's offer to supplement its interrogatory responses in March, defendants only know. What is plain, however, is that their motion must be denied.

### ii. DC's Position On Interrogatory No. 2.

**Interrogatory No. 2**
IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele Peavy.

**Response to Interrogatory No. 2**
DC objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope, and to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as overbroad to the extent it encompasses the transmission of information orally, by telephone, or through gesture. DC also objects to the definition of "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:
DC00014-15, DCC00004186-DCC00004187, DCC00004191, DCC00006182-6184, DCC00006188-6190, DCC00006192-6194, DCC00006198,

DCC00006203-6207, DCC00006214-15, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6439, DCC00006441, DCC00006477-6492, DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630, DCC00006778, DCC00006869, DCC00008506-8507, DCC00057431-57447, DCC00057854, DCC00073008, DCC00073010, WB007959-7961, WB0010161-10162, WB010169-10170.  Representatives from Warner Bros. Entertainment Inc. and DC, including Paul Levitz, had non-written communications with Ms. Peavy over the years as well.

Again, Peary does not complain about the scores of written communications DC disclosed concerning his mother's communications with DC, but rather that DC did not list every oral communication it ever had with her.  This complaint fails to mention that Jean's body of possible communications with DC *dates back decades further* than her son's, and, thus, it is even more objectionable to ask DC to verify that it has listed "all COMMUNICATIONS" with her—without any limitation as to time or subject matter.  *E.g.*, *Benham*, 238 F.R.D. at 26; *supra* at 16.

Defendants have had in their possession for years almost 60 pieces of correspondence between Peavy and DC from just the 1992-2001 time-period.  Docket Nos. 460-1 at 8-24, 33-34, 36, 39-44, 46-69, 71, 74, 77-81; 460-2 at 218-39, 242-52.  Some of these letters mention oral discussions DC had with Jean, *e.g.*, Docket No. 460-1 at 33 ("Sorry we had to miss seeing you when Frank [and] I went in the [DC] office Oct. 2nd to sign the papers."); 460-1 at 28-29, and DC's interrogatory responses openly disclose that Levitz negotiated the 1992 Agreement with Jean and Frank, Arredondo Decl. Ex. C at 18-19.

If defendants had an interest in these conversations and negotiations, they could have drafted narrowed interrogatories that targeted them; asked DC to address those conversations as part of the meet-and-confer process in March (and as part of DC's supplemental responses); and/or deposed Levitz on each referenced conversation any time during the past two years.  *Defendants did none of this*, and instead made the tactical choice not to take any discovery for 19 months; made the tactical choice not to close the loop with DC on its offer to amend its interrogatory responses, and then made the tactical choice to rush to file this motion when DC moved for summary judgment.  *Supra* at 9-12.  This is too little, too late.  And, in any

1   event, defendants had DC's summary judgment papers, DC's amended interrogatory

2   responses, and Levitz's deposition to explore any issues they had.

3        **C.**     <u>**Defendants' Position on Interrogatory No. 5**</u>

4        Peary's fifth Interrogatory asked DC to "IDENTIFY all COMMUNCATIONS

5   between YOU AND any third-party that REFFERRED TO the 1992

6   AGREEMENT." This was a narrow, non-objectionable interrogatory directed at a

7   very specific topic – the short October 2, 1992 agreement between DC and Joe

8   Shuster's siblings, Jean Peavy and Frank Shuster (the "1992 Agreement"), which

9   raised the siblings pension by a few thousand dollars and contained a perfunctory

10  quitclaim.  *See* Arredondo Decl., Ex. D.  In the First Claim of its First Amended

11  Complaint ("FAC," Docket No. 49), DC alleges that this modest agreement

12  destroyed the Shuster estate's termination rights under section 304(d) of the

13  Copyright Act by revoking all of Joe Shusters' Superman copyright grants to DC and

14  then re-granting those rights to DC in a post-1978 grant that is not terminable under

15  the Act.   FAC ¶55.  DC makes this allegation even though the 1992 Agreement

16  contains no language of revocation or rescission whatsoever, and does not even

17  mention Superman.

18       Hence, defendants sought by Interrogatory No. 5 to test the enhanced status

19  and meaning DC attributed to this half-page 1992 Agreement by inquiring into third-

20  party communications regarding the Agreement.  This Interrogatory asked only about

21  DC's communications with regard to a single document, and then further limited the

22  inquiry to communications with third parties.  DC nonetheless claims that this

23  Interrogatory is not "narrowly tailored" enough and then attempts to evade any

24  meaningful response by literally pointing to the *entirety* of the record in both this

25  action and the *Siegel* actions:

26            DC objects to this Interrogatory on the grounds that it is
     indefinite as to time and not reasonably limited in scope, and to the

27            extent that it seeks the production of any item, or portion thereof,
     which is not reasonably calculated to lead to the discovery of relevant

28            and admissible evidence. DC further objects to the extent that it seeks

information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC objects to the phrase "COMMUNICATIONS between YOU AND any third-party" as overbroad, as it would include, for example, all statements made to the court, mediators, and to the press concerning the 1992 agreement and DC's claims in this case concerning that agreement. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, **DC refers defendants' attention to** its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the *Siegel* action** (*e.g.*,

DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases and here**. **All of these sources are incorporated by reference herein.**

Subject to and without waiving the foregoing objections, DC is willing to meet and confer with defendants to reasonably tailor this request.

(emphasis added).

DC's reference here to the entire record in three legal actions does not answer the Interrogatory in any intelligible fashion. Indeed, citing to the records of multiple cases is equivalent to offering no response at all. *Landon v. Ernst & Young LLP*, 2009 U.S. Dist. LEXIS 119387, 7-8 (N.D. Cal. Dec. 2 2009) (rejecting responses that include reference to entire production in related matter); *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal 1999). The cited materials in the record are not responsive to the Interrogatory, and DC's efforts to evade responding by citing to thousands of pages of irrelevant materials is wholly improper. DC should be compelled to directly and specifically answer Peary's Interrogatory No. 5.

### D.   DC's Position On Interrogatory No. 5

Defendants' complaints about Interrogatory No. 5 are similarly without merit, and their motion on it can and should be denied because of their failure to meet and confer, *supra* at 14-15, and because DC's responses were appropriate. No. 5 requests "all COMMUNICATIONS" between DC and "any third party" that "REFER[]" to the 1992 Agreement. Arredondo Decl. Ex. C at 17. No. 5 does not define what is meant by "third-party," nor did defendants' March 8, 2012, meet-and-confer letter, which just made the circular argument that this was a proper request—and did not explain what information it truly sought. *Id.* Ex. A at 2-4.

Defendants now feign outrage that DC's response to No. 5 points defendants to briefs, other communications with third parties, and the discovery record in the *Siegel* and *Shuster* case, where DC in fact mentioned or might have mentioned the 1992 Agreement to third parties. *Supra* at 19-21. But what DC did, in the time allotted to

respond, was to explain to defendants this request was overbroad and that it would meet and confer with defendants on ways to understand and narrow it.  DC also tried to point defendants to pleadings in which it discussed with "third parties" (including the courts) its rights under the 1992 Agreement, so that defendants could not claim they were ignorant of DC's claimed legal entitlements.  Indeed, as DC explained in its March 2012 letter—*without any response from defendants*:

> Defendants suggest that DC's response to Interrogatory No. 5 is deficient because DC identified too many documents.  First, defendants ignore DC's objections to the interrogatory as being vague, overbroad, and unduly burdensome.  Second, Interrogatory No. 5 requests that DC identify "*all* COMMUNICATIONS" with third parties that refer to the 1992 Agreement.  Peary Interrogatory No. 5.  In the time allowed, DC endeavored to identify all responsive documents, but now defendants suggest that the "all" DC sought to provide was too much, and it was not "all" that defendants really wanted despite asking for it.  *DC remains willing to meet and confer on this request, if you wish to do so.*  Arredondo Decl. Ex. B at 6 (emphasis added).

As the case law makes clear, DC's objections to this request were fully proper. *E.g., Motorola*, 2010 WL 4781844, at *2 (interrogatory seeking all communications between plaintiff and third party concerning the trade secrets at issue in the case was "vastly overbroad"); *Chen*, 2005 WL 1388016, at *1 (interrogatory requesting "all communications . . . related to power supply problems" was "hopelessly over-broad"); *Pulsecard*, 1995 WL 526533, at *4 (interrogatory requesting all communications with persons from whom responding party received advice on a certain topic was overly broad on its face); *supra* at 6.[6]

---

[6] Defendants cite three cases that they say hold that DC's responses are unintelligible because they point defendants to briefing and the record in this case and *Siegel*.  *Supra* at 21.  None of their cases so hold.  *E.g., Walker v. Lakewood Condo Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999), involved numerosity concerns, not the sufficiency of interrogatory responses.  In both *Landon v. Ernst & Young LLP*, 2009 U.S. Dist. LEXIS 119387, *7-8 (N.D. Cal. Dec. 2, 2009), and *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000), the court found that pointing to the record was non-responsive.  Here, DC's response *is* responsive to Peary's request, which calls for "any reference" in third-party communications to the 1992 Agreement.  DC did its best to meet that wide-open demand, and also to prevent defendants from making "gotcha" arguments in the future.

Finally, defendants' discovery motion challenges DC's reading, under copyright and contract law, of the import of the 1992 Agreement on the Shuster Termination Notice. *Supra* at 19. DC refutes these arguments in its summary judgment papers, Docket No. 458 at 1-2, 10-18, and refuted them in its Rule 12 papers, before that, Docket No. 334 at 5-10. In any event, DC's motion for summary judgment, now pending before Judge Wright, will resolve these arguments.

### E.   Defendants' Position On Interrogatories Nos. 9-15

DC responds in a similarly improper manner to Interrogatories Nos. 9-15. All of these Interrogatories were "contention interrogatories," properly aimed at identifying the evidence supporting DC's claims and allegations in its Complaint:

**Interrogatory No. 9**

IDENTIFY any evidence that supports YOUR contention that "[t]he Shuster Termination Notice is invalid, and thus ineffective," found in paragraph 106 of YOUR COMPLAINT.

**Interrogatory No. 10**

IDENTIFY any evidence that supports YOUR contention that "[t]he 1992 Agreement that Frank Shuster and Jean Peavy entered into with DC Comics bars the Shuster Estate from pursuing termination because, *inter alia*, in exchange for valuable consideration, the 1992 Agreement effected a rescission, revocation, and re-grant of all prior copyright grants, which eliminated any pre-1978 grant that could be subject to termination under section 304 of the Copyright Act," found in paragraph 112 of YOUR COMPLAINT.

**Interrogatory No. 11**

IDENTIFY any evidence that supports YOUR contention that "Shuster's heirs approached DC Comics in 1992 seeking increased annual payments, certain tax benefits, and payment of Shuster's debts and expenses," and that "[a]t the time, Shuster's heirs recognized the value of Superman as a property," found in paragraph 115 of YOUR COMPLAINT.

**Interrogatory No. 12**

IDENTIFY any evidence that supports YOUR contention that "the Shusters are estopped from disputing that the 1992 Agreement remains in full force and effect, which operates to preclude the assertion of any termination right," found in paragraph 117 of YOUR COMPLAINT.

**Interrogatory No. 13**

IDENTIFY any evidence that supports YOUR contention that
purported "omissions [in the Shuster Termination Notice] were not
inadvertent, but were intended to conceal material information from
DC Comics, including: (a) the various conflicts of interest arising
from Toberoff's and his companies' significant ownership interest in
the Shuster Estate's and the Siegel Heirs' purported rights; and (b)
consent agreements that Toberoff procured limiting the Shuster and
Siegel Heirs' freedom to enter into agreements with DC Comics
regarding those rights," found in paragraph 123 of YOUR
COMPLAINT.

**Interrogatory No. 14**

IDENTIFY any evidence that supports YOUR contention that "the
Shuster Termination Notice … contains material misrepresentations
intended to mislead the courts, Copyright Office, and DC Comics—all
to the detriment of DC Comics," found in paragraph 129 of YOUR
COMPLAINT.

**Interrogatory No. 15**

IDENTIFY any evidence that supports YOUR contention that
"[i]nduced by Toberoff, the Shuster Heirs also falsely disclaimed any
interest in the Superboy rights in the Shuster Termination Notice,"
found in paragraph 131 of YOUR COMPLAINT.

After cutting and pasting its repeated block of boilerplate objections and

pointing to a handful of questionably relevant materials, DC's answers to each of

these Interrogatories Nos. 9-15 again refers defendants to literally every document

filed and produced in both this action and in the *Siegel* actions.  Below is as verbatim

reproduction of DC's response to Interrogatory No. 11, which is representative of the

evasive tactic DC took in answering all of Peary's contention interrogatories:

> DC objects to the Interrogatory to the extent that it requires DC
> to prove through the discovery process its ultimate legal arguments
> related to the ramifications of defendants' agreements and
> communications. DC further objects to the Interrogatory on the
> ground that it is compound and includes numerous discrete subparts
> addressed to separate contentions. Each subpart should be counted a
> separate interrogatory for the purposes of calculating the number of
> interrogatories that Peary has propounded on DC. DC objects to this
> Interrogatory to the extent that it seeks information protected by the

attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.

Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00008-12, DC00014-15, DC00094-144, DCC00006184, DCC00006188-6190, DCC00006192-94, DCC00006198, DCC00006203-05, DCC00006206-07, DCC00006214-15, DCC00006372-73, DCC00006375-76, DCC00006399, DCC00006413-41, DCC00006448, DCC00006462, DCC00006474, DCC00006477-92, DCC00006495-96, DCC00006498, DCC00006607-18, DCC00006620, DCC00006629-30, DCC00006775-78, DCC00006855-56, DCC00006867, DCC00006869, DCC00006872-79, DCC00008506-07, DCC00057854, DCC00057855, DCC00073008, DCC00073010, DCC00073012-17, WB005603, WB007959-61, WB007972, WB010169-70, WB010161-10162, Q0001-07, LSL00211-12, LSL00482-86.

Subject to and without waiving all foregoing objections, **DC refers defendants' attention to** its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**— including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1

to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the Siegel action** (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases** and here. **All of these sources are incorporated by reference herein**.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

(emphases added).[7]

These answers are wholly improper. Defendants' Interrogatories No. 9-15 were geared towards the most natural of questions: what is the evidence that Plaintiff relies upon for certain contentions in its complaint? DC's responses, which again incorporate by reference the *entirety* of the record in two lawsuits are, as noted above, equivalent to offering no responses at all. *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8.

DC gives the illusion of specificity by citing some Bates numbers but then entirely defeats the purpose of these contention interrogatories by *co-mingling* these cites with the entire production and record in two litigations. *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005) (interrogatory responses that "merely refer to every document . . . defeat the purpose of a contention interrogatory [which is] to . . put a party on notice of its opponent's contentions and the evidence on which it relies."); *Williams v. Sprint/United Management Co.*, 235 F.R.D. 494, 501 (D.Kan. 2006) ("Plaintiffs may not answer the interrogatory by generally referring Defendant to the ... documents produced ... but rather must indicate with specificity where the information can be found.").

---

[7] *See* Arredondo Decl., Ex. C at 12-36 for DC's similar responses to Interrogatories, Nos. 9-10, 12-15.

In *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012), the court rejected a party's interrogatory response which stated that "[o]ther emails previously produced may also [be responsive]." Here, DC points not only to every email produced, but to every document of any kind produced in two long-running litigations.

DC's improper responses are designed not only to evade providing any meaningful answers, but also to misdirect and misinform. Many of the documents DC specifically points to and lists by Bates number are palpably irrelevant to the interrogatory in question. For example, Interrogatory No. 11 asked DC to identify any evidence that supported its contention that "Shuster's heirs approached DC Comics in *1992* seeking increased annual payments, certain tax benefits, and payment of Shuster's debts and expenses," and that "*[a]t the time*, Shuster's heirs recognized the value of Superman as a property." DC's Response points to a host of irrelevant and non-responsive documents and letters from 1996-1997 (DCC00006607-18, DCC00006620, DCC000029), years after the specified time period. It even cited a 1997 holiday card (DCC00006630) and a brief letter regarding the family's request for a tape of a memorial service (DCC00006630).

Thus, DC's answers are worse than meaningless in that they not only point to the entire universe of documents and the record in two litigations, they also misleadingly point specifically to purportedly responsive documents that are wholly irrelevant.

Defendants are entitled to know, with specificity, what evidence DC relies upon in making its claims and allegations.

## F.    DC's Position On Interrogatories Nos. 9-15

Peary is on even weaker ground in moving on Nos. 9-15. His March 2012 Rule 37 *never* mentions these interrogatories by number or states an intention to move on them. Arredondo Decl. Ex. A 2-4. Indeed, DC's response letter in March could only hazard a guess that these might be responses about which defendants complained. *Id*. Ex. B at 7. This Court denied a part of one of DC's motions to

compel because DC's Rule 37 letter mentioned *categories* of problematic

interrogatory responses defendants served, but not several of the *specific numbered*

*requests* on which DC moved.  Docket No. 262 at 6.  That rule—which the Court

applied even though DC raised the specific numbered interrogatory responses during

the follow-up Rule 37 meet-and-confer-call, Docket Nos. 206 at 1-15; 207-12 at 487-

93; 262 at 6—must apply to Peary as well and bar his motion.  Indeed, defendants'

failure to withdraw its motion on these requests—unlike its choice to withdraw its

motion on Interrogatory Nos. 3 and 4, *supra* at 13—is especially problematic.

Having been served with DC's opposition, Peary unquestionably knew of his meet-

and-confer failures on these seven interrogatories and pressed ahead, nonetheless. *Cf.*

*Franklin v. Allstate Corp.*, 2008 WL 590508, at *1-2 (N.D. Cal. Feb. 29, 2008)

(sanctioning party that did "not adequately meet and confer in an attempt to obviate

[discovery] dispute").

No matter Peary's meet-and-confer failures, all seven requests on which he

moves are also improper on their face.  Each demands that DC "IDENTIFY any

evidence" that supports a series of its contentions.  *Supra* at 23-24.  Such all-

encompassing, "blockbuster" discovery requests are "overly broad," "unduly

burdensome," and "an abuse of the discovery process."  *Hilt v. SFC., Inc.*, 170 F.R.D.

182, 186-87 (D. Kan. 1997); *Kim v. City of Santa Clara*, 2009 WL 4021389, at *2-3

(N.D. Cal. Nov. 19, 2009) (denying motion to compel further answers to

interrogatories asking for "all facts"); *Bashkin v. San Diego Cnty.*, 2011 U.S. Dist.

LEXIS 3439, at *4-6 (S.D. Cal. Jan. 13, 2011) ("parties are not entitled to each and

every detail that could possibly exist in the universe of facts…. [n]or [are they]

entitled to a narrative account of [the responding party's] case" ); *Olson v. City of*

*Bainbridge Island*, 2009 WL 1770132, at *4 (W.D. Wash. June 18, 2009).

Peary's motion is also inappropriate given the posture of the case.  *If ever*

*proper*, contention interrogatories are meant to narrow issues for trial, and, thus, may

be served *only* when discovery is "substantially completed."  *Lucero v. Valdez*, 240

F.R.D. 591, 594 (D.N.M. 2007) (granting motion to compel answers to contention

interrogatories where they did not request "each and every fact," and discovery was

set to close 10 days after court issued order); *see Kim*, 2009 WL 4021389, at *2-3

("no point in forcing [party]" to respond to contention interrogatories "until discovery

regarding the incident is complete or nearly so"); FED. R. CIV. P. 33(a)(2); *Johnson v.*

*Couturier*, 261 F.R.D. 188, 192 (E.D. Cal. 2009).

Finally, when one studies each of the seven interrogatories on its own, as the

rules require—rather than in the mass that Peary lumps them, *supra* at 15, there are

additional, specific grounds to deny defendants' motion on each request, as shown

below.

### i.  DC's Position On Interrogatory No. 9.

**Interrogatory No. 9**
IDENTIFY any evidence that supports YOUR contention that "[t]he Shuster
Termination Notice is invalid, and thus ineffective," found in paragraph 106 of
YOUR COMPLAINT.

**Response to Interrogatory No. 9**
DC objects to the Interrogatory to the extent it requires DC to prove through
the discovery process its ultimate legal arguments related to the ramifications of
defendants' agreements and communications.  DC objects to the Interrogatory on
the ground that it is compound and includes numerous discrete subparts that
should each be counted as a separate interrogatory for the purposes of calculating
the number of interrogatories that Peary has propounded on DC.  DC articulated
five separate bases for the invalidity of the Shuster Termination Notice in its
complaint (Docket No. 49 ¶¶ 105-134), and discovery must accordingly be
addressed to each basis individually.  DC objects to the Interrogatory to the
extent it seeks information protected by the attorney-client privilege, the attorney
work product doctrine, or any other applicable privilege or immunity.  DC
further objects to the extent this Interrogatory seeks documents that defendants
have refused to produce in response to discovery served by DC, including but
not limited to the 2008 "consent agreement" defendants continue to refuse to
disclose.
DC objects to the definition of "YOUR" and will respond to that term as
limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
DC objects to the use of the term "any" evidence on the ground that such request
is vague, overly broad, unduly burdensome, oppressive, and not reasonably
calculated to lead to the discovery of admissible evidence.  DC does not object to
or withhold any information based on the definition of "IDENTIFY," as this
definition mirrors in large part language that DC employed in its own discovery
requests.  Defendants previously objected to this same language in DC's requests
as impermissibly overbroad.  Based on defendants' tacit acknowledgement that

DC's use of this term is proper, DC will answer this discovery and has confirmed
with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as
follows:

DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336,
DCC00004510-4520, DCC00006188-6190, DCC00006192-6194,
DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-
6215, DCC00006372-6373, DCC00006375-6376, DCC00006399,
DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474,
DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-
6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856,
DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159,
DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965,
DCC00007990-8024, DCC00008506-8507, DCC00045603-45626,
DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008,
DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525,
WB000670-3453, WB005709-5766, WB006588-6602, WB007959-7961,
WB007972, WB008050-8053, WB008305-8316, WB009991-10003,
WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07,
LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers
defendants' attention to its complaint and attached exhibit (Docket No. 49,
Docket No. 49 Ex. A), all briefing in this action—including, but not limited to,
the briefing and exhibits filed in connection with defendants' Rule 12 and
SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to
33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to
78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to
98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107,
108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150,
151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186,
191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-
1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-
1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13,
335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g.,
DCC00000001-154435 and WB000001-149488)—including, but not limited to,
all deposition testimony in those cases and here.  All of these sources are
incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet
begun, DC expressly reserves its right to supplement these Responses as more
information becomes available, and to use in discovery and at trial any
information omitted from these Responses as a result of mistake, inadvertence,
or oversight.

Peary complains that DC's response provides too much information—by not
only citing a large block of documentary evidence,[8] but also to briefs DC has filed on

---

[8] DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336, DCC00004510-4520,
DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205,

the contention at issue—*the grounds for DC's First Claim*—as well as the discovery record generally.  Such an answer is hardly surprising given the capacious and premature nature of Peary's request.  To take one example, one ground DC cites that the "Shuster Termination Notice is invalid" under its First Claim is defendants' unclean hands.  Discovery on this issues is months away from being complete, given the delay defendants' caused in this case with their several successive (and all failed) writ petitions before the Ninth Circuit, *e.g.*, Docket Nos. 162-17, 163, 163-1, and their untenable position that witnesses may only be deposed once and only once— even if new relevant documents emerge, *e.g.*, Docket No. 366.  If defendants are concerned about the "1992 Agreement" ground that is a part of DC's First Claim, that issue has been framed by DC's summary judgment motion, and DC has amended its interrogatory responses accordingly.  Peary could have also asked Levitz about any evidence cited in DC's motion at the deposition Peary cancelled.  *Supra* at 14.

DC is not required in responding to this or any other interrogatory to describe "every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents," *Lucero*, 240 F.R.D. at 594, as Peary wrongly contends. The cases Peary cites—where responding parties merely pointed moving parties to every document in the case[9]—are off point for two reasons.  First, in all of the

DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-8316, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

[9] *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012) (responding party referred to "[o]ther emails previously produced," but did not provide identifying information such as bates numbers); *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8 (generally referring to discovery in related action but providing no details about the discovery); *Pac. Lumber Co.*

1   responses at issue here, DC pointed defendants to specific, concrete evidence to

2   review.  Second, given the overbreadth of defendants' requests, DC *also* pointed to

3   its pleadings and the discovery record generally to avoid claims of "gotcha" by

4   defendants, in case DC's current responses did not identify every conceivable

5   document among tens of thousands, early in discovery, that might become relevant.

6   Defendants' have the needed roadmap to test DC's claims on which DC moved for

7   summary judgment; that evidence is cited in its motion, and defendants could have

8   questioned DC's 30(b)(6) witness on it.

9                    ii.  DC's Position On Interrogatory No. 10.

10  **Interrogatory No. 10**

11      IDENTIFY any evidence that supports YOUR contention that "[t]he 1992
    Agreement that Frank Shuster and Jean Peavy entered into with DC Comics bars

12  the Shuster Estate from pursuing termination because, inter alia, in exchange for
    valuable consideration, the 1992 Agreement effected a rescission, revocation,

13  and re-grant of all prior copyright grants, which eliminated any pre-1978 grant

14  that could be subject to termination under section 304 of the Copyright Act,"
    found in paragraph 112 of YOUR COMPLAINT.

15  **Response to Interrogatory No. 10**

16      DC objects to the Interrogatory to the extent that it requires DC to prove
    through the discovery process its ultimate legal arguments related to the

17  ramifications of defendants' agreements and communications.  DC further
    objects to this Interrogatory to the extent that it seeks information protected by

18  the attorney-client privilege, the attorney work product doctrine, or any other
    applicable privilege or immunity.

19      DC objects to the definition of "YOUR" and will respond to that term as

20  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
    DC objects to the use of the term "any" evidence on the ground that such request

21  is vague, overly broad, unduly burdensome, oppressive, and not reasonably
    calculated to lead to the discovery of admissible evidence.  DC does not object to

22  or withhold any information based on the definition of "IDENTIFY," as this
    definition mirrors in large part language that DC employed in its own discovery

23  requests.  Defendants previously objected to this same language in DC's requests

24  as impermissibly overbroad.  Based on defendants' tacit acknowledgement that

25

26  _____

27  *v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005)
    (response referred to "every document and every injury alleged by any … plaintiff (and

28  some plaintiffs from other, unrelated litigation)"); *Williams v. Sprint/United Mgmt. Co.*, 235
    F.R.D. 494, 501 (D. Kan. 2006) (response referred to all pleadings in the case and
    documents produced, and did not refer to specific documents or briefing).

DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DCC00006-7, DC00014-15, DCC00000557-3336, DCC00006184, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005603, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 10 fail for the same reasons as No. 9.  DC appropriately responded to this premature, overbroad request for "any evidence" by citing to specific documents and briefing in this case

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

1    that relate to the enforceability and effect of the 1992 Agreement.  Defendants knew

2    since *May 2010* that DC sought to enforce the 1992 Agreement in its First Claim,

3    Docket No. 1 at ¶¶ 99-104, and DC advised defendants in *September 2010* that Levitz

4    possessed relevant knowledge.  *Supra* at 9.  Defendants knew *six months ago* that DC

5    intended to move for summary judgment to enforce the 1992 Agreement.  Seto Decl.

6    Ex. 17 at 89.  And defendants knew from DC's Rule 12 briefing that DC was relying

7    on Jean and Frank's communications with Levitz to support this claim.  *E.g.,* Docket

8    Nos. 89 at 1-13; 186 at 1-13; 334 at 2-10.  Still defendants still did nothing to pursue

9    this issue—either following up on this request in the meet-and-confer process, or

10   deposing Levitz—until DC said it filing its summary judgment papers shortly.  *Supra*

11   at 9-12.  Such lack of diligence cannot be rewarded.

12                    iii.  DC's Position On Interrogatory No. 11.

13          Peary's complaints about DC's response to Interrogatory No. 11 are equally

14   unfounded.  DC's interrogatory response and summary judgment motion cites and

15   identifies the evidence it relies on for the factual propositions about why Jean and

16   Frank approached DC in 1992 and what they knew about Superman's value at the

17   time.  *Supra* at 24-26 (citing, *e.g.*, Aug. 21, 1992, Jean letter to Payson

18   (DCC0006477-92); Aug. 21, 1992, Levitz letter to Frank (DCC00006462); Sept. 8,

19   1992, Levitz letter to Frank (DCC00006495); Sept. 15, 1992, Peary letter to Levitz

20   (DCC006855-56); Agreement dated as of Aug. 1, 1992 (DCC0057854); Oct. 2, 1992,

21   Frank letter to Levitz (WB007972); Oct. 12, 1992, Levitz letter to Jean and Frank

22   (DCC00006441)); Docket Nos. 458 at 5-7; 460 at ¶¶ 5-9; 460-1 at 9-12, 26-27, 30-

23   32, 34 (citing Aug. 21, 1992, Jean letter to Payson; Aug. 21, 1992, Levitz letter to

24   Frank; Sept. 8, 1992, Levitz letter to Frank; Sept. 15, 1992, Peary Letter to Levitz;

25   Agreement dated as of Aug. 1, 1992; Oct. 2, 1992, Frank letter to Levitz; Oct. 12,

26   1992, Levitz letter to Jean and Frank).

27          None of this evidence can come as a surprise to defendants.  It all comes from

28   Jean's and Frank's *own letters to DC*, in which they explained why they approached

1  DC in 1992.  *Id.*  Or it comes from Peary's own admissions at his deposition, where

2  he testified about his family's knowledge of the value of Superman in 1992.  Docket

3  No. 305-37 at 1256:8-17.

4      Peary accuses DC of seeking to "misdirect" or "misinform" defendants by

5  citing in its answer to No. 11 certain post-1992 documents.  *Supra* at 27.  This misses

6  the mark.  Defendants *never raised this issue* in their Rule 37 letter or call in

7  March—or in the four months since.  Arredondo Decl. Exs. A at 2-4; B at 5-8; Seto

8  Decl. ¶ 9.  Had they raised the issue, DC could have addressed any concern, and, in

9  fact, has now amended its response to Interrogatory No. 11 to address it.  Seto Decl.

10  Ex. 18 at 111-13.

11              iv.  DC's Position On Interrogatory No. 12.

12      **Interrogatory No. 12**
       IDENTIFY any evidence that supports YOUR contention that "the Shusters

13  are estopped from disputing that the 1992 Agreement remains in full force and
    effect, which operates to preclude the assertion of any termination right," found

14  in paragraph 117 of YOUR COMPLAINT.

15  **Response to Interrogatory No. 12**
       DC objects to the Interrogatory to the extent that it requires DC to prove

16  through the discovery process its ultimate legal arguments related to the
    ramifications of defendants' agreements and communications.  DC further

17  objects to this Interrogatory to the extent that it seeks information protected by
    the attorney-client privilege, the attorney work product doctrine, or any other

18  applicable privilege or immunity.
       DC objects to the definition of "YOUR" and will respond to that term as

19  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
    DC objects to the use of the term "any" evidence on the ground that such request

20  is vague, overly broad, unduly burdensome, oppressive, and not reasonably
    calculated to lead to the discovery of admissible evidence.  DC does not object to

21  or withhold any information based on the definition of "IDENTIFY," as this
    definition mirrors in large part language that DC employed in its own discovery

22  requests.  Defendants previously objected to this same language in DC's requests
    as impermissibly overbroad.  Based on defendants' tacit acknowledgement that

23  DC's use of this term is proper, DC will answer this discovery and has confirmed
    with defendants that they will do the same.

24      Subject to and without waiving the foregoing objections, DC responds as
    follows:

25      DC00008-12, DC00014-15, DC00094-144, DCC00000557-3336,
    DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-

26  6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373,
    DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448,

27  DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496,
    DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-

28  6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-

35

6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-8024, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005603, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 12 fail for the same reasons as Interrogatory Nos. 9 and 10.

### v.  DC's Position On Interrogatory No. 13.

**Interrogatory No. 13**

IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were intended to conceal material information from DC Comics, including: (a) the various conflicts of interest arising from Toberoff's and his companies' significant ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

**Response to Interrogatory No. 13**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC also objects to the extent the Interrogatory calls for information which is not available to DC.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to

produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-7, DC00014-15, DCC00000557-3336, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00056945-56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, IPW00001-00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8053, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

For the same reasons DC's response to Interrogatory Nos. 9-11 are appropriate, so too is DC's response to No. 13. More importantly, this contention includes a key set of issues (especially concerning Toberoff's misconduct) on which discovery is still just underway (including depositions of Toberoff and his three companies). *Cf. Kim*, 2009 WL 4021389, at *2-3 ("no point in forcing [party]" to respond to

contention interrogatories "until discovery regarding the incident is complete or nearly so"); *accord* FED. R. CIV. P. 33(a)(2); *Johnson*, 261 F.R.D. at 192.

vi.  DC's Position On Interrogatory No. 14.

**Interrogatory No. 14**

IDENTIFY any evidence that supports YOUR contention that "the Shuster Termination Notice … contains material misrepresentations intended to mislead the courts, Copyright Office, and DC Comics—all to the detriment of DC Comics," found in paragraph 129 of YOUR COMPLAINT.

**Response to Interrogatory No. 14**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC also objects to the extent the Interrogatory calls for information which is not available to DC.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgment that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-7, DC00008-12, DCC00000557-3336, DCC00004510-4520, DCC00007102-7159, DCC00007147-7159, SM No. 1, DCC00007183-7198, DCC00007826-7837, DCC00045557-45591, DCC00045603-45613, DCC00056945-56950, DCC00057538-57550, DCC0006849-6854, DCC00089361-89365, DCC000141525, DCC00141359-141364, DCC00141525, DCC00141565-141572, DCC00142156-142342, IPW00001-00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8059, WB008305-8316, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150,

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 14 fail for the same reason his complaints about No. 10 do.  Also, as with No. 10, the issue here is teed up in DC's summary judgment motion, Docket No. 458 at 18-20, which discusses the same evidence DC mentioned in its interrogatory response.  *Compare* Docket Nos. 458 at 18-20; 459-3 at 266-69, 291-94; 459-6 at 427-33 (citing, *e.g.*, 2001 PPC Agreement; 2003 PPC Agreement), *with supra* at 38-39 (citing, *e.g.*, 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement (PPC00001-4)).

**Interrogatory No. 15**
IDENTIFY any evidence that supports YOUR contention that "[i]nduced by Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights in the Shuster Termination Notice," found in paragraph 131 of YOUR COMPLAINT.

**Response to Interrogatory No. 15**
DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

39

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-5, DC00008-12, DCC00000557-3336, DCC00004510-20, DCC00007102-7159, DCC00007147-7159, DCC00007183-7198, DCC00007826-7837, DCC00045557-45591, DCC00045603-45613, DCC00056945-56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, DCC00142156-142342, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8053, WB008305-8316, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486, SGL000003529-3237.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaint here fails for the same reason as does his complaint about Interrogatory No. 13.  DC's complaint, Rule 12 briefing, and interrogatory response all identified specific documents and evidence that supports its claim that Toberoff induced the Shusters to disclaim their interest in the Superboy rights.  Docket Nos. 49 at ¶¶ 86-91 & Ex. A; 334 at 17-21; *supra* at 39-40 (citing, *e.g.*, Superboy Script (DCC00007147-59); May 31, 1942, Superman strip (DCC00141525); Toberoff Timeline (Q0001-07); 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement (PPC00001-4)).  This includes comic books, comic book scripts, copyright renewal notices Shuster and Siegel filed, the progression of the Pacific Pictures Agreements, and Peary's deposition admissions.  *Id*.  The "Superboy fraud" will be a key area of discovery as DC finally gets a chance to depose Toberoff and a 30(b)(6) witness for

Pacific Pictures. Defendants' motion on this response is particularly premature. *See Kim*, 2009 WL 4021389, at *2-3.

## IV.   DEFENDANTS' CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant it's motion to compel interrogatory responses.

## V.   DC'S CONCLUSION

For many reasons—chief among them Peary's failure to meet and confer—defendants' motion should be denied. Because defendants "did not adequately meet and confer in an attempt to obviate this dispute," they should have to pay DC's reasonable fees and costs on this motion. *Franklin v. Allstate Corp.*, 2008 WL 590508, at *1-2 (N.D. Cal. Feb. 29, 2008).

Dated:   July 24, 2012           Respectfully Submitted,

                                 TOBEROFF & ASSOCIATES

                                 By:  /s/ Marc Toberoff

                                 Marc Toberoff
                                 Attorneys for Defendants Laura Siegel
                                 Larson, Mark Warren Peary, and Jean
                                 Adele Peavy

Dated:   July 24, 2012           Respectfully Submitted,

                                 O'MELVENY & MEYERS, LLP

                                 By:  /s/ Daniel M. Petrocelli

                                 Daniel M. Petrocelli
                                 Attorneys for Plaintiff DC Comics

OMM_US:70782453