# EXHIBIT 1

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
      pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| DC COMICS, | Case No. CV-10-3633 ODW (RZx) |
| Plaintiff, | **PLAINTIFF DC COMICS' INITIAL DISCLOSURES** |
| v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | **Judge**:      Hon. Otis D. Wright II |
| | **Magistrate**:  Hon. Ralph Zarefsky |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff DC Comics, by and through its counsel of record, hereby makes the following initial disclosures. The information disclosed herein represents only the information currently known and available to DC Comics following a reasonable and diligent investigation.  By making these disclosures, DC Comics does not represent that it is identifying all documents, information, tangible things, or witnesses possibly relevant to this lawsuit.  These disclosures represent a good-faith effort to identify information DC Comics believes is discoverable and relevant as required by Rule 26(a)(1).  DC Comics reserves the right to supplement or revise these initial disclosures and to rely upon additional documents, information, tangible things, and witnesses that become known to DC Comics after further investigation or discovery to support its claims and positions in this action.  By providing these initial disclosures, DC Comics does not waive any applicable privilege or protection, its right to object to the use of any information identified herein in this or any other proceeding, or its right to object to discovery requests that include the categories of documents listed below as unduly burdensome, overbroad, or for any other reason.

## I.    DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(i).

Pursuant to Rule 26(a)(1)(A)(i), DC Comics identifies the following individuals likely to have discoverable information that DC Comics may use to support its claims or positions in this action, other than solely for purposes of impeachment.  (Discovery from certain witnesses may be limited due to privilege, work product, or other protections.)

### A.    Defendant Marc Toberoff

1.    Contact Information:  2049 Century Park East, Suite 2720, Los Angeles, CA 90067; (310) 246-3333

2.    Subjects:  Mr. Toberoff may have information regarding all claims and defenses.

**B.**   **Defendant Mark Peary**

    1.   Contact Information:  c/o Marc Toberoff, 2049 Century Park East, Suite 2720, Los Angeles, CA 90067; (310) 246-3333

    2.   Subjects:  Mr. Peary may have information regarding all claims and defenses.

**C.**   **Defendant Joanne Siegel**

    1.   Contact Information:  c/o Marc Toberoff, 2049 Century Park East, Suite 2720, Los Angeles, CA 90067; (310) 246-3333

    2.   Subjects:  Ms. Siegel may have information regarding all claims and defenses.

**D.**   **Defendant Laura Siegel Larson**

    1.   Contact Information:  c/o Marc Toberoff, 2049 Century Park East, Suite 2720, Los Angeles, CA 90067; (310) 246-3333

    2.   Subjects:  Ms. Larson may have information regarding all claims and defenses.

**E.**   **Defendant Jean Peavy**

    1.   Contact Information:  c/o Marc Toberoff, 2049 Century Park East, Suite 2720, Los Angeles, CA 90067; (310) 246-3333

    2.   Subjects:  Ms. Peavy may have information regarding all claims and defenses.

**F.**   **Dawn Peavy**

    1.   Contact Information:  Ms. Peavy's contact information is presently unknown to DC Comics.

    2.   Subjects:  Ms. Peavy may have information regarding all claims and defenses.

**G.**   **Dennis Larson**

    1.   Contact Information:  Mr. Larson's contact information is presently unknown to DC Comics.

PLAINTIFF DC COMICS'
INITIAL DISCLOSURES

**EXHIBIT 1**
**8**

2. <u>Subjects</u>:  Mr. Larson may have information regarding all claims and defenses.

**H.   Don Bulson**

1. <u>Contact Information</u>:  Mr. Bulson's contact information is presently unknown to DC Comics.

2. <u>Subjects</u>:  Mr. Bulson may have information regarding all claims and defenses.

**I.   Ari Emanuel**

1. <u>Contact Information</u>:  Mr. Emanuel's contact information is presently unknown to DC Comics.

2. <u>Subjects</u>:  Mr. Emanuel may have information regarding all allegations against defendants IP Worldwide, LLC and Marc Toberoff.

**J.   Kevin Marks**

1. <u>Contact Information</u>:  132 South Rodeo Drive, Beverly Hills, CA 90212; (310) 777-4800

2. <u>Subjects</u>:  Mr. Marks may have information regarding the 2001 settlement agreement between the Siegels and DC Comics.

**K.   Paul Levitz**

1. <u>Contact Information</u>:  Mr. Levitz may be contacted through counsel for DC Comics.

2. <u>Subjects</u>:  Mr. Levitz may have information regarding the creation and development of Superman and Superboy; DC Comics' relationship with the Siegel and Shuster families; the 1992 agreement between the Shusters and DC Comics; and the 2001 settlement agreement between the Siegels and DC Comics.

**L.**    **Martin Payson**

    1.    <u>Contact Information</u>:  Mr. Payson may be contacted through counsel for DC Comics.

    2.    <u>Subjects</u>:  Mr. Payson may have information regarding the 1992 agreement between the Shusters and DC Comics.

**M.**    **Lillian Laserson**

    1.    <u>Contact Information</u>:  Ms. Laserson may be contacted through counsel for DC Comics.

    2.    <u>Subjects</u>:  Ms. Laserson may have information regarding the 1992 agreement between the Shusters and DC Comics.

**N.**    **John Schulman**

    1.    <u>Contact Information</u>:  Mr. Schulman may be contacted through counsel for DC Comics.

    2.    <u>Subjects</u>:  Mr. Schulman may have information regarding the 2001 settlement agreement between the Siegels and DC Comics.

**O.**    **Steven Spira**

    1.    <u>Contact Information</u>:  Mr. Spira may be contacted through counsel for DC Comics.

    2.    <u>Subjects</u>:  Mr. Spira may have information regarding defendant Marc Toberoff's relationship with the Siegels.

**P.**    **Witnesses, who may not yet be known, with knowledge surrounding DC Comics' claims and positions**

    1.    <u>Contact Information</u>:  The identity and location of such witnesses are presently unknown to DC Comics.

    2.    <u>Subjects</u>:  Such witnesses may have information regarding all claims and defenses.

PLAINTIFF DC COMICS'
INITIAL DISCLOSURES

**EXHIBIT 1**
**10**

1    **II.    DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL**
2    **PROCEDURE 26(a)(1)(A)(ii).**

3    Pursuant to Rule 26(a)(1)(A)(ii), DC Comics provides the following

4    descriptions by category of materials in DC Comics' possession, custody, or control

5    that DC Comics may use to support its claims or positions in this action, other than

6    solely for purposes of impeachment.  By providing these descriptions, DC Comics

7    does not waive, but expressly preserves, any and all objections as to the relevance,

8    discoverability, and admissibility of the documents.

9    A.    Documents relating to Joseph Shuster and his heirs (the "Shuster
10    Heirs") and their purported rights in Superman and Superboy;

11    B.    Documents relating to Jerome Siegel and his heirs (the "Siegel Heirs")
12    and their purported rights in Superman and Superboy;

13    C.    Documents relating to defendant Marc Toberoff and his alter-ego
14    entities, including defendants Pacific Pictures Corporation; IP
15    Worldwide, LLC; and IPW, LLC (the "Toberoff Defendants") and
16    their purported rights in Superman and Superboy;

17    D.    Documents regarding the agreement dated August 1, 1992 between the
18    Shuster Heirs and DC Comics;

19    E.    Documents regarding the letter agreement dated November 23, 2001
20    between the Shuster Heirs and defendant Pacific Pictures Corporation;

21    F.    Documents regarding the letter agreement dated October 27, 2003
22    between the Shuster Heirs and defendant Pacific Pictures Corporation;

23    G.    Documents regarding the letter dated September 10, 2004 signed by
24    the Shuster Heirs and Pacific Pictures Corporation;

25    H.    Documents regarding the Notice of Termination of Transfer Covering
26    Extended Copyright Renewal Term of "Superman" served on behalf of
27    the Shuster Heirs on or around November 10, 2003 and the agreements
28    and grants purportedly terminated thereby;

I.  Documents regarding the 2001 settlement agreement between the Siegel Heirs and DC Comics;

J.  Documents regarding the letter agreement dated October 3, 2002 between the Siegel Heirs and defendant IP Worldwide, LLC;

K.  Documents regarding the Notice of Termination of Transfer Covering Extended Renewal Term:  Superboy served on behalf of the Siegel Heirs on or around November 8, 2002 and the agreements and grants purportedly terminated thereby;

L.  Documents relating to the creation and development of Superman and Superboy;

M.  Documents relating to the employment relationship between DC Comics and its predecessors and Joseph Shuster;

N.  Documents identified in DC Comics' complaint.

The foregoing documents are located at the offices of DC Comics, DC Comics' corporate affiliates, or DC Comics' attorneys.

## III.  DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iii).

Pursuant to Rule 26(a)(1)(A)(iii), DC Comics provides the following preliminary computations of the damages it seeks in this action.  DC Comics reserves all rights to provide additional and more detailed damage computations after further investigation and discovery.

### A.  Actual Damages

DC Comics seeks actual damages arising out of the Toberoff Defendants' acts of tortious interference with DC Comics' contractual relations and prospective economic advantage.  DC Comics seeks compensation for all losses caused by the Toberoff Defendants' tortious interference, including, without limitation:  (1) the value of DC Comics' 1992 agreement with the Shuster Heirs; (2) the value of DC Comics' ongoing business relationship with the Shuster Heirs; (3) the value of DC

PLAINTIFF DC COMICS'
INITIAL DISCLOSURES

**EXHIBIT 1**

**12**

1  Comics' 2001 agreement with the Siegel Heirs; (4) the value of DC Comics'

2  ongoing business relationship with the Siegel Heirs; and (5) substantial attorneys'

3  fees and costs in an amount to be proved at trial.  Although actual damages cannot

4  be calculated with specificity at this time, given the early stage of this action and

5  the likely need for expert testimony, DC Comics estimates that its actual damages

6  exceed $5,000,000.

7         **B.**    **Attorneys' Fees and Costs**

8       DC Comics seeks attorneys' fees and costs in an amount to be determined

9  after trial.

10 **IV.**   **DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL**

11       **PROCEDURE 26(a)(1)(A)(iv).**

12      DC Comics is not aware of any insurance agreement pursuant to which an

13 insurer may be affording coverage in this action.  However, counsel for DC Comics

14 has been contacted by insurance carriers for the Toberoff Defendants.  Even though

15 the Toberoff Defendants appear to have submitted claims to their respective

16 carriers, the Toberoff Defendants have notably failed to identify these carriers in

17 their required disclosures with the Court.

18

19      Dated:  September 13, 2010     Respectfully submitted,

20                            O'MELVENY & MYERS LLP

21                            By:   /s/ Daniel M. Petrocelli

22                              Daniel M. Petrocelli

23                          Attorneys for Plaintiff DC Comics

24

25

26

27

28

PLAINTIFF DC COMICS'
INITIAL DISCLOSURES

**EXHIBIT 1**
**13**

# EXHIBIT 2

O

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

November 11, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We intend to file a motion pursuant to Federal Rule of Civil Procedure 42(b) to bifurcate DC's First and Third Claims for Relief and schedule a three-day bench trial on those claims in the Spring or as soon as practicable for the court.

Federal Rule of Civil Procedure 42(b) provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial on *any claim*, cross-claim, counterclaim, or third party claim, or of *any separate issue*...." (Emphasis added.) The district court has "broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

It makes eminent sense to proceed to trial on DC's First and Third Claims for Relief. First, if these claims are granted, it would moot DC's Second Claim for Relief (which is pled in the alternative to DC's First Claim for Relief) and completely dispose of DC's federal claims. The Ninth Circuit has emphasized that a court may "bifurcate a trial to permit a deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am., Inc., v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). Second, there is a compelling need for prompt resolution of DC's federal claims given that the Shusters' copyright termination notice purports to take effect in 2013. Defendants improperly delayed resolution of these claims by filing meritless Rule 12 motions which they ultimately abandoned more than a year later.

**EXHIBIT 2**

**14**

O'Melveny & Myers llp
November 11, 2011 - Page 2


      Please let us know whether you agree to bifurcate DC's First and Third Claims for Relief and proceed to a short bench trial on these claims.  If not, please let us know when you are available to meet and confer pursuant to Local Rule 7-3.


                    Very truly yours,

                    /s/ Daniel M. Petrocelli

                    Daniel M. Petrocelli

cc:     Matthew T. Kline, Esq.
        Richard Kendall, Esq.

**EXHIBIT 2**
**15**

# EXHIBIT 3

**Attachments:**          Bifurcation Stipulation_v1.doc

**From:** Petrocelli, Daniel
**Sent:** Friday, November 18, 2011 3:26 PM
**To:** mtoberoff@ipwla.com
**Subject:**

Marc, as discussed, attached is a proposed bifurcation stipulation.   Please get back to me soon with any comments.   As I've said, we intend to move to bifurcate absent a stipulation.

Thanks.

Dan

1

**EXHIBIT 3**
**16**

1  DANIEL M. PETROCELLI (S.B. #097802)
    dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Plaintiff DC Comics

8  (continued on next page)

9                  **UNITED STATES DISTRICT COURT**

10                 **CENTRAL DISTRICT OF CALIFORNIA**

11

12  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

13           Plaintiff,                 **JOINT STIPULATION TO
                                        BIFURCATE DC COMICS' FIRST
14       v.                             AND THIRD CLAIMS FOR
                                        RELIEF PURSUANT TO FED. R.
15  PACIFIC PICTURES                    CIV. P. 42(B) AND TO SCHEDULE
    CORPORATION, IP WORLDWIDE,          A BENCH TRIAL ON THOSE
16  LLC, IPW, LLC, MARC TOBEROFF,       CLAIMS
    an individual, MARK WARREN
17  PEARY, as personal representative of   [PROPOSED] ORDER FILED
    the ESTATE OF JOSEPH SHUSTER,       CONCURRENTLY HEREWITH
18  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, an             Hon. Otis D. Wright II
19  individual and as personal
    representative of the ESTATE OF
20  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
21
             Defendants.
22

23

24

25

26

27

28

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:    (845) 265-2819

Attorneys for Plaintiff DC Comics


MARC TOBEROFF (S.B. #188547)
  mtoberoff@ipwla.com
NICHOLAS C. WILLIAMSON (S.B. #231124)
  nwilliamson@ipwla.com
KEITH G. ADAMS (S.B. #240497)
  kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:  (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Laura Siegel Larson,
Mark Warren Peary, and Jean Peavy


RICHARD B. KENDALL (S.B. # 90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. # 195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. # 236155)
  ndaum@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

Attorneys for Marc Toberoff, Pacific Pictures
Corporation, IP Worldwide, LLC, and IPW, LLC

JOINT STIPULATION TO BIFURATE
FIRST & THIRD CLAIMS FOR TRIAL

**EXHIBIT 3**
**18**

The parties, by and through their respective counsel of record, hereby stipulate and agree as follows:

WHEREAS, Federal Rule of Civil Procedure 42(b) provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial on any claim … or of any separate issue";

WHEREAS, defendants' interlocutory appeal of this Court's October 25, 2011, order denying defendants' motion to strike plaintiff DC Comics' ("DC") Fourth, Fifth, and Sixth Claims for Relief pursuant to California's anti-SLAPP statute, Docket No. 337, is currently pending before the Ninth Circuit;

WHEREAS, DC's First, Second, and Third Claims for Relief can be efficiently and promptly adjudicated by bifurcating DC's First and Third Claims for Relief and scheduling a short bench trial on those claims;

WHEREAS, such a bifurcated trial may moot DC's Second Claim for Relief (which is pled in the alternative) and entirely dispose of DC's federal claims;

WHEREAS, bifurcation is appropriate where, as here, it would "defer[] costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues," *Jinro Am., Inc., v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001);

WHEREAS, bifurcation is also warranted because there is a compelling need for prompt resolution of DC's federal claims given that the Shuster copyright termination notice at issue in those claims purports to take effect in 2013;

WHEREAS, the parties agree that trial on DC's First and Third Claims for Relief should take place before the Court rather than a jury (without waiving any rights to a jury trial on any other claims);

WHEREAS, such a bench trial is estimated to require only three court days;

JOINT STIPULATION TO BIFURATE
FIRST & THIRD CLAIMS FOR TRIAL

**EXHIBIT 3**
**19**

1    WHEREAS, following trial, the parties agree to stipulate to an order

2    certifying DC's First and Third Claims for Relief for immediate appeal under

3    Federal Rule of Civil Procedure 54(b);

4    NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED that,

5    subject to the Court's approval, DC's First and Third Claims for Relief shall be

6    bifurcated pursuant to Federal Rule of Civil Procedure 42(b) and a bench trial on

7    those claims shall be scheduled as soon as is practicable for this Court, preferably

8    within the next 90 days.

9

10    Dated:  November ___, 2011            O'MELVENY & MYERS LLP

11                                         By: _____

12                                             Daniel M. Petrocelli

13    Dated:  November ___, 2011            TOBEROFF & ASSOCIATES, P.C.

14                                         By: _____

15                                             Marc Toberoff

16    Dated:  November ___, 2011            KENDALL BRILL & KLIEGER LLP

17                                         By: _____

18                                             Richard Kendall

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION TO BIFURATE
FIRST & THIRD CLAIMS FOR TRIAL

**EXHIBIT 3**
**20**

# EXHIBIT 4

O

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 21, 2012

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

Pursuant to Federal Rule of Civil Procedure 56, DC is considering moving for partial summary judgment on its First Claim for Relief for the reasons discussed in the parties' January 23, 2012, Joint Status Report, Docket No. 364 at 8-10, and is considering moving for partial summary judgment on its Third Claim for Relief for the reasons that have been extensively discussed and briefed, *see* Docket No. 90 at 4-13; Docket No. 185 at 4-13; Docket No. 334 at 11-17.  These issues have been thoroughly discussed in prior briefs and meet and confers, *see id.*; Docket No. 89 at 5-17, 20-21; Docket No. 186 at 5-17, 20-21; Docket No. 334 at 5-10; Docket No. 364 at 8-10, but if you wish to meet and confer further, please let us know when you are available to do so Monday or Tuesday.

**EXHIBIT 4**
**21**

O'MELVENY & MYERS LLP
Page 2

DC reserves all rights.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.

EXHIBIT 4
22

# EXHIBIT 5

1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Pablo D. Arredondo (State Bar No. 241142)
      *parredondo@ipwla.com*
3   TOBEROFF & ASSOCIATES, P.C.
    22337 Pacific Coast Highway #348
4   Malibu, California 90265
    Telephone:  (310) 246-3333
5   Facsimile:   (310) 246-3101

6   Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
7   Estate of Joseph Shuster, Jean Adele Peavy,
    and Laura Siegel Larson, individually and
8   as personal representative of the Estate of
    Joanne Siegel

9

10              **UNITED STATES DISTRICT COURT**

11       **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

12

| | |
|---|---|
| DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
|        Plaintiff, | Hon. Otis D. Wright II, U.S.D.J. |
|    vs. | Hon. Ralph Zarefsky, U.S.M.J. |
| PACIFIC PICTURES CORPORATION; | **DISCOVERY MATTER** |
| IP WORLDWIDE, LLC; IPW, LLC; | **DEFENDANT MARK WARREN** |
| MARC TOBEROFF, an individual; | **PEARY'S NOTICE OF** |
| MARK WARREN PEARY, as personal | **DEPOSITION OF PAUL** |
| representative of the ESTATE OF | **LEVITZ** |
| JOSEPH SHUSTER; JEAN ADELE | |
| PEAVY, an individual; LAURA | Complaint filed:  May 14, 2010 |
| SIEGEL LARSON, individually and as | Trial Date:  None Set |
| personal representative of the ESTATE | Date: July 10, 2012 |
| OF JOANNE SIEGEL, and DOES 1-10, | Time: 9:00 a.m. |
| inclusive, | Place: Kendall Brill & Klieger, LLP |
| |     10100 Santa Monica Blvd., |
|        Defendants. |     Suite 1725, Los Angeles, |
| |     California 90067 |

**EXHIBIT 5**
23

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30, the deposition upon oral examination of Paul Levitz (the "Deponent") will be taken in the above-entitled action on July 10, 2012 starting at 9:00 a.m. and continuing over the course of one day until completed or otherwise adjourned.  The deposition will be held at the offices of Kendall Brill & Klieger, LLP at 10100 Santa Monica Blvd., Suite 1725, Los Angeles, California 90067.  The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound, and visual means.

This Notice of Deposition is being served on Deponent's counsel as shown on the accompanying Proof of Service.

Dated: June 28, 2012                    Respectfully submitted,

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.

Attorneys for Defendants
Mark Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura
Siegel Larson, individually and as personal
representative of the Estate of Joanne Siegel

**EXHIBIT 5**
24

Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Pablo D. Arredondo (State Bar No. 241142)
  *parredondo@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California, 90265
Telephone:   (310) 246-3333
Fax:             (310) 246-3101

Attorneys for Defendants Mark
Warren Peary, as personal
representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura
Siegel Larson, individually and as
personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES<br>CORPORATION; IP WORLDWIDE,<br>LLC; IPW, LLC; MARC<br>TOBEROFF, an individual; MARK<br>WARREN PEARY, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; LAURA<br>SIEGEL LARSON, individually and<br>as personal representative of the<br>ESTATE OF JOANNE SIEGEL, and<br>DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**PROOF OF SERVICE**<br><br>Complaint Filed:  May 14, 2010<br>Trial Date:  None Set |

PROOF OF SERVICE

**EXHIBIT 5**
**25**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of eighteen years and not a party to the within action; my business

address is:  22337 Pacific Coast Highway #348, Malibu, CA 90265.

On June 28, 2012, I caused to be served the foregoing document, described as

DEFENDANT MARK WARREN PEARY'S NOTICE OF DEPOSITION OF PAUL

LEVITZ, on the interested parties in this action as follows:

> Daniel M. Petrocelli, Esq.
> *dpetrocelli@omm.com*
> Matthew T. Kline, Esq.
> *mkline@omm.com*
> Cassandra Seto, Esq.
> *cseto@omm.com*
> O'MELVENY & MYERS LLP
> 1999 Avenue of the Stars, 7th Floor
> Los Angeles, CA 90067-6035

**BY U.S. MAIL:**  I caused to be delivered to the address listed above via the United

States Postal Service the documents listed herein.

**BY E-MAIL:**  I certify that the foregoing documents are also being served

electronically via e-mail.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct and that I am employed in the office of a member of the bar

of this court at whose direction the service was made.

Executed on June 28, 2012, at Malibu, California.

_____

Pablo D. Arredondo

1
PROOF OF SERVICE

**EXHIBIT 5**
**26**

# EXHIBIT 6

1  Marc Toberoff (State Bar No. 188547)
    *mtoberoff@ipwla.com*
2  Pablo D. Arredondo (State Bar No. 241142)
    *parredondo@ipwla.com*
3  TOBEROFF & ASSOCIATES, P.C.
    22337 Pacific Coast Highway #348
4  Malibu, California 90265
    Telephone:   (310) 246-3333
5  Facsimile:   (310) 246-3101

6  Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
7  Estate of Joseph Shuster, Jean Adele Peavy,
    and Laura Siegel Larson, individually and
8  as personal representative of the Estate of
    Joanne Siegel

9

10                    UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

11  DC COMICS,                          | Case No: CV 10-03633 ODW (RZx)
12                    Plaintiff,
                                        | Hon. Otis D. Wright II, U.S.D.J.
13          vs.                         | Hon. Ralph Zarefsky, U.S.M.J.

14  PACIFIC PICTURES CORPORATION;       | **DISCOVERY MATTER**
15  IP WORLDWIDE, LLC; IPW, LLC;
    MARC TOBEROFF, an individual;       | **DEFENDANT MARK WARREN**
16  MARK WARREN PEARY, as personal      | **PEARY'S NOTICE OF RULE**
    representative of the ESTATE OF     | **30(b)(6) DEPOSITION OF**
17  JOSEPH SHUSTER; JEAN ADELE          | **PLAINTIFF DC COMICS**
18  PEAVY, an individual; LAURA
    SIEGEL LARSON, individually and as  | Complaint filed:  May 14, 2010
19  personal representative of the ESTATE | Trial Date:  None Set
    OF JOANNE SIEGEL, and DOES 1-10,    | Date: July 11, 2012
20  inclusive,                          | Time: 9:00 a.m.
                                        | Place: Kendall Brill Klieger, LLP
21                                      |        10100 Santa Monica Blvd.,
22                    Defendants.       |        Suite 1725, Los Angeles,
                                        |        California 90067
23

24

25

26

27

28

**EXHIBIT 6**
**27**

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure

3    30(b)(6), Defendants hereby notice the deposition of Plaintiff DC Comics ("DC") as

4    an organization on the topics detailed below.  The deposition will be taken on July

5    11, 2012 starting at 9:00 a.m. and continuing over the course of one day until

6    completed or otherwise adjourned.  The deposition will be held at the offices of

7    Kendall Brill & Klieger, LLP at 10100 Santa Monica Blvd., Suite 1725, Los Angeles,

8    California 90067.  The deposition will be taken before a notary public or other officer

9    authorized to administer oaths and will be recorded by stenographic, sound, and

10    visual means.

**TOPICS**

11

12    1.       The Agreement dated October 2, 1992 between DC, on the one hand,

13             and Jean Peavy and Frank Shuster, on the other.

14

15        This Notice of Deposition is being served on Deponent's counsel as shown on

16    the accompanying Proof of Service.

17    Dated:  June 28, 2012              Respectfully submitted,

18

19                                        Marc Toberoff
                                         TOBEROFF & ASSOCIATES, P.C.
20
                                         Attorneys for Defendants
21                                       Mark Warren Peary, as personal
                                         representative of the Estate of Joseph
22                                       Shuster, Jean Adele Peavy, and Laura
                                         Siegel Larson, individually and as
23                                       personal representative of the Estate of
                                         Joanne Siegel
24

25

26

27

28

**EXHIBIT 6**
**28**

1 | Marc Toberoff (State Bar No. 188547)
*mtoberoff@ipwla.com*
2 | Pablo D. Arredondo (State Bar No. 241142)
*parredondo@ipwla.com*
3 | TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
4 | Malibu, California, 90265
Telephone:  (310) 246-3333
5 | Fax:         (310) 246-3101

6 | Attorneys for Defendants Mark
Warren Peary, as personal
7 | representative of the Estate of Joseph
Shuster, Jean Adele Peavy, and Laura
8 | Siegel Larson, individually and as
personal representative of the Estate of
9 | Joanne Siegel

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
| Plaintiff, | |
| vs. | Hon. Otis D. Wright II, U.S.D.J. |
| | **PROOF OF SERVICE** |
| PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | Complaint Filed:  May 14, 2010 Trial Date:  None Set |
| Defendants. | |

PROOF OF SERVICE

**EXHIBIT 6**
**29**

1

## **<u>PROOF OF SERVICE</u>**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am over the age of eighteen years and not a party to the within action;

4

my business address is:  22337 Pacific Coast Highway #348, Malibu, CA

5

90265.

6

On June 28, 2012, I caused to be served the foregoing document,

7

described as DEFENDANT MARK WARREN PEARY'S NOTICE OF 30(b)(6)

8

CORPORATE DEPOSITION OF PLAINTIFF DC COMICS, on the interested

9

parties in this action as follows:

10

Daniel M. Petrocelli, Esq.
*dpetrocelli@omm.com*
Matthew T. Kline, Esq.

11

*mkline@omm.com*
Cassandra Seto, Esq.

12

*cseto@omm.com*
O'MELVENY & MYERS LLP

13

1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035

14

15

**BY U.S. MAIL:**  I caused to be delivered to the address listed above via

16

the United States Postal Service the documents listed herein.

17

**BY E-MAIL:**  I certify that the foregoing documents are being served

18

electronically via e-mail.

19

I declare under penalty of perjury under the laws of the United States of

20

America that the foregoing is true and correct and that I am employed in the

21

office of a member of the bar of this court at whose direction the service was

22

made.

23

Executed on June 28, 2012, at Malibu, California.

24

25

26

Pablo D. Arredondo

27

28

1
PROOF OF SERVICE

**EXHIBIT 6**
**30**

# EXHIBIT 7



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

July 3, 2012

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write in response to your June 28, 2012, letter.  We need to meet and confer on the substance of your summary judgment motion, as it is unclear from your letter on what parts of DC's First and Third Claims defendants will move.  As Dan indicated in his July 2, 2012, e-mail, to the extent you wish to coordinate your planned summary judgment motion with ours, we plan to file our summary judgment motion in the next week or two and notice it for hearing in late August.

As to your deposition notices, Paul Levitz will serve as the 30(b)(6) witness.  You have noticed both his deposition and the 30(b)(6) deposition to take place in Los Angeles, but as you know, Mr. Levitz lives and works in New York.  We will try and make him available in New York on July 26, 2012, for both depositions you noticed.  We know that the July 10 and 11 dates you offered do not work.

As for Ms. Laserson and Mr. Payson, we understand you have already tried to contact Ms. Laserson, even though you know we represent her.  This is improper.  Let us know on what days and for how many hours you wish to depose Ms. Laserson and Mr. Payson, and we will try

**EXHIBIT 7**
**31**

O'MELVENY & MYERS LLP
Page 2


to secure dates this month to do so.  Those depositions may well need to occur in New York, and should be brief, given the limited nature of these witnesses' knowledge and involvement.


        Very truly yours,

        /s/ Matthew T. Kline

        Matthew T. Kline
        of O'MELVENY & MYERS LLP


cc:    Daniel M. Petrocelli, Esq.


**EXHIBIT 7**
**32**

# EXHIBIT 8

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    CV 10-3633 ODW (RZx) |
| | ) | |
| Pacific Pictures Corp., et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California        ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Lillian Joan Laserson
       c/o Matthew Kline 1999 Avenue of the Stars, 7th Floor

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

DC Comics' relationship with the Siegel and Shuster heirs; the 1992 agreement between DC Comics and Jean Adele Peavy/Frank Shuster.

| Place:  Ropers Majeski Kohn Bentley PC | Date and Time: |
|---|---|
| 750 Third Avenue, 25th Floor New York, NY 10017 | 07/25/2012 9:00 am |

The deposition will be recorded by this method:   Stenographic, sound, and visual means

❑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     07/09/2012

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Marc Toberoff |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Mark Warren Peary
_____ , who issues or requests this subpoena, are:

Marc Toberoff, Toberoff & Associates
22337 Pacific Coast Highway #348, Malibu, CA 90265
Email: mtoberoff@ipwla.com, Telephone: (310) 246-3333

**EXHIBIT 8**
**33**

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  CV 10-3633 ODW (RZx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT 8**
**34**

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT 8

# EXHIBIT 9

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    CV 10-3633 ODW (RZx) |
| | ) | |
| Pacific Pictures Corp., et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California            ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Lillian Joan Laserson
    c/o Matthew Kline, 1999 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

    ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Ropers Majeski Kohn Bentley PC | Date and Time: |
|---|---|
| 750 Third Avenue, 25th Floor | |
| New York, NY 10017 | 07/19/2012 9:00 am |

    ❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     07/09/2012

|  |  |
|---|---|
| *CLERK OF COURT* | |
| | OR |
| _____ | /s/ Marc Toberoff |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    Mark Warren Peary
_____ , who issues or requests this subpoena, are:

Marc Toberoff, Toberoff & Associates
22337 Pacific Coast Highway #348, Malibu, CA 90265
Email: mtoberoff@ipwla.com, Telephone: (310) 246-3333

## EXHIBIT 9

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   CV 10-3633 ODW (RZx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT 9**
**37**

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT 9

38

# ATTACHMENT A

## DEFINTIONS AND INSTRUCTIONS

1.    "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in the Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.    "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.    "RELATE" means, without limitation, to refer to or bear upon.

4.    "OBTAIN" (or any conjugation thereof) means, without limitation, acquire, attain, capture, come by gain, garner, get procure, or secure.

5.    "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

1

**EXHIBIT 9**
**39**

6.    "YOU" or "YOUR" means Lillian Jean Laserson and, as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

7.    "JOSEPH SHUSTER" means Joseph Shuster, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

8.    "FRANK SHUSTER" means Frank Shuster, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

9.    "JEAN ADELE PEAVY" means Jean Adele Peavy, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

10.    "SHUSTER HEIRS" means, collectively and severally, Mark Warren Peary, Jean Peavy, Dawn Peavy, Frank Shuster, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

11.    "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

12.    "DC COMICS" AND "DC" means DC Comics, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venture, affiliated company, subsidiary or division thereof, and any other PERSON acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys,

2

**EXHIBIT 9**
**40**

accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

13.    "1992 AGREEMENT" means the alleged letter agreement dated October 2, 1992 between DC Comics, Jean Adele Peavy and Frank Shuster.

14.    "SEPTEMBER 10, 1992 LETTER" means the purported letter dated September 10, 1992, sent from FRANK SHUSTER to DC COMICS.

15.    "SEPTEMBER 7, 1999 LETTER" means the purported letter dated September 7, 1999, sent from JEAN ADELE PEAVY to DC COMICS.

16.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics No. 1*.

17.    "Any" and "All" are interchangeable.

18.    The singular form includes the plural form, and vice versa.

19.    You are instructed to produce all DOCUMENTS that are responsive to these Requests and that are in YOUR possession, custody or control.  A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to OBTAIN possession of the DOCUMENT or a copy thereof from another person or entity that has physical possession of the DOCUMENT.

20.    If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of YOUR knowledge,

**EXHIBIT 9**
**41**

information and belief, and with as much particularity as possible, the
DOCUMENT or portions of the DOCUMENT that are not being produced.

21.    Each DOCUMENT is to be produced as it is kept in the usual
course of business, including all file folders, binders, notebooks, and other
devices by which such DOCUMENTS may be organized or separated.

22.    If YOU withhold any DOCUMENT, or portion of a
DOCUMENT, on grounds that it is protected from discovery by the
attorney-client privilege, work-product doctrine, or other privilege or
immunity from discovery, please set forth, for each DOCUMENT or portion
of a DOCUMENT withheld:

   (a)    The place, approximate date, and manner of recording,
          creating or otherwise preparing the DOCUMENT;

   (b)    The names and organization position, if any, of each
          author, sender, and recipient of the DOCUMENT;

   (c)    A general description of the subject matter of the
          DOCUMENT;

   (d)    The basis of any claim of privilege; and

   (e)    If work-product is asserted, the proceeding for which the
          DOCUMENT was created.

23.    For any DOCUMENT or category of DOCUMENTS that was,
but no longer is, in YOUR possession, custody or control, please describe
each such DOCUMENT as completely as possible and provide the following
information:

   (a)    The reason the DOCUMENT is no longer in YOUR
          possession, custody or control;

   (b)    The person or entity, if any, who has possession, custody
          or control or, if unknown, so state; and

4

**EXHIBIT 9**
**42**

     (c)     If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.*, destruction, loss, discarding or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the person authorizing disposal; (v) the person disposing of the DOCUMENT; and (vi) the name and address of the most recent custodian of the DOCUMENT.

24.    Each Request shall be construed independently and no Request shall be viewed as limiting the scope of any other Request.

25.    All responsive DOCUMENTS maintained or stored in electronic format shall be produced in native file format with all associated metadata preserved. All responsive DOCUMENTS maintained in hard copy shall be produced in TIFF.

26.    The collection and production of DOCUMENTS shall be performed in a manner that ensures that the source of each DOCUMENT may be determined, if necessary.

27.    DOCUMENTS attached to each other shall not be separated.

28.    These Requests impost a continuing obligation subsequent to YOUR initial production within thirty days of the service date of these Requests, or other date mutually agreed upon by the parties, to timely supplement YOUR response or production if YOU determine that YOUR response or production is incomplete or incorrect.

## DOCUMENTS REQUESTED

1.    All DOCUMENTS RELATING to the 1992 AGREEMENT.

2.    All DOCUMENTS RELATING to any COMMUNICATION between or among YOU and any PERSON RELATING to the 1992 AGREEMENT.

**EXHIBIT 9**
**43**

3.    All COMMUNICATIONS between or among YOU and any PERSON RELATING to the 1992 AGREEMENT

4.    All DOCUMENTS RELATING to the SEPTEMBER 10, 1992 LETTER.

5.    All DOCUMENTS RELATING to any COMMUNCAITON between or among YOU and any PERSON RELATING to the SEPTEMBER 10, 1992 LETTER.

6.    All COMMUNICATIONS between or among YOU and any PERSON RELATING to the SEPTEMBER 10, 1992 LETTER.

7.    All DOCUMENTS RELATING to the SEPTEMBER 7, 1999 LETTER.

8.    ALL DOCUMENTS RELATING to any COMMUNICATION between or among YOU and any PERSON RELATING to the SEPTEMBER 7, 1999 LETTER.

9.    ALL COMMUNCATIONS between or among you and any PERSON RELATING to the SEPTEMBER 7, 1999 LETTER.

10.    All DOCUMENTS RELATING to FRANK SHUSTER.

11.    All DOCUMENTS RELATING to any COMMUNICATION between or among YOU and FRANK SHUSTER.

12.    All COMMUNICATIONS between or among YOU and FRANK SHUSTER.

13.    All DOCUMENTS RELATING to JEAN ADELE PEAVY.

14.    All DOCUMENTS RELATING to ANY COMMUNICATION between or among YOU and JEAN ADELE PEAVY.

15.    All COMMUNICATIONS between or among YOU and JEAN ADELE PEAVY.

6

EXHIBIT 9
44

16.    All DOCUMENTS RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

17.    All DOCUMENTS RELATING to ANY COMMUNICATION between YOU and any PERSON RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

18.    All COMMUNICATIONS between or among YOU and ANY PERSON RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

19.    All DOCUMENTS RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

20.    All DOCUMENTS RELATING to ANY COMMUNICATION between YOU and any PERSON RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

21.    All COMMUNICATIONS between or among YOU and ANY PERSON RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

EXHIBIT 9
45

# EXHIBIT 10

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    CV 10-3633 ODW (RZx) |
| | ) | |
| Pacific Pictures Corp., et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California             ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Martin D. Payson
  c/o Matthew Kline 1999 Avenue of the Stars, 7th Floor

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

DC Comics' relationship with the Siegel and Shuster heirs; the 1992 agreement between DC Comics and Jean Adele Peavy/Frank Shuster.

| Place: Ropers Majeski Kohn Bentley PC 750 Third Avenue, 25th Floor New York, NY 10017 | Date and Time: 07/27/2012 9:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographic, sound, and visual means

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   07/09/2012

*CLERK OF COURT*

OR

_____          /s/ Marc Toberoff
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Mark Warren Peary
_____ , who issues or requests this subpoena, are:

Marc Toberoff, Toberoff & Associates
22337 Pacific Coast Highway #348, Malibu, CA 90265
Email: mtoberoff@ipwla.com, Telephone: (310) 246-3333

**EXHIBIT 10**
**46**

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  CV 10-3633 ODW (RZx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*

                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT 10**
**47**

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT 10**

**48**

# EXHIBIT 11

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  CV 10-3633 ODW (RZx) |
| | ) | |
| Pacific Pictures Corp., et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California            ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Martin D. Payson
      c/o Matthew Kline, 1999 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Ropers Majeski Kohn Bentley PC 750 Third Avenue, 25th Floor New York, NY 10017 | Date and Time: 07/19/2012 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     07/09/2012

CLERK OF COURT

                                   OR

_____          /s/ Marc Toberoff
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Mark Warren Peary
_____, who issues or requests this subpoena, are:

Marc Toberoff, Toberoff & Associates
22337 Pacific Coast Highway #348, Malibu, CA 90265
Email: mtoberoff@ipwla.com, Telephone: (310) 246-3333

**EXHIBIT 11**
**49**

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  CV 10-3633 ODW (RZx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT 11**
**50**

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT 11**
51

## ATTACHMENT A

## DEFINTIONS AND INSTRUCTIONS

1.      "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in the Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.      "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.      "RELATE" means, without limitation, to refer to or bear upon.

4.      "OBTAIN" (or any conjugation thereof) means, without limitation, acquire, attain, capture, come by gain, garner, get procure, or secure.

5.      "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

1

**EXHIBIT 11**
**52**

6.  "YOU" or "YOUR" means Martin D. Payson and, as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

7.  "JOSEPH SHUSTER" means Joseph Shuster, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

8.  "FRANK SHUSTER" means Frank Shuster, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

9.  "JEAN ADELE PEAVY" means Jean Adele Peavy, and as applicable, any PERSON acting on his/her behalf, including but not limited to his/her agents, employees, attorneys, and representatives.

10.  "SHUSTER HEIRS" means, collectively and severally, Mark Warren Peary, Jean Peavy, Dawn Peavy, Frank Shuster, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

11.  "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

12.  "DC COMICS" AND "DC" means DC Comics, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venture, affiliated company, subsidiary or division thereof, and any other PERSON acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys,

2

**EXHIBIT 11**
**53**

accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

13.    "1992 AGREEMENT" means the alleged letter agreement dated October 2, 1992 between DC Comics, Jean Adele Peavy and Frank Shuster.

14.    "SEPTEMBER 10, 1992 LETTER" means the purported letter dated September 10, 1992, sent from FRANK SHUSTER to DC COMICS.

15.    "SEPTEMBER 7, 1999 LETTER" means the purported letter dated September 7, 1999, sent from JEAN ADELE PEAVY to DC COMICS.

16.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics No. 1*.

17.    "Any" and "All" are interchangeable.

18.    The singular form includes the plural form, and vice versa.

19.    You are instructed to produce all DOCUMENTS that are responsive to these Requests and that are in YOUR possession, custody or control.  A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to OBTAIN possession of the DOCUMENT or a copy thereof from another person or entity that has physical possession of the DOCUMENT.

20.    If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of YOUR knowledge,

**EXHIBIT 11**
**54**

information and belief, and with as much particularity as possible, the DOCUMENT or portions of the DOCUMENT that are not being produced.

21.    Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized or separated.

22.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on grounds that it is protected from discovery by the attorney-client privilege, work-product doctrine, or other privilege or immunity from discovery, please set forth, for each DOCUMENT or portion of a DOCUMENT withheld:

   (a)    The place, approximate date, and manner of recording, creating or otherwise preparing the DOCUMENT;

   (b)    The names and organization position, if any, of each author, sender, and recipient of the DOCUMENT;

   (c)    A general description of the subject matter of the DOCUMENT;

   (d)    The basis of any claim of privilege; and

   (e)    If work-product is asserted, the proceeding for which the DOCUMENT was created.

23.    For any DOCUMENT or category of DOCUMENTS that was, but no longer is, in YOUR possession, custody or control, please describe each such DOCUMENT as completely as possible and provide the following information:

   (a)    The reason the DOCUMENT is no longer in YOUR possession, custody or control;

   (b)    The person or entity, if any, who has possession, custody or control or, if unknown, so state; and

4

**EXHIBIT 11**
**55**

(c)    If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.*, destruction, loss, discarding or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the person authorizing disposal; (v) the person disposing of the DOCUMENT; and (vi) the name and address of the most recent custodian of the DOCUMENT.

24.    Each Request shall be construed independently and no Request shall be viewed as limiting the scope of any other Request.

25.    All responsive DOCUMENTS maintained or stored in electronic format shall be produced in native file format with all associated metadata preserved.  All responsive DOCUMENTS maintained in hard copy shall be produced in TIFF.

26.    The collection and production of DOCUMENTS shall be performed in a manner that ensures that the source of each DOCUMENT may be determined, if necessary.

27.    DOCUMENTS attached to each other shall not be separated.

28.    These Requests impost a continuing obligation subsequent to YOUR initial production within thirty days of the service date of these Requests, or other date mutually agreed upon by the parties, to timely supplement YOUR response or production if YOU determine that YOUR response or production is incomplete or incorrect.

## **DOCUMENTS REQUESTED**

1.    All DOCUMENTS RELATING to the 1992 AGREEMENT.

2.    All DOCUMENTS RELATING to any COMMUNICATION between or among YOU and any PERSON RELATING to the 1992 AGREEMENT.

5

**EXHIBIT 11**

**56**

3.      All COMMUNICATIONS between or among YOU and any PERSON RELATING to the 1992 AGREEMENT

4.      All DOCUMENTS RELATING to the SEPTEMBER 10, 1992 LETTER.

5.      All DOCUMENTS RELATING to any COMMUNICATION between or among YOU and any PERSON RELATING to the SEPTEMBER 10, 1992 LETTER.

6.      All COMMUNICATIONS between or among YOU and any PERSON RELATING to the SEPTEMBER 10, 1992 LETTER.

7.      All DOCUMENTS RELATING to the SEPTEMBER 7, 1999 LETTER.

8.      ALL DOCUMENTS RELATING to any COMMUNICATION between or among YOU and any PERSON RELATING to the SEPTEMBER 7, 1999 LETTER.

9.      ALL COMMUNCATIONS between or among you and any PERSON RELATING to the SEPTEMBER 7, 1999 LETTER.

10.     All DOCUMENTS RELATING to FRANK SHUSTER.

11.     All DOCUMENTS RELATING to any COMMUNICATION between or among YOU and FRANK SHUSTER.

12.     All COMMUNICATIONS between or among YOU and FRANK SHUSTER.

13.     All DOCUMENTS RELATING to JEAN ADELE PEAVY.

14.     All DOCUMENTS RELATING to ANY COMMUNICATION between or among YOU and JEAN ADELE PEAVY.

15.     All COMMUNICATIONS between or among YOU and JEAN ADELE PEAVY.

6

**EXHIBIT 11**
**57**

16.    All DOCUMENTS RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

17.    All DOCUMENTS RELATING to ANY COMMUNICATION between YOU and any PERSON RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

18.    All COMMUNICATIONS between or among YOU and ANY PERSON RELATING to JOSEPH SHUSTER'S rights in and to SUPERMAN.

19.    All DOCUMENTS RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

20.    All DOCUMENTS RELATING to ANY COMMUNICATION between YOU and any PERSON RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

21.    All COMMUNICATIONS between or among YOU and ANY PERSON RELATING to the SHUSTER HEIRS' rights in and to SUPERMAN.

EXHIBIT 11
58

# EXHIBIT 12

**From:** Seto, Cassandra
**Sent:** Friday, July 13, 2012 1:34 PM
**To:** mtoberoff@ipwla.com; Pablo Arredondo (parredondo@ipwla.com); 'dharris@ipwla.com' (dharris@ipwla.com)
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** MSJ Timing

Marc,

Please see the email below sent on Matt's behalf.

*       *       *

The schedule you proposed does not work on our end.  We plan to file Monday and notice DC's motion for August 20.  If and when you file your cross motion or are unavailable for a hearing on August 20, we can discuss a possible revised hearing date.  Matt

1

**EXHIBIT 12**
**59**

# EXHIBIT 13

**Attachments:**          DC v PPC Joint Stip re Defendants MTC Discovery
Responses.ArredondoDecl.6.13.2012.pdf; DC v PPC Notice.Joint Stip re Defendants MTC
Discovery Responses.6.13.2012.pdf; DC v PPC ProposedOrder.Joint Stip re Defendants
MTC Discovery Responses.6.13.2012.pdf; DC v. PPC Joint Stip re Defendants MTC
Discovery Responses.6.13.2012.pdf

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Friday, July 13, 2012 6:46 PM
**To:** Petrocelli, Daniel
**Cc:** Kline, Matthew; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'
**Subject:** DC v. PPC

Counsel:

Attached please find defendant Mark Warren Peary's portion of the joint stipulation regarding defendant Mark
Warren Peary's Motion To Compel Interrogatory Responses, and the supporting documents.

All of defendants' rights and remedies are hereby reserved.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read,
copy, distribute or use this information. If you have received this transmission in error, please notify the sender
immediately by reply e-mail and then delete this message.

1

EXHIBIT 13
60

1 | Marc Toberoff (State Bar No. 188547)
     *mtoberoff@ipwla.com*
2 | Pablo D. Arredondo (State Bar No. 241142)
     *parredondo@ipwla.com*
3 | TOBEROFF & ASSOCIATES, P.C.
   | 22337 Pacific Coast Highway, #348
4 | Malibu, California, 90265
   | Telephone:  (310) 246-3333
5 | Fax:          (310) 246-3101

6 | Attorneys for Defendants Mark Warren
   | Peary, as personal representative of the
7 | Estate of Joseph Shuster, Jean Adele Peavy
   | and Laura Siegel Larson

8 |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
|       Plaintiff, | |
|     vs. | Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J. |
| PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN PEARY, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; JOANNE<br>SIEGEL, an individual; LAURA<br>SIEGEL LARSON, an individual,<br>and DOES 1-10, inclusive,<br><br>      Defendants. | **DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES**<br><br>NOTICE OF MOTION AND MOTION, DECLARATION OF PABLO D. ARREDONDO AND ]PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**: Hon. Otis D. Wright II<br>**Magistrate**: Hon. Ralph Zarefsky<br><br><br>**Complaint filed**: May 14, 2010<br>**Trial Date**:       None Set<br>**Hearing Date**:   August 13, 2012<br>**Hearing Time**:   10:00 a.m.<br>**Courtroom**:       540 |

JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 13
61

Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Central District Court Local Rule 37-2, the parties respectfully submit the following Joint Stipulation Regarding Defendant's Motion for Interrogatory Responses.  Pursuant to Central District Local Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

Dated:    July __, 2012        Respectfully Submitted,

TOBEROFF & ASSOCIATES

By:  /s/ Marc Toberoff

Marc Toberoff
Attorneys for Defendants Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy

Dated:    July __, 2012        Respectfully Submitted,

O'MELVENY & MEYERS, LLP

By: _____

Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

1
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 13
62

## I.    DEFENDANTS' INTRODUCTION

The sole purpose of a discovery request – whether it takes the form of a request for production or an interrogatory – is to provide the parties with answers that will enable them to assess their cases and prepare, if need be, for trial.  *See United States ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.") (citations and quotations omitted).  To obtain this sort of necessary information, Mark Warren Peary ("Peary") served his First Set of Interrogatories to Plaintiff DC ("Interrogatories") on December 17, 2011.  In these Interrogatories, Peary requested DC to provide answers to 15 specific questions.  All of the Interrogatories were targeted at the core issues in this case, with many, if not most, leveled at specific allegations in DC's Complaint.

About two months later, on February 17, 2011, DC responded to Peary's Interrogatories with its Objections and Responses to Defendant Mark Warren Peary's First Set of Interrogatories ("Responses").  Although DC claimed to "use reasonable diligence and reasonable judgment" in drafting these Responses, 12 out of 15 of its answers were designed to evade conveying any meaningful discovery to Peary. These Responses provide vague and decontextualized answers to Peary's interrogatories.  They fail to provide any specificity, citing instead to the entirety of the record in not just this case, but the related *Siegel* cases as well.  They misdirect Peary to irrelevant and/or non-responsive materials.  And they do so all in a non-committal and obtuse manner, refusing to state with any sort of clarity whether DC had fully answered the questions or is still withholding information based upon its boilerplate objections.  Effectively, the Responses fail to answer Peary's questions.

On March 8, 2012, Peary's counsel sent a letter to DC and objected to its Responses, noting their multiple shortcomings.  *See* Declaration of Pablo D. Arredondo Decl. ("Arredondo Decl."), Ex. A.  On March 16, 2012, the parties met

1  and conferred about these objections, but DC refused to amend or otherwise
2  supplement its evasive Responses.  *Id.,* Ex. B, ¶4.  To date, DC has refused to
3  meaningfully answer Peary's Interrogatories.

4         Peary now respectfully asks this Court to compel DC to abide by its discovery
5  obligations and provide direct, specific responses to Interrogatories Nos. 1-5 and 9-
6  15.

7

8  **II.    DC's INTRODUCTION**

9

10  **III.   DEFENDANTS' STATEMENT OF ISSUES**

11         DC's Responses to 12 out of 15 of Peary's Interrogatories are wholly
12  inadequate, designed to evade conveying any meaningful answers or information.

13  **1.    Interrogatories Nos. 1-4**

14         Peary's first four Interrogatories requested DC to identify communications it
15  had previously had with various relevant parties:

16         **Interrogatory No. 1**

17         IDENTIFY all COMMUNICATIONS between YOU AND Mark Warren
       Peary.
18
       **Interrogatory No. 2**
19
       IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele Peavy.
20
21     **Interrogatory No. 3**

22         IDENTIFY all COMMUNICATIONS between YOU AND Frank Shuster.
23
       **Interrogatory No. 4**
24
       IDENTIFY all COMMUNICATIONS between YOU AND Joseph Shuster
       REGARDING YOUR rights in AND to Superman.
25         In answering these Interrogatories, DC recycles various boiler plate objections,
26  cites to various materials from this and the related *Siegel* cases, and then vaguely
27  adds at the end of each of its responses the following sentence: "Representatives from
28  DC, including Paul Levitz, had non-written communications with Mr. Peary [or Jean

Adele Peavy, Frank Shuster, Joseph Shuster, as applicable] over the years as well." Below, is a verbatim copy of DC's response to Interrogatory No. 1, which is representative of its other responses to Interrogatories Nos. 2-4:[1]

DC objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope and would include, for example, discussions with Mr. Peary at mediation sessions. DC objects to the extent the Interrogatory calls for irrelevant information and calls for a search for documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent the Interrogatory seeks communications that defendants have refused to produce in response to discovery served by DC, including but not limited to screenplays Mr. Peary sent to DC in 1997 and 2006.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC has exercised reasonable diligence in identifying responsive information and documents, and hereby responds as follows:

DC00145-151, DCC00004186-87, DCC00004191, DCC00006855, DCC00006872-6879, DCC00057431-57447, DCC00089366-89372, WB008506-8507. **Representatives from**

---

[1] Due to the length of DC's Responses, quoting each individual Response in full is not practicable and would render this motion more difficult to read. The complete Responses are therefore attached for the Court's convenience as Exhibit C to the concurrently filed declaration of Pablo D. Arredondo.

4
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 13
65

**Warner Bros. Entertainment Inc. and DC, including Paul Levitz, had non-written communications with Mr. Peary over the years as Bros. Entertainment Inc.**

(emphasis added).[2]

These blithe references to "communications . . . over the years" are entirely deficient.  The Interrogatories clearly defined "IDENTIFY," when used in reference to communications, to reasonably require DC, to the extent known, to specify the communication's "(i) date; (ii) type (*e.g.,* oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient and addressee."

 DC's response makes no effort whatsoever to provide this information, failing to specify when or how these communications took place, who were involved in these communications, or what they were about.  DC should not be allowed to casually dodge its discovery obligations as to oral communications with such vague and uninformative answers.  *See Nickerman v. Remco Hydraulics, Inc.*, 2007 WL 3407437 at *3 (N.D. Cal. Nov. 13, 2007) (responses deficient where they lacked "basic specific details" such as dates).

Respectfully, this Court should compel DC to respond with answers that, at the very least, convey specific and meaningful information as to DC and Warner Bros.' oral communications with Mark Warren Peary,  Jean Adele Peavy, Frank Shuster and DC and  Warner Bros.' oral communications with Joseph Shuster regarding DC's rights in and to Superman.

**2.    Interrogatory No. 5**

Peary's fifth Interrogatory asked DC to "IDENTIFY all COMMUNCATIONS between YOU AND any third-party that REFFERRED TO the 1992 AGREEMENT." This was a narrow, non-objectionable interrogatory directed at a very specific topic – the short October 2, 1992 agreement between DC and Joe Shuster's siblings, Jean Peavy and Frank Shuster (the "1992 Agreement"), which

---

[2] *See* Arredondo Decl., Ex. C at 3-8, for DC's similar response to Interrogatory Nos. 2-4.

1  raised the siblings pension by a few thousand dollars and contained a perfunctory

2  quitclaim.  *See* Arredondo Decl., Ex. D.  In the First Claim of its First Amended

3  Complaint ("FAC," Docket No. 49), DC alleges that this modest agreement

4  destroyed the Shuster estate's termination rights under section 304(d) of the

5  Copyright Act by revoking all of Joe Shusters' Superman copyright grants to DC and

6  then re-granting those rights to DC in a post-1978 grant that is not terminable under

7  the Act.   FAC ¶55.  DC makes this allegation even though the 1992 Agreement

8  contains no language of revocation or rescission whatsoever, and does not even

9  mention Superman.

         Hence, defendants sought by Interrogatory No. 5 to test the enhanced status

11  and meaning DC attributed to this half-page 1992 Agreement by inquiring into third-

12  party communications regarding the Agreement.  This Interrogatory asked only about

13  DC's communications with regard to a single document, and then further limited the

14  inquiry to communications with third parties.  DC nonetheless claims that this

15  Interrogatory is not "narrowly tailored" enough and then attempts to evade any

16  meaningful response by literally pointing to the *entirety* of the record in both this

17  action and the *Siegel* actions:

18          DC objects to this Interrogatory on the grounds that it is
          indefinite as to time and not reasonably limited in scope, and to the
19          extent that it seeks the production of any item, or portion thereof,
          which is not reasonably calculated to lead to the discovery of relevant
20          and admissible evidence. DC further objects to the extent that it seeks
          information protected by the attorney-client privilege, the attorney
21          work product doctrine, or any other applicable privilege or immunity.
          DC objects to the phrase "COMMUNICATIONS between YOU AND
22          any third-party" as overbroad, as it would include, for example, all
          statements made to the court, mediators, and to the press concerning
23          the 1992 agreement and DC's claims in this case concerning that
          agreement. DC objects to the definition of "COMMUNICATION" as
24          vague and overbroad and will respond to this term as excluding any
          documents filed in connection with prior or ongoing litigation. DC
25          objects to the extent the Request "all COMMUNICATIONS" on the
          ground that such request is overly broad, unduly burdensome,

26

27

28

EXHIBIT 13
67

oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, **DC refers defendants' attention to** its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the** *Siegel* **action** (*e.g.*, DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases and here**. **All of these sources are incorporated by reference herein.**

Subject to and without waiving the foregoing objections, DC is willing to meet and confer with defendants to reasonably tailor this request.

(emphasis added).

1    DC's reference here to the entire record in three legal actions does not answer

2    the Interrogatory in any intelligible fashion.  Indeed, citing to the records of multiple

3    cases is equivalent to offering no response at all.  *Landon v. Ernst & Young LLP*,

4    2009 U.S. Dist. LEXIS 119387, 7-8 (N.D. Cal. Dec. 2 2009) (rejecting responses that

5    include reference to entire production in related matter); *Scaife v. Boenne*, 191 F.R.D.

6    590, 594 (N.D. Ind. 2000); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D.

7    584, 587 (C.D. Cal 1999).  The cited materials in the record are not responsive to the

8    Interrogatory, and DC's efforts to evade responding by citing to thousands of pages

9    of irrelevant materials is wholly improper. DC should be compelled to directly and

10   specifically answer Peary's Interrogatory No. 5.

11   **3.    Interrogatories Nos. 9-15**

12        DC responds in a similarly improper manner to Interrogatories Nos. 9-15. All

13   of these Interrogatories were "contention interrogatories," properly aimed at

14   identifying the evidence supporting DC's claims and allegations in its Complaint:

15   **Interrogatory No. 9**

16   IDENTIFY any evidence that supports YOUR contention that "[t]he
     Shuster Termination Notice is invalid, and thus ineffective," found in
17   paragraph 106 of YOUR COMPLAINT.

18   **Interrogatory No. 10**

19   IDENTIFY any evidence that supports YOUR contention that "[t]he
     1992 Agreement that Frank Shuster and Jean Peavy entered into with
20   DC Comics bars the Shuster Estate from pursuing termination
     because, *inter alia*, in exchange for valuable consideration, the 1992
21   Agreement effected a rescission, revocation, and re-grant of all prior
     copyright grants, which eliminated any pre-1978 grant that could be
22   subject to termination under section 304 of the Copyright Act," found
     in paragraph 112 of YOUR COMPLAINT.
23
     **Interrogatory No. 11**
24
     IDENTIFY any evidence that supports YOUR contention that
25   "Shuster's heirs approached DC Comics in 1992 seeking increased
     annual payments, certain tax benefits, and payment of Shuster's debts
26   and expenses," and that "[a]t the time, Shuster's heirs recognized the
     value of Superman as a property," found in paragraph 115 of YOUR
27   COMPLAINT.

28

**Interrogatory No. 12**

IDENTIFY any evidence that supports YOUR contention that "the Shusters are estopped from disputing that the 1992 Agreement remains in full force and effect, which operates to preclude the assertion of any termination right," found in paragraph 117 of YOUR COMPLAINT.

**Interrogatory No. 13**

IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were intended to conceal material information from DC Comics, including: (a) the various conflicts of interest arising from Toberoff's and his companies' significant ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

**Interrogatory No. 14**

IDENTIFY any evidence that supports YOUR contention that "the Shuster Termination Notice … contains material misrepresentations intended to mislead the courts, Copyright Office, and DC Comics—all to the detriment of DC Comics," found in paragraph 129 of YOUR COMPLAINT.

**Interrogatory No. 15**

IDENTIFY any evidence that supports YOUR contention that "[i]nduced by Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights in the Shuster Termination Notice," found in paragraph 131 of YOUR COMPLAINT.

After cutting and pasting its repeated block of boilerplate objections and pointing to a handful of questionably relevant materials, DC's answers to each of these Interrogatories Nos. 9-15 again refers defendants to literally every document filed and produced in both this action and in the *Siegel* actions.  Below is as verbatim reproduction of DC's response to Interrogatory No. 11, which is representative of the evasive tactic DC took in answering all of Peary's contention interrogatories:

> DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further objects to the Interrogatory on the ground that it is compound and includes numerous discrete subparts

addressed to separate contentions. Each subpart should be counted a separate interrogatory for the purposes of calculating the number of interrogatories that Peary has propounded on DC. DC objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.
Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00008-12, DC00014-15, DC00094-144, DCC00006184, DCC00006188-6190, DCC00006192-94, DCC00006198, DCC00006203-05, DCC00006206-07, DCC00006214-15, DCC00006372-73, DCC00006375-76, DCC00006399, DCC00006413-41, DCC00006448, DCC00006462, DCC00006474, DCC00006477-92, DCC00006495-96, DCC00006498, DCC00006607-18, DCC00006620, DCC00006629-30, DCC00006775-78, DCC00006855-56, DCC00006867, DCC00006869, DCC00006872-79, DCC00008506-07, DCC00057854, DCC00057855, DCC00073008, DCC00073010, DCC00073012-17, WB005603, WB007959-61, WB007972, WB010169-70, WB010161-10162, Q0001-07, LSL00211-12, LSL00482-86.

Subject to and without waiving all foregoing objections, **DC refers defendants' attention to** its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**— including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1

10
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 13
71

to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the Siegel action** (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases** and here. **All of these sources are incorporated by reference herein**.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

(emphases added).[3]

These answers are wholly improper.  Defendants' Interrogatories No. 9-15 were geared towards the most natural of questions: what is the evidence that Plaintiff relies upon for certain contentions in its complaint?  DC's responses, which again incorporate by reference the *entirety* of the record in two lawsuits are, as noted above, equivalent to offering no responses at all.  *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8.

DC gives the illusion of specificity by citing some Bates numbers but then entirely defeats the purpose of these contention interrogatories by *co-mingling* these cites with the entire production and record in two litigations. *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005) (interrogatory responses that "merely refer to every document . . . defeat the purpose of a contention interrogatory [which is] to . . put a party on notice of its opponent's contentions and the evidence on which it relies."); *Williams v. Sprint/United Management Co.*, 235 F.R.D. 494, 501 (D.Kan. 2006) ("Plaintiffs may not answer the interrogatory by generally referring Defendant to the ... documents produced ...

---

[3] *See* Arredondo Decl., Ex. C at 12-36 for DC's similar responses to Interrogatories, Nos. 9-10, 12-15.

but rather must indicate with specificity where the information can be found.").

In *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012), the court rejected a party's interrogatory response which stated that "[o]ther emails previously produced may also [be responsive]."  Here, DC points not only to every email produced, but to every document of any kind produced in two long-running litigations.

DC's improper responses are designed not only to evade providing any meaningful answers, but also to misdirect and misinform.  Many of the documents DC specifically points to and lists by Bates number are palpably irrelevant to the interrogatory in question.  For example, Interrogatory No. 11 asked DC to identify any evidence that supported its contention that "Shuster's heirs approached DC Comics in *1992* seeking increased annual payments, certain tax benefits, and payment of Shuster's debts and expenses," and that "*[a]t the time*, Shuster's heirs recognized the value of Superman as a property."  DC's Response points to a host of irrelevant and non-responsive documents and letters from 1996-1997 (DCC00006607-18, DCC00006620, DCC000029), years after the specified time period.  It even cited a 1997 holiday card (DCC00006630) and a brief letter regarding the family's request for a tape of a memorial service (DCC00006630).

Thus, DC's answers are worse than meaningless in that they not only point to the entire universe of documents and the record in two litigations, they also misleadingly point specifically to purportedly responsive documents that are wholly irrelevant.

Defendants are entitled to know, with specificity, what evidence DC relies upon in making its claims and allegations.

**IV.    DC'S STATEMENT OF ISSUES**

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 13
73

1

2

3

4      Dated:      July __, 2012            Respectfully Submitted,

5                                          TOBEROFF & ASSOCIATES

6                                          By:   /s/ Marc Toberoff

7                                          Marc Toberoff
                                           Attorneys for Defendants Laura Siegel
8                                          Larson, Mark Warren Peary, and Jean
9                                          Adele Peavy

10

11

12

13     Dated:      July __, 2012            Respectfully Submitted,

14                                          O'MELVENY & MEYERS, LLP

15                                          By: _____

16                                          Daniel M. Petrocelli
17                                          Attorneys for Plaintiff DC Comics

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 14

○

## O'MELVENY & MYERS LLP

<table>
<tr><td>BEIJING</td><td rowspan="8" align="center">1999 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067-6035<br><br>TELEPHONE (310) 553-6700<br>FACSIMILE (310) 246-6779<br>www.omm.com</td><td>SAN FRANCISCO</td></tr>
<tr><td>BRUSSELS</td><td>SHANGHAI</td></tr>
<tr><td>HONG KONG</td><td>SILICON VALLEY</td></tr>
<tr><td>LONDON</td><td>SINGAPORE</td></tr>
<tr><td>LOS ANGELES</td><td>TOKYO</td></tr>
<tr><td>NEWPORT BEACH</td><td>WASHINGTON, D.C.</td></tr>
<tr><td>NEW YORK</td><td></td></tr>
</table>

July 15, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write to respond to defendants serving DC on Friday, July 13, with their Motion to Compel Interrogatory Responses.  Defendants' motion is not well-taken, and we urge you to withdraw it.  As we told you both in writing and during the parties' meet-and-confer on March 16, 2012, DC was—and remains—willing to consider amending its responses to provide defendants with reasonable discovery if defendants can target what they need.  As they read, the interrogatories at issue span countless communications over decades, and seek a form of relief to which Judge Zarefsky already ruled the parties are not entitled.  Rather than taking DC up on its March offer, defendants instead chose to say nothing about the issue for the next four months, until serving DC with its motion on Friday.

Defendants' complete silence on these issues since the March 16 meet-and-confer is even more troubling given the numerous conversations we have had over the past two weeks about DC's motion for summary judgment, its scheduling, and any discovery defendants believe they need to oppose.  You never once mentioned DC's interrogatory responses or that you intended to bring a motion to compel.  Had defendants raised the issue during these conversations, the parties could have endeavored to resolve them.  Moreover, much of the information defendants seek in their motion can and will be obtained during Paul Levitz's July 26 deposition, meaning defendants' motion is further premature.

Defendants should withdraw their premature motion, without prejudice, in order to avoid wasting DC's and the Court's time on an issue that defendants never properly met and conferred on.  Please let us know by the end of business Monday, if you will do so.  If not, DC will oppose defendants' motion and seek sanctions.

EXHIBIT 14
75

O'MELVENY & MYERS LLP
July 15, 2012 - Page 2

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Richard Kendall, Esq.
       Defense Counsel

EXHIBIT 14
76

# EXHIBIT 15

**From:** Kline, Matthew
**Sent:** Monday, July 16, 2012 4:22 PM
**To:** Pablo Arredondo
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Pearson, Ashley; 'David Harris'; 'Marc Toberoff'; Tokoro, Jason
**Subject:** RE: DC v. PPC

Pablo:

DC will oppose your motion and seek sanctions for your failure to meet and confer.

All rights are reserved,

Matt

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Monday, July 16, 2012 3:55 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Pearson, Ashley; 'David Harris'; 'Marc Toberoff'; Tokoro, Jason
**Subject:** RE: DC v. PPC

Matt:

Marc's email raises DC's improper citation to the entire record, a problem that, as defendants informed DC in their March 8, 2012 Rule 37-1 letter addressed to you, applies to DC's responses both to defendants' interrogatories and to defendants' requests for production.  In fact, defendants' March 8, 2012 letter focused on DC's evasive interrogatory responses.  Ms. Brill's July 11, 2012 letter to Mr. Petrocelli reaffirms this, noting that:

"DC has refused to meaningfully respond to defendants' targeted requests for production and interrogatories regarding specific passages from DC's complaint.  Instead, DC points to nearly the *entire* production and record in both this action and in *Siegel,* rendering their answers meaningless and making it impossible for defendants to know the evidence that DC relies upon."

Your response sent the same day was that Ms. Brill's letter "misstates DC's discovery record."

If DC is serious about "contemplating how and whether to amend its responses,"  we suggest you read our portion of the joint stipulation and do just that.  If DC provides by Friday, July 20 amended responses that are sufficient, defendants will withdraw their motion.  This has dragged on far too long.

Pablo


Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256

1

EXHIBIT 15

(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**From:** Tokoro, Jason [mailto:jtokoro@OMM.com]
**Sent:** Monday, July 16, 2012 9:43 AM
**To:** Pablo Arredondo
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Pearson, Ashley; Richard Kendall; Laura Brill; Nicholas Daum; David Harris; Marc Toberoff
**Subject:** RE: DC v. PPC

Pablo,

Please see below correspondence sent on behalf of Matthew T. Kline.

*        *        *

Pablo,

Your misrepresentations of the record facts over the past several weeks continues. Marc's June 12, 2012, email to which you point us makes no mention of DC's interrogatory responses on which defendants have prematurely served their motion—*none*—nor did you or Marc ever mention the issue during our discussions over the past many weeks:

> **From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
> **Sent:** Tuesday, June 12, 2012 10:55 AM
> **To:** Kline, Matthew
> **Cc:** Tokoro, Jason; Seto, Cassandra; Petrocelli, Daniel; Richard B. Kendall; Pablo Arredondo; David Harris
> **Subject:** Re: DC Comics v. Pacific Pictures
>
> Matt:
>
> What ruling concerning what purported misconduct are you referring to exactly?
>
> We are in the midst of responding to your frivolous motion to supplement the record on appeal which knowingly flouts the rules of appellate procedure and abuses the doctrine of judicial notice. We will thereafter review DC's interrogatories and defendants' responses to see if there is anything that should be updated and, if so, provide you with supplementary responses in due course.
>
> In the meantime, you have never provided us with proper responses or any responsive documents to defendants' first set of requests for production served six months ago. Instead, as to nearly every particular request you evasively designated the entire Bates nos. range of every document produced in the *Siegel* case. In six months you have also failed to provide a privilege log, waiving privilege as to your clients.
>
> Marc

2

EXHIBIT 15
78

As you can see, Marc's email mentions *defendants'* interrogatory responses (which defendants amended) and complains about DC's responses to "defendants' first set of *requests for production*" and "privilege logs"—and no more.   Your persistent willingness to misstate the meet-and-confer record is improper, and we will address it with the Court.

As for asking us to supplement our interrogatory responses this week—without any promise you will withdraw your motion, and when you have never properly met and conferred with us on the requests or taken Mr. Levitz's deposition—makes no sense.  A meet and confer (which neither Keith Adams nor Marc ever completed, despite our offers to do so *in March*) must first occur before you can file your motion or DC can contemplate how and whether to amend its responses.  Your present motion is procedurally and substantively deficient, and absent your withdrawing it today, we will oppose it.

All of DC's rights are reserved.

Matt Kline

---

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Sunday, July 15, 2012 5:32 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'
**Subject:** DC v. PPC

Matt:

I write in response to your July 15, 2012 letter urging Defendants to withdraw their motion to compel interrogatory responses and stating that DC "is willing to consider amending its responses."

Your assertion that Defendants' have been silent on these issues since March is demonstrably false; they were raised recently in an email to you, from Mr. Toberoff, dated June 12, 2012.  Your response on the same day was that defendants' discovery claims were "false."

Mr. Peary's portion of the joint stipulation clearly identifies the interrogatories at issue and type of responses we are seeking.  If DC serves amended responses prior to next Friday, we will of course evaluate whether our motion is still needed.  Otherwise please send us your portion of the joint stipulation per the Local Rules.

Thanks.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

3

EXHIBIT 15
79

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read,
copy, distribute or use this information. If you have received this transmission in error, please notify the sender
immediately by reply e-mail and then delete this message.

4

EXHIBIT 15
80

# EXHIBIT 16

**From:** Tokoro, Jason
**Sent:** Tuesday, June 12, 2012 5:42 PM
**To:** 'Marc Toberoff'
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Richard B. Kendall; Laura Brill; Nicholas Daum; Pablo Arredondo; David Harris; Keith Adams
**Subject:** RE: DC Comics v. Pacific Pictures

Please see below correspondence sent on behalf of Matthew T. Kline.

\*        \*        \*

Marc,

1. With regard to the rulings we are referencing, you can start by looking here:  *In re Pacific Pictures Corp.*, 2012 WL 1640627, at \*1, \*5 (9th Cir. May 10, 2012).  Then you can look at the district courts' orders (in Ohio, issued by Judge Zarefsky, issued by Judge Wright) compelling you to produce the trove of Michael-Laura Siegel documents that were wrongly withheld and that support our fraud and tort claims.  Then we can talk about your deficient production of the Timeline and USAO documents.

2. *More than one year ago*, Judge Zarefsky held that defendants shared no common-interest with the USAO, and that any other privileges had been waived.  Dick's firm signed the interrogatories at issue (you do not represent yourself in pro per), met and conferred with us on the responses last year, and, like you, Dick and his firm have had an obligation to supplement the responses.  The recent stay orders that you and he sought were rejected.  You and Dick must supplement the interrogatories and do it now, especially given that Dick is refusing to produce his notes.  You and Dick must also address the unanswered document issues raised below, as well as the ethics ones.  Your excuses about other Ninth Circuit briefing obligations getting in the way, when you already obtained a three-week extension to address them, are without merit.  We will move to compel Dick's and your responses and move for discovery sanctions, as needed.  As for your claims regarding "frivolous" filings, that is exactly the same empty rhetoric we heard from you and your counsel that led to the writ ruling as well as the SLAPP ruling you are now appealing.

3. Your claims about DC's discovery responses are false.  DC provided you with documents and privilege logs and, despite our meet-and-confer with Keith, you have done nothing about this issue except to make hollow assertions like those below.

All of DC's rights are reserved,

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Tuesday, June 12, 2012 10:55 AM
**To:** Kline, Matthew

EXHIBIT 16
81

**Cc:** Tokoro, Jason; Seto, Cassandra; Petrocelli, Daniel; Richard B. Kendall; Pablo Arredondo; David Harris
**Subject:** Re: DC Comics v. Pacific Pictures

Matt:

What ruling concerning what purported misconduct are you referring to exactly?

We are in the midst of responding to your frivolous motion to supplement the record on appeal which knowingly flouts the rules of appellate procedure and abuses the doctrine of judicial notice. We will thereafter review DC's interrogatories and defendants' responses to see if there is anything that should be updated and, if so, provide you with supplementary responses in due course.

In the meantime, you have never provided us with proper responses or any responsive documents to defendants' first set of requests for production served six months ago. Instead, as to nearly every particular request you evasively designated the entire Bates nos. range of every document produced in the *Siegel* case.  In six months you have also failed to provide a privilege log, waiving privilege as to your clients.

Marc

On Mon, Jun 11, 2012 at 9:41 PM, Kline, Matthew <MKline@omm.com> wrote:
Marc:

The courts' rulings--including concerning your misconduct--speak for themselves.  So does the record concerning Mr. Marks, where we have done nothing untoward.  Notably absent from your email is the discovery information to which we are entitled.  You and Dick need to provide it, now.

All of DC's rights are reserved.

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, June 11, 2012 7:07 PM
**To:** Kline, Matthew
**Cc:** Richard B. Kendall; Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pablo Arredondo
**Subject:** Re: DC Comics v. Pacific Pictures

Matt:

Your repeated *ad hominem* attacks and false accusations of purported discovery misconduct has been shown time and again to be empty hyperbole, just as it will in any motion you attempt to justify with your fabricated rhetoric.

We will bring your abusive and inappropriate conduct both as to us and third party witnesses such as Kevin Marks to the Court's attention.

Marc

On Mon, Jun 11, 2012 at 5:19 PM, Kline, Matthew <MKline@omm.com> wrote:

EXHIBIT 16
82

Dick,

The issues are joined now, and you are not providing us with answers.

1. You've not addressed how we will discover your oral communications with the government other than to say Marc Toberoff will be addressing that issue at some unnamed point in time. Marc Toberoff, your client, has not done so, and saying he will do so at some point in time is not a response. We need to know from you what you and the USAO said to one another, and you can certainly provide that detail in amended interrogatory responses, especially given the work you and your firm did on the original responses—both signing them and meeting and conferring on their substance. Moreover, despite our conversation last week, you have provided us with no authority justifying your relegating your discovery duties to your client in this way, and we are aware of none, especially in light of the discovery misconduct by your client here. Please provide us with any authority on which you are relying to assign your duties in this way.

2. The claims of sloppiness are not well taken. SD 924 and 925 contain a series of emails in a chain, but not the earliest email standing alone. The earlier email has not been produced. Why is that? Are you saying it has been? Are you saying it no longer exists as a stand-alone email? Or are you saying you eliminated copies of earlier emails in chains? Last week, you said you did no de-duplication—now are you saying you did? Also, what was the "non-repeated human error" and why are you sure it was "non-repeated"?

As discussed last week, we need and are entitled to precision here, especially given the original and inadequate production that you let your client provide.

Thanks,

Matt

---

**From:** Richard Kendall [mailto:rkendall@kbkfirm.com]
**Sent:** Monday, June 11, 2012 4:38 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; 'mtoberoff@ipwla.com'; Nicholas Daum; kgadams@ipwla.com; Pablo Arredondo; Pearson, Ashley; Laura Brill

**Subject:** RE: DC Comics v. Pacific Pictures

Matt:

Your reply to my email is not constructive, and this correspondence is becoming a waste of time.

First, you have not disputed that my notes are protectable work product. The question of whether you are entitled to obtain the contents of my communications with the USAO through means other than disclosure my work product-privileged notes is of course a different one, as I pointed out in my below email. As discussed during our "meet and confer," I disagree with the other comments in your first paragraph.

EXHIBIT 16
83

Second, you are being sloppy and are absolutely wrong in persisting with your accusation that the copy of the "October 21, 2010, email from you to Mr. Klein, copying Mr. Toberoff, [misdated] September 13, 2010" that resided in KBK's files was not produced to you. Again, please see SD 924 and 925, referenced in my prior email. The September 14 email that resided in our "sent" file was not produced because of a non-repeated human error.

As to the remainder of your rhetoric, I will simply disagree and let it go at that for now.

Kind regards,

Dick

**Richard B. Kendall**
Kendall Brill & Klieger LLP
Direct: (310) 272-7900

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

**From:** Pearson, Ashley [mailto:APearson@OMM.com]
**Sent:** Monday, June 11, 2012 3:35 PM
**To:** Richard Kendall; Laura Brill
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Tokoro, Jason; 'mtoberoff@ipwla.com'; Nicholas Daum; kgadams@ipwla.com; Pablo Arredondo
**Subject:** FW: DC Comics v. Pacific Pictures

Counsel,

Please see the email below sent on behalf of Matt Kline.

*          *          *

Dick:

I have been out of the office, and I write in response to your email below.

1. Whether your notes contain verbatim, or near verbatim, recitations of your conversations with Mr. Kim or Mr. Klein does not absolve you of the obligation to disclose to DC the substance of those communications, including what you told the USAO or what the USAO told you. Such information is not privileged or shielded by work-product protections, as the courts have held. As we made clear in our prior email, DC does not seek your work-product

EXHIBIT 16
84

notes about your strategy calls, and defendants may redact and log that information, but DC is entitled to know what communications you exchanged in those non-privileged discussions. In addition, it is plain that Mr. Toberoff's interrogatory responses require updating based not only upon the courts' decisions, but also these recently disclosed conversations between you and the USAO, which have never before been disclosed or logged. Neither you nor your firm can avoid its obligations to meaningfully participate in this case and ensure that your clients' discovery responses are accurate and complete by claiming you have an "agreement" with Mr. Toberoff regarding a division of labor that allows him to control all aspects of the discovery process—especially here, where it has been proven time and time again that Mr. Toberoff's discovery responses have been incomplete, and he has made untrue claims concerning the contents and substance of documents.

2. Jason did inadvertently describe the October 21, 2010, email from you to Mr. Klein, copying Mr. Toberoff, as being dated September 13, 2010, but that is beside the point. The point is that your firm never produced this document to DC, and you still have provided no explanation for why that is the case, given the allegedly exhaustive nature of your document searches. Nor did your firm produce a redacted or unredacted copy of the September 14, 2010, email from you to Mr. Toberoff, which Mr. Toberoff produced from his personal Gmail account. You state that Mr. Toberoff's office will produce redacted versions of this document from Mr. Toberoff's email account and the Kendall Brill firm's "sent" file, but that response avoids the broader issue at hand—why neither you nor your firm produced these documents? Did your search not capture them? Do they not exist in your firm's files? It can't be the latter as to the September 14 email, because you seem to be saying that you will now produce a copy your firm's "sent" file.  In sum, we need to why these documents were not picked up by your search, and whether other similar documents exist. Too much time and effort has been expended, as it is, trying to get defendants and their counsel to comply with the courts' recent orders.

Best and thanks,

Matt

**From:** Richard Kendall [mailto:rkendall@kbkfirm.com]
**Sent:** Thursday, June 07, 2012 1:33 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Laura Brill; Nicholas Daum; Keith Adams; Pablo Arredondo; Marc Toberoff; Tokoro, Jason
**Subject:** RE: DC Comics v. Pacific Pictures

Matt:

1.  I do not believe you are entitled to know the contents of my work product, except to know that it does not contain either a verbatim, or near verbatim, of my conversations with either Mr. Kim or Mr. Klein. Your contention that Mr. Toberoff's interrogatory responses require updating based on the Ninth Circuit's decision that the attorney-client privilege was waived as to the stolen documents provided to the USAO presents different issues, and Mr. Toberoff is reviewing those.

2.  The copy of the "September 13, 2010" email in the KBK files to which you refer (you

EXHIBIT 16
85

have misread the date: it is actually an October 21, 2010 email whose subject is "Grand Jury subpoena dated September 13, 2010") has already been produced to you twice by Mr. Toberoff's office. See SD 924 and 925. The September 14, 2010 email residing in Mr. Toberoff's gmail account was inadvertently produced by Mr. Toberoff without redacting the portion of the document reflecting my attorney-client communication to Mr. Toberoff. Mr. Toberoff's office will be producing a redacted version of this email, from both his gmail account and duplicate thereof that resides in the KBK "sent" file, and will be supplementing the privilege log to assert the attorney-client privilege in the redacted portion of this document. In the meantime, please return the inadvertently produced document and destroy all copies of same, and make no further use of the document in any correspondence, motion practice, pleadings, briefs, or otherwise. The attachment (the September 10, 2010 email from Mr. Klein to me, denominated as such in the September 14 email) was produced to you long ago, and is already part of the record in the litigation over the stolen documents in the District Court and the Ninth Circuit.

All rights are reserved.

Kind regards,

Dick

**Richard B. Kendall**
Kendall Brill & Klieger LLP
Direct:  (310) 272-7900

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

---

**From:** Tokoro, Jason [mailto:jtokoro@OMM.com]
**Sent:** Wednesday, June 06, 2012 9:26 PM
**To:** Richard Kendall
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Laura Brill; Nicholas Daum; Keith Adams; Pablo Arredondo; Marc Toberoff
**Subject:** RE: DC Comics v. Pacific Pictures

Counsel,

Please see the below correspondence sent on behalf of Matthew T. Kline.

*       *       *

EXHIBIT 16
86

Dick,

1. Thank you for your letter and checking your computer for notes. Some follow-up questions: Do any of the notes record what you told the USAO or what the office told you? If so, the substance of those communications must be disclosed, as they are not privileged. If there are work-product notes about your strategy calls, we do not want to see those. But we are entitled to know is what communications you exchanged in those non-privileged discussions. If the notes need to be redacted, that is fine. You should also report on the contents of the communications in amended Interrogatory Responses to DC's Requests Nos. 9-19 served on December 10, 2011, on defendant Marc Toberoff. *E.g.,* Interrogatory No. 9 ("DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official, including anyone employed by the United States Attorney's Office for the Central District of California and/or the Federal Bureau of Investigation, regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE."). We expect to get those communications this week or early next. If you want to discuss the matter further in a Rule 37 call, let's have it this Friday.

2. During our meet-and-confer on Monday, we discussed the fact that defendants have not produced documents in the possession, custody or control of the Kendall Brill firm responsive to the Court's orders. Specifically, your firm has not produced its copies of correspondence with the U.S. Attorney's Office—on which you are an author or recipient—that have been produced by Mr. Toberoff from his personal Gmail account. We have attached two examples that Jason identified—a September 13, 2010, email from you to Mr. Klein and copying Mr. Toberoff, and a September 14, 2010, email from you to Mr. Toberoff forwarding an email to you from Mr. Klein. Please confirm why you did not produce these documents; do they not exist among your files? Did your search not capture them? Either way, please check again to see that your firm's production was fully complete. We want to follow up on these issues and the others raised in our call.

Thanks,

Matt

---

**From:** Dawn Mancil [mailto:dmancil@kbkfirm.com]
**Sent:** Tuesday, June 05, 2012 11:44 AM
**To:** Kline, Matthew
**Cc:** mtoberoff@jpwla.com; Richard Kendall
**Subject:** DC Comics v. Pacific Pictures


**Dawn F. Mancil**
**Assistant to Richard B. Kendall, Esq.**
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Tel: (310) 556-2700
Fax: (310) 556-2705
E-mail: dmancil@kbkfirm.com
Web: www.kbkfirm.com

EXHIBIT 16
87

PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.  If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.  Thank you.

--
**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

EXHIBIT 16
88

# EXHIBIT 17

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 17, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

        **Re:**    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

      I write in response to your letter of last night concerning defendants' threatened *ex parte* motion. If defendants file the motion—which we believe, as shown below, is deficient under the applicable case law and Judge Wright's standing order, *see* Docket No. 18 at 8-9 ¶ 10 ("Ex parte applications are solely for extraordinary relief and should be used with discretion. Sanctions may be imposed for misuse of ex parte applications. *See Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).")—DC will oppose the motion and request its fees and costs. Pursuant to Local Rules 7-19 and 7-19.1, as well as His Honor's standing order, *see id.*, please make sure to include this letter with any filing you make, so that DC's opposition and the reasons for it are clear.

      To summarize, *ex parte* relief is improper here for at least three main reasons. First, any timing concerns defendants face are solely of their own making. *Cf. Mission Power*, 883 F. Supp. at 493 (denying *ex parte* relief where party did not "establish that it was without fault in creating whatever it is that it perceives as a crisis condition"). Defendants have been on notice of DC's intention to file its summary judgment motion for *six months*, Docket No. 364 at 8-10, and defendants briefed the two claims and issues raised in DC's partial summary judgment motion in the many Rule 12 motions defendants briefed and filed during the past two years—and then withdrew when their SLAPP motion was denied. Docket Nos. 31, 33, 34, 77, 78, 80, 146-148, 337, 343. Second, DC made several offers to defendants to afford them the very relief they seek in their *ex parte* motion, and defendants declined these offers. *Cf. Costner v. MRA Funding Corp.*, 2009 LEXIS 39031, at *2, *4-5 (C.D. Cal. Apr. 23, 2009) (denying *ex parte* where claimed injury was asserted need to litigate lis pendens issue immediately, but buyer had offered to close sale if lis pendens issue was resolved in the normal course or on an expedited basis). Third, defendants' motion asks the Court to alleviate them of their basic briefing obligations imposed by the Federal Rules. *Cf. id.* While defense counsel have many times sought to evade

EXHIBIT 17
89

O'MELVENY & MYERS LLP
July 17, 2012 - Page 2

the rules, *e.g.,* Docket No. 328 (noting defense counsel improperly "slither[ed] around [court's] page limitation[s]"), including those governing counsel's "ethical and professional" obligations, *In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012), the rules apply to defendants like everyone else.

We explain and elaborate on these three points below.

1. Your letter of yesterday is misleading when it says that "[o]n June 21, 2012 DC informed defendants that it was considering moving for partial summary judgment on its First and Third Claims."  DC informed defendants of its intentions to file for partial summary judgment on its First Claim *six months ago*, as evidenced by a Joint Status Report the parties filed on January 24, 2012. Docket No. 364.  DC told defendants in the weeks' worth of discussions leading up to that joint filing that it either wished to bifurcate and try its First and Third Claims for relief, or would move for partial summary judgment.  Defendants would only stipulate to trying DC's First Claim.  Docket Nos. 351, 364 at 2-3.

None of the claims raised in DC's summary judgment motion filed yesterday are new. DC identified the three grounds on which it would move for summary judgment on its First Claim in its January 2012 filing.  *Compare* Docket Nos. 364 at 8-9 (January 24, 2012 filing), *with* 458 at 10-23 (DC's summary judgment motion filed yesterday).  Those same grounds appeared in DC's complaint filed in May 2010, Docket No. 1 at 31-36, and its amended complaint filed in September 2010, Docket No. 49 at 35-41.  Defendants filed three separate versions of Rule 12 motions addressing these three bases for DC's First claim and DC's Third Claim as well, only to withdraw the final version when they lost their SLAPP motion and the Court ruled that defendants' Pacific Pictures agreements (which DC challenges in its Third Claim) "gutted" DC and Jean Peavy's 1992 Agreement (which DC's First Claim seeks to enforce).  *See id.*; Docket Nos. 31, 33, 34, 77, 78, 80, 146-148, 337, 343.

While you claim in your July 18 letter (and said during our phone calls) that defendants cannot prepare their briefs opposing DC's summary judgment motion in the two weeks allotted by the Rules, *see* FED. R. CIV. P. 6(c), 56(b); C.D. CAL. L. R. 7-9; Docket No. 18 at 6-8 ¶ 6(d), 3-6 ¶ 5, we disputed that claim during our call and reminded you it was only defendants' lack of diligence the past six months—and since June 21, when we again alerted you that DC would file its motion—that has caused defendants' alleged predicament.  As for your cross-motion, defendants told the Court in January 2012 the grounds on which they would move, Docket Nos. 364 at 10-12, and defendants briefed all of the issues they said they would move on in their hundreds of pages of Rule 12 filings and SLAPP and appellate briefs, *E.g.*, Docket Nos. 30, 31, 33, 34, 75, 77, 78, 80, 98, 100, 102, 103, 145, 146-148, 195, 196, 312; 9th Cir. Case No. 11-56934, Docket No. 8.  It is only through defendants' lack of diligence the last six months (and the past month) that they are not prepared to file their cross-motion papers on summary judgment.

Such lack of diligence on defendants' part bars the *ex parte* relief they seek.  *See Larin Corp. v. Alltrade, Inc.*, 2010 WL 4394287, at *1 (C.D. Cal. Oct. 28, 2010) (Wright, J.) (movants must "convince the Court that … irreparable prejudice would occur should this particular issue

EXHIBIT 17
90

O'MELVENY & MYERS LLP
July 17, 2012 - Page 3

be heard according to regularly-noticed motion procedures *[and] that they are without excusable fault for the present situation*") (emphasis added); *Mission Power*, 883 F. Supp. at 493 (discussed *supra*); *Pate v. Wells Fargo Bank Home Mortg., Inc.*, 2011 WL 2682646, at *1 (C.D. Cal. July 7, 2011) (describing *Mission Power* as "well-settled in this circuit"; denying extension of time for hearing because moving party "fail[ed] to show that he is without fault in creating the [allegedly emergency] situation").

2.   Your July 18 letter notably omits the briefing schedules DC offered to defendants, *which you declined*, as well as DC's offer to move the hearing date from August 20, a date you say you will be away.  The reason we made these proposals is that you told us about your vacation last week—*19 days* after we had sent our June 21 meet-and-confer letter—and we wanted to take any reasonable steps we could to protect your time away.  *See* Docket No. 18 at 4 ¶ 5(b).  As I told you in our first call, to make sure that neither DC nor defendants would have to work on any briefing while their counsel were on planned vacations, DC would propose a briefing schedule by which DC would file its motion for partial summary judgment on July 16, 2012 (as planned), defendants would file their opposition and cross-motion on July 30 (as required by the rules), DC would file its reply and opposition on August 10 (three days earlier than the rules require), and defendants would file their reply on August 17 (giving defendants their full allotted time to reply).  We proposed moving the hearing date of the parties' motions from August 20 to September 10 or 17, 2012, if a hearing was required.  Although this proposal cut DC's time to file its opposition and reply short by three days, we offered it to you, so that briefing could be complete on the parties' motions before you allegedly were set to leave for vacation, on Saturday August 18.  *See* July 12, 2012 Email from M. Kline to M. Toberoff (confirming this offer).

You declined DC's proposal and several days later offered a briefing schedule that gave defendants two more weeks than they are permitted by the rules, and that required DC to work on its responsive briefs *in the middle of their counsel's scheduled vacation* in late August.  We declined that proposal, both because it prejudiced DC, and gave defendants significantly more time to prepare their briefs than DC would have.  There was nothing "beyond the pale," as you assert, about our declining such a one-sided request.  Nor can *ex parte* relief be obtained to enforce such a schedule when DC made reasonable alternative offers designed to protect everyone's schedule.  *E.g.*, *Costner*, 2009 LEXIS 39031, at *2, *4-5.

Finally, as is made clear in the notice of motion that DC filed with its summary judgment motion yesterday (and in the declaration of my partner, Daniel Petrocelli), DC has no intention of insisting on keeping the August 20 hearing date, if (a) the Court, in fact, requires a hearing on the motion; and (b) you will truly be out of town that day.  As we have said, we are open to moving the hearing date to September 10 or 17, but not moving the briefing schedule required by August 20 hearing date we noticed.  While you say defendants' cross-motion makes those hearing dates required by the rules difficult to meet, that difficulty is solely of defendants' own making.  They have had months to prepare their cross motion—since January 2012, if not earlier—and apparently they sat on their hands.  *Cf. Larin*, 2010 WL 4394287, at *1; *Mission Power*, 883 F. Supp. at 493; *Pate*, 2011 WL 2682646, at *1.

EXHIBIT 17
91

O'MELVENY & MYERS LLP
July 17, 2012 - Page 4

3.  The relief defendants seek is also improper because it asks no more than to exempt defendants and their counsel from the rules governing normal summary-judgment motion practice.  *See* FED. R. CIV. P. 6(c), 56(b); C.D. CAL. L. R. 7-9; Docket No. 18 at 6-8 ¶ 6(d), 3-6 ¶ 5.  By sending defendants a meet-and-confer letter on June 21, filing its motion on July 16 (25 days later), and noticing an August 20 hearing (35 days after the motion was filed), DC gave defendants full notice of its motion as well as defendants' full two weeks to oppose and file any cross-motion of their own.  *See id.*; C.D. CAL. L. R. 7-3.  Indeed, had defendants been diligent, they would have had from June 21 (the date DC sent its meet-and-confer letter) to July 30 (the date any cross-motion is due)—*or a full five-and-half weeks*—to prepare their cross-motion. Defendants are not exempt from the rules, nor is requiring them to follow them a source of prejudice.  *See Liang v. Nguyen*, 2009 LEXIS 18203, at *7 (C.D. Cal. Feb. 26, 2009) ("courts will not grant ex parte relief unless … the moving party shows that she will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"); *Dang v. Cross*, 2002 LEXIS 10249, at *1-2 (C.D. Cal. 2002) (denying ex parte application that "appear[ed] to be an attempt to circumvent the normal noticed motion procedure" and noting the "abusive use of ex parte motions" in Central District).

\*        \*        \*

In short, DC will oppose any *ex parte* motion defendants will file, and seek its fees and costs, if it is forced to oppose such a motion.  DC does remain willing to work with defendants, however, on the hearing-date issue, as long as defendants do not try to use the hearing date as a tactical basis to seek additional time to draft briefs that they should have prepared long ago. Such manipulation of the briefing schedule is neither proper nor permitted.

All of DC's rights and remedies are reserved.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Richard Kendall, Esq.
       Defense Counsel

OMM_US:70776973

EXHIBIT 17
92

# EXHIBIT 18

1  DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Plaintiff DC Comics

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

11              Plaintiff,              **PLAINTIFF DC COMICS'
                                        AMENDED OBJECTIONS AND
12        v.                            RESPONSES TO DEFENDANT
                                        MARK WARREN PEARY'S
13  PACIFIC PICTURES                    FIRST SET OF
    CORPORATION, IP WORLDWIDE,          INTERROGATORIES**
14  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN          Hon. Otis D. Wright II
15  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,       **Complaint Filed:** May 14, 2010
16  JEAN ADELE PEAVY, an individual,    **Trial Date:**          None Set
    LAURA SIEGEL LARSON, an
17  individual and as personal
    representative of the ESTATE OF
18  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
19
              Defendants.
20

21  PROPOUNDING PARTY:        Mark Warren Peary

22  RESPONDING PARTY:         DC Comics

23  SET NUMBER:               One (Nos. 1-15)
24
25
26
27
28
                                        DC'S AMENDED OBJ. & RESP. TO
                                        PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
93

1    Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics ("DC")

2    hereby objects and responds to defendant Mark Warren Peary's ("Peary") First Set

3    of Interrogatories (the "Interrogatories").

4    **PRELIMINARY STATEMENT**

5    DC's Amended Objections and Responses to Defendant Mark Warren

6    Peary's First Set of Interrogatories ("Responses") are based on the information

7    currently known to DC.  These Interrogatories, along with Mr. Peary's

8    contemporaneously served Requests for Production, represent the first discovery

9    served by defendants in this action, and defendants have only recently served their

10   Answer in this case.  DC has attempted to investigate diligently and respond as best

11   it can to these Interrogatories.  Many of the interrogatories are addressed by

12   reference to DC's complaint and attached exhibit (Docket No. 49, Docket No. 49

13   Ex. A), all briefing in this action—including, but not limited to, the briefing and

14   exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket

15   Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36,

16   75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89,

17   90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to

18   100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to

19   147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40,

20   183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to

21   193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59,

22   306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to

23   333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and exhibits filed in

24   connection with Plaintiff DC Comic's Motion for Partial Summary Judgment On

25   Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6, 460, 460-1 to

26   460-3 )—and all discovery in this action and the *Siegel* action—including, but not

27   limited to, all deposition testimony (*e.g.*, DCC00000001-154435 and WB000001-

28   149488), and Plaintiff DC Comics' Objections and Responses to Defendant Mark

1  Warren Peary's First Set of Requests for Production (*e.g.*, Responses 1-3, 5, 43, 45,

2  46, 48, 53-55).  Given that discovery is ongoing, expert discovery has not yet

3  begun, and defendants continue their efforts to stymie DC's discovery in this case,

4  DC anticipates that it may be necessary to supplement these Responses as more

5  information becomes available.

6      By these Responses, DC does not intend to waive, and does not waive, any

7  objection at trial to the admission into evidence of these Responses, in whole or in

8  part, or the information produced in connection with it.  Rather, DC intends to

9  preserve, and does preserve, all objections to the admission into evidence of these

10  Responses, in whole or in part, and the information produced in connection with

11  them, including, without limitation, objections based on relevance, foundation,

12  authenticity, or privilege, as well as any and all objections based on the Federal

13  Rules of Evidence or otherwise.

14                    **SPECIFIC OBJECTIONS AND RESPONSES**

15  **Interrogatory No. 1**

16      IDENTIFY all COMMUNICATIONS between YOU AND Mark Warren

17  Peary.

18  **Response to Interrogatory No. 1**

19      DC objects to this Interrogatory on the grounds that it is indefinite as to time

20  and not reasonably limited in scope and would include, for example, discussions

21  with Mr. Peary at mediation sessions.  DC objects to the extent the Interrogatory

22  calls for irrelevant information and calls for a search for documents that is unduly

23  expensive, overbroad, unduly burdensome, and oppressive.  DC further objects to

24  the extent the Interrogatory seeks communications that defendants have refused to

25  produce in response to discovery served by DC, including but not limited to

26  screenplays Mr. Peary sent to DC in 1997 and 2006.

27      DC objects to the definition of "YOU" as vague and overbroad and will

28  respond to this term as limited to the relevant representatives at DC and Warner

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
95

1   Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION" as

2   overbroad to the extent it encompasses the transmission of information orally, by

3   telephone, or through gesture.  DC also objects to the definition of

4   "COMMUNICATION" as overbroad to the extent it includes documents filed in

5   connection with prior or ongoing litigation.  DC objects to the extent the Request

6   "all COMMUNICATIONS" on the ground that such request is overly broad,

7   unduly burdensome, oppressive, and not reasonably calculated to lead to the

8   discovery of admissible evidence.  As used in these Responses, the phrase "all

9   COMMUNICATIONS," or phrases of similar import, should be understood to

10  mean those communications DC and its counsel were able to locate using

11  reasonable diligence and reasonable judgment concerning the whereabouts of such

12  communications.  DC does not object to or withhold any information based on the

13  definition of "IDENTIFY," as this definition mirrors in large part language that DC

14  employed in its own discovery requests.  Defendants previously objected to this

15  same language in DC's requests as impermissibly overbroad.  Based on defendants'

16  tacit acknowledgement that DC's use of this term is proper, DC will answer this

17  discovery and has confirmed with defendants that they will do the same.

18      Subject to and without waiving the foregoing objections, DC has exercised

19  reasonable diligence in identifying responsive information and documents, and

20  hereby responds as follows:

21      DC00145-151, DCC00004186-87, DCC00004191, DCC00006855,

22  DCC00006872-6879, DCC00057431-57447, DCC00089366-89372, WB008506-

23  8507.  Representatives from Warner Bros. Entertainment Inc. and DC, including

24  Paul Levitz, had non-written communications with Mr. Peary over the years as

25  well.

26

27

28

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1    **Interrogatory No. 2**

2         IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele

3    Peavy.

4    **Response to Interrogatory No. 2**

5         DC objects to this Interrogatory on the grounds that it is indefinite as to time

6    and not reasonably limited in scope, and to the extent that it seeks the production of

7    any item, or portion thereof, which is not reasonably calculated to lead to the

8    discovery of relevant and admissible evidence.

9         DC objects to the definition of "YOU" as vague and overbroad and will

10   respond to this term as limited to the relevant representatives of DC and Warner

11   Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION" as

12   overbroad to the extent it encompasses the transmission of information orally, by

13   telephone, or through gesture.  DC also objects to the definition of

14   "COMMUNICATION" as overbroad to the extent it includes documents filed in

15   connection with prior or ongoing litigation.  DC objects to the extent the Request

16   "all COMMUNICATIONS" on the ground that such request is overly broad,

17   unduly burdensome, oppressive, and not reasonably calculated to lead to the

18   discovery of admissible evidence.  As used in these Responses, the phrase "all

19   COMMUNICATIONS," or phrases of similar import, should be understood to

20   mean those communications DC and its counsel were able to locate using

21   reasonable diligence and reasonable judgment concerning the whereabouts of such

22   communications.  DC does not object to or withhold any information based on the

23   definition of "IDENTIFY," as this definition mirrors in large part language that DC

24   employed in its own discovery requests.  Defendants previously objected to this

25   same language in DC's requests as impermissibly overbroad.  Based on defendants'

26   tacit acknowledgement that DC's use of this term is proper, DC will answer this

27   discovery and has confirmed with defendants that they will do the same.

28

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1    Subject to and without waiving the foregoing objections, DC responds as

2    follows:

3    DC00014-15, DC00156-157 DCC00004186-4187, DCC00004191,

4    DCC00006182-6184, DCC00006188-6190, DCC00006192-6194, DCC00006198,

5    DCC00006203-6207, DCC00006214-15, DCC00006372-6373, DCC00006375-

6    6376,  DCC00006399, DCC00006413-6439, DCC00006441, DCC00006477-6492,

7    DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630,

8    DCC00006778, DCC00006869, DCC00008506-8507, DCC00057431-57447,

9    DCC00057854, DCC00073008, DCC00073010, WB007959-7961, WB0010161-

10   10162, WB010169-10170.  Representatives from Warner Bros. Entertainment Inc.

11   and DC, including Paul Levitz, had non-written communications with Ms. Peavy

12   over the years as well.

13   **Interrogatory No. 3**

14   IDENTIFY all COMMUNICATIONS between YOU AND Frank Shuster.

15   **Response to Interrogatory No. 3**

16   DC objects to this Interrogatory on the grounds that it is indefinite as to time

17   and not reasonably limited in scope.

18   DC objects to the definition of "YOU" as vague and overbroad and will

19   respond to this term as limited to the relevant representatives of DC and Warner

20   Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION" as

21   overbroad to the extent it encompasses the transmission of information orally, by

22   telephone, or through gesture.  DC also objects to the definition of

23   "COMMUNICATION" as overbroad to the extent it includes documents filed in

24   connection with prior or ongoing litigation.  DC objects to the extent the Request

25   "all COMMUNICATIONS" on the ground that such request is overly broad,

26   unduly burdensome, oppressive, and not reasonably calculated to lead to the

27   discovery of admissible evidence.  As used in these Responses, the phrase "all

28   COMMUNICATIONS," or phrases of similar import, should be understood to

- 5 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
98

1    mean those communications DC and its counsel were able to locate using

2    reasonable diligence and reasonable judgment concerning the whereabouts of such

3    communications.  DC does not object to or withhold any information based on the

4    definition of "IDENTIFY," as this definition mirrors in large part language that DC

5    employed in its own discovery requests.  Defendants previously objected to this

6    same language in DC's requests as impermissibly overbroad.  Based on defendants'

7    tacit acknowledgement that DC's use of this term is proper, DC will answer this

8    discovery and has confirmed with defendants that they will do the same.

9         Subject to and without waiving the foregoing objections, DC responds as

10   follows:

11        DC00006-7, DC00014-15, DCC00005142-44, DCC00005673,

12   DCC00006206-6207, DCC00006375-76, DCC00006399, DCC00006413-6415,

13   DCC00006417, DCC00006420-6422, DCC00006431-6436, DCC00006440-6441,

14   DCC00006448, DCC00006462, DCC00006474, DCC00006495, DCC00006775-

15   6777, DCC00006856, DCC00006867, DCC00057854, DCC00073008,

16   DCC00073010, DCC00073012, DCC00073016-73017, WB005603, WB007972,

17   WB010161-10162, WB010169-10170.  Representatives from DC, including Paul

18   Levitz, had non-written communications with Frank Shuster over the years as well.

19

20   **Interrogatory No. 4**

21        IDENTIFY all COMMUNICATIONS between YOU AND Joseph Shuster

22   REGARDING YOUR rights in AND to Superman.

23   **Response to Interrogatory No. 4**

24        DC objects to this Interrogatory on the grounds that it is indefinite as to time

25   and not reasonably limited in scope.

26        DC further objects to the use of the term "all" in connection with the

27   requested communications on the ground that such interrogatory is overly broad,

28   unduly burdensome, oppressive, and not reasonably calculated to lead to the

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
99

1    discovery of admissible evidence.  DC will not search and review every record or

2    source of information within its possession, custody, or control in an effort to locate

3    "all" communications.  Subject to these objections, DC will use reasonable

4    diligence to locate responsive information and documents in its own files, based on

5    inquiry of those persons who may reasonably be expected to possess responsive

6    information, and examination of those files reasonably expected to yield responsive

7    information.

8         DC objects to the definition of "YOU" as vague and overbroad and will

9    respond to this term as limited to the relevant representatives of DC and Warner

10   Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION" as

11   overbroad to the extent it encompasses the transmission of information orally, by

12   telephone, or through gesture.  DC also objects to the definition of

13   "COMMUNICATION" as overbroad to the extent it includes documents filed in

14   connection with prior or ongoing litigation.  DC objects to the extent the Request

15   "all COMMUNICATIONS" on the ground that such request is overly broad,

16   unduly burdensome, oppressive, and not reasonably calculated to lead to the

17   discovery of admissible evidence.  As used in these Responses, the phrase "all

18   COMMUNICATIONS," or phrases of similar import, should be understood to

19   mean those communications DC and its counsel were able to locate using

20   reasonable diligence and reasonable judgment concerning the whereabouts of such

21   communications.  DC does not object to or withhold any information based on the

22   definition of "IDENTIFY," as this definition mirrors in large part language that DC

23   employed in its own discovery requests.  Defendants previously objected to this

24   same language in DC's requests as impermissibly overbroad.  Based on defendants'

25   tacit acknowledgement that DC's use of this term is proper, DC will answer this

26   discovery and has confirmed with defendants that they will do the same.

27        Subject to and without waiving the foregoing objections, DC responds as

28   follows:

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
100

1   DCC00004132, DCC00004153, DCC00004186-4187, DCC00004191,

2   DCC00004499-4505, DCC00004507-4508, DCC00004521- DCC00004579,

3   DCC00004908, DCC00005126, DCC00005658, DCC00005662, DCC00005663-

4   5666, DCC00005668, DCC00005669, DCC00005671, DCC00005672,

5   DCC00006190, DCC00007178-7182, DCC00007199-7201, DCC00007206-7208,

6   DCC00007954-7965, DCC00007990-8024, DCC00045543-45544, DCC00057253-

7   57256, DCC00057358-57361, WB005603, WB005623-5624, WB005627-5638,

8   WB005663-5664, WB005794-5800, WB006603-6607, WB007942-7943,

9   WB007959-7961, WB008305-8316, WB008556-8557, WB008559-8561,

10  WB008563.  Representatives from DC, including Paul Levitz, had non-written

11  communications with Joseph Shuster over the years as well.**Interrogatory No. 5**

12      IDENTIFY all COMMUNICATIONS between YOU AND any third-party

13  that REFFERRED TO the 1992 AGREEMENT.

14  **Response to Interrogatory No. 5**

15      DC objects to this Interrogatory on the grounds that it is indefinite as to time

16  and not reasonably limited in scope, and to the extent that it seeks the production of

17  any item, or portion thereof, which is not reasonably calculated to lead to the

18  discovery of relevant and admissible evidence.  DC further objects to the extent that

19  it seeks information protected by the attorney-client privilege, the attorney work

20  product doctrine, or any other applicable privilege or immunity.

21      DC objects to the phrase "COMMUNICATIONS between YOU AND any

22  third-party" as overbroad, as it would include, for example, all statements made to

23  the court, mediators, and to the press concerning the 1992 agreement and DC's

24  claims in this case concerning that agreement.  DC objects to the definition of

25  "COMMUNICATION" as vague and overbroad and will respond to this term as

26  excluding any documents filed in connection with prior or ongoing litigation.  DC

27  objects to the extent the Request "all COMMUNICATIONS" on the ground that

28  such request is overly broad, unduly burdensome, oppressive, and not reasonably

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1   calculated to lead to the discovery of admissible evidence.  As used in these

2   Responses, the phrase "all COMMUNICATIONS," or phrases of similar import,

3   should be understood to mean those communications DC and its counsel were able

4   to locate using reasonable diligence and reasonable judgment concerning the

5   whereabouts of such communications.  DC objects to the definition of "YOU" as

6   vague and overbroad and will respond to this term as limited to the relevant

7   representatives of DC and Warner Bros. Entertainment Inc.  DC does not object to

8   or withhold any information based on the definition of "IDENTIFY," as this

9   definition mirrors in large part language that DC employed in its own discovery

10  requests.  Defendants previously objected to this same language in DC's requests as

11  impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's

12  use of this term is proper, DC will answer this discovery and has confirmed with

13  defendants that they will do the same.

14      Subject to and without waiving all foregoing objections, DC refers

15  defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

16  No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

17  and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

18  (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

19  35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

20  81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

21  100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

22  147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

23  182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

24  193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

25  305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

26  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

27  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

28  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

- 9 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
102

1  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

2  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

3  deposition testimony in those cases and here. All of these sources are incorporated

4  by reference herein.

5      Subject to and without waiving the foregoing objections, DC is willing to

6  meet and confer with defendants to reasonably tailor this request.

7  **Interrogatory No. 6**

8      IDENTIFY all persons who participated in the negotiation of the 1992

9  AGREEMENT.

10 **Response to Interrogatory No. 6**

11     DC objects to the Interrogatory to the extent it calls for irrelevant information

12 and calls for a search for documents that is unduly expensive, overbroad, unduly

13 burdensome, and oppressive. The phrase "participated in the negotiation" is

14 ambiguous, and lacks sufficient precision to allow DC to formulate an appropriate

15 response. DC further objects to this Interrogatory to the extent that it seeks

16 information protected by the attorney-client privilege, the attorney work product

17 doctrine, or any other applicable privilege or immunity.

18     DC objects to the extent the Request seeks identification of "all persons" on

19 the ground that such request is overly broad, unduly burdensome, oppressive, and

20 not reasonably calculated to lead to the discovery of admissible evidence. As used

21 in these Responses, the phrase "all persons," or phrases of similar import, should be

22 understood to mean those persons DC and its counsel were able to identify using

23 reasonable diligence and reasonable judgment. DC does not object to or withhold

24 any information based on the definition of "IDENTIFY," as this definition mirrors

25 in large part language that DC employed in its own discovery requests. Defendants

26 previously objected to this same language in DC's requests as impermissibly

27 overbroad. Based on defendants' tacit acknowledgement that DC's use of this term

28

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1  is proper, DC will answer this discovery and has confirmed with defendants that

2  they will do the same.

3        Subject to and without waiving the foregoing objections, DC responds as

4  follows:  Jean Peavy, Frank Shuster, Paul Levitz, Lillian Laserson, and Carol

5  Simkin.

6  **Interrogatory No. 7**

7        IDENTIFY all persons who participated in the drafting of the 1992

8  AGREEMENT.

9  **Response to Interrogatory No. 7**

10       DC objects to the Interrogatory to the extent it calls for irrelevant information

11  and calls for a search for documents that is unduly expensive, overbroad, unduly

12  burdensome, and oppressive.  DC objects to this Interrogatory to the extent that it

13  seeks information protected by the attorney-client privilege, the attorney work

14  product doctrine, or any other applicable privilege or immunity.

15       DC objects to this Interrogatory on the grounds that the phrase "persons who

16  participated in the drafting" is vague and ambiguous, and lacks sufficient precision

17  to allow it formulate an appropriate response.  DC objects to the extent the Request

18  seeks identification of "all persons" on the ground that such request is overly broad,

19  unduly burdensome, oppressive, and not reasonably calculated to lead to the

20  discovery of admissible evidence.  As used in these Responses, the phrase "all

21  persons," or phrases of similar import, should be understood to mean those persons

22  DC and its counsel were able to identify using reasonable diligence and reasonable

23  judgment.  DC does not object to or withhold any information based on the

24  definition of "IDENTIFY," as this definition mirrors in large part language that DC

25  employed in its own discovery requests.  Defendants previously objected to this

26  same language in DC's requests as impermissibly overbroad.  Based on defendants'

27  tacit acknowledgement that DC's use of this term is proper, DC will answer this

28  discovery and has confirmed with defendants that they will do the same.

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1    Subject to and without waiving all foregoing objections, DC responds as

2 follows:  Jean Peavy, Frank Shuster, Paul Levitz, Carol Simkin, Lillian Laserson,

3 and John Schulman.

4 **Interrogatory No. 8**

5    IDENTIFY all witnesses REGARDING the 1992 AGREEMENT.

6 **Response to Interrogatory No. 8**

7    DC objects to the Interrogatory to the extent it calls for irrelevant information

8 and calls for a search for documents that is unduly expensive, overbroad, unduly

9 burdensome, and oppressive.

10    DC further objects to this Interrogatory on the grounds that the phrase "all

11 witnesses" is vague and ambiguous, and lacks sufficient precision to allow it

12 formulate an appropriate response.  DC will interpret this phrase as encompassing

13 those persons who participated in the negotiating or drafting of the 1992 agreement.

14 DC does not object to or withhold any information based on the definition of

15 "IDENTIFY," as this definition mirrors in large part language that DC employed in

16 its own discovery requests.  Defendants previously objected to this same language

17 in DC's requests as impermissibly overbroad.  Based on defendants' tacit

18 acknowledgement that DC's use of this term is proper, DC will answer this

19 discovery and has confirmed with defendants that they will do the same.

20    Subject to and without waiving all foregoing objections, DC responds as

21 follows:  Jean Peavy, Frank Shuster, Paul Levitz, Lillian Laserson, Jenette Kahn,

22 Carolyn McCandless, Pat Caldon, Carol Simkin, John Schulman, Marty Payson,

23 Chris Caramalis, Mark Warren Peary, Dawn Peavy.  DC submits that Marc

24 Toberoff, Pacific Pictures Corporation, IP Worldwide LLC, IPW LLC, and Ari

25 Emanuel also are material witnesses to the 1992 agreement, although none of these

26 parties participated in negotiating or drafting that agreement.

27

28

- 12 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
105

1    **Interrogatory No. 9**

2        IDENTIFY any evidence that supports YOUR contention that "[t]he Shuster

3    Termination Notice is invalid, and thus ineffective," found in paragraph 106 of

4    YOUR COMPLAINT.

5    **Response to Interrogatory No. 9**

6        DC objects to the Interrogatory to the extent it requires DC to prove through

7    the discovery process its ultimate legal arguments related to the ramifications of

8    defendants' agreements and communications.  DC objects to the Interrogatory on

9    the ground that it is compound and includes numerous discrete subparts that should

10   each be counted as a separate interrogatory for the purposes of calculating the

11   number of interrogatories that Peary has propounded on DC.  DC articulated five

12   separate bases for the invalidity of the Shuster Termination Notice in its complaint

13   (Docket No. 49 ¶¶ 105-134), and discovery must accordingly be addressed to each

14   basis individually.  DC objects to the Interrogatory to the extent it seeks

15   information protected by the attorney-client privilege, the attorney work product

16   doctrine, or any other applicable privilege or immunity.  DC further objects to the

17   extent this Interrogatory seeks documents that defendants have refused to produce

18   in response to discovery served by DC, including but not limited to the 2008

19   "consent agreement" defendants continue to refuse to disclose.

20       DC objects to the definition of "YOUR" and will respond to that term as

21   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

22   objects to the use of the term "any" evidence on the ground that such request is

23   vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated

24   to lead to the discovery of admissible evidence.  DC does not object to or withhold

25   any information based on the definition of "IDENTIFY," as this definition mirrors

26   in large part language that DC employed in its own discovery requests.  Defendants

27   previously objected to this same language in DC's requests as impermissibly

28   overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
106

1   is proper, DC will answer this discovery and has confirmed with defendants that

2   they will do the same.

3       Subject to and without waiving the foregoing objections, DC responds as

4   follows:

5       DC00001-7, DC00008-12, DC00014-15, DC00156-157, DCC00000557-

6   3336, DCC00004510-4520, DCC00006188-6190, DCC00006192-6194,

7   DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215,

8   DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441,

9   DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492,

10  DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630,

11  DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869,

12  DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-

13  7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507,

14  DCC00045603-45626, DCC00056945-56950, DCC00057538-57550,

15  DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017,

16  DCC00089361-89365, DCC00141525, WB000670-3453, WB005709-5766,

17  WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-

18  8316, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09,

19  IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

20      Subject to and without waiving all foregoing objections, DC refers

21  defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

22  No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

23  and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

24  (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

25  35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

26  81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

27  100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

28  147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

- 14 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
107

1  182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

2  193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

3  305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

4  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

5  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

6  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

7  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

8  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

9  deposition testimony in those cases and here.  All of these sources are incorporated

10  by reference herein.

11      Given that discovery is ongoing in this case, and expert discovery has not yet

12  begun, DC expressly reserves its right to supplement these Responses as more

13  information becomes available, and to use in discovery and at trial any information

14  omitted from these Responses as a result of mistake, inadvertence, or oversight.

15

16  **Interrogatory No. 10**

17      IDENTIFY any evidence that supports YOUR contention that "[t]he 1992

18  Agreement that Frank Shuster and Jean Peavy entered into with DC Comics bars

19  the Shuster Estate from pursuing termination because, *inter alia*, in exchange for

20  valuable consideration, the 1992 Agreement effected a rescission, revocation, and

21  re-grant of all prior copyright grants, which eliminated any pre-1978 grant that

22  could be subject to termination under section 304 of the Copyright Act," found in

23  paragraph 112 of YOUR COMPLAINT.

24  **Response to Interrogatory No. 10**

25      DC objects to the Interrogatory to the extent that it requires DC to prove

26  through the discovery process its ultimate legal arguments related to the

27  ramifications of defendants' agreements and communications.  DC further objects

28  to this Interrogatory to the extent that it seeks information protected by the attorney-

- 15 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
108

1  client privilege, the attorney work product doctrine, or any other applicable

2  privilege or immunity.

3      DC objects to the definition of "YOUR" and will respond to that term as

4  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

5  objects to the use of the term "any" evidence on the ground that such request is

6  vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated

7  to lead to the discovery of admissible evidence.  DC does not object to or withhold

8  any information based on the definition of "IDENTIFY," as this definition mirrors

9  in large part language that DC employed in its own discovery requests.  Defendants

10  previously objected to this same language in DC's requests as impermissibly

11  overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term

12  is proper, DC will answer this discovery and has confirmed with defendants that

13  they will do the same.

14      Subject to and without waiving the foregoing objections, DC responds as

15  follows:

16      DCC00006-7, DC00014-15, DC00156-157,  DCC00000557-3336,

17  DCC00006184, DCC00006188-6190, DCC00006192-6194, DCC00006198,

18  DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-

19  6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448,

20  DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496,

21  DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630,

22  DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869,

23  DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-

24  7837, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626,

25  DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008,

26  DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525,

27  WB000670-3453, WB005603, WB005709-5766, WB006588-6602, WB007959-

28  7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170,

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
109

1   WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212,

2   LSL00482-486.

3         Subject to and without waiving all foregoing objections, DC refers

4   defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

5   No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

6   and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

7   (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

8   35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

9   81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

10  100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

11  147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

12  182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

13  193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

14  305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

15  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

16  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

17  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

18  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

19  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

20  deposition testimony in those cases and here.  All of these sources are incorporated

21  by reference herein.

22        Given that discovery is ongoing in this case, and expert discovery has not yet

23  begun, DC expressly reserves its right to supplement these Responses as more

24  information becomes available, and to use in discovery and at trial any information

25  omitted from these Responses as a result of mistake, inadvertence, or oversight.

26  **Interrogatory No. 11**

27        IDENTIFY any evidence that supports YOUR contention that "Shuster's

28  heirs approached DC Comics in 1992 seeking increased annual payments, certain

- 17 -

EXHIBIT 18
110

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1    tax benefits, and payment of Shuster's debts and expenses," and that "[a]t the time,

2    Shuster's heirs recognized the value of Superman as a property," found in

3    paragraph 115 of YOUR COMPLAINT.

4    **Response to Interrogatory No. 11**

5    　　DC objects to the Interrogatory to the extent that it requires DC to prove

6    through the discovery process its ultimate legal arguments related to the

7    ramifications of defendants' agreements and communications.  DC further objects

8    to the Interrogatory on the ground that it is compound and includes numerous

9    discrete subparts addressed to separate contentions.  Each subpart should be

10   counted a separate interrogatory for the purposes of calculating the number of

11   interrogatories that Peary has propounded on DC.  DC objects to this Interrogatory

12   to the extent that it seeks information protected by the attorney-client privilege, the

13   attorney work product doctrine, or any other applicable privilege or immunity.

14   　　DC objects to the definition of "YOUR" and will respond to that term as

15   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

16   further objects to the use of the term "any" evidence on the ground that such request

17   is vague, overly broad, unduly burdensome, oppressive, and not reasonably

18   calculated to lead to the discovery of admissible evidence.  DC does not object to or

19   withhold any information based on the definition of "IDENTIFY," as this definition

20   mirrors in large part language that DC employed in its own discovery requests.

21   Defendants previously objected to this same language in DC's requests as

22   impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's

23   use of this term is proper, DC will answer this discovery and has confirmed with

24   defendants that they will do the same.

25   　　Subject to and without waiving the foregoing objections, DC responds as

26   follows:

27   　　DC00008-12, DC00014-15, DC00156-157, DC00094-144, DCC00006184,

28   DCC00006188-6190, DCC00006192-94, DCC00006198, DCC00006203-05,

- 18 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
111

1   DCC00006206-07, DCC00006214-15, DCC00006372-73, DCC00006375-76,

2   DCC00006399, DCC00006413-41, DCC00006448, DCC00006462,

3   DCC00006474, DCC00006477-92, DCC00006495-96, DCC00006498,

4   DCC00006775-78, DCC00006855-56, DCC00006867, DCC00006869,

5   DCC00006872-79, DCC00008506-07, DCC00057854, DCC00057855,

6   DCC00073008, DCC00073010, DCC00073012-17, WB005603, WB007959-61,

7   WB007972, WB010169-70, WB010161-10162, Q0001-07, LSL00211-12,

8   LSL00482-86.

9        Subject to and without waiving all foregoing objections, DC refers

10  defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

11  No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

12  and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

13  (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

14  35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

15  81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

16  100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

17  147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

18  182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

19  193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

20  305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

21  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

22  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

23  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

24  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

25  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

26  deposition testimony in those cases and here.  All of these sources are incorporated

27  by reference herein.

28

- 19 -

EXHIBIT 18
112

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1  Given that discovery is ongoing in this case, and expert discovery has not yet

2  begun, DC expressly reserves its right to supplement these Responses as more

3  information becomes available, and to use in discovery and at trial any information

4  omitted from these Responses as a result of mistake, inadvertence, or oversight.

5  **Interrogatory No. 12**

6  IDENTIFY any evidence that supports YOUR contention that "the Shusters

7  are estopped from disputing that the 1992 Agreement remains in full force and

8  effect, which operates to preclude the assertion of any termination right," found in

9  paragraph 117 of YOUR COMPLAINT.

10  **Response to Interrogatory No. 12**

11  DC objects to the Interrogatory to the extent that it requires DC to prove

12  through the discovery process its ultimate legal arguments related to the

13  ramifications of defendants' agreements and communications.  DC further objects

14  to this Interrogatory to the extent that it seeks information protected by the attorney-

15  client privilege, the attorney work product doctrine, or any other applicable

16  privilege or immunity.

17  DC objects to the definition of "YOUR" and will respond to that term as

18  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

19  objects to the use of the term "any" evidence on the ground that such request is

20  vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated

21  to lead to the discovery of admissible evidence.  DC does not object to or withhold

22  any information based on the definition of "IDENTIFY," as this definition mirrors

23  in large part language that DC employed in its own discovery requests.  Defendants

24  previously objected to this same language in DC's requests as impermissibly

25  overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term

26  is proper, DC will answer this discovery and has confirmed with defendants that

27  they will do the same.

28

- 20 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
113

1    Subject to and without waiving the foregoing objections, DC responds as

2    follows:

3    DC00008-12, DC00014-15, DC00156-157, DC00094-144, DCC00000557-

4    3336, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-

5    6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373,

6    DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448,

7    DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496,

8    DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778,

9    DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879,

10   DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-

11   8024, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550,

12   DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017,

13   DCC00089361-89365, DCC00141525, WB000670-3453, WB005603, WB005709-

14   5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053,

15   WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09,

16   IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

17   Subject to and without waiving all foregoing objections, DC refers

18   defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

19   No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

20   and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

21   (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

22   35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

23   81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

24   100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

25   147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

26   182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

27   193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

28   305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

2  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

3  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

4  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

5  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

6  deposition testimony in those cases and here.  All of these sources are incorporated

7  by reference herein.

8       Given that discovery is ongoing in this case, and expert discovery has not yet

9  begun, DC expressly reserves its right to supplement these Responses as more

10  information becomes available, and to use in discovery and at trial any information

11  omitted from these Responses as a result of mistake, inadvertence, or oversight.

12  **Interrogatory No. 13**

13       IDENTIFY any evidence that supports YOUR contention that purported

14  "omissions [in the Shuster Termination Notice] were not inadvertent, but were

15  intended to conceal material information from DC Comics, including: (a) the

16  various conflicts of interest arising from Toberoff's and his companies' significant

17  ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights;

18  and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel

19  Heirs' freedom to enter into agreements with DC Comics regarding those rights,"

20  found in paragraph 123 of YOUR COMPLAINT.

21  **Response to Interrogatory No. 13**

22       DC objects to the Interrogatory to the extent that it requires DC to prove

23  through the discovery process its ultimate legal arguments related to the

24  ramifications of defendants' agreements and communications.  DC further objects

25  to this Interrogatory to the extent that it seeks information protected by the attorney-

26  client privilege, the attorney work product doctrine, or any other applicable

27  privilege or immunity.  DC also objects to the extent the Interrogatory calls for

28  information which is not available to DC.  DC further objects to the extent this

- 22 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
115

1    Interrogatory seeks documents that defendants have refused to produce in response

2    to discovery served by DC, including but not limited to the 2008 "consent

3    agreement" defendants continue to refuse to disclose.

4        DC objects to the definition of "YOUR" and will respond to that term as

5    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

6    further objects to the use of the term "any" evidence on the ground that such request

7    is vague, overly broad, unduly burdensome, oppressive, and not reasonably

8    calculated to lead to the discovery of admissible evidence.  DC does not object to or

9    withhold any information based on the definition of "IDENTIFY," as this definition

10   mirrors in large part language that DC employed in its own discovery requests.

11   Defendants previously objected to this same language in DC's requests as

12   impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's

13   use of this term is proper, DC will answer this discovery and has confirmed with

14   defendants that they will do the same.

15       Subject to and without waiving the foregoing objections, DC responds as

16   follows:

17       DC00001-7, DC00014-15, DC00156-1576, DCC00000557-3336,

18   DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00056945-

19   56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, IPW00001-

20   00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602,

21   WB008050-8053, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07,

22   LSL00211-212, LSL00482-486.

23       Subject to and without waiving all foregoing objections, DC refers

24   defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

25   No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

26   and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

27   (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

28   35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

- 23 -

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
116

1   81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

2   100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

3   147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

4   182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

5   193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

6   305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

7   333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

8   exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

9   Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

10  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

11  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

12  deposition testimony in those cases and here.  All of these sources are incorporated

13  by reference herein.

14       Given that discovery is ongoing in this case, and expert discovery has not yet

15  begun, DC expressly reserves its right to supplement these Responses as more

16  information becomes available, and to use in discovery and at trial any information

17  omitted from these Responses as a result of mistake, inadvertence, or oversight.

18  **Interrogatory No. 14**

19       IDENTIFY any evidence that supports YOUR contention that "the Shuster

20  Termination Notice … contains material misrepresentations intended to mislead the

21  courts, Copyright Office, and DC Comics—all to the detriment of DC Comics,"

22  found in paragraph 129 of YOUR COMPLAINT.

23  **Response to Interrogatory No. 14**

24       DC objects to the Interrogatory to the extent that it requires DC to prove

25  through the discovery process its ultimate legal arguments related to the

26  ramifications of defendants' agreements and communications.  DC further objects

27  to this Interrogatory to the extent that it seeks information protected by the attorney-

28  client privilege, the attorney work product doctrine, or any other applicable

- 24 -

EXHIBIT 18
117

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

privilege or immunity.  DC also objects to the extent the Interrogatory calls for

information which is not available to DC.  DC further objects to the extent this

Interrogatory seeks documents that defendants have refused to produce in response

to discovery served by DC, including but not limited to the 2008 "consent

agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as

limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

further objects to the use of the term "any" evidence on the ground that such request

is vague, overly broad, unduly burdensome, oppressive, and not reasonably

calculated to lead to the discovery of admissible evidence.  DC does not object to or

withhold any information based on the definition of "IDENTIFY," as this definition

mirrors in large part language that DC employed in its own discovery requests.

Defendants previously objected to this same language in DC's requests as

impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's

use of this term is proper, DC will answer this discovery and has confirmed with

defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as

follows:

DC00001-7, DC00008-12, DCC00000557-3336, DCC00004510-4520,

DCC00007102-7159, DCC00007147-7159, SM No. 1, DCC00007183-7198,

DCC00007826-7837, DCC00045557-45591, DCC00045603-45613,

DCC00056945-56950, DCC00057538-57550, DCC0006849-6854, DCC00089361-

89365, DCC000141525, DCC00141359-141364, DCC00141525, DCC00141565-

141572, DCC00142156-142342, IPW00001-00016, PPC00001-00009, WB000670-

3453, WB005709-5766, WB006588-6602, WB008050-8059, WB008305-8316,

WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212,

LSL00482-486.

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15
EXHIBIT 18
118

1    Subject to and without waiving all foregoing objections, DC refers

2  defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

3  No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

4  and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

5  (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

6  35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

7  81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

8  100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

9  147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

10  182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

11  193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

12  305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

13  333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

14  exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

15  Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

16  460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

17  DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

18  deposition testimony in those cases and here.  All of these sources are incorporated

19  by reference herein.

20    Given that discovery is ongoing in this case, and expert discovery has not yet

21  begun, DC expressly reserves its right to supplement these Responses as more

22  information becomes available, and to use in discovery and at trial any information

23  omitted from these Responses as a result of mistake, inadvertence, or oversight.

24  **Interrogatory No. 15**

25    IDENTIFY any evidence that supports YOUR contention that "[i]nduced by

26  Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy

27  rights in the Shuster Termination Notice," found in paragraph 131 of YOUR

28  COMPLAINT.

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
119

**Response to Interrogatory No. 15**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-5, DC00008-12, DCC00000557-3336, DCC00004510-20, DCC00007102-7159, DCC00007147-7159, DCC00007183-7198, DCC00007826-7837, DCC00045557-45591, DCC00045603-45613, DCC00056945-56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, DCC00142156-142342, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8053,

1    WB008305-8316, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07,

2    LSL00211-212, LSL00482-486, SGL000003529-3237.

3        Subject to and without waiving all foregoing objections, DC refers

4    defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket

5    No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing

6    and exhibits filed in connection with defendants' Rule 12 and SLAPP motions

7    (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2,

8    35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4,

9    81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100,

10   100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,

11   147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to

12   182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,

13   193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to

14   305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333,

15   333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1), and the briefing and

16   exhibits filed in connection with Plaintiff DC Comic's Motion for Partial Summary

17   Judgment On Its First and Third Claims (Docket Nos. 458, 459, 459-1 to 459-6,

18   460, 460-1 to 460-3 )—and all discovery in this action and the *Siegel* action (*e.g.*,

19   DCC00000001-154435 and WB000001-149488)—including, but not limited to, all

20   deposition testimony in those cases and here.  All of these sources are incorporated

21   by reference herein.

22       Given that discovery is ongoing in this case, and expert discovery has not yet

23   begun, DC expressly reserves its right to supplement these Responses as more

24   information becomes available, and to use in discovery and at trial any information

25   omitted from these Responses as a result of mistake, inadvertence, or oversight.

26

27

28

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

1

2          Dated:  July 20, 2012                    Respectfully submitted,

3                                                   By:  /s/ Daniel M. Petrocelli

                                                         Daniel M. Petrocelli
4                                                   Attorneys for Plaintiff DC Comics

5

6    OMM_US:70779360

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DC'S AMENDED OBJ. & RESP. TO
PEARY INTERROGATORY NOS. 1-15

EXHIBIT 18
122

# EXHIBIT 19

**Tokoro, Jason**

---

| | |
|---|---|
| **From:** | Pearson, Ashley |
| **Sent:** | Friday, July 20, 2012 5:57 PM |
| **To:** | 'mtoberoff@ipwla.com' |
| **Cc:** | Pablo Arredondo (parredondo@ipwla.com); dharris@ipwla.com; 'rkendall@kbkfirm.com'; 'lbrill@kbkfirm.com'; ndaum@kbkfirm.com; Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Tokoro, Jason |
| **Subject:** | DC Comics v. PPC |
| **Attachments:** | Joint Stip. re. Def's MTC Rog Responses.pdf; Exs. 1-18.pdf; Proposed Order denying MTC Rog Responses.DOC; Proposed Order denying MTC Rog Responses.pdf; Seto Decl.pdf |

Counsel,

Attached is DC Comics' portion of the Joint Stipulation Regarding Defendant's Motion To Compel Interrogatory Responses, and the accompanying Seto Declaration, exhibits, and proposed order.

**Ashley Pearson**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067
Telephone:  310.246.8426

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:  (310) 246-6779

7
    Attorneys for Plaintiff DC Comics
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  DC COMICS,                          Case No. CV-10-3633 ODW (RZx)

12            Plaintiff,                **DISCOVERY MATTER**

13        v.                           **JOINT STIPULATION
                                       REGARDING DEFENDANT'S
14  PACIFIC PICTURES                   MOTION TO COMPEL
    CORPORATION, IP WORLDWIDE,         INTERROGATORY RESPONSES**
15  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN         **Judge**:  Hon. Otis D. Wright II
16  PEARY, as personal representative of  **Magistrate**:  Hon. Ralph Zarefsky
    the ESTATE OF JOSEPH SHUSTER,
17  JEAN ADELE PEAVY, an individual,   **Complained filed**:   May 14, 2010
    LAURA SIEGEL LARSON, an            **Trial Date**:         None Set
18  individual and as personal         **Hearing Date**:       Aug. 13, 2012
    representative of the ESTATE OF    **Hearing Time**:       10:00 a.m.
19  JOANNE SIEGEL, and DOES 1-10,      **Courtroom**:          540
    inclusive,
20
              Defendants.
21

22

23

24

25

26

27

28
                                       JOINT STIP RE: DEF.'S MOT. TO COMPEL
                                           INTERROGATORY RESPONSES

EXHIBIT 19
124

# I.     **DC'S INTRODUCTION**

Peary's motion to compel further interrogatory responses from DC should be denied for three reasons:  (1) he failed to meet and confer on the motion as required by the Local Rules and this Court's rulings in this case; (2) DC's responses were fully proper; and (3) Peary has obtained (or will obtain) the additional information he claims he needs in the form of amended interrogatory responses from DC (served before this motion was filed), DC's motion for partial summary judgment (served before this motion was filed), and Paul Levitz's FED. R. CIV. P. 30(b)(6) deposition (which will take place three days after this motion is filed).  Peary's motion is procedurally and substantively without basis, and, at best, premature.

*1. The Failure to Meet and Confer.*  Peary (like all of the defendants) waited 19 months—until December 2011—to serve *any* discovery.  The interrogatories he served, and on which he moves, relate to DC's First Claim and one of the grounds for relief stated therein—*i.e.*, that a 1992 agreement DC made with Peary's mother (Jean Peavy) and uncle (Frank Shuster) bars the copyright termination notice Peary filed in 2003.  DC's complaint, filed in May 2010, identifies that 1992 contract (signed by Levitz on behalf of DC), as well as correspondence between Frank, Jean, and Levitz, as proof that Peary's copyright termination claim is barred.  DC identified Levitz as a material witness in disclosures in 2010, and its interrogatory responses (on which Peary does *not* move) make plain Levitz's importance.

DC started the meet-and-confer process on the first five of interrogatory responses in March 2012 with Keith Adams—former counsel for Peary (now resigned).  (Defendants' meet-and-confer letter did *not* address by number seven of the twelve interrogatory responses (Nos. 9-15) on which it now moves.)  DC told Mr. Adams in writing and in a call that followed that it was willing to amend its answers to Nos. 1-5, if Peary narrowed those requests to conform with the rules and not to target decades of irrelevant communications that have nothing to do with this case.  DC reminded Mr. Adams that defendants had successfully objected to DC's

1   discovery requests that used similarly broad locution—and said defendants needed

2   to make a choice:  either to commit to answer DC's discovery as formerly framed,

3   or to narrow Peary's requests as DC had been forced to do.  Neither Mr. Adams nor

4   other defense counsel responded to DC's offer, even though DC told defendants

5   and the Court in January 2012—*six months* ago—that it would be moving for

6   partial summary judgment on its First Claim.  Docket Nos. 364 at 8.

7        DC notified defendants on June 21, 2012, that it would be filing its summary

8   judgment motion imminently.  Defendants said nothing about DC's need to amend

9   the interrogatory answers on which Peary now moves, but rather, a week later, on

10  June 28, 2012, noticed Paul Levitz's deposition, now set for July 26.  Defendants

11  also served subpoenas on two other DC-related witnesses and explored whether

12  their depositions were necessary.  Over the next two weeks, defendants had

13  numerous discussions with DC about scheduling DC's summary judgment motion

14  and the depositions and document requests above.  *Never once* during any of these

15  discussions did defendants ever say they planned to move to compel on DC's

16  interrogatory responses Nos. 1-5, 9-15, or otherwise.  Rather, after defendants

17  declined the briefing schedule DC proposed on its summary judgment motion—and

18  hours after DC declined defendants' counter-offer—Peary filed his present motion.

19       DC asked Peary to withdraw the motion, citing defendants' failure, since

20  March 2012, to complete their meet-and-confer obligations.  Defendants sent a

21  strident response, claiming Mr. Toberoff had perfected the meet-and-confer record

22  in a June 12 email.  That email (as defendants' concede) made *no reference to DC's*

23  *interrogatory responses*.  Nevertheless, defendants refused to meet and confer on

24  this motion and demanded that DC either agree to the relief sought or oppose it.

25       That take-it-or-leave-it choice does not meet the dictates of Rule 37.  This

26  Court—at defendants' urging—has applied Rule 37 to deny DC's motions to

27  compel based on a failure to meet and confer fully.  That same rule should apply to

28  defendants, and defendants' motion should be denied on this ground.

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1    *2. DC's Responses Were Fully Adequate.*  Peary's overbroad interrogatories

2    seek information concerning "all COMMUNICATIONS"—covering decades-long

3    relationships—as well as "any" and "all" evidence supporting DC's claims.  The

4    case law holds that both these types of requests are overbroad, as DC's objections

5    and Rule 37 letter made plain.  When DC wrote and spoke to Mr. Adams in March,

6    it told him that DC was willing to amend its responses if Peary focused his requests.

7    Peary never did so, and DC's responses—which identify scores of documents,

8    communications, sources of testimony, and other evidence—all did their level best

9    to respond to Peary's overly capacious requests.  Again, this Court, at defendants'

10   urging, has limited defendants' obligation to respond to broad discovery requests.

11   That rule should apply to Peary with equal force,  and his motion should be denied.

12   *3. Peary's Motion Is Both Moot And Not Ripe.*  Peary says he wants to know

13   on what evidence DC will rely to claim it owns the Superman rights to which Peary

14   lays a claim.  That evidence was cited in DC's complaint and initial disclosures and

15   provided in DC's document and interrogatory responses, which identified scores of

16   communications on the subject between DC and the Shuster family.  That evidence

17   was briefed, cited, and summarized  in DC's summary judgment papers filed last

18   week.  Defendants will have a full chance to depose Levitz about this evidence and

19   related issues in a few days.  As DC invited him to do, Peary should have

20   withdrawn his motion and withheld serving it until, at least, after Levitz testified.

21   As for Peary's few interrogatory requests that relate to DC's unclean-hands

22   claim, that claim, as defendants' know, is not ripe for summary adjudication, as

23   document and deposition discovery into the claim is still ongoing and will be for

24   months.  The case law, moreover, makes clear that defendants have no right to

25   demand "all facts" in support of that claim.  *If ever*, such contention interrogatories

26   may only be asked after all discovery is complete.  Finally, defendants' March 2012

27   Rule 37 letter never mentions these interrogatories by number—meaning, under this

28   Court's prior rulings, Peary cannot move to compel on them.  Docket No. 262 at 6.

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

3

EXHIBIT 19
127

II.     **THE PARTIES' RESPECTIVE STATEMENT OF ISSUES AS TO EACH INTERROGATORY AT ISSUE**

A.     **Defendants' Position on Interrogatories Nos. 1-4**

Insert section on these Interrogatories from defendants' brief.  *See* C.D. CAL. L.R. 37-2.1.

B.     **DC's Position On Interrogatories Nos. 1-4**

1.     **The Relevant Factual Background Peary Omits**

*a. DC's First Claim.*  DC filed this action in May 2010.  DC's First Claim seeks a declaration that the "Shuster Termination Notice [is] invalid," on five independent grounds,  Docket No. 49 ¶¶ 106-34—three of which are relevant to this motion, one centrally so.  As set forth in DC's complaint and summary judgment motion filed last week, Docket No. 458, the first reason the Notice is invalid is because a 1992 Agreement between DC and Jean and Frank Shuster rescinded all of Joe Shuster's prior copyright grants and re-granted to DC any copyright interests that Joe or his heirs may have held, including in Superman.  *Id*. at 10-18.  The 1992 agreement eliminated any pre-1978 copyright grant that might otherwise be subject to termination and, thus, operates to bar Peary's Notice.  *Id*. (discussing and citing, *e.g.*, 17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005) (holding same on similar contract); *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008) (same)).

A second ground for DC's First Claim is that, in 2001 and 2003, Jean, Peary, and the Estate of Joseph Shuster "assign[ed]" any "copyright termination interest in 'SUPERMAN'" they possessed to a joint venture with defendant Pacific Pictures Corporation, Toberoff's production company.  Thus, when the Estate served its Notice a few weeks later in late 2003, none of Jean, Peary, or the Shuster Estate owned the greater-than-50% share of the termination right required to terminate. *See* Docket No. 458 at 18-20 (citing and discussing, *e.g.*, 17 U.S.C. §§ 304(d), 304(c)(1); 37 C.F.R. §§ 201.10(b)(1)(vii), (c)(2); *Steinbeck*, 537 F.3d at 202).  DC

1   also moved for summary judgment on its First Claim on this ground last week.

2       A third ground for DC's First Claim is that the doctrine of unclean hands bars

3   the Notice. Docket No. 49 at ¶¶ 129-33; Docket No. 186 at 17-20. Among other

4   acts of unclean hands, any mention of the character Superboy is conspicuously

5   missing from the Shuster termination Notice. Jerry Siegel and Joe Shuster both

6   claimed repeatedly that Joe Shuster helped create Superboy, and Jean and Peary

7   each acknowledged Joe's role in doing so when they identified Superboy as one of

8   his works, when they transferred rights in Superboy to the Pacific Pictures venture

9   in 2001. *Id.* In a scheme to enable Toberoff to assert a copyright infringement

10  claim on behalf of the Siegels, however, Toberoff, Jean, and Peary agreed falsely to

11  have the Shusters disclaim any interest in Superboy in both the 2003 Pacific

12  Pictures agreement, and the Shuster Estate's 2003 copyright termination notice. *Id.*

13  These manipulations and misrepresentations of historical fact were a fraud on the

14  Copyright Office, DC, and the courts. *Id.* As DC pointed out in its Rule 12

15  opposition briefing—on the motions that defendants withdrew in December 2011—

16  more discovery, including deposing Toberoff himself about the Superboy fraud, is

17  needed before this claim can be fully adjudicated. *E.g.*, Docket No. 186 at 5, 19-20.

18      *b. DC's Initial Discovery Disclosures.* DC's complaint cited and collected

19  evidence in support of its claims above. Docket No. 49 ¶¶ 1-12, 28-65, 86-101,

20  105-34 (citing and quoting, *e.g.*, relevant contracts, correspondence, copyright

21  office filings in support of each claim). DC's Rule 26 disclosures, filed in

22  September 2010, identified witnesses in support of its claims, including Paul

23  Levitz, the DC representative who negotiated and interacted with the Shusters in

24  1992 and years subsequent. Decl. of Cassandra Seto ("Seto Decl.") Ex. 1 at 9.

25  Despite these disclosures, defendants took no discovery in the case—either into

26  DC's claims, or of witnesses like Levitz—for over 19 months. *Id.* ¶ 3.

27      *c. DC's Pushes to Have Its First Claim Resolved.* In November 2011—after

28  the district court denied defendants' SLAPP motion, and defendants withdrew their

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1    fully briefed Rule 12 motions, Docket Nos. 337-43—DC told defendants it wished

2    to adjudicate without delay its First and Third Claims, Seto Decl. ¶ 4, Exs. 2-3.  DC

3    asked defendants to stipulate to a bifurcated bench trial on both claims, *id.*, and

4    informed defendants  and the Court in a January 2012 joint status report that, if a

5    bifurcated trial could not be had, DC intended to move for partial summary

6    judgment on its First Claim—on the "1992 Agreement" and "Majority Interest"

7    grounds noted above.  Docket No. 364 at 8-9; *supra* at __.

8          Despite the courts making clear that full discovery could proceed in this case

9    despite defendants' pending SLAPP motion, Docket No. 95 at 55:18-60:10; 117;

10   283-11, defendants made the tactical choice not to initiate any discovery until

11   December 2011.[1]  In mid-December 2011, defendants finally served interrogatories

12   and document requests on DC, all which DC fully answered, and the latter of which

13   defendants have never moved to compel on.  *Id*. ¶ 5.

14         *d.  Peary's Interrogatories No. 1-4*.  Peary's 15 interrogatories—12 of which

15   he now moves on—targeted aspects of DC's First Claim.  Numbers 1-4 asked DC

16   to identify "all COMMUNICATIONS" it had with Peary, Jean Peavy, or Frank

17   Shuster—*with no date or subject-matter limitation*—as well as "all" of DC's

18   "COMMUNICATIONS" with Joe Shuster regarding DC's "rights in AND to

19   Superman"—*with no date limitation.  Supra* at __.  DC responded and objected to

20   these interrogatories in February 2012.  (DC's responses are set forth in part above,

21   *supra* at __, as well as in the Arredondo Declaration, Exhibit C at 11-36.)  Each of

22   DC's four responses identified scores of specific "COMMUNICATIONS" that are

23   responsive; noted that defendants possessed other communications they refused to

24   produce; and noted there were oral communications the people at DC, including

25   Levitz, had with the Shusters over many decades, about which DC could provide

26

27         [1] In December 2010, defendants had argued that a District Court order could be read to
     bar them from taking discovery, but DC told defendants and the Ninth Circuit that it did

28   not take that position.  Docket No. 162-17.

1   defendants more detail if they focused their requests.  *E.g.*, *supra* at ▆▆.

2       Defendants did not depose Levitz about his communications.  Rather, they

3   wrote DC several weeks later requesting a Rule 37 conference to discuss DC's

4   responses to Interrogatory Nos. 1-4, as well as other discovery issues.  Arredondo

5   Ex. A at 2-3.  As to Nos. 1-4, defendants complained that DC had failed to identify

6   and describe all its oral communications with the Shusters.  *Id*.  DC responded a

7   week later—setting forth two principal concerns with defendants' position (noted

8   by the bracketed numbers below), and expressing a willingness to resolve the issue:

> Interrogatory Nos. 1-4.  Defendants claim they are entitled to details
> (*i.e.*, approximate dates, subject matter, or the persons involved)
> concerning non-written communications between DC and Mark Warren
> Peary, Jean Adele Peavy, Frank Shuster, and Joseph Shuster.
> **[1]** *Defendants successfully resisted providing exactly this type of
> information in response to DC's interrogatories concerning the
> Toberoff Timeline.*  Docket Nos. 211, 262.  Most recently, defendants
> refused to provide these types of details in response to DC's
> interrogatories to Toberoff, as set forth in our March 6, 2012, letter.
> *Defendants cannot have it both ways.*
>
>     **[2]** *The relationship between DC and the Shusters, moreover, has
> spanned more than 70 years, and DC cannot be expected to provide
> details for every conversation that ever occurred between them,
> including conversations over seven decades old*.  DC objected to the
> scope of Interrogatory Nos. 1-4 as the requests are indefinite as to time
> and *defendants have proposed no narrowing or specific theories of
> relevance as to given time periods or communications.  Once you do so,
> we will consider amending our responses or other compromises to
> provide you reasonable discovery that defendants may seek.*
>     Any such agreement must be made against the backdrop of
> defendants' discovery responses.  For example, the period covered by
> the U.S. Attorney's Office's investigation into the Toberoff Timeline
> covered a brief four-month period, yet defendants refused to provide the
> level of detail they now demand.  If defendants agree to provide the
> same level of detail in their own interrogatory responses that they are
> now requesting from DC, DC is willing to meet and confer to come to a
> reasonable compromise.  Arredondo Decl. Ex. B at 6 (emphasis added).

    The next day, DC met and conferred with Keith Adams—an associate who

now no longer works at Mr. Toberoff's firm—and Pablo Arredondo.  Seto Decl.

¶ 7.  During the call, and as it did in its letter, DC offered to amend or supplement

1    its responses to provide further details if (a) Peary narrowed his interrogatories and

2    identified his theories of relevance for specific requests; and (b) defendants agreed

3    to provide the same level of specificity in their discovery responses.  *Id.*

4    Mr. Adams said he needed to confer with Mr. Toberoff, and that defendants would

5    consider DC's proposal and respond.  *Id.*  Mr. Adams never called or wrote DC

6    again on this issue, and the issue of DC's interrogatory responses lay dormant for

7    *four months*, until July 13, when Peary filed this motion.  *Id.* ¶ 8.

8         *e.  DC's Summary Judgment Motion.*  On June 21, DC wrote to defendants to

9    request a final conference on its partial summary judgment.  *Id*. Ex. 4.  In the letter

10   and in a meet-and-confer six days later, DC told defendants it would be moving on

11   its First Claim on the grounds identified in DC's January 2012 joint-status report,

12   including the "1992 Agreement" and "Majority Interest" issues.  *Id*. & *id*. ¶ 11.

13        Neither in response to the letter or on the call did defendants raise *any issue*

14   or concern about DC's responses to Interrogatories No. 1-4.  Instead, on June 28 —

15   *two years* after DC identified Levitz as having information regarding the 1992

16   Agreement—defendants served notices of deposition for Levitz and a Rule 30(b)(6)

17   witness on the 1992 Agreement.  *Id*. Exs. 5, 6.  DC told defendants that Levitz

18   would serve as its 30(b)(6) witness, and that he was available to be deposed July

19   26.  *Id*. Ex. 7 & *id*. ¶ 14.  Defendants also subpoenaed two DC-related lawyers,

20   Martin Payson and Lillian Laserson, for depositions and documents.  *Id*. Exs. 8-11.

21        Over the next several weeks, DC and defendants had numerous discussions

22   about DC's summary judgment motion, its scheduling, and discovery defendants

23   believed they needed to oppose it, including the four depositions noted above.  *Id*. ¶

24   16; Ex. 17.  *Not once in these many discussions* about whether Payson and Laserson

25   were even appropriate witnesses, by what date Levitz had to be deposed, or on

26   issues such as what discovery DC needed to oppose defendants' threatened cross-

27   motion, did defendants ever raise the issue of DC's interrogatory responses.  *Id*. ¶

28   17.  Instead, the parties agreed on a deposition date for Levitz, and defendants

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

8

EXHIBIT 19
132

1    stopped pressing for deposition dates for Payson and Laserson. *Id*. DC also

2    proposed a briefing schedule on the parties' cross-motions for summary judgment,

3    to which defendants objected. *Id*. Ex. 17 at 77. Days later, on July 13, defendants

4    finally proposed a briefing schedule of their own. Because that schedule prejudiced

5    DC, DC declined to accept it, and instead said both parties should simply follow the

6    rules that govern the normal schedule on such motions. *Id*. Exs. 12, 17 at 77.

7        *f. Peavy's Present Motion.* Hours after DC declined to accept defendants'

8    scheduling proposal, defendants served DC with the present motion. *Compare id*.

9    Ex. 12, *with id*. Ex. 13. On July 15, DC asked defendants to withdraw the motion

10   because they had not finished the meet-and-confer on it in March; they had made

11   no mention of DC's interrogatory responses for months; and DC remained willing

12   to discuss amending its responses. *Id*. Ex. 14. (The same day DC also filed its

13   motion for partial summary judgment. Docket No. 458.) Defendants refused,

14   arguing Toberoff had raised the issue of DC's interrogatory responses in a June 12

15   email, and stating that defendants would not meet-and-confer, and instead DC must

16   either oppose the motion or amend its responses in accord with the relief it sought.

17   *Id*. Ex. 15 at 65. DC pointed out in response that Toberoff's June 12 email made no

18   reference—*none*—to DC's interrogatory responses, *id*. Exs. 15 at 64-65, 16 at 67,

19   and DC declined defendants' offer to capitulate to relief sought in Peary's motion

20   because the motion did nothing to fix or narrow Peary's facially deficient

21   interrogatories.[2]

22       DC also last week amended its interrogatory responses to omit information

23   Peary complained about in response to Interrogatory No. 11; to reference two new

24   _____

25   [2] Faced with the fact the June 12 email said nothing about DC's interrogatory answers,
     defendants pointed to a July 11 letter that they said perfected the meet-and-confer record.

26   *Id*. at 63. Not so. While the July 11 letter complains about DC's discovery responses, it
     says nothing about the parties' March 2012 meet-and-confer; DC's offer then to work

27   with defendants on amending the responses; or Peary's intent to bring a motion two days
     later. *Id*. at 63. Defendants notably did *not* include the July 11 letter as an exhibit to this

28   motion—that is because it does *not* evidence a proper meet-and-confer.

1    documents it produced weeks ago and that were responsive; and to reference both

2    its summary judgment filing and Levitz's declaration in support of it.  *Id.* Ex. 18.

3    During the meet-and-confer on DC's summary judgment motion, the parties

4    discussed these two documents, as well as the fact that Levitz, but not Payson or

5    Laserson, would file such a declaration on DC's behalf.  *Id.* ¶ 16.

2.    **Peary's Motion on Interrogatories 1-4 Should Be Denied.**

7    Peary's motion should be denied because (a) he failed to meet and confer on

8    it; (b) DC's interrogatory responses were proper; and (c) Peary obtained (or will

9    obtain) the additional information he says he needs in DC's amended interrogatory

10    responses, DC's motion for partial summary judgment, and Levitz's deposition.

11    *a. The Failure To Meet and Confer.*  At defendants' urging, and based on a

12    failure to meet and confer fully, this Court has denied DC's motions to compel the

13    production of further interrogatory answers and documents from defendants.  *E.g.*,

14    Docket No. 262 at 5-6.  Defendants violated those same rules here and worse.  They

15    moved without warning on interrogatory requests that DC—*some four months*

16    *prior*—offered to amend or supplement if defendants would only focus them and

17    discuss them further.  *Cf. supra* at __-__; C.D. Cal. L.R. 37-1; *Sequoia Prop. v.*

18    *U.S.*, 203 F.R.D. 447, 451-52 (E.D. Cal. 2001) (denying motion to compel for

19    failure to meet and confer).[3]  That offer remains open, but defendants apparently

20    want to go on offense and be the movant in discovery disputes, even where such

21    disputes do not rightly exist.  This is reason alone to deny defendants' motion.

22    *b. DC's Answers and Objections Were Proper.*  The rules require that

23    motions to compel further interrogatory answers "contain, verbatim, both the

24    interrogatory and the allegedly insufficient answer, followed by each party's

25    contentions as to that particular interrogatory, separately stated."  C.D. CAL. L.R.

26    ___

[3] *Accord Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010); *Shuffle
Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 173 (D. Nev. 1996); *Williams v.
Kernan*, 2010 WL 731860, at *2 (N.D. Cal. Mar. 1, 2010); *Kyte v. Progressive Nw. Ins.
Co.*, 2004 WL 491886, at *2 (D. Alaska Mar. 9, 2004); *infra* at __.

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1    37-2.1; *see April v. U.S. Airways, Inc.*, 2010 WL 2889931, at *1 (D. Ariz. 2010)

2    (denying motion that failed to follow rule); *Gerawan Farming, Inc. v. Prima Bella*

3    *Produce, Inc.*, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) (same).  Peary's

4    grouping of interrogatories conflates certain important distinctions among the

5    interrogatories, and also does not include DC's full answers.  *Cf. id.*  DC addresses

6    each interrogatory and answer on its own, and where Peary omitted the relevant

7    Q&A in its motion, DC includes it.  As shown below, DC's responses were proper:

8    <u>i.  DC's Position On Interrogatory No. 1.</u>

9    Mark Peary, who is Joe Shuster's nephew and interacted with DC over three

10   decades, does not challenge the part of DC's response that points him to relevant,

11   written communications between DC and his family: DC00145-151,

12   DCC00004186-87, DCC00004191, DCC00006855, DCC00006872-6879,

13   DCC00057431-57447, DCC00089366-89372, WB008506-8507.  Rather, Peary

14   complains that DC's response that its "[r]epresentatives …, including Paul Levitz,

15   had non-written communications with Mr. Peary over the years" is deficient

16   because it does not identify and describe each and every communication DC ever

17   had with Peary—including its "date," "type," and "subject matter."  *Supra* at __.

18   Peary's complaint ignores DC's objections to the interrogatory as overbroad;

19   it also ignores the unfair burden, recognized by law, that is imposed by responding

20   to such requests.  Interrogatory No. 1 seeks "all COMMUNICATIONS" between

21   DC and Peary, *and is not limited in any way as to time or subject matter*.  It, thus,

22   seeks volumes of irrelevant information, such as what Levitz may have discussed

23   with Peary at a movie premiere or pleasantries DC or its counsel may have shared

24   with Peary at his deposition or a mediation session.

25   Such requests are improper.  *E.g., Trevino v. ACB Am., Inc.*, 232 F.R.D. 612,

26   618 (N.D. Cal. 2006) (interrogatory requesting "all communications" between two

27   co-defendant corporations are "overly broad"); *Benham v. Rice*, 238 F.R.D. 15, 26

28   (D.D.C. 2006) (sustaining overbroad objection to interrogatory requesting "all

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1    communications relating to the complaint"); *In re Herald, Primeo and Thema*

2    *Funds Secs. Litig.*, 2011 WL 4056819, at *3 (S.D.N.Y. Sept. 8, 2011) (finding

3    interrogatories requesting all communications between defendants to be "vastly

4    overbroad" where the issue was establishing in personam jurisdiction and the

5    requests were not limited to parties located in the relevant state); *Motorola, Inc. v.*

6    *Lemko Corp.*, 2010 WL 4781844, at *2 (N.D. Ill. Nov. 17, 2010) (interrogatory

7    seeking all communications between plaintiff and third party concerning the trade

8    secrets at issue in the case was "vastly overbroad"); *Chen v. Hewlett-Packard Co.*,

9    2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all

10   communications . . . related to power supply problems" was "hopelessly over-

11   broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1995 WL 526533, at *4 (D.

12   Kan. 1995) (interrogatory requesting all communications with persons from whom

13   responding party received advice on a certain topic was overly broad on its face);

14   *S.T. Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988)

15   (interrogatory seeking all communications with an individual was "overly broad").

16          Had Peary narrowed his request in March—as DC invited him to do—and

17   sought communications concerning specific subjects in which defendants were

18   interested—say Superboy—DC could have done the required diligence on such

19   questions and formulated and provided tailored responses months ago.  Defendants

20   chose not to go this course, likely because they did not want to be bound to provide

21   DC similarly detailed responses, as DC insisted.  *Supra* at ▆▆.  In any event, starting

22   two years ago, defendants could have deposed Levitz about all conversations that

23   he had with Peary that Levitz could remember.  *Cf.* Docket No. 262 at 6 (deposition

24   can be used to obtain specifics not included in interrogatory responses).  Defendants

25   chose never to take that deposition, but can and will depose Levitz next week.

26   Levitz is the main person with whom Peary dealt at DC, as Peary well knows.  Why

27   defendants made the tactical choice not to depose Levitz for two years, or not to

28   accept DC's offer to supplement its interrogatory responses in March, they only

1    know. What is plain, however, is that their motion must be denied.

2          ii.   DC's Position On Interrogatory No. 2.

3    **Interrogatory No. 2**
       IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele

4    Peavy.
   **Response to Interrogatory No. 2**

5        DC objects to this Interrogatory on the grounds that it is indefinite as to

6    time and not reasonably limited in scope, and to the extent that it seeks the
production of any item, or portion thereof, which is not reasonably calculated

7    to lead to the discovery of relevant and admissible evidence.
       DC objects to the definition of "YOU" as vague and overbroad and will

8    respond to this term as limited to the relevant representatives of DC and
Warner Bros. Entertainment Inc. DC objects to the definition of

9    "COMMUNICATION" as overbroad to the extent it encompasses the
transmission of information orally, by telephone, or through gesture. DC also

10    objects to the definition of "COMMUNICATION" as overbroad to the extent it
includes documents filed in connection with prior or ongoing litigation. DC

11    objects to the extent the Request "all COMMUNICATIONS" on the ground
that such request is overly broad, unduly burdensome, oppressive, and not

12    reasonably calculated to lead to the discovery of admissible evidence. As used
in these Responses, the phrase "all COMMUNICATIONS," or phrases of

13    similar import, should be understood to mean those communications DC and
its counsel were able to locate using reasonable diligence and reasonable

14    judgment concerning the whereabouts of such communications. DC does not
object to or withhold any information based on the definition of "IDENTIFY,"

15    as this definition mirrors in large part language that DC employed in its own
discovery requests. Defendants previously objected to this same language in

16    DC's requests as impermissibly overbroad. Based on defendants' tacit
acknowledgement that DC's use of this term is proper, DC will answer this

17    discovery and has confirmed with defendants that they will do the same.
       Subject to and without waiving the foregoing objections, DC responds as

18    follows:
       DC00014-15, DCC00004186-DCC00004187, DCC00004191,

19    DCC00006182-6184, DCC00006188-6190, DCC00006192-6194,
DCC00006198, DCC00006203-6207, DCC00006214-15, DCC00006372-6373,

20    DCC00006375-6375, DCC00006399, DCC00006413-6439, DCC00006441,
DCC00006477-6492, DCC00006498, DCC00006607-6618, DCC00006620,

21    DCC00006629-6630, DCC00006778, DCC00006869, DCC00008506-8507,
DCC00057431-57447, DCC00057854, DCC00073008, DCC00073010,

22    WB007959-7961, WB0010161-10162, WB010169-10170. Representatives
from Warner Bros. Entertainment Inc. and DC, including Paul Levitz, had non-

23    written communications with Ms. Peavy over the years as well.

24   

25       Again, Peary does not complain about the scores of written communications

26    DC disclosed concerning his mother's communications with DC, but rather that DC

27    did not list every oral communication it ever had with her. This complaint fails to

28    mention that Jean's body of possible communications with DC *dates back decades*

1  *further* than her son's, and, thus, it is even more objectionable to ask DC to verify

2  that it has listed "all COMMUNICATIONS" with her—without any limitation as to

3  time or subject matter. *E.g.*, *Benham*, 238 F.R.D. at 26; *supra* at __.

4      Defendants have had in their possession for years almost 60 pieces of

5  correspondence between Peavy and DC from just the 1992-2001 time-period.

6  Docket Nos. 460-1 at 8-24, 33-34, 36, 39-44, 46-69, 71, 74, 77-81; 460-2 at 218-39,

7  242-52. Some of these letters mention oral discussions DC had with Jean, *e.g.*,

8  Docket No. 460-1 at 33 ("Sorry we had to miss seeing you when Frank [and] I went

9  in the [DC] office Oct. 2nd to sign the papers."); 460-1 at 28-29, and DC's

10 interrogatory responses openly disclose that Levitz negotiated the 1992 Agreement

11 with Jean and Frank, Arredondo Decl. Ex. C at 18-19.

12     If defendants had an interest in these conversations and negotiations, they

13 could have drafted narrowed interrogatories that targeted them; asked DC to

14 address those conversations as part of the meet-and-confer process in March (and as

15 part of DC's supplemental responses); and/or deposed Levitz on each referenced

16 conversation any time during the past two years. *Defendants did none of this*, and

17 instead made the tactical choice not to take any discovery for 19 months; made the

18 tactical choice not to close the loop with DC on its offer to amend its interrogatory

19 responses, and then made the tactical choice to rush to file this motion when DC

20 moved for summary judgment. *Supra* at __-__. This is too little, too late. And, in

21 any event, defendants have DC's summary judgment papers, amended interrogatory

22 responses, and Levitz's deposition to explore any issues they have.

### iii. DC's Position On Interrogatory No. 3.

23

24 **Interrogatory No. 3**
    IDENTIFY all COMMUNICATIONS between YOU AND Frank Shuster.

25 **Response to Interrogatory No. 3**
    DC objects to this Interrogatory on the grounds that it is indefinite as to

26 time and not reasonably limited in scope.
    DC objects to the definition of "YOU" as vague and overbroad and will

27 respond to this term as limited to the relevant representatives of DC and
    Warner Bros. Entertainment Inc. DC objects to the definition of

28

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

EXHIBIT 19
138

"COMMUNICATION" as overbroad to the extent it encompasses the transmission of information orally, by telephone, or through gesture. DC also objects to the definition of "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00006-7, DC00014-15, DCC00005142-44, DCC00005673, DCC00006206-6207, DCC00006375-76, DCC00006399, DCC00006413-6415, DCC00006417, DCC00006420-6422, DCC00006431-6436, DCC00006440-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006495, DCC00006775-6777, DCC00006856, DCC00006867, DCC00057854, DCC00073008, DCC00073010, DCC00073012, DCC00073016-73017, WB005603, WB007972, WB010161-10162, WB010169-10170. Representatives from DC, including Paul Levitz, had non-written communications with Frank Shuster over the years as well.

Peary's request to identify "all COMMUNICATIONS" DC had with Frank Shuster is even more problematic. Frank worked with his brother Joe as a "letterer" for DC, and in the 1970s, Joe went out of his way to ensure that DC provided for his brother Frank. Docket No. 460 at 2 ¶ 7. Frank would have had scores of oral communications with DC on all sorts of non-relevant topics, including on content in comic books. To force DC to search for evidence of "all" such communications and list and describe them, is not required under the law. *Supra* at __. Defendants should have narrowed their requests as to Frank or deposed Levitz on any issues that concern them.

### iv. DC's Position On Interrogatory No. 4.

**Interrogatory No. 4**
    IDENTIFY all COMMUNICATIONS between YOU AND Joseph Shuster REGARDING YOUR rights in AND to Superman.
**Response to Interrogatory No. 4**

1    DC objects to this Interrogatory on the grounds that it is indefinite as to
time and not reasonably limited in scope.

2    DC further objects to the use of the term "all" in connection with the
requested communications on the ground that such interrogatory is overly
3    broad, unduly burdensome, oppressive, and not reasonably calculated to lead to
the discovery of admissible evidence. DC will not search and review every
4    record or source of information within its possession, custody, or control in an
effort to locate "all" communications. Subject to these objections, DC will use
5    reasonable diligence to locate responsive information and documents in its own
files, based on inquiry of those persons who may reasonably be expected to
6    possess responsive information, and examination of those files reasonably
expected to yield responsive information.

7    DC objects to the definition of "YOU" as vague and overbroad and will
respond to this term as limited to the relevant representatives of DC and
8    Warner Bros. Entertainment Inc. DC objects to the definition of
"COMMUNICATION" as overbroad to the extent it encompasses the
9    transmission of information orally, by telephone, or through gesture. DC also
objects to the definition of "COMMUNICATION" as overbroad to the extent it
10   includes documents filed in connection with prior or ongoing litigation. DC
objects to the extent the Request "all COMMUNICATIONS" on the ground
11   that such request is overly broad, unduly burdensome, oppressive, and not
reasonably calculated to lead to the discovery of admissible evidence. As used
12   in these Responses, the phrase "all COMMUNICATIONS," or phrases of
similar import, should be understood to mean those communications DC and
13   its counsel were able to locate using reasonable diligence and reasonable
judgment concerning the whereabouts of such communications. DC does not
14   object to or withhold any information based on the definition of "IDENTIFY,"
as this definition mirrors in large part language that DC employed in its own
15   discovery requests. Defendants previously objected to this same language in
DC's requests as impermissibly overbroad. Based on defendants' tacit
16   acknowledgement that DC's use of this term is proper, DC will answer this
discovery and has confirmed with defendants that they will do the same.

17   Subject to and without waiving the foregoing objections, DC responds
as follows:

18   DCC00004132, DCC00004153, DCC00004186-4187, DCC00004191,
DCC00004499-4505, DCC00004507-4508, DCC00004521- DCC00004579,
19   DCC00004908, DCC00005126, DCC00005658, DCC00005662,
DCC00005663-5666, DCC00005668, DCC00005669, DCC00005671,
20   DCC00005672, DCC00006190, DCC00007178-7182, DCC00007199-7201,
DCC00007206-7208, DCC00007954-7965, DCC00007990-8024,
21   DCC00045543-45544, DCC00057253-57256, DCC00057358-57361,
WB005603, WB005623-5624, WB005627-5638, WB005663-5664,
22   WB005794-5800, WB006603-6607, WB007942-7943, WB007959-7961,
WB008305-8316, WB008556-8557, WB008559-8561, WB008563.
23   Representatives from DC, including Paul Levitz, had non-written
communications with Joseph Shuster over the years as well.

24

25   Again, the main problem here is time and scope. Joe Shuster started working

26   with DC in the late 1930s; had numerous negotiations with the company concerning

27

28

1   his compensation and rights in the 1930s and 1940s; he unsuccessfully sued DC in

2   state court in the 1940s, which led to a settlement; and he unsuccessfully sued DC

3   in federal court in the 1970s, which (along with Joe's dire finances) led DC to enter

4   into a lifelong pension agreement with Joe and his family in 1975.  Docket Nos. 49

5   at ¶¶ 28-50; 334 at 2-4; 458 at 3-5.  DC did its best in its responses to identify all

6   communications with Joe Shuster of which it is aware that touch on DC's rights in

7   Superman.  There are without question other oral discussions that occurred over 50

8   years that are responsive—but DC relies on none in its complaint or summary

9   judgment motion.  As DC made plain to defendants in March, it could not without

10  undue expense, locate and list all such communications over 50 years.  Nor was it

11  required to do so by law.  *E.g., Motorola*, 2010 WL 4781844, at *2 (interrogatory

12  seeking all communications between plaintiff and third party concerning the trade

13  secrets at issue in the case was "vastly overbroad"); *Chen*, 2005 WL 1388016, at *1

14  (interrogatory requesting "all communications . . . related to power supply

15  problems" was "hopelessly over-broad"); *Pulsecard*, 1995 WL 526533, at *4

16  (interrogatory requesting all communications with persons from whom responding

17  party received advice on a certain topic was overly broad on its face); *supra* at __.

18  As for any conversations Levitz remembers (and he would be the main font of

19  knowledge on this point for DC, as DC told defendants, Seto Decl. ¶ 16),

20  defendants can ask Levitz about such memories at his deposition.

21      **C.    Defendants' Position on Interrogatory No. 5**

22          Insert section on this Interrogatory from defendants' brief.  *See* C.D. CAL.

23  L.R. 37-2.1.

24      **D.    DC's Position On Interrogatory No. 5**

25          Defendants' complaints about Interrogatory No. 5 are similarly without

26  merit, and their motion on it can and should be denied because of their failure to

27  meet and confer, *supra* at __, and because DC's responses were appropriate.  No. 5

28  requests "all COMMUNICATIONS" between DC and "any third party" that

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1   "REFER[]" to the 1992 Agreement.  Arredondo Decl. Ex. C at 17.  No. 5 does not

2   define what is meant by "third-party," nor did defendants' March 8, 2012, meet-

3   and-confer letter, which just made the circular argument that this was a proper

4   request—and did not explain what information it truly sought.  *Id.* Ex. A at 2-4.

5       Defendants now feign outrage that DC's response to No. 5 points defendants

6   to briefs, other communications with third parties, and the discovery record in the

7   *Siegel* and *Shuster* case, where DC in fact mentioned or might have mentioned the

8   1992 Agreement to third parties.  *Supra* at __-__.  But what DC did, in the time

9   allotted to respond, was to explain to defendants this request was overbroad, and it

10  would meet and confer with defendants on ways to understand and narrow it.  DC

11  also tried to point defendants to pleadings in which it discussed with "third parties"

12  (including the courts) its rights under the 1992 Agreement, so that defendants could

13  not claim they were ignorant of DC's claimed legal entitlements.  Indeed, as DC

14  explained in its March 2012 letter—*without any response from defendants*:

> 15       Defendants suggest that DC's response to Interrogatory No. 5 is
> 16   deficient because DC identified too many documents.  First, defendants
>      ignore DC's objections to the interrogatory as being vague, overbroad,
> 17   and unduly burdensome.  Second, Interrogatory No. 5 requests that DC
>      identify "*all* COMMUNICATIONS" with third parties that refer to the
> 18   1992 Agreement.  Peary Interrogatory No. 5.  In the time allowed, DC
>      endeavored to identify all responsive documents, but now defendants
> 19   suggest that the "all" DC sought to provide was too much, and it was
>      not "all" that defendants really wanted despite asking for it.  *DC*
> 20   *remains willing to meet and confer on this request, if you wish to do so.*
> 21   Arredondo Decl. Ex. B at 6 (emphasis added).

22      Defendants' discovery motion also challenges DC's reading, under copyright

23  and contract law, of the import of the 1992 Agreement on the Shuster Termination

24  Notice.  *Supra* at __-__.  DC refutes these arguments in its summary judgment

25  papers, Docket No. 458 at 1-2, 10-18 (and Rule 12 papers, before that, Docket No.

26  334 at 5-10), and DC's motion for summary judgment will resolve these questions.[4]

27      [4] Defendants cite three cases that they say hold that DC's responses are unintelligible
    because they point defendants to briefing and the record in this case and *Siegel.  Supra* at
28  __.  None of their cases so hold.  *E.g., Walker v. Lakewood Condo Owners Ass'n*, 186

1    **E.    Defendants' Position on Interrogatories Nos. 9-15**

2    Insert section on these Interrogatories from defendants' brief.  *See* C.D. CAL.

3    L.R. 37-2.1.

4    **F.    DC's Position On Interrogatories Nos. 9-15**

5    Peary is on even weaker ground in moving on Nos. 9-15.  His March 2012

6    Rule 37 *never* mentions these interrogatories by number or states an intention to

7    move on them.  Arredondo Decl. Ex. A 2-4.  Indeed, DC's response letter in March

8    could only hazard a guess that these might be responses about which defendants

9    complained.  *Id*. Ex. B at 7.  This Court denied a part of one of DC's motions to

10   compel because DC's Rule 37 letter mentioned *categories* of problematic

11   interrogatory responses defendants served, but not several of the *specific numbered*

12   *requests* on which DC moved.  Docket No. 262 at 6.  That rule—which the Court

13   applied even though DC raised the specific numbered interrogatory responses

14   during the follow-up Rule 37 meet-and-confer-call, Docket Nos. 206 at 1-15; 207-

15   12 at 487-93; 262 at 6—must apply to Peary as well and bar his motion.

16   No matter defendants' meet-and-confer failures, all seven requests on which

17   Peary moves are also improper on their face.  Each demands that DC "IDENTIFY

18   any evidence" that supports a series of its contentions.  *Supra* at __.  Such all-

19   encompassing, "blockbuster" discovery requests are "overly broad," "unduly

20   burdensome," and "an abuse of the discovery process."  *Hilt v. SFC., Inc.*, 170

21   F.R.D. 182, 186-87 (D. Kan. 1997); *Kim v. City of Santa Clara*, 2009 WL 4021389,

22   at *2-3 (N.D. Cal. Nov. 19, 2009) (denying motion to compel further answers to

23   interrogatories asking for "all facts"); *Bashkin v. San Diego Cnty.*, 2011 U.S. Dist.

24

25   F.R.D. 584, 587 (C.D. Cal. 1999), involved numerosity concerns, not the sufficiency of
     interrogatory responses.  In both *Landon v. Ernst & Young LLP*, 2009 U.S. Dist. LEXIS

26   119387, *7-8 (N.D. Cal. Dec. 2, 2009), and *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D.
     Ind. 2000), the court found that pointing to the record was non-responsive.  Here, DC's

27   response *is* responsive to Peary's request, which calls for "any reference" in third-party
     communications to the 1992 Agreement.  DC did its best to meet that wide-open demand,

28   and also to prevent defendants from making "gotcha" arguments in the future.

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

1   LEXIS 3439, at *4-6 (S.D. Cal. Jan. 13, 2011) ("parties are not entitled to each and

2   every detail that could possibly exist in the universe of facts…. [n]or [are they]

3   entitled to a narrative account of [the responding party's] case" ); *Olson v. City of*

4   *Bainbridge Island*, 2009 WL 1770132, at *4 (W.D. Wash. June 18, 2009).

5       Peary's motion is also inappropriate given the posture of the case.  *If ever*

6   *proper*, contention interrogatories are meant to narrow issues for trial, and, thus,

7   may be served *only* when discovery is "substantially completed."  *Lucero v. Valdez*,

8   240 F.R.D. 591, 594 (D.N.M. 2007) (granting motion to compel answers to

9   contention interrogatories where they did not request "each and every fact," and

10  discovery was set to close 10 days after court issued order); *see Kim*, 2009 WL

11  4021389, at *2-3("no point in forcing [party]" to respond to contention

12  interrogatories "until discovery regarding the incident is complete or nearly so");

13  FED. R. CIV. P. 33(a)(2); *Johnson v. Couturier*, 261 F.R.D. 188, 192 (E.D. Cal.

14  2009).

15      Finally, when one studies each of the seven interrogatories on its own, as the

16  rules require, *supra* at __-__—rather than in the mass that Peary lumps them—there

17  are additional, specific grounds to deny defendants' motion on each request.

18              i.  DC's Position On Interrogatory No. 9.

19  **Interrogatory No. 9**
         IDENTIFY any evidence that supports YOUR contention that "[t]he
20  Shuster Termination Notice is invalid, and thus ineffective," found in
    paragraph 106 of YOUR COMPLAINT.
21  **Response to Interrogatory No. 9**
         DC objects to the Interrogatory to the extent it requires DC to prove
22  through the discovery process its ultimate legal arguments related to the
    ramifications of defendants' agreements and communications.  DC objects to
23  the Interrogatory on the ground that it is compound and includes numerous
    discrete subparts that should each be counted as a separate interrogatory for the
24  purposes of calculating the number of interrogatories that Peary has
    propounded on DC.  DC articulated five separate bases for the invalidity of the
25  Shuster Termination Notice in its complaint (Docket No. 49 ¶¶ 105-134), and
    discovery must accordingly be addressed to each basis individually.  DC
26  objects to the Interrogatory to the extent it seeks information protected by the
    attorney-client privilege, the attorney work product doctrine, or any other
27

28

applicable privilege or immunity.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336, DCC00004510-4520, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-8316, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary complains that DC's response provides too much information—by not only citing a large block of documentary evidence,[5] but also to briefs DC has filed on the contention at issue—*the grounds for DC's First Claim*—as well as the discovery record generally. Such an answer is hardly surprising given the capacious and premature nature of Peary's request. To take one example, one ground DC cites that the "Shuster Termination Notice is invalid" under its First Claim is defendants' unclean hands. Discovery on this issues is months away from being complete, given the delay defendants' caused in this case with their several successive (and all failed) writ petitions before the Ninth Circuit, *e.g.*, Docket Nos. 162-17, 163, 163-1, and their untenable position that witnesses may only be deposed once and only once—even if new relevant documents emerge, *e.g.*, Docket No. 366. If defendants are concerned about the "1992 Agreement" ground that is a part of DC's First Claim, that issue has been framed by DC's summary judgment

---

[5] DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336, DCC00004510-4520, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-8316, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

1  motion, and DC has amended its interrogatory responses accordingly.  Peary can

2  ask Levitz about any evidence cited in DC's motion at his deposition next week.

3       DC is not required in responding to this or any other interrogatory to describe

4  "every evidentiary fact, details of testimony of supporting witnesses, and the

5  contents of supporting documents," *Lucero*, 240 F.R.D. at 594, as Peary wrongly

6  contends.  The cases Peary cites—where responding parties merely pointed moving

7  parties to every document in the case[6]—are off point for two reasons.  First, in all

8  of the responses at issue here, DC pointed defendants to specific, concrete evidence

9  to review.  Second, given the overbreadth of defendants' requests, DC *also* pointed

10 to its pleadings and the discovery record generally to avoid claims of "gotcha" by

11 defendants, in case DC's current responses did not identify every conceivable

12 document among tens of thousands, early in discovery, that might become relevant.

13 Defendants' have the needed roadmap to test DC's claims on which DC moved for

14 summary judgment; that evidence is cited in its motion, and defendants can

15 question DC's 30(b)(6) witness on it.

16             ii.  DC's Position On Interrogatory No. 10.

17 **Interrogatory No. 10**

18     IDENTIFY any evidence that supports YOUR contention that "[t]he 1992
   Agreement that Frank Shuster and Jean Peavy entered into with DC Comics

19 bars the Shuster Estate from pursuing termination because, inter alia, in
   exchange for valuable consideration, the 1992 Agreement effected a rescission,

20 revocation, and re-grant of all prior copyright grants, which eliminated any
   pre-1978 grant that could be subject to termination under section 304 of the

21 Copyright Act," found in paragraph 112 of YOUR COMPLAINT.

22 **Response to Interrogatory No. 10**

23

24     [6] *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012) (responding party referred to
   "[o]ther emails previously produced," but did not provide identifying information such as

25 bates numbers); *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8 (generally referring to
   discovery in related action but providing no details about the discovery); *Pac. Lumber Co.*

26 *v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005)
   (response referred to "every document and every injury alleged by any … plaintiff (and

27 some plaintiffs from other, unrelated litigation)"); *Williams v. Sprint/United Mgmt. Co.*,
   235 F.R.D. 494, 501 (D. Kan. 2006) (response referred to all pleadings in the case and

28 documents produced, and did not refer to specific documents or briefing).

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DCC00006-7, DC00014-15, DCC00000557-3336, DCC00006184, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005603, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150,

151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 10 fail for the same reasons as No. 9. DC appropriately responded to this premature, overbroad request for "any evidence" by citing to specific documents and briefing in this case that relate to the enforceability and effect of the 1992 Agreement. Defendants knew since *May 2010* that DC sought to enforce the 1992 Agreement in its First Claim, Docket No. 1 at ¶¶ 99-104, and DC advised defendants in *September 2010* that Levitz possessed relevant knowledge. *Supra* at ___ . Defendants knew *six months ago* that DC intended to move for summary judgment to enforce the 1992 Agreement. Seto Decl. Ex. 17 at 75. And defendants knew from DC's Rule 12 briefing that DC was relying on Jean and Frank's communications with Levitz to support this claim. *E.g.,* Docket Nos. 89 at 1-13; 186 at 1-13; 334 at 2-10. Still defendants still did nothing to pursue this issue—either following up on this request in the meet-and-confer process, or deposing Levitz—until DC said it filing its summary judgment papers shortly. *Supra* at __-__. Such lack of diligence cannot be rewarded.

### iii. DC's Position On Interrogatory No. 11.

Peary's complaints about DC's response to Interrogatory No. 11 are equally unfounded. DC's interrogatory response and summary judgment motion cites and

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

EXHIBIT 19
149

1  identifies the evidence it relies on for the factual propositions about why Jean and

2  Frank approached DC in 1992 and what they knew about Superman's value at the

3  time.  *Supra* at __ (citing , *e.g.*, Aug. 21, 1992, Jean letter to Payson (DCC0006477-

4  92); Aug. 21, 1992, Levitz letter to Frank (DCC00006462); Sept. 8, 1992, Levitz

5  letter to Frank (DCC00006495); Sept. 15, 1992, Peary letter to Levitz

6  (DCC006855-56); Agreement dated as of Aug. 1, 1992 (DCC0057854); Oct. 2,

7  1992, Frank letter to Levitz (WB007972); Oct. 12, 1992, Levitz letter to Jean and

8  Frank (DCC00006441)); Docket Nos. 458 at 5-7; 460 at ¶¶ 5-9; 460-1 at 9-12, 26-

9  27, 30-32, 34 (citing Aug. 21, 1992, Jean letter to Payson; Aug. 21, 1992, Levitz

10  letter to Frank; Sept. 8, 1992, Levitz letter to Frank; Sept. 15, 1992, Peary Letter to

11  Levitz; Agreement dated as of Aug. 1, 1992; Oct. 2, 1992, Frank letter to Levitz;

12  Oct. 12, 1992, Levitz letter to Jean and Frank).

13       None of this evidence can come as a surprise to defendants.  It all comes

14  from Jean's and Frank's *own letters to DC*, in which they explained why they

15  approached DC in 1992.  *Id.*  Or it comes from Peary's own admissions at his

16  deposition, where he testified about his family's knowledge of the value of

17  Superman in 1992.  Docket No. 305-37 at 1256:8-17.

18       Peary accuses DC of seeking to "misdirect" or "misinform" defendants by

19  citing in its answer to No. 11 certain post-1992 documents.  *Supra* at __.  This

20  misses the mark.  Defendants *never raised this issue* in their Rule 37 letter or call in

21  March—or in the four months since.  Arredondo Decl. Exs. A at 2-4; B at 5-8; Seto

22  Decl. ¶ 9.  Had they raised the issue, DC could have addressed any concern, and, in

23  fact, has now amended its response to Interrogatory No. 11 to address it.  Seto Decl.

24  Ex. 18 at 97-98.

### iv.  DC's Position On Interrogatory No. 12.

25

26  **Interrogatory No. 12**

27       IDENTIFY any evidence that supports YOUR contention that "the Shusters
     are estopped from disputing that the 1992 Agreement remains in full force and
     effect, which operates to preclude the assertion of any termination right,"
28     found in paragraph 117 of YOUR COMPLAINT.

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

EXHIBIT 19
150

**Response to Interrogatory No. 12**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00008-12, DC00014-15, DC00094-144, DCC00000557-3336, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-8024, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005603, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but

not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 12 fail for the same reasons as Interrogatory Nos. 9 and 10.

### v.  DC's Position On Interrogatory No. 13.

**Interrogatory No. 13**

IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were intended to conceal material information from DC Comics, including: (a) the various conflicts of interest arising from Toberoff's and his companies' significant ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

**Response to Interrogatory No. 13**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC also objects to the extent the Interrogatory calls for information which is not available to DC.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

EXHIBIT 19
152

DC00001-7, DC00014-15, DCC00000557-3336, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00056945-56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, IPW00001-00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8053, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

For the same reasons DC's response to Interrogatory Nos. 9-11 are appropriate, so too is DC's response to No. 13.  More importantly, this contention includes a key set of issues (especially concerning Toberoff's misconduct) on which discovery is still just underway (including depositions of Toberoff and his three companies).  *Kim*, 2009 WL 4021389, at *2-3 ("no point in forcing [party]" to respond to contention interrogatories "until discovery regarding the incident is complete or nearly so"); FED. R. CIV. P. 33(a)(2); *Johnson*, 261 F.R.D. at 192.

### vi.  DC's Position On Interrogatory No. 14.

**Interrogatory No. 14**
IDENTIFY any evidence that supports YOUR contention that "the Shuster Termination Notice … contains material misrepresentations intended to mislead the courts, Copyright Office, and DC Comics—all to the detriment of DC Comics," found in paragraph 129 of YOUR COMPLAINT.
**Response to Interrogatory No. 14**

1    DC objects to the Interrogatory to the extent that it requires DC to prove
through the discovery process its ultimate legal arguments related to the
2    ramifications of defendants' agreements and communications. DC further
objects to this Interrogatory to the extent that it seeks information protected by
3    the attorney-client privilege, the attorney work product doctrine, or any other
applicable privilege or immunity. DC also objects to the extent the
4    Interrogatory calls for information which is not available to DC. DC further
objects to the extent this Interrogatory seeks documents that defendants have
5    refused to produce in response to discovery served by DC, including but not
limited to the 2008 "consent agreement" defendants continue to refuse to
6    disclose.

7    DC objects to the definition of "YOUR" and will respond to that term as
limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
8    DC further objects to the use of the term "any" evidence on the ground that
such request is vague, overly broad, unduly burdensome, oppressive, and not
9    reasonably calculated to lead to the discovery of admissible evidence. DC
does not object to or withhold any information based on the definition of
10   "IDENTIFY," as this definition mirrors in large part language that DC
employed in its own discovery requests. Defendants previously objected to
11   this same language in DC's requests as impermissibly overbroad. Based on
defendants' tacit acknowledgement that DC's use of this term is proper, DC
12   will answer this discovery and has confirmed with defendants that they will do
the same.

13   Subject to and without waiving the foregoing objections, DC responds as
14   follows:

DC00001-7, DC00008-12, DCC00000557-3336, DCC00004510-4520,
15   DCC00007102-7159, DCC00007147-7159, SM No. 1, DCC00007183-7198,
DCC00007826-7837, DCC00045557-45591, DCC00045603-45613,
16   DCC00056945-56950, DCC00057538-57550, DCC0006849-6854,
DCC00089361-89365, DCC000141525, DCC00141359-141364,
17   DCC00141525, DCC00141565-141572, DCC00142156-142342, IPW00001-
00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-
18   6602, WB008050-8059, WB008305-8316, WB009991-10003, PPC00001-09,
IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.
19
Subject to and without waiving all foregoing objections, DC refers
20   defendants' attention to its complaint and attached exhibit (Docket No. 49,
Docket No. 49 Ex. A), all briefing in this action—including, but not limited to,
21   the briefing and exhibits filed in connection with defendants' Rule 12 and
SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to
22   33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to
78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to
23   98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107,
108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150,
24   151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186,
191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196,
25   196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308,
312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1
26   to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel
action (e.g., DCC00000001-154435 and WB000001-149488)—including, but
27   not limited to, all deposition testimony in those cases and here. All of these
sources are incorporated by reference herein.
28

30

JOINT STIP RE: DEF.'S MOT. TO COMPEL
INTERROGATORY RESPONSES

EXHIBIT 19
154

1

2

3

Given that discovery is ongoing in this case, and expert discovery has not
yet begun, DC expressly reserves its right to supplement these Responses as
more information becomes available, and to use in discovery and at trial any
information omitted from these Responses as a result of mistake, inadvertence,
or oversight.

4   Peary's complaints about DC's response to Interrogatory No. 14 fail for the

5   same reason his complaints about No. 10 do.  Also, as with No. 10, the issue here is

6   teed up in DC's summary judgment motion, Docket No. 458 at 18-20, which cites

7   and discusses the same evidence DC mentioned in its interrogatory response.

8   *Compare* Docket Nos. 458 at 18-20; 459-3 at 266-69, 291-94; 459-6 at 427-33

9   (citing, *e.g.*, 2001 PPC Agreement; 2003 PPC Agreement), *with supra* at ▢ (citing,

10  *e.g.*, 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement (PPC00001-4)).

11  **Interrogatory No. 15**
     IDENTIFY any evidence that supports YOUR contention that "[i]nduced

12  by Toberoff, the Shuster Heirs also falsely disclaimed any interest in the
     Superboy rights in the Shuster Termination Notice," found in paragraph 131 of

13  YOUR COMPLAINT.

14  **Response to Interrogatory No. 15**
     DC objects to the Interrogatory to the extent that it requires DC to prove

15  through the discovery process its ultimate legal arguments related to the
     ramifications of defendants' agreements and communications.  DC objects to

16  this Interrogatory to the extent that it seeks information protected by the
     attorney-client privilege, the attorney work product doctrine, or any other

17  applicable privilege or immunity.  DC further objects to the extent this
     Interrogatory seeks documents that defendants have refused to produce in

18  response to discovery served by DC, including but not limited to the 2008
     "consent agreement" defendants continue to refuse to disclose.

19  DC objects to the definition of "YOUR" and will respond to that term as
     limited to relevant representatives of DC and Warner Bros. Entertainment Inc.

20  DC objects to the use of the term "any" evidence on the ground that such
     request is vague, overly broad, unduly burdensome, oppressive, and not

21  reasonably calculated to lead to the discovery of admissible evidence.  DC
     does not object to or withhold any information based on the definition of

22  "IDENTIFY," as this definition mirrors in large part language that DC
     employed in its own discovery requests.  Defendants previously objected to

23  this same language in DC's requests as impermissibly overbroad.  Based on
     defendants' tacit acknowledgement that DC's use of this term is proper, DC

24  will answer this discovery and has confirmed with defendants that they will do
     the same.

25  Subject to and without waiving the foregoing objections, DC responds as
     follows:

26  DC00001-5, DC00008-12, DCC00000557-3336, DCC00004510-20,
     DCC00007102-7159, DCC00007147-7159, DCC00007183-7198,

27  DCC00007826-7837, DCC00045557-45591, DCC00045603-45613,

28

1    DCC00056945-56950, DCC00057538-57550, DCC00089361-89365,
DCC000141525, DCC00142156-142342, WB000670-3453, WB005709-5766,
2    WB006588-6602, WB008050-8053, WB008305-8316, WB009991-10003,
PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486,
3    SGL000003529-3237.

4        Subject to and without waiving all foregoing objections, DC refers
defendants' attention to its complaint and attached exhibit (Docket No. 49,
5    Docket No. 49 Ex. A), all briefing in this action—including, but not limited to,
the briefing and exhibits filed in connection with defendants' Rule 12 and
6    SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to
33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to
7    78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to
98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107,
8    108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150,
151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186,
9    191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196,
196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308,
10   312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1
to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel
11   action (e.g., DCC00000001-154435 and WB000001-149488)—including, but
not limited to, all deposition testimony in those cases and here.  All of these
12   sources are incorporated by reference herein.

13       Given that discovery is ongoing in this case, and expert discovery has not
yet begun, DC expressly reserves its right to supplement these Responses as
14   more information becomes available, and to use in discovery and at trial any
information omitted from these Responses as a result of mistake, inadvertence,
15   or oversight.

16       Peary's complaint here fails for the same reason as does his complaint about

17   Interrogatory No. 13.  DC's complaint, Rule 12 briefing, and interrogatory response

18   all identified specific documents and evidence that supports its claim that Toberoff

19   induced the Shusters to disclaim their interest in the Superboy rights.  Docket Nos.

20   49 at ¶¶ 86-91 & Ex. A; 334 at 17-21; *supra* at __ (citing, *e.g.*, Superboy Script

21   (DCC00007147-59); May 31, 1942, Superman strip (DCC00141525); Toberoff

22   Timeline (Q0001-07); 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement

23   (PPC00001-4)).  This includes comic books, comic book scripts, copyright renewal

24   notices Shuster and Siegel filed, the progression of the Pacific Pictures Agreements,

25   and Peary's deposition admissions.  *Id.*  The "Superboy fraud" will be a key area of

26   discovery as DC finally gets a chance to depose Toberoff and a 30(b)(6) witness for

27   Pacific Pictures.  Defendants' motion on this response is particularly premature.

28   *Kim*, 2009 WL 4021389, at *2-3.

1  **III.    DC'S CONCLUSION**

2          For many reasons—chief among them Peary's failure to meet and confer—

3  defendants' motion should be denied.  Because defendants "did not adequately

4  meet and confer in an attempt to obviate this dispute," they should have to pay

5  DC's reasonable fees and costs on this motion.  *Franklin v. Allstate Corp.*, 2008

6  WL 590508, at *1-2 (N.D. Cal. Feb. 29, 2008).

7  Dated:  July __, 2012                     Respectfully submitted,
                                            O'MELVENY & MYERS LLP
8
                                            By:_____
9
                                                   Daniel M. Petrocelli
10                                          Attorneys for Plaintiff DC Comics

11  OMM_US:70776828

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            JOINT STIP RE: DEF.'S MOT. TO COMPEL
                                            INTERROGATORY RESPONSES

EXHIBIT 19
157

# EXHIBIT 20

**Tokoro, Jason**

| | |
|---|---|
| **From:** | Pablo Arredondo <parredondo@ipwla.com> |
| **Sent:** | Saturday, July 21, 2012 5:07 PM |
| **To:** | Seto, Cassandra |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris' |
| **Subject:** | DC v. PPC |
| **Attachments:** | DC v PPC Joint Stip re Defendants MTC Interrogatory Responses 7.21.2012.doc |

Counsel:

Please find attached a combined joint stipulation re defendants' motion to compel interrogatory responses.  In an effort to reduce the burden on the Court, and to follow Magistrate Zarefsky's exhortation that the parties cooperate towards resolving issues without court intervention, defendants have withdrawn their motion to compel on Interrogatories No. 3 and 4.  Defendants' portion of the joint stipulation has been modified accordingly, with the changes in redline.

As the only substantive changes needed in DC's portion would be the excising of DC's responses regarding Rog Nos. 3 and 4 (and instances where Nos. 3 and 4 are referenced), defendants request that DC does this, send the combined redline back to us, and provide permission to sign/file, such that the joint stip can be filed by close of business on Monday, July 23, 2012.

Pablo


Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101


This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

1

EXHIBIT 20

1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Pablo D. Arredondo (State Bar No. 241142)
      *parredondo@ipwla.com*
3   TOBEROFF & ASSOCIATES, P.C.
    22337 Pacific Coast Highway, #348
4   Malibu, California, 90265
    Telephone:  (310) 246-3333
5   Fax:         (310) 246-3101

6   Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
7   Estate of Joseph Shuster, Jean Adele Peavy
    and Laura Siegel Larson

8

9               **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

11   DC COMICS,                          Case No: CV 10-03633 ODW (RZx)

12              Plaintiff,               Hon. Otis D. Wright II, U.S.D.J.
        vs.                              Hon. Ralph Zarefsky, U.S.M.J.

13   PACIFIC PICTURES CORPORATION;
14   IP WORLDWIDE, LLC; IPW, LLC;        **DISCOVERY MATTER**
     MARC TOBEROFF, an individual;
15   MARK WARREN PEARY, as personal      **JOINT STIPULATION
     representative of the ESTATE OF     REGARDING DEFENDANT'S
16   JOSEPH SHUSTER; JEAN ADELE          MOTION TO COMPEL
     PEAVY, an individual; JOANNE        INTERROGATORY
17   SIEGEL, an individual; LAURA        RESPONSES**
     SIEGEL LARSON, an individual,
18   and DOES 1-10, inclusive,           NOTICE OF MOTION AND
                                         MOTION, DECLARATION OF
19                                       PABLO D. ARREDONDO AND
                                         [PROPOSED] ORDER FILED
20              Defendants.              CONCURRENTLY HEREWITH

21                                       **Judge**: Hon. Otis D. Wright II
                                         **Magistrate**: Hon. Ralph Zarefsky
22
                                         **Complaint filed**: May 14, 2010
23                                       **Trial Date**:    None Set
                                         **Hearing Date**:  August 13, 2012
24                                       **Hearing Time**:  10:00 a.m.
                                         **Courtroom**:     540
25

26

27

28

     JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL INTERROGATORY
                                    RESPONSES

EXHIBIT 20
159

1    Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Central

2  District Court Local Rule 37-2, the parties respectfully submit the following Joint

3  Stipulation Regarding Defendant's Motion for Interrogatory Responses.  Pursuant to

4  Central District Local Rule 37-1, the parties have attempted unsuccessfully to resolve

5  their disputes and therefore respectfully seek the assistance of the Court.

6

7    Dated:      July ___, 2012           Respectfully Submitted,

8                                         TOBEROFF & ASSOCIATES

9                                         By:   /s/ Marc Toberoff

10                                        Marc Toberoff
                                          Attorneys for Defendants Laura Siegel
11                                        Larson, Mark Warren Peary, and Jean
12                                        Adele Peavy

13

14

15

16    Dated:      July ___, 2012           Respectfully Submitted,

17                                        O'MELVENY & MEYERS, LLP

18                                        By: _____

19                                        Daniel M. Petrocelli
20                                        Attorneys for Plaintiff DC Comics

21

22

23

24

25

26

27

28

1
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
160

## I.    DEFENDANTS' INTRODUCTION

The sole purpose of a discovery request – whether it takes the form of a request for production or an interrogatory – is to provide the parties with answers that will enable them to assess their cases and prepare, if need be, for trial.  *See United States ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.") (citations and quotations omitted).  To obtain this sort of necessary information, Mark Warren Peary ("Peary") served his First Set of Interrogatories to Plaintiff DC ("Interrogatories") on December 17, 2011.  In these Interrogatories, Peary requested DC to provide answers to 15 specific questions.  All of the Interrogatories were targeted at the core issues in this case, with many, if not most, leveled at specific allegations in DC's Complaint.

About two months later, on February 17, 2011, DC responded to Peary's Interrogatories with its Objections and Responses to Defendant Mark Warren Peary's First Set of Interrogatories ("Responses").  Although DC claimed to "use reasonable diligence and reasonable judgment" in drafting these Responses, 10 out of 15 of its answers were designed to evade conveying any meaningful discovery to Peary.  These Responses provide vague and decontextualized answers to Peary's interrogatories.  They fail to provide any specificity, citing instead to the entirety of the record in not just this case, but the related *Siegel* cases as well.  They misdirect Peary to irrelevant and/or non-responsive materials.  And they do so all in a non-committal and obtuse manner, refusing to state with any sort of clarity whether DC had fully answered the questions or is still withholding information based upon its boilerplate objections.  Effectively, the Responses fail to answer Peary's questions.

On March 8, 2012, Peary's counsel sent a letter to DC and objected to its Responses, noting their multiple shortcomings.  *See* Declaration of Pablo D. Arredondo Decl. ("Arredondo Decl."), Ex. A.  On March 16, 2012, the parties met

1  and conferred about these objections, but DC refused to amend or otherwise

2  supplement its evasive Responses.  *Id.,* Ex. B, ¶4.  To date, DC has refused to

3  meaningfully answer Peary's Interrogatories.

4        Peary now respectfully asks this Court to compel DC to abide by its discovery

5  obligations and provide direct, specific responses to Interrogatories Nos. 1-5 and 9-

6  15.

7  **II.    DC's INTRODUCTION**

8        Peary's motion to compel further interrogatory responses from DC should be

9  denied for three reasons:  (1) he failed to meet and confer on the motion as required

10  by the Local Rules and this Court's rulings in this case; (2) DC's responses were

11  fully proper; and (3) Peary has obtained (or will obtain) the additional information

12  he claims he needs in the form of amended interrogatory responses from DC (served

13  before this motion was filed), DC's motion for partial summary judgment (served

14  before this motion was filed), and Paul Levitz's FED. R. CIV. P. 30(b)(6) deposition

15  (which will take place three days after this motion is filed).  Peary's motion is

16  procedurally and substantively without basis, and, at best, premature.

17       *1.  The Failure to Meet and Confer.*  Peary (like all of the defendants) waited

18  19 months—until December 2011—to serve any discovery.  The interrogatories he

19  served, and on which he moves, relate to DC's First Claim and one of the grounds

20  for relief stated therein—*i.e.*, that a 1992 agreement DC made with Peary's mother

21  (Jean Peavy) and uncle (Frank Shuster) bars the copyright termination notice Peary

22  filed in 2003.  DC's complaint, filed in May 2010, identifies that 1992 contract

23  (signed by Levitz on behalf of DC), as well as correspondence between Frank, Jean,

24  and Levitz, as proof that Peary's copyright termination claim is barred.  DC

25  identified Levitz as a material witness in disclosures in 2010, and its interrogatory

26  responses (on which Peary does not move) make plain Levitz's importance.

27  DC started the meet-and-confer process on the first five of interrogatory responses in

28  March 2012 with Keith Adams—former counsel for Peary (now resigned).

(Defendants' meet-and-confer letter did not address by number seven of the twelve interrogatory responses (Nos. 9-15) on which it now moves.)  DC told Mr. Adams in writing and in a call that followed that it was willing to amend its answers to Nos. 1-5, if Peary narrowed those requests to conform with the rules and not to target decades of irrelevant communications that have nothing to do with this case.  DC reminded Mr. Adams that defendants had successfully objected to DC's discovery requests that used similarly broad locution—and said defendants needed to make a choice:  either to commit to answer DC's discovery as formerly framed, or to narrow Peary's requests as DC had been forced to do.  Neither Mr. Adams nor other defense counsel responded to DC's offer, even though DC told defendants and the Court in January 2012—*six months ago*—that it would be moving for partial summary judgment on its First Claim.  Docket Nos. 364 at 8.

DC notified defendants on June 21, 2012, that it would be filing its summary judgment motion imminently.  Defendants said nothing about DC's need to amend the interrogatory answers on which Peary now moves, but rather, a week later, on June 28, 2012, noticed Paul Levitz's deposition, now set for July 26.  Defendants also served subpoenas on two other DC-related witnesses and explored whether their depositions were necessary.  Over the next two weeks, defendants had numerous discussions with DC about scheduling DC's summary judgment motion and the depositions and document requests above.  *Never once* during any of these discussions did defendants ever say they planned to move to compel on DC's interrogatory responses Nos. 1-5, 9-15, or otherwise.  Rather, after defendants declined the briefing schedule DC proposed on its summary judgment motion—and hours after DC declined defendants' counter-offer—Peary filed his present motion.

DC asked Peary to withdraw the motion, citing defendants' failure, since March 2012, to complete their meet-and-confer obligations.  Defendants sent a strident response, claiming Mr. Toberoff had perfected the meet-and-confer record in a June 12 email.  That email (as defendants' concede) made *no reference to DC's*

4
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
163

1   *interrogatory responses*.  Nevertheless, defendants refused to meet and confer on

2   this motion and demanded that DC either agree to the relief sought or oppose it.

3   That take-it-or-leave-it choice does not meet the dictates of Rule 37.  This Court—at

4   defendants' urging—has applied Rule 37 to deny DC's motions to compel based on

5   a failure to meet and confer fully.  That same rule should apply to defendants, and

6   defendants' motion should be denied on this ground.

7       *2.  DC's Responses Were Fully Adequate.*  Peary's overbroad interrogatories

8   seek information concerning "all COMMUNICATIONS"—covering decades-long

9   relationships—as well as "any" and "all" evidence supporting DC's claims.  The

10  case law holds that both these types of requests are overbroad, as DC's objections

11  and Rule 37 letter made plain.  When DC wrote and spoke to Mr. Adams in March,

12  it told him that DC was willing to amend its responses if Peary focused his requests.

13  Peary never did so, and DC's responses—which identify scores of documents,

14  communications, sources of testimony, and other evidence—all did their level best

15  to respond to Peary's overly capacious requests.  Again, this Court, at defendants'

16  urging, has limited defendants' obligation to respond to broad discovery requests.

17  That rule should apply to Peary with equal force, and his motion should be denied.

18      *3.  Peary's Motion Is Both Moot And Not Ripe.*  Peary says he wants to know

19  on what evidence DC will rely to claim it owns the Superman rights to which Peary

20  lays a claim.  That evidence was cited in DC's complaint and initial disclosures and

21  provided in DC's document and interrogatory responses, which identified scores of

22  communications on the subject between DC and the Shuster family.  That evidence

23  was briefed, cited, and summarized in DC's summary judgment papers filed last

24  week.  Defendants will have a full chance to depose Levitz about this evidence and

25  related issues in a few days.  As DC invited him to do, Peary should have withdrawn

26  his motion and withheld serving it until, at least, after Levitz testified.

27  As for Peary's few interrogatory requests that relate to DC's unclean-hands claim,

28  that claim, as defendants' know, is not ripe for summary adjudication, as document

EXHIBIT 20
164

1  and deposition discovery into the claim is still ongoing and will be for months.  The

2  case law, moreover, makes clear that defendants have no right to demand "all facts"

3  in support of that claim.  *If ever*, such contention interrogatories may only be asked

4  after all discovery is complete.  Finally, defendants' March 2012 Rule 37 letter never

5  mentions these interrogatories by number—meaning, under this Court's prior

6  rulings, Peary cannot move to compel on them.  Docket No. 262 at 6.

7  **III.  THE PARTIES' RESPECTIVE STATEMENTS OF ISSUES AS TO**

8      **EACH INTERROGATORY**

9      ~~A.    Defendants' Position On Interrogatories Nos. 1-4~~

10     DC's Responses to 10~~2~~ out of 15 of Peary's Interrogatories are wholly

11  inadequate, designed to evade conveying any meaningful answers or information.

12     **A.         Defendants' Position On Interrogatories Nos. 1-2**

13         **1.    Interrogatories Nos. 1-2**

14     Peary's Interrogatories No. 1 and 2 requested DC to identify communications

15  it had previously had with various relevant parties:

16     **Interrogatory No. 1**

17     IDENTIFY all COMMUNICATIONS between YOU AND Mark Warren
18     Peary.

19     **Interrogatory No. 2**
      IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele Peavy.

20

21     In answering these Interrogatories, DC recycles various boiler plate objections,

22  cites to various materials from this and the related *Siegel* cases, and then vaguely

23  adds at the end of each of its responses the following sentence: "Representatives from

24  DC, including Paul Levitz, had non-written communications with Mr. Peary [or Jean

25  Adele Peavy, Frank Shuster, Joseph Shuster, as applicable] over the years as well."

26

27

28

EXHIBIT 20
165

1  Below, is a verbatim copy of DC's response to Interrogatory No. 1, which is

2  representative of its other responses to Interrogatories Nos. 2-4:[1]

3      DC objects to this Interrogatory on the grounds that it is indefinite
4  as to time and not reasonably limited in scope and would include, for
   example, discussions with Mr. Peary at mediation sessions. DC objects
5  to the extent the Interrogatory calls for irrelevant information and calls
6  for a search for documents that is unduly expensive, overbroad, unduly
   burdensome, and oppressive. DC further objects to the extent the
7  Interrogatory seeks communications that defendants have refused to
8  produce in response to discovery served by DC, including but not
   limited to screenplays Mr. Peary sent to DC in 1997 and 2006.
9      DC objects to the definition of "YOU" as vague and overbroad
10 and will respond to this term as limited to the relevant representatives at
   DC and Warner "COMMUNICATION" as overbroad to the extent it
11 includes documents filed in connection with prior or ongoing litigation.
12 DC objects to the extent the Request "all COMMUNICATIONS" on the
   ground that such request is overly broad, unduly burdensome,
13 oppressive, and not reasonably calculated to lead to the discovery of
14 admissible evidence. As used in these Responses, the phrase "all
   COMMUNICATIONS," or phrases of similar import, should be
15 understood to mean those communications DC and its counsel were able
16 to locate using reasonable diligence and reasonable judgment concerning
   the whereabouts of such communications. DC does not object to or
17 withhold any information based on the definition of "IDENTIFY," as
18 this definition mirrors in large part language that DC employed in its
   own discovery requests. Defendants previously objected to this same
19 language in DC's requests as impermissibly overbroad. Based on
20 defendants' tacit acknowledgement that DC's use of this term is proper,
   DC will answer this discovery and has confirmed with defendants that
21 they will do the same.
22      Subject to and without waiving the foregoing objections, DC has
   exercised reasonable diligence in identifying responsive information and
23 documents, and hereby responds as follows:
24      DC00145-151, DCC00004186-87, DCC00004191,
   DCC00006855, DCC00006872-6879, DCC00057431-57447,
25 DCC00089366-89372, WB008506-8507. **Representatives from**
26 **Warner Bros. Entertainment Inc. and DC, including Paul Levitz,**

27 _____

28 [1] Due to the length of DC's Responses, quoting each individual Response in full is
   not practicable and would render this motion more difficult to read. The complete
   Responses are therefore attached for the Court's convenience as Exhibit C to the
   concurrently filed declaration of Pablo D. Arredondo.

7

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
166

1  **had non-written communications with Mr. Peary over the years as
Bros. Entertainment Inc.**

2

3  (emphasis added).[2]

4  These blithe references to "communications . . . over the years" are entirely

5  deficient.  The Interrogatories clearly defined "IDENTIFY," when used in reference

6  to communications, to reasonably require DC, to the extent known, to specify the

7  communication's "(i) date; (ii) type (*e.g.,* oral, telephonic, e-mail); (iii) subject

8  matter; (iv) every author, recipient and addressee."

9  DC's response makes no effort whatsoever to provide this information, failing

10  to specify when or how these communications took place, who were involved in

11  these communications, or what they were about.  DC should not be allowed to

12  casually dodge its discovery obligations as to oral communications with such vague

13  and uninformative answers.  *See Nickerman v. Remco Hydraulics, Inc.*, 2007 WL

14  3407437 at *3 (N.D. Cal. Nov. 13, 2007) (responses deficient where they lacked

15  "basic specific details" such as dates).

16  Respectfully, this Court should compel DC to respond with answers that, at the

17  very least, convey specific and meaningful information as to DC and Warner Bros.'

18  oral communications with Mark Warren Peary and, Jean Adele Peavy Frank Shuster

19  and DC and  Warner Bros.' oral communications with Joseph Shuster regarding DC's

20  rights in and to Superman.

21

22

23  **C.B.    DC's Position On Interrogatories Nos. 1-4**

24  **1.    The Relevant Factual Background Peary Omits**

25  *a.  DC's First Claim.*  DC filed this action in May 2010.  DC's First Claim

26  seeks a declaration that the "Shuster Termination Notice [is] invalid," on five

27

28  _____

[2] *See* Arredondo Decl., Ex. C at 3-8, for DC's similar response to Interrogatory Nos.
2-4.

8

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
167

Formatted: Space Before: 6 pt, After: 6 pt

Formatted: Indent: Left:  0.5", Hanging:  0.5", Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at:  0.55" + Indent at:  0.8"

independent grounds,  Docket No. 49 ¶¶ 106-34—three of which are relevant to this

motion, one centrally so.  As set forth in DC's complaint and summary judgment

motion filed last week, Docket No. 458, the first reason the Notice is invalid is

because a 1992 Agreement between DC and Jean and Frank Shuster rescinded all of

Joe Shuster's prior copyright grants and re-granted to DC any copyright interests that

Joe or his heirs may have held, including in Superman.  *Id*. at 10-18.  The 1992

agreement eliminated any pre-1978 copyright grant that might otherwise be subject to

termination and, thus, operates to bar Peary's Notice.  *Id*. (discussing and citing, *e.g.*,

17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036,

1042-45 (9th Cir. 2005) (holding same on similar contract); *Penguin Grp. (USA) Inc.

v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008) (same)).

A second ground for DC's First Claim is that, in 2001 and 2003, Jean, Peary,

and the Estate of Joseph Shuster "assign[ed]" any "copyright termination interest in

'SUPERMAN'" they possessed to a joint venture with defendant Pacific Pictures

Corporation, Toberoff's production company.  Thus, when the Estate served its

Notice a few weeks later in late 2003, none of Jean, Peary, or the Shuster Estate

owned the greater-than-50% share of the termination right required to terminate.  *See*

Docket No. 458 at 18-20 (citing and discussing, *e.g.*, 17 U.S.C. §§ 304(d), 304(c)(1);

37 C.F.R. §§ 201.10(b)(1)(vii), (c)(2); *Steinbeck*, 537 F.3d at 202).  DC also moved

for summary judgment on its First Claim on this ground last week.

A third ground for DC's First Claim is that the doctrine of unclean hands bars

the Notice.  Docket No. 49 at ¶¶ 129-33; Docket No. 186 at 17-20.  Among other acts

of unclean hands, any mention of the character Superboy is conspicuously missing

from the Shuster termination Notice.  Jerry Siegel and Joe Shuster both claimed

repeatedly that Joe Shuster helped create Superboy, and Jean and Peary each

acknowledged Joe's role in doing so when they identified Superboy as one of his

works, when they transferred rights in Superboy to the Pacific Pictures venture in

2001.  *Id.*  In a scheme to enable Toberoff to assert a copyright infringement claim on

1  behalf of the Siegels, however, Toberoff, Jean, and Peary agreed falsely to have the

2  Shusters disclaim any interest in Superboy in both the 2003 Pacific Pictures

3  agreement, and the Shuster Estate's 2003 copyright termination notice.  *Id.*  These

4  manipulations and misrepresentations of historical fact were a fraud on the Copyright

5  Office, DC, and the courts.  *Id.*  As DC pointed out in its Rule 12 opposition

6  briefing—on the motions that defendants withdrew in December 2011—more

7  discovery, including deposing Toberoff himself about the Superboy fraud, is needed

8  before this claim can be fully adjudicated.  *E.g.*, Docket No. 186 at 5, 19-20.

9         *b.  DC's Initial Discovery Disclosures.*  DC's complaint cited and collected

10  evidence in support of its claims above.  Docket No. 49 ¶¶ 1-12, 28-65, 86-101, 105-

11  34 (citing and quoting, *e.g.*, relevant contracts, correspondence, copyright office

12  filings in support of each claim).  DC's Rule 26 disclosures, filed in September 2010,

13  identified witnesses in support of its claims, including Paul Levitz, the DC

14  representative who negotiated and interacted with the Shusters in 1992 and years

15  subsequent.  Decl. of Cassandra Seto ("Seto Decl.") Ex. 1 at 9.  Despite these

16  disclosures, defendants took no discovery in the case—either into DC's claims, or of

17  witnesses like Levitz—for over 19 months.  *Id.* ¶ 3.

18         *c.  DC's Pushes to Have Its First Claim Resolved.*  In November 2011—after

19  the district court denied defendants' SLAPP motion, and defendants withdrew their

20  fully briefed Rule 12 motions, Docket Nos. 337-43—DC told defendants it wished to

21  adjudicate without delay its First and Third Claims, Seto Decl. ¶ 4, Exs. 2-3.  DC

22  asked defendants to stipulate to a bifurcated bench trial on both claims, *id.*, and

23  informed defendants  and the Court in a January 2012 joint status report that, if a

24  bifurcated trial could not be had, DC intended to move for partial summary judgment

25  on its First Claim—on the "1992 Agreement" and "Majority Interest" grounds noted

26  above.  Docket No. 364 at 8-9; *supra* at ▓▓.

27         Despite the courts making clear that full discovery could proceed in this case

28  despite defendants' pending SLAPP motion, Docket No. 95 at 55:18-60:10; 117;

283-11, defendants made the tactical choice not to initiate any discovery until December 2011.[3]  In mid-December 2011, defendants finally served interrogatories and document requests on DC, all which DC fully answered, and the latter of which defendants have never moved to compel on.  *Id.* ¶ 5.

    *d.  Peary's Interrogatories No. 1-4.*  Peary's 15 interrogatories—12 of which he now moves on—targeted aspects of DC's First Claim.  Numbers 1-4 asked DC to identify "all COMMUNICATIONS" it had with Peary, Jean Peavy, or Frank Shuster—*with no date or subject-matter limitation*—as well as "all" of DC's "COMMUNICATIONS" with Joe Shuster regarding DC's "rights in AND to Superman"—*with no date limitation.  Supra* at __.  DC responded and objected to these interrogatories in February 2012.  (DC's responses are set forth in part above, *supra* at __, as well as in the Arredondo Declaration, Exhibit C at 11-36.)  Each of DC's four responses identified scores of specific "COMMUNICATIONS" that are responsive; noted that defendants possessed other communications they refused to produce; and noted there were oral communications the people at DC, including Levitz, had with the Shusters over many decades, about which DC could provide defendants more detail if they focused their requests.  *E.g.*, *supra* at __.

        Defendants did not depose Levitz about his communications.  Rather, they wrote DC several weeks later requesting a Rule 37 conference to discuss DC's responses to Interrogatory Nos. 1-4, as well as other discovery issues.  Arredondo Ex. A at 2-3.  As to Nos. 1-4, defendants complained that DC had failed to identify and describe all its oral communications with the Shusters.  *Id.*  DC responded a week later—setting forth two principal concerns with defendants' position (noted by the bracketed numbers below), and expressing a willingness to resolve the issue:

> Interrogatory Nos. 1-4.  Defendants claim they are entitled to details (*i.e.*, approximate dates, subject matter, or the persons involved) concerning non-written communications between DC and Mark Warren

---

[3] In December 2010, defendants had argued that a District Court order could be read to bar them from taking discovery, but DC told defendants and the Ninth Circuit that it did not take that position.  Docket No. 162-17.

EXHIBIT 20
170

Peary, Jean Adele Peavy, Frank Shuster, and Joseph Shuster.
**[1]** *Defendants successfully resisted providing exactly this type of information in response to DC's interrogatories concerning the Toberoff Timeline.* Docket Nos. 211, 262. Most recently, defendants refused to provide these types of details in response to DC's interrogatories to Toberoff, as set forth in our March 6, 2012, letter. *Defendants cannot have it both ways.*

**[2]** *The relationship between DC and the Shusters, moreover, has spanned more than 70 years, and DC cannot be expected to provide details for every conversation that ever occurred between them, including conversations over seven decades old.* DC objected to the scope of Interrogatory Nos. 1-4 as the requests are indefinite as to time and *defendants have proposed no narrowing or specific theories of relevance as to given time periods or communications. Once you do so, we will consider amending our responses or other compromises to provide you reasonable discovery that defendants may seek.*

Any such agreement must be made against the backdrop of defendants' discovery responses. For example, the period covered by the U.S. Attorney's Office's investigation into the Toberoff Timeline covered a brief four-month period, yet defendants refused to provide the level of detail they now demand. If defendants agree to provide the same level of detail in their own interrogatory responses that they are now requesting from DC, DC is willing to meet and confer to come to a reasonable compromise. Arredondo Decl. Ex. B at 6 (emphasis added).

The next day, DC met and conferred with Keith Adams—an associate who now no longer works at Mr. Toberoff's firm—and Pablo Arredondo. Seto Decl. ¶ 7. During the call, and as it did in its letter, DC offered to amend or supplement its responses to provide further details if (a) Peary narrowed his interrogatories and identified his theories of relevance for specific requests; and (b) defendants agreed to provide the same level of specificity in their discovery responses. *Id.* Mr. Adams said he needed to confer with Mr. Toberoff, and that defendants would consider DC's proposal and respond. *Id.* Mr. Adams never called or wrote DC again on this issue, and the issue of DC's interrogatory responses lay dormant for *four months*, until July 13, when Peary filed this motion. *Id.* ¶ 8.

*e. DC's Summary Judgment Motion.* On June 21, DC wrote to defendants to request a final conference on its partial summary judgment. *Id.* Ex. 4. In the letter and in a meet-and-confer six days later, DC told defendants it would be moving on its

12
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
171

First Claim on the grounds identified in DC's January 2012 joint-status report, including the "1992 Agreement" and "Majority Interest" issues.  *Id.* & *id.* ¶ 11.

Neither in response to the letter or on the call did defendants raise *any issue* or concern about DC's responses to Interrogatories No. 1-4.  Instead, on June 28 —*two years* after DC identified Levitz as having information regarding the 1992 Agreement—defendants served notices of deposition for Levitz and a Rule 30(b)(6) witness on the 1992 Agreement.  *Id.* Exs. 5, 6.  DC told defendants that Levitz would serve as its 30(b)(6) witness, and that he was available to be deposed July 26.  *Id.* Ex. 7 & *id.* ¶ 14.  Defendants also subpoenaed two DC-related lawyers, Martin Payson and Lillian Laserson, for depositions and documents.  *Id.* Exs. 8-11.

Over the next several weeks, DC and defendants had numerous discussions about DC's summary judgment motion, its scheduling, and discovery defendants believed they needed to oppose it, including the four depositions noted above.  *Id.* ¶ 16; Ex. 17.  *Not once in these many discussions* about whether Payson and Laserson were even appropriate witnesses, by what date Levitz had to be deposed, or on issues such as what discovery DC needed to oppose defendants' threatened cross-motion, did defendants ever raise the issue of DC's interrogatory responses.  *Id.* ¶ 17. Instead, the parties agreed on a deposition date for Levitz, and defendants stopped pressing for deposition dates for Payson and Laserson.  *Id.*  DC also proposed a briefing schedule on the parties' cross-motions for summary judgment, to which defendants objected.  *Id.* Ex. 17 at 77.  Days later, on July 13, defendants finally proposed a briefing schedule of their own.  Because that schedule prejudiced DC, DC declined to accept it, and instead said both parties should simply follow the rules that govern the normal schedule on such motions.  *Id.* Exs. 12, 17 at 77.

*f.  Peavy's Present Motion.*  Hours after DC declined to accept defendants' scheduling proposal, defendants served DC with the present motion.  *Compare id.* Ex. 12, *with id.* Ex. 13.  On July 15, DC asked defendants to withdraw the motion because they had not finished the meet-and-confer on it in March; they had made no

1   mention of DC's interrogatory responses for months; and DC remained willing to

2   discuss amending its responses. *Id*. Ex. 14. (The same day DC also filed its motion

3   for partial summary judgment. Docket No. 458.) Defendants refused, arguing

4   Toberoff had raised the issue of DC's interrogatory responses in a June 12 email, and

5   stating that defendants would not meet-and-confer, and instead DC must either

6   oppose the motion or amend its responses in accord with the relief it sought. *Id*. Ex.

7   15 at 65. DC pointed out in response that Toberoff's June 12 email made no

8   reference—*none*—to DC's interrogatory responses, *id*. Exs. 15 at 64-65, 16 at 67,

9   and DC declined defendants' offer to capitulate to relief sought in Peary's motion

10  because the motion did nothing to fix or narrow Peary's facially deficient

11  interrogatories.[4]

12       DC also last week amended its interrogatory responses to omit information

13  Peary complained about in response to Interrogatory No. 11; to reference two new

14  documents it produced weeks ago and that were responsive; and to reference both its

15  summary judgment filing and Levitz's declaration in support of it. *Id*. Ex. 18.

16  During the meet-and-confer on DC's summary judgment motion, the parties

17  discussed these two documents, as well as the fact that Levitz, but not Payson or

18  Laserson, would file such a declaration on DC's behalf. *Id*. ¶ 16.

19               ~~1~~   **2.**    **Peary's Motion on Interrogatories 1-4 Should Be**
                                  **Denied.**

20       Peary's motion should be denied because (a) he failed to meet and confer on it;

21  (b) DC's interrogatory responses were proper; and (c) Peary obtained (or will obtain)

22  the additional information he says he needs in DC's amended interrogatory

23  responses, DC's motion for partial summary judgment, and Levitz's deposition.

Formatted: Indent:
Left: 1", No bullets or
numbering

---

24

25       [4] Faced with the fact the June 12 email said nothing about DC's interrogatory answers,
    defendants pointed to a July 11 letter that they said perfected the meet-and-confer record.

26  *Id*. at 63. Not so. While the July 11 letter complains about DC's discovery responses, it
    says nothing about the parties' March 2012 meet-and-confer; DC's offer then to work with

27  defendants on amending the responses; or Peary's intent to bring a motion two days later.
    *Id*. at 63. Defendants notably did *not* include the July 11 letter as an exhibit to this

28  motion—that is because it does *not* evidence a proper meet-and-confer.

14
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
173

*a. The Failure To Meet and Confer.*   At defendants' urging, and based on a failure to meet and confer fully, this Court has denied DC's motions to compel the production of further interrogatory answers and documents from defendants.  *E.g.*, Docket No. 262 at 5-6.  Defendants violated those same rules here and worse.  They moved without warning on interrogatory requests that DC—*some four months prior*—offered to amend or supplement if defendants would only focus them and discuss them further.  *Cf. supra* at __-__; C.D. Cal. L.R. 37-1; *Sequoia Prop. v. U.S.*, 203 F.R.D. 447, 451-52 (E.D. Cal. 2001) (denying motion to compel for failure to meet and confer).[5]  That offer remains open, but defendants apparently want to go on offense and be the movant in discovery disputes, even where such disputes do not rightly exist.  This is reason alone to deny defendants' motion.

*b. DC's Answers and Objections Were Proper.*   The rules require that motions to compel further interrogatory answers "contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions as to that particular interrogatory, separately stated."  C.D. CAL. L.R. 37-2.1; *see April v. U.S. Airways, Inc.*, 2010 WL 2889931, at *1 (D. Ariz. 2010) (denying motion that failed to follow rule); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) (same).  Peary's grouping of interrogatories conflates certain important distinctions among the interrogatories, and also does not include DC's full answers.  *Cf. id.*  DC addresses each interrogatory and answer on its own, and where Peary omitted the relevant Q&A in its motion, DC includes it.  As shown below, DC's responses were proper:

<u>i.  DC's Position On Interrogatory No. 1.</u>

Mark Peary, who is Joe Shuster's nephew and interacted with DC over three decades, does not challenge the part of DC's response that points him to relevant,

---

[5] *Accord Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 173 (D. Nev. 1996); *Williams v. Kernan*, 2010 WL 731860, at *2 (N.D. Cal. Mar. 1, 2010); *Kyte v. Progressive Nw. Ins. Co.*, 2004 WL 491886, at *2 (D. Alaska Mar. 9, 2004); *infra* at __.

15
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
174

1    written communications between DC and his family: DC00145-151, DCC00004186-

2    87, DCC00004191, DCC00006855, DCC00006872-6879, DCC00057431-57447,

3    DCC00089366-89372, WB008506-8507.  Rather, Peary complains that DC's

4    response that its "[r]epresentatives …, including Paul Levitz, had non-written

5    communications with Mr. Peary over the years" is deficient because it does not

6    identify and describe each and every communication DC ever had with Peary—

7    including its "date," "type," and "subject matter."  *Supra* at ___.

8        Peary's complaint ignores DC's objections to the interrogatory as overbroad; it

9    also ignores the unfair burden, recognized by law, that is imposed by responding to

10   such requests.  Interrogatory No. 1 seeks "all COMMUNICATIONS" between DC

11   and Peary, *and is not limited in any way as to time or subject matter.*  It, thus, seeks

12   volumes of irrelevant information, such as what Levitz may have discussed with

13   Peary at a movie premiere or pleasantries DC or its counsel may have shared with

14   Peary at his deposition or a mediation session.

15       Such requests are improper.  *E.g., Trevino v. ACB Am., Inc.*, 232 F.R.D. 612,

16   618 (N.D. Cal. 2006) (interrogatory requesting "all communications" between two

17   co-defendant corporations are "overly broad"); *Benham v. Rice*, 238 F.R.D. 15, 26

18   (D.D.C. 2006) (sustaining overbroad objection to interrogatory requesting "all

19   communications relating to the complaint"); *In re Herald, Primeo and Thema Funds

20   Secs. Litig.*, 2011 WL 4056819, at *3 (S.D.N.Y. Sept. 8, 2011) (finding

21   interrogatories requesting all communications between defendants to be "vastly

22   overbroad" where the issue was establishing in personam jurisdiction and the

23   requests were not limited to parties located in the relevant state); *Motorola, Inc. v.

24   Lemko Corp.*, 2010 WL 4781844, at *2 (N.D. Ill. Nov. 17, 2010) (interrogatory

25   seeking all communications between plaintiff and third party concerning the trade

26   secrets at issue in the case was "vastly overbroad"); *Chen v. Hewlett-Packard Co.*,

27   2005 WL 1388016, at *1 (E.D. Pa. June 8, 2005) (interrogatory requesting "all

28   communications . . . related to power supply problems" was "hopelessly over-

1   broad"); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1995 WL 526533, at *4 (D.

2   Kan. 1995) (interrogatory requesting all communications with persons from whom

3   responding party received advice on a certain topic was overly broad on its face); *S.T.*

4   *Hudson Int'l, Inc. v. Glennon*, 1988 WL 115808, at *1 (E.D. Pa. Oct. 28, 1988)

5   (interrogatory seeking all communications with an individual was "overly broad").

6        Had Peary narrowed his request in March—as DC invited him to do—and

7   sought communications concerning specific subjects in which defendants were

8   interested—say Superboy—DC could have done the required diligence on such

9   questions and formulated and provided tailored responses months ago.  Defendants

10   chose not to go this course, likely because they did not want to be bound to provide

11   DC similarly detailed responses, as DC insisted.  *Supra* at __.  In any event, starting

12   two years ago, defendants could have deposed Levitz about all conversations that he

13   had with Peary that Levitz could remember.  *Cf.* Docket No. 262 at 6 (deposition can

14   be used to obtain specifics not included in interrogatory responses).  Defendants

15   chose never to take that deposition, but can and will depose Levitz next week.  Levitz

16   is the main person with whom Peary dealt at DC, as Peary well knows.  Why

17   defendants made the tactical choice not to depose Levitz for two years, or not to

18   accept DC's offer to supplement its interrogatory responses in March, they only

19   know.  What is plain, however, is that their motion must be denied.

20             <u>ii.  DC's Position On Interrogatory No. 2.</u>

21   **Interrogatory No. 2**

22       IDENTIFY all COMMUNICATIONS between YOU AND Jean Adele
Peavy.

23   **Response to Interrogatory No. 2**
      DC objects to this Interrogatory on the grounds that it is indefinite as to time

24   and not reasonably limited in scope, and to the extent that it seeks the production
of any item, or portion thereof, which is not reasonably calculated to lead to the

25   discovery of relevant and admissible evidence.
      DC objects to the definition of "YOU" as vague and overbroad and will

26   respond to this term as limited to the relevant representatives of DC and Warner
Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION"

27   as overbroad to the extent it encompasses the transmission of information orally,
by telephone, or through gesture.  DC also objects to the definition of

28   "COMMUNICATION" as overbroad to the extent it includes documents filed in
connection with prior or ongoing litigation.  DC objects to the extent the Request

17
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
176

"all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00014-15, DCC00004186-DCC00004187, DCC00004191, DCC00006182-6184, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6207, DCC00006214-15, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6439, DCC00006441, DCC00006477-6492, DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630, DCC00006778, DCC00006869, DCC00008506-8507, DCC0057431-57447, DCC00057854, DCC00073008, DCC00073010, WB007959-7961, WB0010161-10162, WB010169-10170. Representatives from Warner Bros. Entertainment Inc. and DC, including Paul Levitz, had non-written communications with Ms. Peavy over the years as well.

Again, Peary does not complain about the scores of written communications DC disclosed concerning his mother's communications with DC, but rather that DC did not list every oral communication it ever had with her. This complaint fails to mention that Jean's body of possible communications with DC *dates back decades further* than her son's, and, thus, it is even more objectionable to ask DC to verify that it has listed "all COMMUNICATIONS" with her—without any limitation as to time or subject matter. *E.g.*, *Benham*, 238 F.R.D. at 26; *supra* at ☐.

Defendants have had in their possession for years almost 60 pieces of correspondence between Peavy and DC from just the 1992-2001 time-period. Docket Nos. 460-1 at 8-24, 33-34, 36, 39-44, 46-69, 71, 74, 77-81; 460-2 at 218-39, 242-52. Some of these letters mention oral discussions DC had with Jean, *e.g.*, Docket No. 460-1 at 33 ("Sorry we had to miss seeing you when Frank [and] I went in the [DC] office Oct. 2nd to sign the papers."); 460-1 at 28-29, and DC's interrogatory responses openly disclose that Levitz negotiated the 1992 Agreement with Jean and Frank, Arredondo Decl. Ex. C at 18-19.

18

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

Formatted: Space Before: 6 pt

EXHIBIT 20
177

If defendants had an interest in these conversations and negotiations, they could have drafted narrowed interrogatories that targeted them; asked DC to address those conversations as part of the meet-and-confer process in March (and as part of DC's supplemental responses); and/or deposed Levitz on each referenced conversation any time during the past two years. *Defendants did none of this*, and instead made the tactical choice not to take any discovery for 19 months; made the tactical choice not to close the loop with DC on its offer to amend its interrogatory responses, and then made the tactical choice to rush to file this motion when DC moved for summary judgment. *Supra* at __-__. This is too little, too late. And, in any event, defendants have DC's summary judgment papers, amended interrogatory responses, and Levitz's deposition to explore any issues they have.

### iii.  DC's Position On Interrogatory No. 3.

**Interrogatory No. 3**
    IDENTIFY all COMMUNICATIONS between YOU AND Frank Shuster.
**Response to Interrogatory No. 3**
    DC objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope.
    DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc.  DC objects to the definition of "COMMUNICATION" as overbroad to the extent it encompasses the transmission of information orally, by telephone, or through gesture.  DC also objects to the definition of "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation.  DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.
    Subject to and without waiving the foregoing objections, DC responds as follows:
    DC00006-7, DC00014-15, DCC00005142-44, DCC00005673, DCC00006206-6207, DCC00006375-76, DCC00006399, DCC00006413-6415, DCC00006417, DCC00006420-6422, DCC00006431-6436, DCC00006440-

19
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
178

6441, DCC00006448, DCC00006462, DCC00006474, DCC00006495, DCC00006775-6777, DCC00006856, DCC00006867, DCC00057854, DCC00073008, DCC00073010, DCC00073012, DCC00073016-73017, WB005603, WB007972, WB010161-10162, WB010169-10170. Representatives from DC, including Paul Levitz, had non-written communications with Frank Shuster over the years as well.

Peary's request to identify "all COMMUNICATIONS" DC had with Frank Shuster is even more problematic. Frank worked with his brother Joe as a "letterer" for DC, and in the 1970s, Joe went out of his way to ensure that DC provided for his brother Frank. Docket No. 460 at 2 ¶ 7. Frank would have had scores of oral communications with DC on all sorts of non-relevant topics, including on content in comic books. To force DC to search for evidence of "all" such communications and list and describe them, is not required under the law. *Supra* at ___. Defendants should have narrowed their requests as to Frank or deposed Levitz on any issues that concern them.

iv.  DC's Position On Interrogatory No. 4.

**Interrogatory No. 4**
        IDENTIFY all COMMUNICATIONS between YOU AND Joseph Shuster REGARDING YOUR rights in AND to Superman.

**Response to Interrogatory No. 4**
        DC objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope.
        DC further objects to the use of the term "all" in connection with the requested communications on the ground that such interrogatory is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC will not search and review every record or source of information within its possession, custody, or control in an effort to locate "all" communications. Subject to these objections, DC will use reasonable diligence to locate responsive information and documents in its own files, based on inquiry of those persons who may reasonably be expected to possess responsive information, and examination of those files reasonably expected to yield responsive information.
        DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as overbroad to the extent it encompasses the transmission of information orally, by telephone, or through gesture. DC also objects to the definition of "COMMUNICATION" as overbroad to the extent it includes documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using

20
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
179

reasonable diligence and reasonable judgment concerning the whereabouts of such communications.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DCC00004132, DCC00004153, DCC00004186-4187, DCC00004191, DCC00004499-4505, DCC00004507-4508, DCC00004521- DCC00004579, DCC00004908, DCC00005126, DCC00005658, DCC00005662, DCC00005663-5666, DCC00005668, DCC00005669, DCC00005671, DCC00005672, DCC00006190, DCC00007178-7182, DCC00007199-7201, DCC00007206-7208, DCC00007954-7965, DCC00007990-8024, DCC00045543-45544, DCC00057253-57256, DCC00057358-57361, WB005603, WB005623-5624, WB005627-5638, WB005663-5664, WB005794-5800, WB006603-6607, WB007942-7943, WB007959-7961, WB008305-8316, WB008556-8557, WB008559-8561, WB008563.  Representatives from DC, including Paul Levitz, had non-written communications with Joseph Shuster over the years as well.

Again, the main problem here is time and scope.  Joe Shuster started working with DC in the late 1930s; had numerous negotiations with the company concerning his compensation and rights in the 1930s and 1940s; he unsuccessfully sued DC in state court in the 1940s, which led to a settlement; and he unsuccessfully sued DC in federal court in the 1970s, which (along with Joe's dire finances) led DC to enter into a lifelong pension agreement with Joe and his family in 1975.  Docket Nos. 49 at ¶¶ 28-50; 334 at 2-4; 458 at 3-5.  DC did its best in its responses to identify all communications with Joe Shuster of which it is aware that touch on DC's rights in Superman.  There are without question other oral discussions that occurred over 50 years that are responsive—but DC relies on none in its complaint or summary judgment motion.  As DC made plain to defendants in March, it could not without undue expense, locate and list all such communications over 50 years.  Nor was it required to do so by law.  *E.g., Motorola*, 2010 WL 4781844, at *2 (interrogatory seeking all communications between plaintiff and third party concerning the trade secrets at issue in the case was "vastly overbroad"); *Chen*, 2005 WL 1388016, at *1 (interrogatory requesting "all communications . . . related to power supply problems"

21
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
180

1  was "hopelessly over-broad"); *Pulsecard*, 1995 WL 526533, at *4 (interrogatory

2  requesting all communications with persons from whom responding party received

3  advice on a certain topic was overly broad on its face); *supra* at __.  As for any

4  conversations Levitz remembers (and he would be the main font of knowledge on

5  this point for DC, as DC told defendants, Seto Decl. ¶ 16), defendants can ask Levitz

6  about such memories at his deposition.

7  ## ~~D.~~C.  Defendants' Position on Interrogatory No. 5

8  Peary's fifth Interrogatory asked DC to "IDENTIFY all COMMUNCATIONS

9  between YOU AND any third-party that REFFERRED TO the 1992

10  AGREEMENT." This was a narrow, non-objectionable interrogatory directed at a

11  very specific topic – the short October 2, 1992 agreement between DC and Joe

12  Shuster's siblings, Jean Peavy and Frank Shuster (the "1992 Agreement"), which

13  raised the siblings pension by a few thousand dollars and contained a perfunctory

14  quitclaim.  *See* Arredondo Decl., Ex. D.  In the First Claim of its First Amended

15  Complaint ("FAC," Docket No. 49), DC alleges that this modest agreement

16  destroyed the Shuster estate's termination rights under section 304(d) of the

17  Copyright Act by revoking all of Joe Shusters' Superman copyright grants to DC and

18  then re-granting those rights to DC in a post-1978 grant that is not terminable under

19  the Act.   FAC ¶55.  DC makes this allegation even though the 1992 Agreement

20  contains no language of revocation or rescission whatsoever, and does not even

21  mention Superman.

22  Hence, defendants sought by Interrogatory No. 5 to test the enhanced status

23  and meaning DC attributed to this half-page 1992 Agreement by inquiring into third-

24  party communications regarding the Agreement.  This Interrogatory asked only about

25  DC's communications with regard to a single document, and then further limited the

26  inquiry to communications with third parties.  DC nonetheless claims that this

27  Interrogatory is not "narrowly tailored" enough and then attempts to evade any

28

**Formatted:** Indent: Left:  0.55", Hanging: 0.45", Space Before:  0 pt, Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at:  0.55" + Indent at:  0.8"

1  meaningful response by literally pointing to the *entirety* of the record in both this

2  action and the *Siegel* actions:

3          DC objects to this Interrogatory on the grounds that it is
   indefinite as to time and not reasonably limited in scope, and to the
4  extent that it seeks the production of any item, or portion thereof,
   which is not reasonably calculated to lead to the discovery of relevant
5  and admissible evidence. DC further objects to the extent that it seeks
   information protected by the attorney-client privilege, the attorney
6  work product doctrine, or any other applicable privilege or immunity.
   DC objects to the phrase "COMMUNICATIONS between YOU AND
7  any third-party" as overbroad, as it would include, for example, all
   statements made to the court, mediators, and to the press concerning
8  the 1992 agreement and DC's claims in this case concerning that
   agreement. DC objects to the definition of "COMMUNICATION" as
9  vague and overbroad and will respond to this term as excluding any
   documents filed in connection with prior or ongoing litigation. DC
10 objects to the extent the Request "all COMMUNICATIONS" on the
   ground that such request is overly broad, unduly burdensome,
11 oppressive, and not reasonably calculated to lead to the discovery of
   admissible evidence. As used in these Responses, the phrase "all
12 COMMUNICATIONS," or phrases of similar import, should be
   understood to mean those communications DC and its counsel were
13 able to locate using reasonable diligence and reasonable judgment
   concerning the whereabouts of such communications. DC objects to
14 the definition of "YOU" as vague and overbroad and will respond to
   this term as limited to the relevant representatives of DC and Warner
15 Bros. Entertainment Inc. DC does not object to or withhold any
   information based on the definition of "IDENTIFY," as this definition
16 mirrors in large part language that DC employed in its own discovery
   requests. Defendants previously objected to this same language in
17 DC's requests as impermissibly overbroad. Based on defendants' tacit
   acknowledgement that DC's use of this term is proper, DC will
18 answer this discovery and has confirmed with defendants that they
   will do the same.
19
           Subject to and without waiving all foregoing objections, **DC
20 refers defendants' attention to** its complaint and attached exhibit
   (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**—
21 including, but not limited to, the briefing and exhibits filed in
   connection with defendants' Rule 12 and SLAPP motions (Docket
22 Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1,
   34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2,
23 79, 80, 80-1 to 80-4,81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1

24

25

26

27

28

to 98-4, 99, 99-1 to 99-2, 100,100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193,193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the** *Siegel* **action** (*e.g.*, DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases and here**. **All of these sources are incorporated by reference herein.**

　　　　Subject to and without waiving the foregoing objections, DC is willing to meet and confer with defendants to reasonably tailor this request.

(emphasis added).


DC's reference here to the entire record in three legal actions does not answer the Interrogatory in any intelligible fashion.  Indeed, citing to the records of multiple cases is equivalent to offering no response at all.  *Landon v. Ernst & Young LLP*, 2009 U.S. Dist. LEXIS 119387, 7-8 (N.D. Cal. Dec. 2 2009) (rejecting responses that include reference to entire production in related matter); *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal 1999)  The cited materials in the record are not responsive to the Interrogatory, and DC's efforts to evade responding by citing to thousands of pages of irrelevant materials is wholly improper. DC should be compelled to directly and specifically answer Peary's Interrogatory No. 5.

### ~~E.~~D.　DC's Position On Interrogatory No. 5

Defendants' complaints about Interrogatory No. 5 are similarly without merit, and their motion on it can and should be denied because of their failure to meet and confer, *supra* at ___, and because of DC's responses were appropriate.  No. 5 requests "all COMMUNICATIONS" between DC and "any third party" that "REFER[]" to

1    the 1992 Agreement.  Arredondo Decl. Ex. C at 17.  No. 5 does not define what is

2    meant by "third-party," nor did defendants' March 8, 2012, meet-and-confer letter,

3    which just made the circular argument that this was a proper request—and did not

4    explain what information it truly sought.  *Id.* Ex. A at 2-4.

5         Defendants now feign outrage that DC's response to No. 5 points defendants to

6    briefs, other communications with third parties, and the discovery record in the *Siegel*

7    and *Shuster* case, where DC in fact mentioned or might have mentioned the 1992

8    Agreement to third parties.  *Supra* at __-__.  But what DC did, in the time allotted to

9    respond, was to explain to defendants this request was overbroad, and it would meet

10   and confer with defendants on ways to understand and narrow it.  DC also tried to

11   point defendants to pleadings in which it discussed with "third parties" (including the

12   courts) its rights under the 1992 Agreement, so that defendants could not claim they

13   were ignorant of DC's claimed legal entitlements.  Indeed, as DC explained in its

14   March 2012 letter—*without any response from defendants*:

15        Defendants suggest that DC's response to Interrogatory No. 5 is
     deficient because DC identified too many documents.  First, defendants
16   ignore DC's objections to the interrogatory as being vague, overbroad,
     and unduly burdensome.  Second, Interrogatory No. 5 requests that DC
17   identify "*all* COMMUNICATIONS" with third parties that refer to the
     1992 Agreement.  Peary Interrogatory No. 5.  In the time allowed, DC
18   endeavored to identify all responsive documents, but now defendants
     suggest that the "all" DC sought to provide was too much, and it was not
19   "all" that defendants really wanted despite asking for it.  *DC remains
     willing to meet and confer on this request, if you wish to do so.*  Arredondo
20   Decl. Ex. B at 6 (emphasis added).

21

22        Defendants' discovery motion also challenges DC's reading, under copyright

23   and contract law, of the import of the 1992 Agreement on the Shuster Termination

24   Notice.  *Supra* at __-__.  DC refutes these arguments in its summary judgment

25   papers, Docket No. 458 at 1-2, 10-18 (and Rule 12 papers, before that, Docket No.

26   334 at 5-10), and DC's motion for summary judgment will resolve these questions.[6]

27   _____

28        [6] Defendants cite three cases that they say hold that DC's responses are unintelligible
     because they point defendants to briefing and the record in this case and *Siegel*.  *Supra* at
     __.  None of their cases so hold.  *E.g.*, *Walker v. Lakewood Condo Owners Ass'n*, 186

1

F.E.   **Defendants' Position on Interrogatories Nos. 9-15**

Formatted: Indent:
Left: 0.5", Hanging:
0.5", Numbered +
Level: 1 + Numbering
Style: A, B, C, … +
Start at: 1 + Alignment:
Left + Aligned at:
0.55" + Indent at: 0.8"

2       DC responds in a similarly improper manner to Interrogatories Nos. 9-15. All

3   of these Interrogatories were "contention interrogatories," properly aimed at

4   identifying the evidence supporting DC's claims and allegations in its Complaint:

5       **Interrogatory No. 9**

6       IDENTIFY any evidence that supports YOUR contention that "[t]he
        Shuster Termination Notice is invalid, and thus ineffective," found in
7       paragraph 106 of YOUR COMPLAINT.

8       **Interrogatory No. 10**

9       IDENTIFY any evidence that supports YOUR contention that "[t]he
        1992 Agreement that Frank Shuster and Jean Peavy entered into with
10      DC Comics bars the Shuster Estate from pursuing termination
        because, *inter alia*, in exchange for valuable consideration, the 1992
11      Agreement effected a rescission, revocation, and re-grant of all prior
        copyright grants, which eliminated any pre-1978 grant that could be
12      subject to termination under section 304 of the Copyright Act," found
        in paragraph 112 of YOUR COMPLAINT.
13
        **Interrogatory No. 11**
14
        IDENTIFY any evidence that supports YOUR contention that
15      "Shuster's heirs approached DC Comics in 1992 seeking increased
        annual payments, certain tax benefits, and payment of Shuster's debts
16      and expenses," and that "[a]t the time, Shuster's heirs recognized the
        value of Superman as a property," found in paragraph 115 of YOUR
17      COMPLAINT.

18

19      **Interrogatory No. 12**

20      IDENTIFY any evidence that supports YOUR contention that "the
        Shusters are estopped from disputing that the 1992 Agreement
21      remains in full force and effect, which operates to preclude the
        assertion of any termination right," found in paragraph 117 of YOUR
22      COMPLAINT.

23      **Interrogatory No. 13**

24

25  F.R.D. 584, 587 (C.D. Cal. 1999), involved numerosity concerns, not the sufficiency of
26  interrogatory responses.  In both *Landon v. Ernst & Young LLP*, 2009 U.S. Dist. LEXIS
    119387, *7-8 (N.D. Cal. Dec. 2, 2009), and *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D.
27  Ind. 2000), the court found that pointing to the record was non-responsive.  Here, DC's
    response *is* responsive to Peary's request, which calls for "any reference" in third-party
28  communications to the 1992 Agreement.  DC did its best to meet that wide-open demand,
    and also to prevent defendants from making "gotcha" arguments in the future.

26
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
185

IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were intended to conceal material information from DC Comics, including: (a) the various conflicts of interest arising from Toberoff's and his companies' significant ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

**Interrogatory No. 14**

IDENTIFY any evidence that supports YOUR contention that "the Shuster Termination Notice ... contains material misrepresentations intended to mislead the courts, Copyright Office, and DC Comics—all to the detriment of DC Comics," found in paragraph 129 of YOUR COMPLAINT.

**Interrogatory No. 15**

IDENTIFY any evidence that supports YOUR contention that "[i]nduced by Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights in the Shuster Termination Notice," found in paragraph 131 of YOUR COMPLAINT.

After cutting and pasting its repeated block of boilerplate objections and pointing to a handful of questionably relevant materials, DC's answers to each of these Interrogatories Nos. 9-15 again refers defendants to literally every document filed and produced in both this action and in the *Siegel* actions. Below is as verbatim reproduction of DC's response to Interrogatory No. 11, which is representative of the evasive tactic DC took in answering all of Peary's contention interrogatories:

> DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further objects to the Interrogatory on the ground that it is compound and includes numerous discrete subparts addressed to separate contentions. Each subpart should be counted a separate interrogatory for the purposes of calculating the number of interrogatories that Peary has propounded on DC. DC objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

27

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
186

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.

Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00008-12, DC00014-15, DC00094-144, DCC00006184, DCC00006188-6190, DCC00006192-94, DCC00006198, DCC00006203-05, DCC00006206-07, DCC00006214-15, DCC00006372-73, DCC00006375-76, DCC00006399, DCC00006413-41, DCC00006448, DCC00006462, DCC00006474, DCC00006477-92, DCC00006495-96, DCC00006498, DCC00006607-18, DCC00006620, DCC00006629-30, DCC00006775-78, DCC00006855-56, DCC00006867, DCC00006869, DCC00006872-79, DCC00008506-07, DCC00057854, DCC00057855, DCC00073008, DCC00073010, DCC00073012-17, WB005603, WB007959-61, WB007972, WB010169-70, WB010161-10162, Q0001-07, LSL00211-12, LSL00482-86.

Subject to and without waiving all foregoing objections, **DC refers defendants' attention to** its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), **all briefing in this action**—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147,147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313,

28
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
187

314, 314-1 to 314-3, 333,333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—**and all discovery in this action and the Siegel action** (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, **all deposition testimony in those cases** and here. **All of these sources are incorporated by reference herein**.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

(emphases added).[7]

These answers are wholly improper. Defendants' Interrogatories No. 9-15 were geared towards the most natural of questions: what is the evidence that Plaintiff relies upon for certain contentions in its complaint? DC's responses, which again incorporate by reference the *entirety* of the record in two lawsuits are, as noted above, equivalent to offering no responses at all. *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8.

DC gives the illusion of specificity by citing some Bates numbers but then entirely defeats the purpose of these contention interrogatories by *co-mingling* these cites with the entire production and record in two litigations. *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005) (interrogatory responses that "merely refer to every document . . . defeat the purpose of a contention interrogatory [which is] to . . put a party on notice of its opponent's contentions and the evidence on which it relies."); *Williams v. Sprint/United Management Co.*, 235 F.R.D. 494, 501 (D.Kan. 2006) ("Plaintiffs may not answer the interrogatory by generally referring Defendant to the ... documents produced ... but rather must indicate with specificity where the information can be found.").

In *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012), the court rejected a party's interrogatory response which stated that "[o]ther emails previously produced

---

[7] *See* Arredondo Decl., Ex. C at 12-36 for DC's similar responses to Interrogatories, Nos. 9-10, 12-15.

29
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
188

1    may also [be responsive]."  Here, DC points not only to every email produced, but to

2    every document of any kind produced in two long-running litigations.

3          DC's improper responses are designed not only to evade providing any

4    meaningful answers, but also to misdirect and misinform.  Many of the documents

5    DC specifically points to and lists by Bates number are palpably irrelevant to the

6    interrogatory in question.  For example, Interrogatory No. 11 asked DC to identify

7    any evidence that supported its contention that "Shuster's heirs approached DC

8    Comics in *1992* seeking increased annual payments, certain tax benefits, and

9    payment of Shuster's debts and expenses," and that "*[a]t the time*, Shuster's heirs

10   recognized the value of Superman as a property."  DC's Response points to a host of

11   irrelevant and non-responsive documents and letters from 1996-1997

12   (DCC00006607-18, DCC00006620, DCC000029), years after the specified time

13   period.  It even cited a 1997 holiday card (DCC00006630) and a brief letter regarding

14   the family's request for a tape of a memorial service (DCC00006630).

15         Thus, DC's answers are worse than meaningless in that they not only point to

16   the entire universe of documents and the record in two litigations, they also

17   misleadingly point specifically to purportedly responsive documents that are wholly

18   irrelevant.

19         Defendants are entitled to know, with specificity, what evidence DC relies

20   upon in making its claims and allegations.

21         **F.    DC's Position On Interrogatories Nos. 9-15**

22         Peary is on even weaker ground in moving on Nos. 9-15.  His March 2012

23   Rule 37 *never* mentions these interrogatories by number or states an intention to

24   move on them.  Arredondo Decl. Ex. A 2-4.  Indeed, DC's response letter in March

25   could only hazard a guess that these might be responses about which defendants

26   complained.  *Id.* Ex. B at 7.  This Court denied a part of one of DC's motions to

27   compel because DC's Rule 37 letter mentioned *categories* of problematic

28   interrogatory responses defendants served, but not several of the *specific numbered*

Formatted: Indent:
Left:  0.5", Hanging:
0.5", Numbered +
Level: 1 + Numbering
Style: A, B, C, … +
Start at: 1 + Alignment:
Left + Aligned at:
0.55" + Indent at:  0.8"

*requests* on which DC moved.  Docket No. 262 at 6.  That rule—which the Court applied even though DC raised the specific numbered interrogatory responses during the follow-up Rule 37 meet-and-confer-call, Docket Nos. 206 at 1-15; 207-12 at 487-93; 262 at 6—must apply to Peary as well and bar his motion.

No matter defendants' meet-and-confer failures, all seven requests on which Peary moves are also improper on their face.  Each demands that DC "IDENTIFY any evidence" that supports a series of its contentions.  *Supra* at __.  Such all-encompassing, "blockbuster" discovery requests are "overly broad," "unduly burdensome," and "an abuse of the discovery process."  *Hilt v. SFC., Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997); *Kim v. City of Santa Clara*, 2009 WL 4021389, at *2-3 (N.D. Cal. Nov. 19, 2009) (denying motion to compel further answers to interrogatories asking for "all facts"); *Bashkin v. San Diego Cnty.*, 2011 U.S. Dist. LEXIS 3439, at *4-6 (S.D. Cal. Jan. 13, 2011) ("parties are not entitled to each and every detail that could possibly exist in the universe of facts…. [n]or [are they] entitled to a narrative account of [the responding party's] case" ); *Olson v. City of Bainbridge Island*, 2009 WL 1770132, at *4 (W.D. Wash. June 18, 2009).

Peary's motion is also inappropriate given the posture of the case.  *If ever proper*, contention interrogatories are meant to narrow issues for trial, and, thus, may be served *only* when discovery is "substantially completed."  *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) (granting motion to compel answers to contention interrogatories where they did not request "each and every fact," and discovery was set to close 10 days after court issued order); *see Kim*, 2009 WL 4021389, at *2-3("no point in forcing [party]" to respond to contention interrogatories "until discovery regarding the incident is complete or nearly so"); FED. R. CIV. P. 33(a)(2); *Johnson v. Couturier*, 261 F.R.D. 188, 192 (E.D. Cal. 2009).

Finally, when one studies each of the seven interrogatories on its own, as the rules require, *supra* at __-__—rather than in the mass that Peary lumps them—there are additional, specific grounds to deny defendants' motion on each request.

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
190

<u>i.  DC's Position On Interrogatory No. 9.</u>

**Interrogatory No. 9**

IDENTIFY any evidence that supports YOUR contention that "[t]he Shuster Termination Notice is invalid, and thus ineffective," found in paragraph 106 of YOUR COMPLAINT.

**<u>Response to Interrogatory No. 9</u>**

DC objects to the Interrogatory to the extent it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC objects to the Interrogatory on the ground that it is compound and includes numerous discrete subparts that should each be counted as a separate interrogatory for the purposes of calculating the number of interrogatories that Peary has propounded on DC.  DC articulated five separate bases for the invalidity of the Shuster Termination Notice in its complaint (Docket No. 49 ¶¶ 105-134), and discovery must accordingly be addressed to each basis individually.  DC objects to the Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336, DCC00004510-4520, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-8316, WB009991-10003,

WB010169-10170, WB010161-10162, PPC0001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary complains that DC's response provides too much information—by not only citing a large block of documentary evidence,[8] but also to briefs DC has filed on the contention at issue—*the grounds for DC's First Claim*—as well as the discovery record generally.  Such an answer is hardly surprising given the capacious and

---

[8] DC00001-7, DC00008-12, DC00014-15, DCC00000557-3336, DCC00004510-4520, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007954- DCC00007965, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB008305-8316, WB009991-10003, WB010169-10170, WB010161-10162, PPC0001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

EXHIBIT 20
192

Formatted: Space Before: 12 pt

1  premature nature of Peary's request.  To take one example, one ground DC cites that

2  the "Shuster Termination Notice is invalid" under its First Claim is defendants'

3  unclean hands.  Discovery on this issues is months away from being complete, given

4  the delay defendants' caused in this case with their several successive (and all failed)

5  writ petitions before the Ninth Circuit, *e.g.*, Docket Nos. 162-17, 163, 163-1, and

6  their untenable position that witnesses may only be deposed once and only once—

7  even if new relevant documents emerge, *e.g.*, Docket No. 366.  If defendants are

8  concerned about the "1992 Agreement" ground that is a part of DC's First Claim, that

9  issue has been framed by DC's summary judgment motion, and DC has amended its

10  interrogatory responses accordingly.  Peary can ask Levitz about any evidence cited

11  in DC's motion at his deposition next week.

12      DC is not required in responding to this or any other interrogatory to describe

13  "every evidentiary fact, details of testimony of supporting witnesses, and the contents

14  of supporting documents," *Lucero*, 240 F.R.D. at 594, as Peary wrongly contends.

15  The cases Peary cites—where responding parties merely pointed moving parties to

16  every document in the case[9]—are off point for two reasons.  First, in all of the

17  responses at issue here, DC pointed defendants to specific, concrete evidence to

18  review.  Second, given the overbreadth of defendants' requests, DC *also* pointed to

19  its pleadings and the discovery record generally to avoid claims of "gotcha" by

20  defendants, in case DC's current responses did not identify every conceivable

21  document among tens of thousands, early in discovery, that might become relevant.

22  Defendants' have the needed roadmap to test DC's claims on which DC moved for

23

---

24      [9] *Freaner v. Valle*, 2012 WL 2564790 (S.D. Cal. 2012) (responding party referred to
"[o]ther emails previously produced," but did not provide identifying information such as

25  bates numbers); *Landon*, 2009 U.S. Dist. LEXIS 119387 at 7-8 (generally referring to
discovery in related action but providing no details about the discovery); *Pac. Lumber Co.*

26  *v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 *8 (N.D. Cal. Jan. 5, 2005)
(response referred to "every document and every injury alleged by any … plaintiff (and

27  some plaintiffs from other, unrelated litigation)"); *Williams v. Sprint/United Mgmt. Co.*, 235
F.R.D. 494, 501 (D. Kan. 2006) (response referred to all pleadings in the case and

28  documents produced, and did not refer to specific documents or briefing).

34

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
193

summary judgment; that evidence is cited in its motion, and defendants can question DC's 30(b)(6) witness on it.

### ii.  DC's Position On Interrogatory No. 10.

**Interrogatory No. 10**

IDENTIFY any evidence that supports YOUR contention that "[t]he 1992 Agreement that Frank Shuster and Jean Peavy entered into with DC Comics bars the Shuster Estate from pursuing termination because, inter alia, in exchange for valuable consideration, the 1992 Agreement effected a rescission, revocation, and re-grant of all prior copyright grants, which eliminated any pre-1978 grant that could be subject to termination under section 304 of the Copyright Act," found in paragraph 112 of YOUR COMPLAINT.

**Response to Interrogatory No. 10**

DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications.  DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DCC00006-7, DC00014-15, DCC00000557-3336, DCC00006184, DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373, DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448, DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496, DCC00006498, DCC00006607-6618, DCC00006620, DCC00006629-6630, DCC00006775-6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00007990-8024, DCC00008506-8507, DCC00045603-45626, DCC00056945-56950, DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010, DCC00073012-73017, DCC00089361-89365, DCC00141525, WB000670-3453, WB005603,

WB005709-5766, WB006588-6602, WB007959-7961, WB007972, WB008050-8053, WB009991-10003, WB010169-10170, WB010161-10162, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaints about DC's response to Interrogatory No. 10 fail for the same reasons as No. 9. DC appropriately responded to this premature, overbroad request for "any evidence" by citing to specific documents and briefing in this case that relate to the enforceability and effect of the 1992 Agreement. Defendants knew since *May 2010* that DC sought to enforce the 1992 Agreement in its First Claim, Docket No. 1 at ¶¶ 99-104, and DC advised defendants in *September 2010* that Levitz possessed relevant knowledge. *Supra* at ___ . Defendants knew *six months ago* that DC intended to move for summary judgment to enforce the 1992 Agreement. Seto Decl. Ex. 17 at 75. And defendants knew from DC's Rule 12 briefing that DC was relying on Jean and Frank's communications with Levitz to support this claim. *E.g.,* Docket Nos. 89 at 1-13; 186 at 1-13; 334 at 2-10. Still defendants still did nothing to pursue this issue—either following up on this request in the meet-and-confer process,

1  or deposing Levitz—until DC said it filing its summary judgment papers shortly.

2  *Supra* at __-__.  Such lack of diligence cannot be rewarded.

3

4  ### iii.  DC's Position On Interrogatory No. 11.

5  Peary's complaints about DC's response to Interrogatory No. 11 are equally

6  unfounded.  DC's interrogatory response and summary judgment motion cites and

7  identifies the evidence it relies on for the factual propositions about why Jean and

8  Frank approached DC in 1992 and what they knew about Superman's value at the

9  time.  *Supra* at __ (citing , *e.g.*, Aug. 21, 1992, Jean letter to Payson (DCC0006477-

10  92); Aug. 21, 1992, Levitz letter to Frank (DCC00006462); Sept. 8, 1992, Levitz

11  letter to Frank (DCC00006495); Sept. 15, 1992, Peary letter to Levitz (DCC006855-

12  56); Agreement dated as of Aug. 1, 1992 (DCC0057854); Oct. 2, 1992, Frank letter

13  to Levitz (WB007972); Oct. 12, 1992, Levitz letter to Jean and Frank

14  (DCC00006441)); Docket Nos. 458 at 5-7; 460 at ¶¶ 5-9; 460-1 at 9-12, 26-27, 30-

15  32, 34 (citing Aug. 21, 1992, Jean letter to Payson; Aug. 21, 1992, Levitz letter to

16  Frank; Sept. 8, 1992, Levitz letter to Frank; Sept. 15, 1992, Peary Letter to Levitz;

17  Agreement dated as of Aug. 1, 1992; Oct. 2, 1992, Frank letter to Levitz; Oct. 12,

18  1992, Levitz letter to Jean and Frank).

19  None of this evidence can come as a surprise to defendants.  It all comes from

20  Jean's and Frank's *own letters to DC*, in which they explained why they approached

21  DC in 1992.  *Id.*  Or it comes from Peary's own admissions at his deposition, where

22  he testified about his family's knowledge of the value of Superman in 1992.  Docket

23  No. 305-37 at 1256:8-17.

24  Peary accuses DC of seeking to "misdirect" or "misinform" defendants by

25  citing in its answer to No. 11 certain post-1992 documents.  *Supra* at __.  This misses

26  the mark.  Defendants *never raised this issue* in their Rule 37 letter or call in

27  March—or in the four months since.  Arredondo Decl. Exs. A at 2-4; B at 5-8; Seto

28  Decl. ¶ 9.  Had they raised the issue, DC could have addressed any concern, and, in

1    fact, has now amended its response to Interrogatory No. 11 to address it.  Seto Decl.

2    Ex. 18 at 97-98.

3                    iv.  DC's Position On Interrogatory No. 12.

4    **Interrogatory No. 12**
          IDENTIFY any evidence that supports YOUR contention that "the Shusters

5    are estopped from disputing the 1992 Agreement remains in full force and
     effect, which operates to preclude the assertion of any termination right," found

6    in paragraph 117 of YOUR COMPLAINT.

7    **Response to Interrogatory No. 12**
          DC objects to the Interrogatory to the extent that it requires DC to prove

8    through the discovery process its ultimate legal arguments related to the
     ramifications of defendants' agreements and communications.  DC further

9    objects to this Interrogatory to the extent it seeks information protected by
     the attorney-client privilege, the attorney work product doctrine, or any other

10   applicable privilege or immunity.
          DC objects to the definition of "YOUR" and will respond to that term as

11   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
     DC objects to the use of the term "any" evidence on the ground that such request

12   is vague, overly broad, unduly burdensome, oppressive, and not reasonably
     calculated to lead to the discovery of admissible evidence.  DC does not object to

13   or withhold any information based on the definition of "IDENTIFY," as this
     definition mirrors in large part language that DC employed in its own discovery

14   requests.  Defendants previously objected to this same language in DC's requests
     as impermissibly overbroad.  Based on defendants' tacit acknowledgement that

15   DC's use of this term is proper, DC will answer this discovery and has confirmed
     with defendants that they will do the same.

16        Subject to and without waiving the foregoing objections, DC responds as

17   follows:
          DC00008-12, DC00014-15, DC00094-144, DCC0000557-3336,

18   DCC00006188-6190, DCC00006192-6194, DCC00006198, DCC00006203-
     6205, DCC00006206-6207, DCC00006214-6215, DCC00006372-6373,

19   DCC00006375-6376, DCC00006399, DCC00006413-6441, DCC00006448,
     DCC00006462, DCC00006474, DCC00006477-6492, DCC00006495-6496,

20   DCC00006498, DCC00006607-6618, DCC00006629-6630, DCC00006775-
     6778, DCC00006855-6856, DCC00006867, DCC00006869, DCC00006872-

21   6879, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837,
     DCC00007990-8024, DCC00045603-45626, DCC00056945-56950,

22   DCC00057538-57550, DCC00057854, DCC00073008, DCC00073010,
     DCC00073012-73017, DCC00089361-89365, DCC00141525, WB0000670-3453,

23   WB005603, WB005709-5766, WB006588-6602, WB007959-7961, WB007972,
     WB008050-8053, WB0009991-10003, WB010169-10170, WB010161-10162,

24   PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

25        Subject to and without waiving all foregoing objections, DC refers
     defendants' attention to its complaint and attached exhibit (Docket No. 49,

26   Docket No. 49 Ex. A), all briefing in this action—including, but not limited to,
     the briefing and exhibits filed in connection with defendants' Rule 12 and

27   SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to
     33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to

28   78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to
     98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107,

                                            38
              JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
197

108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

    Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

    Peary's complaints about DC's response to Interrogatory No. 12 fail for the same reasons as Interrogatory Nos. 9 and 10.

### v. DC's Position On Interrogatory No. 13.

**Interrogatory No. 13**
    IDENTIFY any evidence that supports YOUR contention that purported "omissions [in the Shuster Termination Notice] were not inadvertent, but were intended to conceal material information from DC Comics, including: (a) the various conflicts of interest arising from Toberoff's and his companies' significant ownership interest in the Shuster Estate's and the Siegel Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics regarding those rights," found in paragraph 123 of YOUR COMPLAINT.
**Response to Interrogatory No. 13**
    DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC also objects to the extent the Interrogatory calls for information which is not available to DC. DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

    DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

    Subject to and without waiving the foregoing objections, DC responds as follows:

39
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
198

DC00001-7, DC00014-15, DCC0000557-3336, DCC00007102-7159, DCC00007183-7198, DCC00007826-7837, DCC00056945-56950, DCC00057538-57550, DCC00089361-89365, DCC000141525, IPW00001-00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8053, WB009991-10003, PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

For the same reasons DC's response to Interrogatory Nos. 9-11 are appropriate, so too is DC's response to No. 13. More importantly, this contention includes a key set of issues (especially concerning Toberoff's misconduct) on which discovery is still just underway (including depositions of Toberoff and his three companies). *Kim*, 2009 WL 4021389, at *2-3 ("no point in forcing [party]" to respond to contention interrogatories "until discovery regarding the incident is complete or nearly so"); FED. R. CIV. P. 33(a)(2); *Johnson*, 261 F.R.D. at 192.

### vi.  DC's Position On Interrogatory No. 14.

**Interrogatory No. 14**
IDENTIFY any evidence that supports YOUR contention that "the Shuster Termination Notice … contains material misrepresentations intended to mislead the courts, Copyright Office, and DC Comics—all to the detriment of DC Comics," found in paragraph 129 of YOUR COMPLAINT.
**Response to Interrogatory No. 14**
DC objects to the Interrogatory to the extent that it requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC further

objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC also objects to the extent the Interrogatory calls for information which is not available to DC. DC further objects to the extent this Interrogatory seeks documents that defendants have refused to produce in response to discovery served by DC, including but not limited to the 2008 "consent agreement" defendants continue to refuse to disclose.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC further objects to the use of the term "any" evidence on the ground that such request is vague, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. DC does not object to or withhold any information based on the definition of "IDENTIFY," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' tacit acknowledgement that DC's use of this term is proper, DC will answer this discovery and has confirmed with defendants that they will do the same.

Subject to and without waiving the foregoing objections, DC responds as follows:

DC00001-7, DC00008-12, DCC00000557-3336, DCC00004510-4520, DCC00007102-7159, DCC00007147-7159, SM No. 1, DCC00007183-7198, DCC00007826-7837, DCC00045557-45591, DCC00045603-45613, DCC00056945-56950, DCC00057538-57550, DCC0006849-6854, DCC00089361-89365, DCC000141525, DCC00141359-141364, DCC00141525, DCC00141565-141572, DCC00142156-142342, IPW00001-00016, PPC00001-00009, WB000670-3453, WB005709-5766, WB006588-6602, WB008050-8059, WB008305-8316, WB009991-10003, PPC00001-09, IPW00001-16, Q00001-07, LSL00211-212, LSL00482-486.

Subject to and without waiving all foregoing objections, DC refers defendants' attention to its complaint and attached exhibit (Docket No. 49, Docket No. 49 Ex. A), all briefing in this action—including, but not limited to, the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here. All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

41
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
200

1    Peary's complaints about DC's response to Interrogatory No. 14 fail for the

2   same reason his complaints about No. 10 do.  Also, as with No. 10, the issue here is

3   teed up in DC's summary judgment motion, Docket No. 458 at 18-20, which cites

4   and discusses the same evidence DC mentioned in its interrogatory response.

5   *Compare* Docket Nos. 458 at 18-20; 459-3 at 266-69, 291-94; 459-6 at 427-33

6   (citing, *e.g.*, 2001 PPC Agreement; 2003 PPC Agreement), *with supra* at __ (citing,

7   *e.g.*, 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement (PPC00001-4)).

8   **Interrogatory No. 15**
        IDENTIFY any evidence that supports YOUR contention that "[i]nduced by
9   Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy
    rights in the Shuster Termination Notice," found in paragraph 131 of YOUR
10  COMPLAINT.

11  **Response to Interrogatory No. 15**
        DC objects to the Interrogatory to the extent that it requires DC to prove
12  through the discovery process its ultimate legal arguments related to the
    ramifications of defendants' agreements and communications.  DC objects to this
13  Interrogatory to the extent that it seeks information protected by the attorney-
    client privilege, the attorney work product doctrine, or any other applicable
14  privilege or immunity.  DC further objects to the extent this Interrogatory seeks
    documents that defendants have refused to produce in response to discovery
15  served by DC, including but not limited to the 2008 "consent agreement"
    defendants continue to refuse to disclose.

16      DC objects to the definition of "YOUR" and will respond to that term as
    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.
17  DC objects to the use of the term "any" evidence on the ground that such request
    is vague, overly broad, unduly burdensome, oppressive, and not reasonably
18  calculated to lead to the discovery of admissible evidence.  DC does not object to
    or withhold any information based on the definition of "IDENTIFY," as this
19  definition mirrors in large part language that DC employed in its own discovery
    requests.  Defendants previously objected to this same language in DC's requests
20  as impermissibly overbroad.  Based on defendants' tacit acknowledgement that
    DC's use of this term is proper, DC will answer this discovery and has confirmed
21  with defendants that they will do the same.

22      Subject to and without waiving the foregoing objections, DC responds as
    follows:
23      DC00001-5, DC00008-12, DCC00000557-3336, DCC00004510-20,
    DCC00007102-7159, DCC00007147-7159, DCC00007183-7198,
24  DCC0007826-7837, DCC00045557-45591, DCC00045603-45613,
    DCC00056945-56950, DCC00057538-57550, DCC00089361-89365,
25  DCC000141525, DCC00142156-142342, WB000670-3453, WB005709-5766,
    WB006588-6602, WB008050-8053, WB008305-8316, WB009991-10003,
26  PPC00001-09, IPW00001-16, Q0001-07, LSL00211-212, LSL00482-486,
    SGL000003529-3237.
27
        Subject to and without waiving all foregoing objections, DC refers
28  defendants' attention to its complaint and attached exhibit (Docket No. 49,
    Docket No. 49 Ex. A), all briefing in this action—including, but not limited to,

42
JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
201

the briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in this action and the Siegel action (e.g., DCC00000001-154435 and WB000001-149488)—including, but not limited to, all deposition testimony in those cases and here.  All of these sources are incorporated by reference herein.

Given that discovery is ongoing in this case, and expert discovery has not yet begun, DC expressly reserves its right to supplement these Responses as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

Peary's complaint here fails for the same reason as does his complaint about Interrogatory No. 13.  DC's complaint, Rule 12 briefing, and interrogatory response all identified specific documents and evidence that supports its claim that Toberoff induced the Shusters to disclaim their interest in the Superboy rights.  Docket Nos. 49 at ¶¶ 86-91 & Ex. A; 334 at 17-21; *supra* at __ (citing, *e.g.*, Superboy Script (DCC00007147-59); May 31, 1942, Superman strip (DCC00141525); Toberoff Timeline (Q0001-07); 2001 PPC Agreement (PPC00005-9); 2003 PPC Agreement (PPC00001-4)).  This includes comic books, comic book scripts, copyright renewal notices Shuster and Siegel filed, the progression of the Pacific Pictures Agreements, and Peary's deposition admissions.  *Id.*  The "Superboy fraud" will be a key area of discovery as DC finally gets a chance to depose Toberoff and a 30(b)(6) witness for Pacific Pictures.  Defendants' motion on this response is particularly premature. *Kim*, 2009 WL 4021389, at *2-3.

**IV.   DEFENDANT'S CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant it's motion to compel interrogatory responses.

JOINT STIP. RE: DEFENDANT'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT 20
202

### III.V. DC'S CONCLUSION

For many reasons—chief among them Peary's failure to meet and confer—defendants' motion should be denied. Because defendants "did not adequately meet and confer in an attempt to obviate this dispute," they should have to pay DC's reasonable fees and costs on this motion. *Franklin v. Allstate Corp.*, 2008 WL 590508, at *1-2 (N.D. Cal. Feb. 29, 2008).

Dated:    July __, 2012        Respectfully Submitted,

TOBEROFF & ASSOCIATES

By:   /s/ Marc Toberoff

Marc Toberoff
Attorneys for Defendants Laura Siegel
Larson, Mark Warren Peary, and Jean
Adele Peavy

Dated:    July __, 2012        Respectfully Submitted,

O'MELVENY & MEYERS, LLP

By:   _____

Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

EXHIBIT 20
203

Formatted: Numbered + Level: 1 + Numbering Style: I, II, III, … + Start at: 1 + Alignment: Left + Aligned at: 0.05" + Indent at: 0.55"

# EXHIBIT 21

**Tokoro, Jason**

| | |
|---|---|
| **From:** | Pablo Arredondo <parredondo@ipwla.com> |
| **Sent:** | Monday, July 23, 2012 11:09 AM |
| **To:** | Kline, Matthew |
| **Cc:** | Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Keith Adams'; 'David Harris'; 'Marc Toberoff' |
| **Subject:** | DC v. PPC |

Matt:

The deletion is very straightforward.  It would literally take someone ten minutes to adjust and I would happy to redline it for you.  We would appreciate if you would get it back to us for filing today.  If you insist on more time, that's fine too, so long as DC doesn't object to defendants keeping the same hearing date.  Please let me know.

As far as your threat of sanctions, that seems inappropriate particularly as DC's opposition to Rogs Nos. 3 and 4 is nearly identical to DC's opposition to Rogs 1 and 2 which remains.

Thanks.

Pablo


Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101



This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Monday, July 23, 2012 8:37 AM
**To:** Pablo Arredondo; Seto, Cassandra
**Cc:** Petrocelli, Daniel; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'
**Subject:** RE: DC v. PPC

Pablo:

I'm back in the office, and we'll take a look at this today.  We note you both added and deleted text.  We might need until tomorrow or Wednesday to turn the draft, given some travel obligations on our end.  At all events, we again urge you to withdraw the motion--or at least to delay it, until after Paul Levitz's deposition.  DC reserves all rights, including to seek its fees and costs on the motion generally, as well as to seek fees and costs on the issues you withdrew.

1

EXHIBIT 21
204

Matt

---

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Saturday, July 21, 2012 5:07 PM
**To:** Seto, Cassandra
**Cc:** Petrocelli, Daniel; Kline, Matthew; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'
**Subject:** DC v. PPC

Counsel:

Please find attached a combined joint stipulation re defendants' motion to compel interrogatory responses.  In an effort to reduce the burden on the Court, and to follow Magistrate Zarefsky's exhortation that the parties cooperate towards resolving issues without court intervention, defendants have withdrawn their motion to compel on Interrogatories No. 3 and 4.  Defendants' portion of the joint stipulation has been modified accordingly, with the changes in redline.

As the only substantive changes needed in DC's portion would be the excising of DC's responses regarding Rog Nos. 3 and 4 (and instances where Nos. 3 and 4 are referenced), defendants request that DC does this, send the combined redline back to us, and provide permission to sign/file, such that the joint stip can be filed by close of business on Monday, July 23, 2012.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read,
copy, distribute or use this information. If you have received this transmission in error, please notify the sender
immediately by reply e-mail and then delete this message.

# EXHIBIT 22

**Tokoro, Jason**

| | |
|---|---|
| **From:** | Seto, Cassandra |
| **Sent:** | Monday, July 23, 2012 6:31 PM |
| **To:** | Marc Toberoff |
| **Cc:** | Petrocelli, Daniel; Tokoro, Jason; Kline, Matthew; Keith Adams; Pablo Arredondo; David Harris |
| **Subject:** | RE: Levitz Depo |

Please see the email below send on behalf of Matt Kline.

\*        \*        \*

Marc,

You have been on notice of our motion for six months, the timing of filing for a month, and asked for Mr. Levitz's deposition on this date. We made extensive arrangements and plans. We just offered you extra time to take Mr. Levitz's deposition, and you declined. We offered you a videoconferenced deposition, and you declined. We have not cancelled a single deposition of an out-of-town witness, nor any deposition on notice this short. This is a problem of your own making, and your last-minute cancellation is unjustified. If you do not wish to depose Mr. Levitz in connection with DC's motion for summary judgment, that is your choice. We will point out in our summary judgment papers that you unilaterally cancelled his deposition rather than examine the witness.

Nor is it proper for you to suddenly reschedule depositions for four witnesses -- including Carolyn McCandless, who you never before indicated you wished to depose -- during the weeks when you know we will be busy with summary judgment briefing.

We reserve the right to seek all appropriate relief, including compensation for the costs of cancelling flights and hotel reservations at the last minute.

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, July 23, 2012 5:08 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Keith Adams; Pablo Arredondo; David Harris
**Subject:** Re: Levitz Depo

Matt:

I am sorry it is literally not feasible given our compressed schedule in both this case, and deadlines in other matters. You have on short notice re-scheduled the pre-arranged and pre-scheduled depositions of numerous witnesses (both parties and non-parties alike) in this case on many occasions.

Please promptly inform Mr. Levitz to minimize any inconvenience.

EXHIBIT 22

Thank-you

Marc


On Mon, Jul 23, 2012 at 3:57 PM, Kline, Matthew <MKline@omm.com> wrote:

Marc,


Mr. Levitz's deposition has been arranged and scheduled, and we are travelling to New York tomorrow to defend it.  We cannot move the date.  If you need two extra days to file your opposition, we have no objection to defendants' filing their opposition on August 1.  DC would file its reply on August 8.


All of DC's rights are reserved.


Matt


---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, July 23, 2012 3:30 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Keith Adams; Pablo Arredondo; David Harris
**Subject:** Levitz Depo



Matt:

Unfortunately, due to the time pressures of completing defendants' opposition to DC's partial summary judgment motion by July 30, 2012 (and DC's refusal to grant even a one week extension) defendants must reschedule Mr. Levitz's July 26, 2012 deposition in NYC.

Please provide the availability of Paul Levitz, Lillian Laserson, Martin Payson and Carolyn McCandless from August 1-17, 2012.

Thank-you.

**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333

Fax: (310) 246-3101
MToberoff@ipwla.com




--
**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

3

EXHIBIT 22
208