Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Fax:             (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and as
personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>       Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>       Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DC COMICS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS FOR RELIEF**<br><br>*Opposition; Declaration of Keith G. Adams; Evidentiary Objections; and [Proposed] Order filed concurrently herewith*<br><br>Complaint filed:  May 14, 2010<br>Discovery Cutoff:  None Set<br>Trial Date:  None Set<br><br>Date:     August 20, 2012*<br>Time:    1:30 p.m.<br>Place:   Courtroom 11 |

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| 1. | Jerome Siegel and Joseph Shuster created the character "Superman" in the 1930s; but for years, the pair was unable to find a publisher for their story. | **Undisputed**. |
| 2. | In 1938, DC—which had employed Siegel and Shuster to do other work—elected to include Superman in a new comic book titled *Action Comics*. | **Disputed.**  Siegel and Shuster were not employees of DC in 1938, or before. They worked as independent contractors and DC purchased certain material from them.<br><br>DC's Evidence:  Declaration of Daniel Petrocelli ("PD") Exs. 1, 8, 10 at 80 (FOF 21), 13 at 133, 14 at 141, 40 at ¶ 5, 41 at 343-45 & 408-21.<br><br>Defendants' Evidence:  PD Exs. 2, 3; *Siegel v. Warner Bros Entertainment, Inc.*, 658 F.Supp. 2d 1036, 1070 (C.D. Cal. 2009). |
| 3. | On March 1, 1938, Siegel and Shuster granted to DC the "exclusive right to the use of the [Superman] characters and story." | **Disputed**, to the extent DC purchased the rights to Superman in the March 1, 1938 Agreement for $130 (the "1938 Grant").<br><br>DC's Evidence:  PD Ex. 2. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|-----|--------------------|--------------------|
| | | Defendants' Evidence: Same. *Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1107-10 (C.D. Cal. 2008). |
| 4. | *Action Comics #1* ("*AC#1*"), published on April 18,1938, with a cover date of June, 1938, featured an adapted version of Siegel and Shuster's Superman story along with other stories. | **Disputed**, to the extent that *AC #1* did not feature an "adapted version of Siegel and Shuster's Superman story." Siegel and Shuster reformatted their prior Superman story from a newspaper format to a magazine format.<br><br>DC's Evidence: PD Exs. 8, 41 at 408-21.<br><br>Defendant's Evidence: PD Ex. 10 at 80, ¶21-22; *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909, 911 (2d Cir. 1974). |
| 5. | After *AC#1* was published, Siegel and Shuster continued to supply DC with draft Superman material pursuant to work-for-hire agreements. Siegel and Shuster were compensated for their work in royalties and | **Disputed.** Siegel and Shuster did not work pursuant to "work-for-hire" agreements and were not compensated in royalties and bonuses for Superman comics. The comic book material produced in their Cleveland shop that DC chose to accept was purchased by |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | bonuses, both of which increased with Superman's success. | DC by the page pursuant to page-rate. The term "work-for-hire" did not appear anywhere in the relevant contracts, as it was inapplicable to independent contractors, like Siegel and Shuster, until the mid-1960s. |
| | | DC's Evidence:  PD Exs. 3-6, 10 at 88-91 (FOF 55-59, 64-77). |
| | | Objections to DC's Evidence: Relevancy, prejudicial. Fed. R. Evid. 401, 402, 403. |
| | | Defendants' Evidence:  PD Ex. 10 at 74, ¶14; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 886 (9th Cir. 2005); *Siegel*, 542 F. Supp. 2d at 1111-14. |
| 6. | By 1941, the *Saturday Evening Post* reported that Siegel and Shuster stood to make over $2 million (in today's terms) in the next year alone. | **Disputed**.  The cited article states that Siegel and Shuster, combined, were purportedly being paid $35 a page plus $600 a week.  This statement erroneously implies that Siegel and/or Shuster made "over $2 million (in today's terms)" in 1942, while DC fails |

| No. | Uncontroverted Fact | Defendants' Response |
|-----|--------------------|--------------------|
| | | to specify its financial assumptions and calculations. DC's Evidence:  PD Ex. 7 at 27. Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.  Lack of foundation. Fed. R. Evid. 602. Defendants' Evidence:  PD Ex. 7. |
| 7. | In 1947, Siegel and Shuster sued DC in New York seeking to invalidate the 1938 assignment. The court concluded that the 1938 assignment granted all Superman rights to DC.  In 1948, the parties entered into a stipulated judgment under which Siegel and Shuster acknowledged the 1938 assignment granted to DC all rights in Superman. | **Disputed**, to the extent it omits that the court found that DC misappropriated Jerry Siegel's Superboy while Siegel was overseas fighting for his country in World War II. DC's Evidence: PD Exs. 9, 11-12. Defendants' Evidence:  PD Ex. 10 at 108-110. |
| 8. | In a 1975 agreement, DC provided Siegel and Shuster with, in today's dollars, lump | **Disputed**, to the extent DC's purported in "today's dollars" are misleading, and incapable of verification as DC does not |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works. Siegel and Shuster acknowledged that DC owned all Superman-related copyrights. | disclose its financial assumptions for its supposed calculations.  The 1975 agreement called for monthly payments of $20,000, less withholding taxes, and a lump sum payment of $17,500, $7,500 of which was intended to apply to Siegel and Shuster's legal fees.  Frank Shuster (Joe Shuster's brother) was to be paid $5,000 a year.<br><br>DC's Evidence:  PD Ex. 15.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. Improper lay opinion, lack of sufficient facts and data, lack of foundation.  Fed. R. of Evid. 701, 702.<br><br>Defendants' Evidence:  PD Ex. 15 at 143. |
| 9. | Since 1975, DC has voluntarily increased the annual payments, made periodic cost-of-living adjustments, given special bonuses, and paid to have | **Disputed,** to the extent that it implies DC made "cost-of-living" adjustments for Shuster or his family.<br><br>Objections to DC's Evidence: |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | Siegel, Shuster, and their families travel to Superman-related events. | Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. |
| 10. | All told, the Siegels and Shusters have been paid well over $4 million under the 1975 agreement, not including medical benefits or bonuses. | **Disputed**.  DC does not provide the underlying data, evidence or financial assumptions it used to arrive at this purported figure.  DC also appears to conflate the 1975 agreement, amendments thereto, and the 1992 agreement.<br><br>DC's Evidence:  Decl. of Paul Levitz ("LD") ¶ 4 & Exs. 23, 27, 33, 39, 53, 60, 67, 71.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. Improper lay opinion, lack of sufficient facts and data, lack of foundation.  Fed. R. of Evid. 701, 702.<br><br>Defendants' Evidence:  Same. |
| 11. | Neither Siegel nor Shuster ever attempted to exercise any purported termination right, | **Disputed**, to the extent it implies that Siegel or Shuster did not wish to exercise their termination rights.  Both |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | although the windows for both to do so opened in 1984, while both were alive. | were elderly, infirm and insolvent by the time a notice of termination right could be served, and the earliest effective date of a Superman termination notice was April, 18, 1994. Shuster died on July 30, 1992, and Siegel died on January 28, 1996.  It was Siegel's wish that his widow and daughter exercise the termination right and finally restore his copyrights to his family.<br><br>DC's Evidence: *E.g.*, PD Exs. 25-31, 37.<br><br>Objection to DC's Evidence: Speculative, lack of personal knowledge and foundation.  Fed. R. Evid. 602. Relevancy and prejudicial. Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence: Declaration of Keith Adams ("AD") Ex. 18 at 279:2-5 |
| 12. | Shuster passed away on July 30, 1992. | **Undisputed**. |
| 13. | Shuster had no wife, child, or | **Disputed,** to the extent it omits that |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | grandchild, and his will named his sister, Jean Peavy, as sole beneficiary and "executrix" of his estate. | Shuster's will named Mark Warren Peary as beneficiary in the event Jean Peavy predeceased him and omits that the will states:  "In the event that my sister is for any reason unable or unwilling to act as executrix hereof, I nominate and appoint Mark Warren Peary to act as executor."<br><br>DC's Evidence:  PD Exs. 33 at 275-76, 46 at 443:10-444:9.<br><br>Defendants' Evidence:  PD Ex. 34 at 285-286. |
| 14. | On August 17, 1992, Jean filed a sworn affidavit in California state court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her." | **Disputed,** to the extent it omits that Jean's affidavit stated that the only property to be transferred and delivered to her was "758 shares of Time Warner Common Stock."<br><br>DC's Evidence:  PD Ex. 21.<br><br>Objections to DC's Evidence:  Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|-----|---------------------|----------------------|
| | | Defendants' Evidence:  Same. PD Ex. 21 at 182. |
| 15. | Four days after filing her affidavit in the California probate court, Jean wrote to DC, identifying herself as "heir to [Joe Shuster's] Will" and asking DC to pay Shuster's "final debts and expenses." | **Disputed**, to the extent Jean stated that "Any help that Time Warner could give to the family of Joe Shuster to pay his final debts and expenses would be warmly appreciated." <br><br> DC's Evidence:  LD Ex. 3. <br><br> Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. <br><br> Defendants' Evidence:  LD Ex. 3 at 10. |
| 16. | DC offered to cover Joe's debts and increase survivor payments to his brother Frank from $5,000 to $25,000 per year. | **Disputed**, to the extent it implies that DC initiated an offer.  DC's proposal came in response to Jean's letter. <br><br> DC's Evidence:  LD Ex. 5; PD Ex. 23. <br><br> Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. <br><br> Defendants' Evidence:  LD Ex. 3 at 9- |

| No. | Uncontroverted Fact | Defendants' Response |
|-----|---------------------|----------------------|
|     |                     | 11. |
| 17. | On September 10, 1992, Frank sent a letter to DC's then-Executive Vice President, Paul Levitz, stating he was "extremely pleased" with the increased payments, and asking, after "discuss[ing] this good news with [Jean]," that payments be made directly to Jean, who would "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." Frank asked if he and Jean could meet with Levitz in New York to discuss the issue. | **Disputed,** to the extent it is misleading by omission of subsequent correspondence from Frank, which indicated displeasure with amount and form of pension payments, and insofar as DC purports to characterize Frank's state of mind.<br><br>DC's Evidence:  LD Ex. 6<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.  Inadmissible hearsay.  Fed. R. Evid. 801, 802.  Lack of personal knowledge and speculation. Fed. R. Evid. 602.<br><br>Defendants' Evidence:  LD Exs. 20 at 43 ("[W]e are merely asking for a fair share."), 25. |
| 18. | Levitz dealt with scores of authors and heirs during his decades running DC.  When DC agreed to grant an author or heir's request for additional | **Disputed,** as to "scores of authors and heirs."  Levitz states only that he dealt with former writers and artists "from time to time." |

10

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|-----|---------------------|----------------------|
|  | money, Levitz would give them the same admonition:  this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC. Levitz reiterated this condition to Frank and Jean in 1992, who confirmed they understood and agreed. | DC's Evidence:  LD at ¶ 8<br><br>Objections to DC's Evidence: Insufficient to establish "habit" evidence.  Fed. R. Evid. 406. Relevancy.  Fed. R. Evid. 401, 402.<br><br>Defendants' Evidence:  Same. |
| 19. | The parties executed an agreement on October 2, 1992, confirming that DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life.  In exchange, Jean and Frank re-granted all of Joe Shuster's rights (including any Superman copyrights) to DC and vowed never to assert a claim to such rights.<br>The 1992 agreement stated, in pertinent part:<br>We [DC] ask you to confirm by your signatures below that this agreement fully settles all | Disputed.  The 1992 Agreement did not "re-grant" "all of Joseph Shuster's rights (including any Superman copyrights) to DC."  The 1992 Agreement is silent on Joe Shuster's rights; its short quitclaim concerned only the rights, *if any*, held by Frank and Jean.  Since Joe Shuster's Superman copyrights were long ago assigned to DC in the 1938 Grant and subsequent Siegel and Shuster copyright grants, Frank and Jean could not in 1992 assign to DC Superman copyrights that were already long-owned by DC.  The 1992 Agreement does not even |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever. | mention Superman.  Accordingly, Paul Levitz (DC's former President) nowhere states in his declaration that the 1992 Agreement involved a "re-grant" of Joe Shuster's Superman copyrights. DC's Evidence:  LD Ex. 8. Objections to DC's Evidence: Speculative, improper argument, improper lay opinion, improper conclusions of law.  Fed. R. Evid. 602, 701, 702.  Relevancy.  Fed. R. Evid. 401, 402. Defendants' Evidence:  Same. |
| 20. | Over the next decade, DC maintained good relations with the Shusters, and Jean and Levitz corresponded regularly. In the close to 60 letters back and forth between Paul and Jean, Jean thanked DC for its generosity, reaffirmed the 1992 agreement, and requested bonus payments in excess of those required. | **Disputed**.  In many of the letters DC points to (Exs. 10, 17, 20, 25, 26, 29, 32), Jean expresses displeasure at the amount and form of her pension payments and requests changes.  In others letters DC points to (Ex. 23, 27), DC refuses to grant these requests, stating that DC is under no legal obligation to do so.  Jean had tremendous difficulty living on a pension of $25,000 (split two ways after |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
|  |  | withheld taxes) and was forced to beg DC for periodic Christmas bonuses.<br><br>DC's Evidence:  LD ¶ 9 & Exs. 3, 10, 11, 16-20, 22-35, 37, 39, 41-43, 45-61, 63-74, 77-78.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  LD Exs. 10, 17, 20, 23, 25, 26, 27, 29, 32, 74. |
| 21. | In a 1993 letter, Jean confirmed she would "stick to our bargain" and not attempt "to reclaim the SUPERMAN copyright," but asked for an increase in payments "plus a yearly increment to account for inflation." | **Disputed**.  DC misleadingly combines Jean's statements in her letter.  Jean stated that at the present time "Frank and I are not planning to reclaim the SUPERMAN copyright."  Jean further stated:  "We believe we have a right to expect that you will be fair with us as well and will grant our request for increased payment.  We will stick to our bargain…."  Moreover, as DC knew, neither Frank nor Jean had any "right to reclaim the SUPERMAN copyright," as siblings have never held a termination |

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | right under the Copyright Act, 17 U.S.C. 304(c)(2).<br><br>DC's Evidence:  LD Ex. 20.<br><br>Objections to DC's Evidence:  Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same. |
| 22. | In 1999—after Congress amended the copyright statute to grant additional statutory heirs termination rights, 17 U.S.C. § 304(d), and after learning that Jerry Siegel's heirs had served Superman copyright termination notices on DC—Jean reiterated her commitment "to honor" the 1992 Agreement, and again asked for a bonus:<br><br>I have learned from the Internet that Joanne Siegel has filed a copyright claim for SUPERMAN.  I want you to know that I intend to continue to honor our pension agreement.  I would, however, appreciate a generous bonus for this year as you had done many times in the | **Disputed**, to the extent it falsely implies that Jean was ever a statutory heir (she was not) or ever held termination rights (she did not).  17 U.S.C. § 304(c)(2)(D) extends termination rights to the executor, personal representative or administrator of an author's estate in the event an author (like Joe Shuster) is not survived by a spouse, child or grandchild.  Joe Shuster's siblings, Frank and Jean have never held termination rights under the Copyright Act, 17 U.S.C. § 304(c)(2), and the 1992 Agreement cannot waive, release or encumber the inalienable termination right of the executor of Joe Shuster's |

14

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | past. | estate.  17 U.S.C. § 304(c)(5).<br><br>DC's Evidence:  LD Ex. 59.<br><br>Objections to DC's Evidence:<br>Relevancy and prejudicial.  Fed. R.<br>Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same. |
| 23. | In 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. | **Disputed,** to the extent it is misleading as to amounts of bonuses.  In all but two years (1993 and 2001), the bonus was $10,000.<br><br>DC's Evidence:  LD Exs. 23, 27, 33, 39, 53, 60, 67, 71.<br><br>Objections to DC's Evidence:<br>Relevancy and prejudicial.  Fed. R.<br>Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same. |
| 24. | In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal rights to make such requests, | **Undisputed**, but irrelevant.<br><br>Objections to DC's Evidence:<br>Relevancy and prejudicial.  Fed. R. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
|  | but would pay her a bonus anyway, which she thanked DC for doing. | Evid. 401, 402, 403. |
| 25. | DC has paid the Shusters over $610,000 under the 1992 agreement and as special bonuses, and DC continues to make payments to Jean to this day. | **Disputed,** to the extent that there is no evidence that the Shusters were paid "over $610,000" in 1992-2012 under the 1992 Agreement and as bonuses.<br><br>DC's Evidence:  LD ¶ 9 & Exs. 23, 27, 33, 39, 53, 60, 67, 71.<br><br>Objections to DC's Evidence:  Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Exhibits:  Same. |
| 26. | Jean's 50-year-old son, Mark Peary (born Peavy), who lives with his mother and does not have a job, testified that Jean was of sound mind when she sent these letters to DC. | **Disputed**, to the extent that Mark Peary shares a house with his mother and his sister, Dawn Peavy, and is self-employed as an investor and published author.<br><br>DC's Evidence:  PD Ex. 46 at 443:19-444:22.<br><br>Objections to DC's Evidence: |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|-----|---------------------|----------------------|
|  |  | Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.  Defendants' Evidence:  PD Ex. 46 at 444:9-444:22; AD Ex. 17 at 363:14-365. |
| 27. | Mark Peary, Jean's doctor, and Jean's daughter testified that, after "suffer[ing] a debilitating stroke in May of 2009," Jean has aphasia, and has difficulty communicating and "understand[ing] what people are saying." | **Undisputed**, but irrelevant.  Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. |
| 28. | In 1996, Peary sent Levitz a screenplay about "the life story of Joe Shuster and Jerry Siegel" called "Dreamers," and asked Levitz to share it with Warner Bros. Peary's screenplay detailed how Shuster became estranged from DC, but toward the end of his life, he and DC made amends. | **Disputed**.  The screenplay "Dreamers" was a fictionalized account of Shuster's life and did not purport to portray his actual relationship with DC.  DC's Evidence: LD ¶ 10 & Ex. 44.  Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. Inadmissible hearsay.  Fed. R. Evid. 801, 802.  Lack of foundation and personal knowledge. |

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | Fed. R. Evid. 602.<br><br>Defendant's Evidence:  LD Ex. 44; PD Ex. 46, 450:12-452:3. |
| 29. | Warner Bros. declined to develop "Dreamers," and in 1999, Peary submitted a revised script and asked Levitz if the Siegel family's copyright termination effort would "interfere with [him] selling [his] screenplay." | **Undisputed**, but irrelevant.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403. |
| 30. | Before Peary met Marc Toberoff, he never told DC the Shusters had a right to terminate or challenged the 1992 Agreement. Instead, from 1992 to 2001, he and Jean affirmed the Agreement and accepted payments under it. | **Disputed**.  Peary never affirmed or even mentioned the 1992 Agreement in the letters DC cites.  Peary was not a party to the 1992 Agreement and did not receive any payments under it.  Jean raised concerns about the terms of the 1992 Agreement less than two months after signing it and thereafter repeatedly asked DC to increase her pension, which DC denied.<br><br>Furthermore, this Court has clearly held that the acceptance of benefits under a pension agreement is not a bar to |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | termination, in a ruling incorporated into a judgment that DC did not challenge on appeal. *Siegel I*, 542 F. Supp. 2d at 1132-34.<br><br>DC's Evidence:  *E.g.*, LD ¶ 10 & Exs. 20, 23, 24, 26, 27, 28, 33, 34, 39, 43, 53, 54, 59, 60, 61, 67, 68, 71, 72.<br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same; LD Exs. 10, 17, 45, 52, 66, 70. |
| 31. | In a November 2001 "Joint Venture Agreement," Peary and Jean formed a joint venture with Toberoff's company Pacific Pictures Corporation "for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations." Jean and Peary "transfer[ed] and | **Disputed,** to the extent that the 2001 agreement could not have transferred or assigned to the joint venture either the termination rights or the future copyright interests recovered as a result of exercising such termination, as a matter of copyright law.  17 U.S.C. §§ 304(c)(5)-(6)(B), 203(a)(1)–(5).   The only person eligible for the termination right under the Copyright Act, 17 U.S.C. § 304(c)(2),  is the executor, personal representative or administrator |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | assign[ed]" the following "Rights" to the Joint Venture: The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books…. The agreement provided that "in the event of termination of the Venture for any reason, all Rights, property or assets of the Venture will be held fifty percent (50%) by [the Shusters] and fifty percent (50%) by [Pacific Pictures]." | of the estate of Joseph Shuster, and the estate was not probated and Mr. Peary was not appointed as its executor until 2003.<br><br>In 2003, after the Shuster Estate was probated, a new agreement was made between PPC and the Shuster Executor (the "2003 PPC Agreement"). As such, the 2001 PPC Agreement is legally inapplicable.  Furthermore, in 2004, both PPC Agreements were revoked in 2004 and replaced by a legal retainer agreement.<br><br>DC's Evidence:  PD Ex. 32.<br><br>Defendants' Evidence:  Same.  AD Exs. 13, 27. |
| 32. | Toberoff, Jean, Peary, and the Shuster Estate reaffirmed the terms of the Pacific Pictures Joint Venture in a 2003 amendment "confirm[ing]" that the joint venture held the | Disputed.  Jean was not a party to the 2003 PPC Agreement, and had no rights or obligations under it.  The only parties to the 2003 PPC Agreement were PPC and the Executor of the Estate of Joseph Shuster. The Shuster Executor, |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | Estate's "copyright termination interest in 'SUPERMAN' pursuant to Section 304(d) of the U.S. Copyright Law." | appointed in October of 2003, was party only to the 2003 PPC Agreement which did not purport to transfer any termination rights to PPC, but rather provided PPC with a contingent share of proceeds, if any, from recaptured copyright interests. <br><br> The 2003 agreement could not have transferred or assigned to the joint venture the termination right or the future copyrights to be recovered by termination as a matter of copyright law, 17 U.S.C. §304(c)(5)-(6)(B), §203(a)(1)–(5), nor did it even purport to assign either. The 2003 agreement provided that future proceeds, if any, from recovered copyrights would be shared. <br><br> DC's Evidence: PD Ex. 36. <br><br> Defendants' Evidence: Same at ¶1, 10. |
| 33. | Peary admits that, in 2003, he understood "that all of the Joe Shuster rights, termination | **Disputed,** to the extent that Peary did not say the quoted language. Also disputed to the extent that it omits that |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | rights, to the extent they existed, were being transferred and assigned to the venture just as [the contract] says." | Peary later learned in discussions with Toberoff that the contract was invalid.<br><br>DC's Evidence:  PD Ex. 46 482:8-23.<br><br>Objections to DC's Evidence:  Improper lay opinion and legal conclusions. Fed. R. of Evid.  701, 702.  Relevancy.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same. |
| 34. | Peary concedes, as did Toberoff, that these Pacific Pictures agreements are "not lawful," because, inter alia, the Shusters could only make such a rights deal with DC. Peary testified he was unaware that the agreements were unlawful when he signed them and filed the Notice. | Disputed.  Peary did not testify that the PPC agreements are "not lawful" because the Shusters could only make such a rights deal with DC.<br><br>DC's Evidence:  PD Ex. 46 at 485:16-488:21; Docket No. 191 at 8.<br><br>Defendants' Evidence: Same. |
| 35. | Peary negotiated the Pacific Pictures agreements directly with Toberoff, and without receiving any outside advice from counsel. | Disputed, to the extent that it omits that Toberoff advised Peary to seek outside counsel.<br><br>DC's Evidence:  PD Ex. 39 at 319:9- |

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | 320:14.<br><br>Objections to DC's Evidence:<br>Relevancy and prejudicial.  Fed. R.<br>Evid. 401, 402, 403.<br><br>Defendants' Evidence:  AD Ex. 19 at<br>320:19-23. |
| 36. | Peary only told his mother about the Pacific Pictures agreements "just before [they] were ready to sign." | **Disputed** as the quoted language was used by DC's counsel, and not used or adopted by Peary.<br><br>DC's Evidence:  PD Ex. 46 at 492:20-493:11.<br><br>Objections to DC's Evidence:<br>Relevancy and prejudicial.  Fed. R.<br>Evid. 401, 402, 403.<br><br>Defendants' Evidence:  PD Ex. 46 at 492:5-493:14. |
| 37. | When asked years ago about the Pacific Pictures agreements, Jean testified her "son handles everything legal" and she did not "know what's going on." | **Disputed**.  Jean was not asked about the PPC agreements.  She was asked about the 1992 Agreement and whether she knew if her brother's estate had made any claims to the Superman copyright. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | DC omits parts of Jean's testimony; her answer was limited to the specific issue of whether the Estate had made claims, and she stated: "I don't know what's going on *there*."<br><br>DC's Evidence: PD Ex. 38 at 310:14-312:13.<br><br>Objections to DC's Evidence: Relevancy and prejudicial. Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence: PD Ex. 38 at 312:1-312:13. |
| 38. | In 2003, Peary initiated proceedings to probate Joe Shuster's estate—even though, in 1992, his mother had already filed an affidavit in California probate court to obtain all of Shuster's assets. Peary asked the court to appoint him executor in place of his mother. | **Disputed**, in that it was the elderly Jean (86) not Mr. Peary, who asked that he be appointed in Jean's place. Disputed in that it misleads by omission of the following: In 2003 Joseph Shuster's estate was expressly probated in California Superior Court for the express purpose of availing itself of the termination right that for the first time had been extended to the executor of an |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | | author's estate by the 1998 Copyright Termination Extension Act ("CTEA"). The Court found this to be reasonable and acceptable and duly appointed Mark Warren Peary as the personal representative of Joseph Shuster's estate, including for the express special purpose of exercising and enforcing the termination right under 17 U.S.C. § 304(c)(2)(d).   When Joseph Shuster died, no one held his termination rights, and because he died with minimal assets consisting of some shares of stock, his estate was not probated by Jean in 1992. Instead, per Cal. Prob. Code § 13101, Jean filed an affidavit requesting that such stock be transferred to her.<br><br>DC's Evidence:  PD Exs. 21, 33-34.<br><br>Evidentiary Objections:  Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  Same; PD Ex. 21 at 182. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| 39. | Peary has kept this probate matter open for nine years—despite his sworn responsibility as executor to "complet[e] the estate administration as promptly as possible." | **Disputed**, in that DC erroneously implies that Mr. Peary has not fulfilled his responsibilities as executor of Joseph Shuster's estate.  The estate was specifically probated to avail itself of the termination right under the 1998 CTEA, 17U.S.C. § 304(d).<br><br>Because a notice of termination as to the early Superman copyrights (*e.g.*, AC#1) would not be effective until 2013 (*i.e.*, 1938 + 75 years) at the earliest under 17 U.S.C. § 304(d)(2), and because the copyright interests cannot be transferred prior to the effective date of termination per 17 U.S.C. § 304(c)(5), the estate has properly been kept open until at least the termination takes effect in 2013.<br><br>DC's Evidence:  PD Ex. 35.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  PD Exs. 33-34. |

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| 40. | Several weeks after initiating the probate matter and signing the 2003 Pacific Pictures Joint Venture contract, Peary, on behalf of the newly formed Shuster Estate, served a copyright termination notice on DC purporting to take effect on October 26, 2013 (the "Notice"). The Notice nowhere mentions the Joint Venture with Pacific Pictures, or the fact that the Shusters had transferred all their putative termination interests to the Venture. | **Disputed**, in that the Shuster Termination was served many months after the probate case was initiated and after Peary had been appointed as the Shuster Executor.  Disputed in that neither Jean nor Peary, individually or as the executor of the Shuster estate, could have transferred or assigned to the joint venture the termination right or the future copyright interests to be recovered pursuant to statutory termination, as a matter of copyright law.  17 U.S.C. §§ 304(c)(5)-(6)(B). <br><br> DC's Evidence:  PD Ex. 37. <br><br> Defendants' Evidence:  Same. |
| 41. | Attached to the Notice were sworn certifications by Toberoff and Peary that all information contained in the Notice was "true and correct" and "signed by all persons whose signature is necessary to terminate" Shuster's copyright grants. Toberoff also certified in the | **Disputed.**  As required by 37 C.F.R. §201.10 (d), Mr. Toberoff duly certified that he "caused a reasonable investigation to be made as to the current ownership of the rights being terminated, including a search of the records in the U.S. Copyright Office." Mr. Peary duly certified, but was not required to swear, that "[t]o the best [of |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | Notice that "that before serving the foregoing document …, I caused a reasonable investigation to be made as to the current ownership of the rights being terminated." | his] knowledge and belief, this notice has been signed by all persons who signature is necessary to terminate said grants under Section 304(d) of Title 17, United States Code."<br><br>DC's Evidence:  PD Ex. 37 at 303-304.<br><br>Defendants' Evidence:  PD Ex. 37 at 303. |
| 42. | In 2008, Peary and Jean signed a "consent agreement" with the Siegels that bars the families from entering into an agreement with DC without the consent of the other. | Disputed, in that it implies that the agreement was titled or characterized itself as a "consent agreement," which DC's evidence does not support.<br><br>DC's Evidence:  PD Exs. 46 at 458:21-459:25, 461:19-462:9, 465:25-469:1, 472:8-473:11, 47 at 500:10-501:24, 504:20-506:13, 509:15-511:8. |
| 43. | Peary conceded the "consent agreement" was signed by himself, "Laura [Larson], Joanne Siegel," and "Toberoff" in 2008; that it provides that "any agreement with DC or | Disputed, in that it misleadingly implies that Mr. Toberoff signed the 2008 agreement as a party to the agreement.  Mr. Toberoff was not a party to the 2008 agreement, and expressly signed it as the Siegels' and |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|---|---|---|
| | settlement with DC requires the consent of the Siegels"; and that it is "still in effect" today. | Shuster estate's attorney, to approve the form of the agreement only.  Disputed in that DC cites to irrelevant testimony of Ms. Larson concerning Mr. Toberoff's contingency fee in an attempt to elicit bias (PD Ex. 47 at 509:15-511:8).  Disputed in that DC falsely attributes the testimony of Ms. Larson to Mr. Peary, who nowhere states that "any agreement with DC or settlement with DC requires the consent of the Siegels."<br><br>DC's Evidence:  PD Exs. 46 at 458:21-459:25, 461:19-462:9, 469:5-7, 47 at 509:15-511:8; *see also* Docket No. 160 at 63, 231 at 6.<br><br>Defendants' Evidence:  AD Ex. 26 at 369:1-4 . |
| 44. | After this Court held in the related Siegel case that "promotional announcements" featuring the first appearance of Superman fell outside the termination window of § 304(c) | **Disputed,** in that the Court was referring to certain identified "promotional announcements," not such announcements in general, and disputed as to the term "purporting." |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Uncontroverted Fact | Defendants' Response |
|-----|---------------------|----------------------|
|  | of the Copyright Act, both the Siegel and Shuster heirs served new termination notices in 2012 purporting to terminate the announcements. | DC's Evidence:  PD Exs. 41 at 369-70, 49-50.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.<br><br>Defendants' Evidence:  PD Ex. 49, 50. |
| 45. | Joe Shuster's original wish, as embodied in the 1975 agreement, was to take care of Frank Shuster because of the assistance Frank had rendered on the early Superman strips as a letterer, and because Frank had taken Joe in during the 1960s; he had never known or understood Joe to want to provide for Jean. | **Disputed**.<br><br>DC's Evidence:  LD ¶ 7.<br><br>Objections to DC's Evidence: Relevancy and prejudicial.  Fed. R. Evid. 401, 402, 403.  Lack of foundation and personal knowledge. Fed. R. Evid. 602.  Improper opinion testimony.  Fed. R. Evid. 701. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

## DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
| 46. | Author Jerome Siegel and illustrator Joseph Shuster co-created Superman in high school in 1933-34 | PD Ex. 10 at 77, ¶8. |
| 47. | Siegel and Shuster's highly original character became a cultural icon, spawned a multi-billion dollar franchise and brought fortune to many, but not to them. | AD Ex. 1-3, 5, 6. |
| 48. | On March 1, 1938, Siegel and Shuster, without counsel, signed an agreement furnished by DC under which they were paid $130 ("1938 Grant") for the rights to their Superman story. | PD Ex. 10 at 81, ¶24. |
| 49. | The 1938 exchange of the rights to Superman for $130 is often cited as the prime example of the type of unremunerative grant the termination right was enacted to remedy. | Edward E. Weiman, Andrew W. DeFrancis, Kenneth D. Kronstadt, "Copyright Termination for Noncopyright Majors: An Overview of Termination Rights and Procedures", 24 INTELL. PROP. & |

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | | TECH. L.J. 3, 4 (2012) ("First, Congress sought to protect …first-time authors who, when faced with no alternative, might assign their copyrights for little compensation. For example, when Jerry Siegel and Joe Shuster sold the rights to the Superman character to DC Comics for $130."); Timothy K. Armstrong, "Shrinking the Commons: Termination of Copyright Licenses and Transfers for the Benefit of the Public," 47 HARV. J. ON LEGIS. 359, 399-400 (2010) ("Siegel and Shuster's situation exemplified a pattern that, the legislative history suggests, occurred all too frequently…"). |
| 50. | Although Superman soon became a phenomenal financial success, DC kept its creators at a basic "page rate," and denied their requests for a simple royalty. | AD Exs. 1, 3. |
| 51. | In 1947, Siegel and Shuster filed suit against DC in Westchester N.Y. (the "1947 Action"). | *Siegel v. National Periodical Publications*, 508 F.2d 909, 912 (2d Cir. 1974). |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| 52. | The court in the 1947 Action ultimately held (a) that DC owned Superman pursuant to the 1938 Grant but (b) that DC had stolen Superboy from Siegel, while he was overseas fighting for his country in WWII. The parties thereafter settled the case. | PD Ex. 10 at 108-110, 12 at 120. |
| 53. | In retaliation for the 1947 Action, DC cut Siegel and Shuster off, and from 1949-1975, deleted their credit byline and any references to them from its publications and corporate histories. | AD Ex. 3 at 8. |
| 54. | Siegel's last job was as a mail clerk, and Shuster worked intermittently as a messenger boy. | AD Ex. 2. |
| 55. | In 1969, Siegel and Shuster commenced a federal action seeking declaratory relief as to ownership of the Superman renewal copyrights. | *Siegel*, 508 F.2d at 912-13. |
| 56. | The 1969 lawsuit resulted in Second Circuit's decision in *Siegel*, 508 F.2d at 912-13, that | *Siegel*, 508 F.2d at 912-13. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | DC owned the renewal copyright to Superman pursuant to the 1938 Grant. | |
| 57. | In 1975, the National Cartoonists Society and the Cartoonists Guild launched a public-relations campaign against DC and its parent, Warner Communications, to protest DC's shabby treatment of Siegel and Shuster. | AD Ex. 2. |
| 58. | In 1975, Warner finally agreed to pay Siegel and Shuster an annual pension of $20,000, and restored their creator credits after 26 years (the "1975 Agreement").  The agreement did not transfer the Superman copyrights and expressly acknowledged that such rights were already owned by DC. | PD Ex. 15. |
| 59. | The 1975 Agreement also provided that, after Shuster's death, Warner would pay his brother Frank an annual pension of $5,000. | PD Ex. 15 at 144. |
| 60. | Joseph Shuster died on July 30, 1992 without widow or child, but | PD Ex. 20. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | was survived by his siblings Frank Shuster and Jean Peavy. | |
| 61. | As Shuster had minimal assets, comprised only of a few shares of stock, his estate was not probated. Per Cal. Prob. Code § 13101, Jean Peavy filed an affidavit requesting that the stock be transferred to her. | PD Ex. 21. |
| 62. | Upon Joe Shuster's death in 1992, no person or entity had a right to terminate his copyright grants to DC until the CTEA became effective in 1998 and extended the termination right to the executor of an author's estate. | 17 U.S.C § 304(c)(2) (1978); 17 U.S.C. §304(d). |
| 63. | Shuster's will nominated Jean as executrix of his estate and stated that, in the event Jean declined to serve, Mr. Peary should be appointed as executor. | PD Ex. 33 at 275. |
| 64. | On July 15, 2003, Joseph Shuster's nephew Mark Warren Peary petitioned the Superior Court of the State of California to probate Shuster's estate. As Jean | PD Ex. 33 at 270, 280-281. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
|     | was 86, she declined to serve as executrix, and nominated Mr. Peary in her place. | |
| 65. | On October 7, 2003, the Court duly appointed Peary as Executor of Shuster's estate in accordance with his will and granted him the "special power … to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(c) of the United States Copyright Act, 17 U.S.C. §304(d), incorporating without limitation 17 U.S.C. §304(c)(2)(D), and to maintain and defend on behalf of the decedent and the estate all proceedings … in connection with this action." | PD Ex. 34. |
| 66. | On August 1, 1992, DC entered into a short agreement with Frank Shuster and Jean Peavy to raise their pension to $25,000.  The full text of this agreement was as follows:<br>This is to confirm our agreement to pay you, collectively, a total of | PD Ex. 24. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
| | $25,000 a year, payable to Jean Shuster Peavy, commencing August 1, 1992, for as long as either one of you is alive. Such amounts shall be payable in accordance with Warner Communication Inc.'s customary payroll practice and shall be subject to all applicable withholding taxes. If Jean Shuster Peavy shall predecease Frank Shuster, then the foregoing payments shall be made to Frank Shuster for as long as he shall live. | |
| | We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever. | |
| | If, despite the terms of this agreement, either of you assert any such claim of right, for any reason, you agree to refund to us, upon the making of any such assertion, all amounts previously paid to you hereunder, and we will have no obligation to make any further payments under this agreement. We also reserve all of our other rights, remedies and defenses in such an event. If after full consideration of the foregoing, you accept and agree to all of the above, please so | |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | indicate by signing below where indicated. | |
| 67. | The 1992 Agreement contains only three obligations of Frank and Jean:  they settled with DC any claim to payment that they had; and they quitclaimed to DC and covenanted not to assert any rights that they held relating to Joseph Shuster's works. | PD Ex. 24. |
| 68. | The 1992 Agreement:  does not mention termination rights, or purport to limit or waive the termination right; does not mention Superman or Joseph Shuster's key 1938 grant of copyright or subsequent Superman grants; and does not include the terms revoke,  rescind, supersede, replace, extinguish, or any other synonyms.  Nor was the Shuster Executor a party to the agreement. | PD Ex. 24. |
| 69. | The 1992 Agreement was not negotiated by statutory heirs within an open termination | 17 U.S.C 304(c)(2).  LD Ex. 3-8. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
|     | window during which they could meaningfully leverage their termination rights.  Furthermore, Jean and Frank negotiated the agreement without the assistance of counsel and there was no meaningful back and forth over its terms. |  |
| 70. | On the same date as the 1992 Agreement, October 2, 1992, Frank signed a letter addressed to Paul Levitz, then-President of DC, stating that in consideration for the 1992 Agreement Frank was waiving his rights under the 1975 Agreement (to a $5,000 pension).  The full text of the letter is as follows:<br><br>In consideration of the agreement dated as of August 1, 1992 between DC Comics, myself and Jean Shuster Peavy, I hereby waive any rights or remedies that I may have under the agreement dated December 23, 1975 between Warner Communications Inc., Jerome Siegel and Joseph Shuster. | LD Ex. 9. |
| 71. | Neither Paul Levitz's Declaration nor his contemporaneous | LD Ex. 5, 8, 9. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | correspondence with Jean Peavy/Frank Shuster **ever** describes the 1992 Agreement as a revocation of Joseph Shuster's Superman copyright grants nor as a re-grant of his Superman copyrights, nor suggests that this was the parties' intent. | |
| 72, | Paul Levitz, then-President of DC, characterized the 1992 Agreement as a small act of charity in the "spirit" of the 1975 agreement. | LD at 2; LD Ex. 5 at 27. |
| 73. | On September 7, 1993,  Levitz wrote to Jean:  "As I hope you recall from our meetings in New York, we've done extensive research into the copyright act [sic] and any potential rights that you and Frank may have as Joe's siblings and survivors.  It is our firm conviction based on that research and expert counsel, that you don't have any legal rights or claims whatsoever."  Levitz then went on to say:  "After his [Joe | LD Ex. 23 at 47. |

40

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | Shuster's] death, we [DC] raised $5,000 to $25,000 a year without any legal obligation to do so in deference to Joe's memory and your role in his life." | |
| 74. | Prior to filing this lawsuit in 2010, DC never asserted that the 1992 Agreement was the basis for its chain-of-title to Superman; nor did it ever suggest that the 1992 Agreement prevented termination as a "revocation and re-grant" or otherwise. | LD Ex. 74. |
| 75. | DC admitted, and the Court agreed, that it co-owns the original Superman copyrights based on Shuster's 1938 Grant (not the 1992 Agreement). *Siegel*, 542 F. Supp. 2d at 1142. | LD Ex. 74 at 256-257; AD Ex. 14 at ¶¶ 12, 17, 26, 37, 137(g). |
| 76. | Elaborate rights agreements (including short form assignments for filing with the Copyright Office) customarily are used by Warner/DC to create valid chains-of-title to copyrights. | AD Exs. 8, 9, 11. |
| 77. | In the years following the 1992 | LD Exs. 10, 17, 20, 25, 26, 29, 32. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
|     | Agreement, Frank Shuster and Jean Peavy struggled to get by. Requests for increases in their pension were denied, although periodic bonuses were granted. |  |
| 78. | In 2001, spurred by the well-publicized Siegel termination, Mr. Peary, sought the advice of an attorney, and contacted Mr. Toberoff. | AD Ex. 26 at 372:3-373:25. |
| 79. | In November 2001, Jean and Mr. Peary entered into an agreement with Pacific Pictures Corp. ("PPC"). Both signed the agreement in their individual capacities. Shuster's Estate had not yet been probated and there was no Executor. The Shuster Executor was thus not a party to the Agreement. | PD Ex. 32 at 266.   AD Ex. 19 at 313:17-314:11. |
| 80. | Peary did not mislead Jean about the PPC Agreements, as misrepresented by DC without any support for this. | PD Ex. 38 at 312:1-312:13; Docket 305-37 (Peary's full testimony). |
| 81. | Peary did not rewrite Jean's will to name himself her sole heir, as | Docket 360-2 at 235-36. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | misleadingly stated by DC without any evidence of this. | |
| 82. | As trusts and estates attorney probated the estate of Joseph Shuster, and Mr. Peary was appointed as its executor. | PD Exs. 33, 35, 39 at 318:8-13. |
| 83. | In October 2003, the Executor of the Shuster Estate (the "Shuster Executor") and PPC entered into the 2003 PPC Agreement. This agreement did not purport to transfer the termination interest to PPC, but provided PPC with a contingent share of proceeds, if any, from any recovered copyright interests. | PD Ex. 36. |
| 84. | In November-December 2003, the Shuster Executor filed in the U.S. Copyright Office and served on DC a formal notice of termination under 17 U.S.C. § 304(d), terminating Joseph Shuster's 1938 Grant and subsequent Superman copyright grants, with an effective termination date of October 26, 2013 (the "Shuster | PD Ex. 37. |

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | Termination"). The Shuster Termination was signed by Mark Warren Peary as executor of the Shuster Estate. The notice properly stated that it "has been signed by all persons whose signature is necessary to terminate said grants under Section 304(d) of Title 17, United States Code." | |
| 85. | In 2004, the parties cancelled and revoked the PPC Agreements, replacing them with a legal retainer agreement, retroactive to 2001. | AD Exs. 13, 27. |
| 86. | On April 28, 2005, DC sent a letter to the Shuster Executor that offered to settle with the Shusters at the expense of the Siegels. The Shuster Executor declined this offer. | LD Ex. 74; AD Ex. 15. |
| 87. | PPC was dissolved in 2009. | AD Ex. 21. |
| 88. | On August 2, 2011, Toberoff, Jean and Peary confirmed their intent that PPC would have no continuing interest whatsoever when they revoked the PPC | AD Ex. 28. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
|     | Agreements in 2004. |          |
| 89. | On April 28, 2005, DC sent a letter to the Shuster Executor that alluded to DC's arguments against the terminations in the *Siegel* litigation, and offered to settle with the Shusters at the expense of the Siegels.  The letter stated, "DC will only pay a premium to one termination party." It also noted, "[I]f we are able to resolve matters with the Siegel heirs … *before* we reach an agreement with you. . . there will not be any pressing need to reach an agreement with you." The letter offered the Shuster Executor a cash advance of two million dollars and royalties. | LD Ex. 74. |
| 90. | The 2008 Consent Agreement was entered into by the Siegel heirs, the Shuster Executor and Jean. Mr. Toberoff was not a party to the 2008 Consent Agreement. | AD Exs. 22 at 333-335, 25 at 352-53. |
| 91. | The 2008 Consent Agreement | AD Exs. 22 at 333-335, 25 at 352- |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | simply requires the consent of the parties thereto to any settlement of their recaptured copyrights with DC. | 53. |
| 92. | The Shuster Estate remains unable to grant its recaptured copyrights to anyone but DC until the effective date of its termination in October 2013 pursuant to 17 U.S.C. 304(d)(2). | 17 U.S.C. § 304(d)(2). |
| 93. | Magistrate Judge Zarefsky rejected DC's arguments that the Consent Agreement constitutes "an independent wrong [that] violates the Copyright Act," and found, instead, that it is a legitimate "Drysdale-Koufax collective approach to negotiation." This Court duly upheld that ruling. | AD Exs. 22, 23, 26. |
| 94. | The 2001 and 2003 PPC Agreements were voluntarily produced to DC in the *Siegel* litigation by November 2006. | AD Ex. 18. |
| 95. | DC also took deposition testimony regarding the PPC | PD Exs. 46 at 458:21-459:25, 461:19-462:9, 469:5-7; AD Exs 17 |

46
DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|---|---|---|
| | Agreements in 2006 | at 289:11-290:4, 19 at 305:17-306:5. |
| 96. | DC's in-house counsel admitted to reading the anonymous "Timeline" in 2006. | AD Ex. 20 at 325-26 ¶3. |
| 97. | In 1997, Jerry Siegel's widow and daughter served notices of termination, entitling them to a share of Superman profits from 1999.  DC refused to pay, and four years of grinding negotiations did not result in a settlement. | *Siegel I*, 542 F. Supp. 2d at 1114-16. |
| 98. | In 2004, the Siegels filed suit, represented by Mr. Toberoff, to vindicate their recaptured copyrights.  In 2008-2009, Warner/DC suffered serious setbacks, as the Court held that the Siegels had successfully recaptured their original Superman copyrights by valid statutory termination. | *Siegel*, 542 F. Supp. 2d 1098, 658 F. Supp. 2d 1036 (C.D. Cal. 2009). |
| 99. | In 2010, DC fired its general counsel and outside counsel, and, after settlement talks with the | AD Ex. 28. |

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Additional Statement Of Undisputed Fact | Evidence |
|-----|------------------------------------------|----------|
|     | Siegels were unsuccessful, sued Mr. Peary and Mr. Toberoff. |  |

## CONCLUSIONS OF LAW

As set forth in Defendants' Opposition and Proposed Order:

1.      There is no basis to grant DC summary judgment, and summary judgment should be granted in defendants' favor, on Section (1) of DC's First Claim for Relief (Docket No. 49 ("FAC") ¶¶107-11) regarding the 1992 Agreement between DC and Joe Shuster's siblings, Frank Shuster and Jean Peavy.

The 1992 Agreement had no effect on termination rights because:  (i) siblings have never held termination rights, 17 U.S.C. § 304(c)(2); (ii) the 1992 Agreement nowhere mentions termination; (iii) the Shuster Executor was not a party to the 1992 Agreement; (iv) *no one* held termination rights in 1992, as Shuster left no widow, child or grandchild; (v) there was no possibility of termination until the 1998 Copyright Term Extension Act ("CTEA") extended the termination right to an author's estate, 17 U.S.C. §§304(c)(2)(D), and (vi) even if the Shuster Executor had been a party to the 1992 Agreement, the termination right and/or the copyrights recaptured by termination could not be assigned or waived, and termination may be exercised "notwithstanding any agreement to the contrary."  *See* 17 U.S.C. § 304(c)(5); § 304(c)(6)(B); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002).

Moreover, the unambiguous language of the 1992 Agreement cannot be interpreted to satisfy the "revocation and regrant" alternative to termination set forth in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005).  The

1   "revocation" of prior copyright grants and the re-grant of such copyrights must be

2   express, under  both *Milne*, *supra*, and *Classic Media, Inc. v. Mewborn*, 532 F.3d

3   978, 989-91 (9th Cir. 2008).

4       The 1992 Agreement contains no language whatsoever revoking Siegel and

5   Shuster's Superman grants on which DC has long relied.  The 1992 Agreement does

6   not even mention Superman.  Since Siegel and Shuster's Superman copyrights had

7   long ago been assigned to DC, Frank and Jean had no Superman copyrights to assign

8   in 1992.

9       Further, even applying New York law, the 1992 Agreement does not cancel,

10  rescind or novate the 1938 Grant or any subsequent Superman grants.  *See Associated*

11  *Food Stores, Inc. v. Siegel*, 205 N.Y.S.2d 208, 210 (1960); *May Dep't Stores Co. v.*

12  *International Leasing Corp.* 1 F.3d 138, 140 (2d Cir. 1993); *Abuelhija v. Chappelle*,

13  2009 U.S. Dist. LEXIS 55861, 2009 WL 1883787, at *18 (S.D.N.Y. June 29, 2009).

14      2.      There is no basis to grant DC summary judgment, and summary

15  judgment should be granted in defendants' favor, on Section (2) of its First Claim for

16  Relief (FAC ¶¶ 112-17) because the Shuster Executor's notice of termination was

17  entirely proper, as it is the sole party with a termination right under 17 U.S.C. §

18  304(c)(2)(D).      It is impossible for Pacific Pictures Corporation ("PPC") to have

19  held the right to terminate, as is not a member of the statutory class given a

20  termination right, 17 U.S.C. § 304(c)(2) (A)-(D).

21      Nor did PPC own any portion of the copyrights to be recaptured by termination

22  because, as DC admitted in its own complaint (¶167) and motion (MSJ 8:14-15), the

23  copyrights to be recaptured by a termination *cannot* be transferred to third parties

24  until after the effective date of a termination notice (here, October 26, 2013), per 17

25  U.S.C. §304(c)(6)(D).

26      There was therefore no error in the Shuster Executor's notice of termination.

27      3.      There is no basis to grant DC summary judgment, and summary

28  judgment should be granted in defendants' favor, on Section (3) of DC's First Claim

for Relief (FAC ¶¶ 118-24) because the Executor of Joseph Shuster's Estate clearly has a statutory termination right under 17 U.S.C. § 304(c)(2).

The (i) plain language of 17 U.S.C. § 304(c)(2)(D); (ii) clear objective and effect of the 1998 Copyright Term Extension Act to extend termination rights to the executor of an author's estate, if the author (like Shuster) leaves no widow, child or grandchild; (iii) use of the term expired by the Copyright Office, and (iv) judicially accepted use of the term "expired," all contradict DC's argument that an author's termination right is "lost," but has not "expired" if the author dies before his termination window closes.   *See* 17 U.S.C. §§ 304(c)(2)(D), 304(d); *Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1114 n.3 (C.D. Cal. 2008); 3 M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* ("*Nimmer*") § 11.03[A][2][a] at 11-40.1-11.40.2 (emphasis added); *Stewart v. Abend*, 495 U.S. 207, 212 (1990);  67 Fed. Reg. 69134, 69135.

4.    There is no basis to grant DC summary judgment, and summary judgment should be granted in defendants' favor, on DC's Third Claim for Relief (FAC ¶¶ 165-73) because DC does not have an exclusive "right" to negotiate  to buy the terminated Superman copyrights, or any other "right" or remedy under 17 U.S.C. § 304(c)(6)(D), as claimed by DC. *See Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987); 3 *Nimmer* § 11.08[A], n.6 (2010); 3 *Patry on Copyright* § 7:47.  Since DC has no "right" under § 304(c)(6)(D),  DC lacks standing to bring this claim based on § 304(c)(6)(D).  6 *Patry on Copyright* § 21:18, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Moreover, since DC received the 2001/2003 PPC Agreements in November 2006 – three-and-a-half years prior to filing this lawsuit – its Third Claim is time-barred by the applicable three-year statute of limitations.  17 U.S.C. § 507(b).

The 2008 Consent Agreement, under which the Siegel heirs and Shuster Estate simply agreed to negotiate collectively *with DC*, does not violate anything, and the Shuster Executor in no event could grant the copyrights to be recaptured by its

1   termination to anyone but DC, until after the effective termination date of October

2   26, 2013.

3

4     Dated:  July 30, 2012       RESPECTFULLY SUBMITTED,
                                /s/ Marc Toberoff

5

6                                    TOBEROFF & ASSOCIATES, P.C.
                                 Attorneys for Defendants Mark Warren Peary *et al.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT