Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>            vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JULY 16, 2012 ORDER, REVERSING MAGISTRATE ZAREFSKY'S JUNE 21, 2012 ORDER, AND COMPELLINGING THE PRODUCTION OF A PRIVILEGED DOCUMENT BY AUGUST 13, 2012**<br><br>*Declarations of Marc Toberoff and Laura Siegel Larson, [Proposed] Order filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:    September 10, 2012<br>Time:    1:30 p.m.<br>Place:   Courtroom 11 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2012 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Mark Warren Peary, Jean Adele Peavy and Laura Siegel Larson ("Defendants") will and hereby do move this Court to reconsider its July 16, 2012 Order (Docket. No. 457; "July 16 Order"), which summarily granted DC's Motion for Review (Docket No. 455; "Mot."), overturned Magistrate Judge Zarefsky's June 21, 2012 order after he had reviewed the subject November 2001 email *in camera* and upheld privilege (Docket No. 451), and ordered Defendants' to produce the privileged document, before Defendants' opposition was filed or due.

The motion is made on the grounds that DC's motion contained numerous misrepresentations of fact intended to mislead the Court, which went unrebutted as the August 16 Order was entered prior to Defendants' filing of their opposition and thus the Court had no opportunity to consider Defendants' responses to DC's arguments. Egregiously, DC's counsel repeatedly misrepresented to this Court that the Renner Otto law firm had stated that it furnished Michael Siegel's paper files (including the November 2001 email) "to Mr. Toberoff," when <u>Renner Otto stated no such thing</u>, and Renner Otto's 2006 transmittal letter proves that it sent Michael's paper files in 2006 to Melvin Banchek, the Executor of the Estate of Michael Siegel, in Cleveland, Ohio. The evidence clearly demonstrates that the November 2001 Email was not in Defendants' possession until late 2011 when Renner Otto's electronic file database was sent to Defendants' counsel. There was no waiver of privilege as this document was duly listed on a privilege log in November 2011 shortly after it was received.

Pursuant to the Court's July 16 Order, the privileged November 2001 email is to be produced on or before August 13, 2012, which will irreparably harm Defendants.

1            This motion is made following the conference of counsel pursuant to L.R. 7-3,

2  which took place on July 20, 2012.  This motion is based on the attached

3  memorandum of points and authorities, the pleadings and records on file in this

4  action, such additional authority and argument as may be presented in any reply and

5  at the hearing on this motion, and such other matters of which this Court may take

6  judicial notice.

7   Dated:  August 2, 2012       RESPECTFULLY SUBMITTED,

8

9                           /s/ Marc Toberoff
                               Marc Toberoff

10

11                         TOBEROFF & ASSOCIATES, P.C.
                         Attorneys for Defendants Mark Warren Peary, as

12                         personal representative of the Estate of Joseph
                         Shuster, Jean Adele Peavy, and Laura Siegel Larson,

13                         individually and as personal representative of the
                         Estate of Joanne Siegel

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................2

    A.    The Facts Surrounding the November 2001 Email............................2

    B.    Magistrate Zarefsky Correctly Holds That The November 2001 Email Was Privileged, And That Privilege Was Not Waived .............4

    C.    DC's Misleading Motion For Review......................................................5

ARGUMENT .........................................................................................................6

I.    RECONSIDERATION IS APPROPRIATE AS THE COURT DID NOT HAVE THE BENEFIT OF DEFENDANTS' BRIEFING ...........................6

    A.    Legal Standard for Reconsideration......................................................6

    B.    DC's Motion For Review Was Based On Blatant Misrepresentations .............................................................................6

II.    DC DISTORTS THE RECORD TO SMEAR ITS OPPOSING COUNSEL ...............................................................................................8

III.    DC'S DISCOVERY MISCONDUCT...........................................................16

CONCLUSION....................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Brandlin v. Belcher,*
67 Cal. App. 3d 997, 1001 (1977) ................................................................15

*Buell v. Mildworm,*
1998 WL 63402 (S.D.N.Y. 1998) ..................................................................6

*Dougherty v. Bowen,*
1988 WL 2504 (E.D.N.Y. Jan. 6, 1988) ........................................................6

*Grimes v. City and County of San Francisco,*
951 F.2d 236 (9th Cir.1991) ...........................................................................6

*In re Pacific Pictures Corp.,*
679 F.3d 1121 (9th Cir. 2012) ........................................................................6

*KMart Corp. v. Floorgraphics, Inc.,*
2008 WL 243761 (E.D. Mich. 2008)..............................................................6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) ..........................................................................6

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems,Inc.,*
20 Cal. 4th 1135 (1999) ................................................................................15

*Siegel v. Warner Bros. Entertainment, Inc.,*
542 F. Supp. 2d 1098 (C.D. Cal. 2008) .........................................................2

*Smith v. Massachusetts,*
543 U.S. 462 (2005).........................................................................................6

## <u>Statutes</u>

28 U.S.C. § 636(b)(1)(A) ................................................................................6

F.R.C.P. 72(a) ..................................................................................................6

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

# INTRODUCTION

The Court's July 16, 2012 Order (Docket. No. 457; "July16 Order") summarily granted DC's Motion for Review (Docket No. 455; "Mot.") and overturned Magistrate Judge Zarefsky's June 21, 2012 order – all unwittingly based on DC's *misrepresentations of fact*, intended to mislead the Court. The Court ordered Defendants' to produce the privileged document at issue before Defendants' opposition was due and soon to be filed, such that Defendants had no opportunity to disprove DC's demonstrably false claims.

Pursuant to the Court's July 16 Order, the privileged document is to be produced on or before August 13, 2012, which will irreparably harm Defendants. Defendants therefore respectfully ask the Court to duly reconsider its July 16 Order.

The document at issue is an old November 17, 2001 e-mail from Defendants' counsel Marc Toberoff to Michael Siegel (the "November 2001 Email"). Magistrate Judge Zarefsky, after full briefing, and *reviewing the November 2001 Email in camera*, confirmed that the document was protected by the attorney-client privilege, and that privilege had not been waived.

To circumvent this DC had erroneously argued to Magistrate Zarefsky and again to this Court that privilege had been waived because the document was not in a 2006 privilege log in the *Siegel* case.

To sell this false claim and mislead this Court, DC's counsel repeatedly misrepresented in its Motion for Review that Michael Siegel's paper files had been sent by the *Renner Otto* law firm (Michael's former counsel in Cleveland, OH) "to Mr. Toberoff in 2006," and on this knowingly false basis DC argued that privilege was waived by Defendants not logging the document in 2006. Mot. 1 ("Michael's lawyers confirmed that they gave Toberoff a copy of the email six years ago"), 5 ("Bulson's law firm, Renner Otto …ma[de] clear that the paper file they sent Toberoff in 2006 should have the same contents"), 6 ("Bulson's partner confirmed that the electronic file was created by scanning the paper file sent to Toberoff in

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

2006"); 7 ("Renner Otto. . . confirmed that the electronic file was simply a scan of the paper file they sent Toberoff in 2006").

The sole purported evidence cited by DC for this is a casual May 14, 2012 Renner Otto e-mail, which says no such thing. Docket 427-2 at 4. As Renner Otto's 2006 transmittal letter proves, Renner Otto provided Michael Siegel's *paper* client files to Melvin Banchek, Esq, the Executor of the Estate of Michael Siegel, in Cleveland, as one would expect. Declaration of Marc Toberoff ("Tob. Decl."), Ex. B. Contrary to DC's counsel's repeated, knowing, false statements to this Court, Renner Otto *never* provided Michael Siegel's paper files "to Mr. Toberoff in 2006" or at any other time, and Renner Otto *never* said that it did. Mr. Toberoff first received Renner Otto's electronic files in 2011, which, along with hundreds of other documents, contained a copy of the November 2001 Email. Tob. Decl., ¶17.

Thus, as Magistrate Zarefsky properly found, Mr. Toberoff was not in possession of the November 2001 Email until 2011, when it was delivered to his offices as part of Renner Otto's electronic database. Tob. Decl., ¶17. Shortly after receiving these voluminous electronic files in 2011, the November 2001 Email was duly logged, along with numerous other privileged documents.

Simply put, there was no privilege waiver, and DC's motion intentionally misled the Court as to the November 2001 Email. Because the July 16 Order issued before Defendants could bring this and numerous other misrepresentations by DC's counsel to the Court's attention, a motion for reconsideration is appropriate (L.R. 7-18) as there was no true basis to find "clear error" in the Magistrate's ruling, or to compel production of this clearly privileged document.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Facts Surrounding the November 2001 Email

Michael Siegel ("Michael"), the deceased son of Jerry Siegel from his first marriage, was not a party to this action or the related case, *Siegel v. Warner Bros. Entertainment Inc.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx) ("*Siegel*"). Nor is

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

1    Michael ever even mentioned in DC's 61-page complaint.  Docket No. 49.

2         In 1997, Michael retained Don Bulson of the Renner Otto law firm in

3    Cleveland, Ohio, to represent him regarding his passive beneficial interest in 25% of

4    any proceeds from the Superman copyrights recaptured by Joanne Siegel and Laura

5    Siegel Larson's "termination" under the Copyright Act.  Docket No. 316-3 at 10.

6         Michael passed away in January 2006.  In May 2006, over the course of four

7    days, staff at Renner Otto created an electronic file of thousands of Renner Otto's

8    documents related to Michael Siegel.  Tob. Decl., Ex. A.  Over a month later, on June

9    15, 2006, Renner Otto provided Michael Siegel's *paper* client files to Melvin

10   Banchek, the executor of the Estate of Michael Siegel, in Cleveland.  Tob. Decl., Ex.

11   B.  Contrary to DC's counsel's repeated misrepresentations to this Court (Mot at 1, 5,

12   6, 7), Renner Otto did not provide Michael Siegel's paper files to Mr. Toberoff in

13   2006, or at any other time.

14        On August 11, 2006, in the *Siegel* case, DC subpoenaed Don Bulson.  Docket

15   No. 161-2.  Contrary to DC's unsupported assertion, Mr. Toberoff never "insisted

16   that he alone, not Bulson, conduct the document review and production" in response

17   to this subpoena.  Mot. 6.  The letter DC cites (Docket No. 161-4 at 25-28) says no

18   such thing and simply states that "Plaintiffs *and Mr. Bulson* furnished the revised

19   [privilege] log to Defendants."  *Id.* at 26 (emphasis added).

20        Years later, in 2011, in response to DC's subpoena to Renner Otto in this

21   action, Renner Otto provided a set of electronic files pertaining to Michael to the

22   Estate of Michael Siegel to give it and Defendants an opportunity to assert privilege.

23   Tob. Decl. ¶17, Ex. A.

24        After a careful review of Renner Otto's electronic files, on November 29,

25   2011, over 600 pages of responsive, non-privileged documents were produced (most

26   of which were already in DC's possession from discovery in the related *Siegel* case),

27   along with a privilege log detailing those responsive documents that were privileged,

28   and a "master list" accounting for every document in the Renner Otto electronic

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

database as either produced or duly logged.  Docket No. 412-2 at 3.  The November
2001 Email, which appeared for the first time in Renner Otto's electronic files, was
promptly and properly logged.  Tob. Decl. ¶17, Ex. C.  DC's counsel was also
informed that there were "documents which were not logged previously because they
were not in the paper file used to generate the initial log."  *See* Docket No. 362-2 at
323-24.

### B.    Magistrate Zarefsky Correctly Holds That The November 2001 Email Was Privileged, And That Privilege Was Not Waived

Despite being informed that the subject of the November 2001 Email was the
retention of Mr. Toberoff's legal services and therefore privileged, DC nonetheless
moved to compel the e-mail.  DC's counsel vehemently and baselessly argued that
Defendants' "conclusory assertions" as to the November 2001 email "ma[de] no
sense" and should not be believed on account of purported "numerous
misrepresentations to the courts."  Mot. at 3-4.

Even though DC's counsel had never seen the e-mail in question, they
emphatically insisted that "*all* of the evidence show[ed]" that the subject of the
November 2001 Email was a business offer from Mr. Toberoff to Mr. Siegel.  Docket
No. 427 at 2 (emphasis in original).

DC further insisted that privilege had been waived.  It argued, as it later did to
this Court, that Defendants' counsel had supposedly received a paper copy of the
email in 2006, even though Defendants' counsel, in fact, first received the e-mail in
2011 as part of Renner Otto's electronic database of Michael's client files, and
thereafter promptly logged this privileged document.  Tob. Decl. ¶17, Ex. C.  The
*only* thing cited by DC for its false assertion that Mr. Toberoff purportedly received a
copy of the November 2001 Email in 2006 was the casual 2012 email from a Renner
Otto attorney, Josh Ryland, which said no such thing.  Docket No. 472-2 at 4.

After reviewing the November 2001 Email *in camera*, Magistrate Judge
Zarefsky issued an order denying DC's motion on June 21, 2012, concluding that

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

"[t]he e-mail is protected by attorney-client privilege" because "[t]he subject matter of the e-mail concerns legal rights and potential representation of Michael Siegel." Docket No. 451 at 1 ("Order").

In other words, DC's baseless assertions as to the contents of the November 2001 Email were completely wrong, and its accusations that Defendants' counsel "could not be trusted" refuted.  Magistrate Judge Zarefsky also accepted "that the email was from a discontinued email account and thus not readily available for production earlier," noted that the e-mail came from files "sent to counsel for Defendants," and that there was "no waiver of the privilege."  Order at 1-2.

## C.    DC's Misleading Motion For Review

Rather than accept Magistrate Judge Zarefsky's confirmation that the November 2001 Email was privileged, DC moved for review before this Court (Docket No. 455), as it routinely does whenever Magistrate Zarefksy rules against it. Docket Nos. 223, 329, 389, 455.

In so doing, DC's counsel made numerous misrepresentations to mislead this Court, most notably that Renner Otto purportedly sent Michael Siegel's paper files, including the November 2001 Email, to Mr. Toberoff in 2006, which is utterly false. Further, DC's counsel inexplicably continued to misrepresent to the Court the contents of the November 2001 Email, *which they had never seen*, even after Magistrate Judge Zarefsky, who reviewed the actual November 2001 Email *in camera*, had confirmed that Defendants' description of it was accurate and that the document, concerning legal rights, was indeed privileged.

Without the benefit of Defendants' opposition brief, the Court summarily granted DC's Motion for Review, unwittingly based on the misrepresentations of DC's counsel, and without any finding of "clear error" by Magistrate Zarefsky.

//

//

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

<u>**ARGUMENT**</u>

**I.    RECONSIDERATION IS APPROPRIATE AS THE COURT DID NOT HAVE THE BENEFIT OF DEFENDANTS' BRIEFING**

**A.    <u>Legal Standard for Reconsideration</u>**

A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005).  Reconsideration is especially appropriate where, as here, an order issues without the benefit of full briefing. *See KMart Corp. v. Floorgraphics, Inc.*, 2008 WL 243761 (E.D. Mich. 2008) (granting motion for consideration where order issued before defendants response filed with court); *Dougherty v. Bowen* 1988 WL 2504 (E.D.N.Y. Jan. 6, 1988) *1 n.1 (vacating order issued without benefit of defendant's opposition papers to "allow consideration of the papers filed both in favor of and in opposition to the petition"); *Buell v. Mildworm*, 1998 WL 63402 (S.D.N.Y. 1998) (motion for reconsideration granted after order issued prior to opposition papers being filed).  Under 28 U.S.C. § 636(b)(1)(A), a district court may reconsider a magistrate judge's determination of non-dispositive pretrial matters if the magistrate's order is "clearly erroneous or contrary to law." *See also* F.R.C.P. 72(a) (magistrate's rulings on non-dispositive motions may be set aside or modified by the district court only if found to be "clearly erroneous" or "contrary to law"); *Grimes v. City and County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991). Reversal is inappropriate as long as the magistrate's "findings are plausible in light of the record viewed in its entirety." *Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).

**B.    <u>DC's Motion For Review Was Based On Blatant Misrepresentations</u>**

DC's motion turns entirely on its demonstrably false claim that in 2006 Renner Otto sent to Mr. Toberoff a set of Michael Siegel's paper files, including the November 2001 Email.  Mot. 1 ("Michael's lawyers confirmed that they gave Toberoff a copy of the email six years ago"), 5 ("Bulson's law firm, Renner Otto

…ma[de] clear that the paper file they sent Toberoff in 2006 should have the same contents"), 6 ("Bulson's partner confirmed that the electronic file was created by scanning the paper file sent to Toberoff in 2006"); 7 ("Renner Otto. . . confirmed that the electronic file was simply a scan of the paper file they sent Toberoff in 2006").

However the paper files DC refers to were **_not_** sent to Mr. Toberoff; they were sent to Melvin Banchek, the executor of the Estate of Michael Siegel as shown in a transmittal letter from Renner Otto dated June 15, 2006.  Tob. Decl., Ex. B.  As DC's counsel is well-aware, the only evidence they cite unambiguously states that the paper documents were sent to the Estate of Michael Siegel, not to Mr. Toberoff.  Docket No. 427-2 at 4.  This evidence – a casual email sent six years later, in 2012, by Josh Ryland, a Renner Otto litigator, who neither compiled nor sent the documents in 2006 – states only:

> To the best of my knowledge, the "Renner Otto archive" was the product of scanning ***Mr. Siegel's paper files*** before they ***were forwarded to the attorneys for Mr. Siegel's estate***, and the documents in the "Renner Otto archive" and the paper file should be the same."

Docket 427-2 at 4 (emphasis added).  Moreover, as DC further knows, the attorney representing the Executor, Mr. Banchek, as well as the Estate of Michael Siegel, is Gerald A. Berk of the Cleveland law firm, Steuer, Escovar, Berk & Brown.  In other words, Renner Otto never stated that it sent Michael Siegel's paper files to Mr. Toberoff, as DC's counsel has now repeatedly misrepresented.

After knowingly misrepresenting that Renner Otto sent all of Michael Siegel files "to Mr. Toberoff in 2006" (Mot. 1, 5, 6, 7), DC's counsel distorts Ryland's qualified statement that "to the best of my knowledge… the files should be the same" into an unequivocal confirmation that Mr. Toberoff possessed the November 2001 Email in 2006, just as it did before Magistrate Zarefsky.  Docket No. 427 at 1.  In declining to find DC's hollow rhetoric persuasive, Magistrate Zarefsky did not commit error, much less the "clear error" required to reverse his decision.

Without any real legal arguments against Magistrate Zarefsky's decision, DC's

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

counsel resorts to their consistent strategy throughout this case: baseless attempts to
impugn the integrity of their long-time opposing counsel. Mot. 6. However, DC
provides no evidence whatsoever that either contradicts Defendants' assertions or that
supports its contention that Defendants' counsel received the November 2001 Email
prior to the receipt of Renner Otto's electronic files in 2011.

DC's contention that Mr. Toberoff had "every reason to deceive" (Mot. at 7)
about the November 2001 Email is nonsensical. Defendants stated in their opposition
to DC's motion that the November 2001 Email concerned "communications between
an attorney and a potential client about possible retention." Docket No. 412 at 4.
Magistrate Zarefsky, who read the email, confirmed that, just as Defendants stated,
the email concerns "legal rights and the potential representation of Michael Siegel."
Order at 1.

Despite its blatant misrepresentation of the evidence, DC complains that
Magistrate Judge Zarefsky accepted "naked assertions – without a declaration." Mot.
6. Because the Court's July 16 Order issued before Defendants' opposition was due,
Defendants were unable to address DC's disingenuous argument. Nonetheless, for
the avoidance of doubt, Defendants have attached a declaration confirming that
Defendants did not have access to the November 2001 Email until 2011. Tob. Decl.
¶16-17.

In sum, DC's motion is based on little more than unsupported and repeated
misrepresentations that Renner Otto provided Michael Siegels' paper files "to Mr.
Toberoff" in 2006, when Renner Otto said and did no such thing. DC's counsel
made the same false arguments to Magistrate Judge Zarefsky, who duly rejected
them, and such misrepresentations in no way establish "clear error" regarding the
November 2001 Email. Consequently, the Court can and should reconsider its July
16 Order, and affirm Magistrate Zarefsky's underlying order.

## II.    DC DISTORTS THE RECORD TO SMEAR ITS OPPOSING COUNSEL

Unable to show any reason or evidence to support overturning Magistrate

8

DEFENDANTS' MOT. FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

Judge Zarefsky's ruling, DC's counsel devotes the bulk of its motion to false smears
of opposing counsel, on issues unrelated to its motion, to improperly elicit prejudice.

<u>Court Orders</u>:  Indeed, DC's counsel launches into unfounded and
unprofessional attacks from the very beginning of its motion, falsely stating:
"Moreover, as this Court's orders, the Magistrate's orders, and an Ohio federal
court's orders all reveal, Toberoff has repeatedly misrepresented to DC and the courts
whether certain documents exist in his files and whether their contents are as he
described them."  Mot. 2.

In support of this sweeping accusation, DC misleadingly cites to 19 docket
entries.  Mot 2.  Out of these, a full 15 direct the Court back to ***DC's own argument***
in its unsupported motions, declarations, and other filings, not court orders.  Docket
Nos. 160 at 30-38; 171 at 3-4; 225 at 13-17; 230 at 1-10; 253 at 1-9; 267-1 at 6-11;
274 at 1-8; 275 at 1-3; 316 at 1-3, 6-20; 317 at 1-5; 329 at 1-5; 332 at 1-9; 394 at 14-
17; 427 at 5-7.  In other words, DC's counsel pretends to have support for their
baseless claims to mislead the Court into believing its smear campaign, when, in
reality, it simply cites to its prior baseless claims.

The four remaining citations are to court orders, none of which find that
Defendants' counsel or Mr. Toberoff had engaged in any discovery misconduct.  One
order (Docket No. 161-5 at 29-31) simply resolved a dispute over whether certain
communications between Laura Siegel Larson and Michael Siegel, regarding a
purchase of Michael's interests, were privileged, after the Court had *upheld privilege*
as to the vast majority of Laura –Michael communications.  Another (Docket No. 209
at 12), largely denied DC's motion to compel, and the cited portion simply concerned
the May 2003 letter from Michael Siegel addressed below.  Another (Docket No.
336) was a summarily granted motion without any further reasoning or analysis.  And
the last (Docket No. 439) simply ordered *in camera* inspection of certain documents,
resulting in the ruling in Defendants' favor that the November 2001 Email remained
privileged.

<u>Contact With Michael Siegel</u>.  Based on another willful misrepresentation of the record, DC's counsel makes another false accusation that Mr. Toberoff somehow "misled the courts" about his first contact with Michael and Michael's lawyer Don Bulson.  Mot. 2, 4.

To accomplish this, DC's counsel exclusively cites to a single, out-of-context sentence from a brief in which Defendants explained when Mr. Toberoff first had any contact with a member of "the Siegel family."  Docket 145-1 at 23-24.  DC misleadingly omits, however, that the brief DC quotes expressly defined the term "Siegel" to refer *only* to defendants Laura and Joanne Siegel– not to third party Michael.  Docket 145-1 at 5 ("He was survived by his widow defendant Joanne Siegel, and their daughter, defendant Laura Siegel Larson (the 'Siegels').").  This makes perfect sense, because the brief in question – like the complaint it sought to dismiss – makes no mention whatsoever of Michael Siegel, and properly focuses on Mr. Toberoff's representation of Laura and Joanne.  Docket No. 49; Docket No. 145-1 at 1-25.  Moreover, in numerous other briefs, Defendants have consistently defined the Siegels as Laura and Joanne whose statutory termination was at issue, not Michael, Jerry Siegel's son from a prior marriage that ended in 1948.

DC nevertheless knowingly misrepresents to the Court that the above quote asserts that Mr. Toberoff did not have any contact with Michael prior to 2002. Despite being repeatedly put on notice of that "Siegels" or Siegel family means Joanne and Laura (*see e.g.,* Docket No. 75 at 13, 146-1 at 11, 394 at 4), DC continues to make its verifiably false accusation.

<u>The Ninth Circuit's Writ Opinion</u>.    DC misconstrues the Ninth Circuit's decision in *In re Pacific Pictures Corp*, 679 F.3d 1121 (9th Cir. 2012), which solely concerned Defendants' writ of mandamus on a privilege waiver issue.  Mot. 2.  DC misleadingly omits the Ninth Circuit's clear statement that DC's legal "ethics" arguments regarding a short-lived joint venture between Mr. Toberoff and the Siegels were **"not before th[e] court."**  *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

(9th Cir. 2012) (emphasis added). Nor did the Ninth Circuit ever "call out" Mr. Toberoff for not producing documents as DC asserts. Mot. 2. Rather, the Court assumed the documents in question were privileged and "d[id] not address that issue." *Id.* at 1127 n.4 ("Because no one challenges whether these communications would have been privileged absent waiver, **we do not address that issue**. For example, we assume but do not decide that these communications were all made for the purpose of obtaining legal … advice.") (emphasis added).

    The Ohio District Court Order. DC's reliance on the Ohio District Court order as evidence of Mr. Toberoff "falsely claim[ing]" privilege is also disingenuous. Mot. 3. As the order itself makes plain, the Ohio Court largely *upheld* Defendants' assertions of a common-interest privilege between Laura Siegel Larson and Michael Siegel, denying the bulk of DC's motion to compel regarding numerous documents. Docket 161-5 at 30 ("The court, in an Order dated February 5, 2008, denied the Motion to Compel, except in regard to 15 specified documents identified in Movant's Reply Memorandum" which pertained to adverse negotiations to purchase Michael's interest.); *see also* Docket 161-3 at 23. That these documents were eventually ordered produced does not show any sort of misconduct or subterfuge; rather, it shows a legitimate discovery dispute in which DC lost on most of the issues, and won on one – the issue of whether certain negotiations between Michael Siegel and Laura Siegel Larson/Joanne Siegel were privileged.

    Michel Siegel's May 13, 2003 Letter. DC has previously complained about the supposed "withholding" of Michael Siegel's May 13, 2003, even going so far as to use it as a basis to argue that onerous discovery obligations should be placed on Mr. Toberoff. Docket 231 at 19; Docket No. 225 at 17:5-10. This Court has already rejected this effort. Docket No. 248. Moreover, DC's claims of improper conduct are simply wrong. Defendants made no inaccurate representations about this letter and DC points to none. Magistrate Judge Zarefsky ordered Defendants to produce the letter or verify to DC that it did not exist. Docket No. 209 at 12. Defendants did

DEFENDANTS' MOT. FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

1    not claim the letter did not exist, and timely produced the letter in accordance with

2    the order.  Docket No. 231 at 19.

3         Laura Siegel Larson's July 2003 Letter.  DC also levels a host of knowingly

4    misleading accusations about "a July 2003" letter between Michael and Laura.  As

5    DC is well aware, there have been at least three different "July 2003" letters at issue

6    in this case.

7         First, there is a purported July 5, 2003 letter from Laura to Michael that is only

8    mentioned in the anonymous unreliable "Timeline."  Docket No. 160 at 71.  That

9    letter, as Defendants have repeatedly informed DC, does not exist and, as far as

10   Defendants can tell from a search of the relevant records, has never existed.  *Id.*

11        Second, there is a July 11, 2003 letter from Laura to Michael that was held by

12   both Magistrate Zarefsky and Judge Larson in the *Siegel* litigation to have been duly

13   logged as privileged.  Docket No. 225 at 15-16.  In this case Magistrate Zarefsky and

14   this Court repeatedly upheld privilege as to that July 11 letter as well (*see* Docket

15   Nos. 209, 248, 285, 323), and then this Court on October 24, 2011 summarily

16   ordered the letter produced on unspecified grounds.  Docket No. 336.

17        Third, there are drafts of the July 11, 2003 letter, exchanged between Mr.

18   Toberoff and Ms. Larson on or around July 5, 2003 – all of which were, until the

19   Ninth Circuit's writ decision, clearly privileged attorney-client communications, and

20   all of which have now been produced as a result of that writ decision.  Tob. Decl., Ex.

21   D.

22        To confuse and mislead the Court, DC's counsel conflates these three different

23   letters, referring generally to "a July 2003" letter, and then deceptively switches back

24   and forth between the Defendants' *different* statements about those *different* letters to

25   build a very false narrative.  Mot. 3 (citing Docket No. 160, where Defendants noted

26   that a July 5, 2003 letter did not exist, and then citing Docket No. 329, where the July

27   11, 2003 letter, which Defendants never denied existed, was at issue).  Such

28   disingenuous manipulation, like DC's "Siegel" wordplay noted above, is improper.

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

Moreover, DC's hyperbole that the "July 2003" letter is "explosive" evidence is patently untrue.  The July 11, 2003 letter actually undermines DC's fabricated claims about Mr. Toberoff's purported "interference."  For instance, the letter unambiguously confirms that Warner/DC disrupted their own negotiations by their egregious February 2002 proposal:

> It was a bogus offer filled with unacceptable land mines…As a result of Time Warner's hardball tactics, we feared that we would have trouble collecting any future money from them…You and Don Bulson stated that you couldn't believe how bad the document was that they had written…We believe their lawyers are particularly heartless and that it is their common practice to use every ounce of their leverage to grind people in negotiations.

Docket No. 357-4 at 272-273.  Ms. Larson also confirms "We fired Kevin Marks and Bruce Ramer because they were insisting we take a bad [DC Comics] deal" and that Mr. Emanuel's offer to purchase the Siegel interest was not the cause of the failed settlement between the Siegel heirs and Warner/DC.  *Id.* at 273.

The letter further confirms, consistent with Ms. Larson's deposition testimony, that "We went to Marc to talk about him representing the Siegels. Marc did not pursue us." "Marc did not call my mom nor me.  My mom called the Shuster family to see what the Shusters were doing.  The family gave Marc's number to my mom and she called him….  We felt that Marc grasped our situation very well and was sympathetic to author's rights." *Id. Compare* Tob. Decl., Ex. E

Bulson's Billing Records.  DC's assertion that Toberoff produced Bulson's billing records "pursuant to court order" is also very misleading.  Mot. 4.  Defendants *voluntarily* produced the billing records long beforehand on May 4, 2012, leaving unredacted the information DC had specifically represented it was interested in – namely, the dates Bulson and Toberoff had contact.  *See* Tob. Decl., Ex. F.  After receiving the records, however, DC's counsel reneged on their previous statements and insisted that DC was entitled to fully-unredacted attorney billing records.  Docket 438 at 9.  Magistrate Zarefsky reviewed the records *in camera,* and after careful consideration, approved the redactions subject to some minor revisions, and even

13
DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

1    ordered portions redacted that Defendants had not previously redacted.  Docket 451

2    at 3-6.  Only Defendants' second production of the billing records with the revised

3    redactions was "pursuant to court order" – and even then, it was an order largely

4    *denying* DC's motion.  *Id.*

5        <u>Supposed Misrepresentations About the Substance of Documents</u>.  DC wildly

6    asserts that "Toberoff … [has] repeatedly been shown to have misrepresented to DC

7    and the courts the existence and substance of documents damning to his position,"

8    but then points to only two inconsequential things which are nothing of the sort. Mot.

9    7-9.  First, it complains that out of thousands of entries in Defendants' privilege log,

10   two entries failed to note that that a third party, Ari Emanuel, had been copied on an

11   trivial email chain, which consisted of nothing but one sentence exchanges about

12   scheduling a meeting between Toberoff and the U.S. Attorney.  Docket 427-11 at

13   1139-41 ("Are you free to meet tomorrow for breakfast or at your office, any time

14   between 8:30 and 10:30am?"); *Id.* ("Yes, I'll be in on Monday.  We could also talk

15   by phone now if you wanted.").  For DC's counsel to paint this as an attempt to

16   suppress "damning" evidence is laughable.   Moreover, given the thousands of

17   privilege log entries, it is inevitable that there will be a few inadvertent errors.

18       Second, DC falsely alleges that Mr. Toberoff "suppressed" the so-called

19   "Timeline" documents because they supposedly disprove that Mr. Toberoff

20   represented the Siegels as a lawyer from the outset of their relationship, by showing

21   that they negotiated a legal retainer agreement in 2004.  Mot. 7-8.

22       This makes no sense because DC has known since 2006, when Ms. Peary, Ms.

23   Larson and Mr. Toberoff all freely testified at deposition in *Siegel*, that the parties

24   negotiated a litigation retainer in 2004.  Tob. Decl. Exs. G, H, I.  Furthermore, the

25   retainer agreements were logged in 2010 (Tob. Decl., Ex. J); and ***the actual retainer***

26   ***agreement was produced to DC*** in 2011.  Docket No. 209 at 11; 305-26 at 1063,

27   305-40 at 1488

28       Moreover, a formal retainer agreement is not required to establish the attorney-

14
DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

1    client relationship.  *Brandlin v. Belcher*, 67 Cal. App. 3d 997, 1001 (1977); *see also*

2    *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems,Inc.*, 20 Cal. 4th

3    1135, 1147 (1999) ("'When a party seeking legal advice consults an attorney at law

4    and secures that advice, the relation of attorney and client is established prima

5    facie.'") (citation omitted).  Whether Mr. Toberoff and the Siegels negotiated a

6    formal litigation retainer prior to litigation in 2004 is irrelevant to the issue of Mr.

7    Toberoff's attorney-client relationship with them as of October, 2002.  There is,

8    therefore, nothing revelatory or "damning" about any of the "Timeline" documents.

9        <u>Laura Siegel Larsons's November 2002 Letter:</u>  DC then falsely hypes

10   supposed "acts of deception" involving a November 1, 2002 letter from Laura to

11   Michael.  Mot. 8.  First, Mr. Toberoff never "pretended" that the letter did not exist,

12   as DC suggests.  Mot. 9.  After DC inquired about the letter in April–May, 2011,

13   Defendants' counsel checked and re-checked their relevant case files and there was

14   no November 2, 2002 letter.  Docket Nos. 267-16 at 1-2; 395-1 at 96-97.

15   Defendants' counsel also asked Laura Siegel Larson to search for a copy of the

16   November 2, 2002 letter, and she too did not have a copy of the letter.  Docket No.

17   395-1 at 97.  This search did uncover a November 1, 2002 letter, which was

18   produced.  Docket No. 267-16 at ¶5.  All of this was duly communicated to DC.

19   Docket Nos. 267-2 at 2; 267-7 at 18; 267-16 at 1-2.

20        Defendants' counsel did not obtain a copy of the November 2, 2002 letter until

21   the Renner Otto firm furnished its electronic database of Michael Siegel documents

22   in 2011.  Upon discovery of the letter in these electronic files, Defendants' counsel

23   listed it on a privilege log pertaining to the database, which was promptly provided to

24   DC in November 2011.  Docket No. 412 at 10.  There was nothing improper about

25   this conduct. Defendants' counsel did exactly what any responsible attorneys would

26   do in a similar situation:  upon discovery of a responsive document that had not

27   previously been logged and as to which there is a reasonable claim of privilege, they

28   logged it.  Moreover, once this privilege issue was resolved in DC's favor, the

1   November 2, 2002 document was promptly produced.

2       Contrary to DC's rhetoric, the November 2, 2002 letter does more to refute

3   DC's claims than to support them.  As just one example, Ms. Larson stated in this

4   letter, *written eight years before* DC filed this frivolous action, that it was "the

5   revolting offer from DC" that sunk DC's relationship with her and her mother.  *See*

6   Docket No. 455-2 at 3.  Ms. Larson describes her and her mother's dissatisfaction

7   with DC and their counsel and makes clear that this dissatisfaction had nothing

8   whatsoever to do with Mr. Toberoff.

9           Toward the end of 2001, there was a shift. They [Gang, Tyre] started
            pressuring us to lower our expectations and to take an offer we did not
10          want.  They increasingly seemed to be siding with DC against our
            interests…  Between February and May of this year [2002] we became
11          so dissatisfied with their representation and the revolting offer from DC
            that we asked for a meeting with Kevin [Marks] on May 22nd planning to
12          fire them then and there.

13  Docket No. 455-2 at 3.  Ms. Larson also makes plain that later in October 2002 she

14  retained "Toberoff, the attorney, [who] has a successful track record of representing

15  creator-writers and their heirs who have been screwed by the studios" and that she

16  did not become aware of Marc Toberoff "until August 2002." *Id.* at 4.

17      Finally, as to the supposed "billionaire investor," Ms. Larson previously

18  testified at deposition that she does not "know where that [term] came from." Docket

19  No. 305-24 at 1018:18-1020:4.   She also testified, without equivocation, that Mr.

20  Toberoff never used the term (*id.*), and that Ari Emanuel was the investor who made

21  an offer to her and her mother.  *Id.* at 1020.  To remove any doubt, Ms. Larson has

22  provided a declaration herewith reaffirming this.  *See* Declaration of Laura Siegel

23  Larson, ¶¶ 1-7.

24  **III.    DC'S DISCOVERY MISCONDUCT**

25      DC's baseless accusations are all the more troubling in light of  the discovery

26  misconduct of DC and its counsel.

27      For instance, DC long ago confirmed that it had produced all non-privileged

28  documents relating to a 1992 agreement on which its First Claim is based.  Tob.

16

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

Decl., Ex. K.  Yet on July 6, 2012, within days of DC filing its motion for partial
summary judgment on its First Claim, DC's counsel suddenly (for the first time in
over seven years of litigation) produced *new* documents and correspondence related
to the 1992 agreement at issue in its motion.  *Id.,* Ex. L.  Of course, DC included
these letters in its motion filed days later – the only reason it produced the letters.
When questioned, DC's counsel then offered differing excuses for its convenient last
minute production, but no real explanation for DC's concealment of this evidence.
Tob. Decl., Ex. M.

Furthermore, in over two years of litigation in this case, DC and its counsel
have refused to provide a privilege log, while incessantly nit-picking over
Defendants' logs.  Tob. Decl., Ex. N.  Similarly, DC has refused to meaningfully
respond to Defendants' targeted requests for production and interrogatories regarding
specific allegations in DC's complaint, forcing Defendants to file a move to compel
reasonable responses. Docket 461 at 1, 5-6, 18-20, 22-27.  Instead DC evasively
points in their responses to literally the entire production and record in both this
action and in *Siegel*.  *Id.*

Magistrate Judge Zarefsky has repeatedly commented on numerous occasions
about the improper conduct of DC's counsel, expressing bewilderment at their
unwillingness to pursue this case in a more professional manner or to cooperate with
opposing counsel on easily resolvable issues, and for endlessly re-litigating decided
issues.  *See, e.g.,* Docket No. 209 at 13 (ruling for Defendants and noting "[t]he Court
does not understand why this portion of the dispute could not have been resolved out
of court."); No. 323 at 2 (noting that DC's constant motions are "head[ing] in the
wrong direction" and that "the direction of the lawsuit needs to be forward, not
backward"); No. 439 (reminding DC of its "responsibility to make sure that
discovery is …proportional to the issues in the lawsuit and does not create undue
burden or harassment").

DC's counsel have also been called out for mischaracterizing court opinions.

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER

*See, e.g.*, Docket No. 378 at 4  ("Plaintiff also asserts, as if it were fact, that in July 2003 Ms. Siegel and Mr. Larson had no community interest.  The Ohio Court that Plaintiff references as support for this proposition did not rule so broadly.").  And DC has been criticized for its practice of misleadingly quoting the communications of Defendants and their counsel "out of context."  *See, e.g.*, Docket No 323 at 2 (noting that Defendants' "caution is not misplaced" and denying DC's motion to reconsider).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for reconsideration and affirm the Magistrate's June 21, 2012 Order.


Dated:  August 2, 2012          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

DEFENDANTS' MOT.  FOR RECONSIDERATION RE: COURT'S JULY 16, 2012, ORDER