DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>      v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**PLAINTIFF DC COMICS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS FOR RELIEF**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:   Aug. 20, 2012<br>**Hearing Time**:   1:30 p.m.<br>**Courtroom**:        11 |

# TABLE OF CONTENTS

I. DC IS ENTITLED TO JUDGMENT ON ITS FIRST CLAIM ...................... 1

    A. The 1992 Agreement Eliminated Any Right Of Termination .............. 1

        1. The 1992 Agreement Revoked And Replaced All Terminable Grants ................................................................... 2

        2. The Scope Of The 1992 Agreement Is Clear ............................ 4

        3. *Milne* And *Steinbeck* Control Here, Not *Mewborn* ................... 5

        4. The 1992 Agreement Is Binding On The Shuster Heirs ........... 7

    B. The Shusters Lacked The 51% Interest Necessary To Terminate ........ 8

    C. The Shusters Cannot Terminate Under § 304(d) ................................ 9

II. DC IS ENTITLED TO JUDGMENT ON ITS THIRD CLAIM .................. 10

III. DEFENDANTS WAIVED THEIR AFFIRMATIVE DEFENSES .............. 12

# TABLE OF AUTHORITIES

**CASES**

*Abuelhija v. Chappelle*,
  2009 WL 1883787 (S.D.N.Y. June 29, 2009) ..................................................... 4

*Associated Food Stores, Inc. v. Siegel*,
  10 A.D.2d 1003 (N.Y. App. Div. 1960) ............................................................ 4

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ......................................................................................... 11

*Blair & Co. v. Otto V.*,
  5 A.D.2d 276 (N.Y. App. Div. 1958) ................................................................ 3

*Bourne Co. v. MPL Commc'ns, Inc.*,
  675 F. Supp. 859 (S.D. N.Y. 1987) ................................................................. 11

*Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*,
  41 N.Y.2d 397 (N.Y. 1977) ........................................................................... 2, 4

*Citibank v. Benedict*,
  2000 WL 322785 (S.D.N.Y. Mar. 28, 2000). ..................................................... 4

*Classic Media, Inc. v. Mewborn*,
  532 F.3d 978 (9th Cir. 2008) .................................................................. 1, 5, 6, 7

*Croman v. Wacholder*,
  2 A.D.3d 140 (N.Y. App. Div. 2003) ................................................................ 4

*Diversey Lever, Inc. v. Ecolab, Inc.*,
  191 F.3d 1350 (Fed. Cir. 1999) ....................................................................... 12

*Effects Assocs., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ............................................................................. 5

*Endicott Trust Co. v. Milasi.*,
  175 A.D.2d 480 (N.Y. App. Div. 1991) ............................................................ 4

*Faulkner v. Nat'l Geographic Soc'y*,
  452 F. Supp. 2d 381 (S.D.N.Y. 2006) ........................................................... 4, 7

*Goldbard v. Empire State Mut. Ins. Co.*,
  5 A.D.2d 230 (N.Y. App. Div. 1958) ................................................................ 2

*Goldome Corp. v. Wittig*,
  221 A.D.2d 931 (N.Y. App. Div. 1995) ............................................................ 3

*Groucho Marx Prods. v. Day & Night Co.*,
  689 F.2d 317 (2d Cir. 1982) ............................................................................ 10

*In re Digimarc Corp. Deriv. Litig.*,
 549 F.3d 1223 (9th Cir. 2008) .................................................................... 11

*In re WorldCom, Inc.*,
 2007 WL 2049723 (S.D.N.Y. July 13, 2007) ............................................ 2, 3

*Indep. Energy Corp. v. Triger Energy Corp.*,
 944 F. Supp. 1184 (S.D.N.Y. 1996) ............................................................. 3

*Mills Music, Inc. v. Snyder*,
 469 U.S. 153 (1985) ................................................................................... 10

*Milne v. Stephen Slesinger, Inc.*,
 430 F.3d 1036 (9th Cir. 2005) .............................................................*passim*

*Milton H. Greene Archives v. CMG Worldwide*,
 568 F. Supp. 2d 1152 (C.D. Cal. 2008) ..................................................... 10

*Nat'l Am. Corp. v. Fed. Rep. of Nigeria*,
 448 F. Supp. 622 (S.D.N.Y. 1978) ............................................................... 3

*Penguin Group (USA) Inc. v. Steinbeck*,
 537 F.3d at 203 (2d Cir. 2008) ............................................................*passim*

*Prudential Real Estate Affils., Inc. v. PPR Realty, Inc.*,
 204 F.3d 867 (9th Cir. 2000) ...................................................................... 11

*R&R Recreation Prods., Inc. v. Joan Cook Inc.*,
 1992 WL 88171 (S.D.N.Y. Apr. 14, 1992) .................................................. 5

*Siegel v. National Periodical Pub's*,
 364 F. Supp. 1032 (S.D.N.Y 1973), *aff'd* 508 F.2d 909 (2d Cir. 1974). ...... 5

*UMWA 1974 Pension v. Pittston Co.*,
 984 F.2d 469 (D.C. Cir. 1993) .................................................................... 12

*Wang v. Chen*,
 1992 WL 7840 (S.D.N.Y. Jan. 10, 1992) ................................................. 2, 4

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995) ................................................................................... 11

*Yahaya v. Hua*,
 1989 WL 214481 (S.D.N.Y. Nov. 28, 1989) ............................................... 4

**STATUTES**

17 U.S.C. 304(d) ................................................................................................ 9

17 U.S.C. § 304(c)(6)(D) ............................................................................ 10, 11

28 U.S.C. § 2201(a) ......................................................................................... 11

Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853 (1988) ...................................................................................... 5

**OTHER AUTHORITIES**

67 FED. REG. 69,134-35 (Nov. 15, 2002). ................................................................ 9

1 GOLDSTEIN ON COPYRIGHT § 5.4.3.1 (2007) ...................................................... 10

3 NIMMER ON COPYRIGHT § 11.05[B][2] (2012) ..................................................... 9

3 PATRY ON COPYRIGHT § 7.47 (2009) ................................................................. 10

FED. R. EVID. 408 ..................................................................................................... 7

H.R. REP. NO. 94-1476 (1976) ........................................................................... 1, 10

Defendants' opposition brief is unavailing, as it consistently offers no answer to Ninth Circuit and other controlling precedent that rejects defendants' positions; makes arguments belied by defendants' own prior briefs; and asserts factual claims based only on lawyer arguments refuted by defendants' own sworn admissions.

## I. DC IS ENTITLED TO JUDGMENT ON ITS FIRST CLAIM.

### A. The 1992 Agreement Eliminated Any Right Of Termination.

Defendants' repeated claim that the Copyright Act's termination provisions "abrogated standard 'freedom of contract' principles to make the termination right 'inalienable,'" Opp. 8, is untrue. Congress said: "nothing in [the Act] is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment." H.R. REP. NO. 94-1476, at 142 (1976). This language reflects a careful "'compromise'" between "'the interests of individual authors and their transferees,'" like DC, who spent nearly 75 years developing Superman. Mot. 10 (quoting further legislative history).

In *Milne*, 430 F.3d 1036, 1046 (9th Cir. 2005), the Ninth Circuit cited this history in holding that a *contract* that supersedes all pre-1978 copyright grants *may* eliminate any claimed *termination right*. The *Steinbeck* case, 537 F.3d 193, 203 (2d Cir. 2008), held the same, and Toberoff—before this case—hailed the Second Circuit and *Steinbeck* as "play[ing] a key role in articulating federal copyright law," *Classic Media, Inc. v. Mewborn*, 2006 WL 2984706, Opp. 25 (9th Cir. June 30, 2006) ("*Mewborn* Opp.") (citing and discussing district court opinion in *Steinbeck*).

Knowing the termination right can be forfeited by contract, defendants invent a six-part test for when a termination right can be contracted away, Opp. 11, but the circuit court authorities that address this issue establish a simple rule: a post-1978 agreement that replaces all pre-1978 copyright grants eliminates any termination right that may otherwise have existed. *Milne*, 430 F.3d at 1042-45; *Steinbeck*, 537 F.3d at 200-04; *Mewborn*, 532 F.3d 978, 982, 989 (9th Cir. 2008). The 1992 Agreement did just this: in 1992, Jean Peavy replaced all pre-1978 grants of

- 1 -

DC'S REPLY IN SUPPORT OF MOT. FOR PARTIAL SUMM. J.

Shuster's copyrights by "grant[ing] to [DC]" all rights in all of his works and releasing DC from "all claims whether now or hereafter existing," regarding his copyrights. SUF 19. Defendants' arguments to escape the 1992 Agreement fail.

### 1. The 1992 Agreement Revoked And Replaced All Terminable Grants.

Defendants say *Milne* and its progeny require language in agreements like the 1992 agreement "*expressly* revoking" all pre-1978 copyright grants—*i.e.*, "the term[s] revoke, rescind, supersede, [or] replace," Opp. 11-12. But *none* of these cases says such "magic words" are required, nor could they have so held under the legal sources the cases applied. As defendants themselves acknowledged at the Rule 12 stage, it is "New York law, which governs the 1992 Agreement" and whether it operates to revoke and regrant Shuster's copyrights. Docket No. 191 at 4. Now confronted with New York law fatal to their position, defendants reverse course and argue that any reading of the 1992 Agreement "is a matter of federal copyright law." Opp. 12. *Steinbeck* refutes this, making clear that "whether [an] Agreement terminated and superseded [an earlier] Agreement," is determined by governing state law—in this case, as in *Steinbeck*, "New York law." 537 F.3d at 200.

a. New York law has long recognized that intent to supersede a prior contract may be "expressed *or implied*." *Goldbard v. Empire State Mut. Ins. Co.*, 5 A.D.2d 230, 233 (N.Y. App. Div. 1958) (italics added). Defendants' own cases confirm the settled principle that "consent to a novation 'may be implied from all the facts and circumstances'"—no magic words are required. *Wang v. Chen*, 1992 WL 7840, at *6 (S.D.N.Y. Jan. 10, 1992); *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (N.Y. 1977) ("objective manifestations" of intent shown through parties' "words and deeds," "the attendant circumstances, the situation of the parties, and the objectives they were striving to attain").

Intent to supersede—or "novate"—is established where, as here, a new contract addresses all of the parties' obligations and remedies on a subject matter. *E.g.*, *Steinbeck*, 537 F.3d at 200-01; *In re WorldCom, Inc.*, 2007 WL 2049723, at

- 2 -   DC'S REPLY IN SUPPORT OF MOT. FOR PARTIAL SUMM. J.

*2 (S.D.N.Y. July 13, 2007). The 1992 Agreement plainly covers the same subject matter as Joe Shuster's prior copyright grants—*i.e.*, it assigns "copyrights … in any and all" of his works and "fully settles all claims," "rights or remedies … under any other agreement or otherwise, whether now or hereafter existing." SUF 19.

   b. Defendants mainly ignore the authorities DC cited on this key point of law. *Cf.* Mot. 13-14. Their few attempts to distinguish DC's cases fail:

- While *WorldCom* applied Delaware law, it said *New York* uses the same test. Citing a New York case (*Nat'l Am. Corp. v. Fed. Rep. of Nigeria*, 448 F. Supp. 622 (S.D.N.Y. 1978)), it stressed: "other jurisdictions support the view that *a new contract's release of parties' claims under an old contract proves that the parties intended to novate the old contract*." 2007 WL 2049723, at *3.

- Defendants say that, in *Blair*, the substitute contract expressly disavowed the earlier one, Opp. 14, but *Blair* stressed the "more important" factor was that it *released the parties from all* preexisting liabilities. 5 A.D.2d at 276, 282.

- Defendants say in *Goldome* the new contract "identified the first agreement, and evidenced a clear intent to replace it." Opp. 14. Not so—the new contract in *Goldome* "reaffirmed" a provision from an earlier contract and released the parties from any other liability. 221 A.D.2d at 932-33. *Goldome* held it was the "clear and unambiguous language in the release," like the release here, that "establishe[d] that it superseded" the prior contract. *Id*. And, to be clear, the 1992 Agreement *did* reference Joe's prior agreements; "settl[ing] all claims" to any payments, rights, or remedies "under *any other agreement*."

- Defendants say *Independent Energy* did not "even address" the salient issues, Opp. 14. It plainly did. It stated the rule that a new "contract regarding the same subject matter *supersedes the prior contract.*" And it held that a contract providing "consideration for the assignment [of a party's] interests" proved intent to novate. 944 F. Supp. at 1195-96. (All italics above added.)

   c. Defendants cite *no case* holding that novation requires "express language"

of revocation. None exists, and, indeed, they repeatedly claim that their Pacific Pictures contracts were "revoked, and replaced with a legal retainer agreement," Opp. 7, 19, even though it never says "revoke" or "replace," Adams Decl. Ex. 13.

Defendants' cite to *Abuelhija*, 2009 WL 1883787 (S.D.N.Y. June 29, 2009), provides them no help. There, a third party failed to establish that a 2004 contract "superseded and replaced" a 2002 contract where (i) the contracts concerned distinct subjects (different TV-show seasons ); (ii) the 2004 contract suggested the 2002 contract "remains in force"; and (iii) the parties continued to make payments under the 2002 contract. *Id.* at *6-7. None of these conditions is present here. Defendants' eight other cases are unavailing; none involves a contract, as here, that covered the same subject matter as a prior contract and had a sweeping release.[1]

d. Finally, the *undisputed* extrinsic evidence confirms novation. Defendants do not dispute Paul Levitz's sworn testimony that he told Jean and Frank the 1992 Agreement "would represent their last and final deal with DC, and would resolve any past, present, or future claims," and that "Frank and Jean both confirmed that they understood." SUF 18; *infra* at 6-7. Defendants' cases make clear courts can consider such extrinsic evidence (along with the 1992 Agreement itself) to grant DC summary judgment. *E.g.*, *Yahaya*, 1989 WL 214481, at *4; *supra* at 2, 4 n.1.

2. <u>The Scope Of The 1992 Agreement Is Clear.</u> Defendants say the 1992 Agreement is not a bar to termination because it does not expressly cite Shuster's prior copyright grants or mention termination. Opp. 12. This is irrelevant, since none of *Milne* or its progeny requires such language. *Supra* at 1. It is also untrue.

---

[1] *Cf. Wang*, 1992 WL 7840, at *6 (no novation where performance still required under original contract and payments made under it); *Yahaya*, 1989 WL 214481, at *4 (no "conversation or behavior" supporting substitute agreement); *Citibank*, 2000 WL 322785, at *8-9 (no novation; new notes involved different debts); *Endicott*, 175 A.D.2d at 480-81 (no oral revocation where contract could be "terminated only by a writing"; oral termination "equivocal"); *Croman*, 2 A.D.3d at 144 (ineffective oral termination); *Assoc. Food*, 10 A.D.2d at 1003 (same); *Faulkner*, 452 F. Supp. 2d at 381(not a novation case); *Brown Bros.*, 41 N.Y.2d at 398, 401 (same).

The 1992 Agreement covers the entire waterfront of any claim in Joe Shuster's copyrights: it "*fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by ... Joseph Shuster*." (Emphases added). This clearly encompasses *all* of Joe Shuster's works, *all* agreements, including the pre-1978 grants, and *all* rights, no matter the form.[2]

    Last, defendants say the 1992 Agreement is a "boilerplate quitclaim"—citing no law or competent evidence in support. They also say it could not have been a grant because DC did not register it with the Copyright Office or use the similar language in two unrelated contracts. Opp. 12-16; SUF 76. But copyright grants—as the Ninth Circuit made clear in 1990—can be a "a one-line pro forma statement." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). Registration has not been required since the Berne Convention was implemented in 1989. Pub. L. No. 100-568, 102 Stat. 2853, 2857, 2861 (1988); *R&R Recreation Prods., Inc. v. Joan Cook Inc.*, 1992 WL 88171, at *4 (S.D.N.Y. Apr. 14, 1992). And the 1992 Agreement is not a "quitclaim"; it expressly says "you now *grant to us*" all rights.

    3. *Milne* And *Steinbeck* Control Here, Not *Mewborn.* Defendants say the facts in this case "are similar only to *Mewborn*," and *Steinbeck* and *Milne* do not apply. They assert the critical distinction between *Steinbeck* and *Milne* and here is that Jean and Frank were unable to "leverage the imminent threat of termination to

---

[2] Defendants know that agreements conveying "all" rights do not need to delineate specific rights to be effective. In the *National* case they cite, Opp. 5, the court held that Shuster's 1938 grant of "all" Superman rights included copyright renewal rights, even though (a) those renewal rights did not yet exist; and (b) "none of the agreements ... expressly refer[red] to the transfer of the renewal rights." 364 F. Supp. 1032, 1037 (S.D.N.Y. 1973), *aff'd* 508 F.2d 909, 913 (2d Cir. 1974).

    Defendants' claim that the 1992 Agreement did not include Superman because it "does not even mention Superman," Opp. 12, is laughable. The Agreement applies to "any and all work" Shuster "created in whole or in part." Defendants' first Statement of Undisputed Fact says "Shuster co-created Superman." SUF 46.

DC'S REPLY IN SUPPORT OF
MOT. FOR PARTIAL SUMM. J.

realize market value for a copyright" and that they did not "intentionally trade-in their termination right." Opp. 11. Defendants are wrong for at least five reasons.

a. This is *not* the test for when a termination right may be contracted away. *Supra* at 1; *Steinbeck*, 537 F.3d at 203. Indeed, *Mewborn* held that Winifred *could* terminate because her 1978 contract (unlike the 1992 Agreement, and those in *Milne* and *Steinbeck*) did not "substitute" or "revoke" any pre-1978 copyright grants, and instead only "affirm[ed]" her 1976 grant. 532 F.3d at 982, 989 & n.8.

b. In *Mewborn*, Toberoff argued and the Ninth Circuit held, "there was no record evidence that Mewborn *was even aware* of her recapture rights" and no evidence she "inten[ded] to waive" them. *Mewborn* Opp. at 37; 532 F.3d at 989. Here, Jean and Frank expressly told DC if it increased the annual payments due to Frank, and made those lifetime payments to Jean instead, Jean "would not pursue the termination of the Superman copyright as provided for to creators' heirs in the 1976 U.S. Copyright Act." Levitz Decl. Ex. 6. In 1993, Jean affirmed she had "traded-in" her termination right, saying she would "stick to our bargain" and not attempt "to reclaim the SUPERMAN copyright." *Id*. Ex. 20. In 1999, after noting "Siegel has filed a copyright [termination] for SUPERMAN," Jean reiterated she would "honor" the 1992 Agreement and not make such a claim. *Id*. Ex. 59.

c. Whether Jean had a right to terminate in 1992, and whether DC disputed it, is irrelevant. Mot. 15-17, Opp. 16-17. Elaine Steinbeck was "unable to terminate" when she made her 1994 contract. *Steinbeck*, 537 F.3d at 203 n.5. A contract that eliminates a termination right does *not* become unenforceable "because it had the effect of eliminating termination rights that did not yet exist," *id*. at 203—including new alleged termination rights first created by Congress in 1998 in the CTEA, *id*.

d. Defendants' claim that there was no "back and forth" over the terms of the 1992 Agreement, Opp. 17, is belied by the undisputed record. Levitz Decl. ¶¶ 5-7; Exs. 3-6, 10. DC initially offered no more than to pay Joe Shuster's debts. Jean successfully pushed for Frank's annual payments to be increased five-fold, for

those payments not to cease when he died, and for benefits herself—*i.e.*, a lifetime pension that has provided her $600,000 and the financial security she sought. *Id.* Levitz confirmed this would fully resolve any claim the Shusters had in Joe's copyrights, and Jean and Frank said "they understood." SUF 18. After-the-fact assertions by their counsel that Jean and Frank did not intend to relinquish rights are meaningless, as defendants' own cases hold. *Faulkner*, 452 F. Supp. 2d at 381.

    e. Defendants say the deal Jean accepted in 1992 was too paltry to count as a revocation and regrant. Again, this is not the test, and is untrue. As Toberoff said in *Mewborn*, Mewborn received only a "one-time," "miniscule" payment of $3,000, whereas in "*Milne*, the author's trust *expressly* used the statutory termination right to *double* its royalty." *Mewborn* Opp. 34, 36; *Mewborn* Reply at 17, 2006 WL 3225721. When they approached DC in 1992, Frank was owed $5,000 a year, and Jean was owed *nothing*. Levitz Decl. ¶¶ 4-7; Exs. 3-5, 15. Jean and Frank obtained a *five-fold* increase in annual payments, paid to Jean rather than Frank, *id.* Ex. 6, and they have received, to date, more than *$600,000*, SUF 25. As Levitz testified, by agreeing to the payment terms Jean and Frank demanded, DC "far exceed[ed] [its] promise to Joe and commit[ed] to a much larger sum" than would have been due Frank, SUF 24, or $50,000 total. Jean's current alleged dissatisfaction with the 1992 Agreement, which she continues to be paid under, does not "discredit the validity of [the] agreement and the rights [it] conferred." *Milne*, 430 F.3d at 1045.[3]

    4. <u>The 1992 Agreement Is Binding On The Shuster Heirs.</u> Defendants do not and cannot dispute that under clear probate law Jean had full authority to enter into the 1992 Agreement as the "sole beneficiary" and "executrix" of Joe Shuster's estate. Mot. 15. Defendants' contention that the 1992 Agreement could not have disposed of the Shusters' termination right, because Peary—who had himself

---

[3] Violating FED. R. EVID. 408, defendants argue a $2 million settlement offer DC made Jean and Peary in 2005—to avoid litigation—shows the 1992 agreement was not rich enough, Opp. 17. The 2005 offer shows no such thing, as Rule 408 plainly proscribes.

appointed "executor" of Joe Shuster's estate 11 years later—"was not a party," Opp. 8, is specious. *Milne* and *Steinbeck* make clear that when one heir executes an agreement that supersedes all pre-1978 copyright grants, *all other heirs* are barred from terminating—period. *Milne*, 430 F.3d at 1040; *Steinbeck*, 537 F.3d at 204.

### B. The Shusters Lacked The 51% Interest Necessary To Terminate.

Defendants claim their termination notice did not violate the Copyright Act's majority-interest requirement—despite omitting the *100% owner* of the termination right from their notice (the Pacific Pictures Joint Venture)—because their contracts assigning all termination rights to the Venture were *illegal*. This *illegality* defense fails for two reasons. First, while defendants say the Pacific Pictures contracts "did not transfer the prospective copyrights to be recovered by the Shuster Termination," Opp. 18, Peary testified under oath, and without any objection, that the 2001 contract "transferr[ed] and assign[ed] to the venture" "*all of the Joe Shuster rights, termination rights*, to the extent they existed," Petrocelli Decl. Ex. 46 at 482:18-23 (emphases added). The 2003 agreement reaffirmed the 2001 Agreement. *Id*. Ex. 36 at 291. These admissions and facts are fatal to defendants' defense.

Second, and equally fatal, is defendants' failure to address the public-policy rule that they *may not* assert the illegality of their *own* contracts as a defense. Mot. 19-20 (citing cases). Like a swindler who induces a minor to sign a contract, *id.* defendants cannot claim their contracts are illegal to avoid liabilities they create.

As to remedies, defendants abandon any "harmless error" defense, Opp. 19, and do not dispute that a termination notice signed by a party with less than a majority interest is void, *id*. 17. Nor do they dispute that, if they violated the majority-interest rule, their notice must be declared judicially void—and, at best, they can try to file a new one. Defendants *do* contest this Court's power to bar them from refiling a notice, arguing it would be "inequitable." *Id*. 19. But they can hardly argue equity when they provide no reasons why they created their web of illegal agreements and hid them for years from DC and the Copyright Office.

### C. The Shusters Cannot Terminate Under § 304(d).

Under the plain language of § 304(d), an author's statutory heir can terminate *only* where the "[t]ermination rights provided in subsection (c) … have expired on or before the effective date of the [CTEA]"—*i.e.*, where, unlike here, the window for terminating under the 1976 Copyright Act opened, ran its full 59-year course, and closed by October 27, 1998. Mot. 21-22. Defendants say "[t]here is nothing in the CTEA" reading "expired" this way, Opp. 20—ignoring that (i) the same term is used in the copyright renewal provisions to mean exactly this, Mot. 22, and (ii) in their Rule 12 brief, defendants argued Copyright Act's termination provisions *must be read* consistent with the renewal provisions, Docket No. 148-1 at 6.

Rather than address the renewal provisions, defendants cite three other sources. The first is a reference to the word "expired" in 67 FED. REG. 69,134-35:

> [A]n author or an author's successor must serve a notice of termination 'not less than two years before' the effective date, i.e., up to 59 years … after copyright was secured …. Therefore, the termination right will have 'expired,' *see* 17 U.S.C. 304(d), 59 years after copyright was secured.

This misses DC's point; had Shuster not terminated for 59 years, his right would have "expired." But Shuster died during the 53rd year and he left no statutory heir. Thus, Shuster's termination right never "expired," because the 59 years never ran. The right simply ceased to exist upon his death. Mot. 21-22.

Second, defendants say Shuster's termination right "expired" when he died, citing *Steinbeck*'s dictum that Elaine's "termination rights expired upon her death." 537 F.3d at 197. But this dicta is contradicted six pages later, when the court said her termination right did *not* expire. *Id.* at 203 ("Had Elaine Steinbeck not entered into the 1994 Agreement, the [§] 304(c) termination right *would have* expired….").

Third, defendants misquote Nimmer as "stating that § 304(d) was designed to 'correct the imbalance arising from the fact that the author (or his heirs) failed to terminate previously.'" Opp. 20. The treatise says the opposite, as DC showed in its Rule 12 brief. Docket No. 186 at 16 (3 NIMMER § 11.05[B][2] (2012) ("addition

of twenty more years [to the copyright term] will serve as an additional windfall to the transferee, thereby only exacerbating the imbalance arising from the fact that the author (or his successors) failed to terminate previously"); *infra* at 10:19-20.[4]

## II. DC IS ENTITLED TO JUDGMENT ON ITS THIRD CLAIM.

Defendants' consent agreements violate § 304(c)(6)(D) of the Copyright Act by (i) purporting to assign the Shusters' copyright interests to Pacific Pictures before the effective termination date in 2013, and (ii) barring the Shusters from making any deal with DC without Toberoff's and the Siegels' consent. Mot. 23-25. Citing Nimmer and a New York district court case from 1987, defendants say that § 304(c)(6)(D) created a right without a remedy, Opp. 21-24. They are mistaken.

1. *Milne*, 430 F.3d at 1047, makes clear Congress intended § 304(c)(6)(D) to protect original grantees like DC by "prohibit[ing] a new grant of rights terminated by statute *until after the effective date of termination*—to avoid trafficking in future interests" by third parties, here from 2003 to 2013, Mot. 23. Congress described the rule it crafted in § 304(c)(6)(D) as is "*in the nature of a <u>right</u> of 'first refusal*,'" running in favor of DC, and against "traffick[ers]" like Toberoff. *Milne*, 430 F.3d at 1047 (citing H.R. REP. NO. 94-1476 at 127) (emphases added). Defendants say Congress' words can be ignored, Opp. 23, but *Milne* and others cite them as sound evidence of Congress' intent, *see Mills Music, Inc. v. Snyder*, 469 U.S. 153, 173 n.40 (1985). Defendants also fail to mention that *Milne* rejected Nimmer's reading of § 304, *see* 430 F.3d at 1047; other treatise writers contradict him, 1 GOLDSTEIN ON COPYRIGHT § 5.4.3.1, at 5:127 (2007); and Congress expressed "hostility" toward those like Toberoff, 3 PATRY ON COPYRIGHT § 7.47, at 7-104 n.2 (2009).

---

[4] Defendants also falsely say this Court "acknowledged" Peary is "entitled" to terminate, Opp. 19, when the *Siegel* Court, in fact, said: "the present case only concerns the Siegel heirs' efforts to terminate," Case No. CV 04-8400, Docket No. 293 at 19 n.3, and, "[i]t is by no means a foregone conclusion that the Shuster estate will be successful in terminating," *id*. Docket No. 554 at 23. Defendants also cite *Groucho* and *Milton Greene*, two California "right of publicity" cases, but *neither* involves copyright termination or interprets the meaning of the word "expired."

2. *Bourne*, 675 F. Supp. 859 (S.D.N.Y. 1987), neither helps defendants nor supplants *Milne*. While Bourne sought a declaration that a copyright grant like Toberoff's was invalid, the district court never ruled on the claim. Rather, it found that, while the assignment was "invalid" under § 304(c)(6)(D), *id.* at 861, there was no basis for the grantee to pursue *monetary* damages, *id.* at 865-66. Even assuming this non-binding decision were correct (and it is not), *Bourne* never addressed whether the grantee could sue for declaratory relief and have his negotiation period restored. The Declaratory Judgment Act makes clear courts "may declare the rights and other legal relations of any interested party … whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act gives "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)—as is plainly needed here.

3. Defendants' next argument is that even if § 304(c)(6)(D) gives DC a right, no remedy exists for defendants' violating it. A private right of action exists when:

> (a) plaintiff is "one of the class for whose especial benefit the statute was enacted"; (b) there is "any indication of legislative intent, explicit or implicit … to create such a remedy"; (c) the cause of action is "consistent with the underlying purposes of the legislative scheme"; and/or (d) the cause of action is not one "traditionally relegated to state law." *In re Digimarc Corp. Deriv. Litig.*, 549 F.3d 1223, 1231 (9th Cir. 2008).

Each factor is present here. The text and legislative history of the Copyright Act—like *Milne*—confirm that § 304(c)(6)(D) was meant to protect DC. Congress knew courts routinely enforce negotiation rights. *E.g.*, *Prudential Real Estate Affils., Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 875 (9th Cir. 2000) (rights of first refusal are "ordinarily enforceable"); Mot. at 24-25 (collecting cases); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law"). And permitting DC to protect its right promotes this statutory scheme—how else can traffickers be policed?[5]

---

[5] Defendants suggest Magistrate Zarefsky held otherwise. He did not. In a 2011 *discovery* dispute, he said defendants' 2008 consent agreement *might* not violate § 304(c)(6)(D). He conceded, however, the agreement's illegality was not before

- 11 -    DC'S REPLY IN SUPPORT OF
MOT. FOR PARTIAL SUMM. J.

    5. Without disputing any of the case law on which DC relies, defendants say DC's Third Claim is time-barred.  But, in so doing, they concede that, if the claim is properly based on the 2008 consent agreement (and it is), *or* if the continuing-harm or delayed-discovery doctrines apply (and they do), the claim was timely filed.  Opp. 24.  As for defendants' claims that the illegal Pacific Pictures contracts were cancelled, those irrelevant, fact-bound contentions, (SUF 85, 88, 31 & DC's Responses), ignore that defendants signed another Pacific Pictures contract in *2011*, well within the statutory period.  While Pacific Pictures purported to quitclaim its Shuster copyrights in this 2011 contract, this ignores that Pacific Pictures assigned all of its Shuster rights to defendant IP Worldwide in 2002, which in turn assigned those rights to defendant IPW.  Neither IP Worldwide nor IPW is a party to the 2011 Pacific Pictures contract.  SUF 100-01.  These illegal agreements remain, and defendants engaged in continuing misconduct well within the limitations period.

## III.    DEFENDANTS WAIVED THEIR AFFIRMATIVE DEFENSES.

    Although defendants' answer asserts a series of affirmative defenses to DC's First and Third Claims, their opposition does not move on or prove them.  Circuit authority, contrary to defendants' two district court cases, Opp. 25, holds that their "failure to raise [their] affirmative defense[s] … in opposition to … [DC's] motion constitute[s] an abandonment of the defense[s]."  *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999); *UMWA 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993); Decl. of C. Seto ¶ 2 (meet-and-confer record).

Dated:  August 6, 2012          Respectfully submitted,

                                      By: /s/ Daniel M. Petrocelli
                                           Daniel M. Petrocelli

---

him, "[o]ne cannot know with certainty what the consent agreement means without seeing" it, Docket No. 209 at 8:1-2, and, without looking at the contract, accepted Toberoff's representations about it contents.  Since that ruling, defendants were deposed, and their admissions about the 2008 contract show it unlawfully impedes DC's negotiation rights.  SUF 42-43.  The Court should review the contract itself.