1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

12            Plaintiff,                 **PLAINTIFF DC COMICS'
                                         RESPONSE TO DEFENDANTS'**
13       v.                              **OBJECTIONS TO EVIDENCE IN
                                         PLAINTIFF'S STATEMENT OF**
14  PACIFIC PICTURES                     **UNDISPUTED FACTS,
    CORPORATION, IP WORLDWIDE,**         **DECLARATIONS, AND
15  LLC, IPW, LLC, MARC TOBEROFF,        EXHIBITS**
    an individual, MARK WARREN
16  PEARY, as personal representative of Hon. Otis D. Wright II
    the ESTATE OF JOSEPH SHUSTER,
17  JEAN ADELE PEAVY, an individual,     **Hearing Date**:   Aug. 20, 2012
    LAURA SIEGEL LARSON, an              **Hearing Time**:   1:30 p.m.
18  individual and as personal           **Courtroom**:      11
    representative of the ESTATE OF
19  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
20
              Defendants.
21

22

23

24

25

26

27

28

DC Comics ("DC") hereby responds to defendants' Objections To Evidence In Plaintiff's Statements Of Undisputed Facts, Declarations, And Exhibits. Defendants raise dozens of meritless objections to the relevance of matters in DC's statement of undisputed facts. Such objections are "considered an exceptional remedy and [are] generally disfavored," *Larouche v. Dep't of the Treasury*, 2000 WL 805214, at *13 (D.D.C. Mar. 31, 2000), and defendants do not meet their "'formidable burden'" of striking any of DC's cited evidence. *U.S. ex rel. K&R Ltd. P'ship v. Mass. Housing Fin. Agency*, 456 F. Supp. 2d 46, 53 (D.D.C. 2006). Almost all of defendants' objections are to the relevance or to the admissibility of evidence under Rules 401-403, but such objections are "a[t] the summary judgment stage … a waste of the court's time." *Elwell v. Conair, Inc.*, 145 F. Supp. 2d 79, 84 (D. Me. 2001). Most disturbingly, defendants use their objections to rehash and expand legal arguments about the merits of DC's motion for summary judgment; in so doing, defendants, yet again, evade the Court's page limitations briefs. Docket No. 328. DC regrets the length of this submission, but defendants' spurious objections necessitate it. For the reasons set forth below, their objections should be overruled.

| STATEMENT OF UNCONTROVERTED FACTS |
|---|
| 5. After *AC#1* was published, Siegel and Shuster continued to supply DC with draft Superman material pursuant to work-for-hire agreements. Siegel and Shuster were compensated for their work in royalties and bonuses, both of which increased with Superman's success. [Decl. of Daniel M. Petrocelli ("PD")] Exs. 3-6, 10 at 88-91 ([Finding of Facts ("FOF")] 55-59, 64-77).] |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims whether Siegel and Shuster were compensated in royalties and bonuses. It is also irrelevant whether those royalties and bonuses | Defendants' objections are improper because they do not specify which evidence is objectionable or explain how any particular piece of evidence could possibly "prejudice" the District Court.<br><br>Defendants' relevance objection "a[t] the summary judgment stage … is itself a waste of |

| | |
|---|---|
| increased with Superman's success.  The Copyright Act's termination rights, 17 U.S.C.§§ 304(c),(d), 203(a), do not depend upon how much money an author previously made as a result of his creation, and DC's only purpose in alleging these purported facts is to elicit prejudice. Fed. R. Evid. 401, 402, 403. | the court's time." *Elwell*, 145 F. Supp. 2d at 84. "[N]ormally the balancing process contemplated by [Rule 403] is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000).

In any event, DC's cited evidence is relevant because it provides a history of DC's "long-lasting economic relationship" with Siegel and Shuster.  Docket No. 337 at 4.  For the Shuster heirs, that relationship culminated in the 1992 Agreement, which DC argues in its First Claim bars their termination.  Courts recognize "[t]he entire historical background provides the context for the actions of the parties." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 2009 WL 5064049, at *4 n.13 (E.D. Wis. Dec. 16, 2009).

A "motion to strike [matter attached to motion for summary judgment] is considered an exceptional remedy and is generally disfavored," *Larouche v. Dep't of the Treasury*, 2000 WL 805214, *13 (D.D.C. Mar. 31, 2000).  Defendants do not meet their "formidable burden" for striking this evidence.  *U.S. ex rel. K&R Ltd. P'ship*, 456 F. Supp. 2d at 53. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

6.     By 1941, the *Saturday Evening Post* reported that Siegel and Shuster stood to make over $2 million (in today's terms) in the next year alone.  Fn. 2.  All present day dollar amounts were calculated using the Bureau of Labor Statistics' online inflation calculator, available at: http://www.bls.gov/data/inflation_calculator.htm/.  [PD Ex. 7 at 27.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims how much Jerry Siegel and Joseph Shuster were purportedly paid by DC during | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to |

| | |
|---|---|
| their lifetimes.  The Copyright Act's termination rights do not depend upon how much money an author previously made as a result of his creation, and DC's only purpose in alleging these purported facts is to elicit prejudice.  Fed. R. Evid. 401, 402, 403.<br><br>DC's calculation of the present day value of purported payments using an "online inflation calculator" is improper lay opinion, lacks sufficient underlying facts and data, and foundation.  Fed. R. Evid. 701, 702. | Objection 5.<br><br>"The entire historical background provides the context for the actions of the parties," *Appleton Papers*, 2009 WL 5064049, at *4 n.13, and DC's cited evidence is relevant to show DC's "long-lasting economic relationship" with Siegel and Shuster.  Docket No. 337 at 4.  For the Shuster heirs, that relationship culminated in the 1992 Agreement, which DC argues in its partial summary judgment motion on its First Claim bars their termination claim.<br><br>Defendants' attack on DC's calculation of inflation is spurious.  Courts regularly use statistics, including the consumer price index, as provided by the Bureau of Labor Statistics.  *See Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) (noting it is a regular practice for district courts to use the consumer price index, a statistic provided by the Bureau of Labor Statistics, and to make calculations therefrom). |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

8.      In a 1975 agreement, DC provided Siegel and Shuster with, in today's dollars, lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works.  Siegel and Shuster acknowledged that DC owned all Superman-related copyrights.  [PD Ex. 15.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims how much Siegel and Shuster were purportedly paid under the 1975 agreement.  The termination right does not depend upon how much an author previously made as a result of his creation, and | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>"The entire historical background provides the context for the actions of the parties," *Appleton Papers*, 2009 WL 5064049, at *4 n.13, and DC's |

| | |
|---|---|
| DC's only purpose in alleging these purported facts is to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | cited evidence is relevant because it provides a history of DC's "long-lasting economic relationship" with Siegel and Shuster.  Docket No. 337 at 4; *supra* Responses to Objections 5, 6. |
| DC's calculation of the present day value of purported payments using an "online inflation calculator" is improper lay opinion, lacks sufficient underlying facts and data, and foundation.  Fed. R. Evid. 701, 702. | Defendants' attack on DC's calculation of inflation is spurious.  Courts regularly use such statistics.  *See Sorenson*, 239 F.3d at 1148. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|
| 9.      Since 1975, DC has voluntarily increased the annual payments, made periodic cost-of-living adjustments, given special bonuses, and paid to have Siegel, Shuster, and their families travel to Superman-related events.  [*E.g.,* PD Exs. 17-19; Decl. of Paul Levitz ("LD") Exs. 23, 27, 33, 39, 53, 54, 60, 67, 71, 75-78.] |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims whether DC increased the annual payments, made periodic cost-of-living adjustments, gave special bonuses, or paid to have Siegel, Shuster, and their families travel to Superman-related events.  The termination right does not depend upon any of these issues and DC raises them merely to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. |
| | "The entire historical background provides the context for the actions of the parties," *Appleton Papers*, 2009 WL 5064049, at *4 n.13, and DC's cited evidence is relevant because it provides a history of DC's "long-lasting economic relationship" with Siegel and Shuster.  Docket No. 337 at 4; *supra* Responses to Objections 5, 6. |
| | Defendants' attack on DC's calculation of inflation is spurious.  Courts regularly use statistics, including the consumer price index, as provided by the Bureau of Labor Statistics.  *See Sorenson*, 239 F.3d at 1148 . |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

10.    All told, the Siegels and Shusters have been paid well over $4 million under the 1975 agreement, not including medical benefits or bonuses.  [LD ¶ 4 & Exs. Exs. 23, 27, 33, 39, 53, 60, 67, 71.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims how much the Siegels and Shusters have been paid under the 1975 agreement.  The termination right does not depend upon how much an author or his heirs made as a result of the author's creation, and DC's only purpose in alleging these purported facts is to elicit prejudice.  Fed. R. Evid. 401, 402, 403.<br><br>Again, DC's calculation of the present day value of purported payments to the Siegels and Shusters is improper lay opinion, lacks sufficient underlying facts and data, and lacks foundation.  Fed. R. Evid. 701, 702. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>"The entire historical background provides the context for the actions of the parties," *Appleton Papers*, 2009 WL 5064049, at *4 n.13, and DC's cited evidence is relevant because it provides a history of DC's "long-lasting economic relationship" with Siegel and Shuster.  Docket No. 337 at 4; *supra* Responses to Objections 5, 6.<br><br>Moreover, the amount the Shusters were paid under the 1975 Agreement is relevant to demonstrate the additional consideration they received for re-granting their rights to DC under the 1992 Agreement.  *See Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 204 (2d Cir. 2008); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1046 (9th Cir. 2005); *e.g.*, Pl. DC Comics' Reply ISO Mot. For Partial S. J. On Its First And Third Claims For Relief ("DC's MSJ Reply") at 7.<br><br>Defendants' "present day value" objection is misplaced, as DC never asserted that the $4 million figure was adjusted to present day terms.  Moreover, Paul Levitz attested to that figure, Docket No. 460 at 1 ¶ 4; his declaration establishes his personal knowledge to account for this fact, *id*. at 1 ¶ 1; and defendants have done |

| | |
|---|---|
| | nothing to dispute his testimony. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

11.    Neither Siegel nor Shuster ever attempted to exercise any purported termination right, although the windows for both to do so opened in 1984, while both were alive.  [*E.g.,* PD Exs. 25-31, 37.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| To the extent that DC implies that Siegel and Shuster did not exercise their termination rights because they did not want to get their Superman copyrights back, this is unsupported by the evidence cited, is speculative, lacks personal knowledge, and lacks foundation.  Fed. R. Evid. 602.<br><br>Moreover, it is irrelevant to DC's claims whether Siegel or Shuster wanted to get their Superman copyrights back, and DC's only purpose in alleging these purported facts is to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>Defendants' objection is also improper because it does not assert legal arguments regarding DC's evidence, but rather, disputes the "inferences" that may be drawn from it.  The court may draw inferences in favor of the moving party where they are the only reasonable inference to be drawn.  *See Avila v. Willits Envmt'l Remediation Trust*, 633 F.3d 828, 841 (9th Cir. 2011).  Defendants' argument, without factual support, does not defeat any inference, and the "entire historical background provides the context for the actions of the parties."  *Appleton Papers*, 2009 WL 5064049, at *4 n.13.<br><br>Finally, DC's factual statement is fully supported by the termination notices it cites, which show that they were executed and served after Siegel and Shuster's respective deaths.  Defendants cite no contrary evidence—they only make lawyer's arguments. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

14.    On August 17, 1992, Jean filed a sworn affidavit in California state court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her."  [PD Ex. 21.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that Jean Peavy purportedly filed an affidavit in California state court identifying herself as Shuster's heir and/or requesting that his minimal assets (shares of Time Warner stock) be transferred to her. Fed. R. Evid. 401, 402, 403.<br><br>As Joseph Shuster's sister, Jean Peavy did not have any termination rights and could not gain any such rights from this alleged transfer, otherwise. 17 U.S.C. §§ 304(c)(2), 304(d). Nor did anyone hold any Shuster termination rights until termination rights were extended for the first time to the executor of an author's estate by the 1998 Copyright Term Extension Act. *Id.* Nor did Jean Peavy hold any Superman copyright interest, as Siegel and Shuster's Superman copyrights had long ago been assigned to DC. *Siegel v. Warner Bros. Ent. Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1107-10 (C.D. Cal. 2008). | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>Jean's affidavit is relevant to establish the circumstances leading to the negotiation and execution of the 1992 Agreement, which DC alleges bars the Shuster's termination. *See Appleton Papers*, 2009 WL 5064049, at *4 n.13. Shortly after Jean filed the affidavit, she contacted DC identifying herself as Joe Shuster's sole heir, and asked DC to cover his debts and expenses and other consideration. Pl. DC Comics' Statement Of Uncontroverted Fact ("SUF") 15. The affidavit shows Jean's understanding of her role in Joe Shuster's testamentary scheme, and her using that position to extract additional compensation from DC in the 1992 Agreement. Courts have considered such facts in determining whether a post-1978 agreement bars a copyright termination claim. *See Steinbeck*, 537 F.3d at 204; *Milne*, 430 F.3d at 1046.<br><br>Jean's actions in the probate court also show she had full right and authority to assign to DC any and all interests in Joe Shuster's copyrights, as DC shows in its motion papers. Pl. DC Comics' Mot. For Partial S. J. On Its First And Third Claims For Relief ("DC's MSJ") at 5, 8-9, 21-22; DC's MSJ Reply at 7-8. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

15.    Four days after filing her affidavit in the California probate court, Jean wrote to DC, identifying herself as "heir to [Joe Shuster's] Will" and asking DC to pay

| | |
|---|---|
| Shuster's "final debts and expenses." [LD Ex. 3.] | |
| **DEFENDANTS' OBJECTION** | **DC'S RESPONSE** |
| It is also not relevant to DC's claims that Jean Peavy purportedly wrote to DC, identifying herself as Shuster's heir, and asking for his final debts and expenses to be paid. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. |
| | Jean's 1992 letter is relevant to establish the circumstances leading to the negotiation and execution of the 1992 Agreement, which DC alleges bars the Shuster's termination. *See Appleton Papers*, 2009 WL 5064049, at *4 n.13. In the letter, Jean contacted DC, identified herself as Joe Shuster's sole heir of Shuster's estate, and asked DC to cover his debts and expenses and other consideration. SUF 15. The affidavit shows Jean's understanding of her role in Joe Shuster's testamentary scheme, and her using that position to extract additional compensation from DC in the 1992 Agreement. Courts consider such facts in determining whether a post-1978 agreement bars a copyright termination claim. *See Steinbeck*, 537 F.3d at 204; *Milne*, 430 F.3d at 1046; *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 989-90 (9th Cir. 2008) . Jean's actions also show she had full right and authority to assign to DC any and all interests in Joe Shuster's copyrights, as DC explains in its motion papers. DC's MSJ at 5, 8-9, 21-22; DC's MSJ Reply at 7-8. |
| **STATEMENT OF UNCONTROVERTED FACTS** | |
| 16.    DC offered to cover Joe's debts and increase survivor payments to his brother Frank from $5,000 to $25,000 per year. [LD Ex. 5; PD Ex. 23.] | |
| **DEFENDANTS' OBJECTION** | **DC'S RESPONSE** |
| It is also not relevant to DC's | Defendants' relevance and 403 objections made at |

| claims that DC purportedly offered to cover Joe Shuster's debts, and DC only makes this factual claim to elicit prejudice. Fed. R. Evid. 401, 402, 403. | the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. |
|---|---|
| | DC's initial offer to Jean is relevant to establish the circumstances leading to the negotiation and execution of the 1992 Agreement, which DC alleges bars the Shuster's termination. *See Steinbeck*, 537 F.3d at 204; *Milne*, 430 F.3d at 1046; *Mewborn* 532 F.3d at 989-90; *Appleton Papers*, 2009 WL 5064049, at *4 n.13. |
| | Defendants also falsely argue in the opposition brief that DC and Jean and Frank never negotiated the 1992 Agreement. Defs. Opp. to DC Comics' Mot. For Partial S. J. On Its First And Third Claims For Relief ("Defs. MSJ Opp.") at 16. DC's initial offer to Jean—which it increased and modified a number of times at Jean's and Frank's request—is directly relevant to refute defendants' untrue factual claims. DC's MSJ Reply at 7. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

17.    On September 10, 1992, Frank sent a letter to DC's then-Executive Vice President, Paul Levitz, stating he was "extremely pleased" with the increased payments, and asking, after "discuss[ing] this good news with [Jean]," that payments be made directly to Jean, who would "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." Frank asked if he and Jean could meet with Levitz in New York to discuss the issue. [LD Ex. 6.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is also not relevant to DC's claims that Frank Shuster sent a letter to Paul Levitz stating he was pleased that DC increased his survivor payments, and asking that such payments be sent to his | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. |
| | Frank's letter responding to DC's offer and expressing his pleasure with it is relevant to |

sister for tax purposes. Frank Shuster's pleasure and/or displeasure with the payments has no bearing on the inalienable termination right of the executor of Joe Shuster's estate. 17 U.S.C. §§ 304(c)(5), 203(a)(5), 304(d); *Stewart v. Abend*, 495 U.S. 207, 230 (1990); *Classic Media, Inc. v. Mewborn* ("*Mewborn*"), 532 F.3d 978, 984-8l; *Marvel Character, Inc. v. Simon* ("*Simon*"), 310 F.3d 280, 290. DC again includes these purported facts merely to elicit prejudice. Fed. R. Evid. 401, 402, 403.

To the extent that DC seeks to rely upon the letter for the truth of the matter asserted, it is inadmissible hearsay. Fed. R. Evid. 801, 802. To the extent that DC seeks to characterize Frank Shuster's state of mind based upon the letter, it lacks personal knowledge and foundation. Fed. R. Evid. 602.

establishing the circumstances leading to the negotiation and execution of the 1992 Agreement, which DC alleges bars the Shuster's termination. *See Steinbeck*, 537 F.3d at 204; *Milne*, 430 F.3d at 1046; *Mewborn* 532 F.3d at 989-90.

Frank's letter demonstrates he understood and acknowledged the additional consideration he and Jean were receiving in exchange for granting any claims they had in any Superman rights to DC.

Defendants improperly use their objections to make merits-based arguments about the alleged "inalienability" of termination rights, but such arguments needed to be made in their 25-page opposition brief, *cf.* Docket No. 328 (reprimanding defense counsel before for "slithering around" the Court's page limits), and are baseless in any event. DC's MSJ at 10-11; DC's MSJ Reply at 1-2.

Frank's letter is not hearsay because it is used to demonstrate his state of mind at the time he entered into the 1992 Agreement with DC. FED. R. EVID. 803(3); *Wagner v. Cnty. of* Maricopa, 673 F.3d 977, 980-81 (9th Cir. 2012). It also recounts party admissions by Jean and communicates an offer she made to DC—neither of which are hearsay. *E.g.*, FED. R. EVID. 801(d)(2) (party admission rule); *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 892 (7th Cir. 1995) (legal act such as offer not hearsay).

Defendants' personal knowledge and foundation claims are inapposite, as DC does not "seek to characterize" Frank's state of mind, as defendants assert. Rather, DC simply quoted Frank's words. He is the one who said he was "extremely pleased."

1

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

18.    Levitz dealt with scores of authors and heirs during his decades running DC. When DC agreed to grant an author or heir's request for additional money, Levitz would give them the same admonition:  this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC.  Levitz reiterated this condition to Frank and Jean in 1992, who confirmed they understood and agreed.  [LD ¶ 8.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| DC's assertion that Paul Levitz gave the same admonition to every writer, artist, or family member is improper habit evidence. Fed. R. Evid. 406.  It is also irrelevant to DC's claims because the inalienable termination right cannot be overcome by an admonition and can be exercised "notwithstanding any agreement to the contrary." 17 U.S.C. §§ 304(c)(5), 203(a)(5), 304(d); *Stewart v. Abend*, 495 U.S. 207, 230 (1990); *Mewborn*, 532 F.3d 978, 984-81; *Simon*, 310 F.3d at 290. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Paul Levitz's discussion with Jean and Frank concerning the 1992 Agreement and that they were relinquishing all their rights to Superman could not be more relevant. *Steinbeck*, 537 F.3d at 200-04; *Milne*, 430 F.3d at 1045; DC's MSJ Reply at 2-4. Citing no evidence, defense counsel pretends Jean and Frank made the 1992 Agreement in a state of ignorance; Levitz's uncontroverted testimony refutes this false claim.  *Id.*

Levitz's statement that he gave the "same admonition" to other writers or authors is neither rebutted nor impeached and is relevant evidence of habit or routine practice that is relevant to proving conformity on a specific occasion.  FED. R. EVID. 406;  *Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir. 1986) (defining "habit" as "a regular practice of meeting a particular kind of situation with a certain type of conduct").   Having chosen not to depose Levitz on this issue or his declaration generally, Docket Nos. 461 at 4-5, 10, 12-14, 17; 467 at 2, defendants do not and cannot dispute that Levitz's "regular practice of meeting a particular |

|  | kind of situation with a specific type of conduct," FED. R. EVID. 406 advisory committee note, occurred here. |
|  | Again, defendants improperly use their objections to make merits-based arguments about "agreements to the contrary," but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event.  DC's MSJ at 5-6; DC's MSJ Reply at 8; *supra* Response to Objection No. 17. |

### STATEMENT OF UNCONTROVERTED FACTS

19.    The parties executed an agreement on October 2, 1992, confirming that DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life.  In exchange, Jean and Frank re-granted all of Joe Shuster's rights (including any Superman copyrights) to DC and vowed never to assert a claim to such rights.

The 1992 agreement stated, in pertinent part:

> We [DC ]ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon.  In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.

[LD Ex. 8.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| DC's assertion that Jean and Frank "re-granted all of Joe Shuster's rights (including any Superman copyrights) to DC and vowed never to assert a claim to such rights" is wholly unsupported by the evidence cited, lacks foundation and | Defendants' relevance objection made at the summary judgment stage is "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page |

| | |
|---|---|
| amounts to inadmissible speculation, argument, and legal conclusion.  Fed. R. Evid.  602, 701, 702.<br><br>DC's assertion is also irrelevant because the 1992 agreement, as a matter of copyright law, could not prevent or otherwise limit the executor of the Shuster Estate (which was not even a party to the agreement) from later exercising his inalienable termination right.  17 U.S.C. §§ 304(c)(5); 203(a)(5), 304(d); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*, 310 F.3d at 290; Fed. R. Evid. 401, 402. | opposition brief, and are baseless in any event.  DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.<br><br>Defendants attack the second sentence in DC's Statement of Undisputed Fact No. 19, but the plain language of the 1992 Agreement fully supports DC's claim in that sentence that Jean and Frank "re-granted all of Joe Shuster's rights (including any Superman copyrights) to DC and vowed never to assert a claim to such rights."  The contract itself, as quoted above, expressly says "you [Jean and Frank] now *grant to* us [DC] any such rights"—which were defined as "all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon."  It also says:  you now "release us [DC], our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever." |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|
| 20.    Over the next decade, DC maintained good relations with the Shusters, and Jean and Levitz corresponded regularly.  In the close to 60 letters back and forth between Paul and Jean, Jean thanked DC for its generosity, reaffirmed the 1992 agreement, and requested bonus payments in excess of those required.  [LD ¶ 9 & Exs. 3, 10, 11, 16-20, 22-35, 37, 39, 41-43, 45-61, 63-74, 77-78.] |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that it purportedly maintained good relations with the Shusters, by sending letters | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to |

| | |
|---|---|
| 1 | back and forth.  The Shuster executor's termination right does not depend upon the Shuster heirs having had poor relations with DC.  Nor is it relevant whether Jean Peavy thanked DC, reaffirmed the 1992 Agreement, or requested Christmas bonuses.  The termination right is inalienable and cannot be waived or limited by supposedly good relations with DC, the 1992 Agreement, or bonuses.  17 U.S.C. 304(c)(5); 203(a)(5); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*, 310 F.3d at 290.  DC injects these irrelevant factual claims into its motion only to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | Objection 5.<br><br>Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event.  DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.<br><br>The cited letters between Jean and Levitz show that the parties' conduct under the 1992 Agreement was consistent with a mutual understanding that the Agreement was intended to finally settle all claims and disputes regarding Superman, as DC argues on its motion on its First Claim.  Such subsequent conduct evidence is fully appropriate and relevant, as defendants' own cases confirm.  DC's MSJ Reply at 1-8; *Wang v. Chen*, 1992 WL 7840, at *6 (S.D.N.Y. Jan. 10, 1992) ("consent to a novation 'may be implied from all the facts and circumstances'"); *Brown Bros. Contractors Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (N.Y. 1977) ("objective manifestations" of intent shown through parties' "words and deeds," "the attendant circumstances, the situation of the parties, and the objectives they were striving to attain")  (cited in Defs.' MSJ Opp. at 13); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 965 (9th Cir. 2011) ("subsequent conduct can be used in some instances to discern contractual intent").  Jean's letters thanking DC for its generosity are also relevant evidence that she acknowledged the additional consideration she received under the 1992 Agreement in exchange for granting her termination rights to DC, as she was free to do under the Copyright Act.  H.R. REP. NO. 94-1476 at 142 (1976); *Steinbeck*, 537 F.3d at 200-04; |

| | |
|---|---|
| | *Milne*, 430 F.3d at 1045. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

21.    In a 1993 letter, Jean confirmed she would "stick to our bargain" and not attempt "to reclaim the SUPERMAN copyright," but asked for an increase in payments "plus a yearly increment to account for inflation."  [LD Ex. 20.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that Jean Peavy purportedly stated she was not planning to reclaim the Superman copyright.  Nor is it relevant that she allegedly stated she would "stick to our bargain." Jean Peavy (Joseph Shuster's sister) has never held any termination rights under the Copyright Act.  *See* 17 U.S.C. § 304(c)(2).  Moreover, neither the 1992 Agreement nor statements in a letter can waive or limit the inalienable termination right, as a matter of copyright law.  17 U.S.C. §§ 304(c)(5); 203(a)(5); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*, 310 F.3d at 290.  These irrelevant factual claims are meant only to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and Rule 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.

Jean's statement to DC that she would "stick to her bargain" by not seeking to recapture Shuster's copyrights demonstrates that Jean understood and acknowledged that she had granted her termination rights to DC in the 1992 Agreement, as she was free to do under the Copyright Act.  *Id.* |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

22.    In 1999—after Congress amended the copyright statute to grant additional statutory heirs termination rights, 17 U.S.C. § 304(d), and after learning that Jerry Siegel's heirs had served Superman copyright termination notices on DC—Jean reiterated her commitment "to honor" the 1992 Agreement, and again asked for a

bonus:

> I have learned from the Internet that Joanne Siegel has filed a copyright claim for SUPERMAN. I want you to know that I intend to continue to honor our pension agreement. I would, however, appreciate a generous bonus for this year as you had done many times in the past.

[LD Ex. 59.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that Jean Peavy allegedly stated she would "honor" the 1992 agreement after learning that the Siegel heirs had served termination notices. Jean Peavy (Joseph Shuster's sister) has never held any termination rights under the Copyright Act. *See* 17 U.S.C. § 304(c)(2). Moreover, such statements cannot waive or limit the inalienable termination right as a matter of copyright law. 17 U.S.C. 304(c)(5); 203(a)(5); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-8l; *Simon*, 310 F.3d at 290. The only purpose DC has in alleging such an irrelevant fact is to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.<br><br>Jean's statement to DC that she would "honor" the 1992 Agreement, read in conjunction with her comment about Joanne Siegel's recent termination notice, is evidence that Jean understood and acknowledged that the 1992 Agreement operated, as DC argues, to bar defendants' copyright termination claim. Such subsequent conduct evidence is fully relevant—especially in the face of defendants' factually unsupported claims to the contrary. DC's MSJ Reply at 1-8; *supra* Response to Objection No. 20. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

23.    In 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. [LD Exs. 23, 27, 33, 39, 53, 60, 67, 71.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that DC provided Jean Peavy with Christmas bonuses; such bonuses have no effect on the Shuster executor's termination right.  *See* 17 U.S.C. §§ 304(c)(2), 304(c)(5), 203(a)(5), 304(d); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-8l; *Simon*, 310 F.3d at 290 .  DC alleges these irrelevant facts merely to elicit bias. Fed. R. Evid. 401, 402, 403. | Defendants' objection is improper because it does not identify which specific evidence is objectionable.  Moreover, defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. |
| | Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17. |
| | The cited letters between Jean and Levitz concerning bonuses paid to Jean show that the parties' conduct under the 1992 Agreement was consistent with a mutual understanding that the Agreement was intended to finally settle all claims and disputes regarding ownership of the Superman rights.  Jean's letters thanking DC for its generosity are also relevant to show she acknowledged the additional consideration she received in exchange for granting any and all rights to DC, and that she believed and reaffirmed it was a fair bargain.  DC's MSJ Reply at 1-8. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|
| 24.     In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal rights to make such requests, but would pay her a bonus anyway, which she thanked DC for doing.  [LD Ex. 23.] |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is again irrelevant to DC's claims whether DC paid Jean Peavy a bonus; such bonuses have no effect on the Shuster | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to |

| | |
|---|---|
| executor's termination right. *See* 17 U.S.C. §§ 304(c)(2), 304(c)(5), 203(a)(5), 304(d); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*, 310 F.3d at 290.  DC alleges these irrelevant facts merely to elicit bias.  Fed. R. Evid. 401, 402, 403. | Objection 5. <br><br> Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17. <br><br> The cited letter between Jean and Levitz show that the parties' conduct under the 1992 Agreement was consistent with a mutual understanding that the Agreement was intended to finally settle all claims and disputes regarding ownership of the Superman rights.  Jean's letter thanking DC is also relevant to show she acknowledged the additional consideration she received in exchange for granting any and all rights to DC.  DC's MSJ Reply at 1-8; Response to Objection No. 20. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

25.     DC has paid the Shusters over $610,000 under the 1992 agreement and as special bonuses, and DC continues to make payments to Jean to this day.  [LD ¶ 9 & Exs. 23, 27, 33, 39, 53, 60, 67, 71.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| How much Frank and Jean Shuster were paid under the 1992 agreement and any bonuses are irrelevant to DC's claims, and have no effect on the Shuster executor's termination right.  Fed. R. Evid. 401, 402.  *See* 17 U.S.C. §§ 304(c)(2), 304(c)(5), 203(a)(5), 304(d); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*, | Defendants' objection is improper because it does not identify which specific evidence is objectionable.  Moreover, defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. <br><br> Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; |

DC'S RESP. TO DEFS.' OBJS.

| 310 F.3d at 290. | Response to Objection No. 17. |
| | Finally, defendants falsely suggest the consideration Jean received under the 1992 agreement was paltry. These facts dispute that erroneous claim. DC's MSJ Reply at 1-8. |

| STATEMENT OF UNCONTROVERTED FACTS | |
| --- | --- |

26.    Jean's 50-year-old son, Mark Peary (born Peavy), who lives with his mother and does not have a job, testified that Jean was of sound mind when she sent these letters to DC. [PD Ex. 46 at 443:19-444:22.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
| --- | --- |
| Mark Warren Peary's age, residence, and career are all irrelevant to DC's claims. So too is whether Jean Peavy was of sound mind when she sent DC letters, as the letters are irrelevant as set forth above. DC makes these irrelevant factual claims merely to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>Jean's mental capacity is relevant to establish the enforceability of the 1992 Agreement, her competence to enter into it, and her competence when corresponding with DC throughout the 1990s, when she repeatedly affirmed DC's understanding of the 1992 Agreement, as set forth in its First Claim in this case. The background information about Peary is relevant to show his motivation to pursue this baseless termination claim, to improperly traffic in alleged termination rights and to engage in misconduct in the probate courts and elsewhere to frustrate DC's rights under the 1992 Agreement, as DC challenges in its First and Third Claims in this case. DC's MSJ at 10-17; DC's MSJ Reply at 1-8, 10-12. |

| STATEMENT OF UNCONTROVERTED FACTS | |
| --- | --- |

27.    Mark Peary, Jean's doctor, and Jean's daughter testified that, after "suffer[ing] a debilitating stroke in May of 2009," Jean has aphasia, and has difficulty communicating and "understand[ing] what people are saying." [PD Exs. 44, 46 at 447:18-448:3, 455:10-21, 48 at 517:17-22, 520:2-4, 523:4-13.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| Jean Peavy's physical and mental health is irrelevant to DC's claims.  As the sister of Joseph Shuster, Jean has never held termination rights under the Copyright Act, 17 U.S.C. § 304(c)(2), or purported to exercise those rights.  DC raises these issues merely to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | Defendants' objection is improper because it does not identify which specific evidence is objectionable.  Moreover, defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Jean's recent mental capacity is relevant to show that documents that Toberoff engineered after the filing of this lawsuit and Jean's stroke—like the 2011 PPC Agreement, which defendants feature in their opposition brief—is a fraud.  *E.g.*, DC's MSJ Reply at 8, 10-12. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|
| 28.    In 1996, Peary sent Levitz a screenplay about "the life story of Joe Shuster and Jerry Siegel" called "Dreamers," and asked Levitz to share it with Warner Bros.  Peary's screenplay detailed how Shuster became estranged from DC, but toward the end of his life, he and DC made amends.  [LD ¶ 10 & Ex. 44.] | |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| Mark Warren Peary's screenplay, its contents, and that he sent it to Paul Levitz are all irrelevant to DC's claims.  Fed. R. Evid. 401, 402, 403.  Moreover, to the extent that DC attempts to rely on the screenplay to establish that Shuster and DC "made amends," the screenplay does not support the claimed fact and is inadmissible hearsay.  Fed. R. Evid. 801, 802.  The screenplay also lacks foundation and personal | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

The fact that Peary sent his screenplay to Levitz in 1996 and made no mention of termination rights or any indication of an interest in recapturing Joe Shuster's copyright—to the contrary, he sought DC's help and collaboration—shows Peary understood his family had no termination rights in light of the 1992 Agreement.  The screenplay is not hearsay, as it was written by Peary and is thus a party admission.  FED. R. EVID. 801(d)(2).  And the last |

DC'S RESP. TO DEFS.' OBJS.

| | |
|---|---|
| knowledge.  Fed. R. Evid. 602.  The relevant screenplay is mentioned only to elicit prejudice.  Fed. R. Evid. 403. | act of the screenplay, which Peary testified he based on historical research, Docket No. 305-37 at 1123:11-14, clearly shows that Joe Shuster did make amends with DC, Levitz Decl. Ex. 44 at 126-30—contrary to defendants' persistently false claims that DC mistreated him, *e.g.*, Defs.' MSJ Opp. at 4-5. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

29.    Warner Bros. declined to develop "Dreamers," and in 1999, Peary submitted a revised script and asked Levitz if the Siegel family's copyright termination effort would "interfere with [him] selling [his] screenplay."   [LD ¶ 10 & Ex. 46, 62.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims that Mark Warren Peary submitted a revised copy of his screenplay after Warner Bros. rejected it.  It is likewise irrelevant that Mark Warren Peary asked Paul Levitz if the Siegel family's statutory termination would interfere with his efforts to sell the screenplay.  DC makes these irrelevant factual allegations to elicit prejudice.  Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>The fact that Peary contacted Levitz again in 1999 and made no mention of termination rights or any indication of an interest in recapturing Joe Shuster's copyright—to the contrary, he once again sought DC's help and collaboration, even though he makes clear he was aware of the Siegels' termination notices—shows Peary understood his family had no termination rights in light of the 1992 Agreement.  *See* FED. R. EVID. 803(3). |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

30.    Before Peary met Marc Toberoff, he never told DC the Shusters had a right to terminate or challenged the 1992 Agreement.  Instead, from 1992 to 2001, he and Jean affirmed the Agreement and accepted payments under it.  [LD ¶ 10 & Exs. 20, 23, 24, 26, 27, 28, 33, 34, 39, 43, 53, 54, 59, 60, 61, 67, 68, 71, 72.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| There is no evidence to support the purported fact that | Defendants' objection is improper because it does not identify which specific evidence is |

Mark Warren Peary affirmed the 1992 agreement. There is no evidence to support the purported fact that Mark Warren Peary accepted payments under the 1992 agreement. Moreover, that Jean Peavy, or even Mark Warren Peary, purportedly affirmed the 1992 agreement and/or accepted payments under it is not relevant to DC's claims. Fed. R. Evid. 401, 402. Jean Peavy (Joseph Shuster's sister) has never held any termination rights. Mark Warren Peary has also personally never held termination rights under the Copyright Act. After the Joseph Shuster's estate was probated in mid-2003, Mr. Peary was duly appointed the executor of Joseph Shuster's estate, and holds termination rights under the Copyright Act only in that capacity. 17 U.S.C. §§ 304(c)(2), 304(d). Moreover, the termination right is inalienable and cannot be waived, released, or limited by alleged statements, or otherwise. 17 U.S.C. §§ 304(c)(5), 203(a)(5); *Stewart*, 495 U.S. at 230; *Mewborn*, 532 F.3d at 984-81; *Simon*,

objectionable. Moreover, defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.

Of course, Peary accepted the benefits of the 1992 Agreement and never disputed it. He is mentioned in letters discussing it, *e.g.*, Levitz Decl. Ex. 43, 54, 60, 67, 68, 71; he helped his mother calculate Joe Shuster's debts, which DC agreed to pay under the 1992 Agreement, *Id.* Ex. 7; Docket No. 305-37 at 1224:17-23; and Jean said Peary handled "all things legal" for her, PD Ex. 38 at 310:14-312:13. Levitz also testified, without any rebuttal, that: "I also exchanged correspondence over the years with Jean's son, Mark Warren Peary…. Mark Peary never told me that he thought he or his family had any remaining termination claims to assert." Levitz Decl. ¶ 10.

DC'S RESP. TO DEFS.' OBJS.

| 310 F.2d at 290. | |
|---|---|
| **STATEMENT OF UNCONTROVERTED FACTS** | |
| 33.    Peary admits that, in 2003, he understood "that all of the Joe Shuster rights, termination rights, to the extent they existed, were being transferred and assigned to the venture just as [the contract] says."  [PD Ex. 46 at 482:8-23.] | |
| **DEFENDANTS' OBJECTION** | **DC'S RESPONSE** |
| Mark Warren Peary's purported statement that he understood that Joseph Shuster's termination rights were being transferred to the venture constitutes improper lay opinion.  Fed. R. Evid. 701.  It also represents improper legal opinion.  Fed. R. of Evid. 702; *see also Aguilar v. International Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992) (explaining that legal opinions and conclusions are "inappropriate subjects [even for expert testimony"). Moreover, the purported statement is irrelevant to DC's claims since termination interests cannot be transferred to a third party prior to the effective date of termination, regardless of the parties' understandings.  17 U.S.C. §304(c)(6)(D); Fed. R. Evid. 401, 402.  Finally, the right to serve a termination notice is held solely by a certain statutorily-defined class of | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Peary's testimony is relevant to DC's majority-interest claim, which is that the Shuster termination notice is invalid because when Peary signed the Notice, he had already transferred the Shuster termination rights to a joint venture with Toberoff's company and, thus, did not possess a majority interest required by law.  17 U.S.C. § 304(d)(1), (c)(1)-(4).  DC's MSJ at 18-20; DC's MSJ Reply at 8.

Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 11-12; DC's MSJ Reply at 8; Response to Objection No. 17.

Defendants never made their legal opinion argument when Peary was deposed, PD Ex. 46 at 482:8-23, and, thus, the objection was waived, FED. R. CIV. P. 32(d); *Bridges v. Armour*, 46 U.S. (5 How.) 91, 93 (1847) ("plaintiffs in error waived the objection by failing to make it when the deposition was taken"); *Batelli v. Kagan & Gaines Co.*, 236 F.2d 167, 170 (9th Cir. 1956). Moreover, DC does not use this testimony as |

| | |
|---|---|
| persons, and the joint venture was not and has never been a member of any such class. *See* 17 U.S.C. § 304(c)(2)(A)-(D). No private contract could create a new statutory class eligible or required to sign a termination notice. | "legal opinion," but rather, as evidence of Peary's intent and understanding in entering into the PPC Agreements. As a signatory to the agreement, he has personal knowledge of its contents and his testimony is relevant to its interpretation. FED. R. EVID. 602, 901(b)(1); *Wagner*, 673 F.3d at 981; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir. 2002). This intent and understanding also shows that the submissions he and Toberoff made to the Copyright Office were false, misleading, and improper. DC's MSJ at 18-20; DC's MSJ Reply at 8. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|
| 35. Peary negotiated the Pacific Pictures agreements directly with Toberoff, and without receiving any outside advice from counsel. [PD Ex. 39 at 319:9-320:14.] | |
| **DEFENDANTS' OBJECTION** | **DC'S RESPONSE** |
| It is irrelevant to DC's claims whether Mark Warren Peary negotiated the Pacific Picture agreements directly with Marc Toberoff without receiving outside advice from counsel. DC raises this issue merely to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. This evidence is relevant background evidence of Toberoff's and Peary's illicit scheme, which DC challenges under its First and Third Claims. *Id.* |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|
| 36. Peary only told his mother about the Pacific Pictures agreements "just before [they] were ready to sign." [PD Ex. 46 at 492:20-493:11.] | |
| **DEFENDANTS' OBJECTION** | **DC'S RESPONSE** |
| It is irrelevant to DC's claims when Mark Warren Peary purportedly told his mother, Jean Peavy, about the Pacific Pictures agreements. Jean Peavy (Joseph Shuster's sister) | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. Peary's testimony establishes that he pursued the |

| | |
|---|---|
| has never held any termination rights under the Copyright Act or purported to exercise any such rights.  *See* 17 U.S.C. § 304(c)(2).  DC makes this unsupported and irrelevant factual claim solely to elicit prejudice. Fed. R. Evid. 401, 402, 403. | termination of Joe Shuster's copyright grants unilaterally, without Jean's involvement, even though Jean had originally represented herself to DC as the "beneficiary" and "heir" to Joe Shuster's estate and signed the operative 1992 Agreement that effectively bars the termination claim that defendants assert.  DC's MSJ at 10-18; DC's MSJ Reply at 1-8. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

37.    When asked years ago about the Pacific Pictures agreements, Jean testified her "son handles everything legal" and she did not "know what's going on."  [PD Ex. 38 at 310:14-312:13.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims whether Mark Warren Peary's mother handled legal matters relating to the Pacific Pictures agreements.  It is likewise irrelevant if she knew what was going on with these various legal matters.  Jean Peavy (Joseph Shuster's sister) has never held any termination rights under the Copyright Act nor has she purported to exercise any such rights.  *See* 17 U.S.C. § 304(c)(2).  DC raises this irrelevant issue only in an effort to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time."  *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event.  DC's MSJ at 11-12; DC's MSJ Reply at 1-8; Response to Objection No. 17.

Peary's testimony establishes that he pursued the termination of Joe Shuster's copyright grants unilaterally, without Jean's involvement, and is relevant background evidence of Toberoff's and Peary's illicit scheme, which DC challenges under its First and Third Claims.  DC's MSJ at 10-18; DC's MSJ Reply at 1-8; *supra* Response to Objections 35, 36. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

38.    In 2003, Peary initiated proceedings to probate Joe Shuster's estate—even

DC'S RESP. TO DEFS.' OBJS.

though, in 1992, his mother had already filed an affidavit in California probate court to obtain all of Shuster's assets. Peary asked the court to appoint him executor in place of his mother. [PD Exs. 21, 33-34.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| It is irrelevant to DC's claims whether Jean Peavy allegedly filed an affidavit in California court to obtain Joe Shuster's minimal assets (shares of Time Warner stock). It is also irrelevant whether it was Jean or Mark Warren Peary who later asked the court (when a petition was filed in 2003 to probate Shuster's estate according to his will) to duly appoint Peary as the executor of Joseph Shuster's estate, although it was, in fact, Jean (age 86) who declined to act as executrix. DC makes these purported factual claims merely to elicit prejudice. Fed. R. Evid. 401, 402, 403. | Defendants' objection is improper because it does not identify which specific evidence is objectionable. Moreover, Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.

Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 15; DC's MSJ Reply at 1-8; Response to Objection No. 17.

The ways in which Peary manipulated the probate process are directly relevant to refute defendants' erroneous arguments that Peary is not bound by the 1992 Agreement. DC's MSJ at 15; DC's MSJ Reply at 1-8. |

| STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|

39.    Peary has kept this probate matter open for nine years—despite his sworn responsibility as executor to "complet[e] the estate administration as promptly as possible." [PD Ex. 35.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| The length of time Joseph Shuster's estate must be kept open is also irrelevant to DC's claims. Fed. R. Evid. 401, 402, 403. The estate was expressly probated to avail itself of the termination right | Defendants' objection is improper because it does not identify which specific evidence is objectionable. Moreover, Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at |

| | |
|---|---|
| (extended to estates by the 1998 CTEA) and is kept open at least until the effective 2013 termination date, because the copyright interests reverting under the termination cannot be transferred in advance.  17 U.S.C. §304(c)(6)(D). | 428; *supra* Response to Objection 5.<br><br>Again, defendants improperly use their objections to make merits-based arguments, but such arguments needed to be made in their 25-page opposition brief, and are baseless in any event. DC's MSJ at 15; DC's MSJ Reply at 1-8; Response to Objection No. 17.<br><br>The ways in which Peary manipulated the probate process—including by refusing to close the Estate and distribute its assets to its sole beneficiary, Jean—are directly relevant to refute defendants' erroneous arguments that Peary is not bound by the 1992 Agreement.  DC's MSJ at 15; DC's MSJ Reply at 7-8. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|
| 44.    After this Court held in the related *Siegel* case that "promotional announcements" featuring the first appearance of Superman fell outside the termination window of § 304(c) of the Copyright Act, both the Siegel and Shuster heirs served new termination notices in 2012 purporting to terminate the announcements.  [PD Exs. 41 at 369-70, 49-50.] |

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| Whether the Siegel heirs and the Shuster Estate served new termination notices in 2012 terminating certain "promotional announcements" is irrelevant to DC's claims. Fed. R. Evid. 401, 402. | Defendants' objection is improper because it does not identify which specific evidence is objectionable.  Moreover, Defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5.<br><br>Defendants' refiling of their defective promotional announcement notices (and the new notices are defective as well) is directly relevant to relief that DC seeks on its majority-interest ground for relief under its First Claim for Relief. DC's MSJ at 18-21; DC's MSJ Reply at 8. |

| STATEMENT OF UNCONTROVERTED FACTS |
|---|

45.    Joe Shuster's original wish, as embodied in the 1975 agreement, was to take care of Frank Shuster because of the assistance Frank had rendered on the early Superman strips as a letterer, and because Frank had taken Joe in during the 1960s; he had never known or understood Joe to want to provide for Jean.  [LD ¶ 7.]

| DEFENDANTS' OBJECTION | DC'S RESPONSE |
|---|---|
| The purported fact that Joe Shuster 's original wish was to take care of his brother Frank Shuster and not his sister Jean is irrelevant to DC's claims. Fed. R. Evid. 401, 402. Furthermore, the only evidence DC cites in support of this claim is Paul Levitz's Declaration.  Levitz could not have independently known Joe Shuster's wishes, does not purport to have discussed the issue with him, and offers no other basis for this alleged fact.  It is therefore unsupported by the evidence cited and lacks foundation and personal knowledge.  Fed. R. Evid. 602.  It is also improper opinion testimony.  Fed. R. Evid. 701. DC makes this improper factual claim merely to elicit prejudice.  Fed. R. Evid. 403. | Defendants' objection is improper because it does not identify which specific evidence is objectionable.  Moreover, defendants' relevance and 403 objections made at the summary judgment stage are "a waste of the court's time." *Elwell*, 145 F. Supp. 2d at 84; *Adams*, 231 F.3d at 428; *supra* Response to Objection 5. The 1975 Agreement is relevant to show that Jean made out much better under the 1992 Agreement than under the 1975 Agreement, where she received nothing.  This helps show that the 1992 Agreement was a bargained-for exchange whereby Jean received considerable new consideration for the rights she assigned to DC. *E.g.*, DC's MSJ Reply at 7. As for defendants' foundational objections, the 1975 Agreement reflects Joe Shuster's wish that DC provide for Frank, and not Jean—Frank is Joe's *only family* member provided for in the 1975 Agreement, Levitz Decl. ¶ 7, and the document independently establishes that fact, *Barnes v. Calgon Corp.*, 872 F. Supp. 349, 352 (E.D. Tex. 1994) ("contract itself conclusively establishes" its contents for purposes of summary judgment).  Moreover, Levitz's declaration attests to these facts, Levitz Decl. ¶ 7, and defendants neither impeached Levitz or offered any contrary testimony. |

DC'S RESP. TO DEFS.' OBJS.

| PETROCELLI DECLARATION & STATEMENT OF UNCONTROVERTED FACTS | |
|---|---|
| 27.     Mark Peary, Jean's doctor, and Jean's daughter testified that, after "suffer[ing] a debilitating stroke in May of 2009," Jean has aphasia, and has difficulty communicating and "understand[ing] what people are saying."  [PD 43.] | |
| DEFENDANTS' OBJECTION | DC'S RESPONSE |
| Exhibit 43 is a copy of an anonymous document written by the thief who stole privileged documents from Mr. Toberoff's law firm – the so-called "Timeline."  This anonymous and wholly unreliable document is rife with inadmissible hearsay, if not, double and triple hearsay. Fed. R. Evid. 801, 802.  It lacks foundation and personal knowledge. Fed. R. Evid. 602. It includes numerous improper legal conclusions.  Fed. R. Evid. 701, 702; *see also Aguilar*, 966 F.2d at 447. Finally, it is wholly irrelevant to DC's Motion for Partial Summary Judgment and Fact 27 for which it is purportedly cited, and is thus introduced merely to elicit prejudice. Fed. R. Evid. 401, 402, 403. | DC did not include a copy of the Toberoff Timeline document as an Exhibit to support SUF 27 or otherwise.  Defendants' erroneous objection attacks a straw man.<br><br>In any event, the Toberoff Timeline has also proven quite reliable at describing Toberoff's misconduct and the underlying documents proving it.  *E.g.,* Docket Nos. 209 at 12; 225-4 at 3-4; 336 at 1; 357-4 at 272-76; 427-3 at 332-49; 427-4 at 383-402. |

Dated:  August 6, 2012

Respectfully submitted,

By:  /s/ Daniel M. Petrocelli

Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics