DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JULY 16, 2012, ORDER**<br><br>DECLARATION OF CASSANDRA SETO AND [PROPOSED] ORDER SUBMITTED CONCURRENTLY HEREWITH<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**: Sept. 10, 2012<br>**Hearing Time**: 1:30 p.m.<br>**Courtroom**: 11 |

Defendants' motion should be denied for three reasons. *First*, the supposed new evidence on which it relies (a many-months belated declaration from Marc Toberoff) is not remotely a "new material fact," and thus the motion comes nowhere close to meeting—and tellingly *never once mentions*—the "rigorous demands for reconsideration" set forth in Local Rule 7-18. *Enunwaonye v. Aurora Loan Services LLC*, 2012 WL 952377, at *2 (C.D. Cal. Mar. 21, 2012) (Wright, J.). *Second*, Toberoff's *new* declaration—and its claim that he did not have full access to Don Bulson's files until 2011—is refuted by sworn filings Toberoff and his associate made in 2006. Those filings (like Josh Ryland's affirmations on which DC based its successful motion to compel) make clear that Toberoff had full access to Bulson's and the Estate of Michael Siegel's files in 2006, including the November 2001 Email from Toberoff to Michael Siegel that is the sole document at issue here. *Third*, the last 10 pages of defendants' needlessly long 18-page brief are devoted to attacks on DC—all of which are false, irrelevant, and meant to distract from defendants' complete failure to meet their heavy burden under Rule 7-18.

**I.     Defendants Show No Basis For Reconsideration—And There Is None.**

This Court, like others, has emphasized that a motion for reconsideration is an "extraordinary remedy, to be used sparingly" and reserved for "highly unusual circumstances." *Encarnacao v. Phase Forward Inc.*, 2012 WL 870674, at *1 (C.D. Cal. Mar. 14, 2012) (Wright, J.) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)). Under Local Rule 7-18, such a motion "may be made *only* on the grounds of (a) a material difference in fact or law," "(b) the emergence of new material facts or a change of law," or "(c) a manifest showing of a failure to consider material facts." (Italics added.)

Defendants neither cite this standard, nor explain how they meet it. And for good reason; they meet no part of the test. This Court rightly compelled defendants to produce the November 2001 Email because defendants failed to log the email on

- 1 -

DC'S OPP. TO DEFS.' MOT. FOR RECONSIDERATION

1  their privilege logs for *five years*. Ninth Circuit law has long been clear: Such a
2  prolonged delay in logging an allegedly privileged document constitutes a waiver.
3  Docket No. 455 at 11:15-12:16 (DC's Mot. for Review) (citing, *e.g.*, *Burlington N.*
4  *& Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005)
5  (waiver given five-month delay in producing privilege logs); *Vieste, LLC v. Hill*
6  *Redwood Dev.*, 2010 U.S. Dist. LEXIS 126607, at *27-29 (N.D. Cal. Nov. 18,
7  2010) (same; six months)). The law on this question has not "changed."

8      Nor has there been a "change" in the facts on which this Court rightly relied
9  in ordering defendants to produce the November 2001 Email. In a brief filed in
10 *April 2012*—over three months ago—DC showed how defendants failed to log the
11 November 2001 Email for five years. Docket No. 394. DC showed in that brief
12 that Toberoff's claim that he did not obtain a copy of the November 2001 Email
13 until 2011 was false, as Renner Otto (Don Bulson's law firm) confirmed:

14 > Finally, in late 2011—after all SLAPP briefing had been closed, and
15 > after DC had to send four letters, [Pearson Decl.] Exs. C, D, F, J, and
> hold multiple meet-and-confers on the subject—defendants finally
16 > produced a new privilege log for the electronic archive of Bulson's
> files. Docket No. 362-2 at 295-318. The Bulson Privilege Log
17 > contains 162 entries [including the November 2001 Email ] that appear
> *nowhere* on the 2006 Bulson Privilege Log produced in *Siegel*.
18 > Docket No. 362-2 at 319-20. Defendants claim the discrepancy is
> because Renner Otto's electronic archive contains documents that
19 > were not included in Michael's hard copy file provided to defendants
20 > in 2006. Docket No. 362-2 at 324. <u>But Renner Otto told DC that the
> electronic archive is an exact replica of the documents returned to
21 > defendants.</u> Docket No. 362-2 at 319; Pearson Decl. Exs. F at 44, L at
22 > 58.

23 *Id.* 3-4 & n.2 (underling added).

24     In response to DC's motion, Toberoff submitted no evidence—*none*—that he
25 did not possess the November 2001 Email in 2006. His legal brief asserted that
26 position, Docket No. 412 at 3:12-21, but he offered no competent evidence to
27 support that claim—not a declaration from himself, from the Renner Otto firm, or
28 from Melvin Banchek, whom Toberoff now claims represented the Michael Siegel

1  Estate and had the full Bulson file in 2006, while Toberoff did not, Mot. 3:6-13,
2  7:5-20; Toberoff Decl. ¶ 17 (Aug. 2, 2012).
3        DC pointed out this obvious evidentiary gap in its reply, Docket No. 438 at
4  1:10-2:5 & n.1, as well as in its July 5, 2012, motion to this Court, Docket No. 455
5  at 1:13-20, 4:26-5:16, 6:14-7:25.  Josh Ryland, Bulson's partner, also reported that
6  he had read Toberoff's brief, and Ryland confirmed that the electronic and paper
7  versions of the Michael Siegel files should have been the same, *id.*, contrary to
8  Toberoff's false claim.  This Court rightly granted DC's motion on July 16, 2012,
9  and ordered defendants to produce the November 2001 Email.  Docket No. 457.
10        More than two weeks after this Court issued its July 16 order—and *over*
11  *three months after* DC showed in its briefing that Toberoff possessed the November
12  2001 Email in 2006, Docket No. 394—defendants filed their present motion for
13  reconsideration.  The only *alleged* "new material fact" asserted in the motion
14  appears in paragraph 17 of Toberoff's accompanying declaration.  It states:

> Contrary to DC Comics' assertions, Renner Otto did not send me a paper copy of the November 2001 Email in 2006.  I first received the November 2001 Email in 2011 as part of Renner Otto's electronic database of Michael Siegel's client files.

18  Docket No. 466-1 ¶ 17.
19        This asserted fact—which Toberoff could have presented in a declaration
20  months ago, but for tactical reasons chose not to—is too little, too late.  As this
21  Court made clear, motions for reconsideration "may not be used to raise arguments
22  or present evidence for the first time when they could reasonably have been raised
23  earlier." *Encarnacao*, 2012 WL 870674, at *1.  Moreover, defendants asserted this
24  supposed fact in their prior brief, Docket No. 412 at 3:12-21, and their belated
25  declaration and new brief just improperly argues the same losing point, *see Samica*
26  *Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 2010 WL 807440, at *2 (C.D. Cal. Feb.
27  26, 2010) (Wright, J.) (reconsideration improper where party "point[s] to no new
28  facts, change in law, or manifest error," but "raise[s] the same arguments previously

- 3 -      DC'S OPP. TO DEFS.' MOT. FOR RECONSIDERATION

considered and rejected"); *Enunwaonye*, 2012 WL 952377, at *2 ("rehash[ing] arguments … flatly insufficient to meet the rigorous demands for reconsideration").

In their motion, defendants address none of this Court's cases. Instead, they complain that the Court granted DC's motion without allowing them to file a reply. *Cf.* Mot. 6:7-8. But given that defendants fully briefed these issues before the Magistrate, this Court was fully empowered and correct to issue its July 16 order. *See Arevalo v. U.S.*, 2008 WL 4522442, at *2 (E.D. Pa. Oct. 7, 2008) (denying motion for reconsideration based in part on court's refusal to allow response brief).

## II. Defendants Cannot Refute Toberoff Had The 2001 Email In 2006.

Defendants' motion hinges on the false premise that Toberoff did not possess the November 2001 Email before 2011 because Michael's paper files "were sent to the Estate of Michael Siegel, not to Mr. Toberoff" in 2006. Mot. 7:5-20; *id.* at 2:3-12, 3:6-19. This is false, as proven by Toberoff's own words and actions in 2006.

<u>First</u>, Toberoff never discloses that *he himself* represented the executor of the Estate of Michael Siegel—Melvin Banchek—in *2006*, or that Toberoff *himself* responded to DC's document requests directed at Banchek and the Estate's files. Decl. of C. Seto Exs. A (DC's requests); B (Toberoff's objections; see below).

---

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Melvin H. Banchek

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiff, <br> vs. | Civil Case No. 04-8400 RSWL (RZx) <br> & <br> 04-8776 RSWL (RZx) <br><br> **MELVIN H. BANCHEK'S OBJECTIONS TO DEFENDANTS' SUBPOENA** |

DC'S OPP. TO DEFS.'
MOT. FOR RECONSIDERATION

> and oppressive. Banchek further objects to this request to the extent it seeks documents or communications protected by the attorney/client privilege and the attorney work product doctrine. Subject to and without waiving the foregoing objections, Banchek will produce all non-privileged documents he is able to determine are responsive to this request.
>
> Dated: August 23, 2006  LAW OFFICES OF MARC TOBEROFF, PLC
>
> _____
> Marc Toberoff
> Attorneys for MELVIN H. BANCHEK

*Id*. Ex. B at 9, 16. Despite telling DC he would review Banchek's files and produce or log responsive documents, *the November 2001 Email—to which Toberoff had full access through Banchek—never appears on Banchek's logs*. *Id*. Ex. C.

<u>Second</u>, while Toberoff now pretends he received a subset of Banchek's files when he responded to DC's document requests on Don Bulson in 2006, Mot. 3:6-13, 7:5-20; Toberoff Decl. ¶ 17, that is not what Toberoff and his associate told the Ohio courts in 2006. Toberoff filed a brief in Ohio in 2006 as "Counsel for Don W. Bulson," Seto Decl. Ex. D at 46, arguing he reviewed Michael's files and could confirm "all responsive documents had been listed in the privilege log." *Id*. at 37, 40-42. Renner Otto likewise confirmed in 2008: "Toberoff … will make all required filings on behalf of the estate of Michael Siegel—not Mr. Bulson," and "Toberoff and his firm will be solely responsible for drafting and filing any revised privilege log and the production of documents." Docket No. 217-6 at 55.

On November 6, 2006, Toberoff's associate, Nick Williamson, filed a sworn declaration in the Ohio court stating:

> 2. I am an attorney with the Law Offices of Marc Toberoff, PLC, located at 2049 Century Park East, Suite 2720, Los Angeles, [CA].
> 3. Don W. Bulson, Esq. ("Bulson") served as counsel to Jerome Siegel's son from his first marriage, Michael Siegel. Upon receipt of [DC's] August 11, 2006 Subpoena Duces Tecum ("Subpoena"), I immediately contacted Bulson regarding documents he had relevant to

- 5 -  DC'S OPP. TO DEFS.'
MOT. FOR RECONSIDERATION

> the Subpoena. *He indicated that the relevant files had been forwarded at the clients' request to Melvin Banchek, Esq. ("Banchek").*
> *4. I subsequently contacted Banchek regarding these documents. Mr. Banchek informed me the Bulson file was large and that he would forward it to our offices as soon as he could locate it in his storage.*
> 5. On or about September 7, 2006, I spoke with Defendants' counsel James D. Weinberger ("Weinberger") regarding Bulson's deposition and the status of his document production. I explained that we had not received Bulson's voluminous documents which were being sent from Cleveland to our offices for us to determine to what extent the documents were privileged, but that a privilege log would be submitted to Defendants as soon as this analysis could be undertaken. In response, Weinberger agreed to put off Bulson's deposition.
> <u>6. Shortly thereafter, upon receipt of Bulson's file from Mr. Banchek, our office began analyzing the file.</u>
> <u>7. The privilege log for Mr. Bulson's file was submitted to Defendants' counsel on October 23, 2006.</u> A true and correct copy of Bulson's privilege log is attached hereto as "Exhibit A."

Seto Decl. Ex. F ¶¶2-7 (emphases added).

Of course, the November 2001 Email never appears in the October 23, 2006, log Toberoff prepared. *Id.* at 55-85. And, of course, Josh Ryland confirmed that the electronic archive his firm his maintained for Michael Siegel—in which the November 2001 Email appeared—"was the product of scanning Mr. Siegel's paper files before they were forwarded to the attorneys for Mr. Siegel's estate, *and the documents in the 'Renner Otto [electronic] archive and the paper file should be the same*." Docket No. 427-2 at 4 (emphasis added); *supra* at 2-3.

Yet neither Toberoff, Williamson, Ryland, Bulson, Banchek, nor anyone has ever explained (nor could explain) how in 2006—when Banchek sent Toberoff the same file Bulson sent him—Toberoff somehow only obtained a part of Bulson's file, and a part that *conveniently omitted the devastating November 2001 Email*. That is because this omission never happened, and Toberoff's declaration to the contrary is false. Indeed, Bulson testified in 2008 that he had sent "all" of Michael's files to Banchek. Ex. H at 95-96 (Q: "So you pulled your files relating to Michael Siegel?" A: "And I sent them all to Mr. Banchek." Q: "Did you look through the specific categories to see if there were specific documents in your files

that related to them or you just simply turned over the files?" A: "I just turned over all the files…."). And Toberoff told the Ohio court in a 2006 declaration that he could go through all of Bulson's files—not just some subpart of them—to confirm all non-privileged documents had been produced. Seto Decl. Ex. E ¶ 9.

Toberoff never said in 2006, as he falsely claims now, that he lacked access to Bulson's full files. Rather, he reaffirmed again and again—including in a later, sworn declaration before this California Court—that he was responsible for producing documents from Don Bulson's files:

> On behalf of Don Bulson, the former attorney of Laura Siegel Larson's stepbrother, Michael Siegel, I served a privilege log on October 23, 2006 in response to Defendants' subpoena. Attached hereto as Exhibit "O" is a true and correct copy of October 23, 2006 privilege log.

Seto Decl. Ex. G ¶ 20. Only now—after DC prevailed on its motion—does Toberoff falsely declare that he did not have access to all of Bulson's documents in 2006.

### III. Defendants' Remaining Attacks On DC Are Irrelevant And Unfounded.

The last 10 pages of defendants' brief is a sideshow that reargues points defendants lost before this Court, the Ninth Circuit, the Magistrate Judge, and the Ohio court. DC addressed in prior briefs and recent letters all the points defendants make at pages 9 to 16 of their brief and in the new declaration of Laura Siegel Larson. Docket No. 455; Seto Decl. Exs. J, M. DC stands on those submissions.

Defendants' new claims about DC's discovery conduct (starting at the end of page 16 and through page 18) are equally false and irrelevant. To respond briefly:

- Defendants suggest DC engaged in discovery misconduct by producing "*new* documents and correspondence related to the 1992 agreement…." Mot. 17. What defendants fail to disclose is that DC produced *two documents*, and only two additional documents; DC made the production *voluntarily, without any request from defendants, and absent any court order*; these two documents are letters that originated *from their co-defendant*, Jean Peavy; DC found the letters in preparing

1  its summary judgment papers; and *defendants unilaterally canceled a July 26*
2  *deposition* of Paul Levitz at which they could have examined DC about the letters.
3  Seto Decl. Exs. K, L; Docket No. 461 at 14, 17-19, 31, 34.

4  • It is equally untrue that DC has "refused to provide a privilege log." Mot.
5  17. A privilege log stipulation defendants signed and the Court so ordered in 2010
6  obviates the need for most of the logging defendants request. Docket No. 133 at 2.
7  In over two years, defendants served a single set of document requests on DC, and
8  given the privilege log stipulation and the way defendants' requests overlap with
9  those in *Siegel*, DC referred defendants to their relevant logs in *Siegel*. *Id.*; Seto
10 Decl. Ex. I. DC has offered to meet and confer on any other logging defendants
11 want, but they have yet to respond. Seto Decl. Ex. K at 114.

12 • Defendants' assertion that DC "refused to meaningfully respond" to
13 defendants' interrogatories, Mot. at 17, is false, and was rejected by the Magistrate
14 Judge, who denied defendants' motion to compel further answers, Docket No. 467.

15 • Defendants' claim that the Magistrate Judge "commented on … the
16 improper conduct of DC's counsel," Mot. 17, is also untrue, as the very orders
17 defendants cite show. *See* Docket Nos. 209 at 11, 14 (granting DC's motion in
18 part, sustaining DC's objections to defendants' improper submission, and noting
19 defendants were "cryptic" about existence of July 2003 letter); 323 at 2
20 (acknowledging the "difficulty in knowing what is contained in [defendants']
21 privilege logs" but declining to order production of July 2003 letter since "[a]t some
22 point a matter has to be set aside … even if the original decision may have been
23 incorrect") (ruling overturned in Docket No. 336, which compelled defendants to
24 produce the July 2003 letter); 439 at 1-2 (granting DC's motion for reconsideration
25 following revelation of November 2, 2002, letter; ordering defendants to produce
26 certain documents for *in camera* review and to state whether they have others
27 "simply and directly"; granting in part DC's motion to enforce order). Nor do the
28 orders defendants cite "call[] out [DC] for mischaracterizing" anything. *See* Docket

- 8 - DC'S OPP. TO DEFS.' MOT. FOR RECONSIDERATION

1  Nos. 378 at 4-5 (acknowledging the Ohio court ruled the 15 communications
2  Toberoff withheld as privileged "did not involve the giving of legal advice, were
3  not made in connection with a common legal defense or strategy, and … the interest
4  of Ms. Larson and Ms. Siegel, as reflected in those documents, were separate and
5  apart."); 323 at 2 ("*the parties* … have learned to be guarded in what they say to
6  each other") (emphasis added).

**IV. Conclusion**

Defendants' reconsideration motion should be denied.  DC will be filing a motion shortly addressing defendants' pervasive discovery misconduct, including Toberoff's false declaration filed in connection with this motion.  *E.g.*, *Hester v. Vision Airlines, Inc.*, 2012 WL 2914108, at *2-9 (9th Cir. July 18, 2012); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1054-58 (9th Cir. 1998).

Dated:   August 16, 2012

Respectfully submitted,
O'MELVENY & MYERS LLP

By:  /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli

OMM_US:70813405