# EXHIBIT A

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO

SIEGEL et al.

v.

WARNER BROS. ENTM'T INC. et al.

**SUBPOENA IN A CIVIL CASE**

Case No.:[1]    CV 04-8400, 04-8776 (C.D. Cal.)

Pending in the Central District of California

TO:     Melvin H. Banchek
        55 Public Square
        Suite #918
        Cleveland, Ohio 44113

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio  44114-1190 | Sept. 12, 2006, 9:00am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A.

| PLACE | DATE AND TIME |
|---|---|
| Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio  44114-1190, Attn: David A. Kutik, Esq. | August 28, 2006, 12:00pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | August 10, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

James D. Weinberger, Esq., Fross Zelnick Lehrman & Zissu, P.C., 866 United Nations Plaza, New York, New York 10017 (212) 813-5900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# EXHIBIT A
3

AO 88 (11/91) Subpoena in a Civil Case    **PROOF OF SERVICE**

2006080917115

| SERVED | DATE: August 10, 2006 | PLACE: 55 Public Sq. #918 Cleveland, OH 44113 |
|---|---|---|

| SERVED ON:  MELVIN H. BANCHECK ACCEPTED BY: BARB CASKEY RELATIONSHIP/TITLE: LEGAL ASSISTANT | MANNER OF SERVICE: RULE 45, FEDERAL CIVIL RULE SERVING: SUBPOENA IN A CIVIL CASE |
|---|---|

| SERVED BY  BEN PURSER OUT OF STATE | TITLE          PROCESS SERVER |
|---|---|

ORIGINAL

**DECLARATION OF SERVER**

Description of Person Receiving Document(s):

SEX: F   AGE: 60   HEIGHT: 5'5"   WEIGHT: 150 LBS   SKIN: WHITE   HAIR: BLOND   OTHER:

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Certification of Service is true and correct.

Ben Purser L.S.
SIGNATURE OF OUT OF STATE, BEN PURSER
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

EXECUTED ON: 8-15-2006

| ATTORNEY: | JAMES D. WEINBERGER |
|---|---|
| PLAINTIFF: | SIEGEL, ET AL |
| DEFENDANT: | WARNER BROS. ENTM'T, INC., ET AL |
| VENUE: | DISTRICT |
| DOCKET: | CV 04-8400 04-8776 |
| FEE: | $0.00 |

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but not limited to, lost earnings and a reasonable attorney's fee.
   (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
   (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person.

except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iv) subjects a person to undue burden.
   (B)  If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assure that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.
   (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



**EXHIBIT A**

4

**EXHIBIT A**

## DEFINITIONS

A.      As used herein, the terms "You" or "Your" means you, as well as any past and present agents and representatives, and any entities owned or controlled by you.

B.      "Michael Siegel" means Michael Siegel and each of his agents and representatives.

C.      "Plaintiffs" means, collectively and severally, Plaintiffs Joanne Siegel and Laura Siegel Larson and each of their past and present agents and representatives, and any entities owned or controlled by them.

D.      "Siegel" means Jerome (a.k.a. "Jerry") Siegel and each of his agents and representatives.

E.      "Shuster" means Joseph (a.k.a. "Joe") Shuster and each of his agents and representatives.

F.      The "Shuster Representatives" means, collectively and severally, Jean Adele Peavy, Mark Warren Peary, all executors, administrators, heirs, and representatives of the estate of Joseph Shuster, and all of their respective agents and representatives.

G.      "Dennis Larson" means Dennis Larson, the current or former husband of Laura Siegel Larson.

H.      "Toberoff" means attorney Marc Toberoff.

I.      "Defendants" means, collectively and severally, Defendants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., and Warner Bros. Television Production Inc., and Defendant and Counterclaimant DC Comics, each of their affiliated companies and/or predecessors in interest, and all of their agents, employees, and representatives.

**EXHIBIT A**

**5**

J.      The "Superman Action" means the case pending in the U.S. District Court for the Central District of California, Case No. 04-8400 (RSWL) (RZx).

K.      The "Superboy Action" means the case pending in the U.S. District Court for the Central District of California, Case No. 04-08776 (RSWL) (RZx).

L.      "Superman" means the character as delineated in literary works such as comic books, novels, television programs, and motion pictures, and any of the works in which he appears, including but not limited to, the comic book entitled *Action Comics #1*.

M.      "Superboy" means the character as delineated in literary works such as comic books, novels, television programs, and motion pictures, and any of the works in which he appears, including but not limited to, the comic book entitled *More Fun #101*.

N.      "Concerning" means relating to, describing, evidencing, proving, tending to prove, referring to, comprising, constituting, disproving or tending to disprove.

O.      Whenever the terms "and" or "or" are used they are to be construed both disjunctively and conjunctively as necessary to bring within the scope of these discovery requests responses that might otherwise be construed to be outside the scope.

P.      The use of the singular form of any word includes the plural and vice versa.

M.      "Document" means any tangible expression or communication -- printed or electronic -- however created, recorded, embodied, maintained, filed, or stored in any medium, mode, form, or technology, including, without limitation, as defined by Rule 1001 of the Federal Rules of Evidence, and includes every "original" and every "duplicate" of each such Document as defined, respectively, by Rules 1001(3) and (4) of the Federal Rules of Evidence.

**EXHIBIT A**

**6**

## INSTRUCTIONS

You are to produce any and all Documents in Your possession, custody or control, or subject to Your control. In the event that You cannot produce all of the Documents designated in a particular request, You shall produce those Documents which You can produce, and shall describe in detail each reason for Your failure or inability to produce each of the remaining Documents.

In the event that any Document called for by this subpoena has been destroyed, lost, discarded, or otherwise disposed of, any such Document is to be identified as completely as possible by providing, without limitation, the following information: the date of disposal; the manner of disposal; the reason for disposal; the person authorizing disposal; and the person who disposed of the Document.

If You contend that any responsive Document is privileged, You must identify each such Document by providing the following information: the date of the Document; a description of its nature and content; the name and capacity of the individual who originated the Document; the name and capacity of the individual to whom the Document is addressed and all individuals to whom it was circulated; and the privilege(s) asserted.

## DOCUMENT CATEGORIES

1.      All Documents Concerning Superman and/or Superboy.

2.      All Documents Concerning any negotiations Concerning Superman and/or Superboy including but not limited to, negotiations by or with Defendants, Plaintiffs, Michael Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives.

3.      All Documents Concerning any agreements with Plaintiffs, Michael Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives Concerning Superman and/or

**EXHIBIT A**

**7**

Superboy, including but not limited to, any agreements Concerning any ownership interest in and/or revenue from Superman and/or Superboy.

4.      All Documents Concerning any valuation of any current or potential ownership interest in Superman and/or Superboy.

5.      All Documents evidencing any correspondence with any third person Concerning Superman and/or Superboy, including but not limited to, Plaintiffs, Dennis Larson, Toberoff, and/or the Shuster Representatives.

6.      All Documents Concerning Michael Siegel's estate, including but not limited, any wills, draft wills, and any communications expressing Michael Siegel's wishes with respect to any assets.

7.      All Documents Concerning any litigation relating to Michael Siegel's estate.


I:\jweinberger\doc\Siegel Litigation\Pleadings\04cv8400\060810-0425344-Banchek Subpoena-jdw.doc

**EXHIBIT A**

**8**

# EXHIBIT B

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Melvin H. Banchek

6            UNITED STATES DISTRICT COURT

7            CENTRAL DISTRICT OF CALIFORNIA

8

9  JOANNE SIEGEL, an individual; and      Civil Case No. **04-8400  RSWL (RZx)**
   LAURA SIEGEL LARSON, an                          **&**
10 individual,                                **04-8776 RSWL  (RZx)**

11              Plaintiff,          **MELVIN H. BANCHEK'S**
                                    **OBJECTIONS TO DEFENDANTS'**
12      vs.                         **SUBPOENA**

13

14 WARNER BROS.
   ENTERTAINMENT INC., a
15 corporation; TIME WARNER INC., a
   corporation; DC COMICS, a general
16 partnership; and DOES 1-10,

17              Defendants

18

19

20 DC COMICS,

21              Plaintiff

22      vs.

23

24 JOANNE SIEGEL, an individual; and
   LAURA SIEGEL LARSON, an
25 individual,

26

27              Counterclaim Defendants

28

                         1

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Melvin H. Banchek ("Banchek"), pursuant to the provisions of Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, makes the following objections to the subpoena duces tecum (the "Subpoena") that was served on him on August 10, 2006:

## I.

## OBJECTIONS TO THE ENTIRE SUBPOENA

Banchek objects to the entire Subpoena on each of the following grounds and incorporates by reference each of the following objections into his response to each individual request within it:

1.     Banchek objects to the entire Subpoena to the extent that it seeks the production or identification of any item, or portion thereof, comprising or reflecting information transmitted and maintained in confidence between Banchek and any person or entity on whose behalf he is acting as counsel for the purpose of obtaining legal advice or representation, on the ground that such information is protected from disclosure by the attorney-client privilege and the attorney work product doctrine. Banchek will serve a log identifying each item, or portion thereof, withheld from production in response to the Subpoena under claim of attorney-client privilege which was created before the inception of this action.

2.     Banchek objects to the entire Subpoena to the extent that it seeks the production or identification of any item, or portion thereof, comprising or reflecting information with any confidential impression, conclusion, opinion, legal research, or legal theory of Banchek or any other person or entity working on his behalf, on the ground that such information is protected from disclosure by the attorney work product privilege and the attorney work product doctrine. Banchek will serve a log identifying each item, or portion thereof, withheld

2

**EXHIBIT B**

**10**

1 | from production in response to the Subpoena under claim of attorney work
2 | product privilege which was created before the inception of this action.

3 |     3.    Banchek objects to the entire Subpoena to the extent that it seeks
4 | the production or identification of any item, or portion thereof, which is not
5 | reasonably calculated to lead to the discovery of relevant and admissible
6 | evidence, on the ground that it exceeds the permissible scope of discovery
7 | delimited by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

8 |     4.    Banchek objects to the entire Subpoena to the extent that it seeks
9 | the production or identification of any item, or portion thereof, comprising or
10 | reflecting any trade secret or other confidential or proprietary information of
11 | Banchek or any other person or entity.

12 |     5.    Banchek objects to the entire Subpoena to the extent that it seeks
13 | the production or identification of any item, or portion thereof, which is
14 | protected from disclosure by any privacy or similar rights of Banchek or any
15 | other person or entity.

16 |     6.    Banchek objects to the entire Subpoena to the extent
17 | that it seeks the production of original documents, on the ground that such
18 | production would be burdensome, oppressive, and unnecessary. Banchek
19 | reserves the right to comply with the Subpoena, subject to this response, by
20 | producing a true copy of any item or by permitting inspection of any item.

21 |     7.    Banchek objects to the entire Subpoena to the extent that it seeks
22 | the production of duplicative identical items, on the ground that such production
23 | would be burdensome, oppressive, and unnecessary.

24 |     8.    Banchek objects to the entire Subpoena to the extent that it seeks
25 | the production of any item which has been served, filed, or transmitted in the
26 | course of this action, on the ground that such production would be burdensome,
27 | oppressive, and unnecessary.

28 |     9.    Banchek objects to the definition of "Siegel" set forth in the

3

---

OBJECTIONS TO DEFENDANTS' SUBPOENA

**EXHIBIT B**
**11**

1    Subpoena on the grounds that it is vague, ambiguous, overbroad, burdensome

2    and oppressive. Banchek will treat the term "Siegel" as used in the Subpoena to

3    mean the individual Jerome Siegel only.

4         10.    Banchek objects to the definition of "Shuster" set forth in the

5    Subpoena on the grounds that it is vague, ambiguous, overbroad, burdensome

6    and oppressive. Banchek will treat the term "Shuster" as used in the Subpoena

7    to mean the individual Joseph Shuster only.

8         11.    Banchek objects to the definition "Shuster Representatives" as set

9    forth in the Subpoena on the grounds that it is vague, ambiguous, overbroad,

10    burdensome and oppressive. Banchek will treat the term "Shuster

11    Representatives" as used in the Subpoena to mean the individuals Warren Peary

12    and Jean Adele Peavey only.

13         12.    Banchek objects to the definition of "Plaintiffs" set forth in the

14    Subpoena on the grounds that it is vague, ambiguous, overbroad, burdensome

15    and oppressive. Banchek will treat the term "Plaintiffs" as used in the

16    Subpoena to mean the individuals Joanne Siegel and Laura Siegel only.

17         13.    Banchek objects to the definition of "Michael Siegel" set forth in

18    the Subpoena on the grounds that it is vague, ambiguous, overbroad,

19    burdensome and oppressive. Banchek will treat the term "Michael Siegel" as

20    used in the Subpoena to mean the individual Michael Siegel only.

21    **II.**

22    **RESPONSES TO INDIVIDUAL CATEGORIES**

23         Subject to and without waiving the foregoing objections, Banchek

24    responds to each individual request within the Subpoena as follows:

25    **Document Category No. 1:**

26         All Documents Concerning Superman and/or Superboy.

27    **Response to Document Category No. 1:**

28         Banchek objects to this request on the grounds that it is vague and

4

OBJECTIONS TO DEFENDANTS' SUBPOENA

1  ambiguous. Banchek further objects to this request on the grounds that it is
2  overbroad, burdensome and oppressive. Banchek further objects to this request
3  to the extent it seeks documents or communications protected by the
4  attorney/client privilege and the attorney work product doctrine. Subject to and
5  without waiving the foregoing objections, Banchek will produce all non-
6  privileged documents he is able to determine are responsive to this request.

7  **Document Category No. 2:**

8         All Documents Concerning any negotiations Concerning Superman
9  and/or Superboy including but not limited to, negotiations by or with
10 Defendants, Plaintiffs, Dennis Larson, Toberoff, and/or the Shuster
11 Representatives.

12 **Response to Document Category No. 2:**

13        Banchek objects to this request on the grounds that it is vague and
14 ambiguous, including without limitation, the phrase "any negotiations
15 Concerning Superman and/or Superboy." Banchek further objects to this
16 request on the grounds that it is overbroad, burdensome and oppressive.
17 Banchek further objects to this request to the extent it seeks documents or
18 communications protected by the attorney/client privilege and the attorney work
19 product doctrine. Subject to and without waiving the foregoing objections,
20 Banchek will produce all non-privileged documents he is able to determine are
21 responsive to this request.

22 **Document Category No. 3:**

23        All Documents Concerning any agreements with Plaintiffs, Michael
24 Siegel, Dennis Larson, Toberoff, and/or the Shuster Representatives Concerning
25 Superman and/or Superboy, including but not limited to, any agreements
26 Concerning any ownership interest in and/or revenue from Superman and/or
27 Superboy.

28

5

---

**Response to Document Category No. 3:**

Banchek objects to this request on the grounds that it is vague and ambiguous, including without limitation, the phrase "any agreements Concerning any ownership interest in and/or revenue from Superman and/or Superboy." Banchek further objects to this request on the grounds that it is overbroad, burdensome and oppressive. Banchek further objects to this request to the extent it seeks documents or communications protected by the attorney/client privilege and the attorney work product doctrine. Subject to and without waiving the foregoing objections, Banchek will produce all non-privileged documents he is able to determine are responsive to this request.

**Document Category No. 4:**

All Documents Concerning any valuation of any current or potential ownership interest in Superman and/or Superboy.

**Response to Document Category No. 4:**

Banchek objects to this request on the grounds that it is vague and ambiguous, including without limitation, the phrase "any valuation of any current or potential ownership interest." Banchek further objects to this request on the grounds that it is overbroad, burdensome and oppressive. Banchek further objects to this request to the extent it seeks documents or communications protected by the attorney/client privilege and the attorney work product doctrine. Subject to and without waiving the foregoing objections, Banchek will produce all non-privileged documents he is able to determine are responsive to this request.

**Document Category No. 5:**

All Documents evidencing any correspondence with any third person Concerning Superman and/or Superboy, including but not limited to, Plaintiffs, Dennis Larson, Toberoff, and/or the Shuster Represenatives.

6

**EXHIBIT B**
**14**

1 | **Response to Document Category No. 5:**

2 |      Banchek objects to this request on the grounds that it is vague and

3 | ambiguous. Banchek further objects to this request on the grounds that it is

4 | overbroad, burdensome and oppressive.  Banchek further objects to this request

5 | to the extent it seeks documents or communications protected by the

6 | attorney/client privilege and the attorney work product doctrine.  Subject to and

7 | without waiving the foregoing objections, Banchek will produce all non-

8 | privileged documents he is able to determine are responsive to this request.

9 | **Document Category No. 6:**

10 |      All Documents Concerning Michael Siegel's estate, including but not

11 | limited to, any wills, draft wills, and any communications expressing Michael

12 | Siegel's wishes with respect to any assets.

13 | **Response to Document Category No. 6:**

14 |      Banchek objects to this request on the grounds that it is vague and

15 | ambiguous as to the phrase "Michael Siegel's wishes." Banchek further objects

16 | to this request on the grounds that it is overbroad, burdensome and oppressive.

17 | Banchek further objects to this request to the extent it seeks documents or

18 | communications protected by the attorney/client privilege and the attorney work

19 | product doctrine.  Subject to and without waiving the foregoing objections,

20 | Banchek will produce all non-privileged documents he is able to determine are

21 | responsive to this request.

22 | **Document Category No. 7:**

23 |      All Documents Concerning any litigation relating to Michael Siegel's

24 | estate.

25 | **Response to Document Category No. 7:**

26 |      Banchek objects to this request on the grounds that it is duplicative.

27 | Banchek objects to this request on the grounds that it is vague and ambiguous as

28 | to the phrase "any litigation relating to Michael Siegel's estate."  Banchek

OBJECTIONS TO DEFENDANTS' SUBPOENA

**EXHIBIT B**

1 | further objects to this request on the grounds that it is overbroad, burdensome

2 | and oppressive.  Banchek further objects to this request to the extent it seeks

3 | documents or communications protected by the attorney/client privilege and the

4 | attorney work product doctrine.  Subject to and without waiving the foregoing

5 | objections, Banchek will produce all non-privileged documents he is able to

6 | determine are responsive to this request.

7

8 | Dated:  August 23, 2006          LAW OFFICES OF MARC TOBEROFF, PLC

9

10

11 |                                        Marc Toberoff
                                    Attorneys for MELVIN H. BANCHEK

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

OBJECTIONS TO DEFENDANTS' SUBPOENA

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 2049 Century Park East, Suite 2720, Los Angeles, California 90067.

On August 23, 2006, I served the attached document described as **MELVIN H. BANCHEK'S OBJECTIONS TO DEFENDANTS' SUBPOENA** on all interested parties in this action by placing _____ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Facsimile No. 212-813-5901

Patrick T. Perkins
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Facsimile No. 845-265-2819

Michael Bergman
WEISSMAN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212
Facsimile No. 310-550-7191

[X]  :BY MAIL:

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on August 23, 2006, in Los Angeles, California.

Alex Merino

**EXHIBIT B**

17

# EXHIBIT C

Banchek Privilege Log

| Date of Document | Identity of Author | Identity of Recipients | Document Type | Privilege Claim |
|---|---|---|---|---|
| | | | | |
| | | | | |
| 9/18/2006 | Michael A. Thomas | Gerald A. Berk | Letter | Atty/Client |
| 9/15/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/15/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 9/15/2006 | Ronald Rosenfield | Atty Melvin Banchek | Email | Atty/Client |
| 9/15/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 9/14/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Atty/Client |
| 9/15/2006 | Atty Melvin Banchek | Atty Gerald Berk | Letter | Atty/Client |
| 9/15/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 9/11/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/8/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 9/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/31/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/31/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/30/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/29/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/29/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/29/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/25/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/25/2006 | Laura Siegel Larson | Atty Melvin Banchek; Atty Gerald Berk | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Atty/Client |
| 8/22/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/22/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/22/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/17/2006 | Atty Melvin Banchek | Atty Marc Toberoff | Letter | Atty/Client |
| 8/17/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/16/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/15/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/15/2006 | Atty Melvin Banchek | Atty Gerald Berk | Letter | Atty/Client |
| 8/15/2006 | Atty Melvin Banchek | Atty Marc Toberoff | Letter | Atty/Client |
| 8/11/2006 | Atty Stephen Webster | Atty Melvin Banchek | Letter | Atty/Client |
| 8/10/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |

**EXHIBIT C**

**18**

Banchek Privilege Log

| 8/10/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
|---|---|---|---|---|
| 8/8/2006 | Atty Melvin Banchek | Atty Gerald Berk | Letter | Atty/Client |
| 8/8/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 8/8/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 8/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/7/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 8/7/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 8/4/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/4/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 8/3/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 8/3/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/27/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 7/27/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/27/2006 | Atty Melvin Banchek | Atty Stephen Webster; Atty Jerry Moss; Laura Siegel Larson | Letter | Atty/Client |
| 7/27/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 7/25/2006 | Atty Melvin Banchek | Atty Gerald Berk | Letter | Atty/Client |
| 7/27/2006 | Atty Melvin Banchek | Atty Stephen Webster; Atty Jerry Moss; Laura Siegel Larson | Letter | Atty/Client |
| 7/26/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/26/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 7/26/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/25/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/18/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 7/18/2006 | Atty Gerald Berk | Atty Melvin Banchek | Letter | Atty/Client |
| 7/17/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/17/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/14/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/14/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/14/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/13/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| | | | | |
| 9/28/2006 | Jennifer Carroll | Atty Melvin Banchek | Email | Atty/Client |
| 9/27/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/28/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/14/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/12/2006 | Atty Melvin Banchek | Atty Don Bulson | Letter | Atty/Client |
| 7/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/10/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/10/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 7/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |

**EXHIBIT C**

**19**

Banchek Privilege Log

| | | | | |
|---|---|---|---|---|
| 7/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/29/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/23/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/23/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/20/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/20/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/20/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/19/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/19/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/19/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/16/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/15/2006 | Atty Don Bulson | Atty Melvin Banchek | Letter | Atty/Client |
| 6/14/2006 | Atty Thomas Escovar | Atty Melvin Banchek | Letter | Atty/Client |
| 6/14/2006 | Atty Melvin Banchek | Atty Jerry Moss; Laura Siegel Larson | Email | Atty/Client |
| 6/13/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/13/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/9/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 6/9/2006 | Jennifer Carroll | Atty Melvin Banchek | Memo | Work Product |
| 6/9/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/9/2006 | Jennifer Carroll | Atty Melvin Banchek | Email | Work Product |
| 6/9/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/9/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/9/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/8/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 6/4/2006 | Laura Siegel Larson | Atty Melvin Banchek | Fax Cover Sheet | Atty/Client |
| 6/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Atty/Client |
| 6/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/31/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/30/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/30/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| | | | | |
| 5/29/2006 | Jennifer Carroll | Atty Melvin Banchek | Email | Work Product |
| 5/24/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/24/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |

**EXHIBIT C**

**20**

Banchek Privilege Log

| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
|---|---|---|---|---|
| 5/19/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/18/2006 | Jennifer Carroll | | Note | Work Product |
| 5/18/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/18/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/17/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/17/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/17/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 5/16/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/15/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/12/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/11/2006 | Laura Siegel Larson | Atty Gerald Berk; Atty Melvin Banchek | Email | Atty/Client |
| 5/11/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/10/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/8/2006 | Atty Jerald L. Moss | Atty Melvin Banchek | Fax Cover Sheet | Work Product |
| 5/8/2006 | Atty Jerald L. Moss | Atty Melvin Banchek | Fax Transmission | Work Product |
| 5/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/5/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/5/2006 | Laura Siegel Larson | Atty Stephen Webster; Atty Melvin Banchek | Letter | Atty/Client |
| 5/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/4/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/2/2006 | Atty Stephen Webster | Atty Melvin Banchek | Fax Cover Sheet | Atty/Client |
| 5/2/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/2/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/2/2006 | Atty Melvin Banchek | Atty Jerry Moss | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Atty/Client |
| 5/1/2006 | Atty Mark Toberoff | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| | | | | |
| 5/19/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 5/19/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |

**EXHIBIT C**

**21**

Banchek Privilege Log

| 5/17/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
|---|---|---|---|---|
| 3/10/2006 | Atty Melvin Banchek | Atty Stephen Webster | Letter | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 5/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/29/2006 | Robert W. Rybak | Atty Stephen Webster | Letter | Atty/Client |
| 1/31/2006 | Atty Stephen Webster | Atty Gregory Szuter | Letter | Atty/Client |
| 4/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/28/2006 | Atty Melvin Banchek | Atty Don Bulson | Email | Atty/Client |
| 4/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/27/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/26/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/25/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 4/21/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 4/21/2006 | Laura Siegel Larson | Atty Melvin Banchek; Atty Mark Toberoff | Email | Atty/Client |
| 4/21/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/21/2006 | Atty Stephen Webster | Atty Melvin Banchek | Letter | Atty/Client |
| 4/20/2006 | Atty Stephen Webster | Atty Melvin Banchek | Fax Cover Sheet | Atty/Client |
| 4/19/2006 | Atty Stephen Webster | Laura Siegel Larson | Letter | Atty/Client |
| 4/18/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/18/2006 | Atty Stephen Webster | Atty Melvin Banchek | Letter | Atty/Client |
| 4/18/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 4/17/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 4/13/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/13/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 4/13/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/12/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 4/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/11/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/9/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/8/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/5/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| 4/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/3/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 3/31/2006 | Atty Melvin Banchek | Laura Siegel Larson | Letter | Atty/Client |
| 3/30/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 3/29/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 3/29/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |

EXHIBIT C

22

Banchek Privilege Log

| 3/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
|---|---|---|---|---|---|
| 3/23/2006 | Atty Stephen Webster | Atty Melvin Banchek | | Letter | Atty/Client |
| 3/23/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 3/21/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 3/20/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Letter | Atty/Client |
| 3/20/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Letter | Atty/Client |
| 3/15/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Letter | Atty/Client |
| 3/13/2006 | Atty Stephen Webster | Atty Melvin Banchek | | Fax Cover Sheet | Atty/Client |
| 3/13/2006 | Atty Stephen Webster | Atty Melvin Banchek | | Transmission | Atty/Client |
| 3/13/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 3/10/2006 | Atty Melvin Banchek | Atty Stephen Webster | | Letter | Atty/Client |
| 3/21/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 3/21/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 3/1/2006 | Laura Siegel Larson | Atty Melvin Banchek; Jerry Moss | | Email | Atty/Client |
| 3/1/2006 | Jerry Moss | Atty Melvin Banchek; Laura Siegel Larson | | Email | Atty/Client |
| 3/1/2006 | Laura Siegel Larson | Atty Melvin Banceck; Jerry Moss | | Email | Atty/Client |
| 2/27/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/27/2006 | Laura Siegel Larson | Atty Melvin Banchek; Jerry Moss | | Email | Atty/Client |
| 2/27/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/24/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Letter | Atty/Client |
| 2/12/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Check | Atty/Client |
| 2/13/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/8/2006 | Atty Stephen Webster | Laura Siegel Larson; Atty Melvin Banchek | | Letter | Atty/Client |
| 2/7/2006 | Atty Melvin Banchek | Atty Stephen Webster | | Letter | Atty/Client |
| 2/7/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/7/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Letter | Atty/Client |
| 2/7/2006 | Atty Melvin Banchek | Atty Stephen Webster | | Letter | Atty/Client |
| 2/5/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 2/2/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| | | | | | |
| 6/7/2006 | Atty Melvin Banchek | | | Research Printout | Work/Product |
| 8/7/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Email | Atty/Client |
| 8/8/2006 | Trina Miller | Atty Melvin Banchek | | Phone Log | |
| 8/8/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Email | Atty/Client |
| 8/8/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Email | Atty/Client |
| 9/15/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Letter | Atty/Client |
| 3/9/2006 | Atty Melvin Banchek | | | Notes | Work/Product |
| 8/3/2006 | Atty Melvin Banchek | Laura Siegel Larson | | Email | Atty/Client |
| 9/6/2006 | Laura Siegel Larson | Atty Melvin Banchek | | Letter | Atty/Client |
| 8/10/2006 | Atty Gerald Berk | Atty Melvin Banchek | | Fax Cover Sheet | Atty/Client |
| 9/5/2006 | Atty Melvin Banchek | | | Phone Log | Work/Product |
| 9/12/2006 | Atty Melvin Banchek | | | Work Log | Work/Product |

**EXHIBIT C**

**23**

Banchek Privilege Log

| 8/10/2006 | Atty Gerald Berk | Atty Melvin Banchek | Fax | Atty/Client |
|---|---|---|---|---|
| 8/24/2006 | NADA Appraisal guides | | Research Printout | Work/Product |
| 8/24/2006 | NADA Appraisal guides | | Research Printout | Work/Product |
| 8/4/2006 | Atty Melvin Banchek | | Notes | Work/Product |
| | Atty Melvin Banchek | | Notes | Work/Product |
| | Atty Melvin Banchek | | Research Printout | Work/Product |
| 4/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 3/24/2006 | NADA Appraisal guides | | Research Printout | Work/Product |
| 2/9/2006 | Renner, Otto | Atty Stephen Webster | Attorney-Client Agreement, detailed expenses, bill | |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Fax Cover Sheet | Atty/Client |
| 12/1/2005 | Cleveland Heights Teach | Michael Siegel | statement of account | |
| 5/11/2005 | Atty Stephen Webster | Atty Melvin Banchek | Phone Log | Atty/Client |
| 4/13/2006 | Atty Melvin Banchek | | Research Printout | Atty/Client |
| | Atty Melvin Banchek | | Estate tax forms printouts | Atty/Client |
| | | | Research Printout | Work/Product |
| 5/1/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 4/28/2006 | Laura Siegel Larson | Atty Melvin Banchek | Research Printout | Atty/Client |
| 10/2/2006 | Laura Siegel Larson | Atty Melvin Banchek | Email | Atty/Client |
| 9/29/2006 | Atty Melvin Banchek | Laura Siegel Larson | Email | Atty/Client |
| | | | | |
| | Atty Melvin Banchek | | Notes | Work/Product |
| 3/31/2006 | Laura Siegel Larson | Atty Melvin Banchek | Letter | Work/Product |

**EXHIBIT C**

**24**

Sheet2

| Date of Document | Identity of Author | Identity of Recipients | Document Type |
|---|---|---|---|
| File 4: | | | |
| | | | |
| | Rexam | Michael Siegel | Statement |
| 9/15/2006 | JP Morgan | Michael Siegel | Shareholder Form |
| 9/14/2006 | Atty Melvin Banchek | IRS | 1099 Worksheet |
| 9/14/2006 | Atty Melvin Banchek | Barry Clemens | Fax Cover Sheet |
| 9/14/2006 | Atty Melvin Banchek | Barry Clemens | Letter |
| 7/18/1969 | De Vegh Mutual Fund Inc | Michael Siegel | Stock Certificate |
| | Atty Melvin Banchek | Probate Court | Application to Expend Funds |
| 9/12/2006 | Atty Melvin Banchek | JP Morgan Chase Bank | Letter (w/cert. mail receipt) |
| 9/7/2006 | James Lane, M.D.; Obinna Isiguzo, M.D. | Michael Siegel | Bill |
| 9/5/2006 | JP Morgan | Atty Melvin Banchek | Statement |
| 9/1/2006 | Security Self Storage | Michael Siegel | Letter |
| 9/1/2006 | Atty Melvin Banchek | Michele Innenberg | Letter |
| 8/31/2006 | Atty Melvin Banchek | | Bank Deposit Copy |
| 8/31/2006 | Fifth Third Securities | Atty Melvin Banchek | Portfolio Statement |
| 8/31/2006 | Security Self Storage | Michael Siegel | Bill |
| 8/30/2006 | Keller Williams | Atty Melvin Banchek | Fax Cover Sheet |
| 8/30/2006 | Keller Williams | Atty Melvin Banchek | Fax Transmission |
| 8/29/2006 | Atty Melvin Banchek | Nancy Emerman | Letter |
| 8/25/2006 | Atty Melvin Banchek | Mike Sweeney | Email |
| 8/25/2006 | Laura Siegel Larson | Mike Sweeney | Email |
| 8/24/2006 | Atty Melvin Banchek | Mike Sweeney | Letter |
| 8/24/2006 | Atty Melvin Banchek | Carl Bartlett | Letter |
| 8/22/2006 | Laura Siegel Larson | Mike Sweeney | Email |
| 8/23/2006 | Atty Melvin Banchek | Atty Don W. Bulson | Letter |
| 8/23/2006 | Atty Melvin Banchek | Nancy Emerman | Letter |
| 8/23/2006 | Atty Melvin Banchek | Mike Sweeney | Letter |
| 8/18/2006 | Atty Melvin Banchek | Fifth Third Securities | Letter |
| 8/15/2006 | Daniel J. Kosikowski | Royalty/Working Interest Owner | Letter |
| 8/12/2006 | Atty Melvin Banchek | Computershare Investor Services, LLC | Letter (w/cert. mail receipt) |
| 8/10/2006 | Atty Gerald Berk | Atty Stephen M. Ott | Letter |
| 8/8/2006 | James Lane, M.D.; Obinna Isiguzo, M.D. | Michael Siegel | Bill |
| 8/4/2006 | Atty Melvin Banchek | Dee Dee Goodman | Letter |
| 7/27/2006 | J. Barry Clemens | Atty Melvin Banchek | Email |
| 7/27/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| 7/27/2006 | J. Barry Clemens | Atty Melvin Banchek | Email |
| 7/27/2006 | Atty Melvin Banchek | Dan Sussen | Letter |
| 7/24/2006 | Probate Court of Cuyahogo County | Atty Gerald Berk; Atty Melvin Banchek; Atty Michael Thomas | Letter |

**EXHIBIT C**

**25**

Sheet2

| | | | | |
|---|---|---|---|---|
| | 7/22/2006 | Medical Mutual of Ohio | Michael Siegel | Letter |
| | 7/17/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| | 7/14/2006 | Atty Melvin Banchek | Dan Sussen | Letter |
| | 7/14/2006 | Atty Melvin Banchek | Dan Sussen | Letter |
| | 6/12/2006 | Michelle Innenberg | Atty Melvin Banchek | Email |
| | 6/2/2006 | Lorene Gordon | Atty Melvin Banchek | Letter |
| File 3: | | | | |
| | | | | |
| | 7/14/2006 | Atty Melvin Banchek | Dan Sussen | Letter (w/cert. mail receipt) |
| | 6/22/1970 | State of Ohio, County of Cuyahoga | Michael Siegel | Certificate of Title |
| | | Atty Melvin Banchek | Dan Sussen | Odometer Disclosure Statement |
| | 7/12/2006 | David Jackson (BP) | Michael Siegel | Letter |
| | 7/10/2006 | Atty Melvin Banchek | First Energy Corporation | Letter |
| | 7/7/2006 | Atty Melvin Banchek | Michele Innenberg | Email |
| | 7/6/2006 | Atty Melvin Banchek | Michele Innenberg | Email |
| | 7/6/2006 | Atty Melvin Banchek | Michele Innenberg | Letter |
| | 6/30/2006 | Atty Melvin Banchek | Wachovia Securities | Letter (w/cert. mail receipt) |
| | 6/29/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| | 6/28/2006 | Dominion East Ohio | Michael Siegel | Letter |
| | 6/27/2006 | Atty Melvin Banchek | Plumbers and Pipefitters | Letter |
| | 6/23/2006 | Plumbers and Pipefitters | Atty Melvin Banchek | Letter |
| | 6/21/2006 | Primax | Michael Siegel | Letter |
| | 6/20/2006 | Atty Melvin Banchek | Dee Dee Goodman | Letter |
| | 6/20/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| | 6/19/2006 | Docket Search | | Website |
| | | Community Internists | Patient (Michael Siegel) | Letter |
| | 6/16/2006 | Rexam | Michael Siegel | Letter |
| | 6/14/2006 | Broad Street Energy Co | To Whom It May Concern (Michael Siegel) | Letter |
| | 6/14/2006 | Alan J. Stills | Atty Melvin Banchek | Fax Cover Page |
| | 6/12/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| | 6/12/2006 | Atty Melvin Banchek | Alan J. Sills | Letter |
| | 6/12/2006 | JP Chase Bank | Atty Melvin Banchek | Letter |
| | 6/9/2006 | Fax Transmission Report | | Fax Transmission Report |
| | 6/7/2006 | Atty Melvin Banchek | William T. Sweeney | Letter |
| | 6/7/2006 | Fax Transmission Report | | Fax Transmission Report |
| | 6/6/2006 | Atty Melvin Banchek | Solon Granite Memorial Works | Letter |
| | 6/6/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| | 6/5/2006 | Delores Stein | Laura Siegel Larson | Letter |
| | 6/5/2006 | Delores Stein | Laura Siegel Larson | Letter |
| | 6/5/2006 | Delores Stein | Atty Melvin Banchek | Letter |

**EXHIBIT C**

Sheet2

| | | | |
|---|---|---|---|
| 5/31/2006 | Mike Sweeney | Atty Melvin Banchek | Fax Cover Page |
| 5/31/2006 | Fax Transmission Report | | Fax Transmission Report |
| 5/30/2006 | Shawn Kelly | Atty Melvin Banchek | Letter |
| File 2: | | | |
| 5/31/2006 | Shawn Kelly | Atty Melvin Banchek | Email |
| 5/28/2006 | Laura Siegel Larson | Mike Sweeney | Email |
| 5/24/2006 | Atty Melvin Banchek | Docket Clerk | Form |
| 5/24/2006 | Shawn Kelly | Atty Melvin Banchek | Email |
| 5/24/2006 | Atty Melvin Banchek | Pacific Life Insurance Company | Letter |
| 5/24/2006 | Atty Melvin Banchek | Donna Panton | Letter (w/cert. mail receipt) |
| 5/24/2006 | Atty Melvin Banchek | Barry Clemens | Letter (w/cert. mail receipt) |
| 5/24/2006 | Atty Melvin Banchek | Pacific Life Insurance Company | Letter |
| 5/24/2006 | Becky McCartney | Atty Melvin Banchek | Letter |
| 5/24/2006 | Atty Melvin Banchek | Barry Clemens | Letter |
| 5/24/2006 | Atty Melvin Banchek | Shawn Kelly | Email |
| 5/23/2006 | Michael San Giacomo | | Article |
| 5/23/2006 | Medical Mutual of Ohio | Michael Siegel | Letter |
| 5/19/2006 | Donna Panton | Michael Siegel | Letter |
| 5/18/2006 | Atty Melvin Banchek | Trina Miller | Letter |
| 5/17/2006 | Atty Melvin Banchek | | Fax Transmission Report |
| 5/13/2006 | Atty Melvin Banchek | Shawn Kelly | Letter |
| 5/5/2006 | Michele Innenberg | Atty Melvin Banchek | Email |
| 5/4/2006 | Atty Melvin Banchek | Jessica Condosta | Email |
| 5/4/2006 | Jessica Condosta | Atty Melvin Banchek | Email |
| 5/4/2006 | Jessica Condosta | Atty Melvin Banchek | Email |
| 5/3/2006 | Atty Melvin Banchek | Jessica Condosta | Email |
| 5/3/2006 | Atty Melvin Banchek | Jessica Condosta | Email |
| 5/1/2006 | Edward J. Sukol | Atty Melvin Banchek | Email |
| 5/1/2006 | Atty Melvin Banchek | East City Cleveland Hall | Letter (w/cert. mail receipt) |
| File 1: | | | |
| 4/28/2006 | Atty Melvin Banchek | Atty Don Bulson | Email |
| 4/27/2006 | Sydney Barretto (Chase) | Estate of Michael Siege | Letter |
| 4/27/2006 | Rabbi Edward J. Sukol | Atty Melvin Banchek | Email |
| 4/27/2006 | Atty Melvin Banchek | Carl Bartlett | Letter |
| 4/26/2006 | Atty Melvin Banchek | Dee Dee Goodman | Letter |
| 4/26/2006 | Atty Melvin Banchek | Dee Dee Goodman | Letter (w/cert. mail receipt) |
| 4/26/2006 | Atty Melvin Banchek | Denise Mann | Letter (w/cert. mail receipt) |
| 4/25/2006 | Atty Melvin Banchek | Atty Don Bulson | Letter (w/cert. mail receipt) |

EXHIBIT C

27

Sheet2

| | | | |
|---|---|---|---|
| 4/25/2006 | Atty Melvin Banchek | Vanguard Group | Letter (w/cert. mail receipt) |
| 4/21/2006 | Atty Melvin Banchek | Chase Bank | Letter |
| 4/21/2006 | Atty Melvin Banchek | Chase Bank | Fax Cover |
| 4/21/2006 | Atty Melvin Banchek | Fifth Third Bank | Letter |
| 4/18/2006 | Denise Mann | Atty Stephen Webster | Letter |
| 4/13/2006 | Susan Aukerman | Atty Melvin Banchek | Letter |
| 4/13/2006 | Cindy Sipos | Atty Melvin Banchek | Letter |
| 4/13/2006 | Atty Melvin Banchek | Dominion East Ohio Gas | Letter |
| 4/11/2006 | Atty Melvin Banchek | James S. Levy | Letter |
| 4/11/2006 | Atty Melvin Banchek | Ohio Savings Bank | Letter |
| 4/11/2006 | Atty Melvin Banchek | Atty D. Kevin O'Reilly | Letter |
| 4/11/2006 | Robert J. Parks | Atty Melvin Banchek | Letter |
| 4/11/2006 | Atty Melvin Banchek | Fifth Third Bank | Letter |
| 4/10/2006 | Atty Melvin Banchek | Broad Street Energy Co; Laura Siegel Larson; Stephen Webster | Letter |
| 4/10/2006 | Atty Melvin Banchek | Atty Stephen Webster | Fax Cover; Letter |
| 4/10/2006 | Atty Melvin Banchek | IRS(?) | Application for Employee ID |
| 4/7/2006 | Discover Bank | Estate of Michael Siegel | Letter |
| 4/5/2006 | Atty Melvin Banchek | East City Cleveland Hall | Letter |
| 4/3/2006 | Atty Melvin Banchek | Discover Card | Letter (w/cert. mail receipt) |
| 4/3/2006 | Atty Melvin Banchek | Ken Francis-Sable | Letter |
| 4/3/2006 | Christopher P. Hitchcock | Atty Melvin Banchek | Letter |
| 3/31/2006 | Atty Melvin Banchek | Cuyahoga County Auditor's Office | Letter |
| 3/31/2006 | Atty Melvin Banchek | Fifth Third Bank | Letter (w/cert. mail receipt) |
| 3/29/2006 | Smooth Transitions | Atty Melvin Banchek | Contract |
| 3/28/2006 | US Postal Service | Michael Siegel | Change of Address |
| 3/30/2006 | Ohio Department of Taxation | Michael Siegel | Form |
| 3/29/2006 | Aaron's Antiques | Atty Melvin Banchek | Form |
| 3/28/2006 | Atty Melvin Banchek | Geauga County Treasurer's Office | Letter |
| 3/29/2006 | Michele Innenberg | Atty Melvin Banchek | Fax Cover |
| 3/28/2006 | Fred P. Schwartz | Atty Melvin Banchek | Letter |
| 3/28/2006 | David & Chava Kletski | Atty Melvin Banchek | Contract |
| 3/25/2006 | Atty Melvin Banchek | Marc Toberoff; Laura Siegel Larson | Letter |
| 3/23/2006 | Wendy Maruna | Atty Melvin Banchek | Fax Cover |
| 3/23/2006 | Atty Melvin Banchek | Gerald Appel | Letter |
| 3/21/2006 | Cuyahoga County Probate Court | | Receipt |
| 3/17/2006 | Western Surety Company | Atty Melvin Banchek | Bond of Administrator |
| 3/16/2006 | Mary Glassco | Atty Stephen Webster | Letter |
| 3/16/2006 | CNA Surety | Atty Melvin Banchek | Form |
| | Smooth Transitions | | Company Literature |
| 2/10/2006 | Timothy McCarthy | Member; Cleveland Heights Teachers Credit | Letter |

**EXHIBIT C**

**28**

Sheet2

| | | | |
|---|---|---|---|
| 2/7/2006 | Brad Ricca | Stephen Webster | Letter |
| 2/12/2006 | Michael Siegel | Atty Don Bulson | Letter |
| | | | |
| File 5: Assorted | | | |
| 4/29/2006 | H.Lester | | Bill |
| 4/29/2006 | H.Lester | | Bill |
| 4/17/2006 | Pacific Life | | Check Stub |
| 4/24/2006 | Rebecca Haus | Atty Melvin Banchek | Fax/Bank Info |
| 4/26/2006 | Ohio Burea of Motor Vehicles | Michael Siegel | Letter |
| 5/1/2006 | Hilcrest Ambulance | Michael Siegel | Bill |
| 6-Apr | Huron Hospital | Michael Siegel | Bill |
| 4/3/2006 | Primax | Michael Siegel | Letter |
| 3/28/2006 | Medical Mutual | Michael Siegel | Bill |
| 3/30/2006 | Medical Mutual | Michael Siegel | Letter |
| 7/6/2006 | James Lane, Obinna Isiguzo | Michael Siegel | Bill |
| 7/10/2006 | First Fed. Credit Control | Michael Siegel | Bill |
| 6/27/2006 | Dominion | Michael Siegel | Bill |
| 7/3/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 7/9/2006 | Smooth Transitions | Atty Melvin Banchek | Bill |
| 7/7/2006 | Atty Melvin Banchek | | Copies of Checks |
| 5/2/2006 | City of Cleveland Water Department | Michael Siegel | Bill |
| 6/1/2006 | AAA | Michael Siegel | Bill |
| 3/26/2006 | Plumbers Union Local 55 Pension Fund | Estate of Michael Siegel | Check Stub |
| 6/28/2006 | Security Self Storage | Michael Siegel | Bill/Receipt |
| 6/7/2006 | Atty Melvin Banchek | Ohio Div. of Unclaimed Funds | Letter |
| 6/7/2006 | | | Copies of Checks |
| 6/1/2006 | Smuckers | Michael Siegel | Letter |
| 5/31/2006 | Wachovia | Estate of Michael Siegel | Letter/Statement of Account |
| 6/7/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill/Fax |
| 5/29/2006 | Cuyahoga County Probate Court | Atty Melvin Banchek | Receipt |
| 6/5/2006 | Randesham Ins. Agency | Stephen Webster | Receipt |
| 6/2/2006 | City of Cleveland Water Department | 3605 Bendemer | Bill |
| 6/1/2006 | Atty Melvin Banchek | Jennifer Carroll | Copy of Check |
| 5/26/2006 | Tracy A. Jemison | Atty Melvin Banchek | Check Stub |
| 6/9/2006 | First Fed. Credit Control | Michael Siegel | Bill |
| 5/26/2006 | Dominion | Michael Siegel | Bill |
| 6/9/2006 | James Lane, Obinna Isiguzo | Michael Siegel | Bill |
| 6/12/2006 | | Estate of Michael Siegel | Copies of Checks |
| 6/8/2006 | Illuminating Company | Michael Siegel | Bill |
| 6/7/2006 | Medical Mutual | Michael Siegel | Bill |

**EXHIBIT C**

**29**

Sheet2

| | | | |
|---|---|---|---|
| | Berkowitz, Kumin, Bookatz | Estate of Michael Siegel | Bill/Fax |
| 6/17/2006 | Ralph Sills/Progessive Ins. | Atty Melvin Banchek | Letter |
| 6/20/2006 | Cuyahoga County | Michael Siegel | Bill |
| 6/14/2006 | Geauga County | Michael Siegel | Bill |
| 5/31/2006 | Broad Street Energy Company | Estate of Michael Siegel | Receipt |
| 6/21/2006 | Berkowitz, Kumin, Bookatz | Estate of Michael Siegel | Receipt |
| 6/21/2006 | Berkowitz, Kumin, Bookatz | Estate of Michael Siegel | Receipt |
| 6/26/2006 | Security Self Storage | Michael Siegel | Bill |
| 6/27/2006 | Atty Melvin Banchek | Security Self Storage | Copy of Check |
| 6/2/2006 | Revenue Group | Michael Siegel | Bill |
| 4/30/2006 | Broad Street Energy Company | Estate of Michael Siegel | Receipt |
| 7/4/2006 | Evarats Tremaine FLCK/Progressive Ins. | Michael Siegel | Bill |
| 6/2/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 5/26/2006 | Security Self Storage | Michael Siegel | Bill |
| 5/31/2006 | Laurie Seidman | Estate of Michael Siegel | Bill |
| 6/5/2006 | Smooth Transitions | Atty Melvin Banchek | Bill/Fax |
| 6/1/2006 | Fifth Third Securities | Atty Melvin Banchek | Letter |
| 5/29/2006 | Revenue Group | Michael Siegel | Bill |
| 5/16/2006 | Computer Collections | Michael Siegel | Bill |
| 5/10/2006 | | Estate of Michael Siegel | Copy of Check |
| 5/10/2006 | Principal Trust Company | Estate of Michael Siegel | Check Stub |
| 5/15/2006 | Pacific Life | Michael Siegel | Check Stub |
| 5/10/2006 | | Estate of Michael Siegel | Copy of Check |
| 5/9/2006 | City of Cleveland Heights Housing Inspecti | 3605 Bendemer | Point of Sale Certificate of Inspection |
| 5/9/2006 | City of Cleveland Heights Housing Inspecti | 3605 Bendemer | Point of Sale Certificate of Inspection |
| 5/9/2006 | City of Cleveland Heights Housing Inspecti | 3605 Bendemer | Point of Sale Certificate of Inspection |
| 5/24/2006 | | Estate of Michael Siegel | Copies of Checks and Deposit Slips |
| 6/1/2006 | Evarats Tremaine FLCK/Progressive Ins. | Michael Siegel | Letter |
| 6/2/2006 | Evarats Tremaine FLCK/Progressive Ins. | Michael Siegel | Letter |
| 3/17/2006 | CAN Surety | Atty Melvin Banchek | Bill |
| | Michele Innenberg | Atty Melvin Banchek | Business Cards |
| 8/7/2006 | Keller Williams | Atty Melvin Banchek | Fax/Agent Agreement |
| 7/13/2006 | Steven Ott | Atty Melvin Banchek | Presentation of Claim |
| 8/6/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 8/6/2006 | Berkowitz, Kumin, Bookatz | Estate of Michael Siegel | Receipt |
| 7/31/2006 | Wachovia Securities | Estate of Michael Siegel | Letter |
| 8/8/2006 | Atty Melvin Banchek | Michele Mehan | Letter |
| 8/2/2006 | Michele Mehan | Cuyahoga County Probate | Letter |
| 7/27/2006 | Dominion | Michael Siegel | Bill |
| 7/5/2006 | Cuyahoga County Probate Court | Atty Melvin Banchek | receipt |

**EXHIBIT C**

**30**

Sheet2

| | | | |
|---|---|---|---|
| 7/25/2006 | Profile Imaging | Atty Melvin Banchek | Bill |
| 8/1/2006 | Smooth Transitions | Atty Melvin Banchek | Bill/Fax |
| 7/21/2006 | | Estate of Michael Siegel | copy of check |
| 9/15/2006 | Atty Melvin Banchek | Estate of Michael Siegel | Bill |
| 6/9/2006 | Probate Court | | Appointment of Fiduciary, Certificate of Death |
| 6/12/2006 | Atty Melvin Banchek | J.P.Chase Bank | Letter |
| 4/29/2006 | Plumbers Union Local 55 Pension Fund | Michael Siegel | Letter w/receipt |
| 5/19/2006 | Hilcrest Ambulance | Michael Siegel | Bill |
| 3/29/2006 | Oltinger & Sons Locksmith | Melvin Banchek | Bill |
| 4/24/2006 | Berkowitz, Kumin, Bookatz | Estate of Michael Siegel | Bill |
| 5/11/2006 | National City | Estate of Michael Siegel | Statement |
| 4/7/2006 | National City | Estate of Michael Siegel | Deposit Receipt |
| 5/1/2006 | National City | Estate of Michael Siegel | Deposit Receipt |
| | Atty Melvin Banchek | | Savings Bond Demand |
| | Gerald E. Fuerst | | Title to Boat |
| | Gerald E. Fuerst | | Title To Boat |
| 6/30/2006 | Ralph Sills/Progessive Ins. | Atty Melvin Banchek | Letter |
| | | | Copy of Death Certificate |
| 6/12/2006 | Pacific Life | Estate of Michael Siegel | Check Stub |
| 7/26/2006 | Gerald E. Fuerst | | Title to Motorcycle |
| 7/14/2006 | Old River Distributors/Atty Melvin Banchek | | Odometer Disclosure Statement |
| 7/25/2006 | Atty Melvin Banchek | | P.O.A. for title (boat) |
| 4/27/2006 | Dominion | Michael Siegel | Bill |
| 7/14/2006 | P&G Shareholder Services | Atty Melvin Banchek | statement |
| 7/14/2006 | P&G Shareholder Services | Atty Melvin Banchek | statement |
| 4/19/2006 | Fifth Third Securities | Estate of Michael Siegel | Copy of Check |
| 7/2/2006 | NE Ohio Reg. Sewer District | 3605 Bendemer | Bill |
| 7/11/2006 | Illuminating Company | Michael Siegel | Bill |
| 7/12/2006 | Solon Granite Memorial Works | Atty Melvin Banchek | Bill |
| 7/25/2006 | Profile Imaging | Atty Melvin Banchek | Bill |
| 7/13/2006 | Renner, Otto, Boise & Sklar | Atty Melvin Banchek | Bill |
| 7/27/2006 | Atty Melvin Banchek | IRS | request for taxpayor ID |
| 7/10/2006 | P&G Shareholder Services | Atty Melvin Banchek | Letters |
| 7/12/2006 | Wachovia | Estate of Michael Siegel | Letter |
| 7/7/2006 | Bank of New York | Atty Melvin Banchek | Letter |
| 7/13/2006 | Dominion | 3605 Bendemer | Letter |
| 6/10/2005 | Pacific Life | Michael Siegel | quarterly statement |
| 5/6/2006 | Plumbers Union Local 55 Pension Fund | Michael Siegel | Letter |
| 1/20/2006 | Capital Concrete & Waterproofing | Atty Melvin Banchek | Bill |
| 7/31/2006 | Ralph Sills/Progessive Ins. | Atty Melvin Banchek | Bill |

**EXHIBIT C**

**31**

Sheet2

| 4/21/2006 | AT&T | Michael Siegel | Bill |
| 1/17/2006 | Computer Collections | Michael Siegel | Bill |
| 7/14/2006 | Estate | Sweeney Construction | Copy of Check |
| 7/12/2006 | Estate | Smooth Trasition | Copy of Check |
| 7/27/2006 | Estate | The Illuminating Co. | Copy of Check |
| 7/27/2006 | Estate | NE Ohio Reg. Sewer Dist. | Copy of Check |
| 7/27/2006 | Estate | Profile Imaging | Copy of Check |
| 7/27/2006 | Estate | Solon Grafite Memorial Works | Copy of Check |
| 8/4/2006 | Estate | Berkowitz | Copy of Check |
| 8/4/2006 | Estate | Progessive | Copy of Check |
| 8/2/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 8/1/2006 | Frank Russo, County Auditor | Michael Siegel | Appraisal Notification |
| 7/21/2006 | Security Self Storage | Michael Siegel | Bill/fax |
| 5/24/2006 | Cuyahoga County Probate Court | | Fiduciary Appointment Letter |
| 8/31/2006 | Fifth Third Securities | Michael Siegel | Account Statement |
| 8/31/2006 | Wachovia | Estate of Michael Siegel | Account Statement |
| | State of Ohio | | Boat license |
| | Gerald E. Fuerst | | Memorandum Boat Title |
| | Gerald E. Fuerst | | Memorandum Boat Title |
| 4/7/2006 | Estate | IRS | Tax Return |
| 9/5/2006 | Smooth Transitions | Atty Melvin Banchek | Fax |
| 9/6/2006 | Atty Melvin Banchek | | Fax Cover Sheet |
| 8/9/2006 | Gerald E. Fuerst | | Receipt |
| 9/5/2006 | Smooth Transitions | Atty Melvin Banchek | Fax Cover Sheet |
| | | | Copy of Cadillac Title |
| 9/2/2006 | Security Self Storage | Michael Siegel | Bill/Fax |
| 8/25/2006 | Dominion | Michael Siegel | Bill |
| 8/18/2006 | City of Cleveland Heights Housing Inspecti | Atty Melvin Banchek | Point of Sale Reinspection Notice |
| 6/9/2006 | Cuyahoga County Probate Court | | Fiduciary Appointment Letter |
| 4/13/2006 | Cuyahoga County Probate Court | | Inventory and Appraisal |
| | Melvin/Laura | | Application to Sell Personal Property (unsigned) |
| | Melvin/Laura | | Application to Sell Personal Property (signed) |
| 8/10/2006 | James Wienberger | Atty Melvin Banchek | Subpoena |
| 7/18/2006 | Gerald A. Berk | | Motion to Dismiss and Brief in Support |
| 10/3/1998 | State of Ohio | | Copy of Boat Title with Lien Cancelled |
| 10/3/1998 | State of Ohio | | Boat Title with Lien Cancelled |
| 11/11/1992 | Indiana | | Certificate of Origin |
| | State of Ohio | | Boat Registration |
| 10/3/1998 | State of Ohio | | Boat Title with Lien Cancelled |
| 4/10/2006 | IRS | | Provisional Employer ID |

**EXHIBIT C**

**32**

Sheet2

| | | | |
|---|---|---|---|
| | Melvin/Laura | | Application to Sell Personal Property |
| | State of Ohio | | Motorcycle Title |
| 10/3/1998 | State of Ohio | | Copy of Boat Title with Lien Cancelled |
| 8/15/2006 | Atty Melvin Banchek | | Fax Transmission Report |
| 11/18/1981 | State of Ohio | | Registration Form |
| 2/7/1944 | State of Ohio | | Certificate of Birth |
| | Doreen Davis | | Advertisement |
| 6/29/2006 | Smooth Transitions | Atty Melvin Banchek | Fax Cover Sheet |
| 6/29/2006 | Smooth Transitions | Estate of Michael Siegel | Bill |
| 6/14/2006 | Ralph Sills/Progessive Ins. | Atty Melvin Banchek | Statement/Bill |
| 6/8/2006 | Melvin Banchek | Ohio Division of Unclaimed Funds | Application for Unclaimed Funds |
| 5/7/2002 | State of Ohio | | Copy of Vehicle Registration |
| 5/7/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 5/5/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Reciept |
| | Atty Melvin Banchek | | Copies of Checks |
| 4/18/2006 | Smooth Transitions | Atty Melvin Banchek | Bill/Fax |
| 4/24/2006 | Solon Granite Memorial Works | Atty Melvin Banchek | estimate |
| 4/27/2006 | Smooth Transitions | Atty Melvin Banchek | Bill/fax |
| 4/4/2006 | James Levy | | Home purchase agreement |
| 3/31/2006 | Officer of the Cuy. Co. Auditor | | printout of tax Bill |
| 4/4/2006 | City of Cleveland Heights | Atty Melvin Banchek | Acknowledgment Form/fax |
| 3/29/2006 | Trina Miller | Smooth Transitions | fax/Letter |
| 4/1/2006 | City of Cleveland Heights Water Departmen | 3605 Bendemer | Bill |
| 4/1/2006 | NE Ohio Reg. Sewer District | 3605 Bendemer | Bill |
| | Atty Melvin Banchek | | Copies of Michael Siegel Credit Cards |
| 11/13/1982 | State of Ohio | | Registration/Tags Motorcycle |
| 6/10/2005 | Pacific Life | Michael Siegel | Transaction Confirmation |
| 3/28/2006 | Dominion | Michael Siegel | Bill |
| 5/4/2006 | James Lane, Obinna Isiguzo | Michael Siegel | Bill |
| 5/8/2006 | Illuminating Company | Michael Siegel | Bill |
| | Plumbers Union Local 55 Pension Fund | | Notice of Withholding |
| 12/31/2005 | Credit suisse | Michael Siegel | Investment Statement |
| | Atty Melvin Banchek | Plumbers | Request for Distribution of Death Benefit |
| 9/30/2005 | Credit suisse | Michael Siegel | Investment Statement |
| 9/30/2005 | Credit suisse | Michael Siegel | Investment Statement |
| 12/31/2005 | Credit suisse | Michael Siegel | Investment Statement |
| 3/31/2006 | Pacific Life | Michael Siegel | Quarterly Statement |
| 1/31/2006 | Broad Street Energy Company | Michael Siegel | Receipt |
| 3/1/2006 | First Energy Stock | Michael Siegel | Dividend Statement |
| 1/16/2006 | Geauga County | Michael Siegel | Tax Bill |

**EXHIBIT C**

**33**

Sheet2

| | | | |
|---|---|---|---|
| 12/18/2005 | Fifth Third Bank | Michael Siegel | Statement |
| | First Energy Stock | Michael Siegel | Transaction Request Form |
| 4/24/2006 | Berkowitz, Kumin, Bookatz | Atty Melvin Banchek | Bill |
| 11/5/2005 | Michael Siegel | cleveland clinic | Check |
| | Dr. Anschuetz | Michael Siegel | Note |
| 6-Apr | Melvin, Daniel and Jeffery O'Reilly | | Purchase Agreement |
| | P&G Shareholder Services | Michael Siegel | Optional Investment Slip |
| 8/3/2006 | Mariann Vick | Melvin Banchek | Fax Cover Sheet |
| 2/28/2006 | Security Self Storage | Michael Siegel | Bill |
| 3/16/2006 | | Atty Melvin Banchek | Fax Received Message |
| | Kletski's/Estate | | Home Purchase Agreement |
| 4/6/2006 | Security Self Storage | Michael Siegel | Bill |
| 4/6/2006 | Melvin Banchek | Security Self Storage | Fax Cover Sheet |
| 9/30/2006 | Security Self Storage | Atty Melvin Banchek | Bill |
| 6/9/2006 | Cuyahoga County Probate Court | | Fiduciary Appointment Letter |
| 9/30/2006 | Security Self Storage | Atty Melvin Banchek | Fax Cover Sheet |
| 3/23/2006 | National City | Atty Melvin Banchek | Receipt |
| 5/12/2007 | City of Cleveland Heights Housing Inspection | | Point of Sale Reinspection Notice |
| 5/12/2007 | City of Cleveland Heights Housing Inspection | | Point of Sale Reinspection Notice |
| 1/30/2006 | Ohio Department of Health | | Copy of Death Certificate |
| 12/1/2005 | Michael Siegel | Cleveland Heights Teachers Credit Union | statement of account |
| Document File: | | | |
| | | | Bank Statements and records from National City Bank account |
| | | | Bank Statements and records from Fifth Third Securities Bank |
| | | | Smuckers Stock Certificates |
| | | | Siegel Death Certificate |
| | | | Trailer Weight Affidavit |
| | | | Job/Well/Unit Operating Statement |
| | | | Banchek Subpoena |
| | | | Smooth Transitions Billing Statement |
| | | | Bond of Administrator |

**EXHIBIT C**

**34**

Sheet2

| | | | Instructions to Docket Service |
|---|---|---|---|
| | | | Cuyahoga County Recorder's Office Document Index |
| | | | Probate Court receipts |
| | | | Waiver of Right to Administer |
| | | | Self Storage account notice |
| | | | Electric Bills |
| | | | IRS Letter |
| | | | Ohio BMV Power of Attorney Form |
| | | | Odometer Disclosure Statement |
| | | | Application for Consent to Transfer Property |
| | | | IRS Tax Returns |
| | | | Ohio Income Tax Returns |
| | | | Probate Court Summons |
| | | | Appointment of Appraiser Form |
| | | | Cuyahoga County Inventory and Appraisal |
| | | | Application for Certificate of Inspection |
| | | | City of Cleveland Heights |
| | | | Email from Michael Siegel to Don Bulson |
| | | | Tax Assessment Sheet |
| | | | Property Deed |
| | | | Court Receipts |
| | | | Medallion Guarantee Instructions |
| | | | Procter and Gamble Statements and Records |
| | | | Ohio Job & Family Services Notice |

EXHIBIT C

35

Sheet2

| | | | Pacific Life Transaction Confirmation |
|---|---|---|---|
| | | | Ohio Dept of Taxation forms |
| | | | Check copies |
| | | | BMV Registration Card copy |
| | | | Boat Certificate of Origin |
| | | | Probate Court Schedule of Assets |
| | | | Department of Energy Postcard |
| | | | Application for Certificates of Inspection |
| | | | Affidavit of Domicile |
| | | | Docket Search |
| | | | Credit Suisse Statement |
| | | | Ohio Department of Taxation Estate Tax Form |
| | | | Employee Stock Purchase Plan Statement |
| | | | Pacific Life Statement and Records |
| | | | Wachovia Securities Account Summary |
| | | | Letter from Geauga County Auditor |
| | | | Plumbers and Steamfitters Local No 42 Retirement Plan |
| | | | First Energy Account Statement |
| | | | Fax Transmission Reports |
| | | | Wachovia Securities Account Documents |

**EXHIBIT C**

**36**

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:**<br><br>**JOANNE SIEGEL and LAURA SIEGEL LARSON,**<br><br>       **Plaintiffs,**<br><br>       **v.**<br><br>**WARNER BROS. ENTERTAINMENT INC., et al.,**<br><br>       **Defendants.** | **Misc. Case No. 00099- SO**<br><br>**Case Nos. CV 04-8400 SGL (RZx)**<br>          **CV 04-8776 SGL (RZx)**<br><br>**(Consolidated for Discovery Purposes)**<br><br>**Action Pending in the U.S. District Court for the Central District of California** |

### DON W. BULSON, ESQ.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM AND APPEAR FOR DEPOSITION AND FOR ATTORNEYS' FEES

Ohio resident Don W. Bulson, Esq. ("Bulson"), who is a non-party to this action pending in the Central District of California, has reviewed his legal files and served a detailed privilege log responsive to Defendants Warner Bros. Entertainment Inc. ("WB"), Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc. and DC Comics' ("DC") (collectively, "Defendants" or "Movants") Subpoena Duces Tecum served on him on August 11, 2006 (the "Subpoena"). Despite the overbroad and invasive nature of the Movants' Subpoena on a non-party attorney, Bulson and his counsel have made every effort to comply with the requests. Notwithstanding the clearly privileged nature of Bulson's files, Bulson's counsel offered to represent that all responsive documents had been listed in the privilege log and even to produce certain privileged documents. However, Defendants' counsel refused this offer and instead

insisted on pressing ahead with an unnecessary motion to compel ("Motion"). As demonstrated

below, Bulson has responded to the Movants' Subpoena by detailing his privileged legal files in

a privilege log. As such, the Movants' wasteful motion should be denied in its entirety.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs" or the "Siegel Heirs") are

the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world

renowned comic book hero, "Superman," and the sole author of "Superboy." Plaintiffs have

initiated two civil actions in the United States District Court for the Central District of California

regarding Plaintiffs' proper exercise of their right under section 304(c) of the 1976 United States

Copyright Act, 17 U.S.C. § 304(c) ("Section 304(c)"), to recapture Siegel's original copyrights

in "Superman" and "Superboy" by serving statutory notices on the Defendants herein on April 3,

1997 and March 8, 2002, respectively terminating Siegel's prior grant(s) of "Superman" and

"Superboy" to Defendants' predecessor(s) (the "Siegel Terminations" or "Terminations"). *See*

Movants' Motion to Compel Production of Documents ("Mot. Compel"), Exs. 2, 3.

Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. § 304(c) and 37

C.F.R. § 201.10, the regulations promulgated thereunder by the Register of Copyrights.

Accordingly, on April 16, 1999, the noticed "Superman" termination date, all rights Siegel

conveyed in "Superman" to Defendants' predecessors duly reverted to Plaintiffs. Mot. Compel

Ex. 2. On November 17, 2004, the noticed "Superboy" Termination date, all rights that Siegel

had conveyed in "Superboy" to Defendants' predecessors duly reverted to Plaintiffs. Mot.

Compel Ex. 3.

Shortly after Plaintiffs served their "Superman" Termination notices the general counsel

of Defendant Warner Bros. Entertainment Inc. and the President of DC Comics, a wholly owned

Case 2:10-cv-03633-ODW-RZ Document 477-2 Filed 08/16/11 Page 41 of 156 Page
Case 9:06-mc-00099-SO Document 24 Filed 11/06/06 3 of 11 PageID #: 28 Page
ID #:29081

WB subsidiary, both acknowledged the validity of the "Superman" Termination and the parties

began negotiations for Defendants' purchase and settlement of the Plaintiffs' recaptured

copyright interests. Mot. Compel Ex. 2. However, when no agreement was made or executed by

the parties, Defendants, in a reversal of their prior acknowledgement of the "Superman"

Terminations two years earlier, contested the Terminations in 1999, one day before the effective

Termination date, claiming the Terminations were somehow invalid. *Id.*

Defendants thereafter also similarly claimed that the "Superboy" Termination was

invalid. Plaintiffs consequently commenced declaratory relief actions in the Central District

Court of the State of California regarding the validity and effect of the "Superman" and

"Superboy" Terminations on October 8, 2004 (Case No. CV 04-8400 RSWL (RZx)) and October

22, 2004 (CV 04-8776 RSWL (RZx)), respectively (the "Siegel Litigations"). *See* Mot. Compel,

Exs. 2, 3.

Plaintiffs moved for partial summary adjudication on February 15, 2006 that their

statutory "Superboy" Termination is valid and that Plaintiffs thereby recaptured Siegel's

"Superboy" copyright. Defendants cross-moved for summary judgment claiming the

"Superboy" Termination was invalid based in large part on the same purported claims and

defenses asserted with respect to "Superman." On March 23, 2006, the Court *granted* Plaintiffs'

motion in its entirety and *denied* Defendants' motion in its entirety. *See* Declaration Of Nicholas

Williamson In Opposition to Defendants' Motion to Compel Production of Documents

("Williamson Decl."), Ex. C. Defendants subsequently moved to have this Order certified for

appeal, which motion was also *denied* by the Court.

In purported connection with the Siegel Litigations, Defendants served Ohio resident

Bulson with the Subpoena at issue herein on August 11, 2006. Mot. Compel Ex. 1. On August

Case 2:10-cv-03633-ODW-RZ Document 477-2 Filed 08/16/11 Page 42 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2-4 Filed: 11/06/06 4 of 11. PageID #: 29
ID #:29082

23, 2006, Bulson filed timely objections to the Subpoena pursuant to Rule 45 of the Federal

Rules of Civil Procedure. Mot. Compel Ex. 7. Bulson served as counsel to Siegel's son from his

first marriage, Michael Siegel. Williamson Decl., ¶ 3. Michael Siegel is not a party to the Siegel

Litigations. Mot. Compel. Exs. 2, 3.

      Plaintiffs served Defendant DC their first set of requests for production of documents on

May 13, 2005. Declaration of Marc Toberoff, Esq. in Opposition to Defendants' Motion to

Compel Production of Documents ("Toberoff Decl."), ¶ 3. Plaintiffs also served Defendant WB

a separate set of requests on May 13, 2005. *Id.,* ¶ 4. Both Defendants filed responses to their

respective requests on June 13, 2005. *Id.,* ¶ 5. DC thereafter produced a small portion of their

non-privileged documents available for copying on August 9, 2005. *Id.,* ¶ 5. However,

Defendant DC did not serve a privilege log until April 7, 2006 *eight months* after its production.

*Id.,* ¶ 6. Incredibly, despite Plaintiffs' repeated demands, Defendant WB failed to produce *any*

documents for copying until June 2, 2006, over *a year* after Plaintiffs' requests were served. *Id.,*

¶ 7. WB subsequently served their privilege log on June 27, 2006, *thirteen months* after

Plaintiffs' Requests. *Id.,* ¶ 8. Thus, Movants are quick to point the finger at *non-parties* such as

Bulson when their own conduct in discovery has been lax and often unresponsive.

**A.**    **The Parties' "Meet and Confer" Efforts**

      On August 30, 2006, Defendants' counsel James D. Weinberger ("Weinberger") sent

Bulson's counsel a letter regarding the Subpoena. Defendants' assertion that no "written"

response was received ignores the frequent phone communication between counsel. Mot.

Compel 6. In fact, counsel subsequently conducted a conference by telephone on September 7,

2006 in which Bulson's counsel explained that Bulson's voluminous file was being sent from

Cleveland to Los Angeles and that a privilege log would be submitted as soon the documents

could be analyzed.  Williamson Decl. ¶ 5.  In response, Weinberger agreed to move Bulson's deposition from its original September 12, 2006 date.  *Id.*  Bulson's counsel served Defendants' counsel with his privilege log on October 23, 2006.  *Id.*, Ex. A.  Bulson remains ready and willing to be deposed by the Movants.  Despite his compliance and efforts by his counsel to amicably resolve this matter, the Movants rigidly insist on steamrolling ahead with their Motion.  Toberoff Decl. ¶ 9, Ex. E.

## ARGUMENT

### I.     BULSON HAS PROVIDED A DETAILED PRIVILEGE LOG

On October 23, 2006, Bulson furnished Defendants with a 31-page privilege log, containing 422 entries, properly setting forth with respect to each communication: the date, sender, recipient, the nature of the privilege claimed, the document type and the present location of the document.  Williamson Decl., Exs. A, B (5:16-27).  This log was constructed using a format previously approved in this action by the District Court for Central District of California.  *Id.*, Ex. B (5:16-27).  Despite this clear compliance with the Federal Rules of Procedure, Defendants argue that Bulson failed to submit a privilege log in a timely manner, and thus waived the underlying privilege.  This is simply incorrect.  In *Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct.,* 408 F.3d 1142 (9th Cir. 2005), the court explicitly rejected the contention that the failure to produce a privilege log within the 30-day period prescribed by Rule 34 of the Federal Rules of Civil Procedure constitutes a waiver of privilege.  *Id.* at 1147.

The law in this district does not mandate waiver of privilege based on the failure to produce a privilege log, and accordingly none of Defendants' cases cited for this unsupported proposition either involve or sustain such a result.  *See also In re Subpoena Duces Tecum*, 439

F.3d 740, 751 (D.C. Cir. 2006) ("Rule 45(d)(2) is generally satisfied by the submission of a privilege log detailing each document withheld and the reason."). *See United States v. Am. Elec. Power Serv. Corp.,* 2001 U.S. Dist. LEXIS 18723, *27 (S.D. Ohio June 19, 2001)("[T]he obligation of the parties to seek extrajudicial resolution of discovery-related matters would be vitiated if the Court were to hold that, once a party produced a privilege log which deviated in any way from that party's obligations under the civil rules, the log could never be corrected and the potentially-privileged documents would simply be subject to discovery. The Court believes that the appropriate resolution of this issue is to await production of the revised privilege logs, and for the parties then to engage in meaningful discussions about the production of any documents which appear not to be privileged").

The Court should instead make a case by case determination of factors such as: the timeliness of the objection and accompanying information about the withheld documents; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard, including the relative sophistication of the party compiling the log. *Burlington,* 408 F.3d at 1149. *See In re Grand Jury Subpoenas (04-124-03 and 04-124-05),* 454 F.3d 511, 517 (6th Cir. July 13, 2006)("Actual determination of the merits of any claim of privilege must await adjudication *after* the parties have agreed to a subset of documents over which they disagree as to privilege.").

Here, Bulson provided a substantial and detailed privilege log within two months of serving his objections to Defendants' Subpoena on August 23, 2006. Williamson Decl. Ex. A. Considering these documents had to be sent to Los Angeles from Cleveland, and that the file was substantial, it is not unreasonable for Bulson's counsel to have needed a few weeks to produce a sufficiently accurate and detailed privilege log. Williamson Decl. ¶¶ 6-8.

Defendants' waiver claim is sharply at odds with their own behavior regarding the disclosure to Plaintiffs of their respective privilege logs: Defendant DC did not serve Plaintiffs with a privilege log until almost *eight months* after Defendants responses to Plaintiffs' discovery requests were due; and its parent, Defendant WB waited *thirteen months* to comply. Toberoff Decl. ¶¶ 4-8. Yet now it is Defendants who baldly claim that Bulson has entirely waived his attorney client privilege with respect to all privileged documents based on significantly lesser delay in presenting his privilege log.

Therefore, Bulson, having provided Defendants with a substantial privilege log within a reasonable time, should be held not to have waived any privilege regarding these documents.

## II. THE MOVANTS' SUBPOENA IS GROSSLY OVERBROAD AND, FOR THE MOST PART, UNRELATED TO THE SIEGEL LITIGATIONS

As set forth above, Bulson has provided a privilege log of his legal files and made himself readily available to be deposed. Notwithstanding this, Bulson has timely objected to the Movants' Subpoena as overbroad and burdensome as his files regarding Michael Siegel's rights are irrelevant to the Siegel Litigations. Mot. Compel Ex. 7.

A subpoena is clearly overbroad where "[t]he request is not limited to materials that may be relevant or lead to the production of admissible evidence nor is it restricted to the relevant time period." *Alexander v. FBI*, 186 F.R.D. 21, 35 (D.D.C. 1998).[1] Here, Defendants' document categories are overly broad, burdensome, and demonstrate that no effort was put forth to target relevant documents or time periods (i.e., "All Documents Concerning Superman and/or

---

[1] "[T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *United States v. International Bus. Mach. Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979). *See also In re Rational Software Sec. Litig.*, 28 F. Supp. 2d 562, 568 (N.D. Cal. 1998)(plaintiff's document requests held "grossly overbroad" where they contained broad time limits and sought "without limitation a wide range of documents").

Case 2:10-cv-03633-ODW-RZ Document 477-2 Filed 08/16/11 Page 46 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2 Filed: 11/06/06 8 of 11. PageID #: 33
ID #:29086

Superboy" or "All Documents Concerning Michael Siegel's estate"). Mot. Compel Ex. 1.

"Courts are required to balance the need for discovery against the burden imposed on the person

ordered to produce documents, and the status of a person as a non-party is a factor that weighs

against disclosure." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D.

658, 662-63 (D. Kan. 2003); *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424

(Fed. Cir. 1993); *see* Fed. R. Civ. P. 45(c)(2)(B)("an order to compel production shall protect

any person who is not a party from significant expense. . . .").

 While claiming that Bulson's documents must be produced notwithstanding any privilege

and further demanding attorneys' fees, the Movants' Motion gives short shrift as to how their

Subpoena is even remotely related to the instant litigations. Defendants vaguely assert that

documents regarding a purported offer to purchase Michael Siegel's termination interest, or any

other agreements regarding such interest, may be relevant to the purported value of Plaintiffs'

interest "for which they are seeking an accounting in the actions." Mot. Compel 8. This vague

assertion makes no common or legal sense nor is it a proper description of the Siegel Litigations.

Pursuant to their Section 304(c) Terminations, the Siegels recaptured on April 16, 1999, Jerry

Siegel's 50% joint copyright interest in *Superman*. Under copyright law, this entitles the Siegels

to an accounting from the Movants, *Superman's* other joint owner, for 50% of the Movants'

profits from their exploitation of *Superman* on and after April 16, 1999. *See generally*, *Nimmer*

*on Copyright* § 6.12 (joint owner's duty to account); *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir.

1984); *Nimmer on Copyright* § 11.03, 11.04 (statutory termination of copyright transfers).

Under the Copyright Act this requisite accounting is clearly not based on a market valuation of

the *Superman* copyright as Movants' feign to justify their demands. To the extent that Michael

Siegel made any agreements regarding his interests in *Superman* or *Superboy* this has no bearing

8

**EXHIBIT D**
**44**

on the *Siegels*' right to an accounting from the Movants or the Movants' obligation under the

Copyright Act to provide such an accounting as joint owners of *Superman*. *Id*. The foregoing is

Defendants' entire explanation for why the documents sought by the Subpoena are "crucial" to

Movants' defenses and counterclaims.

    Defendants also argue that because Michael Siegel's "email will" may have been

disclosed to third parties, any documents "concerning" that will also lose their privileged status.

Again, Defendants' proposition is neither correct nor supported by Defendants' own authority.

*See American Motors Corp. v. Huffstutler,* 61 Ohio St. 3d 343, 348 (1991)(upholding privilege);

*Mid-American Nat'l Bank & Trust Co. v. Cincinnati Ins. Co.*, 74 Ohio App. 3d 481, 488-89

(Ohio Ct. App. 6th Dist 1991)(no privilege as to non-confidential letter sent to appellee because

"no privilege ever existed to be waived"). In addition, Defendants' vague attack on Bulson's

objections also fails. As noted above, Defendants' document requests are clearly not "directed to

discrete topics." Furthermore, Defendants' challenge is flawed as they have not challenged the

detailed privilege assertions embodied in Bulson's privilege log. *See Bank One, N.A. v. Echo

Acceptance Corp.*, 2006 U.S. Dist. LEXIS 62575, *18-19 (S.D. Ohio Sept. 1, 2006)(movant's

claim that blanket objections are improper disregarded where non-movant has since produced a

privilege log).

    In light of the grossly broad document categories propounded by Defendants seeking

information wholly unrelated to the Siegel Litigations (i.e., every document concerning

*Superman* and *Superboy*), Bulson should not be forced to produce these clearly privileged

documents. As one district court has noted, "such a strict interpretation of the Rule would

discourage informal dispute resolution among parties who cause issuance of subpoenas duces

tecum and those to whom the subpoenas are issued," a result that "certainly would work against

the efficient administration of justice." *In re Goodyear Tire & Rubber Co. Sec. Litigation,* 1991 U.S. Dist. LEXIS 14486, at *2-*4 (N.D. Ohio 1991).

## III.    ATTORNEYS' FEES

Defendants should not be rewarded for ignoring Bulson's compliance with their subpoena duces tecum and Bulson's counsel's efforts to amicably resolve the dispute over a non-party attorney's legal files.  Williamson Decl. Ex. A; Toberoff Decl. ¶ 9, Ex. E.  Nor should they be allowed to misrepresent the continuing dialogue between counsel in the Siegel Litigations by claiming that all requests related to Bulson were ignored. Williamson Decl. ¶ 5. Defendants' request for attorneys' fees should be denied in light of Bulson's clear compliance.

WHEREFORE, for the foregoing reasons, Bulson respectfully requests that this Court deny Defendants' Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees in its entirety.


Respectfully submitted,


By __/s/ Joshua Ryland_____
        Joshua Ryland
Renner Otto Boisselle & Sklar, LLP
1621 Euclid Avenue, Ninth Floor
Cleveland, Ohio 44115
Tel: (216) 621-1113
Fax: (216) 621-6165

Marc Toberoff
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
(310) 246-3333
(310) 246-3101

*Counsel for Don W. Bulson, Esq.*

**EXHIBIT D**
**46**

## CERTIFICATE OF SERVICE

Respondent Don W. Bulson, Esq., hereby certifies that a copy of the forgoing

Memorandum in Opposition to Defendants' Motion to Compel Production of Documents

Pursuant to Subpoena Duces Tecum and Appear for Deposition and for Attorneys' Fees was

served on November 6, 2006 via U.S. Mail and facsimile on the following counsel:

Meggan A. Rawlin, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Fax: 216-579-0212

James D. Weinberger, Esq.
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY 10017
Fax: 212-813-5901

Patrick T. Perkins
Perkins Law Office, P.C.
1711 Route 9D
Cold Spring, NY 10516
Fax: 845-265-2819

Michael Bergman
Weissman Wolff Bergman Coleman
  Grodin & Evall LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212
Fax: 310-550-7191

  _/s/ Marc Toberoff_____
Marc Toberoff
Attorney for Respondent

11

**EXHIBIT D**
**47**

# EXHIBIT E

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:** | **Misc. Case No. 00099- SO** |
| | **Case Nos. CV 04-8400 SGL (RZx)** |
| **JOANNE SIEGEL and LAURA SIEGEL LARSON,** | **CV 04-8776 SGL (RZx)** |
| **Plaintiffs,** | **(Consolidated for Discovery Purposes)** |
| **v.** | **Action Pending in the U.S. District Court for the Central District of California** |
| **WARNER BROS. ENTERTAINMENT INC., et al.,** | |
| **Defendants.** | |

## DECLARATION OF MARC TOBEROFF, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM

I, Marc Toberoff, hereby declare as follows:

1.     I am familiar with the facts set forth below and make this declaration in opposition to Defendants' Motion to Compel Documents Pursuant to Subpoena Duces Tecum. The facts set forth herein are known to me of my own personal firsthand knowledge and, if called as a witness, I could and would testify competently thereto under oath.

2.     I am an attorney with the Law Offices of Marc Toberoff, PLC, located at 2049 Century Park East, Suite 2720, Los Angeles, California, 90067.

**EXHIBIT E**
**48**

Case 1:06-mc-00099-SO   Document 21-7   Filed 11/06/06   Page 12 of 13.   Page ID #: 14

3. On May 13, 2005, I caused Defendants' attorneys herein to be served with Plaintiff Joanne Siegel and Laura Siegel Larson's (the "Siegels") first set of requests to DC Comics ("DC") for production of documents.

4. On May 13, 2005, I caused Defendants' attorneys to be served with the Siegels' first set of requests to Warner Bros. Entertainment Inc. ("WB") for production of documents.

5. On June 13, 2005, Defendants DC and WB served my law offices with responses to the Siegels' respective requests for production. In response to the Siegels' first set of requests for production, DC made a portion of their non-privileged documents available for copying on August 9, 2005.  A true and correct copy of the letter from James Weinberger, Esq. ("Weinberger") to me dated August 9, 2005 informing me of this is attached hereto as Exhibit "A."

6. Defendant DC did not serve a privilege log on my law offices until April 7, 2006.  A true and correct copy of the letter from Weinberger to me dated April 7, 2006 enclosing DC's privilege log is attached hereto as Exhibit "B."

7. In response to the Siegels' first set of requests for production served on WB on May 13, 2005, WB first made documents available to Plaintiffs for copying on June 2, 2006.  A true and correct copy of the letter dated June 2, 2006 from Defendants' attorneys informing me of this is attached hereto as Exhibit "C."

8. WB subsequently served their privilege log on my law offices on June 27, 2006.  A true and correct copy of the letter dated June 27, 2006 from Defendants' attorneys to me enclosing their privilege log is attached hereto as Exhibit "D."

9.      In an effort to amicably resolve Defendants' current motion to compel, I offered on November 1, 2006 to represent that all responsive documents had been listed in Bulson's privilege log and even to produce certain privileged documents.  This offer was summarily rejected by Defendants. Attached hereto as "Exhibit E" is a true and correct copy of the November 1, 2006 email I sent to Weinberger.

I declare under the penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: November 6, 2006                    _/s/ Marc Toberoff_____
                                            Marc Toberoff

# EXHIBIT F

Case 2:10-cv-03633-ODW-RZ Document 477-2 Filed: 08/16/12 Page 55 of 156 Page
Case 1:06-mc-00099-SO Doc #: 22-7 Filed: 11/06/06 9 of 60. PageID #: 29095
ID #:29095

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **IN RE: SUBPOENA DUCES TECUM ISSUED BY THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO IN:** | **Misc. Case No. 00099- SO** |
| | **Case Nos. CV 04-8400 SGL (RZx) CV 04-8776 SGL (RZx)** |
| **JOANNE SIEGEL and LAURA SIEGEL LARSON,** | |
| Plaintiffs, | **(Consolidated for Discovery Purposes)** |
| v. | **Action Pending in the U.S. District Court for the Central District of California** |
| **WARNER BROS. ENTERTAINMENT INC., et al.,** | |
| Defendants. | |

## DECLARATION OF NICHOLAS C. WILLIAMSON, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM

I, Nicholas Williamson, hereby declare as follows:

1.       I am familiar with the facts set forth below and make this declaration in opposition to Defendants' Motion to Compel Documents Pursuant to Subpoena Duces Tecum. The facts set forth herein are known to me of my own personal firsthand knowledge and, if called as a witness, I could and would testify competently thereto under oath.

2.       I am an attorney with the Law Offices of Marc Toberoff, PLC, located at 2049 Century Park East, Suite 2720, Los Angeles, California, 90067.

Case 2:10-cv-03663-ODW-RZ Document 47-12 Filed 08/16/12 Page 56 of 156 Page
Case 1:06-mc-00099-SO Document 2-2 Filed 11/06/06 2 of 60. PageID #: 38
ID #:29096

3.      Don W. Bulson, Esq. ("Bulson"), served as counsel to Jerome Siegel's son from his first marriage, Michael Siegel. Upon receipt of Defendants' August 11, 2006 Subpoena Duces Tecum ("Subpoena"), I immediately contacted Bulson regarding documents he had relevant to the Subpoena. He indicated that the relevant files had been forwarded at the clients' request to Melvin Banchek, Esq. ("Banchek").

4.      I subsequently contacted Banchek regarding these documents. Mr. Banchek informed me the Bulson file was large and that he would forward it to our offices as soon as he could locate it in his storage.

5.      On or about September 7, 2006, I spoke with Defendants' counsel James D. Weinberger ("Weinberger") regarding Bulson's deposition and the status of his document production. I explained that we had not received Bulson's voluminous documents which were being sent from Cleveland to our offices for us determine to what extent the documents were privileged, but that a privilege log would be submitted to Defendants as soon as this analysis could be undertaken.  In response, Weinberger agreed to put off Bulson's deposition.

6.      Shortly thereafter, upon receipt of Bulson's file from Mr. Banchek, our office began analyzing the file.

7.      The privilege log for Mr. Bulson's file was submitted to Defendants' counsel on October 23, 2006. A true and correct copy of Bulson's privilege log is attached hereto as "Exhibit A."

8.      Attached hereto as "Exhibit B" is a true and correct copy of Judge Ralph Zarefsky's August 18, 2006 discovery order.

Case 2:10-cv-03663-ODW-SS Document 47-2 Filed 08/16/12 Page 57 of 156   Page
Case 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 9 of 60. PageID #: 39
ID #:29097

9.      Attached hereto as "Exhibit C" is a true and correct copy of Judge Ronald

S. W. Lew's March 23, 2006 order granting Plaintiffs' motion for partial summary

adjudication.

I declare under the penalty of perjury that to the best of my knowledge the

foregoing is true and correct.

Dated: November 6, 2006                          __/s/ Nicholas C. Williamson____
                                                 Nicholas C. Williamson

# EXHIBIT A

Case 2:10-cv-03663-ODW-SZ Document 47-2 Filed: 08/16/12 Page 59 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 9 of 60. PageID #: 41
ID #:29099

## PRIVILEGE LOG

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s) | Document Description | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 1 | 7/18/1997 | Michael Siegel | Atty Himanshu Amin | Letter | Atty/Client | Plaintiffs' Counsel |
| 2 | 8/7/1997 | Atty Himanshu Amin | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 3 | 8/15/1997 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 4 | 10/14/1997 | Atty Dennis Larson | Atty Himanshu Amin | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 5 | 11/5/1997 | Atty Himanshu Amin | Atty Dennis Larson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 6 | 11/12/1997 | Michael Siegel | Atty Himanshu Amin | Letter | Atty/Client | Plaintiffs' Counsel |
| 7 | 1/15/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 8 | 2/2/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 9 | 3/18/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 10 | 6/17/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 11 | 6/26/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 12 | 6/26/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**55**

| 13 | 9/4/1998 | | Atty Don Bulson | Letter(draft) | Atty Work Product | Plaintiffs' Counsel |
|----|----------|--|-----------------|---------------|-------------------|---------------------|
| 14 | 11/3/1998 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 15 | 11/13/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 16 | 12/4/1998 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 17 | 12/14/1998 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 18 | 12/28/1998 | Atty Don Bulson | Atty Vinay Joshi | Memorandum | Atty Work Product | Plaintiffs' Counsel |
| 19 | 1/19/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 20 | 3/3/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 21 | 3/10/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 22 | 3/17/1999 | Atty Don Bulson | Atty Arthur Levine | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 23 | 4/16/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 24 | 6/8/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 25 | 6/9/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 26 | 6/9/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**56**

| | | | | | |
|---|---|---|---|---|---|
| 27 | 7/12/1999 | Atty Arthur Levine, Atty Don Bulson | Atty Kevin Marks | Memorandum | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 28 | 7/20/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 29 | 8/2/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 30 | 8/10/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 31 | 8/24/1999 | Atty Don Bulson | Atty Arthur Levine | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 32 | 9/2/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 33 | 9/2/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 34 | 9/2/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 35 | 9/3/1999 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 36 | 9/5/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 37 | 9/7/1999 | | Atty Don Bulson | Notes | Atty/Work Product | Plaintiffs' Counsel |
| 38 | 9/8/1999 | Atty Arthur Levine | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 39 | 9/9/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 40 | 9/9/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**57**

| 41 | 9/14/1999 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 42 | 9/14/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 43 | 9/16/1999 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 44 | 9/17/1999 | Atty Don Bulson | Atty Arthur Levine | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 45 | 9/17/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 46 | 9/20/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 47 | 9/22/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 48 | 9/22/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 49 | 9/22/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 50 | 9/23/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 51 | 9/23/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 52 | 9/23/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 53 | 9/24/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 54 | 9/24/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**58**

| | | | | | |
|---|---|---|---|---|---|
| 55 | 9/27/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 56 | 9/28/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 57 | 9/28/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Arthur Levine; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 58 | 9/29/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 59 | 10/8/1999 | Atty Don Bulson | Atty Don Bulson | Letter | Atty/Client - Joint Interest | Plaintiffs' Counsel |
| 60 | 10/8/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client - Joint Interest | Plaintiffs' Counsel |
| 61 | 10/11/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 62 | 10/11/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 63 | 10/11/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 64 | 10/11/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 65 | 10/12/1999 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 66 | | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 67 | 10/27/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 68 | 10/31/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**59**

| No. | Date | From | To | Type | Privilege | Withheld By |
|---|---|---|---|---|---|---|
| 69 | 11/3/1999 | Joanne & Laura Siegel; Atty Dennis Larson; Atty Bruce Ramer; Atty Arthur Levine; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 70 | 11/3/1999 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 71 | 11/4/1999 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 72 | 11/5/1999 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 73 | 11/8/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 74 | 11/12/1999 | Atty Don Bulson; Atty Dennis Larson | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 75 | 12/6/1999 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 76 | 12/6/1999 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 77 | 12/6/1999 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 78 | 12/10/1999 | Joanne & Laura Siegel; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 79 | 12/22/1999 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 80 | 12/22/1999 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 81 | 12/22/1999 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |

| 82 | 12/22/1999 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 83 | 12/29/1999 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 84 | 12/29/1999 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 85 | 12/30/1999 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 86 | 1/2/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 87 | 1/3/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 88 | 1/3/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 89 | 1/3/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 90 | 1/3/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 91 | 1/4/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 92 | 1/4/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 93 | 1/5/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 94 | 1/10/200 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 95 | 1/10/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**

| | | | | | | |
|---|---|---|---|---|---|---|
| 96 | 1/10/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 97 | 1/11/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 98 | 1/14/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 99 | 1/17/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 100 | 1/18/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 101 | 2/14/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 102 | 2/28/2000 | Joanne & Laura Siegel; Atty Arthur Levine; Atty Bruce Ramer; Atty Don Bulson | Atty Don Bulson | Notes | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 103 | 3/1/2000 | | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 104 | 3/7/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 105 | 3/8/2000 | Joanne & Laura Siegel; Atty Arthur Levine; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client | Plaintiffs' Counsel |
| 106 | 3/9/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 107 | 3/9/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 108 | 3/13/2000 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 109 | 3/21/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**

62

| No. | Date | From | To | Type | Privilege | Source |
|---|---|---|---|---|---|---|
| 110 | 3/30/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 111 | 3/30/2000 | Joanne & Laura Siegel; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 112 | 4/3/2000 | Joanne & Laura Siegel; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 113 | 4/5/2000 | Joanne & Laura Siegel; Atty Don Bulson; Atty Arthur Levine | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 114 | 4/5/2000 | Joanne & Laura Siegel; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 115 | 4/11/2000 | Joanne & Laura Siegel; Atty Don Bulson; Atty Arthur Levine | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 116 | 4/12/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 117 | 4/12/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 118 | 4/17/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 119 | 4/17/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 120 | 4/17/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 121 | 4/17/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 122 | 4/18/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 123 | 4/18/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**63**

Case 2:19-cv-03633-ODW-SO Document 47-2 Filed: 08/16/13 Page 68 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 14 of 60. PageID #: 50
ID #:29108

| 124 | 5/2/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 125 | 5/3/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 126 | 5/3/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 127 | 5/4/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 128 | 5/4/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 129 | 5/5/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 130 | 5/5/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 131 | 5/8/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 132 | 5/8/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 133 | 5/9/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 134 | 5/10/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 135 | 5/18/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 136 | 5/21/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 137 | 5/26/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**64**

| # | Date | From | To | Type | Privilege | Holder |
|---|---|---|---|---|---|---|
| 138 | 5/30/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 139 | 6/5/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 140 | 6/7/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 141 | 6/9/2000 | Joanne & Laura Siegel; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 142 | 6/27/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 143 | 7/5/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 144 | 7/6/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 145 | 7/7/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 146 | 7/10/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 147 | 7/10/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 148 | 7/14/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 149 | 7/14/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 150 | 7/17/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 151 | 7/17/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**65**

Case 2:19-cv-03632-ODW-RZ Document 47-2 Filed 08/16/13 Page 70 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 16 of 60. PageID #:52 Page
ID #:29110

| No. | Date | From | To | Type | Privilege | Party |
|---|---|---|---|---|---|---|
| 152 | 7/17/2000 | Joanne & Laura Siegel; Atty Bruce Ramer; Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 153 | 7/18/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 154 | 7/18/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 155 | 7/18/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 156 | 7/19/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 157 | 7/19/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 158 | 7/21/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 159 | 7/24/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 160 | 7/24/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 161 | 7/24/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 162 | 7/24/2000 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 163 | 7/24/2000 | Michael Siegel | Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 164 | 7/25/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 165 | 7/25/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**66**

| 166 | 7/26/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 167 | 7/26/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 168 | 7/26/2000 | Atty Don Bulson | Atty Kevin Marks | Facsimile | Atty/Client--Joint Interest | Plaintiffs' Counsel |
| 169 | 8/7/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 170 | 8/8/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 171 | 8/8/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 172 | 8/8/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 173 | 8/10/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 174 | 8/21/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 175 | | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 176 | 8/25/2000 | Michael Siegel | Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 177 | 9/6/2000 | | Atty Don Bulson | Letter(draft) | Atty Work Product | Plaintiffs' Counsel |
| 178 | 9/6/2000 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client--Joint Interest | Plaintiffs' Counsel |
| 179 | 9/6/2000 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client--Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**67**

| 180 | 9/8/2000 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
|-----|----------|-----------------|------------------|-------|----------------------------|---------------------|
| 181 | 9/11/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 182 | 9/15/2000 | Atty Don Bulson | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 183 | 9/17/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 184 | 9/17/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 185 | 9/18/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 186 | 9/21/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 187 | 10/26/2000 | Atty Don Bulson | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 188 | 11/2/2000 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 189 | 11/8/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 190 | 11/8/2000 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 191 | 11/15/2000 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 192 | 11/19/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 193 | 11/27/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**68**

| 194 | 11/28/2000 | Michael Siegel | Michael Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 195 | 12/4/2000 | Atty Don Bulson | Michael Siegel | Letter | Atty/Client | Plaintiffs' Counsel |
| 196 | 12/4/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 197 | 12/5/2000 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 198 | 12/8/2000 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 199 | 1/3/2001 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 200 | 1/16/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 201 | 1/30/2001 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 202 | 1/30/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 203 | 1/31/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 204 | 2/16/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 205 | 3/9/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 206 | 3/12/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 207 | 4/30/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**69**

| | | | | | | |
|---|---|---|---|---|---|---|
| 208 | 5/4/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 209 | 5/4/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 210 | 5/4/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 211 | 5/17/2001 | | Atty Don Bulson | Letter (Draft) | Atty Work Product | Plaintiffs' Counsel |
| 212 | 6/14/2001 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 213 | 6/26/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 214 | 7/3/2001 | | Atty Don Bulson | Letter(draft) | Atty Work Product | Plaintiffs' Counsel |
| 215 | 7/9/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 216 | 7/30/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 217 | 7/30/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 218 | 7/31/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 219 | 7/31/2001 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 220 | 8/2/2001 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 221 | 8/24/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

**EXHIBIT F**
**70**

| | | | | | |
|---|---|---|---|---|---|
| 222 | 8/30/2001 | Atty Don Bulson | Atty Kevin Marks | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 223 | 9/12/2001 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 224 | 9/13/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 225 | 9/13/2001 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 226 | 9/24/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 227 | 9/24/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 228 | 10/17/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 229 | 10/17/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 230 | 10/19/2001 | Laura Siegel & Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 231 | 10/19/2001 | Laura Siegel & Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 232 | 10/19/2001 | Atty Don Bulson | Atty Kevin Marks | E-mail | Atty/Client- Joint Interest | Plaintiffs' Counsel |
| 233 | 10/24/2001 | Michael Siegel | Atty Don Bulson | Letter | Atty/Client | Plaintiffs' Counsel |
| 234 | 11/27/2001 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 235 | 11/27/2001 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |

**EXHIBIT F**
**71**

| 236 | 12/6/2001 | Atty Don Bulson | Atty Kevin Marks | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
|---|---|---|---|---|---|---|
| 237 | 12/26/2001 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 238 | 1/3/2002 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 239 | 1/3/2002 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 240 | 1/3/2002 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 241 | 1/10/2002 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 242 | 1/22/2002 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 243 | 2/5/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 244 | 2/6/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 245 | 2/7/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 246 | 2/8/2002 | Atty Don Bulson | Atty Kevin Marks | Memorandum | Atty Work Product- Joint Interest | Plaintiffs' Counsel |
| 247 | 3/2/2002 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 248 | 3/8/2002 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 249 | 4/7/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**

**72**

| | | | | |
|---|---|---|---|---|
| 250 | 4/8/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 251 | 5/9/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 252 | 5/10/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 253 | 5/10/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 254 | 5/10/2002 | Atty Kevin Marks & Michael Siegel | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 255 | 5/10/2002 | Atty Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 256 | 5/18/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 257 | 5/28/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 258 | 7/31/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 259 | 8/13/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 260 | 8/14/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 261 | 8/14/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 262 | 8/23/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 263 | 8/27/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**

73

| 264 | 8/28/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
|---|---|---|---|---|---|---|
| 265 | 9/2/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 266 | 9/2/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 267 | 9/3/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 268 | 9/4/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 269 | 9/19/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 270 | 9/19/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 271 | 9/22/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 272 | 9/23/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 273 | 9/23/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 274 | 9/24/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 275 | 9/24/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 276 | 9/24/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 277 | 9/28/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
74

Case 2:19-cv-03633-ODW-RZ Document 24-2 Filed 08/16/13 Page 79 of 156 Page
ID #:29119
Case: 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 25 of 60. PageID #: 61

| No. | Date | From | To | Type | Privilege | Party |
|---|---|---|---|---|---|---|
| 278 | 9/28/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 279 | 10/1/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 280 | 10/1/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 281 | 11/8/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 282 | 11/19/2002 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 283 | 11/25/2002 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 284 | 11/27/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 285 | 12/19/2002 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 286 | 1/16/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 287 | 1/23/2003 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 288 | 1/23/2003 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 289 | 1/24/2003 | | Atty Don Bulson | Notes | Atty Work Product | |
| 290 | 1/28/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 291 | 3/24/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**75**

Case 2:19-cv-03633-ODW-RZ Document 47-2 Filed 08/16/13 Page 80 of 156 Page
Case 1:06-mc-00099-SO Doc #: 2-2 Filed: 11/06/06 26 of 60. PageID #: 62 Page
ID #:29120

| | | | | | |
|---|---|---|---|---|---|
| 292 | 4/2/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 293 | 4/2/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 294 | 4/4/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 295 | 4/7/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 296 | 4/7/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 297 | 4/14/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 298 | 4/14/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 299 | 4/16/2003 | Atty Don Bulson | Joanne & Laura Siegel | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 300 | 4/16/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 301 | 4/30/2003 | Atty Don Bulson | Atty Marc Toberoff | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 302 | 5/6/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 303 | 5/6/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 304 | 5/7/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 305 | 5/8/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**76**

| 306 | 5/8/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 307 | 5/12/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 308 | 5/12/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 309 | 5/12/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 310 | 5/27/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 311 | 5/27/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 312 | 5/29/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 313 | 6/3/2003 | | Atty Don Bulson | Notes | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 314 | 6/9/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 315 | 6/10/2003 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 316 | 6/13/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 317 | 6/17/2003 | | Atty Don Bulson | Letter(draft) | Atty Work Product | Plaintiffs' Counsel |
| 318 | 6/18/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 319 | 6/18/2003 | Atty Marc Toberoff | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |

| 320 | 6/19/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
|---|---|---|---|---|---|---|
| 321 | 6/23/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 322 | 7/14/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 323 | 7/14/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 324 | 7/14/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 325 | 7/16/2003 | Atty Don Bulson | Atty Marc Toberoff | Facsimile | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 326 | 7/21/2003 | | Atty Don Bulson | Notes | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 327 | 8/6/2003 | Atty Don Bulson | Atty Marc Toberoff | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 328 | 8/6/2003 | Atty Don Bulson | Atty Marc Toberoff | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 329 | 8/12/2003 | | Atty Don Bulson | Letter(draft) | Atty Work Product | Plaintiffs' Counsel |
| 330 | 9/17/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 331 | 9/17/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 332 | 9/17/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 333 | 9/17/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

EXHIBIT F
78

| | | | | | |
|---|---|---|---|---|---|
| 334 | 10/22/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 335 | 10/22/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 336 | 10/23/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 337 | 10/27/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 338 | 10/28/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 339 | 11/13/2003 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 340 | 11/13/2003 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 341 | 11/18/2003 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 342 | 5/11/2004 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 343 | 5/11/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 344 | 6/3/2004 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 345 | 6/7/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 346 | 6/7/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 347 | 6/7/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**79**

| 348 | 6/8/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
|-----|----------|-----------------|----------------|-------|-------------|---------------------|
| 349 | 6/9/2004 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 350 | 6/10/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 351 | 6/15/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 352 | 6/17/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 353 | 6/21/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 354 | 6/21/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 355 | 6/21/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 356 | 6/24/2004 | Atty Kevin Marks | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 357 | 6/27/2004 | Atty Don Bulson | Atty Kevin Marks | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 358 | 7/27/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 359 | 7/27/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 360 | 7/28/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 361 | 8/4/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**80**

| 362 | 8/5/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 363 | 8/9/2004 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 364 | 8/18/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 365 | 8/19/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 366 | 8/22/2004 | Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 367 | 8/22/2004 | Kevin Marks | Atty Don Bulson | Letter | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 368 | 10/5/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 369 | 10/5/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 370 | 10/6/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 371 | 10/6/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 372 | 10/10/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 373 | 10/12/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 374 | 10/12/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 375 | 10/12/2004 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |

| | | | | Notes | Atty Work Product | Plaintiffs' Counsel |
|---|---|---|---|---|---|---|
| 376 | 10/13/2004 | | Atty Don Bulson | | | Plaintiffs' Counsel |
| 377 | 11/12/2004 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 378 | 11/12/2004 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 379 | 11/17/2004 | Atty Don Bulson | Atty Marc Toberoff | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 380 | 11/17/2004 | Atty Don Bulson | Atty Marc Toberoff | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 381 | 11/18/2004 | Atty Don Bulson | Atty Marc Toberoff | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 382 | 11/18/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 383 | 11/19/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 384 | 11/19/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 385 | 11/19/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 386 | 11/24/2004 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 387 | 11/28/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 388 | 11/29/2004 | Atty Don Bulson | Atty Marc Toberoff | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 389 | 12/2/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**
**82**

| 390 | 12/5/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
|-----|-----------|-----------------|----------------|-------|-------------|---------------------|
| 391 | 12/6/2004 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 392 | 12/7/2004 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 393 | 1/17/2005 | Atty Don Bulson | Atty Marc Toberoff | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 394 | 2/4/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 395 | 2/4/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 396 | 2/5/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 397 | 2/5/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 398 | 2/5/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 399 | 2/6/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 400 | 2/17/2005 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 401 | 2/20/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 402 | 2/26/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 403 | 10/8/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |

**EXHIBIT F**

**83**

| | | | | | |
|---|---|---|---|---|---|
| 404 | 10/10/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 405 | 10/11/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 406 | 10/11/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 407 | 10/24/2005 | Michael Siegel | Atty Don Bulson | Email | Atty/Client | Plaintiffs' Counsel |
| 408 | 10/24/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 409 | 10/24/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 410 | 10/25/2005 | Atty Don Bulson | Michael Siegel | Email | Atty/Client | Plaintiffs' Counsel |
| 411 | 10/31/2005 | | Atty Don Bulson | Notes | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 412 | 11/18/2005 | Atty Marc Toberoff | Atty Don Bulson | Email | Atty/Client-Joint Interest | Plaintiffs' Counsel |
| 413 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 414 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 415 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 416 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 417 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |

**EXHIBIT F**
**84**

| 418 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 419 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 420 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 421 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |
| 422 | 00/00/00 | | Atty Don Bulson | Notes | Atty Work Product | Plaintiffs' Counsel |

# EXHIBIT G

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON

6
                          UNITED STATES DISTRICT COURT
7          RECEIVED
           BUT NOT FILED
8                         CENTRAL DISTRICT OF CALIFORNIA
           MAR 2 6 2007
9  JOANNE SIEGEL, an individual; and        Case Nos.:
10 LAURA SIEGEL LARSON, an                   CV 04-08400 SGL (RZx)
   individual;                               CV 04-08776 SGL (RZx)
11
                 Plaintiffs,                 [Hon. Stephen G. Larson, U.S.D.J.]
12       vs.                                 [Hon. Ralph Zaresky, U.S.M.J.]

13 TIME WARNER INC., a corporation;
   WARNER COMMUNICATIONS             DECLARATION OF MARC
14 INC., a corporation; WARNER       TOBEROFF IN OPPOSITION TO
                                     DEFENDANTS' MOTION TO
15 BROS. ENTERTAINMENT INC., a       COMPEL PRODUCTION OF
   corporation; WARNER BROS.         WHISTLE BLOWER
16 TELEVISION PRODUCTION INC.,       DOCUMENTS
   a corporation; DC COMICS, a general
17                                   DISCOVERY MATTER
   partnership; and DOES 1-10,       LOCAL RULE 37
18
                 Defendants.         Date:   April 16, 2007
19                                   Time:   10:00 a.m.
                                     Place:  Courtroom 540
20 DC COMICS,                        Mag. Judge Ralph Zarefsky
                                     Discovery Cutoff: Nov. 17, 2006
21               Counterclaimant,
22       vs.

23 JOANNE SIEGEL, an individual; and
24 LAURA SIEGEL LARSON, an
   individual,
25
26               Counterclaim Defendants.
27
28

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

**EXHIBIT G**
**86**

I, Marc Toberoff, declare as follows:

1.      I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration in opposition to defendants' ("Defendants") motion to compel production of purported "whistle-blower" documents. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      On February 15, 2006, Plaintiffs moved for partial summary adjudication that their statutory "Superboy" termination is valid and that Plaintiffs thereby recaptured Siegel's "Superboy" copyright. Defendants cross-moved for summary judgment claiming the "Superboy" termination was invalid based in large part on the same purported claims and defenses asserted with respect to "Superman." On March 23, 2006, the Court granted Plaintiffs' motion in its entirety and denied Defendants' motion in its entirety. On March 24, 2006, Plaintiffs moved to have their order certified for appeal, which motion was denied by the Court.

3.      Attached hereto as Exhibit "A" is a true and correct copy of this Court's order dated August 18, 2006 denying Defendants' motion to compel which alleged that Plaintiffs purportedly had waived the attorney-client privilege.

4.      Attached hereto as Exhibit "B" is a true and correct copy of this Court's order dated September 25, 2006 denying Defendants' motion for reconsideration of the aforesaid August 18, 2006 order.

5.      Attached hereto as Exhibit "C" is a true and correct copy of this Court's order dated November 7, 2006 denying Defendants' motion for compel the re-deposition of each of the Plaintiffs.

6.      Attached hereto as Exhibit "D" is a true and correct copy of Michael Bergman's July 6, 2006 letter to the Court.

1

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

**EXHIBIT G**

**87**

7.      Attached hereto as Exhibit "E" is a true and correct copy of this Court's July 6, 2006 minute order.

8.      On July 11, 2006 I spoke telephonically with John J. Quinn ("Quinn") of the law firm Arnold & Porter, LLP regarding his July 5, 2006 letter to me (*see* Declaration of Michael Bergman ("Bergman Decl."), Ex. D.).  At no time did Quinn present himself as a "neutral" and at all times he appeared to me to be acting on behalf of Warner Bros.  I inquired as to the nature of the documents vaguely referred to in Quinn's July 5, 2006 letter and was informed for the first time that the documents apparently came from my own legal files.  I demanded that the documents be returned immediately.  I further rejected the "protocol" outlined in Quinn's July 5 letter.  I suggested instead that an independent print shop copy and bate stamp all the documents; that Arnold and Porter be provided with this bates stamp number range, but not retain the stolen documents and that *all* of the documents, including defendant Warner Bros' "originals,' be returned to me immediately.

9.      By letter dated July 13, 2006 (see Bergman Decl., Ex. E) Quinn announced, that he would have the documents bates stamped by his office, send a copy of the bates stamped documents to me, and retain a bates stamped set and the originals, contrary to my wishes.

10.     On July 18, 2006, Quinn delivered three sets of copies of the stolen documents to my offices.  These sets had been bates stamped.  The "originals" have never been returned to my offices or to Plaintiffs.

11.     Attached hereto as Exhibit "F" is a true and correct copy of my July 19, 2006 letter to Quinn.

12.     Attached hereto as Exhibit "G" is a true and correct copy of a letter dated July 20, 2006 from Defendants' other counsel, Michael Bergman ("Bergman"), to Quinn.

13.     Attached hereto as Exhibit "H" is a true and correct copy of a letter dated July 24, 2006 from Quinn to me.

2

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

**EXHIBIT G**
**88**

1   14. Attached hereto as Exhibit "I" is a true and correct copy of a letter dated

2 July 26, 2007 from me to Quinn.

3   15. Attached hereto as Exhibit "J" is a true and correct copy of a letter dated

4 July 27, 2006 from Bergman to me.

5   16. Plaintiffs produced documents in this case on September 29, 2005 and

6 supplemented this production on October 6, 2006, November 6, 2006 and November

7 17, 2006.  Attached hereto as composite Exhibit "K" are true and correct copies of

8 the September 29, October 6, November 6 and November 17, 2006 cover letters

9 accompanying Plaintiffs' document production.

10   17. Attached hereto as Exhibit "L" is a true and correct copy of Plaintiffs'

11 July 20, 2006 privilege log.

12   18. Attached hereto as composite Exhibit "M" are true and correct copies of

13 Plaintiffs' supplemental privilege logs served on September 29, 2006.

14   19. Documents were produced by third parties Jean Peavy and Warren Peary

15 (the "Shusters") on July 18, August 11 and August 14, 2006 in response to

16 Defendants' subpoena.  The Shusters served a privilege log on August 11, 2006.

17 Shusters served a supplemented privilege log on October 16, 2006.  Attached hereto

18 as Exhibit "N" is a true and correct copy of the Shuster's October 16, 2006 privilege

19 log.

20   20. On behalf of Don Bulson, the former attorney of Laura Siegel Larson's

21 stepbrother, Michael Siegel, I served a privilege log on October 23, 2006 in response

22 to Defendants' subpoena.  Attached hereto as Exhibit "O" is a true and correct copy

23 of  October 23, 2006 privilege log.

24   21. Third party IPW, LLC produced documents on November 15, 2006 in

25 response to Defendants' subpoena.  Third party Pacific Pictures Corporation

26 produced documents on November 15, 2006 in response to Defendants' subpoena.

27 Attached hereto as Exhibit "P" is a November 15, 2006 letter from my office to

28 Defendants' counsel concerning their respective document production.

3

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

22.    I have reviewed the stolen documents and compared them to my firm's legal files.  I found that all but two non-privileged documents in Plaintiffs' legal files had long ago been produced or listed by Plaintiffs in a privilege log.  The documents, consisting of two letters from Plaintiff Joanne Siegel to DC Comics' executive Paul Levitz although already in Defendants' possession, have recently been produced.  I also cross-referenced two privileged e-mail communications between Plaintiffs and me dated after the commencement of this action which were not listed in Plaintiffs' privilege logs because the parties to this action have agreed not to list post-complaint attorney-client communications on their respective privilege logs.

23.    Additionally, I searched the files of other persons or entities which my firm represents that have been subpoenaed in this case, in search of any stolen documents that had not either been produced or listed in a privilege log, even though this motion to compel is only directed at Plaintiffs.  As a result of this search I found in the files of IPW, LLC, one IP Worldwide fax cover sheet having little relevance to this action, which I nonetheless also recently produced to Defendants.

24.    I also re-searched the files of Jean Peavy, Warren Peary, and the Estate of Joe Schuster (the "Shusters"), cross-referencing the stolen documents, and found three irrelevant, but non-privileged documents, regarding the probating of Joe Shuster's Estate, that I believe had not been previously produced.  I therefore also recently produced these documents.  In this search I also found one privileged document from the Shuster files, again concerning probate, and on the Shusters' behalf I listed this document on a supplemental privilege log which I recently provided to Defendants.

25.    As a result of my law firm's ongoing investigation, I believe that the documents to which this motion applies were stolen from my law firm's files by a disgruntled former *attorney* employed by the firm who thereafter furnished the documents to Warner Bros. under circumstances of which I am not yet aware.  The

4

Declaration Of Marc Toberoff In Opposition To Defendants' Motion To Compel

**EXHIBIT G**

**90**

1  attorney is not named by me herein so as not to jeopardize my firm's ongoing

2  investigation or that of the authorities.

3       26.    This attorney/employee was terminated by my firm in November, 2005.

4  Our investigation has revealed that in late November and early December, 2005, after

5  the attorney was terminated, he contacted Plaintiffs and another client of my firm and

6  tried to convince them to terminate the firm, and to retain him instead, by falsely

7  disparaging me and by offering to work for a reduced fee.  I am advised by Plaintiffs

8  and my other client that they both rejected this attorney's overtures in early

9  December, 2005.

10       27.    On July 18, 2006, when Arnold & Porter furnished me with bates

11  stamped copies of the stolen documents they also furnished me with a copy of an

12  allegedly undated and anonymous cover letter to Warner Bros. purporting to enclose

13  the stolen documents ("Cover Letter").  The Cover Letter was not attached by

14  Defendants and is not attached by Plaintiffs because it is defamatory, in other respects

15  potentially violates the attorney-client privilege and work product doctrine, and

16  should not be further published through the public record of this action.  The Cover

17  Letter ends by stating to Warner Bros.:  "consider this an early Christmas present."

18       I declare under penalty of perjury of the laws of the United States of America

19  that the foregoing is true and correct.

20       Executed on March 23, 2007 in Los Angeles, California.

21

22

23                                       Marc Toberoff

24

25

26

27

28

5

# EXHIBIT H

Page 1

1          IN THE UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
2

3

JOANNE SIEGEL and                )
4   LAURA SIEGEL LARSON,              )
                                     )
5              Plaintiffs,           ) Case Nos.
    vs.                              ) SA CV 04-8400SGL(RZx)
6                                    ) SA CV 04-8776SGL(RZx)
WARNER BROS. ENTERTAINMENT           )
7   INC., et al.,                    )
                                     )
8              Defendants.           )
9

                         - - - - -
10         THE DEPOSITION OF DON W. BULSON
                TUESDAY, APRIL 22, 2008
11                       - - - - -

12

13         The deposition of DON W. BULSON, called by
14   the Defendants for examination pursuant to the
15   Federal Rules of Civil Procedure, taken before me,
16   the undersigned, Barbara J. Sedlak, Registered
17   Professional Reporter and Notary Public within and
18   for the State of Ohio, taken at the offices of
19   Renner Otto Boisselle & Sklar, 1621 Euclid Avenue,
20   19th Floor, Cleveland, Ohio, commencing at 9:00
21   a.m., the day and date above set forth.

22

23

24

25

**EXHIBIT H**
**92**

Page 2

```
 1    APPEARANCES:
 2          On behalf of the Plaintiffs:
 3               Marc Toberoff, Esq.
                 Law Offices of Marc Toberoff
 4               2049 Century Park East, Suite 2720
                 Los Angeles, California 90067
 5               310.246.3333
 6

           On behalf of Defendants:
 7

                 James D.  Weinberger, Esq.
 8               Fross Zelnick Lehrman & Zissu, P.C.
                 866 United Nations Plaza
 9               At First Avenue & 48th Street
                 New York, New York 10017
10               212.813.5952
                 jweinberger@frosszelnick.com
11

12         On behalf of the Witness:
13               Joshua A. Ryland, Esq.
                 Renner, Otto, Boisselle & Sklar
14               1621 Euclid Avenue
                 Cleveland, Ohio 44115
15               216.621.1113
16
17
18
19
20
21
22
23
24
25
```

**EXHIBIT H**

93

1    Q    Please answer questions to the best of your

2         ability.  The fact that an answer to a question

3         may call for you to speculate, if you are able

4         to speculate, you should.  For example, if you

5         are able to guess how large the table is,

6         please do so.  Obviously, you cannot be able to

7         guess the size of the table in my office,

8         because you have never seen it.

9                         - - - - -

10             (Defendants' Exhibit No. B-1 was marked.)

11                        - - - - -

12   Q    We've previously marked Exhibit B-1.  Exhibit

13        B-1 is the subpoena dated August 10, 2006.  Do

14        you recognize this document, Mr. Bulson?

15   A    I suspect I have seen it in the past.

16   Q    Can you confirm that you are appearing pursuant

17        to the subpoena?

18   A    Yes.

19   Q    And I don't know about you, but this is a

20        personal record for me in terms of date and

21        time, date of the subpoena and the actual date

22        of the deposition, but have you reviewed the

23        document categories starting on -- I apologize

24        that the pages are not numbered -- but it's the

25        second to the last page of the document?

**EXHIBIT H**
**94**

Page 8

1   A   I believe I have perused that, yes.

2   Q   Did you make any effort to search for the

3       documents called for by the various categories?

4   A   All of the documents that were requested where

5       sent to Mr. Banchek who is the -- I guess

6       technically he would be called the

7       administrator of the estate of Michael Siegel.

8   Q   So you pulled your files relating to Michael

9       Siegel?

10  A   And I sent them all to Mr. Banchek.

11  Q   Do you know what Mr. Banchek did with those

12      files?

13  A   No.

14  Q   Did you keep a copy?

15  A   We have an archive copy somewhere.

16  Q   So once your forwarded the documents to

17      Mr. Banchek, did you otherwise have any

18      involvement with responding to the subpoena?

19  A   No.

20  Q   And again, if you could look back over the

21      document categories.  Were there any

22      materials -- strike that.

23          Did you look through the specific

24      categories to see if there were specific

25      documents in your files that related to them or

**EXHIBIT H**
**95**

Page 9

1       you just simply turned over the files?

2   A   I just turned over all the files and then it

3       was the responsibility of Mr. Banchek to have

4       provided anything that was appropriate.

5                       - - - - -

6       (Defendants' Exhibit No. B-2 was marked.)

7                       - - - - -

8   Q   I'm going to introduce what's been marked as

9       B-2.  Mr. Bulson, do you recognize this

10      document?

11  A   Well, I don't recall it in detail, but I

12      understand what it is.

13  Q   What is it?

14  A   It's objections to defendants' subpoena.

15  Q   The subpoena to you that we previously marked

16      as Exhibit B-1?

17  A   Yes, that's correct.

18  Q   So I take it you were not involved in the

19      preparation of this document?

20  A   No.

21  Q   Did you review it before it was served?

22  A   I believe I did review it, but I don't recall

23      at the moment.

24  Q   If you can remember.

25  A   Basically this was -- I was deferring to

Page 192

THE STATE OF OHIO,       )      SS:

COUNTY OF CUYAHOGA.    )

I, Barbara J. Sedlak, a Notary Public within
and for the State of Ohio, duly commissioned and
qualified, do hereby certify that DON W. BULSON,
was first duly sworn to testify the truth, the
whole truth and nothing but the truth in the cause
aforesaid; that the testimony then given by him was
by me reduced to stenotypy in the presence of said
witness, afterwards transcribed on a
computer/printer, and that the foregoing is a true
and correct transcript of the testimony so given by
him as aforesaid.

I do further certify that this deposition was
taken at the time and place in the foregoing
caption specified.  I do further certify that I am
not a relative, counsel or attorney of either
party, or otherwise interested in the event of this
action.

IN WITNESS WHEREOF, I have hereunto set my
hand and affixed my seal of office at Cleveland,
Ohio, on this 2nd day of May, 2008.

Barbara J. Sedlak, Notary Public
within and for the State of Ohio
My Commission expires August 24, 2010.

**EXHIBIT H**
**97**

Page 193

THE STATE OF                              )

                                         )        SS:

COUNTY OF                                )


        Before me, a Notary Public in and for said

state and county, personally appeared the

above-named DON W. BULSON, who acknowledged that he

did sign the foregoing transcript and that the same

is a true and correct transcript of the testimony

so given.

        IN TESTIMONY WHEREOF, I have hereunto

affixed my name and official seal at

                                this  6th  day of

June        , 2008.


                            DON W. BULSON



                            Notary Public

My Commission expires:

**EXHIBIT H**
**98**

# EXHIBIT I

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

February 17, 2012

**VIA MESSENGER**

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, California 90265

OUR FILE NUMBER
905,900-321

WRITER'S DIRECT DIAL
(310) 246-6707

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

Re:  *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

Pursuant to DC Comics' February 17, 2012, Responses and Objections to Defendant
Mark Warren Peary's First Set of Requests for Production, enclosed please find the following
documents:

1. DC00001-00155 (Production of plaintiff DC Comics)

Furthermore, pursuant to paragraph 3 of the parties' December 7, 2010, stipulation, DC
hereby produces by designation (subject to DC's right to supplement this production) the
following documents, already produced in *Siegel v. Warner Bros. Entm't Inc.*, C.D. Cal. Case
No. 04-8400 ODW (RZx), and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW
(RZx) (the *Siegel* cases):

1. DCC    00000001-3355; 00003394-3449;00004132; 00004153; 00004186-
4187; 00004191; 00004221-4223; 00004260-4261; 00004267-
4277; 00004442-4452; 00004499-4505; 00004507-4508;
00004510-4579; 00004908; 00005142-5144; 00005281-5293;
00005126; 00005658; 00005662; 00005668-5669; 00005671-
5672; 00006182-6184; 00006188-6190; 00006192-6194;
00006198; 00006203-6207; 00006214-6215; 00006372-6373;
00006375-6376; 00006399; 00006403-6441; 00006448;
00006462; 00006474; 00006477-6492; 00006495-6499;
00006539-6621; 00006622-6628; 00006629-6630; 00006775-
6778; 00006802-6804; 00006849-6856; 00006867; 00006869;
00006872-6879; 00006932-6933; 00007102-7159; 00007166-
7208; 00007826-7837; 00007954-7965; 00007990-8024;

**EXHIBIT I**

**99**

O'MELVENY & MYERS LLP

February 17, 2012 - Page 2

                                    00045543-45626; 00046027-46079; 00046082-46118; 00046146-46359; 00046391-46417; 00056945-56952; 00056965-56985; 00057253-57257; 00057358-57361; 00057397-573402; 00057431-57447; 00057501-57503; 00057524-57550; 00057573-57575; 00057836-57838; 00057854-57855; 00069090-69432; 00073008; 00073010; 00073012-73017; 00089361-89372; 00141359-141364; 00141525; 00141565-141572; 00142156-142342

2. WB       000670-3453; 005578; 005603; 005615-5617; 005623-5624; 005627-5638; 005663-5666; 005709-5766; 005794-5800; 005830-5832; 006579-6580; 006588-6607; 007252-7277; 007942-7943; 007959-7961; 007972; 007981-8060; 008113-8119; 008305-8316; 008444-8457; 008500-8502; 008556-8557; 008559-8561; 008563; 009976-9978; 009991-10003; 010156; 010161-10162; 010169-10170; 132579-132682

3. ROVIN     389-418

4. PPC      00001-09

5. IPW      00001-16

6. Q        0001-07

7. LSL      00211-220; 00482-486

DC also refers you to the privilege logs provided by Warner Bros. and DC in the *Siegel* cases, as they list privileged documents responsive to Mr. Peary's First Set of Requests.

Please note that, for the documents identified above, while multiple copies of some potentially responsive items may be listed, DC did not attempt to find every such iteration. Also, as noted in DC's Responses and Objections, Mr. Peary's requests mimic DC's definitions to which defendants previously objected and argued were impermissibly overbroad. Docket No. 210. Because it appears that defendants have acknowledged the propriety of DC's definitions, DC has not withheld any documents on the basis of defendants' prior objections to identical language. We assume that defendants will supplement their production with any documents previously withheld on the basis of those withdrawn objections. If this is not the case, please let us know no later than February 24, 2012.

Mr. Peary's Requests for Production and contemporaneously served Interrogatories represent the first discovery served by defendants in this case, and defendants have only recently served their Answers. Docket Nos. 347-349. While DC has attempted to investigate diligently and respond as best it can to these discovery requests, given the need for additional discovery, the need to commence third-party discovery, and defendants' long efforts to stymie DC's

EXHIBIT I
100

O'MELVENY & MYERS LLP
February 17, 2012 - Page 3

discovery in this case, DC anticipates that it may be necessary to supplement its responses when more information becomes available.  Accordingly, DC expressly reserves the right to rely on information later produced to supplement these responses.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Matthew T. Kline, Esq.
       Richard Kendall, Esq.

EXHIBIT I
101

# EXHIBIT J

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 2, 2012

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Re:    _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We are in receipt of defendants' production of documents pursuant to Judge Zarefsky's June 21, 2012, order, as well as your correspondence of the last two weeks in which you both claimed that defendants and their counsel are meeting their respective discovery obligations. Defendants' recent production, like their discovery conduct of the past two years, proves this is not the case.  DC requests a Rule 37 conference to discuss the issues below, and to discuss using a special master to manage discovery and the role of defense counsel going forward:

1. October 2, 2002, Letter.  After conducting an _in camera_ review and rejecting defendants' claims of privilege, Judge Zarefsky ordered defendants to produce a November 2, 2002, letter from Laura Siegel Larson to Michael Siegel.  Docket No. 451 at 6.  The first paragraph of the November 2002 letter references a "letter of October 2nd."  The October 2 letter has never been logged or produced by defendants, and there is no basis for withholding it. Defendants' claims of privilege over this chain of communication repeatedly have been rejected. Moreover, any privilege that may have otherwise applied—and none did —was waived by defendants' failure to timely log this document.  DC demands that the referenced October 2, 2002, letter be produced no later than July 6, 2012.[1]

---

[1] In her November 2002 letter, Laura also writes:  "Enclosed you will find a copy of a letter my mother and I have sent to Lillian Laserson…."  No enclosure is included in defendants'

**EXHIBIT J**
**102**

O'MELVENY & MYERS LLP
July 2, 2012 - Page 2

2. <u>Obligations Of The Kendall Brill Firm</u>.  We have discussed Kendall Brill's obligation meaningfully to participate in this case repeatedly, and have provided you with the relevant authority that requires the Kendall Brill firm to ensure the Toberoff defendants' compliance with discovery.  What is most odd about Dick's recent response to these issues, *see* June 25, 2012 Email, is that, while the Kendall Brill firm now purports to defend Mr. Toberoff's discovery conduct, the Kendall Brill firm has repeatedly professed in recent weeks to be ignorant of any discovery responses he has prepared other than those DC directed at the Kendall Brill firm.

a.  On the discovery issues in which the Kendall Brill firm has been directly involved, it knows from its own experiences and court rulings that Mr. Toberoff cannot be trusted to manage discovery.  Take the USAO and Timeline documents as an example.  Mr. Toberoff's initial production of these documents, as the Kendall Brill firm well knows, was deficient, and only when the Kendall Brill firm became involved did new documents that Mr. Toberoff previously withheld emerge.  As it stands, the Kendall Brill firm still refuses to answer the basic question DC has asked about the reasons for the omissions in defendants' productions, but without the Kendall Brill firm's involvement, important relevant documents would not have been produced.

b.  The Ninth Circuit also has put the Kendall Brill firm on clear notice about its need to play a more direct role.  Not only did the court rightly and openly question Mr. Toberoff's ethics and professionalism, *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012), it called him out for failing to produce non-privileged business documents that he falsely claimed were protected by privilege, *id.* at 1129 ("most of these [Timeline] documents are not covered by the attorney-client privilege because they do not represent communications between a lawyer and his client for the purpose of obtaining legal advice"); 1127 n.4.

c.  This repeatedly has proven to be the case, and the Kendall Brill firm along with Mr. Toberoff have made one irresponsible argument after another to the courts in these cases that are belied by non-privileged documents that the Kendall Brill firm has allowed Mr. Toberoff to suppress.  Take the November 2, 2002, letter as an example.  Mr. Toberoff initially represented it did not exist; then falsely claimed it was privileged.  Docket Nos. 267-1 at 2; 267-2 ¶¶ 4-5; 267-9 at 187; 267-7 at 18; 362-2 at 311 (Entry 399); 395-1 at 97.  All the while the Kendall Brill firm and Mr. Toberoff made factual assertions in briefs that the November 2, 2002, letter directly contradicted.  In urging the courts to dismiss DC's claims, defendants' claimed that DC's "billionaire investor" claim was a "mockery," "contrary to all the evidence," "based entirely on the untrustworthy, inadmissible [Toberoff] Timeline," and that no "further discovery" would help establish this claim.[2]

_____

production.  Defendants are not permitted to strip out enclosures from documents they produce.  This enclosure (as it exists in the form Laura sent it) must be produced by July 6, as well.

[2] Docket No. 196 at 1-5, 10:

    • "DC contends that Mr. Toberoff defrauded the Siegels in 2002 by stating that he had a 'billionaire' investor and would help the Siegels produce a competing Superman film …."

**EXHIBIT J**
**103**

O'MELVENY & MYERS LLP

July 2, 2012 - Page 3

Yet in the long-suppressed November 2, 2002, letter, Laura herself writes: "My mother and I have had extensive meetings with Toberoff and Emmanuel in the past few weeks. We learned that due to the delays and the misinformation Kevin [Marks] has given them that there was a deal with DC, *the billionaire investor who was offering $15 million up front plus participation thought it was a hopeless situation and invested his money elsewhere*." (Emphases added.) These are Laura Siegel Larson's words—"billionaire investor"—that she used in a letter distinguishing among Mr. Toberoff, Mr. Emanuel, and the billionaire investor as a third person. She says it was the "billionaire investor" who made the $15 million offer, not Mr. Emanuel— even though Mr. Toberoff and the Kendall Brill firm now falsely claim that Mr. Emanuel was the unnamed "investor." *See infra*. Clearly, the "further discovery" the Kendall Brill firm and Mr. Toberoff sought to deny DC through incendiary rhetoric and false claims about DC's complaint, *supra* n.2, was needed. This further discovery has not only verified DC's claims, but has shown how both the Kendall Brill firm and Mr. Toberoff have falsely misrepresented key facts to the courts and engaged in rampant discovery abuse in aid of this improper scheme.

Defense counsel have violated their duty of candor repeatedly, and their misrepresentations of fact have been repeated *over and over* in briefing, correspondence, and even defendants' depositions. Included among the many examples:

October 4, 2010, SLAPP Reply

2. **"Billionaire Investor" and Fraud**. DC relies on the Timeline, an obviously inadmissible screed penned by a thief who violated fundamental duties of professional ethics and had absolutely no percipient knowledge of the events he purports to describe. DC's allegation that Toberoff misled the Siegels by representing that he had a "billionaire" investor or that he would help produce a Superman film, the sole allegations of "wrongfulness" required for DC's Fifth Claim, is based entirely on this untrustworthy, inadmissible Timeline, and is contradicted by the sworn testimony of all percipient

---

Each of these allegations has been conclusively disproven by documents and sworn depositions provided in 2006, and none can be cured by further discovery."
• "DC's allegation that Toberoff misled the Siegels by representing that he had a 'billionaire' investor or that he would help produce a Superman film, the sole allegations of 'wrongfulness' required for DC's Fifth Claim, is based entirely on this untrustworthy, inadmissible Timeline, and is contradicted by the sworn testimony of all percipient witnesses …. DC knows all this, yet conceals it from the Court."
• "DC's assertion of the requisite 'wrongful act' reduce to its allegations … that Toberoff misled the Siegels by stating (1) that a 'billionaire' investor was interested in acquiring their rights; and (2) that he was interested in making a movie based on Superman. FAC ¶ 78, 185. First, the Timeline does not even state that Toberoff spoke with the Siegels about a billionaire. The Timeline says he discussed the billionaire with their then-attorney, Kevin Marks, on August 8, 2002. FAC Ex. A 63. But Kevin Marks testified about this conversation four years ago, and his testimony shows what a mockery DC's accusations of fraud really are…."

3

**EXHIBIT J**

**104**

O'MELVENY & MYERS LLP

July 2, 2012 - Page 4

witnesses. First, even the Timeline does not assert that Toberoff ever told the Siegels that he had a "billionaire" investor. Its anonymous author claims, without percipient knowledge, that Toberoff told this to Kevin Marks on August 8, 2002. FAC, Ex. A 63. Second, each participant in this conversation has been examined in deposition. Indeed, Marks, who has no interest in this dispute, described this entire conversation at length in his 2006 deposition. Ex. H (KM Depo 166:6-170:24); *see also* Ex. E (MT Depo 98:25-104:14). There was absolutely no mention of a "billionaire" investor or that Toberoff would help produce a Superman film. *Id.* DC knows all this, yet conceals it from the Court.

Docket No. 98 at 2-3.

October 4, 2010, SLAPP Evidentiary Objections

Remarkably, the Declaration includes not a single piece of admissible evidence to support the key factual allegations of the complaint against the Siegels' and Shusters' long-time counsel, Marc Toberoff, i.e., that he misrepresented that there was a "billionaire" investor for the Siegels or that he offered to produce a competing Superman movie based on the Siegels' recaptured copyrights. As Declarant well knows, the sworn testimony of percipient witnesses in the six-year old Siegel litigation is entirely to the contrary. *See* Reply in Support of Anti-SLAPP motion, at 5-6. Yet the Declarant, without any evidence, has repeatedly accused Mr. Toberoff of fraud and larded the Declaration and DC's oppositions with unseemly ad hominem attacks on Mr. Toberoff based on irrelevant hearsay. This tactical character assassination of Mr. Toberoff repeated throughout the Declaration and opposition papers should be given no credence whatsoever. It is not proper to bring a lawsuit for the purpose of destroying the reputation of a lawyer due to his effective advocacy. That virtually everything in the Declaration is objectionable and inadmissible and/or attacks Mr. Toberoff based on total irrelevancies is noteworthy for one purpose only: it shows that this vicious suit is a pure act of retaliation covered by California's Anti-SLAPP statute, as its purpose is to attack Mr. Toberoff in connection with his successful representation of the Siegels and Shusters.

Docket No. 99 at 2-3.

October 7, 2010, Letter from Laura Brill

The lack of civility you have shown, not just to Mr. Toberoff, but also to attorneys at this firm, has occurred again and again. The chart below illustrates just some of the many instances of unprofessional conduct that defendants have endured since the outset of this case. …

Falsely alleging, without adequate inquiry or particularity, that Mr. Toberoff "falsely represented to the Siegels that if they repudiated their agreement with DC Comics and entered into an agreement with him instead, a 'billionaire investor' 'was prepared

4

**EXHIBIT J**

**105**

O'MELVENY & MYERS LLP

July 2, 2012 - Page 5

immediately to pay the Siegels $15 million for their Superman rights, plus a generous
back-end profit participation in any future exploitations of the Superman Property.'"

<u>October 14, 2010, Defendants' Objection to Sur-Reply</u>

The Kevin Marks Declaration: Kevin Marks' very brief declaration was also permissible
rebuttal evidence. DC based the "bad act" required for its Fifth Claim solely on the
demonstrably false fraud allegation that Mr. Toberoff misled the Siegels by supposedly
representing that he had a "billionaire investor" and would produce a competing
Superman movie.

Docket No. 108 at 2-3.

<u>May 2, 2011, Defendants' Opposition to Motion for Review</u>

Second, there was no mention of a "billionaire investor" in Mr. Toberoff's August 2002
Conversation with Mr. Marks, in which the talent agent, Ari Emanuel [not a mysterious
"billionaire"] offered to purchase the Siegel Heirs' rights (Docket No. 196-2, Ex. H at
166:6-170:24 (testimony of Kevin Marks), Ex. E at 98:25-104:14 (testimony of Marc
Toberoff); Docket No. 196-3 (further testimony of Kevin Marks)).

Docket No. 231 at 17.

<u>May 31, 2011, Defendants' Opposition to Motion for Reconsideration</u>

There was no mention of a "billionaire investor" in Mr. Toberoff's August 2002
conversation with Mr. Marks, in which the talent agent, Ari Emanuel offered to purchase
the Siegel Heirs' rights for $15 million plus a participation. *See* Docket No. 196-2, Ex. H
at 166:6-170:24 (testimony of Kevin Marks), Ex. E at 98:25-104:14 (testimony of Marc
Toberoff); Docket No. 196-3 (further testimony of Kevin Marks). …

Defendants addressed DC's trumped-up mysterious "billionaire" claim in opposition to
DC's original motion to compel, and noted that DC itself had long ago identified the
"investor" as Mr. Emanuel. Docket No. 160 at 70:2-71:3. Defendants likewise pointed
out in their anti-SLAPP motion that the August 2002 offer was made by Mr. Emanuel,
not a mysterious "billionaire," as consistently testified to by Mssrs. Marks and Toberoff
in 2006. See Docket No. 145 at 8:12-28; No. 196-2, Ex. E at 103:8-9, Docket No. 145-6,
Ex. R at 168:2-169:5. …

Certain words that appear in the May 13 Letter unsurprisingly appear in DC's complaint
(e.g., "billionaire," FAC ¶ 7-8, 66-85) because the complaint is based on the inadmissible
rant in the anonymous Timeline, which, in turn, clearly riffed off Michael Siegel's
speculations in his inadmissible May 13 Letter. DC cherry-picks these repeated words to
somehow validate its baseless complaint and to falsely accuse Defendants of

**EXHIBIT J**

**106**

O'MELVENY & MYERS LLP
July 2, 2012 - Page 6

misrepresenting to the Court.  DC specious arguments ignore the innocuous actual content of the May 13 Letter.

Docket No. 269 at 8, 9, 10-11.

Deposition of Laura Siegel Larson 7/23/11

Q.  -- it starts out "I really wish to discuss Marc Toberoff."  And it says in the third sentence:  "I told you when he first contacted me, he wanted to buy my share of the copyright.  Marc had a mysterious billionaire who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation.  When you signed with Marc the billionaire invested elsewhere."  Do you know where he got that information?
A.  I have no idea.
Q.  You don't think he made it up, do you?
A.  You know, Michael was a very confused guy, on a lot of medication, and when he would write things to me, such as asking me did I know that Marc was the attorney for the Shusters, well, of course I did, and, you know --
Q.  He's telling you that Marc Toberoff contacted him and said he had a mysterious billionaire.
A.  Yeah.  Well, I don't know where that came from.
Q.  Did you think your brother – your stepbrother was lying?
A.  I don't -- I don't know that he came up with the wording himself.  You know, I mean it -- I had never heard this referred to in any way other than in this letter, "mysterious billionaire."  I don't know what that means.
Q.  Put $15 million up front, plus participation, that happened to be exactly the same number that Mr. Emanuel had offered you; correct?
A.  That was interesting, and that caught my eye.
Q.  Mr. Toberoff had told you that he knew billionaire investors; correct?
A.  No, he never used that term. …
Q.  By the way, when you wrote your stepbrother back, did you straighten him out on things that you think he had wrong in his letter to you of May 13?
A.  I did my best to.
Q.  Can you explain to me as best as you can, for example, what you said about the billionaire, the mysterious billionaire?
A.  You know, I don't remember how I put it to him, but I, you know, I tried to in as simple a manner as possible explain what he had wrong in this letter.  Regarding specifically the billionaire, I really don't recall what I said.
Q.  Did you type the letter yourself?
A.  Yes, I did.

Docket No. 305-24 at 1018:18-1020:4, 1024:24-1025:12.

August 29, 2011, SLAPP Reply

6

**EXHIBIT J**
**107**

O'MELVENY & MYERS LLP

July 2, 2012 - Page 7

After extensive discovery, DC unsurprisingly has no admissible evidence to support the frivolous allegations in its Fifth Claim that, in August 2002, "Toberoff and his partner [Ari Emanuel, now head of the William Morris Endeavor Agency] [mis]represented to Marks that they had a wealthy or 'billionaire' investor who would pay the Siegels $15 million cash for their Superman rights … [and would produce] a new Superman movie." Opp. at 10; *see also* FAC ¶¶ 77-78. DC has long been aware that Mr. Emanuel was the investor. *See, e.g.*, Docket No. 196-2, Ex. H at 166:6-170:24 (testimony of Kevin Marks), Ex. E at 98:25-104:14 (testimony of Marc Toberoff). As Mr. Marks also clearly testified, there was no mention of a "billionaire investor" or producing a Superman movie. *See* Declaration of Kevin Marks, ¶¶ 2-5.

Docket No. 312 at 3.

April 24, 2012 SLAPP Appeal

**4. DC Has Shown No "Wrongful Act"**

Claims for "interference with a prospective economic advantage," also require a "wrongful act." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003). The sole such allegation in the Fifth Claim is that purportedly in August 2002, "Toberoff falsely misrepresent[ed] to the Siegel heirs that he had a billionaire investor ready to purchase their Superman rights" for $15 million and "falsely represent[ed] to the Siegels he would help them produce a competing Superman motion picture." ER 1043 ¶185.

This squarely contradicts the record evidence, and after two years of discovery DC has no evidence to support such allegations, or that Mr. Toberoff had anything to do with the failure of DC's protracted negotiations.

As DC is aware, Emanuel, who made the $15 million offer, was the wealthy "investor." ER 332:6-335:25. DC offered no evidence that the highly successful Emanuel (who DC has not bothered to depose herein) was not sincere in offering $15 million for the Siegels' valuable Superman copyrights. As Marks testified, there was no mention of a "billionaire investor" or of producing a Superman movie. ER 164-65 ¶¶2-5. Nor can DC show that the Siegels relied on Emanuel's offer, or that it caused them to end their already moribund negotiations with DC. Simply put, there is no "wrongful act" to support DC's interference claim.

Appeal No. 11-56934, Docket No. 8 at 53-54.

Defendants and their counsel have no excuse for failing to produce the November 2, 2002 letter months—if not years—ago. Their withholding of the letter and related correspondence is gravely prejudicial to DC, given its importance to refuting key assertions defendants have made to the district court and the Ninth Circuit—and continue to make and press despite their duty of

**EXHIBIT J**
**108**

O'MELVENY & MYERS LLP
July 2, 2012 - Page 8

candor to the courts.  It also once again proves that, Mr. Toberoff's protestations notwithstanding, he is not complying with his discovery duties and obligations, and by either knowingly endorsing this misconduct or turning a blind eye to it, the Kendall Brill firm is engaging in the same misconduct as well.

     d.  And to be clear, the November 2, 2002, letter is just latest example of this pattern of discovery misconduct—all of which is chronicled by the courts' orders and is apparent when one compares the documents that have been obtained in litigation the false and misleading privilege logs and related declarations that Mr. Toberoff has served on the Kendall Brill firm's watch.  Among the many examples:

- DC requested that defendants produce Laura Siegel Larson's May 13, 2003, letter to Michael, which is identified in the Toberoff Timeline, but had never been produced or logged by defendants.  Docket No. 160 at 37-38.  Defendants refused for weeks and months to produce the document or even disclose whether it existed.  *Id.*  It was not until the Court ordered defendants to (a) produce it to DC; or (b) submit a verified further response to DC indicating that it does not exist, Docket No. 209 at 12, that defendants finally produced the letter.  Defendants, by their own admission, Docket No. 412 at 10, never claimed any privilege over the letter, and it was clearly responsive to numerous of DC's requests.  Docket Nos. 49, Ex. A at 65-66; 160 at 37-38; 162-9 at 577 ¶ 10; 162-10 at 581-82 ¶ 10; 162-11 at 584 ¶ 10; 162-12 at 588-89 ¶ 10; 225 at 13-17.  Exactly like the November 2, 2002, letter, the May 13 letter exposed direct misrepresentations made by defendants to the courts in their SLAPP and other briefing, including that Toberoff used false promises of a "mysterious billionaire" "investor" to induce the Siegels to end their business relationship with DC and transfer to Toberoff and his companies their putative Superman copyrights.  Docket No. 225-4 at 3; *see also* Docket Nos. 181 at 23-24; 201 at 3-7; 205 at 17-20; 215 at 8-10.

- DC similarly requested that defendants produce Michael's July 2003 response to Laura, also identified in the Timeline and never produced or listed in defendants' privilege logs.  Docket No. 160 at 30-33.  Defendants first misleadingly suggested that no such letter existed, and that the Timeline was an inaccurate "hit piece."  Docket Nos. 160 at 70-71; 162-9 at 577-78; 162-10 at 580-82; 162-11 at 584; 162-12 at 588-89.  Defendants then claimed the letter was privileged, but refused to identify the privilege log entry where it was listed.  Docket No. 231 at 19-20.  Defendants finally conceded in September 2011, in response to DC's motion to compel, the July 2003 letter appears at Privilege Log Entry No. 82 in the *Siegel* case.  Docket Nos. 316 at 21-24; 317 at 1-5.  Entry No. 82, however, does not identify the letter.  Entry No. 82 logs a "Facsimile" from "Laura Siegel" to "Marc Toberoff."  Docket No. 317-2 at 8.  Defendants then claimed for the first time that the document was subject to a common-interest privilege.  Docket No. 316 at 24-26.  Judge Wright rejected that argument and ordered defendants to produce the July 2003 letter, Docket No. 336, and its production fully revealed, once again,

8

O'MELVENY & MYERS LLP

July 2, 2012 - Page 9

that defendants had lied to the courts about its contents.  Among many other non-privileged portions of the document, it confirms:  (1) Kevin Marks, the Siegels' prior attorney who negotiated the October 2001 settlement between DC and the heirs, believed the Siegels "had a deal with DC" and stated he would "testify" to that effect; (2) Mr. Marks told Mr. Toberoff the Siegels "had a deal with Time Warner/DC"; (3) Mr. Toberoff did not plan to produce a Superman movie to exploit the Siegels' putative copyrights; and (4) Laura was seeking to convince her brother Michael to sell his 25% interest in the Siegels' putative Superman rights to another of Mr. Toberoff's "investors," while concealing that the investor was, in fact, Mr. Emanuel—Mr. Toberoff's and Laura's business partner.  Docket No. 362-2 at 286-90.

- Defendants have also failed to list on their privilege logs the names of all recipients of withheld correspondence, thus concealing potential privilege waivers and preventing discovery of essential evidence by DC.  To avoid discovery of their concealment, defendants have intervened where third parties have been subpoenaed and prepared privilege logs on their behalves—controlling how withheld documents are identified in the logs.  By way of example, defendants listed the Marks Memo in the Siegels' July 19, 2006, Privilege Log in *Siegel* as an August 9, 2002, letter from Marks to Joanne and Laura—listing no other recipients—withheld on "Atty/Client" grounds.  (Entry 325.)  In 2006, DC issued a subpoena to Mr. Bulson for the production of documents in *Siegel*.  Mr. Toberoff refused to allow Bulson to produce documents or prepare a privilege log in response to DC's subpoena.  Instead, Mr. Toberoff provided a privilege log to DC that, among other things, did not list the Marks Memo.  *See* Docket No. 317-3 at 41.  Defendants finally produced the Marks Memo to DC, as part of the Timeline documents provided to the USAO, and it is, in fact, an August 9, 2002, letter from Mr. Marks to Joanne, Laura, *and* Mr. Bulson, with a copy to Bruce Ramer.  Docket No. 427-3 at 333-34.  By omitting Mr. Bulson—Michael's attorney, neither of whom had an attorney-client relationship with Mr. Marks—defendants prevented DC from challenging their assertion of "Atty/Client" privilege over the Marks Memo.  Like Michael's May 2003 letter and Laura's July 2003 letter, the Marks Memo exposes direct misrepresentations made by defendants to the courts in its SLAPP and other briefing.  It confirms that Mr. Marks told Mr. Toberoff in August 2002 that the Siegels had an existing agreement with DC; that Mr. Toberoff and Mr. Emanuel made a competing offer, nonetheless; that if the Siegels accepted the offer, they and Mr. Toberoff would likely be sued, and Mr. Marks would have to testify against them; and that the "right thing to do" was to finalize documenting the agreement with DC in "good faith."  *Id.*  Discovery in this case has shown the promises Mr. Toberoff and Mr. Emanuel made were empty ones.  On the other hand, third parties who have not been co-opted by Mr. Toberoff have provided to DC complete and accurate logs that contradict defendants' logs.  Gang Tyre—who did not allow Mr. Toberoff to impede their discovery obligations—provided to DC a privilege log on September

9

**EXHIBIT J**

**110**

21, 2006, in *Siegel* that accurately listed the Marks Memo as an August 9, 2002 "Memorandum" from "Atty Kevin Marks" to "Joanne Siegel; Laura Siegel Larson; Atty Don Bulson; Atty Bruce Ramer," withheld on grounds of "ac; ac-common interest; wp." (Entry 713.) The Kendall Brill firm should have performed an independent review of the documents withheld and/or redacted by Mr. Toberoff.

- The Timeline and USAO documents show that Mr. Toberoff continues to omit from defendants' privilege logs the names of all recipients of correspondence to conceal privilege waivers. For example, Entries 3158 and 3159 in Toberoff's privilege log in this case list an August 16, 2010, email from Toberoff to the USAO and an email response from the USAO that same day, respectively. Docket No. 163-17 at 1038. Both entries assert a "Joint Interest Privilege" as the basis for withholding. *Id.* When the communications were finally produced by defendants to DC, the documents showed that Mr. Emanuel was copied on both emails. Docket No. 427-11 at 1139-41. There is no basis for asserting Mr. Emanuel had a "joint" interest with the USAO; defendants have never made that claim; and, therefore the communications never should have been withheld.

- The USAO documents also confirm that defendants made misrepresentations to Judge Zarefsky and the Ninth Circuit concerning the contents of the withheld documents. Counsel represented to the Ninth Circuit there was *no evidence* the Siegels consented to Mr. Toberoff's disclosure of the Timeline documents to the USAO. Docket No. 387-2 at 6:22-8:3 ("There is no evidence that the client waived … Your Honor, I think it is pointed out that the client has never waived …."). The USAO documents directly refute this assertion. Counsel wrote to the USAO: "You have requested that I confirm that Mr. Toberoff's clients have authorized Mr. Toberoff's disclosure to the [USAO] of the documents enclosed with my letter to you dated September 27, 2010, pursuant to the Grand Jury Subpoena dated September 13, 2010 and the terms of my September 27, 2010 letter. *I so confirm*." Docket No. 427-11 at 1149 (emphasis added). Mr. Toberoff similarly represented to Judge Zarefsky in moving for a protective order that the USAO communications included his "frank assessment of potential *suspects*" for who authored the Toberoff Timeline. Docket No. 420 at 11 (emphasis added). The USAO documents establish David Michaels was the only suspect Mr. Toberoff identified and Mr. Toberoff's accusations were unqualified. Docket No. 427-11 at 1075 ("The Firm has proof positive as to the identity of the perpetrator….").

- Along the same lines, the Timeline documents include evidence that directly refutes claims made by defendants in their SLAPP briefing. Defendants have claimed that Mr. Toberoff represented the Siegels as a lawyer—and not as a business advisor—since the inception of their relationship. *E.g.*, Docket No. 145-1. The Timeline documents show that as late as October 2004, the Siegels were

O'MELVENY & MYERS LLP
July 2, 2012 - Page 11

involved in contentious negotiations with Toberoff regarding his legal representation of the heirs. *See* SD00172-75 (Oct. 2, 2004, Laura Email to Toberoff). In her October 2 email, Laura makes clear to Mr. Toberoff that the Siegels object to many of the legal representation terms proposed by Mr. Toberoff; that the heirs are familiar with legal retainer agreements and how they are entered into; and that the legal retainer agreements needs to be finalized for Mr. Toberoff to move forward. *Id.* Also included in the Timeline documents is a draft retainer agreement from October 2004, confirming that the terms of Mr. Toberoff representing the Siegels as a lawyer were unsettled well into 2004. *See* SD00166-71.

e. As Dick recently said, courts follow the general principle that litigants may divide among co-counsel the "duties of conducting" a case. *Cole v. Patricia A. Meyer & Assocs., APC*, 2012 WL 2106364, at *14 (Cal. Ct. App. June 8, 2012). "This does not mean, however, that an associated attorney whose name appears on all filings in a case and who is served with all documents filed by the other side need not know anything about the case with which he or she is associated." *Id.* The "general rule" does not allow the Kendall Brill firm to escape responsibility and liability for its clients and co-counsel's discovery misconduct. It is the Kendall Brill firm's duty and obligation as the only attorneys of record for the Toberoff defendants to ensure that their responses and disclosures are complete and accurate—which is something the Kendall Brill firm now expressly says it declines to do. *See Hawkins v. Fulton Cnty.*, 96 F.R.D. 416, 420-21 (N.D. Ga. 1982) ("[E]ven if another attorney is now responsible for all discovery matters, [the defense attorney] is still attorney of record for the Defendant and is responsible as such . . . for any failure to provide discovery.").

Whether Mr. Toberoff has acted like he was representing himself and his business entities is beside the point. Mr. Toberoff has never appeared *pro per* in this case, and while we believed your firm was monitoring his discovery responses and conduct, you disclosed to us, for the first time, a few weeks ago, when pressed, that your firm was not doing so, despite being the only counsel of record for the Toberoff defendants.

f. In light of this disclosure and the discovery misconduct only briefly addressed above, it is clear that several forms of relief are  required. First, a special master should review defendants' files and privilege logs to identify additional documents improperly withheld on grounds of privilege, responsiveness, or otherwise. Second, the Kendall Brill firm must ensure and verify the accuracy and completeness of all of the Toberoff defendants' discovery responses pursuant to their professional obligations and the Federal Rules, including going through their clients' files and the privilege logs to ensure all required documents have been produced. Mr. Toberoff and the Kendall Brill firm may also need to be sanctioned for all the cost and deception their misconduct has caused. Indeed, as the Kendall Brill firm has known from the outset of this case, and from the first major motion that your firm helped Mr. Toberoff prepare, he cannot be trusted to represent facts accurately, fully, or completely. And as his document productions have shown, he is sitting on responsive, non-privileged documents that only get produced when the courts or your firm intervenes. This must be brought to an end.

11
**EXHIBIT J**
**112**

O'MELVENY & MYERS LLP
July 2, 2012 - Page 12

     3. <u>Missing Pages of Renner Otto Bills</u>.  Page 723 of the Renner Otto bills, which should appear between EOMS 00185 and EOMS 00186, is missing from the documents defendants produced to DC.  The missing page appears to reflect billing entries for the time period between July 30, 2002, and September 24, 2002—a critical time period at issue in this case during which Mr. Bulson received a copy of the August 9, 2002, Marks Memo discussing Mr. Toberoff's offer to acquire the Siegels' putative Superman interests, including Michael's interest.  DC demands that page 723 of the Renner Otto bills (redacted, if need be) also be produced no later than July 6, 2012.

*     *     *

     Please let us know when you are available to meet and confer on these issues, pursuant to Rule 37.  We propose the afternoons of July 6 or 9.

     All of DC's rights and remedies are reserved.

                                      Very truly yours,

                                      /s/ Daniel M. Petrocelli

                                      Daniel M. Petrocelli
                                      of O'MELVENY & MYERS LLP

cc:     Matthew T. Kline, Esq.
         Defense Counsel

OMM_US:70757040

12

# EXHIBIT K

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Thursday, July 12, 2012 10:57 AM
**To:** Marc Toberoff (mtoberoff@ipwla.com)
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Pablo Arredondo (parredondo@ipwla.com); Richard Kendall; lbrill@kbkfirm.com; Nicholas Daum
**Subject:** DC vs. Pacific Pictures: Meet and Confer on MSJ and Document Issue

Marc,

This is to confirm our discussion yesterday concerning DC's supplemental production of July 6, 2012, which was comprised of two short letters that Jean Peavy, your client and a defendant in this matter, sent to DC several years ago.

As discussed, we came across the two documents in the past couple weeks as I was preparing the summary judgment motion we intend to file Monday. As I mentioned, while finalizing our summary judgment motion, I asked a member of our firm to run electronic searches for certain documents. One document that was found was located in a database from prior counsel to which we only recently obtained access in electronic form. The searches turned up a letter from Jean Peavy that I and others had not seen before and that was not Bates-stamped. We confirmed the letter had not previously been produced, at least in Bates-stamp form. I immediately asked our team to conduct an exhaustive review to confirm there were no other documents in this database responsive to defendants' December 13, 2011, discovery requests. That search turned up the second letter that we produced along with the first letter. I can confirm that we have conducted a good-faith, comprehensive search for responsive documents pursuant to Rule 34 and have found no other responsive documents requested by defendants in this case. It is possible, though unlikely, that there are a few documents responsive to requests in the *Siegel* case, and we will confirm that shortly, but obviously discovery is closed in that matter and the matter is on appeal.

As for the claims about DC's productions made in Laura Brill's letter of yesterday or Pablo's letters or emails on the same subject, they are false and belied by the facts above. So, too, are their false claims about DC's privilege logs and other matters, as we have many times shown, and defendants have chosen not to challenge for many months. If you wish to discuss any of these matters further, we are happy to do so.

We do hope finalize with you today or tomorrow your intentions on the three depositions discussed, as well as an agreed-upon briefing schedule on the MSJs. On the briefing, we think the July 16, July 30, August 10, August 17 schedule makes sense, but are willing to consider other proposals, or to just follow the applicable rules. On Paul Levitz's deposition, we confirm he will be deposed in New York on July 26--and we offered our New York offices to do that.

All of DC's rights are reserved.

Thanks,

Matt

*******************************************
**Matthew T. Kline**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Phone: (310) 246-6840

**EXHIBIT K**
**114**

Fax: (310) 246-6779
mkline@omm.com
www.omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

Please consider the environment before printing this email

2

**EXHIBIT K**
**115**

# EXHIBIT L

On Mon, Jul 23, 2012 at 6:30 PM, Seto, Cassandra <cseto@omm.com> wrote:

Please see the email below send on behalf of Matt Kline.

    *       *      *

Marc,

You have been on notice of our motion for six months, the timing of filing for a month, and asked for Mr. Levitz's deposition on this date. We made extensive arrangements and plans. We just offered you extra time to take Mr. Levitz's deposition, and you declined. We offered you a videoconferenced deposition, and you declined. We have not cancelled a single deposition of an out-of-town witness, nor any deposition on notice this short. This is a problem of your own making, and your last-minute cancellation is unjustified. If you do not wish to depose Mr. Levitz in connection with DC's motion for summary judgment, that is your choice. We will point out in our summary judgment papers that you unilaterally cancelled his deposition rather than examine the witness.

Nor is it proper for you to suddenly reschedule depositions for four witnesses -- including Carolyn McCandless, who you never before indicated you wished to depose -- during the weeks when you know we will be busy with summary judgment briefing.

We reserve the right to seek all appropriate relief, including compensation for the costs of cancelling flights and hotel reservations at the last minute.

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, July 23, 2012 5:08 PM

**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Keith Adams; Pablo Arredondo; David Harris
**Subject:** Re: Levitz Depo

Matt:

1

**EXHIBIT L**
**116**

I am sorry it is literally not feasible given our compressed schedule in both this case, and deadlines in other matters.  You have on short notice re-scheduled the pre-arranged and pre-scheduled depositions of numerous witnesses (both parties and non-parties alike) in this case on many occasions.

Please promptly inform Mr. Levitz to minimize any inconvenience.

Thank-you

Marc

On Mon, Jul 23, 2012 at 3:57 PM, Kline, Matthew <MKline@omm.com> wrote:

Marc,


Mr. Levitz's deposition has been arranged and scheduled, and we are travelling to New York tomorrow to defend it.  We cannot move the date.  If you need two extra days to file your opposition, we have no objection to defendants' filing their opposition on August 1.  DC would file its reply on August 8.



All of DC's rights are reserved.



Matt



---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, July 23, 2012 3:30 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Keith Adams; Pablo Arredondo; David Harris
**Subject:** Levitz Depo


Matt:

Unfortunately, due to the time pressures of completing defendants' opposition to DC's partial summary judgment motion by July 30, 2012 (and DC's refusal to grant even a one week extension) defendants must reschedule Mr. Levitz's July 26, 2012 deposition in NYC.

Please provide the availability of Paul Levitz, Lillian Laserson, Martin Payson and Carolyn McCandless from August 1-17, 2012.

Thank-you.

**EXHIBIT L**

**117**

**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--

**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com


--

**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**EXHIBIT L**
**118**

# EXHIBIT M

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 7, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Dick:

We write in response to your July 20 letter and your firm's offer to review a limited number of your clients' files and re-log and produce documents, if DC promises not to file its special-master motion with the District Court.  While we appreciate that your firm has taken a small step in the right direction, there are several shortcomings in the proposal, chief among them:  (1) your firm's and your clients' failure to acknowledge the seriousness of the discovery problems at issue (or the significant cost and delay caused by defendants' actions); (2) your firm's and your clients' failure meaningfully to address many of the issues we raised during our lengthy in-person meet-and-confer on these issues; and (3) your firm's and your clients' assertion that appointment of a special master is unnecessary.  Also unacceptable is your firm's offer to do work required of it by law as a quid pro quo to avoid DC's motion.  In short, based on the present record, DC is not prepared to accept your offer, and will file its motion shortly, unless there is a significant change in defendants' position.

## I.      TOBEROFF'S DISCOVERY MISCONDUCT MUST BE ACKNOWLEDGED.

Your July 20 letter begins by staking out the following factual and legal position:

Defendants disagree strongly with DC's contention that there has been any material error (other than a very small number of inadvertent errors of no consequence that are common in complex litigation) concerning Defendants' privilege logs.  In fact, both the form and content of the logs have been repeatedly upheld both in this action and in the *Siegel* case, over the course of active litigation spanning nearly eight years.  We also believe, as stated in prior correspondence to you, that your other accusations of discovery misconduct in this litigation by Toberoff & Associates are

**EXHIBIT M**
**119**

O'MELVENY & MYERS LLP

August 7, 2012 - Page 2

without basis, and nothing in this offer of compromise should be deemed to suggest otherwise.

Each claim you make above is in error, improperly minimizes fundamental discovery misconduct that cannot be swept away, *cf. Hester v. Vision Airlines, Inc.*, 2012 WL 2914108, at *5-7 (9th Cir. July 18, 2012), and pays no heed either to the significant prejudice DC has suffered or the needless costs defendants have imposed on the courts. We discussed many examples of your clients' discovery misconduct at our recent in-person meeting, and while you claimed to be unaware of many of the issues we discussed, your letter does nothing to address the points we raised or the further diligence you said your firm would conduct in response.

A.  Toberoff's Conduct Was Intentional And The Heaviest Sanctions Are Warranted. Toberoff's pattern of obstructing the discovery process has prejudiced DC's ability to litigate its claims in this case.[1]  Just last month, the Ninth Circuit issued an opinion re-affirming the propriety of the most grave sanctions (default) where a party withholds relevant evidence, redacts information that is not legitimately privileged, and obfuscates efforts to uncover it. *Hester*, 2012 WL 2914108, at *5-7.  In *Hester*, plaintiffs alleged that their employer was wrongfully retaining hazard pay, and issued interrogatories and requests for production asking for "all communications and documents that relate to hazard pay." *Id.* at *2.  Defendant refused to cooperate with plaintiff's requests by first asserting the documents did not exist, and later making an incomplete production that only included select pages of some documents, and heavily redacted copies of others. *Id.* at *2-3.  The district court found that defendant "intentionally delayed production of documents, misrepresented its current and past production … and otherwise engaged in bad faith conduct." *Id.* at *5.  As a sanction, the court struck defendant's answer. *Id.*  The Ninth Circuit affirmed and recommended other possible sanctions.  *Id.* at *9; *accord, e.g.*, *Connecticut Gen.*, 482 F.3d at 1097 (defendant's "pattern of deception and discovery abuse …. so damage[d] the integrity of the discovery process that there [could] never be assurance of proceeding on the true facts"); *Valley Eng'rs*, 158 F.3d at 1054-58 (terminating sanctions warranted where party suppressed smoking-gun document by denying it existed and through false privilege claims; plaintiffs "probably would never have seen [it], had [their] lawyer not been sharp enough to spot what was not there"; defendant's "discovery violations ma[de] it impossible for [the] court to be confident that the parties [would] ever have access to the true facts").

---

[1] *See* FED. R. CIV. P. 37; *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1236-1237 (9th Cir. 2006); *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2004); *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057-1058 (9th Cir. 1998); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995); *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990); *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1450-1451 (9th Cir. 1986); *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978); *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2012 WL 3036481, at *4 (Jul. 26, 2012).

O'MELVENY & MYERS LLP
August 7, 2012 - Page 3

Toberoff's pattern of withholding non-privileged documents, redacting non-privileged information, falsely claiming that requested documents do not exist, and knowingly manipulating his privilege logs is equally improper. So, too, is his and his counsel's refusal fully and finally to remedy the situation. As we will show the Court, Toberoff's "willful halting [of] the discovery process" has prejudiced DC's ability to litigate its claims, *Barbieri v. Rio Suites Hotel & Casino*, 45 Fed. Appx. 652, 653 (9th Cir. 2002); wasted the courts' limited resources, *G-K Props.*, 577 F.2d at 647; and "damage[d] the integrity of the discovery process," *Conn. Gen. Life Ins.*, 482 F.3d at 1097. Many documents central to DC's case have been produced only after DC has "spot[ted] what was not there," *Valley Engr's*, 158 F.3d at 1058—and then had to fight through false denials that such documents did not exist, purposefully opaque privilege logs, and costly motion practice. The Ninth Circuit not only permits sanctions in such circumstances, it "encourage[s]" them, *G-K Props.*, 577 F.2d at 647, and both sanctions and a special master are needed to get to the full depths of Toberoff's misconduct.

Discussed below are a few examples (not exhaustive) showing that Toberoff's actions have been "deliberate," "material," and prejudicial, despite your claims in your July 20 letter to the contrary, and Toberoff's recent denials, *see* Docket No. 466, which your firm notably did not sign off on our join.

*1. The May 13, 2003, Letter.* The Toberoff Timeline identifies a May 13, 2003, letter from Michael Siegel to Laura Siegel Larson that had never been produced or logged in this case or in *Siegel*—despite its being directly responsive to document requests in both cases. The Timeline describes the May 2003 letter as documenting Michael's many concerns about Toberoff's misconduct, including his efforts to secure the Superman copyrights for himself.

After defendants failed to produce the document by the court-ordered date for defendants to make their document production in December 2010, DC requested during a meet-and-confer that month that Toberoff confirm whether the May 2003 letter existed and, if so, to produce it. Toberoff refused to confirm the letter's existence, instead stating only that DC should not rely on the Timeline. Given Toberoff's non-answer, DC sent a follow-up letter on December 29 concerning documents identified in the Timeline that defendants had never produced or logged, including (1) the May 2003 letter; (2) a December 16, 2002, letter from Toberoff to the Siegel heirs; (3) a July 5, 2003, letter from Michael to Laura; and (4) a September-October 2003 letter regarding Ari Emanuel's fee for representing the Siegel heirs. Toberoff responded in a letter a few days later that "the ranting anonymous 'Timeline' [is] inaccurate and untrustworthy," he claimed that the December 2002 and September-October 2003 letters did not exist, and he evaded DC's questions as to the May 2003 and July 5 letters. Docket Nos. 162-9, 162-10.

DC pressed Toberoff again, requesting on January 5 that defendants produce several documents, *including specifically the May 2003 letter from Michael to Laura*. Docket No. 162-11. Your claims that Toberoff did not intentionally obstruct discovery (stated in your July 20 letter and elsewhere) are belied by Toberoff's letter of January 8, 2011, in which he stated:

> *As to your claims that we have not produce documents alluded to in the ranting, anonymous Timeline, we have repeatedly stated that the inadmissible Timeline is*

**EXHIBIT M**
**121**

O'MELVENY & MYERS LLP

August 7, 2012 - Page 4

> *extremely untrustworthy.* **To the extent that relevant documents exist, they have either been produced or designated as privileged**.

Nonetheless, in the interest of clarity: …

> • *There are no documents related to an offer by a "billionaire investor" to purchase the Siegels' Superman rights, because no such offer was ever conveyed*, and the sworn testimony of the relevant witnesses is consistent on this point. The Timeline itself, states that this supposed offer was made at the August 2002 meeting between Kevin Marks, Ari Emanuel, and [Mr. Toberoff]. Docket No. 98 at 4:21-6:3. As Kevin Marks testified, "[a]t no time during that conversation did either Mr. Toberoff or Mr. Emanuel say anything about a 'billionaire investor.' The world 'billionaire' was never used in the conversation by any of its participants." Docket No. 98-3 at 1:16-2:7.

> *DC's overzealous quest to find non-existent documents based on frivolous allegations in an anonymous incoherent "hit piece" is unworthy of DC and its counsel.*

Docket No. 162-12 at 589 (emphases added).

    a. While you, Mr. Daum, and Toberoff (in our in-person meeting) and Ms. Brill (in her letter that preceded it) all tried to downplay Toberoff's failure to produce the May 2003 letter in late 2010 or early 2011, every one of the defenses offered is without merit. During our meeting, Toberoff argued that DC's discovery requests were blunderbuss and he innocently did not locate the May 2003 letter during his searches. But as you and he know, DC's December 2010 and January 2011 letters—which we discussed during our meeting—asked Toberoff to confirm the existence of the May 2003 letter based on a search of the documents in defendants' possession, which would include the Timeline documents. Docket No. 162-9 at 574-78; 162-11 at 583-86. The letters confirm we also specifically raised the letter during our lengthy meet-and-confer call.

    Mr. Daum argued that any failure to find the document was inadvertent, but when we pressed him on the any factual basis he had to make this claim, he conceded that he and your firm played *no role* in trying to discern why Toberoff had not produced the document in 2010 or 2011, much less any role in searching for the document in 2010. In any event, Mr. Daum's suggestion that Toberoff innocently could not locate the May 2003 letter cannot be taken seriously: the May 2003 letter appears no fewer than *four* times among the Timeline documents at Q0032-33, Q0139-40, Q0317-18, Q0590-91. Both Toberoff and your firm had to have reviewed this document on numerous occasions in making the representations you did in numerous briefs to the Court in 2010 about the accuracy of the Timeline and DC's reliance on the allegations contained therein.

    We pressed Toberoff in December 2010 and January 2011 to look among the Timeline documents for the May 2003 letter, and his response was: the Timeline is "untrustworthy" and

O'MELVENY & MYERS LLP
August 7, 2012 - Page 5

"to the extent relevant documents exist, they have either been produced or designated as privileged." Docket No. 162-12 at 589. These were direct, knowing misrepresentations and not inadvertent errors, as you now describe them. Nowhere among any of defendants' logs in *Siegel* or this case was or is the May 2003 letter from Michael to Laura ever listed. And as of January 2011, never had it been produced.

Your letter notably makes no mention of any of these facts or any follow-up investigation your firm has done into why Toberoff did not produce the May 2003 letter in 2010 or early 2011. Nor does your letter grapple with the fact that Toberoff made numerous affirmative misstatements to DC and the Court about the Timeline, the May 2003 letter, and otherwise, including the following, false statement in Toberoff's January 8, 2011, letter that: "There are *no documents* related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights, because no such offer was ever conveyed...." Docket No. 162-12 at 589.

As both Toberoff and your firm well knew in 2010 and 2011, the May 2003 letter existed among the Toberoff Timeline documents, it had never been produced or logged, and that letter expressly mentioned the "billionaire" investor. *See* Docket No. 225-4 at 3 ("Marc [Toberoff] had a mysterious *billionaire* who wanted to invest in the Superman copyright. When you signed with Marc the *billionaire* invested elsewhere."). As Toberoff and your firm also knew, defendants were under a court order, issued in December 2010, to produce all responsive, non-privileged documents—having waived all other objections to DC's document requests—and yet they failed to do either with respect to the May 2003 letter. Docket No. 133. Nor did your firm ever produce or log the document among the productions made for the Toberoff defendants, and even though Toberoff and your firm have possessed the May 2003 letter since at least mid-2010, in possessing the Toberoff Timeline documents.

At our recent in-person meeting, you said that said Toberoff's January 8 letter—and the representations he made therein—were a revelation to you, and you wanted to look into them. Yet, your July 20 letter only makes further blanket denials of misconduct and does nothing to grapple with Toberoff's January 8 statements, or your firm's or defendants' failure to produce this non-privileged, obviously responsive, relevant document, which directly belied statements your firm was making in court filings.

b. Your July 20 letter argues no harm, no foul—going so far as to say Toberoff's suppression of this evidence was "of no consequence." But as we explained at our in-person meeting, defendants' and their counsels' efforts to minimize the impropriety, cost, and impact of the discovery misconduct at issue here is not well-taken. Defendants and their counsel have knowingly caused DC to spend hundreds of thousands of dollars and to waste months of precious time to obtain documents like the May 2003 letter, which defendants were under court order to produce in December 2010. And as we will discuss below, Toberoff's misconduct—which your firm has permitted—has allowed defendants to present a skewed evidentiary record to the courts, including in the SLAPP appeal papers your firm recently filed and has done nothing to correct. These record issues, akin to those raised in Rule 28(j) letter after the oral argument in the *Pacific Pictures* case are troubling, to say the least.

**EXHIBIT M**
**123**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 6

And the prejudice DC has suffered under cannot be undersold.  Toberoff did not turn over the May 2003 letter in December 2010, as he was required.  Rather, he rather represented to DC in January 2011, when DC pressed on why the May 2003 document had not been produced: "DC's overzealous quest to find non-existent documents based on frivolous allegations in an anonymous incoherent 'hit piece' is unworthy of DC and its counsel."  Docket No. 162-12 at 589.  In his court filings (with which your firm was served), he did not disclose that the May 2003 letter was among the Timeline documents.  Instead, he chastised DC for relying on the Timeline as proof that the letter existed, insisting the Timeline was "unreliable" and "grossly inaccurate."  Docket No. 160 at 5, 71-72.  Nowhere did Toberoff disclose that the May 2003 letter was among the Timeline documents, or that he had never specifically logged the letter.  Worse, he took deliberate steps to hid the letter's existence.  And, in fact, by their own later admission, defendants conceded they had *never* claimed *any* privilege over the May 2003 letter, but only other communications that DC sought.  Docket No. 412 at 10.

Toberoff's deceptions were not "inadvertent errors … common in complex litigation," as your July 20 letter asserts.  They were sanctionable acts of deliberately misleading DC and the courts.  *E.g.*, *Hester*, 2012 WL 2914108, at *5-7.  Fortunately, DC spotted the gap in defendants' production, pressed the issue despite Toberoff's bellicose claims that DC's suspicions were "unworthy" of counsel, and Judge Zarefsky ultimately granted DC's motion and ordered defendants to either (a) produce the May 2003 letter, or (b) provide a verified response that it did not exist.  Docket No. 209 at 12.  Only then did Toberoff produce the May 2003 letter.

Mr. Daum's recent suggestion—based on no evidence submitted by Toberoff in 2011 or now—that Toberoff only found the May 2003 letter after Judge Zarefsky issued his order is incredible.  It also directly belied by the fact that the document appears no fewer than *four times* among the Toberoff Timeline documents that DC asked Toberoff to search in December 2010 and January 2011, and with which your firm has long been intimately familiar.  It is also belied by the fact that Toberoff had to review all of the Timeline documents in preparing his court-ordered declaration in May 2007—and yet he not only failed to produce this document then, he later denied its existence.  And it is belied by the fact that both your firm and Toberoff must have reviewed the Timeline documents before producing them to the U.S. Attorney's Office in September 2010—and yet neither he nor your firm volunteered to produce the document when DC served its motion on all parties and counsel seeking it.  Toberoff (and your firm) also had to review the logs (and logged documents) in producing privilege logs for all defendants in late December 2010 and early 2011.  If you have any basis to support Mr. Daum's claim of an innocent discovery of this document after Judge Zarefsky's order—based on an actual investigation into actual facts—please provide it without delay.  Otherwise, we can only assume you have no facts to support your claim that the failure to produce this document was an "inadvertent error."  That Mr. Daum made this statement—with no basis to support it, and when the plain evidence so clearly contradicts it—causes us even deeper concern.

Still another reason we know no inadvertent error occurred are the steps Toberoff took after producing the document to cover his tracks.  Not only did he refuse to produce the document in December 2010, as required by court order, he also refused to produce all Q-Bates

**EXHIBIT M**
**124**

O'MELVENY & MYERS LLP

August 7, 2012 - Page 7

stamped versions of the May 2003 letter when DC requested it.  Docket Nos. 160 at 71-72; 296-1 at 4-6; 296-8 at 76; 296-9 at 77-79.  Producing the Q-Bates stamped versions of the documents would have shown (a) that non-privileged, non-produced documents existed among the Timeline documents, and (b) that Toberoff's privilege logs, as discussed further below, were a sham.  Yet he successfully refused to produce the Q-Bates stamp version, calling DC's claimed need to obtain the documents baseless.  He also objected successfully to orders that would have compelled him to produce all Michael-Laura Siegel-related correspondence, and that would have compelled him to update and re-scrub his privilege logs.  Docket Nos. 160 at 68-71; 209 at 11-12.  As we would learn, and is discussed below, the May 2003 letter was not the only document Toberoff suppressed.  Many more existed, and many more were buried among the Timeline documents and false privilege entries that neither Toberoff nor your firm did anything to correct.

c.  The production of May 2003 letter—and the recent production of the Toberoff Timeline documents—also show what a sham defendants' privilege logs have been, and why the modest corrective action you propose falls well short.  Defendants' production of the Timeline documents in May 2012 show that *four versions* of the May 2003 letter existed among the Timeline documents, and that Toberoff repeatedly misled DC and the courts with false, overbroad privilege log entries that claim no privilege over letters like the May 2003 letter, but instead lump and hide them behind other specific logged documents.  This is not an isolated mistake; this intentionally deceptive and sanctionable practice repeats itself time and again.  To take one example (among many), a copy of the May 2003 letter included among the Timeline documents bears Bates stamps Q0139-40.  In his court-ordered May 2007 declaration in *Siegel*, Toberoff said that these pages corresponded with Siegel Supplemental Privilege Log Entry 79:

Q 0138-45        Plaintiffs' supplemental privilege log # 79

As shown below, Entry No. 79 only identifies a July 5, 2003, transmittal from Laura to Toberoff—and makes utterly no mention of a May 2003 letter from Michael to Laura.  Indeed, the log entry makes no mention of a *May* 2003 communication.  It makes no mention of *Michael Siegel*.  And it makes no mention of a *letter*—just a July "Facsimile" from Laura to Toberoff.

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s) | Document Type | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 79 | 7/5/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |

You cannot claim this a simple mistake, or that Toberoff's failure to address and correct this issue in late 2010 or early 2011 was an innocent error.  DC pressed Toberoff repeatedly to identify and produce the May 2003 letter.  DC also pressed Toberoff to look at and for July 2003 correspondence involving Laura Siegel—including on July 5, 2003, specifically.  Docket No. 162-9 at 577 ("We raised that there are certain communications listed on the Toberoff Timeline documents that neither appear on defendants' logs nor have been produced.  We provided the following document as an example, a May 13, 2003 letter from Michael Siegel to Laura Siegel Larson discussed in the last paragraph of page 3 on the Timeline, … [and a] July 5, 2003 letter from Laura Siegel Larson to Michael Siegel discussed on page 4…  You said that DC should not rely on the accuracy of the Timeline, but took under advisement our request that you verify

**EXHIBIT M**
**125**

whether such documents exist—and, if so, to either produce them, or list them on defendants' privilege logs."). So not only did Toberoff have the Timeline documents to go through and find the May 2003 letter among them—and to produce all versions of it—he had DC asking him to look at documents from July 2003 for Michael-Laura Siegel correspondence. This included the July 5 letter at log entry No. 79. Again, rather than producing the May 2003 letter—which Toberoff *never* asserted was privileged, Docket No. 412 at 10—he lied and dissembled. He and your firm said the Timeline was a ranting "hit piece" that could not be believed. He said DC had all the documents to which it was entitled and that his logs needed no correcting and did nothing to obscure the existence of relevant, responsive, or non-privileged documents. And he and your firm said that DC's "billionaire investor" claim was a "mockery."[2]

Not only did Toberoff repeatedly and deliberately lie in his logs, he did not correct his misstatements (a) when Judge Zarefsky ordered him in 2007 to go through all the Timeline documents once again; or (b) when DC repeatedly challenged the logs in this case. While Toberoff claimed in our meeting the other day that a paralegal went through the underlying documents to create his 2007 declaration, that is not what his declaration states, and it is not what Judge Zarefsky ordered him to do. *Cf.* May 21, 2007, Toberoff Decl. at 1 (Toberoff declaring: "Pursuant to the Order, *I have accounted for each of the Documents*….") (emphasis added). Worse still, DC raised repeated complaints with Toberoff's logs and filed motions seeking to require defendants to update them to ensure that non-privileged documents were not being hidden behind opaque, incomplete, and false log entries. Docket Nos. 160 at 40-44; 162-8 at 571-73; 162-9 at 574-78; 162-11 at 583-86; 205 at 3, 18-19; 207-10 at 472-75; 207-12 at 488; 225 at 13-20; 243 at 10-12; 253 at 6-10; 274 at 7-8. Time and again, Toberoff rejected DC's claims of impropriety, arguing that his logs were fully proper and that he was hiding nothing. Docket Nos. 160 at 66-68, 74-78; 162-10 at 579-82; 162-12 at 587-90; 207-11 at 481-82; 207-13 at 494; 210 at 12-13, 15-16; 231 at 16-22; 269 at 11-15. The production of the May 2003 letter and the recent production of the Toberoff Timeline documents—with full Q-Bates stamping finally exposed—show just how badly Toberoff misled DC and the courts in claiming his logs were proper and did not need to be updated in any way.

Toberoff's knowing, deliberate, and repeated suppression of the May 2003 letter is reason alone to justify terminating sanctions in this case. *See Valley Eng'rs*, 158 F.3d at 1054-58; *supra* at 2-3. But there are many other acts in which defendants have engaged to justify this relief and that show that Toberoff's failure to produce the May 2003 letter was far from an innocent error. As shown below, Toberoff played the same games in hiding Laura's July 2003 response to Michael—first suggesting it did not exist, and then being caught hiding the document behind yet another fax-cover-sheet privilege log entry, listing only Laura and himself as recipients.

___

[2] How your firm could make such representations about the accuracy of the Timeline and DC's allegations when you possessed and had reviewed the Timeline documents is an issue that must be fully explored. So, too, is your firm's failure to fulfill its duty of candor when Toberoff falsely told DC and the courts the documents it sought did not exist.

O'MELVENY & MYERS LLP

August 7, 2012 - Page 9

d.  Finally, as for your repeated claims that Toberoff's failure to produce this and other smoking-gun documents were not "material," your own briefs and letters in this case, as do Toberoff's, refute this.  As you know, before defendants produced the May 2003 letter, they and your firm argued repeatedly and vociferously that DC's and the Timeline's "mysterious billionaire" investor claim, Docket Nos. 181 at 23-24; 201 at 3-7; 205 at 17-20; 215 at 8-10; 225-4 at 3,  was a "mockery," "contrary to all the evidence," and "based entirely on the untrustworthy, inadmissible Timeline," *e.g.,* Docket No. 196 at 1-5, 10.  Yet Michael's May 2003 letter supports this claim and corroborates the Timeline:

> Marc had a *mysterious billionaire* who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation.  When you signed with Marc the *billionaire* invested elsewhere.  Marc has his own production company, he was going to team with Emanuel and make a [Superman] movie. This has not happened.  Docket No. 225-4 at 3 (emphases added).

The May 2003 letter also contradicts Toberoff's representation in his January 8 letter to DC that "[t]here are no documents related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights."  Docket No. 162-12 at 589.  As shown below, DC has obtained—at great expense, and only after overcoming significant deception and stonewalling—still other documents that corroborate its "billionaire investor" claim, including from Larson herself.  While Toberoff, Larson, and you may all now try to explain key evidence like the May 2003 letter away, those explanations are for the jury—and not for defendants and their counsel to use as a basis improperly to withhold discovery.  Such skewing of the facts, especially when defendants and their counsel were taking such strident positions in their briefs about such issues, require the stiffest and fullest sanctions.

*2.  July 2003 Letter And Drafts.*  As noted above, Toberoff's pattern of burying smoking-gun documents behind fax cover sheets to him was repeated when it came to Laura's July 2003 response to Michael's May 2003 letter.  Like the May 2003 letter, the Timeline identifies a July 5, 2003, letter from Laura to Michael that had never been produced or logged in this case or in *Siegel*.  DC requested that defendants (1) confirm whether the July 5 letter existed and, if so, to produce it; and (2) to review Entry Nos. 715 and/or 716 to the Siegel Privilege Log in this case— both listed as facsimiles from Laura to Marc—and confirm whether the logged documents included an unprivileged July 11, 2003, letter from Laura to Michael, which DC believed could be the non-privileged July 2003 letter referenced in the Timeline.  Docket Nos. 162-9 at 576-577; 162-11 at 583-84.  In any event, Toberoff was under court order, as of December 2010, to produce or log responsive documents—and he did neither for the July 2003 letter that would only finally emerge in late 2011, and pursuant to court order issued by Judge Wright.

a.  Ms. Brill's claim in her recent letter that three potential "July 2003" letters are at issue and that Toberoff made no misrepresentations as to any one is false.  She ignores Toberoff's and your firm's obligation to produce or log the document in late 2010 and/or early 2011—neither of which ever occurred.

**EXHIBIT M**
**127**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 10

As for Ms. Brill's three asserted categories, the first is the July 11 letter. Despite DC's simple and straightforward requests, and the court's December 2010 order mandating the production or logging of responsive documents, Toberoff refused to review Log Entry Nos. 715 and 716 or to confirm DC's understanding that the July 11 letter from Laura to Michael was included as an attachment to the fax cover sheet but not separately logged. Docket Nos. 162-10 at 580-82; 162-12 at 588-89. Toberoff asserted that privilege as to the documents identified at Entry Nos. 715 and 716 had been repeatedly upheld by the courts in this case and in *Siegel*, but would not state whether the July 11 letter existed, or whether his logs accurately depicted what documents were hidden behind them. Docket Nos. 160 at 66-68; 231 at 19-20. Based on Toberoff's representations that DC was not entitled to the documents, Judge Zarefsky and the District Court rejected DC's motions to obtain the July 11 correspondence from Laura to Michael, though Judge Zarefsky did note that Toberoff's responses about the document were "cryptic." Docket Nos. 209, 248.

During Larson's July 22, 2011, deposition, she testified that she responded to Michael's May 2003 letter, that Toberoff made factual edits to the letter (via faxes to her), that she believed she sent the response in July 2003, and that she gave Toberoff a copy of the final letter. Docket No. 316-5 at 314:12-15, 316:11-12, 323:11-14, 325:22-327:22, 328:3-330:3. Despite these clear admissions, Toberoff again refused to produce a copy of the letter; confirm whether defendants' possessed a copy; address whether it was defendants' position that the letter was privileged, and, if so, why; or confirm whether the letter appears on defendants' logs, and, if so, at what entry number. Docket No. 361-2 at 216-18.

It was not until DC filed its second motion to compel production of the July 11 letter in September 2011, that Toberoff finally conceded defendants did not separately log the July 11 letter, as the law requires them to do. Toberoff conceded the July 11 letter appeared at Siegel Privilege Log Entry No. 82 in the *Siegel* case. Docket Nos. 316 at 21-24; 317 at 1-5. Again, Log Entry No. 82 does not identify Laura's July 11 letter; nor does any other entry. Entry No. 82 logs a "Facsimile" from "Laura Siegel" to "Marc Toberoff." It says nothing about a letter from Laura to Michael, and does not specify the alleged "common interest" privilege claim that defendants now newly asserted:

| Log# | Date | Identity of Recipient(s) | Identity of Author(s) | Document Description | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 82 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiff's Counsel |

Docket No. 317-2 at 8.

Clearly, none of the rulings in *Siegel*—which Toberoff argued precluded DC from obtaining the July 11 letter—conceivably could have dealt with the discoverability of the July 11 letter, since its existence was only confirmed by Toberoff in September 2011. Toberoff's suppression of Laura's letter behind a false privilege entry was not an "inadvertent" mistake as

**EXHIBIT M**
**128**

O'MELVENY & MYERS LLP

August 7, 2012 - Page 11

you claim. Toberoff used this same calculated, illegal devise to hide evidence in burying the May 2003 letter. Both your firm and Toberoff knew this critically important letter existed in the Timeline documents, was directly responsive to DC's requests, related closely to DC's claims in this case (and arguments defendants were making to the contrary, including whether DC had a "deal" with the Siegel family in 2001, with which Toberoff interfered). DC asked Toberoff to review the Timeline documents for this July 2003 letter. And Toberoff—despite knowing the exact location of the July 11 letter, knowing he had never separately logged it, and knowing it was responsive to DC's requests—dissembled to both DC and the courts about its existence, all while your firm looked on in silence. As for the privilege claim that was asserted in Log Entry No. 82, it did not reach or even embrace the Michael to Laura letter—only attorney-client privilege was asserted, and yet where common-interest privilege had been claimed over Michael-Laura communications, that specific claim, not an attorney-client privilege claim, had been made. *E.g.,* Docket No. 162-6 at 416-17 (Entry Nos. 495, 507-09, 512, 516-19). Toberoff's representations to the courts that his privilege claims to this document had been upheld was, thus, false—and, at best—horribly misleading. Courts in the Ninth Circuit do not permit such games. *Supra* at 2-3.

b. The second "July 2003" letter at issue, according to Ms. Brill's letter, is the July 5 letter identified in the Timeline that defendants had never produced or logged. Toberoff refused to confirm whether the July 5 letter existed and instead, like the May 2003 letter, chastised DC for relying on the "inadmissible" and "untrustworthy" Timeline and represented that "[t]o the extent that relevant documents exist, they have either been produced or designated as privileged." Docket No. 162-12 at 589. When DC moved to compel, Toberoff for the first time claimed that defendants were "unable to identify a document that *matched*" the description of the July 5 letter—a representation Judge Zarefsky found meant "the document does not in fact exist so far as Defendants know." Docket Nos. 160 at 71-72 & n.2; 209 at 11-12 & n.2. DC requested that defendants conduct a diligent review of all files in their possession, custody, or control (including any files obtained from Michael or Don Bulson, Michael's attorney) for any unproduced documents from June or July 2003, since the July 5 letter could be misdated in the Timeline or be found in a different form, such as a draft letter. Docket Nos. 253 at 9; 253-17. Toberoff continued to claim the July 5 letter, in whatever form, did not exist. Docket No. 269 at 12-13.

Defendants' recent production of the Timeline documents refutes Marc's claims that he could not "match" any documents in defendants' possession, custody, or control to the July 5 letter: the July 5 letter appears no fewer than *nine* times among the Timeline documents at Q0141-45, Q0147-51, Q0153-57, Q0319-23, Q0389-93, Q0478-82, Q0592-96, Q0661-65, and Q0750-54. As DC suggested to defendants, the July 5 letter appears to be a draft of Laura's July 11 letter. Toberoff's clear misrepresentation is recklessly repeated in Ms. Brill's recent letter and reinforces why DC is saying you cannot rely on his representations or the review he has purportedly conducted of defendants' documents.

c. The third category of "July 2003" letters identified by Ms. Brill are the drafts that DC learned about during Laura's July 2011 deposition, which defendants had never

**EXHIBIT M**
**129**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 12

logged or produced in this case or in *Siegel*. Docket No. 316-5 at 314:12-15, 316:11-12, 323:11-14, 325:22-327:22, 328:3-330:3. Ms. Brill claims without citation to anything that defendants representations about these drafts have been "entirely consistent, as reflected in nearly five years of pleadings on this issue." This means nothing, other than that Toberoff consistently has made entirely false misrepresentations about this evidence. When DC requested that defendants produce all drafts of the July 11 letter, Toberoff represented that the drafts had been logged and upheld as privileged in this case and in *Siegel*. Like the May 2003 and July 11 letters, however, defendants never separately logged the drafts, as they were obligated to do. And as discussed below, defendants' recent production of the Timeline documents (yet again) shows that the drafts were hidden behind fax cover sheets, instead of being separately logged. No court could have ruled on the discoverability of the July 11 drafts since their existence was not confirmed until May 2012. Toberoff knew this, but he continued to make contrary representations to DC and the courts, with no acts of intervention by your firm.

    d.  Defendants' production of the July 11, 2003, letter fully revealed that defendants had lied to the courts about its contents—and the veracity of the Timeline. Among many other important revelations, the document confirms that Kevin Marks, the Siegels' prior attorney, who negotiated the October 2001 settlement between DC and the heirs, told Toberoff and the Siegels that the Siegels "had a deal with DC"—which directly refuted arguments Toberoff and defendants and their counsel had made in this case. Docket No. 362-2 at 286-90.

    Again, failing to produce this document or to log it properly, so that any privilege claim over it could have been litigated years ago, was not an "inadvertent error[] of no consequence," as your July 20 letter asserts. Laura's admissions in the letter to her brother go to core issues in the *Siegel* case—and the letter should have been produced years ago, when she, Michael, and Marks could have been deposed using the document. But now Michael is dead, summary judgment was entered in *Siegel* without access to this evidence, and a Rule 54 motion was granted in *Siegel* (again without access to this evidence)—all to DC's great prejudice. Equally harmful, Toberoff and his counsel have had the audacity in this case to make arguments directly contrary to the letter, knowing the letter was suppressed and being kept from DC. And only further adding to the harm defendants suppressed the letter long enough to keep DC from using it in its briefs on defendants' SLAPP motion (both in the district court and before the Ninth Circuit), and in Larson's deposition.

    Indeed, only after a year of delay and Judge Wright's rejection of Toberoff's belated and baseless claim of privilege in the July 11 letter did defendants finally produce it in November 2011. While Ms. Brill and Toberoff now argues (wrongly) that the letter somehow actually supports defendants' defenses in this case, such self-serving claims have never been a basis to suppress evidence, nor are they an after-the-fact excuse for having done so. *Supra* at 2-3 (collecting cases).

**EXHIBIT M**
**130**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 13

e. The production of the Timeline documents, including the Q-Bates versions of the July 11, July 5, and July 11 draft letters, confirm how deliberately misleading defendants' privilege logs have been. A copy of the July 11 letter included in the Timeline documents bears Bates stamps Q0484-88. In his court-ordered May 21, 2007, declaration in *Siegel*, Toberoff said that these pages corresponded with Siegel Supplemental Privilege Log Entry Nos. 82 and 83:

Q 0483-88        Plaintiffs' supplemental privilege log # 82, 83

Entry Nos. 82 and 83 identify two July 11, 2003, transmittals from Laura to Toberoff—and makes no mention of a July 11 letter from Laura to Michael:

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s)r | Document Type | Privilege Claim | Present Location |
|-------|------------------|--------------------------|------------------------|---------------|-----------------|------------------|
| 82 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |
| 83 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |

Listing the document in this manner allowed Toberoff to suppress the July 11 letter for years by hiding it behind an allegedly privileged facsimile from Laura.

f. DC spent tens of thousands of dollars—sending numerous letters, participating in several meet-and-confers, filing five sets of briefs, and appearing at oral arguments on the issue of the July 2003 letter—over a period of ten months. Your blithe assurances that DC has not been harmed by defendants' and their counsels' actions are not well taken. This is especially true give defendants' and their counsels' recent efforts to keep record evidence from the Ninth Circuit that directly refutes key factual positions they are taking before that Court.

*3. November 2, 2002, Letter.* When DC received the May 2003 letter, it disclosed yet another communication between Michael and Laura that defendants had never produced, logged, or disclosed in this case or the *Siegel* case—a November 2, 2002, letter from Laura to Michael. DC requested that defendants produce the November 2 letter immediately after learning of its existence in April 2011. Docket No. 267-3 at 8. Toberoff represented that defendants could not "locate" the November 2 letter. Docket Nos. 267-2 ¶¶ 4-5; 267-7 at 18. DC pressed defendants to conduct a diligent search of all files in their possession, including Michael's files, which were in Toberoff's possession since 2006 when he handled the production of documents and preparation of privilege logs for *both* Bulson and Melvin Banchek, Michael's estate administrator. Docket No. 267-1 at 9. Toberoff again said the letter could not be found, and Judge Zarefsky denied DC's motion to compel it based on Toberoff's representation that he "perform[ed] a diligent search of [defendants'] record, all of [defendants'] records." Docket No. 288 at 38:23-39:1; *see also* Docket No. 267-16 ¶ 4 ("After DC asked for a November 2, 2002 letter from Laura Siegel to Michael Siegel, I caused my office to re-check our relevant case files.").

a. While you and Toberoff (in our in-person meeting) and Ms. Brill (in her recent letter) suggested that Toberoff did not obtain a copy of the November 2 letter until 2011, the facts show

**EXHIBIT M**
**131**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 14

otherwise.  As you know, in late 2011—after all SLAPP briefing had been closed, and after DC had to send four letters and hold multiple meet-and-confers on the subject—defendants finally produced a privilege log for the electronic archive of Michael's files that we only months earlier learned that the Renner Otto firm possessed.  Among the new entries on the Bulson Archive Log that appear nowhere in the Michael Siegel-related logs in *Siegel*—which Toberoff prepared—was the November 2, 2002, letter from Laura to Michael.  Docket No. 362-2 at 313 (Entry 399).

Toberoff refused to produce the November 2 letter to DC, claiming he had not logged the document six years earlier because it was not part of Michael's files he received in 2006, and claiming that the document was subject to attorney-client and common-interest privilege. Docket No. 412 at 7-11.  Both these claims were specious.  Judge Zarefsky rejected Toberoff's privilege claims after an *in camera* review, Docket No. 451 at 5, and Renner Otto confirmed:

> I appreciate you making us aware of Mr. Toberoff's 5/7/12 filing.  I've spoken to Don Bulson and consulted the "Renner Otto [electronic] archive" referenced in [Toberoff's] brief.  To the best of my knowledge*, the "Renner Otto archive" was the product of scanning Mr. Siegel's paper files* before they were forwarded to the attorneys for Mr. Siegel's estate, *and the documents in the "Renner Otto archive" and the paper file should be the same.*

Docket No. 427-2 at 4 (Renner Otto partner J. Ryland) (emphasis added); *see also* Docket No. 362-2 at 319 (Renner Otto told DC that the electronic archive is an exact replica of the documents returned to defendants).

At our recent meeting, and in the days after, you, Toberoff, and one of his associates have speculated—based on no hard evidence or facts—that somehow the November 2 letter, which is devastating for defendants, did not make it into the hard copy file that Toberoff received in 2006. Your July 20 letter says and does nothing to justify this speculation.  As the facts all show, and as Judge Wright recently ruled in ordering Toberoff to produce another document from the Bulson log based on DC's arguments of waiver, Docket No. 457, Toberoff possessed the November 2002 letter in 2006, and he chose first neither to produce it or log it in *Siegel*, next neither to produce it or log it in this case, and finally to lie about whether he possessed the document in briefing and oral argument before the Court.  Toberoff's recent motion for reconsideration on this issue, Docket No. 466, may assert that he engaged in no misconduct, but his words and actions in the *Siegel* case, including handling the document production for Mr. Banchek, all refute his current arguments.  Again, notably, your firm did not join that recent brief that Toberoff filed.

b.  Defendants' suggestion that the November 2 letter somehow supports defendants' positions in this case, and thus DC was not harmed by its suppression, are equally without merit. The November 2 letter not only directly contradicts factual assertions made by defendants in their briefing in this case, it directly supports DC's claim that Toberoff used false promises of a "mysterious billionaire" investor to induce the Siegels to end their business relationship with DC and to do business with him instead.  Docket No. 225-4 at 3; *see also* Docket Nos. 181 at 23-24; 201 at 3-7; 205 at 17-20; 215 at 8-10.  In the long-suppressed November 2, 2002, letter, Laura

**EXHIBIT M**
**132**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 15

herself writes: "My mother and I have had extensive meetings with Toberoff and Emanuel in the past few weeks. We learned that due to the delays and the misinformation Kevin had given them that *there was a deal with DC, the <u>billionaire investor</u> who was offering $15 million up front plus participation thought it was a hopeless situation and invested his money elsewhere*." (Emphases added.) This (empty) $15 million offer by an alleged billionaire investor (who Toberoff's discovery responses in this case show never existed) matches exactly the $15 million offer Kevin Marks said that Toberoff and Emanuel made to the Siegels in 2002. Docket No. 427-3 at 333-34. While Kevin Marks, in a narrowly crafted declaration, denied that Toberoff invoked the "billionaire investor" with him, this November 2002 letter from Larson is stunning, contemporaneous proof that Toberoff invoked this fake investor with her and her family. Laura's recent denial that Toberoff invoked the "billionaire investor" with her, Docket No. 466, is directly belied by her own words in 2002, and casts her credibility, in general, in even greater doubt.

Despite the November 2002 letter, which Toberoff has had in his possession since 2006 (and Laura herself knows she wrote), defendants filed one brief after another in this case saying there was no proof—none—of DC's billionaire-investor claims. You said this in your SLAPP briefs. Ms. Brill said this to us. And Toberoff said on January 8, 2011: "There are no documents related to an offer by a "billionaire investor" to purchase the Siegels' Superman rights, because no such offer was ever conveyed…. DC's overzealous quest to find non-existent documents based on frivolous allegations in an anonymous incoherent 'hit piece' is unworthy of DC and its counsel." Docket No. 162-12 at 589. The prejudice here is palpable—your SLAPP brief on file with the Ninth Circuit right now disputes DC's billionaire investor claim. Appeal No. 11-56934, Docket No. 8 at 53-54. And you have resisted any efforts to get evidence like the November 2002 letter before the Court. *Id.*, Docket Nos. 25, 26. Defendants' discovery misconduct has not only deprived the courts of key evidence, but it flouts Toberoff's and his counsels' duty of candor to the courts to make such arguments when you know such evidence was withheld. Indeed, Toberoff was well aware of this document well before the district court denied defendants' SLAPP motion, and well before defendants' filed their SLAPP appeal. Even under his false submission, Docket Ni. 466, he received the electronic archive from Bulson *last year*—and *before* Judge Wright ruled on the SLAPP motion, and before you and he filed your SLAPP briefs in the Ninth Circuit.

c. Again, Ms. Brill's and Toberoff's efforts to argue how the document should be interpreted—and to (preview the false testimony Laura will proffer (were Toberoff not refusing to allow her to be deposed again)—do nothing to justify defendants' discovery misconduct. Your claim now that Laura was using the term "billionaire investor" to "placate" Michael, who was "very confused," is not only implausible on its face, but should have been the subjects of Laura's depositions in *Siegel* and this case—which defendants prevented by not producing these documents, and now are seeking to prevent further by not allowing her to be examined about this document or her recent declaration.

4. *November 17, 2001, Email and the Renner Otto Bills.* Toberoff's production in late 2011 of the Bulson Privilege Log listed for the first time another critical document: a November

**EXHIBIT M**
**133**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 16

17, 2001, email from Toberoff to Michael.  That email showed that Toberoff had contacted the Siegel family well before he claimed to have done so in SLAPP briefs you filed.  Docket No. 145-1 at 23-24.  Like the November 2, 2002, letter, Toberoff claimed the November 17, 2001, email had not previously been logged because it was not a part of Michael's hard copy file returned to Toberoff in 2006.  Docket No. 412.  DC showed in its motion before the District Court that this claim was false, Docket No. 455, and Judge Wright ordered defendants to produce the November 17 email.  Docket No. 457.

Toberoff also forced us to incur needless costs to obtain Renner Otto's bills—which also show that he contacted Michael Siegel well before he claimed.  A Renner Otto billing entry from November 17, 2001—which took us months of effort and yet another motion, Docket No. 394 at 10-13—confirm that Toberoff spoke to Bulson in November *2001*.



Docket No. 455-2 at 5.  And as before, defendants' recent efforts to explain away these harmful documents miss the point.  Such explanations are no excuse for failing to produce responsive evidence.

*5. Other Defects In Toberoff's and Defendants' Privilege Logs.*  DC has successfully shown, again and again, that defendants' privilege logs have been used to hide key, non-privileged documents by excluding important identifying information.  And as the Ninth Circuit noted, Toberoff has also abused his position as a lawyer to assert privilege over business communications.  *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124, 1129, 1127 n.4 (9th Cir. 2012).

Yet another stark example of Toberoff manipulating the contents of his privilege logs to hide key facts—and to harm DC—is his failure to list Ari Emanuel as a recipient of communications with the U.S. Attorney's Office.  You claim that the failure to list Emanuel was inadvertent—and, in any event, inconsequential because these were "scheduling emails" that contain "absolutely nothing of any substance."

To begin, as Mr. Daum acknowledged during our meet-and-confer, this was not a one-time oversight or mistake.  Both times Emanuel's name should have appeared—on two separate entries, Docket Nos. 163-17 at 1038 (Entry Nos. 3158, 3159); 427-11 at 1137-41—Toberoff omitted Emanuel's name.  This is exactly the same pattern and practice of omitting damaging details that one sees when you look at Toberoff's log entries for the May and July 2003 letters discussed above (buried and never listed), the November 2002 letter and November 2001 email (never listed), and other documents.

**EXHIBIT M**
**134**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 17

As for the notion that Emanuel's inclusion in these discussions was unimportant, that is a farce. You represented to the Ninth Circuit that defendants and the USAO formed a common-interest agreement, documented by a letter you sent the USAO. Appeal No. 11-71844, Docket No. 1-1 at 9-11, 26-29. That letter never mentioned Emanuel, Docket No. 212 at 12-13, and had we obtained real privilege logs from defendants that showed that Toberoff had included Emanuel (not his or your client, and not part of your defense team) as part of the discussions with the USAO, we could have shown only how much more baseless defendants' common-interest claims were.

*6. Toberoff's Privilege Claims Made In Bad Faith.* In *Siegel*, DC sought to discover communications between Michael, Bulson, Toberoff, and Laura relating to Toberoff's efforts to secure Michael's rights for the mysterious "investor" he claimed to represent. Toberoff asserted a common interest privilege over all communications with Michael—whether they resided in the files of the Siegels, their agents, or with Bulson. DC challenged this broad assertion of privilege. The district court in Ohio conducted an *in camera* review of 15 communications and ordered defendants to produce all 15 after rejecting Toberoff's position that these documents were "clearly protected under the doctrine of the 'common interest'" and were "classic *privileged* subject matter." Docket No. 161-4 at 26, 27. The district court found:

> After reviewing all of the 15 documents, and the claimed joint interest privilege which has been asserted, the court finds that none of the 15 documents are subject to the attorney/client privilege based on the joint interest exception. First, the court finds that none of the 15 communications … are for the purpose of giving legal advice. Second, the court finds [that 13] communications … are not made in regard to the joint and common legal or defense strategy relative to ongoing or upcoming litigation. Finally, *the court finds that the interest of Michael Siegel, as reflected in the 13 communications, is separate and apart from those of Joanne and Laura Siegel*. These documents relate to the offers back and forth between Mike [*sic*] Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and Bulson on behalf of Michael Siegel. Docket No. 161-5 at 30-31 (emphasis added).

Toberoff had no basis to assert privilege over these 15 documents, much less to claim that they were "clearly" protected and "classic" privileged material. We urge you, read each of these documents and please tell us if you can truly claim that Toberoff's privilege claims are within bounds of reason. Each discusses a business deal over which attorney-client privilege does not remotely extend. For example, Bulson wrote to Toberoff in a June 18, 2003, letter: "I have discussed with Michael the offer you passed on from a potential investor who is interest in purchasing Michael's interest in the Superman copyright. The amount offered is not acceptable to Michael." Docket No. 161-8 at 57. Toberoff responded on August 6 stating he had a "high-end accountant get quotes for an annuity paying out the sums as set forth in Michael Siegels' long-awaited June 18, 2003, counter-offer regarding buy-out." Toberoff went on to write that Michael's counter-offer was "well over twice (230%) of the last Warner Bros. offer and nearly five times the investor's original offer which I believe was based in large part on the last WB

**EXHIBIT M**
**135**

offer, rejected by the Siege's [*sic*]."  *Id.* at 61.  Toberoff then walked through all the reasons why Michael should accept his unnamed investor's offer, and why Michael's claims to the contrary were without merit.  *Id.* at 61-62.

Is it really your position that the objection to producing such documents was made in good faith?  Or that the common-interest privilege claims Toberoff belatedly made over the November 2002 or July 2003 letters were made in good faith—and not intended to delay and deny DC discovery?[3]  As we will discuss below, your present positions on these questions (*i.e.*, that Toberoff did nothing wrong) make your compromise offer (*i.e.*, let your firm, rather than a special master, make similar privilege calls in its sole discretion), an illusory one.

## II.    YOUR FIRM'S "COMPROMISE" PROPOSAL FALLS WELL SHORT.

Your compromise proposal includes three parts—each of which is somewhat hard to follow, and none of which meets or satisfies DC's concerns.

A. Part 1.  Your July 20 letter begins:

*First*, counsel from [KBK] will independently review each document created prior to October 8, 2004 (the date the *Siegel* litigation commenced) that *is listed* on the privilege logs submitted in this action.  If, *in the independent judgment of KBK*, privilege does not apply to any logged document, that document will be produced promptly to DC.  (Emphases added.)

There are three significant problems with this proposal.

*First*, it confines itself to documents "*listed* on the privilege logs submitted in this action."  As shown above, none of the May 2003, July 2003, November 2002, or November 2001 correspondence was ever "listed" on logs.  The May and July 2003 documents were hidden behind other entries.  The November 2002 and November 2001 documents appeared nowhere— they were not even buried behind other entries—until after (a) we uncovered that the Renner Otto firm kept an electronic copy of the Michael Siegel documents; and (b) Renner Otto itself agreed to create new logs (at DC's expense) that listed each and every document in its possession.  You have given us no express assurances that your review would include documents like the May and July 2003 letters (which were buried, but not "listed" on logs) and you have come up with no protocol to make sure documents like the November 2001 and November 2002 correspondence do not exist.  Again, it is your duty as counsel in this case to make sure that your

---

[3] For example, Toberoff asserted the November 2 letter from Laura to Michael was protected by a common-interest privilege, Docket No. 412 at 7-11, chastised DC for engaging in "self-serving speculation" about its contents, and asserted that the letter concerned "legal and settlement strategies vis-à-vis DC/Warner that is squarely within the common interest privilege," *id.* at 10.  Judge Zarefsky rejected those claims, and for good reason:  the November 2 letter is yet again Laura trying to get Michael to do business with Toberoff—the very same non-privileged subject matter rejected by the Ohio court.

O'MELVENY & MYERS LLP
August 7, 2012 - Page 19

clients are fulfilling their discovery obligations.  (Our previous letters on these issues make that plain.)  We will not make trades that alleviate your firm of this duty—which is only heightened in this case, given the extensive misconduct in which your clients have engaged.

*Second*, the October 2004 cut-off you propose is unworkable.  Toberoff has shown a propensity to bury privileged documents in time-periods other than those listed on the face of his logs, *supra*, and the October 2004 cut-off excludes several critical categories of documents— among them, communications involving David Michaels starting in 2006; with Michael before his death in 2006; regarding the 2008 Consent Agreement and related conflict disclosures and waivers; and regarding the USAO-related issues from 2010.

*Third*, with all respect, we cannot rely on KBK's "independent judgment" about what is privileged or not, given the positions you have taken so far in this case—and particularly in defending (often blindly, and based on no hard facts) Toberoff's conduct.  *See supra* Part I.

B.  Part 2.  The next part of your proposal is:

*Second*, KBK will prepare amended privilege logs.  If DC Comics agrees to provide subject-matter descriptions in the privilege logs it is to submit in this action, Defendants will also provide subject-matter descriptions on their privilege logs, even though the Court ruled that it need not do so.  *See* Docket No. 209 at 13.  Regardless of whether or not the subject matter descriptions are included, if any *logged entry* fails to list any recipient of a privileged document, the logs will be appropriately amended.  (Emphasis added.)

There are four significant problems with this proposal.

*First*, you again focus on amending "logged entries"—not amending the logs to include any and all documents whether previously logged or not, and providing full and complete bibliographic information for each.  This may be a drafting issue with your recent letter, but given the way defendants have improperly parsed words to deny DC documents in the past, we can permit no ambiguity.

*Second*, DC's discovery responses are not remotely an issue here—and as was revealed by your comments at our recent meeting, and by your letter, you are not even aware of the substance of DC's discovery responses.  Each already provides a "subject matter" line-item entry; defendants provide *none*, and never have.

We understand from our meeting that Marc seeks further log entries from DC flagging any communications regarding the Toberoff Timeline.  Defendants already possess Wayne Smith's declaration in *Siegel* setting forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky's ruling finding that Mr. Smith acted appropriately and professionally.  Case No. CV 04-8400, Docket Nos. 108; 177 at 19:3-7. Moreover, to put this issue to rest, there are no documents or communications that relate to the Timeline that predate June 28, 2006.

**EXHIBIT M**
**137**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 20

If defendants want to finalize the privilege logging stipulation that we completed only in part in 2010, we are happy to do so. To be clear, however, defendants cannot use that stipulation as a chit to avoid the full relief DC now seeks from defendants, in the form of a full document production, fully redone privilege logs, and special master both to police that process and to make recommendations about the appropriate sanctions to impose on defendants given the grave prejudice they have cause.

*Third*, defendants and their counsel are already under a legal obligation to amend their logs, and every day they fail to do so, the need for and propriety of the fullest sanctions becomes all the more appropriate. That the court in *Siegel*—without any close examination of the logs, the documents contained therein, or the many examples of discovery abuse exposed in this case—held that defendants' privilege logs were consistent with the Ninth Circuit default standards is irrelevant. As you know, the *Siegel* court issued its rulings before the Ninth Circuit called Toberoff out for failing to produce non-privileged business documents that he falsely claimed were privileged. *Pacific Pictures*, 679 F.3d at 1129, 1127 n.4. Moreover, the Rutter section on which defendants and the *Siegel* court relied says that more details are needed, including that "[a]ny attachment to an allegedly privileged document should be listed separately from the document to which it is attached." W. SCHWARZER, ET AL., RUTTER GROUP PRACTICE GUIDE: FED. CIV. PROC. BEFORE TRIAL § 11:1921 (2012) ("*Rutter*"). Finally, the record plainly shows that Toberoff has violated this rule (and other rules) time and again—the May and July 2003 letters, and July 5, 2003, draft letters are all examples of this, as are the Emanuel log entries.

*Fourth*, "if any logged entry fails to list any recipient of a privileged document, the logs will be *appropriately amended*." It is unclear what you mean by "appropriately amended." And Toberoff's misconduct in preparing defendants' privilege logs is, as you know, not limited to his failure to list all recipients. He has also failed to log certain documents *at all*, and has improperly grouped multiple documents together and listed them as one. At a bare minimum, any log would need to comport with the Rutter Guide format set forth at, *e.g.*, *Rutter* §§ 11:1914-21 (*e.g.*, "Listing each e-mail separately is crucial where different e-mails in the strand potentially raise different privilege grounds."; "Any attachment to an allegedly privileged document should be listed separately from the document to which it is attached.").

C. Part 3. You lastly say:

*Third*, KBK will conduct a reasonable, independent search concerning documents in the second "bucket": that is, documents identified by DC that are referred to in other communications but which have not been located and produced, such as the October 2, 2002 letter, and KBK will confirm to DC the records searched and the results of this search. If any such documents are found following this search, they will promptly be produced or, if privileged, appropriately logged. To date, the October 2, 2002 letter is the only such document identified by DC. However, if there are other such documents sought by DC, please let us know at once, and we will look for them as well.

There are a number of problems with this proposal as well.

**EXHIBIT M**
**138**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 21

*First*, it ignores the "third bucket" of documents that we discussed at our meeting, as does the thrust of your letter. This third bucket is defendants' Superman-related files in general. It is comprised of documents over which defendants or their agents have possession, custody, or control, and have not produced or logged, no matter the reason—be it claims the documents are not responsive to DC's requests in this case and/or in *Siegel*, Toberoff wanted to suppress them, etc. Your firm has never conducted a review of these materials, yet, as you know, Toberoff has withheld documents in the past on a number of improper grounds. This includes the Don Bulson-related materials. It also includes his withholding clearly relevant documents as non-responsive, based on intentionally narrow interpretations of DC's requests. One example of this—and one that caused us to have to re-open the deposition of a witness—was Jean Peavy's will. Docket Nos. 360, 377.

While you say that KBK will conduct a search for further responsive documents, you qualify this by saying it will do *only if* KBK finds in its review "information suggesting that any other responsive documents exist." Both your firm's normal legal obligations that apply in any case, as well as all of the misconduct that has occurred here, is more than enough to "suggest[] that any other responsive documents exist." KBK must review all documents in defendants' possession, custody, and control in conducting this review, to ensure documents are not omitted—including files held by Toberoff, his entertainment companies, and the documents Toberoff has obtained from third parties. This includes, among other sources, the boxes of documents Laura found after Joanne's death and gave to Toberoff; the file cabinet or safe where Mark Peary keeps "important documents, including the 2008 Consent Agreement"; and the "boxes of divorce, copyright and financial paperwork" referenced in Laura's November 2 letter. This must be a comprehensive review and cannot in any way rely on Toberoff's representations regarding his purported prior searches for documents.

*Second*, there are a number of documents that your firm can and should be looking for and producing. This includes the:

- October 2, 2002, Michael letter to Laura: The November 2, 2002, letter disclosed yet another document defendants had never produced or log in this case or in *Siegel*—an October 2, 2002, letter from Michael to Laura. Toberoff claims defendants do not possess the October 2 letter, but similar claims have consistently proven to be false. KBK must conduct an independent search for this document and cannot rely on Toberoff's representations. As you start your search, we note from Don Bulson's billing entries (only recently produced) that on September 4, 2002, Bulson was working on a "draft letter." See below:

**EXHIBIT M**
**139**

O'MELVENY & MYERS LLP

August 7, 2012 - Page 22



Toberoff redacted the subject matter of the letter on which Bulson was working and all work that Bulson did that followed on September 20, 2002. This very well could be a draft of the October 2, 2002, letter, and if Bulson helped work on it, it very well exists in his files—either in draft or final form. We assume defendants have no objection to the Renner Otto firm searching for and producing this October 2002 letter if they can find it, or even drafts if the final does not exist. Please let us know immediately. We also note that the Bulson privilege log finally produced in 2011 mentions communications between Michael and Bulson during this September-October 2002 time period, including two communications on October 1.

| Log # | Date of Document | Identity of Author(s) | Identity of Recipient(s) | Document Type | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 636 | 9/2/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 637 | 9/2/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 638 | 9/3/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 641 | 9/4/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 642 | 9/19/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 643 | 9/19/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 645 | 9/22/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 646 | 9/23/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 647 | 9/23/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 649 | 9/24/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 650 | 9/24/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 651 | 9/24/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 653 | 9/28/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 654 | 9/28/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 655 | 10/1/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 656 | 10/1/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |

So, too, do later billing entries, which mention Bulson reviewing a "Letter from Laura" on September 29, 2002, and doing fully redacted work on October 1, 2002, the day before the October 2 letter was sent. Bulson also had a long meeting with Michael on October 5.

O'MELVENY & MYERS LLP

August 7, 2012 - Page 23



| Date<br>ID | Lawyer<br>Task | Rate<br>Markup % | Hours<br>DNB Time | Amount<br>DNB Amt | Total |
|---|---|---|---|---|---|
| 9/24/2002<br>59767 | DWB<br>Service<br>Email to Marks re status, review email from Mike Siegel | 290.00 | 0.40 | 116.00 | Billable |
| 9/26/2002<br>59800 | DWB<br>Service<br>Tel. conf. with Kevin Marks, tel. conf. with Mike Siegel | 290.00 | 1.10 | 319.00 | Billable |
| 9/27/2002<br>59808 | DWB<br>Service<br>Review letters from Joanne Siegel, tel. conf. with Mike Siegel | 290.00 | 1.30 | 377.00 | Billable |
| 9/29/2002<br>59831 | DWB<br>Service<br>Review letter from Laura Siegel | 290.00 | 0.35 | 101.50 | Billable |
| Total: September 2002 | | | 6.05 | | $1,754.50 |
| Date: October 2002 | | | | | |
| 10/1/2002<br>62797 | | | | | |
| 10/5/2002<br>62831 | DWB<br>Service<br>Meeting with Mike Siegel | 290.00 | 2.25 | 652.50 | Billable |

- <u>2008 Consent Agreement and Drafts</u>:  KBK can and must review the 2008 consent agreement and any drafts.  The only basis for defendants not producing the 2008 consent agreement was Toberoff's self-serving and unsubstantiated claim to Judge Larson that the entire document was privileged (which must be contrasted with Toberoff's recent claims that he was not a party to the agreement at all).  Judge Larson accepted this representation at face value, neither he nor Judge Zarefsky ever review the document in camera, and Judge Zarefsky held he was bound by Judge Larson's ruling absent new facts.  Those new facts have emerged.  Larson and Peary have openly discussed certain contents of the consent agreement in depositions since Judge Zarefsky's ruling, and their testimony confirms that the consent agreement—at least in part—documents business agreements about when and how the Siegel and Shuster family can deal with DC.  Docket Nos. 163-11 at 722:2-10; 160 at 25-26, 50-52; 147-1 at 2.  Since Judge Zarefsky's ruling, Toberoff's claims of privilege have also proven to be highly unreliable at best, *supra* Part I, and the Ninth Circuit specifically recognized that he was suppressing non-privileged business documents claiming they were privileged, *Pacific Pictures*, 679 F.3d at 1129.  The emergence of documents like the May and July 2003 letters, and November 2002 letter all confirm this is the case—as do the Ohio court's rulings.

KBK must review the consent agreement and either produce the document (redacted if necessary) or represent to DC or a special master that in its view as well the document is privileged in its entirety—meaning, that no part of the 2008 consent agreement contains business terms or agreements between the Siegels, Shusters, and/or Toberoff or his entertainment companies.

O'MELVENY & MYERS LLP
August 7, 2012 - Page 24

- <u>Documents identified in Timeline that Have Never Been Produced or Logged</u>:  DC requested in December 2010 that defendants produce two additional documents identified in the Timeline:  (1) a December 16, 2002, letter from Marc and Mr. Emanuel to Joanne and Laura; and (2) a September-October 2003 letter with Mr. Emanuel.  Docket No. 162-9 at 577 n.1.  Marc claimed defendants were unable to identify a document that "matched" either of these descriptions.  Docket No. 162-10 at 581-82.  It has been shown over and over that the Timeline accurately describes documents.  While Toberoff has played games about what documents "match" or not, we need a reasonable and diligent search for all documents described in the Timeline.  This means looking both at the date of the documents, as well as their contents to see if they fairly match.

- <u>Conflict Disclosures, Waivers, and Similar Documents Addressing the Conflict of interest between Toberoff and the Siegel and/or Shuster heirs</u>:  Defendants have represented that Toberoff disclosed potential and actual conflicts of interest to the Siegels and the Shusters at various times in their relationships and the heirs executed conflict waivers.  This includes at the time of entering into the Pacific Pictures agreements, the IP Worldwide agreements, and the 2008 consent agreement.  Defendants have never produced these documents and refuse to identify where they are listed (if at all) on their logs.  This is a whole category of documents that needs carefully to be reviewed to ensure Toberoff is not hiding business communications among them.  And as you know, the terms of retention are not privileged and must be produced—even if documents need to be redacted to do that.

- <u>Drafts of the Pacific Pictures Agreements with the Shusters (2001 & 2003)</u>:  No drafts have ever been produced to DC nor has Toberoff identified where such drafts appear on defendants' privilege logs, if at all.

- <u>Drafts of the IP Worldwide agreements with the Siegels</u>:  No drafts have ever been produced to DC nor has Toberoff identified where such drafts appear on defendants' privilege logs, if at all.

- <u>Siegel Retainer Agreement</u>:  Defendants produced to DC a heavily redacted copy of the Siegels' October 2004 retainer agreement with Marc (LSL00213-20).  Toberoff claims the redactions relate to the provision of legal advice.  Yet, Laura testified at her deposition that the initial retainer agreement was amended shortly after it was executed to reflect that Mr. Emanuel's role had come to an end with the filing of the *Siegel* litigation.  Docket No. 305-24 at 807:16-814:7.  There is no basis to redact this purely business-related information.

In addition, the Siegel agreement is similar to the boilerplate form in *Rutter*.  *See* PAUL W. VAPNEK ET AL., CALIFORNIA PRACTICE GUIDE:  PROFESSIONAL RESPONSIBILITY FORM 5:C (2010).  Assuming that the redacted portions generally correspondence to the boilerplate *Rutter* form, the redactions would appear to be

O'MELVENY & MYERS LLP

August 7, 2012 - Page 25

overbroad. To the extent the redacted material includes provisions between the Siegels and Shusters, as well as their counsel, setting forth arrangements or agreements regarding settlement, such material should not have been redacted—such contractual arrangements are not privileged and are directly relevant to DC's claims in this case. *See* Docket No. 160 at 11:27-12:18; *Calvert v. Stoner*, 33 Cal.2d 97, 103 (1948) (agreement preventing settlement without attorney consent void); *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008) ("Only the client … may decide whether to make or accept an offer of settlement.").

It is incumbent upon KBK to review the Siegel agreement and verify the propriety of Toberoff's privilege claims. If the redacted contents do not reflect legal "advice given," but rather contractual arrangements, limitations on settlement, or other non-privileged material, such material must be produced to DC.

- <u>Shuster Retainer Agreement</u>: Defendants similarly produced a heavily redacted copy of the Shusters' 2004 retainer agreement with Marc (dated "As of November 23, 2001) (MWP00054-57). For the same reasons, it is incumbent upon KBK to review the Shuster agreement and verify the propriety of Toberoff's privilege claims.

- <u>Communications with David Michaels</u>: Toberoff identified for the first time in interrogatory responses and privilege logs provided to DC in January 2011, that Mr. Michaels communicated with the Siegels in late 2005 in an attempt to "steal" them as clients from Toberoff. Toberoff refused to produce the documents, claiming the communications were privileged despite that Mr. Michaels was no longer employed by Toberoff & Associates when the communications were sent and defendants accused Mr. Michaels of "disparaging" Marc in his communications. Toberoff represented that the communications were made in connection with Mr. Michaels' potential representation of the Siegels, and discussed their case. Judge Zarefsky denied DC's motion to compel the Michaels-Siegel communications based on Toberoff's representations concerning the privileged nature of the documents. Docket No. 262 at 4. As we have seen, Toberoff's representations cannot be trusted and you and/or the special master should review them, like the documents above and below.

- <u>May 13, 2003, letter</u>: When Toberoff produced the May 13 letter to DC, he redacted unidentified portions of it without explaining what had been redacted or why. The Court's order did not invite defendants to redact the May 13 letter and defendants waived any privilege that might otherwise have existed by not listing the document (in whole or as redacted) on a privilege log. *E.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005); *Vieste, LLC v. Hill Redwood Dev.*, 2010 WL 4807058, at *9 (N.D. Cal. Nov. 18, 2010).

When DC asked Toberoff to clarify the scope and basis for defendants' redactions, he would say only that the redacted material consisted or marginalia and underlining by

O'MELVENY & MYERS LLP
August 7, 2012 - Page 26

an unnamed attorney. This does not meet defendants' burden of proving the elements of a privilege claim, given, as they claim , they do not know who made the redacted notations, or when, or why. *See U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) ("The party asserting the privilege bears the burden of proving each essential element."); *Martin*, 278 F.3d at 999-1000 (laying out elements); *Williams v. Adams*, 2009 WL 1220311, at *7 (E.D. Cal. May 4, 2009).

KBK must review the unredacted copy of the May 13 letter and verify the redactions made by Marc are appropriate.

- <u>Agreements with Mr. Emanuel</u>: Defendants keep stating that Mr. Emanuel has no continuing financial interest in any recovery by the Siegel and/or Shuster heirs pursuant to their Superman and/or Superboy termination notices. What defendants refuse to answer is whether Mr. Emanuel retains an interest in monies received by Toberoff or his entertainment companies from this case, representation of the Siegel and/or Shuster heirs, or any contingent interest Toberoff has in Superman and/or Superboy rights.

    Defendants' recent disclosure that Mr. Emanuel was involved in the grand jury investigation of the Timeline author suggests he continues to retain an interest in Superman and/or this litigation. DC is entitled to discover what that financial interest is and the business arrangement between Mr. Emanuel and Toberoff.

*     *     *

Given the severity of defendants' discovery misconduct—and your refusal to directly acknowledge or remedy it—DC will have to ask the Court for significant relief. This includes appointing a special master to make sure all responsive documents are produced without delay, defendants' privilege logs are full and complete, legitimate privilege claims can be fully and fairly ventilated, and that the Court can remedy the significant prejudice defendants have caused.

Your claim that the Court has rejected DC's call for a special master is erroneous—DC has never moved to appoint a special master, and in any event, defendants' discovery misconduct plainly satisfies the "exceptional circumstances" required to appoint one. FED. R. CIV. P. 53(a).

As we have noted, and you have yet to agree to, the Renner Otto firm should also be asked to prepare a complete log of the electronic archive of Michael Siegel's file that lists all bibliographic information for each document in the file. DC has agreed to pay the reasonable costs for this work, and we can only hope you agree Renner Otto can proceed, since you made no objection in your July 20 letter.

Finally, if your firm makes a significant move in its position shortly, we will consider not filing the motion. Your July 20 letter and proposal is unacceptable, however, mainly because of its first premise—that no material, intentional, or prejudicial misconduct has occurred here. That position is neither sustainable under the facts of this case, nor the relevant case law.

**EXHIBIT M**
**144**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 27

                                        Very truly yours,

                                         /s/  Matthew T. Kline

                                        Matthew T. Kline
                                        of O'MELVENY & MYERS LLP

cc:     Daniel M. Petrocelli, Esq.
        Marc Toberoff, Esq.
        Defense Counsel

OMM_US:70812504.1

**EXHIBIT M**
**145**