Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
David Harris (State Bar No. 255557)
  dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Fax:            (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and as
personal representative of the Estate of
Joanne Siegel

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| DC COMICS,<br><br>                 Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                 Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*Motion; Declaration of Keith G. Adams; and [Proposed] Order filed concurrently herewith*<br><br>Complaint filed:   May 14, 2010<br>Discovery Cutoff:   None Set<br>Trial Date:            None Set<br><br>Date:     October 15, 2012<br>Time:     1:30 p.m.<br>Place:    Courtroom 11 |

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **Siegel and Shuster's Creation of Superman** | | |
| 1. | Author Jerome Siegel and illustrator Joseph Shuster co-created Superman in high school in 1933-34. | *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1102 (C.D. Cal. 2008). |
| 2. | On March 1, 1938, Siegel and Shuster signed an agreement with Detective Comics, defendant DC Comics' predecessor (the "1938 Grant"). | Declaration of Keith G. Adams ("AD"), Ex. A. |
| 3. | Under the 1938 Grant, Siegel and Shuster were paid $130 for the original Superman character and story. | AD Ex. A. |
| 4. | Superman became a cultural icon, and eventually spawned a multi-billion dollar franchise. | AD Ex. K. |
| **Siegel and Shuster's Lawsuits With DC** | | |
| 5. | In 1947, Siegel and Shuster filed suit against DC in Westchester N.Y. (the "1947 Action"). | AD Ex. B. |
| 6. | In the 1947 Action, Siegel individually claimed that DC had no right to publish Superboy and that Superboy belonged to him. | AD Ex. B at 13-18 ¶¶22-39. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 7. | In the 1947 Action, the Court found that DC owned all rights to Superman pursuant to the 1938 Grant. | AD Ex. C at 87 ¶1. |
| 8. | In the 1947 Action, the Court found that Siegel had developed Superboy on his own in 1938-40. | AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. |
| 9. | In the 1947 Action, the Court found that Siegel had independently submitted his Superboy script to DC. | AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. |
| 10. | In the 1947 Action, the Court found that DC had illegally published Superboy in *More Fun Comics, No. 101* and subsequent comics without Siegel's consent. | AD Ex. C at 83-86 ¶¶163-82. |
| 11. | The parties thereafter settled the 1947 Action. | AD Exs. D, E. |
| 12. | In 1969, Siegel and Shuster brought a federal suit over the ownership of the renewal copyright to Superman (the "1974 Action"). | Docket No. 49 ("FAC") at ¶46. |
| 13. | The 1974 Action resulted in the Second Circuit's decision in *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). | *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
| 14. | *Siegel*, 508 F.2d 909, held that DC owned all rights to Superman, including the renewal copyright, pursuant to the 1938 Grant. | *Siegel*, 508 F.2d at 912-913. |
| 15. | Consistent with the outcome of the 1947 Action and *Siegel*, 508 F.2d 909, DC for decades has based its chain-of-title to Superman on the 1938 Grant. | AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 550 ¶17. |
| **The 1975 Agreement** | | |
| 16. | DC deleted Siegel and Shuster's Superman credit byline (from 1947-1975) and references to them from its publications. | AD Ex. I. |
| 17. | Between 1947-1975, Siegel and Shuster slipped into obscurity and poverty. | AD Exs. F, G, I, K. |
| 18. | In 1975, the National Cartoonists Society and the Cartoonists Guild launched a public-relations campaign protesting DC's treatment of Siegel and Shuster. | AD Ex. G. |
| 19. | Thereafter, on December 23, 1975, Warner Communications, Inc. (DC's Parent), entered into an agreement with Siegel and Shuster (the "1975 Agreement"). | AD Ex. H. |
| 20. | The 1975 Agreement provided Siegel and Shuster with a modest pension. | AD Ex. H at 118. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 21. | The 1975 Agreement did not purport to transfer or re-transfer copyrights from Siegel and Shuster to DC. | AD Ex. H at 117 ¶2, 125 ¶7. |
| 22. | The 1975 Agreement provided Frank Shuster with a $5,000/year pension if he survived Joe Shuster. | AD Ex. H at 119. |
| **The Death of Joseph Shuster and the 1992 Agreement** | | |
| 23. | Joe Shuster died on July 30, 1992. | AD Exs. K, L. |
| 24. | Joe Shuster never served a notice of termination under 17 U.S.C. § 304(c). | FAC at ¶50. |
| 25. | Joe Shuster left no widow, child, or grandchild. | AD Exs. L, SS at 489:4-9. |
| 26. | Joe Shuster was survived by his siblings, Frank Shuster and Jean Peavy. | AD Ex. L; FAC at ¶51. |
| 27. | Joe Shuster's estate was not probated in 1992-93, as he died with few assets. | AD Ex. M. |
| 28. | On October 2, 1992, DC entered into a short agreement with Frank Shuster and Jean Peavy (the "1992 Agreement"). | AD Ex. O. |
| 29. | The 1992 Agreement reads, in full, as follows:<br><br>This is to confirm our agreement to pay you, collectively, a total of $25,000 a year, payable to Jean Shuster Peavy, commencing August 1, 1992, for as long as either one of you is alive. Such amounts shall be payable in accordance with Warner Communication Inc.'s customary payroll practice and shall be subject to all applicable withholding taxes. If Jean Shuster Peavy shall predecease Frank Shuster, then the | AD Ex. O. |

4
DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | foregoing payments shall be made to Frank Shuster for as long as he shall live.<br><br>We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon.  In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.<br><br>If, despite the terms of this agreement, either of you assert any such claim of right, for any reason, you agree to refund to us, upon the making of any such assertion, all amounts previously paid to you hereunder, and we will have no obligation to make any further payments under this agreement.  We also reserve all of our other rights, remedies and defenses in such an event.  If after full consideration of the foregoing, you accept and agree to all of the above, please so indicate by signing below where indicated. | |
| 30. | On the same day, October 2, 1992, Frank Shuster sent a letter to DC that read as follows:<br><br>In consideration of the agreement dated as of August 1, 1992 between DC Comics, myself and Jean Shuster Peavy, I hereby waive any rights or remedies that I may have under the agreement dated December 23, 1975 between Warner Communications Inc., Jerome Siegel and Joseph Shuster. | AD Ex. N. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 31. | Both before and after the 1992 Agreement, DC made it clear that Frank Shuster and Jean Peavy held no Superman rights under the Copyright Act. | AD Ex. Q. |
| 32. | DC denied periodic requests by Frank and Jean for increases in their pension. | AD Exs. P, Q, R. |
| 33. | DC granted certain requests by Frank and Jean for year-end "bonuses." | AD Exs. R, S, U, V, X, Y, AA. |
| 34. | The declaration of Paul Levitz, relied on by DC, does not describe the 1992 Agreement as a revocation or re-grant of Joe Shuster's 1938 Grant or any later Superman grants or suggest that this was ever the parties' intent. | AD Ex. YY. |
| 35. | The 1992 Agreement does not remotely resemble DC or Warner's customary rights agreements. | AD Exs. O, J, W, BB. |
| 36. | DC did not file the 1992 Agreement with the U.S. Copyright Office, even though it is DC's customary practice to record real copyright assignments. | AD at ¶54, Ex. T. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 37. | DC has consistently relied on the 1938 Grant for it chain-of-title to Superman, as the 1938 Grant was held in *both* the 1947 Action and the 1974 Action to have granted DC's predecessor all rights in Siegel and Shuster's Superman character and story. | AD Exs. C at 87, T, NN at 417-18 ¶38, OO at 439 ¶38, PP 448 ¶12, 450 ¶17; *Siegel*, 508 F.2d at 912-913. |
| 38. | The 1975 Agreement contained an express acknowledgment by Siegel and Shuster that DC already owned *all rights* to Superman. | AD Ex. H at 117 ¶2, 125 ¶7. |
| 39. | Outside of and before filing this lawsuit in 2010, attacking the Shuster Termination (described below), DC has not claimed or suggested that the 1992 Agreement is the basis for its chain-of-title to Superman. | AD Exs. T, NN at 417-18 ¶38, OO at 439  ¶38, PP at 448 ¶12, 450  ¶17, ZZ at 752-54. |
| 40. | Outside of and before filing this lawsuit in 2010, attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement revoked or extinguished the 1938 Grant or any other Superman grants by Joseph Shuster. | AD Exs. T, NN at 417-18 ¶38, OO at 439  ¶38, PP at 448 ¶12, 450  ¶17, ZZ at 752-54. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 41. | Outside of and before filing this lawsuit in 2010, attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement re-granted it Joseph Shuster's Superman copyrights. | AD Exs. T,  NN at 417-18 ¶38, OO at 439  ¶38, PP at 448 ¶12, 450  ¶17,  ZZ at 752-54. |
| 42. | DC's 2005 letter to Mark Warren Peary and Jean Adele Peavy, which discussed and offered to settle the 2003 Shuster Termination does not even mention the 1992 Agreement. | AD Ex. HH. |
| **The Establishment of the Shuster Estate** | | |
| 43. | Mark Warren Peary is Joe Shuster's nephew. | AD Ex. CC at 315. |
| 44. | On July 15, 2003, Mr. Peary petitioned the Los Angeles Superior Court to probate Joe Shuster's estate. | AD Ex. CC. |
| 45. | Joe Shuster's will nominated Jean Adele Peavy to be the executrix, and nominated Mr. Peary to be the executor of his estate in the event Jean declined to serve. | AD Ex. CC at 315. |
| 46. | Jean Adele Peavy, who was then 82 years old, declined to serve as executor of the estate of Joseph Shuster. | AD Ex. CC at 320-21. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
| 47. | On October 7, 2003, the Los Angeles Superior Court therefore appointed Mr. Peary as executor (the "Shuster Executor") of the estate of Joseph Shuster (the "Shuster Estate") in accordance with his will. | AD Ex. DD at 327. |
| 48. | The Shuster Executor's powers expressly included the "power … to terminate prior transfers of [Joseph Shuster's] copyrights pursuant to [17 U.S.C.] § 304(d)." | AD Ex. DD at 327. |
| **The Shuster Executor's Notice of Termination** | | |
| 49. | On or about November 10, 2003, the Shuster Executor served a notice of termination under 17 U.S.C. § 304(d) on DC as to Joe Shuster's grants of Superman copyrights (the "Shuster Termination"). | AD Ex. FF at 346-48. |
| 50. | Per 37 C.F.R. § 201.10(b)(1)(i), the Shuster Termination states that it is "pursuant to Section 304(d) of the United States Copyright Act (17 U.S.C. § 304(d))." | AD Ex. FF at 338. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
| 51. | Per 37 C.F.R. § 201.10(b)(1)(ii), the Shuster Termination lists the name of each grantee whose rights are being terminated, or the grantee's successor in title, and each address at which service of the notice is being made. | AD Ex. FF at 338-40. |
| 52. | Per 37 C.F.R. § 201.10(b)(1)(iii), the Shuster Termination lists the following works, their authors (Siegel and Shuster), and their original copyright registration numbers: *Action Comics, No. 1* (B379787), *No. 2* (B379788), *No. 3* (B385466), *No. 4* (B387907), *No. 5* (B394784), *No. 6* (B394866), *No. 7* (B399214); the previously unpublished works underlying such material; and the material reprinted in *Superman No. 1* (A299871) and *No. 3* (B443035). | AD Ex. FF at 340-42. |
| 53. | The relevant published works listed in the Shuster Termination secured statutory copyright between April 18, 1938 and October 25, 1938. | AD Ex. FF at 340-42. |
| 54. | Per 37 C.F.R. § 201.10(b)(1)(iv), the Shuster Termination lists the 1938 Grant and subsequent pre-1978 grants or potential grants to which it applies. | AD Ex. FF at 342-43. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
| 55. | Per 37 C.F.R. § 201.10(b)(1)(v), the Shuster Termination lists an effective termination date of October 26, 2013. | AD Ex. FF at 343. |
| 56. | Per 37 C.F.R. § 201.10(b)(1)(vi), the Shuster Termination accurately states the following: "No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304 (c) of the United States Copyright Act (17 U.S.C. §304(c))." | AD Ex. FF at 344. |
| 57. | Per 37 C.F.R. § 201.10(b)(1)(vii), the Shuster Termination lists Mark Warren Peary, the Shuster Executor, as the person executing the grant and the person entitled to exercise Joe Shuster's termination rights, and the basis for that entitlement. | AD Ex. FF at 344. |
| 58. | Per 37 C.F.R. § 201.10(c), the Shuster Termination was signed by Mark Warren Peary, the Shuster Executor, as owner of Joseph Shuster's entire termination interest, accompanied by his typewritten address. | AD Ex. FF at 344. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 59. | Per 37 C.F.R. § 201.10(d), the Shuster Termination was served by first-class mail and sent to addresses which, after a reasonable investigation, were found to be the last known address of the grantee(s) or successor(s) in title. | AD Ex. FF at 345-48. |
| 60. | The Shuster Termination was filed and recorded with the United States Copyright Office on December 8, 2003. | AD Ex. FF at 333-35. |
| **The Siegels' Notices of Termination and DC's Response** | | |
| 61. | In 1997, Joanne Siegel and Laura Siegel Larson served and filed notices of termination on DC as to Jerome Siegel's grants of Superman copyrights. | FAC at ¶67; AD Ex. II at 360. |
| 62. | On November 8, 2002, Joanne Siegel and Laura Siegel Larson served notices of termination on DC as to Jerome Siegel's Superboy copyrights. | FAC at ¶86. |
| 63. | Neither Mr. Peary nor Ms. Peavy have any interest in these Superboy notices of termination. | AD Exs. SS at 502-507, TT at 513-518. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
| | **The *Siegel* Litigation and Judgment** | |
| 64. | In November 2004, the Siegels, represented by Marc Toberoff, filed suit against DC as to Superman (C.D. Cal. Case No. 04-08400) and Superboy (C.D. Cal. Case No. 04-08776) (the "*Siegel* Litigation"). | |
| 65. | In the *Siegel* Litigation, the Court held that the Siegels' notices of termination concerning Superman were valid and effective as to Siegel and Shuster's original Superman story published in *Action Comics, No. 1*, and that the Siegels had thereby recovered Jerome Siegel's copyright interest in that Superman story published in *Action Comics, No. 1*. | *Siegel I*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008). |
| 66. | In 2009, the *Siegel* Court also decided whether Siegel and Shuster's Superman stories published in *Action Comics Nos. 2-7* were "works-for-hire." | *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel II*"), 658 F. Supp. 2d 1036 (C.D. Cal. 2009). |
| 67. | On May 17, 2011, in the *Siegel* Litigation, this Court entered a Rule 54(b) judgment that incorporated *Siegel I* and *Siegel II*. | AD Ex. QQ. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 68. | On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that "the 1975 Agreement was not a 'grant.'" | *Siegel I*, 542 F. Supp. 2d at 1133; AD Ex. WW. |
| 69. | On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that the May 21, 1948 "consent judgment" did not need to be listed on notices of termination. | *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW. |
| | **Overlap Between This Litigation and the *Siegel* Litigation** | |
| 70. | DC filed this lawsuit, against Joanne Siegel, Laura Siegel Larson, Mark Warren Peary and their counsel, Marc Toberoff, in May 2010. | Docket No. 1. |
| 71. | Sub-parts (a) and (c) of DC's Second Claim concern "work-for-hire" issues already decided in the *Siegel* Litigation, and which were incorporated in this Court's Rule 54(b) judgment. | FAC ¶¶153-54, 158-50; *Siegel I*, 542 F. Supp. 2d at 1126-1130; AD Ex. QQ. |
| 72. | Sub-parts (b), (d) and (e) of DC's Second Claim were also part of DC's counterclaims in the previously filed *Siegel* Litigation. | *Compare* FAC at ¶¶155-56, 160-62 , 163-64 *with* AD Ex. PP at ¶¶109-13, 118-20, 34. |
| 73. | DC's Fourth, Fifth and Sixth Claim are before the Ninth Circuit as part of the anti-SLAPP appeal. | AD Exs. WW, XX. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | **The Parties' Agreements** | |
| 74. | In November 2001, Ms. Peavy and Mr. Peary, as an individual, entered into an agreement (the "2001 PPC Agreement") with Pacific Pictures Corporation ("PPC"). | AD Ex. Z. |
| 75. | In October 2003, the Shuster Executor, and PPC entered into an agreement (the ("2003 PPC Agreement"). | AD Ex. EE. |
| 76. | In 2004, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed the cancellation of the 2001 and 2003 PPC Agreements. | AD Ex. GG. |
| 77. | The 2001 and 2003 PPC Agreements, and the 2004 cancellation, were voluntarily produced to DC in 2006 in the *Siegel* Litigation. | AD Ex. KK. |
| 78. | In 2006 in the *Siegel* Litigation, DC took deposition testimony regarding the 2001 and 2003 PPC Agreements. | AD Exs. LL at 385-402 , JJ at 369-381. |
| 79. | In a 2011 letter, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed their intent that PPC have no continuing interest whatsoever when they revoked the PPC Agreements in 2004. | AD Ex. UU. |

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 80. | In 2008, during the *Siegel* Litigation, an agreement was entered into by Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy regarding settlement negotiations with DC (the "2008 Agreement"). | AD Exs. SS at 490-499,  TT at 511-512. |
| 81. | As alleged by DC, the 2008 Agreement requires the consent of the parties thereto to any settlement of their recaptured copyrights with DC. | FAC at ¶188. |
| 82. | Magistrate Judge Zarefsky rejected DC's arguments that the 2008 Agreement constitutes "an independent wrong [that] violates the Copyright Act," and found, instead, that it is a legitimate "Drysdale-Koufax collective approach to negotiation." | Docket No. 209 at 6-8. |
| 83. | This Court upheld Magistrate Zarefsky's ruling as to the 2008 Agreement. | Docket No. 252. |

## CONCLUSIONS OF LAW

1.      Summary judgment should be granted in Defendants' favor on DC's First Claim for Relief.  The Shuster Termination fully satisfied the statutory and regulatory requirements for termination under 17 U.S.C. §§ 304(c)-(d) and 37 C.F.R. § 201.10, and is valid as a matter of law.

a.      Part (1) of DC's First Claim (FAC ¶¶107-11), which alleges that the Shuster Executor did not hold a termination right under 17 U.S.C. §304(d), fails as a matter of law.

16

The Shuster Executor "own[s] the author's entire [§ 304(d)] termination interest" under a plain reading of 17 U.S.C. § 304(c)(2)(D) because Joseph Shuster left no widow, child and grandchild, and his termination rights under section 304(c) had not been exercised and expired before October 27, 1998, the effective date of the Copyright Term Extension Act.  Pub. L. 105-298 (1998); 17 U.S.C. § 304(d); 67 Fed. Reg. 69134, 69135; *Stewart v. Abend*, 495 U.S. 207, 212 (1990).

   b.    Part (2) of DC's First Claim (FAC ¶¶112-17), which alleges that the 1992 Agreement bars termination fails as a matter of law.

DC already owned Siegel and Shuster's Superman copyrights through the 1938 Grant and subsequent grants.  *Siegel v. Nat'l Periodical Publications, Inc.,* 508 F.2d 909, 912-913 (2d Cir. 1974).  Joseph Shuster's siblings Frank Shuster and Jean Peavy, who signed the 1992 Agreement, have never held any termination rights under the Copyright Act.  17 U.S.C. § 304(c)(2).  In 1992, no one held Joseph Shuster's termination rights, because Shuster left no widow, child or grandchild, and it was not until 1998 that the Copyright Term Extension Act, extended termination rights to the executor of an author's estate.  Pub. L. 105-298; 17 U.S.C. § 304(c)(2)(D).

The 1992 Agreement did not revoke and re-grant Joseph Shuster's 1938 Grant or any other prior Superman copyrights grants to DC under governing law, because (i) it contains *no* express revocation or re-grant language; (ii) it does not identify or purport to replace Joseph Shuster's prior Superman grants; (iii) it was not negotiated by anyone with a termination right and/or within an open termination window, and (iv) therefore, the termination right was not and could not be used as leverage to achieve "the very result envisioned by Congress" – market value for Joseph Shuster's Superman copyrights.  *See Milne v. Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008).

Even if the Court applied New York law, the 1992 Agreement was not a revocation, re-grant or novation.  *See Duane Reade, Inc. v. St. Paul Fire & Marine*

17

*Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (unambiguous contractual language interpreted as a matter of law); *Citibank, N.A. v. Benedict*, 2000 WL 322785, at *8 (S.D.N.Y. Mar. 27, 2000) ("[A]ll parties must have 'clearly expressed their intention that a subsequent agreement … [be] substituted for an old agreement'"); *Wang v. Chen*, 1992 WL 7840 at *6  (S.D.N.Y. Jan. 10, 1992) ("[A] novation must never be presumed.").

Finally, even if the 1992 Agreement were viewed as a novation, it would only novate the 1975 Agreement, which did not grant DC any Superman copyrights, and acknowledged that DC already owned all rights to Superman.  *See Davimos v. Halle*, 60 A.D.3d 576, 577 (2009); *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1133 (C.D. Cal. 2008).

c.     Part (3) of DC's First Claim (FAC ¶¶118-24) that the Shuster Executor lacked the requisite majority interest for termination fails as a matter of law.

The Shuster Executor's termination right was not and could not be transferred to PPC or anyone else.  *See* 17 U.S.C. § 304(c)(2)(A)-(D); 17 U.S.C. §304(c)(6)(D).

d.     Part (4) of DC's First Claim (FAC ¶¶125-28), which alleges that the Shuster Termination is invalid because it failed to list (i) a May 21, 1948 consent judgment ("1948 Judgment") and (ii) the 1992 Agreement, fails as a matter of law.

The 1992 Agreement was not a Superman copyright "grant," as set forth above.  The 1948 Judgment also was not a Superman copyright "grant," as held by this Court in a ruling, incorporated in a Rule 54(b) judgment that is binding upon DC. *Siegel I*, 542 F. Supp. 2d at 1131-32; *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987).

e.     Part (5) of DC's First Claim (FAC ¶¶129-33), alleging that purported "unclean hands" bar the Shuster Termination, fails as a matter of law.

That PPC is not listed in the Shuster Termination does not constitute "unclean hands," because PPC held no termination right or interest under the Copyright Act. *See* 17 U.S.C. §304(c)(6)(D); *Shady Records, Inc. v. Source Enterprises, Inc.*, 2004

18

U.S. Dist. LEXIS 26143, at *28–*32 (S.D.N.Y. January 3, 2005).

The Shuster Executor's decision not to terminate Superboy also does not constitute "unclean hands" because (i) Superboy is not subject to termination under 17 U.S.C. § 304(d) as a matter of law because it first secured statutory copyright by publication in 1944; (ii) preclusive findings in the 1947 Action held that Siegel alone was the original creator and owner of Superboy; (iii) termination is wholly discretionary (17 U.S.C. §§ 304(c)-(d)); and (iv) the "litigation strategy" alleged by DC is not a basis for "unclean hands." *Sears, Roebuck & Co. v. Sears PLC*, 744 F. Supp. 1297, 1310 (D. Del. 1990).

2.    Summary judgment should be granted in Defendants' favor on sub-parts (a) and (c) of DC's Second Claim for Relief (FAC ¶¶135-64) because these issues were already adjudicated in the *Siegel* Litigation, and such findings bind DC here under the issue preclusion/collateral estoppel doctrine. *See Brown v. Dunbar*, 376 Fed. Appx. 786, 787 (9th Cir. 2010).

3.    Summary judgment should be granted in Defendants' favor on DC's Third Claim for Relief (FAC ¶¶165-73).  DC does not have any "right" of negotiation under the plain wording of 17 U.S.C. § 304(c)(6)(D). *See Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987); 3 *Nimmer* § 11.08[A], n.6 (2010); 3 *Patry on Copyright* § 7:47.  Because DC has no "right" under § 304(c)(6)(D),  it lacks standing to bring this claim. *See* 6 *Patry* § 21:18, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Moreover, DC's Third Claim is time-barred by the applicable three-year statute of limitations, since it is allegedly based on the text of the PPC Agreements that DC received in 2006, and DC did not file suit until 2010.  17 U.S.C. § 507(b).

4.    The above conclusions constitute the "ultimate disposition" of DC's entire First and Third Claims, and there is "no just reason" to delay appellate review. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980).  "The Ninth Circuit embraces a 'pragmatic approach [to Rule 54(b)] focusing on severability [of

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

claims] and efficient judicial administration.'" *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). As such, entry of judgment under F.R.C.P. 54(b) on the First and Third Claims is appropriate.

5.    Since the Fourth through Sixth Claims are stayed pending appeal, a stay of the remainder of this litigation would serve the interests of judicial economy and is within the Court's sound discretion. *See Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997); *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

Dated:  August 20, 2012         RESPECTFULLY SUBMITTED,
                                /s/ Marc Toberoff
                                _____

                                TOBEROFF & ASSOCIATES, P.C.
                                Attorneys for Defendants Mark Warren Peary *et al.*

DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW