EXHIBIT 24

U. S. Dist. Court
S. D. of N. Y.
APR  6 1939

Detective Comics, Inc.
480 Lexington Avenue
New York, N. Y.

I, the undersigned, am an artist or author and
have performed work for strip entitled "SUPERMAN"

In consideration of $150.00 agreed to be paid me
by you, I hereby sell and transfer such work and strip, all
good will attached thereto and exclusive right to the use of
the characters and story, continuity and title of strip contained
therein, to you and your assigns to have and hold forever and to
be your exclusive property and I agree not to employ said
characters or said story in any other strips or sell any like
strip or story containing the same characters by their names
contained therein or under any other names at any time hereafter
to any other person, firm or corporation, or permit the use
thereof by said other parties without obtaining your written
consent therefor.  The intent hereof is to give you exclusive
right to use and acknowledge that you own said characters or
story and the use thereof, exclusively./ I have received the
above sum of money.

Accepted:

DETECTIVE COMICS, INC.

By

Confidential

WB005794

**Exhibit A**

7

SUPREME COURT : WESTCHESTER COUNTY
- - - - - - - - - - - - - - - - - - - x
JEROME SIEGEL AND JOSEPH SHUSTER,

                  Plaintiffs,

     - against -

NATIONAL COMICS PUBLICATIONS, INC.,
INDEPENDENT NEWS CO., INC., THE MC
CLURE NEWSPAPER SYNDICATE, HARRY
DONENFELD, JACOB LIEBOWITZ, and
PAUL H. SAMPLINER, and WAYNE BORING,
                  Defendants.

- - - - - - - - - - - - - - - - - - x

         Plaintiffs, by their attorneys, SLONIM, WEKSTE
& FRIEDMAN, for their complaint, respectfully show to the
court and allege:-

### FOR A FIRST CAUSE OF ACTION

         FIRST:  That the defendant, NATIONAL COMICS
PUBLICATIONS, INC., was and still is a domestic corporatio
duly organized and existing under and by virtue of the law
of the State of New York.

         SECOND:  That the defendant, INDEPENDENT NEWS
CO., INC., was and still is a domestic corporation duly or
ganized and existing under and by virtue of the laws of th
State of New York.

         THIRD:  That the defendant, THE MC CLURE NEWS-
PAPER SYNDICATE was and still is a domestic corporation du
organized and existing under and by virtue of the laws of
the State of New York.

         FOURTH:  That Detective Comics, Inc. was a cor
poration duly organized and existing under and by virtue o
the laws of the State of New York.

         FIFTH:  Upon information and belief Superman,I
was a corporation duly organized and existing under and by
virtue of the laws of the State of New York and that the
said corporation was organized by Detective Comics, Inc.
and the defendants, HARRY DONENFELD, JACOB LIEBOWITZ and
PAUL H. SAMPLINER, and at all the times hereinafter mentio

                 (1)

000000192

the officers and directors of Superman, Inc. were the same persons who were the officers and directors of Detective Comics, Inc., and that all facts known to Detective Comics Inc., were known to Superman, Inc. and that at all times hereinafter mentioned Superman, Inc. was completely controlled by Detective, Comics, Inc. and the defendants, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER.

SIXTH: That on or about the 22nd day of September, 1938, for a valuable consideration Detective Comics, Inc., and the defendant, THE MC CLURE NEWSPAPER SYNDICATE, entered into a contract in writing with the plaintiffs, a true copy of which is hereto annexed and marked Exhibit "A and made part of this complaint as if here incorporated at length.

SEVENTH: That on or about the 19th day of December, 1939, for a valuable consideration, Detective Comics Inc. entered into an agreement with the plaintiffs to modify the contract hereinabove set out in paragraph "SIXTH" and whereby the said contract was modified, and the said agreement was in writing and a true copy of the same is hereto annexed and marked Exhibit "B" and made part of this complaint as if here incorporated at length.

EIGHTH: That on or about August 30, 1943, Detective Comics, Inc. did notify each of the plaintiffs in writing of its election to extend the existence of the contract hereinabove set forth according to the terms thereof for an additional five year period from September 22, 1943, of which said notices in writing true copies are hereto annexed, marked Exhibit "C" and "D" and made part of this complaint as if here incorporated at length.

NINTH: Upon information and belief, that the defendant, THE MC CLURE NEWSPAPER SYNDICATE, did notify Detective Comics, Inc. of its election to extend for five years from June 1, 1944, its participation in the contract herein

(2)

above set forth according to the terms thereof.

TENTH: That on or about June 21, 1943, Detect Comics, Inc. for a valuable consideration did enter into agreement with the plaintiffs whereby the contract herein above set forth was modified, in that in place of the rs of compensation therein provided for material furnished by the plaintiffs and accepted by Detective Comics, Inc., fo magazine publication, as previously modified from time to time theretofore, the said Detective Comics, Inc. agreed pay to each of the plaintiffs five hundred ($500.00) doll for each group of cartoon strips and continuity, of the s and nature known in the comic magazine trade as a "releas

ELEVENTH: That heretofore and on or about Jun 21, 1943, Detective Comics, Inc., for a valuable consider tion entered into an agreement with the plaintiffs whereb the contract hereinabove set forth was modified so as to provide that in the event that the plaintiffs or either of them should for any reason be unable to supply continuity or cartoons or to supply sufficient continuity or cartoons for the requirements of Detective Comics, Inc., in magazine publication, and Detective Comics, Inc., should hire write or artists or both, for the above reason or any other reas to supply continuity or cartoons or both relating to certo features of which the plaintiffs are or were the originato the said Detective Comics, Inc. would pay to the plaintiff the current agreed compensation per release paid to the plaintiffs for material completely furnished by the plain- tiffs, less a fixed amount agreed upon to be applied as compensation for artists or writers hired by the said Detec tive Comics, Inc. to supply material as above, the said fi: sum being one hundred ($100.00) dollars per release for cor tinuity and one hundred fifty ($150.00) dollars per release for cartoons.

TWELFTH: That the plaintiffs have duly performe

(3)

**Exhibit B**
**10**

000000194

all the terms and conditions of the contract hereinabove set forth and each and every obligation on their part to performed.

THIRTEENTH: That the plaintiffs are the exclus originators and authors of the cartoon character "Superma and of the title Superman and first created cartoon mater in which the said character and title first appeared in 1 and have created such cartoon material ever since, and th the plaintiffs are the authors and originators of all of other cartoon characters which have appeared in the carto strip entitled Superman , chief among which are "Superman' also known as "Clark Kent", "Lois Lane"and "Perry White" that the plaintiffs are universally and in the various na tions of the world known to the public as the authors and creators of all cartoon material in which the character "Superman" appears and of the character "Superman" and of all other cartoon characters which appear and have appeare in cartoons entitled Superman.

FOURTEENTH: That Detective Comics, Inc., Super man, Inc. and the defendants have, since the execution and delivery of the contract hereinabove set forth, published, sold and distributed, and are now publishing, selling and distributing to the public in large volume serially in mont ly and bi-monthly magazines and in the daily press numerou comic strips other than Superman in which the conception, characters, idea, plot and action are deliberate imitation of the character and conception of Superman and of the plo and actionof comic or cartoon strips in which Superman ap pears and has appeared, and that the said comic strips pub lished in imitation of Superman are entitled Batman, Super boy, Lois Lane, Girl Reporter, Johnny Quick, The Flash, Green Lantern, Aquaman, Airwaive, and there are many other and that the defendants have not engaged the plaintiffs to write the continuity or draw the cartoons for any of the sa

(4)

000000195

comic strips other than Superman, and have not paid plain-
tiffs anything on account of the sale of the said various
comic strips and have not permitted the plaintiffs to share
the profits thereof, except that the plaintiff, JOSEPH
SHUSTER, has created certain cartoon material for the comic
strip Superboy and has been paid therefor.

FIFTEENTH:  That the publication of the said
divers comic strips other than Superman is publication in
direct competition with Superman and the publication of the
said comic strips has lessened and will continue to lessen
the market for the plaintiffs' comic strip Superman.

SIXTEENTH:  That the said publication by Detective
Comics, Inc. and Superman, Inc. and the defendants of the
various comic strips in close and deliberate imitation of
Superman as herein set forth did divert and is now diverting
from the plaintiffs revenue and profits belonging to them as
the authors and originators of Superman and belonging to them
under the contract hereinabove set forth and that the said
diversion of profits was in violation of the duty of the de-
fendant, THE MC CLURE NEWSPAPER SYNDICATE, and of Detective
Comics, Inc. under the contract to sell and distribute the
comic strip Superman for the mutual benefit of the plaintiffs
and the said defendant and the said Detective Comics, Inc.,
and is in violation of the relationship of trust existing
between the plaintiffs and the said defendant, THE MC CLURE
NEWSPAPER SYNDICATE, and the said Detective Comics, Inc.
arising out of the contract hereinabove set forth.

SEVENTEENTH:  That heretofore and on or about the
1st day of October, 1946, Detective Comics, Inc.,All Ameri-
can Comics, Inc., Superman, Inc., Jolaine Publications, Inc.,
wonderwoman Publishing, Inc., Hop Harrigan Enterprise, Inc.,
Gainlee Publishing Co., Inc., J. R. Publishing Co., Inc.,
Worlds Best Comics, Inc., Trafalgar Printing Co., Inc., duly
consolidated into a single corporation pursuant to the provi-
sions of Sections 85 to 90 of the Stock Corporation Law of the

(5)

000000196

State of New York, the same being the defendant, NATIONAL COMICS PUBLICATIONS, INC.

EIGHTEENTH: That the defendant, NATIONAL COMIC: PUBLICATIONS, INC. from the 1st day of October, 1946, did continue the wrongful publication, sale and distribution theretofore carried on by Detective Comics, Inc. and Super man, Inc. of the various comic strips in violation of the rights of the plaintiffs as heretofore alleged, and is at present carrying on the said wrongful publication, sale and distribution and threatens to carry on the same in the future.

NINETEENTH: That the acts of Superman, Inc., De tective Comics, Inc., and the defendants as hereinabove se forth have caused, and are causing and will hereafter cont ue to cause the plaintiffs irreparable loss, injury and da mage for which the plaintiffs have no adequate remedy at l

### FOR A SECOND CAUSE OF ACTION

TWENTIETH: Plaintiffs repeat and reallege each every allegation contained in the paragraphs of this compla marked, "FIRST", "SECOND", "THIRD", "FOURTH", "FIFTH", "SI: "SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH "THIRTEENTH" and "SEVENTEENTH" as if they were herein full; set forth, and incorporate the same in this second cause o; action.

TWENTY-FIRST: That the defendants, HARRY DONENFE JACOB LIEBOWITZ, PAUL H. SAMPLINER and INDEPENDENT NEWS CO. INC., at all times herein mentioned had due notice andknowl edge of aforesaid agreement between the plaintiffs and the Detective Comics, Inc., and the defendant, THE MC CLURE NEW PAPER SYNDICATE, and of all modifications thereof, as the said contract and modifications are hereinabove set forth.

TWENTY-SECOND: That heretofore and after the tim of the execution of the contract hereinabove set forth, the defendants, HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H. SAM- PLINER and INDEPENDENT NEWS CO.INC., conspired together wit

(6)

000000197

each other and with Detective Comics, Inc., Superman, Inc. and THE MC CLURE NEWSPAPER SYNDICATE, and entered into an agreement wrongfully, corruptly and maliciously to injure the plaintiffs by depriving them of their rights under the contract as hereinabove set forth and to interfere with, hinder and impair the performance of the said contract by the said Detective Comics, Inc., and THE MC CLURE NEWSPAPER SYNDICATE.

TWENTY-THIRD:  That pursuant to the said wrongful corrupt and malicious conspiracy the said defendants, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER did induce the said Detective Comics, Inc., Superman, Inc., and THE MC CLURE NEWSPAPER SYNDICATE wrongfully to publish, sell and distribute to the public the comic strips, Batman, Superboy, Lois Lane, Girl Reporter, Johnny Quick, The Flash, Green Lantern, Aquaman, Airwave and many others, as herein above set out, and did procure and induce the defendant, INDEPENDENT NEWS CO., INC., to market, advertise and distribute the said comic strips in violation of the rights of the plaintiffs, and that all of the said defendants did advertise and represent to the public that the said comic strips published in derogation of the plaintiffs' rights, were the same as the plaintiffs' comic strip Superman, and did deceive the public thereby, and did market the said comic strips in competition with the said comic strip Superman.

TWENTY-FOURTH:  That the acts of Detective Comics, Inc., Superman, Inc., and the defendants as aforesaid have caused and are causing, and will hereafter continue to cause the plaintiffs irreparable loss, injury and damage for which the plaintiffs have no adequate remedy at law.

## FOR A THIRD CAUSE OF ACTION

TWENTY-FIFTH:  Plaintiffs repeat and reallege each and every allegation contained in the paragraphs of this complaint

(7)

000000198

plaint marked "FIRST", "FOURTH", "FIFTH", "SIXTH", "SEVEN
"EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIR-
TEENTH" and SEVENTEENTH" with the same force and effect as
if they were herein fully set forth, and incorporate the
in this third cause of action.

TWENTY-SIXTH:  That during the year 1938 and after
the execution and delivery of the contract hereinabove set
forth the plaintiff, SIEGEL, pursuant to the terms of the
said contract delivered to Detective Comics, Inc., for its
consideration a scenario or synopsis containing the con-
tinuity plan and dialogue for the first "release" of a new
comic strip known as Superboy.

TWENTY-SEVENTH:  That the said synopsis contained
within itself the entire plan for the future publication of
the said comic strip Superboy, and the conception of the
character, Superboy, all set forth with detail and particu-
larity.

TWENTY-EIGHTH:  That Detective Comics, Inc., did
not within six weeks indicate its election to publish the
said comic strip Superboy, as required by the contract her
inabove set forth.

TWENTY-NINTH:  That Detective Comics, Inc. on or
about December 2, 1938, by its letter in writing to the
plaintiffs did declare that it elected not to publish the
said comic strip Superboy under the terms of the contract
hereinabove set forth.

THIRTIETH:  That thereafter and during January, 19
Detective Comics, Inc., did publish without the consent of
the plaintiff, SIEGEL, a certain comic strip release entitl
Superboy, which release was based entirely upon the synops
submitted to the said Detective Comics, Inc., by the plain
tiff, SIEGEL, and contained in detail the same characters,
incidents and plot.

THIRTY-FIRST:  That from January, 1945, until Oc-
tober, 1st, 1946, the said Detective Comics, Inc., without
the consent of the plaintiff, SIEGEL, did publish serially

(8)

000000199

sell and distribute numerous releases of a comic strip en
titled Superboy, which said serial comic strip appeared o
monthly in magazines until February, 1946, and monthly
thereafter, which said comic strip did use and was based
upon the conception and idea as submitted in writing and
detail by the plaintiff, SIEGEL, and submitted as aforesa

THIRTY-SECOND:  That from October 1, 1946, until
the present, the defendant, NATIONAL COMICS PUBLICATIONS,
INC., did without the consent of the plaintiff, SIEGEL,
publish serially in monthly magazines and sell and distri-
bute numerous releases of the said comic strip Superboy in
violation of the rights of the plaintiff, SIEGEL, as afore
said, and the defendant does propose to and will continue
in the future to publish numerous releases of the said cor
strip Superboy.

THIRTY-THIRD:  That the plaintiff, SIEGEL, has
never consented to the publication of the said comic strip
Superboy, as aforesaid, and has never been paid, received
accepted anything of value or consideration therefor.

THIRTY-FOURTH:  That the acts of Detective Comics
Inc., and the defendants as aforesaid have caused, and are
causing, and will hereafter continue to cause the plaintif
SIEGEL, irreparable loss, injury and damage for which the
plaintiffs have no adequate remedy at law.

FOR A FOURTH CAUSE OF ACTION

THIRTY-FIFTH:  Plaintiffs repeat and reallege eac
and every allegation contained in the paragraphs of this
complaint marked "FIRST, "FOURTH", "FIFTH", "SIXTH",
"SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFT
"THIRTEENTH", and "SEVENTEENTH", with the same force and e
fect as if they were herein fully set forth, and incorpora
the same in this fourth cause of action.

THIRTY-SIXTH: That Detective Comics, Inc. from
January 1945 until October 1, 1946, did without the consen

(9)

000000200

**Exhibit B**   51

**16**

the plaintiff, SIEGEL, publish serially, sell and distribu
numerous releases of a comic strip entitled Superboy, whic
said serial comic strip appeared bi-monthly in magazines u
til February,1946 and monthly thereafter and that the prin
pal character of the said comic strip was represented to b
Superman as a child, and whose plot, conception and incide
were based upon and copied from the plot, conception and i
cidents of the plaintiff's comic strip Superman and that t
said Detective Comics, Inc. did intend by the said publica
tion to deceive the public and did by the said publication
deceive the public in that the public was led to believe
that the plaintiff, SIEGEL, was the author of the continui
dialogue and action of each of the individual releases of
the said comic strip whereas in truth the plaintiff, SIEGE
was not the author of each of the individual releases and
not invited nor permitted by the said Detective Comics, In
to create the continuity for each of the individual release

THIRTY-SEVENTH: That Detective Comics, Inc. from
May 1945 until October 1, 1946 did, without the consent of
the plaintiff, SIEGEL, as aforesaid, publish, sell and dis-
tribute the said comic strip Superboy and did affix to the
individual releases of the said comic strip the name of the
plaintiff, SIEGEL, as author of the said releases, and that
the said Detective Comics, Inc. did represent to the public
and advertise that the plaintiff, SIEGEL, was the author of
the individual releases of the said comic strip Superboy whe
as in truth and in fact the plaintiff, SIEGEL, was not the
author of the individual releases of the said comic strip a
was not invited nor permitted by the said Detective Comics,
Inc. to create the continuity for said individual releases.

THIRTY-EIGHTH: That thereafter from October 1, 1
to the present the wrongful publication, sale and distribu-
tion of monthly magazine releases of the said comic strip
Superboy as aforesaid were continued by the defendant,
NATIONAL COMICS PUBLICATIONS, INC., in violation of the

(10)

000000201

plaintiff, SIEGEL, and with intent to injure the said plai
tiff; and that the said defendant, by its publication of t
said comic strip Superboy, which it represented to be
Superman as a child, and by its affixing to the said indiv
dual releases of the said comic strip the name of the plai
tiff, SIEGEL, as author, when in fact the said plaintiff w
not the author of the said releases, did deceive the publi
to the grave and irreparable injury of the plaintiff, SIEG
and that the said defendant is continuing and proposes to
continue in the future to so deceive the public to the inj
of the plaintiff, SIEGEL.

THIRTY-NINTH:  That the acts of Detective Comi
Inc. and the defendants as aforesaid have caused, and are
causing, and will hereafter continue to cause the plaintif
SIEGEL, irreparable loss, injury and damage, for which the
plaintiffs have no adequate remedy at law.

### FOR A FIFTH CAUSE OF ACTION

FORTIETH:  Plaintiffs repeat and reallege as
part of this cause of action each and every allegation con-
tained in paragraphs marked "FIRST", "THIRD", "FOURTH",
"FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH", "TENTH",
"ELEVENTH", "TWELFTH", "THIRTEENTH" and "SEVENTEENTH" of tl
complaint, and like effect as if herein fully realleged and
plaintiffs incorporate herein all the facts therein set fo:

FORTY-FIRST:  That Superman, Inc., Detective
Comics, Inc., and the defendants, THE MC CLURE NEWSPAPER
SYNDICATE, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H.
SAMPLINER, with full knowledge of the rights of the plainti
under the contract hereinabove set forth, and with malice a
intent to deprive the plaintiffs of their rights under the
said contract did from the latter part of 1943 until October
1, 1946, without the consent of the plaintiffs, publish
serially, sell and distribute in monthly and bi-monthly maga
zines and in the daily press numerous releases of a comic
strip entitled Lois Lane, Girl Reporter and that the princi

(11)

000000202

**Exhibit B**
**18**

pal characters of the said cartoon were and are Clark Ken

also known as Superman, Lois Lane, and Perry White, all o

which characters are the chief characters in the plaintiff

comic strip Superman as is hereinabove set forth, and tha

the plot, conception and incidents presented in the said

comic strip Lois Lane, Girl Reporter were and are based u

copied and taken from the comic strip originated and crea

by the plaintiffs, known as Superman, and that the said

Superman, Inc., Detective Comics, Inc., and the defendants

THE MC CLURE NEWSPAPER SYNDICATE, HARRY DONENFELD, JACOB

LIEBOWITZ and PAUL H. SAMPLINER did intend by the said pu-

blication to deceive the public and did by said publicatic

deceive the public in that the public was led to believe

that the plaintiffs were the authors and creators of the c

tinuity, dialogue and action of each of the individual re-

leases of the said comic strips, whereas in fact and in tr

the plaintiffs were not the authors of each of the individu

releases, and the plaintiffs were not invited nor permitte

by the said Superman, Inc. or the defendants, THE MC CLURE

NEWSPAPER SYNDICATE, HARRY DONENFELD, JACOB LIEBOWITZ and

PAUL H. SAMPLINER to create the said individual releases.

FORTY-SECOND:  That Superman, Inc., Detective

Comics, Inc. and the defendants, THE MC CLURE NEWSPAPER

SYNDICATE, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H.

SAMPLINER from the latter part of 1943 until October 1, 194

did, without the consent of the plaintiffs, publish, sell

and distribute the said comic strip Lois Lane, Girl Reporte

and did affix to the individual releases thereof the names

of the plaintiffs as authors of the said releases, and the

said Superman, Inc., Detective Comics, Inc., and the defen-

dants, THE MC CLURE NEWSPAPER SYNDICATE, HARRY DONENFELD,

JACOB LIEBOWITZ and PAUL H. SAMPLINER did represent to the

public and advertise that the plaintiffs were the authors

of the individual releases of the said Lois Lane, Girl Re-

porter, whereas in truth and in fact the plaintiffs were not

(12)

000000203

authors of the individual releases as heretofore set forth.

FORTY-THIRD:  That thereafter and from October 1, 1946, to the present the wrongful publication, sale and distribution of further releases of the said Lois Lane, Girl Reporter, were continued by the defendants, NATIONAL COMIC PUBLICATIONS, INC., THE MC CLURE NEWSPAPER SYNDICATE, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, in violation of the rights of the plaintiffs as aforesaid and with intent to injure the said plaintiffs; and that the said defendants, by their publication of the said releases of the said comic strip in close imitation of the plaintiffs' comic strip Superman, and by affixing to the said releases the names of the plaintiffs as authors thereof, when in fact the plaintiffs were not the authors thereof, did deceive the public to the grave and irreparable injury of the plaintiffs and that the said defendants are continuing and propose to continue in the future to so deceive the public to the injury of the plaintiffs.

FORTY-FOURTH:  That the acts of the said defendants and of Detective Comics, Inc., and Superman, Inc., has caused and are causing and will hereafter continue to cause the plaintiffs irreparable loss, injury and damage, for which the plaintiffs have no adequate remedy at law.

### FOR A SIXTH CAUSE OF ACTION

FORTY-FIFTH:  Plaintiffs repeat and reallege as part of this cause of action each and every allegation contained in paragraphs marked "FIRST", "FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH" and "SEVENTEENTH" of the complaint, with like effect as if herein fully realleged, and plaintiff incorporate herein all the facts therein set forth.

FORTY-SIXTH:  From July 1, 1943, to the present Detective Comics, Inc., published in magazines 120 releases of the comic strip Superman for which the plaintiff, SIEGEL did not create the continuity.

(13)

000000204

FORTY-SEVENTH:  That the said Detective Comics, Inc., has paid to the plaintiff, SIEGEL, the sum of $200. per release although there was due and owing under the contract above set forth the sum of $400.00 per release.

FORTY-EIGHTH:  That though the plaintiff, SIEG: has duly demanded payment of the said additional sums of $200.00 per release, the said Detective Comics, Inc., and the defendant, NATIONAL COMICS PUBLICATIONS, INC., have neglected to and refuse to pay any portion of the said sums.

## FOR A SEVENTH CAUSE OF ACTION

FORTY-NINTH:  Plaintiffs repeat and reallege as part of this cause of action each and every allegation contained in paragraphs marked "FIRST", "FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH," "TENTH", "ELEVENTH" TWELFTH", THIRTEENTH", and "SEVENTEENTH" of the complaint, with like effect as if herein fully realleged, and plaintiffs incorporate herein all the facts therein set forth.

FIFTIETH:  From July 1, 1943 to the present, Detective Comics, Inc., published in magazines 130 releases of the comic strip Superman for which the plaintiff, SHUSTER, did not create the "art work".

FIFTY-FIRST:  That the said Detective Comics, Inc., has paid to the plaintiff, SHUSTER, the sum of $150.0 per release for 80 of the said releases and the sum of $200.00 for the remaining 50 of the said releases although there was due and owing under the contract hereinabove set forth the sum of $350.00 per release.

FIFTY-SECOND:  That although the plaintiff, SHUSTER, has duly demanded payment of the additional sums due under the said contract, the said Detective Comics, Inc and the defendant, NATIONAL COMICS PUBLICATIONS, INC. have neglected to and refuse to pay any portion of the said sums

(14)

000000205

**Exhibit B
21**

## FOR AN EIGHTH CAUSE OF ACTION

FIFTY-THIRD:  The plaintiffs repeat and reallege as part of this cause of action each and every allegation contained in paragraphs marked "FIRST", "FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH" "TWELFTH", "THIRTEENTH" and "SEVENTEENTH" of the complaint with like effect as if herein fully realleged and plaintiff incorporate herein all the facts therein set forth.

FIFTY-FOURTH:  That pursuant to the terms of the contract hereinabove set forth, Superman, Inc., Detective Comics, Inc., and the defendant, NATIONAL COMICS PUBLICATI INC , from the date of the said contract to the present, n acquired and received large sums of money by the productio of radio features and moving pictures entitled Superman, based upon the characters, conception, plot and incidents created by the plaintiffs, and by the sale of licenses to various persons engaged in commercial enterprises permitti the said persons to affix to their products and to use in furtherance of the said commercial enterprises, the name o pictorial representation of "Superman".

FIFTY-FIFTH:  That, upon information and belief Superman, Inc., Detective Comics, Inc. and the defendant, N. TIONAL COMICS PUBLICATIONS, INC. have derived large profit above all costs and expenses from the motion picture and radio production and from the sale of licenses as hereinab set forth and that they have failed and refused to make any payments to the plaintiffs on account thereof though the same have been duly demanded.

FIFTY-SIXTH:  That Superman, Inc., Detective Comics, Inc. and the defendant, NATIONAL COMICS PUBLICATION INC., have had during the term of the contract hereinabove set forth and have at present control of all books, records and papers relating to the matters set forth in this cause of action, and have in the past and do now refuse to permit

(15)

000000206

**Exhibit B**
**22**

the plaintiffs to examine the said books, records and paper and that the plaintiffs therefor have no access to the info mation contained in the said books, records and papers.

FIFTY-SEVENTH:  That from the inception of the co tract herein set forth, the plaintiffs repeatedly demanded Superman, Inc., Detective Comics, Inc. and the defendant, N TIONAL COMICS PUBLICATIONS, INC, an account of the income a expenditures relating to the matters set forth in this caus of action and that the said Superman, Inc., Detective Comic Inc., and the defendant, NATIONAL COMICS PUBLICATIONS, INC. did neglect and refuse to furnish such an account until on about July 8, 1946, at which time the said persons did furn what purported to be an account of the said matters for the years 1942, 1943, 1944, 1945, and that thereafter and durin January, 1947, the said persons furnished what purported to be an account for the said matters for 1946.

FIFTY-EIGHTH:  Upon information and belief the sa purported statements of account furnished by the said Super Inc., Detective Comics, Inc. and NATIONAL COMICS PUBLICATIO INC. were false and fraudulent and contained numerous de- liberate intentional and fraudulent mis-statements as to the income and expenditures relating to production of motion pic tures and radio features and the sale of licenses as herein- above set forth.

FIFTY-NINTH:  That although the same have been dul demanded the said Detective Comics, Inc., Superman, Inc. and the defendant NATIONAL COMICS PUBLICATIONS, INC., have ne- glected and refused and do now neglect and refuse to furnish to the plaintiffs an account of income and expenditures re- lating to production of motion pictures and radio features and the sale of licenses for the years 1940 and 1941.

SIXTIETH:  That the acts of Superman,Inc.,Detectiv Comics, Inc. and NATIONAL COMICS PUBLICATIONS, INC. as afore said have caused, and are causing and will hereafter continu to cause the plaintiffs irreparable loss, injury and damage, for which the plaintiffs have no adequate remedy at law.

(16)

000000207

58

**Exhibit B**

**23**

FOR A NINTH CAUSE OF ACTION

SIXTY-FIRST: The plaintiffs repeat and realle as part of this cause of action each and every allegation contained in paragraphs marked "FIRST", "FOURTH", "FIFTH", "SIXTH," SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH", "SEVENTEENTH" ~~XXXXXXXXXXXXXXX~~ of the complaint, with like effect as if herein fully re-alleged, and plaintiffs incorporate herein all the facts therein set forth.

SIXTY-SECOND: Upon information and belief that Random House, Inc. is a domestic corporation organized and existing under and by virtue of the laws of the State of Ne York.

SIXTY-THIRD: Upon information and belief that during 1942, Superman, Inc. and Detective Comics, Inc. for valuable consideration entered into an agreement with Rando House, Inc., granting the said Random House, Inc. the right to publish, and whereby the said Superman, Inc., Detective Comics, Inc., and Random House, Inc. agreed mutually and in cooperation with each other to publish a work of fiction bearing the name Superman and based upon the character, con ception and incidents created and originated by the plainti

SIXTY-FOURTH: That upon information and belief pursuant to the said agreement, the said Superman, Inc., De tective Comics, Inc. and Random House, Inc. did publish, se and distribute a work of fiction entitled The Adventures of Superman, which was based upon the character, conception and incidents created and originated by the plaintiffs, and whi said book bears upon the outside cover thereof the statemen "Based on the famous character created by Joe Shuster and Jerry Siegel" and which said book bears upon the title page thereof the statements "Based on the cartoon character creat by Jerry Siegel and Joe Shuster" and "Illustrations by Joe Shuster".

SIXTY-FIFTH: That the said Superman, Inc., De-

(17)

tective Comics, Inc. did not invite or permit the plaintiff
to work on or create any portions of the said book, and th
plaintiffs did not work on or create any portions of the s
book or any illustrations therein, except that the plainti
SHUSTER, was invited to and did create four color illustra
tions included therein.

SIXTY-SIXTH:  That upon information and belief
that Detective Comics, Inc., Superman, Inc., and the defen
NATIONAL COMICS PUBLICATIONS, INC. have received large sum
of money on account of the said agreement and on account o
the publication of the said work of fiction, no part of
which has been paid to the plaintiffs.

SIXTY-SEVENTH:  That Superman, Inc., Detective
Comics, Inc. and the defendant, NATIONAL COMICS PUBLICATIO
INC., have had during the term of the contract hereinabove
set forth and have at present control of all books, record
and papers relating to the matters set forth in this cause
of action, and have in the past and do now refuse to permi
the plaintiffs to examine the said books, records and pape
and that the plaintiffs therefor have no access to the info
mation contained in the said books, records and papers.

SIXTY-EIGHTH:  That although the same have been
duly demanded, the said Detective Comics, Inc., Superman,
Inc. and the defendant, NATIONAL COMICS PUBLICATIONS, INC.
have neglected and refused and do now neglect and refuse to
furnish to the plaintiffs an account of income and expendi-
tures relating to the publication and sale of the said work
of fiction, The Adventures of Superman.

SIXTY-NINTH:  That the acts of the said Superma
Inc., Detective Comics, Inc. and the defendant, NATIONAL
COMICS PUBLICATIONS, INC., as aforesaid, have caused, and a
causing and will hereafter continue to cause the plaintiffs
irreparable loss, injury and damage, for which the plaintif
have no adequate remedy at law.

(18)

000000209

**Exhibit B**
**25**

## FOR A TENTH CAUSE OF ACTION

SEVENTIETH: That the plaintiffs repeat and re-
allege as part of this cause of action each and every alle
gation contained in paragraphs of the complaint marked,
"FIRST", "THIRD", "FOURTH", "FIFTH", "SIXTH", "SEVENTH",
"EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIR-
TEENTH" and "SEVENTEENTH" with like effect as if herein
fully realleged, and plaintiffs incorporate herein all the
facts therein set forth.

SEVENTY-FIRST: That on or about the 1st day of
February, 1940, the plaintiff, SHUSTER, entered into a con
tract with the defendant, WAYNE BORING, a copy of which is
hereto annexed marked Exhibit "E" and made a part of this
complaint as if here incorporated at length.

SEVENTY-SECOND: That the plaintiff, SHUSTER, ha
duly performed all the conditions of the said contract on
his part to be performed.

SEVENTY-THIRD: That the defendant, BORING, dur-
ing July of 1943, left the employ of the plaintiff, SHUSTE
and entered the employ of Detective Comics, Inc. and Super
man, Inc., on whose behalf he drew without the consent of
the plaintiff, SHUSTER, cartoons for comic strips entitled
Superman and Batman and many others based upon the concep-
tion, idea, plot, incidents and character of the plaintiff
comic strip Superman which said employment and furnishing
cartoons continued until October 1, 1946.

SEVENTY-FOURTH: That on and after October 1, 19
the said defendant entered the employ of the defendant, NA-
TIONAL COMICS PUBLICATIONS, INC., and there continued to d
the cartoons for comic strips entitled Superman and Batman
and others in violation of the plaintiff, SHUSTER'S, rights
under the contract hereinabove set forth, and threatens to
continue in the future to draw the said cartoons in viola-
tion of the rights of the plaintiff, SHUSTER.

SEVENTY-FIFTH: That the acts of the defendant,

(19)

000000210

BORING, have caused and are causing and will hereafter co

tinue to cause to the plaintiff irreparable loss, injury

damage, in that the said wrongful furnishing of cartoons

in competition with the plaintiff's cartoons and uses up

and lessens the market therefor; and that the preparation

of cartoons by the defendant, BORING, which were and are

sold to the public as the cartoons of the plaintiff, SHUS

which said cartoons were and are prepared without any su-

pervision and control by the plaintiff, SHUSTER, has re-

sulted in inferior and unskillful work being passed off a

the work of the plaintiff, SHUSTER, and has injured and i

now injuring the reputation of the plaintiff, SHUSTER,

SEVENTY-SIXTH:  That the plaintiff, SHUSTER, h

no adequate remedy at law.

FOR AN ELEVENTH CAUSE OF ACTION

SEVENTY-SEVENTH:  That the plaintiffs repeat a

reallege as part of this cause of action each and every al

legation contained in paragraphs of the complaint marked

"FIRST", "THIRD", "FOURTH", "FIFTH", "SIXTH", " SEVENTH",

"EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIR-

TEENTH", "SEVENTEENTH", "SEVENTY-FIRST" and "SEVENTY-SECON

with like effect as if herein fully realleged, and plainti

incorporate herein all the facts therein set forth.

SEVENTY-NINTH:  During June and July of 1943 the

defendants, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H.

SAMPLINER, Detective Comics, Inc. and Superman, Inc. con-

spired to and with each other to injure the plaintiff,

SHUSTER, by inducing the defendant, BORING, to break his a-

greement with the plaintiff, SHUSTER, and to interfere with

the performance of the said agreement.

EIGHTIETH: That during June and July of 1943 the

said defendants, HARRY DONENFELD, JACOB LIEBOWITZ and PAUL

SAMPLINER, Detective Comics, Inc. and Superman, Inc. did in

duce the said defendant, BORING, to break and repudiate his

obligations under his agreement with the plaintiff, SHUSTER

(20)

and did interfere with and render impossible the performar
of the said agreement in that they induced the said defenc
BORING to leave the employ of the plaintiff, SHUSTER, and
enter the employ of Detective Comics, Inc. and Superman, I
in whose employ the said defendant, BORING, engaged in coj
ing, composing, editing and drawing comic strips based on
themes similar to Superman, to wit; the preparation of car
toons for the comic strips, Superman, Batman and many othe
which are based upon the conception, idea, plot, incidents
and character of the plaintiff's comic strip, Superman.

EIGHTY-FIRST: That the said interference with
the contractual rights of the plaintiffs' by the defendant
DONENFELD, LIEBOWITZ and SAMPLINER, Detective Comics, Inc.
and Superman, Inc. was continued until October 1, 1946, an
was thereafter continued in like manner thereafter by the
said defendants and the defendant, NATIONAL COMICS PUBLICA
TIONS, INC., by whom the defendant, BORING, is now employe
and is continued by them at the present time, and that the
threaten to continue the same in the future.

EIGHTY-SECOND: That the aforementioned acts o
the part of Detective Comics, Inc., Superman, Inc., and the
defendants, NATIONAL COMICS PUBLICATIONS, INC., DONENFELD,
LIEBOWITZ and SAMPLINER were wrongful, corrupt and malicio
and were known so to be by them at the time they were com-
mitted, and were committed by them in pursuance of their
plan and conspiracy as aforementioned, and with full knowl
edge of the agreement between the plaintiff, SHUSTER, and
the defendant, BORING.

EIGHTY-THIRD: That the said acts of Detective
Comics, Inc., Superman, Inc. and the said defendants have
caused and are causing and will continue to cause the plai
tiff, SHUSTER, irreparable loss, injury and damage, in tha
the said wrongful furnishing of cartoons is in competition
with the plaintiff's cartoons and uses up and lessens the
market therefor; and that the preparation of cartoons by th

(21)

defendant, BORING, which were and are sold to the public a
the cartoons of the plaintiff, SHUSTER, which said cartoon
were and are prepared without any supervision and control
the plaintiff, SHUSTER, has resulted in inferior and unski
ful work being passed off as the work of the plaintiff,
SHUSTER, and has injured and is now injuring the reputatio
of the plaintiff, SHUSTER.

EIGHTY-FOURTH:  That the plaintiff, SHUSTER, ha
no adequate remedy at law.

### FOR A TWELFTH CAUSE OF ACTION

EIGHTY-FIFTH:  The plaintiffs repeat and realle
as part of this cause of action each and every allegation
contained in paragraphs of the complaint marked "FIRST",
"FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH",
"TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH" and "SEVENTEE
of the complaint with like effect as if herein fully real-
leged and plaintiff incorporates herein all the facts there
set forth.

EIGHTY-SIXTH:  That Detective Comics, Inc.,
Superman, Inc., and the defendant, NATIONAL COMICS PUBLICA-
TIONS, INC. have wrongfully and unlawfully from the date o
the contract hereinbefore set forth to the present, publish
numerous releases of the comic strip Superman and numerous
releases of other comic strips created by the plaintiffs fo
Detective Comics, Inc.,Superman, Inc. and the defendant,
NATIONAL COMICS PUBLICATIONS, INC., which said releases wer
created by the servants and employees of the said  Detectiv
Comics, Inc., Superman, Inc. and NATIONAL COMICS PUBLICATIC
INC., and were published by the said corporations secretly
and without any notice to the plaintiffs and without the pe
mission of the plaintiffs, and that the defendant, NATIONAL
COMICS PUBLICATIONS, INC., and Detective Comics, Inc. and
Superman, Inc., have not paid the plaintiffs any money
or thing of value on account of the publication of the said
releases.

(22)

000000213

EIGHTY-SEVENTH:  That Superman, Inc., Detective
Comics, Inc. and the defendant, NATIONAL COMICS PUBLICATION
INC , have had during the term of the contract hereinabove
set forth and have at present control of all books, records
and papers relating to the matters set forth in this cause
of action and have in the past and do now refuse to permit
the plaintiffs to examine the said books, records and paper

EIGHTY-EIGHTH:  That the plaintiffs know of their
own knowledge of divers comic strip releases wrongfully
and secretly published without any notification of the
plaintiffs, but upon information and belief that there are
many more of such releases so wrongfully and secretly pub-
lished concerning which the plaintiffs have no definite in
formation and concerning which they can acquire no such de
finite information since as has been alleged above the
plaintiffs have no access to the above mentioned books,
records and papers.

EIGHTY-NINTH: That the acts of the said Superman
Inc., Detective Comics, Inc. and the defendant, NATIONAL
COMICS PUBLICATIONS, INC., as aforesaid have caused, and
are causing and will hereafter continue to cause the plain
tiffs, irreparable loss, injury and damage, for which the
plaintiffs have no adequate remedy at law.

<u>FOR A THIRTEENTH CAUSE OF ACTION</u>

NINETIETH: Plaintiffs repeat and reallege each
and every allegation contained in paragraphs of the com-
plaint marked "FIRST", "FOURTH", "FIFTH","SIXTH", "SEVENTH"
"EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIR-
TEENTH" and "SEVENTEENTH" as part of this cause of action,
with the same force and effect as if herein fully realleged
and plaintiffs incorporate herein all the facts therein se'
forth.

NINETY-FIRST: That from November 1945 to the pr
sent, Detective Comics, Inc., Superman, Inc. and the defen-
dant, NATIONAL COMICS PUBLICATIONS, INC., have published 20
releases of comics strips for which the plaintiff, SHUSTER,

(23)

000000214

created and executed the art work, and for which the said

Detective Comics, Inc., Superman, Inc. and NATIONAL COMICS

PUBLICATIONS, INC. had paid the plaintiff, SHUSTER, the su

of $380.00 per release.

NINETY-SECOND: That though the same have be

duly demanded payment of the additional sums due under the

contract has been refused by the said Detective Comics, In

Superman, Inc. and the defendant, NATIONAL COMICS PUBLICA-

TIONS, INC.

FOR A FOURTEENTH CAUSE OF ACTION

NINETY-THIRD: That the plaintiffs repeat an

allege as part of this cause of action each and every alle

gation contained in paragraphs of the complaint marked

"FIRST", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH",

"TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH" and "SEVEN-

TEENTH" with the same force and effect as if herein fully

realleged and plaintiffs incorporate herein all the facts

therein set forth.

NINETY-FOURTH: That during 1946 Detective

Comics, Inc. pursuant to the contract hereinabove set fortl

published four certain releases of the comic strip, Superm

upon which the plaintiff, SIEGEL, did not furnish the con-

tinuity and on account of which the said Detective Comics,

Inc. has made no payment whatsoever.

NINETY-FIFTH: That though the plaintiff,

SIEGEL, has duly demanded the same the said Detective Comic

Inc. has failed, neglected and refused to pay the sum due

under the contract for the said four releases.

FOR A FIFTEENTH CAUSE OF ACTION

NINETY-SIXTH: Plaintiffs repeat and realleg

as part of this cause of action each and every allegation

contained in paragraphs of the complaint marked "FIRST","SE

"THIRD"

"FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH",

"TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH" and "SEVENTEEN

with like effect as if fully realleged, and plaintiffs in-

corporate herein all the facts therein set forth.

(24)

000000215

NINETY-SEVENTH:  Upon information and belief tha
on or about March 1, 1938, Detective Comics, Inc. and the
plaintiffs entered into an agreement which purported to
grant to the said Detective Comics, Inc. certain rights of
the plaintiffs with respect to the comic strip Superman,
which agreement is not in the possession of the plaintiffs
and whose exact terms are unknown to the plaintiffs.

NINETY-EIGHTH:  That previous to March 1, 1938,
there was due and owing by Detective Comics, Inc. to the
plaintiffs the sum of One Hundred Thirty ($130.00) Dollars.

NINETY-NINTH:  That the agreement entered by the
plaintiffs on or about March 1, 1938, as hereinabove allege
was for the sole purpose of procuring the payment to the
plaintiffs of the above mentioned sum of One Hundred Thirty
($130.00) Dollars and for no other consideration whatsoever

ONE-HUNDREDTH:  That on or about September 22,193
the plaintiffs entered into an agreement in writing with De
tective Comics, Inc. and the defendant, THE MC CLURE NEWS-
PAPER SYNDICATE, as is hereinabove set forth, which agree-
ment is hereto annexed and marked Exhibit "A".

ONE HUNDRED FIRST:  That thereafter from time to
time the plaintiffs entered into numerous modifications of
the said agreement as hereinabove set forth.

ONE HUNDRED SECOND:  That to induce the plaintiff
to enter into the agreement of 1938 and the various modifi-
cations thereof and to induce the plaintiffs to continue to
perform the said agreement in the face of numerous vital
breaches thereof by the said Detective Comics, Inc. and THE
MC CLURE NEWSPAPER SYNDICATE, the said Detective Comics, Inc
and the defendants, HARRY DONENFELD and JACOB LIEBOWITZ
falsely and fraudulently stated and represented that under
the agreement of March 1, 1938, the said Detective Comics,
Inc. had the sole and exclusive right to publish cartoon
material to be originated in the future entitled Superman
and depicting the character Clark Kent, and that under said

(25)

000000216

agreement the plaintiffs had lost all right to ever again create comic strips entitled <u>Superman</u> and depicting the character <u>Clark</u> <u>Kent</u>, except as specifically permitted by Detective Comics, Inc. and that the said Detective Comics, I could terminate the employment of the plaintiffs at any tim and continue to publish the said comic strip <u>Superman</u>, depicting the character <u>Clark Kent</u>, and that the plaintiffs would thereafter be unable to create or publish any cartoon material bearing said title and depicting said character.

ONE HUNDRED THIRD: That the said statements and representations so made were false and were known to Detective Comics, Inc., the defendants, HARRY DONENFELD and JACO LIEBOWITZ, to be false when made.

ONE HUNDRED FOURTH: That the said Detective Com Inc. did not acquire by the instrument of March 1, 1938, th sole and exclusive right as against the plaintiffs or as against the public at large to create and publish future com strip material entitled <u>Superman</u> and depicting the character <u>Clark</u> <u>Kent</u>, and the plaintiffs did not by the said instrumer lose the rights which they had heretofore had with respect such rights.

ONE HUNDRED FIFTH: That plaintiffs relied upon said statements and representations and believed them to be true, and as a result thereof were induced and did enter int the agreement aforesaid of September 22, 1938, and did enter divers modifications thereof and did continue to perform the same despite numerous vital breaches thereof by Detective Comics, Inc.

ONE HUNDRED SIXTH: That plaintiffs elect to rescind the said contract and hereby offer to release and discharge the said Detective Comics, Inc., THE MC CLURE NEWS-PAPER SYNDICATE and the defendant, NATIONAL COMICS PUBLICA-TIONS, INC., from any further obligation to perform the same and to return to the said Detective Comics, Inc., THE MC CLU NEWSPAPER SYNDICATE and the defendant, NATIONAL COMICS PUBLI

(26)

000000217

CATIONS, INC. rightfully become theirs upon such a rescissal

ONE HUNDRED SEVENTH:  Plaintiffs have no adequate remedy at law.

### FOR A SIXTEENTH CAUSE OF ACTION

ONE HUNDRED EIGHTH:  That the plaintiffs repeat an reallege as part of this cause of action each and every allegation contained in paragraphs marked "FIRST", "SECOND", "THIRD", "FOURTH", "FIFTH", "SIXTH", "SEVENTH", "EIGHTH", "NINTH", "TENTH", "ELEVENTH", "TWELFTH", "THIRTEENTH", and "SEVENTEENTH" of this complaint with like effect as if herein fully realleged, and plaintiffs incorporate herein all t facts therein set forth.

ONE HUNDRED NINTH:  That the agreement of Septembe 22, 1938, as modified, provides that the same may be cancel led and terminated by Detective Comics, Inc. at its sole optio

ONE HUNDRED TENTH:  That the plaintiffs elect to rescind the said contract as illusory, and as a contract lacking mutuality, and offer to release and discharge the said Detective Comics, Inc. and THE MC CLURE NEWSPAPER SYN-DICATE from any further obligation to perform the same and to return to the said Detective Comics, Inc. and THE MC CLUI NEWSPAPER SYNDICATE all things which rightfully become thei upon such a rescission.

ONE HUNDRED ELEVENTH:  Plaintiffs have no adequate remedy at law.

### FOR A SEVENTEENTH CAUSE OF ACTION

ONE HUNDRED TWELFTH:  That the plaintiffs repeat and reallege as part of this cause of action each and every allegation contained in paragraphs marked in the complaint, "FIRST" through "ONE HUNDRED ELEVENTH" inclusive, with like effect as if herein fully realleged, and plaintiff incorporate herein all the facts therein set forth.

ONE HUNDRED THIRTEENTH:  That the defendant, NA-TIONAL COMICS PUBLICATIONS, INC. and Detective Comics, Inc.

(27)

000000218

have further failed and refused to perform the conditions of the aforementioned contract in that after the return of the plaintiff, SIEGEL, from two and one half years in the United States Army, they refused and do still refuse to pe mit the plaintiffs to undertake and carry on the full production of continuity and cartoon material for all the nee of newspaper and magazine publishing of the cartoon featur Superman as the plaintiffs had previously done.

ONE HUNDRED FOURTEENTH: That the plaintiffs have repeatedly demanded of the said Detective Comics, Inc. and of the defendant, NATIONAL COMICS PUBLICATIONS, INC. that the plaintiffs be permitted to carry on the entire production of material for publication of Superman as aforesaid, but the said defendant and the said Detective Comics, Inc. have refused to permit the same.

ONE HUNDRED FIFTEENTH: That Detective Comics, In and the defendant, NATIONAL COMICS PUBLICATIONS, INC. have without the consent of the plaintiffs hired their own servants and employees to create a major portion of the materi published under the title Superman, despite the fact that the plaintiffs are capable of producing sufficient material for all the needs of magazine and newspaper publishing.

ONE HUNDRED SIXTEENTH: That in furtherance of the unlawful and corrupt scheme to prevent the plaintiffs from producing all of the material necessary for publication und the title Superman as aforesaid, as is their right under th contract as aforesaid, and in order therefor to cause it to falsely appear that the plaintiffs are unable to produce al the necessary material, Detective Comics, Inc. and the defendant, NATIONAL COMICS PUBLICATIONS, INC. have since the return of the plaintiff, SIEGEL, from the Army adopted a course of conduct whereby they have rejected under the guis of editorial supervision the major portion of the material created by the plaintiffs, and that the said rejections are corruptly, falsely, and maliciously made without right or

(28)

000000219

reason, and solely to injure the production of the said material by the plaintiffs and pursuant to the scheme as above set out to prevent the plaintiffs resuming full supervision and control of the production of the comic strip <u>Superman</u>.

ONE HUNDRED SEVENTEENTH:  That the continuity and cartoons created by the servants and employees were and are inferior to continuity and cartoons created by the plaintiffs and that the publication of such inferior material with the representation that the said material is the work of the plaintiffs has injured and is injuring and will continue to injure in the future the reputation of the plaintiffs in the trade and with the general public, and has lessened and depreciated the sale of the comic <u>Superman</u> and will continue in the future to do so.

ONE HUNDRED EIGHTEENTH:  That the plaintiffs elect to rescind the said contract, because of the numerous vital and material breaches thereof, failure of consideration therein, and numerous frauds in the inducement, the inception and performance thereof, as hereinabove set forth, and hereby offer to release and discharge the said Detective Comics Inc., THE MC CLURE NEWSPAPER SYNDICATE, and the defendant NATIONAL COMICS PUBLICATIONS, INC. from any further obligation to perform the same and to return to the said Detective Comics, Inc., THE MC CLURE NEWSPAPER SYNDICATE, and the defendant, NATIONAL COMICS PUBLICATIONS, INC., all things which rightfully become theirs upon such a rescission.

ONE HUNDRED NINETEENTH:  Plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs demand judgment:-

1. That the defendants, their agents, servants and employees be perpetually enjoined and restrained from creating, publishing, selling or distributing any comic strip material of the nature now and heretofore sold under the titles <u>Batman</u>, <u>Superboy</u>, <u>Lois Lane,Girl Reporter</u>, <u>Johnny Quick</u>, <u>The Flash</u>, <u>Green Lantern</u>, <u>Aquaman</u>, <u>Airwave</u>, or any

(29)

000000220

other comic strip material made in imitation of the conception, character, nature, incidents, action or plot of the plaintiffs' comic strip Superman, or in competition with the said Superman, and from using any title so imitative of Superman as to be calculated to deceive the public so that it would believe the so entitled material to have been created by the plaintiffs.

2. That the plaintiffs have an accounting of income, expenditures and profits of the defendants, derived from the publication, sale and distribution of Batman, Superboy, Lois Lane,Girl Reporter, Johnny Quick, The Flash, Green Lantern, Aquaman, Airwave and any other comic strip material made in imitation of conception, character, nature incidents, action or plot of the plaintiffs' comic strip Superman or in competition with the said Superman, and that the profits derived from the said publication, sale and distribution be divided according to law and that the plaintiffs have their just share thereof.

3. That the plaintiffs have an accounting of the income, expenditures and profits acquired by the defendants through the production of radio features and moving picture entitled Superman, and by the sale of commercial licenses of all kinds and the receipt of commercial royalties of all kinds, and that the profits derived from the said publication, sale and distribution be divided according to law, and that the plaintiffs have their just share thereof.

4. That the plaintiffs have an accounting of the income, expenditures, and profits acquired by the defendant as a result of the publication, sale and distribution by Random House, Inc., or the defendants, of the book The Adventures of Superman, and that the profits derived from the said publication, sale and distribution be divided according to law and that the plaintiffs have their just share thereof

5. That the plaintiffs have an accounting of all cartoon or comic strip material published under the title of any comic strip feature created by the plaintiffs or furnished

(30)

000000221

**Exhibit B**  72
**37**

by the plaintiffs pursuant to contract, and of all material
published in imitation of any of the said comic strip fea-
tures, and of the income, profits and expenditures relating
to such publication and that the profits thereof be divided
according to law, and that the plaintiffs have their just
share thereof.

6. That the Court declare the rights and other le-
relations of the plaintiffs and the defendants by reason of
the written instrument dated March 1, 1938; and that the
Court declare the said instrument void; and that the Court
declare the said instrument ineffectual to convey to the de-
fendants any property in, or the future rights to publish,
the comic strip feature <u>Superman</u>, or any property in the us
of the title thereto or of the comic strip character "Clark
Kent" also known as <u>Superman</u>.

7. That the Court declare the rights and other
legal relations of the plaintiffs and the defendants by rea-
son of the written instrument dated September 22, 1938 and
the modifications thereof; that the Court declare that the
plaintiffs have the right to rescind the said contract; and
that the plaintiffs have the sole right hereafter to the us
of the title <u>Superman</u>, and to create and cause to be pub-
lished cartoon or comic strip material containing the char-
acter "Clark Kent" also known as"Superman", "Lois Lane", an
"Perry White", and containing the conception and idea of th
cartoon feature <u>Superman</u>.

8. That the defendants, their agents, servants an
employees be perpetually enjoined and restrained from creat
ing, publishing, selling or distributing any comic strip
material under the title <u>Superman</u>, or any material contain-
ing the idea, conception, plot or in any wise resembling th
comic strip feature heretofore published as <u>Superman</u>, or
containing any of the characters hereinbefore presented in
the said feature <u>Superman</u> or resembling the said characters
and from making, selling, licensing, or distributing any
radio, or motion picture or talking picture features, or an

(31)

000000222

dramatic or stage features and from granting any commercial licenses of any kind or nature whatsoever, and from accepting hereafter any money or consideration on account of any licenses heretofore granted, and from using the names of Superman or of the plaintiffs for any commercial purpose whatsoever.

9. That the plaintiffs have judgment against th defendants for all sums of money due to the plaintiffs pursuant to the terms of the contract of September 22, 1938, as modified and otherwise due and owing.

10. That the plaintiffs may have such other and further relief as to the court may seem just and proper.

SLONIM, WEKSTEIN & FRIEDMAN
Attorneys for Plaintiffs
Office & P. O. Address
20 South Broadway
Yonkers, New York (2)

(32)

000000223

Exhibit B
74
39

EXHIBIT "A"

Sept. 22, 193

Jerome Siegel and Joseph Shuster
c/o American Artists League
10622 Kimberly Avenue
Cleveland, Ohio

Gentlemen:-

This letter, when signed by you, will serve as our agreemen

We, Detective Comics, Inc., are the exclusive owners of com
strips known by the titles "Superman", "Slam Bradley", "Spy
"Radio Squad" and "Federal Men", and to the rights to publi
comics carrying said titles and characters contained therei
and continuity thereof.

You have been doing the art work and continuity for said
comics for us.  We wish you to continue to do said work and
hereby employ and retain you for said purposes for the peri
of this contract.

You agree that you will supply us each and every month here
after, in sufficient time for publication in our monthly
magazines,sufficient copy and art for each of said features
each month hereafter.

All of said comic features consist of approximately 46 page
per month.  The standard of the said comics shall be equal
to the present standards.

You shall also furnish in sufficient time to properly perfo
the terms of an agreement we are executing together with yo
with the McClure Newspaper Syndicate, all of the art and
continuity for the newspaper strip entitled "Superman" call
for by said agreement.

You agree that you will not hereafter at any place in the
United States or in any foreign country, furnish to any oth
person, firm, corporation, newspaper or magazines any art o
copy for any comics to be used in any strip or comic or new
paper or magazine containing the above titles or the charac
ters or continuity thereof or in any wise similar thereto,
but you shall furnish such material exclusively to us for tl
duration of this agreement as such matter may be required b;
us or as designated by us in writing.

In the event you shall do or make any other art work or con-
tinuity suitable for use as comics or comic strips, you shal
first give us the right to first refusal thereof by submit-
ting said copy and continuity ideas to us.  We shall have tl
right to exercise that option for six weeks after submissior
to us at a price no greater than offered to you by any othe
party.

We agree to pay you on publication, for any and all of said
comics published by us and supplied by you, the following
rates:

| | |
|---|---|
| Superman | $10.00 per page |
| Slam Bradley | $10.00 per page |
| Spy | $10.00 per page |
| Radio Squad | $ 9.00 per page |
| Federal Men | $ 9.00 per page |

You agree that the number of panels to each monthly feature
shall be approximately equal to the panels contained in pre-
vious publications of the comics.

(1)

000000224

We further agree to pay you for the McClure Newspaper Syndi-
cate strips which you may hereafter furnish pursuant to the
abovementioned contract with McClure, on the following basis:

> When we receive payment from McClure
> on the 40% basis mentioned in the con-
> tract, we shall retain 7½% and pay you
> 32½% of the "net proceeds" as defined
> in the McClure contract.
> When we receive payment from McClure
> on the 45% basis mentioned in the con-
> tract, we shall retain 9% and pay you
> 36% of the "net proceeds" as defined
> in the McClure contract.
> When we receive payment from McClure
> on the 50% basis mentioned in the con-
> tract, we shall retain 10% and pay you
> 40% of the "net proceeds" as defined
> in the McClure contract.

All material, art and copy shall be owned by us and at our
option, copyrighted or registered in our name or in the
names of the parties designated by us.

This agreement shall be for a period of five years from the
date hereof and shall thereafter be continued for an addi-
tional five years at our option. However, if at any time
the art and continuity of any feature shall not be up to th
standard required for the magazines, we at our option, then
may terminate this agreement as to and substitute other ar-
tists for the unsatisfactory feature or features but not
otherwise.

According to the above mentioned McClure contract, we shall
have the right to use the material furnished for syndicate
purposes without charge by McClure. However, in the event
we shall use any of said syndicate matter in our magazines,
you shall be compensated at the above mentioned page rate
less the percentage which McClure receives for said syndica
tion. When using such syndicate matter we shall of course
not be required to use original copy as called for by this
contract.

At any time, if we believe any feature is economically un-
successful, we may discontinue the further publishing of
said feature.

We shall have the right to reasonably supervise the editori
matter of all features.

Your signature to this agreement is one of the inducements
us to execute the above mentioned McClure contract and we
agree to use our best efforts to continue the publishing of
magazines containing the above mentioned features.

Very truly yours,

DETECTIVE COMICS, INC.

BY:   Harry Donenfeld
              Pres.

Jerome Siegel

Joseph Shuster

(2)

EXHIBIT "A"

Sept. 22. 1938

Detective Comics, Inc.
480 Lexington Avenue
New York City

Jerome Siegel and Joseph Shuster
c/o American Artists League
10622 Kimberley Avenue
Cleveland, Ohio

Gentlemen:

This letter, when signed by each of you, will serve as our agreement.

Hereafter, Detective Comics, Inc., is called "Detective" and Messrs. Siegel and Shuster are called the "Artists".

In line with our discussions, we are prepared to go ahead with newspaper syndication of a daily strip, six days a week entitled "Superman" and owned by Detective Comics, on the following terms and conditions:

We are to have an eight month option from Detective, dating from October 1, 1938, to enable us to make a preliminary survey of the newspaper field in relation to this specific feature, which survey we agree to make at our own expense and to furnish Detective with a report thereof.

If this preliminary canvass indicates the possibility for successful newspaper syndication of this feature, as we anticipate it will, and providing we give Detective notice in writing by registered mail before June 1, 1939, of our exercise of said option, Detective agrees to permit the Artists to supply "Superman" strip exclusively to us for syndication in newspapers in the United States, Canada, and all other parts of the world, for a minimum period of five years from June 1 1939, in consideration of the payment to Detective of forty (40%) per cent of the net proceeds from such syndication during the first year, forty-five (45%) per cent during the second year and fifty (50%) per cent thereafter. "Net proceeds" is hereby defined to mean gross receipts for the feature from newspapers using the feature, less cost of cuts, mats, and proofs. All other expenses, including billing, promotion and selling expenses, are ours and are not deductible in arriving at net proceeds.

If during the third year and continuing to the end of the above mentioned initial five year period, the weekly net share of Detective from the proceeds reaches $100. or more, per week, we shall have the option to renew this agreement for a further period of five years beginning June 1, 1944, on the same terms as procided above, for the final three years of the 1939-1944 period, providing, however, we give Detective notice in writing by registered mail before Februa 1, 1943, of our renewal.

We are to have reasonable editorial supervision of the feature which the Artists agree to maintain at the standard shown in the sample submitted. In turn, we agree to our best efforts to sell this feature to as large a list of newspapers as possible, and at the best prices obrainable in each case.

Detective and Artists agree to cooperate with us in our sales efforts by supply on request, any information and assis-

(1)

000000226

Exhibit B  77

42

tance, without cost to you however, that we may require for promotion purposes.

Statements will be made to Detective and a copy to Artists tween the 25th and 30th of each month, covering sales of th month previous and will be accompanied by check for its abo mentioned share of the amount collected to the date of the statement. Detective and the Artists or their authorized r presentatives may inspect our books of account in reference to the feature, at any reasonable time.

The material contained in the feature which we syndicate wil be copyrighted in our name, but copyright reverts to Detec: at the termination of this contract. The title "Superman" shall always remain the property of Detective and the featu may be used by Detective for any other purpose except daily or weekly newspaper publication. Our agreement covers news- paper right only. Radio, motion picture, silent and talkie book and all other rights are retained and owned by Detecti

The Artists agree to supply the feature required for the ne paper syndicate publications to us, on an advanced schedule of at least six weeks, or such other reasonable period as m be determined by us to insure amply time for distribution prior to release dates. In the event the Artists shall at time fail to furnish the feature, and so breach this agree- ment, in addition to any other remedies Detective may appoi other artists to do the feature and strip.

It is agreed that should it be determined at any time durin the life of this contract, that it would be advisable to re lease a Sunday feature of "Superman" strip, we are to have exclusive rights to such a Sunday feature, on the same terms as outlined herein for the daily strip.

The Artists are to be paid for their work solely by Detecti

Detective agrees that during the life of this contract, be- fore it shall submit any other comics for newspaper syndicat purposes, it shall offer said comics to us for first refusal for a six week period.

We agree to provide Detective with all the original drawing: of the "Superman" strip, so that said drawings may be used by Detective in the publication "Action Comics" six months after newspaper release, without charge or for any substi- tuted magazines.

This agreement does not prohibit Detective from selling to foreign country newspapers rights to use any material which may appear in any magazines published by Detective containir and including "Superman".

It is understood that in the event of an outbreak of a European war, in which Great Britain should become involved during the period of October 1, 1938 to February 1, 1939, th McClure Newspaper Syndicate has the right to cancel this agreement.

Very truly yours,

THE MC CLURE NEWSPAPER SYNDICATE

By:    Richard H. Waldo, Pres.

DETECTIVE COMICS, INC.

By:    HARRY DONENFELD

JEROME Siegel

JOseph Shuster

(2)

000000227

DETECTIVE COMICS
INCORPORATED

480 Lexington Ave.
New York, N.Y.

EXHIBIT "B"

December 19, 1939

Jerome Siegel and Joseph Shuster,
New York, N.Y.

Dear Sirs:

We have discussed with you certain changes of procedure
and compensation which we feel it advisable to set forth in
written modification so as to bring our agreement of Septem-
ber 22, 1938 down to date.

In the 1938 agreement we had agreed to pay both of you
for the art work and continuity for the comic strips entitle
"SUPERMAN", "SLAM BRADLEY", "SPY", "RADIO SQUAD" and "FEDER/
MEN" at certain rates per page. Since that time, however,
while both of you have continued to furnish art work and con
tinuity for "SUPERMAN", only Mr. Siegel has continued to fur
nish the continuity for the remaining comic strips. Mr.
Shuster no longer furnishes the art work for "SLAM BRADLEY",
"SPY", "RADIO SQUAD" and "FEDERAL MEN". Also, we have dis-
cussed with both of you a change of your page rate compensa-
tion with respect to "SUPERMAN".

Effective therefore, upon the signing of this modifica-
tion, we agree to pay to both of you for all art work and
continuity for "SUPERMAN" at the rate of $20. per page, and
both of you agree that you will at such rate continue to fur
nish all art and continuity work for "SUPERMAN" to us in ac-
cordance with the agreement of September 22, 1938. As to th
remaining comic strips, we shall be free to make other ar-
rangements with Mr. Siegel personally as to the furnishing of
continuity for them and also make other arrangements for the
furnishing of art work for them in view of the fact that Mr.
Shuster no longer furnishes the same.

We have also informed you of our activities in promotin
the commercial exploitation of "SUPERMAN" in other fields in
addition to magazine publication and newspaper syndication.
Such other fields include radio, motion pictures, the toy an
novelty field and others and we have indicated to you our
willingness that both of you receive some portion of the pro
ceeds which may be realized from these additional activities.
We, therefore, hereby agree to pay to you 5% of all net pro-
ceeds which may be derived by us from all commercial exploit
tion of "SUPERMAN" outside of magazine and book publication
and newspaper syndication. Such net proceeds shall be arriv
at by deducting from the gross proceeds from any such addi-
tional sources (except magazine and book publication and new
paper syndication) all expenses incurred by us in the course
of such promotion and exploitation.

By your signature below, you hereby confirm the follow-
ing arrangements and you hereby further confirm the followin

1. That we, Detective Comics, Inc., are the sole and ex
slusive owners of the comic strip entitled "SUPERMAN" and th
other comic strips entitled as above mentioned, and to all
rights of reproduction of all said comic strips and the titl
and characters contained therein and the continuity thereof,
including but not limited to the fields of magazine or other
book publication, newspaper syndication, radio broadcast,
television, motion picture reproduction and all other form
of reproduction. We have all right of copyright and all
rights to secure copyright registration in respect of all
such forms of reproduction either in our own name of others

(1)

000000228

at our exclusive option.

2. That you have not done or permitted any act or thing which might impair any of our aforesaid rights ith respect to any of the aforesaid comic strips and that so far as you are concerned our full and complete ownership thereof and all reproduction rights in connection therewith are vested in us free and clear of the rights of any other persons or parties whatsoever.

3. That we have the unrestricted right to adapt, arrange change, transpose, add to and otherwise deal with any or all said comic strips and the titles, characters and continuity thereof as we in our sole discretion may deem it necessary or advisable to do so.

4. That we have the unrestricted right to grant to other upon such bases as we in our sole discretion shall determin any of the foregoing rights of reproduction with respect to any of the aforesaid comic strips and the titles, character and continuity thereof.

You hereby agree to execute any and all further instruments which may at any time be necessary or advisable in connection with any of the foregoing rights and property no vested in us and for that purpose and for all other purpose hereunder you hereby designate us and our successors and as signs your agents and attorneys in fact irrevocably.

This modification shall become effective immediately upon your signing the same below and continue in full force and effect throughout the life of the agreement dated September 22, 1938 as the same has been modified hereby. Both you and ourselves hereby ratify and confirm the foregoing agreement dated September 22, 1938 as the same has been modified by this letter.

Very truly yours,

DETECTIVE COMICS, INC.

By: ___ Harry Donenfeld ___
            Pres.

APPROVED AND ACCEPTED:

Jerome Siegel _____

Joseph Shuster _____

000000229

EXHIBIT "C"

DETECTIVE COMICS
INCORPORATED

480 Lexington Ave.
New York, N.Y.

August 30, 1943

Pvt. Jerome Siegel
39th Special Service Company
Fort George G. Meade, Md.

Dear Mr. Siegel:

As provided in our agreement of September 22,
1938, wherein we agree to employ and retain you for the pur
poses mentioned therein, we hereby advise you that we have
decided to and do hereby exercise our option mentioned in
said agreement to continue said agreement for an additional
five year period on all the terms and conditions mentioned
therein.

Very truly yours,

DETECTIVE COMICS, INC.

By:  J. S. Liebowitz

(Treasurer)

JSL*DS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT "D"

DETECTIVE COMICS
INCORPORATED

480 Lexington Ave.
New York, N.Y.

September 8, 1943
One day closer to Victory.

Mr. Joseph Shuster
98-120 Queens Boulevard
Forest Hills, N.Y.

Dear Mr. Shuster:

As provided in our agreement of September 22,
1938, wherein we agree to employ and retain you for the pur-
poses mentioned therein, we hereby advise you that we have
decided to and do hereby exercise our option mentioned in
said agreement to continue said agreement for an additional
five year period on all the terms and conditions mentioned
therein.

Very truly yours

DETECTIVE COMICS, INC.

By:  J. S. Liebowitz

(Treasurer)

JSL*DS

000000230

EXHIBIT "E"          A G R E E M E N T

This Agreement, made at Cleveland, Ohio this
first day of February 1940 by and between Joseph Shuster
hereinafter called the party of the first part and Wayne
Boring, hereinafter called party of the second part.

WITNESSETH, for and in consideration of the mu-
tual promises and mutual terms contained herein, the parti
hereto do agree as follows:

1. Party of the first part agrees to employ
party of the second part, and party of the second part agr
to be employed by party of the first part as artist for a
period of two (2) years and seven (7) months from the date
of this contract. It is further understood and agreed that
said party of the first part shall and hereby does, have th
option to renew this agreement for an additional period of
five (5) years after the expiration of the two (2) year
seven (7) month period and under the same terms and condi-
tions as herein set forth. Said party of the first part
shall notify said party of the second part of his intentior
to exercise said option and renew said contract by written
notice to said party of the second part at least thirty (30
days prior to the expiration of the original term of this
contract.

2. It is understood and agreed that said party
of the second part shall devote all of his time to the work
and business of said party of the first part; and said party
of the second part, shall at all times, maintain a good sta
dard of work; that during the term of this contract, or any
renewal period, said party of the second part shall devote
his entire time and skill to the work of the party of the
first part and shall not engage in any other work of any ki
or nature whatsoever without first obtaining the written co
sent of said party of the first part.

3. It is understood and agreed that said party o
the second part shall not in any way publicise or take com-

000000231

**Exhibit B     82**
**47**

mercial advantage of his employment or connection with the comic strip work of said party of the first part and agree that upon leaving the employment of the party of the first part, he will not engage in the copying, composing, editing or similar work in any comic strip, which is based on a theme or motive similar to "Superman" or any other comic strip produced by said party of the first part.

4. It is understood and agreed that all of the work as artist and assistant to said party of the first par shall be performed at the office of said party of the first part now located at 10609 Euclid Avenue or any other place designated by said party of the first part.

5. For and in consideration of the services ren dered by said party of the second part, to said party of the first part, it is understood and agreed that the salary of said party of the second part shall be as follows:  Fifty Dollars ($50.00) per week as long as the percentage of the Syndicate work paid to said party of the first part is less than Two Hundred Fifty Dollars ($250.00) per week. That whe said percentage received by said party of the first part is Two Hundred Fifty Dollars ($250.00) per week, party of the second part shall receive Ninety Dollars ($90.00) per week; when said percentage reaches Three Hundred Fifty Dollars ($350.00) per week, then party of the second part shall re- ceive One Hundred Ten Dollars ($110.00) per week; when said percentage reaches Four Hundred Fifty Dollars ($450.00) per week, then party of the second part shall receive One Hun- dred Thirty Dollars ($130.00) per week; when said percentag reaches Five Hundred Dollars ($500.00) per week, then party of the second part shall receive One Hundred Forty Dollars ($140.00) per week.

It is understood and agreed that the above salary arrangement has reference only to the amount received by party of the first part as his share or percentage of th

Syndicate work only; that it refers to original or first ap
pearances only as distinguished from reprints and that it
does not include, and is not intended to include, income fr
any other sources.

6. It is further understood and agreed that
party of the second part, as artist, shall produce not less
than six (6) daily and one (1) Sunday comic strip each week
and in addition, thereto, he shall produce two (2) thirteen
(13) page "Superman" magazine releases per month in time to
meet deadlines. It is understood and agreed that in addi-
tion to the salary provided in Section 5 of this Agreement,
party of the second part shall receive One Hundred Dollars
($100.00) per month for said magazine releases providing tw
(2) releases are produced each month and in the event only
one (1) release is produced in any month, then in that even
said party of the second part shall receive Forty Dollars
($40.00) for said one (1) release.

7. It is understood and agreed that upon the
violation of any of the terms of this agreement, or if at
any time during the term of this agreement, or any renewal
period, the work of said party of the second part shall, in
the judgment of said party of the first part, and Jerome
Siegel, continuity writer for said comic strip, "Superman",
become below the good standard of work necessary and requir
in the production of said comic strip, then in that event,
said party of the first part may terminate this agreement
upon thirty (30) days written notice to said party of the
second part. In the event of such termination, this contra
or any renewal thereof, shall become null and void and of no
effect whatsoever.

IN WITNESS WHEREOF, the parties hereto sign the
names the day and year first above written.

Witnesses:                    JOE SHUSTER
                              Party of the first part
Leo N. Ascherman
                              WAYNE BORING
Jerome Siegel                 Party of the second part

STATE OF NEW YORK        )
COUNTY OF WESTCHESTER     )       SS.

          JOSEPH SHUSTER, being duly sworn, deposes and
says that he is one of the plaintiffs in the within action;
that he has read the foregoing Complaint and knows the con-
tents thereof; that the same is true to his own knowledge,
except as to the matters therein stated to be alleged on in-
formation and belief, and that as to those matters he believ
it to be true.

                                        JOSEPH SHUSTER

Sworn to before me this
5th day of March, 1947.

          MORTON N. WEISTEIN
      Notary Public, State of New York
        I Reside in Westchester County
     My Commission Expires March 30, 1948

000000234

**Exhibit B**
**50**

85

SUPREME COURT OF THE STATE OF NEW YORK
        COUNTY OF WESTCHESTER

1099-1947

- - - - - - - - - - - - - - - - - - - - - - -x

JEROME SIEGEL and JOSEPH SHUSTER,

                              Plaintiffs,        :   203

           -against-                             :   305

NATIONAL COMICS PUBLICATIONS, INC., INDEPENDENT  :
NEWS CO., INC., THE MC CLURE NEWSPAPER SYNDICATE,
HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H.        :
SAMPLINER and WAYNE BORING,                      :

                              Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - -x

          The above-entitled action having been duly referred

to the undersigned, pursuant to stipulation of the parties

herein, as Referee to hear, try and determine with findings

of fact and conclusions of law, and the said matter having

duly come on to be heard before the undersigned, and the

plaintiffs having appeared by SLONIM, WEKSTEIN & FRIEDMAN, ESQS.,

their attorneys (MORTON WEKSTEIN, ESQ., of counsel, and the de-

fendants NATIONAL COMICS PUBLICATIONS, INC., INDEPENDENT NEWS

CO., INC., HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER,

having appeared by WEIL, GOTSHAL & MANGES, ESQS., their attor-

neys (HORACE S. MANGES, ESQ., EDWARD C. WALLACE, ESQ., and

ABRAHAM I. MENIN, ESQ., of counsel), and the defendant THE

MC CLURE NEWSPAPER SYNDICATE, having appeared by JOHN L.

MC CORMICK, ESQ., its attorney (JAMES L. BROWN, ESQ., of counsel),

and the defendant WAYNE BORING having appeared by his attorney

SIDNEY H. REICH, ESQ., and the Referee's oath having first been

taken, and the proofs and allegations of the parties having

been heard, and due deliberation having been had, I do find

and decide as follows, stating my findings of fact and con-

clusions of law:

**Exhibit C**
51

15

## FINDINGS OF FACT

1.   Defendants NATIONAL COMICS PUBLICATIONS, INC., INDEPENDENT NEWS CO., INC. and THE MC CLURE NEWSPAPER SYNDICATE are corporations duly organized and existing under the laws of the State of New York; DETECTIVE COMICS, INC. was a corporation duly organized and existing under the laws of the State of New York, and was one of the constituent corporations consolidated on September 30, 1946 into defendant NATIONAL COMICS PUBLICATIONS, INC.

2.   Defendant NATIONAL COMICS PUBLICATIONS, INC., at all times hereinafter mentioned, was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

3.   Defendant INDEPENDENT NEWS CO., INC., at all times hereinafter mentioned, was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

4.   Defendant THE MC CLURE NEWSPAPER SYNDICATE, at all times hereinafter mentioned, was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

5.   Previous to September 30, 1946, DETECTIVE COMICS, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of New York.

6.   Previous to October 1, 1946, SUPERMAN, INC. was a corporation duly organized and existing under and by virtue of the laws of the State of New York, and the said corporation was organized by DETECTIVE COMICS, INC. and the defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and at all times hereinafter mentioned the officers and directors of SUPERMAN, INC. were the same persons who were the officers and directors of DETECTIVE COMICS, INC.

Exhibit C

52

16

and all facts known to DETECTIVE COMICS, INC. were known to SUPERMAN, INC., and at all times hereinafter mentioned SUPERMAN, INC. was completely controlled by DETECTIVE COMICS, INC., and the defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER.

7.   On or about the 30th day of September, 1946, Detective Comics, Inc., All American Comics, Inc., Superman, Inc., Jolaine Publications, Inc., Wonderwoman Publishing Co., Inc., J.R. Publishing Co., Inc., Worlds Best Comics, Inc., and Trafalgar Printing Co., Inc. consolidated into a single corporation pursuant to the provisions of Sections 85 to 90 of the Stock Corporation Law of the State of New York, the same being the defendant NATIONAL COMICS PUBLICATIONS, INC.

8.   Plaintiffs are the originators and authors of the cartoon character SUPERMAN and of the title SUPERMAN and first created cartoon material in which the said character and title first appeared in 1934 and continued to create such cartoon material until the institution of the present action, and the plaintiffs are the authors and originators of other cartoon characters which have appeared in the cartoon strip entitled SUPERMAN, chief among which are SUPERMAN, also known as Clark Kent, Lois Lane and Perry White, and the plaintiffs are known to the public as the authors and creators of the cartoon material in which the character SUPERMAN appears and of the character SUPERMAN and of other cartoon characters which appear and have appeared in cartoons entitled SUPERMAN.

9.   Some time in 1933 plaintiff SIEGEL conceived the idea of a cartoon strip, the feature character of which

would be a man of superhuman strength and power, who would perform feats of great magnitude for the public good.

10. Plaintiff SIEGEL, together with plaintiff SHUSTER, an artist, prepared a comic strip containing separate panels embodying SIEGEL'S idea which was submitted to numerous publishers and newspaper syndicates, but was uniformly rejected.

11. After the joint creation of the SUPERMAN strip panels in 1933, plaintiffs collaborated in creating other cartoon strips, some of which were purchased by Nicholson Publishing Company for resale to DETECTIVE COMICS, INC.

12. In the latter part of 1937, Nicholson Publishing Company went out of business and DETECTIVE COMICS, INC. acquired some of its magazine properties.

13. On December 4, 1937, defendant LIEBOWITZ, representing DETECTIVE COMICS, INC., met plaintiff SIEGEL in New York City.

14. At the said conference defendant LIEBOWITZ proposed to plaintiff SIEGEL that the $9. page rate which Nicholson Publishing Company had been paying plaintiffs for certain comic strips, be increased to $10.

15. At the said conference DETECTIVE COMICS, INC. entered into a written contract of employment (Def. Ex. C), with plaintiffs with reference to two comic features known as "Slam Bradley" and "The Spy", the material for which

Exhibit C

54

plaintiffs had been furnishing Nicholson Publishing Company; said contract provided in part as follows:

> "2. The Employees agree to give their exclusive services as artists in producing features known as "Slam Bradley" and "The Spy" during said period of employment, to the Employer, and agrees that all of these products and work done by said Employee for said Employer during said period of employment, shall be and become the sole and exclusive property of the Employer, and the Employer shall be deemed the sole creator thereof, the Employee acting entirely as the Employer's employee.

> "3. In the event that the Employee leaves the service of the Employer prior to the termination date set forth in this Agreement or subsequent thereto, and for any reason whatsoever, the Employees agree that they will not, directly or indirectly, and through any means whatsoever, use, duplicate, simulate or bring into being any of the products or work or creations of characters or plots used, made or created by him while in the employ of the Employer.

> "4. It is understood that any new and additional features which the Employees produce for use in a comic magazine are to be first submitted to the Employer, who reserves the right to accept or reject same within a period of Sixty days."

16. At the said conference defendant LIEBOWITZ and plaintiff SIEGEL discussed the possibility of DETECTIVE COMICS, INC. publishing a new magazine and plaintiffs furnishing new comic strips for such magazine; defendant LIEBOWITZ told plaintiff SIEGEL that if DETECTIVE COMICS, INC. published such a magazine and accepted and published any comic features created by plaintiffs, they would be paid at the increased rate of $10. per page, but that DETECTIVE COMICS, INC. would have to own all rights to such comic features.

17. Early in 1938, DETECTIVE COMICS, INC. decided to publish a new comic magazine to be called "Action Comics".

18. Thereupon, DETECTIVE COMICS, INC. inquired of defendant THE MC CLURE NEWSPAPER SYNDICATE as to whether the

Exhibit C
55

latter had any available material suitable for the proposed magazine "Action Comics".

19.  Defendant THE MC CLURE NEWSPAPER SYNDICATE, then submitted to DETECTIVE COMICS, INC. the SUPERMAN comic strip created by plaintiffs, which strip consisted of a few panels suitable for newspaper syndication (Pl. Ex. 2).

20.  The said SUPERMAN comic strip material had been rejected by defendant THE MC CLURE NEWSPAPER SYNDICATE, but had remained in its custody for a long time.

21.  DETECTIVE COMICS, INC. examined the said SUPERMAN material and returned it to plaintiffs for revision and expansion into a full length thirteen page comic strip release suitable for magazine publication.

22.  Plaintiffs revised and expanded the said SUPERMAN material in compliance with the said request of DETECTIVE COMICS, INC. and on or about February 22, 1938 resubmitted such revised and expanded material to DETECTIVE COMICS, INC.  Said material, consisting of ninety-nine separate panels, constituted the formula for the continuing SUPERMAN series to come.  It depicted and narrated the origin of the character SUPERMAN, and contained a complete delineation of the pictorial representation of SUPERMAN, of his habits and character, of the superhuman powers and attributes with which SUPERMAN was endowed and of the sphere of public good which SUPERMAN exploits were to enhance.

Exhibit C
56

20

23.  Previous to March 1, 1938, there was due and owing by DETECTIVE COMICS, INC. to the plaintiffs the sum of $130.00, and the $130.00 recited as consideration in Plaintiffs' Exhibit 11 is the same $130.00 which was previously due and owing by DETECTIVE COMICS, INC. to the plaintiffs on or about February 22, 1938.

24.  On March 1, 1938, prior to the printing of the first issue of "Action Comics", DETECTIVE COMICS, INC. wrote to plaintiff SIEGEL at Cleveland, Ohio, where he and plaintiff SHUSTER both resided, enclosing a check in the sum of $412. which included $130. in payment of the first thirteen page SUPERMAN release at the agreed rate of $10. per page, and a written instrument for plaintiffs' signatures (Pl. Ex. 11).

25.  Said instrument, dated March 1, 1938, read as follows:

"Detective Comics, Inc.
480 Lexington Avenue
New York, N.Y.

"I, the undersigned, am an artist or author and have performed work for strip entitled "SUPERMAN".

"In consideration of $130.00 agreed to be paid me by you, I hereby sell and transfer such work and strip, all good will attached thereto and exclusive right to the use of the characters and story, continuity and title of strip contained therein, to you and your assigns to have and hold forever and to be your exclusive property and I agree not to employ said characters or said story in any other strips or sell any like strip or story containing the same characters by their names contained therein or under any other names at any time hereafter to any other person, firm or corporation, or permit the use thereof by said other parties without obtaining your written consent therefor.  The intent hereof is to give you exclusive right to use and acknowledge

7

**Exhibit C**

**57**

21

that you own said characters or story and the use
thereof, exclusively.  I have received the above sum of
money.

                              Sgd.  Joe Shuster

                              Sgd.  Jerome Siegel

Accepted:

    DETECTIVE COMICS, INC.

    By  Sgd.  J.S. Liebowitz"

    26.  The instrument of March 1, 1938 (Pl. Ex. 11)
was duly received by mail at Cleveland, Ohio, by plaintiffs,
who thereupon executed it, and on March 3, 1938 returned it
by mail to DETECTIVE COMICS, INC.

    27.  On or about the 3rd day of March, 1938, the
plaintiffs executed an instrument dated March 1, 1938, which
granted to DETECTIVE COMICS, INC. certain rights with respect
to the comic strip SUPERMAN, which instrument has been re-
ceived in evidence and marked Plaintiffs' Exhibit 11.

    28.  The instrument of March 1, 1938 (Pl. Ex. 11)
was executed by plaintiffs by reason of their desire to see
SUPERMAN in print and in order to induce its publication by
DETECTIVE COMICS, INC.

    29.  The instrument of March 1, 1938 (Pl. Ex. 11)
represented the exercise by DETECTIVE COMICS, INC. of the
option granted to it by the said agreement of December 4,
1937 (Def. Ex. C).

    30.  Upon receipt by DETECTIVE COMICS, INC. of
the instrument of March 1, 1938 (Pl. Ex. 11), it published
the first SUPERMAN release in the June, 1938 issue of
"Action Comics", which magazine was issued for sale on
April 18, 1938.

                                                        **22**

**Exhibit C**
**58**

31.  The first thirteen pages of SUPERMAN material were published on April 18, 1938, in the June, 1938 issue of "Action Comics" magazine.

32.  The first thirteen pages of SUPERMAN material mentioned in paragraph 31 hereof were in existence and were in the possession of DETECTIVE COMICS, INC. before the execution of the instrument of March 1, 1938, Plaintiffs' Exhibit 11.

33.  The said first thirteen pages of SUPERMAN material mentioned in paragraphs 31 and 32 hereof and the panels submitted in Plaintiffs' Exhibit 2 were the only SUPERMAN material which had been submitted by the plaintiffs to DETECTIVE COMICS, INC. and which had come into the possession of DETECTIVE COMICS, INC. previous to the execution and delivery of the instrument of March 1, 1938, Plaintiffs' Exhibit 11.

34.  Plaintiffs' desire to see SUPERMAN in print and the realization of that desire by DETECTIVE COMICS, INC.'S acceptance of the SUPERMAN strip for publication and actually publishing it, were vital elements of consideration supporting the instrument of March 1, 1938 (Pl. Ex. 11).

35.  Between March, 1938 and March, 1947 DETECTIVE COMICS, INC. expended large sums of money and devoted much time and effort in the promotion and popularization of the comic strip SUPERMAN and the names and characters appearing therein.

36.  The said June, 1938 issue of "Action Comics" was followed by further issues published at regular intervals, each succeeding issue having a SUPERMAN comic strip prepared by plaintiffs, who continue to be paid by DETECTIVE COMICS, INC. at the agreed rate of $10. per page.

23

Exhibit C

59

37.   During September of 1938, DETECTIVE COMICS,
INC. and the defendants HARRY DONENFELD and JACOB LIEBOWITZ
made oral representations to the plaintiffs that DETECTIVE
COMICS, INC. owned SUPERMAN and had the power to discharge
the plaintiffs at any time and to cease receiving at the
hands of the plaintiffs any comic strip material depicting
SUPERMAN, and to cease publishing any such material created
by the plaintiffs and could thereafter legally continue to
produce literary and artistic material depicting SUPERMAN,
and the plaintiffs would be powerless to thereafter create
and publish any material depicting SUPERMAN and powerless
to receive any revenue from SUPERMAN.

38.   In September, 1938 DETECTIVE COMICS, INC.
represented to plaintiffs that it owned all rights to
SUPERMAN.  Said representation was believed by DETECTIVE
COMICS, INC. to be true, and was, in fact, true.

39.   On September 22, 1938, two agreements were
simultaneously executed, one of which was between DETECTIVE
COMICS, INC. and plaintiffs, and the other was between
DETECTIVE COMICS, INC., plaintiffs and THE MC CLURE NEWSPAPER
SYNDICATE.

40.   Both of said agreements were forwarded by mail
by DETECTIVE COMICS, INC. to plaintiff SIEGEL at Cleveland,
Ohio, for signature by both plaintiffs; they were duly exe-
cuted by both plaintiffs and returned by plaintiff SIEGEL
by mail to DETECTIVE COMICS, INC. on September 30, 1938.  In
all negotiations leading to the execution of said agreements
of September 22, 1938, plaintiff SIEGEL acted for himself
and for plaintiff SHUSTER and was duly authorized so to do
by plaintiff SHUSTER.

24

Exhibit C
10
60

41.  On or about September 28, 1938, DETECTIVE COMICS, INC. mailed to the plaintiffs for the purpose of execution by the plaintiffs the documents herein received in evidence and marked Plaintiffs' Exhibits 14 and 15, and enclosed in the same wrapper was the letter herein received in evidence and marked Plaintiffs' Exhibit 12.

42.  In the said letter, Plaintiffs' Exhibit 12, DETECTIVE COMICS, INC. made in writing to the plaintiffs the representation that DETECTIVE COMICS, INC. owned SUPERMAN and that the said DETECTIVE COMICS, INC. had the right to any time replace the plaintiffs in the creation of material depicting SUPERMAN and to continue to publish such material without receiving the same at the hands of the plaintiffs, and that the plaintiffs would be "the loser in the entire transaction".

43.  In the same letter, Plaintiffs' Exhibit 12, DETECTIVE COMICS, INC. and the defendant JACOB LIEBOWITZ represented that in a certain popularity poll held immediately before September 28, 1938, 30% of the returns from the readers designated SUPERMAN as the favorite comic strip feature.

44.  The agreement dated September 22, 1938 (Pl. Ex. 14), between plaintiffs and DETECTIVE COMICS, INC. provided for plaintiffs' employment for five years from September 22, 1938 with an option in favor of DETECTIVE COMICS, INC. for an additional five years.

45.  By said agreement, plaintiffs expressly confirmed that DETECTIVE COMICS, INC. was the exclusive owner

25

Exhibit C
61

of the comic strip known as SUPERMAN and of the right to

publish said comic strip and the characters contained

therein and the continuity thereof, and further provided

that plaintiffs would not,

> "hereafter at any place in the United States
> or in any foreign country, furnish to any
> other person, firm, corporation, newspaper
> or magazine any art or copy for any comics
> to be used in any strip or comic or news-
> paper or magazine containing the above titles
> or the characters or continuity thereof or in
> any wise similar thereto, but you shall furnish
> such material exclusively to us for the dura-
> tion of this agreement as such matter may be
> required by us or as designated by us in writing."

46.  By the terms of said agreement, DETECTIVE

COMICS, INC. agreed to pay plaintiffs for SUPERMAN magazine

strips (referred to by the parties as "releases") at the

rate of $10. per page and to pay them from 65% to 80% of

any income received by DETECTIVE COMICS, INC. from defendant

THE MC CLURE NEWSPAPER SYNDICATE, under the newspaper syndica-

tion agreement of the same date.

47.  By the terms of said newspaper syndication

agreement (Pl. Ex. 15), defendant THE MC CLURE NEWSPAPER

SYNDICATE, was given an eight months option dating from

October 1, 1938 for newspaper syndication of SUPERMAN.

48.  Defendant THE MC CLURE NEWSPAPER SYNDICATE

availed itself of said option.

49.  By the terms of said newspaper syndication

agreement, defendant THE MC CLURE NEWSPAPER SYNDICATE agreed

to pay DETECTIVE COMICS, INC. 40% to 50% of the net proceeds

from such syndication; this agreement was for a period of

five years from June 1, 1939 with the right in defendant THE

MC CLURE NEWSPAPER SYNDICATE to renew for a further period

of five years.

26

Exhibit C
62

50.   Defendants HARRY DONENFELD, JACOB LEIBOWITZ and PAUL H. SAMPLINER were the officers and directors of DETECTIVE COMICS, INC. until October 1, 1946, and have been since October 1, 1946, and are as of the date of the trial herein, the officers and directors of NATIONAL COMICS PUBLICATIONS, INC. and at all times mentioned in these findings were and are the officers and directors of the defendant INDEPENDENT NEWS CO., INC.

51.   Defendants HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H. SAMPLINER and INDEPENDENT NEWS CO., INC. at all times mentioned in these findings knew the terms of the plaintiffs' contracts with DETECTIVE COMICS, INC., Plaintiffs' Exhibit 14 and 15.

52.   On December 19, 1939, a modification agreement (Pl. Ex. 22), was entered into between plaintiffs and DETECTIVE COMICS, INC. by which plaintiffs' compensation for SUPERMAN magazine releases was increased to $20. per page, and in addition DETECTIVE COMICS, INC. agreed to pay to plaintiffs 5% of the net proceeds to be derived from commercial exploitation of SUPERMAN other than from magazine and book publication and newspaper syndication.

53.   On or about the 19th day of December, 1939, the plaintiffs and the defendant DETECTIVE COMICS, INC. entered into an agreement to modify the contract dated September 22, 1938, and the said agreement to modify the said contract was received in evidence and marked Plaintiffs' Exhibit 22.

27

13

Exhibit C

63

54.   During December of 1939 and immediately pre-
vious to the execution of Plaintiffs' Exhibit 22, DETECTIVE
COMICS, INC. and the defendant JACOB LIEBOWITZ represented
to the plaintiffs that DETECTIVE COMICS, INC. owned the
character SUPERMAN and was therefore under no obligation to
pay the plaintiffs anything on account of commercial licensing.

55.   Commencing with the July, 1940 magazine
releases, DETECTIVE COMICS, INC. increased plaintiff's
compensation for SUPERMAN magazine releases to $35. per page,
which, for the usual thirteen page release, amounted to
$455. per release.

56.   In February, 1942, DETECTIVE COMICS, INC.
increased plaintiffs' compensation for SUPERMAN magazine
releases to $500. per release.

57.   In August, 1942, DETECTIVE COMICS, INC. in-
creased plaintiffs' compensation for SUPERMAN magazine
releases to $600. per release.

58.   In March, 1943, by reason of the fact that
plaintiffs were not always able to fulfill their commitments
for production of the art work and continuity for both
magazine use and newspaper syndication, DETECTIVE COMICS,INC.
agreed with plaintiff SIEGEL to pay him the sum of $200. per
release for each SUPERMAN magazine release for which he did
not furnish the continuity and agreed with plaintiff SHUSTER
to pay him the sum of $150. per release for each SUPERMAN
magazine release for which he did not furnish the art work.

28

59.    In June, 1943, DETECTIVE COMICS, INC. increased plaintiffs' compensation for SUPERMAN magazine releases to $1,000. per release.

60.    In or about June, 1943, plaintiff SHUSTER commenced to submit his art work for SUPERMAN magazine releases in pencil instead of in ink as he had theretofore done.

61.    The cost of having said releases inked was $180.

62.    Plaintiff SHUSTER was paid for a time $500. less the sum of $180., or the sum of $320., for each SUPERMAN magazine release submitted in pencil.

63.    In July, 1943, plaintiff SIEGEL ceased to submit any continuity to DETECTIVE COMICS, INC. by reason of his induction into the Army of the United States.

64.    In December, 1944, DETECTIVE COMICS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he did not furnish the art work to the sum of $200.

65.    In March, 1946, DETECTIVE COMICS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he furnished the art work in pencil to $380.

66.    On December 12, 1946, defendant NATIONAL COMICS PUBLICATIONS, INC. increased the compensation of plaintiff SHUSTER for each magazine release of SUPERMAN for which he furnished the art work in pencil to $500.

29

Exhibit C
65

67.  Commencing in 1946, DETECTIVE COMICS, INC. turned over to plaintiffs all of the income received by it from THE MC CLURE NEWSPAPER SYNDICATE from newspaper syndication of SUPERMAN.

68.  In connection with outside commercial exploitation of SUPERMAN during the year 1941, DETECTIVE COMICS, INC. paid plaintiffs a bonus of $500. in lieu of 5% of the net income from that source.

69.  In connection with outside commercial exploitation of SUPERMAN during the year 1942, DETECTIVE COMICS, INC. and SUPERMAN, INC., on its behalf, paid plaintiffs a bonus of $7,000.

70.  SUPERMAN, INC. paid to each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1942, the sum of $2,000.00

71.  In connection with outside commercial exploitation of SUPERMAN during the year 1943, DETECTIVE COMICS, INC. and SUPERMAN, INC., on its behalf, paid plaintiffs a bonus of $6,000.

72.  SUPERMAN, INC. paid each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1943 the sum of $1,500.

73.  In connection with outside commercial exploitation of SUPERMAN during the year 1944, DETECTIVE COMICS, INC. and SUPERMAN, INC. on its behalf, paid plaintiffs a bonus of $6,000.

30

Exhibit C
66

74.   SUPERMAN, INC. paid to each of the plaintiffs on account of royalties from commercial exploitation of SUPERMAN for the year 1944 the sum of $1,500.

75.   In connection with outside commercial exploitation of SUPERMAN during the year 1945, DETECTIVE COMICS, INC. paid plaintiffs a bonus of $10,000.

76.   SUPERMAN, INC. paid the plaintiffs nothing on account of royalties for commercial exploitation of SUPERMAN, for the year 1945.

77.   In connection with outside commercial exploitation of SUPERMAN during the year 1946, defendant NATIONAL COMICS PUBLICATIONS, INC. paid plaintiffs the sum of $3,069.56.

78.   During the period commencing in December, 1937 and ending March, 1947, plaintiffs received in excess of $400,000. as compensation from DETECTIVE COMICS, INC., SUPERMAN, INC. and defendant NATIONAL COMICS PUBLICATIONS,INC.

79.   During the period commencing December 1, 1937 and ending March 1947, the plaintiffs received from DETECTIVE COMICS, INC., SUPERMAN, INC. and the defendant NATIONAL COMICS PUBLICATIONS, INC., in compensation for magazine publication and all outside exploitation including money received as bonuses the sum of $195,196.64.

80.   During the period commencing December 19,1939 and ending March 1947,the plaintiffs received from the defendants NATIONAL COMICS PUBLICATIONS, INC. and DETECTIVE COMICS, INC. the sum of $205,998.21 as compensation for the newspaper publication of SUPERMAN.

31

Exhibit C
67

81.  On or about August 30, 1943, DETECTIVE
COMICS, INC. duly notified each of the plaintiffs in writing
of its election to extend the term of the employment con-
tract of September 22, 1938 for an additional five year
period from September 22, 1943.

82.  Defendant THE MC CLURE NEWSPAPER SYNDICATE
duly notified DETECTIVE COMICS, INC. of its election to
extend for five years from June 1, 1944, the term of the
newspaper syndication agreement dated September 22, 1938.

83.  Plaintiff SIEGEL upon his return to civilian
life in January of 1946 was willing and able to supply the
full complement of continuity for all of the needs of news-
paper and magazine publication exactly as he had done before
the war.

84.  Plaintiff SHUSTER has not established that
DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-
TIONS, INC. has rejected any SUPERMAN art work prepared by
him, pursuant to any scheme to prevent him from producing
SUPERMAN material.

85.  Plaintiff SIEGEL has not established that
DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-
TIONS, INC. has rejected any SUPERMAN continuity prepared
by him, pursuant to any scheme to prevent him from producing
SUPERMAN material.

86.  Some of the continuity furnished by plaintiff
SIEGEL after his return to civilian status was deemed by

32

Exhibit C
68

DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-
TIONS, INC. to be unsuitable for publication in comic
magazines designed for juvenile readers and was rejected in
good faith.

87. During the period commencing in June, 1943
down to January, 1946, plaintiff SHUSTER failed to furnish
art work for the SUPERMAN comic strip in sufficient quanti-
ties to meet the requirements of DETECTIVE COMICS, INC.

88. Defendants HARRY DONENFELD, JACOB LIEBOWITZ,
PAUL H. SAMPLINER and INDEPENDENT NEWS CO., INC. did not
agree with each other or with DETECTIVE COMICS, INC.,
SUPERMAN, INC. or THE MC CLURE NEWSPAPER SYNDICATE, to
injure plaintiffs by depriving them of their rights under
their employment contract, or to interfere with, hinder
or impair the performance of such contract by the said
DETECTIVE COMICS, INC., or THE MC CLURE NEWSPAPER SYNDICATE.

89. Plaintiffs elected in their complaint to
rescind the contract dated September 22, 1938, and herein
marked in evidence as Plaintiffs' Exhibits 14 and 15, and
the various modifications thereof, and offered in their com-
plaint to release and discharge DETECTIVE COMICS, INC., THE
MC CLURE NEWSPAPER SYNDICATE and the defendant NATIONAL COMICS
PUBLICATIONS, INC. from any further obligation to perform
the same and did offer in their complaint to return to the
said DETECTIVE COMICS, INC., the defendant THE MC CLURE
NEWSPAPER SYNDICATE and the defendant NATIONAL COMICS PUBLICA-
TIONS,INC. all things which rightfully become theirs upon
such a rescission.

33

Exhibit C
69

90. LOIS LANE is and at all times was a central character in the SUPERMAN comic strip and was and is depicted as a girl reporter.

91. The comic strip LOIS LANE, GIRL REPORTER, was supplied by DETECTIVE COMICS, INC. to defendant THE MC CLURE NEWSPAPER SYNDICATE, without charge for use as a filler by newspapers which carried the comic strip SUPERMAN in order to prevent said newspapers from terminating their syndication agreements with defendant THE MC CLURE NEWSPAPER SYNDICATE as to the comic strip SUPERMAN.

92. From June 1, 1943 to March, 1947, DETECTIVE COMICS, INC. published in magazines, 120 releases of the comic strip SUPERMAN, for which plaintiff SIEGEL did not create the continuity.

93. DETECTIVE COMICS, INC. paid to plaintiff SIEGEL the sum of $200. per release for each of said 120 releases, which sum was accepted by plaintiff SIEGEL in full payment.

94. From July 1, 1943 to March, 1947, DETECTIVE COMICS, INC. published in magazines 130 releases of the comic strip SUPERMAN for which plaintiff SHUSTER did not create the art work.

95. DETECTIVE COMICS, INC. paid to plaintiff SHUSTER the sum of $150. per release for 80 of said releases, and the sum of $200. per release for 50 of said releases, which sums were accepted by plaintiff SHUSTER in full payment.

34

Exhibit C
70

96. On or about September 22, 1943, DETECTIVE COMICS, INC. entered into an agreement, Plaintiffs' Exhibit 56, with the defendant THE MC CLURE NEWSPAPER SYNDICATE, with reference to the comic strip entitled, LOIS LANE, GIRL REPORTER.

97. Thereafter DETECTIVE COMICS, INC. and the said defendant THE MC CLURE NEWSPAPER SYNDICATE did furnish to a newspaper "THE CLEVELAND PLAIN DEALER" various releases of the said comic strip LOIS LANE, GIRL REPORTER.

98. Affixed to the various individual releases of the said comic strip material LOIS LANE, GIRL REPORTER, which was furnished to a newspaper were the names of the plaintiffs as authors of the said individual releases of the said comic strip as published in the newspaper.

99. Plaintiffs were not the authors of the said individual releases of the comic strip LOIS LANE, GIRL REPORTER as published in the newspaper.

100. Plaintiffs did not give their permission for the use of their names as authors of the said releases of the said comic strip material LOIS LANE, GIRL REPORTER as published in the newspaper.

101. DETECTIVE COMICS, INC., the defendant THE MC CLURE NEWSPAPER SYNDICATE and the plaintiffs agreed in Plaintiffs' Exhibit 15 that "net proceeds" for the purposes of computing the plaintiffs' return from the newspaper publication of SUPERMAN should be the entire gross receipts, deducting therefrom only the cost of cuts, mats and proofs

35

Exhibit C

71

and it was specifically provided that no other expenses what-
soever should be deductible from gross receipts in order to
arrive at "net proceeds".

102.  In the agreement, Plaintiffs' Exhibit 56,
DETECTIVE COMICS, INC. and the defendant THE MC CLURE NEWS-
PAPER SYNDICATE agreed to and with each other that the
compensation of the artists engaged by DETECTIVE COMICS, INC.
to draw the releases of LOIS LANE, GIRL REPORTER to be fur-
nished by DETECTIVE COMICS, INC. to the defendant THE MC CLURE
NEWSPAPER SYNDICATE for newspaper publication, was to be
deducted from the gross receipts of the SUPERMAN syndication
as "mechanical costs" in computing "net proceeds".

103.  Defendant THE MC CLURE NEWSPAPER SYNDICATE
and DETECTIVE COMICS, INC. did during the period of publica-
tion in said newspaper of LOIS LANE, GIRL REPORTER deduct
from the gross receipts from newspaper syndication of
SUPERMAN the compensation of the artists engaged by DETECTIVE
COMICS, INC. to draw LOIS LANE, GIRL REPORTER, in computing
"net proceeds".

104.  Plaintiffs were not parties to Plaintiffs'
Exhibit 56 and were given no notice by DETECTIVE COMICS, INC.
and the defendant THE MC CLURE NEWSPAPER SYNDICATE of the
existence thereof or the terms thereof.

105.  The existence of the provision in Plaintiffs'
Exhibit 56 for deducting the compensation of the artists en-
gaged by DETECTIVE COMICS, INC. to draw LOIS LANE, GIRL
REPORTER from gross receipts from publication of SUPERMAN

36

Exhibit C
72

in newspapers in computing net proceeds was unknown to the
plaintiffs until May, 1947, when the plaintiffs received the
answer in this action of THE MC CLURE NEWSPAPER SYNDICATE,
with a true copy of Plaintiffs' Exhibit 56 attached thereto.

106.  Plaintiffs did not know until May of 1947,
at the time they received the answer of the defendant THE
MC CLURE NEWSPAPER SYNDICATE, that DETECTIVE COMICS, INC. and
the defendant THE MC CLURE NEWSPAPER SYNDICATE had deducted
from gross receipts in computing "net proceeds" from the
newspaper publication of SUPERMAN, the compensation of the
artists who drew the newspaper comic strips LOIS LANE, GIRL
REPORTER.

107.  DETECTIVE COMICS, INC. authorized Random
House, Inc., an independent book publisher, to publish a
book entitled "The Adventures of Superman", for which
plaintiffs did not supply the material, except for four il-
lustrations prepared by plaintiff SHUSTER.

108.  Random House, Inc. is a domestic corporation
duly organized and existing under and by virtue of the laws
of the State of New York.

109.  The book entitled "The Adventures of Superman"
is not a collection of SUPERMAN comic strips, but a work of
fiction in the form of a full length novel.

110.  The modification agreement dated December
19, 1939, expressly excludes book publication as an item
of income in which plaintiffs were entitled to participate.

111. DETECTIVE COMICS, INC. received payments from Random House, Inc. which it included (without obliga- tion so to do) in the gross receipts applicable to commercial exploitation of SUPERMAN.

112. "Superman-Tim" was a booklet printed by Diamond Sales Corporation pursuant to a license from DETECTIVE COMICS, INC., which contained SUPERMAN material.

113. "Superman-Tim" was sold to various depart- ment stores whose names were printed on said booklet and was distributed gratis to their customers.

114. "Pyco-Pay" was a booklet distributed to dentists by Pyco-Pay Company, which contained SUPERMAN material pursuant to a license from DETECTIVE COMICS, INC.

115. The booklet "Pyco-Pay" was designed to teach children the proper care of their teeth and was distributed by dentists gratis to their young patients.

116. "The Christmas Book" was a booklet printed by Diamond Sales Corporation, which contained SUPERMAN material pursuant to a license from DETECTIVE COMICS, INC.

117. "The Christmas Book" was sold to depart- ment stores, which printed their names thereon and distributed it gratis to their customers.

118. The booklets "Superman-Tim", "Pyco-Pay" and "The Christmas Book" were not sold to the public and were not SUPERMAN comic magazine releases.

38

Exhibit C
74

119. The Kellogg Company, sponsor of the SUPERMAN radio program, printed SUPERMAN material upon cartons of its breakfast food, with the consent of DETECTIVE COMICS, INC.

120. The Kellogg Company made no payment for said SUPERMAN material.

121. R.H. Macy & Co., Inc. caused an advertisement containing SUPERMAN material to be printed in the New York Journal-American on one occasion, in connection with a Thanksgiving Day parade held by R.H. Macy & Co., Inc., which material was printed with the consent of DETECTIVE COMICS, INC.

122. R. H. Macy & Co., Inc. made no payment for said SUPERMAN material.

123. The two agreements of September 22, 1938 between plaintiffs and DETECTIVE COMICS, INC. (Pl. Ex. 14), and plaintiffs, DETECTIVE COMICS, INC. and THE MC CLURE NEWSPAPER SYNDICATE (Pl. Ex. 15), respectively, referred specifically to magazine releases and newspaper syndication, and made no reference to the publication of promotional material.

124. The commercial exploitation of SUPERMAN was first referred to in the modification agreement of December 19, 1939, which agreement expressly provided that DETECTIVE COMICS, INC. had the unrestricted right to grant to others, upon such basis as DETECTIVE COMICS, INC., in its sole discretion, should determine, any rights to repro-

39

Exhibit C
75

duction with respect to the comic strip SUPERMAN, and the
titles and characters and continuity thereof.

125.   From November, 1945 to March, 1947,
DETECTIVE COMICS, INC., SUPERMAN, INC. and defendant
NATIONAL COMICS PUBLICATIONS, INC. published 20 releases
of comic strips for which plaintiff SHUSTER created and
executed the art work in pencil and for which he accepted
the sum of $380. per release in full payment.

126.   In the year 1946 DETECTIVE COMICS, INC.
published four releases of the comic strip SUPERMAN, for
which plaintiff SIEGEL did not furnish the continuity and
for which DETECTIVE COMICS, INC. sent to him its check in
full payment, at the rate of $200. per release.

127.   Plaintiff SIEGEL has retained the said
check.

128.   During 1946 DETECTIVE COMICS, INC. published
four certain releases of the comic strip SUPERMAN entitled
"Malten World", "Mad Weather in Metropolis", "Superself"
and "Mxyz and the Wonderful Lamp", for which the plaintiff
SIEGEL did not furnish the continuity.

129.   DETECTIVE COMICS, INC. delivered to the
plaintiff SIEGEL a check in the amount of $1,000. Plain-
tiffs' Exhibit 59, which was given as payment for the
four releases mentioned in paragraph 128 hereof and the
additional release entitled "Old Gang of Superboy's".

40

130.   The said check, Plaintiff's Exhibit 59, was given on March 15, 1946.

131.   Plaintiff SIEGEL advised DETECTIVE COMICS, INC. that he did not desire to cash the check, Plaintiffs' Exhibit 59, since it included a payment for a release of SUPERMAN bearing in its title the word "SUPERBOY" and that he could not do anything which would call into question in any way his rightful ownership of the comic strip SUPERBOY.

132.   DETECTIVE COMICS, INC. on July 9, 1946, by letter, Plaintiffs' Exhibit 63, agreed to furnish a new check to plaintiff in place of Plaintiffs' Exhibit 59, which would cover the four releases other than "Old Gang of Superboy's".

133.   Although the same has been duly demanded no other check has ever been given in payment for the four releases mentioned in paragraph 128 of these findings.

134.   Since December 19, 1939 SUPERMAN, INC., DETECTIVE COMICS, INC. and defendant NATIONAL COMICS PUBLICATIONS, INC. received various sums of money from the production of radio programs and motion pictures entitled SUPERMAN, and by the sale of licenses to various persons engaged in commercial enterprises and incurred expenses in connection therewith.

135.   SUPERMAN, INC., DETECTIVE COMICS, INC. and NATIONAL COMICS PUBLICATIONS, INC. from December 19, 1939 to date have acquired and received large sums of money by

41

the production of radio features and moving pictures entitled
SUPERMAN, based upon the characters, conception, plot and
incidents created by the plaintiffs, and by the sale of
licenses to various persons engaged in commercial enterprises
permitting the said persons to affix to their products and
to use in the furtherance of the said commercial enterprises
the name and pictorial representation of SUPERMAN.

136.   From December 19, 1939 until the present
time, SUPERMAN, INC., DETECTIVE COMICS, INC. and the defend-
ant NATIONAL COMICS PUBLICATIONS, INC. have had complete
control of all books, records and papers relating to the
matters set forth in paragraph 135 of these findings and
have at all times refused to permit the plaintiffs to examine
said books, records and papers.

137.   During the years 1940, 1941, 1942, 1943,
1944 and 1945 SUPERMAN, INC. and DETECTIVE COMICS, INC.
failed to render any account of the income and expenditures
relating to matters set forth in paragraph 135 hereof and
did refuse to furnish such account during the years 1940,
1941, 1942, 1943, 1944 and 1945.

138.   Plaintiffs during the years 1940, 1941, 1942,
1943, 1944 and 1945 did duly demand the rendering of an
account of the matters set forth in paragraph 135 of these
findings.

139.   On July 8, 1946, SUPERMAN, INC. and DETECTIVE
COMICS, INC. furnished what purported to be an account of the
matters set forth in paragraph 135 hereof for the years 1942

42

Exhibit C
78

1943, 1944 and 1945 and that the said account was as claimed by plaintiffs without substantial information and was insufficient to constitute an account of the matters dealt with in paragraph 135 of these findings.

140.  DETECTIVE COMICS, INC. and SUPERMAN, INC. and the defendants NATIONAL COMICS PUBLICATIONS, INC. have failed and refused to furnish any account whatsoever of the matters dealt with in paragraph 135 of these findings for the years 1940 and 1941.

141.  Defendant NATIONAL COMICS PUBLICATIONS, INC. during January, 1947 furnished a purported account of the matters dealt with in paragraph 135 hereof for the year 1946.

142.  The said purported account described in paragraph 141 was as claimed by plaintiffs incomplete and furnished insufficient information to constitute an account of the matters dealt with in paragraph 135 hereof.

143.  Plaintiffs have duly demanded that DETECTIVE COMICS, INC., SUPERMAN, INC. and the defendant NATIONAL COMICS PUBLICATIONS, INC. furnish a true and sufficient account of the matters mentioned in paragraph 135 of these findings for the years 1940, 1941, 1942, 1943, 1944, 1945 and 1946.

144.  Plaintiffs have duly performed all the terms and conditions of the contract, Plaintiffs' Exhibits 14 and 15, as modified by Plaintiffs' Exhibit 22, on their part to be performed up to the commencement of this action.

43

145.  Plaintiffs have not established any fraud or duress on the part of any of the defendants.

146.  Defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and DETECTIVE COMICS, INC. and SUPERMAN, INC., did not induce or agree to induce defendant WAYNE BORING to breach an employment agreement with plaintiff SHUSTER.

147.  Defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, and DETECTIVE COMICS, INC. and SUPERMAN, INC., did not interfere with or render impossible the performance of any agreement between defendant WAYNE BORING and plaintiff SHUSTER or agree so to do.

148.  Defendant WAYNE BORING did not breach his contract of employment with plaintiff SHUSTER.

149.  Defendant WAYNE BORING did not violate any rights of plaintiff SHUSTER.

150.  Defendant WAYNE BORING did not wrongfully furnish art work to any of defendants.

151.  Defendant WAYNE BORING has not, in any way, injured or damaged plaintiff SHUSTER.

152.  During the term of the agreement set forth in paragraph 153 of plaintiffs' proposed findings, the defendant BORING created cartoon material for DETECTIVE COMICS, INC. and SUPERMAN, INC. portraying the character SUPERMAN and entitled SUPERMAN, and the comic strip LOIS LANE, GIRL REPORTER, which comic strips were both based upon the

44

Exhibit C
80

conception, idea, plot, incidents and characters of the comic strip SUPERMAN, as therefore created by the plaintiffs.

153. Since the expiration of the employment of WAYNE BORING by the plaintiff SHUSTER, the defendant BORING, in the employ of DETECTIVE COMICS, INC., SUPERMAN, INC. and NATIONAL COMICS PUBLICATIONS, INC., created cartoon material entitled SUPERMAN which presented the character SUPERMAN and was based upon the conception, idea, plot, incidents and character of the comic strip SUPERMAN as theretofore created by the plaintiffs.

154. Defendants DETECTIVE COMICS, INC. and SUPERMAN, INC. knew of the plaintiff SHUSTER'S contract with the defendant BORING, Plaintiffs' Exhibit 101, as subsequently modified.

155. On November 30, 1938, plaintiff SIEGEL wrote to DETECTIVE COMICS, INC. and suggested that the latter publish a comic strip under the title of SUPERBOY, which would narrate the adventures of SUPERMAN as a youth.

156. On or about November 30, 1938, the plaintiff SIEGEL, in writing and by mail, submitted to DETECTIVE COMICS, INC. for its consideration and acceptance or rejection, for publication, under the terms of the contract dated September 22, 1938, Plaintiffs' Exhibit 14, a synopsis or summary of the idea and conception and plan of a new comic strip to be known as SUPERBOY, the said letter having been received in evidence and marked Plaintiffs' Exhibit 16.

157. On December 2, 1938, DETECTIVE COMICS, INC. deferred consideration of a SUPERBOY comic strip until some future time. (See Plffs. Ex. 17).

**Exhibit C**

**45**

**81**

158.  DETECTIVE COMICS, INC. did not within six weeks indicate its election to publish the said new comic strip SUPERBOY.

159.  DETECTIVE COMICS, INC. on or about December 2, 1938, by its letter in writing to the plaintiff SIEGEL did elect not to publish the said comic strip SUPERBOY under the terms of the contract dated September 22, 1938, Plaintiffs' Exhibit 14.

160.  During the month of December, 1940, the plaintiff SIEGEL submitted to DETECTIVE COMICS, INC. for its further consideration a complete script or scenario, Plaintiffs' Exhibit 36, containing the continuity, plan and dialogue for the first "release" or "releases" of the proposed new comic strip SUPERBOY, and that the said synopsis contained within itself the entire plan for the future publication of the said comic strip SUPERBOY and the conception of the character SUPERBOY, all set forth with detail and particularity.

161.  The officer and Director of DETECTIVE COMICS, INC. who received on behalf of DETECTIVE COMICS, INC. at the hands of the plaintiff SIEGEL the submission of the letter concerning SUPERBOY, Plaintiffs' Exhibit 16, and the scenario or script, Plaintiffs' Exhibit 36, was JACOB LIEBOWITZ.

162.  DETECTIVE COMICS, INC. did not within six weeks after the submission of the said script or scenario indicate its election to publish the said comic strip SUPERBOY.

46

Exhibit C
82

163.   Thereafter and during December of 1944 DETECTIVE COMICS, INC. did publish a certain comic strip release entitled SUPERBOY in a magazine entitled "More Fun Comics".

164.   The said comic strip release entitled SUPERBOY embodied and was based upon the idea, plan and conception contained in the plaintiffs, SIEGEL'S letter to DETECTIVE COMICS, INC. dated November 30, 1938, Plaintiffs' Exhibit 16.

165.   The said release of the said comic strip SUPERBOY published in December of 1944 embodied and was based upon the idea, conception and plan contained in the script or scenario submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC. in December of 1940, the said script being Plaintiffs' Exhibit 36.

166.   Said first thirteen pages of SUPERMAN material mentioned in paragraphs 31, 32 and 33 hereof did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as it was later submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC. in Plaintiffs' Exhibit 16 and Plaintiffs' Exhibit 36.

167.   Said first thirteen pages of SUPERMAN material mentioned in paragraphs 31, 32 and 33 hereof did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as published by DETECTIVE COMICS, INC. and the defendant NATIONAL COMICS PUBLICATIONS, INC. from December, 1944, until the date of the trial herein.

47

168.   The said publication was without the permission of the plaintiff SIEGEL.

169.   Thereafter DETECTIVE COMICS, INC. did publish releases of the said comic strip entitled SUPERBOY in magazines bi-monthly until February of 1946, and monthly thereafter until on or about October 1, 1946.

170.   From the 1st day of October, 1946, until the date of the trial herein, the defendant NATIONAL COMICS PUBLICATIONS, INC. has published monthly in magazines a comic strip entitled SUPERBOY.

171.   All of the comic strip material published under the title SUPERBOY was based upon the idea, plan, conception and direction contained in the letter, Plaintiffs' Exhibit 16.

172.   All of the comic strip material published under the title SUPERBOY was based upon the idea, plan, conception and direction contained in the scenario or script, Plaintiff's Exhibit 36, submitted by the plaintiff SIEGEL to DETECTIVE COMICS, INC.

173.   The publication of all comic strip material entitled SUPERBOY was at all times without the permission of the plaintiff SIEGEL.

174.   Plaintiff SIEGEL has received no payment on account of the publication of any of the material entitled SUPERBOY.

175.   All publications of SUPERBOY by DETECTIVE COMICS, INC. from April, 1945 until the 1st day of October,

48

Exhibit C
84

1946, and by the defendant NATIONAL COMICS PUBLICATIONS, INC.
from October 1, 1946, until the date of the trial herein,
contained affixed thereto the name of the plaintiffs SIEGEL
and SHUSTER.

176.  The use of the name of the plaintiff SIEGEL,
as alleged in paragraph 175 was without the consent of the
plaintiff SIEGEL.

177.  The officer and director of DETECTIVE COMICS,
INC., who on behalf of DETECTIVE COMICS, INC. caused the
material entitled SUPERBOY to be published as hereinbefore
set forth in these findings was JACOB LIEBOWITZ.

178.  The officer and director of NATIONAL COMICS
PUBLICATIONS, INC., who on behalf of NATIONAL COMICS
PUBLICATIONS, INC. caused the material entitled SUPERBOY
to be published as hereinbefore set forth in these findings,
was JACOB LIEBOWITZ.

179.  Defendant INDEPENDENT NEWS CO., INC. know-
ing of the rights of the plaintiff SIEGEL, under the con-
tracts, Plaintiffs' Exhibits 14 and 15, sold and distributed
to  newsdealers for resale to the public throughout the
United States, magazines containing the material entitled
SUPERBOY as hereinabove described and set forth.

180.  All the art work for the SUPERBOY releases
was prepared by plaintiff SHUSTER under the direction of
DETECTIVE COMICS, INC.

49

Exhibit C
85

181.  Plaintiff SHUSTER was paid in full by DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. for all the art work furnished by him in connection with said SUPERBOY comic strip releases.

182.  At the time that publication of the SUPERBOY comic strip was commenced, plaintiff SIEGEL was unavailable to furnish any of the continuity therefor being absent in military service.

183.  Upon the return of plaintiff SIEGEL to civilian status in January, 1946, DETECTIVE COMICS, INC. entered into negotiations with him regarding SUPERBOY, proposing certain payments to him and affording him the opportunity of supplying the continuity for SUPERBOY releases.

184.  No agreement was reached between DETECTIVE COMICS, INC. and plaintiff SIEGEL as a result of the aforesaid negotiations; however, defendant NATIONAL COMICS PUBLICATIONS, INC. has offered to pay plaintiff SIEGEL for SUPERBOY releases heretofore published, the same rate as he was paid for SUPERMAN magazine releases for which he did not furnish the continuity, i. e., at the rate of $200. per release of standard length of thirteen pages.

185.  That the defendants NATIONAL COMICS PUBLICATIONS, INC. and INDEPENDENT NEWS CO., INC., have continued to publish, sell or distribute the said comic strip SUPERBOY and threaten to continue to so publish the same.

50

Exhibit C
86

## CONCLUSIONS OF LAW

1. By virtue of the instrument of March 1, 1938, plaintiffs transferred to DETECTIVE COMICS, INC. all of their rights in and to the comic strip SUPERMAN including the title, names, characters and concept as same were set forth in the first release of said comic strip published in the June, 1938 issue of the magazine "Action Comics" and by virtue of said instrument DETECTIVE COMICS, INC. became the absolute owner of the comic strip SUPERMAN, including the title, names, characters and concept as the same were set forth in the said first release.

2. The instrument of March 1, 1938 was supported by valid consideration.

3. Any representations by DETECTIVE COMICS, INC. to plaintiffs that it owned SUPERMAN were neither false nor fraudulent.

4. The two agreements of September 22, 1938, namely that between DETECTIVE COMICS, INC. and plaintiffs, and that between DETECTIVE COMICS, INC., plaintiffs and defendant THE MC CLURE NEWSPAPER SYNDICATE, as originally made and as thereafter modified, are valid.

5. The said agreements of September 22, 1938 were not entered into by plaintiffs under duress nor were plaintiffs induced to execute the said agreements by any false or fraudulent representations.

6. There have been no material breaches of the said agreements of September 22, 1938, or of any modifications

51

**Exhibit C**
**87**

thereof, by DETECTIVE COMICS, INC., defendant NATIONAL COMICS
PUBLICATIONS, INC. or defendant THE MC CLURE NEWSPAPER
SYNDICATE.

7.  The publication by DETECTIVE COMICS, INC. or
SUPERMAN, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC.
of comic strips entitled Batman, Lois Lane, Girl Reporter,
Johnny Quick, The Flash, Green Lantern, Aquaman, Air Wave,
Hour-Man, Wonder Woman, Star-Man, Dr. Fate, Hawkman, Crimson
Avenger, The Ultra-Man, TNT and Dan the Dyna-Mite, Manhunter,
The Gay Ghost, Newsboy Legion starring The Guardian,
Tarantula, Mr. Terrific, Sandman, The Atom, The Green Arrow,
Dr. Mid-Nite, Genius Jones, Scribbly and The Red Tornado,
Robin, The Boy Wonder and Liberty Belle did not violate
any rights of plaintiffs in Superman nor are plaintiffs
entitled to any moneys by reason of such publication.

8.  Plaintiffs have failed to establish that def-
endants HARRY DONENFELD, JACOB LIEBOWITZ, PAUL H. SAMPLINER
and INDEPENDENT NEWS CO., INC. or any of them conspired
with DETECTIVE COMICS, INC., SUPERMAN, INC. or defendant THE
MC CLURE NEWSPAPER SYNDICATE to injure plaintiffs by depriv-
ing them of any rights under either of said agreements of
September 22, 1938, or any modification thereof.

9.  Publication by DETECTIVE COMICS, INC. and
defendant NATIONAL COMICS PUBLICATIONS, INC. of the comic
strip entitled LOIS LANE, GIRL REPORTER, did not violate
any rights of plaintiffs.

10.  No moneys are due and owing by DETECTIVE COMICS,
INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. to

52

Exhibit C
88

plaintiff SIEGEL for the 120 magazine releases of SUPERMAN for which he did not furnish the continuity and for which he received the sum of $200. per release.

11.  No moneys are due and owing by DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. to plaintiff SHUSTER for the 80 magazine releases of SUPER-MAN for which he did not furnish the art work and for which he received the sum of $150. per release.

12.  No moneys are due and owing by DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. to plaintiff SHUSTER for the 50 SUPERMAN magazine releases for which he did not furnish the art work and for which he received the sum of $200. per release.

13.  Plaintiffs are not entitled to an accounting of any profits received by SUPERMAN, INC. or DETECTIVE COMICS, INC. from publication of the book entitled "The Adventures of Superman".

14.  The SUPERMAN material which appeared in the booklets "Pyco-Pay", "Superman-Tim" and "The Christmas Book", on the cartons of breakfast food of The Kellogg Company, and in the advertisement of R. H. Macy & Co., Inc. appearing in the New York Journal-American constituted outside com-mercial exploitation of SUPERMAN as defined in the agreement of December 19, 1939.

15.  No moneys are due and owing by DETECTIVE COMICS, INC., SUPERMAN, INC. or defendant NATIONAL COMICS PUBLICATIONS, INC. to plaintiff SHUSTER for magazine releases of the comic strip SUPERMAN for which plaintiff SHUSTER

Exhibit C
89

furnished the art work in pencil and for which he received the sum of $380. per release, nor for any other art work furnished by plaintiff SHUSTER.

16.  The agreements of September 22, 1938, as originally made and as thereafter modified, are not illusory and do not lack mutuality.

17.  Plaintiffs have failed to establish that DETECTIVE COMICS, INC. or defendant NATIONAL COMICS PUBLICA-TIONS, INC. schemed or conspired in any manner to prevent plaintiffs from furnishing the continuity or art work for the SUPERMAN comic strip.

18.  Plaintiff SHUSTER has failed to establish that defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER and DETECTIVE COMICS, INC. and SUPERMAN, INC. or any combination including any of them, conspired to injure plaintiff SHUSTER by inducing defendant WAYNE BORING to breach his agreement with plaintiff SHUSTER or to interfere with the performance of said agreement.

19.  Plaintiff SHUSTER has failed to establish that defendants HARRY DONENFELD, JACOB LIEBOWITZ and PAUL H. SAMPLINER, or any of them, interfered in any manner with any contractual rights existing between plaintiffs and defendant WAYNE BORING.

20.  The evidence fails to sustain the allegations of the complaint against defendants THE MC CLURE NEWSPAPER SYNDICATE and WAYNE BORING.

21.  The complaint is dismissed on the merits as to each and every cause of action alleged therein, as to

54

Exhibit C
-4-
90

defendants THE MC CLURE NEWSPAPER SYNDICATE and WAYNE BORING,
and judgment is directed to be entered accordingly.

22.   Plaintiffs are entitled to an accounting of
all income and expenses of DETECTIVE COMICS, INC., SUPERMAN,
INC. and defendant NATIONAL COMICS PUBLICATIONS, INC. in
connection with the outside commercial exploitation of
SUPERMAN as defined in the agreement of December 19, 1939.

23.   Defendant NATIONAL COMICS PUBLICATIONS, INC.,
shall account to the plaintiffs for all income and profits ac-
quired by the defendants NATIONAL COMICS PUBLICATIONS, INC.,
INDEPENDENT NEWS CO., INC. and by DETECTIVE COMICS, INC. and
SUPERMAN, INC. through the production of radio features and
moving pictures entitled SUPERMAN and by the sale of com-
mercial licenses of all kinds, and that the profits derived
therefrom be divided according to law, and that the plaintiffs
have their just share thereof.

24.   Defendants shall be perpetually enjoined and
restrained from affixing the names of the plaintiffs to any
published material of any nature whatsoever and from affixing
the names of the plaintiffs to any advertising or from using
the names of the plaintiffs for any commercial purposes what-
soever.

25.   Plaintiff Siegel is the originator and the
sole owner of the comic strip feature SUPERBOY, and the de-
fendants NATIONAL COMICS PUBLICATIONS, INC. and INDEPENDENT
NEWS CO., INC., their agents, servants and employees are
perpetually enjoined and restrained from creating, publishing,
selling or distributing any comic strip material of the nature

55

Exhibit C
91

now and heretofore sold under the title SUPERBOY, or any
other comic strip material made in imitation of the con-
ception, characters, nature, incidents, action or plot of
the plaintiffs' comic strip SUPERBOY or from using any title
so imitative of SUPERBOY as will be calculated to deceive
the public so that it would believe the so entitled material
to have been created by the plaintiffs.

26. Plaintiff Siegel, as the originator and
owner of the comic strip feature SUPERBOY has the sole and
exclusive right to create, sell and distribute comic strip
material under the title SUPERBOY of the type and nature
heretofore published under that title and of the nature
described in plaintiffs' exhibits 16 and 36.

27. Defendants NATIONAL COMICS PUBLICATIONS, INC.,
and INDEPENDENT NEWS CO., INC. shall account to plaintiff
Siegel for all profits derived from the publication, sale
and distribution of all comic strip material entitled SUPER-
BOY by either of them or by SUPERMAN, INC. or by DETECTIVE
COMICS, INC., and the said profits derived from the said sale,
publication and distribution be divided according to law and
that the plaintiff Siegel have his just share thereof.

Dated: April 12, 1948.

Addison Young
OFFICIAL REFEREE,
Supreme Court, Westchester County

STATE OF NEW YORK, COUNTY OF WESTCHESTER SS.,
I, TIMOTHY G. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS,
WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL
THEREOF FILED IN MY OFFICE ON 4/13/48 AND THAT THE SAME IS A CORRECT
TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY
FEE PAID    2-13-00

56

Exhibit C
92

*Case reported in 364 F. Supp. 1032 (S. D. N. Y. 1973)*
*aff'd 508 F. 2d 909 (2d cir. 1974),*

# 73-2844

## United States Court of Appeals

### For the Second Circuit

---

JEROME SIEGEL and JOSEPH SHUSTER,

*Plaintiffs-Appellants,*

*against*

NATIONAL PERIODICAL PUBLICATIONS, INC.,
JACOB S. LIEBOWITZ, IRWIN DONENFELD and
PAUL H. SAMPLINER,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## JOINT APPENDIX

---

COUDERT BROTHERS
*Attorneys for Plaintiffs-Appellants*
200 Park Avenue
New York, New York 10017
973-3300

WEIL, GOTSHAL & MANGES
*Attorneys for Defendants-Appellees*
767 Fifth Avenue
New York, New York 10022
758-7800

---

57

Exhibit C
93

000000001

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Docket Entries | 1a |
| Complaint | 2a |
| Answer and Counterclaim | 10a |
| Exhibit A—Agreement of March 1, 1938 | 28a |
| Exhibit B—Agreement of December 4, 1937 | 29a |
| Exhibit C—Opinion of Referee J. Addison Young | 31a |
| Exhibit D—Findings of Fact | 43a |
| Conclusions of Law | 70a |
| Exhibit E—Interlocutory Judgment | 76a |
| Exhibit F—Stipulation | 80a |
| Exhibit G—Final Judgment | 87a |
| Affidavit of Edward C. Wallace Read in Support of Motion | 95a |
| Exhibit 1—Letter | 112a |
| Exhibit 2—Letter | 114a |
| Exhibit 3—Letter | 115a |
| Exhibit 4—Letter | 116a |
| Exhibit 5—Letter | 117a |
| Exhibit 6—Letter | 118a |
| Exhibit 7—Letter | 119a |

II

PAGE

Affidavit of Jerome Siegel Read in Opposition to
Motion ................................................................. 121a

Exhibit A—Superman (Synopsis) ...................... 132a

Exhibit B—Letter ...................................................... 139a

Exhibit C—Letter ...................................................... 141a

Exhibit D—Letter ...................................................... 142a

Affidavit of Joseph Shuster Read in Opposition to
Motion ................................................................. 143a

Affidavit of Gordon T. King Read in Opposition
to Motion ............................................................ 145a

Exhibit A—First Week of Inked Strips ............. 147a

Exhibit B—Three Weeks of Synopsized Strips 150a

Exhibit C—Excerpts from Liebowitz Deposition 163a

Exhibit D—Excerpts from Liebowitz Testimony
in Westchester Action ....................................... 168a

Opinion of Judge Morris E. Lasker ............................. 171a

**Exhibit C**
95

000000003

1 a

### DOCKET ENTRIES

COMPLAINT Filed April 8, 1959

ANSWER Filed April 30, 1959

MOTION FOR SUMMARY JUDGMENT Filed December 21, 1972

PAPERS IN OPPOSITION TO THE MOTION Filed March 8, 1973

OPINION OF JUDGE LASKER Filed October 18, 1973

60

Exhibit C
96

000000004

80 a

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - -x
                       :

JEROME SIEGEL and JOSEPH SHUSTER,

                 Plaintiffs,

    -against-

NATIONAL COMICS PUBLICATIONS, INC.,        STIPULATION
INDEPENDENT NEWS CO., INC., THE MC
CLURE NEWSPAPER SYNDICATE, HARRY
DONENFELD, JACOB LIEBOWITZ, PAUL H.
SAMPLINER and WAYNE BORING,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - -x

        IT IS HEREBY STIPULATED AND AGREED between
the above named parties and their respective attorneys, as
follows:

        1.  The interlocutory judgment entered
herein on the 13th day of April, 1948, shall be in
all respects vacated.

        2.  The complaint herein shall be dis-
missed as to each and every cause of action alleged
therein as to all defendants.

        3.  The plaintiffs shall be paid by
the defendant NATIONAL COMICS PUBLICATIONS, INC.,
the sum of NINETY FOUR THOUSAND THIRTEEN DOLLARS
AND SIXTEEN CENTS ($94,013.16) as and for all sums
due and owing to them under and pursuant to the
terms of the following agreements, as modified:

    (a)  Agreement dated December 4, 1947
between DETECTIVE COMICS, INC. and JEROME
SIEGEL and JOSEPH SHUSTER.

    (b)  Agreement dated September 22, 1938
between DETECTIVE COMICS, INC. and JEROME
SIEGEL and JOSEPH SHUSTER.

61

000000083

81 a

(c) Agreement dated September 22, 1938 between DETECTIVE COMICS, INC., JEROME SIEGEL, JOSEPH SHUSTER and THE MC CLURE NEWSPAPER SYNDICATE.

(d) Agreement dated December 19, 1939 between DETECTIVE COMICS, INC. and JEROME SIEGEL and JOSEPH SHUSTER.

4. All of the said agreements as originally made and as modified, are valid.

5. All of said agreements as originally made and as modified, are terminated insofar as plaintiffs may have any rights under and by virtue of said agreements, or any of them.

6. By virtue of the instrument of March 1, 1938, plaintiffs validly transferred to DETECTIVE COMICS, INC., one of the constituent corporations of defendant NATIONAL COMICS PUBLICATIONS, INC., all of their rights in and to the comic strip SUPERMAN, including the title, names, characters, concept and formula, as same were set forth in the first release of said comic strip published in the June, 1938 issue of the magazine "Action Comics" and by virtue of said instrument, said DETECTIVE COMICS, INC. became the absolute owner of the comic strip SUPERMAN, including the title, names, characters, concept and formula as the same were set forth in the said first release.

7. Defendant NATIONAL COMICS PUBLICATIONS, INC. is the sole and exclusive owner of and has the sole and exclusive right to the use of the title SUPERMAN and to the conception, idea, continuity, pictorial representation and formula

62

Exhibit D
98

000000084

82 a

of the cartoon feature SUPERMAN as heretofore
portrayed and published, and to create, publish,
sell and distribute and to cause to be created,
published, sold and distributed cartoon or other
comic strip material containing the characters
SUPERMAN (also known as "Clark Kent"), LOIS LANE,
PERRY WHITE and all other characters which have
heretofore appeared in said cartoon or other comic
strip material, and such sole and exclusive owner-
ship includes, but is not limited to, the fields of
book and magazine publications, newspaper syndica-
tion, radio broadcasts, dramatic presentations,
television, motion picture reproduction and all
other forms of reproduction and presentation,
whether now in existence or that may hereafter be
created, together with the absolute right to
license, sell, transfer or otherwise dispose of
said rights.

8.  Plaintiffs shall and do hereby
consent to a judgment enjoining and restraining them,
their agents, servants and employees, from creating,
publishing, selling or distributing, or permitting
or causing to be created, published, sold or distri-
buted any material of the nature heretofore created,
produced or published under the title SUPERMAN, or
any material created, produced or published in
imitation thereof, or from using, permitting or caus-
ing to be used in connection with any comic strip or
other material created by them the title SUPERMAN or
any title imitative of the title SUPERMAN, or which
shall contain as part thereof the word "SUPER".

EXHIBIT the

99

63

000000085

83 a

9. Defendant NATIONAL COMICS PUBLICATIONS, INC. is the sole and exclusive owner of and has the sole and exclusive right to the use of the title SUPERBOY and to create, publish, sell and distribute and to cause to be created, published, sold and distributed cartoon or other comic strip material containing the character SUPERBOY and all other characters which have heretofore appeared in said cartoon or other comic strip material and such sole and exclusive ownership includes, but is not limited to, the fields of book and magazine publications, newspaper syndication, radio broadcasts, dramatic presentation, television, motion picture reproduction and all other forms of reproduction and presentation whether now in existence or that may hereafter be created, together with the absolute right to license, sell, transfer or otherwise dispose of said rights.

10. Plaintiffs shall and do hereby consent to a judgment enjoining and restraining them, their agents, servants and employees, from creating, publishing, selling or distributing, or permitting or causing to be created, published, sold or distributed any material of the nature heretofore created, produced or published under the title SUPERBOY, or any material created, produced or published in imitation thereof, or from using, permitting or causing to be used in connection with any comic strip or other material created by them the title SUPERBOY or any title imitative of the title SUPERBOY.

64

**Exhibit D**

100

000000086

## 84 a

9.   Defendant NATIONAL COMICS PUBLICATIONS,
INC. is the sole and exclusive owner of and has the
sole and exclusive right to the use of the title
SUPERBOY and to create, publish, sell and distribute and
to cause to be created, published, sold and distributed
cartoon or other comic strip material containing the
character SUPERBOY and all other characters which
have heretofore appeared in said cartoon or other
comic strip material and such sole and exclusive
ownership includes, but is not limited to, the
fields of book and magazine publications, newspaper
syndication, radio broadcasts, dramatic presentation,
television, motion picture reproduction and all other
forms of reproduction and presentation whether now
in existence or that may hereafter be created, to-
gether with the absolute right to license, sell,
transfer or otherwise dispose of said rights.

10.   Plaintiffs shall and do hereby consent to
a judgment enjoining and restraining them, their
agents, servants and employees, from creating, pub-
lishing, selling or distributing, or permitting or
causing to be created, published, sold or distributed
any material of the nature heretofore created, pro-
duced or published under the title SUPERBOY, or any
material created, produced or published in imitation
thereof, or from using, permitting or causing to be
used in  connection with any comic strip or other
material created by them the title SUPERBOY or any
title imitative of the title SUPERBOY.

65

Exhibit D
101

000000087

85 a

11.  Plaintiffs shall and do hereby
consent to a judgment enjoining and restraining
them, their agents, servants and employees, from

(a)  Representing their past
connection with the comic strips SUPERMAN
and/or SUPERBOY in such manner as may be
likely to induce the belief that such past
connection still exists;

(b)  Making any representation
as to such past connection in conjunction with
any material, comic or otherwise, hereafter
issued by plaintiffs or either of them, or
with their consent or on their behalf, more
than half as conspicuous as to size, or more
conspicuous as to color, type of lettering or
style of print than the name or title of any
such hereafter issued material, or in any other
manner as may be likely to induce the belief
that defendant NATIONAL COMICS PUBLICATIONS,
INC. is or may be associated with such here-
after issued material; and

(c)  Using any colors, lettering
and/or printing in referring to the words
SUPERMAN and/or SUPERBOY imitative of the
colors, lettering and/or printing now or here-
after used by defendant NATIONAL COMICS
PUBLICATIONS, INC. in portraying said words or
either of them.

12.  Defendant NATIONAL COMICS PUBLICA-
TIONS, INC. is the sole and exclusive owner, with
all rights of absolute ownership thereto appertaining,

86 a

in and to the comic strips entitled Batman; Lois
Lane, Girl Reporter; Slam Bradley; Johnny Quick;
The Flash; Green Lantern, Aquaman; Air Wave; Hour-
Man; Wonder Woman; Star-Man; Dr. Fate; Hawkman;
Crimson Avenger; The Ultra-Man; TNT and Dan the
Dyna-Mite; Manhunter; The Gay Ghost; Newsboy
Legion starring the Guardian; Tarantula; Mr.
Terrific; Sandman; The Atom; The Green Arrow;
Dr. Mid-Nite; Genius Jones; Scribbly and The Red
Tornado; Robin, the Boy Wonder; and Liberty Belle.

Dated: New York, N.Y.
May //, 1948.

Document Signed
By the Parties and
their attorneys
and their signatures
were acknowledged
By a notary Public

Jerome Siegel

Joseph Shuster

NATIONAL COMICS PUBLICATIONS, INC.

By _____
Vice-President

INDEPENDENT NEWS CO., INC.

By _____
President

THE MC CLURE NEWSPAPER SYNDICATE

By _____
Treasurer

Harry Donenfeld

Jacob Liebowitz

Exhibit D

Paul _____

103

67

000000089