There shall be deducted from amounts included in Defined Gross hereunder a pro rata share of re-use fees and costs of recording and manufacturing masters advanced by Warner or the Record Company. Sales shall be determined on the basis of the number of records sold and for which the Record Company has been paid in U.S. currency, after allowing for all returns, cancellations, exchanges, applicable discounts, etc. and reasonable reserves which may be established therefor. No sums shall be included in Defined Gross with respect to records given away or sold at less than the Record Company's cost or for promotional purposes, or as sales inducements or otherwise.

If the agreement or Exhibit to which this Exhibit is attached provides for distribution fees, no distribution fees shall be charged on amounts included in Defined Gross pursuant to this Exhibit.

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "2"
2
**Exhibit BB**
262

35493

**WB136063
CONFIDENTIAL**

## MERCHANDISING INCOME

In the event the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to share directly in merchandising revenue, there shall be included in Defined Gross of the Picture:

(a)  A sum equal to 50% of all license fees (in excess of all royalties and participations) received by Warner directly as a result of the exercise by Warner itself of merchandising license rights.  If, however, Warner shall sublicense or sub-contract any of such merchandising license rights, Warner shall include in the Defined Gross hereunder, at its election, either a sum equal to (i) 85% of the net sums (in excess of all royalties and participations) received from such sub-licensee; or (ii) 50% of such sub-licensee's license fees from the exercise of such licensing rights (from which there shall be deducted all royalties and participations), and out of the remaining 50% thereof Warner shall pay and discharge the fees of its sub-licensee.

(b)  If the publication rights to the underlying literary material were owned or controlled by the party entitled to share in Defined Gross of the Picture under the foregoing agreement (herein called "participant") prior to the execution of this agreement, and were acquired by Warner pursuant to or in connection with this agreement, then (i) all net sums received by Warner from nonaffiliated or nonsubsidiary publishers from the publication of such underlying literary material and  of novelizations of the screenplay of the Picture, and (ii) a sum equal to 5% of the net receipts of Warner's subsidiary or affiliated publishers from the publication of such material and novelizations, less, in either case, royalties paid out of (i) or (ii) to the writers of such material and novelizations.

If the agreement or Exhibit to which this Exhibit is attached provides for distribution fees, no distribution fees shall be charged on amounts included in Defined Gross pursuant to this Exhibit.

FI802
021026MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "3"

**Exhibit BB**

**263**

35493

**WB136064
CONFIDENTIAL**

RIDER TO EXHIBIT "B"

DEFINED GROSS IN EXCESS OF CONTRACTUAL START POINT
MOVING BASIS

COMPUTATION AND PAYMENT

All paragraph references herein refer to paragraph numbers in the Exhibit to which this rider is attached.  The provisions herein shall control to the extent they conflict with the provisions in the Exhibit to which this rider is attached.

Paragraph 2:  The first sentence in paragraph 2(c) shall end after the words "in 9 hereof".

Paragraph 3:  Warner shall elect paragraph 3(b)(i) during the initial theatrical release of the Picture in the following territories:  United Kingdom, Canada, France, Germany, Italy, Australia, New Zealand, Benelux, Scandinavia, South Africa, South Korea, Spain, Switzerland, Taiwan and Japan.

Defined Gross shall include all sums actually received by Warner from recoveries of infringement, unfair competition, trademark and piracy actions with respect to the Picture.  Recoveries by Warner from infringement, unfair competition, trademark and piracy actions with respect to the Picture representing penalties rather than actual or statutory damages shall be included in Defined Gross of the Picture without any distribution fee.  Defined Gross shall also include all sums derived by Warner from distribution of the Picture on a four-wall basis as such term is commonly understood in the motion picture industry.

In subparagraph (d), the parenthetical in the second and third lines is deleted.  Licenses to cable operators referred to in paragraph 3(d)(iii) specifically include all forms of pay, subscription, and other types of non-free television.

Paragraph 4:  The distribution fee on Defined Gross of the Picture derived by Warner from prime time United States telecast of the Picture on free television on ABC, NBC or CBS or another national network (if any) shall be 25%.  For a network other than ABC, NBC or CBS to be considered a national network, it must (i) own or be affiliated with over 200 television stations or a sufficient number to give national coverage comparable to ABC, NBC or CBS; (ii) offer Warner centralized purchasing of motion pictures for distribution to the owned or affiliated stations; (iii) offer a centralized clearing for distribution of the Picture over said television stations (i.e., the network clears telecast of the Picture over its stations -- not the distributor); (iv) handle itself or through affiliated stations the sale of advertising; and (v) pay a single pre-agreed sum for telecast of the Picture over all of its owned and affiliated stations.

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.                    Rider to Exhibit "B"

35493

**Exhibit BB**
264

**WB136065
CONFIDENTIAL**

<u>Paragraph 5</u>: If Warner sets up reserves, such reserves must be reasonable and appropriate, and shall be liquidated in no more than eighteen (18) months, except for reserves for taxes, which Warner may withhold longer. If Warner sets up a reserve for taxes which Warner later discovers are not payable, Warner shall credit such reserve back into Defined Gross. In addition, Warner shall reduce the interest on unrecouped production cost by an amount equal to the interest which accrued on an amount of production cost equal to the reserves so withheld. In paragraph 5(a), the cost of tapes and cassettes referred to therein shall not include any manufacturing costs of home video exhibition or distribution.

In 5(a) and 5(b), if Warner receives any discounts, rebates or credits (not including any cash discounts for accelerated payment), such discounts, rebates or credits shall be credited to the costs referred to in subdivision (a) and (b).

In 5(b), reuse fees and costs of recording and manufacturing masters for soundtrack phonograph records will only be charged as distribution expenses to the extent the record company does not pay same.

In 5(b), subdivision (i) is deleted.

In 5(b) and 5(c), the salaries and expenses of Warner's own employees will be charged to a Picture only if such employees substantially work on that Picture directly. Where any Warner advertising or publicity employee (other than an executive supervisory employee) or facility is used for the Picture, then the salary of such employee and the cost of such facility (while so used for the Picture) shall be direct costs under paragraph 5.

In 5(d), line 2, the word "gross" shall be inserted before the word "income". Change the words "Subject to" on line 17 to "Notwithstanding". The following shall be added at the end of subparagraph (d) : "If Warner receives a refund from the taxing authority which previously assessed any taxes previously deducted hereunder, the amount of such refund together with any interest received thereon shall be credited against sums deductible under this paragraph 5."

In 5(f), deductible costs and expenses will not include the salaries of Warner's regularly employed in-house legal or accounting staff. The allocable portion of checking and collection costs referred to therein shall be limited to 1% of the Defined Gross of the Picture.

In 5(g), the dues and assessments referred to therein shall be limited to 1% of the Defined Gross of the Picture.

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "B"
2
**Exhibit BB**
265

35493

**WB136066
CONFIDENTIAL**

In 5(h), the word "reasonably" shall be inserted in between the words "may deem" and "necessary" on line 5. The last sentence of subparagraph (h) shall be revised to read the following: "Nothing herein contained shall be construed as a waiver of any of Participant's warranties contained in this Agreement, or waiver of any right or remedy at law or otherwise which may exist in favor of Warner against Participant, which rights may include the following: the right to require Participant to reimburse Warner on demand for any liability, cost, damage, or expense arising out of, or resulting from, any breach by Participant of any warranty, undertaking or obligation by Participant, or any right on the part of Warner to recoup or recover any such cost or expense out of Participant's share of any monies payable hereunder, rather than treating such costs or expenses as distribution expenses."

In 5(i) after "participations in the Picture" on line 10 add the following: "but excluding from this subdivision (i) any such participations in the Picture themselves." Delete the phrase in lines 14-15: "or to compensation for services rendered beyond any guaranteed period referred to in the foregoing agreement."

In 5(j), there shall be added at the end thereof the following: "Insurance recoveries relating to cost of production of the picture shall be credited first to recoupment of cost of production of the picture and then to recoupment of distribution expenses. All other insurance recoveries relating to distribution expenses as described in this paragraph 5 shall be credited against distribution expenses. Distribution expenses which are reimbursed by a third party and distribution expenses incurred but not ultimately paid by Warner shall be credited to distribution expenses under paragraph 5 (unless such reimbursements and/or payments of expenses are made by parties to financing arrangements with Warner)."

Paragraph 6: The words "all such costs" in line 12 mean allowances paid and granted on account of cooperative theater or joint advertising. At the end of paragraph 6 there shall be added the following: "provided, however, that the terms and conditions of the agreement between Warner and theaters, television stations or other facilities owned or controlled by Warner relating to film rentals shall be consistent with similar terms and conditions between such theaters and another studio relating to a comparable non-Warner picture. Nonrefundable advances received by Warner shall be included as Defined Gross hereunder when received, if such advances relate to licenses of the Picture as a single motion picture for national network or pay television."

Paragraph 7: In line 12, the words "and reasonably" shall be inserted before "apportioned", and the words "in good faith" shall be inserted after the word "apportioned".

Paragraph 8: Paragraph 8 shall be deleted in its entirety and the following shall be substituted: "Sums received by Warner which relate to the Picture shall not be included in Defined Gross hereunder unless and until such sums (i) have been received by

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.                    Rider to Exhibit "B"
                                                              3
                                                 **Exhibit BB**
                                                      **266**

35493

**WB136067**
**CONFIDENTIAL**

Warner in U.S. dollars in the United States; or (ii) are freely remittable to the United States; or (iii) are used by Warner for any purpose in the territory involved. In this event, the U.S. dollar equivalent of the currency utilized in a territory shall be included in Defined Gross hereunder for the accounting period during which such Defined Gross were so utilized, such U.S. dollar equivalent to be computed at the official or unofficial rate of exchange, as Warner may elect. As for expenses incurred in foreign territories, Warner will compute the U.S. dollar equivalent of the currency utilized in the Territory, such U.S. dollar equivalent to be computed on the same basis as used for Defined Gross for the accounting period involved. Warner will, promptly after receipt of a written request from Participant (but not more frequently than annually), advise Participant in writing as to foreign revenues not included in Defined Gross as aforesaid, and Warner shall, at the written request and expense of Participant (subject to any and all limitations, restrictions, laws, rules and regulations affecting such transactions), deposit into a bank designated by Participant in the country involved, or pay to any other party designated by Participant in such country, only such part thereof as would have been payable to Participant hereunder. Such deposits or payments to or for Participant shall constitute due remittance to Participant, and Warner shall have no further interest therein or responsibility therefor. At Participant's written request, Warner will use its best efforts to convert such deposits or payments into U.S. dollars to the same extent and in the same proportion that Warner is able to convert its own blocked currencies in the country or countries involved. Warner makes no representations or warranties that any part of any such foreign currencies may be converted in U.S. dollars or transferred to the account of Participant in any foreign country. In no event shall Warner be obligated to apply Defined Gross of any country not actually received by Warner in U.S. dollars in the United States to the recoupment of any costs or expenses incurred with respect to the Picture in any other country."

Paragraph 9: In 9(a) the cost of all items listed on Warner's standard delivery schedule shall be included in cost of production only for such items which are prepared for the Picture. The cost of Warner facilities shall be included in the cost of production only if actually used.

In 9(b) interest on the cost of production shall not be deemed part of the direct cost of production subject to said overhead charge.

Paragraph 10: In line 2, the words "in summary form" shall be substituted by "in reasonable detail".

The second and third sentences shall be deleted and the following substituted: "Statements shall be issued for each calendar quarter until the Picture has been in release for four years from and including the quarter in which the Picture was first released, semiannually for an additional period of two years, and thereafter annually. If the Picture is reissued theatrically in the U.S., quarterly statements shall be resumed until substantially all of the revenues contemplated from such reissue have been

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "B"
**Exhibit BB**
267

35493

**WB136068
CONFIDENTIAL**

reported; and if the Picture is released to prime time U.S. network television and/or to a U.S. pay or cable network, statements shall be issued for quarterly accounting periods during which revenues from such sources are included in Defined Gross. Each such quarterly, semiannual or annual period, as the case may be, is herein referred to as an 'accounting period'."

The second to the last sentence of paragraph 10 shall be deleted and the following sentence shall be substituted: "The obligation of Warner to account for but not Participant's right to receive any share of the Defined Gross of the Picture shall terminate if the Picture has been made available for exhibition on syndicated television in the U.S.A., and if the first earnings statements issued thereafter shows a deficit under 2 hereof such that at least $1,000,000 of Defined Gross would be required before Participant would be entitled to receive any Defined Gross in excess of Contractual Start Point hereunder. Notwithstanding the foregoing, thereafter Employee may request a statement by written notice to Warner (but not more frequently than annually)."

The last sentence is deleted and the following substituted: "In the event a new medium of exhibition shall thereafter be developed and there shall be substantial exhibition and distribution of the Picture by such new medium which is likely to generate Defined Gross of $1,000,000 or the amount of the deficit, whichever is larger, Participant may audit Warner's records for the purpose of determining whether the Picture has earned, or is likely to earn, any Defined Gross in excess of Contractual Start Point, and thereafter Participant may request statements by written notice to Warner (but not more frequently than annually)."

Paragraph 11: The applicable records subject to audit shall include the records pertaining to the cost of production of the Picture. Change 24 to 36 in lines 11 and 18. Audits shall not continue for longer than sixty (60) consecutive business days. The words "or if an audit is commenced prior thereto, within thirty (30) days from the completion of the relative audit" in lines 18-20 are deleted and the following substituted: "provided however, that if an audit is completed at least one hundred twenty (120) days prior to the expiration of said thirty-six (36) month period, Warner may give written notice to Participant at any time after ninety (90) days from the completion of such audit requiring Participant to advise Warner in writing of any objections to the earnings statement involved, specifying the particulars of such objection, and if Participant does not make such written objections specifying the particulars thereof within sixty (60) days from receipt of such notice from Warner or, whether or not Warner gives such written notice to Participant, upon the expiration of said thirty-six (36) month period, whichever is earlier, Participant shall thereafter be barred from making any such objection or filing any suit, action or proceeding against Warner with respect to the earnings statement involved." Warner preapproves Sills & Adelmann; Gelfand, Rennert & Feldman; Breslauer, Jacobson, Rutman & Sherman; Nigro, Karlin & Segal; Phil Hacker & Company; and any of the so-called "big six" national accounting firms to conduct audits.

FI802
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "B"

**Exhibit BB**

**268**

35493

WB136069
CONFIDENTIAL

In line 15, after the words "more than once," add "except Purchaser shall not be precluded from again examining such records if the earnings statement is later altered or amended by Warner."

Paragraph 13: The following shall be added at the end thereof: "If Warner licenses the exhibition of the Picture to any theater or television station or other facility owned or controlled by Warner or in which Warner has an interest directly or indirectly, Warner shall do so on an arms-length basis, consistent with the manner in which Warner licenses the exhibition of the Picture to facilities in which it does not have an interest."

Paragraph 14  The second sentence of paragraph 14 is deleted and the following substituted in its place: "Any such sale, transfer or assignment shall be subject to Participant's rights hereunder, and upon the purchaser, transferee or assignee assuming in writing the performance of this agreement instead of Warner, if the purchaser, transferee or assignee is at the time a parent, subsidiary or affiliated corporation of Warner, or a corporation with or into which Warner may merge or consolidate, or a person, firm or corporation succeeding to all or a substantial portion of Warner's assets, or another major motion picture distributor as such term is understood in the motion picture industry, Warner shall be released and discharged of and from any further liability or obligation hereunder."

The following shall be added at the end thereof: "Upon request, Participant may obtain from Warner a copy of the written assumption of the obligations to Participant by such purchaser, transferor or assignee."

Music Publishing Income Exhibit: The second paragraph is deleted and the following substituted: "A sum equal to 75% of the 'publisher's share' of mechanical reproduction, synchronization license and performing fees received in U.S. currency by Warner's subsidiary or affiliated publisher with respect to music and lyrics written specifically for and synchronized in the Picture as released, provided the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to receive composers' or lyricists' royalties in respect of such music or lyrics. The 'publisher's share' of mechanical reproduction and synchronization license fees shall be the full amount paid by the licensee, less composers' share of such fees and less the charges of the publisher or any agent, trustee or administrator acting for the publisher for the collection of such fees, not to exceed 5% thereof."

At the end of the third paragraph, the following is added: "If Warner's subsidiary or affiliated publisher is not entitled to 100% of the publisher's share of mechanical reproduction, synchronization license, and performing fees by reason of "split" publishing agreement with the composer or lyricist of the music and lyrics involved, or any corporation furnishing the services of such composer or lyricist, then only the pro rata share of Warner's subsidiary or affiliated publisher shall be included for the purpose of the foregoing computations."

Fl802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "B"
6
**Exhibit BB**
**269**

35493

**WB136070**
**CONFIDENTIAL**

<u>Soundtrack Record Income Exhibit</u>:  The following is added at the end thereof:
"Notwithstanding anything herein contained, the royalty payable hereunder shall be the net royalty actually received and retainable by Warner for its own account from the Record Company, as such royalty may be reduced, calculated, computed and paid in the same manner as the soundtrack record royalty paid to Warner under the applicable agreement with the Record Company is reduced, calculated, accounted for and paid."

FI802
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "B"

**Exhibit BB**

**270**

35493

WB136071
CONFIDENTIAL

EXHIBIT "C"

DEFINED GROSS IN EXCESS OF CONTRACTUAL START POINT
INITIAL BASIS

COMPUTATION AND PAYMENT

1.    Definition of Parties:  "Warner" means Warner Bros., a division of Time Warner Entertainment Company, L.P., and its subdivisions, subsidiaries and affiliates engaged in the business of distributing motion pictures for exhibition in theaters and for broadcasting over television stations, but shall not include any other persons, firms or corporations licensed by Warner to distribute motion pictures in any part of the world. Nor shall such term include: any person, firm or corporation distributing the Picture for purposes other than exhibition in theaters or by television stations; exhibitors or others who may actually exhibit the Picture to the public; radio or television broadcasters or programming services; cable systems or operators; manufacturers, wholesalers or retailers of video discs, cassettes or similar devices; book or music publishers; sound recording producers or distributors; manufacturers, distributors, wholesalers, retailers or operators of any types of merchandise, goods, services or theme park or other attractions; whether or not any of the foregoing excluded parties are subdivisions, subsidiaries or affiliates of Warner.

"Participant" means the party under the foregoing agreement who or which is entitled to participate in the Defined Gross of the Picture in excess of the Contractual Start Point, computed on an initial basis (all as defined below), and the successors and permitted assigns of such party.

2.    Contractual Start Point:  As between Warner and Participant, the Picture shall be deemed to have reached the Contractual Start Point at such time as the Defined Gross (as defined in 3 hereof) of the Picture shall equal the following:

        (a)    Warner's distribution fees set forth in 4 hereof.

        (b)    Warner's expenses in connection with the distribution of the Picture, as set forth in 5 hereof.

        (c)    The cost of production of the Picture, plus an amount equal to interest thereon, all as provided for in 9 hereof, and plus such other costs, if any, as may have been incurred in connection with the financing of the cost of production of the Picture.  Said interest and other costs shall be recouped before said cost of production.

3.    Defined Gross:  As used herein, the term "Defined Gross" means the aggregate of:

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
1

35493

**Exhibit BB
271**

WB136072
CONFIDENTIAL

(a)    All film rentals actually received by Warner from parties exhibiting the Picture in theaters and on television where Warner distributes directly to such parties (hereinafter referred to as "exhibitors").

(b)    Where Warner grants theatrical distribution rights to a subdistributor on a basis requiring it to account to Warner with respect to film rentals, either: (i) the film rentals received by such subdistributor from exhibitors which Warner accepts for the purpose of its accountings with such subdistributor; or (ii) Warner's share (actually received) of film rentals received by such subdistributor; whichever Warner elects from time to time as to each subdistributor.

(c)    In respect of licenses of exhibition or distribution rights by means of video discs, cassettes or similar devices, an amount equal to 20% of: (i) the gross wholesale rental income therefrom; and (ii) the gross wholesale sales income therefrom less a reasonable allowance for returns.

(d)    All amounts actually received by Warner from the following: (i) trailers (other than trailers advertising television exhibitions of the Picture); (ii) licenses of theatrical distribution rights for a flat sum; (iii) licenses of exhibition or distribution rights other than those referred to in (a), (b), (c) and (d)(ii) of this 3, specifically including licenses to cable operators; (iv) the lease of positive prints (as distinguished from the licensing thereof for a film rental); and from the sale or licensing of advertising accessories, souvenir programs and booklets; and (v) recoveries by Warner for infringement of copyrights of the Picture.

(e)    All monies actually received by Warner on account of direct subsidies, aide or prizes relating specifically to the Picture, net of an amount equal to income taxes based thereon imposed by the country involved, if any. If local laws require use of such monies as a condition to the grant of such subsidy or aide, such monies shall not be included in Defined Gross until actually used.

(f)    All amounts required to be included under Exhibits "1," "2" and "3" hereof.

All costs incurred in connection with any of the foregoing shall be deemed and treated as recoupable distribution expenses. In no event shall rentals from the exhibition of the Picture which are contributed to charitable organizations be included in Defined Gross.

Notwithstanding anything herein contained, after the Picture shall be deemed to have reached the Contractual Start Point as defined in 2 above, Defined Gross shall be as defined and this Exhibit shall otherwise be modified as set forth in Schedule 1 attached hereto and incorporated herein by this reference.

4.    _Distribution Fees_: Warner's distribution fees shall be as follows:

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
2

**Exhibit BB**
272

35493

WB136073
CONFIDENTIAL

(a)    30% of the Defined Gross of the Picture derived by Warner from all sources in the United States and Canada.

(b)    35% of the Defined Gross of the Picture derived by Warner from all sources in the United Kingdom.

(c)    40% of the Defined Gross of the Picture derived by Warner from all sources other than those referred to in (a) and (b) above.

(d)    Notwithstanding the foregoing: (i) with respect to sums included in the Defined Gross pursuant to 3(b)(ii) and 3(d)(ii) hereof, Warner's distribution fee shall be 15% of such sums; (ii) if Warner shall license the exhibition of the Picture on free television, the aforesaid percentages as to amounts received and collected by Warner from sources in the United States, shall be 30% if collected from a network for national network telecasts in prime time; and 35% in all other instances; and, as to amounts received and collected by Warner from sources outside the United States 40%; and (iii) no distribution fee shall be charged on Defined Gross referred to in 3(e) hereof.

All distribution fees shall be calculated on the full Defined Gross without any deductions or payments of any kind whatsoever, except as specifically hereinafter provided.

Notwithstanding anything herein contained, it is agreed that for the accounting period in which the Picture shall first reach the Contractual Start Point, the distribution fees for the purpose of calculating the Contractual Start Point shall be calculated only on that portion of the Defined Gross in respect of such accounting period which is equal to the sum of the following:

(a)    An amount equal to the sums specified in subparagraphs (b) and (c) of Paragraph 2 of this Exhibit which are recouped or paid in respect of such accounting period; and

(b)    An amount equal to the distribution fees on Defined Gross equal to the sum of said deductible items, plus the distribution fees on Defined Gross equal to such distribution fee.

5.    Distribution Expenses: Warner's deductible distribution expenses in connection with the Picture shall include all costs and expenses incurred in connection with the distribution, advertising, exploitation and turning to account of the Picture of whatever kind or nature, or which are customarily treated as distribution expenses under customary accounting procedures in the motion picture industry. If Warner reasonably anticipates that additional distribution expenses will be incurred in the future, Warner may, for a reasonable time, set up appropriate reserves therefor.

FI803
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
3

Exhibit BB
273

35493

WB136074
CONFIDENTIAL

Without limiting the generality of the foregoing, the following particular items shall be included in distribution expenses hereunder:

(a)    The cost and expense of all duped and dubbed negatives, sound tracks, prints, release prints, tapes, cassettes, duplicating material and facilities and all other material manufactured for use in connection with the Picture, including the cost of inspecting, repairing, checking and renovating film, reels, containers, cassettes, packing, storing and shipping and all other expenses connected therewith and inspecting and checking exhibitors' projection and sound equipment and facilities. Warner may manufacture or cause to be manufactured as many or as few duped negatives, positive prints and other material for use in connection with the Picture as it, in its sole discretion, may consider advisable or desirable.

(b)    All direct costs and charges for advertisements, press books, artwork, advertising accessories and trailers (other than: (i) prints of trailers advertising free television exhibition of the Picture, and (ii) the trailer production costs which are included in the cost of production of the Picture), advertising, publicizing and exploiting the Picture by such means and to such extent as Warner may, in its uncontrolled discretion, deem desirable, including, without limitation, pre-release advertising and publicity, so-called cooperative and/or theater advertising, and/or other advertising engaged in with or for exhibitors, to the extent Warner pays, shares in, or is charged with all or a portion of such costs and all other exploitation costs relating to such theater exhibition. Any re-use fees and costs of recording and manufacturing masters for phonograph records, which Warner shall advance in order to assist in the advertising and exploitation of the Picture, shall be treated as costs hereunder to the extent unrecouped by the record company. Where any Warner advertising or publicity employee (other than an executive supervisory employee) or facility is used for the Picture, the salary of such employee and the cost of such facility (while so used for the Picture) shall be direct costs hereunder. Any costs and charges referred to in this (b) (and not included in the cost of production of the Picture), expended or incurred prior to delivery of the Picture, shall be included in direct costs under this (b). There shall also be included as an item of cost a sum equal to 10% of all direct costs referred to in this (b) to cover the indirect cost of Warner's advertising and publicity departments, both domestic and foreign.

(c)    All costs of preparing and delivering the Picture for distribution (regardless of whether such costs are the salaries and expenses of Warner's own employees or employees or parties not regularly employed by Warner), including, without limitation, all costs incurred in connection with the production of foreign language versions of the Picture, whether dubbed, superimposed or otherwise, as well as any and all costs and expenses in connection with chang-ing the title of the Picture, recutting, re-editing or shortening or lengthening the Picture for release in any territory or for exhibition on television or other media, or in order to conform to the requirements of censorship authorities, or in order to

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.                    Exhibit "C"                    35493
                                                    4
                              **Exhibit BB**
                                 274

WB136075

conform to the peculiar national or political prejudices likely to be encountered in any territory, or for any other purpose or reason. The costs referred to in this (c) shall include all studio charges for facilities, labor and material, whether or not incurred at a studio owned or controlled by Warner.

(d)     All sums paid or accrued on account of sales, use, receipts, income, excise, remittance and other taxes (however denominated) to any governmental authority assessed upon the negatives, duplicate negatives, prints or sound records of the Picture, or upon the use or distribution of the Picture, or upon the revenues derived therefrom, or any part thereof, or upon the remittance of such revenues, or any part thereof; any and all sums paid or accrued on account of duties, customs and imposts, costs of acquiring permits, "Kontingents", and any similar authority to secure the entry, licensing, exhibition, performance, use or televising of the Picture in any country or part thereof, regardless of whether such payments or accruals are assessed against the Picture or the proceeds thereof or against a group of motion pictures in which the Picture may be included or the proceeds thereof.  In no event shall the deductible amount of any such tax (however denominated) imposed upon Warner, be decreased (nor the Defined Gross increased) because of the manner in which such taxes are elected to be treated by Warner in filing net income, corporate franchise, excess profits or similar tax returns. Subject to the foregoing:  (i) Warner's own United States federal and state income taxes and franchise taxes based on Warner's net income; and (ii) income taxes payable to any country or territory by Warner based on the net earnings of Warner in such country or territory and which is computed and assessed solely by reason of the retention in such country or territory by Warner of any portion of the Defined Gross shall not be deductible hereunder.

(e)     Expenses of transmitting to the United States any funds accruing to Warner from the Picture in foreign countries, such as cable expenses, and any discounts from such funds taken to convert such funds directly or indirectly into U.S. dollars.

(f)     All costs and expenses, including reasonable attorneys' fees, loss, damage or liability suffered or incurred by Warner in connection with: any action taken by Warner (whether by litigation or otherwise) in copyrighting, protecting and enforcing the copyright of, and other rights and sources of revenue to be derived from, the Picture; reducing or minimizing the matters referred to in (d) and (e) above, the collection of film rentals, and other sums due Warner from exhibitors, subdistributors and others in respect of the Picture or to recover monies due pursuant to any agreement relating to the distribution or the exhibition of the Picture; checking attendance and exhibitors' receipts; preventing and/or recovering damages for unauthorized exhibition or distribution of the Picture, or any impairment of, encumbrance on or infringement upon, the rights of Warner in and to the Picture; prosecuting and defending actions under the antitrust laws, communications laws, and federal, state and local laws,

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
5

35493

**Exhibit BB**
**275**

WB136076
CONFIDENTIAL

ordinances and regulations (including censorship) affecting the exhibition and/or distribution of the Picture and/or the ability of Warner to derive revenue from the Picture and its component parts and by-products; and auditing of books and records of any exhibitor, subdistributor or licensee.

    (g)    Royalties payable to manufacturers of sound recording and reproducing equipment and dues and assessments of, and contributions by Warner to, AMPTP, MPAA, MPEA, the Academy of Motion Picture Arts and Sciences and other trade associations or industry groups comprised of a substantial number of motion picture producers and/or distributors, but only for purposes relating to the production, distribution, export, import, advertising, exploitation and general protection and/or promotion of motion pictures.

    (h)    In the event any person shall make a claim relating to the Picture against Warner or any of its licensees, which claim, in Warner's judgment, is of sufficient merit to constitute a reasonable probability of ultimate loss, cost, damage or expense, Warner may deduct under this (h) such amount as Warner may deem necessary to cover any loss, cost, damage or expense which may be suffered as a result thereof.  Warner shall have the right to settle and pay any such claim.  After the settlement of any such claim, or after the final judicial determination thereof, the amount previously deducted hereunder shall be adjusted accordingly with the next accounting statement rendered hereunder. Nothing herein contained shall be construed as a waiver of any of Participant's warranties contained in this Agreement, or a waiver of any right or remedy at law or otherwise which may exist in favor of Warner, including, but not limited to, the right to require Participant to reimburse Warner on demand for any liability, cost, damage or expense arising out of, or resulting from, any breach by Participant of any warranty, undertaking or obligation by Participant, or any right on the part of Warner to recoup or recover any such cost or expense out of Participant's share of any monies payable hereunder, rather than treating such costs or expenses as distribution expenses.

    (i)    All amounts paid or payable to or for the benefit of actors, writers, composers, directors and others, pursuant to applicable collective bargaining agreements and/or any law or governmental regulation or decree now or hereafter in force by reason of, and/or as a condition or consideration for, any exhibition, use, re-use, rerun, performance, sale, license and/or distribution of the Picture and/or copies of all or any part thereof, on television, supplemental markets, or otherwise (all herein called "residuals"), together with all taxes, pension fund contributions and other costs paid or payable in respect of such residuals, and in respect of percentage participations in the Picture; provided, however, that if Participant or any principal stockholder of Participant, or any heirs, executors, administrators, successors or assigns of Participant, or any such stockholder, are entitled, either directly or by way of participation in any pension fund, to any such residuals, or to compensation for services rendered beyond any guaranteed period referred to in the foregoing agreement, the

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
6

35493

Exhibit BB
276

WB136077
CONFIDENTIAL

amount payable on account thereof shall be treated as an advance against Participant's participation hereunder.

(j)    The cost of all insurance (to the extent that the same is not included in the cost of production of the Picture) covering or relating to the Picture, including, but not limited to, errors and omissions insurance and all insurance on negatives, positive prints, sound materials or other physical property, it being understood, however, that Warner shall not be obligated to take out or maintain any such insurance.

(k)    If Warner shall proceed under 3(b)(i) hereof, all items deducted by the subdistributor as distribution expenses, and which Warner accepts for the purpose of its accountings with such subdistributor, shall be treated as Warner's expenditures under the corresponding subdivision of this 5.

6.    Film Rentals:  "Film Rentals" shall be determined after all refunds, credits, discounts, allowances and adjustments granted to exhibitors, whether occasioned by condemnation by boards of censorship, settlement of disputes or otherwise.  Until earned, forfeited or applied to the Picture, neither advance payments nor security deposits shall be included in film rentals.  No cost (regardless of how incurred, paid or allowed) of Warner's share of cooperative and/or theater advertising shall be deducted in determining film rentals.  Where allowances are granted and paid on account of Warner's share of cooperative theater or joint advertising, such payments shall not be deducted in determining film rental, and where Warner's share of cooperative theater or joint advertising is deducted by the exhibitor Warner's share of cooperative theater or joint advertising shall be added back into the film rental received from such exhibitor, and all such costs, payments, discounts and allowances shall be treated as distribution expenses.  Wherever Warner exhibits the Picture in a theater or over a television station owned or controlled by Warner, or licenses the Picture or rights connected therewith to theaters, television stations or other agencies in which Warner has an interest, directly or indirectly, or to which Warner is obligated to pay a fixed sum for exhibiting the Picture or for the use of its premises or facilities, Warner shall include in the film rentals of the Picture such sums, determined in good faith, as may be reasonable and consistent with Warner's usual practice in such matters.

7.    Allocations:  Wherever Warner:  (i) receives from any license either a flat sum or a percentage of the receipts, or both, for any right to a group of motion pictures (including the Picture) under any agreement (whether or not the same shall provide for the exhibition, lease or delivery of positive prints of any of said motion pictures) which does not specify what portion of the license payments apply to the respective motion pictures in the group (or to such prints or other material, if any, as may be supplied); or (ii) receives foreign currency under 8 hereof relating to a group of motion pictures (including the Picture), then in any and all such situations Warner shall include in, or deduct from, the Defined Gross, as the case may be, such sums, determined in good faith, as may be reasonable and consistent with Warner's usual practice in such matters.  All costs described in 5 hereof (and, after the Contractual Start Point, all

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
7

35493

Exhibit BB
277

WB136078
CONFIDENTIAL

deductible items set forth in Schedule 1 hereto) shall be fairly apportioned to the Picture if incurred or expended on an industry basis, or in conjunction with other motion picture producers and/or distributors, or with respect to the Picture and other motion pictures distributed by Warner.

8.    Foreign Receipts:    No sums received by Warner relating to the Picture shall be included in Defined Gross hereunder unless and until such sums have been: (i) received by Warner in U.S. dollars in the United States; or (ii) used by Warner for the production or acquisition of motion pictures or television films which can be lawfully removed from the country or territory involved, in which event they shall be included in Defined Gross for the accounting period during which an amount (computed at the official or unofficial rate of exchange, as Warner may elect) equal to the amount expended for such production or acquisition, plus interest thereon, as herein provided, has been recouped by Warner (in excess of normal distribution fees and distribution expenses) from distribution thereof outside the country or territory involved; or (iii) used by Warner for acquisition of tangible personal property which can be and is lawfully exported from the country or territory involved, in which event the U.S. dollar equivalent of the currency utilized to acquire such property shall be included in Defined Gross hereunder for the accounting period during which such property was so exported, such U.S. dollar equivalent to be computed at the official or unofficial rate of exchange, as Warner may elect, in effect on the date of export. Warner will, promptly after receipt of a written request from Participant (but not more frequently than annually) advise Participant in writing as to foreign revenues not included in Defined Gross as aforesaid, and Warner shall, at the written request and expense of Participant (subject to any and all limitations, restrictions, laws, rules and regulations affecting such transactions), deposit into a bank designated by Participant in the country involved, or pay to any other party designated by Participant in such country, such part thereof as would have been payable to Participant hereunder. Such deposits or payments to or for Participant shall constitute due remittance to Participant, and Warner shall have no further interest therein or responsibility therefor. Warner makes no warranties or representations that any part of any such foreign currencies may be converted into U.S. dollars or transferred to the account of Participant in any foreign country. In no event shall Warner be obligated to apply Defined Gross of any country not actually received by Warner in U.S. dollars in the United States to the recoupment of any costs or expenses incurred with respect to the Picture (or, after the Contractual Start Point, of any deductible items set forth in Schedule 1 hereto) in any other country.

9.    Cost of Production; Interest:

(a)    The "cost of production" of the Picture means the total direct cost of production of the Picture, including the cost of all items listed on Warner's standard Delivery Schedule, computed and determined in all respects in the same manner as Warner then customarily determines the direct cost of other motion pictures distributed and/or financed by it, plus Warner's overhead charge. The determination of what items constitute direct charges and what items are within said overhead charge shall be made in all respects in the same manner as

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.                    Exhibit "C"
8
35493

Exhibit BB
278

Warner customarily determines such matters. The full amount of all direct costs of production of the Picture (whether payable in cash, deferred or accrued) shall be included in the direct cost of the Picture at the time liability therefor is incurred or contracted, regardless of whether the same has actually been paid to the party or parties entitled thereto at the time involved. Deferments and participations in Defined Gross of the Picture consented to by Warner (however defined) shall be treated as direct costs of production, whether the same shall be in a definite amount or based on a percentage of the Defined Gross, and whether the same are fixed obligations or are contingent upon receipts of the Picture; provided, however, contingent participations based on a percentage of Defined Gross as defined in the applicable agreement shall not be included in the direct cost of production beyond recoupment under 2(c) hereof.

(b)    Warner's overhead charge shall be in an amount equal to 15% of the direct cost of production of the Picture, with the understanding that any production facilities, equipment or personnel supplied by Warner or by a studio owned or controlled by Warner, or in which Warner has a substantial financial interest (and which are not furnished within the overhead charge), shall be supplied at Warner's usual rental rates charged for such items, and such charges shall be treated as direct costs of production of the Picture and shall bear said 15% overhead charge. Warner's overhead charge shall accrue and be included in the cost of production of the Picture concurrently with the incurring of the respective items of direct cost to which it applies.

(c)    The amount equal to interest provided for in 2(c) hereof shall be calculated at a rate per annum equal to 125% of the rate announced from time to time by the Bank of America as its prime rate on unsecured loans to its preferred customers. Said amount shall be calculated from the respective dates that each item is charged to the Picture until the close of the accounting period during which the cost of production is recouped under 2(c) hereof, except that interest on deferred amounts shall be calculated from the date of payment.

(d)    Concurrently with delivery to Participant of the first earnings statement hereunder, Warner will (subject to revisions and correction) deliver to Participant an itemized summary of the cost of production of the Picture. Participant shall have the right to audit such statement in accordance with 11 hereof.

10.    Earnings Statements: Warner shall render to Participant periodic statements showing, in summary form, the appropriate calculations under this Agreement. Statements shall be issued for each calendar quarter until the Picture has been in release for four years from and including the quarter in which the Picture was first released, and thereafter annually. Each such quarterly or annual period, as the case may be, is herein referred to as an "accounting period". No statements need be rendered for any accounting period during which no receipts are received. Statements

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Ross Burroughs, Inc.

Exhibit "C"
9

Exhibit BB
279

35493

WB136079
CONFIDENTIAL

rendered by Warner may be changed from time to time to give effect to year-end adjustments made by Warner's Accounting Department or Public Accountants, or to items overlooked, to correct errors and for similar purposes. If Warner shall extend credit to any licensee with respect to the Picture and if such credit has been included in the Defined Gross, and if, in the opinion of Warner, any such indebtedness shall be uncollectible, the uncollected amount may be deducted in any subsequent earning statement. Should Warner make any overpayment to Participant hereunder for any reason, Warner shall have the right to deduct and retain for its own account an amount equal to any such overpayment from any sums that may thereafter become due or payable by Warner to Participant or for Participant's account, or may demand repayment from Participant, in which event Participant shall repay the same when such demand is made. Any U.S. dollars due and payable to Participant by Warner pursuant to any such statement shall be paid to Participant simultaneously with the rendering of such statement; provided, however, that all amounts payable to Participant hereunder shall be subject to all laws and regulations now or hereafter in existence requiring deductions or withholdings for income or other taxes payable by or assessable against Participant. Warner shall have the right to make such deductions and withholdings and the payment thereof to the governmental agency concerned in accordance with its interpretation in good faith of such laws and regulations, and shall not be liable to Participant for the making of such deductions or withholdings or the payment thereof to the governmental agency concerned. In any such event Participant shall make and prosecute any and all claims which it may have with respect to the same directly with the governmental agency having jurisdiction in the premises. The right of Participant to receive, and the obligation of Warner to account for, any share of the Defined Gross of the Picture shall terminate if the Picture has been made available for exhibition on syndicated television in the U.S.A., and if the first earnings statement issued thereafter shows a deficit under 2 hereof such that at least $500,000 of Defined Gross would be required before Participant would be entitled to receive any participation hereunder. In the event a new medium of exhibition shall thereafter be developed and there shall be substantial exhibition and distribution of the Picture by such new medium which is likely to generate Defined Gross of $500,000 or the amount of the deficit, whichever is larger, Participant may audit Warner's records for the purpose of determining whether the Picture has earned, or is likely to earn, any Defined Gross in excess of the Contractual Start Point, and if, as a result of such audit, it is determined by mutual agreement, or in the event of dispute appropriate legal proceedings, that the Picture has earned, or is likely to earn, Defined Gross in excess of the Contractual Start Point as herein defined, accountings hereunder and payments, if required, shall be reinstated.

    11.   <u>Accounting Records re Distribution; Audit Rights</u>: Warner shall keep books of account relating to the distribution of the Picture, together with vouchers, exhibition contracts and similar records supporting the same (all of which are hereinafter referred to as "records"), which shall be kept on the same basis and in the same manner and for the same periods as such records are customarily kept by Warner. Participant may, at its own expense, audit the applicable records at the place where Warner maintains the same in order to verify earnings statements rendered hereunder. Any such audit shall be conducted only by a reputable public accountant

FI803
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
10

35493

**Exhibit BB**
**280**

WB136080
CONFIDENTIAL

during reasonable business hours in such manner as not to interfere with Warner's normal business activities. In no event shall an audit with respect to any earnings statement commence later than 24 months from the rendition of the earnings statement involved; nor shall any audit continue for longer than 30 consecutive business days; nor shall audits be made hereunder more frequently than once annually; nor shall the records supporting any earnings statement be audited more than once. All earnings statements rendered hereunder shall be binding upon Participant and not subject to objection for any reason unless such objection is made in writing, stating the basis thereof and delivered to Warner within 24 months from rendition of the earnings statement, or if an audit is commenced prior thereto, within 30 days from the completion of the relative audit. If Warner, as a courtesy to Participant, shall include cumulative figures in any earnings or other statement, the time within which Participant may commence any audit or make any objection in respect of any statement shall not be enlarged or extended thereby. Participant's right to examine Warner's records is limited to the Picture, and Participant shall have no right to examine records relating to Warner's business generally or with respect to any other motion Picture for purposes of comparison or otherwise; provided, however, that where any original income or expense document with third parties relates to the Picture and to other motion pictures, Participant shall have the right to examine the entire document without deletions therefrom.

12.   <u>Ownership</u>:  Participant expressly acknowledges that Participant has and will have no right, title or interest of any kind or character whatsoever in or to the Picture, and no lien thereon or other rights in or to the Defined Gross of the Picture; and that the same shall be and remain Warner's sole and exclusive property, and Warner shall not be obligated to segregate the same from its other funds, it being the intent and purpose hereof that the Defined Gross of the Picture, including the Defined Gross in excess of the Contractual Start Point, is referred to herein merely as a measure in determining the time and manner of payment to Participant; and that Warner shall not be deemed a trustee, pledgeholder or fiduciary. Participant shall have no right, title or interest of any kind or character whatsoever in or to the literary, dramatic or musical material upon which the Picture is based, or from which it may be adapted; and Warner shall have the sole and exclusive right to utilize, sell, license or otherwise dispose of all or any part of its rights in such material upon such terms and conditions as it may deem advisable, all without consulting or advising Participant and without accounting to Participant in any manner with respect thereto.

13.   <u>Distribution</u>:  As between Participant and Warner, Warner shall have complete authority to distribute the Picture and to license the exhibition thereof throughout the world in accordance with such sales methods, policies and terms as it may, in its uncontrolled discretion, determine. Warner shall have the broadest possible latitude in the distribution of the Picture, and the exercise of its judgment in good faith in all matters pertaining thereto shall be final. Warner has not made any express or implied representation, warranty, guarantee or agreement as to the amount of proceeds which will be derived from the distribution of the Picture, nor has Warner made any express or implied representation, warranty, guarantee or agreement that there will be

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
11

**Exhibit BB**
**281**

35493

**WB136081**
**CONFIDENTIAL**

Case 2:10-cv-03633-ODW-RZ     Document 479-5     Filed 08/20/12     Page 21 of 48     Page ID #:29547

any sums payable to Participant hereunder, or that the Picture will be favorably received by exhibitors or by the public, or will be distributed continuously. In no event shall Warner incur any liability based upon any claim that Warner has failed to realize receipts or revenue which should or could have been realized. Warner may distribute the Picture either itself or through such distributors, subdistributors and other parties as Warner may, in its uncontrolled discretion, determine, and Warner may refrain from releasing and/or distributing the Picture in any territory for any reason whatsoever. Warner may license the Picture or rights connected therewith to any and all theaters or other agencies in which Warner may have an interest directly or indirectly upon such terms and rentals as Warner may deem fair and proper under the circumstances. Nothing herein contained shall be construed as a representation or warranty by Warner that it now has or will hereafter have or control any theaters or agencies in the United States or elsewhere.

14.    Sale of Picture: Warner shall have the right at any time after completion of the Picture to sell, transfer or assign all or any of its rights in and to the Picture and the negative and copyright thereof. Any such sale, transfer or assignment shall be subject to Participant's rights hereunder, and upon the purchaser, transferee or assignee assuming performance of this agreement in place and stead of Warner, Warner shall be released and discharged of and from any further liability or obligation hereunder. No part of any sale price or other consideration received by, or payable to, Warner shall be included in the Defined Gross hereunder and Participant shall have no rights in respect of any thereof.

15.    Assignments, etc.: Participant shall have the right to sell, assign, transfer or hypothecate (all herein called "assign") all or any part of Participant's right to receive the moneys payable to Participant hereunder. Any such assignment shall be subject to all pertinent laws and governmental regulations and to the rights of Warner hereunder. In the event of any such assignment by Participant, a Notice of Irrevocable Authority and Distributor's Acceptance in Warner's usual form shall be executed by Participant and by the transferee and delivered to Warner. If at any time more than three parties shall be entitled to receive payments, which under the terms hereof are to be paid to or for the account of Participant, Warner may, at its option, require that all such parties execute and deliver an agreement in Warner's usual form appointing a disbursing agent for all such parties.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "C"
12
**Exhibit BB**
**282**

35493

WB136082

## SCHEDULE "1"

1.    <u>Defined Gross</u>:  As used herein, the term "Defined Gross" means the aggregate of:

(a)    All film rentals actually received by Warner from parties exhibiting the Picture in theaters and on television where Warner distributes directly to such parties (hereinafter referred to as "exhibitors");

(b)    In respect of licenses of exhibition or distribution rights by means of video discs, cassettes or similar devices, an amount equal to 20% of:  (i) the gross wholesale rental income therefrom; and (ii) the gross wholesale sales income therefrom less a reasonable allowance for returns;

(c)    All sums actually received by Warner from grants or licenses of distribution rights in and to the Picture (in any and all gauges of film, tape and other material) from sources other than those referred to in (a) and (b) above;

(d)    All net earnings of Warner from trailers of the Picture (other than trailers advertising the television exhibition of the Picture); and the lease of positive prints, tapes and other material (as distinguished from the licensing thereof for a film rental); and from the sale or licensing of advertising accessories, souvenir programs and booklets;

(e)    All net sums derived by Warner from distribution of the Picture on a "road show", "reissue" and "four wall" basis, as such terms are commonly understood in the motion picture industry, whether on fixed or percentage engagements.  The term "net sums" means Warner's receipts less all advertising, publicity and other distribution costs incurred directly in connection therewith;

(f)    All amounts required to be included under Exhibits "1", "2" and "3" hereof.

less the aggregate of:

(i)    All sums paid or accrued on account of sales, use, receipts, income, excise, remittance and other taxes (however denominated) to any governmental authority assessed upon the negatives, duplicate negatives, prints or sound records of the Picture, or upon the use or distribution of the Picture, or upon the revenues derived therefrom, or any part thereof, or upon the remittance of such revenues, or any part thereof; any and all sums paid or accrued on account of duties, customs and imposts, costs of acquiring permits, "Kontingents", and any similar authority to secure the entry, licensing, exhibition, performance, use or televising of the Picture in

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement          Schedule "1"
Edgar Rice Burroughs, Inc.                                          1

35493

**Exhibit BB**
**283**

WB136083
CONFIDENTIAL

any country or part thereof, regardless of whether such payments or accruals are assessed against the Picture or the proceeds thereof or against a group of motion pictures in which the Picture may be included or the proceeds thereof. In no event shall the deductible amount of any such tax (however denominated) imposed upon Warner, be decreased (nor the Defined Gross increased) because of the manner in which such taxes are elected to be treated by Warner in filing net income, corporate franchise, excess profits or similar tax returns. Subject to the foregoing: (A) Warner's own United States federal and state income taxes and franchise taxes based on Warner's net income; and (B) income taxes payable to any country or territory by Warner based on the net earnings of Warner in such country or territory and which is computed and assessed solely by reason of the retention in such country or territory by Warner of any portion of the Defined Gross shall not be deductible hereunder.

(ii)     Expenses of transmitting to the United States any funds accruing to Warner from the Picture in foreign countries, such as cable expenses and any discounts from such funds taken to convert such funds directly or indirectly into U.S. dollars.

(iii)     The cost of reducing or minimizing the matters referred to in (i) or (ii) above, which costs shall be fairly apportioned to the Picture if done on an industry basis or with respect to motion pictures distributed by Warner generally.

(iv)     All costs of cooperative or other advertising or promotion (excluding trade and institutional advertising or promotion) incurred in connection with exhibitions of the Picture in theaters (or other places where an admission is charged) where Warner pays, shares in or is charged with all or a portion of the promotional or advertising costs relating to any such exhibitions.

(v)     All amounts paid or payable to or for the benefit of actors, writers, composers, directors and others, pursuant to applicable collective bargaining agreements and/or any law or governmental regulations or decree now or hereafter in force by reason of, and/or as a condition or consideration for, any exhibition, use, re-use, rerun, performance, sale, license and/or distribution of the Picture and/or copies of all or any part thereof, on television, supplemental markets, or otherwise (all herein called "residuals"), together with all taxes, pension fund contributions and other costs paid or payable in respect of such residuals, and in respect of percentage participations in the Picture; provided, however, that if Participant or any principal stockholder of Participant, or any heirs, executors, administrators, successors or assigns of Participant, or any such stockholder, are entitled, either directly or by way of participation in any pension fund, to any such residuals, or to compensation for services

FI803
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Schedule "1"
2

Exhibit BB
284

35493

WB136084
CONFIDENTIAL

rendered beyond any guaranteed period referred to in the foregoing agreement, the amount payable on account thereof shall be treated as an advance against Participant's share of the Defined Gross hereunder, and conversely, any Defined Gross paid to Participant hereunder shall (to the extent permissible under applicable collective bargaining agreements) constitute an advance against such residuals payable to or for the benefit of Participant or any principal stockholder of Participant, or any such heirs, executors, administrators, successors or assigns.

(vi)    Dues and assessments of and contributions by Warner to AMPTP, MPAA, MPEA, the Academy of Motion Picture Arts and Sciences, and other trade associations or industry groups comprised of a substantial number of motion picture producers and/or distributors, but only for purposes relating to the production, distribution, export, import, advertising, exploitation and general protection, including actions under the antitrust laws, and/or promotion of motion pictures.

In no event shall rentals from the exhibition of the Picture which are contributed to charitable organizations be included in Defined Gross.  If Warner reasonably anticipates taxes, residuals, uncollectible accounts, or any matters relating to the Picture, which, if and when determined, will be deductible hereunder, Warner may, for a reasonable time, set up appropriate reserves therefor.

2.    Film Rentals:  In Paragraph 6 of the foregoing Exhibit for purposes of computing Defined Gross under this Schedule 1, the third and fourth sentences are deleted, and the following substituted:  Where the film rental is computed on the basis of box-office receipts of the Picture, any expenses incurred in checking attendance and/or receipts of such engagements shall be deducted in determining film rentals hereunder.  There shall be deducted from film rentals expenses incurred in the collection thereof.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Schedule "1"
3
**Exhibit BB**
**285**

35493

**WB136085
CONFIDENTIAL**

## MUSIC PUBLISHING INCOME

In the event the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to share directly in publishing revenues, there shall also be included in Defined Gross of the Picture:

A sum equal to 75% of the "publisher's share" of mechanical reproduction and performing fees received in U.S. currency by Warner's subsidiary or affiliated publisher with respect to music and lyrics written specifically for and synchronized in the Picture as released, provided such publisher is vested with all rights therein and all of the "publisher's share" of the receipts therefrom, and provided the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to receive composers' or lyricists' royalties in respect of such music or lyrics.  The "publisher's share" of mechanical reproduction fees shall be the full amount paid by the licensee, less composers' share of such fees and less the charges of the publisher or any agent, trustee or administrator acting for the publisher for the collection of such fees, not to exceed 5% thereof.  Mechanical reproduction fees do not include synchronization fees.

The "publisher's share" of performing fees shall be the net amount actually received by the publisher from any performing rights society in respect of the music and lyrics involved; or, if Warner or the publisher shall administer the collection of all or any part of performance fees, the full amount of all performance fees collected by Warner or the publisher, less the composer's share of such fees and all reasonable costs and expenses in administering the collection of such fees.

If the agreement or Exhibit to which this Exhibit is attached provides for distribution fees, no distribution fees shall be charged on amounts included in Defined Gross pursuant to this Exhibit.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "1"

**Exhibit BB**
**286**

35493

WB136086
CONFIDENTIAL

## SOUNDTRACK RECORD INCOME

In the event the party entitled to share in the Defined Gross of the Picture under the foregoing agreement is not entitled to receive any artists' royalties in respect of sound recordings derived from the soundtrack of the Picture, then Warner agrees to include in the Defined Gross of the Picture royalties on soundtrack records, as herein defined, computed at the applicable royalty rate.

As used herein:

The term "soundtrack records" means and refers to phonograph records, tapes, or other sound recordings which contain either:  (i) portions of the soundtrack transferred directly to masters from sound records which form a part of the soundtrack of the Picture; or (ii) sound recordings recorded separately but utilizing substantially the same musical score, parts and instrumentation, and essentially the same artists, music and/or dialogue and/or sound effects as is contained in the soundtrack of the Picture; or (iii) a combination of (i) and (ii).  Soundtrack records do not, however, include any recordings produced solely for the purpose of advertising and exploiting the Picture and copies of which are not distributed to the public.

The term "applicable royalty rate" means and refers to the following percentages of the prevailing retail price but in no event more than the net royalty actually received and retainable by Warner for its own account with respect to the sale of any particular copies:

> 5% of 90% in respect of soundtrack records sold in the United States

> 2 1/2% of 90% in respect of soundtrack records sold outside the United States

except that as to soundtrack records sold pursuant to mail order or "club" plans, the royalty rate shall be one-half of the rate otherwise applicable.

If any soundtrack records contain selections from other sources, the applicable royalty rate hereunder shall be prorated on the basis of the total number of minutes of selections from the soundtrack compared to the total number of minutes on such records.

In determining the net royalty retainable by Warner, all royalties payable to artists, conductors and other third parties in respect to such soundtrack records shall be deducted from the aggregate royalty payable to Warner under the applicable distribution agreement.

The term "prevailing retail price" means and refers to the price generally prevailing in the country of manufacture or sale (as determined by the Record Company), less all taxes, duties and charges for containers.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "2"
1

35493

**Exhibit BB**
**287**

WB136087
CONFIDENTIAL

There shall be deducted from amounts included in Defined Gross hereunder a pro- rata share of re-use fees and costs of recording and manufacturing masters advanced by Warner or the Record Company.  Sales shall be determined on the basis of the number of records sold and for which the Record Company has been paid in U.S. currency, after allowing for all returns, cancellations, exchanges, applicable discounts, etc. and reasonable reserves which may be established therefor.  No sums shall be included in Defined Gross with respect to records given away or sold at less than the Record Company's cost or for promotional purposes, or as sales inducements or otherwise.

If the agreement or Exhibit to which this Exhibit is attached provides for distribution fees, no distribution fees shall be charged on amounts included in Defined Gross pursuant to this Exhibit.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "2"
2
**Exhibit BB**
**288**

35493

WB136088
CONFIDENTIAL

MERCHANDISING INCOME

In the event the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to share directly in merchandising revenue, there shall be included in Defined Gross of the Picture:

(a)  A sum equal to 50% of all license fees (in excess of all royalties and participations) received by Warner directly as a result of the exercise by Warner itself of merchandising license rights.  If, however, Warner shall sublicense or sub-contract any of such merchandising license rights, Warner shall include in the Defined Gross hereunder, at its election, either a sum equal:  to (i) 85% of the net sums (in excess of all royalties and participations) received from such sub-licensee; or (ii) 50% of such sub-licensee's license fees from the exercise of such licensing rights (from which there shall be deducted all royalties and participations), and out of the remaining 50% thereof Warner shall pay and discharge the fees of its sub-licensee.

(b)  If the publication rights to the underlying literary material were owned or controlled by the party entitled to share in Defined Gross of the Picture under the foregoing agreement (herein called "participant") prior to the execution of this agreement, and were acquired by Warner pursuant to or in connection with this agreement, then:  (i) all net sums received by Warner from nonaffiliated or nonsubsidiary publishers from the publication of such underlying literary material and  of novelizations of the screenplay of the Picture; and (ii) a sum equal to 5% of the net receipts of Warner's subsidiary or affiliated publishers from the publication of such material and novelizations, less, in either case, royalties paid out of (i) or (ii) to the writers of such material and novelizations.

If the agreement or Exhibit to which this Exhibit is attached provides for distribution fees, no distribution fees shall be charged on amounts included in Defined Gross pursuant to this Exhibit.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Exhibit "3"

35493

Exhibit BB
289

WB136089
CONFIDENTIAL

RIDER TO EXHIBIT "C"

DEFINED GROSS IN EXCESS OF CONTRACTUAL START POINT
INITIAL BASIS

COMPUTATION AND PAYMENT

All paragraph references herein refer to paragraph numbers in the Exhibit to which this Rider is attached.  The provisions herein shall control to the extent they conflict with the provisions in the Exhibit to which this Rider is attached.

Paragraph 2:  The first sentence in Paragraph 2(c) shall end after the words "in 9 hereof".

Paragraph 3:  Warner shall elect Paragraph 3(b)(i) during the initial theatrical release of the Picture in the following territories:  United Kingdom, Canada, France, Germany, Italy, Australia, New Zealand, Benelux, Scandinavia, South Africa, South Korea, Spain, Switzerland, Taiwan and Japan.

Defined Gross shall include all sums actually received by Warner from recoveries of infringements, unfair competition, trademark and piracy actions with respect to the Picture.  Recoveries by Warner from infringement, unfair competition, trademark and piracy actions with respect to the Picture representing penalties rather than actual or statutory damages shall be included in Defined Gross of the Picture without any distribution fee.  Defined Gross shall also include all sums derived by Warner from distribution of the Picture on a four-wall basis as such term is commonly understood in the motion picture industry.

In Paragraph 3(d), the parenthetical in the second line is deleted.  Licenses to cable operators referred to in Paragraph 3(d)(iii) specifically include all forms of pay, subscription and other types of non-free television.

Paragraph 4:  The distribution fee on Defined Gross of the Picture derived by Warner from prime time United States telecast of the Picture on free television on ABC, NBC or CBS or another national network (if any) shall be 25%.  For a network other than ABC, NBC or CBS to be considered a national network, it must:  (i) own or be affiliated with over 200 television stations or a sufficient number to give national coverage comparable to ABC, NBC or CBS; (ii) offer Warner centralized purchasing of motion pictures for distribution to the owned or affiliated stations; (iii) offer a centralized clearing for distribution of the Picture over said television stations (i.e., the network clears telecast of the Picture over its stations -- not the distributor); (iv) handle itself or through affiliated stations the sale of advertising; and (v) pay a single preagreed sum for telecast of the Picture over all of its owned and affiliated stations.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
1

35493

**Exhibit BB**
**290**

WB136090
CONFIDENTIAL

Paragraph 5: If Warner sets up reserves, such reserves must be reasonable and appropriate, and shall be liquidated in no more than 18 months, except for reserves for taxes, which Warner may withhold longer. If Warner sets up a reserve for taxes which Warner later discovers are not payable, Warner shall credit such reserve back into Defined Gross. In addition, Warner shall reduce the interest on unrecouped production cost by an amount equal to the interest which accrued on an amount of production cost equal to the reserves so withheld.

In 5(a), the cost of tapes and cassettes referred to therein shall not include any manufacturing costs of home video exhibition or distribution.

In 5(a) and 5(b), if Warner receives any discounts, rebates or credits (not including any cash discounts for accelerated payment), such discounts, rebates or credits shall be credited to the costs referred to in subdivision (a) and (b).

In 5(b), reuse fees and costs of recording and manufacturing masters for soundtrack phonograph records will only be charged as distribution expenses to the extent the record company does not pay same.

In 5(b), subdivision (i) is deleted.

In 5(b) and 5(c), the salaries and expenses of Warner's own employees will be charged to a Picture only if such employees substantially work on that Picture directly. Where any Warner advertising or publicity employee (other than an executive supervisory employee) or facility is used for the Picture, then the salary of such employee and the cost of such facility (while so used for the Picture) shall be direct costs under Paragraph 5.

In 5(d), line 2, the word "gross" shall be inserted before the word "income". Change the words "Subject to" on line 17 to "Notwithstanding". The following shall be added at the end of subparagraph (d) : "If Warner receives a refund from the taxing authority which previously assessed any taxes previously deducted hereunder, the amount of such refund together with any interest received thereon shall be credited against sums deductible under this Paragraph 5."

In 5(f), deductible costs and expenses will not include the salaries of Warner's regularly employed in-house legal or accounting staff. The allocable portion of checking and collection costs referred to therein shall be limited to 1% of the Defined Gross of the Picture.

In 5(g), the dues and assessments referred to therein shall be limited to 1% of the Defined Gross of the Picture.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
2

Exhibit BB
291

35493

WB136091
CONFIDENTIAL

In 5(h), the word "reasonably" shall be inserted in between the words "may deem" and "necessary" on line 5. The last sentence of subparagraph (h) shall be revised to read the following: "Nothing herein contained shall be construed as a waiver of any of Participant's warranties contained in this Agreement, or waiver of any right or remedy at law or otherwise which may exist in favor of Warner against Participant, which rights may include the following: the right to require Participant to reimburse Warner on demand for any liability, cost, damage, or expense arising out of, or resulting from, any breach by Participant of any warranty, undertaking or obligation by Participant, or any right on the part of Warner to recoup or recover any such cost or expense out of Participant's share of any monies payable hereunder, rather than treating such costs or expenses as distribution expenses."

In 5(i) after "participations in the Picture" on line 10 add the following: "but excluding from this subdivision (i) any such participations in the Picture themselves." Delete the phrase in lines 14-15 "or to compensation for services rendered beyond any guaranteed period referred to in the foregoing agreement."

In 5(j), there shall be added at the end thereof the following: "Insurance recoveries relating to cost of production of the picture shall be credited first to recoupment of cost of production of the picture and then to recoupment of distribution expenses. All other insurance recoveries relating to distribution expenses as described in this Paragraph 5 shall be credited against distribution expenses. Distribution expenses which are reimbursed by a third party and distribution expenses incurred but not ultimately paid by Warner shall be credited to distribution expenses under Paragraph 5 (unless such reimbursements and/or payments of expenses are made by parties to financing arrangements with Warner)."

Paragraph 6: The words "all such costs" in line 12 mean allowances paid and granted on account of cooperative theater or joint advertising. At the end of Paragraph 6 there shall be added the following: "provided, however, that the terms and conditions of the agreement between Warner and theaters, television stations or other facilities owned or controlled by Warner relating to film rentals shall be consistent with similar terms and conditions between such theaters and another studio relating to a comparable non-Warner picture. Nonrefundable advances received by Warner shall be included as Defined Gross hereunder when received, if such advances relate to licenses of the Picture as a single motion picture for national network or pay television."

Paragraph 7: In line 13, the words "and reasonably" shall be inserted before "apportioned", and the words "in good faith" shall be inserted after the word "apportioned".

Paragraph 8: Paragraph 8 shall be deleted in its entirety and the following shall be substituted: "Sums received by Warner which relate to the Picture shall not be included in Defined Gross hereunder unless and until such sums (i) have been received by

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
3
**Exhibit BB**
**292**

35493

**WB136092
CONFIDENTIAL**

Warner in U.S. dollars in the United States; or (ii) are freely remittable to the United States; or (iii) are used by Warner for any purpose in the territory involved. In this event, the U.S. dollar equivalent of the currency utilized in a territory shall be included in Defined Gross hereunder for the accounting period during which such Defined Gross were so utilized, such U.S. dollar equivalent to be computed at the official or unofficial rate of exchange, as Warner may elect. As for expenses incurred in foreign territories, Warner will compute the U.S. dollar equivalent of the currency utilized in the Territory, such U.S. dollar equivalent to be computed on the same basis as used for Defined Gross for the accounting period involved. Warner will, promptly after receipt of a written request from Participant (but not more frequently than annually), advise Participant in writing as to foreign revenues not included in Defined Gross as aforesaid, and Warner shall, at the written request and expense of Participant (subject to any and all limitations, restrictions, laws, rules and regulations affecting such transactions), deposit into a bank designated by Participant in the country involved, or pay to any other party designated by Participant in such country, only such part thereof as would have been payable to Participant hereunder. Such deposits or payments to or for Participant shall constitute due remittance to Participant, and Warner shall have no further interest therein or responsibility therefor. At Participant's written request, Warner will use its best efforts to convert such deposits or payments into U.S. dollars to the same extent and in the same proportion that Warner is able to convert its own blocked currencies in the country or countries involved. Warner makes no representations or warranties that any part of any such foreign currencies may be converted in U.S. dollars or transferred to the account of Participant in any foreign country. In no event shall Warner be obligated to apply Defined Gross of any country not actually received by Warner in U.S. dollars in the United States to the recoupment of any costs or expenses incurred with respect to the Picture in any other country."

Paragraph 9:  In 9(a), the cost of all items listed on Warner's standard delivery schedule shall be included in cost of production only for such items which are prepared for the Picture. The cost of Warner facilities shall be included in the cost of production only if actually used.

In 9(b), interest on the cost of production shall not be deemed part of the direct cost of production subject to said overhead charge.

Paragraph 10:  In line 2, the words "in summary form" shall be substituted by "in reasonable detail".

The second and third sentences shall be deleted and the following substituted: "Statements shall be issued for each calendar quarter until the Picture has been in release for four years from and including the quarter in which the Picture was first released, semiannually for an additional period of two years, and thereafter annually. If the Picture is reissued theatrically in the U.S., quarterly statements shall be resumed until substantially all of the revenues contemplated from such reissue have been

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
4
**Exhibit BB**
**293**

35493

**WB136093**
**CONFIDENTIAL**

reported; and if the Picture is released to prime time U.S. network television and/or to a U.S. pay or cable network, statements shall be issued for quarterly accounting periods during which revenues from such sources are included in Defined Gross. Each such quarterly, semiannual or annual period, as the case may be, is herein referred to as an 'accounting period'."

The second to the last sentence of Paragraph 10 shall be deleted and the following sentence shall be substituted: "The obligation of Warner to account for but not Participant's right to receive any share of the Defined Gross of the Picture shall terminate if the Picture has been made available for exhibition on syndicated television in the U.S.A., and if the first earnings statements issued thereafter shows a deficit under 2 hereof such that at least $1,000,000 of Defined Gross would be required before Participant would be entitled to receive any Defined Gross in excess of the Contractual Start Point hereunder. Notwithstanding the foregoing, thereafter Employee may request a statement by written notice to Warner (but not more frequently than annually)."

The last sentence is deleted and the following substituted: "In the event a new medium of exhibition shall thereafter be developed and there shall be substantial exhibition and distribution of the Picture by such new medium which is likely to generate Defined Gross of $1,000,000 or the amount of the deficit, whichever is larger, Participant may audit Warner's records for the purpose of determining whether the Picture has earned, or is likely to earn, any Defined Gross in excess of the Contractual Start Point, and thereafter Participant may request statements by written notice to Warner (but not more frequently than annually)."

Paragraph 11: The applicable records subject to audit shall include the records pertaining to the cost of production of the Picture. Change 24 to 36 in lines 11 and 18. Audits shall not continue for longer than 60 consecutive business days. The words "or if an audit is commenced prior thereto, within 30 days from the completion of the relative audit" in lines 18-19 are deleted and the following substituted: "provided however, that if an audit is completed at least 120 days prior to the expiration of said 36-month period, Warner may give written notice to Participant at any time after 90 days from the completion of such audit requiring Participant to advise Warner in writing of any objections to the earnings statement involved, specifying the particulars of such objection, and if Participant does not make such written objections specifying the particulars thereof within 60 days from receipt of such notice from Warner or, whether or not Warner gives such written notice to Participant, upon the expiration of said 36-month period, whichever is earlier, Participant shall thereafter be barred from making any such objection or filing any suit, action or proceeding against Warner with respect to the earnings statement involved." Warner preapproves Sills & Adelmann; Gelfand, Rennert & Feldman; Breslauer, Jacobson, Rutman & Sherman; Nigro, Karlin & Segal; Phil Hacker & Company; and any of the so-called "big six" national accounting firms to conduct audits. In line 15 after the words "more than once," add "except Purchaser

FI803
021026MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
5
**Exhibit BB**
**294**

35493

WB136094
CONFIDENTIAL

shall not be precluded from again examining such records if the earnings statement is later altered or amended by Warner."

Paragraph 13:  The following shall be added at the end thereof:  "If Warner licenses the exhibition of the Picture to any theater or television station or other facility owned or controlled by Warner or in which Warner has an interest directly or indirectly, Warner shall do so on an arms-length basis, consistent with the manner in which Warner licenses the exhibition of the Picture to facilities in which it does not have an interest."

Paragraph 14:  The second sentence of Paragraph 14 is deleted and the following substituted in its place:  "Any such sale, transfer or assignment shall be subject to Participant's rights hereunder, and upon the purchaser, transferee or assignee assuming in writing the performance of this agreement instead of Warner, if the purchaser, transferee or assignee is at the time a parent, subsidiary or affiliated corporation of Warner, or a corporation with or into which Warner may merge or consolidate, or a person, firm or corporation succeeding to all or a substantial portion of Warner's assets, or another major motion picture distributor as such term is understood in the motion picture industry, Warner shall be released and discharged of and from any further liability or obligation hereunder."

The following shall be added at the end thereof:  "Upon request, Participant may obtain from Warner a copy of the written assumption of the obligations to Participant by such purchaser, transferor or assignee."

Paragraph 1 of Schedule 1:

Defined Gross shall include all film rentals actually received by Warner's subdistributors, if any, in the following territories:  U.K., Canada, France, Germany, Italy, Australia, New Zealand, Benelux, Scandinavia, South Africa, South Korea, Spain, Switzerland, Taiwan and Japan; provided, however, that Warner shall not use a subdistributor for the initial theatrical release of the English language version of the Picture in the United States or Canada.

Defined Gross shall include all sums actually received by Warner from recoveries of infringement, unfair competition, trademark and piracy actions with respect to the Picture.  Defined Gross shall also include all net sums derived by Warner from distribution of the Picture on a four-wall basis as such term is commonly understood in the motion picture industry.

Defined Gross further includes all net sums actually received by Warner on account of direct subsidies, aid or prizes relating specifically to the Picture, net of an amount equal to income taxes based thereon imposed by the country involved, if any.  If local laws require use of such monies as a condition to the grant of such subsidy or aid, such monies shall not be included in Defined Gross until actually used.

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
6
**Exhibit BB**
**295**

35493

**WB136095**
**CONFIDENTIAL**

In 1(d), the parenthetical in the first and second lines is deleted. Licenses of distribution rights referred to in 1(c) specifically include all licenses to cable operators, including pay, subscription, and other types of non-free television.

In 1(f)(i), line 2, the word "gross" shall be inserted before the word "income". Change the words "Subject to" on line 17 to "Notwithstanding". A subparagraph shall be added at the end of subparagraph (i) with the following: "If Warner receives a refund from the taxing authority which previously assessed any taxes previously deducted hereunder, the amount of such refund together with any interest previously received thereon shall be credited against sums deductible under this subparagraph (i)."

1(f) is deleted.

In 1(f), after "participations in the Picture" on lines 10-11, add the following: "but excluding from this subdivision (v) any participations in the Picture themselves." Delete the phrase in lines 15-16: "or to compensation for services rendered beyond any guaranteed period referred to in the foregoing agreement."

In 1(f), the dues and assessments referred to therein shall be limited to 1% of the Defined Gross of the Picture.

Paragraph 2 of Schedule 1:

The third and fourth sentences of Paragraph 6 of the Exhibit, which are deleted in Schedule 1, shall be deemed reinserted.

Music Publishing Income Exhibit: The second paragraph is deleted and the following substituted: "A sum equal to 75% of the 'publisher's share' of mechanical reproduction, synchronization license and performing fees received in U.S. currency by Warner's subsidiary or affiliated publisher with respect to music and lyrics written specifically for and synchronized in the Picture as released, provided the party entitled to share in Defined Gross of the Picture under the foregoing agreement is not entitled to receive composers' or lyricists' royalties in respect of such music or lyrics. The 'publisher's share' of mechanical reproduction and synchronization license fees shall be the full amount paid by the licensee, less composers' share of such fees and less the charges of the publisher or any agent, trustee or administrator acting for the publisher for the collection of such fees, not to exceed 5% thereof."

At the end of the third paragraph, the following is added: "If Warner's subsidiary or affiliated publisher is not entitled to 100% of the publisher's share of mechanical reproduction, synchronization license, and performing fees by reason of a "split" publishing agreement with the composer or lyricist of the music and lyrics involved, or any corporation furnishing the services of such composer or lyricist, then only the pro

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement          Rider to Exhibit "C"
Edgar Rice Burroughs, Inc.                                    7

**Exhibit BB**

296

35493

**WB136096
CONFIDENTIAL**

rata share of Warner's subsidiary or affiliated publisher shall be included for the purpose of the foregoing computations."

<u>Soundtrack Record Income Exhibit</u>:  The following is added at the end thereof: "Notwithstanding anything herein contained, the royalty payable hereunder shall be the net royalty actually received and retainable by Warner for its own account from the Record Company, as such royalty may be reduced, calculated, computed and paid in the same manner as the soundtrack record royalty paid to Warner under the applicable agreement with the Record Company is reduced, calculated, accounted for and paid."

FI803
02102BMMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
8
**Exhibit BB**
**297**

35493

**WB136097**
**CONFIDENTIAL**

<u>EXHIBIT D</u>

I.  <u>FEATURE MOTION PICTURES</u>

1.    TARZAN OF THE APES
2.    THE ROMANCE OF TARZAN
3.    THE RETURN OF TARZAN (THE REVENGE OF TARZAN)
4.    THE ADVENTURES OF TARZAN
5.    THE SON OF TARZAN
6.    TARZAN AND THE GOLDEN LION
7.    TARZAN THE MIGHTY
8.    TARZAN THE TIGER
9.    TARZAN THE APE-MAN
10.   TARZAN THE FEARLESS
11.   TARZAN AND HIS MATE
12.   THE NEW ADVENTURES OF TARZAN
13.   TARZAN AND THE GREEN GODDESS
14.   TARZAN ESCAPES
15.   TARZAN'S REVENGE
16.   TARZAN FINDS A SON
17.   TARZAN'S SECRET TREASURE
18.   TARZAN'S NEW YORK ADVENTURE
19.   TARZAN TRIUMPHS
20.   TARZAN'S DESERT MYSTERY
21.   TARZAN AND THE AMAZONS
22.   TARZAN AND THE LEOPARD WOMAN
23.   TARZAN AND THE HUNTRESS
24.   TARZAN AND THE MERMAIDS
25.   TARZAN'S MAGIC FOUNTAIN
26.   TARZAN AND THE SLAVE GIRL
27.   TARZAN'S PERIL
28.   TARZAN'S SAVAGE FURY
29.   TARZAN AND THE SHE DEVIL
30.   TARZAN'S HIDDEN JUNGLE
31.   TARZAN AND THE LOST SAFARI
32.   TARZAN'S FIGHT FOR LIFE
33.   TARZAN AND THE TRAPPERS
34.   TARZAN'S GREATEST ADVENTURE
35.   TARZAN THE APE-MAN
36.   TARZAN THE MAGNIFICENT
37.   TARZAN GOES TO INDIA
38.   TARZAN'S THREE CHALLENGES
39.   TARZAN AND THE VALLEY OF GOLD
40.   TARZAN'S DEADLY SILENCE
41.   TARZAN AND THE GREAT RIVER
42.   THE PERILS OF CHARITY JONES
43.   TARZAN'S JUNGLE REBELLION
44.   TARZAN AND THE JUNGLE BOY
45.   TARZAN THE APE-MAN
46.   GREYSTOKE, THE LEGEND OF TARZAN LORD OF THE APES

47.  TARZAN (Disney feature-length animated theatrical)

48.  TARZAN AND JANE (Disney feature-length animated direct-to-video)

Exhibit "D"

1

FI803
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
1

Exhibit BB
298

35493

WB136098
CONFIDENTIAL

## II. LIVE ACTION TELEVISION MOTION PICTURES

1.  ALEX THE GREAT
2.  ALGIE B FOR BRAVE
3.  BASIL OF THE BULGE
4.  BLUE STONE OF HEAVEN, THE - PART I
5.  BLUE STONE OF HEAVEN, THE - PART II
6.  CAP'N JAI
7.  CIRCUS, THE
8.  CONVERT, THE
9.  CREEPING GIANTS, THE
10. DAY OF THE GOLDEN LION, THE
11. DAY THE EARTH TREMBLED, THE
12. DEADLY SILENCE - PART I
13. DEADLY SILENCE - PART II
14. END OF A CHALLENGE
15. END OF THE RIVER
16. EYES OF THE LION
17. FACES OF DEATH, THE
18. FANATICS, THE
19. FIGUREHEAD, THE
20. FIRE PEOPLE, THE
21. FOUR O'CLOCK ARMY, THE - PART I
22. FOUR O'CLOCK ARMY, THE - PART II
23. GOLDEN RUNAWAY, THE
24. GUN FOR JAI, A
25. HOTEL HURRICANE
26. JAI'S AMNESIA
27. JUNGLE DRAGNET
28. JUNGLE RANSOM
29. KING OF THE DWASARI
30. LAST OF THE SUPERMEN, THE
31. LEOPARD ON THE LOOSE
32. LIFE FOR A LIFE, A
33. MAN KILLER
34. MASK OF BONA, THE
35. MOUNTAINS OF THE MOON - PART I
36. MOUNTAINS OF THE MOON - PART II
37. MUGUMA CURSE
38. PEARLS OF TANGA, THE
39. PERILS OF CHARITY JONES, THE - PART I
40. PERILS OF CHARITY JONES, THE - PART II
41. PRIDE OF A LIONESS, THE
42. PRIDE OF ASSASSINS
43. PRISONER, THE
44. PRODIGAL PUMA, THE
45. PROFESSIONAL, THE
46. RENDEVOUS FOR REVENGE
47. THIEF CATCHER
48. TIGER, TIGER

Exhibit "D"

2

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
2

**Exhibit BB**

**299**

35493

WB136099

II.  LIVE ACTION TELEVISION MOTION PICTURES (Continued)

49.  TO STEAL THE RISING SUN
50.  TRACK OF THE DINOSAUR
51.  TREK TO TERROR
52.  TRINA
53.  ULTIMATE DUEL, THE
54.  ULTIMATE WEAPON, THE
55.  ULTIMATUM, THE
56.  VILLAGE OF FIRE
57.  VOICE OF THE ELEPHANT, THE
58.  TARZAN IN MANHATTAN
59.  TARZAN AND THE CAVES OF DARKNESS
60.  TARZAN'S JOURNEY TO DANGER
61.  TARZAN AND THE PICTURE OF DEATH
62.  TARZAN AND THE PIRATE TREASURE
63.  TARZAN IN THE LOST CITY
64.  TARZAN AND THE KILLER LION
65.  TARZAN THE HUNTED
66.  TARZAN'S ELEVENTH HOUR
67.  TARZAN AND THE SAVAGE STORM
68.  TARZAN AND THE MYSTIC CAVERN
69.  TARZAN AND THE SILENT CHILD
70.  TARZAN AND THE GOLDEN EGG
71.  TARZAN AND THE POISONED WATERS
72.  TARZAN'S CHRISTMAS
73.  TARZAN AND THE UNWELCOME GUEST
74.  TARZAN AND THE RIVER OF DOOM
75.  TARZAN AND THE EXTRA-TERRESTRIALS
76.  TARZAN AND THE ORPHAN
77.  TARZAN AND THE DEADLY GIFT
78.  TARZAN AND THE TEST OF FRIENDSHIP
79.  TARZAN TAMES THE BRONX
80.  TARZAN AND THE WOMAN OF STEEL
81.  TARZAN AND THE ENEMY WITHIN
82.  TARZAN AND THE SONG OF THE JUNGLE
83.  TARZAN IN THE EYE OF THE HURRICANE
84.  TARZAN AND THE MISSILE OF DOOM
85.  TARZAN AND THE FORBIDDEN JEWELS
86.  TARZAN AND THE BROKEN PROMISE
87.  TARZAN AND THE AMAZON WOMEN
88.  TARZAN AND THE KARATE WARRIORS
89.  TARZAN AND THE LION GIRL
90.  TARZAN AND THE DEADLY DELUSIONS
91.  TARZAN AND THE FATAL EPIDEMIC
92.  TARZAN AND THE MYSTERIOUS SHEIK

Exhibit "D"

3

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
3

35493

WB136100
CONFIDENTIAL

Exhibit BB

300

II. <u>LIVE ACTION TELEVISION MOTION PICTURES</u> (Continued)

93.  TARZAN AND THE RUNAWAYS
94.  TARZAN MEETS JANE
95.  TARZAN AND THE WAYWARD BALLOON
96.  TARZAN AND THE FUGITIVE'S REVENGE
97.  TARZAN AND THE MUTANT CREATURE
98.  TARZAN RESCUES THE SONGBIRD
99.  TARZAN AND THE FIRE FIELD
100. TARZAN AND THE MOVIE STAR
101. TARZAN AND THE FOUNTAIN OF YOUTH
102. TARZAN AND THE LAW OF THE JUNGLE
103. TARZAN AND THE SHAFT OF DEATH
104. TARZAN AND THE POLLUTED RIVER
105. TARZAN'S DANGEROUS JOURNEY
106. TARZAN AND THE TOXIC TERROR
107. TARZAN AND THE SHOWDOWN
108. TARZAN AND THE KILLER FOG
109. TARZAN'S HOLLYWOOD ADVENTURE
110. TARZAN AND THE WITNESS FOR THE PROSECUTION
111. TARZAN AND THE ROCK STAR
112. TARZAN AND THE ODD COUPLE
113. TARZAN AND THE RETURN OF THE BRONX
114. TARZAN AND THE NEW COMMISSIONER
115. TARZAN AND THE STONEMAN
116. TARZAN AND THE DEADLY CARGO
117. TARZAN AND THE SAPPHIRE ELEPHANT
118. TARZAN AND THE FEAR OF BLINDNESS
119. TARZAN AND THE MATING SEASON
120. TARZAN AND THE GIFT OF LIVE
121. TARZAN AND THE DEATH SPIDERS
122. TARZAN AND THE RUSSIAN INVASION
123. TARZAN AND THE FIERY END
124. TARZAN AND THE CURSE OF DEATH
125. TARZAN AND THE KING OF THE APES
126. TARZAN AND THE EVIL TWIN
127. TARZAN AND THE DANGEROUS COMPETITION
128. TARZAN AND THE PIRATES REVENGE
129. TARZAN AND CHEETAH'S DESPERATE ADVENTURE
130. TARZAN AND THE SIXTH SENSE
131. TARZAN AND THE KING OF ROMANCE
132. TARZAN AND THE NIGHT HORRORS
133. TARZAN AND THE JEWELS OF JUSTICE

Exhibit "D"
4

FI803
021028MMS/blb 12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
4
**Exhibit BB**
**301**

35493

WB136101
CONFIDENTIAL

### III. ANIMATED THIRTY MINUTE TELEVISION EPISODES

```
 1.   TARZAN AND THE CITY OF GOLD
 2.   TARZAN AND THE VIKINGS
 3.   TARZAN AND THE GOLDEN LION
 4.   TARZAN AND THE FORBIDDEN CITY
 5.   TARZAN AND THE GRAVEYARD OF THE ELEPHANTS
 6.   TARZAN'S RETURN TO THE CITY OF GOLD
 7.   TARZAN AND THE STRANGE VISITORS
 8.   TARZAN AND THE LAND OF THE GIANTS
 9.   TARZAN AND THE KNIGHTS OF NIMMR
10.   TARZAN'S RIVAL
11.   TARZAN IN THE CITY OF SORCERY
12.   TARZAN AT THE EARTH'S CORE
13.   TARZAN AND THE ICE MONSTER
14.   TARZAN AND THE OLYMPIADS
15.   TARZAN'S TRIAL
16.   TARZAN THE HATED
17.   TARZAN AND THE BIRD PEOPLE
18.   TARZAN AND THE SUNKEN CITY OF ATLANTIS
19.   TARZAN AND THE COLOSSUS OF ZOME
20.   TARZAN AND THE BEAST IN THE IRON MASK
21.   TARZAN AND THE AMAZON PRINCESS
22.   TARZAN AND THE CONQUISTADORS
23.   TARZAN AND THE SPIDER PEOPLE
24.   TARZAN AND THE SPACE GOD
25.   TARZAN AND THE LOST WORLD
26.   TARZAN AND THE MONKEY GOD
27.   TARZAN AND THE HAUNTED FOREST
28.   TARZAN AND THE ISLAND OF DOCTOR MORPHOS
29.   TARZAN AND THE SIFU
30.   TARZAN AND JANE
31.   LAND BENEATH THE EARTH
32.   THE DROUGHT
33.   THE SOUL STEALER
34.   TARZAN AND THE FUTURE KING
35.   TARZAN AND THE HUNTRESS
36.   TARZAN AND THE WHITE ELEPHANT
```

Exhibit "D"

5

FI803
021028MMS/blb  12-13-02
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

Rider to Exhibit "C"
5

**Exhibit BB**

302

35493

**WB136102
CONFIDENTIAL**

## PUBLISHER'S RELEASE

The undersigned publisher hereby acknowledges and agrees for the express benefit of WARNER BROS., a division of Time Warner Entertainment Company, L.P., 4000 Warner Boulevard, Burbank, CA 91522, and its successors and assigns forever ("Warner"), that except for the Publishing Rights defined below, the undersigned has no right, title or interest whatsoever in that certain series of novels written by Edgar Rice Burroughs, published by the undersigned, titled TARZAN (the "Property"). Notwithstanding and without limiting the foregoing, if and to the extent  that the undersigned owns any right, title or interest in the Property other than Publishing Rights, the undersigned hereby quitclaims such right, title and interest other than Publishing Rights to Warner. The undersigned understands that Warner will be relying upon the foregoing acknowledgement and quitclaim in connection with the purchase of rights in the Property and the possible development, production and distribution of works based on the Property. As used herein, Publishing Rights means (i) the right to publish print editions of the Property in book form, whether hardcover or softcover and in magazines or other periodicals, whether in installments or otherwise, it being acknowledged that unless the Property has heretofore been published in comic book or comic strip form, the right to publish comic books and/or comic strips shall be deemed included within the merchandising rights granted to Warner by said author; (ii) the right to publish recorded readings by a single narrator of the text of published print editions of the Property in the form of audiocassettes, audiodisks or similar audio-only devices individually purchased by the end-user; and (iii) the right to publish the text of published print editions of the Property in the form of CD-ROM, videocassette tape or similar electronically read devices individually purchased by the end-user.  Such electronically read editions may contain non-moving visual illustrations which are reproductions of the illustrations contained in the applicable print edition of the Property but may not contain audio tracks of any kind.

Insofar as it is concerned, the undersigned hereby consents to the publication by the above-named author and/or by Warner, and/or their heirs, representatives, licensees and assigns, in any and all countries of the world, in the above-mentioned publishing media encompassed by the Publishing Rights, of the following: (a) excerpts from and summaries of the Property, or any motion picture or other versions thereof, for the purpose of advertising and/or publicizing any work produced pursuant to the rights owned by or licensed to Warner in the Property; and (b) souvenir booklets and "making-of-the-movie" and "coffee-table" type books relating to the Picture. No such publication shall contain excerpts or summaries taken from the Property in excess of 7,500 words in the aggregate.

FL206
021028MMS/blb  Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

1

35493

WB136103
CONFIDENTIAL

**Exhibit BB**

**303**

IN WITNESS WHEREOF, the undersigned has executed this instrument as of December 2, 2002.

_____

By: _____
    Its: _____    ("Publisher")

Address:

_____

_____

_____

FL206
021028MMS/blb  Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

2

**Exhibit BB**

**304**

35493

**WB136104
CONFIDENTIAL**

## "TARZAN (2003)"
## ASSIGNMENT

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, EDGAR RICE BURROUGHS, whose address is c/o Ziffren, Brittenham, Branca, Fischer et al, 1801 Century Park West, Los Angeles, California 90067, Attention: David Nochimson, hereby sells, grants and assigns to WARNER BROS., a division of Time Warner Entertainment Company, L.P. ("Purchaser"), whose address is 4000 Warner Boulevard, Burbank, California 91522, in perpetuity and throughout the universe, among other things, the exclusive right to produce and distribute for and in all media now known or hereafter devised theatrical and made-for-homevideo live action motion pictures and allied rights therein (including by way of illustration all soundtrack and music publishing rights) based on that certain series of novels described as follows:

    Titles:  "TARZAN" (and related titles)
    Written By:  Edgar Rice Burroughs
    Publisher:  _____
    Date and Place of Initial Publication:  _____
    Copyright Registration No.:  _____

including the title, themes, stories and all other contents thereof, and the characters therein and all translations, adaptations, sequels and other versions thereof, whether now or hereafter acquired, and in and to the copyright thereof and all renewals and extensions of such copyright.

The undersigned and Purchaser have entered into an Option Purchase Agreement dated December 2, 2002 relating to the transfer and assignment of the foregoing rights in and to said work, which rights are more fully described in said agreement, and this assignment is expressly made subject to all of the terms, conditions and provisions contained in said agreement.  The option described in said agreement has been exercised by Purchaser.

The undersigned has executed this assignment as of _____, effective on _____, the date of exercise of the option.

                          EDGAR RICE BURROUGHS, INC.


                          /s/ Illegible
                          Its: President

FL206
021028MMS/blb  Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

35493

WB136105
CONFIDENTIAL

Exhibit BB
305

## "TARZAN (2003)"
## OPTION AGREEMENT

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, EDGAR RICE BURROUGHS, INC., whose address is c/o Ziffren, Brittenham, Branca, Fischer et al, 1801 Century Park West, Los Angeles, California 90067, Attention: David Nochimson, hereby sells, grants and assigns to WARNER BROS., a division of Time Warner Entertainment Company, L.P. ("Purchaser"), whose address is 4000 Warner Boulevard, Burbank, California 91522, the exclusive option, for an initial option period commencing December 2, 2002 and continuing for a period of at least 24 months following the Execution Date specified below, which may be extended for an additional period of 12 months and other automatic extensions, to acquire in perpetuity and throughout the universe, among other things, the exclusive right to produce and distribute for and in all media now known or hereafter devised theatrical and made-for-homevideo live action motion pictures and allied rights therein (including by way of illustration all soundtrack and music publishing rights) based on that certain series of novels described as follows:

      Titles:  "TARZAN" (and related titles)
      Written By:  Edgar Rice Burroughs
      Publisher: _____
      Date and Place of Initial Publication: _____
      Copyright Registration No.: _____

including the title, themes, stories and all other contents thereof, and the characters therein and all translations, adaptations, sequels and other versions thereof, whether now or hereafter acquired, and in and to the copyright thereof and all renewals and extensions of such copyright.

The undersigned and Purchaser have entered into an Option Purchase Agreement dated December 2, 2002 relating to the transfer and assignment of the foregoing rights in and to said work, which rights are more fully described in said agreement, and this option agreement is expressly made subject to all of the terms, conditions and provisions contained in said agreement.

Execution Date of the Option Purchase Agreement:  *as of March 1, 2003.*

                    EDGAR RICE BURROUGHS, INC.


                    */s/ Illegible*
                    Its: President

FL206
021028MMS/blb  Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

35493

WB136106
CONFIDENTIAL

or Purchaser's address as designated in this Agreement. Any such delivery or mail service shall have the same effect as personal service within the State of California.

(d) Relationship of the Parties: This Agreement is not a partnership between or joint venture of the parties hereto and neither party is the agent of the other. This Agreement is not for the benefit of any third party, whether or not referred to herein. Captions and organization are for convenience only and shall not be used to construe meaning. A waiver of any breach shall not waive a prior or subsequent breach. All remedies shall be cumulative and pursuit of any one shall not waive any other. This Agreement may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the Agreement.

WARNER BROS., a division of Time
Warner Entertainment Company, L.P.

by WARNER BROS. PICTURES INC.
(its successor-in-interest)

("Purchaser")

By: _____
Its: Vice President

Date signed by Warner Bros. Pictures Inc:

_____7-17-03_____

EDGAR RICE BURROUGHS, INC.

_____
("Owner")

Execution Date: as of March 1, 2003

FL206
021028MMS/blb  Rev(3) 6-5-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

27

35493

FL206
021028MMS/blb  Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

35493

**Exhibit BB**
**307**

WB136107
CONFIDENTIAL

<u>"TARZAN (2003)"</u>
<u>OPTION AGREEMENT</u>

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, EDGAR RICE BURROUGHS, INC., whose address is c/o Ziffren, Brittenham, Branca, Fischer et al, 1801 Century Park West, Los Angeles, California 90067, Attention: David Nochimson, hereby sells, grants and assigns to WARNER BROS., a division of Time Warner Entertainment Company, L.P. ("Purchaser"), whose address is 4000 Warner Boulevard, Burbank, California 91522, the exclusive option, for an initial option period commencing December 2, 2002 and continuing for a period of at least 24 months following the Execution Date specified below, which may be extended for an additional period of 12 months and other automatic extensions, to acquire in perpetuity and throughout the universe, among other things, the exclusive right to produce and distribute for and in all media now known or hereafter devised theatrical and made-for-homevideo live action motion pictures and allied rights therein (including by way of illustration all soundtrack and music publishing rights) based on that certain series of novels described as follows:

      Titles: "TARZAN" (and related titles)
      Written By: Edgar Rice Burroughs
      Publisher: _____
      Date and Place of Initial Publication: _____
      Copyright Registration No.: _____

including the title, themes, stories and all other contents thereof, and the characters therein and all translations, adaptations, sequels and other versions thereof, whether now or hereafter acquired, and in and to the copyright thereof and all renewals and extensions of such copyright.

The undersigned and Purchaser have entered into an Option Purchase Agreement dated December 2, 2002 relating to the transfer and assignment of the foregoing rights in and to said work, which rights are more fully described in said agreement, and this option agreement is expressly made subject to all of the terms, conditions and provisions contained in said agreement.

Execution Date of the Option Purchase Agreement: *As of March 1, 2003.*

                     EDGAR RICE BURROUGHS, INC.

                     *[signature]*

                   Its: *President*

FL206
021028MMS/blb Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

                              35493

FL206
021028MMS/blb Rev. 4-1-03
TARZAN 2003/Option Purchase Agreement
Edgar Rice Burroughs, Inc.

35493

**Exhibit BB**
**308**

WB136108
CONFIDENTIAL

<u>SENT BY MESSENGER</u>

June 11, 2003

P. J. Shapiro Esq.
c/o Ziffren, Brittenham, Branca & Fischer
1801 Century Park West
Los Angeles, California  90067

Re:  "TARZAN" – Edgar Rice Burroughs, Inc. – Option Purchase Agreement

Dear P. J.:

I enclose herewith five (5) copies of the above captioned agreement, which you have now confirmed is ready for signature.

Please arrange to have all of the copies signed on behalf of Edgar Rice Burroughs, Inc. and return them to me.  I will then have two (2) copies countersigned and sent to you for your files.

Note that this agreement will be countersigned on behalf of Warner Bros., a division of Time Warner Entertainment Company, L.P., by its successor-in-interest Warner Bros. Pictures Inc.

Yours truly,

*/s/ MARSHALL M. SILVERMAN*
Marshall M. Silverman

MMS/blb

enclosures

cc:  David Nochimson Esq.
     Dan Furie
     Virginia Tweedy w/enc.
     Mike Edwards w/enc.
     Norma Fuss w/enc.

**Exhibit BB**
**309**

WB136109
CONFIDENTIAL