1 | Marc Toberoff (State Bar No. 188547)
    *mtoberoff@ipwla.com*
2 | Keith G. Adams (State Bar No. 240497)
    *kgadams@ipwla.com*
3 | Pablo D. Arredondo (State Bar No. 241142)
    *parredondo@ipwla.com*
4 | David Harris (State Bar No. 255557)
    *dharris@ipwla.com*
5 | TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
6 | Malibu, California 90265
Telephone: (310) 246-3333
7 | Facsimile: (310) 246-3101

8 | Attorneys for Defendants Mark Warren Peary, as personal representative of the
9 | Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and
10 | as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>        Plaintiff,<br><br>vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JULY 16, 2012 ORDER, REVERSING MAGISTRATE ZAREFSKY'S JUNE 21, 2012 ORDER, AND COMPELLING THE PRODUCTION OF A PRIVILEGED DOCUMENT BY AUGUST 13, 2012**<br><br>*Reply Declaration of Pablo Arredondo filed concurrently*<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date: September 10, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 11 |

DEFENDANTS' REPLY IN SUPPORT OF MOT. FOR RECONSIDERATION RE: COURT'S JULY 16, 2012 ORDER

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.  RECONSIDERATION IS WARRANTED ..................................................... 2

   A.  Defendants Did Not Possess The November 2001 Email Until 2011 ...................................................................................................... 3

      1.  DC's Opposition Proves A "Material Difference in Fact" ......... 3

      2.  The November 2001 Email Was Not In The Paper Files ........... 4

      3.  This Motion Is The First Opportunity That Defendants Had To Present Mr. Toberoff's Declaration To This Court ............... 6

   B.  Defendants' Motion For Reconsideration Is Proper ............................ 8

II. DC ATTEMPTS TO COVER UP ITS DISCOVERY MISCONDUCT ........ 9

CONCLUSION ....................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**

*Arevalo v. United States*,
2008 WL 4522442 (E.D. Pa. Oct. 7, 2008) ............................................................... 8

*Buell v. Mildworm*,
1998 WL 63402 (S.D.N.Y. 1998) ............................................................................. 8

*KMart Corp. v. Floorgraphics, Inc.*,
2008 WL 243761 (E.D. Mich. 2008) ..................................................................... 3, 8

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
568 F. Supp. 2d 1152 (C.D. Cal. 2008) .................................................................... 7

*Servants of the Paraclete v. Doe*,
204 F.3d 1005 (10th Cir. 2000) ................................................................................ 3

*Siegel v. Warner Bros. Entertainment Inc.*
Case No. 04-08400 ODW (RZx) .............................................................................. 1

*Smith v. Massachusetts*,
543 U.S. 462 (2005) .................................................................................................. 2

**Rules**

C.D. Cal. Local Rule 7-18 ........................................................................................ 3

F.R.C.P. 60(a) ........................................................................................................... 3

## INTRODUCTION

DC Comics' ("DC") Opposition (Docket No. 477; "Opp.") to Defendants' Motion for Reconsideration (Docket No. 466; "Mot.") completely undermines DC's prior representations to this Court, and alone justifies reconsideration.

DC's motion for review (Docket No. 455; "Motion for Review") of Magistrate Zarefsky's June 21, 2012 order (Docket No. 452) was based on DC's misrepresentation to this Court that in 2006, Marc Toberoff, counsel for Laura Siegel Larson in the related case, *Siegel v. Warner Bros. Entertainment Inc.*, Case No. 04-08400 ODW (RZx) ("*Siegel*"), was sent "paper files" by Renner Otto, Michael Siegel's prior counsel, including a November 2001 e-mail to Michael (the "November 2001 Email"). DC's counsel repeated this knowing falsehood no less than five times in its motion for review, which was premised on it. Motion for Review 1 ("Michael's lawyers confirmed that they gave Toberoff a copy of the email six years ago"), 5, 6 ("Bulson's partner confirmed that the electronic file was created by scanning the paper file sent to Toberoff in 2006"), 7, 11. The Court, in unwitting reliance on these misrepresentations by DC's counsel, granted DC's Motion for Review on July 16, 2012. Docket No. 457.

In truth, the first time Mr. Toberoff had access to the decade-old November 2001 Email was in 2011 when Renner Otto sent an electronic archive, containing hundreds of documents, including the e-mail. Docket No. 466-1 ¶ 17.

Now, in opposition to Defendants' motion, DC repeatedly cites evidence confirming what Defendants had always said and demonstrating that DC and its counsel knew the truth all along: Renner Otto's paper files were ***not*** sent to Mr. Toberoff in 2006, but to Melvin Banchek, executor of the Estate of Michael Siegel, who put them in storage. In connection with a subpoena to Renner Otto in the *Siegel* case, Mr. Banchek later retrieved and sent these paper files to Mr. Toberoff's firm to review for privilege. The Estate is generally represented by a Cleveland attorney, Gerald Berk. However, as is common in litigation, Mr. Toberoff's firm helped the

Estate review the documents for privilege, as it shared a common interest with his client, Laura Siegel Larson.

Despite DC's revised arguments that the Michael Siegel "paper files" sent to Mr. Banchek in 2006 and the electronic archive sent to Mr. Banchek in 2011 are identical, they apparently were not. Contrary to DC's false claim that the November 2001 Email was "conveniently" missing, the paper files sent by Mr. Banchek to Mr. Toberoff's firm in 2006 did not include numerous documents – including but not limited to the November 2001 Email – that were contained in the Renner Otto electronic archive received by the Toberoff firm in 2011. Many of these documents, which had not previously been received by the Toberoff firm, were irrelevant to this case or the related *Siegel* case. Nonetheless, such documents were either produced or promptly logged along with the November 2001 Email. Arredondo Decl., Ex. I.

DC's dismissal of Mr. Toberoff's testimony as "too little, too late" is meritless. Mr. Toberoff's declaration simply confirms what he had represented in Defendants' briefs to Magistrate Zarefsky on this subject, which was accepted. DC ignores that it raised this purported "declaration" issue for the first time on reply before Magistrate Zarefsky, after which DC's motion was denied. DC's Motion for Review was thus Defendants' first opportunity to respond to DC's argument. This Court's July 16, 2012 order unsuspectingly granted DC's Motion for Review prior to the filing of Defendants' opposition, based on what are now clearly shown to be misrepresentations by DC. Reconsideration is amply justified, and Magistrate Zarefsky's June 21, 2012 order should be reinstated.

## ARGUMENT

### I. RECONSIDERATION IS WARRANTED

Under C.D. Cal. Local Rule 7-18, reconsideration is justified where there "is a material difference in fact … from that presented to the Court before such decision," or the "emergence of new material facts." *See also Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) ("A district court has the inherent power to reconsider and modify its

interlocutory orders prior to the entry of judgment." ); F.R.C.P. 60(a) (a court may correct a mistake "whenever one is found in a judgment, order, or other part of the record" and "may do so on motion or on its own, with or without notice"); *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts [or] a party's position…."). Reconsideration is especially appropriate where a court did not have the opportunity to consider a party's opposition to the underlying motion. *See KMart Corp. v. Floorgraphics, Inc.*, 2008 WL 243761 (E.D. Mich. 2008).

### A. Defendants Did Not Possess The November 2001 Email Until 2011

#### 1. DC's Opposition Proves A "Material Difference in Fact"

DC's Motion for Review was based on a false premise that: (a) Renner Otto, the late Michael Siegel's attorneys, purportedly provided a complete set of its "paper files" to Mr. Toberoff in 2006 (Docket No. 394 at 8-9); (b) the electronic archive sent to the Estate of Michael Siegel and Mr. Toberoff in 2011 was an exact duplicate of those "paper files" (Docket No. 427 at 1-2); and (c) because the electronic archive contained the November 2001 Email, Mr. Toberoff purportedly had the e-mail in 2006, failed to log it, and allegedly waived privilege. *Id*.

The false underlying premise of DC's Motion is actually ***disproved*** by the evidence DC now cites in opposition: specifically, the paper files were sent not to Mr. Toberoff but rather to Melvin Banchek, who put those files in "storage" and only later sent certain paper files to Mr. Toberoff. Docket No. 477-2 at 51-52, ¶2-7. This is supported by Renner Otto's 2006 cover letter to Mr. Banchek. Docket No. 466-2, Ex. B. Moreover, as DC inadvertently points out (Opp. 5-6), this is supported not only by Mr. Toberoff's sworn declaration, but also by the sworn declaration of another attorney, Nicholas Williamson, who confirmed to the Ohio court in 2006 that "the *relevant* [paper] file[s] had been forwarded… to Melvin [Banchek], Esq." and that later, after Mr. Banchek had located paper files "*in his storage*," he sent them to the Toberoff firm, whereupon it "began analyzing the file" and prepared "a privilege

log." Docket No. 477-2 at 52, ¶3-7 (emphasis added).

Tellingly, DC's counsel knew that Renner Otto had sent the paper files to Mr. Banchek, *not* Mr. Toberoff, and still chose to anchor its Motion for Review in the blatant and repeated misrepresentation to this Court that Renner Otto had sent its "paper files" to Mr. Toberoff. Docket No. 455 at 1, 5 ("Bulson's law firm, Renner Otto ... ma[de] clear that the paper file they sent Toberoff in 2006 should have the same contents"), 6, 7 ("Renner Otto … confirmed that the electronic file was simply a scan of the paper file they sent Toberoff in 2006."), 11. For example, in the 2011 deposition of Don Bulson (Michael Siegel's former attorney) by DC's counsel, Matt Kline, Bulson explicitly testified multiple times that Michael's paper files were sent to his Estate, not to Mr. Toberoff:

```
12   Q    Okay.  Okay.
13             I also understand that the law firm
14        sent Mr. Siegel's hard copy files to the
15        lawyers representing Mr. Siegel's estate in
16        the probate action in this case, correct?
17   A    We turned -- we turned custody of the files
18        over to the estate.
```

Declaration of Pablo Arredondo ("Arredondo Decl."), Ex. A at 4:12-18

```
10             MR. KLINE:       Understood.
11   Q    So my understanding is that you had physical
12        hard copies of what we'll call the Michael
13        Siegel file.  You gave the Michael Siegel
14        file, the physical hard copies, to the
15        Banchek firm, correct?
16   A    Correct.
```

Arredondo Decl., Ex. A at 5:10-16 . Tellingly, DC provides no explanation in its opposition why it *repeatedly* misrepresented these critical facts to the Court. DC's own evidence demonstrates a "material difference in fact … from that presented to the Court before [its] decision" that justifies reconsideration. Local Rule 7-18.

### 2.   The November 2001 Email Was Not In The Paper Files

DC also offers *no* evidence to support its bald assertion that the November 2001 Email was included in the 2006 paper files. Opp. 6; Motion for Review 6.

Instead, DC engages in a lengthy discussion about how Mr. Toberoff's firm reviewed certain paper files sent to him by Mr. Banchek in 2006. Opp. 4-7. Defendants have never suggested otherwise. Rather, the evidence demonstrates that the paper files (1) were sent from Renner Otto to Mr. Banchek, (2) were put in "storage" by Mr. Banchek; (3) were then taken out of storage by Mr. Banchek who sent the relevant files to the Toberoff firm, and (4) that these files did not include the November 2001 Email (and many other documents contained in the electronic archive).

Contrary to DC's false assertions, Josh Ryland of Renner Otto never contradicted this account, nor did he state that he "had read Toberoff's brief." Opp. 3. All Josh Ryland stated in a causal three-sentence *e-mail* was that DC had "informed" him of a filing, and that "to the best of his knowledge" the "paper file *should* be the same" as that electronic archive. Docket 427-2 at 4 (emphasis added). *Cf.* Opp. 1 (off-hand remark by Mr. Ryland represented by DC as an "affirmation" of its arguments). And Mr. Ryland, a litigator, had little foundation for even this statement as he had not represented Michael Siegel, had not compiled the electronic archive, and had not sent the "paper files" to the Estate of Michael Siegel.

There is also nothing "convenient" about the fact the November 2001 Email was not in the paper files received from the Estate of Michael Siegel in 2006, as suggested by DC.

*First,* as shown by a comparison of the October 23, 2006 privilege log to the November 29, 2011 privilege log corresponding to the Renner Otto electronic files directly received in 2011, the paper files from Mr. Banchek in 2006 did not contain the November 2001 Email, and many other privileged documents contained in the electronic archive, which were duly logged upon their receipt in 2011. Docket No. 477-2 at 18-36. The electronic archive also contained numerous non-privileged documents, many of which were irrelevant, and all of which were produced. Arredondo Decl., Ex. B. DC is well aware of this fact, given that Defendants properly produced over 600 pages of such documents to DC in 2011, while

simultaneously updating their privilege logs to include many new privileged documents that were not in the paper files. *Id.*

The fact that the electronic archive contained *many* documents not in the paper files received by the Toberoff firm in 2006 undermines DC's bogus claim that the November 2001 Email had been withheld for some purported tactical reason. No such rationale applies to the many other produced/logged documents appearing in the electronic archive but not in the paper files, and DC does not suggest that Defendants attempted to hide or suppress all of these documents, as most of them are irrelevant. Instead, DC attempts to raise an unwarranted air of suspicion by singling out just one such document – the November 2001 Email.

***Second,*** DC's hyperbole that the November 2001 Email is "devastating" to Defendants is without any merit. Defendants produced the November 2001 Email to DC on August 13, 2012 by mail. Arredondo Decl., Exs. C, E. DC received a copy of the November 2001 Email by no later than 10:00 a.m. on August 15, 2012, and filed its opposition on August 16, 2012. Arredondo Decl., Ex. D. Tellingly, despite DC's hyperbole that the November 2001 Email is "devastating" (Opp. 6; Motion for Review 7) and that Mr. Toberoff's representations to Magistrate Zarefsky about the email were supposedly false (Opp. 7, 9), DC did not even attempt to file the document under seal for this Court's review. The reason is obvious: the privileged November 2001 Email is barely relevant to DC's concocted tort claims. Magistrate Zarefsky, after reviewing the email *in camera*, expressly confirmed that the November 2001 Email concerned nothing more than "legal rights and the potential representation of Michael Siegel," who is nowhere even mentioned in DC's complaint. Docket No. 451 at 1.

### 3. This Motion Is The First Opportunity That Defendants Had To Present Mr. Toberoff's Declaration To This Court

Mr. Toberoff's declaration in response to DC's Motion for Review is consistent with all of the above and Defendants' briefs (*e.g.,* Docket No. 412 at 1-3)

to Magistrate Zarefsky. *See* Docket No. 466-1, ¶17 ("Contrary to DC Comics' assertions, Renner Otto did not send me a paper copy of the November 2001 Email in 2006. I first received the November 2001 Email in 2011 as part of Renner Otto's electronic database of Michael Siegel's client files.").

DC weakly argues that Defendants could have presented this earlier. Opp. 1, 3. However, DC first raised the purported issue of a declaration in their reply brief to Magistrate Zarefsky. Docket No. 427 at 2. That motion was nonetheless denied, based on the same representations in Defendants' opposition brief. Courts routinely consider evidence on reconsideration where, as here, a party "had no incentive" to provide it earlier. *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1163 (C.D. Cal. 2008) (considering previously available evidence on reconsideration where "defendants had no incentive" to present it in initial briefing).

In DC's Motion for Review of Magistrate Zarefsky's denial, it argued that the Court should not have believed Mr. Toberoff's "naked assurance – without a declaration – that the November 2001 email was not included in the 2006 paper file." Docket No. 455 at 6. Defendants would have presented Mr. Toberoff's declaration in their opposition but this Court ruled on DC's motion prior to the deadline for filing it. Docket No. 457. This motion is thus the first time Defendants had both the incentive and the opportunity to present this declaration to this Court.

\* \* \*

DC's argument requires this Court to disregard the sworn declaration of not one, but two attorneys, based solely on suspicion and innuendo, but no contrary evidence. It may be that in an ideal world "the documents in the 'Renner Otto [electronic] archive' and the paper file *should* [have] be[en] the same" (Docket No. 455 at 7, No. 427-2 at 4), but – as evidenced by Mr. Toberoff's declaration, Mr. Williamson's declaration, the 2006 and 2011 privilege logs, and the hundreds of pages of new documents promptly produced and/or logged after the electronic file was reviewed in 2011 – they were not.

### B. Defendants' Motion For Reconsideration Is Proper

Defendants do not improperly "repeat" any arguments on reconsideration that they previously made in opposition, as DC suggests. Opp. 3. The July 16, 2012 order issued before Defendants had even *filed* their opposition; Defendants could hardly have "repeated" arguments they did not have a chance to make.

DC also nowhere addresses the many cases cited by Defendants where the failure to consider an opposition is grounds for reconsideration. Mot. 6; *KMart Corp. v. Floorgraphics, Inc.*, 2008 WL 243761 (E.D. Mich. 2008) (reconsidering order issued before parties' response filed); *Dougherty v. Bowen* 1988 WL 2504, at *1 n.1 (E.D.N.Y. Jan. 6, 1988) (vacating order issued prior to filing of opposition papers and using reconsideration as an opportunity to "allow consideration of the papers filed both in favor of and in opposition"); *Buell v. Mildworm*, 1998 WL 63402 (S.D.N.Y. 1998) (reconsidering order that had been issued before opposition papers were filed). Tellingly, in the only case cited by DC for the dubious proposition that this is irrelevant, the court issued its order after full briefing had been considered. *Arevalo v. United States*, 2008 WL 4522442, at *3 (E.D. Pa. Oct. 7, 2008).

Nor was there any improper delay in bringing this motion, as DC argues. Opp. 3. There is no specific time limit on motions for reconsideration. C.D. Cal. Local Rule 7-18. The Court issued its order on July 16, 2012. That same day, DC filed a motion for summary judgment for hearing on August 20, 2012,[1] to which Defendants' opposition was due on July 30, 2012. Docket No. 458, Notice of Motion at 3. Defendants thus focused on opposing DC's summary judgment motion by July

---

[1] To artificially compress Defendants' time to file an opposition and to avoid a hearing before this Court, DC purposefully noticed the hearing on its summary judgment motion for August 20, 2012, *after* it had received written notice that their opposing counsel would be on vacation on August 20. Arredondo Decl., Ex. F. DC then waited until Defendants had filed their opposition before requesting that the Court *vacate* DC's August 20 hearing date, ostensibly due to Mr. Toberoff's vacation, even though DC was well aware of this when it noticed the August 20 hearing in the first place. Docket No. 476.

30, and brought the instant motion for reconsideration mere days later, on August 2, 2012. Docket Nos. 462, 466.

## II. DC ATTEMPTS TO COVER UP ITS DISCOVERY MISCONDUCT

For DC to accuse Defendants of "irrelevant attacks" (Opp. 7) is the height of hypocrisy. To elicit bias, DC included 5 pages of unfounded attacks against Mr. Toberoff in its 12-page Motion for Review that were irrelevant to the November 2001 Email. Docket No. 455 at 2, 3, 7-11. After forcing Defendants to respond to its baseless attacks, DC complains that Defendants' motion for reconsideration is "needlessly long." Opp. 1. When Defendants pointed out DC's gamesmanship and discovery misconduct, DC suddenly decides that the topic is a "sideshow." Mot. 7. Nor does DC justify its misconduct:

- DC offers no real explanation whatsoever about its production of letters related to the 1992 Agreement – one of the central issues in this case – just days before it filed its summary judgment motion including such letters. Opp. 7-8.
- DC also offers no explanation for its reliance on privilege logs from 2005-07 in the *Siegel* case, or its failure to update such logs for this different case, as Defendants have. Opp. 8; Docket No. 162-6 at 391-509, No. 162-7 at 510-570, No. 217-5 at 11-16.
- DC argues that "Defendants' assertion that DC 'refused to meaningfully respond' to defendants' interrogatories … was rejected by the Magistrate Judge" (Opp. 8); DC omits that on the central issue presented by the motion – DC's citation of the entire record in this case and *Siegel* in response to focused "contention interrogatories" – the Magistrate held that "the Court can envision *no* circumstance in which it is appropriate to respond by referring a party to the entire briefing or record in any suit." Docket No. 467 at 2.
- DC eludes or ignores Magistrate Zarefsky's consistent criticism of their misconduct by pointing to limited issues within such orders on which DC prevailed. Opp. at 8; Docket No. 209 at 13; No. 323 at 2; No. 439.

**CONCLUSION**

Defendants respectfully request that the Court grant Defendants' motion for reconsideration and affirm Magistrate Zarefsky's June 21, 2012 Order.

Dated: August 27, 2012          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel