DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DECLARATION OF DANIEL M. PETROCELLI IN SUPPORT OF REQUEST FOR CONTINUANCE OF SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(d), AND IN SUPPORT OF DC'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:  Oct. 15, 2012<br>**Hearing Time**:  1:30 p.m.<br>**Courtroom**:  11 |

# DECLARATION OF DANIEL M. PETROCELLI

I, Daniel M. Petrocelli, declare and state:

1. I am a partner at O'Melveny & Myers LLP, counsel of record for plaintiff DC Comics in this case. I make this declaration in support of DC Comics' Request For Continuance Of Summary Judgment Under Fed. R. Civ. P. 56(d), and in support of DC's Opposition To Defendants' Motion For Partial Summary Judgment. I have personal knowledge of the matters set forth in this declaration.

2. Defendants have moved for summary judgment on DC's First, Second, and Third Claims for Relief. DC moved for summary judgment on its Third Claim, and three of the five grounds underlying its First Claim. *See* Docket No. 458. The Court tentatively granted DC's motion, and heard oral argument on the motion on September 5, 2012. (A true and correct copy of the Court's tentative opinion is attached hereto as Exhibit 1; a true and correct copy of the transcript of the September 5 oral argument is attached hereto as Exhibit 2.)

3. As explained in the sections that follow, discovery is ongoing on the additional issues defendants alone challenge in their cross-motion for summary judgment—chief among them, the unclean-hands ground for relief underlying DC's First Claim, and DC's Second Claim. Hence, DC asks the Court to defer ruling on these particular issues until discovery is complete.

4. Under Federal Rule of Civil Procedure 56(d), a party may obtain a continuance on a motion for summary judgment if it appears that he "cannot for reasons stated present by affidavit facts essential to justify his opposition." If a party making a Rule 56(d) request has "diligently pursued its previous discovery opportunities," *Byrd v. Guess*, 137 F.3d 1126, 1135 (9th Cir. 1998), and sets forth in affidavit form (1) the relevant information it seeks to elicit from further discovery, and (2) the basis for believing that the information sought actually exists, then the additional discovery must be granted. *VISA Int'l Servs. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (reversing district court's

denial of Rule 56(f) application where discovery was not complete); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("the Supreme Court has restated the rule as <u>requiring</u>, rather than <u>merely permitting</u>, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition'") (underlining added); *Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes for the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (noting that where a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery … district court should grant any Rule 56(f) motion fairly freely").

## I.  DC Has Diligently Pursued Discovery

5.  Since DC filed this case in 2010, it has diligently pursued discovery in aid of its claims, including its unclean-hands claim and its Second Claim, which challenges the scope of the Shuster Termination Notice, assuming the Notice is valid. DC served hundreds of discovery requests, deposed a number of witnesses, and been forced by defendants' misconduct to file well over 20 discovery motions.

6.  Despite reasonable diligence on DC's part, discovery has been delayed due to: (1) an almost two-year-long discovery dispute (and stay that was imposed) concerning the Toberoff Timeline documents; and (2) defendants' efforts to evade and obstruct the discovery process (which will be the subject of an omnibus sanctions motion that DC will file shortly).

7.  Defendants' discovery misconduct has particularly prejudiced DC's ability to litigate its unclean-hands claim, which, like any claim involving allegations of fraud and bad faith on the part of defendants, relies on evidence that is uniquely within the offending party's possession. *E.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245-46 (4th Cir. 2002) (reversing grant of summary judgment on Rule 56(f) grounds where plaintiff argued such discovery on bad-faith claim was "uniquely in the possession of defendants").

8.  For almost two years—until May 2012—discovery in this case was

- 2 -   PETROCELLI DECL. ISO DC'S RULE 56(D)
REQUEST AND DC'S OPP. TO DEFS.' MSJ

1  largely stalled while the parties litigated whether defendants waived privilege over
2  the Toberoff Timeline documents by disclosing them to the U.S. Attorney's office
3  in 2010. The Timeline documents describe Toberoff's rampant business and ethical
4  misconduct. *In re Pacific Pictures*, 679 F.3d 1121, 1124 (9th Cir. 2012); Docket
5  Nos. 163-12 at 735-40; 427-3-427-11.

6      9.     The discovery magistrate ordered defendants to produce the Timeline
7  documents to DC in May 2011, but stayed his ruling pending appellate review.
8  Docket No. 262 at 4. While the case was stayed (and defendants' petition for writ
9  review was pending), DC sought to take a number of depositions of defendants and
10 third party witnesses, but defendants and the third parties argued that DC would
11 only have one chance to depose each witness, and even if the Timeline documents
12 were later produced, DC could not examine the witnesses a second time.

13     10.     In April 2012, the Ninth Circuit affirmed the district court's order
14 compelling defendants to produce the Timeline documents. *Pacific Pictures*, 679
15 F.3d at 1131. Defendants delayed producing the documents, filing a series of
16 emergency motions, which this Court and the Ninth Circuit rejected. Docket Nos.
17 424, 429; 9th Cir. Appeal No. 11-71844 Docket No. 39. The Timeline documents
18 were finally produced in May 2012, and have revealed not only further evidence of
19 defendants' misconduct, but that defendants have been withholding other
20 documents and important evidence, and misled DC and the Courts about what
21 documents they possessed and what documents were privileged or not.[1]

---

[1] Defendants' obstruction of the discovery process, includes, but is not limited to:
- withholding non-privileged communications between defendant Laura Siegel Larson and her brother, Michael Siegel, *e.g.*, Docket Nos. 160 at 37-38; 225-4; 316 at 21-24; 362-2 at 286-90; 394 at 14-17;
- manipulating privilege logs to conceal non-privileged documents, *e.g.*, Docket Nos. 316 at 21-24; 362-2 at 286-90; and
- falsely claiming that responsive documents do not exist, *compare* Docket No. 395-1 at 96-97 (defendants' statement to the Court at the hearing on DC's motion to compel Laura's November 2, 2002, letter to Michael: "there's no November 2nd letter as described"), *and* Docket No. 162-12 at 589 ("There are no documents related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights"), *with* Docket No. 455-2 at 3-4 (November 2, 2002 letter, from Larson to Michael Siegel produced after DC moved for

1    11.    These discovery issues will be fully addressed in the sanctions motion DC intends to file.  Docket No. 477-2 at 120-21.  And these documents and issues bear directly on DC's unclean-hands claim against defendants.  Such documents include previously undisclosed legal memoranda from third-party attorneys to Toberoff documenting the ethical violations presented by his joint-venture business relationship with the Shuster heirs.  Docket No. 427-3 at 335-49.  DC needs to complete all document discovery—and motion practice related to it—before any summary judgment motion challenging its unclean-hands claim can be heard.  It also still needs to depose many witnesses about these documents, including each of the defendants, as well as close to 10 third parties.   While the Court could grant summary judgment in DC's favor on its unclean-hands claim for the reasons discussed in DC's opposition to defendants' motion, defendants cannot possibly obtain summary judgment on these issues, when discovery is still so incomplete.

### A.    DC's First Claim for Relief

12.    DC's First Claim alleges that Peary and Toberoff (working along with the Siegels) tried to rewrite history to assert that Joe Shuster was not the co-creator of the character Superboy.  It further alleges that Toberoff induced the Shusters to relinquish their Superboy rights to permit the Siegels to bring an infringement action against DC.  It also alleges that, as a *quid pro quo*, the Siegels promised to share their recovery in the *Siegel* case with the Shusters.  Docket No. 49 ("FAC") ¶¶ 86-91, 131-33.  In DC's concurrently filed opposition to defendants' cross-motion for summary judgment, DC cites and documents the evidence supporting this unclean-hands claim.  Opp. at 17-25.

13.    Defendants' cross-motion asserts that it is an "undisputed fact" that "[n]either Mr. Peary nor Ms. Peavy have any interest in [the Siegels'] Superboy

---

reconsideration), *and* Docket Nos. 394 at 14-17; 439 at 1-2 ("We learned that due to the delays and the misinformation Kevin [Marks] had given them that there was a deal with DC, the billionaire investor who was offering $15 million up front plus participation thought it was a hopeless situation and invested his money elsewhere."). *See* Docket No. 477-2 at 119-36.

- 4 -    PETROCELLI DECL. ISO DC'S RULE 56(D)
REQUEST AND DC'S OPP. TO DEFS.' MSJ

1 notices of termination." Cross-Mot. at 22; Defs.' Statement of Uncontroverted
2 Facts ("DSUF") 63.  This is wrong, as the evidence cited in DC's opposition brief
3 shows.  DC is still in the midst of document and deposition discovery to establish
4 defendants' full activities in carrying out the alleged Superboy fraud.  This includes
5 the pressing need to obtain the illicit 2008 Consent Agreement between the Siegel
6 and Shuster heirs and Toberoff.  Defendants refuse to produce the document or
7 testify concerning its contents fully, but have revealed in depositions that it is
8 signed by the Siegels and Shusters and by Toberoff; it remains in effect to this day;
9 and it prohibits the heirs from entering into an agreement with DC regarding their
10 respective Superman rights without each other's consent. *E.g.,* Docket Nos. 90 at
11 3-4; 160 at 12-13; 305-37 at 1155:21-1156:25, 1158:19-1159:4, 1184:8-1185:11.
12 DC moved to compel the Consent Agreement in February 2011, and Magistrate
13 Judge Zarefsky denied the motion based on Toberoff's representations to Judge
14 Larson in the *Siegel* case.  Docket Nos. 160 at 6-44; 209 at 1-10.  Since that time,
15 however, new facts have emerged that disprove Toberoff's assertions, and
16 defendants have selectively disclosed information about the agreement that reveal
17 many of its contents.  DC will move shortly to compel the production of the
18 Consent Agreement and further testimony concerning its contents.

19        14.    DC deposed both Mark Warren Peary and Laura Siegel Larson in
20 2011.  When DC asked them about the contents of the Consent Agreement,
21 Toberoff impeded DC from getting meaningful testimony by only selectively
22 allowing the witnesses to testify when it was (in his view) advantageous to their
23 position, and making untenable privilege assertions where it was not.  For instance,
24 in Peary's July 2011 deposition, Toberoff allowed him to testify that the Consent
25 Agreement provides that "any agreement with DC or settlement with DC requires
26 the consent of the Siegels," Docket No. 305-37 at 1184:8-1185:11, and that it is
27 "still in effect," *id.* at 11174:5-7, but shut down all questions concerning:
28  • Why Peary entered into the Consent Agreement, *see id.* at 1168:15-1170:17;

- 5 -    PETROCELLI DECL. ISO DC'S RULE 56(D)
         REQUEST AND DC'S OPP. TO DEFS.' MSJ

1  • Why Peary believes the Consent Agreement benefits the Shuster heirs, *see id.* at 1187:14-23;
2  • Peary's understanding of the purpose of the Consent Agreement, *see id.* at 1168:15-22, 1171:4-13;
3  • Peary's understanding of the effect of the Consent Agreement, *see id.* at 1171:4-13;
4  • Why Peary referred to the document as a "Consent Agreement," *see id.* at 1168:2-14;
5  • Whether the Siegel heirs can enter into an agreement concerning their rights without the Shuster heirs' consent, *see id.* at 1171:16-1172:15;
6  • Whether the Shuster heirs are free to enter into an agreement concerning their rights without the consent of anyone else, *see id.* at 1172:24-1173:7, 1188:15-1190:7;
7  • Whether the Consent Agreement entitles the Shuster heirs to share a portion of any settlement proceeds the Siegel heirs receive, *see id.* at 1172:17-22, 1173:9-15;
8  • Whether the Consent Agreement entitles the Shuster heirs to share a portion of the Siegel heirs' profits from the accounting trial in the *Siegel* cases, *see id.* at 1277:5-13, 1278:7-12; and
9  • Peary's understanding that the Consent Agreement violates DC's rights, *see id.* at 1143:8-1146:17.

15. Defendants' selective disclosures concerning the 2008 Consent Agreement strongly suggest a *quid pro quo* arrangement alleged by DC. For example, Toberoff permitted Peary to testify that the agreement purportedly does not entitle the Shusters to share in any recoveries by the Siegels from their copyright infringement case against DC involving Superboy. Docket No. 305-37 at 1191:13-19. Yet, when DC asked Peary whether the Consent Agreement refers to Superboy at all or entitles the Shusters to a portion of the proceeds from the

- 6 - PETROCELLI DECL. ISO DC'S RULE 56(D) REQUEST AND DC'S OPP. TO DEFS.' MSJ

1. Siegels' *Superman* case, Case No. CV-04-8400, Toberoff objected, instructed Peary not to answer, and said any answer would reveal "the contents of the Consent Agreement." Docket No. 305-37 at 1172:4-7, 1277:5-1276:12.

16. During Larson's deposition, Toberoff revealed that his approach is to "assert[] privilege to what is in the [consent] agreement," but not assert privilege as to what is not in the agreement, as "what is not in the agreement would not be privileged." Docket No. 305-24 at 817:19-818:1. This statement, combined with Toberoff's selective objections during Peary's deposition, also suggests the Consent Agreement may include an arrangement to trade the proceeds from the Siegel Superman case for the Shusters' forfeiture of their Superboy rights.

17. When DC recently deposed Toberoff, he asserted privilege frequently and broadly, and admitted that he spoke to the Siegels about whether the Shusters had an interest in Superboy, Ex. 3 at 344:17-345:4, and that the agreement requires the "mutual consent" of the heirs to settle and does not require his consent, *id.* at 360:10-361:12.

18. In addition to moving to compel the production of the Consent Agreement and full, uninterrupted testimony concerning its contents, DC will be moving to further depose Peary and Larson concerning the Consent Agreement, the Timeline document, and other evidence defendants had suppressed when their prior depositions were taken. DC also needs to conclude Toberoff's deposition—which should require one additional day—depose representatives for his three companies, and depose third-party witnesses like J. Todd Harris (Toberoff's former business partner), and Ari Emanuel (Toberoff's former business partner).

**B. DC's Second Claim for Relief**

19. DC's Second Claim is in the alternative and only needs to be addressed if the Court does not find the Shuster termination notice invalid for the reasons stated in its First Claim. DC alleges that the scope of any rights to be recaptured by the Shusters' termination is limited and does not include, *inter alia*:

- 7 - PETROCELLI DECL. ISO DC'S RULE 56(D) REQUEST AND DC'S OPP. TO DEFS.' MSJ

(a) unpublished Superman works; (b) promotional announcements published before *Action Comics #1*; (c) works for hire; (d) derivative works; or (e) certain elements of the Superman character and storyline that either do not appear in the specified works, or are not listed in the notice. Docket No. 49, FAC ¶¶ 135-64.

20. In a four-sentence paragraph added to their motion without any prior notice to DC—and in violation of the Court's meet-and-confer rules, C.D. Cal. L.R. 7-3; Ex. 4 at 409—defendants contend that DC's claim as to categories (a) and (c) above involves work-for-hire issues and is precluded by the interlocutory judgments in *Siegel*. Cross-Mot. at 22.

21. Defendants' perfunctory treatment of this claim skims over the differences between Siegel's and Shuster's employment histories with DC and ignores contested factual issues that have yet to be examined in discovery. Siegel and Shuster performed different types of work for DC, at different times, and had different arrangements for compensation. For instance, while Siegel largely wrote the Superman scripts himself, letters among Siegel and Shuster and DC indicate that they employed other artists besides Shuster to illustrate the stories, Exs. 5-9, and when Siegel left DC to write for military publications during World War II, Shuster remained in Ohio as a DC employee. Docket No. 469-1 at 7 ("Since [Siegel] has been in the Army . . . [h]is artist collaborator, Joe Schuster, is keeping the strip going . . . ."). As of 1939, Shuster only illustrated for Superman, while Siegel continued writing for Superman and several other comics, and they were paid differently. Docket No. 459-1 at 20.

22. In further discovery, DC will focus on factual issues specific to Shuster's work, including:
- the work he did for DC, and whether and to what extent he hired other illustrators to draw for Superman;
- the manner in which Shuster was compensated and supervised by DC;
- the extent of his contributions to early Superman works; and
- his involvement with the pre-*Action Comics #1* promotional announcements.

- 8 - PETROCELLI DECL. ISO DC'S RULE 56(D) REQUEST AND DC'S OPP. TO DEFS.' MSJ

## II. ADDITIONAL MATERIALS CITED IN DC'S OPPOSITION PAPERS

23. Attached hereto as Exhibit 4 is a true and correct copy of a letter from me to Marc Toberoff and Richard Kendall, dated August 21, 2012.

24. Attached hereto as Exhibit 5 is a true and correct copy of a letter from J.S. Leibowitz to Jerome Siegel, dated January 23, 1940.

25. Attached hereto as Exhibit 6 is a true and correct copy of a letter from Whitney Ellsworth to Mr. Siegel, dated January 22, 1940.

26. Attached hereto as Exhibit 7 is a true and correct copy of a letter from Mr. Leibowitz to Mr. Siegel, dated January 25, 1940.

27. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Mr. Leibowitz to Mr. Siegel, dated February 8, 1940.

28. Attached hereto as Exhibit 9 is a true and correct copy of a letter from Mr. Leibowitz to Mr. Siegel, dated May 2, 1940.

29. Attached hereto as Exhibit 10 is a true and correct copy of a script entitled "Superboy," written by Mr. Siegel.

30. Attached hereto as Exhibit 11 is a true and correct copy of a comic book entitled *More Fun #101*.

31. Attached hereto as Exhibit 12 is a true and correct copy of a comic book entitled *Superman #1*.

32. Attached hereto as Exhibit 13 is a true and correct copy of a comic strip dated May 31, 1942.

33. Attached hereto as Exhibit 14 is a true and correct copy of a letter from Jean Peavy to Marty Payson, dated August 21, 1992.

34. Attached hereto as Exhibit 15 is a true and correct copy of a "Notice of Termination of Transfer Covering Extended Renewal Term for Superboy," dated November 8, 2002.

35. Attached hereto as Exhibit 16 is a true and correct copy of an excerpt from the "Brief of Appellant" in *Classic Media, Inc. v. Mewborn*, Ninth Circuit

Appeal No. 06-55385, dated June 30, 2006.

36. Attached hereto as Exhibit 17 is a true and correct copy of an expert report submitted by Jeff Rovin in Case No. CV 04-8400 (the "*Siegel* Action"), dated January 11, 2007.

37. Attached hereto as Exhibit 18 is a true and correct copy of an expert report submitted by Mark Waid in the *Siegel* Action dated February 8, 2007.

38. Attached hereto as Exhibit 19 is a true and correct copy of an article titled "Up, Up And Awa-a-y! The Rise of Superman, Inc." from *The Saturday Evening Post*, dated June 21, 1941.

39. Attached hereto as Exhibit 20 is a true and correct copy of an agreement signed by Mr. Siegel, Joseph Shuster, and Jay Emmett on behalf of Warner Communications Inc. dated December 23, 1975.

40. Attached hereto as Exhibit 21 is a true and correct copy of a letter from Mr. Payson to Mr. Shuster, dated August 8, 1988.

41. Attached hereto as Exhibit 22 is a true and correct copy of a letter from Mr. Payson to Joanne Siegel, dated March 5, 1991.

42. Attached hereto as Exhibit 23 is a true and correct copy of a letter from Mr. Payson to Ms. Peavy, dated September 8, 1992.

43. Attached hereto as Exhibit 24 is a true and correct copy of a "Copyright Research Report," dated August 22, 1994.

44. Attached hereto as Exhibit 25 is a true and correct copy of "Copyright Renewal Registrations" for Superman and Superboy, dated 1972.

45. Attached hereto as Exhibit 26 is a true and correct copy of a certificate of renewal registration for Superboy, dated November 15, 1972.

46. Attached hereto as Exhibit 27 is a true and correct copy of "Copyright Renewal Registrations" for Superman and Superboy, dated 1973.

47. Attached hereto as Exhibit 28 is a true and correct copy of the Superman story from the comic book entitled *Action Comics #1*.

1    48.  Attached hereto as Exhibit 29 is a true and correct copy of a letter from Ms. Siegel to Steven Ross, dated February 14, 1982.

49.  Attached hereto as Exhibit 30 is a true and correct copy of the Declaration Of Paul Levitz In Support Of DC Comics' Motion For Partial Summary Judgment On Its First And Third Claims For Relief, dated July 16, 2012.

50.  Attached hereto as Exhibit 31 is a true and correct copy of excerpts from "Notices of Termination of Transfers," dated April 3, 1997.

51.  Attached hereto as Exhibit 32 is a true and correct copy of excerpts of the call log of Kevin Marks, dated November 2001.

52.  Attached hereto as Exhibit 33 is a true and correct copy of an email from Mr. Toberoff to Michael Siegel, dated November 17, 2001.

53.  Attached hereto as Exhibit 34 is a true and correct copy of an agreement between Mr. Toberoff and Ariel Emanuel, on behalf of IP Worldwide, and Ms. Siegel and Laura Siegel Larson, dated as of October 3, 2002.

54.  Attached hereto as Exhibit 35 is a true and correct copy of a subpoena to Mark Warren Peary dated April 12, 2006.

55.  Attached hereto as Exhibit 36 is a true and correct copy of a subpoena issued to Ms. Peavy dated April 12, 2006.

56.  Attached hereto as Exhibit 37 is a true and correct copy of a subpoena to Mr. Toberoff dated September 20, 2006.

57.  Attached hereto as Exhibit 38 is a true and correct copy of a subpoena to Mr. Toberoff dated October 19, 2006.

58.  Attached hereto as Exhibit 39 is a true and correct copy of an excerpt from the transcription of the November 11, 2006, deposition of Ms. Peavy.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 21st day of September, 2012, at Los Angeles, California.

/s/ Daniel M. Petrocelli
Daniel M. Petrocelli

## **TABLE OF CONTENTS**

| Exhibit | Description | Page |
|---|---|---|
| 1. | Tentative "Order Granting Plaintiff's Motion For Partial Summary Judgment," dated August 30, 2012 | 12 |
| 2. | Transcript of September 5, 2012, oral argument | 31 |
| 3. | Transcript of September 18, 2012, deposition of Marc Toberoff | 92 |
| 4. | Letter from Daniel Petrocelli to Marc Toberoff and Richard Kendall, dated August 21, 2012 | 408 |
| 5. | Letter from J.S. Leibowitz to Jerome Siegel, dated January 23, 1940 | 410 |
| 6. | Letter from Whitney Ellsworth to Mr. Siegel, dated January 22, 1940 | 412 |
| 7. | Letter from Mr. Leibowitz to Mr. Siegel, dated January 25, 1940 | 414 |
| 8. | Letter from Mr. Leibowitz to Mr. Siegel, dated February 8, 1940 | 416 |
| 9. | Letter from Mr. Leibowitz to Mr. Siegel, dated May 2, 1940 | 417 |
| 10. | Script entitled "Superboy," written by Mr. Siegel | 419 |
| 11. | Comic book entitled *More Fun #101* | 432 |
| 12. | Comic book entitled *Superman #1* | 438 |
| 13. | Comic strip dated May 31, 1942 | 458 |
| 14. | Letter from Jean Peavy to Marty Payson, dated August 21, 1992 | 459 |
| 15. | "Notice of Termination of Transfer Covering Extended Renewal Term for Superboy," dated November 8, 2002 | 476 |
| 16. | Excerpt from the "Brief of Appellant" in *Classic Media, Inc. v.* | 534 |

| Exhibit | Description | Page |
|---|---|---|
|  | *Mewborn*, Ninth Circuit Appeal No. 06-55385, dated June 30, 2006 |  |
| 17. | Expert report submitted by Jeff Rovin in Case No. CV 04-8400 (the "*Siegel* Action"), dated January 11, 2007 | 538 |
| 18. | Expert report submitted by Mark Waid in the *Siegel* Action dated February 8, 2007 | 547 |
| 19. | Article titled "Up, Up And Awa-a-y! The Rise of Superman, Inc." from The Saturday Evening Post, dated June 21, 1941 | 554 |
| 20. | Agreement signed by Mr. Siegel, Joseph Shuster, and Jay Emmett on behalf of Warner Communications Inc. dated December 23, 1975 | 560 |
| 21. | Letter from Mr. Payson to Mr. Shuster, dated August 8, 1988 | 595 |
| 22. | Letter from Mr. Payson to Joanne Siegel, dated March 5, 1991 | 596 |
| 23. | Letter from Mr. Payson to Ms. Peavy dated September 8, 1992. | 597 |
| 24. | "Copyright Research Report," dated August 22, 1994 | 598 |
| 25. | "Copyright Renewal Registrations" for Superman and Superboy, dated 1972 | 694 |
| 26. | Certificate of renewal registration for Superboy, dated November 15, 1972. | 695 |
| 27. | "Copyright Renewal Registrations" for Superman and Superboy, dated 1973 | 698 |
| 28. | Comic book entitled *Action Comics #1* | 699 |
| 29. | Letter from Ms. Siegel to Steven Ross, dated February 14, 1982 | 713 |
| 30. | Declaration Of Paul Levitz In Support Of DC Comics' Motion For Partial Summary Judgment On Its First And Third Claims For Relief (excluding exhibits), dated July 16, 2012 | 717 |
| 31. | Excerpts of "Notice of Termination of Transfer Covering Extended Renewal Term," dated April 3, 1997 | 722 |
| 32. | Excerpts of the call log of Kevin Marks, dated November 2001 | 785 |
| 33. | Email from Mr. Toberoff to Michael Siegel, dated November 17, 2001 | 787 |

| Exhibit | Description | Page |
|---:|---|---:|
| 34. | Agreement between Mr. Toberoff and Ariel Emanuel, on behalf of IP Worldwide, and Ms. Siegel and Laura Siegel Larson, dated as of October 3, 2002 | 790 |
| 35. | Subpoena to Mark Warren Peary issued by the U.S. District Court for the District of New Mexico, dated April 12, 2006 | 794 |
| 36. | Subpoena issued to Ms. Peavy by the U.S. District Court for the District of New Mexico, dated April 12, 2006 | 800 |
| 37. | Subpoena to Mr. Toberoff, issued by this Court and dated September 20, 2006 | 806 |
| 38. | Subpoena to Mr. Toberoff, issued by this Court and dated October 19, 2006 | 819 |
| 39. | Excerpt from the transcription of the November 11, 2006, deposition of Ms. Peavy | 833 |