1  DANIEL M. PETROCELLI (S.B. #097802)
    dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Plaintiff DC Comics

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

12  DC COMICS,

              Plaintiff,

13

14        v.

15  PACIFIC PICTURES
    CORPORATION, IP WORLDWIDE,
16  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN
17  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,
18  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, an
19  individual and as personal
    representative of the ESTATE OF
20  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
21
              Defendants.
22

23

24

25

26

27

28

Case No. CV 10-3633 ODW (RZx)

**DC COMICS' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST, SECOND AND THIRD CLAIMS FOR RELIEF**

Hon. Otis D. Wright II

**Hearing Date**:  Oct. 15, 2012
**Hearing Time**:  1:30 p.m.
**Courtroom**:      11

Plaintiff DC Comics ("DC") submits this Statement Of Genuine Issues Of Material Fact in response to Defendants' Statement Of Uncontroverted Facts And Conclusions Of Law In Support Of Motion For Partial Summary Judgment.  The vast majority of factual assertions and evidence defendants present in support of their needless and duplicative cross-motion was already cited and addressed at length in defendants' opposition to DC's pending motion for partial summary judgment.  DC incorporates its prior responses and objections to these duplicative factual assertions and evidence.  *See* Docket Nos. 458, 458-1, 468, 472, 473.

In Part I, DC responds to defendants' allegedly uncontroverted facts.  In Part II, DC demonstrates that genuine issues of material fact prevent summary adjudication in defendants' favor on DC's unclean-hands claim, though judgment could be entered in DC's favor on that claim.  In Part III, DC responds to defendants' purported conclusions of law.

I.    **DC'S RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| 1 | Author Jerome Siegel and illustrator Joseph Shuster co-created Superman in high school in 1933-34.<br><br>Defendants' Evidence:  *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1102 (C.D. Cal. 2008). | **Undisputed** that Siegel and Shuster co-created a character called Superman in 1933-34.<br><br>DC addressed Defendants' Statement Of Uncontroverted Fact ("DSUF") 1 in responding to Defendants' Statement Of Additional Undisputed Facts In Opposition To DC's Motion For Partial Summary Judgment ("DSAUF") 46.  Docket No. 471 at 41. |
| 2 | On March 1, 1938, Siegel and Shuster signed an agreement with | **Undisputed.**<br><br>DC addressed DSUF 2 in responding |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | Detective Comics, defendant DC Comics' predecessor (the "1938 Grant"). <br><br> <u>Defendants' Evidence:</u> Declaration of Keith G. Adams ("AD"), Ex. A. | to DSAUF 48. Docket No. 471 at 43. <br><br> The Court rightly ruled in its tentative order on DC's pending motion for partial summary judgment that "[o]n March 1, 1938, Jerome Siegel and Joseph Shuster granted DC the 'exclusive right to the use of the [Superman] characters and story." Decl. of Daniel Petrocelli ("PD") Ex. 1 ("Tentative") at 2. |
| 3 | Under the 1938 Grant, Siegel and Shuster were paid $130 for the original Superman character and story. <br><br> <u>Defendants' Evidence:</u> AD Ex. A. | **Undisputed** for purposes of this motion that on March 1, 1938, Siegel and Shuster signed an agreement drafted by DC based on the parties' discussions and negotiations providing, in relevant part: "In consideration of $130.00 agreed to be paid me by you, I hereby sell and transfer [the Superman] work and strip, all goodwill attached thereto and exclusive right to the use of the characters and story, continuity and title of strip contained therein, to you and your assigns to have and hold forever…." PD Ex. 2 at 10. <br><br> DC addressed DSUF 3 in responding to DSAUF 48. Docket No. 471 at 43. And, of course, the Court rightly noted at the September 5, 2012, oral argument on DC's motion for partial summary judgment that Siegel and Shuster received far more than $130 |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | for their contributions to Superman. PD Ex. 2 at 40:6-20; *see also* Tentative at 2-3. |
| 4 | Superman became a cultural icon, and eventually spawned a multi-billion dollar franchise.<br><br>Defendants' Evidence:  AD Ex. K. | **Disputed.**<br><br>DC addressed DSUF 4 in responding to DSAUF 47.  Docket No. 471 at 41.<br><br>DC does not dispute for purposes of this motion that Superman became a "cultural icon" or "spawned a multi-billion dollar franchise," but does dispute the suggestion that Siegel and Shuster were solely responsible for its success.  Scores of DC artists, editors, and others (including Siegel and Shuster) were responsible.  PD Exs. 17 ¶ 5, 18 at 551-52.<br><br>Objections to Defendants' Evidence: AD Ex. K is inadmissible hearsay. Fed. R. Evid. 801, 802; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 880 n.3 (9th Cir. 2005).  Defendants offer this newspaper article solely for the truth of the matters contained therein. Defendants cannot and do not identify any hearsay exception or other basis that would justify the exhibit's admission.  *E.g.*, *Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008); *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
|  |  | Cir. 1998); *Larez v. City of Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991). |
|  |  | FED. R. CIV. P. 56(c)(1)-(2) requires that only admissible evidence be considered for purposes of summary judgment, thus AD Ex. K must be disregarded, *In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008). |
|  |  | Lack of foundation.  Lack of personal knowledge.  Fed. R. Evid. 602. |
| 5 | In 1947, Siegel and Shuster filed suit against DC in Westchester N.Y. (the "1947 Action"). <br><br> Defendants' Evidence:  AD Ex. B. | **Undisputed.** <br><br> DC addressed DSUF 5 in responding to DSAUF 51.  Docket No. 471 at 46. <br><br> The Court rightly ruled in its tentative order that "[i]n 1947, Siegel and Shuster sued DC in New York seeking to invalidate the 1938 Assignment."  Tentative at 2. |
| 6 | In the 1947 Action, Siegel individually claimed that DC had no right to publish Superboy and that Superboy belonged to him. <br><br> Defendants' Evidence:  AD Ex. B at 13-18 ¶¶22-39. | **Disputed.** <br><br> Defendants mischaracterize the 1947 Action.  Siegel and Shuster sought to recapture rights in Superman by challenging their 1938 agreements with DC, and also challenged DC's 1944 publication of a series of comic-book stories entitled "Superboy," which featured the adventures of Superman as a youth. <br><br> DC does not dispute for purposes of this motion that in the 1947 Action, |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | Siegel alleged that from "January 1945 until October 1, 1946," DC published a "Superboy" comic strip without Siegel's consent.  AD Ex. B at 15-16 ¶¶ 30-33. |
| | | DC disputes that Siegel claimed "that Superboy belonged to him." Siegel alleged in the 1947 Action that in 1938 he submitted for DC's consideration a synopsis for a "Superboy" comic strip.  AD Ex. B at 15 ¶ 26-29.  The synopsis stated that the by-line for the "Superboy" comic strip would read, "By Jerry Siegel *and* Joe Shuster."  PD Ex. 10. (emphasis added). |
| | | Until recently, Siegel, Shuster, and their families had always taken the position that Superboy was a joint creation of Siegel and Shuster (to the extent it was not a pure derivative of Superman).  *See infra* DC's Statement Of Genuine Issues ("SGI") 1-9 (detailing the Siegels' and Shusters' prior representations regarding Siegel and Shuster's joint authorship of Superboy); *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1155 (C.D. Cal. 2007) (Judge Larson ruling that to the extent there was "any original copyrightable material in Siegel's Superboy submissions"—and he left that question open—such material was |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|----------------|
|     |                                           | part of "a joint work with Shuster's illustrations") (underlining added).<br><br>In a November 2001 agreement, Shuster's heirs—defendants Mark Warren Peary and Jean Peavy—formed a joint venture with defendant Marc Toberoff's company Pacific Pictures Corporation listing "Superboy" as among "Joe Shuster's creations."  AD Ex. Z.  At the time, Peary and Jean believed that Superboy was a "derivative" of Superman and was co-authored by Siegel and Shuster.  *Id.* Exs. Z; PD Ex. 3 at 356:2-357:7; Docket No. 305-37 at 1326:16-1336:11.  Toberoff later induced them fraudulently to disclaim any interest in Superboy.  PD Ex. 3 at 335:15-338:15, 340:14-346:15. |
| 7   | In the 1947 Action, the Court found that DC owned all rights to Superman pursuant to the 1938 Grant.<br><br>Defendants' Evidence:  AD Ex. C at 87 ¶1. | **Disputed.**<br><br>DC addressed DSUF 7 in responding to DSAUF 52.  Docket No. 471 at 46.<br><br>The Court rightly ruled in its tentative order that "[t]he court [in the 1947 Action] concluded that the 1938 assignment granted all Superman rights to DC.  In 1948, the parties entered into a stipulated judgment pursuant to which Siegel and Shuster acknowledged that the 1938 assignment granted DC all |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | rights in Superman."  Tentative at 2-3.

Defendants again mischaracterize the 1947 Action and its outcome.  In 1947, a referee issued an opinion holding that the parties' 1938 agreements were valid and that Siegel and Shuster assigned "all" of their Superman rights to DC.  DC filed a notice of appeal, but the parties ultimately entered into a stipulation and consent judgment in 1948 ("1948 Consent Judgment") in which Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  In exchange, Siegel and Shuster were paid nearly $900,000 in today's dollars.  *See Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1112 (C.D. Cal. 2008); CPI Inflation Calculator, Bureau of Labor Statistics (http://www.bls.gov/data/inflation_calculator.htm/). |
| 8 | In the 1947 Action, the Court found that Siegel had developed Superboy on his own in 1938-40.

Defendants' Evidence:  AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. | **Disputed.**

Defendants again mischaracterize the 1947 Action and its outcome. The referee found that Siegel owned rights in "the comic strip feature SUPERBOY"—not that Siegel |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | "developed Superboy on his own in 1938-40.  Though Siegel submitted an initial synopsis for a "Superboy" comic strip, Superboy was "developed" by scores of DC artists and editors—including Shuster, who the referee found provided artwork for the Superboy story in *More Fun Comics No. 101*.  PD Exs. 17 ¶ 5, 18 at 551-52; AD Ex. C at 85 (Finding 180); *supra* DC's Response to DSUF 6.  Moreover, in the 1948 Consent Judgment—reached after DC filed its notice of appeal of the referee's 1947 opinion—Siegel and Shuster agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  AD Ex. E. at 106-07. |
| 9 | In the 1947 Action, the Court found that Siegel had independently submitted his Superboy script to DC.  Defendants' Evidence:  AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. | **Disputed.**  Defendants again mischaracterize the 1947 Action and its outcome.  The referee found in his 1947 opinion that Siegel submitted a synopsis for a "Superboy" comic strip  to DC "for its consideration and acceptance or rejection, for publication, *under the terms of the contract dated September 12, 1938*," AD Ex. C at 81 ¶ 156 (emphasis added)—not that Siegel "independently" submitted his "Superboy" synopsis.  Moreover, the 1948 Consent Judgment vacated "in all respects" the referee's 1947 |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
|     |                                           | opinion.  AD Ex. E at 105. |
| 10  | In the 1947 Action, the Court found that DC had illegally published Superboy in *More Fun Comics, No. 101* and subsequent comics without Siegel's consent.<br><br>Defendants' Evidence:  AD Ex. C at 83-86 ¶¶163-82. | **Disputed.**<br><br>DC addressed DSUF 10 in responding to DSAUF 52.  Docket No. 471 at 46.<br><br>Defendants again mischaracterize the 1947 Action and its outcome.  The referee found in his 1947 opinion that DC had no right to publish Superboy—not "that DC had illegally published Superboy" comic features.  In the 1948 Consent Judgment—reached after DC filed its notice of appeal of the referee's 1947 opinion—Siegel and Shuster agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  AD Ex. E at 106-07. |
| 11  | The parties thereafter settled the 1947 Action.<br><br>Defendants' Evidence:  AD Exs. D, E. | **Undisputed** for purposes of this motion that after the referee's opinion issued in 1947, DC filed a notice of appeal.  The parties thereafter in 1948 entered into a stipulation and consent judgment which vacated "in all respects" the referee's 1947 opinion.  AD Ex. E at 105.  In addition, Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  In exchange, Siegel and Shuster |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | were paid nearly $900,000 in today's dollars. *See Siegel*, 542 F. Supp. 2d at 1112; CPI Inflation Calculator, Bureau of Labor Statistics (http://www.bls.gov/data/inflation_calculator.htm/). DC addressed DSUF 11 in responding to DSAUF 52. Docket No. 471 at 46. The Court rightly ruled in its tentative order that "[i]n 1948, the parties entered into a stipulated judgment pursuant to which Siegel and Shuster acknowledged that the 1938 assignment granted DC all rights in Superman." Tentative at 2-3. |
| 12 | In 1969, Siegel and Shuster brought a federal suit over the ownership of the renewal copyright to Superman (the "1974 Action"). <u>Defendants' Evidence:</u> Docket No. 49 ("FAC") at ¶46. | **Undisputed.** DC addressed DSUF 12 in responding to DSAUF 55. Docket No. 471 at 48-49. |
| 13 | The 1974 Action resulted in the Second Circuit's decision in *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). <u>Defendants' Evidence:</u> *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). | **Undisputed.** DC addressed DSUF 13 in responding to DSAUF 56. Docket No. 471 at 49. |
| 14 | *Siegel*, 508 F.2d 909, held that DC owned all rights to Superman, including the renewal copyright, | **Undisputed.** DC addressed DSUF 14 in responding to DSAUF 56. Docket |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | pursuant to the 1938 Grant. <br><br> Defendants' Evidence: *Siegel*, 508 F.2d at 912-913. | No. 471 at 49. |
| 15 | Consistent with the outcome of the 1947 Action and *Siegel*, 508 F.2d 909, DC for decades has based its chain-of-title to Superman on the 1938 Grant. <br><br> Defendants' Evidence: AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 550 ¶17. | **Disputed.** <br><br> Defendants offer no competent evidence to support this claim, and the documents they cite do not contain any evidence that DC "based its chain-of-title to Superman on the 1938 grant." Defendants cite an inadmissible "Copyright Research Report," which does not address DC's chain-of-title claims to Superman—the report contains only information concerning recorded documents in "the records of the Copyright Office." AD Ex. T. Defendants also cite paragraph 38 to the *Siegel's* Third Amended Complaint in the *Siegel* action, which concerns the December 23, 1975, agreement Siegel and Shuster entered into with DC, and DC's answer to paragraph 38. *Id.* Exs. NN at 417-18 ¶ 38; OO at 439 ¶ 38. Defendants finally cite to DC's Second Amended Counterclaims in the *Siegel* action, which provide historical background relevant to the claims in that action. *Id.* Ex. PP at 448 ¶ 12, 550 ¶ 17. <br><br> Objections to Defendants' Evidence: AD Ex. T does not prove this asserted fact and is inadmissible |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | hearsay. FED. R. EVID. 801, 802; *see supra* DC's Response to DSUF 4. DC also refers the Court to No. 15 in DC's concurrently filed Objections To Evidence In Defendants' Statement Of Uncontroverted Facts, Declaration, And Exhibits In Support Of Defendants' Motion For Partial Summary Judgment ("Objections"). |
| 16 | DC deleted Siegel and Shuster's Superman credit byline (from 1947-1975) and references to them from its publications. Defendants' Evidence: AD Ex. I. | **Disputed.** DC addressed DSUF 16 in responding to DSAUF 53. Docket No. 471 at 47-48. DC disputes the implication that DC did something improper in removing Siegel and Shuster's Superman credit byline from 1947 to 1975. After Siegel and Shuster left DC in 1947, there was no need to give "credit" to the pair for the work of other DC artists and writers. In fact, Siegel *objected* to having his name associated with stories he had not written; in the Westchester Action, Siegel's complaint asserted that DC acted improperly by "affix[ing] to the individual releases of said comic strip the name of plaintiff, SIEGEL, as author of the said releases ... whereas in truth and in fact the plaintiff Siegel, was not the author of the individual releases." AD Ex. B at 17. |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | | In any event, defendants offer no competent evidence to support this claim, as the one hearsay newspaper article they cite from 1979 merely purports to describe the unfortunate financial hardship Siegel and Shuster faced later in their lives and notes—incorrectly—that Siegel and Shuster's "by-lines as creators of Superman had been removed after the 1947-48 litigation, restored after the 1975 case."  AD Ex. I.<br><br>Objections to Defendants' Evidence: AD Ex. I is inadmissible hearsay. Fed. R. Evid. 801, 802; *see supra* DC's Response to DSUF 4.<br><br>Lack of foundation.  Lack of personal knowledge.  Fed. R. Evid. 602. |
| 17 | Between 1947-1975, Siegel and Shuster slipped into obscurity and poverty.<br><br>Defendants' Evidence:  AD Exs. F, G, I, K. | **Disputed.**<br><br>DC disputes the implication that DC was responsible for Siegel and Shuster purportedly "slipp[ing] into obscurity and poverty."  The pair left DC in 1947, and engaged in litigation with DC for several years thereafter.  *See Nat'l Periodical Pubs.*, 508 F.2d 909.  After the *National* litigation, in which the Second Circuit affirmed that DC owned all rights in Superman, *id.* at 914, Siegel and Shuster encountered financial hardship and approached DC for help, and DC provided |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | Siegel, Shuster, and their families with the generous benefits described below. *See* DC's Response to DSUF 32. |
| | | In any event, defendants offer no competent evidence to support this claim, as the newspaper articles they cite merely purport to describe the financial hardship Siegel and Shuster faced later in their lives. |
| | | Objections to Defendants' Evidence: AD Exs. F, G, I, and K are inadmissible hearsay. FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 4. |
| | | Lack of foundation. Lack of personal knowledge. FED. R. EVID. 602. |
| 18 | In 1975, the National Cartoonists Society and the Cartoonists Guild launched a public-relations campaign protesting DC's treatment of Siegel and Shuster.<br><br>Defendants' Evidence: AD Ex. G. | **Disputed.**<br><br>DC addressed DSUF 18 in responding to DSAUF 57. Docket No. 471 at 49.<br><br>DC does not dispute for purposes of this motion that in 1975, certain individuals who were also members of the National Cartoonists Society and Cartoonists Guild supported Siegel and Shuster in their effort to obtain financial assistance from DC and Warner Communications Inc.<br><br>DC disputes the suggestion that it engaged in mistreatment of Siegel and Shuster. Siegel and Shuster, and |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | their heirs, after suing DC twice and losing, nonetheless were given millions of dollars in recognition of Siegel's and Shuster's contributions to Superman and as a gesture of goodwill.  PD Ex. 30 ¶ 3; AD Exs. P-S, U-V, X-Y, AA. |
| | | Objections to Defendants' Evidence: AD Ex. G is inadmissible hearsay. FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 4. |
| | | Lack of foundation.  Lack of personal knowledge.  FED. R. EVID. 602. |
| 19 | Thereafter, on December 23, 1975, Warner Communications, Inc. (DC's Parent), entered into an agreement with Siegel and Shuster (the "1975 Agreement"). Defendants' Evidence:  AD Ex. H. | **Undisputed** DC addressed DSUF 19 in responding to DSAUF 58.  Docket No. 471 at 49-51. |
| 20 | The 1975 Agreement provided Siegel and Shuster with a modest pension. Defendants' Evidence:  AD Ex. H at 118. | **Disputed.** DC addressed DSUF 20 in responding to DSAUF 58.  Docket No. 471 at 49-51. The Court rightly ruled in its tentative order: In a 1975 agreement, DC provided Siegel and Shuster with (in today's dollars) lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
|     |                                           | well as 'credits' on new Superman works.  Siegel and Shuster acknowledged that DC owned all Superman-related copyrights…. |
|     |                                           | Since 1975, DC has voluntarily increased the annual payments, made periodic cost-of-living adjustments, given special bonuses, and paid to have Siegel, Shuster, and their families travel to Superman-related events.  All told, the Siegels and Shusters have been paid over $4 million under the 1975 agreement, not including medical benefits or bonuses. |
|     |                                           | Tentative at 3. |
|     |                                           | DC disputes the suggestion that the payments DC agreed to make to Siegel and Shuster under the 1975 Agreement were "modest."  The 1975 Agreement provided Siegel and Shuster with, in today's dollars, lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works.  AD Ex. H. |
| 21  | The 1975 Agreement did not purport to transfer or re-transfer copyrights from Siegel and Shuster to DC. | **Undisputed** for purposes of this motion that the parties have litigated whether the 1975 Agreement "transfer[red] or re-transfer[red] |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | Defendants' Evidence:  AD Ex. H at 117 ¶2, 125 ¶7. | copyrights from Siegel and Shuster to DC."  *Siegel I*, 542 F. Supp. 2d at 1132-33. DC addressed DSUF 21 in responding to DSAUF 58.  Docket No. 471 at 49-51. |
| 22 | The 1975 Agreement provided Frank Shuster with a $5,000/year pension if he survived Joe Shuster. Defendants' Evidence:  AD Ex. H at 119. | **Undisputed.** DC addressed DSUF 22 in responding to DSAUF 49.  Docket No. 471 at 51. |
| 23 | Joe Shuster died on July 30, 1992. Defendants' Evidence:  AD Exs. K, L. | **Undisputed.** DC addressed DSUF 23 in responding to DSAUF 60.  Docket No. 471 at 51. The Court rightly ruled in its tentative order that "Shuster passed away on July 30, 1992."  Tentative at 3. |
| 24 | Joe Shuster never served a notice of termination under 17 U.S.C. § 304(c). Defendants' Evidence:  FAC at ¶50. | **Undisputed.** |
| 25 | Joe Shuster left no widow, child, or grandchild. Defendants' Evidence:  AD Exs. L, SS at 489:4-9. | **Undisputed.** DC addressed DSUF 25 in responding to DSAUF 60.  Docket No. 471 at 51. The Court rightly ruled in its tentative order that "Shuster had no wife or child [when he died], and his will named his sister, Jean Peavy, as |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | sole beneficiary and executrix of his estate." Tentative at 3. |
| 26 | Joe Shuster was survived by his siblings, Frank Shuster and Jean Peavy.<br><br>Defendants' Evidence: AD Ex. L; FAC at ¶51. | **Undisputed.**<br><br>DC addressed DSUF 25 in responding to DSAUF 60. Docket No. 471 at 51. |
| 27 | Joe Shuster's estate was not probated in 1992-93, as he died with few assets.<br><br>Defendants' Evidence: AD Ex. M. | **Disputed.**<br><br>DC addressed DSUF 27 in responding to DSAUF 61. Docket No. 471 at 51.<br><br>The Court rightly ruled in its tentative order that "[o]n August 17, 1992, Jean filed an affidavit in California state court identifying herself as Shuster's 'successor' and sole heir and requesting that certain property 'be paid, delivered or transferred to her.'" Tentative at 3.<br><br>DC disputes that Shuster had "few assets" when he died. Shuster had 768 shares of Time Warner stock worth approximately $80,000. Moreover, Jean Peavy filed a sworn affidavit in California state court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her." AD Ex. M. |
| 28 | On October 2, 1992, DC entered into a short agreement with Frank Shuster and Jean Peavy (the "1992 | **Undisputed** for purposes of this motion that DC entered into an agreement with Frank Shuster and |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
| | Agreement"). Defendants' Evidence: AD Ex. O. | Jean Peavy dated "as of August 1, 1992." DC addressed DSUF 28 in responding to DSAUF 66. Docket No. 471 at 53-56. The Court rightly ruled in its tentative order: Four days after filing her affidavit in the California probate court, Jean wrote to DC, identifying herself as "heir to [Joseph Shuster's] Will" and asking DC to pay Shuster's "final debts and expenses." Defendants attempt, but again fail to dispute this fact by pointing out that Jean actually stated " [a]ny help that Time Warner could give to the family of Joe Shuster to pay his final debts and expenses would be warmly appreciated." In response, DC offered to cover Joe's debts and increase survivor payments to his brother Frank from $5,000 to $25,000 per year. On September 10, 1992, Frank sent a letter to DC's then Executive Vice President, Paul Levitz, stating he was "extremely pleased" with the increased payments and asking, after "discuss[ing] this good news with [Jean]," that payments be made directly to Jean, who would |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
| | | "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." Frank asked if he and Jean could meet with Levitz in New York to discuss the issue. Defendants' sole objection to this fact is that it misleadingly fails to include subsequent correspondence. |
| | | Paul Levitz dealt with many authors and heirs during his decades at DC. When DC agreed to grant an author or heir's request for additional money, Levitz would give them this admonition: "this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC." Levitz reiterated this admonition to Frank and Jean in 1992, who confirmed they understood and agreed. The parties executed an agreement on October 2, 1992, confirming that DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life. In exchange, Jean and Frank re granted all of Shuster's rights to DC and vowed never to assert a claim to such rights. |
| | | Tentative at 3-4 (citations omitted). |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| 29 | The 1992 Agreement reads, in full, as follows:<br><br>This is to confirm our agreement to pay you, collectively, a total of $25,000 a year, payable to Jean Shuster Peavy, commencing August 1, 1992, for as long as either one of you is alive. Such amounts shall be payable in accordance with Warner Communication Inc.'s customary payroll practice and shall be subject to all applicable withholding taxes. If Jean Shuster Peavy shall predecease Frank Shuster, then the<br><br>foregoing payments shall be made to Frank Shuster for as long as he shall live.<br><br>We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now | **Undisputed** that the 1992 Agreement contains the language quoted by defendants.<br><br>DC addressed DSUF 29 in responding to DSAUF 66.  Docket No. 471 at 53-56. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.<br><br>If, despite the terms of this agreement, either of you assert any such claim of right, for any reason, you agree to refund to us, upon the making of any such assertion, all amounts previously paid to you hereunder, and we will have no obligation to make any further payments under this agreement. We also reserve all of our other rights, remedies and defenses in such an event. If after full consideration of the foregoing, you accept and agree to all of the above, please so indicate by signing below where indicated.<br><br>Defendants' Evidence:  AD Ex. O. | |
| 30 | On the same day, October 2, 1992, Frank Shuster sent a letter to DC that read as follows:<br><br>In consideration of the agreement dated as of August 1, 1992 between DC Comics, myself and Jean Shuster Peavy, I hereby waive any rights or remedies that I may have under | **Undisputed** that Frank Shuster sent a letter to DC dated October 2, 1992, which contains the language quoted by defendants.<br><br>DC addressed DSUF 30 in responding to DSAUF 70.  Docket No. 471 at 57-58. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | the agreement dated December 23, 1975 between Warner Communications Inc., Jerome Siegel and Joseph Shuster.<br><br>Defendants' Evidence:  AD Ex. N. | |
| 31 | Both before and after the 1992 Agreement, DC made it clear that Frank Shuster and Jean Peavy held no Superman rights under the Copyright Act.<br><br>Defendants' Evidence:  AD Ex. Q. | **Disputed.**<br><br>DC informed Jean and Frank that it believed they had no legal right to terminate under the Copyright Act, but Jean and Frank disputed DC's belief.  In the 1992 Agreement, Jean and Frank "*grant[ed] to [DC] any … copyrights, trademarks, or other property right in any and all work created in whole or in part by [Joe Shuster]….*"  AD Ex. O (emphasis added).  Jean and Frank further agreed that the 1992 agreement "fully settles all claims to any payments or other rights or remedies … *whether now or hereafter existing* regarding any copyrights, trademarks, or other property right in any and all work [he] created…." *Id.*  (emphasis added).  Thus, the 1992 agreement operated to revoke and re-grant all prior grants of Shuster's rights.  Opp. at 2-17; Docket Nos. 458 at 11-12; 468 at 2-5; *see also Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005); *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200-04 (2d Cir. 2008); *Siegel,* |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | 364 F. Supp. at 1037. |
| 32 | DC denied periodic requests by Frank and Jean for increases in their pension. <br><br> Defendants' Evidence: AD Exs. P, Q, R. | **Disputed.** <br><br> DC addressed DSUF 32 in responding to DSAUF 77. Docket No. 471 at 62. <br><br> The Court rightly ruled in its tentative order that "[i]n 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal right to make such requests, but would pay her a bonus anyway, which she thanked DC for doing." Tentative at 5 (citations omitted). <br><br> DC disputes that the Shuster heirs' requests for additional compensation were "denied." As Paul Levitz's declaration and the parties' correspondence make clear, Jean periodically requested bonuses in addition to her payments under the 1992 agreement, and DC paid her bonuses in 1993, 1994, 1995, 1996, 1998, 1999, 2000 and 2001. AD Exs. P-S, U-V, X-Y, AA. In total, DC has paid Jean over $610,000 under the 1992 agreement. PD Ex. 30 ¶ 9; AD Exs. P-S, U-V, X-Y, AA. |
| 33 | DC granted certain requests by Frank and Jean for year-end | **Disputed.** <br><br> DC addressed DSUF 33 in |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | "bonuses."<br><br>Defendants' Evidence:  AD Exs. R, S, U, V, X, Y, AA. | responding to DSAUF 77.  Docket No. 471 at 62.<br><br>The Court rightly ruled in its tentative order that "[i]n 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000.  In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal right to make such requests, but would pay her a bonus anyway, which she thanked DC for doing."  Tentative at 5 (citations omitted).<br><br>DC disputes that "certain" requests by Frank and Jean for "bonuses" were granted by DC.  Defendants offer no competent evidence to support this claim, as the documents they cite do not show that DC only granted "certain" of Jean's requests.  In fact, DC granted all of Jean's requests for bonuses; DC even paid Jean bonuses where she had not previously requested a bonus payment.  PD Ex. 30 ¶ 9; AD Exs. P-S, U-V, X-Y, AA. |
| 34 | The declaration of Paul Levitz, relied on by DC, does not describe the 1992 Agreement as a revocation or re-grant of Joe Shuster's 1938 Grant or any later Superman grants or suggest that this was ever the parties' intent. | **Disputed.**<br><br>DC addressed DSUF 34 in responding to DSAUF 20, 71.  Docket No. 471 at 58.<br><br>The Court rightly ruled in its tentative order: |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | Defendants' Evidence: AD Ex. YY. | Paul Levitz dealt with many authors and heirs during his decades at DC. When DC agreed to grant an author or heir's request for additional money, Levitz would give them this admonition: "this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC." Levitz reiterated this admonition to Frank and Jean in 1992, who confirmed they understood and agreed.

Tentative at 4.

DC does not dispute that Levitz's declaration and correspondence do not use the words "revocation" or "re-grant." Levitz's declaration and the parties' contemporaneous conduct and correspondence makes clear, however, the "parties' intent" was for the 1992 Agreement to "represent [the Shuster heirs'] last and final deal with DC, and would resolve any past, present, or future claims against DC," PD Ex. 30 ¶ 8. As shown in DC's summary judgment briefing (both its own motion and its opposition to defendants' cross-motion), this was fully consistent with the New York law governing superseding |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | agreements.  Docket Nos. 458 at 13-14, 468 at 2-4; Opp. at 2-17.

And as is clear from this discussion, defendants improperly use their DSUF to make merits-based arguments, which needed to be made in their 25-page motion, and are baseless in any event.  Opp. at 2-17; Docket Nos. 458 at 13-15; 468 at 2-4. |
| 35 | The 1992 Agreement does not remotely resemble DC or Warner's customary rights agreements.

<u>Defendants' Evidence:</u>  AD Exs. O, J, W, BB. | **Disputed**.

DC addressed DSUF 35 in responding to DSAUF 76.  Docket No. 471 at 61-62.

Other of DC's rights agreements are shorter, including the 1938 Superman grant, AD Ex. A, and defendants offer no facts, documents, or testimony to support this assertion.  Defendants' legal arguments—improperly masquerading as factual ones—also run directly contrary to well-established copyright law.  "If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so.  It doesn't have to be the Magna Charta; *a one-line pro forma statement will do.*"  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) (emphasis added). |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
|     |                                           | Objections to Defendants' Evidence: |
|     |                                           | Defendants offer no competent evidence to support this claim, as shown in DC's concurrently filed Objections at pages 4-6. |
|     |                                           | The three contracts defendants cite can and should be stricken for lack of foundation or connection to the facts at issue in this case, FED. R. EVID. 602, and disregarded on relevance grounds, FED. R. EVID. 401. The contracts in AD Exs. J, W, and BB involve different parties, different rights, and different properties than those at issue in this case, and were entered into almost a decade after the 1992 Agreement. AD Ex. J (DC Comics-Swampfilms, Inc.; Swamp Thing; 1980); W (Warner Bros.-Hasbro; option; G.I. Joe; 1998); BB (Warner Bros.-Edgar Rice Burroughs, Inc.; option; Tarzan; 2002). |
|     |                                           | AD Exs. J, W, and BB are not habit evidence under FED. R. EVID. 406, because the documents do not show "a frequency of specific conduct sufficient to be considered semiautomatic." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1294 (7th Cir. 1988); *see U.S. v. West*, 22 F.3d 586, 592 (5th Cir. 1994) (rejecting Rule 406 argument where evidence not |

DC'S STATEMENT OF GENUINE ISSUES IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | numerous enough in relation to defendants' thousands of other dealings); *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir. 1985) (explaining that experience of one contractor not sufficient evidence of routine practice in light of different experiences of thousands of other contractors who had dealt with same party). |
| | | AD Exs. J, W, and BB are also inadmissible character evidence. "Evidence of a[n] … other act is not admissible to prove … that on a particular occasion the person acted in accordance." FED. R. EVID. 404(b).  Defendants identify no exception for this rule "prohibit[ing] 'other acts' evidence for the purpose of showing action in conformity therewith." *U.S. v. Redlightning*, 624 F.3d 1090, 1120-21 (9th Cir. 2010). |
| 36 | DC did not file the 1992 Agreement with the U.S. Copyright Office, even though it is DC's customary practice to record real copyright assignments.<br><br>Defendants' Evidence:  AD at ¶54, Ex. T. | **Disputed**.<br><br>DC addressed DSUF 36 in responding to DSAUF 74.  Docket No. 471 at 60-61.<br><br>Defendants omit that DC has not registered many of its other copyright grants with the Copyright Office, as registration is not required.  Pub. L. No. 100-568, 102 Stat. 2853, 2857, 2861 (1988); *R&R* |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | | *Recreation Prods., Inc. v. Joan Cook Inc.*, 1992 WL 88171, at *4 (S.D.N.Y. Apr. 14, 1992). |
| | | DC recorded the 1948 Consent Judgment with the Copyright Office in June 1965, in response to Siegel and Shuster filing copyright renewal notices for *Action Comics #1*. PD Ex. 24 at 615. DC never recorded the 1938 grant or 1975 agreement. *Id.* |
| | | Objections to Defendants' Evidence: |
| | | AD Ex. T is inadmissible hearsay. given the theory of relevance. FED. R. EVID. 801, 802; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 880 n.3 (9th Cir. 2005). Defendants offer this report solely for the truth of the matters contained therein to support their claim that unlike DC's purported customary practice concerning copyright assignments, DC did not record the 1992 Agreement. Defendants cannot and do not identify any hearsay exception or other basis that would justify admission of the hearsay report. *E.g.*, *Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008); *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998); *Larez v. City of* |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|---------------|
| | | *Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991). |
| | | It is also not remotely "custom" evidence, given that it is unsupported by any testimony or evidence laying foundation for the report, its relevance, or why and how it is germane to DC. |
| | | This legal argument—improperly masquerading as a factual one—runs directly contrary to well-established copyright law that parties like DC need not record such agreements. Pub. L. No. 100-568, 102 Stat. 2853, 2857, 2861 (1988); *R&R Recreation Prods.*, 1992 WL 88171, at *4. |
| | | The report is not habit evidence under FED. R. EVID. 406, because it does not show "a frequency of specific conduct sufficient to be considered semiautomatic." *Simplex,* 847 F.2d at 1294; *see West,* 22 F.3d at 592; *G.M. Brod & Co.,* 759 F.2d at 1533. |
| | | It also is inadmissible character evidence.  FED. R. EVID. 404(b); *Redlightning*, 624 F.3d at 1120-21. |
| 37 | DC has consistently relied on the 1938 Grant for it chain-of-title to Superman, as the 1938 Grant was held in *both* the 1947 Action and the 1974 Action to have granted DC's predecessor all rights in Siegel and Shuster's Superman | **Disputed.** DC does not dispute for purposes of this motion that the 1938 Grant was held in the 1974 Action "to have granted DC's predecessor all rights in Siegel and Shuster's Superman |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | character and story. | character and story." |
| | Defendants' Evidence:  AD Exs. C at 87, T, NN at 417-18 ¶38, OO at 439 ¶38, PP 448 ¶12, 450 ¶17; *Siegel*, 508 F.2d at 912-913. | Defendants again mischaracterize the 1947 Action and its outcome.  In 1947, a referee issued an opinion holding that the parties' 1938 agreements were valid and that Siegel and Shuster assigned "all" of their Superman rights to DC.  DC filed a notice of appeal, but the parties ultimately entered into a stipulation and consent judgment in 1948 in which Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  AD Ex. E. |
| | | DC disputes the suggestion that DC has relied solely on the 1938 Grant for its "chain-of-title to Superman." Defendants offer no competent evidence to support this claim. Defendants cite the referee's opinion in the 1947 Action, which was vacated "in all respects" by the 1948 Consent Judgment.  AD Ex. E at 105.  Defendants also cite to that portion of the court's decision in the 1974 Action that describes the 1947 Action and 1948 Consent Judgment. Defendants cite an inadmissible "Copyright Research Report," which does not address DC's chain-of-title claims to Superman—the report |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|-------------------------------------------|----------------|
|     |                                           | contains only information concerning recorded documents in "the records of the Copyright Office."  AD Ex. T.  Defendants also cite paragraph 38 of the Siegels' Third Amended Complaint in the *Siegel* action, which concerns the December 23, 1975, agreement Siegel and Shuster entered into with DC, and DC's answer to paragraph 38.  *Id.* Exs. NN at 417-18 ¶ 38; OO at 439 ¶ 38.  Defendants finally cite to DC's Second Amended Counterclaims in the *Siegel* action, which provide historical background relevant to the claims in that action. |
|     |                                           | Moreover, DC has long relied on the 1992 Agreement as establishing its ownership of Shuster's copyrights in Superman.  *See* Declaration of Damon Bonesteel ("BD") ¶ 3. |
|     |                                           | Objections to Defendants' Evidence: |
|     |                                           | AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 36. |
| 38  | The 1975 Agreement contained an express acknowledgment by Siegel and Shuster that DC already owned *all rights* to Superman.  Defendants' Evidence:  AD Ex. H at 117 ¶2, 125 ¶7. | **Undisputed** that the 1975 Agreement states that DC "both immediately before and immediately after the signing of this agreement, is the sole and exclusive owner of all right, title and interest in and to the 'Superman' concept, idea, continuity, pictorial representation, |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | | formula, characters, cartoons and comic strips, title, logo, copyrights and trademarks, including any renewals and extensions of any such rights…."  AD Ex. H at 117 ¶ 2.<br><br>DC addressed DSUF 38 in responding to DSAUF 58.  Docket No. 471 at 49-51. |
| 39 | Outside of and before filing this lawsuit in 2010, attacking the Shuster Termination (described below), DC has not claimed or suggested that the 1992 Agreement is the basis for its chain-of-title to Superman.<br><br><u>Defendants' Evidence:</u>  AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 450 ¶17, ZZ at 752-54. | **Disputed.**<br><br>DC addressed DSUF 39 in responding to DSAUF 74.  Docket No. 471 at 60.<br><br>Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement is the basis for its chain-of-title to Superman."  *See* DC's Response to DSUF 15.  Defendants also cite to DC's response and objections to defendant Mark Warren Peary's Interrogatory No. 5, which identified all communications that referred to the 1992 Agreement—not what served as the basis for DC's chain-of-title to Superman.  AD Ex. ZZ at 752-54.<br><br>Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | Superman copyrights.  BD ¶ 3. |
| | | Objections to Defendants' Evidence: |
| | | AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 36. |
| 40 | Outside of and before filing this lawsuit in 2010, attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement revoked or extinguished the 1938 Grant or any other Superman grants by Joseph Shuster.  Defendants' Evidence:  AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 450 ¶17, ZZ at 752-54. | **Disputed.**  DC addressed DSUF 40 in responding to DSAUF 74.  Docket No. 471 at 60.  Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement revoked or extinguished the 1938 Grant or any other Superman grants by Joseph Shuster." *See* DC's Response to DSUF 39.  Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's Superman copyrights.  BD ¶ 3.  Objections to Defendants' Evidence:  AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *see supra* DC's Response to 36.  Lack of foundation.  Lack of personal knowledge.  FED. R. EVID. |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | 602. |
| 41 | Outside of and before filing this lawsuit in 2010, attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement re-granted it Joseph Shuster's Superman copyrights.<br><br>Defendants' Evidence:  AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 450 ¶17, ZZ at 752-54. | **Disputed.**<br><br>DC addressed DSUF 41 in responding to DSAUF 74.  Docket No. 471 at 60.<br><br>Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement re-granted it Joseph Shuster's Superman copyrights." *See* DC's Response to DSUF 39.<br><br>Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's Superman copyrights.  BD ¶ 3.<br><br>Objections to Defendants' Evidence:<br><br>AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *see supra* DC's Response to DSUF 36.<br><br>Lack of foundation.  Lack of personal knowledge.  FED. R. EVID. 602. |
| 42 | DC's 2005 letter to Mark Warren Peary and Jean Adele Peavy, which discussed and offered to settle the 2003 Shuster Termination does not even mention the 1992 Agreement.<br><br>Defendants' Evidence:  AD Ex. | **Disputed.**<br><br>Defendants offer no competent evidence to support this claim.  Defendants cite an inadmissible 2005 settlement communication sent by Paul Levitz to the Shuster heirs— |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | HH. | in an effort to avoid litigation—which disputed the Shusters' termination claim. Defendants erroneously describe the letter, which challenges the Shusters' termination notice, as Toberoff expressly acknowledged in a letter in response.  Docket No. 463-3 at 275. Objection to Defendants' Evidence: AD Ex. HH does not prove this asserted fact, and, in any event, it is a settlement offer, which is inadmissible for the use defendants seek to make of it.  FED. R. EVID. 408; FED. R. CIV. P. 56(c)(2); *e.g.*, *U.S. v. Whitney*, 180 Fed. Appx. 670, 673 (9th Cir. 2006); *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213-14 (9th Cir. 1990). |
| 43 | Mark Warren Peary is Joe Shuster's nephew. Defendants' Evidence:  AD Ex. CC at 315. | **Undisputed.** DC addressed DSUF 43 in responding to DSAUF 64.  Docket No. 471 at 52-53. |
| 44 | On July 15, 2003, Mr. Peary petitioned the Los Angeles Superior Court to probate Joe Shuster's estate. Defendants' Evidence:  AD Ex. CC. | **Undisputed** for purposes of this motion that in 2003, Shuster's nephew Mark Warren Peary initiated proceedings in Los Angeles Superior Court to probate Shuster's estate—even though in 1992, his mother Jean Peavy had already filed an affidavit in California probate court to obtain all of Shuster's assets.  Adams Decl. Ex. M. DC addressed DSUF 44 in |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | responding to DSAUF 64.  Docket No. 471 at 52-53. |
| 45 | Joe Shuster's will nominated Jean Adele Peavy to be the executrix, and nominated Mr. Peary to be the executor of his estate in the event Jean declined to serve.<br><br>Defendants' Evidence:  AD Ex. CC at 315. | **Disputed.**<br><br>DC addressed DSUF 45 in responding to DSAUF 63.  Docket No. 471 at 52.<br><br>The Court rightly ruled in its tentative order that "Shuster had no wife or child, and his will named his sister, Jean Peavy, as sole beneficiary and executrix of his estate. … On August 17, 1992, Jean filed an affidavit in California state court identifying herself as Shuster's 'successor' and sole heir and requesting that certain property 'be paid, delivered or transferred to her.'"  Tentative at 3.<br><br>Shuster's will uses the words "unable" or "unwilling"—*not* "declined," as defendants falsely state in DSUF 45.  The will states: "I give, devise and bequeath unto JEAN ADELE PEAVY all of the rest, residue and remainder of my estate …. In the event that Jean Adele Peavy shall predecease me, or in the event that both Jean Adele Peavy and I shall die as a result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, Mark Warren Peary.  I hereby nominate and appoint my |

DC'S STATEMENT OF GENUINE ISSUES IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | | sister, Jean Adele Peavy, executrix of this my Last Will and Testament, to act without bond.  In the event that my sister is for any reason <u>unable or unwilling</u> to act as executrix hereof, I nominate and appoint Mark Warren Peary to act as executor, also without bond."  AD Ex. CC at 286 (underlining added). |
| 46 | Jean Adele Peavy, who was then 82 years old, declined to serve as executor of the estate of Joseph Shuster. <u>Defendants' Evidence:</u>  AD Ex. CC at 320-21. | **Disputed.** DC addressed DSUF 46 in responding to DSAUF 64.  Docket No. 471 at 52-53. The facts do not support that Jean declined to serve because she was 82 in 2003.  Peary testified Jean was "competent" and "had the ability to serve as an executor" in 2003, and that Jean never said she was "unable or unwilling to serve."  Docket No. 305-37 at 1286:1-3, 1374:17-1375:4. Peary also admitted:  "I'm the one that has initiated the whole -- the whole project.  I've been involved in it with Toberoff from the beginning and I'm active and knowledgeable on it."  *Id.* at 1374:20-25.  Peary did this without "any discussion" with Jean, and Jean confirmed in 2006:  "I don't know what's going on" with Shuster's "estate."  Docket No. 305-59 at 2107:10-13. |
| 47 | On October 7, 2003, the Los Angeles Superior Court therefore | **Disputed**. DC addressed DSUF 47 in |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | appointed Mr. Peary as executor (the "Shuster Executor") of the estate of Joseph Shuster (the "Shuster Estate") in accordance with his will.<br><br>Defendants' Evidence:  AD Ex. DD at 327. | responding to DSAUF 65.  Docket No. 471 at 53.<br><br>DC does not dispute for purposes of this motion that in 2003, a Los Angeles Superior Court appointed Peary to serve as executor of Shuster's estate.<br><br>DC disputes the suggestion that the probate court appointed Peary executor in accordance with Shuster's will or because Jean declined to act in that capacity. Peary asked the probate court to appoint him executor in place of his mother, AD Ex. CC—and has chosen not to close the probate matter or distribute the Estate's assets to Jean, as Shuster's will and California law require, because Peary and Toberoff wish to persist in making their improper shell-game argument that the Shuster "executor" never signed the 1992 Agreement, and thus the Shuster executor is not bound by it.  Opp. at 2-17; Docket Nos. 186 at 13; 334 at 9-10, 12-13; 334 at 9-10; 458 at 8, 15; 459-3 at 289-90; 468 at 7-8. |
| 48 | The Shuster Executor's powers expressly included the "power … to terminate prior transfers of [Joseph Shuster's] copyrights pursuant to [17 U.S.C.] § 304(d)."<br><br>Defendants' Evidence:  AD Ex. DD | **Disputed.**<br><br>DC addressed DSUF 48 in responding to DSAUF 65.  Docket No. 471 at 54.<br><br>DC disputes the claim that the Los Angeles Superior Court "expressly |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | at 327. | included the 'power ... to terminate' under the Copyright Act.  The probate court merely granted Peary's request to be appointed executor so he could serve copyright termination notices on behalf of the Shuster estate.  The state court did not resolve the threshold copyright issues at the center of DC's First Claim, nor did Peary ask it to.  *Cf. Orr v. Orr*, 440 U.S. 268, 277 n.7 (1979) ("a state court cannot confer standing before this Court on a party who would otherwise lack it"); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (state court action "cannot retroactively confer standing in federal court").  As explained in DC's motion, Peary has no "power" to terminate.  Docket Nos. 458 at 21-23; 468 at 9-10. |
| 49 | On or about November 10, 2003, the Shuster Executor served a notice of termination under 17 U.S.C. § 304(d) on DC as to Joe Shuster's grants of Superman copyrights (the "Shuster Termination"). <br><br> Defendants' Evidence:  AD Ex. FF at 346-48. | **Disputed.** <br><br> DC addressed DSUF 49 in responding to DSAUF 84.  Docket No. 471 at 66. <br><br> DC does not dispute for purposes of this motion that "[o]n or about November 10, 2003," a Notice of Termination of Transfer Covering Copyright Renewal Term of "Superman" was served on DC on behalf of the Estate of Joseph Shuster. |

DC'S STATEMENT OF GENUINE ISSUES IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | DC disputes the suggestion that the Shuster Termination seeks to terminate all of Shuster's grants of Superman copyrights.  The Shuster Termination does not seek to terminate the grants contained in the 1948 Consent Judgment and the 1992 Agreement.  AD Ex. FF at 346-48; *see* Docket No. 49 ¶¶ 125-28. |
| 50 | Per 37 C.F.R. § 201.10(b)(1)(i), the Shuster Termination states that it is "pursuant to Section 304(d) of the United States Copyright Act (17 U.S.C. § 304(d))." <br><br> Defendants' Evidence:  AD Ex. FF at 338. | **Undisputed** for purposes of this motion that the Shuster Termination contains the language quoted by defendants.  Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 51 | Per 37 C.F.R. § 201.10(b)(1)(ii), the Shuster Termination lists the name of each grantee whose rights are being terminated, or the grantee's successor in title, and each address at which service of the notice is being made. <br><br> Defendants' Evidence:  AD Ex. FF at 338-40. | **Undisputed** for purposes of this motion that the Shuster Termination lists the stated information.  Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 52 | Per 37 C.F.R. § 201.10(b)(1)(iii), the Shuster Termination lists the following works, their authors (Siegel and Shuster), and their original copyright registration numbers: *Action Comics, No. 1* (B379787), *No. 2* (B379788), *No. 3* | **Undisputed** for purposes of this motion that the Shuster Termination lists the stated information and that any works not listed were purposely omitted by defendants.  Defendants' claim that the Shusters' termination notice was "per" a federal regulation |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | (B385466), *No. 4* (B387907), *No. 5* (B394784), *No. 6* (B394866), *No. 7* (B399214); the previously unpublished works underlying such material; and the material reprinted in *Superman No. 1* (A299871) and *No. 3* (B443035).<br><br>Defendants' Evidence:  AD Ex. FF at 340-42. | is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 53 | The relevant published works listed in the Shuster Termination secured statutory copyright between April 18, 1938 and October 25, 1938.<br><br>Defendants' Evidence:  AD Ex. FF at 340-42. | **Undisputed** for purposes of this motion that the Shuster Termination lists works published between April 18, 1938, and October 25, 1938. |
| 54 | Per 37 C.F.R. § 201.10(b)(1)(iv), the Shuster Termination lists the 1938 Grant and subsequent pre-1978 grants or potential grants to which it applies.<br><br>Defendants' Evidence:  AD Ex. FF at 342-43. | **Disputed.**<br><br>DC does not dispute for purposes of this motion that the Shuster Termination lists the 1938 Grant and other pre-1978 grants of Shuster's Superman copyrights.  Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact."<br><br>Moreover, DC disputes the implication that the Shuster Termination lists all pre-1978 grants of Shuster's Superman copyrights. The Shuster Termination does not seek to terminate the grant contained in the 1948 Consent Judgment.  AD Ex. FF at 342-43; *see* Docket No. 49 |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | ¶¶ 125-28. |
| 55 | Per 37 C.F.R. § 201.10(b)(1)(v), the Shuster Termination lists an effective termination date of October 26, 2013.<br><br>Defendants' Evidence:  AD Ex. FF at 343. | **Undisputed.**  Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact."<br><br>DC addressed DSUF 55 in responding to DSAUF 84.  Docket No. 471 at 66. |
| 56 | Per 37 C.F.R. § 201.10(b)(1)(vi), the Shuster Termination accurately states the following: "No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304 (c) of the United States Copyright Act (17 U.S.C. §304(c))."<br><br>Defendants' Evidence:  AD Ex. FF at 344. | **Disputed.**<br><br>DC does not dispute for purposes of this motion that the Shuster Termination contains the language quoted by defendants, but whether the statement is "accurate[]" is a hotly disputed legal question, at the center of DC's motion for partial summary judgment.  Docket Nos. 458 at 10-25; 468 at 8-10.  It is improper for defendants to treat such legal questions as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 57 | Per 37 C.F.R. § 201.10(b)(1)(vii), the Shuster Termination lists Mark Warren Peary, the Shuster Executor, as the person executing the grant and the person entitled to exercise Joe Shuster's termination | **Disputed.**<br><br>DC addressed DSUF 57 in responding to DSAUF 84.  Docket No. 471 at 66.<br><br>The Shuster Termination lists Peary, |

- 44 -

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | rights, and the basis for that entitlement.<br><br>Defendants' Evidence:  AD Ex. FF at 344. | as executor of the Estate of Joseph Shuster, as the person executing the grant, but whether Peary was "entitled to exercise Joe Shuster's termination rights" is a hotly disputed legal question, at the center of DC's motion for summary judgment.  Docket Nos. 458 at 10-25; 468 at 8-10.  It is improper for defendants to treat such legal questions—whether Peary is "entitled" to exercise the Shuster's putative termination rights—as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 58 | Per 37 C.F.R. § 201.10(c), the Shuster Termination was signed by Mark Warren Peary, the Shuster Executor, as owner of Joseph Shuster's entire termination interest, accompanied by his typewritten address.<br><br>Defendants' Evidence:  AD Ex. FF at 344. | **Disputed.**<br><br>DC addressed DSUF 58 in responding to DSAUF 84.  Docket No. 471 at 66.<br><br>The Shuster Termination is signed by Peary, as executor of the Estate of Joseph Shuster, but whether the Estate is the "owner of Joseph Shuster's entire termination interest" is a hotly disputed legal question, at the center of DC's motion for summary judgment.  Docket Nos. 458 at 10-25; 468 at 8-10.  It is improper for defendants to treat such |

| No. | Defendants' Allegedly Uncontroverted Fact | DC's Response |
|---|---|---|
| | | legal questions—whether Shuster's Estate holds a termination interest—as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 59 | Per 37 C.F.R. § 201.10(d), the Shuster Termination was served by first-class mail and sent to addresses which, after a reasonable investigation, were found to be the last known address of the grantee(s) or successor(s) in title.<br><br><u>Defendants' Evidence:</u> AD Ex. FF at 345-48. | **Undisputed** for purposes of this motion that the Shuster Termination makes this representation. Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." |
| 60 | The Shuster Termination was filed and recorded with the United States Copyright Office on December 8, 2003.<br><br><u>Defendants' Evidence:</u> AD Ex. FF at 333-35. | **Undisputed.**<br><br>DC addressed DSUF 58 in responding to DSAUF 84. Docket No. 471 at 66. |
| 61 | In 1997, Joanne Siegel and Laura Siegel Larson served and filed notices of termination on DC as to Jerome Siegel's grants of Superman copyrights.<br><br><u>Defendants' Evidence:</u> FAC at ¶67; AD Ex. II at 360. | **Disputed.**<br><br>DC addressed DSUF 61 in responding to DSAUF 97. Docket No. 471 at 71.<br><br>DC admits that Joanne Siegel and Laura Siegel Larson served and filed notices of termination in 1997. Whether the notices were valid, whether DC and the Siegels reached |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | a settlement agreement in 2001, and whether the notices of termination sought to terminate all of Siegel's grants of Superman copyrights, are issues presently being litigated before the Ninth Circuit in the *Siegel* case. Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49. These are not remotely undisputed facts. |
| 62 | On November 8, 2002, Joanne Siegel and Laura Siegel Larson served notices of termination on DC as to Jerome Siegel's Superboy copyrights.<br><br>Defendants' Evidence: FAC at ¶86. | **Disputed.**<br><br>DC admits that Joanne Siegel and Laura Siegel Larson served and filed notices of termination in 2002. Whether the notices were valid, whether Superboy is copyrightable, and whether Superboy, if copyrightable, is a joint work by Siegel and Shuster are issues presently being litigated in the *Siegel* case. Case No. CV-04-8400, 04-8776 SGL (RZx), Docket No. 116 at 29-39; *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1155 (C.D. Cal. 2007); 9th Cir. Appeal Nos. 11-55863, 11-56034, Docket No. 31-1 at 72-77. These are not remotely undisputed facts. |
| 63 | Neither Mr. Peary nor Ms. Peavy have any interest in these Superboy notices of termination.<br><br>Defendants' Evidence: AD Exs. SS at 502-507, TT at 513-518. | **Disputed.**<br><br>Whether the Shusters have *any* interest in the Siegel's Superboy termination notices served in 2002 is a hotly disputed factual and legal question in this case. Docket No. 49 ¶¶86-91, 131-33; Opp. at 17-25; *see* |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | *infra* DC's Statement of Genuine Issues 1-17.  It is improper to treat such legal questions as undisputed facts. |
| 64 | In November 2004, the Siegels, represented by Marc Toberoff, filed suit against DC as to Superman (C.D. Cal. Case No. 04-08400) and Superboy (C.D. Cal. Case No. 04-08776) (the "*Siegel* Litigation"). | **Undisputed** that in 2004, Joanne Siegel and Laura Siegel Larson filed lawsuits concerning copyright termination notices they filed, Case Nos. CV-04-8400, CV-04-8776, and that Toberoff was their counsel of record.<br><br>DC addressed DSUF 64 in responding to DSAUF 98.  Docket No. 471 at 72. |
| 65 | In the *Siegel* Litigation, the Court held that the Siegels' notices of termination concerning Superman were valid and effective as to Siegel and Shuster's original Superman story published in *Action Comics, No. 1*, and that the Siegels had thereby recovered Jerome Siegel's copyright interest in that Superman story published in *Action Comics, No. 1*.<br><br><u>Defendants' Evidence:</u>  *Siegel I*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008). | **Disputed.**<br><br>DC addressed DSUF 65 in responding to DSAUF 98.  Docket No. 471 at 72.<br><br>Whether the Siegels' termination notices concerning Superman were valid and, if so, the scope of the termination notices, are issues presently being litigated before the Ninth Circuit in the *Siegel* case.  Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49.  These are not remotely undisputed facts. |
| 66 | In 2009, the *Siegel* Court also decided whether Siegel and Shuster's Superman stories published in *Action Comics Nos. 2-7* were "works-for-hire."<br><br><u>Defendants' Evidence:</u>  *Siegel v.* | **Disputed.**<br><br>DC addressed DSUF 66 in responding to DSAUF 98.  Docket No. 471 at 72.<br><br>Whether the Superman stories |

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | *Warner Bros. Entertainment, Inc.* ("*Siegel II*"), 658 F. Supp. 2d 1036 (C.D. Cal. 2009). | published in *Action Comics Nos. 2-7* are "works-for-hire" are issues presently being litigated before the Ninth Circuit in the *Siegel* case. Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49. These are not remotely undisputed facts. |
| 67 | On May 17, 2011, in the *Siegel* Litigation, this Court entered a Rule 54(b) judgment that incorporated *Siegel I* and *Siegel II*.<br><br>Defendants' Evidence:  AD Ex. QQ. | **Undisputed** for purposes of this motion that the *Siegel* court granted defendants' Renewed Motion for Entry of a Partial Judgment Under FED. R. CIV. P. 54(b) on May 17, 2011, and certified as final pursuant to Rule 54(b) "the First Claim of the Third Amended Complaint, and the First, Second, Third and Fourth Counterclaims of the Second Amended Counterclaims (as stricken in part by the Court's May 5, 2011 order), and the Court's March 26, 2008 order (Docket No. 293), August 12, 2009 order (Docket No. 560), and October 30, 2009 order (Docket No. 595)."  AD Ex. QQ. This Rule 54(b) ruling is currently on appeal.  Appeal Nos. 11-55863, 11-56034. |
| 68 | On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that "the 1975 Agreement was not a 'grant.'"<br><br>Defendants' Evidence:  *Siegel I*, 542 F. Supp. 2d at 1133; AD Ex. WW. | **Undisputed** for purposes of this motion that DC did not challenge the ruling in *Siegel* that the 1975 Agreement was not a "grant" of Siegel's Superman copyrights. |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| 69 | On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that the May 21, 1948 "consent judgment" did not need to be listed on notices of termination.<br><br>Defendants' Evidence:  *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW. | **Undisputed** for purposes of this motion that DC did not challenge the ruling in *Siegel* that the 1948 Consent Judgment did not need to be listed on the Siegels' notices of termination. |
| 70 | DC filed this lawsuit, against Joanne Siegel, Laura Siegel Larson, Mark Warren Peary and their counsel, Marc Toberoff, in May 2010.<br><br>Defendants' Evidence:  Docket No. 1. | **Disputed.**<br><br>DC filed its initial complaint on May 14, 2010, against Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Joanne Siegel, Laura Siegel Larson, and Mark Warren Peary, as personal representative of the Estate of Joseph Shuster.  Docket No. 1.<br><br>DC further disputes the suggestion that the complaint was filed against Toberoff as "counsel" for the Siegel and Shuster heirs.  This Court rejected defendants' SLAPP motion and their erroneous—yet oft-repeated—assertions that Toberoff's alleged interference was "protected, litigation and settlement related conduct."  Docket No. 337. |
| 71 | Sub-parts (a) and (c) of DC's Second Claim concern "work-for-hire" issues already decided in the Siegel Litigation, and which were incorporated in this Court's Rule 54(b) judgment. | **Disputed.**<br><br>This is pure legal argument about the impact of an interlocutory court ruling in the *Siegel* action that is currently pending before the Ninth Circuit.  Appeal Nos. 11-55863, 11- |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | Defendants' Evidence:  FAC ¶¶153-54, 158-50; *Siegel I*, 542 F. Supp. 2d at 1126-1130; AD Ex. QQ. | 56034, Docket Nos. 31-1 at 41-87; 49 at 17-28; 65-1. |
| 72 | Sub-parts (b), (d) and (e) of DC's Second Claim were also part of DC's counterclaims in the previously filed *Siegel* Litigation.<br><br>Defendants' Evidence:  *Compare* FAC at ¶¶155-56, 160-62 , 163-64 *with* AD Ex. PP at ¶¶109-13, 118-20, 34. | **Disputed.**<br><br>This is pure legal argument about the impact of an interlocutory court ruling in the *Siegel* action that is currently pending before the Ninth Circuit.  Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1 at 41-87; 49 at 17-28; 65-1. |
| 73 | DC's Fourth, Fifth and Sixth Claim are before the Ninth Circuit as part of the anti-SLAPP appeal.<br><br>Defendants' Evidence:  AD Exs. WW, XX. | **Undisputed.**<br><br>However, a central question presented in the SLAPP appeal is whether the Ninth Circuit has jurisdiction to hear it.  Appeal No. 11-56934, Docket No. 37-1 at 26-27. |
| 74 | In November 2001, Ms. Peavy and Mr. Peary, as an individual, entered into an agreement (the "2001 PPC Agreement") with Pacific Pictures Corporation ("PPC").<br><br>Defendants' Evidence:  AD Ex. Z. | **Undisputed** for purposes of this motion that Jean and Peary entered into an agreement with Pacific Pictures signed by Jean, Peary, and Toberoff in November 2001.  AD Ex. Z.<br><br>DC addressed DSUF 74 in responding to DSAUF 79.  Docket No. 471 at 63. |
| 75 | In October 2003, the Shuster Executor, and PPC entered into an agreement (the ("2003 PPC Agreement").<br><br>Defendants' Evidence:  AD Ex. EE. | **Undisputed** for purposes of this motion that Peary, as executor for the Shuster Estate, entered into an agreement with Pacific Pictures signed by Jean, Peary, and Toberoff in October 2003. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|-----|---|---|
|     |   | DC addressed DSUF 75 in responding to DSAUF 83. Docket No. 471 at 64-65. |
| 76  | In 2004, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed the cancellation of the 2001 and 2003 PPC Agreements.<br><br>Defendants' Evidence: AD Ex. GG. | **Disputed.**<br><br>DC addressed DSUF 76 in responding to DSAUF 85. Docket No. 471 at 66-67.<br><br>DC has addressed at length in its Rule 12 briefing, Docket No. 185 at 5-6, summary judgment briefing, Docket No. 468 at 12, and other briefing, *e.g.*, Docket No. 360 at 3-4, whether the Pacific Pictures agreements were ever properly terminated, and whether the Shusters' putative rights were ever assigned back to them. The evidence supporting DC's position includes the plain terms of the 2001, 2003, 2004, and 2011 Pacific Pictures agreements, which do not support defendants' position. AD Exs. Z, EE, GG, UU. These are not remotely undisputed facts. |
| 77  | The 2001 and 2003 PPC Agreements, and the 2004 cancellation, were voluntarily produced to DC in 2006 in the *Siegel* Litigation.<br><br>Defendants' Evidence: AD Ex. KK. | **Disputed.**<br><br>DC addressed DSUF 77 in responding to DSAUF 94. Docket No. 471 at 70.<br><br>Defendants offer no competent evidence to support this claim, as the sole document they cite is a November 15, 2006, cover letter sent by former Toberoff associate Alexander Merino in the *Siegel* case |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | purporting to enclose productions from IPW, LLC and Pacific Pictures Corporation. |
| 78 | In 2006 in the *Siegel* Litigation, DC took deposition testimony regarding the 2001 and 2003 PPC Agreements.<br><br>Defendants' Evidence:  AD Exs. LL at 385-402 , JJ at 369-381. | **Undisputed.**<br><br>DC addressed DSUF 78 in responding to DSAUF 95.  Docket No. 471 at 71. |
| 79 | In a 2011 letter, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed their intent that PPC have no continuing interest whatsoever when they revoked the PPC Agreements in 2004.<br><br>Defendants' Evidence:  AD Ex. UU. | **Disputed.**<br><br>DC has addressed at length in its Rule 12 briefing, Docket No. 185 at 5-6, summary judgment briefing, Docket No. 468 at 12, and other briefing, *e.g.*, Docket No. 360 at 3-4, whether the Pacific Pictures agreements were ever properly terminated, and whether the Shusters' putative rights were ever assigned back to them.  The evidence supporting DC's position includes the plain terms of the 2001, 2003, 2004, and 2011 Pacific Pictures agreements, which do not support defendants' position.  AD Exs. Z, EE, GG, UU.<br><br>Moreover, DC has disputed Jean's competency to enter into this 2011 agreement, whether defendants revoked the 2004 agreement, and the legal effect of that asserted revocation.  Docket No. 322 at 1-2. These are not remotely undisputed facts. |

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| 80 | In 2008, during the *Siegel* Litigation, an agreement was entered into by Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy regarding settlement negotiations with DC (the "2008 Agreement").<br><br>Defendants' Evidence:  AD Exs. SS at 490-499, TT at 511-512. | **Disputed.**<br><br>DC addressed DSUF 80 in responding to DSAUF 90.  Docket No. 471 at 69.<br><br>DC does not dispute that the 2008 Consent Agreement was entered into by Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy.<br><br>DC disputes that the 2008 Consent Agreement was entered into "regarding settlement negotiations." Peary testified that the agreement remains in effect to this day— separate and apart from any mediation discussion.  Docket No. 305-37 at 1174:5-7.<br><br>Moreover, defendants have refused to produce the 2008 Consent Agreement, and cannot make self-serving assertions about its contents or who is bound by it, including whether Mr. Toberoff is a party to it. *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cie. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").  In any event, if this Court has any questions about that document, it can and should review the consent agreement *in camera* or order it produced to DC. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| 81 | As alleged by DC, the 2008 Agreement requires the consent of the parties thereto to any settlement of their recaptured copyrights with DC.<br><br>Defendants' Evidence:  FAC at ¶188. | **Disputed.**<br><br>DC addressed DSUF 81 in responding to DSAUF 91.  Docket No. 471 at 69-70.<br><br>Defendants have refused to produce the 2008 Consent Agreement, and cannot make self-serving assertions about its contents.  *Bilzerian*, 926 F.2d at 1292.  Indeed, their choice affirmatively to discuss the contents of the document and use facts about it as a sword constitutes a waiver. *Id.* at 1291-94.  In any event, defendants' admissions about its contents prove its illegality, as shown in DC's briefs.  Docket Nos. 458 at 23-25; 468 at 10-12. If this Court has any questions about that document, it can and should review the consent agreement *in camera* or order it produced to DC. |
| 82 | Magistrate Judge Zarefsky rejected DC's arguments that the 2008 Agreement constitutes "an independent wrong [that] violates the Copyright Act," and found, instead, that it is a legitimate "Drysdale-Koufax collective approach to negotiation."<br><br>Defendants' Evidence:  Docket No. 209 at 6-8. | **Disputed.**<br><br>DC addressed DSUF 82 in responding to DSAUF 93.  Docket No. 471 at 70.<br><br>This is pure legal argument about a court ruling.  It also erroneously describes the court's ruling; Magistrate Judge Zarefsky said that defendants' 2008 Consent Agreement might not violate § 304(c)(6)(D) of the Copyright Act, but conceded that "[o]ne cannot know with certainty what the |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| No. | DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACT | DC'S RESPONSE |
|---|---|---|
| | | consent agreement means without seeing" it, Docket No. 209 at 8:1-2—and, without looking at the contract, accepted Toberoff's representations to Judge Larson in the *Siegel* case about its contents. Docket Nos. 160 at 6-44; 209 at 1-10. |
| | | Since Magistrate Judge Zarefsky ruled in May 2011, new facts have emerged that disprove Toberoff's false assertions to Judges Larson and Zarefsky, and defendants have selectively disclosed information about the agreement that reveal many of its contents.  PD ¶ 13-17. DC will move shortly to compel the production of the consent agreement and further testimony concerning its contents. |
| 83 | This Court upheld Magistrate Zarefsky's ruling as to the 2008 Agreement.<br><br>Defendants' Evidence:  Docket No. 252. | **Disputed.**<br><br>DC addressed DSUF 82 in responding to DSAUF 93.  Docket No. 471 at 70.<br><br>This is pure legal argument about a court ruling.  It also erroneously describes the court's ruling.  *See supra* DC's Response to DSUF 82. |

## II.    DC'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

| No. | Statement of Genuine Issues | Evidence |
|---|---|---|
| 1 | A 1940 script that defendants say features the first appearance of Superboy contains the joint byline: "By Jerry Siegel and Joe Shuster." | *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1146, 1155 (C.D. Cal. 2007); PD Ex. 10. |
| 2 | In *Action Comics #1*, which was published in 1938, Shuster drew Superman as a very young boy displaying astounding "feats of strength." | PD Ex. 28. |
| 3 | In *Superman #1*, which was published in 1939, Shuster drew Superman as a young boy with super-powers. | PD Ex. 12. |
| 4 | In a Sunday comic strip, which was published in 1942, Shuster depicted Superman as a "youth" who could "outrun the express" train and had other "amazing powers." | PD Ex. 13. |
| 5 | In 1948, a New York state court found that Shuster provided the artwork for the first stand-alone Superboy story, printed in *More Fun Comics #101*. | AD Ex. C at 85 (Finding 180: "All the art work for the SUPERBOY releases was prepared by plaintiff SHUSTER under the direction of DETECTIVE COMICS, INC."); PD Ex. 11. |
| 6 | In 1972 and 1973, Jerry Siegel and Joe Shuster filed copyright renewal notices identifying Superboy as their joint creation. | PD Ex. 25-27. |
| 7 | In 1982, Siegel's widow Joanne sent a letter to DC stating: "It's no mystery who the creators were in Jerry and Joe's case. Not only of Superman, but Superboy and other | PD Ex. 29. |

| NO. | STATEMENT OF GENUINE ISSUES | EVIDENCE |
|---|---|---|
| | comics." | |
| 8 | In 1997, Siegel's heirs filed a copyright termination notice seeking to terminate Siegel's prior grants of Superman rights that listed Superboy-specific works and identified "Superboy" as among the "character[s], story element[s], or indicia reasonably associated with SUPERMAN.". | PD Ex. 31. |
| 9 | In a November 2001 "Joint Venture Agreement," Jean and Peary formed a joint venture with Toberoff's company Pacific Pictures Corporation listing "Superboy" as among "Joe Shuster's creations." | AD Ex. Z. |
| 10 | In November 2001, Toberoff approached the Siegels seeking to buy out their putative Superman rights. | PD Ex. 3 at 212:8-222:13; 32; 33; Docket No. 305-14 at 358:4-360:20. |
| 11 | In October 2002, the Siegels signed an agreement with Toberoff's company IP Worldwide to exploit their putative Superman rights. | PD Ex. 34. |
| 12 | In November 2002, the Siegels filed a copyright termination notice directed at Superboy, which listed the same Superboy-specific works identified in their 1997 copyright termination notice. | PD Ex. 31. |
| 13 | The Siegels' 2002 copyright termination notice stated that Superboy was a copyrightable work "separate and distinct" from | PD Exs. 15, 31. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| NO. | STATEMENT OF GENUINE ISSUES | EVIDENCE |
|---|---|---|
| | Superman and that Superboy was "solely written and created" by Siegel. | |
| 14 | Without receiving any independent legal advice, conducting any factual investigation, or consulting with Jean, Peary agreed to disclaim any interest in Superboy, and defendants amended the 2001 Pacific Pictures Agreement to delete all reference to "Superboy" and redefine the Shusters' putative rights as including only "Superman." | Docket No. 305-37 at 1270:6-1272:19, 1385:12-1386:5, 1391:5-1395:7; AD Exs. Z, EE; PD Ex. 3 at 335:15-345:4. |
| 15 | In November 2003, Peary filed a termination notice with the Copyright Office that omitted all reference to Superboy-specific works and elements. | AD Ex. FF; Docket No. 305-37 at 1270:6-1272:19, 1385:12-1386:5, 1391:5-1395:7, 1400:5-1414:2. |
| 16 | In 2008, defendants entered into a "consent agreement"—which remains in effect to this day—barring the Siegels or Shusters from entering into an agreement with DC without the other family's consent. | PD Ex. 3 at 359:4-361:12; Docket Nos. 160 at 50-64; 305-24 at 758:23-760:25; 305-37 at 1155:21-1156:25, 1158:19-1160:9, 11174:5-7, 1184:8-1185:11. |
| 17 | While the *quid pro quo* the Shusters received for forfeiting their interest in Superboy is the subject of ongoing discovery, it appears that the 2008 consent agreement requires the Siegels to pay a portion of their recovery from the *Siegel* action to the Shusters. | PD ¶ 15-17; Docket Nos. 305-24 at 817:23-818:1, 823:23-824:4; 305-37 at 1191:21-1192:13, 1277:5-11; Cross-Mot. 22. |

# III.    DC'S RESPONSE TO DEFENDANTS' CONCLUSIONS OF LAW

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| 1.  Summary judgment should be granted in Defendants' favor on DC's First Claim for Relief. The Shuster Termination fully satisfied the statutory and regulatory requirements for termination under 17 U.S.C. §§ 304(c)-(d) and 37 C.F.R. § 201.10, and is valid as a matter of law. | As set forth in the Court's tentative order, summary judgment should be granted in favor of DC on its First Claim for Relief.  *See also* Opp. at 2-17; Docket Nos. 458 at 10-23, 468 at 1-10. |
| a.  Part (1) of DC's First Claim (FAC ¶¶107-11), which alleges that the Shuster Executor did not hold a termination right under 17 U.S.C. §304(d), fails as a matter of law.<br><br>The Shuster Executor "own[s] the author's entire [§ 304(d)] termination interest" under a plain reading of 17 U.S.C. § 304(c)(2)(D) because Joseph Shuster left no widow, child and grandchild, and his termination rights under section 304(c) had not been exercised and expired before October 27, 1998, the effective date of the Copyright Term Extension Act. Pub. L. 105-298 (1998); 17 U.S.C. § 304(d); 67 Fed. Reg. 69134, 69135; *Stewart v. Abend*, 495 U.S. 207, 212 (1990). | Summary judgment should be granted in favor of DC on its First Claim for Relief as set forth in DC's opposition brief (Opp. at 2-17), Proposed Order, and affirmative motion for partial summary judgment (Docket Nos. 458 at 10-23, 468 at 1-10).<br><br>The Shuster heirs have no statutory basis to terminate under § 304(d) of the Copyright Act because Joseph Shuster passed away without exercising any purported termination right and before his right could "expire" under the terms of § 304(c).  *See* 17 U.S.C. §§ 304(c)-(d).  The Shuster heirs' termination notice is therefore invalid and ineffective. |
| b.  Part (2) of DC's First Claim (FAC ¶¶112-17), which alleges that the 1992 Agreement bars termination fails as a matter of law.<br><br>DC already owned Siegel and Shuster's Superman copyrights through the 1938 Grant and subsequent grants. | As set forth in the Court's tentative order, summary judgment should be granted in favor of DC on its First Claim for Relief.  *See also* Opp. at 2-17; Docket Nos. 458 at 10-23, 468 at 1-10.<br><br>The 1992 agreement eliminated any pre-1978 copyright grant that might |

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| *Siegel v. Nat'l Periodical Publications, Inc.,* 508 F.2d 909, 912-913 (2d Cir. 1974). Joseph Shuster's siblings Frank Shuster and Jean Peavy, who signed the 1992 Agreement, have never held any termination rights under the Copyright Act. 17 U.S.C. § 304(c)(2). In 1992, no one held Joseph Shuster's termination rights, because Shuster left no widow, child or grandchild, and it was not until 1998 that the Copyright Term Extension Act, extended termination rights to the executor of an author's estate. Pub. L. 105-298; 17 U.S.C. § 304(c)(2)(D).<br><br>      The 1992 Agreement did not revoke and re-grant Joseph Shuster's 1938 Grant or any other prior Superman copyrights grants to DC under governing law, because (i) it contains *no* express revocation or re-grant language; (ii) it does not identify or purport to replace Joseph Shuster's prior Superman grants; (iii) it was not negotiated by anyone with a termination right and/or within an open termination window, and (iv) therefore, the termination right was not and could not be used as leverage to achieve "the very result envisioned by Congress" – market value for Joseph Shuster's Superman copyrights. *See Milne v. Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008).<br><br>      Even if the Court applied New York law, the 1992 Agreement was not a | otherwise be subject to termination under the 1976 Copyright Act. *See* 17 U.S.C. §§ 304(c)-(d), 203(a); *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005); *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200-02 (2d Cir. 2008).  Accordingly, the Shuster heirs' termination notice is invalid and ineffective. |

DC'S STATEMENT OF GENUINE ISSUES
IN OPP. TO DEFS.' PARTIAL S.J. MOT.

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| revocation, re-grant or novation. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (unambiguous contractual language interpreted as a matter of law); *Citibank, N.A. v. Benedict*, 2000 WL 322785, at *8 (S.D.N.Y. Mar. 27, 2000) ("[A]ll parties must have 'clearly expressed their intention that a subsequent agreement … [be] substituted for an old agreement'"); *Wang v. Chen*, 1992 WL 7840 at *6 (S.D.N.Y. Jan. 10, 1992) ("[A] novation must never be presumed."). | |
| Finally, even if the 1992 Agreement were viewed as a novation, it would only novate the 1975 Agreement, which did not grant DC any Superman copyrights, and acknowledged that DC already owned all rights to Superman. *See Davimos v. Halle*, 60 A.D.3d 576, 577 (2009); *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1133 (C.D. Cal. 2008). | |
| c. Part (3) of DC's First Claim (FAC ¶¶118-24) that the Shuster Executor lacked the requisite majority interest for termination fails as a matter of law.<br><br>The Shuster Executor's termination right was not and could not be transferred to PPC or anyone else. *See* 17 U.S.C. § 304(c)(2)(A)-(D); 17 U.S.C. §304(c)(6)(D). | Summary judgment should be granted in favor of DC on its First Claim for Relief as set forth in DC's opposition brief (Opp. at 2-17), Proposed Order, and affirmative motion for partial summary judgment (Docket Nos. 458 at 18-21, 468 at 8). The Court's tentative order ruled against DC on this ground. |
| d. Part (4) of DC's First Claim | This issue is not ripe, and will be moot if |

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| (FAC ¶¶125-28), which alleges that the Shuster Termination is invalid because it failed to list (i) a May 21, 1948 consent judgment ("1948 Judgment") and (ii) the 1992 Agreement, fails as a matter of law.<br><br>The 1992 Agreement was not a Superman copyright "grant," as set forth above. The 1948 Judgment also was not a Superman copyright "grant," as held by this Court in a ruling, incorporated in a Rule 54(b) judgment that is binding upon DC. *Siegel I*, 542 F. Supp. 2d at 1131-32; *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). | the Court rules in favor of DC on part (2) of DC's First Claim for Relief (the 1992 Agreement), as it did in its tentative order. |
| e.  Part (5) of DC's First Claim (FAC ¶¶129-33), alleging that purported "unclean hands" bar the Shuster Termination, fails as a matter of law.<br><br>That PPC is not listed in the Shuster Termination does not constitute "unclean hands," because PPC held no termination right or interest under the Copyright Act.  *See* 17 U.S.C. §304(c)(6)(D); *Shady Records, Inc. v. Source Enterprises, Inc*., 2004 U.S. Dist. LEXIS 26143, at *28–*32 (S.D.N.Y. January 3, 2005).<br><br>The Shuster Executor's decision not to terminate Superboy also does not constitute "unclean hands" because (i) Superboy is not subject to termination under 17 U.S.C. § 304(d) as a matter of law because it first secured statutory | As s set forth in DC's opposition brief (Opp. at 17-25) and the Declaration of Daniel Petrocelli (PD ¶¶ 12-18), discovery into DC's unclean-hands claim is still ongoing, and defendants may not obtain summary judgment on this claim.<br><br>Summary judgment can be granted in favor of DC on its First Claim for Relief (either on this unclean-hands ground or the other grounds DC has asserted), as set forth in DC's opposition brief (Opp. at 2-25), Proposed Order, and affirmative motion for partial summary judgment (Docket Nos. 458 at 10-23, 468 at 1-10). |

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| copyright by publication in 1944; (ii) preclusive findings in the 1947 Action held that Siegel alone was the original creator and owner of Superboy; (iii) termination is wholly discretionary (17 U.S.C. §§ 304(c)-(d)); and (iv) the "litigation strategy" alleged by DC is not a basis for "unclean hands." *Sears, Roebuck & Co. v. Sears PLC*, 744 F. Supp. 1297, 1310 (D. Del. 1990). | |
|     2.  Summary judgment should be granted in Defendants' favor on sub-parts (a) and (c) of DC's Second Claim for Relief (FAC ¶¶135-64) because these issues were already adjudicated in the *Siegel* Litigation, and such findings bind DC here under the issue preclusion/collateral estoppel doctrine. *See Brown v. Dunbar*, 376 Fed. Appx. 786, 787 (9th Cir. 2010). | As set forth in DC's opposition brief (Opp. at 1), DC's Second Claim for Relief is not ripe for summary adjudication.  Defendants also violated the Court's Local Rules by not meeting and conferring on this Claim before filing their motion.  Local Rule 7-3 (moving party must meet-and-confer); Docket No. 18 at 4(counsel must "engage in a pre-filing conference 'to discuss thoroughly … the substance of the contemplated motion'"). |
|     3.  Summary judgment should be granted in Defendants' favor on DC's Third Claim for Relief (FAC ¶¶165-73). DC does not have any "right" of negotiation under the plain wording of 17 U.S.C. § 304(c)(6)(D). *See Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987); 3 *Nimmer* § 11.08[A], n.6 (2010); 3 *Patry on Copyright* § 7:47. Because DC has no "right" under § 304(c)(6)(D), it lacks standing to bring this claim. *See* 6 *Patry* § 21:18, *Alexander v. Sandoval*, 532 | As set forth in the Court's tentative order, summary judgment should be granted in favor of DC on its Third Claim for Relief.  *See also* Docket Nos. 458 at 23-25, 468 at 10-12. |

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| U.S. 275, 286 (2001).<br><br>Moreover, DC's Third Claim is time-barred by the applicable three-year statute of limitations, since it is allegedly based on the text of the PPC Agreements that DC received in 2006, and DC did not file suit until 2010. 17 U.S.C. § 507(b). | |
| 4.  The above conclusions constitute the "ultimate disposition" of DC's entire First and Third Claims, and there is "no just reason" to delay appellate review.  *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980). "The Ninth Circuit embraces a 'pragmatic approach [to Rule 54(b)] focusing on severability [of claims] and efficient judicial administration.'" *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). As such, entry of judgment under F.R.C.P. 54(b) on the First and Third Claims is appropriate. | Summary judgment should be granted in favor of DC on its First and Third Claims for Relief as set forth in DC's opposition brief (Opp. at 2-25), Proposed Order, and affirmative motion for partial summary judgment (Docket Nos. 458 at 10-25, 468 at 1-10).<br><br>Defendants' request for judgment under FED. R. CIV. P. 54(b) is premature.  It will be ripe once DC's motion and defendants' cross-motion are resolved. |
| 5.  Since the Fourth through Sixth Claims are stayed pending appeal, a stay of the remainder of this litigation would serve the interests of judicial economy and is within the Court's sound discretion. *See Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997); *Clinton v. Jones*, 520 U.S. 681, 706 (1997). | DC's Fourth through Sixth Claims are not "stayed" pending defendants' SLAPP appeal.  A central question presented in the appeal is whether the Ninth Circuit has jurisdiction to hear it. Appeal No. 11-56934, Docket No. 37-1 at 26-27; *and compare Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, No. SACV 05-1083, Docket No. 54 (Oct. 13, 2006) (no stay), *with Makaeff v. Trump Univ., LLC*, 2011 WL 613571, at *2 (S.D. Cal. Feb. 11, |

| CONCLUSION OF LAW | DC'S RESPONSE |
|---|---|
| | 2011) (stay). |
| | Defendants also failed to meet and confer on this stay request, *cf.* Local Rule 7-3, Docket No. 18 at 4, and their summary judgment cross-motion is not a proper vehicle to raise this argument. |

Respectfully submitted,

Dated:  September 21, 2012

By:  /s/ Daniel M. Petrocelli
       Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics