1  Marc Toberoff (State Bar No. 188547)
    *mtoberoff@ipwla.com*
2  Keith G. Adams (State Bar No. 240497)
    *kgadams@ipwla.com*
3  Pablo D. Arredondo (State Bar No. 241142)
    *parredondo@ipwla.com*
4  David Harris (State Bar No. 255557)
    *dharris@ipwla.com*
5  TOBEROFF & ASSOCIATES, P.C.
   22337 Pacific Coast Highway #348
6  Malibu, California 90265
   Telephone:   (310) 246-3333
7  Fax:            (310) 246-3101

8  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
9  Estate of Joseph Shuster, Jean Adele Peavy,
   and Laura Siegel Larson, individually and as
10 personal representative of the Estate of
   Joanne Siegel

11              **UNITED STATES DISTRICT COURT**

12      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

13

| | |
|---|---|
| 14  DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
| 15       Plaintiff, | Hon. Otis D. Wright II, U.S.D.J. |
|       vs. | Hon. Ralph Zarefsky, U.S.M.J. |

16  PACIFIC PICTURES CORPORATION;     **DEFENDANTS' REPLY TO DC**
17  IP WORLDWIDE, LLC; IPW, LLC;      **COMICS' STATEMENT OF**
                                       **GENUINE ISSUES RE:**
    MARC TOBEROFF, an individual;     **DEFENDANTS' MOTION FOR**
18  MARK WARREN PEARY, as personal    **PARTIAL SUMMARY JUDGMENT**
19  representative of the ESTATE OF
    JOSEPH SHUSTER; JEAN ADELE        *Reply Brief; Evidentiary Objections;*
20  PEAVY, an individual; LAURA       *Responses to Evidentiary Objections;*
                                       *Objection to Rule 56(d) Declaration; and*
21  SIEGEL LARSON, individually and as *Reply Declaration of Keith G. Adams*
    personal representative of the ESTATE *filed concurrently herewith*
22  OF JOANNE SIEGEL, and DOES 1-10,
23  inclusive,                         Complaint filed:    May 14, 2010
                                       Discovery Cutoff:   None Set
                                       Trial Date:         None Set
24            Defendants.
                                       Date:    October 15, 2012
25                                     Time:    1:30 p.m.
                                       Place:   Courtroom 11
26

27

28

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

**DEFENDANTS' REPLY TO DC'S STATEMENT OF GENUINE ISSUES**

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|  | DC's Response | Defendants' Reply |
| | **Siegel and Shuster's Creation of Superman** | |
| 1. | **Defendants' Fact:** Author Jerome Siegel and illustrator Joseph Shuster co-created Superman in high school in 1933-34. | **Defendants' Evidence:** *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel I*"), 542 F. Supp. 2d 1098, 1102 (C.D. Cal. 2008). |
| | **DC's Response:** Undisputed that Siegel and Shuster co-created a character called Superman in 1933-34.

DC addressed Defendants' Statement Of Uncontroverted Fact ("DSUF") 1 in responding to Defendants' Statement Of Additional Undisputed Facts In Opposition To DC's Motion For Partial Summary Judgment ("DSAUF") 46. Docket No. 471 at 41. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, DC does not and cannot dispute this.

DC's distinction between "a character called Superman" and "Superman" is meaningless.

DC's attempt to incorporate its response to a separate motion is improper. |
| 2. | **Defendants' Fact:** On March 1, 1938, Siegel and Shuster signed an agreement with Detective Comics, defendant DC Comics' predecessor (the "1938 Grant"). | **Defendants' Evidence:** Declaration of Keith G. Adams ("AD"), Ex. A. |
| | **DC's Response:  Undisputed.**

DC addressed DSUF 2 in responding to DSAUF 48. Docket No. 471 at 43.

The Court rightly ruled in its tentative order on DC's pending motion for partial summary judgment that "[o]n March 1, 1938, Jerome Siegel and Joseph Shuster granted DC the 'exclusive | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does and cannot dispute this.

DC's attempt to incorporate its response to a separate motion is improper.

DC's citation to a "tentative" ruling is improper and irrelevant. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | right to the use of the [Superman] characters and story." Decl. of Daniel Petrocelli ("PD") Ex. 1 ("Tentative") at 2. | |
| 3. | **Defendants' Fact:** Under the 1938 Grant, Siegel and Shuster were paid $130 for the original Superman character and story. | **Defendants' Evidence:** AD Ex. A. |
| | **DC's Response: Undisputed** for purposes of this motion that on March 1, 1938, Siegel and Shuster signed an agreement drafted by DC based on the parties' discussions and negotiations providing, in relevant part: "In consideration of $130.00 agreed to be paid me by you, I hereby sell and transfer [the Superman] work and strip, all goodwill attached thereto and exclusive right to the use of the characters and story, continuity and title of strip contained therein, to you and your assigns to have and hold forever…." PD Ex. 2 at 10.<br><br>DC addressed DSUF 3 in responding to DSAUF 48. Docket No. 471 at 43. And, of course, the Court rightly noted at the September 5, 2012, oral argument on DC's motion for partial summary judgment that Siegel and Shuster received far more than $130 for their contributions to Superman. PD Ex. 2 at 40:6-20; *see also* Tentative at 2-3. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC does not dispute that Siegel and Shuster were paid only $130 for their **rights** in and to Superman.<br><br>Siegel and Shuster were later paid a page rate for additional illustrated Superman stories they submitted to DC as independent contractors (*i.e.,* what DC calls their "contributions"), contingent on DC's acceptance of such stories for publication. *See Siegel v. Warner Bros. Entertainment Inc.,* 658 F. Supp. 2d 1036 (C.D. Cal. 2009).<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>**Objections to DC's Evidence:** DC's statement that the 1938 agreement was "drafted by DC based on the parties' discussions and negotiations" is unsupported by the evidence DC cites. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| No. | DC's Response | Defendants' Reply |
| **4.** | **Defendants' Fact:** Superman became a cultural icon, and eventually spawned a multi-billion dollar franchise. | **Defendants' Evidence:** AD Ex. K. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 4 in responding to DSAUF 47. Docket No. 471 at 41.<br><br>DC does not dispute for purposes of this motion that Superman became a "cultural icon" or "spawned a multi- billion dollar franchise," but does dispute the suggestion that Siegel and Shuster were solely responsible for its success. Scores of DC artists, editors, and others (including Siegel and Shuster) were responsible. PD Exs. 17 ¶ 5, 18 at 551-52.<br><br>Objections to Defendants' Evidence: AD Ex. K is inadmissible hearsay. Fed. R. Evid. 801, 802; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 880 n.3 (9th Cir. 2005). Defendants offer this newspaper article solely for the truth of the matters contained therein. Defendants cannot and do not identify any hearsay exception or other basis that would justify the exhibit's admission. *E.g.*, *Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008); *Jinro Am. Inc. v. Secure Invs., Inc.*, | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>Defendants did not argue or state that Siegel and Shuster were "solely" responsible for Superman's success.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>The testimony of DC's "expert" witnesses in *Siegel* is disputed. The *Siegel* court characterized Siegel and Shuster's original creation and contributions as being at the heart of the character, and Siegel and Shuster are widely recognized as Superman's co-creators. *Siegel I*, 542 F. Supp. 2d at 1104-1105 (noting Siegel and Shuster's creation of Superman's origins, appearance, powers, love triangle with Lois Lane, etc.) |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | 266 F.3d 993, 1006 (9th Cir. 2001); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998); *Larez v. City of Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991). <br><br> FED. R. CIV. P. 56(c)(1)-(2) requires that only admissible evidence be considered for purposes of summary judgment, thus AD Ex. K must be disregarded, *In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008). <br><br> Lack of foundation.  Lack of personal knowledge.  Fed. R. Evid. 602. | |
| | **Siegel and Shuster's Lawsuits With DC** | |
| **5.** | **Defendants' Fact:**  In 1947, Siegel and Shuster filed suit against DC in Westchester N.Y. (the "1947 Action"). | **Defendants' Evidence:**  AD Ex. B. |
| | **DC's Response:  Undisputed.** <br><br> DC addressed DSUF 5 in responding to DSAUF 51.  Docket No. 471 at 46. <br><br> The Court rightly ruled in its tentative order that "[i]n 1947, Siegel and Shuster sued DC in New York seeking to invalidate the 1938 Assignment."  Tentative at 2. | **Defendants' Reply:** <br><br> DC's attempt to incorporate its response to a separate motion is improper. <br><br> DC's citation to a "tentative" ruling is improper and irrelevant. |
| **6.** | **Defendants' Fact:**  In the 1947 Action, Siegel individually claimed that DC had no right to publish Superboy and that Superboy belonged to him. | **Defendants' Evidence:**  AD Ex. B at 13-18 ¶¶22-39. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|-----------------------------------------------|-------------------------------------------|
| | **DC's Response:  Disputed.**<br><br>Defendants mischaracterize the 1947 Action.  Siegel and Shuster sought to recapture rights in Superman by challenging their 1938 agreements with DC, and also challenged DC's 1944 publication of a series of comic-book stories entitled "Superboy," which featured the adventures of Superman as a youth.<br><br>DC does not dispute for purposes of this motion that in the 1947 Action Siegel alleged that from "January 1945 until October 1, 1946," DC published a "Superboy" comic strip without Siegel's consent.  AD Ex. B at 15-16 ¶¶ 30-33.<br><br>DC disputes that Siegel claimed "that Superboy belonged to him." Siegel alleged in the 1947 Action that in 1938 he submitted for DC's consideration a synopsis for a "Superboy" comic strip.  AD Ex. B at 15 ¶ 26-29.  The synopsis stated that the by-line for the "Superboy" comic strip would read, "By Jerry Siegel *and* Joe Shuster."  PD Ex. 10. (emphasis added).<br><br>Until recently, Siegel, Shuster, and their families had always taken the position that Superboy was a joint creation of Siegel and Shuster (to | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's statement that "[u]ntil recently Siegel, Shuster and their families had always taken the position that Superboy was as joint creation of Siegel and Shuster" is false.<br><br>Despite DC's rhetoric, the complaint from the 1947 action makes it clear that **Jerry Siegel** was advancing an **independent** claim to Superboy:  AD Ex. B at 13-18.<br><br>Siegel originally intended when he sent his Superboy "script" to DC that it be illustrated by Shuster (hence the byline Siegel submitted included Shuster), however, because **Shuster never actually illustrated Siegels' Superboy script**, it is not and cannot be a joint work and remains Siegel's sole creation.  AD Ex. C at 81-83 ¶¶157-64.<br><br>It is also clear that Superboy is both derivative of Superman <u>and</u> gave rise to a separate Superboy superhero character/story in a separate line of DC comic books that DC separately |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | the extent it was not a pure derivative of Superman). *See infra* DC's Statement Of Genuine Issues ("SGI") 1-9 (detailing the Siegels' and Shusters' prior representations regarding Siegel and Shuster's joint authorship of Superboy); *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1155 (C.D. Cal. 2007) (Judge Larson ruling that to the extent there was "any original copyrightable material in Siegel's Superboy submissions"—and he left that question open—such material was part of "a joint work with Shuster's illustrations") (underlining added).<br><br>In a November 2001 agreement, Shuster's heirs— defendants Mark Warren Peary and Jean Peavy— formed a joint venture with defendant Marc Toberoff's company Pacific Pictures Corporation listing "Superboy" as among "Joe Shuster's creations." AD Ex. Z. At the time, Peary and Jean believed that Superboy was a "derivative" of Superman and was co-authored by Siegel and Shuster. *Id.* Ex. Z; PD Ex. 3 at 356:2-357:7; Docket No. 305-37 at 1326:16-1336:11. Toberoff later induced them fraudulently to disclaim any interest in Superboy. PD Ex. 3 at 335:15-338:15, 340:14-346:15. | copyrighted. *See Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1115-18, 11432-44 (C.D. Cal 2007).<br><br>These two notions are not mutually exclusive, as DC pretends.<br><br>**Objections to DC's Evidence:** DC's statement that "Peary and Jean believed that Superboy was a 'derivative' of Superman and was co-authored by Siegel and Shuster" is unsupported by the evidence DC cites. DC's statement that "Toberoff later induced them [Peary and Jean] fraudulently to disclaim any interest in Superboy" is also unsupported by the cited evidence, and is inadmissible speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| 7. | **Defendants' Fact:** In the 1947 Action, the Court found that DC owned all rights to Superman pursuant to the 1938 Grant. | **Defendants' Evidence:** AD Ex. C at 87 ¶1. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 7 in responding to DSAUF 52. Docket No. 471 at 46.<br><br>The Court rightly ruled in its tentative order that "[t]he court [in the 1947 Action] concluded that the 1938 assignment granted all Superman rights to DC. In 1948, the parties entered into a stipulated judgment pursuant to which Siegel and Shuster acknowledged that the 1938 assignment granted DC all rights in Superman." Tentative at 2-3.<br><br>Defendants again mischaracterize the 1947 Action and its outcome. In 1947, a referee issued an opinion holding that the parties' 1938 agreements were valid and that Siegel and Shuster assigned "all" of their Superman rights to DC. DC filed a notice of appeal, but the parties ultimately entered into a stipulation and consent judgment in1948 ("1948 Consent Judgment") in which Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's argument that the stipulation and consent judgment in the 1947 Action was a transfer or "grant" of rights is irrelevant to Defendants' Undisputed Fact No. 7; the argument was specifically rejected by the *Siegel* Court, and DC did not appeal that ruling. SUF ¶69; *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW. |

| No. | Statement Of Undisputed Fact<br>DC's Response | Defendants' Evidence<br>Defendants' Reply |
|---|---|---|
| | Superman and Superboy. In exchange, Siegel and Shuster were paid nearly $900,000 in today's dollars. *See Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1112 (C.D. Cal. 2008); CPI Inflation Calculator, Bureau of Labor Statistics (http://www.bls.gov/data/inflation_calculator.htm/). | |
| 8. | **Defendants' Fact:** In the 1947 Action, the Court found that Siegel had developed Superboy on his own in 1938-40. | **Defendants' Evidence:** AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. |
| | **DC's Response: Disputed.**<br><br>Defendants again mischaracterize the 1947 Action and its outcome. The referee found that Siegel owned rights in "the comic strip feature SUPERBOY"—not that Siegel "developed Superboy on his own in 1938-40. Though Siegel submitted an initial synopsis for a "Superboy" comic strip, Superboy was "developed" by scores of DC artists and editors—including Shuster, who the referee found provided artwork for the Superboy story in *More Fun Comics No. 101*. PD Exs. 17 ¶ 5, 18 at 551-52; AD Ex. C at 85 (Finding 180); *supra* DC's Response to DSUF.<br><br>Moreover, in the 1948 Consent Judgment—reached after DC filed its notice of appeal of the referee's 1947 opinion—Siegel and Shuster | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>The Court in the 1947 Action clearly and expressly found that "Plaintiff Siegel" – not Shuster – "is the originator and sole owner of the comic strip feature SUPERBOY." AD Ex. C at 91, ¶25.<br><br>The Second Circuit in *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909, 914 (2d Cir. 1974) just as clearly held that the "fact findings" in the 1947 Action were binding.<br><br>The 1948 Consent Judgment resulted from a settlement and assignment of Superboy to DC *after* the Court had found that "Siegel is the originator and |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  AD Ex. E. at 106-07. | sole owner of SUPERBOY."  AD Ex. C at 91, ¶25; *Siegel I*, 542 F. Supp. 2d at 1111-12. |
| 9. | **Defendants' Fact:**  In the 1947 Action, the Court found that Siegel had independently submitted his Superboy script to DC. | **Defendants' Evidence:**  AD Ex. C at 81-83 ¶¶155-165, 91-92 ¶¶25-27. |
| | **DC's Response:  Disputed.**  Defendants again mischaracterize the 1947 Action and its outcome. The referee found in his 1947 opinion that Siegel submitted a synopsis for a "Superboy" comic strip  to DC "for its consideration and acceptance or rejection, for publication, *under the terms of the contract dated September 12, 1938*," AD Ex. C at 81 ¶ 156 (emphasis added)— not that Siegel "independently" submitted his "Superboy" synopsis.  Moreover, the 1948 Consent Judgment vacated "in all respects" the referee's 1947 opinion.  AD Ex. E at 105. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  DC disputes this indisputable fact to make improper arguments.  DC's argument boils down to a pedantic dispute over the meaning of the word "independently."  DC does not dispute that Siegel developed the "Superboy" comic strip without input from DC, and that DC rejected his proposal.  The findings from the 1947 Action were found to be binding on the parties by both the Second Circuit <u>and</u> in the recent *Siegel* case.  *Siegel*, 508 F.2d at 914; *Siegel I*, 542 F. Supp. 2d at 1127-31. |
| 10. | **Defendants' Fact:**  In the 1947 Action, the Court found that DC had illegally published Superboy in *More Fun Comics, No. 101* and subsequent comics without Siegel's consent. | **Defendants' Evidence:**  AD Ex. C at 83-86 ¶¶163-82. |
| | **DC's Response:  Disputed.**  DC addressed DSUF 10 in | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | responding to DSAUF 52. Docket No. 471 at 46.<br><br>Defendants again mischaracterize the 1947 Action and its outcome. The referee found in his 1947 opinion that DC had no right to publish Superboy—not "that DC had illegally published Superboy" comic features.  In the 1948 Consent Judgment—reached after DC filed its notice of appeal of the referee's 1947 opinion—Siegel and Shuster agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy.  AD Ex. E at 106-07. | this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>The referee clearly found DC had acted illegally in publishing "Superboy" without Siegel's consent, as follows:<br><br>"Plaintiff Siegel is the originator and sole owner of the strip feature Superboy, and the defendants [DC], their agents, servants, and employees are perpetually enjoined and restrained from creating, publishing, selling or distributing any comic strip material of the nature now and heretofore sold under the title Superboy…."  AD Ex. C at 91-92 ¶25. |
| 11. | **Defendants' Fact:**  The parties thereafter settled the 1947 Action. | **Defendants' Evidence:**  AD Exs. D, E. |
| | **DC's Response:  Undisputed** for purposes of this motion that after the referee's opinion issued in 1947, DC filed a notice of appeal. The parties thereafter in 1948 entered into a stipulation and consent judgment which vacated "in all respects" the referee's 1947 opinion.  AD Ex. E at 105.  In addition, Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>DC's argument that the consent judgment in the 1947 Action was a |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|----------------------------------------------|------------------------------------------|
|  | Superman and Superboy.  In exchange, Siegel and Shuster were paid nearly $900,000 in today's dollars.  *See Siegel*, 542 F. Supp. 2d at 1112; CPI Inflation Calculator, Bureau of Labor Statistics (http: //www.bls.gov/data/ inflation_ calculator.htm/).<br><br>DC addressed DSUF 11 in responding to DSAUF 52. Docket No. 471 at 46.<br><br>The Court rightly ruled in its tentative order that "[i]n 1948, the parties entered into a stipulated judgment pursuant to which Siegel and Shuster acknowledged that the 1938 assignment granted DC all rights in Superman."  Tentative at 2-3. | transfer or "grant" of rights was rejected by the *Siegel* Court, <u>and DC did not appeal that ruling</u>.  SUF ¶69; *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW.<br><br>The amount paid in 1948 in settlement of the 1947 Action is irrelevant, whether in "1948 dollars" or "today's dollars." Fed. R. Evid. 401,403. |
| 12. | **Defendants' Fact:**  In 1969, Siegel and Shuster brought a federal suit over the ownership of the renewal copyright to Superman (the "1974 Action"). | **Defendants' Evidence:**  Docket No. 49 ("FAC") at ¶46. |
|  | **DC's Response:  Undisputed.**<br><br>DC addressed DSUF 12 in responding to DSAUF 55.  Docket No. 471 at 48-49. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| 13. | **Defendants' Fact:**  The 1974 Action resulted in the Second Circuit's decision in *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). | **Defendants' Evidence:**  *Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). |
|  |  |  |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | **DC's Response:  Undisputed.**<br><br>DC addressed DSUF 13 in responding to DSAUF 56.  Docket No. 471 at 49. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| 14. | **Defendants' Fact:**  *Siegel*, 508 F.2d 909, held that DC owned all rights to Superman, including the renewal copyright, pursuant to the 1938 Grant. | **Defendants' Evidence:**  *Siegel*, 508 F.2d at 912-913. |
| | **DC's Response:  Undisputed.**<br><br>DC addressed DSUF 14 in responding to DSAUF 56.  Docket No. 471 at 49. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| 15. | **Defendants' Fact:**  Consistent with the outcome of the 1947 Action and *Siegel*, 508 F.2d 909, DC for decades has based its chain-of-title to Superman on the 1938 Grant. | **Defendants' Evidence:**  AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 550 ¶17. |
| | **DC's Response:  Disputed.**<br><br>Defendants offer no competent evidence to support this claim, and the documents they cite do not contain any evidence that DC "based its chain-of-title to Superman on the 1938 grant." Defendants cite an inadmissible "Copyright Research Report," which does not address DC's chain-of-title claims to Superman—the report contains only information concerning recorded documents in "the records of the Copyright Office." AD Ex. T. Defendants also cite | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC offers **no evidence** to the contrary.<br><br>In every piece of evidence cited by Defendants, DC based its chain-of-title to Superman on the 1938 Grant and subsequent agreements, and did **not** base its chain-of-title to Superman on the 1992 Agreement.<br><br>DC's evidentiary objections are not well-taken.  DC's pleadings in other cases function as admissions. |

| No. | Statement Of Undisputed Fact DC's Response | Defendants' Evidence Defendants' Reply |
|---|---|---|
|  | paragraph 38 to the Siegel's Third Amended Complaint in the *Siegel* action, which concerns the December 23, 1975, agreement Siegel and Shuster entered into with DC, and DC's answer to paragraph 38. *Id.* Exs. NN at 417-18 ¶ 38; OO at 439 ¶ 38. Defendants finally cite to DC's Second Amended Counterclaims in the *Siegel* action, which provide historical background relevant to the claims in that action. *Id.* Ex. PP at 448 ¶ 12, 550 ¶ 17.<br><br>Objections to Defendants' Evidence: AD Ex. T does not prove this asserted fact and is inadmissible hearsay. FED. R. EVID. 801, 802; *see supra* DC's Response to DSUF 4. DC also refers the Court to No. 15 in DC's concurrently filed Objections To Evidence In Defendants' Statement Of Uncontroverted Facts, Declaration, And Exhibits In Support Of Defendants' Motion For Partial Summary Judgment ("Objections"). | Exhibit T (a report by the highly regarded Thompson & Thompson firm which conducts copyright and chain-of-title research at the Copyright Office) is not hearsay because it is not offered for the truth of any matter asserted therein; but rather, for the fact that a diligent search by Thompson & Thompson of the Copyright Office uncovered **no reference whatsoever to the 1992 Agreement**.<br><br>*See also* ¶36, *infra* |
| **The 1975 Agreement** | | |
| **16.** | **Defendants' Fact:** DC deleted Siegel and Shuster's Superman credit byline (from 1947-1975) and references to them from its publications. | **Defendants' Evidence:** AD Ex. I. |
|  | **DC's Response: Disputed.**<br><br>DC addressed DSUF 16 in responding to DSAUF 53. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. |

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | Docket No. 471 at 47-48.

DC disputes the implication that DC did something improper in removing Siegel and Shuster's Superman credit byline from 1947 to 1975. After Siegel and Shuster left DC in 1947, there was no need to give "credit" to the pair for the work of other DC artists and writers.  In fact, Siegel *objected* to having his name associated with stories he had not written; in the Westchester Action, Siegel's complaint asserted that DC acted improperly by "affix[ing] to the individual releases of said comic strip the name of plaintiff, SIEGEL, as author of the said releases ... whereas in truth and in fact the plaintiff Siegel, was not the author of the individual releases."  AD Ex. B at 17. In any event, defendants offer no competent evidence to support this claim, as the one hearsay newspaper article they cite from 1979 merely purports to describe the unfortunate financial hardship Siegel and Shuster faced later in their lives and notes—incorrectly—that Siegel and Shuster's "by-lines as creators of Superman had been removed after the 1947-48 litigation, restored after the 1975 case."  AD Ex. I. | DC's attempt to incorporate its response to a separatemotion is improper.

DC does not dispute the underlying fact, but only a supposed "implication" found nowhere in the stated fact.

DC cites to an irrelevancy – that Siegel objected to being credited as a *writer* on stories he had not written; but DC does not and cannot dispute that for decades it vindictively deleted Siegel and Shuster's *creator* credits on Superman stories Siegel did write and Shuster illustrated. |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | **Objections to Defendants' Evidence:** AD Ex. I is inadmissible hearsay. FED. R. EVID. 801, 802; *see supra* DC's Response to DSUF 4.<br><br>Lack of foundation. Lack of personal knowledge. FED. R. EVID. 602. | |
| 17. | **Defendants' Fact:** Between 1947-1975, Siegel and Shuster slipped into obscurity and poverty. | **Defendants' Evidence:** AD Exs. F, G, I, K. |
| | **DC's Response: Disputed.**<br><br>DC disputes the implication that DC was responsible for Siegel and Shuster purportedly "slipp[ing] into obscurity and poverty." The pair left DC in 1947, and engaged in litigation with DC for several years thereafter. *See Nat'l Periodical Pubs.*, 508 F.2d 909. After the *National* litigation, in which the Second Circuit affirmed that DC owned all rights in Superman, *id.* at 914, Siegel and Shuster encountered financial hardship and approached DC for help, and DC provided Siegel, Shuster, and their families with the generous benefits described below. *See* DC's Response to DSUF 32.<br><br>In any event, defendants offer no competent evidence to support this claim, as the newspaper articles they cite merely purport to describe the financial hardship Siegel and Shuster faced later in | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC does not dispute the underlying fact, but only a supposed "implication" found nowhere in the stated fact.<br><br>DC cites to actions Warner Communications finally took in **1975** to avoid negative publicity that only support the stated fact that Siegel and Shuster faced substantial financial hardship from 1947-75. *See Siegel I,* 542 F. Supp. 2d at 1112-13.<br><br>**Objections to DC's Evidence:** DC's statement that Shuster and Siegel "left DC in 1947" is unsupported by the cited evidence. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | **DC's Response** | **Defendants' Reply** |
| | their lives.<br><br>Objections to Defendants' Evidence: AD Exs. F, G, I, and K are inadmissible hearsay. FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 4.<br><br>Lack of foundation. Lack of personal knowledge. FED. R. EVID. 602. | |
| **18.** | **Defendants' Fact:** In 1975, the National Cartoonists Society and the Cartoonists Guild launched a public-relations campaign protesting DC's treatment of Siegel and Shuster. | **Defendants' Evidence:** AD Ex. G. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 18 in responding to DSAUF 57. Docket No. 471 at 49.<br><br>DC does not dispute for purposes of this motion that in 1975, certain individuals who were also members of the National Cartoonists Society and Cartoonists Guild supported Siegel and Shuster in their effort to obtain financial assistance from DC and Warner Communications Inc.<br><br>DC disputes the suggestion that it engaged in mistreatment of Siegel and Shuster. Siegel and Shuster, and their heirs, after suing DC twice and losing, nonetheless | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not dispute the underlying fact, but only a supposed "implication" found nowhere in the stated fact.<br><br>Warner Communications agreed to give Siegel and Shuster a modest pension to avoid negative publicity. *See Siegel I,* 542 F. Supp. 2d at 1112-13. The 1975 Agreement provided that Siegel and Shuster would each receive a yearly |

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | were given millions of dollars in recognition of Siegel's and Shuster's contributions to Superman and as a gesture of goodwill. PD Ex. 30 ¶ 3; AD Exs. P-S, U-V, X-Y, AA.<br><br>Objections to Defendants' Evidence: AD Ex. G is inadmissible hearsay. FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 4.<br><br>Lack of foundation. Lack of personal knowledge. FED. R. EVID. 602. | pension of $20,000. AD Ex. H. They were not paid "millions of dollars."<br><br>Warner Communications' supposed "gesture of goodwill" in and after 1975 is not evidence that DC did not mistreat Siegel and Shuster prior to 1975.<br><br>**Objections to DC's Evidence:** DC's statement that "Siegel and Shuster, and their heirs, … were given millions of dollars in recognition of Siegel's and Shuster's contributions" is unsupported by the purported evidence DC cites. It is also ***irrelevant***. Fed. R. Evid. 401, 403. |
| **19.** | **Defendants' Fact:** Thereafter, on December 23, 1975, Warner Communications, Inc. (DC's Parent), entered into an agreement with Siegel and Shuster (the "1975 Agreement"). | **Defendants' Evidence:** AD Ex. H. |
| | **DC's Response: Undisputed**<br><br>DC addressed DSUF 19 in responding to DSAUF 58. Docket No. 471 at 49-51. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| **20.** | **Defendants' Fact:** The 1975 Agreement provided Siegel and Shuster with a modest pension. | **Defendants' Evidence:** AD Ex. H at 118. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 20 in responding to DSAUF 58. Docket No. 471 at 49-51.<br><br>The Court rightly ruled in its tentative order: | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | In a 1975 agreement, DC provided Siegel and Shuster with (in today's dollars) lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as 'credits' on new Superman works. Siegel and Shuster acknowledged that DC owned all Superman-related copyrights…. Since 1975, DC has voluntarily increased the annual payments, made periodic cost-of-living adjustments, given special bonuses, and paid to have Siegel, Shuster, and their families travel to Superman-related events.  All told, the Siegels and Shusters have been paid over $4 million under the 1975 agreement, not including medical benefits or bonuses. Tentative at 3. DC disputes the suggestion that the payments DC agreed to make to Siegel and Shuster under the 1975 Agreement were "modest." The 1975 Agreement provided Siegel and Shuster with, in today's dollars, lump sums of | DC disputes this indisputable fact to make improper arguments. DC's citation to a "tentative" ruling is improper and irrelevant. Furthermore, DC has never made "periodic cost-of-living" adjustments for the Shusters.  Joseph Shuster was granted a pension of $20,000 per year in 1975; that amount was never increased despite considerable inflation in the two decades after the 1975 Agreement. DC's remaining contention amounts to wordplay over whether pension benefits, which in Shuster's case was never adjusted for inflation, are "modest" benefits for the creators of Superman, a billion-dollar character/franchise. |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works.  AD Ex. H. | |
| 21. | **Defendants' Fact:**  The 1975 Agreement did not purport to transfer or re-transfer copyrights from Siegel and Shuster to DC. | **Defendants' Evidence:**  AD Ex. H at 117 ¶2, 125 ¶7. |
| | **DC's Response:  Undisputed** for purposes of this motion that the parties have litigated whether the 1975 Agreement "transfer[red] or re-transfer[red] copyrights from Siegel and Shuster to DC." *Siegel I*, 542 F. Supp. 2d at 1132-33. DC addressed DSUF 21 in responding to DSAUF 58.  Docket No. 471 at 49-51. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper.

DC omits that the Court ruled *against* DC on the issue of whether the 1975 Agreement was a "grant" of rights to Superman, that it found the agreement was not a "grant," and that <u>DC did not appeal that ruling</u>.  SUF ¶69. |
| 22. | **Defendants' Fact:**  The 1975 Agreement provided Frank Shuster with a $5,000/year pension if he survived Joe Shuster. | **Defendants' Evidence:**  AD Ex. H at 119. |
| | **DC's Response: Undisputed.**

DC addressed DSUF 22 in responding to DSAUF 49.  Docket No. 471 at 51. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| | **The Death of Joseph Shuster and the 1992 Agreement** | |
| 23. | **Defendants' Fact:**  Joe Shuster died on July 30, 1992. | **Defendants' Evidence:**  AD Exs. K, L. |
| | **DC's Response: Undisputed.**

DC addressed DSUF 23 in responding to DSAUF 60. Docket No. 471 at 51. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper.

DC's gratuitous citation to a "tentative" ruling is improper and irrelevant. |

19
DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | The Court rightly ruled in its tentative order that "Shuster passed away on July 30, 1992." Tentative at 3. | |
| 24. | **Defendants' Fact:** Joe Shuster never served a notice of termination under 17 U.S.C. § 304(c). | **Defendants' Evidence:** FAC at ¶50. |
|     | **DC's Response: Undisputed.** | **Defendants' Reply:** N/A. |
| 25. | **Defendants' Fact:** Joe Shuster left no widow, child, or grandchild. | **Defendants' Evidence:** AD Exs. L, SS at 489:4-9. |
|     | **DC's Response: Undisputed.**<br><br>DC addressed DSUF 25 in responding to DSAUF 60. Docket No. 471 at 51.<br><br>The Court rightly ruled in its tentative order that "Shuster had no wife or child [when he died], and his will named his sister, Jean Peavy, as sole beneficiary and executrix of his estate." Tentative at 3. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC's gratuitous citation to a "tentative" ruling is improper and irrelevant, and Shuster's will does not support the stated fact. |
| 26. | **Defendants' Fact:** Joe Shuster was survived by his siblings, Frank Shuster and Jean Peavy. | **Defendants' Evidence:** AD Ex. L; FAC at ¶51. |
|     | **DC's Response: Undisputed.**<br><br>DC addressed DSUF 25 in responding to DSAUF 60. Docket No. 471 at 51. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 27. | **Defendants' Fact:** Joe Shuster's estate was not probated in 1992-93, as he died with few assets. | **Defendants' Evidence:** AD Ex. M. |
|     | **DC's Response: Disputed.**<br><br>DC addressed DSUF 27 in responding to DSAUF 61. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response**            | **Defendants' Reply** |
|     | Docket No. 471 at 51.<br><br>The Court rightly ruled in its tentative order that "[o]n August 17,1992, Jean filed an affidavit in California state court identifying herself as Shuster's 'successor' and sole heir and requesting that certain property 'be paid, delivered or transferred to her.'" Tentative at 3.<br><br>DC disputes that Shuster had "few assets" when he died. Shuster had 768 shares of Time Warner stock worth approximately $80,000. Moreover, Jean Peavy filed a sworn affidavit in California state court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her." AD Ex. M. | DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>The evidence cited by DC shows **only** that Jean Adele Peavy simply requested that Joe Shuster's shares of Time-Warner stock be transferred to her. DC cites no evidence that any other property, right or interest of Joe Shuster was transferred to Jean Adele Peavy. |
| 28. | **Defendants' Fact:** On October 2, 1992, DC entered into a short agreement with Frank Shuster and Jean Peavy (the "1992 Agreement"). | **Defendants' Evidence:** AD Ex. O. |
|     | **DC's Response: Undisputed** for purposes of this motion that DC entered into an agreement with Frank Shuster and Jean Peavy dated "as of August 1, 1992."<br><br>DC addressed DSUF 28 in responding to DSAUF 66. Docket No. 471 at 53-56. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | The Court rightly ruled in its tentative order:<br><br>Four days after filing her affidavit in the California probate court, Jean wrote to DC, identifying herself as "heir to [Joseph Shuster's] Will" and asking DC to pay Shuster's "final debts and expenses." Defendants attempt, but again fail to dispute this fact by pointing out that Jean actually stated "[a]ny help that Time Warner could give to the family of Joe Shuster to pay his final debts and expenses would be warmly appreciated." In response, DC offered to cover Joe's debts and increase survivor payments to his brother Frank from $5,000 to $25,000 per year. On September 10, 1992, Frank sent a letter to DC's then Executive Vice President, Paul Levitz, stating he was "extremely pleased" with the increased payments and asking, after "discuss[ing] this good news with [Jean]," that payments be made directly to Jean, who would "send [Frank] whatever money [he] wanted as a gift which would not be taxable to [him]." Frank asked if he and Jean could meet with Levitz in | |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | New York to discuss the issue.  Defendants' sole objection to this fact is that it misleadingly fails to include subsequent correspondence.

Paul Levitz dealt with many authors and heirs during his decades at DC.  When DC agreed to grant an author or heir's request for additional money, Levitz would give them this admonition: "this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC."  Levitz reiterated this admonition to Frank and Jean in 1992, who confirmed they understood and agreed.  The parties executed an agreement on October 2, 1992, confirming that DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life.  In exchange, Jean and Frank re granted all of Shuster's rights to DC and vowed never to assert a claim to such rights.

Tentative at 3-4 (citations omitted) | |
| 29. | **Defendants' Fact:**  The 1992 Agreement reads, in full, as follows: | **Defendants' Evidence:**  AD Ex. O. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | This is to confirm our agreement to pay you, collectively, a total of $25,000 a year, payable to Jean Shuster Peavy, commencing August 1, 1992, for as long as either one of you is alive. Such amounts shall be payable in accordance with Warner Communication Inc.'s customary payroll practice and shall be subject to all applicable withholding taxes. If Jean Shuster Peavy shall predecease Frank Shuster, then the foregoing payments shall be made to Frank Shuster for as long as he shall live.<br><br>We ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon. In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.<br><br>If, despite the terms of this | |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
| --- | --- | --- |
| | DC's Response | Defendants' Reply |
| | agreement, either of you assert any such claim of right, for any reason, you agree to refund to us, upon the making of any such assertion, all amounts previously paid to you hereunder, and we will have no obligation to make any further payments under this agreement. We also reserve all of our other rights, remedies and defenses in such an event. If after full consideration of the foregoing, you accept and agree to all of the above, please so indicate by signing below where indicated. | |
| | **DC's Response: Undisputed** that the 1992 Agreement contains the language quoted by defendants.<br><br>DC addressed DSUF 29 in responding to DSAUF 66. Docket No. 471 at 53-56. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 30. | **Defendants' Fact:** On the same day, October 2, 1992, Frank Shuster sent a letter to DC that read as follows:<br><br>In consideration of the agreement dated as of August 1, 1992 between DC Comics, myself and Jean Shuster Peavy, I hereby waive any rights or remedies that I may have under the agreement dated December 23, 1975 between Warner Communications Inc., Jerome Siegel and Joseph Shuster. | **Defendants' Evidence:** AD Ex. N. |
| | **DC's Response: Undisputed** that Frank Shuster sent a letter to DC dated October 2, 1992, which | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|-------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | contains the language quoted by defendants.<br><br>DC addressed DSUF 30 in responding to DSAUF 70.  Docket No. 471 at 57-58. | |
| 31. | **Defendants' Fact:**  Both before and after the 1992 Agreement, DC made it clear that Frank Shuster and Jean Peavy held no Superman rights under the Copyright Act. | **Defendants' Evidence:**  AD Ex. Q. |
|     | **DC's Response:  Disputed.**<br><br>DC informed Jean and Frank that it believed they had no legal right to terminate under the Copyright Act, but Jean and Frank disputed DC's belief.  In the 1992 Agreement, Jan and Frank "*grant[ed] to [DC]* any … copyrights, trademarks, or other property right in any and all work created in whole or in part by [Joe Shuster]…."  AD Ex. O (emphasis added).  Jean and Frank further agreed that the 1992 agreement "fully settles all claims to any payments or other rights or remedies… *whether now or hereafter existing* regarding any copyrights, trademarks, or other property right in any and all work [he] created…."  *Id.*  (emphasis added).  Thus, the  1992 agreement operated to revoke and re-grant all prior grants of Shuster's rights.  Opp. at 2-17; Docket Nos. 458 at 11-12; 468 at | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>The 1992 Agreement does not contain any reference to termination.<br><br>DC offers **no evidence** that puts the stated fact even slightly in dispute, and instead selectively and misleadingly quotes the 1992 Agreement.  DC made it clear to Frank and Jean that they had no termination rights to leverage.  Frank and Jean's alleged (erroneous) beliefs are entirely irrelevant.<br><br>**Objections to DC's Evidence:**  DC's statement that "Jean and Frank disputed DC's belief" that they had no legal right to terminate is unsupported by the purported evidence DC cites.  It is also irrelevant. Fed. R. Evid. 401.  DC's statement that "the 1992 agreement operated to revoke and re-grant all prior |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | 2-5; *see also Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042-45 (9th Cir. 2005); *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200-04 (2d Cir. 2008); *Siegel* 364 F. Supp. at 1037. | grants of Shuster's rights" is inadmissible speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702. It is also unsupported by the evidence DC cites. |
| 32. | **Defendants' Fact:** DC denied periodic requests by Frank and Jean for increases in their pension. | **Defendants' Evidence:** AD Exs. P, Q, R. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 32 in responding to DSAUF 77. Docket No. 471 at 62.<br><br>The Court rightly ruled in its tentative order that "[i]n 1993, 1994,1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal right to make such requests, but would pay her a bonus anyway, which she thanked DC for doing." Tentative at 5 (citations omitted).<br><br>DC disputes that the Shuster heirs' requests for additional compensation were "denied." As Paul Levitz's declaration and the parties' correspondence make clear, Jean periodically requested bonuses in addition to her payments under the1992 agreement, and DC paid her | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>DC offers no evidence to contradict the fact that Frank and Jean's requests for increases in their pension (as opposed to periodic "bonuses") were denied.<br><br>DC gave bonuses of $10,000 and twice gave a $25,000 bonus, in 1993 (Docket No. 460-1 at 47-48) and 2001 (Docket No. 460-2 at 250).<br><br>With the 1992 Agreement, Frank and Jean went from a $5,000/year pension to a $25,000/year pension, an increase of $20,000. Jean was 72 years old in |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | bonuses in 1993, 1994, 1995, 1996,1998, 1999, 2000 and 2001. AD Exs. P-S, U-V, X-Y, AA.  In total, DC has paid Jean over $610,000 under the 1992 agreement.  PD Ex. 30 ¶ 9; AD Exs. P-S, U-V, X-Y, AA | 1992, with a life expectancy of 14 years. *See* http://www.ssa.gov/oact/ NOTES/as116/as116_Tbl_6_1990.html #wp1085668.  Thus, for Frank and Jean ***combined***, the net present value of the 1992 Agreement was approximately $165,000, not $610,000.  *See* http://netpresentvaluecalculator.com/ (with an 8% rate).  For Jean, who in 1992 was only entitled to half the pension, the net present value of the 1992 Agreement was $82,500. |
| 33. | **Defendants' Fact:**  DC granted certain requests by Frank and Jean for year-end "bonuses." | **Defendants' Evidence:**  AD Exs. R, S, U, V, X, Y, AA. |
| | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 33 in responding to DSAUF 77.  Docket No. 471 at 62.<br><br>The Court rightly ruled in its tentative order that "[i]n 1993, 1994,1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000. In one instance when Jean asked for a bonus, DC made clear its position that Jean had no legal right to make such requests, but would pay her a bonus anyway, which she thanked DC for doing." Tentative at 5 (citations omitted).<br><br>DC disputes that "certain" requests by Frank and Jean for "bonuses" were granted by DC. Defendants offer no competent | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC only granted bonuses when specifically requested by Jean.  *Id.* |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | evidence to support this claim, as the documents they cite do not show that DC only granted "certain" of Jean's requests. In fact, DC granted all of Jean's requests for bonuses; DC even paid Jean bonuses where she had not previously requested a bonus payment.  PD Ex. 30 ¶ 9; AD Exs. P- S, U-V, X-Y, AA. | |
| 34. | **Defendants' Fact:**  The declaration of Paul Levitz, relied on by DC, does not describe the 1992 Agreement as a revocation or re-grant of Joe Shuster's 1938 Grant or any later Superman grants or suggest that this was ever the parties' intent. | **Defendants' Evidence:**  AD Ex. YY. |
| | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 34 in responding to DSAUF 20, 71. Docket No. 471 at 58.<br><br>The Court rightly ruled in its tentative order: Paul Levitz dealt with many authors and heirs during his decades at DC.  When DC agreed to grant an author or heir's request for additional money, Levitz would give them this admonition: "this agreement would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC." Levitz reiterated this admonition to Frank and Jean in 1992, who confirmed they | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>DC does not and cannot dispute the fact that Paul Levitz **nowhere** describes the 1992 Agreement as a revocation and regrant, and avoids this subject entirely. His "admonition" or legal conclusion – that of a non-lawyer to an adverse party |

| No. | Statement Of Undisputed Fact DC's Response | Defendants' Evidence Defendants' Reply |
|---|---|---|
| | understood and agreed. Tentative at 4.<br><br>DC does not dispute that Levitz's declaration and correspondence do not use the words "revocation" or "re-grant." Levitz's declaration and the parties' contemporaneous conduct and correspondence makes clear, however, the "parties' intent" was for the 1992 Agreement to "represent [the Shuster heirs'] last and final deal with DC, and would resolve any past, present, or future claims against DC," PD Ex. 30 ¶ 8. As shown in DC's summary judgment briefing (both its own motion and its opposition to defendants' cross-motion), this was fully consistent with the New York law governing superseding agreements. Docket Nos. 458 at 13-14, 468 at 2-4; Opp. at 2-17.<br><br>And as is clear from this discussion, defendants improperly use their DSUF to make merits-based arguments, which needed to be made in their 25-page motion, and are baseless in any event. Opp. at 2-17; Docket Nos. 458 at 13-15; 468 at 2-4. | – is irrelevant to whether or not the 1992 Agreement was a "revocation and regrant" under *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005).<br><br>Unlike DC here, Defendants did not make a "merits" argument in their statement of facts. They simply set forth the fact (which was also in their brief, *see* Motion at 16) that Levitz's declaration conspicuously did not state that the 1992 Agreement was intended to revoke Joe Shuster's operative Superman grants nor regrant Joe Shuster's Superman copyrights to DC.<br><br>**Objections to DC's Evidence:** DC's statement that "Levitz's declaration and the parties' contemporaneous conduct and correspondence makes clear" the parties' intent about the 1992 Agreement is inadmissible speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702. It is also unsupported by the purported evidence DC cites. |
| 35. | **Defendants' Fact:** The 1992 Agreement does not remotely resemble DC or Warner's customary rights agreements. | **Defendants' Evidence:** AD Exs. O, J, W, BB. |
| | **DC's Response: Disputed**.<br><br>DC addressed DSUF 35 in | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response                | Defendants' Reply    |

responding to DSAUF 76. Docket No. 471 at 61-62.

Other of DC's rights agreements are shorter, including the 1938 Superman grant, AD Ex. A, and defendants offer no facts, documents, or testimony to support this assertion. Defendants' legal arguments— improperly masquerading as factual ones—also run directly contrary to well- established copyright law.  "If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so.  It doesn't have to be the Magna Charta; *a one-line pro forma statement will do*."  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) (emphasis added).

Objections to Defendants' Evidence:

Defendants offer no competent evidence to support this claim, as shown in DC's concurrently filed Objections at pages 4-6.

The three contracts defendants cite can and should be stricken for lack of foundation or connection to the facts at issue in this case, FED. R. EVID. 602, and disregarded on relevance

this.

DC's attempt to incorporate its response to a separate motion is improper.

DC disputes this indisputable fact to make improper arguments.

The 1992 Agreement unambiguously contains no revocation or cancellation of Joseph Shuster's 1938 Grant to DC of his Superman copyrights nor any subsequent pre-1978 grants (AD Exs. A, D), without resort to extrinsic evidence.  However, as DC proffered extrinsic evidence (*e.g.*, the Levitz Declaration), Defendants have done so as well.

It is established above that Jean Peavy and Frank Shuster owned no Superman copyrights as these had long ago been assigned by Siegel and Shuster to DC, and that accordingly, the 1992 Agreement contained only a standard quitclaim.  AD Ex. O.  The evidence cited was offered to show that this perfunctory language is inconsistent with DC's and the entertainment industry's established "custom and practice" for clear copyright grants, and that DC/Warner Bros. would never have relied on this if their intention was to replace the 1938 Grant, as DC claimed for the first time in this lawsuit.

The 1938 Grant was upheld  in two

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | grounds, FED. R. EVID. 401. The contracts in AD Exs. J, W, and BB involve different parties, different rights, and different properties than those at issue in this case, and were entered into almost a decade after the 1992 Agreement. AD Ex. J (DC Comics-Swampfilms, Inc.; Swamp Thing; 1980); W (Warner Bros.-Hasbro; option; G.I. Joe; 1998); BB (Warner Bros.-Edgar Rice Burroughs, Inc.; option; Tarzan; 2002). AD Exs. J, W, and BB are not habit evidence under FED. R. EVID. 406, because the documents do not show "a frequency of specific conduct sufficient to be considered semiautomatic." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1294 (7th Cir. 1988); *see U.S. v. West*, 22 F.3d 586, 592 (5th Cir. 1994) (rejecting Rule 406 argument where evidence not numerous enough in relation to defendants' thousands of other dealings); *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir. 1985) (explaining that experience of one contractor not sufficient evidence of routine practice in light of different experiences of thousands of other contractors who had dealt with same party).<br><br>AD Exs. J, W, and BB are also inadmissible character evidence. | Court judgments (*see Siegel v. Nat'l Periodical Publications, Inc.*, 508 F.2d 909, 912 (2d Cir. 1974)) as providing DC with all rights to Siegel and Shuster's original Superman character/story, from which all other Superman works are derived. If this and any other pre-1978 Grants were replaced by the 1992 Agreement, that would make the 1992 Agreement the chain-of-title foundation for DC/Warner Bros. multi-billion dollar Superman franchise.<br><br>This *custom and practice* evidence, comprised of DC/Warner Bros.' copyright assignments both ***before and after*** the 1992 Agreement is offered to give the Court a glimpse of what a real copyright assignment agreements usually look like in the industry. It presents a strong inference that the 1992 Agreement was intended (as is apparent from the face of the document) to raise Frank and Jean's modest pension and to include a standard quitclaim of Frank and Jean's rights, if any, and that it was <u>never</u> intended to replace DC's longstanding chain-of-title to Superman, as DC now argues.<br><br>DC's evidentiary objections are addressed in Defendants' concurrently-filed Responses to Evidentiary Objections. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | "Evidence of a[n] … other act is not admissible to prove … that on a particular occasion the person acted in accordance." FED. R. EVID. 404(b).  Defendants identify no exception for this rule "prohibit[ing] 'other acts' evidence for the purpose of showing action in conformity therewith." *U.S. v. Redlightning*, 624 F.3d 1090, 1120-21 (9th Cir. 2010). | |
| 36. | **Defendants' Fact:**  DC did not file the 1992 Agreement with the U.S. Copyright Office, even though it is DC's customary practice to record real copyright assignments. | **Defendants' Evidence:**  AD at ¶54, Ex. T. |
|     | **DC's Response:  Disputed**.<br><br>DC addressed DSUF 36 in responding to DSAUF 74. Docket No. 471 at 60-61.<br><br>Defendants omit that DC has not registered many of its other copyright grants with the Copyright Office, as registration is not required. Pub. L. No. 100-568, 102 Stat. 2853, 2857, 2861 (1988); *R&R Recreation Prods., Inc. v. Joan Cook Inc.*, 1992 WL 88171, at *4 (S.D.N.Y. Apr. 14, 1992).<br><br>DC recorded the 1948 Consent Judgment with the Copyright Office in June 1965, in response to Siegel and Shuster filing copyright renewal notices for | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC cannot dispute that it did not file the 1992 Agreement with the Copyright Office.<br><br>DC also offers no evidence to contradict the fact that, c. 1992, it was customary for DC to register its chain-of-title copyright assignments with the Copyright Office, so as to "give[] all persons constructive notice of the facts |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | *Action Comics #1*.  PD Ex. 24 at 615.  DC never recorded the 1938 grant or 1975 agreement. *Id.*<br><br>Objections to Defendants' Evidence:<br>AD Ex. T is inadmissible hearsay. given the theory of relevance.  FED. R. EVID. 801, 802; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 880 n.3 (9th Cir. 2005). Defendants offer this report solely for the truth of the matters contained therein to support their claim that unlike DC's purported customary practice concerning copyright assignments, DC did not record the 1992 Agreement. Defendants cannot and do not identify any hearsay exception or other basis that would justify admission of the hearsay report. *E.g.*, *Twardowski v. Am. Airlines*, 535 F.3d 952, 961 (9th Cir. 2008); *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001); *Scott v. Ross*, 140 F.3d 1275,1286 (9th Cir. 1998); *Larez v. City of Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991).<br><br>It is also not remotely "custom" evidence, given that it is unsupported by any testimony or evidence laying foundation for the report, its relevance, or why and how it is germane to DC. | stated in the recorded document…."  17 U.S.C. § 205(c). That DC was not "required" to do so is irrelevant.<br><br>The Thompson & Thompson report regarding Superman (Ex. T) shows that DC could and did record **many** of its Superman-related documents with the Copyright Office, particularly over the last two decades.<br><br>DC raises objections to the Thompson & Thompson report attached as AD Ex. T, but nevertheless attaches its own Thompson & Thompson report as PD Ex. 24.  As set forth in Defendants' Responses to DC's Evidentiary Objections, Ex. T is admissible. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | This legal argument—improperly masquerading as a factual one—runs directly contrary to well-established copyright law that parties like DC need not record such agreements. Pub. L. No. 100-568, 102 Stat. 2853,2857, 2861 (1988); *R&R Recreation Prods.*, 1992 WL 88171, at *4.<br><br>The report is not habit evidence under FED. R. EVID. 406, because it does not show "a frequency of specific conduct sufficient to be considered semiautomatic." *Simplex,* 847 F.2d at 1294; *see West*, 22 F.3d at 592; *G.M. Brod & Co.*, 759 F.2d at 1533.<br><br>It also is inadmissible character evidence.  FED. R. EVID. 404(b); *Redlightning*, 624 F.3d at 1120-21. | |
| 37. | **Defendants' Fact:**  DC has consistently relied on the 1938 Grant for it chain-of-title to Superman, as the 1938 Grant was held in *both* the 1947 Action and the 1974 Action to have granted DC's predecessor all rights in Siegel and Shuster's Superman character and story. | **Defendants' Evidence:**  AD Exs. C at 87, T, NN at 417-18 ¶38, OO at 439 ¶38, PP 448 ¶12, 450 ¶17; *Siegel*, 508 F.2d at 912-913. |
| | **DC's Response:  Disputed.**<br><br>DC does not dispute for purposes of this motion that the 1938 Grant was held in the 1974 Action "to have granted DC's predecessor all | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |

rights in Siegel and Shuster's Superman character and story."

Defendants again mischaracterize the 1947 Action and its outcome. In 1947, a referee issued an opinion holding that the parties' 1938 agreements were valid and that Siegel and Shuster assigned "all" of their Superman rights to DC. DC filed a notice of appeal, but the parties ultimately entered into a stipulation and consent judgment in1948 in which Siegel and Shuster (1) acknowledged that they transferred to DC all rights in Superman and (2) agreed that DC was the sole and exclusive owner of all rights in Superman and Superboy. AD Ex. E.

DC disputes the suggestion that DC has relied solely on the 1938 Grant for its "chain-of-title to Superman." Defendants offer no competent evidence to support this claim. Defendants cite the referee's opinion in the 1947 Action, which was vacated "in all respects" by the 1948 Consent Judgment. AD Ex. E at 105. Defendants also cite to that portion of the court's decision in the 1974 Action that describes the 1947 Action and 1948 Consent Judgment. Defendants cite an inadmissible "Copyright Research Report," which does not address DC's chain-of-title claims to

response to a separate motion is improper.

DC disputes this indisputable fact to make improper arguments. Yet, DC admits that the 1938 Grant was held in the 1947 Action and the 1974 Action to have assigned all of Siegel and Shuster's Superman rights to DC.

DC also cannot dispute that it has always relied on the 1938 Grant as the foundation for its chain-of-title to Superman.

The evidence cited by Defendants includes pleadings where DC directly alleges that its chain-of-title to Superman rests on the 1938 Grant and other pre-1978 agreements, while DC makes no mention whatsoever of the 1992 Agreement.

DC offers **no evidence** to support its knowingly false assertion that it has "long relied" on the 1992 Agreement for its chain-of-title to Superman. The sole supposed evidence cited by DC is the vague Bonesteel Declaration, referring to an unidentified, unspecified and unproduced communication "dealing with a foreign government."

Tellingly, even this is not attached to the declaration, rendering its vague statements entirely suspect. *See* Defendants' concurrently-filed Evidentiary Objections re: Undisputed Fact 37.

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | Superman—the report contains only information concerning recorded documents in "the records of the Copyright Office." AD Ex. T.  Defendants also cite paragraph 38 of the Siegels' Third Amended Complaint in the *Siegel* action, which concerns the December 23, 1975, agreement Siegel and Shuster entered into with DC, and DC's answer to paragraph 38.  *Id.* Exs. NN at 417-18 ¶ 38; OO at 439 ¶ 38.  Defendants finally cite to DC's Second Amended Counterclaims in the *Siegel* action, which provide historical background relevant to the claims in that action.

Moreover, DC has long relied on the 1992 Agreement as establishing its ownership of Shuster's copyrights in Superman.  *See* Declaration of Damon Bonesteel ("BD") ¶ 3.

Objections to Defendants' Evidence:
AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 36. | That DC could come up with only this **one** suspect reference to the 1992 Agreement in two decades, (1) belies DC's claim that the 1992 Agreement replaced its operative pre-1978 Superman grants and supposedly constitutes DC's chain-of-title to Superman; and (2) supports Defendants' assertion that the 1992 Agreement was intended to raise Frank and Jean's pension and is largely irrelevant to Superman.

DC raises objections to the Thompson & Thompson report attached as AD Ex. T, but nevertheless attaches its own Thompson & Thompson report as PD Ex. 24.  As set forth in Defendants' Responses to DC's Evidentiary Objections, Ex. T is admissible.

**Objections to DC's Evidence:**  The Declaration of Damon Bonesteel is inadmissible under Fed. R. Evid 1002, 1004 (best evidence rule) Fed. R. Evid. 801, 802 (hearsay), and Fed. R. Civ. P. 37(c)(1) (failure to produce). DC's statement that it "has long relied on the 1992 Agreement as establishing its ownership of Shuster's copyrights in Superman" is unsupported by the purported evidence DC cites. |
| 38. | **Defendants' Fact:**  The 1975 Agreement contained an express acknowledgment by Siegel and Shuster that DC already owned *all rights* to Superman. | **Defendants' Evidence:**  AD Ex. H at 117 ¶2, 125 ¶7. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | **DC's Response: Undisputed** that the 1975Agreement states that DC "both immediately before and immediately after the signing of this agreement, is the sole and exclusive owner of all right, title and interest in and to the 'Superman' concept, idea, continuity, pictorial representation formula, characters, cartoons and comic strips, title, logo, copyrights and trademarks, including any renewals and extensions of any such rights…." AD Ex. H at 117 ¶ 2.<br><br>DC addressed DSUF 38 in responding to DSAUF 58. Docket No. 471 at 49-51. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 39. | **Defendants' Fact:** Outside of and before filing this lawsuit in 2010, attacking the Shuster Termination (described below), DC has not claimed or suggested that the 1992 Agreement is the basis for its chain-of-title to Superman. | **Defendants' Evidence:** AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 450 ¶17, ZZ at 752-54. |
|     | **DC's Response: Disputed.**<br><br>DC addressed DSUF 39 in responding to DSAUF 74. Docket No. 471 at 60.<br><br>Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement is the basis | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>The cited evidence includes pleadings where DC directly alleges that its chain-of-title to Superman rests on agreements other than the 1992 |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | for its chain- of-title to Superman." *See* DC's Response to DSUF 15.  Defendants also cite to DC's response and objections to defendant Mark Warren Peary's Interrogatory No. 5, which identified all communications that referred to the 1992 Agreement—not what served as the basis for DC's chain-of-title to Superman. AD Ex. ZZ at 752-54. Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's Superman copyrights.  BD ¶ 3.<br><br>Objections to Defendants' Evidence: AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *supra* DC's Response to DSUF 36. | Agreement, and where DC makes no mention of the 1992 Agreement.<br><br>DC, in response to Warren Peary's Interrogatory No. 5 (AD Ex. ZZ at 752-54) refused to identify **any** communication with a third-party where it even referred to the 1992 Agreement.  If DC cannot identify any such communications, it obviously did not rely on the 1992 Agreement to establish its chain-of-title in dealing with third-parties.<br><br>The only evidence cited by DC is the vague Bonesteel declaration, referring to an unproduced communication as to an unspecified "dealing with a foreign government," addressed in Paragraph 37, *supra*.  This thin, isolated offering does more to support Defendants' uncontroverted fact than to refute it.<br><br>DC raises objections to the Thompson & Thompson report attached as AD Ex. T, but nevertheless attaches its own Thompson & Thompson report as PD Ex. 24.  As set forth in Defendants' Responses to DC's Evidentiary Objections, Ex. T is admissible.<br><br>**Objections to DC's Evidence:** The Declaration of Damon Bonesteel is inadmissible under Fed. R. Evid 1002, 1004 (best evidence rule) Fed. R. Evid. 801, 802 (hearsay), and Fed. R. Civ. P. 37(c)(1) (failure to produce). |
| 40. | **Defendants' Fact:**  Outside of and before filing this lawsuit in 2010, | **Defendants' Evidence:**  AD Exs. T, NN at 417-18 ¶38, OO at 439  ¶38, PP |

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| No. | DC's Response | Defendants' Reply |
| | attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement revoked or extinguished the 1938 Grant or any other Superman grants by Joseph Shuster. | at 448 ¶12, 450 ¶17, ZZ at 752-54. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 40 in responding to DSAUF 74. Docket No. 471 at 60.<br><br>Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement revoked or extinguished the 1938 Grant or any other Superman grants by Joseph Shuster." *See* DC's Response to DSUF 39.<br><br>Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's Superman copyrights. BD ¶ 3.<br><br>Objections to Defendants' Evidence:<br><br>AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *see supra* DC's Response to 36. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>The cited evidence includes pleadings where DC directly alleges that its chain-of-title to Superman rests on agreements other than the 1992 Agreement, and where DC makes no mention of the 1992 Agreement.<br><br>DC, in response to Warren Peary's Interrogatory No. 5 (AD Ex. ZZ at 752-54) refused to identify **any** communication with a third-party where it even referred to the 1992 Agreement.  If DC cannot identify any such communications, it obviously did not rely on the 1992 Agreement to establish its chain-of-title in dealing with third-parties.<br><br>The only evidence cited by DC is the vague Bonesteel declaration, referring to an unproduced communication as to an unspecified "dealing with a foreign government," addressed in Paragraph |

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | Lack of foundation.  Lack of personal knowledge.  FED. R. EVID. 602. | 37, *supra*.  This thin, isolated offering does more to support Defendants' uncontroverted fact than to refute it.<br><br>DC raises objections to the Thompson & Thompson report attached as AD Ex. T, but nevertheless attaches its own Thompson & Thompson report as PD Ex. 24.  As set forth in Defendants' Responses to DC's Evidentiary Objections, Ex. T is admissible.<br><br>**Objections to DC's Evidence:** The Declaration of Damon Bonesteel is inadmissible under Fed. R. Evid 1002, 1004 (best evidence rule) Fed. R. Evid. 801, 802 (hearsay), and Fed. R. Civ. P. 37(c)(1) (failure to produce). |
| **41.** | **Defendants' Fact:**  Outside of and before filing this lawsuit in 2010, attacking the 2003 Shuster Termination, DC has not claimed or suggested that the 1992 Agreement re-granted it Joseph Shuster's Superman copyrights. | **Defendants' Evidence:**  AD Exs. T, NN at 417-18 ¶38, OO at 439 ¶38, PP at 448 ¶12, 450  ¶17,  ZZ at 752-54. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 41 in responding to DSAUF 74.  Docket No. 471 at 60.<br><br>Defendants offer no competent evidence to support this claim, as the documents they cite do not contain any evidence that prior to "filing this lawsuit in 2010 … DC has not claimed or suggested that the 1992 Agreement re-granted it Joseph Shuster's Superman | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>The cited evidence includes pleadings where DC directly alleges that its chain-of-title to Superman rests on agreements other than the 1992 Agreement, and where DC makes no |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | copyrights." *See* DC's Response to DSUF 39.<br><br>Moreover, years before filing this lawsuit in 2010, Warner Bros. relied upon the 1992 Agreement to establish its ownership of Shuster's Superman copyrights.  BD ¶ 3.<br><br><u>Objections to Defendants' Evidence:</u><br><br>AD Ex. T does not prove this asserted fact and is inadmissible hearsay.  FED. R. EVID. 801, 802; *see supra* DC's Response to DSUF 36.<br><br>Lack of foundation.  Lack of personal knowledge.  FED. R. EVID. 602. | mention of the 1992 Agreement.<br><br>DC, in response to Warren Peary's Interrogatory No. 5 (AD Ex. ZZ at 752-54) refused to identify **any** communication with a third-party where it even referred to the 1992 Agreement.  If DC cannot identify any such communications, it obviously did not rely on the 1992 Agreement to establish its chain-of-title in dealing with third-parties.<br><br>The only evidence cited by DC is the vague Bonesteel declaration, referring to an unattached communication as to an unspecified "dealing with a foreign government," addressed in Paragraph 37, *supra*.  This thin, isolated offering does more to support Defendants' uncontroverted fact than to refute it.  *See* Defendants' concurrently-filed Evidentiary Objections re: Undisputed Fact 37.<br><br>DC raises objections to the Thompson & Thompson report attached as AD Ex. T, but nevertheless attaches its own Thompson & Thompson report as PD Ex. 24.  As set forth in Defendants' Responses to DC's Evidentiary Objections, Ex. T is admissible.<br><br>**Objections to DC's Evidence:** The Declaration of Damon Bonesteel is inadmissible under Fed. R. Evid 1002, 1004 (best evidence rule) Fed. R. Evid. 801, 802 (hearsay), and Fed. R. Civ. P. 37(c)(1) (failure to produce). |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | | |
| 42. | **Defendants' Fact:** DC's 2005 letter to Mark Warren Peary and Jean Adele Peavy, which discussed and offered to settle the 2003 Shuster Termination does not even mention the 1992 Agreement. | **Defendants' Evidence:** AD Ex. HH. |
| | **DC's Response: Disputed.**<br><br>Defendants offer no competent evidence to support this claim. Defendants cite an inadmissible 2005 settlement communication sent by Paul Levitz to the Shuster heirs — in an effort to avoid litigation— which disputed the Shusters' termination claim.<br><br>Defendants erroneously describe the letter, which challenges the Shusters' termination notice, as Toberoff expressly acknowledged in a letter in response. Docket No. 463-3 at 275.<br><br>Objection to Defendants' Evidence: AD Ex. HH does not prove this asserted fact, and, in any event, it is a settlement offer, which is inadmissible for the use defendants seek to make of it. FED. R. EVID. 408; FED. R. CIV. P. 56(c)(2); *e.g.*, *U.S. v. Whitney*, 180 Fed. Appx. 670, 673 (9th Cir. 2006); *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213-14 (9th Cir. 1990). | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments. DC does not and cannot dispute that DC's 2005 letter to the Shuster Executor, Mark Warren Peary, does not even mention the 1992 Agreement.<br><br>As set forth in Defendants' Responses to DC's Evidentiary Objections, DC's 2005 letter is admissible because it is not offered to prove liability. Fed. R. Evid. 408. Moreover, DC should not be heard to complain because it previously put the Shuster Executor's response to DC's 2005 letter into evidence and used it as an exhibit to question witnesses at deposition. *E.g.,* Docket No. 93-4; Docket 305-59 at 2113:25-2114:2, 2115:1-2.<br><br>Defendants correctly described the 2005 letter and DC offers no evidence or argument to support its conclusory |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | **DC's Response** | **Defendants' Reply** |
| | | statement that Defendants did not do so. |
| | **The Establishment of the Shuster Estate** | |
| 43. | **Defendants' Fact:**  Mark Warren Peary is Joe Shuster's nephew. | **Defendants' Evidence:**  AD Ex. CC at 315. |
| | **DC's Response:  Undisputed.**<br><br>DC addressed DSUF 43 in responding to DSAUF 64.  Docket No. 471 at 52-53. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| 44. | **Defendants' Fact:**  On July 15, 2003, Mr. Peary petitioned the Los Angeles Superior Court to probate Joe Shuster's estate. | **Defendants' Evidence:**  AD Ex. CC. |
| | **DC's Response:  Undisputed** for purposes of this motion that in 2003, Shuster's nephew Mark Warren Peary initiated proceedings in Los Angeles Superior Court to probate Shuster's estate— even though in 1992, his mother Jean Peavy had already filed an affidavit in California probate court to obtain all of Shuster's assets. Adams Decl. Ex. M.<br><br>DC addressed DSUF 44 in responding to DSAUF 64.  Docket No. 471 at 52-53. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC willfully mischaracterizes Jean Peavy's 1992 affidavit as "to obtain all of Shuster's assets."  Jean Peavy's affidavit asked **only** that Joseph Shuster's shares of Time-Warner stock be transferred to her.  It did not request the transfer of any other assets, rights or powers of Joseph Shuster.  AD Ex. M. |
| 45. | **Defendants' Fact:**  Joe Shuster's will nominated Jean Adele Peavy to be the executrix, and nominated Mr. Peary to be the executor of his estate in the event Jean declined to serve. | **Defendants' Evidence:**  AD Ex. CC at 315. |
| | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 45 in responding to DSAUF 63. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. |

44

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | Docket No. 471 at 52.<br><br>The Court rightly ruled in its tentative order that "Shuster had no wife or child, and his will named his sister, Jean Peavy, as sole beneficiary and executrix of his estate. … On August 17, 1992, Jean filed an affidavit in California state court identifying herself as Shuster's 'successor' and sole heir and requesting that certain property 'be paid, delivered or transferred to her.'" Tentative at 3.<br><br>Shuster's will uses the words "unable" or "unwilling"—*not* "declined," as defendants falsely state in DSUF 45. The will states: "I give, devise and bequeath unto JEAN ADELE PEAVY all of the rest, residue and remainder of my estate …. In the event that Jean Adele Peavy shall predecease me, or in the event that both Jean Adele Peavy and I shall die as a result of a common accident, illness or disaster, then I give, devise and bequeath the residue and remainder of my estate to my nephew, Mark Warren Peary. I hereby nominate and appoint my sister, Jean Adele Peavy, executrix of this my Last Will and Testament, to act without | DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's citation to a "tentative" ruling is improper and irrelevant.<br><br>DC's response boils down to false wordplay that there is a meaningful difference between being "unwilling" to serve as executor and "declining" to serve as executor.<br><br>DC does not and cannot dispute that Jean Peavy, who was then 82 years old, declined to serve as executor in a Declination to Act as Personal Representative, duly filed with the Los Angeles Superior Court probating Joseph Shuster's will. AD Ex. CC at 320-21. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|----------------------------------------------|------------------------------------------|
|     | bond.  In the event that my sister is for any reason <u>unable or unwilling</u> to act as executrix hereof, I nominate and appoint Mark Warren Peary to act as executor, also without bond." AD Ex. CC at 286 (underlining added). |                                          |
| 46. | **Defendants' Fact:** Jean Adele Peavy, who was then 82 years old, declined to serve as executor of the estate of Joseph Shuster. | **Defendants' Evidence:**  AD Ex. CC at 320-21. |
|     | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 46 in responding to DSAUF 64. Docket No. 471 at 52-53.<br><br>The facts do not support that Jean declined to serve because she was 82 in 2003.  Peary testified Jean was "competent" and "had the ability to serve as an executor" in 2003, and that Jean never said she was "unable or unwilling to serve."  Docket No. 305-37 at 1286:1-3, 1374:17-1375:4. Peary also admitted:  "I'm the one that has initiated the whole -- the whole project.  I've been involved in it with Toberoff from the beginning and I'm active and knowledgeable on it."  *Id.* at 1374:20-25.  Peary did this without "any discussion" with Jean, and Jean confirmed in 2006: "I don't know what's going on" with Shuster's "estate."  Docket | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>Jean expressly declined to serve as executor in a Declination to Act as Personal Representative, duly filed with the Los Angeles Superior Court probating Joseph Shuster's will, which stated the following:  "I hereby decline to serve as personal representative of the decedent's estate, whether as Executor of decedent's Will or Administrator of his estate."  AD Ex. CC at 320-21.<br><br>DC does not dispute that Jean Peavy was 82 at the time she understandably |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | No. 305-59 at 2107:10-13. | declined to serve as executor. |
| **47.** | **Defendants' Fact:** On October 7, 2003, the Los Angeles Superior Court therefore appointed Mr. Peary as executor (the "Shuster Executor") of the estate of Joseph Shuster (the "Shuster Estate") in accordance with his will. | **Defendants' Evidence:** AD Ex. DD at 327. |
| | **DC's Response: Disputed**.<br><br>DC addressed DSUF 47 in responding to DSAUF 65. Docket No. 471 at 53.<br><br>DC does not dispute for purposes of this motion that in 2003, a Los Angeles Superior Court appointed Peary to serve as executor of Shuster's estate.<br><br>DC disputes the suggestion that the probate court appointed Peary executor in accordance with Shuster's will or because Jean declined to act in that capacity. Peary asked the probate court to appoint him executor in place of his mother, AD Ex. CC—and has chosen not to close the probate matter or distribute the Estate's assets to Jean, as Shuster's will and California law require, because Peary and Toberoff wish to persist in making their improper shell-game argument that the Shuster "executor" never signed the 1992 Agreement, and | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>Contrary to DC's assertions, Jean never told the "California courts" that she was the "executor of [Shuster's] estate" in 1992. Opp. 16. DC irresponsibly accuses Peary of some sinister plot for serving as the executor (Opp. 16-17), when Shuster's will names him as the alternate executor.<br><br>Jean expressly declared in a Declination to Act as Personal Representative, duly filed with the Los Angeles Superior Court probating Joseph Shuster's will, as follows: "I hereby decline to serve as personal representative of the decedent's estate, whether as Executor of decedent's Will |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | thus the Shuster executor is not bound by it.  Opp. at 2-17; Docket Nos. 186 at 13; 334 at 9-10, 12-13; 334 at 9-10; 458 at 8, 15; 459-3 at 289-90; 468 at 7-8. | or Administrator of his estate."  Ex. CC at 320-21.<br><br>Joseph Shuster's will clearly and explicitly stated that Mr. Peary was to act as executor, if Jean declined to serve, and the Los Angeles Superior Court duly appointed Mr. Peary as the executor in accordance with Joseph Shuster's will.  AD Ex. DD.<br><br>DC's frivolous accusation that this is an improper "shell game" is unsupported by any evidence.<br><br>There, again, is no basis for DC's frivolous assertion that the Shuster Executor, Mr. Peary "has chosen not to close the probate matter or distribute the Estate's assets to Jean, as Shuster's will and California law require."  The Joseph Shuster Estate has remained open, with the permission of the Los Angeles Superior Court, "to terminate prior transfers of the decedent's copyright(s) pursuant to Section §304(d) of the United States Copyright Act … <u>and to maintain and defend on behalf of the decedent and the estate all proceedings necessary or appropriate in connection with this action</u>." AD Ex. DD at 327 (emphasis added).<br><br>The Shuster termination does not take effect until October 26, 2013.  AD Ex. FF at 343.  In addition, the Estate must remain open because the copyrights to be recovered pursuant to termination cannot be transferred to the Estate's |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|-----|-----|
| | | beneficiaries prior to the effective date of the Termination.  17 U.S.C. § 304(c)(6)(D).<br><br>**Objections to DC's Evidence:**  DC's statement that Peary has "chosen not to close the probate matter or distribute the Estate's assets to Jean, as Shuster's will and California law require, because Peary and Toberoff wish to persist in making their improper shell-game argument that the Shuster 'executor' never signed the 1992 Agreement" lacks foundation, and amounts to inadmissible speculation, argument, and legal conclusion.  Fed. R. Evid. 602, 701, 702.  It is also unsupported by the purported evidence cited by DC. |
| 48. | **Defendants' Fact:**  The Shuster Executor's powers expressly included the "power … to terminate prior transfers of [Joseph Shuster's] copyrights pursuant to [17 U.S.C.] § 304(d)." | **Defendants' Evidence:**  AD Ex. DD at 327. |
| | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 48 in responding to DSAUF 65.  Docket No. 471 at 54.<br><br>DC disputes the claim that the Los Angeles Superior Court "expressly included the 'power … to terminate" under the Copyright Act.  The probate court merely granted Peary's request to be appointed executor so he could serve copyright termination notices on behalf of the Shuster | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not and cannot dispute the **fact** that the Los Angeles Superior Court granted Mr. Peary the authority, |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|----------------------------------------------|------------------------------------------|
| | estate.  The state court did not resolve the threshold copyright issues at the center of DC's First Claim, nor did Peary ask it to.  *Cf. Orr v. Orr*, 440 U.S. 268, 277 n.7 (1979) ("a state court cannot confer standing before this Court on a party who would otherwise lack it"); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (state court action "cannot retroactively confer standing in federal court").  As explained in DC's motion, Peary has no "power" to terminate.  Docket Nos. 458 at 21-23; 468 at 9-10. | as the duly appointed Executor of the Shuster Estate, to serve its notice of termination pursuant to 17 U.S.C. § 304(d).<br><br>**Objections to DC's Evidence:**  DC's statement that "Peary has no 'power' to terminate" is inadmissible speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702.  It is also unsupported by the purported evidence cited by DC. |
| | **The Shuster Executor's Notice of Termination** | |
| 49. | **Defendants' Fact:**  On or about November 10, 2003, the Shuster Executor served a notice of termination under 17 U.S.C. § 304(d) on DC as to Joe Shuster's grants of Superman copyrights (the "Shuster Termination"). | **Defendants' Evidence:**  AD Ex. FF at 346-48. |
| | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 49 in responding to DSAUF 84. Docket No. 471 at 66.<br><br>DC does not dispute for purposes of this motion that "[o]n or about November 10, 2003," a Notice of Termination of Transfer Covering Copyright Renewal Term of "Superman" was served on DC on behalf of the Estate of Joseph Shuster.  DC disputes the | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC's argument that the 1948 Consent Judgment in the 1947 Action was a |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | suggestion that the Shuster Termination seeks to terminate all of Shuster's grants of Superman copyrights.  The Shuster Termination does not seek to terminate the grants contained in the 1948 Consent Judgment and the 1992 Agreement.  AD Ex. FF at 346-48; *see* Docket No. 49 ¶¶ 125-28. | copyright transfer or "grant" was expressly *rejected* by the *Siegel* Court, which held that the 1948 Consent Judgment was not a grant and need not be included in a Superman termination notice, and DC did not appeal that ruling. SUF ¶69; *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW.<br><br>The 1992 Agreement was also not a copyright transfer.<br><br>**Objections to DC's Evidence:**  To the extent that DC's statement that the "Shuster Termination does not seek to terminate the grants contained in the 1948 Consent Judgment and the 1992 Agreement" implies that the Judgment and Agreement were in fact copyright grants, it is inadmissible speculation, argument, and legal conclusion.  Fed. R. Evid. 602, 701, 702.  It is also unsupported by the purported evidence cited by DC. |
| 50. | **Defendants' Fact:**  Per 37 C.F.R. § 201.10(b)(1)(i), the Shuster Termination states that it is "pursuant to Section 304(d) of the United States Copyright Act (17 U.S.C. § 304(d))." | **Defendants' Evidence:**  AD Ex. FF at 338. |
|     | **DC's Response: Undisputed** for purposes of this motion that the Shuster Termination contains the language quoted by defendants. Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion." |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | "undisputed fact." | |
| 51. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(b)(1)(ii), the Shuster Termination lists the name of each grantee whose rights are being terminated, or the grantee's successor in title, and each address at which service of the notice is being made. | **Defendants' Evidence:** AD Ex. FF at 338-40. |
| | **DC's Response: Undisputed** for purposes of this motion that the Shuster Termination lists the stated information. Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion." |
| 52. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(b)(1)(iii), the Shuster Termination lists the following works, their authors (Siegel and Shuster), and their original copyright registration numbers: *Action Comics, No. 1* (B379787), *No. 2* (B379788), *No. 3* (B385466), *No. 4* (B387907), *No. 5* (B394784), *No. 6* (B394866), *No. 7* (B399214); the previously unpublished works underlying such material; and the material reprinted in *Superman No. 1* (A299871) and *No. 3* (B443035). | **Defendants' Evidence:** AD Ex. FF at 340-42. |
| | **DC's Response: Undisputed** for purposes of this motion that the Shuster Termination lists the stated information and that any works not listed were purposely omitted by defendants. Defendants' claim that | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's claim that works were "purposely |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." | omitted" is unsupported by any cited evidence.<br><br>The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion."<br><br>**Objections to DC's Evidence:** DC's statement that "any works not listed [in the Shuster Termination] were purposely omitted by defendants" is unsupported by the purported evidence cited by DC. |
| 53. | **Defendants' Fact:** The relevant published works listed in the Shuster Termination secured statutory copyright between April 18, 1938 and October 25, 1938. | **Defendants' Evidence:** AD Ex. FF at 340-42. |
| | **DC's Response: Undisputed** for purposes of this motion that the Shuster Termination lists works published between April 18, 1938, and October 25, 1938. | **Defendants' Reply:** N/A. |
| 54. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(b)(1)(iv), the Shuster Termination lists the 1938 Grant and subsequent pre-1978 grants or potential grants to which it applies. | **Defendants' Evidence:** AD Ex. FF at 342-43. |
| | **DC's Response: Disputed.**<br><br>DC does not dispute for purposes of this motion that the Shuster Termination lists the 1938 Grant and other pre-1978 grants of Shuster's Superman copyrights. Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion."<br><br>DC disputes this indisputable fact to |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|-----------------------------------------------|------------------------------------------|
|  | improper legal conclusion and not the proper subject of an "undisputed fact." <br><br> Moreover, DC disputes the implication that the Shuster Termination lists all pre-1978 grants of Shuster's Superman copyrights. The Shuster Termination does not seek to terminate the grant contained in the 1948 Consent Judgment.  AD Ex. FF at 342-43; *see* Docket No. 4 ¶¶ 125-28. | make improper arguments. <br><br> DC's argument that the 1948 Consent Judgment in the 1947 Action was a copyright transfer or "grant" was expressly *rejected* by the *Siegel* Court in holding that the 1948 Consent Judgment need not be included in a Superman termination notice, and DC did not appeal that ruling. SUF ¶69; *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW. <br><br> **Objections to DC's Evidence:**  To the extent that DC's statement that the "Shuster Termination does not seek to terminate the grant contained in the 1948 Consent Judgment" implies that the Judgment was a copyright grant, it is inadmissible speculation, argument, and legal conclusion.  Fed. R. Evid. 602, 701, 702.  It is also unsupported by the purported evidence cited by DC. |
| 55. | **Defendants' Fact:**  Per 37 C.F.R. § 201.10(b)(1)(v), the Shuster Termination lists an effective termination date of October 26, 2013. | **Defendants' Evidence:**  AD Ex. FF at 343. |
|  | **DC's Response:  Undisputed.** Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." <br><br> DC addressed DSUF 55 in responding to DSAUF 84.  Docket No. 471 at 66. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion." <br><br> DC's attempt to incorporate its response to a separate motion is |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | | improper. |
| 56. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(b)(1)(vi), the Shuster Termination accurately states the following: "No prior termination of the grants of rights in the copyright of the aforementioned Works for their renewal copyright term has been exercised by the author, Joseph Shuster, or his statutory heirs or representatives pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c))." | **Defendants' Evidence:** AD Ex. FF at 344. |
| | **DC's Response: Disputed.**<br><br>DC does not dispute for purposes of this motion that the Shuster Termination contains the language quoted by defendants, but whether the statement is "accurate[]" is a hotly disputed legal question, at the center of DC's motion for partial summary judgment. Docket Nos. 458 at 10-25; 468 at 8-10. It is improper for defendants to treat such legal questions as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. The reference to federal regulations merely identifies the appropriate regulation that the language responds to and is not a "legal conclusion."<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not and cannot dispute that no prior termination pursuant to 17 U.S.C. § 304(c) was exercised by Joseph Shuster or his statutory heirs or representatives. DC admitted this elsewhere in its opposition. SUF ¶24. |
| 57. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(b)(1)(vii), the Shuster Termination lists Mark Warren Peary, the Shuster Executor, as the | **Defendants' Evidence:** AD Ex. FF at 344. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | person executing the grant and the person entitled to exercise Joe Shuster's termination rights, and the basis for that entitlement. | |
|     | **DC's Response: Disputed.**<br><br>DC addressed DSUF 57 in responding to DSAUF 84. Docket No. 471 at 66.<br><br>The Shuster Termination lists Peary as executor of the Estate of Joseph Shuster, as the person executing the grant, but whether Peary was "entitled to exercise Joe Shuster's termination rights" is a hotly disputed legal question, at the center of DC's motion for summary judgment. Docket Nos. 458 at 10-25; 468 at 8-10. It is improper for defendants to treat such legal questions—whether Peary is "entitled" to exercise the Shuster's putative termination rights—as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion, and not the proper subject of an "undisputed fact." | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. The reference to federal regulations merely identifies the appropriate regulation that the language conforms to and is not a "legal conclusion."<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments. DC does not and cannot dispute that the Shuster Termination contains the relevant language identifying Mr. Peary as the person entitled to exercise Joe Shuster's termination right under the Copyright Act. |
| 58. | **Defendants' Fact:** Per 37 C.F.R. § 201.10(c), the Shuster Termination was signed by Mark Warren Peary, the Shuster Executor, as owner of Joseph Shuster's entire termination interest, accompanied by his | **Defendants' Evidence:** AD Ex. FF at 344. |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|----------------------------------------------|------------------------------------------|
| | typewritten address. | |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 58 in responding to DSAUF 84. Docket No. 471 at 66.<br><br>The Shuster Termination is signed by Peary, as executor of the Estate of Joseph Shuster, but whether the Estate is the "owner of Joseph Shuster's entire termination interest" is a hotly disputed legal question, at the center of DC's motion for summary judgment. Docket Nos.458 at 10-25; 468 at 8-10.  It is improper for defendants to treat such legal questions— whether Shuster's Estate holds a termination interest— as undisputed facts.<br><br>And defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  The reference to federal regulations merely identifies the appropriate regulation that the Shuster Termination followed and is not a "legal conclusion."<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments. DC does not and cannot dispute that the Shuster Termination contains the relevant language identifying Mr. Peary as the person entitled to exercise Joe Shuster's termination right. |
| 59. | **Defendants' Fact:**  Per 37 C.F.R. § 201.10(d), the Shuster Termination was served by first-class mail and sent to addresses which, after a reasonable investigation, were found to be the last known address of the grantee(s) or successor(s) in title. | **Defendants' Evidence:**  AD Ex. FF at 345-48. |
| | **DC's Response: Undisputed** for purposes of this motion that the Shuster Termination makes this | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | representation.  Defendants' claim that the Shusters' termination notice was "per" a federal regulation is an improper legal conclusion and not the proper subject of an "undisputed fact." | this.  The reference to federal regulations merely identifies the appropriate regulation that the Shuster Termination followed and is not a "legal conclusion." |
| 60. | **Defendants' Fact:**  The Shuster Termination was filed and recorded with the United States Copyright Office on December 8, 2003. | **Defendants' Evidence:**  AD Ex. FF at 333-35. |
|     | **DC's Response:  Undisputed.**  DC addressed DSUF 58 in responding to DSAUF 84.  Docket No. 471 at 66. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |
| | **The Siegels' Notices of Termination** | |
| 61. | **Defendants' Fact:**  In 1997, Joanne Siegel and Laura Siegel Larson served and filed notices of termination on DC as to Jerome Siegel's grants of Superman copyrights. | **Defendants' Evidence:**  FAC at ¶67; AD Ex. II at 360. |
|     | **DC's Response:  Disputed.**  DC addressed DSUF 61 in responding to DSAUF 97. Docket No. 471 at 71.  DC admits that Joanne Siegel and Laura Siegel Larson served and filed notices of termination in 1997. Whether the notices were valid, whether DC and the Siegels reached a settlement agreement in 2001, and whether the notices of termination sought to terminate all of Siegel's grants of Superman copyrights, are issues presently | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  DC's attempt to incorporate its response to a separate motion is improper.  DC disputes this indisputable fact to make improper arguments.  DC does not dispute the undisputed facts stated, and improperly attempts to interject purported legal issues. |

| | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| **No.** | **DC's Response** | **Defendants' Reply** |
| | being litigated before the Ninth Circuit in the *Siegel* case. Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49. These are not remotely undisputed facts | |
| **62.** | **Defendants' Fact:** On November 8, 2002, Joanne Siegel and Laura Siegel Larson served notices of termination on DC as to Jerome Siegel's Superboy copyrights. | **Defendants' Evidence:** FAC at ¶86. |
| | **DC's Response: Disputed.**<br><br>DC admits that Joanne Siegel and Laura Siegel Larson served and filed notices of termination in 2002. Whether the notices were valid, whether Superboy is copyrightable, and whether Superboy, if copyrightable, is a joint work by Siegel and Shuster are issues presently being litigated in the *Siegel* case. Case No. CV-04-8400, 04-8776 SGL (RZx), Docket No. 116 at 29-39; *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1155 (C.D. Cal. 2007); 9th Cir. Appeal Nos. 11-55863, 11-56034, Docket No. 31-1 at 72-77. These are not remotely undisputed facts. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not dispute the undisputed facts stated, and improperly attempts to interject purported legal issues.<br><br>DC's argument that Jerome Siegel's original Superboy script that Shuster did not write and did not illustrate is somehow a "joint work" is erroneous. AD Ex. C at 81-83 ¶¶157-64. |
| **63.** | **Defendants' Fact:** Neither Mr. Peary nor Ms. Peavy have any interest in these Superboy notices of termination. | **Defendants' Evidence:** AD Exs. SS at 502-507, TT at 513-518. |
| | **DC's Response: Disputed.**<br><br>Whether the Shusters have *any* interest in the Siegel's Superboy termination notices served in 2002 | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|-----|----------------------------------------------|------------------------------------------|
| | is a hotly disputed factual and legal question in this case. Docket No. 49 ¶¶86-91, 131-33; Opp. at 17-25; *see infra* DC's Statement of Genuine Issues 1-17. It is improper to treat such legal questions as undisputed facts. | DC disputes this indisputable fact to make improper arguments.<br><br>Ms. Larson and Mr. Peary expressly testified in their 2011 depositions that the Shusters had no interest in the Siegels' Superboy notice of termination.<br><br>DC cites **no evidence whatsoever** that the Shusters have any sort of interest in the Siegels' Superboy termination. After nearly eight years of litigation, DC cites only to its own arguments and speculation in its own pleadings and motion papers. |
|  | **The *Siegel* Litigation and Judgment** | |
| 64. | **Defendants' Fact:** In November 2004, the Siegels, represented by Marc Toberoff, filed suit against DC as to Superman (C.D. Cal. Case No. 04-08400) and Superboy (C.D. Cal. Case No. 04-08776) (the "*Siegel* Litigation"). | |
| | **DC's Response: Undisputed** that in 2004, Joanne Siegel and Laura Siegel Larson filed lawsuits concerning copyright termination notices they filed, Case Nos. CV-04-8400, CV-04-8776, and that Toberoff was their counsel of record.<br><br>DC addressed DSUF 64 in responding to DSAUF 98. Docket No. 471 at 72. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 65. | **Defendants' Fact:** In the *Siegel* Litigation, the Court held that the Siegels' notices of termination | **Defendants' Evidence:** *Siegel I*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008). |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | concerning Superman were valid and effective as to Siegel and Shuster's original Superman story published in *Action Comics, No. 1*, and that the Siegels had thereby recovered Jerome Siegel's copyright interest in that Superman story published in *Action Comics, No. 1*. |  |
|     | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 65 in responding to DSAUF 98. Docket No. 471 at 72.<br><br>Whether the Siegels' termination notices concerning Superman were valid and, if so, the scope of the termination notices, are issues presently being litigated before the Ninth Circuit in the *Siegel* case. Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49.  These are not remotely undisputed facts. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC nowhere disputes that Judge Larson in *Siegel* made the stated rulings as affirmed in this Court's Rule 54(b) judgment in *Siegel*.  AD, Ex. QQ. |
| 66. | **Defendants' Fact:**  In 2009, the *Siegel* Court also decided whether Siegel and Shuster's Superman stories published in *Action Comics Nos. 2-7* were "works-for-hire." | **Defendants' Evidence:**  *Siegel v. Warner Bros. Entertainment, Inc.* ("*Siegel II*"), 658 F. Supp. 2d 1036 (C.D. Cal. 2009). |
|     | **DC's Response:  Disputed.**<br><br>DC addressed DSUF 66 in responding to DSAUF 98. Docket No. 471 at 72.<br><br>Whether the Superman stories published in *Action Comics Nos. 2-7* are "works-for-hire" are issues | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | presently being litigated before the Ninth Circuit in the *Siegel* case. Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1, 49. These are not remotely undisputed facts. | DC disputes this indisputable fact to make improper arguments. DC nowhere disputes that Judge Larson in *Siegel* made the stated rulings as affirmed in this Court's Rule 54(b) judgment in *Siegel*. |
| 67. | **Defendants' Fact:** On May 17, 2011, in the *Siegel* Litigation, this Court entered a Rule 54(b) judgment that incorporated *Siegel I* and *Siegel II*. | **Defendants' Evidence:** AD Ex. QQ. |
| | **DC's Response: Undisputed** for purposes of this motion that the *Siegel* court granted defendants' Renewed Motion for Entry of a Partial Judgment Under FED. R. CIV. P. 54(b) on May 17, 2011, and certified as final pursuant to Rule 54(b) "the First Claim of the Third Amended Complaint, and the First, Second, Third and Fourth Counterclaims of the Second Amended Counterclaims (as stricken in part by the Court's May 5, 2011 order), and the Court's March 26, 2008 order (Docket No. 293), August 12, 2009 order (Docket No. 560), and October 30, 2009 order (Docket No. 595)." AD Ex. QQ. This Rule 54(b) ruling is currently on appeal. Appeal Nos. 11-55863, 11-56034. | **Defendants' Reply:** N/A. |
| 68. | **Defendants' Fact:** On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that "the 1975 Agreement was not a | **Defendants' Evidence:** *Siegel I*, 542 F. Supp. 2d at 1133; AD Ex. WW. |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | 'grant.'" | |
| | **DC's Response:  Undisputed** for purposes of this motion that DC did not challenge the ruling in *Siegel* that the 1975 Agreement was not a "grant" of Siegel's Superman copyrights | **Defendants' Reply:**  N/A. |
| 69. | **Defendants' Fact:**  On appeal from the Rule 54(b) judgment in the *Siegel* Litigation, DC did not challenge the ruling in *Siegel I* that the May 21, 1948 "consent judgment" did not need to be listed on notices of termination. | **Defendants' Evidence:**  *Siegel I*, 542 F. Supp. 2d at 1131-32; AD Ex. WW. |
| | **DC's Response:  Undisputed** for purposes of this motion that DC did not challenge the ruling in *Siegel* that the 1948 Consent Judgment did not need to be listed on the Siegels' notices of termination. | **Defendants' Reply:**  N/A. |
| | **Overlap Between This Litigation And The *Siegel* Litigation** | |
| 70. | **Defendants' Fact:**  DC filed this lawsuit, against Joanne Siegel, Laura Siegel Larson, Mark Warren Peary and their counsel, Marc Toberoff, in May 2010. | **Defendants' Evidence:**  Docket No. 1. |
| | **DC's Response:  Disputed.**<br><br>DC filed its initial complaint on May 14, 2010, against Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Joanne Siegel, Laura Siegel Larson, and Mark Warren Peary, as personal representative of the Estate of Joseph Shuster. Docket No. 1.<br><br>DC further disputes the suggestion | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not dispute that, regardless of whether Mr. Toberoff was *sued* as counsel, Mr. Toberoff was and still is counsel for both Ms. Larson and Mr. Peary. |

63
DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
|     | that the complaint was filed against Toberoff as "counsel" for the Siegel and Shuster heirs.  This Court rejected defendants' SLAPP motion and their erroneous—yet oft- repeated—assertions that Toberoff's alleged interference was "protected, litigation and settlement related conduct." Docket No. 337. | |
| 71. | **Defendants' Fact:**  Sub-parts (a) and (c) of DC's Second Claim concern "work-for-hire" issues already decided in the *Siegel* Litigation, and which were incorporated in this Court's Rule 54(b) judgment. | **Defendants' Evidence:**  FAC ¶¶153-54, 158-50; *Siegel I*, 542 F. Supp. 2d at 1126-1130; AD Ex. QQ. |
|     | **DC's Response:  Disputed.**<br><br>This is pure legal argument about the impact of an interlocutory court ruling in the *Siegel* action that is currently pending before the Ninth Circuit.  Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1 at 41-87; 49 at 17-28; 65-1. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC nowhere disputes that Judge Larson in *Siegel* made the stated rulings as affirmed in this Court's Rule 54(b) judgment in *Siegel*. |
| 72. | **Defendants' Fact:**  Sub-parts (b), (d) and (e) of DC's Second Claim were also part of DC's counterclaims in the previously filed *Siegel* Litigation. | **Defendants' Evidence:**  *Compare* FAC at ¶¶155-56, 160-62 , 163-64 *with* AD Ex. PP at ¶¶109-13, 118-20, 34. |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | **DC's Response:  Disputed.**<br><br>This is pure legal argument about the impact of an interlocutory court ruling in the *Siegel* action that is currently pending before the Ninth Circuit.  Appeal Nos. 11-55863, 11-56034, Docket Nos. 31-1 at 41-87; 49 at 17-28; 65-1. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC nowhere disputes that Judge Larson in *Siegel* made the stated rulings as affirmed in this Court's Rule 54(b) judgment in *Siegel*. |
| 73. | **Defendants' Fact:**  DC's Fourth, Fifth and Sixth Claim are before the Ninth Circuit as part of the anti-SLAPP appeal. | **Defendants' Evidence:**  AD Exs. WW, XX. |
| | **DC's Response:  Undisputed.**<br><br>However, a central question presented in the SLAPP appeal is whether the Ninth Circuit has jurisdiction to hear it.  Appeal No. 11-56934, Docket No. 37-1 at 26-27. | **Defendants' Reply:**  DC's response is pure legal argument to which no response is necessary.<br><br>The Ninth Circuit recently reaffirmed the logic of *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003), which found immediate appellate jurisdiction over denials of anti-SLAPP motions under California law, in *Metabolic Research, Inc. v. Ferrell*, 2012 WL 2215834, at *3-5 (9th Cir. June 18, 2012). |
| | **The Parties' Agreements** | |
| 74. | **Defendants' Fact:**  In November 2001, Ms. Peavy and Mr. Peary, as an individual, entered into an agreement (the "2001 PPC Agreement") with Pacific Pictures | **Defendants' Evidence:**  AD Ex. Z. |

| No. | Statement Of Undisputed Fact<br>DC's Response | Defendants' Evidence<br>Defendants' Reply |
|---|---|---|
| | Corporation ("PPC"). | |
| | **DC's Response: Undisputed** for purposes of this motion that Jean and Peary entered into an agreement with Pacific Pictures signed by Jean, Peary, and Toberoff in November 2001. AD Ex. Z.<br><br>DC addressed DSUF 74 in responding to DSAUF 79. Docket No. 471 at 63. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 75. | **Defendants' Fact:** In October 2003, the Shuster Executor, and PPC entered into an agreement (the ("2003 PPC Agreement"). | **Defendants' Evidence:** AD Ex. EE. |
| | **DC's Response: Undisputed** for purposes of this motion that Peary, as executor for the Shuster Estate, entered into an agreement with Pacific Pictures signed by Jean, Peary, and Toberoff in October 2003. DC addressed DSUF 75 in responding to DSAUF 83. Docket No. 471 at 64-65. | **Defendants' Reply:** DC's attempt to incorporate its response to a separate motion is improper. |
| 76. | **Defendants' Fact:** In 2004, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed the cancellation of the 2001 and 2003 PPC Agreements. | **Defendants' Evidence:** AD Ex. GG. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 76 in responding to DSAUF 85. Docket No. 471 at 66-67.<br><br>DC has addressed at length in its Rule 12 briefing, Docket No. 185 at 5-6, summary judgment briefing, Docket No. 468 at 12, and other | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | briefing, *e.g.*, Docket No. 360 at 3-4, whether the Pacific Pictures agreements were ever properly terminated, and whether the Shusters' putative rights were ever assigned back to them.  The evidence supporting DC's position includes the plain terms of the 2001, 2003, 2004, and 2011 Pacific Pictures agreements, which do not support defendants' position. AD Exs. Z, EE, GG, UU.  These are not remotely undisputed facts. | make improper arguments.  DC cites only its prior briefs, but offers **no evidence whatsoever** that the 2001 and 2003 PPC Agreements were not cancelled in 2004.  AD Ex. GG. |
| 77. | **Defendants' Fact:**  The 2001 and 2003 PPC Agreements, and the 2004 cancellation, were voluntarily produced to DC in 2006 in the *Siegel* Litigation. | **Defendants' Evidence:**  AD Ex. KK. |
|     | **DC's Response:  Disputed.**  DC addressed DSUF 77 in responding to DSAUF 94. Docket No. 471 at 70.  Defendants offer no competent evidence to support this claim, as the sole document they cite is a November 15, 2006, cover letter sent by former Toberoff associate Alexander Merino in the *Siegel* case purporting to enclose productions from IPW, LLC and Pacific Pictures Corporation. | **Defendants' Reply:**  Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.  DC's attempt to incorporate its response to a separate motion is improper.  DC frivolously disputes this indisputable fact.  It is incontrovertible that the 2001 and 2003 PPC Agreements and the 2004 written cancellation of these agreements were produced to DC in 2006 in the *Siegel* case.  Furthermore, those agreements, along |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | | with the 2003 Siegel "Superboy" termination, form the basis of the basis of DC's "unclean hands" claim, brought in 2010, leading to the decided inference that this stale claim was concocted solely for this lawsuit. As DC admits in response to Undisputed Fact No. 77, below, DC took deposition testimony in 2006 regarding the 2001 and 2003 PPC Agreements.  AD Exs. LL at 385-402 , JJ at 369-381.<br><br>Defendants previously requested that the Court take judicial notice that these documents were produced to DC in *Siegel* in 2006 (Docket No. 331-1) and DC stated that it "does not oppose" this.  Docket No. 335.<br><br>DC also admitted on appeal that the documents were produced to DC in 2006.  Case No. 11-56934, Docket 37-1 at 55 (referring to "agreements and letters they [Defendants] produced in *Larson* [*Siegel*] in 2006.").<br><br>DC also cites **no evidence whatsoever** that the agreements were not *voluntarily* produced to DC. |
| 78. | **Defendants' Fact:**  In 2006 in the *Siegel* Litigation, DC took deposition testimony regarding the 2001 and 2003 PPC Agreements. | **Defendants' Evidence:**  AD Exs. LL at 385-402, JJ at 369-381. |
| | **DC's Response: Undisputed.** DC addressed DSUF 78 in responding to DSAUF 95.  Docket No. 471 at 71. | **Defendants' Reply:**  DC's attempt to incorporate its response to a separate motion is improper. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | DC's Response | Defendants' Reply |
| 79. | **Defendants' Fact:** In a 2011 letter, Mr. Peary, Ms. Peavy and Mr. Toberoff confirmed their intent that PPC have no continuing interest whatsoever when they revoked the PPC Agreements in 2004. | **Defendants' Evidence:** AD Ex. UU. |
|     | **DC's Response: Disputed.**<br><br>DC has addressed at length in its Rule 12 briefing, Docket No. 185 at 5-6, summary judgment briefing, Docket No. 468 at 12, and other briefing, *e.g.*, Docket No. 360 at 3-4, whether the Pacific Pictures agreements were ever properly terminated, and whether the Shusters' putative rights were ever assigned back to them. The evidence supporting DC's position includes the plain terms of the 2001, 2003, 2004, and 2011 Pacific Pictures agreements, which do not support defendants' position. AD Exs. Z, EE, GG, UU.<br><br>Moreover, DC has disputed Jean's competency to enter into this 2011 agreement, whether defendants revoked the 2004 agreement, and the legal effect of that asserted revocation. Docket No. 322 at 1-2. These are not remotely undisputed facts. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC cites its arguments in prior briefs, but offers **no evidence whatsoever** that the 2001 and 2003 PPC Agreements were not properly and fully cancelled in 2004.<br><br>Despite DC's rhetoric, the 2011 letter was not another "agreement;" it simply confirmed that when the parties expressly cancelled the 2001 and 2003 PPC Agreements and replaced them with a legal retainer agreement in 2004 they intended that PPC have *no continuing interest* whatsoever. AD Ex. UU. |
| 80. | **Defendants' Fact:** In 2008, during the *Siegel* Litigation, an agreement was entered into by Joanne Siegel, Laura Siegel | **Defendants' Evidence:** AD Exs. SS at 490-499, TT at 511-512. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|-----|------------------------------|----------------------|
|     | **DC's Response** | **Defendants' Reply** |
|     | Larson, Mark Warren Peary, and Jean Adele Peavy regarding settlement negotiations with DC (the "2008 Agreement"). |  |
|     | **DC's Response: Disputed.**<br><br>DC addressed DSUF 80 in responding to DSAUF 90. Docket No. 471 at 69.<br><br>DC does not dispute that the 2008 Consent Agreement was entered into by Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy.<br><br>DC disputes that the 2008 Consent Agreement was entered into "regarding settlement negotiations." Peary testified that the agreement remains in effect to this day— separate and apart from any mediation discussion. Docket No. 305-37 at 1174:5-7.<br><br>Moreover, defendants have refused to produce the 2008 Consent Agreement, and cannot make self- serving assertions about its contents or who is bound by it, including whether Mr. Toberoff is a party to it. *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cie. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). In any event, if this | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>DC does not and cannot dispute the 2008 Agreement was entered into shortly before a settlement mediation in *Siegel* and that it concerns the Siegels/Shusters settlement negotiations with DC, which naturally have been ongoing.<br><br>In both *Siegel*, and in this litigation, in a ruling affirmed by this Court, the 2008 Agreement was upheld as privileged.  *See* SUF ¶¶82-93; Docket Nos. 209, 249.  Defendants were forced to make assertions about the 2008 Agreement to defend against DC's false accusations and speculation.  As Magistrate Judge Zarefsky stated in the ruling regarding the 2008 Agreement, upheld by this Court:  "Defendants do not waive privilege by defending themselves."  Docket. No. 209 at 10; *see* SUF ¶¶82-93. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | Court has any questions about that document, it can and should review the consent agreement *in camera* or order it produced to DC | It is manifestly improper for DC to seek to re-litigate discovery issues on which it lost and which are "law of the case," under the guise of a "separate statement." |
| 81. | **Defendants' Fact:** As alleged by DC, the 2008 Agreement requires the consent of the parties thereto to any settlement of their recaptured copyrights with DC. | **Defendants' Evidence:** FAC at ¶188. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 81 in responding to DSAUF 91. Docket No. 471 at 69-70.<br><br>Defendants have refused to produce the 2008 Consent Agreement, and cannot make self-serving assertions about its contents. *Bilzerian*, 926 F.2d at 1292. Indeed, their choice affirmatively to discuss the contents of the document and use facts about it as a sword constitutes a waiver. *Id.* at 1291-94. In any event, defendants' admissions about its contents prove its illegality, as shown in DC's briefs. Docket Nos. 458 at 23-25; 468 at 10-12. If this Court has any questions about that document, it can and should review the consent agreement *in camera* or order it produced to DC. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper. DC disputes this indisputable fact to make improper arguments.<br><br>In both *Siegel*, and in this litigation, in a ruling affirmed by this Court, the 2008 Agreement was upheld as privileged. *See* SUF ¶¶82-93; Docket Nos. 209, 252. Defendants were forced to makes assertions about the 2008 Agreement to defend against DC's false accusations and speculation. As Magistrate Judge Zarefsky stated in the ruling regarding the 2008 Agreement, upheld by this Court: "Defendants do not waive privilege by defending themselves." Docket No. 209 at 10; *see* SUF ¶¶82-93.<br><br>It is manifestly improper for DC to seek to re-litigate discovery issues on which it lost and which are "law of the case," |

| No. | Statement Of Undisputed Fact<br>DC's Response | Defendants' Evidence<br>Defendants' Reply |
|---|---|---|
| | | under the guise of a "separate statement."<br><br>DC's rhetoric about "illegality" is unsupported. The Siegels' and Shusters' 2008 Agreement to collectively negotiate settlement with DC does not violate 17 U.S.C. § 304(c)(6)(D), as DC falsely asserts, or any other laws.<br><br>**Objections to DC's Evidence:** DC's statement that Defendants' "choice affirmatively to discuss the contents of the document and use facts about it as a sword constitutes a waiver" is inadmissible speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702. |
| 82. | **Defendants' Fact:** Magistrate Judge Zarefsky rejected DC's arguments that the 2008 Agreement constitutes "an independent wrong [that] violates the Copyright Act," and found, instead, that it is a legitimate "Drysdale-Koufax collective approach to negotiation." | **Defendants' Evidence:** Docket No. 209 at 6-8. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 82 in responding to DSAUF 93. Docket No. 471 at 70.<br><br>This is pure legal argument about a court ruling. It also erroneously describes the court's ruling; Magistrate Judge Zarefsky said that defendants' | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments. |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | DC's Response | Defendants' Reply |
| | 2008 Consent Agreement might not violate § 304(c)(6)(D) of the Copyright Act, but conceded that "[o]ne cannot know with certainty what the consent agreement means without seeing" it, Docket No. 209 at 8:1-2—and, without looking at the contract, accepted Toberoff's representations to Judge Larson in the *Siegel* case about its contents. Docket Nos. 160 at 6-44; 209 at 1-10.<br><br>Since Magistrate Judge Zarefsky ruled in May 2011, new facts have emerged that disprove Toberoff's false assertions to Judges Larson and Zarefsky, and defendants have selectively disclosed information about the agreement that reveal many of its contents.  PD ¶13-17. DC will move shortly to compel the production of the consent agreement and further testimony concerning its contents. | This is not "legal argument" about a Court ruling, it is a quotation from that ruling.<br><br>In both *Siegel*, and in this litigation, in a ruling affirmed by this Court, the 2008 Agreement was upheld as privileged.  *See* SUF ¶¶82-93; Docket Nos. 209, 252.  Defendants were forced to makes assertions about the 2008 Agreement to defend against DC's false accusations and speculation.  As Magistrate Judge Zarefsky stated in the ruling regarding the 2008 Agreement, upheld by this Court: "Defendants do not waive privilege by defending themselves."  Docket. No. 209 at 10; *see* SUF ¶¶82-93.<br><br>It is manifestly improper for DC to seek to re-litigate discovery issues on which it lost and which are "law of the case," under the guise of a "separate statement."  DC pretends there are "new facts."  However, the only "evidence" DC cites to are conclusory allegations in a declaration by DC's own counsel.<br><br>**Objections to DC's Evidence:** DC's statement that "[s]ince Magistrate Judge Zarefsky ruled in May 2011, new facts have emerged that disprove Toberoff's false assertions to Judges Larson and Zarefsky, and defendants have selectively disclosed information about the agreement that reveal many of its contents" is inadmissible |

| No. | Statement Of Undisputed Fact / DC's Response | Defendants' Evidence / Defendants' Reply |
|---|---|---|
| | | speculation, argument, and legal conclusion. Fed. R. Evid. 602, 701, 702. It is also unsupported by the purported evidence cited by DC. |
| 83. | **Defendants' Fact:** This Court upheld Magistrate Zarefsky's ruling as to the 2008 Agreement. | **Defendants' Evidence:** Docket No. 252. |
| | **DC's Response: Disputed.**<br><br>DC addressed DSUF 82 in responding to DSAUF 93. Docket No. 471 at 70.<br><br>This is pure legal argument about a court ruling. It also erroneously describes the court's ruling. *See supra* DC's Response to DSUF 82. | **Defendants' Reply:** Defendants' cited evidence fully supports the stated fact, and DC does not and cannot dispute this.<br><br>DC's attempt to incorporate its response to a separate motion is improper.<br><br>DC disputes this indisputable fact to make improper arguments.<br><br>This is not "legal argument" about a Court ruling, but a description of the ruling. |

## DEFENDANTS' RESPONSE TO DC'S
## STATEMENT OF ADDITIONAL FACTS

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| 1. | A 1940 script that defendants say features the first appearance of Superboy contains the joint byline: "By Jerry Siegel and Joe Shuster."<br><br>**DC's Evidence:** *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1146, 1155 (C.D. Cal. 2007); PD Ex. 10. | **Undisputed,** but misleading and irrelevant.<br><br>Siegel's 1940 Superboy story that he submitted to DC was *intended* to be illustrated by Joe Shuster, hence the byline on the story; however, Joe Shuster **never illustrated that story**. AD Ex. C at 81-83 ¶¶157-64; *Siegel,* 496 F. Supp. 2d at 1115. For this |

| No. | DC's Additional Fact | Defendants' Response |
|-----|----------------------|---------------------|
|  |  | reason Siegel's 1940 Superman story is not a joint work. *See Szekely v. Eagle Lion Films, Inc.*, 242 F.2d 266, 268 (2d. Cir. 1957) (work was not a "joint work" where produced without "plaintiff's consent, which was not sought or obtained"). **Objections to DC's Evidence:** To the extent DC attempts to rely upon the byline for the truth of the matter asserted, it is inadmissible hearsay. Fed. R. Evid. 801, 802. **Defendants' Evidence:** AD Ex. C at 81-83 ¶¶157-64; *Siegel,* 496 F. Supp. 2d at 1115. |
| 2. | In *Action Comics #1*, which was published in 1938, Shuster drew Superman as a very young boy displaying astounding "feats of strength." **DC's Evidence:** PD Ex. 28. | **Undisputed,** but misleading and irrelevant. The Court in the 1947 Action found that SUPERBOY was based on Siegel's 1940 story, and that the Superman material in *Action Comics, No. 1,* later repurposed in *Superman, No. 1,* "did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as it was later submitted by the plaintiff SIEGEL to [DC]." AD Ex. C at 83 ¶¶164-66. The Second Circuit in *Siegel,* 508 F.2d at 914, held that the findings and conclusions in the 1947 Action are preclusive and binding on the parties. **Defendants' Evidence:** AD Ex. C at 83 ¶¶164-66. |
| 3. | In *Superman #1*, which was published in 1939, Shuster drew Superman as a young boy with super-powers. | **Undisputed,** but misleading and irrelevant. The Court in the 1947 Action found |

| No. | DC's Additional Fact | Defendants' Response |
|-----|----------------------|---------------------|
|  |  **DC's Evidence:**  PD Ex. 12. | that SUPERBOY was based on Siegel's script, and the Superman material in *Action Comics, No. 1*, later repurposed in *Superman, No. 1*, "did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as it was later submitted by the plaintiff SIEGEL to [DC]."  AD Ex. C at 83 ¶¶164-66. The Second Circuit in *Siegel*, 508 F.2d at 914, held that the findings and conclusions in the 1947 Action are preclusive and binding on the parties.<br><br>**Defendants' Evidence:**  AD Ex. C at 83 ¶¶165-66. |
| **4.** | In a Sunday comic strip, which was published in 1942, Shuster depicted Superman as a "youth" who could "outrun the express" train and had other "amazing powers."<br><br>**DC's Evidence:**  PD Ex. 13. | **Undisputed,** but misleading and irrelevant.<br><br>The Court in the 1947 Action found that SUPERBOY was "based upon the idea, plan and conception contained in the plaintiffs, SIEGEL'S letter to [DC], dated November 30, 1938" and that the "release of the said comic strip SUPERBOY published in December of 1944 [*i.e., More Fun Comics, No. 101*] embodied and was based upon the idea, conception and plan contained in the script or scenario submitted by the plaintiff SIEGEL to [DC] in December of 1940."  AD Ex. C at 83 ¶¶164-65. The Second Circuit in *Siegel*, 508 F.2d at 914, held that the findings and conclusions in the 1947 Action are preclusive and binding on the parties.<br><br>**Defendants' Evidence:**  AD Ex. C at 83 ¶¶164-65. |
| **5.** | In 1948, a New York state court found that Shuster provided the | **Undisputed,** but misleading and irrelevant. |

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| | artwork for the first stand-alone Superboy story, printed in *More Fun Comics #101*.<br><br>**DC's Evidence:**  AD Ex. C at 85 (Finding 180: "All the art work for the SUPERBOY releases was prepared by plaintiff SHUSTER under the direction of DETECTIVE COMICS, INC."); PD Ex. 11. | The Court in the 1947 Action noted that "Plaintiff SHUSTER was paid in full by [DC]" for this 1844 work (AD Ex. C at 86 ¶181) while "Plaintiff SIEGEL has received no payment" for his independent 1938-40 submissions, including his 1940 SUPERBOY story. AD Ex. C at 84 ¶174.  The Second Circuit in *Siegel,* 508 F.2d at 914, held that the findings and conclusions in the 1947 Action are preclusive and binding on the parties.  To the extent DC submits this Additional Fact No. 5 to create an inference that Siegel's 1940 Story was a joint work, that inference is false as set forth above in response to Fact No. 1.<br><br>**Defendants' Evidence:**  AD Ex. C at 84-86 ¶¶174, 181. |
| 6. | In 1972 and 1973, Jerry Siegel and Joe Shuster filed copyright renewal notices identifying Superboy as their joint creation.<br><br>**DC's Evidence:**  PD Ex. 25-27. | **Disputed**.  Siegel and Shuster arranged for scores of renewal registrations to be filed regarding *published* Superman and Superboy comic books, which routinely listed themselves as authors.  Such renewal notices did not "identify[] Superboy as their joint creation."  PD Ex. 25-27.  Moreover, no such notice was filed listing Siegel's original 1940 Superboy story at issue, and DC's purported evidence shows none.<br><br>Furthermore, Siegel and Shuster's renewal notices were rejected as invalid in *Siegel,* 508 F.2d at 909.  Such renewal notices also cannot change the Court's findings in the 1947 Action, held by the Second Circuit in *Siegel,* 508 F.2d at 913, to be |

| No. | DC's Additional Fact | Defendants' Response |
|-----|----------------------|---------------------|
| | | preclusive and binding on the parties. |
| | | **Objections to DC's Evidence:** To the extent DC attempts to rely upon the notices for the truth of the matter asserted, it is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| | | **Defendants' Evidence:** PD Ex. 25-27. |
| 7. | In 1982, Siegel's widow Joanne sent a letter to DC stating: "It's no mystery who the creators were in Jerry and Joe's case. Not only of Superman, but Superboy and other comics." <br><br> **DC's Evidence:** PD Ex. 29. | **Undisputed,** but misleading and irrelevant. <br><br> The letter was in response to statements by Paul Levitz, which explained that, while DC had implemented a policy of paying royalties to its current artists/writers, DC would not provide royalties to older artists/writers/creators, because "[i]t's hard to find out who the creators were in most cases." PD Ex. 29. <br><br> This statement is not inconsistent with the Court's findings in the 1947 Action that Siegel created Superboy in his 1938 and 1940 materials. AD Ex. C at 83 ¶¶164-65. Furthermore, casual comments by Siegel's widow in a 1982 letter do not alter the Court's 1947 findings, held by the Second Circuit in *Siegel,* 508 F.2d at 913, to be preclusive and binding on the parties. <br><br> **Objections to DC's Evidence:** To the extent DC attempts to rely upon the letter for the truth of the matter asserted, it is inadmissible hearsay. Fed. R. Evid. 801, 802. <br><br> **Defendants' Evidence:** PD Ex. 29. |

| No. | DC's Additional Fact | Defendants' Response |
|-----|----------------------|----------------------|
| 8. | In 1997, Siegel's heirs filed a copyright termination notice seeking to terminate Siegel's prior grants of Superman rights that listed Superboy-specific works and identified "Superboy" as among the "character[s], story element[s], or indicia reasonably associated with SUPERMAN."<br><br>**DC's Evidence:** PD Ex. 31. | **Undisputed,** but misleading and irrelevant.  The termination notices listed virtually every element associated with Superman.  As Superboy was thought to be derivative of Superman, such elements were naturally included in the list.<br><br>**Defendants' Evidence:** PD Ex. 31. |
| 9. | In a November 2001 "Joint Venture Agreement," Jean and Peary formed a joint venture with Toberoff's company Pacific Pictures Corporation listing "Superboy" as among "Joe Shuster's creations."<br><br>**DC's Evidence:** AD Ex. Z. | **Disputed.**  The name "Superboy" was included in the 2001 PPC Agreement in a list of examples of Superman-related elements and/or derivative works.  It was not listed as one of "Joe Shuster's creations," and the list includes other elements/works that are also clearly not Shuster's creation or co-creation but are simply Superman derivatives (*e.g.*, Lana Lang and Supergirl).<br><br>**Defendants' Evidence:** PD Ex. 3 at 335:15-337:2; AD Ex. Z. |
| 10. | In November 2001, Toberoff approached the Siegels seeking to buy out their putative Superman rights.<br><br>**DC's Evidence:** PD Ex. 3 at 212:8-222:13; 32; 33; Docket No. 305-14 at 358:4-360:20. | **Disputed**.<br><br>DC's cited evidence does not support DC's willfully misleading statement.<br><br>Mr. Toberoff did not approach the "Siegels" (*i.e.*, Joanne Siegel and Laura Siegel Larson) in November 2001 to buy-out their Superman rights.<br><br>Mr. Toberoff approached Michael Siegel in November 2001 in connection with legal representation, as found by Magistrate Judge Zarefksy after reviewing a November 2001 e-mail from Mr. Toberoff to Michael Siegel.  Docket No. 451. |

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| | | Michael Siegel (Jerry Siegel's son by an earlier marriage) was not a party to Joanne and Laura's Superman termination notices or Superboy termination notice, nor was Michael a party to the Siegels' settlement negotiations with DC at issue in this case.  Under the Copyright Act, Michael simply held a passive 25% interest in any proceeds Joanne and Laura received from their terminations.<br><br>**Defendants' Evidence:**  Docket No. 451; PD Ex. 31. |
| **11.** | In October 2002, the Siegels signed an agreement with Toberoff's company IP Worldwide to exploit their putative Superman rights.<br><br>**DC's Evidence:**  PD Ex. 34. | **Disputed**.<br><br>DC's cited evidence does not support its statement.<br><br>IP Worldwide was a partnership between attorney Marc Toberoff and Ari Emanuel, a founder of the Endeavor Talent Agency (now CEO of William Morris Endeavor).<br><br>The IP Worldwide Agreement is clearly directed at the representation of the Siegels' rights by IP Worldwide, not the exploitation of such rights. Shortly after entering into the IP Worldwide Agreement, Mr. Toberoff contacted Warner Bros.' General Counsel, John Schulman, in 2003 on behalf of Laura and Joanne Siegel to resume legal settlement negotiations with DC/Warner Bros. and he conducted such settlement negotiations in 2003 and 2004 – before entering into a litigation retainer agreement with Laura and Joanne Siegel in 2004 and |

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| | | filing the *Siegel* action in 2004 to enforce their statutory terminations. Reply Declaration of Keith Adams, Ex. B.<br><br>**Defendants' Evidence:** PD Ex. 34. |
| 12. | In November 2002, the Siegels filed a copyright termination notice directed at Superboy, which listed the same Superboy-specific works identified in their 1997 copyright termination notice.<br><br>**DC's Evidence:** PD Ex. 31. | **Undisputed,** but misleading and irrelevant.<br><br>The Siegels' Superboy termination notice applied to many of the same Superboy-specific works identified in their earlier 1997 copyright termination notices, which listed virtually every Superman-related work. This is because Superboy is both a derivative work of Superman *and* a separately copyrightable superhero character and comic book line, as to which DC has filed separate copyright registrations. Despite the contrary inferences intended by DC's statement, the two are not mutually exclusive. Derivative works like Superboy are subject to separate copyright protection. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 2012 WL 3764704 (9th Cir. Aug. 31, 2012) ("[D]erivative work may be independently copyrightable…."). <br><br>**Defendants' Evidence:** PD Ex. 31. |
| 13. | The Siegels' 2002 copyright termination notice stated that Superboy was a copyrightable work "separate and distinct" from Superman and that Superboy was "solely written and created" by Siegel.<br><br>**DC's Evidence:** PD Exs. 15, 31. | **Undisputed**; these statements in the Siegels' Superboy termination notice are entirely accurate**.** |

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| 14. | Without receiving any independent legal advice, conducting any factual investigation, or consulting with Jean, Peary agreed to disclaim any interest in Superboy, and defendants amended the 2001 Pacific Pictures Agreement to delete all reference to "Superboy" and redefine the Shusters' putative rights as including only "Superman." <br><br> **DC's Evidence:** Docket No. 305-37 at 1270:6-1272:19, 1385:12-1386:5, 1391:5-1395:7; AD Exs. Z, EE; PD Ex. 3 at 335:15-345:4. | **Disputed.** DC's cited evidence does nothing to support its rhetoric. <br><br> Peary did not "agree[] to disclaim any interest in Superboy." Nor does the 2003 PPC Agreement "redefine the Shusters' putative rights as including only 'Superman.'" Insofar as Superboy is a derivative work based on Superman, the Shuster Estate continues to have an interest in future Superboy exploitations as the expected co-owner of the copyrights to original Superman copyrights subject to its termination notice. <br><br> "Superboy" not being listed in the 2003 PPC Agreement was not the result of any agreement by Peary "to disclaim any interest in Superboy." DC misleadingly omits that the 2003 Agreement contains none of the many Superman-related elements listed in the 2001 Agreement; and that this was not specific to Superboy, or anything else. <br><br> **Objections to DC's Evidence:** DC's statement is unsupported by the purported evidence DC cites. <br><br> **Defendants' Evidence:** AD Exs. Z, EE. |
| 15. | In November 2003, Peary filed a termination notice with the Copyright Office that omitted all reference to Superboy-specific works and elements. <br><br> **DC's Evidence:** AD Ex. FF; Docket No. 305-37 at 1270:6-1272:19, 1385:12-1386:5, | **Disputed.** The Shuster Termination filed by Peary as Executor of the Shuster Estate did not specifically "omit" all reference to Superboy; it properly listed the works subject to the termination notice under 17 U.S.C. § 304(d). Insofar as Superboy is a derivative work based on Superman, the Shuster Estate continues to have an |

| No. | DC's Additional Fact | Defendants' Response |
|---|---|---|
| | 1391:5-1395:7, 1400:5-1414:2. | interest in future Superboy exploitations as the expected co-owner of the copyrights to original Superman copyrights subject to its termination notice.<br><br>**Defendants' Evidence:** AD Ex. FF. |
| 16. | In 2008, defendants entered into a "consent agreement" —which remains in effect to this day— barring the Siegels or Shusters from entering into an agreement with DC without the other family's consent.<br><br>**DC's Evidence:** PD Ex. 3 at 359:4-361:12; Docket Nos. 160 at 50-64; 305-24 at 758:23-760:25; 305-37 at 1155:21-1156:25, 1158:19-1160:9, 11174:5-7, 1184:8-1185:11. | **Disputed.** The 2008 Agreement requires only the "consent of the parties thereto to any settlement of their recaptured copyrights with DC." *See* ¶81, *supra*. Neither Mr. Toberoff nor any other Toberoff "defendants" are parties to the 2008 Agreement, and settlement does not require his/their consent. SUF ¶81. Mr. Toberoff signed the 2008 Agreement as the parties' attorney to connote his "approval as to [the] form" of the agreement only.<br><br>**Defendants' Evidence:** PD Ex. 3 at 361:15-16; 366:2-4. |
| 17. | While the *quid pro quo* the Shusters received for forfeiting their interest in Superboy is the subject of ongoing discovery, it appears that the 2008 consent agreement requires the Siegels to pay a portion of their recovery from the *Siegel* action to the Shusters.<br><br>**DC's Evidence:** PD ¶ 15-17; Docket Nos. 305-24 at 817:23-818:1, 823:23-824:4; 305-37 at 1191:21-1192:13, 1277:5-11; Cross-Mot. 22. | **Disputed.** DC's cited evidence does nothing to support its rhetoric.<br><br>The Shusters did not "forfeit their interest in Superboy" and there was no "quid pro quo;" DC cites **no evidence** whatsoever to support this. Ms. Larson and Mr. Peary expressly testified at depositions in 2011 that the Shusters had no financial interest in the Siegels' Superboy termination or litigation.<br><br>**Defendants' Evidence:** AD Exs. SS at 502-507, TT at 513-518. |

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES

1

2

Dated:  October 1, 2012          RESPECTFULLY SUBMITTED,
                                 /s/ Marc Toberoff

3

4

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary *et al.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY RE: STATEMENT OF GENUINE ISSUES