1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:   (310) 553-6700
6   Facsimile:   (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10
    DC COMICS,
11
                      Plaintiff,                Case No. CV 10-3633 ODW (RZx)
12
           v.                                  **NOTICE OF ERRATA RE:
13                                             EXHIBITS 51-55 TO
    PACIFIC PICTURES                           DECLARATION OF DANIEL M.
14  CORPORATION, IP WORLDWIDE,                 PETROCELLI AT DOCKET NO.
    LLC, IPW, LLC, MARC TOBEROFF,              500-9**
15  an individual, MARK WARREN
    PEARY, as personal representative of       The Hon. Otis D. Wright II
16  the ESTATE OF JOSEPH SHUSTER,
    JEAN ADELE PEAVY, LAURA
17  SIEGEL LARSON, an individual and
    as personal representative of the
18  ESTATE OF JOANNE SIEGEL, and
    DOES 1-10, inclusive,
19
                      Defendants.
20

21

22

23

24

25

26

27

28

1  TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2         On October 10, 2012, plaintiff DC Comics ("DC") filed a Motion For An

3  Evidentiary Hearing And Sanctions, Including Terminating Sanctions,

4  Appointment Of Special Master, And Other Relief, Docket No. 500, and supporting

5  Declaration Of Daniel M. Petrocelli and exhibits, Docket No. 500-2 - 500-15.

6  Upon review, DC discovered that a privileged attorney-client communication was

7  inadvertently attached to Exhibit 51 to Mr. Petrocelli's declaration, Docket No.

8  500-9 (Exhibits 51-55), that was never intended to be made public.  DC attaches

9  hereto a corrected copy of Exhibits 51-55 to Mr. Petrocelli's declaration.

10         Counsel for DC promptly notified counsel for defendants of this mistake, and

11  requested that defendants immediately destroy all electronic and hard copies of the

12  inadvertently filed copy of Exhibits 51-55 pursuant to Federal Rule of Civil

13  Procedure 26(b)(5)(B) and the applicable case law.  Counsel for defendants have

14  declined to do so yet, and DC reserves all rights.  (See concurrently filed Decl. of

15  Jason H. Tokoro.)  DC files concurrently herewith an application to maintain under

16  seal the inadvertently filed copy of Exhibits 51-55 at Docket No. 500-9, and

17  respectfully requests that the Court grant this application or, in the alternative,

18  return the inadvertently filed copy of Exhibits 51-55 at Docket No. 500-9 to counsel

19  for DC.  DC apologizes to the Court for any inconvenience.

20  Dated:    October 11, 2012                Respectfully submitted,

21                                            O'MELVENY & MYERS LLP

22                                            By:  /s/ Daniel M. Petrocelli

23                                                Daniel M. Petrocelli

24

25

26

27

28

# EXHIBIT 51

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* ALSO ADMITTED IN NEW YORK

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

October 9, 2008

<u>Via E-Mail</u>

David Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844

Re:    <u>Superman/Superboy Litigations, Case Nos. 04-CV-8400, 8776 SGL (RZx)</u>

Dear Mr. Eisen:

I write to follow up on both your faxed letter dated October 8, 2008, and our subsequent conversation yesterday evening, concerning the disposition of the so-called "Escrow Documents" under the Court's September 26, 2008 Order ("Order"). Your letter has misconstrued the Order by taking the incorrect positions that: (a) Escrow Documents properly listed in the privilege logs of third-parties are to be released to defendants; and (b) you are to determine whether the Escrow Documents listed in the relevant privilege logs were "accurately described," so as to preserve the claimed privilege. Both these interpretations go well beyond the narrow scope of the Order, self-servingly further defendants' strategies to abuse the theft of numerous legal files from our offices, and, frankly, cast doubt on your role as a "neutral" and an "escrow agent," as represented by defendants to the Court.

A.    <u>Documents Listed on Third-Party Privilege Logs</u>

To release to defendants Escrow Documents properly listed on the privilege logs of third parties fundamentally misreads the Order, and has no basis in law or logic. The Order states:

> "[T]he escrow agent is ORDERED to produce to defendants' counsel forthwith any escrow document not previously listed **in a privilege log** or as having been previously been produced. That is to say, the escrow agent is to match up the escrow documents with the privilege log entries and production documents **listed in Mr. Toberoff's May 21, 2007, declaration**. Thus, the nine documents produced by the escrow agent to the Court for <u>in camera</u> review are to be produced to defendants' counsel as those documents were not previously identified in a privilege log provided by plaintiffs." (emphasis added)

**EXHIBIT 51**
**904**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 2

The Order is clearly referring to both plaintiffs' privilege logs and those of third parties, as
numerous third-party privilege logs *were* listed in the May 21, 2007 Declaration of Marc
Toberoff, including the privilege logs of Kevin Marks, Esq. (page 1), Don Bulson, Esq. (page 2)
and Warren Peary and Jean Peavy (the "Shusters") (page 3).

Moreover, defendants repeatedly stated in their pursuit of these stolen documents that they *were
not* seeking the production of documents listed on third-party privilege logs. Defendants'
original motion to compel regarding the Escrow Documents sought the production of "all of the
Whistle-blower documents that they now claim are privileged but that were not included on any
privilege log." *See* Joint Stipulation Re: Defendants' Motion to Compel Production of Whistle-
blower Documents, filed March 23, 2007, at 2:12-14. Defendants later reinforced this by stating
that they "seek on this narrow motion the production of those Whistle-blower documents that
have never been identified on *any* privilege log." *See* Defendants' Supplemental Memorandum
of Points and Authorities in Support of Their Motion to Compel Production of Whistle-Blower
Documents, dated April 2, 2007, at 5:11-13.

On May 22, 2007, in a letter to you responding to plaintiffs' May 21, 2007 declaration,
defendants specifically confirmed that "**Mr. Toberoff is correct that Escrow Documents that
were originally listed in the privilege logs of non-party witnesses should not be released**."
*See* Exhibit "A" (emphasis added).  That letter instead described  a handful of specific
documents that had not been addressed at the hearing before Magistrate Zarefsky, and thus fell
through the cracks of his oral "order" and remained at issue, namely the anonymous "undated
cover letter," a couple of "post-litigation attorney-client communications," and a couple pieces of
"correspondence between Mr. Toberoff and Mr. Bulson." *Id.*

Furthermore, when defendants submitted their joint stipulation specifically addressing these nine
documents on September 17, 2007, the *only* documents on third-party privilege logs at issue
were the two letters listed on Don Bulson's log because they were subject to a separate motion to
compel in the Northern District of Ohio.  Defendants challenged the claim of a joint-interest
privilege for these documents, and the Court granted their motion.  These are the only two
"Bulson" documents in the Escrow Documents.  As noted above, defendants have conceded and
not challenged the validity of the other third-party privilege logs.

Finally, when the Court issued its September 17, 2007 minute order, it directed *only* that the nine
documents in dispute – specifically, the "undated cover letter," post-litigation attorney-client
communications, and the documents listed solely in the privilege log of Don Bulson – be
submitted to the Court for *in camera* review.  *See* Exhibit "B" at 2.

Thus defendants have conceded on numerous occasions, as they must, that Escrow Documents
listed on third-party privilege logs are not to be released to them.  Moreover, there is no legal
basis whatsoever to override such privilege logs and release attorney-client communications of
third parties. In light of your concerted "stretching" of the Order, to suddenly contemplate

**EXHIBIT 51**
**905**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 3

releasing such privileged communications to defendants is extremely troubling and reasonably casts doubt on your neutrality in this matter.

**B.**    **The "Matching Up" Process**

The Order simply directs the escrow agent to "match up the escrow documents with the privilege log entries and production documents." This is expressly made "pursuant to the terms of Magistrate Judge Zarefsky's Order" of April 30, 2007. That order, given orally, was as follows:

> "...I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced. So, you take the Bates numbers of the escrow documents and say, 'Here are the corresponding Bates numbers of the documents that have already been produced.' Take the Bates numbers of the escrow documents and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged. All right? So, put that in your declaration. Then **the escrow holder, Mr. Bergman [sic], is to return to the plaintiffs any documents which are identified in the declaration as being privileged** and having been identified on the privilege log. The others can be delivered to trial counsel for defendants because they're either unprivileged or, if they were privileged, privilege has been waived because they weren't listed on the privilege log."

*See* Exhibit "C" at 19:8-20:5.

In response to a question from plaintiffs' counsel, Magistrate Zarefsky further clarified this mechanical process:

> "So, put that in your declaration. Then the escrow holder, Mr. Bergman, is to return to plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs. The others can be delivered to trial counsel for defendants....
> "For example, Bates number, let's call it 'escrow'...Escrow document 00004 corresponds to previously produced document 00006. Escrow document 00007 corresponds to previously produced document 00009, and so on...Privilege escrow document 00015 is a privilege document which was listed on the privilege log as document such and such... Privilege documents get returned. The privilege documents that were listed on the privilege log get returned. The others get sent to defense counsel."

*Id.* at 19:16- 20:3; 30:7-24.

Thus, the April 30, 2007 order directs only that the escrow documents "correspond" to those listed on privilege logs. The order does ***not*** contemplate an inquiry into the validity of the claims

**EXHIBIT 51**
**906**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 4

of privilege made for these documents or for the "escrow holder" to adjudicate whether the escrow documents were "accurately described," as set forth in your October 8, 2008 letter. In fact, the validity of plaintiffs' privilege log had previously been challenged by defendants and sustained by Magistrate Zarefsky by Order dated August 18, 2006, finding that the "descriptions in the log were sufficient" to assert privilege. *See* Exhibit "D" at 5:16-27. This order was never appealed to the Court under L.R. 72-2.1 and thus is the "law of the case." It would be manifestly improper for defendants to circumvent that ruling under the guise of retaining an ostensibly "neutral" escrow agent to evaluate plaintiffs' claims of privilege and the adequacy of plaintiffs' privilege logs.

In addition to the "nine documents," defendants' September 17, 2007 motion also sought to have the "escrow agent" undertake a search for and review of additional "escrow documents" for which defendants wanted to challenge the claim of privilege. Plaintiffs specifically objected to this as well beyond the function of an "escrow agent," and the Court did not order this expanded review. Instead the Court limited its review to the nine documents submitted in camera:

> "The 'escrow attorney' referenced at the hearing is directed to submit by Friday, September 21, 2007, to the Court for an in camera review the nine documents which plaintiffs had either not previously produced to defendants or were not listed on a privilege log *in connection with this litigation.* Counsel for Plaintiffs is ORDERED to submit a declaration on or before Friday, September 21, 2007, setting forth the grounds for any claims of privilege relating to said documents; defendants may file a response to the declaration on or before Tuesday, September 29, 2007. The motion to compel which defense counsel informed the Court has been or was filed with the magistrate judge is hereby rendered MOOT."

*See* Exhibit C at 2.

Given the context of these rulings, it is obvious that the Court's September 26, 2008 Order was intended to supplement Magistrate Zarefsky's April 30, 2007 order as to the nine documents submitted in camera, not to go beyond its terms. Judge Larson expressly held Magistrate Zarefsky's order was the "law of the case in this matter," and that its September 26, 2008 Order was made "pursuant to the terms" of such order. Magistrate Zarefsky's order required only a mechanical "matching up" of the documents, not an evaluation, as such is well beyond the simple role of an escrow agent. This is only bolstered by the fact the Court at no point suggested that any documents *other than the nine documents* involved in the September 17, 2007 Order be turned over to the Court for in camera review.

Pursuant to the portion of the Court's Order stating that you are "to match up the escrow documents with the privilege log entries and production documents listed in Mr. Toberoff's May 21, 2007 declaration" you are to simply match up the "escrow documents" identified by Bates numbers in the declaration with the numbered *entries* on the privilege logs identified in the declaration. Contrary to your letter it is not your permissible role or function to adjudicate

**EXHIBIT 51**

**907**

**TOBEROFF & ASSOCIATES, P.C.**

David Eisen, Esq.
October 9, 2008
Page 5

whether the privilege log entries are proper or "accurately described." Consistent with Magistrate
Zarefsky's April 30, 2007 order and August 18, 2006 orders, you are neither required nor
permitted to engage in a substantive evaluation of the sufficiency of the privilege logs or the
privileged status of the communications.

**C.    <u>Further Actions</u>**

Plaintiffs have abstained from filing an *ex parte* application for relief in this matter due to the
Court's December 12, 2007 order directing that no further *ex parte* applications be filed in
discovery matters. As noted in our September 30, 2008 letter to you and defendants' counsel,
plaintiffs will shortly bring a motion regarding the Escrow Documents and request that you take
no further action with respect to the Escrow Documents.

Finally, as I advised you on the phone, as an escrow agent, you owe a fiduciary duty to plaintiffs
as well as to the defendants who have retained you and pay for your services. *See Summit
Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 ("An escrow
holder is an agent and fiduciary of the parties to an escrow."). In the event that you release any
privileged Escrow Documents keyed in my May 21, 2007 declaration by bates numbers to the
privilege logs, plaintiffs and those third parties whose privilege has been violated will have no
choice but to pursue all appropriate legal remedies.

Please feel free to telephone me with any questions regarding the above.

Very truly yours,

Marc Toberoff

cc:    Michael Bergman, Esq. (via email)
       Patrick Perkins, Esq. (via email)
       James Weinberger, Esq. (via email)

**EXHIBIT 51**
**908**

# EXHIBIT A

EXHIBIT 51
909

**WWBCGE**

VIA FAX (w/o enclosures)
VIA MESSENGER

May 22, 2007

David S. Eisen, Esq.
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angles, California 90017

**Michael Bergman**
a professional corporation
mbergman@wwllp.com

Our File No. 2231.811

Re:   *Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
USDC Central District of CA, Case No. 04-08776 SGL (RZx)
*Joanne Siegel and Laura Siegel Larson v. Time Warner, Inc., et al.*
USDC Central District of CA, Case No. 04-08400 SGL (RZx)

Dear Mr. Eisen:

We have received a copy of Marc Toberoff's sworn declaration, which he served on you yesterday pursuant to Judge Zarefsky's April 30, 2007 Order, along with an accompanying cover letter setting forth Mr. Toberoff's interpretation of the Order.

While Mr. Toberoff is correct that Escrow Documents that were originally listed on the privilege logs of non-party witnesses should not be released, he is incorrect in his assertion that unlisted post-litigation documents should not be released. Mr. Toberoff represented to Judge Zarefsky that each of the Escrow Documents had been produced or had been listed on a privilege log. (*See* Transcript, enclosed herewith, at 10:17 - 11:25). Notably, he did not inform Judge Zarefsky – as he is now asserting – that there were post-litigation documents that he had neither identified on a privilege log nor produced. Based on what Mr. Toberoff expressly represented during the hearing, Judge Zarefsky entered his Order, which is unequivocal and does not make any exception for post-litigation documents: "the escrow holder, Mr. Bergman [sic], is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs. The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, privilege has been waived because they weren't listed on the privilege log." (*See* Transcript at 19:8-20:18). If Mr. Toberoff disagreed with the Order, he could have filed objections within 10 days, as provided by Local Rule 72-2. He chose not to do so, however, and because those documents were neither identified on a privilege log nor produced, they must be released to Defendants pursuant to Judge Zarefsky's Order.

To assist you in your review, we have compiled the documents Mr. Toberoff has identified in his declaration as having previously been produced, which we have

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 WILSHIRE BLVD. NINTH FLOOR, BEVERLY HILLS, CA 90212  T: 310.858.7888 F: 310.550.7191 WWW.WWLLP.COM

331458_1.DOC

EXHIBIT 1

384

EXHIBIT 51
910



David S. Eisen, Esq.
May 22, 2007
Page 2

enclosed so that you can compare them to the Escrow Documents in your file.
We have also enclosed the privilege logs he cites to so that you can compare
the privilege entries to the Escrow Documents in your file.   It is Defendants'
position that any document that does not match up exactly to an identified entry
on the privilege logs should not be returned to Mr. Toberoff, but should instead
be produced to Defendants.   We note in particular that one of the Escrow
Documents that Wayne Smith placed in the "non-privileged" pile during his brief
review of the documents – correspondence concerning the interest in Superman
that might be owned by Plaintiff Laura Siegel's estranged step-brother, Michael
Siegel – has never been produced in this litigation, and does not appear to have
been listed in any privilege log. (See Declaration of Wayne M. Smith in Support of
Defendants' Motion to Compel Production of Whistle-blower Documents, ¶ 9).[1]
Nor does it appear to have been identified in the declaration Mr. Toberoff sent to
you.   We are accordingly concerned that the items listed in Mr. Toberoff's
declaration as privileged precisely match the identified Escrow Documents in
your possession.

Moreover, Mr. Toberoff has identified certain documents as appearing on the
privilege log of Don Bulson, who is counsel for Michael Siegel (Q 40, 57-58, 75-76,
352, 400-401, 489-90, 672-673, 761-762). From the privilege log, these documents
appear to be correspondence between Mr. Toberoff and Mr. Bulson. As such, on
Mr. Bulson's log, the basis for withholding the documents is the common interest
exception to the privilege waiver.   (The propriety of Mr. Bulson's assertion of the
common interest exception is the subject of a pending motion to compel in the
Northern District of Ohio.)   However, it must be noted that Mr. Toberoff has not
identified any corresponding copies of these documents on the Siegel privilege
logs, which undermines any claim of common interest.  With respect to these
documents, we believe that they should have been identified on both a Siegel
log *and* the Bulson log to qualify for the common interest exception.
Accordingly, these documents should be turned over as well.

In sum, Judge Zarefsky's Order requires that you turn over every Escrow
Document that was not previously produced by Plaintiffs or was not previously
identified on Plaintiffs' privilege logs, which includes the "un-dated defamatory
cover letter" and any post-litigation communications. If you are not prepared to
turn these documents over to Defendants based upon your review of the
Transcript, then we request that you retain those documents to allow Defendants
the opportunity to file a motion for contempt.  Again, we thank you for your
assistance in this matter.

---

[1] Pursuant to your request in your May 18, 2007 letter, the parties' briefs and
supporting papers are enclosed herewith.

WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

385

**EXHIBIT 51**

911

David S. Eisen, Esq.
May 22, 2007
Page 3


Sincerely,

Michael Bergman

MB:jra
Enclosure
cc:    Marc Toberoff, Esq. (w/o enclosures)


WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP

386

# EXHIBIT B

EXHIBIT 51
913

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx); CV 04-8776-SGL (RZx)      Date:  September 17, 2007

Title:    JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
corporation; DC COMICS INC., a corporation; and DOES 1-10
================================================================
PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                             Theresa Lanza
        Courtroom Deputy Clerk                 Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

 Marc Toberoff                          Michael Bergman
                                        Roper L. Zissu
                                        Patrick T. Perkins

PROCEEDINGS:    ORDER RE OUTSTANDING DISCOVERY MATTERS

        At the conclusion of the September 17, 2007, hearing on the parties' cross-motions for
partial summary judgment in the Superman, CV-04-8400-SGL, and the Superboy,
CV-04-8776-SGL, matters, which motions the Court then concurrently took under submission, the
Court heard argument from counsel regarding outstanding discovery issues.  Except as set forth
below, discovery in these matters is **ORDERED** closed:

(1)    Consistent with the September 11, 2007, Joint Stipulation of the parties, Bryan Singer is
       **ORDERED** to sit for a deposition by no later than November 30, 2007;

(2)    Plaintiff Laura Siegel Larson is **ORDERED** to sit for a deposition by no later than October 9,
       2007, said deposition not to exceed two hours in length;

(3)    Defendant DC Comics is **ORDERED** to produce the "reserve account documents" to
       plaintiffs on or before Friday, September 21, 2007;

MINUTES FORM 90                                      Initials of Deputy Clerk __jh__
CIVIL -- GEN                                         Time:  3/50



DOCKETED ON CM

SEP 1 9 2007

BY _____ 044

**EXHIBIT 51**
914

(4)    Defendants are **ORDERED** to produce to plaintiffs all requested "ultimates" as referenced in the September 14, 2007, Declaration of Steven Sills at ¶¶ 10-11 by Friday, September 21, 2007;

(5)    Plaintiffs ex parte application for an order modifying the Court's August 13, 2007, discovery order is **GRANTED** in part in that plaintiffs are afforded until October 9, 2007, to complete their damages-related audit of defendants Time Warner, Inc., Warner Bros Entertainment, Inc., Warner Bros Television Production, Inc., and DC Comics.

(6)    The "escrow attorney" referenced at the hearing is directed to submit by Friday, September 21, 2007, to the Court for in camera review the nine documents which plaintiffs had either not previously produced to defendants or were not listed on a privilege log in connection with this litigation. Counsel for plaintiffs is **ORDERED** to submit a declaration on or before Friday, September 21, 2007, setting forth the grounds for any claims of privilege relating to said documents; defendants may file a response to the declaration on or before Tuesday, September 29, 2007. The motion to compel which defense counsel informed the Court has been or was being filed with the magistrate judge is hereby rendered **MOOT**.

Finally, the trial date in the Superman matter remains January 22, 2008. The trial date in the Superboy matter will be set thereafter by the Court.

**IT IS SO ORDERED.**

# EXHIBIT C

EXHIBIT 51
916

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL, ET AL, | ) CASE NO(s): CV 04-8400-SGL(RZx) |
| | ) CV 04-8776-SGL(RZx) |
| Plaintiffs, | ) |
| | ) CIVIL |
| vs. | ) |
| | ) Los Angeles, California |
| TIME WARNER, INC, ET AL, | ) Monday, April 30, 2007 |
| | ) (10:45 a.m. to 11:28 a.m.) |
| Defendants. | ) |

1)    DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
AT DEPOSITION;

2)    DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
RELATING TO AUTHORITY;

3)    DEFENDANTS' MOTION TO COMPEL PRODUCTION
OF WHISTLE-BLOWER DOCUMENTS;

4)    PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES

BEFORE THE HONORABLE RALPH ZAREFSKY,
UNITED STATES MAGISTRATE JUDGE

Appearances:    (See next page)

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

EXHIBIT 51
917

EX    10

2

<u>APPEARANCES FOR:</u>


Plaintiffs:                MARC TOBEROFF, ESQ
                           1999 Avenue of the Stars
                           Suite 1540
                           Los Angeles, CA 90067

Defendants:                MICHAEL BERGMAN, ESQ
                           Weissmann Wolff Bergman, et al.
                           9665 Wilshire Blvd., Suite 900
                           Beverly Hills, CA 90212

Court Reporter:            Recorded; FTR

Courtroom Deputy:          Ilene Bernal

Transcribed by:            Exceptional Reporting Services, Inc.
                           14493 S. Padre Island Drive
                           Suite A-400
                           Corpus Christi, TX 78418-5940
                           361 949-2988

**EXHIBIT 51**
**918**

3

1        <u>Los Angeles, California; Monday, April 30, 2007; 10:45 a.m.</u>

2                           <u>(Call to Order)</u>

3          THE COURT:  Let's call the next case.

4          THE CLERK:  Item number five.  Case Number CV-04-

5    8400-SGL-RZX, and related case, CV04-8776-SGL-RZX; *Joanne*

6    *Siegel, et al. versus Time Warner, Inc., et al.*

7          Counsel, please make your appearances.

8          MR. TOBEROFF:  Good morning, your Honor.  Marc

9    Toberoff for the plaintiffs.

10         THE COURT:  Good morning.

11         MR. BERGMAN:  Good morning, your Honor.  Michael

12   Bergman for the defendants.

13         THE COURT:  Good morning.  All right, we've got four

14   motions on.  Let's start with Plaintiff's Motion to Compel the

15   Answers to Interrogatories.  I read the materials.  Don't need

16   to repeat anything.

17         Do you wish to be heard, Mr. Toberoff?

18         MR. TOBEROFF:  Yes, your Honor.  I just want to

19   highlight a couple points if I may.  Essentially, when I

20   drafted these four Interrogatories on behalf of plaintiffs, I

21   did so with the *Safeco* case in mind and with Federal Rule of

22   Civil Procedure 33(a).  Essentially, each party, each

23   plaintiff, asked one question to each of the defendants.

24         THE COURT:  I read them.

25         MR. TOBEROFF:  Okay.

EXCEPTIONAL REPORTING SERVICES, INC

**EXHIBIT 51**
**919**

12

4

1        THE COURT:  I really have -

2        MR. TOBEROFF:  All right.

3        THE COURT:  - read this material.

4        MR. TOBEROFF:  Okay, thank you.

5            So, what I do want to point out is that *Safeco*, which

6    is now being used by the defendants to claim that, essentially,

7    each single Interrogatory pertaining to a single RFA and asking

8    for the basis of the RFA is actually three Interrogatories,

9    does not stand for that proposition.

10           In *Safeco*, the Interrogatory in question was already

11   divided into three Interrogatories, so the Court never

12   addressed the question of whether the Interrogatory consists of

13   three subparts, which is the question here.  Instead, the Court

14   simply said that when an Interrogatory is tied to a Request for

15   Admission response, then that counts for one Interrogatory.

16           And the Court even went so far to say that sometimes

17   an Interrogatory focusing on multiple RFAs can stand for one

18   Interrogatory as opposed to multiple Interrogatories if the

19   RFAs are related to a common theme and logically connected to

20   one another.  So, actually, *Safeco* has language, as we set

21   forth in our motion, that very much supports our motion.

22           And finally, defendants' stonewalling response is

23   evidenced by the fact that after we served these

24   Interrogatories, they used this as an excuse not to answer the

25   Interrogatories, and we've had major problems with their

EXCEPTIONAL REPORTING SERVICES, INC

13

**EXHIBIT 51**

**920**

5

1  discovery, their failure to respond to our discovery, which is

2  the subject now of multiple motions which we would like to have

3  avoided.

4        THE COURT:  All right, thank you.

5        Mr. Bergman?

6        MR. BERGMAN:  Thank you, your Honor.

7        Your Honor, on that last point I would like to note

8  that when the defendants responded to these Interrogatories, we

9  offered to do what Mr. Toberoff had offered to do when the

10  tables were turned, and that is to have him select the

11  Interrogatories that he wanted to have answered within the 25

12  limitation of Rule 33.

13        I'd just like to emphasize, your Honor, that the

14  problem with these Interrogatories begins with the Request for

15  Admission on which they're based.  As we've quoted in our

16  moving papers, there are Requests for Admission that ask us to

17  admit, for example -

18        THE COURT:  I read this, Mr. Bergman.  You don't need

19  to reiterate it.

20        MR. BERGMAN:  Okay.  The other point I would like to

21  make, Judge, is that these are not logically subsumed within

22  each other; that there is no primary question; there is no

23  secondary question.  Reasons are one thing; facts are another;

24  evidence is another.

25        And finally, your Honor, the burdensome nature of

14

EXHIBIT 51
921

6

1   these Interrogatories is compounded by the fact that we're

2   talking about events that occurred 70 years ago.  Why didn't we

3   admit, why did we deny, that we paid other people to work with

4   Mr. Siegel 70 years ago?  Well, that's quite a burden.  Why do

5   we deny that the Adventures of Super Boy appeared in hundreds

6   of comic books?  Facts, evidence, reasons; that's quite a

7   burden.  We believe that they're burdensome.  We attempted to

8   have Mr. Toberoff select those Interrogatories that he felt

9   were essential, and he declined to do so.

10          THE COURT:  All right, thank you.

11          MR. BERGMAN:  Thank you, your Honor.

12          THE COURT:  All right.  On this motion, in the

13   Court's view, the motion does raise issues which at least are

14   discussed in *Safeco*.  It's 183 Federal Rules Decision 669, a

15   1998 case from this district.

16          Now, to begin with, the Court has great concern about

17   the propriety of even asking these kinds of Interrogatories,

18   which, as defense counsel's indicated, spin off of Requests for

19   Admissions.

20          Now, in the Court's view they spin off Requests for

21   Admissions with a 'gotcha' kind of mentality, and Professors

22   Wright and Miller have stated, and the Court agrees, Rule 36 is

23   not, strictly speaking, a discovery device.  It's a device for

24   shortening the proof required at trial.

25          And the rule has its own remedy if there is a problem

15

**EXHIBIT 51**
**922**

7

1    with a Request to Admit.  The propounding party can move to

2    determine the sufficiency of the answers or objections.  But

3    Interrogatories which take a party's failure to unqualifiedly

4    admit and then ask, argumentatively, for the party to justify

5    such a failure, those are questionable discovery devices.

6            And beyond that, these Interrogatories do in fact, as

7    in *Safeco*, ask more than single questions.  Even considering

8    that questions which are related, such as a witness's name and

9    address, for example, those are properly considered part of the

10   same question; but asking for reasons as well as evidence as

11   well as all facts in this Court's view does impermissibly ask

12   for several distinct answers, and any one of them might be

13   objectionable as overbroad, burdensome, calling for work

14   product, and a whole host of other objections.

15           But for the moment, all that the Court does conclude

16   is that the allowed number has been exceeded.

17           Plaintiffs' Motion to Compel is denied.

18           Both Requests for Sanctions are denied.

19           All right, let's move to what has so elegantly been

20   called the 'whistleblower' documents and the Motion to Compel

21   with respect to them.

22           It seems to me there's a lot of noise about this

23   motion, but I don't know how much substance there is.

24           MR. BERGMAN:  Frankly, your Honor, I don't think

25   there's any substance to it in the sense that it could be

EXCEPTIONAL REPORTING SERVICES, INC

EXHIBIT 51

923

16

8

1    avoided today.  It could have been avoided months ago.

2         Mr. Toberoff keeps taking the position that these

3    documents have been - non-privileged documents have been

4    produced; privileged documents have been listed in a privilege

5    log.  All we have been saying, and what I said to Mr. Toberoff

6    during a meet and confer, what one of my associates wrote to

7    him in a letter, is 'show it to us'.  Identify the documents,

8    the unprivileged documents that you have produced, by reference

9    to the Bate stamp numbers that Mr. Quinn's office put on the

10   document, and identify the documents which are listed on a

11   privilege log, once again, by reference to the Bate stamp

12   numbers that Mr. Quinn put on.  If that is done and we see

13   that, yes, indeed, all unprivileged documents have been

14   produced, all privileged documents have been listed, then

15   there's no further dispute.

16        If, on the other hand, we see that all unprivileged

17   documents have not been produced, well, we should be able to

18   see those documents.  And if all of the privileged documents

19   have not been produced or, rather, put on an exhibit list, a

20   privilege log, that would be a waiver of the privilege as to

21   those documents and we should be entitled to see those

22   documents, too.

23        The question is: How do we resolve this?  Well,

24   there's an easy way, and that is what we're suggesting, Judge,

25   and what we've been suggesting from the beginning.

EXHIBIT 51
924

17

9

1          THE COURT:  All right.  Mr. Toberoff?

2          MR. TOBEROFF:  Your Honor, I want to make sure the

3    Court understands what we're talking about here, which he

4    claims is just a simple discovery matter that should be easily

5    resolved under Rule 34, the way you deal with Requests for

6    Production in which you produce responsive documents and you

7    list in the privilege log any that are privileged.

8          First of all, plaintiffs have done so and so have I,

9    in full compliance with Rule 34.  We're talking about here an

10   arrival -

11         THE COURT:  No, I know what we're talking about.

12         MR. TOBEROFF:  Right.

13         THE COURT:  The documents showed up at Warner

14   Brothers -

15         MR. TOBEROFF:  Right.

16         THE COURT:  - and I read what Warner Brothers did

17   with them.  They segregated them into three piles; they sent

18   them over to Mr. Quinn; Mr. Quinn Bate stamped them; he made a

19   copy; he sent the copy to you, and now we're stuck with what to

20   do with the ones that are left in Mr. Quinn's office.  I

21   understand what we're talking about.

22         MR. TOBEROFF:  I understand that, your Honor.  These

23   documents are a pile about this high (indicates) -

24         THE COURT:  Okay.

25         MR. TOBEROFF:  - where a former attorney of mine, who

EXCEPTIONAL REPORTING SERVICES, INC

**EXHIBIT 51**

**925**

10

1   was terminated in November, went through not just the

2   plaintiffs' files in this case but the files of Joe Schuster's

3   family and other witnesses and other companies that I

4   represent, selected documents, and, after trying to essentially

5   steal not only the plaintiffs' clients in this case and other

6   clients of mine by disparaging me, and after he was rejected in

7   early December of 2005, he sent these documents to John

8   Schulman, the general counsel -

9          THE COURT:  I understand all that, Mr. Toberoff.

10         MR. TOBEROFF:  - and two other executives.  These are

11  documents -

12         THE COURT:  But that's not important to this

13  resolution.

14         MR. TOBEROFF:  Well, it's important -

15         THE COURT:  The question is -

16         MR. TOBEROFF:  It's important to me.

17         THE COURT:  They have documents.  The question is:

18  Have you otherwise produced them?  That's all that's at issue,

19  isn't it?

20         MR. TOBEROFF:  I have, your Honor.  I have put in a

21  declaration unequivocally that even though I'm not obligated to

22  do so, and jump through hoops of having to respond and own up

23  to documents stolen from my legal files, an obligation that

24  does not apply to the defendants in this case and does not

25  apply to parties under Rule 34, I nonetheless went through

EXCEPTIONAL REPORTING SERVICES, INC

19

**EXHIBIT 51**

**926**

11

1   every single one of those documents, which they, instead of

2   returning the originals, returned to me with Bate stamps,

3   checked it against our production, and found two documents that

4   were non-privileged that hadn't been produced that consisted of

5   letters from plaintiffs to DC Comics, which I produced.

6          THE COURT:  See, your declaration doesn't quite say

7   that, Mr. Toberoff.  I read your declaration.

8          MR. TOBEROFF:  The intention of the declaration is to

9   say exactly what I'm saying now; that I went through my files,

10  not just the plaintiffs' files, which is all the motion

11  pertains to, but all my files, all the third-party witness

12  files -

13         THE COURT:  Forgive me for interrupting.  Your

14  declaration does say that.  What your declaration doesn't say

15  is that you went through these, let's call them 'whistleblower'

16  documents, even though that may not be an accurate statement,

17  you went through these whistleblower documents, and that you

18  verified that each of the whistleblower documents either had

19  been produced or had been listed on the privilege log.  It

20  doesn't say that.

21         MR. TOBEROFF:  That is the case, your Honor, and that

22  was certainly my intention to say that, and I'm saying that

23  now.

24         THE COURT:  All right, then we can get that cleared

25  up immediately.

EXCEPTIONAL REPORTING SERVICES, INC

**EXHIBIT 51**
**927**

20

12

1          MR. TOBEROFF:  I'd be happy to take an oath and say

2    that, because that is precisely what I did.

3          THE COURT:  Okay.

4          MR. TOBEROFF:  And that was definitely my intention

5    in the declaration.  They claim my declaration doesn't say

6    that.  That was certainly my intention.  That's exactly what I

7    did.  And I also put in my declaration, with the utmost

8    specificity, what documents I found that had not been produced

9    and how I produced those documents.

10          THE COURT:  Yes, you did that.  I agree with that.

11          MR. TOBEROFF:  But the point here, your Honor, is

12    that there are certain procedures which plaintiffs and

13    defendants have to follow.  If the situation was reversed,

14    where I was suddenly sent a stack of documents from the general

15    counsel's files at Warner Brothers or from Mr. Bergman's files,

16    and I sat on those documents, and we believe they sat on these

17    documents from November or December of 2005, even from the date

18    that they say, they sat on these documents, and their letters

19    suggest this uneasy, queasy way in which they dealt with the

20    documents where they didn't say, 'We received documents that

21    are attorney-client privileged that are obviously from your

22    files.'  They referred vaguely to certain documents.

23          They retained another lawyer which they purported to

24    say was a 'neutral', even though that lawyer is obviously not a

25    neutral, because all his suggestions protect defendants, and

EXCEPTIONAL REPORTING SERVICES, INC

21

EXHIBIT 51
928

13

1   he's under a retainer and undoubtedly paid by the defendants.

2   They retained this neutral –

3        THE COURT:  I'm sure Mr. Quinn would enjoy receiving

4   money from you as well, Mr. Toberoff.

5        MR. TOBEROFF:  Well, I understand, but I did not

6   retain him.  And to his credit, he never said that he was a

7   neutral in this matter.

8        THE COURT:  No.  He's not neutral in the sense that

9   he is retained by the defendants, but what he did, as I

10  understand it, and there's no suggestion otherwise, is that he

11  acted as an escrow.  That is, Mr. Bergman didn't look at these

12  documents.  Trial counsel didn't look at these documents,

13  right?

14        MR. BERGMAN:  That's correct, your Honor.

15        THE COURT:  The in-house counsel took these

16  documents, probably consulted with Mr. Bergman, 'I don't know,

17  what do we do?', the decision was made, 'Let's give them to a

18  third party and let's try and get the Court involved'.  And

19  then there was that little problem of not following the local

20  rules where there was an ex parte communication with the Court,

21  which you pointed out in your papers here.  But the procedure

22  does not seem unreasonable to me.

23        MR. TOBEROFF:  Let me ask this.  There are rules why

24  a police officer can't march into your house without a warrant

25  and rifle through your house looking for things.  And the

EXCEPTIONAL REPORTING SERVICES, INC

22

**EXHIBIT 51**
**929**

14

1    answer to the objection to him doing so is not, 'Well, what do

2    you have to hide?'  There's a simple procedure here.  If you

3    have nothing to hide, why can't I rifle through your house?

4    The analogy may not be exact, but it's comparable.

5            This has an unseemly feel to it, because when you add

6    up all of the supposedly sanitizing procedures, and I have

7    great doubts that they received these documents when they said

8    they did, and when I asked for them to substantiate when they

9    received the documents, they had absolutely no information.

10   And I know from my experience with big studios that they have

11   guards and mail rooms and executives and people at their beck

12   and call who keep track of these sorts of things meticulously.

13   They have no evidence whatsoever to support the claim as to

14   when they received documents.

15           I believe they got these documents, the cover letter

16   said, 'This is an early Christmas present.'  You don't write a

17   letter like that in June.  And so they sat on these documents

18   for three or four months figuring, 'How can we use this

19   theft'?, which is an outrageous act.  I'm not hiding behind

20   hyperbole.  It is outrageous.  If it happened to any lawyer, if

21   it happened to Mr. Bergman, you would be outraged.

22           They are saying, 'How do we use this outrageous act

23   as a tactical advantage?'

24           THE COURT:  If they were doing all that, why would

25   they go through this process?  Why wouldn't they just -

EXCEPTIONAL REPORTING SERVICES, INC

23

**EXHIBIT 51**
**930**

15

1            MR. TOBEROFF:  Because, they can't -

2            THE COURT:  - keep the documents and spring them on

3    you?

4            MR. TOBEROFF:  Because they can't use the documents.

5    They need to first sanitize it by saying, 'You need to jump

6    through these additional hoops that are not applicable to the

7    defendants; that would not be applicable to you or the

8    plaintiffs, but because we have what they call a 'twist of

9    fortune' of receiving documents stolen wholesale from your

10   files, we are now going to take advantage of that, and we have

11   a right to take advantage of that.'

12           THE COURT:  But Mr. Toberoff, you tell me that

13   everything that's not privileged has been produced except for

14   two small items, and everything that is -

15           MR. TOBEROFF:  We produced those items, your Honor.

16           THE COURT:  Right.  Okay.  So, what huge advantage is

17   there for the defendants to gain if what you say is true?

18           MR. TOBEROFF:  I'm objecting to this procedure, and

19   you are asking me what I said before.  Why not illegally search

20   your house if you have nothing to hide?  What do you have to

21   hide?  I have nothing to hide.

22           I find this whole process frankly outrageous, and I

23   am standing here, your Honor, and lawyers may speak this way

24   just as a cover or to muddy the waters.  I am not.  I am

25   standing here with a firm conviction that, as a matter of

16

1   principle, when they received these documents, they should have

2   immediately picked up the phone.  It was obvious these

3   documents had been stolen from my files.  It is obvious from

4   the cover letter what had happened.

5          There's nothing whistleblower about a lawyer who is

6   bound by the attorney-client privilege taking documents and

7   communications with a client and sending them over to the

8   opposing side in the middle of a heated litigation where each

9   side is supposed to be able to rely on the confidential

10  attorney-client privilege and work product doctrine.  Doing

11  that in the middle of a lawsuit, they should have picked up the

12  phone, immediately called me and immediately returned the

13  documents.  That's not what they did.

14         Wayne Smith wrote in his declaration that he looked

15  at these documents twice.  First. he looked at them outside the

16  office of John Schulman.  Then he took them home with him.  And

17  although he didn't look at the documents or really review them

18  in any substance, and there's been no supposed communications

19  with defense counsel, he marked them 'privileged', 'non-

20  privileged', and 'potentially privileged'.  You can't do that

21  without reviewing the substance of these documents.

22         And now they're pushing for me to have to account and

23  atone, by their Bates numbers, the documents illegally stolen

24  from my offices.  And they are claiming to me that, 'Well, why

25  not do this?  Isn't it your obligation under Rule 34 to produce

EXHIBIT 51
932

17

1    documents?'  And my answer to that is, 'It is my obligation.

2    I've satisfied that obligation.  I've put in a declaration, and

3    I'm saying here and I'm willing to swear the oath that we have

4    produced all those documents.'  More than that, we do not have

5    to do.

6            And so I'm standing here on principle, your Honor,

7    and I believe if you look closely into those principles, you'll

8    find that it's improper for the defendants and defendants'

9    counsel to seek to take advantage of this theft of legal files

10    in the middle of a lawsuit.  And if it was the other way

11    around, they would be screaming bloody murder.  And I don't

12    believe they would be compelled to have to atone, by my Bate

13    stamps, on documents lifted from their legal files.  And I

14    guarantee you if I had that opportunity, considering that they

15    have stonewalled us in discovery, I would find a great deal of

16    useful information.

17            If it was the reverse and I received a package like

18    that, I would have picked up that phone, I would have called

19    them, and I would have returned the documents.  And that's what

20    they should have done, and they didn't do that.  And it's

21    outrageous, your Honor.

22            **THE COURT:**  All right.  Thank you, Mr. Toberoff.

23            Anything further, Mr. Bergman?

24            **MR. BERGMAN:**  Just a couple of things, your Honor.

25            As your Honor has probably seen from the papers,

18

1   Warner Brothers did exactly what the cases and the ABA 1994

2   opinion tells it to do.

3          THE COURT:  I read the papers, Mr. Bergman.

4          MR. BERGMAN:  Okay.  The other point, your Honor, is,

5   one of two things happened here.  Either Mr. Toberoff is

6   absolutely correct and this person sent documents which have

7   been produced and which have been listed, or he is not correct,

8   in which event there may not have been documents that should

9   have been produced, produced.  All we want to do is put an end

10  to the issue by having him go through what is certainly not a

11  burdensome or oppressive task of coordinating the documents

12  produced and placed on the privilege list with the Bate stamps.

13         THE COURT:  All right.

14         MR. TOBEROFF:  If I may, your Honor?

15         THE COURT:  I think we've exhausted it, Mr. Toberoff.

16         And I will say that I don't agree with the

17  designation of these as 'whistleblower' documents either, Mr.

18  Toberoff.  And to the extent I have used that term, I use it

19  only as a shorthand version of referring to the documents that

20  are at issue.  If we want to call them the 'escrow' documents,

21  that's fine, too.  I mean, I don't think it qualifies as

22  classic whistleblower in the sense that that term is used in

23  the law.  The defendants used that in their application, and I

24  don't think even they used it in the classic term.

25         But in any event, you know, I'm not making any

27

**EXHIBIT 51**

**934**

19

1    finding that these are in fact in the nature of whistleblower

2    documents.

3              But in my view, I think the defendants have acted

4    professionally, and I think they've acted reasonably.  The

5    record does establish that trial counsel has not reviewed the

6    documents.  They set up a procedure to segregate them, deposit

7    them with an escrow, and seek a resolution of this dispute.

8              Now, I told you, Mr. Toberoff, that I saw a little

9    wiggle room in your declaration.  You tell me you didn't mean

10   for there to be any.  So, here's what I'm going to do.  Not

11   later than May 7th, that's a week from today, I want you to

12   submit a declaration that does identify by the Bates numbers of

13   the escrow documents and the corresponding Bates numbers of

14   documents already produced, those among the escrow documents

15   which are unprivileged and have already been produced.

16             So, you take the Bates numbers of the escrow

17   documents and say, 'Here are the corresponding Bates numbers of

18   the documents that have already been produced.'  Take the Bates

19   numbers of the escrow documents and correspond to the listings

20   on the privilege log of the documents which have not been

21   produced because they were privileged.  All right?  So, put

22   that in your declaration.

23             Then the escrow holder, Mr. Bergman, is to return to

24   the plaintiffs any documents which are identified in the

25   declaration as being privileged and having been identified on

**EXCEPTIONAL REPORTING SERVICES, INC**

28

**EXHIBIT 51**

**935**

20

1   the privilege logs.

2          The others can be delivered to trial counsel for

3   defendants because they're either unprivileged, or, if they

4   were privileged, privilege has been waived because they weren't

5   listed on the privilege log.

6          Now, is it clear what I want done?

7          MR. BERGMAN:  Yes.

8          MR. TOBEROFF:  Are you going to put this in a written

9   order, your Honor?

10         THE COURT:  No, this is it.

11         MR. TOBEROFF:  Okay.  So you would like me to set

12   forth, you would like me essentially to prove that I'm not

13   lying by setting forth in a declaration -

14         THE COURT:  Mr. Toberoff.

15         MR. TOBEROFF:  - this is -

16         THE COURT:  Do you understand what I've ordered you

17   to put in the declaration?

18         MR. TOBEROFF:  I do, your Honor.

19         THE COURT:  All right.  Then that's it.  We're not -

20   You and I are not having an argument.

21         MR. TOBEROFF:  I'm not arguing.  I'm - Okay.

22         THE COURT:  All right?

23         MR. TOBEROFF:  I'm sorry, your Honor, if I'm upset

24   about this.  I think most lawyers would be upset with a

25   situation like this.

EXCEPTIONAL REPORTING SERVICES, INC

29

**EXHIBIT 51**

**936**

21

1          THE COURT:  Okay.  It's fine to be upset.  It's not

2     fine to argue.  All right?

3          Mr. Bergman, do you understand what you're to do?

4          MR. BERGMAN:  Yes, I do, your Honor.

5          THE COURT:  All right.

6          All right, that leaves two motions which are related.

7          MR. TOBEROFF:  Your Honor, how much time do we have

8     to do this, because we're in the middle of -

9          THE COURT:  May 7th.

10         The remaining two motions, in my view, are related.

11    These are the Motions to Compel Answers to certain deposition

12    questions by Mr. Marks and Ms. Larson, and to require Mr. Marks

13    to produce documents relating to his authority.

14         Mr. Bergman, do you wish to be heard on these?

15         MR. BERGMAN:  Yes, your Honor.  I'll be very brief.

16    Your Honor is familiar with this problem.

17         THE COURT:  Yes.

18         MR. BERGMAN:  To this day, we have not received an

19    unequivocal answer as to whether Mr. Marks was authorized by

20    the plaintiffs to convey to Mr. Schulman the statement that is

21    contained in the October 19 letter; that is that the Siegel

22    family has accepted.

23         Mr. Toberoff is going around the bush.  He says that

24    there is no issue as to Marks' authority to have conducted

25    settlement negotiations on plaintiffs' behalf.  We're not

EXCEPTIONAL REPORTING SERVICES, INC

30

**EXHIBIT 51**

**937**

22

1   questioning that.  We just want to know, because it's an

2   essential element of what may be a dispositive counterclaim,

3   did the Siegels authorize Mr. Marks to say to Mr. Schulman

4   they've accepted the offer.  It's not privileged.  It's not

5   confidential.  It's intended, by definition, to be conveyed to

6   the other side, and we believe that we're entitled to it.  We

7   believe that for these same reasons we're entitled to any

8   documents that pertain to the authority.  After all, that

9   affirmative defense still lingers on in the pleadings.  It

10   hasn't been dismissed.  And I believe that we're entitled to

11   resolve it one way or another as we proceed to trial.

12           THE COURT:  All right, thank you.

13           MR. BERGMAN:  Thank you, Judge.

14           THE COURT:  Mr. Toberoff?  Let me just ask you at the

15   start, Mr. Toberoff.  I guess I must be confused, because I

16   thought you had told me you were going to dismiss those

17   affirmative defenses.

18           MR. TOBEROFF:  Yes, we were, your Honor, and we in

19   fact drafted amended pleadings, and I sent them over to Mr.

20   Bergman and they refused to stipulate to -

21           THE COURT:  No, I remember that.

22           MR. TOBEROFF:  Okay.  But after that -

23           THE COURT:  But after that you told me that you were

24   going to make a motion to dismiss those.

25           MR. TOBEROFF:  After that we didn't make the motion

23

1  to dismiss.  We decided that we could just simply drop it in

2  our joint pretrial order, and it was suggested by one of the

3  attorneys that works for me that, to make this motion based on

4  this simple amendment a full-blown motion to the Court, that

5  would be unnecessary since we could drop it in the pretrial

6  order.  That was initially pled among some multiple affirmative

7  defenses.

8          THE COURT:  No, no, no, I know.  We've been over this

9  before.

10         MR. TOBEROFF:  I understand, your Honor.  But the

11  fact is that plaintiffs signed verified Interrogatory answers

12  on the question of Mr. Marks' authority.  They said he had

13  authority.  He obviously had authority to send the letter as

14  their attorney in the negotiations.  We have not once in this

15  litigation stood by or asserted the claim or defense, and

16  again, you mentioned earlier that you don't know that it even

17  is an affirmative defense.

18         THE COURT:  No, I don't think that's the way it came

19  up.  I think Mr. Bergman said he wasn't sure if it was an

20  affirmative defense.  That's my recollection of it.

21         MR. TOBEROFF:  Okay.

22         THE COURT:  But I could be wrong.

23         MR. TOBEROFF:  I think there was some mention of it

24  in -

25         THE COURT:  We had a colloquy on it.

EXCEPTIONAL REPORTING SERVICES, INC

32

**EXHIBIT 51**
**939**

24

1           MR. TOBEROFF: Right. I don't think I was going by a

2   transcript; I think I was going by something in the order. But

3   be that as it may, we've never asserted this. They've asked,

4   as I said, Interrogatories, verified answers, answered the

5   question as to authority. They asked the question specifically

6   in Laura Siegel's deposition; she answered the question

7   specifically. I can read you the answer.

8           The question was, again, put in two prior motions,

9   and for procedural reasons, because this is a retread and

10  essentially a motion of reconsideration without being a motion

11  of reconsideration with respect to re-deposing Laura Siegel,

12  that's also relevant. But they've asked the question over and

13  over again. They know the answer to the question. He had

14  authority to send that letter. That's not what this is about.

15          This is about using this as a red herring or an

16  excuse to enter and invade the sanctum of the attorney-client

17  privilege so that they could rephrase the question of authority

18  in legal buzz words to try and formulate, from an answer,

19  something that they can then claim will form an agreement.

20  That's all they're doing here.

21          There's no issue of whether Mr. Marks had authority

22  to send that letter. He absolutely had the authority. We've

23  said so over and over again. I don't believe the fact that it

24  remains as an affirmative defense in our original complaint,

25  filed two years ago, when we've asked them to stipulate to

33

**EXHIBIT 51**
**940**

25

1    allow us to amend it and are simply going to do this in a joint

2    - and I will represent to the Court that we're going to do this

3    in our joint pretrial order, we'll drop that affirmative

4    defense, that that becomes the lynch pin to open the door to

5    start asking questions about their communications about this

6    authority.

7              The case law - Excuse me.  May I just get a glass of

8    water?

9         (No audible response)

10        (Pause)

11             MR. TOBEROFF:  Their theory that authority is

12   something that one intends to communicate to the other side,

13   and therefore they can ask questions about that authority with

14   respect to a settlement negotiation, doesn't work, because

15   during the settlement negotiation the authority to agree to any

16   one term or a number of terms in a complex negotiation, which

17   this was, is necessarily linked to your settlement strategy.

18   How much do you ask up front?  How much do you settle for?  All

19   those things are linked.  Just because the ultimate authority

20   of the attorney to represent you in the settlement negotiations

21   or to send a letter is necessarily communicated to the other

22   side, that doesn't implicate the substance of your settlement

23   discussions with that attorney.

24             THE COURT:  Let me just ask you a question, Mr.

25   Toberoff.  I just want to make sure I'm clearly understanding

EXCEPTIONAL REPORTING SERVICES, INC

34

**EXHIBIT 51**

**941**

26

1   you.  Are you saying that the October - was it October 19th

2   letter?

3            MR. TOBEROFF:  October 19th, 2001, yes.

4            THE COURT:  All right, which was signed by Mr. Marks,

5   right?

6            MR. TOBEROFF:  Yes.

7            THE COURT:  That that represents the statement of the

8   plaintiffs?

9            MR. TOBEROFF:  Yes.

10           THE COURT:  Okay.  All right.  Go ahead, if you have

11   anything further.

12           MR. TOBEROFF:  So, I'll just give you the question

13   that was already posed to Laura Siegel in her deposition.

14           THE COURT:  You don't need to read that again.

15           MR. TOBEROFF:  Okay.  I was going to give you her

16   answer to show that she's answered that question.

17           THE COURT:  You don't need to do that.  I've seen it.

18           MR. TOBEROFF:  Okay.

19           Now, the questions that they seek to - First of all,

20   as an initial matter, their motion with regard to Laura Siegel

21   is improper because it constitutes a motion for

22   reconsideration.

23           THE COURT:  Yeah, I read your argument on that.  I'm

24   familiar with that.

25           MR. TOBEROFF:  Do you have any questions for me about

35

**EXHIBIT 51**

**942**

27

1    that argument?

2          THE COURT:  I don't.

3          MR. TOBEROFF:  Okay.  They ask -

4          THE COURT:  I really don't need the two of you to

5    rehash what's in this (indicates).

6          MR. TOBEROFF:  Okay.

7          THE COURT:  And I'm holding up an eight-inch stack of

8    papers.  I really don't.

9          MR. TOBEROFF:  All right.  Well, I would just like to

10   point out one thing to you.

11         THE COURT:  Okay.

12         MR. TOBEROFF:  They have a question, they have only

13   two questions for Laura Siegel.

14         'Did you ever instruct Mr. Marks to communicate to

15         the lawyers for DC Comics that there should be a

16         correction made in this letter?'

17         And they put the cart before the horse, and they pre-

18   suppose that if a communication had taken place, then therefore

19   that was intended to be communicated to the other side, and

20   therefore, because it was intended to be communicated to the

21   other side, she has to answer this question.

22         There's no evidence that there was any such

23   communication to the other side objecting, and therefore, their

24   logic is flawed.  Without any evidence of this third-party

25   communication, they can't say there was any intention to

EXCEPTIONAL REPORTING SERVICES, INC

**EXHIBIT 51**
**943**

28

1    communicate this to the other side, and therefore you have to

2    answer questions as to whether such communication took place.

3              Do you see?  It's illogical.  And they're using this

4    one thought in a case which is curtailed, and we've

5    distinguished the case, to try and open the door to the whole

6    attorney-client privilege.  They've already done this with

7    Laura Siegel.  They already made this motion.  They made a

8    motion for reconsideration.  All these issues have been before

9    the Court before, and I don't -

10             THE COURT:  Yes, these issues do seem to have a

11   certain familiarity to them.

12             MR. TOBEROFF:  And I don't believe that because of

13   this vestigial 37th affirmative defense, which we've asked

14   could we please remove, and we didn't want to make a full-blown

15   motion, and we haven't asserted and we've constantly restated

16   that, no, this is not an issue, that that should be able to

17   open the door for them to invade the attorney-client privilege.

18             It's clear also from their papers they do not just

19   want to ask two questions, because they're constantly asserting

20   'and reasonable follow-up questions'.  And to the extent the

21   Court is inclined to grant any of this, and I don't think it

22   should be, these things can easily be posed in Interrogatories,

23   and in fact the cases say that these types of questions that

24   are mixed questions of law and fact are better posed in

25   contention Interrogatories which, if you find it necessary, we

EXHIBIT 51
944

37

29

1   would answer.

2            Thank you, your Honor.

3            THE COURT:  All right.  Thank you, Mr. Toberoff.

4            Mr. Bergman, anything further?

5            MR. BERGMAN:  One very quick point, your Honor.

6            Your Honor's question to Mr. Toberoff and his

7   response to you brought him closer than he's ever been before

8   to where we believe he has to go.  But he's just the attorney.

9            Throughout his argument, he kept saying that the

10  plaintiffs gave Mr. Marks authority to send the letter.  All we

11  want to know is whether they gave him authority to say 'the

12  family has accepted the October 16 offer'.

13           Thank you, your Honor.

14           THE COURT:  All right.  These two motions I'm going

15  to take under submission.  I will get a ruling out very

16  shortly.

17           MR. TOBEROFF:  Thank you, your Honor.

18           MR. BERGMAN:  Thank you, sir.

19           THE COURT:  All right, thank you.

20           I assume Ms. Larson is no relation to Judge Larson.

21           MR. TOBEROFF:  No relation.

22           Your Honor, I'm sorry, could I just ask you to

23  clarify, even though it's simple, because I'm emotional on this

24  issue, obviously, and I want to make sure what we are to do in

25  a declaration.

30

1          It's my understanding that we are to take the Bates

2    numbers of the stolen documents and put in a declaration that

3    such and such a range of numbers we have produced?

4          THE COURT:  No.

5          MR. TOBEROFF:  Okay.  Could you please repeat it for

6    me, because I want to make sure I'm clear.

7          THE COURT:  For example, Bates number, let's call it

8    'escrow'.  Let's try and take pejoratives out of it either way,

9    all right?  So I won't call them whistleblower documents; I

10   won't call them stolen documents.  I'm not denying they're

11   stolen, I'm not saying they're whistleblower documents; I'm

12   just trying to find a neutral term, so I'm calling it 'escrow'.

13   Escrow is usually a neutral term.  All right.

14         Escrow document 00004 corresponds to previously

15   produced document 00006.  Escrow document 00007 corresponds to

16   previously produced document 00009, and so on.

17         MR. TOBEROFF:  Okay.

18         THE COURT:  Privilege escrow document 00015 is a

19   privilege document which was listed on the privilege log as

20   document such and such.

21         MR. TOBEROFF:  Okay.

22         THE COURT:  Privilege documents get returned.  The

23   privilege documents that were listed on the privilege log get

24   returned.  The others get sent to defense counsel.

25         MR. TOBEROFF:  The others get sent to defense

EXCEPTIONAL REPORTING SERVICES, INC

39

**EXHIBIT 51**

**946**

31

1    counsel?

2        THE COURT:  From the escrow.

3        MR. TOBEROFF:  Right.  Even though we've produced

4    them, but because we're saying they're not privileged, they

5    will get sent to defense counsel.  Okay.

6        If we have to match it up that way, could we have a

7    little more time to do that, your Honor, because it will take -

8        THE COURT:  How much time do you need?

9        MR. TOBEROFF:  We're in the middle of opposing a

10   massive summary judgment motion, so as much time as I can get

11   would be appreciated.

12       THE COURT:  Yes, I noticed you were in the middle of

13   all that, because there was some question as to when these

14   motions would be heard, and we were told that it was too

15   difficult to hear them on the 23rd because motions needed to be

16   filed on the 23rd.  And then they were set on the 30th, and then

17   you stipulated to have your motions filed on the 30th.

18       MR. TOBEROFF:  Right.

19       THE COURT:  How much time do you need?

20       MR. TOBEROFF:  Three weeks.

21       THE COURT:  Three weeks?  But you've been through

22   this already, right?  You had to to know -

23       MR. TOBEROFF:  They're a stack like this (indicates),

24   and if we're matching up all the numbers, it means we've

25   produced 2000 documents, so going through those and finding the

EXCEPTIONAL REPORTING SERVICES, INC

40

EXHIBIT 51
947

32

1    production, the 2000 documents.  Also, this doesn't just

2    involve plaintiffs' production, and that's another question,

3    frankly, because the motion is directed at plaintiffs, but what

4    do we do to the extent that there are documents in the stolen

5    documents that don't belong to plaintiffs; that they are

6    documents of the Schusters or documents of other third parties,

7    or documents that appear on the privilege log of Don Bolson,

8    the attorney for Michael Siegel?

9            THE COURT:  Well, now, Mr. Toberoff, didn't you tell

10   me there were only two documents that hadn't been produced that

11   were unprivileged?

12           MR. TOBEROFF:  That's correct, but the ones that have

13   been produced, we still need to match up, and the ones that

14   were listed on the privilege log we would still need to match

15   up.  And we've produced the two documents that haven't been

16   produced.

17           THE COURT:  So, the fact that they're not documents

18   of the plaintiffs, they might be of some other parties, that

19   doesn't have anything to do with - You're just saying it would

20   take longer to match them up?

21           MR. TOBEROFF:  No.  What I'm saying is, this motion

22   only applies to plaintiffs.  It was a motion to compel

23   plaintiffs to do something regarding documents that are their

24   documents in their possession or control.  But out of an

25   abundance of caution and to satisfy everyone, I went through

EXCEPTIONAL REPORTING SERVICES, INC

41

**EXHIBIT 51**
**948**

33

1   the documents and privilege logs, pursuant to four or five

2   subpoenas of third parties, where I have documents pertaining

3   to those third parties.

4           THE COURT:  And are you saying that in the escrow

5   documents there are some documents that came from third

6   parties?

7           MR. TOBEROFF:  Absolutely.  Well, they're actually -

8           THE COURT:  Excuse me.  But documents that

9   nevertheless had already been produced?

10          MR. TOBEROFF:  Yes.

11          THE COURT:  So you are just talking about it taking a

12  little more time to get it done?

13          MR. TOBEROFF:  No.  I'm just talking about the fact

14  that in matching this up, I have to match it up to the

15  production not only -

16          THE COURT:  I understand that.  I understand that.

17          MR. TOBEROFF:  First of all, do you want me to -

18          THE COURT:  So it'll take three weeks you say?

19          MR. TOBEROFF:  Well, there's another question and

20  I'll get to it.  Their motion does not apply to these other

21  documents; it only applies to the plaintiffs.

22          MR. BERGMAN:  Right.

23          MR. TOBEROFF:  Because it's a motion to compel

24  plaintiffs' production, not a motion to compel a third party's

25  production.

34

1          MR. BERGMAN:  Your Honor, there is also a Rule 45

2    subpoena that was issued to Mr. Toberoff seeking the identical

3    documents which is included within the motion.

4          THE COURT:  All right.  You can have three weeks.

5    So, that'll be May 21st.  Match them up from whoever's files,

6    Mr. Toberoff.

7          All right, anything further?

8          MR. BERGMAN:  No, your Honor.

9          MR. TOBEROFF:  Thank you, your Honor.

10         THE COURT:  All right.  Thank you.

11         Any other matters?

12         THE CLERK:  No, that completes the calendar.

13         THE COURT:  All right.  We'll be in recess.

14     (This proceeding was adjourned at 11:28 a.m.)

15

16

17

18

19

20

21

22

23

24

25

EXCEPTIONAL REPORTING SERVICES, INC

43

EXHIBIT 51
950

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          May 15, 2007


TONI HUDSON


**FEDERALLY-CERTIFIED TRANSCRIBER**

EXCEPTIONAL REPORTING SERVICES, INC

44

**EXHIBIT 51**
**951**

# EXHIBIT D

**EXHIBIT 51**
**952**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON, | CASE NO. CV 04-8400-RSWL (RZx) |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS |
| vs. | |
| WARNER BROS. ENTERTAINMENT INC., et al., | |
| Defendants. | |

This matter came before the Court on August 14, 2006 on Defendants' Motion to Compel. Defendants appeared through their attorneys, Michael Bergman and Anjani Mandavia. Plaintiffs appeared through their attorneys Marc Toberoff and Nicholas C. Williamson. The Court heard argument of counsel and took the matter under submission.

Defendants seek to compel Plaintiffs to produce documents falling within five categories, identified as Requests 52-59. In general, these categories concern writings involving certain settlement negotiations between the parties in 2001 and 2002. Plaintiffs apparently have produced documents responsive to these requests, but the documents currently sought all involve attorney-client communications, and the Defendants assert that those documents should be produced because Plaintiffs have waived the privilege.

**EXHIBIT 51**
**953**

58

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 54 of 87    Page ID
#:34685
Case 2:04-cv-08   SGL-RZ    Document 58    Filed   8/2006    Page 2 of 6

1    Defendants assert that Plaintiffs have waived the privilege by putting in issue

2    the authority of their prior counsel to negotiate a settlement.   The privilege may be

3    impliedly waived where a party to a lawsuit places into issue a matter that is normally

4    privileged, if the gravamen of the lawsuit is so inconsistent with the continued assertion

5    of the privilege as to compel the conclusion that the privilege has in fact been waived.

6    *Wilson v. Superior Court,* 63 Cal. App.3d 825,134 Cal. Rptr. 130 (1976).   Defendants

7    assert the alleged settlement in a counterclaim, responding to Plaintiffs' claim to recapture

8    their copyright. At oral argument, both sides confirmed that Plaintiffs had not *pleaded* any

9    lack of authority when they filed the reply to the counterclaim called for by FED. R. CIV.

10   P. 7(a). Thus, as a matter of pleading, Plaintiffs have not themselves taken steps to bring

11   into issue a matter that is so inconsistent with maintenance of the attorney-client privilege

12   that it requires disclosure of attorney-client communications.

13    Instead, Defendants argue that Plaintiffs have done so by their response and

14   supplemental response to a request to admit.   Defendants requested that Plaintiffs admit

15   that their prior counsel was authorized to send a letter of October 19, 2001, the letter

16   which, at oral argument, Defendants stated constituted the contract of settlement.    In

17   response to the request to admit, Plaintiffs asserted various objections, including (by

18   apparent incorporation of introductory objections) the objection of attorney-client

19   privilege, and then denied the request subject to those objections.   In a supplemental

20   response, Plaintiffs qualified their denial further.

21    From these responses, Defendants assert that Plaintiffs have denied that their

22   prior counsel had authority to negotiate a settlement, and therefore have placed the matter

23   in issue and necessarily have waived the privilege with respect to that issue.    This

24   argument makes the request to admit do too much work.  To begin with, the response was

25   not an unqualified denial; it was a denial accompanied by objections.   Whatever the

26   meaning of "subject to" in this context, and whatever the validity of incorporating general

27   objections into specific responses — neither matter of which Defendants address — it is

28   hard to read the response as a denial without limitation. And assuming that the objections

EXHIBIT 51
954

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 55 of 87    Page ID
#:34686
Case 2:04-cv-084 ☾ GL-RZ    Document 58    Filed 0 ☾ /2006    Page 3 of 6

1   *are* properly stated, Defendants never moved to determine the sufficiency of the

2   objections.  *See* FED. R. CIV. P. 36(a).

3        More importantly, however, Defendants misconstrue the office of a request

4   to admit.  A request to admit is not a discovery device in the customary sense of

5   "discovery."  8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE

6   §2253 at 524 (1994)  Rather, it is a method of short-circuiting proof for trial.  Those

7   matters which are admitted do not have to be proved otherwise.  Those which are denied

8   require proof.  FED. R. CIV. P. 36(b).  And if a party denies a matter he should have

9   admitted, the remedy is to require him, upon appropriate motion, to reimburse the party

10   who propounded the request for the expenses incurred in proving up the matter at trial.

11   FED. R. CIV. P. 37(c); *see, e.g., Marchand v. Mercy Medical Center*, 22 F.3d 933 (9th Cir.

12   1994).  In short, responding to a request to admit by denying the request is not the same

13   as affirmatively placing the matter in issue, and certainly not the same as the situation

14   where the gravamen of the action necessarily is inconsistent with maintaining the

15   privilege.

16        Defendants also assert that Plaintiffs waived the privilege explicitly, by

17   sending a copy of a letter, dated September 21, 2002, to a Vice President of DC Comics.

18   That letter, signed by both Plaintiffs, and addressed to their then counsel, states:

19

20        As we previously discussed with you and hereby affirm,

21        we rejected DC Comics' offer for the Siegel Family interest in

22        Superman and other characters sent to us by you on February 4,

23        2002.  We similarly reject your redraft of the February 4, 2002

24        document which you sent to us on July 15, 2002. Therefore due

25        to irreconcilable differences, after four years of painful and

26        unsatisfying negotiations, this letter serves as formal

27        notification that we are totally stopping and ending all

28        negotiations with DC Comics, Inc., its parent company AOL

**EXHIBIT 51**
**955**

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 56 of 87    Page ID
#:34687
Case 2:04-cv-08●●●SGL-RZ    Document 58    Filed ●●/●/2006    Page 4 of 6

1   Time Warner and all of its representatives and associates,

2   effective immediately.

3   This letter is also notification that, effective immediately,

4   we are terminating Gang, Tyre, Ramer & Brown, Inc., and all of

5   your firm's partners, associates and employees as

6   representatives of the Siegel Family interest regarding

7   Superman, Superboy, the Spectre and all related characters and

8   entities. We instruct you to take no further actions on our

9   behalf.

10  Please return all materials regarding the above including

11  but not limited to files, correspondence, notes and documents to

12  us forthwith. These should be sent to Joanne Siegel at the above

13  address.

14  It is a shame that four years were wasted due to DC

15  Comics and AOL Time Warner's greed. We have no intention

16  of publically disparaging DC or any individual in the parent

17  company. However, should DC or its parent company, officers,

18  attorneys, representatives or spokespersons disparage us or our

19  rights, we will vigorously respond in kind.

20

21  Weinberger Declaration, Ex. B. Disclosure of materials previously held in confidence can

22  waive the attorney-client privilege. Here there is no doubt that the privilege, if any exists,

23  has been waived as to this letter. The Court does not agree that it has been waived any

24  more broadly than that.

25  The first paragraph of this letter appears to refer to irreconcilable differences

26  between Plaintiffs and Defendants, not irreconcilable differences between Plaintiffs and

27  their counsel. The entire subject of the paragraph is the settlement negotiations, and how

28  DC Comics' proposal is not acceptable and the underlying negotiations have not been

**EXHIBIT 51**
**956**

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 57 of 87    Page ID
#:34688
Case 2:04-cv-08  SGL-RZ    Document 58    Filed   8/2006    Page 5 of 6

1   fruitful. While it is possible to read the reference to "irreconcilable differences" as a

2   reference instead to differences with Plaintiffs' counsel, that reading is not the one

3   supported by the context in which the statement is made.

4           More importantly, the letter does not open the door to an exploration of the

5   reasons that Plaintiffs discharged their counsel, or just what the irreconcilable differences

6   may have been, or what conversations they had with their counsel about settlement. These

7   topics are all mentioned in the briefest of terms, as slight incidents to the overall message

8   of the letter, which is Plaintiffs' disagreement with Defendants and Plaintiffs' decision to

9   end negotiations. Plaintiffs have not revealed a significant portion of the communications,

10   and that is what is required to create a waiver based on sending the communication to

11   someone other than counsel. *See Mitchell v. Superior Court,* 37 Cal.3d 591, 602, 208 Cal.

12   Rptr. 886, 691 P.2d 642 (1984); *Travelers Ins. Companies v. Superior Court,* 143 Cal. App.

13   3d 436, 444, 191 Cal. Rptr. 871 (1983); *People v. Hayes,* 21 Cal.4th 1211, 1266 (2000).

14   Accordingly, the Court finds that Plaintiffs have not waived the privilege, other than with

15   respect to the letter itself.

16           Finally, Defendants assert that the privilege log prepared by Plaintiffs is

17   insufficient. At oral argument, Plaintiffs agreed to review the log, and verify that they had

18   listed all recipients for any memoranda or letters referenced in the log. They also agreed

19   to provide, not later than September 30, 2006, a supplement to the log, covering other

20   periods of time. The only remaining issue is whether the descriptions in the log are

21   sufficient. The Court notes that the log appears to follow the form suggested in a

22   commonly-used treatise, W. SCHWARZER, W. TASHIMA AND J. WAGSTAFFE, FEDERAL

23   CIVIL PROCEDURE BEFORE TRIAL, Form 11:A (Rutter 2006). Moreover, the log appears

24   to have the same information which the Court found sufficient in *Dole v. Milonas,* 889

25   F.2d 885 (9th Cir. 1989); *see in re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.

26   1992 ). Accordingly, this Court too finds that by providing this log, the Plaintiffs have

27   sufficiently asserted the attorney-client privilege and the work product doctrine.

28   ///

EXHIBIT 51
957

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 58 of 87    Page ID
#:34689
Case 2:04-cv-084  GL-RZ    Document 58    Filed 0  /2006    Page 6 of 6

1      In accordance with the foregoing, with the exception of the September 21,

2  2002 letter, Defendants' Motion to Compel is denied.

3

4      IT IS SO ORDERED.

5

6      DATED: *August 18*, 2006

7

8

9                    RALPH ZAREFSKY
            UNITED STATES MAGISTRATE JUDGE

EXHIBIT 51
958

INTENTIONALLY

LEFT

BLANK

EXHIBIT 51
959

INTENTIONALLY

LEFT

BLANK

EXHIBIT 51
960

INTENTIONALLY

LEFT

BLANK

EXHIBIT 51
961

# EXHIBIT 52

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 63 of 87    Page ID
#:34694
10/17/2008 12:10 FAX 213 243 4199    ARNOLD & PORTER, LLP    Case 2:04-cv-08400-SGL-RZ    Document 495-2    Filed 10/17/2008    Page 87 of 89    ☐003/004

# ARNOLD & PORTER LLP

David S. Eisen
David.Eisen@aporter.com

213.243.4182
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

### *REVISED*

October 16, 2008

### Delivered to Chambers via Messenger

Honorable Judge Stephen G. Larson
United States District Court of California
Central District of California
3470 Twelfth Street
Riverside, California 92501-3000

> Re:   Siegel & Larson v. Time Warner, Inc.
>        USDC Central District Court Case No. 04-08400 SGL (RZx)

Dear Judge Larson:

I am the individual holding the so-called "escrow documents" which have been the subject of some dispute in this litigation. I am writing to request clarification of the Court's September 26, 2008 order, because the litigants disagree about its interpretation and I am not certain how to proceed.

In addition to the "nine documents," you ordered me to produce to defendants "any escrow document not previously listed in a privilege log or as having previously been produced." You further said that I am to "match up the escrow documents with the privilege log entries and production documents listed on Mr. Toberoff's May 21, 2007 declaration." This leads to the following issues, as to which I would appreciate the Court's guidance:

(1) Defendants' counsel has informed me his position is that escrow documents listed on the privilege log of Mr. Bulson must be produced. Plaintiffs' counsel has informed me his position is that documents listed on Mr. Bulson's privilege log must not be produced. I would request the Court's advice as to which position is correct.

(2) With respect to the "match up" of the relevant privilege logs and Mr. Toberoff's declaration, the parties disagree with one another as to whether I am to compare the description of each document in the privilege log to the corresponding escrow document. In other words, if Mr. Toberoff's declaration states that escrow document number "X" is covered by a particular entry in the privilege log, am I to ascertain whether the escrow document and privilege log

87

**EXHIBIT 52**
**962**

Case 2:10-cv-03633-ODW-RZ    Document 504    Filed 10/11/12    Page 64 of 87    Page ID
#:34695
Case 2:04-cv-08400-    RZ    Document 352    Filed 1  /2008    Page 88 of 89
10/17/2008 12:10 FAX  213 243  199    ARNOLD & PORTER, LLP    004/004

# ARNOLD & PORTER LLP

Honorable Judge Stephen G. Larson
October 16, 2008
Page 3

entry actually match, and produce the document to defendants if it does not? If
that is not what I am supposed to do, further instructions about the "match up"
would be helpful.

(3) If the answer to (2) above is yes, then I have a second question
regarding the match up process. Suppose a series of pages among the escrow
documents consists of more than one document (e.g., a cover letter and an
enclosed document) but the privilege log entry only references one of the
documents. Under those circumstances, is the document not referenced in the
privilege log deemed to be included within the confines of the privilege log
protection, or not?

Pending clarification of the Court's order, in an abundance of caution, I
have not produced any documents to defendants, notwithstanding the Court's
instruction that I act "forthwith." Given the Court's mandate that I proceed
immediately, however, I did not feel it appropriate to simply wait for a further
motion by one of the parties to clear up these issues.

Finally, I apologize for the informality of this letter, but since I do not
represent a party to this litigation, and time seems to be of the essence, I did
not feel that a noticed motion from me would be appropriate. If the Court
prefers that I bring my request for clarification in a different manner, perhaps
your clerk could let me know.

Sincerely,

DAVID S. EISEN

cc:    Michael Bergman, Esq. (via fax)
       Marc Toberoff, Esq. (via fax)

88

**EXHIBIT 52**
**963**

# EXHIBIT 53

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-08400-SGL (RZx)                    Date:  December 4, 2008

Title:      JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual -v-
            WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a
            corporation; DC COMICS INC., a corporation; and DOES 1-10
========================================================================
PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              None Present
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None present                             None present

PROCEEDINGS:    **ORDER REGARDING ESCROW HOLDER'S OCTOBER 16, 2008, LETTER
                SEEKING CLARIFICATION OF COURT'S SEPTEMBER 26, 2008, ORDER**

        The Court has received and reviewed the escrow holder's October 16, 2008, letter (revised)
requesting clarification of the Court's September 26, 2008, Order, as well as the parties' respective
briefs filed in response to the escrow holder's letter.  In the letter, the escrow holder asks the Court
to answer the following questions:

            In addition to the 'nine documents,' you [also] ordered me to produce to
            defendants 'any escrow document not previously listed in a privilege log
            or as having previously been produced.'  You further said that I am to
            'match up the escrow documents with the privilege log entries and
            production documents listed on Mr. Toberoff's May 21, 2007,
            declaration.' This leads to the following issues, as to which I would
            appreciate the Court's guidance: (1) Defendants' counsel has informed
            me his position is that escrow documents listed on the privilege log of
            [third party] Mr. Bulson must be produced.  Plaintiffs' counsel has
            informed me his position is that documents listed on Mr. Bulson's

MINUTES FORM 90                              Initials of Deputy Clerk __jh_____
CIVIL -- GEN                    1

**EXHIBIT 53**
**964**

privilege log must not be produced.  I would request the Court's advice as to which position is correct. (2) With respect to the 'match up' of the relevant privilege logs and Mr. Toberoff's declaration, the parties disagree with one another as to whether I am to compare the description of each document in the privilege log to the corresponding escrow document.

The Court's September 26, 2008, Order was meant to dispose of the <u>one</u> remaining dispute between the parties concerning the escrow documents — the plaintiffs' assertion of privilege over nine of the documents held in escrow that were listed on Mr. Toberoff's May 21, 2007, declaration as ones to which privilege had not previously been asserted during this litigation.  This declaration was created at the direction of an order Magistrate Judge Zarefsky entered on April 30, 2007, which additionally spelled out the ramifications flowing from the information disclosed in said declaration.  Specifically, Magistrate Judge Zarefsky stated:

> I want you to submit a declaration that does identify by the Bates numbers of the escrow documents and the corresponding Bates numbers of documents already produced, those among the escrow documents which are unprivileged and have already been produced. So, you take the Bates numbers of the escrow documents and say, "Here are the corresponding Bates numbers of the documents that have already been produced and correspond to the listings on the privilege log of the documents which have not been produced because they were privileged.  All right?  So, put that in your declaration.  Then the escrow holder . . . is to return to the plaintiffs any documents which are identified in the declaration as being privileged and having been identified on the privilege logs.  The others can be delivered to trial counsel for defendants because they're either unprivileged, or, if they were privileged, <u>privilege has been waived because they weren't listed on the privilege log</u>. . . .  <u>Privileged documents get returned.  The privilege documents that were listed on the privilege log get returned.  The others get sent to defense counsel.</u>

(emphasis added).

As the escrow holder noted in his correspondence to the parties shortly after Magistrate Judge Zarefsky's April 30, 2007, Order, was issued: "In the transcript, Magistrate Judge Zarefsky does seem to announce a simple protocol for the so-called Escrow Documents: documents which appear on [prior] privilege logs are protected and should not be turned over to defendants, and documents not on [previous] privilege logs are not protected and should be produced to defendants."  (Decl. Marc Toberoff, Ex. F).  What was a simple process, however, became complicated by "additional issues/arguments" submitted by Mr. Toberoff after the hearing concerning the scope of Magistrate Judge Zarefsky's April 30, 2007, Order.  Specifically, plaintiffs contended that certain escrow documents were privileged pursuant to a "gentleman's agreement"

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                              2

**EXHIBIT 53**
**965**

the parties had reached at the onset of the litigation concerning post-litigation communications, and that another escrow document (the cover letter attached when the escrow documents were delivered to defendants) was not previously in plaintiffs possession and contained privileged material therein. Defendants for their part sought to litigate the propriety of the invocation of privilege contained in prior privilege logs themselves (particularly, the invocation of the common interest privilege on a log submitted by third party Don Bulson) and also sought for the escrow holder to examine the descriptions in Mr. Toberoff's declaration to see if they accurately described those escrow documents. (Decl. Marc Toberoff, Ex. G (defense counsel at September 17, 2007, hearing, informing Court that one of the things defendants sought was for the escrow holder "to take Mr. Toberoff's declaration and to go document number by document number and ensure that the documents that he identified on his declaration really were what he said they were")).

This Court ordered the escrow holder to produce for in camera inspection the nine documents referenced by plaintiffs' newly-asserted contention of being privileged. This was done and the parties submitted further pleadings with respect to the assertion of privilege concerning those documents. At the same time, defendants sought to raise the additional considerations with the Court, arguments which the Court informed defense counsel it was not inclined to entertain. (Decl. Marc Toberoff, Ex. G ("The Court: Let's not talk about the ones that have been done. Let's talk about the nine that we have left. I want to resolve this. We're going to move on here, counsel. What are we going to do about these nine documents")).

On September 26, 2008, the Court issued an Order resolving what had initially been brought to the Court's attention back in September, 2007, that is, whether the escrow holder was required to turnover to defense counsel the nine documents. The Court held that plaintiffs' new assertions of privilege were trumped by the fact that Magistrate Judge Zarefsky's Order provided that "any claim of privilege not previously asserted before that Order was deemed 'waived'"; that plaintiffs never appealed that order; and that, as a consequence, "Magistrate Judge Zarefsky's Order is now the law of the case in this matter." Essentially, the Court's September 26, 2008, Order sought to restore the status quo ante by simply enforcing Magistrate Judge Zarefsky's April, 2007, Order. Similarly, the Court's Order did not address, nor did it seek to address, the extraneous issues being pressed by defendants, issues going beyond those addressed by Magistrate Judge Zarefsky's Order.

The Court thereupon ordered the escrow holder to perform the limited task set forth in Magistrate Judge Zarefsky's April, 2007, Order: Compare the Toberoff declaration to the escrow documents in his possession, and turnover to defendants those for which privilege had not previously been asserted.

To answer the escrow holder's two-part question, the Court's response is as follows:

(1) No. The escrow documents listed on the privilege log of Mr. Bulson are not to be produced, as such production exceeds the scope of Magistrate Judge Zarefsky's April 30, 2007, Order, which was predicated on the turnover of those escrow documents to which no prior

**EXHIBIT 53**
**966**

CV 04-08400-SGL (RZx)
JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON; an individual v WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS INC., a corporation; and DOES 1-10
MINUTE ORDER of December 4, 2008

privilege log had listed them as privileged; Mr. Bulson listed the escrow documents in question in his privilege log well before Magistrate Judge Zarefsky's April 30, 2007, Order.

(2)   No.  The escrow holder is not to compare the description of each document in Toberoff's declaration to the corresponding escrow document to ensure the description's accuracy.  Rather, the task of matching up or review is done only insofar as the escrow holder is charged with carrying out the task, as set forth in Magistrate Judge Zarefsky's April 30, 2007, Order, of locating (using the Bates stamp legend) those documents which appear on Toberoff's May, 2007, declaration as having previously been listed on a privilege log and turning them over to plaintiffs, and turning over the remainder (the aforementioned "nine escrow documents") to defendants.

**IT IS SO ORDERED**.

MINUTES FORM 90                                    Initials of Deputy Clerk ___jh_____
CIVIL -- GEN                          4

**EXHIBIT 53**
**967**

# EXHIBIT 54

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No: CV 04-08400 SGL (RZx) <br><br> Hon. Stephen G. Larson, U.S.D.J. <br><br> **DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO REOPEN DISCOVERY, TO COMPEL PRODUCTION OF DOCUMENTS, AND TO COMPEL THE FURTHER DEPOSITION OF KEVIN MARKS** <br><br> Date: April 20, 2009 <br> Time: 10:00 a.m. <br> Place: Courtroom 1 <br><br> Trial Date: April 21, 2009 |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | |

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

## EXHIBIT 54

**DECLARATION OF MARC TOBEROFF**

I, Marc Toberoff, declare as follows:

1.     I am an attorney at Toberoff & Associates, P.C., counsel of record for plaintiffs Laura Siegel Larson and Joanne Siegel ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration in support of Plaintiffs' opposition to defendants' Motion to Reopen Discovery, to Compel Production of Documents and to Compel the Further Deposition of Kevin Marks. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     Attached hereto as "Exhibit A" are true and correct copies of excerpts from Plaintiffs' Motion for Partial Summary Judgment, filed on April 30, 2007.

3.     Attached hereto as "Exhibit B" is a true and correct copy of a letter from John Quinn to me and Michael Bergman, dated July 5, 2006.

4.     Attached hereto as "Exhibit C" is a true and correct copy of a letter from John Quinn to me, dated July 13, 2006.

5.     Attached hereto as "Exhibit D" is a true and correct copy of a letter from me to John Quinn, dated July 19, 2006.

6.     Attached hereto as "Exhibit E" is a true and correct copy of a letter from Michael Bergman to John Quinn, dated July 20, 2006.

7.     Attached hereto as "Exhibit F" is a true and correct copy of a letter from me to John Quinn, dated July 26, 2006.

8.     Attached hereto as "Exhibit G" is a true and correct copy of a letter from Michael Bergman to me, dated July 27, 2006.

9.     Attached hereto as "Exhibit H" is a true and correct copy of Magistrate Zarefsky's August 18, 2006 order.

10.     Attached hereto as "Exhibit I" is a true and correct copy of a letter from me to James Weinberger, dated September 29, 2006.

11.     Attached hereto as "Exhibit J" are true and correct copies of excerpts

**EXHIBIT 54**
**969**

1 | from the privilege log of Don Bulson, served on October 23, 2006.

2 |      12.    Attached hereto as "Exhibit K" is a true and correct copy of a letter

3 | from Nicholas Williamson to Adam Hagen, dated March 27, 2007.

4 |      13.    Attached hereto as "Exhibit L" is a true and correct copy of a letter

5 | from David Eisen to me and Michael Bergman, dated May 18, 2007.

6 |      14.    Attached hereto as "Exhibit M" is a true and correct copy of my

7 | Declaration in Opposition to Defendants' Motion to Compel Production of Whistle

8 | Blower Documents dated March 23, 2007.

9 |      15.    Attached hereto as "Exhibit N" is a true and correct copy of a letter

10 | from me to David Eisen, dated May 21, 2007 and my May 21, 2007 declaration

11 | filed pursuant to Magistrate Zarefsky's April 30, 2007 order.

12 |      16.    Attached hereto as "Exhibit O" is a true and correct copy of a letter

13 | from Michael Bergman to David Eisen, dated May 22, 2007.

14 |      17.    Attached hereto as "Exhibit P" is a true and correct copy of a letter

15 | from me to David Eisen, dated May 23, 2007.

16 |      18.    Attached hereto as "Exhibit Q" is a true and correct copy of a letter

17 | from David Eisen to me and Michael Bergman, dated May 24, 2007.

18 |      19.    Attached hereto as "Exhibit R" are true and correct copies of relevant

19 | excerpts from the September 17, 2007 hearing transcript in this matter.

20 |      20.    Attached hereto as "Exhibit S" is a true and correct copy of the

21 | Court's September 17, 2007 minute order.

22 |      21.    Attached hereto as "Exhibit T" is a true and correct copy of my

23 | declaration filed pursuant to the Court's September 17, 2007 order.

24 |      22.    Attached hereto as "Exhibit U" is a true and correct copy of the

25 | Court's September 26, 2008 order.

26 |      23.    Attached hereto as "Exhibit V" is a true and correct copy of a letter

27 | from David Eisen to me and Michael Bergman, dated October 8, 2008.

28 |      24.    Attached hereto as "Exhibit W" is a true and correct copy of a letter

**EXHIBIT 54**
**970**

1 from me to David Eisen, dated October 9, 2008.

2       25.    Attached hereto as "Exhibit X" is a true and correct copy of a letter

3 from David Eisen to me and Michael Bergman, dated October 9, 2008.

4       26.    Attached hereto as "Exhibit Y" is a true and correct copy of a letter

5 from Michael Bergman to David Eisen, dated October 10, 2008.

6       27.    Attached hereto as "Exhibit Z" is a true and correct copy of a letter

7 from me to David Eisen, dated October 13, 2008.

8       28.    Attached hereto as "Exhibit AA" is a true and correct copy of a letter

9 from David Eisen to the Court, dated October 16, 2008.

10       29.    Attached hereto as "Exhibit BB" is a true and correct copy of the

11 Court's December 4, 2008 order.

12       30.    On August 7, 2006, Defendants served Plaintiffs a Third Set of

13 Requests for Production seeking documents stolen from my office ("Stolen

14 Documents"). Plaintiffs objected to these requests on September 6, 2006.

15       31.    David Eisen of Arnold & Porter LLP delivered the original copies of

16 the Stolen Documents to my offices on December 12, 2008.

17       32.    I have reviewed the testimony of plaintiffs' former counsel Kevin

18 Marks regarding the alleged settlement agreement between Plaintiffs and

19 Defendants regarding Plaintiffs' interests in the Superman copyright. I have also

20 reviewed the attorney-client communication dated August 9, 2002 ("August 9

21 Letter") between Kevin Marks and Plaintiffs. The August 9 Letter reveals no

22 inconsistency with Marks' testimony regarding the alleged settlement agreement.

23       33.    My law firm's investigation has revealed that the Stolen Documents

24 were secretly copied and stolen from my law firm's files by a disgruntled attorney

25 employed by the firm who thereafter furnished the documents to Warner Bros. The

26 attorney worked at my firm for less than three months, without any problem or

27 incident, and then one day disappeared on his lunch break in November, 2005

28

3
DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

**EXHIBIT 54**
**971**

1  without notice. The attorney did not return any of the firm's subsequent telephone
2  messages or e-mails.

3     34.    Our investigation has revealed that in late November and early
4  December, 2005, he contacted Plaintiffs and another client of my firm and tried to
5  convince them to terminate the firm, and to retain him instead, by disparaging me
6  and by offering to work for a reduced fee.  I am advised by Plaintiffs and my other
7  client that they both rejected this attorney's overtures in early December, 2005.

8

9     I declare under penalty of perjury of the laws of the United States of
10 America that the foregoing is true and correct.

11     Executed on March 2, 2009 in Los Angeles, California.

12

13                                          Marc Toberoff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 55

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | | |
|---|---|---|
| DC Comics | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    CV 10-3633 ODW (RZx) |
| Pacific Pictures Corp, et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California    ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Don W. Bulson, c/o Renner Otto Boiselle & Sklar, LLP
      1621 Euclid Avenue, Ninth Floor, Cleveland, Ohio 44115

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment

| Place: O'MELVENY & MYERS LLP 1999 Avenue of the Stars, Suite 700 Los Angeles, CA  90067 | Date and Time: 06/09/2011 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    05/10/2011

```
CLERK OF COURT
                                              OR
_____                    _____
   Signature of Clerk or Deputy Clerk                      Attorney's signature
```

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    DC Comics
_____ , who issues or requests this subpoena, are:

Daniel M. Petrocelli, O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor, Los Angeles, CA  90067
Email: dpetrocelli@omm.com, Phone: (310) 246-6850

**EXHIBIT 55**
**973**

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   CV 10-3633 ODW (RZx)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*    Don W. Bulson

was received by me on *(date)*    05/10/2011    .

☑ I served the subpoena by delivering a copy to the named person as follows:    Don W. Bulson

Renner Otto Boiselle & Sklar, LLP, 1621 Euclid Avenue, Ninth Floor, Cleveland, Ohio 44115

on *(date)*                        ; or

☐ I returned the subpoena unexecuted because:                                              .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                   for travel and $                   for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:    05/10/2011                        _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*

                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT 55**
**974**

## ATTACHMENT A
## **DEFINITIONS AND INSTRUCTIONS**

1.      "DOCUMENT" shall be interpreted in its broadest sense to include any and all "documents" and "other tangible things" as those terms are understood in Federal Rule of Civil Procedure 34, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in Federal Rule of Evidence 1001.  This shall include, but is not limited to:  e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

2.      "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.      "REFER" or "RELATE" means, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or comment upon.

4.      "PERSON" means any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

5.      "YOU" or "YOUR" means Don W. Bulson, Esq. and the law firm of Renner Otto Boiselle & Sklar, LLP, and their past and present employees, associates, partners, attorneys, representatives, predecessors and successors.

6.      "DEFENDANT" or "DEFENDANTS" means, collectively and severally, any defendant in the above-entitled action, including Pacific Pictures

**EXHIBIT 55**
**975**

Corporation; IP Worldwide, LLC; IPW, LLC; Marc Toberoff; Joanne Siegel; Laura Siegel Larson; Mark Warren Peary, as personal representative of the Estate of Joseph Shuster; Jean Adele Peavy; and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

7.    "SHUSTER HEIRS" means, collectively and severally, Mark Warren Peary, Jean Peavy, Dawn Peavy, Frank Shuster, or any other executor, administrator, heir, relative, or representative of Joseph Shuster and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

8.    "SIEGEL HEIRS" means, collectively and severally, Joanne Siegel, Laura Siegel Larson, Dennis Larson, Michael Siegel, or any other executor, administrator, heir, relative, or representative of Jerome Siegel and, as applicable, any PERSON acting on their behalf, including but not limited to their agents, employees, attorneys, and representatives.

9.    "MARKS" means Kevin S. Marks, Esq. and the law firm of Gang, Tyre, Ramer & Brown, Inc., prior counsel for defendants Joanne Siegel and Laura Siegel Larson, as well as their past and present employees, associates, partners, attorneys, representatives, predecessors and successors

10.    "TOBEROFF" means Marc Toberoff, Esq. and the Law Office of Marc Toberoff, PLC, current attorneys of record for defendants Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, and Jean Adele Peavy, as well as their past and present employees, associates, partners, representatives, predecessors and successors.

11.    "EMANUEL" means Ariel Emanuel and William Morris Endeavor, as well as their past and present employees, associates, representatives, predecessors and successors.

**EXHIBIT 55**

**976**

12.    "KENDALL" means Richard Kendall, Esq. and the law firm of Kendall Brill Klieger, current attorneys of record defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, and Marc Toberoff, as well as their past and present employees, associates, partners, representatives, predecessors and successors.

13.    "SUPERMAN" means the Superman character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *Action Comics. No. 1*.

14.    "SUPERBOY" means the Superboy character as delineated in literary works such as comic books, newspapers, novels, radio programs, television programs, and motion pictures, and any of the works in which he appears, including but not limited to *More Fun Comics #101*.

15.    "INCLUDING" means "including, but not limited to."

16.    "Any" and "All" are interchangeable.

17.    The singular form includes the plural form, and vice versa.

18.    YOU are instructed to produce all DOCUMENTS that are responsive to these Requests and that are in YOUR possession, custody, or control. A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another person or entity that has physical possession of the DOCUMENT.

19.    If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of YOUR knowledge, information and belief, and with as much particularity as possible, the DOCUMENT or portions of the DOCUMENT that are not being produced.

**EXHIBIT 55**
**977**

20.    Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized or separated.

21.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on grounds that it is protected from discovery by the attorney-client privilege, work-product doctrine, or other privilege or immunity from discovery, please set forth, for each DOCUMENT or portion of a DOCUMENT withheld:

      (a)    The place, approximate date, and manner of recording, creating or otherwise preparing the DOCUMENT;

      (b)    The names and organization position, if any, of each author, sender, and recipient of the DOCUMENT;

      (c)    A general description of the subject matter of the DOCUMENT;

      (d)    The basis of any claim of privilege; and

      (e)    If work-product is asserted, the proceeding for which the DOCUMENT was created.

22.    For any DOCUMENT or category of DOCUMENTS that was, but no longer is, in YOUR possession, custody or control, please describe each such DOCUMENT as completely as possible and provide the following information:

      (a)    The reason the DOCUMENT is no longer in YOUR possession, custody or control;

      (b)    The person or entity, if any, who has possession, custody or control or, if unknown, so state; and

      (c)    If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.*, destruction, loss, discarding or other means of disposal); (ii) the date of disposal; (iii) the reason for disposal; (iv) the person authorizing

**EXHIBIT 55**
**978**

disposal; (v) the person disposing of the DOCUMENT; and (vi) the name and address of the most recent custodian of the DOCUMENT.

23.     Each Request shall be construed independently and no Request shall be viewed as limiting the scope of any other Request.

24.     All responsive DOCUMENTS maintained or stored in electronic format shall be produced in native file format with all associated metadata preserved.  All responsive DOCUMENTS maintained in hard copy shall be produced in TIFF.

25.     The collection and production of DOCUMENTS shall be performed in a manner that ensures that the source of each DOCUMENT may be determined, if necessary.

26.     DOCUMENTS attached to each other shall not be separated.

27.     These Requests impose a continuing obligation subsequent to YOUR initial production within thirty days of the service date of these Requests, or other date mutually agreed upon by the parties, to timely supplement YOUR response or production if YOU determine that YOUR response or production is incomplete or incorrect.

## DOCUMENT REQUESTS

1.     All DOCUMENTS RELATING to SUPERMAN and/or SUPERBOY.

2.     All DOCUMENTS RELATING to any agreements between the SIEGEL HEIRS, the SHUSTER HEIRS, TOBEROFF, and/or EMANUEL RELATING to SUPERMAN and/or SUPERBOY.

3.     All DOCUMENTS RELATING to COMMUNICATIONS between YOU and TOBEROFF, including but not limited to, all drafts, outlines, and/or notes.

**EXHIBIT 55**
**979**

4.      All DOCUMENTS RELATING to COMMUNICATIONS between YOU and EMANUEL, including but not limited to, all drafts, outlines, and/or notes.

5.      All DOCUMENTS RELATING to COMMUNICATIONS between YOU and KENDALL, including but not limited to, all drafts, outlines, and/or notes.

6.      All DOCUMENT RELATING to COMMUNICATIONS between YOU and MARKS, including but not limited to, all drafts, outlines, and/or notes.

7.      All DOCUMENTS RELATING to the potential sale, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement.

8.      All DOCUMENTS RELATING to any potential investors or other PERSONS who have expressed interest in purchasing or otherwise investing in the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

9.      All DOCUMENTS RELATING to the valuation of any past, current, or potential ownership interest in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

10.     All DOCUMENTS RELATING to negotiations between the SIEGEL HEIRS and DC Comics RELATING to SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

11.     All DOCUMENTS RELATING to the October 16, 2001 COMMUNICATION between MARKS and John A. Schulman, Esq., including drafts, outlines, and/or notes.

12.     All DOCUMENTS RELATING to the letter dated October 19, 2001 from MARKS to John A. Schulman, Esq., including but not limited to, all drafts, outlines, and/or notes.

**EXHIBIT 55**
**980**

13.    All DOCUMENTS RELATING to the letter dated October 26, 2001 from John A. Schulman, Esq. to MARKS, including but not limited to, all drafts, outlines, and/or notes.

14.    All DOCUMENTS RELATING to the November 29, 2001 COMMUNICATION between MARKS and TOBEROFF RELATING to the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

15.    All DOCUMENTS RELATING to the letter dated February 1, 2002 from Patrick T. Perkins, Esq. to MARKS, including but not limited to, all drafts, outlines, and/or notes.

16.    All DOCUMENTS RELATING to the "Draft Long Form Agreement" enclosed with the February 1, 2002 letter from Patrick T. Perkins, Esq. to MARKS, including but not limited to, all drafts, outlines, and/or notes.

17.    All DOCUMENT RELATING to the February 6, 2002 COMMUNICATION between MARKS and TOBEROFF RELATING to the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

18.    All DOCUMENTS RELATING to the letter dated May 9, 2002 from DEFENDANT Joanne Siegel to Richard D. Parsons, Co-Chief Operating Officer of AOL Time Warner Inc., including but not limited to, all drafts, outlines, and/or notes.

19.    All DOCUMENTS RELATING to the May 16, 2002 COMMUNICATION between MARKS and John A. Schulman, Esq., including but not limited to, all drafts, outlines, and/or notes.

20.    All DOCUMENTS RELATING to the letter dated July 15, 2002 from MARKS to DEFENDANTS Joanne Siegel and/or Laura Siegel Larson, including but not limited to, all drafts, outlines, and/or notes.

**EXHIBIT 55**
**981**

21.    All DOCUMENTS RELATING to the redraft of the "Draft Long Form Agreement" enclosed with the July 15, 2002 letter from MARKS to DEFENDANTS Joanne Siegel and/or Laura Siegel Larson, including but not limited to, all drafts, outlines, and/or notes.

22.    All DOCUMENTS RELATING to the COMMUNICATION between MARKS and TOBEROFF and/or EMANUEL in or around August 2002 RELATING to acquiring the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

23.    All DOCUMENTS RELATING to the August 9, 2002 COMMUNICATION from MARKS to DEFENDANTS Joanne Siegel and/or Laura Siegel Larson RELATING to the SIEGEL HEIRS' settlement with DC Comics and consequences for acceptance of TOBEROFF and/or EMANUEL's offer to acquire the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY, including but not limited to, all drafts, outlines, and/or notes.

24.    All DOCUMENTS RELATING to the letter dated September 21, 2002 from DEFENDANTS Joanne Siegel and Laura Siegel Larson to MARKS and Bruce M. Ramer, Esq., including but not limited to, all drafts, outlines, and/or notes.

25.    All DOCUMENTS RELATING to the letter dated September 21, 2002 from DEFENDANTS Joanne Siegel and Laura Siegel Larson to Paul Levitz, including but not limited to, all drafts, outlines, and/or notes.

26.    All DOCUMENTS RELATING to any COMMUNICATION between or among DEFENDANTS Joanne Siegel and/or Laura Siegel Larson and Michael Siegel, including but not limited to, all drafts, outlines, and/or notes.

27.    All DOCUMENTS RELATING to the Notice of Termination of Transfer Covering Extended Copyright Renewal Term of SUPERMAN served on

**EXHIBIT 55**
**982**

behalf of the SIEGEL HEIRS on or around April 3, 1997, including but not limited to, all drafts, outlines, and/or notes.

28.    All DOCUMENTS RELATING to the Notice of Termination of Transfer Covering Extended Copyright Renewal Term of SUPERBOY served on behalf of the SIEGEL HEIRS on or around November 8, 2002, including but not limited to, all drafts, outlines, and/or notes.

29.    All DOCUMENTS RELATING to Michael Siegel's estate, including but not limited to, any wills, draft wills, and/or COMMUNICATIONS expressing Michael Siegel's instructions with respect to any assets.

CC1:843802

**EXHIBIT 55**
**983**