# EXHIBIT K
# Part 2 of 2

**LAURA SIEGEL LARSON - 7/22/2011**

Page 248

| 17:23:15 | 1 | A.    I -- not to my knowledge. |

17:23:17    2        Q.    Were there ever any joint meetings with all

17:23:20    3    of you together and Kevin Marks or Bruce Ramer?

17:23:23    4        A.    Not -- not all of us together, but I know

17:23:27    5    that Don Bulson, you know, did meet up with Kevin

17:23:31    6    Marks at one point.

17:23:32    7        Q.    When you sent out the -- excuse me.  When

17:23:35    8    your mother wrote out and you typed out and you sent

17:23:39    9    to Warner Bros. and DC Comics the letter in May

17:23:44   10    expressing your upset about the February --

17:23:44   11        A.    This one?  Yeah.

17:23:47   12        Q.    -- long form agreement --

17:23:50   13        A.    Um-hum.

17:23:50   14        Q.    -- did you first clear that with Michael

17:23:50   15    Siegel or Don Bulson?

17:23:53   16        A.    No.

17:23:53   17        Q.    Did you send them a copy of it?

17:23:57   18        A.    That I don't remember.

17:24:08   19        Q.    Oh.  Why was there a dispute between you and

17:24:13   20    your mother on the one hand and Michael Siegel on the

17:24:16   21    other hand regarding this issue prior -- yes, as of

17:24:22   22    September 21, 2002?

17:24:23   23        A.    You're talking about costs.

17:24:24   24        Q.    Was that the subject of the dispute, the

17:24:26   25    costs?

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 249

| | | |
|---|---|---|
| 17:24:26 | 1 | A.    Yes. |
| 17:24:27 | 2 | Q.    And why was there a dispute about the costs? |
| 17:24:33 | 3 | A.    Michael was the child of a very upsetting |
| 17:24:39 | 4 | divorce, and he -- you know, it hurts me to have to |
| 17:24:44 | 5 | say this, but, you know, he was a very kind of |
| 17:24:48 | 6 | confused guy and he really kind of couldn't keep |
| 17:24:50 | 7 | things straight.  It was very difficult to communicate |
| 17:24:54 | 8 | with him, and it was very upsetting to receive |
| 17:25:04 | 9 | communications from him that were kind of all over the |
| 17:25:08 | 10 | place, things that didn't really make any sense, and |
| 17:25:14 | 11 | he was very secretive, and he just couldn't really |
| 17:25:20 | 12 | grasp legal principles.  So discussions with -- |
| 17:25:24 | 13 | directly with him really didn't work.  It really |
| 17:25:32 | 14 | required attorneys to explain things to him, and |
| 17:25:34 | 15 | that's why he had his own attorney, who was, of |
| 17:25:38 | 16 | course, interpreting things, you know, for Michael and |
| 17:25:42 | 17 | explaining things to him.  But he didn't -- he didn't |
| 17:25:46 | 18 | have any -- any background in understanding the |
| 17:25:50 | 19 | history of, you know, the Superman litigations or -- |
| 17:25:54 | 20 | you know. |
| 17:25:54 | 21 | Q.    What did he do for a living? |
| 17:25:55 | 22 | A.    He was a plumber. |
| 17:26:00 | 23 | Q.    And so you didn't grow up close at all. |
| 17:26:06 | 24 | A.    I never met him. |
| 17:26:07 | 25 | Q.    Ever? |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 250

| 17:26:07 | 1 | A.    Ever.  And he wouldn't send me any |
| 17:26:12 | 2 | photographs of himself. |
| 17:26:13 | 3 | Q.    He did or did not? |
| 17:26:14 | 4 | A.    Did not.  I sent him photographs of myself |
| 17:26:17 | 5 | and my children and asked him to reciprocate, and he |
| 17:26:23 | 6 | refused to do that.  So the first time I ever saw what |
| 17:26:27 | 7 | my brother looked like was after he died and I went to |
| 17:26:31 | 8 | the home that he had shared with his mother, and, you |
| 17:26:35 | 9 | know, found things like a dog dish, you know, in the |
| 17:26:38 | 10 | kitchen, and I said, "Where's the dog?"  And they |
| 17:26:41 | 11 | said, you know, the dog -- when I say "they," a friend |
| 17:26:45 | 12 | told me that the dog had died years before and -- you |
| 17:26:48 | 13 | know, but I found photographs of him in his home. |
| 17:26:52 | 14 | Q.    Your children never met with him either? |
| 17:26:54 | 15 | A.    No. |
| 17:26:54 | 16 | Q.    Did your mom ever meet him? |
| 17:26:56 | 17 | A.    No, I don't believe so.  He was -- he was |
| 17:27:01 | 18 | very young when the divorce occurred. |
| 17:27:04 | 19 | Q.    How old was he? |
| 17:27:06 | 20 | A.    5 or 6, I think. |
| 17:27:08 | 21 | Q.    What year was it that your dad divorced his |
| 17:27:11 | 22 | mom? |
| 17:27:11 | 23 | A.    It was in the 1940s. |
| 17:27:13 | 24 | Q.    And when did your mother and your father |
| 17:27:16 | 25 | marry? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 251

| | | |
|---|---|---|
| 17:27:16 | 1 | A.    In 1948. |
| 17:27:27 | 2 | Q.    How did you first get in touch with Michael |
| 17:27:31 | 3 | Siegel about this termination issue going back to |
| 17:27:37 | 4 | 1997? |
| 17:27:37 | 5 | A.    Well, my husband, who was an attorney -- |
| 17:27:41 | 6 | excuse me -- and also, you know, kind of helped us |
| 17:27:44 | 7 | with things, phoned -- phoned Michael and informed him |
| 17:27:50 | 8 | that, you know, he had a passive interest and, you |
| 17:27:54 | 9 | know, that he wanted to let him know about that, and, |
| 17:28:00 | 10 | you know, after -- after that, Michael retained an |
| 17:28:04 | 11 | attorney in Cleveland. |
| 17:28:06 | 12 | Q.    Did you ever meet Mr. Bulson? |
| 17:28:08 | 13 | A.    I did after Michael died. |
| 17:28:17 | 14 | Q.    Are you aware that Michael wanted to have a |
| 17:28:21 | 15 | will made out but never got -- |
| 17:28:25 | 16 | A.    He never did it. |
| 17:28:27 | 17 | Q.    Did you ever see what his wishes were? |
| 17:28:31 | 18 | A.    He had some kind of rambling communications |
| 17:28:33 | 19 | with his attorney. |
| 17:28:35 | 20 | Q.    To the effect that he did not want either you |
| 17:28:38 | 21 | or your mother to share in anything? |
| 17:28:40 | 22 | A.    He stated that in an e-mail, but the court |
| 17:28:44 | 23 | ruled otherwise.  Not for my mother, but for me. |
| 17:29:00 | 24 | Q.    The next exhibit is -- |
| 17:29:06 | 25 | Make sure we did. |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 252

| | | |
|---|---|---|
| 17:29:15 | 1 | MR. TOKORO:  It's 56. |
| 17:29:17 | 2 | MR. PETROCELLI:  Are you sure? |
| 17:29:18 | 3 | MR. TOKORO:  Yes. |
| 17:29:22 | 4 | MR. PETROCELLI:  I thought he did multiple. |
| 17:29:32 | 5 | Q.   Going back to Exhibit 56 for a second, which |
| 17:29:35 | 6 | is your notification to DC Comics that you were |
| 17:29:39 | 7 | terminating negotiations dated September 21, 2002 -- |
| 17:29:43 | 8 | A.   Is it 54?  I have 54. |
| 17:29:46 | 9 | Q.   Can I see that? |
| 17:29:47 | 10 | A.   Yes.  I think that's only the Ramer and Marks |
| 17:29:51 | 11 | one. |
| 17:29:52 | 12 | Q.   Yes, this is the termination of the Gang Tyre |
| 17:29:55 | 13 | firm. |
| 17:29:55 | 14 | A.   I don't have that yet unless it's stapled to |
| 17:30:01 | 15 | this. |
| 17:30:01 | 16 | MR. TOKORO:  It was one of the early ones. |
| 17:30:03 | 17 | MR. PETROCELLI:  I showed it to you earlier |
| 17:30:05 | 18 | on, all the way on the bottom.  He'll fish it out for |
| 17:30:08 | 19 | you. |
| 17:30:09 | 20 | THE WITNESS:  Okay. |
| 17:30:12 | 21 | Oh, thank you. |
| | 22 | BY MR. PETROCELLI: |
| 17:30:13 | 23 | Q.   So you have in front of you now Exhibit 56? |
| 17:30:16 | 24 | A.   Um-hum. |
| 17:30:17 | 25 | Q.   And you will see that you're advising DC |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 253

| | | |
|---|---|---|
| 17:30:22 | 1 | about the termination of the Gang Tyre firm and that |
| 17:30:25 | 2 | you have instructed the Gang Tyre firm to take no |
| 17:30:28 | 3 | further actions on your behalf.  Do you see that? |
| 17:30:32 | 4 | A.   Yes, I do. |
| 17:30:32 | 5 | Q.   And September 21, 2002, is the first time |
| 17:30:38 | 6 | that you so advised DC Comics that you were |
| 17:30:39 | 7 | terminating the Gang Tyre firm and that they were to |
| 17:30:42 | 8 | take no further actions on your behalf; correct? |
| 17:30:45 | 9 | A.   Yes. |
| 17:30:45 | 10 | Q.   And that's the first time that you also |
| 17:30:47 | 11 | advised the Gang Tyre firm that they were to take no |
| 17:30:50 | 12 | further actions on your behalf; correct? |
| 17:30:52 | 13 | A.   Yes, that's correct. |
| 17:31:36 | 14 | Q.   Okay. |
| 17:31:36 | 15 | Okay.  Let me mark as the -- |
| 17:31:39 | 16 | MR. TOKORO:  62. |
| 17:31:40 | 17 | MR. PETROCELLI:  -- next exhibit in order, |
| 17:31:46 | 18 | Exhibit 62, a letter to DC Comics by your mother and |
| 17:31:51 | 19 | you dated October 28, 2002 -- |
| | 20 | (Whereupon, Plaintiff's Exhibit 62 |
| 17:32:00 | 21 | was marked for identification.) |
| 17:32:00 | 22 | MR. PETROCELLI:  -- giving notice of the |
| 17:32:05 | 23 | cancellation of a tolling period under a tolling |
| 17:32:08 | 24 | agreement. |
| 17:32:09 | 25 | Q.   Do you see that? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 254

| | | | |
|---|---|---|---|
| 17:32:09 | 1 | A. | Yes, I do. |
| 17:32:11 | 2 | Q. | Now, did you type this document? |
| 17:32:13 | 3 | A. | Yes, I did. |
| 17:32:17 | 4 | Q. | Who drafted this document? |
| 17:32:19 | 5 | A. | My mother and I did. |
| 17:32:22 | 6 | Q. | Did you have the assistance of a lawyer? |
| 17:32:25 | 7 | A. | No. |
| 17:32:25 | 8 | Q. | Are you sure? |
| 17:32:27 | 9 | A. | I'm pretty sure.  I don't recall. |
| 17:32:29 | 10 | Q. | Even though you had already retained |

17:32:33  11  Mr. Emanuel and Mr. Toberoff?

17:32:39  12      A.  Without revealing the communication between

17:32:44  13  my former attorney and me, I will say that we were

17:32:50  14  informed by the Gang Tyre firm that we needed to pay

17:32:56  15  attention to the wording in the tolling agreement.

17:33:01  16      Q.  Why --

17:33:02  17      A.  So as a result of reading the tolling

17:33:04  18  agreement and seeing that notification was necessary

17:33:07  19  to certain people under the tolling agreement, we went

17:33:11  20  ahead, my mother and I, and drafted this.

17:33:14  21      Q.  Did you run it by a lawyer first?

17:33:17  22      A.  I -- I don't remember.

17:33:20  23      Q.  Even though you were now working with

17:33:22  24  Mr. Toberoff, you didn't --

17:33:24  25      A.  Oh --

## LAURA SIEGEL LARSON - 7/22/2011

Page 255

| | | |
|---|---|---|
| 17:33:25 | 1 | Q.    -- show it to him? |
| 17:33:27 | 2 | A.    Well, actually -- |
| 17:33:29 | 3 | Q.    And it's in a totally different type face -- |
| 17:33:31 | 4 | A.    Possibly -- |
| 17:33:32 | 5 | Q.    -- than the prior document. |
| 17:33:33 | 6 | A.    That doesn't mean anything.  That's because, |
| 17:33:36 | 7 | you know, my computers were always on the fritz. |
| 17:33:43 | 8 | Q.    It's kind of -- |
| 17:33:44 | 9 | A.    No.  It's -- well, we had been talking to |
| 17:33:48 | 10 | Mr. Toberoff since the beginning of October about |
| 17:33:51 | 11 | retaining him.  We did not actually sign with him |
| 17:33:54 | 12 | until the end of October.  So we had not signed and |
| 17:33:58 | 13 | fully retained him at the time when my mother and I |
| 17:34:02 | 14 | were drafting this, because when you showed me -- you |
| 17:34:08 | 15 | showed me the -- our agreement earlier, I looked at |
| 17:34:11 | 16 | the back and the signature page said October 28. |
| 17:34:15 | 17 | Q.    No.  I think -- take a look at it again, |
| 17:34:28 | 18 | Exhibit 45. |
| 17:34:28 | 19 | A.    These are all mixed up. |
| 17:34:43 | 20 | Oh, 23.  I'm sorry.  I'm sorry.  The "3" |
| 17:34:46 | 21 | looked like an "8" to me when I looked at the Xerox |
| 17:34:49 | 22 | because it's not a great Xerox. |
| 17:34:52 | 23 | Q.    So now you're seeing more clearly that it was |
| 17:34:57 | 24 | as of October 23, 2002, that you had signed the IP |
| 17:35:01 | 25 | Worldwide agreement with Mr. Emanuel and Mr. Toberoff. |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 256

| | | |
|---|---|---|
| 17:35:03 | 1 | A.   Yes. |
| 17:35:04 | 2 | MR. TOBEROFF:  Objection to "as of." |
| 17:35:06 | 3 | Otherwise -- |
| 17:35:07 | 4 | THE WITNESS:  We had just finalized our |
| 17:35:11 | 5 | agreement. |
| | 6 | BY MR. PETROCELLI: |
| 17:35:12 | 7 | Q.   And now does that cause you to believe that |
| 17:35:13 | 8 | you had some assistance in the preparation of the |
| 17:35:16 | 9 | tolling agreement? |
| 17:35:19 | 10 | A.   Well, we weren't advised to do it by |
| 17:35:22 | 11 | Mr. Toberoff.  He may have looked at the draft just to |
| 17:35:25 | 12 | make sure that the language was correct. |
| 17:35:28 | 13 | Q.   Well, why wouldn't you have him do it?  Why |
| 17:35:31 | 14 | are you -- |
| 17:35:31 | 15 | A.   You asked me if I remembered it. |
| 17:35:33 | 16 | Q.   You don't remember. |
| 17:35:35 | 17 | A.   Okay.  I'm trying to answer your question. |
| 17:35:37 | 18 | Q.   Before you answered with some degree of |
| 17:35:39 | 19 | certainty that you and your mother wrote this |
| 17:35:41 | 20 | document, which I must say seems implausible to me. |
| 17:35:44 | 21 | It's a -- it's a technical legal document that your |
| 17:35:49 | 22 | prior counsel had advised you was important for you to |
| 17:35:52 | 23 | pay attention to. |
| 17:35:53 | 24 | A.   Uh-huh. |
| 17:35:53 | 25 | Q.   And I'm just pressing you now on whether you |

**Merrill  Corporation  -  Los Angeles**

800-826-0277                          www.merillcorp.com/law

**EXHIBIT K**
**665**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 257

| | | |
|---|---|---|
| 17:35:56 | 1 | actually remember or you're just trying to surmise |
| 17:36:00 | 2 | that you prepared this document. |
| 17:36:03 | 3 | A.   I'm trying to surmise. |
| 17:36:08 | 4 | Q.   Okay.  Is it fair to say -- |
| 17:36:09 | 5 | A.   No, no.  Excuse me.  I don't think I really |
| 17:36:13 | 6 | answered -- you're saying do I think I prepared it? |
| 17:36:19 | 7 | Q.   Do you -- |
| 17:36:20 | 8 | A.   Or do I think somebody else prepared it? |
| 17:36:22 | 9 | Q.   Do you know whether, even though it went out |
| 17:36:25 | 10 | on your letterhead -- |
| 17:36:25 | 11 | A.   Yes. |
| 17:36:26 | 12 | Q.   -- do you know whether this was prepared by a |
| 17:36:29 | 13 | lawyer for you to send out? |
| 17:36:31 | 14 | A.   Oh.  It -- we did a draft -- my mother and I |
| 17:36:34 | 15 | did a draft, and to the best of my recollection, we |
| 17:36:39 | 16 | probably ran it by Mr. Toberoff. |
| 17:36:44 | 17 | Q.   Did you run it by Arthur or George, the other |
| 17:36:48 | 18 | lawyers? |
| 17:36:48 | 19 | A.   We might have. |
| 17:36:55 | 20 | Q.   When you were told by Gang Tyre to pay |
| 17:36:58 | 21 | attention to this, some concern was expressed to you |
| 17:37:02 | 22 | that deadlines might run? |
| 17:37:05 | 23 | MR. TOBEROFF:  Don't talk any more of |
| 17:37:07 | 24 | substance than he advised you to draw your attention |
| 17:37:10 | 25 | to the tolling agreement. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 258

| 17:37:11 | 1 | THE WITNESS: Yeah. I mean that's really -- |
| | 2 | BY MR. PETROCELLI: |
| 17:37:14 | 3 | Q. Why did you send this out to DC Comics? |
| 17:37:16 | 4 | MR. TOBEROFF: Privileged. I instruct you |
| 17:37:19 | 5 | not to answer. |
| | 6 | BY MR. PETROCELLI: |
| 17:37:19 | 7 | Q. Privilege with whom? Who is the lawyer that |
| 17:37:22 | 8 | you're asserting your privilege with? |
| 17:37:22 | 9 | MR. TOBEROFF: I'm going to -- |
| 17:37:23 | 10 | MR. PETROCELLI: I'm asking her, not you. |
| 17:37:25 | 11 | MR. TOBEROFF: I'm asserting it on her |
| 17:37:27 | 12 | behalf. |
| 17:37:28 | 13 | MR. PETROCELLI: I know, but I'm asking her. |
| 17:37:28 | 14 | Q. With whom did you have an attorney-client -- |
| 17:37:31 | 15 | who were the attorneys with whom you received legal |
| 17:37:34 | 16 | advice, if any, about the -- about this tolling |
| 17:37:38 | 17 | agreement, Exhibit 62? |
| 17:37:40 | 18 | A. Well, as I testified before, I don't remember |
| 17:37:43 | 19 | exactly which attorneys we shared this with, but any |
| 17:37:49 | 20 | attorney that is in our employ I have an |
| 17:37:52 | 21 | attorney-client privilege with. So -- |
| 17:37:54 | 22 | MR. TOBEROFF: And -- |
| 17:37:54 | 23 | MR. PETROCELLI: I know, but I'm asking you. |
| 17:37:56 | 24 | MR. TOBEROFF: I'm asserting the |
| 17:37:57 | 25 | attorney-client privilege on your behalf with respect |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 259

| | | |
|---|---|---|
| 17:37:58 | 1 | to Kevin Marks even though he has been terminated |
| 17:38:01 | 2 | since the subject of the communication is a tolling |
| 17:38:04 | 3 | agreement that was entered into that he negotiated and |
| 17:38:08 | 4 | entered into as part of his legal representation of |
| 17:38:10 | 5 | you. |
| | 6 | BY MR. PETROCELLI: |
| 17:38:12 | 7 | Q.   Did -- |
| 17:38:14 | 8 | MR. TOBEROFF:  Clearly privileged. |
| | 9 | BY MR. PETROCELLI: |
| 17:38:15 | 10 | Q.   With what lawyers specifically do you |
| 17:38:17 | 11 | remember discussing this tolling agreement with |
| 17:38:20 | 12 | prior -- this tolling notice, Exhibit 62, prior to |
| 17:38:24 | 13 | your sending it out? |
| 17:38:24 | 14 | A.   As I testified before, I don't recall. |
| 17:38:30 | 15 | Q.   And do you recall discussing it with any |
| 17:38:33 | 16 | lawyer? |
| 17:38:33 | 17 | A.   With my mother. |
| 17:38:35 | 18 | Q.   Any lawyer I said. |
| 17:38:37 | 19 | A.   I don't recall. |
| 17:38:40 | 20 | Q.   Okay.  Why did you send it out? |
| 17:38:44 | 21 | A.   Because in reading the tolling -- |
| 17:38:46 | 22 | MR. TOBEROFF:  Wait, wait, wait.  You've |
| 17:38:52 | 23 | testified that you received advice -- |
| 17:38:55 | 24 | MR. PETROCELLI:  Marc -- |
| 17:38:55 | 25 | MR. TOBEROFF:  Excuse me. |

**EXHIBIT K**
**668**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 260

| | | |
|---|---|---|
| 17:38:56 | 1 | MR. PETROCELLI:  -- you're just coaching the |
| 17:38:58 | 2 | witness. |
| 17:38:58 | 3 | MR. TOBEROFF:  I'm not coaching the witness. |
| 17:39:00 | 4 | Attorney-client privilege.  Instruct you not to |
| 17:39:01 | 5 | answer.  I'm not going to explain it. |
| 17:39:04 | 6 | THE WITNESS:  Okay. |
| 17:39:05 | 7 | MR. TOBEROFF:  Is that better? |
| 17:39:08 | 8 | MR. PETROCELLI:  I can't control what you do. |
| 17:39:11 | 9 | I'm not here to critique you. |
| 17:39:14 | 10 | MR. TOBEROFF:  What exhibit number is this |
| 17:39:16 | 11 | one? |
| 17:39:16 | 12 | THE WITNESS:  That was 62.  This one you |
| 17:39:19 | 13 | mean; right? |
| 17:39:21 | 14 | MR. TOBEROFF:  Right. |
| 17:39:21 | 15 | THE WITNESS:  Yeah. |
| 17:39:53 | 16 | MR. PETROCELLI:  Let's look at the next |
| 17:39:54 | 17 | document, which is what? |
| 17:39:56 | 18 | MR. TOKORO:  63. |
| 17:39:57 | 19 | MR. PETROCELLI:  Exhibit 63? |
| 17:39:59 | 20 | MR. TOKORO:  63. |
| | 21 | (Whereupon, Plaintiff's Exhibit 63 |
| 17:40:10 | 22 | was marked for identification.) |
| 17:40:11 | 23 | THE WITNESS:  Thank you. |
| | 24 | BY MR. PETROCELLI: |
| 17:40:14 | 25 | Q.   This is a letter to Mr. Bulson with a copy to |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 261

| | | |
|---|---|---|
| 17:40:17 | 1 | Michael Siegel by you and your mother.  Do you see |
| 17:40:22 | 2 | that? |
| 17:40:22 | 3 | A.    Yes. |
| 17:40:23 | 4 | Q.    Enclosing your letter? |
| 17:40:30 | 5 | A.    Excuse me.   This? |
| 17:40:31 | 6 | Q.    Which was the prior exhibit, apparently; |
| 17:40:34 | 7 | right? |
| 17:40:34 | 8 | A.    Yes, it looks that way. |
| 17:40:37 | 9 | Q.    About the tolling agreement; correct? |
| 17:40:38 | 10 | A.    It looks that way. |
| 17:40:40 | 11 | Q.    It states notifying DC "that under the terms |
| 17:40:42 | 12 | of the April 6, 2000 Tolling Agreement, and due to our |
| 17:40:46 | 13 | written notification to DC Comics on September 21, |
| 17:40:51 | 14 | 2002 which totally stopped and ended negotiations with |
| 17:40:54 | 15 | that company, its parent company and all its |
| 17:40:58 | 16 | representatives, the Tolling Period has been |
| 17:41:02 | 17 | canceled."  Why did you send this to Michael Siegel's |
| 17:41:05 | 18 | lawyer? |
| 17:41:05 | 19 | A.    To keep him informed. |
| 17:41:13 | 20 | Q.    Did you get a response from Michael Siegel or |
| 17:41:16 | 21 | his lawyer to your letter in September when you sent |
| 17:41:20 | 22 | him copies of the September 21 letters?  Did you hear |
| 17:41:24 | 23 | from him at that time as to what's going on? |
| 17:41:26 | 24 | A.    I could have. |
| 17:41:27 | 25 | Q.    Do you remember? |

**EXHIBIT K**
**670**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 262

| 17:41:28 | 1 | A.    I don't remember specifically. |
| 17:41:30 | 2 | Q.    Do you remember any communication with him |
| 17:41:33 | 3 | about why you're changing representatives? |
| 17:41:39 | 4 | A.    There probably -- there probably was, but I |
| 17:41:43 | 5 | can't remember specifically when it was. |
| 17:41:47 | 6 | Q.    Given your testimony that you never met him, |
| 17:41:52 | 7 | did you ever speak to him? |
| 17:41:57 | 8 | A.    No. |
| 17:41:58 | 9 | Q.    And to your knowledge, did your mother ever |
| 17:42:00 | 10 | speak to him? |
| 17:42:01 | 11 | A.    I think -- no, I don't think she even spoke |
| 17:42:06 | 12 | to him when he was a child. |
| 17:42:08 | 13 | Q.    So the only type of communication that you |
| 17:42:11 | 14 | actually had with Michael Siegel was in writing |
| 17:42:18 | 15 | directly to him or to Mr. Bulson; correct? |
| 17:42:21 | 16 | A.    It -- it was more often through his attorney. |
| 17:42:26 | 17 | It was occasionally directly with Michael.  But he was |
| 17:42:31 | 18 | sick for like long periods of time, so, you know, long |
| 17:42:37 | 19 | periods would go by and I wouldn't hear from him, and |
| 17:42:40 | 20 | then all of a sudden a letter would pop up. |
| 17:42:42 | 21 | Q.    And the only way that you would hear from him |
| 17:42:47 | 22 | was through a letter; right? |
| 17:42:48 | 23 | A.    Yes. |
| 17:42:48 | 24 | Q.    Did you have his phone number? |
| 17:42:49 | 25 | A.    I did not have his phone number. |

**EXHIBIT K**
**671**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 263

| | | |
|---|---|---|
| 17:42:51 | 1 | Q. Did you give him your phone number? |
| 17:42:55 | 2 | A. I don't remember whether I did or not. |
| 17:42:57 | 3 | Q. Did you give him your e-mail address? |
| 17:43:03 | 4 | A. We never communicated by e-mail, so I |
| 17:43:05 | 5 | probably did not. |
| 17:43:17 | 6 | Q. Can you go to the next exhibit, which is the |
| 17:43:19 | 7 | Superboy termination notice that was sent out on your |
| 17:43:26 | 8 | behalf on November 8, 2002. |
| 17:43:31 | 9 | A. Thank you. |
| 17:43:39 | 10 | Q. Why didn't you send this out sooner? |
| 17:43:53 | 11 | MR. TOBEROFF: You can answer except I |
| 17:43:56 | 12 | wouldn't go into anything that implicates |
| 17:43:59 | 13 | communication with an attorney. |
| 17:44:02 | 14 | THE WITNESS: We had our hands full. We had |
| 17:44:04 | 15 | a lot of -- a lot of things that were going on in the |
| 17:44:08 | 16 | case and trying to find a new attorney after we were |
| 17:44:15 | 17 | dissatisfied with the February offer from DC. We |
| 17:44:20 | 18 | spent a long period of time just trying to decide what |
| 17:44:23 | 19 | to do with what was already before us, and once we |
| 17:44:29 | 20 | figured that out, then we turned our attention to |
| 17:44:35 | 21 | Superboy. |
| | 22 | BY MR. PETROCELLI: |
| 17:44:35 | 23 | Q. Do you know when the earliest time was when |
| 17:44:37 | 24 | you could have sent out a notice of termination for |
| 17:44:39 | 25 | Superboy? |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 264

| | | |
|---|---|---|
| 17:44:39 | 1 | A.   No, I really don't. |
| 17:44:42 | 2 | Q.   Do you know whether you were bumping up |
| 17:44:44 | 3 | against a deadline to send out the Superboy notice? |
| 17:44:48 | 4 | A.   I think we were getting close to a deadline, |
| 17:44:50 | 5 | I think more in terms of end date than beginning date. |
| 17:44:55 | 6 | Q.   Did you have any discussions with any member |
| 17:45:03 | 7 | of the Shuster family that you were going to be |
| 17:45:06 | 8 | sending out the Superboy notice -- |
| 17:45:09 | 9 | A.   No. |
| 17:45:10 | 10 | Q.   -- claiming a hundred percent termination |
| 17:45:12 | 11 | interest? |
| 17:45:12 | 12 | A.   No, we did not. |
| 17:45:14 | 13 | Q.   Did you and your mother discuss whether you |
| 17:45:16 | 14 | should do so beforehand? |
| 17:45:18 | 15 | A.   Whether we should what? |
| 17:45:19 | 16 | Q.   Contact them beforehand and let them know. |
| 17:45:26 | 17 | A.   No. |
| 17:45:27 | 18 | Q.   Did you have any idea what their view was |
| 17:45:33 | 19 | about Mr. Shuster's termination interest with respect |
| 17:45:37 | 20 | to Superboy? |
| 17:45:39 | 21 | A.   We didn't talk to them about Superboy. |
| 17:45:43 | 22 | Q.   Well, were you not concerned that they might |
| 17:45:48 | 23 | protest or contest the assertion by the Siegel family |
| 17:45:53 | 24 | that Jerome Siegel was the sole creator and the sole |
| 17:45:57 | 25 | person entitled to claim a termination interest? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 265

| | | |
|---|---|---|
| 17:45:59 | 1 | A.  No. |
| 17:46:02 | 2 | Q.  Why not? |
| 17:46:05 | 3 | A.  Because we were, you know, relying on the |
| 17:46:08 | 4 | Westchester decision. |
| 17:46:10 | 5 | Q.  In 1947? |
| 17:46:11 | 6 | A.  Yes, correct. |
| 17:46:12 | 7 | Q.  But -- |
| 17:46:13 | 8 | A.  '47, '48, whenever it was. |
| 17:46:15 | 9 | Q.  How did you know they were aware of it? |
| 17:46:17 | 10 | A.  We weren't trying to get inside their minds. |
| 17:46:20 | 11 | We were doing what we thought, you know, we had rights |
| 17:46:25 | 12 | to. |
| 17:46:26 | 13 | Q.  But what if -- but did you discuss with your |
| 17:46:30 | 14 | mother the possibility that you may now be entering |
| 17:46:33 | 15 | into an area in which they might contest your |
| 17:46:43 | 16 | position?  Did that thought ever occur to you? |
| 17:46:45 | 17 | A.  We felt perfectly confident that we were |
| 17:46:47 | 18 | within our rights. |
| 17:46:48 | 19 | Q.  I understand that you made a judgment that |
| 17:46:49 | 20 | you were within your rights, but did you give some |
| 17:46:52 | 21 | consideration to the idea that the family of Joe |
| 17:46:58 | 22 | Shuster might have a different view and might dispute |
| 17:47:01 | 23 | this in some way? |
| 17:47:05 | 24 | A.  I don't recall that being a concern. |
| 17:47:07 | 25 | Q.  Never even occurred to you? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 266

| | | |
|---|---|---|
| 17:47:08 | 1 | A.    I don't think so. |
| 17:47:13 | 2 | Q.    And you knew that their lawyer was your |
| 17:47:17 | 3 | lawyer; right? |
| 17:47:17 | 4 | A.    Correct. |
| 17:47:17 | 5 | Q.    Did you ask your lawyer? |
| 17:47:20 | 6 | A.    Do we -- |
| 17:47:21 | 7 | MR. TOBEROFF:  Don't disclose -- |
| 17:47:23 | 8 | MR. PETROCELLI:  Yes. |
| 17:47:24 | 9 | MR. TOBEROFF:  Don't disclose -- I instruct |
| 17:47:26 | 10 | you not to answer. |
| 17:47:27 | 11 | THE WITNESS:  Okay. |
| | 12 | BY MR. PETROCELLI: |
| 17:47:28 | 13 | Q.    Did you ask Mr. Toberoff in his -- |
| | 14 | MR. TOBEROFF:  Privilege.  Excuse me. |
| | 15 | BY MR. PETROCELLI: |
| 17:47:31 | 16 | Q.    Did you ask Mr. Toberoff in his capacity as a |
| 17:47:35 | 17 | lawyer for the Shusters what their view of the |
| 17:47:39 | 18 | Superboy issue was? |
| 17:47:41 | 19 | MR. TOBEROFF:  Privileged.  Instruct you not |
| 17:47:42 | 20 | to answer. |
| | 21 | BY MR. PETROCELLI: |
| 17:47:42 | 22 | Q.    I'm not asking about any conversations with |
| 17:47:46 | 23 | you as their lawyer, but with you as the Shuster |
| 17:47:50 | 24 | lawyer. |
| 17:47:51 | 25 | MR. TOBEROFF:  You know -- |

**EXHIBIT K**
**675**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 267

| | | |
|---|---|---|
| 17:47:52 | 1 | BY MR. PETROCELLI: |
| 17:47:52 | 2 | Q.    Did you understand my question? |
| 17:47:54 | 3 | MR. TOBEROFF:  Dan, you can't have it both |
| 17:47:56 | 4 | ways.  You can't ask me to keep my objections short |
| 17:47:58 | 5 | and accuse me of coaching and then when I keep it |
| 17:48:00 | 6 | short you engage me in conversations which makes me |
| 17:48:03 | 7 | defensive the next time I object so I explain my |
| 17:48:05 | 8 | objections. |
| 17:48:05 | 9 | MR. PETROCELLI:  Okay.  I just want to make |
| 17:48:06 | 10 | sure, though, based on your objections that you |
| 17:48:08 | 11 | understood and more importantly that the witness |
| 17:48:10 | 12 | understood.  So let me -- because I don't want to |
| 17:48:13 | 13 | argue with you, and I regret the few instances in |
| 17:48:18 | 14 | which we have and apologize if I said anything in |
| 17:48:25 | 15 | temper. |
| 17:48:25 | 16 | MR. TOBEROFF:  I accept your apology in this |
| 17:48:27 | 17 | limited instance. |
| 17:48:30 | 18 | MR. PETROCELLI:  And I accept yours. |
| 17:48:32 | 19 | MR. TOBEROFF:  I didn't apologize. |
| 17:48:34 | 20 | MR. PETROCELLI:  Noted. |
| 17:48:36 | 21 | THE WITNESS:  You guys. |
| | 22 | BY MR. PETROCELLI: |
| 17:48:40 | 23 | Q.    Did -- did you, knowing that a lawyer with |
| 17:48:44 | 24 | whom you were dealing, Marc Toberoff, was also a |
| 17:48:50 | 25 | person who represented the Shusters -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 268

| | | |
|---|---|---|
| 17:48:53 | 1 | A.    Um-hum. |
| 17:48:54 | 2 | Q.    -- did you ask Mr. Toberoff with his Shuster |
| 17:48:59 | 3 | lawyer hat on, not the Siegel lawyer hat on, to |
| 17:49:03 | 4 | discuss with you what the Shuster position was on |
| 17:49:10 | 5 | Superboy? |
| 17:49:10 | 6 | MR. TOBEROFF:  Instruct you not to answer. |
| 17:49:14 | 7 | Privilege. |
| | 8 | BY MR. PETROCELLI: |
| 17:49:17 | 9 | Q.    Did you have any discussions with |
| 17:49:23 | 10 | Mr. Toberoff in his capacity as a lawyer for the |
| 17:49:29 | 11 | Shusters -- |
| 17:49:30 | 12 | MR. TOBEROFF:  Same. |
| 17:49:30 | 13 | THE WITNESS:  You can't separate them out, |
| 17:49:33 | 14 | though. |
| 17:49:33 | 15 | MR. TOBEROFF:  Same instruction. |
| 17:49:34 | 16 | THE WITNESS:  I couldn't separate them out. |
| 17:49:36 | 17 | MR. TOBEROFF:  Same instruction. |
| | 18 | BY MR. PETROCELLI: |
| 17:49:41 | 19 | Q.    Can you answer that question for me? |
| 17:49:43 | 20 | A.    I think I've been instructed not to. |
| 17:49:49 | 21 | Q.    Okay.  And did you have any conversations |
| 17:49:51 | 22 | with your mother about what the Shuster position is or |
| 17:49:59 | 23 | might be regarding your issuance of a notice of |
| 17:50:03 | 24 | termination claiming a hundred percent of the |
| 17:50:06 | 25 | termination interest to Superboy? |

LAURA SIEGEL LARSON - 7/22/2011

Page 269

| | | |
|---|---|---|
| 17:50:07 | 1 | A.   I don't believe we did. |
| 17:50:11 | 2 | Q.   And even though Ms. Peary had been kind |
| 17:50:20 | 3 | enough to refer Mr. Toberoff to your family -- |
| 17:50:23 | 4 | A.   Um-hum. |
| 17:50:24 | 5 | Q.   -- it didn't occur to you that you might want |
| 17:50:27 | 6 | to check with the Peary family or the Peavy family on |
| 17:50:32 | 7 | what their view is on Superboy before you filed a |
| 17:50:36 | 8 | notice claiming a hundred percent of the termination |
| 17:50:39 | 9 | interest? |
| 17:50:40 | 10 | A.   I can't -- I can't testify as to what my |
| 17:50:44 | 11 | mother may or may not have done. |
| 17:50:44 | 12 | Q.   Well, what about you? |
| 17:50:53 | 13 | A.   I did not. |
| 17:50:53 | 14 | Q.   Okay.  Did you tell your mother it might be a |
| 17:50:53 | 15 | good thing as a courtesy to let Ms. Peavy know? |
| 17:50:57 | 16 | A.   I don't recall. |
| 17:50:57 | 17 | Q.   You didn't give your mother that advice? |
| 17:51:00 | 18 | A.   I don't remember giving her advice. |
| 17:51:02 | 19 | Q.   Did your mother -- you certainly understood |
| 17:51:07 | 20 | how proud Jean Peavy was of her husband's |
| 17:51:13 | 21 | contributions -- |
| 17:51:13 | 22 | A.   Her brother. |
| 17:51:14 | 23 | Q.   -- her brother's contributions to Superman? |
| 17:51:17 | 24 | A.   Of course. |
| 17:51:18 | 25 | Q.   And the whole Superman history; correct? |

**Merrill   Corporation   -   Los Angeles**

800-826-0277                          www.merrillcorp.com/law

EXHIBIT K
678

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 270

| | | |
|---|---|---|
| 17:51:23 | 1 | A.   Of course. |
| 17:51:25 | 2 | Q.   And you knew your father felt that way also; |
| 17:51:28 | 3 | right? |
| 17:51:28 | 4 | A.   Yes. |
| 17:51:29 | 5 | Q.   And your mother felt that way; correct? |
| 17:51:31 | 6 | A.   We all did. |
| 17:51:32 | 7 | Q.   And do you think that -- did it occur to you |
| 17:51:35 | 8 | that Jean Peavy might have some feelings about her |
| 17:51:40 | 9 | brother's getting credit for Superboy when you now |
| 17:51:45 | 10 | were claiming sole credit? |
| 17:51:46 | 11 | A.   To the best of my recollection, it wasn't -- |
| 17:51:51 | 12 | it wasn't anything that we were concerned about or |
| 17:51:54 | 13 | worried about.  We thought that they shared the same |
| 17:51:58 | 14 | view that we had. |
| 17:51:59 | 15 | Q.   You had no basis to think that.  What was |
| 17:52:02 | 16 | your basis? |
| 17:52:03 | 17 | A.   I'm -- |
| 17:52:04 | 18 | Q.   Some opinion in 1947 that you don't even know |
| 17:52:07 | 19 | that they were aware of? |
| 17:52:08 | 20 | A.   Just discussions that I had had with my |
| 17:52:10 | 21 | father during his lifetime. |
| 17:52:14 | 22 | Q.   Did you ever at any time have a discussion |
| 17:52:17 | 23 | with someone in the Shuster family about whether they |
| 17:52:21 | 24 | agreed with that position? |
| 17:52:22 | 25 | A.   I did not. |

**EXHIBIT K**
**679**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 271

| | | |
|---|---|---|
| 17:52:22 | 1 | Q.    Do you know if your mother did? |
| 17:52:25 | 2 | A.    She may have. |
| 17:52:25 | 3 | Q.    Do you know if she did? |
| 17:52:27 | 4 | A.    I do not know whether she did. |
| 17:52:42 | 5 | Q.    Did you inform the Peary or Peavy family |
| 17:52:52 | 6 | after you served the notice of termination claiming a |
| 17:52:56 | 7 | hundred percent termination interest for Superboy that |
| 17:52:58 | 8 | you had done so? |
| 17:52:59 | 9 | A.    Yes, I believe we did. |
| 17:53:01 | 10 | Q.    Who did so? |
| 17:53:03 | 11 | A.    I think my mother did. |
| 17:53:06 | 12 | Q.    How do you know she did? |
| 17:53:08 | 13 | A.    Well, just every so often she would talk to |
| 17:53:11 | 14 | Jean on the phone.  I mean they had a very friendly |
| 17:53:14 | 15 | relationship, and I think she brought it up. |
| 17:53:16 | 16 | Q.    She said, "Hey, Jean, just want you to know |
| 17:53:19 | 17 | we filed a notice of termination claiming a hundred |
| 17:53:21 | 18 | percent on Superboy"? |
| 17:53:24 | 19 | A.    Possibly.  I wasn't on the phone. |
| 17:53:25 | 20 | Q.    Are you speculating or do you know for a fact |
| 17:53:27 | 21 | that she told that to Ms. Peavy? |
| 17:53:30 | 22 | A.    I'm speculating what she said. |
| 17:53:32 | 23 | Q.    Okay.  Well, that's -- that's of no help to |
| 17:53:35 | 24 | us. |
| 17:53:49 | 25 | Okay.  Let's take a look at the next exhibit. |

## LAURA SIEGEL LARSON - 7/22/2011

Page 272

| | | |
|---|---|---|
| 17:53:55 | 1 | At some point in time did Mr. Emanuel and |
| 17:54:00 | 2 | Mr. Toberoff approach you about their wanting to |
| 17:54:07 | 3 | pursue Michael Siegel's termination interest? |
| 17:54:11 | 4 | A.   Yes. |
| 17:54:12 | 5 | Q.   And that they were going to purchase it |
| 17:54:16 | 6 | themselves? |
| 17:54:17 | 7 | A.   That -- they -- it was Ari who was going to |
| 17:54:21 | 8 | purchase it. |
| 17:54:27 | 9 | Q.   Did Ari ask your permission? |
| 17:54:29 | 10 | A.   Yes, he did. |
| 17:54:31 | 11 | Q.   Okay.  Did you give it to him? |
| 17:54:33 | 12 | A.   Yes, we did. |
| 17:54:35 | 13 | Q.   Did you discuss the price that he would pay? |
| 17:54:44 | 14 | A.   No. |
| 17:54:44 | 15 | Q.   He said to you, "I want to buy Michael |
| 17:54:47 | 16 | Siegel's termination interest," and you said, "Fine"? |
| 17:54:53 | 17 | A.   Well, it wasn't only the word "fine."  We |
| 17:54:56 | 18 | talked about it a little bit more than that, but -- |
| 17:54:58 | 19 | Q.   Tell me what you said, and what did you guys |
| 17:55:01 | 20 | talk about in that regard? |
| 17:55:03 | 21 | A.   It was just that, you know, Michael was kind |
| 17:55:07 | 22 | of a loose cannon.  He was, you know -- he was |
| 17:55:11 | 23 | difficult to deal with.  At times he perfectly |
| 17:55:17 | 24 | understood that, you know, we should have a united |
| 17:55:20 | 25 | family front, and at other times he was, you know, |

**EXHIBIT K**
**681**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 273

| | | |
|---|---|---|
| 17:55:27 | 1 | kind of off the beam, and so it became increasingly |
| 17:55:34 | 2 | difficult to deal with him.  So it seemed that it |
| 17:55:39 | 3 | might be a good idea to have somebody who was friendly |
| 17:55:44 | 4 | to us acquire his rights. |
| 17:55:49 | 5 | Q.  Did you tell Michael that you were involved |
| 17:55:58 | 6 | in Ari, in the decision to have Ari Emanuel acquire |
| 17:56:03 | 7 | his termination interests? |
| 17:56:05 | 8 | A.  I don't believe we discussed it. |
| 17:56:06 | 9 | Q.  Well, you never had a conversation with him. |
| 17:56:09 | 10 | A.  No. |
| 17:56:12 | 11 | Q.  Okay.  And did you write him a letter saying, |
| 17:56:14 | 12 | "Michael, I want you to understand that I'm having Ari |
| 17:56:17 | 13 | Emanuel approach you to buy your interest because |
| 17:56:20 | 14 | you're out of control and this will be in my best |
| 17:56:23 | 15 | interest if I have this happen"?  Did you write that |
| 17:56:26 | 16 | kind of a letter to him? |
| 17:56:27 | 17 | A.  I did not write it in the words that you |
| 17:56:28 | 18 | used. |
| 17:56:29 | 19 | Q.  Did you write any letter to him advising him |
| 17:56:32 | 20 | that Michael -- that you were giving -- you had |
| 17:56:38 | 21 | approved Ari Emanuel purchasing his termination |
| 17:56:41 | 22 | interest? |
| 17:56:41 | 23 | A.  I believe that he wrote to me and had |
| 17:56:47 | 24 | mentioned it to me, and I responded and said if he |
| 17:56:50 | 25 | wanted to do it, I would not stand in his way. |

**EXHIBIT K**
**682**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 274

| | | |
|---|---|---|
| 17:56:53 | 1 | Q.    Did he write to you saying what? |
| 17:56:55 | 2 | A.    He said he was in need of immediate cash. |
| 17:57:00 | 3 | Q.    He happened to write to you just at the same |
| 17:57:04 | 4 | time that -- withdrawn. |
| 17:57:06 | 5 | When did he write this letter to you? |
| 17:57:09 | 6 | A.    It had to have been after an offer was made |
| 17:57:14 | 7 | to him because he was telling me about an offer. |
| 17:57:17 | 8 | Q.    Okay.  But when you -- you initially spoke |
| 17:57:21 | 9 | with Mr. Emanuel about his purchasing the interest |
| 17:57:27 | 10 | because you thought that would be beneficial to you |
| 17:57:30 | 11 | and your mother's interest; correct? |
| 17:57:33 | 12 | A.    And to Michael because he was looking for |
| 17:57:35 | 13 | money. |
| 17:57:36 | 14 | Q.    Well, I didn't ask you about that -- |
| 17:57:38 | 15 | A.    Sorry. |
| 17:57:38 | 16 | Q.    -- because you didn't know that Michael was |
| 17:57:40 | 17 | looking for money at the time.  He told you |
| 17:57:42 | 18 | afterwards. |
| 17:57:43 | 19 | A.    No.  I'm sorry.  He was always saying that he |
| 17:57:45 | 20 | needed money. |
| 17:57:46 | 21 | Q.    But he didn't call you up and say, "Look, I'm |
| 17:57:48 | 22 | looking for money," and it was for that reason that |
| 17:57:51 | 23 | you and Ari first had your discussion about his |
| 17:57:55 | 24 | buying the Super- -- about his buying Michael's |
| 17:57:56 | 25 | interest. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 275

| 17:57:56 | 1 | A.   No, he never called me. |
| 17:57:58 | 2 | Q.   Okay.  So you had no communication with |
| 17:57:59 | 3 | Michael that he wanted to sell his Superman interest |
| 17:58:03 | 4 | which led you to then authorize Ari to go ahead and do |
| 17:58:06 | 5 | it.  That's not what happened; correct? |
| 17:58:08 | 6 | A.   Could you ask it again?  I'm a little |
| 17:58:13 | 7 | confused. |
| 17:58:13 | 8 | Q.   You did not receive the communication from |
| 17:58:15 | 9 | Michael Siegel saying he needed money, he wanted to |
| 17:58:17 | 10 | sell his Superman interest, and for that reason you |
| 17:58:19 | 11 | then went to Ari and said, "Here, go buy it.  My |
| 17:58:23 | 12 | brother needs money."  There's no such document; |
| 17:58:26 | 13 | correct? |
| 17:58:26 | 14 | A.   It was -- is there a document.  I haven't |
| 17:58:29 | 15 | seen those documents in a really long time.  I can't |
| 17:58:32 | 16 | really answer your question. |
| 17:58:33 | 17 | Q.   Where are those documents? |
| 17:58:35 | 18 | A.   Whatever documents that -- |
| 17:58:36 | 19 | MR. TOBEROFF:  What documents are you |
| 17:58:37 | 20 | referring to? |
|  | 21 | BY MR. PETROCELLI: |
| 17:58:38 | 22 | Q.   You said "I haven't seen those documents in a |
| 17:58:41 | 23 | long time."  Where are those documents? |
| 17:58:42 | 24 | A.   Any letters between myself and Michael. |
| 17:58:45 | 25 | Q.   Where are they? |

EXHIBIT K
**684**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 276

| 17:58:45 | 1 | A.    I turned them over to my attorney. |

17:58:45    1          A.    I turned them over to my attorney.

17:58:47    2          Q.    You said you had letters in your apartment,

17:58:50    3    in your condominium.

17:58:52    4          A.    Well, anything that I found I turned over to

17:58:55    5    my attorney.  I said that if there's anything else, it

17:58:58    6    would be in my apartment.

17:58:59    7          Q.    When you turned those letters over to your

17:59:02    8    attorney, do you mean Marc Toberoff?

17:59:03    9          A.    Yes.

17:59:03    10          Q.    How did you turn your letters with Michael

17:59:05    11    Siegel over to Marc Toberoff?

17:59:07    12          A.    Well, in a general request for production of

17:59:11    13    documents.

17:59:12    14          Q.    How did you give them to Mr. Toberoff?

17:59:15    15          MR. TOBEROFF:  He's talking about --

16    BY MR. PETROCELLI:

17:59:16    17          Q.    How did you transmit them to Mr. Toberoff?

17:59:18    18          MR. TOBEROFF:  Mail it?

17:59:20    19          THE WITNESS:  In a box.

20    BY MR. PETROCELLI:

17:59:20    21          Q.    Did you ever fax any to Mr. Toberoff?

17:59:23    22          A.    I don't recall any faxes.

17:59:25    23          Q.    You have a fax machine; right?

17:59:27    24          A.    Yes, I do.

17:59:31    25          Q.    Okay.  Is it fair to say that Mr. Toberoff

**LAURA SIEGEL LARSON - 7/22/2011**

Page 277

| | | |
|---|---|---|
| 17:59:34 | 1 | has a copy of every single letter that you exchanged |
| 17:59:40 | 2 | with Michael Siegel -- |
| 17:59:44 | 3 | A.    What I -- |
| 17:59:45 | 4 | Q.    -- regarding Superman? |
| 17:59:47 | 5 | A.    Whatever I have found that pertains to the |
| 17:59:50 | 6 | case I have turned over to him. |
| 17:59:54 | 7 | Q.    Okay.  And when is the last time that you |
| 17:59:59 | 8 | gave Mr. Toberoff or any member of his firm a -- any |
| 18:00:05 | 9 | correspondence with Michael Siegel? |
| 18:00:07 | 10 | A.    Oh. |
| 18:00:08 | 11 | Q.    When is the last time that you located such a |
| 18:00:10 | 12 | document and gave it to him? |
| 18:00:14 | 13 | A.    Well, that's hard to answer because, you |
| 18:00:17 | 14 | know, I -- I don't necessarily just find something of |
| 18:00:21 | 15 | Michael's separately from finding other things. |
| 18:00:24 | 16 | Q.    So I didn't mean to suggest -- |
| 18:00:26 | 17 | A.    No, I'm just trying -- I know I'm not |
| 18:00:27 | 18 | answering your question.  I'm trying to reconstruct in |
| 18:00:30 | 19 | my mind. |
| 18:00:31 | 20 | Q.    Okay.  I'm just saying when is the last time |
| 18:00:32 | 21 | you recall coming across a Michael Siegel letter and |
| 18:00:36 | 22 | giving it to Mr. Toberoff? |
| 18:00:39 | 23 | A.    I don't know.  It could have been a few |
| 18:00:41 | 24 | months ago. |
| 18:00:41 | 25 | Q.    What was the letter that you found? |

**Merrill  Corporation  -  Los Angeles**

800-826-0277                    www.merrillcorp.com/law

**EXHIBIT K**
**686**

3b7ac749-5ca5-4935-b47c-c3b46e0b4ffc

### LAURA SIEGEL LARSON - 7/22/2011

Page 278

| | | |
|---|---|---|
| 18:00:43 | 1 | MR. TOBEROFF: Misstates. Okay. |
| | 2 | BY MR. PETROCELLI: |
| 18:00:46 | 3 | Q. What was the letter that you came across a |
| 18:00:50 | 4 | few months ago and gave to Mr. Toberoff? |
| 18:00:52 | 5 | MR. TOBEROFF: Misstates her testimony. |
| 18:00:53 | 6 | I just want to instruct you when he's asking |
| 18:00:55 | 7 | you these questions, just focus on the question, and |
| 18:00:59 | 8 | this isn't a memory test. If you know the answer, let |
| 18:01:01 | 9 | him know. If you can recall, recall. But you don't |
| 18:01:05 | 10 | have to feel constrained to put something together if |
| 18:01:09 | 11 | you don't remember. Just let him know what you |
| 18:01:12 | 12 | remember. |
| 18:01:12 | 13 | MR. PETROCELLI: You know, to the extent your |
| 18:01:14 | 14 | lawyer is telling you to say you don't recall, it's |
| 18:01:17 | 15 | really not appropriate. |
| 18:01:18 | 16 | MR. TOBEROFF: I'm not -- I'm not saying |
| 18:01:18 | 17 | that. |
| 18:01:19 | 18 | THE WITNESS: No, I don't -- |
| | 19 | MR. PETROCELLI: We've gone over this, and |
| 18:01:21 | 20 | it's really late in the day to be talking about this |
| 18:01:21 | 21 | now. You just have to give me your very, very best |
| 18:01:25 | 22 | recollection even if it's a faint recollection. I |
| 18:01:26 | 23 | don't want you speculating wildly. |
| 18:01:27 | 24 | MR. TOBEROFF: Excuse me. I object to the |
| 18:01:29 | 25 | implication I'm telling her not to recall. She |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 279

| | | |
|---|---|---|
| 18:01:30 | 1 | started saying things that were unresponsive, and then |
| 18:01:34 | 2 | she said she's just trying to put it together and by |
| 18:01:38 | 3 | vocalizing various things, and I said look, it's not a |
| 18:01:40 | 4 | memory test.  Try and remember.  If you can remember, |
| 18:01:42 | 5 | give it to him.  If you don't, don't.  That's not |
| 18:01:45 | 6 | coaching her not to recall, and I take object -- you |
| 18:01:47 | 7 | know, that's a snotty comment, and I object to it. |
| 18:01:52 | 8 | MR. PETROCELLI:  We better change the tape. |
| 18:01:54 | 9 | THE VIDEOGRAPHER:  Okay.  This will mark the |
| 18:01:55 | 10 | end of Volume -- sorry -- Volume 1, tape number four, |
| 18:01:58 | 11 | in the deposition of Laura Siegel.  Going off the |
| 18:02:04 | 12 | record.  The time is 6:02. |
| 18:08:07 | 13 | (A recess was taken.) |
| 18:08:15 | 14 | THE VIDEOGRAPHER:  We are back on the record. |
| 18:08:17 | 15 | This marks the beginning of Volume 1, tape number |
| 18:08:19 | 16 | five, in the deposition of Laura Siegel.  The time is |
| 18:08:23 | 17 | 6:08. |
| | 18 | BY MR. PETROCELLI: |
| 18:08:24 | 19 | Q.   I want to get back to these questions about |
| 18:08:32 | 20 | Mr. Emanuel purchasing the interest of Mr. Siegel. |
| 18:08:37 | 21 | Now, first of all, were you aware that |
| 18:08:40 | 22 | Mr. Toberoff would be assisting Mr. Emanuel in |
| 18:08:45 | 23 | acquiring Mr. Michael Siegel's termination interest? |
| 18:08:49 | 24 | A.   What do you mean by assisting? |
| 18:08:52 | 25 | Q.   Working with him in some way. |

## LAURA SIEGEL LARSON - 7/22/2011

Page 280

| | | |
|---|---|---|
| 18:08:56 | 1 | A.   I believe that he was communicating with |
| 18:09:00 | 2 | Michael Siegel or with Don Bulson. |
| 18:09:03 | 3 | Q.   Mr. Toberoff was? |
| 18:09:04 | 4 | A.   Mr. Toberoff. |
| 18:09:05 | 5 | Q.   On behalf of whom? |
| 18:09:07 | 6 | A.   On behalf of Mr. Emanuel. |
| 18:09:08 | 7 | Q.   Okay.  And how do you know that? |
| 18:09:13 | 8 | A.   It was a discussion. |
| 18:09:16 | 9 | Q.   Mr. Emanuel told you that, that he would be |
| 18:09:18 | 10 | working with Mr. Toberoff in connection with his |
| 18:09:21 | 11 | activities with Mr. Siegel and Mr. Bulson? |
| 18:09:24 | 12 | A.   Yes. |
| 18:09:24 | 13 | Q.   Okay.  Did you and Mr. Emanuel discuss price? |
| 18:09:40 | 14 | A.   No, we did not. |
| 18:09:41 | 15 | MR. TOBEROFF:  Asked and answered. |
| | 16 | BY MR. PETROCELLI: |
| 18:09:41 | 17 | Q.   Were you made aware at any time of any of the |
| 18:09:45 | 18 | offers going back and forth? |
| 18:09:49 | 19 | A.   No. |
| 18:09:50 | 20 | Q.   Are you certain? |
| 18:09:50 | 21 | A.   Not the amount of the offers.  I was aware |
| 18:09:53 | 22 | that offers were going back and forth. |
| 18:09:55 | 23 | Q.   Were you aware generally of the nature of the |
| 18:09:59 | 24 | offers that were going back and forth? |
| 18:10:01 | 25 | MR. TOBEROFF:  Vague and ambiguous. |

LAURA SIEGEL LARSON - 7/22/2011

Page 281

| | | |
|---|---|---|
| 18:10:03 | 1 | THE WITNESS:  I don't believe that there was |
| 18:10:05 | 2 | a number ever mentioned. |
| | 3 | BY MR. PETROCELLI: |
| 18:10:07 | 4 | Q.   But you were being kept apprised of what was |
| 18:10:11 | 5 | happening on a general basis; is that right? |
| 18:10:13 | 6 | A.   Yes, correct. |
| 18:10:19 | 7 | Q.   Was it your view that it would be |
| 18:10:25 | 8 | advantageous to have the Michael Siegel interest |
| 18:10:34 | 9 | purchased and getting a maximum price for your |
| 18:10:36 | 10 | interest and your mother's interest in your dealings |
| 18:10:38 | 11 | with Warner Bros. or DC? |
| 18:10:41 | 12 | A.   I'm not sure I understand the question. |
| 18:10:44 | 13 | Q.   Did you believe that if Mr. Emanuel purchased |
| 18:10:49 | 14 | the Michael Siegel interest, that would facilitate |
| 18:10:53 | 15 | discussions that you and your mother would have to |
| 18:10:56 | 16 | transact your interest? |
| 18:10:58 | 17 | A.   Yes. |
| 18:11:02 | 18 | Q.   Did you think it was important for Michael |
| 18:11:05 | 19 | Siegel, your stepbrother, to know that it was Ari |
| 18:11:11 | 20 | Emanuel, a person with whom you were doing business, |
| 18:11:14 | 21 | who was seeking to purchase his interest? |
| 18:11:18 | 22 | A.   First of all, he was my half brother, but -- |
| 18:11:21 | 23 | Q.   Half brother.  Forgive me. |
| 18:11:25 | 24 | Did you think it was important for your half |
| 18:11:27 | 25 | brother, Michael Siegel, to know that the person who |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 282

| | | |
|---|---|---|
| 18:11:31 | 1 | was seeking to acquire his termination interest was |
| 18:11:37 | 2 | Ari Emanuel, the same person with whom you were doing |
| 18:11:40 | 3 | business? |
| 18:11:41 | 4 | A.  No, I didn't think that was important. |
| 18:11:44 | 5 | Q.  And you did not ever communicate to your |
| 18:11:47 | 6 | brother that it was Ari Emanuel who was this investor; |
| 18:11:53 | 7 | correct? |
| 18:11:54 | 8 | A.  I don't recall doing that. |
| 18:11:56 | 9 | Q.  And you know that your brother -- excuse me. |
| 18:12:00 | 10 | You know that Michael Siegel was never told that Ari |
| 18:12:03 | 11 | Emanuel was the person who was interested in |
| 18:12:09 | 12 | purchasing his termination interest; correct? |
| 18:12:11 | 13 | MR. TOBEROFF:  Vague as to time. |
| 18:12:12 | 14 | THE WITNESS:  Well, I do not know that. |
| 18:12:14 | 15 | BY MR. PETROCELLI: |
| 18:12:16 | 16 | Q.  You know that in the correspondence and the |
| 18:12:18 | 17 | communications with Michael Siegel and his lawyer, Don |
| 18:12:21 | 18 | Bulson, the purchaser was never named; correct? |
| 18:12:26 | 19 | A.  I -- I think -- I think that I heard that. |
| 18:12:31 | 20 | Q.  What was the strategy behind not telling |
| 18:12:35 | 21 | Michael Siegel that it was Ari Emanuel? |
| 18:12:41 | 22 | A.  I don't know that there was a strategy. |
| 18:12:43 | 23 | Q.  You didn't want Mr. Siegel to know that it |
| 18:12:46 | 24 | was Ari Emanuel; correct? |
| 18:12:47 | 25 | A.  I didn't have any feelings about it one way |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 283

| 18:12:49 | 1 | or another. |

18:12:50    2    Q.    But you never felt that you should tell him;

18:12:54    3    right?

18:13:00    4    A.    No.

18:13:00    5    Q.    And you had rejected selling your interest to

18:13:04    6    Ari Emanuel because you thought that he wasn't

18:13:09    7    offering enough money; right?

18:13:13    8    A.    No.

18:13:14    9    Q.    You said that he offered you 15 million and

18:13:18    10    that why would he ever pay full value, so it must be

18:13:21    11    worth a lot more than that.  Do you recall that?

18:13:23    12    A.    We preferred to have him negotiate for us

18:13:26    13    than make a purchase.

18:13:26    14    Q.    Did you make a counteroffer to him and say,

18:13:29    15    "You know, Ari, a guy like you would never offer 15 if

18:13:34    16    it's worth 15, so it must be worth 30 or 40 or 50 or a

18:13:38    17    hundred, so I'm going to counter at a much higher

18:13:40    18    number"?  Did you ever have that kind of discussion

18:13:42    19    with Mr. Emanuel?

18:13:43    20    A.    No.

18:13:43    21    Q.    Did you ever make any counterproposal to his

18:13:46    22    $15 million proposal?

18:13:47    23    A.    Yeah.  The counter was "Why don't you

18:13:50    24    represent us."

18:13:50    25    Q.    A counter to do a deal with him, I meant,

**Merrill  Corporation  -  Los Angeles**

800-826-0277                    www.merrillcorp.com/law

EXHIBIT K
692

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 284

| | | |
|---|---|---|
| 18:13:53 | 1 | other than an agency deal. |
| 18:14:01 | 2 | A.    No. |
| 18:14:01 | 3 | Q.    Why didn't you suggest to Mr. Emanuel that he |
| 18:14:05 | 4 | represent Michael Siegel just like he was representing |
| 18:14:09 | 5 | you to try to sell Michael Siegel's interest as an |
| 18:14:12 | 6 | agent rather than as a principal? |
| 18:14:14 | 7 | A.    He didn't express any interest in doing that. |
| 18:14:16 | 8 | Q.    Did you try to persuade him to doing so, into |
| 18:14:23 | 9 | doing that? |
| 18:14:23 | 10 | A.    We may have discussed it, but he didn't ever |
| 18:14:25 | 11 | show any interest in doing that. |
| 18:14:25 | 12 | Q.    Did you have a point of view about that?  Did |
| 18:14:30 | 13 | you have a preference? |
| 18:14:31 | 14 | A.    Not really. |
| 18:14:46 | 15 | Q.    Did you have any issue with the fact that the |
| 18:14:51 | 16 | person that you thought was your lawyer was now acting |
| 18:14:54 | 17 | in an adverse capacity to your stepbrother? |
| 18:15:00 | 18 | A.    I don't think we considered it an adverse |
| 18:15:03 | 19 | capacity. |
| 18:15:03 | 20 | Q.    You don't believe that Mr. Toberoff |
| 18:15:06 | 21 | representing Ari Emanuel in trying to provide the |
| 18:15:14 | 22 | lowest price to Michael Siegel to acquire his interest |
| 18:15:19 | 23 | was adverse to Michael Siegel? |
| 18:15:23 | 24 | A.    We had knowledge of the fact that Michael |
| 18:15:25 | 25 | wanted to speed up the process.  He really didn't want |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 285

| 18:15:27 | 1 | to wait things out.  He wasn't interested in |
| 18:15:33 | 2 | prolonging anything and wanted some money.  So it |
| 18:15:37 | 3 | seemed as if it was going to be to his advantage. |
| 18:15:40 | 4 | Q.   Why didn't you buy it? |
| 18:15:41 | 5 | A.   Didn't have the money. |
| 18:15:42 | 6 | Q.   Why didn't you try to borrow the money? |
| 18:15:47 | 7 | A.   Hey, I'm disabled.  I live on a disability |
| 18:15:51 | 8 | income.  There's no way that I could borrow any kind |
| 18:15:53 | 9 | of money for that. |
| 18:15:54 | 10 | Q.   Why didn't you ask Ari Emanuel to put up the |
| 18:15:58 | 11 | funds on your behalf? |
| 18:15:59 | 12 | A.   I just didn't think of it. |
| 18:16:00 | 13 | Q.   Nobody suggested that to you? |
| 18:16:07 | 14 | A.   No. |
| 18:16:07 | 15 | Q.   Did you tell -- since you never spoke to |
| 18:16:12 | 16 | Michael Siegel, did you communicate with Michael |
| 18:16:16 | 17 | Siegel that -- did you ask Michael Siegel in writing |
| 18:16:29 | 18 | whether he had any issue with your lawyer, Marc |
| 18:16:34 | 19 | Toberoff, representing this purchaser of his interest? |
| 18:16:40 | 20 | A.   I never asked him that. |
| 18:16:54 | 21 | Q.   Take a look at the next exhibit. |
| 18:16:59 | 22 | MR. TOKORO:  64. |
|  | 23 | (Whereupon, Plaintiff's Exhibit 64 |
|  | 24 | was marked for identification.) |
| 18:17:08 | 25 | THE WITNESS:  Thank you. |

Merrill  Corporation  -  Los Angeles

800-826-0277                    www.merrillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 286

| | | |
|---|---|---|
| 18:17:08 | 1 | BY MR. PETROCELLI: |
| 18:17:08 | 2 | Q.   This is a document sent to you and your |
| 18:17:10 | 3 | mother on the letterhead of IP Worldwide dated |
| 18:17:15 | 4 | November 26, 2002, with respect to the purchase of |
| 18:17:27 | 5 | Michael Siegel's termination interest by Ari Emanuel. |
| 18:17:33 | 6 | A.   I'm reading it, so I'm sorry.  If you could |
| 18:17:37 | 7 | give me a few minutes. |
| 18:17:56 | 8 | Q.   Tell me when you're ready. |
| 18:18:19 | 9 | A.   Okay.  I've read it. |
| 18:18:21 | 10 | Q.   What were the potential conflicts of interest |
| 18:18:27 | 11 | that you understood related to this document? |
| 18:18:35 | 12 | A.   I don't recall because it's not in this |
| 18:18:38 | 13 | document. |
| 18:18:38 | 14 | Q.   What's not in this document? |
| 18:18:40 | 15 | A.   Potential conflicts of interest.  It's not -- |
| 18:18:44 | 16 | it's not explained in the document, so I don't recall |
| 18:18:49 | 17 | something that was discussed in 2002 that's not in |
| 18:18:52 | 18 | front of me. |
| 18:18:53 | 19 | Q.   Right now as you sit here, you have no idea |
| 18:18:56 | 20 | what the potential conflicts of interest were? |
| 18:18:58 | 21 | A.   May I read that paragraph again? |
| 18:19:00 | 22 | Q.   Please. |
| 18:19:32 | 23 | A.   It doesn't refresh my memory by reading it. |
| 18:19:35 | 24 | Q.   Now, you see it's on the stationery or |
| 18:19:41 | 25 | letterhead of IP Worldwide.  Do you see that? |

**EXHIBIT K**
**695**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 287

| 18:19:43 | 1 | A. Yes. |

18:19:43    2        Q.    Go to the beginning of the second paragraph.

18:19:46    3    It says "IPW will enter into negotiations."  Do you

18:19:52    4    see that?

18:19:52    5        A.    Yes, I do.

18:19:53    6        Q.    What did you understand IPW to be?

18:19:55    7        A.    IP Worldwide.

18:19:58    8        Q.    Tell me -- so then it was IP Worldwide that

18:20:00    9    was going to acquire the Michael Siegel interests;

18:20:04    10    correct?

18:20:06    11        A.    No.  It says it will be directly financed by

18:20:08    12    Ari Emanuel.

18:20:09    13        Q.    Financed by, but the acquisition is to occur

18:20:13    14    by IPW; correct?

18:20:15    15        A.    My understanding of that was that IP

18:20:20    16    Worldwide, meaning as a lawyer, Mr. Toberoff was going

18:20:24    17    to conduct the negotiations.

18:20:28    18        Q.    If IPW acquired the termination interest of

18:20:33    19    Michael Siegel, a company in which Mr. Toberoff had an

18:20:36    20    ownership interest, you would have had no objection to

18:20:38    21    that; correct?

18:20:39    22        MR. TOBEROFF:  I just want to make -- when

18:20:40    23    we're speaking -- you're saying I, because there is a

24    company called IPW.

25        MR. PETROCELLI:  I know, but not at this

**Merrill   Corporation   -   Los Angeles**

800-826-0277                www.merrillcorp.com/law

**EXHIBIT K**
**696**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 288

1    point in time.

18:20:44    2        MR. TOBEROFF:  You're talking about IP

18:20:45    3    Worldwide; correct?

18:20:46    4        MR. PETROCELLI:  Yes.  I'm using "IPW"

18:20:48    5    because as the witness said, she understood it to mean

18:20:52    6    IP Worldwide as used in this letter.

18:20:53    7        MR. TOBEROFF:  Okay.

18:20:54    8        THE WITNESS:  And the question?

9    BY MR. PETROCELLI:

18:20:55    10       Q.   You would have had no objection to Michael

18:20:58    11   Siegel's interests being purchased in the name of IP

18:21:01    12   Worldwide, a company in which Mr. Toberoff had an

18:21:04    13   ownership interest; correct?

18:21:05    14       A.   Correct.

18:21:13    15       Q.   And again, you can't recall any of the

18:21:16    16   conflicts over the subject of this document.

18:21:18    17       A.   No.  Sorry.  I can't.

18:21:21    18       MR. PETROCELLI:  What exhibit number is this?

18:21:23    19       MR. TOKORO:  64.

18:21:29    20       MR. PETROCELLI:  Go to the next one.

18:21:30    21       MR. TOBEROFF:  I would like you to read me --

18:21:32    22   she asked a question, and you said "correct," and you

18:21:34    23   said "correct."  Can you read me that question,

18:21:37    24   please?

18:21:51    25       (The record was read.)

Merrill   Corporation   -   Los Angeles

800-826-0277                    www.merillcorp.com/law

EXHIBIT K
697

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 289

| | | |
|---|---|---|
| 18:21:51 | 1 | MR. TOBEROFF:  Okay.  Thank you. |
| 18:21:55 | 2 | MR. PETROCELLI:  Next is Exhibit 65, which is |
| 18:21:58 | 3 | another draft of this document dated December 16, |
| 18:22:02 | 4 | 2002, which contains more terms. |
| | 5 | (Whereupon, Plaintiff's Exhibit 65 |
| 18:22:11 | 6 | was marked for identification.) |
| | 7 | BY MR. PETROCELLI: |
| 18:22:12 | 8 | Q.  Were you negotiating this document with |
| 18:22:17 | 9 | Mr. Emanuel? |
| 18:22:18 | 10 | A.  May I read it first? |
| 18:22:20 | 11 | Q.  Sure. |
| 18:22:21 | 12 | A.  Thank you. |
| 18:22:45 | 13 | MR. TOBEROFF:  Do you have a signed -- you're |
| 18:22:47 | 14 | showing her documents that are unsigned.  Do you have |
| 18:22:50 | 15 | a signed document? |
| 18:22:58 | 16 | MR. PETROCELLI:  No.  You didn't produce it. |
| 18:23:19 | 17 | Q.  You do recall signing a version of this |
| 18:23:19 | 18 | document; is that right? |
| 18:23:19 | 19 | A.  A version.  I can't say this was the final. |
| 18:23:20 | 20 | MR. TOBEROFF:  I think there was a signed |
| 18:23:22 | 21 | document that was produced. |
| 18:23:24 | 22 | MR. PETROCELLI:  Well, I don't have it here, |
| 18:23:28 | 23 | and it's certainly possible. |
| 18:23:55 | 24 | THE WITNESS:  Okay.  I'm ready for your |
| 18:23:58 | 25 | question. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 290

| | | |
|---|---|---|
| 18:23:58 | 1 | MR. PETROCELLI: Oh. So you did find one. |
| 18:24:03 | 2 | Let me see it. |
| 18:24:17 | 3 | We're going to get to a signed version. |
| 18:24:19 | 4 | THE WITNESS: Okay. |
| 18:24:20 | 5 | MR. PETROCELLI: But it's not -- we're going |
| 18:24:22 | 6 | to stay with this document first. |
| 18:24:24 | 7 | THE WITNESS: All right. |
| 18:24:32 | 8 | BY MR. PETROCELLI: |
| 18:24:32 | 9 | Q.   This is Exhibit 65.  Who was negotiating the |
| 18:24:37 | 10 | terms of this document? |
| 18:24:39 | 11 | A.   My mother and I. |
| 18:24:42 | 12 | Q.   And who were you negotiating with? |
| 18:24:47 | 13 | A.   Ari. |
| 18:24:49 | 14 | Q.   How?  Over the phone?  In person?  Through |
| 18:24:52 | 15 | Mr. Toberoff?  All the above? |
| 18:24:53 | 16 | A.   All the above. |
| 18:24:58 | 17 | Q.   Was anybody other than Mr. Toberoff working |
| 18:25:02 | 18 | with you on the negotiations? |
| 18:25:10 | 19 | A.   No. |
| 18:25:11 | 20 | Q.   You -- you were the one insisting that if |
| 18:25:19 | 21 | Michael Siegel sold this interest to IPW and/or Ari |
| 18:25:26 | 22 | Emanuel, that they in turn, that is, IPW and/or Ari |
| 18:25:35 | 23 | Emanuel, would only sell the Michael Siegel interest |
| 18:25:39 | 24 | to a third party in connection with the sale of your |
| 18:25:43 | 25 | interest; correct? |

## LAURA SIEGEL LARSON - 7/22/2011

Page 291

| 18:25:45 | 1 | A. Can you show me where in the document it says |
| 18:25:47 | 2 | that? |
| 18:25:48 | 3 | Q. 3(a). |
| 18:25:58 | 4 | A. If this was the final version, then that's |
| 18:26:01 | 5 | what we agreed to. |
| 18:26:02 | 6 | Q. But that's -- I'm not asking right now |
| 18:26:05 | 7 | whether you agreed to it, but that's something you |
| 18:26:07 | 8 | wanted; right? |
| 18:26:07 | 9 | A. Yes. |
| 18:26:08 | 10 | Q. And you wanted the complete decision making |
| 18:26:12 | 11 | authority with respect to the disposition of not only |
| 18:26:15 | 12 | your interest, but the Michael Siegel interest; |
| 18:26:17 | 13 | correct? |
| 18:26:17 | 14 | A. That's correct. |
| 18:26:18 | 15 | Q. So you were basically using Ari Emanuel and |
| 18:26:22 | 16 | IPW as a front to acquire this interest that you would |
| 18:26:27 | 17 | ultimately control without telling your stepbrother; |
| 18:26:29 | 18 | correct? |
| 18:26:30 | 19 | A. No. |
| 18:26:30 | 20 | Q. And you did not tell your stepbrother that it |
| 18:26:32 | 21 | was you who was going to have complete control over |
| 18:26:35 | 22 | his interest; correct? |
| 18:26:36 | 23 | A. I didn't discuss the details with him. |
| 18:26:39 | 24 | Q. Well, you didn't tell him anything, did you? |
| 18:26:41 | 25 | A. I don't recall. |

**EXHIBIT K**
**700**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 292

| 18:26:41 | 1 | Q.   You never spoke to him, you said. |
| 18:26:44 | 2 | A.   No, I didn't. |
| 18:26:45 | 3 | Q.   You never wrote to him about any of this; |
| 18:26:47 | 4 | right? |
| 18:26:48 | 5 | A.   I said I didn't remember whether I wrote to |
| 18:26:50 | 6 | him about this. |
| 18:26:53 | 7 | Q.   You remember, and you did not advise Michael |
| 18:26:57 | 8 | Siegel that you were negotiating against him through |
| 18:27:00 | 9 | Ari Emanuel; correct? |
| 18:27:02 | 10 | MR. TOBEROFF:  Argumentative. |
| 18:27:03 | 11 | THE WITNESS:  I don't think you can read my |
| 18:27:05 | 12 | mind, with all due respect. |
|  | 13 | BY MR. PETROCELLI: |
| 18:27:07 | 14 | Q.   Well, are you saying you did make this full |
| 18:27:09 | 15 | disclosure to him about what your demands were of |
| 18:27:14 | 16 | Mr. Ari Emanuel, that you wanted to control the |
| 18:27:17 | 17 | disposition of the Michael Siegel interests, that it |
| 18:27:19 | 18 | could only be sold in connection with your interest? |
| 18:27:22 | 19 | Are you telling me that you told that to your half |
| 18:27:25 | 20 | brother in writing? |
| 18:27:28 | 21 | A.   I don't -- I don't remember what we discussed |
| 18:27:31 | 22 | in writing. |
| 18:27:32 | 23 | Q.   Did you have a single communication with him |
| 18:27:34 | 24 | in writing on this subject? |
| 18:27:36 | 25 | A.   I do not recall. |

LAURA SIEGEL LARSON - 7/22/2011

Page 293

| | | |
|---|---|---|
| 18:27:43 | 1 | Q.    In paragraph (c) here of this draft it says |
| 18:27:47 | 2 | that Mr. Emanuel is going to indemnify you in case |
| 18:27:51 | 3 | there is any litigation arising out of your -- arising |
| 18:27:54 | 4 | out of the purchase of the Michael Siegel interests. |
| 18:27:56 | 5 | Why do you want an indemnification from Mr. Emanuel? |
| 18:28:00 | 6 | What kind of litigation were you concerned about? |
| 18:28:02 | 7 | A.    We had no idea what might occur in the |
| 18:28:16 | 8 | future. |
| 18:28:16 | 9 | Q.    How were you communicating your demands and |
| 18:28:20 | 10 | your positions such that they were being embodied in |
| 18:28:25 | 11 | these drafts?  Were you doing it orally, or were you |
| 18:28:29 | 12 | like typing things out and sending it to Mr. Toberoff |
| 18:28:33 | 13 | or Mr. Emanuel? |
| 18:28:34 | 14 | A.    Oh, you're saying the negotiation over -- |
| 18:28:36 | 15 | Q.    Yes. |
| 18:28:37 | 16 | A.    -- over this document? |
| 18:28:38 | 17 | Q.    Yes. |
| 18:28:41 | 18 | A.    I think we did it in conversation. |
| 18:28:47 | 19 | Q.    Okay.  Take a look at the next document. |
| 18:28:51 | 20 | This is Exhibit 46. |
| | 21 | (Whereupon, Plaintiff's Exhibit 46 |
| 18:28:59 | 22 | was placed before the witness.) |
| | 23 | BY MR. PETROCELLI: |
| 18:28:59 | 24 | Q.    Now, it says that it's dated January 21, |
| 18:29:03 | 25 | 2002.  I'm assuming that's a typo.  That must be 2003. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 294

| | | |
|---|---|---|
| 18:29:07 | 1 | A.    Yeah, because it's -- |
| 18:29:09 | 2 | Q.    The sequence of time here.  Does that make |
| 18:29:11 | 3 | sense to you? |
| 18:29:11 | 4 | A.    It's signed on 2003. |
| 18:29:13 | 5 | Q.    Well, Exhibit 46 is not signed.  You're |
| 18:29:15 | 6 | looking at the wrong exhibit. |
| 18:29:18 | 7 | A.    46. |
| 18:29:20 | 8 | MR. TOBEROFF:  Signed. |
| 18:29:20 | 9 | THE WITNESS:  Is signed. |
| 18:29:23 | 10 | MR. PETROCELLI:  Time out.  Time out.  Time |
| 18:29:25 | 11 | out.  Time out. |
| 18:29:55 | 12 | Q.    You have Exhibit 46 in front of you? |
| 18:29:57 | 13 | A.    Yes, I do. |
| 18:29:57 | 14 | Q.    And that is a signed version? |
| 18:29:59 | 15 | A.    Yes. |
| 18:30:08 | 16 | Q.    Okay.  And you will see in paragraph 2 -- in |
| 18:30:21 | 17 | paragraph 1 we're dealing with Mr. Siegel's interests, |
| 18:30:26 | 18 | Michael Siegel's interest in Superman, Superboy, and |
| 18:30:29 | 19 | The Spectre.  Do you see that? |
| 18:30:30 | 20 | A.    Yes, I do. |
| 18:30:31 | 21 | Q.    What's The Spectre? |
| 18:30:32 | 22 | A.    That's another character that my father |
| 18:30:39 | 23 | co-created. |
| 18:30:39 | 24 | Q.    And you wanted to have Mr. Emanuel acquire |
| 18:30:42 | 25 | Michael Siegel's interest in that character as well? |

## LAURA SIEGEL LARSON - 7/22/2011

Page 295

| 18:30:45 | 1 | A.    Yes. |
| 18:30:45 | 2 | Q.    So at the end of the day, you wanted to |
| 18:30:50 | 3 | obtain everything Michael Siegel might own with |
| 18:30:53 | 4 | respect to your father's creations; correct? |
| 18:30:56 | 5 | MR. TOBEROFF:  Misstates the document and the |
| 18:30:58 | 6 | record.  Assumes facts.  Lacks foundation. |
| 18:31:02 | 7 | MR. PETROCELLI:  Repeat the question because |
| 18:31:04 | 8 | I made a mistake in it. |
| 18:31:05 | 9 | Q.    You wanted Mr. Emanuel and negotiated and |
| 18:31:09 | 10 | contracted with Mr. Emanuel that he would acquire all |
| 18:31:15 | 11 | copyright termination interests that Michael Siegel |
| 18:31:17 | 12 | might hold with respect to your father's creations; |
| 18:31:20 | 13 | correct? |
| 18:31:22 | 14 | A.    These Superman, Superboy, and The Spectre |
| 18:31:25 | 15 | were the only properties that had at this point been |
| 18:31:30 | 16 | terminated.  There is always the possibility that |
| 18:31:32 | 17 | there are additional characters created by my father |
| 18:31:36 | 18 | that would be terminated in the future. |
| 18:31:39 | 19 | Q.    Were you -- |
| 18:31:40 | 20 | A.    This agreement didn't apply to anything |
| 18:31:43 | 21 | except for the specific characters. |
| 18:31:43 | 22 | Q.    What were the other characters that you were |
| 18:31:46 | 23 | leaving available for Michael Siegel to exercise |
| 18:31:48 | 24 | copyright termination interests over? |
| 18:31:50 | 25 | A.    Anything that came -- because of the calendar |

**EXHIBIT K**
**704**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 296

| | | |
|---|---|---|
| 18:31:53 | 1 | of the way copyright terminations go, there are -- you |
| 18:31:57 | 2 | know, there are different dates of publication, and, |
| 18:32:01 | 3 | you know, the window for termination for each |
| 18:32:04 | 4 | character is different. |
| 18:32:05 | 5 | Q.  Well, were you aware of any other windows of |
| 18:32:08 | 6 | termination for any other characters that were coming |
| 18:32:11 | 7 | up? |
| 18:32:11 | 8 | A.  There were some, but they were way down the |
| 18:32:14 | 9 | road. |
| 18:32:14 | 10 | Q.  What were they? |
| 18:32:15 | 11 | A.  Oh, you would ask me that.  At this moment I |
| 18:32:30 | 12 | can't recall. |
| 18:32:30 | 13 | Q.  Well, as of January 21, 2003, you were |
| 18:32:37 | 14 | authorizing Ari Emanuel to purchase all existing |
| 18:32:42 | 15 | termination interests of Michael Siegel in your |
| 18:32:46 | 16 | father's creations; is that correct? |
| 18:32:48 | 17 | A.  That were -- that were in effect or had been |
| 18:32:51 | 18 | terminated at that point. |
| 18:32:56 | 19 | Q.  And this is the document you did sign; right? |
| 18:33:02 | 20 | A.  Yes. |
| 18:33:03 | 21 | Q.  Which sets forth the condition that the |
| 18:33:10 | 22 | Michael Siegel interests so acquired by Mr. Emanuel |
| 18:33:12 | 23 | could only be sold to a third party in conjunction |
| 18:33:17 | 24 | with the sale of the Siegel interests, your interests; |
| 18:33:20 | 25 | correct? |

LAURA SIEGEL LARSON - 7/22/2011

Page 297

| | | |
|---|---|---|
| 18:33:20 | 1 | A.   Correct. |
| 18:33:21 | 2 | Q.   And that you and your mother would retain |
| 18:33:24 | 3 | full and complete decision making authority with |
| 18:33:26 | 4 | respect to such a disposition; correct? |
| 18:33:29 | 5 | A.   Where is that, please?  I didn't have a |
| 18:33:31 | 6 | chance to read the entire document. |
| 18:33:33 | 7 | Q.   3(b). |
| 18:33:39 | 8 | A.   Correct. |
| 18:33:40 | 9 | Q.   3(c) is the indemnity that you're getting |
| 18:33:43 | 10 | from Mr. Emanuel in case there's any litigation |
| 18:33:46 | 11 | arising out of the purchase of the Michael Siegel |
| 18:33:49 | 12 | interest; correct? |
| 18:33:49 | 13 | A.   Correct. |
| 18:33:49 | 14 | Q.   And you understood that might apply if |
| 18:33:52 | 15 | Michael Siegel himself filed suit against you; |
| 18:33:54 | 16 | correct? |
| 18:33:54 | 17 | A.   I believe so. |
| 18:34:03 | 18 | Q.   In paragraph 3(d) you ask Mr. Emanuel to |
| 18:34:08 | 19 | reimburse you for the Michael Siegel 25 percent share |
| 18:34:13 | 20 | of the expenses that you had been advancing; correct? |
| 18:34:19 | 21 | A.   That we advanced on behalf of the entire |
| 18:34:37 | 22 | interest. |
| 18:34:37 | 23 | Q.   In the first paragraph of this document, |
| 18:34:42 | 24 | Exhibit 46, again it makes reference to various risks |
| 18:34:48 | 25 | and potential problems regarding Michael Siegel and |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 298

| | | |
|---|---|---|
| 18:34:52 | 1 | the mitigation of possible conflicts of interest with |
| 18:34:56 | 2 | respect to the following proposed remedial actions. |
| 18:35:00 | 3 | What were the risks, the potential problems, and the |
| 18:35:05 | 4 | possible conflicts? |
| 18:35:07 | 5 | A.   I really don't recall. |
| 18:35:08 | 6 | Q.   You can't remember a single thing about that? |
| 18:35:11 | 7 | A.   Not today. |
| 18:35:56 | 8 | Q.   Take a look at the next document in order, |
| 18:36:03 | 9 | Exhibit 30. |
| | 10 | (Whereupon, Plaintiff's Exhibit 30 |
| | 11 | was placed before the witness.) |
| | 12 | BY MR. PETROCELLI: |
| 18:36:12 | 13 | Q.   This is a letter from Michael Siegel to you |
| 18:36:15 | 14 | dated May 13; is that correct? |
| 18:36:19 | 15 | A.   Yes. |
| 18:36:22 | 16 | Q.   When is the last time you saw this document? |
| 18:36:25 | 17 | A.   It's been quite a while. |
| 18:36:34 | 18 | Q.   When you received documents -- well, |
| 18:36:37 | 19 | withdrawn. |
| 18:36:38 | 20 | A.   I'm sorry.  What was -- |
| 18:36:40 | 21 | Q.   Withdrawn.  Let me start all over again. |
| 18:36:42 | 22 | When did you first give a copy of this |
| 18:36:45 | 23 | document to Mr. Toberoff? |
| 18:36:50 | 24 | A.   Whenever there was a request for the |
| 18:36:53 | 25 | production of documents, whenever that was. |

## LAURA SIEGEL LARSON - 7/22/2011

Page 299

| | | |
|---|---|---|
| 18:36:56 | 1 | Q.    In what case? |
| 18:36:59 | 2 | A.    Good question.  There's just so many cases. |
| 18:37:04 | 3 | You know, they're all kind of running together for me, |
| 18:37:06 | 4 | so I don't remember. |
| 18:37:12 | 5 | Q.    When you provided documents from time to time |
| 18:37:15 | 6 | to Mr. Toberoff, did you maintain copies for yourself? |
| 18:37:20 | 7 | A.    No. |
| 18:37:21 | 8 | Q.    Never? |
| 18:37:21 | 9 | A.    I don't -- I don't believe so. |
| 18:37:23 | 10 | Q.    Even letters with your stepbrother? |
| 18:37:26 | 11 | A.    Well, I knew that he had them, and if I |
| 18:37:28 | 12 | needed them, I could always get a copy from him. |
| 18:37:42 | 13 | Q.    This letter starts out "Thank you for your |
| 18:37:44 | 14 | letter of November 2 of last year."  What letter was |
| 18:37:49 | 15 | that? |
| 18:37:49 | 16 | A.    A letter I sent him on November 2. |
| 18:37:51 | 17 | Q.    Do you have any idea what you wrote in that |
| 18:37:53 | 18 | letter? |
| 18:37:54 | 19 | A.    No, I don't. |
| 18:38:01 | 20 | Q.    Now, you see -- you recall receiving this |
| 18:38:05 | 21 | letter? |
| 18:38:05 | 22 | A.    Well, the part that I remember is when he |
| 18:38:07 | 23 | told me that his mother passed away. |
| 18:38:11 | 24 | Q.    That's in the second sentence. |
| 18:38:13 | 25 | A.    That's right. |

**Merrill   Corporation   -   Los Angeles**

800-826-0277                    www.merillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 300

| | | |
|---|---|---|
| 18:38:13 | 1 | Q.   And then the rest of this letter goes on to |
| 18:38:17 | 2 | discuss his concerns about Mr. Toberoff, and are you |
| 18:38:21 | 3 | suggesting that none of that was important to you? |
| 18:38:27 | 4 | A.   I didn't say it wasn't important to me.  I |
| 18:38:31 | 5 | just said that the thing that made me remember this |
| 18:38:34 | 6 | letter was the fact that he said that his mother |
| 18:38:34 | 7 | passed away. |
| 18:38:50 | 8 | Q.   Do you know what prompted his sending this |
| 18:38:52 | 9 | letter to you? |
| 18:38:54 | 10 | A.   I don't know. |
| 18:38:59 | 11 | Q.   Did you respond to it? |
| 18:39:02 | 12 | A.   I'm sure I did. |
| 18:39:05 | 13 | Q.   What did you say? |
| 18:39:08 | 14 | A.   I'm sorry, but I don't recall. |
| 18:39:14 | 15 | Q.   He said here in the -- directing your |
| 18:39:18 | 16 | attention to the second paragraph, okay -- |
| 18:39:21 | 17 | A.   Um-hum. |
| 18:39:22 | 18 | Q.   -- it starts out "I really wish to discuss |
| 18:39:26 | 19 | Marc Toberoff."  And it says in the third sentence: |
| 18:39:37 | 20 | "I told you when he first contacted |
| 18:39:41 | 21 | me, he wanted to buy my share of the |
| 18:39:47 | 22 | copyright.  Marc had a mysterious |
| 18:39:51 | 23 | billionaire who wanted to invest in |
| 18:39:52 | 24 | the Superman copyright, put |
| 18:39:54 | 25 | 15 million dollars up front plus |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 301

| | | |
|---|---|---|
| 18:39:57 | 1 | participation.  When you signed with |
| 18:40:01 | 2 | Marc the billionaire invested |
| 18:40:04 | 3 | elsewhere." |
| 18:40:08 | 4 | Do you know where he got that information? |
| 18:40:10 | 5 | A.    I have no idea. |
| 18:40:11 | 6 | Q.    You don't think he made it up, do you? |
| 18:40:14 | 7 | A.    You know, Michael was a very confused guy, on |
| 18:40:21 | 8 | a lot of medication, and when he would write things to |
| 18:40:25 | 9 | me, such as asking me did I know that Marc was the |
| 18:40:29 | 10 | attorney for the Shusters, well, of course I did, and, |
| 18:40:33 | 11 | you know -- |
| 18:40:35 | 12 | Q.    He's telling you that Marc Toberoff contacted |
| 18:40:38 | 13 | him and said he had a mysterious billionaire. |
| 18:40:43 | 14 | A.    Yeah.  Well, I don't know where that came |
| 18:40:45 | 15 | from. |
| 18:40:46 | 16 | Q.    Did you think your brother -- your |
| 18:40:48 | 17 | stepbrother was lying? |
| 18:40:49 | 18 | A.    I don't -- I don't know that he came up with |
| 18:40:57 | 19 | the wording himself.  You know, I mean it -- I had |
| 18:41:01 | 20 | never heard this referred to in any way other than in |
| 18:41:04 | 21 | this letter, "mysterious billionaire."  I don't know |
| 18:41:08 | 22 | what that means. |
| 18:41:12 | 23 | Q.    Put $15 million up front, plus participation, |
| 18:41:15 | 24 | that happened to be exactly the same number that |
| 18:41:19 | 25 | Mr. Emanuel had offered you; correct? |

LAURA SIEGEL LARSON - 7/22/2011

Page 302

| | | |
|---|---|---|
| 18:41:21 | 1 | A.   That was interesting, and that caught my eye. |
| 18:41:27 | 2 | Q.   Mr. Toberoff had told you that he knew |
| 18:41:32 | 3 | billionaire investors; correct? |
| 18:41:33 | 4 | A.   No, he never used that term. |
| 18:41:34 | 5 | Q.   Well, he used terms similar, like he knew |
| 18:41:39 | 6 | very wealthy investors and people in the entertainment |
| 18:41:41 | 7 | industry who had money and would buy properties; |
| 18:41:43 | 8 | correct? |
| 18:41:44 | 9 | A.   No.  The offer came from -- directly from Ari |
| 18:41:46 | 10 | Emanuel. |
| 18:41:47 | 11 | Q.   What offer? |
| 18:41:49 | 12 | A.   Well, Ari Emanuel was involved in that |
| 18:41:53 | 13 | proposal of the $15 million. |
| 18:41:56 | 14 | Q.   Was involved with Mr. Toberoff. |
| 18:41:58 | 15 | A.   No, was -- it was going to be Ari Emanuel |
| 18:42:02 | 16 | putting up the $15 million in that discussion, the |
| 18:42:07 | 17 | initial discussion that apparently happened with Kevin |
| 18:42:11 | 18 | Marks. |
| 18:42:11 | 19 | Q.   How do you know that it was so specific that |
| 18:42:13 | 20 | it was only going to be Ari Emanuel acquiring the |
| 18:42:17 | 21 | interest and not IPW or an entity with which |
| 18:42:23 | 22 | Mr. Toberoff had an interest? |
| 18:42:24 | 23 | A.   It wasn't mentioned to me. |
| 18:42:25 | 24 | Q.   It was not. |
| 18:42:26 | 25 | A.   No. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 303

| 18:42:26 | 1 | Q. Okay. |

18:42:26    1        Q.    Okay.

18:42:31    2        A.    Not that I recall.

18:42:33    3        Q.    Then you're basing that off of your

18:42:35    4    recollection of the letter, what you just told me?

18:42:38    5             MR. TOBEROFF:  What letter?  What letter?

18:42:40    6             THE WITNESS:  Yeah.

            7    BY MR. PETROCELLI:

18:42:40    8        Q.    The letter you got from Mr. Marks that

18:42:43    9    advised you about the approach by Mr. Emanuel and --

18:42:46   10        A.    I believe that --

18:42:47   11             MR. TOBEROFF:  Wait a second.  You can

18:42:49   12    answer -- let me slow this down for a second.

18:42:52   13             THE WITNESS:  Of course.

18:42:53   14             MR. TOBEROFF:  You can answer not in such a

18:42:55   15    way that discloses the substance of the letter from

18:42:58   16    Kevin Marks advising you that there had been a

18:43:02   17    $15 million offer.

18:43:03   18             THE WITNESS:  Um-hum.

           19    BY MR. PETROCELLI:

18:43:04   20        Q.    You just gave some testimony --

18:43:05   21             MR. TOBEROFF:  And make sure when you're

18:43:06   22    answering, you keep your parties straight.

18:43:09   23             THE WITNESS:  Yes.

           24    BY MR. PETROCELLI:

18:43:09   25        Q.    You just gave some testimony about the

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 304

| 18:43:11 | 1 | $15 million was to be from Ari Emanuel, and then I |
| 18:43:15 | 2 | pressed you about, well, maybe Mr. Toberoff would have |
| 18:43:18 | 3 | had a piece of it through IPW, and you said, well, |
| 18:43:22 | 4 | you're not sure, okay, words to that effect.  When you |
| 18:43:25 | 5 | gave that answer about the $15 million coming from |
| 18:43:28 | 6 | Ari, was that based on your recollection of the letter |
| 18:43:31 | 7 | from Kevin Marks? |
| 18:43:34 | 8 | A.   It -- I believe it was based not only on the |
| 18:43:36 | 9 | letter, but on a subsequent conversation with Kevin |
| 18:43:41 | 10 | Marks and also with Ari Emanuel. |
| 18:43:44 | 11 | Q.   Where they said that Mr. Emanuel was going to |
| 18:43:47 | 12 | fund the $15 million? |
| 18:43:48 | 13 | MR. TOBEROFF:  You can answer only with |
| 18:43:50 | 14 | respect to the conversation with Ari Emanuel. |
| 18:43:52 | 15 | THE WITNESS:  Yeah.  Well, you know, it may |
| 18:43:55 | 16 | not have solely been Ari, but, you know, he was |
| 18:43:59 | 17 | obviously the driving force in it. |
|  | 18 | BY MR. PETROCELLI: |
| 18:44:02 | 19 | Q.   Yes, and again, you had no issue whatsoever |
| 18:44:06 | 20 | if Ari was funding an investment through IPW in which |
| 18:44:15 | 21 | Mr. Toberoff -- IP Worldwide in which Mr. Toberoff had |
| 18:44:18 | 22 | an interest; correct? |
| 18:44:19 | 23 | A.   At that point I wasn't aware of IP Worldwide, |
| 18:44:24 | 24 | if you're talking -- if you're talking about when |
| 18:44:27 | 25 | Kevin Marks first mentioned it. |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 305

| | | |
|---|---|---|
| 18:44:28 | 1 | Q.    Later on when you had your meeting with |
| 18:44:31 | 2 | Mr. Emanuel and again he discussed the $15 million |
| 18:44:35 | 3 | offer and you said ultimately "No, I want you to be an |
| 18:44:38 | 4 | agent, not a business partner" -- |
| 18:44:41 | 5 | A.    Um-hum. |
| 18:44:41 | 6 | Q.    -- had you done a deal for $15 million or |
| 18:44:52 | 7 | whatever with Mr. Emanuel, you would have had no |
| 18:44:52 | 8 | objection to doing it with IP Worldwide and |
| 18:44:52 | 9 | Mr. Toberoff participating; correct? |
| 18:44:54 | 10 | MR. TOBEROFF:  Incomplete hypothetical. |
| 18:44:55 | 11 | THE WITNESS:  Well, we didn't proceed with |
| 18:44:57 | 12 | it, so we weren't -- you know, it wasn't that we were |
| 18:45:00 | 13 | in favor of it.  We were not in favor of it because we |
| 18:45:03 | 14 | didn't do it. |
| | 15 | BY MR. PETROCELLI: |
| 18:45:03 | 16 | Q.    I understand, but you didn't have some hard |
| 18:45:06 | 17 | and fast rule that in no circumstance could Marc |
| 18:45:10 | 18 | Toberoff participate in the acquisition of any |
| 18:45:12 | 19 | interest that you would sell. |
| 18:45:13 | 20 | MR. TOBEROFF:  Same objection. |
| | 21 | BY MR. PETROCELLI: |
| 18:45:14 | 22 | Q.    Correct? |
| 18:45:15 | 23 | THE WITNESS:  What was the objection? |
| 18:45:17 | 24 | MR. TOBEROFF:  It's okay. |
| 18:45:18 | 25 | MR. PETROCELLI:  He doesn't even remember. |

**EXHIBIT K**
**714**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 306

| 18:45:20 | 1 | MR. TOBEROFF:  I remember.  Incomplete |
| 18:45:23 | 2 | hypothetical. |
|  | 3 | BY MR. PETROCELLI: |
| 18:45:24 | 4 | Q.   In other words, you understand my question. |
| 18:45:27 | 5 | You had no hard and fast rule that if you were going |
| 18:45:29 | 6 | to sell your interest to IP Worldwide or Mr. Emanuel, |
| 18:45:33 | 7 | that Mr. Toberoff was not to participate economically; |
| 18:45:36 | 8 | correct? |
| 18:45:37 | 9 | A.   It was never discussed. |
| 18:45:39 | 10 | MR. TOBEROFF:  Same objection. |
|  | 11 | BY MR. PETROCELLI: |
| 18:45:40 | 12 | Q.   I understand it wasn't discussed, but you |
| 18:45:42 | 13 | didn't have the state of mind that you were going to |
| 18:45:43 | 14 | be adamantly opposed to it; correct? |
| 18:45:46 | 15 | MR. TOBEROFF:  Incomplete hypothetical. |
| 18:45:47 | 16 | THE WITNESS:  I didn't form an opinion. |
|  | 17 | BY MR. PETROCELLI: |
| 18:45:49 | 18 | Q.   Never; right?  One way or the other; correct? |
| 18:45:51 | 19 | A.   Not that I can recall. |
| 18:45:52 | 20 | Q.   One way or the other; correct? |
| 18:45:54 | 21 | A.   Correct. |
| 18:45:55 | 22 | Q.   Okay. |
| 18:45:55 | 23 | A.   I think, if I'm following that. |
| 18:46:18 | 24 | Q.   By the way, when you wrote your stepbrother |
| 18:46:21 | 25 | back, did you straighten him out on things that you |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 307

| | | |
|---|---|---|
| 18:46:24 | 1 | think he had wrong in his letter to you of May 13? |
| 18:46:27 | 2 | A.   I did my best to. |
| 18:46:29 | 3 | Q.   Can you explain to me as best as you can, for |
| 18:46:32 | 4 | example, what you said about the billionaire, the |
| 18:46:36 | 5 | mysterious billionaire? |
| 18:46:37 | 6 | A.   You know, I don't remember how I put it to |
| 18:46:39 | 7 | him, but I, you know, I tried to in as simple a manner |
| 18:46:46 | 8 | as possible explain what he had wrong in this letter. |
| 18:46:51 | 9 | Regarding specifically the billionaire, I really don't |
| 18:46:54 | 10 | recall what I said. |
| 18:46:55 | 11 | Q.   Did you type the letter yourself? |
| | 12 | A.   Yes, I did. |
| 18:46:59 | 13 | Q.   Did your mother help you prepare it? |
| 18:47:01 | 14 | A.   I think she had input. |
| 18:47:02 | 15 | Q.   Now, did you explain to him the situation |
| 18:47:05 | 16 | with the Shusters? |
| 18:47:09 | 17 | A.   Well, I cleared up some of his misconceptions |
| 18:47:13 | 18 | about the Shusters. |
| 18:47:14 | 19 | Q.   How did you clear them up?  In other words, |
| 18:47:16 | 20 | just generally what did you say? |
| 18:47:19 | 21 | A.   Once again, you're asking me to answer |
| 18:47:22 | 22 | something that I really can't recall.  I'm sorry. |
| 18:47:25 | 23 | Q.   When you said you cleared up the Shuster |
| 18:47:27 | 24 | issue for him, did you explain to him that you were |
| 18:47:29 | 25 | aware that Mr. Toberoff was working with the Shusters? |

EXHIBIT K
716

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 308

| 18:47:33 | 1 | A.  I'm sure I did. |
| 18:47:36 | 2 | Q.  Do you know when you wrote your responsive |
| 18:47:39 | 3 | letter back to this May 13 letter? |
| 18:47:41 | 4 | A.  I don't know exactly. |
| 18:47:43 | 5 | Q.  Did you have Mr. Toberoff assist in any way |
| 18:47:48 | 6 | in the response that you prepared? |
| 18:47:51 | 7 | A.  I believe I had him look at it. |
| 18:47:53 | 8 | Q.  And before you sent it to Mr. -- |
| 18:47:55 | 9 | A.  Yes. |
| 18:47:56 | 10 | Q.  And why did you have him look at it? |
| 18:47:58 | 11 | A.  Well, you know, it was dealing with issues |
| 18:48:04 | 12 | that had to do with legal matters, and I didn't want |
| 18:48:07 | 13 | to misstate something that basically would, you know, |
| 18:48:11 | 14 | come back and bite me in the butt later.  So I just |
| 18:48:15 | 15 | wanted -- wanted to make sure that I was as a civilian |
| 18:48:19 | 16 | expressing myself properly. |
| 18:48:21 | 17 | Q.  And in order for Mr. Toberoff to assist or |
| 18:48:27 | 18 | review the letter that you drafted, you would have |
| 18:48:30 | 19 | sent him Mr. Michael Siegel's May 13 letter so he |
| 18:48:35 | 20 | could have both letters. |
| 18:48:36 | 21 | A.  This letter? |
| 18:48:37 | 22 | Q.  Correct. |
| 18:48:37 | 23 | A.  Probably. |
| 18:48:39 | 24 | Q.  Okay.  And take a look at the Toberoff |
| 18:48:42 | 25 | timeline for a second, please, which is Exhibit 58. |

LAURA SIEGEL LARSON - 7/22/2011

Page 309

| | | |
|---|---|---|
| 18:48:45 | 1 | A.   I already have that, don't I? |
| 18:48:49 | 2 | Q.   Yes. |
| 18:48:49 | 3 | MR. PETROCELLI:  Can you fish that out for |
| 18:48:51 | 4 | her, Jason?  Thank you. |
| 18:48:53 | 5 | THE WITNESS:  Thank you. |
| | 6 | BY MR. PETROCELLI: |
| | 7 | Q.   I'd like to direct your attention -- |
| 18:48:54 | 8 | THE WITNESS:  Do I still need this one? |
| 18:48:56 | 9 | MR. PETROCELLI:  Yeah, leave it there. |
| 18:49:10 | 10 | THE WITNESS:  Okay.  Thank you. |
| | 11 | MR. TOBEROFF:  I can help explain it. |
| | 12 | MR. KLINE:  Are you reading our notes, Marc? |
| | 13 | THE WITNESS:  Thank you. |
| 18:49:17 | 14 | MR. TOBEROFF:  No, because I haven't gotten a |
| 18:49:17 | 15 | package -- duplicate packages with your notes. |
| 18:49:22 | 16 | MR. KLINE:  Oh, no.  Did you read this note? |
| | 17 | MR. PETROCELLI:  Okay.  So you have them. |
| 18:49:24 | 18 | MR. KLINE:  Please don't -- |
| 18:49:25 | 19 | MR. TOBEROFF:  Of course not.  I'm making a |
| 18:49:28 | 20 | joke.  Lighten up. |
| | 21 | BY MR. PETROCELLI: |
| 18:49:29 | 22 | Q.   So you have the Superman -- you have the Marc |
| 18:49:32 | 23 | Toberoff timeline, Exhibit 58, in front of you? |
| 18:49:33 | 24 | A.   Yes. |
| 18:49:33 | 25 | Q.   And you also have Exhibit 30, the Michael |

LAURA SIEGEL LARSON - 7/22/2011

Page 310

| | | |
|---|---|---|
| 18:49:37 | 1 | Siegel letter to you dated May 13, 2003? |
| 18:49:39 | 2 | A.    Yes, I do. |
| 18:49:40 | 3 | Q.    Now, go to the end of the fourth page as |
| 18:49:46 | 4 | Q 0004 and you'll see a reference to a July 5, 2003 -- |
| 18:50:02 | 5 | first of all, go to the prior page of this Exhibit 58. |
| 18:50:06 | 6 | A.    Okay. |
| 18:50:06 | 7 | Q.    And you'll see that the author of this |
| 18:50:09 | 8 | document is identifying Michael Siegel's May 13, 2003, |
| 18:50:15 | 9 | letter, the one that you have in front of you as |
| 18:50:18 | 10 | Exhibit 30.  Do you see that? |
| 18:50:19 | 11 | A.    I do. |
| 18:50:19 | 12 | Q.    And then he is -- he or she is purporting to |
| 18:50:23 | 13 | state some of the contents of that letter.  Do you see |
| 18:50:26 | 14 | that? |
| 18:50:26 | 15 | A.    I see a paragraph about it. |
| 18:50:29 | 16 | Q.    Okay.  And now dropping down to the end of |
| 18:50:32 | 17 | the next page with the Bates label Q 0004, the |
| 18:50:43 | 18 | reference to the July 5, 2003, date, do you see that? |
| 18:50:43 | 19 | A.    Yes, I do. |
| 18:50:43 | 20 | Q.    It says "Laura Siegel reveals her ignorance |
| 18:50:52 | 21 | of Toberoff's dubious actions in her return letter |
| 18:50:52 | 22 | back to Michael."  Putting aside the characterization |
| 18:50:54 | 23 | of your ignorance, does July 5, 2003, sound right to |
| 18:50:58 | 24 | you as around the time that you responded to the May |
| 18:51:01 | 25 | 13, 2003, letter? |

LAURA SIEGEL LARSON - 7/22/2011

Page 311

| | | |
|---|---|---|
| 18:51:04 | 1 | A.   It could have been. |
| 18:51:11 | 2 | Q.   Okay.  Is it fair to say that your letter |
| 18:51:16 | 3 | back to Mr. Michael Siegel did not agree with any of |
| 18:51:24 | 4 | his criticisms of Mr. Toberoff's actions and |
| 18:51:29 | 5 | Mr. Toberoff generally? |
| 18:51:32 | 6 | A.   Well, whoever stole this document, you know, |
| 18:51:36 | 7 | is doing his version of what he's reading into |
| 18:51:40 | 8 | whatever the letter said. |
| 18:51:42 | 9 | Q.   You're not following my question. |
| 18:51:44 | 10 | A.   Well, I haven't read the letter in a long |
| 18:51:51 | 11 | time. |
| 18:51:51 | 12 | Q.   My question to you is when you wrote back to |
| 18:51:54 | 13 | Michael -- |
| 18:51:54 | 14 | A.   Yes. |
| 18:51:56 | 15 | Q.   -- in response to his May 13, 2003, letter, |
| 18:51:59 | 16 | is it fair to say that you expressed no agreement with |
| 18:52:04 | 17 | any of his criticisms of Mr. Toberoff? |
| 18:52:08 | 18 | A.   I would say that's probably safe to say. |
| 18:52:19 | 19 | Q.   Did you tell Michael Siegel in your response |
| 18:52:26 | 20 | letter back that Mr. Toberoff does not have a |
| 18:52:31 | 21 | production company? |
| 18:52:32 | 22 | A.   Yes, I believe I did. |
| 18:52:35 | 23 | Q.   And you will see on the next page of this |
| 18:52:39 | 24 | document, Exhibit 58, in the description of the entry |
| 18:52:45 | 25 | July 5, 2003 -- |

LAURA SIEGEL LARSON - 7/22/2011

Page 312

| | | |
|---|---|---|
| 18:52:47 | 1 | A.   I'm sorry.  You're saying continuation on the |
| 18:52:50 | 2 | top of the page? |
| 18:52:51 | 3 | Q.   Yes.  It says "Also, in the letter back to |
| 18:52:53 | 4 | Michael Siegel, that MT helped Laura Siegel draft -- |
| 18:52:57 | 5 | in response to Michael's accusations of Toberoff, |
| 18:53:00 | 6 | Laura clearly states that MT does not have a |
| 18:53:06 | 7 | production company."  And that was your belief at the |
| 18:53:08 | 8 | time; correct? |
| 18:53:10 | 9 | A.   Correct. |
| 18:53:11 | 10 | Q.   And it goes on to say that, in parentheses: |
| 18:53:17 | 11 | "(This is false -- Marc Toberoff's |
| 18:53:19 | 12 | IPW has been in existence, partly |
| 18:53:21 | 13 | funded by Ari Emanuel, since at |
| 18:53:21 | 14 | least 2002).  In the draft of the |
| 18:53:26 | 15 | letter, MT crossed out the statement |
| 18:53:27 | 16 | that he does not have a production |
| 18:53:29 | 17 | company, and writes," quote, "'MT |
| 18:53:33 | 18 | has not plans to produce a SUPERMAN |
| 18:53:36 | 19 | movie, nor is this feasible given |
| 18:53:38 | 20 | the division of ownership of the |
| 18:53:41 | 21 | rights,'" end of quotes. |
| 18:53:43 | 22 | Now, does that -- is that consistent with |
| 18:53:47 | 23 | your recollection that your statement that |
| 18:53:51 | 24 | Mr. Toberoff did not have a production company was |
| 18:53:54 | 25 | crossed out by Mr. Toberoff in the final draft and |

**Merrill   Corporation   -   Los Angeles**

**EXHIBIT K**
**721**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 313

| | | |
|---|---|---|
| 18:53:57 | 1 | replaced with the quoted language that I just read? |
| 18:53:59 | 2 | A.   It could have been. |
| 18:54:03 | 3 | Q.   And when Mr. Toberoff made his changes to the |
| 18:54:07 | 4 | letter and returned it to you, did you review it and |
| 18:54:11 | 5 | sign it before you sent it out as your response letter |
| 18:54:15 | 6 | back to Michael? |
| 18:54:16 | 7 | A.   Well, he made suggestions of changes in the |
| 18:54:22 | 8 | wording of certain areas, and, you know, I retyped the |
| 18:54:28 | 9 | letter, accepted some of the things that he said and |
| 18:54:30 | 10 | didn't use some other suggestions that he made. |
| 18:54:33 | 11 | Q.   How did he convey his suggestions to you? |
| 18:54:36 | 12 | A.   He wrote it on -- he wrote it on this |
| 19:54:39 | 13 | letter -- no, not this letter.  He wrote it on that |
| 18:54:43 | 14 | letter that's being discussed here and faxed it back |
| 18:54:46 | 15 | to me. |
| 18:54:47 | 16 | Q.   Okay.  So you did engage in faxed |
| 18:54:50 | 17 | communication with Mr. Toberoff from time to time. |
| 18:54:51 | 18 | A.   Yes. |
| 18:54:53 | 19 | Q.   Okay.  Including with respect to this very |
| 18:54:55 | 20 | correspondence that we're discussing. |
| 18:54:56 | 21 | A.   I believe so. |
| 18:54:58 | 22 | Q.   Okay. |
| 18:54:59 | 23 | Now, did you show him the final draft before |
| 18:55:03 | 24 | you sent it out? |
| 18:55:05 | 25 | A.   I believe I did. |

## LAURA SIEGEL LARSON - 7/22/2011

Page 314

| | | |
|---|---|---|
| 18:55:07 | 1 | Q. And which of the changes did you reject? |
| 18:55:16 | 2 | A. I don't remember. I just remember the |
| 18:55:18 | 3 | process, but I don't remember the contents. |
| 18:55:37 | 4 | Q. Now, by the time you received this letter, |
| 18:55:43 | 5 | Mr. Emanuel was -- |
| 18:55:44 | 6 | A. I'm sorry. You're talking about the May 13 |
| 18:55:47 | 7 | letter? |
| 18:55:47 | 8 | Q. Thank you. |
| 18:55:48 | 9 | By the time you received the May 13, 2003, |
| 18:55:50 | 10 | letter, Exhibit 30, and then responded with your |
| 18:55:53 | 11 | letter that you've been describing, during that period |
| 18:55:58 | 12 | of time, that's when you knew that Mr. Emanuel was |
| 18:56:07 | 13 | secretly attempting to purchase Michael Siegel's |
| 18:56:09 | 14 | interest; correct? |
| 18:56:11 | 15 | MR. TOBEROFF: Misstates the record. |
| 18:56:13 | 16 | THE WITNESS: I -- you know, I wouldn't use |
| 18:56:16 | 17 | the word "secretly," but I believe an offer -- an |
| 18:56:20 | 18 | offer may have been made during that period. |
| | 19 | BY MR. PETROCELLI: |
| 18:56:21 | 20 | Q. You said you wouldn't use the word |
| 18:56:24 | 21 | "secretly," but you knew that Mr. Michael Siegel did |
| 18:56:26 | 22 | not know that it was Mr. Emanuel who was the |
| 18:56:29 | 23 | prospective purchaser. We've discussed that already; |
| 18:56:31 | 24 | correct? |
| 18:56:31 | 25 | A. Yes, we did. |

**EXHIBIT K**
**723**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 315

| | | |
|---|---|---|
| 18:56:32 | 1 | Q.    And you did not tell Michael Siegel in your |
| 18:56:39 | 2 | response letter back that Mr. Emanuel was indeed the |
| 18:56:46 | 3 | very person with your full knowledge and blessing who |
| 18:56:48 | 4 | was attempting to acquire his interest. |
| 18:56:51 | 5 | MR. TOBEROFF:  Asked and answered. |
| 18:56:52 | 6 | THE WITNESS:  No, I did not mention that. |
| | 7 | BY MR. PETROCELLI: |
| 18:56:56 | 8 | Q.    And your letter back to Mr. Michael Siegel |
| 18:56:59 | 9 | does in fact mention Mr. Emanuel; correct? |
| 18:57:01 | 10 | A.    I'm sorry.  Does or does not? |
| 18:57:03 | 11 | Q.    Does. |
| 18:57:05 | 12 | A.    Does mention Mr. Emanuel? |
| 18:57:07 | 13 | Q.    Yes. |
| 18:57:07 | 14 | A.    I don't -- I don't recall. |
| 18:57:16 | 15 | Q.    Have you given any consideration to the idea |
| 18:57:27 | 16 | that is being stated in these documents that |
| 18:57:30 | 17 | Mr. Toberoff is going to end up with the lion's share |
| 18:57:32 | 18 | of the money with respect to any disposition of the |
| 18:57:39 | 19 | termination interests of the -- stemming from Superman |
| 18:57:42 | 20 | both from the Siegel side and the Shuster side? |
| 18:57:44 | 21 | A.    Well, I disagree with your characterization |
| 18:57:49 | 22 | of lion's share. |
| 18:57:52 | 23 | Q.    Well, let's -- |
| 18:57:52 | 24 | A.    I mean he has a contingency agreement with me |
| 18:57:56 | 25 | and with my mom, and he had a contingency agreement |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 316

| | | |
|---|---|---|
| 18:57:59 | 1 | with the Shusters. |
| 18:58:00 | 2 | Q.   So when you do the math, though, as was |
| 18:58:03 | 3 | pointed out in some of these documents, he ends up |
| 18:58:05 | 4 | with the biggest percentage, bigger than what you |
| 18:58:09 | 5 | would receive and bigger than what the Shuster side |
| 18:58:13 | 6 | would receive; right? |
| 18:58:14 | 7 | A.   He was being compensated for at this point |
| 18:58:16 | 8 | nearly ten years of work. |
| 18:58:18 | 9 | Q.   But when you made these deals, there wasn't |
| 18:58:20 | 10 | ten years of work; correct? |
| 18:58:22 | 11 | A.   No, but we had no idea how long or how much |
| 18:58:24 | 12 | or how expensive it was all going to be. |
| 18:58:26 | 13 | Q.   So you understood that at the end of the day |
| 18:58:30 | 14 | Mr. Toberoff might end up with 45 percent or so of the |
| 18:58:36 | 15 | total proceeds with you and your mother's side, |
| 18:58:42 | 16 | Michael Siegel's side 27 and a half percent and the |
| 18:58:46 | 17 | Shuster side 25 percent; correct? |
| 18:58:48 | 18 | A.   You know, I'm sorry, but you're throwing |
| 18:58:51 | 19 | around percentages, and that's not correct. |
| 18:58:52 | 20 | Q.   But you have fully appreciated that at the |
| 18:58:55 | 21 | end of the day Mr. Toberoff would have the biggest |
| 18:59:01 | 22 | stake in the proceeds. |
| 18:59:03 | 23 | A.   My only concerns -- excuse me.  Were you |
| 18:59:06 | 24 | finished?  I didn't want to interrupt you. |
| 18:59:07 | 25 | Q.   I want to make sure you understand what I'm |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 317

| | | |
|---|---|---|
| 18:59:10 | 1 | asking you, that you have understood and understand to |
| 18:59:15 | 2 | this day that given his agreements with the Shuster |
| 18:59:19 | 3 | family, given his agreements with you and your mother, |
| 18:59:23 | 4 | given the fact that you succeeded to your half |
| 18:59:28 | 5 | brother's rights, that Mr. Toberoff's aggregate share |
| 18:59:37 | 6 | in any proceeds from the disposition of all these |
| 18:59:40 | 7 | Shuster and Siegel interests is greater than your |
| 18:59:44 | 8 | interest and greater than the Shuster interest; |
| 18:59:46 | 9 | correct? |
| 18:59:46 | 10 | A.   I was only concerned with my interest.  I did |
| 18:59:50 | 11 | not even know what his percentage was with the |
| 18:59:53 | 12 | Shusters. |
| 18:59:53 | 13 | Q.   But you certainly became aware of it when you |
| 18:59:56 | 14 | read it in the timeline document; correct? |
| 18:59:59 | 15 | A.   Well, I didn't get this timeline until |
| 19:00:03 | 16 | much -- a long time afterward, and, you know -- |
| 19:00:06 | 17 | Q.   Well, when you saw -- take a look at the |
| 19:00:09 | 18 | timeline.  That's Exhibit 58 -- bear with me.  I'm |
| 19:00:37 | 19 | looking for -- |
| 19:00:52 | 20 | Here it is. |
| 19:01:02 | 21 | When you were meeting with David Michaels, by |
| 19:01:04 | 22 | the way, did he run through these different numbers in |
| 19:01:08 | 23 | the way that I just did in describing to you that |
| 19:01:10 | 24 | Mr. Toberoff would end up with the biggest share? |
| 19:01:14 | 25 | A.   He ran some numbers by us, but, you know, he |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 318

| 19:01:17 | 1 | offered no proof. |
|---|---|---|

19:01:20    2        Q.    Well, you knew what your agreements were, and

19:01:22    3    he was aware of them as well.

19:01:24    4        A.    He was actually mischaracterizing to us what

19:01:26    5    our agreement was.

19:01:27    6        Q.    You mean the percentages?

19:01:28    7        A.    Correct.

19:01:29    8        Q.    In what way did he mischaracterize it?

19:01:32    9        A.    He was inflating it.

19:01:33    10        Q.    It was 40 percent; right?

19:01:35    11        A.    It was 40 percent, but he was claiming

19:01:37    12    something much larger than that.

19:01:39    13        Q.    He was claiming an additional 5 or 10 percent

19:01:42    14    that you thought no longer applied?

19:01:44    15        A.    Well, that I knew no longer applied.

19:01:55    16        Q.    Okay.

19:02:00    17            Can you turn to page 6 of Exhibit 58.

19:02:15    18        A.    Yeah.

19:02:21    19        Q.    First of all, on page 1 it states:

19:02:25    20            "As it stands right now, the

19:02:27    21            single person who would stand to

19:02:28    22            gain the MOST in a settlement with

19:02:30    23            Time Warner regarding the ongoing

19:02:33    24            SUPERMAN legal dispute would not be

19:02:34    25            the heirs themselves, but Marc

**EXHIBIT K**
**727**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 319

| | | |
|---|---|---|
| 19:02:36 | 1 | Toberoff." |
| 19:02:37 | 2 | Now, when you read that, did you agree with |
| 19:02:39 | 3 | that statement? |
| 19:02:40 | 4 | A.   No. |
| 19:02:41 | 5 | Q.   But it is factually true that in terms of the |
| 19:02:43 | 6 | division of the proceeds, he would receive the largest |
| 19:02:47 | 7 | share; correct? |
| 19:02:48 | 8 | A.   What I objected to was the -- was the way |
| 19:02:51 | 9 | this was -- the way that this was presented. |
| 19:02:54 | 10 | Q.   Putting this aside, though, in terms of the |
| 19:02:56 | 11 | mathematical division of the shares, the Toberoff |
| 19:03:01 | 12 | share is the biggest share.  It's 45 or 40 -- in |
| 19:03:05 | 13 | excess of 45 percent; correct? |
| 19:03:08 | 14 | A.   Well, it's not bigger than my share now. |
| 19:03:10 | 15 | Q.   Why is that? |
| 19:03:12 | 16 | A.   Well, I inherited my mother's, I inherited |
| 19:03:16 | 17 | Michael's, and I have my own. |
| 19:03:17 | 18 | Q.   But if you take all of that, Mr. Toberoff |
| 19:03:21 | 19 | gets 40 percent of that; right? |
| 19:03:22 | 20 | A.   He gets 40 percent.  I get 60 percent. |
| 19:03:25 | 21 | Q.   And then he gets 40 percent of your piece, |
| 19:03:29 | 22 | which is half, with the Shusters owning the other |
| 19:03:33 | 23 | half; correct? |
| 19:03:33 | 24 | A.   You're not saying that he gets half of mine. |
| 19:03:36 | 25 | You're saying that my share of the overall Superman |

**Merrill   Corporation  -  Los Angeles**

800-826-0277                          www.merrillcorp.com/law

**EXHIBIT K**
**728**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 320

| | | |
|---|---|---|
| 19:03:39 | 1 | copyright is 50 percent? |
| 19:03:41 | 2 | Q. Correct. And he gets 40 percent of your 50 |
| 19:03:47 | 3 | percent; correct? |
| 19:03:47 | 4 | A. Correct. |
| 19:03:47 | 5 | Q. And he gets 50 percent of the Shuster 50 |
| 19:03:49 | 6 | percent; right? |
| 19:03:49 | 7 | A. If he does. |
| 19:03:53 | 8 | Q. Well, you saw that referenced in the timeline |
| 19:03:54 | 9 | document; right? |
| 19:03:55 | 10 | A. Yeah, but there are errors in this timeline, |
| 19:03:58 | 11 | so I don't know if that's correct. |
| 19:03:59 | 12 | Q. You don't know that it's incorrect, do you? |
| 19:04:01 | 13 | A. No. |
| 19:04:01 | 14 | Q. The bottom line is you are aware that there's |
| 19:04:04 | 15 | a possibility that he could end up as the biggest |
| 19:04:07 | 16 | financial recipient of proceeds among you and the |
| 19:04:11 | 17 | Shuster family and him; correct? |
| 19:04:13 | 18 | A. Look -- |
| 19:04:14 | 19 | Q. Are you aware of that? |
| 19:04:16 | 20 | A. It may be possible. I'm not doing the math |
| 19:04:28 | 21 | today. |
| 19:04:29 | 22 | Q. Have you ever calculated how much you would |
| 19:04:33 | 23 | have received today had you accepted the proposal that |
| 19:04:45 | 24 | DC had made back in 2001, 2002? |
| 19:04:49 | 25 | A. At the time it was offered -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 321

| 19:04:50 | 1 | MR. TOBEROFF:  Again, objection.  Compound. |
| 19:04:53 | 2 | Which are you referring to, the February, 2002, draft |
| 19:04:56 | 3 | or the Kevin Marks letter in October of 2001? |
| 19:05:04 | 4 | MR. PETROCELLI:  Either one. |
| 19:05:05 | 5 | Q.  Have you ever done the -- |
| 19:05:06 | 6 | MR. TOBEROFF:  Compound. |
|  | 7 | BY MR. PETROCELLI: |
| 19:05:07 | 8 | Q.  Have you ever done the calculation of what |
| 19:05:10 | 9 | dollars would have been received by you and your |
| 19:05:13 | 10 | mother? |
| 19:05:14 | 11 | A.  Well, you're talking about two different |
| 19:05:17 | 12 | calculations. |
| 19:05:17 | 13 | Q.  Have you done the calculations for both of |
| 19:05:19 | 14 | them? |
| 19:05:19 | 15 | A.  You say ever.  At one time when it was |
| 19:05:22 | 16 | initially offered, you know, we did a projection on |
| 19:05:27 | 17 | it.  I haven't done it recently. |
| 19:05:31 | 18 | Q.  Do you have any -- |
| 19:05:32 | 19 | A.  We just knew a lot of money had already been |
| 19:05:35 | 20 | owed to us, which was the basis of the accounting |
| 19:05:41 | 21 | claim. |
| 19:05:41 | 22 | Q.  How is it -- |
| 19:05:41 | 23 | A.  That lawsuit. |
| 19:05:42 | 24 | Q.  How is it that you think that you can |
| 19:05:45 | 25 | financially benefit from now having, like you said, a |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 322

| | | |
|---|---|---|
| 19:05:50 | 1 | hundred percent of 50 percent of the copyright subject |
| 19:05:55 | 2 | to Mr. Toberoff's share?  How is it that you can |
| 19:05:58 | 3 | financially benefit from the termination interests |
| 19:06:00 | 4 | that you believe you have recaptured and that you -- |
| 19:06:04 | 5 | that you believe you have recaptured? |
| 19:06:06 | 6 | MR. TOBEROFF:  Objection.  Vague and |
| 19:06:08 | 7 | ambiguous. |
| | 8 | BY MR. PETROCELLI: |
| 19:06:09 | 9 | Q.    You can answer. |
| 19:06:10 | 10 | A.    It's so broad, I don't understand. |
| 19:06:12 | 11 | Q.    Well, what are the ways in which you believe |
| 19:06:13 | 12 | that you can turn your termination interest into |
| 19:06:16 | 13 | money? |
| 19:06:16 | 14 | MR. TOBEROFF:  I instruct you not to answer |
| 19:06:18 | 15 | to the extent your answer reveals communications with |
| 19:06:27 | 16 | your attorney, either with me or with your former |
| 19:06:30 | 17 | attorney, Kevin Marks. |
| | 18 | BY MR. PETROCELLI: |
| 19:06:32 | 19 | Q.    I don't believe you need to rely on |
| 19:06:36 | 20 | attorney-client discussions to answer this question. |
| 19:06:38 | 21 | I'm asking you, an extremely intelligent person who |
| 19:06:41 | 22 | has been involved with this for many years. |
| 19:06:44 | 23 | MR. TOBEROFF:  Excuse me. |
| | 24 | BY MR. PETROCELLI: |
| 19:06:45 | 25 | Q.    In what ways have you considered that you |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 323

| | | |
|---|---|---|
| 19:06:47 | 1 | might be able to turn your termination interest, |
| 19:06:51 | 2 | whatever it is and whenever it's final, into money? |
| 19:06:56 | 3 | MR. TOBEROFF:  I instruct you not to answer |
| 19:06:59 | 4 | to the extent your answer reveals the contents of |
| 19:07:08 | 5 | attorney-client communications.  If you can answer |
| 19:07:14 | 6 | without divulging the substance of attorney-client |
| 19:07:18 | 7 | communications, then you can only answer to that |
| 19:07:20 | 8 | extent. |
| 19:07:21 | 9 | THE WITNESS:  Yeah. |
| 19:07:21 | 10 | My answer is that's the subject of |
| 19:07:25 | 11 | litigation. |
| | 12 | BY MR. PETROCELLI: |
| 19:07:26 | 13 | Q.   What's the subject of litigation? |
| 19:07:28 | 14 | A.   You know, what -- what my rights were and |
| 19:07:32 | 15 | potentially what the value of the rights are. |
| 19:07:33 | 16 | Q.   But you understand that -- you're talking |
| 19:07:35 | 17 | about the lawsuit that you filed on your termination |
| 19:07:37 | 18 | interest? |
| 19:07:38 | 19 | A.   Yes. |
| 19:07:38 | 20 | Q.   Okay.  Now, you understand, though, that as a |
| 19:07:41 | 21 | result of that lawsuit, and let's say you're |
| 19:07:45 | 22 | completely successful in every respect after all |
| 19:07:48 | 23 | appeals and so forth, the only compensation you would |
| 19:07:51 | 24 | receive as a result of the lawsuit is an accounting |
| 19:07:55 | 25 | from 1999 to 2013; correct? |

EXHIBIT K
732

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 324

| | | |
|---|---|---|
| 19:07:58 | 1 | A.    Not necessarily. |
| 19:07:59 | 2 | Q.    What other compensation do you believe in |
| 19:08:02 | 3 | terms of money that would -- can be awarded to you by |
| 19:08:07 | 4 | way of a lawsuit? |
| 19:08:08 | 5 | A.    I believe it depends on the court ruling. |
| 19:08:10 | 6 | Q.    How so? |
| 19:08:12 | 7 | MR. TOBEROFF:  I again -- |
| | 8 | BY MR. PETROCELLI: |
| 19:08:14 | 9 | Q.    How so do you -- |
| 19:08:15 | 10 | MR. TOBEROFF:  If you have any understanding |
| 19:08:16 | 11 | of those things that are independent of the advice of |
| 19:08:19 | 12 | counsel, you can answer.  If you don't, I instruct you |
| 19:08:21 | 13 | not to answer. |
| | 14 | BY MR. PETROCELLI: |
| 19:08:22 | 15 | Q.    I'm not asking about your legal advice.  I'm |
| 19:08:24 | 16 | asking about you as a plaintiff in that -- |
| 19:08:25 | 17 | MR. TOBEROFF:  That's not the instruction. |
| | 18 | BY MR. PETROCELLI: |
| 19:08:26 | 19 | Q.    -- in that, and you can disregard whatever |
| 19:08:28 | 20 | Mr. Toberoff and you have discussed.  But do you have |
| 19:08:31 | 21 | an understanding that you have a claim for money in |
| 19:08:36 | 22 | that case other than the accounting claim? |
| 19:08:42 | 23 | A.    Well, I believe that there are numerous |
| 19:08:46 | 24 | appeals.  There are numerous issues that are still |
| 19:08:48 | 25 | going to be examined in a court of law that could |

**EXHIBIT K**
**733**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 325

| | | |
|---|---|---|
| 19:08:52 | 1 | directly affect, you know, my income going forward. |
| 19:08:58 | 2 | Q.  Well, is it your -- but isn't your |
| 19:09:02 | 3 | understanding that the only way -- the only possible |
| 19:09:08 | 4 | money that you can recover from your lawsuit is |
| 19:09:13 | 5 | whatever the court finally determines is the amount |
| 19:09:17 | 6 | that DC was required to account and pay to you for the |
| 19:09:22 | 7 | years 1999 through 2013 for the works in which the |
| 19:09:28 | 8 | court finds you had an interest? |
| 19:09:30 | 9 | MR. TOBEROFF:  Again, my instruction is if |
| 19:09:32 | 10 | you can answer that question on your own and not based |
| 19:09:35 | 11 | on any advice or discussions with counsel, you can |
| 19:09:38 | 12 | answer the question.  If your answer is based on your |
| 19:09:41 | 13 | discussions with counsel, then I instruct you not to |
| 19:09:46 | 14 | answer. |
| 19:09:48 | 15 | THE WITNESS:  Going beyond the lawsuit, there |
| 19:09:52 | 16 | are always possibilities. |
| | 17 | BY MR. PETROCELLI: |
| 19:09:52 | 18 | Q.  I was just focused on the lawsuit, that the |
| 19:09:54 | 19 | only -- that you have an understanding that the only |
| 19:09:56 | 20 | money that you can recover from your lawsuit is the |
| 19:10:00 | 21 | accounting money for the period 1999 to 2013.  Are you |
| 19:10:05 | 22 | aware of that? |
| 19:10:06 | 23 | A.  Yes. |
| 19:10:07 | 24 | Q.  Okay.  And in terms of getting any other |
| 19:10:13 | 25 | money in respect of your termination interest, you |

## LAURA SIEGEL LARSON - 7/22/2011

Page 326

| | | |
|---|---|---|
| 19:10:16 | 1 | understand that that would require some kind of |
| 19:10:17 | 2 | business transaction? |
| 19:10:18 | 3 | A.   Yes, that's correct. |
| 19:10:19 | 4 | Q.   Okay.  A business transaction in which you |
| 19:10:22 | 5 | would partner up with someone or license someone or |
| 19:10:26 | 6 | sell your interest; correct? |
| 19:10:27 | 7 | A.   Correct. |
| 19:10:33 | 8 | Q.   When do you believe that you will be able to |
| 19:10:35 | 9 | do so? |
| 19:10:37 | 10 | MR. TOBEROFF:  I'm instructing you not to |
| 19:10:39 | 11 | answer unless you can answer independent of any advice |
| 19:10:43 | 12 | of counsel, if you can answer.  If your answer |
| 19:10:48 | 13 | implicates advice of counsel, I instruct you not to |
| 19:10:50 | 14 | answer the question. |
| 19:10:51 | 15 | THE WITNESS:  Yeah, I mean -- |
| 19:10:53 | 16 | MR. TOBEROFF:  You don't -- do you understand |
| 19:10:55 | 17 | the instruction? |
| 19:10:55 | 18 | THE WITNESS:  I do. |
| 19:10:56 | 19 | MR. TOBEROFF:  Okay. |
| 19:10:57 | 20 | THE WITNESS:  I do. |
| 19:10:57 | 21 | I'm not able to say anything, you know, |
| 19:11:01 | 22 | specific because it all involves discussions with my |
| 19:11:06 | 23 | attorney regarding legal matters. |
| 19:11:08 | 24 | MR. PETROCELLI:  Well, that doesn't necess- |
| 19:11:09 | 25 | arily mean you can't answer the question.  Let me -- |

LAURA SIEGEL LARSON - 7/22/2011

Page 327

| | | |
|---|---|---|
| 19:11:12 | 1 | THE WITNESS:  In my mind it does. |
| 19:11:13 | 2 | MR. PETROCELLI:  Let me try again. |
| 19:11:15 | 3 | Q.  Do you have an understanding -- |
| 19:11:17 | 4 | MR. TOBEROFF:  It does pursuant to my |
| 19:11:21 | 5 | instruction. |
| | 6 | BY MR. PETROCELLI: |
| 19:11:21 | 7 | Q.  Do you have an understanding that -- |
| 19:11:31 | 8 | withdrawn. |
| 19:11:31 | 9 | Do you have a plan or intent to enter into a |
| 19:11:36 | 10 | business transaction regarding your Superman rights? |
| 19:11:39 | 11 | A.  I believe I have very valuable rights and |
| 19:11:43 | 12 | that at some point I will be able to profit from them. |
| 19:11:48 | 13 | Q.  Do -- what are the ways in which you believe |
| 19:11:50 | 14 | you can profit from them? |
| 19:11:52 | 15 | MR. TOBEROFF:  Same instruction. |
| 19:11:55 | 16 | THE WITNESS:  That's something that I really |
| 19:11:56 | 17 | can't respond to. |
| | 18 | BY MR. PETROCELLI: |
| 19:11:58 | 19 | Q.  Well, you just said "I believe they're |
| 19:12:00 | 20 | valuable."  Why do you believe they're valuable? |
| 19:12:02 | 21 | A.  Because it's Superman. |
| 19:12:04 | 22 | Q.  Do you believe that you'll have the ability |
| 19:12:06 | 23 | to sell them? |
| 19:12:08 | 24 | MR. TOBEROFF:  Same instruction.  Same |
| 19:12:11 | 25 | instruction. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 328

| | | |
|---|---|---|
| 19:12:11 | 1 | THE WITNESS:  I can't respond to that. |
| | 2 | BY MR. PETROCELLI: |
| 19:12:15 | 3 | Q.   Have you ever attempted to find out, other |
| 19:12:19 | 4 | than through talking to Marc Toberoff, what kind of |
| 19:12:23 | 5 | value there is in these Superman rights for which you |
| 19:12:26 | 6 | have been involved for 15 years or so? |
| 19:12:29 | 7 | MR. TOBEROFF:  Same instruction, and that |
| 19:12:31 | 8 | instruction doesn't just implicate talking to Marc |
| 19:12:34 | 9 | Toberoff.  It implicates things that Marc Toberoff has |
| 19:12:37 | 10 | done on your behalf and my work product. |
| 19:12:40 | 11 | THE WITNESS:  It's all intertwined with |
| 19:12:44 | 12 | matters that are of a legal nature, so I can't answer |
| 19:12:47 | 13 | that question. |
| | 14 | BY MR. PETROCELLI: |
| 19:12:49 | 15 | Q.   Have you identified in your own mind or |
| 19:12:51 | 16 | thinking any prospective purchasers of your rights? |
| 19:12:56 | 17 | MR. TOBEROFF:  Same instruction. |
| 19:12:58 | 18 | THE WITNESS:  No one specific. |
| | 19 | BY MR. PETROCELLI: |
| 19:13:00 | 20 | Q.   Have you given some thought to how much you |
| 19:13:06 | 21 | would sell your rights for? |
| 19:13:09 | 22 | MR. TOBEROFF:  Same instruction. |
| 19:13:11 | 23 | THE WITNESS:  I don't have a clear number. |
| | 24 | BY MR. PETROCELLI: |
| 19:13:14 | 25 | Q.   A range. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 329

| 19:13:17 | 1 | MR. TOBEROFF:  Same instruction. |
| 19:13:18 | 2 | THE WITNESS:  Sitting here today, no. |
| 19:13:21 | 3 | MR. TOBEROFF:  Not -- and if you did, you |
| 19:13:24 | 4 | could only disclose that to the extent that it's not |
| 19:13:26 | 5 | the product of your conversations with your attorney |
| 19:13:29 | 6 | or the analysis done by your attorneys on your behalf. |
| 19:13:32 | 7 | You understand that?  You understand that? |
| 19:13:33 | 8 | THE WITNESS:  Yes, I do.  That goes without |
| 19:13:35 | 9 | saying. |
|  | 10 | BY MR. PETROCELLI: |
| 19:13:35 | 11 | Q.   Do you have a belief that DC Comics or Warner |
| 19:13:43 | 12 | Bros. is a potential purchaser of your rights? |
| 19:13:48 | 13 | A.   Of course. |
| 19:13:49 | 14 | Q.   Why do you believe that? |
| 19:13:51 | 15 | A.   Well, they're one of many studios, and I |
| 19:13:55 | 16 | believe that they would have -- it would be in their |
| 19:13:58 | 17 | best interest to try to, you know, make a reasonable |
| 19:14:02 | 18 | deal with me.  When I say reasonable, I mean, you |
| 19:14:06 | 19 | know, something that would be completely acceptable to |
| 19:14:09 | 20 | me. |
| 19:14:10 | 21 | Q.   Do you know what that is? |
| 19:14:12 | 22 | A.   Sitting here -- |
| 19:14:13 | 23 | MR. TOBEROFF:  Same instruction. |
| 19:14:14 | 24 | THE WITNESS:  Sitting here today, I cannot |
| 19:14:15 | 25 | give you an answer to that. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 330

| 19:14:19 | 1 | BY MR. PETROCELLI: |
| 19:14:20 | 2 |     Q.   Do you believe that because the Shusters have |
| 19:14:26 | 3 | asserted that their termination interest becomes |
| 19:14:30 | 4 | effective in 2013, that that will somehow enhance the |
| 19:14:36 | 5 | value of your Superman rights? |
| 19:14:39 | 6 |     A.   Yes. |
| 19:14:40 | 7 |     MR. TOBEROFF:  Same instruction.  You can |
| 19:14:41 | 8 | only answer that if you formed a belief as to that |
| 19:14:44 | 9 | independent of your advice of counsel. |
| 19:14:46 | 10 |     THE WITNESS:  Yes, I do. |
|  | 11 | BY MR. PETROCELLI: |
| 19:14:49 | 12 |     Q.   Why do you believe that? |
| 19:14:50 | 13 |     A.   Well -- |
| 19:14:53 | 14 |     MR. TOBEROFF:  I -- if you want -- don't |
| 19:14:56 | 15 | venture into this territory unless your answer to his |
| 19:14:59 | 16 | question is independent of any advice of counsel, and |
| 19:15:02 | 17 | if you can't separate the two, then I instruct you not |
| 19:15:04 | 18 | to answer. |
| 19:15:06 | 19 |     THE WITNESS:  Just very simply, I think that |
| 19:15:11 | 20 | a whole is always more valuable than part, than a |
| 19:15:14 | 21 | part. |
|  | 22 | BY MR. PETROCELLI: |
| 19:15:15 | 23 |     Q.   Do you believe that between the Shuster |
| 19:15:19 | 24 | interest if and when it were to become effective and |
| 19:15:22 | 25 | the interests that you own, that that is the entirety |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 331

| | | |
|---|---|---|
| 19:15:26 | 1 | of the Superman interest? |
| 19:15:28 | 2 | A.    I'm sorry? |
| 19:15:29 | 3 | Q.    Do you believe that the Shuster interest and |
| 19:15:31 | 4 | the Siegel interest -- you said a whole is better than |
| 19:15:34 | 5 | a part or words to that effect.  Do you believe that |
| 19:15:37 | 6 | the Siegel termination interest and the Shuster |
| 19:15:41 | 7 | termination interest constitute 100 percent of the |
| 19:15:43 | 8 | interest in Superman? |
| 19:15:46 | 9 | MR. TOBEROFF:  Vague and ambiguous as to -- |
| 19:15:50 | 10 | vague and ambiguous. |
| 19:15:50 | 11 | THE WITNESS:  It depends on the time frame |
| 19:15:59 | 12 | that you're talking about. |
| | 13 | BY MR. PETROCELLI: |
| 19:15:59 | 14 | Q.    Well, do you understand that DC Comics owns |
| 19:16:00 | 15 | Superman rights that you don't have the ability to |
| 19:16:03 | 16 | recapture? |
| 19:16:04 | 17 | A.    As of today.  That may change. |
| 19:16:07 | 18 | Q.    As of any day. |
| 19:16:08 | 19 | A.    That may change. |
| 19:16:09 | 20 | Q.    How? |
| 19:16:10 | 21 | A.    There are court decisions that are yet to |
| 19:16:12 | 22 | come. |
| 19:16:12 | 23 | Q.    Assuming you win every single court decision |
| 19:16:15 | 24 | and assuming the Shusters win every single court |
| 19:16:18 | 25 | decision, is it your belief that the Shusters and the |

**EXHIBIT K**
**740**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 332

| | | |
|---|---|---|
| 19:16:21 | 1 | Siegels collectively could end up with every single |
| 19:16:25 | 2 | right associated with Superman? |
| 19:16:28 | 3 | MR. TOBEROFF:  Vague and ambiguous.  Again, |
| 19:16:29 | 4 | you're getting into legal territory here. |
| 19:16:32 | 5 | He's asking you for legal conclusions, and if |
| 19:16:35 | 6 | you can form an opinion independent of your advice of |
| 19:16:38 | 7 | counsel, you can only answer to that limited extent. |
| 19:16:40 | 8 | But if you can't or your opinions are so intertwined |
| 19:16:44 | 9 | with the advice of counsel that you can't, then I'm |
| 19:16:47 | 10 | instructing you not to answer. |
| 19:16:49 | 11 | MR. PETROCELLI:  Do you want to hear the |
| 19:16:50 | 12 | question back? |
| 19:16:51 | 13 | THE WITNESS:  No, I don't need to hear the |
| 19:16:52 | 14 | question. |
| 19:16:53 | 15 | You know, I really don't think that it's |
| 19:16:55 | 16 | appropriate for me to answer that. |
| | 17 | BY MR. PETROCELLI: |
| 19:16:56 | 18 | Q.   Why is that? |
| 19:16:57 | 19 | A.   Because it's too enmeshed in years of |
| 19:17:02 | 20 | discussions with legal counsel. |
| 19:17:04 | 21 | Q.   Are you aware that there are rights that DC |
| 19:17:11 | 22 | Comics and or Warner Bros. has that are not subject to |
| 19:17:15 | 23 | termination or recapture at all?  Is it your belief |
| 19:17:20 | 24 | that there are such Superman rights or Superboy |
| 19:17:23 | 25 | rights? |

## LAURA SIEGEL LARSON - 7/22/2011

Page 333

| | | |
|---|---|---|
| 19:17:23 | 1 | MR. TOBEROFF:  Same -- same instruction.  I'm |
| 19:17:25 | 2 | instructing you not to answer that question because it |
| 19:17:27 | 3 | calls for a legal conclusion.  So I don't have to ask |
| 19:17:30 | 4 | you whether it's unrelated to advise of counsel |
| 19:17:34 | 5 | MR. PETROCELLI:  I didn't ask you for a legal |
| 19:17:34 | 6 | conclusion.  I asked for your belief and understanding |
| 19:17:36 | 7 | in that regard. |
| 19:17:37 | 8 | MR. TOBEROFF:  I'm instructing you not to |
| 19:17:39 | 9 | answer.  It divulges attorney-client communications. |
| 19:17:42 | 10 | MR. PETROCELLI:  You know, we're going to |
| 19:17:43 | 11 | stop right now.  I have a ton more of documents, as |
| 19:17:45 | 12 | you can see, in front of you. |
| 19:17:47 | 13 | THE WITNESS:  I'm begging you not to stop. |
| 19:17:49 | 14 | MR. PETROCELLI:  I understand, but we can't |
| 19:17:51 | 15 | go any further.  It's past quarter after 7:00, and I |
| 19:17:53 | 16 | have accommodated your schedule and your situation, |
| 19:17:58 | 17 | and I'm not being disrespectful, but there's no way |
| 19:18:02 | 18 | we're going to finish, and so we'll just have to fight |
| 19:18:05 | 19 | about it another day. |
| 19:18:06 | 20 | MR. TOBEROFF:  I would like to know -- wait a |
| 19:18:07 | 21 | second.  I would like to know how much time we have |
| 19:18:09 | 22 | been on the record. |
| 19:18:11 | 23 | THE VIDEOGRAPHER:  At this point you're a |
| 19:18:15 | 24 | minute or two shy of seven hours. |
| 19:18:17 | 25 | MR. PETROCELLI:  There you go. |

**EXHIBIT K**
**742**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 334

| | | |
|---|---|---|
| 19:18:18 | 1 | MR. TOBEROFF:  So you're stopping a minute or |
| 19:18:20 | 2 | two shy of seven hours and you're not finishing the |
| 19:18:22 | 3 | deposition when you -- |
| 19:18:24 | 4 | MR. PETROCELLI:  As you know, I made my |
| 19:18:26 | 5 | statement without having any knowledge of the time. |
| 19:18:28 | 6 | MR. TOBEROFF:  Okay.  Well, now you have -- |
| | 7 | MR. PETROCELLI:  I don't have an internal |
| | 8 | clock. |
| 19:18:29 | 9 | MR. TOBEROFF:  Now you have the knowledge of |
| 19:18:30 | 10 | the time, so -- and please let me finish.  I didn't |
| 19:18:33 | 11 | interrupt you when you were speaking. |
| | 12 | MR. PETROCELLI:  Sure.  You can finish. |
| 19:18:35 | 13 | MR. TOBEROFF:  You're not stopping as a |
| 19:18:38 | 14 | strategic effort a minute or two before seven hours to |
| 19:18:41 | 15 | continue the deposition.  And you're smiling.  It's |
| 19:18:43 | 16 | clear that that's what you're doing.  So -- |
| 19:18:46 | 17 | MR. PETROCELLI:  You are joking; right? |
| 19:18:47 | 18 | MR. TOBEROFF:  Am I joking?  It's obvious -- |
| 19:18:49 | 19 | excuse me.  I'm allowed to speak.  I'm not joking. |
| 19:18:52 | 20 | MR. PETROCELLI:  You're going to embarrass |
| 19:18:54 | 21 | yourself. |
| 19:18:54 | 22 | THE WITNESS:  You have one day of seven hours |
| 19:18:56 | 23 | of Ms. Siegel.  She wants to continue to complete her |
| 19:19:00 | 24 | deposition.  You refuse to do that even though she's |
| 19:19:02 | 25 | the one with M.S. and you're perfectly happy -- |

**EXHIBIT K**
**743**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 335

| | | |
|---|---|---|
| 19:19:06 | 1 | perfectly capable of finishing the deposition, but |
| 19:19:09 | 2 | you're choosing not to and choosing not to close the |
| 19:19:13 | 3 | deposition.  This deposition is going to close after |
| 19:19:15 | 4 | today, and we will vigorously oppose you dragging her |
| 19:19:19 | 5 | back in here for more time because you have two |
| 19:19:22 | 6 | minutes left on your seven hours. |
| 19:19:25 | 7 | MR. PETROCELLI:  You know, I will respond. |
| 19:19:26 | 8 | Okay? |
| 19:19:28 | 9 | I think your comments are disgraceful |
| 19:19:31 | 10 | especially in reference to the witness' condition |
| 19:19:34 | 11 | because I have done everything, frankly, beyond the |
| 19:19:39 | 12 | call of duty, to accommodate her, her illness, her |
| 19:19:43 | 13 | schedule, finding an office with a sofa so she can lie |
| 19:19:47 | 14 | down, in every -- |
| | 15 | MR. TOBEROFF:  No one -- no one -- |
| 19:19:47 | 16 | MR. PETROCELLI:  Excuse me.  I'm not |
| 19:19:48 | 17 | finished. |
| 19:19:49 | 18 | MR. TOBEROFF:  I wasn't referring to that. |
| 19:19:51 | 19 | MR. PETROCELLI:  Excuse me -- in every one of |
| 19:19:51 | 20 | the requests, and I have made it perfectly clear on |
| 19:19:52 | 21 | the record throughout that she is entitled to take as |
| 19:19:57 | 22 | many and as lengthy breaks as she wants knowing that |
| 19:20:00 | 23 | it was going to require us to work far, far later than |
| 19:20:05 | 24 | a normal schedule would.  So I really find that |
| | 25 | distasteful. |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 336

| | | |
|---|---|---|
| 19:20:11 | 1 | Secondly -- |
| 19:20:11 | 2 | MR. TOBEROFF:  I'm referring to the couple |
| 19:20:12 | 3 | minutes short of the seven hours, not to be |
| | 4 | providing -- |
| | 5 | MR. PETROCELLI:  Time out.  Don't -- |
| 19:20:13 | 6 | MR. TOBEROFF:  -- for a room to lie down, |
| | 7 | and -- |
| | 8 | MR. PETROCELLI:  I'm not finished. |
| 19:20:14 | 9 | MR. TOBEROFF:  -- I thanked you for that. |
| 19:20:16 | 10 | MR. PETROCELLI:  I'm not finished with my |
| 19:20:19 | 11 | statement. |
| 19:20:19 | 12 | Secondly, as you well know, I indicated that |
| 19:20:22 | 13 | we were stopping because the court reporter told me we |
| 19:20:28 | 14 | had three minutes and two minutes on the tape, and I |
| 19:20:33 | 15 | knew I wasn't going to possibly finish the deposition. |
| 19:20:36 | 16 | I had no idea whatsoever, of course, and you know I |
| 19:20:39 | 17 | didn't, that there was two minutes left to go to |
| 19:20:42 | 18 | complete seven hours.  And for you to accuse me of |
| 19:20:46 | 19 | trying to make some kind of tactic about that, I want |
| 19:20:51 | 20 | to be real clear about that.  I will cede the two |
| 19:20:54 | 21 | minutes to you. |
| 19:20:54 | 22 | MR. TOBEROFF:  Okay.  If you're ceding the |
| 19:20:58 | 23 | two minutes to me, then the deposition is over. |
| 19:20:58 | 24 | MR. PETROCELLI:  No, it is not. |
| 19:20:58 | 25 | MR. TOBEROFF:  Because you have seven hours |

**Merrill   Corporation  -  Los Angeles**

800-826-0277                    www.merillcorp.com/law

EXHIBIT K
745

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 337

| | | |
|---|---|---|
| 19:20:59 | 1 | of deposition. |
| 19:20:59 | 2 | MR. PETROCELLI:  I understand your position, |
| 19:21:01 | 3 | but, Marc, that's really quite sophomoric of you.  You |
| 19:21:05 | 4 | don't decide when depositions are over.  Courts decide |
| 19:21:09 | 5 | that.  So I understand your position that you want to |
| 19:21:15 | 6 | resist this deposition from being continued to a later |
| 19:21:21 | 7 | date, but that's what I'm doing. |
| 19:21:23 | 8 | MR. TOBEROFF:  Okay. |
| 19:21:23 | 9 | MR. PETROCELLI:  And you obviously will |
| 19:21:26 | 10 | disagree about it, and we'll go to court about it.  I |
| 19:21:28 | 11 | just want to be clear that I'm not going to make an |
| 19:21:31 | 12 | argument that I'm entitled to more time because |
| 19:21:34 | 13 | apparently there were one or two minutes left before |
| 19:21:37 | 14 | the seven hours.  It's because I have not had enough |
| 19:21:41 | 15 | within seven hours to complete the examination given |
| 19:21:44 | 16 | the importance of this witness -- |
| 19:21:46 | 17 | MR. TOBEROFF:  Just so -- |
| 19:21:47 | 18 | MR. PETROCELLI:  -- and we will argue about |
| 19:21:48 | 19 | it another day. |
| 19:21:49 | 20 | MR. TOBEROFF:  Just to be clear, my reference |
| 19:21:52 | 21 | to tactics doesn't refer to the two minutes left on |
| 19:21:56 | 22 | the seven hours.  It refers -- because I said the same |
| 19:21:59 | 23 | exact thing to you when you told me you were going to |
| 19:22:02 | 24 | stop at 6:00.  I objected at that point.  And this |
| 19:22:06 | 25 | isn't state court, and I think you're confusing the |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 338

| | | |
|---|---|---|
| 19:22:08 | 1 | two.  This is federal court.  In federal court you |
| 19:22:11 | 2 | have one day of seven hours.  You don't continue from |
| 19:22:14 | 3 | day to day until you're finished. |
| 19:22:15 | 4 | MR. PETROCELLI:  Marc, you -- |
| 19:22:17 | 5 | MR. TOBEROFF:  So we will vigorously |
| 19:22:19 | 6 | oppose -- oppose, and Laura stated on the record that |
| 19:22:22 | 7 | she would like you to continue rather than have to |
| 19:22:26 | 8 | come back for yet another deposition.  This is now her |
| 19:22:29 | 9 | third deposition. |
| 19:22:30 | 10 | MR. PETROCELLI:  Wait a second.  There's |
| 19:22:31 | 11 | nothing to continue.  Are you telling me that you're |
| 19:22:33 | 12 | going to make her available tonight beyond seven |
| 19:22:36 | 13 | hours? |
| 19:22:36 | 14 | MR. TOBEROFF:  No.  I'm telling you -- |
| 19:22:37 | 15 | MR. PETROCELLI:  Okay. |
| 19:22:38 | 16 | MR. TOBEROFF:  -- you can finish her |
| 19:22:40 | 17 | seven-hour deposition. |
| 19:22:41 | 18 | MR. PETROCELLI:  It's done.  I told you I'm |
| 19:22:43 | 19 | giving up the last one or two minutes just to make the |
| 19:22:46 | 20 | point to you.  But to be clear, you're not willing |
| 19:22:48 | 21 | tonight to have the witness stay beyond seven hours of |
| 19:22:51 | 22 | testimony. |
| 19:22:51 | 23 | MR. TOBEROFF:  I don't think you're entitled |
| 19:22:52 | 24 | to more than one day of seven hours. |
| 19:22:54 | 25 | MR. PETROCELLI:  That's my point.  Because I |

**LAURA SIEGEL LARSON - 7/22/2011**

Page 339

| | | |
|---|---|---|
| 19:22:55 | 1 | believe that I am entitled to more than seven hours, I |
| 19:22:58 | 2 | will have to go to court and seek the court's |
| 19:23:01 | 3 | intervention. |
| 19:23:01 | 4 | MR. TOBEROFF:  That's your -- you can do -- |
| 19:23:02 | 5 | you can always make a motion to the court. |
| 19:23:04 | 6 | MR. PETROCELLI:  Let's have a stipulation on |
| 19:23:06 | 7 | the record as we had before that the witness will have |
| 19:23:10 | 8 | within 30 days of your receipt to advise us of any |
| 19:23:15 | 9 | corrections to the deposition transcript, but bearing |
| 19:23:19 | 10 | in mind, Ms. Siegel -- Ms. Larson, of course, that if |
| 19:23:23 | 11 | you do make any changes of substance, it can be |
| 19:23:26 | 12 | commented upon as affecting your credibility.  The |
| 19:23:31 | 13 | court reporter's transcript can be signed under |
| 19:23:34 | 14 | penalty of perjury, and the court reporter is |
| 19:23:36 | 15 | otherwise relieved of her duties under the Code.  So |
| 19:23:38 | 16 | stipulated? |
| 19:23:38 | 17 | MR. TOBEROFF:  So stipulated. |
| 19:23:41 | 18 | THE REPORTER:  Where is the original to go, |
| 19:23:42 | 19 | please? |
| 19:23:43 | 20 | MR. PETROCELLI:  The original should go to, I |
| 19:23:46 | 21 | guess -- |
| 19:23:46 | 22 | What did we do last time? |
| 19:23:49 | 23 | MR. TOKORO:  The original to them and a copy |
| 19:23:51 | 24 | to us. |
| 19:23:51 | 25 | THE VIDEOGRAPHER:  That will then mark the |

LAURA SIEGEL LARSON - 7/22/2011

Page 340

19:23:53    1    end of Volume 1, tape number five, in the deposition

19:23:55    2    of Laura Siegel.  Going off the record.  The time is

            3    7:24.

19:24:01    4         (The deposition was concluded at 7:24 p.m.)

            5

            6

            7

            8

            9

            10

            11

            12

            13

            14

            15

            16

            17

            18

            19

            20

            21

            22

            23

            24

            25

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

**LAURA SIEGEL LARSON - 7/22/2011**

Page 341

1    STATE OF CALIFORNIA        )

2                               ) ss.

3    COUNTY OF LOS ANGELES      )

4

5

6         I, LAURA SIEGEL LARSON, declare under the

7    penalties of perjury under the laws of the United

8    States that the foregoing is true and correct.

9         Executed this    day of                    ,

10   2011, at                      , California.

11

12

13

14

15                              LAURA SIEGEL LARSON

16

17

18

19

20

21

22

23

24

25

**EXHIBIT K**
**750**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 342

1    STATE OF CALIFORNIA    )

2                          )    ss.

3    COUNTY OF LOS ANGELES  )

4      I, Kathleen E. McCarthy, Certified Shorthand

5    Reporter No. 4483 for the State of California, do

6    hereby certify:

7      That prior to being examined, the witness named in

8    the foregoing deposition was duly sworn to testify the

9    truth, the whole truth, and nothing but the truth;

10     That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced by me to typewritten form and that

13   the same is a true, correct, and complete transcript

14   of said proceedings.

15         Before completion of the deposition, review

16   of the transcript [X] was [ ] was not requested.  If

17   requested, any changes made by the deponent (and

18   provided to the reporter) during the period allowed

19   are appended hereto.

20     I further certify that I'm not interested in the

21   outcome of the action.

22     Witness my hand this 3rd day of August, 2011.

23

24

25                      Kathleen E. McCarthy, CSR No. 4483

3baac749-5ca5-4935-b47c-c3b46e0b4ffc