Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
David Harris (State Bar No. 255557)
  dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>        Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR RECONSIDERATION OF MAY 23, 2011, ORDER DENYING MOTION FOR REVIEW RE: PRODUCTION OF DEFENDANTS' "CONSENT AGREEMENT"**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date:   December 10, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

DC'S PRIOR FAILED MOTIONS .........................................................................2

ARGUMENT ..........................................................................................................3

I.    DC'S MOTION IS PROCEDURALLY FLAWED.........................................3

    A.    DC Willfully Failed To Meet And Confer..............................................3

    B.    DC's Motion Should Be Denied For Its Failure To Follow L.R. 7-18........................................................................................4

II.    DC'S MOTION IS SUBSTANTIVELY FLAWED ......................................9

    A.    The Consent Agreement Is Privileged ..................................................9

        1.    The Consent Agreement Is Clearly Covered By The Attorney/Client Privilege And The Work-Product Privilege .....9

        2.    There Was No "Superboy" *Quid Pro Quo* ..............................11

        3.    DC's *Ad Hominem* Attacks Are Irrelevant And Baseless ........11

    B.    Defendants' Depositions Did Not Waive Privilege ............................14

        1.    DC Agreed That The Testimony Would Not Waive Privilege ................................................................................14

        2.    The Narrow Testimony Did Not Waive Privilege...................16

        3.    DC's Other Arguments Fail As A Matter Of Law ..................18

    C.    There Was No Waiver Of Privilege Pursuant To Fed. R. Evid. 612 ..19

CONCLUSION .....................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Akamai Technologies, Inc. v. Digital Island, Inc.*,
 2002 WL 1285126 (N.D. Cal. May 30, 2002) .................................................. 1, 16

*Ames v. Black Entertainment Television,*
 1998 WL 812051 (S.D.N.Y. 1998) ........................................................ 16

*Apex Mun. Fund v. N-Group Sec.*,
 841 F. Supp. 1423 (S.D. Tex. 1993) ...................................................... 17

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
 2008 WL 3285751 (N.D. Ill. Aug. 8, 2008) ............................................. 2, 17

*Chih-Cheng Tsao v. County of Los Angeles*,
 2011 U.S. Dist. LEXIS 43837 (C.D. Cal. Mar. 30, 2011) ....................................... 4

*Clarke v. American Commerce Nat'l Bank*,
 974 F.2d 127 (9th Cir. 1992) ............................................................. 9

*Coorstek, Inc. v. Reiber*,
 2010 WL 1332845 (D. Colo. Apr. 5, 2010) ................................................ 17

*Dowd v. Calabrese*,
 101 F.R.D. 427 (D.D.C. 1984) .......................................................... 16

*Encarnacao v. Phase Forward Inc.*,
 2012 WL 870674 (C.D. Cal. Mar. 14, 2012) ................................................ 4

*Grant v. Unifund CCR Partners*,
 2012 WL 3186601 (C.D. Cal. Aug. 6, 2012) ................................................ 9

*Hebbard v. City of Dover*,
 2007 U.S. Dist. LEXIS 59966 (D.N.H. Aug. 13, 2007) ....................................... 17

*Hunter v. U.S. Dept. of Educ.*,
 2008 WL 4820778 (C.D. Cal. Nov. 4, 2008) ............................................... 9

*In re Comair Air Disaster Litigation*,
 100 F.R.D. 350 (D.C. Ky. 1983) ......................................................... 19

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
 357 F.3d 900 (9th Cir. 2004) ......................................................... 10-11

*In re Katz Interactive Call Processing Patent Litig.*,
 2012 WL 3060578 (C.D. Cal. Jan. 12, 2012) ............................................. 8-9

*In re Rivastigmine Patent Litig.*,
 486 F. Supp. 2d 241 (S.D.N.Y. 2007) .................................................. 21-22

*Janssen v. Benihana, Inc.*,
 2012 U.S. Dist. LEXIS 10557 (C.D. Cal. January 30, 2012) ................................... 4

*Jos. Shlitz Brewing Co. v. Muller & Phipps (Hawaii), Ltd.*,
   85 F.R.D. 118 (W.D. Mo. 1980) ............................................................ 20

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) .................................................................. 5

*Loritz v. Pfingst*,
   94 Fed. Appx. 439 (9th Cir. Cal. 2004) .................................................. 4

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) .............................................................. 4-5

*Nassirpour v. F.D.I.C.*,
   2003 U.S. Dist. LEXIS 105940 (C.D. Cal. December 29, 2008) ............ 4

*New Jersey v. Sprint Corp*,
   258 F.R.D. 421 (D. Kan. 2009) ............................................................ 18

*Nutramax Lab., Inc. v. Twin Lab., Inc.*,
   183 F.R.D. 458, 469 (D. Md. 1998) ................................................. 21-22

*S&A Painting Co. v. O.W.B. Corp.*,
   103 F.R.D. 407 (W.D. Penn. 1984) ...................................................... 20

*United States ex rel. Bagley v. TRW, Inc.*,
   212 F.R.D. 554 (C.D. Cal. 2003) .................................................... 19-21

*United States v. 22.80 Acres of Land*,
   107 F.R.D. 20 (N.D. Cal. 1985) ..................................................... 20, 22

*United States v. Adlman*,
   134 F.3d 1194 (2nd Cir.1998) ............................................................. 10

*United States v. Buljubasic*,
   808 F.2d 1260 (7th Cir. 1987) ........................................................ 16-17

*United States v. Greenstein*,
   2010 WL 3222533 (W.D. Wash. Aug. 9, 2010) ................................... 16

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002) ............................................................... 16

**Rules and Regulations**

37 C.F.R. § 201.10 ................................................................................. 13

C.D. Cal. Local Rule 7-3 .................................................................. 1, 3-4

C.D. Cal. Local Rule 7-18 ............................................................... *passim*

Fed. R. Evid. 501 .................................................................................... 9

Fed. R. Evid. 612 ........................................................................... *passim*

iii

TABLE OF CONTENTS AND AUTHORITIES

# INTRODUCTION

DC's Motion for Reconsideration ("Mot."; Docket No. 501) fails on every level.  It seeks – for the *fourth* time – the production of a privileged document, a 2008 attorney-client communication created for purposes of settlement negotiation during the closely-related *Siegel* litigation (C.D. Cal. Case No. 04-CV-08400 ODW (RZx)), the existence of which was disclosed to DC pursuant to a settlement confidentiality agreement that DC has repeatedly and willfully violated.  The document set forth the Siegels' and the Shusters' strategy for jointly negotiating with DC regarding their jointly-owned Superman copyrights (the "Consent Agreement").  As the Consent Agreement was created by Defendants and their counsel during ongoing litigation, spells out the Siegel and Shuster heirs' joint settlement strategy, and reflects their counsel's mental impressions and work product regarding the case, it is squarely protected by the attorney-client/joint-interest privilege and work product doctrine.

Accordingly, the 2008 Consent Agreement was consistently and properly upheld as privileged by Judge Larson in *Siegel*, and has continued to be upheld as privileged by both Magistrate Zarefsky and this Court in this case.  DC points to no new "facts" that justify reconsideration of these orders, as is required by Local Rule 7-18, and failed to meet-and-confer on this motion, as required by Local Rule 7-3.  DC's improper motion can and should be dismissed on these grounds alone.

Recognizing that this issue has already been exhaustively litigated and the document repeatedly found to be privileged, DC weakly argues that privilege was somehow waived by Mark Warren Peary's and Laura Siegel Larson's limited deposition testimony.  The vast majority of that limited testimony, however, was only offered <u>after</u> DC's counsel *expressly agreed* on-the-record that such testimony would not constitute a waiver.  Such agreements are enforceable.  *See Akamai Technologies, Inc. v. Digital Island, Inc.*, 2002 WL 1285126, at *3 (N.D. Cal. May 30, 2002).  **DC misleadingly omits any mention in its motion of the express agreements that bar DC's arguments**.

Furthermore, where there was no express agreement, the narrow testimony only concerned:  (1) superficial questions that did not reveal the contents and substance of the Consent Agreement (*e.g.*, its title); and (2) information that DC already knew (*e.g.*, the agreement remained in effect).  None of this testimony waives privilege as a matter of law.  *See, e.g.*, *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 2008 WL 3285751, at *4 (N.D. Ill. Aug. 8, 2008).

In desperation, DC also argues that because Mr. Peary glanced at the Consent Agreement prior to deposition, privilege was somehow waived.  Under Fed. R. Evid. 612 and the supporting case law, this is clearly insufficient to waive privilege.

DC's fourth attempt to compel production of the 2008 Consent Agreement should be denied, and this matter finally put to rest.

## DC'S PRIOR FAILED MOTIONS

After Judge Larson issued his order upholding the Siegels' termination in *Siegel v. Warner Bros., Entertainment, Inc.*, Case No. 04-CV-08400 ODW (RZx) ("*Siegel*") he ordered the parties to hold settlement discussions.  *Siegel*, Docket No. 294.  In advance of the Court-ordered mediation, the parties and their counsel entered into a strict confidentiality agreement ("Confidentiality Agreement") which provided that "any document that [was] marked 'Confidential – For Settlement Purposes Only' and [was] disclosed or produced at or in connection with a Settlement Conference" would "not be … used in any way, shape or form for any purpose, including impeachment, in any pending or future proceeding in any court, in whole or in part, directly or indirectly…."  Docket No. 94-20 ¶5.  Pursuant to this agreement, in a May 2, 2008 letter marked "Confidential – For Settlement Purposes Only," the Siegels and Shusters generally disclosed the existence of the 2008 Consent Agreement, which they had entered into in anticipation of the court-ordered mediation and subsequent settlement talks.  Docket No. 245.

In willful breach of its promises in the Confidentiality Agreement to keep settlement communications confidential, on December 30, 2008 DC moved in *Siegel*

2

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

to compel the production of the Consent Agreement, arguing that it was not privileged.  In response, the Siegels argued that it was protected by the attorney-client/joint-interest privilege, the work product doctrine, and the Confidentiality Agreement.  *Siegel*, Docket No. 395.  At the hearing, DC's counsel claimed, as it does now, that the Consent Agreement was not privileged, but the Court denied DC's motion and upheld the privilege.  Docket No. 502 ("PD"), Ex. A at 21:4-29:2.

The Consent Agreement was duly logged on Defendants' privilege log. Nevertheless, on February 7, 2011, DC again moved to compel the Consent Agreement, again arguing that it was a non-privileged "business agreement[] concerning the disposition of monetary interests and rights."  Docket No. 160 at 24. DC also argued that the agreement was unlawful and that privilege had been waived by Defendants' minimal disclosures about the agreement.  *Id.* at 11-12, 21-22. Magistrate Zarefsky, like Judge Larson, rejected DC's arguments and upheld the privilege, noting that "[t]his is not the first time that this matter has been brought to court for decision" and that, in *Siegel,* DC "also moved to compel production of this document, and the same arguments were made there as are made here."  Docket No. 209 at 2.  On April 25, 2011, DC moved a third time to compel the Consent Agreement, asking this Court to reverse Magistrate Zarefsky's (and Judge Larson's) denial of its motion, and advanced the same arguments it makes now.  Docket Nos. 225 at 8; 243 at 3.  This Court denied DC's baseless motion.  Docket No. 252.

## **ARGUMENT**

## I.    **DC'S MOTION IS PROCEDURALLY FLAWED**

### A.    **DC Willfully Failed to Meet-and-Confer**

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  DC has utterly failed to abide by Local Rule 7-3, as DC *never* tried to meet and confer, much less "discuss thoroughly," this motion, which should be denied on this ground alone.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

DC misleads the Court with a vague suggestion that this "motion is made following several conferences of counsel." Mot. iii. But DC cites correspondence, mostly from 2011, that concerns an entirely different issue – DC's desire to take second depositions of Laura Siegel Larson and Mark Warren Peary. *See PD, Exs. K* at 404-406 ("DC intends to move to re-open the depositions); G ("writ[ing] pursuant to Local Rule 37" re: a "motion to compel the relevant [deposition] testimony"); H (letter re: deposition testimony); I (setting meet and confer on "Mr. Peary's deposition"); J (concerning motion re: "Mr. Peary's deposition"); L ("regarding DC's intent to move to compel further depositions"); M (disagreeing with defendants on why further depositions were unwarranted).

DC's motion should be denied outright due to its blatant failure to abide by the Local Rules and its obligations to meet and confer. *See Chih-Cheng Tsao v. County of Los Angeles*, 2011 U.S. Dist. LEXIS 43837, at *7 n.6 (C.D. Cal. Mar. 30, 2011) (motion denied "for failure to comply with the meet and confer requirements of Local Rule 7-3"); *Nassirpour v. F.D.I.C.*, 2003 U.S. Dist. LEXIS 105940 (C.D. Cal. December 29, 2008) (denying motion for failure to hold a "proper meet and confer"); *Janssen v. Benihana, Inc.*, 2012 U.S. Dist. LEXIS 10557, at *2 (C.D. Cal. January 30, 2012) (ordering motion struck if party did not offer a satisfactory "explanation of its attempt to meet and confer under Local Rule 7-3"); *Loritz v. Pfingst*, 94 Fed. Appx. 439, 440 (9th Cir. Cal. 2004) (holding that "the district court properly exercised its discretion in denying [party's] motion to compel discovery because [the party] failed to meet and confer in good faith").

**B.**    **DC's Motion Should Be Denied For Its Failure To Follow L.R. 7-18**

As this Court has held, a motion for reconsideration is an "extraordinary remedy, to be used sparingly," and is reserved for "highly unusual circumstances." *Encarnacao v. Phase Forward Inc.*, 2012 WL 870674, at *1 (C.D. Cal. Mar. 14, 2012) (Wright, J.) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

F.3d 873, 880 (9th Cir. 2009)).  Motions for reconsideration "may be made *only* on the grounds of (a) a material difference in fact or law," "(b) the emergence of new material facts or a change of law," or "(c) a manifest showing of a failure to consider material facts."  Local Rule 7-18.  Furthermore, "***[n]o motion for reconsideration shall in any manner repeat any oral or written argument*** made in support of or in opposition to the original motion."  *Id.* (emphasis added).

DC attempts to mislead the Court with the knowingly false argument that its motion relies on "new material facts."  Mot. 6-7.  However, DC's supposedly "new" facts, and arguments based thereon, are nothing new and did not come to light, as DC falsely claims, during recent depositions.  Mot. 8-9.  Rather, they are copied almost verbatim from DC's previous motions before Magistrate Zarefsky and this Court:

| Current Motion for Reconsideration | Motion to Compel (Docket Nos. 160; 171) | Motion for Review (Docket Nos. 225; 243) |
|---|---|---|
| The Consent Agreement is "a *binding contract* that … restricts the Shusters' ability to assign their putative copyright interests, in violation of the Copyright Act and other laws…."  Mot. 8. | The Consent Agreement "prevent[s] the Siegel and Shuster defendants from freely entering into copyright agreements with DC in violation of the Copyright Act."  Docket No. 160 at 1.<br><br>"Defendants concede the consent agreements provide that neither the Siegels nor the Shuster Estate will license, assign or otherwise transfer their rights and interest in 'Superman' without the written consent of the other."  Docket No. 171 at 2 (internal quotations omitted); *see also id.* at 1 (describing the Consent | "[T]he agreement was a … contract among the heirs that affected their ability to freely assign their putative rights in Superman without the written consent of the other."  Docket No. 225 at 8.<br><br>"[T]he 2008 consent agreement requires 'the consent of the Siegels' before the Shusters can enter into a 'settlement of their termination rights with DC.'"  Docket No. 243 at 3.<br><br>"Defendants also concede the 2008 consent |

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

| | | |
|---|---|---|
| | agreement as violating the Copyright Act.). | agreement is a contract between the Shusters and Siegels to 'jointly conduct settlement negotiations,' … meaning it is *not* a privileged communication, *it is a contract*…." Docket No. 243 at 2. |
| "Toberoff never told Judge Larson that an *agreement* existed, complete with signatures of the various parties…." Mot. 8. | | "Judge Larson … never saw defendants' admission or their briefing in this new case in which they conceded the agreement was … a contract among the heirs…." Docket No. 225 at 7-8. |
| "Judge Larson, moreover, *never* reviewed the Consent Agreement, *never* saw Toberoff's letter describing the contents of the agreement …, and *never* had before him defendants' admissions in this case that their agreement continues to exist—years after the mediation for which it was allegedly created." Mot. 8. | "Judge Larson *never* reviewed the underlying consent agreement or even the letter describing it." Docket No. 160 at 25. | "In so ruling, Judge Larson:<br>• *never* examined the 2008 consent agreement itself;<br>• *never* examined Toberoff's letter disclosing it and describing its terms;<br>• *never* had before him DC's new claims for relief at issue in this case; …<br>• and *never* had before him defendants' admission that the 2008 consent agreement remains in force today–years *after* the parties' mediation ended." Docket No. 225 at 5. |
| "Judge Larson accepted Toberoff's | "Judge Larson denied DC's motion on the basis of | "Judge Larson denied DC's motion to compel on |

| | | |
|---|---|---|
| 'characterization of [the agreement] as a privileged document, as an officer of the court....'" Mot. 8. | 'Toberoff's characterization of it as a privileged document, as an officer of the court.'" Docket No. 160 at 25. | the basis of Toberoff's description of the document ..., and his 'characterization of it as a privileged document, as an officer of the court.'" Docket No. 225 at 11. |
| "Their [the Defendants'] testimony made clear that Toberoff's characterization of the 'Withheld Document' to Judge Larson (and to Judge Zarefsky and to this Court) was not accurate." Mot. 8. | | "Judge Larson knew nothing of the nature or substance of the consent agreement—the parties referred to it only as the 'Withheld Document' or the 'Privileged Document.'" Docket No. 225 at 10. |
| "Peary and Toberoff both testified that the Consent Agreement remains in effect to this day ... despite Toberoff's claims that it was entered into 'solely for the purposes of the parties' settlement mediation, which commenced on May 8, 2008.'" Mot. 8-9. | "DC's discovery requests ... are directed to consent agreements created independently of mediation and that continue to exist to this day." Docket No. 160 at 18.<br><br>"Defendants do not dispute that these agreements remain in effect today and continue to impair the Shuster heirs' freedom to contract—months and years after the parties' mediation session ended." Docket No. 171 at 1. | "[D]efendants' admi[t] that the 2008 consent agreement remains in force today—years *after* the parties' mediation ended." Docket No. 225 at 4.<br><br>"[T]he consent provision *remains in effect to this day*, even though the parties' mediation ended years ago and the statutory exclusivity period runs until 2013." Docket No. 243 at 3. |
| "It is also obvious from defendants' testimony that the Consent Agreement is *not* a summary of privileged legal advice, but involved a *quid pro quo* business arrangement in which the Siegels bind | The Consent Agreement is a "business agreement[] concerning the disposition of monetary interests and rights...." Docket No. 160 at 24. | "[T]here was never any basis for [Defendants] to characterize ... the contract as privileged" because it does not "communicate legal advice or analysis." Docket No. 243 at 8. |

| | | |
|---|---|---|
| themselves to pay the Shusters money." Mot. 9. | | |
| "Toberoff's untested assertion 'as an officer of the court' that the Consent Agreement is privileged should no longer be given conclusive, dispositive effect." Mot. 9. | "[N]o further basis exists to accept Toberoff's representation to Judge Larson about the contents of the document…." Docket No. 160 at 26. | "[D]efendants' brief boils down to a request that the Court trust their assurance that the 2008 agreement … is not unlawful or unethical and contains no non-privileged terms. Defendants' admission in their opposition brief and prior filings in this case demonstrate why their request should be rejected…." Docket No. 243 at 1. |

DC's egregious recycling of its prior arguments is perhaps best demonstrated by DC's lengthy quote from oral argument before Judge Larson. Mot. 7. DC presents this four-year-old, half-page quotation as something new, adding italics and underlines for emphasis. *Id.* Magistrate Zarefsky relied on this <u>very same quote</u> in his original order denying DC's motion to compel the Consent Agreement – in fact, the quote is actually reprinted in its entirety in the Magistrate's order, upheld by this Court. Docket Nos. 209 at 8-9; 252.

DC's second argument – that "defendants waived any privilege that may have existed by selectively disclosing facts about the agreement" (Mot. 7) – is also recycled, violating Local Rule 7-18, and was likewise already rejected. *See* Docket Nos. 160 at 24 n.7; 209 at 9 ("Plaintiff first says that, by describing the agreement, Defendants have waived any attorney-client privilege, but that argument necessarily was implicitly rejected by Judge Larson. This Court agrees with that rejection."); 252. The purportedly "new" facts disclosed (addressed below) are exactly the types of general descriptions DC pointed to previously that were found ***not*** to waive privilege. *See* Docket No. 209 at 10 ("Defendants do not waive the privilege by defending themselves."); *In re Katz Interactive Call Processing Patent Litig.*, 2012

WL 3060578, at *5 (C.D. Cal. Jan. 12, 2012) (rejecting "motion for reconsideration [that] simply repeats that position more explicitly"); *Hunter v. U.S. Dept. of Educ.*, 2008 WL 4820778, at *3 (C.D. Cal. Nov. 4, 2008) (rejecting reconsideration motion that "simply repeats allegations … that were previously rejected"); *Grant v. Unifund CCR Partners*, 2012 WL 3186601, at *1 (C.D. Cal. Aug. 6, 2012) (denying motion for reconsideration and noting "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion") (citing L.R. 7-18).

## II.   DC'S MOTION IS SUBSTANTIVELY FLAWED

### A.   <u>The Consent Agreement Is Privileged</u>

DC's rehashed arguments as to why the Consent Agreement is supposedly not a privileged document are just as wrong today as they were the previous three times they were rejected. *See* Docket Nos. 160; 171; 209; 225; 243; 252.

#### 1.   <u>The Consent Agreement Is Clearly Covered By The Attorney/Client Privilege And The Work-Product Privilege</u>

The attorney-client privilege protects confidential attorney-client communications from disclosure. Fed. R. Evid. 501; *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The privilege encompasses documents that reveal, involve or implicate legal advice, litigation strategy or the litigation motives of a party. *Id.* at 129. The Consent Agreement constitutes a confidential communication among the heirs and their counsel, reflects their counsel's legal advice to his clients, and discloses legal strategies regarding settlement of their termination interests with DC. Accordingly, it is absolutely privileged. *See United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).

The Consent Agreement is also protected by the work product doctrine, which Defendants previously asserted (Docket No. 160 at 4; 231 at 14) and which DC simply ignores in its brief. Fed. R. Civ. P. 26(b)(3)'s work product doctrine "protects 'from discovery documents and tangible things prepared by a party or his

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

representative in anticipation of litigation.'" *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004) (citation omitted). "[T]o qualify … documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *Id.* at 907. The Consent Agreement was prepared during the course of the *Siegel* litigation by the Siegels' and Shusters' counsel for the purposes of global settlement of the *Siegel* case and related potential litigation. It is obviously protected by the work-product doctrine.

DC argues that, even if the Consent Agreement was created for purposes of litigation, it is also a "business arrangement" that "reflects a contract between [the Siegels and Shusters]." Mot. 9. DC's self-serving characterization is circular, given that it is solely because of this litigation that the Siegels and Shusters arrived at their joint settlement strategy, which is not "business." Moreover even if DC's mischaracterization were accurate, it does not defeat privilege. When dealing with "dual purpose" documents (*i.e.*, documents with both a litigation and non-litigation purpose), it does not matter "whether litigation was a primary or secondary motive behind the creation of a document." *In re Grand Jury,* 357 F.3d at 908. Rather, documents are protected "when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194 (2nd Cir.1998)). *Aldman*, adopted by the Ninth Circuit in *In re Grand Jury*, *supra*, recognized that "[t]he fact that the materials serve other functions apart from litigation does not mean that they should not be protected by work-product immunity if they reveal directly or indirectly the mental impressions or opinions of the attorney who prepared them." 134 F.3d at 1202 (citation omitted).

Consequently, DC's argument that the Consent Agreement is a "business arrangement" (Mot. 7) misses the point. The Consent Agreement's "litigation purpose" (setting forth the conditions and strategy under which the Siegels and

Shusters would settle with DC) "so permeates any non-litigation purpose that the two purposes cannot be discretely separated," entitling the document to work product protection. *In re Grand Jury*, 357 F.3d at 909-10.

### 2. There Was No "Superboy" *Quid Pro Quo*

DC willfully attempts to mislead the Court with false claims that the Consent Agreement was motivated by a *quid pro quo* between the Shusters and Siegels regarding Superboy. Mot. 9. DC's allegations about the Shusters' and Siegels' motivations are supported by nothing beyond DC's own pleadings. As the record indicates, the Consent Agreement "was entered into for the … purpose of negotiating during settlement efforts," not for any other reason. Docket No. 209 at 5-6. Peary unequivocally testified that neither he, his mother, nor the Shuster Estate, have "ever had any agreement with the Siegels regarding Superboy." PD Ex. O at 814:15-19.

Moreover, even if Superboy had motivated the Consent Agreement (it did not), that would not defeat work product protection, which, as noted above, applies "when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation…." *In re Grand Jury*, 357 F.3d at 908 ("The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation."). What matters is that the Consent Agreement was created in anticipation of litigation by counsel for co-parties, reflects the parties' strategy and counsel's mental impressions of the case, and would not have been created but for the litigation.

### 3. DC's *Ad Hominem* Attacks Are Irrelevant And Baseless

DC again attempts to obscure the meritless nature of its recycled motion with baseless *ad hominem* attacks on their long-time opposing counsel, Mr. Toberoff. Mot. 9. Throughout this case DC and its counsel have improperly engaged in this transparent tactic to distract from the merits and elicit bias; such gamesmanship should no longer be tolerated. DC first argues that Mr. Toberoff's "assertion as an

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

officer of the court that the Consent Agreement is privileged can no longer be given

conclusive, dispositive effect." *Id.*  This is completely misguided.

**First,** Mr. Toberoff's representations were never given "dispositive" effect.

DC consistently argued (as set forth above) that the Consent Agreement was ***not***

privileged, and Defendants (both here and in *Siegel*) argued that it was privileged, not

based on Mr. Toberoff's "assertions," but upon the nature of the document, the

document's creation for purposes of litigation settlement, and binding case law.

Docket Nos. 160 at 1-3, 11-27, 50-62; 244 at 1-12; 231 at 1-15.  Three judges,

including this Court, consistently agreed with Defendants.  Docket Nos. 209; 252;

502-1 at 29:2.

**Second**, DC does not, and cannot, provide any cogent support for its reckless

assertion that Mr. Toberoff's representations cannot be trusted.  A full rebuttal of

DC's false accusations will be found in Defendants' Opposition to DC's Motion For

An Evidentiary Hearing And Sanctions.  Docket No. 500.  Here, Defendants briefly

address DC's "examples:"

- DC asserts that Mr. Toberoff misled the Court regarding correspondence
  between Laura Siegel Larson and her half-brother, non-party Michael
  Siegel (Mot. 10), but cites only its own false briefing.
- DC further asserts that Mr. Toberoff sought to suppress a November 2001
  email because it allegedly contradicted his claim that he had not contacted
  Michael Siegel until October 2002, misleadingly citing a motion that
  referred to contact with the "Siegel family."  Mot. 10.  **Mr. Toberoff never
  made that claim**.  In the motion cited by DC, the "Siegels" were *explicitly
  defined* as Laura Siegel and her mother Joanne, not Laura's half-brother
  Michael who did not exercise termination rights.  Docket No. 145-1 at 5.
- DC recklessly accuses Mr. Toberoff of lying about when he came into
  possession of the November 2001 Email.  Mr. Toberoff did not have the e-
  mail until 2011, when Michael Siegel's former attorneys sent him an

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

"electronic archive" of their files, and DC has *never* presented any evidence refuting this. *See* Docket Nos. 457; 480.

- DC asserts that Mr. Toberoff displayed a "lack of candor" during oral argument when he stated that Jerry Siegel and Joe Shuster were paid $130 when they initially sold their rights to Superman to DC. Mot. 10. But the record is plain that this is entirely accurate, and DC did not contest the fact during its summary judgment briefing. Docket No. 491-1 ¶3. As explained in prior briefing, the additional payments made by DC to Siegel and Shuster were for (a) later works sold to DC, (b) the settlement of lawsuits, and (c) as a public-relations measure in 1975. Docket No. 478 at 3-4.

- DC falsely asserts that Mr. Toberoff "misle[d]" the U.S. Copyright Office (Mot. 10-11) when in fact Mr. Toberoff's representations to the U.S. Copyright Office were complete, accurate and comported with the applicable regulations of the Register of Copyrights. 37 C.F.R. § 201.10.

- DC grossly mischaracterizes the Ninth Circuit in stating that "the Ninth Circuit "commented on [Toberoff's] disregard for his ethical duties" (Mot. 11), when the Circuit expressly stated that such allegations were "not before this Court." *In re Pac. Pictures*, 679 F.3d 1121, 1124 (9th Cir. 2012).

- DC also falsely claims the Ninth Circuit held that Mr. Toberoff "improper[ly] blanket[ed] business communications with claims of privilege" (Mot. 11), when the opinion expressly stated that "[b]ecause no one challenges whether these communications would have been privileged … we do not address that issue." *Pacific Pictures*, 679 F.3d at 1126 n.4.

- DC falsely asserts that in 2008 an Ohio federal court found that Mr. Toberoff improperly resisted discovery. Mot. 11. In actuality, and as Magistrate Zarefsky noted in response to DC's false argument, the Ohio Court upheld Mr. Toberoff's privileged assertions as to the vast majority of documents at issue. Docket No. 378 at 4-5.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

## B.   Defendants' Depositions Did Not Waive Privilege

DC's argument that Ms. Larson and Mr. Peary waived privilege over the Consent Agreement by "selective[ly]" testifying (Mot. 2, 7, 11-15) about its contents is both (a) precluded by its agreements at the depositions that such testimony would **not** constitute a waiver of privilege and (b) legally erroneous.

Throughout both depositions, Mr. Toberoff repeatedly objected to questions about the Consent Agreement's contents and substance, instructing his clients not to answer questions that would waive the attorney-client, work product, and joint-interest privileges.  *See, e.g.*, PD, Ex. O at 801:8-12 ("Mr. Toberoff:  I instruct you not to answer.  The Document has been held to be privileged and off limits and they can't ask you questions about the contents of the document."), 802:4-7, 802:13-14, 802:21, 803:3-4, 803:13-804:1, 812:406, 817:8-10, 818:10-11; Ex. P at 831:19-20, 831:1-10, 836:9-12, 841:5-8.  DC's counsel, Mr. Petrocelli, was well aware of these objections and their import at the time of the depositions.  *See, e.g.*, PD, Ex. O at 815:20-24 ("[Mr Petrocelli]:  Okay.  Okay.  Would you agree that I don't need to ask any more questions about his knowledge about the consent agreement because you're – you're going to assert the same objections?").

The handful of instances in which Ms. Larson and/or Mr. Peary did respond to a question related to the Consent Agreement did not waive privilege over any aspect of that document, let alone "effect[] a broad privilege waiver over the entire document," as DC suggests.  Mot. 11.

### 1.   DC Agreed That The Testimony Would Not Waive Privilege

DC and Defendants explicitly agreed that allowing Ms. Larson and/or Mr. Peary to answer a whole host of questions about the Consent Agreement would not constitute a waiver.  *See, e.g.*, PD, Ex. O at 812:13-21, 813:25-814:11; Ex. P at 831:1-10, 832:23-833:9.  Remarkably, much of the testimony DC now tries to leverage to its advantage was given pursuant to such no-waiver agreements.  For example, DC repeatedly argues that Mr. Peary's testimony "that the agreement does

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

not entitle the Shusters to share in the Siegels' recovery from the Siegel Superboy

case" constitutes a waiver (Mot. 11), but that testimony was permitted only in

exchange for DC's no-waiver agreement:

> [Mr. Petrocelli]:  Does the consent agreement – under the consent agreement as you understand it, would the Shuster's interest's share in any proceeds or recovery attributable to Superboy?
> [Mr. Toberoff]:  This is the same question. Do we have the same agreement?
> [Mr. Petrocelli]:  We do.  It's not the same question because I limited it to the consent agreement.
> [Mr. Toberoff]:  Do we have the same agreement that I will allow him to answer but that will not be deemed --
> [Mr. Petrocelli]:  Yes.
> [Mr. Toberoff]:  -- a waiver of the privilege as to any other questions or the document?
> [Mr. Petrocelli]:  Yes.
> [Mr. Toberoff]:  You can answer.  PD, Ex. O at 813:21-814:13.

Mr. Peary's testimony that the Consent Agreement requires the Siegels and Shusters

to both consent to "making a deal with DC" (Mot. 12) was based upon a similar no-

waiver agreement.  *See* PD, Ex. O at 807:17-19 ("Mr. Toberoff:  Actually, I'll let you

answer that question without waiver of any privilege that could apply.").

Other testimony was similarly provided only after DC expressly agreed to

Defendants' reasoning that such testimony would not waive privilege.  This is true,

for example, of Ms. Larson's testimony that the Consent Agreement does not entitle

Mr. Toberoff to any additional compensation (Mot. 12):

> [Mr. Petrocelli]:  Okay.  Is there anything in the 2008 consent agreement that would trigger additional remuneration to Mr. Toberoff based on a transaction of the Siegel rights?
> [Mr. Toberoff]:  I -- I will allow you to answer as to -- because what is not in the agreement would not be privileged.  Did I say that right?
> [Mr. Petrocelli]:  **You did**.

Exhibit P at 839:15-22 (emphasis added).  DC's counsel, Mr. Petrocelli affirmatively

sought such no-waiver agreements throughout the depositions.  *See, e.g.*, PD, Ex. P at

836:2-3 ([Mr. Petrocelli]:  If I agree that it's not a waiver, do you continue to instruct

on that question?); *id.* at 832:23-833:9 (Mr. Petrocelli asking "[would] you decline to

allow the witness to answer even were I to agree that it would not constitute a waiver

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

1  of any privilege?").

2       These no-waiver agreements, which DC's counsel deliberately exclude from

3  its motion to deceive the Court, are binding on DC.  *See, e.g.*, *Akamai Technologies,*

4  *Inc.,* 2002 WL 1285126, at *3 ("[A]n agreement between the parties that disclosure

5  will not result in waiver [of attorney-client privilege and work product protection] as

6  between the contracting parties is enforceable."); *United States v. Greenstein*, 2010

7  WL 3222533, at *3 (W.D. Wash. Aug. 9, 2010) ("Parties may generally circumvent

8  this default [waiver] rule by affirmatively agreeing to a more narrow waiver.")

9  (vacated on other grounds); *Ames v. Black Entertainment Television,* 1998 WL

10  812051 (S.D.N.Y. 1998) (enforcing agreement made during deposition allowing

11  general counsel to answer certain questions without waiving attorney-client privilege

12  with respect to communications on same subject matter); *Dowd v. Calabrese,* 101

13  F.R.D. 427, 439-440 (D.D.C. 1984) (enforcing stipulation at deposition that

14  testimony on a particular subject would not give rise to waiver of attorney-client or

15  work product privilege).

16       DC's efforts to silently renege on these binding and enforceable no-waiver

17  agreements, which Defendants entered into as part of a good faith effort to facilitate

18  the depositions and avoid disputes, must be rejected.  Even putting aside the no-

19  waiver agreements, however, Defendants' testimony still would not waive privilege.

20  The bulk of the testimony provided pursuant to these agreements merely provided

21  information that DC already knew from prior briefings that Magistrate Zarefsky held,

22  and this Court affirmed, did not waive privilege.  Docket Nos. 209; 252; *see also*

23  *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987); Mot. at 12

24  (complaining that Peary testified that the Consent Agreement "bars the Siegels or

25  Shuster from making a deal with DC without the consent of the other").

26       2.    The Narrow Testimony Did Not Waive Privilege

27       The few instances DC cites where Defendants answered superficial questions

28  about the Consent Agreement absent an express no-waiver agreement did not, as a

16

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

1  matter of law, waive privilege.

2      DC argues that privileged is waived because Mr. Peary stated that the Consent

3  Agreement was titled "Superman Agreement," and Mr. Peary and Ms. Larson

4  acknowledged that it was signed by certain Defendants in this case.  *See* Mot. 12.

5  However, this sort of basic information unrelated to the substance of the agreement

6  does not waive privilege.  *See Chicago Bd. Options Exch., Inc.,* 2008 WL 3285751,

7  at *4 (no waiver where "superficial information was enunciated in deposition

8  testimony"); *Coorstek, Inc. v. Reiber*, 2010 WL 1332845, at *8 (D. Colo. Apr. 5,

9  2010) (no waiver where "information given … is too vague to constitute a waiver of

10  the attorney-client privilege") (citation omitted); *Apex Mun. Fund v. N-Group Sec.*,

11  841 F. Supp. 1423, 1430 (S.D. Tex. 1993) ("The other alleged examples of waiver do

12  not constitute selective disclosures either because they revealed only the general

13  nature of attorney conversations, but not the substance of the conversation….").

14  Indeed, such basic information as a document's title and the parties involved are

15  often listed on a privilege log.  Docket No. 209 at 9 ("After all, a party is required to

16  disclose something of the substance of an agreement just to list it in a privilege log.").

17      DC also argues that Mr. Peary's testimony that the Consent Agreement

18  remained in effect somehow waived privilege.  Mot. 11.  However, DC ***already knew***

19  ***this*** (along with other information DC now claims waived privilege such as who

20  signed the Consent Agreement) from Defendants' prior briefs, which Magistrate

21  Zarefsky held did not disclose enough information to waive privilege.  *See* Docket

22  No. 243 at 3 (Defendants "do not dispute the consent provision *remains in effect to*

23  *this day*.") (emphasis in original); Docket No. 160 at 24.  A party "does not waive the

24  privilege by stating facts that outsiders already know or could deduce."  *Buljubasic*,

25  808 F.2d at 1268; *see also Hebbard v. City of Dover*, 2007 U.S. Dist. LEXIS 59966,

26  at *8 (D.N.H. Aug. 13, 2007) ("[C]onfirmation to a reporter of what the reporter

27  already knew is not sufficient to waive the privilege allowed the contents of the

28  document….").  Magistrate Zarefsky and this Court have both previously rejected

DC's arguments that Defendants waived privilege through these sorts of minimal disclosures about the Consent Agreement.  Docket Nos. 209 at 9-10 ("[T]he Court will not infer intent [to waive] simply by the description of the agreement here."), 252.  Magistrate Zarefsky also duly noted, and this Court affirmed, that Defendants are permitted to defend themselves against DC's wild accusations by limited disclosures, without waiver.  Docket Nos. 171 at 1; 209 at 10 ("Defendants do not waive the privilege by defending themselves"); Docket No. 252.

3.     DC's Other Arguments Fail As A Matter Of Law

DC tries to get around the case law and its own no-waiver agreements by arguing that limited testimony about what is *not* in the Consent Agreement waives privilege because it supposedly allows DC to infer what *is* in the Consent Agreement.  Mot. 13-15. This is nonsense.  First, the cited testimony about what is *not* in the Consent Agreement (*i.e.*, that there is no Superboy *quid pro quo*) was given pursuant to explicit no-waiver agreements, and also merely provided information that DC already knew.  *See* PD, Ex. O at 813:21-814:1-13; Ex. P at 831:21-832:18 (Mr. Petrocelli:  "I'll make that [no waiver] agreement.").  The remaining cited testimony explicitly had nothing to do with the Consent Agreement, and could not therefore waive privilege over that document.  *See* Mot. at 13-14 (complaining that "Toberoff permitted Peary to answer whether the Shusters have an agreement with the Siegels *other than* the Consent Agreement.").

Second, courts reject this sort of "waiver-by-inference" argument.  *See New Jersey v. Sprint Corp*, 258 F.R.D. 421, 428 (D. Kan. 2009) (rejecting waiver where "[a]n inference would have to be made" to find that deponent disclosed any privileged information).  Disclosure of what is not in the agreement does not disclose what is in the agreement:  saying that there is no Superboy "*quid pro quo*" or that there are no other agreements between the Siegels and Shusters (the two non-disclosures hyped by DC, Mot. 13-14) tells DC nothing about the actual contents or substance of the Consent Agreement.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

DC also argues that Defendants' briefing somehow waived privilege when it noted that "Ms. Larson and Mr. Peary *both* testified that the Shusters have no interest whatsoever in the Siegels' Superboy termination or Superboy litigation."  Mot. at 13, *citing* Docket No. 495 at 10.  However, this testimony was, once again, provided pursuant to DC's explicit no-waiver agreements, and citing to it therefore cannot waive privilege.  *See* PD, Ex. O at 813:21-814:1-13; Ex. P at 831:21-832:18.  DC's related complaint that Defendants' briefs said "nothing" about Superman is nonsensical given that the focus of DC's misguided *quid pro quo* theory is Superboy.

Perhaps recognizing the weakness of its waiver arguments, DC lastly attempts to shift the focus to the supposed importance of the Consent Agreement to its case.  Mot. 13-15. ("The Superboy *quid pro quo* is at the heart of DC's First Claim….").  However, the attorney-client, work product, and joint interest privileges do not hinge upon how badly the other party wishes to get its hands on the privileged materials in question.  Moreover, the Court's grant of summary judgment to DC on its First and Third Claims (Docket No. 509) removes and moots DC's supposed need to obtain an agreement it claims is relevant to proving those claims.

**C.**    **There Was No Waiver Of Privilege Pursuant To Fed. R. Evid. 612**

DC attempts to argue that Defendants waived privilege over the Consent Agreement under Fed. R. Evid. 612 because Mr. Peary reviewed the document prior to his deposition.  However, as DC's own cases admit, "not every time a witness looks at any document in preparation" for a deposition is privilege waived.  *In re Comair Air Disaster Litigation*, 100 F.R.D. 350, 353 (D.C. Ky. 1983) (quotations omitted); Mot. 17.  Rather, under Rule 612, privilege is waived only when all three of the following requirements are met:  (1) "the witness must use the writing to refresh his memory;" (2) "the witness must use the writing for the purpose of testifying;" and (3) "the court must determine that production is necessary in the interests of justice." *United States ex rel. Bagley v. TRW, Inc.* ("*Bagley*"), 212 F.R.D. 554, 565-66 (C.D. Cal. 2003).  DC does not even try to meet these requirements.

*First*, DC does not, and cannot, show that Mr. Peary actually "use[d] the writing to refresh his memory." *Bagley*, 212 F.R.D. at 565. *Jos. Shlitz Brewing Co. v. Muller & Phipps (Hawaii), Ltd.*, 85 F.R.D. 118, 120 (W.D. Mo. 1980) is instructive: the deponent admitted that he had "looked at" his correspondence file, consisting of 39 documents, before testifying, but the court held that this did not constitute "actual use" of the documents to refresh the deponent's memory since the deponent had not "studied" the documents. Here, Mr. Peary explained that his "review" of the Consent Agreement did not involve specifically picking that document out and "studying" it; rather, he "brought out [his] folder" on the case and "flipped through documents, just look[ing] at them." PD, Ex. O at 792:2-11. It was "just a cursory review of what [he] had in his" case folder. *Id.* He "didn't read [the consent agreement]," he "just scanned -- the pages." *Id.* at 791:6-7.

Although Mr. Peary generically stated that he brought a group of documents, which included the first page of the Consent Agreement, to California, he never testified that this single page actually refreshed his recollection as to anything he actually testified about, which is required to affect a waiver. PD, Ex. O at 794:18-19; *see Bagley*, 212 F.R.D. at 566 (party "conceded that it refreshed his recollection regarding matters about which he testified"). This stands in stark contrast to the cases cited by DC where waiver was found. *See e.g., United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 26 (N.D. Cal. 1985) (party "testified that … th[e] documents refreshed his recollection about some of the facts involved in this case"); *S&A Painting Co. v. O.W.B. Corp.*, 103 F.R.D. 407, 408 (W.D. Penn. 1984) (witness directly "referr[ed] to his [privileged] notes during deposition").[1]

*Second*, DC does not, and cannot, show that Mr. Peary actually used the

---

[1] Even if Mr. Peary's statement were misconstrued to waive privilege (which it does not, in light of the other two requirements under Rule 612's test), it would only do so as to the first page of the Consent Agreement. "Case law supports disclosure of only those portions of material that were actually used to refresh recollection," and courts should therefore excise portions of a writing "not used to refresh recollection." *S&A Painting Co.*, 103 F.R.D. at 410.

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

Consent Agreement "for the purposes of testifying." *Bagley*, 212 F.R.D. at 566. Under Rule 612, review of writings <u>must</u> "have an impact upon the testimony of the witnesses…." *Nutramax Lab., Inc. v. Twin Lab., Inc.*, 183 F.R.D. 458, 469 (D. Md. 1998) (citations omitted). During his deposition, Mr. Peary testified only as to the most rudimentary aspects of the Consent Agreement, such as its title and the parties involved, all of which he would have known independently of any "look" at the Agreement. *See* Mot. 11-12; PD, Ex. O at 797:15-25, 790:19-791:4; *see also In re Rivastigmine Patent Litig.*, 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007) (refusing to find waiver where witness "had the factual information about which she testified from the outset"); *compare Bagley*, 212 F.R.D. at 566.

Mr. Peary did not testify to any details or specifics that would have required review of the Consent Agreement, nor does DC identify any such testimony. To the contrary, DC complains that Mr. Peary was "blocked" by his attorney (on the basis of the privilege upheld by three judges) from answering more substantive questions. Mot. 12-13. When Mr. Peary was asked for specifics and permitted to answer, his memory often failed him – precisely because he had not meaningfully reviewed the Consent Agreement prior to his deposition. *See, e.g.*, PD, Ex. O at 791:6-9 (explaining that he didn't read the Consent Agreement prior to his deposition and that, as a result, "I don't recall …. I don't recall the signature page.").

Because the "first two elements are not met, then the inquiry ends, as Rule 612 is inapplicable." *Nutramax Lab., Inc.*, 183 F.R.D. at 468. But DC also fails to meet the third requirement of Rule 612 – that production be necessary in the interests of justice. This "third element requires the court to apply a balancing test" between the policies underlying privilege and the need for disclosure. *Id.*

DC again asserts that it needs the Consent Agreement because it is supposedly "centrally at issue" in its "pending summary judgment motion" regarding its First and Third Claims. Mot. 17. As the Court has now ***granted*** DC's motion, this argument naturally fails and is moot. Furthermore, the third prong of Rule 612 does not turn on

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION

a document's "centrality" to a case or claim, but on whether the document is needed for "effective cross-examination and impeachment."  *Nutramax Lab., Inc.* at 468; *22.80 Acres of Land*, 107 F.R.D. at 26.  DC did not need, and still does not need, the Consent Agreement to cross-examine Mr. Peary on his answers to superficial questions about its title or who signed it, nor does DC suggest that he was inaccurate in answering these questions.  *See In re Rivastigmine Patent Litig.*, 486 F. Supp. 2d at 244 (refusing waiver where "the accuracy of [witness's] memory" was not "a central concern").

There is, however, a strong need to maintain privilege over the document.  The litigation over Superman is ongoing and the potential for settlement is ever present.  Were this privileged document laying out the Siegels' and Shuster Executor's privileged settlement strategy produced, they would be substantially prejudiced in any future settlement negotiations.  *Compare 22.80 Acres of Land*, 107 F.R.D. at 26. (finding no harm in waiving privilege over an appraisal report because the "negotiation phase" had been completed).  The balance therefore decisively tilts against any waiver.  The Consent Agreement remains privileged.

## CONCLUSION

Plaintiff DC Comics' Motion for Reconsideration should be denied.

Dated:  November 9, 2012

RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR RECONSIDERATION