Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br>and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER GRANTING PLAINTIFF DC COMICS PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS, AND FOR AN EVIDENTIARY HEARING**<br><br>*Declaration of Pablo Arredondo and [Proposed] Order filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:   December 17, 2012<br>Time:  1:30 p.m.<br>Place:  Courtroom 11 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Mark Warren Peary, as personal representative of the estate of Superman's co-creator Joseph Shuster (the "Shuster Executor"), Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel, will and hereby do move to vacate the Court's October 17, 2012 order (Docket 507; "Order") granting plaintiff DC Comics' ("DC") Motion For Partial Summary Judgment On Its First And Third Claims.

This motion is made on the grounds that DC engaged in discovery misconduct that prevented Defendants from fully and fairly developing their case in discovery and thereafter presenting their case to the Court on summary judgment. DC withheld responsive, highly-relevant, non-privileged documents, ignored key document custodians, and searched for and produced relevant documents only if and when DC decided to use those documents in its own briefs. There is every reason to believe that DC continues to withhold other responsive documents and willfully ignores other key document custodians. Under the relevant case law and the guiding principles of Fed. R. Civ. P. 60(b)(3), from which the applicable legal standard is borrowed, DC's misconduct warrants vacating the summary judgment Order in its favor.

This motion is being filed in the alternative to a concurrent motion for entry of judgment pursuant to Fed. R. Civ. P. 54(b) on DC's First and Third Claims. If the Court enters a Rule 54(b) judgment on DC's First Claim, this motion need not be addressed at this time.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 25, 2012. This motion is based on the attached memorandum of points and authorities, the pleadings and records on file in this action, such additional authority and argument as may be presented in any reply and

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

1  at the hearing on this motion, and such other matters of which this Court may take

2  judicial notice.

3  Dated:  November 12, 2012          RESPECTFULLY SUBMITTED,

4                                     /s/ Marc Toberoff
                                       Marc Toberoff
5

6                                      TOBEROFF & ASSOCIATES, P.C.
                                       Attorneys for Defendants Mark Warren Peary,
7                                      as personal representative of the Estate of
                                       Joseph Shuster, Jean Adele Peavy, and Laura
8                                      Siegel Larson, individually and as personal
                                       representative of the Estate of Joanne Siegel
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................... 1

BACKGROUND ............................................................................................... 3

    A.    The 1992 Agreement ................................................................. 3

    B.    Defendants Serve Discovery Targeted At The 1992 Agreement .......... 3

    C.    DC Withholds Documents Related To The 1992 Agreement ............. 4

ARGUMENT ..................................................................................................... 8

I.    THE ORDER SHOULD BE VACATED DUE TO DC'S DISCOVERY MISCONDUCT ............................................................................................. 8

    A.    The Legal Standard .............................................................. 8

    B.    DC Engaged In Discovery Misconduct ................................... 9

    C.    Defendants Were Prevented From Fully And Fairly Presenting Their Case ....................................................................... 12

    D.    The Court May Order An Evidentiary Hearing To Determine The Full Extent Of DC's Misconduct ......................................... 15

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Abada v. Charles Schwab & Co., Inc.*,
   127 F. Supp. 2d 1101 (S.D. Cal. 2000) ..................................................... 8

*Alexander v. California Dept. of Corr.*,
   2010 WL 4006362 (E.D. Cal. Oct. 12, 2010) .......................................... 8

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996) .................................................................. 8

*Anderson v. Cryovac, Inc.*,
   862 F.2d 910 (1st Cir. 1988) ............................................................. 8,9,12

*Bunch v. United States*,
   680 F.2d 1271 (9th Cir. 1982) ............................................................... 12

*Carrillo v. Schneider Logistics, Inc.*,
   2012 WL 4791614 (C.D. Cal. 2012) ...................................................... 11

*Corcoran v. McCarthy*,
   2010 S.D. 7 (S.D. 2010). ...................................................................... 13

*In re Independent Serv. Orgs. Antitrust Litig.*,
   168 F.R.D. 651 (D.Kan. 1996) .............................................................. 11

*In re M/V Peacock on Complaint of Edwards*,
   809 F.2d 1403 (9th Cir. 1987) ........................................................... 8,12

*In re Staff Inv. Co.*,
   146 B.R. 256 (Bankr. E.D. Cal. 1992) ............................................... 8,9,11

*In re Toyota Motor Corp. Sec. Litig.*,
   2012 WL 3791716 (C.D. Cal. 2012) ...................................................... 11

*In re Vioxx Products*,
   489 F. Supp. 2d 587 (E.D. La. 2007) .................................................... 13

*Jones v. Aero/Chem Corp.,*
    921 F.2d 875 (9th Cir. 1990) ................................................................... 8,13,15

*MGA Entm't Inc. v. Nat'l Products Ltd.,*
    2012 WL 182158 (C.D. Cal. 2012) ....................................................... 11

*Rozier v. Ford Motor Co.,*
    573 F.2d 1332 (5th Cir. 1978) ............................................................. 12,14

*Schultz v. Butcher,*
    24 F.3d 626 (4th Cir.1994) ...................................................................... 9

*Seaboldt v. Pennsylvania R. Co.,*
    290 F.2d 296 (3d Cir. 1961) ................................................................... 12

*Square Const. Co. v. Washington Metro. Area Transit Auth.,*
    657 F.2d 68 (4th Cir. 1981) .................................................................... 13

*United States v. One Douglas A–26B Aircraft,*
    662 F.2d 1372 (11th Cir.1981) ................................................................ 9

*Wachtel v. Health Net, Inc.,*
    239 F.R.D. 81 (D.N.J. 2006) ................................................................... 11

*Williams v. New York City Transit Auth.,*
    2011 WL 5024280 (E.D.N.Y. Oct. 19, 2011) ......................................... 11

*Wyle v. R.J. Reynolds,*
    709 F.2d 585 (9th Cir. 1983) .................................................................. 15

**Rules**

Fed. R. Civ. P. 54(b) ...................................................................................... 2

Fed. R. Evid. 60(b)(3) ....................................................................... *passim*

# **INTRODUCTION**

The Court's October 17, 2012 partial summary judgment order (Docket 507; "Order") should be vacated because DC's blatant discovery misconduct prevented Defendants from fully and fairly developing and presenting their case.  The central allegation of DC's First Claim was that a 1992 agreement between DC and Joseph Shuster's ("Shuster") siblings (the "1992 Agreement") revoked and replaced Shuster's venerable pre-1978 Superman grants to DC, and that, accordingly, DC's chain-of-title to Superman rests on the 1992 Agreement.  Defendants' very first set of discovery requests served in 2011 therefore included multiple targeted requests for documents related to (1) the 1992 Agreement and (2) DC's chain-of-title to Superman.  In response to these document requests, DC repeatedly assured Defendants that it had produced all relevant and responsive documents.

Despite these assurances, DC engaged in a pattern of misconduct.  DC's improper actions speak for themselves:  DC withheld highly responsive documents concerning the 1992 Agreement at issue, disclosing such documents only when it wanted to rely on them in summary judgment briefing.

First, DC turned over two letters exchanged between Paul Levitz and Jean Peavy (the "Peavy-Levitz Letters"), both signatories to the 1992 Agreement, just days before filing its motion for partial summary judgment that included the letters as exhibits.

Next, *after* DC had referred to an unproduced document in its opposition to Defendants' summary judgment motion, DC turned over the document only at Defendants' insistence and just *two* business days before Defendants' reply was due.  The withheld 2006 document, written by Warner's Senior V.P. of Legal and Business Affairs, Damon Bonesteel (the "Bonesteel Document"), mentioned the 1992 Agreement, and, for DC's chain-of-title to Superman, it expressly relied on the pre-1978 Superman grants that DC falsely argued had been revoked by the 1992 Agreement.

1

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

Finally, after summary judgment briefing was completed and taken under submission by the Court, DC turned over another three pages written in 2007 by Warner's Associate General Counsel, Donna Josephson (the "Josephson Document"), just *one hour* before DC filed it as part of an improper sur-reply.  This document also referenced the 1992 Agreement, and, in describing DC's chain-of-title to Superman, heavily relied on the same pre-1978 copyright grants that DC claimed were extinguished by the 1992 Agreement.

The Peavy-Levitz Letters, Bonesteel Document, and Josephson Document all go to the heart of DC's First Claim.  DC's selective disclosure of these documents only if and when it chose to use them in its own summary judgment briefs is clear-cut misconduct.  This misconduct denied Defendants the documents in question until just before or after summary judgment briefing, shutting down potentially fruitful avenues of discovery prior to summary judgment.

Based on DC's tactical misconduct there is every reason to believe that DC continues to withhold other highly responsive documents.  DC was forced to admit that it systematically ignores key document custodians when it responds to Defendants' discovery requests, searching them only when it seeks evidence to rebut Defendants' arguments.  *See* Docket 498 at 2-3.  Given DC's improper self-serving search/production strategies, it is almost certain that there are other documents that should have been produced to Defendants.

As a result of DC's discovery misconduct, Defendants were denied key evidence, denied potentially fruitful avenues of additional discovery, and denied access to relevant witnesses and custodians.  Pursuant to Fed. R. Civ. P. 60(b)(3)'s guiding standards and applicable case law, the Court should vacate its Order to ensure that Defendants have a full and fair opportunity to present their case as to DC's First Claim with all the relevant evidence at hand.[1]

---

[1] This motion is being filed in the alternative to a concurrent motion for entry of judgment on the First and Third Claims pursuant to Fed. R. Civ. P. 54(b).  If the Court enters a Rule 54(b) judgment, this motion need not be addressed at this time.

# BACKGROUND

## A.    The 1992 Agreement

In 1992, DC entered into an agreement with Joseph Shuster's siblings. (Docket 460-1 at 31; the "1992 Agreement").  This one-page pension agreement, and its purported effect on DC's chain-of-title to Superman, represents the most significant issue in this case.  DC alleged that the 1992 Agreement revoked and re-granted Shuster's Superman copyrights, and that DC's title to Superman therefore rests on the 1992 Agreement, which is not subject to statutory termination.  Docket 49 ¶¶112-17.  Defendants maintain that the 1992 Agreement had no impact on Superman, to which DC already owned all rights, and merely served to raise a modest pension due Frank Shuster under a 1975 agreement.

The majority of the parties' cross-motions for partial summary judgment, and the entirety of oral argument, were devoted to this issue, as was the Court's recent Order granting DC partial summary judgment as to its First and Third Claims.  *See* Dockets 458, 462, 468, 478, 491, 495, 507.

## B.    Defendants Serve Discovery Targeted At The 1992 Agreement

In 2011, Defendant Mark Warren Peary served his first set of discovery requests on DC.  Given the significance of the 1992 Agreement in this case, Mr. Peary's requests unsurprisingly included a number of requests squarely aimed at the 1992 Agreement and its effect on DC's chain-of-title to Superman:

Request No. 7: All DOCUMENTS that RELATE to the 1992 AGREEMENT.

Request No. 12: All COMMUNICATIONS with third parties that REFER to the 1992 AGREEMENT.

Request No. 14: All DOCUMENTS that describe OR explain YOUR chain-of-title to Superman.

Request No. 27: All DOCUMENTS that support YOUR contention that "[t]he 1992 Agreement thus operated to revoke, rescind, and replace Shuster's prior copyright grants and agreements," found in paragraph 55 of YOUR COMPLAINT.

Request No. 29: All DOCUMENTS that support YOUR contention that "the clear effect of the 1992 Agreement was to revoke and regrant any

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

1   prior copyright grants that could otherwise have been subject to termination," found in paragraph 56 of YOUR Complaint.

2

3   Docket 498-2 at 26-27, 31-34, 50-51, 53-54.

4   To each and every one of these requests, on February 17, 2012, DC responded

5   that it had produced "all non-privileged, responsive documents." *Id.*  Later, during a

6   meet-and-confer on March 16, 2012, DC's counsel reconfirmed that all responsive

7   documents related to the 1992 Agreement had been produced.  Declaration of Pablo

8   Arredondo ("AD"), ¶ 2.

9   **C.    DC Withholds Documents Related To The 1992 Agreement**

10   On June 21, 2012, DC informed Defendants that it was moving for partial

11   summary judgment on DC's First and Third Claims.  AD Ex. A.  On July 6, 2012,

12   five months after DC confirmed that it had produced "all non-privileged, responsive

13   documents," and three months after DC's counsel had re-confirmed that all

14   responsive documents relating to the 1992 Agreement had been turned over, DC

15   produced, without explanation, two new relevant documents.  AD Ex. B.  Why?

16   Because six business days later (on July 16), DC attached both documents to its

17   motion for partial summary judgment.  Docket 460-1 at 33; 460-2 at 227.

18   Both documents were letters between Paul Levitz and Jean Peavy (the "Peavy-

19   Levitz Letters"), signatories to the 1992 Agreement.  AD Ex. C.  One letter, dated

20   October 7, 1992 (five days after the 1992 Agreement was signed), expressly

21   referenced the 1992 Agreement.  AD Ex. C at 6.  The October 7, 1992 letter showed

22   Jean/Frank's lack of negotiating leverage when they signed it.  *Id.* ("As the family of

23   Joe Shuster, we know we deserve more.").  This lack of leverage was because an

24   author's siblings hold no termination rights, and after Shuster's death no one held his

25   termination rights until passage of the 1998 Copyright Term Extension Act.

26   17 U.S.C. § 304(c)(2); Pub. L. 105-298 (1998).

27   The other letter, dated June 8, 1998, showed that the 1992 Agreement was

28   viewed by both parties as an act of charity by DC, not as a negotiated grant of

4

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

valuable Superman copyrights (because DC already owned all such rights).  *Id.* at 7. The June 8, 1998 letter also showed how Jean, far from receiving compensation commensurate with the sale of Superman, struggled to pay rent.  *Id.*

Initially, DC offered no explanation for why these letters were not produced earlier.  AD Ex. B.  When Defendants requested an explanation, DC's counsel stated only that "[t]he two documents in question were found as we finalized the motion for summary judgment DC will file Monday."  AD Ex. D.  Defendants reminded DC's counsel that "DC cannot apply a more rigorous search in preparation for its own filings than it does in complying with its discovery obligations."  AD Ex. E. Defendants also asked for specifics about DC's search efforts, including which custodians of records had been searched and what search terms had been used.  *Id.*

In response to Defendants' requests for assurances, DC's counsel stated both that "I asked our team to conduct an ***exhaustive review*** to confirm there were no other documents" and "I can confirm that we have conducted a good-faith, ***comprehensive search*** for responsive documents pursuant to Rule 34 and have found no other responsive documents requested by defendants in this case."  AD Ex. F (emphases added).  Based on these representations and assurances, Defendants did not seek further relief at that time.  Incredibly, DC now faults Defendants for accepting its unequivocal assurances.  Docket 498 at 3.

On August 20, 2012, Defendants filed their cross-motion for partial summary judgment.  Docket 478.  On August 30, 2012, the Court issued a tentative order granting DC's motion for partial summary judgment.  On September 5, 2012, the Court heard oral argument regarding its tentative order.  As in Defendants' briefing (Docket 462 at 15-16, 478 at 11; 495 at 8), Defendants argued at the hearing that, in addition to the lack of unequivocal language in the 1992 Agreement revoking Shuster's pre-1978 Superman grants, DC/Warner Bros. did not rely on the perfunctory 1992 Agreement for their chain-of-title to the multi-billion dollar Superman franchise.  Docket 489 at 24:15-24, 35:15-22, 39:18-40:4.

5
DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

On September 21, 2012, DC filed its opposition to Defendants' cross-motion (Docket 491) and concurrently filed a declaration of Damon Bonesteel, Warner's Senior Vice President of Legal and Business Affairs.  Docket 491-1.  Mr. Bonesteel's declaration purported to rebut the point made by Defendants at oral argument by stating that "in 2006, in dealing with a foreign government, Warner Bros. directly relied on the 1992 agreement as a grant by the Shuster heirs to DC." *Id.* at ¶3.  DC conspicuously did not attach any documents to support Mr. Bonesteel's declaration, nor had it ever produced such documents.

On September 25, 2012, Defendants wrote to DC requesting all documents relating to the "dealing[s] with a foreign government" that "relied on the 1992 agreement."  AD Ex. G.  Defendants noted that such documents would have been directly responsive to many of Defendants' discovery requests, including their requests for communications with third-parties concerning the 1992 Agreement and documents concerning DC's chain-of-title to Superman. *Id.*; Docket 498-2 at 26-27, 31-34, 50-51, 53-54.

On September 27, 2012, just two business days before Defendants' reply papers were due, DC finally produced for the first time, and without explanation, eleven pages of material dated June 2006 specifically referenced in, but conspicuously not attached to, Mr. Bonesteel's declaration (the "Bonesteel Document").  AD Ex. H.  The previously withheld Bonesteel Document was a communication with a third-party that mentioned the 1992 Agreement, but explicitly relied in 2006 on the pre-1978 Superman grants that DC claimed were supposedly extinguished by the 1992 Agreement.  AD Ex. I.

DC thus filed a misleading Bonesteel declaration stating that it relied on the 1992 Agreement, while failing to attach the actual communication referred to because it showed DC's continued reliance on the very pre-1978 grants DC argued had been cancelled by the 1992 Agreement.  The Bonesteel Document that DC had withheld was directly responsive to Defendants' initial requests for production.

Docket 498-2 at 31 ("Request No. 12: All COMMUNICATIONS with third parties that REFER to the 1992 AGREEMENT.").  Indeed, it is difficult to imagine a more responsive document.

Defendants filed their reply papers on October 1, 2012, including evidentiary objections to Mr. Bonesteel's declaration.  Docket 495, 495-2.  Among these objections, Defendants stated that "the declaration is inadmissible because it purports to describe a communication with third parties that should have long ago been disclosed and turned over to Defendants in discovery."  Docket 495-2 at 3.  After Defendants filed their reply, the Court ordered the matter submitted.  Docket 497.

Three days after the Court ordered the matter submitted, DC produced, on October 4, 2012, again without explanation, *yet another* highly responsive document: a September 10, 2007 communication from Warner's Associate General Counsel, Donna Josephson, to a third party foreign government, mentioning the 1992 Agreement in passing, but again relying on pre-1978 Superman grants (supposedly extinguished in 1992) to establish DC's chain-of-title to Superman (the "Josephson Document").  AD Exs. J, K.  A mere *hour* after producing the Josephson Document to Defendants, DC filed an improper sur-reply under the guise of a "Response" to Defendants' evidentiary objections, attaching the Josephson Document and the Bonesteel Document.  Docket 498-2.  It also attempted to explain away DC's discovery misconduct with false argument that DC's reliance on the 1992 Agreement only arose at oral argument, when Defendants had raised it in October 2011.  *See* Docket 338 ("It defies reason that DC/Warner Bros. would have relied on this [1992 Agreement] for its chain-of-title to the billion-dollar Superman franchise.").  Defendants promptly objected both to DC's improper sur-reply and the attached documents.  Docket 499.

Less than two weeks later, the Court issued its Order, granting DC's motion for partial summary judgment and denying Defendants' cross-motion.  Docket 507.

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

# ARGUMENT

## I.    THE ORDER SHOULD BE VACATED DUE TO DC'S DISCOVERY MISCONDUCT

### A.    The Legal Standard

The Order granting DC's motion for partial summary judgment is interlocutory, not a final judgment.  "The interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). The Court possesses the inherent procedural power to rescind an interlocutory order for "any reason it deems sufficient, even in the absence of new evidence or an intervening change in [law]." *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000).  Where the grounds for rescinding an interlocutory order turn on a party's discovery misconduct, "**[t]he test to be applied … must be borrowed from cases interpreting Rule 60(b)(3)**," applicable to judgments. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (emphasis added). *See also Alexander v. California Dept. of Corr.*, 2010 WL 4006362, at *1 (E.D. Cal. Oct. 12, 2010) (noting that, in vacating orders due to discovery misconduct, "courts look to the standards under … Rule 60(b) for guidance").

Under the standards borrowed from Rule 60(b)(3), an order should be vacated where there is "misconduct by an opposing party."  "'Failure to disclose or produce material requested in discovery can constitute 'misconduct' within the purview of this subsection.'" *Jones*, 921 F.2d at 879 (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988)).  To prevail, "the moving party must demonstrate" by "clear and convincing evidence" that (1) the opposing party engaged in "misconduct," and (2) "the conduct complained of prevented the moving party from fully and fairly presenting the case." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404-05 (9th Cir. 1987); *see also In re Staff Inv. Co.*, 146 B.R. 256, 264 (Bankr. E.D. Cal. 1992) (same).

As both requirements are easily met here, the Order should be vacated.

### B.   DC Engaged In Discovery Misconduct

To demonstrate discovery misconduct under Rule 60(b)(3)'s standards, the moving party need not prove that its litigation opponent intentionally withheld evidence; rather, proof of "a negligent misrepresentation will suffice." *In re Staff Inc. Co*, 146 B.R. at 264; *see also Anderson*, 862 F.2d at 923 ("[Rule 60(b)(3)] '[m]isconduct' does not demand proof of nefarious intent or purpose…."); *United States v. One Douglas A–26B Aircraft*, 662 F.2d 1372, 1374–75 n. 6 (11th Cir.1981) (same).  A "party's failure, either inadvertent or unintentional, to produce [] obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir.1994).  Similarly, "discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial" also amount to "misconduct" under Rule 60(b)(3).  *Anderson*, 862 F.2d at 923.

As detailed above, DC:  (1) produced the Peavy-Levitz Letters only days before relying on those documents in its own motion for summary judgment; (2) produced the Bonesteel Document only *after* referring to that document in its opposition to Defendants' cross-motion, and only two business days before Defendants' reply was due; and (3) produced the Josephson Document *after* the parties' cross-motions were taken under submission and only *one hour* before DC filed an improper sur-reply to which it brazenly attached the never-before-produced document.  Any one of these instances would suffice as clear and convincing evidence of discovery misconduct under Rule 60(b)(3)'s standard.  Together, they suggest a calculated strategy of discovery abuse and the suppression of evidence.

Perhaps recognizing this, DC attempted in its improper sur-reply to explain its belated and self-serving productions of the Bonesteel and Josephson Documents. Docket 498 at 2-3.  However, DC did not and could not suggest that the multiple last-minute productions were the result of some sort of one-time oversight or error.

Rather, DC argued that it "could only conduct a good-faith search and review of 'relevant custodians of DC and Warner'" in response to Defendants' discovery requests and that "[o]nly when Toberoff made his false attacks on DC [during oral argument] did DC search for and locate the [Bonesteel and Josephson Documents]." *Id* at 3.  According to DC these documents were not produced earlier, because DC could not "anticipate" the argument defense counsel made.  *Id.*  However, as shown above, DC was on notice of such argument in October, 2011.  *See* Docket 338 ("It defies reason that DC/Warner Bros. would have relied on this [1992 Agreement] for its chain-of-title to the billion-dollar Superman franchise.").

DC's "explanation" that it did not uncover and produce the Bonesteel and Josephson Documents earlier because they were not held by "'relevant custodians of DC and Warner'" is absurd.  Docket 498-2.  The Bonesteel Document came from Warner's Senior Vice President of Legal and Business Affairs; the Josephson Document came from Warner's Associate General Counsel.  It simply is not credible for DC to maintain that it never occurred to it or its counsel that Warner's Legal and Business Affairs departments were potentially "relevant custodians" of documents related to DC's chain-of-tile to Superman.

Indeed, DC's explanation is self-contradictory.  According to DC, once it decided that it wanted documents relating to the 1992 Agreement for use in its own filings, it knew where to go.  DC knew these custodians were relevant, searched them, and found precisely what it was looking for.  If DC knew to search these custodians in response to Defendants' argument that DC did not rely upon the 1992 Agreement as the basis for its Superman chain-of-title, it also should have known (and did know) to search these custodians in response to Defendants' discovery requests about the 1992 Agreement and its Superman chain-of-title.[2]

DC's calculated, last-minute productions and shifting unsatisfactory

---

[2] *See* Docket 498-2 at 26-27, 31-34 ("Request No. 12: All COMMUNICATIONS with third parties that REFER to the 1992 AGREEMENT"; "Request No. 14: All DOCUMENTS that describe OR explain YOUR chain-of-title to Superman.").

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

explanations all point towards bad faith. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 106 (D.N.J. 2006) (holding that a "repetitive pattern" of misconduct "supports the conclusion that this incident was … committed in bad faith").

Even absent bad faith, DC/Warner's failure to search their Legal and Business Affairs departments is still misconduct. A plaintiff cannot satisfy its discovery obligations by "sticking its head in the sand and refusing to look for answers…." *In re Independent Serv. Orgs. Antitrust Litig.,* 168 F.R.D. 651, 653 (D. Kan.1996). Rather, parties are under an "an *affirmative obligation* to conduct a reasonable search of documents in the possession of their employees, agents, subsidiaries, and others who are subject to their control." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *12 (C.D. Cal. Mar. 12, 2012). *See also MGA Entm't, Inc. v. Nat'l Products Ltd.*, 2012 WL 182158, at *10 (C.D. Cal. Jan. 23, 2012) (the "obligation to conduct a reasonable search … would have included demand for production … from all potential custodians"). In fulfilling this duty, the "failure to collect and preserve records from key players 'constitutes gross negligence.'" *Williams v. New York City Transit Auth.*, 2011 WL 5024280, at *7 (E.D.N.Y. Oct. 19, 2011) (citation omitted). *See Carrillo v. Schneider Logistics, Inc.*, 2012 WL 4791614, at *5 (C.D. Cal. Oct. 5, 2012) (sanctioning plaintiff for "haphazard search for records"); *MGA Entm't, Inc.*, 2012 WL 182158, at *11 (C.D. Cal. Jan. 23, 2012) (defendant "should have conducted a reasonable search for responsive documents from all custodians from whom it had the legal right to obtain documents").

In short, then, DC had an affirmative duty to make a reasonable search of its key departments and custodians, and its failure to do so until it wanted to find evidence to use in its own briefing was, at best, grossly negligent. This more than justifies vacating the Court's Order. *See In re Staff Inc. Co*, 146 B.R. at 264 (negligence is sufficient to prove misconduct under Rule 60(b)(3)).

///

///

### C.    Defendants Were Prevented From Fully And Fairly Presenting Their Case

Under Rule 60(b)(3)'s standard, to show prejudice from "the withholding of information called for by discovery, the [moving] party need not establish that the result in the case would be altered" by such information.  *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982).  A party "need not prove that the concealed material would likely have turned the tide at trial." *Anderson*, 862 F.2d at 925; *see also Seabolt v. Pennsylvania R. Co.*, 290 F.2d 296, 299-300 (3d Cir. 1961) (affirming new trial where "it cannot be stated that all of this [withheld information] would have changed the result of the case"); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) ("Rule 60(b)(3) … does not require that the information withheld be of such nature as to alter the result in the case."); *In re M/V Peacock*, 809 F.2d at 1405 (explaining Rule 60(b)(3) is "aimed at judgments which were unfairly obtained, not at those which are factually incorrect.").

Instead, the moving party need merely show that the discovery misconduct denied it "access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Anderson*, 862 F.2d at 925 (describing this as proof of "substantial interference" with a party's ability to present its case).

Therefore it is no defense to say, as DC undoubtedly will in its opposition, that the Court's ultimate decision on summary judgment rested on other grounds – *i.e.*, the 1992 Agreement itself.  By systematically withholding documents until DC wanted to use them in its own filings, DC "denied [Defendants] access to evidence that could well have been probative on an important issue," ultimately preventing Defendants from fully and fairly presenting their case. *Anderson*, 862 F.2d at 925.

The Peavy-Levitz Letters, Bonesteel Document, and Josephson Document, all go to the heart of DC's First Claim – the 1992 Agreement, its effect on DC's chain-of-title to Superman and the supposed revocation of all of Shuster's pre-1978

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

Superman grants.  This was not merely an "important issue," but *the* central issue, and DC's failure to properly produce multiple documents highly-relevant to this issue warrants vacating the Court's Order under Rule 60(b)(3)'s standards.  *See In re Vioxx Products*, 489 F.Supp.2d 587, 594 (E.D. La. 2007) (party prevented from "fully and fairly presenting case" where adverse party's discovery misconduct concerned "central issue in this entire litigation."); *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 72 (4th Cir. 1981) (reversing denial of Rule 60(b)(3) motion where "failure to disclose [document] struck at the very heart of the fact finding process").

DC's willful failure to turn this evidence over earlier deprived Defendants of the fair opportunity to conduct follow-up discovery prior to summary judgment.[3]

Even if the withheld evidence was, by itself "cumulative" or "*de minimis*," (which it is not), vacating the Order would be appropriate because DC's late disclosure of evidence and witnesses "may have substantially interfered with [the party's] ability to fully and fairly present her case" by "'preclud[ing] inquiry into a plausible theory.'"  *Jones*, 921 F.2d at 879.  *See Corcoran v. McCarthy*, 2010 S.D. 7, 778 (S.D. 2010) (vacating order is appropriate where disclosure "could have led to the timely discovery of [other relevant, admissible evidence]" even if the withheld evidence is, "by itself, … irrelevant").  The Bonesteel and Josephson Documents were not only relevant and important; they also identified important, heretofore unknown witnesses, custodians, and additional sources of evidence.  Both Mr. Bonesteel and Ms. Josephson, whose job duties apparently included communicating with third parties about DC's Superman chain-of-title, could have provided "potentially fruitful avenue[s]" of additional evidence at deposition.

Indeed, the Bonesteel and Josephson Documents indicate that a substantial

---

[3] This prejudice as to clearly non-privileged documents stands in stark contrast to the prejudice DC alleges in its recently-filed motion for sanctions (Dkt. 500), where the documents were produced *months*, and in some cases, a year ago, affording DC ample opportunity to take discovery on them before summary judgment or trial.

DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER

volume of relevant evidence has been withheld.  The Bonesteel and Josephson Documents were communications sent to *two* foreign countries in connection with the release of the *Superman Returns* movie.  *Superman Returns* was released in over 58 countries.[4]  DC has produced numerous "Superman" television series (*e.g.*, *Smallville*) that also received international distribution.  There is, literally and figuratively, a whole world of evidence that DC concealed in withholding the Bonesteel and Josephson Documents.

The full extent of DC's misconduct will only be known once DC finally complies with its discovery obligations and *actually* conducts the "comprehensive search" that its counsel falsely represented in July 2012 had already occurred.  There is every reason to believe that additional highly responsive documents authored by Mr. Bonesteel, Ms. Josephson, and many others are still being withheld.  DC admits that it ignored Warner's key Legal and Business Affairs departments and custodians, and only searched these obvious custodians when it wanted to find evidence it thought could rebut Defendants' specific arguments.  Docket 498 at 2-3.  Given this admission, there are likely other custodians and documents that DC has deliberately or negligently ignored, such as post-1992 documents that still rely *exclusively* on Shuster's pre-1978 Superman grants in direct contradiction to DC's main revocation argument, embraced by the Court's Order.

Finally, it is worth repeating that it does not matter whether the evidence DC withheld or the avenues of discovery it shut down would actually have changed the outcome.  Pursuant to Rule 60(b)(3)'s standard, so long as DC engaged in discovery "misconduct" (which it did) and the withheld documents were related to an "important" issue (which they were), then the Order should be vacated in the interests of justice.  *See Rozier*, 573 F.2d at 1342 (reversing denial of Rule 60(b)(3) motion where discovery misconduct "influenced the decision as to which theories

---

[4] A list of countries where *Superman Returns* was released can be found at http://www.imdb.com/title/tt0348150/releaseinfo

would be emphasized" and "would have made a difference in the way plaintiff's counsel approached the case or prepared for trial") (quotations omitted).

### D. **The Court May Order An Evidentiary Hearing To Determine The Full Extent Of DC's Misconduct**

The Court would be more than justified in vacating its Order based on the specific instances of discovery misconduct proven in this motion which, individually or collectively, more than meet the Rule 60(b)(3) standard. Because willfulness is not required under Rule 60(b)(3), and because the withheld evidence need not be outcome-determinative, the fact that DC withheld evidence related to an important issue, only to rely on such evidence in its own summary judgment briefing, is alone sufficient grounds to vacate the Order. However, if the Court is uncertain, it should conduct a focused evidentiary hearing to determine the full scope of DC's misconduct and the appropriate remedy to ensure that Defendants are provided a fair opportunity to present their case. *See Wyle v. R.J. Reynolds*, 709 F.2d 585, 592 (9th Cir. 1983); *see also Jones*, 921 F.2d at 879 (remanding to district court for evidentiary hearing on Rule 60(b)(3) misconduct).

### CONCLUSION

Defendants respectfully request the Court grant their motion, and vacate the October 17, 2012 Order.

Dated: November 12, 2012          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
_____
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel