Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF PABLO D. ARREDONDO IN SUPPORT OF DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER GRANTING PLAINTIFF DC COMICS PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS, AND FOR AN EVIDENTIARY HEARING**<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:   December 17, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

## DECLARATION OF PABLO D. ARREDONDO

I, Pablo D. Arredondo, declare as follows:

1.      I am an attorney at the law firm of Toberoff & Associates, P.C., and counsel of record for defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel, in the above-captioned case.  I am a member in good standing of the State Bar of California and am admitted to practice before this Court.  I submit this declaration in support of Defendant's Motion To Vacate October 17, 2012 Order.

2.      On March 16, 2012, my colleague Keith Adams and I met and conferred with Cassandra Seto and Jason Tokoro, counsel for plaintiff DC Comics ("DC"), regarding Defendant Mark Warren Peary's First Set of Requests For Production. During this meet-and-confer, Keith Adams asked counsel for DC to confirm that all documents relating to the 1992 Agreement had been produced to Defendants. Counsel for DC confirmed that all such documents had in fact been produced.

3.      Attached hereto as Exhibit "A" is a true and correct copy of a letter dated June 21, 2012, sent by Matthew Kline, counsel for DC, to my colleague Marc Toberoff.

4.      Attached hereto as Exhibit "B" is a true and correct copy of a letter dated July 6, 2012, sent by Matthew Kline, counsel for DC, to my colleague Marc Toberoff.

5.      Attached hereto as Exhibit "C" are true and correct copies of the two documents that DC produced to Defendants on July 6, 2012, bates stamped DC 00156-00157.

6.      Attached hereto as Exhibit "D" is a true and correct copy of an email dated July 11, 2012 sent by Matthew Kline, counsel for DC, to me.

7.      Attached hereto as Exhibit "E" is a true and correct copy of an email dated July 11, 2012, which I sent to Matthew Kline, counsel for DC.

8.    Attached hereto as Exhibit "F" is a true and correct copy of an email dated July 12, 2012, sent by Matthew Kline, counsel for DC, to my colleague Marc Toberoff.

9.    Attached hereto as Exhibit "G" is a true and correct copy of an email dated September 25, 2012, which I sent to Matthew Kline, counsel for DC.

10.    Attached hereto as Exhibit "H" is a true and correct copy of an email dated September 27, 2012, sent by Jason Tokoro, counsel for DC, to me.

11.    Attached hereto as Exhibit "I" are true and correct copies of the documents DC produced to Defendants on September 27, 2012, bates-stamped DC 00158-00168.

12.    Attached hereto as Exhibit "J" is a true and correct copy of an email dated October 4, 2012, sent by Jason Tokoro, counsel for DC, to my colleague Marc Toberoff.

13.    Attached hereto as Exhibit "K" is a true and correct copy of the document DC produced to Defendants on October 4, 2012, bates-stamped DC00169-00171.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2012, at Malibu, California.

_____
Pablo D. Arredondo

DECLARATION OF PABLO D. ARREDONDO

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 21, 2012

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265

Re:    _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Dear Counsel:

Pursuant to Federal Rule of Civil Procedure 56, DC is considering moving for partial summary judgment on its First Claim for Relief for the reasons discussed in the parties' January 23, 2012, Joint Status Report, Docket No. 364 at 8-10, and is considering moving for partial summary judgment on its Third Claim for Relief for the reasons that have been extensively discussed and briefed, _see_ Docket No. 90 at 4-13; Docket No. 185 at 4-13; Docket No. 334 at 11-17.  These issues have been thoroughly discussed in prior briefs and meet and confers, _see id._; Docket No. 89 at 5-17, 20-21; Docket No. 186 at 5-17, 20-21; Docket No. 334 at 5-10; Docket No. 364 at 8-10, but if you wish to meet and confer further, please let us know when you are available to do so Monday or Tuesday.

**Exhibit A**

**3**

O'Melveny & Myers llp
Page 2

DC reserves all rights.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:     Daniel M. Petrocelli, Esq.

**Exhibit A**
**4**

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 6, 2012

OUR FILE NUMBER
905900-321

## VIA E-MAIL AND HAND DELIVERY

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

Please find enclosed DC 00156-57, all of which originated with your clients and may have been made available for inspection in *Siegel*, but we could not find among defendants' or DC's Bates-labeled productions.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.

**Exhibit B**

**5**

316 Horton Ln., NW
Albuquerque, N.M.
87114
Oct. 7, 1992

Paul Levitz, publisher
DC Comics Inc.
1325 Avenue of the Americas
New York, N.Y. 10019

Dear Paul,

Happy for you that your baby is finally here. Sorry we had to miss seeing you when Frank & I went into the office Oct. 2nd to sign the papers. We were very disappointed to learn that the $25,00 could not be given as a gift. This means that we would only end up with about half of your intended compensation as the income tax would take about 45% of it.

As the family of Joe Shuster, we know we deserve more. We, as Joe was, are peace-loving people & even though we are aware of the copyright laws, decided not to stir up trouble & settle for just a crumb off the table. You have all been very kind to us & we appreciate your friendship. We feel that surely Time-Warner can figure out a way for us to receive the full $25,000. If it can't be given to us as a gift, can they reimburse us for the amount of money that will be deducted at payroll by making out a separate check for that amount & sending it to us? It is an unusual request to have Time Warner pick up the tab for the income tax but otherwise we will be left with practically nothing after Frank & I divide it.

Please discuss this with Marty Payson. We know you are all trying to be fair. Thanks for your consideration. Looking forward to hearing from you soon. We will be home next week.

Sincerely, Jean Shuster Peavy

DC 00156

Exhibit C
6

505-897-7450                           316 Horton Lane, NW
                                       Albuquerque, N.M. 87114-1053
June 8, 1998


Paul Levitz, Exec.Vice President
         and Publisher
DC COMICS
1700 Broadway
New York, N.Y. 10019

Dear Paul:

In speaking to my friend Mike Catron he reminded me that the Comic
Book Convention was taking place in August in San Diego.  He suggest-
ed that I attend since I've never been to one.  I remember my
brother Joe telling me what fun they used to be.  That's when he
would draw up Superman portraits for customers that wanted to buy
his originals.  I always thought it would be fun for me to attend
but right now I can't afford the expense of it.  My total income
has gone down since my husband passed away.

On our last phone conversation you said you would look into getting
a bonus for me for the Superman animated cartoon shows which are
going so well.  They're really great.  I didn't benefit from it in
1996 or 1997.  You had once said you would prefer to share with me
in the Superman profits rather than asking for a raise from Time-
Warner.  My expenses continue to go up, as my rent being raised
again, but income has gone down.

If you could work it out for me to receive a bonus, my son Warren
and I would attend the Conference.  I, or we, would be willing to
help man the SUPERMAN booth at specific times and answer personal
questions about the early years when Superman was first created,
I being the first person in the world to see it upon its creation.
Mike Catron suggested that some fans might even be interested in
my signing my autograph as Joe Shuster's sister, or even Warren
as his nephew.

If being at the booth would be of value to DC COMICS as Mike Catron
thought, we would be happy to do that.  Perhaps Joanne Siegel would
be willing to help as well.

Please let me know so that Warren and I can begin to make arrange-
ments to attend.  It would be nice to see you again there.

Regards to Jenette.

Best wishes,


Jean Shuster Peavy

DC 00157

**Exhibit C**

7

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Kline, Matthew [MKline@OMM.com] |
| **Sent:** | Wednesday, July 11, 2012 9:41 AM |
| **To:** | Pablo Arredondo |
| **Cc:** | Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'; rkendall@kbkfirm.com; lbrill@kbkfirm.com; Nicholas Daum |
| **Subject:** | RE: DC v. PPC |

Pablo:

Your letter below is not well taken in any respect.

You unilaterally noticed Mr. Levitz's deposition less than two weeks in advance of the date noticed and without seeking any confirmation of his availability on the date you set. I promptly informed you that Mr. Levitz was unavailable on July 10, but would be available in New York later this month. Mr. Levitz was in the hospital yesterday dealing with a family emergency. Had you not unilaterally cancelled our 3:00pm meet-and-confer call on defendants' motion for summary judgment, due to Marc's last-second and unsubstantiated unavailability, we could have told you that fact and spared everyone from your pointless and embarrassing accusations below.

Instead of having the call (a call that *you* requested occur at that time), you wrote your email, which is wrong in every respect. We told defendants *two years ago* that Mr. Payson and Ms. Laserson should be contacted through our firm if you wished to examine them; yet you called Ms. Laserson directly, in violation of your ethical duties, and your process server did not stop its efforts to serve Mr. Payson when you now say. Moreover, the two documents that DC produced and that you complain about come from *your client* Jean Peavy and neither involve Mr. Payson nor Ms. Laserson. Your claims of surprise are plainly false. In any event, had you taken the depositions you seek in a timely way (which you plainly did not--waiting, instead, close to two years to notice them), and had new, material evidence emerged, you could have taken limited, new depositions based on the two new documents. DC knows of no other such documents that relate to these depositions that will be produced, and we remind you, the documents were produced *voluntarily* and not under court order, as has been required again and again to obtain documents that defendants and their counsel have knowingly and willfully suppressed. The two documents in question were found as we finalized the motion for summary judgment DC will file Monday. You should have had access to these documents before (contrary to your current claims), and defendants will have every chance to depose Mr. Levitz on the documents.

As for the dates of depositions, we have given you the witnesses' first available dates this month and early next. You have yet to confirm a single one of the depositions, or show why you need more than one day with Messrs. Payson and Levitz, or more than a short time with Ms. Laserson. You have made no showing of cause to take a full day of deposition with any of these witnesses, nor do we believe that any such showing could be made. Indeed, as Mr. Payson has now confirmed, he has no documents responsive to any of your requests, and he has no recollection of the Shuster negotiations in 1992 and events subsequent, other than he referred the matter to Mr. Levitz. Ms. Laserson has likewise confirmed she has no hard copy documents to produce, has a limited memory of the 1992 negotiations and events subsequent, and is not sure she has any electronic copies of documents, but will check.

Finally, please confirm a dial-in number for today's 2:00pm call and your and Marc's availability to discuss the substance of defendants' motion for summary judgment and the three depositions at issue. Yesterday was the second time in a row that defendants have failed to participate in a meet and confer on the ground, first stated *during* the appointed meet and confer, that Marc could not attend and you had no authority to conduct it. We cannot have that happen again today, especially when you are making the baseless threats and claims below.

All of DC's rights are reserved.

Matt

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Pablo Arredondo [parredondo@ipwla.com] |
| **Sent:** | Wednesday, July 11, 2012 1:43 PM |
| **To:** | 'Kline, Matthew' |
| **Cc:** | 'Petrocelli, Daniel'; 'Seto, Cassandra'; 'Tokoro, Jason'; 'Pearson, Ashley'; 'Marc Toberoff'; 'David Harris'; 'rkendall@kbkfirm.com'; 'lbrill@kbkfirm.com'; 'Nicholas Daum' |
| **Subject:** | RE: DC v. PPC |

Matt:

We disagree with the entirety of your email, but let's focus on your explanation -- or lack thereof -- for DC's belated production of responsive documents related to the 1992 Agreement with days of your motion for partial summary judgment, but seven months after all such documents were specifically requested and months after Ms. Seto confirmed to me and my colleague that all responsive documents had been produced.  Your contention that neither of the  documents that DC produced involve Mr. Payson nor Ms. Laseron is false.  For instance, DC 00156 directly refers to Mr. Payson.  Moreover, the documents are addressed to Paul Levitz, and deal with a subject for which all three witnesses were listed by DC as having relevant knowledge.

Your email purports to explain when these documents were supposedly discovered; it does not explain why they were missed in the first place.  We are entitled to precision here.  I repeat my question asked in my prior email, and would appreciate a direct answer: why were these documents missed?

DC cannot apply a more rigorous search in preparation for its own filings than it does in complying with its discovery obligations.  What was done differently that led to the recent discovery of these documents? Were different search terms used? Were new custodians of records contacted?  Defendants are entitled to know how this error occurred and we need assurances that DC will not continue to suddenly discover new documents if and when it "finalizes" a motion on related subjects.

Further, your attempts to minimize this discovery failure by stating that the 1992 documents that DC withheld "come from your client Jean Peavy" is no excuse and suggests that DC and its counsel may be withholding other responsive documents simply because they originated with one of the defendants.  As you know, DC is required to produce all non-privileged responsive documents regardless of who authored them.  Are there other documents that DC is withholding because it believes defendants "should have had access to them"?

We request a L.R. 37-1 conference to discuss this troubling discovery failure, and your equally troubling attempt to blithely dismiss it.

Your comments regarding defendants' proper attempt to serve Mr. Payson and Ms Laserson with process are equally meritless.  First, you falsely represent "We told defendants two years ago that Mr. Payson and Ms. Laserson should be contacted through our firm if you wish to  examine them," when DC's initial disclosures merely state these witnesses "*may* be contacted through counsel for DC Comics."  Second, you do not because you cannot explain why you purposefully delayed responding for *eight* days to our repeated question whether you are authorized to except service on behalf Mr. Payson and Ms. Laserson.

Your attempt to deflect by falsely claiming that we "twice" missed a meet and confer is not well taken.  All that happened was that we had to delay by 15-30 minutes a meet and confer scheduled for yesterday at 3:00 pm and suggested that we move it to 3:30 p.m. or any other time that day.  You indicated that you would prefer 2 p.m. today, to which we agreed. You statement that we previously failed to participate in a scheduled meet and confer is again false, and the fact you are making such a trumped-up fuss about this de minimis matter is indicative of your behavior throughout this case.

As for today's meet-and-confer, please use the following dial-in at 2 p.m.:

Conference Dial-in: 1-213-226-0400:  Conference Code: 232370

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**From:** Kline, Matthew [mailto:MKline@OMM.com]
**Sent:** Wednesday, July 11, 2012 9:41 AM
**To:** Pablo Arredondo
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'; rkendall@kbkfirm.com; lbrill@kbkfirm.com; Nicholas Daum
**Subject:** RE: DC v. PPC

Pablo:

Your letter below is not well taken in any respect.

You unilaterally noticed Mr. Levitz's deposition less than two weeks in advance of the date noticed and without seeking any confirmation of his availability on the date you set.  I promptly informed you that Mr. Levitz was unavailable on July 10, but would be available in New York later this month.  Mr. Levitz was in the hospital yesterday dealing with a family emergency.  Had you not unilaterally cancelled our 3:00pm meet-and-confer call on defendants' motion for summary judgment, due to Marc's last-second and unsubstantiated unavailability, we could have told you that fact and spared everyone from your pointless and embarrassing accusations below.

Instead of having the call (a call that *you* requested occur at that time), you wrote your email, which is wrong in every respect.  We told defendants *two years ago* that Mr. Payson and Ms. Laserson should be contacted through our firm if you wished to examine them; yet you called Ms. Laserson directly, in violation of your ethical duties, and your process server did not stop its efforts to serve Mr. Payson when you now say.  Moreover, the two documents that DC produced and that you complain about come from *your client* Jean Peavy and neither involve Mr. Payson nor Ms. Laserson.  Your claims of surprise are plainly false.  In any event, had you taken the depositions you seek in a timely way (which you plainly did not--waiting, instead, close to two years to notice them), and had new, material evidence emerged, you could have taken limited, new depositions based on the two new documents.  DC knows of no other such documents that relate to these depositions that will be produced, and we remind you, the documents were produced *voluntarily* and not under court order, as has been required again and again to obtain documents that defendants and their counsel have knowingly and willfully suppressed.  The two documents in question were found as we finalized the motion for summary judgment DC will file Monday.  You should have had access to these documents before (contrary to your current claims), and defendants will have every chance to depose Mr. Levitz on the documents.

As for the dates of depositions, we have given you the witnesses' first available dates this month and early next.  You have yet to confirm a single one of the depositions, or show why you need more than one day with Messrs. Payson and Levitz, or more than a short time with Ms. Laserson.  You have made no showing of cause to take a full day of deposition with any of these witnesses, nor do we believe that any such showing could be made.  Indeed, as Mr. Payson has now confirmed, he has no documents responsive to any of your requests, and he has no recollection of the Shuster negotiations in 1992 and events subsequent, other than he referred the matter to Mr. Levitz.  Ms. Laserson has likewise confirmed she has no hard copy documents to produce, has a limited memory of the 1992 negotiations and events subsequent, and is not sure she has any electronic copies of documents, but will check.

Finally, please confirm a dial-in number for today's 2:00pm call and your and Marc's availability to discuss the substance of defendants' motion for summary judgment and the three depositions at issue. Yesterday was the second time in a row that defendants have failed to participate in a meet and confer on the ground, first stated *during* the appointed meet and confer, that Marc could not attend and you had no authority to conduct it.  We cannot have that happen again today, especially when you are making the baseless threats and claims below.

All of DC's rights are reserved.

Matt

---

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Tuesday, July 10, 2012 10:18 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'David Harris'
**Subject:** DC v. PPC

Counsel:

Please see the attached letter.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101


This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Kline, Matthew [MKline@OMM.com] |
| **Sent:** | Thursday, July 12, 2012 10:57 AM |
| **To:** | Marc Toberoff (mtoberoff@ipwla.com) |
| **Cc:** | Petrocelli, Daniel; Seto, Cassandra; Pablo Arredondo (parredondo@ipwla.com); Richard Kendall; lbrill@kbkfirm.com; Nicholas Daum |
| **Subject:** | DC vs. Pacific Pictures:  Meet and Confer on MSJ and Document Issue |

Marc,

This is to confirm our discussion yesterday concerning DC's supplemental production of July 6, 2012, which was comprised of two short letters that Jean Peavy, your client and a defendant in this matter, sent to DC several years ago.

As discussed, we came across the two documents in the past couple weeks as I was preparing the summary judgment motion we intend to file Monday.  As I mentioned, while finalizing our summary judgment motion, I asked a member of our firm to run electronic searches for certain documents.  One document that was found was located in a database from prior counsel to which we only recently obtained access in electronic form.  The searches turned up a letter from Jean Peavy that I and others had not seen before and that was not Bates-stamped.  We confirmed the letter had not previously been produced, at least in Bates-stamp form.  I immediately asked our team to conduct an exhaustive review to confirm there were no other documents in this database responsive to defendants' December 13, 2011, discovery requests.  That search turned up the second letter that we produced along with the first letter.  I can confirm that we have conducted a good-faith, comprehensive search for responsive documents pursuant to Rule 34 and have found no other responsive documents requested by defendants in this case.  It is possible, though unlikely, that there are a few documents responsive to requests in the *Siegel* case, and we will confirm that shortly, but obviously discovery is closed in that matter and the matter is on appeal.

As for the claims about DC's productions made in Laura Brill's letter of yesterday or Pablo's letters or emails on the same subject, they are false and belied by the facts above.  So, too, are their false claims about DC's privilege logs and other matters, as we have many times shown, and defendants have chosen not to challenge for many months.  If you wish to discuss any of these matters further, we are happy to do so.

We do hope finalize with you today or tomorrow your intentions on the three depositions discussed, as well as an agreed-upon briefing schedule on the MSJs.  On the briefing, we think the July 16, July 30, August 10, August 17 schedule makes sense, but are willing to consider other proposals, or to just follow the applicable rules.  On Paul Levitz's deposition, we confirm he will be deposed in New York on July 26--and we offered our New York offices to do that.

All of DC's rights are reserved.

Thanks,

Matt

*********************************************
**Matthew T. Kline**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Phone: (310) 246-6840
Fax: (310) 246-6779
mkline@omm.com
www.omm.com

*This message and any attached documents contain information from the law firm*

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Pablo Arredondo [parredondo@ipwla.com] |
| **Sent:** | Tuesday, September 25, 2012 1:46 PM |
| **To:** | 'Kline, Matthew' |
| **Cc:** | 'Petrocelli, Daniel'; 'Seto, Cassandra'; 'Tokoro, Jason'; 'Pearson, Ashley'; 'Marc Toberoff'; 'Keith Adams'; 'David Harris' |
| **Subject:** | DC v. PPC |

Counsel:

On Friday, September 21, 2012, DC filed a declaration of Damon Bonesteel (Dkt. No. 491-1) that purports to describe "dealing[s] with a foreign government [in which] Warner Bros. directly relied on the 1992 agreement as a grant by the Shuster heirs to DC. . . "  Id. ¶3.  DC conspicuously did not attach any documents relating to such "dealings" to Mr. Bonesteel's declaration and no such documents have been produced though they would be responsive to defendants' requests for production, including Mark Warren Peary's Requests nos. 7, 12, 14, 18, 19, 27, 29, 45, 61, and 63 served on DC on December 13, 2011.  Please produce any documents relating to the "dealings" referenced in Mr. Bonesteel's declaration.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Tokoro, Jason [jtokoro@omm.com] |
| **Sent:** | Thursday, September 27, 2012 4:11 PM |
| **To:** | Pablo Arredondo |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Pearson, Ashley; 'Marc Toberoff'; 'Keith Adams'; 'David Harris' |
| **Subject:** | RE: DC v. PPC |
| **Attachments:** | DC 00158-168.pdf |

Counsel,

Please see below correspondence sent on behalf of Daniel M. Petrocelli.

*       *       *

Counsel:

Your assertions below are incorrect, as you know.  We will address them in due course.  Attached is the document Mr. Bonesteel mentioned.

Dan

---

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Tuesday, September 25, 2012 1:46 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pearson, Ashley; 'Marc Toberoff'; 'Keith Adams'; 'David Harris'
**Subject:** DC v. PPC

Counsel:

On Friday, September 21, 2012, DC filed a declaration of Damon Bonesteel (Dkt. No. 491-1) that purports to describe "dealing[s] with a foreign government [in which] Warner Bros. directly relied on the 1992 agreement as a grant by the Shuster heirs to DC. . . "  Id. ¶3.  DC conspicuously did not attach any documents relating to such "dealings" to Mr. Bonesteel's declaration and no such documents have been produced though they would be responsive to defendants' requests for production, including Mark Warren Peary's Requests nos. 7, 12, 14, 18, 19, 27, 29, 45, 61, and 63 served on DC on December 13, 2011.  Please produce any documents relating to the "dealings" referenced in Mr. Bonesteel's declaration.

Pablo

Pablo D. Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

**Exhibit H**
**14**

UNITED STATES OF AMERICA)
STATE OF CALIFORNIA          ) ss:
COUNTY OF LOS ANGELES    )

On this 12th day of June, 2006, before me, the undersigned Notary Public, personally appeared Damon B. Bonesteel who appears in this act in the name and on behalf of WARNER BROS. PICTURES INTERNATIONAL, a division of Warner Bros Distributing Inc., and in the capacity of Vice President thereof, he certified to me that he was duly entitled to act as such.

The appearer has made to me the following statements to the best of his knowledge and belief:

1.  Jerome Siegel, deceased, formerly a citizen and resident of the United States of America, and Joseph Shuster, deceased, formerly a citizen of Canada and resident of the United States of America ("Siegel and Shuster") wrote and illustrated original characters and stories for a comic strip property entitled "Superman" in or around 1938.  Pursuant to the terms and conditions of an Agreement dated as of March 1, 1938, as amended and/or restated from time to time thereafter (including on September 22, 1938, December 19, 1939, May 19, 1948 and May 21, 1948), between Siegel and Shuster, on the one hand, and Detective Comics, Inc., 480 Lexington Ave., New York, New York ("Detective"), on the other hand, Siegel and Shuster sold and transferred to Detective all of their respective right, title and interest in and to said comic strip property entitled "Superman".  Pursuant to said Agreement as amended and/or restated, Detective acquired, in relevant part, all right, title and interest in and to the exclusive motion picture rights, the characters, the artwork, and the storyline contained in said comic strip property (the "Superman Concept").

2.  Pursuant to a merger among several publishing companies, including, in relevant part, Detective, in or around September 1946, National Comics Publications, Inc. located in New York City (actual address unknown) became the parent company of Detective. Pursuant to the terms and conditions of an Assignment dated February 24, 1947, Detective assigned to National Comics Publications, Inc. the rights in and to the Superman Concept.  Pursuant to said Assignment, National Comics Publications, Inc. acquired all of Detective's right, title and interest in and to the Superman Concept.

3.  Pursuant to an Assignment and Consolidation Agreement dated January 20, 1966, National Periodical Publications, Inc. became successor-in-interest to National Comics Publications, Inc. Pursuant to said Agreement, National Periodical Publications, Inc., became the owner of all right, title and interest in and to Detective and, in relevant part, the Superman Concept.

4.  Pursuant to a merger of Kinney Parking Company and National Cleaning Company in 1966, Steve Ross, deceased, became head of a company known as Kinney National.  Pursuant to an incorporation in New York State in November 1967, Kinney National changed its name to KNS Publishing Company, Inc. ("KNS"). Pursuant to a corporate merger in 1968 National Periodical Publications, Inc. merged with KNS and the resulting company retained the name National Periodical Publications, Inc. National Periodical Publications, Inc. acquired Warner Bros.-Seven Arts, a Delaware corporation, 666 Fifth Avenue, New York, New York in 1969. National Periodical Publications, Inc. divested its non-entertainment holdings and became part of the group Warner Communications Inc., a Delaware corporation, 75 Rockefeller Plaza, New York, New York 10019 ("WCI") in 1972.  Pursuant to said successive acquisitions and mergers, WCI became the parent company of National Periodical Publications, Inc. in 1972.

5.  Pursuant to the terms and conditions of an Agreement dated as of December 23, 1975 between Siegel and Shuster, c/o Edmund Preiss, Esq., Kane, Kessler, Proujansky, Priess & Permutt, on the one hand, and WCI and its subsidiaries, inclusive of National Periodical Publications, Inc., on the other hand, Siegel and Shuster agreed and acknowledged that WCI is the sole and exclusive owner of all of the right, title and interest in and to the Superman Concept, including, without

Exhibit I
15

DC 00158

limitation, the characters, artwork, and motion picture rights, throughout the world in perpetuity. Pursuant to said Agreement, WCI owns the motion picture production, distribution and ancillary rights in the Superman Concept throughout the world in perpetuity, inclusive of copyrights and trademarks therein.

6.    In or around August 1976, National Periodical Publications, Inc. changed its name to DC Comics, Inc. Pursuant to an Assignment dated as of June 30, 1992, among Detective, DC Comics, Inc., successor-in-interest to National Periodical Publications Inc., 1700 Broadway, 3rd Floor, New York, New York 10019, DC Comics, A New York Partnership, 1700 Broadway, 3rd Floor, New York, New York 10019 ("DC") and Warner Bros. Inc., a Delaware corporation, 4000 Warner Boulevard, Burbank, CA 91522, a subsidiary of WCI ("Warner"), Detective assigned to Warner all of its right, title and interest in, among other properties, the Superman comic books and Warner, in turn, simultaneously assigned to DC all of its right, title and interest in said property, including, without limitation, all copyrights, and renewals, all rights under copyright, including the right to prepare derivative works, all versions of said property and all rights in any underlying properties.

7.    Pursuant to an Agreement dated as of August 1, 1992 between Frank Shuster and Jean Shuster Peavy (heirs of Joseph Shuster), on the one hand, and DC, on the other hand, Shuster and Peavy granted to DC in perpetuity all rights in any copyrights, trademarks or other property rights in any and all work created in whole or in part by Joseph Shuster, or any works based thereon, including without limitation, the Superman Concept.

8.    Pursuant to the terms and conditions of an Agreement dated as of November 6, 1999 between DC and Warner Bros., a division of Time Warner Entertainment Company, L.P., a Delaware limited partnership, 4000 Warner Boulevard, Burbank, CA 91522 ("WB"), successor-in-interest to Warner,  DC assigned an exclusive license to WB through December 31, 2033, throughout the universe, in the motion picture production, distribution and ancillary rights in the Superman Concept, including, without limitation, sequels and remakes. Pursuant to said Agreement, Warner has an exclusive license to produce, distribute and exploit motion pictures, remakes and sequels based on the Superman Concept.

9.    Pursuant to an Agreement dated October 19, 2001 between Joanne Siegel and Laura Siegel Larson (heirs of Jerome Siegel), on the one hand, and DC, on the other hand, Siegel and Larson transferred to DC all of their rights in the Superman properties and the Superman Concept, in relevant part.

10. Pursuant to the terms and conditions of an Agreement dated as of June 1, 2004 between Red Sun Productions Pty Limited, an Australian corporation, Level 6, 116 Military Road, Neutral Bay, Australia ("RSP") and Warner Bros. Pictures Inc., a Delaware corporation, 4000 Warner Blvd., Burbank, CA 91522 ("WBPI"), successor-in-interest to Warner, WBPI engaged RSP to produce, on behalf of WBPI, one theatrical motion picture based on the Superman properties and the Superman Concept. Pursuant to said Agreement, RSP shall retain no rights in the proposed motion picture, all such rights being owned at all times during the production by WBPI.

11. Pursuant to the terms and conditions of an Agreement dated as of July 20, 2004, as amended, between WBPI and Danimal, Inc. f/s/o Dan Harris, a citizen and resident of the  United States of America, c/o William Morris Agency, 151 El Camino Drive, Beverly Hills, CA 90212, Attn: Todd Feldman and Michael Dougherty, a citizen and resident of the United States of America, c/o William Morris Agency, 151 El Camino Drive, Beverly Hills, CA 90212 , Attn: Danny Greenberg, (collectively "Writer"), Writer wrote a first draft Screenplay ("Screenplay No. 1"), a second draft Screenplay ("Screenplay No. 2") and several Polishes (collectively "Screenplay No. 3") entitled "Red Sun" based on the Superman properties and the Superman Concept. Pursuant to said Agreement, the Writers assigned all of their respective right, title and interest in and to Screenplay No. 1, Screenplay No. 2 and Screenplay No. 3 to WBPI exclusively in perpetuity throughout the universe.

Exhibit I
16

DC 00159

12.      WBPI produced a feature length motion picture entitled "Superman Returns" based on Screenplay Nos. 1 through 3 (the "Picture"). The Picture was recorded on tape in Australia by means of a Genesis Camera for transfer to film and the film was developed by Technicolor in Los Angeles, California.

13.      Pursuant to a general inter company agreement dated as of April 1, 2003, between WBPI, predecessor-in-interest to Warner Bros. Distributing Inc., a Delaware corporation, 4000 Warner Boulevard, CA 91522 ("WBDI") and Warner Bros. Entertainment Inc., a Delaware corporation, 4000 Warner Boulevard, Burbank, CA 91522 ("WBEI"), WBDI assigned to WBEI all of its distribution and exploitation rights in and to the Picture in perpetuity.

14.      Pursuant to a general inter company agreement dated as of April 1, 2003, between WBEI and Warner Bros. Pictures International, a division of Warner Bros. Distributing Inc., formerly a division of Warner Bros. Pictures Inc. ("International"), WBEI assigned to International the distribution and exploitation rights in the Picture throughout the universe in perpetuity.

15.      Under a general distribution agreement dated December 1, 2003 between International and Warner Bros. France S.A., a corporation organized under the laws of France, having an office at 115-123 avenue Charles De Gaulle, 92525 Neuilly sur Seine Cedex, France ("WBF"), the license to distribute the Picture for the territory of Metropolitan France (including Corsica), Andorra, Monaco, Algeria, Tunisia, Morocco, Mauritius, Madagascar, Haiti, Comores Island, Martinique, Guadeloupe, French Guiana, Reunion, French Polynesia, New Caledonia, Vanuatu (formerly New Hebrides), Wallis and Futuna Islands, and French Austral and Antarctic Lands and Djibouti; and ships and aircraft flying the French flag but not traveling to or from the United States as the political borders of each exist; and all diplomatic posts and camps, bases, installations and reservations of the military forces of France, for a period of one year from delivery of the positive print, was granted by International to WBF.

   The foregoing statement has been read to the appearer; he ratified the contents thereof in my presence under oath.

WARNER BROS. PICTURES INTERNATIONAL, A DIVISION OF WARNER BROS. DISTRIBUTING INC.

Damon B. Bonesteel
Vice President

Subscribed and sworn before me this 12th day of June 2006.

Notary Public

CAROL F. TILTON
Commission # 1446186
Notary Public - California
Los Angeles County
My Comm. Expires Oct 28, 2007

Exhibit I
17

DC 00160

**REPUBLIQUE FRANCAISE**

_____

**CENTRE NATIONAL DE LA CINEMATOGRAPHIE**

_____

CONSERVATION DU REGISTRE PUBLIC

_____

**Délivré à**

**WARNER BROS FRANCE**

**115/ 123 AVE CHARLES DE GAULLE**

**92525 NEUILLY SUR SEINE CEDEX**

Sur requête de WARNER BROS FRANCE

a été porté au registre des dépôts

le seize Juin 2006

l'acte n° 2006.7333 comportant 5 page(s) et

contenant les inscriptions :

**Numéro 2006.10600 sur l'oeuvre n°115721 dépôt n°12000**

RECU: La somme de **VINGT CINQ EUROS** réglée par :

Chèque n° 5905632 du 13/06/2006 sur BNP PARIBAS

N° 7221 du journal des perceptions

A Paris, le 16/06/2006

Le Conservateur du Registre Public de la Cinématographie et de l'Audiovisuel

Référence de l'acte : Titre SUPERMAN RETURNS
DISTRIBUTION
Bénéficiaire : WARNER BROS FRANCE Cédant : WARNER BROS PICTURES INTERNA

En date du 12/06/2006

ROLE N°

000001

CONSERVATION DES REGISTRES
DE LA CINEMATOGRAPHIE
ET DE L'AUDIOVISUEL

**Exhibit I**
18

DC 00161



ETATS-UNIS D'AMERIQUE            )
ETAT DE CALIFORNIE               ) ss :
COMTE DE LOS ANGELES            )

Le 12 juin 2006, a comparu en personne par devant moi, Notaire Public soussigné, le nommé Damon B. BONESTEEL qui apparaît dans le présent acte au nom et pour le compte de WARNER BROS. PICTURES INTERNATIONAL, une division de Warner Bros. Distributing Inc., et en qualité de Vice-président Exécutif de ladite société, lequel a certifié par devant moi être dûment habilité à agir en tant que tel.

Le comparant a formulé par devant moi les déclarations suivantes en son âme et conscience :

1.      Jerome Siegel, décédé, anciennement ressortissant et résident américain, et Joseph Shuster, décédé, anciennement ressortissant canadien et résident américain (« Siegel et Shuster »), ont, vers l'année 1938, écrit et illustré des personnages et histoires originaux pour une bande dessinée intitulée « Superman ». Aux termes d'un Acte signé en date du 1er mars 1938, tel qu'il a été par la suite modifié et/ou reformulé (notamment le 22 septembre 1938, le 19 décembre 1939, le 19 mai 1948 et le 21 mai 1948), entre Siegel et Shuster, d'une part, et Detective Comics, Inc., 480 Lexington Avenue, New York, New York (« Detective »), d'autre part, Siegel et Shuster ont vendu et cédé à Detective l'ensemble de leurs droits, titres de propriété et intérêts respectifs afférents à ladite bande dessinée intitulée « Superman ». Par cet Acte, sous sa forme modifiée et/ou reformulée, Detective a acquis, pour l'essentiel, tous les droits, titres de propriété et intérêts afférents aux droits cinématographiques exclusifs, aux personnages, aux visuels et à l'intrigue de ladite bande dessinée (le « Concept Superman »).

2.      Suite à la fusion vers septembre 1946 de plusieurs sociétés d'édition, dont, pour l'essentiel, Detective, National Comics Publications, Inc., sise à New York (adresse réelle inconnue), est devenue la société mère de Detective. En vertu d'un Acte de cession en date du 24 février 1947, Detective a cédé à National Comics Publications, Inc. les droits sur le Concept Superman. Par cet Acte, National Comics Publications, Inc. a acquis tous les droits, titres de propriété et intérêts de Detective afférents au Concept Superman.

3.      Aux termes d'un Acte de cession et de consolidation en date du 20 janvier 1966, National Periodical Publications, Inc. est venue aux droits de National Comics Publications, Inc.. Par cet Acte, National Periodical Publications, Inc. est devenue le propriétaire de tous les droits, titres de propriété et intérêts afférents à Detective et, pour une partie essentielle, du Concept Superman.

4.      Suite à la fusion en 1966 de Kinney Parking Company et de National Cleaning Company, Steve Ross, décédé, a pris la direction d'une société connue sous le nom de Kinney National. Du fait de son établissement dans l'Etat de New York en novembre 1967, Kinney National est devenue KNS Publishing Company, Inc. (« KNS »). Suite à la fusion en 1968 de National Periodical Publications, Inc. et KNS, la société ainsi formée a conservé le nom de National Periodical Publications, Inc. National Periodical Publications, Inc. a acquis en 1969 Warner Bros. – Seven Arts, société de droit de l'Etat du Delaware, 666 Fifth Avenue, New York, New York. En 1972, National Periodical Publications, Inc. a cédé ses actifs ne relevant pas du monde du spectacle et est devenue membre du groupe Warner Communications Inc., société de droit de l'Etat du Delaware, 75 Rockefeller Plaza, New York, New York 10019

Exhibit I
19

N° 2006-10-600

ROLE N°
000002
CONSERVATION DES REGISTRES
DE LA CINEMATOGRAPHIE

DC 00162

(« WCI »). Par ces acquisitions et fusions successives, WCI est devenue en 1972 la société mère de National Periodical Publications, Inc.

5.      Aux termes d'un Accord passé en date du 23 décembre 1975 entre Siegel et Shuster, c/o Edmund Preiss, chez Kane, Kessler, Proujansky, Priess & Permutt, d'une part, et WCI et ses filiales, dont National Periodical Publications, Inc., d'autre part, Siegel et Shuster ont reconnu et accepté que WCI était le propriétaire exclusif de tous les droits, titres de propriété et intérêts afférents au Concept Superman, y compris, notamment, les personnages, visuels et droits cinématographiques, dans le monde entier et à perpétuité. Par cet Accord, WCI possède les droits de production cinématographique, de distribution et annexes sur le Concept Superman, dans le monde entier et à perpétuité, y compris les copyrights et marques s'y rapportant.

6.      Vers août 1976, National Periodical Publications, Inc. est devenue DC Comics, Inc.. Aux termes d'un Acte de cession signé en date du 30 juin 1992 entre Detective, DC Comics, Inc., société venant aux droits de National Periodical Publications, Inc., 1700 Broadway, 3rd floor, New York, New York 10019, DC Comics étant une partnership de droit new-yorkais sise au 1700 Broadway, 3rd floor, New York, New York 10019 (« DC »), et Warner Bros. Inc., société de droit de l'Etat du Delaware, 4000 Warner Boulevard, Burbank, CA 91522, filiale de WCI (« Warner »), Detective a cédé à Warner l'ensemble de ses droits, titres de propriété et intérêts afférents, notamment, aux albums de bandes dessinées Superman, et Warner a, à son tour, cédé simultanément à DC l'ensemble de ses droits, titres de propriété et intérêts afférents auxdits biens, y compris, notamment tous les copyrights et reconductions, tous les droits dans le cadre de copyright, y compris le droit de préparer des oeuvres dérivées, toutes les versions desdits biens et tous les droits sur les biens sous-jacents.

7.      En vertu d'un Acte signé en date du 1er août 1992 entre Frank Shuster et Jean Shuster Peavy (héritiers de Joseph Shuster), d'une part, et DC, d'autre part, Shuster et Peavy ont cédé à perpétuité à DC tous les droits dans le cadre de tous copyrights, marques ou autres droits patrimoniaux sur toute oeuvre créée en tout ou partie par Joseph Shuster ou toute oeuvre tirée de celle-ci, y compris, notamment, le Concept Superman.

8.      Aux termes d'un Accord passé en date du 6 novembre 1999 entre DC et Warner Bros., une division de Time Warner Entertainment Company, L.P., société en commandite simple de l'Etat du Delaware, 4000 Warner Boulevard, Burbank, CA 91522 (« WB »), société venant aux droits de Warner, DC a consenti à WB, jusqu'au 31 décembre 2033 et dans le monde entier, une licence exclusive sur les droits de production cinématographique, de distribution et annexes sur le Concept Superman, y compris, notamment, les suites et remakes. Par cet Accord, Warner détient une licence exclusive de production, de distribution et d'exploitation de films, remakes et suites tirés du Concept Superman.

9.      En vertu d'un Acte signé en date du 19 octobre 2001 entre Joanne Siegel et Laura Siegel Larson (héritiers de Jerome Siegel), d'une part, et DC, d'autre part, Siegel et Larson ont cédé à DC l'ensemble de leurs droits sur les biens Superman et le Concept Superman pour l'essentiel.

10.     Aux termes d'un Acte signé en date du 1er juin 2004 entre Red Sun Productions Pty Limited, société australienne, Level 6, 116 Military Road, Neutral Bay, Australie (« RSP »), et Warner Bros. Pictures Inc., société de l'Etat du Delaware, 4000 Warner Boulevard,

ROLE N°

000063

CONSERVATION DES REGISTRES
DE LA CINEMATOGRAPHIE

Monique
ROUZET LELIÈVRE
Expert - Traducteur
Agréé par la Cour
de Cassation
ANGLAIS

Exhibit I
20

DC 00163

Burbank, CA 91522 (« WBPI »), société venant aux droits de Warner, WBPI a engagé RSP pour produire, pour le compte de WBPI, un film cinématographique commercial tiré des biens Superman et du Concept Superman. Par cet Acte, RSP n'a conservé aucun droit sur le projet de film, l'ensemble de ces droits étant possédé, pendant toutes les phases de la production, par WBPI.

11.    En vertu d'un Acte signé en date du 20 juillet 2004, tel que modifié, entre WBPI et Danimal, Inc., intervenant pour les services de Dan Harris, ressortissant et résident américain, c/o William Morris Agency, 151 El Camino Drive, Beverly Hills, CA 90212, à l'attention de Todd Feldman, et Michael Dougherty, ressortissant et résident américain, c/o William Morris Agency, 151 El Camino Drive, Beverly Hills, CA 90212, à l'attention de Danny Greenberg (collectivement « les Auteurs »), les Auteurs ont écrit une première ébauche de scénario (le « Scénario N° 1 »), une seconde ébauche de scénario (le « Scénario N° 2 »), et plusieurs peaufinages (collectivement le « Scénario N° 3 ») intitulés « Red Sun » et tirés des biens Superman et du Concept Superman. Par cet Acte, les Auteurs ont cédés à WBPI l'ensemble de leurs droits, titres de propriété et intérêts afférents au Scénario N° 1, au Scénario N° 2 et au Scénario N° 3, en exclusivité, à perpétuité et dans le monde entier.

12.    WBPI a produit un long-métrage cinématographique intitulé « Superman Returns » et tiré des Scénarios N° 1 à 3 inclus (le « Film »). Le film a été enregistré sur bande en Australie au moyen d'une caméra Genesis à fins de transfert sur pellicule et la pellicule a été développée par Technicolor à Los Angeles en Californie.

13.    En vertu d'un accord général inter-sociétés signé en date du 1er avril 2003 entre WBPI, prédécesseur de Warner Bros. Distributing, Inc., société de droit de l'Etat du Delaware, 4000 Warner Boulevard, CA 91522 (« WBDI »), et Warner Bros. Entertainment Inc., société de droit de l'Etat du Delaware, 4000 Warner Boulevard, Burbank, CA 91522 (« WBEI »), WBDI a cédé à WBEI tous ses droits de distribution et d'exploitation sur le Film et ce, à perpétuité.

14.    Aux termes d'un accord général inter-sociétés signé en date du 1er avril 2003 entre WBEI et Warner Bros. Pictures International, une division de Warner Bros. Distributing Inc., ancienne division de Warner Bros. Pictures Inc. (« International »), WBEI a cédé à International les droits de distribution et d'exploitation du Film dans le monde entier et à perpétuité.

15.    Aux termes d'un accord général de distribution signé en date du 1er décembre 2003 entre International et Warner Bros. France S.A., société de droit français ayant ses bureaux au 115-123 avenue Charles de Gaulle, 92525 Neuilly sur Seine Cedex, France (« WBF »), une licence de distribution du Film sur le territoire de la France Métropolitaine (y compris la Corse), d'Andorre, de Monaco, de l'Algérie, de la Tunisie, du Maroc, de l'Ile Maurice, de Madagascar, de Haïti, des Comores, de la Martinique, de la Guadeloupe, de la Guyane Française, de la Réunion, de la Polynésie Française, de la Nouvelle Calédonie, de Vanuatu (anciennes Nouvelles Hébrides), de Wallis et Futuna, des Terres Australes et Antarctiques Françaises et Djibouti, et sur les navires et dans les avions battant pavillon français mais ne provenant pas ni n'étant à destination des Etats-Unis, en l'état de leurs frontières politiques actuelles, et dans tous les postes diplomatiques, camps, bases, installations et réserves des forces militaires de la France, a été accordée par International à WBF pour une durée d'un an à compter de la livraison de la copie positive.

ROLE N°

000004

CONSERVATION DES REGISTRES
DE LA CINÉMATOGRAPHIE

Monique
ROUZET LELIÈVRE
Expert - Traducteur
Agréé par la Cour
de Cassation
ANGLAIS

Exhibit 1

DC 00164

La déclaration ci-dessus a été lue au comparant qui en a ratifié le contenu en ma présence sous la foi du serment.

WARNER BROS. PICTURES INTERNATIONAL, UNE DIVISION DE WARNER BROS. DISTRIBUTING INC.

(signature manuscrite)
Damon B. Bonesteel
Vice-président

Signé et déclaré sous serment par devant moi ce 12 juin 2006.

(signé) Carol F. TILTON
Notaire Public

| | |
|---|---|
| Sceau rond : | CAROL F. TILTON |
| Grand Sceau de | Charge N° 1448186 |
| l'Etat de Californie | Notaire Public - Californie |
| Eurêka | Comté de Los Angeles |
| | Ma Charge Expire le 28 octobre 2007 |



Pour traduction Certifiée Conforme
à l'original en langue *anglaise*
visé ne variétur sub n° *2006/420*
SOISY, le *15 juin 2006*



ROLE N°
000005
CONSERVATION DES REGISTRES
DE LA CINEMATOGRAPHIE
ET DE L'AUDIOVISUEL

**Exhibit I**
**22**

**DC 00165**



**WARNER BROS.**
**WARNER BROS. PICTURES FRANCE**

## DECLARATION

La société WARNER BROS. FRANCE, déclare que le film :

**SUPERMAN RETURNS**

sera exploité sous le titre français :

**SUPERMAN RETURNS**

Paris, le: 16/06/06

Lori Rault
Directrice Service Technique

*Celine Laborie*
*Service Technique*



Une division de WARNER BROS. FRANCE
Société Anonyme au capital de 20.825.827 € - Siège Social : 115/123, Avenue Charles de Gaulle - 92525 NEUILLY SUR SEINE Cedex
RCS Nanterre B 320 623 846 - Siret 320 623 846 00070 - Code APE 921 C - N° TVA intracommunautaire : FR 53 320 623 846

**Exhibit I**
23

DC 00166

**REGISTRES
DE LA CINEMATOGRAPHIE
ET DE L'AUDIOVISUEL**
11, rue Galilée
75116 PARIS

**REQUETE D'INSCRIPTION**

| | |
|---|---|
| Raison sociale du requérant<br>Adresse de correspondance | WARNER BROS France<br>115/123, avenue Charles De Gaulle<br>92525 Neuilly sur Seine Cedex |
| Personne à contacter | Céline LABORIE  Tél. : 01 72 25 10 93<br>Courriel : celine.laborie@warnerbros.com |

**Contrat signé le  12 / 06 / 2006**

Entre :  WARNER BROS PICTURES INC. (USA)

Et :   WARNER BROS FRANCE

Contrat  en Anglais ☒    déposé en Version originale ☐      accompagné   d'une traduction jurée ☒
(affidavit)         en Espagnol ☐                         d'un résumé ☐

Objet : DISTRIBUTION

Valeurs :

**Œuvres ou Projets**

| Numéro au R.P.C.A. ou au<br>Registre des Options | Titre |
|---|---|
| | **SUPERMAN RETURNS** |

Emoluments à prélever sur le compte client n°.....☐

A...Neuilly sur Seine., le  14/06/06..................

Nom et qualité     Céline LABORIE
                              service technique

**WARNER BROS. PICTURES FRANCE**
Une division de WARNER BROS. France
115/123, Avenue Charles de Gaulle
92525 NEUILLY-SUR-SEINE CEDEX
Tél. : 01 72 25 00 00
RCS Nanterre 320 623 846
Siren 320 623 846

*Céline LABORIE*

**Exhibit I**
24

DC 00167

**REGISTRE PUBLIC
DE LA CINÉMATOGRAPHIE
ET DE L'AUDIOVISUEL**
11, rue Galilée
75116 PARIS

**REQUETE D'IMMATRICULATION**

**FILMS ETRANGERS**

| Raison sociale du requérant<br>Adresse de correspondance | WARNER BROS France<br>115/123, avenue Charles De Gaulle<br>92525 Neuilly sur Seine Cedex | |
|---|---|---|
| Personne à contacter | Céline LABORIE | Tél. : 01 72 25 10 93<br>Courriel : celine.laborie@warnerbros.com |

| Titre<br>de l'œuvre<br>(Sous-titre éventuel) | **SUPERMAN RETURNS** |
|---|---|

Titre original          …SUPERMAN RETURNS……………………………………………

Titre international      …SUPERMAN RETURNS……………………………………………

Producteur de
l'œuvre étrangère      …WARNER BROS PICTURES INC (USA)…………………………

**Caractéristiques**

| Durée :…2……..h………34….m………s | Fiction ☒   Documentaire ☐   Animation ☐ |
|---|---|

**CESSIONS DE DROITS D'AUTEUR A JOINDRE**

Si l'œuvre cinématographique est tirée d'une œuvre préexistante (roman, bande dessinée, pièce de théâtre), préciser le titre
et le nom de l'auteur de cette œuvre :
………………………………………………………………………………………………………………………………

| Auteurs | Qualité<br>(scénariste, dialoguiste, …) | Date de la cession<br>des droits d'auteur |
|---|---|---|
| Dan Harris | Scénariste | 20/07/2004 |
| Michael Dougherty | Scénariste | 20/07/2004 |
| | | |

Emoluments à prélever sur le compte client n°……☐          A…Neuilly sur Seine……., le …14 juin 2006………………………

Nom et qualité          LABORIE Céline
du signataire          Service technique

**WARNER BROS. PICTURES FRANCE**
Une division de WARNER BROS. France
115/123, Avenue Charles de Gaulle
92525 NEUILLY-SUR-SEINE CEDEX
Tél. : 01 72 25 00 00
RCS Nanterre B 320 623 846
Siren 320 623 846
Cachet commercial

| Réservé au service : Doublon : Lettre remise ☐      Lettre demandée ☐ |
|---|

**Exhibit I**
**25**

DC 00168

**Pablo Arredondo**

---

| | |
|---|---|
| **From:** | Tokoro, Jason [jtokoro@omm.com] |
| **Sent:** | Thursday, October 04, 2012 11:54 AM |
| **To:** | Marc Toberoff; Richard Kendall |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Laura Brill; Nicholas Daum; David Harris; Pablo Arredondo; Keith Adams |
| **Subject:** | DC v. PPC |
| **Attachments:** | DC00169-DC00171.pdf |

Counsel,

Please find attached a supplemental production of documents by DC Comics, bates-labeled DC 00169-71.

Very truly yours,

**Jason H. Tokoro**
**O'Melveny & Myers LLP - Century City**
1999 Avenue of the Stars, Suite 700
Los Angeles, California  90067
Direct Dial:  (310) 246-6707
Fax:  (310) 246-6779
Email:  jtokoro@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

 please consider the environment - do you really need to print this email?

**Exhibit J**
**26**



**WARNER BROS.
PICTURES INC.**

Donna Josephson
Associate General Counsel
September 10, 2007

Canadian Audio-Visual Certification Office
100 Sparks Street, 4th Floor
Ottawa, Ontario K1A 0M5
 Canada

Re:    **"SUPERMAN RETURNS"**

Gentlepersons:

  The undersigned, Donna L. Josephson, is a practicing member of the California State Bar and Associate General Counsel at Warner Bros. Pictures, a division of WB Studio Enterprises Inc. ("WB"), with its principal offices at 4000 Warner Boulevard, Burbank, California 91522, United States of America.

  The following sets forth the chain-of-title with respect to the motion picture entitled "SUPERMAN RETURNS" (the "Picture"):

1.  Jerome Siegel and Joseph Shuster, both of whom are now deceased (collectively, "Authors"), wrote and illustrated original character and stories for a comic strip property ("Underlying Material") entitled "Superman" in or around 1938.  Pursuant to an Agreement dated as of March 1, 1938 (as amended and/or restated from time to time thereafter, including on September 22, 1938; December 19, 1939; May 19, 1948; and May 21, 1948), between Authors and Detective Comics, Inc. ("Detective"), Authors sold and transferred to Detective all of their respective right in and to the comic strip, including exclusive motion picture rights, the character, the artwork and the storyline contained therein (collectively, the "Superman Concept").

2.  Pursuant to a merger among several publishing companies, including Detective, in or around September 1946, National Comics Publications, Inc. ("National Comics") became the parent company of Detective, and National Comics acquired all of Detective's rights in and to the Superman Concept pursuant to an Assignment dated February 24, 1947 from Detective to National Comics.

3.  Pursuant to an Assignment and Consolidation Agreement dated January 20, 1966, National Periodical Publications, Inc. ("NPP") became successor-in-interest to National Comics, and thereby became owner of the Superman Concept.

4.  NPP acquired Warner Bros.-Seven Arts corporation, in 1969, and then NPP divested its non-entertainment holdings and became part of the group Warner Communications Inc.

PCDocs #105436

A Warner Bros. Entertainment Company

4000 Warner Boulevard, Burbank, California 91522
(818) 954-4694 • Fax: (818) **Exhibit K** onna.josephson@warnerbros.com
27

DC 00169

Canadian Audio-Visual Certification Office
September 10, 2007
Page 2

("WCI"), a Delaware corporation, in 1972. Pursuant to said successive acquisitions and mergers, WCI became the parent company of NPP in 1972.

5.      Pursuant to the terms and conditions of an Agreement dated as of December 23, 1975 between Authors and WCI and its subsidiaries, inclusive of NPP, Authors agreed and acknowledged that WCI is the sole and exclusive owner of all of the right, title and interest in and to the Superman Concept, including, without limitation, the characters, artwork, and motion picture rights, throughout the world in perpetuity. Pursuant to said Agreement, WCI owns the motion picture production, distribution and ancillary rights in the Superman Concept throughout the world in perpetuity, inclusive of copyrights and trademarks therein.

6.      In or around August 1976, NPP changed its name to DC Comics, Inc.

7.      Pursuant to an Assignment dated as of June 30, 1992, among DC Comics, Inc. (successor-in-interest to NPP), DC Comics, a New York Partnership ("DC") and Warner Bros. Inc., a subsidiary of WCI ("Warner"), on the one hand, and Detective, on the other hand, Detective assigned to Warner all of its right, title and interest in, among other properties, the Superman Underlying Material and Warner, in turn, simultaneously assigned to DC all of its right, title and interest in said property.

7.      Pursuant to an Agreement dated as of August 1, 1992 between Frank Shuster and Jean Shuster Peavy (heirs of Joseph Shuster), on the one hand, and DC, on the other hand, Shuster and Peavy granted to DC in perpetuity all rights in any copyrights, trademarks or other property rights in any and all work created in whole or in part by Joseph Shuster, or any works based thereon, including without limitation, the Superman Concept.

8.      Pursuant to an Agreement dated as of November 6, 1999 between DC and Warner Bros., a division of Time Warner Entertainment Company, L.P. ("WB"), successor-in-interest to Warner, DC assigned an exclusive license to WB through December 31, 2033, throughout the universe, in the motion picture production, distribution and ancillary rights in the Superman Concept, including, without limitation, sequels and remakes. Pursuant to said Agreement, Warner has an exclusive license to produce, distribute and exploit motion pictures, remakes and sequels based on the Superman Concept.

9.      Pursuant to an Agreement dated October 19, 2001 between Joanne Siegel and Laura Siegel Larson (heirs of Jerome Siegel), on the one hand, and DC, on the other hand, Siegel and Larson transferred to DC all of their rights in the Superman properties and the Superman Concept, in relevant part.

10.     Pursuant to the terms and conditions of an Agreement dated as of June 1, 2004 between Red Sun Productions Pty Limited, an Australian corporation ("Red Sun") and Warner Bros. Pictures Inc. ("WBPI"), successor-in-interest to WB, WBPI engaged Red Sun to produce, on behalf of WBPI, one theatrical motion picture based on the Superman properties

**Exhibit K**
**28**

DC 00170

Canadian Audio-Visual Certification Office
September 10, 2007
Page 3


and the Superman Concept.  Pursuant to said Agreement, Red Sun shall retain no rights in the proposed motion picture, all such rights being owned at all times during the production by WBPI.

12.     The Screenplay for the Picture was written as a work for hire for WBPI by Dan Harris ("Harris") and Michael Dougherty ("Dougherty"), pursuant to a Writer Loanout/Employment Agreement dated as of July 20, 2004, as amended.

13.     Red Sun (on behalf of WBPI as provided in Paragraph 10 above) produced a feature length motion picture entitled "Superman Returns" based on screenplay written by Harris & Dougherty (the "Picture").

14.     Pursuant to 3 separate visual effects agreements dated January 26, 2005, April 4, 2005 and April 27, 2005, respectively, Red Sun engaged the following Frantic Film Entitles to perform visual effects services for the Picture:  Frantic Films Australia Pty Ltd (for work to be performed in Australia) and Frantic Films Pacific, Inc. (for work to be performed in Canada).


Very truly yours,

Donna L. Josephson


DLJ/tg

cc:     Karen Fouts
        Ken Zorniak