Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Fax:      (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>          Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>          Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF MARC TOBEROFF IN OPPOSITION TO PLAINTIFF DC COMICS' MOTION FOR AN EVIDENTIARY HEARING AND FOR SANCTIONS**<br><br>*Opposition and Declarations of Keith G. Adams and Laura Siegel Larson filed concurrently herewith*<br><br>Complaint filed: May 14, 2010<br>Discovery Cutoff: None Set<br>Trial Date: None Set<br><br>Date: December 10, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 11 |

DECLARATION OF MARC TOBEROFF

# DECLARATION OF MARC TOBEROFF

I, Marc Toberoff, declare as follows:

1. I am an attorney licensed by the State Bar of California and admitted to practice before the Central District of California. I am the principal at the law firm of Toberoff & Associates, P.C., and counsel of record for defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel, in the above-captioned case. I submit this declaration in opposition to DC Comics' Motion For An Evidentiary Hearing And Sanctions. I have personal knowledge of the matters set forth below.

2. On or about January 23, 2003, I conveyed in a telephone conversation with Don Bulson, the attorney for Michael Siegel, an offer from Ari Emanuel to purchase Michael Siegel's share of his father's 17 U.S.C. § 304(c) termination interest. Mr. Bulson responded with a counter-proposal in June 2003.

## The May-July 2003 Correspondence

3. On July 6, 2003, our firm received a facsimile from our client, Ms. Larson, which was dated July 5, 2003 on its cover page. Although the fax was dated July 5, 2003 on its cover, the "transmission line" at the top of the fax indicates that it was sent on July 6, 2003. That facsimile attached for my review copies of (1) a letter dated May 13, 2003 from Michael Siegel to Laura Siegel Larson (the "May 2003 Letter"), containing several interlineations and underlines, and (2) a draft letter dated July 5, 2003, prepared by Laura Siegel Larson as a response to Michael Siegel's May 13, 2003 letter (the "July 6 Draft").

4. On July 8, 2003, our firm received a facsimile from our client, Laura Siegel Larson, which attached a copy of another draft letter dated July 5, 2003, prepared by Laura Siegel Larson as a response to Michael Siegel's May 13, 2003 letter (the "July 8 Draft").

5. On July 11, 2003, our firm received a facsimile from our client, Laura

Siegel Larson, which attached a copy of a finalized letter dated July 11, 2003, sent by Laura Siegel Larson to Michael Siegel, in response to Michael Siegel's May 13, 2003 letter (the "July 2003 Letter").

6. The May 2003 Letter, July 6 Draft, July 8 Draft and July 2003 Letter (the "May-July Documents") were filed with other attorney-client privileged documents in a client correspondence file for our clients Laura Siegel Larson and Joanne Siegel (the "Siegels"), which were organized chronologically in folders.

7. Toberoff & Associates, P.C. also represents Laura Siegel Larson and Joanne Siegel in the related case, *Siegel v. Warner Bros. Entertainment Inc.*, C.D. Cal. 04-CV-0400 ODW (RZx) ("*Siegel*").

8. In *Siegel,* Joanne and Laura Siegel's position was that the May-July Documents were privileged as attorney-client communications, because they concerned and discussed legal strategy regarding, Joanne and Laura Siegel's common interest with Michael Siegel in negotiations with DC Comics regarding their joint interest in the termination under 17 U.S.C. §304(c)(2). In addition, the May-July Documents included the July 6 Draft and the July 8 Draft, which were draft letters from Laura Siegel specifically sent to me for purposes of my review and commentary as her attorney.

9. In *Siegel,* DC Comics and its effective parent, Warner Bros. Entertainment Inc. (collectively, "DC"), served discovery requests on the Siegels. In 2006, the firm prepared privilege logs on behalf of the Siegels. I instructed one of the two associate attorneys working at the firm at the time to review the firm's client correspondence files and generate privilege logs, as there were several hundred documents that needed to be logged. This privilege log was served on DC on September 29, 2006 (the "September 2006 Log"). Based on a review of the Siegels' September 2006 Log and underlying documents, the associate attorney listed as "facsimiles" on the log the May-July Documents that appeared in our client correspondence files, as part of attorney-client facsimiles.

10. While the May 2003 Letter and July 6 Draft were faxed on July 6, 2003, the fax cover page was incorrectly dated by Ms. Larson as July 5, 2003. Due to this, entry No. 79 on the September 2006 Log was dated July 5, 2003, though it was intended to cover the July 6, 2003 facsimile and its contents.

11. In 2005, numerous privileged documents were systematically stolen from our firm's legal files, including Xeroxed copies of the May-July Documents. DC's account in subsequent motion practice was that at least three identical or nearly identical sets of these stolen documents, along with an anonymous cover letter (the so-called "Timeline"), were sent to three high-ranking DC executives, including DC's General Counsel, in June 2006, and that Wayne Smith, DC's in-house counsel, reviewed the documents. DC then sent these stolen documents to an attorney it retained, and all of the documents (including numerous identical copies) were sequentially labeled with a "Q" Bates stamp (the "Stolen Documents").

12. Q-stamped copies (and later DC's "originals") of the Stolen Documents were sent to our law firm. Among these Q-stamped Stolen Documents were four identical copies of precisely the same version of the May 2003 Letter that had been faxed to me by Ms. Larson. There was never more than one "original" copy of the May 2003 Letter in our firm's possession, which was the one that had been logged in 2006. To my knowledge, DC's contention that there are "4" versions of this May 2003 Letter at issue is patently false. Exhibit "A" to the concurrently-filed Declaration of Keith G. Adams ("AD") demonstrates that each copy of the May 2003 Letter is simply an identical copy of a single document.

13. In March 2007, DC moved in *Siegel* to compel the production of all of the Stolen Documents. In opposition, we noted, on behalf of the Siegels, that many of the Stolen Documents, including the May-July Documents, had previously been withheld and logged as privileged. On April 30, 2007, the Court denied the bulk of DC's motion, but ordered the Siegels to "match-up" the Stolen Documents (by their "Q" Bates numbers) to those documents already produced by the Siegels or listed on

the Siegels' privilege logs.

14. In response to this order, I asked an associate at my firm to prepare a declaration for my signature "matching up" the stolen documents by DC's "Q" Bates numbers to the documents already produced by the Siegels or listed on the Siegels' privilege logs. I reviewed and signed the declaration on May 21, 2007. AD Ex. G.

15. In preparing this May 2007 declaration, the copies of the May 2003 Letter were supposed to be matched-up as they had been logged, as part of Laura Siegel Larson's facsimile communications. The declaration set forth the following:

| Stolen Document | Matched-Up Log Entry (AD Ex. G) | Log Entry Description (Dkt. 317-2, Ex. 1) |
|---|---|---|
| Q0027-0033 (includes May 13, 2003 letter at Q0032-0033) | Plaintiffs' supplemental privilege log #82 | 7/11/2003 facsimile from Laura Siegel to Marc Toberoff |
| Q0138-0145 (includes May 13, 2003 letter at Q0139-0140) | Plaintiffs' supplemental privilege log #79 | 7/5/2003 facsimile from Laura Siegel to Marc Toberoff |
| Q0316-0323 (includes May 13, 2003 letter at Q0318-0319) | Plaintiffs' supplemental privilege log #79 | 7/5/2003 facsimile from Laura Siegel to Marc Toberoff |
| Q0589-0596 (includes May 13, 2003 letter at Q0590-0591) | Plaintiffs' supplemental privilege log #79 | 7/5/2003 facsimile from Laura Siegel to Marc Toberoff |

16. Although I was not aware of this at the time I signed the May 21, 2007 declaration, there was an inadvertent error with respect to the "matching up" of one of DC's four identical (Q-stamped) copies of the stolen May 2003 Letter. Three of the four identical copies of May 2003 Letter (Q Q0139-0140; Q0318-0319; Q0590-0591) had been properly matched-up to the Siegels' privilege log entry #79 for Laura Siegel Larson's July 5, 2003 facsimile. However, one identical copy of the same letter (Q0032-33), had been erroneously matched up to privilege log entry # 82 for Laura Siegel Larson's July 11, 2003 facsimile, instead of log entry # 79, like the other three identical copies.

17. Unfortunately, neither I nor my associate caught this inadvertent error at

the time my May 2007 declaration was prepared and submitted. As shown above, all the other copies of the identical May 2003 Letter were correctly matched up to the privilege log entry #79.

18. In 2007 and 2008, DC brought motions concerning the Siegel's privilege logs, including the logging of the May-July Documents, which were largely denied. In December 2010-January 2011, DC once again raised during a meet-and-confer the issue of the May-July Documents, including the May 2003 Letter. In February 2011, DC filed a motion in this case (Dkt. 160; the "February 2011 Motion") seeking to compel production of, among other things, the May-July Documents.

19. In early 2011, in the course of opposing DC's February 2011 Motion, I learned for the first time, from an associate attorney at my firm, that an error had been made regarding the May 2003 Letter. My understanding of the error at the time was that the May 2003 Letter had *not* been logged with the other documents sent for my review by Ms. Larson. However, I now understand that the letter had been logged and the error, as set forth in Paragraph 16 above, was in mis-matching one of the four identical "Q-stamped" copies of the stolen May 2003 Letter to the wrong entry on the Siegels' privilege log, while correctly matching-up the other three copies.

20. This inadvertent logging error had either been mis-described to me or, more likely, I misunderstood. Nonetheless, I incorrectly believed that the May 2003 Letter had not been logged and that this could be held to constitute a waiver of privilege over the May 13 Letter. Accordingly, Defendants' opposition to DC's February 11 Motion (concerning multiple documents) did not raise arguments as to the May 2003 Letter, and it was thereafter produced by Defendants.

21. Based on my incorrect belief that the May 2003 Letter had not been logged, Defendants' subsequent briefing erroneously referred to the May 2003 Letter as having not having been "logged." Dkt. 267-1 at 26; 269 at 7, 11-12; 296-1 at 4-6; 316 at 24 n.3.

22. In its February 2011 Motion, DC also sought to compel the July 2003 Letter and "a July 5, 2003, letter from Ms. Larson to Michael Siegel," based on a description in the Timeline. Dkt. 160 at 37. *See* Dkt. 49, Ex. A at 65 (Timeline: "July 5, 2003. Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael."). To the best of my knowledge, no letter dated July 5, 2003 was ever sent by Laura Siegel Larson to Michael Siegel, and therefore no such letter existed, as Defendants stated in opposing the motion. The *drafts* of the July 11 Letter that Laura Siegel Larson sent to me via facsimile on July 6, 2003 and July 8, 2003 for my review were both dated July 5, 2003. The thief who wrote the so-called "Timeline" apparently mistook the drafts as actual sent letters.

23. On April 11, 2011, Magistrate Judge Zarefsky issued an order regarding DC's February 2011 Motion, denying it as to the July 2003 Letter and the non-existent July 5, 2003 letter. Dkt. 209 at 11-12. As to the May 2003 Letter, Magistrate Zarefsky ordered Defendants to either produce it or verify that it did not exist. *Id.* at 12.

24. On April 18, 2011, a week after Magistrate Zarefsky issued his order, Defendants produced a copy of the May 2003 Letter to DC, redacting attorney-client information and work product from the letter as faxed by Laura Siegel Larson to our firm. AD Ex. J.

25. When this Court later granted DC's motion for review regarding the July 11, 2003 Letter (Dkt. 336), our law firm promptly produced the document (AD Ex. K), despite our continuing belief that the July 11, 2003 letter, consistently upheld as privileged by Judge Larson, Magistrate Judge Zarefsky and this Court (Dkt. 209, 248, 285, 323) was protected by the attorney-client privilege.

### The Renner Otto Documents

26. It is my understanding that in 2006, after Michael Siegel's death, his attorneys at the Cleveland, Ohio firm of Renner, Otto, Boiselle & Sklar, LLP ("Renner Otto") sent their Michael Siegel paper files to the administrator of Michael

Siegel's estate, Melvin Banchek, an attorney in Cleveland. In 2006, Renner Otto did not send Mr. Siegel's paper files to me or our law firm; nor, to my knowledge, did Renner Otto send such paper files to my clients, Joanne Siegel or Laura Siegel Larson.

27. Also in 2006, in response to a subpoena in the *Siegel* case from DC to Michael Siegel's former attorney Don Bulson, Mr. Banchek sent responsive Michael Siegel paper files to my law firm for privilege review and logging, because Laura Siegel Larson and Michael Siegel held a statutory joint interest in the terminated "Superman" copyrights, and both were entitled to assert privilege. My firm reviewed the documents sent by Mr. Banchek, and prepared a privilege log based thereon. Aside from these materials sent by Mr. Banchek to our firm, we did not access Mr. Banchek's files.

28. Years later, in August 2011, in response to a subpoena from DC to Renner Otto *in this case*, Renner Otto provided our law firm, for the very first time, with a CD containing an "electronic archive" (*i.e.*, digital copies) of Renner Otto's Michael Siegel files, to afford us the opportunity to assert privilege on behalf of our clients.

29. This electronic archive included approximately 85 privileged and non-privileged documents that were not in the Michael Siegel paper files my firm had received in 2006 from Mr. Banchek. Many of those new documents were non-privileged and irrelevant (*e.g.,* relating to the sale of Superman memorabilia), or privileged and irrelevant (*e.g.,* relating to the estate of Michael's mother) while others were clearly privileged and relevant (*e.g.,* communications between Michael and Renner Otto about the Copyright Act's termination right). I first received the November 2001 email and November 2002 letter at issue in DC's motion as part of this electronic archive. My firm promptly logged the privileged documents in the electronic archive, including the November 2001 email and November 2002 letter, and produced the non-privileged documents in the electronic archive to DC.

1  I declare under penalty of perjury of the laws of the United States of America
2  that the foregoing is true and correct.
3  Executed on November 14, 2012, at Malibu, California.

4                                           /s/ Marc Toberoff
                                              Marc Toberoff