DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>      v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF MAY 23, 2011, ORDER DENYING MOTION FOR REVIEW RE: PRODUCTION OF DEFENDANTS' CONSENT AGREEMENT**<br><br>DECLARATION OF CASSANDRA SETO FILED CONCURRENTLY HEREWITH<br><br>Hon. Otis D. Wright II<br><br>Hearing Date:    December 10, 2012<br>Hearing Time:    1:30 p.m.<br>Courtroom:       11 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   DC'S MOTION FOR RECONSIDERATION IS PROCEDURALLY PROPER. ........................................................................................ 2

III.  NEW EVIDENCE CONFIRMS THE CONSENT AGREEMENT IS NOT PRIVILEGED. ...................................................................... 2

IV.   IN ANY EVENT, DEFENDANTS REPEATEDLY WAIVED ANY APPLICABLE PRIVILEGE. .......................................................... 5

      A.    Defendants' Selective Disclosures ....................................... 5

      B.    Peary's Use Of The Agreement To Refresh His Recollection ............. 9

V.    DC NEEDS THE CONSENT AGREEMENT TO CONTINUE LITIGATING THIS CASE. ............................................................ 11

V.    CONCLUSION ............................................................................. 12

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3  CASES

4  *Akamai Techs., Inc. v. Digital Island, Inc.*,
    2002 WL 1285126 (N.D. Cal. May 30, 2002) ...................................................7

5

6  *Ames v. BET*,
    1998 WL 812051 (S.D.N.Y. Nov. 18, 1998) ...................................................7

7  *Apex Mun. Fund v. N-Grp. Secs.*,
    841 F. Supp. 1423 (S.D. Tex. 1993).................................................................8

8

9  *Chicago Bd. Options Exch. v. Int'l Secs. Exch.*,
    2008 WL 3285751 (N.D. Ill. Aug. 8, 2008).....................................................8

10  *Coorstek, Inc. v. Reiber*,
11    2010 WL 1332845 (D. Colo. Apr. 5, 2010) .....................................................8

12  *Dowd v. Calabrese*,
     101 F.R.D. 427 (D.D.C. 1984) ........................................................................7
13

14  *Ehrlich v. Howe*,
     848 F. Supp. 482 (S.D.N.Y. 1994) ...........................................................10, 11

15  *Hebbard v. City of Dover*,
16    2007 U.S. Dist. LEXIS 59966 (D.N.H. Aug. 13, 2007)...................................8

17  *Hernandez v. Tanninen*,
     604 F.3d 1095 (9th Cir. 2010)................................................................6, 7, 9

18  *Hoot Winc, LLC v. RSM McGaldrey Fin. Process Outsourcing, LLC*,
19    2009 WL 3857425 (S.D. Cal. Nov. 16, 2009) ...........................................3, 10

20  *In re Comair Air Disaster Litig.*,
     100 F.R.D. 350 (E.D. Ky. 1983) ....................................................................11
21

22  *In re Grand Jury Proceedings*,
     655 F.2d 882 (8th Cir. 1981).........................................................................3

23  *In re Grand Jury*,
     357 F.3d 900 (9th Cir. 2004)..........................................................................4
24

25  *In re Pacific Pictures Corp.*,
     679 F.3d 1121 (9th Cir. 2012).........................................................................3

26  *In re Rivastigmine*,
27    486 F. Supp. 2d 241 (S.D.N.Y. 2007) ............................................................11

28

*Joseph Schlitz Brewing Co. v. Muller & Phipps (Hawaii), Ltd.*,
   85 F.R.D. 118 (W.D. Mo. 1980) ..................................................................... 10

*Matter of Grand Jury Proceeding*,
   898 F.2d 565 (7th Cir. 1990) ........................................................................... 3

*New Jersey v. Sprint*,
   258 F.R.D. 421 (D. Kan. 2009) ....................................................................... 9

*U.S. v. 22.80 Acres of Land*,
   107 F.R.D. 20 (N.D. Cal. 1985) ................................................................ 10, 11

*U.S. v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) .......................................................................... 4

*U.S. v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) .......................................................................... 7

*U.S. v. Buljubasic*,
   808 F.2d 1260 (7th Cir. 1987) ........................................................................ 8

*U.S. v. Chen*,
   99 F.3d 1495 (9th Cir. 1996) .......................................................................... 3

*U.S. v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) ................................................................. 3, 4

*U.S. v. Frederick*,
   182 F.3d 496 (7th Cir. 1999) ....................................................................... 3, 4

*U.S. v. Greenstein*,
   2010 WL 3222533 (W.D. Wash. Aug. 9, 2010) ............................................. 7

*U.S. v. Zolin*,
   491 U.S. 554 (1989) ....................................................................................... 3

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. 1981) ................................................................ 6, 7, 9, 10

*Westinghouse Elec. Corp. v. Republic of Phil.*,
   951 F.2d 1414 (3d Cir. 1991) ...................................................................... 6, 9

**STATUTES**

17 U.S.C. § 304(c)(6)(D) ....................................................................................... 1

**RULES**

FED. R. EVID. 502 .............................................................................................. 6, 9

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT

## I.    Introduction

In granting DC summary judgment on its Third Claim, the Court held that defendants' Consent Agreement is "invalid" because—like Toberoff's other unlawful contracts—it "improperly restrict[s] the Shuster heirs' ability to enter into agreements with DC" and "run[s] afoul of 17 U.S.C. § 304(c)(6)(D)."  DN 507 at 5, 17.  Defendants never grapple with this ruling in their 22-page brief and, instead, insist the Consent Agreement is a righteous, privileged document "created for purposes of settlement."  Opp. 1.  New evidence refutes these false claims, and the Agreement should be ordered produced, as it is directly relevant to all further proceedings here and on appeal on DC's First and its Third through Sixth Claims.

The newly revealed evidence confirms that the Consent Agreement is *not* a mediation document, nor an attorney-client communication, nor attorney work-product, *but rather* an illegal business deal between defendants that bars the Shusters from freely assigning their putative Superman rights to DC.  Mot. 7-11, DN 507 at 5, 17.  Judge Larson's 2008 ruling in *Siegel* that the Consent Agreement was privileged—which Magistrate Judge Zarefsky found bound him in April 2011—was based solely on Toberoff's unsupported (and, we now know, false) representation that the Agreement merely "summariz[ed]" his "discussions" with his clients.  Mot. 7; *see id.* at 5-15.  Defendants' recent deposition admissions in this case and other recent discovery—*all* post-dating the Magistrate's April 2011 ruling—prove Toberoff's representations to Judge Larson were false and that this motion for reconsideration is fully warranted.

In any event, defendants waived any alleged privilege in the Agreement when they disclosed its contents: in an open letter to their adversary (DC), during defendants' recent depositions, in recent court submissions, and when Peary used the Agreement to refresh his recollection before testifying.  Defendants' claim that they had agreements with DC or other protections that bar a finding of waiver is factually and legally without merit, as are the litany of other arguments they make.

DC'S REPLY ISO MOT. FOR RECON. RE: CONSENT AGREEMENT

**II.     DC's Motion For Reconsideration Is Procedurally Proper.**

A.  Defendants' assertion that DC failed to meet and confer, Opp. 3-4, is frivolous.  Not only did DC raise this issue in numerous letters and calls with defendants, PD Exs. G-M; DN 374 at 5 n.7; DN 307 at 21 n.3, in a September 21, 2012, court filing, DC reminded defendants it would "move shortly to compel the production of the Consent Agreement" because "new facts have emerged that disprove Toberoff's assertions" about its contents and "defendants have selectively disclosed information about the agreement that reveal many of its contents."  DN 493 ¶¶ 13-18; Ninth Circuit Appeal No. 11-56934, DN 37-1 at 42-43 (same).

B.  Defendants selectively quote from DC's brief to assert that DC's current motion is improperly "recycled," but their four-page chart making this false claim, Opp. 5-8, tellingly *omits all of the new evidence* on which DC's present motion is premised.  DC seeks reconsideration based on new evidence that was *never* before the Court in 2008 or in April 2011, including proof that emerged in late 2011 and throughout 2012.  This new evidence shows that Toberoff's representations—on which Judge Larson relied—cannot be trusted, Mot. 6-11, and it consists of defendants' repeated disclosures and use of the Consent Agreement during depositions in June and July 2011 and 2012, *id*. 11-17.  "[T]he emergence of new material facts" after a court's prior ruling warrants reconsideration under Rule 7-18.

**III.     New Evidence Confirms The Consent Agreement Is Not Privileged.**

A.  Defendants say the Consent Agreement is an "attorney-client communication created for purposes of settlement."  Opp. 1.  It is no such thing; it is a formula for dividing money between the Siegels and Shusters in exchange for the Shusters agreeing to forfeit their right to deal freely with DC.  DN 245 (sealed).  When DC sought the document in discovery, defendants misled Judge Larson and said the "Withheld Document" was not an agreement, but a "summar[y]" of their "discussions" leading up to a mediation.  PD Ex. E at 23-27; Mot. 7-8.  The new evidence DC uncovered since this Court's ruling in 2011 shows that this claim was

false.  Peary, Larson, and Toberoff have now testified the Consent Agreement is a contract that binds the Shusters, PD Exs. O at 790:19-23, 800:25-801:3, 808:1-810:12; P at 830:23-831:2; Q at 856:1-857:8, it does not merely "summarize" an attorney-client discussion.  And defendants admit its effect is not limited to a 2008 mediation session that terminated years ago; rather, until this Court's October 17, 2012, ruling invalidated it, DN 507 at 16-17, the Consent Agreement remained in force, PD Exs. O at 804:5-7; Q at 855:10-12, and impeded DC's rights under state and federal to contract with the Shusters, DN 90 at 4-14; 334 at 11-15, 23-25.

Business contracts that unlawfully restrict bargaining rights, DN 507 at 5, 17, and that establish a formula for dividing money, DN 491 at 19-23; 493 ¶¶ 13-17; 245, are not shielded by privilege.  *See In re Grand Jury Proceedings*, 655 F.2d 882, 884 (8th Cir. 1981) ("records" such as "offers to buy, ... contracts, purchase agreements" not privileged); *U.S. v. Davis*, 131 F.R.D. 391, 401-02 (S.D.N.Y. 1990) ("business negotiations" not privileged); *Matter of Grand Jury Proceeding*, 898 F.2d 565, 567 (7th Cir. 1990) (terms regarding "payment of fees" not privileged); *Hoot Winc, LLC v. RSM McGaldrey Fin. Process Outsourcing, LLC*, 2009 WL 3857425, *2 (S.D. Cal. Nov. 16, 2009) (same); *cf. U.S. v. Zolin*, 491 U.S. 554, 563 (1989) (no privilege where attorney-client communication furthers commission of fraud); *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (privilege does not apply where lawyer acts as "business agent").  If there were any other rule, parties could shield all business dealings—and illegal contracts—from discovery simply by having an attorney negotiate, draft, or discuss them.  The law rejects this tactic.  *Id.*; *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129, 1125 (9th Cir. 2012).

B.  Defendants also argue the Consent Agreement is work product because it was "prepared during the course of the *Siegel* litigation by … counsel for purposes of global settlement."  Opp. 10.  Again, business agreements do not become privileged because counsel drafted them or had litigation in mind when he did so.  *See U.S. v. Frederick*, 182 F.3d 496, 501-02 (7th Cir. 1999) (tax worksheets

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT

1    prepared by lawyer unprotected even though they reflected his "legal cogitations"

2    about litigation); *see also Davis*, 131 F.R.D. at 401-02.

3        Defendants' cited cases merely recognize that a document prepared by an

4    attorney in connection with litigation *might* constitute work product.  *In re Grand*

5    *Jury*, 357 F.3d 900, 910 (9th Cir. 2004); *U.S. v. Adlman*, 134 F.3d 1194, 1203 (2d

6    Cir. 1998).  But work-product protection does not apply where, as here, there is an

7    "independent purpose for creating a document"—*i.e.*, here, trading money for the

8    Shusters' rights.  *Grand Jury*, 357 F.3d at 908; *Adlman*, 134 F.3d at 1203-04.  As

9    *Frederick* holds, by allowing an attorney to prepare tax analyses, including directly

10   related to litigation, defendants "ran the risk that his legal cogitations born out of

11   his legal representation of them would creep into his worksheets and so become

12   discoverable ….  *[I]f his legal thinking infects his worksheets, that does <u>not</u> cast the*

13   *cloak of privilege over the worksheets;* they are still accountants' worksheets,

14   *<u>unprotected</u> no matter who prepares them*."  182 F.3d at 501 (emphases added).

15       Defendants' testimony confirms that the Consent Agreement is a contract

16   between non-lawyers that exists beyond the auspices of any mediation.  *Supra* at 2-

17   3.  The Consent Agreement promises the Shusters money, and in turn demands that

18   they restrict their ability to enter into a contract with DC—all in violation of the

19   Copyright Act and DC's rights.  *Id*.  That Toberoff drafted the illegal contract does

20   not make it privileged—it only "ran the risk" that DC would see any of his "legal

21   cogitations" that "infect" the document, when DC rightly discovers it.

22       C.  Defendants say Judge Larson's refusal to order production of the Consent

23   Agreement was "not based on Mr. Toberoff's 'assertions,' but upon the nature of

24   the document [and its] creation for purposes of litigation settlement …."  Opp. 12.

25   Again, untrue.  All Judge Larson knew about the "nature of the document" was

26   what Toberoff told him.  Judge Larson *never* reviewed the document, *never* knew it

27   was a contract, *never* knew its title, *never* saw Toberoff's letter disclosing its terms,

28   DN 245, and *never* had access to defendants' recent admissions about its terms and

1   its existence years after the 2008 mediation, Mot. 7-11; DN 173 at 710; Case No.

2   CV-04-8400, DN 395 at 10:1-2, 13:11-12.  Judge Larson knew only that Toberoff

3   called it the "Withheld Document" and accepted Toberoff's "characterization of [it]

4   as a privileged document, as an officer of the court," saying:  "*I will rely on that*

5   *representation*."  PD Ex. E at 29 (emphasis added).

6        Scores of new facts have now emerged that show Toberoff's representations

7   about the allegedly privileged nature of the Consent Agreement—and *many other*

8   *documents*—cannot be trusted.  Mot. 8-11; DN 500 at 4-21.  Defendants' efforts to

9   excuse his deceptions, Opp. 12-13, are unconvincing.  To take just two examples:

10  • Defendants accuse DC of "falsely assert[ing] that Mr. Toberoff 'misle[d]' the

11    U.S. Copyright Office."  Opp. 13.  This ignores this Court's October 17

12    ruling, which expressly found "problematic" defendants' "failure to inform

13    the copyright office of agreements which they themselves believed would

14    affect ownership of the [Shusters'] copyrights…."  DN 507 at 14-15.

15  • Defendants also assert Toberoff did not have a copy of his November 2001

16    email to Michael Siegel "until 2011," and say "DC has *never* presented any

17    evidence refuting this."  Opp. 12-13.  DC submitted clear evidence—from

18    Michael's lawyer and Toberoff's and his associate's sworn filings—showing

19    he had the email since *2006*.  DN 500 at 19-21.  Based on this very showing,

20    the Court ordered Toberoff to produce the email.  *Id.*; DN 457.

21  **IV.  In Any Event, Defendants Repeatedly Waived Any Applicable Privilege.**

22       A.    Defendants' Selective Disclosures

23       Toberoff allowed Peary and Larson to testify openly about aspects of

24  Consent Agreement that he deemed helpful to defendants, but refused to allow them

25  to testify about its harmful contents (including the Superboy *quid pro quo*) based on

26  false claims of privilege.  The Rules "prevent a selective and misleading

27  presentation of evidence to the disadvantage of" the non-disclosing party.  FED. R.

28  EVID. 502, Advisory Comm. Note.  A party "cannot be allowed, after disclosing as

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT

1   much as he pleases, to withhold the remainder."  *Weil v. Inv./Indicators, Research*

2   *& Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Westinghouse Elec. Corp. v.*

3   *Republic of Phil.*, 951 F.2d 1414, 1426 n.12 (3d Cir. 1991) (same); *Hernandez v.*

4   *Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged

5   communication … results in waiver as to all other communications on the same

6   subject.").  Defendants have *no response* to these cases—all of which were cited in

7   DC's Motion.  Mot. 15.  Their four remaining arguments are without merit:

8        1.  Defendants say DC's counsel "agreed on-the-record that such testimony

9   would not constitute a waiver," Opp. 1, but DC's counsel *never* made this blanket

10  agreement.  Indeed, Peary and Larson freely testified about many aspects of the

11  Consent Agreement absent any agreement, including:  its continued existence, PD

12  Ex. O at 804:5-7; its signatories, *id.* Exs. O at 790:19-791:4; P at 824:10-15; its

13  title, *id.* Ex. O at 797:15-25; that it does not provide for payment to Toberoff, *id.*

14  Ex. P at 839:15-840:13;[1] that Peary told his mother he was entering into a contract

15  with the Siegels that "had to do with settling," Seto Decl. ("SD") Ex. 1 at 4:6-17;

16  and that the Shusters have no separate "agreement with the Siegels regarding

17  Superboy" or claim to "money associated with Superboy," PD Ex. O at 814:15-25.

18       There were *two* deposition questions cited in DC's brief—hardly the "vast

19  majority," Opp. 1—that Toberoff refused to allow Peary to answer unless DC

20  agreed privilege would not be waived as to *the specific answer*:  (1) whether the

21  Consent Agreement entitles the Shusters to "share in any proceeds or recovery

22  attributable to Superboy," and (2) whether Peary told his mother "that any

23  agreement with DC or settlement with DC requires the consent of the Siegels," PD

24
25  [1] Defendants argue DC's counsel agreed that Larson's answer to this question
    would not waive privilege.  This is untrue—Toberoff never even asserted privilege:
         Mr. Toberoff:  I -- I will allow you to answer as to -- because what is not in
26  the agreement would not be privileged.  Did I say that right?
         Mr. Petrocelli:  You did.
27       Mr. Toberoff:  *Some things not in the agreement we are not asserting*
    *privilege.  Id.* at 839:19-25 (emphasis added).
28

Ex. O at 812:9-814:13, 807:8-808:8. DC's counsel agreed only as to those specific questions and answers—not as to all other testimony about the Consent Agreement. *Id.* at 812:19-21 (Mr. Petrocelli: "I guess I'll have to do this on a question-by-question basis. So as to this particular question and answer, that's acceptable."). In any event, Toberoff later allowed Peary to testify on the same topics *without* any agreement on waiver. *E.g.*, *id.* at 814:15-815:5, 817:15-818:5 (whether Shusters have agreement "with the Siegels regarding Superboy," are entitled to "money associated with Superboy," or any other agreement "by which the Shuster interests would share in any accounting recovery by the Siegel parties"); *id.* at 808:10-811:4, 804:23-805:24, SD Ex. 1 at 4:6-17 (Peary's discussions with his mother about the existence and effect of the Agreement).

    And to be clear, DC does not argue Peary and Larson's *specific answers* to those two questions effected a waiver over the Consent Agreement, but that defendants' tactical decision to testify about some aspects of the Agreement while refusing to testify on others—or conditioning any testimony on an agreement not to waive—waived privilege. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *U.S. v. Bilzerian*, 926 F.2d 1285, 1291-94 (2d Cir. 1991); *accord Weil*, 647 F.2d at 24; *Hernandez*, 604 F.3d at 1100.[2]

    2. Defendants argue that the "bulk of the testimony [DC cites] provided information that DC already knew." Opp. 16. Not so. All DC knew about the Consent Agreement was what Toberoff stated in his 2008 letter disclosing it. DN 245. Defendants provided *no* further details in discovery until their depositions;

_____

[2] Defendants' supposedly contrary cases provide them no help. *U.S. v. Greenstein*, 2010 WL 3222533, at *3 (W.D. Wash. Aug. 9, 2010), held that defendants' provision of privileged communications to the government *waived* privilege. In *Akamai Techs., Inc. v. Digital Island, Inc.*, 2002 WL 1285126, at *2 (N.D. Cal. May 30, 2002), the parties had a *blanket* agreement that communications would be used for settlement purposes only. In *Ames v. BET*, 1998 WL 812051, at *2-4 (S.D.N.Y. Nov. 18, 1998), and *Dowd v. Calabrese*, 101 F.R.D. 427, 439-40 (D.D.C. 1984), the parties had similar *blanket* agreements concerning deposition testimony.

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT

1   their legal briefs concerning the Agreement were deliberately opaque and DC could

2   only surmise what the Agreement's contents were.  *Compare* DN 160 at 21-25, 62-

3   64, *with* DN 147-1 at 13-23, *with* Opp. 17:17-23.  Peary and Larson's depositions

4   revealed key information about the Consent Agreement, including, for example, the

5   parties to the Agreement, and its continued existence.  Mot. 7-12.  These were

6   details defendants refused to confirm, including in meet-and-confer discussions that

7   preceded DC's filing of its initial Consent Agreement motion.  SD Exs. 4 at 41; 5

8   ¶ 8; 6 at 50.  Unlike in defendants' cited cases, the details of defendants' back-room

9   Consent Agreement—which DC is still uncovering—are *not* a "matter of public

10  knowledge."  *U.S. v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987); *Hebbard v.

11  City of Dover*, 2007 U.S. Dist. LEXIS 59966 (D.N.H. Aug. 13, 2007).

12      3.  Defendants say Peary and Larson only revealed "superficial information"

13  about the Consent Agreement, which is not enough to waive privilege.  Opp. 17.

14  This is untrue as well; their deposition admissions (*e.g.*, that the document was a

15  contract, that it remains in force today) refute what Toberoff told Judge Larson (that

16  it is a memo summarizing a client discussion).  *Supra* at 2-3.

17      Defendants' cited cases here are again off point.  They hold only that waiver

18  does not occur where a disclosure "merely advert[s]" to the "fact or topic of a

19  confidential communication" rather than "its content"—*e.g.*, where a witness

20  discloses "topical descriptions" like "in a privilege log."  *Chicago Bd. Options

21  Exch. v. Int'l Secs. Exch.*, 2008 WL 3285751, at *4 (N.D. Ill. Aug. 8, 2008); *see

22  Coorstek, Inc. v. Reiber*, 2010 WL 1332845, at *7-*8 (D. Colo. Apr. 5, 2010)

23  (witness testified that she met with counsel and they discussed "something about

24  ceramics"); *Apex Mun. Fund v. N-Grp. Secs.*, 841 F. Supp. 1423, 1430 (S.D. Tex.

25  1993) (witness "revealed only the general nature of attorney conversations").  That

26  is not the situation here.  Defendants never logged the Consent Agreement in

27  *Siegel*, and their privilege log here conceals key details about the Agreement that

28  Peary and Larson later testified to, including their admissions that it remains in

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT

force and effect to this day.  DN 163-17 at 979-80 (Entry Nos. 2157, 2165).

4.  Finally, defendants say Peary's and Larson's "testimony about what is *not*
in the Consent Agreement"—*e.g.*, that it allegedly does not require the Siegels to
pay the Shusters part of any recovery from the *Superboy* case—cannot waive
privilege.  Opp. 18.  This is factually and legally misplaced.

Defendants went beyond merely denying that certain provisions were in the
Consent Agreement.  They freely testified that the Agreement does not entitle the
Shusters to share in proceeds from the Siegels' *Superboy* termination and case, but
refused to answer at all as to whether the Consent Agreement entitles the Shusters
to share in proceeds from the Siegels' *Superman* termination and case.  Mot. 11-15;
PD Exs. O at 817:5-818:11, P at 832:20-25, 835:17-836:4, 834:20-835:3.  The
obvious inference this tactic confirms is that the Agreement *does* provide for a
payout from the Siegels to the Shusters from their *Superman* proceeds as a *quid pro
quo* for the Shusters' agreement to disclaim any interest in Superboy.  Mot. 13-15.
The case law—which defendants never address—holds that *all* selective disclosures
about the content of a privileged document waive privilege.  *See* Fed. R. Evid. 502,
Advisory Comm. Note (Rules "prevent a selective and misleading presentation of
evidence"); *Weil*, 647 F.2d at 24; *Westinghouse*, 951 F.2d at 1426 n.12; *Hernandez*,
604 F.3d at 1100.  Defendants' single cited case—*New Jersey v. Sprint*, 258 F.R.D.
421, 428 (D. Kan. 2009)—is off point and merely holds that a witness's statement
that he "got legal advice" on a certain topic did not result in a waiver as to the
substance of that advice.  Here, Toberoff let the heirs testify concerning facts he
deemed helpful to defuse DC's Superboy Fraud claim.  Then he shut the heirs down
when DC asked the logical follow-up question that Toberoff knew had a harmful
answer.  This is a quintessential example of selective waiver.  *Weil*, 647 F.2d at 24.

B.    Peary's Use Of The Agreement To Refresh His Recollection

Defendants concede that privilege is waived under Rule 612 where a witness
uses a writing to refresh his recollection before testifying and justice warrants

9

disclosure.  Opp. 19.  That is precisely what happened here.  Peary testified that he reviewed the *entire* Consent Agreement to prepare for his deposition, PD Ex. O at 789:1-90:1, and even "brought a copy of [its] first page" and a letter from Toberoff describing the Agreement *to his deposition* "to jog [his] memory," *id.* at 792:12-18, 794:8-19.  These admissions alone are sufficient to waive privilege over the entire Agreement.  Defendants' three arguments to the contrary are unavailing:

1.  Defendants say there can be no waiver because Peary did not read the Consent Agreement in depth before testifying, but "just scanned -- the pages." Opp. 20.  But even "scanning" a document effects a waiver where, as here, it jogs a witness's memory.  *See Hoot Winc, LLC,* 2010 WL 3894966 at *5 (ordering production of report where witness "refreshed her recollection by at least 'scanning' her report") (emphasis added); *accord U.S. v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985); *Ehrlich v. Howe*, 848 F. Supp. 482, 494 (S.D.N.Y. 1994).

In defendants' *Joseph Schlitz*, 85 F.R.D. 118, 119 (W.D. Mo. 1980), case, plaintiff sought to compel production of an attorney's *entire correspondence file* because the witness "*may* have looked at it prior to testifying."  (Emphases added.) Plaintiff made "no attempt" to have the witness "identify selected papers in his correspondence file that he may actually have examined."  *Id.*  Here, there is no doubt that Peary reviewed the one and only document that DC seeks—he admitted repeatedly that he "reviewed" the entire Consent Agreement to prepare for his deposition and to "jog [his] memory."  PD Ex. O at 792:12-18, 794:10-19.

2.  Defendants claim Peary only testified as to "rudimentary aspects" of the Consent Agreement, which he "would have known independently" of his review. Opp. 21.  Rule 612 does not condition waiver on a witness testifying as to *all* material aspects of the document he reviewed—rather, it "permit[s] discovery of writings (or portions thereof) that a witness reviewed *before* a deposition for the purpose of refreshing his or her recollection; *any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed*."

10

1    *22.80 Acres of Land*, 107 F.R.D. at 25; *accord In re Comair Air Disaster Litig.*, 100

2    F.R.D. 350, 353 (E.D. Ky. 1983).  Again, Peary testified he reviewed the *whole*

3    document, PD Ex. O at 792:12-18, 794:10-19, and DC would have questioned him

4    about the whole document, but for Toberoff's improper objections.

5            Defendants mistakenly rely on *In re Rivastigmine*, 486 F. Supp. 2d 241, 243-

6    44 (S.D.N.Y. 2007), in which the court declined to order privileged material

7    produced that had no "sufficient 'impact' on the [witness's] testimony" because the

8    witness was not even "a percipient witness" to the case.  Here, the Consent

9    Agreement is directly relevant to each of DC's federal and state-law claims (save

10   for its Second Claim), and as the only now-competent person who signed the

11   Agreement for the Shuster family, Mark Peary, is the key, percipient witness to it.

12           3.  Defendants argue that DC does not need the Agreement "to cross-examine

13   Mr. Peary."  Opp. 22.  But unlike in cases like *Rivastigmine*, the best and only way

14   to cross-examine Peary about the contents of the Consent Agreement is with the

15   document itself, and the "policy in favor of effective cross-examination" "weights

16   the balance" in favor of production.  *In re Comair*, 100 F.R.D. at 353; *accord 22.80*

17   *Acres of Land*, 107 F.R.D. at 26.  As one court aptly held, "it would be unfair and

18   unduly prejudicial to permit" Peary to review the document, and to "give a

19   deposition with it fresh in his mind, yet keep it unavailable" to DC.  *In re Comair*,

20   100 F.R.D. at 353; *accord Ehrlich*, 848 F. Supp. at 494.

21   **V.    DC Needs The Consent Agreement To Continue Litigating This Case.**

22           This Court's grant of summary judgment to DC on its First and Third Claims

23   hardly "moots" its need to discover the Consent Agreement.  Opp. 19, 21-22.  The

24   Consent Agreement is a part of DC's Sixth Claim—on which DC will soon seek

25   summary judgment, as defendants well know.  SD Ex. 3.  It also bears directly on

26   DC's Fourth and Fifth Claims, DC's pending sanctions motion, DN 500, and any

27   appeal defendants take on *any* of DC's six claims (save for the Second Claim).

28   Indeed, at the Ninth Circuit oral argument held last week on defendants' failed

11

1   SLAPP motion, defense counsel yet again openly discussed the contents and terms

2   of the Consent Agreement, and DC pointed out not only that this description was

3   untrue, but that it was presently seeking the Consent Agreement in a pending

4   discovery motion to refute such contentions.  SD Ex. 2 at 19:7-20:15, 30:10-17.

5   When this Court's ruling on DC's Third Claim—like any of its claims is heard here

6   or on any appeal—the court should have in hand the actual Consent Agreement, not

7   defendants' selective, self-serving, and false descriptions of the document.

8        As for defendants' claim that they need to keep the Consent Agreement

9   secret to advantage themselves in future settlement negotiations with DC, Opp.

10  22:9-16, that ship has sailed.  The Consent Agreement has been adjudicated to be

11  invalid as part of DC's Third Claim in this case.  *Supra* at 1.  Its terms and contents

12  should come to full light.  Once the Consent Agreement is disclosed, the parties

13  will have a full and fair opportunity to mediate, unburdened by the unlawful

14  restraints imposed by Toberoff's illegal agreements—and with the Shuster and

15  Siegel heirs once and for all knowing they no longer have to labor under its terms.

16  SD Ex. 2.  At present, there are no assurances this is the case.

17  **VI.   Conclusion**

18       DC's motion should be granted.

19  Dated:         November 15, 2012              Respectfully Submitted,

20                                               By:  /s/ Daniel M. Petrocelli
21                                                   Daniel M. Petrocelli

22  OMM_US:71127931

23

24

25

26

27

28

DC'S REPLY ISO MOT. FOR
RECON. RE: CONSENT AGREEMENT