DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>         Plaintiff,<br><br>    v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>         Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE OCTOBER 17, 2012 ORDER GRANTING DC COMICS PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS, AND FOR AN EVIDENTIARY HEARING**<br><br>DECLARATION OF ASHLEY PEARSON AND [PROPOSED] ORDER SUBMITTED CONCURRENTLY HEREWITH<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:  December 17, 2012<br>**Hearing Time**:  1:30 p.m.<br>**Courtroom**:  11 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 2

III. DEFENDANTS' MOTION TO VACATE SHOULD BE DENIED. .............. 6

    A. Defendants' Motion Is An Improper Request For Reconsideration. ................................................................................ 6

    B. Defendants Cannot Satisfy Their Proposed Rule 60(b)(3) Standard. ............................................................................................ 9

IV. DC SHOULD BE AWARDED ITS FEES AND COSTS. ............................ 12

V. CONCLUSION ................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Cryovac*,
   862 F.2d 910 (1st Cir. 1988) ................................................................ 10, 11

*Ashton–Tate Corp. v. Ross*,
   916 F.2d 516 (9th Cir. 1990) ........................................................................ 9

*Brown v. U.S.*,
   2011 WL 333380 (C.D. Cal. Jan. 31, 2011) ................................................ 8

*Bunch v. U.S.*,
   680 F.2d 1271 (9th Cir. 1982) .................................................................... 11

*Coastal Transfer Co. v. Toyota Motor Sales*,
   833 F.2d 208 (9th Cir. 1987) ........................................................................ 8

*Dukes v. City of Minneapolis*,
   339 F. App'x 665 (8th Cir. 2009) ............................................................... 10

*Edwards v. Carey*,
   2006 WL 3437901 (E.D. Cal. Nov. 29, 2006) ............................................. 3

*Figueroa v. Gates*,
   2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) ............................... 2, 7, 12

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
   2009 WL 7464165 (C.D. Cal. Feb. 18, 2009) ............................................. 8

*In re Impac Mortg. Holdings, Inc. Secs. Litig.*,
   2006 WL 6886003 (C.D. Cal. June 9, 2006) ........................................... 7, 8

*In re M/V Peacock on Complaint of Edwards*,
   809 F.2d 1403 (9th Cir. 1987) ........................................................ 9, 10, 11

*In re Staff Inv. Co.*,
   146 B.R. 256 (Bankr. E.D. Cal. 1992) ....................................................... 10

*In re Vioxx Prods.*,
   489 F. Supp. 2d 587 (E.D. La. 2007) ......................................................... 11

*Jones v. Aero/Chem Corp.*,
   921 F.2d 875 (9th Cir. 1990) ...................................................................... 11

*MGA Entm't, Inc. v. Nat'l Prods., Ltd.*,
   2012 WL 182158 (C.D. Cal. Jan. 23, 2012) .............................................. 10

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  2010 WL 4536779 (C.D. Cal. Nov. 1, 2010) ......................................................... 8

*Optional Capital, Inc. v. Kim*,
  2008 WL 2986660 (C.D. Cal. Aug. 1, 2008) ......................................................... 8

*Price v. Household Int'l Grp. Ins. Plan*,
  2008 WL 4554161 (C.D. Cal. Oct. 7, 2008) ......................................................... 9

*Rodriguez v. Cnty. of Stanislaus*,
  2010 WL 4513403 (E.D. Cal. Nov. 2, 2010) ......................................................... 3

*Ross v. Corp. of Mercer Univ.*,
  2007 WL 1521605 (M.D. Ga. May 23, 2007) .................................................. 2, 10

*Rozier v. Ford Motor Co.*,
  573 F.2d 1332 (11th Cir. 1978) ............................................................................ 11

*Shah v. Cnty. of Los Angeles*,
  2008 WL 4200603 (C.D. Cal. Sept. 4, 2008) ......................................................... 8

*Square Constr. Co. v. WMATA*,
  657 F.2d 68 (4th Cir. 1981) .................................................................................. 11

*Tatum v. City & Cty. of San Francisco*,
  441 F.3d 1090 (9th Cir. 2006) ............................................................................... 9

*Treppel v. Biovail Corp.*,
  233 F.R.D. 363 (S.D.N.Y. 2006) ........................................................................... 3

*Universal Dyeing & Printing, Inc. v. U.S. Textile Printing, Inc.*,
  2011 WL 5865567 (C.D. Cal. Nov. 21, 2011) ....................................................... 8

*Zurich N. Am. v. Matrix Serv., Inc.*,
  426 F.3d 1281 (10th Cir. 2005) ..................................................................... 10, 11

**RULES**

FED. R. CIV. P. 37(a)(2) ............................................................................................. 10

FED. R. CIV. P. 54(b) .................................................................................................... 6

FED. R. CIV. P. 56(d) ....................................................................................... 1, 3, 9, 10

FED. R. CIV. P. 60(b)(3) ..................................................................................... *passim*

C.D. L.R. 7-18 ................................................................................................... *passim*

C.D. L.R. 83-7 ........................................................................................................... 12

## I. INTRODUCTION

Defendants' motion to vacate the Court's recent summary judgment ruling is frivolous and should be denied. It presses meritless discovery arguments about four documents, but none is new. Defendants raised the *very same arguments* during summary judgment, but the Court declined to credit them and issued its October 17, 2012, ruling in DC's favor. Defendants' rehashing of the very same discovery disputes now is nothing more than a motion for reconsideration—based on *no new facts or law*, and all in violation of the Court's clear rules. C.D. L.R. 7-18.

Defendants' motion also fails on the merits. First, the Court's summary judgment order did not rely upon the four documents at issue. There is no reason to vacate an order that did not rely on such evidence. Second, even under defendants' incorrect Rule 60(b) test, they must show that DC's production prevented them from "fairly" presenting their case. Mot. 8:25-26. They come nowhere close to meeting this test, which demands that they acted diligently. Over *seven* months ago, defendants knew that DC used targeted search protocols to locate responsive documents. Defendants chose never to challenge the protocols—not in a motion to compel, and not in a Rule 56(d) affidavit seeking more discovery before summary judgment. Similarly, while defendants now say they wish to take further discovery concerning the four documents at issue, they unilaterally cancelled Paul Levitz's deposition—at which they could have questioned him about two of the letters—and never noticed depositions of the authors of the other two documents.

Not only did defendants knowingly sit on their hands and not take the discovery they now seek, they repeatedly told the Court that it should rule on the parties' pending summary judgment motions based on the record before it. Defendants chose this tactic (as they told the *L.A. Times*) because they thought they would win. Only now that their prediction was proven incorrect, and only now that Marc Toberoff faces a terminating sanctions motion for violating court orders, do defendants accuse DC of misconduct. Defendants' effort to go on the "offense" is

misguided and violates Local Rule 7-18 and Rule 60(b)(3). *See Ross v. Corp. of Mercer Univ.*, 2007 WL 1521605, at *4 (M.D. Ga. May 23, 2007) ("A party who fails to take advantage of discovery opportunities to determine relevant facts prior to dispositive motions cannot cry foul afterwards in the form of a Rule 60(b)(3) motion…."). Defendants' motion to vacate should be denied, and DC should be awarded its fees for having to oppose this wasteful filing. *See Figueroa v. Gates*, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002).

## II.   FACTUAL BACKGROUND

Defendants' motion omits one key record fact after another from the relevant chronology—going so far as to exclude the lengthy meet-and-confer letter DC sent them concerning this motion. Pearson Decl. ("PD") Ex. D. Here are the true facts:

1. <u>DC's Search Protocol.</u>  Defendants failed to propound any discovery in the case for 18 months. *Id*. ¶ 2. When they finally served discovery in December 2011, their requests were overbroad, and DC objected to them on these and other grounds. *Id*. Ex. A. In its objections,[1] written correspondence,[2] and a March 2012

---

[1] *E.g.*, DN 498-2 at 26-27 ("Request No. 7: All DOCUMENTS that RELATE to the 1992 AGREEMENT. [DC's ] Response:  DC objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope.  DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence….  As used in these Responses, the phrase, "all DOCUMENTS," or phrases of similar import, <u>should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.  Subject to and without waiving all foregoing objections, *DC has conducted a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians* and produces herewith by designation or otherwise all non-privileged, responsive documents</u>.); *id*. at 27-31 (same); *id*. at 127-28 ("Interrogatory No. 5: IDENTIFY all COMMUNICATIONS between YOU AND any third party that REFERRED TO the 1992 AGREEMENT. [DC's] Response: … <u>As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those communications DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such communications.  DC objects to the definition of "YOU" as vague and overbroad and will respond to this term *as limited to the relevant representatives of DC and Warner Bros. Entertainment Inc*</u>. … Subject to and without waiving the foregoing objections, DC is willing to meet and confer with defendants to reasonably tailor this request.") (emphases added); *id*. at 131-38 (same).

1  meet-and-confer call,[3] DC repeatedly told defendants that, given the breadth of their
2  document requests and size of DC and its affiliates, DC could only conduct a good-
3  faith search and review of certain custodians and would produce all non-privileged,
4  responsive documents that the search yielded.

5  Defendants voiced objection to the search methodology and even threatened
6  to move to compel.[4]  But in the *seven months that followed*, defendants never so
7  moved and never filed an application for further discovery under FED. R. CIV P.
8  56(d).  PD ¶ 2. One of many reasons for their tactical choice was obvious:  DC's
9  good-faith search for responsive documents met its obligations under the rules.[5]

10  Indeed, in the seven months after DC served its responses, defendants never
11  made a single proposal about new searches DC should run, despite DC's express
12  invitations to suggest any.  *Supra* nn.2-3; PD Ex. D at 128.  Only after DC filed its
13  pendingسanctions motion, DN 500, and only after DC won on summary judgment,
14  did defendants act, PD Ex. D at 129.  Even now, defendants fail to propose any new
15  searches DC should run, *id*.—as their true purpose in filing the present motion is

---

[2] *E.g.*, DN 498-2 at 148 ("DC conducted a reasonable and diligent search and investigation in responding to Peary's interrogatories, and defendants have shown no reason why DC's efforts did not comply with its discovery obligations.  DC is not required by the federal rules to conduct a search of *all* documents in its possession to adequately respond to Peary's interrogatories, including documents that have no relevance to claims in this case or Superman.  If you want to have a discussion about DC's search efforts, we are prepared to have one this Friday, and if the specific further details you request are appropriate and relevant, DC is willing to consider furnishing them, though we note that defendants have consistently refused to provide a similar accounting.")

[3] DN 498-1 ¶¶ 8-9.

[4] *E.g.*, DN 498-1 ¶¶ 8-9; 498-2 at 152-53 ("DC is not entitled to unilaterally pick and choose the sources of information it reviews in response to an interrogatory; rather, DC must provide a full response based on the information in its possession…. For the above stated reasons, defendant Peary will move to compel supplemental responses to these discovery requests in the event DC does not resolve these issues.").

[5] *E.g.*, *Rodriguez v. Cnty. of Stanislaus*, 2010 WL 4513403, at *3 (E.D. Cal. Nov. 2, 2010) (denying discovery motion where party "established that a good faith and reasonably diligent search was conducted for the records Plaintiff seeks"); *Edwards v. Carey*, 2006 WL 3437901, at *1 (E.D. Cal. Nov. 29, 2006) (denying motion to compel where defendants conducted a "reasonable and diligent search"); *see also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (observing that discovery obligations do not extend to "examin[ation of] every scrap of paper").

not to obtain discovery, but to accuse DC of wrongdoing in the misguided hope of misdirecting the Court from their own misdeeds. *Compare* DN 500, *with* 517 at 18.

  2. The Two Jean Peavy Letters. In preparing its summary judgment papers, DC located two letters from defendant Jean Peavy to former DC President Paul Levitz that neither DC nor defendants had produced. *Id.* ¶ 4; Ex. C. DC produced these two letters before moving for summary judgment, *id.*, invited defendants to depose Levitz concerning the letters, *id.* ¶ 3, Ex. B, and cited the letters in its summary judgment papers as part of DC's long chain of correspondence with the Shuster family, DN 458-1 at 5 (Uncontroverted Fact No. 20).

  Defendants chose not to depose Levitz, unilaterally cancelling his deposition days before it was scheduled in July, and they have never attempted to reschedule it in the four months since. PD ¶ 3; Ex. B at 115-19. And despite angry letters to DC, defendants' summary judgment papers made *no objection* to the two new Peavy letters or DC's citation to them. To the contrary, defendants affirmatively relied on the letters themselves, (wrongly) arguing that the letters favored their position, DN 465 at 12-13, 19, 41-42, as they again do now, Mot. at 4-5.

  3. The Bonesteel Declaration and Josephson Letter. At the September 5 oral argument on DC's summary judgment motion, defendants made a spectacle claiming that DC never relied on its 1992 Agreement with the Shusters as establishing its rights in Superman.[6] DC responded to this spurious and irrelevant argument by conducting additional diligence and submitting a declaration from Damon Bonesteel pointing out that, for example, many years earlier, in a French public filing, Warner Bros. had in fact relied on the 1992 Agreement as a source of

---

[6] *See* DN 489, Hr'g Tr. at 24:15-24 ("You know what the first time is [DC] mentioned the 1992 agreement? After they replaced their lawyers and they hired new counsel, and new counsel came up with this theory. But, that is what I meant, your Honor, when I was talking about fancy. I wasn't referring to your tentative. I was referring to a new argument that is being contrived by lawyers…."); *id.* at 34:15-22 ("DC has never acted as if this 1992 agreement is the basis of its chain of title"); *id.* at 39:18-40:4 ("They came up with that argument when they hired Mr. Petrocelli in 2010.").

1    its rights. DN 491 at 11:11-17 & nn.7-8. DC did not include a copy of the filing
2    with its opposition brief because it had not been among the targeted files it had
3    previously searched and thus had not been produced in discovery. DC provided
4    defendants with a copy of the French filing when they asked for it, DN 498 at 1,
5    and rather than address its contents in their reply brief, defendants made a "best
6    evidence" objection to Bonesteel's declaration, DN 495-2 at 4. To meet this
7    objection, DC submitted the underlying French filing to the Court. DN 498 at 1-2;
8    498-2 at 5-15. Defendants also argued DC's filing with the French authorities was
9    the only document of its kind. DN 495-2 at 2. So DC submitted another such
10   government submission—a letter from Donna Josephson to Canadian authorities
11   that DC's new search had also revealed. DN 498 at 2; 498-2 at 16-18.

12        Defendants responded with a lengthy objection targeting *all four documents*
13   about which they now complain in their motion to vacate. DN 499. They argued
14   the Court should strike the Bonesteel and Josephson documents, and that DC had
15   "secreted" this evidence along with the two Peavy letters. *Id.* at 1-4 & n.1. In this
16   October 5, 2012, filing—much of which they now repeat verbatim in their motion
17   to vacate—defendants never argued that a summary judgment ruling could not issue
18   because of pending document discovery disputes. To the contrary, they urged the
19   Court to rule and grant them judgment on DC's First Claim, *id.* at 3:26-4:4, and
20   they argued (as they do here) that DC's new documents helped prove their case, *id.*
21   at 3:8-25; Mot. 6. Defendants pressed the Court for a ruling because they assumed
22   they would win summary judgment. B. Fritz, *With Superman Decision Imminent,*
23   *Warner Goes After Attorney,* LOS ANGELES TIMES, Oct. 11, 2012 (Marc Toberoff:
24   "'The summary judgment hearing went very badly for DC and [its sanctions
25   motion] is a distraction tactic to muddy the waters in an attempt to elicit bias.'").

26        4. The Court's Summary Judgment Ruling. After receiving defendants'
27   October 5 objections to all four documents at issue here, the Court, on October 17,
28   granted summary judgment in DC's favor on its First and Third Claims. DN 507.

- 5 -   DC'S OPP. TO DEF.'S MOT. TO
VACATE OCT. 17, 2012 ORDER

1  The Court's ruling never cites or discusses the Bonesteel or Josephson documents;
2  nor does it address defendants' irrelevant and false claim that DC recently
3  "contrived" its reading of the 1992 Agreement. *Id*. The Court also did not cite the
4  two Peavy letters, except to note the volume of correspondence between DC and
5  the Shusters. *Id*. at 4. In fact, the Court held that the 1992 Agreement was clear on
6  its face, that DC was entitled to judgment based on its plain text, and that the Court
7  need not consider other evidence to bolster that conclusion. *Id*. at 7.

8      5. Defendants' Varied Responses To The Court's Ruling. Defendants
9  responded to the Court's summary judgment ruling by first saying the parties
10  should agree to a Rule 54(b) appeal on DC's First and Third Claims. Defendants
11  then argued the summary judgment motion should be vacated because of DC's
12  alleged discovery misconduct. DC disagreed, and urged defendants not to file
13  either motion, PD Exs. D, E, but if they did file, to make sure the motion to vacate
14  was resolved before they filed a Rule 54(b) motion—which seeks directly
15  inconsistent relief, *id.* ¶ 5. DC has also pointed out why defendants' Rule 54(b)
16  proposal was both premature and improper. *Id.* Ex. E.

17      Defendants pressed ahead and simultaneously filed their motions to vacate
18  and under Rule 54. DN 513, 514. The motion to vacate makes the same arguments
19  about DC's discovery responses that defendants and DC briefed in October—*weeks*
20  *before* this Court's summary judgment order issued. *Cf.* DN 495-2, 498, 499.

21  **III. DEFENDANTS' MOTION TO VACATE SHOULD BE DENIED.**

22      A. Defendants' Motion Is An Improper Request For Reconsideration.

23      Defendants' motion to vacate improperly repeats the same complaints about
24  DC's discovery responses that they made in their failed summary judgment
25  briefing. A motion for reconsideration may be made "*only* on the grounds of (a) a
26  material difference in fact or law that … *could not have been known to the party*
27  *moving for reconsideration at the time of such decision*; (b) the emergence of new
28  material facts or a change of law occurring *after the time of the decision*; or (c) a

manifest showing of a failure to consider material facts presented to the Court before such decision." C.D. L.R. 7-18 (emphasis added). The Rule specifically mandates that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

1. Defendants' motion to vacate presents no new facts or law—it simply rehashes the same story defendants told this Court in their summary judgment briefing. When DC submitted the Bonesteel declaration, defendants objected, arguing that the public filing it discusses should have been produced earlier in response to Peary's discovery requests. DN 495-2 at 3-4. When DC submitted the underlying public document and the Josephson letter (at defendants' prompting), defendants filed a brief urging the Court to exclude from its consideration *all four* of the documents that defendants' motion now targets. DN 499. In this October 5 filing, defendants claimed the four documents were responsive to Peary's discovery requests and accused DC of "improperly" withholding them. *Id.* at 1, 3 & n.1.

Having lost on summary judgment, defendants now repeat the same arguments here, *e.g.*, Mot. 6 ("The Bonesteel Document that DC had withheld was directly responsive to Defendants' initial requests for production."), in direct contravention to the "rigorous" standard for Rule 7-18 motions, *In re Impac Mortg. Holdings, Inc. Secs. Litig.*, 2006 WL 6886003, at *1 (C.D. Cal. June 9, 2006). Worse yet, defendants rehash these prior arguments without properly styling their motion as one for reconsideration, or even attempting to cite or meet the demanding Rule 7-18 test. *Cf. Figueroa v. Gates*, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002) (sanctioning party for such gamesmanship).

2. Defendants never mention the Rule 7-18 standard because they cannot meet it. They point to no new fact that emerged "*after the time of the* [Court's summary judgment] *decision*," a prerequisite to their motion. C.D. L.R. 7-18(a)-(b) (emphasis added). Defendants possessed all four documents about which they complain before summary judgment briefing closed; they objected to the evidence

and/or relied on it themselves; and they made the tactical choice not to seek any further discovery related to the documents before judgment issued.  Evidence is not *new* if it was "in the possession of the party before the judgment was rendered." *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208 (9th Cir. 1987); *Optional Capital, Inc. v. Kim*, 2008 WL 2986660, at * 3 (C.D. Cal. Aug. 1, 2008) (same).

Case after case rejects the very sort of motion defendants have brought. *E.g.*, *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 2009 WL 7464165, at *1 (C.D. Cal. Feb. 18, 2009) (court will not consider on motion for reconsideration "arguments already made by [moving party] in … cross-motions for summary judgment"); *Universal Dyeing & Printing, Inc. v. U.S. Textile Printing, Inc.*, 2011 WL 5865567, at *1 (C.D. Cal. Nov. 21, 2011) (denying motion for reconsideration where moving party "repeat[ed] its previously made arguments regarding Defendants' alleged misconduct and discovery violations"); *Shah v. Cnty. of Los Angeles*, 2008 WL 4200603, at *1 (C.D. Cal. Sept. 4, 2008) (denying motion for reconsideration where moving party "raise[d] no new objections . . . that were not raised in his [previously filed] objections"); *Impac*, 2006 WL 6886003, at *2 (moving party "may not reargue" points already made "by way of a motion for reconsideration").

3. Nor have defendants made a showing that this Court "manifest[ly]" failed to consider material facts and evidence in granting DC summary judgment.  C.D. L.R. 7-18(c).  There is nothing in the Court's 18-page opinion suggesting it failed to consider any issue.  *Cf. Brown v. U.S.*, 2011 WL 333380, at *3 (C.D. Cal. Jan. 31, 2011) ("[r]egardless of whether a particular argument was addressed explicitly" in a court's order, "conclusory assertions that these arguments were 'overlooked'" were insufficient to justify reconsideration); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2010 WL 4536779, at *5 (C.D. Cal. Nov. 1, 2010) ("Local Rule 7-18(c) does not require the Court to address in its Order every single piece of evidence [a party] submits, or argument in [a party's] briefs"); *Price v. Household Int'l Grp. Ins. Plan*, 2008 WL 4554161, at *3 (C.D. Cal. Oct. 7, 2008) (discussion of evidence in

briefing "precludes the argument that the court was unaware of or failed to consider the effects of [it]"). Indeed, the Court ostensibly did what defendants asked it to do: It made no mention of the Bonesteel or Josephson evidence, and it did not quote or place any direct reliance on the two Peavy letters. *Supra* at 1, 4-5.

### B. Defendants Cannot Satisfy Their Proposed Rule 60(b)(3) Standard.

Because defendants' motion is really a motion for reconsideration, there is no need for this Court to apply "standards borrowed from Rule 60(b)(3)." Mot. at 8. But even under that asserted test, *id.*, defendants' motion must be denied. DC did not commit any "misconduct," and DC did not prevent defendants from "'fully and fairly presenting the case.'" *Id.* (quoting *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404-05 (9th Cir. 1987)).

*1. No Misconduct.* DC conducted a good-faith search for non-privileged, responsive documents, and invited defendants to discuss the search methodology and even to propose new searches. *Supra* at 2-3. The law permits this approach, and tellingly defendants never challenged this protocol—either through a motion to compel, or a Rule 56(d) application. *Id.*[7] Upon discovering the two Peavy letters, DC produced them and invited defendants to depose Levitz. Defendants not only declined, they cited and relied on the Peavy letters as evidence supporting their cross-summary judgment motion. *Supra* at 4. And while defendants objected to the Bonesteel and Josephson materials (and attacked DC concerning the Peavy letters and its discovery responses generally), they never once sought to halt the summary judgment process so as to obtain any additional discovery. *Id.* at 4-6. *They urged the Court to rule*, and only raised the need to take new discovery after the Court granted summary judgment in DC's favor, not theirs. *Id.*

---

[7] Defendants' motion to vacate cannot be treated as an untimely Rule 56(d) motion. "[T]he process of evaluating a summary judgment motion would be flouted if requests for more time [and] discovery" could be filed after the hearing on the summary judgment. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990). Moreover, defendants' motion to vacate is not accompanied by the required Rule 56(d) affidavit. *See Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

1  Defendants' cited cases are nowhere near on point. For example, *Anderson v. Cryovac*, 862 F.2d 910, 927-29 (1st Cir. 1988), held that defendants engaged in discovery misconduct by knowingly and repeatedly failing to produce a highly relevant geographical report, despite repeated requests from plaintiffs *and a court order* rejecting the defendants' challenge to those requests. *See also MGA Entm't, Inc. v. Nat'l Prods., Ltd.*, 2012 WL 182158, at *10 (C.D. Cal. Jan. 23, 2012) (defendants withheld contracts that were clearly germane to plaintiffs' allegations); *In re Staff Inv. Co.*, 146 B.R. 256, 264 (Bankr. E.D. Cal. 1992) (debtor made affirmative misrepresentations in order to obtain a dismissal of the action). DC did nothing of the sort; when it discovered new and possibly germane documents, it produced them. Defendants' failure to cite a single case finding "misconduct" on similar facts illustrates their inability to meet the first half of the Rule 60(b)(3) test.

*2. Fairness.* Defendants also fail to show they were prevented from "fully and fairly presenting their case." *M/V Peacock*, 809 F.2d at 1404-05. First and foremost, before losing on summary judgment, defendants eschewed multiple opportunities to conduct the very discovery they now seek. They chose not to file motions to compel, chose not to file a Rule 56(d) application, declined depositions, and even urged the Court to rule on the summary judgment record then before it. *Supra* at 2-6; DN 499 at 3-4 (Defendants' October 5, 2012, filing: "DC's newfound evidence should be excluded, and Defendants' motion granted.").

Defendants' failure to seek discovery is fatal to their claim, for it is well-established that "[t]he proper remedy for any perceived violation of discovery is to seek redress under Rule 37(a)(2), not to wait until after summary judgment and file a Rule 60(b)(3) motion." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1292 (10th Cir. 2005); *see Dukes v. City of Minneapolis*, 339 F. App'x 665, 668 (8th Cir. 2009) ("Notably, while Dukes now complains that the officers never produced the office phone records, he was obligated to pursue the release of those records prior to the grant of summary judgment."); *Ross*, 2007 WL 1521605, at *4 .

Defendants' cited cases do not upset this plain rule. Some involve *denials* of Rule 60(b)(3) relief. *E.g.*, *M/V Peacock*, 809 F.2d at 1405 (no Rule 60(b)(3) relief because defendants' misrepresentations did not prevent plaintiff from presenting case); *Bunch v. U.S.*, 680 F.2d 1271 (9th Cir. 1982) (denying Rule 60(b)(3) motion where witnesses allegedly changed story at trial). Others feature grants of Rule 60(b)(3) relief, but involve egregious misconduct.[8] Still worse, defendants grossly distort *In re Vioxx Prods.*, 489 F. Supp. 2d 587 (E.D. La. 2007). Defendants say it involved a grant of Rule 60(b)(3) relief based on "discovery misconduct" regarding a "central issue in [the] litigation." Mot. at 13. But in *Vioxx*, the court granted relief because a key defense expert misrepresented his qualifications "to the Court and to the jury *during the trial*." 489 F. Supp. 2d at 588 (emphasis added). The *Vioxx* opinion nowhere even mentions the word "discovery."

In short, Rule 60(b)(3) is not a reset button for defendants' failed strategic choices. "Parties cannot use Rule 60(b) as a mechanism to correct their own mistakes after summary judgment has not gone their way." *Zurich*, 426 F.3d at 1293. And, in any event, defendants' proposed remedy—vacating the Court's summary judgment order—makes no sense. In granting DC judgment, the Court did not rely on any of the challenged documents. Instead, it concluded that it had to look only at the 1992 Agreement to grant DC judgment on its First Claim. DN 507 at 7 ("[T]he Court finds no ambiguity in the parties' agreement …. [T]he 1992 Agreement does in fact settle all prior agreements."). As for DC's Third Claim, defendants offer no reason or basis to reverse that ruling.

---

[8] *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878-79 (9th Cir. 1990) (defendants suppressed relevant documents through trial); *Anderson*, 862 F.2d at 930-33 (similar); *Square Constr. Co. v. WMATA*, 657 F.2d 68, 72 (4th Cir. 1981) (similar); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1342 (11th Cir. 1978) (defendant claimed it could not find a salient report, and upon finding it, declined to produce it even once the case went to trial).

## IV. DC SHOULD BE AWARDED ITS FEES AND COSTS.

Defendants' motion flatly violates Rules 7-18 and 60(b)(3). Under Local Rule 83-7, DC is entitled to its fees and costs in having to oppose this motion. *E.g.*, *Figueroa*, 2002 WL 31572968, at *3 (awarding attorneys' fees under L.R. 83-7 where "self-styled 'renewed' motion [was] clearly a motion for reconsideration" but moving party "failed to recognize this or to articulate the appropriate standard under Local Rule 7-18"). DC and its counsel are wary ever to seek relief of this sort, but defendants' latest motion (one of hundreds of filings they have made in over-litigating this case) so badly crosses the line as to warrant it.

## V. CONCLUSION

Defendants' motion should be denied, and DC should be awarded its fees.

Dated: November 15, 2012

Respectfully submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli

OMM_US:71095319