| | |
|---|---|
| 1 | DANIEL M. PETROCELLI (S.B. #097802) |
|   | dpetrocelli@omm.com |
| 2 | MATTHEW T. KLINE (S.B. #211640) |
|   | mkline@omm.com |
| 3 | CASSANDRA L. SETO (S.B. #246608) |
|   | cseto@omm.com |
| 4 | O'MELVENY & MYERS LLP |
|   | 1999 Avenue of the Stars, 7th Floor |
| 5 | Los Angeles, CA  90067-6035 |
|   | Telephone:  (310) 553-6700 |
| 6 | Facsimile:   (310) 246-6779 |

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS, | Case No. CV 10-03633 ODW (RZx) |
| Plaintiff, | **DC COMICS' REPLY IN SUPPORT OF MOTION FOR AN EVIDENTIARY HEARING AND SANCTIONS, INCLUDING TERMINATING SANCTIONS, APPOINTMENT OF SPECIAL MASTER, AND OTHER RELIEF** |
| v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | |
| | Hon. Otis D. Wright II |
| | **Hearing Date**:  Dec. 10, 2012 |
| | **Hearing Time**:  1:30 p.m. |
| | **Courtroom**:  11 |
| Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................1

II.   THE CASE-DISPOSITIVE FACTS AND ISSUES THAT
      DEFENDANTS DO NOT CONTEST............................................................1

      A.   August 2006 Order .............................................................................1

      B.   April 2007 Order ................................................................................3

      C.   December 2010 Order ........................................................................4

      D.   Open Defiance Of Court Rulings........................................................5

      E.   Evidentiary Hearing ...........................................................................7

III.  THE ISSUES THAT DEFENDANTS ACTUALLY CONTEST ..................7

      A.   Defendants' No-Harm-No-Foul Argument ........................................7

      B.   The Documents Toberoff Suppressed Help Him, He Says ..................9

      C.   Jurisdiction ......................................................................................10

      D.   The Need For A Special Master.......................................................11

      E.   Privilege Waiver ..............................................................................12

**TABLE OF AUTHORITIES**

**CASES**

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990) ............................................................................. 8, 11

*Ahearn v. Redondo Beach Police Dep't*,
  2009 WL 728463 (C.D. Cal. Mar. 18, 2009) ............................................................ 10

*Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*,
  235 F. App'x 776 (2d Cir. May 25, 2007) ................................................................. 7

*Anheuser-Busch, Inc. v. Natural Beverage Dists.*,
  69 F.3d 337 (9th Cir. 1995) ....................................................................................... 9

*Baker v. Myers Tractor Servs., Inc.*,
  765 So. 2d 149 (Fla. Dist. Ct. App. 2000) ................................................................ 8

*Brandt v. Vulcan, Inc.*,
  30 F.3d 752 (7th Cir. 1994) ....................................................................................... 9

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
  No. SACV 05-01083, DN 110-7 at 3 (C.D. Cal. Oct. 13, 2006) .............................. 11

*Chemtall, Inc. v. Citi-Chem, Inc.*,
  992 F. Supp. 1390 (S.D. Ga. 1998) ............................................................................ 8

*Chuman v. Wright*,
  960 F.2d 104 (9th Cir. 1992) ................................................................................... 10

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ..................................................................................... 8

*Franklin v. Krueger Int'l Inc.*,
  1997 WL 691424 (S.D.N.Y. Nov. 5, 1997) ............................................................... 9

*G-K Props. v. Redev. Agency of the City of San Jose*,
  577 F.2d 645 (9th Cir. 1978) ..................................................................................... 8

*Greensprings Baptist Christian Fellowship Trust v. Cilley*,
  629 F.3d 1064 (9th Cir. 2010) ................................................................................. 10

*Hal Commodity Cycles Mgmt. Co. v. Kirsh*,
  825 F.2d 1136 (7th Cir. 1987) ................................................................................. 10

*Henry v. Gill Indus.*,
  983 F.2d 943 (9th Cir. 1993) ..................................................................................... 9

*In re Castillo*,
  2012 WL 3641510 (9th Cir. B.A.P. Aug. 24, 2012) .................................................. 7

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ................................................................................... 8

*Io Grp. Inc. v. GLBT Ltd.*,
  2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ............................................................ 9

*Jackson v. Microsoft Corp.*,
  211 F.R.D. 423 (W.D. Wash. 2002) ........................................................................ 1

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001 ................................................................................. 10

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*,
  507 U.S. 380 (1993) .............................................................................................. 10

*Quantum Commc'ns. Corp. v. Star Broadcasting Inc.*,
  473 F. Supp. 2d 1249 (S.D. Fla. 2007) ............................................................... 7, 8

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ..................................................................................... 9

*Schering Corp. v. First DataBank Inc.*,
  2007 WL 1747115 (N.D. Cal. June 18, 2007) ..................................................... 11

*Smith v. Ford Motor Co.*,
  1981 WL 380686 (N.D. Ga. May 1, 1981) .......................................................... 11

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990) .............................................................................. 10

*Synanon Church v. U.S.*,
  820 F.2d 421 (D.C. Cir. 1987) ............................................................................... 1

*Valley Eng'rs v. Electric Eng'g*,
  158 F.3d 1051 (9th Cir. 1998) ....................................................................*passim*

*Venture Indus. Corp. v. Autoliv ASP, Inc.*,
  457 F.3d 1322 (Fed. Cir. 2006) ............................................................................ 11

*Verizon Delaware, Inc. v. Covad Commc'ns Co.*,
  377 F.3d 1081 (9th Cir. 2004) .............................................................................. 10

*Williams v. Brooks*,
  996 F.2d 728 (5th Cir. 1993) ................................................................................ 10

*Woods v. L.A. Cnty. Sheriff's Dep't*,
  2009 WL 5090932 (C.D. Cal. Dec. 10, 2009) ....................................................... 8

**OTHER AUTHORITIES**

1 E. EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT
  DOCTRINE (5th ed. 2007) ....................................................................................... 6

14 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 72.02[7][b] (3d
  ed. 2012) ............................................................................................................... 11

## I. Introduction

It is often said that the cover-up is worse than the crime, and the hallmarks of that proposition are no better evidenced than by defendants' discovery conduct and opposition brief.[1]  Regardless the subterfuge, one thing remains clear:  DC's motion can and should be granted on the *undisputed* facts and law that defendants notably *never* contest.  *See* Part II.  On the narrow issues they do challenge, *see* Part III, defendants' dissembling only cements that the most severe sanctions are required, *e.g.*, *Synanon Church v. U.S.*, 820 F.2d 421, 423 (D.C. Cir. 1987) (dismissal upheld given "cover-up" of discovery misconduct); *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431-33 (W.D. Wash. 2002) (dismissal "only viable remedy" where party "lies about his misconduct"); *Valley Eng'rs v. Electric Eng'g*, 158 F.3d 1051, 1058 (9th Cir. 1998) (when "party so damages the integrity of the discovery process" by hiding a smoking-gun document, "a case dispositive sanction" was appropriate).

## II. The Case-Dispositive Facts And Issues That Defendants Do *Not* Contest

A. August 2006 Order.  Defendants do not dispute the Court ordered them in August 2006 to amend their privilege logs to disclose *all* recipients of documents they asserted were privileged.  DP Ex. 40 at 644; Mot. 3.  Nor do they dispute that Toberoff assured the Court he would "*absolutely*" comply.  *Id*.  Toberoff's newest declaration, DN 518, *never* addresses his promise or how he broke it.  Indeed, his brief buries mention of the August 2006 order in a footnote, Opp. 8 n.4, and omits *any* discussion of (i) the Court's command that Toberoff "identif[y] all of the people who received" the logged documents; and (ii) his (false) promise to comply.

Instead, defendants *admit* they lumped documents together under log entries for fax cover sheets, DN 518 ¶ 9, and argue their privilege logs were "upheld" in *Siegel*, Opp. 8.  Yes, they were.  But based *only* on Toberoff's knowingly false

---

[1] *Cf*. http://en.wikipedia.org/wiki/Cover-up (*Typology of cover-ups*:  "Flat denial," "Claim that the problem is minimal," "Claim faulty memory," "Claim the accusations are half-truths," "Attack the critic's motive," "Make discovery of evidence difficult," "Claim … privilege," "blame an underling"). All emphases are added throughout.

- 1 -   DC'S MOT. FOR EVIDENTIARY HR'G RE DISCOVERY SANCTIONS

promise that he would and did list *all* recipients in the logs—something he *never* did in *Siegel* or here, omitting, for example, *each and every* instance of Michael Siegel's name.  Mot. 6-12, 15-21.  Only now, with the benefit of the evidence the Court compelled defendants to produce has Toberoff's scheme to hide *all* letters between Michael and Laura Siegel come to light.  Had Toberoff obeyed the August 2006 order, he would have listed Michael's name over 20 times in the logs he prepared, thereby enabling DC to challenge his bogus privilege claims years ago. But, as Toberoff does *not* dispute, he *never* listed Michael's name *in any log he prepared before 2011*—including Laura and Joanne's, Michael's Estate's, Renner's, or his own.  *Id.* at 11.  Toberoff's uniform practice of scrubbing Michael's name from all logs was plainly no accident, and the smoking-gun nature of the letters he suppressed in violation of court orders warrants the severest sanction.  *Supra* at 1.

DC was severely prejudiced by Toberoff's suppressions in *Siegel* and this case, as the documents go to the heart of DC's settlement defense in *Siegel* and its tort claims here.  The suppressed documents include the July 2003 letter, in which Laura admits that her lead negotiator, Kevin Marks, told her she made a "deal" with DC in October 2001.  Mot. 2.  Toberoff's false promises that he had logged all documents enabled him to deceive the Court in *Siegel*, obtain summary judgment, and block discovery that would have undercut it.[2]  DC was forced to spend hundreds of thousands of dollars filing scores of motions to penetrate Toberoff's lies and false privilege logs and to obtain *most* of the Michael-Laura letters.  DC is entitled to recover its fees to compensate it for this harm—all of which flows from defendants' defiance of court orders.  Mot. *ii*.  Defendants do not address this.

Nor do they address the prejudice DC continues to face.  Michael and Joanne passed away, so DC can never examine them about this new evidence.  And with Michael unable to defend himself, Toberoff now takes cheap shots, calling Michael

---

[2] Toberoff also notably never defends his false declaration in *Siegel* that he used to stop further discovery into the "Marks Memo" and DC's settlement defense.  Mot. 13.

DC'S REPLY ISO MOT. FOR EVID.
HR'G RE DISCOVERY SANCTIONS

1  "blind" and "misguided." Opp. 5 n.3. Toberoff also produces a brand new draft
2  letter from Joanne, DN 525, and continues to suppress Michael's documents. This
3  includes 85 documents that Toberoff *admits* he never logged until late *2011*, Opp.
4  14 (DC believes the number is closer to 224, Mot. 8, 19-21); a September 21, 2002,
5  letter from Laura to Michael, DN 362-2 at 311 (Entry 385); and an October 2002
6  letter from Michael to Laura that Laura's long-suppressed November 2002 letter
7  revealed. Mot. 3, 21. On these uncontested facts alone, there is no dispute that
8  defendants violated the August 2006 Order and continue to defy their legal duties.

9  B. April 2007 Order. Defendants similarly cannot dispute that Toberoff
10 violated the Court's April 2007 Order, which required him to submit a declaration
11 identifying by Bates-number or privilege-log entry which Timeline documents he
12 had previously produced or logged. DN 317-4 at 74. Toberoff's lies with respect
13 to this declaration continue to multiply. To begin, Toberoff cannot dispute that his
14 declaration revealed that his prior representations to the Court about how only two
15 Timeline documents had not been produced were false. *Cf.* Mot. 8, 10.

16 Toberoff also never contests he failed to review the Timeline documents and
17 disclose whether each was logged or produced. He concedes defendants instead
18 lumped various documents—sent on *different* dates, and involving *different* senders
19 and recipients, *different* communications, and *different* subject matters—under
20 single log entries that concealed what documents were attached or who authored or
21 received them, Opp. 8; DN 518 ¶ 15, in violation of the Court's orders, Mot. 7-11.

22 Toberoff also admits his 2007 declaration falsely matched one copy of the
23 May 2003 letter to an unrelated fax, DN 518 ¶ 16, but he "blames an underling,"
24 *supra* n.1, for this deception, saying unnamed "associates" of his were to blame,
25 DN 518 ¶¶ 13-21. This newly minted deception is preposterous:
26 • In 2007, Toberoff told the Court at least *five times*—in sworn declarations
27   and in open court—that "*I*" Marc Toberoff, not a subordinate, reviewed the
28   Timeline documents to ensure each was produced or logged. *E.g.*, Mot. 8-

- 3 - DC'S REPLY ISO MOT. FOR EVID.
HR'G RE DISCOVERY SANCTIONS

1  10; DN 477-2 90 ¶ 22 ("*I* have reviewed…. *I* found…."); 317-4 at 67 ("*I'd* be
2  happy to take an oath and say that because that's way *I* did."); *id*. at 87:25-
3  88:5 ("*I* went through…."); 42-14 at 195 ¶ 2 ("*I* have accounted for each....").

- Toberoff knows how to distinguish between work he did himself and told others to do.  For example, he falsely told the Court he did not possess Laura's November 2002 letter, stating: "I *caused my office* to re-check our relevant case files," and "*we*" could not find it.  Mot. 19; DN 288.
- Toberoff's blame-the-associate story is also belied by other lies he told.  Initially, Toberoff blamed an unidentified "paralegal."  DP Ex. 5 at 69.
- And Toberoff's declaration further reveals, for the *first time*, that he lied to the Court when he said that the redactions to the May 2003 letter were of "an *attorney's* very limited marginalia and underlines."  DN 267-1 at 26; *see* DN 230-1 ¶ 18, Ex. T (same).  Toberoff's latest declaration reveals that, contrary to that prior sworn representation, it was *Laura's* handwriting.  DN 518 ¶ 3.[3]

Toberoff's willingness to deceive is unrestrained; he must be sanctioned for it.

C. December 2010 Order.  Defendants concede that at the outset of discovery in this case, they stipulated and the Court ordered that they *produce all documents* other than those protected by privilege and provide DC "complete Privileged logs identifying *any and all* Privileged documents."  DN 133 ¶¶ 1-2.  They also concede that *not one* Michael Siegel document appears on their logs.  Indeed, the chart in Toberoff's declaration illustrating how he logged the May 2003 letter from Michael to Laura is proof positive of his pattern of concealment:  The log entries he quotes neither mention "Michael Siegel," nor any letter dated "May 2003."  DN 518 ¶ 15.

Defendants argue they did not deceive the Court or violate any court order because DC suspected, based on the Toberoff Timeline, that Toberoff was hiding

---

[3] Defendants' claim that they had only one copy of the May 2003 letter is also a lie; Toberoff concedes he had *four copies*. DN 518 ¶ 12. While he says these four copies were identical, that, too, is false. Each bears different "Q" Bates numbers. Mot. 17.

Michael's letters behind bogus log entries. Opp. 7, 9, 11-12. But defendants fail to address that when DC pressed its suspicions in *Siegel* and here, Toberoff opposed DC's discovery motions successfully by calling the Timeline "worthless garbage," DN 313 at 1, chastising DC for relying on it, and assuring DC and the Court that "all" responsive documents had been produced or logged, Mot. 13, 16; DN 162-10, 581; DN 162-12, 589; DN 160 at 37-38. He went even further still, unabashedly representing that "[t]here are *no documents related* to an offer by a 'billionaire investor.'" DN 162-12 at 589; DN 196 at 1-5, 10 (DC's Fifth Claim a "mockery").

In 2008 in *Siegel*, DN 295-2 at 6, and in this case in early 2011, DN 160 at 37-38, DC asked Toberoff to look at log entries like Q27-33—behind which the May 2003 letter and its "billionaire investor" statements appear, DN 225-4 at 3-4; Mot. 2-6. Despite being directed right to the "billionaire" investor documents he was suppressing, Toberoff castigated DC, telling the Court that DC was improperly asking for and "mov[ing] to compel *non-existent* documents." DN 160 at 37-38.

The Court's December 2010 Order required defendants to "identif[y]" "any and all" withheld documents. Toberoff violated the order. *Not one of his 18 copies* of the May 2003 letter, July 5 drafts, or July 2003 letter was ever logged. Mot. 11. And Toberoff only logged the November 2001 email and the November 2002 letter in November 2011—*eight* months after telling the Court in March 2011 that all responsive documents had been produced or logged. DN 160 at 5. Violating no fewer than three court orders is ample grounds to warrant the relief DC seeks.

D. Open Defiance Of Court Rulings. Defendants neither deny or even address that, after conducting an *in camera* review, the Court ordered them to produce the long-suppressed November 2002 letter to DC, finding it "does not fit within the attorney-client privilege, *or the joint defense*" privilege. DN 451 at 6. Nor can they dispute that an Ohio federal court ordered them to produce every Michael Siegel-related communication it reviewed *in camera*. DN 161-5 at 30-31. These rulings refute any claims that Michael and Laura's chain of correspondence,

of which the Laura's November 2002 letter was a central part, are privileged. They all respond to one another and concern the same subject matter: Michael's deep concern with Toberoff's conduct and Laura's misguided (and self-interested) efforts to help Toberoff buy her infirm half-brother's rights on the cheap. DN 394 at 8; DN 427-3 at 256-58; DN 225-4 at 3-4; 357-4 at 272-76; 455-2 at 3-4.

Yet in their opposition, defendants continue to assert that the May and July 2003 letters are privileged and "would have remained privileged," but for the Timeline author's actions. Opp. 18. Defendants thus admit they would *continue* to suppress these non-privileged, case-dispositive letters, if they could. Defendants' defiance of the Courts' rulings is stunning. The law and logic of the Courts' rulings are clear: Toberoff and Laura cannot launder harmful documents by washing them in faxes to one another, and once a specious joint-interest privilege claim is rejected on a line and subject matter of correspondence, defendants cannot withhold related and subsequent letters in that same chain of communications.[4]

Defendants also admit that, until 2011, their privilege logs did *not* list 85 (and as many as 224+) Michael Siegel documents found in the Renner firm's files. DN 524 at 16. While defendants assert they did not possess these documents until 2011, Opp. 14, defendants litigated this very issue a few months ago, and *lost*. Relying on confirmation from Renner, and Toberoff's and his associate's filings in the Ohio courts, DC proved that Toberoff received Michael's full file from Renner in *2006*, when Toberoff appointed himself solely responsible for responding to document requests directed at Renner and Michael's estate. DN 362-2 at 319; 427-2 at 4; 477 at 1-7; 477-2 at 48-53; Mot. 20. DC showed that by failing to log the documents he received in 2006 (including a key November 2001 email that exposed

---

[4] *E.g.*, 1 E. EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 126 (5th ed. 2007) ("Few abuses of privilege claims are more common tha[n] the attempt to invest with privilege documents which, standing alone, are not privileged merely by virtue of the fact that they have been transmitted to an attorney. *Courts do not allow such legerdemain*.") (collecting cases).

- 6 -  DC'S REPLY ISO MOT. FOR EVID. HR'G RE DISCOVERY SANCTIONS

1  Toberoff's deceptions), Toberoff waived privilege.  DN 394 at 3-9; 455.  The Court
2  granted DC's motion and ordered Toberoff to produce the email.  DN 457.  Now in
3  defiance of that order, Toberoff argues—using the same denials as before—that he
4  did not obtain the full Renner file until 2011.  *Compare* Opp. 14-16, *with, e.g.*, DN
5  466-1 ¶ 17; 480 at 3-4.  Local Rule 7-18 forbids endlessly re-litigating such losing
6  arguments, and defendants must produce all of the Renner documents.

7        E. Evidentiary Hearing.  While asking the Court to deny this motion outright,
8  defendants agree an evidentiary hearing "best determines" sanctions issues.  Opp.
9  25.  The need for cross-examination at a live hearing is stark.  Toberoff submitted a
10  lengthy new declaration attesting to his supposed innocence in discovery, when he
11  refused to be deposed on these very issues, DP Ex. 87 at 2623; and the defenses he
12  proffers—*e.g.*, "my associates did it"—are new.  Laura's new declaration likewise
13  contradicts her letters to Michael and other evidence, yet she, too, refuses to be
14  deposed.  Given this objectionable evidence, a hearing is required.  *Cf. Anglo-Iberia*
15  *Underwriting Mgmt. Co. v. Lodderhose*, 235 F. App'x 776, 779 (2d Cir. 2007); *In*
16  *re Castillo*, 2012 WL 3641510, at *9 n.16 (9th Cir. B.A.P. Aug. 24, 2012).[5]

17  **III.**    **The Issues That Defendants Actually Contest**

18        A.  Defendants' No-Harm-No-Foul Argument.  Defendants say terminating
19  sanctions cannot issue because they now produced the hidden documents, and DC
20  can claim no harm.  Opp. 22.  This is a regularly deployed—*regularly rejected*—
21  excuse, and here it is wildly untrue.  As DC showed, the concealed evidence bears
22  directly on its settlement defense, and was not produced until years after the court
23  granted summary judgment in *Siegel*.  As courts hold in <u>*granting* terminating</u>
24  <u>sanctions</u>: "[Defendants] should not escape sanctions just because [Plaintiff] was
25  fortunate and diligent enough to uncover Defendants' scheme…."  *Quantum*

---

[5] Defendants' claim that DC failed to meet-and-confer on its request for a hearing, Opp. 25, is both puzzling and mistaken.  By their own admission and citation to *Wyle*, evidentiary hearings are the norm in connection with sanctions motions.  *Id*.

*Commc'ns v. Star Broadcasting*, 473 F. Supp. 2d 1249, 1278 (S.D. Fla. 2007); *see Valley Eng'rs v. Electric Eng'g*, 158 F.3d 1051, 1058 (9th Cir. 1998) ("It took years to shake loose the [document]. [Plaintiff's] adversaries probably would never have seen it, had [their adversary] not been sharp enough to spot what was not there…. Considering how [defendants] acted regarding the [document], it was a reasonable inference that if there was other discoverable material evidence harmful to its case that its adversaries did not know about, it would be hidden forever.").[6]

  The Ninth Circuit has made clear "belated compliance with discovery orders does not preclude the imposition of sanctions," because the "[l]ast-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *G-K Props. v. Redev. Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978). Indeed, the Ninth Circuit "*presumes prejudice* from unreasonable delay." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

  Defendants cite *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990), to argue that "[d]elay alone has been held to be insufficient for prejudice." Opp. 20. But this ignores the *presumption of prejudice* raised by defendants' *six-year* delay in producing documents, and DC's *actual prejudice*, which includes:

- years of costly motion practice, *Quantum*, 473 F. Supp. 2d at 1273 (party "had to expend significant time and money" litigating such issues);
- summary judgment in *Siegel* on a manufactured record, Mot. 6, 12-13;
- DC's having to brief SLAPP issues without the concealed evidence, *id.*;
- the fact that key witnesses have died and others' memories have faded, *Woods v. L.A. Cnty. Sheriff's Dep't*, 2009 WL 5090932, at *4 (C.D. Cal. Dec. 10, 2009) (terminating sanctions where 17-month delay in discovery

---

[6] *See Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409 (S.D. Ga. 1998); *Baker v. Myers Tractor Servs., Inc.*, 765 So. 2d 149, 150 (Fla. Dist. Ct. App. 2000).

"present[ed] a real danger that memories may have faded and evidence [was] lost"); *Henry v. Gill Indus.*, 983 F.2d 943, 948 (9th Cir. 1993); and

- the stark concern that Toberoff is not chastened and is withholding key evidence, like Michael and Laura's September and October 2002 letters.

Rather than address this prejudice, defendants fault DC for not bringing this motion until 2012. Opp. 22. But, as they know, it took *years*, and many court orders (including from the Ninth Circuit), to build a case and show document-by-document and log-entry-by-log-entry how Toberoff deceived the courts. Whether this Court grants terminating sanctions now (and it should), it should at a minimum award DC all of its fees and costs in pursuing these issues. *E.g.*, *Io Grp. Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *5-10 (N.D. Cal. Oct. 19, 2011).[7]

B. The Documents Toberoff Suppressed Help Him, He Says. Defendants argue "it makes no sense to accuse Defendants of a scheme to improperly withhold documents that confirm the falsity of DC's claims." Opp. 13. This contention is utterly false—*e.g.*, compare all the smoking-gun references to the "billionaire" investor in the November 2002 and July 2003 letters to Toberoff's briefs calling DC's billionaire investor claim a "mockery." Mot. 2, 14-21. It is also irrelevant. The law forbids parties like Toberoff from concealing evidence in violation of their discovery duties, and then when they are caught arguing why, as a matter of contested fact, the evidence really helps them. Courts rightly "presume" that such concealed evidence is harmful, as it so clearly is here. *Anheuser-Busch, Inc. v. Natural Beverage Dists.*, 69 F.3d 337, 354 (9th Cir. 1995); *see Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002).[8]

---

[7] Defendants' cited cases to argue DC delayed are off base. In *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 757 (7th Cir. 1994), the moving party never moved to compel; it "simply served [] requests for updated discovery responses" and then "[l]et the matter rest." In *Franklin v. Krueger Int'l Inc.*, 1997 WL 691424, at *5 (S.D.N.Y. Nov. 5, 1997), the moving party failed to move for sanctions while discovery was still open.

[8] Toberoff's claim that DC targets him as lawyer in discovery, and not as a party, Opp. 18, is also unfounded. DC subpoenaed him directly in *Siegel* and here, and he

1          C.  Jurisdiction.  Defendants argue the Court lacks jurisdiction to grant DC terminating sanctions (and judgment on its Fifth Claim) because of their pending SLAPP appeal.  Opp. 3.  Defendants fail to cite any case from a California federal court—or *any* federal court—so holding, and no such case exists.  Defendants analogize to immunity case law, Opp. 3-4, but this, too, misses the mark.  The Ninth Circuit has placed important limits on SLAPP procedures in federal cases,[9] undermining the notion that SLAPP "immunity" is the equivalent of immunities barring any litigation from proceeding, as in defendants' three cited cases.[10]

In any event, defendants do not—and cannot—contest the Court's authority to hold an evidentiary hearing to determine the propriety of terminating sanctions.  Nor do they contest its power to issue the other relief DC seeks, including imposing monetary sanctions, broad findings of privilege waiver, compelling the production of documents, appointing a special master, or making adverse evidentiary findings.

---

violated his discovery obligations in both cases—both as a party, and in his role as an officer of the Court.  Mot. 6-21; PD Exs. 2, 5, 8.  The Siegels are "responsible for [his] acts and omissions," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 297 (1993), and defendants *do not and cannot dispute* that their discovery conduct in *Siegel* is relevant to this sanctions motion in this related case.  Mot. 6-14.

Defendants also complain they were never warned that terminating sanctions might issue, Opp. 21, but they do not contest that the Ninth Circuit has rejected a per se rule requiring an explicit warning.  *See Valley Eng'rs*, 158 F.3d at 1057; *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987) ("a district court is not required to fire a warning shot; … the district court must have the default judgment readily available within its arsenal of sanctions").  Defendants' violations of multiple court orders and DC's successful motions to compel were ample warning.  *See Ahearn v. Redondo Beach Police Dep't*, 2009 WL 728463, at *10 (C.D. Cal. Mar. 18, 2009).

[9] *E.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) (FED. R. CIV. P. 56 trumps SLAPP statute's limitations on discovery); *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (plaintiff can amend federal complaint under FED. R. CIV. P. 15 in response to a SLAPP motion, even though California law forbids it); *Greensprings Baptist Christian Fellowship Trust v. Cilley*, 629 F.3d 1064, 1070 (9th Cir. 2010) (declining to apply California procedure permitting an immediate appeal following a SLAPP dismissal with leave to amend).

[10] *See Williams v. Brooks*, 996 F.2d 728, 730 & n.2 (5th Cir. 1993) (official immunity for a member of U.S. House of Representatives); *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) (qualified immunity for a police detective); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (qualified immunity for police officers).

It is for good reason defendants do not contest the Court's power to award this relief. Courts in the Ninth Circuit have affirmed their jurisdiction to adjudicate such matters during the pendency of SLAPP appeals. *See Schering Corp. v. First DataBank Inc.*, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007) ("[T]he [SLAPP] appeal did not divest this Court of jurisdiction to rule on pretrial and case-management issues, including discovery."); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, No. SACV 05-01083, DN 110-7 at 3 (C.D. Cal. Oct. 13, 2006) ("The district court only loses jurisdiction to modify or amend the specific order that is being appealed…."). Defendants have never disputed this power, despite multiple opportunities to do so at earlier stages in the case. *See* DN 112 at 17 (confirming that, under *Schering*, a district court "retain[s] ***jurisdiction*** to rule on pre-trial matters pending" SLAPP appeal) (emphasis in original)); 344 at 1 (defendants declining to seek a stay of discovery pending SLAPP appeal).[11]

D.  The Need For A Special Master. Defendants argue special masters are only appointed in "exceptional circumstances." Opp. 22-23. They are right, and Toberoff's discovery misconduct easily qualifies. *E.g.*, *Adriana*, 913 F.2d at 1409; *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1324 (Fed. Cir. 2006).[12] Defendants also say DC's request for a special master is "obviously intended to

---

[11] Defendants argue this motion had to be heard by the discovery magistrate. Not so; DC seeks terminating sanctions, and defendants' cases involve lesser sanctions. *Compare* Opp. 4, *with* 14 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 72.02[7][b] (3d ed. 2012) ("If imposition of a sanction would terminate the litigation, the sanction is considered dispositive and the magistrate judge may only recommend that it be imposed…."). Defendants also suggest this Court is not "familiar" enough with discovery to preside, Opp. 4—ignoring that it was *this Court* that granted several of the discovery motions that revealed Toberoff's discovery frauds, DN 336; 457; 488.

[12] Defendants cite *Smith*, an out-of-circuit case from 30 years ago, to argue the appointment of a special master is improper where the court has not previously issued sanctions. *Smith* holds no such thing. It noted that lack of prior sanctions was one *of many* reasons not to appoint a master; more importantly, the party opposing had generally abided by its discovery duties, and the master was improperly being asked to reconsider the court's rulings. 1981 WL 380686 at *1-2. Defendants' attacks on DC's discovery conduct, Opp. 17-18, are untrue, untimely, and irrelevant, *e.g.*, DN 522.

1  impose economic leverage," Opp. 23-24, but they ignore that DC said it would
2  advance all costs, Mot. 24.  Defendants further suggest this case has not involved a
3  great deal of discovery disputes, Opp. 24, when, by their own count, DC has been
4  forced to bring *43* discovery motions, *id*. at 18.  Defendants say DC lost "most" of
5  the motions, which is both wrong and ignores that defendants' "wins" were based
6  on a false record and soon became *losses*.  For example, it took DC *five separate*
7  *motions* to gain access to the July 2003 letter alone.  DN 160; 225; 253; 316; 329.

   Defendants last argue a special master is not needed since a "highly-regarded
8  law firm"—*i.e.*, Toberoff's lawyers—will review *some* of his discovery conduct, if
9  DC waives all rights.  Opp. 23.  The review proposed is years too late and grossly
10 deficient, PD ¶ 9-10, Exs. 5, 8, 10, and a "biased … 'independent' inquiry" is no
11 real cure, *supra* n.1.  While Toberoff's lawyers now disclaim responsibility for his
12 discovery work, PD Ex. ¶ 7, Ex. 7 at 91, they *signed* his discovery responses in
13 2011, and were told about the concealed Michael-Laura correspondence, DN 361-2
14 at 169; PD Exs. 5 at 64-76, 8 at 102.  His lawyers also say DC's discovery claims
15 are without basis, PD Exs. 3, 4 at 57, but when pressed, conceded they did *no*
16 independent investigation to confirm this, *id*. Exs. 2 at 44, 7 at 91, 8 at 101.

18     E. Privilege Waiver.  Defendants agree:  blanket privilege waivers may issue
19 in "egregious" circumstances.  Opp. 24.  This is such a case.  *At a minimum*, they
20 should be ordered to produce (i) the 85 Renner documents; (ii) all documents not
21 separately listed on their logs (*e.g.*, attachments); and (iii) all withheld documents
22 from 2001 to 2004 when Toberoff was working as a producer.  Mot. 19-20, 25.
23 Defendants notably cite no case law justifying the way they hid attachments behind
24 other documents in their logs—nor can they.  *E.g.*, *id*. 25 n.14.

Dated:   November 26, 2012

Respectfully submitted,
O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli

OMM_US:71146082

- 12 -

DC'S REPLY ISO MOT. FOR EVID.
HR'G RE DISCOVERY SANCTIONS