DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>    v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV-10-3633 ODW (RZx)<br><br>**PLAINTIFF DC COMICS' OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF PARTIAL JUDGMENT UNDER FED. R. CIV. P. 54(B) AND STAY OF REMAINING CLAIMS PENDING APPEAL**<br><br>DECLARATION OF DIMITRI PORTNOI AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>The Hon. Otis D. Wright II<br><br>Hearing Date:    December 17, 2012<br>Hearing Time:    1:30 pm<br>Courtroom:         11 |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  NO EFFICIENCY WILL RESULT FROM A RULE 54(B) APPEAL THIS LATE IN THIS TWO-YEAR OLD CASE ............................................ 3

   A. Efficiency Is Not Served By Indefinite Delay. ......................................... 4

   B. DC's State-Law Claims Are Intertwined With Its Federal Claims. ........... 4

   C. DC Would Be Prejudiced By Yet Another Appeal. .................................. 6

III. STAYING THIS CASE WOULD BE INEFFICIENT AND UNFAIR ......... 7

IV.  CONCLUSION ............................................................................................... 10

DC'S OPP. TO DEFS.'
RULE 54(B) AND STAY MOT.

# TABLE OF AUTHORITIES

**CASES**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) .................................................................................. 5, 6

*Ariz. State Carpenters Pension Trust Fund v. Miller*,
  938 F.2d 1038 (9th Cir. 1991) ..................................................................................... 6

*Bernard v. Donat*,
  2012 WL 10138 (N.D. Cal. Jan. 2, 2012) ................................................................. 8

*Birkes v. Tillamook Cnty.*,
  2012 WL 2178964 (D. Or. June 13, 2012) ............................................................... 8

*Campos v. Las Cruces Nursing Ctr.*,
  828 F. Supp. 2d 1256 (D.N.M. 2011) ....................................................................... 9

*CMAX, Inc. v. Drewry Photocolor Corp.*,
  295 F.2d 695 (9th Cir. 1961) ....................................................................................... 5

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ....................................................................................... 7

*Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*,
  78 F.3d 698 (1st Cir. 1996) .................................................................................... 1, 3

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980) ..................................................................................................... 3, 5

*de Aguilar v. Amtrak*,
  2006 WL 509444 (E.D. Cal. Mar. 2, 2006) ........................................................... 10

*Doe v. Univ. of Cal.*,
  1993 WL 361540 (N.D. Cal. Sept. 2, 1993) .......................................................... 10

*Farmers Ins. Exch. v. Super. Ct.*,
  2 Cal. 4th 377 (1992) ..................................................................................................... 9

*Figueroa v. Gates*,
  2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) ....................................................... 8

*Frank Briscoe, Inc. v. Morrison-Knudsen, Inc.*,
  776 F.2d 1414 (9th Cir. 1985) ..................................................................................... 3

*Hasbrouk v. Sheet Metal Workers*,
  586 F.2d 691 (9th Cir. 1978) ....................................................................................... 5

*Hogan v. Consol. Rail Corp.*,
  961 F.2d 1021 (2d Cir. 1992) ..................................................................................... 6

*Hughes v. Arnold*,
  2008 WL 2169511 (E.D. Cal. May 22, 2008) ......................................................... 6

*In re Atl. Pipe Corp.*,
  304 F.3d 135 (1st Cir. 2002) ....................................................................................... 9

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
   2006 WL 6886003 (C.D. Cal. June 9, 2006) ........................................................ 8

*In re Lindsay*,
   59 F.3d 942 (9th Cir. 1995) .................................................................................. 6

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) .............................................................................. 4

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
   2010 WL 5422554 (N.D. Cal. Dec. 27, 2010) ..................................................... 8

*Matek v. Murat*,
   638 F. Supp. 775 (C.D. Cal. 1986) ..................................................................... 10

*McIntyre v. U.S.*,
   789 F.2d 1408 (9th Cir. 1986) .............................................................................. 5

*Montes v. Rafalowski*,
   2012 WL 5392290 (N.D. Cal. Nov. 2, 2012) ....................................................... 3

*Morrison-Knudsen Co. v. Archer*,
   655 F.2d 962 (9th Cir. 1981) ................................................................................ 3

*Nat'l Ass'n of Home Builders v. Norton*,
   325 F.3d 1165 (9th Cir. 2003) .............................................................................. 6

*Noel v. Hall*,
   568 F.3d 743 (9th Cir. 2009) ................................................................................ 3

*Robinson v. De La Vega*,
   2008 WL 4748171 (S.D. Cal. Oct. 24, 2008) ....................................................... 6

*Roe v. City of Spokane*,
   2008 WL 4619836 (E.D. Wash. Oct. 16, 2008) ................................................. 10

*U.S. v. Lazarenko*,
   254 F.R.D. 384 (N.D. Cal. 2008) ......................................................................... 3

*Wood v. GCC Bend, LLC*,
   422 F.3d 873 (9th Cir. 2005) .................................................................. 1, 4, 5, 6

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) ................................................................................ 8

**RULES AND GENERAL ORDERS**

FED. R. CIV. P. 54(b) ..................................................................................... *passim*

C.D. L.R. 16-15.1 .................................................................................................. 9

G.O. 11-10, § 8.5 .................................................................................................. 9

## I. INTRODUCTION

Defendants' motion to take their *seventh* interlocutory appeal in two years, like their motion for a stay (their *fifteenth* such request), should be denied. While defendants argue their motion promotes efficiency and encourages settlement, all it invites is delay. No "compelling" efficiencies exist to put this case on hold to take a piecemeal appeal on DC's First and Third Claims, because even if such an appeal is heard, the Ninth Circuit will then have to hear yet another appeal on overlapping issues raised by DC's state-law claims. Such duplication of effort is unwarranted.

Defendants' motion is really aimed at Marc Toberoff avoiding DC's pending sanctions motion, DN 500, 527, and judgment against him on DC's state-law claims. But his desire to avoid liability does not trump DC's right to resolve this case expeditiously. Nor can Rule 54(b) be manipulated in such obvious, tactical ways. Indeed, *not once* in the five years the Superman cases were before this Court's predecessors did Toberoff seek an interlocutory appeal. Now every time he receives an adverse ruling or fears one is imminent, he tries to halt this case, run to the Ninth Circuit (where he has had no success), and stymie DC from fully litigating these Superman cases to finality. These games must end.

Rule 54(b) certification is warranted *only* if an interlocutory appeal yields "compelling" efficiencies, *Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996), and would not prejudice a party or unduly burden the courts, *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879-82 (9th Cir. 2005). Defendants fail these tests. Although the Court granted summary judgment in DC's favor on its First and Third Claims, entering a partial judgment to appeal these claims now would be wasteful. Many of the factual and legal issues in DC's First and Third Claims overlap with its Fourth through Sixth Claims; thus, rather than creating "compelling" efficiencies, a Rule 54 appeal would *guarantee* only duplication and delay and that the Ninth Circuit would have to confront "the same set" of issues in two successive appeals. *Wood*, 422 F.3d at 879. The law forbids this. *Id.*

DC'S OPP. TO DEFS.' RULE 54(B) AND STAY MOT.

And DC already has been prejudiced by the 18-to-24-month delay defendants engineered in this case by taking *six unsuccessful interlocutory appeals*. Inviting a seventh and eighth appeal now—the presently contemplated Rule 54 appeal, and an appeal at the end of the case—would only compound the harm. DC and the Courts have for too long borne the brunt of defendants' near-spastic delay tactics. As just one example, on October 29, defendants asked the Ninth Circuit panel hearing their SLAPP appeal to rule on the propriety of this Court's summary judgment order— the very ruling they now ask this Court to certify for a Rule 54(b) appeal. Portnoi Decl. Exs. 4, 5. Then, after the Ninth Circuit heard argument—and expressed no interest in diving into the merits of collateral orders, DN 512-2, Ex. 2—defendants filed this motion. Next, despite their dual, pending requests before the Ninth Circuit and this Court, defendants filed a third motion to *vacate* summary judgment. DN 514, 522. These tactics are improper and should all be rejected.

So, too, should defendants' stay motion. Defendants have tried to stay parts or all of this case *14 times* in two years. Almost every request was rejected. *Infra* n.3. This *fifteenth* request—which is nothing more than an improper motion for reconsideration of the Courts' prior rulings, *cf.* DN 522 at 1-2, 6-9—fares no better. Putting this case on hold for as long as two years, when it is months away from final resolution, would needlessly clog the courts and severely prejudice DC.

A stay will also impede a clear path to settlement. The Court's summary judgment ruling on DC's Third Claim, for the first time in a decade, freed the Shuster heirs from Toberoff's unlawful consent agreements, DN 507 at 5, 17, and the ruling on DC's First Claim (invalidating the Shusters' copyright termination) enables the Shusters to face the sober reality about the merits of DC's claims.[1]

---

[1] *Cf.* Portnoi Decl. Ex. 1 at 7:22-8:16 (Mr. Petrocelli: "So [you] understand that given that the [Shuster] estate has already given up an interest in Superboy, and the estate could lose this case and the court could find that the Shuster termination notice is invalid, that you as executor could yield the estate zero. You have entertained that as a possible outcome, correct?.... [Mr. Peary]: *I've only considered that like I would an asteroid hitting us and wiping out life on earth*.") (emphasis added).

- 2 -

DC'S OPP. TO DEFS.'
RULE 54(B) AND STAY MOT.

While Toberoff professes a desire to settle, Mot. 7, his motion tellingly omits that DC requested a mediation two weeks ago, Portnoi Decl. Ex. 6. Instead, he says the Shusters cannot "value" a settlement until they obtain "Circuit review" of this Court's summary judgment order. Mot. 7:20-25. What Toberoff means to say is that he hopes for a do-over on appeal, but that is no basis to delay *by up to two years* the first real opportunity to mediate this case unencumbered by Toberoff's illegal contracts and restraints on the Shusters. Nor is it a basis to prejudice DC by stalling this case for years more, when—even absent settlement—it can be fully and finally adjudicated in the next few months. In short, the Court should deny defendants' pending motions and enter DC's alternative proposed order.

**II.    NO EFFICIENCY WILL RESULT FROM A RULE 54(B) APPEAL THIS LATE IN THIS TWO-YEAR OLD CASE.**

"Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). To the contrary, "[j]udgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims…." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (Kennedy, J.) (emphasis added); *see Frank Briscoe, Inc. v. Morrison-Knudsen, Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (same); *Montes v. Rafalowski*, 2012 WL 5392290, at *1 (N.D. Cal. Nov. 2, 2012) (same); *U.S. v. Lazarenko*, 254 F.R.D. 384, 386 (N.D. Cal. 2008) (same); *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (for interlocutory appeal to be proper it must "streamline the ensuing litigation"); *Credit Francais*, 78 F.3d at 706 (Rule 54(b) requires there be "compelling considerations favoring the entry of an earlier than usual judgment, such as might warrant a piecemeal" appeal).

That test is not met here. Certifying the Court's summary judgment order for a Rule 54(b) appeal could stretch out the case for as much as two years, whereas a

DC'S OPP. TO DEFS.'
RULE 54(B) AND STAY MOT.

single, final judgment can and should be rendered in this case within a matter of months.  After a full and final adjudication on all the claims in the case, the parties can pursue one final appeal on a complete record.  Until then, the parties should focus on litigating the case to completion.  *See infra* Part III.

      A.  <u>Efficiency Is Not Served By Indefinite Delay.</u>  Defendants' efficiency arguments rest on the unreasonable assumptions that a Rule 54(b) appeal will be "speedy" and heard "*in conjunction with* [the Ninth Circuit's] determination of the Siegel Termination already on appeal."  Mot. 8 (emphasis added).  Not so.  The *Siegel* appeal took *17 months* to be heard, Portnoi Decl. ¶ 2, Exs. 11, 12,[2] a decision is expected from the Ninth Circuit in the coming weeks or months, *id.*, and it will take just as long—18 to 24 months—to brief, argue, and decide a new Rule 54 appeal.  In contrast, under the process DC proposes for litigating this case to conclusion, *infra* at 8-9, this case can be fully and finally adjudicated in six months—well before defendants' proposed Rule 54(b) appeal is even *briefed*.

      Defendants are also wrong to suggest that the same Ninth Circuit panel that heard *Siegel* will hear their latest Rule 54 appeal.  Mot. 8.  The Ninth Circuit declined to consolidate all Superman appeals before a single panel, Appeal Nos. 11-55863, 11-56034, DN 29-1, 33, 37, and each time defendants have brought a set of interlocutory appeals, a different panel has heard them.  *See* Portnoi Decl. Exs. 7-13; *In re Pac. Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012).  There is *no* indication that any one of the *six* prior Superman panels would hear defendants' latest appeal.  Indeed, this result is even more uncertain given that the *Siegel* panel included U.S. District Judge Sedwick, from the District of Alaska, sitting by designation.

      B.  <u>DC's State-Law Claims Are Intertwined With Its Federal Claims.</u>  There is also no basis for Rule 54(b) certification where, as here, the claims to be appealed overlap with unresolved claims.  *Wood*, 422 F.3d at 878-79; *McIntyre v. U.S.*, 789

---

[2] *See* http://www.ca9.uscourts.gov/media/view.php?pk_id=0000009757 (SLAPP), http://www.ca9.uscourts.gov/media/view.php?pk_id=0000009756 (*Siegel*).

F.2d 1408, 1410 (9th Cir. 1986) ("We particularly scrutinize a district judge's Rule 54(b) certification ... to prevent piecemeal appeals in cases which should be reviewed only as single units."). A "risk of duplicative effort by the courts" in having to address the same issues in successive appeals makes Rule 54 certification especially improper. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006); *see Curtiss-Wright*, 446 U.S. at 8.

The risks of duplicative effort here are both numerous *and* obvious:

• DC's Third and Sixth Claims challenge defendants' consent agreements. It does not matter that the claims arise from federal law and state law, respectively: "All of the facts stated in both counts relate to the same claim and the same asserted liability," and a Rule 54(b) motion is improper until all such claims are fully adjudicated. *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961); *see Hasbrouk v. Sheet Metal Workers*, 586 F.2d 691, 694 (9th Cir. 1978) ("The state law claims, to the extent they rely on that conduct [alleged in a federal-law claim], represent only alternate legal theories based on a set of facts common to the federal claim. As such, they do not constitute separate 'claims' for which certification under [Rule] 54(b) is appropriate.").

• DC's Fourth Claim is based on the same 1992 Agreement defendants seek to challenge on their Rule 54(b) appeal of DC's First Claim. DN 49 ¶¶ 175-79; DN 334 at 17-21; 184 at 1-2, 8, 17-18. Again, the Ninth Circuit should *once and only once* address the merits of these issues together as a "single unit[]" when this entire case comes to an end. *Wood*, 422 F.3d at 878-79; *McIntyre*, 789 F.2d at 1410. Otherwise, the Ninth Circuit—in ruling on DC's First and Third Claims as part of a Rule 54(b) appeal—would have to rule on the validity of the 1992 Agreement and the illegality of Toberoff's contracts, DN 507, then a year or so later revisit those very issues again in ruling on DC's Fourth Claim.

• DC's Fifth Claim "interrelat[es]" as well. *Wood*, 422 F.3d at 878-79. The Siegel history in the Fifth Claim, DN 49 ¶¶ 181-86; DN 334 at 21-23; 184 at 2-

- 5 -

DC'S OPP. TO DEFS.' RULE 54(B) AND STAY MOT.

8, 15-17; DN 500, overlaps with the unclean-hands ground of DC's First Claim, which targets defendants' Superboy fraud, DN 49 ¶¶ 129-33; DN 491 at 17-25.

"[D]uplicative effort by the courts," *AmerisourceBergen*, 465 F.3d at 954, must be avoided. Defendants' Rule 54 proposal is an improper invitation for DC's claims to ride a merry-go-round back and forth between the Ninth Circuit. *Wood*, 422 F.3d at 879 (court should reject Rule 54 appeal on Claim A when Claim B will "inevitably come back to [the circuit] court on the same set of facts"); *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991).

C.  <u>DC Would Be Prejudiced By Yet Another Appeal.</u>  To grant a Rule 54(b) motion, the Court must make an "express determination" that "no just reason" exists to deny it, *Nat'l Ass'n of Home Builders v. Norton*, 325 F.3d 1165, 1167 (9th Cir. 2003), and find the efficiencies gained *far outweigh* the inherent prejudice in piecemeal appeals, *e.g.*, *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992). DC will suffer significant prejudice if Toberoff's latest tactical gambit to derail this case (*i.e.*, Interlocutory Appeal No. 7, and a stay) is allowed. DC has already had to spend *two years* litigating six such appeals, which have required close to 700 hundred pages of briefing in the Ninth Circuit alone, Portnoi Decl. ¶ 2. *Cf. In re Lindsay*, 59 F.3d 942, 951 (9th Cir. 1995) (court cautioning of "dangers of profligate" interlocutory appeals in one case; noting how court wrongly "burdened with the time and expense of five appeals, and 334 pages of briefs").

Notably, defendants have yet to prevail on a single one of these appeals, and courts rightly deny Rule 54(b) motions where there is no "strong showing that [the party seeking it] is likely to succeed on the merits of the appeal." *Robinson v. De La Vega*, 2008 WL 4748171, at *4 (S.D. Cal. Oct. 24, 2008); *see Hughes v. Arnold*, 2008 WL 2169511, at *1 (E.D. Cal. May 22, 2008). Defendants have not made and cannot make such a showing. The Court's summary judgment ruling applied clear Ninth Circuit, Second Circuit, and New York case law—all of which defendants conceded bound them. DN 507 at 6-13; 468 at 1.

## III. STAYING THIS CASE WOULD BE INEFFICIENT AND UNFAIR.

Defendants not only seek a Rule 54(b) appeal, they seek to halt this case in its tracks while that appeal is litigated. As DC has shown, such a Rule 54(b) appeal is not warranted, but even if one were granted, there is no justification for a stay—particularly one that would impede DC's ability to obtain full and final judgment on its remaining state-law claims and pending sanctions motion.

In deciding whether to grant a stay, courts must weigh "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice…." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Imposing such a stay—when 13 of defendants' *prior stay requests were denied*,[3] and this case is so close to resolution—would severely prejudice DC and create tremendous inefficiencies.

To begin, defendants fail to demonstrate how they would be prejudiced absent a stay. Rather, they argue (a) district courts stay proceedings if "efficiency and fairness are served by doing so"; and (b) "efficiency and fairness" dictate this case be stayed. Mot. 9-10. This tautology does not satisfy defendants' burden, and

---

[3] DN 31, 33, 34 (motions to dismiss or stay entire case; denied as moot, DN 52); 42 at 24-25 (motion for protective order re: Toberoff Timeline, asking "at a minimum" to stay all discovery relating to Timeline; denied, DN 74); 45 (opposition to motion to initiate discovery, in which defendants argued pending SLAPP appeal required stay; stay request not granted, DN 74); 58 (motion for protective order staying depositions pending resolution of Rule 12 & SLAPP motions; two-month stay of depositions granted; broader stay denied, DN 74); 76-80 (motions to dismiss or stay; vacated pending first SLAPP appeal, DN 109); 101 (motion for review of order allowing depositions to proceed; vacated pending SLAPP appeal, DN 109); 112 (opposition to DC's motion to modify order staying case pending SLAPP appeal; DC's motion granted, and full discovery allowed on all claims, DN 117); 148 (renewed motion to dismiss or stay; withdrawn, DN 343; 345); 210 (opposition to motion to compel Timeline documents, asking for production to be stayed pending writ review; stay granted pending Ninth Circuit review, DN 262 at 2); 278 (motion to stay depositions pending writ review of order compelling production of Timeline documents; denied, DN 285); 401 (opposition to DC's *ex parte* application to lift stay on production of Timeline documents; DC's application granted, DN 416); 420 (*ex parte* application for protective order staying production of Timeline documents; denied, DN 424); 9th Cir. Case No. 10-73851, DN 5-1 (motion to stay district court order and/or discovery pending writ petition; denied, *id.* DN 13); 9th Cir. Case No. 11-71844, DN 34-1 (emergency motion for stay pending rehearing petitions; denied, *id.*, DN 429).

they cannot meet it in their reply brief. *E.g.*, *Bernard v. Donat*, 2012 WL 10138, at *3 (N.D. Cal. Jan. 2, 2012); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Nor do defendants even address the "rigorous" rules that apply to what is plainly a motion for reconsideration of the courts' 13 orders. *In re Impac Mortg. Holdings, Inc. Secs. Litig.*, 2006 WL 6886003, at *1 (C.D. Cal. June 9, 2006); *see Figueroa v. Gates*, 2002 WL 31572968, at *2 (C.D. Cal. Nov. 15, 2002).

Defendants do not address the relevant legal tests, because they cannot meet them. "[T]he interests of efficiency and fairness" are *not* served when a stay would deny plaintiff a timely adjudication of its claims. *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 2010 WL 5422554, at *4 (N.D. Cal. Dec. 27, 2010); *see Birkes v. Tillamook Cnty.*, 2012 WL 2178964, at *3 (D. Or. June 13, 2012). Bringing this action to a halt when it is so close to a final resolution would plainly harm DC. DC proposed a far more efficient plan to move this case forward toward a resolution, DN 513-1 at 4-5, but defendants declined even to discuss that plan with DC before filing their current motion, Portnoi Decl. Ex. 6. DC's proposal was as follows:

First, the Court should hear DC's pending sanctions motion, DN 500, which has the potential to resolve DC's Fifth Claim. This motion is now fully briefed, and is currently set for hearing December 10. Toberoff is desperate to avoid the motion so he asks for a stay, Mot. 9, and in another brief wrongly challenges the Court's power to hear it, DN 517 at 3. But as DC shows in its reply brief filed today in support of its sanctions motion, the Court is fully empowered to grant the vital relief DC seeks and to significantly narrow the issues in the case. DN 527 at 10-11.

Second, DC and the Shuster family should participate in a court-ordered mediation this December, as set forth in DC's Proposed Order accompanying this opposition. DN 513-1 at 4. While there have been prior efforts to settle with the Shusters, they have all occurred under the cloud of Toberoff's illegal consent agreements with the heirs, and without the guidance of this Court's summary judgment ruling, which invalidated the Shusters' copyright termination notice. DN

507. These important new developments empower the Shusters and DC to have a realistic conversation about settlement. *Cf. supra* at 1 n.1; G.O. 11-10, § 8.5 ("Each party shall appear at the mediation in person or by a representative *with final authority to settle* the case.") (emphasis added). The Court has full power to order such a mediation session and to order the Shusters to participate. *Id.*; C.D. L.R. 16-15.1; *In re Atl. Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002) (court has "power to order non-consensual mediation in those cases in which that step seems reasonably likely to serve the interests of justice"); *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1273 n.11 (D.N.M. 2011) (court may order party to attend).

Third, the parties should resolve the Sixth Claim. DC asked defendants to stipulate to judgment on that Claim, but they refused. Portnoi Decl. Exs. 2, 3, 6. DC's Sixth Claim seeks the same judicial declaration, DN 49 ¶¶ 172, 188-89, that the Court issued in DC's favor on its Third Claim—*i.e.*, that defendants' consent agreements are invalid, DN 507 at 5, 17. In ruling in DC's favor on its Third Claim, the Court applied federal law, but California's unfair competition statute— on which DC's Sixth Claim is based—"borrows" from federal law, and thus the Court's ruling applies with equal force to DC's Sixth Claim. *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992). Since defendants will not stipulate to judgment, DC will soon file a short motion seeking it. Defendants dispute this Court's power to grant such a motion pending their SLAPP appeal. Mot. 8:10-14. Again, as explained in DC's reply in support of its sanctions motion, defendants are mistaken and can cite no federal SLAPP case so holding. *Supra* at 8.

Fourth, the parties should resolve the Fourth Claim. The Court has held the contract on which this claim is based is valid, DN 507 at 5-13, and noted Toberoff's illegal agreements "essentially gut" that contract, DN 337 at 3. All that remains is the amount of DC's damages, and defendants' spurious affirmative defenses. These issues can be resolved, at a minimum, in a short trial.[4]

---

[4] The modest fees and costs DC intends to seek as the prevailing party on its First

1   Defendants' true goal in seeking a stay is not to achieve efficiency or
2   facilitate settlement, but to avoid indefinitely DC's state-law claims and sanctions
3   motion against Toberoff. Defendants cite no case where a stay was granted to
4   provide a party like Toberoff with such a wasteful and improper strategic
5   advantage. The four cases defendants do cite provide them no help:

- In two, plaintiffs were clearly going to lose on their federal claims and, once they did, would merely re-file their pendent state-law claims in state court—meaning there was no reason for the federal court to hear them. *Doe v. Univ. of Cal.*, 1993 WL 361540, at *2 (N.D. Cal. Sept. 2, 1993); *Matek v. Murat*, 638 F. Supp. 775, 784 (C.D. Cal. 1986). Here, DC prevailed on its federal claims, and it is now time to finish the work of adjudicating its state claims—a process that has taken 29 months so far.

- Defendants' third case involved a stay to which most of the parties in parallel litigation *consented* to avoid entirely *duplicative trials* on the same factual questions. *de Aguilar v. AMTRAK*, 2006 WL 509444, at *3 (E.D. Cal. Mar. 2, 2006). Here, no such consent or facts exist.

- In defendants' fourth case, a stay was *neither* requested nor granted. *Roe v. City of Spokane*, 2008 WL 4619836, at *6 (E.D. Wash. Oct. 16, 2008).

## IV.  CONCLUSION

Defendants' motion should be denied, and DC's alternative proposed order (requiring a mediation) should be entered.

Dated:   November 26, 2012         Respectfully Submitted,

By:  /s/ Daniel M. Petrocelli
     Daniel M. Petrocelli

---

and Third Claims can also be adjudicated in a motion before any appeal, and the narrow issues that remain open in the *Superboy* case can be resolved with a short summary judgment motion—disposing of all open issues that remain in all three of the Superman cases. DN 513-1 at 4; Case No. CV-04-8400, DN 623 at 1-2.