Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
David Harris (State Bar No. 255557)
  dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>         vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF A FED. R. CIV. P. 54(b) JUDGMENT ON OCTOBER 17, 2012 ORDER GRANTING PLAINTIFF DC COMICS' FIRST AND THIRD CLAIMS, AND FOR A STAY OF REMAINING CLAIMS**<br><br>*Reply Declaration of Keith Adams filed concurrently*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:    December 17, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.    A RULE 54(b) JUDGMENT IS PROPER HERE ........................................ 3

    A.    Immediate Appeal Is The Best Path To Resolving This Case ............. 3

    B.    DC's "Plan" Is Legally Unfounded And Practically Unworkable ....... 5

        1.    DC's "Plan" Makes No Sense Given This Court's Lack Of Jurisdiction Over The Fourth, Fifth And Sixth Claims ............. 5

        2.    DC's Plan Would Only Delay The Resolution Of This Case .... 7

        3.    An Appeal Of A Rule 54(b) Judgment Need Not Be Lengthy ................................................................................. 8

    C.    A Rule 54(b) Judgment Would Not Require This Court Or The Ninth Circuit To Adjudicate The Same Issue More Than Once .......... 9

    D.    DC's Arguments About Defendants' Prior Appeals Lack Merit ........ 10

II.    A STAY IS WARRANTED IF JUDGMENT IS ENTERED ...................... 11

CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ................................................................6, 10

*Brown v. Dunbar*,
2010 U.S. App. LEXIS 8160 (9th Cir. Apr. 20, 2010)...................................9

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ....................................................................3, 9

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980)..............................................................................................1

*Doe v. University of Cal.*,
1993 U.S. Dist. LEXIS 12876 (N.D. Cal. September 2, 1993) .................11

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) ...........................................................................................5

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002) ........................................................................3

*Natural Res. Def. Council v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ........................................................................5

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ..........................................................................9

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) .................................................................................10

*Ryan v. Editions Ltd. W., Inc.*,
2011 WL 3207041 (N.D. Cal. July 27, 2011) ...............................................6

*Schering Corp. v. First Databank, Inc.*,
2007 WL 1747115 (N.D. Cal. June 18, 2007)...............................................6

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) ..........................................................................9

*Williams v. Brooks*,
996 F.2d 728 (5th Cir. 1993) ..........................................................................6

## Statutes

17 U.S.C. § 304(c)(6)(D) ....................................................................................10

Cal. B. & P. Code § 17200 ...............................................................................10

Fed. R. Civ. P. 54(b) ...................................................................................*passim*

# **INTRODUCTION**

DC Comics' ("DC") opposition (Dkt. 528; "Opp.") tries to evade Defendants' motion for a Rule 54(b) judgment (Dkt. 513; "Mot.") on the Court's October 17, 2012 summary judgment order (Dkt. 507; "Order") with distractions, but offers no cogent reason not to enter judgment. Rule 54(b) judgments are routine and have only two requirements: (1) "an ultimate disposition of an individual claim entered in the course of a multiple claims action" and (2) "no just reason" to delay appellate review. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980).

DC does not contest the first prong – that the Court's Order resolved DC's First and Third Claims. Nor does DC rebut Defendants' arguments on the second "efficiency" prong. DC's First Claim – as to the validity of the Shuster Termination – is the central economic issue in this case because it determines whether the Shuster Estate has any Superman rights. It is unlikely that either side will settle before the Ninth Circuit resolves this issue. Mot. 1-2, 6-8. Regardless of whether the First Claim is resolved now on appeal of a Rule 54(b) judgment, or much later after final judgment, the Shuster Estate will appeal the Order. A final judgment in this complex case is a long way off, as much remains to be adjudicated. A Rule 54(b) judgment, like the one this Court entered in the related *Siegel* case regarding the Siegels' parallel termination, is far more efficient, as it would allow the parties to value the Shuster copyright claims and thereby facilitate settlement. DC does not address these basic points, and instead offers *non sequiturs* and an unworkable "plan."

*First*, DC argues it wants a settlement mediation. This is off point: DC is free to make settlement offers whether or not a Rule 54(b) judgment is entered.

*Second*, DC argues that a Rule 54(b) appeal would cause "indefinite" delay, and offers an illusory "plan" whereby this case would somehow be litigated to final judgment in just a few months. This "plan" is legally impossible, because it is well-established under clear Supreme Court and Ninth Circuit precedent that this Court lacks jurisdiction over the merits of DC's Fourth, Fifth and Sixth Claims until

1    Defendants' pending appeal of the denial of their anti-SLAPP motion (Appeal No.
2    11-56934; the "Anti-SLAPP Appeal") is resolved.  DC, which conceded this issue
3    previously, now backtracks and attempts to convince this Court to commit clear error
4    by asserting jurisdiction where it has none.

5         DC's "plan" is also practicably impossible.  Half of DC's claims and most of
6    Defendants' affirmative defenses remain undecided.  DC's sudden "plan" therefore
7    requires that a multitude of complex motions and a trial be completed in the next few
8    months.  Opp. 8-9.  Yet, DC argued in September and again in October 2012 that it
9    required much more time to conduct and respond to discovery, and has not yet even
10   bothered to depose many key witnesses (e.g., Kevin Marks, Ari Emanuel).  Dkt. 493
11   ¶¶3-22; Dkt. 500-2 ¶¶11-21.  DC's unworkable "plan" is illusory.

12        *Third*, DC argues a red herring that its First and Third Claims "overlap" in
13   some respects with its Fourth and Sixth Claims, respectively.  Under well-settled
14   precedent that does not prevent a Rule 54(b) judgment.  Regardless of whether a Rule
15   54(b) judgment is entered now, or a final judgment is entered later, the Ninth Circuit
16   need only review the Court's Order – and any "overlapping" issues it entails – once.

17        *Fourth*, DC falsely argues that Defendants' appeals in this and the *Siegel* case
18   were somehow improper and prejudiced DC by causing delay.  The Ninth Circuit
19   expressed no interest in such arguments in either (i) the *Larson v. Warner Bros.*
20   *Entertainment Inc.* cross-appeals (the "*Siegel* Appeals"; Appeal Nos. 11-55863, 11-
21   56034) of this Court's Rule 54(b) judgment in the related *Siegel* case, or (ii) the Anti-
22   SLAPP Appeal in this case.  Nor has DC been prejudiced by the appeals, as it has had
23   *carte blanche* to take discovery for over two years, and wants even more time.

24        Finally, DC argues against a stay, which is well within the Court's discretion.
25   If a Rule 54(b) judgment is entered, the logic of a stay is clear:  the merits of DC's
26   First, Third, Fourth, Fifth and Sixth Claims would all be on appeal, and DC's Second
27   Claim is currently moot, as it was pled in the alternative "if the Court does not grant
28   [DC's] First Claim."  Dkt. 49 ¶136.  After entry of a Rule 54(b) judgment, the Court

1  could properly stay the case as it would lack jurisdiction over the merits of any claim.

2  <u>**ARGUMENT**</u>

3  **I.    A RULE 54(b) JUDGMENT IS PROPER HERE**

4  Fed. R. Civ. P. 54(b) provides that "[w]hen an action presents more than one

5  claim for relief … the court may direct entry of a final judgment as to one or more,

6  but fewer than all, claims or parties only if the court expressly determines that there is

7  no just reason for delay."  The Ninth Circuit takes a "pragmatic approach"

8  (*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th

9  Cir. 1987)) to Rule 54(b), and "issuance of a Rule 54(b) order is a fairly routine act

10 that is reversed only in the rarest instances."  *James v. Price Stern Sloan, Inc.*, 283

11 F.3d 1064, 1068 (9th Cir. 2002).  DC implicitly concedes that its First and Third

12 Claims were fully resolved by the Order, as it nowhere argues that they were not.

13 **A.    <u>Immediate Appeal Is The Best Path To Resolving This Case</u>**

14 DC's opposition does not address Defendants' main argument that appellate

15 resolution of the First Claim is essential to settlement and should be sought now.

16 DC's First Claim concerned whether the Shuster Estate's copyright termination

17 notices were valid.  The Court's Order determined that question in the negative, fully

18 resolving DC's First Claim.  Dkt. 507.  Entry of a Rule 54(b) judgment, and an

19 appeal to the Ninth Circuit, could finally determine the validity of the Shuster

20 Termination, whether the Estate has any Superman copyrights, and whether DC can

21 exploit new Superman derivative works after October 26, 2013 without a license

22 from Ms. Siegel and the Shuster Estate – *the core economic issues in this case*.  *See*

23 Mot. 1-2, 7-8.  After these issues are determined at the Circuit, the parties will be in a

24 much better position to value their rights and meaningfully negotiate a settlement.

25 Given the vast difference in value between a valid Shuster Termination (worth

26 millions) and an invalid Shuster Termination (worth nothing), the Shuster Estate will

27 appeal the Order's invalidation of its Termination.  The sole question is whether the

28 appeal occurs now or much later down the road – after this Court has regained

3

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF FED. R. CIV. P. 54(b) JUDGMENT

jurisdiction over DC's state-law claims, resolved a multitude of summary judgment
and other motions related to those claims (Dkt. 528-3, Ex. 6), and potentially held a
trial.  It is far more efficient to appeal the Court's Order ***now*** to increase the
likelihood of settlement ***before*** the Court must undertake these considerable efforts.

DC's central argument against this is that it wants to have settlement
discussions now.  Opp. 2-3.  But the issuance of a Rule 54(b) judgment has no
bearing on the parties' ability to make settlement offers or to engage in negotiations.
Regardless of whether a 54(b) judgment is entered and an appeal taken, DC can make
settlement offers to the Shuster Estate, and the Shuster Estate can respond.

DC falsely complains about a "cloud" on settlement from "illegal contracts and
restraints," supposedly imposed on the Shuster Estate by Mr. Toberoff.  Opp. 3, 8.
This is utter nonsense, and irrelevant to a Rule 54(b) judgment.  The Shuster
Termination was served in 2003.  Dkt. 49 ¶92.  The old agreements DC complains of
between Mr. Peary and Pacific Picture Corp. ("PPC Agreements") were voluntarily
rescinded ***in 2004.***  Dkt. 331-2, Ex. F.  DC has had every opportunity to settle with
the Shuster Estate.  From 2004-08, DC made one rejected low-ball offer to the
Shuster Estate in 2005, and never made another.  Dkt. 334-12, Ex. F; 338-1, Ex. A.

The agreement that DC complains about is really a 2008 collective bargaining
agreement between Defendants Laura Siegel Larson and the Shuster Estate, entered
into in the *Siegel* case, which set forth their settlement strategy as potential co-owners
of the recovered Superman copyrights to jointly negotiate a new license with DC.  As
DC well knows Mr. Toberoff is <u>not</u> a party to this agreement, which he signed only
as to form as their litigation counsel, and, of course, any settlement with the Siegels
or Shusters does <u>not</u> require his consent.  Dkt. 514 at 1, 2, 9-11.  The 2008 agreement
was made in response to an obvious "prisoner's dilemma"– if either the Siegels *or*
the Shusters licensed to DC, DC could continue to exploit new Superman works after
2013 without a license from the other.  Thus, if one acted first, the other would be out
of luck – a point DC itself raised in its 2005 letter to the Shusters.  Dkt. 338-1, Ex. A

at 4, 5 (DC:  "DC will only pay a premium to *one* terminating party;" "if we are able to resolve matters with the Siegel heirs … *before* we reach an agreement with you … there will not be any pressing need to reach any agreement with you….") .  To prevent DC from playing the Shusters and Siegels against each other, they reasonably agreed to collectively negotiate with DC.  It is for this reason – not any "cloud" of "illegal contracts" (Opp. 8) – that DC presses to negotiate separately with the Shuster Estate, so as to implement DC's divide and conquer strategy.

While DC demands mediation, it has made no new offer to the Shuster Estate either before or after the Court's Order, though it was free to do so.  DC does not seek to timely resolve this case through a reasonable financial settlement and/or Circuit resolution of its First Claim.  Instead, DC seeks to burden Defendants (and the Court) with needlessly drawn-out litigation to leverage a low-ball settlement, while falsely promising that this case can be wrapped-up in "months."

### B.    DC's "Plan" Is Legally Unfounded And Practically Unworkable

DC is wrong, both jurisdictionally and practically, to suggest that a Rule 54(b) judgment would delay this case's resolution, and that it is more efficient to litigate DC's three remaining claims and Defendants' affirmative defenses to final judgment.

### 1.    DC's "Plan" Makes No Sense Given This Court's Lack Of Jurisdiction Over The Fourth, Fifth And Sixth Claims

DC's opposition is premised on a fake schedule to resolve the Fourth, Fifth and Sixth Claims in just a few months.  Opp. 4, 8-9.  DC's plan is a mirage, because this Court lacks jurisdiction over the merits of those claims.

"[T]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and ***divests the district court of its control over those aspects of the case involved in the appeal***."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (emphasis added); *see Natural Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being

5

appealed.").  The Anti-SLAPP Appeal encompasses *the merits* of DC's Fourth, Fifth and Sixth Claims, because the second-prong of anti-SLAPP analysis determines whether DC has met its "burden" to "establish a reasonable probability that [it] will prevail on [its] … claims."  *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).

In addition, this Court lacks jurisdiction over the merits of DC's state-law claims because California's SLAPP statute provides substantive immunity from suit and immunity appeals divest the district court of jurisdiction.  *See id.* at 1025; *Williams v. Brooks*, 996 F.2d 728, 730 (5th Cir. 1993) (stating the circuit courts have "uniformly held" that an "interlocutory appeal following a district court's denial of a defendant's immunity defense divests the district court of jurisdiction to proceed").

DC wrongly claims that Defendants "can cite no federal SLAPP case [] holding" that this Court lacks jurisdiction.  Opp. 9.  Defendants can.  For example, *Schering Corp. v. First Databank, Inc.*, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007), held that the defendant's SLAPP appeal "plainly divested this Court of jurisdiction to proceed with a trial during which [the appealing party] would have to defend against [plaintiff's] claims."  Similarly, *Ryan v. Editions Ltd. W., Inc.*, 2011 WL 3207041, at *3-4 (N.D. Cal. July 27, 2011), held that the defendant's SLAPP appeal divested the court of jurisdiction even to grant a voluntary dismissal.

This law is clear and well-established.  It is so clear that DC expressly conceded the point previously.  *See* Dkt. 341 at 1 ("*Defendants' latest notice of appeal obviates any present need for the Court to address the parts of defendants' pending Rule 12 motion, Docket No. 333, that challenge DC's Fourth, Fifth, and Sixth claims*….  What must proceed in the case are DC's three federal claims (its First, Second, and Third Claims)….") (emphasis added); Dkt. 364 at 15 (DC not seeking trial date on Fourth, Fifth, and Sixth claims "[i]n light of the appeal"); Dkt. 494-1 ¶73 (admitting as "undisputed" that "DC's Fourth, Fifth and Sixth Claim are before the Ninth Circuit as part of the anti-SLAPP appeal.").

It was only after Defendants informed DC that they would bring a Rule 54(b)

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF FED. R. CIV. P. 54(b) JUDGMENT

motion that DC advanced its new, erroneous argument that the Court can rule on the Fourth, Fifth and Sixth Claims despite the pending Anti-SLAPP Appeal.  <u>DC's new argument is wrong, and invites the Court to commit clear error by ruling on claims over which it lacks jurisdiction</u>.

## 2.   DC's "Plan" Would Only Delay The Resolution Of This Case

Putting aside the Court's lack of jurisdiction, DC's "plan" for a quick and "final resolution" is untenable.  Opp. 8-9.  While advertised as "efficient," DC's plan actually has the Court deciding numerous complex motions based on a voluminous factual record, all within less than six months, including:  (1) DC's contemplated motion for attorney's fees and costs on DC's First and Third Claims; (2) DC's contemplated motion for summary judgment or a trial on its Fourth Claim; (3) DC's pending motion for an evidentiary hearing and sanctions as to its Fifth Claim (where the Court also lacks jurisdiction); (4) DC's motion for summary judgment or a trial on its Fifth Claim, as there is no sound basis for terminating sanctions on that claim; and (5) DC's contemplated motion for summary judgment or a trial on its Sixth Claim.  *Id.*  The Court would also need to resolve Defendants' contemplated motion(s) for summary judgment as to DC's Fourth, Fifth and Sixth Claims (Dkt. 528-3, Ex. 6 at 36), each of which is barred as a matter of law by Defendants' affirmative defenses, most notably, the applicable statutes of limitations.

DC's sudden "plan" also directly contradicts DC's repeated and continued assertions that it needs more time to conduct and respond to discovery in this case. Just three months ago, in September 2012, DC argued that it "still needs to depose many witnesses … including each of the defendants, as well as close to 10 third parties."  Dkt. 493 ¶¶3-22.  Even more recently, in October 2012, DC spent 4 ½ pages in its motion for an evidentiary hearing/sanctions describing the additional discovery it intends to seek.  Dkt. 500-2 at 11-16, ¶¶11-21.  At the same time, it moved for a special master to review all of Defendants' productions and thousands of privilege log entries covering 8 years of litigation in this and the *Siegel* case.  Dkt.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF FED. R. CIV. P. 54(b) JUDGMENT

1    500.  And just last week, DC served a soon-to-be-filed motion for a protective order,

2    in which it requests that it be relieved from producing any privilege logs for 2004 to

3    the present until March 2013.  Reply Declaration of Keith Adams ("ARD"), Ex. A.

4         In 2½ years of litigation, DC has yet to even take depositions of key witnesses

5    such as Ari Emanuel or Kevin Marks, and has done little to advance this case to

6    resolution.  Only now that DC wants to evade a 54(b) judgment does DC claim that it

7    will file (without committing to any schedule) a multitude of motions to supposedly

8    wrap-up this case.  DC employed the same transparent tactic in opposition to a Rule

9    54(b) motion in *Siegel*; this Court rejected the argument then and should do so now.

10   Case No. 04-CV-08400 ODW (RZx), Dkt. 655 at 2, 10-11, 13; Dkt. 667.  Given the

11   above, it is extremely unlikely that all of the outstanding matters will be resolved

12   quickly.  It is far more efficient for the Court to enter a Rule 54(b) judgment on the

13   central First Claim, so that it can be resolved at the Circuit without delay.

14        **3.    An Appeal Of A Rule 54(b) Judgment Need Not Be Lengthy**

15        DC argues that entry of a Rule 54(b) judgment "could stretch out the case for

16   as much as two years" while an appeal is taken, citing the length of time the *Siegel*

17   Appeals took.  Opp. 3-4.  This argument also does not hold water.

18        *First*, the Order will be appealed either way – as part of a Rule 54(b) judgment

19   now or as part of a final judgment later.  An immediate Rule 54(b) appeal of the

20   critical First Claim could be completed in a more streamlined fashion as it would be

21   on a much more limited record and concern a much more limited set of issues than a

22   later appeal of a final judgment on numerous state-law claims.

23        *Second*, the *Siegel* Appeals took 17 months to be heard because:  (1) DC filed a

24   motion to dismiss the appeal, which was denied; (2) both sides sought extensions; (3)

25   there were cross-appeals, requiring additional briefs; and (4) DC never once

26   requested that the appeal be expedited.  Dkt. 528-3, Ex. 13 (*Siegel* Appeals Docket).

27   It is more likely that any Rule 54(b) appeal would be heard in 12 months or less, like

28   the Anti-SLAPP Appeal.  Dkt. 528-3, Ex. 12 (Anti-SLAPP Appeal Docket).  DC

1  could also move to expedite the appeal under Circuit Rule 27-12.

2       *Third,* the panel that heard *both* the Anti-SLAPP and *Siegel* Appeals could hear

3  a Rule 54(b) appeal now.  That panel will be quite familiar with this case and the

4  voluminous record, and better able to render a focused decision on a Rule 54(b)

5  judgment.  DC weakly argues this is unlikely because a writ panel declined to hear

6  the Anti-SLAPP and *Siegel* Appeals (Opp. 4), but that writ panel solely addressed a

7  narrow privilege issue with no connection to the merits.

8      **C.    A Rule 54(b) Judgment Would Not Require This Court Or The**

9             **Ninth Circuit To Adjudicate The Same Issue More Than Once**

10      DC argues that a Rule 54(b) judgment would result in the Circuit "having to

11  address the same issues in successive appeals."  Opp. 5.  This is false.  Entry of

12  judgment would actually prevent this Court and the Circuit from having to decide the

13  same issues multiple times.  Whereas an interlocutory order "may be revised at any

14  time before the entry of a judgment," if the Court enters a 54(b) judgment on the First

15  and Third Claims, that judgment would bar litigation of any overlapping issues in this

16  Court.  *See Continental*, 819 F.2d at 1525; *Brown v. Dunbar*, 2010 U.S. App. LEXIS

17  8160 (9th Cir. Apr. 20, 2010).  Also, such issues would only be adjudicated by the

18  Ninth Circuit once – on appeal of the Rule 54(b) judgment.

19      "[C]laims certified for appeal do not need to be separate and independent from

20  the remaining claims, so long as resolving the claims would 'streamline the ensuing

21  litigation.'"  *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (citations omitted).[1]  But

22  to sow confusion, and imply that this case is much closer to resolution than it really

23  is, DC exaggerates any overlap between the First and Fourth Claims, and the Third

24  and Sixth Claims.  The Court's summary judgment Order addressed only two issues

25  relevant to DC's Fourth and Sixth Claims – the effect of the 1992 Agreement (First

---

[1] *See Continental*, 819 F.2d at 1519 ("[Ninth Circuit has] upheld Rule 54(b) certification even though the remaining claims would require proof of the same facts involving the dismissed claims"); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991) ("Rule 54(b) claims do not have to be separate from and independent of the remaining claims….").

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF FED. R. CIV. P. 54(b) JUDGMENT

1 Claim) and the effect of 17 U.S.C. § 304(c)(6)(D) (Third Claim).

2      DC's Fourth Claim is for tortious interference with contract which requires, as

3 just *one of five elements*, that there is "a valid contract between plaintiff and a third

4 party" that relates to the subject matter of the claim. *Pacific Gas & Electric Co. v.*

5 *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  The Court's Order may have

6 adjudicated this one element, but it did not adjudicate any of the numerous other fact-

7 based elements of DC's Fourth Claim.  Nor did it adjudicate Defendants' affirmative

8 defenses (*e.g.*, statute of limitations and litigation privilege).

9      As to DC's Fifth Claim, the Order resolved *nothing* – neither the five elements

10 of DC's cause of action nor any of Defendants' many affirmative defenses.

11      DC's Sixth Claim, under California's unfair competition law ("UCL"),

12 requires "unlawful, unfair or fraudulent" conduct.  Cal. B. & P. Code § 17200.  The

13 Order merely determined that the long-cancelled PPC Agreements were void under

14 17 U.S.C. § 304(c)(6)(D).  Dkt. 507 at 17.  It did not adjudicate:  (1) whether DC's

15 Sixth Claim was adequately pled; (2) whether the PPC Agreements amount to

16 "unlawful" or "fraudulent" conduct under the UCL; or (3) Defendants' numerous

17 affirmative defenses (*e.g.*, preemption, statute of limitations and litigation privilege).

18      **D.     DC's Arguments About Defendants' Prior Appeals Lack Merit**

19      Given the value of this litigation, and the parties' fundamental dispute,

20 Defendants have tried to bring this case to a real conclusion, at the Circuit, as quickly

21 as possible.  DC hypes Defendants' appeals (counting related filings separately) as

22 improper, but Defendants merely followed well-established appellate procedure.

23      Defendants properly appealed one of Magistrate Zarefsky's orders on a novel

24 privilege issue deemed significant enough that the Circuit accepted writ review and

25 published its opinion.  Defendants' Anti-SLAPP Appeal was also proper under clear

26 Ninth Circuit authority.  *Batzel*, 333 F.3d at 1024-26.  DC's erroneous argument that

27 the Circuit lacked jurisdiction (Anti-SLAPP Appeal, Dkt. 37-1 at 26-27) had no

28 traction whatsoever with the panel at oral argument.  Dkt. 521-2, Ex. 2.

In *Siegel,* both defendant Laura Siegel Larson *and DC* appealed this Court's Rule 54(b) judgment. Appeals of a Rule 54(b) judgment are routine, and entry of a 54(b) judgment is rarely reversed. *See* Mot., Appendix I. DC nonetheless made a motion to dismiss the appeal for supposed lack of jurisdiction that was denied (Dkt. 528-3, Ex. 13 at 73); DC re-argued this in its briefing (*Siegel* Appeals, Dkt. 31-1 at 40-41), but the panel again expressed no interest in this at the hearing.[2] ARD, Ex. B.

Lastly, DC's claim that it has somehow "been prejudiced by the 18-to-24-month delay defendants engineered in this case" through appeals (Opp. at 2) is false. This Court imposed a *sua sponte* stay in connection with one interlocutory appeal, which lasted for just a few weeks. Dkt. 109, 117. Other than that, DC has been free to take discovery, but, as shown above, has taken its time.

## II.    A STAY IS WARRANTED IF JUDGMENT IS ENTERED

A stay is well within this Court's inherent powers, and should be entered along with a Rule 54(b) judgment if "efficiency and fairness are served by doing so." *Doe v. University of Cal.*, 1993 U.S. Dist. LEXIS 12876, at *5 (N.D. Cal. September 2, 1993). DC does not contest this. The reasons for a stay if a 54(b) judgment is entered are obvious. The Court currently lacks jurisdiction over the Fourth, Fifth, and Sixth Claims. *See* Section I.B.1, *supra.* The Second Claim, pled in the alternative to the First, is currently moot. Mot. at 1, 3, 7; Dkt. 49 ¶136; Dkt. 507 at 18 n.3. If a 54(b) judgment is entered, the Court would lack jurisdiction over the First and Third Claims, and then none of DC's six Claims would properly be before the district court. Under such circumstances, a stay would be logical.

DC's arguments against a stay are unpersuasive distractions. *First*, DC's arguments are premised on the fiction that this case is "so close to resolution" and an

---

[2] DC misleadingly states that "defendants asked the Ninth Circuit panel hearing their SLAPP appeal to rule on the propriety of this Court's summary judgment order." Opp. 2. The Circuit *sua sponte* asked both parties to brief the effects (if any) of the Court's Order on the Anti-SLAPP Appeal. Dkt. 528-3, Ex. 4 at 14. In response, Defendants noted only that if the Circuit (1) reached the merits of DC's state-law claims and (2) did not resolve those claims based on Defendants' affirmative defenses, then (3) the Circuit could resolve any issues that overlapped with those decided in the Order. *Id.* at 18-19.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF FED. R. CIV. P. 54(b) JUDGMENT

illusory "plan" to complete the case in "months."  Opp. at 7-10.  As this case is nowhere "close" to resolution and the Court currently lacks jurisdiction to decide DC's remaining state-law claims (*see* Section I.B.1, *supra*), DC's arguments fail.

*Second*, the requested stay is not a motion for "reconsideration."  Opp. at 2, 8. Defendants ask for a stay only if the Court enters a Rule 54(b) judgment.  As no party previously requested a 54(b) judgment/stay, this motion is not for "reconsideration." DC's gratuitous listing of prior stay requests (Opp. 7 n.3) are irrelevant, as they concern:  (1) identical requests re-filed with the same motions to dismiss that were thrice vacated, ordered re-submitted and ultimately withdrawn (Dkts. 31, 33-34, 76-80, 148); (2) proper, temporary stays as to specific discovery, many of which were granted (Dkts. 42, 45, 58, 101, 210, 278, 401, 420); and (3) Defendants' opposition to *DC's* motion to modify a stay that this Court imposed *sua sponte*.  Dkt. 112.

*Third*, DC frivolously argues that Defendants seek a stay "to avoid indefinitely DC's state-law [Fourth, Fifth and Sixth] claims and sanctions motion [on Fifth Claim]."  Opp. 10.  This Court lacks jurisdiction over such claims as their merits are before the Circuit.  Defendants urged the Circuit to reach their merits, while DC argued it should *not*.  Anti-SLAPP Appeal, Dkt. 37-1 at 45-46; Dkt. 51 at 24.  In *Siegel*, where there was no such punitive claims/motion, a Rule 54(b) judgment was sought on the same rationale on the key First Claim as to the validity of termination.

## CONCLUSION

DC's First Claim is central to resolution and settlement, and the Order on that claim should be resolved at the Ninth Circuit as soon as possible through a Rule 54(b) judgment.  In the interim, further proceedings can and should be stayed.

Dated:  December 3, 2012          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, *et al.*