Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:  (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>        Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE OCTOBER 17, 2012 ORDER GRANTING PLAINTIFF DC COMICS PARTIAL SUMMARY JUDGMENT ON ITS FIRST AND THIRD CLAIMS, AND FOR AN EVIDENTIARY HEARING**<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:   December 17, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.    The Motion Is Not Improper Or For Reconsideration ....................2

II.   DC's Misconduct Warrants Vacating The Order ...........................3

     A.    Rule 60(b)(3)'s Standards Apply To A Motion To Vacate .................3

     B.    DC's Excuses Are Legally Insufficient and Facially Absurd..............4

     C.    DC's Discovery Misconduct Prevented Defendants From Fully And Fairly Presenting Their Case Under Rule 60(b)(3)......................7

          1.    The Moving Party Need Not Prove Diligence, And Defendants Were Diligent In Any Event....................................7

          2.    The Withheld Evidence Need Not Be Dispositive ..................10

     D.    DC's Opposition Shows The Need For An Evidentiary Hearing.......11

CONCLUSION................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. California Dept. of Corr.*,
2010 WL 4006362 (E.D. Cal. Oct. 12, 2010)....................................................3

*Anderson v. Cryovac, Inc.*,
862 F.2d 910 (1st Cir. 1988)..............................................................6,10

*Bunch v. United States*,
680 F.2d 1271 (9th Cir. 1982) ...............................................................10

*Burling v. Windsor Equity Group, Inc.*,
2012 WL 5330916 (C.D. Cal. Oct. 18, 2012) .................................................8

*Canady v. Erbe Elektromedizin GmbH*,
99 F. Supp. 2d 37 (D.D.C. 2000)...........................................................7

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
286 F. Supp. 2d 309 (S.D.N.Y. 2003) .....................................................10

*Dukes v. City of Minneapolis*,
339 F. Appx. 665 (8th Cir. 2009) ...........................................................9

*G-K Properties v. Redevelopment Agency of City of San Jose*,
577 F.2d 645 (9th Cir. 1978) ...............................................................4

*Guifu Li v. A Perfect Day Franchise, Inc.*,
281 F.R.D. 373 (N.D. Cal. 2012)..........................................................11

*In re M/V Peacock on Complaint of Edwards*,
809 F.2d 1403 (9th Cir. 1987) ..............................................................2

*In re Toyota Motor Corp. Sec. Litig.*,
2012 WL 3791716 (C.D. Cal. Mar. 12, 2012).............................................4-5

*In re VecTour, Inc.*,
2005 WL 240948 (Bankr. D. Del. Jan. 20, 2005)...........................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
1993 WL 135953 (N.D. Cal. Apr. 15, 1993)......................................3, 6, 10-11

*Jones v. Aero/Chem Corp.*,
921 F.2d 875 (9th Cir. 1990) .........................................................3, 4, 10

*Markham v. Nat'l States Ins. Co.*,
2004 WL 3019308 (W.D. Okla. Jan. 8, 2004).............................................8

*Paulaner-Salvator-Thomasbrau AG v. Wolfgang Morandell Distributing, Inc.*,
1991 WL 65448 (9th Cir. 1991) ...........................................................10

*Ross v. Corporation of Mercer University*,
2007 WL 1521605 (M.D. Ga. May 23, 2007)...............................................9

*Schultz v. Butcher*,
  24 F.3d 626 (4th Cir.1994) ..................................................................... 6

*Snowden v. Litton Loan Servicing Inc.*,
  356 B.R. 429 (N.D. Ill. 2006) ................................................................ 8

*Tunnell v. Ford Motor Co.*,
  2006 WL 1788233 (W.D. Va. June 26, 2006) ...................................... 7

*Zurich N. Am. v. Matrix Serv., Inc.*,
  426 F.3d 1281 (10th Cir. 2005) ............................................................ 9

## **Rules**

C.D. Cal. Local Rule 7-18 ........................................................................ 3

Fed. R. Civ. P. Rule 54(b) ....................................................................... 5

Fed. R. Civ. P. Rule 60(b)(3) ..........................................................*passim*

# **INTRODUCTION**

DC's opposition (Dkt. 522; "Opp.") does not contest the factual underpinnings of Defendants' motion to vacate (Dkt. 514; "Mot."). Defendants' motion is based on DC's deliberate withholding of key documents during discovery, which prevented Defendants from fully and fairly developing and presenting their case prior to the Court's October 17, 2012 summary judgment order (Dkt. 507; "Order").

DC's opposition essentially **admits** its ongoing misconduct. DC *admits* that it did not search key record custodians in response to Defendants' discovery requests for documents related to the 1992 Agreement and to DC's Superman chain-of-title. Opp. 4. DC *admits* that it produced two letters between the parties to the 1992 Agreement (Dkt. 514-1, Declaration of Pablo Arredondo ("AD"), Ex. A; the "Peavy-Levitz Letters"), which directly relate to the 1992 Agreement at the heart of DC's First Claim, only when it sought to use such documents "[i]n preparing its summary judgment papers." Opp. 4. DC *admits* that it only bothered to search key custodians when it wanted to find material to purportedly rebut Defendants' arguments. Opp. 4. DC *admits* that when it finally searched these obvious custodians for its own purposes, it readily found responsive documents. Opp. 4-5. DC *admits* that it relied on one of these newly-found documents (AD, Ex. I; the "Bonesteel Document") without first producing that relevant document to Defendants. Opp. 5. DC *admits* that it found an additional responsive document (AD, Ex. K; the "Josephson Document") in the same search that uncovered the Bonesteel Document, which DC did not mention, much less produce, until it wanted to use the document in an improper sur-reply. Opp. 5.

DC's actions and problematic explanations reveal a troubling pattern of misconduct, resulting in unfairness. Neither Defendants nor the Court have any way of knowing just how many responsive documents relating to the 1992 Agreement and DC's chain-of-title to Joseph Shuster's Superman copyrights have been withheld, but there are strong indications that there are many. When DC chose to use

1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

the Peavy-Levitz Letters or the Bonesteel/Josephson Documents in its own briefs, it located them almost immediately.  It is not credible that the Bonesteel/Josephson Documents are the only documents since 1992 that detail DC's chain-of-title to Superman in light of the numerous instances (*e.g.*, financing, insurance, third party licenses) when such information would be required.[1]

Unable to dispute its own gamesmanship, DC spends the bulk of its brief opposing a straw man that Defendants have moved for reconsideration.  Defendants plainly have not:  their motion to vacate is based squarely on DC's discovery misconduct, pursuant to Rule 60(b)(3)'s well-settled standards, not on new merits arguments, as in a motion for reconsideration.

The remainder of DC's opposition makes further, equally irrelevant arguments:  that there was some excuse for DC's inexcusable discovery misconduct; that Defendants were not diligent because they accepted DC's representations that all responsive documents had been produced; and that the responsive documents DC secreted were not outcome-determinative.  None of this, however, is relevant to a motion to vacate.  Ultimately, DC's Opposition not only fails to rebut Defendants' motion, it barely responds to it.  DC's discovery misconduct regarding the 1992 Agreement is plain and, in fairness, this Court should vacate its Order.

## ARGUMENT

## I.    THE MOTION IS NOT IMPROPER OR FOR RECONSIDERATION

Defendants' motion was properly brought as a motion to vacate, which is a motion "aimed at judgments which were unfairly obtained."  *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir. 1987).  Such a motion is concerned not with the *merits* of a judgment, but with the *process* leading up to that judgment.  *Id*.  DC attacks the straw man that this motion is for reconsideration (Opp. 6-9), but a motion for reconsideration is based on a "material difference in fact or

---

[1] For instance, DC only provided chain-of-title documents for two countries, and only for the film *Superman Returns* – but this film was released in dozens of other countries and DC/Warner exploited Superman in numerous different media after 1992.

law," "new material facts or a change of law," or "a failure to consider material facts" (C.D. Cal. Local Rule 7-18) – that is to say, the *merits* of a decision.

While Defendants respectfully disagree with the Order's legal and factual findings, Defendants' motion does not ask the Court to reconsider them. Rather, the motion is directed solely at DC's discovery misconduct, namely, its withholding of key evidence concerning the 1992 Agreement, which fundamentally undermined the fairness of the dispositive summary judgment process.

Furthermore, DC's contention that the Court implicitly approved of DC's discovery misconduct (Opp. 1, 5-6) is incorrect, because the Order did not mention this one way or the other, and DC only admitted to its tactics in a sur-reply (Dkt. 498-2) *after* the Court had taken both cross-motions under submission. Dkt. 497.

Lastly, DC's argument that Defendants cannot concurrently file this motion and a Rule 54(b) motion (Dkt. 513) is also erroneous. Opp. 6. If the Court grants the Rule 54(b) motion, this motion would be moot. Seeking relief in the alternative, as Defendants have done with these two motions, and as DC has done throughout this case (Dkt. 49, ¶¶152, 166), is routine.

## II.   DC'S MISCONDUCT WARRANTS VACATING THE ORDER

### A.   <u>Rule 60(b)(3)'s Standards Apply To A Motion To Vacate</u>

Despite DC's dismissive statements (Opp. 9), the Ninth Circuit has expressly held that, where a motion to vacate an interlocutory order is based on a party's discovery misconduct, "the test to be applied … ***must*** be borrowed from cases interpreting Rule 60(b)(3)." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (emphasis added). *See also Alexander v. California Dept. of Corr.*, 2010 WL 4006362, at *1 (E.D. Cal. Oct. 12, 2010) ("[C]ourts look to the standards under … Rule 60(b)" in vacating orders due to discovery misconduct.); *Intel Corp. v. Advanced Micro Devices, Inc.*, 1993 WL 135953, at *3 (N.D. Cal. Apr. 15, 1993) (applying Rule 60(b)(3) test in granting motion to vacate non-final judgment). This comports with common sense. Rule 54(b) provides that an interlocutory order "that

adjudicates fewer than all the claims … may be revised at any time before the entry of a judgment," but does not offer standards for when such orders should be revised. Rule 60(b) is directed at final judgments issued after discovery misconduct, but the logic of that rule is equally applicable to dispositive interlocutory orders issued after discovery misconduct, as the Ninth Circuit recognized in *Jones*.

### B.  DC's Excuses Are Legally Insufficient and Facially Absurd

None of DC's excuses for failing to produce key documents concerning the 1992 Agreement and its chain-of-title to Superman hold up.

DC's first excuse is that it had no reason to look for documents like the Bonesteel/Josephson Documents until Defendants stated at oral argument that DC had not identified any instance where it relied on the 1992 Agreement for its Superman chain-of-title.  This is false.  At the outset, DC alleged in its complaint that the 1992 Agreement was the purported basis of its Superman chain-of-title (Dkt. 1 ¶¶99-104), and, long before summary judgment motions, Defendants served multiple document requests targeted at this precise issue.  *See* Dkt. 498-2 at 26-27, 31-34, 50-51, 53-54.  DC should have searched for and produced responsive documents at that time, months ago.  Defendants also repeatedly made the above argument in briefing well before summary judgment and oral argument.  *See, e.g.*, Dkt. 31 at 17 n.10; Dkt. 146-1 at 18 n.13; Dkt. 338 at 2; Dkt. 462 at 15-16; Dkt. 478 at 11.  *See G-K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978) (noting that "[f]rom the earliest stages of this action the parties … perceived one of the key factual issues" and plaintiff's "last minute tender of relevant documents [on this key issue] could not cure the problem").

DC's second excuse is that Defendants should have "proposed new searches" for DC to conduct.  Opp. 9.  But as DC well knows, Fed. R. Civ. P. 34 imposes an "***affirmative obligation***" on DC to "conduct a *reasonable* search of documents in the possession of [its] employees, agents, subsidiaries, and others who are subject to their control."  *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *12 (C.D.

Cal. Mar. 12, 2012) (emph. added); *see Meeks v. Parsons*, 2009 WL 3003718, at *4 (E.D. Cal. Sept. 18, 2009) (a party has "an affirmative duty to seek that information reasonably available … from employees, agents, or others subject to its control").

Months before producing the Bonesteel/Josephson Documents, DC's counsel represented that an "exhaustive" search had occurred and all responsive documents had been produced: "I can confirm that we have conducted a good-faith, comprehensive search for responsive documents pursuant to Rule 34 and have found no other responsive documents requested by defendants in this case." AD Ex. F.

Nonetheless, the Bonesteel/Josephson Documents that DC withheld contain all of the obvious search terms, including "Superman," "Frank Shuster," "Jean Shuster Peavy," "chain-of-title," "August 1, 1992," "title and interest," "heirs of Joseph Shuster," and "heirs of Jerome Siegel" (AD, Ex. I at 16, Ex. K at 27-28), that any reasonable search by DC would have uncovered. Notably, when DC decided to rely on such documents for its own briefs, it readily located them, as it did with the Peavy-Levitz Letters. As DC is forced to concede, the problem stems not from a failure to use appropriate search terms, but from its admitted failure to conduct any search whatsoever of key record custodians at Warner Bros.' Legal and Business Affairs departments. No "suggestions" from Defendants could have cured DC's willful lack of diligence and secretion of responsive evidence.

DC's excuse as to the Peavy-Levitz Letters is equally unpersuasive. DC admits that, when it wanted to locate the documents in June-July 2012, its counsel "asked a member of our firm to run electronic searches for certain documents," and uncovered the letters. AD, Ex. F. DC's explanation that the letters were "located in a database from prior counsel to which we only recently obtained access in electronic form" (*id.*) lacks credibility: DC terminated its prior counsel, and retained its current counsel, in **February 2010**, nearly 2½ years prior, and DC's current counsel litigated numerous hearings, dozens of motions and multiple appeals in this and the *Siegel* case in the interim. It is hardly credible that DC's current counsel only "recently

5

obtained access" to the electronic records of DC's former counsel; if this excuse was credited, DC's failure to forward those records in 2½ years was grossly negligent.

Ultimately, DC's cavalier excuses neither reflect "good faith" (Opp. 9) nor justify its misconduct, and, in any event, professed "good faith" is irrelevant to a Rule 60(b)(3) analysis. "[D]iscovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial" are "misconduct" under Rule 60(b)(3). *See Intel Corp.*, 1993 WL 135953, at *3-4 (granting motion to vacate under Rule 60(b)(3) where plaintiff withheld four responsive documents through "avoidable, accidental omission which is the equivalent of 'misconduct'"); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) ("[I]t takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial."); *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (A "failure, either inadvertent or unintentional, to produce [] obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)."). The Peavy-Levitz Letters and the Josephson /Bonesteel Documents were "pertinent requested discovery material" (*id.*), and DC's admitted failure to timely produce them would run afoul of Rule 60(b)(3) even if it had acted in "good faith," which appears highly unlikely.

DC's efforts to excuse its misconduct only demonstrate its wrongdoing. DC now admits for the first time that the same search that uncovered the Bonesteel Document "also revealed" (Opp. 5) the Josephson Document, but DC produced neither document when they were supposedly discovered. Rather, DC first filed Mr. Bonesteel's declaration, which mentioned, but conspicuously failed to attach, the Bonesteel Document. Defendants then had to demand production of the Bonesteel Document, noting that it was responsive to their discovery requests. *See* Opp. 5; AD, Ex. G. DC then waited until just two business days before Defendants' reply was due to produce *only* the Bonesteel Document, even though DC also had the equally-

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

responsive Josephson Document.  AD, Ex. H.  Then, after Defendants pointed out in their Reply that DC had produced only a single post-1992 chain-of-title document (*i.e.*, the Bonesteel Document), which mentioned the 1992 Agreement in passing, DC suddenly produced the Josephson Document, just one hour before DC included it in its improper sur-reply.  *Id.* Exs. J, K; Dkt. 498-2; Opp 5.

DC essentially concedes discovery misconduct:  it did not make reasonable document searches in response to Defendants' legitimate discovery requests, but only made such searches later, solely for *DC's* arguments, and belatedly produced the documents it found for tactical advantage.

## C.    DC's Discovery Misconduct Prevented Defendants From Fully And Fairly Presenting Their Case Under Rule 60(b)(3)

Knowing that it is guilty of misconduct, DC argues "no harm, no foul" – that despite its willful failure to timely produce responsive documents, Defendants were not prevented from fully presenting their case.  Each of DC's arguments fails.

### 1.    The Moving Party Need Not Prove Diligence, And Defendants Were Diligent In Any Event

DC attempts to blame the victims of its misconduct for lack of diligence.  The courts have clearly held, however, that "[Rule 60(b)] subsection (3) does not require the movant to show that he exercised due diligence in seeking the evidence." *Canady v. Erbe Elektromedizin GmbH*, 99 F. Supp. 2d 37, 49 (D.D.C. 2000); *see also Tunnell v. Ford Motor Co.*, 2006 WL 1788233, at *4 (W.D. Va. June 26, 2006) ("[T]here is no due diligence requirement associated with Rule 60(b)(3).").  DC's argument that Defendants insufficiently pursued discovery fails as a matter of law.

Moreover, Defendants diligently pursued this discovery.[2]  Over six months *before* summary judgment motions were filed, Defendants served targeted requests for documents relating to the 1992 Agreement and communications with third parties

---

[2] The correspondence DC misleadingly cites regarding Defendants' supposed lack of diligence (Opp. at 3 n.4) does not even concern Defendants' Requests for Production at all, much less the requests at issue in this motion.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

regarding DC/Warner's Superman chain-of-title.  Dkt 498-2 at 26-27, 31-34, 50-51,
53-54.  In response, DC confirmed that it would produce all responsive, non-
privileged, documents.  *Id.*  In March 2012, Defendants sought and DC provided
further assurances that it had turned over *all* responsive documents.  AD ¶2.

On July 6, 2012, DC belatedly produced the Peavy-Levitz Letters.  AD Ex. B.
Defendants demanded that DC immediately provide details about its search
protocols.  DC responded with another unequivocal assurance that it had conducted
an "exhaustive" search and was certain that no further responsive documents
remained.  AD, Ex. F.  Based on DC's explicit representations and assurances,
Defendants did not move to compel.

DC cannot now argue that Defendants were not "diligent" because they
accepted DC's oral and written assurances.  Opp. 4.  The Courts consistently reject
this self-serving argument:  "[B]elieving the truthfulness of [opposing counsel] does
*not* reflect the absence of due diligence."  *Snowden v. Litton Loan Servicing Inc.*, 356
B.R. 429, 432 (N.D. Ill. 2006) (reversing denial of Rule 60(b) motion); *see In re
VecTour, Inc.*, 2005 WL 240948, at * 2 (Bankr. D. Del. Jan. 20, 2005) ("[T]his Court
will not fault [party] for not filing a motion to compel here, given the innumerable
assurances and reassurances of [opposing] counsel…."); *Markham v. Nat'l States
Ins. Co.*, 2004 WL 3019308, at *10 (W.D. Okla. Jan. 8, 2004) (agreeing with party's
assertion that "due to their reliance upon defendant's assurances of compliance, they
were lulled into forgoing the filing of a motion to compel").

DC also argues that Defendants should have moved under Fed. R. Civ. P.
56(d) to "halt the summary judgment process so as to obtain any additional
discovery."  The purpose of Rule 56(d) is to provide a party with additional time to
take discovery to oppose summary judgment.  *Burling v. Windsor Equity Group,
Inc.*, 2012 WL 5330916, at *6 (C.D. Cal. Oct. 18, 2012).  But weeks before DC
produced the Bonesteel/Josephson Documents, briefing had already closed on DC's
summary judgment motion, the Court had issued a tentative order granting DC's

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

motion, and oral argument had been heard.  Dkt. 481, 486.  DC only produced the
Bonesteel Document in connection with Defendants' cross-motion, and then only
two working days before Defendants' *reply* was due.  AD Ex. H.  DC only produced
the Josephson Document ***after*** this briefing had closed and the cross-motion was
taken under submission (Dkt. 497, AD Exs. J, K), and DC gave its contradictory
explanation as to its failure to produce this document still later.  Dkt. 498-2.  DC's
gamesmanship left Defendants with little opportunity to oppose summary judgment
on the basis of Fed. R. Civ. P. 56(d).

Nor does DC's case law support its positions.  *Zurich N. Am. v. Matrix Serv.,
Inc.*, 426 F.3d 1281 (10th Cir. 2005), cited by DC for the unremarkable proposition
that discovery violations are generally remedied under Rule 37, specifically explains
that a "failure to disclose requested information during discovery" in response to a
"specific discovery request" constitutes "misconduct" under Rule 60(b)(3).  *Id.* at
1292.  *Zurich* found lack of diligence because the moving party failed to request
documents during discovery even though it knew of their existence.  *Id.* at 1292-93.
Likewise, *Dukes v. City of Minneapolis*, 339 F. Appx. 665, 667 (8th Cir. 2009)
affirmed the denial of a Rule 60(b)(3) motion where a party referenced unproduced
documents on summary judgment, while the opposing party failed to object and did
not seek the documents.  In *Ross v. Corporation of Mercer University*, 2007 WL
1521605, at *3-4 (M.D. Ga. May 23, 2007), a district court denied a Rule 60(b)(3)
motion where the moving party cited to no evidence in the record and where the non-
moving party was under no obligation to volunteer the discovery at issue.

Here, unlike in DC's cases, Defendants served multiple production requests
aimed at the documents at issue; DC had an affirmative duty to produce all non-
privileged documents responsive to that discovery; DC falsely confirmed and re-
confirmed that it had, in fact, produced all responsive documents, and Defendants
had no way of knowing that the documents that DC withheld even existed.
///

## 2.      The Withheld Evidence Need Not Be Dispositive

DC argues that because the Court's Order did not rely on the Bonesteel or Josephson Documents, Defendants were not prevented from fairly presenting their case.  This misses the point.  According to binding Ninth Circuit precedent, when a motion to vacate "involves the withholding of information called for by discovery, the moving party need not establish that the result in the case would be altered" by such information.  *Paulaner-Salvator-Thomasbrau AG v. Wolfgang Morandell Distributing, Inc.*, 1991 WL 65448, at *3 (9th Cir. 1991) (internal quotations omitted); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990) (same); *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982) (same).

Rather, Defendants need only establish that DC's misconduct "closed off a potentially fruitful avenue" of discovery.  *Anderson*, 862 F.2d at 925.  *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 319 (S.D.N.Y. 2003) (granting motion to vacate even though the withheld evidence "would not have changed [the Court's] conclusion [on summary judgment]" because "[party] need not show that the outcome of the lawsuit would have been different if the missing evidence had been produced earlier.  They need only show that the withheld evidence would have been a valuable tool for obtaining meaningful discovery into some theory of liability."); *Intel Corp.*, 1993 WL 135953, at *3-4 ("[W]hen the case involves the withholding of information called for by discovery, the adverse party need not establish that the result in the case would be altered.") (citing *Jones*).

Here, DC failed to search key custodians, withheld clearly responsive documents, and produced documents only if it wanted to use them to bolster its own arguments.  This closed off potentially fruitful avenues of discovery, prevented Defendants from reviewing the withheld documents prior to summary judgment, and blocked further discovery and depositions based on those documents.

For instance, with access to the Bonesteel/Josephson Documents, Defendants could have deposed Bonesteel and Josephson as to why DC/Warner relied on Joseph

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

Shuster's pre-1978 Superman grants in 2006 and 2007, respectively, if all such pre-1978 grants had purportedly been revoked by the 1992 Agreement. If DC had actually complied with its discovery obligations and produced **all** post-1992 documents describing its chain-of-title to the original Superman character, that may well have uncovered numerous other documents where DC/Warner explicitly relied on Shuster's purportedly "revoked" pre-1978 Superman grants, rather than the 1992 Agreement. In turn, Defendants could have focused on different issues and arguments on summary judgment – *e.g.*, DC's continued express reliance on pre-1978 grants it claims were cancelled by the 1992 Agreement and/or an estoppel argument – with different documentary evidence or testimony. Regardless of the arguments or ultimate result, Defendants were entitled to take this discovery and to advance legal arguments based thereon, but were unfairly foreclosed from doing so by DC's misconduct. This is a textbook example of the type of unfairness Rule 60(b)(3) was designed to remedy, and here its standards mandate that the Court's Order be vacated. *Intel Corp.*, 1993 WL 135953, at *3-4.

While the documents DC belatedly produced are more than sufficient to demonstrate misconduct, Defendants and the Court remain in the dark as to what other relevant documents DC continues to withhold. Common sense suggests that there are many. *See Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 391 (N.D. Cal. 2012) (testimony revealing documents not produced "serves as significant evidence that [party] likely withheld many relevant and responsive documents … in the course of discovery"). It is thus impossible to pinpoint the full extent of DC's discovery misconduct, and likewise impossible for the Court to ascertain its full impact on this case, without swift remedial action.

### D. DC's Opposition Shows The Need For An Evidentiary Hearing

DC's opposition cites **no** evidence as to when, how, and why the Bonesteel/Josephson Documents were supposedly suddenly discovered by DC only after briefing and oral argument on DC's summary judgment motion had been completed,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

and after Defendants' subsequent summary judgment cross-motion had been filed. Nor does DC explain why the Bonesteel Document was withheld by DC until shortly before Defendants' Reply was due, or why the Josephson Document was withheld by DC until after briefing was completed and taken under submission. It does not include a sworn declaration or any other sort of admissible evidence as to DC's troubling conduct. The only thing DC attaches is a declaration from a first-year associate that does not address the Bonesteel/Josephson Documents at all; rather, it states merely that "[t]he circumstances surrounding the production of [the Peavy-Levitz Letters] are explained" in a prior e-mail. Dkt. 522-2 ¶4. That e-mail is an unsworn statement by DC's counsel that it supposedly only "recently" obtained access to the electronic files of DC's prior counsel (after 2 ½ years). AD Ex. F.

DC's unwillingness to provide a sworn declaration is telling, and stands in stark contrast to Defendants' opposition to DC's trumped-up and jurisdictionally improper sanctions motion, which included a detailed declaration from the Siegels' lead counsel. Even more notably, DC's opposition does not address whether other responsive documents are still being withheld, even though Defendants' motion raised the issue. Given DC's unwillingness to substantively respond to, or to account for, its evident misconduct, the Court should either grant this motion outright or reserve its decision pending a focused evidentiary hearing as to DC's misconduct.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion to vacate the October 17, 2012 Order.

Dated:  December 3, 2012          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff

Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, *et al.*