DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>        Plaintiff,<br><br>        v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER**<br><br>DECLARATIONS OF MATTHEW T. KLINE AND WAYNE M. SMITH, DECLARATION OF CASSANDRA SETO PURSUANT TO L.R. 37-2.4, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**:       Hon. Otis D. Wright II<br>**Magistrate**:   Hon. Ralph Zarefsky<br><br>**Hearing Date**:   Jan. 7, 2013<br>**Hearing Time**:   10:00 a.m.<br>**Courtroom**:   540<br>**Discovery Cutoff**:   None Set<br>**Pretrial Conference**:   None Set<br>**Trial**:       None Set |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on January 7, 2013, at 10:00 a.m., or as soon

3    thereafter as the matter may be heard by the above-entitled court, located at 255

4    East Temple Street, Los Angeles, California in Courtroom 540, plaintiff DC

5    Comics will and hereby does move the Court for an order providing that: (1) "DC"

6    (as defined in the Court's December 7, 2010, order, DN 133) and defendant Laura

7    Siegel Larson shall not be required to list on their respective privilege logs any

8    "Privileged" (as defined in the Court's December 7, 2010, order, DN 133)

9    documents created on or after October 8, 2004, when the first complaint was filed

10   in the *Siegel* cases, Case Nos. CV-04-8400 ODW, CV-04-8776 ODW; and (2) DC

11   and defendants shall not be required to list on their respective privilege logs any

12   Privileged documents created on or after May 14, 2010, when DC filed its

13   complaint in this *Pacific Pictures* case, Case No. CV-10-3633 ODW.  In the

14   alternative, DC requests, pursuant to Federal Rule of Civil Procedure 26(b)(5), that

15   the Court allow DC to submit a categorical log in the form of an affidavit that "(a)

16   the withheld documents were (1) either prepared to assist in anticipated or pending

17   litigation, or (2) contain information reflecting communications between (i)

18   counsels or counsels' representatives, and (ii) plaintiff[] or plaintiff['s]

19   representatives, for the purposes of facilitating the rendition of legal services to

20   plaintiff[]; and (b) intended to be confidential communications."  *In re Imperial*

21   *Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997).

22        This motion is made pursuant to Rules 26, 34, and 37 of the Federal Rules

23   of Civil Procedure and Rule 37-2 of the Local Rules of this Court on the grounds

24   that logging internal privileged communications created in the course of litigation is

25   extraordinarily burdensome, provides little to no value, and is an unnecessary and

26   wasteful exercise.  Pursuant to Local Rule 37-1, the parties have attempted

27   unsuccessfully to resolve their disputes and therefore respectfully seek the

28   assistance of the Court.

1        This motion is based on this Notice of Motion and Motion; the

2    accompanying Memorandum of Points and Authorities; the accompanying

3    Declaration of Matthew T. Kline and exhibits in support thereof; the accompanying

4    Declaration of Wayne M. Smith and exhibit in support thereof; the accompanying

5    Declaration of Cassandra Seto pursuant to Loral Rule 37-2.4 and exhibits in support

6    thereof; any supplemental memoranda that may be filed pursuant to Local Rule 37;

7    all exhibits, files, and records on file in this action; matters of which judicial notice

8    may be taken; and such additional submissions and argument as may be presented

9    at or before the hearing on this motion.

10    Dated:    December 10, 2012    Respectfully Submitted,

11

12                By: /s/ Daniel M. Petrocelli

13                  Daniel M. Petrocelli
              Attorneys for Plaintiff DC Comics

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    DC'S INTRODUCTORY STATEMENT ........................................................1

II.   DC'S STATEMENT OF ISSUES IN DISPUTE...........................................2

    A.    Relevant Background......................................................................2

    B.    The Court Should Issue DC's Proposed Protective Order....................9

    C.    In The Alternative, The Court Should Allow Categorical Logging ............................................................................................11

III.  CONCLUSION ...........................................................................................13

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5

*Eli Lilly & Co. v. Valeant Pharm. Int'l*,
  2011 WL 691982 (S.D. Ind. Feb. 15, 2011).......................................................11

6

7

*In re Imperial Corp. of Am.*,
  174 F.R.D. 475 (S.D. Cal. 1997) .........................................................................12

8

9

*In re Motor Fuel Temperature Sales Practices Litig.*,
  2009 WL 959491 (D. Kan. Apr. 3, 2009) ...........................................................12

10

11

*Safety Mgmt. Sys. v. Safety Software Ltd.*,
  2011 WL 4898085 (S.D.N.Y. Oct. 5, 2011) .........................................................2

12

*U.S. v. Magnesium Corp. of Am.*,
  2006 WL 1699608 (D. Utah June 14, 2006) .......................................................12

13

14

**RULES**

15

Fed. R. Civ. P. 26(b)(2)(C)(iii) .............................................................10, 11, 12

16

Fed. R. Civ. P. 26(c) ............................................................................................2, 10

17

**OTHER AUTHORITIES**

18

W. Schwarzer et. al., Federal Civil Procedure Before Trial
  §11:1920.1 (Rutter 2012) .......................................................................................2

19

20

21

22

23

24

25

26

27

28

1  **I.  DC'S INTRODUCTORY STATEMENT**

2      DC is forced to bring this motion based on defendants' refusal to enter into a

3  routine stipulation excusing DC from logging tens of thousands of unquestionably

4  privileged litigation documents created after the *Siegel* cases were filed in 2004.

5  The parties agreed to the exact same stipulation in *Siegel*.  And at the outset of this

6  case in 2010, the parties entered into a "placeholder" stipulation providing that

7  defendants would not be required to log such litigation documents in responding to

8  DC's then-pending discovery requests, and agreed to enter into an "overall"

9  stipulation extending the same courtesy to DC after defendants served discovery

10  requests.  Defendants made clear that while a "full-fledged logging agreement" was

11  not necessary "at the moment because Defendants have not yet even served DC

12  with any requests," the parties would finalize a complete, bilateral agreement later.

13      Defendants have now reneged on their promise.  Consistent with the parties'

14  2010 discussions, after defendants finally served document requests in late 2011,

15  DC asked for a "full-fledged," bilateral logging agreement that would not require

16  DC to log the voluminous litigation documents in its counsel's files.  After

17  dragging out the process for months by declining to meet and confer, defendants

18  rejected DC's proposed stipulation on the specious ground that DC should have to

19  log communications revealing when it received the Toberoff Timeline.  Though this

20  timing issue is irrelevant to *any* claim or material issue in this case, to address

21  defendants' concern, DC reaffirmed the date it received the Timeline.  Defendants

22  say this is not enough, and DC must instead waste hundreds of thousands of dollars

23  preparing a privilege log that will lead to *no* relevant, discoverable evidence.

24      Defendants' true motive is clear:  to inflict unnecessary expense on DC and

25  to attempt to distract from defendants' own discovery misconduct, which is the

26  subject of a terminating sanctions motion now pending before Judge Wright.  DN

27  500, 527.  Defendants' tactical objectives do not validate their position or excuse

28  their breaching their agreement with DC.  By rule and by agreement, DC is entitled

DC COMICS' MOTION
FOR PROTECTIVE ORDER

to a protective order under Rule 26(c) and to the entry of the reasonable logging stipulation that the parties assured each other would issue.

## II.    DC'S STATEMENT OF ISSUES IN DISPUTE

### A.    Relevant Background

1. Laura Siegel Larson commenced her two lawsuits against DC in October 2004, seeking declarations that her Superman and Superboy termination notices were valid and effective.  Case No. CV-04-8400, DN 1 ¶¶ 52-55; Case No. CV-04-8776, DN 1 ¶¶ 61-64.  After the two *Siegel* cases were consolidated for purposes of discovery, the parties agreed that privileged documents created after the commencement of the *Siegel* cases did not need to be listed on the parties' respective privilege logs.  Decl. of Wayne M. Smith ("Smith Decl."), Ex. A.  Such agreements are encouraged and routine.  *E.g.*, W. SCHWARZER ET. AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL §11:1920.1 (Rutter 2012) (recommending that, "*as to certain categories of documents that are obviously privileged (e.g., attorney-client correspondence, or internal memoranda prepared by litigation counsel after the case was filed)*, ask opposing counsel to stipulate that such documents may be withheld without being listed on a privilege log"); *Safety Mgmt. Sys. v. Safety Software Ltd.*, 2011 WL 4898085, *5 (S.D.N.Y. Oct. 5, 2011) ("[A]s a matter of convention, litigation counsel of record often stipulate informally that neither party need prepare a privilege log with respect to communications with litigation counsel that occurred after the lawsuit commenced.").

2. DC filed its complaint in this *Pacific Pictures* case in May 2010, DN 1, and served its first discovery requests on defendants that August, Decl. of Matthew T. Kline ("Kline Decl.") Ex.1; DN 161-14-161-17, 162.  For months, defendants refused to produce *any* documents or privilege logs.  DN 125.  Later that year, the parties began negotiating a stipulation requiring defendants to produce documents by a date certain and setting out, among other things, the parties' obligations to log certain, but not all, privileged documents.  Kline Decl. ¶ 2; Exs. 2-3.

Counsel for DC made clear the stipulation was "a *placeholder* pending later agreement on an overall privilege log stipulation." *Id.* Ex. 4 (emphasis added). In this "placeholder" stipulation, the parties agreed that no party should have to log privileged documents created after this *Pacific Pictures* case was commenced on May 14, 2010. *Id.* at 24. As to privileged documents created before May 14, 2010, the parties agreed that it would be unduly burdensome for defendants to log privileged communications between or among their various attorneys. *Id.*

DC pressed for a reciprocal provision excusing DC from having to log the hundreds of thousands of privileged communications between its in-house and outside counsel. *Id.* at 20 (Mr. Petrocelli: "I have revised the 'logging' exclusion to include … all privileged documents exchanged between outside counsel and in-house counsel on our side because they fall in the same limited category as those you seek to exclude -- documents solely by and between lawyers working on the case."). Marc Toberoff, counsel for defendants, said that was an issue for another day, as it "gets into sticky issues which should best be dealt with in the negotiation of a *full logging agreement*," and "[i]f we start getting into the logging agreement issues here, it will bog down and prevent the timely completion of this stipulation." *Id.* Ex. 5 (emphasis added); *see id.* Ex. 6 (Mr. Toberoff promising to "address further aspects in negotiating a logging agreement").

Toberoff confirmed that the parties' "placeholder" stipulation was only relevant to DC's then-pending discovery requests, and "a full-fledged logging agreement" would be negotiated after defendants served DC with discovery:

> I also took out the reference to DC 'affiliates' as it is too open ended, and if it means Warner Bros., we don't need it here if we *do not try to expand this stip relating to DC's Requests into a full-fledged logging agreement. We also need not do this at the moment because Defendants have not yet even served DC with any requests for production.* *Id.* Ex. 5 at 39 (emphases added).

DC COMICS' MOTION
FOR PROTECTIVE ORDER

Given the exigency in finalizing a stipulation—caused by defendants' complete refusal to produce any documents until it was signed and the need to take depositions, DN 125 at 2—DC agreed to the "placeholder," with the understanding that the parties would negotiate a final, bilateral logging agreement after defendants served discovery requests on DC. This Court so-ordered the parties' stipulation on December 7, 2010 (the "December 2010 Order"). DN 133; Kline Decl. Ex. 4; *see id.* ¶¶ 3-4, Exs. 5-6.

Reflecting its interim status and the fact that *only* DC had served any discovery to date, the December 2010 Order imposed non-reciprocal obligations on the parties. With respect to the logging of privileged communications created prior to May 14, 2010, it provided:

> (a) *Defendants and their counsel* need not log internal communications solely between or among Defendants' counsel or between or among Defendants' counsel and anyone at the law firm of Kendall, Brill and Klieger, either in this case or the *Siegel* cases;
>
> (b) *DC and its <u>outside</u> counsel* need not log internal communications solely between or among DC's outside counsel, in either this case or the *Siegel* cases; however, and for the avoidance of doubt,
>
> (c) if a non-lawyer or <u>*in-house counsel*</u> is an author or recipient of any of the communications in subsections (a) and/or (b), such *communications must be logged*. DN 133 ¶ 5 (emphases added).

Because, as the parties agreed, the December 2010 Order was "a placeholder pending later agreement on an overall privilege log stipulation," it also provided that the agreement was "without waiver to any party's right in the future to seek a protective order." Kline Decl. Ex. 4; DN 133 ¶ 5.

3. In April 2011, the Court noted the parties' plan to finalize a global privilege-logging stipulation. DN 209 at 13 ("The Court will not foreclose the parties from reaching agreement themselves, as they appeared near to doing, on a [privilege-log] protocol that both sides will follow."). Thereafter, the parties continued their discussions of finalizing the privilege logging stipulation,

DC COMICS' MOTION
FOR PROTECTIVE ORDER

exchanging letters and meeting and conferring by phone. *E.g.*, Kline Decl ¶ 5; Exs. 7 ("Magistrate Zarefsky ... invited the parties to discuss a mutually acceptable privilege-log protocol, and DC remains ready and willing to do so."), 8 ("[A]s mentioned in Dan Petrocelli's April 14 letter and based upon Magistrate Zarefsky's invitation to the parties, we would like to discuss a mutually acceptable privilege-log protocol."), 10 at 61 ("[W]e have discussed the issue of a privilege-log protocol and are working on a proposed stipulation; we will send you a draft when it is available."); *see id.* Ex. 9.

As these discussions occurred, many other events in the case intervened. *Id.* ¶ 6. The issue of finalizing a broader stipulation lay dormant until December 2011, when defendants finally served their first document requests, after losing their SLAPP motion and abandoning their Rule 12 motions. *Id.*; DN 337, 343.

In its responses and objections to this discovery, DC told defendants that, "[a]s to documents created prior to May 14, 2010, DC will not log work product or privileged communications solely between or among DC's counsel, including outside and in-house counsel." Kline Decl. Ex. 11 at 64. DC explained that "[l]ogging such documents would constitute unreasonable and undue burden," and invited defendants to meet and confer on this open issue. *Id.*

Defendants complained about DC's privilege logs, and DC invited them to meet and confer on the issue. *E.g.*, *id.* ¶ 8, Exs. 13 at 93 ("If defendants want to finalize the privilege logging stipulation that we completed only in part in 2010, we are happy to do so."); 14 at 103 (recounting times defendants ignored DC's offers to meet and confer); 17 at 254-55 ("Since [February 2012], contrary to defendants' claim that DC 'did absolutely nothing' to finalize the stipulation, DC has repeatedly invited the defendants to meet and confer to complete the privilege logging stipulation."). Rather than conferring, defendants asserted that DC waived privilege over these communications by failing to log them. *Id.* Ex. 14 at 103.

Again, DC offered to meet and confer with defendants, and to address the
one—*and only one*—specific complaint they raised:  that without complete
privilege logs, defendants could not know "when Warner Bros./DC actually
received" the Toberoff Timeline documents.  *Id.* ¶ 9, Exs. 16 at 252, 13, 9.  DC
reminded defendants that this timing issue was irrelevant to any claim in this case,
and that the Court had already stated in *Siegel* based on a sworn declaration by
Warner Bros. that DC acted "reasonably" and "professionally" when it received the
Timeline documents in June 2006.  *Id.* ¶ 9, Exs. 13 at 92, 17 at 255, Case No. CV
04-8400, DN 177 at 19:3-7.  The Court did not credit Toberoff's strident claims that
DC had received the documents six months before.  Case No. CV-04-8400, DN 107
at 36-39; 177 at 9:2-10:13, 13:15-17:21.  Defendants never moved Judge Larson to
review these findings, and when defendants complained about these issues five
months later to Judge Larson, he held the right to raise these issues had been
waived.  *Id.*; DN 374 at 4-5.  Nor have defendants *ever* sought to depose or
subpoena David Michaels—the man they identified as the Timeline author, Kline
Decl., Ex. 21 at 309—as to when the Timeline was delivered to Warner Bros.

Despite its irrelevance, to moot defendants' one issue and expedite
negotiation of an "overall" privilege logging agreement, DC agreed to tell
defendants the earliest date any reference is made to the Timeline in its files:

> We understand from our meeting that Marc seeks further log entries
> from DC flagging any communications regarding the Toberoff
> Timeline.  Defendants already possess Wayne Smith's declaration in
> *Siegel* setting forth the precise circumstances of DC's receipt and
> handling of the Timeline documents, and Judge Zarefsky's ruling
> finding that Mr. Smith acted appropriately and professionally.  Case
> No. CV 04-8400, Docket Nos. 108; 177 at 19:3-7.  Moreover, *to put
> this issue to rest, there are no documents or communications that
> relate to the Timeline that predate June 28, 2006.  Id.* Ex. 13 at 92
> (emphasis added).

When defendants continued to press the issue, DC reaffirmed in two subsequent
letters that it did not have any documents (privileged or otherwise) relating to the

Timeline that predate June 28, 2006. *Id.* Exs. 17 at 255 (DC's Oct. 22, 2012, letter); 19 at 263 (DC's Oct. 31, 2012, letter).

4. On October 10, 2012, DC moved Judge Wright to impose sanctions against defendants, including terminating sanctions, based on defendants' discovery misconduct in this case and in *Siegel*. DN 500, 527. During the meet-and-confer process on that motion, defendants again asserted that DC had waived privilege over un-logged communications. Kline Decl. ¶ 9, Ex. 14. DC reminded defendants they had never met-and-conferred on this issue—despite DC's invitations to do so—much less moved to compel. *Id.* ¶ 11, Ex. 14 at 103.

On October 5, 2012, DC sent defendants a proposed supplemental stipulation. *Id.* Ex. 15. The stipulation (the full text of which is reproduced in the margin) was clear, short, and bilateral.[1] DC asked defendants to provide any comment on it and to meet-and-confer about it, if need be. *Id.* at 114.

---

[1] Plaintiff DC Comics, together with those corporate affiliates named as defendants in *Siegel v. Warner Bros. Entm't Inc.* (Case No. 04-8400 ODW (RZx)) and *Siegel v. Warner Commc'ns Inc.* (Case No. 04-8776 ODW (RZx)) (the "Siegel Actions") and their subsidiaries (collectively, "DC"), and defendants Mark Warren Peary, Jean Adele Peavy, Laura Siegel Larson, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC (collectively, "Defendants"), by and through their respective counsel of record, hereby stipulate and agree as follows:

WHEREAS, the parties have identified certain documents subject to a claim of attorney-client privilege, attorney work-product doctrine, or any other privileges available under law ("Privileged Documents") that would be unduly burdensome to list on their respective privilege logs;

WHEREAS, the parties desire to supplement and modify the December 7, 2010, Order Granting Stipulation Re: Defendants' Production Of Documents And Privilege Logs (Docket No. 133);

NOW THEREFORE, the parties stipulate and agree to the following:

1. DC and defendant Laura Siegel Larson shall not be required to list on their respective privilege logs any Privileged Documents created on or after October 8, 2004, when the first complaint was filed in the Siegel Actions.

2. DC and Defendants shall not be required to list on their respective privilege logs any Privileged Documents created on or after May 14, 2010, when DC filed its complaint in the above-entitled action.

Defendants did not respond for 11 days, and then only when pressed by DC. Kline Decl. Exs. 16-17. On October 16—*six days* after DC filed its sanctions motion—defendants flatly rejected DC's proposed supplemental stipulation. *Id.* Ex. 16. Defendants again asserted that DC had somehow waived privilege over pre-May 2010 documents—even though DC had expressly asserted objections raising this very point, defendants had agreed in December 2010 that the issue would need to be resolved by stipulation, DC had repeatedly invited defendants to meet-and-confer to resolve the issue, and defendants had never moved to compel. *Id.*; *id.* Ex. 17.

Defendants asserted only one reason for rejecting DC's proposed stipulation: that they were "forced to generate privilege logs covering virtually every privileged document … including thousands of documents from after the start of the *Siegel* litigation," and "[w]hat's good for the goose is good for the gander." *Id.* Ex. 16 at 252-53.[2] Of course, defendants were not "forced" to log these documents, but rather chose to do so, based on their strategic decision to renege on their prior promises and to refuse to "negotiat[e] a full logging agreement." *Id.* Ex. 5. Similarly, defendants' "goose"/"gander" argument ignored that the December 2010 Order excuses them from logging pre-May 2010 privileged documents with counsel generally, whereas DC was not given the same courtesy. This was an asymmetrical burden that both parties agreed would be corrected down the road. DN 133 ¶ 5; *see* Kline Decl. Ex. 3 at 15 (Mr. Toberoff's October 5, 2010, email stating that "[a]ll sides have said they would like an agreement" on the issue of logging post-

---

3. This stipulation is without prejudice or waiver to any party's right in the future to request or move to compel the identification or logging of Privileged Documents, and is without prejudice or waiver to any party's right in the future to seek a protective order in response to any such request or motion to compel.

    IT IS SO STIPULATED.

[2] Given defendants' discovery misconduct involving their privilege logs, which is the subject of DC's pending sanctions motion, defendants' claim that they have complied with the December 2010 Order is questionable. DN 500, 527.

DC COMICS' MOTION
FOR PROTECTIVE ORDER

1    litigation documents, as "it would obviously save **us all** a great deal of unnecessary

2    effort in trying to log years of privileged communications") (emphases added).

3        Defendants finally agreed to meet and confer on this motion and DC's

4    proposed privilege-log stipulation on October 25, 2012.  Kline Decl. ¶ 11.  During

5    that meet-and-confer, defendants stopped pressing their waiver argument and,

6    instead, argued that DC should be required to produce an itemized privilege log for

7    the entire October 2004 to May 2010 time period.  *Id.*  Defendants failed to offer

8    any justification for seeking to impose this undue burden and expense on DC, other

9    than that they said they thought it better for the case if everything is logged.  *Id.*

10   DC told defendants it would move the Court to approve its proposed final privilege-

11   logging stipulation as a protective order, but absent that, DC would provide a

12   supplemental privilege log.  *Id.*  This motion followed.

13       **B.    The Court Should Issue DC's Proposed Protective Order.**

14       Defendants recognize that logging internal privileged communications

15   created in the course of litigation is an unnecessary and wasteful exercise.  Kline

16   Decl. Ex. 3 (Mr. Toberoff acknowledging that "*[a]ll sides* have said they would

17   like an agreement" and that a stipulation "would *obviously save us all a great deal*

18   *of unnecessary effort in trying to log years of privileged communications*")

19   (emphases added); *see id.* ¶ 3; DN 133.  Indeed, in the "closely related *Siegel* case,"

20   defendants previously agreed that documents from exactly the same, parallel time

21   frame did *not* have to be logged, and the stipulations that they themselves proposed

22   in September and October 2010 would have implemented the *very* same

23   arrangement in this case.  Smith Decl. ¶ 2, Ex. A; Kline Decl. ¶ 2, Exs. 2-3.[3]

24   _____

25       [3] Defendants' proposal provided, in relevant part:

26   [N]o party shall be required to list on their privilege logs the following
     documents created on or after October 8, 2004, when the complaint was filed in
27   *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):

28       Attorney-client communications, attorney work product, and/or documents
         protected by the joint defense privilege, common interest privilege,

DC COMICS' MOTION
FOR PROTECTIVE ORDER

1    Since making these proposals, defendants have repeatedly argued the

2    interconnectivity of the *Siegel* and *Pacific Pictures* cases—and have done so to

3    their advantage, prevailing in at least one key discovery motion on this relatedness

4    ground.  *E.g.*, DN 495 at 2; 160 at 56-57; 209 at 3-4; 231 at 19-20; 252.

5    Defendants also do not challenge that the documents DC seeks not to log are

6    privileged.  Rather, they seek to force DC to devote substantial time and money to

7    producing a supplemental privilege log merely because "what's good for the goose

8    is good for the gander."  *Supra* at 8.  As an initial matter, defendants should not be

9    permitted, through their tactical decision to delay finalization of a permanent,

10   bilateral logging agreement, to impose undue burden and expense on DC.  Further,

11   what defendants may or may not have done is irrelevant to the question whether

12   there is any need or justification for DC to log post-*Siegel* documents.  Compelling

13   DC to log such post-litigation communications would be extraordinarily

14   burdensome.  Logging just the privileged documents in the files of Wayne Smith—

15   Senior Litigation and Chief Patent Counsel for Warner Bros. Entertainment Inc. and

16   the attorney who has supervised outside counsel in the Superman cases for eight

17   years—would require approximately 1,400 attorney hours at an estimated cost

18   upwards of $700,000.  Smith Decl. ¶ 3.  This does not include the substantial time

19   and expense involved in logging the privileged documents found within other

20   custodians' files during this five-and-a-half year window, which is expected to be at

21   least as burdensome.  *Id.* ¶ 4.

22   Given that defendants do not dispute the privileged nature of these

23   documents, Rule 26(c)'s "undue burden" or expense test is easily satisfied.  FED. R.

24   CIV. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party

25   or person from annoyance, embarrassment, oppression, or undue burden or

26   expense…."); *see also* FED. R. CIV. P. 26(b)(2)(C)(iii) (the court "*must* limit the

27

28       mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement
         regarding settlement discussions.  Ex. 2 at 13, Ex. 3 at 18.

- 10 -

1  frequency or extent of discovery otherwise allowed by these rules … if it

2  determines that the *burden or expense* of the proposed discovery outweighs its

3  likely benefit.…").  DC should be relieved of its obligation to log privileged

4  documents during the post-*Siegel* and pre-*Pacific Pictures* time frame.  *Id.*; *Eli Lilly*

5  *& Co. v. Valeant Pharm. Int'l*, 2011 WL 691982, at *2 (S.D. Ind. Feb. 15, 2011)

6  (party did not need to provide a privilege log in light of undue burden in logging

7  documents with marginal relevance).

8          The proposed order that DC hereby submits is fully reciprocal in nature, and

9  its simple terms are designed to avoid needless discovery disputes.  It states, in full:

10             1.  DC (as defined in the Court's December 7, 2010, order, DN
11         133) and defendant Laura Siegel Larson shall not be required to list on
           their respective privilege logs any "Privileged" (as defined in the
12         Court's December 7, 2010, order, DN 133) documents created on or
           after October 8, 2004, when the first complaint was filed in the *Siegel*
13         cases, Case Nos. CV-04-8400 ODW (RZx), CV-04-8776 ODW
           (RZx).
14

15             2.  DC and Defendants shall not be required to list on their
           respective privilege logs any Privileged Documents created on or after
16         May 14, 2010, when DC filed its complaint in this *Pacific Pictures*
           case, Case No. CV 10-3633 ODW (RZx).
17

18             3.  This Order is without prejudice or waiver to any party's
19         right in the future to request or move to compel the identification or
           logging of Privileged Documents, and is without prejudice or waiver
20         to any party's right in the future to seek a protective order in response
           to any such request or motion to compel.
21

22  DC respectfully requests that this Court approve this protective order.

23      **C.      In The Alternative, The Court Should Allow Categorical Logging.**

24          Federal Rule of Civil Procedure 26(b)(5) provides that, absent agreement to

25  the contrary, parties must "describe the nature of the documents, communications,

26  or tangible things not produced or disclosed.…"  The Advisory Committee Notes

27  recognize that Rule 26(b)(5) "does not attempt to define for each case what

28  information must be provided when a party asserts a claim of privilege or work

1    product protection." FED. R. CIV. P. 26(b)(5), Adv. Comm. Note. Indeed, the

2    Advisory Committee Notes state that details concerning each withheld document

3    "may be appropriate if only a few items are withheld, *but may be unduly*

4    *burdensome when voluminous documents are claimed to be privileged or protected,*

5    *particularly if the items can be described by categories.*" *Id.*

6        Here, "individually logging thousands of privileged attorney

7    communications" from, *e.g.*, DC's in-house counsel, "would be immensely

8    burdensome and have little, if any, benefit to [defendants]." *In re Motor Fuel*

9    *Temperature Sales Practices Litig.*, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009).

10    In fact, defendants have identified no such benefit at all—other than (the improper

11    goal of) driving up DC's costs. In such situations, courts routinely allow parties to

12    submit categorical privilege logs. *E.g.*, *id.* (permitting the categorical logging of

13    "post-litigation attorney communications for which a privilege is asserted"); *U.S. v.*

14    *Magnesium Corp. of Am.*, 2006 WL 1699608, at *5-6 (D. Utah June 14, 2006)

15    (same).

16        Accordingly, in the event that this Court requires DC to log privileged

17    documents within the post-*Siegel* and pre-*Pacific Pictures* time frame, this Court

18    should allow DC to submit a categorical log in the form of an affidavit that "(a) the

19    withheld documents were (1) either prepared to assist in anticipated or pending

20    litigation, or (2) contain information reflecting communications between (i)

21    counsels or counsels' representatives, and (ii) plaintiff[] or plaintiff['s]

22    representatives, for the purposes of facilitating the rendition of legal services to

23    plaintiff[]; and (b) intended to be confidential communications." *In re Imperial*

24    *Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997). Defendants' inability—for six

25    months—to offer any legitimate reason to require DC to shoulder the unnecessary

26    burden of logging the very privileged communications that defendants previously

27    agreed did not need to be logged in the "closely related *Siegel* case" speaks for

28    itself.

DC COMICS' MOTION
FOR PROTECTIVE ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    CONCLUSION**

DC's motion should be granted, and its Proposed Order should issue.  In the event that this Court denies DC's motion and finds that DC should submit a supplemental privilege log for the October 2004 to May 2010 time period, in light of the substantial burden involved, DC respectfully requests that it have until March 4, 2013 (eight weeks from the hearing on this motion) to provide such logs.

Dated:        December 10, 2012                Respectfully Submitted,

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics

DC COMICS' MOTION
FOR PROTECTIVE ORDER